1  GIBBS & BRUNS, LLP
   AUNDREA K. GULLEY (*pro hac vice*)
2  agulley@gibbsbruns.com
   BRIAN T. ROSS (*pro hac vice*)
3  bross@gibbsbruns.com
   ROSS M. MACDONALD (*pro hac vice*)
4  rmacdonald@gibbsbruns.com
   1100 Louisiana, Suite 5300
5  Houston, Texas 77002
   Telephone: 713.650.8805
6  Facsimile: 713.750.0903

7  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   MICHAEL P.A. COHEN (*pro hac vice*)
8  mcohen@sheppardmullin.com
   2099 Pennsylvania Avenue, N.W.
9  Washington, D.C. 20006-6801
   Telephone: 202.747.1900
10 Facsimile: 202.747.1901

11 LEO D. CASERIA, Cal. Bar No. 240323
   lcaseria@sheppardmullin.com
12 333 South Hope Street, 43rd Floor
   Los Angeles, California 90071-1422
13 Telephone: 213.620.1780
   Facsimile: 213.620.1398

14
   Attorneys for Defendant THE REYNOLDS
15 AND REYNOLDS COMPANY

16          UNITED STATES DISTRICT COURT

17          CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18 MOTOR VEHICLE SOFTWARE CORPORATION | Case No. 2:17-cv-00896-DSF-AFM |
| 19 Plaintiff, | **THE REYNOLDS AND REYNOLDS COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| 20 v. | |
| 21 | |
| 22 CDK GLOBAL, INC.; THE REYNOLDS AND REYNOLDS COMPANY; COMPUTERIZED | Complaint Filed: February 3, 2017 First Amended Complaint Filed: May 1, 2017 |
| 23 VEHICLE REGISTRATION, INC. a/k/a CDK VEHICLE | Second Amended Complaint Filed: November 2, 2017 |
| 24 REGISTRATION, INC. | |
| 25 Defendants. | The Honorable Dale S. Fischer |
| 26 | Date: January 8, 2018 Time: 1:30 p.m. Place: Courtroom 7D |
| 27 | |
| 28 | |

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE, that on January 8, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard, in the United States District Court, Central District of California, Western Division, First Street Courthouse, 350 West 1st Street, Courtroom 7D, Los Angeles, California, before the Honorable Dale S. Fischer, Defendant The Reynolds and Reynolds Company ("Reynolds") will and hereby does move the Court for an order dismissing Plaintiff Motor Vehicle Software Corporation's ("MVSC") claims in its Second Amended Complaint asserting that Reynolds violated federal antitrust laws and related state laws, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.

This motion is based on the Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all other papers submitted in support of the Motion, the record on file in this action, and such other written and oral argument as may be presented to the Court.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on November 13, 2017. Counsel for Reynolds requested a conference on November 9, 2017, but counsel for MVSC was not available on that day.

Dated:  November 16, 2017      Respectfully submitted,


By _____
           */s/ Michael P.A. Cohen*
           MICHAEL P.A. COHEN

           Aundrea K. Gulley (pro hac vice)
           agulley@gibbsbruns.com
           Brian T. Ross (pro hac vice)

-1-

SMRH:227135712.1      THE REYNOLDS AND REYNOLDS COMPANY'S NOTICE OF MOTION AND MOTION
TO DISMISS

1  bross@gibbsbruns.com
2  Ross M. MacDonald (pro hac vice)
   rmacdonald@gibbsbruns.com
3  **GIBBS & BRUNS, LLP**
4  1100 Louisiana, Suite 5300
   Houston, Texas 77002
5  Telephone: 713-650-8805
6  Facsimile: 713-750-0903

7  Michael P.A. Cohen (pro hac vice)
8  mcohen@sheppardmullin.com
   **SHEPPARD, MULLIN, RICHTER &**
9  **HAMPTON LLP**
10 2099 Pennsylvania Avenue, N.W.
   Washington, D.C. 20006-6801
11 Telephone: 202-747-1900
12 Facsimile: 202-747-1901

13 Leo D. Caseria (SBN 240323)
14 lcaseria@sheppardmullin.com
   **SHEPPARD, MULLIN, RICHTER &**
15 **HAMPTON LLP**
16 333 South Hope Street, 43rd Floor
   Los Angeles, California 90071-1422
17 Telephone: 213-620-1780
18 Facsimile: 213-620-1398

19 Attorneys for defendant THE
20 REYNOLDS AND REYNOLDS
   COMPANY
21
22
23
24
25
26
27
28

SMRH:227135712.1          THE REYNOLDS AND REYNOLDS COMPANY'S NOTICE OF MOTION AND MOTION
                                                        TO DISMISS

GIBBS & BRUNS, LLP
AUNDREA K. GULLEY (*pro hac vice*)
agulley@gibbsbruns.com
BRIAN T. ROSS (*pro hac vice*)
bross@gibbsbruns.com
ROSS M. MACDONALD (*pro hac vice*)
rmacdonald@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Telephone: 713.650.8805
Facsimile: 713.750.0903

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
MICHAEL P.A. COHEN (*pro hac vice*)
mcohen@sheppardmullin.com
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-6801
Telephone: 202.747.1900
Facsimile: 202.747.1901

LEO D. CASERIA, Cal. Bar No. 240323
lcaseria@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant THE REYNOLDS
AND REYNOLDS COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTOR VEHICLE SOFTWARE CORPORATION<br><br>             Plaintiff,<br><br>      v.<br><br>CDK GLOBAL, INC.; THE REYNOLDS AND REYNOLDS COMPANY; COMPUTERIZED VEHICLE REGISTRATION, INC. a/k/a CDK VEHICLE REGISTRATION, INC.<br><br>             Defendants. | Case No. 2:17-cv-00896-DSF-AFM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>Complaint Filed: February 3, 2017<br>First Amended Complaint Filed: May 1, 2017<br>Second Amended Complaint Filed: November 2, 2017<br><br>The Honorable Dale S. Fischer<br><br>Date: January 8, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 7D |

## TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

INTRODUCTION ........................................................................................................ 1

BACKGROUND .......................................................................................................... 3

ARGUMENT ................................................................................................................ 4

    A.    The Second Amended Complaint Includes No New Allegations Regarding Reynolds's Involvement In A Conspiracy To Monopolize (Count IV) ................. 4

