1  MAYER BROWN LLP
   John Nadolenco (SBN 181128)
2  *jnadolenco@mayerbrown.com*
   350 South Grand Ave
3  25th Floor
   Los Angeles, CA 90071-1503
4  (213) 229-9500
   (213) 625-0248 – Facsimile
5
   Britt M. Miller (*pro hac vice*)
6  *bmiller@mayerbrown.com*
   71 South Wacker Drive
7  Chicago, IL 60606
   (312) 782-0600
8  (312) 701-7711 – Facsimile
9  Attorneys for Defendant
   CDK Global, Inc.
10
   *Additional Counsel Listed on*
11 *Signature Page*
12
13              **UNITED STATES DISTRICT COURT**
14              **CENTRAL DISTRICT OF CALIFORNIA**
15
16 MOTOR VEHICLE SOFTWARE          Case No. 2:17-cv-896-DSF-AFM
   CORPORATION,
17
18              Plaintiff,         **DEFENDANT CDK GLOBAL,**
                                   **INC.'S NOTICE OF MOTION AND**
       v.                         **MOTION TO DISMISS THE**
19                                 **SECOND AMENDED COMPLAINT**
   CDK GLOBAL, INC.; THE
20 REYNOLDS AND REYNOLDS
   COMPANY; COMPUTERIZED
21 VEHICLE REGISTRATION, INC.,     Complaint Filed: Nov. 2, 2017
   a/k/a CDK VEHICLE
22 REGISTRATION, INC.,            Date: Jan. 8, 2018
                                   Time: 1:30 p.m.
23              Defendants.        Place: Courtroom 7D
24
25                                 Judge: Hon. Dale S. Fischer
26
27
28
   _____
                          CDK GLOBAL, INC.'S NOTICE OF MOTION AND MOTION TO
                     DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on January 8, 2018, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 7D of the above-referenced court, located at the First Street Courthouse, 350 West 1st Street, Los Angeles, California, Defendant CDK Global, Inc. ("CDK") will and hereby does move to dismiss the Second Amended Complaint in this action for failure to state a claim upon which relief can be granted because (i) Section 2 of the Sherman Act does not restrict CDK's ability to unilaterally refuse to deal with MVSC, and (ii) MVSC's Illinois Antitrust Act law claims fall with its federal claims.

This Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 13, 2017. This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the entire file of this action, and on such further argument as the Court may permit.

Dated: November 16, 2017        Respectfully submitted,


By: */s/ John Nadolenco* _____

MAYER BROWN LLP
John Nadolenco (SBN 181128)
*jnadolenco@mayerbrown.com*
350 South Grand Ave
25th Floor
Los Angeles, CA 90071-1503
(213) 229-9500
(213) 625-0248 – Facsimile

Britt M. Miller (*pro hac vice*)
*bmiller@mayerbrown.com*
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600

-1-

(312) 701-7711 – Facsimile

Mark W. Ryan (*pro hac vice*)
*mryan@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000
(202) 263-3300 – Facsimile

*Attorneys for Defendant CDK Global, Inc.*

CDK GLOBAL, INC.'S NOTICE OF MOTION AND MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

1  MAYER BROWN LLP
   John Nadolenco (SBN 181128)
2  *jnadolenco@mayerbrown.com*
   350 South Grand Ave
3  25th Floor
   Los Angeles, CA 90071-1503
4  (213) 229-9500
   (213) 625-0248 – Facsimile
5
   Britt M. Miller (*pro hac vice*)
6  *bmiller@mayerbrown.com*
   71 South Wacker Drive
7  Chicago, IL 60606
   (312) 782-0600
8  (312) 701-7711 – Facsimile

9  Attorneys for Defendant
   CDK Global, Inc.
10
   *Additional Counsel Listed on*
11 *Signature Page*

12

13             **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15

16 | MOTOR VEHICLE SOFTWARE | Case No. 2:17-cv-896-DSF-AFM |
   | CORPORATION, | |
17

18 |               Plaintiff, | **MEMORANDUM OF POINTS AND** |
                             | **AUTHORITIES IN SUPPORT OF** |
           v.                | **DEFENDANT CDK GLOBAL,** |
19                           | **INC.'S MOTION TO DISMISS THE** |
   CDK GLOBAL, INC.; THE     | **SECOND AMENDED COMPLAINT** |
20 REYNOLDS AND REYNOLDS     |
   COMPANY; COMPUTERIZED     | Complaint Filed: Nov. 2, 2017 |
21 VEHICLE REGISTRATION, INC.,|
   a/k/a CDK VEHICLE          | Date: January 8, 2018 |
22 REGISTRATION, INC.,        | Time: 1:30 p.m. |
                             | Place: Courtroom 7D |
23 |               Defendants. |
24                           | Judge: Hon. Dale S. Fischer |
25

