GIBBS & BRUNS, LLP
AUNDREA K. GULLEY (*pro hac vice*)
agulley@gibbsbruns.com
BRIAN T. ROSS (*pro hac vice*)
bross@gibbsbruns.com
BRICE A. WILKINSON (*pro hac vice*)
bwilkinson@gibbsbruns.com
1100 Louisiana, Suite 5300
Houston, Texas 77002
Telephone: 713.650.8805
Facsimile: 713.750.0903

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
MICHAEL P.A. COHEN (*pro hac vice*)
mcohen@sheppardmullin.com
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-6801
Telephone: 202.747.1900
Facsimile: 202.747.1901

LEO D. CASERIA, Cal. Bar No. 240323
lcaseria@sheppardmullin.com
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone: 213.620.1780
Facsimile: 213.620.1398

Attorneys for Defendant THE REYNOLDS
AND REYNOLDS COMPANY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTOR VEHICLE SOFTWARE CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>CDK GLOBAL, INC.; THE REYNOLDS AND REYNOLDS COMPANY; COMPUTERIZED VEHICLE REGISTRATION, INC. a/k/a CDK VEHICLE REGISTRATION, INC.<br><br>Defendants. | Case No. 2:17-cv-00896-DSF-AFM<br><br>**REPLY IN SUPPORT OF THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO DISMISS**<br><br>Complaint Filed: February 3, 2017<br>First Amended Complaint Filed: May 1, 2017<br>Second Amended Complaint Filed: November 2, 2017<br><br>The Honorable Dale S. Fischer<br><br>Date: January 8, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 7D |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    A.    MVSC Concedes That The SAC Contains No New Allegations Concerning Conspiratorial Conversations Involving Reynolds ................................................. 2

    B.    MVSC Fails To Establish That Reynolds Is Capable Of Conspiring To Monopolize The EVR Market ............................................................................................................ 3

        i.    Judicial Estoppel Does Not Apply ............................................................... 3

        ii.    Defendants Are Not Legally Capable Of Entering Into The Alleged Section 2 Conspiracy Regardless Of Whether They Are Legally Capable Of Entering Into The Alleged Section 1 Conspiracy ............................................................ 4

        iii.    MVSC Cannot Escape Its Own Allegations That Reynolds And CDK Jointly Own And Control CVR. ............................................................................. 6

    C.    MVSC Lacks Antitrust Injury Because Its Injury, If Any, Results From Federal And State Laws That Prohibit Unauthorized Data Scraping. ................................... 7

        i.    MVSC Does Not Establish Antitrust Injury By Alleging That Reynolds's RCI Prices Were Higher Than Authenticom's Prices, Which In Turn Were Based On Unlawful DMS Access. ................................................................. 8

        ii.    The Law Of The Case Doctrine Does Not Bar Reynolds's Argument That MVSC Lacks Antitrust Injury. .................................................................... 9

        iii.    The CFAA And Section 502 Prohibit The Type Of Access That MVSC Seeks And Used To Obtain Through Authenticom. ................................... 10

    D.    MVSC Does Not Oppose Dismissal Of Its State Law Claims ............................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*,
  141 F.3d 947 (9th Cir. 1998) ................................................................................ 12

*Am. Needle, Inc. v. Nat'l Football League*
  560 U.S. 183 (2010) ............................................................................................ 4, 5

*Authenticom, Inc. v. CDK Global, LLC*
  874 F.3d 1019 (7th Cir. 2017) ............................................................................ 7, 10

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................ 2, 3

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
  429 U.S. 477 (1977) .................................................................................................. 7

*In re Canadian Import Antitrust Litig.*
  470 F.3d 785 (8th Cir. 2006) ...................................................................... 9, 11, 12

*Consolidated Express, Inc. v. New York Shipping Ass'n*
  602 F.2d 494 (3d Cir. 1979) ................................................................................. 12

*Copperweld Corp. v. Independence Tube Corp.*
  467 U.S. 752 (1984) ............................................................................................ 3, 4

*Dagher v. Saudi Refining Inc.*
  369 F.3d 1108 (9th Cir. 2004), *rev'd sub. nom.*,
  *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) .............................................................. 6

*Darnaa, LLC v. Google Inc.*
  236 F. Supp. 3d 1116 (N.D. Cal. 2017) ................................................................. 9

