MAYER BROWN LLP
John Nadolenco (SBN 181128)
*jnadolenco@mayerbrown.com*
350 South Grand Ave
25th Floor
Los Angeles, CA 90071-1503
(213) 229-9500
(213) 625-0248 – Facsimile

Britt M. Miller (*pro hac vice*)
*bmiller@mayerbrown.com*
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
(312) 701-7711 – Facsimile

Attorneys for Defendant
Computerized Vehicle Registration

*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOTOR VEHICLE SOFTWARE CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>CDK GLOBAL, INC.; THE REYNOLDS AND REYNOLDS COMPANY; COMPUTERIZED VEHICLE REGISTRATION, INC., a/k/a CDK VEHICLE REGISTRATION, INC.,<br><br>Defendants. | Case No. 2:17-cv-896-DSF-AFM<br><br>**REPLY IN SUPPORT OF DEFENDANT COMPUTERIZED VEHICLE REGISTRATION'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Complaint Filed: Nov. 2, 2017<br><br>Hearing: Jan. 8, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 7D<br><br>Judge: Hon. Dale S. Fischer |

# INTRODUCTION

Plaintiff Motor Vehicle Software Corporation ("MVSC") has already tried, and failed, to plead that Computerized Vehicle Registration ("CVR") conspired to monopolize the EVR market in violation of Section 2 of the Sherman Act.[1] As CVR's opening brief demonstrated, the six paragraphs of conclusory allegations that MVSC added to its Second Amended Complaint do not change that outcome. To the contrary, the claim against CVR is squarely foreclosed by two bedrock antitrust decisions, *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The claims against CVR should therefore be dismissed with prejudice.

# ARGUMENT

This Court previously dismissed Section 2 claims against CVR for failure to state a claim. Although MVSC re-asserted Section 2 monopolization and attempted monopolization claims against CVR in the Second Amended Complaint (Counts Two and Three), MVSC added no new allegations to bolster the claim this Court already dismissed. Mem. 1. And MVSC does not dispute that, by failing to add any new allegations with respect to these claims, it has abandoned them. Indeed, in responding to the antitrust injury argument raised by Reynolds, MVSC affirmatively argues that the decisions this Court previously rendered on "identical pleadings" should be considered controlling law of the case. Opp. 21.

Instead, MVSC argues once again that it has plausibly alleged that CVR conspired to monopolize in violation of Section 2 (Count Four). Opp. 16-20. But MVSC's conspiracy allegations against CVR, and the equivalent state-law claims (Counts Five, Seven, and Eight), still fail as a matter of law for two independent

---

[1] CVR's Memorandum in Support of its Motion to Dismiss the Second Amended Complaint (Dkt. 83) and MVSC's Consolidated Opposition (Dkt. 90) are cited as "Mem." and "Opp." respectively. Capitalized terms have the same meaning as in CVR's Memorandum.

-1-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

reasons.

## A. CVR Is Legally Incapable Of Conspiring With Its Owners Under The *Copperweld* Doctrine.

MVSC's conspiracy allegations fail as a matter of law because CVR—a joint venture created by CDK and Reynolds to serve the EVR market—cannot conspire with either Reynolds or CDK.

MVSC concedes that CVR cannot conspire with CDK. Indeed, MVSC argues—incorrectly—that CDK and CVR are, in effect, *the same* entity. Opp. 7-8. Even though CVR and CDK are distinct entities, however, there is no dispute that they "share a unity of interest and common corporate consciousness" such that they "cannot conspire to restrain trade." *Bell Atl. Bus. Sys. v. Hitachi Data Sys. Corp.*, 849 F. Supp. 702, 706 (N.D. Cal. 1994); Mem. 3-4.

MVSC does not concede that the same is true of CVR and Reynolds. Opp. 16-20. But its arguments as to why Reynolds—an entity that MVSC previously alleged exercised equal "control" as CDK over the joint venture (FAC ¶¶ 55, 141, 223)—can conspire with its own joint venture are meritless.

