```
 1                IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION

 3
      IN RE:                         ) Docket No. 18 C 864
 4                                   )
        DEALER MANAGEMENT SYSTEMS    )
 5      ANTITRUST LITIGATION.        )
                                     ) Chicago, Illinois
 6                                   ) March 12, 2018
                                     ) 1:30 o'clock p.m.
 7

 8                TRANSCRIPT OF PROCEEDINGS - STATUS
                BEFORE THE HONORABLE AMY J. ST. EVE
 9

10    APPEARANCES:

11
      For Plaintiffs:           KELLOGG, HANSEN, TODD, FIGEL &
12                                FREDERICK, PLLC
                                BY:  MR. DEREK T. HO
13                                   MR. MICHAEL N. NEMELKA
                                1615 M Street, N.W., Suite 400
14                              Washington, D.C.  20036

15                              GODFREY & KAHN, SC
                                BY:  MS. JENNIFER L. GREGOR
16                              One East Main Street, Suite 500
                                Madison, Wisconsin  53703
17
                                MR. SAMUEL ISSACHAROFF
18                              40 Washington Square South
                                New York, New York  10012
19
                                MILBERG, LLP
20                              BY:  MS. PEGGY J. WEDGWORTH
                                1 Penn Plaza, Suite 4800
21                              New York, New York  10119

22                              KAPLAN, KILSHEIMER & FOX, LLP
                                BY:  MR. ROBERT N. KAPLAN
23                              805 Third Avenue
                                New York, New York  10022
24

25
```

2

```
 1   APPEARANCES (Cont'd):

 2
     For Plaintiffs (Cont'd):   CUNEO, GILBERT & LADUCA, LLP
 3                              BY:  MR. JONATHAN W. CUNEO
                                     MS. VICTORIA ROMANENKO
 4                              4725 Wisconsin Avenue, N.W.
                                Suite 200
 5                              Washington, D.C.  20016

 6                              ROBERTS LAW FIRM, P.A.
                                BY:  MR. MIKE L. ROBERTS
 7                              20 Rahling Circle
                                Little Rock, Arkansas  72223
 8
                                BEASLEY, ALLEN, CROW, METHVIN,
 9                                PORTIS & MILES, P.C.
                                BY:  MR. ARCHIBALD I. GRUBB, II
10                              Post Office Box 4160
                                Montgomery, Alabama  36103
11
                                CLIFFORD LAW OFFICES, P.C.
12                              BY:  MR. ROBERT A. CLIFFORD
                                120 North LaSalle Street, 31st Fl.
13                              Chicago, Illinois  60602

14                              ROBBINS, GELLER, RUDMAN & DOWD, LLP
                                BY:  MS. ALEXANDRA S. BERNAY
15                              655 West Broadway, Suite 1900
                                San Diego, California  92101
16
                                ROBBINS, GELLER, RUDMAN & DOWD, LLP
17                              BY:  MR. JAMES E. BARZ
                                200 South Wacker Drive, Suite 3100
18                              Chicago, Illinois  60606

19                              MILLER LAW, LLC
                                BY:  MR. MARVIN A. MILLER
20                              115 S. LaSalle St., Suite 2910
                                Chicago, Illinois  60603
21
                                LABATON SUCHAROW, LLP
22                              BY:  MR. CHRISTOPHER J. McDONALD
                                     MR. GREGORY ASCIOLLA
23                                   MS. KARIN E. GARVEY
                                140 Broadway, 34th Floor
24                              New York, New York  10005

25
```

```
 1    APPEARANCES (Cont'd):

 2
      For Plaintiffs (Cont'd):   GIBBS LAW GROUP
 3                               BY:  MR. ERIC GIBBS
                                 505 14th Street, Suite 110
 4                               Oakland, California  94612

 5                               GUSTAFSON GLUEK, PLLC
                                 BY:  MR. DANIEL C. HEDLUND
 6                                    MS. MICHELLE J. LOOBY
                                      MR. DAVID A. GOODWIN
 7                               120 South 6th Street, Suite 2600
                                 Minneapolis, Minnesota  55402
 8
                                 WEXLER WALLACE, LLP
 9                               BY:  MR. KENNETH A. WEXLER
                                 55 West Monroe Street, Suite 3300
10                               Chicago, Illinois  60603

11    For CDK and Computerized   MAYER BROWN, LLP
      Vehicle Registration:      BY:  MS. BRITT M. MILLER
12                               71 South Wacker Drive
                                 Chicago, Illinois  60606
13
                                 MAYER BROWN, LLP
14                               BY:  MR. MARK W. RYAN
                                 1999 K Street, N.W.
15                               Washington, D.C.  20006

16    For The Reynolds and       GIBBS & BRUNS, LLP
      Reynolds Company:          BY:  MS. AUNDREA K. GULLEY
17                                    MR. BRIAN T. ROSS
                                      MS. KATHY D. PATRICK
18                               1100 Louisiana, Suite 5300
                                 Houston, Texas  77002
19
                                 SHEPPARD, MULLIN, RICHTER
20                                 & HAMPTON, LLP
                                 BY:  MR. LEO CASERIA
21                               333 South Hope Street, 43rd Floor
                                 Los Angeles, California  90071
22

23    Also Present:             MR. STEVE COTTRELL, Authenticom
                                 MR. MAYER GRASHIN, CDK
24                               MR. JONATHAN EMMANUAL,
                                   Reynolds and Reynolds
25
```

4

1   APPEARANCES (Cont'd):

2

Court Reporter:              MR. JOSEPH RICKHOFF
3                            Official Court Reporter
                             219 S. Dearborn St., Suite 1232
4                            Chicago, Illinois  60604
                             (312) 435-5562
5

6               *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

7                       PROCEEDINGS RECORDED BY
                        MECHANICAL STENOGRAPHY
8                  TRANSCRIPT PRODUCED BY COMPUTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE CLERK:  18 C 864, In Re: Dealer Management
 2   Systems Antitrust Litigation.
 3              THE COURT:  Good afternoon.
 4              MR. BARZ:  Good afternoon, your Honor, Jim Barz on
 5   behalf of the plaintiff Baystate Ford.  I'm going to introduce
 6   some of the folks in my group, if you will.
 7              You've got myself and Zan Bernay from Robbins,
 8   Geller.
 9              MS. BERNAY:  Good afternoon, your Honor.
10              THE COURT:  Good afternoon.
11              MR. BARZ:  You've got Bob Kaplan, the Kaplan law
12   firm.
13              THE COURT:  And if you would stand, please, just
14   because there are a lot of people in front of me to see.
15              MR. BARZ:  We have Vickie Romanenko from the Cuneo
16   firm, as well --
17              MS. ROMANENKO:  Good afternoon, your Honor.
18              THE COURT:  Good afternoon.
19              MR. BARZ:  -- as well as John Cuneo.
20              THE COURT:  Good afternoon.
21              MR. CUNEO:  Good afternoon, your Honor.
22              MR. BARZ:  We also have Marvin Miller.
23              MR. MILLER:  Good afternoon, your Honor.
24              THE COURT:  Good afternoon.
25              MR. BARZ:  And those will be the folks from our group
```

