# EXHIBIT 8

```
      D45CBANC                        Conference                           1
  1   UNITED STATES DISTRICT COURT
  1   SOUTHERN DISTRICT OF NEW YORK
  2   ------------------------------x
  2
  3   IN RE: BANK OF AMERICA CORP.
  3   SECURITIES DERIVATIVE, AND
  4   EMPLOYEE RETIREMENT INCOME
  4   SECURITY ACT (ERISA)
  5   LITIGATION,
  5
  6                                                09 MD 2058 (PKC)
  6
  7   ------------------------------x
  8                                                New York, N.Y.
  8                                                April 5, 2013
  9                                                2:15 p.m.
  9
 10   Before:
 10
 11                       HON. P. KEVIN CASTEL,
 11
 12                                         District Judge
 12
 13                            APPEARANCES
 13
 14   BERNSTEIN, LITOWITZ, BERGER & GROSSMANN, LLP
 14        Attorneys for Lead Plaintiffs
 15   BY: MAX W. BERGER
 15   BY: STEVEN B. SINGER
 16
 16   KESSLER, TOPAZ, MELTZER & CHECK, LLP
 17        Attorneys for Lead Plaintiffs
 17   BY: DAVID KESSLER
 18   BY: GREGORY M. CASTALDO
 18
 19   KAPLAN, FOX & KILSHEIMER, LLP
 19        Attorneys for Lead Plaintiffs
 20   BY: FREDERIC S. FOX
 20   BY: ROBERT N. KAPLAN
 21
 21   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
 22        Attorneys for Defendants
 22   BY: DANIEL J. KRAMER
 23   BY: BRAD S. KARP
 23   BY: AUDRA J. SOLOWAY
 24   BY: PIETRO SIGNORACCI
 24   BY: SAMSON ENZER
 25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
      D45CBANC                       Conference                              2
 1    APPEARANCES (cont'd):
 2    WACHTELL, LIPTON, ROSEN & KATZ
 2         Attorneys for Defendants
 3    BY:  ERIC M. ROTH
 4    HGT LAW
 4         Attorney for Objector
 5    BY:  HUNG G. TA
 6    DECHERT, LLP
 6         Attorneys for Defendant, John Thain
 7    BY:  ADAM J. WASSERMAN
 8    SUSMAN GODFREY, LLP
 8         Attorneys for Defendant, Kers & Co.
 9    BY:  SETH ARD
10    FLANAGAN, LIEBERMAN, HOFFMAN & SWAIM
10         Attorneys for Lead Plaintiffs
11    BY:  DENNIS A. LIEBERMAN
12
13
14
15
16
17
18
19
20
21
22
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

```
                                                                60
        D45CBANC                Conference
1       the risk of litigation is something that a Court should take
2       into account.  Plaintiff's counsel took on that risk in in
3       case.  In terms of the quality of representation, the results
4       speak to the quality of the representation, the fourth largest
5       securities class action settlement ever.  And it qualifies as
6       first in several respects.
7                I also note that the defendants in this case were
8       represented by the finest lawyers, really, that there are in
9       this nation.  Cleary Gottlieb firm.  Paul Weiss.  Wachtel
10      Lipton, Debavois, Davis Poke, Baker and Pots, Deckert, all
11      representing the defendants in this case.  And that is a factor
12      that one takes account in determining appropriateness of the
13      settlement amount.  I've looked at the, and already commented
14      on the relationship of the fee amount to the amount of the
15      settlement.  Again, abstract numbers, it's a big number, but
16      not in terms of the overall settlement.  Public policy
17      considerations, securities class action claims deserve to be
18      vindicated.  They have a salutary effect and rewarding
19      attorneys that bring successful claims is appropriate.  And
20      here I get the confidence of knowing that the lead plaintiffs
21      have approved the fee application.  Have done their job of
22      monitoring lead counsel.  I've considered the reaction of the
23      class.  There have been about 10 objections that mention the
24      fee award of the I've taken that into account, but I also have
25      to be mindful of the utter silence of any of the institutional
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

