UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates To: | ) ) ) | Assigned to: Hon. Amy J. St. Eve Magistrate Judge: Hon. Jeffrey T. Gilbert |
| ALL CASES. | ) ) ) ) | |

**MAJORITY DEALER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR APPOINTMENT OF INTERIM CO-LEAD CLASS COUNSEL**

1398588_1

## TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT ...................................................................................2

II.  BACKGROUND FACTS ........................................................................................4

III.  ARGUMENT ...........................................................................................................5

    A.  The Court Should Appoint the Firms Interim Co-Lead Class Counsel for the Dealership Class Actions .................................................................................5

    B.  The Firms Have Performed Substantial Work Identifying and Investigating the Potential Claims in This Action ................................................6

    C.  The Firms Are Highly Experienced in Leading Complex Antitrust and Class Action Cases .........................................................................................7

        1.  Robbins Geller .............................................................................................7

        2.  Cuneo Gilbert...........................................................................................10

            a.  The *Automotive Parts Antitrust Litigation*....................................10

            b.  Dealerships' and Counsel's Support of Cuneo Gilbert's Appointment ....................................................................................12

            c.  Relevant Experience Representing Other Small Businesses .........13

            d.  Other Relevant Experience and Achievements.............................13

        3.  Kaplan Fox..................................................................................................14

    D.  Proposed Executive Committee Members and Liaison Counsel Are Highly Experienced in Handling Complex Actions ........................................17

        1.  Miller Law ...................................................................................................17

        2.  Clifford Law.................................................................................................19

    E.  The Firms Have Extensive Experience Leading MDLs and Complex Litigations ......................................................................................................22

        1.  Robbins Geller ...........................................................................................22

        2.  Cuneo Gilbert............................................................................................23

        3.  Kaplan Fox..................................................................................................24

**Page**

4.  Miller Law ............................................................25

5.  Clifford Law............................................................25

F.  The Firms' Attorneys Are Knowledgeable Regarding the Applicable Law and Have Sufficient Resources to Fund the Litigation and Effectively Represent the Class ............................................................26

G.  Additional Factors Further Support Appointing the Firms as Interim Co-Lead Class Counsel............................................................30

1.  Motivated Plaintiffs ............................................................30

2.  Adequacy of Representation ............................................................30

3.  The Firms Are Highly Regarded by Peers and Adversaries and Command the Confidence of Colleagues ............................................................31

4.  The Firms Will Work Cooperatively with the Court and Opposing Counsel ............................................................32

5.  The Firms Offer Diverse Skill Sets and Viewpoints that Will Add to the Value of the Overall Representation of the Class............................................................32

H.  The Absence of Conflicts and Superior Resources Warrant Appointing the Leadership Structure Proposed Herein ............................................................33

1.  Counsel for the Individual Actions Are Conflicted ............................................................33

2.  The Timing of the Authenticom Lawsuit Does Not Cure the Conflicts of Interest............................................................37

3.  The Dealership Firms Aligned with Kellogg Are Also Conflicted ..........38

4.  The Proposed Leadership Structure Herein Will Devote Superior Resources to the Litigation ............................................................39

IV.  CONCLUSION............................................................40

# TABLE OF AUTHORITIES

**Page**

## CASES

*Hanover Shoe Inc. v. United Shoe Machinery Corp.*,
    392 U.S. 481 (1968)..................................................................35

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775, 2014 WL 7882100
    (E.D.N.Y. Oct. 15, 2014) ........................................................15

*In re Currency Conversion Fee Antitrust Litigation*,
    263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd sub nom.*,
    *Priceline.com Inc. v. Silberman*,
    405 Fed. App'x 532 (2d Cir. 2010)..........................................8

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
    529 F. Supp. 2d 644 (S.D. Tex. 2006) .....................................8

*In re Enron Corp. Sec. Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) .....................................8

*In re Flat Glass Antitrust Litig.*,
    385 F.3d 350 (3d. Cir. 2004)...................................................16

*In re High Fructose Corn Syrup Antitrust Litig.*,
    295 F.3d 651 (7th Cir. 2002) ..................................................16

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11 MD 2262, 2011 U.S. Dist. LEXIS 122735
    (S.D.N.Y. Oct. 18, 2011) ........................................................36

*In re Microsoft Corp. Antitrust Litig.*,
    218 F.R.D. 449 (D. Md. 2003).................................................35

*In re Municipal Derivatives Antitrust Litig.*,
    252 F.R.D. 184 (S.D.N.Y. 2008) ............................................26

*In re Stericycle, Inc.*,
    No. 13 C 5795, MDL No. 2455, 2013 U.S. Dist. LEXIS 147718
    (N.D. Ill. Oct. 11, 2013)..........................................................26

*Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*,
    654 F.3d 242 (2d Cir. 2011)....................................................34

*Moore v. Groeb Farms, Inc.*,
    No. 13 C 2905, 2013 U.S. Dist. LEXIS 189735
    (N.D. Ill. Aug. 9, 2013)............................................................5

**Page**

*Moore v. Margiotta*,
  581 F. Supp. 649 (E.D.N.Y. 1984) .........................................................................35

*Smith v. State Farm Mut. Auto. Ins. Co.*,
  301 F.R.D. 284 (N.D. Ill. 2014)........................................................................5, 26

*Sullivan v. Chase Inv. Servs., Inc.*,
  79 F.R.D. 246 (N.D. Cal. 1978).............................................................................35

*Walker v. Discover Fin. Servs.*,
  No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803
  (N.D. Ill. May 26, 2011) ......................................................................................5, 6

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 23 ......................................................................................................................5
  Rule 23(g) ...............................................................................................................19
  Rule 23(g)(1)(B) .....................................................................................................30
  Rule 23(g)(2)........................................................................................................5, 38
  Rule 23(g)(3)............................................................................................................5
  Rule 23(C)(1)(B) ....................................................................................................19

Local Rules of the United States District Court, Northern District of Illinois
  Rule 83.50 ...............................................................................................................33

ABA Model Rules of Professional Conduct
  Rule 1.7(a) ..............................................................................................................33

## SECONDARY AUTHORITIES

Manual For Complex Litigation (Fourth) (2004)
  §10.221......................................................................................................................5
  §21.11........................................................................................................................5
  §21.27......................................................................................................................37
  §21.271....................................................................................................................33
  §21.272....................................................................................................................30

Dealership Plaintiffs ("Plaintiffs"), with the support of the majority of Dealership Class Actions filed,[1] move this Court for an Order appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), Cuneo Gilbert & LaDuca LLP ("Cuneo Gilbert"), and Kaplan Fox & Kilsheimer LLP ("Kaplan Fox") as Interim Co-Lead Class Counsel on behalf of the proposed class of automobile dealerships that purchased dealer management systems ("DMS") software from defendants CDK Global, LLC ("CDK") or The Reynolds and Reynolds Company ("Reynolds") (collectively, "Defendants"). In addition to the three Co-Leads, this proposal includes a two-firm Executive Committee comprised of Miller Law LLC ("Miller Law") and Clifford Law Offices, P.C. ("Clifford Law"), with Clifford Law also serving as Liaison Counsel.

The proposed leadership group includes highly qualified counsel with broad trial, class action and antitrust experience including extensive experience in the Northern District of Illinois and leadership roles in complex MDLs as well as extensive experience representing dealerships in the class-action context. The group is capable of and committed to adequately funding and devoting firm resources to the litigation and has a reputation of working cooperatively with other plaintiffs' counsel and defense counsel. If appointed, Robbins Geller would serve as the chair of the three-firm Co-Lead Counsel structure and Cuneo Gilbert and Kaplan Fox would serve as Co-Lead Counsel. This structure balances accountability with efficiency and ensures the litigation is adequately staffed and well-funded, while also controlling costs. The three-firm Co-Lead Counsel structure also

---

[1] Moving Plaintiffs include Baystate Ford Inc., Hartley Buick GMC Truck, Inc., Cox Motors N.C. Inc. d/b/a Cox Toyota, Northtown Automotive Companies Inc., F.G. Downing Development, Inc. and John O'Neil Johnson Toyota, LLC. Another plaintiff, *Pensacola Motor Sales, Inc. d/b/a Bob Tyler Toyota, Inc. v. CDK Global, LLC*, No. 1:18CV01402 (N.D. Ill.), also supports this application, which means 7 of the 13 cases filed support this application. *See* ECF No. 36 at Ex. A. Proposed Interim Co-Lead Class Counsel, Robbins Geller, Kaplan Fox and Cuneo Gilbert have not promised any role to any firm other than those proposed as part of the leadership group, however, to the extent it is in the best interests of the Class and can be done efficiently, if appointed, Proposed Interim Co-Lead Class Counsel may consider assigning work to the firms listed as counsel in those cases. If any such work is assigned, contemporaneous time reports will be gathered and reviewed to ensure against duplicative or excessive billing.

facilitates effective decision-making by avoiding stalemates that may arise in a two- or four-firm structure. Below we explain why our combined experience and specific skill sets will best serve the interests of the dealership class.

## I.     PRELIMINARY STATEMENT

This is a large, complex antitrust case with actions filed on behalf of integrators and vendors (the "Individual Actions") as well as 13 Dealership Class Actions (the "Dealership Class Actions"). Because of manifest conflicts between the Individual Actions and the Dealership Class Actions, there should **not** be a single, overall Lead Counsel appointed. Rather, it is appropriate that the Dealership Class Actions should have their own Lead Counsel and the competitor and Individual Actions have their separate Lead Counsel.[2] The Dealership Class Actions Co-Lead and Liaison Counsel will cooperate and coordinate discovery to the fullest extent possible to ensure the proceedings are managed efficiently, while simultaneously ensuring that the Dealership Class Actions have zealous and conflict-free representation. Kellogg Hansen Todd Figel & Frederick PLLC ("Kellogg"), and other counsel for the Individual Actions, can continue litigating those cases while Interim Co-Lead and Liaison counsel is appointed for the Dealership Class Actions.

The structure proposed here will best serve the interests of the large class and ensures that this complex litigation is managed effectively and maximizes recovery for the dealership class members. The group combines firms with the expertise, knowledge, integrity and resources necessary to prosecute this antitrust case against Defendants, as well as proven track records of successfully prosecuting antitrust, class actions, and MDL proceedings. Moreover, many of the

---

[2]     The plaintiffs in the Individual Actions are represented by the same firm. So, unlike some actions with hundreds of different actions with plaintiffs' represented by hundreds of different attorneys, here coordination is easy. One representative of Lead Counsel can coordinate with one representative of the Kellogg firm.

attorneys have spent their careers practicing in Chicago which will benefit the proceedings not only through their experience but by saving on unnecessary travel costs.

Robbins Geller would serve as Chair of the three firm Co-Lead counsel. Robbins Geller has a Chicago presence and has long held a premier position in the antitrust and class action bar, and for that reason, is routinely appointed lead or co-lead counsel in antitrust class actions.[3] Cuneo Gilbert lawyers are also experts in class action litigation, with leadership appointments in a variety of high-profile, complex litigations, including a litigation where they have represented a class of automobile dealerships for six years and recovered over $300 million for that class. Jon Cuneo and Victoria Romanenko, the partners in charge for Cuneo Gilbert, have extensive experience, as lead counsel, representing small businesses in antitrust matters. Kaplan Fox lawyers are noted experts in the antitrust arena, with decades of experience in complex actions. Additional information regarding the experience of each of these firms is set forth below.

In addition, the proposed members of the Executive Committee include Miller Law, whose principal, Marvin Miller has practiced for decades in this District and others across the country, obtaining substantial recoveries in antitrust and other class actions, and, Clifford Law who will serve as an Executive Committee member and as Liaison Counsel. Bob Clifford is among the most successful and well-regarded attorneys in Chicago, whose results and disposition are well-known to this Court.

