**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE: DEALER MANAGEMENT                    MDL No. 2817
SYSTEMS ANTITRUST LITIGATION          Case No. 18 C 864

This Document Relates to All Cases

**MOTION FOR APPOINTMENT OF DEREK T. HO OF KELLOGG HANSEN AS MDL**
**LEAD COUNSEL, JENNIFER GREGOR OF GODFREY & KAHN AND/OR RICHARD**
**PRENDERGAST AS MDL LIAISON COUNSEL, AND PROFESSOR SAMUEL**
**ISSACHAROFF AS MDL COORDINATING COUNSEL**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

LEADERSHIP PROPOSAL.......................................................................................................... 1

INTRODUCTION ......................................................................................................................... 3

PROCEDURAL BACKGROUND................................................................................................. 6

ARGUMENT ............................................................................................................................... 12

    I.   KELLOGG HANSEN IS UNIQUELY QUALIFIED TO LEAD THIS MDL ............... 12

        A.  Kellogg Hansen Has Unparalleled Experience Successfully Litigating
Antitrust and Other Complex Cases ...............................................................................12

        B.  Kellogg Hansen's Work Was the Catalyst for All of the Actions In this MDL ..........14

    II.  APPOINTING A SINGLE MDL LEAD IS THE MOST APPROPRIATE
STRUCTURE FOR THIS MDL....................................................................................... 18

        A.  A Single MDL Lead Counsel For the Common Liability Issues Is The Most
Efficient Way To Achieve Both An Expedited Authenticom Trial and
Coordinated Pretrial Proceedings ..................................................................................18

        B.  Kellogg Hansen Has No Conflict In Pursuing the Common Liability Issues.............20

        C.  If the Court Appoints a Second MDL Lead Counsel, It Should Appoint
Christopher McDonald of Labaton Sucharow .............................................................24

    III. THE COURT SHOULD APPOINT JENNIFER GREGOR AND/OR RICHARD
PRENDERGAST AS MDL LIAISON COUNSEL, AND PROFESSOR
SAMUEL ISSACHAROFF AS MDL COORDINATING COUNSEL........................... 25

CONCLUSION............................................................................................................................ 25

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013)...................................................................................................3

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ...............................24

*Andrews Farms v. Calcot, LTD.*,
2010 WL 4010146 (E.D. Cal. Oct. 13, 2010) ....................................................22

*Authenticom, Inc. v. CDK Global, LLC*,
874 F.3d 1019 (7th Cir. 2017) ....................................................4, 5, 7, 9, 10, 18

2017 WL 3017048 (W.D. Wis. July 14, 2017),
*vacated and remand,* 874 F.3d 1019 (7th Cir. 2017)........................................4, 6, 7, 9, 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................3, 12

*Bell v. Disner*, 2018 WL 296035 (W.D.N.C. Jan. 4, 2018) ........................................22

*California v. ARC Am. Corp.*, 490 U.S. 93 (1989) ....................................................23

*Cmty. Bank of N. Va. Mortg. Lending Practices Litig., In re*,
795 F.3d 380 (3d Cir. 2015)........................................................................22

*Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002),
*cert. denied*, 537 U.S. 1148 (2003) ...................................................................12

*Cendant Corp. Sec. Litig., In re*, 404 F.3d 173 (3d Cir. 2005) ....................................18

*Facebook, Inc., IPO Sec. & Derivative Litig., In re*, 288 F.R.D. 26 (S.D.N.Y. 2012) .................15

*Goldwasser v. Ameritech Corp.*, 222 F.3d 390 (7th Cir. 2000)....................................23

*HSBC Bank USA N.A. Debit Card Overdraft Fee Litig., In re*,
2013 WL 3816597 (E.D.N.Y. July 22, 2013) ....................................................15

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) ........................................................23

*Insulin Pricing Litig., In re*, 2017 WL 4122437 (D.N.J. Sept. 18, 2017) ......................15

*Interest Rate Swaps Antitrust Litig., In re*,
2016 WL 4131846 (S.D.N.Y. Aug. 3, 2016) ............................................15, 16

*Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112 (S.D.N.Y. 2010) ................................................15

*MF Glob. Holdings, Ltd., In re*, 464 B.R. 619 (Bankr. S.D.N.Y. 2012) ........................................18

*Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D. Ill. 2008)................................................22

*Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505 (D. N.D. 2005).............................................22-23

*Michelle v. Arctic Zero, Inc.*, 2013 WL 791145 (S.D. Cal. Mar. 1, 2013) .....................................15

*Mun. Derivatives Antitrust Litig., In re*, 252 F.R.D. 184 (S.D.N.Y. 2008) ............................14, 16

*Nat'l Football League Players Concussion Injury Litig., In re*,
    821 F.3d 410 (3d Cir. 2016)....................................................................................................23

*Netflix Antitrust Litig., In re*, 506 F. Supp. 2d 308 (N.D. Cal. 2007) ..........................................23

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438 (2009) ........................................3, 12

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,
    In re*, 827 F.3d 223 (2d Cir. 2016)........................................................................................24

*Pharmacy Benefit Managers Antitrust Litig., In re*, 582 F.3d 432 (3d Cir. 2009) ........................18

*Terazosin Hydrochloride Antitrust Litig., In re*, 220 F.R.D. 672 (S.D. Fla. 2004) ......................12

*Urethane Antitrust Litig., In re*, 768 F.3d 1245 (10th Cir. 2014) .................................................12

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004).............................................................................................................3, 12

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993)............................................23

## STATUTES AND RULES

28 U.S.C. § 1407.............................................................................................................................18

Fed. R. Civ. P. 23 ......................................................................................................................1, 20

## OTHER MATERIALS

Complaint, *In the Matter of CDK Global, Inc., et al.*, Federal Trade Commission,
    Docket No. 9382 (March 19, 2018), www.ftc.gov/system/files/documents
    /cases/docket_no_9382_cdk_automate_part_3_complaint_redacted_public_
    version.pdf ..............................................................................................................................17

Pallavi Guniganti, *Litigators of the Week: Michael Nemelka, Aaron Panner and
    Derek Ho*, Global Competition Review (July 20, 2017) .........................................................4

David Lat, *Supreme Court Clerk Hiring Watch*, Above the Law, September 9, 2014 at 5:52 PM, https://abovethelaw.com/2014/09/supreme-court-clerk-hiring-watch-into-2016-we-go-plus-scotus-clerk-bonus-news...................................................................3

Manual for Complex Litigation

    Annotated Manual for Complex Litig. (Fourth) (2017)......................................................19

    Manual for Complex Litig. (Fourth) (2004) ............................................................2, 21

Memorandum and Opinion*, In re Urethane Antitrust Litig.*, MDL 1616, No. 04-cv-1616, (D. Kan. July 29, 2016), Dkt. 3272 ........................................................12

Minute Entry, *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL 2147, No. 10-cv-02278, (N.D. Ill. June 23, 2010), Dkt. 47......................................................5, 15

Mot. of Defs. for Transfer and Consolidation of Related Actions Pursuant to 28 U.S.C. § 1407 (J.P.M.L. Nov. 7, 2017), Dkt. 1-1 ...........................................................................17

1 *Newberg on Class Actions* (5th ed.)................................................................................22

