# APPENDIX A

# KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.



# Firm Overview

**Kellogg Hansen** is a preeminent trial and appellate litigation firm founded on the idea that talent, creativity, and hard work achieve the best results for clients. Formed in the spring of 1993 by law school classmates (Harvard '82) Michael Kellogg, Peter Huber, and Mark Hansen, our firm has grown over the past 25 years – with each year proving that our founding principle holds true. Today, Kellogg Hansen has more than 90 attorneys, including 33 partners, and boasts an extensive record of success for our clients.

Our highly credentialed and motivated attorneys offer businesses, individuals, and governments sound counsel and innovative solutions to complex disputes and high-stakes matters. We have substantial experience trying cases to verdict at trial, arguing matters before the United States Supreme Court and other appellate courts, and representing businesses and individuals in parallel proceedings before state and federal courts, agencies, and arbitration panels. We represent both plaintiffs and defendants, providing our clients with a balanced view of both sides of litigation.

We are most proud of the exceptional results we achieve for our clients. Kellogg Hansen has won multiple verdicts in excess of $1 billion, obtained settlements in the hundreds of millions of dollars for numerous clients, and successfully defended clients against similarly large damages claims. Our experience, talent, and hard work ensure that our clients receive highest-quality representation and extraordinary service.

## Our Attorneys

Kellogg Hansen attorneys are known as trial-ready litigators, who are not afraid of complexity and have the experience to successfully try high-stakes and high-profile litigation. *Chambers USA*, reports that our firm is a "highly effective litigation boutique, known for its expertise in contentious civil matters, including bet-the-company cases in antitrust" and that our attorneys provide "highly sophisticated representation to a broad range of corporate clients, with trial and appellate experience that extends across multiple jurisdictions and all the way up to the Supreme Court."

Kellogg Hansen attorneys have the track record and results to back up the accolades:

- Our partners have been lead counsel in more than 100 federal and state trials and appeals and have argued 71 cases before the Supreme Court of the United States.
- We won the two largest antitrust judgments in United States history (*Conwood v. U.S. Tobacco* and *In re Urethane Antitrust Litigation*), both in excess of $1 billion, and successfully defended them on appeal.

# Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

- Our attorneys won a defense verdict and obtained a unanimous affirmance on appeal in a fraudulent conveyance bench trial in which the plaintiff sought more than $9 billion in damages.
- We have secured recoveries in excess of $5.1 billion for defective mortgage-backed securities against a wide range of Wall Street banks on behalf of the National Credit Union Administration.
- We have argued and won precedent-setting Supreme Court cases in areas such as civil procedure (*Bell Atlantic Corp. v. Twombly*), antitrust (*Pacific Bell Tel. Co. v. Linkline Communications, Inc.*), securities regulation (*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds* and *Matrixx Initiatives, Inc. v. Siracusano*), and federal preemption (*Wyeth v. Levine* and *Altria Group, Inc. v. Good*).

Courts across the country have recognized the work of Kellogg Hansen's committed attorneys. In the *Urethane* MDL, Judge Lungstrum stated that the Kellogg Hansen trial team "achieved an incredible result for the class, . . . and . . .won what is reported to be one of the largest verdicts of its kind in United States history. Counsel had to build this case on their own, without the help of a governmental investigation." Judge Lungstrum said that in his "almost 25 years of service on the bench, this Court has not experienced a more remarkable result." In *Dial Corp. v. News Corp.*, Judge Pauley called the efforts of Kellogg Hansen as co-lead counsel, together with four other law firms, "a paradigm for smooth and efficient claims administration" and wishing "all class action settlements could end on such a high note."

Kellogg Hansen hires only the most talented and motivated attorneys to join us in our fast-paced and challenging practice. Nearly all Kellogg Hansen partners and associates graduated from top-tier law schools and served as law clerks for federal appellate judges, and many Kellogg Hansen partners have held high-level positions in both the federal government and the private sector.

The bench of credentialed and qualified attorneys at Kellogg Hansen is deep. The firm was founded with the conviction that able young attorneys can assume substantial responsibility at an early point in their careers for matters at both the trial and the appellate levels. We believe that this benefits both our clients, who receive cost-effective service from highly motivated attorneys, and the attorneys, who experience the satisfaction of practice. We also encourage our attorneys to consider public service, and have seen many become judges, advance to senior positions in government, and serve as deans and professors at the nation's top law schools. Kellogg Hansen was proud and delighted at the confirmation of former colleague Neil Gorsuch as a United States Supreme Court Justice in 2017.

## Our Practice

Our practice builds on the experience of the firm's partners as attorneys in federal agencies, the White House, and the general counsel's office of a Fortune 100 corporation. We pride ourselves as generalists with subject matter experience that is both broad and deep in areas including complex corporate disputes, antitrust, class actions, securities fraud, fiduciary duty, professional liability, government investigations, Supreme Court and appellate litigation, telecommunications, intellectual property, and patents.

Our wide-range of experience allows us to regularly take on cases that do not fit neatly into a single category and enables us to bring skills and tactics learned in one practice to another. The matters we handle for our clients range from a complex 500-party interpleader action to relatively straightforward commercial disputes. Kellogg Hansen attorneys have represented clients in state court and federal district court actions throughout the country, administrative proceedings, all of the federal courts of appeals, and the Supreme Court of the United States.

# APPENDIX B

# KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.



# Antitrust Experience

Kellogg Hansen is among the nation's premiere law firms in the areas of antitrust litigation and enforcement. It is no exaggeration that the firm's cases have reshaped the substantive and procedural law of antitrust over the last two decades. Our precedent-setting appellate victories include *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Pacific Bell Tel. Co. v. Linkline Communications, Inc.*, 555 U.S. 438 (2009); *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013).

At the trial level, Kellogg Hansen has secured both the largest *and* second largest antitrust verdicts and defended those verdicts on appeal. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) (affirming $1.2 billion price-fixing verdict); *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (affirming $1.05 billion monopolization verdict), *cert. denied*, 537 U.S. 1148 (2003). We have also obtained many large settlements and successfully defended against similarly large antitrust claims.

Reflecting its stature in the field, Kellogg Hansen is currently involved in the two most significant antitrust matters pending in the country today: the firm represents AT&T in the Department of Justice's challenge to the merger of AT&T and Time Warner, *United States v. AT&T Inc.*, No. 17-cv-02511 (D.D.C.), and it is appellate counsel to American Express in the most important vertical-restraint case the Supreme Court has heard in several decades, *Ohio v. American Express Co.,* No. 16-1454.

## Top Cases

### *In re Urethane Antitrust Litigation*, MDL No. 1616 (D. Kan. 2013)
In one of the few antitrust class actions to go to trial, Kellogg Hansen attorneys served as co-lead trial counsel for a class of direct purchasers in a four-week jury trial in 2013 alleging price fixing by the Dow Chemical Company. The jury ultimately rendered a $1.2 billion verdict, the largest antitrust verdict in U.S. history. The verdict was upheld on appeal at the circuit level, and the case settled while under review by the Supreme Court. In its final approval order, the District Court wrote: "[i]n almost 25 years of service on the bench, this Court has not experienced a more remarkable result."

### *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002), *cert. denied*, 537 U.S. 1148 (2003)
Kellogg Hansen attorneys represented Conwood in obtaining and defending the largest antitrust verdict ever affirmed on appeal. The jury found that United States Tobacco (UST) abused its monopoly power and awarded Conwood $1.05 billion in damages. UST ultimately paid the entire verdict plus interest after appeals were exhausted. The trial team included now-Supreme Court Justice Neil Gorsuch.

# KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

***In re Copper Antitrust Litigation*, MDL 1303 (W.D. Wis. 2000)**
Kellogg Hansen attorneys represented a group of industrial copper purchasers in an antitrust action against J.P. Morgan, in which the purchasers alleged that J.P. Morgan participated in a conspiracy to manipulate the worldwide price of copper, thereby causing hundreds of millions of dollars in damages. Plaintiffs successfully opposed a motion for summary judgment, and the matter settled favorably immediately before trial with the clients recovering approximately forty times more than their share of the class recovery against the other defendants in an earlier phase of the litigation.

***Dial Corp. v. News Corp.*, No. 13-cv-06802 (S.D.N.Y.)**
Kellogg Hansen attorneys successfully represented six corporate class representative clients, including Dial Corporation and other plaintiffs in this Sherman Act monopolization case involving in-store promotions. On the first day of trial, Kellogg Hansen attorneys secured a settlement of $250 million and significant injunctive relief for both their clients and the certified class of 699 consumer product goods companies. The American Antitrust Institute named Kellogg Hansen a 2017 Antitrust Enforcement Awards honoree for "Outstanding Antitrust Litigation Achievement in Private Law Practice" for their representation in this case.

***In re Steel Antitrust Litigation*, No. 08-cv-5214 (N.D. Ill.)**
Kellogg Hansen attorneys served as court-appointed co-lead class counsel on behalf of a class of direct purchasers that included all the major automakers as well as a number of other Fortune 500 companies in a proposed class action alleging several manufacturers colluded to inflate steel prices. After defeating a motion to dismiss and persuading the court to certify a class, the claims were settled for approximately $194 million in the aggregate.

***Kleen Products LLC v. International Paper Co.*, 831 F.3d 919 (7th Cir. 2016),**
***cert. denied*, 137 S. Ct. 1582 (2017)**
The court of appeals affirmed, on interlocutory appeal, certification of a class of direct purchasers of containerboard products claiming that manufacturers colluded to suppress supply and increase prices. International Paper Co. recently agreed to pay $354 million to settle the class action. Kellogg Hansen attorneys argued the case and represented purchaser respondents.

***In re Text Messaging Antitrust Litigation*, 782 F.3d 867 (7th Cir. 2015)**
Kellogg Hansen attorneys successfully defended Verizon Wireless against a multi-billion dollar price-fixing suit, winning summary judgment and affirmance on appeal and taking the lead in briefing and argument on behalf of all defendants.

