**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: DEALER MANAGEMENT | : | MDL No. 2817 |
| SYSTEMS ANTITRUST LITIGATION | : | Case No. 18 C 864 |
| | : | |
| | : | Hon. Amy J. St. Eve |
| | : | |
| This Document Applies to:  All Actions | : | |
| | : | |
| | : | |
| | : | |

**APPLICATION TO APPOINT**
**CHRISTOPHER J. MCDONALD & LABATON SUCHAROW LLP AND**
**MICHAEL L. ROBERTS & ROBERTS LAW FIRM, P.A.**
**<u>AS INTERIM CO-LEAD COUNSEL FOR THE CLASS ACTION</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ...............................................................................................................1

PROPOSED STRUCTURE ................................................................................................1

SUMMARY OF QUALIFICATIONS ...............................................................................4

STATEMENT OF THE CASE ...........................................................................................8

ARGUMENT ....................................................................................................................10

     A.    Labaton and Roberts Have Extensive MDL and Other Complex
          Litigation Experience and Are Knowledgeable on the Law .......................................10

     B.    Labaton and Roberts Are Cooperative, Collegial and Fair .........................................22

     C.    Labaton and Roberts Have Performed Substantial Work Identifying
          and Investigating Potential Claims in this Action .......................................................24

     D.    Labaton and Roberts Have the Resources to Effectively Represent the
          Best Interests of the Proposed Class ..........................................................................25

     E.    Labaton and Roberts Support Derek Ho of Kellogg Hansen as MDL
          Lead Counsel ..............................................................................................................25

     F.    Proposed Committee Structure ...................................................................................26

CONCLUSION .................................................................................................................28

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)..................................................................16

*Authenticom, Inc. v. CDK Global, LLC*,
    874 F.3d 1019 (7th Cir. 2017) ....................................................9

*Michelle v. Artic Zero, Inc.*,
    No. 12-cv-2063, 2013 WL 791145 (S.D. Cal. Mar. 1, 2013).................24

*In re Mun. Derivatives Antitrust Litig.*,
    252 F.R.D. 184 (S.D.N.Y. 2008) ..................................................25

*In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*,
    No. 14-CV-10318, 2015 WL 1216318 (N.D. Ill. Mar. 5, 2015)..........3, 10

*In re Scrap Metal Antitrust Litig.*,
    No. 1:02-CV-0844, 2002 WL 31988203 (N.D. Ohio Aug. 5, 2002)......24

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    301 F.R.D. 284 (N.D. Ill. 2014) (St. Eve, J.)...........................10, 24, 25

**Rules**

Fed. R. Civ. P. 23(g) ..................................................*passim*

Fed. R. Civ. P. 23(g)(1)(A) ..........................................10

Fed. R. Civ. P. 23(g)(1)(B) ..........................................10

Fed. R. Civ. P. 23(g)(4) ..............................................10

**Other Authorities**

*Manual for Complex Litigation (Fourth)* § 10.221..................2, 3

*Manual for Complex Litigation (Fourth)* § 21.11...................10

## INTRODUCTION

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, and this Court's Minute Entry [Dkt. #43], Plaintiffs Bob Baker Volkswagen and Hoover Automotive, LLC ("Moving Plaintiffs") respectfully submit this memorandum in support of their application to appoint Chris McDonald and Labaton Sucharow LLP ("Labaton") and Michael L. ("Mike") Roberts and Roberts Law Firm, P.A. ("Roberts") interim co-lead class counsel. These two firms have the expertise, knowledge, integrity, and resources necessary to effectively and efficiently prosecute this complex antitrust class action.[1] We also propose that Freed Kanner London & Millen LLC ("Freed Kanner") be appointed liaison counsel for the class action.

In addition, Labaton and Roberts propose that MDL lead counsel be separately appointed, and we support the application (filed separately) of Derek T. Ho of Kellogg Hansen for that position.[2] If the Court is inclined to appoint MDL co-lead counsel from among the attorneys representing class action plaintiffs, we propose that Mr. McDonald and Labaton also serve as MDL co-lead counsel with Mr. Ho.

## PROPOSED STRUCTURE

In the interests of managing the cases most efficiently and effectively, we propose that the Court make three appointments, as described in further detail below:

1.      A single firm MDL lead counsel

---

[1] This application is supported by other parties and counsel involved in this MDL: Plaintiffs Massey Chrysler Center, Inc. and Massey Automotive, Inc. and their counsel Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., The Dampier Law Firm, P.C., and Clay, Massey & Associates, P.C.; individual plaintiffs Motor Vehicle Software Corporation ("MVSC"), Authenticom, Inc. ("Authenticom"), Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., Auto, Inc., VinSolutions, Inc., and Xtime, Inc. (collectively, "Cox") and their counsel, Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen"), and Godfrey & Kahn, S.C.

[2] In addition, we support Kellogg Hansen's request that the Court appoint Ms. Gregor and/or Mr. Prendergast to serve as MDL liaison counsel.

      2.      A two-firm interim co-lead counsel for the classes under Fed. R. Civ. P. 23(g)

      3.      Liaison counsel

Interim co-lead class counsel would represent the putative dealership classes with respect to all class-specific matters (including pleadings, motions, discovery, class certification, class experts and damages, and class settlements), and would work together with MDL lead counsel to pursue coordinated fact discovery. As further discussed herein, we propose Mr. McDonald and Labaton and Mr. Roberts and Roberts to serve as interim co-lead class counsel. The team would also include experienced antitrust practitioners Gregory Asciolla and Karin Garvey from Labaton and Karen Halbert and Jana Law from Roberts.

MDL lead counsel would serve the function of pursuing discovery and other pretrial matters with respect to the liability claims in the *Authenticom* case, which are common to all cases in this MDL. We support Mr. Ho of Kellogg Hansen for MDL lead counsel. For the reasons set out by Kellogg Hansen in its separate leadership application, we do not believe there is a need for MDL co-lead counsel, but should the Court be so inclined, we propose Mr. McDonald of Labaton along with Mr. Ho of Kellogg Hansen.[3]

Liaison counsel for the class case would serve as the local, go-to conduit between MDL lead counsel, interim co-lead class counsel, and the Court. Because the individual actions could resolve before the class actions, we believe it prudent for a local Chicago firm involved in the class action to serve as liaison for the classes.

With respect to interim co-lead class counsel, the proposed lean, two-firm structure is best suited to lead this litigation. *See Manual for Complex Litigation* (*Fourth*) ("*MCL*"), § 10.221 (noting that the "most important" factor for determining structure is "achieving efficiency and

---

[3] If the Court were to appoint Mr. McDonald MDL co-lead counsel, we propose that he also still serve as interim co-lead class counsel.

economy without jeopardizing fairness to the parties" and that the number of attorneys with a leadership role "should not be so large as to defeat the purpose of making such appointments"). Here, with only two defendants, discovery and other demands will not be as great as in other antitrust class actions with have included dozens of defendants. Thus, there is no need to lock in to a larger, burdensome structure, particularly at the outset of the litigation.

When choosing between competing leadership structures, efficiency matters. *In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*, No. 14-CV-10318, 2015 WL 1216318, at *2 (N.D. Ill. Mar. 5, 2015) ("[T]here is a fine line in an MDL between establishing (a) an organizational structure that promotes the efficient delegation of work, and (b) an elaborate inter-firm bureaucracy that impedes progress and generates fees."). Our proposed structure meets this objective as it will protect the interest of the classes by reducing duplicative work, eliminating waste, and achieving a speedy resolution to the case. This proposal is in line with the Court's directive that case management procedures "will facilitate the expeditious, economical, and just resolution of this litigation." Initial Status Order at 2 [Dkt. #10].

