**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | **MDL No. 2817**<br>**Case No. 18 C 864**<br><br>**This Document Relates to All Cases** |

**DECLARATION OF PEGGY J. WEDGWORTH IN SUPPORT OF MOTION
FOR APPOINTMENT OF THE MILBERG TADLER GROUP TO LEAD THE
DEALERSHIP CLASS ACTION**

I, Peggy J. Wedgworth, Esq., hereby swear and declare as follows:

1.  I have personal knowledge of the matters set forth herein, and could and would testify competently thereto if called upon to do so.

2.  I am duly admitted to practice in the State of New York and was admitted *pro hac vice* in this case by Order dated March 16, 2018 (ECF No. 66).

3.  I am a lead litigator, trial lawyer, and an equity partner at Milberg Tadler Phillips Grossman LLP ("Milberg Tadler"), one of the few prominent class action firms in the nation with a female named partner, Ms. Ariana Tadler. Ms. Tadler and I are the two female partners on the firm's four partner management team.[1] Milberg Tadler is a new firm that was launched in

---

[1] *See, e.g.*, Amanda Bronstad, *In Mass Torts -- Move Over, Mister*, Nat'l L.J., Feb. 16, 2015 ("The percentage of women lawyers in top, positions in general is low -- just 17 percent of partners are female at the nation's largest 200 firms, according to the National Association of Women Lawyers. And that data reflects mostly firms that serve as defense counsel. No statistics are available on the percentage of women on the plaintiffs side or specifically in mass torts, but lawyers in the practice area say that it has been overwhelmingly dominated by men."); *see also* Duke Law Center for Judicial Studies, *Standards and Best Practices for Large and Mass-Tort MDLs*, 58 (2014) ("[H]istorically, women and minority lawyers have not been appointed to leadership positions at rates proportionate to their representation in

January 2018 as the result of a strategic partnership between Milberg LLP and Sanders Phillips Grossman LLC to offer a diversified practice platform that includes class actions, mass torts, and complex litigation.

4.　　　I submit this declaration in support of the accompanying Motion For Appointment of The Milberg Tadler Group To Lead The Dealership Class Action. I seek appointment as Interim Lead Class Counsel, along with appointment of Leonard A. Bellavia of Bellavia Blatt, P.C., Daniel C. Hedlund and Michelle J. Looby of Gustafson Gluek PLLC, and Michael Schrag and Amy Zeman of Gibbs Law Group LLP, as members of a Plaintiffs' Steering Committee; and Kenneth A. Wexler of Wexler Wallace LLP as Liaison Counsel (collectively the "Milberg Tadler Group").

5.　　　A true and correct copy of Milberg Tadler Phillips Grossman LLP's general Firm Resume is attached hereto as Exhibit A.

6.　　　A true and correct copy of Gustafson Gluek PLLC's general Firm Resume is attached hereto as Exhibit B.

7.　　　A true and correct copy of Gibbs Law Group LLP's general Firm Resume is attached as Exhibit C.

8.　　　A true and correct copy of Wexler Wallace LLP's general Firm Resume is attached as Exhibit D.

9.　　　I am co-counsel for plaintiff, Teterboro Automall, Inc., the first complaint filed on behalf of auto dealerships against defendants, CDK Global, LLC and The Reynolds and Reynolds Company, on October 19, 2017. *See Teterboro Automall, Inc. v. CDK Global, LLC and The Reynolds and Reynolds Co.*, No. 2:17-cv-08714 (D.N.J.) (ECF No. 1) ("*Teterboro* Complaint").

the plaintiffs' bar generally. It cannot be said that there are not enough talented individuals with the education, background and experience to effectively lead MDL litigation to permit greater diversity.").

The *Teterboro* Complaint was transferred to this Court by order of the Judicial Panel on Multidistrict Litigation on February 1, 2018, and was related to the above-captioned litigation by Order of this Court dated February 15, 2018 (ECF No. 10).

