IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| | This Document Relates to All Cases |

STIPULATED ORDER RE: DISCOVERY
OF ELECTRONICALLY STORED INFORMATION ("ESI")
_____

Unless otherwise agreed to by the parties, this Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules.[1] The purpose of this Order is to expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality and privilege, and protect material to be kept confidential or privileged, pursuant to Federal Rule of Civil Procedure 26(c), Federal Rule of Evidence 502(d) and the Court's inherent authority. Capitalized terms in this Order are defined in the attached Exhibit A.

1.    COOPERATION

The parties commit to cooperate in good faith regarding discovery issues pertaining to ESI, consistent with the Seventh Circuit Electronic Discovery Pilot Program Principle 1.02.

_____

[1] To the extent Documents or ESI that were previously produced by the Producing Party in *Authenticom, Inc. v. CDK Global LLC*, 3:17-cv-00318 (W.D. Wis.) are re-produced in this MDL, the Producing Party, subject to its objections to the request, may produce the previously-produced Documents or ESI according to the specifications set forth in the Stipulated Order re: Discovery of Electronically Stored Information entered in *Authenticom* (ECF No. 224), even if such specifications are different from the specifications in this Order.

## 2.    LIAISON

Pursuant to Seventh Circuit Electronic Discovery Pilot Program Principle 2.02, the parties will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.  The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## 3.    PRESERVATION

Pursuant to Seventh Circuit Electronic Discovery Pilot Program Principle 2.03, the parties have discussed their preservation obligations and agree to meet and confer at an early practicable time regarding proper ESI preservation, if needed, and to continue those discussions, if needed.  The following categories of ESI are not discoverable—and, to the extent that they exist, need not be retained, processed, reviewed, or produced—except upon a showing of good cause: (a) temporary data stored in a computer's random access memory (RAM), or other ephemeral data; (b) common operating system and program files (for the avoidance of doubt, this does not include user-created Documents stored in system and shared folders; rather, this refers to software files needed to run and open systems and programs); (c) deleted, slack, fragmented, unallocated data, or data that no longer has a file marker on hard drives; (d) backup data that is duplicative of data that is preserved in an equally or more accessible format; (e) information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source; (f) on-line access data such as temporary internet files, history, cache, cookies, etc.; (g) data in metadata fields that are

frequently updated automatically, such as last-opened dates; and (h) other forms of ESI agreed upon between the parties whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

ESI from the following sources will be preserved to the extent that the respective party would preserve this ESI in the ordinary course of business: (a) recorded voice messages, including voice mail in WAVE (.wav) file formats; (b) logs of calls made from mobile devices; and (c) text or pin-to-pin messages sent to or from mobile devices (e.g., iPhone and Blackberry devices). The parties further agree that back-ups and other long-term storage media need be preserved only to the extent they contain potentially relevant ESI that is non-duplicative of ESI available from other sources being preserved in connection with this litigation, provided the ESI from said other sources is equally or more accessible.

**4.      ESI SEARCH METHODOLOGY**

The parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms, to the extent their use is agreed to, and/or other protocols used to search for ESI responsive to document requests served pursuant to Fed. R. Civ. P. 34. The parties shall meet and confer as early as possible to discuss, *inter alia*:

- Disclosure and use of search terms used to search for documents responsive to document requests, including semantic synonyms. Semantic synonyms shall mean without limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to the discovery of relevant ESI.

- Document custodians and relevant date limitations.

- Custodial and non-custodial electronic sources.

- Post-search error sampling and sampling/testing reports, if any.

- Potential use of computer-assisted review or predictive coding techniques. Predictive coding/computer-assisted-review shall not be used for the purpose of

culling the Documents to be reviewed or produced without notifying the requesting party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

To the extent that Documents responsive to requests served under Fed. R. Civ. P. 34 can be identified and produced without the use of search terms, custodians, or date limitations, the parties will make good-faith, diligent efforts to produce those responsive Documents without the listed limitations and  as soon as practicable, prior to reaching agreement or resolving any disagreements over search criteria.  The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including any supplemental requests to add additional search terms based on supplemental document productions by either party. The parties agree to work collaboratively, to complete their productions of Documents identified as material to expert and class certification motions and disclosures reasonably in advance of related case deadlines so as not to unnecessarily delay the proceedings.  Similarly, where depositions of particular document custodians are requested, the parties will produce responsive Documents pertaining to that custodian no fewer than thirty days before his or her deposition.

