# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) ) MDL No. 2817<br>Case No. 18 C 864 |
| *THIS DOCUMENT APPLIES TO:* | ) )<br>) Hon. Amy J. St. Eve |
| *Motor Vehicle Software Corporation v. CDK Global, Inc.,* Case No. 2:17-cv-00896-DSF-AFM (C.D. Cal.) | ) ) ) |

**SUPPLEMENTAL BRIEF APPENDING SEVENTH CIRCUIT PRECEDENT REGARDING DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO DISMISS PLAINTIFF MOTOR VEHICLE SOFTWARE CORPORATION'S SECOND AMENDED COMPLAINT**

Pursuant to the Court's April 6, 2018 Order, Defendant The Reynolds and Reynolds Company ("Reynolds") respectfully submits this supplemental brief appending Seventh Circuit precedent regarding its motion to dismiss Plaintiff Motor Vehicle Software Corporation's ("Plaintiff" or "MVSC") Second Amended Complaint ("SAC"). *See* Dkt. 44 and 48 (motion to dismiss and reply). Reynolds also agrees with the arguments in the supplemental briefs filed by defendants CDK Global, Inc. ("CDK") and Computerized Vehicle Registration ("CVR").

## ARGUMENT

**I.       Plaintiff Has Not And Cannot Allege A Conspiracy To Monopolize Claim Against Reynolds.**

In its SAC, MVSC repleads its conspiracy to monopolize claim against Reynolds, alleging that Reynolds, CDK and CVR (collectively, "Defendants") conspired to give CVR a monopoly in the Electronic Vehicle Registration ("EVR") market. Judge Fischer previously dismissed this same claim, holding the complaint lacked any alleged conspiratorial agreements or conversations between Reynolds and CVR. *See MVSC v. CDK*, 2017 U.S. Dist. LEXIS 218016, *17 (C.D. Cal., Oct. 2, 2017); Dkt. 44 at 4-6; Dkt. 48 at 2-3. Plaintiff MVSC's SAC did not cure the defect, and the Court should now dismiss this count with prejudice.

Seventh Circuit law aligns with the Supreme Court and Ninth Circuit decisions that Reynolds cited in its briefs. Specifically, courts in the Seventh Circuit follow the Supreme Court's holding in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which instructs that a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See, e.g.*, *Sheridan v. Marathon Petroleum Co., LLC*, 530 F.3d 590, 595 (7th Cir. 2008) (Posner, J.) (under the "pleading regime" created by *Twombly*, a "naked assertion" or "empty phrase" "cannot save the

complaint."), citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046-47 (9th Cir. 2008)[1]; *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008) (Posner, J.) ("[*Twombly*] teaches that a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case.")[2]; *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 809 (N.D. Ill. 2014) ("Plaintiffs' 'bare assertion of conspiracy' accompanied by a 'conclusory allegation of agreement at some unidentified point' is inadequate to allege the existence of a combination or conspiracy."), quoting *Twombly*, 550 U.S. at 556; *Hackman v. Dickerson Realtors*, 520 F. Supp. 2d 954, 968 (N.D. Ill. 2007) ("In the antitrust context, the holding of [*Twombly*] requires that an antitrust plaintiff pleading the existence of a conspiracy or agreement to monopolize or restrain trade do more than conclusorily plead the existence of an agreement or conspiracy . . . . "[Plaintiff's] complaint is in the realm of insufficiency identified in [*Twombly*] because he conclusorily alleges an agreement, at an unspecified time, between certain defendants to boycott him . . . .").

It is not enough under this precedent for MVSC to allege that Defendants may have shared common motives or opportunities to conspire. *See In re Text Messaging Antitrust Litig.*, 630 F.3d

---

[1] *Kendall*, which was cited by the Seventh Circuit in *Sheridan* and also cited in Reynolds's motion to dismiss, holds that an antitrust complaint must "answer the basic questions" of "who, did what, to whom (or with whom), where, and when." *Kendall*, 518 F.3d at 1048.

