**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-cv-864 |
| *This filing relates to:* | Hon. Amy J. St. Eve |
| *Motor Vehicle Software Corp. v. CDK Global, Inc.*, et al., Case No. 1:18-cv-865 | |

**DEFENDANT CDK GLOBAL, INC.'S SUPPLEMENTAL BRIEF
REGARDING SEVENTH CIRCUIT CASE LAW**

At the Court's request (Case No. 18-cv-864, Dkt. 106), CDK Global, Inc. ("CDK") submits this supplemental memorandum concerning the application of Seventh Circuit case law to the issues raised in CDK's pending motion to dismiss the Second Amended Complaint ("SAC"). Because the Court is familiar with the allegations and general arguments from the underlying briefing, CDK will not repeat its arguments at length here.

## INTRODUCTION

The *MVSC* case has been consolidated with other Dealer Management System ("DMS")-related antitrust litigation in the present MDL. Prior to the creation of the MDL, CDK filed a motion to dismiss before Judge Fischer in the Central District of California. Dkt. 82. The motion and briefing was re-docketed following the case's transfer. Dkt. 106, Dkt. 110.

CDK's motion seeks dismissal of MVSC's claims against CDK on three grounds. First, the Section 2 claims should be dismissed because CDK is not a participant in the electronic vehicle registration ("EVR") market. Dkt. 106 at 5-7. Second, insofar as the Section 2 claims allege concerted conduct, they should be dismissed because such allegations sound under Section 1 of the Sherman Act. *Id.* at 7-8. Third, to the extent the Section 2 claims turn on CDK's unilateral conduct, the claims should be dismissed because CDK does not violate Section 2 by unilaterally refusing to deal with MVSC. *Id.* at 8-11. MVSC's Section 1 and 2 claims also should be dismissed on the alternative ground, set forth in The Reynolds and Reynolds Company's ("Reynolds") underlying and supplemental briefs, that the SAC fails to allege antitrust injury.

Because CDK's motion was filed before Judge Fischer, CDK cited chiefly Ninth Circuit law in its supporting memoranda. "In federal question cases consolidated under § 1407, the law of the transferor court warrants 'close consideration' but does not bind the transferee court." *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 853 (N.D. Ill. 2010). As we show below, however, case law in the Seventh Circuit fully supports dismissal as well. Indeed, MVSC's claims flout the basic

1

principle—derived directly from Seventh Circuit authority—that an antitrust plaintiff has "no right of access to the trail" that another firm "ha[s] already blazed." *Alaska Airlines, Inc. v. United Airlines*, 948 F.2d 536, 543 (9th Cir. 1991) (citing *Olympia Equip't Leasing v. W. Union Telephone Co.*, 797 F.2d 370 (7th Cir. 1986)). MVSC similarly has no "right of access" to CDK's DMS, even though MVSC may desire such access in order to more easily sell its own EVR services.

## I. CDK Is Not A Participant In The Relevant Market.

In its ruling on CDK's motion to dismiss the First Amended Complaint, Judge Fischer dismissed MVSC's Section 2 claims for failure to allege that CDK "even compete[s] in" the EVR market. Dkt. 73 at 4. The SAC suffers from this same fatal flaw.

MVSC relies on an agency theory in an effort to plead around the problem. But a parent company may be liable for its subsidiary's acts under an agency theory only in those "unusual situations" where the parent "so controls the subsidiary as to cause the subsidiary to . . . become merely the instrumentality of the parent." *whiteCryption Corp. v. Arxan Techs., Inc.*, 2015 WL 3799585, at *2 (N.D. Cal. June 18, 2015); *see also Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1088 (D.C. Cir. 1998) ("To be a competitor at the level of the subsidiary, the parent must have substantial control over the affairs and policies of the subsidiary.").

