IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-cv-864 |
| *This filing relates to:* | Hon. Amy J. St. Eve |
| *Motor Vehicle Software Corp. v. CDK Global, Inc.*, et al., Case No. 1:18-cv-865 | |

**DEFENDANT COMPUTERIZED VEHICLE REGISTRATION'S
SUPPLEMENTAL BRIEF REGARDING SEVENTH CIRCUIT CASE LAW**

At the Court's request (Case No. 18-cv-864, Dkt. 106), Computerized Vehicle Registration ("CVR") submits this supplemental memorandum concerning the application of Seventh Circuit law to the issues raised in CVR's pending motion to dismiss the Second Amended Complaint ("SAC"). Because the Court is familiar with the allegations and general arguments from the underlying briefing, CVR will not repeat its arguments at length here.

**INTRODUCTION**

The *MVSC* case has been consolidated with other Dealer Management System ("DMS")-related antitrust litigation in the present MDL. Prior to the creation of the MDL, CVR filed a motion to dismiss before Judge Fischer in the Central District of California. Dkt. 83. The motion and briefing was re-docketed following the case's transfer. Dkt. 107, 111.

CVR's motion seeks dismissal of MVSC's conspiracy-to-monopolize claims under Section 2 of the Sherman Act and of the analogous State law claims for two reasons. First, CVR is incapable of conspiring with its joint owners, CDK Global, Inc. ("CDK") and The Reynolds and Reynolds Company ("Reynolds"), as a matter of law. Dkt. 107 at 2-4. Second, and in any event, MVSC has not alleged a plausible conspiracy involving CVR. *Id.* at 4-6. MVSC's claims also should be dismissed on the alternative ground, set forth in Reynolds's underlying and supplemental briefs, that the SAC fails to allege antitrust injury.

Because CVR's motion was filed before Judge Fischer, CVR relied chiefly on Ninth Circuit law in its supporting memoranda. "In federal question cases consolidated under § 1407, the law of the transferor court warrants 'close consideration' but does not bind the transferee court." *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 853 (N.D. Ill. 2010). As we show below, however, the case law in the Seventh Circuit fully supports dismissal as well.

1

## I.     CVR Cannot Conspire With The Other Defendants.

As an initial matter, under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), CVR cannot "conspire" with its joint owners as a matter of law. *Copperweld* holds that a firm and its wholly owned subsidiary cannot conspire for purposes of the antitrust laws. *Id*. at 777. And courts have extended that principle to cases of partial ownership, including to "economically integrated joint venture[s]" like CVR. *E.g.*, *Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 2010 WL 3521979, at *21 (E.D. Cal. Sept. 3, 2010).[1]

MVSC essentially concedes that CVR cannot conspire with CDK. In its opposition brief MVSC refers to the two collectively as the "CDK/CVR entity" (Dkt. 108 at 17) and argues only that "CDK and Reynolds—and Reynolds and CVR—are capable of conspiring" (*id*. at 19). MVSC also offers no response to CVR's arguments about why CDK and CVR cannot conspire under *Copperweld*. *See* Dkt. 107 at 3. It is well-settled that "[f]ailure to respond to an argument . . . results in waiver." *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010).

Nor can CVR conspire with Reynolds. That is because Reynolds is alleged to exercise joint control over CVR's decision-making, and therefore CVR's supposed participation in a conspiracy with Reynolds (and CDK) to restrict MVSC's unauthorized access to the respective DMSs does not deprive the market place of "'independent centers of decisionmaking,' as it pertain[s] to the alleged wrongful conduct." Dkt. 111 at 4 (quoting *Stanislaus*, 2010 WL 3521979, at *23).[2]

MVSC misses the mark by relying on *American Needle, Inc. v. National Football League*, 560 U.S. 183 (2010), to support its conspiracy claims against CVR. The Seventh Circuit has

---

[1] *Copperweld* was a Section 1 case, but its reasoning "also applies to section 2 claims." *Appraiser Coalition v. Appraisal Institute*, 845 F. Supp. 592, 603 (N.D. Ill. 1994).

