**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to:<br>*Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.) | Hon. Amy J. St. Eve<br><br>**PUBLIC-REDACTED** |

**MOTOR VEHICLE SOFTWARE CORPORATION'S SUPPLEMENT TO ITS
OPPOSITION TO DEFENDANTS' SECOND MOTIONS TO DISMISS**

**INTRODUCTION**

As the case comes to this Court, Judge Dale S. Fischer of the Central District of California has already ruled that MVSC has alleged plausible horizontal conspiracy claims under Section 1 of the Sherman Act and state antitrust laws. *See MVSC v. CDK Global, LLC*, 2017 WL 5643163 (C.D. Cal. Oct. 2, 2017) ("*MVSC*"). The only claims at issue in the pending motions to dismiss are MVSC's claims that CDK Global, Inc. ("CDK"), The Reynolds & Reynolds Company ("Reynolds"), and their wholly owned joint venture Computerized Vehicle Registration ("CVR") monopolized or attempted to monopolize electronic vehicle registration ("EVR") markets in violation of Section 2 of the Sherman Act and analogous state competition laws. For the reasons provided in MVSC's Opposition Brief, *see* MVSC Dkt. 90 ("MVSC Opp."), MVSC's Second Amended Complaint, *see MVSC* Dkt. 76 ("SAC") – filed after MVSC was granted leave to amend – contains sufficient allegations to state plausible monopolization claims. This supplemental brief explains why MVSC has stated a claim under Seventh Circuit precedent.

**ARGUMENT**

**I.  MVSC Has Plausibly Alleged That CDK Unlawfully Monopolized and Attempted To Monopolize EVR Markets**

The elements of monopolization and attempted monopolization are the same in the Seventh Circuit as they are in the Ninth Circuit. Monopolization requires (1) "possession of monopoly power in the relevant market" and (2) "the willful acquisition or maintenance of that power." *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1069 (N.D. Ill. 2016) (monopolization). Attempted monopolization requires (1) "specific intent . . . to acquire monopoly power," (2) "anticompetitive or predatory conduct directed at that goal," and (3) "a dangerous probability" of success. *L&W/Lindco Prods., Inc. v. Pure Asphalt Co.*, 979 F. Supp.

1

632, 636 (N.D. Ill. 1997) (attempted monopolization). The only arguments raised by CDK are that the SAC fails to allege plausibly that CDK competes in the EVR market and has employed anticompetitive conduct to acquire, maintain, or to attempt to acquire monopoly power. Those arguments fail under Seventh Circuit precedent.[1]

### A. CDK Is a "Competitor" in the EVR Markets

**1.** As MVSC explained in its Opposition Brief (at 2-7), CDK is a "competitor" in EVR markets because it "substantially controls the policies of its subsidiary" CVR, which all parties acknowledge is a competitor in the EVR market. *See United States v. Crocker Nat'l Corp.*, 656 F.2d 428 (9th Cir 1981), *rev'd on other grounds, BankAmerica Corp. v. United States*, 462 U.S. 122 (1983) ("*Crocker*"). Courts in this Circuit employ the same "substantial control" standard as the Ninth Circuit – and cite *Crocker* directly for the proposition that a "'parent corporation [is] deemed to be competitor of subsidiary's competitor where parent closely controls or dictates policies of subsidiary.'" *Protectoseal Co. v. Barancik*, 1993 WL 376636, at *3 (N.D. Ill. Sept. 3, 1993), *aff'd*, 23 F.3d 1184 (7th Cir. 1994) (citing *In re Borg-Warner Corp.* 101 F.T.C. 863, 1983 WL 486332, at *33 (1983) (test is whether "parent controls or has the power to control its subsidiary's major business decisions")). The "substantial control" standard effectuates Congress's intent not to "permit such a simple and obvious means of avoidance" – *i.e.*, directing subsidiaries to carry out anti-competitive conduct – "as to render the [Sherman Act] meaningless." *Crocker*, 656 F.2d at 450.

