**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This filing relates to:* ALL ACTIONS | Hon. Amy J. St. Eve |

# DEFENDANTS' SUPPLEMENTAL SUBMISSION REGARDING
# CASE SCHEDULE AND PRELIMINARY SUBMISSION REGARDING
# AUTHENTICOM'S FINANCIAL STATUS

PUBLIC VERSION

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.     All Parties Will Have Sufficient Opportunity to Conduct Non-Duplicative Discovery Under Defendants' Proposed Schedule. ........................................................ 2

      A.    Defendants' Schedule Provides an Accelerated Timeline for Authenticom ......... 2

      B.    Class Plaintiffs Will Have Sufficient Time to Conduct Discovery. ...................... 5

II.     Authenticom Likely Will be Viable and Financially Sound through the Conclusion of Any of the Currently Proposed Schedules. ............................................... 6

      A.    After the Seventh Circuit Decision, Authenticom Announced Itself "Well-Positioned and Viable" ......................................................................................... 7

      B.    Since the Seventh Circuit Decision, Authenticom's Financial Position ▮ ▮▮▮▮▮▮▮▮ ............................................................................................................. 9

      C.    Authenticom's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ ............................................. 11

      D.    Authenticom Has No Evidence that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ............. 13

      E.    Authenticom's Prior Representations Have Not Held Up Over Time ................. 14

CONCLUSION ....................................................................................................................... 15

Per the Court's April 25, 2018 Order (Dkt. 146), Defendants CDK Global, LLC and CDK Global, Inc. (collectively "CDK"), Computerized Vehicle Registration ("CVR"), and The Reynolds and Reynolds Company ("Reynolds") (collectively "Defendants"), offer this supplemental submission in support of their proposed case schedule.[1] As explained below, and in their prior submissions, Defendants' schedule is the only currently proposed schedule that accomplishes the dual goals of (1) accelerating the trial date of the *Authenticom* matter, while (2) ensuring that Defendants are not subjected to undue burden or duplicative discovery, in contravention of the stated purpose of this MDL. *See* Dkt. 1 (creation of MDL will "eliminate the possibility of duplicative discovery … serve the convenience of the parties and witnesses, and conserve party and judicial resources.")

## INTRODUCTION

Mindful of the Court's statement at the April 25 Status Hearing that it "ha[s] an understanding of [the parties'] positions" regarding scheduling and did not believe it needed anything more than the parties' correspondence (handed up at the hearing), Defendants will not repeat the substance of their prior correspondence here. *See* 4/25/18 Tr. at 30:21-25 (Ex. 3). Rather, the below is intended to advise the Court of certain other information not otherwise addressed in the parties' submissions—namely the correction of certain statements made by plaintiffs' counsel at the April 25 hearing regarding Defendants' proposal as well as additional details regarding Authenticom's financial status, which clearly indicate that notwithstanding the Seventh Circuit's November 2017 statement, Authenticom expects to remain financially viable for the foreseeable future and certainly through the schedule proposed by Defendants.

---

[1] The details of Defendants' proposed schedule are contained in its April 5, 2018 Letter (which was handed up to the Court at the April 25, 2018 Status Hearing). A copy is also attached as Ex. 1. Given the passage of time, Defendants have updated the dates in that schedule, as some of the dates in Defendants' April 5 proposal have passed and the Court has already set other pertinent dates. *See* Ex. 2.

Specifically, Authenticom has not presented any evidence that its financial condition requires completion of pretrial proceedings by April 2019, as opposed to September 2019. Indeed, in recent months, Authenticom has ███████████████████████ ███████████████████████████████████████████████ ████████████████████ from BMO Harris Bank ("BMO Harris"). █████████ ████████████████████████████████████████, and its CEO, Steve Cottrell, has publicly declared the company "well positioned and viable." In short, contrary to the representations relied upon by the Seventh Circuit, Authenticom is not on the verge of going out of business.

In other words, the aggressive, burdensome, and unconventional schedule proposed by Plaintiffs is unnecessary and only prejudicial to Defendants. Instead, to quote co-Lead Counsel, the "standard operating procedure in litigation, which is: Fact discovery; then followed by expert disclosures; then followed by *Daubert* motions; then followed by dispositive motions; and, then, a trial…" is more than sufficient (and there is a reason it is the standard). Ex. 3 at 15:25-16:4.

## ARGUMENT

### I. All Parties Will Have Sufficient Opportunity to Conduct Non-Duplicative Discovery Under Defendants' Proposed Schedule.

