# Exhibit 5

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

January 29, 2018

Britt M. Miller
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

BY E-MAIL

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

Re:     *Authenticom, Inc. v. CDK Global, LLC*
        *and The Reynolds and Reynolds Company*,
        Case No. 17-CV-318 (W.D. Wis.)

Dear Mike:

Per your request, I write in response to your email of January 27, 2018 as well as your letters of
January 19 and January 22.  As an initial matter, both my January 22 Letter and Brian Ross's
January 23 email made clear that we could not meet-and-confer on your originally demanded
date of January 22 (one business day after your January 19 letter), or on the subsequent two days
because we needed an opportunity to review and discuss your January 19 Letter with our
respective clients, needed to review and discuss your long-overdue January 22 Letter (finally
responding to our December 19 Letters) which we received after the close of business that day,
and we had other preexisting conflicts and travel for this case (and other matters) that week.  At
no point did either Brian or I promise another written response to your December 19 letter in
advance of any meet-and-confer; rather, we both indicated we would respond "as appropriate" at
a later time.  Moreover, Defendants have not "pushed the conference off for over a week".  You
originally asked for a meet-and-confer for Monday, January 22.  We have agreed to meet-and-
confer, and are scheduled to speak, at noon today (January 29), exactly a week after initially
requested.

As to the substance of your email and your letters, CDK responds as follows.

*Authenticom's January 19 Letter:*

**Sections I and II (Document Not Subject to the Stay and CDK's Confidentiality
Designations)**:  As I responded to Sections I and II of your January 19 Letter in my letter of
January 22, I will not further respond here except to address the Excel spreadsheet of "additional
documents" referenced in your January 19 Letter that Authenticom indicated it "believe[s] need
to be redesignated."  As you are aware, that spreadsheet was not included with your January 19
Letter, but rather produced via email on January 22.

As you also are no doubt aware, that spreadsheet contained a list of 79,686 documents.  Per you
January 19 Letter, those documents were supposedly in "addition" to the 42,919 identified in the

Michael N. Nemelka
January 29, 2018
Page 2

six spreadsheets attached to your January 9 email. Considering CDK's December 15, 2017 production contained only about 86,500 documents, you can imagine our confusion of how there could be 122,605 documents in that production that Authenticom believed had been improperly designated. Upon further investigation, we determined that contrary to your representation that the January 22 list was one of "additional" documents that needed to be reviewed for confidentiality re-designation, in fact 41,827 of them had already been identified in your January 9 spreadsheets as requiring such review. Given this discrepancy, we decided to dig into your spreadsheets a bit more and quickly determined that your January 9 spreadsheets were little more than database print-out reports of every single document in the December 15 production that contained the six deponents' names. We then noted that the label on the tab in your January 22 spreadsheet (and, indeed, the title of the spreadsheet) was "CDK Production – Emails and Attachments." That, at least, was accurate—it literally was a list of *every single email and attachment* in CDK's December 15 production.

The Protective Order in this case—which Authenticom claimed to be complying with in providing us with the lists of documents it believed warranted confidentiality re-designation (*see* your email of January 10) requires that:

> A party challenging the designation of Confidential Information must do so in *good faith* and must begin the process by conferring directly with counsel for the Designating Party. In conferring, the challenging party must *explain the basis for its belief that the confidentiality designation was not proper*…. (emphasis added).

The only three "bases" that we can discern that Authenticom has articulated for its challenge to the confidentiality designations in CDK's December 15 production are (1) its objection to CDK's failure to immediately re-review that entire production and re-designate any non-Highly Confidential documents, (2) the fact that 42,919 documents in that production relating to six deponents are designated Highly Confidential, and (3) the fact that there are 79,686 emails and attachments in that production that are designated Highly Confidential.

Based on the foregoing, we do not believe that Authenticom has complied with either the good faith or the explanation requirement of Paragraph 9.a. of the Protective Order.

Nonetheless, so that there is no confusion going forward, in CDK's January 25 production Authenticom received replacement images and corresponding metadata for the documents identified in the remaining five spreadsheets attached to your January 9, 2018 email, which CDK downgraded from "Highly Confidential" to a lesser designation (CDK produced the re-designated Ayotte documents on January 11). It will receive later today replacement images and corresponding metadata for any other documents in the December 15 production which CDK is downgrading from "Highly Confidential" to a lesser designation, including but not limited to any from the 79,686 identified in your January 22 spreadsheet. In short, we now have reviewed the *entire* December 15 production and lowered the confidentiality designation on those documents that warrant a lesser designation.

