# Exhibit 6

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

April 27, 2018

**VIA E-MAIL**

Ross M. MacDonald
Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, TX 77002

   Re: *In re: Dealer Management Systems Antitrust Litigation*, MDL 2817, Case No. 18-cv-864 (N.D. Ill.)

Dear Ross:

  I write in response to your letter from yesterday. In that letter, you requested yet further discovery on an expedited basis (i.e., by today at 5:00 p.m. CT), even though Authenticom has already produced a large number of documents containing full information regarding its current financial condition, submitted to a five-hour Rule 30(b)(6) deposition, provided expedited responses to interrogatories and other written discovery, and has otherwise answered and been responsive to Defendants' requests. We do not think a one-day turnaround for yet further (largely irrelevant) discovery is reasonable. Evenso, we have endeavored to respond to each of your requests, which we do below in turn.

  **I. Financial Forecasts and Projections.**

  Authenticom has already produced its most up-to-date financial forecasts and projections. Authenticom has no additional forecasts or projections that post-date Exhibits 10 and 11 from the April 23, 2018 Rule 30(b)(6) deposition of Authenticom.

  **II. Communications with BMO Harris**

  You have requested drafts of the proposed Second Amendment to Forbearance Agreement, and corresponding communications with BMO Harris. But Authenticom has already produced the most recent draft of the proposed forbearance agreement (*see* Exhibit 18), and Defendants took full opportunity to ask about that document at the 30(b)(6) deposition; if and when that agreement is executed, Authenticom will promptly produce the final, signed version to

Page 2

Defendants. Authenticom has also already produced the most recent financial information – including financial projections and forecasts – that Authenticom provided to the Bank. You have not explained why prior drafts the forbearance agreement – when you already have the most recent draft – and communications between Authenticom and the Bank would be relevant to Authenticom's current financial condition and need for a prompt trial, which is the subject of expedited discovery. Please let us know if you would like to meet and confer regarding this issue.

### III.  Tax Returns

Authenticom objects to your request for Mr. Cottrell's tax returns. Mr. Cottrell's tax returns are irrelevant to Authenticom's current financial condition and need for a prompt trial and are not subject to discovery in this case in any event.

Mr. Cottrell's personal tax returns have no bearing on Authenticom's ability to survive to trial. That is presumably why Brian Ross's April 10 letter to Authenticom did not seek any tax-related documents among the laundry list of requests you cited as being relevant to the expedited discovery. Furthermore, the Seventh Circuit has noted the "public policy" against the disclosure of tax returns, except in cases where the litigant himself puts the "amount of his income at issue." *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992). Mr. Cottrell has not put the amount of his income at issue in this case, and your letter makes no argument to the contrary. *See also Federal Sav. & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972) (noting the "valid public policy against disclosure of income tax returns"); *Cohn v. Taco Bell Corp.*, 1994 WL 383975, at *3 (N.D. Ill. 1994) (denying motion to compel tax returns).

Moreover, as a justification for the tax returns, your letter references (1) that all of the distributions Mr. Cottrell has taken from the company since 2014 went to pay taxes; and (2) that Authenticom is structured as a so-called S Corporation. Indeed, Mr. Cottrell at the 30(b)(6) deposition already explained that his salary from Authenticom is $300,000 per year, and that the only distributions he has taken since the inception of the loan with BMO Harris are for Authenticom's tax payments as an S-Corp. You have not explained how tax returns would provide any further relevant information.

### IV.  DMS Connections

Contrary to your suggestion, Authenticom has already produced the documents it keeps in the ordinary course of business regarding Authenticom's DMS connections. Authenticom does not track, in the ordinary course of business, DealerVault's DMS connections by DMS type. The Federal Rules impose no obligation on Authenticom to create such a document in order to produce it to Defendants in this litigation. *See*, *e.g.*, *Shinedling v. Sunbeam Prods. Inc.*, 2013 WL 12171959, at *7 (C.D. Cal. 2013) ("Rule 34 does not require the producing party to do more than produce documents as they are kept in the ordinary course of business. Indeed, a party responding to document requests has no obligation to create documents for the requesting

Page 3

party."); *accord Mohr v. Security Credit Servs., LLC*, 2016 WL 6638198, at *3 (N.D.N.Y. 2016) (citing cases); *A.R. Arena Prods., Inc. v. Grayling Indus., Inc.*, 2012 WL 2953214, at *10 (N.D. Ohio 2012) (citing cases).

Your letter references a chart of DMS connections that Authenticom introduced at the preliminary injunction hearing and cited on appeal at the Seventh Circuit. That chart was created at the direction of counsel, and is not updated in the ordinary course of business.

As a further note, we strongly disagree with your characterization that Mr. Cottrell was "unprepared" to testify as Authenticom's corporate representative. Mr. Cottrell sat for a five-hour deposition and provided knowledgeable corporate testimony on a wide range of topics – including DMS connections – all on very short notice, including extensive questioning on matters that were far beyond the scope of any of the 30(b)(6) deposition topics. Authenticom more than fulfilled its duties under Rule 30(b)(6). *See Seaga Mfg., Inc. v. Intermatic Mfg. Ltd.*, 2013 WL 3672964, at *2 (N.D. Ill. 2013) (noting "Rule 30(b)(6) is not designed to be a memory contest").

### V.     Authenticom's Legal Fees

Authenticom has produced documents showing the amount it has paid in legal fees for 2016 and 2017. At the 30(b)(6) deposition, Mr. Cottrell explained that those legal fees included fees for bankruptcy attorneys and others. Your letter makes no attempt to explain why a further itemized breakdown of those legal fees would be relevant to Authenticom's ability to survive to trial. To the extent you can articulate a basis for relevance, we are willing to meet and confer regarding this issue.

Sincerely,

*s/ Derek T. Ho*

Derek T. Ho

cc:     Britt M. Miller
        Peggy J. Wedgworth