# Exhibit 7

Nos. 17-2540, 17-2541

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

AUTHENTICOM, INC.,
*Plaintiff-Appellee*,

v.

CDK GLOBAL, LLC, and
THE REYNOLDS AND REYNOLDS COMPANY,
*Defendants-Appellants.*

Appeal From The United States District Court
For The Western District Of Wisconsin, Case No. 17-cv-0318
The Honorable Judge James D. Peterson

## DECLARATION OF STEVE COTTRELL

I, Steve Cottrell, declare as follows:

1.  I am the founder, owner, and Chief Executive Officer of Authenticom, Inc. ("Authenticom"), based in La Crosse, Wisconsin.

2.  The District Court's July 14, 2017 Order granting Authenticom's motion for a preliminary injunction was critical for my business. As the District Court found, Defendants' blocking had put Authenticom at the brink of insolvency. Its customers were being forced to switch to Defendants' data integration services. The company's revenues were declining. And Authenticom's previously sterling reputation in the market was being severely tarnished by Defendants' blocking tactics. Even the mere threat of blocking by Defendants showed doubts about the

reliability of Authenticom's ability to provide reliable, uninterrupted service, which is critical to Authenticom's customers.

3. As the District Court concluded, the preliminary injunction gives Authenticom a lifeline to arrest the company's precipitous decline and preserve its chance to vindicate its claims on the merits. If that limited lifeline is removed – even for a limited time – Authenticom's ability to survive will be placed in grave jeopardy.

4. Authenticom's experience since the July 14 Order provides a window into what will happen to Authenticom if the preliminary injunction does not go into effect promptly. Even since the District Court entered the preliminary injunction, CDK and Reynolds have continued to block Authenticom and disable the login credentials that dealers provide to us. CDK alone has blocked well over 400 dealers since the suit was filed on May 1, 2017 – with 56 of those dealers being blocked since the July 14 Order. In many cases, vendors and dealers have told us that the blocking activity has intensified in recent weeks.

5. These continued blocking efforts are seriously harming Authenticom's goodwill and reputation among its customers and in the market, particularly because many of our customers and business partners are puzzled as to why the blocking has continued even after the District Court granted Authenticom's motion.

6. Since the District Court granted our motion for a preliminary injunction, we have received overwhelming *words* of support and congratulations. However, dealers and vendors have clearly stated a reluctance to move their

business back to us until the preliminary injunction actually goes into effect. A stay of the preliminary injunction would predictably cause those customers to delay their decision to resume using Authenticom's services.

7. The consequences of that delay would be devastating. As a direct result of Defendants' ongoing blocking, since the July 14 Order, Authenticom's cash flows have continued to decline. Our current cash receipts are no longer able to cover our operating expenses, bank debt payments, capital expenditures, and shareholder tax obligations. We have exhausted our remaining excess cash. In short, we need immediate relief from Defendants' blocking to keep the business running.

8. If that relief is delayed, Authenticom is at serious risk of foreclosure by its lender, BMO Harris. The limited 90-day forbearance period granted by BMO Harris – pending the outcome of Authenticom's preliminary injunction motion – expired on July 15, 2017. Since the Court issued its preliminary injunction decision on July 14, BMO Harris has not foreclosed. But we also have reached no agreement with the bank about the path forward.

9. Rather, BMO Harris has requested a forward-looking budget forecast (in light of the preliminary injunction) before deciding whether to extend the forbearance period. The bank wants to know when Authenticom will stop losing revenue and start regaining customers it has lost due to the blocking tactics of CDK and Reynolds. But Authenticom cannot provide that forecast without knowing when the preliminary injunction will take effect and how CDK and Reynolds will

3

react to its implementation. Moreover, as explained above, if implementation of the preliminary injunction is delayed, those forecasts – which must, of course, be accurate to the best of our knowledge – will likely be insufficient to persuade the Bank to continue to forbear, because we will be forced to take into account the devastating financial impact of continued loss of customers and revenue, and harm to Authenticom's brand.

10. In my opinion, based on the almost daily conversations I have had with bank officers, a delay in the implementation of the injunction poses a serious risk that BMO Harris will foreclose on Authenticom's loan rather than continuing to forbear in the face of such serious uncertainty about Authenticom's future prospects.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in La Crosse, Wisconsin, this 4th day of August, 2017.

By: _____