```
 1                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3    IN RE:                     ) Docket No. 18 C 864
                                 )
 4      DEALER MANAGEMENT SYSTEMS )
        ANTITRUST LITIGATION.     )
 5                                ) Chicago, Illinois
                                 ) April 25, 2018
 6                                ) 11:00 o'clock a.m.

 7          TRANSCRIPT OF PROCEEDINGS - STATUS & MOTION
                 BEFORE THE HONORABLE AMY J. ST. EVE
 8
      APPEARANCES:
 9
      For Plaintiffs:          KELLOGG, HANSEN, TODD, FIGEL &
10                                FREDERICK, PLLC
                               BY:  MR. DEREK T. HO
11                                  MR. MICHAEL N. NEMELKA
                               1615 M Street, N.W., Suite 400
12                             Washington, D.C.  20036

13                             MR. SAMUEL ISSACHAROFF
                               40 Washington Square South
14                             New York, New York  10012

15                             MILBERG, LLP
                               BY:  MS. PEGGY J. WEDGWORTH
16                                  MS. ELIZABETH McKENNA
                               1 Penn Plaza, Suite 4800
17                             New York, New York  10119

18                             CLIFFORD LAW OFFICES, P.C.
                               BY:  MR. ROBERT A. CLIFFORD
19                                  MS. SHANNON M. McNULTY
                               120 North LaSalle Street, 31st Fl.
20                             Chicago, Illinois  60602

21    For CDK and Computerized  MAYER BROWN, LLP
      Vehicle Registration:    BY:  MS. BRITT M. MILLER
22                             71 South Wacker Drive
                               Chicago, Illinois  60606
23
      For The Reynolds and     GIBBS & BRUNS, LLP
24    Reynolds Company:        BY:  MS. AUNDREA K. GULLEY
                                    MR. BRIAN T. ROSS
25                             1100 Louisiana, Suite 5300
                               Houston, Texas  77002
```

```
 1

 2                              SHEPPARD, MULLIN, RICHTER
                                  & HAMPTON, LLP
                                BY:  MR. LEO CASERIA
 3                              333 South Hope Street, 43rd Floor
                                Los Angeles, California  90071
 4
     Also Present:              MR. JONATHAN EMMANUAL,
 5                                Reynolds and Reynolds

 6   Court Reporter:            MR. JOSEPH RICKHOFF
                                Official Court Reporter
 7                              219 S. Dearborn St., Suite 1232
                                Chicago, Illinois  60604
 8                              (312) 435-5562

 9              *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

10                       PROCEEDINGS RECORDED BY
                         MECHANICAL STENOGRAPHY
11                  TRANSCRIPT PRODUCED BY COMPUTER

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE CLERK:  18 C 864, In Re: Dealer Management
 2    Systems Antitrust Litigation.
 3              THE COURT:  Good morning.
 4              MS. GULLEY:  Good morning, your Honor.
 5              MS. MILLER:  Good morning, your Honor.
 6              MR. HO:  Good morning, your Honor.
 7              MS. WEDGWORTH:  Good morning, your Honor.
 8              THE COURT:  You are here for status.  I have ruled on
 9    lead counsel issues.  We are working on the motions to
10    dismiss.  I have the motion to strike that came in --
11    defendants' motion to strike.
12              I need your names, please.  Joe needs your names.  I
13    know you, but go ahead.
14              MS. WEDGWORTH:  Good morning, your Honor, Peggy
15    Wedgworth from Milberg Tadler Phillips Grossman on behalf of
16    the class plaintiffs auto dealerships.  With me, I have
17    Elizabeth McKenna also from our firm, as well.
18              THE COURT:  Good morning.
19              MR. HO:  Good morning, your Honor, Derek Ho from
20    Kellogg, Hansen, and with me is Professor Issacharoff, Mike
21    Nemelka --
22              MR. CLIFFORD:  Good morning, your Honor, Robert
23    Clifford --
24              MR. HO:  I'll let Mr. Clifford introduce himself.
25              MR. CLIFFORD:  -- and Shannon McNulty from Clifford
```

1    Law.

2              THE COURT:  Good morning.

3              MS. McNULTY:  Good morning, your Honor.

4              MS. MILLER:  Britt Miller, Mayer Brown, on behalf of

5    CDK Global.  Just me.

6              THE COURT:  All on your own today.

7              MS. MILLER:  All on my own today.

8              MS. GULLEY:  Good morning, your Honor, Aundrea Gulley

9    on behalf of The Reynolds and Reynolds Company, and with me is

10   Brian Ross and Leo Caseria, as well as Jonathan Emmanual from

11   Reynolds and Reynolds.

12             THE COURT:  Good morning.

13             So, I have the motion to strike, I was saying before.

14             Do you want to respond to that at all?

15             MR. HO:  Yes, your Honor.

16             Our understanding of the purpose of the supplemental

17   submissions was to update our respective filings to account

18   for the differences between Ninth Circuit law and Seventh

19   Circuit law.  And one of the material differences between the

20   law of this Circuit and that of the Ninth Circuit is that in

21   the Geinosky case, this Circuit said that it was appropriate

22   for a party opposing a motion to dismiss to rely on materials

23   outside the four corners of the complaint in order to

24   demonstrate that there was evidence that would support the

25   allegations in the complaint.

