# EXHIBIT 1

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp  Document #: 106-10  Filed: 06/16/17  Page 2 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 2 of 17 PageID #:3877
Case: 17-2540   Document: 48   Filed: 08/22/2017   Pages: 100   (85 of 100)



**CDK Global, LLC**
**1950 Hassell Road**
**Hoffman Estates, Illinois 60169**

# MASTER SERVICES AGREEMENT

No._____

Client: ███████████████████████

Address: ███████████

City: ███████   State: ███   Zip Code: █████

**1.   SCOPE OF AGREEMENT.**

A.   CDK Global, LLC ("CDK") agrees to provide Client and Client agrees to obtain from CDK, in accordance with the terms and conditions of this Agreement (which shall be deemed to include (a) any schedules hereto which may be executed (including, without limitation, electronically or pursuant to a "shrink-wrap" of such Schedule) from time to time (collectively, the "Schedules"), (b) any addenda hereto which may be executed from time to time (collectively, the "Addenda") and (c) the Product Guide (as such term is defined below)), the following:

(i)   the services described in the Schedules (the "Services");

(ii)   licenses and/or sublicenses to the application software (the "Application Programs"), and to the custom programming application software referred to in Paragraph 4.B. below (the "Special Programs"), all as listed in the Schedules and which may be provided by CDK either directly to Client as an 'on-site' solution to be installed at Client's site ("Onsite") or by CDK to Client remotely in a 'Software as a Service' ('SaaS') manner ("ASP Managed Services");

(iii)   software support services for the Application Programs and the Special Programs, to the extent that support services for such Application Programs and/or Special Programs are specifically listed in the Schedules (collectively, the "Support Services");

(iv)   the equipment listed in the Schedules (the "Equipment") and the grant of licenses and/or sublicenses to the operating software for such Equipment, as listed in the Schedules (the "Operating Programs"); and

(v)   maintenance services for the Equipment as described in Paragraph 10 below, to the extent that maintenance services for such Equipment are specifically listed in the Schedules (collectively, the "Maintenance Services").

{00015130. }         MSA US 07/01/2015

© 2015 CDK Global, LLC

**JA 83**

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp Document #: 106-10 Filed: 06/16/17 Page 3 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 3 of 17 PageID #:3878
Case: 17-2540   Document: 48   Filed: 08/22/2017   Pages: 100   (86 of 100)

B.  CDK may, from time to time during the term of this Agreement, provide Client, at Client's request, with services, application software, custom programming application software, operating software, software support services, equipment and equipment maintenance services which are then being provided by CDK and are not specifically covered by the Schedules hereto. The terms "Services", "Application Programs", "Special Programs", "Operating Programs", "Support Services", "Equipment" and "Maintenance Services" shall automatically be amended from time to time to include all such additional services, application software, custom programming application software, operating software, software support services, equipment and equipment maintenance services, as the case may be, which are provided by CDK to Client. The Application Programs, Special Programs, and Operating Programs are collectively referred to as the "Software".

C.  Client and CDK acknowledge and agree that in addition to the terms and conditions set forth in this Agreement and any Schedules or Addenda hereto, this Agreement shall also be governed by the terms and conditions of the most recent version of the CDK Global, LLC Product Guide to which Client has agreed (as provided in such Product Guide); provided, however, that the general terms and conditions set forth in this Agreement cannot be modified by the Product Guide, and that any such modifications may only be made pursuant to an amendment or addendum to this Agreement which has been executed by both Client and CDK.  Client acknowledges that it has received (or otherwise had the opportunity to review) the Product Guide prior to executing this Agreement, and that subject to the limitations set forth in the immediately preceding sentence, the Product Guide (and any subsequent modifications made in accordance therewith and to which Client has agreed (as provided in such Product Guide)) shall be binding upon Client.

2.  **TERM OF AGREEMENT.**

The term of this Agreement shall be for the period commencing the date this Agreement has been signed by both CDK and Client and continuing until all Schedules hereto have completely terminated. The initial term of each Schedule shall be for the period indicated therein and shall continue thereafter on a month-to-month basis until terminated by either party on at least thirty (30) days written notice; provided, however, that CDK shall have the right to terminate any Schedule at any time during the initial term thereof in the event that CDK elects to cease providing the related CDK Products (as such term is defined below) on a general basis. Client's and CDK's continuing obligations under this Agreement (including, without limitation, those relating to Client's payment of the charges referred to in Paragraph 3 below, and to the "CDK Products," the "Confidential Information" and the "Client Files" (all as hereinafter defined)) shall survive the termination of this Agreement.

3.  **CHARGES.**

A.  The initial charges for the Services, Software, Support Services, Equipment and Maintenance Services shall be as set forth in the applicable Schedules. The charges for any services, application software, custom programming application software, operating software, software support services, equipment and equipment maintenance services provided by CDK to Client which are not listed in the Schedules shall be mutually agreed to by CDK and Client and shall be in addition to the charges listed in the Schedules.

B.  The charges for the Support Services and Maintenance Services listed in the Schedules may be changed by CDK at any time and from time to time after the applicable initial twelve (12) month billing period upon at least thirty (30) days prior written notice to Client. The charges for the Services, Software and Equipment listed in the Schedules, and for any services, application software, custom

Highly Confidential - Filed Under Seal                    CDK-0000177

DocuSign Envelope ID: EF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp Document #: 106-10 Filed: 06/16/17 Page 4 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 4 of 17 PageID #:3879
Case: 17-2540   Document: 48   Filed: 08/22/2017   Pages: 100   (87 of 100)

programming, operating software, software support services, equipment and equipment maintenance services provided by CDK to Client which are not listed in the Schedules, may be changed by CDK at any time and from time to time upon at least thirty (30) days prior written notice to Client. Client acknowledges and agrees that notices of price increases may be included in or accompany Client's invoice.

C.    Client will be invoiced for all freight charges and all forms, supplies and consumable items provided by CDK for utilization of all CDK services at CDK's then current prices.

D.    There shall be added to all charges invoiced Client pursuant to this Agreement amounts equal to any and all applicable taxes, exclusive of taxes based on CDK's net income.

