# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| ALL CASES | Magistrate Judge Jeffrey T. Gilbert |

# DEFENDANT CDK GLOBAL, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c)(1), Defendant CDK Global, LLC respectfully moves for a protective order precluding discovery of CDK's production to the Federal Trade Commission ("FTC") in relation to CDK's proposed acquisition of another Dealer Management System ("DMS") firm. Plaintiffs have asked CDK to produce that entire FTC production, even though CDK already has agreed to produce the plainly relevant portions of that collection—namely those produced in connection with the FTC's joint conduct investigation (the only FTC investigation bearing any resemblance to the MDL allegations). This production already consists of nearly 670,000 documents. Forcing CDK to produce the additional 1.6 million documents (over 3.5 million pages) that plaintiffs demand would be a colossal waste of time and resources. At best, plaintiffs' demand undercuts the very purpose of Rule 26(b)'s proportionality requirement by forcing CDK to undertake an extraordinarily resource-intensive document review whose costs easily outstrip any potential benefits to plaintiffs. At worst, plaintiffs hope to embark on a massive fishing exposition, not to receive documents material to their existing claims, but in the hopes of finding new material to expand their suit. For these reasons, the motion for protective order should be granted.

## BACKGROUND[1]

CDK has recently been involved in two proceedings before the Federal Trade Commission that bear on this discovery dispute. The first, which is ongoing, involves an FTC Civil Investigative Demand ("CID") into the allegations of conspiracy and joint conduct that various plaintiffs raise in this MDL. The second proceeding, which has now ended, involved CDK's proposed acquisition of AutoMate, another DMS provider. *See In re CDK Global, Inc.*, F.T.C. No. 9382 (Mar. 19, 2018). Different FTC teams ran each of the two proceedings, and CDK produced documents in each. After the FTC opposed the AutoMate acquisition and the parties abandoned it, the FTC's AutoMate team closed that proceeding and informed CDK that it would shortly destroy the documents that CDK produced in connection with that case.

Defendants have never disputed the discoverability of documents produced in response to the FTC CID, and CDK and Reynolds have provided the MDL plaintiffs with their respective productions. By contrast, CDK has consistently maintained that its FTC production regarding the proposed AutoMate acquisition is not discoverable in this litigation except to the extent that material therein is relevant to the MDL plaintiffs' allegations.

The discoverability of the AutoMate production first arose as an issue last fall, when Authenticom sought discovery of the entire production that CDK sent in response to the FTC's

---

[1] CDK fully complied with L.R. 37.2 before filing the instant motion. The parties engaged in three separate telephonic meet-and-confers, totaling almost six hours, over the course of three days (May 18 (approx. 10:00 a.m.-noon), 21 (approx. 9:00 a.m.-10:30 a.m. and noon-1:00), and 22 (approx. 2:00 p.m.-3:00 p.m.)). Michael Nemelka (and others), counsel from Kellogg Hansen (Individual Plaintiffs), John Hughes and Peggy Wedgworth from Milberg (Class Plaintiffs), Britt Miller (and others) from Mayer Brown (CDK and CVR), Brian Ross (and others) from Gibbs and Bruns (Reynolds), and Leo Caseria from Sheppard Mullin (Reynolds) participated. During those discussions, the issue of CDK's AutoMate production came up several times. During the parties' May 22 session, CDK's counsel made clear that it would not agree to produce its FTC AutoMate production *in toto*. Counsel confirmed that the parties were at impasse in CDK's May 24 letter to plaintiffs counsel. Ex. 1 at 5 (5/24/2018 Ltr. from Britt M. Miller to Michael N. Nemelka & Peggy J. Wedgworth). Although plaintiffs' counsel invited CDK to reverse its position (*see* Ex. 2 at 1-2 (5/31/2018 Ltr. from Michael N. Nemelka to Brian Ross, Britt M. Miller, and Leo D. Caseria)), they concurred that the parties are at impasse.

"Second Request," involving the proposed AutoMate acquisition. CDK resisted Authenticom's discovery demand but informed Authenticom that it was willing to produce:

> any pre-existing business documents produced by CDK to the Federal Trade Commission ("FTC") in connection with the FTC's Second Request regarding CDK's planned acquisition of AutoMate, as well as any factual summaries, data compilations, or presentations created and provided to the government for purposes of responding to the Second Request, *to the extent such documents are relevant to the claims and defenses in this litigation*, and are not protected from disclosure by an applicable privilege.

*See* Ex. 3 at 7 (11/15/2017 Ltr. from Britt M. Miller to Michael N. Nemelka) (emphasis added). Authenticom's counsel ultimately *accepted* that offer and requested no additional documents. *See* Ex. 4 at 12 (11/24/2017 Ltr. from Michael N. Nemelka to Brian T. Ross & Britt M. Miller). CDK recently reiterated to Authenticom that it only considers AutoMate-related documents that are relevant to this case to be discoverable. *See* Ex. 5 at 18 (CDK's Responses & Objections to Authenticom's Second Set of RFPs).

