**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| | Hon. Robert M. Dow, Jr. |
| This Document Relates to:<br>*Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC,*<br>Case No. 18 C 2521 (N.D. Ill.) | Jury Trial Demanded |

**PLAINTIFF LOOP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR APPOINTMENT OF DEREK T. HO OF KELLOGG HANSEN
AS INTERIM LEAD CLASS COUNSEL FOR THE VENDOR CLASS ACTION**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

LEGAL STANDARD ....................................................................................................... 8

ARGUMENT .................................................................................................................... 9

    I.      Rule 23(g)(1)(A)(i): Kellogg Hansen Did Extensive Work to Identify and
          Investigate the Claims in This MDL ............................................................. 9

    II.     Rule 23(g)(1)(A)(ii): Kellogg Hansen Has Extensive Experience In
          Handling Complex Litigation and Class Claims ........................................ 10

    III.    Rule 23(g)(1)(A)(iii): Kellogg Hansen Has Unrivaled Knowledge of
          Antitrust Law ............................................................................................. 13

    IV.    Rule 23(g)(1)(A)(iv): Kellogg Hansen Has the Resources to Vigorously
          Represent the Class ..................................................................................... 13

    V.     Rule 23(g)(4): Kellogg Hansen Will Fairly and Adequately Represent the
          Interests of the Vendor Class ..................................................................... 14

CONCLUSION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013) ..................................................... 11

*Amgen Inc. et al. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013) ............................... 12

*Asbestos School Litig., In re*, 1986 WL 13882 (E.D. Pa. Dec. 4, 1986) ...................................... 15

*Authenticom, Inc. v. CDK Global, LLC*,

    874 F.3d 1019 (7th Cir. 2017) ........................................................................................ 4, 5

    2017 WL 3017048 (W.D. Wis. July 14, 2017),
    *vacated and remanded*, 874 F.3d 1019 (7th Cir. 2017) ................................................. 4, 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................ 11

*Bell v. Disner*, 2018 WL 296035 (W.D.N.C. Jan. 4, 2018) .......................................................... 14

*Cappello v. Franciscan Alliance, Inc.*, 2017 WL 781609 (N.D. Ind. Feb. 28, 2017) ................... 9

*Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002),
    *cert. denied*, 537 U.S. 1148 (2003) .................................................................................. 11

*Dairy Farmers of Am., Inc. Cheese Antitrust Litig., In re*, 2013 WL 6050431
    (N.D. Ill. Nov. 15, 2013) .................................................................................................. 10

*Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26 (1998) .................................................................... 12

*Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D. Ill. 2008) ............................................... 14

*Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505 (D.N.D. 2005) ............................................... 14

*Nat'l Football League Players Concussion Injury Litig., In re*,
    821 F.3d 410 (3d Cir. 2016) ............................................................................................. 14

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438 (2009) .......................................... 11

*Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323 (N.D. Ill. 2010) ....................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016) ......................................................... 12

*Urethane Antitrust Litig., In re*, 768 F.3d 1245 (10th Cir. 2014) ................................................ 11

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) .............. 11

*Walker v. Discover Fin. Servs.*, 2011 WL 2160889 (N.D. Ill. May 26, 2011) .............................. 9

*White v. Nat'l Football League*, 822 F. Supp. 1389 (D. Minn. 1993) .......................................... 14

## STATUTES AND RULES

28 U.S.C. § 1407 ............................................................................................................ 6

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................. 8

Fed. R. Civ. P. 23 .............................................................................................. 1, 2, 7, 8, 9

## OTHER AUTHORITIES

Complaint, *In the Matter of CDK Global, Inc., et al.*, Federal Trade Commission, Docket No.
9382 (March 19, 2018), www.ftc.gov/system/files/documents/cases/docket_no_9382
_cdk_automate_part_3_complaint_redacted_public_version.pdf ...................................... 6

*Dial Corp. v. News Corp.*, No. 13-cv-06802 (S.D.N.Y.) ................................................. 12

Manual for Complex Litigation (Fourth) (2004) ............................................................ 9

1 McLaughlin on Class Actions (14th ed.) (updated Oct. 2017) .................................... 15

Memorandum and Opinion, *In re Urethane Antitrust Litig.*, MDL 1616,
No. 04-cv-1616, (D. Kan. July 29, 2016), Dkt. 3273 ....................................... 11

Minute Entry, *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL 2147,
No. 10-cv-02278 (N.D. Ill. June 23, 2010) (St. Eve, J.), Dkt. 47 ....................... 10

Mot. of Defs. for Transfer and Consolidation of Related Actions Pursuant to
28 U.S.C. § 1407 (J.P.M.L. Nov. 7, 2017), Dkt. 1-1 ........................................ 6

