IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow, Jr.<br><br>**PUBLIC-REDACTED** |

# MDL PLAINTIFFS' OPPOSITION TO CDK GLOBAL, LLC'S MOTION FOR A PROTECTIVE ORDER

**INTRODUCTION**

In mid-2017, the FTC opened two related, parallel investigations into potential antitrust violations by Defendants CDK Global, LLC's ("CDK") and The Reynolds and Reynolds Company ("Reynolds"). The first investigation – which is ongoing – concerns Defendants' collusion and other anti-competitive practices with respect to data integration services (the "Collusion Investigation"). The second investigation (the "Merger Investigation") concerned CDK's proposed acquisition of Auto/Mate, Inc. ("Auto/Mate"), a new entrant in the separate but related market for Dealer Management Systems ("DMS"), a market that Defendants dominate. The investigation led the FTC to challenge the proposed merger on the ground that it would cause competitive harm in the already highly concentrated DMS market, of which CDK and Reynolds collectively control 75% as measured by dealer rooftops and more than 90% as measured by vehicles sold.[1] CDK abandoned the merger in light of the FTC's challenge.

The parties' positions can be succinctly summarized. MDL Plaintiffs ask that CDK be required to produce all the documents it produced to the FTC in the Merger Investigation because they are relevant and the burden of reproducing them is near-zero. CDK resists that straightforward reproduction. Instead, it seeks to limit its reproduction to the subset of Merger Investigation documents (roughly 670,000 of 2.2 million) that CDK also produced in response to the FTC's civil investigative demand ("CID") in the Collusion Investigation, although it has now offered as a compromise to undertake a "relevance" review of the remainder.

CDK's primary argument for this limitation is that the documents produced in response to the Merger Investigation are not relevant except insofar as CDK also produced them in the

---

[1] *See* Complaint, *In Matter of CDK Global, Inc.*, Docket No. 9382 (F.T.C. March 19, 2018), www.ftc.gov/system/files/documents/cases/docket_no_9382_cdk_automate_part_3_complaint_redacted_public_version_0.pdf.

Collusion Investigation. But that is wrong. By CDK's own admission (at 5), the Merger Investigation bears directly on the state of competition – and the "anticompetitive effects" of the proposed Auto/Mate merger – in the DMS market. And Judge St. Eve has already held that competition in the DMS market is directly relevant to the claims in this MDL: "Two purported markets in [the automotive operations] space are of principal relevance [to this MDL]: the DMS market and the data-integration market." *Authenticom* Mem. Op. at 5, Dkt. 176.

Indeed, on April 25, 2018, Judge St. Eve ordered all parties to "produce any productions their clients made to the FTC, identified by bates number, by 5/9/2018." Minute Entry (Apr. 25, 2018), Dkt. 146 ("April 25 Order"); *see also* Status Hr'g Tr. (Apr. 25, 2018) at 24:14-16, Dkt. 164 ("April 25 Hr'g Tr.") ("So, all parties should produce whatever has been produced to the FTC, and continue doing so to the extent you have continued productions, and identify what it is."). The Court's April 25 Order did not exempt documents produced pursuant to the Merger Investigation. Indeed, CDK never requested any such exemption. Nor would it have been well-positioned to do so, given that CDK (and Reynolds) have repeatedly argued that the supposedly "fierce" state of competition in the DMS market is a key component of their defense to liability. *See infra* pp. 9-10. The FTC concluded otherwise, on the basis of documents CDK produced to it. Those documents are clearly relevant.

Given the documents' relevance, CDK's arguments regarding proportionality and burden lack merit. The discovery here is proportional to the needs of the case: reproducing an additional 1.6 million documents that were already produced to a government agency is hardly unusual in a large MDL such as this. Moreover, CDK's burden argument is incoherent: as a "compromise," CDK proposes to spend hundreds of additional hours of attorney time negotiating search terms with Plaintiffs, running those search terms across documents produced by a limited

set of custodians, reviewing the resulting "hits" for responsiveness and privilege, and then producing only those documents it deems responsive. But MDL Plaintiffs' proposal – that CDK simply reproduce *all* of the documents it produced to the FTC – would be *far less* burdensome than the complicated, time-consuming process CDK now proposes. It is fair to infer that CDK's real objective here is not to avoid burden, but to avoid producing clearly relevant and likely inculpatory information. Its request should be denied.

