IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* <br> ALL CASES | Hon. Robert M. Dow, Jr. <br><br> Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT CDK GLOBAL, LLC'S REPLY IN SUPPORT OF ITS
MOTION FOR PROTECTIVE ORDER**

As its opening memorandum explained, CDK is entitled to a protective order under Fed. R. Civ. P. 26 because the burden of producing the millions of additional pages that plaintiffs demand from the FTC AutoMate acquisition production vastly overwhelms any marginal, non-cumulative benefit plaintiffs would derive from that material. Plaintiffs, who are not entitled to irrelevant documents from a separate acquisition production, now rely on a string of factual misstatements and omissions to advance a host of theories, none of which survives even cursory review in light of the easily verifiable record facts.

Plaintiffs begin by misstating CDK's position. Pls. Resp. 1. As plaintiffs know, CDK has *always* agreed to turn over *relevant* documents from its AutoMate production.[1] *See* Mem. Ex. 3 at 7 (11/15/2017 Ltr. from Britt M. Miller to Michael N. Nemelka); Mem. Ex. 5 at 18 (CDK's Responses & Objections to Authenticom's Second Set of RFPs). Plaintiffs' statement to the contrary (that CDK "has now offered as a compromise to undertake a 'relevance' review *of the remainder*") (emphasis added) misstates CDK's position. More importantly, counsel for plaintiff Authenticom previously *agreed* to CDK's actual approach, *see* Mem. Ex. 4 at 12 (11/24/2017 Ltr. from Michael N. Nemelka to Brian T. Ross & Britt M. Miller), and by seeking a protective order CDK merely asks to hold counsel to that agreement.

Plaintiffs' attempt to distance themselves from their prior agreement is unsupportable. They ultimately concede that "Authenticom's counsel accepted [CDK's] proposal" to produce only relevant portions of the AutoMate production but insist that "it thereafter became clear that CDK took an unduly narrow view" of relevance. Pls. Resp. 6. But CDK seeks a protective order because plaintiffs maintain that *all AutoMate documents*—all 1.6 million of them, comprising

---

[1] In an effort to avoid confusion, CDK will continue to refer to its two FTC productions with the terminology from its opening memorandum, as the "AutoMate" production and the "Joint Conduct" production, respectively.

1

more than 3.5 million pages—are relevant.[2] Plaintiffs' rationale for abandoning their agreement therefore makes sense only if they are claiming that when they agreed to accept only "relevant" AutoMate documents, they thought that meant *all* AutoMate documents. But that is absurd.

Nor are plaintiffs any more persuasive when—in the final paragraph and footnote of their memorandum—they try to excuse their decision to abandon their earlier agreement. Pls. Resp. 15 & n.10. The "case was proceeding on an expedited schedule" at the time, they insist, and Peggy Wedgworth, interim class counsel for the dealers, was not a party to the arrangement. But the pace of litigation is no excuse for upending agreed-upon discovery terms, and plaintiffs do not even try to explain how Ms. Wedgworth's appointment as interim class counsel makes the entire AutoMate production relevant, when plaintiffs' co-lead MDL counsel (also Authenticom's counsel) previously agreed it was not.

Indeed, for weeks now, the parties—including MDL plaintiffs' counsel, both Kellogg Hansen (which represents Authenticom, AutoLoop, the putative vendor class, dealer Bob Baker Volkswagen, Cox and its subsidiaries, and MVSC) and Milberg (which represents the dealer class)—have been negotiating custodians and search terms *in addition* to those previously *agreed to by CDK and counsel for Authenticom*. *See, e.g.*, Ex. 1 at 1 (05/25/2018 Ltr. from Michael N. Nemelka to Britt M. Miller, Aundrea K. Gulley, & Brian T. Ross ("We note that the custodians and search terms that Defendants have already agreed to are identified in previous correspondence.")). Now these same counsel seek to distance themselves from one of the other agreements between CDK and Authenticom—the agreement to *accept* only those documents in the AutoMate collection relevant to the claims and defenses in the MDL. Pls. Resp. 15. Plaintiffs

