```
 1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3   IN RE:                          )   Case No. 18 C 864
                                     )
 4   DEALER MANAGEMENT SYSTEMS       )   Chicago, Illinois
     ANTITRUST LITIGATION            )   June 18, 2018
 5                                   )   1:35 p.m.

 6
                         TRANSCRIPT OF PROCEEDINGS
 7          BEFORE THE HONORABLE ROBERT M. DOW, JR.

 8   APPEARANCES:

 9   For the Plaintiffs,
     Authenticom, et al.:   MR. DEREK TAM HO
10                          MR. JOSHUA HAFENBRACK
                            MR. MICHAEL N. NEMELKA
11                          Kellogg, Hansen, Todd, Figel &
                            Frederick, P.L.L.C.
12                          1615 M St. N.W.
                            Suite 400
13                          Washington, DC  20036
                            (202) 236-7931
14                          E-mail:  Dho@kellogghansen.com
                                     Jhafenbrack@kellogghansen.com
15                                   Mnemelka@kellogghansen.com

16   For the Dealer
     Plaintiffs:            MS. PEGGY J. WEDGWORTH
17                          Milberg LLP
                            1 Penn Plaza
18                          Suite 4800
                            New York, NY  10119
19                          (212)631-8622
                            E-mail:  Pwedgworth@milberg.com
20

21   Court Reporter:

22             KATHLEEN M. FENNELL, CSR, RPR, RMR, FCRR
                        Official Court Reporter
23                   United States District Court
              219 South Dearborn Street, Suite 2524-A
24                   Chicago, Illinois  60604
                      Telephone:  (312) 435-5569
25              Kathleen_Fennell@ilnd.uscourts.gov
```

1  APPEARANCES:   (Continued)

2  For the Dealer
   Plaintiffs:                MR. JAMES E. BARZ
3                             Robbins Geller Rudman & Dowd LLP
                              200 S. Wacker Drive
4                             Suite 3100
                              Chicago, IL  60606
5                             (312) 674-4674
                              E-mail:  Jbarz@rgrdlaw.com
6
                              MS. SHANNON M. McNULTY
7                             Clifford Law Offices
                              120 North LaSalle Street
8                             Suite 3100
                              Chicago, IL  60602
9                             (312) 899-9090
                              E-mail:  Smm@cliffordlaw.com
10
   Plaintiffs' Liaison
11 Counsel:                   MR. SAMUEL ISSACHAROFF
                              40 Washington Square South
12                            New York, NY  10012
                              (212) 998-6580
13                            E-mail:  Issacharoff@exchange.law.nyu.edu

14 For Defendants CDK
   Global, LLC, and
15 Computerized Vehicle
   Registration:              MS. BRITT M. MILLER
16                            MR. MATTHEW D. PROVANCE
                              Mayer Brown LLP
17                            71 South Wacker Drive
                              Chicago, IL  60606
18                            (312) 7782-0600
                              E-mail:  Bmiller@mayerbrown.com
19                                      Mprovance@mayerbrown.com

20 For Defendant The
   Reynolds and
21 Reynolds Company:          MS. AUNDREA K. GULLEY
                              Gibbs & Bruns, L.L.P.
22                            1100 Louisiana
                              Suite 5300
23                            Houston, TX  77002
                              (713) 650-8805
24                            E-mail:  Agulley@gibbsbruns.com

25

1    APPEARANCES:   (Continued)

2    For Defendant The
     Reynolds and
3    Reynolds Company:          MR. LEO CASERIA
                                 Sheppard Mullin Richter &
4                               Hampton LLP
                                 333 South Hope Street
5                               Forty-third Floor
                                 Los Angeles, CA  90071
6                               (213) 620-1780
                                 E-mail:  Lcaseria@sheppardmullin.com
7
                                 MR. MICHAEL P. COHEN
8                               Sheppard Mullin Richter &
                                 Hampton LLP
9                               2099 Pennsylvania Avenue, NW
                                 Suite 100
10                              Washington, DC  20006
                                 (202) 747-1900
11                              E-mail:  Mcohen@sheppardmullin.com

12   ALSO PRESENT:              MR. STEPHEN COTTRELL
                                 CEO, Authenticom, Inc.
13
                                 MR. MAYER GRASHIN
14                              In-house Counsel, CDK Global, Inc.

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court:)

2        THE CLERK:  18 CV 864, In Re:  Dealer Management

3    Systems Antitrust Litigation.

4        THE COURT:  Good afternoon, everybody.

5        MS. WEDGWORTH:  Good afternoon.

6        MS. MILLER:  Good afternoon.

7        THE COURT:  Like an MDL case, a lot of people.  Let's

8    see if I can take my roster here.  So plaintiffs.  There they

9    are.  Good morning.

10        MR. HO:  Good morning -- good afternoon, your Honor.

11   Derek Ho from Kellogg Hansen.  Also here today from Kellogg

12   Hansen are Michael Nemelka and Joshua Hafenbrack.  As your

13   Honor knows, we represent, among others, Authenticom.  And I'd

14   just like to introduce Authenticom's CEO, Stephen Cottrell,

15   who's in the gallery.

16        THE COURT:  Very good.  Good afternoon.  Welcome.

17   It's good to put all the names with faces.  Some of you guys I

18   know.

