IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) ) MDL No. 2817 <br> Case No. 18 C 864 |
| *This document relates to:* <br><br> ALL CASES | ) ) ) ) Hon. Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert ) ) |

**THE REYNOLDS AND REYNOLDS COMPANY'S OPPOSITION TO NON-PARTY SUBPOENA RECIPIENTS XCELERATED, LLC, XCELERATED DATA LLC AND PENSA LLC'S MOTION FOR PROTECTIVE ORDER AND FOR FEES AND COSTS**

Defendant The Reynolds and Reynolds Company ("Reynolds") respectfully opposes the Motion for Protective Order and for Fees and Costs filed by non-parties Xcelerated LLC, Xcelerated Data LLC and Pensa LLC (collectively, "Xcelerated"). This Opposition is based on the following grounds:

1. On May 30, 2018, Reynolds served substantially identical, limited discovery subpoenas on the three Xcelerated entities with a return date of June 25, 2018. Non-party Xcelerated is a successor to a business formerly owned by Plaintiff Authenticom and has been involved in legal actions involving relevant data access rights with Authenticom in several courts around the country. Copies of the subpoenas relevant to Xcelerated's motion are attached hereto as **Exhibit A**.

2. On June 12, 2018, Xcelerated served Reynolds with a letter objection to the subpoenas pursuant to Fed. R. Civ. Proc. 45(d)(2)(B).[1] A copy of Xcelerated's letter objection is attached hereto as **Exhibit B**.

3. Xcelerated's June 12 letter set forth a number of written objections to Reynolds's subpoenas and concluded with a statement indicating that Xcelerated would be gathering and producing certain documents in response to the subpoenas, which Xcelerated advised might not be complete by June 25:

> At present, Xcelerated is working diligently to conduct a reasonable search of documents potentially responsive to the subpoenas that would not violate confidentiality provisions or require Xcelerated to produce its trade secrets; however, Xcelerated believes that its search will be an ongoing process which is certainly not complete today and may not be complete by June 25, 2018 which is the Subpoenas' stated deadline to produce responsive non-privileged documents.

4. Having served objections under Fed. R. Civ. Proc. 45(d)(2)(B), Xcelerated had relieved itself of any duty to comply further with the subpoena until the parties could meet and confer to resolve the objections, shifting any further burden to resolve any production disputes to Reynolds by motion to compel.

5. Indeed, given Xcelerated's express statement that it intended to produce certain materials in response to the subpoena, Reynolds intended to evaluate those materials, and then, if needed, reach out to Xcelerated to discuss further.

6. The next communication Reynolds received from Xcelerated was on June 25, 2018, when Xcelerated filed the instant motion, without so much as a phone call, let alone the

---

[1] The first page of Xcelerated's letter cites to Fed. R. Civ. Proc. 45(c)(2)(B) instead of Fed. R. Civ. Proc. 45(d)(2)(B), which Reynolds understands to be a reference to former Fed. R. Civ. Proc. 45(c)(2)(B), which was revised and renumbered in 2013.

meet and confer required by the Rules.[2]  And despite Xcelerated's express statement that it was searching for responsive documents, Xcelerated's motion now requests relief from "any obligation to produce the documents requested in the Subpoenas." Dkt. 215-1 at p. 6.

7. Immediately upon receiving Xcelerated's motion, counsel for Reynolds called and left a message for counsel for Xcelerated.  The next day, June 26, 2018, (a day after the instant motion was filed) Reynolds and Xcelerated met and conferred telephonically for the first time.  The parties discussed Xcelerated's arguments and objections, and Reynolds requested that Xcelerated withdraw its motion so that the parties could meet and confer.  Reynolds followed up with a letter to Xcelerated the same day setting forth Reynolds's positions.  A copy of Reynolds's letter is attached hereto as **Exhibit C**.

8. On June 28, 2018, the parties met and conferred telephonically again.  Xcelerated refused to withdraw its motion.  The parties called the Clerk in an effort to push out the originally scheduled July 3 hearing date, but did not reach the Clerk.   Xcelerated indicated it was investigating the extent to which it had responsive documents to produce to Reynolds, and suggested that it finish its investigation, make a production (which Xcelerated indicated might be very limited), give time for Reynolds to evaluate the production, and then the parties could discuss or meet and confer further as needed.  Reynolds agreed to this plan (which Reynolds had always thought was the plan based on Xcelerated's original June 12 letter).

