# EXHIBIT F

# Exhibit 28

THESE TERMS AND CONDITIONS (the "Terms and Conditions"), together with any other materials incorporated by reference, constitute the entire agreement between the Dealership ("Dealership" as defined hereafter) and Authenticom, Inc. and its affiliates ("DealerVault"), regarding DealerVault's access to Dealership Data ("Dealership Data" as defined hereafter) and Dealership's access to, and use of, any Services ("Services" as defined hereafter) provided by DealerVault.  Dealership becomes bound to these Terms and Conditions immediately upon its use of the Services.

## 1.0 Definitions

As used in these Terms and Conditions, unless otherwise expressly specified therein:

1.1 "Administrator(s)" means those Users designated by Dealership who are authorized to use the Services online or by executing written Orders, and to create User accounts and otherwise administer Dealership's use of the Services;

1.2 "Confidential Information" means any information that relates to the actual or anticipated business, research, or development of DealerVault and any proprietary information, trade secrets, and know-how of DealerVault that is disclosed to Dealership by DealerVault, directly or indirectly, in writing, orally, or by inspection or observation of tangible items;

1.3 "Content" means the audio and visual information, documents, software, products, services, and other information contained within, or made available to Dealership in the course of using the Services;

1.4 "Dealership" means the car dealership that is party to and bound by the terms and provisions contained in these Terms and Conditions;

1.5 "Dealership Data" means any data, information, or material provided, submitted, or made available by Dealership to DealerVault in the course of using the Services.  If Dealership subscribes to DealerVault Email Services, Dealership Data includes Dealership customer email data;

1.6 "DealerVault Technology" means all of DealerVault's proprietary technology (including, but not limited to, software, hardware, products, processes, algorithms, user and programming interfaces, know-how, techniques, designs, and other tangible or intangible technical material or information), made available to Dealership or otherwise used by DealerVault in providing the Services;

1.7 "Effective Date" means the earlier of (I) the date these Terms and Conditions are accepted, (II) the date the applicable Order is accepted, or (III) the date Dealership begins using the Services;

1.8 "Intellectual Property Rights" means rights in and to inventions (whether or not patentable), patent applications, patents, design rights, rights in and to software code, and other works of authorship including copyrights, trademarks, service marks, trade names, domain name rights, mask work rights, know-how,

trade secret rights, and all other intellectual property rights and forms of protection of a similar nature anywhere in the world;

1.9 "Order(s)" means any form evidencing Dealership's subscription for the Services that Dealership may submit online or in written form and which is accepted by DealerVault, specifying, among other things, (I) the number of licenses and other Services contracted for, and (II) other terms and conditions as may be agreed upon between the Parties in writing, each such Order to be incorporated into and to become a part of these Terms and Conditions;

1.10 "Party" or "Parties" mean(s) either DealerVault, Dealership, or both, as appropriate;

1.11 "Services" or "Tools" means the DealerVault services incorporated herein by reference, or other services identified on the Order(s) as services to which Dealership will have access to via http://www.dealervault.com or another web site or IP address designated by DealerVault, and any ancillary service rendered to Dealership by DealerVault, to which Dealership is being granted access under these Terms and Conditions;

1.12 "User(s)" means Dealership's employees, representatives, consultants, contractors, or agents who are authorized to use the Services and have been supplied with individual access credentials by Dealership or by DealerVault at Dealership's request.

## 2.0 Services

2.1 **Services Grant**. DealerVault hereby grants to Dealership a non-exclusive, nontransferable right to use the particular Services described in an applicable Order, solely for Dealership's internal business purposes, subject to these Terms and Conditions. All rights not expressly granted to Dealership in these Terms and Conditions are reserved by DealerVault.

2.2 **Restrictions on Services**. Dealership will not, directly or indirectly, (I) reverse engineer, decompile, disassemble, or otherwise attempt to discover the source code or other underlying DealerVault Technology; (II) modify, copy, reproduce, display to third parties, translate, or create derivative works based on (A) the Services or (B) any DealerVault Technology; (III) rent, lease, distribute, sell, resell, assign, or otherwise purport to transfer rights to the Services or any DealerVault Technology; (IV) use the Services or any DealerVault Technology for timesharing or service bureau purposes or otherwise for the benefit of any third party; (V) remove any proprietary notices from the Services or any DealerVault Technology; (VI) publish or disclose to third parties any evaluation of the Services or any DealerVault Technology without DealerVault's prior consent; (VII) create any link to the Services or frame or mirror any Content contained on, or accessible from, the Services, without DealerVault's prior written consent; (IX) assert, authorize, assist, or encourage any third party to assert, against DealerVault or any of its affiliates, customers, vendors, business partners, or licensors, any patent infringement or other intellectual property infringement claim regarding any DealerVault Technology Dealership has used; or (X) use DealerVault

Technology in any manner or for any other purpose other than as expressly permitted by these Terms and Conditions.

