**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to:<br>*Authenticom, Inc. v. CDK Global, LLC*, *et al.*,<br>Case No. 1:18-cv-00868 (N.D. Ill.) | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr. |

**AUTHENTICOM, INC.'S MEMORANDUM IN SUPPORT OF ITS
PARTIAL MOTION TO DISMISS THE COUNTERCLAIMS OF
THE REYNOLDS AND REYNOLDS COMPANY**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

LEGAL STANDARD .................................................................................................................... 3

ARGUMENT ................................................................................................................................. 4

    I.    Reynolds Fails To State a Claim for Conversion......................................................... 4

CONCLUSION .............................................................................................................................. 5

## INTRODUCTION

In its counterclaims, The Reynolds and Reynolds Company ("Reynolds") alleges that Authenticom, Inc. ("Authenticom") violated various federal and state laws by accessing the Reynolds' Dealer Management System, ("DMS") on behalf of Reynolds' dealership customers. As with CDK Global, LLC ("CDK"), Reynolds does not allege – nor could it, in good faith – that Authenticom lacked authorization from those dealerships to access dealer data on the Reynolds DMS. Reynolds (again, like CDK) also does not dispute that the dealerships themselves have the contractual right to access the data that Authenticom accesses on their behalf. What differentiates Reynolds and CDK is that Reynolds' DMS contract with dealers allegedly prohibits third-party DMS access, while CDK's Master Services Agreement ("MSA") expressly permits it.

As Authenticom explains in its motion to dismiss CDK's counterclaims, the plain terms of CDK's MSA are fatal to its claims. *See* Authenticom's Mem. in Supp. of Its Mot. to Dismiss the Countercl. of CDK Global LLC, Dkt. 276. Authenticom believes that Reynolds' claims are also untenable, notwithstanding that Reynolds' DMS contract prohibits third party access. As a matter of law, the *dealerships'* authorization is all the authorization Authenticom needs. Reynolds' contention that the dealers' grant of permission to Authenticom violates its contracts may give rise to a civil dispute between the dealers and Reynolds, but it does not make Authenticom's access – at all times at the dealer's behest – unlawful, much less a violation of a federal anti-hacking *criminal* statute like the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. That is especially true because, as the evidence will show – and as Chief Judge James D. Peterson of the Western District of Wisconsin has already found – Reynolds honored the DMS contract in the breach, by repeatedly allowing third-party access notwithstanding the alleged terms of its contracts with dealerships. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *9 (W.D. Wis. July 14, 2017) (holding that it was "perhaps most important" that "Reynolds already allows

many exceptions to its 'no hostile integration' policy. There was ample evidence that Reynolds allowed (and even continues to allow to this day) third parties to use dealer credentials when it suited Reynolds.").

Moreover, as Judge St. Eve held in her Memorandum Opinion and Order, "[e]ven assuming, without deciding, that the CFAA prohibits Authenticom from accessing DMSs without Defendants' authorization, Defendants are not free to withhold such approval pursuant to illegal arrangements." Memorandum Opinion and Order at 21, *Authenticom, Inc. v. CDK Global, LLC et al.,* No. 18 C 864 (N.D. Ill.) (May 14, 2018), Dkt. 176 ("*Authenticom* MTD Op."). Authenticom believes the evidence will show that Reynolds imposed the prohibition on third-party access on dealerships through the unlawful exercise of market power and maintained that prohibition as part of its conspiracy with CDK to eliminate competition in the data integration market.

At this juncture, however, Authenticom does not ask this Court for dismissal on these grounds, because Authenticom believes that its defenses to Reynolds' counterclaims can be better raised at summary judgment after additional factual development. Rather, as set forth below, Authenticom seeks partial dismissal of Reynolds' claim for conversion, which is implausible and should be dismissed pursuant to Rule 12(b)(6).

## BACKGROUND

In the course of operating its business, a car dealership generates numerous pieces of data – such as inventory, parts, customer, and repair information – and stores that information on a DMS. *See* Reynolds Counterclaim Complaint ¶ 4, Dkt. 225 (noting "swath[]" of "voluminous" data is stored on the DMS). Most dealerships also rely on third-party software applications for their day-to-day operations. *Id.* ¶ 34 ("Reynolds' dealership customers often desire to use various third-party applications as part of their business operations."). To create those applications, software application companies (known as "vendors") need access to the dealer data stored on the

2

DMS. And because car dealers and software vendors do not specialize in pulling data from the DMS, there is a separate market for "data integration services," in which "data integrators" extract dealers' data from the DMS, put it in a standardized format, and deliver it to vendors. *See generally Authenticom* MTD Op. at 5-8, Dkt. 176. Reynolds and Authenticom are competitors in the market for data integration services with respect to dealers that use the Reynolds DMS. *See id.*; Counterclaim Compl. ¶¶ 36-37 (describing Reynolds' RCI data integration service).

Specifically, Authenticom provides data integration services for Reynolds dealers that authorize Authenticom to do so; those dealers not only authorize Authenticom's access but affirmatively create login credentials for Authenticom so that Authenticom can access the dealers' DMS-stored data on the dealers' behalf. *Id.* ¶ 67 (dealers either "shar[e] existing login credentials or creat[e] new ones for Authenticom to use").

