IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 |
| | Case No. 1:18-CV-00864 |
| *This document relates to:* | |
| ALL CASES | Hon. Robert M. Dow, Jr. |
| | Magistrate Judge Jeffrey T. Gilbert |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT REYNOLDS AND REYNOLDS COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA

Defendant The Reynolds and Reynolds Company ("Reynolds") respectfully submits this memorandum of law in support of its motion to compel Dominion Enterprises, Inc. ("Dominion") to produce documents responsive to subpoena pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure. The motion is based on the following grounds:

1. On December 7, 2017, Reynolds served a subpoena *duces tecum* on Dominion with a return date of December 22, 2017. A copy of the subpoena is attached as **Exhibit A**.

2. Reynolds served the subpoena because Dominion testified for Plaintiff Authenticom, Inc. ("Authenticom") in a preliminary injunction proceeding in one of the cases giving rise to this multidistrict litigation. Dominion testified that the alleged conspiracy between CDK and Reynolds—which is the subject matter of this multidistrict litigation—caused price increases for Dominion's integration fees. *See* Authenticom Dkt. No. 165, Hearing Transcript (June 27, 2017) at 27-55; Authenticom Dkt. No. 166, Hearing Transcript (June 28, 2017) at 55-56 (Authenticom's counsel arguing that Dominion's testimony is "evidence that the unlawful conduct led to a gigantic price increase"). The District Court and the Seventh Circuit cited to and relied on Dominion's testimony regarding the purported price increases in their respective Orders.

*Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *4 (W.D. Wisc. July 14, 2017); *rev'd* 874 F.3d 1019, 1023 (7th Cir. 2017). Authenticom's courtroom representations and the resulting record regarding the price increases were wrong as the referenced price increases to Dominion occurred years before the alleged 2015 conspiracy underlying this action.

3. The Reynolds subpoena requested documents that go to the heart of Dominion's testimony. *See* **Exhibit A**. The subpoena also requested documents Dominion produced to the Federal Trade Commission (FTC) in response to a Civil Investigative Demand (CID). The FTC's investigation (commonly referred to by the parties as the "FTC Joint Conduct Investigation") encompasses the subject matter of the Authenticom hearing and this multidistrict litigation. All parties in this multidistrict litigation are in the process of reproducing (or have already reproduced) the FTC Joint Conduct Investigation documents pursuant to court order. A copy of the email correspondence discussing Dominion's FTC production is attached as **Exhibit B**.

4. On December 21, 2017, Dominion served Reynolds with a letter objecting to the subpoena pursuant to Fed. R. Civ. Proc. 45(d)(2)(B). A copy of this letter is attached as **Exhibit C**. During the meet and confer process, Dominion indicated that it "hope[d]" the materials it produced to the FTC might satisfy Reynolds' entire subpoena. *See* **Exhibit B**.[1] To that end, the parties agreed that Dominion would reproduce the documents it produced to the FTC, Reynolds would review that production, and the parties would subsequently meet and confer about other documents, if needed. *See* **Exhibit B**. Given that Dominion's FTC documents might resolve the entire subpoena, Reynolds put the remaining requests on hold.

---

[1] Dominion offered to produce documents it had submitted to the FTC in a separate merger investigation as well, which Reynolds did not request in its subpoena, because Dominion hoped the "large body of materials" produced in both investigations might resolve the parties' disputes.

5.      Dominion has indicated it stands ready to reproduce the FTC documents "within days," but has refused to proceed with the production citing confidentiality concerns because it is "both a customer and a competitor of [defendants] Reynolds and CDK." *See* **Exhibits B and E**.

6.      Yet the Court has already entered a comprehensive Protective Order in this case. MDL Dkt. No. 104 (Agreed Confidentiality Order, April 4, 2018).  The Protective Order requires counsel to "make best efforts to prevent unauthorized or inadvertent disclosure of Confidential Information" (*id.* at § I(5)(d)) and prohibits confidential information from being used "for any purpose whatsoever other than in the above captioned case." *Id.* at § I(5)(a).  Parties and non-parties, like Dominion, may designate materials as "Confidential" or "Highly Confidential" pursuant to the Protective Order. *Id.* at §§ I(2)(e), I(3)(a). The "Highly Confidential" designation is specifically meant for "highly sensitive" information "the disclosure of which could result in significant harm, including but not limited to competitive harm, to the business or operations of that Party or Non-Party or to an individual." *Id.* at § I(2)(g).  Highly Confidential materials are afforded the highest protection and are only accessible to "Outside Counsel of Record." *Id.* at §§ I(2)(d), (5)(c)(1).  In-house counsel and corporate employees, other than deposition witnesses, may not see any Highly Confidential materials.  The Protective Order has additional provisions to ensure that Highly Confidential information maintains these protections during depositions and at trial. *Id.* at §§ I(4)(a)-(b), (10).

