# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AUTHENTICOM, INC.,

        Plaintiff,

    vs.

CDK GLOBAL, LLC, and
THE REYNOLDS AND REYNOLDS
COMPANY,

        Defendants.

Case No. 17-cv-318

---

## DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S NOTICE OF ISSUING A SUBPOENA TO PRODUCE DOCUMENTS TO NON-PARTY DOMINION ENTERPRISES, INC.

TO:    Plaintiff Authenticom, Inc. and its attorneys: Jennifer L. Gregor and Mark W. Hancock of Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, and Michael N. Nemelka, Aaron M. Panner, David L. Schwartz, Kevin J. Miller, Derek T. Ho, Joshua Hafenbrack, and Joanna T. Zhang of Kellogg, Hansen, Todd, Figel, & Frederick, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036.

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 45, on December 7, 2017, or as soon thereafter as practicable, Defendant The Reynolds and Reynolds Company will serve the attached subpoena for the production of documents on non-party Dominion Enterprises, Inc., with a return date of December 22, 2017. The foregoing non-party will be given the option to mail or electronically transmit the requested documents to the undersigned counsel on or before the return date.

Dated: December 7, 2017        Respectfully submitted,

*/s/ Michelle M. Umberger*
John S. Skilton
Charles G. Curtis, Jr.
Michelle M. Umberger
Brandon M. Lewis
Jesse J. Bair
PERKINS COIE LLP
One East Main Street, Suite 201
Madison, WI 53703
Tel: (608) 663-7460
Fax: (608) 663-7499
jskilton@perkinscoie.com
ccurtis@perkinscoie.com
mumberger@perkinscoie.com
blewis@perkinscoie.com
jbair@perkinscoie.com

Kathy D. Patrick (pro hac vice to follow)
Aundrea K. Gulley (pro hac vice)
Brian T. Ross (pro hac vice)
Brice A. Wilkinson (pro hac vice)
Ross M. MacDonald (pro hac vice)
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
Tel: (713) 751-5258
Fax: (713) 750-0903
kpatrick@gibbsbruns.com
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P. A. Cohen (pro hac vice)
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006
Tel: (202) 747-1900
Fax: (202) 637-5910
mcohen@sheppardmullin.com

*Attorneys for Defendant The Reynolds and
Reynolds Company*

2

## CERTIFICATE OF SERVICE

I, Michelle M. Umberger, an attorney, certify that I caused a copy of the foregoing **DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S NOTICE OF ISSUANCE OF A SUBPOENA TO PRODUCE DOCUMENTS TO NON-PARTY DOMINION ENTERPRISES, INC.** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Michelle M. Umberger*

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Western District of Wisconsin

| | |
|---|---|
| Authenticom, Inc. | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 3:17-cv-318 |
| CDK Global LLC; and The Reynolds and Reynolds Company | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Dominion Enterprises, Inc.
c/o Marc Schildkraut, Cooley LLP, 1299 Pennsylvania Ave NW, Ste. 700, Washington DC 20004

_(Name of person to whom this subpoena is directed)_

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Document Rider attached hereto as Exhibit A

| Place: Perkins Coie LLP, c/o Michelle Umberger 1 E. Main Street, Suite 201 Madison, WI 53703 | Date and Time: 12/22/2017 4:00 pm |
|---|---|

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/07/2017

CLERK OF COURT

OR

_____          _____
_Signature of Clerk or Deputy Clerk_                        _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_ _____
The Reynolds and Reynolds Company _____, who issues or requests this subpoena, are:

Michelle Umberger, Perkins Coie LLP, 1 E. Main St., Madison, WI 53703; MUmberger@perkinscoie.com; 608-663-7460

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:17-cv-318

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❑ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❑ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply

(2) *Command to Produce Materials or Permit Inspection.*
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## EXHIBIT A – DOCUMENT RIDER

## DEFINITIONS AND INSTRUCTIONS

As used herein, the following terms shall have the following meaning:

1. "You," "Your" and "Dominion" means Dominion Enterprises, Inc. and its affiliates, parents or subsidiaries, as well as any and all officers, directors, members, partners, employees, consultants, agents and attorneys therefor, including former officers, directors, members, partners, employees, consultants, agents and attorneys therefore during a time at issue with respect to the Requests below, all persons acting on behalf of Dominion, and any and all persons and entities affiliated with or controlled by Dominion, including, but not limited to, Dominion Dealer Solutions, LLC and Alan Andreu ("Andreu").

2. The term "Dominion Access DMS" means the DMS system sold or licensed to a Dealer by Dominion Dealer Solutions, LLC and/or its affiliate(s).

3. "CDK" means CDK Global, LLC.

4. The term "Reynolds" means The Reynolds and Reynolds Company.

5. "Authenticom" means Authenticom, Inc., as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on Authenticom's behalf, and any and all persons and entities affiliated with or controlled by Authenticom, including but not limited to Steve Cottrell ("Cottrell").

6. "DMS" means an enterprise system comprised of hardware, software, databases, and related data used by Dealers to manage and operate their dealerships, usually referred to as the DMS or Dealer Management System.

7. "CDK DMS" means any DMS licensed to a Dealer by CDK.

8. "Reynolds DMS" means any DMS licensed to a Dealer by Reynolds.

9. "Dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer operating in the United States.

10. "Vendor" means any third-party applications provider that uses Dealer or DMS data to provide Dealers with services, including marketing and lead generation, inventory management, customer relationship management, and electronic vehicle registration and titling.

11. "Lawsuit" means the lawsuit captioned on the foregoing subpoena, *Authenticom, Inc. v. CDK Global, LLC, et al.*, No. 17-cv-318, currently pending in the United States District Court for the Western District of Wisconsin.

12.    "Communication," "communicate," and "communicated" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13.    "Document" means all things that are documents under the Federal Rules of Civil Procedure, including, without limitation, the original and any non-identical copy (which is different from the original or any copy because of notations or attachments, or otherwise) of any written, printed, typewritten, handwritten, recorded, tape-recorded, videotaped, computer-generated, graphic, photographic, or other tangible matter or material from whatever source (however produced, reproduced, or recorded), including, without limitation, all of the following: correspondence, drafts, notes, telegraphs, facsimiles, memoranda, contracts (including all drafts and changes), calendars, reports, studies, diaries, time-slips, log books, daybooks, work schedules, pamphlets, charts, maps, plans, drawings, tabulations, calculations, financial records, bank records, schedules, spreadsheets, tax returns, audit reports, invoices, drafts, workpapers, work sheets, books, computer printouts, computer cards, computer tapes, computer diskettes, e-mail, other similar or dissimilar repositories of computer-generated, computer-compiled, or computer-maintained information, minutes and minute books (of any meeting of any person(s), committee(s), or board(s)), statements, checks, receipts, administrative regulations, journals and authoritative texts, statistical or information accumulations or summaries, files, photographs, microfilm or mechanical reproductions, attachments, enclosures, and other materials related to any of the foregoing.

14.    In responding to these requests, you are required to furnish information that is available to you or subject to your reasonable inquiry, including information in the possession of your subsidiaries, affiliates, attorneys, accountants, advisors, representatives, agents, or other persons directly or indirectly employed by, or connected with, you or your attorneys, and anyone else otherwise subject to your ownership or control. All documents that respond to the below requests shall be produced in their entirety, including all attachments and enclosures.

15.    Unless a different time period is indicated in a specific Request or category of Requests below, please produce responsive documents for the time period January 1, 2013 to the present (the "Relevant Time Period").

16.    The Court has entered the attached Protective Order governing the production of documents in this matter. (*See* Exhibit B). Please indicate whether any documents produced pursuant to this subpoena should be designated as confidential pursuant to the Protective Order.

## DOCUMENTS REQUESTED

1.    Documents and communications related to the Lawsuit, including but not limited to, all communications with (i) Authenticom, (ii) Cottrell, (iii) Godfrey & Kahn, S.C., (iv) Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., and (v) any Vendors or Dealers.

