**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**THE DEALERSHIP CLASS ACTION** | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffery T. Gilbert |

**DEALERSHIP CLASS PLAINTIFFS' MOTION TO COMPEL DISCLOSURE OF CDK'S CLAWBACK DOCUMENTS**

Dealership Class Plaintiffs ("Dealership Plaintiffs")[1] respectfully file this Motion ("Disclosure Motion") pursuant to Paragraph 13(c) of the Agreed Confidentiality Order ("Confidentiality Order") (ECF No. 104),[2] for an Order compelling Defendant CDK Global, LLC ("CDK") to:

(1) disclose 632 documents identified by CDK as privileged that it previously produced to the Federal Trade Commission ("FTC") ("Clawback Documents") pursuant to a Civil Investigative Demand ("CID"). Dealership Plaintiffs seek the disclosure of the Clawback Documents because CDK produced these documents to the FTC in an adversarial proceeding, and thus has waived the attorney-client privilege and attorney work product protection;

---

[1] Dealership Plaintiffs consist of a nationwide class of automobile dealerships who are currently represented by 25 named plaintiffs.

[2] Paragraph 13(c) of the Agreed Confidentiality Order provides:

> If the receiving party contests the claim of attorney-client privilege or work product protection, the receiving party must—within ten business days of receipt of the claim of privilege or protection—move the Court for an Order compelling disclosure of the Disclosed Protected Information (a "Disclosure Motion"). The receiving party must seek to file the Disclosure Motion under seal and must not assert as a ground for compelling disclosure the fact of the disclosure and may not disclose, rely on, or refer to any of the Disclosed Protected Information except as necessary to contest the claim of attorney-client privilege or work product protection. Pending resolution of the Disclosure Motion, the receiving party must sequester the Disclosed Protected Information and not use the Disclosed Protected Information or disclose it to any person other than as required by law.

1

(2) disclose 474 documents to Dealership Plaintiffs that were previously produced to Authenticom, Inc. ("Authenticom"); and

(3) disclose document Bates-stamped CDK-2286595-96/CDK_CID_01937962-63 for which CDK requested clawback based upon a flawed attorney-client privilege assertion.

## INTRODUCTION

Any confidentiality of attorney-client privilege between CDK and its attorneys of over 600 Clawback Documents was abandoned when CDK voluntarily disclosed these documents to the FTC.

First, protection of these Clawback Documents would only serve CDK's strategic purposes and not any societal interest in fostering communications between a client and its attorneys. Parties wishing to avail themselves of this privilege must zealously maintain that confidentiality. CDK has failed to do that. Had CDK wished to keep these Clawback Documents privileged, it could have taken numerous steps to make that happen. For example, it could have put in place a confidentiality agreement between the FTC and CDK, it could have requested immediate return of those documents, and most importantly, it could have chosen to not produce any of the documents in the first instance to the FTC.

Second, when CDK produced documents to Dealership Plaintiffs in April 2018 pursuant to Judge St. Eve's Case Management Order ("CMO") (ECF No. 166), it knew it had withheld from the Dealership Plaintiffs hundreds, if not thousands, of documents that it had produced to the FTC and Authenticom, thus violating the CMO which states in pertinent part that all parties were required "to exchange Authenticom productions as well as documents produced to the FTC …." The extent to which these productions are different only came to light (and the differences

2

are still not entirely clear) after CDK attempted to clawback documents from Dealership Plaintiffs and Authenticom (collectively, "MDL Plaintiffs") on June 21, 2018.[3]

Finally, CDK has no reasonable basis for asserting attorney-client privilege with respect to document Bates-stamped CDK-2286595-96/CDK_CID_01937962-63, because incidentally including an attorney in correspondence does not cloak a document in attorney-client privilege, as the privilege is limited to situations in which the attorney is acting as legal advisor.

Despite at least four written requests from Dealership Plaintiffs since July 12, as well as two meet and confers, CDK has continually stonewalled Dealership Plaintiffs by refusing to provide, or providing limited responses, to repeated requests for information regarding the productions and clawbacks to MDL Plaintiffs and the FTC. To date, CDK has not provided all information requested. Because CDK has failed to meet its burden to demonstrate that the Clawback Documents should remain privileged, the Court should order the disclosure of these documents.

