# Exhibit J

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DEALER MANAGEMENT | ) | MDL No. 2817 |
| SYSTEMS ANTITRUST LITIGATION | ) | Case No. 18 C 864 |

This Document Relates to All Cases

**AUTHENTICOM'S SECOND SET OF REQUESTS FOR THE PRODUCTION
OF DOCUMENTS FOR DEFENDANT CDK GLOBAL, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Authenticom, Inc. ("Authenticom") hereby requests that Defendant CDK Global, LLC ("CDK") produce all documents in its actual or constructive possession, custody, or control related directly or indirectly to any of the matters described below. All documents and tangible things responsive hereto should be produced for inspection as soon as practicable and in no event later than thirty (30) days from the date after service of these requests for production. Production shall be made at the offices of KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036, or as otherwise agreed to by the parties.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.      "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin.  "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.      "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief (hereinafter, "SoAF"), Dkt. No. 87 (June 16, 2017).  "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF.  "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.      "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form.  The phrase "communication between" is defined

to include instances where one party addresses the other party but the other party does not necessarily respond.

7. "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both. For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

8. "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF. "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9. "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

10. "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

11. "Including" (in addition to its usual meanings) shall mean including but not limited to.

12. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

3

13.     "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF.  "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

14.     "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

15.     "You," "Your," or "Your company" shall mean the responding Defendant, its present or former predecessors, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation, any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding Defendant.

## INSTRUCTIONS

1.     In producing documents and other materials, You must furnish all documents in Your possession, custody, or control, regardless of whether such documents or materials are possessed directly by You, Your employees or former employees, agents or former agents, parents, subsidiaries, affiliates, investigators, or by Your attorneys or their employees, agents, vendors, or investigators.

2.     All documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business.  All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained.

3.      Documents attached to one another should not be separated.  If any portion of any document is responsive to any portion of the document requests below, then the entire document must be produced.

4.      Documents shall be produced in such fashion as to identify the natural person in whose possession they were found (i.e., the document custodian).

5.      If any document responsive to any of these requests is privileged, and the document or any portion of the document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the following information:

   a.   the exact basis for withholding the document;
   b.   the date of such communication;
   c.   the medium of such communication;
   d.   the general subject matter of such communication (such description shall not be considered a waiver of Your claimed privilege);
   e.   the identity of any document that was the subject of such communication and the present location of any such document;
   f.   the identity of all persons involved in such communication; and
   g.   the identity of any document which records, refers, or relates to such communication and the present location of any such document.

6.      Each document requested herein should be produced in its entirety and without deletion, redaction, or excision, except as permitted by a recognized privilege, regardless of whether You consider the entire document or only part of it to be relevant or responsive to these document requests.  If You have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document You have redacted.

7.      Each request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of You or Your respective agents or attorneys.  You are

specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 93.**  Communications and documents relating to how much CDK spends on a monthly basis with independent data integrators, including with Authenticom, SIS, and/or others,  from January 1, 2013 to present.  *See* CDK-0053241.

**REQUEST NO. 94.**  Communications and documents in which Dan McCray used any term of profanity.  This request has no date limitation.

**REQUEST NO. 95.**  Communications and documents concerning DMI's syndication or "comingling" of Reynolds' data following the February 18, 2015 Data Exchange Agreement, including but not limited to internal communications and documents concerning any competitive advantage DMI gained through the ability to syndicate or "comingle" Reynolds' data and communications with third parties concerning DMI's ability to syndicate or "comingle" Reynolds' data.

**REQUEST NO. 96.**  Communications and documents concerning the potential or expressed inability of vendors to afford the up front, minimum, and/or monthly fees CDK charges through the 3PA program, including but not limited to any communications with third party vendors in which the third party indicated it could not afford CDK's 3PA up front, minimum, and/or monthly fees.

**REQUEST NO. 97.**  Communications and documents concerning any vendor reducing the services obtained through the 3PA program in connection with (or as a result of) any price increases for those services.

**REQUEST NO. 98.**   Communications and documents regarding whether CDK should or would pass through, or has passed through, RCI data integration fees to dealership customers of CDK add-on applications.

**REQUEST NO. 99.**   Communications and documents concerning the limitations of manual extraction of dealer data, including but not limited to communications and documents concerning Reynolds' Dynamic Reporting program.

**REQUEST NO. 100.**  Communications and documents concerning any instance in which a CDK, DMI, and/or Integralink employee, agent, or independent contractor sent a dealership user-id and/or password in an unencrypted format through email.

