# Exhibit L

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) | MDL No. 2817<br>Case No. 18 C 864 |

This Document Relates to All Cases

**AUTHENTICOM'S FIRST SET OF INTERROGATORIES
FOR DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Authenticom, Inc. ("Authenticom") hereby requests that Defendant The Reynolds and Reynolds Company ("Reynolds") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1. "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

2. "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

3. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

4. "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF"). "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

5. "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

2

6. "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both. For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

7. "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF. "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

8. The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers, as described in Paragraphs 7-15 of the SoAF.

9. "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

10. "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

11. "Including" (in addition to its usual meanings) shall mean including but not limited to.

12. "OEM" shall mean Original Equipment Manufacturer and shall include the present or former predecessors, subsidiaries, divisions, departments, and operating units of any Original Equipment Manufacturer.

13. "Preliminary Injunction Hearing" shall mean the hearing conducted in the United States District Court for the Western District of Wisconsin, No. 3:17-CV-318-JDP, from June 26-28, 2017.

14. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

15. "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

16. "Reynolds dealer" shall mean a dealership or dealership group that uses a Reynolds DMS.

17. "SIS" shall mean Superior Integrated Solutions and shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

18. "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are unaffiliated with the DMS provider.

19. "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

4

20. "Whitelisting" shall mean protecting DMS login credentials from disruption or blocking for a specific vendor, OEM, dealership, and/or data integrator. For the avoidance of doubt, "whitelisting" includes the process of protecting usernames and passwords described by Robert Schaefer at the Preliminary Injunction Hearing. *See*, *e.g.*, Dkt. 163, at 36:2-37:25.

21. "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## INSTRUCTIONS

1. If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2. To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3. If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.      Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.      The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.      The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.      Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

## INTERROGATORIES

**INTERROGATORY NO. 1**      Identify each vendor, including any OEM, that transitioned to the RCI program for data integration services – and the prices paid for those services – from DMI and/or IntegraLink after CDK and Reynolds entered into the Data Exchange Agreement on February 18, 2015.

**INTERROGATORY NO. 2**      Identify every dealership or dealership group that switched to or from a Reynolds DMS since January 2009.  For each such dealership or dealership group, state the month and year that the switch became effective, and which DMS provider the dealership or dealership group was switching to or from.

**INTERROGATORY NO. 3**      Identify the dollar amounts each vendor participating in the RCI program paid in certification or initiation fees; per-dealership, or per-rooftop, setup costs (on an annual basis); per-rooftop charges for data integration services (on a monthly basis); and total transaction fees (on a monthly basis), from 2011 to present.

**INTERROGATORY NO. 4** Identify every instance Reynolds has identified where a vendor exaggerated or inflated the RCI data integration fee on a bill, invoice, or communication with a Reynolds dealer, from January 1, 2015 to present. In each example, please state what Reynolds contends was the actual RCI fee versus the RCI fee that the vendor invoiced to the dealer.

**INTERROGATORY NO. 5** Identify any and all specific instances (if any exist) where Reynolds believes that any third-party data integrator degraded system performance or caused data corruption on a Reynolds DMS. Please state the nature of the incident, the date the incident occurred, the way in which system performance was degraded (including any measurements thereof) or data was corrupted, the time period for which system performance was degraded or data corrupted, the third-party data integrator that Reynolds believes caused the degraded system performance or data corruption, and the dealership or dealership groups affected.

**INTERROGATORY NO. 6** Identify any and all specific instances (if any exist) where Reynolds believes that any third-party data integrator caused a data breach on the Reynolds DMS. Please state the nature of the breach, the date the breach occurred, the length of the data breach, the third-party data integrator that Reynolds believes caused the breach, and the dealership or dealership groups affected.

**INTERROGATORY NO. 7** Identify the average tenure of Reynolds' DMS customers on an annual basis, from 2009 to present.

**INTERROGATORY NO. 8** Identify Reynolds' market share in the DMS Market, on an annual basis, based on dealership rooftops and car sales since 2000.

**INTERROGATORY NO. 9**         Identify any documents (if any exist) that you believe substantiate the claim made by your expert Dr. Sumanth Addanki that Reynolds' operation of a closed system was "in the short run [] unprofitable" for Reynolds.  Decl. of S. Addanki, *Authenticom* Dkt. 130, ¶ 58.

**INTERROGATORY NO. 10**         Identify each dealership, vendor, OEM, and/or third-party integrator that has been whitelisted by Reynolds at any point since January 1, 2013. For each such entity, state the dates of the whitelisting and the number and identity of any dealership(s) and vendor(s) covered by the whitelisting.

**INTERROGATORY NO. 11**         Identify every oral and in-person communication between you and CDK concerning what you now call "hostile integration" and/or any third-party data integrator (including but not limited to Authenticom, SIS, DMI, and Integralink) from January 1, 2011 to the present.

8

| | |
|---|---|
| Dated: March 23, 2018 | Respectfully submitted, |

*/s/ Michael N. Nemelka*
Michael N. Nemelka
Aaron M. Panner
David L. Schwarz
Kevin J. Miller
Derek T. Ho
Joshua Hafenbrack
Joanna T. Zhang
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax:     (202) 326-7999
Email: mnemelka@kellogghansen.com
          apanner@kellogghansen.com
          dschwarz@kellogghansen.com
          kmiller@kellogghansen.com
          dho@kellogghansen.com
          jhafenbrack@kellogghansen.com
          jzhang@kellogghansen.com


Jennifer L. Gregor
Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
Fax:     608-257-0609
Email: jgregor@gklaw.com
areimann@gklaw.com


*Attorneys for Plaintiff Authenticom, Inc.*

9

**CERTIFICATE OF SERVICE**

  I hereby certify that on March 23, 2018, I caused a true and correct copy of the foregoing Authenticom, Inc.'s First Set of Interrogatories for Defendant The Reynolds and Reynolds Company to be served by email upon the following individuals:

  Mark W. Ryan (mryan@mayerbrown.com)
  Britt M. Miller (bmiller@mayerbrown.com)
  Matthew D. Provance (mprovance@mayerbrown.com)
  Jeffrey A. Simmons (jsimmons@foley.com)
  Joseph S. Harper (jharper@foley.com)
  Aundrea K. Gulley (agulley@gibbsbruns.com)
  Brian T. Ross (bross@gibbsbruns.com)
  Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
  Ross M. MacDonald (rmacdonald@gibbsbruns.com)
  Justin D. Patrick (jpatrick@gibbsbruns.com)
  Kathy D. Patrick (kpatrick@gibbsbruns.com)
  Michael P. A. Cohen (mcohen@sheppardmullin.com)
  Amar S. Naik (anaik@sheppardmullin.com)
  James L. McGinnis (jmcginnis@sheppardmullin.com)
  John S. Skilton (jskilton@perkinscoie.com)
  Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
  Michelle M. Umberger (mumberger@perkinscoie.com)
  Brandon M. Lewis (blewis@perkinscoie.com)
  Jesse J. Bair (jbair@perkinscoie.com)
  Kathleen A. Stetsko (kstetsko@perkinscoie.com)

                */s/ Michael N. Nemelka*
                Michael N. Nemelka