# Exhibit O

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) | MDL No. 2817 Case No. 18 C 864 |
| _____ | ) ) | |
| This Document Relates To: | ) ) | Hon. Robert M. Dow Jr. |
| The Dealership Class Action | ) ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |

**THE REYNOLDS AND REYNOLDS COMPANY'S
RESPONSES AND OBJECTIONS TO
DEALER CLASS PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant The Reynolds and Reynolds Company ("Reynolds") hereby objects and responds to the First Set of Requests for the Production of Documents served on Reynolds by Plaintiffs Baystate Ford Inc.; Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville; JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Jim Marsh American Corporation d/b/a Jim Marsh Mitsubishi Suzuki Kia Mahindra; John O'Neil Johnson Toyota, LLC; Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota; Marshall Chrysler Jeep Dodge, LLC; Patchogue 112 Motors LLC d/b/a Stevens Ford; Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC; Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram; Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram; and Warrensburg Chrysler Dodge Jeep, L.L.C. ("Dealership Class Plaintiffs"), dated May 25, 2018, and a single additional Request served on June 13, 2018.

## GENERAL OBJECTIONS

1.     Reynolds asserts each of the following objections (the "General Objections") to Dealership Class Plaintiffs' Requests. In addition to these General Objections, Reynolds may also state specific objections to a Request where appropriate. By setting forth such additional specific objections, Reynolds does not in any way intend to limit or restrict its General Objections. Moreover, to the extent Reynolds provides a response to any of Dealership Class Plaintiffs' Requests to which Reynolds objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.     Nothing herein shall be construed as an admission by Reynolds regarding the competence, admissibility, or relevance of any fact or document, or as an admission of the truth or accuracy of any characterization or document of any kind sought by Dealership Class Plaintiffs' Requests. Reynolds reserves its right to challenge the competency, relevance, materiality, and admissibility of any documents Individual Plaintiffs produce in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action. Further, Reynolds intends no incidental or implied admissions by its answers to Dealership Class Plaintiffs' Requests. Whether Reynolds answers or objects to any particular Request should not be interpreted as an admission that Reynolds accepts or admits the existence of any fact(s) set out or assumed by such Request, that the Requests are proper, that Reynolds's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether Reynolds answers part or all of any particular Request is not intended and

should not be construed as a waiver by Reynolds of any or all objections to such Request or any other Request.

3.     Reynolds objects to the Requests, definitions, and instructions to the extent that they purport to impose any obligations on Reynolds beyond the obligations imposed by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order. In responding to these Requests, Reynolds does not assume any burden not imposed by the Federal Rules, Local Rules, or applicable Court Orders.

4.     Reynolds objects to the Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome. The limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). As a general matter, Reynolds objects to production of documents prior to January 1, 2013. Any production that includes documents prior to January 1, 2013 is expressly not intended to waive Reynolds's position as to the relevant time period for the purposes of any request or category of documents.

5.     Reynolds objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of Reynolds; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "Privileged Documents or Information"). Reynolds does not intend

to disclose or produce any Privileged Documents or Information. Any disclosure of Privileged Documents or Information in response to any of the Requests is inadvertent and shall not be deemed a waiver of any applicable privileges or protections.

6.     To the extent Requests seek information and/or documents that are confidential or otherwise proprietary in nature, Reynolds shall only produce such information subject to the other considerations set forth in Federal Rule of Civil Procedure 26(b)(1), the terms of the Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Case No. 18-cv-864, Dkt. No. 104), and the contractual rights of any third parties whose confidential information is implicated by the Requests.

7.     Reynolds objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of Reynolds's employees and other persons, including individuals who are not parties to this litigation. Reynolds reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation (including government agencies), including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that Reynolds may produce.

8.     No statement that Reynolds will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that Reynolds will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

9.      To the extent Reynolds has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found. Similarly, Reynolds reserves the right to use electronic searching techniques, including but not limited to the use of agreed upon search terms, to avoid the need to manually inspect every potentially responsive document.

10.      Reynolds's responses to the Requests are based on its present knowledge, upon a reasonable inquiry. Discovery is ongoing, and Reynolds's investigation continues. Reynolds reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

11.      To the extent Reynolds has objected to or refused to produce documents or information in response to any given Request, and to the extent that Dealership Class Plaintiffs take issue with any such objection or refusal, Reynolds is willing to meet-and-confer with Dealership Class Plaintiffs and Co-Lead Counsel in the MDL to see if a reasonable, mutually-acceptable compromise might be reached.

12.      Reynolds objects to the extent that Dealership Class Plaintiffs' Requests are duplicative and/or cumulative of prior Requests for Production from Individual Plaintiffs or Authenticom, Inc. ("Authenticom"), and to the extent the Requests seek to end-run or undo specific agreements that have already been reached with Authenticom.

13.      Reynolds objects to the extent that any Dealership Class Plaintiff who has not asserted claims against Reynolds in this action, or who purports to represent a class that is not asserting claims against Reynolds, is purporting to request documents from Reynolds through a Request served under Rule 26.  For such Plaintiffs and/or the class or classes they purport to

represent, Reynolds is a third party, and a request for documents from Reynolds can only be accomplished through a properly served Rule 45 subpoena. Furthermore, Reynolds, as a third party, would be entitled to greater protection when responding to a Rule 45 subpoena, and any such Plaintiff would need to overcome a greater burden and relevance standard to justify its Requests to Reynolds. To the extent that Reynolds responds to any such Request, it does not intend to waive, and expressly preserves, these objections and protections.

14.     Reynolds expressly reserves all applicable rights, if any, to arbitrate any claim by any Plaintiff or dealership, and does not intend to waive any such rights by responding to any Request.

