# Exhibit S

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

July 30, 2018

File Number: 48KZ-266044

<u>**VIA EMAIL**</u>

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215
mnemelka@kellogghansen.com

Re: *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL No. 2817 (N.D. Ill.)

Dear Mike:

I write this letter to follow up on certain issues we discussed during our telephonic meet and confer on July 23 concerning the Individual Plaintiffs' First Set of Requests for Production ("Requests" or "RFPs") to Reynolds.

Any statements or proposed compromises contained in this letter are subject to and without waiver of Reynolds's general or specific objections to Individual Plaintiffs' RFPs. In particular, Reynolds does not intend to waive any arbitration rights through any statement or position taken in this letter, or through its participation in discovery in this MDL, and expressly reserves such rights.

1. **General Issues**

   a. **Temporal Scope of Individual Plaintiffs' RFPs**

There does not appear to be a dispute that, as a general matter, Jan. 1, 2013 is an appropriate cut-off for document discovery. Authenticom has already agreed to this cut-off. MVSC's own responses to Reynolds's document requests purport to apply a 2015 cut-off.

There are good reasons for a January 1, 2013 cut-off. The Individual Plaintiffs' claims and allegations center primarily around an alleged 2015 agreement between CDK and Reynolds. 2013 is a full two years before that alleged agreement and encompasses sufficient materials regarding the background and context for the alleged 2015 agreement. And to the extent that Individual Plaintiffs are making claims based on other types of conduct or that require an understanding of other business practices, 5+ years of discovery is more than enough to understand those practices.

Michael N. Nemelka
July 30, 2018
Page 2

Furthermore, January 1, 2013 encompasses the entire statute of limitations period (four years for federal antitrust claims). The first filed Individual Plaintiff complaint was *MVSC*, filed on February 3, 2017. Therefore, the limitations period for the MVSC case extends, at most, to February 3, 2013, and the limitations period cuts off at even later dates for the other Individual Plaintiff cases. A cut-off of January 1, 2013 is therefore proportional to (and if anything, generous in light of) the needs of the case. *See, e.g., Greene v. Sears Prot. Co.*, 2017 U.S. Dist. LEXIS 43810, *13-14 (N.D. Ill. Mar. 27, 2017) (limiting discovery to the statute of limitations period, holding: "This Court agrees . . . that plaintiffs have provided no compelling argument that discovery going back earlier than [the applicable statute of limitations] is warranted."); *Wilson v. MRO Corp.*, 2017 U.S. Dist. LEXIS 18967, *4-5 (S.D.W.V. Feb. 10, 2017) (denying motion to compel production of documents pre-dating statute of limitations period); *Arenas v. Unified Sch. Dist. No. 223*, 2016 U.S. Dist. LEXIS 143338, *18 (D. Kan. Oct. 17, 2016) (limiting document discovery and testimony to statute of limitations period "to avoid unnecessary burden and expense.").

Reynolds is willing to consider certain one-off exceptions to this cut-off period for certain categories of documents or data, if there is a good reason for a longer date period that is proportional to the needs of the case and not unduly burdensome on Reynolds. However, for the vast majority of Requests, Reynolds believes January 1, 2013 is the appropriate cut-off.

### b. Searching Centralized Files

You asked whether Reynolds will be searching centralized files in response to the Individual Plaintiffs' RFPs. Reynolds confirms that it will utilize reasonably searchable centralized files likely to contain responsive documents for a given request, consistent with its General Objection No. 9.

## 2. Issues With Specific RFPs

### a. Additional RFPs For Which Reynolds Is Willing To Meet And Confer Regarding Search Terms (RFPs 2, 5, 18, 22, 23, 68)

Following our meet and confer discussions, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing) for the following RFPs: 2, 5, 18, 22, 23, 68.

Reynolds maintains its position that many of these Requests are irrelevant or have minimal relevance to the Cox and Autoloop cases, where Reynolds is entitled to greater protection from burdensome or irrelevant discovery requests because of its status as a third party. However, given that these RFPs may have some limited relevance to the Authenticom or MVSC cases, Reynolds is willing to proceed using reasonable search terms.

### b. RFPs Clarified By Individual Plaintiffs (RFPs 16, 19, 57, 58, 60, 61, 63, 80, 81, 82, 86, 87)

Michael N. Nemelka
July 30, 2018
Page 3

We asked for, and you provided, clarifications for a number of RFPs. Set forth below are our responses to those clarifications.

