# Exhibit X

| | |
|---|---|
| **From:** | Provance, Matthew D. |
| **To:** | Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL |
| **Cc:** | Miller, Britt M.; Marovitz, Andrew S.; Ryan, Mark; Brian T. Ross; Leo Caseria |
| **Subject:** | RE: DMS MDL -- Discovery Letter |
| **Date:** | Sunday, August 05, 2018 3:51:12 PM |

Mike –

We are writing to follow-up about plaintiffs' offer regarding invoices. After many discussions with our client over the weekend, we are prepared to accept the majority of plaintiffs' offer, as follows:

- CDK will accept plaintiffs' offer for DMS customers (top 75 customers)

- CDK will accept plaintiffs' offer for 3PA customers (top 30 customers)

- For DMI and IntegraLink customers, CDK will agree to the top 15 customers from each former subsidiary. That will double the number of customers that CDK is already agreeing to for 3PA program (and therefore double the number of RCI customer invoices that Reynolds has agreed to provide). In other words, the burden on CDK of complying with plaintiffs' request for 3PA and DMS invoices over a multi-year period is already substantial, and adding invoices from 15 DMI and 15 IntegraLink customers will increase those burdens even further. We are hopeful that this substantial step will help the parties avoid motion practice on this issue, but please let us know.

CDK's acceptance of the offer, as modified above, is contingent on confirmation on behalf of all MDL plaintiffs – including the dealership class plaintiffs – that our agreement will resolve all discovery requests for CDK's customer invoices. In addition, as you agreed with Reynolds, the parties will have to agree on appropriate criteria for identifying the "top" customers in each category, and those customers will need to remain static over time (*e.g.*, the designated "top 30" 3PA customers can't change by year or month – it has to remain constant). Moreover, we understand that historical invoices for DMS, 3PA, DMI, and IntegraLink customers may need to be downloaded by CDK employees manually, meaning only active systems will be searched, which will not go back all the way to 2011. However, nothing available from active systems that meets the parameters outlined above will be withheld.

Please let us know if we have an agreement.

Thanks,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

_____

**From:** Provance, Matthew D.
**Sent:** Saturday, August 04, 2018 11:11 AM
**To:** 'Nemelka, Michael N.'; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Marovitz, Andrew S.; Ryan, Mark; 'Brian T. Ross'; 'Leo Caseria'
**Subject:** RE: DMS MDL -- Discovery Letter

Dear Mike –

Thank you for your letter last evening. Below, we provide responses to the vast majority of issues that you consider still outstanding as to CDK. We are (and have been) working with our client on the one or two issues that remain outstanding and will follow-up as soon as possible, but as we did not receive your list until after the close of business on a Friday, tracking down the necessary information is proving to be somewhat of a challenge.

All of our responses below concerning various RFPs remain subject to our objections, which are reflected in earlier correspondence.

*CRM Software:* As we confirmed last night in response to a similar question from the Dealership Class Plaintiffs, the produced dataset from CDK's CRM (Salesforce) database includes reports generated from all Instances within Salesforce that were intended to—and as far as we can determine, based on a reasonably diligent investigation, in fact did—capture comments generated from sales contacts with both dealers and vendors.

*DMS Switching (Authenticom Requests 31-33):* You asked us to confirm that CDK does not have DMS switching data prior to July 2011. This is one of the items that we are still trying to resolve, but as we said before, we suspect that CDK does not have switching data for earlier periods. That said, if it does turn out that CDK maintains DMS switching data from earlier periods through 2006, in the ordinary course of business, we will produce that data if it will resolve our dispute. To the extent that we are able to confirm this over this over weekend, we will let you know.

*Technological Implementation of SecurityFirst (Authenticom Request 27(f)):* The Dealership Class Plaintiffs offered CDK a compromise on an identically-worded Request (RFP 11(g)), which CDK accepted. We believe that CDK's acceptance of the Dealers' offer is more than reasonable, particularly given the record surrounding this Request. Your challenge to CDK's objection to subpart (f) certainly was not timely raised, and your refusal to honor the Dealerships' offer of compromise on this issue raises serious concern that MDL Plaintiffs are not proceeding with coordinated discovery in accordance with the Court's orders. We have not reconsidered our position on this Request.

