# Exhibit AA

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

August 3, 2018

*Via Electronic Mail*

Brian Ross, Esq.  
Gibbs & Bruns LLP  
1100 Louisiana  
Suite 5300  
Houston, TX 77002

Matt Provance, Esq.  
Mayer Brown  
71 South Wacker Drive  
Chicago, IL 60606

Re: *In re Dealer Management Systems Antitrust Litigation,* MDL No. 2817

Dear Matt and Brian:

I write in response to your letters of August 1 (Reynolds) and August 2 (CDK) and our various meet and confers this week on the Individual Plaintiffs' and AutoLoop's (on behalf of a vendor class) various discovery requests. A sincere thanks for the progress we've made, which has been substantial. My hope is to write to clarify where we may be on the final issues, and to ensure I have followed up on any outstanding items. Please let me know if I may have missed anything.

I have highlighted in yellow where we still need Defendants' final positions. Please provide those tonight, or first thing tomorrow morning, given the Monday deadline for motions. Thank you.

I. **General Issues**

**Demonstratives from Preliminary Injunction Hearing.** Thank you for the opening and closing demonstratives, Brian. Thanks for pointing out the email when Britt sent CDK's closing, Matt. Please also send us CDK's opening demonstratives. As for individual demonstratives used with witnesses, we will follow up with you if we discover that we are missing any.

**CRM Software.** With respect to CDK, please confirm that you are producing responsive communications with *vendors* and not just *dealers*.

As for Reynolds, we are conferring with Peggy and her team, and we will let you know what a fair compromise may be for you to search and produce responsive information from Reynolds' CRM. As discussed on our call, we ask that this issue be pushed past the August 6 motion to compel deadline.

**Authenticom RFP 30(c) (how whitelisting is accomplished).** On this RFP, the dispute centered on "[d]ocuments sufficient to show how whitelisting is accomplished, including all

technical, system architecture, workflow processes, or other mechanisms used to whitelist login credentials."

On this topic, CDK agreed to produce responsive documents except "granular system design documents" (and source code, algorithms, and actual scripts, which we agreed to forego). We are therefore at impasse with CDK only with respect to the "granular system design documents."

As for Reynolds, its position, as we understand it, is that it will not withhold such documents if it comes across them in its custodial review, but it is not going to affirmatively search for them. We are then at an impasse with Reynolds.

**Authenticom RFP Nos. 31-33 (DMS Switching).** Reynolds has confirmed that it has provided switching information going back to 2008, and that it has thus provided whatever information it has. *See* Letter from B. Ross (Aug. 1, 2018) ("Our understanding is that we have given you what we have.").

For its part, CDK stated that it has provided switching information going back to July 2011, which it "strongly suspect[s] to be as far back as the data exists." *See* Letter from M. Provance (Aug. 2, 2018). We ask that CDK in fact confirm it does not have earlier information.

**DMS and RCI/3PA business plans, business presentations, marketing plans, strategic plans.** Here, the only question concerned the scope of "business presentations." Defendants confirmed it would include all business plans, marketing plans, and strategic plans, as well as the other types of documents in their RFP 67 to MVSC ("competitive analyses, strategic plans, long-range plans, business plans, marketing plans, and forecasts, and any documents referring or relating to these materials"). With that representation, we can put this issue to rest.

**Security Audits.** Both Defendants have confirmed they are producing the records of any security audits relating to their DMS or data integration programs, services, or products, including with respect to the storage, retrieval, or handling of data.

II.   **CDK's Responses to Authenticom RFPs**

**Date Range for RFP Nos. 20, 21, 22, 23, and 34 (ability of dealers / vendors to use independent integrators to access data on CDK DMS).** Thank you for agreeing to a time period of January 1, 2006 for these requests. We will engage with you in good faith to identify the custodians and search terms, and we agree that process can extend past August 6th.

**RFP No. 25 (Agreements with Other Providers of Data Integration Services).** Thank you for agreeing to produce the documents and communications regarding CDK's agreements with data integration providers, whether or not those providers provided CDK with access to "closed" or "open" DMS platforms. Our dispute is therefore resolved.

