IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>THE DEALERSHIP CLASS ACTION | MDL No. 2817<br><br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**DECLARATION OF ROBERT A. WALLNER IN SUPPORT OF MDL PLAINTIFFS' OMNIBUS MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

I, Robert A. Wallner, Esq., pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am a partner at Milberg Tadler Phillips Grossman LLP, counsel for Dealership Class Plaintiffs ("Dealership Plaintiffs") in the above-captioned matter. I respectfully submit this declaration in support of MDL Plaintiffs' Memorandum in Support of their Omnibus Motion to Compel.

2. The matters set forth herein are based on my knowledge and/or understanding from other attorneys at my firm. I and other attorneys at my firm have been involved in the communications and meet and confers with CDK Global, LLC ("CDK") and the Reynolds and Reynolds Company ("Reynolds") in regard to their respective Responses and Objections to Dealership Class Plaintiffs' Amended Requests for Production.

**Overview of Meet and Confers Regarding Dealership Plaintiffs' Requests for Production Addressed to Reynolds**

3. A true and correct copy of Reynolds' Responses and Objections to Dealership Class Plaintiffs Requests for Production of Documents is attached hereto as **Exhibit A**.

4. Initial telephonic meet and confers between counsel for Dealership Plaintiffs and Reynolds took place on July 20 and 24, 2018.

5. On July 27, 2018, Dealership Plaintiffs sent Reynolds a letter in follow up to the initial meet and confers. A true and correct copy of Dealership Plaintiffs' July 27, 2018 letter to Reynolds is attached hereto as **Exhibit B**.

6. On July 31, 2018, Reynolds sent a letter responding to Dealership Plaintiffs. A true and correct copy of Reynolds' July 31, 2018 letter to Dealership Plaintiffs is attached hereto as **Exhibit C**.

7. On August 2, 2018, Dealership Plaintiffs sent a letter to Reynolds, addressing remaining issues where additional clarification was still needed. A true and correct copy of Dealership Plaintiffs' August 2, 2018 letter is attached hereto as **Exhibit D**.

8. On August 3, 2018, Dealership Plaintiffs and Reynolds held a telephonic meet and confer to discuss the remaining issue relating to Reynolds' Customer Relations Management ("CRM") or similar database.

9. On August 3, 2018, Reynolds' counsel sent a letter in follow up to Dealership Plaintiffs' August 2, 2018 letter and the August 3, 2018 meet and confer. A true and correct copy of Reynolds' August 3, 2018 letter to Dealership Plaintiffs is attached hereto as **Exhibit E**.

10. On August 5, 2018, Dealership Plaintiffs sent Reynolds a final letter regarding issues that were at an impasse. A true and correct copy of Dealership Plaintiffs' August 5, 2018 letter to Reynolds is attached hereto as **Exhibit F**.

**Impasse Regarding Reynolds' Transactional Data and Invoices**

11. During the July 20, 2018 and July 24, 2018 meet and confers between Dealership Plaintiffs and Reynolds, Reynolds counsel represented that Reynolds is not in possession of any

day-to-day transactional data for purchases by Dealerships for prior to August 2014. *See* Exhibit B at 2.

12. Further, in its July 31, 2018 letter, Reynolds confirmed it was not producing any transactional data reflecting amounts "actually paid" by dealerships, for any time period, on grounds of purported undue burden. *See* Exhibit C at 10-11.

13. Dealership Plaintiffs' August 5, 2018 letter confirmed the parties were at an impasse regarding Reynolds' Responses to Requests 36 and 44. *See* Exhibit F.

14. By contrast, CDK has agreed to produce transactional data for both its dealer and vendor customers from 2011 to present. A true and correct copy of CDK's August 3, 2018 Email to Dealership Plaintiffs is attached hereto as **Exhibit G**.

**Impasse Regarding Reynolds' Customer Relations Data**

15. During the July 20 and 24, 2018 meet and confers, Reynolds' counsel represented that Reynolds would search centralized sources of documents to find documents responsive to Dealership Plaintiffs' Requests for Production of Documents, including Request Nos. 10 and 18. Dealership Plaintiffs' counsel asked if Reynolds utilized a Customer Relationship Management ("CRM") database to manage its relationships with Dealership customers. Counsel for Reynolds stated Reynolds would investigate whether a central Reynolds CRM database existed for this purpose. *See* Exhibit B at 2 ("Central Sources of Information").

