# Exhibit B

MILBERG TADLER PHILLIPS GROSSMAN LLP

NEW YORK

Robert A. Wallner
Direct Dial: (212) 946-9335
rwallner@milberg.com

July 27, 2018

**VIA EMAIL**

Leo Caseria, Esq.
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422

Brian Ross, Esq.
Gibbs & Bruns LLP
1100 Louisiana Street, Suite 5300
Houston, TX 770022

      Re:    *In re Dealer Management Systems Antitrust Litig.*,
             MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Leo and Brian:

We write to follow up on our meet and confer calls on July 20th and July 24th regarding Reynolds' Responses to Dealership Plaintiffs' First Set of Requests for Production. Please advise us immediately if you disagree with our review of these teleconferences. With motions to compel due on August 6th, we ask that you kindly respond to this letter by Tuesday, July 31st.

Pre-2013 Time Period

As you stated at the outset of our July 20th teleconference, and as you reiterated on July 24th, Reynolds is apparently standing on its objections to producing documents from earlier than January 1, 2013 (for the limited Requests where we seek such documents, *e.g.*, Request Nos. 1-3, 4, 6, 11, and 29). As you are aware, we do not view the statute of limitations as a proper limitation on Reynolds' obligation to produce documents, especially given the allegations in the complaint and Reynolds' motion to dismiss (*see* Reynolds' supporting memorandum at 1 ("Background" section starting: "Since the late 1980s"). Please advise if you have reconsidered your position on this issue for any of our Requests. Otherwise, it appears we are at an impasse.

Page 2

<u>Attorney Client Privilege/Advice of Counsel</u>

You stated during our July 20th meet and confer that Reynolds has no present intent to seek a defense based on advice of counsel. We therefore request that you notify us immediately should your intentions change.

<u>Arbitration</u>

You stated that Reynolds is not withholding, and will not withhold, any documents pursuant to the arbitration-related objections set forth in your Responses and Objections. Dealership Plaintiffs maintain that our claims against Reynolds are not subject to arbitration.

<u>Transactional Data</u>

You stated that Reynolds is not in possession, custody, or control of any day-to-day transactional data from prior to August 2014. You stated that Reynolds has produced all day-to-day transactional data in its possession, custody, or control from August 2014 forward.

<u>Central Sources of Information</u>

At the outset of our July 20th meet and confer, we addressed the fact that, for several of our Requests, you have indicated that Reynolds is willing to produce responsive documents that are identified through the application of agreed upon custodians and search terms. We stated our position that we are entitled to all documents responsive to our Requests – including documents contained in custodial files and documents stored in central or shared locations. You stated that Reynolds' General Objection No. 9 – wherein Reynolds agrees to search agreed upon custodial files as well as any central or shared file locations that may contain responsive documents – applies to all Requests where Reynolds has agreed to search for responsive documents. And you reiterated this on several occasions throughout our discussions on various individual Requests (*e.g.* Request Nos. 2, 5, 6, 7, 8, 15).

Specifically, you stated that, where applicable, you would search central or shared filed locations such as: central databases of transactional data, central sources of customer information (which produce the "Bill-Stop" reports), central Customer Relationship Management (CRM) databases used to manage or record interactions with Vendor or Dealership customers, and/or centralized files for committees or business units (*e.g.*, those relating to pricing, marketing, competitive intelligence).[1]

You also said you would provide the Bates numbers for the data dictionaries which explain the fields in each of the databases in question. We await your response on that point.

---

[1] We note that, for Reynolds' document productions to date, the metadata identifies certain documents as coming from sources labeled "Competitive Intelligence," "Sales Exchange," and "Corporate." Dealership Class Plaintiffs understand these sources will be among those searched for responsive documents.

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 3

Request No. 1

You stated that Reynolds would produce documents collected from all agreed custodians and search terms, as well as central sources of documents in response to this Request, except that Reynolds will not produce documents showing the technical means by which Reynolds has either blocked or permitted Third Party Integrators' access to the Reynolds DMS.

Request No. 3

You confirmed that Reynolds did not provide any VPN tunnel access or other direct access to any Third Party Integrators. Please advise us immediately if this is inaccurate.

Request No. 7

We asked you to confirm whether Reynolds maintains a centralized or shared file source for marketing materials, and if so, whether that file source will be searched for documents responsive to this Request. We await your response.

Request No. 8

You indicated that documents responsive to this Request would be located in centralized or shared file sources. Please confirm which centralized or shared file sources will be searched for documents responsive to this Request.

