# Exhibit E



Brian T. Ross
Partner
bross@gibbsbruns.com
713.751.5286

August 3, 2018

**Via Email**
Robert A. Wallner
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza 19th Floor
New York, NY 10119

Re: *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864, MDL No. 2817 (N.D. Ill.)

Dear Rob,

This is in response to your letter from yesterday. In light of your request for a response by today, I will try to make this short and sweet.

**Pre-2013 Timeframe.** Your letter inquires whether Reynolds would agree to remove the general date limitation two specific categories of documents. While we believe that the January 1, 2013 date limitation is appropriate for all of the reasons that have been discussed, Reynolds would in the interest of compromise be willing to produce documents prior to that date for the two specified categories, assuming that will resolve any other remaining disputes with respect to the general January 1, 2013 date limitation.

**Request Nos. 9 and 12.** As explained in Reynolds's July 31 letter to Dealership Class Plaintiffs, Reynolds is prepared to accept your proposed compromises on these two requests, if that compromise actually resolves the requests. Your letter from yesterday confirms that Dealership Class Plaintiffs want the benefit of this compromise but also want to reserve the right to reopen discovery on the requests as originally worded. We respectfully decline to agree to what we view as a one-sided compromise.

**Request Nos. 10 and 18.** Your letter states that Reynolds has "refused to review [its] centralized sales call note database." Reynolds's July 31 letter says that we are continuing to investigate the burden of retrieving information from this database, and that it currently appears that anything close to a comprehensive review or examination of this database would be patently unworkable under the current case schedule, but we may be able to agree to provide an agreed upon sample of information to you as a compromise. Indeed, after I received your letter, your colleagues Mr. Hughes and Ms. Schindler reached out to me for a call on this very issue, and we spoke at length this afternoon. Following up on that call, in the interest of compromise, Reynolds

Robert A. Wallner
August 3, 2018
Page 2 of 2

is willing to try to export and, if successful, produce, all of the database entries regarding the named dealer plaintiffs who are Reynolds customers.  Please let me know if that will resolve this issue.

**Request Nos. 33 and 34.**  Based on Dealership Plaintiffs' position on our last call, I believe you are correct that we have reached impasse.  However, I would appreciate if you would put your proposed compromise in writing so that we can ensure there has been no miscommunication.

**Request Nos. 36 and 44.**  In response to your follow-up questions:

1. REYMDL0037507 reflects every price paid by every RCI vendor for every interface package from 2010-2017, as well as all other fees, but it does not purport to show invoice amounts.  As we have explained, pulling all actual invoices (or invoice data) is prohibitively burdensome and time-consuming (and for several of the years in this range impossible).  In case you are not aware of our discussions with the Individual Plaintiffs' counsel, Reynolds has offered as a compromise to produce all invoices for 30 RCI vendors for the entire time period that Reynolds can (April 2014 to the present).  In addition, Reynolds has offered to produce a chart showing the number of interface packages—by month, by vendor—from 2010-2017.

2. See above.  In addition, Reynolds states that it will work in good faith to supplement the above information for 2018 in due course.

3. Again, see above.  In addition, we would refer Dealership Class Plaintiffs to the large sample of RCI invoices that we have offered to gather and produce.

Sincerely,

Brian T. Ross

Cc: MDL Service List