# Exhibit H

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**THE DEALERSHIP CLASS ACTION** | **MDL No. 2817**<br>**Case No. 18-cv-00864**<br><br>**Hon. Robert M. Dow, Jr.**<br>**Magistrate Judge Jeffrey M. Gilbert** |

**CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO
DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF REQUESTS
FOR THE PRODUCTION OF DOCUMENTS**

Defendant CDK Global, LLC ("CDK"), by and through its attorneys, and pursuant to Fed. R. Civ. P. 26 and 34, hereby submits its written objections and responses to Dealership Class Plaintiffs' ("Plaintiffs'") First Set of Requests for the Production of Documents for Defendant CDK Global, LLC, dated May 25, 2018 (the "Requests").[1]

**GENERAL OBJECTIONS**

1.      CDK asserts each of the following objections to the Requests. In addition to these General Objections, CDK may also state specific objections to a Request where appropriate. By setting forth such additional specific objections, CDK does not in any way intend to limit or restrict its General Objections. Moreover, to the extent CDK provides a response to any of the Requests to which CDK objects, such response shall not constitute a waiver of any General Objection or specific objection.

---

[1] On June 13, 2018, Plaintiffs served an "Amended" First Set of Requests for the Production of Documents, which reiterated their May 25 Requests verbatim and added a new Request No. 49 that purports to "incorporate[ ] all RFPs propounded by the Individual Plaintiffs and formally request[ ] all documents sought by those RFPs." CDK believes that these "Amended" Requests are untimely under Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166), improper, and that in any event, CDK's responses are not due until July 13, 2018—thirty days after service. Nevertheless, solely for efficiency's sake, CDK incorporates its responses to Request Nos. 1-48 and "Amended" Request No. 49, below, and hereby serves them as its responses to the "Amended" Requests as if fully and separately stated.

2.      Nothing herein shall be construed as an admission by CDK regarding the competence, admissibility, or relevance of any fact sought by the Requests.  CDK reserves its right to challenge the competency, relevance, materiality, and admissibility of any information or documents that it produces in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action.  Further, CDK intends no incidental or implied admissions by its answers to the Requests.  Whether CDK answers or objects to any particular Request should not be interpreted as an admission that CDK accepts or admits the existence of any fact(s) set out or assumed by such Requests, that the Requests are proper, that CDK's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding.  Furthermore, whether CDK answers part or all of any particular Request is not intended and should not be construed as a waiver by CDK of any or all objections to such Request or any other Request.

3.      CDK objects to any request, instruction, definition, or directive contained in the Requests to the extent that it purports to impose any obligations on CDK beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

4.      CDK objects to certain Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome.  The limitations period applicable to Plaintiffs' claims is, at most, four years from the date the first Dealer lawsuit was filed in this Multidistrict Litigation ("MDL"), which was

October 19, 2017. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. Therefore, CDK objects to the extent a Request seeks documents from any period beyond the applicable statute of limitations, and unless otherwise specified in its response, CDK's production of documents in response to such Request, if any, will be limited to the time period beginning on or after January 1, 2013.

5.      CDK objects to making multiple collections of documents for purposes of responding to these and other Requests for the Production of Documents served in the MDL, dated October 2, 2017, March 23, 2018, and May 25, 2018, on the ground that such collections are unnecessarily burdensome and disproportional to the needs of the case. Therefore, to the extent that CDK has already collected documents from sources implicated by these Requests in connection with fulfilling its discovery obligations in the MDL, CDK objects to making additional collections for purposes of responding to these Requests.

6.      CDK objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of CDK; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery. To the extent that the Requests, or any one of them, seek such information, CDK hereby claims such privilege and invokes such protection. The fact that CDK does not specifically object to an individual request on the grounds that it seeks privileged or protected material shall not be deemed a waiver of the protection afforded by any applicable privilege. Similarly, to the extent any information or documents subject to a privilege or otherwise

3

protected from discovery are produced in response to these Requests, such production is inadvertent and not intended as a waiver.

7.      CDK objects to the Requests to the extent that they seek information and/or documents that are confidential or otherwise proprietary in nature.  The represented parties in this litigation have agreed upon an Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Dkt. 104).  Thus, to the extent that a request calls for production of confidential or competitively sensitive material, as defined by the Confidentiality Order, CDK will only produce such material subject to that Order.

8.      CDK objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of CDK's employees and other persons, including individuals who are not parties to this litigation.  CDK reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation, including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that CDK may produce.

9.      CDK objects to the Requests to the extent they purport to require the production of documents or information that are not maintained by CDK in the form or manner requested.

10.     CDK objects to the Requests to the extent that they seek the production of documents or information beyond the possession, custody, or control of CDK or its current officers, directors, or employees and/or that cannot be located with a reasonably diligent search, thus making the Requests unduly burdensome.

11.     CDK objects to the Requests on the ground of undue burden to the extent that they seek the production of documents or information currently in Plaintiff's possession, custody, or control, that is publicly available, or that can be obtained more easily from third parties.

12.     No statement that CDK will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that CDK will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

13.     To the extent CDK has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found.  Similarly, in accordance with the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (Dkt. 105), CDK will produce responsive, non-privileged documents and information in accordance with the parties' agreements regarding date limitations and search terms, to avoid the need to manually inspect every potentially responsive document.  To the extent that responsive documents can be identified and produced without the use of search terms, custodian, or date limitations, CDK will make good-faith, diligent efforts to produce those responsive documents concurrent with resolving any disagreements over search criteria.