    B.    Reynolds Is Legally Incapable Of Conspiring With CVR Because It Is Allegedly Owned And Controlled By Both Reynolds and CDK (Count IV) ........................ 6

    C.    MVSC Has Alleged No Antitrust Injury Because The Antitrust Laws Do Not Protect Unlawful Access To Data (Counts I and IV) ........................................ 9

    D.    The Second Amended Complaint Fails To Allege A Plausible State Law Claim Against Reynolds (Counts VI-VIII) ............................................................. 16

CONCLUSION .......................................................................................................... 17

SMRH:227136801.5

1

2

## TABLE OF AUTHORITIES

3

Page(s)

4

Cases

5

6

*Am. Needle, Inc. v. Nat'l Football League*
  560 U.S. 183 (2010) ............................................................................ 6, 9

7

8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ................................................................................ 7

9

10

*Atl. Richfield Co. v. USA Petroleum Co.*
  495 U.S. 328 (1990) .............................................................................. 10

11

12

*Authenticom, Inc. v. CDK Global, LLC*
  2017 WL 5112979 (7th Cir. Nov. 6, 2017) ......................... 3, 11, 13, 14

13

*Batson v. Live Nation Entm't, Inc.*
  746 F.3d 827 (7th Cir. 2014) ................................................................ 17

14

15

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ................................................................................ 5

16

17

*In re Canadian Import Antitrust Litig.*
  470 F.3d 785 (8th Cir. 2006) .......................................................... 10, 15

18

19

*City of San Jose v. Office of the Comm'r of Baseball*
  776 F.3d 686 (9th Cir. 2015) ................................................................ 17

20

21

*Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*
  2017 U.S. Dist. LEXIS 183213 (C.D. Cal. Oct. 16, 2017) (Fischer,
  J.) ......................................................................................................... 16

22

23

*Copperweld Corp. v. Independence Tube Corp.*
  467 U.S. 752 (1984) ................................................................ 1, 2, 6, 7, 9

24

25

26

*Facebook, Inc. v. Power Ventures, Inc.*
  844 F.3d 1058 (9th Cir. 2016), *cert. denied*, 2017 WL 978168 (Oct.
  10, 2017) ......................................................................................... 14, 15

27

*Freeman v. San Diego Assocs. of Realtors*
  322 F.3d 1133 (9th Cir. 2003) ................................................................ 9

28

*Gaebler v. New Mexico Potash Corp.*
 676 N.E.2d 228 (Ill. App. 1996)............................................................................17

*Kendall v. Visa U.S.A., Inc.*
 518 F.3d 1042 (9th Cir. 2008) ................................................................................5

*Lenhoff Enters., Inc. v. United Talent Agency, Inc.*
 2016 U.S. Dist. LEXIS 77958 (C.D. Cal. Apr. 20, 2016)......................................8

*Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*
 309 F. Supp. 2d 1156 (N.D. Cal. 2004), *aff'd*, 158 F. App'x 807 (9th
 Cir. 2005)..............................................................................................................10

*Musacchio v. United States*
 136 S. Ct. 709 (2016)............................................................................................12

*Name.Space, Inc. v. ICANN*
 795 F.3d 1124 (9th Cir. 2015)...............................................................................16

*NetApp, Inc. v. Nimble Storage, Inc.*
 2015 WL 400251 (N.D. Cal. Jan. 29, 2015) ......................................................7, 8

*Oliver v. SD-3 LLC*
 2016 WL 5950345 (N.D. Cal. Sept. 30, 2016)........................................................5

*In re Optical Disk Drive (ODD) Antitrust Litig.*
 2011 WL 3894376 (N.D. Cal. Aug. 3, 2011)..........................................................7

*Oracle USA, Inc. v. Rimini St.*
 191 F. Supp. 3d 1134 (D. Nev. 2016) ...................................................................14

*Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*
 460 F. Supp. 1060 (C.D. Cal. 1978) .....................................................................10

*People v. Ebay*
 2013 WL 5423774 (N.D. Cal. Sept. 27, 2013).....................................................17

*Philips Med. Sys. Puerto Rico Inc. v. GIS Partners Corp.*
 203 F. Supp. 3d 221 (D.P.R. 2016) .......................................................................14

*Register.Com, Inc. v. Verio*
 356 F.3d 393 (2d Cir. 2004) ..................................................................................13

*Rodriguez v. Sony Computer Entm't Am., LLC*
 801 F.3d 1045 (9th Cir. 2015) .......................................................................2, 7, 8

*Snake River Valley Elec. Ass'n v. PacifiCorp*
   357 F.3d 1042 (9th Cir. 2004) .............................................................. 10

*Snap-on Bus. Solutions, Inc. v. O'Neil & Assocs., Inc.*
   708 F. Supp. 2d 669 (N.D. Ohio 2010) ................................................... 14

*Stanislaus Food Products Co. v. USS-POSCO Industries*
   2010 WL 3521979 (E.D. Cal. Sept. 3, 2010) ........................................... 9

*Sumotext Corp. v. Zoove, Inc.*
   2017 WL 2774382 (N.D. Cal. Jun. 26, 2017) ........................................... 5

*Vollrath Co. v. Sammi Corp.*
   1989 WL 201632 (C.D. Cal. Dec. 20, 1989), *aff'd*, 9 F.3d 1455 (9th
   Cir. 1993) ................................................................................................. 9

*In re Wellbutrin XL Antitrust Litig.*
   868 F.3d 123 (3d Cir. 2017) ................................................................... 16

<u>Statutes and Rules</u>

California Cartwright Act,
   Cal. Bus. & Prof. Code § 16700 *et seq.* .......................................... 16, 17

California Computer Crime Law,
   Cal. Penal Code § 502. ...................................... 1, 2, 10, 11, 12, 14, 15

California Unfair Competition Law,
   Cal. Bus. & Prof. Code § 17200 *et seq.* .......................................... 16, 17

Computer Fraud and Abuse Act,
   18 U.S.C. § 1030 .............................................. 1, 2, 10, 11, 12, 14, 15

Fed. R. Civ. P. 12(b)(6) ............................................................................... 1

Illinois Consumer Fraud and Deceptive Business Practices Act,
   815 Ill. Comp. Stat. 505/1 *et seq.* .................................................. 16, 17

Sherman Act,
   15 U.S.C. §§ 1-2 ................................................................................. 9, 16

Video Privacy Protection Act,
   18 U.S.C. § 2710 ...................................................................................... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant The Reynolds and Reynolds Company ("Reynolds") respectfully submits this Memorandum of Points and Authorities in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6).