26

27

28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 2

ARGUMENT ..................................................................................................... 4

I.     THE SECOND AMENDED COMPLAINT STILL DOES NOT
      STATE A SECTION 2 CLAIM AGAINST CDK......................................... 4

      A.    CDK DOES NOT PARTICIPATE IN THE MARKET FOR
           EVR SERVICES................................................................................. 5

      B.    MVSC'S SECTION 2 CLAIM AGAINST CDK IS NOT
           VIABLE IN ANY EVENT. ............................................................... 7

II.    MVSC'S ILLINOIS ANTITRUST ACT CLAIM ALSO SHOULD
      BE DISMISSED............................................................................................ 12

CONCLUSION.................................................................................................. 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
  836 F.3d 1171 (9th Cir. 2016) ............................................................ 8, 9, 11

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
  948 F.2d 536 (9th Cir. 1991) ...................................................................... 1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 4

*Authenticom, Inc. v. CDK Global, LLC*,
  ___ F.3d ___, 2017 WL 5112979 (7th Cir. Nov. 6, 2017) .......................... 8, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 4

*Boorstein v. Men's Journal LLC*,
  2012 WL 2152815 (C.D. Cal. June 14, 2012) ............................................ 4

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*,
  148 F.3d 1080 (D.C. Cir. 1998) .......................................................... 5, 6, 7

*Chic. Prof'l Sports Ltd. P'ship v. NBA*,
  95 F.3d 593 (7th Cir. 1996) ........................................................................ 11

*Duty Free Ams., Inc. v. Estée Lauder Cos.*,
  797 F.3d 1248 (11th Cir. 2015) .................................................................. 9

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) .......................................................................... 9

*Engebretson v. Mahoney*,
  724 F.3d 1034 (9th Cir. 2013) .................................................................... 4

*Greene v. New Dana Perfumes Corp.*,
  287 B.R. 328 (D. Del. 2002) ...................................................................... 6

*Hackman v. Dickerson Realtors, Inc.*,
  520 F. Supp. 2d 954 (N.D. Ill. 2007) ........................................................ 12

-ii-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CDK GLOBAL, INC.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

*LiveUniverse, Inc. v. MySpace, Inc.*,
   304 F. App'x 554 (9th Cir. 2008)......................................................................9, 10

*McGlinchy v. Shell Chem. Co.*,
   845 F.2d 802 (9th Cir. 1988)...............................................................................11

*MetroNet Servs. Corp. v. Qwest Corp.*,
   383 F.3d 1124 (9th Cir. 2004)................................................................................9

*Name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
   2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) .....................................................11

*Novell, Inc. v. Microsoft Corp.*,
   731 F.3d 1064 (10th Cir. 2013) (Gorsuch, J.) ................................................9, 10

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,
   555 U.S. 438 (2009) ...............................................................................................9

*In re Packaged Seafood Prods. Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) .............................................................6, 7

*Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) .................................................................6

*Phoenix Canada Oil Co. v. Texaco, Inc.*,
   658 F. Supp. 1061 (D. Del. 1987) .........................................................................6

*Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*,
   376 F.3d 1065 (11th Cir. 2004) .............................................................................5

*Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*,
   405 F. Supp. 2d 1141 (C.D. Cal. 2005)..................................................................8

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ...............................................................................12

*Top Rank, Inc. v. Haymon*,
   2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) .......................................................5

*United Food & Commercial Workers Local 1776 & Participating
   Emp'ls Health & Welfare Fund v. Teikoku Pharma USA, Inc.*,
   74 F. Supp. 3d 1052 (N.D. Cal. 2014)....................................................................8

-iii-

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ........................................................................................ 6

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919) ...................................................................................... 9

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004) ............................................................................ 9, 10, 11

*whiteCryption Corp. v. Arxan Techs., Inc.*,
  2015 WL 3799585 (N.D. Cal. June 18, 2015) .................................................. 6, 7

**Statutes**

Illinois Antitrust Act,
  740 Ill. Comp. Stat. 10/3 ...........................................................................*passim*