*Facebook, Inc. v. Power Ventures, Inc.*
  844 F.3d 1058 (9th Cir. 2016), *cert. denied*, 2017 WL 978168 (Oct.
  10, 2017) .............................................................................................................. 11

*Kendall v. Visa U.S.A., Inc.*
  518 F.3d 1042 (9th Cir. 2008) ................................................................................ 3

*Memorex Corp. v. Int'l Bus. Machs. Corp.*
    555 F.2d 1379 (9th Cir. 1977) ................................................................................ 12

*New Hampshire v. Maine*
    532 U.S. 742 (2001) ............................................................................................... 4

*Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*
    460 F. Supp. 1060 (C.D. Cal. Nov. 15, 1978) ...................................................... 12

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*
    392 U.S. 134 (1968) .............................................................................................. 12

*RealNetworks, Inc. v. DVD Copy Control Ass'n*
    2010 WL 145098 (N.D. Cal. Jan. 8, 2010) ........................................................... 12

*Redlands Country Club Inc. v. Cont'l Cas. Co.*
    2011 WL 13224844 (C.D. Cal. Oct. 4, 2011) ........................................................ 4

*Rodriguez v. Sony Computer Entm't Am., LLC*
    801 F.3d 1045 (9th Cir. 2015) ................................................................................ 7

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection
    HDTV TV Litig.*
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................................. 9, 10

*Spinelli v. NFL*
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ........................................................................ 5

*Stanislaus Food Products Co. v. USS-POSCO Industries*
    2010 WL 3521979 (E.D. Cal. Sept. 3, 2010). ........................................................ 6

*Texaco Inc. v. Dagher*
    547 U.S. 1 (2006) ................................................................................................... 6

*Top Rank, Inc. v. Haymon*
    2015 WL 9948936 (C.D. Cal. Oct. 16, 2015) ........................................................ 6

*United States v. Crocker Nat'l Corp.*
    656 F.2d 428 (9th Cir. 1981), *rev'd on other grounds, Bankamerica
    Corp. v. United States*, 462 U.S. 122 (1983) ...................................................... 12

*Universal Grading Serv. v. eBay, Inc.*
    2012 WL 70644 (N.D. Cal. Jan. 9, 2012), *aff'd,* 563 Fed. Appx. 571
    (9th Cir. 2014) ........................................................................................................ 7

*USW v. Ret. Income Plan for Hourly-Rated Employees of ASARCO, Inc.*
   512 F.3d 555 (9th Cir. 2008) .................................................................................. 4

*Washington v. NFL*
   880 F. Supp. 2d 1004 (D. Minn. 2012) .................................................................. 5

*In re Wellbutrin XL Antitrust Litig.*
   868 F.3d 132 (3d Cir. 2017) ............................................................................ 11, 12

*Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*
   2006 WL 6667002 (S.D. Cal. Jan. 5, 2006), *aff'd*, 280 Fed. Appx. 968 (Fed. Cir. 2008) .................................................................................................... 7

Statutes

California Computer Crime Law
   Cal. Penal Code § 502. ................................................................................. 1, 7-12

Computer Fraud and Abuse Act
   18 U.S.C. § 1030 ........................................................................................... 1, 7-12

Sherman Act
   15 U.S.C. §§ 1-2 ............................................................................................*passim*

# INTRODUCTION

MVSC's[1] claims against Reynolds should be dismissed. First, despite the Court's prior dismissal of MVSC's conspiracy to monopolize claim, MVSC has resurrected the count without any new conspiracy allegations against Reynolds. Second, Reynolds and CDK are legally incapable of conspiring with their jointly owned and managed joint venture, CVR. Third, MVSC's claimed injury is an inability to access the Reynolds enterprise software system without authorization through screen scraping technology. That cannot be antitrust injury, because screen scraping without authorization of the enterprise computer system developer, owner, and administrator (i.e., Reynolds) is illegal under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 and California Penal Code § 502 ("Section 502"), not from any conduct by Reynolds.

Unable to refute Reynolds's arguments, MVSC seeks to stop Reynolds from making those arguments at all by invoking doctrines of judicial estoppel and law of the case. Those doctrines do not apply here. Contrary to MVSC's suggestion, its SAC does not get a free pass simply because portions of its FAC were not dismissed.