*First*, MVSC contends that Reynolds is estopped from arguing that it and CVR cannot conspire. Opp. 16-17. That is wrong and, as it pertains to CVR's position, irrelevant. The argument is wrong because, among other things, there is nothing "inconsistent"—let alone "clearly inconsistent"—between the position Reynolds took in the first round of motions briefing (that it does not compete in the EVR market) and the position Reynolds takes here (that it is sufficiently economically integrated with CVR to preclude conspiracy liability). The argument is irrelevant because, even assuming *arguendo* that Reynolds were estopped, *CVR* has maintained from the outset of this litigation that the *Copperweld* rule applies. *See* Dkt. 60-1 at 4-5; Dkt. 68 at 2-3; Mem. 2-4.

*Second*, MVSC claims that the so-called "CDK/CVR entity" and Reynolds

-2-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

should be considered as separate economic decisionmakers who can conspire under the rule set forth in *American Needle, Inc. v. National Football League*, 560 U.S. 183 (2010). Opp. 17-19. But that case does not help them. In *American Needle*, the Supreme Court held that decisions by National Football League Properties ("NFLP")—an organization formed by 32 independently owned professional football teams to develop, license, and market each team's intellectual property—constituted "concerted activity" under the Sherman Act because the teams "compete in the market for intellectual property" and thus "capture individual economic benefits separate and apart from NFLP profits as a result of the decisions they make for NFLP." *Id.* at 197, 201. In sharp contrast, CDK and Reynolds do not compete in the EVR market. Nor do they capture economic benefits from that market separate and apart from their joint venture's profits. In short, CVR is not a "formalistic shell for ongoing concerted action." *Id.* at 200.

*Stanislaus Food Products Co. v. USS-POSCO Industries* is highly instructive. That case held that a plaintiff could not bring a Sherman Act conspiracy claim against a joint venture ("UPI") and its parent corporations ("U.S. Steel" and "POSCO") where the plaintiff alleged (1) joint ownership, (2) common control, and (3) division of profit. 2010 WL 3521979, at *21-22 (E.D. Cal. Sept. 3, 2010). As the court explained, "controlling authority holds that an economically integrated joint venture is a 'single entity' under *Copperweld* which is incapable of 'conspiring' for purposes of the Sherman Act." *Id.* at *21. Because the plaintiff's own allegations showed that U.S. Steel and POSCO "were in fact acting in concert for the joint venture," the court held that *Copperweld* and not *American Needle* applied. *Id.* at *23.

The Second Amended Complaint contains the same kind of allegations as the complaint in *Stanislaus*. *See, e.g.*, SAC ¶ 54 (alleging joint ownership), ¶ 55 (alleging shared profits), ¶ 152 (alleging joint control over CVR's "management

-3-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

and decisionmaking"). Thus, its holding applies with full force. And while MVSC may be correct that shared profit and loss *alone* is insufficient to satisfy *Copperweld* (s*ee* Opp. 18-19), the fact of such shared profits certainly can—and here, does—help demonstrate the kind of "economic unity" necessary to preclude conspiracy liability between subsidiary and parent under *Copperweld*. *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1148 (9th Cir. 2003) ("Where there is . . . an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity.").

MVSC tries to distinguish *Stanislaus* by stressing that CDK and Reynolds are alleged competitors. Opp. 19 n.13. But this argument—buried in a footnote—badly misses the mark. It is true that MVSC has alleged that CDK and Reynolds are competitors *in the DMS market*. *See* SAC ¶ 32 ("dominant providers in the DMS market"), ¶ 101 ("horizontal competitors in the DMS market"). But that is no different from the parent corporations in *Stanislaus*—U.S. Steel and POSCO—who competed in the steel market generally but cooperated through their joint venture in the market for processed tin products specifically. 2010 WL 3521979, at *1-2. As the *Stanislaus* court explained, what was crucial in the *Copperweld*/*American Needle* analysis was not that the defendants did not compete as a general matter, but that "[t]here are no allegations that defendants are 'independent centers of decision making,' *as it pertain*[*s*] *to the alleged wrongful conduct.*" *Id.* at *23 (emphasis added). The same is true here. Reynolds and CDK may be competitors in the upstream DMS market. But as it pertains to the supposed conspiracy to create an EVR monopoly, MVSC itself has alleged that Reynolds and CDK act "in concert for the joint venture." *Id.*; SAC ¶ 6 (accusing CDK and Reynolds of conspiring "to eliminate a formidable competitor to CVR, their wholly owned joint venture"). Just as in *Stanislaus*, that degree of economic unity forecloses conspiracy liability between the joint venture and either of its corporate parents.