```
 1    that you may hear from today.
 2             THE COURT:  Okay.  Thank you.
 3             When you say "our group," how are you defining "our
 4    group"?
 5             MR. BARZ:  I mean the group that expects to file a
 6    motion for appointment as lead counsel on behalf of the
 7    dealership cases.
 8             THE COURT:  Okay.
 9             And is that the 12-dealership or the 12 plus the four
10    from the other?
11             MR. BARZ:  That's the 12, yes.
12             THE COURT:  Okay.
13             And, then, do we have representatives from
14    Authenticom and --
15             MR. ISSACHAROFF:  Yes, your Honor.
16             THE COURT:  -- the other four dealerships, which is
17    how you --
18             MS. WEDGWORTH:  Your Honor, I'm also on behalf of the
19    12 dealerships, as well.  We don't have --
20             THE COURT:  And you are?
21             MS. WEDGWORTH:  Peggy Wedgworth on behalf of four
22    dealerships.  We filed two complaints.
23             I am also planning to make a motion for lead counsel
24    of the 12 dealerships.
25             THE COURT:  Okay.
```

1          MS. WEDGWORTH:  And with me today, I also have Eric

2    Gibbs.

3          THE COURT:  Good afternoon.

4          MR. GIBBS:  Good afternoon, your Honor, Eric Gibbs.

5          THE COURT:  And, so, you are on behalf of the 12

6    dealerships?

7          MS. WEDGWORTH:  Yes, your Honor.

8          THE COURT:  Okay.

9          And, then, is there someone here on behalf of

10   Authenticom --

11         MR. ISSACHAROFF:  Yes.

12         THE COURT:  -- and the other four dealerships?

13         MR. ISSACHAROFF:  Yes, your Honor, and MVSC and Cox

14   Automotive.

15         THE COURT:  Okay.

16         MR. ISSACHAROFF:  Samuel Issacharoff.  And with me

17   today is Derek Ho and Michael Nemelka from the Kellogg, Hansen

18   firm.

19         Also, we will be proposing to be lead counsel for the

20   MDL.

21         And we have also Jennifer Gregor -- I have to look up

22   the inform- -- Godfrey & Kahn firm in Wisconsin, who we will

23   suggest as liaison counsel for the MDL.

24         And, then, with us, we have representatives of some

25   of the dealership classes of the four in addition.  So, we

1    have Michael --

2            MR. ROBERTS:  Roberts.

3            MR. ISSACHAROFF:  -- Roberts.  I'm sorry.

4            MR. ROBERTS:  Mike Roberts, your Honor.

5            MR. ISSACHAROFF:  Michael Roberts of the Roberts Law

6    Firm, who represents one of those dealerships.

7            We have Greg Asciolla, Karin --

8            MR. ASCIOLLA:  Good afternoon, your Honor.

9            THE COURT:  Good afternoon.

10           MS. GARVEY:  Garvey.

11           MR. ISSACHAROFF:  -- Garvey and Chris McDonald --

12           MR. McDONALD:  Good afternoon.

13           MR. ISSACHAROFF:  -- from Labaton Sucharow, who

14   represent others.

15           And if I may, if the Court will indulge, I'd like to

16   introduce also Steve Cottrell, who is in the back, who is the

17   CEO of Authenticom.  I believe he's the only stakeholder in

18   the room.

19           And I think that's our whole team, if I'm not

20   mistaken.

21           MR. GRUBB:  I'll introduce myself.  I'm Archie Grubb

22   from the Beasley, Allen firm.

23           THE COURT:  Would you give me the last name again,

24   please.  Grubb?

25           MR. GRUBB:  Grubb, G-r-u-b-b.

1          THE COURT:  Thank you.

2          MR. GRUBB:  Thank you.

3          MR. ISSACHAROFF:  I think that's our whole group.

4          THE COURT:  Anybody else who wants to be introduced

5   on behalf of any plaintiffs?

6          MR. HEDLUND:  Good afternoon, your Honor, Dan Hedlund

7   with co-counsel Ken Wexler, Michelle Looby and Dave Goodwin,

8   here on behalf of Waconia Dodge.  We were listed in the status

9   report as a tag-along case.  We just filed late last week, and

10  I believe that the case has been assigned to you.

11         THE COURT:  Is that the case that was filed on March

12  8th?

13         MR. HEDLUND:  Yes.

14         THE COURT:  Yes.  I believe that has been transferred

15  over and is part of the MDL now.

16         MR. HEDLUND:  Okay.

17         THE COURT:  I think all the paperwork went through on

18  that.

19         MR. HEDLUND:  We've just sort of joined in and we're

20  going to sort of see what happens, and we'll decide where to

21  go from there.

22         THE COURT:  Okay.

23         MR. HEDLUND:  Thank you.

24         MR. BARZ:  And, your Honor, I guess I should also

25  point out Bob Clifford is here, as well.  He's on the

1    complaint with Mr. Cuneo, who is part of our group.

2         MR. CLIFFORD:  Good afternoon, your Honor.

3         THE COURT:  It is not like Mr. Clifford to be in the

4    back of the courtroom quiet.

5      (Laughter.)

6         MR. CLIFFORD:  I'm just watching around.

7      (Laughter.)

8         THE COURT:  Good afternoon, Mr. Clifford.

9         MR. CLIFFORD:  Thank you, your Honor.

10        THE COURT:  Anybody else?

11     (No response.)

12        THE COURT:  Okay.  Ms. Miller, it is your turn after

13   all of that.  Go ahead.

14        MS. MILLER:  Good afternoon, your Honor, Britt Miller

15   on behalf of the CDK defendants and Computerized Vehicle

16   Registration, and with me is my partner Mark Ryan.

17        THE COURT:  Good afternoon.

18        MR. RYAN:  Good afternoon, your Honor.

19        MS. MILLER:  That's it for us.

20        THE COURT:  Okay.

21        MS. GULLEY:  Good afternoon, your Honor, for The

22   Reynolds and Reynolds Company, Aundrea Gulley from Gibbs &

23   Bruns.  I'm here with my partners Kathy Patrick, Brian Ross,

24   as well as Leo Caseria from Sheppard, Mullin and Assistant

25   General Counsel for Reynolds, Jonathan Emmanual.

1        THE COURT:  Good afternoon.

2        MS. PATRICK:  Good afternoon, your Honor.

3        MR. ROSS:  Good afternoon, your Honor.

4        THE COURT:  Anybody else in the courtroom who wants

5   to introduce him or herself?

6        MR. GRASHIN:  Your Honor, Mayer Grashin with CDK.

7        THE COURT REPORTER:  Can you say that again, please,

8   sir.  I can't hear.

9        MR. GRASHIN:  Mayer M-a-y-e-r, last name Grashin,

10  G-r-a-s-h-i-n, at CDK Corporation.

11       THE COURT:  All right.

12       Well, you are here for your initial status before

13  this Court to bring some organization to the recently assigned

14  MDL.

15       I did receive your joint status report.  Thank you

16  for submitting that.

17       I have some issues for you, some questions for you.

18  You probably have some for me, as well.

19       Ms. Miller, thank you.  I know you helped coordinate

20  some of these things.  So, thank you for doing that.

21       The first thing I need to tell you is that the

22  documents from these other MDL cases are not automatically

23  transferred to my docket.  So, you noted in the Authenticom

24  case that there is a motion to dismiss pending.  I do not have

25  any of that.

```
 1            MS. MILLER:  We plan to refile it with your Honor.
 2            THE COURT:  So, my question for you is -- and I am
 3    not sure of the timing of when you filed that versus the
 4    Seventh Circuit's opinion on the preliminary injunction -- if
 5    you want to refile the exact same briefing or if you want to
 6    update your motion at all.  I do not care.  I am just going to
 7    give you some deadlines, depending on what you want to do.
 8            MS. MILLER:  From our standpoint, your Honor,
 9    briefing is closed and we're happy to refile.
10            THE COURT:  Okay.
11            MS. MILLER:  We think that on both Authenticom and
12    the MVSC, where actually oral argument was heard, that the
13    briefing record is closed on both and we can simply refile the
14    existing briefs with your Honor, and your Honor can rule.
15            THE COURT:  And are there two -- how many motions to
16    dismiss are there pending in other cases that have been sent
17    here?
18            MS. MILLER:  There are --
19            MS. GULLEY:  There's four.
20            MS. MILLER:  Well, we each -- there's motions --
21    there's two motions to dismiss in two cases.
22            THE COURT:  Okay.
23            MS. MILLER:  One in Authenticom.  There's a motion to
24    dismiss by CDK, and there's a motion to dismiss by Reynolds.
25            In the MVSC matter, there are motions to dismiss by
```

13