1

68TMCOHC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     BAREND COHEN, et al.,
 3
                Plaintiffs, .
 4
           v.                              06 Civ. 3518 (AKH)
 5
     ESCALA GROUP, INC., et al.,
 6
                Defendants.
 7   ------------------------------x
                                           New York, N.Y.
 8                                         August 29, 2006
                                           3:15 p.m.
 9   Before:

10                 HON. ALVIN K. HELLERSTEIN,

11                                         District Judge

12                         APPEARANCES

13   LABATON SUCHAROW
          Attorneys for Plaintiffs/Movants Capitalia Asset
14        Management and Baltimore Co. Employees' Retirement System
     BY:  ANDREI RADO
15
     KAPLAN FOX & KILSHEIMER
16        Attorneys for Plaintiff/Movant Virginia Retirement System
     BY:  ROBERT N. KAPLAN
17        JEFFREY P. CAMPISI

18   STULL STULL & BRODY
          Attorneys for Plaintiff/Movant Miera Group
19   BY:  AARON BRODY

20   ABRAHAM FRUCHTER & TWERSKY
          Attorneys for Plaintiff/Movant Spring Partners
21   BY:  JACK G. FRUCHTER

22   WOLF HALDENSTEIN ADLER FREEMAN & HERZ
          Attorneys for Intervenor Plaintiff Hong Shen
23   BY:  GUSTAVO BRUCKNER

24   KRAMER LEVIN NAFTALIS & FRANKEL
          Attorneys for Defendant Escala Group
25   BY:  STEPHEN M. SINAIKO
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

68TMCOHC

1  counsel for all the other plaintiffs?
2       MR. RADO: We have no objection, your Honor, on behalf
3  of Capitalia and Baltimore.
4       THE COURT: Is there any objection?
5       Hearing none. So your firm, which I'm familiar with
6  and which has a fine reputation, will be lead counsel.
7       MR. KAPLAN: We prepared a proposed order that
8  Mr. Sinaiko has looked at.
9       THE COURT: Hand it up.
10      MR. KAPLAN: I can hand it up.
11      THE COURT: Has everyone else seen it?
12      MR. KAPLAN: Mr. Sinaiko has.
13      THE COURT: Why don't you hand it up, circulate it,
14 I'll wait a couple of days to see if there is any objection,
15 and I'll sign it on Thursday.
16      What's going to be, Mr. Fruchter, with the derivative
17 cases?
18      MR. FRUCHTER: The proposed structure is a colead
19 structure --
20      THE COURT: I'm not in favor of colead structures.
21      MR. FRUCHTER: We felt, your Honor, that we could work
22 with the Robbins firm, that there would be no overlap or
23 duplicative effort. In fact, as your Honor can see, I'm the
24 only one appearing today on behalf of the derivative cases.
25      THE COURT: Why don't you continue that way?

# THE AMERICAN LAWYER

AUGUST 2004

**BIG SUITS**

### IN RE HIGH-FRUCTOSE CORN SYRUP

A bitter nine-year battle has ended sweetly for a group of companies that buy high-fructose corn syrup. On June 17 Archer Daniels Midland Company agreed to pay $400 million to settle a federal lawsuit accusing the company of illegally fixing the price of the sugar substitute. As many as 2,000 makers of sweetened food and beverages may divide the payment.

The money will be the most Archer Daniels has paid since government and private plaintiffs accused it in 1995 of conspiring with competitors on the prices of commodities. Archer Daniels previously pled guilty to fixing the prices of the feed additive lysine and citric acid, a sweetener, and three executives served prison time. The corn syrup buyers claimed that they had been overcharged $1.4 billion and sought three times that amount as damages. The parties settled three months before the case was to be tried, and shortly after the judge ruled that audiotapes used against Archer Daniels in the lysine case could be played in the corn syrup case.

Archer Daniels is the fourth company to settle the corn syrup allegations. The three previous payments totaled $31 million. Only A.E. Staley Manufacturing Company remains a defendant, and faces trial in September.