Accordingly, the Court should appoint Robbins Geller, Cuneo Gilbert and Kaplan Fox as Interim Co-Lead Class Counsel, with Miller Law and Clifford Law as Executive Committee members, and Clifford Law as Liaison Counsel.

---

[3] *See* Ex. 1.

1398588_1

## II.     BACKGROUND FACTS

The dealership litigation centers on federal antitrust and related state-law claims brought against CDK and Reynolds.  Plaintiff car dealerships allege that Defendants conspired to exclude third-party providers of data integration services (known as "data integrators") and divide that market for themselves, resulting in supra-competitive prices paid by the dealerships for third-party applications used with their DMS.  One excluded third-party integrator is Authenticom, which has filed one of the Individual Actions.

Data integration services involve the extraction, formatting, and delivery of data stored by automobile dealers on their dealerships' DMS.  The data at issue belongs to the dealerships.  Historically, data integrators provided data integration services to vendors of software applications for use by dealerships.  Certain vendors have also filed lawsuits against Defendants as part of the Individual Actions.

Plaintiffs allege that actions by Defendants have caused them to pay significantly higher prices for services that are integral to their ability to run their businesses.  While there is some commonality of interest between the Dealership Class Actions and Individual Actions, the two groups bring diverging claims and there is also significant potential for conflict with regard to damages and the extent to which higher prices were passed on to the dealerships. Already there is an actual conflict between Authenticom and the dealers as Authenticom's counsel has stated that in light of its urgency to get to trial "we are prepared to move very quickly, even if it costs us some of the normal range of discovery that we would have."  Ex. 2 at 35.  Whatever the merits of Authenticom's desire to make that tradeoff, it is not a tradeoff  that should be imposed on the dealers.

## III.    ARGUMENT

### A.    The Court Should Appoint the Firms Interim Co-Lead Class Counsel for the Dealership Class Actions

Under Rule 23(g)(3) of the Federal Rules of Civil Procedure, the Court may "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). Interim counsel may be appointed "to protect the interests of the putative class." Fed. R. Civ. P. 23 advisory committee notes to 2003 amendment; *see also Manual For Complex Litigation* (Fourth) §21.11 (2004) ("Manual") (designation "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement").

"It is generally accepted that the same considerations that govern the appointment of class counsel once a class is certified govern the designation of interim class counsel before certification." *Moore v. Groeb Farms, Inc*., No. 13 C 2905, 2013 U.S. Dist. LEXIS 189735, at *9 (N.D. Ill. Aug. 9, 2013); *see, e.g.*, *Walker v. Discover Fin. Servs*., No. 10-cv-6994, 2011 U.S. Dist. LEXIS 58803, at *2 (N.D. Ill. May 26, 2011). If there is more than one adequate candidate, the Court should appoint "the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2); *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014).

The Manual states that the most important consideration in determining lead counsel is to ensure that the litigation proceeds efficiently and economically "without jeopardizing fairness to the parties." *Id*., §10.221. Here, the structure we propose achieves this primary goal as it combines the vast resources of the firms, while keeping the structure from becoming too large and unwieldy in order to strike the proper balance between fairness to the Class and efficiency of proceedings. Our group will provide Plaintiffs and the class with all the resources necessary to prosecute this action,

- 5 -

while remaining efficient and effective.  Additionally, it avoids any conflict of interest that would arise by appointing a single Lead Counsel over the Individual Actions and Dealership Class Actions.  A consideration of the common factors for appointment of Lead Counsel in MDL proceedings shows that the proposed candidates should be appointed for the Dealership Class Actions.

### B.     The Firms Have Performed Substantial Work Identifying and Investigating the Potential Claims in This Action

Proposed Co-Lead and Liaison Counsel have spent significant time and resources developing this case.  *See Walker*, 2011 U.S. Dist. LEXIS 58803, at \*11-\*14 (time and resources spent investigating the complaint are substantial factors in appointing interim class counsel).  The firms have undertaken a thorough investigation of Defendants' alleged unlawful conduct and have developed a case theory supported by the facts and the law.  Among other things, the firms have:

- Examined the DMS industry structure and characteristics, including its recent consolidation;

- Consulted with a renowned expert regarding liability and damages;[4]

- Conducted a detailed review of media regarding the industry and Defendants' conduct;

- Discussed with dealerships their purchases of the affected third-party applications and the effects of Defendants' conduct on them;

---

[4]    Our economic consultant is already analyzing key market factors affecting impact and damages from the alleged anticompetitive conduct, including an analysis of the market for DMS as a whole and the distribution chain of services and applications purchased by automotive dealers.  Specifically, our consultant has begun investigating key market factors such as industry concentration, the presence of barriers to entry in the market for DMS, the availability of substitutes for the services affected by Defendants' alleged misconduct, and potential benchmark and yardstick approaches to measuring the overcharges to automotive dealers directly arising from Defendants' anticompetitive conduct.  In addition, our consultant has undertaken preliminary analyses of pricing for DMS, data integration services, and vendor services in order to develop a model of overcharges.  Further, since the plaintiff dealers seek certain damages which were passed on by vendors to automotive dealers, our consultant has begun a preliminary analysis of the ability of vendors to absorb, as opposed to passing on, higher charges arising from Defendants' anticompetitive conduct.  This analysis includes research on the margins earned by vendors and the demand elasticity for services or applications sold by vendors to dealers.

- 6 -

- Researched and monitored government investigations into Defendants' conduct, including a recently reported potential FTC action;

- Met with industry participants to understand the market structure; and

- Reviewed case files of related actions, including injunction proceedings.

Further, the firms in this group have already taken on leadership roles in negotiating with Defendants and counsel for the Individual Actions on issues concerning the organization and management of this MDL, drafting the dealership sections of the organization and management plan submitted to the Court ahead of the first status conference, and organizing the other law firms in the Dealership Class Actions.

### C. The Firms Are Highly Experienced in Leading Complex Antitrust and Class Action Cases

#### 1. Robbins Geller

Robbins Geller is a well-known, highly-regarded plaintiffs' class action firm, particularly within the class action and antitrust bar. Attorneys at Robbins Geller have decades of antitrust class action experience. Robbins Geller is currently serving in lead or key roles in a number of important class actions. Robbins Geller's attorneys have worked cooperatively on MDLs with numerous firms that filed cases in this MDL and that are included in this application.

With almost 200 attorneys practicing in 10 offices across the country including in Chicago, Robbins Geller is the nation's largest plaintiffs' law firm actively engaged in complex class action litigation, and among the nation's most experienced antitrust law firms. Ex. 1. Robbins Geller has obtained many of the largest class action recoveries in history, including the largest antitrust class action settlement without a government investigation, the largest securities class action trial judgment (reversed in part and settled for $1.575 billion on remand), the largest securities class action recovery ($7.2 billion), and the largest corporate takeover class action recovery. Ex. 1 at 1, 2, 4, 8 (representative cases).

Robbins Geller has received numerous commendations from the premier legal ranking organizations. Recently, Robbins Geller received numerous accolades, including being selected as one of America's Elite Trial Lawyers by *The National Law Journal*, one of the Most Feared Litigation Firms by BTI Consulting and Most Feared Plaintiffs' Firms by *Law360*, a top plaintiff firm by *The Legal 500*, a Band 1 firm by *Chambers USA*, a "Highly Recommended" plaintiffs' firm by Benchmark Litigation, and a national "Best Law Firm" by *U.S. News – Best Lawyers*. Additionally, one member of Robbins Geller's team in this action was selected as an "Antitrust Trailblazer" by *The National Law Journal.*

Courts have repeatedly praised Robbins Geller's lawyers for the superior results they have achieved on behalf of class members. For example, in *In re Currency Conversion Fee Antitrust Litigation*, the court commended counsel for providing "extraordinarily high-quality representation" and for litigating with "enormous attention to detail and unflagging devotion to the cause." 263 F.R.D. 110, 129 (S.D.N.Y. 2009), *aff'd sub nom.*, *Priceline.com Inc. v. Silberman*, 405 Fed. App'x 532 (2d Cir. 2010). Approving the $336 million settlement, Judge William H. Pauley recognized that Robbins Geller had "represented the Class with a high degree of professionalism, and vigorously litigated every issue against some of the ablest lawyers in the antitrust defense bar." *Id.* Similarly, in *Enron*, the court noted that Robbins Geller is "comprised of probably the most prominent securities class action attorneys in the country." *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006) ("*Enron*") (praising "[c]ounsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal"); *see also In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 789, 828 (S.D. Tex. 2008) (commenting that Robbins Geller is an "extraordinary group of attorneys who achieved the largest settlement fund ever despite the great odds against them" as a result of their "clearly superlative litigating and negotiating skills").

- 8 -

The team litigating the action here is one of uncommon distinction, with former federal prosecutors and trial tested antitrust veterans leading the case.

- James E. Barz heads the firm's Chicago office and is a former federal prosecutor with 15 jury trials in this District alone and 9 oral arguments in the Seventh Circuit, and he has been named a Super Lawyer by *Super Lawyers Magazine*. He has achieved significant success in the Northern District and elsewhere, including in cases before this Court where he acted as lead trial counsel in a $200 million recovery for the class in *Silverman v. Motorola, Inc.*, No. 07 C 04507 (N.D. Ill.), and a $60 million recovery for the class in *City of Sterling Heights General Emps.' Ret. Sys. v. Hospira*, *Inc.*, No. 1:11-cv-08332 (N.D. Ill.). He has the unique qualification of having defended one of the largest recent antitrust class actions, serving as counsel to BASF Corporation in *In re Urethane Antitrust Litig.*, No. 04-MD-01616 (D. Kan.) while at his prior firm.

- David W. Mitchell, is a former federal prosecutor who tried 18 cases to verdict and made numerous appellate arguments before the Ninth Circuit. As a partner at Robbins Geller, Mitchell has achieved significant recoveries on behalf of plaintiffs in numerous complex antitrust cases while serving as lead or co-lead counsel in cases including *Dahl v. Bain*, No. 1:07-cv-12388-EFH (D. Mass.), the ISDAFix benchmark antitrust litigation *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 1:14-cv-07126-JMF-AJP (S.D.N.Y.), and *In re SSA Bonds Litig.*, No. 1:16-cv-03711-ER (S.D.N.Y.), among many others. In 2015, he received the prestigious Trailblazers award in antitrust from *The National Law Journal*.

- Alexandra S. Bernay, has nearly two decades of experience in class action cases including serving as co-lead counsel in the massive *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-1720 (MKB)(JO) (F.D.N.Y.), and is part of the Robbins Geller team recently appointed sole lead counsel against competing applications in *In re Remicade Antitrust Litig.*, No. 17-cv-4326 (E.D. Pa.), among many others. She was also part of the trial team that secured the largest class action recovery at the time of $7.2 billion in the *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) case and tried to verdict a large-scale antitrust class action in the Northern District of California against one of the world's largest companies.

- Carmen A. Medici, a partner in the firm's antitrust department, also has extensive experience litigating large-scale antitrust actions. He is part of the co-lead counsel team in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-md-1720 (MKB)(JO) (E.D.N.Y.), as well as *In re SSA Bonds Antitrust Litig.*, No. 1:16-cv-03711-ER (S.D.N.Y.), a large action pending in the Southern District of New York, among other high-profile cases. Medici has been named a "Rising Star" by *Super Lawyers Magazine* for the past three consecutive years.

2.     **Cuneo Gilbert**

a.     **The *Automotive Parts Antitrust Litigation***

Cuneo Gilbert brings to this group unparalleled experience representing dealerships. Cuneo Gilbert is the only law firm applying for leadership who already represents a national class of dealerships. Cuneo Gilbert is interim co-lead counsel for the dealership class in the *Automotive Parts Antitrust Litig.*, No. 12-md-02311 (E.D. Mich.), a case based on the largest antitrust conspiracy in history.[5]  In that litigation, Cuneo Gilbert has represented a class of dealerships seeking damages in 30 jurisdictions, as well as nearly 40 individual dealerships, since 2012, when it was appointed interim co-lead counsel by Senior Judge Marianne O. Battani, in the Eastern District of Michigan.