*Steel Antitrust Litig., In re*, 08- cv-5214 (N.D. Ill.) .........................................................13

Order Concerning Appointment of Counsel, *In re Syngenta AG MIR162 Corn Litig.*, MDL 2591, No. 14-md-2591 (D. Kan. Jan. 22, 2015), Dkt. 67 ..................................14, 15

Order, *Dial Corp. v. News Corp.*, No. 13-cv-06802 (S.D.N.Y. Nov. 20, 2017), Dkt. 617 ...........13

*President Obama speaks about Stephen Cottrell, President and CEO of Authenticom* (published on July 3, 2015), www.youtube.com/watch?v=Bfzu9kd5HU8 .......................11

Transcript of Proceedings, *In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637 (N.D. Ill. Dec. 9, 2016), Dkt. 245.............................................................21

**LEADERSHIP PROPOSAL**

Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen" or "the firm") respectfully requests that the Court appoint Derek T. Ho of Kellogg Hansen as MDL lead counsel for purposes of pursuing discovery and other pretrial matters with respect to the liability claims in the *Authenticom* case, which are common to all cases in this MDL.  Mr. Ho and his partners Michael N. Nemelka and Aaron M. Panner have extensive antitrust litigation experience and have led the *Authenticom* litigation.  Kellogg Hansen thus is uniquely suited to pursue coordinated fact discovery (written, documentary, and oral) and other pretrial matters in support of the common liability claims in this MDL (group boycott, market division, exclusive dealing, tying, and monopolization) on an expedited basis, consistent with the Seventh Circuit's directive.

Kellogg Hansen also proposes that interim class counsel be separately appointed under Federal Rule of Civil Procedure 23 to represent the class with respect to class-specific matters (including class certification, class damages, and settlement) and to work with Kellogg Hansen on coordinated fact discovery.  Kellogg Hansen supports Labaton Sucharow LLP (Christopher McDonald) and Roberts Law Firm, P.A. (Mike Roberts), as interim class counsel because they share Kellogg Hansen's fundamental vision for the case – namely, to pursue expedited discovery on the common liability issues, for the benefit of not only Authenticom but all Plaintiffs.

As far as we understand, no dealer counsel disputes that Kellogg Hansen should be MDL lead counsel.  At the March 12 status conference, counsel for certain dealer plaintiffs (James Barz and Peggy Wedgworth) proposed the appointment of a second co-lead counsel to represent the interests of the putative dealer class actions.  *See* Hearing Tr. at 46:11-48:22 (Dkt. 65) (Mr. Barz and Ms. Wedgworth proposing "two lead counsel" and agreeing there is "no dispute" that Kellogg Hansen should be one of those two).  Kellogg Hansen believes a co-lead structure is unnecessary because all Plaintiffs share the same interest in the expeditious pursuit of the

common liability issues. Kellogg Hansen, which also represents a dealer plaintiff, is ready today to litigate those common issues. By contrast, appointing a second law firm as co-lead will create more cost and delay for the dealer plaintiffs, by requiring another firm (or multiple firms) to get up to speed on issues that Kellogg Hansen has already been litigating for more than a year. If the Court is inclined to appoint co-lead counsel, however, Kellogg Hansen supports Mr. McDonald of Labaton Sucharow, again because of its shared vision for the conduct of this MDL.

Under either structure, Kellogg Hansen proposes that the Court appoint Jennifer Gregor of the Wisconsin firm Godfrey & Kahn S.C., and/or Richard Prendergast of Richard J. Prendergast, Ltd., as liaison counsel. Ms. Gregor is intimately familiar with this litigation, having played a prominent role in the *Authenticom* preliminary injunction hearing, and she would be ideally suited to coordinate with interim class counsel to aid them in getting up to speed on the case. *See* Manual for Complex Litig. (Fourth) § 10.221. Mr. Prendergast is located in Chicago and would also be well suited to the role of liaison counsel, given his extensive experience litigating in this Court.

Kellogg Hansen also proposes that Professor Samuel Issacharoff of NYU Law School, one of the nation's foremost academic experts on MDL practice, be appointed as MDL coordinating counsel to assist all parties in pursuing a coordinated approach to the various cases in this MDL. As it has in other MDLs where it has had a leadership role, Kellogg Hansen is committed to working amicably with other counsel, whoever is appointed, to ensure effective and coordinated prosecution of all cases in the MDL.

**INTRODUCTION**

Based in Washington, D.C., Kellogg Hansen is one of the nation's premiere litigation boutiques.[1]  Dubbed by one commentator as "the most impressive firm that you've never heard of,"[2] one-third of its 33 partners, including Mr. Ho and Mr. Panner, clerked for Justices of the U.S. Supreme Court.  The firm's partners have been lead counsel in more than 100 federal and state trials and appeals and have argued 71 cases before the Supreme Court of the United States.  Notable alumni include prominent members of the federal judiciary (including Associate Justice Neil M. Gorsuch); leading academics (including Dean Eduardo Peñalver of Cornell Law School); and high-ranking government officials in both Republican and Democratic administrations (including Courtney S. Elwood, currently General Counsel of the CIA, and Howard Shelanski, former head of the Office of Information and Regulatory Affairs and lead economist at the Federal Trade Commission).

In the field of antitrust, Kellogg Hansen is arguably *the* premiere antitrust litigation firm in the country.  It is no exaggeration that the firm's cases have reshaped the substantive and procedural law of antitrust over the last two decades.  *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438 (2009); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013).

The cases in this MDL would not exist but for more than a year of work by Kellogg Hansen in the *Authenticom*, *MVSC*, and *Cox Automotive* cases.  Starting in 2016, the firm

---

[1] Vault ranks Kellogg Hansen #2 among the nation's litigation boutiques and #88 in the Vault 100.  *See* http://www.vault.com/company-profiles/law/kellogg,-huber,-hansen,-todd,-evans-figel,-pllc/company-overview.

[2] *See* David Lat, *Supreme Court Clerk Hiring Watch*, Above the Law, September 9, 2014 at 5:52 PM, https://abovethelaw.com/2014/09/supreme-court-clerk-hiring-watch-into-2016-we-go-plus-scotus-clerk-bonus-news/.

conducted an extensive investigation – without the aid of any governmental agency – into the Defendants' collusive efforts to deny access to dealer data on their dealer management systems ("DMS"), and to exclude independent data integrators from the market. Based on that investigation – which included working closely with the presidents of state dealer associations and leading dealerships – Kellogg Hansen developed the antitrust claims at the heart of this MDL, and filed complaints on behalf of MVSC (February 2017) and Authenticom (May 2017).

Kellogg Hansen then litigated those claims zealously for months before the first putative dealer class action was filed. In *Authenticom*, Kellogg Hansen successfully obtained a preliminary injunction after a two-and-a-half-day hearing featuring 15 live witnesses (including several dealers), seven experts, and thousands of pages of briefing, statements of facts, and exhibits. Chief Judge Peterson credited Authenticom's evidentiary showing in holding that Authenticom had established a likelihood of success on the merits. The prominent antitrust publication *Global Competition Review* named Messrs. Ho, Nemelka, and Panner "Litigators of the Week" for their victory.[3] On appeal, the Seventh Circuit did not disturb Chief Judge Peterson's findings regarding Authenticom's likelihood of success. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048 (W.D. Wis. July 14, 2017) ("*Authenticom I*"), *vacated and remanded*, 874 F.3d 1019 (7th Cir. 2017) ("*Authenticom II*") (calling Authenticom's case "potentially sound"). In *MVSC*, Kellogg Hansen successfully defeated Defendants' motion to dismiss the Section 1 group-boycott and market-division claims at the heart of this MDL. And in *Cox Automotive*, the nation's leading vendor of automotive software applications – from Kelley Blue Book to AutoTrader.com – entrusted Kellogg Hansen with litigating its claims.