***Anderson News, L.L.C. v. American Media, Inc.*, 680 F.3d 162 (2d Cir. 2012),**
***cert. denied*, 568 U.S. 1087 (2013)**
Kellogg Hansen attorneys argued successfully that the district court judgment granting defendants' motion to dismiss for failure to state a claim under § 1 of the Sherman Act, 15 U.S.C. § 1, be vacated and remanded.

***Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I – V Cases*,**
**J.C.C.P. No. 4106 (Cal. Super. Ct., San Fran.)**
Kellogg Hansen attorneys represented the plaintiffs in Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I – V Cases. Kellogg Hansen attorneys investigated, drafted, and filed the complaint in *Lingo v. Microsoft Corp.*, No. 301357 (Cal. Super. Ct., San Fran.), which became the lead case against Microsoft in California after consolidation, on February 18, 1999. On January 10, 2003, plaintiffs' counsel and the class representatives reached an agreement with Microsoft on a settlement, which provided $1.1 billion in monetary benefits to California consumers and municipalities. This settlement is the largest

# KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

recovery of a monopoly overcharge ever achieved in the United States and the largest recovery ever achieved under California's Cartwright Act or California's Unfair Competition Act.

### Smokeless Tobacco Consumer Class Actions (2000-2008)

Kellogg Hansen attorneys represented classes of California, Kansas, New York, and Wisconsin consumers of moist smokeless tobacco in antitrust and related actions against U.S. Smokeless Tobacco, in which the consumers alleged, among other things, that U.S. Smokeless Tobacco engaged in anticompetitive behavior that had the effect of unlawfully raising prices paid by consumers, thereby causing hundreds of millions of dollars in damages. After plaintiffs scored numerous victories on class certification, discovery, and other issues, these matters settled on favorable terms collectively for hundreds of millions of dollars in value for consumers.

### Volumetrics Medical Imaging, Inc. v. ATL Ultrasound, Inc., No. 01-cv-00182 (M.D.N.C.)

Kellogg Hansen attorneys obtained a jury verdict of $318.75 million for fraud and unfair trade practices arising out of contract negotiations between plaintiff, a high-technology start-up company, and defendant, a major ultrasound company. This was one of the largest unfair trade practices judgments ($180 million collected in a settlement).

### United States v. AT&T Inc., T-Mobile USA, Inc., and Deutsche Telekom AG, No. 11-01560 (D.D.C.)

Kellogg Hansen attorneys were retained by AT&T Inc. to serve as lead trial counsel in the Department of Justice lawsuit to enjoin the merger of AT&T Inc. and T-Mobile USA, Inc.

## Precedent-Setting Cases

### American Express Co. v. Italian Colors Restaurant, 570 U.S. 228 (2013)

In a major Supreme Court antitrust arbitration victory, Kellogg Hansen attorneys argued successfully for American Express that the Federal Arbitration Act does not permit courts, invoking the "federal substantive law of arbitrability," to invalidate arbitration agreements on the ground that they do not permit class arbitration of federal antitrust claims.

### Pacific Bell Telephone Co. v. Linkline Communications, Inc., 555 U.S. 438 (2009)

Kellogg Hansen attorneys won reversal of a Ninth Circuit "price squeeze" decision, overturning 60-year-old precedent, and persuaded the Supreme Court to adopt a broad ruling that, in the absence of a duty to deal, a wholesale monopolist has no obligation to avoid setting prices that disadvantage downstream rivals.

### Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)

Kellogg Hansen attorneys successfully represented AT&T and other telecommunications firms in securing reversal of the Second Circuit ruling and dismissal of antitrust conspiracy claim in the most significant decision on pleading standards in 50 years. This landmark decision established that parallel conduct, absent plausible evidence of agreement, is insufficient to state a claim under § 1 of the Sherman Act.

### Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398 (2004)

Kellogg Hansen attorneys successfully represented Verizon in a leading case limiting firms' affirmative obligations to assist competitors under Section 2 of the Sherman Act.

# Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

## Ongoing Cases

***Ohio v. American Express Co.*, No. 16-1454 (U.S.)**
Kellogg Hansen attorneys currently represent American Express in the Supreme Court's most significant Rule of Reason antitrust case in two decades.

***United States v. AT&T Inc.*, No. 17-cv-02511 (D.D.C.)**
Kellogg Hansen currently represents AT&T in the Department of Justice's challenge to the $108 billion merger of AT&T and Time Warner. Trial in that case began on March 19, 2018, and is being called by commenters the most important antitrust suit of the decade.

***In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.)**
Kellogg Hansen attorneys represent multiple individual plaintiffs in a major antitrust litigation against the two leading providers of dealer management systems, CDK Global, LLC and The Reynolds & Reynolds Company Global Competition Review named partners Derek Ho, Michael Nemelka, and Aaron Panner "Litigators of the Week" for successfully obtaining a rare preliminary injunction on behalf of their client, Authenticom, Inc.

***Viamedia Inc. v. Comcast Corp.*, No. 16-cv-05486 (N.D. Ill.)**
Kellogg Hansen attorneys, including partners Derek Ho, Aaron Panner, James Webster, and Kenneth Fetterman, represent Viamedia Corporation in an antitrust suit alleging unlawful tying and exclusive dealing in the local cable advertising representation market. The Court has denied Comcast's motion to dismiss and the parties have completed discovery.

***Quintiles IMS Inc. v. Veeva Systems Inc.*, No. 17-cv-00177 (D.N.J.)**
Kellogg Hansen attorneys represent Veeva Systems Inc. in antitrust claims against Quintiles IMS Incorporated (IMS). Veeva is alleging that IMS has abused monopoly power as the dominant provider of data products for life sciences companies to exclude Veeva's lines of business from their respective markets.

***In re Lithium Ion Batteries Antitrust Litigation*, No. 13-md-02420 (N.D. Cal.)**
Kellogg Hansen attorneys represent a corporate client and the direct purchaser class.

# APPENDIX C

# Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.



## Derek T. Ho

Partner
ph: 202.326.7931
fx: 202.326.7999
dho@kellogghansen.com

Mr. Ho specializes in appellate and complex commercial litigation, with particular expertise in class actions and MDL proceedings, and antitrust law. He has represented both plaintiffs and defendants as lead counsel in appellate and district courts across the country.

At the U.S. Supreme Court, Mr. Ho secured victories for his clients in two seminal antitrust cases, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013). Along with his partner, Aaron Panner, he co-authored the merits brief in *Ohio v. American Express Co.*, No. 16-1454. Mr. Ho also represented clients in two of the Court's most significant recent class action decisions, and prevailed in both. *See Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013); *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036 (2016).

Mr. Ho has served as lead counsel in numerous appeals in federal and state courts, including serving as appellate counsel hired by Plaintiffs' Steering Committees to represent thousands of plaintiffs in several large MDLs. *See Juanita Hempstead v. Pfizer, Inc.,* No. 17-1140 (4th Cir.); *Chapman v. Procter & Gamble Distributing LLC*, 766 F.3d 1296 (11th Cir. 2014); *In Re: Zoloft*, No. 16-2247 (3d Cir. 2017) (co-counsel with David Frederick).

In the district courts, Mr. Ho represents several individual plaintiffs in an MDL involving antitrust claims against the dominant providers of automotive data management services, and an independent local cable advertising representative in an antitrust suit against Comcast Corporation, among many other cases. Mr. Ho has also successfully represented defendants in criminal antitrust investigations by the Department of Justice, and regularly provides antitrust counseling to prominent U.S. companies.

Mr. Ho is a frequent speaker at conferences on class actions, the U.S. Supreme Court, and appellate advocacy. He serves as a member of the Kellogg Hansen Executive Committee.

## Education

Harvard Law School, J.D., *magna cum laude*, 2001
- Treasurer, *Harvard Law Review*, 2000-2001
- Finalist, Ames Moot Court competition

Yale University, M.A., 1998

Harvard College, B.A., *magna cum laude*, 1996
- Phi Beta Kappa

## Clerkship

Law Clerk, Justice David H. Souter,
U.S. Supreme Court, 2002-2003

Law Clerk, Judge Michael Boudin,
U.S. Court of Appeals, First Circuit, 2001-2002

# Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.



## Aaron M. Panner

Partner
ph: 202.326.7921
fx: 202.326.7999
apanner@kelloggghansen.com

Aaron Panner specializes in antitrust law, and U.S. Supreme Court and appellate litigation. He has represented leading companies and individuals in high-stakes litigation at both the trial and the appellate levels, including arguing five cases before the U.S. Supreme Court. His clients include many of the nation's leading communications and information services companies. Mr. Panner represents plaintiffs and defendants, and he has both successfully briefed multiple motions to dismiss antitrust claims on the pleadings, and successfully represented plaintiffs in defeating motions to dismiss.

Mr. Panner recently represented a class of direct purchasers of containerboard products claiming that manufacturers colluded to suppress supply and increase prices. The court of appeals affirmed, on interlocutory appeal, certification of the class. Defendant, International Paper Co., recently agreed to pay $354 million to settle the class action. *Kleen Products LLC v. International Paper Co.*, 831 F.3d 919 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 1582 (2017)

On behalf of AT&T, Mr. Panner secured a Supreme Court decision eliminating most "price-squeeze" claims under Section 2 of the Sherman Act, winning reversal of the Ninth Circuit. *Pacific Bell Tel. Co. v. Linkline Communications, Inc.*, 555 U.S. 438 (2009). He was the principal drafter of the cert. petition and merits brief in a landmark decision clarifying pleading standards, winning reversal of the Second Circuit. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). He also represented Verizon in a leading case limiting firms' affirmative obligations to assist competitors under Section 2 of the Sherman Act. *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004).