That said, while we expect the litigation workload to ebb and flow, we anticipate it will be particularly heavy during the first 12 months, as the class cases coordinate discovery with the *Authenticom* action. Thus, we fully expect, as interim co-lead class counsel, to responsibly delegate work to other firms, as necessary. The structure we propose has the flexibility to meet such demands as they arise. To that end, we plan to form a few select committees, as the *MCL* recommends,[4] including: Discovery, Law and Briefing, Experts, Class Certification, and

---

[4] *See MCL* § 10.221 ("Often called steering committees, coordinating committees, management committees, executive committees, discovery committees, or trial teams . . . . The court or lead counsel may task committees with preparing briefs or conducting portions of the discovery program if one lawyer cannot do so adequately.").

Arbitration.[5] Co-chairs of committees will include Karen Halbert, Jana Law, Karin Garvey and Greg Asciolla. At the time committees are formally proposed (*see* section F below for further discussion on committees), we intend to seek Court approval on how they are staffed. And importantly, to keep lodestar in check, all committee work would be done under the direction and approval of interim co-lead class counsel.

## SUMMARY OF QUALIFICATIONS

Throughout this investigation and litigation (over 10 months to date), Labaton and Roberts have been guided by a single principle: to most effectively litigate the class action, it is in the best interest of the classes for class counsel to use their best efforts to coordinate, to the extent possible, with Kellogg Hansen, counsel for Authenticom in the related, individual competitor action (the "Authenticom Action"). Our firms recognized from the start that this was no ordinary antitrust case—there were pending actions involving a competitor and two vendors, one of which was already deep into litigation. Thus, we realized that litigating the class action will have to be approached differently on both a practical and strategic level. No other firm (or group of firms) has approached the class case in the same light.

Towards that end, Labaton and Roberts have zealously advocated for the classes while working shoulder-to-shoulder with Kellogg Hansen to meet twin goals: (a) fulfill the MDL Panel's instruction that these cases be coordinated and (b) strive to meet the Seventh Circuit's directive that the Authenticom Action proceed to trial expeditiously. Many firms here have seen this as an incongruous task; only the Labaton/Roberts group has seen this as the most appropriate way to litigate the case. And, significantly, we believe it would frustrate the class' objectives *not* to proceed in this manner, given the real-life, higher prices dealers presently face in the market.

---

[5] Reynolds has indicated that it intends to move to compel arbitration against its customers.

Thus, we focused our coordination efforts on the case schedule. We were able to successfully negotiate a streamlined discovery schedule with counsel for the Authenticom Action, which was supported by other dealer class counsel, which met the twin objectives. This schedule was detailed in the Joint Status Report.[6] No other firm accomplished this.[7] We are now leading the charge to further develop that joint schedule, guided by the Court's suggestion that we all get back together to "balance" everyone's needs and "reach any agreement or have any creative proposal" that would address everyone's concerns. Mar. 12, 2018 Status Hearing Transcript at 57 [Dkt. #65] ("Hearing Tr."). We believe we can meet the Court's objective, and continue to work with Kellogg Hansen and the other firms to develop a joint schedule.

It is in the interest of dealers that the Authenticom Action proceed quickly to trial for two independent reasons. Most obviously, as the unlawful conduct of which the dealers complain is ongoing, dealers will continue to pay higher prices for DMS and data integration services. In addition, if Authenticom is forced to close its doors due to delay in resolving its litigation, the dealers are hurt further. Thus, it is in the interest of dealers to take advantage of any opportunity to coordinate with the Authenticom Action to move their own case along. Only the Labaton/Roberts group has sought to devise a schedule with this in mind.

Not only has Labaton/Roberts group led the charge on the MDL case and schedule coordination with Kellogg Hansen, we have also made substantial efforts to organize class counsel, as we believe inclusiveness and cooperation among all counsel is essential. It appears

---

[6] The schedule we proposed in the Joint Status Report [Dkt. #36 and 64 corrected] is supported by Brian Maas, President of California New Car Dealers Association, as set forth in his March 10, 2018 Declaration. Dkt. # 41 at ¶¶ 11-15. In his supplemental declaration filed today, Mr. Maas made clear that it "is not in the interest of dealers to be represented by counsel that are advocating for prolonged and protracted litigation." Dkt. # 91, Ex. A at ¶ 15. And, he "urge[d] the Court to take the interest of the 1,100 dealers [he] represent[s] into account when selecting the law firms to lead this litigation and represent dealers." Id. at ¶ 16.

[7] Indeed, other firms proposed a lengthy schedule for the class case and a separate schedule for the Authenticom Action. This was not in the spirit of the twin objectives.

from our ongoing discussions that there will be at least three groups moving for Court appointment as interim class counsel. Heeding the advice of the Court, [Hearing Tr. at 53], our group made a concerted effort to bring the three groups together on an agreed-upon organizational structure. We proposed a six-firm plaintiffs' steering committee ("PSC"), with two of the six firms acting as co-chairs. The proposed PSC would have been comprised of the very same firms now seeking leadership separately.[8] Two of the groups (Labaton/Roberts and Milberg) generally supported such a structure. The third group (Robbins/Kaplan /Cuneo) initially rejected the proposal but followed up saying they would consider it. They have not responded. We continue to believe this is a workable solution, and we will endeavor to achieve agreement on this or some other structure before the April 6 conference.[9] Notwithstanding, if the groups cannot work it out, and the Court selects our group as interim class counsel, we fully expect to engage with other counsel based on their particular strengths and skill sets, as there inevitably will be a substantial amount of work that will need to be done quickly to get up to speed on discovery and coordinate with the Authenticom Action.

At the March 12 conference, the Court identified several factors that it wished counsel to address regarding the appointment of leadership: (1) a proposed structure; (2) MDL or other complex litigation experience (including the identification of judges), and (3) ability to work well with others. We address these factors, as well as others under FRCP 23(g), below.

First, however, we briefly summarize all the factors that support the Labaton/Roberts group's appointment as interim co-lead class counsel:

---

[8] While a six-firm PSC is not as lean as our proposed structure here, it would reflect a compromise among all the groups, and committee membership would be primarily drawn from the PSC.

[9] We are not suggesting that other firms have not tried to coordinate on leadership, but we believe that the Labaton/Roberts group is the only one that has attempted to bring all three groups together under one umbrella following the Court conference.

- ***Proposed structure***. The structure that we propose is a simple yet effective one: one firm as MDL lead counsel, and a separately appointed co-lead class counsel group of two firms. We also propose a liaison counsel, who will be the local, go-to conduit between co-lead class counsel and the Court. A lean structure is best suited to lead this litigation. We expect, however, to rely on other firms as necessary for tasks approved by co-lead class counsel. We intend to form committees as recommended in the *MCL*, including Discovery, Class Certification, Law and Briefing, Experts, and Arbitration, for which we will seek Court approval at the appropriate time.