10.     A true and correct copy of the *Teterboro* Complaint is attached as Exhibit E.

11.     I am also co-counsel for plaintiffs JCF Autos LLC, Jericho Turnpike Sales LLC, and Patchogue 112 Motors LLC, who together filed one complaint on November 22, 2017, which was also transferred to this Court, and is related to this litigation.  *See JCF Autos LLC v. CDK Global, LLC and The Reynolds and Reynolds Co.*, No. 2:17-cv-11975 (D.N.J.) ("*JCF Autos Complaint*") (ECF No .10).

12.     A true and correct copy of the *JCF Autos* Complaint is attached as Exhibit F.

### Case Investigation

13.     As the partner at Milberg Tadler who authorized the October 19, 2017 filing of the first complaint on behalf of Dealership Class plaintiffs, I led a team who thoroughly investigated and carefully developed the claims asserted by the plaintiffs on behalf of the proposed Class.  My firm, along with the Bellavia Blatt firm, expended considerable time and effort to investigate and assert claims representative of our client's and other dealerships' extreme concerns about the escalating costs associated with defendants' provision of their data management systems and data integration services.

14.     My team and I reviewed financial records, contractual documents, and other materials provided by dealers.  These records revealed price increases consistent with the illegal conduct the *Teterboro* Complaint alleges.  Under my supervision, Milberg Tadler's attorneys also compiled and reviewed industry analyses, pertinent articles, press releases, public announcements, and company reports.  And Milberg Tadler's in-house investigators and paralegals similarly expended considerable effort contributing to the pre-filing investigation.

3

15.     During the pre-filing investigation, my team and I also reviewed the briefing and publicly-available documents in the individual actions against defendants, *Motor Vehicle Software Corp. v. CDK Global, LLC*, No. 2:17-cv-00896 (C.D. Cal. filed Feb. 3, 2017) and *Authenticom, Inc. v. CDK Global LLC*, No. 3:17-cv-00318 (W.D. Wis. filed May 1, 2017), analyzing the publicly-available briefing, filings and documentation, and reviewing the decisions of the District Court of Wisconsin.[2]

16.     I personally appeared before the JPML in this matter on November 13, 2017.

17.     Since the filing of the complaint, I have worked diligently to advance the litigation and cooperatively to form a cohesive yet efficiently lean leadership group to represent the Dealership Class.   With regard to leadership issues and possibilities, I have spoken to Robert Kaplan, Jon Cuneo, Jim Barz, Paul Geller, Bob Clifford, Greg Asciolla, Mike Roberts, Mike Nemelka, Marvin Miller, Jim Cecchi and attorneys from the firms on my own proposed team, specifically Dan Hedlund, Eric Gibbs, Len Bellavia and Ken Wexler.

18.     As to the negotiations of standard initial matters, I have taken the lead role, on behalf of all plaintiffs' counsel, in substantially editing, circulating, and negotiating the draft Protective Order and ESI Protocol that I sent to defense counsel on March 19, 2018.  *See* March 12, 2018 Status Conference Transcript at 23:13-25:18; 31:24-32:14 (attached hereto as Exhibit G).

19.     I have also worked cooperatively with other counsel in overseeing the drafting, review and finalization of the Initial Status Report submitted to the Court on March 15, 2018 (ECF No. 64), and have taken the lead in coordinating the efforts with other plaintiffs' counsel and participated in meet and confers with same, as well as with defense counsel.

---

[2] We also reviewed the Seventh Circuit Court of Appeals opinion when it was issued on November 6, 2017.

20.     Mr. Gibbs, Mr. Schrag, Mr. Hedlund, and Mr. Wexler and I also attended, as well as participated in, the Status Conference before this Court on March 12, and the Milberg Tadler Group continues to interview and retain additional clients to bolster the Dealer Class's allegations against the defendants.

### Qualifications of Peggy J. Wedgworth

21.     I am a managing partner and Chair of the Antitrust Practice Group at Milberg Tadler.

22.     I have over 30 years of experience as a trial lawyer, with extensive experience in antitrust litigation, and specifically, high profile, complex antitrust class actions.  In the last five years, I have tried and served as co-lead trial counsel in two jury trials to verdict, with my most recent trial in 2016.

23.     I have practiced law since 1986, and have litigated complex and class actions in courts across the country, since 1990.  After serving as an Assistant District Attorney in Kings County (Brooklyn), New York from 1986-1989, I was a partner for over 15 years with the New York firm currently known as Lovell Stewart Halebian Jacobson LLP ("Lovell Stewart"); during that time I almost exclusively represented plaintiffs in commodities manipulation, antitrust and securities cases.