**5.      PRODUCTION FORMATS**

The parties agree that Documents produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic form in the manner as described below to the extent possible and practicable.   Notwithstanding the foregoing provisions of this paragraph, the parties reserve the right to request that an alternative format or method of production be used for certain Documents.  In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, concerns, formats, or methods.

**(a)** **Document Format.** Documents shall be produced according to the following formats:

(i) <u>Electronic Production of Paper Documents</u>. Documents that are maintained in paper format shall be scanned per Document and converted to a Static Image, and, except as otherwise provided below, shall be produced as black and white 1-bit TIFF images at 300 x 300 d.p.i. or greater resolution, in Group 4 compression single-page TIFFs and reflect the full and complete information contained in the original source Document. Documents shall also be produced with the associated OCR, and with an image cross-reference file and a load file, in accordance with paragraph 5(a)(ii-iii), below. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

(ii) <u>Electronically Stored Information</u>. Except as provided in paragraph 5(a)(iv) below, Document images shall be generated from electronic Documents in a Group IV 300DPI compression single-page black and white "TIFF" image that reflects the full and complete information contained on the original source Document. All black and white images must be in 1-bit TIFF image format and color Documents, if applicable, must be in single page 24 bit JPG image format, together with a Load File or functional equivalent specified in Paragraph 5(a)(iii) that contains a reference to the corresponding image information. In the alternative, Document images may be produced in 24 bit color regardless of whether the original source Document is in color. The acceptable formats

5

for the image cross-reference files shall include an .opt file. The image load files should indicate Document breaks. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.

(iii)     <u>File Structure</u>. Each production shall include the following unless otherwise agreed between the parties:

**a.     Index File:**

- Each production has one index file, in .DAT file format.

- The format of the DAT file should use UTF-8 encoding.

- Standard Concordance delimiters shall be used
  - Comma — ASCII character 20 (¶)
  - Quote — ASCII character 254 (þ)
  - Newline — ASCII character 174 (®)

- First line must contain the column/field names (set forth in paragraph 5(i) herein)

- The fields BEGBATES, ENDBATES, TEXTPATH and NATIVELINK must be present

- Each subsequent row must contain the Metadata for one Document

- Every row must have the same number of columns/fields (empty values are acceptable)

- File should be placed in the root directory

**b.     OCR and Extracted Text Files (.TXT Files):**

- A single text file for each Document containing all the Document's pages, in text

- ESI shall be produced with multi-page searchable Extracted Text. "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information. For ESI from which text cannot be

extracted or that contains redactions, OCR will be produced instead

- Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the Document, filenames should not contain spaces

- Text must be encoded in UTF-8 format

- The TEXTPATH of the OCR or Extracted Text files should be included as a field in the DAT file listed above

- Files should be placed in the *text/* subdirectory

c.  **Image Files:**[2]

- A single image for each page in each Document

- A single image per file (no multi-page image files)

- The default format should be 1-bit black and white single-page TIFF images and single page 24-bit color JPG images, if applicable; or alternatively, images may be produced in 24 bit color regardless of whether the original source Document is in color

- Filenames should be of the form: <Bates num>.<ext>, where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif, .png, etc.), filenames should not contain spaces

- Files should be placed in the *images/* subdirectory

d.  **Native Files:**

- Native files need only be produced for (a) Microsoft Excel files, (b) Microsoft PowerPoint files, and (c) other files that the parties may agree should be produced natively pursuant to paragraph 5(a)(iv), below

- Where Documents are produced in Native Format (pursuant to paragraph 5(a)(iv) below) the file name for the produced native file shall be the Bates number of the associated Document

---

[2] Not required for documents produced in Native Format.