[2] Also, according to the Seventh Circuit in *Limestone*, "how many facts are enough [to satisfy *Twombly*'s plausibility threshold] will depend on the type of case. In a complex antitrust or RICO case a fuller set of factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary to show that the plaintiff's claim is not 'largely groundless.'" *Limestone Dev. Corp.*, 520 F.3d at 803, cited in *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 2018 WL 1087641, *2-4 (N.D. Ill. Feb. 28, 2018) (dismissing antitrust claim because plaintiff "failed to plead any non-conclusory facts" regarding an element of its claim). *See also Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) ("For complaints involving complex litigation--for example, antitrust or RICO claims--a fuller set of factual allegations may be necessary to show that relief is plausible.").

622, 629 (7th Cir. 2010) (Posner, J.) (holding that a complaint must allege more than something that "could be true").

It is also not enough to allege that Defendants acted in parallel by refusing to do business with MVSC and/or blocking Authenticom. *See id.* at 627 ("[A] complaint that merely alleges parallel behavior alleges facts that are equally consistent with" conspiracy and the absence of conspiracy, and is therefore insufficient); *Hackman*, 520 F. Supp. 2d at 968 (allegations regarding "defendants' refusal to do business with" plaintiff and allegations regarding shared "motivation" were "not enough to adequately allege that defendants had an agreement to unreasonably restrain trade under § 1 or conspired to monopolize the market under § 2."); *see also Weit v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 641 F.2d 457, 468-69 (7th Cir. 1981), *cert. denied*, 455 U.S. 988 (1982) ("opportunity" and "ability" to conspire, even when combined with parallel conduct, is insufficient to create a genuine issue of fact on the existence of a conspiracy: "[P]laintiffs can point only to the opportunity to conspire; the ability to conspire; but no evidence of actual conspiracy.").

MVSC's SAC alleges only that Defendants refused to do business with MVSC on the terms and conditions demanded by MVSC, and had shared motives or opportunities to conspire. As the cases above illustrate, and as Judge Fischer held in her prior ruling regarding the conspiracy to monopolize allegations in plaintiff's second operative complaint that are now repeated in its third operative complaint, MVSC's "few factual allegations related to CVR do not identify conspiratorial conversations between CVR and CDK or Reynolds. Alleging only that CVR had motive and opportunity to conspire is insufficient to suggest an illegal agreement." *MVSC*, 2017 U.S. Dist. LEXIS 218016 at *17.

**II.     Reynolds Is Legally Incapable Of Conspiring With CVR.**

MVSC alleges that Reynolds and CDK jointly own and control CVR (*see* SAC ¶ 152), which precludes its claim that Reynolds and CDK conspired with CVR to give CVR a monopoly. Reynolds and CDK are legally incapable of conspiring with CVR, an entity they allegedly own and control. *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 776-77 (1984) (a company is "incapable" of conspiring with its subsidiary when they have a "complete unity of interest."); *Texaco Inc. v. Dagher*, 547 U.S. 1, 5-6 (2006) (Texaco and Shell did not unlawfully fix prices by forming and owning a joint venture that sold their gasoline to service stations). *See* Dkt. 44 at 6-9; Dkt. 48 at 3-7.

Courts in the Seventh Circuit follow the Supreme Court's holdings in *Copperweld* and *Dagher* and have reached decisions and made statements consistent with those of Ninth Circuit courts. *See, e.g., McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 681 (7th Cir. 2014) ("It has been clear for thirty years that a subsidiary cannot 'conspire' with its parent in violation of the Sherman Act."); *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 809 (N.D. Ill. 2014) (dismissing antitrust conspiracy allegations on *Copperweld* grounds); *Appraisers Coalition v. Appraisal Inst.*, 845 F. Supp. 592, 603 (N.D. Ill. 1994) ("The *Copperweld* reasoning also applies to section 2 claims."); *Pudlo v. Adamski*, 789 F. Supp. 247, 252 (N.D. Ill. 1992), *aff'd*, 2 F.3d 1153 (7th Cir. 1993), *cert. denied*, 471 U.S. 1066 (1994) (applying *Copperweld* and dismissing Section 2 conspiracy to monopolize claim).