The Seventh Circuit has long followed this rule. In *National Lead Co. v. FTC*, 227 F.2d 825 (7th Cir. 1955), *rev'd on other grounds*, 352 U.S. 419 (1957), the Court vacated an FTC order, issued under the Federal Trade Commission Act and the Clayton Act, that applied to a parent corporation that (like CDK) "never engaged in the [relevant] industry as a producer, distributor or otherwise." *Id*. at 828-29. "To come within the applicable rule," the Seventh Circuit explained, there must be "evidence of such complete control of the subsidiary by the parent as to render the former a mere tool of the latter, and to compel the conclusion that the corporate identity of the subsidiary is a

2

mere fiction." *Id*. at 829. Allegations of such control by MVSC are totally lacking here, for the reasons set forth in CDK's briefs.[1]

## II. CDK's Purported Concerted Conduct Or Purported Agreement Is Not Actionable Under Section 2.

Separate and apart from its failure to allege participation in the relevant market, MVSC fails to allege any actionable conduct by CDK. The Sherman Act "distinguishes between concerted and independent action." *Indiana Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1413 n.4 (7th Cir. 1989). "While Section 1 can only be violated by concerted action undertaken by horizontal competitors, the anticompetitive decisions of single firms are governed by § 2 of the Sherman Act." *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 826, 883 (N.D. Ill. Sept. 24, 2010); *see also Nucap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1010 (N.D. Ill. Mar. 31, 2017) ("The first two sections of the Sherman Act apply to distinct types of market activity."). Accordingly, insofar as MVSC expressly bases its Section 2 claims on allegations that CDK and the other defendants engaged in a "group boycott of MVSC" (SAC ¶ 222) or "conspired to block MVSC from the . . . DMS programs" (SAC ¶ 229), those claims should be dismissed in their entirety.

As CDK has explained, moreover, a Section 2 conspiracy claim has no independent significance in this case. Dkt 94 at 7 n.4; *Juneau Square Corp. v. First Wis. Nat'l Bank of Milwaukee*, 624 F.2d 798, 814 n.17 (7th Cir. 1980) ("A conspiracy to monopolize would necessarily constitute a conspiracy in restraint of trade under section one of the Sherman Act."). Indeed, conspiracy claims under Section 2 have a "*heightened* intent element," *Wagner v. Magellan Health*

---

[1] In the alternative, MVSC purports to rely on the "alter-ego" test for Section 2 liability. But the law governing alter ego is the same in this Circuit as elsewhere. It requires the plaintiff to show that (1) the parent exercises so much control as to render the subsidiary a "mere instrumentality," and (2) there is a "fraud or wrong" such that honoring the separate legal status of the companies would create "unjust loss or injury" to the claimant. *United Nat'l Records, Inc. v. MCA, Inc.*, 609 F. Supp. 33, 39-40 (N.D. Ill. 1984). These standards are materially identical to the standard set forth in the California federal cases discussed in CDK's reply brief. *See* Dkt. 110 at 5-6.

3

*Servs.*, 121 F. Supp. 2d 673, 681 (N.D.Ill.2000) (emphasis added), and thus are *more* difficult to prove than Section 1 conspiracy claims.

**III.     CDK's Purported Unilateral Refusal To Deal Is Not Actionable Under Section 2.**

Nor can MVSC state a Section 2 claim against CDK based on CDK's alleged unilateral refusal to deal on MVSC's terms. It is a basic premise of antitrust law that a market participant need not "cooperate with rivals by selling them products that would help the rivals compete. Cooperation is a problem in antitrust, not one of its obligations." *Schor v. Abbott Labs.*, 457 F.3d 608, 610 (7th Cir. 2006). Thus as the Seventh Circuit made clear in the recent *Authenticom* appeal, "[e]ven monopolists are almost never required to assist their competitors." *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1025 (7th Cir. 2017). The Supreme Court has recognized an exceedingly narrow exception to this principle in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985). But as the Seventh Circuit has already concluded, CDK's decision to prevent unauthorized access to its DMS is "a far cry from *Aspen Skiing*" and it is clear that a refusal-to-deal theory "cannot support relief" in these circumstances. *Authenticom*, 874 F.3d at 1026.

That comes as no surprise. MVSC claims that the Sherman Act gives it the right to access CDK's DMS, on terms and conditions of MVSC's choosing. For good reason, however, the antitrust laws do not permit MVSC such a "right of access." *Alaska Airlines*, 948 F.2d at 543. A company "cannot conscript [its] competitor's salesmen to sell [its] product even if the competitor has monopoly power and [the company is] a struggling new entrant." *Olympia*, 797 F.2d at 377-78. And that conclusion is even stronger here. As the Seventh Circuit recognized in *Authenticom*, "neither Reynolds nor CDK is a monopolist." 874 F.3d at 1025.