[2] As Reynolds notes in its supplemental brief, MVSC has attempted to delete some of the allegations regarding Reynolds's joint control, but has left in the core allegation that Reynolds and CDK both "control the management and decisionmaking of CVR." SAC ¶ 152. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) ("our pleading rules do not tolerate factual inconsistencies in a complaint").

explained that to qualify as a conspiracy under *American Needle*, "[t]wo separate economic decisionmakers must be joined, 'depriv[ing] the marketplace of independent centers of decisionmaking and therefore of a diversity of entrepreneurial interests.'" *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 706 (7th Cir. 2011); *see also In re Dairy Famers of Am., Inc., Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 949 (N.D. Ill. 2014) (same). That is not the case here. While CDK and Reynolds may be separate economic decisionmakers in the DMS market, outside of their joint venture neither CDK nor Reynolds competes in the market for electronic vehicle registration ("EVR"). Moreover, CVR is only an EVR provider. It does not compete in or make decisions affecting the DMS market.

Simply put, CVR is not a "separate economic decisionmaker" with respect to DMS access—the subject of the alleged conspiracy. CVR's alleged participation in the purported agreement to prevent MVSC from hostilely integrating with the CDK and Reynolds DMSs thus does not deprive the market of any separate entrepreneurial interest.

*In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827 (N.D. Ill. 2010), is not to the contrary. That decision reiterated that an agreement "qualifies as concerted action under the purview of § 1" only where it "joins together 'independent centers of decisionmaking.'" *Id*. at 883. And while the *Sulfuric Acid* court determined—albeit without substantive briefing from the parties (*id*.)—that certain defendants should not be considered a "single entity" under *Copperweld*, its reasoning does not apply to this case. If anything, by distinguishing the facts of that case from those in *Copperweld*, *Sulfuric Acid* reinforces that *Copperweld* controls here.

Plaintiffs in *Sulfuric Acid* alleged that a half-dozen defendants conspired to fix prices in the market for sulfuric acid. Three corporate defendants—Boliden, Noranda, and Falconbridge—argued that, because Falconbridge was a joint venture of the other two, the three were a "single entity"

3

under *Copperweld*. The court disagreed. The court first observed that Falconbridge was actually a joint venture between Boliden's *parent* (Trelleborg) and Noranda. *Id*. at 884. Although the court agreed that Boliden could not conspire with Trelleborg under *Copperweld*, it declined to hold that Boliden and Falconbridge could not conspire, because Boliden and its parent (which owned Falconbridge) were not "interchangeable in all regards." *Id*. at 886. In contrast, Reynolds and CDK both are owners of CVR in their own right; they do not purport to trace their ownership of the joint venture through a corporate parent.

Second, the *Sulfuric Acid* court reasoned that even under *Copperweld*, "two companies engaging in a joint venture" could "violat[e] antitrust laws by entering in an anticompetitive conspiracy *separate and apart* from that joint venture." 743 F. Supp. 2d at 886 (emphasis added). Thus, the court said, although the joint venture's "decisions amount to the unilateral decisions of a single entity," it is possible for "that single entity" to "conspir[e] with *other firms* in violation of the Sherman Act." *Id*. at 887 (emphasis added). Again, that rationale is inapposite here. There are no allegations that CVR, CDK, or Reynolds conspired with other firms, separate and apart from the CVR joint venture, to restrict output or raise prices.

In short, MVSC's allegations of a conspiracy as to both Reynolds and CDK fail as a matter of law. And even if MVSC's argument that Reynolds were estopped from making this point were correct (and it is not, for the reasons explained in CVR's reply brief and Reynolds's reply and supplemental briefs), MVSC has no estoppel argument against CVR. Thus, the conspiracy claim against CVR should be dismissed.