CDK (at 2-3) argues that the Seventh Circuit has deviated from the Ninth Circuit by relying on *National Lead Co. v. FTC*, 227 F.2d 825 (7th Cir. 1955), *rev'd on other grounds*, 352

---

[1] The SAC alleges that CDK/CVR have a 40% market share in the California EVR market, *see* MVSC Opp. at 2 n.1, which is sufficient to demonstrate a dangerous probability of achieving a monopoly. *See Damon v. Geheb*, 1982 WL 1927, at *4 (N.D. Ill. Nov. 23, 1982) (25% share sufficient); *SCM v. Railinc*, 1986 WL 207, at *4 (N.D. Ill. June 9, 1986) (28% share sufficient).

U.S. 419 (1957). *National Lead*, however, was decided on a full evidentiary record and therefore is silent as to the pleading standard that MVSC must satisfy. *See id.* at 828-29. Moreover, in *National Lead*, unlike here, there was no "domination by [a] parent" that would satisfy even the "substantial control" standard used by the Ninth Circuit. *Id.* at 829, 837. Accordingly, to the extent any language in *National Lead* might suggest a stricter standard, it was non-binding dicta that should not override the persuasive reasoning in *Crocker*. *See In re Cassidy*, 892 F.2d 637, 640 (7th Cir. 1990); *United States v. Crawley*, 837 F.2d 291, 292-93 (7th Cir. 1988).

**2.** In any case, CDK does not dispute that, under both Seventh and Ninth Circuit law, CDK is a competitor if CVR is its "alter ego." MVSC has demonstrated in its Opposition Brief (at 7-8) that its allegations, if proven, would satisfy even that "alter ego" standard. *See Continental Cas. Co. v. Symons*, 817 F.3d 979, 993 (7th Cir. 2016); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 854-55 (N.D. Ill. 2008).

In the Seventh Circuit, moreover, unlike in the Ninth Circuit, a plaintiff opposing a motion to dismiss may "elaborate on his factual allegations" by "submit[ting] materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The evidence adduced so far in discovery supports MVSC's allegations that CVR and CDK are alter egos. ███████████████████ ███████████████████████████████████████████ Ex. 1 (CDK-1084143); Ex. 2 (CDK-1130488); *see also* Ex. 3 (CDK-0071912) ███████████████████ Ex. 4 (CDK-1086689) ███████████████████████████████████████████ *See, e.g.*, Ex. 5 (CDK-1044257) ███ ███████████████████████████ The complaint's allegations – already buttressed by

3

discovery – are sufficient to demonstrate not only "substantial control," but "alter ego" status under this Circuit's law. *See*, *e.g.*, Cent. *Ill. Carpenters Health & Welfare Trust Fund v. Strom*, 2007 WL 2700502, at *1 (C.D. Ill. June 29, 2007).

### B. CDK Acquired and Maintained Its Monopoly Through Anti-Competitive Conduct

As MVSC demonstrated in its Opposition Brief (at 9-13), the SAC plausibly alleges that CDK acquired and maintained its monopoly, or attempted to do so, by (1) conspiring to deny MVSC access to dealer data; and (2) refusing to sell MVSC the same service that it voluntarily sells to non-competitors. Both are cognizable forms of anti-competitive conduct.

**1.** As explained in MVSC's Opposition Brief (at 9-10), CDK's argument that a firm may refuse to deal with its rivals is no defense to MVSC's claim, which is that CDK *conspired* with Reynolds to deny MVSC access to dealer data. *See Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1026 (7th Cir. 2017) (explaining that *Trinko* and *Aspen Skiing* are "section 2 case[s]," which "distinguishes" them from Section 1 cases); *see also Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1308-09 (10th Cir. 2017) ("*Trinko* simply does not speak to claims . . . alleging concerted refusals to deal.").