Plaintiffs' counsels' principal complaints regarding Defendants' proposed schedule fall into two main categories: (1) it doesn't get Authenticom to trial fast enough, and (2) it doesn't give the Class Plaintiffs sufficient time to complete discovery "specific" to their claims. As set forth below and in Defendants' April 5 correspondence, both complaints are without merit.

    A.    *Defendants' Schedule Provides an Accelerated Timeline for Authenticom*

As detailed in our April 5 letter (Ex. 1), Defendants' current proposed schedule reduces their original proposed schedule (which was agreed to by all but the Kellogg Hansen plaintiffs

2

and two other Class Plaintiffs) by *more than 8 months*.[2] To be sure, the deadlines that Defendants have suggested are ambitious—5½ months for document discovery, 4 months for oral discovery, 3½ months for expert discovery, dispositive motions filed 45 days after the close of fact discovery, and the *Authenticom* case eligible for remand to the W.D. of Wisconsin in September 2019 (after this Court rules on any dispositive motions). That is *16 months* for all pretrial proceedings even though, according to Class Plaintiffs' counsel, antitrust discovery alone "normally . . . could take two to three years." Ex. 3 at 23:4-5. But, notwithstanding Defendants' belief that their original March 9 proposal (with trial no earlier than February 2020) is more than reasonable, Defendants are willing to stand by the compromise they've proposed and do their best to work constructively with plaintiffs to meet the proposed deadlines.

Plaintiffs' proposed schedule is neither realistic nor achievable. Indeed, Authenticom has already asked for two extensions of its April 23 deadline to respond to additional discovery served on March 23 pursuant to the Court's order.[3] *See* Ex. 4 (correspondence from Authenticom's counsel). In other words, the parties will not have written responses to their discovery requests until *44 days* after service. Thus, Plaintiffs' most recent scheduling proposal, which requires written responses and objections to future discovery requests be served 21 days from service with any motions to compel file 30 days later, has already proven unworkable. *See* 4/20/18 Letter at 2 (II.6 and 7). Under Plaintiffs' proposed schedule, the parties should be filing motions to compel next Monday.

---

[2] Plaintiffs' proposal moved at most two months (the Kellogg Hansen-affiliated group originally had *Authenticom* going to trial in February 2019; that has now been moved to April 2019).

[3] Authenticom did provide responses and objections to two of Reynolds's interrogatories and one of its RFAs on Saturday, April 21, in anticipation of the April 23 30(b)(6) deposition of Authenticom related to its finances.

3

Similarly, if Defendants' meet-and-confer experience in *Authenticom* is any indication, the parties will need significant time to try to work out any discovery disputes prior to bringing them to the Court. There, the parties served their initial discovery requests on October 2, 2017. Four months later they were still negotiating the scope of a number of discovery requests. S*ee, e.g.,* Ex. 5 (1/29/18 Letter to M. Nemelka). More recently, despite the Court's direction that discovery on Authenticom's financial condition be prioritized (Dkt. 116 at 36:19-37:2), and despite the fact that Defendants are set to depose Authenticom's bank, BMO Harris, this coming Wednesday, Authenticom continues to refuse to produce documents clearly responsive to Defendants' March 23 document requests—including its communications with BMO Harris—offering instead to meet-and-confer on certain of those requests at some unidentified point. *See* Ex. 6 (4/27/18 Letter from D. Ho).

In short, the idea that 30 days after service of written responses and objections is sufficient time to meaningfully meet-and-confer, much less draft targeted motions to compel in each of the cases that is now part of this MDL (the necessity of which might be obviated if the parties had additional time to meet-and-confer),[4] is fantasy. In reality, meet-and-confers will be truncated and motions to compel hastily filed asking the Court to resolve almost every issue, contrary to the interests of "conserve[ing] party and judicial resources." Dkt. 1 (MDL Order).

Finally, it is worth noting that the most recent schedule proposed by Plaintiffs on April 20 is actually a step back in many respects from what Plaintiffs previously offered. For example, in order to keep Authenticom's proposed April 2019 trial date while still making it appear they had compromised on some interim deadlines, Plaintiffs reverted to their initial March proposal

---

[4] Indeed, according to Authenticom's counsel, in the four months that the *Authenticom* parties "negotiated hard-fought compromises on the vast majority of issues, including custodians and search terms" (*see* Dkt. 36 at 9), no motions to compel were filed.

4

whereby expert discovery—at least for the individual actions—starts a mere 2 ½ months after the close of document discovery and the start of fact depositions and closes on the same date as fact discovery—January 31, 2018. *See* 4/20/18 Letter at 3 (II.8 and 11—document productions complete by Friday, September 14; depositions start the following Monday, September 17, 2018) and (III.1-opening expert reports due November 30, 2018).[5] In other words, under Plaintiffs' schedule, everything—written discovery, document productions, discovery motion practice, depositions, and expert discovery (again, only for the four individual actions)—would be complete within 9 months.