Mayer Brown LLP

Michael N. Nemelka
January 29, 2018
Page 3

Going forward, as no other FTC productions (or any other CDK productions) are going to be bulk designated, to the extent Authenticom wishes to challenge any more of CDK's confidentiality designations, we expect it to comply with the Protective Order and explain, *for each challenged document*, the basis for its belief that the confidentiality designation is not proper.

Finally, as for your comment regarding upcoming productions of documents previously produced to the FTC, as you note in your January 27 email, CDK produced more than 57,000 of those documents on January 25. We expect to produce another 100,000 or so documents later today, which will bring our total production in this case up to just short of ***300,000*** documents (over 55,000 of which are non-FTC produced documents). It will also bring our review and production of the bulk of the documents produced to the FTC in response to the CID (and to Authenticom in response to RFP 1) current through January 24. We understand that there was another substantial production made to the FTC in response to the CID late last week and we will promptly begin our review of that production for appropriate confidentiality designations. As we understand that production to have been at least several tens of thousands of documents, we expect that review will take a few weeks to complete.

## Section III (Other Discovery Issues):

*Materials Produced Pursuant to Government Investigations*. With respect to the documents subject to production in response to RFP No. 1, CDK is currently not withholding any "advocacy pieces, white papers, or other materials provided to the FTC that are not purely factual in nature." CDK will be including several factual documents produced to the FTC in response to the CID—*e.g.*, narrative responses to the CID specifications—in its upcoming productions.

*CDK Request No. 73 (OEM Pricing)*: The parties remain at an impasse on this issue for the reasons previously stated.

*CDK Request No. 74 (Security-Related Documents):* We assume that this will be part of our meet-and-confer later today. We can confirm that CDK is producing documents related to its Security Advisory Council to the extent that they are contained in the records of the agreed-upon custodians and are identified through the agreed-upon search terms. To our knowledge these records are not otherwise centrally-stored, but we will confirm.

## ***CDK Specific Issues***

*CDK Request Nos. 62 and 63:* This issue is resolved.

*CDK Request Nos. 51, 52, 53, 54 & 55 (DMS Financials):* These requests were thoroughly discussed and resolved by my December 8 and December 15 correspondence.

*CDK Request Nos. 57, 58, 59, 60, 61, 65, 66, 67, 69 & 70 (3PA Financials):* This issue is resolved.

Mayer Brown LLP

Michael N. Nemelka
January 29, 2018
Page 4

*CRM Software:* You did not miss any correspondence on this topic. Our efforts were redirected toward other pressing discovery issues at the time. We appreciate you reminding us, and will raise the issue again with our client and report back as soon as we have additional information.

*Request No. 17 ("SMART-R"):* This issue is resolved.

*Request No. 25 (Agreements with Other Providers of Data Integration):* We assume this will be discussed during today's call.

*Request No. 28 (Manual Reporting):* My December 8 correspondence was perfectly clear on this topic, but let me reiterate. CDK has a number of manual reporting tools (we did not represent that we have a "program akin to Reynolds' Dynamic Reporting") that its dealers can use to manually extract data from the DMS. We are not aware of any repository of information related to manual polling/manual reporting. We expect that information responsive to this Request, including presentations, communications with dealers, etc. will be in our agreed-upon custodians files and produced as part of our custodial ESI production (and as part of our FTC CID re-production). To the extent we are able to export data from our CRM software (*see* above) and search that data, we will search it for documents responsive to this Request. We also will be producing what documents we have for the relevant period that track or otherwise document dealers' manual reporting activity.

*Request Nos. 86 & 87 (Elliott Management):* We note that the parties had previously reached agreement on these requests and Authenticom is now seeking to withdraw its agreement and re-negotiate. Your request for "all" correspondence with Elliott Management is absurd. That said, the search terms we agreed upon should capture any substantive documents relating to Elliott in our agreed custodians files and we will agree to produce any such substantive documents.

*Request No. 91:* We are at a loss as to what could still be at issue here, but we nonetheless can include it in our discussion later today.

<u>Authenticom's January 22 Letter:</u>

So that we can ensure that all of the parties' issues are being addressed, we wanted to respond, in the short term, to your January 22 Letter.

*Usernames and Passwords:* We believe that we have already explained why we believe passwords are relevant given Authenticom's conduct. The parties are clearly at impasse and we reserve our right to address the issue with the Court, as appropriate.

*CDK Request No. 1:* As Authenticom did with respect to several of CDK's responses to Authenticom's RFPs, please confirm that Authenticom's use of quotation marks around the word "ability" is not intended, and will not be used, to limit Authenticom's response to the Request to documents containing that word.