1          And, so, we thought it was appropriate to both

2   identify that legal difference for the Court, but also to

3   carry through on that difference by doing exactly what

4   Geinosky authorized, which is to identify illustrative

5   documents that we think bolster our opposition motion.

6          My understanding is that the main argument that the

7   defendants have made is that they ought to have an opportunity

8   to respond.  And, frankly, if they had asked for that, we

9   would have consented.  And we don't oppose an opportunity to

10  respond if they think that they have something to say about

11  the documents that we've put in front of the Court.

12          THE COURT:  I did not see that as the main argument,

13  but --

14          MS. MILLER:  And, your Honor, it's not the main

15  argument.  It's something we said if your Honor was not

16  inclined to grant the motion to strike, then we would welcome

17  the opportunity.  But at the last hearing, your Honor made

18  clear that you didn't want replies and that the only --

19          THE COURT:  Yes.

20          MS. MILLER:  -- thing you asked for was us to

21  essentially do your -- help you with the research and provide

22  you the Seventh Circuit law; and, that's what defendants did

23  when they filed their pieces on the 13th.

24          What we got in response -- the case that he cites

25  says you can do that when you otherwise would have had the

1   documents available to submit in your opposition.  They

2   already submitted their opposition last year.  All your Honor

3   asked them to do was update the case law and not add new

4   facts.  The transcript is clear.  You said the facts were in

5   there; you didn't need any more.  And, so, we stuck to that by

6   providing your Honor with the Seventh Circuit, and we think

7   they went beyond that.

8          And, so, they essentially tried to get the last word

9   on the motion to dismiss and introduce material that they

10  didn't have available to them when they submitted their

11  original response to the motion to dismiss back in December.

12  Because all of the material they submitted had only been

13  produced in the Authenticom case; this MDL didn't exist; and,

14  notwithstanding the fact that Mr. Ho is counsel for both of

15  the parties, was prohibited by the protective order from using

16  those documents in the MVSC case.

17         So, that's why we moved -- that's the primary

18  argument, and that's why we moved to strike it.

19         If your Honor is inclined to let it stand, then of

20  course, if your Honor would like, we would be happy to file a

21  substantive response.

22         THE COURT:  Okay.

23         I am going to keep this under advisement and take it

24  up in the context of the motion.  And if I feel like I need a

25  response from you -- I certainly will not let you be

1    prejudiced if I let these stand.  So, I will let you know,

2    though.

3              MS. MILLER:  Appreciate it.

4              So, I assume, then, the motion date for next week is

5    off?

6              THE COURT:  You do not have to come back for this

7    motion next week.

8              MS. MILLER:  Okay.

9              THE COURT:  A couple things about motions.

10             In my original scheduling order, I asked that you

11   file all motions in both the MDL file, as well as in the

12   underlying case number that was originally filed here.  I am

13   going to modify that.  I only want the documents filed in the

14   MDL number, which is the 18 C 864, I think.  So, you do not

15   have to file them in two places.

16             You can put the other case number on there if you

17   want, if you want that for your tracking purposes; but, only

18   file them in the MDL.  That will make it more simple.  So, I

19   am modifying my order from before.

20             Also, when you drop off courtesy copies of things, if

21   you have an under-seal filing as well as a redacted public

22   version, I only need the under-seal filing.  I do not need the

23   redacted version.  So, please do not drop those off.

24             And in terms of status, I had directed you the last

25   time you were here to have some discussions about going

1    forward on discovery and how we walk the line of moving the

2    Wisconsin case along, as the Seventh Circuit directed, but

3    being fair to the large MDL.  So, I am hoping you have had

4    those discussions and have some suggested resolutions for that

5    this morning.

6              MS. MILLER:  Your Honor --

7              MR. HO:  Your Honor --

8              MS. MILLER:  -- the parties have met and conferred.

9    We've continued to discuss.  We've continued to exchange

10   correspondence.

11             On April 20th, the plaintiffs responded to

12   defendants' April 5th letter, that laid out our proposal.  You

13   will recall -- I think I mentioned at the last hearing -- that

14   our proposal took the schedule that had been proposed in the

15   joint status report, that had been agreed to by the class

16   plaintiffs -- I'm sorry, not all of the class plaintiffs,

17   majority of the class plaintiffs -- and all of the defendants

18   and took about eight months off of that schedule in an attempt

19   to try to accommodate the need to -- the purported need to --

20   accelerate Authenticom, while still trying to avoid

21   duplicative discovery of defendants and comply with the MDL

22   process.

23             The plaintiffs responded to that and, unfortunately,

24   although we made some progress on some one-off issues, there

25   remains a fundamental disagreement as to how the schedule

1   should be structured.  Their schedule that they proposed first

2   on April 5th, which we then responded to and, then, which they

3   responded again on April 20th, was -- had the same basic

4   structure; and, that was:  Accelerated discovery up front; a

5   trial for Authenticom only, in April of 2019; and, then, class

6   proceedings and all of the trials of the individual -- other

7   individual -- cases to occur after the Authenticom trial.

8   Otherwise, the schedule largely remained the same from the one

9   they had proposed on April 5th.