E.    Client, by using any of the Services, Software, Support Services, Equipment and Maintenance Services agrees to pay, within ten (10) days after the date of the applicable invoice from CDK, the then applicable charges for the Services, Software, Support Services, Equipment and Maintenance Services covered thereby. If Client fails to pay any amounts due under this Agreement, Client shall, upon demand, pay interest at the rate of 1-1/2% per month (but in no event more than the highest interest rate allowable by law) on such delinquent amounts from the due date until the date of payment.

F.    Any deposit set forth in a Schedule shall be paid by Client to CDK concurrently with Client's execution of the applicable Schedule. All deposits are non-refundable. Deposits to be applied against Equipment purchases will be first credited to Client's CDK account with any excess refunded to Client. Deposits to be applied to Services or Software which are licensed or purchased by Client but are not approved for installation by Client shall be retained by CDK and shall be applied against CDK's losses. CDK may, at its option, apply Clients deposit balance to Client's final invoice relating to any terminated Service, Maintenance Services, Support Services or Software license. Other types of deposits may be required by CDK as indicated by the applicable Schedules.

4.    **SOFTWARE.**

A.    Client acknowledges that it is a licensee and/or sublicensee of CDK of the various Application Programs, Special Programs and Operating Programs contained in the Software. Client accepts such licenses and/or sublicenses, as the case may be, from CDK for the Software upon the terms and conditions set forth in this Agreement.

B.    Any Special Programs requested by Client will be provided by CDK at charges, terms and conditions to be mutually agreed to by CDK and Client as set forth on the Schedules. CDK reserves the right to determine if it will provide any such Special Programs programming. All Special Programs shall be the exclusive proprietary property of CDK. CDK may independently develop software similar to the Special Programs for any purpose.

C.    The licenses and/or sublicenses for the Software granted by CDK to Client hereunder convey personal, non-exclusive, non-transferable rights and licenses and/or sublicenses, as the case may be, to Client to use the Software only at the sites indicated on the Schedules in conjunction with the Services and/or the Equipment.

D.    All Software (including the magnetic or other physical media on which it is originally or subsequently recorded or fixed) will be returned by Client to CDK or will be completely deleted, erased

{00015130. }                    MSA US 7/1/2015

© 2015 CDK Global, LLC

3.

DocuSign Envelope ID: EF7A6708-53D6-4DFF-9F0D-46A6BFA04917

Case: 3:17-cv-00318-jdp   Document #: 106-10   Filed: 06/16/17   Page 5 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 5 of 17 PageID #:3880
Case: 17-2540      Document: 48      Filed: 08/22/2017      Pages: 100      (88 of 100)

or otherwise destroyed by Client, in accordance with CDK's instructions, promptly after the termination of the Schedule pursuant to which it was licensed to Client. The foregoing obligation does not apply to any Software which is provided to Client by CDK in a SaaS manner pursuant to the ASP Managed Services.

5.  **SUPPORT SERVICES.**

A.  CDK, or its designee, will provide Support Services to keep the Software operating in good working order through the methods described below for the Software licensed hereunder so long as Client: (i) makes timely payment of all applicable fees as invoiced; (ii) maintains an operating environment conforming to CDK's then-current published specifications; (iii) allows CDK complete and safe access to the Software; and (iv) is not otherwise in breach of the Agreement.

B.  CDK will provide consulting Support Services assisting Client in the use of the applicable Software (including, but not limited to, services provided by CDK at Client's facility, travel time to and from Client's facility and consulting time via telephone or other modes of communication) in accordance with, and to the extent provided by, CDK's then prevailing practices and as may be further described in the Schedules. CDK may charge Client for such training. Support Services necessary due to Client personnel failure to attend training will be provided by CDK on a reasonable-efforts basis at CDK's then-current charges therefor. Client agrees that there is a three hour minimum charge for each visit to Client's facility.

C.  CDK may provide certain CDK-designated improvements, enhancements and updates, which are made available by CDK to its Clients generally (the "Updates"), to the original copies of the Software licensed hereunder. Client agrees that CDK may charge Client implementation, development or other fees as a condition to the receipt by Client of certain Updates. The Updates will be deemed to be part of the Software and will be delivered to Client by CDK.

D.  For Software that is provided as an Onsite implementation:

  (i)  Except for Updates that CDK designates as optional and which Client declines, Client will install all delivered Updates within forty-five (45) days of receipt from CDK or CDK will have no further obligation to provide to Client Updates or support for the affected Software, and CDK may, at its option, terminate the Schedule (and Client's license) for the affected Software.

  (ii) Client acknowledges that Updates may require the use of additional computing capacity or upgrades to the Equipment. In such case, CDK's sole and exclusive responsibility will be to make the necessary additional computing capacity and/or upgrades available to Client at CDK's then-prevailing charges. CDK reserves the right to designate the availability and use of Software, and Updates thereto, with specific CDK system configurations.

E.  Any Support Services for Special Programs requested by Client including, without limitation, any changes needed to Special Programs to interface and/or operate with any new release or enhancement to CDK's standard Applications Programs and file conversions, will be provided at CDK's discretion at CDK's then current charges therefor.

F.  For Software that is provided as an Onsite implementation, Client may request that CDK, from time to time hereunder and for CDK's then prevailing charges therefor, approve software owned by Client or licensed by Client from a third party which is not included in the Software (the "Client

{00015130. }                           MSA US 7/1/2015

© 2015 CDK Global, LLC

4.

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp   Document #: 106-10   Filed: 06/16/17   Page 6 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 6 of 17 PageID #:3881
Case: 17-2540      Document: 48       Filed: 08/22/2017     Pages: 100     (89 of 100)

Software"), for use in conjunction with the Services, Software and/or Equipment. CDK shall perform such procedures (as set forth in Paragraph 11 below), if any, as are, in CDK's sole and absolute discretion, necessary for it to determine whether it can give Client the approval for the Client Software sought by Client pursuant to this subparagraph F. CDK will not provide Support Services for the Client Software; any and all support for such Client Software shall be Client's responsibility. Client will not use the Client Software in conjunction with the Services, Software and/or Equipment prior to complying with the steps set forth in Paragraph 11 below.

G.      If Client accesses third party supplied services through a CDK Service and the third party modifies its requirements for CDK access, CDK may, notwithstanding anything to the contrary set forth herein or in the Schedules, discontinue Client's use of the affected Services; and such action by CDK shall be in addition to its other remedies under this Agreement.