To that end, CDK already has furnished plaintiffs with more than 670,000 documents from the AutoMate production—the entire portion of that production that CDK produced in response to the CID. Given that volume, it would have been reasonable for CDK to stop there. Instead, CDK intends to run the agreed *Authenticom* search terms against the AutoMate productions of the four non-CID *Authenticom* custodians and intends to review those documents for responsiveness to all of plaintiffs' document requests (not just Authenticom's). It further intends to run the ultimate set of agreed-upon (or court-ordered) search terms against the AutoMate productions of any additional agreed-upon (or court-ordered) custodians and review the resulting documents for responsiveness. In other words, CDK intends to treat the documents in the AutoMate collection the same as it will treat non-AutoMate/non-CID documents—*i.e.*, limited to agreed-upon (or court-ordered) custodians and search terms. But plaintiffs want more.

3

More than five months after agreeing to a limited production of AutoMate documents, Authenticom's counsel (buoyed by Class Counsel) has done an about-face. In a recent communication to CDK and Reynolds, counsel insisted that *all* documents—both preexisting business documents and legal analyses—produced to the FTC in connection with the proposed AutoMate acquisition, as well as the unredacted FTC complaint,[2] are discoverable and must be produced. *See* Ex. 7 at 2 (5/2/2018 Ltr. from Michael N. Nemelka to Aundrea K. Gulley & Britt M. Miller); Ex. 2 at 1-2.

In response to plaintiffs' change in position, CDK has indicated that it "stands on its objection that Authenticom's repudiation of its [2017] agreement . . . is unjustified and inappropriate." Ex. 1 at 5. CDK has informed plaintiffs, however, that it remains willing to honor the parties' original agreement. *See id.*

## ARGUMENT

To be discoverable, information must be "*relevant* to a[] party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). The material plaintiffs seek, to the extent it has not already been produced, consists of more than 3.5 million pages. Producing this material would impose significant costs on CDK, which would need to review the voluminous FTC production from scratch—both for substance (as it relates, if at all, to the instant litigation) and for confidentiality designations pursuant to the Protective Order. The likelihood that this massive body of documents would yield anything that is both non-cumulative and meaningful to this litigation is wholly out of proportion to the time and resources needed to produce it.

---

[2] As the Court can see from the face of the redacted complaint, the FTC redacted very little from the publicly-filed version, and none of the redactions changes the fact that the complaint relates to issues separate and distinct from those presented in this litigation. *See* Ex. 6 (*In the Matter of CDK Global, Inc.*, FTC Docket No. 9382). CDK should not be required to comply with plaintiffs' summary demand for its production.

Pursuant to Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." There is ample good cause here. Indeed, it is difficult to imagine a production request that would impose a burden more grossly out of proportion with the potential to yield relevant material.

1. The FTC's CID generally aims at the conduct at issue in the MDL—defendants' alleged conspiracy and joint conduct—and plaintiffs already possess a complete copy of CDK's response to the CID. In contrast, the FTC's separate proceeding on CDK's proposed acquisition of AutoMate had nothing to do with alleged joint conduct between Reynolds and CDK. Nor did that proceeding involve any purported effort by CDK to monopolize the data integration or application software markets—the only markets where MDL plaintiffs allege attempted, unilateral monopolization. Rather, the FTC's AutoMate proceeding focused entirely on the proposed acquisition's possible anti-competitive effects *in the DMS market*, *see In the Matter of CDK Global, Inc.*, FTC Docket No. 9382 (Mar. 19, 2018), and no MDL plaintiff contends that CDK is attempting to monopolize that market.

Moreover, to the extent material produced in the AutoMate proceeding was relevant to the MDL allegations, plaintiffs *already have* a substantial portion of that material, as it was part of the CID production. Eight of the custodians who produced documents to the FTC in the AutoMate proceeding also produced documents in response to the CID, and for these custodians, the productions were the same in both matters. Additional documents for seven of these eight custodians (as well as four other AutoMate/non-CID custodians) will be produced as these custodians also serve as Authenticom custodians in the MDL. And plaintiffs will receive still more material from any additional AutoMate/non-CID custodians for whom CDK is obligated (either by agreement or court-order) to produce documents. Finally, should plaintiffs claim that information on CDK's share of the

5

DMS market is relevant to the MDL (insofar as that information bears on the effect of defendants' dealer and software vendor contracts on *other* markets), CDK has already produced responsive information, and agreed to produce still more, on that topic.