1 *Newberg on Class Actions* (5th ed.) ........................................................................... 14

Order, *Kurgan v. Chiro One Wellness Centers, LLC*,
No. 10-cv-1899, Dkt. 362 (N.D. Ill. April 27, 2016) (Dow, J.) ........................... 10

*Steel Antitrust Litig., In re*, 08-cv-5214 (N.D. Ill.) ...................................................... 12

Pursuant to Federal Rule of Civil Procedure 23(g), Plaintiff Loop, LLC ("AutoLoop") respectfully moves for the appointment of Derek T. Ho of Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen" or "the firm") as Interim Lead Class Counsel for the putative class of automotive software solutions vendors ("vendor class") as set forth in AutoLoop's vendor class action complaint filed on June 5, 2018. *See* Amended Complaint – Class Action, *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, No. 18 C 864 (N.D. Ill.), Dkt. 194 ("Vendor Class Complaint"). The Vendor Class Complaint is the only putative class action in this MDL on behalf of vendors, which are the direct purchasers of data integration services – the core focus of the antitrust claims in this MDL. *See* Memorandum Opinion and Order, *Authenticom, Inc. v. CDK Global, LLC et al.*, No. 18 C 864 (N.D. Ill.), at 42-43 (May 14, 2018), Dkt. 176 ("*Authenticom* MTD Op."). As indicated by this Court's prior appointment of Mr. Ho as Co-Lead MDL Counsel, *see* Order, Dkt. 123, Mr. Ho and Kellogg Hansen have unique experience in developing and litigating this case as well as extensive antitrust litigation experience. They will therefore more than adequately and fairly represent the vendor class.

## INTRODUCTION

Kellogg Hansen is the only firm that represents vendors in this MDL. It filed an individual complaint on behalf of the largest vendor in the nation – Cox Automotive – in December 2017. On April 9, 2018, AutoLoop filed its original complaint, also with Kellogg Hansen as its lead counsel. Subsequently, AutoLoop authorized Kellogg Hansen to amend its complaint to include class allegations. Accordingly, on June 5, 2018, AutoLoop filed an amended complaint that seeks damages and injunctive relief under the Sherman Act on behalf of a nationwide class of vendors, as well as similar relief on behalf of a Florida subclass for violations of Florida state law. *See* Vendor Class Compl., Dkt. 194. The Vendor Class Complaint is the only putative class action in this MDL on behalf of vendors.

Mr. Ho and Kellogg Hansen are ideally suited to lead the litigation efforts on behalf of that putative class of vendors. This Court already appointed Mr. Ho as Co-Lead Counsel for the MDL. In doing so, the Court recognized that Mr. Ho and Kellogg Hansen had investigated and developed the legal and factual theories at the heart of this MDL; had spent more than 16,000 attorney hours in an intense, year-plus effort to get the cases off the ground; and have deep experience in both complex litigation and antitrust law. Those same factors support Mr. Ho's appointment as Interim Lead Class Counsel under Fed. R. Civ. P. 23(g).

Appointing Mr. Ho as Interim Lead Class Counsel for the putative vendor class does not require any changes to the overarching MDL leadership structure, because Mr. Ho is already Co-Lead Counsel for the MDL. Moreover, Kellogg Hansen is prepared to litigate this case on behalf of the vendor class on the Court's existing pretrial schedule. Appointing Mr. Ho to serve as Interim Lead Class Counsel will facilitate the streamlined integration of the vendor class claims into the ongoing MDL proceedings.

## BACKGROUND

The procedural history that led to this MDL is recited in detail in the Motion for Appointment of Derek T. Ho as MDL Lead Counsel. *See* Dkt. 91 ("MDL Lead Counsel Motion"). The factual background for the claims central to this MDL is set forth in detail in, among other places, Judge St. Eve's Memorandum Opinion on Defendants' motions to dismiss in *Authenticom*. *See* Dkt. 176. We emphasize the most salient points here, while referring the Court to those prior docket entries for further details.

**1.** This case centers on the market for what are known in the automotive industry as "data integration services." Data fuels the retail automotive business just as gasoline fuels cars. When a customer purchases (or services) a car at a dealership, dealers collect numerous pieces of data, such as the customer's name and address. Dealers store that information on a database that

2

is part of the dealership's dealer management system or "DMS." "Specifically, DMS software handles information regarding sales, financing, part and vehicle inventory, repair and service, accounting, payroll, human resources, marketing, and still more." *Authenticom* MTD Op. at 5, Dkt. 176. CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") are the dominant providers of DMS to the 18,000 dealerships that operate in the U.S. *See id.* at 6. Measured by dealer-customers, they together control approximately 75 percent of the market; measured by the number of vehicles sold, their collective control increases to approximately 90 percent. *See id.* Importantly, although dealerships store their data on the DMS database, it remains the dealership's data. *See id.* at 7 ("Dealers 'own' their data in the DMSs.").