## BACKGROUND

### A. The Relevant DMS and Data Integration Markets

As explained in more detail in the Court's Memorandum Opinion and Order denying (in substantial part) the Defendants' motions to dismiss the *Authenticom* Complaint, *see* Dkt. 176, "[t]wo purported markets in [the automotive operations] space are of principal relevance [to this MDL]: the DMS market and the data-integration market." *Id.* at 5. The first – the DMS market – involves software systems that "handl[e] information regarding sales, financing, part and vehicle inventory, repair and service, accounting, payroll, human resources, marketing, and still more." *Id.* The DMS is also where dealerships store the data they collect in their everyday operations, including customer, parts, and inventory information. CDK, Reynolds, and Auto/Mate (among others) compete in the DMS market.

"CDK and Reynolds 'dominate' the DMS market" for the 18,000 franchised new car dealerships in the United States, controlling 75% of the market by dealer-customers and 90% by vehicles sold. *Id.* at 6. CDK and Reynolds enjoy 40% profit margins, and their market power is enhanced by the fact that "[t]heir customers, the dealers, are [] unable to switch freely between DMS providers," because they are locked-in to long-term contracts (5 to 7 years in length) and because it is a "logistical nightmare[]" for a dealer to switch DMS systems. *Id.*

The second relevant market – data integration services – involves companies that "specialize in extracting dealers' data from DMS databases, aggregating that data and putting it into a standard format, and then delivering to vendors the specific data required for their applications." *Id.* at 7. CDK and Reynolds also compete in that market. *See id.* at 8 ("CDK and Reynolds also offer integration services."). Prior to 2015, there were multiple other competitors, but after Defendants' alleged conspiracy, only Plaintiff Authenticom, Inc. remains. *See id.* at 8.

B.  **The FTC's Investigations**

The FTC opened both the Collusion Investigation and the Merger Investigation in approximately June 2017. The Collusion Investigation was largely prompted by Authenticom's complaint and successful request for preliminary injunctive relief alleging that CDK and Reynolds colluded to exclude independent data integrators like Authenticom from the market. *See id.* at 1-3 (explaining procedural history of *Authenticom* case). The Merger Investigation was prompted by CDK's announcement that it intended to acquire Auto/Mate.[2] According to CDK's press release, Auto/Mate had roughly 1,200 dealership customers, or a roughly 7% market share. Accordingly, the transaction would have increased CDK's market share from roughly 40% to 47% of dealership-customers, and boosted CDK and Reynolds' combined duopoly to over 80% of dealership customers (even more when measured by vehicles sold).

The FTC served CIDs to CDK and Reynolds in connection with both investigations, and both companies produced documents in response to both CIDs. CDK has refused to produce the actual CIDs, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[2] *CDK Global to Acquire Auto/Mate Dealership Systems*, CDKGlobal.com (May 24, 2017), *available at* https://www.cdkglobal.com/company/media-center/automate-announcement#sm.0000zrxqof15lyff9v7m85jvbpbsy.

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ CDK produced approximately 2.2 million documents responsive to the Merger Investigation CID. It produced approximately 670,000 of those same 2.2 million documents in response to the Collusion Investigation CID; the remainder (approximately 1.6 million) were produced only in the Merger Investigation.