---

[2] It is therefore misleading for plaintiffs to say that the parties' "disagreement, now the subject of this motion, is over CDK's overly narrow view of relevance." Pls. Resp. 15. The only dispute before this Court is whether the entire AutoMate production is necessarily relevant, as plaintiffs contend, or whether CDK is instead required to produce the portions of that collection that actually relate to the claims and defenses presented by the case before this Court.

cannot insist that CDK comply with the agreements they like but jettison the ones they do not. If that is plaintiffs' position then the parties should simply abandon the months of discovery negotiations that CDK engaged in with Authenticom (as those agreements were made in the same "light of the fast-tracked schedule" and dealer class plaintiffs were not involved) and start over. The parties can simply begin their negotiations again so there are no questions going forward as to which agreements are in play and which are not.

Plaintiffs also misstate and omit key facts in describing Judge St. Eve's April 25 order (Dkt. 146), which plaintiffs now claim is dispositive of this entire dispute (although plaintiffs failed to mention the order at any point during the May 18-22 meet-and-confers precipitating this motion). As detailed in Part I below, the parties always drew a sharp distinction between the Joint Conduct production and the unrelated AutoMate acquisition production, and the April order directed the parties to turn over documents produced in connection with the Joint Conduct proceeding only—a fact made clear by contemporaneous correspondence and the Court's subsequent, May 7 order (Dkt. 166), all of which plaintiffs omit from their memorandum.

At the same time, plaintiffs ignore that they are already receiving, and will be receiving, the relevant documents from the relevant custodians (including documents from some of the same CDK custodians involved in the AutoMate production) on all of the issues they claim the AutoMate production will inform. And plaintiffs disregard the obvious burdens their request would impose, falsely suggesting that CDK could simply produce millions of pages without further effort.

Without the benefit of factual misstatements and omissions, plaintiffs' arguments fail easily: (1) Their sweeping new discovery demand goes well beyond Judge St. Eve's April 25, 2018 order, as plaintiffs seek to rewrite the Court's discovery instructions, (2) the AutoMate

3

production is not relevant *in toto* to the MDL litigation, and (3) producing the AutoMate-related documents would involve a massive undertaking, not the "negligible burden" that plaintiffs trivialize.

I. **Plaintiffs Mischaracterize Judge St. Eve's Scheduling Order And Ignore Her Later Case Management Order.**

Plaintiffs chide CDK for failing to address Judge St. Eve's prior scheduling order, whose "plain language" purportedly "requires production of the entire CDK production to the FTC." Pls. Resp. 9. That order "alone," plaintiffs insist, "is sufficient to deny [CDK's] motion." *Id.* But if that were true, then the parties would not have been in conflict over this production for the past several weeks—during which time plaintiffs never once invoked the Court's order.

This is undoubtedly because, as plaintiffs well know, Judge St. Eve's April 25 scheduling order was limited to documents that the parties produced to the FTC in connection with the Joint Conduct proceeding—not the Second Request, which involved the proposed AutoMate acquisition. Months ago, CDK and plaintiffs agreed that *those* documents (the Joint Conduct CID production) would be reproduced in the civil litigation in full,[3] and Judge St. Eve's later, May 7 case management order established a deadline—May 9, 2018—for the parties to complete their "exchange … [of] documents produced to the FTC in connection with its *current investigation of Defendants*." Case Management Order (Dkt. 166) at 2 (emphasis added). It is undisputed that the FTC's investigation of the AutoMate transaction had closed weeks earlier, in

---

[3] CDK also has agreed—contrary to plaintiffs' false accusation (Pls. Resp. 4)—to produce its Joint Conduct CID. *See* Mem. Ex. 1 (05/24/2018 Ltr. from Britt Miller to Michael N. Nemelka & Peggy J. Wedgworth) at 2 ("*CDK's CID*. Notwithstanding the fact that (a) there is no outstanding discovery request to CDK seeking the production of the Joint Conduct CID, and (b) Authenticom's prior informal request for its production was premised on a stated need to use it in order to challenge Reynolds's withholding non-relevant documents from its reproduction of its Joint Conduct Investigation production (an issue that is currently moot as Reynolds has re-produced the entirety of that production in the MDL), CDK has agreed to produce a copy of its Joint Conduct CID. Counsel for the Class Plaintiffs stated during our meet-and-confer that they would include a specific RFP asking for the production of the CID in their upcoming May 25 RFPs").