19        Okay, Professor, nice to see you.

20        MR. ISSACHAROFF:  Good morning, your Honor -- Good

21   afternoon.  It's a pleasure being here.  I'm liaison counsel

22   and I've been working with Mr. Ho in this case.  Issacharoff,

23   I-s-s-a-c-h-a-r-o-f-f.

24        THE COURT:  All right.  Mr. Barz.

25        MR. BARZ:  Good afternoon, your Honor.  Jim Barz.

1    I'm on the plaintiff's steering committee on the dealer case,

2    and Ms. Wedgworth is lead.

3         MS. WEDGWORTH:  Good morning -- good afternoon, your

4    Honor, Peggy Wedgworth from Milberg representing --

01:36:38    5         THE COURT:  This 1:30 is tricking everybody.

6         (Laughter.)

7         MS. WEDGWORTH:  I'll turn it around.  Representing

8    the class dealership plaintiffs.

9         THE COURT:  Okay.  Very good.  Ms. McNulty is behind

01:36:47   10   Mr. Barz.

11        MS. McNULTY:  Good afternoon.

12        THE COURT:  Did I with get everybody on this side?

13   Okay, great.

14        Ms. Miller?

01:36:53   15        MS. MILLER:  Good afternoon, your Honor.  Britt

16   Miller, Mayer Brown, on behalf of CDK Global, LLC, and

17   Computerized Vehicle Registration.

18        With me is my partner, Matt Provance, and also

19   in-house counsel for CDK, Mayer Grashin, is in the gallery.

01:37:07   20        THE COURT:  Okay.  Very good.

21        MS. GULLEY:  Good afternoon, your Honor.  Aundrea

22   Gulley, Gibbs & Bruns, on behalf of Reynolds and Reynolds

23   Company, a defendant in some and in all of the cases.  I am

24   here with Michael Cohen and Leo Caseria.

01:37:24   25        THE COURT:  Okay.  Well, good afternoon.  Good to see

1    you all.  I will eventually learn all of you guys' names and

2    faces, I'm sure.  I said to Kassie -- this is Kassie, my law

3    clerk, and Kassie is a refugee from Kirkland, and she's worked

4    on some antitrust cases.  I think she worked on Judge

01:37:41   5    Proctor's case, which is an antitrust case MDL that's down in

6    Birmingham, so she's had some experience in this.  And you

7    guys have already been citing my previous antitrust MDL I saw

8    in the briefs here.

9         I met with Judge St. Eve this morning, too, and she's

01:37:55   10   kept me up to speed on this from even before it got reassigned

11   to me, so I've got some idea of what's going on here, but an

12   enormous homework assignment in front of me is to pick this

13   up.

14        You all can -- everybody who wants to be seated, can

01:38:10   15   be seated.  You don't all have to stand here for the entire

16   time.

17        Let me start by putting on the record what you guys

18   already know, which is that I was a partner at Mayer Brown.  I

19   think I've got people on both sides of this case who were at

01:38:22   20   Mayer Brown with me, so I'm sure all of you guys know that.

21        And the code of conduct rules require me to recuse

22   from Mayer Brown cases for five years.  I recused for

23   ten years in an abundance of caution, but once I hit ten years

24   here, I thought it was time and I probably was far enough

01:38:38   25   removed that I don't even know all the Mayer Brown people on

1  this case, so I wanted to put that on the record.  I know you
2  guys know that.

3              The irony of this is I think I worked more with
4  Mr. Panter than I did with Ms. Miller when I was at Mayer
5  Brown because we did all kinds of telecom cases together,
6  including *Trinko,* and *Twombly* I think we probably worked on
7  with you guys, too.

8              So I have connections to people on all sides of this
9  case, as I already explained to Kassie this morning, so -- but
10 I wanted that to be of record because the rest of the world
11 may not know what you guys know and someone who reads this
12 transcript some day.

13             Anyway, I'm really -- I love MDL cases, and I'm
14 really glad to have you guys.  I know this is going to be a
15 really fun and interesting case for me.  It's going to be a
16 lot of work for all of us, and I know I am woefully
17 underprepared today to tackle anything except to find out what
18 my homework assignments are, because this case was transferred
19 to me about three weeks ago.

20             The week it was transferred, I was on trial.  I did
21 have a chance to talk to Judge St. Eve both before and after
22 that because I knew that the hammer was going to drop on me
23 here.  And I'm delighted actually, I really think this is
24 going to be interesting, and MDL cases come with good lawyers,
25 which is also really nice.

1      Let me tell you what little I know, and what I

2  understand my homework assignments to be, and then you guys

3  can help me out with the rest of this.  So here's the easy

4  part.

5      There's two motions to seal that are pending right

6  now, 192 and 207.  I take it no one's objecting to that, and

7  everybody's going to file a lot of stuff under seal in this

8  case, so those are good to go?

9      MS. MILLER:  Yes, your Honor.

10      MS. GULLEY: Yes, your Honor.

11      MS. WEDGWORTH:  Yes, your Honor.

12      THE COURT:  Excellent.  Chorus of yeses.  Okay.  So,

13  Carolyn, 192 and 207 can be granted.

14      The next one that I wanted to talk about is 202, and

15  that's the motion to appoint Mr. Ho as interim lead counsel

16  for the vendor class.