9. Both Northern District of Illinois Local Rule 37.2 and Judge Dow's procedures require a telephonic or in-person meet and confer prior to filing a discovery motion, or, a

---

[2] The last sentence of Xcelerated's June 12 letter advises Reynolds not to hesitate to contact Xcelerated should Reynolds desire "to discuss this matter in more detail," but it nowhere requests a telephonic or in person meet and confer about an imminent motion for protective order.

statement that the lack of such a meet and confer was not the fault of the moving party. *See* N.D. Ill. L.R. 37.2 (court "shall . . . refuse to hear any and all" discovery motions "unless the motion includes a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's."); Judge Dow's Case Procedures, *available at* http://www.ilnd.uscourts.gov/judge-info.aspx?YcR9etkCy90= ("Discovery"); Judge Gilbert's Case Procedures, *available at* http://www.ilnd.uscourts.gov/judge-info.aspx?QZFvv1igiJ0= ("Discovery Motions"). Xcelerated cannot establish either, and its motion must therefore be denied. *See, e.g., Simon v. Northwestern University*, 2017 WL 467677, *7-8 (N.D. Ill. Feb. 3, 2017) (denying discovery motion due to lack of "robust compliance" with Local Rule 37.2 and Judge's corresponding Standing Order). Xcelerated's motion should be denied because it failed even to request a meet and confer prior to filing its motion. To the contrary, in its June 12 letter, Xcelerated expressly stated it was "working diligently" to search for "potentially responsive" documents, which would be an "ongoing process." *See* Exhibit B at p. 2.

10. Xcelerated's motion, moreover, is not required by the Federal Rules in order to preserve its objections. Federal Rule of Civil Procedure 45(d)(2)(B) provides that once written objections are served, the burden shifts to the serving party to seek a motion to compel compliance with the subpoenas. Xcelerated's June 12 written objections sufficed to preserve Xcelerated's objections unless and until Reynolds met and conferred with Xcelerated and/or moved to compel production. *See U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 690 (7th Cir. 2010) (explaining that former Fed. R. Civ. Proc. 45(c)(2)(B) (now Fed. R. Civ. Proc. 45(d)(2)(B)) "requires an intervening court order if the recipient of the subpoena objects in writing to the

production of documents or things."); *DeGeer v. Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010) ("Having raised a timely objection to the subpoena, Huron was not required to produce documents until Defendants obtained a court order."); *Wm High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 894 (S.D. Ind. 2006) ("Rule 45(c)(2)(B) states that 'a person commanded to produce and permit inspection and copying, *may*…serve…written objection,' and by so doing be spared the burden of further action unless a court orders otherwise.") (emphasis added by court).

11. With respect to the merits of the subpoenas, Xcelerated objects that the requested information is overbroad, lacks clarity and specificity regarding the documents requested, and potentially subjects Xcelerated to the undue burden of producing "every single document the companies have generated for over a five-year period." Dkt. 215-1 at ¶ 7. Reynolds strongly disagrees with all these characterizations.

12. The Reynolds subpoenas request targeted documents relating to Xcelerated's dealings with plaintiff Authenticom and related entities; the nature of the data that Xcelerated receives from and transmits to these entities and what the data is used for; whether and how Xcelerated obtains and uses data from Reynolds's and/or CDK's Dealer Management Software ("DMS") systems; and how Xcelerated keeps any such data secure. Authenticom is a plaintiff in this case and has alleged that defendants Reynolds and CDK conspired to block it from providing data integration services that connect third parties to data on a Reynolds DMS or CDK DMS. Reynolds, in its defense (and also as a counterclaim), asserts that Authenticom's access to data on a Reynolds DMS is unauthorized and illegal. To the extent that Xcelerated has potentially relevant documents relating to Authenticom or Defendants' DMSs or data that is obtained from or transmitted to either, it should produce them.