## 3.0 Use of the Services

3.1 **Resources**. Dealership shall be responsible for obtaining and maintaining all computer hardware, software, communications equipment, facilities, and equipment needed to access the Services, and for paying all third-party access charges (e.g., charges of Internet or telecommunications service providers) incurred in connection with using the Services.

3.2 **User Responsibilities**. Dealership shall be solely responsible for Dealership actions and the actions of Dealership's Users (and any of Dealership's other employees or agents) while using the Services and the contents of any Dealership Data and other information or materials that may be stored or transmitted through Dealership's use of the Services. Dealership agrees to (I) abide by all local, state, national, and international laws and regulations applicable to Dealership's use of the Services, including the laws and regulations of any country, and including, without limitation, all laws regarding the transmission of promotional communications and the collection of personal data by or through the Services; (II) not upload or distribute in any way files that contain viruses, corrupted files, or any other software code that may damage the operation of the Services or any other computers or facilities; (III) not interfere with or disrupt networks or facilities used in providing, or that are connected to, the Services; (IV) not post, promote, or transmit through the Services any material that is unlawful, harassing, libelous, abusive, threatening, harmful, vulgar, obscene, hateful, or racially, ethnically, or otherwise objectionable; (V) not transmit or post any material that encourages conduct that could constitute a criminal offense or give rise to civil liability; (VI) not interfere with any other customer's use and enjoyment of the Services, or any other person or entity's use and enjoyment of services provided by DealerVault or any third party; and (VII) comply with all regulations, policies, and procedures of networks connected to the Services. Dealership acknowledges that the laws and regulations governing the use of the Services may change from time to time. Dealership acknowledges and agrees that DealerVault neither endorses the contents of any of its customers' communications, nor assumes any responsibility for the time, place, manner, or contents of any such communications. Dealership further acknowledges and agrees that DealerVault has the right, but not the obligation, solely for the purpose of enforcing Dealership's obligations hereunder, to implement mechanisms to screen, monitor, modify, and remove any Dealership Data or other Content posted or stored on the Services or transmitted through the Services, at any time and without notice.

3.3 **User Support**. Support Services includes customer support in the form of FAQ notes at www.dealervault.com. Basic email and telephone support through DealerVault's customer service department is also accessible to Users in the 'Contact' section of www.dealervault.com or through DealerVault's helpdesk portal located on Zendesk. Unintended or improper use of the Service or breach of these Terms and Conditions may, at DealerVault's sole discretion, void Dealership's access to customer support. DealerVault does not provide support for integrations between the Service and third party applications unless otherwise expressly agreed between the Parties in writing. If found that Dealership has utilized DealerVault Support Services in matters relating to a non-supported third party integration, or an

unintended or improper use of the Services, Dealership agrees to reimburse DealerVault for all costs incurred by DealerVault in the providing of such Services and to pay DealerVault professional services Fees, billable at an agreed upon rate.

3.4 **Use and Data Limitations**. DealerVault shall only extract the Dealership Data that the Dealership permits DealerVault to extract.  Additionally, DealerVault reserves the right to establish, and to update and otherwise modify, limitations upon the use of the Services from time to time upon written notice to Dealership. For example, DealerVault may implement a maximum amount of memory or other computer storage, a maximum amount of Dealership Data that Dealership may store, post or transmit on or through the Services, and limitations on the size, frequency, timing, or other manner of messages transmitted using the Services. Dealership will be responsible for maintaining an archive or back-up copy of all Dealership Data and DealerVault will have no liability for the cost to replace any loss of Dealership Data unless such loss of Dealership Data resulted directly from the gross negligence of DealerVault.