On June 29, 2018, after Judge St. Eve denied in large part Reynolds' motion to dismiss Authenticom's antitrust complaint, *see Authenticom* MTD Op., Dkt. 176, Reynolds answered Authenticom's complaint and filed a variety of counterclaims. The counterclaims do not dispute that dealers authorize Authenticom to access the Reynolds DMS on their behalf. Rather, Reynolds' counterclaims allege that Authenticom's dealer-authorized access to the dealers' data is unlawful under a variety of state and federal laws.

## LEGAL STANDARD

To survive a Rule 12(b)(6) challenge, Reynolds' Counterclaim Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Authenticom* MTD Op. at 3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013)).

3

**ARGUMENT**

**I.     Reynolds Fails To State a Claim for Conversion**

As explained in Authenticom's memorandum in support of its motion to dismiss CDK's counterclaims, *see* Dkt. 276, at 18-19, the common-law claim of conversion requires, as an essential element, that the defendant has exercised dominion and control over the plaintiff's chattel. *See* Restatement (Second) of Torts § 222A(1) ("Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."); *accord*, *e.g.*, *Bruner v. Heritage Cos.*, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999) (elements of conversion are "intentional[] control[] [or] taking property belonging to another" without the owner's consent, "resulting in serious interference with the rights of the owner to possess the property"). Dominion and control requires "such a serious violation of the other's right of control as to justify requiring the user to pay the full value of the chattel." Restatement (Second) of Torts § 228 cmt. d; *id.* § 222A cmt. d (stating that the question of whether defendant's action was a sufficiently serious interference turns on the "justice of requiring the forced purchase at full value").

That critical element is where Reynolds' conversion claim founders: the factual allegations in Reynolds' counterclaims do not plausibly establish that, when Authenticom accessed Reynolds's DMS, it so "seriously interfered" with "Reynolds' possessory rights in its server systems" that Authenticom converted – and should be awarded the full value of – the entire DMS. Counterclaim Compl. ¶ 165; *see* Restatement (Second) of Torts § 222A, cmt. c (conversion requires deprivation of the entirety of the chattel).

Reynolds' only concrete factual allegation supporting its conversion claim is that Authenticom's "[u]se of the DMS PC software program [sent] instructions to the Reynolds-owned server systems, which execute[d] the instructions and sen[t] back a response." *See* Counterclaim

4

Compl. ¶ 163. But courts have rejected the attempt to equate unauthorized access with conversion. For good reason: there is no allegation that Authenticom's access deprived Reynolds – or anyone else – of the use of the DMS. Nor did Authenticom obtain access to any data that the dealerships were not authorized to obtain, if they had done so on their own rather than using a third party like Authenticom. *See DIRECTV, Inc. v. Massey,* 2004 WL 1194744, at *4 (N.D. Ill. May 27, 2004) (dismissing conversion claims for alleged interference with satellite broadcasts because "there are no allegations that [Defendants] exercised such dominion and control over the signals as to deprive DIRECTV, the rightful owner of the signals, the use of them."); *see also SCS Healthcare Mktg., LLC v Allergan USA, Inc.*, 2012 WL 6565713 (N.J. Super. Ch. Dec. 7, 2012) (granting motion to dismiss conversion claim and noting that in the "context of unauthorized computer access" claims, courts have "been reluctant to find conversion where there is no tangible [personal] property taken.").

In short, Reynolds has failed to plead facts that plausibly establish that Authenticom converted Reynolds' DMS.

## CONCLUSION

The Court should dismiss Reynolds' claim for conversion.

Dated: July 20, 2018                                   Respectfully submitted,

                                                            */s/ Derek T. Ho*

Jennifer L. Gregor                                     Derek T. Ho
Kendall W. Harrison                                    Michael N. Nemelka
**Godfrey & Kahn S.C.**                                Aaron M. Panner
One East Main Street, Suite 500                        David L. Schwarz
Madison, WI 53703                                      Kevin J. Miller
(608) 257-0609                                         Daniel V. Dorris
jgregor@gklaw.com                                      Joanna T. Zhang
kharrison@gklaw.com                                    Joshua Hafenbrack
                                                            **Kellogg, Hansen, Todd,**
*Attorneys for Authenticom, Inc.*                        **Figel & Frederick, P.L.L.C.**
                                                            1615 M Street, NW, Suite 400
                                                            Washington, D.C. 20036
                                                            (202) 326-7900
                                                            dho@kellogghansen.com
                                                            mnemelka@kellogghansen.com
                                                            apanner@kellogghansen.com
                                                            dschwarz@kellogghansen.com
                                                            kmiller@kellogghansen.com
                                                            ddorris@kellogghansen.com
                                                            jzhang@kellogghansen.com
                                                            jhafenbrack@kellogghansen.com

                                                            *Attorneys for Authenticom, Inc.*

**CERTIFICATE OF SERVICE**

      I, Derek T. Ho, an attorney, hereby certify that on July 20, 2018, I caused a true and correct copy of the foregoing **AUTHENTICOM INC.'S MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE COUNTERCLAIMS OF THE REYNOLDS AND REYNOLDS COMPANY** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                            */s/ Derek T. Ho*
                                            Derek T. Ho
                                            **KELLOGG, HANSEN, TODD,**
                                             **FIGEL & FREDERICK, P.L.L.C.**
                                             1615 M Street, NW, Suite 400
                                             Washington, D.C. 20036
                                             (202) 326-7900
                                             dho@kellogghansen.com