7.      The Protective Order resolves Dominion's confidentiality objections. *See Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *6 (N.D. Ill. Jan. 18, 2011) ("courts in this district give weight to the expectation that the parties' attorneys will abide by the highest duties and ethical standards that are required of them in general and according to the protective order."); *JAB Distributors, LLC v. London Luxury, LLC*, 2010 WL 4008193, at *4 (N.D. Ill. Oct.

13, 2010) (St. Eve, J.) (rejecting argument that protective order is insufficient); *U.S. v. Aetna Inc. and Humana Inc.*, 2016 WL 8738422, at *8 (D.D.C. Sept. 22, 2016) (non-parties "have not provided any specific facts suggesting that these safeguards [of the Protective Order] are insufficient to prevent against inadvertent disclosure of information").

8. Notwithstanding the Protective Order entered in the case, and unable to point to any safeguards lacking in that Order, Dominion asked Reynolds' outside counsel for additional assurances. Specifically, Dominion demanded assurances that outside defense counsel were not involved in "competitive decisionmaking" for their clients. *See* **Exhibit B**.

9. The legal standard is not in dispute. Courts use the "competitive decisionmaking" standard to determine whether a potential threat of inadvertent disclosure exists. Courts balance that risk against the prejudice and hardship of denying counsel access to information. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-69 (Fed. Cir. 1984). Competitive decisionmaking is "shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in *any or all* of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468, fn. 3 (emphasis added). Courts reason that, in certain circumstances, it may be "humanly impossible" for counsel deeply involved in a client's "competitive decisionmaking" to abide by the protective order and control inadvertent disclosure of competitively sensitive confidential information. *Id*. at 1467-68. Hallmarks of competitive decisionmaking include a lawyer's service on the board of directors or an executive position with the client, secondment of firm lawyers with the client, and participation in pricing and development of the client's product. *Id.* at 1467-69.

10. Most of the cases applying the competitive decisionmaking standard arise in the patent context or involve in-house rather than outside counsel. Patent cases are unique because

the same counsel may participate in patent prosecution activities relating to the litigated patent. *In re Deutsche Bank*, 605 F.3d 1373, 1377 (Fed. Cir. 2010) ("whether a trial lawyer should be denied access to information under a protective order because of his additional role in patent prosecution … is an issue unique to patent law"); *Pfizer v. Apotex*, 744 F. Supp. 2d 758, 765 (N.D. Ill. 2010) (distinguishing *Deutsche Bank* because that case "involved a bar on patent prosecution, and in this case Pfizer seeks restrictions on settlement negotiations and market advice in an ongoing lawsuit"). Cases that address in-house lawyers are likewise distinguishable. While counsel's status is not dispositive, in-house counsel are employees of the client and may have a harder time cabining confidential information, depending on their role within the organization. *FTC v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 669 (N.D. Ill. 2016) ("Where in-house counsel are involved in competitive decision making … the risk of inadvertent disclosure is obviously higher than for retained counsel"); *Aetna*, 2016 WL 8738422, at *8 ("Notably, the risk of inadvertent disclosure is much lower with respect to outside counsel than it is with respect to inside counsel"); *Sibia Neurosciences, Inc. v. Cadus Pharm. Corp.*, 1997 U.S. Dist. LEXIS 24130, at *13, 21-22 (S.D. Cal. July 15, 1997), *aff'd* 132 F.3d 50 (Fed. Cir. 1997) (unpub.) ("with the sole exception" of a case involving the patent prosecution bar, "the cases analyzing attorney access to trade secrets deal exclusively with in-house counsel … the Court finds it highly significant in view of the fact that [movant] has been unable to cite any case other than [the patent bar case] in which a court even considered entering a protective order that disqualified outside counsel").