2.    Documents that refer to any estimate of Dominion's share of the DMS market in the United States, whether measured by dealership rooftops, percentage of new car sales, dollar value of sales or any other metric Dominion uses to estimate or track its DMS market share; or to

2

the extent that You do not maintain market share information specific to the United States, then for North America (*i.e.,* the United States and Canada).

3. Documents sufficient to identify the number of Dealers (indicated by franchise, rooftop, or some other identified metric) that have switched to and from a CDK DMS to (or from) a Dominion Access DMS during each year of the Relevant Period.

4. Documents sufficient to identify the number of Dealers (indicated by franchise, rooftop, or some other identified metric) that have switched to and from a Reynolds DMS to (or from) a Dominion Access DMS during each year of the Relevant Period.

5. All Dominion marketing materials, customer manuals/guides, or policy statements from the Relevant Time Period related to Dominion Access DMS and that discuss or describe the benefits of Dominion Access DMS, the requirements for Vendor or other third-party access to Dominion Access DMS platforms, or that refer to CDK and/or Reynolds.

6. Documents and Communications that evidence any complaints or concerns raised by Dealers regarding data security, system integrity, data corruption, or system performance, as they relate to Dominion Access DMS platforms.

7. Documents sufficient to identify all application products Dominion offered and sold or otherwise provided to Dealers and the Dealer customers that purchased or used those application products at any time during the Relevant Time Period.

8. Documents sufficient to show the data access or data integration fees or charges paid by Dominion to DMS providers and/or third party data integrators in connection with sales of Dominion's software application products to Dealers during the Relevant Time Period.

9. Documents sufficient to show the data elements and type of integration ("real time," daily batch, hourly batch, write-back, etc.) received for the fees or charges that are responsive to Request No. 8.

10. Documents and Communications related to all actual or contemplated efforts by Dominion to join or otherwise obtain certification under CDK's 3PA program.

11. Documents and Communications related to any actual or contemplated effort by Dominion to join or otherwise obtain certification under Reynolds's RCI program.

12. Documents sufficient to show any actual or contemplated use of Dealer initiated reporting and/or "push" methods (including, *e.g.*, Reynolds's Dynamic Reporting Tool and Automated Vehicle Inventory Download) to provide data stored on CDK's or Reynolds's DMS to third-parties.

13. Pre-existing documents and factual summaries that You have provided to any federal or state regulatory agency that are relevant to any complaint or investigation regarding

CDK's or Reynolds's data access policies, and/or any alleged agreements between CDK and Reynolds.

# Exhibit B

| From: | Schildkraut, Marc |
|---|---|
| To: | Leo Caseria |
| Cc: | Bansal, Dee |
| Subject: | RE: In re Dealer Management Systems Antitrust Litigation |
| Date: | Thursday, June 7, 2018 11:53:41 AM |

Dear Leo,

As I previously indicated, Dominion provided a large body of materials to the FTC in response to CIDs and subpoenas. These were provided in two separate investigations. The defendants' position is that they will not be submitting in response to discovery requests in the present litigation the materials provided to the FTC in the merger investigation. Notwithstanding that, as I have already indicated, Dominion is willing to provide its response in both the conduct and the merger investigation, assuming that we can resolve Dominion's concern about the treatment of Dominion's highly confidential documents. Despite Dominion's willingness to go the extra mile in this regard, Defendants are taking the position that outside counsel who will have seen such documents may "provide legal advice to Reynolds and CDK, and that legal advice may relate to business dealings." Further it is your position that defendants will make no effort to firewall off Dominion's highly confidential information from those litigators who provide advice relating to such business dealings.

Dominion is both a customer and a competitor of Reynolds and CDK. As a competitor, it can be harmed if the business people gain access to competitively sensitive Dominion information. The problem is even more serious because Dominion is also a customer of Reynold's and CDK's integration services. If these services are cut off or prices continue to increase, Dominion may no longer be viable as a competitor of Reynolds and CDK.

Under these circumstances, courts may very well prohibit access to highly confidential information, even to outside counsel. The key point is that, as you have described the situation, outside counsel who would review Dominion documents are involved in "competitive decision making," which is a critical factor in determining whether access should be denied. *Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936, 940 (N.D. Ill. 2017). Competitive decision-making is merely a serviceable shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions. *Id*. at 941. Competitive decision making is not limited to activities where the lawyer makes the business decision. It encompasses a lawyer's activities, association, and relationship with a client and the latter's competitive decision-making activities. *Silversun* at 941. It does not matter whether the attorneys involved are inside or outside counsel. *See ST Sales Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, 2008 WL 5634214, at *7 (E.D. Tex. 2008).

Courts have routinely held that such interaction or involvement may magnify the risk of inadvertent disclosure. *Silversun* at 943. And, this risk of inadvertent disclosure is not

foreclosed by the absence of actual decision-making. *Id.* But the problem goes beyond inadvertent disclosure. The advice and recommendations cannot be made in a vacuum when the lawyer already knows the confidential information of another party. This is because it is difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so. *Silversun* at 946. The compartmentalization is a feat beyond the compass of ordinary minds. After acquiring highly confidential information, the individual cannot rid herself of that knowledge: she cannot perform a prefrontal lobotomy on herself. *Id.*

We ask you to reconsider your position. If a firewall among the litigators is not feasible, it may well be that any lawyers who intend to continue to provide business advice should simply be disqualified as litigators in this matter.

**Marc G. Schildkraut**
Partner
Cooley LLP
1299 Pennsylvania Avenue, NW• Suite 700
Washington, DC  20004
Direct: (202) 728-7000 • Fax: (202) 842-7899 • Cell (202) 957-5522
Email: mschildkraut@cooley.com • www.cooley.com
Bio: http://www.cooley.com/mschildkraut  • Practice: www.cooley.com/antitrust

---

**From:** Leo Caseria <LCaseria@sheppardmullin.com>
**Sent:** Friday, June 1, 2018 9:48 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Bansal, Dee <dbansal@cooley.com>
**Subject:** RE: In re Dealer Management Systems Antitrust Litigation

Dear Marc,

Thanks for the CIDs.  As for your request for a firewall, the protective order already provides a firewall.  As set forth in the protective order (Dkt. 104), defendants' outside counsel can review materials designated as "highly confidential" under the protective order, but they would not be able to share highly confidential materials or information with anyone in-house at Reynolds or CDK except under the limited conditions specified in the protective order. Two-tier protective orders like this are commonly used to handle highly confidential materials in antitrust and other types of cases, and numerous parties and courts have found them to be adequate, including the parties in this case and Judge St. Eve.  Furthermore, the only individuals at Reynolds or CDK who have authority to make competitive business decisions are in-house; outside counsel does not have such authority.

Also, as a practical matter, defendants are unable to limit access to highly confidential materials only to outside counsel who do not provide legal advice on defendants' business dealings, because many of the key outside attorneys involved in this case are the same attorneys who provide legal advice on defendants' business dealings.

For these reasons, defendants do not agree to the special firewall you are requesting.

Let me know if we have a deal and please confirm a date certain by which Dominion will produce responsive materials.

Leo


Leo Caseria
Sheppard Mullin Richter & Hampton LLP
Direct: 213-617-4206
Mobile: 310-405-1787


-------- Original Message --------
From: "Schildkraut, Marc" <mschildkraut@cooley.com>
Date: Thu, May 31, 2018, 7:52 AM
To: Leo Caseria <LCaseria@sheppardmullin.com>
CC: "Bansal, Dee" <dbansal@cooley.com>
Subject: RE: In re Dealer Management Systems Antitrust Litigation

As you requested enclosed you will find the Highly Confidential CIDs you requested.  Dominion is very concerned that the litigating attorneys may provide legal advice that relates to business dealings.  This was not our previous understanding. Is it possible for the defendants to set up firewalls so that  only Defendants' attorneys that are not providing such legal advice will have access to Dominion's Highly Confidential documents and the information therein?