## BACKGROUND

On April 4, 2018, Judge St. Eve entered the Confidentiality Order, which, *inter alia*, provides the procedure by which a party may attempt to "clawback" the inadvertent disclosure of information during discovery. The Confidentiality Order also sets forth the procedure by which a party receiving this information may contest belated claims of privilege. *See* Confidentiality Order at ¶ 13.

On June 21, 2018, CDK counsel informed MDL Plaintiffs, via letter, that "[681][4] documents protected by the attorney-client privilege and/or the work product doctrine ha[d] been

---

[3] The Confidentiality Order clawback provision, ¶ 13, was never intended for a situation like this where CDK requested the clawback of almost 700 documents to be reviewed in a ten-day period, when CDK knew about the clawbacks for months prior.

inadvertently produced to Plaintiffs in this matter." (Letter with accompanying Schedule A is attached to the Declaration of Peggy J. Wedgworth (hereinafter "Wedgworth Decl.") as Exhibit 1.) In the letter, CDK requested that MDL Plaintiffs "return or destroy" all copies of the 681 documents, additionally stating that "a number of the documents identified on Schedule A have been produced to the Federal Trade Commission." Six hundred and seventy-five of the 681 documents were previously produced to the FTC. CDK counsel also noted that some of the 681 documents were originally produced with only partial redactions and CDK would be providing replacement versions of those documents with further "appropriate" redactions in the days to follow.

Between June 27 and July 10, 2018, Dealership Plaintiffs reviewed the 681 documents in CDK's Schedule A, and discovered that for many of those documents, the versions produced to them differed substantially from the versions produced to Authenticom.[5] The vast majority of the Dealership Plaintiffs' original production from CDK (506 documents) had been produced as "placeholder documents." **Dealership Plaintiffs, therefore, could not and cannot currently evaluate CDK's claim of privilege for 506 of the 681 documents, although Dealership Plaintiffs were able to discern these placeholder documents were previously produced to the FTC because they bore an additional Bates-number: "CDK_CID."**

On July 11, 2018, MDL Plaintiffs sent a letter to CDK (Wedgworth Decl., Exhibit 2) wherein MDL Plaintiffs reserved their rights to argue that "CDK has waived all privileges and protections … because CDK voluntarily produced those documents to the FTC in the context of

---

[4] Out of the 681 total documents CDK originally requested to claw back, 675 were produced to the FTC. CDK has withdrawn its request to claw back 43 of the 675, leaving the number of documents requested to be disclosed by Dealership Plaintiffs at 632.

[5] For example, of the 681 documents CDK originally attempted to clawback, only **175** were produced to Dealership Plaintiffs either in their entirety, or redacted in part. The remainder were produced to Dealership Plaintiffs as "placeholder" documents. In contrast, **649** of the 681 documents were produced to Authenticom in their entirety, or redacted.

an adversarial proceeding." In the letter, MDL Plaintiffs additionally sought to contest the assertion of the attorney-client privilege and/or work product doctrine as to 73 of the 681 documents originally listed by CDK as clawbacks, and proposed a meet and confer. The parties agreed to toll the Disclosure Motion due date until July 19, 2018.

On July 12, 2018, Dealership Plaintiffs wrote to CDK counsel (Wedgworth Decl., Exhibit 3), requesting answers to specific questions regarding CDK's original FTC production and for CDK to explain why it made different productions to the parties. On July 13, 2018, Dealership Plaintiffs wrote to CDK counsel (Wedgworth Decl., Exhibit 4), identifying 47 additional documents MDL Plaintiffs sought to challenge. On July 16, 2018, CDK counsel responded to MDL Plaintiffs' communications (Wedgworth Decl., Exhibit 5), but failed to address Dealership Plaintiffs' inquiries about the FTC production and clawback. CDK counsel addressed 73 contested documents, withdrawing its clawback of 18 of those documents "in the spirit of compromise[,]" although it believed "each was subject to a valid and defensible privilege claim." Exhibit 5, at 2. CDK provided no information as to why 474 of the 681 documents it sought to clawback were produced to Dealership Plaintiffs as "placeholders." Additionally, CDK failed to answer *any* questions that related to the FTC production, stating that CDK counsel would need to confer with CDK's counsel of record for the FTC investigation.