**REQUEST NO. 101.**  Documents sufficient to show the identity of any vendor and/or dealer that used DMI and/or Integralink for data integration services on the Reynolds DMS during the "wind down period," as described in the February 18, 2015 Data Exchange Agreement.  For each such vendor and/or dealer, please produce documents sufficient to show the date (if any) on which each vendor and/or dealer exited the "wind down period" and no longer used DMI and/or Integralink for data integration services on the Reynolds DMS.

**REQUEST NO. 102.**  For the avoidance of doubt, all invoices for all vendors that used (1) DMI, (2) Integralink, and/or (3) the 3PA program for data integration services, from 2011 to the present.

**REQUEST NO. 103.**  For the avoidance of doubt, all invoices for all dealerships that used a CDK DMS, from 2011 to the present.

**REQUEST NO. 104.**   All communications and documents concerning your security tools, processes, and training for your software developers.

**REQUEST NO. 105.**  Documents sufficient to show the jobs CDK eliminated and/or moved offshore from 2015 to the present, including documents sufficient to show the extent of the jobs eliminated and/or moved offshore, the dates on which the jobs were eliminated and/or moved offshore, and the categories or types of jobs that were eliminated and/or moved offshore. *See, e.g.*, CDK-1181024.

**REQUEST NO. 106.**  An unredacted version of the FTC's March 18, 2018 Complaint concerning CDK's proposed acquisition of Auto/Mate (Docket No. 9382), as well as, for the avoidance of doubt, all documents provided to the FTC in connection with the FTC's review of the Auto/Mate acquisition.

**REQUEST NO. 107.**  Communications and documents not previously produced to Authenticom which contain any of the following terms:

- "Vendor X"
- "Joint team"
- "Combined team"
- "No disruption" /50 "security level"
- "Iron dome"
- "Secure DMS Strategy"
- "Lock out*"
- "Security Advisory Council"
- "Project Scarlett"
- "Project Ledson"
- Unhook & Rey! or RR or R&R
- "Data breach" & OneEighty or "One Eighty"
- "Evil empire"
- "DDX mass activation"
- Trust* /50 Rey! or RR or R&R or Schaefer or Brockman
- Threat* /50 Rey! or RR or R&R
- Exorbitant /50 Rey! or RR or R&R
- DMI & "one stop shop"
- Leak or leakage /50 Authen! or SIS
- Drain* /s swamp

8

Dated: March 23, 2018

Respectfully submitted,

*/s/ Michael N. Nemelka*
_____
Michael N. Nemelka *(pro hac vice)*
Aaron M. Panner *(pro hac vice)*
David L. Schwarz *(pro hac vice)*
Kevin J. Miller *(pro hac vice)*
Derek T. Ho *(pro hac vice)*
Joshua Hafenbrack *(pro hac vice)*
Joanna T. Zhang *(pro hac vice)*
KELLOGG, HANSEN, TODD,
    FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax:    (202) 326-7999
Email: mnemelka@kellogghansen.com
            apanner@kellogghansen.com
            dschwarz@kellogghansen.com
            kmiller@kellogghansen.com
            dho@kellogghansen.com
            jhafenbrack@kellogghansen.com
            jzhang@kellogghansen.com


Jennifer L. Gregor
Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
Fax:    608-257-0609
Email: jgregor@gklaw.com
            areimann@gklaw.com


*Attorneys for Plaintiff Authenticom, Inc.*

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2018, I caused a true and correct copy of the foregoing

Authenticom, Inc.'s Second Set of Requests for the Production of Documents for Defendant

CDK Global, LLC to be served by email upon the following individuals:

Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
Jeffrey A. Simmons (jsimmons@foley.com)
Joseph S. Harper (jharper@foley.com)
Aundrea K. Gulley (agulley@gibbsbruns.com)
Brian T. Ross (bross@gibbsbruns.com)
Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
Ross M. MacDonald (rmacdonald@gibbsbruns.com)
Justin D. Patrick (jpatrick@gibbsbruns.com)
Kathy D. Patrick (kpatrick@gibbsbruns.com)
Michael P. A. Cohen (mcohen@sheppardmullin.com)
Amar S. Naik (anaik@sheppardmullin.com)
James L. McGinnis (jmcginnis@sheppardmullin.com)
John S. Skilton (jskilton@perkinscoie.com)
Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
Michelle M. Umberger (mumberger@perkinscoie.com)
Brandon M. Lewis (blewis@perkinscoie.com)
Jesse J. Bair (jbair@perkinscoie.com)
Kathleen A. Stetsko (kstetsko@perkinscoie.com)

*/s/ Michael N. Nemelka*
Michael N. Nemelka