15.     Reynolds incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Reynolds objects to each and every "Definition" set forth in the Requests, including "all," "any," "and," "or," "communication," "document," "documents," "including," "meeting," "person," "persons," "relating to," "related to," "referring to," "regarding," and "with respect to" to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on Reynolds broader than or inconsistent with the obligations created by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order. Reynolds will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     Reynolds objects to the definitions of "Reynolds," "you," "your" and "your company" as overly broad and unduly burdensome to the extent they purport to require Reynolds to produce information and/or documents beyond Reynolds's possession, custody, or control. In

addition, Reynolds objects to these definitions to the extent they purport to require Reynolds to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on Reynolds's behalf.

3.     Reynolds objects to the definition of "data access policies" in so far as Reynolds does not provide dealers with "the ability . . . to authorize independent integrators to access data on the DMS or otherwise grant third parties access to their data on the DMS." To the extent that Reynolds responds to Requests that reference "data access policies," it does not mean that Reynolds agrees with or accepts Dealership Class Plaintiffs' definition or that Reynolds provides any such authorization.

4.     Reynolds objects to the definition of "data integrators" in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as Reynolds uses and understands the term. To the extent that Reynolds responds to Requests that reference "data integrators," it does not mean that Reynolds agrees with or accepts Individual Plaintiffs' definition.

5.     Reynolds objects to the definition of "data integration services" or "DIS" or "third party integrators" to the extent that the definition encompasses activities other than data integration services as Reynolds uses and understands that term. To the extent that Reynolds responds to Requests that reference "data integration services" or "DIS" or "third party integrators," it does not mean that Reynolds agrees with or accepts Dealership Class Plaintiffs' definition.

6.     Reynolds objects to the definitions of " "DMS Market" as inaccurate, irrelevant, assuming facts and legal conclusions, and calling for premature expert analysis. Reynolds does not agree that there is a relevant market for antitrust purposes that is limited to "the market for the provision of DMS services to new car franchised automobile dealers."  Non new car dealers also use DMS.  Therefore, DMS providers serving non new car dealers and non automotive dealers (e.g., off-highway vehicles, motorcycles, watercraft and powersports) are potentially part of a relevant DMS market as well.  Reynolds similarly objects to the extent that the definition of "DMS" is intended to only encompass DMS for new car franchised automobile dealers.

7.     Reynolds objects to Authenticom's purported "Instructions," including Instructions No. 1 through 18 and Definitions 28 and 29 (which only state instructions and do not define anything), to the extent that they purport to impose obligations on Reynolds broader than or inconsistent with the obligations created by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order, including the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (Case No. 18-cv-864, Dkt. No. 105). Reynolds will produce ESI responsive to these Requests in accordance with that Stipulation.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION
## REQUEST FOR PRODUCTION NO. 1:

All documents relating to Third Party Integrators' (including DMI's and IntegraLink's) access to data on the Reynolds DMS. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)     all documents and communications between Third Party Integrators and Reynolds regarding third party access to the Reynolds DMS;

(b)     the technological means by which Third Party Integrators access or accessed the Reynolds DMS;

(c)     the technological means by which Reynolds has either blocked (or attempted to block) or permitted Third Party Integrators' access to the Reynolds DMS;

(d)     all documents regarding Third Party Integrators' access to the Reynolds DMS;

(e)     all documents and communications with Vendors or Dealers regarding Third Party Integrators' access to the Reynolds DMS;

(f)     all documents sufficient to show which of Reynolds' Dealer customers utilized Third Party Integrators (as opposed to the RCI program) to provide access to their Reynolds DMS data, including the time period during which each Dealer utilized a Third Party Integrator; and

(g)     all documents relating to any Third Party Integrator's wind down of its access to data on the Reynolds DMS.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests by Authenticom and/or Individual Plaintiffs.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents relating to third party integrators' "access to data on the Reynolds DMS," regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation.  For instance, examples (b), (c) and (d) are overbroad and irrelevant in that the technological means by which

access or blocking of access occurs makes no difference to the claims or defenses in this case. Either the decision to block was unlawful or it was not, how the blocking happened is irrelevant. In addition, example (f) makes no sense because Reynolds has no way of knowing what non-Reynolds integrators third parties may or may not be using, and this information was deliberately concealed from Reynolds. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

All documents regarding any cooperation, coordination, joint effort, assistance, exchange of information or technical knowhow, or any other type of collaboration between Reynolds and

CDK in blocking any Third Party Integrators' access to Dealer data on their respective DMS platforms. There is no date limitation for this Request.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 2</u>:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative. Reynolds objects that this Request is duplicative and almost completely identical, word for word, to Authenticom Request No. 12. It also seeks information that is not relevant to the claims or defenses in this case in that it has no date limitation. the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 3:**

All documents regarding any VPN tunnel (or other direct access, *i.e.*, access that does not require the use of login credentials) that Reynolds provided to Third Party Integrators for accessing Dealer data on the Reynolds DMS, including any decision to rescind such access to a Third Party Integrator. There is no date limitation for this request.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Reynolds objects to this Request on the grounds that it is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents relating to "any VPN tunnel" Reynolds provided to third party integrators, with no date limitation. The Dealership Class Plaintiffs have not asserted any antitrust claims based on Reynolds providing a VPN tunnel to third party integrators. There is no alleged conspiracy or monopolization based on purported Reynolds VPN tunnels. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to Reynolds blocking or disabling any Third Party Integrators' access to the Reynolds DMS, including without limitation all documents relating to the technological methods used by Reynolds to block or disable Dealer-provided login credentials, or otherwise block or disable Third Party Integrators' access to the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Request Nos. 1 and 2. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents relating to "blocking or disabling," regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. Specifically, "documents relating to the technological methods used by Reynolds to block or disable" are overbroad and irrelevant in that the technological means by which access or blocking of access occurs makes no difference to the claims or defenses in this case. Either the decision to block was unlawful or it was not, how the blocking happened is irrelevant. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it

seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 5:**

All documents, communications, and statements regarding Reynolds' policies concerning any changes to Reynolds' or other DMS providers' data access policies. There is no date limitation for this Request.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks not only certain policies, but all documents, communications and statements regarding those policies, regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation.  The limitations

period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 6:**

All documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including the CDK DMS. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)    all communications with Dealers or Vendors, representations to Dealers or Vendors, or statements relating to Dealers or Vendors regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including CDK DMS;