- **RFPs 16 and 87 (Documents relating to "push" functionality).** You clarified that RFPs 16 and 87 seek documents and communications reflecting Reynolds giving realtime DMS integration to its own applications, but something less to non-Reynolds applications. With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFP 19 (Documents relating to time to set up RCI interface).** You clarified that RFP 19 seeks documents and communications reflecting intentional delays or foot dragging by Reynolds with respect to setting up RCI interfaces for non-Reynolds vendors. With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFPs 57-58 (Communications with Authenticom customers).** Your July 26 letter references a list of vendor customers and a list of dealer customers. With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFP 60 (Cost of capital, cost of equity, cost of debt, average cost of capital).** During our meet and confer call you were unable to articulate the relevance of this Request. In your July 26 letter, you state that the material requested will allow Individual Plaintiffs to understand the "financial health" of Reynolds. This is not a relevant topic. Reynolds's financial health does not help Individual Plaintiffs understand whether Reynolds engaged in any conduct that violated the antitrust laws, whether that conduct caused any harm to Individual Plaintiffs, or what specific amounts of damages were suffered by Individual Plaintiffs, if any. You state that understanding Reynolds's financial health will shed light on "overcharges imposed by Reynolds, as enabled by Reynolds's anticompetitive conduct." Reynolds disagrees. The documents that are potentially relevant to understanding whether Reynolds engaged in anticompetitive conduct or imposed unlawful overcharges, are documents relating to Reynolds's actual alleged conduct or Reynolds's prices, not the categories covered by this RFP.

- **RFP 61 (Documents relating to economic value of DMS access).** Reynolds's concern is that the concept of "economic value" as used in this RFP is so vague and broad that this RFP could essentially function as a catch-all because every Reynolds document potentially has some relation to economic value of data, data access or DMS access. You clarified when we spoke that RFP 61 is not a "back door" that swallows up all RFPs.

Michael N. Nemelka
July 30, 2018
Page 4

> Your July 26 letter provides additional clarification. With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).
>
> - **RFP 63 (Fortellis).** You clarified that although this RFP asks about CDK's Fortellis Automotive Exchange, it was not mistakenly directed at Reynolds. Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).
>
> - **RFPs 80-81 (Industry reports).** These RFPs seek documents and communications "concerning industry publications or industry reports with respect to data integration services." I explained on our meet and confer call that, as phrased, the RFP may capture a large number of irrelevant, duplicative, and/or cumulative files. For example, it is easy to imagine that many of Reynolds's document custodians might have subscriptions to a variety of industry publications or reports and receive daily, weekly or monthly emails consisting of nothing but those publications and reports. There is no reason why Reynolds should have to collect and produce materials like this, and they do not bear on any claims or defenses.
>
>   Your July 26 letter now states that these RFPs seek communications with or documents generated by industry publications or industry reporting organizations or interest groups relating to data integration services. This does not solve the problem described above. To the contrary, it broadens the RFP beyond its original wording to encompass materials relating to the vague concept of "interest groups."
>
>   Reynolds proposes the following compromise for RFPs 80 and 81 instead: If it will resolve these requests, Reynolds will search for documents and communications exchanged with industry publications or industry reporting organizations regarding data integration services. Reynolds will also search for discussions or analyses about industry publications or industry reports with respect to data integration services. If this is acceptable, Reynolds is willing to proceed accordingly using agreed upon search terms (the negotiation of which is ongoing) with respect to documents from January 1, 2013 forward.
>
> - **RFP 82 (Forecasts/budgets/etc. relating to integration).** You clarified that RFP 82 seeks documents and communications referring to (not "relied upon") the categories of materials listed in the RFP. With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

Michael N. Nemelka
July 30, 2018
Page 5

- **RFP 86 (Latency).** You clarified that this RFP relates to the time to send or receive data from DMS through RCI. By contrast, RFP 19 seeks material relating to the time it takes to set up an RCI interface. As with RFP 19, Reynolds understands that Individual Plaintiffs are seeking materials relating to allegedly intentionally slower service provided to non-Reynolds vendors. With these clarifications, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

   c. **RFP Responses Clarified By Reynolds (RFPs 17, 73, 74, 83, 84, 85, 92)**

You asked for clarifications regarding certain of Reynolds's RFP responses. Set forth below are our clarifications.