*DMI and IntegraLink (Authenticom Requests 62-63):* As we tried to explain during yesterday's calls, you are now changing these Requests, which seek the identification of vendors (and then related pricing information) who (i) "obtain or obtained data integration services from Integralink and/or Digital Motorworks for data on the CDK DMS" and (ii) "obtain or obtained data integration services from Integralink and/or Digital Motorworks for data on non-CDK DMSs." CDK agreed to answer these Requests as written, based on its transactional sales data for DMI and IntegraLink. Now, many months later, you are threatening a motion to compel unless CDK also commits to producing "the DMS platform information of DMI and IntegraLink's customers," which is simply not called for by the plain language of either of these Requests, regardless of your protestations to the contrary. Nevertheless, in an effort to avoid needless motions practice on this issue (and despite that we believe you have negotiated unfairly regarding these Requests), to the extent that existing DMI and IntegraLink billing records reflect this additional information, CDK agrees to produce those records from the agreed-upon time period for these Requests (2011-present), to the extent they exist.

*McCray Curse Words (Authenticom Request 94):* While we maintain that CDK has already agreed to produce whatever relevant documents may exist that are responsive to this absurd Request, in the

interest of avoiding motions practice CDK will produce any work-related emails from Mr. McCray, to the extent they even exist, that use the "profane" terms that plaintiffs have provided.

*Invoices (Authenticom Requests 102 & 103):*  We are still considering whether, solely in the interest of avoiding motions practice, to accept Authenticom's offer regarding these Requests and incur the substantial burden to CDK that compliance would entail.  Particularly given the issue noted above regarding Authenticom Request 27(f) and Dealer Request 11(g), please specifically confirm, which Defendants asked you to do yesterday, that your offer for Requests 102 and 103, if accepted by CDK, would resolve *all* MDL Plaintiffs' requests for invoices.

*Authenticom Interrogatory 12:*  Although CDK maintains all of its objections to this Interrogatory and continues to believe that it is improper for all the reasons previously stated, in an effort to avoid motions practice CDK will amend its response.

*Financial Information (Plaintiffs' Requests 81 & 82):*  We appreciate Plaintiffs' offer to limit the responsive time period related to these Requests with a cut-off of 2009, but as you know that does not resolve our broader time period issues.  As such, we remain at issue.

*CVR "Financial Benefits" (Plaintiffs' Request 54):*  As it has with a number of the Individual Plaintiffs' Requests, CDK has offered a very reasonable compromise to this RFP—here, documents sufficient to show the "financial benefits" that CDK receives from its interest in CVR, as opposed to "all" documents on that topic—in an effort to put a reasonable limit on what might be considered responsive. Your demand for CDK to also include "communications" would swallow the "sufficient to show" nature of CDK's proposal.  However, in a final effort to achieve compromise, CDK is prepared to produce communications identified through the application of agreed-upon search terms (from among those already proposed) to its custodial files that discuss CDK's receipt of "financial benefits" through its ownership interest in CVR, to the extent that CDK is reasonably able to identify such documents.

*Communications with Authenticom Customers (Plaintiffs' Requests 65 & 66):*  We confirm that subject to the other parameters of our proposal concerning these Requests, CDK will produce communications with Authenticom's customers that reference or discuss both Authenticom and related entities/people including DealerVault and Steve Cottrell.

*Fortellis (Plaintiffs' Request 71):*  CDK has agreed to run, subject to an overall agreement on search terms, a term proposed by Plaintiffs that relates to Fortellis.  We also confirm that our proposal for this Request would include related communications, discussions, or analysis of pricing, if any.

*Sales and Marketing Information (Plaintiffs' Request 83):*  Again, we appreciate Plaintiffs' offer to limit the responsive time period related to this Request with a cut-off of 2009, but it does not resolve our dispute over the appropriate responsive time period.  As such, we remain at issue.

*3PA, DMI & IntegraLink Connections (Plaintiffs' Request 92):*  Please see our July 30 correspondence, where we confirmed that CDK will produce documents sufficient to show the total number of DMS connections maintained in connection with data extraction services offered through CDK's former DMI and IntegraLink subsidiaries, to the extent available.

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Friday, August 03, 2018 7:17 PM
**To:** SERVICE-EXTERNAL-DMS-MDL
**Subject:** DMS MDL -- Discovery Letter

Dear Brian, Leo, and Matt,

Please see the attached correspondence following up on our various meet and confers. I have highlighted in yellow where we believe Defendants still need to let us know their positions. If you could please provide that information tonight, we'd appreciate it. If not, we would ask for it first thing in the morning.

Thanks,
Mike

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

_____
This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Information about how we handle personal information is available in our Privacy Notice.