**RFP No. 27(f) (security implementation of Security Frist and/or 3PA Refresh).** The dispute here centers on 27(f), which focuses on the technological implementation of the "Security First" and/or "3PA Refresh" initiative. On our meet and confer, Matt stated that CDK

is "not excluding if responsive documents turn up in the search terms," but that is not sufficient. CDK needs to affirmatively produce and search for these documents, including in centralized files. Moreover, the agreement with the dealers to produce "documents explaining the implementation of the 'SecurityFirst' and/or '3PA Refresh' initiative in layman's terms (i.e., communications to customers)" does not address the dispute at issue, which is focused on the technological implementation on CDK's systems. And in any event, the "compromise" you cite involves communications and documents that are responsive to other parts of this RFP, which CDK has already agreed to produce anyway.

As we discussed today, we are therefore at an impasse because CDK has not agreed to produce the technical documents regarding the actual implementation of CDK's security initiative. Please let us know if CDK has reconsidered its position.

**RFP Nos. 62-63 (DMI and IntegraLink).** As we discussed today, these RFPs explicitly ask for the DMS platform information of DMI and IntegraLink's customers. Please let us know as soon as possible if CDK will provide the requested DMS platform information. If not, we are at an impasse.

**RFP No. 68 (communications regarding prices charged by DMI and IntegraLink).** Thank you for confirming that CDK has agreed to produce documents and communications relating to the prices charged by IntegraLink and DMI for access to data on the CDK DMS.

**RFP No. 74 (DMS Technical Specifications).** You confirmed that centralized files are being searched (as they are for the other RFPs CDK has agreed to respond to; there was some ambiguity in your letter, however, which we cleared up). We are in agreement on this topic except with respect to "granular system design documents."

**RFP No. 79 (blocking of login credentials).** You confirmed that centralized files are being searched. We are in agreement on this topic except with respect to "granular system design documents."

**RFP No. 82 (security infrastructure of CDK DMS).** You confirmed that centralized files are being searched. We are in agreement on this topic except with respect to "granular system design documents."

**RFP No. 93 (monthly spend on independent data integrators).** We are in agreement.

**RFP No. 94 (McCray curse words).** On today's call, we made clear that responsive documents to this request includes any time Mr. McCray used the curse word search terms CDK has agreed to, whether or not those documents are responsive to other RFPs. Mr. McCray stated in his declaration that he does "not use swear words like the one alleged by Mr. Cottrell." Therefore, to the extent he uses the search-term curse words – no matter the topic – that undermines the credibility of Mr. McCray's statement.

Please confirm you are producing the requested documents. If not, we will be at impasse.

**RFP No. 102 and 103 (DMS and 3PA/IntegraLink/DMI Invoices).** Please let us know today if CDK agrees to our compromise proposal, as Reynolds has.

**RFP No. 104.** Thank you for agreeing to our compromise proposal. We are in agreement on this RFP.

### III. CDK's Responses to Authenticom Interrogatories

**No. 7.** This Interrogatory asks CDK to state "whether you contend, and the basis for any contention, that there is a competitive market for data integration services on DMSs other than the CDK DMS and the Reynolds DMS." CDK has refused to respond to this Interrogatory based on specious grounds. Letter from M. Provance to Plaintiffs (June 14, 2018). CDK has not changed its position, and we are therefore at an impasse.

**No. 11.** This Interrogatory asks for average tenure of CDK's DMS customers on an annual basis, from 2009 to the present. CDK's response is non-responsive and did not provide the requested information, which CDK continues to refuse to provide. We are therefore at an impasse.

**No. 12.** This Interrogatory asks for market share information for the DMS market. Reynolds has agreed to provide the requested information. ==You said that you would let us know today if CDK has reconsidered its position.==

**No. 14.** We are at an impasse.

### IV. CDK's Responses to Individual Plaintiff RFPs

**Date Ranges.** We respond to CDK's position on date ranges (as articulated in Matt's August 2, 2018 letter) as follows:

- Thank you for going back to January 1, 2011 for RFPs 43, 44, and 64. We are in agreement.