16. In its July 31, 2018 letter, Reynolds claimed it had no "CRM per se" but stated that it "does utilize a centralized tool for tracking certain sales calls and opportunities. Reynolds further stated "this database is not searchable" despite being "capable of running certain manual reports," adding that "Reynolds does not intend to engage in a manual review of large

3

databases," which was purportedly "unworkable under the current case schedule." *See* Exhibit C at 3.

17. During the August 3, 2018 meet and confer, Reynolds' counsel stated that the sales call notes database was programmed and created by Reynolds itself, and the database contained three years of call notes information for Reynolds Dealer customers, from 2015 to present. Reynolds' counsel further stated that the call notes data consist of several information fields, including the identity of each Dealership customer, the date of the entry, and fields for "activity," "opportunities," and "general comments." Reynolds' counsel also made representations about the purported difficulty and burden of exporting, reviewing, and producing documents in the sales call notes database. At no time during the August 3, 2018 meet and confer did Reynolds' Counsel object to the production of the sales call notes database based on relevance.

18. Reynolds' August 3, 2018 letter proposed producing only sales call notes related to the named Dealership Plaintiffs who purchased DMS services from Reynolds. *See* Exhibit D.

19. Dealership Plaintiffs' August 5, 2018 letter confirmed the parties were at an impasse on the issue of Reynolds' Responses to Requests 10 and 18 through production of the call notes database. *See* Exhibit E.

**Meet and Confers Regarding Dealership Plaintiffs' Requests for Conference Materials Addressed to CDK and Reynolds**

20. CDK has accepted Dealership Plaintiffs' proposal regarding Request Nos. 37 and 38, seeking materials relating to conferences and conventions. Reynolds, however, has rejected a nearly identical proposal.

21. On July 9, 2018, counsel for Dealership Plaintiffs and CDK met and conferred on several of Dealership Plaintiffs' Requests, including Request Nos. 37 and 38. A true and correct

4

copy of CDK's Responses and Objections to Dealership Class Plaintiffs Requests for Production of Documents is attached hereto as **Exhibit H**.

22. By letter dated July 31, 2018, Dealership Plaintiffs offered a narrowing proposal regarding Request Nos. 37 and 38 to CDK, requesting that CDK produce: "all documents showing connections between CDK and Reynolds (including memos, diary entries, receipts for travel, hotels, and restaurants); all documents produced, used or distributed by CDK at any conference or convention where current or potential DMS or DIS customers attended; and all documents reflecting information instruction, or training provided to CDK employees or agents in relation to any conference or convention where current or potential DMS or DIS customers attended." A true and correct copy of Dealership Plaintiffs' July 31, 2018 letter to CDK is attached hereto as **Exhibit I**. (A copy of CDK's prior letter, dated July 25, 2018, is also attached hereto as **Exhibit J**.)

23. By letter dated August 2, 2018, CDK agreed to Dealership Plaintiffs' proposal, stating: "CDK intends to instruct its reviewers to look for the following documents related to industry conferences: (a) documents evidencing or otherwise reflecting meetings between CDK and Reynolds, if any, at such conferences, (b) marketing and promotional materials used or distributed by CDK at such conferences, and (c) written training and instructions provided to CDK employees concerning the marketing of CDK's DMS services, applications, or Data Services at such conferences." A true and correct copy of CDK's August 2, 2018 letter to Dealership Class Plaintiffs is attached hereto as **Exhibit K.**

24. By contrast, in its letter dated July 31, 2018, Reynolds rejected a nearly identical proposal relating to Dealership Plaintiffs' Request Nos. 33 and 34 addressed to Reynolds. *See* Exhibit B at 7-8; Exhibit C at 7; Exhibit D at 2.

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Dated: August 6, 2018                                       /s/ Robert A. Wallner
                                                            ROBERT A. WALLNER

6