Request No. 9

You stated that Reynolds may be willing to produce responsive documents if this Request is narrowed. For the record, we believe that all documents in Reynolds' possession (from January 2013 to present) pertaining to other DMS providers are potentially relevant to Dealership Plaintiffs' conspiracy claims against Defendants.

In the interest of potentially narrowing the dispute, please confirm whether Reynolds is willing to produce: all documents responsive to parts (b) and (c) of this Request as originally worded, and documents comparing Reynolds DMS to other DMS products or services. We reserve our right to seek supplemental discovery responsive to this Request as originally worded in the event that additional sources of responsive documents are identified in the course of discovery.

Request No. 10

You stated that Reynolds is agreeable to producing all documents in its possession, custody, or control, that are responsive to parts (a) and (b) of this Request (relating to

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 4

litigation/threats of litigation, and/or restricting data access, as a result of switching or attempting to switch DMS providers). Please confirm this in writing.

Additionally, please advise if Reynolds will agree to produce documents responsive to parts (c) and (d) of this Request with the following rewording:

(c) all documents concerning Reynolds DMS customers not renewing their contracts for DMS services, for the timeframe of January 1, 2014 to present; and

(d) all documents concerning Reynolds month-to-month contracts with DMS customers, for the timeframe of January 1, 2014 to present.

Finally, please confirm that, to respond to this Request, you will search any CRM system or other central sources that may contain notes about DMS customers switching or attempting to switch DMS providers (as you represented during our July 20th call).

Request No. 12

You objected to this Request to the extent the discovery sought would potentially include all routine correspondence with RCI customers regarding their contracts. We maintain that such correspondence may be relevant to our claims. Nevertheless, in the interests of avoiding the need for court intervention on this Request, please advise if Reynolds is agreeable to producing:

(a) all documents relating to Reynolds' decision-making or internal discussions about automatic extensions and/or renewals of RCI contracts; and

(b) all documents evidencing communications between Reynolds and RCI customers regarding RCI customers' concerns about automatic extensions and/or renewals of RCI contracts.

We reserve our right to seek supplemental discovery responsive to this Request as originally worded in the event that additional sources of responsive documents are identified in the course of oral discovery.

Request No. 13

Per our discussions on July 20th, please confirm whether Reynolds will produce:

(a) for every Dealership participating in this case, all documents provided to the Dealership that comprise any contractual relationship between the Dealership and Reynolds (including Authorization Letters, Master Agreements, Customer Guides, Defined Terms, Exhibits, any documents included in any of the foregoing items, and any addenda thereto); and

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 5

     (b) for all Dealerships, summary data reflecting each version of any contractual documents (Authorization Letters, Master Agreements, Customer Guides, Defined Terms, Exhibits, any documents included in the foregoing, and any addenda thereto) that were provided to the Dealerships, and the time period during which each version was in effect.

<u>Request No. 14</u>

     Similarly, please advise whether Reynolds is agreeable to producing a chart or database reflecting which contractual terms relating to renewal and/or extension of DMS contracts were signed by each Dealership. Further, please confirm that the "representative sample" of automatic renewal or extension terms in DMS contracts will cover all versions of those terms that have been included in any Reynolds DMS contracts during the relevant timeframe.

<u>Request No. 15</u>

     You indicated Reynolds would likely be willing to produce responsive documents for certain contract terms, but you requested that we narrow the Request. Accordingly, please confirm whether Reynolds is agreeable to producing all documents relating to any changes or proposed changes to Reynolds DMS contract terms regarding:

     (a) contract duration;

     (b) contract renewal and/or extension (to the extent not covered by Request No. 14);

     (c) the ability of individuals or entities other than Reynolds and the Dealership customer to access the DMS and/or use data stored on the DMS;

     (d) any time or limitations period for bringing claims; and/or

     (e) Reynolds' ability to change the prices charged to Dealership customers for DMS software and services.

<u>Request No. 16</u>

     You stated that Reynolds has produced: (1) two "Bill Stop" reports reflecting all Dealerships that have switched from a Reynolds DMS since January 1, 2013, as well as the DMS provider to whom they switched; (2) a "Store Base" report reflecting the number of Dealerships that have switched away from a Reynolds DMS since January 1, 2013, and (3) transactional data from August 2014 to October 2017. Please confirm these documents are sufficient to identify the Dealerships that used a Reynolds DMS during the Relevant Time Period, plus the dates those Dealers started and (if applicable) stopped using a Reynolds DMS.

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 6

Request No. 17

Please confirm whether, during the Relevant Time Period, Reynolds has maintained a database recording or reflecting the amounts paid by each Dealership. If so, please advise whether Reynolds is searching said database for documents responsive to this Request.