14.     CDK's responses to the Requests are based on its present knowledge, upon a reasonable inquiry.  Discovery is ongoing, and CDK's investigation continues.  CDK reserves

the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

15.     To the extent CDK has objected to or refused to produce documents or information in response to any given Request, and to the extent that Plaintiffs take issue with any such objection or refusal, CDK is willing to meet-and-confer with Plaintiffs to see if a reasonable, mutually-acceptable compromise might be reached.

16.     CDK objects to these Requests to the extent that they are duplicative of requests for production served by other parties in the MDL. Such Requests violate Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166), which directs the parties to serve "additional, *non-duplicative, coordinated* discovery requests" on or before May 25, 2018.

17.     CDK incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

<u>**OBJECTIONS TO PLAINTIFFS'**</u>
<u>**DEFINITIONS AND INSTRUCTIONS**</u>

1.     CDK objects to each and every "Definition" set forth in the Requests, including "document," "communication," "meeting," "person," "relating to," "related to," "referring to," "regarding," and "with respect to," to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 34 and/or any applicable Local Rule or other Court Order.  CDK will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     CDK objects to Plaintiffs' definition of "add-on application" in Definition No. 1 as overly broad and unduly burdensome, to the extent it purports to include "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications

6

used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

3.      CDK objects to Plaintiffs' definitions of "CDK" and "you," "your" and "your company" in Definition Nos. 5 and 26 as overly broad and unduly burdensome to the extent they purport to require CDK to produce information and/or documents beyond CDK's possession, custody, or control.  In addition, CDK objects to Definition Nos. 5 and 26 to the extent they purport to require CDK to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on CDK's behalf.

4.      CDK objects to Plaintiffs' definitions of "Authenticom," "Reynolds," and "SIS" in Definition Nos. 3, 21, and 23 as overly broad and unduly burdensome.

5.      CDK objects to Plaintiffs' definition of "data access policies" in Definition No. 7, in so far as CDK's "policies" for access to its DMS, as CDK uses and understands the term, are not limited simply to "the ability of dealers to authorize independent integrators to access data on the DMS or otherwise grant third parties access to their data on the DMS."  To the extent that CDK responds to Requests that reference "data access policies," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

6.      CDK objects to Plaintiffs' definitions of "data integrators" and "Third Party Integrators" in Definition Nos. 8 and 24, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as CDK uses and understands the term.  CDK further objects to Definition No. 8 as inaccurate.  CDK is not a "data integrator" "through its 3PA program"

despite Plaintiffs' repeated attempts to label it as such. CDK's subsidiaries DMI and IntegraLink have served in that role (as CDK understands the term) at various times during the relevant period. To the extent that CDK responds to Requests that reference "data integrators" or "Third Party Integrators," it does not mean that CDK agrees with or accepts Plaintiffs' definitions.

7.     CDK objects to Plaintiffs' definition of "Data Integration Service" in Definition No. 9, in so far as the "extracting, transforming, integrating, and/or organizing of data housed on dealer data management systems," in any regard, does not necessarily constitute "data integration service(s)" as CDK uses and understands the term. To the extent that CDK responds to Requests that reference "Data Integration Service(s)," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

8.     CDK objects to Plaintiffs' definitions of "DMI" and "IntegraLink" in Definition Nos. 11 and 16 as overly broad, unduly burdensome, and seeking documents and information that are irrelevant and not within CDK's possession, custody, or control, to the extent that these definitions purport to include any documents or information pertaining to Digital Motorworks, Inc. or IntegraLink before those entities were acquired by and incorporated into the business operations of CDK.

9.     CDK objects to Plaintiffs' definitions of "DMS" and "DMS Market" in Definitions Nos. 12 and 13, in so far as the alleged "DMS Market" is a legal conclusion that requires the application of law to facts that are subject to dispute in this action. The "DMS market," to the extent there is such a thing, is much broader than the DMSs sold to "new car franchised automobile dealers" and, at a minimum, includes all automotive dealers—new car and used, franchised or independent—that use a DMS in the operation their business. To the extent

that CDK responds to Requests that reference a "DMS Market," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

10. CDK objects to Plaintiffs' definition of "SecurityFirst" in Definition No. 22 as inaccurate, in so far as CDK's SecurityFirst initiative was not limited simply to "revamp[ing] its 3PA program." The SecurityFirst initiative had at least four elements: (i) industry transparency and education, (ii) security enhancements to the DMS, (iii) a "refresh" of the 3PA program, and (iv) a tool for dealers to gain visibility and control over how their data is accessed and used called the Dealer Data Exchange. To the extent that CDK responds to Requests that reference "SecurityFirst," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

11. CDK objects to Plaintiffs' definitions of "Vendors" and "application providers" in Definition No. 25 as overly broad and unduly burdensome, to the extent it purports to include "Vendors" or "application providers" of "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

12. CDK objects to the use of the phrase "*all* document sufficient to show" in certain Requests as vague and ambiguous. CDK interprets the phrase "all documents sufficient to show" in these Requests as seeking documents sufficient to show the subject matter of the Request, not "all" documents that would be sufficient to show the subject matter of the Request.

13. CDK objects to Plaintiffs' "Instructions" to the extent that they purport to conflict with, or impose any obligations that are greater than or otherwise inconsistent with, the ESI Stipulation, or to the extent that such instructions purport to impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 34 and/or any

applicable Local Rule or other Court Order. CDK will collect, review, and produce ESI responsive to these Requests in accordance with that Stipulation.