Reynolds also joins the arguments set forth in the Memorandum of Points and Authorities supporting defendant CDK Global Inc.'s ("CDK") and defendant Computerized Vehicle Registration, Inc.'s ("CVR") separately filed Motions to Dismiss, to the extent those motions request dismissal of Plaintiff Motor Vehicle Software Corporation's ("MVSC") First, Fourth, Sixth, Seventh, and Eighth Causes of Action.

## INTRODUCTION

MVSC has failed to fix fatal defects in its re-pleaded antitrust conspiracy claims against Reynolds. *First*, MVSC re-alleges its dismissed conspiracy to monopolize claim against Reynolds, but alleges no new conspiratorial conversations involving Reynolds relating to this claim. The Court dismissed the claim on the same record as to Reynolds and it is unclear how MVSC can replead it against Reynolds without change or any regard for the Court's ruling. *Second*, Reynolds remains legally incapable of conspiring with CVR under the *Copperweld* doctrine. *Third*, MVSC has not alleged an antitrust injury, because the antitrust laws do not protect MVSC's ability to obtain data that has been unlawfully scraped from Reynolds's proprietary Dealer Management System ("DMS") by third parties in violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 and the California Computer Crime Law ("CCCL"), Cal. Penal Code § 502. For these reasons, MVSC's SAC should be dismissed with prejudice as to Reynolds, particularly given this is MVSC's third attempt to replead.

On October 2, 2017, this Court dismissed MVSC's monopolization, attempted monopolization, and conspiracy to monopolize claims set forth in the

First Amended Complaint ("FAC") as to all Defendants.  *See* Dkt. #73.  With respect to MVSC's conspiracy to monopolize claim, the Court held that the claim was implausible because "the few factual allegations related to CVR do not identify conspiratorial conversations between CVR and CDK or Reynolds."  *Id.* at 11.

In realleging its conspiracy to monopolize claim against Reynolds, MVSC appears to disregard the Court's ruling as if it had not occurred.  The SAC contains no new allegations regarding conspiratorial conversations involving Reynolds.  The conspiracy to monopolize claim should be dismissed as to Reynolds for the same reasons the Court dismissed it previously.

In addition, SAC paragraph 152 still alleges that CDK and Reynolds both "control the management and decisionmaking of CVR."  Accordingly, Reynolds is incapable of conspiring with CVR because an entity cannot conspire with itself.  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).[1]

Finally, MVSC has not alleged any antitrust injury.  MVSC alleges that it was harmed when Reynolds conspired to block independent data integrators such as Authenticom, Inc. ("Authenticom") from unlawfully accessing data contained in Reynolds's proprietary Dealer Management System ("DMS").  But any data that Authenticom or other data integrators obtained from Reynolds's DMS and then sold to MVSC was scraped illegally from Reynolds's computer systems in violation of the CFAA, CCCL, and the laws of trespass and tortious interference. The antitrust laws protect lawful competition, not unlawful business practices or channels.

_____

[1]  Instead of alleging new conspiratorial conversations involving Reynolds and CVR, MVSC's SAC includes technical amendments merely designed to establish that Reynolds is legally capable of conspiring with CVR.  For instance, MVSC now alleges that CDK exercises "complete control" over CVR, and has deleted most prior references to CDK and Reynolds having joint control over CVR (except for one – *see* SAC ¶ 152).  In the Ninth Circuit, a plaintiff cannot cure defects in a complaint through artful amendments that directly contradict allegations in an earlier version of the complaint.  *See Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015).

# BACKGROUND

Reynolds and CDK produce, market and support competing computer operating systems called Dealer Management Systems, or DMS, that are licensed to automobile dealerships. SAC ¶¶ 4, 29. DMS provides the core functions to manage dealership sales, service, inventory and finance. *See* SAC ¶ 4; *Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 5112979, *1 (7th Cir. Nov. 6, 2017).

MVSC sits downstream from Reynolds and CDK and other DMS providers, and produces software designed to assist auto dealers with the specific task of registering and titling cars purchased from the dealer. MVSC calls this software "Electronic Vehicle Registration" or "EVR" software. SAC ¶ 2. In order to obtain the data it needs in order to provide its EVR services, MVSC has several options, including: (1) paying market rates and entering into an agreement with a DMS provider to access DMS data through a certified interface (SAC ¶ 5); (2) obtaining the data directly from dealers (*Authenticom*, 2017 WL 5112979 at *3 (one option is "going straight to the dealers")); or (3) obtaining the data unlawfully from independent third party data integrators such as Authenticom, who "scrape" the data from DMS without authorization and provide it to MVSC and others at a steep discount from the costs associated with authorized DMS access (SAC ¶¶ 133-148, 164-171; *Authenticom*, 2017 WL 5112979 at *2).

This last option, unlawful data scraping, is MVSC's preferred method of access. According to MVSC, it obtained data from Reynolds's DMS <u>solely</u> through this method until Defendants allegedly "cut off" such access in 2014. SAC ¶¶ 126, 164. Faced with the prospect of paying market rates to Reynolds and CDK for authorized access, as opposed to artificially low rates charged by Authenticom for unauthorized and unlawful access and scraping, MVSC elected to file suit instead.

-3-

Case No. 2:17-cv-00896-DSF-AFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE REYNOLDS
AND REYNOLDS COMPANY'S MOTION TO DISMISS

SMRH:227136801.5

# ARGUMENT

**A.    The Second Amended Complaint Includes No New Allegations Regarding Reynolds's Involvement In A Conspiracy To Monopolize (Count IV)**

When this Court dismissed MVSC's conspiracy to monopolize claim against all Defendants, it did so on the grounds that MVSC had failed to allege any "conspiratorial conversations" between CVR and CDK or Reynolds:

> "MVSC has failed to plead facts sufficient to state a plausible claim that CVR conspired with CDK and Reynolds to monopolize the EVR markets in Illinois or California. As set out above, the few factual allegations related to CVR do not identify conspiratorial conversations between CVR and CDK or Reynolds. Alleging only that CVR had motive and opportunity to conspire is insufficient to suggest an illegal agreement. *See Twombly*, 550 U.S. at 556 (a conspiracy claim under the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."); *Citric Acid*, 996 F.Supp. at 959."