## **INTRODUCTION**

Plaintiff Motor Vehicle Software Corporation ("MVSC") has filed a Second Amended Complaint in an effort to salvage claims this Court previously dismissed. Only five paragraphs of that Second Amended Complaint—56 through 60—are relevant to this motion. In those paragraphs, MVSC seeks to revive its Section 2 and Illinois Antitrust Act claims against CDK Global, Inc. ("CDK") by alleging that CDK competes in the "relevant market"—the market for electronic vehicle registration services ("EVR")—by exerting "substantial control" over Defendant Computerized Vehicle Registration ("CVR"), its joint venture with the Reynolds and Reynolds Company ("Reynolds").

These allegations fall far short of satisfying MVSC's pleading burden. Even if CVR were CDK's subsidiary (and it is not), "substantial control" would require a showing that the parent company dominates the subsidiary, through control of the subsidiary's day-to-day activities—and MVSC has not made that showing here. At most, MVSC's allegations demonstrate that CDK gives MVSC the level of policy and strategic direction expected from the majority stakeholder in a joint venture. CDK therefore cannot be deemed a participant in the EVR market—a point that dooms MVSC's Section 2 and Illinois Antitrust Act claims.

In any event, those claims fail as a matter of law regardless of whether CDK competes in the EVR market. Even if they are generously construed as predicated on CDK's alleged unilateral refusal to deal with MVSC (rather than on concerted conduct, which cannot support monopolization or attempted monopolization claims), the law imposes no obligation on CDK to help MVSC compete. The Ninth Circuit has made clear that an antitrust plaintiff has "no right of access to the trail" that another firm "ha[s] already blazed," even if that trail "provide[s] a considerable advantage and would require great effort to duplicate." *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 543 (9th Cir. 1991). The Court

1   should once again dismiss MVSC's Section 2 and Illinois Antitrust Act claims

2   with respect to CDK.

3   **BACKGROUND[1]**

4       CDK and Reynolds each produce, market, and support software operating

5   systems ("Dealer Management Systems" or "DMS"), which automotive

6   dealerships use to manage various aspects of their business. Among other things,

7   DMS help dealers track vehicle and parts inventory, arrange for customer

8   financing, and streamline accounting, payroll, and financial reporting processes.

9   Dkt. 76 ("SAC") ¶ 29. As such, DMS are extremely complex systems, capable of

10  processing millions of transactions a day and interfacing with scores of dealers,

11  vendors, and original equipment manufacturers ("OEMs"). CDK and Reynolds are

12  vigorous competitors, each representing approximately 35 to 40% of the DMS

13  market. *Id*. ¶ 32. They regularly compete with each other, as well as other DMS

14  providers, to gain new automotive dealership customers. *Id*. ¶ 4.

15      MVSC produces EVR software designed to assist auto dealers with the task

16  of registering and titling cars purchased from a dealer. SAC ¶ 2. Long before

17  MVSC started selling EVR software, CDK and Reynolds' joint venture, CVR,

18  marketed its own EVR software. *Id*. ¶ 22. MVSC alleges that it is currently the

19  market leader in EVR software in California, the state with the largest number of

20  automotive transactions in the nation. MVSC also is an approved EVR provider in

21  Illinois and Oregon. *Id*. ¶¶ 67, 87. Besides MVSC and CVR, several other EVR

22  providers also operate nationwide, including in California and Illinois. *Id*. ¶¶ 67,

23  85.

24      EVR providers require three pieces of information to register a vehicle: the

25  identity of the car buyer; the vehicle characteristics (*i.e.*, make, model, and VIN);

26  and details about financing. SAC ¶ 88. This information is typically stored in the

27  [1] CDK draws this discussion from the allegations in the SAC, which CDK takes as true

28  solely for purposes of this motion.

DMS, independent of whether EVR services are used. All parties agree that CDK and Reynolds cannot—and do not—prohibit or otherwise restrict third-parties from obtaining this data from the dealers, so long as third-parties do not gain unauthorized access to the DMS. Previously, third-parties could pull customer data, VIN numbers, and other information from the DMS by unapproved means, a practice known as "hostile integration." *Id*. ¶ 91. The amended complaint alleges, however, that Reynolds shut down hostile integration on its system by MVSC in 2014. *Id*. ¶ 165. CDK purportedly began to shut down MVSC's hostile integration on the CDK DMS two years later, in 2016. *Id*. ¶¶ 166-71.