Reynolds did not and could not have conspired with CVR and CDK to monopolize the EVR market, and there are no amended allegations in the SAC that plausibly suggest otherwise. This Court has already correctly dismissed MVSC's conspiracy to monopolize claim against Reynolds once, and it should do so again.

MVSC wants to use this lawsuit to regain access to Reynolds's DMS through unlawful screen scrapers such as Authenticom, who charge below-market rates made possible by unauthorized access. But the CFAA and Section 502 have blocked, and will continue to block, unauthorized access to DMS. And paying the market price for RCI access instead of Authenticom's bootleg fees is not a valid antitrust injury. Accordingly, MVSC's SAC should be dismissed as to Reynolds.

---

[1] Capitalized terms have the same meaning as in Reynolds's opening brief (Dkt. # 81-1).

# ARGUMENT

### A. MVSC Concedes That The SAC Contains No New Allegations Concerning Conspiratorial Conversations Involving Reynolds

The lack of any alleged "conspiratorial conversations" between CVR and CDK or Reynolds was the express reason why this Court previously dismissed MVSC's conspiracy to monopolize claim. *See* 10/2/17 Order (Dkt. # 73). This defect has not been cured as to Reynolds.

MVSC <u>does not dispute</u> that there are no new conspiracy allegations involving Reynolds, and instead makes the following points in a single paragraph: (1) the conspiracy to monopolize claims should survive because MVSC's Sherman Act § 1 conspiracy claims survived a motion to dismiss; (2) MVSC's SAC includes new allegations about CVR; and (3) MVSC's SAC alleges that Reynolds's representatives were on the board of CVR. Opp. at 16 & n. 10.[2] The Court need look no further than the lack of alleged conspiratorial conversations involving Reynolds to dismiss the conspiracy to monopolize claim, but even if it did, the points raised by MVSC are insufficient to save this claim.

MVSC's Section 1 and 2 conspiracy claims do not rise or fall together, and MVSC cites no authority to support its argument that they do. Indeed, this Court has already previously dismissed the conspiracy to monopolize claims while simultaneously denying motions to dismiss MVSC's Section 1 conspiracy claims. There are major differences between MVSC's Section 1 and 2 conspiracy claims. For instance, MVSC's Section 1 claim was only pleaded against CDK and Reynolds, while the Section 2 conspiracy claim was pleaded against all three Defendants, including CVR. Thus, the Section 1 conspiracy claim does not require

---

[2] The remainder of Argument Section II in MVSC's opposition brief only concerns CVR and CDK. *See* Opp. at 14-16. Page 14 of the Opposition also contains a brief reference to a conclusory allegation of conspiracy involving Reynolds. *See* Opp. at 14, citing SAC ¶ 109. A conclusory allegation of conspiracy is not enough. *See* 10/2/17 Order at 11; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).

1  an allegation of a conspiratorial conversation between CVR and Reynolds, but the
2  Section 2 claim does.  Also, Defendants are not capable of conspiring in the EVR
3  market, regardless of whether they can conspire in the DMS market. *See infra* at B.
4       MVSC's claim that CVR's board includes representatives from Reynolds is
5  *not* new.  FAC at ¶¶ 55, 101. Even if it were, MVSC cannot save its claim by
6  pointing to a presence on CVR's board, because allegations of "motive and
7  opportunity to conspire" are not enough.  10/2/17 Order at 11; *Twombly*, 550 U.S. at
8  556.  MVSC cites *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008), which
9  holds, contrary to MVSC's position, that a complaint must "answer the basic
10 questions" of "who, did what, to whom (or with whom), where, and when." *Id.* at
11 1048.  None of these questions are answered as to Reynolds.  MVSC removes, but
12 does not add, any allegations of purported misconduct as to Reynolds in its SAC.

**B.  MVSC Fails To Establish That Reynolds Is Capable Of Conspiring To Monopolize The EVR Market**

     Defendants are incapable of conspiring to give CVR a monopoly in the EVR market, because CDK and Reynolds jointly "control the management and decisionmaking of CVR."  SAC ¶ 152; FAC ¶ 141; 10/2/17 Order at 4-5.  Parties are not capable of conspiring on issues where their economic interests are aligned. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 776 (1984).