-4-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

MVSC also argues that "the plaintiff in *Stanislaus* effectively challenged the lawfulness of the joint venture's existence," whereas MVSC purportedly challenges "allegations of conduct that took place outside of the joint venture[]" itself. Opp. 19 n.13 (quoting *Stanislaus*, 2010 WL 3521979, at *18-19, and *Starr v. BMG Music Entm't*, 592 F.3d 314, 327 (2d Cir. 2010)). But this argument proceeds from a false presumption—in fact, the *Stanislaus* court expressly declined to address the argument that the joint venture in that case was "formed as a monopoly." 2010 WL 3521979, at *18. Regardless, the argument is inapposite. The *Starr* case that MVSC relies upon involved antitrust conspiracy claims against record labels that allegedly conspired to fix the prices of digital music sales through their joint ventures, MusicNet and pressplay. But the joint ventures in question *were not named as defendants*, so the court had no occasion to decide whether they could conspire with their owners under the antitrust laws.

*Finally*, MVSC claims that the First Amended Complaint and Second Amended Complaint harmoniously describe the degree of control that Reynolds allegedly exercises over CVR. Opp. 19-20. But that is plainly incorrect. The First Amended Complaint repeatedly asserted that Reynolds, equally with CDK, "owned" and "controlled" CVR. FAC ¶¶ 55, 141, 223. Yet in the Second Amended Complaint, MVSC whitewashed these allegations, replacing them (with one key exception) with allegations that only CDK exercised control.

MVSC tries to explain away the discrepancy by stating that the First Amended Complaint's allegations "simply reflected Reynolds' 20% ownership stake" in CVR. Opp. 19. But that mischaracterizes the First Amended Complaint. For example, paragraph 55 of that pleading did not mention Reynolds' level of ownership but twice stated that both CDK *and* Reynolds "control" CVR, including by "control[ling]" its "direction and management" and by "supervising" its "operations and personnel." FAC ¶ 55. Even if MVSC were right that its earlier

-5-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

1 allegations hinged on Reynolds' 20% control over CVR, the SAC *continues* to
2 allege that Reynolds is a 20% owner of CVR and exhibits other characteristics of
3 economic integration, like participating in management and sharing profits. SAC
4 ¶¶ 55-56, 110. Other than gamesmanship, there is no basis for deleting the
5 allegations of Reynolds' control.[2]

6 MVSC has engaged in just the sort of "artful[] pleading" that permits a
7 district court to disregard later, inconsistent allegations. *Rodriguez v. Sony*
8 *Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015). Indeed, the
9 Second Amended Complaint *still* alleges—in the just-referenced exception—that
10 "CDK *and* Reynolds . . . control the management and decisionmaking of CVR."
11 SAC ¶ 152 (emphasis added). MVSC acknowledges that it continues to allege
12 Reynolds's control and offers no explanation. Opp. 19. Even if the Court did
13 ignore MVSC's prior pleadings, therefore, the Second Amended Complaint's
14 unequivocal allegation that Reynolds also controls CVR's management and
15 decisionmaking warrants dismissal under *Copperweld* and its progeny. So too does
16 the internal inconsistency of alleging that CDK and Reynolds both control CVR
17 while also alleging that CDK alone controls CVR. *Wuxi Multimedia, Ltd. v.*
18 *Koninklijke Philips Elecs., N.V.*, 2006 WL 6667002, at *9 (S.D. Cal. Jan. 5, 2006),
19 *aff'd*, 280 F. App'x 968 (Fed. Cir. 2008) (dismissing antitrust claims and rejecting
20 "internally inconsistent" allegations).

21 **B.  In The Alternative, Allegations That CVR Conspired With The**
22 **Other Defendants Are Not Plausible Under *Twombly*.**

23 The SAC fails to allege a conspiracy involving CVR for a second,

---

[2] MVSC's careful parsing of these allegations is particularly unconvincing given its contrived argument for estopping Reynolds. *See supra* p. 2. MVSC first argues that Reynolds should be estopped from contesting the conspiracy allegations with respect to CVR based on an exaggerated "inconsistency," then turns around and asks the Court to ignore MVSC's own internally inconsistent pleadings.

-6-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

independent reason: the conspiracy alleged in the Second Amended Complaint simply is not plausible. *See Twombly*, 550 U.S. at 570 (plaintiff must allege "enough facts to state a claim to relief that is plausible on its face").