```
 1    CDK, by Reynolds, and by Computerized Vehicle Registration or
 2    CVR.
 3              THE COURT:  Okay.
 4              If you could please get the briefing -- and I assume
 5    there will not be any objection from the plaintiff if you just
 6    take all of the briefing and refile the motion, the response,
 7    the reply; and, the one where there was oral argument, if you
 8    would file the transcript.
 9              I know you identified it --
10              MS. MILLER:  Yeah.
11              THE COURT:  -- but, again, I cannot get into those.
12              MS. MILLER:  We'll refile.
13              THE COURT:  I always think with MDLs there should be
14    a better way to give us access --
15              MS. MILLER:  Sure.
16              THE COURT:  -- to the files, but that has not been
17    quite figured out yet.
18              So, if you would, please, by the end of the week --
19              MS. MILLER:  Yep.
20              THE COURT:  -- refile all of the briefing, including
21    any oral argument transcripts, on this docket.  I was not even
22    aware there were motions to dismiss.  So that I can turn to
23    those.
24              MS. MILLER:  We'll take care of it right away.
25              THE COURT:  Great.  Thank you.
```

1      MS. MILLER:  Yep.

2      THE COURT:  And, then, for the dealerships -- the 12

3  dealerships -- it looks as if you want to file a consolidated

4  amended complaint on behalf of the dealerships.  Defendants

5  think it should be one.  There may be some dispute among the

6  plaintiffs' attorneys.

7      I think it should be one.  It is just much easier to

8  deal with that way.  You can have multiple subparts, multiple

9  classes, whatever you want; but, I prefer one motion.

10      Yes?  Did you want to jump in there?  You look like

11  you want to say something.

12      MR. KAPLAN:  Of course, your Honor, we'll --

13      THE COURT:  Identify, if you are speaking -- just

14  because we are not familiar with all of you yet, identify your

15  name, please.

16      MR. KAPLAN:  I'm Robert Kaplan, Kaplan, Fox &

17  Kilsheimer, LLP.  I'm -- Mr. Barz.

18      We will, of course, do what your Honor said.  Our

19  thought -- and it's still developing -- that because there is

20  an arbitration clause with Reynolds, we might possibly want to

21  do one complaint for the CDK dealers which would name Reynolds

22  and CDK, and a second complained for the Reynolds dealers

23  which would only name CDK.  We can put it all in one

24  complaint, but I think my worthy colleagues might argue that

25  the arbitration issues are more intertwined.

1          So, we haven't decided, but we would like possibly

2    the option to consider something like that.

3          THE COURT:  My inclination --

4          MR. KAPLAN:  But if your Honor wants one complaint,

5    of course that's what we'll do.

6          THE COURT:  My inclination would be to do one, and

7    then we can address if we need to sever it, or whatever we

8    need to do, based on arbitration clauses.  But it is always

9    easier and cleaner to work off of one where possible.  And

10   given the allegations here, one seems to make sense to me.

11         MR. KAPLAN:  That's fine, your Honor.

12         THE COURT:  So, that is my preference.  If I am

13   missing something or you --

14         MR. KAPLAN:  That's what we'll do.

15         THE COURT:  My preference is to do one.

16         MR. KAPLAN:  That's what we'll do.  Thank you.

17         THE COURT:  And I will give you some dates for

18   things --

19         MR. KAPLAN:  Thank you.

20         THE COURT:  -- before you leave here today.

21         The arbitration clauses, that was mentioned in the

22   joint status report, as well.  Can you shed any light for me

23   on those?  And have any of those issues been litigated in the

24   other courts out in California or Wisconsin yet?

25         MS. GULLEY:  No, your Honor.  They haven't been

 1    litigated before.

 2         The Reynolds arb- -- Reynolds' contracts with its

 3    dealers and vendors have arbitration clauses negotiated with

 4    the automotive dealerships.  And, so, we'll be moving to

 5    compel arbitration.  But the dealership complaints have only

 6    just been filed.  So, none of that's been litigated.

 7         THE COURT:  Okay.

 8         And is there a dispute about the arbitration clause?

 9    Is that something that is going to be litigated or is there

10    agreement that the arbitration clause will control on the

11    Reynolds cases?

12         MR. KAPLAN:  I would like to reserve on that, your

13    Honor.

14         THE COURT:  Okay.

15         MR. KAPLAN:  There's some -- the language is somewhat

16    ambiguous.  But if we could just reserve on that for another

17    day.

18         THE COURT:  Yes, you may.

19         You may want to -- and I have not seen any of these,

20    but just given the scope of this case and the MDL nature of

21    it, you may want to have some preliminary discussions about

22    who to arbitrate it.  I do not know if that is covered in the

23    provision or not or if you have to agree on an arbitrator, but

24    you may not want to wait for those discussions, because I know

25    sometimes those can delay if it is going to go forward that

1  way.

2           MS. GULLEY:  Understood.  Thanks, your Honor.

3           THE COURT:  Do any of you anticipate any other

4  tag-along cases?

5           You are probably in a better position to know that.

6           MS. MILLER:  We're currently not aware of any.  But

7  we just found out about the one that was filed on the 8th when

8  it was filed.  So, we've not been put on notice of any, but

9  these -- all these guys might know better.

10          MS. WEDGWORTH:  Your Honor, I'm not aware of any

11  right now; but, given the fact that some have been trickling

12  in each week, it would not surprise us that more are filed in

13  the next couple weeks.

14          THE COURT:  Mr. Barz, are you --

15          MR. BARZ:  I think --

16          THE COURT:  -- aware of any out there?

17          MR. BARZ:  -- in terms of -- I'm not aware of any.

18  But in terms of leadership, I think you should choose from

19  those that are filed.  I don't think it --

20          THE COURT:  That is a separate issue.

21          MR. BARZ:  Sure.

22          THE COURT:  I am just trying to figure out for --

23          MR. BARZ:  Well, sometimes it's not, because people

24  get others to file to lend a hand.

25          THE COURT:  That is a separate issue for the purposes

1    of what I am addressing now.  We will talk about --

2            MR. BARZ:  Sure.

3            THE COURT:  -- leadership in a bit.  But I am just

4    trying to get my arms around what else might be coming in.

5            MR. HO:  Your Honor --

6            THE COURT:  Yes, Mr. Ho?

7            MR. HO:  -- Derek Ho from Kellogg, Hansen.

8            We do anticipate having another action by a vendor

9    similar to the action that was brought by Cox Automotive.

10   It's obviously not on file yet, but we do anticipate that.

11           THE COURT:  Okay.

12           And you are just going to file that here as a

13   tag-along; is that correct?

14           MR. HO:  We are not quite sure.  We're still talking

15   with our client about that particular issue.

16           THE COURT:  In light of the MDL's order and the order

17   I have entered, it might make sense, rather than filing it in

18   some other state and going through the process of coming here,

19   that you can file directly here.

20           MR. HO:  That's certainly something we're

21   considering, your Honor.

22           MR. GIBBS:  Your Honor, it's Eric Gibbs.

23           I don't want to surprise the Court, but we have a

24   growing number of dealership clients.  So, I anticipate we'll

25   file at least one additional class case.  And, of course,

1   we'll procedurally set that so it's as simple as possible and

2   try to avoid the delay by the MDL.

3          THE COURT:  Mr. Gibbs or Mr. Ho, do you have any

4   sense of timing on these additional complaints?  Do you expect

5   it this month?

6          MR. GIBBS:  Yes, by the end of this month.  I think

7   that's fair.

8          MR. HO:  Same here, your Honor.

9          THE COURT:  Okay.

10         Anybody else aware of any tag-alongs?

11     (No response.)

12         THE COURT:  All right.

13         So, a consolidated amended complaint, when do you

14   think you will be ready to file that?

15         MR. KAPLAN:  Robert Kaplan.

16         We propose 60 days after appointment of lead counsel.

17         THE COURT:  Okay.

18         Was there any dispute on that timing?

19         MS. MILLER:  We didn't have any objection to the 60

20   days, your Honor.

21         THE COURT:  And, then, I know you proposed 45 days

22   after to answer or otherwise plead.

23         MS. MILLER:  Yes, your Honor.

24         THE COURT:  Which is fine.

25         MS. MILLER:  The only thing the parties were not able

1   to agree on was, in the event we move to dismiss, a briefing

2   schedule.

3           THE COURT:  And I can wait and see what the motion

4   looks like --

5           MS. MILLER:  That's great.

6           THE COURT:  -- before setting a briefing schedule.

7           And, then, answers, it looks like you were in

8   agreement:  28 days after the Court rules on the motion to

9   dismiss.

10          MS. WEDGWORTH:  Yes, your Honor.

11          THE COURT:  Which I will put that in place, as well.

12          MS. MILLER:  And, your Honor, we just want to make it

13  clear that to the extent your Honor allows it to -- you know,

14  them to replead, it would be -- we'd obviously wait to answer

15  until the whole thing was decided.

16          THE COURT:  Absolutely.

17          MS. MILLER:  Great.

18          THE COURT:  And I would give further direction on

19  that in any ruling.

20          MS. MILLER:  Perfect.  Thank you.

21          THE COURT:  When do you anticipate, Ms. Gulley, on

22  behalf of Reynolds, filing motions to compel arbitration?

23          MS. GULLEY:  We anticipate, your Honor, filing them

24  at the same time on the same schedule as the motions to

25  dismiss --

1    THE COURT:  Okay.  That is what I thought.

2    MS. GULLEY:  -- if that's all right with your Honor.

3    THE COURT:  That is fine.

4    And we are talking about the 12-dealership now.  I do

5 not know if you have motions -- if the arbitration provision

6 is going to be raised with respect to the other set of class

7 plaintiffs at all.

8    MS. GULLEY:  So, any dealers that are Reynolds

9 customers, it would apply to those, as well.

10    There are currently no vendors suing Reynolds.  The

11 Cox complaint is not filed against Reynolds.  And not all of

12 the dealers have --

13    THE COURT:  Right.

14    MS. GULLEY:  -- filed all the claims against

15 Reynolds.  However, if the new one we just heard about from

16 Mr. Ho involves Reynolds, that would also be subject to the

17 same issue.

18    THE COURT:  Okay.

19    So, I will give you some specific deadlines.  I am

20 fine with the 60 days after appointment.  I will give you some

21 specific deadlines when we talk at the end this morning -- or

22 this afternoon -- about appointment of lead counsel.  Before I

23 get into that, though, let's talk about the protective order.

24    So, there is already a protective order in place in

25 the Authenticom cases up in Wisconsin, correct?

```
 1              MS. MILLER:  Yes, your Honor.  There was a protective

 2    order entered by -- an agreed protective order entered by --

 3    the parties in that case and entered by the Court, and the

 4    parties have produced documents pursuant to that protective

 5    order.

 6              THE COURT:  And have both defendants produced -- are

 7    you a party and --

 8              MS. GULLEY:  Yes, your Honor, both --

 9              THE COURT:  -- subject to that protective order?

10              MS. GULLEY:  Both defendants, yes, your Honor.

11              THE COURT:  Does that protective order cover ESI --

12              MS. MILLER:  Yes.

13              THE COURT:  -- production and protocol, as well?

14              MS. GULLEY:  It's a separate --

15              MS. MILLER:  We have -- we had a separate ESI

16    protocol that was entered by Judge Peterson, also agreed, that

17    sets out all of the various metadata and characteristics; and,

18    we have produced documents in accordance with that

19    stipulation.