**Robert Kaplan**


**Gregory Arenson**

**FOR PLAINTIFFS DELLWOOD FARMS, INC. ET AL.**
**KAPLAN FOX & KILSHEIMER (NEW YORK):** Gregory Arenson and Robert Kaplan.
**MUCH SHELIST FREED DENENBERG AMENT & RUBENSTEIN (CHICAGO):** Michael Freed and Barat McClain.
**BERGER & MONTAGUE (PHILADELPHIA):** Charles Goodwin and H. Laddie Montague, Jr.

**FOR DEFENDANT ARCHER DANIELS MIDLAND (DECATUR, ILLINOIS)**
**IN-HOUSE:** Assistant general counsel **Jim Schafter**.
**WILLIAMS & CONNOLLY (WASHINGTON, D.C.):** Steven Kuney and John Schmidtlein.

—JONATHAN MOXEY

This article is reprinted with permission from the August 2004 edition of THE AMERICAN LAWYER. © 2004 ALM Properties, Inc. All rights reserved. Further duplication without permission is prohibited. For information, contact American Lawyer Media, Reprint Department at 800-888-8300 x6111. #001-09-04-0006


**Kaplan Fox & Kilsheimer LLP**

805 Third Avenue • 22nd Floor • New York, New York 10022
Telephone Number (212) 687-1980 • Fax Number (212) 687-7714
Website www.kaplanfox.com

| New York, NY | Los Angeles, CA | San Francisco, CA |
| Chicago, IL | Richmond, VA | Morristown, NJ |

```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE CENTRAL DISTRICT OF ILLINOIS


IN RE:  HIGH FRUCTOSE CORN SYRUP     )
        ANTITRUST LITIGATION         )
                                     ) MDL No. 187
                                     ) Master File 95-1477
        THIS DOCUMENT RELATES TO:    )
        ALL ACTIONS                  )




                    FAIRNESS HEARING



                    SEPTEMBER 3, 2004
                     Peoria, Illinois




                        BEFORE:

             HONORABLE MICHAEL M. MIHM
             United States District Judge






              Karen S. Hanna, C.S.R.
              U.S. District Court Reporter
              Central District of Illinois
Proceedings recorded by mechanical stenography; transcript
produced by computer
```

```
 1                    APPEARANCES:
 2
 3      ON BEHALF OF THE PLAINTIFFS:
 4
 5              GREGORY ARENSON, ESQ.
                Kaplan, Fox & Kilsheimer
 6                 805 Third Avenue
                New York, New York  10017
 7                    -- and --
                M. MICHAEL WATERS, ESQ.
 8           456 Fulton Street, Suite 425
                Peoria, Illinois  61602
 9
10
11
12            *  *  *  *  *  *  *  *  *
13
14      ON BEHALF OF THE DEFENDANTS:
15
16
                STEVEN R. KUNEY, ESQ.
17                Williams & Connolly
                725 Twelfth Street, NW
18              Washington, DC  20005
                      -- and --
19              DAVID B. MUELLER, ESQ.
                   Cassidy & Mueller
20           416 Main Street, Suite 323
                Peoria, Illinois  61602
21      (Appeared on Behalf of Archer Daniels Midland Company)
22
23
24
25
```

1   THE COURT: Good afternoon. This is the case of
2   In Re High Fructose Corn Syrup Anti-Trust Litigation,
3   master file number 95-1477. Plaintiffs are here
4   represented by Greg Arenson and Michael Waters. Defendant
5   ADM is represented by Steve Kuney and David Mueller.
6   The matter is set today for what we call a
7   fairness hearing to determine whether the proposed
8   settlement between these parties is fair and reasonable as
9   to the members of the class. Mr. Arenson, do you have a
10  presentation to make?
11  MR. ARENSON: I do have a short presentation,
12  Your Honor. First I would like to outline the basic terms
13  of the settlement that is proposed here. There is payment
14  by ADM of $400 million to the class.
15  THE COURT: And that payment has already
16  occurred into an escrow fund?
17  MR. ARENSON: Yes, Your Honor, paid into three
18  escrow funds and as of August 31 the amount of interest on
19  that was $610,342.28.
20  ADM does not admit to any wrongdoing, that is an
21  element of the settlement, and there will be a release of
22  ADM by all class members as part of the settlement of all
23  claims that were asserted or could have been asserted in
24  this action.
25  The settlement was reached with the heavy