The *Automotive Parts* litigation encompasses 42 cases, concerns a price-fixing and bid-rigging conspiracy that lasted nearly 2 decades and includes over 70 defendant families. In the 6-plus years that Cuneo Gilbert has represented this class of dealerships, it has recovered more than $300 million. This is the largest dealership class recovery Cuneo Gilbert is aware of.

In its representation, Cuneo Gilbert has shepared the dealerships' claims past dozens of motions to dismiss, creating significant favorable case law in the Sixth Circuit, prevailed in the majority of discovery disputes seeking burdensome discovery from the automobile dealerships, and gotten the dealership class certified many times over, in the settlement context. Indeed, Cuneo Gilbert has prevailed on the majority of contested motions in the case.

In gathering discovery from its clients, Cuneo Gilbert has learned the ins and outs of various DMSes, including CDK, Reynolds and their competitors, such as Dealertrack and Auto/Mate. Cuneo Gilbert also conducted multiple rounds of data pulls from its clients' systems, for which it

---

[5]     "Auto parts price-fixing probe has expanded – DOJ official," *Reuters* (Feb. 15, 2013), https://www.reuters.com/article/carparts-dojprobe/auto-parts-price-fixing-probe-has-expanded-doj-official-idUSL1N0BF74T20130215 (Former Deputy Attorney General Scott Hammond described it thusly: "I say (it is) the biggest with respect to the impact on U.S. business and consumers, and the number of companies and executives that are subject to the investigation.").

- 10 -

engaged the services of Authenticom and it was involved in third-party discovery with a number of DMS' providers.

Cuneo Gilbert also understands how dealerships are operated, which employees perform which functions, and how documents and data are stored in a dealership. Cuneo Gilbert knows, as a result of its years of experience representing dealerships how to produce their documents and data, how to prepare them for and defend their depositions, how to administer and disburse their settlements and how to protect their interests in a class action.

The *Automotive Parts* litigation also involved many different parties, with varied interests, including an OEM advancing an individual action, like the vendors here, who, like OEMs, are often directly above dealerships in the relevant chain of distribution. *Automotive Parts* also involved a direct purchaser class, an end-payor (consumer) class, and state attorneys general. Cuneo Gilbert has coordinated and worked together with all of these different parties, in party and third-party discovery, as well as motion practice, and is prepared to engage in the same type of cooperation with the Individual Action litigants and other Dealership Class Action Counsel.

Further, Cuneo Gilbert has worked well with CDK's counsel, Ms. Miller, both in adversarial proceedings and in the successful negotiation of a settlement, in *Automotive Parts*, where Ms. Miller represented one of the defendants.

Both Judge Battani and Special Master Gene J. Esshaki have recognized Cuneo Gilbert's hard work on behalf of dealerships and Judge Battani has awarded Cuneo Gilbert attorneys' fees numerous times in multiple rounds of settlements. Both Judge Battani and Special Master Esshaki stand ready to speak to this Court about Cuneo Gilbert's work in the *Automotive Parts* litigation.

- 11 -

### b. Dealerships' and Counsel's Support of Cuneo Gilbert's Appointment

A representative sample of the dealerships represented by Cuneo Gilbert in *Automotive Parts* has come forward to support Cuneo Gilbert's application for co-lead counsel in this litigation. These dealerships explain that Cuneo Gilbert has worked with them "in producing multiple rounds of documents and data, prepared us for and defended our depositions and aided us in assembling proofs of claims to allow us to make claims to the settlement fund." *See* Exs. 3-6.

The dealerships all attest to Cuneo Gilbert's efficacy in representing dealerships in *Automotive Parts*. For instance, the owner of Archer-Perdue Suzuki states: "Throughout our relationship, Cuneo Gilbert and its attorneys, including Victoria Romanenko, have been hard-working, loyal and knowledgeable." *See* Ex. 3.

The Chief Financial Officer at Lee Honda and Lee Toyota states:

> They have spent hours on the phone with us learning the details of our business and our dealer management system – including information even some employees do not know. They patiently answered all of our questions about the case and they continuously fought to protect our interests as well as those of all of the dealers they represented throughout this process.

*See* Ex. 5.

As Shearer Acura explained:

> Vicky made sure that the dealership employees who were deposed were well prepared for their depositions and she worked hard, during the depositions, to keep the questioning focused strictly on relevant material. In making our productions, Vicky and her team carefully identified our and our customers' sensitive information and made certain that it was protected.

*See* Ex. 4.

As Hartley Buick has stated: "[Cuneo Gilbert] understands dealerships and how to represent them" and "[d]uring the course of this entire litigation, [Cuneo Gilbert] has never stopped advocating for automobile dealerships, including Hartley Buick." Ex. 6.

- 12 -

1398588_1

In addition to the dealerships, Cuneo Gilbert's co-lead counsel in *Automotive Parts*, Shawn Raiter of Larson King and Don Barrett of Barrett Law Group, both of whom have complaints on file in this Litigation, support the appointment of this group as Interim Co-Lead Class Counsel.

### c. Relevant Experience Representing Other Small Businesses

In addition to having represented automobile dealerships for six years, Cuneo Gilbert specializes in representing small businesses, often retailers, in antitrust litigation. Cuneo Gilbert is lead counsel for independent pharmacies in the *Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 2:16-md-2724-CMR (E.D. Pa.). Cuneo Gilbert is lead counsel for commercial food preparers in the *Packaged Seafood Products Antitrust Litig.*, No. 3:15-md-02670-JLS-MDD (S.D. Cal.). It also represents hospitals in the *National Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio). Cuneo Gilbert is thus particularly well-poised to address the unique issues of small retailers.

### d. Other Relevant Experience and Achievements

Cuneo Gilbert has achieved success for a range of clients by: helping to recover billions of dollars in shareholder litigation; obtaining compensation for Holocaust survivors; and working to recover hundreds of millions of dollars for homeowners with defective construction materials. Cuneo Gilbert has years of experience litigating and prosecuting complex class actions such as this case, including such cases such as *Enron*[6] where more than $7 billion was recovered for defrauded investors and CertainTeed's defective organic shingles litigation where the firm served as co-lead counsel in an MDL that secured a settlement valued at more than $700 million.[7] Cuneo Gilbert and Mr. Cuneo were also lead counsel in *Galanti*,[8] a case involving a tremendous schism among the

---

[6]     *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.).

[7]     *In re CertainTeed Corp. Roofing Shingles Prods. Liab. Litig.*, No. 2:07-md-01817-LP (E.D. Pa.).

[8]     *Galanti v. The Goodyear Tire & Rubber Co.*, No. 03-cv-209 (D.N.J.).

plaintiffs' lawyers – replete with competing injunctive requests, objections and acrimony.  Cuneo Gilbert brought the factions together for a binational settlement, of over $340 million.

With its wealth of experience both in cases representing dealerships and in other cases, Cuneo Gilbert will be a valuable asset to the Co-Lead Counsel team in this case.  Cuneo Gilbert's firm resume is attached as Ex. 7.

### 3. Kaplan Fox

For more than 40 years, Kaplan Fox has been a leader in representing those injured by violations of the antitrust laws, recovering billions of dollars for its clients.  Based in New York and with offices throughout the United States, including in Chicago, Kaplan Fox is regularly chosen by courts (*e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 1:06-md-1775-JG-VVP (E.D.N.Y. Dec. 4, 2006) ECF No. 232), in the Southern District of New York (*e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 1:14-md-02542-VSB (S.D.N.Y. June 26, 2014) ECF No. 36),[9] to act as lead or co-lead counsel in antitrust class actions, and the firm is widely recognized for its effective handling of antitrust actions).  *See* Ex. 8.

In addition, Kaplan Fox lawyers routinely receive accolades for their antitrust experience from their peers in the plaintiffs and defense bars.  More recently, Kaplan Fox partners Robert Kaplan and Gregory Arenson were listed by defense and corporate counsel as 2 of the top 75 plaintiffs' attorneys in the United States for all disciplines, one of the very few law firms with two attorneys listed.  *See*  http://lawprofessors.typepad.com/files/dc-188012-v2-trial_lawyer_kingpins1.xls.  Mr. Arenson's economics background has provided a basis for his recognized expertise in handling economic issues in antitrust cases both at class certification and on the merits,

---

[9]  Kaplan Fox has been appointed as co-lead counsel in *In re Cast Iron Soil Pipe & Fittings Antitrust Litig.*, No. 1:14-md-2508-HSM-WBC (E.D. Tenn. May 20, 2014) ECF No. 67; *In re Ductile Iron Pipe Fittings Antitrust Litig.*, No. 3:12-cv-00169-AET-LHG (D.N.J. May 15, 2012) ECF No. 61.

- 14 -

and indeed has been asked in several cases in which Kaplan Fox has not been co-lead counsel to be involved with economic issues and experts on class certification and the merits.

In 2013, Kaplan Fox was chosen by *The National Law Journal* for its "Litigation Boutique Hot List." *See* Ex. 17. Many of the firm's lawyers, including most of the attorneys who will be working on this matter, have been designated numerous times by their peers as New York "Super Lawyers" or "Super Lawyers – Rising Stars" for their antitrust, securities, and class-action litigation work.

The firm has been involved in some of the largest and most important antitrust cases in history, litigating issues which resulted in significant changes in antitrust law:

- *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 1:06-md-1775-JG-VVP (E.D.N.Y.): Kaplan Fox was appointed as co-lead counsel for direct purchasers of air cargo shipping services in this antitrust class action against the world's major providers of air cargo shipping services. Close to trial, the case settled for more than $1.25 billion. Kaplan Fox partner Mr. Arenson led plaintiffs' three-day evidentiary hearing on class certification, which resulted in Magistrate Judge Pohorelsky's detailed Report and Recommendation to certify the class and to exclude certain portions of defendants' experts' testimony. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014). In denying defendants' motions for summary judgment and granting plaintiffs' motions to strike defendants' affirmative defenses (argued by Mr. Kaplan), Honorable John Gleeson stated:

    > Well, first of all, thank you for your advocacy, both in writing and orally. You travel in different circles than the ones I travel in so you probably don't appreciate how unusual it is to have such excellent lawyering so I am grateful for it.

Ex. 9.

- *In re High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087 (C.D. Ill.): Kaplan Fox was appointed to represent a class of direct purchasers alleging that the Archer Daniels Midland Company and a number of its competitors conspired to fix the price of high fructose corn syrup.[10] After the district court granted summary judgment for the defendants, Kaplan Fox partner Gregory Arenson successfully argued the case

---

[10] In *High Fructose Corn Syrup*, one of the defendants was represented by Mark Ryan of Mayer Brown and he represents CDK in this litigation.

before the U.S. Court of Appeals for the Seventh Circuit, with Judge Posner writing a seminal antitrust opinion reversing the trial court's decision. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002). The case later settled shortly before trial for $531 million. At the end of the *Fructose* case, presiding judge Michael H. Mihm complimented plaintiffs' lead counsel, stating that "I've said many times during this litigation that you and the attorneys who represented the defendants here are as good as it gets. Very professional. At least in my presence or in my contacts with you, you've always been civil. You've always been cutting to the chase and not wasting my time or each other's time or adding to the cost of the litigation."[11]

- *In re Flat Glass Antitrust Litig.*, MDL No. 1200 (W.D. Pa.): Kaplan Fox was appointed a co-lead counsel in a case against the leading manufacturers of flat glass (used in everything from house windows to car windshields). The firm was significantly involved in all aspects of the case, including Kaplan Fox partner Mr. Kaplan's successful argument before the U.S. Court of Appeals for the Third Circuit, which issued a groundbreaking summary judgment opinion that is routinely cited in antitrust cases throughout the federal courts. *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350 (3d. Cir. 2004). *Flat Glass* settled on the eve of trial for a total of $12 million for the class.