---

[3] *See* Pallavi Guniganti, *Litigators of the Week: Michael Nemelka, Aaron Panner and Derek Ho*, Global Competition Review (July 20, 2017).

All told, Kellogg Hansen has devoted 16,350 attorney hours (representing $8 million in attorneys' fees) and incurred $211,573 in unreimbursed out-of-pocket expenses investigating and litigating the issues that spawned this MDL. No other firm in this MDL can claim to have done even a fraction of the work of Kellogg Hansen. Indeed, other plaintiffs' firms have copied the factual allegations and legal theories developed by Kellogg Hansen, often word-for-word.

We are aware of no case in which a firm that generated the legal and factual theories at the heart of an MDL was passed over for the role of lead counsel. *Accord* Minute Entry at 2-3, *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL 2147, No. 10-cv-02278 (N.D. Ill. June 23, 2010) (St. Eve, J.), Dkt. 47 (criteria for MDL counsel include which firm has (1) "already dedicated a significant amount of time and resources to this case"; (2) "have experience litigating similar complex cases"; (3) "have done extensive research – in this and previous cases – into the applicable law"; and (4) "have adequate resources"). To do so here would not only be unfair, but would undermine the incentive for firms to invest resources in investigating and litigating potentially meritorious cases.

There is another compelling reason to appoint Kellogg Hansen as MDL lead counsel: the Seventh Circuit has directed that Authenticom's trial be held as soon as practicable, because Authenticom "runs a high risk of going out of business while the litigation drags on." *Authenticom II*, 874 F.3d at 1026-27. Kellogg Hansen is the only firm with the knowledge to implement that directive. The firm has already reviewed the majority of more than 300,000 documents produced thus far; identified hot documents that support liability; identified numerous deponents; served eight subpoenas on third parties; and retained top-flight liability experts.

Certain dealers' counsel suggested at the March 12 status conference that a co-lead counsel structure is necessary because the interests of Kellogg Hansen's individual clients –

MVSC, Authenticom, and Cox Automotive – conflict with those of the putative dealer classes. Kellogg Hansen, however, is also counsel to the Bob Baker Volkswagen dealership in its class action, and there is no conflict of interest between Kellogg Hansen's individual and dealership clients. All participants in this industry – including vendors (like Cox Automotive and MVSC) and dealers – have the same interest in seeing Authenticom succeed in time to remain in business and achieve a favorable final judgment, which would resolve the core liability claims for every case. That unity of interest was exemplified when leading vendors and dealers traveled from across the country to testify in support of Authenticom at the preliminary injunction hearing. A sole lead MDL structure is also more efficient for the class, as it does not require a second set of dealers' law firms to duplicate work on (and possibly delay resolution of) common issues.

In any event, if the Court is concerned about the existence of a conflict, and inclined to appoint other dealership counsel as MDL co-lead counsel, Kellogg Hansen proposes that Mr. McDonald of Labaton Sucharow be appointed co-lead counsel. Labaton Sucharow shares Kellogg Hansen's commitment to moving forward with common discovery expeditiously, while other dealers' counsel propose a protracted schedule (with a fact discovery deadline in 2020) that may benefit counsel but will harm all Plaintiffs, including the dealership class.

## PROCEDURAL BACKGROUND[4]

1.      In the course of operating its business, a car dealership generates numerous pieces of data – such as sales, service, and customer information. *See Authenticom I*, 2017 WL 3017048, at *1. Dealers store that information on a database that is part of the dealership's dealer management system or "DMS." *See id.* at *1-2. The DMS is a software platform that runs the everyday operations of dealerships, from accounting to inventory to sales. *See id.*

---

[4] The factual background herein is based on the findings made by Chief Judge Peterson after the evidentiary hearing conducted by Kellogg Hansen and Godfrey & Kahn.

Defendants CDK and Reynolds are the dominant providers of DMS to the 18,000 dealerships that operate in the U.S., *see id.*, controlling over 75% of the market.

Although dealerships store that data on a DMS database, it is the dealership's data. *See id.* Because dealerships specialize in selling cars, not in extracting large volumes of data from a DMS, dealerships historically have relied on third-party "data integrator[s]." Those data integrators extract dealers' data from the DMS, put it in a standardized format, and deliver it to companies that create software programs that enhance dealerships' operations (known in the industry as "vendors"). *See id.* at *2.

Authenticom was the largest independent data integrator in the market as of 2015, and is the only independent data integrator remaining in the market today. *See id.* at *4. Authenticom has worked with approximately 15,000 out of the 18,000 dealers nationwide to obtain dealers' data from their DMSs. *See id.* at *2. Its DealerVault software has achieved widespread market success because it allows dealers to provide dealer data to vendors in a secure, transparent, and cost-effective way. *See id.*

The claim at the heart of this MDL is that CDK and Reynolds conspired in 2015 to exclude Authenticom and other independent data integrators from the market, in order to monopolize the market for themselves. Defendants' elimination of Authenticom allowed them to raise their prices dramatically. Whereas Authenticom charges $50 per dealer for its services, Reynolds now charges "a whopping $893 in the aftermath of its agreements with CDK." *Authenticom II*, 874 F.3d at 1023. Likewise, CDK dramatically raised its prices post-agreement and now charges "$735 per month for the identical service." *Id.* Dealers, in turn, suffer because "[a]pp vendors pass along these bloated fees to dealers, who are already paying large fees for their data management system." *Id.*

**2.** After undertaking an extensive investigation of the industry and the relevant facts, and without the benefit of any earlier-filed complaints or governmental investigation, Kellogg Hansen filed the first lawsuit in this MDL on behalf of MVSC on February 3, 2017. MVSC is a vendor of electronic vehicle registration and titling services – a market in which CDK's and Reynolds' jointly controlled subsidiary, Computerized Vehicle Registrations ("CVR"), is the nationwide leader. MVSC's original complaint alleges, among other things, that Defendants conspired to block MVSC's access to dealer data to prevent MVSC from competing with CVR. In May 2017, after extensive further investigation, MVSC amended its complaint to add allegations that CDK and Reynolds conspired to drive independent data integrators, including Authenticom, out of the market. *See* First Amended Compl., *MVSC* Dkt. 58.

On October 2, 2017, Judge Dale Fischer denied Defendants' motion to dismiss MVSC's conspiracy claims under Section 1 of the Sherman Act. *See* Memorandum Order, *MVSC* Dkt. 73. The Court held that MVSC had plausibly alleged two unlawful horizontal conspiracies between CDK and Reynolds: (1) a conspiracy to drive MVSC out of the market by denying it access to dealer data on their systems; and (2) a broader conspiracy by Defendants to exclude independent data integrators from the market. The Court granted Defendants' motions to dismiss MVSC's Section 2 monopolization claims, but with leave to amend.[5] *See id*.