Mr. Panner has published numerous articles on antitrust litigation including: *Bundled Discounts and the Antitrust Modernization Commission*, Antitrust Chronicle (2007); *Are Price Squeezes Anticompetitive*, Antitrust Chronicle (2009); and *The Second Circuit's* Starr *Decision: Why* Twombly *Demands More*, Antitrust Chronicle (2010). He is on the Editorial Advisory Board of the Competition Policy International's Antitrust Chronicle.

**Education**
Harvard Law School, J.D., *magna cum laude*, 1995
- Fay Diploma
- Primary Editor, *Harvard Law Review*, 1994-1995

Yale University, B.S., *summa cum laude*, 1986
- Phi Beta Kappa

**Clerkship**
Law Clerk, Justice Stephen Breyer,
U.S. Supreme Court, 1996-1997

Law Clerk, Judge Michael Boudin,
U.S. Court of Appeals, First Circuit, 1995-1996

# Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.



## Michael N. Nemelka

Partner
ph: 202.326.7932
fx:  202.326.7999
mnemelka@kellogghansen.com

Michael Nemelka specializes in complex commercial litigation, and has experience across a broad range of civil and criminal matters.  He has tried numerous cases to verdict in federal and state courts, as well as before arbitration panels.  He has represented corporate and individual clients in cases involving antitrust liability, trust administration, breach of contract, professional liability, intellectual property, and government securities and FCPA investigations.

In one of the few antitrust class actions to go to trial, Mr. Nemelka was part of a trial team that represented a class of direct purchasers in a four-week jury trial alleging price fixing by the Dow Chemical Company among others.  The jury rendered a $1.2 billion dollar verdict after trebling on February 20, 2013.  Prior to the trial, all of the other defendants settled with the class.  *In re Urethane Antitrust Litig.*, MDL No. 1616 (D. Kan. 2013).

Mr. Nemelka has spearheaded the investigation of the core claims in the antitrust litigation against the two leading providers of dealer management systems, CDK Global, LLC and The Reynolds & Reynolds Company.  *In re Dealer Mgmt. Sys. Antitrust Litig.*, MDL No. 2817 (N.D. Ill.).  Mr. Nemelka successfully served as lead trial counsel for Authenticom, Inc. at the preliminary injunction hearing in the Western District of Wisconsin.  *Global Competition Review* named Mr. Nemelka, along with his partners Derek Ho and Aaron Panner, "Litigators of the Week" for obtaining this rare preliminary injunction.

In addition to his trial work, Mr. Nemelka has drafted merits and amicus briefs in the U.S. Supreme Court and state supreme courts.

Mr. Nemelka joined Kellogg Hansen in 2007 after clerking for the Honorable Paul V. Niemeyer of the United States Court of Appeals for the Fourth Circuit.  He earned his J.D. from the University of Virginia, where he was on the managing board of the *Virginia Law Review*, and a B.A. in history from Brigham Young University.

**Education**
University of Virginia School of Law, J.D., 2006
- Order of the Coif
- Notes Development Editor, *Virginia Law Review*, 2005-2006

Brigham Young University, B.A., 2003

**Clerkship**
Law Clerk, Judge Paul V. Niemeyer,
U.S. Court of Appeals, Fourth Circuit, 2006-2007

# APPENDIX D

**Godfrey & Kahn, S.C. Firm Profile**

With more than 160 lawyers, Godfrey & Kahn, S.C. is one of Wisconsin's leading business law firms. Founded in 1957, Godfrey & Kahn maintains offices in Madison, Milwaukee, Green Bay, Appleton, and Waukesha, Wisconsin and Washington D.C.

The firm employs more than 50 litigation attorneys. The group is experienced in a wide range of complex civil litigation matters including in the areas of: antitrust, class action, contract/commercial, dealership, employment and ERISA, estate, trust, and fiduciary litigation, insurance, government investigations and white collar crime, intellectual property, media and first amendment law, products liability and tort, real estate, and securities litigation.

**Representative MDL, Class Action, and Antitrust Matters**

- ***FTC and State of Idaho v. St. Luke's Health Sys., Ltd., et al.***, Nos. 12-cv-560, 13-cv-116, 2014 WL 407446 (D. Idaho Jan. 24, 2014). Eric Wilson and Kevin O'Connor of Godfrey & Kahn represented the State of Idaho as lead trial counsel in a successful antitrust challenge brought by Idaho and the Federal Trade Commission of the acquisition of the Saltzer Medical Group by Saint Luke's Health System. The Court of Appeals for the Ninth Circuit affirmed.

- ***In re Dynamic Random Access Memory (DRAM) Antitrust Litigation***, Case No. 4:02-md-01486-PJH (N.D. Cal.). Kevin O'Connor served on the executive committee, representing various consumer groups of indirect purchasers.

- ***Goldfinger v. Journal Communications, et al.*** (E.D. Wis., 2015; Milw. Co. Cir. Ct., 2014). Defended putative class actions against company and its directors claiming breaches of fiduciary duties and violations of federal securities laws in connection with the merger of two media companies.

- ***City of Sterling Heights Police & Retirement System v. Kohl's Corporation, et al.*** (S.D.N.Y. 2013, E.D. Wis. 2013). Defended putative class action for securities fraud.

- ***DataKey Partners v. Permira, et al. (Renaissance Learning Shareholder and Derivative Litigation)*** (W.D. Wis. and Wood Co. Cir. Ct., Wis. Sup. Ct. 2011-2014). Defended Renaissance Learning and its outside directors in state and federal court class and derivative actions against the company, its directors, and the acquiring company to enjoin the proposed merger because of alleged breaches of fiduciary duty by the directors.

- ***TomoTherapy Shareholder Litigation*** (Dane Co. Cir. Ct. 2011). Defended the acquiring company Accuray in consolidated putative shareholder class actions seeking to enjoin Accuray's acquisition of TomoTherapy.

- ***Market Street v. Midwest Air Group, Inc., et al.*** (E.D. Wis. 2007) and ***Garrett v. Midwest Air Group, Inc., et al.*** (Milwaukee Co. Cir. Ct., 2006). Defended putative class actions claiming breach of fiduciary duty against company and its directors in connection with a hostile takeover offer.

- ***Merge Technologies Inc. Derivative and Securities Litigation*** (Milwaukee Co. Cir. Ct., 2007-2008) and (E.D. Wis. 2006-2008). Defended former CEO and CFO of company in federal court putative class action for alleged violation of securities laws and state court derivative action for breach of fiduciary duty.

- ***Aurora Health Care, Inc. v. Wisconsin Physicians Service Insurance Corp.,*** (Milw. Co. Cir. Ct. 2005) Represented Wisconsin's largest domestic health insurer against the largest healthcare provider in the state, challenging the provider's monopolistic conduct and efforts to stifle competition, including through its Preferred Provider Agreements with health insurers.

- ***Lewis v. Straka, et al.*** (C.D. Ill. 2005; E.D. Wis. 2005-2008) Defended putative class action of former CFO in securities action against CIB Marine Bancshares, Inc., its directors and several officers for securities fraud and for indirect, control person liability.

- ***Irani v. Oshkosh B'Gosh Inc., et al.*** (Winnebago Co. Cir. Ct., 2005) Defended putative class action claiming breach of fiduciary duty against company and its directors in connection with an agreement to sell the company.

- ***Shopko Shareholders Litigation*** (Brown Co. Cir. Ct., 2005-2006) Defended consolidated putative class action against company and its directors claiming breach of fiduciary duty in connection with the sale of the company.

- ***SEC v. Heartland Advisors, Inc. et al.*** (E.D. Wis. 2003-2007) Defended client who SEC claimed was alleged "tipee" of an insider of corporate defendant.

- ***Strong Mutual Fund Litigation*** (various federal and state courts, 2003-2010) Defended advisor and fund manager of the Strong mutual fund family in the series of putative class actions and derivative suits arising out of the alleged "market timing" of the funds.

- ***Shopko Securities Litigation*** (E.D. Wis. 2001-2004) Defended consolidated, putative class actions for securities fraud.

- ***Coats v. Viaticals of America, et al.*** (Superior Ct, San Bernadino Co., California 2002) Defended successor to bank charged with securities fraud under California state law in connection with others' sales of viatical settlement contracts.

**Jennifer Gregor, Godfrey & Kahn, S.C.**

Jennifer Gregor is a shareholder in the firm's litigation and intellectual property groups and is the co-chair of the firm's intellectual property litigation practice. Ms. Gregor is experienced in all aspects of trial and pretrial proceedings, as well as appeals. She has significant experience in complex and multi-party cases involving technology and intellectual property, including computer software and working with technical and damages experts. Ms. Gregor serves regularly as the first chair of litigation teams and as co-counsel with other law firms in complex cases.

Ms. Gregor frequently appears in courts across the country, including 46 cases in the Western District of Wisconsin and 16 cases in the Northern District of Illinois. Ms. Gregor frequently appears before Judge Peterson and Judge Conley in the Western District of Wisconsin.

**Court Admissions**

Illinois (2005)
Wisconsin (2010)
United States Courts of Appeal, Seventh and Federal Circuits
United States District Courts, Northern District of Illinois, Eastern District of Texas, Eastern District of Wisconsin, Western District of Wisconsin
United States Supreme Court

**Education**

DePaul University College of Law, J.D. 2005, *summa cum laude*
University of Wisconsin-Madison, B.S. 2000

**Bar and Community Service**

President-Elect, Western District of Wisconsin Bar Association
Seventh Circuit Pattern Jury Instructions Sub-Committee; Copyright and Trademark Instructions
Board of Visitors, University of Wisconsin-Madison College of Agriculture & Life Sciences
Girls on the Run Board Member and Coach

**Representative Complex Litigation Matters**

- ***In re Katz Interactive Call Processing Patent Litigation***, 2:07-ml-01816 (C.D. Cal.). Represented Walmart entities in patent infringement action consolidated into MDL proceeding consisting of 25 individual actions. Technology at issue was software for call center processing.