- ***MDL and other complex litigation experience***. As described in Section A below, Labaton and Roberts have a wealth of MDL litigation experience in complex antitrust cases, as well as experience in other areas such as securities and consumer fraud. The firms have been routinely appointed lead or co-lead counsel in dozens of large MDL antitrust class actions, including in the Northern District of Illinois and Seventh Circuit, which have resulted in billions of dollars in recoveries for injured businesses and consumers.

- ***Ability to work well with others***. Cooperation will be key to the success here. Labaton and Roberts have a long history of working closely together with most of the firms that have filed cases here, in most cases as co-lead counsel. Indeed, many of these attorneys are friends. In that spirit, we will be able to effectively draw from other firms to work on projects as they arise. In addition, and importantly, Labaton has worked collegially with Kellogg Hansen for years, and this relationship of trust will inure to the benefit of the class case—indeed, it already has. Similarly, Roberts has worked very collegially with Kellogg Hansen in this case.

- ***Additional support***. The Labaton/Roberts group has the support of a number of other Plaintiffs' firms that have filed class cases (see footnote 1). In addition, the Labaton/Roberts group has the support of Kellogg Hansen and each of the plaintiffs in the individual actions.

- ***Pre-complaint investigation.*** Our group invested substantial time and resources to develop the allegations in our complaints. Notably, we worked with Kellogg Hansen following the filing of the *Authenticom* case to develop the most robust class case theory. We also worked closely with an economic expert to further develop the theory of the case.

- ***Knowledge of the law.*** With decades of experience, both firms are highly knowledgeable in antitrust and class action law. Labaton's antitrust practice is co-chaired by Gregory Asciolla, a former trial attorney in the U.S. Department of Justice's Antitrust Division, and Jay Himes, formerly the New York Attorney General's top antitrust official. Mr. Roberts is the Managing Partner of Roberts Law Firm and has decades of expertise in private antitrust class action litigation, in particular in antitrust litigation in the Seventh Circuit.

- ***Automotive industry experience.*** Labaton served as co-lead counsel in *In re Aftermarket Auto. Lighting Products Antitrust Litigation*, No. 09-md-02007 (C.D. Cal.) (Wu, J.), an MDL antitrust class action involving the automobile industry, and Roberts currently serves as co-lead counsel in *Fond Du Lac Bumper Exchange v. Jui Li Enterprise Co. Ltd.*, No. 2:09-cv-00852 ("*Aftermarket Sheet Metal Antitrust Litigation*") (E.D. Wis.) (Adelman, J.). Mr. Roberts also currently serves as co-lead counsel *In re Parking Heaters Antitrust Litigation*, No. 15-mc-940-JG-JO (E.D.N.Y.) (Irizarry, J.).

- ***Work performed litigating the case.*** The Labaton/Roberts group has worked to develop a streamlined case management plan that will best protect the class's interests by reducing duplicative work, eliminating waste, and achieving a speedy resolution to the case. We have also made substantial contributions to the drafting of a protective order and ESI stipulation. Notably, working shoulder-to-shoulder with Kellogg Hansen and the other plaintiffs' firms, we are developing a joint discovery plan and a strategy to hit the ground running once a plan is approved by the Court.

- ***Diversity.*** The firms have committed to assembling a diverse team of attorneys to lead this case. Notably, Roberts Law Firm is a Certified Minority Business Enterprise in Arkansas. Mr. Roberts, owner and manager of the firm, is a certified minority, and over 60% of the partners at Roberts are women. The firm is a member of The National Association of Minority and Women Owned Law Firms and the National Minority Supplier Development Council, Inc.

- ***Reputational credibility.*** Both firms are nationally recognized leaders in the fields of antitrust and class action law. Labaton's antitrust practice has been recognized by its peers, adversaries, and clients, earning premier rankings in *Chambers USA, Benchmark Plaintiff*, and *The Legal 500*, as well as in *Law 360* (Most Feared Plaintiffs' Firms; Practice Group of the Year–Class Action) and *Global Competition Review* (Leading Firms and Lawyers for Antitrust Plaintiffs' Work). *The National Law Journal* has recognized Labaton as one of the country's leading plaintiffs' class action firms for the past 11 years.

- ***Resources.*** Both firms, on their own, have the substantial financial and personnel resources to prosecute this case to its conclusion—including trial and appeal if necessary. The firms have already demonstrated their ability and commitment in their investigation and litigation efforts to date. Our resources assure that this case will be litigated effectively in the best interests of the classes.

While many of the firms applying for lead counsel have fine qualifications, we respectfully submit the Labaton/Roberts group be appointed co-lead counsel for the class as it offers the best overall credentials in this case.

**STATEMENT OF THE CASE**

On May 1, 2017, Authenticom, Inc., Defendants' principal competitor in the data integration market, brought suit against CDK and Reynolds. Authenticom alleged that in 2015, CDK and Reynolds conspired to exclude Authenticom and other data integrators from the market, and to monopolize the data integration market for themselves. Following Defendants' agreement, they have since raised their prices dramatically—what was once a $50 per dealer

8

charge for Authenticom's services is now "a whopping $893" for Reynolds' services, or a similarly eye-popping "$735 per month for the identical service" provided by CDK. *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2017). "App vendors pass along these bloated fees to dealers, who are already paying large fees for their data management system." *Id. See also* Complaint, *Authenticom v. CDK Global, LLC*, No. 18-cv-868 (W.D. Wis. May 1, 2017), ECF No. 1. Authenticom moved for a preliminary injunction. Over the course of three days, Chief Judge Peterson in the Western District of Wisconsin heard 15 witnesses, and entered hundreds of exhibits into the evidentiary record. Starting about five months after the Authenticom case was filed, fourteen class actions were filed. The class actions have relied heavily on the discovery and findings in the Authenticom Action and have all alleged substantially the same conduct.

The class case centers on federal antitrust and related state-law claims brought against CDK and Reynolds. The principal allegations are that CDK and Reynolds conspired to exclude their rivals in the market for data integration services and divide that market for themselves, resulting in supra-competitive prices for those services. Plaintiffs also claim Defendants' conduct allowed them to unlawfully raise prices in the market for DMS services. All of the class cases filed to date were brought on behalf of classes of automobile dealers, alleging that they suffered economic harm because they overpaid for data integration and DMS services.

On March 8, 2018, all parties submitted a Joint Initial Status Report for the March 12, 2018 Initial Status Conference. (Dkt. # 36 and 64 corrected). Following the March 12, 2018 conference, the Court entered a minute order that, among other things, set a briefing schedule for organization and management of the actions. (Dkt. #43).

**ARGUMENT**

"[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *MCL §* 21.11. Appointment of interim lead class counsel is appropriate where overlapping and duplicative class actions are pending in a single district for the coordination of pretrial proceedings in order to promote efficient case management.

"It is generally accepted that the same considerations that govern the appointment of class counsel once a class is certified govern the designation of interim class counsel before certification." *Navistar*, 2015 WL 1216318, at *1. Rule 23(g)(1)(A) instructs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *see also Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014) (St. Eve, J.).

A review of these factors confirms that Labaton and Roberts satisfy all of the requirements of Rule 23(g) and offer additional important qualities that enable them to best "represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

### A. Labaton and Roberts Have Extensive MDL and Other Complex Litigation Experience and Are Knowledgeable on the Law

Both Labaton and Roberts have substantial experience in leading large, complex MDL antitrust class action litigation, including MDL cases in the Northern and Southern Districts of

Illinois. While the firms have substantial national and international antitrust practices, they also are appointed lead counsel in other practice areas, notably securities fraud and consumer class actions. What sets our firms apart is the regularity in which they receive court appointments, the size and scale of the cases they litigate, and the respect that have earned from their peers, adversaries and the courts.