24.     I joined Milberg LLP in 2009, and since then I have continued almost exclusively representing plaintiffs in antitrust, consumer protection, securities, and *qui tam* actions.  I was one of the co-lead trial attorneys who successfully obtained a jury verdict against R.J. Reynolds in Florida state court in 2013, which verdict was sustained on appeal.[3]  I was promoted to partner at Milberg LLP in 2013; and in 2017, I was appointed to the firm's Management Committee.

---

[3] *R.J. Reynolds Tobacco Co. v. Hiott*, 129 So. 3d 473 (Fla. Dist. Ct. App. 2014).

25.     As further detailed below, my extensive class action and antitrust experience uniquely qualify me to serve as Interim Lead Class Counsel in this litigation.  My direct experience in litigating all aspects of large, complex class actions from inception through and including trial, is the type of experience needed to lead this antitrust litigation.

26.     I served as one of three partners at Lovell Stewart who led the firm's litigation on behalf of plaintiffs in both the securities and antitrust class actions in *In re Initial Public Offering Securities Litigation*, No. 21 MC 92 (S.D.N.Y.), one of the largest federal securities litigations then in history,[4] which involved the coordination of 309 separate class actions, with hundreds of defendants, including 55 investment banks, and tens of millions of pages of electronic records.  In addition to participating in all aspects of the litigation, I was personally responsible for crafting and implementing a prosecution plan against certain investment bank defendants, and I led a team where I worked directly with experts in all phases of that litigation.  While I personally conducted almost a dozen depositions in that litigation, I also led a team where I trained a substantial number of attorneys to take depositions.  I also worked with experts on preparing, defending and presenting their testimony in several settings.  After approximately 10 years of litigation, the case settled for $586 million.

27.     I also represent plaintiffs and am currently working with lead counsel in *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15md2626 (M.D. Fla.) (Schlesinger, J.) (Klindt, M.J.), where I have litigated numerous discovery issues and taken a substantial number of depositions relating to the claims against one particular defendant who recently settled.  The case is currently at the class certification stage.  I am currently working collaboratively with Mr. Schrag and Mr. Hedlund on this case, along with lead counsel.

---

[4] The Supreme Court ultimately dismissed the antitrust case based upon preemption grounds.  *Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264 (2007).

28.     I also have experience litigating in Illinois federal courts, and currently have other matters pending in the district.  Along with my firm colleague, Sanford Dumain, I currently lead the plaintiff's team representing Cook County in several cases pending in Illinois federal court against some of the largest banks in the country for Fair Housing Act violations which seek to address the substantial burdens counties have had to bear due to the banks' unlawful predatory lending and servicing practices known as "reverse redlining."  *See Cty. of Cook v. Wells Fargo & Co.*, No. 1:14-cv-09548 (N.D. Ill. filed Nov. 28, 2014) (Feinerman, J.); *Cty. of Cook v. HSBC N. Am. Holdings, Inc.*, No. 1:14-cv-02031 (N.D. Ill. filed Mar. 24, 2014) (Lee, J.); *Cty. of Cook v. Bank of Am. Corp.*, No. 1:14-cv-2280 (N.D. Ill. filed Mar. 31, 2014) (Bucklo, J.).

29.     These cases seek to recover the costs to the county for the banks' actions of systematically singling out minority neighborhoods for loans with inferior terms like high up-front, servicing and default fees.  This important litigation, though still in the motion practice phase, is a complex matter that requires skills, resources and expertise from very experienced trial counsel for complex matters such as myself.

30.     As to past cases in this district, I have extensive experience representing plaintiffs in matters where I have been responsible for depositions, expert work, summary judgment briefing, and trial preparation.  *See, e.g.*, *In re Soybean Futures Litig.*, No. 89-7009 (N.D. Ill.) (conducted and defended over 15 depositions (including experts) in three countries and numerous states where a $21,500,000 class settlement provided class members/soybean futures traders a full recovery under plaintiffs' expert's formula); *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-897 (N.D. Ill.) (second chaired expert depositions including a Nobel laureate who served as an economic expert where a $351 million settlement was achieved); *Kohen v. Pac. Inv. Mgmt. Co.*, No. 05-4681 (N.D. Ill.) (conducted and defended substantially all depositions (no less

than 10 fact and expert) including chief investment officer where a certified class of treasury bond futures purchasers alleged manipulation of the futures market, which case settled with the second largest class action under the CEA at the time).