- The filename of a native file must retain the file extension corresponding to the original Native Format; for example, an Excel 2003 spreadsheet's extension must be .xls

- Each native file filename must correspond to the NATIVELINK metadata field in its corresponding Document's row in the DAT file

- Where native files are produced pursuant to this subsection, it is unnecessary to produce Image files, such as TIFF images, other than the bates stamped native placeholder documents discussed below

- Native files should be placed in the *natives* subdirectory

(iv) <u>Native Format Documents</u>.   The parties recognize that it may be appropriate for certain Documents to be produced in Native Format.   Therefore, the Producing Party shall produce all .XLS spreadsheets (or other electronic spreadsheets), .PPT presentations (or other electronic slideshows), audio files and video files,   in Native Format unless there is an agreement to the contrary. If a Document is produced in native, a single-page, Bates stamped image slip sheet stating the Document has been produced in native format and containing any confidentiality designation should also be provided. Each native file should be named according to the Bates number it has been assigned, and should be linked directly to its corresponding record in the load file using the NATIVELINK field.   The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed, or for which there is no visual representation, such as audio files.   The parties will meet and confer regarding such requests in good faith.

If a Document to be produced as a Native Format contains privileged information as well as non-privileged information and requires redactions, it may be produced in

TIFF format with redactions rather than native format. If a party asserts that this renders the Document unusable, the parties should meet and confer regarding whether a different redaction method is necessary to ensure that proper formatting and usability are maintained. When a Document or email is withheld in its entirety, all metadata associated with the withheld Document is excluded from the metadata DAT file.

To the extent the Producing Party wishes to establish additional procedures for the protection of confidential information as defined in any applicable Confidentiality Order entered herein produced in Native Format, the Producing Party and the Receiving Party shall meet and confer and establish additional procedures, if necessary, for the protection of the information in Native Format.

(v)    <u>Color</u>. Powerpoints, including redacted Powerpoints, excel spreadsheets, and other graphical Documents shall be produced in color in the first instance. Otherwise, Documents shall be produced in black and white in the first instance, or alternatively, in 24 bit color. If a black-and-white produced Document contains color and that color is necessary to decipher the meaning, context, or content of the Document, the Producing Party shall honor reasonable requests for either the production of the original source Document for inspection and copying or production of a color image of the Document.

(vi)    <u>Resolution of Production Issues</u>. If Documents cannot be read because of imaging or formatting problems, the Producing Party and the Receiving Party shall meet and confer to attempt to resolve problem(s), to the extent the problem(s) are within the parties' control.

(vii)     <u>Tracked Changes and Comments.</u>  To the extent that a Document contains tracked changes or comments, the Document should be imaged showing tracked changes and comments.

(viii)     <u>Password Protected Files</u>.  The Producing Party shall make reasonable efforts to remove passwords or other security protection from Documents prior to production.

(ix)     <u>Embedded Documents</u>.  If reasonably possible, embedded ESI Documents (*e.g*., a spreadsheet embedded within a word processing document) will be extracted, produced as independent Document records and related back to the respective top level parent Document (*e.g*., standalone file, email message, etc.) via the BegAttach and EndAttach fields referenced in Exhibit B.  Related Documents will be produced within a continuous Bates range.  For the avoidance of doubt, this provision does not apply to hyperlinks reflected in ESI Documents.

(x)     <u>Support for Experts' Opinions</u>.  Documents supporting a Producing Party's expert opinions shall be produced in Native Format to the extent required by paragraph 5(a)(iii)(d).  All other Documents supporting the Producing Party's experts' opinions shall be produced as PDF files in color where the original source Document contains color and color is necessary to decipher the meaning, context or content of the Document.

**(b)**     **Production Media.**  A Producing Party shall produce Documents on such readily accessible computer or electronic media as the Producing Party and the Receiving Party may hereafter agree upon (the "Production Media").  Information on the face of the Production Media shall include: (1) the production date, and (2) the confidentiality notation required by the

Confidentiality Order entered in this case, if the media contains Confidential Information, as defined in the Agreed Confidentiality Order. The face of the Production Media shall also contain the Bates Number range(s) of the Documents on the Production Media, and where not practicable to do so, may be provided in an accompanying letter. If the Producing Party encrypts or "locks" the production, the Producing Party shall include with the production or in a separate letter or email an explanation of how to decrypt the files. The parties agree to the following production formats: SFTP site, CD, DVD or external USB hard drive,

(c)     **Production of Structured Data.** To the extent a response to discovery requires production of discoverable electronic information contained in a Database the parties will meet and confer regarding methods of production. The parties shall meet and confer as to which fields are relevant, and consider whether, the parties may agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (*e.g.*, Excel or CSV format) for review by the Requesting Party or counsel. Upon review of the report(s), the Requesting Party may make reasonable requests for additional information to explain the Database scheme, codes, abbreviations, and different report formats or to request specific data from identified fields.