Seventh Circuit cases also harmonize *American Needle* (which MVSC has cited in opposition) and *Copperweld* in the same way Reynolds briefed under Ninth Circuit law. *Cf. Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183 (2010). Specifically, in *American Needle*, the Supreme Court held that 32 NFL teams and their intellectual property joint venture were capable of entering into an antitrust conspiracy because the teams' competing interests in their respective

and separately owned intellectual property was not aligned. *Id.* at 198. In contrast, CDK and Reynolds, despite being DMS competitors, have never competed in the EVR market and therefore have never been separate economic actors with separate interests in the EVR market. *See Chicago Prof'l Sports Ltd. P'ship v. NBA*, 95 F.3d 593, 598-99 (7th Cir. 1996) (whether the NBA should be treated as a single firm "depend[s] on which facet of the business one examines," and noting that NBA basketball "is one product from a single source" for fans and advertisers, but not for potential players, where the "teams are distinct."); *Omnicare, Inc. v. Unitedhealth Group, Inc.*, 629 F.3d 697, 706 (7th Cir. 2011) (under *Am. Needle* and *Copperweld*, "[t]wo separate economic decisionmakers must be joined" to create the possibility of an antitrust conspiracy); *In re Dairy Farmers of Am. Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 948 (N.D. Ill. 2014) (same); *Appraisers Coalition v. Appraisal Inst.*, 845 F. Supp. 592, 603 (N.D. Ill. 1994) (analyzing whether defendants had an "independent interest" from one another under *Copperweld*); *see also Wallace v. IBM*, 467 F.3d 1104, 1107 (7th Cir. 2006) ("[A]greements that yield new products that would not arise through unilateral action are lawful.").[3]

---

[3] In *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827 (N.D. Ill. 2010), the court denied summary judgment to certain defendants, holding, among other things, that *Copperweld* did not insulate an alleged agreement between a company called Falconbridge and its partial owner Noranda. *Id.* at 884 (Noranda initially owned 50%, and then 46.4%, of Falconbridge). However, the decision is distinguishable because plaintiffs presented evidence that the two entities' interests were not aligned. *See id.* at 884-85 (discussing documents indicating the companies may have viewed themselves as competitors, and indicating a desire to pursue independent strategies). No such allegations are present in the SAC as to CVR and Reynolds; the SAC indicates that these entities' interests are fully aligned as to the EVR market. Critically, CVR only provides EVR services and is not alleged to be providing DMS services, while Reynolds is only providing DMS and integration services and is not alleged to be providing EVR services. In contrast, Falconbridge and Noranda were both producing sulfuric acid. *See id.* at 839, 843-44. Lastly, the *Copperweld* issues were never fully briefed. *See id.* at 884 (noting that defendants only devoted "two sentences" to this issue, and plaintiffs "do not address the matter at all.").

MVSC's amendments to its complaint regarding ownership and control issues do not cure this defect either. Reynolds previously argued that MVSC's SAC amendments cannot contradict earlier allegations in the First Amended Complaint ("FAC").[4] In the Seventh Circuit, however, an amended complaint cannot contradict an earlier verified complaint, and the MVSC complaints are not verified. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). But either way, the SAC is still deficient on its face. MVSC's SAC alleges that Reynolds and CDK jointly "control the management and decisionmaking of CVR." SAC ¶ 152. This allegation renders the conspiracy to monopolize claim implausible under *Copperweld* and *Dagher*. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("If the plaintiff voluntarily provides unnecessary facts in her complaint, the defendant may use those facts to demonstrate that she is not entitled to relief. . . . [O]ur pleading rules do not tolerate factual inconsistencies in a complaint[.]"); *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir. 2006) ("[A] party may plead itself out of court by either including factual allegations that establish an impenetrable defense to its claims or by attaching exhibits that establish the same."); *Moore v. Corizon Health, Inc.*, 2018 U.S. Dist. LEXIS 51614, *18-*20 (N.D. Ind. Mar. 18, 2018) (dismissing a claim because plaintiff could only prevail on that claim by contradicting two specific paragraphs in its complaint); *Houzanme v. Rush*, 2017 U.S. Dist. LEXIS 44918, *4-5 ("Plausibility is defeated, however, if a plaintiff 'pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits.'"), quoting *Tamayo*, 526 F.3d at 1086.