Decisions by judges in this District further confirm that MVSC has no unilateral refusal-to-deal claim. This Court has stated that "plaintiffs seeking to establish an unlawful refusal to deal must show that the defendant's actions serve no rational procompetitive purpose"—in other words, that

4

the supposed "refusal to deal was *irrational* but for its anticompetitive effects." *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 698681, at *4-5 (N.D. Ill. Feb. 22, 2017); *accord VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, 2015 WL 5693735, at *9 (N.D. Ill. Sept. 28, 2015) ("[T]he question is not whether Amtrak chose the most competitive offer but whether it had any procompetitive purpose."). MVSC does not come close to pleading facts that support such a showing. As even MVSC acknowledges, CDK's decision to prevent hostile integration with its DMS rested on a clear and important business justification: the need to protect its system and the data on that system from cybersecurity threats. *E.g.*, SAC ¶¶ 160, 203. MVSC may disagree with that justification, but that hardly makes CDK's refusal to give MVSC access at whatever price MVSC demands irrational but for its anticompetitive effects.

Finally, the refusal-to-deal claim should be dismissed for another independent reason. In *Viamedia*, this Court adopted then-Judge Gorsuch's conclusion that a plaintiff bringing a unilateral refusal-to-deal claim must show "a preexisting voluntary and presumably profitable course of dealing between the monopolist and rival." *Viamedia*, 2017 WL 698681, at *4 (citing *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013)); *see also* Dkt. 106 at 9 n.2. Because MVSC has not alleged—and cannot allege—that CDK abandoned a voluntary and profitable prior course of dealing with MVSC, any Section 2 claim based on CDK's purported unilateral refusal-to-deal fails to state a claim on that ground alone.

### IV. MVSC's Illinois Antitrust Act Claim Falls With Its Federal Section 2 Claims.

MVSC's Illinois Antitrust Act claim rises and falls with its federal Section 2 claims. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (the Illinois Antitrust Act "parallels the federal Sherman and Clayton Acts"); *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 968 (N.D. Ill. 2007) (same). MVSC does not dispute—or even mention—this principle in its opposition brief. Accordingly, the Court should dismiss the Illinois Antitrust Act claim against CDK as well.

5

## V. MVSC's Section 1 And 2 Claims Also Fail For Lack Of Antitrust Injury.

CDK agrees with Reynolds's argument that MVSC's Section 1 and 2 claims fail to the extent that MVSC's alleged injury is the inability to secure DMS data through Authenticom, Inc. and other third parties who access that data unlawfully. Failure to allege antitrust injury requires dismissal of all of the antitrust claims against all of the Defendants. As further explained in Reynolds's supplemental brief (Dkt. 113 at 7-11), therefore, this Court should dismiss the SAC for lack of antitrust injury.[2]

## CONCLUSION

For the reasons stated above and in CDK's briefs in support of its motion to dismiss, the Court should dismiss the SAC—and at a minimum the second, third, fourth, and fifth causes of action—with prejudice.

Dated: April 13, 2018

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006

---

[2] Judge Fischer's ruling sustaining the Section 1 claims in the first motion to dismiss does not bar this Court's dismissal of those claims at this time. Prior rulings by transferor courts do not bind transferee courts in an MDL, particularly because in this case the transferor court did not closely analyze the issue of antitrust injury. *See In re Camp Lejuene N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1343 n.105 (N.D. Ga. 2016); Manual for Complex Litigation (4th ed. 2004) § 20.132 ("The transferee judge may vacate or modify any order of a transferor court.").

              (202) 263-3000
              mryan@mayerbrown.com

              *Counsel for Defendant*
              *CDK Global, Inc.*

## **CERTIFICATE OF SERVICE**

I, Britt M. Miller, an attorney, hereby certify that on April 13, 2018, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, INC.'S SUPPLEMENTAL BRIEF REGARDING SEVENTH CIRCUIT CASE LAW**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                        */s/ Britt M. Miller*_____
                                                        Britt M. Miller
                                                        MAYER BROWN LLP
                                                        71 South Wacker Drive
                                                        Chicago, IL 60606
                                                        Phone: (312) 782-0600
                                                        Fax: (312) 701-7711
                                                        E-mail: bmiller@mayerbrown.com