**II.     MVSC Has Not Pleaded A Plausible Conspiracy Claim.**

Even if CVR could conspire with one or both of its joint owners, the conspiracy claim fails on the independent ground that MVSC has not pleaded facts plausibly suggesting that CVR agreed with CDK or Reynolds to engage in unlawful conduct. The Rule 8 pleading standard, as interpreted

4

in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), is binding throughout the federal system, and CVR is aware of no Seventh Circuit authority that would call for a different result than in the Ninth Circuit. To the contrary, the Seventh Circuit has instructed that "a defendant should not be forced to undergo costly discovery unless the complaint contains enough detail, factual or argumentative, to indicate that the plaintiff has a substantial case." *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 802-03 (7th Cir. 2008). CVR's briefing explains why MVSC's complaint does not plead nearly enough to justify these burdens.

### III. MVSC's State Law Claims Fail.

MVSC does not dispute that its Illinois Antitrust Act claim against CVR rises and falls with its federal claim. Nor could it. *See Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (Illinois Antitrust Act "parallels the federal Sherman and Clayton Acts"); *Hackman v. Dickerson Realtors, Inc.*, 520 F. Supp. 2d 954, 968 (N.D. Ill. 2007) (same). Because MVSC cannot state a federal claim for the reasons explained above, the Court should dismiss the Illinois Antitrust Act claim as well.

So too for MVSC's claim under the Illinois Consumer Fraud Act. Courts have recognized that it "would be inconsistent to provide that the very conduct which is not sufficient to state a cause of action under the Antitrust Act is sufficient to state a cause of action under the Consumer Fraud Act." *Am. Top English, Inc. v. Lexicon Mktg. (USA) Inc.*, 2004 WL 1403695, at *5 (N.D. Ill. June 21, 2004) (quoting *Laughlin v. Evanston Hosp.*, 133 Ill.2d 374, 390 (Ill. 1990)).[3] The Court accordingly should dismiss the Illinois Consumer Fraud Act claim against CVR.

---

[3] The Seventh Circuit has allowed for the "possib[ility]" that antitrust-based claims can be brought under both the Illinois Antitrust Act and the Illinois Consumer Fraud Act. *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 831 (7th Cir. 2014). *But see Gaebler v. N.M. Potash Corp.*, 285 Ill. App. 3d 542, 544 (Ill. App. 1996) (dismissing claim based on "antitrust allegations dressed in Consumer Fraud Act clothing"). Regardless, *Batson* does not imply that an antitrust-based claim under the Illinois Consumer Fraud Act can survive when, as here, the underlying conduct fails to state a claim under the Illinois Antitrust Act. To the contrary, *Batson rejected* the plaintiff's argument that a purported tying arrangement violated the Illinois Consumer Fraud Act when the same arrangement was lawful under state and federal antitrust law. *Id.* at 831-33.

## IV. MVSC's Claims Also Fail For Lack Of Antitrust Injury.

CVR agrees with Reynolds's argument that MVSC's Section 1 and 2 claims fail to the extent that MVSC's alleged injury is the inability to secure DMS data through Authenticom, Inc. and other third parties who access that data unlawfully. Failure to allege antitrust injury requires dismissal of all of the antitrust claims against all of the Defendants. As further explained in Reynolds's supplemental brief (Dkt. 113 at 7-11), therefore, this Court should dismiss the SAC for lack of antitrust injury.

## CONCLUSION

For the reasons stated above and in CVR's briefs in support of its motion to dismiss, the Court should dismiss the SAC—and at a minimum, the claims against CVR—with prejudice.

Dated: April 13, 2018

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant
CDK Global, LLC*

## **CERTIFICATE OF SERVICE**

I, Britt M. Miller, an attorney, hereby certify that on April 13, 2018, I caused a true and correct copy of the foregoing **DEFENDANT COMPUTERIZED VEHICLE REGISTRATION'S SUPPLEMENTAL BRIEF REGARDING SEVENTH CIRCUIT CASE LAW**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

          */s/ Britt M. Miller*_____
          Britt M. Miller
          MAYER BROWN LLP
          71 South Wacker Drive
          Chicago, IL  60606
          Phone:  (312) 782-0600
          Fax:  (312) 701-7711
          E-mail:  bmiller@mayerbrown.com