CDK cites no Seventh Circuit authority in support of its contention (at 3) that MVSC may not base its Section 2 claims on conspiratorial conduct. To the contrary, CDK's own cases acknowledge that such claims are viable. *See Juneau Square Corp. v. First Wis. Nat'l Bank of Milwaukee*, 624 F.2d 798, 814 n.17 (7th Cir. 1980); *Wagner v. Magellan Health Servs.*, 121 F. Supp. 2d 673, 681 (N.D. Ill. 2000); *see also See Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 2013 WL 3214983, at *7 (N.D. Ind. Mar. 13, 2013).[2]

---

[2] CDK contends (at 3) that, in the Seventh Circuit, "conspiracy claims under Section 2 have a '*heightened* intent element.'" But even in fraud cases, intent can clearly be alleged generally, *see*

4

**2.** As explained in MVSC's Opposition Brief (at 10-13), the SAC's allegation that CDK refused to sell data integration services to MVSC because MVSC is also CDK's competitor states a viable refusal to deal claim, separate from the conspiracy claims. These allegations place this case within the *Otter Tail* exception to the general right to refuse to deal with rivals. Under this exception, a firm may not refuse to deal with customers merely because they are rivals, as that would "serve no rational procompetitive purpose." *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 698681, at *4 (N.D. Ill. Feb.22, 2017); *see Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 376 (7th Cir. 1986) ("[T]he monopolistic refusal-to-deal cases qualify rather than refute the no-duty-to-help-competitors cases. If a competitor is also a customer, his relationship to the monopolist is not only a competitive one. The monopoly supplier who retaliates against customers who have the temerity to compete with him, by cutting such customers off, is severing a collateral relationship in order to discourage competition.").

CDK erroneously contends (at 4-5) that the Seventh Circuit has already held in *Authenticom* that this exception does not apply. That is wrong for several reasons. Although the *horizontal* conspiracy claims in *MVSC* and *Authenticom* overlap – because MVSC (as a consumer of data integration services) was harmed by Defendants' exclusion of independent data integrators from the market – MVSC and Authenticom have different monopolization claims. Authenticom competes with CDK (and Reynolds) in the market for data integration services, which are used by software application vendors (like MVSC) and dealers. In contrast, MVSC is a consumer of data integration services, which CDK refuses to sell to MVSC because it is CDK's rival in EVR markets. The Seventh Circuit was neither presented with nor addressed MVSC's distinct monopolization claims in *Authenticom*. Moreover, even with respect to

---

Fed. R. Civ. P. 9(b), and CDK does not contend that MVSC has failed to satisfy its burden at the pleading stage to allege any such heightened intent element.

5

Authenticom's monopolization claims, the Seventh Circuit's statement that "neither Reynolds nor CDK is a monopolist," *see Authenticom II*, 874 F.3d 1019, 1025 (7th Cir. 2017), concerned the *DMS* market, not the actual aftermarkets for data integration, which are the markets at issue for Authenticom's monopolization claims. Finally, CDK misses the mark in arguing (at 4-5) that the *Otter Tail* exception does not apply because preventing MVSC's access had procompetitive security benefits. MVSC claims that CDK refused to allow MVSC to participate in the 3PA program – which is purportedly CDK's approved method of secure access for all third-party vendors. If CDK's security rationale were valid, then that would be a reason to let MVSC *in* – not keep it *out* – of the 3PA data integration program.

Initial discovery in *Authenticom* – which, again, is relevant at the motion to dismiss stage in the Seventh Circuit – confirms that CDK's motivation in refusing to let MVSC participate in the 3PA program was to destroy its rival MVSC. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Ex. 6 (CDK-0177998). ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ *See* Ex. 7 (CDK-0076911) ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

6

## II.   MVSC Has Alleged Conspiracy to Monopolize

In the Seventh Circuit, the elements for conspiracy to monopolize under Section 2 are "1) the existence of a combination or conspiracy, 2) overt acts in furtherance of the conspiracy, 3) an effect upon a substantial amount of interstate commerce and 4) the existence of specific intent to monopolize."  *Great Escape, Inc. v. Union City Body Co.*, 791 F.2d 532, 540-41 (7th Cir. 1986).[3]  The allegations in the SAC state a conspiracy claim under Section 2 and are fully consistent with *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752 (1984) and Seventh Circuit case law.