      B.      *Class Plaintiffs Will Have Sufficient Time to Conduct Discovery.*

In Plaintiffs' most recent schedule, they propose that "non-duplicative" document and oral discovery will be complete by January 31, 2019. *See* 4/20/18 Letter at 3. Not surprisingly, they then go on to reserve their right to seek leave of court to serve additional document requests and add additional search terms and custodians including but not limited to additional discovery "specific to the class case including but not limited to any third party subpoenas and/or depositions (***current or former employees of defendants*** as well as third parties…," but commit that no "***current employee*** of a Defendant shall be re-deposed absent leave of Court." *Id.* (emphasis added).[6] In other words, Class Plaintiffs are essentially reserving their "right" to seek all manner of additional discovery related to their case, including some unspecified amount of written and oral discovery, after discovery in the individual actions is completed. And despite

---

[5] And it is irrelevant that the pre-MDL *Authenticom* schedule previously contemplated such a structure. While that may be local practice in the Western District of Wisconsin, it is not the practice in this District, and given the shortness of the other proposed deadlines, would be highly prejudicial to Defendants (on which the worst of the fact discovery burden will fall).

[6] According to Plaintiffs, all of this additional discovery will be conducted from January 31, 2019 (the day fact discovery and expert discovery closes in the individual actions) until "***7 days before the Authenticom trial begins***." *Id.* In other words, in the ***2 months*** Defendants have to prepare for trial in *Authenticom*, Class Plaintiffs are free to serve any manner of "non-duplicative" discovery on them.

their assurances that they will not engage in "duplicative" discovery, Plaintiffs have been unable or unwilling to identify a single topic of discovery that will be unique to the class. Thus, while post-January 2019 discovery may not be word-for-word duplicative, it is clear based on the complaints filed to date and the documents and potential deponents at issue that it will be substantively duplicative in myriad respects.

Defendants' proposal, on the other hand, provides for substantial time—almost ten months—for all parties' written, document, and oral fact discovery to be completed. *See* Ex. 2. And it would be expected that Class Plaintiffs would be full participants in that discovery. Thus, even if Authenticom "only want[s] to take five depositions of [CDK]," Class Plaintiffs would not only be able to participate in all five of those depositions, but also would be free to take other CDK depositions up to the limit set by the Court. Ex. 3 at 21:17-22:11. The key to Defendants' proposal, as noted in their April 5 letter and at the April 25 hearing, is that fact discovery is done once; not some unspecified amount now and some unspecified additional amount later. One of the core tenets of the MDL process is that the burden on Defendants be minimized as much as practicable. *See* Dkt. 1. Defendants' schedule attempts to accomplish this; Plaintiffs' doesn't even come close.

## II. Authenticom Likely Will be Viable and Financially Sound through the Conclusion of Any of the Currently Proposed Schedules.

The touchstone of Plaintiffs' scheduling proposal is that Authenticom needs a "quicker trial" because of its financial condition such that it (and the other individual plaintiffs—all Kellogg Hansen clients) should have the imminent "discovery off ramp" detailed above and in Plaintiffs' 4/20 Letter. Yet Authenticom has produced no credible evidence suggesting that it is likely to go out of business during the tenure of Defendants' proposed schedule. Contrary to its injunction-hearing testimony, Authenticom's recent 30(b)(6) deposition and its newly produced

6

financials establish that Authenticom is  Tellingly, Authenticom's own ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

The *only* evidence to the contrary is Authenticom's CEO, Steve Cottrell's, subjective and conclusory prediction of Authenticom's imminent demise. That prediction has been refreshed and recycled at every stage of this litigation. It did not come true in July 2017 (at the time of the PI Hearing), it did not come true in November 2017 (when the 7th Circuit reversed the injunction), and there is absolutely no reason to think that it will come true now.

In short, the *objective* facts simply do not justify Authenticom's breakneck schedule, and, worse still, directly contravene Authenticom's portrayal of its financial position to Judge Peterson and the Seventh Circuit.