Mayer Brown LLP

Michael N. Nemelka
January 29, 2018
Page 5

*CDK Request No. 2:* We are not seeking to have Authenticom create documents. We asked for "[d]ocuments sufficient to show the date, time, content, and duration of all queries that You have performed on any CDK DMS." Authenticom offered to provide a "sample" of the queries run and a "representative schedule" of when those queries are run. We agreed to accept a "sample" if such sample would show (i) the different types of queries run at the five largest CDK dealers accessed by Authenticom, measured by number, frequency, and duration of queries; and (ii) the query "schedule" at each of those dealers during the months of January, May, September, and December during each year from 2013 through 2017. If the information does not exist, that's one thing, but Authenticom has not made a representation to that effect, and its offer to provide a "sample" suggests that a much broader dataset is in fact available. If necessary, we ask that this topic be included in today's meet-and-confer.

*CDK Request No. 8:* Here again, we are not asking Authenticom to create documents. As Authenticom has agreed to CDK's proposal to the extent documents already exist, the parties are in agreement.

*CDK Request No. 21:* The parties are in agreement.

*CDK Request Nos. 32 and 33:* Here again, we are not asking Authenticom to create documents. So long as Authenticom will produce documents "sufficient to show," to the extent they exist— i.e., it will not claim that responsive documents do not exist merely because all the requested information does not reside in a single document—then that should be sufficient for present purposes.

*CDK Request No. 37:* The parties are in agreement.

*CDK Request No. 50:* The parties are in agreement.

*CDK Request No. 51:* Apparently another meet and confer is needed on this Request, or we have missed some relevant correspondence. Authenticom's written response to this Request is that "Authenticom is willing to meet and confer regarding this Request." Thus, there are no "previously asserted objections and responses in which it agreed to produce documents in response to this Request" as referenced in your letter.

*CDK Request No. 53:* The parties are in agreement.

*CDK Request Nos. 55, 56 and 57:* The parties are in agreement.

*CDK Request No. 62:* The parties are in agreement.

*CDK Request No. 63:* The parties are in agreement.

*CDK Request No. 68:* The parties apparently are not adequately communicating their positions on this Request as we do not believe that your response adequately addresses our concern. We would ask that we add this Request to our list for this afternoon.

Mayer Brown LLP

Michael N. Nemelka
January 29, 2018
Page 6

*Authenticom's January 27 Email:*

With respect to the balance of your January 27 email (the first part of which is addressed at the opening of this letter), I will simply respond that your complaints are, once again, not well taken. CDK already has produced numerous documents from non-custodial sources that are responsive to Authenticom's discovery requests, including, for example, sample 3PA agreements and corporate organizational documents (not unlike the handful of non-custodial documents that Authenticom has produced). Unsurprisingly, our focus during December and most of January was the review of custodian documents in advance of then-scheduled depositions (as you know, we produced over 55,000 custodial documents of Beth Ayotte) and the review of tens of thousands documents from our December 15 production for possible re-designation under the Protective Order, at Authenticom's request.

Discovery of non-custodial documents is not being ignored; as stated in my January 22 Letter we, like Reynolds, have every intention of making progress in discovery during the pendency of the partial stay, to the extent not inconsistent with the Court's January 12, 2018 Order. Had we not been distracted by Authenticom's blanket confidentiality challenge to every single email and every single document with a deponent's name on it in our initial 86,000+ document production, perhaps we would have had more resources to address other forms of discovery. Unfortunately, that was not the case and, regardless, our document production efforts are ongoing. We are working with all due diligence to comply with our discovery obligations and given what we have produced thus far, any suggestion that we are shirking those responsibilities would be patently false. In any event, under any measure CDK's document production to date is well ahead of Authenticom's. Hopefully given that we only have a handful of Requests left to resolve (*see* above), we can expect more progress from Authenticom in the near future.

* * * * * *

As always, any offer to produce additional categories of documents are subject to and without waiver of CDK's general and specific objections set forth in its initial written responses to Authenticom's document requests, and are contingent on resolving the parties' disputes as to the identified Requests.

We look forward to hopefully reaching resolution of most, if not all, of the parties' outstanding issues, in the short term so that once we hear from the MDL panel we can work to coordinate discovery with the other affected parties and move all of the cases forward.

Sincerely,

Britt M. Miller

Mayer Brown LLP

Michael N. Nemelka
January 29, 2018
Page 7

cc:     Brian Ross
        Matt Provance
        Mark Ryan