10          For reasons that we're happy to go into -- but we

11  want to be mindful of some confidentiality concerns of Mr. Ho

12  and his client -- we simply don't believe that the bifurcation

13  and the exceedingly expedited trial that Authenticom has asked

14  for is warranted.  As your Honor directed in the last status

15  conference, we have conducted accelerated discovery of

16  Authenticom's --

17          THE COURT:  Of the financials.

18          MS. MILLER:  -- financial condition.

19          THE COURT:  Okay.

20          MS. MILLER:  We got some limited paper discovery, and

21  then we also took a five-hour limited deposition.  We were

22  limited to five hours by Authenticom, but we took a five-hour

23  deposition on Monday, a 30(b)(6).  We have a copy of the

24  transcript if your Honor would like it.  We're happy to hand

25  it up.

1          We took that deposition.  We still have some

2    additional discovery to take.  We're waiting on a couple of

3    additional -- perhaps more than a couple, but some additional

4    -- written discovery from Authenticom.

5          And, then, we are scheduled to take the deposition of

6    the bank, that did not appear at the PI hearing.  We tried to

7    get that deposition in before today, but the bank, being a

8    third party, was not as impressed by the need to get it done

9    before today.  So, we're scheduled to take that deposition

10   next week --

11          THE COURT:  Okay.

12          MS. MILLER:  -- here in Chicago.  So, we are going to

13   proceed with that.

14          Based on the testimony and documents we have thus far

15   -- and, again, there's still some information outstanding, and

16   we learned of some additional documents we'd like to see as

17   the result of Monday's deposition.  But based on what we have

18   learned thus far, we don't think there is any basis for any

19   sort of expedited trial for Authenticom, and that Authenticom

20   will remain viable through any of the proposed schedules that

21   have been put before your Honor.

22          Based on that, we still think -- we think, based on

23   what we've learned, that the original schedule that we put

24   forward in the joint defense -- or, I'm sorry, the joint

25   status report, rather -- is infinitely reasonable, but we

1   appreciate that your Honor has asked us to do something other

2   than that.  And, so, we think that the compromise that we

3   offered in our April 5th letter -- and, again, I'm happy to

4   hand up a set of the parties' proposals so that you have them

5   and can get a sense of them -- was reasonable.

6           Again, it took eight months off and had all of the

7   substantive work leading up to summary judgment happening

8   by -- within next year.  It didn't have discovery going into

9   2020, like the original schedule did.  And it did bifurcate

10  some truly unique issues.  And by that, I mean class

11  certification briefing and class certification expert work.

12          We discussed with the other side whether or not there

13  were other really discrete issues where discovery wouldn't

14  overlap that we might be able to bifurcate, and they've taken

15  the position that they don't think that bifurcation of issues

16  is appropriate, which is fine.  But those are the two we

17  identified that could be easily broken off, we thought, and

18  still accomplish the purposes that your Honor asked.

19          So, we think that our proposal that we made on April

20  5th that does take that eight months off tries to balance both

21  of the concerns that your Honor has raised, the purported

22  need -- which, again, we don't think exists, but the statement

23  that the Seventh Circuit made -- as well as the need for

24  non-duplicative and non-overly burdensome discovery on

25  defendants.

```
 1              And we'll stick with that.  We made the offer.  We'd
 2   have to adjust some of the dates because they've passed.  We
 3   made the proposal on April 5th.  So, we'd certainly have to
 4   adjust it to match current reality.  But we're prepared to
 5   stick with that.  Even though it's aggressive, we're prepared
 6   to do it.
 7              Mr. Ho --
 8              THE COURT:  May I see that proposal, please.
 9              MS. MILLER:  Certainly.
10              THE COURT:  I do not think I have -- I know we talked
11   about it last time, but I do not think --
12              MS. MILLER:  Yeah.
13              THE COURT:  -- I have seen that.
14              MS. MILLER:  I have a set of all the parties'
15   letters, so that you don't just see ours.
16              THE COURT:  Please.
17        (Documents tendered to the Court and counsel.)
18              THE COURT:  I am not going to be able to read this
19   this morning while we are here.  This is a little more
20   voluminous.
21              What discovery, if any, has been done in the MDL to
22   this point?
23              I know up in the Wisconsin case there was quite a
24   bit.  More still needed to be done.
25              Have you issued any kind of written yet in the MDL?
```

1          MS. MILLER:  No.  Per your Honor's instructions,

2   Authenticom and the defendants exchanged interrogatory

3   requests and some RFAs.  So, we did that pursuant to your

4   Honor's instruction.  But both parties' schedules contemplated

5   a date by which additional discovery would be served.

6          We have -- defendants have -- however, turned over

7   all of their Authenticom discovery.  So, we've turned -- I've

8   turned over 3 million -- almost 3 million -- pages of material

9   to Ms. Wedgworth, and we deemed that -- those same productions

10  -- made as of April 20th to counsel for MVSC, AutoLoop and

11  Cox.  So, the Kellogg, Hansen firm already had it, but they've

12  now been deemed produced in those matters.  So, they can use

13  the documents in those matters.

14         But we haven't independently issued or received any

15  discovery in the MDL per se because we're trying to work out a

16  process by which that's supposed to work.

17         MS. GULLEY:  And, also, your Honor, as I mentioned

18  before, we don't have the consolidated class complaint yet.

19  And Reynolds is -- depending on what the claims are and who

20  brings them and if they're brought by Reynolds dealers, we'd

21  have a motion to compel arbitration, and so forth.  So, until

22  we kind of know who is suing who for what, class discovery is

23  fairly difficult.