6.      **OWNERSHIP, USE AND CONFIDENTIALITY OF CDK PRODUCTS.**

A.      Client acknowledges that the Software, the data bases which are part of the Services, and related materials, and all copyrights, patents, trade secrets and other intellectual and proprietary rights therein and thereto (collectively, the "CDK Products") are and shall remain the exclusive and confidential property of CDK or the third parties for whom CDK is acting as agent or from whom CDK has obtained the right to use the CDK Products.

B.      Client may use the CDK Products only in conjunction with the Services, Software and Equipment. Client agrees that it will use the Services, Software and Equipment in accordance with the Product Guide and such reasonable policies as may be established by CDK from time to time as set forth in any materials furnished by CDK to Client (or otherwise made available by CDK to Client). Client assumes exclusive responsibility for its use of the Services, Software and Equipment. Client agrees that, except as otherwise permitted by CDK in writing, Client will use the Services and Software only for its own internal business purposes and will not sell or otherwise provide, directly or indirectly, any of the Services or Software, or any portion thereof, to any third party. IN NO EVENT SHALL CLIENT UTILIZE THE SOFTWARE AND SERVICES PROVIDED HEREIN FOR PURPOSES OTHER THAN OPERATION OF THE CLIENT'S BUSINESS OPERATIONS. CLIENT SHALL BE AUTHORIZED TO UTILIZE THE SOFTWARE AND SERVICES ONLY FOR SO LONG AS THE CLIENT IS NOT IN DEFAULT OF ITS OBLIGATIONS HEREUNDER. CLIENT IS NOT AUTHORIZED TO UTILIZE THE SOFTWARE AND SERVICES TO CAUSE OR FACILITATE A CONVERSION TO ANOTHER VENDOR PRIOR TO THE EXPIRATION OF THE TERM OF THIS AGREEMENT. CLIENT IS NOT AUTHORIZED TO CAUSE OR PERMIT ANY THIRD PARTY SOFTWARE TO ACCESS THE CDK DEALER MANAGEMENT SYSTEM EXCEPT AS OTHERWISE PERMITTED BY THIS AGREEMENT.

C.      Client shall not copy, in whole or in part, the CDK Products or related documentation, whether in the form of computer media, printed or in any other form; provided, however, that Client may make an appropriate number of copies of the CDK Products for back-up purposes only (and only during the term of the Schedule relating to such CDK Products). Client shall not make any alteration, change or modification to any of the CDK Products without CDK's prior written consent in each instance. CLIENT MAY NOT RECOMPILE, DECOMPILE, DISASSEMBLE, REVERSE ENGINEER, OR MAKE OR DISTRIBUTE ANY OTHER FORM OF, OR ANY DERIVATIVE WORK FROM, ANY OF THE CDK PRODUCTS (INCLUDING THE SOFTWARE).

D.     Client shall treat as confidential and will not disclose or otherwise make available any of the CDK Products (including, without limitation, screen displays or user documentation) or any trade secrets, processes, proprietary data, information or documentation related thereto (collectively the "Confidential Information"), in any form, to any person other than employees and agents of Client with a need-to-know. Client will instruct its employees and agents who have access to the CDK Products and the Confidential Information to keep the same confidential, by using the same care and discretion that Client uses with respect to its own confidential property and trade secrets. Client shall not allow access to any CDK Products by any third parties except as otherwise permitted by this Agreement. Upon the termination of a Schedule for any reason, Client shall return to CDK any and all copies of the CDK Products and the Confidential Information which are in its possession and to which such terminated Schedule relates.

**7.     CONFIDENTIALITY OF CLIENT FILES; FILE SECURITY.**

A.     Any Client file or other information provided by Client to CDK for use with the Services and identified in writing as confidential (collectively, the "Client Files") shall remain the exclusive and confidential property of Client. Except to the limited extent set forth in Paragraph 7.D. below (and as otherwise consented to by Client), CDK shall treat as confidential and will not disclose or otherwise make available any Client Files to any person other than employees, subcontractors and agents of CDK with a need-to-know. CDK will instruct its employees, subcontractors and agents who have access to the Client Files to keep the same confidential by using the same care and discretion that CDK uses with respect to its own confidential property and trade secrets. Notwithstanding the foregoing, CDK may disclose any Client File in the event it is legally required to disclose such Client File.

B.     CDK will provide reasonable security provisions to ensure that access to the Client Files is available only to Client, but CDK cannot and does not guarantee against any unauthorized access. CDK reserves the right to issue and change regulations and procedures from time to time to improve file security.

C.     CDK will take reasonable precautions to prevent the loss of or alteration to any Client Files in the control and possession of CDK, but CDK cannot and does not guarantee against any such loss or alteration. With respect to any information used with Software provided by CDK using SaaS, Client will keep electronic copies of all such information and will maintain procedures external to the CDK system for the identification of any losses of such information and for the reconstruction of any lost or altered information, to the extent deemed necessary by Client. CDK is not responsible for any disaster recovery of any Client Files or information.

D.     Notwithstanding Paragraph 7.A. above, Client grants CDK the right and license to access the Client Files and to use and/or distribute such Client Files to third parties in statistical and/or compilation forms so long as such distributed statistics and/or compilations do not identify Client or any of Client's customers or prospective customers. Client acknowledges that such statistics and/or compilations will be the property of CDK. CDK will obtain Client's authorization to distribute identifiable Client Files to third parties. Certain Services licensed by Client entail disclosures of identifiable Client File information. Client's use of such Services shall be deemed to be Client's authorization to use and distribute identifiable Client Files in relation to such Services.

E.     CDK maintains appropriate security measures to protect Client's personal information consistent with applicable state and federal laws, including the Massachusetts Standards for The Protection of Personal Information of Residents of the Commonwealth (201 CMR 17.00).