Altogether, CDK has produced more than 820,000 documents to the MDL plaintiffs (over 2.4 million pages), most of which also were produced in response to the FTC's CID. But the FTC determined that another 42 AutoMate-related custodians (with another 3.5 million pages of material) possessed nothing of relevance to the CID, and therefore nothing material to the conspiracy claims in the MDL. The FTC's decision to exclude these individuals from its joint-conduct inquiry, and to destroy CDK's AutoMate-related production even as the CID proceeding continues, further supports CDK's position that these custodians have no information uniquely relevant to the MDL.

Nor is there anything to plaintiffs' theory that the entire AutoMate production suddenly became relevant when "[t]he FTC blocked CDK's acquisition of AutoMate" in March of this year. Ex. 8 at 2 (5/8/18 Ltr. from Michael N. Nemelka to Aundrea K. Gulley & Britt M. Miller). Plaintiffs contend that the FTC opposed the purchase based on its possible effects not only on the DMS market, but also on the "data integration[] and application markets," *id.*, which are potentially relevant to the MDL. But this is untrue. The FTC defined the "relevant market" in that case as the "DMS" market "for franchise dealers in the United States." Ex. 6 at ¶22. That is the only market discussed in the complaint. Indeed, if the FTC had been concerned with the data integration and software application markets in the AutoMate proceeding, then surely the FTC joint-conduct team would have sought the same custodians and documents that their AutoMate counterparts did. They have not.

2. Courts routinely block discovery where, as here, it is irrelevant to the claims being litigated. *See, e.g.*, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 801 F.3d 758, 766 (7th

Cir. 2015) (affirming grant of protective order precluding depositions, where plaintiffs did not present "any evidence that the six depositions, if permitted, would yield relevant information"); *Endotach LLC v. Cook Med. Inc.*, No. 1:14-mc-00005-LJM-DKL, 2014 WL 839991, at *2 (S.D. Ind. Mar. 4, 2014) (granting motion for protective order covering deposition topics "irrelevant to this litigation"); *Borom v. Town of Merrillville*, No. 2:07 CV 98, 2008 WL 2003075, at *5 (N.D. Ind. May 8, 2008) (granting motion for protective order covering interrogatory that was "irrelevant to the claims and defenses germane to the case"); *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1113 (N.D. Ill. 2004) (granting motion for protective order blocking discovery on activities "irrelevant to this action"), *aff'd*, No. 03 C 9370, 2005 WL 783057 (N.D. Ill. Mar. 18, 2005).

The fact that CDK produced these documents in another proceeding is immaterial, for the FTC proceeding addressed different issues. "[J]ust because the information was produced in another lawsuit . . . does not mean that it should be produced in this lawsuit"; rather, a "party's requested discovery must be tied to the particular claims at issue in [this] case." *Moore v. Morgan Stanley & Co., Inc.*, No. 07 C 5606, 2008 WL 4681942, at *2, *5 (N.D. Ill. May 30, 2008). In seeking access to material previously produced to the government, therefore, parties may not rely on "a general contention that every communication and work production related to the regulatory investigations is 'likely' to contain additional relevant information," as plaintiffs do here. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-CV-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016); *see, e.g.*, *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP99-0690-C-Y/G, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) (denying plaintiffs' motion to compel material defendants produced in response to Department of Justice CID), *aff'd in part and rev'd in part on other grounds*, 317 F.3d 703 (7th Cir. 2003).

7

MDL plaintiffs have received (or will receive) the FTC-produced documents to which they are entitled from CDK, already totaling more than 2.2 million pages of material, including relevant documents from CDK's production to the FTC in the AutoMate proceeding. Plaintiffs are not entitled to anything additional from that production. *See, e.g.*, *In re Schering-Plough Corp.*, No. 06-5774 (SRC), 2008 WL 11381889, at *4 (D.N.J. Apr. 22, 2008) (permitting discovery of portion of defendant's production to government that was relevant to plaintiffs' claims but denying discovery of entire production, given that "this Court cannot conclude that the *entirety* of the information turned over to the government during its investigation is relevant"); *see also In re Molycorp., Inc. Sec. Litig.*, No. 12-cv-00292-RM-KMT, 2016 WL 9735753, at *7 (D. Col. May 25, 2016) ("to the extent that there are documents in the SEC file that are relevant to this case, then they will be produced in response to the Plaintiffs' requests for production").

3. Moreover, CDK need not establish that the AutoMate production fails to contain *any* document relevant to the MDL litigation. Rule 26(b) prohibits discovery that is not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). And determining whether discovery is proportional requires courts to consider "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The amendments adding these requirements to the rule in 2015 were "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production," even "of relevant information." *Certain Underwriters at Lloyd's v. Nat'l RR. Passenger Corp.*, 318 F.R.D. 9, 14 (E.D.N.Y. 2016) (citations omitted).