"Critical as it is, a dealer's DMS is not the only data service upon which it relies." *See id.* at 6. Most dealers also rely on third-party software applications for their day-to-day operations. For example, such software applications help dealerships track vehicle inventory, customer information, service and repair appointments, and recalls. *See id.* One example is Book, a software application offered by AutoLoop that allows dealers to provide customers with online scheduling of service appointments. For these applications to function, the software developers – known in the industry as software "vendors" – need access to the dealer data on the DMSs.

Neither car dealers nor software vendors are in the business of obtaining dealers' data from the DMS. Rather, there is a separate market for "data integration services," in which "data integrators" generally provide vendors with the service of extracting dealers' data from the DMS, putting it in a standardized format, and delivering it to vendors to facilitate their development of software programs that enhance dealerships' operations. *See id.* at 6-8. Dealers authorize data integrators to access the DMS on their behalf, but it is the vendors that purchase and pay for data integration services. *See id.* at 7 ("Although dealers generally choose whether to authorize

3

integrators' access to the DMSs, they do not directly pay integrators. Vendors, as the customers receiving the integrators' data output, make the payments."). Vendors are therefore the direct purchasers of data integration services.

Historically, CDK and Reynolds competed against other third-party data integrators to provide data integration services to vendors. Authenticom, Inc. ("Authenticom") was the largest independent data integrator in the market as of 2015, and is the only independent data integrator remaining in the market today. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *4 (W.D. Wis. July 14, 2017) ("*Authenticom I*"), *vacated and remanded*, *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2017) ("*Authenticom II*"). The claim at the heart of this MDL is that CDK and Reynolds conspired in 2015 to exclude Authenticom and other independent data integrators from the market, in order to monopolize the market for themselves. Defendants' elimination of Authenticom allowed them to raise their prices for data integration services to vendors dramatically. Whereas Authenticom charges vendors $50 per dealer for its services, Reynolds now charges "a whopping $893 in the aftermath of its agreements with CDK." *See Authenticom II*, 874 F.3d at 1023. Prior to its 2015 conspiracy, CDK's prices for data integration were similar to Authenticom's; since the conspiracy, CDK has raised its prices to vendors to "$735 per month for the identical service." *Id.*

2. The facts at the heart of this MDL were uncovered through Kellogg Hansen's extensive investigation starting in 2016 – without the aid of any governmental agency – into the Defendants' collusive efforts to exclude independent data integrators from the market. Based on that extensive factual investigation, Kellogg Hansen filed lawsuits on behalf of Motor Vehicle Software Corporation ("MVSC") in February 2017 and Authenticom in May 2017. *See* Complaint, *MVSC v. CDK Global, Inc.*, No. 17-cv-896 (C.D. Cal.), Dkt. 1 ("MVSC Complaint")

and Complaint, *Authenticom, Inc. v. CDK Global, LLC,* No. 17-318 (W.D. Wis.), Dkt. 1

("Authenticom Complaint"). Those complaints set forth the factual and legal theories that

generated all of the subsequent actions in this MDL – namely, that CDK and Reynolds conspired

to drive independent providers of data integration services (including Authenticom) out of the

market, divide that market between them, and thereby allow the Defendants to reduce output and

charge supra-competitive prices for data integration services.

Kellogg Hansen litigated those claims zealously and successfully for months before any

follow-on cases were filed. Most prominently, in *Authenticom*, Kellogg Hansen successfully

obtained a preliminary injunction after a two-and-a-half-day hearing featuring 15 live witnesses,

seven experts, and thousands of pages of briefing, statements of facts, and exhibits. Chief Judge

James Peterson of the Western District of Wisconsin credited Authenticom's evidentiary

showing in holding that Authenticom had established a likelihood of success on the merits. *See*

*Authenticom I*, 2017 WL 3017048, at *5-8. The antitrust publication *Global Competition Review*

named Mr. Ho, along with his partners Michael Nemelka and Aaron Panner, "Litigators of the

Week" for their victory. On appeal, the Seventh Circuit did not disturb Chief Judge Peterson's

findings regarding Authenticom's likelihood of success, although it found the scope of the

preliminary injunction overbroad. *See Authenticom II*, 874 F.3d at 1026 (describing

Authenticom's antitrust case as "potentially sound" and properly resolved "[a]fter trial").