Ultimately, on March 19, 2018, the FTC issued a Complaint ("*FTC Complaint*") that alleged CDK's proposed acquisition of Auto/Mate would "violate[] federal antitrust laws" and "reduce competition in an already concentrated market" for DMS services.[3] The FTC announced that the Commission had "authorized FTC staff to seek a temporary restraining order and a preliminary injunction in federal court to prevent the parties from consummating the merger," and in the face of those proceedings, CDK had "abandoned the proposed transaction." *Id.*

CDK has also refused to produce the *FTC Complaint*, but the FTC has released a redacted public version. The FTC's Complaint alleged that the "United States franchise DMS market is highly concentrated with CDK and Reynolds controlling approximately 70% of the market," a dominant position that CDK has maintained despite its "high prices" and "reputation for relatively poor customer service." FTC Compl. ¶¶ 16-17; *see id.* ¶¶ 22-29 (defining DMS market). Dealerships have been forced to stick with CDK and Reynolds due to the "lack of good alternatives to the two market leaders" and the "significant challenges in switching DMS suppliers." *Id.* ¶ 18. The FTC noted that CDK and Reynolds "have similar business models,

---

[3] *See* FTC Challenges CDK Global, Inc.'s Proposed Acquisition of Competitor Auto/Mate, Inc. (March 20, 2018), *available at* www.ftc.gov/news-events/press-releases/2018/03/ftc-challenges-cdk-global-incs-proposed-acquisition-competitor.

5

which include long-term contracts and significant initial and monthly fees for third-party applications (app) vendors to integrate with their respective DMS." *Id.* ¶ at 2. Auto/Mate, however, stood out as an upstart challenger to the "sleeping giants" CDK and Reynolds, including by providing a "low-cost agnostic platform for third-party applications." *Id.* ¶¶ 19, 37-47. According to the FTC, CDK wanted to buy Auto/Mate to "rid itself of a significant and growing competitive threat" and, post-merger, CDK planned to "downgrade [redacted] features and service[s]" and "raise [redacted] prices" for Auto/Mate's dealer customers. *Id.* ¶¶ 4-6. Without competition from Auto/Mate, CDK would have "less incentive" to offer *inter alia* lower DMS prices and "more third-party and less expensive app integration." *Id.* ¶ at 54.

### C. The Parties' Discovery Dispute and the Court's Prior Order

Prior to MDL consolidation in this Court, Authenticom served discovery requests on CDK and Reynolds (and vice versa). Authenticom's Request No. 1 sought "[a]ll documents and correspondence relating to any inquiry or investigation by the Federal Trade Commission, Department of Justice, or any other federal or state regulatory authority regarding your DMS business, data integration business, add-on applications, data access policies, or any other related matter." Ex. 2, Authenticom First RFPs for CDK (Oct. 2, 2017). For good measure, Request No. 56 sought "[d]ocuments and communications relating to CDK's announced acquisition of Auto/Mate," including "documents produced to any governmental regulatory authority." *Id.*

CDK, in response, resisted Authenticom's discovery demand, but offered to produce documents produced to the FTC in connection with the Merger Investigation "to the extent such documents are relevant to the claims and defenses in this litigation." Dkt. 197-1 at 27. Authenticom's counsel accepted that proposal. But it thereafter became clear that CDK took an unduly narrow view of what documents are "relevant to the claims and defenses in this

litigation." Specifically, CDK produced only those documents that were also produced in the Collusion Investigation. *See* Dkt. 197 at 2-3. The discovery negotiations between Authenticom and Defendants were held in abeyance in January 2018, when the *Authenticom* court stayed further discovery pending the ruling by the J.P.M.L. on consolidation.

After the J.P.M.L. consolidated the cases in February 2018, this Court appointed undersigned counsel as MDL Co-Lead Counsel in April 2018 and lifted the discovery stay. Soon thereafter, Judge St. Eve ordered all parties to "produce any productions their clients made to the FTC, identified by bates number, by 5/9/2018." April 25 Order; *see also* April 25 Hr'g Tr. at 24:14-16 ("So, all parties should produce whatever has been produced to the FTC, and continue doing so to the extent you have continued productions, and identify what it is."). Plainly, the Court's order is not limited to the Collusion Investigation. At no time did CDK seek such a limitation, or seek clarification of the Court's order. In fact, CDK has sought from Individual Plaintiffs – including Authenticom – the very documents that CDK is resisting producing here; i.e., all documents provided to the FTC in connection with the Auto/Mate Investigation. *See*, *e.g.*, Ex. 3, CDK First RFPs to Authenticom, Request No. 26 (Oct. 13, 2017) ("*All documents and communications related to any complaint to, or investigation by, any government agency concerning CDK, including all documents that You have provided to any government agency in connection with such complaint or investigation*").