4

March. *See* Pls. Resp. 5. Moreover, the FTC's investigation of the AutoMate transaction involved CDK, not "Defendants." The only "current" FTC investigation of CDK *and* Reynolds to which the Court could have been referring was the FTC's joint conduct investigation.

Not only do plaintiffs ignore the May case management order (relying instead on an ambiguous interim order issued 12 days earlier that the case management order superseded), but they omit the fact that the parties have always treated plaintiffs' request for CDK's CID production and their request for CDK's AutoMate production as two separate discovery issues, addressed by separate requests for production. *See* Pls. Resp. 6. Indeed, it is undisputed that when the parties appeared before Judge St. Eve on April 25, they had already reached an agreement that CDK would reproduce its Joint Conduct production in full but would produce only those portions of the AutoMate production that were relevant to the civil litigation. *Id.* ("Authenticom's counsel accepted that proposal."); *see also* Mem. 2-3. The parties' respective submissions on scheduling issues confirm and reinforce this, as does the hearing transcript.[4]

---

[4] In their Corrected Joint Initial Status Report, filed on March 15, three individual plaintiffs—Authenticom, MVSC, and Cox Automotive—and certain dealership class plaintiffs (all represented by Kellogg Hansen) reported that "CDK and Reynolds also have been producing documents and otherwise responding to an ongoing FTC investigation since at least July 2017 (an investigation that was prompted by the Authenticom preliminary injunction proceedings)." Dkt. 64 at 11. These plaintiffs did not mention the FTC's investigation of the proposed AutoMate transaction or any party's production of documents to the FTC in connection with that investigation. Similarly, the schedule later proposed by all MDL plaintiffs included a proposal for "Authenticom and Defendants" to "continue to re-produce to all parties any subsequent productions either makes in response to the FTC's CID"—singular—"simultaneous with their production to the FTC, including any privilege logs." Defs. Supplemental Scheduling Submission (Dkt. 156, Ex. A to Ex. 1 (04/05/2018 Ltr. from Britt Miller to MDL Plaintiffs) at 2) (reproducing both parties' scheduling proposals). Again, plaintiffs did not mention the Second Request or propose any obligations for documents produced to the FTC in connection with the Second Request. Moreover, to CDK's knowledge, none of the MDL Plaintiffs that produced documents in the AutoMate inquiry has reproduced the documents they provided to the FTC in connection with that proceeding as of April 25, nor has any produced them since. Mem. Ex. 8 at 2 (05/08/2018 Ltr. from Michael N. Nemelka to Aundrea K. Gulley & Britt M. Miller). In other words, despite now claiming that Judge St. Eve "ordered" the parties to produce all documents provided to the FTC in connection with the Second Request, none of the plaintiffs has done so. Instead, like CDK, certain plaintiffs (Authenticom and AutoLoop) have only produced the documents that they provided to the FTC in connection with the Joint Conduct proceeding. *Id.*

While it is true that plaintiffs have since attempted to go back on their agreement concerning the AutoMate production—a tactic that the Court should reject (*see supra* pp. 1-2), they waited until *after* the April 25 status conference to put the matter back at issue. *See* Mem. 4 & Mem. Exs. 2, 7. In short, plaintiffs' theory that Judge St. Eve's interim scheduling order supports their position is squarely refuted by the record surrounding that order and, should there be any doubt, by the Court's subsequent case management order.