17      Anybody have any comments on that motion?

18      MS. MILLER:  Just to comment, your Honor, we're not

19  sure why it's ripe at this point.  From our standpoint, it's

20  premature.  The rules and the committee notes clearly say that

21  you appoint interim lead counsel if there's a conflict, if

22  there's more than one person vying for it, if there's the

23  possibility of uncertainty.

24      This wasn't a class action until two weeks ago.  The

25  action was originally filed as an individual action on behalf

1  of just AutoLoop.  There are no other counsel vying for -- to

2  represent the vendor class, and so unless and until there

3  comes a time that there is a conflict and there needs to be

4  the appointment of interim lead counsel, we just don't see a

01:41:10  5  reason for there to be an appointment at this time.

6              THE COURT:  Okay.  Mr. Ho?

7              MS. WEDGWORTH:  Your --

8              THE COURT:  Anybody can speak up if they wish.

9              MS. WEDGWORTH:  Well, and also with regard to the

01:41:19  10  dealership class, we take no position on Mr. Ho's motion as to

11  lead counsel.  We do note, as Ms. Miller just pointed out,

12  there may be conflict at some point in the future.  At some

13  point damages issues will have the pass-on issue with regard

14  to vendors versus class dealership, so we just note that right

01:41:37  15  now, but we take no position on this motion.

16              THE COURT:  Okay.

17              MR. HO:  Professor Issacharoff has been advising us

18  on this, but I'll say for starters that as your Honor knows, I

19  am already one of the two co-lead counsels of this MDL, so one

01:41:51  20  of the reasons we wanted to front this motion with the Court

21  is just to have clarity as to who it is that we are

22  representing.  We obviously have individual clients, including

23  Authenticom, Cox and VSC.  We have applied now to be interim

24  lead counsel for a class of similarly situated vendors who are

01:42:12  25  essentially direct purchasers of the data integration services

1     that are at the core of this case.

2          So in our view, it is helpful to rounding out the

3     leadership of the MDL, the structure of this MDL, to have

4     clarity and certainty around which clients we represent in

01:42:30     5     this MDL.  I don't know if Professor Issacharoff has more to

6     add.

7          MR. ISSACHAROFF:  Just one point, your Honor, on the

8     timing question.  One of the reasons for the creation of the

9     interim class counsel mechanism in the rules in the past

01:42:44     10     decade and a half is precisely so that we know who's

11     responsible for making certain kinds of decisions.

12          Ms. Wedgworth correctly says that there could be

13     conflicts down the road.  We don't think there will be, but

14     there could be between the dealers and the vendors.  It's

01:43:00     15     important that somebody be able to speak right from now for

16     the vendors as a whole, and the appointment of interim counsel

17     just imposes certain duties on Mr. Ho but gives him no other

18     benefits.

19          So it's a creation of an accountability mechanism

01:43:16     20     because decisions will be made in the course of discovery and

21     so forth that will affect these folks, and they deserve to

22     have somebody formally designated as their counsel at this

23     point, the interim counsel.  With class certification decision

24     obviously being pushed down the road, I think this is faithful

01:43:33     25     to exactly why the new rule was created.

1    THE COURT:  And I suppose that the potential benefit

2  of it is as you within the leadership of the -- on the

3  plaintiffs' side see issues that might fall under this realm

4  of potential conflicts, you know who speaks for whom, is

01:43:50    5  that --

6    MR. ISSACHAROFF:  That's exactly right, and one of

7  the reasons that we proposed -- my role in this is this

8  strange new creation that Judge St. Eve liked of the liaison

9  counsel was to try to figure out if that's coming and then to

01:44:04   10  try to head it off in some fashion, and I think it's better,

11  if there are potential conflicts, not to leave some group

12  exposed and unrepresented altogether.

13    And that's why we propose doing this at this time,

14  and we think that rounds out both the leadership structure and

01:44:20   15  the responsibility and fiduciary duties in the case.

16    THE COURT:  Okay.  And how are the -- how would the

17  defendants be prejudiced in any way by this?

18    MS. MILLER:  The concern we have is twofold.  One,

19  that it's premature; but also there is an existing potential

01:44:35   20  conflict right now.

21    Kellogg Hansen, in addition to representing

22  Authenticom and MVSC and Cox and AutoLoop, also represents a

23  dealer, and Ms. Wedgworth properly pointed out that at some

24  point if we get to the point where we're at damages or

01:44:51   25  otherwise, the vendors are going to be saying we want to --

1  that we kept all of the damages and we didn't pass any on, and

2  the dealers are going to be saying, well, it all got passed on

3  to us.

4          And so the fact that Kellogg Hansen now represents

01:45:05  5  pretty much one entity in every level of the chain creates a

6  potential conflict now.  And the case law at least we think is

7  clear, including as to the committee notes, it says that if

8  there's one law firm that is representing one plaintiff in a

9  putative class action, there's no need to appoint someone.

01:45:27  10  That named plaintiff and that named counsel will continue to

11  represent the named plaintiff and the putative class without a

12  formal interim appointment.

13          THE COURT:  Now, everybody is interim in the sense

14  that if anything comes up in the future that would create

01:45:41  15  conflicts or otherwise, I mean I had my first -- you can go

16  through the 800 docket entries of my first antitrust MDL and

17  see that there was an issue that came up amongst counsel, and

18  we ended up having to take someone off the PSC basically.  So

19  everybody's interim in that sense, I suppose.