13. Xcelerated, furthermore, founded its business in 2015 with a purchase from the Xcelerated Investments, Inc. (now known as 621 Holdings, Inc.), an Authenticom entity. Subsequently, a company called M1 Data & Analytics, LLC ("M1") filed lawsuits alleging that Authenticom provided M1's data to Xcelerated without M1's consent or authorization. *See, e.g.*, Declaration of Pamela Lang dated June 29, 2017 (Dkt. 4), ¶¶5-8, *In re Xcelerated, LLC*, Case No. 17-20886-tnw (Bankr. E.D. Ky.) (attached as **Exhibit D**); Complaint dated August 15, 2017 (Dkt. 12), ¶¶ 1-59, *M1 Data & Analytics LLC v. Authenticom, Inc.*, Case No. 1:17-cv-00645 (D. Del.) (attached as **Exhibit E**). Among other things, M1 has alleged upon information and belief that "on or about March 1, 2016, Authenticom, through its selling partner, Xcelerated LLC, improperly sublicensed M1's data to a third-party, or multiple third parties, without permission and authority from M1." Complaint dated August 15, 2017 (Dkt. 12), ¶ 27, *M1 Data & Analytics LLC v. Authenticom, Inc.*, Case No. 1:17-cv-00645 (D. Del.).

14. These and other pleadings suggest that the documents requested from Xcelerated may reveal information that is directly related to the claims and defenses in this case, including claims and defenses regarding Authenticom's unauthorized access to, and use of, data from Reynolds' DMS. The information sought is far from "irrelevant to the claims being litigated" as argued by Xcelerated (Dkt. 215-1 at p. 5), and does not resemble the "fishing expedition" at issue in *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.* 801 F.3d 758, 766 (7th Cir. 2015) (affirming the district court's limitation of discovery to "high-level personnel" where plaintiffs offered no explanation for how taking the depositions of defendants' lower-level employees ten years after the alleged conspiracy could yield relevant information). Instead, the probative value of the documents requested is closer to *Mosely v. City of Chicago*, 252 F.R.D. 421, 434 (N.D. Ill. 2008), where the court compelled a non-party journalist to produce notes and

tapes of her interview of defendant because the documents had "substantial, identifiable 'probative value'" that outweighed the burden of production.

15. In addition, more than half of Reynolds's document requests seek documents "sufficient to show" a targeted category of information. Contrary to Xcelerated's mischaracterizations, these requests, on their face, do not seek "every single document the companies have generated for over a five-year period." Dkt. 215-1 at p. 3. Indeed, Xcelerated specifically complains at paragraph 7 of its motion as to the "expansive and burdensome" nature of Reynolds's requests numbered 4, 6, and 7, each of which only seeks documents "sufficient to show" certain matters, as opposed to all documents related to those matters. In the same paragraph, Xcelerated complains about Request No. 2, which is a narrow request for documents reflecting data provided to Xcelerated by Authenticom or Authenticom-affiliated entities.

16. Xcelerated also objects that the subpoenas require disclosure of documents containing confidential and proprietary information subject to confidentiality agreements with other entities. Dkt. 215-1 at ¶ 8. The proper course of action (pursuant to the already entered and provided protective order) is for Xcelerated to provide notice to such entities, giving them the opportunity to object. *See, e.g., De Geer v. Gillis*, 2010 WL 3732132, *5 (N.D. Ill. Sept. 17, 2010) (disclosure of documents subject to a confidentiality agreement with another entity did not violate the agreement, where the disclosing party gave proper notice allowing the entity to take any actions it deemed necessary to limit or implement disclosure). Xcelerated cannot simply withhold these documents.

17. The Agreed Confidentiality Order in this case that permits Xcelerated to designate sensitive materials as "Confidential" or "Highly Confidential" and thereby preserve their confidentiality. *See* Dkt. 104. A copy of this order was provided to Xcelerated along with the

subpoenas. The Agreed Confidentiality Order does not permit disclosure of Highly Confidential materials to any Reynolds employee, including Reynolds' General Counsel, except under extremely limited circumstances (for instance, when that person is the author or recipient of a document). Dkt. 104, ¶ 5(c). The Agreed Confidentiality Order applies not only to documents produced but also information derived from those documents. Xcelerated's confidentiality concerns completely ignore the terms of the Agreed Confidentiality Order governing this MDL.