3.5 **Third Party Interactions**. In Dealership's use of the Services, Dealership may enter into correspondence with, or may receive communications from, advertisers, sponsors, or other persons promoting their goods and/or services through the Services. Any such activity, any purchases of goods or services Dealership may make from such persons, and any terms, conditions, warranties, or representations associated with such activities are solely between Dealership and the applicable third party. DealerVault shall have no liability, obligation, or responsibility for any such correspondence, purchases, or promotions. DealerVault does not endorse any sites or services that are linked to or otherwise mentioned on the Services. DealerVault provides any links or references to third-party products and services to Dealership only as a matter of convenience, and in no event will DealerVault be responsible for any contents, products, or other materials available from such third parties. DealerVault provides the Services to Dealership pursuant to these Terms and Conditions. Dealership recognizes, however, that certain third-party providers of ancillary software, hardware, or services may require Dealership's agreement to additional or different licenses, or other terms prior to Dealership's use of or access to such software, hardware, or services. DealerVault shall in no way be responsible for any adverse effects caused by the use of third-party applications in conjunction with the Services, and Dealership assumes full responsibility for the use of such applications and their effect on the Services.

3.6 **Employment Solicitation**. For the duration of these Terms and Conditions, and for a period of one (1) year following termination of these Terms and Conditions, each Party agrees not to solicit the employment of any employee of the other Party.

3.7 **Additional Policies and Guidelines**. Certain Services, and certain features or capabilities of some of the Services, may be subject to terms and conditions particular to such Services, features, and capabilities. Any such additional terms and conditions may be set forth in policies, guidelines, and similar documents that may be posted on the Services or otherwise made available to Dealership from time to time.

Dealership must comply with any and all such policies and guidelines, all of which are incorporated into these Terms and Conditions.

## 4.0 Term and Termination

4.1 **Term**. The term of these Terms and Conditions shall be ongoing until written termination. Either Party may terminate these Terms and Conditions, with or without cause, by providing to the other Party ten (10) days written notice of its desire to terminate.

4.2 **Termination or Suspension for Cause**. Any breach of Dealership's obligations under these Terms and Conditions will be deemed a material breach of these Terms and Conditions. DealerVault, in its sole discretion, may terminate, suspend, or otherwise restrict Dealership's password, account, or use of the Services if Dealership breaches or otherwise fails to comply with any of Dealership's covenants, representations, or warranties in these Terms and Conditions.

4.3 **Effect of Termination**. Upon termination of these Terms and Conditions, the following shall occur: (I) All rights and licenses granted to Dealership under these Terms and Conditions shall terminate except as provided herein below; (II) Dealership shall immediately cease using the Services and all other Confidential Information, and all copies and printed materials of the same, in any and all forms and mediums except as provided herein below; (III) Any obligations of Dealership, which expressly survive termination of these Terms and Conditions, shall continue in full force and effect subsequent to and notwithstanding termination of these Terms and Conditions; (IV) DealerVault and Dealership shall have all other rights and remedies permitted by these Terms and Conditions, law, and equity, including, but not limited to, the right to injunctions, restraining orders, damages, profits, and other relief.

4.4 **Retention of Dealership Data**. DealerVault may retain Dealership Data for a period of one hundred and twenty (120) days after termination of these Terms and Conditions. Dealership may request that DealerVault conduct an export of Dealership Data, and DealerVault agrees to provide such Services at its then current rates on a time and materials basis. Dealership agrees and acknowledges that DealerVault has no obligation to retain the Dealership Data for longer than thirty (30) days after termination of these Terms and Conditions.

4.5 **Survival**. Section 2.2 (Restrictions on Services), Section 3.6 (Employment Solicitation), Section 4.3 (Effect of Termination), Section 5 (Proprietary Rights), Section 6 (Confidentiality, Privacy, and Publicity), Section 7.2 (Warranty Disclaimer), Section 8 (Indemnification), Section 9 (Limitation of Liability), and Section 10 (General) will survive any termination of these Terms and Conditions. In no event will any termination of these Terms and Conditions relieve Dealership of any obligations or liability accrued prior to termination including, without limitation, the obligation to pay any Fees payable to DealerVault.

## 5.0 Proprietary Rights

5.1 **Intellectual Property Ownership**. DealerVault will exclusively own all right, title, and interest, including all related Intellectual Property Rights, in and to the Services, the DealerVault Technology, and any

modifications thereto or derivative works thereof. Further, DealerVault will exclusively own any suggestions, ideas, enhancement requests, feedback, recommendations, or other information provided by Dealership or any third party relating to the Services or DealerVault Technology (the "Feedback").