11.     On June 26, 2018, outside counsel for Reynolds and CDK assured Dominion in writing that "neither Reynolds outside counsel nor CDK outside counsel are involved in competitive decision making with their respective clients" and requested that Dominion produce the documents it had agreed to reproduce. See **Exhibit D**.

12. Dominion, in response, shifted its position and its request, asking for assurance that Reynolds and CDK counsel not provide future *legal* advice regarding any "business dealings" with Dominion, including "contract negotiations, breaches of contract, the enforcement of the terms in the contracts, and any other dealings with application providers or third-party integrators." *See* **Exhibits E – H**. Dominion's proposed restriction would also include legal advice to defendants regarding Dominion's conduct and documents in the current litigation. *See* **Exhibit G**.

13. Antitrust cases are about the legal implications of competitive conduct. Dominion's argument would disqualify any outside counsel in an antitrust case from providing legal advice regarding the legal implications of their client's conduct regarding any plaintiff or witness. There is no support in the case law for such a restriction on Defendants' chosen outside litigation counsel.

14. "Legal advice on business dealings" is not the "competitive decisionmaking" standard required by the case law. *Matsushita Electric Indus. Co., Ltd. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) ("the standard is not regular contact with other corporate officials who make policy, or even competitive decisions, but advice and participation in competitive decisionmaking") (citations omitted).

15. Retained outside counsel for defendants Reynolds and CDK gave assurance they are not involved in competitive decisionmaking, as that term is defined by the relevant authorities. *See* **Exhibits D and F**. The notion that outside defense counsel subject to a clear and comprehensive Protective Order cannot provide legal advice to the client regarding the subject matter of the case or witness for the plaintiff in the case is unsupportable.

16. It is particularly notable that Dominion injected itself into the litigation as a supporting witness for a plaintiff but, to defendants' knowledge has not sought the same restriction

from any of the other plaintiffs, including plaintiff Cox which is a DMS provider and vendor to Dominion, just like the defendants. No other party has requested such a restriction either. *See Aetna*, 2016 WL 8738422, at *8, n. 10 ("Oddly, the proposal is at once too broad in the limits it would place on Defendants' counsel, and too narrow in that it does not apply to Plaintiffs' counsel. Indeed, while the non-parties express concerns that Defendants' counsel may one day represent a non-party competitor, the non-parties apparently have no concerns about any hypothetical harm that may occur if a counsel to Plaintiffs elects to enter the private sector and represent a non-party competitor.").

17.     Outside the circumstances of in-house counsel or the unique patent context, Courts in the Seventh Circuit have not granted the sort of drastic preclusion Dominion demands. *See*, *e.g.*, *Advocate*, 162 F. Supp. 3d at 672-674 (a "sure way to protect the [direct competitor non-parties'] confidential information is to carve out a special category of Highly Confidential information for them that is not accessible to in-house designees," explaining that defendants still had "extraordinarily sophisticated, experienced and talented [outside] counsel" in this antitrust merger litigation); *accord Aetna*, 2016 WL 8738422, at *8 ("the non-parties' speculations regarding potential future harms are not sufficient to justify imposing a three-year ban. . . . Indeed, because it is not always possible to anticipate who may be considered a business competitor in particular situations, the proposed modification may force defense counsel to make an untenable choice between providing fulsome representation in this case, or being able to provide such representation in future cases"); *cf. Pfizer*, 744 F. Supp. 2d at 764 (declining to "prohibit those attorneys who review Pfizer's documents from engaging in future activities that Pfizer alleges will constitute competitive decisionmaking" because "an attorney who reviews confidential

information does not automatically become a competitive decisionmaker," the proposed restriction would be "of indefinite duration," and the restriction goes beyond the patent prosecution bar).