---

**From:** Leo Caseria <LCaseria@sheppardmullin.com>
**Sent:** Friday, May 25, 2018 8:35 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Bansal, Dee <dbansal@cooley.com>
**Subject:** RE: In re Dealer Management Systems Antitrust Litigation

Hi Marc,

Thanks for your email.  As you know, circumstances have changed from when the parties last discussed the Reynolds's subpoena to Dominion.  The prior negotiations took place in December/January, at a time when Reynolds and CDK were facing an accelerated schedule in a case with a single plaintiff, Authenticom.  We are now in an MDL with many more parties and some additional issues.  And while we are still on an aggressive schedule, it is not as aggressive as what we were facing in Authenticom back in December and January.  In addition, Dominion took the position at that time that there would be no agreement until there was a comprehensive agreement on all issues relating to the Reynolds subpoena to Dominion.  As a result, nothing was agreed to because the parties never came to terms on all outstanding issues in a single, comprehensive package.  And obviously, all prior discussions stopped once the Authenticom case was stayed.

All that said, we appreciate your willingness to move the ball forward on Dominion's response to Reynolds's subpoena (and to be clear, Reynolds is coordinating with CDK and you will not receive a

duplicative subpoena from CDK). I've copied and pasted items 1-5 from your email below. After each item, I've set forth Reynolds's and CDK's response.

1. One set of documents the subpoena requested is Dominion's response to a Federal Trade Commission CID. We entertained the possibility that I would compare the CID to the subpoena to determine where the two requests overlapped and where there were gaps. This turned out to be impractical because modifications and the like to Dominion's response to the CID meant that a comparison between the two requests would not necessarily indicate the extent of overlap and gaps between the CID production and the Reynolds subpoena.

Ok thank you for letting us know. Can you please provide us with the CID?

2. CDK and Reynolds had originally taken the position that they did not have to provide advocacy pieces to the FTC in their responses to Authenticom's discovery requests. Dominion had previously asserted that if CDK and Reynolds were not required to provide their advocacy pieces, Dominion was not required to provide them either. You informed me that this was no longer the case and that both CDK and Reynolds would be submitting past and future advocacy pieces in both the FTC's conduct investigation and the Auto/Mate merger investigation. Can you please confirm this commitment for both Reynolds and CDK?

Reynolds and CDK have committed to produce their respective document productions in the FTC's joint conduct investigation, including past and/or future advocacy pieces, if any. Reynolds and CDK are not aware of any other party or third party who is refusing to produce material submitted in that investigation. Reynolds and CDK are also committed to producing their pre-existing business documents as well as any factual summaries, data compilations, or presentations created and provided to the government for purposes of responding to the Second Request to the extent such documents are relevant to the claims and defenses in this litigation, if any.

Similarly, we ask that Dominion produce any and all material (including advocacy pieces, white papers, presentations, anything) submitted in the FTC's joint conduct investigation. To the extent Dominion is producing similar materials submitted in the Auto/Mate investigation, those materials can be limited as described above and only include materials that are relevant to the claims and defenses in this litigation.

3. You confirmed, and can you please reconfirm, that the lawyers that will review Dominion's highly confidential response to the subpoena do not participate in or provide legal or other advice regarding CDK's and Reynolds' business dealings?

Pursuant to the protective order, materials designated "highly confidential" could be reviewed by outside counsel for Reynolds or CDK. Those attorneys are not making competitive business decisions for Reynolds or CDK. However, as attorneys, they obviously provide legal advice to Reynolds and CDK, and that legal advice may relate to business dealings. Please refer to the Agreed Confidentiality Order (Dkt. 104) for the precise details about who can access "confidential" or "highly confidential" materials or information, and under what circumstances.

4. You agreed that if additional responses are necessary, that Dominion will not have to produce materials relating to information that CDK or Reynolds should already possess, for example, in subpoena requests 8-12.

Reynolds and CDK agree that Dominion does not have to produce materials that Reynolds and CDK already possess. However, Reynolds and CDK do not agree that all materials requested in items 8-12 of the Reynolds subpoena are materials that are already in the possession of Reynolds and CDK. To take one example, requests 10 and 11 ask about Dominion's efforts to join 3PA and RCI. Reynolds and CDK would obviously not have internal Dominion discussions about those efforts or what Dominion thought about prices or other terms offered by Reynolds and CDK.

5. While Dominion is not bound by the ESI order, can you please reconfirm that Dominion can take advantage of the terms of the order, e.g., it governs the types of materials that Dominion is not required to preserve.

Reynolds and CDK have no objection to Dominion abiding by the terms of the ESI order. Of course, this case involves many parties and third parties. We can only speak for Reynolds and CDK.

6. Assuming I receive the appropriate responses to points 2-5, Dominion proposes the following: it will provide its complete response to the FTC CIDs in both the conduct investigation and the investigation of the Auto/Mate acquisition. After you fully review Dominion's responses to these CIDs, we hope you will agree that no additional responses to the Reynolds subpoena are necessary. If, on the other hand, you conclude that additional responsive material is necessary, you will communicate that to me after your full review, and we can continue to negotiate additional responses to the subpoena at that time.

To be clear, while Reynolds and CDK have agreed to produce materials submitted in the FTC's joint conduct investigation in the MDL, they have not agreed to do the same with respect to all of the materials submitted in the Auto/Mate merger investigation. We have also not explicitly requested Dominion's materials submitted in the Auto/Mate merger investigation. However, if Dominion believes that there are documents responsive to Reynolds's subpoena have been submitted to FTC in the Auto/Mate investigation, Dominion is free to reproduce those materials here (in whole or in part) rather than undertake a new production. If Dominion elects to proceed in this manner, your proposal that Dominion simply re-produce its complete response to both FTC investigations as a first step (and potentially the only step) is a good one, and Reynolds and CDK are amenable to moving forward as you've proposed. Dominion's production of advocacy / non preexisting materials should be as described in our response to Item 2 above.

I assume it would not take more than a week for Dominion to re-produce its FTC materials to Defendants (if it elects to go that route), but let me know if I'm wrong about that.

After reviewing my clarifications above, let me know if we have a deal and please confirm a date certain by which Dominion will produce responsive materials.

Leo

Leo D. Caseria
Partner
213.617.4206 | direct
213.443.2800 | direct fax
LCaseria@sheppardmullin.com | Bio

## **Sheppard**Mullin

Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com

---

**From:** Schildkraut, Marc [mailto:mschildkraut@cooley.com]
**Sent:** Tuesday, May 22, 2018 11:45 AM
**To:** Leo Caseria <LCaseria@sheppardmullin.com>
**Cc:** Bansal, Dee <dbansal@cooley.com>
**Subject:** RE: In re Dealer Management Systems Antitrust Litigation

I promised to follow up on last Friday's meet and confer.

Dominion and CDK had previously made substantial progress in negotiations over the subpoena to Dominion. However, you have now informed me that Reynolds's position has changed, and that you are unwilling to accept the accommodations that were previously negotiated, despite Dominion's third party status in the *Authenticom* litigation, which should be recognized as limiting its burden to produce documents in response to a subpoena. While I won't say that we have returned to the beginning of our negotiations, we are certainly experiencing a reversal from our former progress.

Despite the inconvenience to Dominion of having to negotiate the scope of this subpoena again, I am going to attempt to substantially advance the ball.

1. One set of documents the subpoena requested is Dominion's response to a Federal Trade Commission CID. We entertained the possibility that I would compare the CID to the subpoena to determine where the two requests overlapped and where there were gaps. This turned out to be impractical because modifications and the like to Dominion's response to the CID meant that a comparison between the two requests would not necessarily indicate the extent of overlap and gaps between the CID production and the Reynolds subpoena.