On July 17, 2018, Dealership Plaintiffs sent another letter to CDK (Wedgworth Decl., Exhibit 6), again attempting to clarify the status of the differing productions, even providing CDK a list of all the Bates-numbers for these 474 "placeholder" documents. *See* Exhibit 6. Dealership Plaintiffs reiterated their request for answers regarding CDK's FTC production. On July 17, 2018 the parties met and conferred, but CDK counsel was unwilling to discuss the contested documents in any substantive manner, and provided no additional information

regarding questions about its FTC productions and clawbacks. The parties agreed CDK would produce a privilege log in reference to the contested Clawback Documents, and the deadline to file a Disclosure Motion was moved to July 24, 2018.

On July 20, 2018, CDK counsel sent a letter to MDL Plaintiffs, addressing, for the first time, the discrepancies between the various productions (Wedgworth Decl., Exhibit 7). CDK made no mention of when productions or clawbacks to the FTC began, and it was unclear as to which documents CDK requested clawback treatment, and why. *See* Wedgworth Decl., Exhibit 7, at 3. CDK admitted that it had not received a response from the FTC in reference to its May 25, 2018 clawback letter to the FTC. *Id.* CDK also admitted, despite being aware that a certain document had been omitted from its clawback notifications to the FTC *months* earlier, that "CDK's counsel will be reaching out to the FTC *shortly* to request that the FTC return or destroy the document." *Id*. (emphasis added).

On July 23, 2018, Dealership Plaintiffs' counsel sent an email to CDK counsel (Wedgworth Decl., Exhibit 8), requesting answers to all previous questions regarding the discrepancies between productions and the FTC clawbacks, as well as requesting communications and privilege logs. The parties ultimately agreed via emails (Wedgworth Decl., Exhibit 9),[6] to a briefing schedule and a meet and confer on July 26, 2018. On July 25, MDL Plaintiffs wrote a letter to CDK reiterating their intention to file a motion regarding waiver of the Clawback Documents in their entirety, and listing 41 documents still in contention to be discussed at the July 26 meet and confer (Wedgworth Decl., Exhibit 10).

---

[6] In those emails, CDK counsel stated they would "consider" answering the nine remaining questions from Dealership Plaintiffs, and Dealership Plaintiffs' counsel responded, "We strongly urge you to respond to all nine questions regarding the FTC production so that all parties can properly address the issues before the Court and not create additional briefing needed should certain facts come to light for the first time in your opposition to our motion." *See* Wedgworth Decl., Exhibit 9.

At the July 26 telephonic meet and confer, CDK counsel would not discuss issues related to the FTC productions and clawbacks, except to confirm some documents were produced in redacted form to the FTC, and to state CDK had followed-up with the FTC in just the last few days as to CDK's May 25, 2018 clawback letter.

On July 27, 2018 CDK responded via letter (Wedgworth Decl., Exhibit 11) refusing to produce most of the documents requested (privilege logs and virtually all correspondence with the FTC) (Wedgworth Decl., Exhibit 11, at 2),[7] and several of its responses were so oblique as to essentially be non-responsive. Moreover, CDK's July 27 letter made clear that its limited prior responses did not fully disclose the circumstances of its productions to, and clawbacks from, the FTC. For example, for the *first time* MDL Plaintiffs learned that CDK made *18* separate productions to the FTC between July 2017 and March 2018. *Id.*[8] CDK failed to directly answer whether it was Mayer Brown or Paul, Weiss, Rifkind, Wharton & Garrison, LLP (CDK's FTC counsel of record) ("Paul, Weiss") that discovered documents needed to be clawed back from the FTC productions, instead sidestepping a direct response by stating that *both* firms "coordinated to identify inadvertently Disclosed Protected Information." *Id.* at 4. Finally, despite noting that it had not clawed back CDK-020734/CDK_CID_00465472 in a prior letter (Wedgworth Decl., Exhibit 7), CDK now made the misleading (and confusing) statement that there was no delay, because once it discovered its omission (the date of which was never disclosed), it "promptly took remedial action." Wedgworth Decl., Exhibit 11, at 3. However, CDK went on to say that it

---

[7] CDK refused to produce any correspondence with the FTC other than an April 20, 2018 letter from the FTC, the only document it deemed "relevant." Wedgworth Decl., Exhibit 11, at 4; Exhibit 11-A.