(b)   all statements regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including CDK DMS; and

(c)   all documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including CDK DMS.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Request Nos. 1 and 2. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents relating to the "ability" of dealers to authorize, or vendors to use, third party integrators to access data on a non-Reynolds DMS, regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. Potentially anything could relate to whether dealers or vendors have such an "ability." Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications from Reynolds to former Dealer customers regarding the differences or similarities between Reynolds and CDK with respect to data access policies. For the avoidance of doubt, this Request includes, without limitation, any documents or communications in which Reynolds marketed its closed access policy as a point of differentiation with the CDK DMS or with other DMS providers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Request No. 6.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications regarding the differences or similarities between Reynolds and CDK with respect to data access policies, regardless of whether they relate to any of the claims or defenses in the case, and with no date limitation.  Reynolds objects that this could potentially encompass anything communication from Reynolds to a dealer regarding data access.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they

filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

All documents regarding the ability of Dealers to extract their data from the Reynolds DMS manually (whether using the Dynamic Reporting tool or otherwise), including when that capability was instituted; the means by which data is extracted; how the means to extract data manually changed, if they changed at all, over the Relevant Time Period; how often Dealers extract their own data for purposes of providing the data to Vendors; how the use of this functionality (*i.e.*, the incidence of its use) has changed over the Relevant Time Period, if at all; and the means by which Dealers send their manually-extracted data to Vendors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests.  Reynolds objects that this Request is duplicative and almost completely identical, word for word, to Authenticom Request No. 27.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents and communications" regarding manual extraction of data from DMS, regardless of whether they relate to any of the claims or defenses in the case, and with no date limitation.  Moreover, by its terms, the Request seeks documents that would be in the custody or control of dealers—not Reynolds.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied

to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning any other DMS provider. For the avoidance of doubt, this Request includes:

(a)    all documents concerning any other DMS provider's DMS and/or DMS services;

(b)    all documents concerning the system architecture of any other DMS or DMS provider, including but not limited to the technological aspects for retrieving data from any other DMS, blocking of third party access to other DMS, or any other relevant technological matter to the claims and defenses in this case; and

(c)    all documents concerning competition within the DMS or Data Integration

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests.  Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" "concerning any other DMS provider," regardless of whether they relate to any of the claims or defenses in the case, and with no date limitation.  Reynolds objects that as phrased, this Request is so broad that it would encompass a significant number of other Requests from the Dealership Class Plaintiffs, Individual Plaintiffs, and Authenticom. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013

for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 10:**

All documents concerning any of Reynolds' DMS customers switching or attempting to switch to a different DMS provider, including the time and expense associated with changing or switching DMS providers, as well as all documents concerning any of Reynolds' DMS customers who have discontinued use of Reynolds' services since January 1, 2014. For avoidance of doubt, this Request includes, without limitation:

(a)     all documents concerning any litigation or threatened litigation resulting from such a switch or attempted switch;

(b)     all documents concerning restricting access to a former customer's Reynolds DMS data or threatening to restrict access to a customer's Reynolds DMS data if it switched to a new DMS provider;

   (c)  all documents concerning customers who have had a contract with Reynolds for DMS and/or DMS services and that contract was not renewed from January 1, 2014 to the present; and

   (d)  documents concerning customers who have had a month to month contract with Reynolds at any time from January 1, 2014 to present, regardless of whether that customer is a current Reynolds customer.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

  Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that examples (c) and (d) effectively seek all documents relating to certain Reynolds customers, regardless of whether they relate to any of the claims or defenses in the case. Reynolds objects that the requested documents are in the possession of the dealers themselves. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

  Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents concerning any of Reynolds' DMS customers switching or attempting to switch to a different DMS provider.

**REQUEST FOR PRODUCTION NO. 11:**

All documents regarding any gain or potential gain of DMS customers in connection with the "SecurityFirst" initiative, "3PA Refresh," and/or CDK's decision to restrict dealers from using third party integrators or otherwise restrict access to Dealer's DMS data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" without any date limitation. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

## REQUEST FOR PRODUCTION NO. 12:

All documents concerning any provision in Reynolds' RCI contracts (or any other Vendor contracts) that provide for automatic renewal or extension of such contracts.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning automatic renewal provisions in RCI contracts, without any date limitation. Automatic renewal or extension provisions in RCI contracts have no bearing on the claims or defenses in the Dealership Class Plaintiffs' case. It would not be proportional to the needs of the case to require Reynolds to produce every RCI contract with an automatic renewal provision and every document concerning those provisions. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 13:**

All current signed Master Services Agreements and/or contracts, agreements, and/or written understandings between Reynolds and its Dealer customers. Each agreement should include all documents that comprise the DMS contract between Reynolds and the Dealer, including any user guides, addendums, exhibits, and other documents that form the agreement between Reynolds and its Dealer customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It would not be proportional to the needs of the case to require Reynolds to produce every single Master Services Agreement or other contract with a dealer. Moreover, Reynolds objects to gathering and producing "addendums, exhibits, and other documents" that are not relevant to any claims or defenses in the case. Furthermore, these documents are in the possession of the dealers themselves. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).