- **RFP 17 (Differences in functionality offered).** RFP 17 asks for: "All documents regarding functionality, data access, or level of data integration provided to one vendor but not offered to a competing vendor or vendors." In response, Reynolds states that "it is not aware of any responsive documents." Our understanding is that all vendors that provide applications to dealerships have the opportunity to obtain the same functionality, data access, or level of data integration that is available to any other vendor in its category.

- **RFP 73 (Financial information relating to integration).** This RFP requests materials "sufficient to show" certain profit, cost and revenue information relating to Reynolds's integration services. As set forth in Reynolds's response, with respect to the requested RCI profit and cost information, Reynolds does not fully allocate its costs and therefore does not have documents sufficient to show the requested information. With respect to the requested revenue information, Reynolds has already provided RCI revenue information for the period 2011-2017. You asked that we consider a 2009 date cut-off for this Request. Reynolds disagrees and believes that a cut-off of Jan. 1, 2013 is appropriate for the reasons described in Section 1.a. Furthermore, Reynolds has already agreed to provide certain revenue information going back to 2011.

- **RFP 74 (RCI transactional information).** This RFP requests materials "sufficient to show" certain sales data relating to Reynolds's integration services. As set forth in Reynolds's response, Reynolds has already produced all of its RCI pricing information from 2010-2017. *See* REYMDL0037507. This contains information regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees). You asked that we consider a 2009 date cut-off for this Request. Reynolds disagrees and believes that a cut-off of Jan. 1, 2013 is appropriate for the reasons described in Section 1.a. Furthermore, the information contained in REYMDL0037507 goes back to 2010.

Michael N. Nemelka
July 30, 2018
Page 6

- **RFP 83 (DMS Connections).** RFP 83 requests documents sufficient to show the number of DMS connections established by Reynolds. As set forth in the response, Reynolds does not have documents sufficient to show the requested information. Reynolds does not track DMS connections because unlike a data broker, Reynolds does not do business with vendors in terms of individual "connections" to DMS.

- **RFPs 84 and 85 (Win/loss reports and reasons for switching).** In response to these RFPs, Reynolds stated that it was willing to meet and confer regarding search terms to identify documents relating to reasons why customers joined or left RCI. Reynolds also stated that it does not have "win/loss" reports for RCI. Notwithstanding this statement, Reynolds clarifies that if a document similar to a win/loss report for RCI is located through its custodial search, it will not withhold any such document from production.

- **RFP 92 (Cake pictures).** Reynolds is not aware of any documents responsive to this RFP.

### d. Requests relating to MVSC, CVR or EVR (RFPs 40, 46, 47, 53, 56)

Following our meet and confer discussions, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing) for the following RFPs: 40 and 53.

For RFPs 46 (Reynolds's ownership in CVR), 47 (CVR financial benefits), and 56 (CVR's Board of Directors), Reynolds already stated in its response that it is willing to meet and confer about search terms. You insisted that RFPs 46 and 56 should have no date limitation, and that the date cut-off for RFP 47 should be Jan. 1, 2011. Reynolds disagrees and believes that Jan. 1, 2013 is an appropriate cut-off for all of the reasons described in Section 1.a above. However, in the interest of reaching a compromise, if it will resolve these requests, Reynolds is willing to apply your proposed expanded temporal scope to a centralized file of CVR-related documents that has been maintained by Reynolds, which contains documents dating back to 1992.

### e. Industry Conferences and Phone Records (RFPs 65-67)

RFPs 65 through 67 seek documents that relate to or show attendance at industry conferences (RFP 65), records of phone calls between Reynolds and CDK (RFP 66), and records of phone calls involving Reynolds document custodians (RFP 67). These RFPs are overbroad, not proportional to the needs of the case, and request materials that would be irrelevant to the claims and defenses in this case.

Mere participation or attendance by Reynolds at conferences or conventions has nothing to do with the issues or defenses in this case. To the extent that documents were created in connection with conferences or conventions that actually relate to issues in the case, they will already be captured by dozens of other RFPs that have been served on Reynolds and CDK. To

Michael N. Nemelka
July 30, 2018
Page 7

take just one example, any materials regarding collaboration or exchange of information between Reynolds and CDK about blocking data brokers from accessing DMS would be captured by Authenticom RFP 12, even if the materials are created or used or exchanged at a conference. The same is true for dozens of additional RFPs that have been served on Reynolds by multiple parties in this case. It is not clear what relevant materials would be captured by RFP 65 that would not already be captured by other RFPs.