- Thank you for going back to January 1, 2011 for RFPs 2, 3, and 4, and we confirm that Cox and AutoLoop will agree to reciprocity on this date range for CDK's corresponding RFPs to them.

- We understand that CDK is using 2011 as the cutoff for the myriad of financial information. We must insist on our compromise position of 2009, and we are therefore at an impasse.

- On industry conferences – RFP 73 – we will relent and agree to CDK's position of going back to 2013 (though we still have a dispute on substance, *see infra*).

- RFP 81 and 82 – we are in dispute with respect to the date range for these RFPs. We seek information back to 2006 for RFP 82 and 2000 for RFP 81; CDK has only agreed to 2011 (as these pertain to financial information). ==As a compromise position, we will offer going back to 2009 for both RFPs. Please let us know if this resolves the dispute.==

- RFPs 83-93 – The parties are in dispute. We seek documents going back to 2009 for these, while CDK (for financial information) is stopping at 2011. We are therefore at an impasse.

**Request 1 (3PA Contracts)**. We accept your offer to produce the current 3PA/Managed Interface Agreement ("MIA") with 3PA program participants if it would resolve our dispute and agree to work with you to address the confidentiality concerns.

**Request 7 ("Better" 3PA Pricing)**. We accept your offer to "confirm . . . that CDK is not aware of any Vendor in the 3PA program who receives 'better' pricing than Cox for comparable services."

**Requests 11-15 (3PA "Categories")**. We are in agreement given that you confirmed that CDK will search its centralized files, and not just custodial documents.

**Requests 19 & 20 ("Push" Functionality; Levels of Integrations):** Based on your concessions, we are no longer in dispute.

**Request 22 (Certification Time):** Based on your concessions, we are no longer in dispute.

**Request 23 ("Project Peach"):** Based on your concessions, we are no longer in dispute.

**Requests 24 & 25 (RTS).** Based on your concessions, we are no longer in dispute.

**Requests 29, 31 & 37 (References to Cox, AutoLoop, MVSC):** Based on your concessions, we are no longer in dispute.

**Request 46 (CVR Financial Information):** We have agreement.

**Requests 47 & 48 (CVR "Deficiencies" and EVR Provider Product Quality):** We have agreement.

**Request 49 (EVR Delays and "Backlogs"):** We believe the parties are in agreement.

**Request 51 (EVR Costs of Entry):** We believe the parties are in agreement.

**Request 53 (Reynolds's Interest in CVR):** Thank you for confirming that CDK, beyond what it has already agreed to produce, does not have any additional responsive documents in response to this Request.

**Request 54 (CVR "Financial Benefits"):** CDK's agreement to produce documents "sufficient to show" the financial benefits that it receives from its ownership interest in CVR is acceptable so long as CDK is still producing the "communications" thereto, which the RFP asks for. Please confirm that CDK is in fact producing such communications.

**Requests 57 & 58 (CDK's "Involvement" in CVR):** We are at impasse.

**Request 59 (CDK/Reynolds Communications re CVR):** Based on your concessions, we are no longer in dispute.

**Requests 60 & 61 (AVRS Acquisition):** Based on your representation that your compromise position "will capture any documents related to 'whether to acquire AVRS and why that may be even marginally relevant in this litigation," we are no longer in dispute.

**Request 64 (CVR Board Materials):** Based on your concessions, we are no longer in dispute.

**Requests 65 & 66 (Communications with Authenticom Customers):** You have agreed to "produce communications with Dealers and Vendors that refer to Authenticom." Please confirm this includes the people and entities related to Authenticom, such as DealerVault and Steve Cottrell, or such other communication related to the company. CDK may have addressed the topic of Authenticom with expressly referring to it by name.
.
**Request 68 (CDK Cost of Capital):** We are at impasse.

**Request 69 ("Economic Value of Data"):** We also believe the parties are in agreement.

**Request 70 (CDK "Valuations"):** We are at impasse.

**Request 71 (Fortellis):** We accept your compromise proposal and believe "Fortellis" is a necessary search term. Please confirm that you will agree to have "Fortellis" as a search term. Please confirm that your compromise includes "pricing" information for access to data, which we believe would be captured by your articulated compromise, but we wanted to confirm.