Request No. 18

On our July 24th call, we asked you to confirm that Reynolds will provide: all responsive documents collected from agreed custodians and search terms, as well as all documents used by Reynolds' Pricing Committee, and any other responsive documents found in other central or shared file sources. We await your response.

Request No. 19

On our July 24th call, we asked if Reynolds is agreeable to producing responsive data for 2011 to present. Please advise.

Request No. 20

On our July 24th call, we asked you to confirm whether Reynolds has any documents reflecting the allocation of costs, including any security-related costs, associated with providing DMS products and services. You said you would get back to us. We await your response.

Request No. 21

You stated that the Bill Stop reports have columns reflecting the reasons why Dealerships ceased using DMS services from Reynolds. You said that, in addition, Reynolds might be agreeable to providing documents responsive to this Request that are identified through agreed upon search terms and custodians. Please confirm Reynolds' position on this.

Request No. 22

We understand that Reynolds will soon provide answer as to whether Reynolds will produce documents from Searches of Custodial files and central sources of information in response to this request. To be clear, should Reynolds refuse, we will be at an impasse regarding "documents sufficient to show when [up-front initiation fees, per-dealership setup and installation fees, per-transaction fees or other one-time charges] were instituted; when they were instituted; and by how much they increase a dealer's monthly DMS fees." We await your response.

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 7

Request Nos. 23-26

You stated that Reynolds would produce documents collected from all agreed custodians and search terms, as well as central sources of documents, in response to these Requests. With regard to Request No. 23, Reynolds has promised to produce, along with custodial searches and other central sources, "all documents considered by the Pricing Committee." Please confirm this.

Request Nos. 27-29

You agreed that Reynolds would produce documents collected from all agreed custodians and search terms, as well as central sources of documents, in response to these Requests. Please confirm this.

Request No. 30

You stated that, sometime around December 2017, you reached an agreement with Authenticom that Reynolds would respond to their Request No. 70 in the form of an interrogatory response. You stated that Reynolds has yet to provide such a response to Authenticom. We do not believe we are bound by your agreement with Authenticom on this issue. In the spirit of cooperation, however, please advise if Reynolds is agreeable to responding to our Request, as worded - including part (d) and covering the entire timeframe of January 1, 2013 - in the form of a written declaration from the appropriate person or person(s) at Reynolds.

Request No. 31

Please confirm whether Reynolds will agree to provide responsive documents dating back to 2011 for this Request.

Request No. 33

You said you would get back to us about documents responsive to this Request that Reynolds may be willing to produce – such as documents showing connections between Reynolds and CDK. This would include memos, diary entries and travel, accommodation and restaurant receipts. Please advise whether you are agreeable to provide responsive documents here.

Request No. 34

Please confirm whether Reynolds is agreeable to producing:

(a) all documents produced, used, or distributed by Reynolds at any conference or convention where current or potential DMS or DIS customers attended; and

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 8

(b) all documents reflecting information, instruction, or training provide to Reynolds employees or agents in relation to any conference or convention where current or potential DMS or DIS customers attended.

Request No. 35

We asked you to identify the Bates number of the Civil Investigative Demand served on Reynolds in the FTC's joint conduct investigation. Please advise.

We also confirmed that we will revisit this Request as it relates to the FTC's investigation relating to the Auto/Mate transaction after we have a ruling on CDK's related Motion for Protective Order.

Request No. 36

Please confirm whether Reynolds will produce documents reflecting the amounts paid by data integrators and/or Vendors, as per this Request.

Request No. 39

Please confirm whether Reynolds is in possession, custody, or control of any documents responsive to this Request that are not privileged.

Request No. 40

You confirmed Reynolds is not aware of any non-privileged documents responsive to this Request.

Request No. 41

You stated you would provide the Bates number for your document retention policy, as well as the dates that policy was in effect. We await your response.

Request No. 44

Please confirm whether, during the Relevant Time Period, Reynolds has maintained a database containing invoices for Vendors that used DMI, Integralink, or the RCI Program. Additionally, please advise whether Reynolds is agreeable to producing a sampling of such invoices.

*****

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 9

      Again, we are agreeable to continuing to meet and confer with you on any remaining disputes regarding these Requests; however, given the approaching deadline for motions to compel, we would appreciate your response to this letter as soon as possible.

                Sincerely,

                /s/ Robert A. Wallner

CC:    Derek T. Ho               Robert A. Wallner
       Michael Nemelka

MILBERG TADLER PHILLIPS GROSSMAN LLP