## CDK'S SPECIFIC RESPONSES TO
## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** All documents concerning CDK's post-merger plans for Auto/Mate, including the planned downgrading of features and service as well as the prevention of CDK's larger customers from migrating from CDK as detailed in Paragraph 6 of the March 19, 2018 FTC Complaint.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK's post-merger plans for the proposed Auto/Mate acquisition—which was announced in 2017 and subsequently abandoned in 2018—have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom's Request for Production ("Authenticom RFP") No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 2:** All documents concerning any analysis by CDK regarding the effect of the acquisition of Auto/Mate on franchise Dealers.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Any analysis by CDK of the likely effects on dealers of the proposed

acquisition of Auto/Mate—which was announced in 2017 and subsequently abandoned in 2018—has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 3:** All documents concerning any analysis by CDK regarding Auto/Mate's "aggressive competition," "winning an increasing share of opportunities," and Auto/Mate "successfully acquiring large dealership customers" as detailed in Paragraph 40 of the FTC Complaint.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Any analysis of Auto/Mate conducted by CDK relating to its proposed acquisition of the company—which was announced in 2017 and subsequently abandoned in 2018—has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 4:** All documents regarding CDK's 2016 plan designed to reduce the risk that some of its customers would switch to Auto/Mate as detailed in Paragraph 42 of the FTC Complaint.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Any analysis of Auto/Mate conducted by CDK relating to its proposed acquisition of the company—which was announced in 2017 and subsequently abandoned in 2018—has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 5:** All documents concerning the plans outlined in Paragraph 56 of the FTC Complaint regarding CDK's post-acquisition plan that would remove a DMS platform as a competitive alternative to CDK's other DMS products for many customers, which Dealer customers "highly value."

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK's post-merger plans for the proposed Auto/Mate acquisition— which was announced in 2017 and subsequently abandoned in 2018—have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 6:** All documents regarding any cooperation, coordination, joint effort, assistance, exchange of information or technical knowhow, or any other type of

collaboration between CDK and Reynolds in blocking any Third Party Integrators' access to Dealer data on their respective DMS platforms. There is no date limitation for this Request.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "Dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" regarding any "exchange of information" or "collaboration" between CDK and Reynolds related to blocking "Third Party Integrators'" access to their respective DMSs. CDK further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to this litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 2, 3, and 12.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents evidencing (1) any cooperation or agreement between CDK and Reynolds to exclude any "Third Party Integrator" from the marketplace and (2) any communications regarding coordination, joint efforts, assistance, and exchanges of information between Reynolds and CDK aimed at blocking "Third Party Integrators" identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 7:**   All documents regarding any VPN tunnel (or other direct access, *i.e.*, one that doesn't require use of login credentials) that CDK provided to any Third Party Integrators for accessing Dealer data on the CDK DMS, including any decision to rescind such access to Third Party Integrators.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege.   Specifically, CDK objects to the use of the terms "accessing" and "Dealer data" in this Request as vague, ambiguous, and undefined.  CDK also objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" regarding "any VPN tunnel" CDK used over five years ago in connection with its DMS services business and the reasons why CDK terminated that as a service.   As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013.   Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015.   Moreover, CDK's historical provision of access to a "VPN tunnel" to any so-called "Third Party Integrators" has no bearing on the claims or defenses at issue in this litigation and thus is beyond the scope of permissible discovery.   CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 15.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.   Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 8:**    All documents regarding CDK's policies concerning any changes to CDK's or other DMS providers' data access policies. There is no date limitation for this Request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege.  In particular, CDK also objects to this Request as grossly overbroad and unduly burdensome in that it seeks "all documents" regarding "any" changes in CDK's policies for third-party access to data maintained on the CDK DMS—or that of any other DMS provider—from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013.  Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015.  Additionally, CDK objects to the extent this Request seeks information not within CDK's possession, custody or control.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 20 and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 9:**    All documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including the Reynolds DMS.  There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)    all communications with Dealers or Vendors, representations to Dealers or Vendors, or statements relating to Dealers or Vendors regarding the ability

15

of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS;

(b) all statements regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS; and

(c) all documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS.

**RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of term "ability" in this Request as vague and ambiguous. For purposes of responding to this Request, CDK will interpret "ability" to mean whether or not non-CDK dealers or vendors are permitted to use third parties to access data stored on non-CDK DMSs in accordance with the DMS provider's third party access policies and/or contractual agreements. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" regarding "the ability of dealers to authorize, or vendors to use, Third Party Integrators to access data" on all "non-CDK DMS" from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 20 and 34.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 10:** All documents and communications from CDK to former Dealer customers regarding the differences or similarities between CDK and Reynolds with respect to data access policies. For the avoidance of doubt, this Request includes, without limitation, any documents or communications in which CDK marketed its open access policy as a point of differentiation with the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents and communications" to all "former" dealer customers regarding "differences or similarities between CDK and Reynolds with respect to data access policies." CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 34.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 11:** All documents relating to CDK's "SecurityFirst" and/or "3PA Refresh" initiative. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

     (a)     all presentations regarding the "SecurityFirst" and/or "3PA Refresh" initiative;

     (b)     all financial analyses conducted relating to the "SecurityFirst" and/or "3PA Refresh" initiative;

     (c)     all documents relating to the reasons CDK introduced the "SecurityFirst" and/or "3PA Refresh" initiative;

(d) all documents and communications with Dealers and Vendors regarding the "SecurityFirst" and/or "3PA Refresh" initiative, including communications concerning blocking or threatening to block Dealers and/or Vendors that did not meet the requirements of the initiative from the CDK DMS;

(e) all documents concerning any certification requirements under the "SecurityFirst" and/or "3PA Refresh," including any termination or threat of termination of a Dealer and/or Vendor for failure to meet the certification requirements;

(f) all documents and regarding any differences between the 3PA program before and after the "SecurityFirst" and/or "3PA Refresh" initiative;

(g) all documents with respect to the technological implementation of the "SecurityFirst" and/or "3PA Refresh" initiative; and