MVSC's SAC fails to cure this defect.  MVSC's SAC does not contain a single new non-conclusory allegation regarding a conspiratorial conversation involving Reynolds.  While the SAC does include a new section entitled "CVR Had Conspiratorial Conversations with CDK and Reynolds," (SAC ¶¶ 109-114) the substantive allegations within that section, like the heading, are merely conclusory (or nonexistent) as to Reynolds.  None of these paragraphs identifies an actual conspiratorial conversation specifically involving anyone from Reynolds.  *See* SAC ¶ 109 (conclusory allegation that "CVR executives actively participated in conspiratorial conversations with CDK and Reynolds . . ."); SAC ¶ 110 (allegation regarding unidentified CVR "board member," regarding nothing more than CVR's purported "need[]" for a "competitive advantage"); SAC ¶ 111 (conclusory

1    allegation regarding "conspiratorial conversations with CDK and Reynolds"); SAC

2    ¶¶ 112-114 (allegations regarding CVR and CDK only).

3          Because MVSC has failed to cure the specific defect in its conspiracy to

4    monopolize claim that the Court identified in its 10/2/17 Order, the claim must be

5    dismissed as to Reynolds again.  It is fundamental that an antitrust claim cannot

6    survive the pleading stage based on conclusory allegations of conspiracy. *See Bell*

7    *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide

8    the grounds of his entitlement to relief requires more than labels and conclusions,

9    and a formulaic recitation of the elements of a cause of action will not do.") (internal

10   quotations omitted); *id.* at 570 (Plaintiff must allege "enough facts to state a claim to

11   relief that is plausible on its face.").  As the Court observed in its 10/2/17 Order:  "A

12   court is 'not bound to accept as true a legal conclusion couched as a factual

13   allegation.' 'Nor does a complaint suffice if it tenders naked assertion[s] devoid of

14   further factual enhancement.'" *See* 10/2/17 Order at 6 (Dkt. #73) (citation omitted),

15   quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16         Here, the plausibility threshold of *Twombly* has not been met because the

17   SAC, like the FAC, continues to provide no details as to Reynolds's alleged

18   involvement in a conspiracy to give CVR an EVR monopoly in Illinois or

19   California.  *See Twombly*, 550 U.S. at 565 n.10 ("[T]he pleadings mentioned no

20   specific time, place, or person involved in the alleged conspiracies. . . . A defendant

21   seeking to respond to plaintiffs' conclusory allegations . . . would have little idea

22   where to begin."); *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1048 (9th Cir. 2008)

23   (complaint must "answer the basic questions" of "who, did what, to whom (or with

24   whom), where, and when"); *Sumotext Corp. v. Zoove, Inc*., 2017 WL 2774382, *5-6

25   (N.D. Cal. Jun. 26, 2017) (dismissing conspiracy to monopolize claim in Second

26   Amended Complaint because amended allegations were "bare bones" and alleged

27   "ultimate facts."); *Oliver v. SD-3 LLC*, 2016 WL 5950345, *11 (N.D. Cal. Sept. 30,

28   2016) (dismissing antitrust claim, holding:  "Naked assertions made upon

1   information and belief and devoid of further factual enhancement are insufficient to

2   state a claim.") (citation and quotation marks omitted).

3   **B.    Reynolds Is Legally Incapable Of Conspiring With CVR Because It Is**
        **Allegedly Owned And Controlled By Both Reynolds and CDK (Count**
4       **IV)**

5          MVSC alleges that Reynolds and CDK jointly own CVR (SAC ¶ 6) and also

6   that they jointly "control the management and decisionmaking of CVR."  SAC ¶

7   152; FAC ¶ 141; quoted in 10/3/17 Order at 4-5 (Dkt. #73).  As a result, they are

8   legally incapable of conspiring with CVR to give it a monopoly, because a parent

9   cannot conspire with an entity it owns and controls. *Copperweld Corp*., 467 U.S. at

10  776.  MVSC's SAC tries to backtrack from its FAC and now includes technical

11  amendments alleging that CDK exercises "complete control" over CVR.  Compare

12  SAC ¶¶ 7, 56, 59, 60, 153, 154, 238 with FAC ¶¶ 55, 141, 223.  But those

13  amendments, at best, only relate to the issue of whether Reynolds is <u>capable</u> of

14  conspiring with CVR, not whether it actually did so.  Furthermore, the amended

15  control allegations contradict MVSC's earlier allegations in the FAC (FAC ¶¶ 55,

16  141, 223) and contradict other allegations within the SAC itself (SAC ¶ 152), and

17  are therefore impermissible and implausible.

18         As the Court noted in its 10/2/17 Order, based on MVSC's original

19  allegations in the FAC, which asserted that CDK and Reynolds jointly owned and

20  controlled CVR, Defendants argued that they were "legally incapable" of conspiring

21  to monopolize the California and Illinois EVR markets due to their "complete unity

22  of interest" with respect to those EVR markets. *See* 10/2/17 Order at 11, citing

23  *Copperweld Corp*., 467 U.S. at 776 and *Am. Needle, Inc. v. Nat'l Football League*,

24  560 U.S. 183 (2010).  However, the Court declined to decide this issue and instead

25  dismissed the conspiracy to monopolize claims based on the lack of plausible

26  evidence of conspiratorial conversations. *See* 10/2/17 Order at 11.

27         The mere possibility of conspiracy is not enough. *See Iqbal*, 556 U.S. at 678

28  (at the pleading stage, "[t]he plausibility standard . . . asks for more than a sheer

possibility that a defendant has acted unlawfully."); *In re Optical Disk Drive (ODD) Antitrust Litig.,* 2011 WL 3894376, *9 (N.D. Cal. Aug. 3, 2011) (dismissing antitrust conspiracy claims, explaining that allegations as to why a conspiracy "might be possible" did not establish that the allegations were plausible). There is no amended allegation in the SAC concerning an actual conspiratorial conversation involving Reynolds, just allegations about its control or lack of control over CVR.