Both CDK and Reynolds provide access to their respective DMS through approved licensing programs, known as "3PA" and "RCI" respectively. SAC ¶ 93. Regulating third-party DMS access helps to protect the DMS operationally while maintaining data integrity and security throughout the DMS ecosystem. A number of EVR providers have certified interfaces to facilitate interaction with the CDK and Reynolds DMS. CDK and Reynolds both have offered to provide MVSC with access to the 3PA and RCI programs, but MVSC has turned down the offered terms, claiming that the prices quoted were commercially unreasonable. *Id*. ¶¶ 122-26.

Based on these allegations, MVSC brings eight claims against CDK: (1) conspiracy to restrain trade under Section 1 of the Sherman Act; (2) monopolization, (3) attempted monopolization, and (4) conspiracy to monopolize under Section 2; plus claims under the (5) Illinois Antitrust Act, (6) California Cartwright Act, (7) California Unfair Competition Law ("UCL"), and (8) Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). *See* SAC ¶¶ 206-63. This Court has ruled (Dkt. 73 ("MTD Op.") at 12-13) that MVSC has adequately stated Section 1, Cartwright Act, UCL, and ICFA claims against CDK, and, while CDK disputes these rulings, it does not contest them in this motion.

MVSC has amended its complaint, however, in an attempt to save its remaining claims against CDK. This attempt is unsuccessful, and these claims again should be dismissed.

## **ARGUMENT**

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint. *Engebretson v. Mahoney*, 724 F.3d 1034, 1037 (9th Cir. 2013). "However, allegations contradicted by matters properly subject to judicial notice or by exhibit need not be accepted as true," nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Boorstein v. Men's Journal LLC*, 2012 WL 2152815, at *1 (C.D. Cal. June 14, 2012) (internal quotation marks omitted). Viewed in this light, a complaint must state a claim to relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. As demonstrated below, MVSC's Section 2 claims (and thus its derivative claim under the Illinois Antitrust Act) against CDK still cannot meet this threshold test.

## I.  THE SECOND AMENDED COMPLAINT STILL DOES NOT STATE A SECTION 2 CLAIM AGAINST CDK

This Court previously dismissed MVSC's second, third, and fourth causes of action against CDK under Section 2 of the Sherman Act, holding that MVSC had not alleged that CDK "possess[es] monopoly power or even compete[s] in" the relevant markets for those claims (*i.e.*, the Illinois and California EVR markets). MTD Op. 9. MVSC had argued that CDK is jointly and severally liable for any monopolization committed by CVR, but this Court held that MVSC had not stated

a Section 2 claim against CVR, which likewise doomed MVSC's Section 2 claims against CDK. *Id.*

In its Second Amended Complaint, CVR attempts to bolster its argument that CDK participates in the market for EVR services through its partial ownership of CVR. But this attempt falls short, for MVSC does not come close to alleging that CDK exercises the degree of control over CVR that CDK would need in order to be considered a participant in the EVR market through CVR. And in any event, MVSC's allegations fail to state a Section 2 claim against CDK even if CDK were a participant in the relevant market.

**A.      CDK does not participate in the market for EVR services.**

As this Court noted (MTD Op. 8-9), "[a] defendant may be found liable for monopolization only if the defendant competes in the relevant market"—here, the market for EVR services in Illinois and/or California. The Court held that MVSC's First Amended Complaint did not allege that CDK itself participates in this market, and the Second Amended Complaint contains no allegations to that effect, either. Instead, MVSC stakes its Section 2 claim against CDK on the theory that CDK should be deemed a competitor in the EVR market by virtue of its ownership stake in CVR.

MVSC cannot satisfy the strict standard required to support this theory. "To be a competitor at the level of the subsidiary, the parent must have substantial control over the affairs and policies of the subsidiary." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1088 (D.C. Cir. 1998); *see, e.g., Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1075 (11th Cir. 2004) (same); *Top Rank, Inc. v. Haymon*, 2015 WL 9948936, at *17 (C.D. Cal. Oct. 16, 2015) (same). A plaintiff seeking to establish this level of control must make an extraordinary showing: the plaintiff must demonstrate that the parent exercises day-to-day control over the subsidiary. *See Carribean Broad.,*

148 F.3d at 1088 (citing cases). This is effectively the showing required to establish that a parent company is liable for a subsidiary's acts under an agency theory—a showing that can be made only in "unusual situations" in which the parent "so controls the subsidiary as to cause the subsidiary to . . . become merely the instrumentality of the parent." *See, e.g.*, *whiteCryption Corp. v. Arxan Techs., Inc.*, 2015 WL 3799585, at *2 (N.D. Cal. June 18, 2015) (quoting *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009)).