     MVSC raises three meritless arguments in opposition (Opp. at 16-20): (1) Reynolds is judicially estopped from making this argument; (2) Reynolds and CDK are capable of conspiring to give CVR a monopoly in the EVR market because they compete in the DMS market; and (3) only one entity, CDK, controls CVR.

     *i.  Judicial Estoppel Does Not Apply*

     Judicial estoppel does not bar Reynolds's *Copperweld* argument.  Courts consider three factors when deciding whether to apply judicial estoppel: (1) whether the party's position is "clearly inconsistent" with a position previously taken by the party; (2) whether the party "succeeded in persuading a court to accept that party's

1  earlier position" and (3) whether the opposing party would suffer "unfair detriment."
2  *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001); *USW v. Ret. Income*
3  *Plan for Hourly-Rated Employees of ASARCO, Inc.*, 512 F.3d 555, 563 (9th Cir.
4  2008). MVSC establishes none of these factors.

5      Reynolds's current *Copperweld* arguments are identical to its earlier
6  *Copperweld* arguments, and certainly not "clearly inconsistent" with those
7  arguments. *See, e.g.,* Reynolds 6/15/17 Motion to Dismiss (Dkt. # 63-1) at 9-10
8  ("Reynolds cannot conspire with its CVR joint venture, which the Amended
9  Complaint expressly alleges Reynolds jointly controls."); *see also* Reynolds 8/21/17
10 Reply (Dkt. # 69) at 8-9 ("Reynolds and CDK <u>created</u> a <u>brand new competitor</u> in the
11 EVR market where none existed before, where neither of them competed
12 previously, and where both of them have <u>aligned interests</u>.") (emphasis in original).

13     In addition, the Court explicitly stated in its 10/2/17 Order that it was not
14 reaching the *Copperweld* arguments raised by Defendants. *See* 10/2/17 Order at 11.
15 Judicial estoppel only applies where an argument is <u>successfully</u> made.

16     Lastly, MVSC does not assert that any "unfair advantage" or "unfair
17 detriment" would result. *See, e.g., Redlands Country Club Inc. v. Cont'l Cas. Co.*,
18 2011 WL 13224844, *4 (C.D. Cal. Oct. 4, 2011) (dismissing claim and declining to
19 apply judicial estoppel because there was no "unfair advantage.").

20     ii.    *Defendants Are Not Legally Capable Of Entering Into The Alleged*
21           *Section 2 Conspiracy Regardless Of Whether They Are Legally Capable Of Entering Into The Alleged Section 1 Conspiracy*

22     MVSC again tries to blur the line between its Section 1 and 2 allegations,
23 arguing that because the Court "has already determined that CDK and Reynolds are
24 capable of conspiring under Section 1," and because CDK and Reynolds compete in
25 the DMS market, it necessarily follows that Defendants are capable of conspiring to
26 monopolize the EVR market in violation of Section 2. MVSC is wrong.

27     A court must consider "competitive reality" to determine whether parties are
28 capable of conspiring. *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196

(2010). The competitive reality in this case is that CDK and Reynolds compete in the DMS market, but CDK, Reynolds and CVR do not compete, and have aligned interests, with respect to the EVR market. *See generally* SAC (no allegation that Reynolds participates in the EVR market). As a result, regardless of whether Reynolds and CDK have allegedly conspired in the DMS market, it is <u>not possible</u> for Reynolds, CDK and CVR to conspire to restrain trade in the EVR market. The economic interests of all three Defendants as to the EVR market are aligned in CVR, an entity created by CDK and Reynolds for the purpose of competing in the EVR market.

In contrast, in *American Needle,* the Court held that NFL teams were capable of conspiring as to trademark licensing because they were separate competing economic actors as to the trademarks owned by each team. The teams could not avoid Section 1 scrutiny by creating a joint venture to be collectively responsible for licensing each team's trademarks because "their interests in licensing team trademarks are not necessarily aligned." *Id.* at 198.