As described above, MVSC largely concedes that *Copperweld* precludes a conspiracy claim against CVR and CDK. Instead, MVSC argues (unsuccessfully) that *Copperweld* does not preclude a claim against CVR and *Reynolds*.

When it comes to *Twombly*, however, MVSC makes the opposite concession. MVSC makes no effort to plead any particulars of purported "conspiratorial conversations" between CVR and Reynolds. SAC ¶ 111 (conclusory allegation and nothing more); *see also* Mem. 5-6 ("no specific conversation involving Reynolds is described, nor is any specific person from Reynolds identified as a participant").[3] Instead, MVSC argues (again unsuccessfully) that persons at CVR engaged in supposed conspiratorial conversations with persons at *CDK*. Opp. 14-15.

Even assuming that CVR and CDK could conspire in the first place, however, the threadbare allegations in the Second Amended Complaint do not plausibly allege a conspiracy. MVSC first contends that an unnamed "long-time member" of the CVR board told MVSC at some unspecified time about an undetermined board meeting. SAC ¶ 110. Those present at the meeting supposedly "agreed that CVR needed a competitive advantage . . . regarding access to dealer data." SAC ¶ 110. If all a plaintiff needed to do to surmount the plausibility standard was make such vague allegations, *Twombly* would effectively be a dead letter. Of course, that is not the law: "[A] conclusory allegation of agreement at some unidentified point *does not* supply facts adequate to show illegality."

---

[3] In response to the argument that MVSC's SAC says "nothing new about Reynolds," MVSC mentions only that it "allege[d] that Reynolds representatives sat on CVR's board." Opp. 16 n.10. But this is neither new (FAC at ¶¶ 55, 101) nor specific enough to plausibly allege a conspiracy.

-7-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896

1  *Twombly*, 550 U.S. at 557 (emphasis added).

2  MVSC next alleges that CVR executives "participated" in additional unspecified meetings where CDK gave presentations on the 3PA program indicating CDK's intention to exclude CVR and discussing "how much money CDK would make" if MVSC had access to the 3PA program. SAC ¶¶ 112-13. But again, MVSC does not allege with any specificity that the CVR executives at these meetings agreed to join or further the purported conspiracy in any way. Mem. 6.

Finally, MVSC alleges that CVR's general manager—identified as *CDK*'s general manager in the Second Amended Complaint—had unspecified discussions with CDK about blocking MVSC. Opp. 15. The Second Amended Complaint once again fails to reference any agreements, nor does it say anything specific about these discussions. SAC ¶ 114. It states only that CVR's general manager told his salespeople to "be prepared" to try to acquire dealers from MVSC. *Id*. There is nothing wrong with such a directive. As MVSC concedes, the antitrust laws do not prohibit "sharp business practices" (Mem. 6 n.4) (alteration omitted), and with good reason. "Were intent to harm a competitor alone the marker of antitrust liability, the law would risk retarding consumer welfare by deterring vigorous competition." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1078 (10th Cir. 2013) (Gorsuch, J.).

**C.  The State-Law Claims Against CVR Must Be Dismissed.**

MVSC does not dispute—and this Court has already held—that MVSC's state-law claims against CVR rise and fall with its federal claims. Because the Section 2 conspiracy claim against CVR fails, the Court should dismiss the state-law claims against CVR with prejudice as well.

## CONCLUSION

MVSC has tried three times to state an actionable claim against CVR. Because it has again failed to do so within the confines of *Copperweld* and *Twombly*, its claims against CVR should be dismissed with prejudice.

Respectfully submitted,

By: */s/ John Nadolenco*
MAYER BROWN LLP
John Nadolenco (SBN 181128)
*jnadolenco@mayerbrown.com*
350 South Grand Ave
25th Floor
Los Angeles, CA 90071-1503
(213) 229-9500
(213) 625-0248 – Facsimile

Britt M. Miller (*pro hac vice*)
*bmiller@mayerbrown.com*
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
(312) 701-7711 – Facsimile

Mark W. Ryan (*pro hac vice*)
*mryan@mayerbrown.com*
1999 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000
(202) 263-3300 – Facsimile

*Attorneys for Defendant Computerized Vehicle Registration*

-9-
REPLY IN SUPPORT OF COMPUTERIZED VEHICLE REGISTRATION'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT; CASE NO. 2:17-CV-896