20              MS. GULLEY:  Well, although most of our production so

21    far have been just reproduction --

22              MS. MILLER:  Correct.

23              MS. GULLEY:  -- of prior government productions.

24              THE COURT:  Right.  That is what you represented.

25              And you are working on a protective order for the
```

 1    MDL?

 2            MS. MILLER:  We've --

 3            MS. WEDGWORTH:  Yes, your Honor.

 4            MS. MILLER:  -- been told by some of the plaintiffs

 5    that they have some objections -- we do not know what they are

 6    -- to the Authenticom order, and that they are going to

 7    propose some changes to that.  We've agreed to hear them

 8    out --

 9            THE COURT:  Okay.

10            MS. MILLER:  -- and see if there are any -- if we

11    agree any modifications need to be made.  If not, we'll bring

12    those issues to your Honor.

13            MS. WEDGWORTH:  Your Honor, Peggy Wedgworth.

14            We have looked at it.  We've edited it among

15    ourselves.  And as you can see, it's a large group.  So, it's

16    hard to get all the comments in.

17            The simple question from defendants was:  Are the

18    edits bigger than a bread box?  And I think the answer is yes.

19            So, we have something in the works, both on ESI and

20    protective order.  And given we didn't participate there, we

21    do plan to get them comments as soon as possible, because if

22    there's still disagreement by March 30th, we'll bring it to

23    the Court.

24            MS. MILLER:  And, your Honor, I mean, our biggest

25    concern is that what we've already produced is protected by

1    the orders that are currently in place and we won't have to --

2              THE COURT:  And it will be.  It will be.

3              Any documents that the defendants have already

4    produced subject to the protective order in the Authenticom

5    case will remain subject to that protective order.  And out of

6    fairness -- you have relied on that -- that is only

7    appropriate.

8              The protective order here -- I do not know what your

9    issues are.  There is a form protective order in the Northern

10   District of Illinois forms.  But if there is one in place, I

11   do not know if Wisconsin has a form protective order --

12             MS. MILLER:  We took the Northern District of

13   Illinois form into account as we were negotiating the one in

14   the Western District simply because it was one of the few --

15   this district is one of the few that has a form.  So, we used

16   it as a basis in the negotiations.  It's certainly not

17   identical, but there are elements of it.  And I think all of

18   the things that are addressed in the form are addressed in

19   this order.

20             THE COURT:  Okay.  I was going to direct you to look

21   at that in your discussions.

22             MS. WEDGWORTH:  And we have.  We've taken that into

23   account.  But as she said, some of the changes made affect new

24   thoughts, as well, and new procedure and permutations.  And

25   we're addressing that from our standpoint.  Since we're

1   dealerships, it's a little bit of a different dynamic.

2          MR. BARZ:  So --

3          THE COURT:  One second.

4          Is there a protective order in the California case,

5   as well?

6          MS. GULLEY:  Yes, your Honor.  The Authenticom one

7   was the --

8          MS. MILLER:  It wasn't entered.

9          MS. GULLEY:  Oh, it wasn't entered?

10         MS. MILLER:  No.

11         MS. GULLEY:  It didn't get there.

12         THE COURT:  And there is no protective --

13         MS. WEDGWORTH:  And we took that one, too.  We've

14   looked at the one in California, which actually, for instance,

15   has definitions, whereas the Northern District of Illinois did

16   not and the Wisconsin does not.  So, we've -- those are the

17   kinds of things we're inserting to incorporate all of these

18   issues.

19         THE COURT:  And I will let you work on that and see

20   if you can reach agreement.

21         So, the one in California was not entered, correct?

22         MS. MILLER:  I don't believe so.  It was --

23         THE COURT:  Have you produced any documents?

24         MS. MILLER:  It was entered.  I'm told it was

25   entered.

1          THE COURT:  My bigger question is:  Have you produced

2   any documents pursuant --

3          MS. MILLER:  No.

4          THE COURT:  -- to that protective order?

5          MS. MILLER:  No.

6          THE COURT:  All right.  So, it is only the

7   Authenticom protective --

8          MS. MILLER:  Correct.

9          THE COURT:  -- order that you produced documents.

10          So, anything that you produced pursuant to that

11   protective order will be covered by that protective order.

12   And I will wait and see -- I am going to give you until March

13   30th to hopefully file an agreed protective order with the

14   Court; and, if you cannot agree, you can file a motion and I

15   will resolve it.  But I am hoping that -- you are all

16   professional and experienced in --

17          MR. BARZ:  Your Honor --

18          THE COURT:  -- these complex cases -- that you can

19   agree.

20          Yes, Mr. Barz?

21          MR. BARZ:  To put a small point on that, because the

22   discussions about the protective order and ESI are not

23   vis-a-vis the Northern District of Illinois standard terms.

24   It's more because that was negotiated between competitors with

25   Authenticom suing them as a competitor, but we are now the

1    dealers.  So, there's some nuances and things that we think

2    are not applicable to us, like attorneys' eyes -- certain

3    provisions that you would negotiate with a competitor that

4    wouldn't necessarily be applicable to the dealers, as well as

5    certain protections we need for our data that weren't

6    anticipated by the competitor.

7            So, those are the things --

8            MS. MILLER:  We're certainly happy to entertain if

9    there's certain protections they need for their clients.  We

10   would certainly believe that there is absolutely a necessary

11   for an outside "attorneys' eyes only."

12           MS. GULLEY:  Our clients are --

13           MS. MILLER:  Are competitors.

14           MS. GULLEY:  -- competitors.

15           MS. MILLER:  And, so --

16           THE COURT:  I am not saying that you should agree on

17   the Authenticom protective order, because I do not know what

18   it looks like.  So, I am just saying I hope that whatever your

19   final product looks like, that you can agree on it, file it

20   with the Court by March 30th; and, if not, you can file a

21   motion and I will address it then and see what your

22   differences are.  But not having seen the protective order, I

23   cannot even give you any general thoughts on it.

24           But, again, you are all professionals and this is not

25   your first time doing this.  So, hopefully you can reach

1     agreement on it so that we can move things along.

2             On an ESI order --

3             Was this about the protective order or something

4     else?

5             MS. ROMANENKO:  Protective order.

6             THE COURT:  Sure.  Go ahead.  And tell me your name

7     again, please.

8             MS. ROMANENKO:  Victoria Romanenko from Cuneo,

9     Gilbert & LaDuca.

10            So, your Honor, we're not seeking to take away any

11    protections that the defendants' documents are already

12    receiving under the Authenticom protective order.  And even

13    the new version that we will negotiate will include the two

14    tiers of protection on the "attorneys' eyes only" designation.

15            What our concern is, is that we're going to have one

16    dealership action and some documents in it will be subject to

17    one order, some will be subject to another's.  Every time we

18    have a filing and attach exhibits, we have to think, is this

19    exhibit subject to this order?  Is this exhibit subject to

20    that order?  Which provisions do we follow?  And we think

21    that's going to be very confusing.

22            So, our concern is just that once the protective

23    order is entered that we've all had a chance to negotiate,

24    that all the documents that are produced in our action are

25    subject to that order, including those ones that the

1    defendants are reproducing from the other actions or the FTC

2    investigation.

3           THE COURT:  Well, I anticipate that that will be

4    something that you discuss when you have your discussions

5    about the new protective order here.  And maybe you agree and

6    put something in place with respect to your prior productions.

7           I am just saying for purposes of now -- you can

8    certainly agree otherwise, but for purposes of now -- anything

9    that has been produced pursuant to that other protective order

10   will stay pursuant to that.

11          I share what you are saying.  That makes sense.  But

12   see if you could reach agreement on that.

13          MS. ROMANENKO:  Okay.

14          And if we won't, we can just submit it as part of the

15   briefing on the protective order issue, whether it's

16   prospective or not.

17          THE COURT:  That would be helpful to have in any

18   event, regardless of what your disputes are, just to see what

19   the other one looks like.

20          MS. ROMANENKO:  Thank you.

21          THE COURT:  Does the current protective order -- you

22   said it does cover ESI but not protocol?

23          MS. MILLER:  No, there's two separate orders, your

24   Honor.  There's a confidentiality order that was entered, and

25   then there is an ESI stipulation and protocol that covers all

1   of the ESI protocols, including metadata fields and all of the

2   stuff that the ESI protocols here in the Northern District

3   contemplate.

4              THE COURT:  Okay.

5              And have you had discussions about an ESI protocol in

6   this case?

7              MS. MILLER:  It's the same story.  We've been told

8   that the dealer --

9              MS. WEDGWORTH:  Second chapter.

10             MS. MILLER:  -- the dealer plaintiffs have some

11  proposed changes.  We do not know what those are.  But there

12  again, we don't want to be in a situation where we're having

13  to, you know, redo anything, and that what we have done stays

14  for the documents we have produced.

15             THE COURT:  Will you --

16             MR. BARZ:  Part --

17             THE COURT:  -- be in a position by March 30th to file

18  something --

19             MS. WEDGWORTH:  Yes.

20             THE COURT:  -- with respect to ESI, as well?

21             MS. WEDGWORTH:  Yes.

22             MR. BARZ:  I think either set of the proposed leads

23  would be in that position.  The question, of course, is when

24  half of us, one side or the other, drops out of this, then it

25  will be easier for the defendants get one set of edits.  It's

1    a little bit cumbersome with all the folks in the room having

2    thoughts.

3              THE COURT:  Well, one quality in lead counsel is

4    somebody who can work together with everybody.  So --

5              MR. BARZ:  And we've all tried that terrifically so

6    far in terms of the --

7              THE COURT:  That is important.

8              MS. MILLER:  From our standpoint, we're happy -- as

9    we said, we're happy to meet and confer with them, but we

10   obviously need it more than the 29th in order to meaningfully

11   respond and prepare a paper.  So, if your Honor would like to

12   set an interim date by when we need to exchange; but, if not,

13   we'll simply go forward and if we have any disputes, we'll

14   bring them to you.

15             THE COURT:  When will you be in a position to turn

16   over proposals?

17             MR. McDONALD:  Your Honor, this is Chris McDonald

18   from Labaton Sucharow on behalf of Bob Baker.

19             Part of the issue that we have here is there are

20   separate groups within the plaintiffs' dealers on it.  So, the

21   sooner that issue is decided, I think the sooner we'll be able

22   to move forward on all these issues.

23             THE COURT:  We will talk about it, then, at the end.

24             MS. WEDGWORTH:  We've edited it.  We -- at least some

25   and waiting on comments.  So, if today is the 12th --

```
 1              THE COURT:  Yes.

 2              MS. WEDGWORTH:  So --

 3              THE COURT:  Can you send it by Friday?

 4              MS. WEDGWORTH:  -- a week from today, next Monday, we

 5    can get it by 5:00 o'clock to defense counsel.

 6              THE COURT:  Great.  So, send over your draft with

 7    your proposals, joint by the plaintiffs, by March 19th at 5:00

 8    o'clock Central Time.