1     Everything about this case has been fully
2  litigated.  ==I have commented on other occasions that the==
3  ==quality of the attorneys in this case is outstanding.==
4  There aren't too many secrets left in this discovery, but
5  that doesn't answer the question of what a jury would do
6  with it.  As Professor Wolak indicated, I think the bottom
7  line on the assessment of the expert testimony would
8  depend on how the jury resolved the disputed factual
9  issues that would act as the foundation for the
10 methodology that was used by the experts in their
11 opinions.
12     So all these five factors, I think, have been
13 fully addressed by Mr. Arenson.  I agree completely with
14 his assessment.  There is certainly nothing in the
15 dynamics of this situation that would indicate that this
16 was anything other than a complete arms' length
17 negotiation and transaction.
18     I might also add parenthetically that I do think
19 it is very significant that there would be two juries
20 sitting here during the liability phase of the case.  As
21 Judge Posner indicated in his opinion concerning this
22 matter -- I think he made reference to one other case from
23 Colorado from a long time ago that I don't think was
24 particularly a major case -- but this would have created
25 an equation that, again, it would be hard for counsel to

```
IN THE UNITED STATES DISTRICT COURT
  FOR THE CENTRAL DISTRICT OF ILLINOIS


IN RE:  HIGH FRUCTOSE CORN SYRUP    )
        ANTITRUST LITIGATION        )
                                    )  MDL No. 187
                                    )  Master File 95-1477
        THIS DOCUMENT RELATES TO:   )
        ALL ACTIONS                 )




              TRANSCRIPT OF PROCEEDINGS



                 OCTOBER 4, 2004
                  Peoria, Illinois



                      BEFORE:

              HONORABLE MICHAEL M. MIHM
              United States District Judge






                Karen S. Hanna, C.S.R.
                U.S. District Court Reporter
                Central District of Illinois
Proceedings recorded by mechanical stenography; transcript
produced by computer
```

```
 1                    APPEARANCES:

 2

 3           ON BEHALF OF THE PLAINTIFFS:

 4

 5              MICHAEL J. FREED, ESQ.
       Much, Shelist, Freed, Denenberg, Ament & Rubenstein
 6              200 N. LaSalle Street, Suite 2100
                  Chicago, Illinois  60601-1095
 7

 8              ROBERT N. KAPLAN, ESQ.
                GREGORY ARENSON, ESQ.
 9              Kaplan, Fox & Kilsheimer
                    805 Third Avenue
10              New York, New York  10017

11
                H. LADDIE MONTAGUE, JR., ESQ.
12              CHARLES GOODWIN, ESQ.
                    Berger & Montague
13                  1622 Locust Street
              Philadelphia, Pennsylvania  19103
14
                         -- and --
15
                M. MICHAEL WATERS, ESQ.
16              456 Fulton Street, Suite 425
                    Peoria, Illinois  61602
17

18

19
             ON BEHALF OF THE DEFENDANTS:
20

21              TERRENCE A. GRIMM, ESQ.
                JOSEPH A. SPIEGLER, ESQ.
22                  Winston & Strawn
                    35 W. Wacker Drive
23                  Chicago, Illinois  60601
        (Appeared on Behalf of A.E. Staley Manufacturing Co.)
24

25
```

```
 1              THE COURT:  Welcome back one last time.
 2              MR. ARENSON:  We're glad to be here, Your Honor.
 3              THE COURT:  The matter is set today for multiple
 4   reasons.  The first matter that I want to address is the
 5   fairness hearing.  The Court previously provided
 6   preliminary approval for the settlement on July 28 and
 7   approved form of notice that was sent to the class by
 8   mailing and publication.  Do plaintiffs' counsel have a
 9   presentation to make on the fairness portion?
10              MR. FREED:  We do, Your Honor.  Good morning,
11   Your Honor.  Michael Freed for the plaintiffs.  As Your
12   Honor knows, the Seventh Circuit has issued an opinion
13   which requires the Court to consider five factors in
14   making a determination on whether to grant final approval
15   to a settlement.  Because of that, while I think the Court
16   is exceptionally well versed about our case and where the
17   case stood at the point of the settlement and where the
18   settlement fit in the scheme of things, I will address
19   each of the five points so that we have a complete record.
20              THE COURT:  Thank you.
21              MR. FREED:  The first point under Rule
22   23(e)(1)(C) is the strength of our case compared to the
23   amount of the defendant's settlement offer.  In this
24   regard, I would make several observations.
25              First, the settlement took place over a very,
```