- *In re Neurontin Antitrust Litig.*, MDL No. 1479, Master File No. 02-1390 (D.N.J.): Kaplan Fox was one of two co-lead counsel in this hard-fought delayed-generic entry case against Pfizer and Warner-Lambert which lasted over twelve years and which settled in 2014 for $190 million shortly before trial. Kaplan Fox's work on this case, which resulted in numerous published decisions on a wide array of important issues

---

[11] Ex. 8 at 45:10-16. On other occasions Judge Mihm stated:

(a)     I want to thank you for the high quality of your presentation today. I told my interns earlier today that, you know, everyone involved in a case like this has really significant obligations and responsibilities. As lawyers, you to your clients. From where I'm sitting, to everybody. So it's very serious business. At the same time, I woke up early this morning because I couldn't wait to get here because I knew this was going to be a really interesting day listening to good lawyers and you didn't disappoint me.

Ex. 10 at 238:3-11. After two days hearing on various pretrial issues on May 17 and 18, 2004, Judge Mihm stated:

(b)     Well, I do want to say, I know that there have been some rather contentious arguments here, but I do appreciate the quality of the arguments and the briefs and I do want to say I recognize that this could be a lot worse than it is and it's as good as it is because I think you've all worked quite hard. Now you have to take those efforts and multiply them by two, particularly with the depositions and the exhibit issues. It's a real pleasure to deal with lawyers of your quality and professionalism, so thank for that.

Ex. 11 at 133:1-11.

in this particular type of antitrust litigation, who has extensive experience in antitrust cases generally.[12]

Kaplan Fox is also highly experienced in other types of class action litigation. In *In re Bank of Am. Corp. Sec., Derivative and ERISA Litig.*, No. 1:09-md-02058-PKC (S.D.N.Y.), the firm represented the Ohio Attorney General and two Ohio retirement systems and secured a landmark $2.43 billion settlement on the eve of trial on behalf of the class. Ex. 12. In approving the settlement, Judge P. Kevin Castel praised "the quality of the representation." Ex. 8 at 60:3-4.

### D. Proposed Executive Committee Members and Liaison Counsel Are Highly Experienced in Handling Complex Actions

#### 1. Miller Law

Miller Law is a litigation boutique law firm which unites the talents of attorneys with combined experience in a wide array of complex civil litigation. The foundation of the firm is the ability to handle large complex litigation and sophisticated class actions in a variety of practice areas in federal and state courts across the country.

Miller Law's resume lists several antitrust and other class actions in which Miller Law has been appointed a leadership position. The resume also includes the individual biographies of Marvin Miller, as well as the individual biographies of Miller Law attorneys Andrew Szot and Matthew E. Van Tine. The resume demonstrates the extensive class action experience and successes, particularly in complex and multidistrict litigation across a broad spectrum of practice areas. *See* Ex. 13.

Miller Law has decades of experience litigating class actions and its attorneys have repeatedly been appointed lead or co-lead counsel in such actions. *Id.* Because of their tenacity and zealous advocacy on behalf of the classes they have represented, Miller Law's attorneys have

---

[12]   Kaplan Fox has been a lead or member of the Executive Committee in dozens of other antitrust actions, including *State of Conn. v. General Motor Corp.*, MDL No. 65, No. 71-cv-830 (N.D. Ill.). which was tried before Judge Frank McGarr in this District.

- 17 -

repeatedly recovered sizeable class action settlements. Although they have decades of experience and have been appointed to leadership positions, in the more recent years, Miller Law and its attorneys have been appointed lead, or co-lead class counsel in the following plaintiff class actions involving alleged antitrust violations and which resulted in sizeable class action cash settlements:

- *In re Flonase Antitrust Litig.*, No. 2:08-cv-03301 (E.D. Pa): Judge Anita B. Brody of the Eastern District of Pennsylvania appointed attorneys at Miller Law as co-lead class counsel to represent a class of indirect purchasers of the drug Flonase in an antitrust action against the maker of that drug. Miller Law, together with its co-counsel, obtained a court-approved settlement for the indirect purchaser plaintiff class in the amount of $46 million.

- *In re Potash Antitrust Litig.*, No. 1:08-cv-06910 (N.D. Ill.): Now Chief Judge of the Northern District of Illinois, Ruben Castillo, appointed Miller Law co-lead class counsel to represent a class of indirect purchasers of potash (a fertilizer) in an antitrust class action that achieved a $17.5 million settlement for the indirect purchaser class.

- *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-02196 (N.D. Ohio): Judge Jack Zouhary appointed Marvin Miller sole lead counsel to represent a class of indirect purchasers of flexible polyurethane foam. Judge Jack Zouhary granted final approval of nine all-cash settlements totaling $151.25 million.

Miller Law's experience in handling complex class actions translates into deep and thorough knowledge and experience in litigating antitrust class actions. On behalf of plaintiffs, Miller Law has repeatedly and successfully opposed motions to dismiss, defeated motions for summary judgment, retained economic experts and thwarted *Daubert* motions, defended scores (if not hundreds) of class members at their depositions, successfully obtained class certifications, and prepared and submitted pre-trial submissions – such as motions *in limine*, exhibit lists, deposition designations, and extensive jury instructions. Miller Law is fully committed and stands ready to provide the same level of zealous advocacy and resources to represent dealer plaintiffs.

The skill and experience of Miller Law's attorneys have been recognized and commended by numerous courts, which have repeatedly appointed the firm, and/or its attorneys, to leadership positions throughout the years.

1398588_1

Judge Zouhary in *Polyurethane Foam* (above), after earlier appointing Mr. Miller as sole interim lead class counsel, that appointment was confirmed and Judge Zouhary commented:

> Under Rule 23(C)(1)(B) and (g) of the Federal Rules of Civil Procedure, Marvin A. Miller, Miller Law LLC, is APPOINTED counsel for the IPP Class. The Court finds that the designation of Mr. Miller is in the best interest of the Class because he (a) has zealously represented the interests of the class in litigating this case while serving as interim lead counsel; (b) has extensive relevant experience in complex antitrust litigation and knowledge of the law applicable to this case; and (3) he has and is willing to continue to commit the resources necessary to represent the Class.

Ex. 14 at 3.

Mr. Miller will be the attorney primarily handling this litigation for Miller Law. Andrew Szot and Matthew E. Van Tine, who have extensive class action and complex commercial litigation experience (*see* Ex. 13), also will be handling this litigation for Miller Law.

## 2. Clifford Law

Mr. Clifford is highly capable and competent class counsel, unquestionably capable of more than adequately representing the interests of the class.[13] Further, Mr. Clifford's work in promoting civility in the profession is widely known and recognized by both courts and professional associations, and likely to prove useful in seamlessly coordinating the commons issues of this case, while managing the equally distinct aspects of this MDL. Mr. Clifford is Chicago-based, and therefore very well-versed in the local rules of this District, as well as fully accessible to this Court and counsel on an ongoing and immediate basis.

Clifford Law has established a national reputation for protecting plaintiffs' rights, having been named by *The National Law Journal* as one of the Top 10 Litigation Boutiques in the country. *The National Law Journal* also named the firm as one of the top 20 "Plaintiff's Hot List" and as one of the 25 "Go-To" plaintiffs' law firms in the country.

---

[13] *See* Ex. 15.

More recently, Clifford Law was named to the 2018 Best Lawyers® in America list in several areas of law including Commercial Litigation; Bet-the-Company Litigation; Personal Injury Litigation – Plaintiffs; Mass Tort Litigation/Class Actions – Plaintiffs; Product Liability Litigation – Plaintiffs; and Qui Tam Law.

Mr. Clifford has worked on a number of complex litigation lawsuits over the past three decades including multi-district and class cases ranging from large commercial aircraft crashes to food misbranding cases, data breaches and unauthorized disclosures of patients' medical data.[14] One of his most distinguished accomplishments was serving as liaison counsel for all of the interests that lost property after the al Qaeda terrorists hijacked and piloted two Boeing 767 aircraft that slammed into the World Trade Center Towers in New York on September 11, 2001. Numerous lawsuits were filed against American Airlines and United Airlines for their multiple failures in properly screening the terrorists who eventually boarded these flights. These complex, and often contentious, suits were brought on behalf of insurance companies and business interests from around the globe. With Robert A. Clifford as liaison counsel, the cases settled in 2012 for $1.2 billion. Mr. Clifford also has served as liaison counsel or lead counsel in several commercial jet crashes.[15]

Mr. Clifford has received many awards and accolades recognizing his professionalism and leadership.[16] He was also named as the recipient of the 2014 American Inns of Court Professionalism Award for the Seventh Circuit.

Martindale-Hubbell annually names Mr. Clifford among Chicago's Top Rated Lawyers, with an AV Preeminent rating, the highest-rating given by the peer review group. He also has the distinction of being selected by Super Lawyers, a peer-review organization, as the number one

---

[14]  *See* Ex. 16 (a list of judicial contacts for professional references).

[15]  Refer to Exs. 15-16 for complete case details.

[16]  *See* Ex. 15.

lawyer in the state of Illinois for six consecutive years. He is continuously named by *Chicago Magazine* as one of the 100 Most Powerful Chicagoans and was named its 2012 Chicago Lawyer Person of the Year based upon his trial accomplishments, his contributions to the legal community and to the Chicago area.

Shannon M. McNulty is a partner at Clifford Law whose practice focuses on fraud, mass torts, whistleblower/qui tam and class actions. Admitted to practice in 2004, she has been a lawyer at Clifford Law for 14 years. Ms. McNulty has significant experience in evaluating and litigating allegations of fraud, including instances in which the government is defrauded. Well-regarded for fact-based investigations, Ms. McNulty was invited by Alderman Edward M. Burke (Chairman of the Finance Committee, City of Chicago), to testify before Chicago's City Council on the subject of fraud and price-rigging schemes in the pharmaceutical industry, particularly in relation to employer-sponsored benefit plans.

Under the leadership of Mr. Clifford and Ms. McNulty, the parties very recently reached a $27 million dollar settlement in a consumer fraud case against Pella Window Corporation pending before Judge Sharon Johnson Coleman.[17] Ms. McNulty also successfully worked for a resolution in *In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 1:15-cv-05070 (N.D. Ill.), a complex matter involving several parties with sometimes divergent or competing interests, which was previously pending before this Court.

Ms. McNulty has been recognized by Best Lawyers® in America, 2015 – 2018; Most Influential Women Lawyers in Chicago, Crain's Custom Media, 2017; Super Lawyers, 2016 – 2017; Super Lawyers Rising Stars, 2009 – 2014; Chicago Law Bulletin's Forty Under 40, 2007. Ms. McNulty has never been sanctioned by any Court.

---

[17] In addition to routinely appearing before this Court, the Court may contact the Honorable Sharon Johnson Coleman and the Honorable M. David Weisman for any further professional reference for Ms. McNulty.

### E.   The Firms Have Extensive Experience Leading MDLs and Complex Litigations

At the March 12, 2018 hearing, the Court requested information regarding each co-lead applicant firms' prior lead counsel and MDL experience. Here we provide the Court with some of the MDL and large-scale cases where the firms were appointed as lead, co-lead counsel or were appointed to an active leadership role.