**3.** On May 1, 2017, Kellogg Hansen filed suit on behalf of Authenticom in the Western District of Wisconsin. Authenticom's detailed 90-page Complaint alleges that CDK and Reynolds violated Section 1 of the Sherman Act by *inter alia* (1) entering into a horizontal conspiracy to drive independent integrators (including Authenticom) out of the market; and (2)

---

[5] After MVSC filed its Second Amended Complaint (*MVSC* Dkt. 76), Defendants again moved to dismiss the amended Section 2 claims; those motions were fully briefed and argued before the case was transferred to this Court, and are the pending motions before this Court.

entering into exclusive dealing agreements with dealers and vendors that require dealers and vendors to use only CDK's and Reynolds' own data integration services. *Authenticom* Dkt. 1.

Two weeks after filing the Complaint, Kellogg Hansen filed a motion for a preliminary injunction to forestall irreparable harm to Authenticom's business. The motion was supported not only by a 47-page legal brief, but also more than 70 exhibits; a 281-paragraph statement of facts; three expert reports; and five affidavits (four from third party vendors and dealers). *See Authenticom* Dkts. 51, 53-56, 58-66.

On June 26-28, 2017, Chief Judge Peterson conducted an evidentiary hearing on Authenticom's motion. Fifteen witnesses testified in person, including six experts, Authenticom CEO Steve Cottrell, and top-ranking executives from both CDK and Reynolds. Leading vendors and dealers also voluntarily traveled to Madison, Wisconsin, to testify on Authenticom's behalf about the competitive harms and the dramatic price increases Defendants have inflicted on the industry. Not a single dealer or vendor testified in support of Defendants.

The court granted Authenticom's motion for a preliminary injunction. Chief Judge Peterson found that "Authenticom [] adduced compelling evidence that it is on the brink of collapse" and faces a "very substantial risk of failure" before trial. *See Authenticom I*, 2017 WL 3017048, at *8, 10. The court also found that, on the merits of its antitrust claims, Authenticom met the requisite likelihood-of-success standard as to both its Section 1 horizontal conspiracy and exclusive dealing claims. *See id.* at *7-8.

On November 6, 2017, the Seventh Circuit vacated the preliminary injunction and remanded for further proceedings. *See Authenticom II*, 874 F.3d at 1026-27. The Seventh Circuit did not disturb Chief Judge Peterson's findings as to either irreparable harm or the merits of Authenticom's antitrust case. *Id.* at 1023-24. Rather, it held the preliminary injunction was

not adequately tailored to the alleged antitrust violation. Moreover, with Authenticom "hanging on by a thread," the Seventh Circuit expressed concern that a "potentially sound antitrust case" would "disappear before [the court's] eyes because the plaintiff runs a high risk of going out of business while the litigation drags on" and therefore "urge[d] the district court to do what it can to expedite its final judgment." *Id.* at 1021, 1023, 1026.

Consistent with the Seventh Circuit's direction – and Chief Judge Peterson's admonition that he "intend[ed] to keep this case on schedule for summary judgment and trial, so that the ultimate resolution is not delayed,"[6] – Authenticom and Defendants proceeded apace with expedited discovery toward a trial date of October 22, 2018. Before the MDL transfer order, Kellogg Hansen accomplished the following on behalf of Authenticom:

- Fully briefed Defendants' motions to dismiss.[7]

- Filed initial disclosures and successfully negotiated with Defendants a case schedule, trial date, protective order, and ESI protocol.

- Exchanged with Defendants hundreds of discovery requests and responses; engaged in a series of lengthy meet and confers to resolve the vast majority of issues in dispute; successfully negotiated, without the need for court intervention, hard-fought disputes over search terms and initial document custodians; and scheduled over a dozen depositions (before discovery was stayed).

- Retained multiple experts.

- Reviewed more than 300,000 documents, with a dedicated team of associates, staff attorneys, and contract attorneys (a review that is ongoing).

Since the Seventh Circuit's ruling, Authenticom's financial condition has continued to worsen. Authenticom has had to lay off more than 60% of its staff, and is now down to 35

---

[6] Order at 2, *Authenticom*, Dkt. 209.

[7] Chief Judge Peterson previously stated, in a procedural ruling, that despite Defendants' motions to dismiss, it "seems unlikely that the court would dismiss the core antitrust claims on a Rule 12 motion," given that Authenticom had already shown a sufficient likelihood of success on the merits to support a preliminary injunction. *Id.* at 1.

employees, compared to the 120-plus employees it had in 2015 when President Obama visited La Crosse and singled out Authenticom as "one of America's fastest growing private companies."[8]  The company also remains under threat of bank foreclosure on an $11 million loan; it is currently trying to renegotiate an extended forbearance period pending this litigation, but has been unsuccessful to date.

       **4.**      Starting in October 2017, other firms began filing putative dealer class actions across the country based on the allegations and evidence in *Authenticom*.  During that same period, clients across the industry have continued to entrust Kellogg Hansen to represent them.

       <u>First</u>, on December 11, 2017, Kellogg Hansen filed suit on behalf of Cox Automotive. *Cox Automotive, Inc. v. CDK Global, LLC*, No. 17-cv-00925 (W.D. Wis.).  Cox Automotive is by far the nation's largest automotive vendor and purchaser of data integration, with popular products such as AutoTrader.com, Dealer.com, and Kelley Blue Book.  Cox Automotive alone accounts for 40% of the volume of data integration transactions and alleges $200 million in damages, before automatic trebling.  *See* Cox Automotive Compl. ¶ 5, Dkt. 1.  <u>Second</u>, on February 2, 2018, the firm (with Richard J. Prendergast, Ltd. and Labaton Sucharow LLP as co-counsel) filed a putative class action on behalf of Bob Baker Volkswagen, a dealership group in California, the largest car market in the nation.  *Bob Baker Volkswagen v. CDK Global, LLC, et al.*, No. 18-cv-00909 (N.D. Ill.).  <u>Third</u>, as discussed at the March 12 status conference, Kellogg Hansen is about to file another lawsuit on behalf of another large vendor.

---

[8] To see President Obama's full remarks on Authenticom, see *President Obama speaks about Stephen Cottrell, President and CEO of Authenticom* (published on July 3, 2015), www.youtube.com/watch?v=Bfzu9kd5HU8.

## ARGUMENT

## I.    KELLOGG HANSEN IS UNIQUELY QUALIFIED TO LEAD THIS MDL

### A.    Kellogg Hansen Has Unparalleled Experience Successfully Litigating Antitrust and Other Complex Cases

**1.**    Kellogg Hansen's long track record of success in antitrust law over its 25-year history makes it exceptionally well-suited to serve as lead counsel in this MDL. *See In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 702 (S.D. Fla. 2004) (finding counsel's "experience in, and knowledge of, the applicable law in this field" the "most persuasive" factor when choosing lead counsel). As noted above (at 3), Kellogg Hansen has obtained precedent-setting victories in antitrust cases on behalf of both plaintiffs and defendants, including successfully litigating the oft-cited *Twombly* from inception all the way through the Supreme Court and arguing and winning *Trinko* and *Linkline*, two cases on which Defendants CDK and Reynolds have heavily relied. At the trial level, Kellogg Hansen was lead trial counsel in obtaining the largest and second largest antitrust jury verdicts ever affirmed on appeal. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) (affirming $1.2 billion price-fixing verdict); *Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (affirming $1.05 billion monopolization verdict), *cert. denied*, 537 U.S. 1148 (2003).