- ***In re Literary Works in Electronic Databases Copyright Litigation***, MDL No. 1379 (S.D.N.Y.). Represented Wisconsin newspapers as "Participating Publishers" in arbitration proceeding and administration of copyright class action settlement.

- ***Wisconsin Alumni Research Foundation v. Apple Inc.***, No. 14-cv-62-wmc (W.D. Wis.). Two week jury trial in patent infringement case relating to computer technology used in Apple iPhones and iPads. Obtained judgment of more than $506 million.

- ***Essociate, Inc. v. Azoogle.com, Inc.*** Case No. 11-cv-727-bbc (W.D. Wis.), affirmed in Case No. 2013-1446 (Fed. Cir. May 13, 2014). Lead counsel for defendants in software patent litigation. Case resolved in defendants' favor on successful summary judgment motion, affirmed on appeal. Argued the appeal before the Federal Circuit panel.

- ***Lands' End, Inc. v. Genesys Software Systems, Inc.,*** No. 13-cv-38-bbc (W.D. Wis.). Lead counsel for Lands' End in declaratory judgment action in software contract dispute involving copyright and other allegations. Case settled shortly before trial.

- ***Ameritox, Ltd. et al. v. Millennium Health, LLC***, No. 15-cv-31-wmc (W.D. Wis.). Co-counsel to defendant in patent infringement jury trial involving technology for drug testing in various biological samples.

- ***S.C. Johnson & Son, Inc. v. Minigrip, LLC***, No. 16-cv-244-jdp (W.D. Wis.). Commercial dispute involving breach of manufacturing and licensing agreements. Lead counsel for defendant, summary judgment for defendant, case settled on appeal.

- ***Memorial Hospital, Inc. v. NextGen Healthcare Information Systems, Inc. et al***., No. 12-cv-649-slc (W.D. Wis.). Represented plaintiff in case relating to failed software implementation.

- ***Dentsply International Inc. v. American Orthodontics Corp.***, No. 15-cv-1706 (M.D. Pa.); Case IPR2016-01652 before Patent Trial and Appeal Board. Lead counsel for defendant in patent infringement case between competitors in orthodontic device industry. Patent invalidated by USPTO.

- ***POWERbahn, LLC v. Saris Cycling Group, Inc.***, No. 17-cv-03-wmc (W.D. Wis.). Lead counsel for defendant in patent infringement case involving technology for control systems for computerized bicycle trainers.

- ***Epic Systems Corp. v. Yourcareuniverse, Inc. et al.***, No. 15-cv-821-jdp (W.D. Wis.). Co-counsel to defendants in trademark infringement litigation between companies providing electronic health records software. Case resolved on summary judgment in favor of defendants.

- ***Ergo v. Pacific Cycle, Inc.,*** Case No. 09-cv-488 (W.D. Wash.): Lead counsel for defendant. Obtained favorable claim construction ruling in patent lawsuit relating to Schwinn bicycle seat design. Case settled after claim construction.

- ***Northern Trust Corp. v. JPMorgan Chase & Co.,*** No. 08-cv-00297 (N.D. Ill.). Represented defendant, successfully defending against motion for TRO seeking to enjoin commercials to be aired during 2008 Super Bowl.

# APPENDIX E

## RICHARD J. PRENDERGAST, LTD.

ATTORNEYS AT LAW

**Richard J. Prendergast, Ltd. Firm Profile**

Richard J. Prendergast, Ltd. is a litigation law firm founded in 1977 by Richard J. Prendergast. Mr. Prendergast is a former President of the Chicago Bar Association and a Fellow in the American College of Trial Lawyers, the International Academy of Trial Lawyers and the American Academy of Appellate Lawyers.

Our practice involves a broad range of litigation and related services. We have experience in areas such as breach of contract, licensing disputes, anti-trust, restrictive covenants, arbitration, securities, business law, and real estate disputes, as well as personal injury and other torts, among other areas of law. We have litigated cases at both the trial and the appellate levels, in state and federal courts, and before various administrative agencies and commissions. We have tried substantial cases in a variety of areas of the law to juries and judges, and have argued numerous appeals in state and federal appellate courts. In addition to our experience in the courtroom, we have handled matters before arbitration and mediation panels, and we have represented business and individuals in various negotiations and settlements.

Given the breadth of our experience, we have represented a wide array of clients, individual and commercial. We have represented large corporations such as Amgen, Inc., Time Warner Cable, AT&T, Coastal Corp., and Cencorp among others; associations such as the Cable Television and Communications Associations of Illinois; and corporate executives, business leaders, small and local businesses, trade associations, medical groups, and numerous individuals in personal injury cases and other disputes.

Richard J. Prendergast, Ltd. represents a broad range of individuals, business and associations in civil litigation at both the trial and appellate levels, in state and federal courts, as

1

well as specific engagements before administrative agencies and commissions such as the FCC,

the ICC, and the ARDC.

Significant class actions and MDL litigation include: *Will v. United States*, 449 U.S. 200

(1980), a national class action successfully brought on behalf of federal judges; *Squillacote v.*

*United States*, 739 F.2d 1208 (7th Cir. 1984), a national class action successfully brought on behalf

of Senior Executive Employees; *Jorgensen v. Blagojevich,* No. 03 CH 12419 (Ill. Cir. Ct.), a class

action successfully brought on behalf of members of the Illinois Judiciary; *DeAngelis v. Huron*

*Consulting Group,* No. 09-cv-4766 (Cons.) (N.D. Ill.); *In Re Trans Union Corp Privacy Litig.*, No.

00–cv-4729, MDL 1350 (N.D. Ill.); *Birchmeier v. Caribbean Cruise Line, Inc.*, No. 12 C 4069

(N.D. Ill.); *Dailey v. Groupon*, No. 11–cv-5685 (N.D. Ill.); *Underwood v. City of Chicago*, No. 13

CH 17450 (Ill. Cir. Ct.); *City of Chicago v. Korshak*, No. 01 CH 04962 (Ill. Cir. Ct.); *Johnson v.*

*MEABF*, No. 14 CH 20668 (Ill. Cir. Ct.); and *Jones v. MEABF*, No. 14 CH 20027 (Ill. Cir. Ct.).

2

# RICHARD J. PRENDERGAST

**EDUCATION:**     Loyola University (Chicago) - 1968 BBA
Loyola School of Law - 1969 JD

**MILITARY:**     U.S. Army - 1969-1971

**EMPLOYMENT:**     Spray, Price, Hough and Cushman - 1971-1974
U.S. District Court - Law Clerk - Hon. William J. Campbell - 1974-1977

Richard J. Prendergast, Ltd. - 1977- Present

## LAW PRACTICE:

- Principal attorney in the firm of Richard J. Prendergast, Ltd., a law firm of seven attorneys engaged primarily in civil litigation at both the trial and appellate levels, state and federal, as well as specific engagements before administrative agencies and commissions.

- Clients have included a broad range of individuals, business and associations, including The Federal Judges Association; The Cable Television and Communications Association of Illinois; various cable television companies; Amgen Inc.; Rush Presbyterian-St. Luke's Medical Center; Par Pharmaceutical, Inc.; The Pritzker Foundation; various Pritzker related entities; Huron Consulting Group, Inc.; TransUnion Corp.; Olympus Partners, L.P. and related entities; TAG Associates, LLC; Orochem Technologies Inc.; Foster & Foster Consulting Actuaries Inc.; Navistar International Corporation; Aramark Correctional Services Inc.; Groupon, Inc.; Restoration Hardware, Inc.; Gallagher; City of Chicago (pension fund litigation in state and federal court) and numerous other individuals, partnerships and corporations represented in connection with commercial litigation.

- Admitted to practice before the Supreme Court of the United States, the Supreme Court of Illinois, the U.S. Courts of Appeals for the Federal Circuit, the D.C. Circuit, the Seventh Circuit, the Ninth Circuit and the Fifth Circuit, the United States District Courts for the Northern District of Illinois, the Eastern District of Wisconsin and the United States Tax Court.

- Fellow, American College of Trial Lawyers
- Fellow, International Academy of Trial Lawyers
- Fellow, American Academy of Appellate Lawyers
- Fellow, International Society of Barristers

1

- Listed in The Best Lawyers in America (Categories: Commercial Litigation; Bet-The-Company Litigation; Appellate Practice; Securities/Capital Markets Law).

**BOARD MEMBERSHIPS, BAR ACTIVITIES AND RECOGNITIONS:**

- Lawyers Trust Fund of Illinois (Board of Directors, 2007-2014; Vice President, 2011-2014)

- Illinois Board of Admissions to the Bar (President, 1997-1999; Member, 1996-2005)

- Chicago Bar Association

    • President, 1994-1995
    • First Vice-President (President-Elect), 1993-1994
    • Second Vice-President, 1992-1993
    • Member, Board of Managers, 1988-1990

- Celtic Legal Society of Chicago (President, 1999)

- Member, American Bar Association, Chicago Bar Association, Illinois State Bar Association, Illinois Trial Lawyers Association, American Association of Justice, and the Appellate Lawyers Association of Illinois

- Chicago Volunteer Legal Services Foundation (Former Member of Board of Directors)

- Founding member of the Board of Trustees of the Wendy Will Case Cancer Fund

- Illinois Judges Association President's Service Award, 2003

- Justice John Paul Stevens Award, 2017

# APPENDIX F

# SAMUEL ISSACHAROFF

| | |
|---|---|
| New York University School of Law | Home Address |
| 40 Washington Square South | 300 West End Ave. |
| New York, NY 10012 | New York, N.Y. 10023 |
| (212) 998-6580, Fax: (212) 995-4590 | (212) 362-9461 |
| email: si13@nyu.edu | |

## ACADEMIC EXPERIENCE

### New York University School of Law

- Bonnie and Richard Reiss Professor of Constitutional Law  (2005 -   )
- Visiting Professor (2004-2005)

### Harvard Law School

- Samuel Williston Visiting Professor  (Fall 2008)

### Columbia Law School

- Harold R. Medina Professor in Procedural Jurisprudence (2001 - 2005)
- Professor (1999 - 2001)
- Visiting Professor (1998-1999)

### Oxford University

- Astor Visiting Lecturer (June 2005)

### Tel Aviv University

- Visiting Professor (May-June 2006)

### University of Texas School of Law

- Joseph D. Jamail Centennial Chair in Law (1998-1999)
- Charles Tilford McCormick Professor in Law (1994-1998)
- Professor and Preston Shirley Faculty Fellow (1993-94)
- Assistant Professor (1989-1993)

### University of Pennsylvania Law School

- Lecturer in Law  (1986-1989)

### Gerzensee Center for Law and Economics, Switzerland

- Visiting Lecturer on Constitutional Law  (May 2008)

1

*University of Toronto School of Law*

·        Full Professor Status Only (2011- 2014) (Dissertation reviewer)

*University of Melbourne School of Law*

·        Senior Fellow (2011)

*Courses Taught*: Civil Procedure, Employment Law, Law of Democracy, Constitutional Law, Comparative Constitutional Law, Complex Litigation, Legal Process**,** Profession of Law

## EDUCATION

*Yale Law School, J.D. 1983*
·        Editor, Yale Law Journal.