**Labaton Sucharow:** Labaton Sucharow is a highly respected litigation powerhouse with multiple U.S. offices, including in Chicago. The firm litigates in the areas of antitrust, securities, corporate governance and shareholder rights, and whistleblower representation and has recovered more than $12 billion for businesses, investors and consumers. Our firm's victories over the last decade are drawn straight from the headlines, including historic settlements in litigation against the airline industry ($1.2 billion), major Wall Street banks (over $2 billion), AIG ($1 billion), HealthSouth ($671 million), Countrywide ($624 million) and Bear Stearns ($275 million).

Regularly serving as lead or co-lead counsel in MDL litigation, Labaton's Antitrust and Competition Litigation Practice challenges global anticompetitive conduct and has recovered nearly $3 billion on behalf of consumers injured by antitrust and commodities law violations, including price-fixing, price manipulation, and monopolization. Labaton has a well-earned reputation for successfully investigating and litigating complex antitrust class actions. The practice is led by Co-Chairs Gregory Asciolla and Jay L. Himes, longtime leaders in the antitrust bar with significant government, defense, and trial experience.

Labaton has a distinguished record of success in prosecuting international price-fixing cartels. As co-lead counsel in *In re Air Cargo Shipping Services Antitrust Litigation*, we secured more than $1.2 billion in recoveries from nearly 40 global airlines for price-fixing air cargo

shipping services worldwide. In *In re Aftermarket Automotive Lighting Products Antitrust Litigation*, our antitrust attorneys demonstrated their willingness to litigate a global price-fixing conspiracy involving automotive lighting products all the way to trial. Our unwavering advocacy secured a settlement of more than $50 million on the eve of trial.

Labaton is also leading the charge in investigating and litigating high-profile price-fixing and manipulation cases involving complex financial derivative products, including U.S. Treasury securities, foreign currency exchanges, interest rate swaps, and precious metals such as gold, platinum, and palladium. In the healthcare industry, we are challenging anticompetitive conduct by the world's largest pharmaceutical companies in cases involving, among other issues, price-fixing by generic drug companies and so-called "pay for delay" settlements between branded and generic drug firms.

The following chart lists class actions in which Labaton was appointed lead or co-lead counsel in the Northern District of Illinois:

| Case Name | Case Number | Status | Judge |
|---|---|---|---|
| In re Aftermarket Filters Antitrust Litigation | MDL No. 1957, No. 08-cv-04883 | Settled for $18M | Hon. Robert W. Gettleman Mag. Judge Geraldine Brown |
| In re Opana ER Antitrust Litigation | MDL No. 2580, No. 14-cv-10150 | Ongoing | Hon. Harry D. Leinenweber |
| Hughes v. Huron Consulting Group, Inc. (securities class action) | 09-CV-4734 | Settled for $27M | Hon. Elaine E. Bucklo |
| Van Noppen v. InnerWorkings, Inc. (securities class action) | 14-CV-1416 | Settled for $6.025M | Hon. John Robert Blakey |
| Pension Trust Fund for Operating Engineers v. DeVry Education Group, Inc. (securities class action) | 16-CV-5198 | Ongoing | Hon. Jorge L. Alonso |
| City of St. Clair Shores | 16-CV-10510 | Ongoing | Hon. Robert W. |

| Police and Fire Retirement System v. The Allstate Corporation (securities class action) | Gettleman |
|---|---|

Below is a sampling of other recent significant MDL and other major class

representations, with additional matters listed in the enclosed Firm Resume.[10] We also invite the

Court to visit our website at http://www.labaton.com.

**Cases with Settlements:**

- *In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775 (E.D.N.Y.) **(Hon. John Gleeson; Mag. Judge Viktor Pohorelsky)**: The firm served as **co-lead counsel** from 2006-2013 in a case alleging over 30 international airlines participated in a global conspiracy to increase prices for air cargo shipping services. Plaintiffs obtained over **$1.2 billion** in total settlements.

- *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, No. 13-cv-07789 **(S.D.N.Y.) (Hon. Lorna Schofield)**: The firm serves as **class and allocation counsel** in an action alleging that dealer banks, as the major foreign exchange dealers, conspired to manipulate the price FX transactions. Plaintiffs have secured over **$2.3 billion** in partial settlements.

- *Alaska Electrical Pension Fund v. Bank of America, Corp., et al. ("ISDAfix")*, No. 14-cv-7126 **(S.D.N.Y.) (Hon. Jesse Furman)**: The firm serves as **class counsel** in a case alleging that major banks conspired to manipulate ISDAfix, a key benchmark for valuing various interest rate derivatives. Plaintiffs have secured over **$408.5 million** in partial settlements.

- *In re Aftermarket Automotive Lighting Products Antitrust Litigation*, MDL No. 2007 **(C.D. Cal.) (Hon. George Wu)**: Served as **co-lead counsel** and obtained more than **$50 million** in settlements to resolve claims that several manufacturers participated in an international conspiracy to fix the prices of aftermarket automotive lighting products.

- *In re Marine Hose Antitrust Litigation*, MDL No. 1888 (S.D. Fla.) **(Hon. Donald Graham)**: Served as **co-lead counsel** and obtained **$31.7 million** in settlements to resolve claims that defendants participated in a conspiracy to fix the prices of and allocate markets for marine hose products.

- *In re TriCor Indirect Purchaser Antitrust Litigation*, No. 05-cv-00360 (D. Del.) **(Hon. Sue L. Robinson):** Served as **co-lead counsel** and obtained a **$65.7 million** settlement to

---

[10] Labaton's Firm Resume is attached as Exhibit 1 to the accompanying declaration of Christopher J. McDonald and Michael L. Roberts ("McDonald/Roberts Declaration").

resolve claims that drug manufacturers engaged in anticompetitive sham litigation to avoid competition on its cholesterol lowering drug, TriCor.

- ***In re Natural Gas Commodity Litigation***, **No. 03-cv-06186 (S.D.N.Y.) (Hon. Victor Marrero)**: Served as **co-lead counsel** in a case involving claims of price manipulation for natural gas, resulting in one of the largest class action recoveries in the history of the Commodity Exchange Act—over **$100 million** for the class.

- ***In re Puerto Rican Cabotage Antitrust Litigation***, **MDL No. 1960 (D.P.R.) (Hon. Daniel Dominguez)**: Served as **co-lead counsel** and obtained **$52 million** in settlements to resolve claims that defendants participated in a conspiracy to fix the prices of ocean freight services between the continental United States and Puerto Rico.

**<u>Ongoing Cases:</u>**

- ***In re Opana ER Antitrust Litigation***, **No. 14-cv-10150 (N.D. Ill.) (Hon. Harry Leinenweber)**: Serves as **co-lead counsel** in a case alleging a conspiracy between branded and generic pharmaceutical companies to restrain competition for the drug Opana via a "pay-for-delay" patent settlement.

- ***In re Treasury Securities Auction Antitrust Litigation***, **MDL No. 2673 (S.D.N.Y.) (Hon. Paul Gardephe)**: Serves as **co-lead counsel** in a class action alleging a massive price-fixing conspiracy and unlawful boycott among the major dealer banks involving U.S. Treasury securities.