31.     I have also actively participated in all phases of discovery on behalf of plaintiffs in other important antitrust and commodities litigation:  *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 07-cv-5944 (N.D. Cal.) (depositions and trial preparation); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998) (participated in investigating and drafting claims and discovery, which settled for $1,027,000,000); *Church & Dwight Co., Inc. v. Mayer Laboratories, Inc.*, No. C-10-04429 (N.D. Cal.) (led discovery, including depositions); *Blessing v. Sirius XM Radio, Inc.*, No. 09-cv-10035 (S.D.N.Y.) (worked on all aspects of discovery, summary judgment and trial matters); *In re Microsoft Corp. Antitrust Litigation,* MDL 1332 (D. Md.) (conducted depositions where an unlawful maintenance of a monopoly and other anticompetitive conduct by Microsoft was alleged resulting in favorable partial settlements); *In re Sumitomo Copper Litigation*, 74 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (conducted and defended numerous depositions (including experts), and conducted substantial discovery in Hong Kong and Tokyo, where "[t]he recovery is the largest class action recovery in the 75 plus year history of the Commodity Exchange Act."); *Leider v. Ralfe*, No. 01-cv-3137 (D.N.J.) (drafted complaint (along with partner) alleging price-fixing and monopolization in the diamond market by DeBeers resulting in a settlement of $250,000,000 and extensive injunctive relief); and *In re Natural Gas Commodities Litigation*, 03-cv-6186 (S.D.N.Y.) ($101 million settlement; worked on all phases of discovery).

32.     As a member of the New York State Bar Association's Antitrust Committee, I have served as both a speaker and panelist, and have twice served on Competition Law360's

Editorial Advisory Board. I have also served on the American Bar Association, Antitrust Committee, and am a member of the American Association of Justice.

33. I have been recognized as a New York Metro "Super Lawyer" from 2016 to 2018, whose primary practice is Antitrust, an honor reserved for those lawyers who exhibit excellence in practice. Only 5% of attorneys in New York Metro receive this distinction. I have also been recommended in the Legal 500 United States for 2016.

34. I also place great value on mentoring future attorneys, and have volunteered for a number of years at a local high school to assist students with their law academy trial team, preparing them for national mock trial competitions. I also frequently judge mock trial competitions, most recently a few months ago at a competition at Yale College.

35. If I am appointed as Interim Class Lead Counsel on behalf of dealerships, I commit to ensure efficiency among counsel, including the enforcement of Time and Expense Protocol guidelines, and I will closely monitor attorney time, only assigning and approving work that is absolutely necessary; excessive billing will not be accepted. A proposed guideline which my firm has implemented in other matters and somewhat adjusted for this litigation is attached as Exhibit H.

## Milberg Tadler Is the Right Firm For This Case

As Chair of the Antitrust Practice Group, I supervise a team of eight highly skilled and experienced attorneys who are committed to representing victims of antitrust violations. Our Antitrust Practice Group prosecutes large, complex antitrust and trade regulation class actions and other cases that target some of the most powerful and well-funded corporate interests in the world. The Antitrust Practice Group has played an important role in many cases involving price-fixing, supply manipulation, tying arrangements, exclusive dealing, and refusals to deal. Milberg