(d)     **Document Unitization.** Paper Documents scanned into Document Images shall be logically unitized in a manner so as to maintain the Document(s) and any attachments, as they existed in their original state, if possible. For example, Documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first Document in the container. The back cover of the container should be produced immediately after the last Document in the container. The parties will undertake reasonable efforts to, or have

their vendors, logically unitize Documents in accordance with the requirements of this paragraph, but nothing in this paragraph shall require the parties to undertake efforts to unitize Documents that would be unduly burdensome or to produce all Documents in a container. The parties agree to meet and confer to address situations in which a party believes that Documents have not been properly unitized. For electronic Documents, the relationship of Documents in a Document collection (*e.g.*, cover letter and enclosures, e-mail and attachments, binder containing multiple Documents, or other Documents where a parent-child relationship exists between the Documents) shall be maintained through the scanning or conversion process from Native Format to TIFF, provided however that the parties shall only be required to present one level of parent-child relationship. Document Images generated from attachments to e-mails shall be produced contemporaneously and sequentially immediately after the parent e-mail. All paper Documents imaged and produced electronically shall include a unitization file ("load file") in accordance with paragraph 5(a)(iii)(a).

(e) **Parent-Child Relationships.** For paper Documents, the parties shall undertake reasonable efforts to preserve parent-child relationships within a Document family (the association between an attachment and its parent Document). The child-Document(s) should be consecutively produced immediately after the parent-Document. The parties shall undertake reasonable efforts to produce each Document with the production number for the first and last page of that Document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the Document family. Nothing in this paragraph shall require the parties to undertake unduly burdensome efforts to preserve parent-child relationships within a Document family for hard copy Documents. The parties agree to meet and confer to address situations in which a party

believes that parent-child relationships have not been adequately preserved. For electronic Documents, the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent Document shall be preserved. The child-Document should be consecutively produced immediately after the parent-Document. Each Document shall be produced with the production number for the first and last page of that Document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the Document family.

(f)     **Duplicates.** The Producing Party shall remove duplicate Documents pursuant to the following limitations: removal of duplicates shall only be done on exact duplicate Documents (based on MD5 or SHA-1 hash values at the Document family level). As a general rule, a Producing Party may de-duplicate its production across the entire production (cross-custodian/globally) or across custodians. De-duplication must be performed at the Document family level. Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in Document families. When a Producing Party de-duplicates across the entire production (globally), the Producing Party shall provide the name of each custodian possessing the de-duplicated copy. E-mail that includes content on the "bcc" or other blind copy field shall not be treated as duplicate of an e-mail that does not include content in the "bcc" or other blind copy field, even if all remaining content in the e-mail is identical. The names of the custodians should be entered into the Custodian and Duplicate Custodian fields as described in Exhibit B. Nothing in this paragraph is intended to resolve a Producing Party's objections in written discovery requests on the ground that the request is duplicative because the requested Documents were produced or are being produced by other parties. With respect to paper or other

Documents for which metadata does not exist, a Producing Party may only de-duplicate within a source (*e.g.*, custodian).

(g)     **Paper Documents Containing Fixed Notes.**  Paper Documents that contain fixed notes shall be scanned with the notes affixed, if it can be done so in a manner so as not to obstruct other content on the Document.  If the content of the Document is obscured by the affixed notes, the Document and note shall be scanned separately.

(h)     **Bates Numbering and Other Unique Identifiers.**  Each Producing Party shall Bates number its production(s) as follows:

(i)     Document Images.  Each page of a produced Document—except Native Files—shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source Document.  The Bates Numbers shall be enumerated as defined in the Definitions.  The Producing Party will use a consistent prefix throughout the matter unless good reason exists for using a different prefix.  No other legend or stamp will be placed on the Document Image other than a confidentiality legend (where applicable), redactions, the Bates Number identified above, and any other internal tracking number that the Producing Party may choose to use.  The confidentiality legend shall be "burned" onto a Document's image at a location that does not unreasonably obliterate or obscure any information from the source Document.