---

[4] In an effort to avoid the *Copperweld* and *Dagher* arguments Reynolds previously raised in its motion to dismiss the FAC, which Judge Fischer did not reach (*see MVSC*, 2017 U.S. Dist. LEXIS 218016 at *17), and to try and bolster its monopolization claims against CDK, MVSC eliminated most allegations regarding Reynolds and CDK jointly controlling CVR from its SAC, replacing them with allegations that CDK has "complete control" over CVR. Compare SAC ¶¶ 7, 56, 59, 60, 153, 154, 238 with FAC ¶¶ 55, 141, 223. Nevertheless, in SAC ¶ 152, MVSC continues to acknowledge that Reynolds and CDK jointly control CVR.

Finally, MVSC's argument that Reynolds's *Copperweld* arguments are barred by judicial estoppel fail under Seventh Circuit law. Like the Ninth Circuit, the Seventh Circuit will consider whether the positions taken are "clearly inconsistent" and whether a court actually adopted the earlier position. *See 1st Source Bank v. Neto*, 861 F.3d 607, 612 (7th Cir. 2017). The Seventh Circuit also considers whether there has been any "unfair detriment." *See United States v. Trudeau*, 812 F.3d 578, 584 (7th Cir. 2016); *In re Knight-Celotex*, 695 F.3d 714, 721-24 (7th Cir. 2012). None of these factors apply here. *See* Dkt. 48 at 3-4.

### III. MVSC Lacks Antitrust Injury.

MVSC has failed to allege a plausible antitrust injury, which is required for it to pursue claims under either Sherman Act Sections 1 or 2. Reynolds in this regard seeks to dismiss the complaint as a whole to the extent that it seeks to recover for Authenticom, Inc.'s illegal practice of accessing Reynolds's proprietary systems without authorization from Reynolds. *See* Dkt. 44 at 9-16; Dkt. 48 at 7-12. Seventh Circuit caselaw is in accord with Reynolds's cited cases from the Ninth, Third and Eighth Circuits.

MVSC alleges that it was injured when Defendants eliminated its ability to access DMS data through third party screen scrapers such as Authenticom, Inc. ("Authenticom"). However, Authenticom and other screen scrapers like Authenticom violate a litany of statutes whenever they access and use Reynolds's systems and software to ply their chosen trade. Foremost among these laws are the Federal Computer Fraud and Abuse Act ("CFAA"), which Authenticom violates when it accesses a computer "without authorization" to obtain information, and California Penal Code Section 502 ("Section 502"), which is similarly violated when Authenticom accesses or uses a computer "without permission." 18 U.S.C. § 1030(a)(2)(C), (a)(5)(C); Cal. Penal Code §

502(c)(2)-(3). Indeed, the Federal Trade Commission has taken a hard stance against computer system owners who *do not* closely control their third-party access policies.[5]

An antitrust plaintiff alleges "antitrust injury" by alleging "injury of the type the antitrust laws were intended to prevent." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). Antitrust injury is lacking here because the business allegedly restrained by Defendants (Authenticom's unauthorized screen scraping) is itself illegal. *See, e.g.*, *Maltz v. Sax*, 134 F.2d 2, 4 (7th Cir. 1943), *cert. denied*, 319 U.S. 772 (1943) ("Assuming as we do that the Anti-Trust Act was enacted to protect the public by preventing restraints on commerce and, generally speaking, was a public benefit measure, it still seems rather paradoxical to permit plaintiff to invoke its protection for a business, the practice of which is against public policy, if not illegal."); *see also United Airlines, Inc. v. U.S. Bank NA*, 406 F.3d 918, 924 (7th Cir. 2005) (Easterbrook, J.) (holding that no antitrust liability could attach to defendants exercising their rights under another federal statute (11 U.S.C. §1110)). This established rule of law is not just limited to the Ninth and Seventh Circuits: Reynolds cited decisions from the Third and Eighth Circuits that are also consistent with these holdings. *See In re Wellbutrin XL Antitrust Litig.*, 868 F.3d 123, 165 (3d Cir. 2017); *In re Canadian Import Antitrust Litig.*, 470 F.3d 785, 787-92 (8th Cir. 2006).