### A.  MVSC Has Pleaded a Conspiracy To Monopolize State EVR Markets

Judge Fischer dismissed the FAC's Section 2 conspiracy claim because MVSC "d[id] not identify conspiratorial conversations between CVR and CDK or Reynolds."  *MVSC*, 2017 WL 5643163, at *7.  The SAC cures this by offering detailed allegations – including admissions by a CVR board member – of specific conspiratorial conversations involving representatives of CVR, CDK, and Reynolds at CVR board meetings and in other contexts.  *See* MVSC Opp. 14-15.[4]  Those detailed and particularized allegations offer more than "enough factual matter (taken as true) to suggest that an agreement was made" among the defendants.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Notably, the SAC does not depend merely on allegations of parallel conduct.  They include specific accounts of CVR's involvement in a conspiracy to boycott MVSC and MVSC's access to independent data integrators for the purpose of enabling CVR to monopolize state EVR markets.  These allegations provide a "nonnegligible probability that the

---

[3] In the Ninth Circuit, the elements are the same except that "causal antitrust injury" is a separate element, whereas "an effect upon a substantial amount of interstate commerce" is not.  *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003).

[4] CDK argues (at 3-4) that MVSC's Section 2 conspiracy claim "has no independent significance in this case."  Leaving aside that Section 2 itself makes it unlawful to "conspire . . . to monopolize," *see* 15 U.S.C. § 2, MVSC's Section 2 claim has "independent significance" because CVR is a defendant in the Section 2 (but not Section 1) conspiracy claim.

7

claim is valid," which is all that is required. *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) (quotation marks omitted); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010) (finding it "[o]f note" that the plaintiff alleged that "the defendants belonged to a trade association and exchanged price information directly at association meetings").

The complaint's allegations regarding CVR's involvement in the conspiracy have already been reinforced by discovery to date. ███████████████

███████████████

███████████████ Ex. 8 (CDK-2397246). ███████████████

███████████████

███████████████

███████████████

███████████████

███████████████

███████████████ Ex. 9 (CDK-0049414-15). ███████████████

███████████████

███████████████

███████████████ *Id.* (CDK-0049413)

(emphases added).

8

### B. Defendants Are Capable of Conspiring

CVR and Reynolds argue that they form a single entity (with CDK) and thus are incapable of conspiring. Reynolds is estopped from taking this position, and it is meritless.

**1.** "In determining whether a party is judicially estopped from raising an argument," the Seventh Circuit "examine[s] three factors: (i) whether the party's positions . . . are clearly inconsistent; (ii) whether the party successfully persuaded a court to accept its earlier position; and (iii) whether the party would derive an unfair advantage if not judicially estopped." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013). Reynolds is estopped from arguing that it is a single entity with CVR because Reynolds successfully argued in obtaining dismissal of MVSC's FAC that it "does not compete in the EVR market," because it is separate from CVR. MVSC Dkt. 63-1, at 15; *see MVSC*, 2017 WL 5643163, at *5-6. Having persuaded the Court that it is distinct from CVR, Reynolds cannot turn around and contend that it is incapable of conspiring with CVR because it is part of the same entity. *See* MVSC Opp. 16-17 & n.11 (citing cases).[5]

**2.** Regardless, the three Defendants are not a single entity under *Copperweld*. There, the Supreme Court held that because a "parent and its wholly owned subsidiary have a complete unity of interest," "[i]f a parent and a wholly owned subsidiary do 'agree' to a course of action," conspiracy liability is not warranted because "there is no sudden joining of economic resources that had previously served different interests." *Id.* at 771; *Am. Needle, Inc. v. NFL*, 560 U.S. 183, 195 (2010) ("The key is whether the alleged 'contract, combination . . . , or conspiracy' is concerted action – that is, whether it joins together separate decisionmakers.").