> A. *After the Seventh Circuit Decision, Authenticom Announced Itself "Well-Positioned and Viable"*

On November 6, 2017, the Seventh Circuit reversed the preliminary injunction granted by Judge Peterson but recommended that, "[i]n light of Authenticom's *representations* about its need for a quick resolution of this matter . . . we urge the district court to do what it can to expedite its final judgment." 11/6/17 Opinion at 3 (emphasis added). Those "representations" included Mr. Cottrell's June 2017 testimony that "without a preliminary injunction, [Authenticom] most certainly will be forced out of business or bankruptcy," and that if the Defendants were allowed to "continue blocking" Authenticom from accessing their proprietary systems, Authenticom "will go out of business." Authenticom Dkt. 164 (Case No. 18-cv-868) at 83:7-10; 148:23-25 ("Auth Dkt."). They also included an August 2017 declaration submitted to

the Seventh Circuit stating that if the injunction were removed "even for a limited time—Authenticom's ability to survive [would] be placed in grave jeopardy" and that it would "pose a serious risk that BMO Harris [would] foreclose on Authenticom's loan." Ex. 7 (8/4/17 Cottrell Dec) at ¶¶ 3, 10.

The day after the Seventh Circuit reversed the preliminary injunction, Authenticom changed its tune. On November 7, Authenticom issued a public announcement that instead of closing up shop, it was investing in new business ventures and was "ready to further [its] role as the Data Integrator of choice and the premier Data Services provider" by launching a new product, DVGo, that would "allow the dealership push of data from CDK and Reynolds & Reynolds." Ex. 8 (Dep. Ex. 13).

Two days later, Mr. Cottrell gave an interview to the *LaCrosse Tribune* and announced that recent layoffs and cost-cutting would allow Authenticom not just to survive, but to be "***well-positioned and viable***" for the future. Ex. 9 at 4. He called these moves "necessary to make [Authenticom] a 100-year company." *Id.* At his recent deposition, Mr. Cottrell ███████

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███:

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████ Ex. 10 (4/23/18 Dep.) at 149:13-23.

Since that interview, Authenticom's financial position ███████████. Ex. 10 at 141:18-142:3; 9:22-10:2; Ex. 11 (Dep. Ex. 1). In short, there is no basis for the Court to assume that this pattern will dramatically change in the foreseeable future.

  B. *Since the Seventh Circuit Decision, Authenticom's Financial Position* ███████

Over the past five months, Authenticom's financials show ███████████ Ex. 11 (Dep. Ex. 1). Indeed, Mr. Cottrell admitted that ███████████ *E.g.*, Ex. 10 at 24:5-9; 127:3-8. ███████████. In other words, by all metrics, Authenticom ███████████ since November 2017.[7]

---

[7] ███████ *See* Ex. 11 (Dep. Ex. 1); Ex. 10 at 39:9-13. ███ Ex. 10 at 30:12-32:6. ███████ *Id.*



*Source*: Ex. 11 (Dep. Ex. 1).

These fundamentals have allowed Authenticom ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In the last two months alone, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. In other words, Authenticom ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.



*Source*: Ex. 12 (Dep. Ex. 2).

10

Authenticom has been able to ▮▮▮▮:

- ▮▮▮▮, Ex. 10 at 40:4-10;
- ▮▮▮▮, *id.* at 43:12-14;
- ▮▮▮▮ *id.* at 38:2-13; *see also* Ex. 13 (AUTH_00010012); and
- ▮▮▮▮. *Id.* at 19:10-13.

In addition, in March 2018 ▮▮▮▮. Ex. 10 at 16:3-8.

Altogether, over the last 12 calendar months, Authenticom ▮▮▮▮. *Id.* at 42:3-6. Over the last fiscal year (Nov. 2016-Oct. 2017), Authenticom ▮▮▮▮. *Id.* at 45:20-23. All while ▮▮▮▮. *Id.* at 61:20-64:15; 53:12-15. Even more interestingly, over the last 12 months, Authenticom ▮▮▮▮. *Id.* at 77:4-19; Ex. 14 (Dep. Ex. 7) at 1. These are not the practices, or the fundamentals, of a company on the verge of collapse.

C. Authenticom's ▮▮▮▮

▮▮▮▮. *See* Ex. 15 (Dep Ex. 10); Ex. 16 (Dep. Ex. 11). ▮▮▮▮

███ Ex. 10 at 15:2-3 ███

███ . *See, e.g.,* Exs. 15 and 16. ███

███ *See* Ex. 10 at 167:24-168:4.

Further, Authenticom ███

███ *Id.* at 135:25-4 ███

███

███ . It also ███

███ *Id.* at 109:19-23 ███

███

███ This ███

███

███

███ :



Ex. 10 (4/23/18 Dep.) at 138:23-139:13

Moreover, these ███

███ . First, the most recent ███

███ . But Authenticom's ███

■■■■. *Compare* Ex. 15 (Dep. Ex. 10) *with* Ex. 11 (Dep. Ex. 1); *see also* Ex. 10 at 141:18-142:3 ■■■■. Second, Authenticom's ■■■■. *Id.* ; *see also* Ex. 10 at 122:8-124:17.