24         MS. MILLER:  Yeah.

25         MS. GULLEY:  Maybe impossible.

1          THE COURT:  Class discovery?

2          MS. GULLEY:  Class discovery, correct.

3          THE COURT:  But not merits separate from --

4          MS. MILLER:  Well, no, the question of -- we don't

5    know -- until we see their class complaint, we don't know if

6    they're dropping some claims, keeping some claims, if there

7    are -- you know, which parties are going to be in, which are

8    not.  So, if we have -- you know, again, if they're CDK

9    dealers versus Reynolds dealers.

10          So, we need to know what we're going to be seeing

11   before we can issue intelligent discovery.

12          MS. GULLEY:  But with respect to merits discovery,

13   your Honor, as Ms. Miller mentioned a moment ago,

14   Authenticom's counsel has stated that they would not agree to

15   segregate out issues.  One thing that's important to

16   understand about that is it's because their discovery is

17   extremely sweeping as to the issues, including some of the

18   issues that the class plaintiffs have said are unique to them,

19   such as with respect to pass-through issues and other issues.

20          So, in terms of merits discovery, it is truly

21   difficult for me to imagine that there are not already

22   requests pending by Authenticom as to the merits of the class

23   complaint.

24          MS. MILLER:  And I'm not sure how many more documents

25   I can produce.  I'm sure I'll find some, but --

1        THE COURT:  Mr. Ho, Ms. Wedgworth?

2        MR. HO:  Sure.  Let me start, if I could, with the

3    points of agreement.

4        We agree with the defendants that there have been

5    constructive discussions about schedule.  We think that both

6    sides have made good-faith efforts to try to compromise.  But

7    we also agree that the parties are at an impasse.

8        And our first point is that, as Ms. Miller indicated,

9    the parties' proposed schedules have dates that are imminent.

10   And, so, we think that it's important for there to be a prompt

11   resolution of which schedule the Court is going to adopt.

12       With respect to the --

13       THE COURT:  I think you know me well enough by now,

14   Mr. Ho.

15       MR. HO:  I do.  Thank you.

16       THE COURT:  You have been in here --

17       MR. HO:  Probably --

18       THE COURT:  -- on another case for --

19       MR. HO:  -- did not need to be said, but --

20       THE COURT:  -- over a year now.  So, I get it.

21       MR. HO:  With respect to the sort of bid and the ask

22   on the schedule, I will try to fairly characterize the

23   defendants' schedule; and, I think it's consistent with what

24   you'll see in the letter.

25       What it is, is, in essence, the kind of standard

1    operating procedure in litigation, which is:  Fact discovery;

2    then followed by expert disclosures; then followed by Daubert

3    motions; then followed by dispositive motions; and, then, a

4    trial to be determined.

5           And I will grant them that they have come off of the

6    original trial date of 2020 and it's now into 2019.

7           The other aspect of their proposal is that they are

8    insisting on a kind of lockstep approach where all the cases

9    have to go through that sequence of events at the very same

10   time.  And we think that there are creative ways to get

11   Authenticom to a quicker trial by adopting a couple of

12   measures that are really, I think, where the parties are, at a

13   high level, in disagreement.

14          One is we think that there can and should be what I

15   think of as a discovery off ramp for Authenticom and the

16   individual cases.  So, what our schedule proposes is that

17   there be a fact cutoff -- fact discovery cutoff -- January 31

18   of 2019.

19          THE COURT:  And which one -- where can I find your

20   proposed schedule?

21          MR. HO:  This is our April 20th letter, which --

22          MS. MILLER:  Last one in the stack, your Honor.

23          THE COURT:  Thank you.

24          MR. HO:  I think it is the last one in the stack.

25          THE COURT:  Wait.  Okay, I have it.

1          MR. HO:  Sure.

2          So, what we propose -- and this is reflected on Page

3    3 of our letter, Bullet Point No. 13 -- is that there be a

4    close of fact discovery for the Authenticom and individual

5    actions on January 30th of 2019, but then the class cases

6    should be able to do non-duplicative fact discovery for an

7    additional period on issues that are particular to the class

8    cases while Authenticom and the other cases start to go

9    through the other processes needed to go -- to get to trial.

10         THE COURT:  Will you be able to make it that clean,

11   though, of non-duplicative discovery?

12         MR. HO:  I think this is where the parties have a

13   difference of opinion as to what coordination really ought to

14   entail.

15         So, when Ms. Miller and Ms. Gulley are talking about

16   us being unwilling to bifurcate issues, what they mean is that

17   we don't think it's sensible to say that a particular legal

18   issue -- say, liability or the amount of pass-through from

19   direct purchasers to indirect purchasers -- should be put in

20   one camp or the other, because it may well be the case that a

21   particular fact witness has knowledge about all manner of

22   different issues and, so, would have relevant testimony both

23   in the first phase of the bifurcated case and the second

24   phase.

25         Instead, what we thought made more sense was to have

1      a system where we make sure that there is non-duplication of

2      depositions and deponents such that if a defense witness is

3      deposed before January 31 of 2019 in what I'm calling the sort

4      of Phase 1 of fact discovery, that same deponent -- that

5      deponent could be deposed on all issues before January 31, but

6      then would not be re-deposed in -- after the Authenticom off

7      ramp in this subsequent period of fact discovery.