{00015130. }                MSA US 7/1/2015

© 2015 CDK Global, LLC

Highly Confidential - Filed Under Seal          CDK-0000181

DocuSign Envelope ID: EF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp Document #: 106-10 Filed: 06/16/17 Page 8 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 8 of 17 PageID #:3883
Case: 17-2540 Document: 48 Filed: 08/22/2017 Pages: 100 (91 of 100)

F.  CDK agrees that it will not disclose or use Non-Public Personal Information of any Consumer provided to it by Client pursuant to this Agreement, except (A) to the extent necessary to perform, effect, administer or enforce any transactions or services authorized or requested by Client or the applicable Consumer (including without limitation disclosures to Client's other service providers authorized or requested by Client) and (B) under an exception which does not require initial notice for disclosure to service providers and in the ordinary course of business to carry out the transactions or services contemplated in (A). For purposes of this Paragraph 7.F, other than the terms otherwise defined herein, the capitalized terms used in this paragraph shall have the meanings given to them in the privacy regulations applicable to Client which were promulgated pursuant to Title V of the Graham-Leach-Bliley Act of 1999. To assist CDK in its compliance with this Section, Client agrees, that if and to the extent requested by CDK, Client will specifically identify which information provided by Client to CDK constitutes Non-Public Personal Information of a Consumer. In addition, Client will ensure that any privacy notices which Client is required to deliver to its Consumers describes, to the extent it is required by law to do so, any disclosures or uses of Non-Public Personal Information which may be made by CDK in accordance with the terms of the Agreement.

G.  CDK acknowledges that Client is subject to the Safeguarding regulations promulgated pursuant to Title V of the Graham-Leach-Bliley Act of 1999 (the "Safeguards Rule"). CDK agrees, to the extent it is a Service Provider to Client under the Safeguards Rule, to implement and maintain appropriate safeguards as CDK may determine to be reasonably necessary to protect the confidentiality of Customer Information provided by Client to CDK pursuant to the terms of this Agreement and in CDK's possession and control. To assist CDK in its compliance with this Section, Client agrees that, if and to the extent requested by CDK, Client will specifically identify which information provided by Client to CDK constitutes Customer Information and will identify its employee responsible to coordinate Client's compliance with the Safeguards Rule. Client acknowledges and agrees that it is solely responsible for its compliance with the Safeguards Rule and that neither any review by CDK of Client's computer system nor the provision of any Services, Software or Equipment by CDK will be deemed to constitute a guarantee or representation by CDK that such review or Service, Software or Equipment will bring Client into compliance with the Safeguards Rule. Client specifically agrees that if it is using CDK's SaaS offering, CDK shall only be responsible for the safeguarding of its own computing facilities and that Client shall remain obligated to comply with the Safeguards Rule with respect to its computing and communication devices used to access CDK's hosting facilities. Other than the terms otherwise specifically defined in the Agreement, capitalized terms used in this Section shall have the meaning given to them in the Safeguards Rule.

8.  **EQUIPMENT-CONFIGURATION, INFORMATION; INSTALLATION AND ENVIRONMENTAL SPECIFICATIONS**

A.  For any CDK DMS provided by CDK as an Onsite implementation, Client will provide CDK with complete and accurate information regarding Client business volumes and computer storage requirements for use with the System Configurator Schedule (or similar documentation) for the Equipment purchased from CDK pursuant hereto. CDK will not be responsible for configuration errors due to inaccuracies and/or omissions in the information supplied by Client and for any resulting errors in the amount or capacity of Equipment sold to Client.

B.  Client shall provide a suitable installation environment for the Equipment as described in CDK's environmental specifications set forth in the Schedules or in other documentation provided by CDK to Client (the "Environmental Specifications"). Client shall provide and install all wiring and cabling required for installation of the Equipment, and shall install all electrical and other utilities specified in

{00015130. }  MSA US 7/1/2015

© 2015 CDK Global, LLC

7.

Highly Confidential - Filed Under Seal
CDK-0000182

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp Document #: 106-10 Filed: 06/16/17 Page 9 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 9 of 17 PageID #:3884
Case: 17-2540    Document: 48    Filed: 08/22/2017    Pages: 100    (92 of 100)

the Environmental Specifications. The Equipment shall be installed and placed in good working order by Client, CDK or CDK's designee, as indicated in the Schedules. Client will at all times maintain the location at which the Equipment is installed in accordance with the Environmental Specifications.

9.  **EQUIPMENT- RISK OF LOSS; OWNERSHIP**

A.  Client acknowledges that the Equipment provided hereunder may possess characteristics which limit the useable capacity of such Equipment. Client acknowledges and agrees that it has purchased, and is authorized to use, only such authorized useable capacity of the Equipment as may be indicated on the applicable Schedule(s). Client expressly agrees that: (i) it will not cause or permit any alteration of any of the Equipment such that the useable capacity will be increased beyond its authorized usable capacity; and (ii) it will not use any portion of the capacity of the Equipment in excess of its authorized, useable capacity without paying CDK the applicable fees for the desired increase in useable capacity. Ownership of the unused capacity in the Equipment shall remain with CDK. For the avoidance of doubt, this Paragraph A does not apply to any Equipment utilized by CDK to provide Software pursuant to an ASP Managed Services implementation.

B.  Title to the portion of the Equipment purchased by Client shall pass to Client at the point of shipment; title to any portion of the Equipment which is not purchased by Client shall remain with CDK. Client shall have the option of obtaining additional equipment (in addition to the Equipment) from any third party; provided that, such equipment; (i) must be compatible to the Equipment and have complied with the procedures set forth in Paragraph 11 below (and for which Client has paid CDK its then prevailing charges therefor); and (ii) shall be maintained in the manner provided for in Paragraph 10 below.

C.  Client shall assume all risk of loss or damage to any Equipment while in Client's possession or control. No loss, theft or damage to the Equipment after the passage of title to Client shall relieve Client of its obligations to pay the charges due, or perform any of its other obligations under, the Agreement.

D.  CDK reserves a purchase money security interest in any Equipment in the amount of the unpaid balance of the purchase price until payment in full of such purchase price. A financing statement under the Uniform Commercial Code may be filed with appropriate public authorities and Client agrees to sign any forms presented to it which are necessary to protect CDK's security interest therein.

10. **EQUIPMENT MAINTENANCE SERVICES**

A.  To the extent set forth in the applicable Schedules, CDK, or its designee, shall provide Maintenance Services for the Equipment and additional equipment referred to in Paragraph 9.B above. Any and all maintenance for Equipment and additional equipment not maintained by CDK, or its designee, will be Client's responsibility subject to the provision of Paragraph F below.