In short, Rule 26 protects against discovery requests where the costs of review and production outstrip the potential benefits. *See, e.g.*, *Vallejo v. Amgen, Inc.*, No. 8:14CV50, 2016 WL 2986250, at *4 (D. Neb. May 20, 2016) (plaintiffs' discovery request failed proportionality

8

requirement considering, among other things, "the volume of reports Plaintiff's requests would return" and "the amount of irrelevant information likely to be included"); *Knauf Insulation, LLC v. Johns Manville Corp.*, No. 1:15-cv-00111-WTL-MJD, 2015 WL 7089725, at *2 (S.D. Ind. Nov. 13, 2015) (courts "may limit even relevant discovery if the burden outweighs the benefits"); *Bayer Healthcare LLC v. Norbrook Labs., Ltd.*, No. 08-C-953, 2011 WL 6046602, at *5 (E.D. Wis. Dec. 6, 2011) (denying motion to compel "[b]ecause the burden that the discovery would impose upon [defendant] outweighs its relevance"); *Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2006 WL 3445742, at *4 (N.D. Ill. Nov. 22, 2006) (affirming magistrate judge's denial of motion to compel because "the burden on [defendant] in having to produce the documents sought is immense" and information was only "marginally probative").

Plaintiffs' request for the FTC AutoMate production pushes well beyond the point where cost overwhelms potential value. CDK produced more than 3.5 *million* pages in the AutoMate proceeding, from 42 different custodians, that it did not produce in response to the CID. And it has already agreed to review additional documents as described above. But to comply with plaintiffs' request, CDK's counsel in this matter—who do not represent CDK in connection with either FTC proceeding—would need to review *all* of the 1.6 million documents not only to determine what, if anything, is relevant for purposes of defending *this* case, but to make the appropriate confidentiality designations pursuant to the Protective Order.[3] That undertaking would be onerous in the best of circumstances and burdensome in the extreme on anything like the current discovery schedule. Rule 26 forbids such wildly out-of-proportion requests. "[T]he mere possibility of locating some needle in the haystack . . . does not warrant the expense [defendant] would incur in reviewing it." *Kay Beer*

---

[3] Plaintiffs previously have taken the position that they will not accept any "bulk" confidentiality designations of CDK's FTC production (despite previously agreeing to such designations), but rather insist that CDK assign a confidentiality designation to each document. *See* Ex. 9 (E-mail exchange between Britt M. Miller and Michael M. Nemelka). We have no reason to believe they would take a different position with respect to the AutoMate production.

9

*Distrib., Inc. v. Energy Brands, Inc.*, No. 07-C-1068, 2009 WL 1649592, at *4 (E.D. Wis. June 10, 2009); *see Alaska Elec. Pension Fund*, 2016 WL 6779901, at *3 (request for "all" information, in addition to more than 1.5 million documents previously produced to regulatory agencies in connection with investigations, failed Rule 26's marginal utility requirement); *Dobro v. Allstate Ins. Co.*, No. 16cv1187-AJB (BLM), 2016 WL 4595149, at *8 (S.D. Cal. Sep. 2, 2016) ("[A]ssertion that some of the 10,082 files may contain relevant claims was insufficient to justify the extremely time- and labor-intensive search.").

4. Finally, to the extent plaintiffs are hoping to find material they can use to support *new* claims in this litigation, courts "are unanimous in prohibiting discovery from being used as a 'fishing expedition'" in this way. *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 946396, at *4 (N.D. Ill. Feb. 20, 2018) (collecting cases). "The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest." *O'Toole v. Sears Roebuck & Co.*, No. 11 C 4611, 2014 WL 1388660, at *3 (N.D. Ill. Apr. 10, 2014).

Accordingly, the Court should issue a protective order barring production of the remaining portions of CDK's AutoMate production to the FTC. The AutoMate proceeding did not involve plaintiffs' MDL claims, and plaintiffs have already received relevant portions of that production. Requiring CDK to devote the time and resources needed to assess and produce the remaining 1.6 million documents is the very abuse Rule 26(b) is designed to prevent.

## CONCLUSION

The Court should enter a protective order relieving CDK of any obligation to produce the entirety of its production to the FTC related to the agency's review of the AutoMate transaction and limiting any production obligations to those originally agreed to by CDK and counsel for Authenticom.

Dated: June 5, 2018

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

## **CERTIFICATE OF SERVICE**

      I, Britt M. Miller, an attorney, hereby certify that on June 5, 2018, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                    */s/ Britt M. Miller*
                                                    Britt M. Miller
                                                    MAYER BROWN LLP
                                                    71 South Wacker Drive
                                                    Chicago, IL 60606
                                                    Phone: (312) 782-0600
                                                    Fax: (312) 701-7711
                                                    E-mail: bmiller@mayerbrown.com