Kellogg Hansen's filing of the *MVSC* and *Authenticom* complaints – as well as the

evidence Authenticom adduced at the preliminary injunction hearing – helped prompt the FTC to

open its investigation into Defendants' practices in mid-2017. That investigation already has

begun to bear fruit for consumers: the FTC announced in March 2018 that CDK had abandoned

its announced acquisition of DMS competitor Auto/Mate after the FTC announced it would challenge the acquisition as anticompetitive.[1]

Starting in October 2017, three months after Kellogg Hansen obtained preliminary injunctive relief on behalf of Authenticom, more than a dozen other plaintiffs' firms filed putative class actions on behalf of car dealerships, alleging that they were harmed by the conduct set forth in the *Authenticom* and *MVSC* complaints. The dealership class actions "cit[ed] extensively to the *Authenticom* and *MVSC* filings as support for its factual allegations" and "piggyback[ed] on the allegations" of those complaints.[2] Indeed, the follow-on dealership class complaints copied the Authenticom Complaint verbatim; relied upon the Authenticom Complaint and preliminary injunction proceedings for factual support; or copied Authenticom's substantive allegations while altering a few words. *See* MDL Lead Counsel Motion, Dkt. 91 at 17 nn.13-16.

In December 2017, Kellogg Hansen filed an individual lawsuit on behalf of Cox Automotive, Inc. and its affiliates ("Cox Automotive") – the nation's largest automotive software vendor. Cox Automotive's complaint alleges that, as a direct purchaser of data integration services, it suffered antitrust injury due to the conspiracy between CDK and Reynolds to exclude third-party data integrators, and due to the other anti-competitive conduct alleged in the *Authenticom* Complaint. *See* Complaint, *Cox Automotive, Inc. et. al. v. CDK Global, Inc.*, No. 17-cv-00925 (W.D. Wis.), Dkt. 1. The complaint does not seek to represent any class.

---

[1] *See* Complaint, *In the Matter of CDK Global, Inc., et al.*, Federal Trade Commission, Docket No. 9382 (March 19, 2018), www.ftc.gov/system/files/documents/cases/docket_no_9382 _cdk_automate_part_3_complaint_redacted_public_version.pdf.

[2] Mot. of Defs. for Transfer and Consolidation of Related Actions Pursuant to 28 U.S.C. § 1407, at 5, 10, 11 (J.P.M.L. Nov. 7, 2017), Dkt. 1-1.

**3.** On February 1, 2018, the J.P.M.L. granted Defendants' motion for MDL consolidation and transferred the related cases to this Court. *See* Transfer Order, J.P.M.L. No. 2817, Dkt. 63. This Court then requested motions for appointment as lead MDL counsel.

On April 6, 2018, this Court appointed Mr. Ho as Co-Lead Counsel for the MDL. Order, Dkt. 106. In appointing Mr. Ho as Co-Lead MDL Counsel, this Court recognized "all of the work that you have already done in this case," including Kellogg Hansen's efforts in expending, as of the April 6 hearing, 16,000 attorney hours to develop and "litigate vigorously" the *Authenticom*, *MVSC*, and *Cox Automotive* cases prior to their transfer to this Court. *See* Hearing Tr. at 4-5 (April 6, 2018), Dkt. 116. The Court acknowledged that Kellogg Hansen was "the first one out of the box" and "put the theories together," *id.* at 5, sparking the slew of later-filed dealership class actions that prompted this MDL proceeding. The Court also cited Mr. Ho and Kellogg Hansen's "extensive experience in antitrust law." *Id.* at 4-5. The Court indicated at the April 6 hearing that it would appoint a second MDL lead counsel, in addition to Mr. Ho, but deferred decision on whom to appoint.

On April 16, 2018, the Court appointed Peggy J. Wedgworth of Milberg Tadler Phillips Grossman LLP as the second Co-Lead Counsel for the MDL and Interim Lead Class Counsel for the putative dealership class action, finding that she "more than meet[s] the requirements of Rule 23(g)(1)(A)." Order at 1, Dkt. 123. The Court also appointed Robert A. Clifford of Clifford Law Offices as Liaison Counsel; Professor Samuel Issacharoff of NYU Law School as MDL Coordinating Counsel; and a three-firm Plaintiffs' Steering Committee consisting of Leonard A. Bellavia of Bellavia Blatt, PC, Daniel Hedlund and Michelle Looby of Gustafson Glueck, PLLC, and James Barz and Frank Richter of Robbins Geller Rudman & Dowd LLP. *See id.* at 2.