Despite the April 25 Order – and even though CDK is seeking the same documents from Plaintiffs – CDK refused to produce the documents in dispute. It then filed its motion for protective order on June 5, 2018 – two business days after the case was reassigned from Judge St. Eve to Judge Dow on June 1, 2018, *see* Dkts. 181, 182 – without mentioning Judge St. Eve's prior April 25 Order, *see* Dkt. 197.

7

Thereafter, MDL Plaintiffs reached out to CDK in an effort to resolve the dispute. MDL Plaintiffs offered "that, *for this production only*, you may designate all FTC Auto/Mate Documents as 'Highly Confidential' pursuant to the Protective Order" to prevent the need for document-by-document confidentiality review and the burden concern identified by CDK. *See* Ex. 4, Letter from D. Ho and P. Wedgworth to B. Miller (June 7, 2018). The MDL Plaintiffs also suggested that CDK "simply reserve its rights to lodge any relevance objections" to the admissibility of the documents. *Id.* A day later, CDK rejected MDL Plaintiffs' offer. *See* Ex. 5, Email from B. Miller to P. Wedgworth (June 8, 2018).

## LEGAL STANDARD

"The Federal Rules permit broad, liberal discovery, allowing parties to obtain discovery 'regarding any nonprivileged matter that is relevant to any party's claim or defense.'" *Brodsky v. HumanaDental Ins. Co.*, 2015 WL 13439903, at *1 (N.D. Ill. Mar. 12, 2015); *Shapo v. Engle*, 2000 WL 876994, at *3 (N.D. Ill. July 3, 2000) ("'relevancy' under Rule 26 is extremely broad."). Courts have recognized the "particularly broad scope that relevance is given in antitrust cases." *E.g., In re Urethane Antitrust Litigation*, 261 F.R.D. 570, 574 (D. Kan. 2009).

"'When the discovery sought appears relevant, the party resisting the discovery'" – in this case, CDK – "'has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Herx v. Diocese of Fort Wayne-South Bend Inc.*, 2013 WL 5531376, at *2 (N.D. Ind. Oct. 7, 2013).

## ARGUMENT

CDK's motion should be denied, for three reasons: (1) Judge St. Eve already ordered all parties to produce all documents produced to the FTC; (2) documents CDK produced in

8

connection with the Merger Investigation are relevant because they concern competition in the DMS market; and (3) re-production of documents that CDK has already produced to the FTC would entail a negligible burden.

## I.     The April 25 Order Requires Reproduction of All Documents Produced to the FTC

Judge St. Eve already ordered all parties to "produce any productions their clients made to the FTC, identified by bates number, by 5/9/2018." April 25 Order; *see also* April 25 Hr'g Tr. at 24:14-16 ("So, all parties should produce whatever has been produced to the FTC, and continue doing so to the extent you have continued productions, and identify what it is."). The plain language of that order requires production of the entire CDK production to the FTC. CDK does not even acknowledge the April 25 Order, much less explain why it should be reconsidered. That alone is sufficient to deny the motion.

## II.    CDK's FTC Production In the Merger Investigation Is Highly Relevant

As Judge St. Eve already stated in the *Authenticom* Memorandum Opinion, competition in the DMS market is highly relevant to this case. Indeed, CDK's attempt to limit discovery about the DMS market flies in the face of Defendants' own repeated arguments that the DMS market is centrally relevant here. As CDK's expert opined at the preliminary injunction hearing in *Authenticom*: "CDK and Reynolds are both, in the first instance, suppliers of DMS products, *so the market of DMSs is relevant and important to this case*." Decl. of S. Addanki ¶ 43, *Authenticom* Dkt. 130 (emphasis added); *see also id.* ¶¶ 47-52 (opining on competitive conditions in DMS market). ██████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████[4] CDK

---

[4] ████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████

9

cannot expect to make the supposedly "fierce" competition in the DMS market a central feature of its defense while withholding documents it produced to the FTC, which investigated that very issue and found, instead, such a highly concentrated market that it sued to quash CDK's proposed acquisition. *See supra* pp. 5-6 (explaining FTC's findings). MDL Plaintiffs are entitled to review the documents CDK produced that led the FTC to reach those conclusions.