Nor is there anything to plaintiffs' claim that CDK has taken an inconsistent position by purportedly "seeking the same documents from Plaintiffs"—"i.e., all documents provided to the FTC in connection with the Auto/Mate investigation." Pls. Resp. 7. CDK requested documents that Authenticom provided to the FTC in connection with any "complaint" or "investigation." Pls. Ex. 3 (Request No. 26). Authenticom has responded to the Request by producing the documents it provided to the FTC in connection with the Joint Conduct proceeding (*see* Mem. Ex. 8 at 2)—a position that CDK has never challenged. And to the extent CDK's document requests to Authenticom (or any of the other MDL plaintiffs) can be read to seek those parties' AutoMate productions (if any), CDK hereby agrees to forego those productions except to the extent they seek documents relevant to the claims and defenses in this litigation.

## II. The AutoMate Production Is Not Relevant *In Toto*.

Although relevance alone is not the touchstone for federal discovery, *see infra* Part III, to prevail plaintiffs must paint the *entire* AutoMate production as directly relevant to the MDL. Plaintiffs attempt to do so, maintaining that "competition in the DMS market is highly relevant to this case" and that plaintiffs need information on the "competitive dynamics in" that market. Pls. Resp. 9.[5] But plaintiffs are already receiving material on those topics—including documents that

---

[5] Plaintiffs complain that CDK may not withhold relevant material merely because that same material also "contains fresh evidence of additional wrongdoing." Pls. Resp. 11 n.6. That is a straw man. CDK's

6

were part of CDK's AutoMate production, *see infra* pp. 11-12—and what matters here is that much of that production is *irrelevant* to the MDL.

Indeed, the reproduction of the FTC AutoMate request attached to plaintiffs' response catalogues a long list of materials having nothing to do with the MDL—including documents with data from "each electronic database used or maintained by" CDK on any of a long list of topics including "products and product codes" and "patents or other intellectual property"; "documents relating to any Plans of [CDK] or any other Person for the construction of new facilities, the closing of any existing facilities, or the expansion, conversion, or modification . . . of current facilities"; information on "whether [CDK] is a member or subscribes to, all trade associations, information services, and other organizations," including certain "documents submitted to or received from each identified organization"; and transaction-specific material such as "all documents relating to the benefits, costs, and risks anticipated as a result of the" proposed AutoMate purchase. Pls. Ex. 1, FTC Specifications 10, 15, 16, 19. Not even plaintiffs can claim that these materials—and others like them in the FTC request—are relevant to the MDL.

Were there any doubt on that score, actions by the FTC and by plaintiffs themselves put it to rest. Again, the FTC team investigating CDK and Reynolds's alleged Joint Conduct—the FTC proceeding that relates to some of the issues raised in the MDL—has not requested the millions of pages of AutoMate documents that plaintiffs now seek. Meanwhile, the FTC's separate AutoMate team concluded its work and has destroyed CDK's AutoMate production, without

---

opening brief merely noted that to the extent plaintiffs' purpose in seeking the AutoMate production was to gin up new claims, then such a request is improper. Plaintiffs' authority does not refute that basic point, and CDK seeks a protective order because the burden of producing the millions of pages that plaintiffs demand dramatically overwhelms their potential relevancy.

transmitting it to the Joint Conduct team. This reinforces what the FTC document request already shows—that most of CDK's AutoMate production is immaterial to the MDL claims.

And consider plaintiffs' own conduct. They have had the bulk of CDK's Joint Conduct production for many months yet—despite representations to the Court that they have reviewed millions of pages of CDK's production (*see* Ex. 2 at 34 (03/12/2018 Hr'g Tr.); Dkt. 64 at 10 (Corrected Joint Initial Status Rpt.))—have requested production of CDK documents from only *five* of the 42 custodians who were involved in the AutoMate production (but not involved in the Joint Conduct production, which plaintiffs have already received). And each of these five—Brian MacDonald (CEO), Al Nietzel (former CFO), Linda Bartman (former Global Chief Marketing Officer), Scott Herbers (Vice-President, North American Dealership Sales), and Mike Joza (Senior Dir. Business Development)—is the type of senior executive one would expect to produce documents in connection with an acquisition like the one proposed with AutoMate.[6] In other words, after supposedly reviewing over two million pages of CDK documents, plaintiffs have not identified *37* of the AutoMate custodians as potential additional custodians in the MDL. Even plaintiffs recognize that these remaining custodians—most of those involved in the AutoMate production—are unlikely to maintain documents relevant to the MDL.