01:46:01  20          But I guess without being able to touch my fingers on

21  any of these cases right now, if you want to file something

22  that tells me your position, that's fine.  I don't think

23  there's any great urgency to this because you guys are all

24  going to be in the -- the conflict is unlikely to manifest

01:46:18  25  itself in the next month if it hasn't already done so.  So if

1  you want to file something, how soon can you do it?  If you

2  want to comment on this motion?

3          MS. MILLER:  To the extent we decide to file

4  something, we could file it this week if you'd like.

01:46:29  5          THE COURT:  I don't even -- I'll give you a whole

6  week if you want.

7          MS. MILLER:  Fair enough.

8          THE COURT:  So next Monday.  And if you guys want to

9  reply to that if they file something in a week after that,

01:46:37  10  would that be do-able?

11          MR. ISSACHAROFF:  Yes.

12          THE COURT:  Nobody thinks there's any great urgency

13  to resolving this, right?  This is really a prophylactic thing

14  to keep all the lines clear, but, you know, you guys are

01:46:48  15  co-lead counsel, and you're responsible for everybody, and

16  you've got this team behind you that's responsible for

17  everybody, and the professor is overseeing or helping you guys

18  out, not only in this fashion but also in the fashion of a war

19  team and a peace team, I think I saw in there.  So there's no

01:47:06  20  issue with giving you guys two weeks to kick this around?

21          MR. ISSACHAROFF:  Not from our standpoint, your

22  Honor.

23          THE COURT:  Okay.  So today is the 18th.

24          THE CLERK:  6/25 and 7/2.

01:47:17  25          THE COURT:  Okay.  Great.  And then I'll take a look

1    at this, and if I have further questions for you, I'll let you

2    know.

3            We'll set another date at the end here, too, that

4    will work for everybody to come back, and I hope by then I've

01:47:29    5    had more than -- this weekend really is what I had to start

6    tackling what you guys had for me.

7            MR. HO:  And, your Honor, if I may address one quick

8    thing so there's no misunderstanding between us and

9    Ms. Miller.

01:47:39    10            We did initially file a case on behalf of the dealer,

11    but Ms. Wedgworth represents the putative dealer class.  It's

12    up to Ms. Wedgworth whether she wants to include the dealer

13    that we represented as a named plaintiff or in some other

14    fashion.  So from our standpoint, yeah, that's in

01:47:55    15    Ms. Wedgworth's hands as opposed to ours at this point.

16            THE COURT:  So what you're proposing then is

17    basically you guys are the vendors and they're the dealers

18    amongst this two-headed leadership with all the other

19    subheads.

01:48:08    20            MR. HO:  And there's also a competitor -- several

21    competitor cases as well, but as between the vendors and

22    dealers, you're exactly right, your Honor.  We wouldn't be,

23    you know, continuing to pursue claims on behalf of the dealers

24    except insofar as Ms. Wedgworth wants to use the dealer that

01:48:26    25    we represented as part of her class action.

1       THE COURT:  And if I understand it that way, then

2   your proposal to become interim lead counsel for the vendor

3   class is completely consistent with the two-headed monster

4   that you guys are, right?

01:48:38    5       MR. HO:  Correct, your Honor.

6       THE COURT:  Okay.

7       MS. MILLER:  And we certainly appreciate the

8   clarification.  The reason this came up is because on a

9   meet-and-confer call a handful of days ago, Kellogg Hansen

01:48:49   10   specifically said that they still represented Bob Baker, which

11   is a dealer, and that they hadn't dismissed their complaint

12   and thereby leaving the impression that they were continuing

13   to pursue and represent a dealer.

14       So we had no reason -- we appreciate that he's now

01:49:01   15   saying that he's not, but there are a number of -- there are

16   seven dealers that filed suit, eight total, but one has

17   already voluntarily dismissed.  There are seven dealer

18   plaintiffs, including Bob Baker Volkswagen represented by

19   Kellogg Hansen that filed suit originally but are not named

01:49:18   20   plaintiffs in the consolidated amended class action complaint.

21       And if it's plaintiff's position that those people

22   are no longer named plaintiffs in any way, then we're fine.

23   But, otherwise, we need to know if they're -- are they

24   opt-outs?  Are they going to be participating in discovery?

01:49:35   25   Do we have to move to dismiss their complaint?  Because

1   technically, as Mr. Nemelka pointed out on the

2   meet-and-confer, he hasn't dismissed his Bob Baker Volkswagen,

3   so he was clearly taking the position that the consolidated

4   amended complaint did not supersede his individual complaint.

01:49:51

5   MR. ISSACHAROFF:  Your Honor, if I may address that.

6   As the Court knows, the Supreme Court just ruled on statutes

7   of limitations and what the tolling is.  We could not possibly

8   dismiss the complaint on behalf of our individual client

9   because it is perfectly possible that this Court will reject

01:50:07

10  all class certifications, and there will be only individual

11  cases left in the MDL.

12  And so we're not going to dismiss.  That would be --

13  that would be a breach of our duty to the client.  And so the

14  fact that this is sitting there in abeyance pending class

01:50:22

15  certification issues on the dealer side is of no moment.