18. Finally, pursuant to Rule 45(d), Xcelerated requests reimbursement of "all reasonable related expenses to the Subpoenas, including drafting the Objection and prosecuting this motion under Civil Rule 45(d)." Dkt. 215-1 at pp. 5-6. There is no basis for such a request. To the contrary, when a non-party is responding to a subpoena, "'the presumption is that the responding party must bear the expense of complying with discovery requests.'" *United States v. Cardinal Growth LP*, 2015 WL 850230 at *2 (N.D. Ill. Feb. 23, 2015), citing *DeGeer*, 755 F. Supp. 2d at 928. Xcelerated is responsible for bearing the costs of production and has pointed to nothing indicating that the standard presumption should not apply. *See id.* ("Courts generally consider three factors when deciding whether to shift the cost of production from a nonparty to the requesting party: "(1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance.'"), citing *DeGeer*, 755 F.Supp.2d at 928.

19. Rule 45(d), by its plain language, only applies where the party issuing a subpoena has not taken "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." As described above, Reynolds's requests are narrowly tailored, the parties have not had a sufficient opportunity to meet and confer about the requests, and Xcelerated has

identified no specific "undue burden or expense" that it faces in responding to Reynolds's requests.

20. **Reynolds Reserves its Right to Request Fees and Costs Pursuant to Fed. R. Civ. Proc. 26(c) and 37(a)(5)(B)**: Reynolds should not have to be in Court on this motion at this stage, given there has been no meaningful meet and confer process. It properly served subpoenas. Xcelerated objected pursuant to Fed. R. Civ. Proc. 45(d). That objection relieved Xcelerated of any further obligations under the subpoena, shifting all of the burden to Reynolds to resolve the objections pursuant to a meet and confer or by motion to compel. Xcelerated had expressly represented that it was searching for and intended to produce documents responsive to the subpoena. Reynolds was entitled to rely on this express representation, and indeed should be encouraged to rely on it under good faith discovery practice. Filing the instant motion was unnecessary, and premature, in violation of the discovery meet and confer rules and good faith practice. Xcelerated should withdraw the motion as Reynolds requested. If however, it proceeds with the motion, Reynolds reserves the right to request its attorneys' fees and costs for having to appear and defend this motion because the motion is not "substantially justified" and it would not be "unjust" to do so. *See* Fed. R. Civ. Proc. 26(c); Fed. R. Civ. Proc. 37(a)(5)(B); *Johnson v. Allstate Prop. & Cas. Ins. Co.*, 2014 WL 6611443 (W.D. Wash. Nov. 20, 2014) (awarding fees and expenses incurred in filing opposition to motion for protective order).

## CONCLUSION

For the foregoing reasons, Reynolds respectfully asks this Court to deny the motion for protective order and, if the motion is not withdrawn to allow for the appropriate meet and confer process, award it fees and cost in having to defend a motion that violated the letter of this district's Rules and the good faith spirit of discovery resolution.

Dated: June 29, 2018

Respectfully submitted,

*/s/ Leo D. Caseria*

Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
Justin D. Patrick
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com
jpatrick@gibbsbruns.com

Michael P.A. Cohen
Amar S. Naik
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
anaik@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

Dylan I. Ballard
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
Four Embarcadero Center., 17th Floor
San Francisco, CA 94111
(415) 434-9100
dballard@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

## CERTIFICATE OF SERVICE

       I, Leo D. Caseria, an attorney, hereby certify that on June 29, 2018, I caused a true and correct copy of the foregoing **THE REYNOLDS AND REYNOLDS COMPANY'S OPPOSITION TO NON-PARTY SUBPOENA RECIPIENTS XCELERATED, LLC, XCELERATED DATA LLC AND PENSA LLC'S MOTION FOR PROTECTIVE ORDER AND FOR FEES AND COSTS**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

       */s/ Leo D. Caseria*
       Leo D. Caseria
       SHEPPARD MULLIN RICHTER & HAMPTON, LLP
       333 S. Hope St., 43rd Floor
       Los Angeles, CA 90071
       (213) 617-4206
       lcaseria@sheppardmullin.com