Dealership hereby assigns, and agrees to assign, any and all right, title, and interest, including all related Intellectual Property Rights, in and to the Feedback and any modifications to, or derivative works of, the Services and the DealerVault Technology. These Terms and Conditions is not a sale and does not convey to Dealership any rights of ownership in or related to the Services, the DealerVault Technology, or the Intellectual Property Rights owned by DealerVault. The DealerVault name, the DealerVault logo, and the product names associated with the Services are trademarks of DealerVault or third parties, and no right or license is granted to use them. Other trademarks, logos, and trade names that may appear on the Services are the property of their respective owners. DealerVault reserves to itself all rights in and to the Services and DealerVault Technology not expressly granted to Dealership in accordance with these Terms and Conditions. Dealership shall not remove any copyright, trademark, service mark, patent, or other proprietary or restrictive notice or legend contained in or included on any of the DealerVault Technology, and any reproduction or copy of the same. Dealership shall modify existing notices and apply such additional notices as DealerVault may request from time to time.

**5.2 Protective Action**. Dealership shall immediately notify DealerVault of any known infringement of or challenge to the License, Dealership's licensed use of or DealerVault's exclusive rights in the DealerVault Technology, or any claim by any person, business, or entity to any rights in the DealerVault Technology, whenever it first comes to Dealership's attention. DealerVault shall have sole discretion to take such action as it deems appropriate, and the right to exclusively control any litigation, action, or proceeding, whether before a court, administrative agency, or otherwise, arising out of any such infringement, challenge, or claim, or otherwise relating to the DealerVault Technology, and render such assistance and do such acts or things as may be reasonably necessary to protect or maintain the interests of DealerVault in any such litigation, action, or proceeding, or to otherwise protect and maintain the interests of DealerVault in the DealerVault Technology.

**5.3 Dealership Data**. Dealership will retain all ownership of Dealership Data that Dealership submits to DealerVault in the course of these Terms and Conditions. Dealership, not DealerVault, has sole responsibility for the accuracy, quality, integrity, legality, reliability, appropriateness, and intellectual property ownership and right to use all Dealership Data. Dealership will ensure that Dealership and DealerVault have the right to use Dealership Data as contemplated by these Terms and Conditions, and Dealership hereby grants, and agrees to grant, to DealerVault the right to use all Dealership Data for the purposes set forth in these Terms and Conditions and in compliance with the National Automobile Dealers Association guidelines. DealerVault will take commercially reasonable measures to protect Dealership Data on the Services. Except as permitted in these Terms and Conditions, DealerVault will not willfully edit, delete, or disclose Dealership Data unless (I) authorized by Dealership, (II) DealerVault is required to do so by law, or (III) in the good faith belief that such action is necessary to: (A) conform with applicable laws or comply with legal process served on DealerVault, (B) protect and defend the rights or property of

DealerVault, or (C) enforce these Terms and Conditions. Dealership grants to DealerVault an irrevocable, non-exclusive, royalty-free, fully paid up, perpetual, worldwide license, with the right to sublicense, use, reproduce, publish, distribute, perform, and display statistical information and data such as usage, traffic patterns, or User activities in aggregate form to third parties, but such information will not include information which could be used to identify Dealership or any person. DealerVault may access Dealership Data to service or respond to technical issues with the Services. DealerVault is authorized to keep and utilize information pertaining to or provided by Dealership for the enhancement of DealerVault Services and maintenance of business records. DealerVault may only disclose Dealership Data to third parties as authorized by Dealership or as required by law.

## 6.0 Confidentiality, Privacy, and Publicity

6.**1 Confidentiality**. Confidential Information includes, but is not limited to, research, product plans, products, services, customer lists, development plans, inventions, processes, formulas, technology, designs, drawings, marketing, finances, and other business information, along with information received from third parties for which DealerVault has confidentiality obligations. As between Dealership and DealerVault, Confidential Information is the sole property of DealerVault. Confidential Information does not include any information that: (I) was publicly known and made generally available in the public domain prior to the time DealerVault disclosed the information to Dealership; (II) became publicly known and made generally available, after disclosure to Dealership by DealerVault, through no wrongful action or inaction of Dealership or others who were under confidentiality obligations; or (III) was in Dealership's possession, without confidentiality restrictions, at the time of disclosure by DealerVault, as shown by Dealership's files and records. Dealership will not disclose any Confidential Information to any third party or use the Confidential Information for any purpose other than use and receipt of the Services in accordance with these Terms and Conditions. Dealership will take all reasonable precautions to prevent any unauthorized disclosure of all Confidential Information.