18. Nor has Dominion pointed to a single case outside of the patent context where retained counsel was prevented from seeing confidential documents. The two cases Dominion cited (*see* **Exhibit B**) addressed in-house counsel, not outside retained counsel, in the patent context. *Silversun Indus., Inc. v. PPG Indus., Inc.* evaluated whether an in-house associate general counsel, who had worked for the company for 22 years and attended board of directors meetings as the corporate Secretary, could see a direct competitor's trade secrets in a patent case. 296 F. Supp. 3d 936, 938-39 (N.D. Ill. 2017). The Court denied the in-house attorney access to trade secrets, but found no prejudice, in part, because the defendant had "the eminent skill and experience of their retained counsel," who had unfettered access to confidential information. *Id.* at 939, 945. *ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC* was a patent infringement case in which outside counsel also served as general counsel. The Court precluded that individual from seeing highly confidential documents because his role in the company's business was "active" and "extensive" and "goes well-beyond the typical role of outside counsel, even outside counsel who might work with an entity for years." 2008 WL 5634214, at *7 (E.D. Tex. March 14, 2008). That individual "served in many capacities throughout [the company's] many patent-holding entities," including serving as "both the general counsel at [the company] and then in a separate capacity [as] outside counsel as well." *Id.* at *3. The facts of *Silversun* and *ST Sales* are nothing like those here.

19. Here, there is no "competitive decisionmaking" question. Retained outside counsel for defendants have given this assurance in clear terms. *See* **Exhibits D and F**. Dominion nonetheless insists that defendants choose between walling off trial counsel from critical

documents or preventing them from giving future legal advice—broadly defined—that they are uniquely qualified to give. There is no legal support for Dominion's extreme position that stretches far beyond the "competitive decisionmaking" standard.

20. Dominion's proposed restrictions on outside trial counsel's access necessarily implicate a "party's right to have the benefit of counsel of its choice." *Deutsche Bank*, 605 F.3d at 1380. Indeed, such limitations would prejudice defendants and cause hardship that outweighs even any potential for inadvertent disclosure. *See U.S. Steel*, 730 F.2d at 1468; *Pfizer*, 744 F. Supp. 2d at 762. The hardship of disqualifying outside counsel from reviewing and considering Dominion's critical documents would be disproportionately high, because these counsel have led defendants' defense since the Authenticom preliminary injunction proceeding that initiated this complex multidistrict litigation. *See Deutsche Bank*, 605 F.3d at 1381 (courts consider "the extent and duration of counsel's past [representation] history … the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel"); *Koninklijke Philips N.V. v. Amerlux, LLC*, 167 F. Supp. 3d 270, 273-274 (D. Mass. 2016) (allowing access to "counsel most involved in th[e] case to information necessary to press its claims," especially where outside counsel represented the client "in many district court and patent proceedings"); *Koninklijke Philips N.V. v. iGuzzini Lighting USA, Ltd.*, 311 F.R.D. 80, 86 (S.D.N.Y. 2015) ("The close and longstanding relationship between Philips and its attorneys raises the specter that iGuzzini is attempting to disrupt Philips' choice of counsel"); *Trading Techs.*, 2011 WL 148252, at *8 (parties seeking the restriction "have not pointed out any case, nor have we found one, where an absolute bar against an attorney's access to a wide range of confidential information in a protective order was held to reasonably reflect the risk presented by the disclosure of proprietary competitive information") (citations omitted).

21. The bottom line is that Dominion cannot be allowed both to volunteer important, hotly contested testimony and at the same time insist on special defendants-only restrictions on its documents. Dominion is entitled to the protections of the Court's comprehensive Protective Order, and nothing more.

## CONCLUSION

For the foregoing reasons, Reynolds respectfully asks this Court for an Order requiring Dominion to produce documents it submitted to the Federal Trade Commission within three business days of the grant of the instant motion.

Dated: July 23, 2018

Respectfully submitted,

*/s/ Michael P.A. Cohen*
Michael P.A. Cohen
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

Dylan I. Ballard

SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
(415) 434-9100
dballard@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

SMRH:227743218

11

**CERTIFICATE OF SERVICE**

      I, Leo D. Caseria, an attorney, hereby certify that on July 23, 2018, I caused true and correct copies of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT REYNOLDS AND REYNOLDS COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System. A copy of the foregoing will be served on non-party Dominion via hand delivery and a courtesy copy sent to Dominion's counsel via electronic mail.

                                              */s/ Leo D. Caseria*
                                              LEO D. CASERIA
                                              SHEPPARD MULLIN RICHTER
                                              & HAMPTON, LLP
                                              333 S. Hope St., 43rd Floor
                                              Los Angeles, CA 90071
                                              (213) 617-4206
                                              lcaseria@sheppardmullin.com