2. CDK and Reynolds had originally taken the position that they did not have to provide advocacy pieces to the FTC in their responses to Authenticom's discovery requests. Dominion had previously asserted that if CDK and Reynolds were not required to provide their advocacy pieces, Dominion was not required to provide them either. You informed me that this was no longer the case and that both CDK and Reynolds would be submitting past and future advocacy pieces in both the FTC's conduct investigation and the Auto/Mate merger investigation. Can you please confirm this commitment for both Reynolds and CDK?

3. You confirmed, and can you please reconfirm, that the lawyers that will review Dominion's highly confidential response to the subpoena do not participate in or provide legal or other advice regarding CDK's and Reynolds' business dealings?

4. You agreed that if additional responses are necessary, that Dominion will not have to produce materials relating to information that CDK or Reynolds should already possess, for example, in subpoena requests 8-12.

5. While Dominion is not bound by the ESI order, can you please reconfirm that Dominion can take advantage of the terms of the order, e.g., it governs the types of materials that Dominion is not required to preserve.

6. Assuming I receive the appropriate responses to points 2-5, Dominion proposes the following: it will provide its complete response to the FTC CIDs in both the conduct investigation and the investigation of the Auto/Mate acquisition. After you fully review Dominion's responses to these CIDs, we hope you will agree that no additional responses to the Reynolds subpoena are necessary. If, on the other hand, you conclude that additional responsive material is necessary, you will communicate that to me after your full review, and we can continue to negotiate additional responses to the subpoena at that time.

We had talked about engaging in another meet and confer later this week. If, however, you accept the above proposals, we may not need another meet and confer until after you have fully reviewed Dominion's responses to the FTC CIDs.

---

**From:** Leo Caseria <LCaseria@sheppardmullin.com>
**Sent:** Friday, May 11, 2018 2:34 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Subject:** RE: In re Dealer Management Systems Antitrust Litigation

I'm aware of the prior correspondence, so I don't think we need to start completely from scratch, but I also don't think we have any deals yet since everything was contingent upon a comprehensive resolution of issues (according to Dominion). When can you talk next week?

Leo D. Caseria
Partner
213.617.4206 | direct
213.443.2800 | direct fax
LCaseria@sheppardmullin.com | Bio

**Sheppard**Mullin
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com

**From:** Schildkraut, Marc [mailto:mschildkraut@cooley.com]
**Sent:** Friday, May 11, 2018 11:22 AM
**To:** Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re Dealer Management Systems Antitrust Litigation

I was in the middle of negotiations on this issue when the matter was transferred. Are we starting negotiations from scratch or are we picking up negotiations where we left off?

**From:** Leo Caseria <LCaseria@sheppardmullin.com>
**Sent:** Friday, May 11, 2018 2:19 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Subject:** RE: In re Dealer Management Systems Antitrust Litigation

Hi Marc,

I'm one of the attorneys representing the Reynolds and Reynolds Company in connection with the attached subpoena. As you may already know, the Court has set a schedule for the case and there is no discovery stay.

I'm writing to find out if and when Dominion plans to produce documents in response to the attached subpoena.

Please let me know your availability for a call next week to discuss.

Thanks Marc.

Leo

Leo D. Caseria
Partner
213.617.4206 | direct
213.443.2800 | direct fax
LCaseria@sheppardmullin.com | Bio

**Sheppard**Mullin
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com

**From:** Jessica Campos
**Sent:** Monday, May 7, 2018 5:50 PM
**To:** mschildkraut@cooley.com

**Cc:** Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** In re Dealer Management Systems Antitrust Litigation

On behalf of Leo D. Caseria, please see the attached correspondence.

Regards,

**Jessica Campos**
Paralegal
415.774.3132 | direct
JCampos@sheppardmullin.com

**Sheppard**Mullin

Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
415.434.9100 | main
www.sheppardmullin.com

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# Exhibit C



Marc G. Schildkraut                                                                                          By E-mail
+1 202 728 7000
mschildkraut@cooley.com


December 21, 2017


Michelle M. Umberger, Esquire
Perkins Coie LLP
One East Main Street, Suite 201
Madison, WI 53703
(mumberger@perkinscoie.com)

**Re:  Reynolds and Reynolds Company's Subpoena to Dominion Enterprises, Inc. in *Authenticom, Inc. v. CDK Global, LLC and the Reynolds and Reynolds Company.,* No. 17-cv318**

Dear Ms. Umberger:

We represent Dominion Enterprises, Inc. ("Dominion") in connection with the above-referenced litigation ("Lawsuit"). We write in response to the subpoena to produce documents that Reynolds and Reynolds Company ("Reynolds") served on Dominion on December 11, 2017, in connection with the Lawsuit (the "Subpoena").[1] Dominion wishes to preserve its rights under the Federal Rule of Civil Procedure 45(d)(2)(B) by asserting its objections to the Subpoena.

Dominion makes these objections to the best of its present knowledge, information, and belief. Said objections are at all times subject to such additional or different information that further investigation may disclose and, while based on the present state of Dominion's recollection, are subject to refreshing of recollection, and such additional knowledge of facts, as may result from Dominion's further investigation. Dominion sets forth its objections with additional specificity below.

<u>General Objections</u>

First, Dominion objects to the Subpoena because it is overly broad and unreasonable, such that compliance would impose an undue burden and expense on Dominion. Dominion further objects to the Subpoena because it goes beyond the scope of the Lawsuit, it is overly broad, seeks documents irrelevant to the subject matter of the Lawsuit, and is not proportional to the needs of the case. In particular, the Subpoena inappropriately requests documents and things on certain topics without limitations.

Second, Dominion is concerned that Reynolds served the subpoena without any representation that CDK would not serve Dominion with an additional subpoena or that Reynolds would serve Dominion with additional subpoenas, potentially forcing Dominion to search the same files multiple times for responsive materials. This would be particularly burdensome and expensive and Dominion therefore objects.

---

[1] You sent a version of the subpoena to me on December 7, 2017, but it was defective in several respects, as noted in an email sent to you on December 11. First, the subpoena was not served on Dominion; instead, it was served on me. In the certificate of service, you certify that I am counsel of record in the Lawsuit. However, that was not the case. You did not ask in advance whether I would accept service for Dominion. Dominion has now authorized me to accept service. Second, the original service was defective because it referenced a Protective Order that was not included.

Cooley LLP   1299 Pennsylvania Avenue, NW, Suite 700   Washington, DC   20004-2400
t: (202) 842-7800  f: (202) 842-7899  cooley.com



Michelle M. Umberger, Esquire
December 21, 2017
Page Two

Third, Dominion objects insofar as the Subpoena demands information and data that Reynolds may obtain from the defendants' own files. As a non-party, Dominion has the right to be spared the burden and expense of locating and producing documents that are more easily obtained from a party. For example, Request 8 seeks documents sufficient to show the integration fees paid by Dominion. Surely, Reynolds knows the integration fees that Dominion is paying Reynolds.

Fourth, to the extent that Dominion continues to offer its Dominion Access DMS and various software applications, Dominion continues to be a direct competitor of Reynolds. As such, Dominion could be competitively harmed if Reynolds had access to Dominion's competitively sensitive information and other confidential, proprietary or trade secret materials. Thus, Dominion objects to providing Reynolds with such competitively sensitive information. The Confidentiality Order attempts to address such concerns. Dominion's understanding of this Order is that Reynolds's outside attorneys will protect responsive documents that Dominion labels Highly Confidential and will not share them with Reynolds's employees. However, Dominion needs assurances that the outside attorneys with access to Dominion's documents are not attorneys that advise defendants on business issues.

Reynolds may seek to have individual documents that Dominion labeled as Highly Confidential reclassified. Dominion will reclassify individual Dominion documents in response to Reynolds requests concerning individual documents if it is reasonable to do so. Further, because of the potential for competitive harm, Dominion objects to providing non-responsive material in responsive documents. Dominion reserves the right to redact non-responsive material from responsive documents.