[8] CDK produced documents to the FTC on the following dates (quantity of documents produced is unknown unless specified): July 7 and 14, 2017, August 4 and 14, 2017, Sept. 1 and 25, 2017, Oct. 12, 20, 23 and 31, 2017, Nov. 15, 2017 *(48,001 documents produced)*, Nov.30, 2017 *(43,075 documents produced)*, Dec. 22, 2017 *(162,465 documents produced)*, Jan. 10, 2018, Jan. 25, 2018 *(258,911 documents produced)*, Feb.16, 2018 *(140,799 documents produced)*, Feb. 26,2018 *(136,514 documents produced)*, and March 22, 2018. *See* Wedgworth Decl., Exhibit 11–B.

7

was not until *July 24, 2018*, that Paul, Weiss made a formal request for the document to be returned or destroyed, which is hardly "prompt." *Id.*

## ARGUMENT

### I. CDK Waived Privilege of the Clawback Documents By Producing Them to the FTC

CDK bears the burden of proving that its production of the Clawback Documents to the FTC did not waive privilege. *See* Confidentiality Order at ¶ 13(f) ("The Producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information."); *see also Favala v. Cumberland Eng'g Co., a Div. of John Brown Inc.*, 17 F.3d 987, 989 (7th Cir. 1994) (the party asserting the claim of privilege has the burden of proving it). CDK waived all privileges and protections as to the Clawback Documents when it produced them to the FTC, and cannot now meet its burden to overcome waiver since (1) CDK cannot meet the burden of demonstrating the FTC production was inadvertent; and (2) CDK has failed to establish that it took reasonable and prompt steps to prevent the disclosure.[9]

#### A. CDK Cannot Meet its Burden to Demonstrate that the Production of Clawback Documents to the FTC was Inadvertent

CDK's production to the FTC was not a mistake, inadvertent, or unintentional because CDK -- represented by highly-experienced counsel -- reviewed and screened the documents in question before producing them to the FTC. *See In re Consolidated Litig. Concerning Int'l Harvester's Disposition of Wisconsin Steel*, 666 F. Supp. 1148, 1154 (N.D. Ill. 1987) (court held

---

[9] Even assuming arguendo that these documents are privileged, which Dealership Plaintiffs do not, CDK bears the burden of demonstrating that privilege. Though compliance with Federal Rule of Evidence 502(b) may be applicable regarding certain circumstances concerning a production to a government agency though not here, CDK would retain the burden. Fed. R. Evid. 502(b). *See also Excel Golf Prods., Inc. v. MacNeill Engineering Co.*, No. 11-cv-1928, 2012 WL 1570772, at * 2 (N.D. Ill. May 3, 2012) citing *Kmart Corp. v. Footstar, Inc.*, 2010 WL 4512337, at * 4 (N.D. Ill. Nov. 2, 2010) ("The producing party bears the burden of showing compliance with Rule 502."); *Walker v. White*, No. 16-cv-7024, 2018 WL 2193255, at * 3 (N.D. Ill. May 14, 2018) ("[the producing party] has the burden of showing compliance with each of these elements.").

disclosure was not inadvertent where company screened files for privilege early in the litigation and subsequently produced those files). CDK produced several of those documents to the FTC as either partially redacted documents or as completely withheld "placeholder documents." *See* Wedgworth Decl., Exhibit 12 for an example of a placeholder document: CDK-0059104-05. CDK's counsel also confirmed during the July 26 meet and confer that CDK produced documents to the FTC as redacted or fully withheld for privilege. Moreover, CDK made *18* separate productions to the FTC over the course of *eight* months from July 7, 2017 to March 22, 2018. Thus, it had ample time to carefully review each production for privileged material.