Reynolds additionally objects to the extent that it has arbitration agreements with any

Dealership Class Plaintiffs or purported class members on the grounds that this Request is

improper as to any such dealership.  For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this

Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds states that it

will produce non-privileged documents sufficient to show its standard dealer Master Agreement

and Customer Guide form contract documents from 2009 to the present.

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning any provision in Reynolds' DMS contracts that provide for

automatic renewal or extension of Reynolds' DMS contracts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case.  It is duplicative and cumulative of

Dealership Class Plaintiffs' Request No. 15. It also seeks information that is not relevant to the

claims or defenses in this case and fails to describe the items sought with reasonable

particularity to the extent it effectively seeks "all documents" concerning automatic renewal

provisions in DMS contracts, without any date limitation.   Automatic renewal or extension

provisions in DMS contracts have no bearing on the claims or defenses in the Dealership Class

Plaintiffs' case.  It would not be proportional to the needs of the case to require Reynolds to

produce every DMS contract with an automatic renewal provision and every document

concerning those provisions. Furthermore, these documents are in the possession of the dealers

themselves. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to produce a representative sample of automatic renewal or extension terms in DMS contracts.

**REQUEST FOR PRODUCTION NO. 15:**

All documents with respect to any changes or proposed changes to material terms in the Reynolds DMS contract, including with respect to the use of Third Party Integrators; and automatic renewal and/or extension of the contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning changes or proposed changes to "material terms" in Reynolds DMS contracts, without any date limitation.

The Request is vague in that it does not define "material" and provides no way to determine what is material and what is not material. In additional, automatic renewal or extension provisions in DMS contracts are not relevant and have no bearing on the claims or defenses in the Dealership Class Plaintiffs' case. Nor are such provisions "material" to DMS contracts. It would not be proportional to the needs of the case to require Reynolds to produce every DMS contract with an automatic renewal provision and every document concerning those provisions. Furthermore, these documents are in the possession of the dealers themselves. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to produce a representative sample of DMS contracts reflecting changes in the provisions relating to use of third party integrators.

**REQUEST FOR PRODUCTION NO. 16:**

All documents sufficient to show (1) which Dealers use or used a Reynolds DMS; (2) when each Dealer customer first used a Reynolds DMS; (3) how long each Dealer customer's tenure as

a client of Reynolds has lasted; and (4) if any Dealer no longer uses a Reynolds DMS, when Dealer

ceased using the DMS provider. For the avoidance of doubt, Reynolds shall provide the above

information for any Dealer that was a customer of Reynolds at any time during the Relevant Time

Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, not proportional to the needs of the case, and seeks irrelevant material.  Reynolds

also objects to the extent that this Request asks Reynolds to create documents that do not exist

in the ordinary course of business.  Reynolds does not systematically track DMS tenure

information in a comprehensive fashion. Also, the limitations period applicable to Dealership

Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013

for the earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it

seeks documents protected from disclosure by the attorney-client privilege, the work product

doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any

Dealership Class Plaintiffs or purported class members on the grounds that this Request is

improper as to any such dealership.  For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this

Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds refers

Dealership Class Plaintiffs to Reynolds' Response to Authenticom's Interrogatory No. 2, and the

materials cited therein.

**REQUEST FOR PRODUCTION NO. 17:**

All documents sufficient to show the monthly pricing for DMS services paid by each Dealer customer identified in Request No. 16.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds objects that this Request is duplicative and cumulative of other Requests, including Request No. 18 below. Reynolds also objects to the extent that this Request asks Reynolds to create documents that do not exist in the ordinary course of business. Reynolds' transactional data for purchases by dealers only goes back to August 2014. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to its transaction-level data from Aug. 2014 – Oct. 2017 for products purchased by its dealer customers and a data dictionary explaining the

"Billing Company" and "Billing Entity" values that appear in the data, bates numbered

REYCID0137882–REYCID0137921.

**REQUEST FOR PRODUCTION NO. 18:**

All documents relating to any change in the pricing for DMS services paid by Reynolds'

Dealer customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case. Reynolds objects that this Request is

duplicative and cumulative of other Requests, including Request No. 17 above. It is also

overbroad and fails to describe the items sought with reasonable particularity to the extent it

effectively seeks "all documents." Also, the limitations period applicable to Dealership Class

Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the

earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks

documents protected from disclosure by the attorney-client privilege, the work product doctrine,

or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any

Dealership Class Plaintiffs or purported class members on the grounds that this Request is

improper as to any such dealership. For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this

Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as

follows: Reynolds refers Dealership Class Plaintiffs to its transaction-level data from Aug. 2014

– Oct. 2017 for products purchased by its dealer customers and a data dictionary explaining the "Billing Company" and "Billing Entity" values that appear in the data, bates numbered REYCID0137882–REYCID0137921.

**REQUEST FOR PRODUCTION NO. 19:**

All documents sufficient to show the total number of Dealers (both by Dealership group and by rooftop) that used a Reynolds DMS, broken down on a month-by-month basis.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds also objects to the extent that this Request asks Reynolds to create documents that do not exist in the ordinary course of business. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds refers Dealership Class Plaintiffs to Reynolds' Response to Authenticom's Interrogatory No. 2, and the materials cited therein.

**REQUEST FOR PRODUCTION NO. 20:**

All documents sufficient to show the cost of Reynolds providing DMS services separate and apart from providing Data Integration Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is also vague and does not describe the materials requested with reasonable particularity. Reynolds does not fully allocate its costs and therefore does not have documents sufficient to show the requested information. Reynolds also objects to the extent that this Request asks Reynolds to create documents that do not exist in the ordinary course of business. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to any Dealer that once obtained DMS services from Reynolds, but no longer does, including documents sufficient to show the reasons why those Dealers no longer obtain DMS services from Reynolds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Dealership Class Plaintiffs' Request No. 10. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that it seeks "all documents," without any date limitation. Reynolds objects that the requested documents are in the possession of the dealers themselves. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to Reynolds' Response to Authenticom's Interrogatory No. 2, and the materials cited therein.