With respect to phone records, you proposed narrowing RFPs 66 and 67 to request phone records of Reynolds's documents custodians reflecting phone calls with CDK. Whether in narrowed form or as originally drafted, the request for phone records is irrelevant and out of proportion to the needs of the case. The fact that CDK and Reynolds communicated with each other is not in dispute. For example, it is not in dispute that CDK and Reynolds communicated with each other leading up to the February 2015 written agreements. It is also not in dispute that CDK and Reynolds communicated with each other about CVR, their jointly owned EVR joint venture. CDK and Reynolds also had other joint ventures. There is no doubt that phone calls or other communications occurred during the relevant time period. What is important is not whether communications occurred, it is what the communications are about and whether anticompetitive agreements were reached that is important.

It is not proportional to the needs of the case to force Reynolds to produce phone records in order to establish something that is already undisputed. These records are voluminous, and also contain a significant amount information about calls having nothing to do with CDK.

### f. **Improper Use Of Information Submitted During RCI Certification Process (RFPs 90-91)**

When vendors apply for RCI certification, they provide certain information to Reynolds. RFP 90 seeks documents relating to Reynolds's policies about not using that information for Reynolds's own competing applications, and RFP 91 seeks documents relating to Reynolds's improper use of such information for its own competing applications.

These RFPs seek information that is not relevant to the claims and defenses in this case. The complaints do not include any claims alleging that Reynolds improperly used information obtained from vendors through the RCI certification process. It would not be proportional to the needs of the case to required Reynolds to search for and produce such materials.

Furthermore, to the extent that Individual Plaintiffs believe that the information Reynolds requests from vendors during the RCI certification process is unnecessary or that there is no valid reason for the requests, RFP 89 already addresses this. RFP 89 requests: "All documents and communications regarding how Reynolds determined what kinds of data, information, or technical specifications to require vendors to provide as part of the RCI certification process, including 'workflow' models, live demonstrations of the add-on applications, justifications for how add-on applications use each data element, and the add-on

Michael N. Nemelka
July 30, 2018
Page 8

application's security features." As stated in response to RFP 89, Reynolds is willing to meet and confer regarding search terms to locate documents responsive to this Request.

### g. Late-served RFP (RFP 93)

RFP 93 purports to incorporate by reference the 44 RFPs that the Dealership Class Plaintiffs served on Reynolds. RFP 93 is improper for several reasons.

Pursuant to the 5/7/18 Case Management Order (Dkt. 166), May 25, 2018 was the "[d]eadline to serve any additional, non-duplicative, coordinated discovery requests, search terms, and custodians." Individual Plaintiffs' RFP 93 was served nearly three weeks after May 25 and is therefore untimely.

RFP 93 is also improper because it is duplicative and not coordinated. The 44 Dealership Class Plaintiffs' RFPs purportedly incorporated into RFP 93 are not complementary to the 92 remaining Individual Plaintiffs' RFPs. Instead, a review of the 44 Dealership Class Plaintiffs' RFPs and the 92 Individual Plaintiffs' RFPs and the 89 Authenticom Requests that have been served on Reynolds thus far (225 Requests to Reynolds in total) exhibit an enormous degree of overlap, duplication and repetition. Numerous specific RFPs from the Dealership Class Plaintiffs cover substantially the same type of material as RFPs from the Individual Plaintiffs. Certain Dealership Class Plaintiff RFPs are nearly word-for-word identical to RFPs previously served on Reynolds by Authenticom.

Regardless, Reynolds has stated in response to RFP 93 that to the extent that Reynolds produces materials in response to the Dealership Class Plaintiffs' RFPs, it will also produce those materials to the Individual Plaintiffs.

Individual Plaintiffs expressed concern that some relevant documents might not be produced to the Individual Plaintiffs without RFP 93. Given the high degree of overlap between the various sets of comprehensive RFPs that have been served on Reynolds, and the fact that the Individual Plaintiffs and Dealership Class Plaintiffs have proposed a joint set of search terms to be run on the same set of agreed custodians for Reynolds, this appears to be a theoretical concern rather than an actual problem. If Individual Plaintiffs can identify a specific type of document that it believes will not be produced unless Reynolds responds to RFP 93, Reynolds is happy to discuss it with the Individual Plaintiffs.

Michael N. Nemelka
July 30, 2018
Page 9

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227864704.1