**Requests 72, 81-82, 84-86 (Additional Financial Information):** We are generally seeking financial information going back to 2009, which is our compromise position. We will seek the necessary relief on the date period.

**Request 73 (Industry Conferences):** Based on your letter, "CDK is prepared to produce (a) documents evidencing or otherwise reflecting meetings between CDK and Reynolds, if any, at such conferences, (b) marketing and promotional materials used or distributed by CDK at such conferences, and (c) written training and instructions provided to CDK employees concerning the marketing of CDK's DMS services, applications, or Data Services at such conferences, to the extent that such documents exist and are identified through a reasonable search." While appreciated, that is not sufficient as we have discussed, and we are therefore at impasse.

**Requests 74 & 75 (Telephone Records):** We are at impasse.

**Request 78 ("Secure the DMS" Dashboard Reports):** We too believe the parties are in agreement.

**Request 79 (ReverseRisk):** Based on your representations and concessions, we are no longer in dispute.

**Request 83 (Sales and Marketing for 3PA/IntegraLink/DMI):** Thank you for agreeing to produce the requested information from custodial and centralized files from 2013. The RFP requests such information going back to 2009, and we are therefore at an impasse on the date. Please let us know if CDK reconsider the date limitation.

**Requests 87 & 88 (DMS, 3PA, DMI & IntegraLink "Valuations"):** We are at impasse.

**Requests 89 & 90 (Industry Publications):** We are in agreement. Please confirm that this would include any communications with Cliff Banks by the custodians.

**Request 91 (Projections – Reliance Material):** We too believe the parties are in agreement.

**Request 92 (3PA, DMI & IntegraLink Connections):** Your letter only mentions 3PA in articulating your agreement to provide the requested information in response to this RFP, but the RFP applies also to DMI and IntegraLink. Please confirm you are also providing this information for those entities.

**Requests 93 & 94 (Data Integration "Win/Loss" Reports):** Based on your representations and concessions, we are no longer in dispute.

**Request 95 (3PA Request/Response):** Based on your representations and concessions, we are no longer in dispute.

**Requests 98-100 (3PA Certification Requirements):** Based on your representations and concessions, we are no longer in dispute.

**V.     Reynolds' Responses to Authenticom RFPs**

**RFP No. 30(c) (how whitelisting is accomplished).** Reynolds is refusing to produce documents sufficient to show how whitelisting is accomplished, including all technical, system architecture, workflow processes, or other mechanisms used to whitelist login credentials. We are therefore at an impasse.

**DMS and RCI Financial Information (RFP Nos. 45-53).** Reynolds is exploring whether a compromise analogous to what was agreed to with CDK is possible. Please let us know as soon as possible. We continue to insist on a date range of from 2009 to the present.

To be clear, CDK's agreement is largely reflected in Britt's letter from December 15, 2017. That is – irrespective of our dispute over the start date (CDK has agreed to go back to 2011; we are seeking information back to 2009) – CDK is producing documents sufficient to show the requested financial information (revenue, pricing, profit, projections, margins, costs, etc.) for its DMS and data integration businesses (3PA; DMI; and IntegraLink) at the product line, divisional, and management level, to the extent such documents/information exists. *See* Letter from B. Miller to M. Nemelka (Dec. 15, 2017).

With respect to the information that is produced, we ask that it be produced in the time increments for which Defendants tracked it in the ordinary course, namely, monthly, quarterly, and yearly increments.

**RFP No. 64 (DMS Technical Specifications).** We are in agreement on this topic except with respect to "granular system design documents."

**RFP No. 69 (blocking of login credentials).** We are in agreement on this topic except with respect to "granular system design documents."

**RFP No. 78.** We are in agreement.

**RFP No. 80.** We are in agreement.

**RFP Nos. 81-83, 87.** We are in agreement, subject to the search term negotiation.

**RFP No. 85 (RCI Invoices).** We are in agreement that Reynolds will produce full invoices for its Top 30 RCI customers, although you have informed us that the information only goes back to April 2014. We will work with you in identifying the 30 vendors.