(h) all documents relating to any security or other technological enhancements instituted as part of the "SecurityFirst" and/or "3PA Refresh" initiative.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" relating, in any way, to CDK's "SecurityFirst" and "3PA Refresh" initiatives for an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. Moreover, subpart (e) of this Request is overbroad and unduly burdensome in so far as it seeks discovery of "certification" requirements for potentially hundreds of individual vendors certified under CDK's 3PA program (now known as the CDK Global Partner program), and nonsensical in so far as it seeks discovery of "certification" requirements for dealers who are not participants in the program. CDK further objects to this Request to the extent subpart (f) seeks technical information regarding the implementation of its SecurityFirst protocols or its 3PA Refresh programs as such information does not relate to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK further objects to this Request to the extent it

is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to subparts (a)-(d) and (h) of this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 12:** All documents regarding the ability of Dealers to extract their data from the CDK DMS manually, including when that capability was instituted; the means by which data is extracted; how the means to extract data manually changed, if they changed at all, over the Relevant Time Period; how often Dealers extract their own data for purposes of providing the data to Vendors; how the use of this functionality (*i.e.*, the incidence of use) has changed over the Relevant Time Period, if at all; and the means by which Dealers send their manually-extracted data to Vendors.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" regarding manual extraction of data maintained on CDK's DMS. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 28.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents (1) sufficient to show when dealers gained the

capability to manually extract data from CDK's DMS, the general means by which that extraction is performed, the frequency of that extraction, the means by which dealers forward that data to vendors, and dealers' ability to manually extract data from CDK's DMS, and (2) reflecting communications regarding dealers' ability to manually extract data from CDK's DMS identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 13:** All documents and communications from CDK to Dealers (whether existing, former, or prospective DMS customers) regarding the differences or similarities between CDK and any other DMS provider with respect to data access policies. For the avoidance of doubt, this Request includes, without limitation, any documents or communications in which CDK marketed its open access policy as a point of differentiation with the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents and communications" with dealers regarding any differences or similarities between CDK's "data access policies" and the policies of any other DMS provider. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 20 and 34.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 14:** All documents concerning any other DMS provider. For the avoidance of doubt, this Request includes:

    (a)    all documents concerning any other DMS provider's DMS and/or DMS services;

    (b)    all documents concerning the system architecture of any other DMS or DMS provider, including but not limited to the technological aspects for retrieving data from any other DMS, blocking of third party access to other DMS, or any other relevant technological matter to the claims and defenses in this case; and

    (c)    all documents concerning competition within the DMS or Data Integration Services market.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request in that it seeks literally "all documents" related, in any way, to "any other DMS provider" regardless of their relevance to the claims and defenses at issue. Accordingly, this Request is grossly overbroad and disproportionate to the needs of this case. CDK further objects to this Request to the extent it is duplicative of Dealership Class Plaintiffs' Request for Production ("Dealership Class Plaintiffs' RFP") Nos. 13, 15, 26, 46, and 47 and other Requests for Production, including but not limited to Authenticom RFP Nos. 19, 31, 32, 72, 89 and 90, to which CDK has produced and is producing responsive documents subject to its objections, and "Individual Plaintiffs'" Request for Production ("Individual Plaintiffs' RFP") Nos. 30, 67, 83, 93 and 94.

**REQUEST NO. 15:** All documents concerning any of CDK's DMS customers switching or attempting to switch to a different DMS provider, including the time and expense associated with changing or switching DMS providers, as well as all documents concerning any of CDK's DMS customers who have discontinued use of CDK's services since January 1, 2014. For avoidance of doubt, this Request includes, without limitation:

    (a)    all documents concerning any litigation or threatened litigation resulting from such a switch or attempted switch;

    (b)    all documents concerning restricting access to a former customer's CDK DMS data or threatening to restrict access to a customer's CDK DMS data if it switched to a new DMS provider;

      (c)     all documents concerning customers who have had a contract with CDK for DMS and/or DMS services and that contract was not renewed from January 1, 2014 to the present; and

      (d)     all documents concerning customers who have had a month to month contract with CDK at any time from January 1, 2014 to present, regardless of whether that customer is a current CDK customer.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks "all documents" related to any DMS customer who switched DMS providers (of which there have been hundreds) over a multiyear period. It seeks, for example, "all documents" related to any customer who switched from CDK to another DMS provider—not even just the documents related to the switch itself—and "all documents" related to any customer who had a month-to-month contract. In other words, subparts (c) and (d) of this Request alone seek "all documents" that are in any way related to potentially hundreds of customers, regardless of whether they have any relevance to the claims and defenses in this litigation. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 31 and 32, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 16:** All current signed Master Services Agreements and/or other contracts, agreements, and/or written understandings between CDK and its Dealer customers. Each agreement should include all documents that comprise the DMS contract between CDK and the Dealer, including any user guides, addendums, exhibits, and other documents that form the agreement between CDK and its Dealer customers.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all" current signed Master Services Agreements and/or other contracts, agreements, and/or written understandings between CDK and thousands of dealer

22

customers, along with all user guides, addendums, exhibits, and potentially other documents related to each agreement. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 37 and 38, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 17:** All documents concerning any provision in CDK's DMS contracts that provide for automatic renewal or extension of CDK's DMS contracts.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks literally "all documents" concerning any automatic renewal or extensions of CDK's DMS contracts, which would include routine correspondence and communications between CDK and any of its thousands of DMS customers regarding such renewals or extensions. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 37 and 38, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 18:** All documents relating to any changes or proposed changes to material terms in the CDK DMS contract, including with respect to the use of Third Party Integrators; and automatic renewal and/or extension of the contract.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning any changes or proposed changes to "material terms" in CDK's DMS contracts. Moreover, CDK objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP

Nos. 37 and 38, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 19:** All documents sufficient to show (1) which Dealers use or used a CDK DMS; (2) when each Dealer customer first used a CDK DMS; (3) how long each Dealer customer's tenure as a client of CDK has lasted; and (4) if any Dealer no longer uses a CDK DMS, when Dealer ceased using the DMS provider. For the avoidance of doubt, CDK shall provide the above information for any Dealer that was a customer of CDK at any time during the Relevant Time Period.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects that the Request is overly broad and unduly burdensome in that it seeks multiple categories of information for thousands of current CDK DMS customers in addition to former customers who used a CDK DMS at any time since January 1, 2013, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK also objects to the extent that several categories of information sought by this Request have no relevance to the claims or defenses at issue in the litigation and thus are beyond the scope of permissible discovery. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 31, 32, 33, and 36, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 20:** All documents sufficient to show the monthly pricing for DMS services paid by each Dealer customer identified in Request No. 19.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing information for "each" of CDK's thousands of current DMS customers in addition to former customers who used a CDK DMS at any time since January 1, 2013, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK further objects to this Request on the

grounds that it seeks information unrelated to any claim or defense in this litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to its DMS customers have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51 and 54.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 21:** All documents sufficient to show the total number of Dealers (both by Dealership group and by rooftop) that used a CDK DMS, broken down on a month-by-month basis.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, this Request seeks "all" documents sufficient to show the number of CDK DMS customers "both by Dealership group and by rooftop" for each month of a multiyear period. In the normal course of its business, CDK does not track or tabulate its total number of DMS customers in the manner sought by this Request, much less on a "month-by-month basis." CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The total number of dealers (both by dealership group and by rooftop) that used a

CDK DMS each month has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 31, 32, and 33.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 22:** All documents relating to any change in the pricing for DMS services paid by CDK's Dealer customers.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" related to any change in pricing for any of CDK's thousands of DMS customers. CDK further objects to this Request on the grounds that it seeks information unrelated to any claim or defense in this litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to its DMS customers have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further

objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51 and 54.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show pricing (and therefore, changes in pricing) for DMS services paid by CDK's customers, to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 23:** All documents sufficient to show the cost of CDK providing DMS services separate and apart from providing Data Integration Services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of cost information related to CDK's DMS services for a multiyear period, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK's cost structure has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. Further, CDK's costs of providing data integration services with respect to its own DMS are not separable from its costs of providing DMS services, as data integration is part of the design and functionality of the DMS itself. CDK further objects to this Request to the extent it is duplicative of other Requests for

27

Production, including but not limited to Authenticom RFP Nos. 51, 52, 53, and 54, to which

CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 24:** All documents relating to any Dealer that once obtained DMS services from CDK, but no longer does, including documents sufficient to show the reasons why those Dealers no longer obtain DMS services from CDK.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome,

and to the extent it is duplicative and seeks documents and information protected from disclosure

by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly

burdensome in that it literally seeks "all documents" concerning "any" dealer that once obtained

DMS services from CDK, but no longer does; it is inconceivable that "all" such documents could

be relevant to this litigation. Moreover, "the reasons why those Dealers no longer obtain DMS

services from CDK" in particular have no bearing on Plaintiffs' allegations that CDK and

Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with

dealers or vendors are anticompetitive, and thus are beyond the scope of permissible discovery.

CDK further objects to this Request to the extent it is duplicative of other Requests for

Production, including but not limited to Authenticom RFP No. 31, to which CDK has produced

and is producing responsive documents subject to its objections.

**REQUEST NO. 25:** Documents sufficient to show any up-front initiation fees, per-dealership setup or installation fees, per-transaction fees, or other one-time charges that CDK has charged to its Dealer customers for DMS services, broken down on a Dealer-by-Dealer basis. This Request includes documents sufficient to show when these fees or charges were instituted; why they were instituted; their amounts; and by how much they increase a Dealer's monthly DMS fees.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege. Specifically, CDK objects that the Request is overly broad and unduly

burdensome because it seeks information regarding numerous categories of fees and charges for

each of CDK's thousands of DMS customers "on a Dealer-by-Dealer basis." CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Fees and costs charged by CDK in connection with DMS services have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51 and 54.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 26:** All documents relating to the pricing charged by other DMS providers, including but not limited to Reynolds.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "pricing charged by other DMS providers" in this Request as vague and ambiguous in so far as this Request does not specify whether it seeks information related to "pricing" charged by other DMS providers for other DMS products, applications, add-on services, etc., nor to whom such pricing is charged (dealers,

vendors, etc.).  CDK also objects to this Request as grossly overbroad and unduly burdensome in

that it seeks "all documents" relating, in any way, to the pricing charged by other DMS

providers.  CDK further objects to this Request on the grounds that it seeks information unrelated

to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.

Fees and costs charged by other DMS providers have no bearing on Plaintiffs' allegations that

CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's

agreements with dealers or vendors are anticompetitive.  Moreover, to the extent that other DMS

providers' pricing has any bearing or relevance to an issue in this litigation, such pricing data is

more readily available to Plaintiffs from other sources, namely, those other DMS providers.

**REQUEST NO. 27:**  All documents concerning restrictions on Vendors' use of Third
Party Integrators to access DMS data on CDK systems or otherwise require that Vendors use the
3PA program to access data on CDK DMS systems.  For the avoidance of doubt, this Request
includes, without limitation, all documents concerning any provision in CDK's Vendor contracts
that limit the ability of Vendors to use Third Party Integrators to access data on CDK DMS
systems.