Furthermore, MVSC's artful amendments designed to avoid Defendants' *Copperweld* arguments are impermissible and implausible because they contradict MVSC's earlier FAC allegations as well as other allegations in the SAC itself. MVSC may not amend its complaint in a way that contradicts allegations made in an earlier complaint. *See, e.g., Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (affirming motion to dismiss, refusing to credit "artful[] pleading" in which "the more recent pleading completely contradicts the earlier pleading."); *NetApp, Inc. v. Nimble Storage, Inc*., 2015 WL 400251, *4 (N.D. Cal. Jan. 29, 2015) ("When a court grants a party leave to amend a complaint on a motion to dismiss, the amended complaint may only allege other facts consistent with the challenged pleading.") (Citation and quotation marks omitted).

Indeed, in *Rodriguez*, the Ninth Circuit addressed, and rejected, amendments similar to those made by MVSC here. In that case, plaintiff's First Amended Complaint alleged, among other things, that he provided personal information to Sony Computer, and that Sony Computer unlawfully disclosed that information to Sony Network in violation of 18 U.S.C. § 2710. *Rodriguez*, 801 F.3d at 1048, 1053-54. The claim was dismissed based on a statutory "transfer of ownership" exemption, because Sony Computer shared plaintiff's information with Sony Network after Sony Network allegedly "took over" the Sony Playstation Network from Sony Computer. *Id.* Plaintiff tried to plead around this defect in his Second Amended Complaint by alleging that Sony Network only assumed the management, and not the ownership, of the Sony Playstation Network. *Id.* The claim was

1   dismissed again, and the Ninth Circuit affirmed, holding: "Rodriguez's . . . attempt
2   to thwart the statutory language by artfully pleading that Sony Network assumed the
3   management of the PlayStation Network as opposed to assuming ownership is
4   unconvincing, especially considering that the more recent pleading completely
5   contradicts the earlier pleading." *Id.* at 1054.

6        MVSC is attempting precisely the type of amendment that was barred by the
7   Ninth Circuit in *Rodriguez*. Having already alleged in the FAC that CDK and
8   Reynolds jointly own and control CVR, MVSC cannot artfully amend its complaint
9   to assert that Reynolds only owns, but does not control, CVR. *Id.*; *see also Lenhoff*
10  *Enters., Inc. v. United Talent Agency, Inc.*, 2016 U.S. Dist. LEXIS 77958, *21 (C.D.
11  Cal. Apr. 20, 2016) (dismissing amended antitrust complaint, and refusing to accept
12  "newly alleged"' facts that contradicted allegations in prior complaint); *NetApp,*
13  *Inc.*, 2015 WL 400251 at *4 (dismissing vicarious liability claim in Second
14  Amended Complaint because plaintiff alleged that an individual was an employee of
15  a different entity than the entity identified in the First Amended Complaint).
16  Moreover, while MVSC deleted most references to Reynolds's control over CVR, it
17  did not delete all of them, and as a result, the SAC contradicts itself, rendering
18  MVSC's amended control allegations even more implausible. *See, e.g.*, SAC ¶ 152
19  ("CDK and Reynolds . . . control the management and decisionmaking of CVR.");
20  FAC ¶ 141 (same), quoted in 10/3/17 Order at 4-5 (Dkt. #73). Accordingly,
21  MVSC's amended control allegations must be rejected because they contradict both
22  the FAC and other portions of the SAC.

23       As a result, MVSC's conspiracy to monopolize claim fails for the additional
24  reason that Reynolds, CDK and CVR are incapable of conspiring to give CVR an
25  EVR monopoly, because Reynolds and CDK jointly own CVR. Reynolds and CDK
26  created a brand new, jointly owned competitor in the EVR market where none
27  existed before, where neither of them competed previously, and where both of them
28  have aligned interests. Reynolds jointly owns CVR and shares in the profits and

SMRH:227136801.5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE REYNOLDS
AND REYNOLDS COMPANY'S MOTION TO DISMISS

1    losses of CVR. Under these facts, antitrust law treats Defendants as a single entity

2    that cannot conspire with itself to monopolize an EVR market. *See, e.g.,*

3    *Copperweld Corp.*, 467 U.S. at 771, 777 (holding that a company is "incapable" of

4    conspiring with its subsidiary when they have a "complete unity of interest.");

5    *Vollrath Co. v. Sammi Corp.*, 1989 WL 201632, at *15 (C.D. Cal. Dec. 20, 1989),

6    *aff'd*, 9 F.3d 1455 (9th Cir. 1993) (*Copperweld* doctrine applies equally to

7    conspiracy claims under Sherman Act Sections 1 or 2); *Freeman v. San Diego*

8    *Assocs. of Realtors*, 322 F.3d 1133, 1147-48 (9th Cir. 2003) ("Where there is

9    substantial common ownership . . . or an agreement to divide profits and losses,

10   individual firms function as an economic unit and are generally treated as a single

11   entity," making such partnerships or ventures "immune" from antitrust conspiracy

12   claims); *Stanislaus Food Products Co. v. USS-POSCO Industries*, 2010 WL

13   3521979, at *21-24 (E.D. Cal. Sept. 3, 2010) (dismissing antitrust conspiracy claim

14   against joint venture and its owners because "an economically integrated joint

15   venture is a 'single entity' under *Copperweld* which is incapable of 'conspiring' for

16   purposes of the Sherman Act."); cf. *Am. Needle, Inc*. 560 U.S. at 198 (NFL teams

17   and their intellectual property licensing joint venture could be treated as separate

18   entities capable of conspiring because the teams competed with respect to the

19   intellectual property licensed by the joint venture, and as a result, "their interests in

20   licensing team trademarks are not necessarily aligned.").

21   **C.    MVSC Has Alleged No Antitrust Injury Because The Antitrust Laws Do Not Protect Unlawful Access To Data (Counts I and IV)**

22
23          MVSC's entire conspiracy theory (regardless of whether it is presented as a

     Sherman Act Section 1 or 2 claim) is premised on the notion that MVSC was
24
     harmed because it could no longer access DMS data through third party screen
25
     scrapers such as Authenticom, who obtain DMS data unlawfully. MVSC cannot
26
     establish any viable antitrust injury where the allegedly restrained trade is illegal.
27
     The antitrust laws are designed to protect harm to lawful competition, not harm to
28

1   unlawful competition. Any alleged conspiracy by Reynolds to block unauthorized

2   access to its DMS cannot result in an antitrust injury because such access violates

3   the CFAA and CCCL, and is therefore not protected by antitrust law.