The Second Amended Complaint makes a conclusory claim that "CDK . . . controls CVR's day-to-day activities" (SAC ¶ 57), but its factual allegations do not substantiate that statement. MVSC alleges that CDK representatives sit on CVR's board and individuals sometimes hold roles at both entities (*id.* ¶ 56), but shared officers and directors are not indicative of day-to-day control. *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1064 (S.D. Cal. 2017); *Phoenix Canada Oil Co. v. Texaco, Inc.*, 658 F. Supp. 1061, 1085 (D. Del. 1987), *aff'd* 842 F.2d 1466 (3d Cir. 1988). MVSC's allegations that CVR employees have CDK email addresses or share office space with CDK likewise have nothing to do with the degree of control that CDK exercises over CVR. The same is true of MVSC's claim that CDK directs CVR's budgeting and investment decisions. *See Phoenix Canada*, 658 F. Supp. at 1085 (parent corporations that were "involved in the substantial financial decisions of the[ir] subsidiaries" were not liable under agency theory); *cf. United States v. Bestfoods*, 524 U.S. 51, 72 (1998) (noting that "supervision of the subsidiary's finance and capital budget decisions" is "consistent with the parent's investor status") (internal quotation marks omitted). And allegations that CDK has a "controlling" interest in CVR (SAC ¶ 56) or that CDK refers to CVR as "our" EVR service (*id.* ¶ 58) are even further afield. Even a wholly owned subsidiary does not, by virtue of the parent's ownership, become the parent's agent. *See, e.g.*, *Greene v. New Dana Perfumes*

*Corp.*, 287 B.R. 328, 343 (D. Del. 2002) ("Delaware courts have been very cautious about imputing even the acts of wholly-owned Delaware subsidiaries to parent corporations without an analysis of whether the corporate veil should be pierced or whether the parent corporation actively employed the subsidiary as its mere agent or instrumentality.") (internal quotation marks omitted). The agency theory requires proof of *day-to-day* control by the parent, not ownership.

Nor is there anything to MVSC's claim that CDK "makes hiring and firing decisions of CVR's employees" and "directs CVR's marketing efforts, drafting its marketing plans and strategies for which dealers to target." SAC ¶ 57. A parent's involvement in "developing marketing strategies" is the kind of "higher level policy" direction "expected from the status of ownership," rather than a form of day-to-day control. *See whiteCryption*, 2016 WL 3275944, at *11 (internal quotation marks omitted). CDK sells its DMS systems directly to dealers, and one would expect it to share advice and information on potential dealer relationships with CVR. The allegation that CDK makes hiring and firing decisions, meanwhile, is completely conclusory. "[S]imply listing those aspects of [a subsidiary's] business that [the parent] dominates or controls" is not enough to allege the agency theory; a plaintiff must plead "facts showing *how* [the parent] 'dominates or controls' these aspects of [the subsidiary's] business." *Packaged Seafood*, 242 F. Supp. 3d at 1064. MVSC offers no factual detail showing how CDK exercises domination over CVR's hiring and firing decisions. And in any event, even if CDK utterly controlled that one aspect of CVR's business, it would hardly indicate that CDK exercises the kind of overall control "necessary to identify [CDK] so closely with [CVR] . . . as to make [CDK] a competitor of [CVR's] rivals." *Carribean Broad.*, 148 F.3d at 1089.

**B.     MVSC's Section 2 claim against CDK is not viable in any event.**

Even if MVSC had adequately alleged that CDK participates in the market

Case 2:17-cv-00896-DSF-AFM Document #: 45 Filed: 03/13/18 Page 16 of 23 PageID #:402
Case 2:17-cv-00896-DSF-AFM Document 62-13 Filed 01/18/17 Page 13 of 18 Page ID
#:793

1   for EVR services through CVR, MVSC's Section 2 claims against CDK would

2   fail. To begin with, as this Court held in its earlier opinion (MTD Op. 8), MVSC's

3   Section 2 claims fail to the extent they rest on allegations of concerted conduct or

4   unlawful agreement. *See, e.g.*, *United Food & Commercial Workers Local 1776 &*

5   *Participating Emp'ls Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F.