However, the Court recognized that the interests of the NFL teams could be aligned as to other issues where their cooperation would <u>not</u> constitute an unlawful antitrust conspiracy. *See id.* at 204 ("We have recognized, for example, that the interest in maintaining a competitive balance among athletic teams is legitimate and important," and "is . . . unquestionably an interest that may well justify a variety of collective decisions made by the teams."). Accordingly, courts have since held that NFL teams are <u>not</u> capable of conspiring for certain purposes and in certain markets. *See, e.g., Spinelli v. NFL,* 96 F. Supp. 3d 81, 114-15 (S.D.N.Y. 2015) (NFL stock photographs); *Washington v. NFL*, 880 F. Supp. 2d 1004, 1006 (D. Minn. 2012) (historical football game footage). As the court in *Washington* explained: "The NFL and its teams can conspire to market each teams' [*sic*] individually owned property, but not property the teams and the NFL can only collectively own." 880 F. Supp. 2d at 1006. The same is true here: Reynolds and CDK cannot conspire in

the EVR market where they only collectively own CVR. *See also Top Rank, Inc. v. Haymon*, 2015 WL 9948936, *16 (C.D. Cal. Oct. 16, 2015) (dismissing conspiracy claim where defendants had "no alleged separate interest").

These facts fit squarely with *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006), which "extended Copperweld to joint ventures." *Stanislaus Food Products Co. v. USS-POSCO Industries*, 2010 WL 3521979, at *20 (E.D. Cal. Sept. 3, 2010). In *Dagher*, the Supreme Court held that Texaco and Shell were not conspiring in violation of the Sherman Act by forming and owning a joint venture called Equilon that sold their gasoline to service stations at the same price. 547 U.S. at 5-6 (noting that Shell and Texaco "did not compete" in this market, and holding: "[T]hough Equilon's pricing policy may be price fixing in a literal sense, it is not price fixing in the antitrust sense."). Like Defendants, the interests of Texaco, Shell and Equilon were aligned.[3]

### iii. MVSC Cannot Escape Its Own Allegations That Reynolds And CDK Jointly Own And Control CVR.

In an attempt to establish that CVR and Reynolds are capable of conspiring, MVSC's opposition (contrary to its FAC) asserts that only one entity can control CVR, and that entity is CDK, not Reynolds. *Opp*. at 18-20. But MVSC cannot escape its own allegations that Reynolds and CDK jointly "control the management and decisionmaking of CVR." SAC ¶ 152; FAC ¶ 141; 10/2/17 Order at 4-5.

MVSC argues that it is impossible for CDK and Reynolds to "simultaneously" control CVR, and claims that it never alleged that Reynolds "by itself" controlled CVR. Opp. at 18-19. But MVSC has already alleged, in both the FAC and SAC, that Reynolds and CDK jointly own and control CVR. MVSC cannot now contradict itself by asserting that CDK solely controls CVR, that Reynolds does not solely control CVR, and that joint control over CVR is impossible. Nor does it

---

[3] It made no difference that Texaco held a minority interest in the joint venture. *See Dagher v. Saudi Refining Inc*., 369 F.3d 1108, 1112 (9th Cir. 2004), *rev'd sub. nom.*, *Texaco Inc. v. Dagher*, 547 U.S. 1 (2006) (noting majority and minority stakes).

matter that Reynolds holds a minority stake in CVR. *See supra* at n.3. Indeed, elsewhere in the opposition brief, MVSC argues that 17% control can be sufficient to establish "substantial control" over an entity. *See* Opp. at 5. These inherent contradictions only highlight the implausibility of MVSC's allegations. *See, e.g., Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (affirming motion to dismiss, refusing to credit "artful[] pleading" in which "the more recent pleading completely contradicts the earlier pleading."); *Wuxi Multimedia, Ltd. v. Koninklijke Philips Elecs., N.V.*, 2006 WL 6667002, *9 (S.D. Cal. Jan. 5, 2006), *aff'd*, 280 Fed. Appx. 968 (Fed. Cir. 2008) (dismissing antitrust claims and rejecting "internally inconsistent" allegations).[4]

## C. MVSC Lacks Antitrust Injury Because Its Injury, If Any, Results From Federal And State Laws That Prohibit Unauthorized Data Scraping.