 9              MS. WEDGWORTH:  Done.

10              MS. MILLER:  Thank you, your Honor.

11              MS. GULLEY:  Thank you, your Honor.

12              THE COURT:  And same with the ESI, please.

13              MS. WEDGWORTH:  Yes.

14              THE COURT:  Send that over, as well.

15              There is a question now in terms of discovery and

16    going forward and the Authenticom case wanting -- some

17    discovery has already been done -- and wanting to move faster

18    in light of the circumstances.  And I have your proposals --

19              MR. KAPLAN:  May I speak to this?

20              MR. ISSACHAROFF:  I represent Authenticom; you don't,

21    Bob.

22              MR. KAPLAN:  Oh.

23              MR. ISSACHAROFF:  If I may?

24              MR. KAPLAN:  Oh, sure.  Please.

25              MR. ISSACHAROFF:  Thank you.
```

1          MR. KAPLAN:  Excuse me.

2          THE COURT:  What I do not know from your joint status

3     report is --

4          MR. KAPLAN:  I'm trying to support you.

5          THE COURT:  Just hold on.

6          What I do not know from your joint status report is

7     what discovery has already been exchanged in Authenticom, how

8     far along you are.  If it is just -- it sounded like maybe it

9     was just some written, not all written, and no ESI and nothing

10    oral yet.

11         MS. GULLEY:  That's right, your Honor.

12         MR. ISSACHAROFF:  That is --

13         MS. MILLER:  Your Honor, what we've exchanged is --

14    since we're the ones that have produced the most, I can say we

15    have exchanged -- each exchanged -- one set of document

16    discovery.  There have been some supplemental requests to

17    that.  I think there have been a handful of interrogatories

18    that have been served by one party.

19         But as Ms. Gulley noted before, all of the document

20    productions that have been done thus far are reproductions of

21    existing government productions, all but a handful.  So,

22    there's been no depositions, no expert discovery, anything of

23    that sort.

24         THE COURT:  Have --

25         MR. ISSACHAROFF:  Your Honor, I don't think --

```
1            THE COURT:  -- interrogatories been --

2            MR. ISSACHAROFF:  -- from my perspective --

3            THE COURT:  Have interrogatories been issued?

4            MS. MILLER:  One set of interrogatories was issued by

5   us --

6            THE COURT:  Did plaintiffs issue any?

7            MS. MILLER:  -- to plaintiff.

8            THE COURT:  Did plaintiffs issue any to you?

9            MS. MILLER:  No.

10           THE COURT:  Okay.

11           Yes, go ahead.

12           MR. ISSACHAROFF:  We disagree on the percentage of

13  the documents that are overlap, but that's not really

14  important right now.

15           The -- what we have is requests for production of

16  documents.  There's several hundred thousand -- 300,000 and

17  change -- and over a million.  That's been gone through.  We

18  were at the point of noticing depositions, and we were ready

19  to go forward with that when we got the stay order in the MDL

20  order.

21           So, we are at the point, speaking for Authenticom,

22  that we are prepared to immediately commence discovery, and we

23  think we should be able to immediately commence discovery, and

24  with the anticipation that we could hold to as close to our

25  trial date -- original trial date -- as possible.
```

1          THE COURT:  Do you not expect to issue

2     interrogatories?

3          MR. ISSACHAROFF:  We will issue interrogatories.

4          But, your Honor, we are in a position where we are

5     more eager to go to trial than we are to engage in extensive

6     discovery.  We could be ready for trial with surprisingly

7     little additional discovery over what we have now.  We have --

8          THE COURT:  Defendants may disagree with that, but --

9          MR. ISSACHAROFF:  They might disagree with that, but

10    not on the liability phase.  I don't think that anything that

11    we have done goes to the question of whether they conspired,

12    whether they tried to shut us out of the market.  I don't

13    think that there's any claim here that we are a joint tort

14    feasor of some kind in this process.

15         So, with regard to liability, we are prepared to move

16    very quickly, even if that costs us some of the normal range

17    of discovery that we would have.

18         As the Seventh Circuit noted, we're representing a

19    client in Authenticom that is at grave risk of going out of

20    business through the normal processes of delay when a business

21    is failing.

22         THE COURT:  I am certainly sympathetic to that, but I

23    also know that the Seventh Circuit noted, without addressing

24    any of the merits, that there may be viable defenses here.

25         So --

1      MS. GULLEY:  Right, your Honor.

2      THE COURT:  -- I appreciate both sides, and we will

3  try to accommodate that.  But before putting any deadlines in

4  place, I am trying to get a sense of what has been done --

5      MR. ISSACHAROFF:  That's all that's been done.

6      THE COURT:  -- and what remains to be done.

7      MS. MILLER:  And --

8      THE COURT:  Have you produced any documents on behalf

9  of plaintiffs?

10     MR. HO:  Yes, we have, your Honor.  We've produced

11  documents to the plaintiffs.  Obviously, our document

12  discovery is not going to be nearly as voluminous as the

13  defendants'.  But, yes, we've produced documents.

14     We have received more than three -- about 350,000

15  documents.  I'm a little bit surprised to hear that those

16  consist almost solely of reproductions of the productions to

17  the government because that's quite the opposite of what the

18  defendants have been representing to us as they've been sort

19  of resisting additional discovery.

20     But the bottom line is that there has been extensive

21  document production going both ways; we've reviewed a lot of

22  those documents; and, we feel like we've identified the ones

23  that are critical to the case, which is why we had 12

24  depositions scheduled on January 12th, when Judge Peterson put

25  the stay in place.  So, we were on the cusp of going from the

1  document discovery phase to the oral discovery phase.

2       THE COURT:  Did you have discovery in connection with

3  the preliminary injunction hearing?  Was there expedited

4  discovery?

5       MS. MILLER:  No.

6       MS. GULLEY:  No, your Honor.

7       MR. HO:  There was no discovery as such under Rule

8  26; but, in support of the defendants' preliminary injunction

9  papers, there were voluminous attachments.  And, so, much of

10  the record in the preliminary injunction proceeding -- which

11  consisted of about 350 exhibits -- were documents that the

12  parties attached to their paper.  So, there was discovery in

13  that regard.

14       THE COURT:  Okay.

15       MS. GULLEY:  Your Honor, just real briefly in

16  response, because the motions to dismiss in Authenticom have

17  been fully briefed and pending since October, Reynolds has not

18  yet filed its counterclaims against Authenticom.

19       But just to take issue with counsel's statement,

20  there are certainly are questions -- and you'll hear it in the

21  oral argument in the Seventh Circuit -- regarding

22  Authenticom's violations of the Computer Fraud and Abuse Act

23  by accessing their system.  Those counterclaims have not been

24  filed.  No discovery has been served on that yet.

25       MS. MILLER:  And just to briefly respond to some of

1    the assertions, if you look at the production, since the

2    majority of the production has been made by my client, they're

3    clearly marked as having been produced in the prior government

4    proceedings.

5           We -- on the expedited schedule that we had where

6    Authenticom had noticed 12 depositions, we had -- we were on

7    an expedited schedule at that point, which was one of the

8    reasons that we asked for the stay.  We had produced documents

9    related to one of the custodians that was coming up for

10   deposition because we had agreed to produce them as

11   depositions were coming up.  So -- but with the exception of

12   that one custodian, all of the other documents that we had

13   produced -- which is the majority of that 300,000 -- were

14   documents that had been previously produced in the government

15   proceedings.

16          So, I'm not saying that's not a comprehensive set of

17   documents, and I have no doubt that they will have all sorts

18   of documents available to them and -- but discovery certainly

19   is not done insofar as Reynolds hasn't filed its

20   counterclaims, CDK hasn't filed its; and, we haven't had a

21   chance to do any of this in terms of -- vis-a-vis the other

22   dealer plaintiffs.  And we obviously need to be in a position

23   where we're doing this once.

24          THE COURT:  Has any discovery been exchanged with the

25   other 12 dealers?

```
 1            MS. WEDGWORTH:  No.

 2            MS. MILLER:  No.

 3            MR. HO:  No, your Honor.

 4            THE COURT:  Have you issued any?

 5            MS. WEDGWORTH:  No, your Honor.

 6            MR. BARZ:  No.

 7            MR. HO:  And, your Honor, if I may just add one thing

 8  -- it may be clear from the status report -- is that when

 9  discovery was stayed on January 12th of 2018, the case was on

10  track for trial in October, 2018.

11            THE COURT:  Right.

12            MR. HO:  And Chief Judge Peterson had made very clear

13  that that trial date was not going to move.  So, wherever we

14  were in discovery, I think it's fair to say that both sides

15  anticipated that we would be able to complete the discovery

16  process in the nine months or so between January and October.

17            MS. GULLEY:  We just disagree.

18            MS. MILLER:  I don't think that's a fair statement.

19  We had talked to the other side in terms of potentially seek-

20  -- we reserved the right to seek an extension of that

21  schedule, given the amount of discovery that we were being

22  told was going to be asked of us.  And we got 30(b)(6)

23  depositions -- deposition notices -- that had 156 subparts.