1  I don't know that really anyone could say for
2  certain how the Court's expert would really play out at
3  the trial. I agree with you that there was some
4  indications in the deposition that his testimony might be
5  more helpful to the plaintiffs, but I'm not sure that it
6  would necessarily play out that way at trial. In any
7  event, the risks were substantial.

8  What was left in this case by the time that
9  Staley settled was the trial itself. Having said that,
10 still in terms of complexity, length and expense of
11 litigation, we're talking about very substantial issues.
12 We're talking about a trial that was going to last
13 anywhere from two to four months at tremendous cost to the
14 parties, plus a trial that long is hard on everyone.

15 The settlement. As I said, no opposition. It's
16 unusual that there isn't even one letter in opposition.
17 ==The opinion of competent counsel. I respect==
18 ==their opinion greatly. I have no reason to think that,==
19 ==based on everything I know of in this case, that this==
20 ==matter wasn't settled completely on an arms' length basis==
21 ==and that the plaintiffs' counsel aggressively represented==
22 ==the class in the settlement negotiations.==
23 And as was just said recently, at the stage we
24 were, I think to the extent anyone could know everything
25 about a case before it goes to trial, that was true in

1  one moment?  I had sent in a revised order and I have a
2  copy if that would be preferred.
3           THE COURT:  That would be very good.  Thank you.
4           MR. ARENSON:  Good morning, Your Honor.  Greg
5  Arenson to talk about the application of plaintiffs'
6  counsel for attorneys' fees of 25 percent of the
7  settlements and also for reimbursement of expenses of
8  $5,408,017.37.  First I think we should talk about the
9  fees and then we can move on to the expenses later on.
10          THE COURT:  I'll tell you right now, I don't
11 have any issues about the expenses.
12          MR. ARENSON:  Very good.  In that case we'll
13 just focus on the fees to start with.
14          The standard was set out in Synthroid I.  Courts
15 must do their best to award counsel the market price for
16 legal services in light of the risk of nonpayment and the
17 normal rate of compensation in the market at the outset of
18 the case.
19          So the question becomes how does the Court
20 determine what the market was at the outset of the case
21 and what proof or evidence should the Court consider.  One
22 of the items, in fact the main item in the Synthroid
23 cases, at least at the Seventh Circuit level, were the
24 actual agreements and the Court said about that in both
25 cases that the rate for legal services is set by informed

45

1  THE COURT: I have no intention of considering
2  his separately. So we'll be in recess for ten minutes.
3  (Recess taken)
4  THE COURT: I think perhaps the percentage of
5  fees that you were entitled to probably went up some this
6  morning based on our conversation. I'm not going to keep
7  you in suspense. I am going to approve the 25 percent,
8  but I think you can gather from my comments I'm very
9  unhappy about this. And this has nothing to do with you.
10 ==I've said many times during this litigation that you and==
11 ==the attorneys who represented the defendants here are as==
12 ==good as it gets. Very professional. At least in my==
13 ==presence or in my contacts with you, you've always been==
14 ==civil.== You've always been cutting to the chase and not
15 wasting my time or each other's time or adding to the cost
16 of the litigation.
17 And this was very difficult litigation. You
18 know, I think it's unfortunate that the Seventh Circuit
19 has so casually dismissed the factors that are discussed
20 in the Cendant case because those factors are all very
21 much in your ballpark and they support a very high request
22 for fees. I just want to take a minute here and go
23 through a few things.
24 First of all, the size of the fund created, the
25 number of persons benefitted. The fund is very large.