### 1.   Robbins Geller

- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 1:05-md-1720 (E.D.N.Y) (Judge John Gleeson (Ret.), Judge Margo K. Brodie, Hon. Magistrate James Orenstein) (co-lead counsel in one of the largest antitrust actions of all time);

- *Dahl v. Bain Capital Partners, LLC*, No. 1:07-cv-12388 EFH (D. Mass.) (Judge William G. Young) (co-lead counsel, securing $590 million settlement);

- *In re SSA Bonds*, No. 1:16-cv-03711-HR (S.D.N.Y.) (Judge Edgardo Ramos);

- *In re Alaska Pension Fund v. Bank of Am. Corp.*, No. 14-cv-7126 (S.D.N.Y.) (Judge Jesse M. Furman) (co-lead counsel);

- *Thompson v. 1-800 Contacts*, No. 2:16-CV-01183 (D. Utah) (Judge Tena Campbell) (co-lead counsel);

- *In re Currency Conversion Fee Antitrust Litig.*, No. 1:01-md-01409 (S.D.N.Y.) (Judge William H. Pauley, III) (co-lead counsel);

- *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liab. Litig.*, No. 3:15-md-02672 (N.D. Cal.) (Judge Charles R. Breyer);

- *In re Remicade Antitrust Litig.*, No. 17-cv-04326 (E.D. Pa.) (Judge Curtis J. Joyner); (appointed lead counsel);

- *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, No. 04-cv-5184 (D.N.J.); *Lincoln Adventures, LLC v. Those Certain Underwriters at Lloyd's of London Members of Syndicates*, No. 2:08-cv-00235 (D.N.J.) (Judge Claire C. Cecchi, Magistrate Judge Joseph A. Dickson) (co-lead counsel);

- *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-0284 (N.D. Ohio) (Judge Dan Aaron Polster) (court-appointed settlement committee);

- *In re Epipen (Epinephrine Injection, USP) Marketing, Sales Practices & Antitrust Litig.*, No. 2:17-md-02785 (D. Kan.) (Judge Daniel D. Crabtree, Magistrate Judge Teresa J. James) (co-lead counsel);

- *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-5893 (N.D. Ill.) (Judge Jorge L. Alonso); (lead counsel, securing $1.575 billion judgment); and

- *In re Enron Corp. Sec. Litig.* No. 4:01-cv-03624 (S.D. Tex.) (Judge Melinda Harmon) (lead counsel, largest securities fraud class action in history).

## 2.    Cuneo Gilbert

- *In re Automotive Parts Antitrust Litigation*, No. 12-md-02311 (E.D. Mich.) (Judge Marianne Battani and Special Master Gene J. Esshaki) (Interim Co-Lead Class Counsel for Automobile Dealership Plaintiffs, in a case concerning the largest price-fixing and bid-rigging conspiracy in antitrust history. Recovered nearly $300 million for dealerships in thirty jurisdictions and prevailed on the majority of the contested motions.);

- *Rosner v. United States*, Case No. 01-1859-CV-PAS (S.D. Fla.) (Judge Patricia A. Seitz) (Lead Counsel) (Represented Hungarian Holocaust survivors whose property found on the "Gold Train" in the final days of World War II was appropriated by the U.S. government and obtained a first-of-its-kind statement by the U.S. government acknowledging its part in the events.);

- *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 16-MD-2724 (E.D. Pa.) (Judge Cynthia M. Rufe) (Lead Counsel for Independent Pharmacies in thirty jurisdictions alleging a conspiracy to fix the prices of generic drugs.);

- *Galanti v. Goodyear Rubber Co.*, Case No. 3:03-cv-00209 (D.N.J.) (Judge Stanley Chesler) (Sole Lead counsel in action resulting in a bi-national settlement of approximately $340 million for purchasers of defective radiant heating hose.);

- *Benson v. Kwikset Corp.*, No. 00CC01275 (Cal. Super. Ct. Orange Cty.) (Judge Raymond Ikola)[18] (Lead Counsel) (The "Labels Matter" case where Cuneo Gilbert obtained a landmark decision from the California Supreme Court.);

- *Colgan v Leatherman Tool Group*, No. BC 247 889 (Cal. Super. Ct. Los Angeles Cty.) (Judge Victoria G. Chaney)[19] (Co-Lead Counsel) (Action alleging inaccurate "Made in the USA" labeling. Cuneo Gilbert obtained significant injunctive relief following a hard-fought trial.); and

---

[18]   Served as trial judge in the noted action; currently serving as judge on the California Court of Appeal.

[19]   Served as trial judge in the noted action; currently serving as judge on the California Court of Appeal.

- *In re: Packaged Seafood Products Antitrust Litig.*, No. 15-md-02670-JLS-MDD (S.D. Cal.) (Judge Janis L. Sammartino) (Lead counsel for Commercial Food Preparers representing putative classes in 27 jurisdictions alleging a conspiracy to fix the prices of shelf-stable canned seafood.).

### 3. Kaplan Fox

- *In re Air Cargo Shipping Services Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.) (Judge John Gleeson (Ret.)) (co-lead counsel, settled during trial preparation for total settlement of more than $1.25 billion);

- *In re Neurontin Antitrust Litig.*, MDL No. 1479, No. 02-1390 (D.N.J.) (Judge Faith S. Hochberg, Ret.) (co-lead counsel, $190 million recovered);

- *In re High Fructose Corn Syrup Antitrust Litig.*, MDL No. 1087, Master File No. 95-1477 (C.D. Ill.) (Judge Michael Mihm) (co-lead counsel, $531 million recovered);

- *In re Flat Glass Antitrust Litig.*, MDL No. 1200 (W.D. Pa.) (Judge Donald Ziegler, Ret.) (co-lead counsel, $122 plus million recovered);

- *In re Hydrogen Peroxide Antitrust Litig.*, MDL No. 1682 (E.D. Pa.) (Judge Stewart R. Dalzell) (co-lead counsel, $97 million recovered);

- *In re Plastics Additives Antitrust Litig.*, No. 03-CV-1898 (E.D. Pa.) (Judge Legrome Davis) (co-lead counsel, $46.8 million recovered);

- *In re Medical X-Ray Film Antitrust Litig.*, No. CV 93-5904 (E.D.N.Y.) ($39.6 million recovered) (Judge Charles P. Sifton);

- *In re NBR Antitrust Litig.*, MDL No. 1684 (W.D. Pa.) (Judge David S. Cercone) (co-lead counsel, $34.3 million recovered);

- *In re Packaged Seafood Antitrust Litig.*, 3:15-md-02670 (S.D. Cal.) (Judge Janis Sammartino) (Kaplan Fox represents a number of substantial companies in individual actions);

- *In re Generic Pharms. Pricing Antitrust Litig.*, MDL 2724 (E.D. Pa.) (Judge Cynthia M. Rufe) (Member Plaintiffs' Steering Committee For Direct Purchaser);

- *In re Broiler Chicken Antitrust Litig.*, 1:16-cv-08637 (N.D. Ill.) (Judge Thomas M. Durkin) (Kaplan Fox represents a number of companies with substantial businesses in a recently filed individual action); and

- *In re Bank of Am. Sec. Litig.*, No. 09 MDL 2058 (DC) (S.D.N.Y.) (Judge P. Kevin Castel) (co-lead counsel, $2.4 billion recovered).

### 4.    Miller Law

- *In re Polyurethane Foam Antitrust Litig.*, No. 10-md-2196-JZ (N.D. Ohio) (Judge Jack Zouhary) (sole lead);

- *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516 (SRU) (D. Ct.) (Judge Stefan Underhill) (co-lead);

- *In re Flonase Antitrust Litig.*, No. 2:08-cv-3301 (E.D. Pa.) (Judge Anita Brody) (co-lead);

- *Dennison v. BP Prod. N. Am., Inc*., No. 06 C 3541 (N.D. Ill.) (Judge James Zagel) (co-lead);

- *In re Potash Antitrust Litig.*, No. 1:08-6910 (N.D. Ill.) (Chief Judge Ruben Castillo) (co-lead);

- *In re Text Messaging Antitrust Litig.*, No. 08-7082 (N.D. Ill.) (Judge Matthew Kennelly) (Plaintiffs' Steering Committee and Co-Liaison);

- *In re Relefan Antitrust Litig.*, No. 01-12239-WGY (D. Mass.) (Judge William G. Young) (co-lead);

- *In re Soybean Futures Litig.*, No. 89-7009 (N.D. IL) (Judge Charles Norgle) (co-lead);

- *Kohen v. Pacific Inv. Mgmt. Co.*, No. 05-4681 (N.D. Ill.) (Judge Ronald A. Guzman) (liaison);

- *Makor Issues & Rights & Ltd. v. Tellabs*, No. 02-4356 (N.D. Ill.) (Judge Amy J. St. Eve) (liaison);

- *In re Evanston Northwestern Healthcare Corp. Antitrust Litig.*, No. 1:2007cv04446, (N.D. Ill.) (Judge Edmond E. Chang) (co-lead); and

- *Jaffe v. Household Int'l, Inc*., No. 1:02-cv-5893 (N.D. Ill.) (Judge Jorge L. Alonzo) (liaison)

### 5.    Clifford Law

- *In re September 11 Litig.*, No. 21 MC 101 (E.D.N.Y.) (Judge Alvin K. Hellerstein);

- *Air Crash Disaster near Roselawn, Indiana on October 31, 1994*, No. 95 C 4593 (N.D. Ill.) (Judge Ruben J. Castillo);

- *In re Air Crash At Lexington, Kentucky, August 27, 2006*, Master File No. 5:06-cv-316-KSF (E.D. K.Y.) (Judge Karl Forester, Now Deceased);

- 25 -

- *In re Air Crash Near Clarence Center, New York On February 12, 2009*, No. 09-2085 (W.D.N.Y.) (Chief Judge William M. Skretny);

- *In re Air Crash Near Point Mugu, California On January 31, 2000*, No. MDL-00-1343 (N.D. CA) (Judge Charles R. Breyer);

- *Greene v. Karpeles*, No. 14C1437 (N.D. Ill.) (Mt. Gox Bitcoin Exchange Litigation) (Judge Gary Feinerman);

- *Eubank v. Pella Windows Corp.*, No. 06-cv-4481 (N.D. Ill.) (Pella Proline Litigation) (Judge James B. Zagel and Judge Sharon Johnson Coleman);

- *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 1:06-cv-07023 (N.D. Ill.) (Magistrate Judge Mary H. Rowland); and

- *In re Herbal Supplements Mktg. & Sales Practices Litig.*, No. 1:15-cv-05070 (N.D. Ill.) (Judge Amy J. St. Eve).

**F.     The Firms' Attorneys Are Knowledgeable Regarding the Applicable Law and Have Sufficient Resources to Fund the Litigation and Effectively Represent the Class**

The firms have extensive knowledge of the relevant substantive and procedural law regarding the state law and antitrust claims at issue in the Dealership Class Actions and have spent decades applying that knowledge to successfully and efficiently prosecute complex class actions.

In a case such as this, where the class faces well-capitalized adversaries who have each retained capable and well-funded counsel, class members should be represented by counsel with the resources to match the impressive collection of counsel on the defense side. Indeed, class counsel must have the financial and litigation resources to investigate, prosecute, and then try the case. Accordingly, courts examine the resources of counsel seeking appointment as interim lead counsel. *See, e.g.*, *In re Stericycle, Inc.*, No. 13 C 5795, MDL No. 2455, 2013 U.S. Dist. LEXIS 147718, at *7 (N.D. Ill. Oct. 11, 2013); *In re Municipal Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186-87 (S.D.N.Y. 2008). This Court must satisfy itself that interim lead counsel "will commit sufficient attorney time and financial resources to vigorously prosecute the putative class's claims." *State Farm*, 301 F.R.D. at 289.

- 26 -

Proposed Co-Lead and Liaison Counsel possess superior investigatory, financial and litigation resources, which will enable the firms to represent the class effectively and efficiently. The firms are well-capitalized and possess significant litigation resources. Proof of the firms' resources and capabilities is their multi-decades track record successfully prosecuting complex actions requiring tremendous financial resources. The Proposed Co-Lead firms consistently advance litigation costs in matters of comparable or even greater size and complexity. For example, in *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-5893 (N.D. Ill.), Robbins Geller advanced more than $30 million in costs over nearly 16 years in obtaining the best possible result for the class.