Kellogg Hansen's victories have not gone unrecognized. In the *Urethane* MDL, Judge Lungstrum stated that the Kellogg Hansen trial team "achieved an incredible result for the class, … and … won what is reported to be one of the largest verdicts of its kind in United States history. Counsel had to build this case on their own, without the help of a governmental investigation." Memorandum and Opinion at 15, *In re Urethane Antitrust Litig.*, MDL 1616, No. 04-cv-1616, (D. Kan. July 29, 2016), Dkt. 3273. Judge Lungstrum said that in his "almost 25 years of service on the bench, this Court has not experienced a more remarkable result." *Id.* at

10-11.  In *Dial Corp.*, Judge Pauley called the efforts of Kellogg Hansen as co-lead counsel, together with four other law firms, "a paradigm for smooth and efficient claims administration" and said he wished "all class action settlements could end on such a high note."  Order, *Dial Corp. v. News Corp.,* No. 13-cv-06802 (S.D.N.Y. Nov. 20, 2017), Dkt. 617.

To name but a few other of Kellogg Hansen's significant representations, the firm has successfully represented plaintiffs in complex antitrust cases spanning a wide range of industries.[9]  And today, Kellogg Hansen is involved in many of the leading antitrust cases across the country.  The firm currently represents: AT&T Inc. in the Department of Justice's challenge to the merger of AT&T Inc. and Time Warner Inc., *United States v. AT&T Inc.*, No. 17-cv-02511 (D.D.C.); American Express Co. in the recently-argued Supreme Court case *Ohio v. American Express Co.,* No. 16-1454; and Viamedia, Inc. in its challenge to Comcast's conduct in cable advertising, *Viamedia, Inc. v. Comcast Corp.*, No. 16-cv-05486 (N.D. Ill.), among others.

Kellogg Hansen's firm profile is attached as Appendix A.  A detailed summary of Kellogg Hansen's antitrust experience is attached as Appendix B.

**2.**      Kellogg Hansen's extraordinary results are the product of talented and committed lawyers with significant prior government service.  Virtually all of Kellogg Hansen's partners

---

[9] *See*, *e.g.*, *In re Copper Antitrust Litig.*, MDL 1303, No. 00-cv-1303 (W.D. Wis.) (Crabb, J.) (Kellogg Hansen successfully obtained favorable settlement for industrial copper purchasers in an antitrust action against J.P. Morgan, alleging that J.P. Morgan conspired to manipulate the worldwide price of copper); *Dial Corp. v. News Corp.*, No. 13-cv-06802 (S.D.N.Y) (Pauley, J.) (Kellogg Hansen obtained $250 million settlement for six corporate class representative clients and a class of consumer products companies in a Sherman Act monopolization case involving in-store advertising; the firm was recognized by the American Antitrust Institute (AAI) for "Outstanding Antitrust Litigation Achievement in Private Law Practice"); *In re Steel Antitrust Litig.*, 08-cv-5214 (N.D. Ill.) (Shah, J.) (Kellogg Hansen attorneys served as court-appointed co-lead class counsel on behalf of a class of direct purchasers alleging that several manufacturers conspired to inflate steel prices; the claims were settled for approximately $194 million after class certification); *see also Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-06705 (S.D.N.Y.) (Cote, J.) (in coordinated cases across the country, Kellogg Hansen recovered more than $5.1 billion for the NCUA in cases relating to the 2008 financial crisis).

and associates have clerked for federal appellate and/or district judges. One-third of the firm's partners clerked for Justices of the United States Supreme Court, including Mr. Ho and Mr. Panner. The firm has on its roster numerous former Assistant United States Attorneys, Assistants to the Solicitor General, and attorneys who have held senior positions in the government. The Kellogg Hansen attorneys who would lead this MDL include partners Derek T. Ho, Michael M. Nemelka, and Aaron M. Panner – all of whom represented Authenticom at the preliminary injunction hearing before Chief Judge Peterson. Attorney profiles for Messrs. Ho, Nemelka, and Panner are attached hereto as Appendix C.

Kellogg Hansen is committed to litigating this case zealously. Beyond Messrs. Ho, Nemelka, and Panner, Kellogg Hansen has dedicated a team of three additional partners, four associates, and paralegals and support staff. Moreover, the Court has the firm's commitment that Mr. Ho and his partners will draw from the firm's deep, 90-lawyer bench as needed to go toe-to-toe against two large corporate Defendants and the multiple law firms representing them. *See* Order Concerning Appointment of Counsel at 1-2, *In re Syngenta AR MIR162 Corn Litig.* MDL 2591, No. 14-md-2591 (D. Kan. Jan. 22, 2015), Dkt. 67 (appointing lead counsel that will "bring the resources necessary to sustain this litigation."); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186-87 (S.D.N.Y. 2008) (appointing lead counsel with "substantial resources at their disposal necessary to go against major corporate defendants").

### B. Kellogg Hansen's Work Was the Catalyst for All of the Actions In this MDL

In addition to its experience in antitrust litigation generally, Kellogg Hansen should be appointed lead counsel because this MDL would not exist but for Kellogg Hansen's investigation of the industry and litigation efforts in *Authenticom* and *MVSC*. Courts consistently recognize that – in appointing MDL lead counsel – the time and resources spent investigating the complaint

14

should be a substantial and often determinative factor.  *See* Minute Entry at 2-3, *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL 2147, No. 10-cv-02278 (N.D. Ill. June 23, 2010) (St. Eve, J.), Dkt. 47 (appointing MDL lead counsel that "dedicated a significant amount of time and resources to advancing the underlying lawsuits"); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *3 (S.D. Cal. Mar. 1, 2013) (selecting counsel who "demonstrated they have conducted more research and investigation in developing the case").[10]  In a similar vein, courts give substantial consideration to which firm investigated and filed the first complaint, especially where that complaint served as a "catalyst" for later complaints.  *See In re Interest Rate Swaps Antitrust Litig.*, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016) (appointing firm that filed the first class action, where that firm's work was the "cataly[st]" for later-filed complaints and was "generative and exceeded the investigative work of the other applicants by an order of magnitude");  *In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing lead counsel that "invested over a year in developing the class's claim" and "filed the first complaint in this litigation").

      In fact, Kellogg Hansen has found no instance in which a firm developed a case on its own – without the benefit of a government investigation – but was not appointed lead counsel. In the *Interest Rate Swaps* MDL, for example, Judge Engelmayer appointed Quinn Emanuel (and its co-counsel) as interim co-MDL lead counsel because it had developed the case: "Critically,

---

      [10] *See also* Order at 1-2, *Syngenta*, Dkt. 67 (appointing leadership group where all members "have done extensive work identifying and investigating potential claims"); *In re HSBC Bank USA N.A. Debit Card Overdraft Fee Litig.*, 2013 WL 3816597, at *10-11 (E.D.N.Y. July 22, 2013) (appointing lead counsel that "performed significant work in identifying and investigating the claims"); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 44 (S.D.N.Y. 2012) (appointing firm that "already devoted substantial time and resources . . . in identifying and investigating the claims set forth in the complaint"); *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 121 (S.D.N.Y. 2010) (appointing counsel who had done "considerable work to identify and investigate potential claims").

the firms did so not by piggybacking on an existing government investigation or enforcement action, but by undertaking an independent investigation" that was "extensive."  2016 WL 4131846, at *3, 4; *see also Mun. Derivatives*, 252 F.R.D. at 186 (appointing as interim lead counsel the firms that had "actively obtained information related to the alleged antitrust scheme . . . , which facilitated the filing of complaints in this action.").