*Graduate Center, City University of New York*
·        Graduate studies in Labor History (1976-77); University Fellowship.

*Universite de Paris, 1975-76*

*State University of New York at Binghamton, B.A.  1975*
·        Major in History.

## PROFESSIONAL EXPERIENCE

·        ***Guerrieri, Edmond & James***, *Washington, D.C.* (1988-1989)
Of counsel, handling special litigation for labor law firm.

·        ***Lawyers' Committee for Civil Rights Under Law,*** *Washington, D.C.* (l985-1988)
Staff attorney with Voting Rights Project (served as Acting Director of Voting Rights Project, 1985-86). Conducted voting rights litigation and other civil rights case work throughout the U.S.

·        ***Kirschner, Walters, Willig, Weinberg & Dempsey,*** *Associate, Phila., PA.* (l985)
Union labor law practice representing public and private employees in court, arbitration and administrative proceedings.

·        ***Lawyers' Committee for International Human Rights*** (l984)
Received J. Roderick MacArthur Fellowship to represent Lawyers' Committee in Argentina and Uruguay.  Worked with Centro de Estudios Legales y Sociales in Buenos Aires on issues concerning transition from dictatorship to civilian government and prosecutions of former military rulers.

·        ***United States Court of Appeals for the Third Circuit*** (l983-84)
Law Clerk to Honorable Arlin M. Adams.

2

## PUBLICATIONS

**Articles**

·   *Democracy's Deficits,* 85 U. Chicago L. Rev. 485 (2018).

·   *Die Defizite Der Demokratie,* 56 Der Staat 1-27 (2017)(overlapping German translation).

·   *What Is Puerto Rico?,* _____ 94 Indiana L.J. ___ (forthcoming, 2018) (with Alexandra Bursak, Russell Rennie & Alec Webley).

·   *Participatory Class Actions,* 92 N.Y.U. L. Rev. 846 (2017) (with Elizabeth J. Cabraser).

·   *Outsourcing Politics: The Hostile Takeover of Our Hollowed Out Political Parties,* 54 Houston L. Rev. 845 (2017).

·   *Tribute to Judge Jack B. Weinstein,* 72 N.Y.U. Ann. Surv. Am. L. 19 (2017).

·   *Voter Welfare: An Emerging Rule of Reason in Voting Rights Law,* 92 Ind. L. J. 299 (2016).

·   *Living to Fight Another Day: Judicial Deferral in Defense of Democracy,* 2016 Wisc. L. Rev. 683 (with Rosalind Dixon).

·   *Constitutional Implications of the Cost of War*, 83 U. Chicago L. Rev. 169 (2016) (with Lucas Issacharoff)

·   *Voting Rights at 50,* 67 Ala. L. Rev. 387 (2016).

·   *Ballot Bedlam,* 64 Duke L. J. 1363 (2015).

·   *The Australian Alternative: A View From Abroad of Recent Developments in Securities Class Actions,* 34 U. New South Wales L. Rev. 179 (2015) (with Thad Eagles).

·   *Constitutional Courts and Consolidated Power,* 62 Am. J. Comp. L. 585 (2014).

·   *The Democratic Risk to Democratic Transitions,* 5 Constit. Court Rev. 1 (2014).

·   *The BP Oil Spill Settlement and the Paradox of Public Litigation ,* 74 L.S.U. L. Rev. 397 (2014) (with D. Theodore Rave).

·   *Market Intermediaries in the* Post-Buckley *World,* 89 NYU L. Rev. Online 105 (2014)

·   *Litigation Funding and the Problem of Agency Cost in Representative Actions,* 66 DePaul L. Rev. 561 (2014).

·   *Beyond the Discrimination Model on Voting,* 127 Harv. L. Rev. 95 (2013).

·   *Assembling Class Actions,* 90 Wash. U. L. Rev. 699 (2013).

- *Targeted Warfare: Individuating Enemy Responsibility,* 88 N.Y.U. L. REV 1521 (2013) (with Richard H. Pildes)

- *The Governance Problem in Aggregate Litigation,* 81 FORDHAM L. REV. 3165 (2013).

- *An Information Forcing Approach to the Motion to Dismiss,* J. LEGAL ANALYSIS (June 5, 2013) http://jla.oxfordjournals.org/content/early/2013/06/05/jla.lat002.full. (with Geoffrey P. Miller).

- *Special Interests After* Citizens United: *Access, Replacement, and Interest Group Response to Legal Change,* 9 ANNUAL REV. L. & SOC. SCIENCE 185 (2013) (with Jeremy Peterman).

- *Federalized America: Reflections on* Erie v. Tompkins *and State-Based Regulation,* 10 J. ECON. LAW & POL'Y 199 (2013).

- *Prologue: Argentina's Electoral Reforms,* 11 ELECTION L. J.529 (2012).

- *Fairness in Aggregation,* 9 U.S.-CHINA L. REV. 477 (2012).

- *Class Actions and State Authority,* 44 LOY. U. CHI. L. J.370 (2012).

- *Acciones de Clase y Autoridad Estatal,* 219 REVISTA DE PROCESSO.153 (2013)(Brazil, translation).

- *10 X 10,* 10 INT'L J. CONSTIT. L. 778 (2012).

- *Clarity About Super PACs, Independent Spending, and Citzens United, 2* J.L.469 (2012).

- *Disclosure, Agents, and Consumer Protection,* 167 J. OF INSTITUTIONAL & THEORETICAL ECON. 56 (2011)

- *Constitutional Courts and Democratic Hedging,* 99 GEORGETOWN L. J. 961 (2011)

- *On Political Corruption,* 124 HARV. L. REV. 118 (2010)

- *Judging in Times of the Extraordinary?,* 47 HOUSTON L. REV. 533 (2010)

- Citizens United *and the American Law of Party Funding,* 30 QUADERNI CONSTITUZIOANLI 392 (2010) (in Italian)

- *Pragmatic Originalism?,* 5 N.Y.U. J. OF LAW & LIBERTY 517 (2010)

- *The Public Value of Settlement,* 78 FORDHAM L. REV. 1177 (2009) (with Robert H. Klonoff).

- *Political Safeguards in Democracies at War,* 2009 OXFORD J. LEGAL STUDIES 1

- *The Constitutional Logic of Campaign Finance Regulation,*36 PEPPERDINE. L. REV. 373 (2009).

- *Will Aggregate Litigation Come to Europe?,* 62 VANDERBILT L. REV. 179 (2009) (with Geoffrey P. Miller).

- *Private Claims, Aggregate Rights.* 2008 SUPREME COURT REV. 183

- *Meriwether Lewis, the Air Force, and the Surge: The Problem of Constitutional Settlement*, 12 LEWIS & CLARK L. REV. 649 (2008).

- *Class Action Settlements Under Attack,* 156 U. PENN L. REV. 1649 (2008)(with Richard.A Nagareda).

- *Democracy and Collective Decisionmaking,,* 6 INT'L J. CONSTITUTIONAL LAW 231 (2008).

- *Fragile Democracies,* 120 HARV. L. REV. 1405 (2007).

- *Protected from Politics: Diminishing Margins of Electoral Competition in U.S. Congressional Elections,* 68 OHIO ST. L. REV. 1121 (2007)(with Jonathan Nagler).

- *Regulating After The Fact,* 56 DEPAUL L. REV. 375 (2007).

- *Backdoor Federalization,* 53 UCLA L. REV. 1353 (2006)(with Catherine M. Sharkey).

- *Credit Card Accountability,* 73 UNIV. CHICAGO L. REV.157 (2006)(with Erin F. Delaney).

- *Settled Expectations in a World of Unsettled Law,* 106 COLUM. L. REV. 1839 (2006).

- *Getting Beyond Kansas,* 74 UMKC L. REV. 613 (2006).

- *Law, Rules and Presidential Selection,* 120 POLITICAL SCIENCE QUARTERLY 113(2005).

- *Collateral Damage: The Endangered Center in American Politics,* 46 WILLIAM & MARY L. REV. 415 (2004).

- *The American Law of Repose,* 23 CIVIL JUSTICE QUARTERLY 324 (2004).

- *Where to Draw the Line: Judicial Review of Political Gerrymanders,* 153 PENN L. REV. 541 (2004)(with Pamela S. Karlan).

- *The Elusive Search for Constitutional Integrity: A Memorial for John Hart Ely,* 57 STANFORD L. REV.727 (2004).

- *Is Section 5 of the Voting Rights Act a Victim of Its Own Success?,* 105 COLUM. L. REV. 1710 (2004).

- *The Inevitability of Aggregate Settlements: An Institutional Account of American Tort Law,* 57 VANDERBILT L. REV.1571 (2004)(with John Fabian Witt).