- ***In re Generic Pharmaceuticals Pricing Antitrust Litigation***, **MDL No. 2724 (E.D. Pa.) (Hon. Cynthia Rufe):** Serves as member of **Plaintiffs' Steering Committee** representing end-payor plaintiffs in a sprawling MDL alleging dozens of generic drug manufacturers unlawfully agreed to raise prices of and allocate markets for at least 18 generic drugs.

- ***In re Platinum and Palladium Antitrust Litigation***, **No. 14-cv-09391 (S.D.N.Y.) (Hon. Gregory Woods)**: Serves as **co-lead counsel** in a case alleging that the world's major platinum and palladium dealers conspired to fix the prices of these precious metals and financial products derived from them.

Mr. Asciolla, co-chair of Labaton's antitrust practice group, is a seasoned antitrust practitioner with over two decades of wide-ranging experience, including with the government and a top defense firm. Since joining Labaton, he has obtained many significant victories in antitrust class actions, including *In re Air Cargo Shipping Services Antitrust Litigation* ($1.2B in settlements). He was also recently appointed to the PSC for the end-payor plaintiffs in the sprawling MDL *In re Generic Pharmaceuticals Pricing Antitrust Litigation* before Judge

14

Cynthia Rufe in the Eastern District of Pennsylvania. Mr. Asciolla began his career at the Department of Justice's Antitrust Division as a trial attorney in the Healthcare Task Force, where he focused on prosecuting anticompetitive conduct in the healthcare industry, including taking two cases to trial. Mr. Asciolla was recently named "Titan of the Plaintiffs Bar" by Law 360 and named a Next Generation Lawyer by The Legal 500. He was also recommended by The Legal 500 for being "very effective plaintiffs' counsel" and for "always act[ing] with a good degree of professionalism." In 2016 he was elected to the Executive Committee of the New York State Bar Association Antitrust Law Section. He also currently serves as the Co-Chairman of the Antitrust and Trade Regulation Committee of the New York County Lawyers' Association. He regularly writes articles and serves on panels relating to antitrust issues.

Mr. Himes, co-chair of Labaton's antitrust practice group, has over 40 years of experience handling antitrust and other complex litigations for both plaintiffs and defendants. A well-respected antitrust practitioner, Mr. Himes was selected by the Honorable William H. Orrick III as monitoring trustee in the Department of Justice's merger victory after trial in *U.S. v. Bazaarvoice, Inc.*, No. 13-cv-00133 (N.D. Cal.). Before joining Labaton in 2008, Mr. Himes served for nearly eight years as Chief of the Antitrust Bureau of the New York Attorney General's Office, the State's top antitrust enforcement position, leading high-profile antitrust enforcement actions. He was widely recognized as one of the leading State antitrust enforcers. There, he served as the States' principal representative in the negotiations that led to settlement of the governments' landmark monopolization case against Microsoft. Mr. Himes previously practiced litigation for 25 years at Paul, Weiss, Rifkind, Wharton & Garrison. *Chambers USA* sources describe Mr. Himes as an "aggressive litigator with a broad knowledge of the law," and *The Legal 500*'s sources call him "a very solid and highly experienced antitrust lawyer."

Mr. McDonald has decades of experience in complex litigation, and he is one of the few attorneys at Labaton who litigates both antitrust and securities actions. Most recently (and indeed for much of the past decade), he served as lead counsel *In re Amgen Inc. Securities Litigation* (C.D. Cal. Judge Gutierrez) ($95 million settlement), and co-lead counsel in *In re Schering-Plough Corporation / ENHANCE Securities Litigation* (D.N.J. Judge Cavanaugh (Ret.)) ($473 million settlement).[11] Mr. McDonald also served as co-lead counsel in *In re TriCor Indirect Purchaser Antitrust Litigation* (D. Del. Judge Robinson (Ret.)), obtaining a $65.7 million settlement on behalf of the class. Prior to joining Labaton Sucharow, Mr. McDonald practiced at a top defense firm and was a senior attorney in the law and public policy department of a telecommunications company.

Ms. Garvey has more than two decades of litigation experience, having spent the majority of that time litigating complex antitrust matters. Ms. Garvey is currently leading the litigation for the firm in the MDL *In re Opana ER Antitrust Litigation* (N.D. Ill.) (Leinenweber, J.). Prior to joining Labaton Sucharow, and following her graduation from Northwestern University Pritzker School of Law, Ms. Garvey practiced at a top defense firm where she most recently lead the defense of a major pharmaceutical company in *In re Skelaxin (Metaxalone) Antitrust Litigation*, (E.D. Tenn.), another MDL, including playing a major role at the trial in that action. Having litigated successfully for almost two decades on the defense side, Ms. Garvey has a deep understanding of the concerns faced by corporate defendants and therefore an excellent perspective on how to work efficiently and effectively with her adversaries.

---

[11] In *Amgen*, Mr. McDonald successfully briefed and argued in the district court the class certification motion that ultimately led to the landmark Supreme Court decision in *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455 (2013). For the Supreme Court proceedings, Labaton brought in Kellogg Hansen, and Mr. McDonald and Mr. Ho of Kellogg Hansen worked extensively together in connection with the Supreme Court appeal.

Labaton has a dedicated team of Of Counsel and Associate attorneys as well, all of whom have substantial antitrust experience from respected law firms and government agencies.

**Roberts Law Firm:** Mr. Roberts of Roberts Law Firm is uniquely qualified to serve as interim co-lead class counsel in this case for five reasons: (1) Mr. Roberts has extensive, successful experience in the Seventh Circuit in direct purchaser antitrust cases, having been appointed to leadership positions and tenaciously represented antitrust direct purchaser class clients in federal courts in the Seventh Circuit and other Circuits; (2) Mr. Roberts is one of the few counsel in this litigation who has been personally appointed to a leadership position by an MDL Court, having been recently appointed to the Direct Purchaser Plaintiffs' Steering Committee in *In re: Generic Pharmaceuticals Pricing Antitrust Litigation* (appointed by Judge Cynthia Rufe); (3) Mr. Roberts is known to congenially and professionally work well with other counsel and the Court as well as its personnel; (4) Mr. Roberts and Roberts Law firm satisfy all Rule 23(g) requirements; and (5) despite his natural, congenial demeanor and professionalism, Mr. Roberts and Roberts Law Firm tenaciously work to win for their clients with efficient and zealous representation.

Mr. Roberts concentrates on complex direct purchaser antitrust class litigation and has served as lead counsel in a number of class action cases that have successfully obtained recovery of hundreds of millions of dollars for the respective classes. Federal courts have appointed Mr. Roberts and Roberts Law Firm to numerous leadership positions in multidistrict cases and class actions. *See* Roberts Law Firm's Firm Resume.[12] Mr. Roberts and Roberts Law Firm have demonstrated an ability to organize and manage large cases and to cooperate with counsel for all

---

[12] Roberts Law Firm's Firm Resume is attached as Exhibit 2 to the McDonald/Roberts Declaration.

of the involved parties. Even defense counsel have applauded Mr. Roberts and Roberts Law Firm for their hard work ethic and efficiency:

> I must tell you, Judge, that Don Barrett, Mike Roberts, and Tom Thrash are due tremendous credit. They have been absolutely dedicated advocates, but they have been decent, honorable men, and they've operated at the highest level of professionalism, and if it were not for that, this litigation would have gone on for years and years and years. So I want to express my gratitude to them.