Tadler's significant antitrust cases include *Blessing v. Sirius XM Radio Inc.*, No. 09-cv-10035 (S.D.N.Y.) (Co-Lead Counsel; class settlement valued at $180 million); *Sandhaus v. Bayer AG, et al.*, No. 00-cv- 6193 (Kan.) (Co-Lead Counsel, secured largest Kansas-only antitrust indirect purchaser pharmaceutical recovery in state history: $9 million settlement); and *In re Fresh and Process Potatoes Antitrust Litigation*, No. 4:10-md-2186 (D. Idaho) (Co-Lead Counsel for Indirect Purchaser Plaintiffs, $5.5 million settlement and agreed upon injunctive relief). The Milberg Tadler Antitrust Practice Group continues to act in a number of significant and ongoing antitrust cases including *In re Liquid Aluminum Sulfate Antitrust Litigation*, No. 16-md-2687 (D.N.J.) (Plaintiffs' Steering Committee member); *In re Processed Eggs Antitrust Litigation*, MDL No. 2002 (E.D. Pa.) (Indirect Purchaser Plaintiffs' Co-Lead Counsel); and *In re Disposable Contact Lens Antitrust Litigation*, No. 3:15-md-02626 (M.D. Fla.).

36. Milberg Tadler is a full service complex litigation firm whose attorneys are experienced class action and trial lawyers. Throughout its history, the firm has taken the lead in landmark cases that set legal precedents benefitting consumers and shareholders, and has remained at the forefront in its areas of practice. *See*, *e.g.*, *In re Vivendi Universal, S.A. Securities Litigation,* No. 02 Civ. 5571 (S.D.N.Y.) (One of two lead trial counsel, jury awarded damages valued at well over a billion dollars; damages have been distributed to U.S. class members totaling over $100 million.); *In re Merck & Co., Inc. Securities Litigation*, MDL No. 1658 (D.N.J.) (Co-Lead Counsel, $1.062 billion recovery).

37. Milberg Tadler also has a renowned e-discovery team, which provides dedicated counsel on all facets of e-discovery including discovery strategy, data preservation, data collection and storage, sophisticated data search and analysis, production, and computer forensic investigation, as well as training on e-discovery issues, including the application of the recent

amendments to the Federal Rules of Civil Procedure, local rules, and state law. The Firm's e-discovery practice is led by partner Ariana J. Tadler, one of the most respected e-discovery practitioners in the field. Ms. Tadler is the only plaintiffs' lawyer to achieve the Nationwide Litigation E-Discovery Band 1 ranking by Chambers and Partners. Ms. Tadler is Chair Emeritus and continues to be an active member of The Sedona Conference® Steering Committee for Working Group I on Electronic Document Retention and Production, the preeminent "think tank" on e‑discovery. She also serves on the Advisory Boards of Georgetown University Law Center's Advanced E-Discovery Institute and Cardozo's Data Law Initiative (for which she recently completed her service as the Executive Director). Ms. Tadler was recently appointed by United States Supreme Court Chief Justice John Roberts to serve on the United States Judicial Conference Advisory Committee on Federal Rules of Civil Procedure.

38. The Milberg Tadler Group application's for appointment as leadership for the Dealership Class in this litigation is further supported by the Declarations of Andrew Weill, President of the National Association of Dealer Counsel, attached to the Declaration of Leonard A. Bellavia as Exhibit 1; the Declaration of Robert Vancavage, the President of the New York State Automobile Dealers Association, attached to the Declaration of Leonard A. Bellavia as Exhibit 2; and the firms, Isaac Wiles Burkholder & Teetor, LLC, WM Law,[5] Goldman Scarlato & Penny, P.C., Lockridge Grindal Nauen P.L.L.P, Taus Cebulash & Landau, LLP, and Berger & Montague, P.C.[6]

---

[5] Issac Wiles Burkholder & Teeter, LLC and WM Law are counsel in *Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota v. CDK Global, LLC and The Reynolds and Reynolds Co.*, No: 3:18-cv-29 (S.D. Ohio).

[6] Wexler Wallace, LLP, Gustafson Gluek PLLC, and Berger & Montague, P.C. are counsel in *Waconia Dodge, Inc. v. CDK Global, LLC*, 1:18-cv-1707 (N.D. Ill.).

39.     A true and correct copy of a chart of Judges who can attest to my and/or my firm's work, along with Bellavia Blatt, P.C., Gustafson Gluek PLLC, Gibbs Law Group LLP, and Wexler Wallace LLP firms is attached as Exhibit I.

40.     I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26th day of March, 2018 at New York, New York.

*/s/ Peggy J. Wedgworth*
PEGGY J. WEDGWORTH