(ii)     Native Format Documents.  In the event Native Format Documents are produced, in order to preserve the integrity of those Native Format Documents, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document unless otherwise agreed between the Producing Party

and the Receiving Party during any meet and confer related to confidentiality protections for Native Format Documents; however, the Producing Party will provide a MD5 Hash Value for each Native Format Document.

**(i)** **Metadata.** The Producing Party shall produce the metadata information described in Exhibit B, if available, with each production and in the format described in Paragraph 5(a)(iii)(a) above. With the exception of CUSTODIAN, DUPLICATECUSTODIAN (where such duplicate custodian exists), HASHMD5, BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, REDACT, RECORD TYPE (other than for hard copy documents), TEXTPATH, NATIVELINK (when native file produced) and CONFIDENTIALITY fields identified in Exhibit B, the Producing Party has no obligation or duty to fill in any metadata fields or create any metadata that is not present in the original source file. For each Document, the Producing Party shall produce a line in the index file with the fields identified in Exhibit B, where available. For produced or to be produced ESI other than email and e-docs that do not conform to the metadata listed in Exhibit B, the parties will meet and confer as to whether additional metadata fields should be produced.

**(j)** **Compressed Files.** Compression file types (*i.e.*, .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

**(k)** **E-mail Thread Suppression:** Email threads are email communications that contain prior or lesser-included email communications. A most inclusive email thread is one that contains all of the prior or lesser-included emails and attachments, including each branch of the email thread. To the extent any party intends to suppress lesser-included emails, they shall meet-

and-confer with the other parties regarding whether suppression is appropriate and the appropriate means to do so.

(l) **Culling and Filtering.** Each party will use reasonable efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of system file types based on file extension may include, but are not limited to: WINNT, LOGS, DRVS, C++ Program File (c), C++ Builder 6 (cpp), Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), temporary files (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.py, .pyc, .pud, .pyw), Program Installers. The parties agree to meet and confer regarding which file types may be appropriate to cull or filter in an effort to preserve files relevant to this litigation.

## 6.      OBJECTION TO PRODUCTION FORMAT

If either party objects to producing requested information in the formats described herein because of undue burden or cost, before asserting such an objection, the responding party will inform the requesting party of any format in which it is willing to produce the requested data, the nature and location of the information claimed to not be reasonably accessible, the reason(s) why the requested form of production would impose an undue burden or is unreasonably costly.

16

7.      **INACCESSIBLE DATA**

If a Producing Party asserts that production of certain ESI is inaccessible or otherwise unnecessary or inadvisable under the circumstances, or if the Requesting Party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions.  If the parties cannot resolve any such disputes after such a meet and confer has taken place, the issue shall be presented to the Court for resolution.

8.      **DISPUTE RESOLUTION**

The parties shall meet and confer in good faith to resolve any dispute regarding a proposed deviation from the provisions of this stipulation.  To the extent the parties are unable to resolve any such dispute, each party reserves the right to seek judicial intervention in compliance with the relevant court rules and orders.

9.      **DOCUMENTS PROTECTED FROM DISCOVERY**

**(a)      Privilege Logs.**  For any Document withheld in its entirety or produced but redacted on the basis of privilege or work product protections, the party, including any third party, withholding the Document(s) (the "Withholding Party") will produce privilege/redaction logs consistent with the requirements of the Federal Rules of Civil Procedure.  The Withholding Party's logs shall be in Excel format or any other format that permits electronic sorting and searching, except that the parties shall have no obligation to log communications with outside counsel generated on or after May 1, 2017, or the filing of the Requesting Part(ies)' complaint(s) (whichever is earlier).  Logs shall be produced within a reasonable time.

Subject to any approved alternative logging process described below, the privilege/redaction logs shall be detailed enough to enable other parties to assess the applicability

of the privilege asserted and must identify the custodian, author, recipient(s), date, Bates or production number, privilege and/or doctrine relied upon, the subject matter of the document and provide a description of the Document and/or Document family by type and content consistent with the Federal Rules of Civil Procedure. Each privilege/redaction log should include the entries of all prior privilege logs, such that each subsequent privilege log supersedes previous logs. To the extent any previous designations are subsequently modified or withdrawn since the prior log, they shall be so noted in any subsequent log to ensure clarity.