As its counsel did in the Seventh Circuit *Authenticom* appeal, MVSC may argue that *Maltz v. Sax* is no longer good law in light of *Perma Life Mufflers* and that Reynolds is asserting a form of *in pari delicto* defense. *See Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134 (1968). That is wrong on both counts. The Supreme Court in *Perma Life* held only that the common-law equitable defense of *in pari delicto*—which applies when the plaintiff "is himself involved in some of the same sort of wrongdoing" as the defendant—should not be broadly applied where doing so

---

[5] https://perma.cc/WCF2-EDS9

would undermine the objectives of antitrust law. 392 U.S. at 138-40; *see also Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 830 F.2d 716, 720-21, 724 (7th Cir. 1987) (permitting this defense only where the plaintiff "bore substantially equal responsibility for the anticompetitive restrictions"). The underlying competition protected in *Perma Life*—sale of automobile exhaust parts—was legal. *See* 392 U.S. at 137. That is a far cry from enlisting the antitrust laws to *aid* illegal activity, which *Maltz* emphatically rejected. *See* 134 F.2d at 5. As the Seventh Circuit stated: "[The plaintiff] had no legal rights to protect. Therefore defendants could not invade them." *Id.* Just so here: MVSC had no legal right to hire a screen scraper to hack into Defendants' systems and retrieve consumer data. An alleged conspiracy to deprive MVSC of that bootleg access is not cognizable under the antitrust laws.[6]

As for the underlying question whether Authenticom's DMS access is illegal, the Seventh Circuit specifically determined that Reynolds has never authorized Authenticom's DMS access. *See Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1021-22 (7th Cir. 2017) ("Authenticom does not obtain its data directly from raw dealership records. Instead, it 'scrapes' (or collects) data from the management system that the dealer uses. . . . Reynolds . . . has always forbidden that practice in its system licenses."). To the extent that a dealer permits Authenticom to access a Reynolds DMS using the dealer's DMS login and password, this is insufficient to confer the requisite authorization under the CFAA or Section 502, which can only come from the owner of the computer system in question—in this case, Reynolds. In *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 313 (2017), the Ninth Circuit held that

---

[6] *See also, e.g.*, *Pearl Music*, 460 F. Supp. at 1067-68 (illegal sales of pirated music not protected by antitrust laws); *RealNetworks, Inc. v. DVD Copy Control Ass'n*, Nos. 08-4548, 2010 WL 145098, at *6 (N.D. Cal. Jan. 8, 2010) (no antitrust injury could arise from the defendant's refusal to license technology for a product that "is almost certainly illegal" under the Digital Millennium Copyright Act).

a licensee user cannot authorize access to the licensor-owner's computer system. Authorization from both the computer user and computer system owner are required. *See* 844 F.3d at 1068-69. Although the Seventh Circuit has not addressed this specific issue, the court's previous cases take the view that the CFAA is a "broad statute"[7] and in one case at least suggested that screen-scraping could violate the CFAA if prohibited by a provider (but found that no such prohibition had been made in that particular case). *See Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1082 (7th Cir. 2016); *see also Int'l Airport Centers, L.L.C. v. Citrin,* 440 F.3d 418, 420 (7th Cir. 2006) (holding that an employee's authorization to access his employer's computer terminated as a result of breaching his duty of loyalty). Given this expansive approach to the CFAA, the Seventh Circuit is highly unlikely to adopt a narrower view than *Facebook*. Indeed, Judge Easterbrook's comments during the *Authenticom* oral argument demonstrate that it is all but impossible to interpret the CFAA's plain text in any other way.[8]

To the extent that MVSC argues that the Seventh Circuit's decision in *WIREdata* is to the contrary, that too is incorrect. *Cf. Assessment Techs. of Wisconsin, LLC v. WIREdata Inc.*, 350 F.3d 640 (7th Cir. 2003). *WIREdata*, a copyright case, was resolved on the basis of distinctive rules of copyright law that have absolutely no application to the CFAA. *Id.* at 644-45, 647. Moreover, the court's primary concerns about potential copyright misuse relating to public data necessary for government administration (stated entirely in *dicta*) are not present here. This case

---

[7] *United States v. Mitra*, 405 F.3d 492, 496 (7th Cir. 2005).