---

[5] CVR argues (at 4) that it has preserved this issue even if Reynolds is estopped. But CVR's motion to dismiss the FAC "join[ed] . . . Reynolds's motion[] to dismiss and supporting memorand[um]" and argued specifically that "alleged antitrust violations by Reynolds and/or CDK cannot be imputed to CVR." CVR MTD, MVSC Dkt. 60-1, at 1, 8. Under these circumstances, there is nothing inequitable about holding that both Reynolds and CVR are estopped from now arguing that Reynolds is a single entity with CVR.

9

But CVR is far from a wholly owned subsidiary of a single parent company. Rather, CVR is the vehicle by which CDK and Reynolds – indisputably "[t]wo separate economic decisionmakers" – got together and conspired to monopolize EVR markets. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 706 (7th Cir. 2011). The CVR joint venture thus represents the *elimination* of independent decision-making – which is what makes this a core case for conspiracy liability under *Copperweld*, *American Needle*, and this Circuit's precedents. *See Copperweld*, 467 U.S. at 769 ("joint ventures" constitute "[c]oncerted activity subject to § 1"). Contrary to Defendants' suggestion, the law is clear that a joint venture is not a get-out-of-jail free card for competitors desiring to collude. *See id.*; *Am. Needle,* 560 U.S. at 202 ("[C]ompetitors cannot simply get around antitrust liability by acting through a . . . joint venture."). Notably, neither Reynolds nor CVR musters any contrary Circuit authority.

Defendants argue – at times inconsistently – about the SAC's allegations regarding CDK and Reynolds' degree of control over CVR. To be clear, the SAC alleges that CDK owns 80% of CVR and controls its operations. *See* SAC ¶¶ 218, 227, 238.[6] The important point here is that the issue of control does not help Defendants' *Copperweld* argument. Even if CDK's ownership and control might mean that CDK and CVR are incapable of conspiring, it certainly does not mean that *Reynolds* is incapable of conspiring with CDK and CVR.

Finally, the defenses raised by Reynolds and CVR are ultimately factual, and thus not appropriately resolved on a motion to dismiss. *In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827 (N.D. Ill. 2010), is illustrative. There, Noranda owned 50% (and later 46%) of

---

[6] As Reynolds appears to concede (at 6), its previous argument that there is a conflict between the FAC and SAC regarding Reynolds' degree of control over CVR fails under Seventh Circuit precedent. *See Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782-83 (7th Cir. 2013) ("facts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss," even if they contradict earlier factual allegations). In any event, there was no contradiction between the FAC and SAC. *See* MVSC Opp. 19-20.

10

Falconbridge, and the two entities "integrate[d] a number of departments and business units," consolidated their financial statements, and eventually merged. *Id*. 883-84. Nonetheless, "[t]he reasoning behind *Copperweld*, elaborated on by *American Needle*," supported the conclusion that they could conspire with each other. *Id*. at 884. On summary judgment, the court held, that Noranda's "degree [of] *de facto* control over Falconbridge [was] disputed," *id*. at 884, and therefore they "qualify as separate entities capable of conspiring," *id*. at 887.[7]

## III. MVSC Has Plausibly Alleged Antitrust Injury

Reynolds – but not CDK or CVR – argues that MVSC lacks antitrust standing to assert claims premised on using independent data integrators because such use purportedly violates a criminal anti-hacking statute. MVSC has previously explained that this argument fails for three reasons. Seventh Circuit precedent fully supports each of those reasons.[8]

### A. Reynolds' Argument Rests on a Misreading of the Complaint

As MVSC's Opposition Brief explained (at 20-21), MVSC has alleged that Reynolds and CDK conspired to deny MVSC entry into the RCI and 3PA programs – which are indisputably lawful means of access. Judge Fischer has already held that those allegations plausibly stated a claim for a *per se* unlawful group boycott. *See MVSC*, 2017 WL 5643163, at *4-5. Reynolds

---

[7] Reynolds tries (at 5 n.3) to distinguish *In re Sulfuric Acid* by arguing that it was disputed whether Noranda and Falconbridge had aligned interests. But whether two entities share common interests is not the same as whether they are a single decisionmaking unit. CVR (at 3-4) likewise misreads the case when it argues (1) that the facts are distinguishable because Reynolds is an owner of CVR (Noranda was Falconbridge's direct owner) and (2) that the court held that Noranda and Falconbridge could only conspire "with other firms" (when in fact the court held that "Noranda, Falconbridge, and Boliden qualify as separate entities capable of conspiring [with one another] under § 1," 743 F. Supp. 2d at 887).