Ex. 10 (4/23/18 Dep.) at 124:7-17

In short, ■■■■ while the parties undertake a reasonable schedule in litigating its claims.

D. *Authenticom Has No Evidence that* ■■■■

Although Defendants' deposition of BMO Harris is not until later this week, Mr. Cottrell has admitted that the ■■■■. Ex. 10 at 185:25-186:4. ■■■■

13

█████████████████████████████████████████████████████████████████

███████████████████████████████████. In fact, despite Authenticom's many statements on the imminence of foreclosure, Mr. Cottrell testified that ████████████████████

████████████████████████████████ *Id.* at 188:22-189:2.

E.  *Authenticom's Prior Representations Have Not Held Up Over Time*

Unable to support its position with ██████████████████████████████ ████████, Authenticom has instead resorted to subjective predictions of its own collapse. In May 2017, in support of Authenticom's motion for a preliminary injunction, Mr. Cottrell filed a declaration stating that without the assistance of the Court, he did "not see how the company can avoid declaring bankruptcy." Auth. Dkt. 62 at ¶ 88. At the June 2017 hearing, it was "without a preliminary injunction, we most certainly will be forced out of business or bankruptcy." Auth. Dkt. 164 at 83:7-10. In his Seventh Circuit declaration, Mr. Cottrell said that if the injunction was stayed, for even a matter of months, Authenticom's "ability to survive [would] be placed in grave jeopardy." Ex. 7 (8/4/17 Cottrell Dec.) at ¶ 3. When none of that came true, after the injunction was reversed, he filed yet another declaration telling Judge Peterson that if he moved the October 2018 trial date that "BMO Harris would be more likely to foreclose." Auth. Dkt. 238 at ¶ 9.

Now, 11 months after the first of these predictions of imminent doom, Authenticom remains in business. It has not declared bankruptcy. ███████████████████████████

█████████████████████████████████████████████████████████████████

████████. And in fact, despite the alleged conspiracy, Authenticom ████████████████

█████████████████████████████████████████████████████████████. Ex. 10 at 87:24-88:8. Put simply, both Authenticom's documents and Mr. Cottrell's testimony evidence

that its past predictions—*i.e.*, the very representations relied upon by the Seventh Circuit in suggesting an accelerated trial—turned out to be unreliable.[8]

## CONCLUSION

Authenticom, like many plaintiffs, would prefer for its case to be heard on an accelerated schedule. And the Class would no doubt like additional time to conduct their discovery. But Defendants' have the right to present their defenses and counterclaims without unnecessary and burdensome duplication. Further, the basis for any expedited trial request must be well-founded. Here, it is not. The only objective evidence currently available proves that Authenticom is not likely to go out of business in the near term. ███████████████████████████████ ███████████████████████████████████████████████████. A substantially accelerated discovery and trial schedule, bifurcated from the bulk of the other cases in this MDL, is simply not warranted on this record. Defendants' proposed schedule—which seeks to address all of the competing concerns presented here—should be entered.

---

[8] Mr. Cottrell attempted to ███████████████████████████████████████████████████████████████████. Ex. 10 at 204:5-11; 206:3-8. At the PI hearing, however, Authenticom's expert, Gordon Klein, specifically ████████ ████████. Dkt. 165 at 136:10-14. Further, Authenticom's internal documents indicate that Authenticom ██████████████████████ Ex. 17 (Dep. Ex. 14) ██████████████████████████████. Mr. Cottrell further tried to "clarify" his testimony ███████████████████████████ ██████████ Ex. 10 at 235:5-17. In other words, ████████████████████ ████████ As such, the statements have no bearing on the very specific scheduling issue before the Court.

Dated: April 30, 2018

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
Gibbs & Bruns LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Sheppard Mullin Richter & Hampton, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
Sheppard Mullin Richter & Hampton, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com
Mark W. Ryan
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendants CDK Global, LLC, CDK Global, Inc. and Computerized Vehicle Registration*

1

PUBLIC VERSION

# CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on April 30, 2018, I caused a true and correct copy of the foregoing **DEFENDANTS' SUPPLEMENTAL SUBMISSION REGARDING CASE SCHEDULE AND PRELIMINARY SUBMISSION REGARDING AUTHENTICOM'S FINANCIAL STATUS (REDACTED)** to be filed and served upon the parties via the Court's ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
E-mail: bmiller@mayerbrown.com

728123941