8              So, we understood that to achieve what the defendants

9      had told us was one of their principal concerns, which is

10     avoiding the prospect of having their executives deposed more

11     than once.  And we thought that that was more sensible than a

12     system of trying to bifurcate issues and putting issues in one

13     part of the schedule as opposed to another.

14             THE COURT:  My concern with that is in theory, that

15     sounds like a workable solution; but, I do not have a good

16     enough sense of who the players are if you are able to

17     segregate them like that.

18             MS. MILLER:  And that's --

19             THE COURT:  I do not know if there is a key -- one

20     key person who would cover all of these areas who works for

21     the defendant that would have to be deposed in both buckets.

22             MS. MILLER:  And that's --

23             MR. HO:  Well, we're committing that even if there

24     were such a person, that person would not be deposed in both

25     buckets.  In other words, if there is a key executive and

1  we -- and the parties agree that that person should be deposed

2  up front early on, that person would not be re-deposed in --

3  after January 31 of 2019.

4  　　　THE COURT:  Would you be deposing that person about

5  everything, then, or just about what you have conducted

6  discovery on up until then?

7  　　　MR. HO:  That would be a regular 30(b)(1) deposition

8  where all topics would be on the table and, you know --

9  　　　THE COURT:  Will discovery have been conducted as to

10 all topics, though, where that person could be prepared?

11 　　　I think that is the issue.

12 　　　MS. MILLER:  And that's part of the problem, your

13 Honor.  The offer, although appreciated and addresses one part

14 of our concern, is somewhat elusory; in that, plaintiffs have

15 specifically said, "Yeah, we're not going to depose the exact

16 same person," but they are not giving up their right to seek

17 additional depositions of other people on the exact same

18 issues.

19 　　　In fact, it was explicitly told to us that -- we have

20 17 -- CDK has 17 -- document custodians for purposes of

21 Authenticom.  Let's just say for argument's sake that

22 Authenticom were to get 17 CDK witnesses -- we would oppose

23 that, but let's just say for argument that Authenticom got to

24 take all 17 -- and, under their proposal, they wouldn't have

25 to -- they would not get to depose those 17 witnesses again.

1    But they could take that person's second in command.  They

2    could take that person's assistant.  They could take that --

3    on the same issues that that person may have already testified

4    to, to the extent they bear on class issues or the part that

5    is -- or the, you know, part that is going to be bifurcated

6    out, which, again, the MDL purpose is not just to ensure that

7    we don't have our executives deposed twice, but also that the

8    burden on us is not essentially possibly doubled.

9           In each of the proposals we've received, including

10   the most recent one where they said, "We won't depose people

11   twice and we won't -- you know, we won't ask for additional

12   document requests or interrogatories after January," all of

13   the, you know, rights that normally everyone reserves and we

14   would expect to serve -- to come to your Honor and say, "We

15   really need this person again because this issue wasn't

16   covered," or, "This document got produced later and we really

17   need this person," and any of the other reasons that people

18   inevitably come in and seek to have another deposition or

19   have -- you know, we could end up in a situation where we've

20   got, you know, 20, 30, 40, 50 people being deposed when it

21   should have been less than 17, all on the same issues.

22          And, so -- and, again, the schedules as proposed not

23   only contemplate, leave open the possibility of additional

24   depositions; but, again, defendants will be required to do

25   summary judgment twice and Daubert twice and all of -- and

1    experts twice.

2         And the class plaintiffs will be getting a free peek

3    at what we're going to be doing and what our strategies are

4    and everything else, because we will have had to do it just in

5    Authenticom and the individual cases and, then, yet again.

6         That's really -- as your Honor, I'm sure, is aware,

7    expert work and those types of briefing is really expensive.

8    And having to submit multiple reports and multiple briefs on

9    very similar issues is troubling to us, which is why we really

10   tried to propose something that accomplished both goals and

11   accelerated up a schedule to quite an aggressive schedule.

12        We just have a fundamental disagreement as between

13   the parties as to what constitutes non-duplicative.

14        MS. WEDGWORTH:  Your Honor, if I can respond on

15   behalf of class plaintiffs on the dealerships --

16        THE COURT:  Sure.

17        MS. WEDGWORTH:  -- since we would be the ones

18   conducting the discovery after Authenticom goes on the off

19   ramp for trial.

20        In that case, the scenario Ms. Miller just gave, also

21   let's consider a flip side of that, which would be let's

22   assume for the moment Authenticom, in deciding how they want

23   to try the case, only want to take five depositions of her

24   client.  Why should we be prejudiced to only the fact that

25   five were taken during January -- up till January 31?  We

1   could then take additional depositions after that,

2   non-duplicative.

3           We're, again, trying to ensure that the executives

4   who have already appeared don't have to reappear.  But there

5   are certainly scenarios where Authenticom may not be

6   interested in the very issues that plaintiffs are -- class

7   plaintiffs are -- interested in.  We're entitled to pursue

8   that discovery.  And given that January 31 is already, what

9   defendants say, too tight, the extension of time is to allow

10  everyone to do that correctly and certainly to protect the

11  rights of the class.