B.  For the Equipment and additional equipment it is maintaining, CDK, or its designee, shall, at CDK's option, provide normal remedial Maintenance Services on-site or by telephone during the hours such remedial Maintenance Services are then generally provided by CDK to its clients for that CDK service region. CDK may, at its option, also provide Equipment swap-out services in lieu of on-call remedial maintenance services. In such event, Client agrees to follow CDK's then-prevailing swap-out maintenance procedures including, without limitation, returning all replaced parts, freight prepaid, within fifteen (15) days after receipt of the replacement parts or pay CDK's then-current late charges.

{00015130. }     MSA US 7/1/2015

© 2015 CDK Global, LLC

8.

Highly Confidential - Filed Under Seal     CDK-0000183

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp Document #: 106-10 Filed: 06/16/17 Page 10 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 10 of 17 PageID #:3885
Case: 17-2540    Document: 48    Filed: 08/22/2017    Pages: 100    (93 of 100)

Preventive Maintenance Services shall be provided as determined necessary by CDK, or its designee, and shall be performed during the same hours as on-site remedial Maintenance Services are provided.

C.  Maintenance Services include replacement of all unserviceable parts. Removed parts become the property of CDK. Replaced parts may be new or refurbished.

D.  Maintenance Services do not include (and CDK shall charge Client CDK's then prevailing normal charges for providing):

   (i)  Electrical work external to the Equipment and additional equipment.

   (ii)  Maintenance of accessories, attachments, or other devices not covered by the Schedules.

   (iii)  Furnishing platens, ribbons, tapes, diskettes, other consumable items, supplies or accessories, painting or refinishing, making specification changes or performing services connected with installation, removal or relocation of Equipment and additional equipment, or adding or removing accessories, attachments or other devices unless specifically agreed to.

   (iv)  Such other services which are impractical for CDK, or its designee, to render because of alterations, not approved by CDK, to the Equipment and additional equipment.

   (v)  Repair of any Equipment or additional equipment problem caused by non-CDK representatives performing maintenance or repair of such Equipment or additional equipment, unless approved by CDK.

   (vi)  Repair of damage resulting from (a) fire, theft, disaster, catastrophe or acts of God, transportation, neglect or misuse, power failure, power spikes (including, without limitation, lightening spikes and power surges) communications line or equipment failure, (b) failure of foreign interconnect equipment, (c) use of the Equipment or additional equipment for purposes other than for which it was designed, (d) alterations or attachments to, or the use of accessories or supplies not suitable for, the Equipment or additional equipment, (e) operational errors, fault or negligence of the Client or, (f) causes other than ordinary wear and tear.

   (vii)  Repair of damage or increase in repair service time caused by non-compliance with the Environmental Specifications, or Client's improper use, management or supervision of the Equipment or additional equipment (including, without limitation, the use of supplies, disc packs, diskettes, tapes and tape cartridges not designated in writing by CDK as suitable for use with the Equipment or additional equipment).

   (viii)  Repair of damage resulting from problems in the Software if, without the approval of CDK, (a) Software has been altered in any way not permitted by Paragraph 6 above, or (b) software, other than the Software and other software previously approved by CDK in accordance with the provisions set forth in Paragraph 11 below, has been installed on the Equipment or the additional equipment.

Highly Confidential - Filed Under Seal                    CDK-0000184

E.  Client shall permit CDK, or its designee, to have complete access to the Equipment and the additional equipment being maintained by it during normal business hours.

F.  Notwithstanding the foregoing, in the case that CDK, or its designee, is not supplying Maintenance Services:

(i) Due to the proprietary nature of the Services and Software, Client will not allow access by any third party to the Services and Software,

(ii) Client may request that CDK provide Maintenance Services on a time and materials basis from time to time. CDK will do so, at its discretion, at CDK's then-current rates and under its then-current policies,

(iii) Client will pay CDK's then-current recertification fees to place non-maintained Equipment and additional equipment under Maintenance Services, as well as any time and materials charges for services required to bring the non-maintained Equipment and additional equipment up to CDK standards for Maintenance Services.

11.  **NON-CDK PROVIDED SOFTWARE AND EQUIPMENT**

A.  When Client requests CDK to give it the approval referred to in Paragraph 5.F. or Paragraph 9.B. above, CDK will promptly notify Client if CDK reasonably believes (after being advised of Client's intentions and having reasonable time to review, to the extent it determines necessary in its sole and absolute discretion, the likely effect of the proposed additional Client Software or equipment) that such Client Software or equipment (collectively, the "Third Party Products") will degrade the performance of the Services, Software and/or Equipment below their respective specifications and/or will increase the Support Services and/or Maintenance Services which CDK, or its designee, will have to perform on the Software or the Equipment. Client will, upon request demonstrate to CDK that degradation in Services, Software and/or Equipment performance or increase in Support Services or Maintenance Services is unlikely. If CDK determines that such degradation in Services, Software and/or Equipment performance or increase in Support Services or Maintenance Services is still likely, Client shall have the option of:

(i) satisfying CDK, in accordance with criteria to be mutually agreed to by CDK and Client, that the performance of the Services, Software and Equipment will not be degraded, and/or the Support Services or Maintenance Services required to be performed by CDK, or its designee, will not be increased by such additional Third Party Products; or

(ii) as a condition of receiving CDK's approval for the use of the Third Party Products in question, agreeing with CDK as to appropriate changes in CDK's warranties set forth in Paragraph 12 below, and in CDK's Support Services under Paragraph 5 above and/or Maintenance Services under Paragraph 10 above (and CDK's charges therefor), in order to enable CDK not be in breach of its obligations under Paragraph 5, 10 and 12 hereof.

B.  Client agrees that CDK shall not be responsible, now or in the future, for the installation, Maintenance Service or Support Services for any Third Party Products or for any modifications to the Services, Software or Equipment necessary to correct or place any Third Party Products in good

{00015130. }  MSA US 7/1/2015

© 2015 CDK Global, LLC

10.