4.     On April 9, 2016, AutoLoop filed its original complaint through Kellogg Hansen as lead counsel.  *See* Complaint, *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, No. 18-2521 (N.D. Ill.), Dkt. 1 ("AutoLoop Complaint"); *see also* Hearing Tr. at 18:6-11 (March 12, 2018), Dkt. 65 (statement by Mr. Ho that Kellogg Hansen anticipated filing a lawsuit on behalf of another vendor).  AutoLoop is an automotive vendor that provides marketing, sales, and service software applications to more than 2,100 car dealers nationwide.  AutoLoop Compl. ¶¶ 6, 30. On behalf of AutoLoop, Kellogg Hansen brought antitrust and state-law claims against CDK, alleging, *inter alia*, that CDK and non-party co-conspirator Reynolds conspired to eliminate competition in the market for dealer data integration – thus allowing CDK to charge AutoLoop supra-competitive prices for data integration services.

On June 5, 2018, AutoLoop amended its complaint to include class allegations under Federal Rule of Civil Procedure 23.  *See* Vendor Class Compl., Dkt. 194.[3]  In particular, AutoLoop seeks to assert claims under Section 1 and Section 2 of the Sherman Act on behalf of a nationwide direct-purchaser class consisting of all vendors located in the U.S. that purchased data integration services from CDK or Reynolds from April 9, 2014 to the present.  *See id.* ¶ 161. AutoLoop, which is based in Florida, also seeks to assert Florida state-law claims on behalf of a sub-class of vendors located in the U.S. that purchased data integration services from CDK or Reynolds to serve car dealers in Florida.  *Id.* ¶¶ 163-166.

## LEGAL STANDARD

Under Fed. R. Civ. P. 23(g)(3), the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  *See also*

---

[3] AutoLoop amended its complaint as of right under Federal Rule of Civil Procedure 15(a)(1)(B).  On May 14, 2018, CDK's counsel agreed in writing to extend the 21-day period for AutoLoop to amend its complaint as of right from May 30, 2018, to June 6, 2018.

Manual for Complex Litigation (Fourth) § 21.11 (2004). In turn, Rule 23(g)(1) lays out four factors that this Court considers in determining the appointment of interim class counsel: "an applicant's (1) work in identifying or investigating potential claims in the action, (2) experience in handling complex litigation and the types of claims asserted in this action, (3) knowledge of applicable law, and (4) ability to commit sufficient resources to representing the class." *Walker v. Discover Fin. Servs.*, 2011 WL 2160889, at *2 (N.D. Ill. May 26, 2011). Where, as in this case, only "one applicant seeks appointment as class counsel," the appointment is proper as long as the applicant is adequate under the Rule 23(g)(1) factors and "will fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (g)(2), (g)(4); *see, e.g.*, *Cappello v. Franciscan Alliance, Inc.*, 2017 WL 781609, at *3 (N.D. Ind. Feb. 28, 2017).

## ARGUMENT

The Court should appoint Mr. Ho as Interim Lead Class Counsel for the vendor class. Mr. Ho's firm, Kellogg Hansen, represents the sole named plaintiff, AutoLoop, in the only putative vendor class action in this MDL; he is the only applicant for Interim Lead Class Counsel of that putative class; and his appointment meets the requirements of Rule 23(g)(1) for largely the same reasons that this Court previously appointed Mr. Ho as Co-Lead Counsel for the MDL.

## I.      Rule 23(g)(1)(A)(i): Kellogg Hansen Did Extensive Work to Identify and Investigate the Claims in This MDL

As this Court already recognized, Kellogg Hansen was "the first [firm] out of the box" and "put the theories [in this MDL] together" – devoting more than 16,000 attorney hours and incurring more than $200,000 in unreimbursed out-of-pocket costs in a year-plus investigatory and litigation effort (an investment that has only increased over the last two months). *See* Hearing Tr. at 4-5 (April 6, 2018), Dkt. 116. Kellogg Hansen uncovered and substantiated the 2015 conspiracy between CDK and Reynolds and developed the core factual allegations and

9

legal theories underpinning every action in this MDL.  Kellogg Hansen did that work without the benefit of any governmental investigation – indeed, its efforts prompted the FTC's investigation. We are aware of no instance in which a firm developed a case on its own but was not appointed interim lead class counsel.  *See* MDL Lead Counsel Motion, Dkt. 91 at 14-16 & n.10 (citing cases); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 6050431, at *3-4 (N.D. Ill. Nov. 15, 2013) (Dow, J.) (appointing interim lead class counsel that has "taken the laboring oar in this matter"); Order at 2, *Kurgan v. Chiro One Wellness Centers, LLC*, No. 10-cv-1899, Dkt. 362 (N.D. Ill. April 27, 2016) (Dow, J.) ("*Kurgan* Order") (appointing class counsel that did "substantial work identifying" and prosecuting the claims); Minute Entry at 2-3, *In re AT&T Mobility Wireless Data Servs. Tax Litig.*, MDL 2147, No. 10-cv-02278 (N.D. Ill. June 23, 2010) (St. Eve, J.), Dkt. 47 (appointing MDL lead counsel that "dedicated a significant amount of time and resources to advancing the underlying lawsuits").