Discovery on the competitive dynamics in the DMS market – the subject of CDK's FTC Auto/Mate Production – is thus important to understanding CDK's motives for conspiring with Reynolds to block competitors in the related data integration market. As this Court noted in the *Authenticom* Memorandum Opinion, one "inferable reason Defendants would conspire" is "to prevent unhappy dealers from, for example, turning to another DMS provider." Dkt. 176 at 27 n.10.[5] The *FTC Complaint* similarly linked competition in the DMS market with the price and availability of software applications. *See* FTC Compl. ¶¶ 2, 19, 54.

Likewise, the DMS market is relevant to the MDL Plaintiffs' Section 2 monopolization claims under *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992). MDL Plaintiffs allege that CDK (and Reynolds) monopolized the brand-specific aftermarkets for data integration among dealers that use their respective DMSs – a claim this Court found to be viable when it denied Defendants' motions to dismiss. *See Authenticom* Mem. Op. at 43-51. Central to MDL Plaintiffs' claim is that dealers are "unable to freely switch between DMS providers," *id.* at

---

[5] This Court further explained that, after CDK began blocking independent integrators, dealers "loudly complained." *Authenticom* Mem. Op. at 30. Thus, this Court held, "it is inferable that – as is true of most antitrust conspiracies – Defendants (which together control the DMS market) desired the luxury of taking an action profitable for them but disadvantageous to their customers (by excluding a cheaper rival in the downstream data-integration market) without fearing that their customers would respond by, for example, turning to another provider." *Id.*

10

6, thus allowing CDK to exploit its locked-in dealer customers by abruptly changing policy with respect to independent integrators and drastically raising prices for CDK's own data integration services. Given that the FTC specifically found that dealerships face "significant challenges in switching DMS suppliers," MDL Plaintiffs are clearly entitled to see the documents that gave rise to the FTC's conclusion. FTC Compl. ¶ 18.

CDK argues (at 5) that "anti-competitive effects in the DMS market" are irrelevant because "no MDL plaintiff contends that CDK is attempting to monopolize that market." But that takes a far too narrow view of relevance: just because there is no Section 2 *monopolization* claim specific to the DMS market does not mean evidence concerning the competitive conditions in the DMS market is irrelevant. Far from it: as Judge St. Eve already held, Defendants' motive to protect their duopoly in the DMS market is directly relevant to MDL Plaintiffs' claims under Sections 1 and 2 of the Sherman Act.

Indeed, CDK all but ignores the Dealership Class Action Complaint, which specifically alleges competitive harm and damages in the DMS market. In particular, the dealer class contends that CDK and Reynolds charged their dealer-customers supracompetitive *DMS* prices following the 2015 conspiracy. *See* Dealer Class Compl. ¶ 72, Dkt. 198 ("Defendants' domination of the DMS market, together with the formidable barriers to entry, has enabled them to divide and monopolize the DMS market and increase DMS prices."). Accordingly, the DMS market is indisputably a relevant antitrust market for the dealer class, and here again, documents and evidence concerning the state of competition in that market are relevant.[6]

---

[6] CDK's argument (at 10) that MDL Plaintiffs cannot use the FTC Auto/Mate Production to "find material they can use to support new claims" is inapposite, because those documents are relevant to an array of *existing* claims and defenses. In any event, to the extent the FTC Auto/Mate Production contains fresh evidence of additional wrongdoing that is hardly a basis for withholding the documents. *See Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280 (N.D. Tex. 2017) ("'[d]iscovery that

11

**III.     Discovery of the FTC Auto/Mate Production Is Proportional In This Large MDL**

Given their clear relevance to the issues in this MDL, a complete reproduction of CDK's production in the Merger Investigation is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (describing six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit). As the party resisting discovery, CDK bears the burden of demonstrating that the requested "discovery fails the proportionality calculation" and hence must "com[e] forward with specific information" to demonstrate why the requested discovery is not proportional. *E.g.*, *Nerium Skincare, Inc. v. Olson*, 2017 WL 277634, at *3 (N.D. Texas Jan. 20, 2017).