In short, plaintiffs entirely ignore the pertinent question—whether the AutoMate production is relevant *in toto*. The answer to that question is obviously no, as the FTC request, FTC action, and plaintiffs' other discovery requests make clear.

---

[6] Moreover, CDK has already offered to potentially include three of them—MacDonald, Joza, and Nietzel—as additional custodians in these MDL proceedings, subject to the parties reaching overall agreement on additional custodians. CVR (a defendant in the MVSC action only) has offered to include Scott Herbers (who previously worked for CVR) in its production.

### III. Plaintiffs' Discovery Demand Is Not Proportional.

Even if the entire AutoMate production were relevant—as plaintiffs contend—CDK still would be entitled to a protective order under Rule 26. But because, at best, only a small portion is relevant, plaintiffs' discovery demand is even more obviously unsustainable.

This is because Rule 26, as amended in 2015, expressly considers not just relevance, but *proportionality*, and plaintiffs' demand is precisely the breed of disproportionate "over-discovery" and "discovery overuse" that the 2015 amendments mean to eliminate. *See* Fed. R. Civ. P. 26 Advisory Committee's Note to 2015 Amendment. Plaintiffs downplay the proportionality requirement, citing only pre-amendment cases in their "Legal Standard" section for the principle that plaintiffs are entitled to discovery so long as the material they seek is non-privileged and relevant. Pls. Resp. 8. But the amendment intends to "rein in" these "popular notions that *anything relevant* should be produced and to emphasize the judge's role in controlling discovery." *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.*, 314 F.R.D. 304, 307 (S.D. Ind. 2016) (emphasis added). A requesting party may no longer "beat[] the drum of relevancy"; rather, it must show that requested discovery is "proportional to the needs of [the] case," including "whether the burden of the discovery outweighs its likely benefit" and "whether the information is cumulative to other discovery." *Id.* at 311.

Plaintiffs ultimately acknowledge the need for proportionality (at p. 12), only to downplay and misapply the standard. In particular, while courts may consider the other factors listed in the rule, it is enough that the burden of production outweighs its marginal benefit (an analysis that embraces both factors five and six in plaintiffs' list). *See, e.g.*, *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016) (considering only burden and benefit to hold that expansive request for documents of

9

marginal utility was disproportionate); *see also* Fed. R. Civ. P. 26 Advisory Committee's Note to 2015 Amendment ("consideration of the parties' resources does not foreclose discovery requests addressed to an impecunious party, nor justify unlimited discovery requests addressed to a wealthy party"). And while plaintiffs seek to place the burden on CDK to show that the documents are relevant and the request proportional, Pls. Resp. 12 (citing decision from N. D. Texas), many courts, including courts in this district and circuit, have held that these burdens fall on the requestor.[7] For these courts, the requesting party must "show, before anything else, that the discovery sought is proportional to the needs of the case." *Gilead Scis., Inc. v. Merck & Co, Inc.*, No. 5:13-CV-04057-BLF, 2016 WL 146574, at *1 (N.D. Cal. Jan. 13, 2016).