16  THE COURT:  And obviously the two -- the two co-leads

17  are going to have to work together and coordinate one way or

18  the other, but I guess what you guys are telling me, and it's

19  consistent with the idea of proposing an interim lead counsel

01:50:41

20  for the vendor class, is that on the vendor side, Mr. Ho is

21  going to be doing the talking, and then on the dealer side,

22  Ms. Wedgworth is going to be doing the talking, and to the

23  extent that there's any conflict, you guys know what side you

24  have to stand on, right?

01:50:59

25  MS. WEDGWORTH:  Correct.

1           MR. HO:  Yes, your Honor.

2           MS. GULLEY:  Your Honor, just so I understand -- this

3  is Aundrea Gulley again.

4           I believe what Professor Issacharoff just said,

01:51:07   5  however, is that those are opt-outs.  That's the whole point

6  of the Supreme Court's ruling on -- you know, in that

7  securities case, whether or not the statute of limitations is

8  tolled for -- you know, during the pending of the class

9  certification.

01:51:20  10           Kellogg Hansen represents a dealer, and what I

11  believe the professor is saying is Kellogg continues to

12  represent a dealer.  So regardless of sort of which position

13  they're taking, as between the two of them, they still do have

14  a dealer client; and, therefore, there is, by definition, this

01:51:41  15  conflict between the pass-through and the non-pass-through,

16  and that they are not going to be dismissing the case.  So

17  just to be clear.

18           THE COURT:  Well, let me see if I can unpack that a

19  little bit, though, because it's certainly conceivable, I can

01:51:53  20  understand in light of that Supreme Court case they don't want

21  to dismiss the case, but that doesn't mean they can't

22  substitute counsel or something like that.

23           MR. ISSACHAROFF:  Absolutely, your Honor.

24           THE COURT:  Maybe that's the thing you guys should be

01:52:04  25  thinking about.

01:52:14

1    MR. ISSACHAROFF:  We might do that.  It depends on

2    this Court's rulings down the road, depends how the case

3    matures, but I think one of the questions that your Honor

4    asked of the defense side is how are they prejudiced by any of

5    this?  They're raising abstract questions of conflict.

6    They're not conflicted.  We're not conflicted with them on

7    this issue.

8         This is something that we will work out with

9    Ms. Wedgworth as the case matures and as we see what the class

01:52:27  10   certification rulings of this Court will be.

11        THE COURT:  And that's long into the future,

12   according to the schedule I just looked at.

13        MR. ISSACHAROFF:  That's correct, your Honor.

14   There's nothing -- there's nothing operative in this right now

01:52:38  15   in terms of the discovery necessary for Authenticom to get to

16   trial, which is the main driving engine right now.

17        And in the meantime, Ms. Wedgworth will represent the

18   dealer class.  Our proposal is that Mr. Ho represents what

19   we've called the vendor class and that the case proceed with

01:52:56  20   these two silos, these two tracks, coordinated, which is the

21   way it has been effectively.

22        THE COURT:  Well, and you guys can mention in your

23   briefs, if you like, how this all plays out at the moment,

24   which is all -- I mean, as I said, everything is sort of

01:53:11  25   interim in an MDL in the sense that things come up and things

1    move and things change, and I don't know if the answer -- if

2    there's anything at the moment.  If there's no present

3    conflict, then I don't know what the big issue would be, but

4    if you see something, you can tell me what it is, and you can

01:53:29    5    think about whether -- I mean, it's all one big case

6    obviously, but if someone substituted for Kellogg on the one

7    dealer case that they're still involved in, as long as the

8    plaintiff isn't prejudiced by having the case dismissed, does

9    it really matter who the named lawyer is in the case?  They're

01:53:45   10    all going to be part of the big case, and they may be part of

11    the class, and they may be a named plaintiff, they may not be,

12    may be an absent member.

13            But one way or the other, it sounds like this is a

14    very small gnat on the tail of a very large elephant, but you

01:53:59   15    guys can explain to me if it's more than that at the moment,

16    and if it is, then, fine, I'll deal with it sooner than later.

17    If not, let me get to the thing that is on my plate right now

18    that's of I think greater moment to you guys, and that's the

19    other motion that I see still has a gavel next to it, and

01:54:16   20    that's 195.

21            And I was going to ask for a reply brief today, but

22    lo and behold, there it was this morning when I went on the

23    docket.  So that appears to be fully briefed.  I had a brief

24    conversation with Judge St. Eve about it this morning, and I

01:54:30   25    basically said it sounds like they don't necessarily agree

1     about what you said before.  And I said I'm only going to

2     bother with you with this if I get to the end of my own

3     archaeology project and I still can't figure it out, but

4     that's an archaeology project for me is to go back and look at

01:54:45     5     Authenticom and look at what happened with Judge Peterson and

6     then look at what the Seventh Circuit said and then look at

7     what you guys agreed to, it looks like, and look at how that

8     squares with Judge St. Eve's order and how that squares with

9     the compliance with the order and where that leaves us between

01:55:01     10     600,000 documents and 2.2 million.

11     But that I haven't gotten to yet, and once I get

12     through the briefs and the digging through the layers, if I'm

13     still baffled, I will probably call her first, and then I'll

14     call you guys and say you've got to come in and help explain

01:55:19     15     this to me.