6.2 **Irreparable Harm**. The Parties recognize that the disclosure of Confidential Information by any Party may give rise to irreparable injury to the other Party, which may not be adequately compensated by damages. Accordingly, in the event of a breach or threatened breach by either Party of these Terms and Conditions, the non-breaching Party shall be entitled to an immediate injunction restraining the other Party from disclosing, in whole or in part, the Confidential Information referred to herein, or from rendering any services to any person, firm, corporation, association, or other entity to whom such Confidential Information, in whole or in part, has been disclosed or is threatened to be disclosed. Nothing herein shall be construed as prohibiting either Party from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages.

6.3 **Nondisclosure.** The Parties, at all times during the term of these Terms and Conditions and thereafter, agree to hold in strictest confidence and not to disclose to any person, firm, corporation, or other entity, and not to use (except as otherwise agreed to in writing by the Parties), any trade secrets or other confidential and/or proprietary knowledge, data, materials, or other information relating to proprietary methods, products, pricing, processes, procedures, records, services, know-how, concepts, ideas,

formulas, reports, communications, customer lists, and data, business or marketing plans, financial information, or other subject matter pertaining to any business or activity of DealerVault, or any subsidiaries, clients, consultants, or licensees, which is generally not known to others engaged in similar business or activities. The Parties agree not to improperly use or disclose any proprietary information or trade secrets of any former or concurrent client or company, if any, and neither Party will bring onto the premises of the other any unpublished document or any property belonging to any current or former client or company, if any, unless consented to in writing by such client or company.

6.4 **Other Information**. The Parties recognize that DealerVault and/or Dealership may receive from third parties confidential or proprietary information subject to a duty to maintain the confidentiality of such information and to use it only for certain limited purposes. The Parties agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm, corporation, or other entity or to use it for the benefit of anyone other than DealerVault and/or Dealership, or such third party (consistent with any third party agreement) without express written authorization.

6.5 **Return of Confidential Information**. The Parties agree that upon termination of these Terms and Conditions, Dealership will deliver to DealerVault and DealerVault will deliver to Dealership (and will not keep in their possession or deliver to anyone else) any and all Confidential Information or reproductions thereof belonging to DealerVault and/or Dealership, or any of their successors, or permitted assigns.

6.6 **Security Privacy Policies**. Dealership will maintain written privacy policies governing the use of the data Dealership collects using the Services and Dealership agrees to abide by them.

6.7 **Password Security**. DealerVault will issue to Dealership, or shall authorize an Administrator to issue, a password for each User authorized to use Dealership's account. Dealership and Dealership's Users must maintain the confidentiality of all passwords and ensure that each password is used only by the unique authorized User to whom such password is assigned. Dealership is entirely responsible for any and all activities that occur under Dealership's account. Dealership agrees to immediately notify DealerVault of any unauthorized use of Dealership's account (including any unauthorized use of any password of any User accessing the Services by means of Dealership's account) or any other breach of security known to Dealership. DealerVault will have no liability for any loss or damage arising from Dealership's failure to comply with these requirements.

6.8 **General Security**. DealerVault will maintain the DealerVault Technology used to provide the Services at a third party location, hosting, and telecommunication facilities, where it is subject to commercially reasonable security precautions to prevent unauthorized access to the Services. Dealership acknowledges that, notwithstanding such security precautions, unauthorized third parties may gain access to the Services and to any or all Dealership Data. Accordingly, DealerVault cannot and does not guarantee the privacy, security, or integrity of any Dealership Data or of any other data transmitted by or through the Services.

6.9 **Publicity**. DealerVault may use Dealership's name and logo as part of a list of customers and may refer to Dealership as a user of its Services in its advertising and marketing activities. Each Party shall obtain the other Party's permission prior to using the other Party's name, logo(s), or other trademarks for any other marketing or promotional purposes. The Parties agree that any press release or other public comments issued by either Party relating to these Terms and Conditions (including, without limitation, any dispute under these Terms and Conditions), or Dealership's subscription to or use of the Services, will be prepared jointly by DealerVault and Dealership and will be issued only upon mutual agreement of the Parties.

## 7.0 Warranties and Disclaimers

7.1 **Mutual Warranties**. Each Party represents and warrants that: (I) it has the legal right, power, and authority to enter into these Terms and Conditions and to perform all of its obligations under these Terms and Conditions, and (II) its entrance into these Terms and Conditions does not violate any agreement between such Party and any third party.