Fifth, Dominion objects to the timing of the production. It is not possible to produce the voluminous responsive materials in the short time frame mandated by the Subpoena. As set forth below, Dominion is proposing a procedure that will allow Reynolds to review a substantial number of documents quickly.

Sixth, Dominion objects to the Subpoena to the extent that it requires production of documents that contain attorney-client communications, attorney work product, mental impressions, conclusions, opinions, or theories of any attorney for or other representative of Dominion; or are otherwise protected from disclosure under applicable privileges, laws, or rules. Dominion claims such privileges and protections to the extent implicated by the Subpoena and will exclude privileged and protected information from its responses to the Subpoena.

Seventh, while Dominion is not bound by Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Order"), Dominion will take full advantage of this ESI Order where it would reduce its burden of complying with the Subpoena and objects to the extent it is not permitted to take full advantage of the Order. For example, as set forth in paragraph 3 of the ESI Order, Dominion will neither preserve nor produce the types of documents listed therein. On the other hand, for instance, Dominion is not bound by the document format set forth in paragraph 5 of the ESI Order.

Eighth, Dominion objects to the Subpoena to the extent it would require Dominion to draw a legal conclusion to determine which documents Reynolds seeks.

Ninth, Dominion objects to the Subpoena and to each and every Definition, Instruction included in the Subpoena, to the extent it or they purport(s) to enlarge, expand, or alter in any way the plain meaning and scope of any Subpoena Requests on the grounds that such enlargement, expansion, or alteration renders said Request vague, ambiguous, unintelligible, unduly broad, and uncertain.

Tenth, Dominion objects to the Subpoena to the extent that it seeks to require Dominion to do more than use reasonable diligence to locate responsive documents based on an examination of those files that



Michelle M. Umberger, Esquire
December 21, 2017
Page Three

reasonably may be expected to yield responsive documents and an inquiry of those persons who reasonably may be expected to possess responsive documents. Without limiting the generality of the foregoing, Dominion objects to the Subpoena to the extent that it requires its employees to take an unreasonable amount of time away from the ordinary course of business to identify, collect, and produce the documents.

Eleventh, Dominion objects to and will not produce documents beyond its possession custody and control even if Definition 1 contemplates the production such documents. Dominion does not represent that any documents responsive to the Subpoena actually exist, but rather that Dominion would make a good faith search and attempt to ascertain whether documents that Dominion agrees to produce in fact, do exist, and to produce such documents if they are found to exist and are within Dominion's possession, custody, or control. Further, Dominion does not represent that it will produce documents on any specific date, but rather that it will make a good faith effort to produce the documents to the extent they exist as efficiently as possible.

However, assuming that Reynolds and Dominion can reach an agreement that reduces Dominion's burden and expense in responding to the Subpoena, Dominion will provide Reynolds with materials that are well tailored to the antitrust dispute at issue as follows. Request 13 of the Subpoena seeks "[p]re-existing documents and factual summaries that You have provided to any federal and state regulatory agency that are relevant to any complaint or investigation regarding CDK's or Reynolds's data access policies, and/or any alleged agreements between CDK and Reynolds." As I am sure you are aware, the Federal Trade Commission ("FTC") is conducting an antitrust investigation of conduct of CDK and Reynolds. The FTC Resolution pertaining to this investigation states in part that the investigation is "[t]o determine whether CDK Global, Inc. and Reynolds & Reynolds Company have engaged or are engaging in unfair methods of competition … by entering into or implementing any anticompetitive agreement relating to the sale, lease, distribution, maintenance or implementation of Dealer Management Systems and associated products or services used by automobile dealerships." (Enclosure 1.) This is the same subject matter as this Lawsuit. Pursuant to the Resolution, the FTC issued a very comprehensive Civil Investigative Demand ("CID") to Dominion (Enclosure 1). Dominion has almost completed its response to the CID. We will provide you with the Certification as soon as it is available. Assuming that Reynolds and Dominion can reach an agreement, Dominion will respond to the Subpoena by providing its response to the CID[2] and will respond to all the document-sufficient-to-show or -identify Requests as set forth in detail below. Production of documents by Dominion does not imply that the documents are relevant, material, not privileged, or admissible as evidence in any proceeding or trial of this or any other action for any purpose whatsoever.

Dominion incorporates the foregoing general objections into each of the following specific objections.

<u>**Specific Objections in Addition to the General Objections**</u>

Request No. 1: Dominion objects to this Request regarding communications with certain entities. The Request is ambiguous and confusing as it begins by seeking documents related to the Lawsuit, but then seems to undermine this limitation by seeking "all communications" with certain entities. This is overbroad and unduly burdensome and includes documents and communications that are not relevant to any party's claims or defenses. Included in the entities for which the Subpoena demands all communications is "any Vendors or Dealers." This is particularly burdensome and beyond the scope of the Lawsuit. Nevertheless,

---

[2] The FTC served additional discovery requests on Dominion related to CDK's proposed acquisition of Auto/Mate. Dominion is not proposing to provide its responses to these requests to Reynolds.



Michelle M. Umberger, Esquire
December 21, 2017
Page Four

assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID.

Request No. 2: Dominion objects to this Request regarding estimates of Dominion's share of the "DMS market" because it is confusing, ambiguous and requires Dominion to draw legal conclusions. "DMS market" is not a defined term. To respond to this Request, Dominion would need to know exactly what is inside and what is outside the DMS market. Nevertheless assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID and will provide a calculation of market share.

Request No. 3: Dominion objects to this Request for documents relating to Dealer switching to from a CDK DMS. CDK, Reynolds co-defendant, would have superior data and it is unduly burdensome to request this information from a non-party to the Lawsuit. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID and will also produce a calculation or "[d]ocuments sufficient to identify" to the extent they exist and to the extent they are not already included in the response to the FTC CID.

Request No. 4: Dominion objects to this Request for documents relating to Dealer switching to or from a Reynolds DMS. Reynolds would have superior data on this subject and it is unduly burdensome to request this information from a non-party to the Lawsuit. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID and will also produce a calculation or "[d]ocuments sufficient to identify" to the extent they exist and to the extent they are not already included in the response to the FTC CID.

Request No. 5: Dominion objects to this Request for documents relating to marketing materials as the Request is burdensome, overbroad and includes documents not relevant to any party's claims or defenses. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID.

Request No. 6: Dominion objects to this Request for documents relating to complaints or concerns raised by Dealers relating to Dominion's Access DMS because it is burdensome, overbroad and includes documents not relevant to any party's claims or defenses. In particular, complaints about system performance is not relevant to any party's claims or defenses. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID.

Request No. 7: Dominion objects to this Request for documents that identify all applications that Dominion offered because it is overbroad: not all applications that Dominion offers relate to the issues in the Lawsuit. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID and will also produce a list or "[d]ocuments sufficient to identify" its applications to the extent they are not already included in the response to the FTC CID.

Request No. 8: Dominion objects to this Request because it is unduly burdensome as Dominion is a third party while Reynolds and CDK would know as well as Dominion Reynolds's or CDK's charges for data integration. This Request should have been tailored to exclude Reynolds's and CDK's charges and only include third party charges. Nevertheless, assuming the parties can reach agreement, Dominion will produce its full response to the FTC CID and will also produce a list or "[d]ocuments sufficient to show" its data integration fees to the extent they exist and to the extent they are not already included in the response to the FTC CID.



Michelle M. Umberger, Esquire
December 21, 2017
Page Five

Request No. 9: Dominion objects to this Request because it is unduly burdensome as Dominion is a third party while Reynolds and CDK would know as well as Dominion Reynolds's or CDK's data elements and the types of integration received from Reynolds or CDK. This Request should have been tailored to exclude the data elements and types of integration received from Reynolds and CDK, including only the data elements and types of integration received from third party DMSs. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID and will also produce a list or "[d]ocuments sufficient to show" the data elements and types of integration to the extent they exist and to the extent they are not already included in the response to the FTC CID.