Further, CDK has refused to specifically answer specific questions regarding the FTC production and the attempted FTC clawback. CDK has yet to identify which law firm (Paul, Weiss for the FTC investigation or Mayer Brown in this litigation) discovered and determined that CDK's disclosure to the FTC was supposedly inadvertent. Dealership Plaintiffs asked the direct question in their July 24, 2018 email with a less-than-direct response from CDK:

> **Q.:** Was it Mayer Brown or counsel for CDK during the FTC investigation who discovered that documents needed to be clawed back from the FTC production(s)? Please explain the circumstances.
>
> **A.:** Mayer Brown and CDK's counsel of record in the FTC proceedings (collectively, 'CDK's Counsel') coordinated to identify inadvertently Disclosed Protected Information. When CDK's counsel became aware that certain potentially privileged documents were inadvertently produced it promptly began investigating whether additional, similarly privileged documents had been inadvertently produced.

*See* Wedgworth Decl., Exhibits 9, 11. From this sole response on the issue provided by CDK, it appears CDK retained Paul, Weiss to address its productions to the FTC. Without assurance as to who actually discovered the "necessity" to claw back documents, and how that discovery was made, and in what context that discovery was made, Mayer Brown's unsupported assertions are meaningless at best, and disingenuous at worst. Mayer Brown's additional answers to questions

9

regarding the FTC production again raise more questions than answers. Should those answers reveal that Mayer Brown was just second-guessing privilege decisions of Paul Weiss, this would not satisfy CDK's burden to demonstrate inadvertent production. *See, e.g.*, *In re Brand Name Prescription Drugs*, Nos. 94-cv-897, 94-md-997, 1995 WL 683777, at *3 (N.D. Ill. Nov. 16, 1995) ("Though some of the disclosures were made in error, there was a 'conscious' decision behind each. The disclosures were therefore not 'inadvertent.'"); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,* 132 F.R.D. 204, 207 (N.D. Ind. 1990) ("truly inadvertent" discussion). When a party voluntarily produces privileged material to the government, that party has waived privilege. Selective waiver -- the doctrine which states that a party may disclose materials to the government without waiving privilege as to any other subsequent, requesting party -- is soundly rejected by the majority of Circuits, including the First,[10] Third,[11] Fourth,[12] Sixth,[13] Ninth,[14] Tenth,[15] and D.C. Circuits.[16]

As Judge Easterbrook has stated, "[k]nowing disclosure to a third party almost invariably surrenders the privilege with respect to the world at large; *selective disclosure is not an option*." *See Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) (emphasis added) (affirming district court order directing a third party to produce a report, previously shown to a defendant municipality). To allow selective waiver is to transform the attorney-client privilege into "merely another brush on an attorney's palette, utilized and manipulated to gain tactical or strategic advantage." *Rivera v. Allstate Ins. Co.*, No. 10-cv-1733, 2013 WL 2903491, at *2-3 (N.D. Ill. Jun. 14, 2013) *quoting In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d

---

[10] *See, e.g.*, *U.S. v. Mass. Inst. Of Tech.*, 129 F.3d 681 (1st Cir. 1997).
[11] *See, e.g.*, *Westinghouse Elec. Corp. v. Republic of Phillipines*, 951 F.2d 1414 (3rd Cir. 1991).
[12] *See, e.g.*, *In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988).
[13] *See, e.g.*, *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289 (6th Cir. 2002).
[14] *See, e.g.*, *In re Pacific Pictures Corp.*, 679 F.3d 1121 (9th Cir. 2012).
[15] *See, e.g.*, *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179 (10th Cir. 2006).
[16] *See, e.g.*, *Permian Corp v. U.S.*, 665 F.2d 1414 (D.C. Cir. 1981).

at 302 (court rejected application of selective waiver doctrine holding that documents produced to the government must be produced because once privilege is waived to government, it is waived for subsequent private party).