**REQUEST FOR PRODUCTION NO. 22:**

Documents sufficient to show any up-front initiation fees, per-dealership setup or installation fees, per-transaction fees, or other one-time charges that Reynolds has charged to its Dealer customers for DMS services, broken down on a Dealer-by-Dealer basis. This Request includes documents sufficient to show when these fees or charges were instituted; why they were instituted; their amounts; and by how much they increase a Dealer's monthly DMS fees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that it seeks documents without any date limitation, and to the extent it seeks documents showing "why" every DMS fee or charge, to any dealer, ever, was instituted. Reynolds objects that the requested documents are in the possession of the dealers themselves. Reynolds also objects to the extent that this Request seeks to require Reynodls to create documents that do not exist in the ordinary course; Reynolds tracks certain aspects of DMS fees and charges but not others, and it cannot produce what it does not track. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to its transaction-level data from Aug. 2014 – Oct. 2017 for products purchased by its dealer customers and a data dictionary explaining the "Billing Company" and "Billing Entity" values that appear in the data, bates numbered REYCID0137882–REYCID0137921.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to the pricing charged by other DMS providers, including but not limited to CDK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that it seeks "all documents" relating to other DMS providers' prices, without any date limitation. Reynolds objects that information and documents concerning other DMS providers' prices are in the possession of the dealers themselves or can be obtained from those DMS providers. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present concerning pricing charged by other DMS providers.

**REQUEST FOR PRODUCTION NO. 24:**

All documents concerning restrictions on Vendors' use of Third Party Integrators to access DMS data on Reynolds systems. For the avoidance of doubt, this Request includes, without limitation, all documents concerning any provision in Reynolds' RCI or Vendor contracts that limit the ability of Vendors to use Third Party Integrators to access data on Reynolds DMS systems or otherwise require that Vendors use RCI to access data on Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Requests Nos. 1 and 2 above. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" relating to certain restrictions on access to DMS data, without any date limitation. The fact that Reynolds did not permit or authorize use of third party integrators to

access a Reynolds DMS is not in dispute.  It would not be proportional to the needs of the case to require Reynolds to produce every RCI contract with a provision restricting the use of third party integrators, and every document concerning those provisions.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present concerning Reynolds's restrictions on vendors' use of third party integrators to access data on a Reynolds DMS.  Reynolds is also willing to meet and confer to explore whether a mutually acceptable compromise can be reached to provide a representative sample of RCI contract provisions containing such restrictions.

**REQUEST FOR PRODUCTION NO. 25:**

All documents sufficient to show what each Vendor paid for Data Integration Services on a month-by-month basis until they stopped using IntegraLink and/or DMI for each month of the

Relevant Time Period. For the avoidance of doubt, if any Vendor so identified no longer obtains Data Integration Services from IntegraLink or DMI, provide documents and documents sufficient to show when they stopped and what they paid when they stopped.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

This Request appears to have been mistakenly directed at Reynolds and obviously requests CDK documents as opposed to Reynolds documents. Reynolds reserves all rights and objections in connection with this Request, including all General Objections noted above.

**REQUEST FOR PRODUCTION NO. 26:**

All documents concerning restrictions on Dealers' ability to allow third parties to access data on the Reynolds DMS systems. For the avoidance of doubt, this Request includes, without limitation:

(a)    all documents concerning any restrictions on Dealers' use of Third Party Integrators to access DMS data on Reynolds systems;

(b)    all documents concerning any provision in Reynolds' DMS contracts that limit the ability of Dealers to use Third Party Integrators to access data on Reynolds DMS systems;

(c)    all documents and communications with Dealers relating to whether they can (or cannot) authorize Third Party Integrators to access data on the Reynolds DMS, including any communications that cite provisions in a particular DMS contract to that effect;

(d)    all documents relating to the enforcement or threat of enforcement of Reynolds' DMS contract against Dealers with respect to third-party access to data on the Reynolds DMS; and

     (e)    all documents relating to Dealer rights under DMS contracts to authorize third parties to access data on the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Authenticom Request Nos. 22 and 23. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" relating to "restrictions" on dealers' "ability" to allow third parties to access data on a Reynolds DMS, without any date limitation. Dealers do not have any "ability" to authorize third party integrators or other third parties to access a Reynolds DMS, because only Reynolds, as the owner of the Reynolds DMS, can provide such authorization. To the extent this Request assumes contrary facts, Reynolds objects. Also, the fact that Reynolds did not permit or authorize use of third party integrators to access a Reynolds DMS is not in dispute. It would not be proportional to the needs of the case to require Reynolds to produce every document potentially relating to this topic. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 27:**

All documents sufficient to show the technological aspects of:

(a) how data extraction occurs from the DMS database when using Third Party Integrators;

(b) extracting data for Third Party Integrators differs from those for (i) DMI or IntegraLink or (ii) participants of the 3PA program;

(c) how manual extraction of data occurs from the DMS database; and

(d) how the technological aspects of manually extracting data from the DMS database differs from the technological aspects of extracting data for (i) DMI or IntegraLink or (ii) participants of the 3PA program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" "sufficient to show the technological aspects" associated with extracting data from a DMS, and with no date limitation.