**RFP No. 86 (DMS Invoices).** We are in agreement that Reynolds will produce full invoices for 75 DMS customers, subject to some limitations on the identity of those dealer customers, which we will work in good faith to resolve with you. And you have informed us that the information only goes back to April 2014.

**RFP No. 88 (Security).** Reynolds has rejected our compromise position on this, and so we are at an impasse. CDK, on the other hand, has accepted our compromise. ==Please let us know if Reynolds reconsiders.==

To be clear, here was our compromise position for the request, which seeks all "communications and documents concerning your security tools, processes, and training for your software developers." As a narrowing compromise, we offered the following: (1) with respect to "security tools," document and communications regarding the software used to test / analyze the security of your DMS and data integration programs; (2) with respect to "processes," your security planning documents, specifications for security and reliability, threat modeling, and risk analysis; and (3) with respect to "training," documents and communications regarding the training given to software developers working on your DMS and data integration programs. Also encompassed would be all design, technical, or functional specifications or similar development planning documents for your DMS or integration program.

**VI.     Reynolds' Responses to Authenticom Interrogatories**

**No. 4.** We are at an impasse on this Interrogatory, which asked Reynolds to identify every instance "where a vendor exaggerated or inflated the RCI data integration fee on a bill, invoice, or communication with a Reynolds dealer, from January 1, 2015 to present. In each example, please state what Reynolds contends was the actual RCI fee versus the RCI fee that the vendor invoiced to the dealer."

On our meet and confer, Reynolds stated that it believed there were instances of vendors doing so. Our position is that Reynolds must therefore identify those instances in its Interrogatory response.

**No. 7.** This Interrogatory asks for average tenure of Reynolds' DMS customers on an annual basis, from 2009 to the present. Reynolds' response is non-responsive and did not provide the requested information. Reynolds has refused to amend its response and provide the requested information, and so we are at an impasse.

**No. 8.** This Interrogatory asks for market share information for the DMS market from 2000 to the present. As a compromise, we asked for the requested information start from 2007. Reynolds has agreed to amend its Interrogatory response and provide the requested market share information to the extent available.

**No. 10.** The only information not provided here, based on your letter, is "dealer names." As you have of us, we may ask for additional information – whether a key, dictionary, or some other information – so that we can decipher the actual dealers involved.

**VII.** **Reynolds' Responses to Individual Plaintiffs' RFPs**

**RFP 19 (setting up interfaces).** We are in agreement based on your offer in the August 1 letter.

**RFP 83 (DMS Connections).** Thank you for continuing to dig on this, and your agreement to produce monthly information going back to 2010.

**RFP 60 (Cost of Capital, cost of equity, cost of debt, average cost of capital).** We are at an impasse.

**RFP 63 (Fortellis).** Thank you for agreeing to respond to this request. We believe the search term "Fortellis" would be sufficient. Please let us know if you will agree to run that search term.

**RFPs 80-81 (Industry reports/articles).** We agree to accept your compromise of producing materials responsive to this request if they were forwarded or discussed internally/externally.

Please confirm that this would include any communications with Cliff Banks by the custodians.

**RFP 65 (Industry Conferences).** We are at an impasse.

**RFP 66-67 (telephone records).** We are at an impasse.

**RFPs 40, 46, 47, 53, 56 (MVSC, CVR, and EVR Providers).** Thank you for the movement on these RFPs and the positions stated in your July 30, 2016 letter resolves the dispute over these RFPs.

**RFPs 90-91 (Improper use of information submitted during RCI Certification Process).** Based on Reynolds' refusal to produce documents in response to these Requests, *see* Letter from B. Ross to M. Nemelka (July 30, 2018), we are at an impasse.

\*\*\*\*\*\*

Where you owe us outstanding responses – which I have highlighted to help in your review – we ask for that response tonight, or first thing in the morning, given the Monday deadline for motions.

> Very truly yours,
>
> *s/ Michael N. Nemelka*
>
> Michael N. Nemelka