**RESPONSE:** CDK objects to this request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents or information protected from disclosure by an

applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly

burdensome to the extent it seeks "all documents" related to restrictions on vendors' ability to

"use of Third Party Integrators to access DMS data on CDK systems" set forth in CDK's 3PA

contracts and "all documents" related to CDK's enforcement of such restrictions.  CDK further

objects to this Request to the extent it is duplicative of other Requests for Production, including

but not limited to Authenticom RFP Nos. 45 and 50.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents for the period January 1, 2015 to the date of CDK's document collections related to (1) communications with vendors regarding whether they can (or cannot) use independent integrators to access CDK's DMS, including any communications that cite provisions in a particular 3PA contract to that effect, and (2) the enforcement or threat of enforcement of CDK's 3PA contract against vendors with respect to accessing data on the CDK DMS by means other than through the 3PA program, identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 28:**  All documents sufficient to show what each Vendor paid for Data Integration Services on a month-by-month basis until they stopped using IntegraLink and/or DMI for each month of the Relevant Time Period.  For the avoidance of doubt, if any Vendor so identified no longer obtains Data Integration Services from IntegraLink or DMI, provide documents and documents sufficient to show when they stopped and what they paid when they stopped.

**RESPONSE:**  CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative.  Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks monthly pricing information for "each Vendor" that obtained "Data Integration Services" from CDK's subsidiaries DMI and IntegraLink over a multi-year period, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show.  CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.  The prices that CDK's subsidiaries charge and/or charged vendors for "Data Integration Services" and the reasons why certain vendors may have stopped obtaining such services have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are

31

anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 62 and 63.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 29:** All documents concerning restrictions on Dealers' use of third parties to access DMS data on the CDK systems. For the avoidance of doubt, this Request includes, without limitation:

    (a)    all documents concerning any restrictions on Dealers' use of Third Party Integrators to access DMS data on CDK systems;

    (b)    all documents concerning any provision in CDK's DMS contracts that limit the ability of Dealers to use Third Party Integrators to access data on CDK DMS systems;

    (c)    all documents and communications with Dealers relating to whether they can (or cannot) authorize Third Party Integrators to access data on the CDK DMS, including any communications that cite provisions in a particular DMS contract to that effect;

    (d)    all documents relating to the enforcement or threat of enforcement of CDK's DMS contract against Dealers with respect to third-party access to data on the CDK DMS; and

    (e)    all documents relating to Dealer rights under DMS contracts to authorize third parties to access data on the CDK DMS.

**RESPONSE:** CDK objects to this request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" concerning any restrictions placed by CDK on

dealers' use of third parties to access CDK's DMS software. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 27, 38, 40, 41 and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 30:** All documents sufficient to show the technological aspects of:

    (a)    how data extraction occurs from the DMS database when using Third Party Integrators;

    (b)    extracting data for Third Party Integrators differs from those for (i) DMI or IntegraLink or (ii) participants of the 3PA program;

    (c)    how manual extraction of data occurs from the DMS database; and

    (d)    how the technological aspects of manually extracting data from the DMS database differs from the technological aspects of extracting data for (i) DMI or IntegraLink or (ii) participants of the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of the "technological aspects" of various methods of accessing CDK's DMS software and/or extracting data maintained on CDK's DMS, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. In other words, Plaintiffs want the technical readout of CDK's entire system—how its DMS works, how to retrieve data from the DMS, how CDK is technologically able to detect and block hostile access to CDK's DMS, etc. Such information is highly commercially sensitive yet has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or

whether the terms of CDK's agreements with dealers or vendors are anticompetitive. In short, CDK objects to producing the "technological aspects" of its DMS as unnecessary, overly burdensome, and unduly prejudicial given the highly sensitive nature of the information.

**REQUEST NO. 31:** All documents regarding CDK's use of any Third Party Integrator, including but not limited to Authenticom, for Data Integration Services. For the avoidance of doubt, this Request includes any instance in which a CDK-owned (wholly, jointly, or partially) add-on application used a Third Party Integrator for Data Integration Services with respect to any DMS platform.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" regarding CDK's "use" of "any" so-called "Third Party Integrator" for "Data Integration Services." CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 19 and 75 and "Individual Plaintiffs" RFP No. 62.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 32:** All documents regarding data security and/or DMS system performance with respect to any Third Party Integrator's access to the Reynolds or CDK DMSs. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

    (a)    all documents relating to the effect of Third Party Integrators' access to the CDK DMS on the performance of the CDK DMS;

    (b)    all documents relating to any data security incidents caused by Third Party Integrators' access to the CDK DMS; and

(c)     all documents relating to any specific system performance issue that was or is directly attributable to third parties' access to the CDK DMS.

**RESPONSE:**  CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" regarding any issues of "data security and/or DMS system performance" attributed to access by a "Third Party Integrator" to CDK's DMS from the beginning of time.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013.  Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 76, 77, and 78.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 33:**  All documents regarding any decision to block the access of a Third Party Integrator to the CDK DMS prior to the implementation of the "SecurityFirst initiative."

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning "any" decision to block the access of a

"Third Party Integrator" prior to the implementation of CDK's SecurityFirst initiative, which

was announced in 2015. CDK further objects to this Request to the extent it seeks discovery

outside the relevant time frame for purposes of this litigation. As noted above, the limitations

period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer

complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged

agreement that did not occur until February 2015. CDK further objects to this Request to the

extent it is duplicative of other Requests for Production, including but not limited to

Authenticom RFP Nos. 20, 22, 23, 24, and 42.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the

use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 34:** All documents sufficient to show how Dealer data is stored on the
CDK DMS. For the avoidance of doubt, this Request includes, without limitation:

    (a)    all documents sufficient to show whether a Dealer's data is stored separate
        from the data of other Dealers;

    (b)    all documents sufficient to show whether a Dealer's data is commingled
        with data that does not belong to the Dealer;

    (c)    all documents sufficient to show where Dealer data is stored (whether on
        servers at the Dealership, at CDK-managed server farms, at third-party
        managed server farms, or at some other location, or in some other
        manner); and

    (d)    all documents sufficient to show how the storage of Dealer data may have
        changed over the Relevant Time Period.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome,

and to the extent it is duplicative. Specifically, CDK objects to the use of the term "Dealer data"

in this Request as vague, ambiguous, and undefined. CDK also CDK objects to this Request as

overly broad and unduly burdensome in that it seeks to the production of information showing how the storage of data on CDK's DMS "may have changed" during a multiyear period, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 80, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 35:** All documents sufficient to show the specific changes to security measures instituted by CDK to protect security of Dealer data.