4         To succeed on an antitrust claim, a private plaintiff must prove actual or

5   threatened "'antitrust injury, which is to say injury of the type the antitrust laws

6   were intended to prevent.'" *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328,

7   334 (1990) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477,

8   489 (1977)). Federal courts, including the Ninth Circuit, have "long recognized"

9   that a private plaintiff cannot establish a legally cognizable antitrust injury where the

10   business alleged to have been restrained was itself unlawful. *Modesto Irrigation*

11   *Dist. v. Pac. Gas & Elec. Co.*, 309 F. Supp. 2d 1156, 1169-70 (N.D. Cal. 2004),

12   *aff'd*, 158 F. App'x 807 (9th Cir. 2005); *see also Snake River Valley Elec. Ass'n v.*

13   *PacifiCorp*, 357 F.3d 1042, 1050 n.8 (9th Cir. 2004). This is true regardless of

14   whether the plaintiff is a directly blocked entity (such as Authenticom) or an

15   allegedly indirectly affected entity (such as MVSC). *See In re Canadian Import*

16   *Antitrust Litig.*, 470 F.3d 785, 787-92 (8th Cir. 2006) (finding no antitrust injury

17   where indirect plaintiffs, U.S. consumers of prescription drugs, alleged that

18   defendant drug manufacturers conspired to block Canadian pharmacies from selling

19   drugs to them, because such importation violated federal law). Just as no antitrust

20   injury can flow from a restriction on pirated music, neither can it flow from the

21   denial of hostilely screen-scraped data. *See Pearl Music Co. v. Recording Indus.*

22   *Ass'n of Am., Inc.*, 460 F. Supp. 1060, 1068 (C.D. Cal. 1978).

23         MVSC alleges in its SAC that prior to the alleged conspiracy, it obtained data

24   from Reynolds's DMS through third party data integrators such as Authenticom.

25   *See* SAC ¶ 164 ("At one time, MVSC was able to obtain the required data from a

26   dealer's DMS through intermediaries – i.e., independent data integration

27   companies."); SAC ¶ 165 ("Until 2014, MVSC was able to obtain data from the

28   Reynolds DMS through Authenticom. But Reynolds cut off that route."). This is the

only method through which MVSC alleges that it has ever obtained access to Reynolds's DMS data. *See* SAC generally.

As the SAC admits, Reynolds has long blocked unauthorized access by third party integrators such as Authenticom, and Reynolds's DMS license agreements with dealers prohibit it. *See, e.g.,* SAC ¶ 91; *Authenticom*, 2017 WL 5112979 at *2 ("Authenticom does not obtain its data directly from raw dealership records. Instead, it 'scrapes' (or collects) data from the management system that the dealer uses. . . . Reynolds . . . has always forbidden that practice in its system licenses."). Thus, MVSC obtained Reynolds's data through illicit means.

MVSC claims it never even tried to obtain authorized access from Reynolds through its Reynolds Certified Interface ("RCI") program until 2014, when it could no longer misappropriate the data through Authenticom. *See id*.; SAC ¶ 126 (MVSC claims it "first applied" for access to RCI in 2014). Unsurprisingly, MVSC thought that the prices for authorized access through Reynolds's RCI program were high, as it was used to paying different and presumably lower rates to Authenticom for unauthorized access. SAC ¶¶ 126-128. Notably, MVSC never alleges that any of its competitors who have obtained authorized access from Reynolds through the RCI program, or any other entity, received more favorable terms from Reynolds for authorized access to RCI.

Thus, at bottom, MVSC alleges that it has been damaged because Defendants stopped it from being able to access data without authorization through Authenticom at artificial, below-market rates. MVSC cannot demonstrate a cognizable antitrust injury based on this theory because it seeks antitrust protection for unauthorized DMS access that is unlawful under both the CFAA and CCCL. Under the CFAA, anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains … information from any protected computer," or anyone who "intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damages and loss," violates the

1   statute. 18 U.S.C. § 1030(a)(2)(C), (a)(5)(C); *see also Musacchio v. United States*,

2   136 S. Ct. 709, 713 (2016) (CFAA "provides two ways of committing the crime of

3   improperly accessing a protected computer: (1) obtaining access without

4   authorization; and (2) obtaining access with authorization but then using that access

5   improperly") (citation omitted). The statute defines "computer" broadly as any high-

6   speed data processing device or related data storage or communications facility. 18

7   U.S.C. § 1030(e)(1). And the CFAA defines "protected computer" as, among other

8   things, "a computer … which is used in or affecting interstate or foreign commerce

9   or communication." *Id.* § 1030(e)(2)(B).

10      The CCCL similarly makes it a criminal offense if someone "[k]nowingly

11  accesses and without permission takes, copies, or makes use of any data from a

12  computer, computer system, or computer network, or takes or copies any supporting

13  documentation, whether existing or residing internal or external to a computer,

14  computer system, or computer network." Cal. Penal Code § 502(c)(2). The CCCL

15  further outlaws any action that "knowingly and without permission uses or causes to

16  be used computer services." *Id.* § 502(c)(3). The CCCL also contains a broad

17  definition of "computer system" to mean "a device or collection of devices,

18  including support devices and excluding calculators that are not programmable and

19  capable of being used in conjunction with external files, one or more of which

20  contain computer programs, electronic instructions, input data, and output data, that

21  performs functions, including, but not limited to, logic, arithmetic, data storage and

22  retrieval, communication, and control." *Id.* § 502(b)(5).

23      The allegations of the SAC establish that any data MVSC obtains from

24  Authenticom or other third party integrators is obtained by those entities in violation

25  of the CFAA and the CCCL. First, as already noted above, Reynolds has <u>never</u>

26  authorized Authenticom or other third party data integrators to access its proprietary

27  DMS. Second, Reynolds's DMS is a "protected computer" under the CFAA or a

28  "computer system" under CCCL. *See* SAC ¶ 29 ("DMS software handles and

integrates all of the critical business functions of a car dealership, including sales, financing, inventory management (both vehicle and parts), repair and service, accounting, payroll, marketing, and more" and is the "central nervous system of a car dealership."); SAC ¶ 30 ("the DMS is also the place where a dealer's data is stored, such as vehicle, customer, and sales information."); *Authenticom*, 2017 WL 5112979 at *1 ("In an effort to keep track of such vital business matters as accounting, payroll, inventory, sales, parts, service, finance, and insurance, the dealerships use computerized dealer-management systems," which contain "software" and "hardware" elements that are licensed from Reynolds).