6   Supp. 3d 1052, 1076 (N.D. Cal. 2014) ("A monopoly, by definition, consists of a

7   single firm, and both monopolization and attempted monopolization are single-

8   firm violations."); *Standfacts Credit Servs., Inc. v. Experian Info. Sols., Inc.*, 405 F.

9   Supp. 2d 1141, 1152 (C.D. Cal. 2005) ("section 2 prohibits only monopolization

10  by a single entity, as opposed to shared monopolization"), *aff'd in part* 294 F.

11  App'x 271 (9th Cir. 2008). Given that MVSC's second cause of action (for

12  monopolization) expressly rests on allegations that CDK and the other defendants

13  engaged in a "group boycott of MVSC" (SAC ¶ 222), and its third cause of action

14  (for attempted monopolization) similarly alleges that the Defendants "conspired to

15  block MVSC from the 3PA and RCI third-party DMS programs" (*id.* ¶ 229), the

16  Court's holding disposes of these claims in their entirety.

17        Even if MVSC had alleged that CDK *unilaterally* refused to deal with

18  MVSC, moreover, that allegation could not state a claim under Section 2 as a

19  matter of law. As the Seventh Circuit recently explained in vacating the

20  preliminary injunction entered in a Sherman Act case against CDK and Reynolds,

21  "[e]ven monopolists are almost never required to assist their competitors, . . . and

22  neither Reynolds nor CDK is a monopolist." *Authenticom, Inc. v. CDK Global,*

23  *LLC*, ___ F.3d ___, 2017 WL 5112979, at *4 (7th Cir. Nov. 6, 2017) (internal

24  citation omitted). Indeed, "longstanding precedent" holds that Section 2 almost

25  never prohibits a firm from unilaterally refusing to deal with another firm. *Aerotec*

26  *Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1183 (9th Cir. 2016). "[A]s a

27  general matter, the Sherman Act 'does not restrict the long recognized right of [a]

28

-8-

1   trader or manufacturer engaged in an entirely private business, freely to exercise

2   his own independent discretion as to parties with whom he will deal.'" *Verizon*

3   *Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004)

4   (quoting *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)). In short, with

5   very limited exceptions, there is "no duty to deal under the terms and conditions

6   preferred by [a competitor's] rivals." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*,

7   555 U.S. 438, 457 (2009). And while the Supreme Court has recognized that

8   "[u]nder certain circumstances, a refusal to cooperate with rivals can . . . violate

9   § 2," courts must be "very cautious in recognizing such exceptions." *Trinko*, 540

10  U.S. at 408; *see also Aerotec*, 836 F.3d at 1183. That is because compelling

11  companies to share resources with other firms undermines the purpose of antitrust

12  law. Forced sharing reduces incentives to invest in those resources; makes federal

13  courts into central planners, a role for which they are "ill-suited"; and may even

14  provide opportunities for collusion—antitrust's "supreme evil." *MetroNet Servs.*

15  *Corp. v. Qwest Corp.*, 383 F.3d 1124, 1131, 1133 (9th Cir. 2004) (internal

16  quotation marks omitted).

17       In particular, the Ninth Circuit requires a Section 2 refusal-to-deal claim to

18  allege "'the unilateral termination of a [1] voluntary and [2] profitable course of

19  dealing.'" *LiveUniverse, Inc. v. MySpace, Inc.*, 304 F. App'x 554, 556 (9th Cir.

20  2008) (quoting *MetroNet*, 383 F.3d at 1132).[2] Yet MVSC does not allege that CDK

21  or Reynolds ever previously dealt with MVSC voluntarily, let alone profitably, or

---

[2] The law is the same in other circuits. *E.g.*, *Duty Free Ams., Inc. v. Estée Lauder Cos.*, 797 F.3d 1248, 1266-67 (11th Cir. 2015) ("*Trinko* now effectively makes the unilateral termination of a voluntary course of dealing a requirement for a valid refusal-to-deal claim") (internal quotation marks omitted); *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013) (Gorsuch, J.) ("there must be a preexisting voluntary and presumably profitable course of dealing"); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) ("because plaintiffs do not allege that defendants terminated any prior course of dealing . . . the allegations are insufficient to state a unilateral-monopolization claim").