MVSC complains about the fact that it can no longer access DMS through data integrators such as Authenticom, but these screen scrapers are not authorized by Reynolds to access Reynolds's DMS and thereby provide data to MVSC. The CFAA and Section 502 prohibit unauthorized access to or use of a computer or computer system. Accordingly, MVSC lacks "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent," (*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)) because even in the absence of the

---

[4] Even if the Court were to credit MVSC's new position that CDK "wields complete control" over CVR (SAC ¶ 56), the alleged conspiracy would make no economic sense. In the EVR market, where Reynolds is not present, CVR would need no agreement from Reynolds and would only need CDK's agreement to restrain trade. In the DMS market, in light of the fact that Reynolds has "always forbidden" DMS access by Authenticom or other third party screen scrapers (*see Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1022 (7th Cir. 2017)), CDK only needed to make a unilateral decision about access to its own DMS. Indeed, MVSC concedes in its opposition brief that it is access to CDK's DMS that is "essential" to MVSC and "gives CDK the ability" to harm MVSC. Opp. at 2 n.1. Either way, a conspiracy involving Reynolds makes no sense because CDK could accomplish the same thing on its own. *See Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *5 (N.D. Cal. Jan. 9, 2012), *aff'd*, 563 Fed. Appx. 571 (9th Cir. 2014) (dismissing conspiracy claim that made no "economic sense" because defendant could accomplish the same thing unilaterally).

alleged conspiracy, the CFAA and Section 502 would still block Authenticom and other screen scrapers from accessing DMS without authorization, which means that this avenue of access would remain closed to MVSC as well.

MVSC raises three arguments in opposition: (1) it has adequately pleaded antitrust injury because it alleges that MVSC was blocked from accessing DMS through RCI and 3PA, not just through third party screen scrapers; (2) the law of the case doctrine bars Reynolds's antitrust injury arguments; and (3) antitrust injury exists because MVSC itself did not violate the CFAA, no court has found that Authenticom violated the CFAA, and the CFAA does not give Reynolds antitrust immunity. Opp. at 20-25. MVSC is wrong on all counts.

> i. *MVSC Does Not Establish Antitrust Injury By Alleging That Reynolds's RCI Prices Were Higher Than Authenticom's Prices, Which In Turn Were Based On Unlawful DMS Access.*

MVSC's allegations of harm are two sides of the same coin, both equally failing to establish antitrust injury. On the one hand, MVSC alleges harm from not being able to access DMS through Authenticom at the artificially low rates charged by Authenticom for unlawful access. On the other hand, MVSC is unhappy that Reynolds offered RCI access to MVSC at a price higher than what it had been paying to Authenticom for unlawful access. *See* Opp. at 20-21; SAC ¶¶ 126-128. Either way, MVSC's claimed injury stems from its inability to continue paying the artificially low prices charged by Authenticom for *unlawful* DMS access.

According to MVSC, it obtained data from Reynolds's DMS solely through third party screen scrapers until Defendants allegedly "cut off" such access in 2014. SAC ¶¶ 126, 164-65. It was only then that MVSC tried to obtain authorized DMS access from Reynolds through RCI. SAC ¶ 126. Unsurprisingly, MVSC thought that the prices for authorized access through Reynolds's RCI program were high, as it was used to paying different and presumably lower rates to free-riding Authenticom for unauthorized access. SAC ¶¶ 126-128. Notably, MVSC never once alleges, nor could it, that RCI prices were higher than RCI prices offered to or

1  paid by MVSC's competitors or other third parties. The SAC allegations simply
2  assert that the prices were "high[]," "huge," "inflated" and "absurd." *Id.*

3  Thus, the harm to MVSC stems from the CFAA and Section 502, not any
4  alleged conspiracy. These statutes prohibit unauthorized screen scraping by entities
5  such as Authenticom, which in turn makes it impossible for MVSC to obtain screen
6  scraped data from Authenticom or at the rates charged by Authenticom for screen
7  scraped data. For example, in *In re Canadian Import Antitrust Litig.*, the plaintiffs'
8  allegations were two-pronged, just like MVSC. They alleged that defendants'
9  conspiracy blocked them from purchasing Canadian drugs at low prices, and also
10 forced them to pay higher prices for drugs to defendants. *See In re Canadian Import*
11 *Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) ("Plaintiffs allege that they are
12 injured by increased prices for prescription drugs in the United States, which they
13 say result from their inability to import less expensive drugs distributed by Canadian
14 pharmacies."). Regardless, antitrust injury was lacking because the importation of
15 drugs from Canada was blocked by federal law. *Id.* Similarly, here, MVSC lacks
16 antitrust injury because of the CFAA and Section 502.