24  So, the chances of that being resolved and done and expert

25  reports out, from our standpoint, were slim.
```

1          But we understand that Authenticom was pushing

2   towards its trial date; but, ultimately, when these other

3   cases got filed, Judge Peterson entered the stay order that he

4   did and said, look, these cases have to be -- have to take

5   into account the MDL process.

6          THE COURT:  Is the Authenticom case a class case,

7   too?

8          MR. HO:  No, your Honor.

9          THE COURT:  It is not a class.

10          MR. HO:  It's an individual competitor case.

11          THE COURT:  Okay.

12          MR. HO:  Yes, there's no class component.

13          MR. ISSACHAROFF:  Authenticom has a unique role in

14   this hierarchy of proceedings.  So, there wouldn't be a class

15   there.

16          THE COURT:  Okay.

17          MR. HO:  But I would say the claim of Authenticom

18   having been excluded from the market is the linchpin of all

19   the other cases, including the class cases.

20          MR. ISSACHAROFF:  It's how the vendors got out shut

21   out --

22          THE COURT:  Right.

23          MR. ISSACHAROFF:  -- is how all this happens.

24          THE COURT:  I have read your complaint.

25          Okay.  Before I give you some discovery guidance,

1    let's talk about lead counsel and lead counsel structure.

2              MR. ISSACHAROFF:  If I may, your Honor?

3              THE COURT:  Yes.

4              MR. ISSACHAROFF:  We have a proposal on this, and I

5    think that there may be some confusion in the documents

6    between lead counsel for purposes of the MDL and the

7    subsequent appointment of interim lead or co-lead class

8    counsel pursuant to 23(g).

9              We have proposed that the class part of this be

10   pushed back a week, and that everybody be able to file papers

11   and make their requests to be appointed pursuant to 23(g).  We

12   have our proposal of how that should be; others have theirs.

13             But for the moment, I think the most important thing

14   is to start the MDL process rolling.  And for that, we think

15   that there should be the appointment of lead counsel and

16   liaison counsel.

17             Lead counsel, at this point it's impossible to see

18   how it can be other than Mr. Ho on behalf -- who has

19   represented the critical cases that have gone forward thus

20   far, MVSC and the Authenticom cases.  Those are the cases that

21   precipitated all this litigation.  Nobody would be in this

22   courtroom without those cases and, particularly, without the

23   injunction in Authenticom.

24             That's where the documents have gone.  I've seen some

25   of these documents because I'm co-counsel with them.  It moves

1    the ball tremendously in these cases.  My view, it

2    substantiates much of what we've alleged; but, obviously,

3    there will be disagreement on that.  But the critical part of

4    it is that it is already a repository of over a million pages

5    of documents, that we believe are the heart and soul of what

6    we are alleging here and form the foundation for everybody

7    else.

8            So, our proposal is that Mr. Ho be lead counsel for

9    the MDL; that he be able, as is normally the case with MDL

10   lead counsel, to assign responsibility for sub-working groups.

11   If there need to be groups doing particularly discovery on

12   class issues, if there need to be questions about dealership

13   structures and dealership agreements, all those can be set up

14   as subsets from the authority of the leadership of the MDL.

15           And we also propose that Jennifer Gregor be appointed

16   liaison counsel.  Ms. Gregor was the person who was

17   responsible for the coordination with Judge Peterson's court

18   as Authenticom was getting ready to go to trial.  She

19   participated heavily in the preliminary injunction hearing,

20   put on several of the key witnesses, including Brian Maas,

21   whose declaration you admitted into evidence today, from the

22   California Dealer Association.

23           We believe that that's a team that has already

24   performed this function in what has been the only part of this

25   litigation that has taken shape thus far.  It is the engine

1    that drives this entire train.  Nobody is here but for the

2    efforts of these counsel.

3            And, then, we would suggest that this Court have a

4    hearing at some point, when reasonably feasible, on the

5    question of the class components.  We have views that the

6    suggestion of the 12 group -- the group of 12 -- if I can call

7    -- group of 12 versus the group of four for just -- for ease

8    of reference -- that there be a two-year delay process in this

9    is just too long.  It's too long not just for Authenticom --

10   which obviously needs, as the Seventh Circuit recognized, to

11   go to trial more quickly -- but it's too long even for the

12   dealers, as Mr. Maas -- Mrs. Maas's declaration goes forward.

13           So, we have views -- strong views -- on who should be

14   the interim co-leads on the class counsel, but we recommend to

15   the Court that that be handled as a separate -- as a second

16   proceeding, so that we can get the MDL leadership assigned and

17   get this case moving forward as expeditiously as possible.

18           THE COURT:  I did not understand Ms. Wedgworth and

19   Mr. Barz to be saying -- correct me if I am wrong -- that they

20   were here to seek lead class counsel only.

21           MR. BARZ:  Correct.

22           THE COURT:  I understood you to be --

23           MS. WEDGWORTH:  That is correct.

24           THE COURT:  -- saying that you are -- you want to

25   seek as lead counsel in the MDL.

```
 1              MS. WEDGWORTH:  Correct.

 2              MR. BARZ:  Correct.

 3              THE COURT:  Okay.

 4              Then we are going to have to have a procedure to go

 5    about doing that.  And I will take your motions on that and,

 6    then, have you come back in short order to address that.

 7              Have you talked about -- and just so you know,

 8    whoever is selected as lead counsel and liaison counsel, I am

 9    going to want to see your proposed committees and approve your

10    proposed committees.  It is not -- you were suggesting that if

11    Mr. Ho is selected, that he get to do all this.

12              MR. ISSACHAROFF:  No, no, your Honor.

13              THE COURT:  That is not going to work that way.

14              MR. ISSACHAROFF:  No, no, I was not suggesting that

15    the Court --

16              THE COURT:  That is how I --

17              MR. ISSACHAROFF:  -- create a dictatorship.

18              THE COURT:  -- understood you.  Yes.

19              MR. ISSACHAROFF:  I misspoke.  That that be obviously

20    a recommendation to the Court to facilitate this.

21              But there's a sense, once you have a leadership

22    structure, of what the organizational form is that best

23    responds to the needs of this particular case.

24              This is not the typical MDL case.  There's not just

25    an overwhelming number of cases that are --
```

```
 1              THE COURT:  I am not sure there is --

 2              MR. ISSACHAROFF:  Well, there is no --

 3              THE COURT:  -- a typical MDL case.

 4              MR. ISSACHAROFF:  Yes, I realized as soon as I said

 5   that.

 6              THE COURT:  All of mine have been different.

 7              MR. ISSACHAROFF:  Yes.

 8              But this is not a huge --

 9              THE COURT:  I understand.

10              MR. ISSACHAROFF:  -- number of individual filings.

11   This is something that is -- really takes some thought as to,

12   given the experience with the discovery thus far, how best to

13   organize the case and, also, how to coordinate the class side

14   of the dealerships with the need of Authenticom to get to

15   trial as quickly as possible.

16              THE COURT:  Have you had discussions among

17   yourselves -- the plaintiffs' counsel -- about how to proceed

18   in terms of seeking lead counsel?

19              MR. BARZ:  We've had some discussions, your Honor.

20   We've had a lot of discussions about various, you know,

21   thoughts people had about leadership.  And as of now, we've

22   got a proposal to come in here and ask for some briefing.  I'm

23   not even sure that we've solidified whether we want just one

24   brief -- which would be my preference -- or whether you want

25   to go through the entire process of brief, response and reply.
```

1          THE COURT:  I will not need that much.

2          MR. BARZ:  Yeah.

3          THE COURT:  But I may want input on --

4          MR. BARZ:  So, I think in one brief -- because if you

5    do two, then everybody tells you how great they are in theirs

6    and, then, they wait to respond to everybody else's.  I think

7    we can put them both up front because I think we've now seen

8    where the groups have sorted out.

9          If I could just briefly respond to some of the points

10   that Mr. Issacharoff made.

11         Your Honor's exactly correct.  There's no dispute as

12   to who should lead the individual actions.  That's Kellogg.

13   Those are their clients.  But there is dispute amongst now

14   three sets of candidates and their various team components as

15   to who should lead the dealership cases.

16         We believe that it should not be the Kellogg group

17   and the group they've sort of assembled to represent the

18   dealer side because of a conflict.  And that is, where will

19   these damages ultimately lie?  Will they have lied with the

20   vendors or were they passed on to the dealers?

21         And you heard Mr. Issacharoff mention, for example,

22   that Authenticom is in a unique situation where they're

23   pressing to get to this trial right away.  I think he said --

24   and this is close; I don't expect to be verbatim but -- even

25   if it would cost us some of the normal discovery.

 1          Well, that's not a representation I would make as

 2   class counsel for the dealership group.  We want to get all

 3   the discovery we need.  We haven't been part of that.  We

 4   think the issues are similar but different, as well.

 5          And Judge Durkin just dealt with this in what's

 6   called the chicken broiler case, where there was a conflict

 7   amongst, you know --

 8          THE COURT:  I am aware of what he -- he and I spoke

 9   about that.

10          MR. BARZ:  Okay.  Great.

11          And originally he said, well, I don't think it will

12   be that big of an issue, and then a couple months later, he

13   said, actually, it is, and appointed separate counsel.

14          So, I think the two competing groups on the

15   dealership side, Ms. Wedgworth and what I'll call my group,

16   agree that Kellogg and its group should just handle

17   Authenticom.

18          THE COURT:  So, are you proposing --

19          MR. McDONALD:  I'm sorry, your Honor, this is Chris

20   McDonald again --

21          THE COURT:  Wait, wait, wait.  Please do not

22   interrupt me.  We have got all afternoon.  So, I will give you

23   time to talk.

24          Are you proposing, then, Mr. Barz, that there be two

25   lead counsel, counsel for Authenticom and then counsel to

1    cover all the dealerships?

2                MR. BARZ:  Yes.

3                THE COURT:  Okay.

4                MR. BARZ:  Yes.

5                And we believe --

6                THE COURT:  Ms. Wedgworth, are you in agreement with

7    that?

8                MS. WEDGWORTH:  I'm certainly in agreement with it.

9    I --

10               THE COURT:  Two lead counsel, Ms. Wedgworth?

11               MS. WEDGWORTH:  Well, lead counsel for Authenticom --

12               THE COURT:  Yes.

13               MS. WEDGWORTH:  -- as a vendor.

14               THE COURT:  Individuals, yes.

15               MS. WEDGWORTH:  Yes.

16               THE COURT:  And to the extent other vendors come in.

17    I do not know if they will.

18               MS. WEDGWORTH:  It sounds like one is going to be

19    filed by Mr. Ho anyway.  So, it sounds like that makes sense

20    to have Mr. Ho as -- in charge of -- or your firm, however you

21    want to say it -- in charge, and then lead counsel for the

22    other; and, we can coordinate, as we've done so far.

23               MR. KAPLAN:  Your Honor, we have this a lot where we

24    have opt-out actions, individual actions and class actions.

25    The opt-out actions counsel represent their clients.  They