In addition to the above-mentioned attorneys, Robbins Geller has a committed team of experienced attorneys and professional staff to successfully prosecute the Dealership Class Actions. Robbins Geller's paralegals, data analysts, in-house forensic accountants, investigators, and litigation support specialists are second to none. Robbins Geller's technology resources are unmatched, as over the last decade, electronic discovery has transformed litigation practices and enabled the preservation, collection, production, and review of vast quantities of documents far more efficiently and cost-effectively than was previously possible. Robbins Geller has undertaken much of the technology services typically outsourced to third-party providers and has developed state of the art resources to manage in-house the production, storage, processing, analysis, printing, and review of electronic discovery. The firm's system consists of over 20 servers and currently consumes approximately 100 Terabytes of storage all located in a SSAE 16 Type II data center, with another 50 Terabytes of storage which serves as back up in a separate location with automatic replication. Users can login securely, view, search, download, code, and analyze documents produced in this (and other) litigation from any Microsoft Windows-based computer with an internet connection. Using this in-house system allows Robbins Geller and its associated counsel to

- 27 -

prosecute actions, provides greater control over security infrastructure, and has reduced the time and expense associated with developing and maintaining electronic discovery databases.

Such resources will be particularly important here, where there is a high likelihood that millions of documents, transaction records and other electronically stored information will be produced.

Cuneo Gilbert is also able to provide significant cost and labor efficiencies, having already spent six years working on a dealership litigation and having already been through the process of producing dealerships' documents and data, and hiring litigation vendors to make those productions, as well as administering dealership settlements. Indeed, Cuneo Gilbert has a team of attorneys devoted to reviewing dealerships' claims to the Settlement Fund. Further, having worked on productions of data extracted from many dealerships' DMSes, these attorneys are well ahead of the curve in reviewing dealerships' data as well as understanding the interstices of dealer management systems and the importance of access to those systems.

Further, Cuneo Gilbert's attorneys have extensive experience in the antitrust realm and class action litigation. Mr. Cuneo, one of Cuneo Gilbert's named partners who will work on this litigation, is well versed in the issues of indirect purchaser litigation and has worked on antitrust issues for nearly 40 years, both as a litigator and a public servant. Mr. Cuneo previously worked at the Federal Trade Commission and then as Counsel to the House committee with jurisdiction over the antitrust laws. He is also the co-editor of a textbook, *The International Handbook of Private Enforcement of Competition Law* (Edward Elgar Publishing Inc., 2010). In 2016, the American Antitrust Institute awarded Mr. Cuneo its Alfred Kahn Award of Lifetime Achievement. Mr. Cuneo is also one of Cuneo Gilbert's primary attorneys working on the aforementioned *Automotive Parts* litigation.

- 28 -

Ms. Romanenko, who will be joining Mr. Cuneo in this Litigation, is also counsel in the *Automotive Parts* litigation, where, as detailed in the dealership letters described above, she has served as the direct interface with dealerships in making productions, defending depositions and successfully briefing and arguing a variety of motions. *See* Exs. 3-6. Ms. Romanenko's work in that case has been recognized by the American Antitrust Institute, which named her as a recipient of its Award for Outstanding Antitrust Litigation Achievement by a Young Lawyer. Ms. Romanenko has also co-authored a chapter in the in the handbook *Private Enforcement of the Antitrust Law in the United States* (Albert A. Foer and Randy M. Stutz, eds., 2012).

Cuneo Gilbert's team will also include Evelyn Li and Jennifer Kelly, also counsel in Auto Parts. Ms. Kelly has been named as a Super Lawyer Rising Star in 2015, 2016, and 2017 in the practice areas of antitrust and consumer protection.

The lawyers at Kaplan Fox possess specialized economic backgrounds and years of experience handling complex cases with difficult economic issues. Mr. Kaplan was a prosecutor with the Antitrust Division of the United States Department of Justice and has more than 40 years' experience in antitrust litigation. Mr. Arenson has been litigating cases for over 30 years and has a strong economic background and procedural expertise applicable to antitrust cases. Ms. Katcher began her career in antitrust litigation as a member of the trial team defending Microsoft against a series of private class actions brought in courts around the country, as well as representing other major defendants at trial and in bet-the-company litigation. Since 2007, she has worked in some of its largest cases, including *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775 (E.D.N.Y.) and a successful bellwether trial in *Neurontin Marketing, Sales Practices & Products Liability Litig.*, MDL No. 1629 (D. Mass.). Mr. Campisi has years of experience in complex litigation and Mr. Schwartz was previously in the Pennsylvania Attorney General's office where he

litigated antitrust cases. Mr. Specks who is located in Chicago has more than 30 years of antitrust litigation experience in dozens of antitrust cases.[20]

### G.    Additional Factors Further Support Appointing the Firms as Interim Co-Lead Class Counsel

The Court can consider any factor it deems "pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *see* below, §J.2, (citing Manual, §21.272). We thus discuss additional considerations below.

### 1.    Motivated Plaintiffs

Each of the firms' clients suffered significant losses as a result of Defendants' unlawful conduct. These plaintiffs are highly motivated to seek redress on their own behalf and on behalf of the class. The Manual counsels that an "'empowered-plaintiff' approach to appointment of counsel in securities class actions . . . provides a useful analogy for similar class actions brought by sophisticated plaintiffs with large losses or sizable claims." *Id.*, §21.272. Here, movants have experienced significant losses and are ready, willing and able to serve as representatives for the class.

### 2.    Adequacy of Representation

We are aware that other firms will be seeking appointment to shepherd this important case. Some of those firms may seek appointment alone and others may do so in groups. Our concern, as detailed below, is that representation of dealerships while also representing integrators, vendors, or other players in the market poses a fundamental and disabling conflict. The foregoing credentials proposed for our leadership structure warrants appointment to lead this complex class action.

---

[20]    As a member of the trial bar of this Court, Mr. Specks has been assigned to represent the Plaintiff in a civil rights action brought under 48 U.S.C. §1983. The case, *Dorsey v. Washington*, No. 14 CV 7627 (N.D. Ill.), is presently pending before the Honorable Matthew F. Kennelly. The parties are scheduled to begin a jury trial on April 4, 2018.

### 3. The Firms Are Highly Regarded by Peers and Adversaries and Command the Confidence of Colleagues

Proposed Co-Lead and Liaison Counsel have reputations within the plaintiffs' and defense antitrust bars that will provide the credibility required to successfully litigate against the top defense firms in the world. As noted above, Robbins Geller, Cuneo Gilbert and Kaplan Fox are consistently ranked at the highest level and each has earned high ratings from legal ranking organizations, including *Chambers USA*, *Benchmark Plaintiff*, and *The Legal 500*. These ratings are in part based not only on submissions from the firm's peers in the plaintiffs' bar but also on those from defense bar adversaries and their clients. *See* above at §III.C.

We are mindful, of course, that other experienced firms seek appointment as interim class counsel or as members of various organizational structures. Proposed Co-Lead and Liaison Counsel have worked (and are currently working) cooperatively with many of these firms and individuals in other matters. If appointed Interim Co-Lead Class Counsel here and if the Court were to appoint other applicants to the proposed structure, the firms are confident they would work cooperatively with other Plaintiffs' counsel to maximize their collective resources and expertise, and to ensure the effective and efficient prosecution of the proposed class claims. Moreover, should the Court appoint our group, if the circumstances warranted and it could be done efficiently, our proposed group would seek input and assign work to other firms among those listed on the presently-filed complaints to the extent it made sense and served the best interests of the class. If any such work is assigned, Proposed Interim Co-Lead Class Counsel will collect time reports to ensure that there is no duplicative or excessive billing.

### 4. The Firms Will Work Cooperatively with the Court and Opposing Counsel

Attorneys from the Proposed Interim Co-Lead Class Counsel firms are not only renowned as skilled antitrust and class action litigators but also have reputations as collegial and respectful lawyers, always working professionally and respectfully with both the courts and opposing counsel.

Since filing their complaints, the firms have worked with other Plaintiffs' counsel in a cooperative manner to keep the cases moving forward efficiently, taking part in all aspects of early case work. Proposed Interim Co-Lead Class Counsel participated in an in-person meeting of Plaintiffs' counsel to ensure smooth operation of this large-scale case and were actively involved in the preparation of the status report and proposed schedule, and took part in the Court's March 12, 2018 hearing. Members of our group are working closely with Defendants and others on a governing protective order and ESI stipulation.

### 5. The Firms Offer Diverse Skill Sets and Viewpoints that Will Add to the Value of the Overall Representation of the Class

The skill sets of the Firms' attorneys are both diverse and of high quality. Robbins Geller's team includes skilled antitrust specialists as well as former federal prosecutors. This breadth of experience allows the firm to come into the litigation with an open-minded approach – one that helps both in coordinating a large group of Plaintiffs' counsel and also in interacting with defense counsel. Similarly, Cuneo Gilbert's and Kaplan Fox's teams consist of experts in the antitrust field and skilled trial lawyers.

To the extent other Plaintiffs' counsel have experience or expertise that extend beyond or otherwise complement that of the firms on a particular issue, the Firms will, to the extent it is appropriate and can be done efficiently leverage those resources for the benefit of the class. With regard to defense counsel, members of our proposed structure have long known members of defense

- 32 -

counsel and have been opposing counsel in several other matters, wherein, despite competing hard against each other, maintained professionalism and civility.

### H. The Absence of Conflicts and Superior Resources Warrant Appointing the Leadership Structure Proposed Herein

There will be at least two other competing lead counsel applicants for the Dealership Class Actions. Nothing herein is intended to disparage those groups as there are many other fine lawyers seeking a leadership role. However, two distinguishing factors – applicable to this particular case – warrant the appointment of the leadership structure proposed herein.

### 1. Counsel for the Individual Actions Are Conflicted

In appointing interim class counsel: "It is important for the judge to ensure that counsel does not have a conflict with class interests." Manual, §21.271. Rule 1.7(a) of the ABA Rules of Professional Conduct, as adopted by Local Rule 83.50, defines a "concurrent conflict" as where "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."

Here, Proposed Co-Lead and Liaison Counsel seek to represent a single dealership class, the members of which purchased the same services – DMS and software applications – and allege the same economic harm. This class's interests are aligned and there are no materially divergent interests among the class members necessitating separate counsel within the dealership class. We have no conflicts in representing the dealership class's interests – indeed we have a history of successfully representing dealerships' interests. What we highlight here is that other potential applicants for leadership are hamstrung by what we view as disabling conflicts in terms of their ability to represent the dealership class in any capacity.

After many cases had been filed for dealerships and the JPML had centralized the litigation in this district, the Kellogg firm, which represents Authenticom and vendors, and with which we had been cooperating, suddenly filed on February 2, 2018, the *Bob Baker Volkswagen* case with the Labaton firm as co-counsel and then announced that Kellogg and Labaton should be co-leads for the dealership class.

Recognizing this would be clearly improper now as counsel for Authenticom told the Court that they seek appointment of Kellogg as "lead counsel for the MDL." *See* Ex. 2 at 42. Under this proposal, Kellogg would be responsible for the overall operation of the litigation, including discovery, assignments and the like, or some material aspect thereof. We believe, as counsel for dealerships, that this proposal is unworkable and will lead to severe conflicts as the case progresses. Kellogg, as counsel to an integrator and vendors, who are competitors of the Defendants, is not aligned with the claims of the dealerships and which are not necessarily in line with the desires of the competitor and vendors. While we take no position as to how Kellogg wishes to manage the Individual Actions, and while we expect close coordination as to those matters that can be coordinated, having Kellogg or Labaton or any of the counsel aligned with Kellogg at the apex of any leadership structure greatly prejudices the dealership class.