So too here.  It was Kellogg Hansen that uncovered and substantiated the 2015 conspiracy between CDK and Reynolds, developed factual allegations about Defendants' practices, the relevant markets, and competitive harm, and crafted the legal theories that every subsequent complaint has copied.  By the time the first putative class case was filed, in October 2017, Kellogg Hansen had already conducted an extensive investigation of the industry; filed detailed complaints on behalf of *MVSC* and *Authenticom*; obtained the *Authenticom* preliminary injunction; briefed and argued that injunction before the Seventh Circuit; engaged in substantial document discovery in *Authenticom*; and defeated Defendants' motion to dismiss the core conspiracy claims in *MVSC*.  *See supra* p. 4; *see* Declaration of Brian Maas, President of the California New Car Dealers Association ¶ 9 (Mar. 12, 2018), Dkt. 41 ("Maas Decl.") (Ex. A) ("The Authenticom case – including the preliminary injunction proceedings – have brought CDK's and Reynolds' wrongdoing to light.").  Moreover, it was Kellogg Hansen's filing of the *MVSC* and *Authenticom* complaints – as well as the evidence Kellogg Hansen adduced at the preliminary injunction hearing – that helped prompt the FTC to open its investigation into Defendants' practices in mid-2017.  That investigation already has begun to bear fruit for

consumers: the FTC announced, just last week, that CDK had abandoned its announced acquisition of DMS competitor Auto/Mate, Inc. in the face of the FTC's challenge.[11]

In contrast, the other plaintiffs' firms now seeking to control the MDL did no original legwork and instead parroted Kellogg Hansen's work product. The later copycat class actions "cit[e] extensively to the *Authenticom* and *MVSC* filings as support for its factual allegations" and "piggyback on the allegations" of those complaints.[12]  Indeed, the follow-on class complaints copied the Authenticom Complaint verbatim;[13] relied upon the Authenticom Complaint and preliminary injunction proceedings for factual support;[14] or copied Authenticom's substantive allegations while altering a few words.[15]  Likewise, those complaints largely track Authenticom's causes of action:  horizontal conspiracy, Section 2 monopolization (based upon brand-specific data integration aftermarkets), exclusive dealing, and tying theories.[16]

Appointing any firm other than Kellogg Hansen as MDL lead counsel would reward and encourage free riding and undermine law firms' incentive to invest in and develop significant

---

[11] *See* Complaint, *In the Matter of CDK Global, Inc., et al.*, Federal Trade Commission, Docket No. 9382 (March 19, 2018), www.ftc.gov/system/files/documents/cases/docket_no_9382 _cdk_automate_part_3_complaint_redacted_public_version.pdf.

[12] Mot. of Defs. for Transfer and Consolidation of Related Actions Pursuant to 28 U.S.C. § 1407, at 5, 10, 11 (J.P.M.L. Nov. 7, 2017), Dkt. 1-1.

[13] *Compare* Authenticom Compl. ¶ 37, *with* Teterboro Automall Compl. ¶ 24; *compare* Authenticom Compl. ¶ 46, *with* Hartley Buick Compl. ¶ 43; *compare* Authenticom Compl. ¶¶ 199-201, *with* Hoover Automotive Compl. ¶¶ 138-140.

[14] *Compare* Authenticom Compl. ¶¶ 139-143, *with* Northtown Automotive Compl. ¶¶ 64-68; *compare* Authenticom Compl. ¶¶ 149-152, *with* Hartley Buick Compl. ¶¶ 89-92; *compare* Authenticom Compl. ¶ 180, *with* Baystate Ford Compl. ¶ 49.

[15] *Compare* Authenticom Compl. ¶ 71, *with* Hartley Buick Compl. ¶¶ 65-66; *compare* Authenticom Compl. ¶¶ 120-121, *with* Hoover Automotive Compl. ¶¶ 99-100; *compare* Authenticom Compl. ¶ 133, *with* John O'Neil Johnson Toyota Compl. ¶ 72.

[16] Although several of the class action complaints alleged additional causes of action (*e.g.*, violation of state antitrust or consumer protection statutes), these causes of action hinge on the same factual allegations already made in Authenticom's Complaint.

cases that benefit the public. *See, e.g., In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 181 (3d Cir. 2005) ("copycat complaints do not benefit the class, and are merely entrepreneurial efforts taken by firms attempting to secure lead counsel status"); *In re MF Glob. Holdings, Ltd.*, 464 B.R. 619, 625 n.4 (Bankr. S.D.N.Y. 2012) (declining to appoint as lead counsel firm that filed a complaint that "appear[ed] to be a nearly-word for-word copy" of an earlier complaint).

## II.    APPOINTING A SINGLE MDL LEAD IS THE MOST APPROPRIATE STRUCTURE FOR THIS MDL

In apparent recognition of Kellogg Hansen's undeniable contribution to the development of these cases, it is our understanding that no plaintiff disputes that Mr. Ho should be at least one lead counsel for this MDL. *See* Hearing Tr. at 47:24-48:22 (Mr. Barz); *id.* at 48:6-22 (Ms. Wedgworth). Certain dealers contend, however, that a second MDL lead counsel should be appointed to represent the interests of the putative dealer class. For the following reasons, we believe that a second co-lead is unwarranted.

### A.    A Single MDL Lead Counsel For the Common Liability Issues Is The Most Efficient Way To Achieve Both An Expedited Authenticom Trial and Coordinated Pretrial Proceedings

The Seventh Circuit's opinion in *Authenticom* is clear and emphatic: "[W]e urge the district court to do what it can to expedite its final judgment." *Authenticom II*, 874 F.3d at 1021.[17] The challenge for this Court is to achieve the MDL's statutory directive of "coordinated or consolidated pretrial proceedings," 28 U.S.C. § 1407, while also adhering to the Seventh Circuit's directive to expedite Authenticom's trial. Appointing Kellogg Hansen as MDL lead counsel is the appropriate way – indeed, the *only* way – to achieve those twin directives. Of all

---

[17] Contrary to Defendants' suggestion in their section of the Parties' Joint Status Report (Dkt. 64), that directive did not evaporate when the J.P.M.L. transferred these cases to this Court. Even the rulings of a sister transferor court are ordinarily the law of the case in the transferee court; that an appellate mandate continues to have a binding force is beyond question. *See In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 440-41 (3d Cir. 2009).

the firms in this MDL, only Kellogg Hansen is prepared and ready – today – to lead discovery on the *Authenticom* liability claims that are common to the MDL.