- *Constitutionalizing Democracy in Fractured Societies,* 82 TEXAS L. REV. 1861 (2004).

- *Constitutionalizing Democracy in Fractured Societies,* 58 JOURNAL OF INTERNATIONAL AFFAIRS 73 (2004)(version of prior entry).

- *Throwing in the Towel: The Constitutional Morass of Campaign Finance,* 3 ELEC. L. J. 259 (2004).

- *Emergency Contexts Without Emergency Powers: The United States' Constitutional Approach to*

5

Rights During Wartime, 2 INT'L JOURNAL OF CONSTITUTIONAL LAW 296 (2004)(with Richard H. Pildes).

· Between Civil Libertarianism and Executive Unilateralism: An Institutional Process Approach to Rights During Wartime, 5 THEORETICAL INQUIRIES IN LAW 1 (2003)(with Richard H. Pildes)(overlaps with prior article).

· Owen Fiss and the Warren Court Legacy: Politics, Law, and the Struggle for Equal Protection, 58 MIAMI. L. REV. 35 (2003)(with Pamela S. Karlan).

· The Enabling Role of Democratic Constitutionalism: Fixed Rules and Some Implications for Contested Presidential Elections, 81 TEX. L. REV. 1985 (2003).

· Regulation for Conservatives: Human Decision Making and the Case for "Asymmetric Paternalism," 151 PENN. L. REV. 1211 (2003)(with Colin Camerer, George Loewenstein, Ted O'Donoghue, and Matthew Rabin).

· Gerrymanders and Political Cartels, 116 HARV. L. REV. 593 (2002).

· Why Elections?, 116 HARV. L. REV. 684 (2002).

· Preclusion, Due Process, and the Right to Opt Out of Class Actions, 77 NOTRE DAME L. REV. 1057 (2002)

· The Content of Our Casebooks: Why Cases Get Litigated, 29 FL. ST. L. REV. 1265 (2002).

· The Two Sides of Freedom of Expression, 1 REVISTA DE DERECHO 79 (Universidad de Montevideo – 2002).

· "Shocked": Mass Torts and Aggregate Asbestos Litigation After Amchem and Ortiz, 80 U. TEX. L. REV. 1925 (2002).

· Law and Misdirection in the Debate Over Affirmative Action, 2002 UNIV. CHI. LEGAL FORUM 11.

· The Difficult Path From Observation to Prescription, 77 N. Y. U. L. REV 36 (2002).

· Behavioral Decision Theory at the Court of Public Law, 87 CORNELL L. REV. 671 (2002).

· Political Judgments, 68 U. CHI. L. REV. 637 (2001).

· Can Process Theory Constrain Courts?, 72 U. COL. L. REV. 923 (2001)(with Michael C. Dorf).

· Race and Campaign Finance Reform, 79 N. CAR. L. REV. 1523 (2001).

· Private Parties With Public Purposes: Political Parties, Associational Freedoms, and Partisan Competition, 101 COLUM. L. REV. 274 (2001).

· Introduction to Symposium: The Structures of Democratic Governance, 100 COLUM. L. REV. 593 (2000).

6

·  *Oversight of Regulated Political Markets,* 24 HARV. J. L & PUB. POL'Y 91 (2000).

·  *The Vexing Problem of Reliance in Consumer Class Actions,* 74 TULANE. L. REV. 1633 (2000).

·  *Discrimination with a Difference: Can Employment Discrimination Law Accommodate the Americans with Disabilities Act?,* 79 NORTH CAROLINA L. REV. 307 (2001)(with Justin Nelson).

·  *Governance and Legitimacy in the Law of Class Actions*, 1999 SUPREME COURT REVIEW 187.

·  *The Hydraulics of Campaign Finance Reform,* 77 TEX. L. REV. 1705 (1999)(with Pamela Karlan).

·  *Governing through Intermediaries,* 85 VIRGINIA L. REV. 1627 (1999)(with Daniel Ortiz).

·  *Group Litigation of Consumer Claims: Lessons of the American Experience,* 34 TEX. INT'L L. J. 135 (1999).

·  *Not By 'Election Law' Alone,* 32 LOYOLA L. REV. 1173 (1999)(with Richard Pildes).

·  *Standing and Misunderstanding in Voting Rights Law,* 111 HARV. L. REV. 2276 (1998)(with Pamela Karlan).

·  *Can Affirmative Action Be Defended?,* 59 OHIO ST. L. J. 669 (1998).

·  *Can There Be a Behavioral Law and Economics?,* 51 VANDERBILT L. REV. 1729 (1998).

·  *Politics as Markets:  Partisan Lockups of the Democratic Process,* 50 STANFORD L. J. 643 (1998)(with  Richard Pildes).

·  *Creating Convergence: Debiasing Biased Litigants*, 22 J. OF LAW AND SOCIAL INQUIRY 913 (1998)(with Linda Babcock and George Loewenstein).

·  *Is Age Discrimination Really Age Discrimination?: The ADEA's Unnatural Solution,* 72 N.Y.U. L. REV. 780 (1997)(with Erica Worth Harris).

·  *Class Action Conflicts,* 30 U. C. DAVIS L. REV. 805 (1997).

·  *Racial Gerrymandering in a Complex World: A Reply to Judge Sentelle,* 45 CATH. U. LAW REV. 1257 (1996).

·  *The Constitutional Contours of Race and Politics*, 1995 SUPREME COURT REVIEW 45.

·  *Contracting For Employment: The Limited Return of the Common Law*, 74 TEXAS LAW REVIEW 1783 (1996).

·  *Identifying the Harm in Racial Gerrymandering Claims*, 1 MICH. J. OF RACE & LAW 47 (1996)(with Thomas C. Goldstein).

·  *Supreme Court Destabilization of Single-Member Districts*, 1995 UNIV. OF CHICAGO LEGAL FORUM 205.

7

· *Unintended Consequences of Mandatory Disclosure*, 73 TEXAS L. REV. 753 (1995)(with George Loewenstein).

· *Groups and the Right to Vote*, 44 EMORY L. J. 869 (1995)

· *Women and the Workplace: Accommodating the Demands of Pregnancy*, 95 COL. L. REV. 2154 (1994)(with Elyse Rosenblum).

· *Race and Redistricting: Drawing Constitutional Lines after Shaw v. Reno*, 92 MICHIGAN LAW REVIEW 588 (1993)(with T. Alexander Aleinikoff).

· *Biased Judgments of Fairness in Bargaining*, 85 AMERICAN ECONOMIC REVIEW 1337 (1995)(with L. Babcock, G. Loewenstein, and C. Camerer).

· *Judging Politics: The Elusive Quest for Judicial Review of Political Fairness,* 71 TEXAS LAW REVIEW 1643 (1993).

· *Source Dependence in the Valuation of Objects*, 7 JOURNAL OF BEHAVIORAL DECISIONMAKING 157 (1994)(with G. Loewenstein)

· *Polarized Voting and the Political Process: The Transformation of Voting Rights Jurisprudence*, 90 MICH. L. REV. 1833 (1992).

· *When Substance Mandates Procedure: Martin v. Wilks and the Rights of Vested Incumbents in Civil Rights Consent Decrees*, 77 CORNELL L. REV. 189 (1992).

· *Self-Serving Assessments of Fairness and Pretrial Bargaining*, 22 JOURNAL OF LEGAL STUDIES 135 (1992)(with George Loewenstein, Colin Camerer, Linda Babcock).

· *The Census Undercount and Minority Representation: The Constitutional Obligation of the States to Guarantee Equal Representation*, 13 REVIEW OF LITIGATION 1 (1993)(with Allan J. Lichtman).

· *Administering Damage Awards in Mass-Tort Litigation*, 10 REV. OF LITIG. 463 (1991).

· *Black/White Voter Registration Disparities in Mississippi: Legal and Methodological Issues in Challenging Bureau of Census Data*, 7 J. LAW & POLITICS 525 (1991)(with Allan J. Lichtman).

· *Second Thoughts About Summary Judgment*, 100 YALE L.J. 73 (1990)(with George Loewenstein).

· *Dictatorship on Trial: Prosecution of Human Rights Violations in Argentina,* 10 YALE J. INT'L LAW 118 (1985) (with E. Mignone and C. Estlund).

· *Note, Making the Violation Fit the Remedy: The Intent Standard and Equal Protection Law*, 92 YALE L.J. 328 (1982).

### *Review Essays*

· *Bearing the Costs*, Review of M. Kelman, STRATEGY OR PRINCIPLE?: THE CHOICE BETWEEN REGULATION AND TAXATION, 53 STAN. L. REV. 519 (2000).

8

·   *Contractual Liberties in Discriminatory Markets*, Review of R. Epstein, FORBIDDEN GROUNDS, 70 TEX. L. REV. 1219 (1992).

·   *Reconstructing Employment*, Review of P. Weiler, GOVERNING THE WORKPLACE: THE FUTURE OF LABOR AND EMPLOYMENT LAW, 104 HARV. L. REV. 607 (1990).

**Books**

·   FRAGILE DEMOCRACIES: CONTESTED POWER IN THE ERA OF CONSTITUTIONAL COURTS (Cambridge Univ. Press, 2015).

·   CIVIL PROCEDURE (Foundation Press, 2005).

·   CIVIL PROCEDURE (Foundation Press, 2d. edition, 2008).

·   CIVIL PROCEDURE (Foundation Press, 3d. edition, 2011).

·   CIVIL PROCEDURE (Foundation Press, 4th edition, 2017).

·   THE LAW OF DEMOCRACY: LEGAL STRUCTURE OF THE POLITICAL PROCESS (with Pamela Karlan and Richard Pildes)(Foundation Press, 1998).

·   THE LAW OF DEMOCRACY: LEGAL STRUCTURE OF THE POLITICAL PROCESS (with Pamela Karlan and Richard Pildes)(Foundation Press, 2d. edition, 2001).