Aubrey Harwell, lead defense counsel in *Pilot Flying J* (Nov. 25, 2013), Transcript of Fairness Hearing before the Honorable James M. Moody, United States District Judge.

Judge Moody furthered defense counsel's statements with his own commendation:

> I have been impressed with the quality of the counsel here on both sides and also by the team that did the audit, the team that did the notice, and all of the oversight that has been done to ensure that all of the class members are being treated fairly and are compensated in a reasonable and adequate way. So I do want to commend everyone that's participated in this, all the lawyers and all of the people that have provided support to the settlement because as all of you have pointed out, I think this is an exceptional effort by both sides and has inured to the benefit of everyone in this class.

As managing partner of Roberts Law Firm, Mr. Roberts has extensive experience in direct purchaser antitrust class actions, and importantly, has extensive, recent experience in the Seventh Circuit. Mr. Roberts currently serves as Court-Appointed Co-Lead Counsel and MDL-Court-Appointed Plaintiff Steering Committee Member in numerous antitrust direct purchaser class actions, in particular in the Seventh Circuit, Second Circuit and Third Circuit:

- Court-appointed Co-Lead Counsel in ***First Impressions Salon, Inc., et al. v. National Milk Producers Federation*, a case certified under Rule 23 by Southern District of Illinois Judge Nancy Rosenstengel**; Defendants' appeal of granted class certification denied by the Seventh Circuit and again En Banc petition denied by Seventh Circuit in February 2018.

- Court-Appointed Member of the Plaintiffs' Steering Committee for the antitrust direct purchaser plaintiffs class in MDL case ***In re: Generic Pharmaceuticals Pricing Antitrust Litigation* (appointed by Eastern District of Pennsylvania Judge Rufe)**.

- Court-Appointed Co-Lead Counsel *Fond Du Lac Bumper Exchange v. Jui Li Enterprise Co. Ltd.*, No. 2:09-cv-00852 ("*Aftermarket Sheet Metal Antitrust Litigation*") (appointed by Eastern District of Wisconsin Judge Lynn Adelman); case settled with three of four defendants.

- Court-Appointed as Co-Lead Settlement Class Counsel in *Ori v. Fifth Third Bank* case (appointed by Eastern District of Wisconsin Judge Lynn Adelman).

- Court-Appointed as Co-Lead Counsel in *In re Parking Heaters Antitrust Direct Purchaser Litigation* (appointed by Eastern District of New York Judge Dora Lizette Irizarry); case achieved preliminary approval of settled claims for direct purchasers class on March 16, 2018).

- Court-Appointed to the Plaintiffs' Steering Committee in *In re: Heartland Payment Systems Inc. Customer Data Security Breach Litigation* (appointed by Southern District of Texas Judge Lee H. Rosenthal).

In addition, Mr. Roberts has served as appointed Co-Lead Counsel in the following antitrust and other cases: *In re Microsoft Antitrust Indirect Purchaser Litigation* in Arkansas (appointed by State Circuit Judge Alice Gray as Co-Lead Class Counsel on behalf of indirect purchaser antitrust plaintiffs); and *In re Pilot Flying J Rebate* (a nationwide class action for direct purchasers which settled within two (2) months of initially filed complaint; appointed Co-Lead Counsel by Federal District Judge James Moody). Additional matters are listed in the enclosed Firm Resume. We also invite the Court to visit our website at www.robertsgroup.us.

Mr. Roberts is licensed in Arkansas, Florida, Tennessee, Texas, and New York. He is also licensed before the United States Supreme Court and many U.S. Federal District Courts in the U.S. Just out of law school in 1990, Mr. Roberts served as a judicial law clerk to the Honorable Pulaski County Circuit Judge David Bogard where he also served as Special Presiding Judge when Judge Bogard took leave for various periods of time. As a Special Presiding Judge over jury trials as well as bench trials, Mr. Roberts gained tremendous insight regarding how trial attorneys practice as well as insight from the vantage point of the Bench.

Roberts is also uniquely staffed with attorneys capable of adding tremendous value to this litigation. Particularly well suited are partners Karen Halbert and Jana Law. Ms. Halbert's practice consists of a wide variety of complex business litigation including antitrust and data breach class actions. Ms. Halbert has a Bachelor of Science in Computer Science and 18 years of experience in software development, specifically as an integrator in the financial payment industry. She served as Vice President of Development for an international software company that developed and licensed retail delivery integration solutions. Much like the integrators in this litigation, the solutions Ms. Halbert architected allowed third-party vendors such as point-of-sale companies and ATM companies to access centralized accounting databases to authorize financial transactions. This experience gives Ms. Halbert a unique understanding of the issues involved in this litigation. Ms. Halbert currently serves on the court-appointed executive committee for financial institutions in *Midwest American Federal Credit Union v. Arby's Restaurant Group, Inc.*, and *Bellwether Community Credit Union v. Chipotle Mexican Grill*. In addition, Ms. Halbert serves on the court appointed plaintiffs' steering committee for financial institutions in *In Re Equifax, Inc., Customer Data Security Breach Litigation*. For full citations *see* Exhibit A.

Ms. Law is equally well suited for this litigation. She is the director of Roberts' public utility and regulatory practice area, and has completed NARUC Utility Rate School. Ms. Law also focuses on complex litigation, including antitrust litigation, and specifically class actions. She is the firm's go-to person for damages analysis and coordination with experts. Ms. Law has a Bachelor in Science Management in finance and management from Tulane University's A.B. Freeman School of Business, where she graduated *magna cum laude* and was a recipient of the Distinguished Honors Scholarship. Her background in finance aids the firm in matching legal theory with expert theory for our class certification motions and damages models. Ms. Law was

appointed Settlement Class Counsel in *National Trucking Financial Reclamation Services, LLC vs. Pilot Corporation, Pilot Travel Centers d/b/a Pilot Flying J, et al.* by Judge James M. Moody, a case that settled and was finally approved in under eight months.

Mr. Roberts and Roberts Law Firm can and will provide a wealth of litigation talent, as well as leadership, claims resolution, and case strategy experience. Roberts Law Firm has demonstrated commitment to taking cases to trial, if necessary, to vindicate the rights of its clients and has demonstrated the ability and integrity to ensure that the interests of all class members are appropriately protected in the most cost-effective manner. The Roberts team's extensive experience in complex litigation, and particularly class actions, accompanied by Ms. Halbert's unique experience in the software industry, Ms. Law's background and experience with experts, and Mr. Roberts's leadership experience in antitrust class actions and experience in the Seventh Circuit, makes Roberts Law Firm an ideal candidate to serve as interim co-lead counsel for the dealership class.

**Freed Kanner:** Freed Kanner London & Millen LLC ("Freed Kanner") is a preeminent class action firm and has been appointed to numerous leadership positions in significant cases across the United States, including the following cases in this district:[13]

- ***In re Opana ER Antitrust Litigation*, MDL 2580 (N.D. Ill.) (pending before Leinenweber, J.):** serving as interim co-lead counsel, with Labaton, on behalf of indirect purchasers (end-payors) of brand or generic Opana ER, an opioid painkiller, in an antitrust "pay-for-delay" case brought under the laws of 30 states.