(b) **Privileged Emails.** For each Document comprising a chain of privileged e-mails, the Withholding Party need only include one entry for the top/most recent email on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately. However, this does not relieve the Withholding Party of the obligation to produce non-privileged responsive emails and attachments lower down the email chain. A Document family (email and attachments) may be logged as a single entry so long as the description of that entry includes a reference to the privileged attachments. Notwithstanding this paragraph (b), the Witholding Party must produce all non-privileged emails in a chain and only redact the privileged portion of any email that is part of that chain.

(c) **Alternative Logging Protocol for Categorical Privilege Claims.** The parties agree to meet and confer regarding the production of privilege logs for categories of withheld documents. The parties will discuss what information the Withholding Party's logs may provide, to give a detailed enough description to enable other parties to assess the applicability of the privilege asserted including:

(i) A listing of such ESI providing as much objective metadata as is reasonably available (*e.g.*, document control number, date, author(s), recipient(s), file

type, etc.) and an indication of the privilege and/or protection being asserted; and a description of the subject matter of the documents or reason for withholding the documents or information, which will enable other parties to assess the claim of privilege. The description or reason for withholding may be coded in connection with review fields used in an electronic document review database.

(ii) In accordance with the Seventh Circuit Electronic Discovery Pilot Program Alternative Privilege Logging Protocol, the parties also agree to meet and confer regarding any categories of ESI and documents that the withholding party asserts are privileged or protected and for which withholding party proposes that individual review of the category is not worth the time and/or expense necessary to do so.

**(d)** **Challenges to Privilege Claims.** If a party challenges an assertion of privilege or protection from discovery, then the parties shall meet and confer and make a good faith effort to resolve or narrow the challenge, and if the challenge cannot be resolved, the party challenging the claim of privilege may file a motion seeking the Court's ruling on the issue.

**(e)** **Other Procedures.** Information produced pursuant to this Order that is subject to a claim of privilege or confidentiality shall be treated in a manner consistent with the procedures set forth in the Agreed Confidentiality Order entered in this matter.

**10.** **MODIFICATION**

This Order shall be subject to modification by the Court on its own initiative or on motion of a party or any other person with standing concerning the subject matter.

**IT IS SO STIPULATED**, through the below-identified counsel of record.

Date: April 6, 2018

_____

**AMY J. ST. EVE**
**United States District Court Judge**

Dated:  April 3, 2018

Respectfully Submitted,

_/s/ Aundrea K. Gulley_
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
**GIBBS & BRUNS LLP**
1100 Louisiana Street, Suite 5300
Houston, TX  77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
**SHEPPARD MULLIN RICHTER**
  **& HAMPTON, LLP**
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC  20006
(202) 747-1900
mcohen@sheppardmullin.com

_Counsel for Defendant The Reynolds and_
_Reynolds Company_

_/s/ Britt M. Miller_
Britt M. Miller
Matthew D. Provance
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL  60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
**MAYER BROWN LLP**
1999 K Street, NW
Washington, DC  20006
(202) 263-3000
mryan@mayerbrown.com

_Counsel for Defendants CDK Global, LLC,_
_CDK Global, Inc., and Computerized_
_Vehicle Registration_

20

/s/ Michael N. Nemelka
Michael N. Nemelka
Derek T. Ho
Aaron M. Panner
Joanna T. Zhang
Joshua Hafenbrack
**KELLOGG, HANSEN, TODD,**
**FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7932
mnemelka@kellogghansen.com
dho@kellogghansen.com
apanner@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com

Jennifer L. Gregor
Kendall W. Harrison
**GODFREY & KAHN S.C.**
One East Main Street, Suite 500
Madison, Wisconsin 53703
(608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com

Samuel Issacharoff
40 Washington Square South
New York, NY 10012
(212) 998-6580
si13@nyu.edu