[8] As Judge Easterbrook explained, "Authenticom wants to get information from protected computers within the meaning of [the CFAA] . . . . But [authorization] is not being granted by the person who runs the system. That is, by CDK or Reynolds." "[T]o get access to AOL's system you need AOL's permission, not my permission. The fact that I have an account with AOL doesn't mean I can authorize anyone else to use AOL." *Authenticom* CA7 Oral Arg. at 50:00-18; 50:36-45 (Easterbrook, J.), *available at* http://media.ca7.uscourts.gov/sound/2017/ab.17-2540.17-2540_09_19_2017.mp3.

involves private rather than public data, and Reynolds provides its licensed users with multiple noninfringing methods of exporting their data from its DMS. The unstated premise of MVSC's position (assuming it mirrors its counsel's position for Authenticom) is that Reynolds forfeited the ability to control access to its proprietary systems and software when it allowed dealers to enter their data into the proprietary functioning of its system. *WIREdata* does not support such a radical proposition.[9]

Finally, MVSC's argument that Reynolds is barred from raising its motion now under the law of the case doctrine fails in the Seventh Circuit for the same reason it fails in the Ninth Circuit – the filing of the SAC superseded the FAC and opened the door for Defendants to attack any aspect of the SAC. *See, e.g., Fletcher v. OneWest Bank, FSB*, 2012 U.S. Dist. LEXIS 151541, *6-9 (N.D. Ill., Oct. 22, 2012) (rejecting argument that law of the case precluded defendant from raising argument again in motion to dismiss amended complaint: "Whereas here, [plaintiff] filed an amended complaint which rendered the original complaint void . . . [defendant] is free to challenge the adequacy of the amended complaint.").

## IV. MVSC's State Law Claims Should Be Dismissed.

With respect to the final section of Reynolds's motion to dismiss, which argued that MVSC's California and Illinois state law claims against Reynolds (Counts VI-VIII) fail for the

---

[9] In addition, antitrust law generally recognizes the right of a company to impose access restrictions on its own product or service. *See, e.g., Elliott v. United Center*, 126 F.3d 1003, 1005 (7th Cir. 1997) (explaining that the United Center "can charge very high ticket prices, and allow unlimited numbers of food concessions in and around the stadium, or it can charge somewhat lower ticket prices and restrict the number of concessions (thereby earning some of its profits from the food sales)." Either way, an argument that this is an antitrust violation is "ludicrous." "[O]nce inside a restaurant, or a movie theater, the customer is at the mercy of the place he has chosen.").

same reasons as its federal antitrust claims, Reynolds stands on the cases it previously cited. Dkt. 44 at 16-17.

Moreover, MVSC did not oppose dismissal of these state law claims as to Reynolds, effectively conceding that they should be dismissed. Dkt. 48 at 12. *See Citizens for Appropriate Rural Rds. v. Foxx,* 815 F.3d 1068, 1078 (7th Cir. 2016) (affirming grant of summary judgment on certain claims because plaintiff failed to respond to arguments raised on those claims: "[B]y failing to respond . . . Plaintiffs have waived their claims"); *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (affirming dismissal of state law claims because plaintiffs failed to respond to defendants' arguments, and as a result, "these claims are waived"); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) (affirming grant of motion to dismiss, and holding that plaintiffs' "[f]ailure to respond to an argument . . . results in waiver.").

WHEREFORE, Reynolds respectfully requests that the Court dismiss Plaintiff MVSC's Second Amended Complaint with prejudice.

Dated: April 13, 2018                                                                 Respectfully submitted,


*/s/ Aundrea K. Gulley*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER
    & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER
    & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

## CERTIFICATE OF SERVICE

I, Leo D. Caseria, an attorney, hereby certify that on April 13, 2018, I caused a true and correct copy of the foregoing **SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO DISMISS PLAINTIFF MOTOR VEHICLE SOFTWARE CORPORATION'S SECOND AMENDED COMPLAINT**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Leo D. Caseria*
Leo D. Caseria
SHEPPARD MULLIN RICHTER
   & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com