[8] For the first time in supplemental briefing, CDK and CVR join Reynolds' antitrust standing argument. *See* CDK Suppl. Br. at 6; CVR Suppl. Br. at 6. They have waived that argument. *See Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014) ("[A]rguments raised for the first time in a reply brief are waived.").

11

does not contend that the analysis would be different under Seventh Circuit law. Accordingly, Reynolds' standing argument provides no basis to dismiss MVSC's Section 1 claim.

### B. Law of the Case Precludes Reynolds from Re-litigating Antitrust Injury at the Rule 12(b)(6) Stage

MVSC's Opposition Brief demonstrated (at 21-23) that law of the case precludes Reynolds from re-litigating whether MVSC lacks antitrust standing. Seventh Circuit precedent also treats Judge Fischer's prior rejection of this argument as law of the case. *See Angevine v. Sullivan*, 881 F.2d 519, 521 (7th Cir. 1989) ("[I]ssues previously decided, either explicitly or by necessary implication, become the law of the case."); *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 902 (7th Cir. 2010) ("[L]aw-of-the-case principles are applicable when a case is transferred to a new judge midway through litigation.").

Reynolds insists (at 11) that MVSC's SAC has "superseded" the prior complaint, thus "open[ing] the door for Defendants to attack *any aspect* of the SAC" (emphasis added). Seventh Circuit precedent is to the contrary. Law of the case continues to apply after amendment of the complaint as long as the "identical factual circumstances" remain in place. *Markadonatos v. Vill. of Woodridge*, 2012 WL 2128386, at *2 (N.D. Ill. June 11, 2012). Reynolds does not argue that the amendment had any relevance to its antitrust injury argument. Rather, the amendment added allegations to bolster the monopolization claims.

### C. Reynolds' CFAA Argument Is Meritless

MVSC's Opposition Brief also showed (at 23-25) that Reynolds' antitrust injury argument is wrong on the merits. *First*, the fact that MVSC received dealer data from an independent integrator does not establish a violation of the Computer Fraud and Abuse Act. *See* 18 U.S.C. § 1030 (violator must "*knowingly access*[] a computer without authorization")

(emphasis added). A contrary holding would put the hundreds of vendors that have used independent integrators in legal jeopardy.

*Second*, Reynolds has never established – and no court has ever found – that Authenticom or any other independent integrator violates the CFAA, which is an issue that cannot be resolved on the pleadings. *See* MVSC Opp. at 23-24. In the Seventh Circuit – as in the Ninth Circuit – MVSC had no obligation to anticipate and plead around Reynolds' affirmative defenses. *See Indep. Trust Corp. v. Stewart Info Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("[A] plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses."). And as thoroughly explained elsewhere, dealer-authorized access to the dealers' own data does not violate the CFAA. *See* Authenticom Br., CA7 Dkt. 58, at 52-53. It is thus not surprising that every court to which Reynolds has made this argument – including Judge Fischer, Judge Peterson, and the Seventh Circuit – has refused to accept Reynolds' argument.[9]

*Finally*, and in any event, the CFAA does not immunize antitrust violations and therefore does not deprive a plaintiff of antitrust standing. *See* MVSC Opp. 24-25. That principle remains true in the Seventh Circuit. *See Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 n.5 (7th Cir. 1981) ("Proof of the plaintiff's unrelated unlawful conduct is not a valid *in pari delicto* defense to an antitrust charge."). The Supreme Court has long held that illegality is not a defense to antitrust violations in light of the "overriding public policy in favor of competition" enshrined in the Sherman Act. *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139

---

[9] The Seventh Circuit's precedents are even stronger with respect to the right of data owners to control access to their own data. In *Assessment Technologies of Wisconsin, LLC v. WIREdata Inc.*, 350 F.3d 640 (7th Cir. 2003), the Seventh Circuit stated that a database owner's (here, Reynolds) attempt to prevent a client (here, car dealers) "from revealing *their own* data . . . might constitute copyright misuse" and that it "would be appalling" if the database owner's (here, Reynolds) attempt to "secrete the data in [a] copyrighted program" were permitted to succeed. *Id.* at 641-42, 646-47.