12          In addition, plaintiffs in the class case are much

13  more interested in pass-through -- the pass-through of the

14  cost to the ultimate purchaser here than Authenticom.  And

15  though Authenticom has, in fact, put document requests out

16  requesting that, they may streamline in going to trial, not

17  dealing with that issue at all.  We, of course, will be very

18  focused on that issue, and that January 31 and beyond time is

19  a great time to do that, be it third-party discovery that

20  Authenticom would not be interested in at all.

21          I certainly foresee us using the subpoena power to

22  take third-party depositions to acquire data that's needed or

23  certainly can aid any experts that are retained concerning

24  pass-through.  And, then, of course, we -- in our case

25  concerning those issues, we would also pursue that.  But to

1    cut off all opportunity to take any depositions after that is

2    certainly not fair to the class.

3          We are compromising and saying we'll speed up

4    discovery in a case that normally for antitrust, as you know,

5    could take two to three years.  We are willing to hit the

6    pedal as fast as anyone wants to go with the schedule we've

7    proposed.  But we cannot cut off our rights to the discovery

8    we need to prove our case.

9          And as far as the free peek, defendants get a free

10   peek at what Authenticom has and all that.  So, it's an equal

11   free peek there, if that's even what it is.

12         As to the scheduling, class cert., just to let you

13   know on the distinction -- I don't think this has been made --

14   I think both -- everyone's agreed that class cert. briefing

15   could go after the Authenticom trial.  Our position is class

16   cert. briefing for our case has to precede any dispositive

17   motions.  Therefore, class cert. briefing for the class

18   plaintiffs would go immediately after trial of the Authenticom

19   case, and then from there roll into the dispositive motions,

20   and then from there roll into a trial date for the class.

21         MS. MILLER:  And -- sorry.

22         MS. WEDGWORTH:  And we consider that efficient.  In a

23   normal antitrust case, the class cert. motion is in front of

24   the dispositive motion.  So, to flip that on its head, again,

25   would prejudice the class plaintiffs.  We're willing to work

1    within some boundaries.

2           It does no efficient benefit to the class -- to this

3    case -- the MDL case -- to go ahead and cram all those unusual

4    or unique issues in our case into that up-front briefing for

5    dispositive motions.

6           As to multiple reports and briefs that Ms. Miller is

7    concerned about, we're going to have experts in the class case

8    that will never appear in the Authenticom case.  So, that --

9    there's nothing in the discovery schedule that is going to

10   change the fact that there will be additional experts in the

11   class antitrust case than in the Authenticom case.  That's

12   going to happen no matter what schedule is agreed upon.

13          It makes the most sense and actually accomplishes

14   what defendants want, which is they don't want to be doing ten

15   cases at once.  It allows that to go after the Authenticom

16   trial, thus also allowing Authenticom to go to trial.

17          THE COURT:  Is there any discovery -- and before

18   giving a final ruling, I want to look through this and I am

19   going to ask you for a little bit more.

20          Is there any discovery that you are all in agreement

21   that you should get deadlines for today and you are in

22   agreement on those deadlines?

23          MS. MILLER:  No.

24          THE COURT:  With respect to the class -- the MDL

25   case -- not the Authenticom, but the MDL -- are all of you in

1   agreement that the Court should wait until ruling on any

2   motion to dismiss the consolidated amended complaint before

3   putting deadlines in place?

4           MS. GULLEY:  Your Honor, the plaintiffs have

5   requested that defendants produce their FTC productions,

6   originally through Authenticom and then through the MDL.  We

7   requested, in turn, that any party to this action in the

8   entire MDL do the same.  I think we're all agreed that the

9   defendants have done so and are continuing to do so.

10          I would ask that the plaintiffs and -- all the name

11  plaintiffs agree to do the same, so that it's not just a

12  one-way street of FTC production.

13          THE COURT:  Is there an objection to that, to the

14  extent you had any productions to the FTC?

15          MS. WEDGWORTH:  I have no objection.

16          MR. HO:  I think it's just a matter of the timeline.

17  There were competing proposals about exactly when that would

18  occur.

19          MS. MILLER:  Your Honor --

20          MS. GULLEY:  We've already done it.

21          MS. MILLER:  Yeah.  At their insistence, we've turned

22  ours over.  So --

23          THE COURT:  Have you given a complete production of

24  what you turned over to the FTC?

25          MS. GULLEY:  So far.  It's an ongoing situation.

```
 1              MS. MILLER:  We have one --
 2              MS. WEDGWORTH:  Including privilege logs?
 3              MS. MILLER:  We have one small production left to
 4   make, which we expect to make within the next week or two, but
 5   then we're caught up.
 6              THE COURT:  Have plaintiffs produced anything that
 7   you have turned over to the FTC?
 8              MR. HO:  I don't believe we have yet.  Part of the
 9   issue is we now -- sorry.  Authenticom has produced.  But
10   we --
11              THE COURT:  All of your -- everything you have
12   produced?
13              MR. HO:  I believe it has, yes.
14              MS. GULLEY:  Authenticom has not identified for us
15   what of its production was produced to the FTC, but they say
16   that some of their production was also produced to the FTC.
17              MS. MILLER:  And then -- yeah.  They made it in the
18   ordinary course of Authenticom discovery.  So, it wasn't a
19   recent production.  This was part of their ongoing production.
20              THE COURT:  You should identify that, and I will give
21   you a deadline before you leave.
22              MR. HO:  And part of the issue is that we represent a
23   relatively new plaintiff, and we have not had an opportunity
24   to go through their production or identify what documents were
25   -- may have been produced by them to the FTC.
```

1              THE COURT:  But you have for Authenticom?

2              MR. HO:  Yes.

3              THE COURT:  Okay.

4              MS. GULLEY:  Your Honor, we requested --

5              MR. HO:  And then we --

6              MS. GULLEY:  -- that production from Cox Automotive

7    as third-party discovery many, many months ago, and it's still

8    not been produced.