Highly Confidential - Filed Under Seal

JA 92

CDK-0000185

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp Document #: 106-10 Filed: 06/16/17 Page 12 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 12 of 17 PageID #:3887
Case: 17-2540    Document: 48    Filed: 08/22/2017    Pages: 100    (95 of 100)

working order. Client further acknowledges that use of any Third Party Products with the Services, Software or Equipment involves potential risks that may result in system degradation and/or may adversely affect the performance of the Services, Software or Equipment. CDK shall be under no obligation now or in the future to correct any such problems, and CDK shall not have any obligation or responsibility to reconstruct any Client Files, data or programs which may be lost or damaged as a result of Client's use of Third Party Products. If the installation or use of Third Party Products has adverse effects on any Services, Software or Equipment, or results in any damages or destruction of CDK or Client data, Client agrees to immediately disconnect or remove the Third Party Products upon reasonable prior notice from CDK.

12. **WARRANTY.**

A. CDK warrants that the Services and the Software will conform to their respective functional and technical specifications. Such specifications are subject to amendment, from time to time, by CDK in which case the Services and Software will conform to their modified respective functional and technical specifications. This warranty shall not extend to Software which has been altered, changed, or modified in any way not permitted by the provisions of this Agreement.

B. Subject to the exceptions described in this Agreement, CDK represents and warrants that the Equipment and the additional equipment which is maintained by CDK or its designee, will be in good working order during the period it is maintained by CDK hereunder. This warranty shall not extend to Equipment and/or additional equipment that has been subjected to misuse, neglect or accident, which shall have been altered or repaired other than by CDK or its designee, or to which has experienced any of the problems described in this Agreement which cause such warranty to be inapplicable.

C. CDK warrants to Client that, except as provided in Paragraph 9 above, good title to Equipment purchased from CDK shall be transferred to Client, free and clear of all liens, claims, encumbrances and security interests whatsoever.

D. EXCEPT AS SPECIFICALLY PROVIDED IN THIS SECTION 12, THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES, THE SOFTWARE, THE EQUIPMENT, THE ADDITIONAL EQUIPMENT, THE SUPPORT SERVICES AND/OR THE MAINTENANCE SERVICES INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE OR ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE, OR TRADE PRACTICE. CLIENT WAIVES THE RIGHT TO RELY UPON ANY REPRESENTATION OR WARRANTY NOT CONTAINED HEREIN.

13. **LIMITATION OF LIABILITY.**

A. CDK's sole obligation and Client's sole remedy in case of any breach of CDK's representations and warranties set forth in Paragraph 12 above shall be for CDK (i) to use reasonable efforts to correct any Services or Software which is not in compliance with the warranties provided in Paragraph 12.A. above, and/or (ii) to repair or replace, at CDK's option, any defective item of Equipment which is not in compliance with the warranties set forth in Paragraph 12.B. above.

B. CDK shall not have any liability under this Agreement for any money damages resulting from claims made by Client or any third party for any and all causes covered by Paragraph 13.A. above. CDK's sole liability under this Agreement for money damages resulting from claims made by Client or

Highly Confidential - Filed Under Seal                                    CDK-0000186

Case: 3:17-cv-00318-jdp Document #: 106-10 Filed: 06/16/17 Page 13 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 13 of 17 PageID #:3888
Case: 17-2540  Document: 48  Filed: 08/22/2017  Pages: 100  (96 of 100)

any third party arising from or related to any and all causes not covered by Paragraph 13.A. above shall not exceed the lesser of (i) the amount of actual damages incurred by Client, or (ii) an amount which will not exceed one month's average total monthly charges paid by Client for the particular Services, Software, Equipment, Support Services or Maintenance Services as to which Client's claim relates during the twelve (12) months preceding the month in which the damage or injury is alleged to have occurred, or such lesser number of months if Client has not received twelve (12) months of the applicable Services, Software, Equipment, Support Services or Maintenance Services. Such damages shall be the full extent of CDK's monetary liability under this Agreement regardless of the form in which any such legal or equitable claim or action may be asserted against CDK and shall constitute Client's sole monetary remedy.

C.   CDK shall not be liable or deemed to be in default for any delay or failure to perform under this Agreement or for interruption to the Services, Software, Equipment, additional equipment maintained by CDK, Support Services and/or Maintenance Services resulting directly or indirectly from any cause beyond CDK's reasonable control.

D.   As used in Paragraphs 13.A., 13.B. and 13.C. above, the term "CDK" shall be deemed to include each third party who provides CDK with any portion of the Services, Software, Equipment, Support Services or Maintenance Services being provided, or which will be provided to, Client. Such third party shall not have any direct or indirect liability to Client for monetary damage on account of the Services, Software, Equipment, Support Services or Maintenance Services provided, or to be provided, by CDK hereunder.

E.   IN NO EVENT WILL CDK BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHICH CLIENT MAY INCUR OR EXPERIENCE ON ACCOUNT OF ENTERING INTO OR RELYING ON THIS AGREEMENT, EVEN IF CDK HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

14.  **INDEMNITY.**

CLIENT AGREES THAT CDK SHALL NOT BE RESPONSIBLE FOR, AND CLIENT SHALL INDEMNIFY CDK WITH RESPECT TO, ANY THIRD PARTY CLAIMS AGAINST CDK THAT ARISE FROM CLIENT'S USE, MISUSE, SHARING OR TRANSFER OF THE SOFTWARE OR THE SERVICES. FURTHER, CLIENT AGREES TO REIMBURSE CDK FOR ANY AND ALL COSTS AND EXPENSES RELATED TO THE DEFENSE OF ANY SUCH CLAIMS, INCLUDING REASONABLE ATTORNEYS' FEES, UNLESS SUCH CLAIMS ARE BASED ON CDK'S WILLFUL MISCONDUCT. FOR AVOIDANCE OF DOUBT, THIS PARAGRAPH SHALL SURVIVE TERMINATION OF THE AGREEMENT.

15.  **LAWS AND GOVERNMENTAL REGULATIONS.**

A.   Client shall be responsible (i) for compliance with all laws and governmental regulations affecting its business and (ii) for any use it may make of the Services and Software to assist it in complying with such laws and governmental regulations, and CDK shall not have any responsibility relating thereto (including, without limitation, advising Client of Client's responsibilities in complying with any laws or governmental regulations affecting Client's business).