As one facet of the firm's work prior to the MDL transfer, Kellogg Hansen expended significant time and effort to research and brief Authenticom's opposition to the Defendants' Rule 12(b)(6) motions to dismiss.  This Court recently denied Defendants' motions in substantial part, thereby holding that Authenticom's core legal theories – including horizontal conspiracy, exclusive dealing, and monopolization – state viable antitrust claims.  *See Authenticom* MTD Op., Dkt. 176.  Kellogg Hansen is thus ideally suited to pursue those same legal theories on behalf of the putative vendor class.  *See* Vendor Class Compl. ¶¶ 172-181 (horizontal conspiracy), ¶¶ 182-189 (exclusive dealing), ¶¶ 190-195 (monopolization).

## II. <u>Rule 23(g)(1)(A)(ii): Kellogg Hansen Has Extensive Experience In Handling Complex Litigation and Class Claims</u>

As this Court has already recognized in appointing Mr. Ho as Co-Lead MDL Counsel, Kellogg Hansen has extensive experience litigating and trying complex and class cases.  To

name a few examples, Kellogg Hansen was lead trial counsel in obtaining the largest and second largest antitrust jury verdicts ever affirmed on appeal. *See In re Urethane Antitrust Litig.*, 768 F.3d 1245 (10th Cir. 2014) (affirming $1.2 billion price-fixing verdict)[4]; *Conwood Co. v. United States Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002) (affirming $1.05 billion monopolization verdict), *cert. denied*, 537 U.S. 1148 (2003). Recently, Kellogg Hansen recovered more than $5.1 billion for the National Credit Union Administration in a string of high-profile and complex cases relating to the 2008 financial crisis. *See*, *e.g.*, *Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, No. 13-cv-06705 (S.D.N.Y.) (Cote, J.).

In the field of antitrust in particular, Kellogg Hansen is among the premiere antitrust litigation firms in the country. It is no exaggeration that the firm's cases have reshaped the substantive and procedural law of antitrust over the last two decades. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438 (2009); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013).

Attesting to its prominence in the field, today Kellogg Hansen is involved in perhaps the two most significant antitrust matters in the federal courts: the firm currently represents AT&T Inc. in the Department of Justice's challenge to the merger of AT&T Inc. and Time Warner Inc., *See United States v. AT&T Inc.*, No. 17-cv-02511 (D.D.C.), and American Express Co. in the Supreme Court case *Ohio v. American Express Co.,* No. 16-1454.

---

[4] In the *Urethane* MDL, Judge Lungstrum said that the Kellogg Hansen trial team "achieved an incredible result for the class, . . . and . . . won what is reported to be one of the largest verdicts of its kind in United States history. Counsel had to build this case on their own, without the help of a governmental investigation." Memorandum and Opinion at 15, *In re Urethane Antitrust Litig.*, MDL 1616, No. 04-cv-1616, (D. Kan. July 29, 2016), Dkt. 3273. Judge Lungstrum said that in his "almost 25 years of service on the bench, this Court has not experienced a more remarkable result." *Id.* at 10-11.

Kellogg Hansen has also achieved seminal victories in the law of class actions. At the Supreme Court, the firm represented the plaintiff class in *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016). Many predicted the case would be the death knell for using statistical and representative evidence to support class certification. Instead, Kellogg achieved a 6-2 victory for class plaintiffs. Likewise, the firm won a victory for securities class plaintiffs in *Amgen Inc. et al. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455 (2013), and in the MDL context, won the landmark case *Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26 (1998).

At the trial level, Kellogg Hansen likewise has achieved significant class-action victories. In addition to the $1.2 billion *Urethane* verdict, Kellogg Hansen has achieved multiple nine-figure settlements on behalf of plaintiff classes. *See*, *e.g.*, *In re Copper Antitrust Litig.*, MDL 1303, No. 00-cv-1303 (W.D. Wis.) (Crabb, J.) (Kellogg Hansen successfully obtained favorable settlement for industrial copper purchasers in an antitrust class action against J.P. Morgan, alleging that J.P. Morgan conspired to manipulate the worldwide price of copper); *Dial Corp. v. News Corp.*, No. 13-cv-06802 (S.D.N.Y.) (Pauley, J.) (Kellogg Hansen obtained $250 million settlement for six corporate class representative clients and a class of consumer products companies in a Sherman Act monopolization case involving in-store advertising; the firm was recognized by the American Antitrust Institute (AAI) for "Outstanding Antitrust Litigation Achievement in Private Law Practice"); *In re Steel Antitrust Litig.*, 08-cv-5214 (N.D. Ill.) (Shah, J.) (Kellogg Hansen attorneys served as court-appointed co-lead class counsel on behalf of a class of direct purchasers alleging that several manufacturers conspired to inflate steel prices; the claims were settled for approximately $194 million after class certification).