CDK's only real argument on this score is burden. It argues (at 9) that it would need to "review *all* of the 1.6 million documents" from the Merger Investigation production to analyze them for relevancy and confidentiality designations. But that argument has it backward: the *entire* production in the Merger Investigation is relevant given the subject matter of the FTC's investigation, and it should be reproduced in full, as CDK (and Reynolds) have done with the documents produced in the Collusion Investigation. The burdensome process CDK proposes is unnecessary where the subject matter of the investigation is directly relevant to this case.

Indeed, it is *CDK's own proposal* that would needlessly generate additional burden and expense for *all* parties by requiring continued negotiation over search terms and custodians and document-by-document review for responsiveness and privilege. As for confidentiality, MDL Plaintiffs have already agreed that, for this production only, CDK may designate all documents

---

is relevant to the parties' claims or defenses may also support amendment of the pleadings to add a new claim or defense that affects the scope of discovery'") (quoting Fed. R. Civ. P. 26, 2015 Amend.).

Highly Confidential. *See supra* p. 8. That compromise offer – which MDL Plaintiffs will honor should the Court deny CDK's motion – negates CDK's argument (at 9 & n.3) that it would need to conduct a burdensome confidentiality review.[7] Moreover, CDK's burden argument rings hollow given that CDK has asked MDL Plaintiffs to do the very thing it will not – produce *all* documents provided to the FTC in connection with the Merger Investigation. *See supra* p. 7.

The Rule 26(b)(1) factors further support discovery of the FTC Auto/Mate Documents.

1. <u>Importance of the issues at stake in this MDL</u>: This MDL concerns exceedingly important issues. The collusion between CDK and Reynolds – powerful oligopolists in the automotive industry – has caused prices to soar and stifled innovation, harming hundreds if not thousands of vendors (from software startups to popular applications like Kelley Blue Book and AutoTrader.com), 15,000 automotive dealerships nationwide, and ultimately every car buyer who walks into a showroom or service center. The manifest harm to competition has sparked two FTC investigations – a testament to the importance of the issues in this MDL.

2. <u>Amount in controversy</u>: The financial stakes are also high: Defendants' potential liability is massive.[8] Cox Automotive, Inc. – the largest vendor in the nation – alone alleges more than $200 million in damages, before the Sherman Act's automatic trebling, to say nothing of the putative nationwide class actions (by both vendors and dealers), the individual lawsuits by Authenticom and Motor Vehicle Software Corporation, and the ongoing FTC investigation.

---

[7] MDL Plaintiffs would undertake the burden of raising with CDK, at the appropriate time, any particular documents from the FTC Auto/Mate Production that should be de-designated downward.

[8] *See* CDK, R&R litigation could bring $2B of payouts, Capitol Forum reports (June 12, 2018), *available at* https://thefly.com/landingPageNews.php?id=2707840&headline=CDK-CDK-RampR-litigation-could-bring-B-of-payouts-Capitol-Forum-reports ("The litigation against CDK Global (CDK) and Reynolds and Reynolds over anti-competitive conduct could result in $1.8 [billion] - $2 [billion] of payouts, experts familiar with the matter tell Capitol Forum.").

3. <u>Parties' relative access to information</u>: MDL Plaintiffs cannot obtain anywhere else the documents in the FTC Auto/Mate Production, which consist in whole or in large part of CDK's internal files concerning its thwarted attempt to purchase a DMS competitor. CDK does not argue the FTC Auto/Mate Production is available from any other source. *State Farm Mut. Auto Ins., Co. v. Fayda*, 2015 WL 7871037, at *4 (S.D.N.Y. Dec. 3, 2015) ("[T]he party resisting disclosure should bear the burden of establishing alternative sources for the information.").

4. <u>Parties' resources</u>: CDK is a publicly traded company with a market value of $8.7 billion[9], and it is represented by multiple highly sophisticated law firms.