Ultimately, however, it is irrelevant who bears the burden here, for CDK has shown that "any marginal relevance that such information could have to the claim made by the Plaintiff is not proportional to the burden of producing such information placed on the Defendant by" plaintiffs' request. *Elliott v. Superior Pool Prod., LLC*, No. 15-CV-1126, 2016 WL 29243, at *6 (C.D. Ill. Jan. 4, 2016); *see also Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088 (RMB) (HBP), 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016) ("Proportionality focuses on the marginal utility of the discovery sought.") (citations omitted). First, there would be very little "marginal utility" in turning over the entire AutoMate production. *Vaigasi*, 2016 WL 616386, at *14. As

---

[7] *See, e.g.*, *Martin v. Cook Cty.*, No. 17 C 2330, 2018 U.S. Dist. LEXIS 79704, at *6 (N.D. Ill. May 11, 2018) ("a party seeking to depose a high-ranking official must demonstrate as a threshold matter that the discovery sought is relevant to any party's claim or defense and proportional to the needs of the case and that the burden ... of the proposed discovery outweighs its likely benefit") (quotation omitted); *Alerding Castor Hewitt LLP v. Fletcher*, No. 116CV02453RLYMJD, 2017 WL 6035327, at *2 (S.D. Ind. Dec. 5, 2017) ("The party seeking the discovery bears the burden to prove that the requested documents are both relevant and proportional to the needs of the case."); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. CV 12-6383, 2016 WL 4703656, at *2 (E.D.N.Y Sept. 7, 2016) ("[P]arty seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition."); *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, No. 15-CV-4717 (FB), 2016 WL 7017356, at *5 (E.D.N.Y. Nov. 30, 2016) (same); *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 211 (W.D. Va. 2016) (court required party seeking discovery to make not only an initial showing of relevance but also an initial showing of proportionality).

explained, at best only a small portion of that production is relevant. And CDK has already reviewed and produced 820,000 documents, more than 2.4 million pages, in the MDL proceedings, of which 670,000 documents made up CDK's entire Joint Conduct production (much of which formed part of the AutoMate production as well). On top of that, CDK has said it will run any agreed-upon search terms through the document collections of any agreed-upon custodian—including the collections of any agreed-upon custodian that also produced documents in the AutoMate proceedings. *See* Ex. 3 at 2 (06/05/2018 Ltr. from Britt Miller to Michael N. Nemelka & Peggy J. Wedgworth).

Thus, while plaintiffs claim that the balance of the AutoMate documents will shed light on whether the DMS market is "highly concentrated" and related issues, Pls. Resp. 10-11, they fail to explain why the 670,000 custodial documents that they already have from CDK's AutoMate production—coupled with CDK's commitment to provide additional relevant AutoMate documents from agreed-upon or Court-ordered custodians and "any factual summaries, data compilations, or presentations created and provided to the government for purposes of responding to the Second Request"—will not be sufficient. *See* Mem. Ex. 3 (11/15/2017 Ltr. from Britt M. Miller to Michael N. Nemelka). Nor is any of this discovery unique to the AutoMate production. Authenticom has separately propounded—and CDK is responding to—broad discovery on these and a host of other issues.[8] Beyond that, plaintiffs

---

[8] *See, e.g.*, Pls. Ex. 2 (Authenticom Requests No. 31-32 (win/loss reports), 33 & 35-36 (customer switching), 51-55 & 57-63 (financial data), 64 (customer losses), 65-70 (pricing and price changes), 71 (vendor "pass-through" of 3PA charges), 72 (pricing charged by other "data integrators"), 89-90 ("competitive threat[s]"); Ex. 4 (Authenticom Requests No. 96 (affordability of 3PA fees), 97 (reductions in service offerings by vendors purportedly in response to 3PA fees), 102-03 (customer invoices). The precise scope of CDK's responses to Requests 96, 97, and 102-03 remains subject to ongoing meet-and-confer negotiations.

recently served almost 150 *additional* requests for production, including numerous categories of documents related to plaintiffs' market allegations and competition.[9]