16     I will do my best to figure this out on my own, but I

17     know I have places I can go and I know you guys are all really

18     good and you will give me what I need when I need it or

19     sooner, as the case was this morning.  I said to it must have

01:55:36     20     been my wife because I wouldn't have said this, no one else in

21     the house would care, but I said I think I'm going to have to

22     ask for a reply brief this morning, and then there it was when

23     I looked at the docket this morning.

24     But I will say I have only given those a once-over.

01:55:47     25     I think the response brief maybe came in Friday, does that

1    sound right?

2         MS. WEDGWORTH:  Yes, your Honor.

3         MR. HO:  Yes.

4         THE COURT:  So I gave them a once-over with the

01:55:54    5    hundreds of other pages I read this weekend trying to get up

6    to speed.

7         I did say to Judge St. Eve how grateful I was that

8    she sorted out all of the counsel situations and also gave me

9    a scheduling order, which has now been entered by a Seventh

01:56:09    10   Circuit judge, so I feel very good that we'll be able to stick

11   to that scheduling order as best we can.

12        All cases come up with things that happen in the

13   interim, but I will do my best to adhere to that.  I know you

14   guys are steering between the Scylla of the Seventh Circuit

01:56:25    15   opinion and the Charybdis of the MDL proceeding, so I'm going

16   to try to, you know, keep us on course there, but I appreciate

17   all that you guys have done and all that she did to hand me

18   off an MDL that's in really good shape with great lawyers.

19        In my other MDLs, you may have seen that I have been

01:56:44    20   blessed with Judge Gilbert on both of them, and I'm blessed

21   with Judge Gilbert again on this one.  And he was a commercial

22   litigator for 25 or 30 years at a big firm in Chicago, so he's

23   really, really well-situated to help us.

24        I don't at the moment see anything that he needs to

01:57:00    25   help us with, but I think you guys should expect that if there

01:57:20

1   are some complicated discovery issues in this case, I will get
2   him involved.  He's been absolutely spectacular in my other
3   MDLs, and if the JPML ever has a panel that invites magistrate
4   judges, I'm going to nominate him to come down to The Breakers
5   because he knows a lot and he's been very helpful on this, so
6   don't be surprised to see him at some point.

7        We've sat in two-judge panels for our MDL hearings
8   before, too, so everybody can get us up to speed at once.

9        And the other thing on my schedule is when should I

01:57:35

10  see you guys again?  I looked on the calendar, and it looks to
11  me that if you have motions to compel besides the one that I
12  already have, which is sort of the backwards of a motion to
13  compel, that those are due in early August.  So I thought
14  maybe what I would do is set you guys for a status in

01:57:50

15  mid-August, see if anything comes in there.

16       If it doesn't come in there, we'll all rejoice and be
17  glad, but you guys can still, you know, get me up to speed on
18  where things are going, how things are going, how else I can
19  help you.  And you should also know that any time you guys

01:58:08

20  need to see me -- and the *Fluidmaster* people knew this and
21  still know it, and the cheese people knew it, too -- you can
22  always call Carolyn if you need to come and see me, and we'll
23  get you in as soon as we can at any time, because obviously
24  judicial case management is really important in all cases but

01:58:25

25  especially in MDLs.  So any time you guys feel the need to see

1    me, just make the suggestion to Carolyn, and I won't run you

2    off.

3         But does that sound okay?  Does mid-August sound like

4    a good time to come back, or is there anything you guys

01:58:40    5    anticipate that you need to see me before then?

6         MS. GULLEY:  Mid-August.

7         THE COURT:  I will give you a ruling on this motion

8    before then, and if I need more help, I will see you long

9    before then.

01:58:50    10         But is there anything you guys see on your schedule

11    or in your, you know, whatever private conversations you guys

12    are having about this case that would be helpful to see a

13    judge before mid-August?

14         MS. MILLER:  No.

01:58:59    15         THE COURT:  Everybody okay with that?

16         MS. GULLEY:  That's great.

17         MS. WEDGWORTH:  That works for us, your Honor.

18         MR. HO:  Yes, your Honor.

19         THE COURT:  Okay.  I'm going to give you a date now

01:59:05    20    with the knowledge that I'm going to offer every week, though,

21    I have open in August to some people who tell me they need a

22    trial date with a criminal defendant in custody tomorrow, and

23    if that happens, I may move you guys.  It looks -- it's a gun

24    case, a 922, so I don't think it's going to be a long trial,

01:59:22    25    but I don't want to have you guys come the same day I have a

1   jury here because I want to make sure I've got plenty of time
2   for you.
3       But for now let's put you guys in -- how is the 16th
4   for you guys?
5               MS. GULLEY:  That's great, your Honor.
6               THE COURT:  Is that okay?
7               MS. WEDGWORTH:  Yes, your Honor.
8               THE COURT:  Okay.  And, Carolyn, I want to put these
9   guys at a time where nobody else is behind them.
10              THE CLERK:  Any time is good.
11              THE COURT:  Any time is good.
12      That's because we were supposed to have a trial
13  that's supposed to be a month with a pro se defendant starting
14  that week, but the Supreme Court took that out of our hands in
15  some case they GVR'd to the Seventh Circuit, so I'm happy
16  about that.  You guys are going to be much easier than a pro
17  se criminal trial for a month no matter what you give me.
18      So let's do it at 10:30 that day because some motions
19  and statuses are going to fill in there if that's okay for you
20  guys.  I know some of you all are coming from New York and
21  Washington, and that works well for you guys --
22              MS. GULLEY:  Houston.
23              THE COURT:  Where, Houston?
24              MS. GULLEY:  Yes.
25              THE COURT:  Well, that's in the same time zone.