7.2 **Warranty Disclaimer**. In addition to the warranties otherwise set forth in these Terms and Conditions, but not limited to, DealerVault's security warranties set forth in Section 6 and limitation of damages set forth in Section 9, DealerVault warrants that: (i) DealerVault shall comply with all federal, state, and local laws, rules or regulations which relate to these Terms and Conditions (ii) the Services and DealerVault's methods of performing the Services is not and has not been subject to infringement claims, and shall not infringe any patent, trademark, trade dress, trade name, trade secret, copyright, proprietary right, or other right of any third party; (iii) DealerVault has full power to enter into these Terms and Conditions, and right, title and authority to provide the Services under these Terms and Conditions, to carry out its obligations in these Terms and Conditions; and (iv) all services provided under these Terms and Conditions will be performed in a diligent, skillful, and workmanlike manner, consistent with the customarily accept good business practices and otherwise in accordance with the applicable professional standards currently recognized within DealerVault's line of business. Except as stated in these Terms and Conditions, DealerVault makes no additional representation or warranty that the use of the Services will be secure, timely, uninterrupted, or error-free or operate in combination with any other hardware, software, systems, or data or that the Services, the Content, or the equipment or facilities used to make the Services available are free of viruses or other harmful components. DealerVault shall not be liable for damages, delay or default in performance if such delay or default by conditions beyond its control including, but not limited to, acts of God, governmental restrictions, wars, insurrections, and/or any other cause beyond the reasonable control of either Party. Furthermore, damage and/or significant problems that result from anomalies and/or abnormal circumstances such as fire, flood, electrical surges, deliberate malicious acts, theft, act of God, wars, insurrections, and/or any other cause beyond the reasonable control of either Party fall outside the terms of these Terms and Conditions. EXCEPT AS EXPRESSLY PROVIDED IN THESE TERMS AND CONDITIONS, ALL REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED BY

DEALERVAULT TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAWS. NO ADVICE OR INFORMATION FROM DEALERVAULT SHALL CREATE ANY WARRANTY NOT EXPRESSLY STATED IN THESE TERMS AND CONDITIONS.

7.3 **Communications Delays and Outages**. THE SERVICES MAY BE SUBJECT TO LIMITATIONS, OUTAGES, DELAYS, AND OTHER PROBLEMS INHERENT IN THE USE OF THE INTERNET, TELEPHONY, AND ELECTRONIC COMMUNICATIONS. DEALERVAULT IS NOT RESPONSIBLE FOR ANY DELAYS, DELIVERY FAILURES, OR OTHER DAMAGE RESULTING FROM SUCH PROBLEMS.

## 8.0 Indemnification

8.1 **Mutual Indemnification.** Each Party shall at all times indemnify and hold harmless (and, if requested, defend) the other Party, together with its officers, directors, employees, agents and representatives (each an "Indemnitee"), against and from any and all claims, costs, damages, losses, liabilities, and expenses (including attorneys' fees and costs), and other detriments of every nature and description sustained by the Indemnitee (each a "Claim"), where such Claim arises out of or in connection with the inaccuracy or breach by such Party (or such Party's officers, directors, employees, agents or representatives) of a material term, condition, obligation, covenant, representative or warranty of these Terms and Conditions, except where such inaccuracy or breach was caused by the willful act or gross negligence of an Indemnitee.

8.2 **DealerVault's Duty of Indemnification**.  Notwithstanding anything to the contrary in section 8.1 (Mutual Indemnification) or any other applicable section of these Terms and Conditions, DealerVault shall indemnify and hold harmless the Dealership, together with its officers, directors, employee, and representatives, against and from any Claim (as used in section 8.1) where such Claim arises due to an event concerning the security of the Dealership Data while the Dealership Data is in the possession of DealerVault.

## 9.0 Limitations of Liability

9.1 **Limitation of Liability**. In no event will DealerVault's total liability, of any nature, arising out of or relating to these Terms and Conditions or any services provided by DealerVault (regardless of the forum and regardless of whether any action or claim is based upon contract, tort, strict liability, breach of warranty, statute, or otherwise) exceed any applicable, if any, liability insurance which DealerVault may have in place. DealerVault shall maintain liability insurance of not less than $20,000,000 per occurrence.