Request No. 10: Dominion objects to this Request for documents and communications related to obtaining certification under CDK's 3PA program. It is unduly burdensome as Dominion is a third party and this information can be obtained from CDK. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID.

Request No. 11: Dominion objects to this Request for documents and communications related to obtaining certification under Reynolds's RCI program. It is unduly burdensome as Dominion is a third party and this information can be obtained from Reynolds. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID.

Request No. 12: Dominion objects to this Request for documents sufficient to show use of push methods such as Reynolds's Dynamic Reporting Tool as it is unduly burdensome as Dominion is a third party and this information can be obtained from Reynolds. Nevertheless, assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID and will produce "[d]ocuments sufficient to show" to the extent they exist and to the extent they are not already included in the response to the FTC CID.

Request No. 13: Dominion objects to the burden of this Request. It is overbroad and seeks materials that are irrelevant to the subject matter of the Lawsuit, or is not proportional to the needs of the case.[3] In response to this Request for documents provided to government agencies relevant to CDK's and Reynolds's data access policies, and assuming Reynolds and Dominion can reach an agreement regarding the scope of the Subpoena response, Dominion will produce its full response to the FTC CID.

Dominion reserves all rights to assert additional grounds for objecting to the Subpoena as such objections may become apparent in the future and to revise, supplement, correct or add to this response.

Dominion requests a meet and confer so that the parties can reach agreement on the scope of production. Dominion assumes that all responses to the Subpoena will be held in abeyance until the Reynolds and Dominion have met and conferred.

Sincerely,

*Marc G. Schildkraut* /s/

Marc G. Schildkraut

---

[3] See note 2, above.

# Exhibit D

| From: | Michael Cohen |
|---|---|
| To: | mschildkraut@cooley.com |
| Cc: | Britt M. Miller (BMiller@mayerbrown.com) |
| Subject: | In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817 |
| Date: | Tuesday, June 26, 2018 10:05:37 AM |

Dear Marc,

Thank you for your time today to discuss the Dominion discovery.

Pursuant to our conversation, this email is to confirm that neither Reynolds outside counsel nor CDK outside counsel are involved in competitive decision making with their respective clients.

While outside counsel are consulted to provide legal advice regarding matters unrelated to this litigation, like the antitrust implications of proposed merger transactions, that consultation and advice are no different than any law firm, including your own, which may represent its clients across a variety of practice areas.

Outside counsel to Reynolds and CDK in this litigation do not hold board seats or other business positions with their clients, have no attorney consignment relationships with their respective clients, and do not participate in pricing, distribution, marketing or other forms of competitive decision making defined in the case law.  Nor do outside counsel for Reynolds or CDK have any relationship with their clients beyond the ordinary attorney client relationship.

I have expressly spoken with CDK outside counsel as you suggested, and have their authority to make this joint representation for both sets of outside counsel.  Ms. Miller, lead outside counsel for CDK, is copied in this regard.

We believe these assurances should resolve your concerns.

Thank you for your time and thoughtful attention.

M

**Michael P.A Cohen**
**202.372.5345 | mobile**
MCohen@sheppardmullin.com | Bio

# Exhibit E

| **From:** | Schildkraut, Marc |
| **To:** | Michael Cohen |
| **Cc:** | Britt M. Miller (BMiller@mayerbrown.com) |
| **Subject:** | RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817 |
| **Date:** | Tuesday, June 26, 2018 2:04:34 PM |

Michael, sorry to hear about the issues that kept you out of the office for a time. I am glad to hear that things are improving. I wish you and your family the best of luck.

To get to the issue at hand, Dominion is not particularly concerned regarding the antitrust advice that outside litigation counsel representing Reynolds and CDK might give regarding mergers. The concern is the advice litigation counsel might give, including the antitrust advice they might give, regarding contract negotiations, breaches of contract, the enforcement of the terms in the contracts, and any other dealings with application providers or third-party integrators. If you and CDK can represent that you will not be providing such advice to your clients, Dominion is prepared to produce, within days, a response to your subpoena, as described in earlier emails.

**Marc G. Schildkraut**
Partner
Cooley LLP
1299 Pennsylvania Avenue, NW• Suite 700
Washington, DC 20004
Direct: (202) 728-7000 • Fax: (202) 842-7899 • Cell (202) 957-5522
Email: mschildkraut@cooley.com • www.cooley.com
Bio: http://www.cooley.com/mschildkraut • Practice: www.cooley.com/antitrust

---

**From:** Michael Cohen <MCohen@sheppardmullin.com>
**Sent:** Tuesday, June 26, 2018 1:06 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Dear Marc,

Thank you for your time today to discuss the Dominion discovery.

Pursuant to our conversation, this email is to confirm that neither Reynolds outside counsel nor CDK outside counsel are involved in competitive decision making with their respective clients.

While outside counsel are consulted to provide legal advice regarding matters unrelated to this litigation, like the antitrust implications of proposed merger transactions, that consultation and advice are no different than any law firm, including your own, which may represent its clients across a variety of practice areas.

Outside counsel to Reynolds and CDK in this litigation do not hold board seats or other business positions with their clients, have no attorney consignment relationships with their respective clients, and do not participate in pricing, distribution, marketing or other forms of competitive decision

making defined in the case law.  Nor do outside counsel for Reynolds or CDK have any relationship with their clients beyond the ordinary attorney client relationship.

I have expressly spoken with CDK outside counsel as you suggested, and have their authority to make this joint representation for both sets of outside counsel.  Ms. Miller, lead outside counsel for CDK, is copied in this regard.

We believe these assurances should resolve your concerns.

Thank you for your time and thoughtful attention.

M

**Michael P.A Cohen**
**202.372.5345 | mobile**
MCohen@sheppardmullin.com | Bio

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# Exhibit F

| | |
|---|---|
| **From:** | Michael Cohen |
| **To:** | Schildkraut, Marc |
| **Cc:** | Britt M. Miller (BMiller@mayerbrown.com) |
| **Subject:** | RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817 |
| **Date:** | Wednesday, June 27, 2018 9:01:09 AM |

Marc good morning,

Thanks for getting back to us yesterday.

I can confirm that outside counsel for Reynolds and CDK are not engaged in competitive decisionmaking in any of these areas. From what I have reviewed and from what you cited, I think this assurance satisfies even the most remote legal standard potentially applicable to these circumstances.

Otherwise, in my view the MDL lawsuit is largely about third party integration policies and practices and contracts with vendors and dealers. In that regard, it seems to me you are saying that Dominion will not produce documents relevant to the lawsuit because we may be advising our clients regarding the subject matter of the lawsuit.

We've known each other a long time, 25 years now I think, including in law partnership together at two firms, and for that reason, I feel that I may be missing something. To that end, I'd like to take a few days to delve back into the case law and better understand where you might be resting your concerns.

I think I'll need a few days for that exercise, and would like to revisit the matter with my client as well.

Let's plan to reconnect early next week, and if you have additional legal support for some standard beyond the competitive decisionmaking standard you cited and I have previously attempted to review, please do not hesitate to pass it along. I would like to attempt to be sure we are communicating on a common legal framework, and accordingly that I am considering the right legal analysis. While I appreciate we may reach different conclusions about the outcome, I feel we have both been practicing long enough to attempt to reach some consensus on the applicable law.

Likewise, if you feel there is another way through this issue that comports with the law and can satisfy Dominion's concerns, I would be pleased to discuss any suggestions you might have. I will try to think of some myself as well.

Thank you again for taking time to engage in a conversation about this matter, and for sharing your viewpoints. I'll look forward to giving all this some additional thought on our end and reconnecting with you shortly.