To allow CDK the "tactical advantage" of producing privileged material to the FTC, without waiving privilege in the instant matter, would be improper. *See Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981) ("In the present case, Occidental has been willing to sacrifice confidentiality in order to expedite approval of the exchange offer, and now asserts that the secrecy of the attorney-client relationship precludes disclosure of the same documents in other administrative litigation. The attorney-client privilege is not designed for such tactical employment."); *Neal v. Honeywell, Inc.*, No. 93-cv-1143, 1995 WL 591461, at *6 (N.D. Ill. Oct. 4, 1995) (upholding Magistrate Judge's recommendation that voluntary disclosure to the government was done to gain "tactical advantage" in the underlying investigation and that disclosure constituted waiver).

Courts in the Northern District of Illinois have rejected selective waiver and instead have held that voluntary production to the government operates as a complete waiver of privilege. *See Donovan v. Fitzsimmons*, 90 F.R.D. 583, 585 (N.D. Ill. 1981) (waiver of the attorney-client privilege applied to all documents produced to the Department of Labor, because defendant was afforded the opportunity to withhold any document on grounds of privilege and defendant voluntarily produced the contested documents); *Maryville Academy v. Loeb Rhoades & Co., Inc.*, 559 F. Supp. 7, 8 (N.D. Ill. 1982) (voluntary disclosure of protected documents to the SEC, even pursuant to a subpoena, was a "complete waiver of the attorney-client privilege.").[17]

---

[17] *See also Hobley v. Burge*, Nos. 03-cv-3678, 030cv04433, 2004 WL 856439, at *7 (N.D. Ill. Apr. 21, 2004) (the producing party could not claim privilege because it previously produced documents to Special Prosecutor; *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 427 (N.D. Ill. 2006) (defendants waived privilege regarding all documents produced to Department of Justice pursuant to subpoena); *In re Aqua*

In addition, of the 632 Clawback Documents, after review of the documents, it appears at least 110 of those documents contain redactions when produced to the FTC. CDK's production of more than 110 redacted documents to the FTC highlights the fact that its production was carefully considered and not inadvertent. CDK has not carried its burden to demonstrate that such a review that generates redactions in over 110 documents, failed to include a review of all the documents produced to the FTC.

### B. CDK Did Not Take Reasonable and Prompt Steps to Prevent Disclosure

CDK has provided virtually *no* information on what steps were taken to prevent disclosure, except that it had *three* separate clawbacks from the FTC (*see* Wedgworth Decl., Exhibit 11) over an *eight* month period. Further, CDK did not enter into any kind of confidentiality agreement with the FTC before producing documents. *Id*., Exhibit 11. CDK *chose* to produce documents to the FTC without any confidentiality agreement with the FTC.

In addition, CDK took at least *five* months to determine that it had produced privileged material to the FTC. CDK began producing documents to the FTC in July 2017 (*see* Wedgworth Decl., Exhibit 10), and it was not until December 2017 -- five and a half months after its initial production -- that CDK determined certain documents it produced to the FTC were privileged. *Id. See Thorncreek Apartments*, Nos. 08-cv-1225, 08-cv-0869, 08-cv-4303, 2011 WL 3489828, at *8 ("we find more significant the [producing party's] failure to ***identify*** and rectify the error[.]") (emphasis added).[18]

---

*Dots Products Liab. Litig.*, 270 F.R.D. 322, 328 (N.D. Ill. 2010) (producing party waived privilege as to certain documents produced to Consumer Product Safety Commission even where party sent letter requesting disclosure be confidential). *But see Viamedia, Inc. v. Comcast Corp*., No. 16-cv-5486, 2017 WL 2834535 (N.D. Ill. June 30, 2017) (court held Viamedia entitled to withhold privileged documents inadvertently produced to DOJ in part because Viamedia met its burden of showing it had taken reasonable steps to prevent disclosure.)

[18] *See also Harmony Gold U.S.A. v. FASA Corp.*, 169 F.R.D. 113, 117 (N.D. Ill. 1999) (two-week delay showed that plaintiff "dragged its feet in taking appropriate corrective action.") *Walker v. White*, No. 16-

## II. The CMO Requires CDK to Produce 474 Documents to Dealership Plaintiffs that it Previously Produced to Authenticom

Pursuant to the Case Management Order, all parties were required "to exchange Authenticom productions as well as documents produced to the FTC …." (ECF No. 166). Instead, in direct contravention of the CMO, for *at least* the last three months following CDK's document productions to Dealership Plaintiffs in April 2018 -- which includes the time period during which Dealership Plaintiffs drafted and filed their Consolidated Class Action Complaint -- CDK has been aware it made different productions to the FTC, Authenticom, and the Dealership Plaintiffs, withholding from Dealership Plaintiffs at least 474 documents. *See* Wedgworth Decl., Exhibit 5.