The Request is vague and it is not clear what is meant by "the technological aspects." Reynolds objects that, as written, this would potentially require handing over, among other things, the source code for Reynolds' DMS and data extraction tools. The Request is also overbroad and irrelevant in that the technological means by which data extraction occurs makes no difference to the claims or defenses in this case. In addition, examples (b) and (d) appear to have been mistakenly directed at Reynolds and obviously request CDK documents as opposed to Reynolds documents, suggesting that the entire Request may be mistakenly directed at Reynolds. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

**REQUEST FOR PRODUCTION NO. 28:**

All documents regarding Reynolds' use of any Third Party Integrator, including but not limited to Authenticom, for Data Integration Services. For the avoidance of doubt, this Request includes any instance in which a Reynolds-owned (wholly, jointly, or partially) add-on application used a Third Party Integrator for Data Integration Services with respect to any DMS platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" regarding Reynolds' use of a third party integrator, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Whether Reynolds ever used a third party integrator is not relevant to whether Reynolds and/or CDK violated any antitrust laws or whether their conduct harmed Dealership Class Plaintiffs. It would not be proportional to the needs of the case to require Reynolds to produce every document potentially relating to this topic. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied

to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 29:**

All documents regarding data security and/or DMS system performance with respect to any Third Party Integrator's access to the Reynolds or CDK DMSs. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)     all documents relating to the effect of Third Party Integrators' access to the Reynolds DMS on the performance of the Reynolds DMS;

(b)     all documents relating to any data security incidents caused by Third Party Integrators' access to the Reynolds DMS; and

(c)     all documents relating to any specific system performance issue that was or is directly attributable to third parties' access to the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Authenticom Requests 66-68. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" regarding data security and/or system performance vis-à-vis every single third party integrator's hostile access of Reynolds's DMS from the beginning of time to the present. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this

Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 30:**

All documents sufficient to show how Dealer data is stored on the Reynolds DMS. For the avoidance of doubt, this Request includes, without limitation:

(a)    all documents sufficient to show whether a Dealer's data is stored separate from the data of other Dealers;

(b)    all documents sufficient to show whether a Dealer's data is commingled with data that does not belong to the Dealer;

(c)    all documents sufficient to show where Dealer data is stored (whether on servers at the Dealership, at Reynolds-managed server farms, at third-party managed server farms, or at some other location, or in some other manner); and

(d)     all documents sufficient to show how the storage of Dealer data may have

changed over the Relevant Time Period.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case.  It is duplicative and cumulative of

other Requests, including Authenticom Request No. 70.  In fact, a substantial portion of this

Request is nearly identical, word for word, to Authenticom Request No. 70.  Reynolds objects to

the extent that this Request seeks to end-run or undo agreements that have already been reached

with Authenticom regarding a response.  Reynolds objects that this Request seeks information

that is not relevant to the claims or defenses in this case and fails to describe the items sought

with reasonable particularity to the extent it effectively seeks "all documents sufficient to show"

how dealer data is stored on a Reynolds DMS, from the beginning of time to the present.   It is

not entirely clear if this Request seeks all documents or documents sufficient to show.   Reynolds

objects that, as written, this would potentially require handing over, among other things, the

source code for Reynolds' DMS.   This is grossly overbroad and irrelevant in and makes no

difference to the claims or defenses in this case, while subjecting Reynolds to enormous risk in

that the most critical, competitively sensitive details surrounding its most important crown jewel,

the Reynolds DMS, would need to be disseminated to counsel for numerous parties in this case

for no reason.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at

most, four years from the date they filed suit – October 19, 2013 for the earliest case filed

(Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected

from disclosure by the attorney-client privilege, the work product doctrine, or other applicable

privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached regarding a response in the form of a interrogatory.

**REQUEST FOR PRODUCTION NO. 31:**

All documents sufficient to show the specific changes to security measures instituted by Reynolds to protect security of Dealer data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Authenticom Request No. 71. Reynolds objects to the extent that this Request seeks to end-run or undo agreements that have already been reached with Authenticom regarding a response. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents sufficient to show" from the beginning of time to the present. It is not entirely clear if this Request seeks all documents or documents sufficient to show. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the

earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 32:**

All documents referencing, relating to, or concerning the National Automobile Dealers Association in connection with Dealer data or data security, including, but not limited to, an August 28, 2013 memo of the National Automobile Dealers Association sent to members concerning Dealer data guidance and a 2014 memo entitled, "10 Steps Dealers Need To Take To Protect 'Dealer Data.'"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Authenticom Request No. 73. Reynolds objects to the extent that this

Request seeks to end-run or undo agreements that have already been reached with Authenticom regarding a response. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" from the beginning of time to the present that relate to both the National Automobile Dealers Association and "dealer data" or "data security." These are vague and overbroad concepts and the Request, as phrased, will encompass numerous irrelevant materials that make no difference to the claims or defenses in this case. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 33:**

All documents demonstrating the attendance or participation of a Reynolds representative at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, diary entries, and travel, accommodation, and restaurants receipts, or any other documentation evidencing reimbursement for attendance at the conference or convention.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 65. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" from the beginning of time to the present "demonstrating" mere "attendance" or "participation" by any Reynolds representative at any "conference or convention where customers or potential customers attended." This is grossly overbroad and will encompass numerous irrelevant materials that make no difference to the claims or defenses in this case. For example, if any of Reynolds' thousands of employees attended any convention on any topic, and any customer or potential customer also attended that convention, this Request would encompass those situations. Reynolds would need to interview each employee and former employee to determine each and every convention ever attended by that employee, and then somehow obtain a complete registration or attendance list for each such convention and then determine if any other attendee was an employee of a customer or potential customer of Reynolds. It is not

proportional to the needs of the case for Reynolds to undertake such a burden, and it would be impossible to do so within any reasonable time period and certainly not the time periods set forth in the Court's schedule. The examples given in the Request, for things like "restaurant receipts" and "diary entries," only further illustrate the gross overbreadth and harassing nature of this Request. A restaurant receipt is not going to make any difference to the claims or defenses in this case. The fact of meetings and communications between Reynolds and its customers, and between Reynolds and CDK, is not in dispute. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

## REQUEST FOR PRODUCTION NO. 34:

All documents produced, used or distributed at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer

Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, videos, emails and any other materials used to inform, instruct and/or train Reynolds representatives to market any of Reynolds' services to Dealers at any convention, meeting, gathering or informational events that would at any time include current or potential CDK customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 65. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" "used" at any conference attended by "customers or potential customers," without regard to relevance and without any date limitation. This is grossly overbroad and will encompass numerous irrelevant materials that make no difference to the claims or defenses in this case. It is not proportional to the needs of the case for Reynolds to undertake such a burden. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 35:

Any Civil Investigative Demand served on Reynolds pertaining to alleged anticompetitive conduct and/or acquisitions by CDK and/or Reynolds. For avoidance of doubt, this request is for the Civil Investigative Demand itself and any attachments.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and is overbroad in that it contains no date limitation. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds has already produced the Civil Investigative Demand served on Reynolds in the FTC's joint conduct investigation. Reynolds is willing to meet and confer with Plaintiffs regarding the discoverability of the Civil Investigative Demand served on Reynolds in the FTC's Automate merger investigation.

**REQUEST FOR PRODUCTION NO. 36:**

All documents concerning Reynolds sales data and information, including but not limited to invoices, relating to any data integrators or the following Vendors: TrueCar, Carfax, Autotrader, Cars.com, vAuto, Dealer.com, DealerSocket, RouteOne, NakedLime and DealerRater, and/or any of their subsidiaries, affiliates or related entities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds also objects to the extent that this Request is duplicative and cumulative of other Requests, and/or seeks to end run or undo agreements that have already been reached. Specifically, Reynolds and Authenticom previously reached agreement on the production of RCI pricing information, and pursuant to that agreement, Reynolds ultimately produced certain RCI pricing information bates numbered REYMDL0037507. REYMDL0037507 shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees). The Request is also duplicative and cumulative of Dealership Class Plaintiffs' Request No. 44.

Producing invoices is unduly burdensome and not proportional to the needs of the case in light of the fact that RCI pricing information is already available via REYMDL0037507.

Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "Reynolds sales data and information," for certain entities without regard to relevance and without any date limitation. This is grossly overbroad and potentially encompasses every document relating to any of the listed entities, as any such document may have "information" broadly relating to sales. It is not proportional to the needs of the case for Reynolds to undertake such a burden. Furthermore, several specific entities identified in this Request are affiliated with Individual Plaintiffs, and the information can be obtained more easily from Individual Plaintiffs, who have been and should be coordinating with Dealership Class Plaintiffs on discovery. Furthermore, Reynolds also has no way of determining who all of the "subsidiaries, affiliates or related entities" are for all of the entities identified in the Request. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds refers Dealership Class Plaintiffs to REYMDL0037507, which shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees).  Reynolds is willing to further meet and confer regarding this Request.

## REQUEST FOR PRODUCTION NO. 37:

All documents exchanged between Reynolds and CDK and any Vendor relating to changes in data integration fees impacting (or potentially impacting) Vendors' prices and fees to Dealerships. This includes but is not limited to any documents or communications that relate in any way to Vendors increasing their prices and fees to Dealerships as a result of increases in data integration fees charged by Reynolds and/or CDK.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "any documents or communications that relate in any way" to the topic of pass-through, without any date limitation. This is grossly overbroad.  Reynolds has no way of knowing or tracking whether and to what extent each vendor increases its price to a dealer, and for what reason.  It is not clear how Reynolds would identify documents related to this; not every vendor price increase or discussion

of a possible vendor price increase is responsive. It is not proportional to the needs of the case for Reynolds to undertake such a burden. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present relating to the extent to which vendors pass on integration fees to dealers.

**REQUEST FOR PRODUCTION NO. 38:**

All documents concerning Reynolds's actual and projected financial results on a weekly, monthly, quarterly and/or yearly basis during the Relevant Time Period, including but not limited to:

        (a)     internal projections;

        (b)     profit and loss statements, analyses or projections;

      (c)      cost analyses or projections;

      (d)      analyses or projections of gross margins;

      (e)      budgets;

      (f)      marketing plans;

      (g)      business plans or other planning documents; and

      (h)      financial statements, including any filings with governmental agencies or presentations to banks or other financial institutions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 75. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" concerning "projected financial results," regardless of whether they relate to any of the claims or defenses in the case. The Request is not even limited to DMS or RCI. This is grossly overbroad and it is not proportional to the needs of the case for Reynolds to undertake such a burden. Reynolds objects that the requested categories of documents have no relevance to the claims or defenses in this case, particularly (b), (c), (d) and (h). Furthermore, Reynolds objects to the extent that this Request seeks to force Reynolds to create documents that do not exist in the ordinary course. Reynolds may or may not have each of the requested categories of documents on a weekly, quarterly, monthly, and/or yearly basis, as requested. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present that analyze or evaluate Reynolds' RCI or DMS business.

**REQUEST FOR PRODUCTION NO. 39:**

All documents concerning Reynolds's policies and/or practices directed at compliance with the United States antitrust laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 68. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" concerning Reynolds' antitrust policies and practices, regardless of whether they relate to any of the claims or defenses in the case, and without limitation as to time. General antitrust compliance programs or policies are not at issue in this case. Antitrust is a broad field of law that encompasses many issues not at

issue in this case. The details of a general antitrust training program or policy have no bearing on any claims or defenses in this case. The Request is not even limited to DMS or RCI. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Reynolds further objects to this Request because it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. Reynolds objects that it would not have any documents related to antitrust policies or practices from January 1, 2013 to the present that are not privileged from disclosure by the attorney-client privilege or the attorney work product doctrine. Even if it did, it would not be proportional to the needs of the case to undertake the burden of sifting through all of the privileged material and creating a privilege log in the hopes that Reynolds might find a non-privileged document responsive to this Request.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents not protected by the attorney-client privilege or attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 40:**

All documents concerning any insurance policies, indemnification agreements or hold harmless agreements that may provide coverage for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made or costs incurred in defense of this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Reynolds is not currently aware of any such documents.