**RESPONSE:** CDK objects to this Request as duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 81, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 36:** All documents referencing, relating to, or concerning the National Automobile Dealers Association in connection with Dealer data or data security, including, but not limited to, an August 28, 2013 memo of the National Automobile Dealers Association sent to members concerning Dealer data guidance and a 2014 memo entitled, "10 Steps Dealers Need To Take To Protect 'Dealer Data.'"

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "Dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents" referencing, relating to, in any way, or concerning the August 28, 2013 NADA memo. CDK also objects to this Request on the ground that it seeks information that is not within CDK's possession, custody, or control and/or which is more readily available from other sources, namely NADA, the author of the memo at issue. CDK further objects to this Request to the extent it is duplicative of other

37

Requests for Production, including but not limited to Authenticom RFP No. 83, to which CDK

has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 37:** All documents demonstrating the attendance or participation of a CDK representative at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, diary entries, and travel, accommodation, and restaurants receipts, or any other documentation evidencing reimbursement for attendance at the conference or convention.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege. CDK further objects to this Request on the grounds that it seeks

information unrelated to the claims or defenses in the litigation and thus is beyond the scope of

permissible discovery. Specifically, CDK objects to this Request on the ground that its

participation (or not) at conferences and trade shows has no bearing on Plaintiffs' allegations that

CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's

agreements with dealers or vendors are anticompetitive. CDK also objects to this Request as

grossly overbroad and unduly burdensome to the extent it seeks "all" documents demonstrating

attendance by any CDK employee at industry conferences or trade shows where customers or

potential customers were present (and not simply documents sufficient to show such attendance),

including memos, diary entries, travel itineraries, and receipts. CDK also objects to this Request

on the ground that identifying which conferences and conventions were attended by customers or

potential customers is unduly burdensome. CDK further objects to this Request to the extent it is

duplicative of other Requests for Production, including but not limited to "Individual Plaintiffs"

RFP No. 73.

**REQUEST NO. 38:** All documents produced, used or distributed at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, videos, emails and any other materials used to inform,

instruct and/or train CDK representatives to market any of CDK's services to Dealers at any convention, meeting, gathering or informational events that would at any time include current or potential CDK customers.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that its participation (or not) at conferences and trade shows has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all documents" produced, used or distributed by anyone—not just CDK—at any "conference" or "convention" where customers or potential customers attended, irrespective of their relevance to the claims and defenses at issue in this litigation. CDK also objects to this Request on the ground that identifying which conferences and conventions were attended by customers or potential customers is unduly burdensome. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including, but not limited to "Individual Plaintiffs" RFP No. 73.

**REQUEST NO. 39:** Any Civil Investigative Demand served on CDK pertaining to alleged anticompetitive conduct and/or acquisitions or potential acquisitions by CDK and/or Reynolds. For avoidance of doubt, this request is for the Civil Investigative Demand itself and any attachments.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond

the scope of permissible discovery. The mere fact that CDK received a CID is not probative of any issue, nor is the mere fact that certain documents or information may have been sought from CDK through a CID probative of any issue. CDK also objects to producing any CID related to "potential acquisitions by CDK and/or Reynolds," in so far as acquisitions are not relevant to any claim or defense and "potential acquisitions" that were abandoned or otherwise never consummated are even less relevant. CDK further objects to this Request to the extent it seeks discovery outside the relevant time frame for purposes of this litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that it will produce a copy of the Civil Investigative Demand issued to CDK in connection with the FTC's joint conduct investigation of CDK and Reynolds.

**REQUEST NO. 40:** All documents concerning CDK sales data and information, including but not limited to invoices, relating to any data integrators or the following Vendors: TrueCar, Carfax, Autotrader, Cars.com, vAuto, Dealer.com, DealerSocket, RouteOne, NakedLime and DealerRater, and/or any of their subsidiaries, affiliates or related entities.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning "sales data" and/or "information," including all invoices, related to any so-called "data integrator" or any of ten other entities regardless of their relevance to any claim or defense. CDK also objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos.

51, 52, 53, 54, 57, 58, 59, 65, 66, 68, 69, 70, 102, and 103, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 41:** All documents exchanged between CDK and Reynolds and any Vendor relating to changes in data integration fees impacting (or potentially impacting) Vendors' prices and fees to Dealerships. This includes but is not limited to any documents or communications that relate in any way to Vendors increasing their prices and fees to Dealerships as a result of increases in data integration fees charged by CDK and/or Reynolds.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent is duplicative and it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" exchanged between CDK and Reynolds and "any" vendor regarding data integration fees changes. CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The data integration fees charged by CDK to vendors—and communications regarding those fees—have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. In addition, CDK objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 66, 68, 71, 96, and 97.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents, if any, within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 42:**  All documents concerning CDK's actual and projected financial results on a weekly, monthly, quarterly and/or yearly basis during the Relevant Time Period, including but not limited to:

  (a)     internal projections;
  (b)     profit and loss statements, analyses or projections;
  (c)     cost analyses or projections;
  (d)     analyses or projections of gross margins;
  (e)     budgets;
  (f)     marketing plans;
  (g)     business plans or other planning documents; and
  (h)     financial statements, including any filings with governmental agencies or presentations to banks or other financial institutions.