Authenticom's access also constitutes trespass to chattels and tortious interference with Reynolds's contracts. SAC ¶¶ 91, 175 (Reynolds's contracts forbid hostile access); *Register.Com, Inc. v. Verio*, 356 F.3d 393, 404-05 (2d Cir. 2004) (upholding preliminary injunction for trespass to chattels against scraper that "access[ed] . . . computers by automated software programs performing multiple successive queries").

MVSC may argue that DMS access by third party integrators is not unlawful because dealers (as opposed to Reynolds) may have given those integrators "authority" to use the dealers' DMS access credentials. *See Authenticom*, 2017 WL 5112979 at *2 (explaining how independent integrators obtain DMS data: "An interested dealer would provide its log-in credentials to the integrator, which would then be able to pull data from the dealer's management system and provide it to an app vendor.").  But again, this type of access has never been authorized by Reynolds, and dealers breach their agreements with Reynolds if they permit third party integrators to access DMS in this way.  *See id.* ("Reynolds . . . has always forbidden that practice in its system licenses. The record indicates that the restriction in the Reynolds licenses did not stop Authenticom from persuading some Reynolds users to permit it to scrape data from them as well, in violation of their agreements

Case 2:17-cv-00896-DSF-AFM Document #: 44 Filed: 03/13/18 Page 22 of 28 PageID #:880
Case 2:17-cv-00896-DSF-AFM Document 64-1 Filed 01/16/17 Page 19 of 23 Page ID
#:771

1    with Reynolds.)”); *id.* (“Reynolds had always used the closed model, meaning that it

2    blocked (or tried to block) third-party access to data generated by its system.”).

3        The Ninth Circuit recently rejected precisely such a defense in *Facebook, Inc.*

4    *v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), *cert. denied*, 2017 WL

5    978168 (Oct. 10, 2017) in the context of less sensitive data. There, the court held

6    that a company (Power Ventures, Inc.) violated the CFAA and CCCL where it

7    accessed Facebook users’ data with only the users’—but not Facebook’s—

8    permission to promote its own social networking website. *Id.* at 1063, 1067-68 &

9    n.4. Upon learning of Power’s promotional campaign, Facebook sent it a cease-and-

10   desist letter and blocked Power from accessing the Facebook website and servers—a

11   block that Power then sought to circumvent by switching IP addresses. *Id.* at 1063.

12   The Ninth Circuit first observed that Facebook’s cease-and-desist letter had “plainly

13   put Power on notice that it was no longer authorized to access Facebook’s

14   computers,” so that “Power knew that it no longer had authorization to access

15   Facebook’s computers.” *Id.* at 1067 & n.3. The court of appeals then held that

16   “[p]ermission from the users alone was not sufficient to constitute authorization

17   after Facebook issued the cease and desist letter.” *Id.* at 1068.[2]

18       Similarly here, a Reynolds dealer cannot “authorize” a third party like

19   Authenticom to access Reynolds’s DMS by giving Authenticom login credentials,

20   for the simple reason that the terms of the dealers’ license agreements preclude any

21   such “authorization.”  *See Authenticom*, 2017 WL 5112979 at *2 (explaining that

22   Reynolds’s agreements prohibit, and have always prohibited, this practice).  This is

23

---

24   [2] Other courts have similarly concluded that user-granted “authorization” alone is
     not sufficient under statutes protecting access to computer data, where the user did
25   not have the right to grant authorization. *See, e.g.*, *Oracle USA, Inc. v. Rimini St.,*
     *Inc.*, 191 F. Supp. 3d 1134, 1143 (D. Nev. 2016); *Philips Med. Sys. Puerto Rico*
26   *Inc. v. GIS Partners Corp.*, 203 F. Supp. 3d 221, 234 n.1 (D.P.R. 2016) (citing
27   *Facebook*, 844 F.3d at 1068); *Snap-on Bus. Solutions, Inc. v. O’Neil & Assocs., Inc.*,
     708 F. Supp. 2d 669, 676-78 (N.D. Ohio 2010).
28

1   no secret to Authenticom, MVSC or anyone else in the industry. Indeed, MVSC

2   acknowledges, and is fully aware, that Reynolds "prohibit[s] dealers from providing

3   data stored on the dealer's DMS to third-party vendors through 'unauthorized

4   means.'" *See* SAC ¶ 91. MVSC also acknowledges and is aware that Reynolds has

5   advised dealers that they are in breach of their license agreements if they "provid[e]

6   data to MVSC through any means other than through the 3PA and RCI programs."

7   *See* SAC ¶ 176. "Once permission has been revoked, technological gamesmanship

8   or the enlisting of a third party to aid in access will not excuse [CFAA and CCCL]

9   liability." *Facebook*, 844 F.3d at 1067.

10          Finally, it makes no difference whether or not MVSC itself was actively

11  involved in scraping data from Reynolds's DMS. Even assuming that MVSC is

12  nothing more than an indirect purchaser of DMS data that is unlawfully obtained by

13  intermediaries such as Authenticom, MVSC cannot use the antitrust laws to preserve

14  an unlawful channel for data access. *See In re Canadian Import Antitrust Litig.*, 470

15  F.3d 785, 787-92 (8th Cir. 2006). For instance, in *In re Canadian Import Antitrust*

16  *Litig.,* indirect consumers of prescription drugs alleged that drug manufacturers

17  unlawfully conspired to block Canadian pharmacies from importing cheaper drugs

18  from Canada into the U.S. *Id.* The Eighth Circuit held that plaintiffs lacked antitrust

19  standing to pursue such a claim, because the importation of drugs from Canada was

20  already blocked by federal law. *Id.* It did not matter that the consumers themselves

21  were not the ones importing the drugs.

22          Similarly, MVSC's inability to obtain DMS data through third party

23  integrators flows from the prohibitions of the CFAA and CCCL, not an antitrust

24  conspiracy involving Reynolds. Accordingly, MVSC lacks antitrust injury. *See id.*

25  at 791 (explaining that plaintiffs' inability to purchase imported Canadian drugs at

26  lower prices than US drugs was "caused by the federal statutory and regulatory

27  scheme adopted by the United States government, not by the conduct of the

28  defendants. Consequently, the alleged conduct of the defendants did not cause an

1   injury of the type that the antitrust laws were designed to remedy."); *see also In re*

2   *Wellbutrin XL Antitrust Litig.*, 868 F.3d 123, 165 (3d Cir. 2017) (holding that

3   antitrust injury was lacking because direct and indirect purchasers' inability to buy

4   generic drug at lower prices was not caused by anticompetitive agreement "but by

5   patent laws prohibiting the launch."). "That a regulatory or legislative bar can break

6   the chain of causation in an antitrust case is beyond fair dispute." *In re Wellbutrin*

7   *XL Antitrust Litig.*, 868 F.3d at 165.