-9-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CDK GLOBAL, INC.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

1  that either firm had any direct contact with MVSC before MVSC approached in
2  2014 asking to participate in the 3PA and RCI programs. As a result, MVSC
3  cannot squeeze through the "narrow-eyed needle" that the Supreme Court left open
4  in *Trinko*. *Novell*, 731 F.3d at 1074.

5      The Ninth Circuit's *LiveUniverse* decision is squarely on point. There,
6  LiveUniverse alleged that MySpace violated Section 2 by redesigning its social-
7  networking platform to prevent users from linking to content on LiveUniverse's
8  website, vidiLife.com. The Court held that these allegations did not state a claim
9  for either monopolization or attempted monopolization. 304 F. App'x at 557. The
10 fact that MySpace users previously could link to vidiLife content on MySpace
11 "may indicate a prior course of dealing *between MySpace and its users*," the court
12 explained, but it did not show a prior course of dealing "*between MySpace and*
13 *LiveUniverse* regarding the functionality of embedded links." *Id*. The same is true
14 here. At most, the complaint alleges that MVSC previously accessed CDK's DMS
15 through hostile integration. As in *LiveUniverse*, that may indicate a prior course of
16 dealing between MVSC and any third-parties that MVSC used to gain
17 unauthorized access, or between MVSC and the dealers for whom it provided EVR
18 services. But hostile integration—which by definition occurs without CDK's
19 approval—does not indicate a prior, voluntary course of dealing between MVSC
20 and *CDK*. Just as in *LiveUniverse*, therefore, MVSC's claim fails as a matter of
21 law.[3]

22     MVSC also acknowledges that there was no refusal to deal here. CDK *did*
23 offer to deal with MVSC; so did Reynolds. MVSC just refused the offered terms.
24 SAC ¶¶ 123-27. While MVSC alleges that the terms CDK and Reynolds offered

---

[3] Moreover, even supposing (contrary to fact) that there was a prior course of dealing
between MVSC and CDK, MVSC does not allege that the dealing "was profitable to
[CDK], such that [CDK's] conduct was contrary to its short-term business interests."
*LiveUniverse*, 304 F. App'x at 557.

amounted to an "effective refusal to deal," *id*. ¶¶ 123, 126, MVSC is unable to allege that CDK or Reynolds offered terms that were any different from those they offered to other EVR providers.[4] And in any event, whether the terms offered were "reasonable" is exactly the kind of business judgment call that the Supreme Court has warned courts against second-guessing. "[P]roviding any meaningful guidance" in response to MVSC's claim "would require the courts to play precisely the kind of 'central plann[ing]' role that courts are 'ill suited' to play." *Aerotec*, 836 F.3d at 1184 (citing *Trinko*, 540 U.S. at 408); *see also Chic. Prof'l Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 597 (7th Cir. 1996) ("the antitrust laws do not deputize district judges as one-man regulatory agencies"). For that reason, a company that "simply [does] not like the business terms offered" by a firm cannot state a claim under Section 2. *Aerotec*, 836 F.3d at 1184; *see also Name.Space, Inc. v. Internet Corp. for Assigned Names & Nos.*, 795 F.3d 1124, 1131 (9th Cir. 2015) ("whether [the defendant's] choices" in structuring its business in a manner that allegedly disadvantaged the plaintiff "were wise or fair is an issue outside the purview of § 2").

That is so irrespective of MVSC's allegation—which is wrong in any event—that CDK and Reynolds are "targeting" MVSC. SAC ¶ 130. It is well-established that firms "are not required to engage in a lovefest; indeed, '[e]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws.'" *Aerotec*, 836 F.3d at 1184 (citation omitted).[5] MVSC's Section 2 claims against CDK should therefore be

---

[4] In fact, other EVR providers have agreed to participate in CDK's partner program on the same terms that CDK offered to MVSC. *See* http://www.cdkglobal.com/partners/approved-partner-list.

[5] MVSC's attempted monopolization claim with respect to the California market is flawed for another reason. Such claims require proof that the defendant has a "dangerous probability of success" in achieving a monopoly. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988). Here, MVSC asserts that CVR has a dangerous probability (cont'd)

dismissed.

## II. MVSC'S ILLINOIS ANTITRUST ACT CLAIM ALSO SHOULD BE DISMISSED

MVSC's fifth cause of action asserts a violation of the Illinois Antitrust Act, 740 Ill. Comp. Stat. 10/3 (SAC ¶¶ 241-44). But this claim rests on the same theory as MVSC's federal Section 2 claim. Courts routinely dismiss Illinois state antitrust claims as a matter of course after dismissing parallel allegations under federal law. *See, e.g., Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (the Illinois Antitrust Act "parallels the federal Sherman and Clayton Acts"); *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 968 (N.D. Ill. 2007) (same). Accordingly, the Illinois Antitrust Act claim fails for the reasons discussed above.