17    ii. The Law Of The Case Doctrine Does Not Bar Reynolds's Argument That MVSC Lacks Antitrust Injury.

18  The law of the case doctrine does not apply, nor was Reynolds required to file
19 a motion for reconsideration, because MVSC's filing of the SAC superseded the
20 FAC and opened the door for Defendants to file new motions to dismiss. *See*
21 *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1124 & n.4 (N.D. Cal. 2017)
22 (dismissing complaint, holding that law of the case doctrine did not apply, and a
23 motion for reconsideration was not required, because "Defendants' motion responds
24 to the second amended complaint, which 'superceded the original complaint and
25 rendered it without legal effect.'" (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896,
26 927 (9th Cir. 2012)); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear*
27 *Projection HDTV TV Litig.* ("*Sony*"), 758 F. Supp. 2d 1077, 1098 (S.D. Cal. 2010)
28

(dismissing unchanged claim that survived a previous motion to dismiss, and declining to apply law of the case doctrine, because "[r]ather than proceed with only the claim for breach of Express Warranty, Plaintiffs chose to file an amended complaint. When Plaintiffs filed the [amended complaint], it superseded their previous complaint, and Sony was therefore free to move again for dismissal.").

Moreover, though MVSC does not mention it, "the law of the case doctrine is discretionary, and is in no way a limit on a court's power to revisit, revise, or rescind an interlocutory order prior to entry of final judgment in the case." *Sony*, 758 F. Supp. 2d at 1098 (citation and quotation marks omitted).

Finally, MVSC concedes that the law of the case doctrine does not apply when there is a "change in the law" or "changed circumstances." *See* Opp. at 22. *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019 (7th Cir. 2017), decided after the Court's 10/2/17 Order and discussed in the next section, is one of those changes.

    iii.    *The CFAA And Section 502 Prohibit The Type Of Access That MVSC Seeks And Used To Obtain Through Authenticom.*

Accessing a computer "without authorization" to obtain information violates the CFAA, and accessing or using a computer "without permission" violates Section 502. 18 U.S.C. § 1030(a)(2)(C), (a)(5)(C); Cal. Penal Code § 502(c)(2)-(3). The SAC and the Seventh Circuit's *Authenticom* decision establish that Authenticom's method of accessing DMS using screen scraping processes is barred by law.

In November 2017, the Seventh Circuit found that Reynolds has "always forbidden" access to its DMS by screen scrapers, but Authenticom nevertheless continued to scrape data from Reynolds's DMS without authorization:

> "Until 2015, the system furnished by CDK placed no restrictions on data harvesting by third-party integrators; Reynolds, in contrast, has always forbidden that practice in its system licenses. (The record indicates that the restriction in the Reynolds licenses did not stop Authenticom from persuading some Reynolds users to permit it to scrape data from them as well, in violation of their agreements with Reynolds.)"

1  *Authenticom, Inc.*, 874 F.3d at 1022.  MVSC does not allege that it has ever
2  accessed Reynolds's DMS through any channel other than Authenticom.  SAC ¶
3  165.  MVSC additionally alleges that only Reynolds can provide authorization to
4  access a Reynolds DMS (SAC ¶ 91), and that Reynolds has informed dealers that
5  they are not authorized to provide DMS access to MVSC "through any means other
6  than through the . . . RCI program[]" (SAC ¶ 176).  Thus, to the extent that
7  Authenticom obtained data from Reynolds's DMS through dealers' credentials, it
8  did so without Reynolds's authorization or permission, in violation of the CFAA
9  and Section 502.[5]  Because such access is barred by law, the deprivation of such
10 access cannot constitute antitrust injury.

   MVSC urges the Court to reject this conclusion because MVSC merely
"received data" from Authenticom.  Opp. at 23.  But if the law prohibits
unauthorized screen scraping, then MVSC's use of a hired intermediary to perform
the scraping does not change the analysis.  The cause of MVSC's alleged harm is
therefore the CFAA or Section 502, not Reynolds.  *See In re Canadian Import
Antitrust Litig.*, 470 F.3d at 791; *In re Wellbutrin XL Antitrust Litig.* ("*Wellbutrin*"),
868 F.3d 132, 165 (3d Cir. 2017) (antitrust injury lacking; inability to buy drug at
low prices not caused by agreement "but by patent laws prohibiting the launch.").