```
 1    have retainer agreements with their clients, just like Mr. Ho

 2    has --

 3            THE COURT:  This is a little different than opt-out.

 4            MS. WEDGWORTH:  Yes.

 5            THE COURT:  I am talking about up front, not opt-out.

 6            MS. WEDGWORTH:  They're not a class member.

 7            MR. KAPLAN:  They're not a class member.

 8            THE COURT:  Right.

 9            MS. WEDGWORTH:  So, that's not a typical opt-out.

10            MR. KAPLAN:  It's a business that brings its own

11    action, just like Authenticom is represented by their counsel.

12    The class counsel has no say in that representation.  They

13    represent them.

14            MR. ISSACHAROFF:  Your Honor, in most cases, you

15    don't find that a group copies --

16            THE COURT:  Somebody is -- I did not hear you, Mr.

17    Issacharoff.

18            MR. ISSACHAROFF:  You do not find that the complaints

19    of the dealers virtually track verbatim the complaints of

20    Authenticom and MVSC.

21            THE COURT:  No, I understand.

22            MR. ISSACHAROFF:  So --

23            THE COURT:  I am just trying to figure out what

24    you --

25            MR. ISSACHAROFF:  Yes.
```

1    THE COURT: -- are agreement on or if there is

2 disagreement on that.

3    You wanted to say something, counsel?

4    MR. ROBERTS: Your Honor, if I might.

5    Mike Roberts. I represent Hoover Automotive, a

6 dealer in this case. And we also will be vying for a

7 leadership position, along with Labaton -- the Labaton firm --

8 and their dealership client.

9    We, too, agree that the class of dealers should have

10 its own set of lead or co-lead counsel and, of course, the

11 Kellogg firm being the MDL coordinating counsel or MDL lead

12 counsel, if you will, to help coordinate the common interests

13 of both the dealers -- the dealer class -- there's common

14 evidence -- as well as the individual plaintiffs in the case.

15    THE COURT: And are you -- Mr. Roberts and

16 Ms. Wedgworth and Mr. Barz, are you in agreement as to

17 Ms. Gregor serving as liaison counsel --

18    MR. BARZ: No.

19    MS. WEDGWORTH: No, your Honor.

20    THE COURT: -- or are you going to propose something?

21 Okay.

22    MS. WEDGWORTH: And, in fact, I'm not sure a liaison

23 counsel is needed if we can coordinate, which we've done

24 before. At least this way we've --

25    MR. ROBERTS: Your Honor --

```
 1              MS. WEDGWORTH:  -- coordinated.

 2              MR. ROBERTS:  Sorry.

 3              THE COURT:  It is often helpful to the Court --

 4              MR. BARZ:  Your Honor, our proposal --

 5              THE COURT:  -- to have liaison --

 6              Mr. Barz, you know better than that.

 7              MR. BARZ:  When you're ready.

 8              THE COURT:  You have been in here enough.

 9              It is often better for the Court to have a liaison

10   counsel, but we will see.

11              Yes, Mr. Roberts?

12              MR. ROBERTS:  Your Honor, if I may.

13              To answer your original question, some -- have we --

14              THE COURT:  Which one?

15       (Laughter.)

16              MR. ROBERTS:  That is, have we tried to confer

17   together to try to come up with some consensus or civility

18   with regard to working with each other as a structure for the

19   dealer class.

20              I can tell you that I have, and I know that others

21   have.  We are trying to work together.  I had dinner with

22   Mr. Kaplan and Mr. Cuneo last night.  There was no

23   breakthrough, but we are still trying, your Honor.

24              MR. BARZ:  Your Honor, if I may.

25              I might be part of the reason there's no breakthrough
```

1    on this.  It's just we've tried to put together a group that

2    we believe accomplishes the goals of the Manual for Complex

3    Litigation.  One of those goals is to make sure you have a

4    team that has the resources and the talent to do the best for

5    the class but isn't so big.  So, unfortunately, we're not

6    going to be able to make everybody happy by including 15 firms

7    in our proposed leadership.

8          We've tried to be as lean as we can.  We've got three

9    co-leads -- myself, Mr. Kaplan, Mr. Cuneo -- with a chair of

10   that lead, which would be myself.  So, the defendants and the

11   Court have one-stop shopping to get answers.  If anything's

12   been proven over this last couple weeks, as you saw by our

13   filing that came in -- I think Ms. Miller was stuck filing

14   about six minutes after midnight -- there's just too many

15   cooks in the kitchen.  So, we want one-stop shopping.

16         THE COURT:  I noticed it did not come in on time.

17         MR. BARZ:  It's wasn't her fault at all.

18         THE COURT:  I know it is not Ms. Miller's fault.

19         MR. BARZ:  The coordination of all the different

20   competing groups -- which will eventually be resolved -- we

21   think it's important to have a liaison.  We have Mr. Clifford,

22   as well, with liaison.  And we have just two folks on our

23   executive committee.  And we think that's the right team.

24   It's lean, but it's also got everything that it needs.

25         And it doesn't have the conflicts that, I think, some

1  of the groups that are aligned with Kellogg, that are

2  representing the dealers but are aligning themselves with

3  these notions that we're prepared to streamline discovery even

4  if it costs us.  We don't think that's something the dealers

5  can take on.

6  THE COURT:  So, I would like submissions from each

7  group, individual -- whoever -- who wants to propose being

8  lead counsel, addressing what structure you would propose, why

9  you think you should be lead counsel.  I certainly want your

10  résumés and any other either MDL or complex experience you

11  have had, including the judges who you have appeared before.

12  I want to give you a little bit of reasonable time.

13  I know this needs to get resolved quickly; and, if you have

14  done your due diligence, you know I will not sit on things.

15  But I also want to give you time to see if there are any

16  pieces of it that you can work out.

17  So, Mr. Roberts, I will start with you.  What do you

18  think is reasonable in terms of filing submissions before the

19  Court to consider for lead counsel?

20  MR. ROBERTS:  Your Honor, thank you very much.

21  In my opinion, I think that if you gave us two or

22  three weeks to work through this, I think that that's

23  reasonable enough time.  I think filing a proposal or -- with

24  this amount of people, it's been very, very difficult to get

25  people to even go have a cup of coffee or to get on the phone

1   with each other.  And I think that even John Cuneo would agree

2   with that.  I mean, he's talked to me about it's difficult to

3   reach people.  And, so -- not to put blame on anyone.

4           But I believe that if we had, say, two weeks to make

5   a proposal, that would give us the chance to talk to each

6   other and see if we could come to a consensus to present to

7   the Court.

8           THE COURT:  So, if I give you until March 26th, does

9   that work?

10          MR. BARZ:  It's fine, your Honor.

11          MS. WEDGWORTH:  That's acceptable, your Honor.

12          THE COURT:  Okay.

13          MR. HO:  That's fine, your Honor.

14          THE COURT:  And I do look to the guideposts in the

15  Manual for Complex Litigation.  And it is very important for

16  me to have somebody who not just has the experience, but can

17  work well with others.  That is important to me.  So, whatever

18  examples you give, I will take, and --

19          MS. MILLER:  Your Honor --

20          THE COURT:  -- talk to other judges who you have

21  worked with, as well.

22          Yes --

23          MS. MILLER:  Sorry.

24          THE COURT:  -- Ms. Miller?

25          MS. MILLER:  We're not going to get in the middle of

1   this.

2          THE COURT:  I noticed you moving over as they were

3   talking.

4          MS. MILLER:  Yeah.

5      (Laughter.)

6          MS. MILLER:  I only wanted to raise one issue because

7   it was mentioned earlier by Authenticom's counsel.  I know

8   your Honor granted their motion for leave to file Mr. Maas's

9   declaration.  We obviously didn't get a chance to respond to

10  that.  We may have something to file to give your Honor some

11  context.

12         THE COURT:  And I read the Seventh Circuit opinion,

13  which, I think, gives me a chunk of context.  And I took that

14  for purposes of today to the extent it was anything I needed

15  to consider.

16         MS. MILLER:  Fair enough.

17         THE COURT:  I do not know --

18         MS. WEDGWORTH:  And, your Honor --

19         THE COURT:  I think I probably have enough for

20  context, but --

21         MS. WEDGWORTH:  On that point --

22         THE COURT:  -- if you feel the need to, you can.  But

23  I do not think you need to.

24         MS. WEDGWORTH:  We actually were contemplating

25  responding, as well, perhaps --