First, Kellogg's individual clients – an integrator (Authenticom), and vendors (Motor Vehicle Software Corp. ("MVSC"), Cox Automotive, Inc. and its affiliates) – allege economic harm that is separate from or potentially at odds with that of the dealership class. Both in litigation and in the event of a settlement seeking resolution of all claims in this MDL, Kellogg's clients will be adverse to the dealership class, as "[a]ny improvement in the compensation of, for example, [the dealerships], would result in a commensurate decrease in the recovery available for [Authenticom's, Cox Automotive's] and [MVSC's] claims." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 252 (2d Cir. 2011) (vacating settlement). For example, in an instance

- 34 -

where class counsel also represented individual plaintiffs the court forced counsel to withdraw from representation of the individual plaintiffs because both were pursuing the same money and defendants. *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1978).

Second, Cox Automotive and any other vendors Kellogg will represent, are direct purchasers of data integration services, whereas the dealerships are indirect purchasers. To prove injury and damages, the dealerships will need to show that overpayments made by direct purchasers, such as MVSC and Cox Automotive, were "passed through" to the dealerships. Thus, Kellogg's responsibility to Cox Automotive and other vendor clients would be to maximize their recovery and argue that they sustained the entire overcharge, putting it in direct conflict with the Dealership Class's interests in maximizing evidence of the pass through of the overcharge to them. *See In re Microsoft Corp. Antitrust Litig.*, 218 F.R.D. 449, 452 (D. Md. 2003) (holding that counsel who sought to represent an end-user class and a class of the persons who sold to the end-users was "in a position of irreconcilable conflict" and inadequate to represent the interests of the classes).[21] As another court stated "[i]t would be difficult to award the whole sum to both classes of plaintiffs. Clearly, at some point the two theories of recovery will cause an active conflict of interests between the two classes of plaintiffs." *Moore v. Margiotta*, 581 F. Supp. 649, 652 (E.D.N.Y. 1984). Reflecting this inherent conflict, courts consistently appoint separate counsel for direct purchasers and indirect purchasers in antitrust litigation. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill.) (Durkin, J.), ECF Nos. 144 & 248; *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 1:09-cv-07666 (N.D. Ill.) (Gottschall, J.), ECF Nos. 193 & 332; *In re*

---

[21] Even though *Hanover Shoe Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481 (1968), states that defendants cannot argue that direct purchasers did not suffer any damages as a result of the overcharge being passed through, the need to maximize recovery for the vendors and the fact that, as one court recognized, in declaring a conflict in this type of situation, "under the Sherman Act there can be only one recovery for any overcharge" makes clear that Kellogg has a conflict in being lead counsel over the dealerships while also serving as counsel for the vendors directly above them in the chain of distribution.

*Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, No. 1:09-cv-03690 (N.D. Ill.) (Hibbler, J.), ECF Nos. 62 & 68.[22]

As this Court is aware, such a conflict was recently addressed by Judge Durkin in *In re Broiler Chicken Antitrust Litig.*  There, after appointing separate interim class counsel for direct purchasers and indirect purchasers, Judge Durkin determined that a subset of indirect purchasers – "end purchaser consumers" – were in conflict with the other indirect purchasers and "require[d] separate interim class counsel."  *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. Dec. 14, 2016), ECF No. 248 at 1.  Judge Durkin explained, "[t]he Court believes that interim class counsel for direct and indirect purchasers have a conflict of interest because of the tension that exists as to how much of any alleged price increase was passed on by the direct and indirect purchasers to the end-purchaser consumer plaintiffs."  *Id.* at 1-2.  Likewise here, there is clear tension as to how much of overpayments by direct purchasers (Kellogg's clients) were passed on to the dealership class (which Kellogg simultaneously seeks to represent).

Third, Kellogg's conflicts affect not only impact damages, they also impact the schedule. For example, Kellogg's co-counsel stated during the March 12, 2018 hearing that counsel for Authenticom was seeking to "move very quickly, even if that costs us some of the normal range of discovery."  Ex. 2 at 35.  While Kellogg and Authenticom may be willing to trade off a greater chance of success through fulsome discovery for a faster result, that is not a bargain the dealerships can accept.  Although they are suffering from increased costs, the dealerships are not facing imminent bankruptcy, as described by Authenticom, such that they are forced into Authenticom's

---

[22]     *See also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2011 U.S. Dist. LEXIS 122735, at *12-*13 (S.D.N.Y. Oct. 18, 2011) (noting that the framework of separate counsel "has been adopted specifically in the context of antitrust cases in which there are two distinct groups of plaintiffs, one of whom more 'directly' interacted with the defendants than the other") (citing cases).

Hobson's Choice. Rather, the dealerships, while intending to move very quickly under the leadership proposed here, can proceed at a pace that ensures the greatest chance of success.

Given the "divergent interests" among the Individual Plaintiffs and dealership class, each "must have separate counsel to represent its interests." Manual, §21.27.[23] With all due respect to the abilities and efforts of Kellogg and its attorneys, as counsel in the Individual Actions, Kellogg cannot simultaneously control or be actively involved in any aspect of the Dealership Class Actions.

### 2. The Timing of the Authenticom Lawsuit Does Not Cure the Conflicts of Interest

While Kellogg has correctly noted that it filed the *Authenticom* individual action prior to any Dealership Class Actions being filed, this fact is of little significance. And no matter the timing, the claims of the Individual Plaintiffs, as competitors and direct purchasers of data integration services, are different from the claims of dealerships as direct purchasers of DMS and indirect purchasers of data integration services. *See* above. Moreover, as discussed during the March 12, 2018 hearing, there was no discovery taken prior to the injunction hearing, most of the proceedings have involved briefing and appeals, and while approximately 300,000 documents have been produced, those documents are primarily reproductions of documents produced to the government and there have been no depositions or exchange of experts. Ex. 2 at 33-34. Our group, if appointed, can quickly review and incorporate these documents into our prosecution of the case.

Moreover, in opposing transfer to this Court, Kellogg and Authenticom presented many of the same arguments they present to this Court in favor of appointing Kellogg to a leadership

---

[23] Kellogg has previously emphasized the divergent nature of its clients' cases. In briefs opposing consolidation with the dealership cases and/or transfer to this District, Kellogg argued that MVSC's claims involve "a ***different*** antitrust conspiracy based on ***different*** facts than any of the other pending cases," *In re Dealer Mgmt. Sys. Antitrust Litig.*, MDL No. 2817 (J.P.M.L. Nov. 28, 2017), ECF No. 33 at 1, and that Cox Automotive's claims "are unique to Cox Automotive's relationship with CDK, and would thus cause a substantial divergence in the scope of necessary discovery and pretrial motion practice from the other related cases, *Dealer Mgmt. Sys.*, MDL No. 2817 (J.P.M.L. Dec. 20, 2017), ECF No. 42 at 5.

position: *Authenticom* was filed before the Dealership Class Actions, *Authenticom* had commenced discovery, and Authenticom needs a protracted ramp up to trial. *See Dealer Mgmt. Sys.*, MDL No. 2817 (J.P.M.L. Nov. 28, 2017), ECF No. 33. The Panel soundly rejected those arguments, stating, "[a]lthough Authenticom is somewhat more advanced than the other actions, significant pretrial proceedings, including fact depositions and expert discovery, remain to be conducted." *Dealer Mgmt. Sys. Antitrust Litig.*, MDL No. 2817 (J.P.M.L. Feb. 1, 2018), ECF No. 63. As recognized by the Panel in ordering consolidation and transfer, the interests of Authenticom cannot be placed above the interests of all other parties in this MDL. For purposes of appointing Interim Co-Lead Class Counsel, we respectfully believe that the interests of Authenticom do not dictate that the dealership class be controlled or influenced by counsel with anything less than the dealerships' – and only the dealerships' – best interests in mind.

### 3. The Dealership Firms Aligned with Kellogg Are Also Conflicted

There are several firms that are seeking a leadership role in the Dealership Class Actions that have aligned with Kellogg and are likewise tainted by the conflicts and are not "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). For example, Labaton Sucharow LLP filed a putative class action on behalf of the dealership class with Kellogg as co-counsel despite Kellogg's clear conflicts. *See* ECF No. 36, Ex. A. Kellogg's proposed liaison counsel, Wisconsin-based Godfrey & Kahn S.C., shares many of the same clients and suffers the same conflicts as Kellogg. *See* ECF No. 36 at 17. Those firms suffer the same appearance of conflict as they seek to work with Kellogg in representing dealers while Kellogg is saddled with conflicts.

Moreover, the remaining firms supporting Kellogg's role as overall lead of the MDL, or as coordinating MDL counsel in charge of discovery, that have already supported Authenticom's schedule, are similarly tainted by the appearance of a conflict. As reflected by the competing

schedules in the status report, additional dealer counsel associated with Kellogg and its proposed leadership structure joined in Authenticom's bid to trade complete, necessary discovery for the Dealerships for an early trial for Authenticom. *See id.* at 11.

It is notable that a number of these same counsel previously took the position that Kellogg had an irreconcilable conflict in representing dealerships, including because of differences in Authenticom's and dealers' needs with respect to the case schedule. However, these attorneys changed their positions shortly before submission of the organization and management plan and became aligned with Kellogg.

### 4. The Proposed Leadership Structure Herein Will Devote Superior Resources to the Litigation

Some of the competing firms have a Chicago presence, others do not. Some are very small firms that will be burdened by devoting substantial time to a single MDL. Some of the firms have antitrust experience, while others do not advertise the practice area on their websites or only have one or a few lawyers with antitrust experience as they primarily handle consumer class actions. While we certainly hold several of the counsel in high regard, the fact is that none of them, individually or collectively, can bring the decades of experience in antitrust, the track record of results, the number of highly qualified attorneys, the Chicago and trial experience, and the financial resources to bear on this case as the proposed leadership structure herein. Thus, they should not be appointed as Lead and/or Liaison Counsel given the particular circumstances of this case.

While the firms in this joint application have worked with some or all of the other law firms seeking appointment and believe that they can do so cooperatively, it is not practicable to add further firms to the proposed leadership structure herein. The leadership structure proposed is not lacking in expertise, resources, or a Chicago presence and is designed to bring maximum resources while still operating efficiently.

1398588_1

## IV.    CONCLUSION

Plaintiffs Baystate Ford Inc., Hartley Buick GMC Truck. Inc., Cox Motors N.C., Inc. d/b/a Cox Toyota, Northtown Automotive Companies Inc., F.G. Downing Development Inc. and John O'Neil Johnson Toyota, LLC respectfully request that the Court adopt our proposed structure here and appoint Robbins Geller (Chair), Cuneo Gilbert and Kaplan Fox as Co-Lead Class Counsel, with the Miller Law and Clifford Law as Executive Committee members, and Clifford Law as Liaison Counsel.