It is telling that the law firms seeking to be co-lead counsel (except for Labaton Sucharow and Roberts Law Firm) have aligned themselves with *Defendants* in proposing to extend fact discovery into 2020. That timeline disregards the Seventh Circuit's directive and Authenticom's need for a prompt trial, in favor of those firms' desire for MDL leadership. Those law firms' proposal would not only be a death knell for Authenticom but would also be devastating for the dealers themselves, which will suffer serious harm if their sole independent source of data integration is driven from the market.

Having Kellogg Hansen as sole MDL lead is also the most cost-effective leadership structure for the dealership class. Because Kellogg Hansen is already prepared to litigate the common issues, there is no need for the appointment of additional law firms that will merely deplete any eventual recovery for the class. *See* Annotated Manual for Complex Litig. (Fourth) § 10.21 cmt. (Lead Counsel) ("[I]f one firm can fulfill the lead counsel role, adding more firms adds nothing to the process, and may only make it more cumbersome or expensive.").

Notably, Brian Maas, who speaks for more than 1,100 dealers comprising nearly one-eighth of the nationwide market for new cars, supports Kellogg Hansen as MDL lead counsel because of its role in unearthing Defendants' conspiracy and successfully conducting the *Authenticom* litigation to date. *See* Declaration of Brian Maas, President of the California New Car Dealers Association (Mar. 26, 2018) (Ex. B). The support of such a substantial portion of the affected industry is an extraordinary factor supporting Kellogg Hansen's appointment as lead counsel, and it undermines any suggestion that Kellogg Hansen cannot fairly and adequately represent the interests of dealer plaintiffs.

Likewise, Labaton Sucharow, the Roberts Law Firm, Neal & Harwell PLC, and Beasley Allen Law Firm – all of which represent named plaintiffs in putative dealer class cases – support Kellogg Hansen as sole MDL lead counsel, and Labaton Sucharow and Roberts Law Firm are separately applying to the Court to serve as interim class counsel to provide additional resources and coordinate with Kellogg Hansen on behalf of their dealer clients.

**B.      Kellogg Hansen Has No Conflict In Pursuing the Common Liability Issues**

To our knowledge, the only argument raised against appointment of Mr. Ho as sole MDL lead counsel is the claim that Kellogg Hansen's individual clients – Authenticom, Cox Automotive, and MVSC – have interests adverse to the putative dealership classes. That assertion misunderstands the leadership structure Kellogg Hansen is proposing; the law of conflicts; and the nature of various plaintiffs' interests in this MDL.

1.      Kellogg Hansen seeks appointment as MDL lead counsel; it does not seek to represent the class as interim class counsel under Federal Rule of Civil Procedure 23. That distinction is critical. As MDL lead counsel, Mr. Ho and Kellogg Hansen would coordinate discovery and pretrial issues with respect to common liability issues, but interim class counsel would represent the class, coordinate with Kellogg Hansen, and have primary responsibility for class-specific issues (including filing a consolidated class complaint, briefing any motions to dismiss, class certification, class-specific damages, and settlement).

Kellogg Hansen's proposed structure thus does not implicate the conflict concerns identified in the *Broiler Chicken* case discussed at the March 12 status conference. *See In re Broiler Chicken Antitrust Litig.*, No. 16-cv-8637 (N.D. Ill.) (Durkin, J.) ("*Broiler Chicken*"). There, Judge Durkin decided it was prudent to appoint separate *class* counsel, under Rule 23, to ensure that indirect purchasers had separate legal representation due to the possible conflicts "as

20

to the damage[s] portion" of the case.  Transcript of Proceedings at 37:3-5, *Broiler Chicken*, (Dec. 9, 2016), Dkt. 245.  But here, under Kellogg Hansen's proposed structure, the class will "have [its] own set of lawyers," *id.* at 38:7-8, and, as sole lead counsel, Kellogg Hansen will actively coordinate with interim class counsel – whomever is selected – regarding common liability issues.

      2.      At any rate, there is no conflict between the individual plaintiffs and the putative dealership classes in this MDL with respect to expeditious pursuit of the *Authenticom* liability case.  Far from being adverse, all Plaintiffs (including vendors and dealers) will benefit immensely from Authenticom obtaining expeditious relief that enables it to stay in business.  *See* Manual for Complex Litig. (Fourth) § 10.22 (standard is whether MDL lead counsel can "fairly and adequately represent all of the parties on their side" and "act fairly, efficiently, and economically in the interests of all parties and parties' counsel").

      As Mr. Maas explained on behalf of more than 1,100 California dealers, "[i]t is in the interest of dealers to have the claims at issue in Authenticom resolved quickly" because the "Authenticom case goes to the heart of the harm being suffered by dealers."  Maas Decl. ¶¶ 11-12; *see also Authenticom I*, 2017 WL 3017048, at *10 (holding that "vendors and dealers would be served by the continued availability of Authenticom's DealerVault software and its data integrations services" and "the public interest is served" if Authenticom can continue to "provide a competitive product that has already won acceptance in the market.").  That is why the dealer industry supported Authenticom at the injunction hearing, and a large group of dealers' counsel support Kellogg Hansen as MDL lead counsel and an expedited schedule for Authenticom.

      At the March 12 status conference, counsel for one dealership suggested there might be a conflict between Authenticom and the dealers with respect to discovery strategy.  *See* Hearing

Tr. 46:9-47:4 (Mr. Barz). But that is not the type of "inherent" conflict that would justify separate counsel. Even in the Rule 23 context, a single firm "may represent multiple sets of litigants — whether in the same action or in a related proceeding — so long as the litigants' interests are not inherently opposed." 1 *Newberg on Class Actions* § 3:75 (5th ed.). To disqualify a firm, conflicts must be "manifest and glaring." *Andrews Farms v. Calcot, LTD.*, 2010 WL 4010146, *4 (E.D. Cal. Oct. 13, 2010) ("Courts generally discourage rigid application of disqualification rules in class action cases because of the nature of class representation and the importance of retaining counsel with the most experience on the case."); *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015) (only "fundamental" conflicts are relevant and "a conflict must touch on 'the specific issues in controversy.'"). As a result, "[c]ourts have generally held that the mere existence of parallel representation [of both a class and individual plaintiffs] does not create an insurmountable conflict of interest." *Bell v. Disner*, 2018 WL 296035, at *3 (W.D.N.C. Jan. 4, 2018) (collecting cases).

In fact, dealers would *benefit* from Kellogg Hansen's prosecution of common discovery as MDL counsel, in light of the firm's extensive knowledge built over the past year-plus. *See supra* pp. 6-10. Indeed, many "courts have recognized that concurrent representation . . . benefit the class to the extent that class counsel gain useful legal and factual knowledge in pursuing" related actions. *Newberg on Class Actions* § 3:75*; accord Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 215 (N.D. Ill. 2008) (That counsel was "litigating similar [] claims in courts throughout the country . . . weighs in favor of finding that class counsel here is adequately competent and experienced."); *Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005) ("[C]lass counsel's participation in other closely-related lawsuits did not create a conflict

and was instead of benefit to the class.").[18]

   **3.**     The specific conflict identified in the *Broiler Chicken* case – which centered on the extent of pass-through damages – is not present as to the common liability issues for which Kellogg Hansen proposes to serve as MDL lead counsel.  Authenticom need not prove (or disprove) pass through to succeed on its antitrust claims.  For Authenticom's purposes, Defendants' imposition of supracompetitive data integration fees, whether absorbed by vendors or passed through to dealers, is sufficient to show harm to consumers and competition.  *See Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 398 (7th Cir. 2000).  And Authenticom's damages are its lost profits and lost enterprise value, separate and apart from any overcharge to customers.  *See, e.g.*, *In re Netflix Antitrust Litig.*, 506 F. Supp. 2d 308, 315 (N.D. Cal. 2007).