·   THE LAW OF DEMOCRACY: LEGAL STRUCTURE OF THE POLITICAL PROCESS (with Pamela Karlan and Richard Pildes)(Foundation Press, 3d. edition, 2007).

·   THE LAW OF DEMOCRACY: LEGAL STRUCTURE OF THE POLITICAL PROCESS (with Pamela Karlan and Richard Pildes)(Foundation Press, 4th. edition, 2012).

·   THE LAW OF DEMOCRACY: LEGAL STRUCTURE OF THE POLITICAL PROCESS (with Pamela Karlan, Richard Pildes, and Nathaniel Persily)(Foundation Press, 5th. edition, 2016).

·   WHEN ELECTIONS GO BAD: THE LAW OF DEMOCRACY AND THE PRESIDENTIAL ELECTION OF 2000 (with Pamela Karlan and Richard Pildes)(Foundation Press, 2001).

·   WHEN ELECTIONS GO BAD: THE LAW OF DEMOCRACY AND THE PRESIDENTIAL ELECTION OF 2000 (with Pamela Karlan and Richard Pildes)(Foundation Press, 2d. edition, 2001).

·   PARTY FUNDING AND CAMPAIGN FINANCING IN INTERNATIONAL PERSPECTIVE (with K.D. Ewing) (Hart Press, Oxford, 2006).

**Book Chapters**

· *Populism versus Democratic Governance,* in CONSTITUTIONAL DEMOCRACY IN CRISIS?, (Mark Graber, Sanford Levinson and Mark Tushnet, eds., Oxford University Press, forthcoming 2018).

· *What Does the Supreme Court Do?,* in U.S. CONSTITUTIONAL LAW IN THE OBAMA ERA: A TRANSATLANTIC PERSPECTIVE (Anna-Bettina Kaiser, Niels Petersen & Johannes Saurer, eds., Routledge, forthcoming 2018).

· *Embattled Democracy,* in TBD (Kiron Skinner & Russell Berman, eds., Hoover Press, forthcoming 2018).

· *Collective Action and Class Action,* in THE CLASS ACTION EFFECT: FROM THE LEGISLATOR'S IMAGINATION TO TODAY'S USES AND PRACTICES, (Catherine Piché, ed., Éditions Yvon Blais, forthcoming 2018).

· *Comparative Constitutional Law as a Window on Democratic Institutions,* in MODERN COMPARATIVE CONSTITUTIONAL LAW (Rosalind Dixon & Erin F. Delaney, eds., forthcoming 2018).

· *Due Process in Law,* in INTERNATIONAL ENCYCLOPEDIA OF THE SOCIAL & BEHAVIORAL SCIENCES, 2nd ed. 696 (James D. Wright, ed., Oxford: Elsevier, 2015).

· *Citizens United y la Regulacion del Financiamento a Partidos Politicos en los Estados Unidos de American,* in SENTENCIAS RELEVANTES DE CORTES EXTRANJERAS 153 (Tribunal Electoral del Poder Judicial de la Federacion, Mexico, 2013).

· *Drones and the Dilemma of Modern Warfare*, in DRONES AND THE PROMISE OF LAW: HOW ADVANCES IN MILITARY TECHNOLOGY ARE TRANSFORMING ARMED CONFLICT AND CHALLENGING POLICY AND PRACTICE (P. Bergen & D. Rothenberg, eds) (Cambridge Univ. Press, 2014) (with Richard H. Pildes).

· *Epilogue: Bush v. Gore and the Constitutional Right to Vote,* in ELECTION ADMINISTRATION IN THE UNITED STATES: THE STATE OF REFORM AFTER BUSH V. GORE (M. Alvarez & B. Grofman, eds) (Cambridge Univ. Press, 2014) (with Richard H. Pildes).

· *Due Process in Law,* in INTERNATIONAL ENCYCLOPEDIA OF SOCIAL AND BEHAVIORAL SCIENCES, 2nd Ed. (Forthcoming 2015).

· *Managing Conflict Through Democracy,* in RIGHTS IN DIVIDED SOCIETIES COMPARADO 33 (Harvey & Schwartz, eds) (Hart Publishing 2012).

· *Antidiscrimination in Employment: The Simple, the Complex, and the Paradoxical,* in RESEARCH HANDBOOK ON THE ECONOMICS OF LABOR AND EMPLOYMENT LAW 385 (C. Estlund & M. Wachter, eds) (Edward Elgar Press 2012) (with E. Scharff).

· *Fairness in Aggregation,* in PROCESOS COLECTIVOS/CLASS ACTIONS: PROCEEDINGS OF 1ST INTERNATIONAL CONFERENCE ON PROCEDURAL LAW 31 (2012).

· *The Majoritarian Threat to Democracy: Constitutional Courts and the Democratic Pact*, in MAJORITY POLITICS 236 (S. Novak & J. Elster, eds) (2014).

· *Will Aggregate Litigation Come to Europe?,* in THE LAW AND ECONOMICS OF CLASS ACTIONS IN EUROPE: LESSONS FROM AMERICA 37 (J. Backhaus, A Cassone & G. Ramello eds) (2012) (with Geoffrey Miller).

· *Party Funding and Campaign Finance Law in the United States*, in LA RESOLUCION DE LOS CONFLICTOS ELECTORALES: UN ANALISIS COMPARADO, (P. Biglino Campos & L. Delgado del Rincon, eds) (2010).

· *Facts, Investigation and the Role of Discovery,* in LITIGATION IN ENGLAND AND GERMANY: LEGAL PROFESSIONAL SERVICES, KEY FEATURES AND FUNDING 39 (P. Gottwald, ed)(2010).

· *Aggregating Private Claims,* in LITIGATION IN ENGLAND AND GERMANY: LEGAL PROFESSIONAL SERVICES, KEY FEATURES AND FUNDING 63 (P. Gottwald, ed)(2010).

· *The Institutional Dimension of Consumer Protection,* in NEW FRONTIERS OF CONSUMER PROTECTION: COMBINING PRIVATE AND PUBLIC ENFORCEMENT (F. Cafaggi & H.-W. Micklitz, eds) (2009)(with Ian Samuel).

· *Democracy and Electoral Processes,* in RESEARCH HANDBOOK ON LAW AND PUBLIC CHOICE 173 (D. Farber & A. J. O'Connell, eds) (2010)(with Laura E. Miller).

· *A Cosmopolitan Judge for a Cosmopolitan Era: An Essay in Honor of Carl Baudenbacher,* in ECONOMIC LAW AND JUSTICE IN TIMES OF GLOBALIZATION: FESTSCHRIFT FOR CARL BAUDENBACHER 131 (M. Monti, N. Liechtenstein, B. Vesterdorf, J. Westbrook, L. Wildhaber, eds)(2007).

· *Supreme Court Preemption: The Contested Middle Ground of Products Liability*, in FEDERAL PREEMPTION: STATES' POWERS, NATIONAL INTEREST 194 (Richard A. Epstein & Michael S. Greve, eds.) (2007) (with Catherine Sharkey).

· *Does Section 5 of the Voting Rights Act Still Work?*, in THE FUTURE OF THE VOTING RIGHTS ACT (D. Epstein, R. Pildes, R. de la Garza, S. O'Halloran, eds., Russell Sage, 2006).

· *Compensation for the Victims of September 11* in THE HANDBOOK OF REPARATIONS (P. De Grieff, ed., Oxford 2006) (with Anna Morawiec Mansfield).

· *Legal Regulation of Conflict of Interest*, in CONFLICTS OF INTEREST: PROBLEMS AND SOLUTIONS IN LAW, MEDICINE, AND ORGANIZATIONAL SETTINGS (M. Bazerman, G. Loewenstein, & D. Moore, eds., Cambridge Univ. Press, 2005).

· *Baker v. Carr in Context*, in CONSTITUTIONAL LAW STORIES 297-323 (M. Dorf, ed., Foundation Press, 2004) (with Stephen Ansolabehere).

· *Due Process in Law*, in INTERNATIONAL ENCYLOPEDIA OF SOCIAL AND BEHAVIORAL SCIENCES 3894-97 ( Elsevier Ltd., 2001) (2d ed. 2012).

· *Too Much Lawyering, Too Little Law*, in THE REFORM OF CIVIL PROCEDURE, (A.A.S. Zuckerman & R. Cranston, eds., Oxford Univ. Press, 1995).

· *Bargaining Impediments and Settlement Behavior* (with Charles Silver and Kent Syverud), in DISPUTE RESOLUTION: BRIDGING THE SETTLEMENT GAP, Anderson, ed., JAI Press, 1996).

· *The Redistricting Morass*, in AFFIRMATIVE ACTION AND REPRESENTATION, (A. Peacock, ed., Carolina Acad. Press, 1997).

· *Litigating for Equality of Political Opportunity*, in J. Lobel, ed., CIVIL RIGHTS LITIGATION AND ATTORNEY FEES ANNUAL HANDBOOK (Clark, Boardman, 1987).

### Reports, Other Publications, and Current Manuscripts

· "The Frayed Pillars of Democracy," Defining Ideas, Hoover Institute, http://www.hoover.org/research/frayed-pillars-democracy, May 10, 2017.

· "Safeguarding Democratic Instituttions," Verfassungsblog Debated on Constitutional Courts and Populism, http://verfassungsblog.de/safeguarding-democratic-institutions/ April 28, 2017.

· "Plebiscite Options on the Status of Puerto Rico," Report prepared for the Governor of Puerto Rico and the Partido Popular Democrático October 8, 2015 (Updated February 6, 2016).

· "It's Still a Struggle," REVIEW OF ARI BERMAN, GIVE US THE BALLOT: THE MODERN STRUGGLE FOR VOTING RIGHTS IN AMERICA, The American Prospect, Fall 2015, at 92.

· "Keep Shining the Light on 'Dark Money,'" POLITICO (April 12, 2015) (with Robert F. Bauer)

· "The Future of Voting Rights 17 N.Y.U. J. LEGIS. & PUB.POL'Y (2014) (symposium contribution).