- ***Kleen Products, Inc. et al. v. International Paper, et al.*, 10-CV-5711 (N.D. Ill.) ("Containerboard Antitrust Litigation") (Leinenweber, J.):** serving as co-lead counsel on behalf of direct purchasers of containerboard and related products in an antitrust price-fixing case. The Seventh Circuit affirmed the district court's order certifying a nationwide class. In 2017, Judge Leinenweber granted final approval to a $354-million-dollar settlement with certain defendants (having previously approved two

---

[13] Freed Kanner's Firm Resume Firm Resume is attached as Exhibit 3 to the McDonald/Roberts Declaration.

smaller settlements in 2014) but granted summary judgment in favor of the two remaining defendants. That ruling is on appeal to the Seventh Circuit.

- ***In re Brand Name Prescription Drugs Antitrust Litigation*, MDL 997 (N.D. Ill.) (Kocoras, J.):** served as co-lead counsel in this antitrust price-fixing class action. Settlements totaling approximately $715 million were recovered on behalf of the plaintiff class.

- ***SchagrinGas Co. v. BP Products North America, et al.*, No. 1:06-cv-3621 (N.D. Ill.) (Zagel, J.):** served as co-lead counsel on behalf of direct purchaser plaintiffs in this nationwide class action involving monopolization claims under Section 2 of the Sherman Act. The case resulted in a settlement of over $50 million.

- ***In re Aftermarket Filters Antitrust Litigation*, MDL 1957 (N.D. Ill.) (Gettleman, J.):** served as interim co-lead counsel on behalf of direct purchasers of replacement automobile air and oil filters in a nationwide, antitrust price-fixing case, obtaining settlements of nearly $18 million.

- ***Washington County Health Care Auth., Inc., et al. v. Baxter Int'l Inc., et al.*, 16-CV-10324 (N.D. Ill.) (Tharp, J.):** serving as interim liaison counsel this class action alleging that the major U.S. manufacturers of a critical medical product, intravenous saline solution ("IV Saline Solution"), conspired to restrict output and artificially fix, raise, maintain and/or stabilize the prices of IV Saline Solution sold throughout the United States, under the pretext of a supply shortage).

- ***Standard Iron Works v. ArcelorMittal et al.*, 08-CV-5214 (N.D. Ill.) (Zagel, J.):** appointed liaison counsel on behalf of direct purchasers of steel in a nationwide supply manipulation and price-fixing case.

Freed Kanner maintains offices in the Chicago suburbs and will be able to effectively communicate with the Court and all parties as liaison counsel and to assist interim co-lead class counsel in facilitating efficient coordination of this litigation. Freed Kanner attorneys have the proven ability to work cooperatively with co-counsel to reach superior results. Based on the firm's extensive knowledge, experience, and achievements, Freed Kanner should be appointed interim liaison counsel.

### B. Labaton and Roberts Are Cooperative, Collegial and Fair

Cooperation will be key to the success of this case. "Plays well with others" is not just a vestige of childhood days in the sandbox—it matters here. This includes cooperation among

Plaintiffs' counsel in the class cases, with counsel in the Authenticom Action, with defense counsel and with the Court. The Labaton and Roberts firms are committed to cooperation, and their record here and in other cases demonstrates. Notably, The Legal 500, based on statements of peers, adversaries, and clients, recommended Mr. Asciolla of Labaton for "always act[ing] with a good degree of professionalism." And Mr. Roberts was described in Court by defense counsel as a "decent, honorable" man who "operated at the highest level of professionalism."

Labaton and Roberts have a long history of working closely together with most of the firms that have filed cases here, in most cases as co-lead counsel. Indeed, many of the attorneys involved are our friends. These existing relationships will allow us to draw from various firms for select projects as they arise, because they know they will be treated fairly. Our group is committed to working cooperatively with all Plaintiffs' counsel, as we have done in past cases.

Importantly, Labaton has a long-standing relationship with Kellogg Hansen, who will lead the Authenticom Action.[14] We are the only firm that reached out to work shoulder-to-shoulder with Kellogg Hansen from Day 1 (over 10 months ago), recognizing the importance of a cooperative relationship to the success of the class case. Roberts likewise reached out to coordinate some time later. Together, we developed a viable discovery schedule for all the cases that was presented to the Court in the Joint Status Report. No other firm accomplished this. We continue to work with Kellogg Hansen on various other issues, such as a protective order, ESI stipulation and a revised discovery schedule.[15]

---

[14] In addition to the *Amgen* matter mentioned previously, the firms have also coordinated on several amicus submissions for important appellant matters.

[15] At the March 12 conference, Mr. Barz stated that there was a "conflict" issue with what he vaguely described as the "Kellogg Group." Hearing Tr. at 46-47, 52-53. He articulated no specifics, thus we are unable to respond. Moreover, there is no "Kellogg Group." Indeed, Labaton and the Roberts Law Firm *only represent dealerships in the class cases*. Neither firm has any involvement in the individual actions. Thus, Labaton and Roberts are moving together to be appointed interim co-lead class counsel. Kellogg Hansen supports our application, and we support Kellogg Hansen's separate application to be appointed

23

We have worked in the past with some of the firms representing Defendants here, and we have been working with them collegially on this case to date and expect to continue to do so as the case progresses.

With respect to our presence before the Courts, we invite this Court to review our firm resumes, which include accolades from judges in various matters we have litigated.

### C.     Labaton and Roberts Have Performed Substantial Work Identifying and Investigating Potential Claims in this Action

Courts look to the time and resources spent investigating a complaint and consider that a substantial factor in appointing interim class counsel. *Smith*, 301 F.R.D. at 290 (selection based in part on work counsel already performed for the case); *Michelle v. Artic Zero, Inc.*, No. 12-cv-2063, 2013 WL 791145, at *3 (S.D. Cal. Mar. 1, 2013) (selecting counsel who "demonstrated they have conducted more research and investigation in developing the case").

After Authenticom filed its complaint, 14 class actions were brought alleging similar conduct, including ones by Labaton and Roberts.[16] Indeed, just days after Authenticom filed, Labaton began working with Kellogg Hansen to develop a class case. Both firms spent significant time and resources developing additional allegations, including working with an economic expert to evaluate the conduct and potential claims. As a result, Labaton and Kellogg Hansen's class complaint was robust and included the most complete set of facts and claims.

---

( *... continued* )

MDL lead counsel. We are not aware of any conflict that we may have with respect to representing the dealer classes, and we agree with the analysis in Kellogg Hansen's application that it likewise does not have conflicts.

[16] The order of filing of the class complaints is not a relevant factor for determining leadership in this case, given that all of the class complaints were based on the allegations in the *Authenticom* complaint. *See In re Scrap Metal Antitrust Litig.*, No. 1:02-CV-0844, 2002 WL 31988203, at *1 (N.D. Ohio Aug. 5, 2002) ("Absent evidence that the first-to-file should be credited with conducting substantial investigative efforts to ferret out the alleged improprieties, no weight is generally accorded to the timing of a particular plaintiff's complaint.") (citing *In re Auction Houses Antitrust Litig.*, 197 F.R.D. 71, 82 (S.D.N.Y. 2000)).

### D.    Labaton and Roberts Have the Resources to Effectively Represent the Best Interests of the Proposed Class

Courts consider the resources of firms seeking interim class counsel appointments, particularly when the defendants are corporations with "substantial financial and legal resources," *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186-87 (S.D.N.Y. 2008), so as to ensure that interim lead counsel will "commit sufficient attorney time and financial resources to vigorously prosecute the putative class's claims." *Smith*, 301 F.R.D. at 289.