*Counsel for Plaintiffs Authenticom, Inc.,*
*Motor Vehicle Software Corporation, Cox*
*Automotive, Inc., Autotrader.com, Inc.,*
*Dealer Dot Com, Inc., Dealertrack, Inc.,*
*HomeNet, Inc., Kelley Blue Book Co., Inc.,*
*vAuto, Inc., VinSolutions, Inc., and Xtime,*
*Inc., and Bob Baker Volkswagen*

/s/ Gregory Asciolla
Gregory Asciolla
Christopher J. McDonald
Karin E. Garvey
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
(212) 907-0700
gasciolla@labaton.com
cmcdonald@labaton.com
kgarvey@labaton.com

*Counsel for Plaintiff Bob*
*Baker Volkswagen*

/s/ Victoria Romanenko
Jonathan W. Cuneo
Victoria Romanenko
Jennifer Kelly
Yifei Li
**CUNEO GILBERT & LADUCA, LLP**
Suite 200
4725 Wisconsin Avenue, NW
Washington, DC 20016
(202) 789-3960
jonc@cuneolaw.com
vicky@cuneolaw.com
jkelly@cuneolaw.com
evelyn@cuneolaw.com

/s/ Shawn M. Raiter
Shawn M. Raiter
**LARSON KING, LLP**
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com

*Counsel for Hartley Buick GMC Truck, Inc.*

*/s/ Robert N. Kaplan*
Robert N. Kaplan
Gregory Arenson
Jeffrey P. Campisi
Elana Katcher
Aaron Schwartz
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue; 14th Floor
NY, NY 10022
(212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
jcampisi@kaplanfox.com
ekatcher@kaplanfox.com
aschwartz@kaplanfox.com

Gary L. Specks
423 Sumac Road
Highland Park, Illinois 60035
Telephone: (847) 831-1585
Facsimile: (847) 831-1580
gspecks@kaplanfox.com

*Counsel for Plaintiffs Hartley Buick GMC,Truck, Inc., Cox Motors N.C., Inc. d/b/a Cox Toyota, and Northtown Automotive Companies Inc.*

*/s/David McMullan, Jr.*
David M. McMullan, Jr.
Don Barrett
Sterling Starns
**BARRETT LAW GROUP, P.A.**
404 Court Square
Lexington, Mississippi 39095
Telephone: (662) 834-2488
Fax: (662) 834-2628
dmcmullan@barrettlawgroup.com

*Counsel for John O'Neil Johnson Toyota, LLC*

*/s/ James E. Barz*
James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
(312) 674-4674
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900 San Diego, CA 92101-8498
(619) 231-1058
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

Samuel H. Rudman
**ROBBINS GELLER RUDMAN & DOWD LLP**
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100
SRudman@rgrdlaw.com

Brian J. Robbins
George C. Aguilar
Michael J. Nicoud
**ROBBINS ARROYO LLP**
600 B Street, Suite 1900 San Diego, CA 92101 Telephone: (619) 525-3990
brobbins@robbinsarroyo.com
gaguilar@robbinsarroyo.com
mnicoud@robbinsarroyo.com

*Counsel for Plaintiff Baystate Ford Inc.*

*/s/ Charles Barrett*
Charles Barrett
**NEAL & HARWELL, PLC**
1201 Demonbreun St.
Suite 1000
Nashville, TN 37203
(615) 268-3647
Cbarrett@nealharwell.com

Michael Roberts
Karen Halbert
Jana K. Law
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, Arkansas 72223
(501) 821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
janalaw@robertslawfirm.us

*Counsel for Plaintiff Hoover Automotive, LLC*

*/s/ Marvin A. Miller*
Marvin A. Miller
Andrew Szot
Lori A. Fanning
Matthew E. Van Tine
Kathleen Boychuck
**MILLER LAW LLC**
115 S. LaSalle St., Ste. 2910
Chicago, Illinois 60603
(312) 332-3400
mmiller@millerlawllc.com

*Counsel for Plaintiff F.G. Downing Development, Inc.*

*/s/ Eric H. Gibbs*
Eric H. Gibbs
Michael L. Schrag
Aaron Blumenthal
Amy M. Zeman
**GIBBS LAW GROUP, LLP**
505 14th Street, Suite 1110
Oakland, CA 94612
(510) 350-9700
ehg@classlawgroup.com
mls@classlawgroup.com
ab@classlawgroup.com
amz@classlawgroup.com
*\*to be admitted pro hac vice*