13

(1968). Reynolds' reliance (at 8-9) on *Maltz v. Sax*, 134 F.2d 2 (7th Cir. 1943), is misplaced. That case has been abrogated by the Supreme Court's decision in *Perma Life* and the Seventh Circuit's decision in *Pinto Trucking*. *See Consol. Exp., Inc. v. New York Shipping, Inc.*, 602 F.2d 494, 526 n.21 (3d Cir. 1979) ("We do not believe [*Maltz's*] holding survives *Perma Life*.").

### IV.     MVSC's State-Law Claims Are Properly Pleaded

Defendants do not contend that the analysis for MVSC's state law claims is different from the analysis for the federal claims. *See* CDK Suppl. Br. at 5; CVR Suppl. Br. at 5. Accordingly, MVSC's state law claims survive for the same reasons that the federal claims survive. Reynolds' contention (at 11-12) that MVSC has forfeited its state law claims is incorrect. Prior to the pending motion to dismiss, Judge Fischer had already denied motions to dismiss MVSC's state law claims against Reynolds and CDK in Counts VI-VIII. *See MVSC*, 2017 WL 5643161, at *7-8. Law of the case prevents Reynolds and CDK from re-litigating that issue. *See supra* p 12. Moreover, the reasons that Reynolds advanced for dismissal of those claims were the exact same reasons that Reynolds advanced for dismissal of the federal claims. *See* MVSC Dkt. 81-1, at 16-17 ("MVSC's [state law] claims . . . fail for the same reasons as its federal antitrust claims."). MVSC has responded to those arguments in full in its original Opposition Brief and in this brief.

Dated:  April 20, 2018                                  Respectfully submitted,

                                                        /s/ Derek T. Ho

                                                        Derek T. Ho
                                                        Michael N. Nemelka
                                                        Aaron M. Panner
                                                        Joshua Hafenbrack
                                                        **KELLOGG, HANSEN, TODD,**
                                                          **FIGEL & FREDERICK, P.L.L.C.**
                                                        1615 M Street, NW, Suite 400
                                                        Washington, D.C. 20036
                                                        (202) 326-7900
                                                        dho@kellogghansen.com
                                                        mnemelka@kellogghansen.com
                                                        apanner@kellogghansen.com
                                                        jhafenbrack@kellogghansen.com

                                                        Gary Salomons
                                                        Daniel J. Friedman
                                                        **GABRIELSALOMONS, LLP**
                                                        16311 Ventura Blvd., Ste. 970
                                                        Encino, CA  91436
                                                        (818) 906-3700
                                                        gary@gabrielsalomons.com
                                                        daniel@gabrielsalomons.com

                                                        *Attorneys for Plaintiff Motor Vehicle*
                                                        *Software Corp.*

15

**CERTIFICATE OF SERVICE**

       I, Derek T. Ho, an attorney, hereby certify that on April 20, 2018, I caused a true and correct copy of the foregoing **MOTOR VEHICLE SOFTWARE CORPORATION'S SUPPLEMENT TO ITS OPPOSITION TO DEFENDANTS' SECOND MOTIONS TO DISMISS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                                          Derek T. Ho
                                                    **KELLOGG, HANSEN, TODD,**
                                                        **FIGEL & FREDERICK, P.L.L.C.**
                                                  1615 M Street, NW, Suite 400
                                                  Washington, D.C. 20036
                                                  (202) 326-7900
                                                  dho@kellogghansen.com