9              MS. MILLER:  And they're now a party.

10             THE COURT:  So, Ms. Wedgworth, you have no objection

11   to turning over --

12             MS. WEDGWORTH:  I have no objection, correct.

13             THE COURT:  Okay.

14             So, all parties should produce whatever has been

15   produced to the FTC, and continue doing so to the extent you

16   have continued productions and identify what it is.  So, if

17   Authenticom has produced but not identified, I have got to

18   believe you could easily identify that by Bates numbers.

19             What is reasonable for you to turn over?

20             MR. HO:  I think that with the exception of AutoLoop,

21   which, again, is a relatively new party, ten --

22             THE COURT:  Two weeks?

23             MR. HO:  Two weeks.  Okay.

24             THE COURT:  Produce -- and all sides should

25   produce -- to the extent you have not already, by May 9th any

1  productions that your clients have made to the FTC, and

2  identify them by Bates numbers to the extent you have already

3  produced them and have not done so.

4          MS. WEDGWORTH:  Your Honor, getting back to your

5  question of discovery dates --

6          THE COURT:  Yes.

7          MS. WEDGWORTH:  -- we are asking for all discovery

8  dates to be the same across the board, one schedule for the

9  entire MDL, with all class dates included in the schedule,

10  which will be in the letter.

11          THE COURT:  Again, I have not had a chance to read

12  the letter.

13          Are you asking that the Court wait to put those in

14  place until the Court rules on any motion to dismiss?

15          MS. WEDGWORTH:  No, your Honor.

16          THE COURT:  Or until you file your consolidated

17  amended complaint?

18          MS. WEDGWORTH:  No, your Honor.

19          MS. MILLER:  The only -- yeah, the two schedules --

20  and our April 5th letter is a full -- has their proposal

21  followed by our response, so it's in one document.

22          But the point -- to that point, you asked whether or

23  not we had agreed on any dates for any discovery.

24          THE COURT:  Yes.

25          MS. MILLER:  The answer is no in the short-term.  We

1    have identified similar types of discovery; but, again, given

2    the rapidity of the parties' respective proposals, they have

3    different dates attached to them.

4        We have said, however, that with the exception of the

5    class, which we think -- in our proposal, we accelerated the

6    filing of a class complaint, so that we could try to

7    accelerate discovery in that.  They still wanted the 60 days

8    that was originally set forth in the joint status report.  We

9    said in light of the extensive work that they have apparently

10   done, they should be able to file that much sooner; and, then,

11   we could move to serving consolidated discovery requests on

12   all parties.

13       So, that's one of the major differences.

14       But we have not asked that that be held up pending

15   the decisions on the motions to dismiss in the individual

16   actions and --

17       THE COURT:  For the consolidated.

18       MS. MILLER:  -- in the class case, provided that the

19   class case is accelerated in terms of the filing of the

20   complaint and we can brief that promptly and move that along.

21   We don't want to be engaging in unnecessary discovery if some

22   of those claims are going to be dismissed, but we're

23   interested in helping move this along because, obviously, our

24   clients want to be vindicated.

25       MR. HO:  Could I just make one point of

1   clarification, which is that the April 5th letter that

2   Ms. Miller identifies does respond to an earlier version of

3   our proposal, but our latest proposal is reflected in the

4   April 20th letter.

5           MS. MILLER:  Correct.

6           MR. HO:  And --

7           MS. MILLER:  My only point was they changed -- moved

8   a couple days here or a week there, but the fundamental

9   structure of the actual proposal is the same.

10          MR. HO:  And the fundamental structure, your Honor,

11  is -- and I just wanted to address the idea of a sneak peek --

12  is really to treat Authenticom as akin to a bellwether in this

13  case and to -- and the idea of a bellwether is that one case

14  goes forward on a somewhat more expeditious schedule than the

15  other cases.  And we think that that can include both fact

16  discovery, but also expert disclosures and Daubert motions and

17  dispositive motions.

18          The Authenticom -- all those things in Authenticom

19  shouldn't have to be held up so that they can all be done

20  together at some later point in time.  I think that's the --

21          THE COURT:  Here is what I want you to do.  I am

22  going to read what you have given to me.  If you want to file

23  anything other than what is in here and what I have heard

24  today -- I do not feel like I need it.  I have an

25  understanding of your positions.  If you feel like you need to

1    get something else before me about this, file something on

2    Monday --

3              MS. GULLEY:  Your Honor --

4              THE COURT:  -- with your respective positions on

5    scheduling.

6              MS. MILLER:  The only thing we would ask is

7    because -- we think the information we're going to receive

8    from the bank --

9              THE COURT:  I am getting there.

10             MS. MILLER:  Okay.

11             THE COURT:  I am getting there.

12             MS. MILLER:  Fair enough.

13             THE COURT:  But I want to get going on this.  If I

14   get this schedule in place before Authenticom -- before you

15   have the financial information straightened out, it is always

16   subject to modification based on those financials.