B.   If, after the date hereof, any modifications to the Services and Software shall, in the reasonable opinion of CDK, be legally required, CDK may modify the Services and Software appropriately. If

{00015130. }                                    MSA US 7/1/2015

© 2015 CDK Global, LLC

12.

Highly Confidential - Filed Under Seal          CDK-0000187

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp   Document #: 106-10   Filed: 06/16/17   Page 14 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 14 of 17 PageID #:3889
Case: 17-2540   Document: 48   Filed: 08/22/2017   Pages: 100   (97 of 100)

providing any of the Services and Software to Client hereunder violates, or in CDK's opinion is likely to violate, any laws or governmental regulations, CDK may, upon written notice to Client, immediately cease providing the affected Services and Software to Client.

16.   **PROPRIETARY RIGHTS INFRINGEMENT.**

A.   With respect to the Equipment and all Software not developed by CDK, to the extent permitted under CDK's agreements with manufacturers of the Equipment and licensors of the non-CDK developed Software, CDK agrees to pass on to Client the Equipment manufacturers' and non-CDK developed Software licensors' proprietary rights infringement indemnification obligations; provided, however that Client acknowledges that the Equipment manufacturers and non-CDK developed Software licensors shall be fully responsible for the payment of any award under the terms of their agreements with CDK and that CDK shall not have any responsibility relating thereto.

B.   With respect to the Software developed by CDK, CDK shall indemnify and hold Client harmless from any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorney's fees) arising out of third party claims alleging any infringement by such Software of any United States patent, copyright, trademark or trade secret of any third party provided that:

(i)   promptly after becoming aware of the existence of any claim or litigation for which indemnity may be sought under this Paragraph 16.B., Client shall give CDK written notice thereof, together with any and all documentation related to such claim or litigation;

(ii)   CDK shall have full control over the defense and settlement of any claim or litigation for which indemnification is sought under this Paragraph 16.B.; and

(iii)   Client shall cooperate with CDK in every reasonable way, at CDK's expense, to facilitate the defense or settlement of any such claim or litigation.

If Client is enjoined or otherwise prohibited from using such Software, CDK may, at its sole expense and at CDK's option, (x) procure for Client the right to continue using such Software, or (y) substitute a non-infringing version of such Software so that such Software becomes non-infringing and still conforms to its applicable functional and technical specifications.  In the event that neither x) nor y) is feasible, CDK may terminate the license to the affected Software.

C.   CDK shall have no liability for any claims of patent, copyright, trademark or trade secret infringement (i) based on Client's use of the Equipment and/or the Software in combination with software, equipment, data or services not supplied by CDK as part of this Agreement (even if the procedures set forth in Paragraph 16.B above have been complied with in connection therewith), (ii) that results from any modification or attempted modification of such Equipment or Software made by anyone other than CDK, or its designee or (iii) that results from a use by Client of the Software or Equipment in a manner not authorized by the terms of this Agreement.  Client shall indemnify and hold CDK harmless from any and all losses, claims, damages, liabilities, costs and expenses (including reasonable attorney's fees) arising out of any action described in subsection (i), (ii) or (iii) of this subparagraph C.

{00015130. }   MSA US 7/1/2015

© 2015 CDK Global, LLC

13.

Highly Confidential - Filed Under Seal

JA 95

CDK-0000188

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917
Case: 3:17-cv-00318-jdp   Document #: 106-10   Filed: 06/16/17   Page 15 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 15 of 17 PageID #:3890
Case: 17-2540    Document: 48    Filed: 08/22/2017    Pages: 100    (98 of 100)

17.  **DEFAULT BY CLIENT; REMEDIES UPON DEFAULT.**

    A.    Should Client (i) fail to pay when due any sum of money due hereunder or pursuant to any of the Schedules hereof, (ii) default in the performance of any of its other obligations under this Agreement or any of the Schedules hereto, (iii) default in the performance of any of its obligations under any agreement with any affiliate of CDK (or any assignee thereof or successor thereto), or (iv) become the subject of any proceeding under the Bankruptcy Code or any state bankruptcy law, or become insolvent, or have any substantial part of its property become subject to any levy, seizure, assignment, application or sale for or by any creditor or governmental agency, or (v) sell, transfer or encumber a material portion of its assets out of the ordinary course of business and/or any ownership interest in the Client (collectively "Asset Sale") without CDK's written consent then, in any such event, CDK, at its option, may, upon written notice thereof, (A) terminate this Agreement and/or any or all of the Schedules hereto, (B) declare all amounts due and to become due under this Agreement (including in particular, Paragraph 17.B. below) and/or any or all of the Schedules hereto immediately due and payable, (C) whether or not this Agreement or a Schedule is terminated, render any Services or portions thereof inoperable and/or inaccessible to Client, and/or take immediate possession of any or all of the Software and items of Equipment not fully paid for, wherever situated, and for such purposes enter upon any premises without liability for so doing, and (D) sell, dispose of, hold, use or lease any items of Equipment not fully paid for, as CDK, in its sole discretion, may decide, and (E) refrain from honoring a request by Client to transfer the data of that Client electronically to, among others, another system service provider.  Client shall pay all of CDK's attorneys' fees, court costs, expenses and disbursements (collectively, the "Expenses") arising out of, or related to, this Agreement (whether or not Client is in default thereof), including but limited to all Expenses incurred in connection with: (a) the enforcement of any of CDK's remedies, (b) the defense of any claim or action brought against CDK, (c) any bankruptcy filing of the Client, including the protection of CDK's interests in any bankruptcy filing of Client, (d) the protection of all of CDK's rights under the Agreement, and (e) the pursuit of any and all aspect(s) of Client's compliance with its obligations under this Agreement.

The remedies contained in this Paragraph 17.A are cumulative and are in addition to all other rights and remedies available to CDK under this Agreement, by operation of law or otherwise.

In order to avoid an event of default as set forth in Subsection (v) above, in the event Client seeks to conduct an Asset Sale, it: (A) shall provide CDK with thirty (30) days advance written notice of any closing, (B) shall deliver copies of all contracts and documents relating to the Asset Sale twenty (20) days prior to any closing, and (C) hereby authorizes CDK to communicate with the transferee respecting this Agreement and the Asset Sale.