For convenience, Kellogg Hansen's firm profile is attached as Appendix A. A summary of its antitrust litigation experience is attached as Appendix B.

### III. <u>Rule 23(g)(1)(A)(iii)</u>: Kellogg Hansen Has Unrivaled Knowledge of Antitrust Law

In appointing Mr. Ho Co-Lead MDL Counsel, this Court has already acknowledged Mr. Ho and Kellogg Hansen's "extensive experience in antitrust law." Hearing Tr. at 4-5 (April 6, 2018), Dkt. 116; *see also Kurgan* Order, Dkt. 362 (appointing as class counsel "highly experienced attorneys [that] have acted as class counsel in similar actions in federal and state courts" (quoting *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010)). As discussed in the previous section, Kellogg Hansen's antitrust expertise stems from more than two decades of experience representing both plaintiffs and defendants in cutting-edge antitrust litigation at all levels of the federal courts, including the Supreme Court.

Attorney profiles for Mr. Ho and his partners, Mr. Nemelka and Mr. Panner – all of whom represented Authenticom at the preliminary injunction hearing before Chief Judge Peterson and have substantial antitrust experience – are attached hereto as Appendix C.

### IV. <u>Rule 23(g)(1)(A)(iv)</u>: Kellogg Hansen Has the Resources to Vigorously Represent the Class

As the Court noted, Kellogg Hansen has already demonstrated its ability to litigate all of the cases in this MDL – including the direct-purchaser vendor class action – zealously. Since being appointed as MDL Co-Lead Counsel, Mr. Ho and Kellogg Hansen have continued to litigate zealously for the benefit of all plaintiffs in the MDL. If appointed Interim Lead Class Counsel, Kellogg Hansen will work every bit as hard for the vendor class.

In addition to Mr. Ho, Mr. Nemelka, and Mr. Panner, Kellogg Hansen has dedicated a highly qualified team of three additional partners, four associates, and paralegals and support staff to litigating this MDL. The Court has the firm's commitment that Mr. Ho and his partners will draw from the firm's deep, 90-lawyer bench as needed to go toe-to-toe against well-heeled Defendants with zealous and able counsel. Virtually all of Kellogg Hansen's partners and

associates have clerked for federal appellate and/or district judges. One-third of the firm's partners clerked for Justices of the United States Supreme Court, including Mr. Ho and Mr. Panner. The firm has on its roster numerous former Assistant United States Attorneys, Assistants to the Solicitor General, and attorneys who have held senior positions in the government. The firm's partners have been lead counsel in more than 100 federal and state trials and appeals and have argued 71 cases before the Supreme Court of the United States. *See* Appendix A.

## V.  Rule 23(g)(4): Kellogg Hansen Will Fairly and Adequately Represent the Interests of the Vendor Class

Given its unparalleled investment in and knowledge of this case, and its extensive experience and expertise in antitrust law, there is little question that Kellogg Hansen will fairly and adequately represent the interests of the vendor class. AutoLoop notes, out of an abundance of caution, that Kellogg Hansen's existing representation of Cox Automotive poses no conflict with the firm's representation of a vendor class. To the contrary, it is well recognized that joint representation by the same law firm of the class and individual plaintiffs that have opted out of the class (as Cox Automotive has effectively done here by filing its own lawsuit) generally "benefit[s] the class to the extent that class counsel gain useful legal and factual knowledge in pursuing" related actions. 1 *Newberg on Class Actions* § 3:75 (5th ed.).[5] That is true in spades

---

[5] *See, e.g., In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 429-30 (3d Cir. 2016) (no conflict where the same lawyer represented a class and nine non-class plaintiffs in an MDL); *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 215 (N.D. Ill. 2008) (that counsel was "litigating similar [] claims in courts throughout the country . . . weighs in favor of finding that class counsel here is adequately competent and experienced"); *Bell v. Disner*, 2018 WL 296035, at *3 (W.D.N.C. Jan. 4, 2018) ("Courts have generally held that the mere existence [of both a class and individual plaintiffs] does not create an insurmountable conflict of interest.") (collecting cases); *Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 515 (D.N.D. 2005) ("[C]lass counsel's participation in other closely-related lawsuits did not create a conflict and was instead of benefit to the class."); *White v. Nat'l Football*

in this case: it would greatly disadvantage the class to be represented by a firm that lacks