5. <u>Importance of the requested discovery</u>: As described above, CDK's own expert has admitted that competition in the DMS market is "relevant and important" to this litigation, and this Court has also so held. *See supra* pp. 2, 9. The "probative value of the sought after discovery is potentially substantial" and bears on "factual issues at the heart of [plaintiffs'] antitrust theory of liability." *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 2016 WL 3519618, at *7 (E.D. Pa. June 28, 2016).

6. <u>Whether the burden or expense of discovery outweighs its benefit</u>: As explained above, the burden of reproduction is negligible. CDK does not need to find and collect any documents; it need only reproduce the same documents in the same format to MDL Plaintiffs, just as it has done with the documents produced in the Collusion Investigation. *See Seah Chee Wei v. Rocky Point Int'l LLC*, 2017 WL 3911585, at *2 (E.D. Wis. Sept. 6, 2017) (discovery was proportional "given the ease of locating and producing the records"); *Waldman v. Wachovia Corp.*, 2009 WL 86763 (S.D.N.Y. Jan. 12, 2009) (discovery would not impose a high cost where the defendant already had found, reviewed, and organized the documents for regulators); *In re*

---

[9] *See* CDK Form 10-K at 2, http://investors.cdkglobal.com/static-files/b1712448-ee99-4e77-a248-864931905650 (June 30, 2017).

*Zofran Prods. Liab. Litig.*, 2016 WL 2349105, at *3 (D. Mass May 4, 2016) (denying motion for protective order where the defendant had already produced the same documents to the DOJ). In addition, CDK only makes conclusory claims of undue burden that are unsupported by any evidence or affidavit. *See*, *e.g.*, *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("'A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'").

Finally, CDK's suggestion that Authenticom is reneging on a prior agreement is inaccurate. As explained above, Authenticom's counsel agreed that only *relevant* documents needed to be produced in the *Authenticom* case. But the ensuing disagreement, now the subject of this motion, is over CDK's overly narrow view of relevance. Moreover, those meet-and-confer discussions took place only in *Authenticom*, before this MDL's formation, and thus are not binding on other MDL Plaintiffs. The undersigned Interim Class Counsel for the dealerships, Peggy Wedgworth, was not a party to the earlier *Authenticom* meet-and-confers and was not appointed MDL Co-Lead Counsel until April 2018.[10] Indeed, the Court's schedule permits MDL Plaintiffs to serve additional document requests beyond what was sought in *Authenticom*. *See* Case Mgmt. Order at 2, Dkt. 166. The prior negotiations between CDK and Authenticom thus provide no basis for CDK to avoid relevant, non-burdensome discovery to all MDL Plaintiffs.

## CONCLUSION

The Court should deny CDK's motion for a protective order.

---

[10] When Authenticom and Defendants sought to resolve their initial discovery disputes in the fall of 2017 – prior to this MDL proceeding – the *Authenticom* case was proceeding on an expedited schedule entered by the Western District of Wisconsin. At that time, the February 2018 deadline for expert reports was fast-approaching and trial was slated for October 2018. Authenticom was thus attempting to compromise in good faith in light of the fast-tracked schedule. That schedule is no longer applicable now that *Authenticom* is part of the MDL and this Court has allotted substantially more time for discovery.

15

Dated: June 15, 2018	Respectfully submitted,

*/s/ Peggy J. Wedgworth*	*/s/ Derek T. Ho*
Peggy J. Wedgworth	Derek T. Ho
**MILBERG TADLER PHILLIPS**	**KELLOGG, HANSEN, TODD,**
**GROSSMAN LLP**	 **FIGEL & FREDERICK, P.L.L.C.**
One Pennsylvania Plaza, 19th Floor	1615 M Street, NW, Suite 400
New York, NY 10119	Washington, D.C. 20036
(212) 594-5300	(202) 326-7932
pwedgworth@milberg.com	dho@kellogghansen.com

*MDL Co-Lead Counsel*

16

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that on June 15, 2018, I caused a true and correct copy of the foregoing **MDL PLAINTIFFS' OPPOSITION TO CDK GLOBAL, LLC'S MOTION FOR A PROTECTIVE ORDER** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com