Second, balanced against the marginal utility in producing all the AutoMate documents rather than the material plaintiffs are already receiving, CDK has specifically identified the significant burdens they would face in turning over the entire, 3.5-million-page AutoMate production.[10] CDK's counsel would need to review the documents for privilege and other objections, *as well as for substance*.[11] It would be folly for CDK to allow plaintiffs to review the production for any nugget purportedly supporting their allegations without looking for material in that same production that affirmatively refutes plaintiffs' claims. Likewise, plaintiffs' suggestion to produce everything and reserve relevancy objections until such time as plaintiffs seek to "use" a document from the collection turns the Federal Rules on their head. *See* Pls. Resp. 13 & n.7. By the time plaintiffs try to use a document from the production—in a deposition, summary judgment, or some other filing—it would be too late; CDK cannot "suddenly" review 1.6 million documents in an effort to refute plaintiffs' interpretation of the

---

[9] *See, e.g.*, Ex. 5 ("Individual Plaintiff" Requests No. 67 (market evaluations), 68 & 81-82 (additional financial data and transactional sales data), 72 (projections, forecasts, financial analyses), 83 (sales and marketing reports), 84-86 (revenue, profit, and cost projections), 87-88 (valuations), 92-94 (vendor customers and win/loss reports); Ex. 6 (Dealership Class Plaintiff Requests No. 10 & 13 (comparisons between CDK and other DMS providers), 12 (manual data extraction capabilities), 14 ("all documents concerning competition within the DMS or Data Integration Services market"), 15 (customer switching), 19 & 21 (DMS customer statistics), 20, 22, 25, 28, 41 (pricing and price changes), 23 (costs of providing DMS service), 24 (DMS customer losses), 26 (pricing charged by other DMS providers), 42 (financial projections), 46-47 (barriers to entry), 48 (transactional sales data). CDK's responses to the "individual plaintiff" and dealership class plaintiffs' requests for production are currently due June 22.

[10] Having identified these specific burdens in their opening and reply motions, CDK need not make the same points in an affidavit. *S.E.C. v. Brady*, 238 F.R.D. 429 (N.D. Tex. 2006), on which plaintiffs rely, is not to the contrary. *See id.* at 437-38 (indicating that it is sufficient to identify burden either in filing or with evidence at hearing).

[11] Plaintiffs cite *In re Zofran Prods. Liab. Litig.*, 2016 WL 2349105 (D. Mass. May 4, 2016), which purportedly "den[ied] [a] motion for protective order where the defendant had already produced the same documents to the DOJ." Pls. Resp. 14-15. In fact, however, that decision does not address that issue at all.

document or its relevance.[12] By plaintiffs' logic, litigants should allow opposing counsel to review all of their paper and electronic records—everything the litigants have—and deal with relevancy issues later.

Given the foregoing, plaintiffs cannot plausibly claim that the "marginal relevance" of reviewing the entire AutoMate production—rather than using negotiated discovery terms to obtain only relevant and responsive documents—would be "proportional to the burden" that this wholesale production would impose on CDK. Indulging plaintiffs would not only run afoul of Rule 26 but would throw this case into the very "Serbonian bog" cautioned by the Seventh Circuit. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625–26 (7th Cir. 2010) (referring to discovery as "that Serbonian bog ... where armies whole have sunk").

In short, the Court should issue a protective order shielding CDK from any obligation to produce its entire production in connection with the FTC's AutoMate transaction and limiting any production obligations to those originally agreed to by CDK and counsel for Authenticom—namely, to run the agreed-upon search terms on documents in the custody of the AutoMate-related custodians, just as CDK will apply these terms to look for other responsive documents in its files.

---

[12] Plaintiffs' offer to provisionally designate the entire AutoMate production as "Highly Confidential" does nothing to alleviate these burdens. *See* Pls. Resp. 12-13; Ex. 4 at 1 (06/07/2018 Ltr. from Peggy Wedgworth & Derek T. Ho to Britt M. Miller).

13

Dated: June 18, 2018                                   Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant CDK Global, LLC*

14

## **CERTIFICATE OF SERVICE**

I, Britt M. Miller, an attorney, hereby certify that on June 18, 2018, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
Email: bmiller@mayerbrown.com