1    Everybody who's coming from the East, this works well coming

2    this way because you get the hour back so you land half an

3    hour after you took off in clock time because if we do it at

4    10:30 you conceivably, O'Hare permitting, get here at the same

02:00:31    5    day.  Probably won't risk that.

6            MR. HO:  Probably not, your Honor.

7            THE COURT:  Yeah, okay.

8        (Laughter.)

9            THE COURT:  All right.  Anything else that I can help

02:00:39    10    you guys with today?

11            MS. MILLER:  I have a couple of housekeeping things,

12    your Honor, if we may.

13            THE COURT:  Great.

14            MS. MILLER:  On AutoLoop on the new putative vendor

02:00:48    15    class, they filed a -- the complaint instead of responding to

16    our motion to dismiss, but we've reached agreement with Mr. Ho

17    for a briefing schedule for our motion to dismiss the new

18    complaint.

19            THE COURT:  Okay.  Now, help me out here, just give

02:01:01    20    me some numbers.

21            MS. MILLER:  Sure.

22            THE COURT:  What's the number of the complaint we're

23    after?

24            MS. MILLER:  The complaint for AutoLoop is Docket

02:01:06    25    194.

1      THE COURT:  194, yeah, that's the sealed one.  191 is

2  the public version.  192 is the permission to seal it.

3      Okay, perfect.  So 194, you want to move to dismiss

4  that.

02:01:19    5      MS. MILLER:  Yes.

6      THE COURT:  And you've got an agreement on the

7  schedule, so fire away.

8      MS. MILLER:  We put it on the same schedule that the

9  motion to dismiss the dealer class complaint is on, so we will

02:01:28   10  file our motion to dismiss by July 11th.

11      THE COURT:  Okay.

12      MS. MILLER:  And then plaintiffs' response would be

13  due August 1st, and the reply would be due August 15th.

14      THE COURT:  Okay.  Perfect.  Thank you.

02:01:42   15      MS. MILLER:  That's housekeeping No. 1.

16      THE COURT:  Okay.

17      MS. MILLER:  Housekeeping No. 2, as your Honor is

18  likely aware from the case management schedule, all of our

19  discovery responses for both sides are due this Friday with

02:01:55   20  the exception of one defendant who's still waiting on

21  discovery to be served on it.

22      THE COURT:  Okay.

23      MS. MILLER:  But also due this Friday is our answers

24  and counterclaims to the Authenticom complaint.

02:02:14   25      THE COURT:  Okay.  I see response to discovery,

1    June 22nd.

2           MS. MILLER:  It's -- your Honor, St. Eve -- Judge St.

3    Eve put a separate minute order in setting a schedule.

4           THE COURT:  Ah, okay.

02:02:24     5           MS. MILLER:  At Docket No. 175 was her minute order.

6           THE COURT:  175.  Okay.  So you want to adjust those

7    schedules?

8           MS. MILLER:  Your Honor, we'd like an extra week, if

9    we could, to file our answer and counterclaims.  They're

02:02:35    10    currently due on Friday, the 22nd.

11           Given the discovery obligations we have, we would

12    appreciate an additional week.

13           THE COURT:  Okay.  So that would be we'd amend 175,

14    the schedule set in 175, to give you 6/29 instead of 6/22.

02:02:49    15           MS. MILLER:  Yes, your Honor.

16           THE COURT:  Okay.  Everybody good with that?

17           MS. WEDGWORTH:  I am certainly good with it, but that

18    is Mr. Ho's call.

19           THE COURT:  Okay.

02:02:57    20           MR. HO:  Your Honor, this is the first I'm hearing

21    about it, but I think we're fine with the extra week.

22           THE COURT:  Okay.  Sold.  Extra week.

23           MS. MILLER:  Thank you.

24           THE COURT:  6/29.

02:03:05    25           And then the 6/22 -- so that's what you're going to

1   do, between now and Friday you're going to get your discovery

2   responses done, and then you're going to start cranking the

3   answer out next weekend.

4              MS. GULLEY:  And counterclaims.

02:03:16   5      THE COURT:  And counterclaims, of course.  Okay.

6              All right.  That's fine.  Anything else on the

7   housekeeping?

8              MS. MILLER:  The only other issue, and we're happy to

9   take it up with counsel, but the amended class action

02:03:26   10  complaints that have been filed are fairly, as I'm sure your

11  Honor has noted, voluminous.  We are going to need more than

12  15 pages to respond to each of them.  We're happy to discuss

13  page limits with opposing counsel and, if we can't reach

14  agreement, bring it back to you.

02:03:39   15      THE COURT:  That's fine.  Discuss amongst yourselves.

16             MS. MILLER:  Fair enough.

17             THE COURT:  As many of you know, I was an appellate

18  lawyer in practice.  I was not a trial lawyer, and I was very

19  bummed out when the Illinois Supreme Court took us from 75 to

02:03:51   20  50.  How can we live with this?