9.2 **Disclaimer of Consequential and other Indirect Damages**. Except for claims arising from either the willful misconduct of a Party, or the infringement upon intellectual property rights by a Party, against the other Party hereto, in no event will either Party be liable for any indirect, incidental, punitive, special, or consequential damages arising out of or relating to these Terms and Conditions, including, but not limited to, damages for loss of profits, loss of business, loss of use, or loss of Dealership Data or other intangible property, even if the Party has been advised of the possibility of such damages. In the event that this limitation of damage is held unenforceable by a final determination by a court with jurisdiction over the matter, then the Parties agree that by reason of the difficulty in foreseeing possible damages, all liability of

one Party to the other Party shall be limited to $500 as liquidated consequential and special damages and not as a penalty.

9.3 **Independent Allocations of Risk**. Each provision of these Terms and Conditions that provides for a limitation of liability, disclaimer of damages, or exclusion of damages is to allocate the risks of these Terms and Conditions between the parties. This allocation is reflected in the pricing offered by DealerVault to Dealership and is an essential element of the basis of the bargain between the parties. Each of these provisions is severable from and independent of all other provisions of these Terms and Conditions.

## 10.0 General

10.1 **Notices**. All notices required under these Terms and Conditions will be in writing and will be sent by Certified Mail, Return Receipt Requested, or by other means which has a trackable service, and with signature required by the receiving Party. Notwithstanding the foregoing, Dealership acknowledges and agrees that DealerVault may provide Dealership with notices, including but not limited to those regarding changes to these Terms and Conditions, by email, regular mail, or postings on the Services. Any such notices will be deemed given the day they are displayed on the Services.

10.2 **Entire Agreement**. These Terms and Conditions, including all corresponding Orders and exhibits where applicable, contains the entire agreement of the Parties and supersedes any and all prior and contemporaneous agreements with respect to the subject matter hereof, whether orally or in writing. These Terms and Conditions supersede any terms printed on Dealership's purchase order or other communications. In the event of any conflict between these Master Terms and Conditions and the terms of the Order, the terms of the Order will govern, but solely to the extent of the conflict.

10.3 **Assignment**. These Terms and Conditions will be binding on and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. Dealership may not assign or otherwise transfer these Terms and Conditions, whether voluntarily or by operation of law, without DealerVault's prior written consent. Any attempted assignment without DealerVault's written consent shall be null and void. DealerVault may assign these Terms and Conditions to any parent, subsidiary, or affiliate and to any successor to its business, whether by merger, sale of assets, or otherwise. DealerVault also may, in its discretion, subcontract and otherwise delegate any or all of its obligations hereunder, but shall nevertheless remain responsible for the performance of its obligations hereunder.

10.4 **Relationship of the Parties**. The Parties expressly agree that they are independent contractors and do not intend for these Terms and Conditions to be interpreted as an employment agency, joint venture, or partnership relationship.

10.5 **Injunctive Relief**. Actual or threatened breach of Section 2 (Services), Section 3 (Use of the Services), Section 5 (Proprietary Rights), or Section 6 (Confidentiality, Privacy, and Publicity) may cause immediate, irreparable harm that would be difficult to calculate and could not be remedied by payment of

damages alone. Accordingly, DealerVault or Dealership, as the case may be, will be entitled to seek preliminary and permanent injunctive relief and other equitable relief for any such breach.

10.6 **Governing Law & Venue**. These Terms and Conditions and any disputes arising hereunder shall be governed in all respects, including validity, interpretation, and effect, by the laws of the State of Wisconsin, without regard to its conflict of laws principles. Any dispute under these Terms and Conditions initiated by Dealership shall be brought in the state and federal courts within the State of Wisconsin, and any dispute under these Terms and Conditions initiated by DealerVault shall be brought in the state and federal courts where the Dealership's principal office is located. Each Party hereby irrevocably consents and submits to the exclusive jurisdiction of such courts as provided above. Each Party specifically waives any right to trial by jury in any court in connection with any action or litigation. Any cause of action arising out of or related to these Terms and Conditions must be brought within one (1) year after the cause of action arose; otherwise, such cause of action will be permanently barred.

10.7 **Export Controls**. Each Party will comply with the export laws and regulations of the United States and other applicable jurisdictions in providing and using the Services. Without limiting the foregoing, (I) each Party represents that it is not named on any U.S. government list of persons or entities prohibited from receiving exports, and (II) Dealership shall not permit any Users to access or use any Services in violation of any U.S. export embargo, prohibition, or restriction.

10.8 **Headings**. The headings in these Terms and Conditions are for reference only and will not limit or otherwise affect the meaning of any provisions of these Terms and Conditions.