M

**Michael P.A Cohen**
**202.372.5345 | mobile**

MCohen@sheppardmullin.com | Bio

---

**From:** Schildkraut, Marc [mailto:mschildkraut@cooley.com]
**Sent:** Tuesday, June 26, 2018 5:04 PM
**To:** Michael Cohen <MCohen@sheppardmullin.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Michael, sorry to hear about the issues that kept you out of the office for a time. I am glad to hear that things are improving. I wish you and your family the best of luck.

To get to the issue at hand, Dominion is not particularly concerned regarding the antitrust advice that outside litigation counsel representing Reynolds and CDK might give regarding mergers. The concern is the advice litigation counsel might give, including the antitrust advice they might give, regarding contract negotiations, breaches of contract, the enforcement of the terms in the contracts, and any other dealings with application providers or third-party integrators. If you and CDK can represent that you will not be providing such advice to your clients, Dominion is prepared to produce, within days, a response to your subpoena, as described in earlier emails.

**Marc G. Schildkraut**
Partner
Cooley LLP
1299 Pennsylvania Avenue, NW• Suite 700
Washington, DC  20004
Direct: (202) 728-7000 • Fax: (202) 842-7899 • Cell (202) 957-5522
Email: mschildkraut@cooley.com • www.cooley.com
Bio: http://www.cooley.com/mschildkraut  •  Practice: www.cooley.com/antitrust

---

**From:** Michael Cohen <MCohen@sheppardmullin.com>
**Sent:** Tuesday, June 26, 2018 1:06 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Dear Marc,

Thank you for your time today to discuss the Dominion discovery.

Pursuant to our conversation, this email is to confirm that neither Reynolds outside counsel nor CDK outside counsel are involved in competitive decision making with their respective clients.

While outside counsel are consulted to provide legal advice regarding matters unrelated to this litigation, like the antitrust implications of proposed merger transactions, that consultation and advice are no different than any law firm, including your own, which may represent its clients across a variety of practice areas.

Outside counsel to Reynolds and CDK in this litigation do not hold board seats or other business positions with their clients, have no attorney consignment relationships with their respective clients, and do not participate in pricing, distribution, marketing or other forms of competitive decision making defined in the case law.  Nor do outside counsel for Reynolds or CDK have any relationship with their clients beyond the ordinary attorney client relationship.

I have expressly spoken with CDK outside counsel as you suggested, and have their authority to make this joint representation for both sets of outside counsel.  Ms. Miller, lead outside counsel for CDK, is copied in this regard.

We believe these assurances should resolve your concerns.

Thank you for your time and thoughtful attention.

M

**Michael P.A Cohen**
**202.372.5345 | mobile**
MCohen@sheppardmullin.com | Bio

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# Exhibit G

| | |
|---|---|
| **From:** | Schildkraut, Marc |
| **To:** | Michael Cohen |
| **Cc:** | Britt M. Miller (BMiller@mayerbrown.com) |
| **Subject:** | RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817 |
| **Date:** | Thursday, June 28, 2018 5:56:21 AM |

Michael,

Dominion's concern is that litigation counsel, who would have access to Dominion's confidential materials, will be providing legal advice regarding Dominion's contracts or other business dealings with Reynolds or CDK.

As noted in the case law, competitive decision making extends beyond those who actually make the decision and includes those that advise on the decision, such as lawyers providing legal advice. Thus, if we can interpret your statement that "outside counsel for Reynolds and CDK are not engaged in competitive decision making in any of these areas" as representing that litigation counsel will not be providing advice to your client regarding its contracts with Dominion (including negotiations, alleged breaches, enforcement) or any other business dealings with Dominion, Dominion's concerns are satisfied. That would mean, for example, there would be no issue with litigation counsel generally advising on the legality of blocking third-party integrators from accessing dealer data contained in the client's DMS, but litigation counsel could not provide such supposed general advice on this issue where the relationship between your client and Dominion is known by litigation counsel to be specifically at issue because counsel is aware of ongoing negotiations between your client and Dominion regarding certification of its applications. In another example, if litigation counsel, upon reviewing Dominion's confidential documents, interpreted Dominion's conduct as breaching an agreement with your client, litigation counsel could not ask the client, "have you ever considered [this kind of conduct] a breach of the agreement" even though litigation counsel never identified Dominion as the party breaching the agreement in this fashion."

Please let me know if you and CDK counsel agree.

---

**From:** Michael Cohen <MCohen@sheppardmullin.com>
**Sent:** Wednesday, June 27, 2018 12:01 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Marc good morning,

Thanks for getting back to us yesterday.

I can confirm that outside counsel for Reynolds and CDK are not engaged in competitive decisionmaking in any of these areas. From what I have reviewed and from what you cited, I think this assurance satisfies even the most remote legal standard potentially applicable to these circumstances.

Otherwise, in my view the MDL lawsuit is largely about third party integration policies and practices

and contracts with vendors and dealers. In that regard, it seems to me you are saying that Dominion will not produce documents relevant to the lawsuit because we may be advising our clients regarding the subject matter of the lawsuit.

We've known each other a long time, 25 years now I think, including in law partnership together at two firms, and for that reason, I feel that I may be missing something. To that end, I'd like to take a few days to delve back into the case law and better understand where you might be resting your concerns.

I think I'll need a few days for that exercise, and would like to revisit the matter with my client as well.

Let's plan to reconnect early next week, and if you have additional legal support for some standard beyond the competitive decisionmaking standard you cited and I have previously attempted to review, please do not hesitate to pass it along. I would like to attempt to be sure we are communicating on a common legal framework, and accordingly that I am considering the right legal analysis. While I appreciate we may reach different conclusions about the outcome, I feel we have both been practicing long enough to attempt to reach some consensus on the applicable law.

Likewise, if you feel there is another way through this issue that comports with the law and can satisfy Dominion's concerns, I would be pleased to discuss any suggestions you might have. I will try to think of some myself as well.

Thank you again for taking time to engage in a conversation about this matter, and for sharing your viewpoints. I'll look forward to giving all this some additional thought on our end and reconnecting with you shortly.

M

**Michael P.A Cohen**
**202.372.5345 | mobile**
MCohen@sheppardmullin.com | Bio

---

**From:** Schildkraut, Marc [mailto:mschildkraut@cooley.com]
**Sent:** Tuesday, June 26, 2018 5:04 PM
**To:** Michael Cohen <MCohen@sheppardmullin.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Michael, sorry to hear about the issues that kept you out of the office for a time. I am glad to hear that things are improving. I wish you and your family the best of luck.

To get to the issue at hand, Dominion is not particularly concerned regarding the antitrust advice that outside litigation counsel representing Reynolds and CDK might give regarding mergers. The concern is the advice litigation counsel might give, including the antitrust advice they might give, regarding contract negotiations, breaches of contract, the enforcement of the terms in the

contracts, and any other dealings with application providers or third-party integrators.  If you and CDK can represent that you will not be providing such advice to your clients, Dominion is prepared to produce, within days,  a response to your subpoena, as described in earlier emails.

**Marc G. Schildkraut**
Partner
Cooley LLP
1299 Pennsylvania Avenue, NW• Suite 700
Washington, DC  20004
Direct: (202) 728-7000 • Fax: (202) 842-7899 • Cell (202) 957-5522
Email: mschildkraut@cooley.com • www.cooley.com
Bio: http://www.cooley.com/mschildkraut  •  Practice: www.cooley.com/antitrust

---

**From:** Michael Cohen <MCohen@sheppardmullin.com>
**Sent:** Tuesday, June 26, 2018 1:06 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Dear Marc,

Thank you for your time today to discuss the Dominion discovery.

Pursuant to our conversation, this email is to confirm that neither Reynolds outside counsel nor CDK outside counsel are involved in competitive decision making with their respective clients.

While outside counsel are consulted to provide legal advice regarding matters unrelated to this litigation, like the antitrust implications of proposed merger transactions, that consultation and advice are no different than any law firm, including your own, which may represent its clients across a variety of practice areas.