It was only after MDL Plaintiffs received CDK's June 21, 2018 letter requesting over 600 documents to "clawback," and following much investigation, Dealership Plaintiffs discovered the discrepancies between the productions. CDK had an obligation under the CMO to reproduce its Authenticom and FTC productions, regardless of previous productions, and in their entirety. In fact, at the April 25, 2018 conference, in reference to prior productions, Judge St. Eve specifically queried: "Have you given a *complete* production of what you turned over to the FTC?" Tr. 25:13-25 (emphasis added). (A copy of the transcript is attached to the Wedgworth Decl., Exhibit 13.) *See also* CDK's statement at the conference:

> We have -- defendants have -- however, turned over *all* of their Authenticom discovery. So, we've turned – I've turned over 3 million -- almost 3 million -- pages of material to Ms. Wedgworth, and we deemed that -- those same productions -- made as of April 20th to counsel for MVSC, AutoLoop and Cox. So, the Kellogg, Hansen firm already had it, but they've now been deemed produced in those matters. So, they can use the documents in those matters.

---

cv-7024, 2018 WL 2193255, at * 4 (producing party waited 45 days "to claim the document had been inadvertently produced and request a clawback" that party failed to show that it acted promptly and/or took reasonable steps to rectify the alleged inadvertent production).

13

*Id.*, Tr. 13:6-13 (emphasis added).[19] CDK's unilateral decision to produce different productions to different parties is in violation of the Court's Order and clear directives.

Further, while Authenticom has had the opportunity to challenge 474 document listed in Schedule A of CDK's June 21, 2018 letter (Wedgworth Decl., Exhibit 1); Dealership Plaintiffs have not, as they have only received those documents as "placeholder documents." *See* Wedgworth Decl., Exhibit 3.[20] The CMO requires CDK to "exchange Authenticom productions" and does not contemplate in that wording that CDK would covertly remove hundreds, if not thousands, of documents from the Authenticom production before production to Dealership Plaintiffs. Authenticom and Dealership Plaintiffs are separate plaintiffs with different interests in this case. While MDL Plaintiffs are to "coordinate … all generic pretrial discovery" (April 16, 2018 Order, ECF No. 123), there is no order stating they are required to reach identical conclusions about issues, including their review of alleged privileged documents. Accordingly, pursuant to the CMO, CDK should be required to disclose those 474 documents listed in Schedule A to Dealership Plaintiffs.

### III. A Business Document Is Not Entitled to Attorney-Client Privilege Protection

Dealership Plaintiffs request the disclosure of document Bates-stamped CDK-2286595-96/CDK_CID_01937962-63 (Wedgworth Decl. Exhibit 14-A, 14-B) for which CDK requested clawback based upon a flawed attorney-client privilege assertion. The attorney-client privilege

---

[19] The Court clearly ordered that all parties produce documents that they provided to the FTC in their entirety: "So, all parties should produce whatever has been produced to the FTC, and continue doing so to the extent you have continued productions and identify what it is …. Produce – and all sides should produce – to the extent you have not already, by May 9th any productions that your clients have made to the FTC." *Id.*, Tr. 27:14-16, 24-28.

[20] As a result of their investigation, Dealership Plaintiffs have additionally uncovered approximately 4,500 "placeholder" documents within CDK's document productions to them in April 2018. Dealership Plaintiffs brought this to CDK's attention at the July 26, 2018 meet and confer, and the parties agreed to discuss this at a separate meet and confer to be scheduled. Dealership Plaintiffs request that if these documents were produced to the FTC and/or Authenticom, that they be produced to Dealership Plaintiffs as well.

protects only "confidential communications between a client and an attorney *for the purpose of obtaining legal advice*." *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000). The Seventh Circuit thus applies the following test to determine whether the attorney-client privilege attaches to a communication:

> (1) Where legal advice of any kind is sought (2) from a professional adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209 (N.D. Ill. 2013) (quoting *U.S. v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997)). "[T]he mere existence of an attorney-client relationship is not sufficient to cloak all communications with privilege." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). CDK fails to satisfy any of these factors.