**REQUEST FOR PRODUCTION NO. 41:**

All documents concerning CDK's policies and/or practices regarding the retention, destruction, disposal, and/or preservation of documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" concerning any "practice[]" regarding "retention, destruction, disposal, and/or preservation" of documents, without any date limitation. These issues are not relevant to any claim or defense in this case. Furthermore, the Request refers to CDK's practice, not Reynolds, indicating that the Request was mistakenly directed at Reynolds. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is

improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds previously produced its written document retention policy and refers Dealership Class Plaintiffs to that document.

**REQUEST FOR PRODUCTION NO. 42:**

All documents concerning the potential for entities to enter into the market for the supply of DMS, including the potential for such entry and the barriers or obstacles for such entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "the potential" for any entity to enter "the market for the supply of DMS" and without any date limitation. Reynolds objects that the Request is vague in that "the market for the supply of DMS" is not defined. Reynolds objects to the extent this Request assumes a DMS market that is limited to franchise new car dealers as opposed to all cars and vehicles, new or used, and further objects that issues of market definition and barriers to entry are expert discovery issues. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from

disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 43:**

All documents concerning the potential for entities to enter into the market for the supply of DIS, including the potential for such entry and the barriers or obstacles for such entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "the potential" for any entity to enter "the market for the supply of DIS" and without any date limitation. Reynolds objects that the Request is vague in that "the market for the supply of DIS" is not defined. Reynolds objects to the extent this Request assumes a DIS market that is

limited to integration to DMSs for franchise new car dealers as opposed to DMSs for all cars and vehicles, new or used, and further objects that issues of market definition and barriers to entry are expert discovery issues. Furthermore, Reynolds objects to the extent this Request assumes that integrators or DIS encompasses both third party "integrators" such as Authenticom as well as integrators such as Reynolds or CDK; Reynolds does not view the services provided by Authenticom or other such entities as constituting true integration to a DMS. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 44:**

All documents concerning Reynolds sales data and information, including but not limited to invoices and all underlying data used to generate invoices for Vendors that used (1) DMI, (2)

Integralink, and/or (3) the RCI program for data integration services, from 2011 to the present, as well as all underlying data used to generate invoices for dealers that used a Reynolds DMS, from January 1, 2011 to the present. This request includes but is not limited transactional data which shows the payor, date, price, discount, net payable, the category of data polled, as well as records that show the amounts paid to CDK in response to invoices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds also objects to the extent that this Request is duplicative and cumulative of other Requests, and/or seeks to end run or undo agreements that have already been reached. Specifically, Reynolds and Authenticom previously reached agreement on the production of RCI pricing information, and pursuant to that agreement, Reynolds ultimately produced certain RCI pricing information bates numbered REYMDL0037507. REYMDL0037507 shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees).

Producing invoices is unduly burdensome and not proportional to the needs of the case in light of the fact that RCI pricing information is already available via REYMDL0037507.

Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "Reynolds sales data and information," including for all RCI customers, without regard to relevance. This is grossly overbroad and potentially encompasses every document relating to any RCI customer, ever. It is not

proportional to the needs of the case for Reynolds to undertake such a burden. Furthermore, categories 1 and 2 in the Request refer to CDK entities, for which Reynolds would have none of the requested data or other information. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to REYMDL0037507, which shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees).

**REQUEST FOR PRODUCTION NO. 45:**

This RFP incorporates all RFPs propounded by the Individual Plaintiffs and formally requests all documents sought by those RFPs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, duplicative, cumulative, seeks irrelevant material, and is untimely.  Pursuant to the 5/7/18 Case Management Order (Dkt. 166), May 25, 2018 was the "[d]eadline to serve any additional, non-duplicative, coordinated discovery requests, search terms, and custodians."  Dealership Class Plaintiffs served a set of 44 Requests on May 25, 2018.  This additional Request No. 45 was served nearly three weeks later, and only one week before responses and objections were due.  It purports to incorporate by reference ninety-three additional Requests separately served by the Individual Plaintiffs.  This would subject Reynolds to the substantially expanded and disproportionate burden of responding to dozens of additional Requests.

Furthermore, contrary to plaintiffs' representations in meet and confer discussions, the 92 Individual Plaintiffs' Requests and the 44 Dealer Class Plaintiffs' Requests and the 89 Authenticom Requests that have been served on Reynolds thus far (225 Requests to Reynolds in total) exhibit an enormous degree of overlap, duplication and repetition, making it clear that the separate sets of Requests were not coordinated.  There are numerous examples above of Requests from the Dealership Class Plaintiffs that substantially overlap with other Requests from Authenticom or Individual Plaintiffs, and certain Requests were copied nearly word for word.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  To the extent that Reynolds produces materials in response to the Individual Plaintiffs' Requests, it will also produce those materials to Dealership Class Plaintiffs.

Dated:  June 22, 2018                  Respectfully submitted,

*/s/ Aundrea K. Gulley*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and
Reynolds Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

The Reynolds and Reynolds Company's Responses and Objections to Dealership Class

Plaintiffs' First Set of Requests for Production to be served by email upon the following

individuals:

     Michael N. Nemelka (mnemelka@kellogghansen.com)
     Derek T. Ho (dho@kellogghansen.com)
     Britt M. Miller (bmiller@mayerbrown.com; CDK-MDL-Team@mayerbrown.com)
     Matthew D. Provance (mprovance@mayerbrown.com; CDK-MDL-Team@mayerbrown.com)
     Peggy Wedgworth (pwedgworth@milberg.com; DMSTeam@milberg.com)
     All Parties (SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com)

                                     /s/ Jessica Campos
                                       Jessica Campos