**RESPONSE:**  CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all documents" concerning CDK's "financial results" on a weekly, monthly, quarterly and/or yearly basis as such a request, taken literally, could be read to require the production of every document at CDK.  Further, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery.  CDK's financial status has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 52, 53, 55, 57, 58, 59, and 60, to which CDK has produced and is producing responsive documents subject to its objections, and "Individual Plaintiffs" RFP Nos. 81, 82, 83, 84, 85, 86 and 91.

**REQUEST NO. 43:**  All documents concerning CDK's policies and/or practices directed at compliance with the United States antitrust laws.

**RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the phrase "policies and/or practices directed at compliance with the United States antitrust laws" in this Request as vague and ambiguous. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all documents" that in any way concern "policies and/or practices" regarding compliance with U.S. antitrust laws. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Policies and/or practices directed at compliance with the United States antitrust laws have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. Moreover, CDK objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to "Individual Plaintiffs" RFP No. 76.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control, and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged written antitrust compliance policies and training materials distributed to employees in the normal course of business for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 44:** All documents concerning any insurance policies, indemnification agreements or hold harmless agreements that may provide coverage for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made or costs incurred in defense of this action.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable

43

privilege. Specifically, CDK objects to this Request on the ground that it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery. To the extent that any agreements subject to this Request may exist, such agreements—and any documents "concerning" such agreements—have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that, in accordance with its disclosures made pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), CDK is not aware of any documents that are responsive to this Request.

**REQUEST NO. 45:** All documents concerning CDK's policies and/or practices regarding the retention, destruction, disposal, and/or preservation of documents.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning CDK's policies and/or practices regarding the retention, destruction, disposal, and/or preservation of documents.

Subject to and without waiving these or its General Objections, CDK states that it has already produced its General Retention Schedule. *See* CDK-0701400. CDK stands on its objections to the extent this Request seeks "all documents" concerning the Schedule.

**REQUEST NO. 46:** All documents concerning the potential for entities to enter into the market for the supply of DMS, including the potential for such entry and the barriers or obstacles for such entry.

**RESPONSE** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request's use of the term "market" as

it contains legal conclusions or requires the application of law to facts that are subject to dispute in this action.  Moreover, it is unclear what documents in CDK's possession, custody, or control would speak to the potential for "entry" into such market or "barriers or obstacles for such entry."  Plaintiffs will need to explain what they are actually seeking through this Request.  CDK also objects to this Request to the extent that it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery.  The potential for entities to enter any alleged "DMS market" has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive.

**REQUEST NO. 47:**  All documents concerning the potential for entities to enter into the market for the supply of DIS, including the potential for such entry and the barriers or obstacles for such entry.

**RESPONSE:**  CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request's use of the term "market" as it contains legal conclusions or requires the application of law to facts that are subject to dispute in this action.  Moreover, it is unclear what documents in CDK's possession, custody, or control would speak to the potential for "entry" into such market or "barriers or obstacles for such entry."  Plaintiffs will need to explain what they are actually seeking through this Request.  CDK also objects to this Request to the extent that it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery.  The potential for entities to enter any alleged market for "Data Integration Services" has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive.

**REQUEST NO. 48:** All documents concerning CDK sales data and information, including but not limited to invoices and all underlying data used to generate invoices for Vendors that used (1) DMI, (2) Integralink, and/or (3) the 3PA program for data integration services, from 2011 to the present, as well as all underlying data used to generate invoices for dealers that used a CDK DMS, from January 1, 2011 to the present. This request includes but is not limited transactional data which shows the payor, date, price, discount, net payable, the category of data polled, as well as records that show the amounts paid to CDK in response to invoices.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning any "CDK sales data and information," including all "invoices" and "underlying data used to generate invoices." As written, this Request seeks the production of thousands upon thousands of invoices issued by CDK and two of its subsidiaries from January 1, 2011 to the present and all "underlying data" as well as "all documents" concerning CDK's sales which, taken literally, could be read to require the production of virtually every document at CDK. CDK further objects to this Request to the extent that it is not limited to the time period relevant to this litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015. CDK also objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51, 52, 53, 54, 57, 58, 59, 65, 66, 68, 69, 70, 102, and 103, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 49:** This RFP incorporates all RFPs propounded by the Individual Plaintiffs and formally requests all documents sought by those RFPs.

**RESPONSE:** CDK objects to this Request as untimely, duplicative, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as untimely pursuant to Paragraph B.6 of the Court's May 7, 2018 Case Management Order. CDK also objects to this Request as overly broad and unduly burdensome in that it purports to duplicate 101 other Requests for Production served on behalf of the "Individual Plaintiffs," many of which have no bearing or relevance to the Dealer Class Plaintiffs' claims or any defenses thereto. This Request also violates the Case Management Order's directive for the parties to serve "additional, *non-duplicative*, coordinated discovery requests" on or before May 25, 2018.

Subject to and without waiving these or its General Objections, CDK states that to the extent it produces documents in response to the "Individual Plaintiffs" RFPs, those documents will in the normal course be provided to all other parties in the MDL.

Dated: June 22, 2018                        Respectfully submitted,

                                        */s/ Matthew Provance*
Britt M. Miller
Matthew D. Provance
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for CDK Global, LLC*

48

## <u>CERTIFICATE OF SERVICE</u>

      I, Matthew D. Provance, an attorney, certify that I caused a copy of the foregoing **CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).

                    */s/ Matthew Provance*