8        Accordingly, MVSC's claims must be dismissed because it has not suffered

9   an antitrust injury. The Sherman Act is not a weapon for MVSC to demand from

10  the Court that which the law forbids.[3]

11  **D.    The Second Amended Complaint Fails To Allege A Plausible State Law Claim Against Reynolds (Counts VI-VIII)**

12       MVSC's claims under California's Cartwright Act, Cal. Bus. & Prof. Code §

13  16700 *et seq.* (Cause of Action 6), California's Unfair Competition Law ("UCL"),

14  Cal. Bus. & Prof. Code § 17200 *et seq.* (Cause of Action 7), and the Illinois

15  Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp.

16  Stat. 505/1 *et seq.* (Cause of Action 8) fail for the same reasons as its federal

17  antitrust claims. *See Name.Space, Inc. v. ICANN*, 795 F.3d 1124, 1131 n.5 (9th Cir.

18  2015) ("the analysis under the Cartwright Act . . . is identical to that under the

19  Sherman Act."); *City of San Jose v. Office of the Comm'r of Baseball*, 776 F.3d 686,

---

[3]  Indeed, this Court recently applied similar reasoning when it denied defendants' motion for summary judgment on their contractual interference counterclaims in *Complete Entm't Res. LLC v. Live Nation Entm't, Inc.*, 2017 U.S. Dist. LEXIS 183213 (C.D. Cal. Oct. 16, 2017) (Fischer, J.). There, the Court held that if the contracts in question were illegal, they could not form the basis of a tortious interference claim. "A void contract cannot form the basis for an interference claim. Illegality of a contract renders the contract void. Therefore, if the contractual restraints at issue violate the Sherman Act, the contracts cannot form the basis for a successful interference claim." *Id.* at *11-12 (citations omitted). The same logic precludes MVSC from using the Sherman Act to seek relief for an alleged conspiracy to block unlawful data access through third party integrators such as Authenticom.

691-92 (9th Cir. 2015) ("An independent claim under California's UCL is . . . barred so long as MLB's activities are lawful under the antitrust laws."); *Batson v. Live Nation Entm't, Inc*., 746 F.3d 827, 835 (7th Cir. 2014) (alleged antitrust violation does not also violate the ICFA "unless the standards set forth in the governing antitrust cases have been met."); *People v. Ebay*, 2013 WL 5423774, *4 (N.D. Cal. Sept. 27, 2013) (Cartwright Act and UCL claims "rise and fall" with federal antitrust claims); *Gaebler v. New Mexico Potash Corp*., 676 N.E.2d 228 (Ill. App. 1996) (dismissing ICFA claim based on alleged potash cartel because it was nothing more than "antitrust allegations dressed in Consumer Fraud Act clothing").

## CONCLUSION

For the foregoing reasons, Reynolds respectfully requests that the Court dismiss MVSC's Second Amended Complaint as to Reynolds with prejudice.


Dated:  November 16, 2017     Respectfully submitted,




                              By      */s/ Michael P.A. Cohen*
                                      MICHAEL P.A. COHEN

                                      Aundrea K. Gulley (pro hac vice)
                                      agulley@gibbsbruns.com
                                      Brian T. Ross (pro hac vice)
                                      bross@gibbsbruns.com
                                      Ross M. MacDonald (pro hac vice)
                                      rmacdonald@gibbsbruns.com
                                      **GIBBS & BRUNS, LLP**
                                      1100 Louisiana, Suite 5300
                                      Houston, Texas  77002
                                      Telephone:  713-650-8805
                                      Facsimile:   713-750-0903

                                      Michael P.A. Cohen (pro hac vice)
                                      mcohen@sheppardmullin.com

SMRH:227136801.5

Case No. 2:17-cv-00896-DSF-AFM
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE REYNOLDS
AND REYNOLDS COMPANY'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-6801
Telephone:  202-747-1900
Facsimile:   202-747-1901

Leo D. Caseria (SBN 240323)
lcaseria@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213-620-1780
Facsimile:   213-620-1398

Attorneys for defendant THE REYNOLDS AND REYNOLDS COMPANY

Case No. 2:17-cv-00896-DSF-AFM

1

2

3

4

5

6

7

8

9

10

11

12

13

14          UNITED STATES DISTRICT COURT

15          CENTRAL DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| MOTOR VEHICLE SOFTWARE CORPORATION | Case No. 2:17-cv-00896-DSF-AFM |
| Plaintiff, | **[PROPOSED] ORDER GRANTING THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | |
| CDK GLOBAL, INC.; THE REYNOLDS AND REYNOLDS COMPANY; COMPUTERIZED VEHICLE REGISTRATION, INC. a/k/a CDK VEHICLE REGISTRATION, INC. | Complaint Filed: February 3, 2017 First Amended Complaint Filed: May 1, 2017 Second Amended Complaint Filed: November 2, 2017 |
| Defendants. | The Honorable Dale S. Fischer |
| | Date: January 8, 2018 Time: 1:30 p.m. Place: Courtroom 7D |

1

**<u>ORDER</u>**

2     Defendant The Reynolds and Reynolds Company's ("Reynolds") Motion to

3 Dismiss Plaintiff Motor Vehicle Software Corporation's Second Amended

4 Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of

5 Civil Procedure came on regularly for hearing on January 8, 2018 before the

6 Honorable Dale S. Fischer in Courtroom 7D of the above-entitled Court.  The Court

7 considered the moving and opposing papers, the reply, the pleadings in this action,

8 any oral argument, and all other matters presented.

9     Good cause appearing therefor, IT IS HEREBY ORDERED that said Motion

10 to Dismiss is GRANTED in its entirety, and Plaintiff's Second Amended Complaint

11 is hereby DISMISSED WITH PREJUDICE as to Reynolds.

12

13

14 DATED: _____, 2018

15

16

17                                     HON. DALE S. FISCHER
United States District Court Judge

18

19

20

21

22

23

24

25

26

27

28