## CONCLUSION

The Second Amended Complaint's second, third, fourth, and fifth causes of action should be dismissed with respect to CDK.

Respectfully submitted,

By: */s/ John Nadolenco*
MAYER BROWN LLP
John Nadolenco (SBN 181128)

---

of achieving monopoly power in California. SAC ¶ 230. But MVSC is presently the dominant EVR provider in California, with over 50% of the market. *Id.* ¶ 85. CDK is unaware of any case in which the market leader—after touting the self-professed superiority of its products and its ability to retain large numbers of its customers as a result—has successfully maintained an attempted monopolization claim against another firm. MVSC's claims of dangerous probability are further undermined by the fact that, in the nine months since the complaint was originally filed, MVSC's and CVR's market shares in California apparently have not appreciably changed. *Compare id.* ¶ 85 (stating that "[t]oday" MVSC has "approximately 50 percent," CVR "approximately 40 percent," and Dealertrack "the remaining ten percent" of the California market) *with* Dkt. 1 ¶ 80 (same).

-12-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CDK GLOBAL, INC.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

Case 2:17-cv-00896-BSF-APM Document #: 45 Filed: 03/13/18 Page 21 of 23 PageID #:407
Case 2:17-cv-00896-BSF-APM Document 62-1 Filed 01/18/17 Page 13 of 18 Page ID
#:798

1    *jnadolenco@mayerbrown.com*
2    350 South Grand Ave
     25th Floor
3    Los Angeles, CA 90071-1503
4    (213) 229-9500
     (213) 625-0248 – Facsimile
5
6    Britt M. Miller (*pro hac vice*)
     *bmiller@mayerbrown.com*
7    71 South Wacker Drive
8    Chicago, IL 60606
     (312) 782-0600
9    (312) 701-7711 – Facsimile
10
     Mark W. Ryan (*pro hac vice*)
11   *mryan@mayerbrown.com*
12   1999 K Street, NW
     Washington, DC 20006-1101
13   (202) 263-3000
14   (202) 263-3300 – Facsimile
15   *Attorneys for Defendant CDK Global, Inc.*
16
17
18
19
20
21
22
23
24
25
26
27
28

-13-

1
2
3
4
5
6
7
8
9
10
11
12        **UNITED STATES DISTRICT COURT**
13       **CENTRAL DISTRICT OF CALIFORNIA**
14
15   MOTOR VEHICLE SOFTWARE              Case No. 2:17-cv-896-DSF-AFM
     CORPORATION,
16
                    Plaintiff,           **[PROPOSED] ORDER**
17                                       **GRANTING DEFENDANT CDK**
          v.                             **GLOBAL, INC'S MOTION TO**
18                                       **DISMISS THE SECOND**
     CDK GLOBAL, INC.; THE               **AMENDED COMPLAINT**
19   REYNOLDS AND REYNOLDS
     COMPANY; COMPUTERIZED               Complaint filed:  Nov. 2, 2017
20   VEHICLE REGISTRATION, INC.,
     a/k/a CDK VEHICLE                    Hearing: Jan. 8, 2018
21   REGISTRATION, INC.,                  Time: 1:30 pm
                                          Place: Courtroom 7D
22                  Defendants.
                                          Judge: Hon. Dale S. Fischer
23
24
25
26
27
28

**[PROPOSED] ORDER**

Before the Court is CDK Global, Inc.'s ("CDK's") Motion to Dismiss Plaintiff Motor Vehicle Software Corporation's ("Plaintiff's") Second Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Having fully considered the briefs and evidence submitted by the parties, all other relevant documents on file in this matter, and the oral arguments of counsel:

**IT IS HEREBY ORDERED THAT:**

1.      CDK's Motion to Dismiss is GRANTED in its entirety.

2.      Plaintiff's Second Amended Complaint's second, third, fourth, and fifth causes of action are DISMISSED WITH PREJUDICE because they fail to state a claim against CDK upon which relief can be granted.

**IT IS SO ORDERED.**


DATED: _____          _____

                                                    Hon. Dale S. Fischer
                                            UNITED STATES DISTRICT COURT JUDGE