   MVSC also argues that no court has ever held that Authenticom violated the
CFAA or Section 502, and that this Court cannot make the determination on a
motion to dismiss.  But nothing bars a court from reviewing a complaint, caselaw,

---

[5] MVSC argues that this does not violate Section 502 because Authenticom did not overcome "technical or code-based barriers" and that a CFAA violation is also unclear. Opp. at 23-24 & n.15.  But the Ninth Circuit recently held that the same type of access involved here, where permission is obtained from a user rather than the system owner, can violate Section 502 and the CFAA.  *See Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1068-69 (9th Cir. 2016), *cert. denied*, 2017 WL 978168 (Oct. 10, 2017).  MVSC also asserts that its SAC "contradicts" the conclusion that Authenticom "operates illegally," but it cites to a single paragraph in the SAC that has nothing to do with Authenticom.  *See* Opp. at 23 & n.14, citing SAC ¶ 137.

and statutory language to determine whether antitrust injury is lacking -- courts have done it before. *See In re Canadian Import Antitrust Litig.*, 470 F.3d at 791.

The bottom line is that Reynolds could not have restrained a form of trade that is already restrained by the CFAA and Section 502. "That a regulatory or legislative bar can break the chain of causation in an antitrust case is beyond fair dispute." *Wellbutrin*, 868 F.3d at 165. Indeed, it would make no economic sense for Reynolds to conspire to do something that these laws already accomplish. "Antitrust claims must make economic sense." *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998). The outdated cases cited by MVSC are distinguishable and did not involve a break in the chain of causation or the absence of an incentive to conspire. As the Third Circuit explained this year when it distinguished one of those cases, a plaintiff lacks antitrust injury when another law blocks it from obtaining the relief it seeks not because of "plaintiff's improper conduct," but because the "defendant[] did not actually cause the . . . claimed injury." *Wellbutrin*, 868 F.3d at 166 (distinguishing *Consol. Express, Inc. v. New York Shipping Ass'n*, 602 F.2d 494 (3d Cir. 1979)).[6]

### D. MVSC Does Not Oppose Dismissal Of Its State Law Claims

MVSC does not dispute that its state law claims fail (Causes of Action 6-8).

---

[6] The other cases MVSC cites are also distinguishable. *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138-40 (1968) barred an *in pari delicto* defense where the plaintiff "participated" in the alleged antitrust violation. Reynolds is not arguing unclean hands; instead, it is arguing that there can be no restraint of trade where the alleged trade is illegal. In *United States v. Crocker Nat'l Corp.*, 656 F.2d 428, 440-41 (9th Cir. 1981), *rev'd on other grounds, Bankamerica Corp. v. United States*, 462 U.S. 122 (1983), the court refused to interpret Clayton Act § 8 as immunizing bank-nonbank interlocking directorates, which bears no resemblance to this case. MVSC also relies on *Memorex Corp. v. Int'l Bus. Machs. Corp.*, 555 F.2d 1379 (9th Cir. 1977), but that court "left open the question of whether a violation of the law could bar an anti-trust action." *Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*, 460 F. Supp. 1060, 1068 (C.D. Cal. Nov. 15, 1978); *see also RealNetworks, Inc. v. DVD Copy Control Ass'n*, 2010 WL 145098, *6 (N.D. Cal. Jan. 8, 2010) (distinguishing *Memorex* and finding no antitrust injury from refusal to license technology for a product that "is almost certainly illegal").

Dated:  December 22, 2017         Respectfully submitted,

By      */s/ Michael P.A. Cohen*
        MICHAEL P.A. COHEN

Michael P.A. Cohen (pro hac vice)
mcohen@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006-6801
Telephone:  202-747-1900
Facsimile:   202-747-1901

Leo D. Caseria (SBN 240323)
lcaseria@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
Telephone:  213-620-1780
Facsimile:   213-620-1398

Aundrea K. Gulley (pro hac vice)
agulley@gibbsbruns.com
Brian T. Ross (pro hac vice)
bross@gibbsbruns.com
Brice A. Wilkinson (pro hac vice)
bwilkinson@gibbsbruns.com
**GIBBS & BRUNS, LLP**
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone:  713-650-8805
Facsimile:   713-750-0903

Attorneys for defendant THE REYNOLDS AND REYNOLDS COMPANY