```
 1              THE COURT:  There is no need to.  I understand where
 2      you may be coming from.  I granted the motion and took it for
 3      purposes of today for this status and setting the tone and
 4      talking about any kind of discovery deadlines.
 5              So, March 26th, by 5:00 o'clock -- since you seem to
 6      like 12:05, the next day.
 7              MR. KAPLAN:  5:00 o'clock Central Time.
 8              THE COURT:  March 26th, Central Time, by 5:00
 9      o'clock, please file any motions, anybody who is seeking a
10      lead counsel position, along with the indications that I gave
11      you.  And I would also like you to, please, drop off courtesy
12      copies of them.
13              Then I am going to have you come back the following
14      week.
15              MR. ROBERTS:  Is that April 2nd, your Honor?
16              THE COURT:  No, no, it will not be that soon.  We
17      have got to find a chunk of time.
18              The morning of April 6th -- Friday, April 6th -- at
19      10:00 a.m.  And anybody who is seeking to be lead counsel
20      should be present because I may have questions for you, and we
21      can talk about the issues further.
22              As to discovery -- and I know there are disputing
23      issues here and different interests -- I do want you to go
24      ahead and issue in the Authenticom case -- and I appreciate
25      you want to be on the same schedule, but at least I want to
```

1    get some things moving on there that have not been.

2           I am going to lift the stay.  I am going to keep a

3    stay on oral discovery until further order of the Court and I

4    get a better sense of what still needs to be done and if there

5    is any way to bifurcate or segregate the Authenticom from the

6    other cases.  I am not sure there is, but there certainly may

7    be a way on some witnesses to do that.

8           Any interrogatories that you want to issue or any

9    other document requests, to the extent you have not issued

10   those, should be issued by March 23rd.

11          MR. KAPLAN:  And that is just in the Authenticom

12   case?

13          THE COURT:  Just in the Authenticom case for now,

14   because that is the one -- I am not hearing anybody else

15   telling me the same things that Authenticom is telling me, and

16   they already have some discovery underway.

17          When you come back here on April 6th, one of the

18   other things I would like you to do is to have some additional

19   discussions among yourselves about a discovery structure, now

20   that you can focus just on that, and see if you can reach any

21   agreement or have any creative proposal that might address the

22   Authenticom concerns, as well as yours.  Because I know the

23   defendants do not want to have to do this twice, and that is

24   not efficient at all.  I am aware of that.  But is there any

25   way that you can come up with to balance both of your needs?

1          So, you have your dates going forward.  Again, March

2    26th by 5:00 o'clock Central Time.  Please drop off courtesy

3    copies.

4          And, then, is there anything else this afternoon that

5    we have to take up?

6          Yes?

7          MR. HEDLUND:  Good afternoon, your Honor, Dan

8    Hedlund.  I introduced myself earlier.  We filed the case on

9    March 8th for --

10          THE COURT:  Yes.

11          MR. HEDLUND:  Waconia Dodge.

12          So, it's a class dealership case.  I've worked with

13   many of the counsel involved in the dealership cases and will

14   certainly engage in discussions with them about leadership,

15   but I just wanted to indicate that it's possible we could also

16   file something.

17          THE COURT:  Okay.

18          And nobody is precluded from filing.  If you did not

19   speak up today, I will not hold that against you.  But if you

20   do want to, you need to file something by the 26th.

21          MR. HEDLUND:  Thank you.

22          MR. BARZ:  Do you want to set a page limit for those?

23   15?

24          THE COURT:  No, I do not.  If you give me a hundred

25   pages, I am not going to be happy.

1    (Laughter.)

2         MR. KAPLAN:  You wouldn't read it.

3         THE COURT:  I like efficiency.  So, if you give me a

4    hundred pages, that is going to tell me something about how

5    efficient you are.

6         MS. MILLER:  Your Honor, there's only one other

7    issue, and it only affects a couple of parties; but, that's

8    the motion to dismiss in the Cox individual action.  We have

9    submitted a proposed briefing schedule for that because it's

10   just between the individual Cox plaintiff and CDK.

11        THE COURT:  And I will -- what was your proposed

12   briefing schedule for that?

13        MS. MILLER:  I had it and now I don't.  Give me a

14   second.

15   (Brief pause.)

16        MS. MILLER:  It's on Page 4 of the status report.

17        Subject to approval by the Court, of course, we would

18   file our motion to dismiss by March 16th; Cox to file its

19   response by April 16th --

20        THE COURT:  Oh, yes.

21        MS. MILLER:  -- and our reply by April 30th.

22        THE COURT:  That is fine.  I will put that in place

23   as to Cox Automotive.

24        And that only impacts your client, correct --

25        MS. MILLER:  Correct.

```
 1                THE COURT:  -- Ms. Miller?

 2                That does not impact --

 3                MS. MILLER:  Correct.

 4                THE COURT:  -- Reynolds?

 5                MS. GULLEY:  That's right.

 6                THE COURT:  Okay.

 7                So, that is fine.  March 16th, April 16th, and April

 8   30th.

 9                Again, please drop off courtesy copies for me.  It is

10   easier.  And you will get the other motions on file and drop

11   off courtesy copies.

12                MS. MILLER:  We will file everything just as a refile

13   so you don't have to get multiple filings from different

14   people.

15                THE COURT:  Okay.

16                MS. MILLER:  We'll just file everything for you and

17   bring over one set.

18                THE COURT:  Thank you.

19                MS. MILLER:  Yep.

20                THE COURT:  That would be helpful.

21                MR. HO:  Your Honor, just one question for clarity.

22   Was it your Honor's decision that there would be no responses

23   to the leadership applications?

24                THE COURT:  Not unless I ask for them.

25                MR. HO:  Thank you.
```

1          MS. WEDGWORTH:  And, then, as to the confidentiality

2    order -- protective order -- and ESI, do you anticipate any

3    additional briefing or information needed after March 30th if

4    there is a dispute?

5          THE COURT:  I am very hopeful that you are going to

6    give me an agreed one.

7          MS. WEDGWORTH:  Working on it.

8          THE COURT:  So, at the moment, I do not anticipate

9    anything because I am hopeful that it would be agreed.  But if

10   not, you will get further direction from me.

11         MS. WEDGWORTH:  Thank you, your Honor.

12         MR. ISSACHAROFF:  Your Honor, I apologize, I will not

13   be here April 6th.  I teach at that time.  I can't.  But I am

14   working with Mr. Ho's group.

15         THE COURT:  Okay.  There are enough of you.

16         Do you teach that morning?

17         MR. ISSACHAROFF:  Yes.

18         THE COURT:  I was going to give you the call-in

19   option, but if you teach that morning, that will not work.

20         MR. ISSACHAROFF:  10:00 to 12:00.  I've got a hundred

21   students.  I'm sorry, your Honor.

22         THE COURT:  That is okay.  I understand.

23         Is there anything else for the Court this afternoon?

24         Yes?

25         MS. ROMANENKO:  Yes, your Honor, one more issue.

 1          THE COURT:  Can you just move a little closer to the

 2     microphone, please --

 3          MS. ROMANENKO:  Sure.

 4          THE COURT:  -- so I can hear you.

 5          MS. ROMANENKO:  Sure.

 6          Victoria Romanenko again from Cuneo, Gilbert &

 7     LaDuca.

 8          So, with respect to a stay of discovery during the

 9     pendency of motion-to-dismiss briefing in the dealership

10     actions, we understand that maybe oral discovery will not go

11     forward, but we're hopeful that other discovery can go

12     forward.  Your Honor's rules say that the parties are reminded

13     that the pendency of a motion, such as a motion to dismiss,

14     does not stay discovery.  So, we just wanted to clarify that

15     issue.

16          MS. MILLER:  If we could briefly -- your Honor, as

17     the Seventh Circuit opinion and other opinions have given

18     indication, we think some of the issues may be dropped out by

19     some of the motions.  We're hopeful.  We'll await your Honor's

20     decision on those.  But we think that waiting on the motions

21     to dismiss -- and your Honor is usually quite expeditious in

22     issuing such orders -- that, you know, we should wait until

23     those motions are decided because that may narrow the scope of

24     discovery.

25          THE COURT:  I am going to take that back up on the

1   6th.

2            MS. MILLER:  Okay.

3            THE COURT:  That is one of the things that I have

4   asked you to talk about.  And maybe you will agree to turn

5   over the documents you have given to the government

6   investigators or maybe there is some subset.

7            But before I put anything firm in place, I want to

8   see what I get -- what the protective order looks like, what

9   the lead counsel applications look like -- and, then,

10  hopefully you will be able to reach some agreement on it.

11           Yes?

12           MS. GULLEY:  Just going back for a second to the

13  issue of the Authenticom discovery -- written discovery --

14  that should be issued by March 23rd, just --

15           THE COURT:  If it has not been already.

16           MS. GULLEY:  Well, I just mentioned earlier that

17  Reynolds has not filed their counterclaim -- its counterclaims

18  -- yet; and, therefore, there's obviously -- I mean, you're

19  not suggesting that the not-yet-filed counterclaims discovery

20  needs to be served by --

21           THE COURT:  No.  If it is not on file yet, no.  But I

22  will get to the motion to dismiss, so that we can figure out

23  where that is going.

24           MS. GULLEY:  Great.  Thank you.

25           MR. KAPLAN:  Thank you, your Honor.

64

1          THE COURT:  Any other issues?

2      (No response.)

3          THE COURT:  Anybody in the audience want to say

4  anything?

5      (No response.)

6          THE COURT:  Okay.

7          I will see you April 6th.  Thank you.

8                    *     *     *     *     *

9

10  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

11

12
    /s/ Joseph Rickhoff                    March 14, 2018
13  Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25