DATED:  March 26, 2018                     Respectfully submitted,

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           JAMES E. BARZ (IL Bar # 6255605)
                                           FRANK RICHTER (IL Bar # 6310011)


                                                  s/ James E. Barz
                                           JAMES E. BARZ

                                           200 South Wacker Drive, 31st Floor
                                           Chicago, IL  60606
                                           Telephone:  312/674-4674
                                           312/674-4676 (fax)

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           DAVID W. MITCHELL
                                           ALEXANDRA S. BERNAY
                                           CARMEN A. MEDICI
                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101-8498
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)

                                           ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                           SAMUEL H. RUDMAN
                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)

- 40 -

CUNEO GILBERT & LaDUCA, LLP
JONATHAN W. CUNEO
VICTORIA ROMANENKO
JENNIFER KELLY
YIFEI LI


s/ Victoria Romanenko
VICTORIA ROMANENKO

4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20016
Telephone: 202/789-3960
jonc@cuneolaw.com
vicky@cuneolaw.com
jkelly@cuneolaw.com
evelyn@cuneolaw.com

Proposed Interim Co-Lead Class Counsel

KAPLAN FOX & KILSHEIMER LLP
ROBERT N. KAPLAN
GREGORY K. ARENSON
JEFFREY P. CAMPISI
ELANA KATCHER
AARON SCHWARTZ


s/ Robert N. Kaplan
ROBERT N. KAPLAN

850 Third Avenue; 14th Floor
New York, NY 10022
Telephone: 212/687-1980
212/687-7714 (fax)
rkaplan@kaplanfox.com
garenson@kaplanfox.com
jcampisi@kaplanfox.com
ekatcher@kaplanfox.com
aschwartz@kaplanfox.com

- 41 -

KAPLAN FOX & KILSHEIMER LLP
GARY L. SPECKS
423 Sumac Road
Highland Park, Illinois 60035
Telephone: 847/831-1585
847/831-1580 (fax)
gspecks@kaplanfox.com

Proposed Interim Co-Lead Class Counsel

DATED:  March 26, 2018        MILLER LAW LLC
MARVIN A. MILLER
ANDREW SZOT
MATTHEW E. VAN TINE

_____
            s/ Marvin A. Miller
MARVIN A. MILLER

115 S LaSalle Street, Suite 2910
Chicago, Illinois 60603
Telephone: 312/332-3400
312/676-2676 (fax)
mmiller@millerlawllc.com
aszot@millerlawllc.com
mvantine@millerlawllc.com

Proposed Executive Committee

DATED:  March 26, 2018        CLIFFORD LAW OFFICES, P.C.
ROBERT A. CLIFFORD
SHANNON M. MCNULTY

_____
            s/ Robert A. Clifford
ROBERT A. CLIFFORD

120 N. LaSalle Street, Suite 3100
Chicago, IL 60602
Telephone:  312/899-9090
312/251-1160 (fax)
rac@cliffordlaw.com
smm@cliffordlaw.com

Proposed Executive Committee and Liaison
Counsel

- 42 -

In accordance with the United States District Court for the Northern District of Illinois, General Order 16-0020 §IX(C)(2), all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

s/ James E. Barz
_____
JAMES E. BARZ

1398588_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 26, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 26, 2018.

s/ James E. Barz
JAMES E. BARZ

ROBBINS GELLER RUDMAN
   & DOWD LLP
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
E-mail:  jbarz@rgrdlaw.com

## Mailing Information for a Case 1:18-cv-00864 In Re: Dealer Management Systems Antitrust Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **George Carlos Aguilar**
  gaguilar@robbinsarroyo.com,rsalazar@robbinsarroyo.com,notice@robbinsarroyo.com

- **Gregory Asciolla**
  gasciolla@labaton.com,8428016420@filings.docketbird.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com

- **TYLER BAKER**
  tbaker@sheppardmullin.com

- **JOHN W BARRETT**
  dbarrett@barrettlawgroup.com

- **Jesse Jonas Bair**
  jbair@perkinscoie.com

- **Dylan I. Ballard**
  dballard@sheppardmullin.com,jcampos@sheppardmullin.com,rbreese@sheppardmullin.com

- **Charles F. Barrett**
  cbarrett@nealharwell.com,dgarrison@nealharwell.com

- **James E Barz**
  jbarz@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Leonard A Bellavia**
  lbellavia@dealerlaw.com

- **Alexandra S. Bernay**
  xanb@rgrdlaw.com,e_file_sd@rgrdlaw.com,ckopko@rgrdlaw.com

- **Justin Nicholas Boley**
  jnb@wexlerwallace.com,ecf@wexlerwallace.com

- **Kathleen Ellen Boychuck**
  kboychuck@millerlawllc.com

- **Joshua D. Branson**
  jbranson@kellogghansen.com,aoak@kellogghansen.com

- **Leo Caseria**
  lcaseria@sheppardmullin.com,rjauregui@sheppardmullin.com

- **James E. Cecchi**
  jcecchi@carellabyrne.com

- **Robert A. Clifford**
  rac@cliffordlaw.com,jmreasor@cliffordlaw.com,jg@cliffordlaw.com,sp@cliffordlaw.com,docket@cliffordlaw.com

- **Michael P. A. Cohen**
  mcohen@sheppardmullin.com

- **Jonathan W. Cuneo**
  jonc@cuneolaw.com

- **Charles Grant Curtis , Jr**
  ccurtis@perkinscoie.com

- **Michael Stephen Dampier**
  stevedampier@dampierlaw.com

- **Daniel V. Dorris**
  ddorris@kellogghansen.com

- **Thomas Arthur Doyle**
  tad@wexlerwallace.com,tadoyle@thomasadoyle.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,ajewell@millerlawllc.com,drobinson@millerlawllc.com,JRamirez@millerlawllc.com

- **Michael Jerry Freed**
  mfreed@fklmlaw.com,mkhamoo@fklmlaw.com

- **Daniel Jeffrey Friedman**
  daniel@gabrielsalomons.com

- **Karin E. Garvey**
  kgarvey@labaton.com,kgutierrez@labaton.com,3710423420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Jennifer L. Gregor**
  jgregor@gklaw.com,apeterson@gklaw.com,jschlumpf@gklaw.com

- **Archibald (Archie) Irwin Grubb , II**
  archie.grubb@beasleyallen.com

- **Daniel Guarnera**
  dguarnera@kellogghansen.com

- **Aundrea Kristine Gulley**
  agulley@gibbsbruns.com,kstehling@gibbsbruns.com

- **Joshua Hafenbrack**
  jhafenbrack@kellogghansen.com

- **Mark W. Hancock**
  mhancock@gklaw.com,mfuller@gklaw.com,ntalbott@gklaw.com,lviola@gklaw.com

- **Joseph S Harper**
  JHarper@foley.com

- **Kendall W Harrison**
  kharrison@gklaw.com

- **Daniel C Hedlund**
  dhedlund@gustafsongluek.com,dgoodwin@gustafsongluek.com

- **Derek Tam Ho**
  dho@kellogghansen.com,caitlan--cook-1415@ecf.pacerpro.com

- **Brian M. Hogan**
  bhogan@fklmlaw.com

- **Samuel Issacharoff**
  issacharoff@exchange.law.nyu.edu

- **Robert N. Kaplan**
  rkaplan@kaplanfox.com

- **Michael Thomas Layden**
  mlayden@rjpltd.com,cbohar@rjpltd.com,tfitch@rjpltd.com,lstrzempek@rjpltd.com,jsargent@rjpltd.com,jsutton@rjpltd.com

- **Brandon M. Lewis**
  BLewis@perkinscoie.com,LBendt@perkinscoie.com,docketmadison@perkinscoie.com

- **Michelle J. Looby**
  mlooby@gustafsongluek.com

- **MICHAEL MARTINEZ**
  michael.martinez@mayerbrown.com

- **Ross M. MacDonald**
  rmacdonald@gibbsbruns.com

- **Ralph Edward Massey , Jr**
  em@claymassey.com

- **Christopher J McDonald**
  cmcdonald@labaton.com,kgutierrez@labaton.com,4082127420@filings.docketbird.com,electroniccasefiling@labaton.com

- **David Malcolm McMullan , Jr**
  dmcmullan@barrettlawgroup.com

- **Shannon Marie McNulty**
  smm@cliffordlaw.com,jmreasor@cliffordlaw.com,smarquez@cliffordlaw.com

- **James Landon Mcginnis**
  jmcginnis@sheppardmullin.com

- **Wilson Daniel Miles , III**
  dee.miles@beasleyallen.com

- **Douglas A Millen**
  doug@fklmlaw.com

- **Britt Marie Miller**
  courtnotification@mayerbrown.com,bmiller@mayerbrown.com

- **Kevin J. Miller**
  kmiller@kellogghansen.com,dmcgowan@kellogghansen.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,ajewell@millerlawllc.com,LFanning@millerlawllc.com,drobinson@millerlawlllc.com,JRamirez@millerlawllc.com

- **David W. Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Brian Morrison**
  bmorrison@labaton.com,kgutierrez@labaton.com,3626807420@filings.docketbird.com,electroniccasefiling@labaton.com

- **John Nadolenco**
  jnadolenco@mayerbrown.com

- **Amar Shrinivas Naik**
  anaik@sheppardmullin.com

- **Michael N. Nemelka**
  mnemelka@kellogghansen.com,ecarbone@kellogghansen.com,aoak@kellogghansen.com

- **Aaron Martin Panner**
  apanner@kellogghansen.com,hwallace@kellogghansen.com

- **Justin David Patrick**
  jpatrick@gibbsbruns.com

- **Kathy D. Patrick**
  kpatrick@gibbsbruns.com

- **Richard J. Prendergast**
  rprendergast@rjpltd.com,cbohar@rjpltd.com,tfitch@rjpltd.com,lstrzempek@rjpltd.com,jsargent@rjpltd.com,jsutton@rjpltd.com

- **Matthew David Provance**
  mprovance@mayerbrown.com,courtnotification@mayerbrown.com

- **William N. Reed**
  wreed@bakerdonelson.com

- **Allison W Reimann**
  areimann@gklaw.com

- **Frank Anthony Richter**
  frichter@rgrdlaw.com

- **Mike L. Roberts**
  mikeroberts@robertslawfirm.us,aprilburton@robertslawfirm.us,angeliciaisclaw@robertslawfirm.us

- **Victoria Romanenko**
  vicky@cuneolaw.com

- **Brian T. Ross**
  bross@gibbsbruns.com

- **Mark W. Ryan**
  mryan@mayerbrown.com,wdc.docket@mayerbrown.com

- **Gary K Salomons**
  gary@gabrielsalomons.com

- **David L. Schwarz**
  dschwarz@kellogghansen.com

- **Jeffrey Allan Simmons**
  jsimmons@foley.com

- **John S. Skilton**
  jskilton@perkinscoie.com,tanders@perkinscoie.com

- **Gary L. Specks**
  gspecks@kaplanfox.com

- **Sterling Starns**
  sstarns@barrettlawgroup.com,ntmaddux@barrettlawgroup.com

- **Kathleen A. Stetsko**
  kstetsko@perkinscoie.com,docketchi@perkinscoie.com,jgreenfield@perkinscoie.com

- **Andrew Szot**
  aszot@millerlawllc.com,ajewell@millerlawllc.com,jramirez@millerlawllc.com,drobinson@millerlawllc.com

- **Mark H Troutman**
  mtroutman@isaacwiles.com,llabair@isaacwiles.com,ab@classlawgroup.com,mls@classlawgroup.com,ehg@classlawgroup.com,dsh@classlawgroup.com

- **Bethany R. Turke**
  brt@wexlerwallace.com

- **Michelle M. Umberger**
  mumberger@perkinscoie.com

- **Matthew E Van Tine**
  mvantine@millerlawllc.com,mvt@vantine.us

- **Daniel John Walker**
  dwalker@bm.net

- **Peggy J Wedgworth**
  pwedgworth@milberg.com,cbomzer@milberg.com,arado@milberg.com,jjoseph@milberg.com,cslidders@milberg.com,emckenna@milberg.com,MAOffice@milberg.

- **Kenneth A. Wexler**
  kaw@wexlerwallace.com,ecf@wexlerwallace.com

- **Brice A. Wilkinson**
  bwilkinson@gibbsbruns.com

- **Robert J. Wozniak**
  rwozniak@fklmlaw.com,mkhamoo@fklmlaw.com

- **Joanna Tianyang Zhang**
  jzhang@kellogghansen.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Authenticom Inc.
,

Arthur        N. Bailey
Arthur N. Bailey & Associates
111 West 2nd Street
Suite 4500
Jamestown, NY 14701

Motor Vehicle Software Corporation
,

Shawn         M Raiter
Larson & King, LLP
30 East 7th Street
Suite 2800
St. Paul, MN 55101
```