   Likewise, even assuming vendors are considered direct purchasers of data integration services while dealers are considered indirect purchasers, there is no conflict between them.  Direct purchasers are agnostic as to how much of the overcharge they passed through to indirect purchasers, because direct purchasers can always recover 100% of the overcharge under federal law.  *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 724-25 (1977).  And direct purchasers' recovery under the Sherman Act does not prejudice indirect purchasers' ability to recover for any pass-through overcharge under state laws.  *See California v. ARC Am. Corp.*, 490 U.S. 93, 101, 105 (1989) (indirect purchasers can seek "liability over and above that authorized by federal law" where authorized by state law).

---

   [18] *See also In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 429-30 (3d Cir. 2016) (no conflict where the same lawyer represented a class and nine non-class plaintiffs in an MDL); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1405 (D. Minn. 1993) (appointing same counsel to represent individual and class plaintiffs and noting the firm's "participation in other, closely related lawsuits" was a benefit to the class).

Moreover, Kellogg Hansen's litigation of these cases to date shows that it has no incentive to downplay pass-through to dealers. Each of Kellogg Hansen's complaints has alleged that vendors pass through to dealers most or all Defendants' data integration overcharges.[19] At the *Authenticom* preliminary injunction hearing, Kellogg Hansen elicited firsthand live testimony, from vendors and dealers alike, about pass-through to dealers.[20] And in discovery in *Authenticom*, Kellogg Hansen already has sought discovery on pass through from CDK, Reynolds, and third-party vendors and dealers.[21]

### C. If the Court Appoints a Second MDL Lead Counsel, It Should Appoint Christopher McDonald of Labaton Sucharow

If the Court is inclined to appoint a second lead counsel, Kellogg Hansen supports the appointment of Christopher McDonald and Labaton Sucharow. Kellogg Hansen and Labaton Sucharow have been working together to develop a dealer class case since May 2017. The two firms have collaborated on several cases, dating back to their successful litigation of a major securities class action case, *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455 (2013). Moreover, as reflected in its position with respect to the pretrial schedule in this case, Labaton Sucharow is best suited to be MDL co-lead counsel because it supports the interests of all Plaintiffs – including the dealer class – in moving these cases forward quickly. Of course, if the Court appoints a second MDL lead counsel, Kellogg Hansen stands ready to work shoulder-

---

[19] Authenticom Compl. ¶¶ 128-130, 224 (May 1, 2017), *Authenticom* Dkt. 1; Cox Automotive Compl. ¶¶ 145-147, 155-157 (Dec. 11, 2017), *Cox Automotive* Dkt. 1; MVSC Second Am. Compl. ¶ 92 (Nov. 2, 2017), *MVSC* Dkt. 76; Bob Baker Compl. ¶¶ 8, 15, 38, 80-81, 191 (Feb. 2, 2018), *Bob Baker* Dkt. 1.

[20] See Tr. of Prelim. Inj. at 14:1-20 (June 27, 2017), *Authenticom* Dkt. 165 (dealer discussing pass through); *id.* at 44:15-46:2 (vendor discussing pass through); *id.* at 62:18-23 (vendor discussing pass through and stating, "We pass them straight through.").

[21] *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016), cited by Judge Durkin in *Broiler Chicken*, is also inapposite, because it involved appointment of counsel for *settlement-only* classes that had a "clear" conflict. *Id.* at 233-34.

to-shoulder with whomever the Court appoints, as it has done in other MDLs.

## III. THE COURT SHOULD APPOINT JENNIFER GREGOR AND/OR RICHARD PRENDERGAST AS MDL LIAISON COUNSEL, AND PROFESSOR SAMUEL ISSACHAROFF AS MDL COORDINATING COUNSEL

Whether it is appointed as sole lead or co-lead, Kellogg Hansen proposes that the Court

appoint Jennifer Gregor of Godfrey & Kahn S.C. and/or Richard Prendergast of Richard J.

Prendergast, Ltd. as MDL liaison counsel.  Ms. Gregor is well suited for the role because she has

been immersed in the *Authenticom* case since its inception, including playing an active role in

questioning witnesses at the preliminary injunction hearing.  Moreover, her offices are in nearby

Madison, Wisconsin.

To the extent the Court might prefer MDL liaison counsel with an office in this District,

Kellogg Hansen proposes Richard Prendergast, of Chicago-based Richard J. Prendergast, Ltd.

Mr. Prendergast has litigated extensively in this Court, and has worked with Kellogg Hansen on

numerous cases, including the pending *Viamedia* case.

Kellogg Hansen also proposes that Samuel Issacharoff, the Bonnie and Richard Reiss

Professor of Constitutional Law at NYU Law School, be appointed as MDL coordinating

counsel.  Professor Issacharoff's expertise in MDL structure and procedure will provide

invaluable assistance to all parties and the Court in this somewhat unusual MDL.

Profiles for Godfrey & Kahn and Ms. Gregor are attached as Appendix D; a profile for

Mr. Prendergast and his law firm is attached hereto as Appendix E; and Professor Issacharoff's

academic profile is attached hereto as Appendix F.

## CONCLUSION

Kellogg Hansen respectfully requests that the Court appoint Mr. Ho as MDL lead counsel

or, in the alternative, MDL co-lead counsel with Mr. McDonald as counsel for the dealer class.

Dated:  March 26, 2018             Respectfully submitted,

Derek T. Ho
Aaron M. Panner
Michael N. Nemelka
**KELLOGG, HANSEN TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, DC 20036
Tel.:  (202) 326-7900
Fax:  (202) 326-7999
dho@kellogghansen.com
apanner@kellogghansen.com
mnemelka@kellogghansen.com

Jennifer L. Gregor
**GODFREY & KAHN S.C.**
One East Main Street, Suite 500
Madison, Wisconsin 53703
(608) 257-0609
jgregor@gklaw.com

Richard J. Prendergast
**RICHARD J. PRENDERGAST, LTD.**
111 W. Washington Street,
Suite 1100
Chicago, Illinois 60602
Telephone: (312) 641-0881
rprendergast@rjpltd.com

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
(212) 998-6580
si13@nyu.edu

*Attorneys for Plaintiffs Motor*
*Software Vehicle Corporation,*
*Authenticom, Inc., Cox Automotive,*
*Inc., and Bob Baker Volkswagen*

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that on March 26, 2018, I caused a true and correct copy of the foregoing **MOTION FOR APPOINTMENT OF DEREK T. HO OF KELLOGG HANSEN AS MDL LEAD COUNSEL, JENNIFER GREGOR OF GODFREY & KAHN AND/OR RICHARD PRENDERGAST AS MDL LIAISON COUNSEL, AND PROFESSOR SAMUEL ISSACHAROFF AS MDL COORDINATING COUNSEL** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____

Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com