· "Where Parties Get Their Money From" The Indian Express, June 7, 2013.

· "Iraq and Afghanistan, Who Is an Enemy Combatant?" Los Angeles Times, June 4, 2010.

· "Fear Not, Critics of *Citizens United,* A Constitutionally Tested Solution is at Hand*,"* American Lawyer, April 2010.

· "Party Funding and Campaign Finance Law in the United States," Report for the Venice Commission of the Council of Europe (2009).

· "The Impact of Politics and Constitutional Law on Mass Litigation: The Evolution of Civil Liability in the U.S. and Beyond," 12th International Liability Forum 14 (Munich Re Group) (2008).

· "The Law of Politics," 95 GEO. L. J. 1369 (2007).

· "Declarative Sentences: Congress Has the Power to Make and End War – Not Manage It," SLATE MAGAZINE, March 5, 2007 (with Noah Feldman).

· "Create a National Voter Registration List," BOSTON REVIEW, Vol. 31, No. 5, Sept-Oct. 2006, at 21.

12

· "Democracy Isn't Built On One Election Alone," WASHINGTON POST, Jan. 23, 2005, at B01.

· "In Real Elections, There Ought to Be Competition," NEW YORK TIMES, Feb. 16, 2002, at A19.

· "The Court's Legacy for Voting Rights," NEW YORK TIMES, DEC. 14, 2000, at A39.

· "Charles Alan Wright: The Scholar as Lawyer," in A TRIBUTE: CHARLES ALAN WRIGHT, THE MAN AND THE SCHOLAR (2000).

· "Due Process," INTERNATIONAL ENCYCLOPEDIA OF THE SOCIAL AND BEHAVIORAL SCIENCES (2000).

· "Political Fairness and Judicial Review," ENCYCLOPEDIA OF THE AMERICAN CONSTITUTION (1998).

· "The Census and the Constitution," ENCYCLOPEDIA OF THE AMERICAN CONSTITUTION (1998).

· "Electoral Districting, Fairness and Judicial Review," ENCYCLOPEDIA OF THE AMERICAN CONSTITUTION (1998).

· "Age Discrimination," ENCYCLOPEDIA OF THE AMERICAN CONSTITUTION (1998)(with E. Harris).

· "The Destruction of Public Funding," TEXAS LAWYER, May 12, 1997, at 20 (with David Horan).

· "All for One," THE NEW REPUBLIC, Nov. 18, 1996, at 10 (with Richard Pildes).

· "No Place for Political Gerrymandering," TEXAS LAWYER, Aug. 5, 1996 (with Richard Pildes).

· "Should There Be Rules of Procedure?," Leiden University, Institute of Anglo-American Law, Clifford Chance Distinguished Lecture Series (Feb. 1995).

· "Conference: The Supreme Court, Racial Politics, and the Right to Vote: *Shaw v. Reno* and the Future of the Voting Rights Act, 44 AMERICAN UNIV. L. REV. 1 (1994).

· "A Highly Visible Bloodletting," AUSTIN AMERICAN STATESMAN, Oct. 2, 1994 (Op-ed piece on redistricting).

· "Race and Redistricting," 2 RECONSTRUCTION, No. 3 (1994).

· "The State of Voting Rights Law," 3 ISSUES IN NATIONAL AFFAIRS No. 1 (1993)(Paper prepared for the American Jewish Committee).

· "Remedial Options for the Selection of the Texas Judiciary," Report prepared for settlement negotiations in *LULAC/Houston Lawyers' Association v. State of Texas*, Jan. 14, 1993,

· "Adjusting Census Data For Reapportionment: An Independent Role for the States," TEXAS LAWYER, March 18, 1991 (with A. Lichtman).

· "The 37.5 Percent Solution: 'Limited Voting' Could Rescue Judiciary," TEXAS LAWYER, March 5, 1990.

· "The Texas Judiciary and the Voting Rights Act: Background and Options," Report prepared for the Texas Policy Research Forum (1989).

· "The Generals Give Back Uruguay," Human Rights Report of the Lawyers' Committee for International Human Rights (1985)(with C. Estlund).

## AMERICAN LAW INSTITUTE

· Reporter, Principles of the Law: Aggregate Litigation (2010)

## SELECTED LECTURES

· UNIVERSITY OF HOUSTON SCHOOL OF LAW, THE FRANKEL ENDOWED LECTURE, November 4, 2016: *Outsourcing Politics: The Hostile Takeover of Our Hollowed-Out Political Parties*

· INDIANA UNIVERSITY SCHOOL OF LAW, THE JEROME HALL ENDOWED LECTURE, February 18, 2016: *The Emerging Rule of Reason in Voting Rights Law*

· DUKE UNIVERSITY SCHOOL OF LAW, THE BRAINERD CURRIE MEMORIAL LECTURE, February 19, 2014: *Ballot Bedlam*

· UNIVERSITY OF HOUSTON LAW CENTER, THE JOHN R. BROWN MEMORIAL LECTURE, March 1, 2010: *Judging in the Time of the Extraordinary*

· BROWN UNIVERSITY, THE JANUS LECTURE, September 17, 2008: *Was the New Deal A Good Deal? New Deal Constitutionalism Reexamined*

· OXFORD UNIVERSITY, THE HART MEMORIAL LECTURE, May 6, 2008: *Democracy in Times of War*

· LEWIS & CLARK LAW SCHOOL, HIGGINS LECTURE, March 19, 2008: *Meriwether Lewis, the Air Force, and the Surge: The Problem of Constitutional Settlement*

· DRAKE LAW CENTER CONSTITUTIONAL LAW DISTINGUISHED LECTURE, November 8, 2007: *Democracy at War*

· JULIUS ROSENTHAL FOUNDATION SERIES LECTURES, Northwestern University School of Law, March 28 and 29, 2007: *Fragile Democracies,* and *Contested Visions of Democracy*

· ASTOR VISITING LECTURE, Oxford University, June 8, 2005: *When Rights Break Down: U.S. Constitutional Responses in Times of National Security Crisis.*

· JAMES GOULD CUTLER LECTURE, William and Mary University School of Law, Feb. 19, 2004: *The Endangered Center in American Politics.*

· SIBLEY LECTURE, University of Georgia School of Law, March 16, 2000: *Political Parties, the Constitution and Democratic Competition.*

14

· MASON LADD LECTURE, Florida State University School of Law, March 15, 2000: *Why Do Cases Get Litigated?*

## SELECTED PROFESSIONAL ACTIVITIES

· SENIOR LEGAL COUNSEL, Obama for America Campaign, 2008, 2012.

· FELLOW, American Academy of Arts and Sciences.

· COUNCIL, American Law Institute.

· REPORTER, Principles of Aggregate Litigation, American Law Institute.

· MEMBER, Editorial Board, Foundation Press.

· MEMBER, Advisory Committee Anxiety of Democracy Program, Social Science Research Council.

· CO-CHAIR, Working Group on Security, Anxiety of Democracy Program, Social Science Research Council.

· BOARD OF DIRECTORS, Brennan Center for Justice at NYU School of Law, 2006-2011.

· INTERNATIONAL ADVISORY BOARD, CIPPEC – Centro de Implementación de Políticas Públicas para la Equidad y el Crecimiento, Buenos Aires, Argentina, 2012-present.

· FUTURE CLAIMS REPRESENTATIVE, Bankruptcy Trust of TH Agriculture and Nutrition, Inc, Representative for future asbestos claimants in $900 million bankruptcy trust.

· ADVISOR, Restatement Third Employment Law, American Law Institute.

· MEMBER, Judicial Selection Task Force of the Texas Commission on Judicial Efficiency (1995-1997).

· LEGAL CONSULTANT, National Research Council, Panel on Census Requirements in the Year 2000 and Beyond (1993-1995).

· COUNSEL, *Travelers v. Bailey,* U.S. Supreme Court, 2009. Argued for Respondents.

· CONSULTANT, State of Florida, *Johnson v. DeGrandy*, (1994) (Florida legislative redistricting litigation).

· COUNSEL to State of Texas for 1992 Redistricting in *Richards v. Terrazas*, No. 91-1270 (U.S. Supreme Court), and *Texas v. United States*, No. 91-2383 (D.D.C.). (1992-1993).

· SPECIAL MASTER TASKFORCE for Eastern District of Texas Asbestos Litigation, *Cimino v. Raymark Industries, Inc.*, 751 F.Supp. 649 (E.D. Tex. 1990). (1989-1990).

· BOARD OF DIRECTORS, Lawyers' Committee for Civil Rights Under Law of Texas. (1991-1995); Executive Committee of the Board of Directors (1993-1995).

· COUNSEL to State of Texas and University of Texas Law School in *Hopwood v. State of Texas and Regents of the University of Texas System*, No. 92 CA 563 (W.D. Texas, 1992)(challenge to School of Law affirmative action admissions practices)(1992-2001).

16

## AWARDS

·   *Roscoe Pound Institute Appellate Advocacy Award* 2015 (Inaugural Selection)

·   *Podell Distinguished Teaching Award,* New York University School of Law 2009
        Annual student-selected award to four faculty members

·   *Willis L. M. Reese Prize for Teaching,* Columbia Law School 2004
        Annual student-selected award to one faculty member

·   *Texas Excellence Teaching Award in the School of Law,* Univ. of Texas School of Law, 1994
        Annual student-selected award to one faculty member

·   *James W. Vick Texas Excellence Awards in Academic Advising,* Univ. of Texas, 1994
        University-Wide Award

·   *Open Door Award,* Univ. of Texas School of Law 1992
        Law School Student Award

## PERSONAL

·   *Born:* Sept. 15, 1954, Buenos Aires, Argentina

·   *Married* to Prof. Cynthia Estlund, New York University School of  Law

·   *Children:* Jessica, Lucas