Both Labaton and Roberts have committed, and will continue to commit, the considerable financial and personnel resources necessary to effectively prosecute this case on behalf of the proposed classes. We have already dedicated hundreds of hours of attorney and other professional time in investigating and litigating the case to date. But perhaps the best proof of our firms' resources and capabilities is in our track record: throughout the decades that the firms have prosecuted complex actions, we have repeatedly and consistently advanced litigation costs in matters of even greater size than the present case. In doing so, we have successfully litigated matters through settlements, trials, and appeals. Our resources, whether alone or combined, provide the wherewithal to litigate this case vigorously and effectively against the defendants, both national corporations with substantial resources and represented by large defense firms.

### E.    Labaton and Roberts Support Derek Ho of Kellogg Hansen as MDL Lead Counsel

Labaton and Roberts support the appointment of Derek T. Ho of Kellogg Hansen as MDL lead counsel. Kellogg Hansen's long track record of success in antitrust law makes it exceptionally well-suited to serve as lead counsel in this MDL. As importantly, this MDL would not exist but for Kellogg Hansen's investigation of the industry and litigation efforts in the *Authenticom* and *Motor Vehicle Software Corp.*, No. 18-cv-865 (N.D. Ill.) actions. Kellogg

Hansen thus is uniquely suited to pursue coordinated fact discovery and other pretrial matters in support of the common liability claims in this MDL on an expedited basis.

From our perspective as class counsel, the interests of the classes matter most. Labaton has been working together with Kellogg Hansen on the class action over the last 10 months and Roberts over the last several months. Kellogg Hansen has proven to be an exceptional advocate in advancing the interests of plaintiffs: consummate professionals, thought leaders, inclusive, fair and cooperative. All traits leading to one conclusion—they are best suited to be MDL lead counsel in this action.

### F. Proposed Committee Structure

As noted above, Labaton and Roberts, as interim co-lead class counsel, expect to responsibly delegate work to other firms as the need arises. Towards that end, we intend to form a few select committees as recommended in the *MCL*. We currently envision forming the following committees: Discovery, Law and Briefing, Experts, Class Certification, and Arbitration. Labaton and Roberts propose that our attorneys, including Karin Garvey, Greg Asciolla, Karen Halbert, and Jana Law, will co-chair some committees and will draw from other counsel to co-chair and be members of others, such as from Neal & Harwell and Beasley Allen. If the Court selects the Labaton/Roberts group as co-lead class counsel, at that time we will reach out to other firms to seek interest in working on a committee. For this reason, we think it is premature to identify which firms will be on which committee or serving as a committee chair. Notwithstanding, two firms that already support our proposed leadership structure and have expressed an interest in working on a committee are Neal & Harwell and Beasley Allen.

**<u>Neal & Harwell:</u>** Neal & Harwell is a nationally recognized litigation firm. The firm has tremendous litigation experience mainly on behalf of major corporations including Ford Motor Company in the Pinto litigation, Bridgestone in the Ford/Firestone tire litigation, Exxon in the

Exxon-Valdez spill case, and Pilot Flying J in its recent pricing litigation. The firm has also represented plaintiffs both individually and in class actions around the country. For more information about Neal and Harwell, please visit ww.nealharwell.com.

**Beasley Allen:** W. Daniel "Dee" Miles, III, manages Beasley Allen's nationwide consumer and business litigation practice from the firm's offices in Montgomery, Alabama, and Atlanta, Georgia and is assisted on this case by Archie I. Grubb II, another principal with the firm. The Beasley Allen firm has a proven track record of successfully prosecuting complex cases while working cooperatively with co-counsel and opposing counsel. Beasley Allen has the manpower and financial resources to provide meaningful assistance to the MDL leadership in this important litigation. Mr. Miles, Mr. Grubb, and other Beasley Allen attorneys have served in leadership roles in many MDL cases, including the following current matters:

- *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*, No. 15-md-2672 (N.D. Cal., Hon. Charles R. Breyer): appointed to Plaintiffs' Steering Committee.

- *In re: Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices, & Products Liability Litigation*, No. 3:17-md-2777 (N.D. Cal., Hon. Edward M. Chen): appointed to Plaintiffs' Steering Committee.

- *In re: Blue Cross Blue Shield Antitrust Litigation*, No. 2:13-cv-20000 (N.D. Ala. Hon. R. David Proctor): assist Plaintiffs' Steering Committee with document review, researching and preparing written submissions, taking and defending depositions; appointed to and currently serve on the settlement committee.

- *In re: Domestic Airline Travel Antitrust Litigation*, No. 1:15-mc-1404 (D.D.C. Hon. Colleen Kollar-Kotelly): assist Plaintiffs' Steering Committee with document review.

Mr. Miles also successfully represented seven state attorneys general in complex Average Wholesale Price Litigation (Alabama, Alaska, Hawaii, Kansas, Louisiana, Mississippi, and Utah) to recover over a billion dollars for those states' Medicaid funds. For more information about Beasley Allen, please *see* www.beasleyallen.com.

As committees are proposed and staffed, we intend to seek Court approval at that time. And importantly, in order to keep lodestar in check, all committee work would be done under the direction and approval of co-lead class counsel.

## CONCLUSION

For the foregoing reasons, we respectfully request that Christopher J. McDonald and Labaton Sucharow and Michael L. Roberts and Roberts Law Firm be appointed interim co-lead class counsel, along with Freed Kanner as liaison counsel for the classes.

Dated: March 26, 2018

LABATON SUCHAROW LLP

 */s/ Gregory S. Asciolla*
Gregory S. Asciolla
Christopher J. McDonald
Karin E. Garvey
Brian Morrison
LABATON SUCHAROW LLP
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
gasciolla@labaton.com
jhimes@labaton.com
cmcdonald@labaton.com
kgarvey@labaton.com
bmorrison@labaton.com

*Counsel for Plaintiff Bob Baker Volkswagen*

_/s/Michael L. Roberts_
Michael L. Roberts
Karen Halbert
Jana K. Law
ROBERTS LAW FIRM, P.A.
20 Rahling Circle
Little Rock, Arkansas 72223
Telephone: (501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
janalaw@robertslawfirm.us

*Counsel for Plaintiff Hoover Automotive, LLC*

## CERTIFICATE OF SERVICE

I, Gregory S. Asciolla, an attorney, hereby certify that on March 26, 2018, I caused a true and correct copy of the

1. Application to Appoint Christopher J. McDonald & Labaton Sucharow LLP and Michael Roberts & Roberts Law Firm, P.A. as Interim Co-Lead Counsel for the Class Action;

2. Joint Declaration of Christopher J. McDonald And Michael Roberts in Support of Application to Appoint Christopher J. Mcdonald & Labaton Sucharow LLP and Michael Roberts & Roberts Law Firm, P.A. as Interim Co-Lead Counsel for the Dealer Class Actions; and

3. List of Exhibits to the Application to Appoint Christopher J. McDonald & Labaton Sucharow Llp And Michael Roberts & Roberts Law Firm, P.A. As Interim Co-Lead Counsel For The Dealer Class Actions,

to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/Gregory S. Asciolla*
Gregory S. Asciolla
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Tel.: (212) 907-0700
Fax: (212) 818-0477
gasciolla@labaton.com

*Counsel for Plaintiff Bob Baker Volkswagen*