Mark H. Troutman
Shawn K. Judge
Gregory M. Travalio
**ISAAC WILES BURKHOLDER & TEETOR, LLP**
Two Miranova Place, Suite 700
Columbus, OH 43215-5098
(614) 221-2121
mtroutman@isaacwiles.com
sjudge@isaacwiles.com
gtravalio@isaacwiles.com

Paul C. Peel
**FARRIS BOBANGO BRANAN, PC**
999 South Shady Grove Road, Suite 500
Memphis, TN 38120
(901) 259-7100
ppeel@farris-law.com
*\*to be admitted pro hac vice*

*Attorneys for Plaintiff Kenny Thomas Enterprises, Inc. (d/b/a Olathe Toyota)*

23

*/s/ W. Daniel "Dee" Miles, III*
W. Daniel "Dee" Miles, III
Archie I. Grubb, II
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS, & MILES, P.C.**
218 Commerce Street
Montgomery, AL 36104
(334) 269-2343
Dee.Miles@BeasleyAllen.com
Archie.Grubb@BeasleyAllen.com

Ralph Edward Massey, Jr.
**CLAY, MASSEY & ASSOCIATES**
509 Church Street
Mobile, AL 36602
(251)433-1000
em@claymassey.com

Michael Stephen Dampier
**THE DAMPIER LAW FIRM, PC**
55 North Section Street Fairhope,
AL 36532
(251) 929-0900
steve@dampierlaw.com

*Counsel for Massey Chrysler Center, Inc.,
and Massey Automotive*

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
Andrei V. Rado
Elizabeth A. McKenna
**MILBERG TADLER PHILLIPS
GROSSMAN, LLP**
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com
arado@milberg.com
emckenna@milberg.com

Leonard A. Bellavia
**BELLAVIA BLATT, P.C.**
200 Old Country Road, Suite 400
Mineola, NY 11501
(516) 873-3000
lbellavia@dealerlaw.com

*Counsel for Plaintiffs Teterboro Automall,
Inc., JCF Autos LLC, 440 Jericho Turnpike
Sales LLC, and Patchogue 112 Motors LLC*

*/s/ Kenneth A. Wexler*
Kenneth A. Wexler
Bethany R. Turke
Thomas A. Doyle
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, Illinois 60603
(312) 346-2222
kaw@wexlerwallace.com
brt@wexlerwallace.com
tad@wexlerwallace.com

Daniel E. Gustafson
Daniel C. Hedlund
David A. Goodwin
Michelle J. Looby
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
(612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mlooby@gustafsongluek.com
dnordin@gustafsongluek.com

Brian D. Penny
Paul J. Scarlato
**GOLDMAN SCARLATO & PENNY, P.C.**
161 Washington Ave, Suite 1025
Conshohocken, PA 19428
(484) 342-0700
penny@lawgsp.com
scarlato@lawgsp.com

Heidi M. Silton
Anna M. Horning Nygren
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
amhorningnygren@locklaw.com

Kevin Landau
Tess Bonoli
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
(646) 873-7654
klandau@tcllaw.com
tbonoli@tcllaw.com

*Counsel for Plaintiff Waconia Dodge, Inc.*

*/s/ Michael J. Freed*
Michael J. Freed
Douglas A. Millen
Robert J. Wozniak
Brian M. Hogan
**FREED KANNER LONDON
   & MILLEN LLC**
2201 Waukegan Road
Suite 130
Bannockburn, IL  60015
(224) 632-4500
mfreed@fklmlaw.com
dmillen@fklmlaw.com
rwozniak@fklmlaw.com
bhogan@fklmlaw.com

Joshua H. Grabar, Esq.
**GRABAR LAW OFFICE**
1735 Market Street
Suite 3750
Philadelphia, PA 19103
(267) 507-6085
jgrabar@grabarlaw.com

Marc H. Edelson, Esq.
**EDELSON & ASSOCIATES, LLC**
3 Terry Drive
Suite 205
Newtown, PA 18940
(215) 867-2399
medelson@edelson-law.com

*Counsel for Plaintiff Pensacola Motor Sales,
Inc. d/b/a Bob Tyler Toyota, Inc.*