17             You have the deposition next week.  I do not know how

18   long it will take to digest everything and get something

19   before the Court.  Rather than factor that in up front, since

20   you do not know yet, I will just tell you --

21             MS. MILLER:  Your Honor, we --

22             THE COURT:  -- the schedule is subject to change,

23   because that was the Seventh Circuit's impetus for saying move

24   this along.

25             MS. MILLER:  We appreciate that, your Honor.  We

1    think we could -- I haven't had a chance to speak to my

2    client, as I informed plaintiffs' counsel last night.  But we

3    think that we could -- we were able to get an expedited

4    deposition transcript of Authenticom.  We think that if we

5    take the bank on Wednesday as proposed, we could have a

6    fulsome report to your Honor by the following Monday.

7              THE COURT:  Then do it.

8              MS. MILLER:  Okay.

9              THE COURT:  If you can do it that quickly, do it.

10             MS. MILLER:  Okay.

11             THE COURT:  The other thing, I am just putting you on

12   notice that if I do put this on a fast track, I am likely

13   going to shorten your date to file a consolidated amended

14   complaint.  Not by a lot, but I think right now it is due June

15   15th under your agreement.

16             MS. WEDGWORTH:  Yes, your Honor.

17             And we consider -- in order to completely incorporate

18   everything we can -- because, again, in many of these cases,

19   you see amended complaints in this type of MDL.  We don't

20   anticipate that.  This -- we hope to get the whole shebang in

21   here.  And June 15th allows us to put in what in reality in

22   many cases end up being second and third amended complaints.

23   We would hope that this could be the operative complaint going

24   forward without having to amend, et cetera.

25             THE COURT:  Certainly, my expectation -- I am going

1    to move that up to June 4th.

2          And I am going to shorten your time to answer or

3    otherwise plead to that until July 11th.

4          And I am shortening it a bit, for one, when I

5    appointed the two of you, I know how experienced you are in

6    not just antitrust law, but in these cases, because you have

7    been the leaders out there on these cases.  So, you should be

8    able to get that together in about ten days shorter than your

9    original complaint.

10          I am going to digest this.  Anything you want to file

11   I will consider.  And if you get the financials on file or a

12   motion with respect to it, I may give you deadlines before,

13   but I can always modify after seeing those.  But I do want

14   time to look at your letters and your proposals back and

15   forth.

16          MS. WEDGWORTH:  Your Honor, we still may file this

17   coming Monday, as well?

18          THE COURT:  Yes.  Yes.

19          MS. MILLER:  And we can just supplement the

20   following --

21          THE COURT:  You can supplement the filing.

22          And, then, if I need a response on the financials, I

23   will ask for one.

24          MR. HO:  Okay.  Thank you, your Honor.

25          MS. GULLEY:  Your Honor, I need to clarify something

1    I said earlier about the FTC, if we're switching topics.

2              THE COURT:  Yes.

3              MS. GULLEY:  My partner just reminded me that we just

4    made a production to the FTC.  And it takes us about a week to

5    get it all over to everyone.  So, I had said we're completely

6    done.  Apparently, there's one coming next week.

7              THE COURT:  Okay.

8              MS. GULLEY:  And we're not going to wait until the

9    9th.  I mean, we're going to continue to go on a rolling

10   basis, and I assume all the parties will do the same.

11             THE COURT:  And that was what I said earlier.  If you

12   have not already, keep turning it over once you produce to the

13   FTC.

14             MR. HO:  And I'm also advised that I may have been

15   incorrect in saying that Authenticom had not identified the

16   FTC production.  We'll obviously do so if, in fact, that is

17   the case.

18             THE COURT:  Other people are allowed to speak, too --

19        (Laughter.)

20             THE COURT:  -- if that is more efficient.

21             MS. GULLEY:  Thank you.

22             THE COURT:  Okay.  So, what else for the Court this

23   morning?

24             MS. MILLER:  I think the only other housekeeping

25   issue, we've been talking with counsel for AutoLoop, Mr. Ho,

```
 1    about a briefing schedule for a motion to dismiss on the
 2    AutoLoop complaint.  We've given them a proposal.  We expect
 3    we should be able to submit a joint briefing schedule to your
 4    Honor --
 5              THE COURT:  Great.
 6              MS. MILLER:  -- in the relative short-term to get
 7    that one.  And that should be the last one, other than the
 8    class complaint, that needs to be briefed.
 9              THE COURT:  Okay.
10              If it is agreed, you can always call or e-mail Katie
11    with it rather than file something.
12              MR. HO:  Will do.
13              THE COURT:  I am fine with that.
14              MS. MILLER:  Those were my only other housekeepings.
15              THE COURT:  Okay.
16              MR. HO:  Nothing more here.
17       (Brief pause.)
18              THE CLERK:  June 13th at 1:00 p.m.
19              THE COURT:  We will have another status.
20              Although I am about to go into a series of trials, I
21    hope to have some rulings on motions to dismiss before then,
22    which will give you some more guidance on some of the
23    individual actions.
24              MS. MILLER:  1:00 p.m. you said?  Thanks.
25              THE COURT:  I will see you then.  Thank you.
```

1        MS. WEDGWORTH:  Thank you, your Honor.

2                    *     *     *     *     *

3

4   I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

5

6

    /s/ Joseph Rickhoff                    April 26, 2018
7   Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25