    B.    Client specifically acknowledges and agrees that if Client terminates this Agreement and/or any Schedule (or any Service, Maintenance Service, Support Service or license to any Software set forth on any Schedule) or CDK terminates this Agreement or any Schedule due to Client's default pursuant to Paragraph 17.A. above, CDK shall be entitled to recover agreed upon liquidated damages in an amount equal to the product of: (i) the number of full monthly periods remaining after the date of termination until the then end of the applicable Schedule(s) of this Agreement, as applicable; (ii) the applicable monthly charges  for the applicable Services, Software, Equipment, Support Services and Maintenance Services as of the effective time of any such termination; and (iii) .70 (representing a reduction factor which the parties have mutually determined to be fair and reasonable in the light of the anticipated harm

Highly Confidential - Filed Under Seal                                                              CDK-0000189

to be caused by the breach, the difficulties of proof of loss, and the unavailability of an adequate remedy).

18. **GENERAL.**

A. Client acknowledges that it has not been induced to enter into this Agreement by any representation or warranty not set forth in this Agreement. This Agreement contains the entire agreement of the parties with respect to their subject matter and supersedes all existing agreements and all other oral, written or other communications between them concerning their subject matter. This Agreement shall not be modified in any way except by a writing signed by both parties.

B. Client acknowledges and represents that it owns, and will continue to own throughout the term of this Agreement, at least a 51% interest in capital stock or equity, as applicable, in each and every site where the Software is used. Client further represents and warrants (i) it is not, nor will it be, on the U.S. Treasury Department's OFAC (Office of Foreign Asset Control) list of entities with which U.S. companies are forbidden to conduct business; (ii) it is in good standing, where applicable, with the manufacturer of the product sold by Client in the ordinary course of its business; and (iii) Client has not received notification of termination or any limitation thereto from its franchisor and has no reason to believe that such termination or limitation is being considered or pending in any manner whatsoever. Each of the above representations and warranties shall be continuing and shall be deemed remade concurrently with the execution of each additional Schedule.

C. This Agreement shall be binding upon and shall inure to the benefit of CDK and Client and their respective successors and permitted assigns.

D. If any provision of this Agreement) shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of this Agreement shall not in any way be affected or impaired thereby.

E. All notices shall be in writing and shall be forwarded by U.S. mail or recognized courier (such as Federal Express) and sent to CDK and Client at the addresses set forth on the first page of this Agreement or to any other address designated in writing hereafter. Any notice to CDK shall be sent Attention: President, CDK Global, LLC and Attention: General Counsel, CDK Global, LLC, with an email copy to compliance@cdk.com.

F. The headings in this Agreement are intended for convenience of reference and shall not affect their interpretation.

G. The individuals executing this Agreement on behalf of CDK and Client each represent and warrant that they are duly authorized by all necessary action to execute this Agreement on behalf of their respective principals.

H. A breach of any provision of Paragraph 4 or 6 of this Agreement will cause CDK or Client, as the case may be, irreparable injury and damage and therefore may be enjoined through injunctive proceedings in addition to any other rights or remedies which may be available to such party, at law or in equity.

I. This Agreement shall be governed in all respects by the laws of the State of Illinois, without giving effect to principles of conflicts of law. Client hereby consents to the jurisdiction of any federal or

{00015130. }  MSA US 7/1/2015

© 2015 CDK Global, LLC

15.

Highly Confidential - Filed Under Seal

CDK-0000190

DocuSign Envelope ID: FF7A6708-53D6-4DFF-9F0D-46A6BFA04917

Case: 3:17-cv-00318-jdp   Document #: 106-10   Filed: 06/16/17   Page 17 of 17
Case: 1:18-cv-00864 Document #: 172-1 Filed: 05/09/18 Page 17 of 17 PageID #:3892
Case: 17-2540   Document: 48   Filed: 08/22/2017   Pages: 100   (100 of 100)

state court located in the State of Illinois for all actions arising out of this Agreement and designates the County of Cook or the U.S. District Court, Northern District of Illinois as a proper venue for any such action against the Client and the exclusive forum for any action against CDK. Notwithstanding the foregoing, nothing contained herein shall prohibit CDK from commencing any necessary legal action or instituting any appropriate proceeding in any court of competent jurisdiction or venue. Client hereby knowingly and voluntarily waives any and all right to contest personal jurisdiction and to object to or seek to transfer venue regarding any litigation with CDK. Client agrees CDK shall be entitled to recover all attorneys' fees, expenses of litigation and travel expenses incurred by CDK and its counsel as a result of Client's violation of this provision of the Agreement in any manner whatsoever. Service of process may be effectuated upon the Client and any guarantor, by CDK or its attorneys or other designees serving any and all legal papers necessary to institute such proceeding by mailing them certified mail, return receipt requested, to the address set forth on the first page of the Agreement or to any other address designated in writing hereafter, and by the guarantor(s) on the instrument of guaranty and service shall be deemed completed upon the mailing of such process.

J. CLIENT HEREBY WAIVES A TRIAL BY JURY AND THE RIGHT TO INTERPOSE ANY COUNTERCLAIM OR OFFSET OF ANY NATURE OR DESCRIPTION IN ANY LITIGATION BETWEEN CDK AND CLIENT WITH RESPECT TO THIS AGREEMENT.

K. Facsimile signatures and signatures sent electronically via email or otherwise ("e-signature") shall have the same effect as original signatures. This Agreement may also be executed in counterparts.

| CDK | CLIENT |
|---|---|
| APPROVED BY: | APPROVED BY: |
| *Robert N. Karp (JB)* | |
| Signature – Authorized Officer | Signature – Authorized Officer |
| NAME: Robert N. Karp (JB) | NAME: |
| Type or Print | Type or Print |
| TITLE: President Retail Solutions North America | TITLE: |
| Type or Print | Type or Print |
| DATE: 8/6/2015 | DATE: 7/29/2015 |

**THIS AGREEMENT SHALL BECOME EFFECTIVE UPON BEING SIGNED BY AN AUTHORIZED OFFICER OF BOTH CDK AND CLIENT. CDK MARKETING REPRESENTATIVES DO NOT HAVE THE AUTHORITY TO BIND CDK.**

{00015130. }   MSA US 7/1/2015

© 2015 CDK Global, LLC

JA 98
Highly Confidential - Filed Under Seal
CDK-0000191