Kellogg Hansen's deep familiarity with the facts and legal theories in this case.[6]

The only conceivable instance in which joint representation could implicate a potential

conflict is in settlement discussions, and then only if there is evidence of a limited settlement

fund.[7]  But this case is not on, or even near, settlement's doorstep.  Rather, the principal

upcoming task is to pursue discovery on the core liability issues that gave rise to this MDL – a

task for which Mr. Ho and Kellogg Hansen are uniquely suited to represent the interests of the

vendor class along with all plaintiffs.  Moreover, even if the case reaches settlement discussions,

there is no likelihood of a limited fund, given that CDK is a multi-billion dollar corporation.  *See*

CDK Form 10-K at 2, http://investors.cdkglobal.com/static-files/b1712448-ee99-4e77-a248-

864931905650 (June 30, 2017) (reporting market value of $8.7 billion).  There is thus certainly

no current conflict, nor reason to believe a conflict will ever arise in the future.

### CONCLUSION

AutoLoop respectfully requests that the Court appoint Mr. Ho of Kellogg Hansen as

Interim Lead Class Counsel for the vendor class.

---

*League*, 822 F. Supp. 1389, 1405 (D. Minn. 1993) (appointing same counsel to represent
individual and class plaintiffs and noting the firm's "participation in other, closely related
lawsuits" was a benefit to the class).

[6] Cox Automotive and MVSC have consented to Kellogg Hansen's representation of the
putative vendor class, and both are excluded from the class definition.

[7] *See*, *e.g.*, *In re Asbestos School Litig.*, 1986 WL 13882, at *2 (E.D. Pa. Dec. 4, 1986)
(finding no conflict where class counsel sought to represent plaintiffs who had opted out of the
class, noting that this simultaneous representation was permitted "[i]n light of th[e] fact" that,
"[a]t this point in this litigation it does not appear that there is a limited fund for payment of
damages"); *see also* 1 McLaughlin on Class Actions 4:39 (14th ed.) (updated Oct. 2017).

June 6, 2018                                   Respectfully submitted,


                                              /s/ Derek T. Ho
Richard J. Prendergast                        Derek T. Ho
Michael T. Layden                             Michael N. Nemelka
Collin M. Bruck                               Aaron M. Panner
RICHARD J. PRENDERGAST, LTD.                  David L. Schwarz
111 W. Washington Street, Suite 1100          Kevin J. Miller
Chicago, Illinois 60602                       Daniel V. Dorris
Telephone:  (312) 641-0881                    Joanna T. Zhang
rprendergast@rjpltd.com                       Joshua Hafenbrack
mlayden@rjpltd.com                            Daniel S. Guarnera
cbruck@rjpltd.com                             KELLOGG, HANSEN, TODD,
                                                FIGEL & FREDERICK, P.L.L.C.
                                              1615 M Street, N.W., Suite 400
Jennifer L. Gregor                            Washington, D.C. 20036
Kendall W. Harrison                           Telephone:  (202) 326-7900
Allison W. Reimann                            Fax:  (202) 326-7999
GODFREY & KAHN S.C.                           dho@kellogghansen.com
One East Main Street                          mnemelka@kellogghansen.com
Suite 500                                     apanner@kellogghansen.com
Madison, Wisconsin 53703                      dschwarz@kellogghansen.com
Telephone:  (608) 284-2629                    kmiller@kellogghansen.com
Fax:  (608) 257-0609                          ddorris@kellogghansen.com
jgregor@gklaw.com                             jzhang@kellogghansen.com
kharrison@gklaw.com                           jhafenbrack@kellogghansen.com
areimann@gklaw.com                            dguarnera@kellogghansen.com


                                              *Counsel for Plaintiff Loop, LLC,*
                                              *d/b/a AutoLoop*

<u>**CERTIFICATE OF SERVICE**</u>

I, Derek T. Ho, an attorney, hereby certify that on June 6, 2018, I caused a true and correct copy of the foregoing **PLAINTIFF LOOP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR APPOINTMENT OF DEREK T. HO OF KELLOGG HANSEN AS INTERIM LEAD CLASS COUNSEL FOR THE VENDOR CLASS ACTION** to be filed and served electronically via the court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*/s/ Derek T. Ho*

**Kellogg, Hansen, Todd,**
**Figel & Frederick, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