21             It turns out you can write everything you need to

22  write in 50.  15 is a little tight now I know for a case like

23  this.  You can scour the 1700-minute -- 1700 entries in the

24  other antitrust cases and the other MDLs I've had and look for

02:04:10   25  all the motions for leave to file excess pages and see if any

1    of them have ever been denied.  I don't think you'd find one.

2           But I would like you to talk amongst yourselves

3    because I always say goose for the goose, goose for the

4    gander, however that goes, so if you take 50, they get 50,

02:04:26    5    too, and that piles up in the end.

6           So talk amongst yourselves.  I'm confident you'll

7    work this one out.  If you don't, that's what I'm here for.

8           MR. HO:  Your Honor, your guidance may actually be

9    helpful in this regard.

02:04:36    10          Many of the motions to dismiss that are still pending

11   and relate basically to issues that were also at stake in the

12   Authenticom motion to dismiss, so many of the -- those issues

13   have been decided in the context of the Authenticom case, and

14   I imagine that many of the issues that the defendants might be

02:04:57    15   tempted to move to dismiss on in AutoLoop are also issues that

16   were also already decided in Authenticom.

17          I think the briefing could be a lot shorter if both

18   sides agreed to forgo trying to relitigate those issues

19   because at least from our standpoint, they're law of the case.

02:05:14    20   They're not really subject to being relitigated.  That, from

21   our standpoint, would significantly shorten the number of

22   pages that would be required because all that would have to be

23   done is to move to dismiss on any issues that were not already

24   addressed in Authenticom.

02:05:29    25          And in the context of AutoLoop, I don't think that

1    there are actually that many outstanding issues.

2        THE COURT:  Okay.

3        MS. MILLER:  Your Honor, it will probably not

4    surprise you that the two sides take a different perspective

02:05:39    5    on exactly what that decision says in terms of --

6        THE COURT:  Well, I already told Judge St. Eve you

7    take a different position on what she's previously said about

8    the scope of discovery, so that wouldn't surprise me.

9        MS. MILLER:  So we'd like to -- we'd like to brief

02:05:52    10   the issues.  We're not -- we don't -- for AutoLoop, we don't

11   anticipate seeking many more the 15.  The class complaint is a

12   little different.  It's 700-some-odd paragraphs, 50 counts and

13   61 exhibits, so we're certainly going to need more there.

14       But we will certainly work to keep it as short as we

02:06:10    15   can, but we believe that certainly we need to address how we

16   think the Authenticom opinion affects these other motions.

17       THE COURT:  Well, and I think to Mr. Ho's point, I

18   think you can anticipate that the very first thing I'm going

19   to read is Judge St. Eve's opinion, and I thanked her for the

02:06:28    20   52 pages of work that she absolutely 100 percent could have

21   left for me and decided not to because she's a nice person and

22   also very on top of things, so she was able to crank out a

23   52-page opinion while she was trying to, you know, move her

24   office.

02:06:40    25       But that's where I will start, and if you guys want

1   to incorporate things that you previously said to her in

2   briefs that are on my docket or you want to work off of that

3   opinion to say it's either right or it's wrong, I mean

4   obviously it is law of the case and obviously it is pretty

02:06:58   5   recent, but if you guys want to work off that to shortcut

6   things, you're more than welcome.  I can just tell you that's

7   where I'll start.  Anyone would start there.

8         So, you know, the shorter you can make them the

9   better, but I get it.  I'm happy to read briefs.  That's

02:07:15   10   pretty much what I've done for the last 25 years, so it's all

11   good.

12         MS. GULLEY:  Your Honor, just to be clear, the

13   Reynolds and Reynolds Company is not a defendant in the vendor

14   class action, so I take no position.

02:07:26   15         THE COURT:  That's okay.  I'm looking at both of you,

16   but I'm really looking at Ms. Miller, okay?

17         MS. MILLER:  Thanks, your Honor.

18         MS. GULLEY:  With respect to the class complaint, we

19   are certainly differently situated here.  The allegations are

02:07:36   20   not the same, and so we definitely take a different view with

21   respect to the much longer class complaint that we'll be

22   moving to dismiss.

23         THE COURT:  Well, when we get to these issues, if you

24   want to take one step to the side, then I can laser in on

02:07:49   25   Ms. Miller here.  But, yeah, no, I appreciate that, and you

1  guys can certainly remind me of things that are like that

2  because it's going to take me a while to get fully up to

3  speed, and there's -- I talked to Kassie about the binder we

4  need to put together, and it's not going to be a thin one.

02:08:04  5      So -- but thank you, everybody, for helping me get up

6  to speed.

7      Are the defendants all good for today?

8      MS. MILLER:  We're good, your Honor.

9      THE COURT:  Plaintiffs all good for today?

02:08:11  10     MR. HO:  We are, your Honor.

11     MS. WEDGWORTH:  We are, your Honor.

12     THE COURT:  Okay.  Good to see you all.  See you in

13  August.  Stay cool.

14     MS. MILLER:  Thank you, your Honor.

02:08:18  15     MS. WEDGWORTH:  Thank you, your Honor.

16     THE COURT:  Take care.

17      (Which were all the proceedings heard.)

18                    CERTIFICATE

19      I certify that the foregoing is a correct transcript from

20  the record of proceedings in the above-entitled matter.

21  */s/Kathleen M. Fennell*          *June 20, 2018*

22  _____          _____
    Kathleen M. Fennell                     Date
23  Official Court Reporter

24

25