10.9 **Severability**. In the event that one or more of the provisions of these Terms and Conditions is invalid or otherwise unenforceable, the provision will be modified by the court and interpreted so as best to accomplish the objectives of the original provision to the fullest extent permitted by law, and the enforceability of remaining provisions will be unimpaired.

10.10 **Force Majeure**. Neither Party will be in default of any obligation under these Terms and Conditions to the extent that its failure to perform is caused solely by conditions beyond that Party's reasonable control, such as acts of God, civil commotion, war, strikes, labor disputes, third party Internet service interruptions or slowdowns, vandalism or "hacker" attacks, acts of terrorism, or governmental demands or requirements that prevent or prohibit DealerVault from providing Services.

10.11 **Compliance with the Law**. Dealership shall comply with applicable laws, rules, regulations, orders, conventions, ordinances, or standards of the country of destination or which relate to these Terms and Conditions.

10.12 **Arbitration**. Either party to these Terms and Conditions may, after a dispute or controversy arises, make a written request and demand arbitration of any dispute or controversy hereunder by making such

written requests in writing to the other Party. Any dispute or controversy shall be submitted to a single arbitrator with experience in high technology commercial matters to be chosen by mutual agreement of the Parties within five (5) days after the request for arbitration is made as above. If the Parties, within such time, cannot agree on an arbitrator, the arbitrator shall be chosen pursuant to the American Arbitration Association procedures from its panel of arbitrators with high technology commercial experience. If the arbitration is commenced by Dealership the arbitration hearing shall be held in La Crosse, Wisconsin, United States of America, or at such other place that the Parties and the arbitrator mutually agree upon within thirty (30) days from the demand for arbitration. If the arbitration is commenced by DealerVault the arbitration hearing shall be held in Dealership's principal State, or at such other place the Parties and the arbitrator mutually agree upon within thirty (30) days from the demand for arbitration. The commercial arbitration rules of the American Arbitration Association shall be used in the arbitration proceedings. The arbitration herein shall be concluded in not more than three (3) days unless otherwise ordered by the arbitrator. The award on the hearing shall be made within fourteen (14) days after the close of the submission of evidence. An award rendered by the arbitrator or appointed pursuant to these Terms and Conditions shall be final and binding on all of the Parties to such proceeding and enforced in the Court of proper jurisdiction as provided herein. The provisions of this section shall be a complete bar and defense to any suit, action, or proceedings instituted in any Court, before any Court, or before any administrative tribunal with respect to any dispute or controversy arising out of or in connection with these Terms and Conditions. The arbitration provisions of these Terms and Conditions shall, with respect to any such dispute or controversy, survive the termination or expiration of these Terms and Conditions. The arbitrator shall determine which of the parties shall bear the costs and/or expenses of the arbitration. The failure or refusal of any Party hereto to submit to arbitration in accordance with these Terms and Conditions shall be deemed a breach of these Terms and Conditions. Each Party shall continue to support its obligations including financial under the terms of these Terms and Conditions pending final resolution of any dispute arising out of or relating to these Terms and Conditions.

10.13 **Modification.** By using the Services provided by DealerVault Dealership agrees to be subject to the most current version of the Terms and Conditions which can be found at http://www.dealervault.com. You can review the most current version of the Terms of Service at any time on this page. DealerVault reserves the right to update, change or replace any part of these Terms of Service by posting updates and/or changes to our website. It is your responsibility to check this page periodically for changes. Your continued use of or access to the website following the posting of any changes constitutes acceptance of those changes.

10.14 **Waiver of Breach**. A Party to these Terms and Conditions will not be bound by a waiver of any right or remedy that inures to the Party's benefit under these Terms and Conditions unless the waiver is in writing signed by the Party. The waiver by any Party of strict performance of any provision in these Terms and Conditions shall not operate or be construed as a waiver of any subsequent breach.

Case 3:1 -cv-00318-jdp Document #: 05-37 Filed: 05/08/17 Page 16 of 15

10.15 **Authority**. Each Party represents that it is a duly organized, validly existing entity, has full power and authority to enter into these Terms and Conditions on behalf of DealerVault and Dealership and bind said Party to these Terms and Conditions, and that Dealership acknowledges and represents by entering into and using DealerVault's Services, Dealership electronically executes these Terms and Conditions and the matters contemplated in these Terms and Conditions have been fully authorized by all necessary legal action, and that these Terms and Conditions is binding upon such Party. Each Party further represents that it has not entered into, nor will it enter into, any agreements that would conflict with its obligations under these Terms and Conditions or would render it incapable of satisfactory performing hereunder.