Outside counsel to Reynolds and CDK in this litigation do not hold board seats or other business positions with their clients, have no attorney consignment relationships with their respective clients, and do not participate in pricing, distribution, marketing or other forms of competitive decision making defined in the case law.  Nor do outside counsel for Reynolds or CDK have any relationship with their clients beyond the ordinary attorney client relationship.

I have expressly spoken with CDK outside counsel as you suggested, and have their authority to make this joint representation for both sets of outside counsel.  Ms. Miller, lead outside counsel for CDK, is copied in this regard.

We believe these assurances should resolve your concerns.

Thank you for your time and thoughtful attention.

M

**Michael P.A Cohen**
202.372.5345 | mobile
MCohen@sheppardmullin.com | Bio

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

---

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

# Exhibit H

| | |
|---|---|
| **From:** | Michael Cohen |
| **To:** | Schildkraut, Marc |
| **Cc:** | Britt M. Miller (BMiller@mayerbrown.com) |
| **Subject:** | RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817 |
| **Date:** | Thursday, June 28, 2018 8:10:35 AM |

Marc,

Thank you for this further note.

If I'm reading it correctly, you are asking outside counsel to commit that they will not provide legal advice to their respective clients regarding dealings with Dominion.

We will consider this option in connection with our thinking about the matter, and look forward to getting back to you early next week once we've had a chance to discuss and give it due attention.

Thanks again.

M

**Michael P.A Cohen**
**202.372.5345 | mobile**
MCohen@sheppardmullin.com | Bio

**From:** Schildkraut, Marc [mailto:mschildkraut@cooley.com]
**Sent:** Thursday, June 28, 2018 8:56 AM
**To:** Michael Cohen <MCohen@sheppardmullin.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Michael,
Dominion's concern is that litigation counsel, who would have access to Dominion's confidential materials, will be providing legal advice regarding Dominion's contracts or other business dealings with Reynolds or CDK.

As noted in the case law, competitive decision making extends beyond those who actually make the decision and includes those that advise on the decision, such as lawyers providing legal advice. Thus, if we can interpret your statement that "outside counsel for Reynolds and CDK are not engaged in competitive decision making in any of these areas" as representing that litigation counsel will not be providing advice to your client regarding its contracts with Dominion (including negotiations, alleged breaches, enforcement) or any other business dealings with Dominion, Dominion's concerns are satisfied. That would mean, for example, there would be no issue with litigation counsel generally advising on the legality of blocking third-party integrators from accessing dealer data contained in the client's DMS, but litigation counsel could not provide such supposed general advice on this issue where the relationship between your client and Dominion is known by litigation counsel to be specifically at issue because counsel is aware of ongoing negotiations between your client and Dominion regarding certification of its applications. In another example, if litigation counsel, upon

reviewing Dominion's confidential documents, interpreted Dominion's conduct as breaching an agreement with your client, litigation counsel could not ask the client, "have you ever considered [this kind of conduct] a breach of the agreement" even though litigation counsel never identified Dominion as the party breaching the agreement in this fashion."

Please let me know if you and CDK counsel agree.

---

**From:** Michael Cohen <MCohen@sheppardmullin.com>
**Sent:** Wednesday, June 27, 2018 12:01 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Marc good morning,

Thanks for getting back to us yesterday.

I can confirm that outside counsel for Reynolds and CDK are not engaged in competitive decisionmaking in any of these areas. From what I have reviewed and from what you cited, I think this assurance satisfies even the most remote legal standard potentially applicable to these circumstances.

Otherwise, in my view the MDL lawsuit is largely about third party integration policies and practices and contracts with vendors and dealers. In that regard, it seems to me you are saying that Dominion will not produce documents relevant to the lawsuit because we may be advising our clients regarding the subject matter of the lawsuit.

We've known each other a long time, 25 years now I think, including in law partnership together at two firms, and for that reason, I feel that I may be missing something. To that end, I'd like to take a few days to delve back into the case law and better understand where you might be resting your concerns.

I think I'll need a few days for that exercise, and would like to revisit the matter with my client as well.

Let's plan to reconnect early next week, and if you have additional legal support for some standard beyond the competitive decisionmaking standard you cited and I have previously attempted to review, please do not hesitate to pass it along. I would like to attempt to be sure we are communicating on a common legal framework, and accordingly that I am considering the right legal analysis. While I appreciate we may reach different conclusions about the outcome, I feel we have both been practicing long enough to attempt to reach some consensus on the applicable law.

Likewise, if you feel there is another way through this issue that comports with the law and can satisfy Dominion's concerns, I would be pleased to discuss any suggestions you might have. I will try to think of some myself as well.

Thank you again for taking time to engage in a conversation about this matter, and for sharing your viewpoints. I'll look forward to giving all this some additional thought on our end and reconnecting with you shortly.

M

**Michael P.A Cohen**
202.372.5345 | mobile
MCohen@sheppardmullin.com | Bio

---

**From:** Schildkraut, Marc [mailto:mschildkraut@cooley.com]
**Sent:** Tuesday, June 26, 2018 5:04 PM
**To:** Michael Cohen <MCohen@sheppardmullin.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** RE: In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Michael, sorry to hear about the issues that kept you out of the office for a time. I am glad to hear that things are improving. I wish you and your family the best of luck.

To get to the issue at hand, Dominion is not particularly concerned regarding the antitrust advice that outside litigation counsel representing Reynolds and CDK might give regarding mergers. The concern is the advice litigation counsel might give, including the antitrust advice they might give, regarding contract negotiations, breaches of contract, the enforcement of the terms in the contracts, and any other dealings with application providers or third-party integrators. If you and CDK can represent that you will not be providing such advice to your clients, Dominion is prepared to produce, within days, a response to your subpoena, as described in earlier emails.

**Marc G. Schildkraut**
Partner
Cooley LLP
1299 Pennsylvania Avenue, NW• Suite 700
Washington, DC 20004
Direct: (202) 728-7000 • Fax: (202) 842-7899 • Cell (202) 957-5522
Email: mschildkraut@cooley.com • www.cooley.com
Bio: http://www.cooley.com/mschildkraut • Practice: www.cooley.com/antitrust

---

**From:** Michael Cohen <MCohen@sheppardmullin.com>
**Sent:** Tuesday, June 26, 2018 1:06 PM
**To:** Schildkraut, Marc <mschildkraut@cooley.com>
**Cc:** Britt M. Miller (BMiller@mayerbrown.com) <BMiller@mayerbrown.com>
**Subject:** In Re Dealer Management Systems Antitrust Litigation, MDL No. 2817

Dear Marc,

Thank you for your time today to discuss the Dominion discovery.

Pursuant to our conversation, this email is to confirm that neither Reynolds outside counsel nor CDK outside counsel are involved in competitive decision making with their respective clients.

While outside counsel are consulted to provide legal advice regarding matters unrelated to this litigation, like the antitrust implications of proposed merger transactions, that consultation and advice are no different than any law firm, including your own, which may represent its clients across a variety of practice areas.

Outside counsel to Reynolds and CDK in this litigation do not hold board seats or other business positions with their clients, have no attorney consignment relationships with their respective clients, and do not participate in pricing, distribution, marketing or other forms of competitive decision making defined in the case law. Nor do outside counsel for Reynolds or CDK have any relationship with their clients beyond the ordinary attorney client relationship.

I have expressly spoken with CDK outside counsel as you suggested, and have their authority to make this joint representation for both sets of outside counsel. Ms. Miller, lead outside counsel for CDK, is copied in this regard.

We believe these assurances should resolve your concerns.

Thank you for your time and thoughtful attention.

M

**Michael P.A Cohen**
**202.372.5345 | mobile**
MCohen@sheppardmullin.com | Bio

<u>Attention:</u> This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. If you are the intended recipient, please be advised that the content of this message is subject to access, review and disclosure by the sender's Email System Administrator.