This business document is  *See* *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) ("The [attorney-client] privilege does not apply to an email 'blast' to a group of employees that may include an attorney ..."); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010) (attorney-client privilege does not protect business decision advice.)[22]

---

[21] 

[22] *See also RBS Citizens*, 291 F.R.D. at 217 (Including in-house counsel on an otherwise non-legal discussion does not transform communication into privileged matter); *In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990); *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84-cv-5103, 1987 WL 12919, at * 5 (N.D. Ill. Jun. 19, 1987).

## CONCLUSION

For the foregoing reasons, MDL Plaintiffs respectfully request this Court order CDK to:

(1) disclose 632 documents identified by CDK as privileged that it previously produced to the Federal Trade Commission ("FTC") ("Clawback Documents") pursuant to a Civil Investigative Demand ("CID"). Dealership Plaintiffs seek the disclosure of the Clawback Documents because CDK produced these documents to the FTC in an adversarial proceeding, and thus has waived the attorney-client privilege and attorney work product protection;

(2) disclose 474 documents to Dealership Plaintiffs that were previously produced to Authenticom, Inc. ("Authenticom"); and

(3) disclose document Bates-stamped CDK-2286595-96/CDK_CID_01937962-63 for which CDK requested clawback based upon a flawed attorney-client privilege assertion.

Dated: July 30, 2018

*/s/ Peggy J. Wedgworth*_____
Peggy J. Wedgworth (pro hac vice)
***Dealership Interim Lead Class Counsel***
Elizabeth McKenna (pro hac vice)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

Leonard A. Bellavia (pro hac vice)
*Plaintiffs' Steering Committee*
Steven Blatt
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com

Daniel C. Hedlund
*Plaintiffs' Steering Committee*
Michelle J. Looby (pro hac vice)
*Plaintiffs' Steering Committee*
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com

16

dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mlooby@gustafsongluek.com
dnordin@gustafsongluek.com

| | |
|---|---|
| James E. Barz<br>*Plaintiffs' Steering Committee*<br>Frank Richter<br>*Plaintiffs' Steering Committee*<br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br>200 South Wacker Drive, 31st Floor<br>Chicago, IL 60606<br>Tel: (312) 674-4674<br>Fax: (312) 674-4676<br>jbarz@rgrdlaw.com<br>frichter@rgrdlaw.com | Robert A. Clifford<br>*Liaison Counsel*<br>Shannon M. McNulty<br>Kristofer S. Riddle<br>**CLIFFORD LAW OFFICES, P.C.**<br>120 N. LaSalle Street, 31 Floor<br>Chicago, Illinois 60602<br>Tel: (312) 899-9090<br>Fax: (312) 251-1160<br>RAC4cliffordlaw.com<br>SN4M@cliffordlaw.com<br>KSR@cliffordlaw.com |
| David W. Mitchell (pro hac vice)<br>Alexandra S. Bernay<br>Carmen A. Medici<br>**ROBBINS GELLER RUDMAN & DOWD LLP**<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101<br>Tel: (619) 231-1058<br>Fax (619) 231-7423<br>davidm@rgrdlaw.com<br>xanb@rgrdlaw.com<br>cmedici@rgrdlaw.com | |

## CERTIFICATE OF SERVICE

I, Peggy J. Wedgworth, an attorney, hereby certify that on July 30, 2018, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' MOTION TO COMPEL DISCLOSURE OF CDK'S DISCLOSED PROTECTED INFORMATION**, to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

    */s/ Peggy J. Wedgworth*
    Peggy J. Wedgworth
    **MILBERG TADLER PHILLIPS GROSSMAN LLP**
    One Pennsylvania Plaza, 19th Floor
    New York, NY 10119
    (212) 594-5300
    pwedgworth@milberg.com