# EXHIBIT 1

M A Y E R • B R O W N

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

May 16, 2018

**Britt M. Miller**
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

**BY E-MAIL**

Michael N. Nemelka
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
         MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Mike:

I write regarding outstanding discovery issues in the above referenced litigation, specifically as they relate to Authenticom Inc.'s ("Authenticom") responses to CDK's various discovery requests, as well as in response to your letters of May 11 and May 15.

With respect to your May 11 letter, we are in the process of discussing the CDK-specific issues with our client so that we can be in a position to meaningfully respond.[1] As previously indicated in Ross MacDonald's correspondence, we will be prepared to discuss those issues, as well as those set forth below, on a date mutually agreeable to all necessary parties.

As to the timing of this bilateral meet-and-confer, we note that your letter to Brian Ross of May 15 takes two completely different positions on behalf of your clients. According to you, discovery as to "parties"—at least as it relates to AutoLoop, Cox Automotive, and DealerTrack—should proceed "in accordance with the deadlines in the Case Management Order" and, as a result, those parties will not engage in discovery until May 25 at the earliest (as party discovery apparently subsumes third party discovery as to each of these plaintiffs). With respect to Defendants, however, your position is that discovery should be conducted piecemeal, some now (at least as to Authenticom) and some later (as to the Class Plaintiffs and as to MVSC, Cox Automotive (and its subsidiary brands), and AutoLoop) even though the Court has already

---

[1] Our ability to so respond is limited with respect to Authenticom's Second Set of Requests for Production as the final section of your May 11 Letter simply lists every RFP, by number, and states that it "appears that CDK is not agreeing to produce the necessary and relevant documents." That perfunctory statement fails to provide CDK with any detail from which it can discern the specific issues that need to be addressed during any meet-and-confer. Moreover, your statement leads us to believe that, contrary to your and Mr. Ho's repeated statements to the Court that you have reviewed all of CDK's production to date, your review is, in fact, not complete, as a number of the requested documents have already been produced. In any event, consistent with LR 37.2, we would ask that Authenticom identify—in advance of any meet-and-confer—any specific issues it has with CDK's responses to the identified RFPs so that we do not hear them for the first time during that call.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael N. Nemelka
May 16, 2018
Page 2

rejected Plaintiffs' proposed bifurcation of this case into Authenticom and "everyone else" and indicated that given the substantive overlap among the cases, all discovery should be coordinated. Using your logic, our call on party discovery should not occur until sometime after June 22 (the deadline for discovery responses in the in the non-Authenticom cases) when we can discuss all issues concerning discovery responses, custodians, and search term. We assume that that is not what you are proposing. In any event, as noted above, CDK stands ready to engage in a bilateral meet-and-confer as early as this Friday in the event all of the relevant parties can agree on a time and on the scope of the parties' discussions.[2]

Moreover, your repeated attempts to cast aspersions on our discovery conduct—*i.e.*, your unfounded, and demonstrably false accusation of Defendants "slow-rolling"—where none is warranted is inappropriate and we do not intend to accede to it.

Finally, as previously indicated, CDK has a number of concerns regarding numerous deficiencies in Authenticom's Objections and Responses to CDK's Interrogatories, Requests for Admission and Requests for Production.

## Authenticom's Interrogatory Responses

*Improper Objection:* Authenticom's objections to Interrogatories 9, 10, 11, 12, 13, and 14 include the following language: "Authenticom will construe this Request as concerning Authenticom's current practices." Given the time frame at issue in this litigation, that position is untenable to the extent it is being used to limit Authenticom's response to CDK's Interrogatories to Authenticom's "practices" in May 2018. To the extent Authenticom's "practices" as they relate to the subject matter of the identified Interrogatories has changed during the time period at issue in each Interrogatory, Authenticom is required to answer with respect to information within its possession, custody, or control for the entire period. Please let us know whether the stated objection is being used to materially limit Authenticom's responses to the identified Interrogatories and, if so, whether Authenticom will supplement its responses to include any relevant changes to its "practices."

*Interrogatory No. 4:* This interrogatory asks that Authenticom "describe the steps taken by [it] from January 1, 2013 to the present to prevent either Reynolds or CDK from (i) detecting Authenticom's access to data on Reynolds or CDK DMS platforms, or (ii) blocking Authenticom's access." Authenticom's vague response, which simply states it "asks its dealer clients to call Reynolds and/or CDK" when it notices profiles are being disabled" and "works with dealers to re-establish access to the dealers' data," is not sufficient under Federal Rules of Civil Procedure ("FRCP") 33(b)(3). As an initial matter, it does not answer the question that is being asked. That is, it does not address the steps Authenticom takes to evade detection, but rather the process it follows after detection has already occurred. Further, "work[ing] with

---

[2] Note that we are unavailable at the single time you proposed for Friday—10:00 a.m. Eastern—but are generally available from 11:00 a.m.-2:00 p.m. Eastern.

Mayer Brown LLP

Michael N. Nemelka
May 16, 2018
Page 3

dealers" is not a full description of Authenticom's efforts, as required under the FRCP. We request that Authenticom supplement its response with a full and complete explanation of the steps that it takes to evade detection by CDK or Reynolds and prevent blocking of its access and/or the identification of documents in its production sufficient to show the requested information (pursuant to FRCP 33(d)).

*Interrogatory No. 5*: This interrogatory asks that Authenticom identify the means by which it accesses data on non-CDK, non-Reynolds DMS platforms. Authenticom confirms that it accesses "dealer data … through a variety of platforms … including inter alia screen-scraping, data pushing, and API." Although your response identifies a few methods that Authenticom uses to access "dealer data," CDK's question was not limited to "dealer data," but rather encompassed all data on non-CDK, non-Reynolds DMS systems. Please confirm the three methods expressly identified in your response—screen-scraping, data pushing, and API—are the only methods used by Authenticom to access any data—dealer or non-dealer—on a non-CDK, non-Reynolds DMS. If Authenticom utilizes additional methods, please supplement your response accordingly.

*Interrogatory 10*: Despite being asked to "describe all the steps [Authenticom] take[s] to ensure [its] access to data maintained on a CDK or Reynolds DMS does not exceed a Dealer's express authorization." Authenticom merely states that to "access[] dealer data on a CDK or Reynolds DMS," it seeks "express permission of the dealers" who have "complete control" of the data through the DealerVault. Stating that Authenticom seeks express authorization from the dealer, does not address the interrogatory, as drafted, which seeks information about steps taken by Authenticom to ensure its access "does not exceed a Dealer's express authorization." CDK interprets Authenticom's response as confirmation that Authenticom does not take additional steps to ensure its access stays within the bounds of the Dealer's express authorization. If that interpretation is inaccurate in any material respect, please provide a supplemental response.

*Interrogatory 11*: Again, Authenticom does not answer the question that is being asked. This interrogatory asks that Authenticom describe "all steps that You take to ensure that You do not access data maintained on a CDK or Reynolds DMS that are proprietary to the DMS provider, OEMs, or to any other third parties." Authenticom's response refers to its response to Interrogatory No. 10, which—as described above—generally indicated that Authenticom seeks "express permission of the dealers" to access dealer data on the DMS. Given that dealers have the technical ability to grant access to all data on the DMS, including data that is "proprietary to the DMS provider, OEMs, or to any other third parties," we fail to understand how seeking permission of the dealers to access *dealer-data*, ensures that Authenticom does not also access non-dealer proprietary data. CDK interprets this response as confirmation that Authenticom does not take any steps to ensure it does not access data maintained on a CDK or Reynolds DMS that are proprietary to the DMS provider, OEMs, or to any other third parties. If that interpretation is inaccurate in any material respect, please provide a supplemental response.

*Interrogatory 12*: In response to a request to "[d]escribe all steps [Authenticom] take[s] to ensure that third-parties who access or receive DMS data from You do so only as authorized by Dealers," Authenticom states that the "DealerVault platform allows the dealer to control what

Mayer Brown LLP

Michael N. Nemelka
May 16, 2018
Page 4

dealer data is sent to a specific vendor."  Once again, the answer does not address the question posed, which seeks information about the steps *Authenticom*—not the dealer—takes to guarantee that third-party access is within the bounds authorized by the Dealer. CDK interprets this response as confirmation that Authenticom does not take any steps to ensure third-parties who access or receive DMS data from it do so only as authorized by Dealers.  If that interpretation is inaccurate in any material respect, please provide a supplemental response.

*Interrogatory 13*: Please confirm that AUTH_00045748, AUTH_00000418, AUTH_00000516, and AUTH_00000769 are the only four documents that Authenticom is aware of that are responsive to this interrogatory.

*Interrogatory 15*: In response to this interrogatory, Authenticom merely stated that "it is willing to meet and confer with CDK to clarify the content and scope of this Interrogatory," without (beyond its boilerplate objections) identifying what portion(s) of this interrogatory it specifically objects to.  CDK thus requests that Authenticom identify its concerns, in writing, in advance of any meet-and-confer, so we can be prepared to discuss them without further delay.

*Interrogatories 16, 17, 18 and 19*: Authenticom's responses, which generally refer CDK to "Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, and Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss," are incomplete and do not answer the questions posed in these interrogatories.  CDK has now produced over 800,000 documents (and over 2.5 million pages) to the plaintiffs in this litigation.   Please provide a supplemental response to these Interrogatories.

*Interrogatory 20*: In response to this interrogatory, which asks Authenticom to identify the terms in CDK's standard agreements with Dealers and Vendors that it contends are unlawful and/or unenforceable, Authenticom references its response to Interrogatory No. 1, which lists "Sections 4.1, 4.4, 4.5, and 6.1 of the "Wind Down Access Agreement" and the provisions of the 3PA Agreement and RCI Agreement that give reciprocal, preferential treatment to CDK's and Reynolds' respective add-on applications."  CDK interprets this response as confirmation that the only terms Authenticom contends are unlawful and/or unenforceable are within the agreements between CDK and Reynolds, and there are no additional terms "in CDK's standard agreements with Dealers and Vendors" that Authenticom believes are unlawful and/or unenforceable. If that interpretation is inaccurate in any material respect, please supplement the response provided.

*Interrogatory 21*: Authenticom's response is incomplete and unresponsive to the question posed in this interrogatory.  Authenticom's Prayer For Relief in its Complaint does not "[i]dentify the terms of access that [it is] seeking with respect to CDK DMSs" or indicate "whether those same

Mayer Brown LLP

Michael N. Nemelka
May 16, 2018
Page 5

terms should apply to other third-party 'data integrators' or applications providers who may seek access." Please update your response to answer the interrogatory as drafted.

*Interrogatory 25*: Under FRCP 33, "a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." CDK has complied with this rule such that there is no basis for Authenticom's refusal to respond. Please promptly provide a substantive response to this interrogatory.

## Authenticom's Responses to CDK's Requests for Admission

*Request For Admission 3, 4 and 8*: Authenticom changes the question that is posed in Request for Admission Nos. 3, 4, and 8, by adding the phrase "without authorization granted by a dealer." CDK's RFAs, as written, are not limited to instances where Authenticom acted or acts without authorization granted by a dealer. We therefore request that Authenticom answer the Requests as they are written:

- *No. 3*: Admit that You have accessed data maintained on CDK DMSs without a license from CDK.

- *No. 4*: Admit that You developed scripts to access data maintained on CDK DMSs by responding "YES" to the log-in prompt shown below.

- *No. 8*: Admit that You access the "PARTS," "OP-CODES," and "WIP-HISTORY" files maintained on CDK DMSs.

Should Authenticom fail or refuse to do so, CDK will promptly move to deem the RFAs, as drafted, admitted as and against Authenticom.

## CDK's Requests For Production

We previously wrote to you on January 29, 2018 identifying several ongoing issues with respect to Authenticom's discovery responses, including deficiencies in Authenticom's responses and objections to CDK's Request For Production Nos. 1, 2, 8, 32, 33, 51, and 68. During a meet-and-confer later that day, you indicated that you would follow-up with your client regarding the referenced Requests and the other issues discussed in CDK's January 29 letter. We are still waiting for your response. To the extent that your delay in responding is attributable to the prior partial stay of discovery entered by Judge Peterson, that impediment no long exists, and we would appreciate a prompt reply to our January 29 letter that addresses all of the outstanding issues.

Finally, we continue to review Authenticom's document production to determine whether it has complied with its prior document production commitments and will revert, as appropriate.

Mayer Brown LLP

Michael N. Nemelka
May 16, 2018
Page 6

Sincerely,

Britt M. Miller

cc:    Mark Ryan
        Matt Provance
        Ethan Hastert
        Jessica Michaels
        Reynolds Lead Counsel
        Plaintiffs' Co-Lead, Liaison, and Coordinating Counsel

728489183

# EXHIBIT 4

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

May 24, 2018

**Britt M. Miller**
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

**BY E-MAIL**

Michael N. Nemelka
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Peggy J. Wedgworth
MILBERG TADLER PHILLIPS GROSSMAN LLP
One Pennsylvania Plaza
New York, NY 10119

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Mike and Peggy:

I write to summarize our understanding of the parties' agreements / disagreements coming out of our meet-and-confer sessions on May 18, 21, and 22. To the extent that you disagree with our summary and/or we have misapprehended your position on any given issue, we would ask that you let us know no later than Tuesday, May 29.

**Authenticom's Discovery Requests to CDK**

As to the issues raised by your May 11, 2018 Letter, we provide the following information / summary of the parties' discussions:

**I.      CDK's FTC Production**

1.  *CDK's FTC CID Custodians*—As stated during our meet-and-confer, although all of the information necessary to identify CDK's custodians for the FTC's Joint Conduct Investigation is already in plaintiffs' possession, as a courtesy we agreed to identify them by name. They are:

    a.  Joe Bihner

    b.  Leigh Ann Conver

    c.  Kevin Distelhorst

    d.  Josh Douglas

    e.  Ronald Frey

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 2

      f.   Howard Gardner

      g.   Mark Imowitz

      h.   Robert Karp

      i.   Malcolm Thorne

      j.   Ron Workman

Please note that 9 of the 10 CID custodians are also in Authenticom's list of 17 custodians for whom CDK has already agreed to produce documents (the only exception being Josh Douglas).

2. *CDK FTC Search Terms.* Plaintiffs asked whether Defendants used search terms in producing documents in response to the FTC's CID. I reported during our Friday meet-and-confer that we were investigating this issue as Mayer Brown did not make that production to the FTC. We have since determined that the bulk of CDK's production to the FTC in connection with the Joint Conduct Investigation was done using TAR (Technology Assisted Review) and not search terms. We understand that a set of search terms may have been used to review a small subset of documents that could not be searched using TAR, but it is still unclear to what extent they were used and/or with what population they were used. We are following up and will update our response when we know more.

3. *CDK's CID.* Notwithstanding the fact that (a) there is no outstanding discovery request to CDK seeking the production of the Joint Conduct CID, and (b) Authenticom's prior informal request for its production was premised on a stated need to use it in order to challenge Reynolds's withholding non-relevant documents from its reproduction of its Joint Conduct Investigation production (an issue that is currently moot as Reynolds has re-produced the entirety of that production in the MDL), CDK has agreed to produce a copy of its Joint Conduct CID. Counsel for the Class Plaintiffs stated during our meet-and-confer that they would include a specific RFP asking for the production of the CID in their upcoming May 25 RFPs.

4. *FTC Interviews.* Authenticom's counsel clarified during our meet-and-confer that plaintiffs were unaware of the FTC having taken, scheduled, or otherwise indicated a desire to interview any of Defendants' employees as part of the Joint Conduct Investigation, but was merely basing plaintiffs' demand for "any transcript, recording, or other record from those interviews," on counsel's past experience in other, unrelated FTC proceedings. CDK agreed to consider this request if /when it actually became ripe.

II.    **Non-Custodial and Custodial Documents**

    A.    *Non-Custodial.* Plaintiffs inquired whether Defendants would be producing documents besides those previously produced to the FTC. As has already been evidenced

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 3

by CDK's production of non-FTC documents (*e.g.*, the 42,000+ records produced on January 11, 2018), the answer to that question is obviously "yes". As to the categories of documents identified in your May 11 Letter, we noted during the meet-and-confer that a number of these categories of documents are already in CDK's Joint Conduct production to the FTC including, for example, several large extracts of financial data responsive to Authenticom's request for pricing and expense information. Of course, while we reserve our rights to object to any burdensome and/or duplicative requests for additional documents (given our substantial production to date), CDK's production is ongoing and to the extent documents it has agreed to produce that are responsive to one of the identified categories has not been produced, we would expect them to be included in future productions.

B. *Custodial Documents.* Again, Authenticom's counsel's repeated assertions during our meet-and-confer sessions that Defendants did "nothing" with regards to custodial documents during the pendency of the discovery stay are inaccurate. As I reported, CDK did begun its review of custodial documents (and, as noted above, has already produced approximately 42,000 custodial records), but has structured its review of such documents, consistent with Judge Peterson's order granting the stay, to minimize duplication of effort and a waste of resources. As Authenticom's counsel was quick to point out, on several occasions during our call (in relation to their other plaintiff clients), additional, non-duplicative discovery requests are due to be served this Friday,[1] after which the parties will, we are sure, work to ensure that their collective work on custodial productions will not be unnecessarily duplicative or unduly burdensome.

III.    **CDK's RFP Responses**. As previously noted, Authenticom identified all 15 of CDK's responses to Authenticom's Second Set of Requests for Production as deficient. As discussed during our meet-and-confer, that characterization was inaccurate, but the parties agreed to continue their efforts to reach agreement on the RFPs as follows:

1.  *RFP 93*: As we explained during our meet-and-confer, contrary to Authenticom's assertion that CDK's response was limited to previously agreed search terms, CDK has already produced documents within its possession, custody, and control responsive to this Request—including documents not identified through the use of the agreed-upon search terms. CDK further stated that its production in response to Authenticom's RFPs was ongoing and specifically committed to producing documents or data from which Authenticom should be able to calculate CDK's monthly spend on so-called "independent integrators" to the extent such documents/data exist.

---

[1] As stated during our meet-and-confer, we do not expect—and believe that it would be inconsistent with the Federal Rules—for any such discovery requests to seek large amounts of additional discovery from CDK given its production of almost 3 million pages of documents to date. We reserve the right to seek a protective order as to any and all duplicative or unduly burdensome discovery or any that are not proportional to the needs of this MDL.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 4

2. *RFP 94.* Although Authenticom's proffered justification for the documents called for by this RFP remains inadequate, CDK agreed to consider a reasonable list of search terms comprised of words that Authenticom considers "profane" which, if agreed upon, would be used to search Dan McCray's documents and for the period of time relevant to the instant litigation.

3. *RFP 95.* As discussed, CDK's search for documents responsive to this Request will, pursuant to its obligations under the Federal Rules, include any non-custodian-specific files where it reasonably believes responsive documents will be found. To the extent any such files are electronic, they will be searched using the agreed-upon search terms.

4. *RFP 96.* As stated, CDK believes that its prior commitments with respect to RFPs 64-71 encompass documents responsive to this Request. Authenticom disagrees. Counsel suggested that Authenticom would propound additional search terms related to this Request. CDK agreed to consider them upon receipt and then re-engage in a meet-and-confer as appropriate.

5. *RFP 97.* See our response as to RFP 96.

6. *RFP 98.* As discussed, CDK's search for documents responsive to this Request will, pursuant to its obligations under the Federal Rules, include any non-custodian-specific files where it reasonably believes responsive documents will be found. To the extent any such files are electronic, they will be searched using the agreed-upon search terms.

7. *RFP 99.* As discussed, CDK's search for documents responsive to this Request will, pursuant to its obligations under the Federal Rules, include any non-custodian-specific files where it reasonably believes responsive documents will be found. To the extent any such files are electronic, they will be searched using the agreed-upon search terms.

8. *RFP 100.* As discussed, CDK's search for documents responsive to this Request will, pursuant to its obligations under the Federal Rules, include any non-custodian-specific files where it reasonably believes responsive documents will be found. To the extent any such files are electronic, they will be searched using the agreed-upon search terms.

9. *RFP 101.* As discussed, CDK's search for documents responsive to this Request will, pursuant to its obligations under the Federal Rules, include any non-custodian-specific files where it reasonably believes responsive documents will be found. To the extent any such files are electronic, they will be searched using the agreed-upon search terms.

10. *RFP 102.* Notwithstanding its belief that it has complied with its obligations under the Federal Rules with respect to this Request, CDK committed to confirming whether the databases identified in response to this Request have the material information found the invoices called for by this Request as well as the date range of the data produced.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 5

Authenticom's counsel agreed to propose the parameters for their newly-proposed "representative sample" of the requested invoices, which CDK agreed to consider.

11. *RFP 103.* See our response to RFP 102.

12. *RFP 104.* Authenticom's counsel agreed to narrow this Request.

13. *RFP 105.* Notwithstanding the unpersuasiveness of Authenticom's stated reason for the relevancy of this Request, CDK agreed to consider this Request and will revert.

14. *RFP 106.* With respect to Plaintiffs' request for the unredacted version of the FTC's March 18, 2018 Complaint in connection with CDK's previously proposed acquisition of Automate, CDK agreed to consider this Request and will revert. As to Plaintiffs' demand for the entirety of CDK's production of documents to the FTC in connection with the previously proposed AutoMate acquisition, CDK stands on its objection that Authenticom's repudiation of its agreement on this issue, specifically as it relates to Authenticom's RFP 56, is unjustified and inappropriate. CDK stands by its commitment to respond to this Request consistent with the parties' prior agreements and based upon the parties' previously agreed-upon search terms, date limitations, and custodians. To the extent Plaintiffs improperly persist in pursuing the production *in toto*, the parties are at impasse.

15. *RFP 107.* As noted above, CDK believes that Authenticom's addition of 20 additional search terms is unwarranted under the circumstances, particularly given the breadth and scope of Authenticom's existing search terms. Nonetheless, CDK agreed to consider these and any additional search terms Authenticom (or the other plaintiffs) may propose and respond accordingly.

**CDK's Discovery Requests to Authenticom**

As discussed during the parties' meet-and-confer, the details of CDK's concerns regarding Authenticom's discovery responses are contained in my May 16, 2018 Letter. The specific matters discussed/agreed upon during our meet-and-confer are as follows:

I.      **Authenticom's Interrogatory Responses**

A.      *Improper Objection:* Authenticom confirmed that its inclusion of the phrase "Authenticom will construe this Request as concerning Authenticom's current practices" was intended as a limitation on its responses to Interrogatories 9, 10, 11, 12, 13, and 14, and that the limitation was the result of Authenticom's belief that, without such a limiter, the Interrogatories were unduly burdensome. The parties discussed each affected interrogatory as described, in turn, below.

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 6

B. *Specific Interrogatories*

1. <u>Interrogatory No. 4</u>. We explained that Authenticom's response, which simply states it "asks its dealer clients to call Reynolds and/or CDK" when it notices profiles are being disabled" and "works with dealers to re-establish access to the dealers' data," is not sufficient under Fed. R. Civ. P. 33(b)(3) as it does not address the steps Authenticom takes to evade detection, but rather speaks only to the process it allegedly follows after detection has already occurred. Further, "work[ing] with dealers" is not an adequate description of Authenticom's efforts, as required under the Federal Rules. Authenticom declined to commit to supplementing its response (much less a date by which it would do so), but did agree to inform us by COB on May 25, 2018, whether it would supplement its response to address CDK's concern. If we do not hear from Authenticom by that agreed deadline, we will assume that it does not intend to supplement and will consider the parties at impasse.

2. <u>Interrogatory No. 5</u>. Here again, we explained that although Authenticom's response identifies a few methods that Authenticom purportedly uses to access "dealer data," CDK's question was not limited to "dealer data," but rather encompassed all data on non-CDK, non-Reynolds DMS systems. We asked Authenticom to confirm the three methods expressly identified in its response—screen-scraping, data pushing, and API—are the only methods used by Authenticom to access any data—dealer or non-dealer—on a non-CDK, non-Reynolds DMS. Alternatively, if Authenticom utilizes additional methods, we asked that it supplement its response accordingly. Authenticom agreed to supplement, but noted that discovery does not close until February and inquired whether there was a reason CDK needed this information urgently. Despite our concern that Authenticom believes that it might need nine months to supplement a relatively straightforward Interrogatory (and/or that it would wait that long to supplement its responses), we explained that given the motion to compel deadline and the basic information sought by this Interrogatory (which will guide certain of CDK's other discovery efforts), we asked that Authenticom promptly supplement. Again, Authenticom declined to commit to a date by which it would supplement, merely indicating that it would supplement in the "short term" and certainly "before February."

3. <u>Interrogatory 9</u>. This is one of the Interrogatories subject to the improper "current practices" objection noted above. As we explained during the meet-and-confer, CDK does not believe that this Interrogatory is properly limited solely to the steps Authenticom takes, if any, in May 2018 to "ensure that [it has] a Dealer's express authorization to obtain data from a CDK or Reynolds DMS on that Dealer's behalf," but rather that responsive information should be provided for the entire relevant period to the extent those steps have changed over time.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 7

Authenticom again declined to commit to supplementing its response (much less a date by which it would do so), but did agree to inform us by COB on May 25, 2018, whether it would supplement its response to address CDK's concern. If we do not hear from Authenticom by that agreed deadline, we will assume that it does not intend to supplement and will consider the parties at impasse.

4.    Interrogatory No. 10.   Here we explained that Authenticom's response merely states that to "access[] dealer data on a CDK or Reynolds DMS," it seeks "express permission of the dealers" who have "complete control" of the data through the DealerVault. Stating that Authenticom seeks express authorization from the dealer, does not address the Interrogatory as, drafted, which seeks information about steps taken by Authenticom to ensure its access "does not exceed a Dealer's express authorization."    CDK stated that it interprets Authenticom's response as confirmation that Authenticom does not take additional steps to ensure its access stays within the bounds of the Dealer's express authorization. Authenticom stated that it "didn't think that was fair" and that there was an automated process that the dealers controlled with respect to what data elements were scraped out of Defendants' DMSs. We explained that such a response was non-responsive and that, as Authenticom is aware, depending on the level of password access it is given, Authenticom could have access to all data in the DMS relating to a given dealer—dealer and non-dealer data alike. In light of this explanation, although Authenticom yet again declined to commit to supplementing its response (much less a date by which it would do so), it did agree to inform us by COB on May 25, 2018, whether it would supplement its response to address CDK's concern. If we do not hear from Authenticom by that agreed deadline, we will assume that it does not intend to supplement and will consider the parties at impasse.

5.    Interrogatory No. 11.   Here again, we explained that Authenticom's response suffered from the same improper general objection issue described above. We then explained that Authenticom also did not answer the question that is being asked in this Interrogatory.    Rather, it refers to its response to Interrogatory No. 10, which—as described above—generally indicated that Authenticom seeks "express permission of the dealers" to access dealer data on the DMS. Given that dealers have the technical ability to grant access to all data on the DMS, including data that is "proprietary to the DMS provider, OEMs, or to any other third parties," we explained that we did not understand how seeking permission of the dealers to access *dealer-data*, ensures that Authenticom does not also access non-dealer proprietary data.    CDK explained that it read Authenticom's written response as confirmation that Authenticom does not take any steps to ensure it does not access data maintained on a CDK or Reynolds DMS that are proprietary to the DMS provider, OEMs, or to any other third parties. Authenticom complained that we were reading Authenticom's response

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 8

in very "black and white" terms to which we responded that we could only read what Authenticom had written. As with a number of the other Interrogatories, Authenticom once again declined to commit to supplementing its response (much less a date by which it would do so), but did agree to inform us by COB on May 25, 2018, whether it would supplement its response to address CDK's concern. If we do not hear from Authenticom by that agreed deadline, we will assume that it does not intend to supplement and will consider the parties at impasse.

6.      Interrogatory No. 13 (mis-identified in our May 16 Letter as Interrogatory 12). Here again, we explained that Authenticom's response suffered from the same general objection issue described above. We then explained that Authenticom, again, did not answer the question that is being asked in this Interrogatory, which seeks information about the steps *Authenticom*—not the dealer—takes to guarantee that third-party access is within the bounds authorized by the Dealer. CDK explained that it read Authenticom's written response as confirmation that Authenticom does not take any steps to ensure third-parties who access or receive DMS data from it do so only as authorized by Dealers. Authenticom again complained that we were reading its responses too literally. Subsequently, although Authenticom again declined to commit to supplementing its response (much less a date by which it would do so), it did agree to inform us by COB on May 25, 2018, whether it would supplement its response to address CDK's concern. If we do not hear from Authenticom by that agreed deadline, we will assume that it does not intend to supplement and will consider the parties at impasse.

7.      Interrogatory No. 14 (mis-identified in our May 16 Letter as Interrogatory 13). We asked that Authenticom confirm that the four documents it identified in response to this Interrogatory were the only 4 that it was aware of in its production to date that were responsive to the Interrogatory. Authenticom noted that its production efforts were ongoing and that it could not say that these were the only four responsive documents. We explained that while we appreciated that Authenticom intended to produce additional documents, some of which may be responsive to this Interrogatory, and we were not taking issue with Authenticom not identifying documents that had not yet been produced, we needed definitive confirmation that the identified documents were the only responsive documents in Authenticom's document production as of May 7, 2018 (the date of its interrogatory responses) of which it was aware. Here, Authenticom agreed to either confirm the accuracy of its response or inform us whether it would be supplementing its response (but again declined to provide a date by which it would supplement) by COB on May 25, 2018. If we do not hear from Authenticom by that agreed deadline, we will assume that it does not intend to supplement and that it is standing on its existing response.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 9

8.    <u>Interrogatory No. 15</u>.  As we stated in our May 16 letter and again during our meet-and-confer, in response to this Interrogatory, Authenticom merely stated that "it is willing to meet and confer with CDK to clarify the content and scope of this Interrogatory," without identifying what portion(s) of this interrogatory it specifically objects to.  During our discussion, we clarified that the information CDK is seeking is the file name (and common name, to the extent it is referred to by Authenticom as something other than its file name) of each script or executable program that Authenticom has used or provided to dealers during the relevant period to access data maintained on a CDK or Reynolds DMS, as well as a detailed description of that script's/executable program's intended purpose and function—*i.e.*, what it was created/designed to do.  As with Interrogatory No. 5, Authenticom declined to commit to a date by which it would supplement, merely indicating that it would be in the "short term."  We ask that you promptly provide us with a date by which Authenticom will supplement its response to this Interrogatory.

9.    <u>Interrogatory Nos. 16, 17, 18, 19, and 20</u>.  Authenticom stated that it stands in its objection to each of these Interrogatories as "contention interrogatories" and does not intend to supplement its response to any of the five at this time.  We appreciate Authenticom's clarification and note that the parties are now at impasse as to these Interrogatories.

10.    <u>Interrogatory No. 21</u>.  We explained that Authenticom's response is incomplete and unresponsive to the question posed in this interrogatory as Authenticom's Prayer For Relief in its Complaint does not "[i]dentify the terms of access that [it is] seeking with respect to CDK DMSs" or indicate "whether those same terms should apply to other third-party 'data integrators' or applications providers who may seek access."  Authenticom directed us to the form of injunction that it submitted to Judge Peterson (Dkt. 179) for additional details regarding the terms of access that it is seeking.  It then conceded that its response did not address the second part of the Interrogatory—namely whether those terms should apply to other third-party 'data integrators' or application providers who may seek access—and noted that it might be able to provide "a little more" on the terms of access it is seeking.  As with Interrogatory Nos. 5 and 15, Authenticom declined to commit to a date by which it would supplement, merely indicating that it would be in the "short term."  We ask that you promptly provide us with a date by which Authenticom will supplement its response to this Interrogatory.

11.    <u>Interrogatory No. 25</u>.  Authenticom made clear that it believes that current case law in this District supports its refusal to respond to this Interrogatory as violative of Fed. R. Civ. P. 33.  We appreciate that clarification.  It also indicated its willingness to consider authority to contrary.  We stated that we understood Authenticom's decision and would consider next steps.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
May 24, 2018
Page 10

II.      **Authenticom's Responses to CDK's RFAs**

We explained that, as it had done in response to a number of Reynolds's RFAs, Authenticom changed the question that was posed in CDK's Request for Admission Nos. 3, 4, and 8, by adding the phrase "without authorization granted by a dealer." We further explained that CDK's RFAs, as written, are not limited to instances where Authenticom acted or acts without authorization granted by a dealer. Although Authenticom refused to commit to supplementing its response (much less a date by which it would do so), it did agree to inform us by COB on May 25, 2018, whether it would supplement its response to address CDK's concern or stand on its answers to these RFAs. We explained that if we do not hear from Authenticom by that agreed deadline, we will assume that it does not intend to supplement and will promptly moved to have all three RFAs admitted against Authenticom.

III.     **Authenticom's Responses to CDK RFPs**

Here we reminded Authenticom that we previously wrote counsel on January 29, 2018 identifying several ongoing issues with respect to Authenticom's discovery responses, including deficiencies in Authenticom's responses and objections to CDK's Request For Production Nos. 1, 2, 8, 32, 33, 51, and 68. We then reminded counsel that during a meet-and-confer later that day, they committed to following-up with their client regarding the referenced Requests and the other issues discussed in CDK's January 29 letter, but that we had yet to hear from them on any of those issues, notwithstanding the termination of the stay of discovery. Again, would appreciate a prompt reply to our January 29 letter that addresses all of the outstanding issues outlined therein. At a minimum, we ask that you promptly provide us with a date by which Authenticom will provide its response.

                                    * * * * * *

We are diligently working to provide plaintiffs with the information we committed to producing and trust that Authenticom is doing the same. If we have materially misstated any of Authenticom's (or the other plaintiffs') substantive positions (we are not interested in engaging in a war of words as to characterization), please promptly let us know.

Sincerely,

*Britt M. Miller*

Britt M. Miller

cc:      Mark Ryan
         Andrew Marovitz
         Matt Provance

728713024

# EXHIBIT 3

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

May 25, 2018

*Via Electronic Mail*

Brian T. Ross, Esq.                                    Britt M. Miller, Esq.
Gibbs & Bruns LLP                                      Mayer Brown LLP
1100 Louisiana                                         71 South Wacker Drive
Suite 5300                                             Chicago, IL 60606
Houston, TX 77002

Leo D. Caseria, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071

      Re:  *In re: Dealer Management Systems Antitrust Litigation*, MDL No. 2817

Dear Britt, Brian, and Leo:

      I write regarding several discovery matters discussed on our meet and confers on May 18, 21, and 22, as well as in response to your letters of May 23 (Reynolds) and May 24 (CDK).  In this letter, I address the issues raised by Defendants Reynolds and CDK with respect to their discovery requests.  In a separate letter, I will address the issues raised by Authenticom.

## I.      Issues Raised in Reynolds' May 23rd Letter

      **Reynolds Subpoenas to Cox/Dealertrack ("Cox Automotive") and AutoLoop.**  Your recitation of our discussion regarding Reynolds' Rule 45 subpoenas to Cox Automotive and AutoLoop is inaccurate.  Your description of the history also leaves out most of the relevant facts.  Most importantly, Cox Automotive's and AutoLoop's responses to the subpoenas were due December 19, 2017 (Cox Automotive) and December 22, 2017 (AutoLoop).  In those responses, both Cox Automotive and AutoLoop offered to meet and confer with Reynolds regarding their responses to those subpoenas and the scope of any document productions in response thereto.  But Reynolds did nothing.  Instead, Reynolds and CDK sought a stay of discovery, a stay that applied to discovery from Cox Automotive and AutoLoop.  During the four

1

months after the stay was entered, Reynolds again did nothing (including with respect to its own custodial discovery). Only when the stay was lifted two weeks ago did Reynolds reach out to discuss the subpoenas to Cox Automotive and AutoLoop, and now Reynolds is making unreasonable demands for immediate production of documents. Such demands are not well taken.

To make the record clear, Cox Automotive and AutoLoop are now parties to this MDL. Today, CDK presumably will serve discovery on them. Cox Automotive and AutoLoop will promptly respond to this discovery, including to the extent it overlaps with the requests from Reynolds. Cox Automotive and AutoLoop are not engaging in any delay. But they have every right to respond to Defendants' document requests in an efficient and timely manner, especially given Reynolds' utter failure to pursue a meet and confer *for over four months* after Cox Automotive and AutoLoop offered one. With respect to the two particular categories of documents for Cox Automotive that you raise – non-custodial switching and market share data – we can agree to produce those documents first, and Cox Automotive is working on gathering and preparing that information. But we cannot accede to your unreasonable demand that those documents be produced in a matter of days.

**Usernames and Passwords.** We are still evaluating whether Authenticom will redact passwords, and are not prepared to provide a response today.

**Custodial Productions.** Unlike Reynolds, Authenticom has been working on its custodial document collection and review during the pendency of the stay *and* over the past two weeks since the stay was lifted. And Authenticom has been making productions of custodial documents, including nearly 20,000 documents and 75,000 pages yesterday. If you compare that single production – which was Authenticom's ninth – to the size of Reynolds' *entire* production to date, you will see that Reynolds has no basis to complain.

**Instances of DMS Access.** Much of your recitation on this issue – like other issues – is incorrect and we will not take the time today (given that you demanded a response today, two days after sending your letter) to correct all of your misstatements. As we have stated, Authenticom does not track instances of DMS data access in the ordinary course. Apparently this information is needed for Reynolds' forthcoming counterclaims, which Reynolds has yet to file. But in good faith, Authenticom has been investigating whether there are ways to provide that information through other information that is available, including: (1) Authenticom's schedule for data access; (2) the queries that are run; (3) the data fields that are accessed; (4) the dealers using a Reynolds DMS that Authenticom serves; and (5) timing information when the dealer data is entered into Authenticom's system. Demanding a response by today is unreasonable, and we have not completed our investigation. And at no point did I claim that dealer data becomes "Authenticom data," contrary to your suggestion. We should avoid such mischaracterizations of our discussions.

**DMS Connections.** You are wrong that I "indicated that an Authenticom database containing DMS connection data exists." Instead, as you state in your letter, I offered to

2

investigate what additional DMS connection data might exist above and beyond what we have already produced, and we are doing that.

**RFAs.** Authenticom will agree to amend its responses to Reynolds' RFA Nos. 1-3.

**Interrogatories.** Authenticom will agree to supplement its responses to Reynolds' Interrogatory Nos. 13 and 20. As with other aspects of your letter, your recitation of our discussion with respect to these interrogatories is riddled with inaccuracies. For example, you state that Authenticom "could not even commit to" supplementing Interrogatory No. 20 "before the discovery cutoff." That is wrong, and I specifically stated we would supplement before the discovery cutoff. But the supplement likely will be through the identification of documents. Therefore, any supplement – especially for a contention interrogatory like Reynolds Interrogatory No. 20 – will need to wait for a fuller discovery record.

## III.    Issues Raised In CDK's May 24th Letter

**Interrogatories.** Authenticom will agree to supplement its responses to CDK Interrogatories Nos. 4, 5, 9, 10, 11, 13, 14, 15, and 21.

With respect to Interrogatory No. 25, you are correct that we explained to you that CDK has violated Fed. R. Civ. P. 33 by propounding more interrogatories than the Rules permit. We asked if CDK had any authority to the contrary, and if it did, to please provide that authority for our consideration. In the meantime, Authenticom will stand on its objections.

**RFAs.** Authenticom will agree to amend its responses to CDK RFA Nos. 3,4, and 8.

**CDK RFPs.** We thank you for the reminder regarding the outstanding discovery issues with respect to CDK's RFPs. We are working on a response to those issues, and will provide a written response next week.

Very truly yours,

*s/ Michael N. Nemelka*

Michael N. Nemelka

3

# EXHIBIT 6

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

May 25, 2018

*Via Electronic Mail*

Aundrea K. Gulley, Esq.
Brian T. Ross, Esq.                                         Britt M. Miller, Esq.
Gibbs & Bruns LLP                                           Mayer Brown LLP
1100 Louisiana                                              71 South Wacker Drive
Suite 5300                                                  Chicago, IL 60606
Houston, TX 77002

Re:  *In re: Dealer Management Systems Antitrust Litigation*, MDL No. 2817

Dear Counsel:

We write on behalf of all MDL Plaintiffs regarding additional document custodians and search terms that we request Defendants include in their document collection and review. We request a response from Defendants as soon as possible – and no later than Friday, June 1st – as to Defendants' position on these requested custodians and search terms. We also request that we then have a meet and confer on Tuesday, June 5th, at either 10:00 a.m. ET or 2:00 p.m. ET, to discuss the custodians and search terms that may be in dispute. Given that Defendants are refusing to engage in full-scale custodial review until there is a unified set of custodians and search terms, it is necessary to reach agreement (or impasse) on these items as soon as possible.

We note that the custodians and search terms that Defendants have already agreed to are identified in previous correspondence. *See*, *e.g.*, Letter from M. Nemelka to Defendants (March 14, 2018).

Finally, we note that the below requested custodians and search terms are the result of close coordination by MDL Plaintiffs to avoid duplication. Each party did independent work to identify relevant custodians and search terms, and then worked together in compiling the final, non-duplicative lists.

## I.     CDK and CVR Custodians

1.    <u>Brian MacDonald</u> (CEO, CDK). We previously explained at length why Mr. MacDonald should be a custodian. As the CEO of CDK, he has played an integral role in

1

implementing the conspiracy with Reynolds to block independent integrators. He has also had direct communications with Reynolds on topics relating to this litigation and, as CEO, very likely had high-level communications with outside parties (including CDK's investors and Elliott Management) concerning CDK's revenues, profitability, corporate strategy, data policies, etc. He also received direct communications from irate dealerships regarding CDK's blocking of dealer data. And, as CEO, Mr. MacDonald was briefed on the effect and implementation of the 2015 written agreements between CDK and Reynolds.

       2.    <u>Mark Roman</u> (Executive Sales Director, CDK). We previously explained at length as to why Mr. Roman should be a custodian. He is even more important as a custodian with respect to Motor Vehicle Software Corporation ("MVSC") given that he was one of the primary people with whom MVSC communicated when applying to become part of the 3PA program.

       3.    <u>Al Nietzel</u> (CFO, CDK). Mr. Nietzel is a longtime CDK financial executive and has been CDK's Chief Financial Officer from 2014 to present. As such, he is very likely to have relevant financial information, including information relating to CDK's sales, revenues, and profitability, as well as financial analysis of the implications of the SecurityFirst initiative and blocking of independent integrators. In Elliott Management's May 2016 letter to the CDK Board, Elliott Management singled out Mr. Nietzel as having "participated in an ongoing private dialogue" with the hedge fund from 2015 to 2016, the time period when CDK was working with Reynolds and driving revenue and profit increases through dramatic increases in data integration fees. Those communications – and documents, memoranda, and analyses related to those communications – are likely to be highly relevant and may not be in the files of any current custodian. Nietzel's documents should also speak authoritatively on the competitive relationship between CDK and Reynolds prior to and during the relevant period.

       4.    <u>Josh Douglas</u> (Senior Director of Operations, DMI). Other than Howard Gardner, Mr. Douglas is arguably the most consistent connection between CDK and Reynolds. He is featured on hundreds of direct communications with Reynolds, including many where he is the only CDK executive communicating. He appears to have been CDK's primary point of contact with Reynolds in implementing the 2015 written agreements, including moving DMI's customers to the Reynolds RCI program. He was also a member of the CDK-Reynolds "Joint Team" implementing the two companies' agreements on data integration and data access. He is also a custodian for CDK's response to the FTC's conduct investigation.

       5.    <u>Mike Joza</u> (Senior Director of Business Development, CDK). Mr. Joza communicated directly with Reynolds on matters at the heart of this case, including with respect to data integration and data access. He also directly communicated with vendors about the 3PA program, including communicating with vendors regarding CDK's 3PA price increases and the rollout of the SecurityFirst initiative. He was also centrally involved in internal strategy regarding 3PA budgeting, pricing, and functionality. *See*, *e.g.*, CDK-0248041 (attaching PowerPoint); CDK-0163664; CDK-0235171; CDK-0238589.

       6.    <u>Mike Certain</u> (Director of Strategic Accounts, CDK). Mr. Certain has been a front-line communicator with vendors and has been integrally involved in CDK's strategy to

drive Authenticom out of business. As one example, Mr. Certain communicated with Volkswagen regarding Volkswagen's desire, in early 2016, to switch from 3PA to Authenticom for data integration. CDK-0019193.

7. <u>David Wrobel</u> (Director of Marketing, CDK). Mr. Wrobel is a key figure with responsibility for CDK's marketing strategy on SecurityFirst and the 3PA program. CDK-0015901; CDK-0036311. Mr. Wrobel was also involved in "DDX mass activation," which CDK implemented after it couldn't convince dealers to voluntarily use its data integration platform, and he has personal knowledge related to whether and to what extent vendors pass through 3PA data integration fees to dealers. CDK-0039511. Mr. Wrobel also communicated directly with Reynolds about the issues in this MDL, and with respect to the MVSC case, was involved in CDK's campaign to disrupt MVSC's operations in California in order to benefit CVR's competitive position. CDK-0049413.

8. <u>Linda Bartman</u> (Global Chief Marketing Officer, CDK). Ms. Bartman was a high-ranking marketing and strategy official. She was a front-line communicator with dealers about CDK's blocking of Authenticom. She had significant responsibility for overseeing CDK's communications strategy with respect to SecurityFirst and 3PA data price increases. She also had significant involvement in CDK's communications about its price secrecy strategy. Ms. Bartman also communicated directly with Reynolds about the issues in this case.

9. <u>Michael Sailor</u> (Senior Vice President of Sales for OEMs, CDK). Mr. Sailor was involved in CDK's efforts to eliminate Authenticom and other independent integrators. He was also involved in internal discussions regarding how much functionality CDK should provide vendors that participate in the 3PA program. Mr. Sailor also communicated directly with Reynolds.

10. <u>Trey Gerlich</u> (Senior Director, Solutions Engineering, CDK). Mr. Gerlich was a "Team Member" in the CDK-Reynolds conspiracy. CDK-1424530. Mr. Gerlich was also integrally involved in anti-Authenticom strategy and messaging; CDK's 3PA pricing; CDK's vendor strategy and vendor communications; CDK's price secrecy and price secrecy enforcement; and the SIS wind-down, among other matters relevant to this MDL. *See, e.g.*, CDK-0018738 (anti-Authenticom strategy); CDK-0214377 (same); CDK-0855940 (same); CDK-0177623 (price secrecy); CDK-0264468 (vendor outreach). Mr. Gerlich also communicated directly with Reynolds.

11. <u>Jim Foote</u> (Chief Security Officer, CDK, 2001-2016). Mr. Foote was the primary officer overseeing CDK security practices during the relevant period. He communicated about Authenticom; CDK's security practices with respect to data access and dealer control over data access; CDK's use of so-called "hostile integration"; and independent integrators more generally.

12. <u>Michael Guentzel</u> (Account Director, DMI, CDK Data Strategy). Mr. Guentzel communicated directly with Reynolds. He played a key role in implementing the 2015 written agreements. At DMI, Mr. Guentzel communicated directly with vendors and dealers regarding Authenticom.

13.     Jeff Barr (Partner Ecosystem Product Strategy Director, CDK).  Mr. Barr was the author of important PowerPoints regarding CDK's failed efforts to voluntarily convince dealers to install and use DDX, CDK's data integration platform.  Mr. Barr also communicated directly with Reynolds.

14.     John Lilly (Chief Product Officer, CDK).  As Chief Product Officer, Mr. Lilly played a key role in developing, implementing, and marketing CDK's products that compete directly with independent integrators and vendors.  He also communicated directly with Reynolds.

15.     Scott Herbers (CVR GM and now VP at CDK).  His central importance to the MVSC litigation is self-evident.

16.     Jim Quinlan (VP/GM of CVR, 2016 to present).  Mr. Quinlan is CVR's top-ranking official with primary responsibility for CVR's business; he interacts with both CDK and Reynolds; and in particular he interacts frequently with and reports to Scott Herbers and Bob Karp at CDK.  He is thus relevant to many aspects of the MVSC case, including CDK's control over CVR's day-to-day operations.

17.     Janet Michaels (GM of CVR, 2014 to 2016).  As Jim Quinlan's predecessor as CVR's General Manager, Ms. Michaels is relevant to the MVSC litigation for the same reasons.

18.     Scott Dudley (VP of Operations, CVR).  As Vice President of Operations, Mr. Dudley is likely to have responsive documents concerning CVR's product, customer relationships, market share and market presence, and more.  Additionally, Mr. Dudley was also involved in CDK/CVR's efforts to ensure that Reynolds whitelisted AVRS's use of Authenticom for data integration on the Reynolds system.  CDK-1726380.

19.     Scott Bahr (National Account Manager, CVR).  As CVR's National Account Manager, Mr. Bahr is likely to have responsive documents concerning CVR's client base, customer relationships, and market share and market presence.  Mr. Bahr was also involved in CDK/CVR's efforts to ensure that Reynolds whitelisted AVRS's use of Authenticom for data integration on the Reynolds system.

20.     Jim Negrette (Director of Software Engineering, CVR).  Mr. Negrette had direct communications with Reynolds and was involved in CDK/CVR's efforts to ensure that Reynolds whitelisted AVRS's use of Authenticom for data integration on the Reynolds system.  CDK-1726380.

21.     Jason Bonifay (VP of Development, CDK).  Mr. Bonifay submitted a declaration in the Authenticom matter concerning AVRS's use of Authenticom.  CDK-0008016. Mr. Bonifay also was involved in CDK/CVR's efforts to ensure that Reynolds whitelisted AVRS's use of Authenticom for data integration on the Reynolds system.  CDK-0020449.

22.     Bob Reiger (co-founder and CEO, AVRS).  Mr. Reiger was a key player in CDK's acquisition of AVRS in 2015.  *See, e.g.*, CDK-1725993 (Project Ledson).

4

23.   Rick Francis (co-founder and CTO, AVRS). Mr. Francis was a key player in CDK's acquisition of AVRS in 2015. *See, e.g.*, CDK-1725993 (Project Ledson). Post-acquisition, Mr. Francis also was involved with AVRS's use of Authenticom for data integration on the Reynolds system. CDK-0235750.

24.   Chris Morris (Director of Sales, CDK). Mr. Morris was a primary point of contact between MVSC and CDK during MVSC's attempts to join the 3PA program. *See, e.g.*, CDK-0235232. Mr. Morris also participated in internal discussions regarding CDK's demand that EVR providers pay 25% of the top-line revenues in order to join the 3PA program. CDK-0210706 ("We need to be prepared that these vendors won't join 3PA at a 25% revenue share.").

25.   John Roeder (Senior Executive of Sales and Operations, CVR). Mr. Roeder is a high-ranking sales official within CVR, *see* CDK-0075814 (slide 2), and he has directly interacted with MVSC regarding MVSC's attempts to join the 3PA program.

26.   Richard Nichol (SVP, New Technology). Mr. Nichol was involved in CDK's policy of maintaining a "Closed Category" or "CVR Category" prohibiting CVR's competitors from joining the 3PA program, and Mr. Nichol has specifically stated that CDK cannot permit MVSC to join the 3PA program because of the competitive threat MVSC poses to CVR. CDK-0177998.

27.   Tony Limtiaco (California Operations and Inventory Manager, CVR). Mr. Limtiaco is likely to have responsive materials concerning CVR's operations, customer base, and market share and market presence in the California EVR market. Mr. Limtiaco was also involved in CDK/CVR's efforts to ensure that Reynolds whitelisted AVRS's use of Authenticom for data integration on the Reynolds system.

28.   Jose Ramirez (DMS administrator, AVRS). Mr. Ramirez is likely to have responsive information concerning CVR's acquisition of AVRS and CVR's product quality, customer relationships, competitors, market share and market presence, and more. Mr. Ramirez was also involved in CDK/CVR's efforts to ensure that Reynolds whitelisted AVRS's use of Authenticom for data integration on the Reynolds system.

29.   Nikki Nazaroff (Executive Director, AVRS). Ms. Nazaroff is likely to have responsive information concerning CVR's acquisition of AVRS and CVR's product quality, customer relationships, competitors, market share and market presence, and more. Ms. Nazaroff was also involved in CDK/CVR's efforts to ensure that Reynolds whitelisted AVRS's use of Authenticom for data integration on the Reynolds system.

30.   Jody Doublestein (Partner Program Director of Sales, CDK). Ms. Doublestein is likely to have responsive materials concerning the terms and implementation of CDK's contract with vendors such as AutoLoop, including the Statement of Work and CDK's decision to allow AutoLoop to continue using SIS as an integrator pending the approval of AutoLoop's applications in the 3PA program.

31.     <u>DeAnne Hodum</u> (Solutions Engineer, CDK).   Ms. Hodum is likely to have responsive information regarding CDK's contract and relationship with vendors in the 3PA program, including AutoLoop and Cox Automotive's solutions.

32.     <u>Michael Postal</u> (Engineer, CDK).    Mr. Postal is likely to have responsive information about the competitively sensitive nature of the information that CDK required vendors – such as AutoLoop and Cox Automotive's solutions – to provide as a condition of its certification in the 3PA program, the technical limitations imposed on the functionality of AutoLoop's applications, and the delays in approving AutoLoop's applications for the 3PA program.

33.     <u>David LaGreca</u> (Divisional Vice President, Software Engineering, CDK).   Mr. LaGreca was a "Team Member" in the CDK-Reynolds conspiracy.  CDK-1424530.

34.     <u>Mish Kumar</u> (Director, Strategic Planning and Initiatives, CDK).  Ms. Kumar was a "Team Member" in the CDK-Reynolds conspiracy.  CDK-1424530.

35.     <u>Laura Stevens</u> (Marketing Communications Consultant, CDK).  Ms. Stevens was a "Team Member" in the CDK-Reynolds conspiracy.  CDK-1424530.  She also had a role in marketing the Dealer Data Exchange program.  CDK-0035951 (see metadata).

36.     <u>Michael Kane</u> (Account Director, DMI).  Mr. Kane is likely to have responsive information about breaches of customer data by CDK that were disclosed to AutoLoop.  Michael Kane was also involved with the planning and implementation of SecurityFirst.  CDK-0015052.

37.     <u>JoAnn Billiter</u> (Account Specialist, CDK).   Ms. Billiter is likely to have information related to CDK's billing practices with respect to vendors in the 3PA program, including AutoLoop and Cox Automotive's solutions.

38.     <u>Joe Bihner</u> (Senior Operations Executive, CDK).  Mr. Bihner has had a lead role in managing CDK's relationship with Cox Automotive and its various solutions.

39.     <u>Byron McDuffee</u> (VP, Global Strategy, CDK). Mr. McDuffee has had a lead role in developing CDK's strategy with respect to dealer data, including managing CDK's relationships with key vendors such as Cox Automotive and its various solutions.

40.     <u>Robert Marvin</u> (Vice President, Commercial Strategy and Pricing).  Mr. Marvin has had a lead role in pricing strategy for CDK as well as CDK's strategy regarding the acquisition of competing entities.  Mr. Marvin has also conduced analysis of CDK revenue attributed to the 3PA program.

## II.     Reynolds Custodians

1.     <u>Jon Strawsburg</u> (VP of Product Planning, Reynolds).    Mr. Strawsburg communicated extensively with CDK on topics related to this litigation, including whitelisting (CDK-0071848).  He was also a primary point of contact for vendors when applying to the RCI

program, including MVSC, and, within Reynolds, he had primary responsibility for interacting with and overseeing CVR.

2.   <u>Michael Braun</u> (Director, Data Services, Reynolds).  Mr. Braun was involved in implementing the 2015 agreement between CDK and Reynolds (CDK-1802135) and in blocking third-party access.

3.   <u>Barbara L Wenclewicz</u> (Technical Manager, Reynolds).  Ms. Wenclewicz was involved in implantation of the RCI (CDK-1802135).

4.   <u>Eric Kaser</u> (VP of Sales, Major Accounts Group, Reynolds). Mr. Kaser communicated on issues relating to customer/dealer complaints, data issues, and other topics relating to this litigation.

5.   <u>Christopher Rulon</u> (VP of Sales, Major Accounts Group, Reynolds).  Mr. Rulon communicated on issues relating to customer/dealer complaints, data issues, and other topics relating to this litigation.

6.   <u>Dan Agan</u> (Executive Vice President, Reynolds).  Mr. Agan was involved with negotiating the Reynolds Master Services agreements.  REYMDL00117393.

7.   <u>Keith Hill</u> (VP of Sales, Reynolds).  Mr. Hill communicated on issues relating to data security, security enhancements, customer/dealer complaints, and other topics relating to this litigation.

8.   <u>Peter Sidwell</u> (VP of Sales, Reynolds).  Mr. Sidwell communicated on issues relating to data security, security enhancements, dynamic reporting, dealer complaints, and other topics relating to this litigation.

9.   <u>Kasi Edwards</u> (VP of Marketing, Reynolds).  Ms. Edwards contains internal and external Reynolds corporate communications regarding security updates, security enhancements, CDK disruptions, the Authenticom lawsuit, and other topics relating to this litigation. REYMDL00103795.

10.  <u>Ian Reilly</u> (Manager, Sales Operations Canada, Reynolds).  Mr. Reilly communicated with dealers regarding integration fees (REYMDL00113712; REYMDL00113714) and other issues relating to this litigation.

11.  <u>Jamie Martin</u> (Marketing, Reynolds).  Mr. Martin was listed as part of the team implementing the 2015 agreement between CDK and Reynolds (CDK-1424530) and created marketing materials regarding data security (REYMDL00025832).

12.  <u>Tim Rahill</u> (Account Executive, Reynolds).  Mr. Rahill discussed data integration fees with dealers (REYMDL00059819) and other issues relating to this litigation.

13. <u>Donald Burlile</u> (Manager OEM Relations, Reynolds). Mr. Burlile communicated with OEMs and dealers regarding data integration fees. REYMDL00080791.

14. <u>Andrew Knowles</u> (Product Planning Manager, Reynolds). Mr. Knowles was involved in communications with CDK regarding Reynolds' applications (REYMDL00067109; REYMDL00119304).

15. <u>Steven Mears</u> (Director, OEM Solutions, Reynolds). Mr. Mears was involved with communications concerning data integration fees (REYMDL00088767) and communicating with CDK regarding DMS access issues (REYMDL00067354).

16. <u>Kimberly Durnell</u> (Account Executive, OEM Solutions Group, Reynolds). Ms. Durnell sought extensions of the wind-down period for certain applications (REYMDL00067412); and was involved in communications with CDK regarding Reynolds' applications (REYMDL00067354).

17. <u>Will Farley</u> (Business Development Manager, Reynolds). Mr. Farley was a "Team Member" in the CDK-Reynolds conspiracy. CDK-1424530.

18. <u>Tim Boughan</u> (Account Manager/Business Development Supervisor, Reynolds). Mr. Boughan was AutoLoop's account manager and is likely to have responsive information regarding RCI price increases, RCI certification requirements and procedures, and RCI contracts with AutoLoop.

19. <u>Brian Cumbow</u> (Former Account Manager, Reynolds). Mr. Cumbow was AutoLoop's former account manager and is likely to have responsive information regarding RCI price increases, RCI certification requirements and procedures, and RCI contracts with AutoLoop.

20. <u>Stewart Ross</u> (Engineer, Reynolds). Mr. Ross is likely to have information about the technical aspects of AutoLoop's integration with RCI and the process required for a vendor's application to integrate through RCI.

21. <u>Kevin Lawson</u> (Engineer, Reynolds). Mr. Lawson is likely to have information about the technical aspects of AutoLoop's integration with RCI and the process required for a vendor's application to integrate through RCI.

22. <u>Stephanie Prier</u> (Product Analyst, Reynolds). Ms. Prier is likely to have information about the process by which AutoLoop was approved for RCI certification and the terms of the RCI contract with AutoLoop.

23. <u>Robert Burnett</u> (SVP, Corporate Development, Reynolds). Mr. Burnett is a long-time Reynolds executive who has played a lead role in managing all aspects of Reynolds' business, including formulating and implementing its data access policies; managing Reynolds' relationships with key vendors such as Cox Automotive and its various solutions; negotiating the

terms of RCI agreements; and advising Mr. Brockman regarding the key matters at issue in this MDL.

24.    Jerry Kirwan (SVP and General Manager, Reynolds).  Mr. Kirwan has had a lead role in developing Reynolds' strategy with respect to dealer data, including managing Reynolds' relationships with key vendors such as Cox Automotive and its various solutions.

## III.    Search Terms

Please find attached as Exhibit A (CDK) and Exhibit B (Reynolds) the additional search terms that the MDL Plaintiffs request that Defendants use in their ESI review.

*  *  *  *  *

We look forward to your prompt response by Friday, June 1st.  Please also let us know which time works on Tuesday, June 5th – either 10:00 a.m. ET or 2:00 p.m. ET, or some other time that day – to discuss any of the requested custodians and search terms that may be in dispute.

Very truly yours,

s/ _Derek T. Ho_                              s/ _Peggy J. Wedgworth_
Derek T. Ho                                    Peggy J. Wedgworth


CC:    MDL Counsel Email List

# EXHIBIT 5

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
───────
(202) 326-7900
FACSIMILE:
(202) 326-7999

MILBERG TADLER PHILLIPS GROSSMAN LLP

One Pennsylvania Plaza 19th Floor ● New York, NY 10119 ● 212.594.5300 ● F 212.868.1229 ● www.milberg.com

June 1, 2018

*Via Electronic Mail*

Britt M. Miller, Esq.
Mayer Brown
71 South Wacker Drive
Chicago, IL 60606

      Re: *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817
            Custodians and Search Terms Meet and Confer

Dear Britt:

      We write on behalf of all MDL Plaintiffs in response to your May 29th letter.

      **Custodians and Search Terms.** Your proposal that search terms and custodians can only be discussed *after* the parties discuss the discovery responses is inefficient as that would put any discussion regarding custodians and search terms well into July. *See* Letter from B. Miller to MDL Plaintiffs (May 20, 2018). Discovery responses are not due until June 22. This is unacceptable.

      We find Defendants' refusal to discuss custodians and search terms now to be inappropriate, especially in light of Defendants' position that they will not undertake meaningful custodial document review until agreement on all search terms and custodians. It is also inconsistent with your statements on our meet and confers of May 18 and 22 when you specifically invited MDL Plaintiffs to provide you with the names of any additional custodians and stated that you would be happy to promptly discuss them with us.

      As we wrote in our letter of May 25th, the prudent course is to identify for each other – now – which custodians and search terms the parties may agree to, and which they will not. And then if there is a dispute as to the search terms or custodians, those can be worked out in the context of the meet and confers on the discovery requests. This procedure would be most efficient for all parties.

1

Even if Defendants refuse to discuss search terms, there is no basis to refuse to discuss custodians. We renew our request that, at a minimum, the parties indicate which custodians they will agree to by this Monday, June 4. We have proposed a meet and confer for Tuesday, June 5 at 10:00 a.m. ET to discuss any custodians that may be in dispute. Please let us know if Defendants are available at that time. As for search terms, on that call we would like to discuss a schedule by when the parties will be ready to discuss those.

**Consolidated RFPs and Search Terms.** In your May 29th letter, you requested a meet and confer on the fact that (1) the Individual Plaintiffs served one set of RFPs on each of CDK and Reynolds, and (2) that the MDL Plaintiffs served one set of search terms on each of CDK and Reynolds. We will be prepared to discuss those items on Tuesday at 10:00 a.m. We also offer these thoughts beforehand.

This is an MDL in which Defendants have sought consolidated, coordinated, and non-duplicative discovery. Taking Defendants at their word, the Individual Plaintiffs and the Dealer Class Plaintiffs coordinated closely on their RFPs and search terms in order to avoid duplication. But that does *not* mean that the documents the Dealer Class Plaintiffs seek are irrelevant to the Individual Plaintiffs' claims, and vice versa. All of the documents that the Dealer Class Plaintiffs seek, the Individual Plaintiffs seek as well, and vice versa.

The same is true for search terms. The MDL Plaintiffs coordinated closely on search terms and presented a unified set. It could not be otherwise. Defendants have taken the position that they will not run any search terms until they have a single, unified set. Therefore, in the spirit of cooperation and expediency, the MDL Plaintiffs coordinated and worked hard to compile a single set of additional search terms, as Defendants requested. The MDL Plaintiffs understand that the documents that Defendants produce in this MDL will be produced to all parties. If you have a different understanding, please let us know immediately.

As for your letter's points regarding CVR, CDK will certainly be in the possession of many documents (if not all) of the documents related to CVR. In fact, given CDK's control of CVR, CDK is fairly characterized as having possession, custody, and control of CVR's documents. In any event, if CDK would prefer for plaintiffs to serve a separate set of document requests on CVR now, we can discuss that on our meet and confer. Relatedly, given that CVR is differently situated than CDK or Reynolds, we are also willing to consider a narrower set of search terms that only CVR would run.

Please let us know if Tuesday, June 5 at 10:00 a.m. ET works for Defendants to discuss these, and other matters. *See* Letter from M. Nemelka to Defendants (May 31, 2018). If 10:00 a.m. does not work for Defendants, please propose a different time for that day.

<div align="center">Very truly yours,</div>

*s/ Derek T. Ho*                                *s/ Peggy J. Wedgworth*

Derek T. Ho                                    Peggy J. Wedgworth

<div align="center">2</div>

# EXHIBIT 6

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

June 5, 2018

Britt M. Miller
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

B<small>Y</small> E-M<small>AIL</small>

Michael N. Nemelka
K<small>ELLOGG</small>, H<small>ANSEN</small>, T<small>ODD</small>, F<small>IGEL</small> & F<small>REDERICK</small>, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Peggy J. Wedgworth
M<small>ILBERG</small> T<small>ADLER</small> P<small>HILLIPS</small> G<small>ROSSMAN</small> LLP
One Pennsylvania Plaza
New York, NY  10119

Re:    *In re Dealer Management Systems Antitrust Litig.*,
       <u>MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)</u>

Dear Mike and Peggy:

I write regarding the CDK-specific issues raised in Plaintiffs' May 25 and May 31 letters.[1]

**<u>Plaintiffs' May 25, 2018 Letter:</u>**

*Interrogatories:*  We appreciate your agreement to supplement Authenticom's responses to CDK Interrogatory Nos. 4, 5, 9, 10, 11, 13, 14, 15, and 21.  We note, however, that you did not provide a date by which you would supplement.  We ask that you identify a date certain by which Authenticom will supplement no later that COB Friday, June 8.

With respect to Interrogatory No. 25, while courts have disagreed on the issue, the Northern District of Illinois has held that an interrogatory asking a party "to explain the factual and legal basis of any denial of a request to admit" constitutes a single interrogatory for purposes of the cap.  *Scandaglia v. Transunion Interactive, Inc.*, 2010 WL 317518, at *5 (N.D. Ill. Jan. 21, 2010).  There the court squarely rejected the opposing party's claim—indistinguishable from Plaintiffs' here—that the interrogatory was "compound" and "would exceed the allowable number of interrogatories."  *Id.*  "Having denied so many . . . Requests to Admit," the court explained, the objecting party "placed these issues in dispute."  *Id.*  The party who propounded the interrogatory was "entitled to discovery regarding the basis for [the other side's] denials, and conducting this discovery through interrogatory rather than through deposition" was "less costly

---

[1] Plaintiffs' sent two letters on May 31, 2018.  One in response to CDK's January 29, 2018 Letter, and the other purporting to memorialize certain aspects of the parties May 18, 21, and 22 meet-and-confers.  Per my letter of June 1, 2018, this letter is intended to address the latter May 31 letter.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
June 5, 2018
Page 2

and time consuming for all parties involved." *Id.* This holding and rationale apply equally here. Please let us know if Authenticom will withdraw its objection and respond to this Interrogatory.

*RFAs:* We appreciate your agreement to amend Authenticom's responses to CDK RFA Nos. 3, 4, and 8. Here, again, we note that you did not provide a date by which you would amend. We ask that you identify a date certain by which Authenticom will amend no later that COB Friday, June 8.

*RFPs:* We appreciate your May 31, 2018 response. We will follow-up, as appropriate, on the issues discussed on today's meet-and-confer.

**Plaintiffs' May 31, 2018 Letter:**

I. **FTC Productions**

  A. *AutoMate Documents:* As we have thoroughly documented through our meet-and-confer correspondence, we disagree with your repeated argument regarding the relevance of *all* of the documents CDK produced to the FTC in connection with the AutoMate transaction—based solely on the fact that they were produced to the FTC in regards to that transaction—and, as clearly stated in my May 24 letter (and during our May 22 meet-and-confer), the parties are at impasse. Your May 31 letter confirms as much. As this issue has festered for some time and given the discovery deadlines currently in place, we will shortly be seeking clarification from the Court on this issue. And while the logistics of how CDK proposes to determine what of the AutoMate production it will produce in the civil litigation is irrelevant to the core issue in dispute, the answer is simple: CDK intends to run the full set of agreed-upon search terms against the document collections of all of the agreed-upon (or court-ordered) custodians and review the resulting documents for responsiveness to Plaintiffs' document requests (as limited by any party agreements or Court orders). In other words, CDK intends to treat the AutoMate collection the same as it will treat non-AutoMate/non-CID documents— *i.e.*, limited to agreed-upon (or court-ordered) custodians and search terms.

  B. *Recordings of FTC Interviews.* Like Plaintiffs and Reynolds, CDK will agree to produce any transcripts, recordings, or other memorializations of FTC interviews in connection with the agency's joint conduct investigation. As previously noted, however, we are unaware of any interviews and thus unaware of any such documents.

  C. *Search Terms.* As previously reported, the bulk of CDK's production to the FTC in connection with the joint conduct investigation was done using TAR and not search terms. We have confirmed that search terms were used in connection with certain non-TAR documents. CDK will produce those search terms.

  D. *Footnote 1 of my May 24 Letter:* Plaintiffs are over-reading the footnote in question and the rant in your letter does not warrant a response. CDK will respond to

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
June 5, 2018
Page 3

discovery requests properly served upon it and produce documents in accordance with any agreements reached and any orders of the Court.

II.     **Custodial and Non-Custodial Documents**

A.      *Custodial*.  As this section of your letter is largely directed at Reynolds, we will allow its counsel to speak on its behalf.  As to CDK, I will repeat, again, that CDK has already begun its review of custodial documents (and, again, has already produced approximately 42,000 custodial records).  So Plaintiffs aspersions of misconduct (appearing in some off-hand parentheticals in your letter) on the part of CDK are misplaced.

B.      *Non-Custodial*.  We already addressed this in our May 24 letter and have nothing more to add.

III.    **Reynolds' Preservation of Documents.**

As this issue is not directed at CDK, no response is required of it.

IV.     **CDK's Responses to Authenticom's RFPs**

Your attempts to recast the parties' meet-and-confer discussion on this topic notwithstanding, CDK offers the following as to the outstanding RFPs.

1.  *RFP 102:*  Per my May 24 letter, we have confirmed that the databases we identified contain the material information regarding invoiced amounts to vendors for the period 2011-2017 to the extent data exists.  In that letter, CDK also agreed to consider any parameters Authenticom might propose with respect to a "representative sample" of the actual invoices sent to vendors.  Your letter proposes a full set of invoices for 40 vendor customers each of DMI, IntegraLink, and 3PA—a total of 120 customers—for a 7+ year period.  That is not a "representative" sample and CDK is not inclined to undertake the burdensome task of putting together the requested collection, particularly given CDK's substantial data production on this topic.  If Authenticom is willing to consider a substantially smaller, truly "representative" sample, CDK remains willing to consider it.

2.  *RFP 103:*  Here again, we have confirmed that the databases we identified contain the material information regarding invoiced amounts to dealers for the period 2011-2017 to the extent data exists.  But, here again, your letter does not propose a "representative" sample of dealer invoices, but instead suggests a full set of such invoices for 100 dealers for a 7+ year period.  That is not a "representative" sample and CDK is not inclined to undertake the burdensome task of putting together the requested collection, particularly given CDK's substantial data production on this topic.  If Authenticom is willing to consider a substantially smaller, truly "representative" sample, CDK remains willing to consider it.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
June 5, 2018
Page 4

3.  *RFP 105:*  Given the tenuous relevance argument Plaintiffs have advanced in connection with this Request, CDK is not inclined to undertake the substantial burden required to assemble the requested information.  CDK has undergone at least three significant corporate reorganizations over the last 3+ years, starting with its spin-off from ADP in 2014, and a number of smaller, departmental reorganizations.  Attempting to track down whether a given position was eliminated or simply renamed, whether it was "off-shored" or moved to accommodate a specific candidate, would require CDK to attempt to piece together information from hundreds (and potentially thousands) of HR records, with no guarantee that it would ultimately be able to successfully determine the answer as to any given title or position.  To the extent Authenticom can conceive of a more targeted way by which CDK could satisfy this Request, we remain willing to consider it.

4.  *RFP 106:  See supra* the discussion of the AutoMate FTC production.

As to the remainder of the RFPs enumerated in your letter, CDK will produce documents in accordance with the parties' agreements as to each, as memorialized in my May 24, 2018 letter.

**V.      Reynolds' Responses to Authenticom's RFPs**

As this issue is not directed at CDK, no response is required of it.

**VI.     Defendants' "Deficient" Responses to Authenticom's First Set of Interrogatories**

We appreciate your May 31, 2018 response.  We will follow-up, as appropriate, on the issues discussed on today's meet-and-confer with respect to CDK.

Sincerely,

Britt M. Miller

Britt M. Miller

cc:     Reynolds Counsel of Record
        Mark Ryan
        Andrew Marovitz
        Matt Provance

728877778

GZJ KDKV'9

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

MILBERG TADLER PHILLIPS GROSSMAN LLP

One Pennsylvania Plaza 19th Floor ● New York, NY 10119 ● 212.594.5300 ● F 212.868.1229 ● www.milberg.com

June 14, 2018

*Via Electronic Mail*

Brian Ross, Esq.                           Britt M. Miller, Esq.
Gibbs & Bruns LLP                          Mayer Brown
1100 Louisiana, Suite 5300                 71 South Wacker Drive
Houston, TX 77002                          Chicago, IL 60606

Leo D. Caseria, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071

      Re:  *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817

Dear Britt, Brian, and Leo:

      MDL Plaintiffs write to follow up on our meet and confer yesterday regarding custodians, and other matters.

      **Custodians.**  We appreciate Defendants' movement on custodians, but Defendants' positions are still far from sufficient.  Reynolds agreed to add five custodians, and CDK agreed to add seven, whereas MDL Plaintiffs had requested 23 additional custodians for Reynolds and 26 additional custodians for CDK.  Each of the requested additional custodians were well-considered and we provided Defendants with specific explanations and justifications for each. *See* Letter from MDL Plaintiffs to Defendants (May 25, 2018).  Nevertheless, in the spirit of compromise, we noted on yesterday's call that we would be willing to drop five requested custodians for Reynolds, and seven requested custodians for CDK.  MDL Plaintiffs' proposal to drop these custodians is contingent on reaching a global agreement on document custodians. Those individuals are identified below:

1

**Reynolds**

1. Stephanie Prier
2. Brian Cumbow
3. Stewart Ross
4. Kimberly Durnell
5. Andrew Knowles

**CDK**

1. DeAnne Hodum
2. Michael Postal
3. Michael Kane
4. Jody Doublestein
5. JoAnn Billiter
6. Laura Stevens
7. Byron McDuffee

With our concession to drop these individuals, we believe that the ball is in Defendants' court to agree to our other requested custodians. Please let us know Defendants' position as soon as you can.

**Search Terms.** On our call yesterday, we all agreed that we need to begin discussing search terms as soon as possible. Defendants stated, however, that they will not begin discussing search terms until after we have an agreed set of custodians. We therefore request that Defendants continue to engage with us on custodians in an expeditious manner.

**Auto/Mate FTC CID.** We asked both CDK and Reynolds to provide the CID issued by the FTC in connection with the agency's review of the Auto/Mate acquisition by CDK. We need the CIDs for our opposition to CDK's motion for a protective order. Please provide those today as we need to file our opposition.

**Authenticom Amended Interrogatory and RFA Responses.** On our call, we informed you that Authenticom would amend its Interrogatory and RFA responses, as previously agreed, by June 22.

Very truly yours,

*s/ Elizabeth McKenna*                    *s/ Michael N. Nemelka*
Elizabeh McKenna                          Michael N. Nemelka


Cc: Service External MDL Email List

# EXHIBIT 8

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 5, 2018

Matthew D. Provance
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

**BY E-MAIL**

Peggy J. Wedgworth
MILBERG TADLER PHILLIPS GROSSMAN LLP
One Pennsylvania Plaza
New York, NY 10119
Tel. (646) 515-1269
pwedgworth@milberg.com

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Peggy:

I write in response to your June 28 letter and request for a meet-and-confer tomorrow to discuss the Dealership Class Plaintiffs' First Requests for Production.

**Coordinated Meet-and-Confers**

As you know, both CDK and Reynolds have offered to jointly meet-and-confer with all MDL Plaintiffs tomorrow regarding the Dealership Class Plaintiffs' document requests. *See* 07/02/2018 Ltr. from Leo Caseria to Peggy Wedgworth. Defendants' position that meet-and-confers should proceed jointly is fully consistent with the Court's repeated directives that discovery in this MDL proceed in a coordinated, non-duplicative manner. We understand that you responded earlier today to Reynolds, asserting that you "would like to move forward with separate meet and confers with each Defendant," and that joint participation by Defendants in these discussions "does nothing to advance the interests" of coordination and non-duplication.

Fundamentally, we disagree. For one thing, the Dealership Class Plaintiffs served a number of identical or nearly identical document requests on both Defendants. *Compare, e.g.*, Dealership Class Plaintiffs' Request No. 37 to CDK *with* Request No. 33 to Reynolds. It would be inefficient to meet-and-confer about the relevance, burden, and/or potential compromises concerning these requests with CDK and then again with Reynolds at some later date. Moreover, the Dealership Class Plaintiffs' June 28 letters to CDK and Reynolds outlining the issues they wish to raise during the meet-and-confer process identify several general issues, including the relevant time period for Defendants' responses, that are common to both Defendants. Again, it makes no sense to negotiate about these issues twice.

For these reasons, Defendants reiterate their offer to jointly meet-and-confer tomorrow regarding both sets of the Dealership Class Plaintiffs' document requests. Even if you insist on discussing

Mayer Brown LLP

Peggy J. Wedgworth
July 5, 2018
Page 2

the CDK and Reynolds requests separately (which we think is highly inefficient and will only unnecessarily prolong our discussions), it should occur on a single call attended by both Defendants.[1]   At the very least, CDK and Reynolds are entitled to observe whether the Dealership Class Plaintiffs are taking consistent positions in their meet-and-confer discussions with respect to discovery issues and requests that are common to both Defendants.

Reynolds's July 2 letter also requested that the Individual Plaintiffs (including AutoLoop, though it is now a putative class representative) participate in tomorrow's scheduled meet-and-confer. Several of the issues identified in your June 28 letter—such as the relevant time period—are common to both the Individual and Dealership Class Plaintiffs' requests and should be addressed together and in a coordinated manner.  Further, to the extent that the Individual Plaintiffs purport to incorporate by reference all of the Dealership Class Plaintiffs' requests through a subsequently-issued "catch-all" request (which we maintain is improper), any meet-and-confer discussions regarding the Dealership Class Plaintiffs' requests must now involve the Individual Plaintiffs as well.  Accordingly, please confirm that the Individual Plaintiffs are planning to participate tomorrow.  Absent their participation, it is unlikely that we will be in a position to make any commitments regarding the Dealership Class Plaintiffs' requests, as the Individual Plaintiffs may later claim, just as you assert in your June 28 letter, that CDK "may be withholding documents responsive to the [Dealership Class] Plaintiffs' requests on grounds that are not applicable to the [Individual] Plaintiffs."

## Substantive Issues

We disagree with many of the assertions in the Dealership Class Plaintiffs' June 28 letter regarding CDK's discovery responses and will be prepared to discuss them tomorrow.  In addition, as prefaced in Reynolds's July 2 letter, we have identified a number of deficiencies in the Dealership Class Plaintiffs' responses to CDK's requests for production that we would like to address tomorrow, as well:

1. Document Custodians

The Dealership Class Plaintiffs state that their searches for responsive documents "will be limited to the files of those documents custodians agreed upon by the parties …."  General Obj. No. 7.  Yet, to date, the Dealership Class Plaintiffs have not agreed **to a single document custodian** in this case, despite receiving CDK's proposal on May 25 and engaging—at Plaintiffs' insistence—in several meet-and-confers regarding document custodians.  Tomorrow, we would like to discuss why Dealership Class Plaintiffs have not responded to CDK's proposal regarding document custodians and when they will respond.

---

[1] Further, regarding your request to separately meet-and-confer with Reynolds on Monday, July 9, we understand that Reynolds is not available.  However, Reynolds intends to join tomorrow's call and will be prepared to discuss its responses to the Dealership Class Plaintiffs' document requests at that time.

Mayer Brown LLP

Peggy J. Wedgworth
July 5, 2018
Page 3

    2. <u>Refusal to Produce Documents</u>

The Dealership Class Plaintiffs' responses state that they are refusing, in whole or in part, to produce documents that are responsive to many of CDK's requests. Reserving all rights, we would like to prioritize our discussion of the following requests:

- RFP 1 (data extractors used, means of extraction, data fields accessed, vendors)
- RFP 5 (alleged exclusive dealing provisions)
- RFP 7, 8, 11, 19 (DMS login credentials)
- RFP 9, 10, 12 (unapproved third-party DMS access)
- RFP 13, 23 (unapproved third-party DMS data extractions)
- RFP 14 (DMS data security, corruption, integrity, performance issues)
- RFP 17 (evasion of third-party access restrictions)
- RFP 28, 29 (communications re: third-party DMS access)
- RFP 21, 22 (NPI/PII/third-party proprietary data in DMSs)
- RFP 24 (third-party administrator-level or UUP access)
- RFP 25 (user emulation software)
- RFP 27 (manual reporting tools)
- RFP 30 (agency)
- RFP 31 (code-on-the-box)
- RFP 33, 36 (DMS contract negotiations, interpretation, enforcement)
- RFP 34 (DMS pricing)
- RFP 39, 43 ("DMS Market" and "Data Integration Market")
- RFP 40 (stand-alone applications)
- RFP 42 (consideration of DMSs, applications)
- RFP 44 (DMS switching)
- RFP 45 (applications use)
- RFP 46 (market share for applications, DMS)
- RFP 47 (comparison of competing applications)
- RFP 48 (DMS contract length)
- RFP 49, 50, 51, 52, 56 (data security policies and considerations)
- RFP 52, 55, 62 (data security breaches)
- RFP 54 (data transfer protocols)
- RFP 57 (secure web form use)
- RFP 58 (cyber liability insurance policies)
- RFP 59, 60 (misappropriation of DMS data)
- RFP 61 (data extraction, writeback protocols)
- RFP 63 (investments in data security)
- RFP 64 (CDK, Reynolds third-party access policies)
- RFP 70 (3PA/RCI fees vs. third-party extraction fees)
- RFP 71 (satisfaction with third-party data extractors)
- RFP 72 (alleged participants in "Data Integration Market")

Mayer Brown LLP

Peggy J. Wedgworth
July 5, 2018
Page 4

- RFP 73 (3PA/RCI pricing)
- RFP 84 (pre-suit awareness of alleged anticompetitive activity)
- RFP 85, 96 (evidence of alleged conspiracy)
- RFP 91 (alleged injuries, damages)
- RFP 95 (February 2015 agreements)
- RFP 97, 98, 99 (communications with other named plaintiffs)
- RFP 100 (communications with putative class members)

Sincerely,


*/s/ Matthew D. Provance*
Matthew D. Provance

cc:     Lead Individual Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

729328080

**EXHIBIT 5**

# MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 13, 2018

**Matthew D. Provance**
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

**By E-Mail**

Robert A. Wallner
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

Re: *In re Dealer Management Systems Antitrust Litig.*,
MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Rob:

I write in response to your July 7, 2018 letter as it relates to the Dealership Class Plaintiffs' counter-offer regarding document custodians.

As you know, on May 25, in accordance with the Court's Case Management Order, CDK proposed two categories of document custodians for the Dealership Class Plaintiffs: (1) the witnesses at each Dealership who have been disclosed under Rule 26(a)(1); and (2) an additional set of custodians at each Dealership, as described by subject matter, *e.g.*, the "employee(s) responsible for negotiating contracts with DMS providers, Integrators, and Vendors." On July 7, after numerous inquiries (including during the June 13 meet-and-confer between Defendants and all MDL Plaintiffs regarding document custodians, the July 6 meet-and-confer between Defendants and the Dealership Class Plaintiffs, and in my prior letters dated June 12 and July 5), the Dealership Class Plaintiffs have now responded with an offer for CDK to choose *one* custodian from each of 13 Dealership Class Plaintiff groups (for a total of 13). While we appreciate the Dealership Class Plaintiffs' offer, it is insufficient in several respects.

*First*, as your July 7 letter notes, there are 25 separately-named Dealership Class Plaintiffs. Limiting CDK to one custodian from each of 13 plaintiff "groups" arranged by the Dealership Class Plaintiffs would improperly deny CDK discovery from many putative class representatives—all of whom are equally subject to inquiry regarding the merits of their individual claims and their adequacy as putative class representatives.

*Second*, the Dealership Class Plaintiffs' counter-offer improperly excludes many witnesses who were disclosed by the Dealership Class Plaintiffs themselves as *affirmative* witnesses pursuant to Rule 26(a)(1). These are witnesses who, by the Dealership Class Plaintiffs own accord, are likely to possess relevant and discoverable information. A party's own Rule 26(a)(1) witnesses are routinely made document custodians; the Dealership Class Plaintiffs appear to be the only parties in this MDL who have refused to do so.

Mayer Brown LLP

Robert A. Wallner
July 13, 2018
Page 2

*Third*, the Dealership Class Plaintiffs' "pick one" framework ignores the fact that the limited discovery produced to date shows that the relevant issues in this litigation span *multiple* employees at each Dealership. In addition to their own Rule 26(a)(1) witnesses, in response to CDK's Interrogatories each Dealership Class Plaintiff (with the exception of Plaintiff John O'Neil Johnson Toyota, LLC) has also identified one or more employees (1) with primary responsibility for entering into contracts with DMS providers and third-party data extractors and (2) who serve as the main point of contact between the Dealer and those entities, as well as vendors. Each of these people is likely to possess relevant, non-duplicative discovery.

*Fourth*, some of the names offered in the Dealership Class Plaintiffs' July 7 letter are not further identified with a corresponding job title or in any prior discovery responses or in the Dealership Plaintiffs' Rule 26 disclosures.[1] CDK accordingly has no basis to evaluate whether these individuals are likely to possess relevant discovery or otherwise would be appropriate to select as document custodians. To the extent it is missing, please provide this information; if warranted, CDK reserves the right to include them on the list below.

*Fifth*, the Dealership Class Plaintiffs' assertion that they are "deeply concerned that the production of documents via custodial files of any set number per named dealership plaintiff will result in undue burden" is not well-taken. The Dealership Class Plaintiffs elected to file a consolidated class action complaint on behalf of 25 separately-named plaintiffs; any additional discovery burdens that might naturally result from that decision—such as the number of appropriate document custodians—are of the Dealership Class Plaintiffs' own making.

In the interest of reaching a compromise, and following additional investigation and review of the Dealership Class Plaintiff's Interrogatory responses, CDK is prepared to accept the following custodians for each Dealership Class Plaintiff(s) as a part of a global resolution:

1. ACA Motors, Inc. d/b/a Continental Acura; Continental Autos, Inc. d/b/a Continental Toyota; Continental Classic Motors, Inc. d/b/a Continental Autosports; 5800 Countryside, LLC d/b/a Continental Mitsubishi; HDA Motors, Inc. d/b/a Continental Honda; H & H Continental Motors, Inc. d/b/a Continental Nissan; Naperville Zoom Cars, Inc. d/b/a Continental Mazda; NV Autos, Inc. d/b/a Continental Audi

   a. Dale Batson, CEO (Various Plaintiffs) (Rule 26(a)(1) witness)
   b. Mark Johnson, IT Director (Various Plaintiffs)
   c. Andy Trilla (Continental Acura)
   d. Cheryl Nelson (Continental Toyota, Continental Mitsubishi)
   e. Josh Casey (Continental Autosports)

---

[1] For example, and among possibly others, Gale Jones was offered as a document custodian on behalf of Plaintiff Jim Marsh American Corp. without any additional other information such as his (or her) job title(s) or involvement (if any) in matters at issue in the litigation.

Mayer Brown LLP

Robert A. Wallner
July 13, 2018
Page 3

      f.   Joel Weinberger (Continental Audi, Continental Acura, Continental Mazda, Continental Autosports)
      g.   Jay Weinberger (Continental Honda, Continental Nissan)
      h.   Dennis Pecho (Continental Nissan)
      i.   Sabrina Erskine (Continental Mazda)
      j.   Eric Matway (Continental Audi)

2. Baystate Ford Inc.

      a.   Frank Lupaccino, President (Rule 26(a)(1) witness)
      b.   Ronnie Eames, Controller (Rule 26(a)(1) witness)
      c.   Heather Pauliks, Division Parts Manager (Rule 26(a)(1) witness)

3. Cherry Hill Jaguar

      a.   Tom Hessert, II, President (Rule 26(a)(1) witness)

4. Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat[2]

      a.   Cliff Harris, Owner (Rule 26(a)(1) witness)
      b.   Linda Smith, Controller
      c.   Ryan Kenny, Sales Manager
      d.   Ryan Flamm, Finance and Inventory Manager
      e.   Rick Watson, General Manager
      f.   Randy Rusch, Internet Marketing
      g.   Scott Thurn, Parts & Service Director
      h.   Paula Vandevelde, Assistant Office Manager
      i.   Riley Young, Service Manager

5. Gregoris Motors, Inc.

      a.   Robert DeGregoris, Service Manager (Rule 26(a)(1) witness)
      b.   Richard DeGregoris

---

[2]     Each of these three Plaintiffs' Interrogatory responses identify the same eight individuals—in addition to Cliff Harris—as "employees" with responsibility for negotiating contracts with DMS providers and third-party data extractors and who serve as the main point of contact between the Dealer and those entities, as well as vendors. Accordingly, CDK needs to understand how it is that these three different Plaintiffs share the same employees, and if they do, whether they share them equally. Further, if the Dealership Class Plaintiffs can explain why a subset of the eight employees would be comprehensive of the others, CDK is open to potentially eliminating the ones who are redundant.

Mayer Brown LLP

Robert A. Wallner
July 13, 2018
Page 4

6. Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville

    a. Keith Roberts (Rule 26(a)(1) witness)
    b. Mark Hoover

7. JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Patchogue 112 Motors LLC d/b/a Stevens Ford[3]

    a. David Benstock, General Manager (Rule 26(a)(1) witness)
    b. Steve Gomes

8. Jim Marsh American Corporation d/b/a Jim Marsh Kia and Jim Marsh Chrysler/Jeep

    a. Jim Marsh, President (Rule 26(a)(1) witness)
    b. Allen Yarborough, Sales Manager (Rule 26(a)(1) witness)
    c. Mark Grim, Sales Manager (Rule 26(a)(1) witness)
    d. Andy Kerby

9. John O'Neil Johnson Toyota, LLC

    a. Kevin Winningham, General Manager (Rule 26(a)(1) witness)
    b. CDK reserves the right to identify additional document custodians based on John O'Neil Johnson Toyota, LLC's responses to CDK Interrogatories No. 4, 5, and 13, which have yet to be provided

10. Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota

    a. Kelly Thomas, General Manager (Rule 26(a)(1) witness)
    b. Julie Flowers, (former) Comptroller

11. Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC[4]

    a. Tom Stever, CFO (Rule 26(a)(1) witness)
    b. Scott Simpkins

12. Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram

    a. Alan Graf Jr., Comptroller and Office Manager (Rule 26(a)(1) witness)
    b. Alan Graf, Sr.

---

[3] We have the same questions as for the Plaintiffs grouped in No. 4, above.

[4] Here again, we have the same questions as for the Plaintiffs grouped in No. 4 and 7, above.

Mayer Brown LLP

Robert A. Wallner
July 13, 2018
Page 5

13. Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram

    a.  Andy Strong (Rule 26(a)(1) witness)
    b.  Eric Strong (Rule 26(a)(1) witness)
    c.  Amy Strong

Please respond to our proposal and provide answers to the questions noted above no later than Wednesday, July 18, so that we may promptly determine whether a potential compromise is possible or if the parties are at impasse. The Dealership Class Plaintiffs' prior delays in responding to our inquiries regarding their document custodians—while simultaneously demanding responses and concessions from CDK on the same issue—are not defensible. In their May 25 letter to CDK, the Dealership Class Plaintiffs asked to meet-and-confer about document custodians "as soon as possible." In a follow-up letter served a few days later, the Dealership Class Plaintiffs reiterated that any delay in initiating bilateral negotiations regarding document custodians would be "unacceptable." 06/01/2018 Ltr. from D. Ho and P. Wedgworth to B. Miller. They specifically said that any "refusal to discuss custodians" before answering then-pending discovery requests (also served on May 25) would be "inappropriate," and that the parties must "identify for each other—*now*—which custodians … the parties may agree to, and which they will not. … This procedure would be most efficient for all parties." *Id.* (emphasis added). But then, during the June 8 and June 13 meet-and-confers on document custodians that promptly followed (at the Dealership Class Plaintiffs' insistence), they suddenly took the opposite position. They advised CDK that the Dealership Class Plaintiffs would not even *consider* CDK's May 25 proposal for document custodians until they had answered CDK's discovery requests (which were due June 22)—exactly what the Dealership Class Plaintiffs said was "unacceptable" and "inappropriate" in their June 1 letter. And then, once the Dealership Class Plaintiffs had finally answered the discovery, it took CDK another 15 days, another letter (sent July 5), and further discussion during our July 6 meet-and-confer to actually receive a substantive offer from the Dealership Class Plaintiffs regarding document custodians—an offer that is clearly insufficient for the reasons noted above. Given the looming August 6, 2018, deadline to file motions to compel, we do not have time for and cannot accept additional delays. We reiterate our request that the Dealership Class Plaintiffs respond promptly to this letter—by July 18—so that we can meet our obligations under Local Rule 37.2, as needed, in advance of the motions deadline.

Sincerely,

*/s/ Matthew D. Provance*
Matthew D. Provance

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

# EXHIBIT 10

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 16, 2018

<u>By E-Mail</u>

Matthew D. Provance
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

Robert A. Wallner
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY  10119

Re:    *In re Dealer Management Systems Antitrust Litig.*,
       <u>MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)</u>

Dear Rob:

I am writing to memorialize the parties' July 9 and 10, 2018 meet-and-confers regarding the Dealership Class Plaintiffs' responses and objections to CDK Global, LLC's ("CDK") First Request for the Production of Documents ("RFPs" or "Requests").  As you know, the Dealership Class Plaintiffs' June 22 written responses to the vast majority of our RFPs (by our count, 77 out of the 107 RFPs that we served) are unqualified refusals to produce any documents.  Over the course of our meet-and-confers, we spent approximately three hours clarifying and explaining the relevance of our Requests and confirming, for the most part, that the Dealership Class Plaintiffs intend to stand on their objections.  To the extent that there may be room for compromise as to certain Requests, CDK's proposals are set forth below.  We would appreciate your prompt response given the current August 6 motions deadline.

## I.    Issues On Which The Parties Reached Impasse

### a.    Documents Improperly Withheld Under The *Authenticom* Ruling

We understand that the Dealership Class Plaintiffs are refusing to respond to more than 30 of CDK's RFPs on the theory that these Requests are all "irrelevant" under the Court's May 14, 2018 motion to dismiss ruling in the *Authenticom* case.[1]  During our meet-and-confers, you explained the Dealership Class Plaintiffs' position to be that because the Court has allowed certain of Authenticom's antitrust claims to proceed, all inquiries into the nature and impact of third-party access to DMSs (including CDK and Reynolds's DMSs) through sharing of dealer-issued login credentials and screen-scraping—as it relates data security, system integrity, data corruption, and system burden and performance—are no longer relevant.  Fundamentally, we disagree.  Nothing in the *Authenticom* decision even purports to negate that discovery into these issues is relevant, among other things, to whether CDK's third-party access policies and

---

[1]    The specific CDK RFPs subject to this objection are as follows:  RFPs 1, 7, 8, 9, 10, 11, 12, 13, 14, 17, 19, 22, 23, 24, 25, 27, 29, 31, 49, 50, 52, 53, 54, 55, 56, 57, 59, 60, 61, 62, 63, 71, and 72.

Mayer Brown LLP

Robert A. Wallner
July 16, 2018
Page 2

SecurityFirst initiative serve its legitimate interests in protecting and maintaining the security and integrity of its DMS. And it is directly relevant to the Dealership Class Plaintiffs' allegations that security-related concerns are a "pretext" for CDK's third-party access policies and what you characterize as a "shift" from prior alleged policies. *See, e.g.*, Consolidated Compl. ¶¶ 70-75. Moreover, the Dealership Class Plaintiffs can hardly deny that these Requests are relevant, as several of *their own* requests for production go to the same issues (*e.g.*, Dealership Class Plaintiffs' RFP 30, seeking "[a]ll documents regarding data security and/or DMS system performance with respect to any Third Party Integrator's access to the Reynolds or CDK DMSs"). Here, it seems clear to us that the parties are at an impasse.

**b.      Documents Improperly Withheld As "Publicly Available"**

In response to CDK's RFPs, including but not limited, it seems, to CDK RFPs 75, 79, 87, 88, 89, 97, 98, and 99, the Dealership Class Plaintiffs are improperly limiting their production to "non-publicly available" documents. This is not a valid objection. *See, e.g.*, 8 Wright and Miller, *Federal Practice and Procedure* § 2014 (3d ed. 2008) ("[I]t is not usually ground for objection that the information is equally available . . . or is a matter of public record."). During our meet-and-confer discussions about certain Requests (this came up specifically in regard to CDK RFP 46), the Dealership Class Plaintiffs confirmed that they intend to withhold documents that are in their possession, custody, or control and otherwise responsive on the basis of this objection. Accordingly, we believe the parties have reached impasse.

**c.      Plaintiffs' Refusals To Respond To Specific Requests For Production**

*CDK Request No.5:*      The Dealership Class Plaintiffs have agreed to produce documents responsive to this Request only to the extent they contain the literal phrase "exclusive dealing provision(s)." That limitation is improper; as we explained, this Request seeks documents and communications related to the contractual provisions in agreements between Dealers, Vendors, or Data Extractors (on the one side) and CDK or Reynolds (on the other) that the *Dealers* refer to as "exclusive dealing provisions" in their Complaints—but documents that are responsive to this Request will not necessarily use the exact phrase "exclusive dealing provision(s)."[2] Please let us know if the Dealership Class Plaintiffs will reconsider their decision to limit their response to this Request by only producing documents that use the phrase "exclusive dealing provision(s)." Otherwise, we believe the parties have reached impasse.[3]

---

[2]      CDK's Requests were served on May 25, before the Consolidated Complaint was filed on June 6. For the avoidance of doubt, this Request covers documents related to the so-called "exclusive dealing provisions" discussed in the individual Dealer Complaints *or* the later-filed Consolidated Complaint (*e.g.*, Consolidated Compl. ¶¶ 53-60).

[3]      You also asked whether CDK had proposed ESI search terms targeted to this Request. Although that has no bearing on merits of the Dealership Class Plaintiffs' response, we refer you to CDK's proposed search terms No. 74 and 116, among others.

Mayer Brown LLP

Robert A. Wallner
July 16, 2018
Page 3

*CDK Request No. 46:*  This Request seeks documents related to DMS market share, which is undeniably relevant to the claims and defenses in this litigation and directly implicated by several of the Dealership Class Plaintiffs' allegations (*e.g.*, Consolidated Compl. ¶¶ 2, 7, 64, 78-89, 154). During our meet-and-confer, the Dealership Class Plaintiffs confirmed that they are refusing to produce responsive documents.

*CDK Request No. 47:*  This Request seeks internal and external analyses of competition for applications or which otherwise compare applications (including their functionality, service quality, features, technology, capabilities, pricing, and/or price changes) offered by Defendants and Vendors.  Such documents are relevant to multiple issues in the case, including allegations that Defendants force Dealers to purchase their own applications over more preferred third-party Vendor applications (*e.g.*, Consolidated Compl. ¶ 125).  As we explained, this Request specifically seeks documents related to "analyses" of the foregoing topics; it does not necessarily encompass every advertisement or other piece of information concerning an application, which appeared to be the Dealership Class Plaintiffs' principal objection to the Request.  Accordingly, we believe that the parties have reached impasse.

*CDK Request No. 51:*  This Request seeks documents related to automotive industry standards or guidance regarding DMS access, data distribution, data scraping, data security, or data privacy. During the meet-and-confer, the Dealership Class Plaintiffs stated that they would only be willing to produce a subset of documents responsive to this Request, but did not offer a proposal (nor it is apparent to us how this Request should be narrowed, as it seeks a specific category of documents—automotive industry standards or guidance—as it relates to relevant issues in the case).  Accordingly, we believe the parties have reached impasse.

*CDK Request No. 84:*  This Request seeks documents related to the Dealership Class Plaintiffs' suspicion or belief that Defendants have engaged in anticompetitive activity.  This is an antitrust lawsuit; the Dealership Class Plaintiffs' refusal to respond to this Request is improper.  Nor does responding require the interpretation of "legalese," as the Dealership Class Plaintiffs argued during our meet-and-confer.  Accordingly, we believe the parties have reached impasse.

*CDK Requests No. 85 and 96:*  The same goes for the Dealership Class Plaintiffs' refusal to produce documents that the Dealership Class Plaintiffs contend to be evidence supporting their allegations of a horizontal conspiracy between Defendants (CDK RFP 85) and/or which reflect coordinated conduct between them or otherwise relate to their claims that CDK has engaged in anticompetitive activity (CDK RFP 96).  In fact, the Dealership Class Plaintiffs likely have an *automatic* duty to produce these documents pursuant to Rule 26(a)(1)(A)(iv); CDK served the Requests simply for the avoidance of doubt (which was apparently necessary given the Dealership Class Plaintiffs' refusal to produce responsive documents).

*CDK Request No. 95:*  This Request seeks documents related to Defendants' February 2015 written agreements, which are a central focus of this litigation and  many of the Dealership Class Plaintiffs' allegations (*e.g.*, Consolidated Compl. ¶¶ 81-95).  The Dealership Class Plaintiffs have never stated that they do not have any documents that are responsive to these Requests.  To

Mayer Brown LLP

Robert A. Wallner
July 16, 2018
Page 4

the contrary, during our meet-and-confer, the Dealership Class Plaintiffs confirmed that they are refusing to produce them. Accordingly, we believe that the parties have reached impasse.

*CDK Request No. 100:* This Request seeks communications between the Dealership Class Plaintiffs and other putative class members that specifically relate to the subject matter of this litigation. Such documents are relevant and routinely produced. *See, e.g., Bernstein v. Virgin Am.*, 2017 WL 4767777, at *1 (N.D. Cal. Oct. 23, 2017); *Benzion v. Vivint, Inc.*, 2013 WL 12304563, at *5 (S.D. Fla. Sept. 20, 2013). Further, regarding the Dealership Class Plaintiffs' assertion during our meet-and-confer discussions that CDK is "resisting" comparable discovery, we disagree. CDK's communications with putative class members about the subject matter of the litigation have not been requested directly (*i.e.*, CDK was not served with a request that is comparable to CDK RFP 100), and to the extent that CDK has received document requests that indirectly seek such communications (*e.g.*, CDK RFPs 9, 10, 11, 12, 13, and 29), CDK largely has agreed to respond to those requests.

## II.    Discovery Issues That Require Further Clarification

*Agreements to Produce "Subject to and Without Waiving" Objections.* To the extent that the Dealership Class Plaintiffs have indicated their intent to produce documents in response to any Request, they do so "[s]ubject to and without waiving" their objections. Please confirm our understanding that this phrasing is not intended to limit the statements that follow concerning what the Dealership Class Plaintiffs intend to produce. For the avoidance of doubt, and as we explained during the meet-and-confers regarding CDK's responses to the Dealership Class Plaintiffs' requests for production, similar language in CDK's written responses is not intended to specifically limit what CDK subsequently states that it will produce.

*CDK Request No. 30:* As we discussed during our meet-and-confer, please confirm that in response to this Request the Dealership Class Plaintiffs intend to produce documents "sufficient to show whether a Vendor or Data Extractor acts, or have ever acted, as Dealership Plaintiffs' agent with respect to accessing Dealership Plaintiffs' own data on a Reynolds or CDK DMS" through a production of pre-existing records such as contracts, emails, etc., as opposed to a document (for example, a list or spreadsheet) created specifically to respond to this Request.[4]

*CDK Requests No. 33, 34, 35, 36, 48:* These Requests seek documents related to discrete issues concerning DMS contracts, including contract negotiations, contract term length, enforcement, pricing (including price concessions, rebates, and discounts), and access restrictions. The Dealership Class Plaintiffs have served similar discovery requests on CDK (*e.g.*, Dealership Class Plaintiffs' RFP 27 (DMS contract enforcement and access restrictions) and RFP 29

---

[4]    At times, you also suggested that the Dealership Class Plaintiffs might be willing to stipulate that no Vendors or Data Extractors act as the Dealership Class Plaintiffs' "agents" in this regard, in lieu of responding to this Request. We are open to accepting an unqualified, written stipulation to this effect. Let us know immediately if that is something the Dealership Class Plaintiffs are willing to provide so that we can confer about the stipulation's form and content in advance of the August 6 motions deadline.

Mayer Brown LLP

Robert A. Wallner
July 16, 2018
Page 5

(same)).[5]  In the interest of reaching a compromise in light of the Dealership Class Plaintiffs'
stated concerns regarding burden and overbreadth, CDK is prepared to limit Request 34 such that
the Dealership Class Plaintiffs need not produce individual receipts, invoices and purchase
orders, provided that the Dealers confirm that in response to Request 34 or other Requests, they
will produce documents sufficient to show all up-front, initial (non-recurring) and monthly fees
that each Plaintiff has paid for DMS services during the Relevant Time Period.  As modified in
this respect, please let us know whether the Dealership Class Plaintiffs will produce documents
responsive to CDK RFPs 33-36.

_CDK Requests No. 39, 43:_ These Requests seek documents related to the alleged "DMS Market"
and the "Dealer Data Integration Market."   During the meet-and-confer, you asked for
clarification of what these Requests actually seek.  To the extent further clarification is needed,
documents responsive to these Requests will include analyses and correspondence that reference
or purport to analyze any "market" for DMS or third-party data extraction or integration services,
including any "aftermarket" that might exist for such services, and competition between service
providers.  Responsive documents will further include discussion of:  (i) actual or potential
switching between DMS providers, or switching costs; (ii) Dealers' awareness of the fees
charged by CDK and Reynolds through their respective third-party access programs; (iii)
Dealers' awareness of the provisions in CDK and Reynolds's DMS contracts that limit or restrict
the ability of Dealers to facilitate automated access to their licensed DMS platforms by
unauthorized third parties; (iv) other DMS providers offering platforms that are "open" or
otherwise permissive of access by "independent" Data Extractors; (v) comparisons between
providers of data integration or extraction services on the basis of price, service offerings, or any
other criteria; (vi) comparative marketing materials prepared by DMS providers; and (vii)
comparison of pricing or price changes for DMS services (to the extent not already captured by
CDK RFP 38).  With these clarifications, please let us know whether the Dealership Class
Plaintiffs will produce documents responsive to CDK RFPs 39 and 43.

_CDK Requests No. 40, 42, 44:_ During the parties' meet-and-confer, the Dealership Class
Plaintiffs stated their belief that these requests are subsumed within CDK RFP 38.  We disagree,[6]
but in any event please confirm whether all documents responsive to CDK RFPs 40, 42, and 44
will be produced, whether in response to CDK RFP 38 or otherwise.

_CDK Request No. 45:_  We are evaluating the Dealership Class Plaintiffs' representation that the
information sought through this Request has been provided in their responses to CDK's
Interrogatories. In the meantime, we reiterate our request for Plaintiff John O'Neil Johnson

---

[5]       Further, as to additional Dealership Class Plaintiff RFPs related to DMS contract negotiations and
renewals (namely, Dealership Class Plaintiffs' RFPs 16 and 17), CDK initially objected on grounds of
burden, overbreadth, and to the extent these requests are duplicative of prior discovery.  However, as it
will more fully explain in a separate letter, CDK is open to potential compromise on both requests.

[6]       As one example, a request for quotes or proposals from competing DMS providers issued by a
Dealer would be responsive to CDK RFP 44 but may not be considered responsive to CDK RFP 38.

Robert A. Wallner
July 16, 2018
Page 6

Toyota, LLC to provide responses immediately. Responses were due on June 22, and no extensions were requested (or agreed to) for any Dealership.

*CDK Requests No. 66, 69, 70, 73, 91:* During the parties' meet-and-confer, the Dealership Class Plaintiffs stated their belief that that these requests are subsumed within CDK RFPs 1-4. We disagree; for example, documents and communications comparing costs or pricing charged by Data Extractors against 3PA and RCI pricing charged by CDK and Reynolds would be responsive to CDK RFP 70, but not necessarily subsumed within CDK RFPs 1-4. For clarification, and in the interest of reaching a compromise in light of the Dealership Class Plaintiffs' stated concerns regarding burden and overbreadth, CDK is prepared to accept a production of the following documents in response to these Requests: (i) documents sufficient to show all up-front, initial (non-recurring) and monthly fees paid to Data Extractors and Vendors (on a per-application basis) during the Relevant Time Period; and (ii) all documents and communications that discuss fees charged by CDK and Reynolds for data extraction or data integration services, including any comparisons to fees charged by Data Extractors. With these clarifications and as modified by CDK's proposal for compromise, please let us know whether the Dealership Class Plaintiffs will produce documents responsive to CDK RFPs 66, 69, 70, and 73. In addition, please confirm whether the Dealership Class Plaintiffs are withholding any documents responsive to CDK RFP 91 (alleged injury or damages) other than as described in (i) and (ii) above. If such documents exist, please let us know whether the Dealership Class Plaintiffs will produce them.

*CDK Request No. 58:* This Request seeks documents related to any cyber liability insurance policies that the Dealership Class Plaintiffs may carry, which goes not only to Dealers' appreciation of data security risks surrounding sensitive data they receive and transmit, but also the extent to which Dealers bear the risk associated with maintaining what they repeatedly characterize as "dealer data" in CDK and Reynolds's DMSs and transferring data into and out of those DMSs. In the interest of reaching a compromise in light of the Dealership Class Plaintiffs' stated concerns regarding burden and overbreadth, CDK is prepared to accept documents sufficient to show each Dealership Class Plaintiff's cyber liability insurance policies, if any, and documents and communications that discuss: (a) the sufficiency or insufficiency of the policies; (b) any actual claims or notifications made under the policies; and (c) any potential claims or notifications made under the policies. With these clarifications and as modified by CDK's proposal for compromise, please let us know whether the Dealership Class Plaintiffs will produce documents responsive to this Request.

In addition, during our meet-and-confer, the Dealership Class Plaintiffs stated that they would only produce documents in response to this Request if CDK agreed to produce documents related to its own cyber liability insurance policies (to the extent they exist). While we do not agree with Plaintiffs' premise that CDK must necessarily agree to produce all categories of documents that it requests, we have reviewed the requests for production served upon CDK and do not believe that any request seeks documents related to cyber liability insurance policies; if such a request has been made, please bring it to our attention.

Mayer Brown LLP

Robert A. Wallner
July 16, 2018
Page 7

_CDK Request No. 64:_ During our meet-and-confer, the Dealership Class Plaintiffs stated that they believe all documents responsive to this Request are encompassed by other Requests to which they have agreed to produce documents. Please confirm this in writing.

_CDK Request No. 97, 98, 99:_ As discussed during our meet-and-confer, CDK is prepared to accept the Dealership Class Plaintiffs' responses to these Requests if they will also agree to produce non-privileged communications with the other MDL Plaintiffs regarding _any_ of the actions now consolidated into this MDL, including those filed by the Dealership Class Plaintiffs. Please let us know if the Dealership Class Plaintiffs agree to this modification to their responses.


Sincerely,

_/s/ Matthew D. Provance_
Matthew D. Provance
cc:     Lead MDL Plaintiff Counsel of Record
         Reynolds Counsel of Record
         Mark Ryan
         Britt Miller
         Andrew Marovitz

729390620

# EXHIBIT 11

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 17, 2018

**BY E-MAIL**

Andrew S. Marovitz
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

Michael N. Nemelka, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re: *Dealer Management System Antitrust Litigation*,
MDL 2817: *Cox v. CDK* (18-CV-1058) & *Loop v.
CDK* (18-CV-2521)

Dear Mike:

Greetings from Chicago. We're writing this letter to focus the meet-and-confer process with respect to the following discovery responses:

Plaintiff Cox Automotive's Objections and Responses to CDK Global, LLC's First Set of Interrogatories (June 22, 2018)

Plaintiff AutoLoop's Objections and Responses to CDK Global, LLC's First Set of Interrogatories (June 22, 2018)

Plaintiff Cox Automotive's Objections and Responses to CDK Global, LLC's First Set of Requests for Production (June 22, 2018)

Plaintiff AutoLoop's Objections and Responses to CDK Global, LLC's First Set of Requests for Production (June 22, 2018)

Please let us know if you are available on Friday afternoon to address the issues identified in this letter. In light of the current deadline to bring motions to compel, if any, by August 6, we would like to proceed as expediently and efficiently as possible and therefore suggest that we cover both Cox and AutoLoop's discovery responses at the same time given the extent to which there are overlapping issues between them.

## I. GENERAL OBJECTIONS

Cox and AutoLoop have incorporated every one of their General Objections into every one of their specific objections, but have not specified whether they are withholding documents or information on the basis of any objection, which is required by the Federal Rules of Civil Procedure. *See* Rule 34(b)(2)(c); *see also* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated *with specificity*" ) (emphasis added); *Grodzitsky v. American Honda Motor Co., Inc.,* 2017 WL 2616917, at *5 (C.D. Cal. 2017) (if information responsive to

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 2

plaintiff's interrogatory was withheld on the basis of defendant's general objections, the court held defendant "must so state and specify the information withheld"). With respect to the responses to CDK's interrogatories, this practice is improper, as it conceals what is being identified and what is not. Further, with respect to Plaintiffs' responses to the requests for production ("RFPs"), Cox and AutoLoop's decision not to specify what is being produced – or, alternatively, any types of documents actually being withheld in response to any such objections, as required by the Federal Rules – means that neither party is withholding any documents on the basis of such objections (or that those parties have waived their right to do so).

Still, without waiving our rights and for the sake of efficiency, we address these issues in the Specific Objections section below, by asking Plaintiffs to identify whether any of these General Objections forms the basis for withholding non-privileged information or documents responsive to CDK's interrogatories and RFPs.

There is one exception, which we'll address first:

*Cox General Objection 19 to CDK's RFPs; Cox General Objection 10 to CDK's Interrogatories (time period Jan. 1, 2014 to the present)*

Cox declares: "Unless otherwise stated, Cox Automotive's Responses will relate to the time period January 1, 2014, to the present." Although some exceptions have been made, as a general matter the agreed-upon discovery period for this case begins on January 1, 2013. *See* November 24, 2017 Ltr. from Authenticom to CDK and R&R (reflecting your agreement to "January 1, 2013 as the primary collection start date"). Further, Cox itself appears to be seeking discovery from Defendants from 2013 to the present, and even all the way back to 2011 for several of its RFPs. *See* July 17, 2018 Ltr. Cox's limitation to January 1, 2014, therefore, appears to be improper for many of its responses. Moreover, there should be mutuality with respect to the relevant time period for any Cox-related discovery. Please be prepared to discuss why Cox appears to be taking inconsistent positions with respect to the relevant time period, and/or to confirm that responsive information will not be withheld on the basis that it pertains to 2013.

## II.    SPECIFIC OBJECTIONS TO CDK'S INTERROGATORIES

Here are the topics regarding Cox and AutoLoop's specific objections to CDK's interrogatories that we would like to address during our upcoming meet-and-confer.

*Cox Resp. 1; AutoLoop Resp. 1 (identify every term of the agreement that you allege is a per se violation of the antitrust laws)*

Plaintiffs' responses list a series of interrogatory-specific objections and General Objections, but never identify what information is actually being withheld as a result of those objections. As noted above, that practice is improper, as it conceals what is being identified and what is not. To make matters less clear, the responses to this interrogatory run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts from an injunction hearing, Judge

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 3

St. Eve's opinion, Judge James D. Peterson's opinions and orders and briefing before the Seventh Circuit—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not.

All that said, if Plaintiffs' final paragraph of each of their responses to this interrogatory is intended to contain a full and complete answer, without withholding any information known to them on the basis of objections or otherwise, we are prepared to accept that. Is that the case?

Please be prepared to let us know the answer to that question and to the following questions during our upcoming meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 2; AutoLoop Resp. 2 (identify competitors)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope." We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action. In addition to Plaintiffs' stated difficulty in interpreting the word "competitor" and their insistence that an interrogatory about Plaintiff's competitors is not relevant to a lawsuit about competition, please be prepared to let us know the following:

1.    Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2.    With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

*Cox Resp. 3 (Dealer switching)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope." We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 4

claims and defenses in the action. In addition to those issues, please be prepared to let us know the following:

1.      Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2.      With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

*Cox Resp. 4 (DealerTrack DMS's market share)*

Cox should be prepared to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Cox is unaware of any information responsive to the interrogatory that has not been disclosed in its response.

*Cox Resp. 5; AutoLoop Resp. 3 (means of accessing data on CDK's or Reynolds's DMSs)*

Plaintiffs should be prepared to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 6 (means by which Data Extractors access data)*

Cox should be prepared to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 5

3.     Confirm that Cox is unaware of any information responsive to the interrogatory that has
       not been disclosed in its response.

*Cox Resp. 7 (actions taken by You to block or limit any Data Extractor's access to DealerTrack)*

Cox's answer is not responsive, as it redefined the interrogatory by discussing its "practice" (not
its actions, as requested) so long as data integrators "use the approved means for such access"
(another condition not permitted by the actual interrogatory served). While Authenticom's initial
responses to certain interrogatories previously served upon Authenticom by CDK contained
similar language redefining these interrogatories to its "practices" (*see* Authenticom's Resps. to
CDK's Interrogatory Nos. 9- 14), Authenticom later agreed to revise these responses. Given this
agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the
information it requests using this same tactic. Please let us know during the meet-and-confer
whether Cox intends to answer the interrogatory as written, without exception.

*Cox Resp. 8; AutoLoop Resp. 4 (identify when You received DMS data through a Data Extractor
without the Dealer's express consent)*

Plaintiffs should be prepared to answer the following questions during our meet-and-confer:

1.     Is responsive information being withheld on the basis of any interrogatory-specific or
       general objection?

2.     If the answer to this question is yes, identify each such objection and the nature of the
       information that is actually being withheld on the basis of that objection.

3.     Confirm that Plaintiffs are unaware of any information responsive to the interrogatory
       that has not been disclosed in their responses.

*Cox Resp. 9; AutoLoop Resp. 5 (steps You take to ensure Dealer's express authorization to
obtain data)*

Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period
and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's]
current practices."   While Authenticom initially refused to answer a similar interrogatory as
written and instead declared that it would construe such interrogatory as concerning its "current
practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 9), Authenticom later agreed to
revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay
providing CDK with the information it requests using this same tactic. They cite other objections
as well, but do not disclose whether information is actually being withheld on that basis.  Please
be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without
exception, and to answer the following questions during our meet-and-confer:

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 6

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 10; AutoLoop Resp. 6 (steps You take to ensure that Your access to data maintained on a CDK or Reynolds DMS does not exceed a Dealer's express authorization)*

We have the same concern here. Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices." While Authenticom initially refused to answer a similar interrogatory as written and instead declared that it would construe the interrogatory as concerning its "current practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 10), Authenticom later agreed to revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this same tactic. They cite other objections as well, but do not disclose whether information is actually being withheld on that basis. Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 11; AutoLoop Resp. 7 (steps You take to ensure that You or Your Data Extractors do not access certain data)*

Again, we have the same concern. Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices." While Authenticom initially refused to answer a similar interrogatory as written and instead declared that it would construe the interrogatory as concerning its "current practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 11), Authenticom later agreed to revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 7

same tactic. They cite other objections as well, but do not disclose whether information is actually being withheld on that basis.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

4.    AutoLoop has stated that it "currently accesses CDK and Reynolds DMS through the 3PA and RCI programs," so "any data obtained…in excess of the dealers' express authorization would be due to CDK's and Reynolds' own data integration services." However, before 2015, AutoLoop "used SIS to access data for dealers using the CDK DMS." *See* Am. Compl. ¶ 88. Moreover, AutoLoop has alleged that CDK has allowed AutoLoop to continue to use SIS. *See id.* at ¶ 156. Does AutoLoop have any responsive information related to SIS's or any other data extractor's access to DMS data? If so, why has this responsive information been withheld?

*Cox Resp. 12; AutoLoop Resp. 8 (steps You or Data Extractors take to secure data)*

Again, we have the same concern. Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices." They cite other objections as well, but do not disclose whether information is actually being withheld on that basis. Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

4.    Cox and AutoLoop do not provide any information regarding any steps taken by their data extractors during the relevant time period to prevent unauthorized access to DMS

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 8

data. Do Cox and AutoLoop have such responsive information? If so, why has this information been withheld?

*Cox Resp. 13; AutoLoop Resp. 9 (identify written policies, guidelines or other documents)*

Again, we have the same concern. Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices." While Authenticom initially refused to answer a similar interrogatory as written and instead declared that it would construe the interrogatory as concerning its "current practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 14), Authenticom later agreed to revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this same tactic. They cite other objections as well, but do not disclose whether information is actually being withheld on that basis. Finally, they state that they "will supplement [their] Response[s] as such documents are produced." Please be prepared to answer the following questions during our meet-and-confer:

1.   Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.   If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.   Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

4.   Confirm that Plaintiffs will produce all documents from 2013-present responsive to this request.

*Cox Resp. 14; AutoLoop Resp. 10 (scripts and executable programs)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope." We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action. In addition to those issues, please be prepared to let us know the following:

1.   Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2.   With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 9

3.      While AutoLoop has responded that it has not provided any scripts to dealers, it has not provided any information regarding scripts or executable programs that its data extractors (including but not limited to SIS) have used or provided to dealers to access data maintained on a CDK or R&R DMS. Does AutoLoop have such responsive information? If so, why has this responsive information been withheld?

### *Cox Resp. 15; AutoLoop Resp. 11 (purportedly unlawful or unenforceable terms)*

Plaintiffs rely upon a series of objections without specifying what is actually being withheld on basis of those objections. To make matters even less clear, the responses to this interrogatory run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts and exhibits from an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's opinions and orders and briefing before the Seventh Circuit—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

These interrogatory responses constitute an example of Plaintiffs' refusal to provide straightforward responses to simple questions, and to devote more time to objecting than it would take to answer. Please let us know whether or not Plaintiffs will answer the interrogatory completely in a straightforward fashion.

### *Cox Resp. 16; AutoLoop Resp. 13 (purportedly anticompetitive restrictions on data use)*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts and exhibits from an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's opinions and orders, briefing before the Seventh Circuit and the response to Interrogatory No. 1—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 10

*Cox Resp. 17; AutoLoop Resp. 12 (terms of access)*

We are willing to accept this answer, so long as no responsive information is actually being withheld.  Please confirm.

*Cox Resp. 18; AutoLoop Resp. 14 (allegedly "bloated" and "excessive" fees)*

Again, following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts and exhibits from an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's opinions and orders and briefing before the Seventh Circuit—without specifying information or pages from those sources.  That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written and to answer the following questions during our meet-and-confer:

1.     Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.     If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.     Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 19; AutoLoop Resp. 15 (number of times You or Your Data Extractors accessed CDK DMS)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope."  We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action.  In addition to those issues, please be prepared to let us know the following:

1.     Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2.     With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

*Cox Resp. 20; AutoLoop Resp. 17 (manual reporting tools)*

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 11

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope." We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action. In addition to those issues, please be prepared to let us know the following:

1. Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2. With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

*Cox Resp. 21 (purported fraudulent concealment)*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint and motion to dismiss briefing—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1. Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2. If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3. Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 22 (purported false statements)*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint and motion to dismiss briefing—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 12

1.     Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.     If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.     Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 23; AutoLoop Resp. 16 ("tilts the table")*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts and exhibits from an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's opinions and orders and briefing before the Seventh Circuit—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.     Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.     If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.     Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 24; AutoLoop Resp. 18 (damages)*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint and motion to dismiss briefing—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.     Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 13

2.     If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.     Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

## III.     SPECIFIC OBJECTIONS TO CDK'S REQUESTS FOR PRODUCTION

Here are the topics regarding Cox's and AutoLoop's specific objections to CDK's RFPs that we would like to address during our upcoming meet-and-confer.

### A.     OFFER TO MEET AND CONFER

For each of the below RFPs, Cox and/or AutoLoop have refused to produce documents responsive to the requests on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "regarding th[ese] Request[s]." We disagree with Plaintiffs' objections, but accept Plaintiffs' offer to meet-and-confer and note that it is plain from the face of each of the RFPs that the documents sought are directly relevant to the claims and defenses of this action and sufficiently limited in scope.

With respect to certain of the below RFPs, Cox and/or AutoLoop have also objected to producing documents on the basis that certain terms are vague. We disagree with these objections. Thus, please be prepared to discuss the basis for Plaintiffs' objections based on vagueness of terms. For ease of reference during our discussion, we have identified each such RFP below.

Moreover, for many of the below requests, Authenticom and/or MVSC have already agreed to produce documents responsive to similar requests in their respective litigations. Please be prepared to discuss why Cox and/or AutoLoop take a different position than other MDL plaintiffs with respect to certain RFPs, especially given that the same counsel is interpreting those requests. Again, for ease of reference, we note below which RFPs are similar to RFPs to which other MDL plaintiffs have agreed to produce documents.

In addition to these issues, please be prepared to let us know the following for each of the below RFPs: (1) upon which of your RFP-specific or general objections are you relying to actually withhold documents in response to this request? (2) with respect to each such objection, what is the nature of the documents that are being withheld on the basis of that objection?

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 14

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| **DEALERTRACK** | | | | |
| 1 | | Public statements re DealerTrack's acquisition | | |
| 2 | | Statements to investors re DealerTrack acquisition | Authenticom Resp. 54 | |
| 3 | | Endorsements by the California New Car Dealers Association | | |
| 4 | | Filing re DealerTrack acquisition | | |
| 5 | | Divestiture of assets | | |
| 7 | | Investments in or financing related to DealerTrack's data security | Authenticom Resp. 52 | |
| 8 | | Written DealerTrack business plans or presentations | Authenticom Resp. 53 | |
| 10 | | Marketing materials that reference CDK or Reynolds | Authenticom Resp. 27 & related correspondence | |
| 16 | | Studies or surveys re automotive dealers' DMS and/or app use | | "any automotive Dealers' DMS and/or Application use" |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 15

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| | | **DATA SECURITY** | | |
| | 45 | Investments in data security | Authenticom Resp. 52 | "investments," "financing," and "data security" |
| 18 | 40 | Cox/third-party extractor's data security policies | Authenticom Resp. 15 | |
| 19 | 43 | Documents discussing DMS security threats | Authenticom Resp. 4 | |
| 20 | 42 | Analysis of data security/system performance risks to [DealerTrack DMSs or any DMS] from third-party access, [including data tracking access to Cox's DMS by data extractors]) | Authenticom Resp. 4 | "data tracking access" |
| 21 | 41 | Documents re unauthorized third-party access, misuse, and misappropriation of data on DMS | Authenticom Resp. 22 | "unauthorized third-party access to, misuse, and misappropriation of data" |
| 22 | 44 | Documents re well-known data breaches | | |
| 23 | 46 | Documents re cyber liability insurance | Authenticom Resp. 21 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 16

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| **APPLICATIONS** | | | | |
| 24 | 1 | Business plans re applications | Authenticom Resp. 53 & related correspondence | |
| 25 | 2 | Applications competing with DMSs | | |
| 26 | 3 | Sufficient to identify and show functionality of apps, number of dealers on each, etc. | Authenticom Resp. 43, 50-51<br><br>MVSC Resp. 5-6 | |
| 27 | 4 | Sufficient to show number of dealers, DMS providers, for each application | Authenticom Resp. 43<br><br>MVSC Resp. 5-6 | |
| 29 | 5 | Market studies for applications | | |
| 30 | 6 | Share of application sales | Authenticom Resp. 62-64<br><br>MVSC Resp. 11 | "share of application sales" |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 17

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 31 | 7 | Competing share of applications/sales | Authenticom Resp. 62-64<br><br>MVSC Resp. 7, 8, 10 | "Application segments" |
| 32 | 8 | Comparing Cox/AutoLoop apps to CDK/Reynolds or other vendors' apps/services | Authenticom Resp. 27, 49, 63-64<br><br>MVSC Resp. 22 | "otherwise assessing competition" |
| 34 | 10 | Application switching data | Authenticom Resp. 63<br><br>MVSC Resp. 15-16 | |
| 35 | 11 | Application win/loss reports | | |
| 28 | | Fees charged to vendors for 3PA and RCI Integration | | |
| **DEALERTRACK'S THIRD-PARTY ACCESS POLICIES** | | | | |
| 38 | | Documents related to agreements b/t third party data extractors and DealerTrack | Authenticom Resp. 35-36 | |
| 39 | | Documents related to agreements with other DMS providers for access by apps to a DMS | Authenticom Resp. 35-36 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 18

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 40 | | Restrictions DealerTrack places on vendors or third-party extractors | | |
| 42 | | OpenTrack restrictions on access to DealerTrack DMSs | | |
| 43 | | Admission to OpenTrack program | | |
| 44 | | Differences between how Cox and third-party apps access DealerTrack DMSs | | |
| 45 | | Legality of data access methods | Authenticom Resp. 11-12 | "otherwise objectionable" |
| 46 | | Contemplation of charging fees for accessing DealerTrack DMSs through OpenTrack | | |
| 47 | | Diminished DMS capability caused by third-party access to DealerTrack DMS | Authenticom Resp. 4 | |
| **ACCESS TO CDK OR REYNOLDS DMS** | | | | |
| | 16 | Sufficient to identify data extractors used to access CDK and Reynolds DMSs | Authenticom Resp. 43 | |
| | 17 | Documents re agreements with third-party data extractors to access CDK and Reynolds DMSs | Authenticom Resp. 35-36  MVSC Resp. 56 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 19

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 48 | 19 | CDK//Reynolds Data Authorization forms sent to dealers | | |
| 49 | 20 | Agreements for access to CDK/Reynolds DMSs | Authenticom Resp. 35-36<br><br>MVSC Resp. 56 | "Data Authorization forms" |
| 50 | 21 | Sufficient to show methods of accessing, requesting, receiving, storing, securing, encrypting, or using data vis-à-vis a CDK or Reynolds DMS | Authenticom Resp. 5, 9 | "methods of accessing, requesting, receiving, storing, securing, encrypting, or using data" |
| 51 | 22 | Sufficient to show requests for or attempts to obtain login credentials for CDK/Reynolds DMSs, including requests for administrator-level or UUP user access | Authenticom Resp. 6-7<br><br>MVSC Resp. 45 | "administrator-level" and "UUP user" |
| 52 | 23 | Access without dealer authorization | Authenticom Resp. 40<br><br>MVSC Resp. 45 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 20

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 53 | 24 | Dealer declines authorization | Authenticom Resp. 41<br><br>MVSC Resp. 45 | |
| 55 | 25 | DMS access privileges/login credentials | Authenticom Resp. 6<br><br>MVSC Resp. 45 | |
| 56 | 26 | Code-on-the-box | Authenticom Resp. 8-10 | |
| | 27 | Legality of data access methods | Authenticom Resp. 11-12 | "otherwise objectionable" |
| 57 | 28 | Sufficient to show CDK DMSs accessed other than through 3PA, means of accessing, username/passwords used, DMS directors accessed | Authenticom Resp. 6-10 | |
| 58 | 29 | ENG queries | Authenticom Resp. 10 | "English statement queries" |
| 59 | 30 | Content, duration, frequencies of unapproved extractions | Authenticom Resp. 2 | |
| 60 | 31 | Data corruptions caused by unapproved access | Authenticom Resp. 4 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 21

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| **DATA EXTRACTION SERVICES** | | | | |
| 65 | | Documents sufficient to identify data extractors used to access CDK and Reynolds DMSs | Authenticom Resp. 43 | |
| 66 | | Documents re agreements with third-party data extractors to access CDK and Reynolds DMSs | Authenticom Resp. 35-36<br><br>MVSC Resp. 56 | |
| 68 | | Data extraction services Cox offers | Authenticom Resp. 50-51 | |
| 69 | | Syndication of data on CDK or Reynolds DMSs | Authenticom Resp. 50-51 | "syndication" |
| 70 | | 10 Foot Wave LLC | | |
| 71 | | Sufficient to show third parties to whom Cox has syndicated data on CDK or Reynolds DMSs | Authenticom Resp. 43 | "syndication" |
| **PRICING & FINANCIAL INFORMATION -- APPLICATIONS** | | | | |
| 77 | 47 | Sufficient to show prices for Cox/AutoLoop apps | Authenticom Resp. 46-47 | |
| 78 | 48 | Sufficient to show prices for competitor apps | Authenticom Resp. 49, 63 | |
| 82 | 52 | Data extraction fees charged back to dealers for Cox/AutoLoop apps | Authenticom Resp. 46-47 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 22

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| **PRICING & FINANCIAL INFORMATION – DATA EXTRACTION SERVICES** | | | | |
| 85 | 55 | Revenue, costs and profit from syndication of CDK DMS data | Authenticom Resp. 44 | "syndication" |
| 86 | 56 | Revenue, costs and profit from syndication of non-CDK DMS data | | "syndication" |
| 87 | 57 | Integration of data with Cox/AutoLoop apps | | "integrated" |
| **PRICING & FINANCIAL INFORMATION -- DEALERTRACK** | | | | |
| 88 | | Dealer prices for DealerTrack | | |
| 89 | | Non-Cox dealer prices for non-Cox DMSs | | |
| 90 | | Monthly revenue, costs and profits | | |
| 91 | | Quarterly revenue, costs and profits | | |
| **MISCELLANEOUS** | | | | |
| | 60 | Studies or surveys re automotive dealers' DMS and/or app use | | "any automotive Dealers' DMS and/or application use" |
| 92 | 61 | Documents re: 2/18/2015 agreements between CDK and R&R | | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 23

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 96 | 13 (under App section) | Bundled products | | "bundled products" and "solution gaps" |
| 98 | 63 | Damages | Authenticom Resp. 61<br><br>MVSC Resp. 73 | |
| 101 | 66 | Injury/damages | Authenticom Resp. 61 | |
| 102 | 67 | Communications re: Authenticom litigation | | |
| 104 | 69 | Presentations, etc. re: lawsuit and allegations | | |
| 107 | | Industry data re: DMS providers | | "information about DMS providers" |
| 108 | 72 | Industry data re: apps | | "industry data" |

## B.    AGREEMENT TO PRODUCE

For those RFPs to which Plaintiffs have agreed to produce documents, Plaintiffs list a series of RFP-specific objections and General Objections in their respective responses, but never identify what information is actually being withheld as a result of those objections. As noted above, that practice is improper, as it conceals what is being identified and what is not. *See* Fed. R. Civ. P. 34(b)(2)(C). Because Plaintiffs nonetheless have agreed to produce documents responsive to the

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 24

below RFPs, however, CDK assumes that Plaintiffs are producing everything requested in these RFPs. For ease of reference, we list these RFPs in the chart below.

For certain of the RFPs identified below, Plaintiffs also object on the basis that "the documents may not be maintained in the fashion requested and would require Plaintiffs to create documents not presently in existence." If Plaintiffs do not in fact have in their possession documents that are directly responsive to these Requests, please be prepared to let us know what type of documents Plaintiffs intend to produce in response to these RFPs.

Lastly, for certain of the below RFPs, Plaintiffs purport to limit their agreement to produce to only certain responsive documents. Please be prepared to discuss what types of documents Plaintiffs plan to withhold based on these limitations and the basis for such limitations.

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| | | **DEALERTRACK** | | |
| 6 | | Decision for DealerTrack to offer an "open" DMS | | |
| 9 | | Standard agreements with Dealers for DMS services | | |
| 11 | | Comparisons of DealerTrack DMS systems with others | | |
| 12 | | Number and identity of DealerTrack DMS customers | X | |
| 13 | | Win/loss reports re dealer switching to/from DealerTrack DMSs | X | |
| 14 | | DealerTrack's strategies and communications re dealers switching DMS providers | | |
| 15 | | Analysis of ability of dealers to switch DMS providers | | |
| 17 | | DealerTrack's DMS market share | X | |
| | | **APPLICATIONS** | | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 25

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| 33 | 9 | Docs re "superiority" of apps | | |
| 36 | 12 | Complaints from dealers re Cox/AutoLoop apps | | |
| **DEALERTRACK THIRD-PARTY ACCESS POLICIES** | | | | |
| 37 | | Policies re third-party access to DealerTrack DMSs | | |
| 41 | | Standard OpenTrack agreements | | |
| **ACCESS TO CDK OR REYNOLDS DMS** | | | | |
| 54 | | Cox or third-party extractor as "agent" | | |
| 61 | 32 | CDK/Reynolds' third-party access policies, Security First, and 3PA | | |
| 62 | 33 | CDK or Reynolds blocking access | | Responsive documents regarding "efforts" or "threats" made by CDK to block |
| 63 | 34 | CDK employee admitted that "rhetoric around security has little capability" | | |
| 64 | 14 (under "Apps" section) | Inability to create and modify repair orders | | |
| | 15 (under "Apps" section) | Ability to create and modify repair orders using SmartLane by accessing non-CDK DMSs | | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 26

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| \multicolumn DATA EXTRACTION SERVICES | | | | |
| 67 | 18 (under "Access to CDK/RR DMS" section) | Pricing and/or services offered by any third-party data extractor to access CDK and Reynolds DMSs | | |
| \multicolumn 3PA AGREEMENTS/CERTIFICATION | | | | |
| 72 | 35 | 3PA agreements | | |
| 73 | 36 | Reynolds 3PA participation, fees | | |
| 74 | 37 | Pass-through fees | | |
| 75 | | CDK "threats" to discontinue Cox integrations | | |
| 76 | 38 | 3PA certification and applications | | |
| | 39 | 3PA pricing terms for AutoLoop products | | |
| PRICING & FINANCIAL INFO -- APPLICATIONS | | | | |
| 79 | 49 | Monthly revenue, costs and profits | X | |
| 80 | 50 | Quarterly revenue and profits | X | |
| 81 | 51 | Fees paid to third-party data extractors for Cox/AutoLoop apps | X | Responsive docs "with respect to integration and/or extraction fees paid." |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 27

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| 83 | 53 | Revenue and profit projections | X | |
| **PRICING & FINANCIAL INFORMATION – DATA EXTRACTION SERVICES** | | | | |
| 84 | 54 | Fees paid to third-party data extractors for apps | X | |
| **MISCELLANEOUS** | | | | |
| | 58, 59 | Analysis of ability of dealers to switch DMS providers | | |
| 93 | | Wind down agreements b/t Cox and DMS providers | | |
| 95 | | CDK's statement that Cox is source of "ongoing deficiencies" | | |
| 97 | | Complaints that Cox failed to focus on dealer needs | | |
| 94 | 62 | Coordinated conduct by CDK & Reynolds | | |
| 99 | 64 | Docs relied upon in complaint | | |
| 100 | 65 | Subpoenaed docs | | |
| 103 | 68 | Docs produced to FTC re joint conduct investigation | | |
| 105 | 70 | Doc retention policies | X | |
| 106 | 71 | Org charts | X | |

We look forward to resolving these issues during the meet-and-confer this week.  Please let us know your availability on Friday afternoon.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 28

Sincerely yours,

Andrew S. Marovitz

cc:    Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Matthew Provance

# EXHIBIT 12

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

File Number: 48KZ-266044

July 18, 2018

**VIA EMAIL**

Michael E. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Ste. 400
Washington, DC 20036-3215
mnemelka@kellogghansen.com

> Re: *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL No. 2817 (N.D. Ill.)

Dear Mike:

I write this letter on behalf of Defendants Reynolds, CDK and CVR regarding MVSC's responses and objections to Defendants' first set of discovery requests to MVSC. Please let us know if you are available for a telephonic meet and confer next week at 1 p.m. eastern time following our discussion of Individual Plaintiffs' RFPs.

### 1. MVSC's Responses and Objections to Defendants' Requests for Production

In response to the following RFPs, MVSC raised baseless objections regarding relevance, burden and overbreadth, among others, but concluded with a sentence stating that "MVSC is willing to meet and confer with Defendants regarding this Request." Accordingly, we would like to meet and confer with you regarding these RFPs.

- RFP 9 (Vitu marketing and business plans)

- RFP 17 (complaints about EVR providers)

- RFP 19 (MVSC's EVR contracts/agreements with dealers)

- RFP 20 (documents exchanged with other EVR providers)

- RFPs 35-36 (documents relating to hostile integration to DMS)

- RFP 37 (documents relating to application to participate in third party program offered by a DMS provider other than Reynolds or CDK)

Michael E. Nemelka
July 18, 2018
Page 2

- RFP 42 (documents referring to independent data integrators)

- RFP 43 (documents referring to legality or illegality of independent data integrator conduct)

- RFP 47 (documents exchanged with independent data integrators)

- RFP 49 (documents relating to complaints about independent data integrators)

- RFP 50 (documents relating to security issues surrounding independent data integrators' access to DMS data)

- RFP 78 (documents or communications regarding claims or allegations in complaint or any related government investigation)

In response to the following RFPs, MVSC raised baseless objections regarding relevance, burden and overbreadth, among others, but did not agree to produce any documents and did not offer to meet and confer. We would also like to meet and confer with you regarding these RFPs.

- RFP 44 (documents relating to MVSC's knowledge or intent that independent data integrators would access a Reynolds or CDK DMS without authorization)

- RFP 48 (documents referring to competition between independent data integrators)

- RFP 54 (documents sufficient to show payments to independent data integrators)

- RFP 57 (MVSC's data security policies and guidelines)

- RFP 59 (documents relating to logins and passwords for a Reynolds or CDK DMS)

- RFP 60 (documents relating to any breach or hack)

- RFP 62 (policies and practices relating to handling of login and password information)

- RFP 66 (documents MVSC exchanged with dealers about how it planned to access a DMS)

- RFP 67 (MVSC competitive analyses, strategic plans, long-range plans, business plans, marketing plans, forecasts, and related documents)

- RFP 76 (documents MVSC exchanged with eLead)

Michael E. Nemelka
July 18, 2018
Page 3

- RFP 77 (documents showing when and how MVSC first became aware of facts alleged in complaint)

In response to the remaining RFPs (RFPs 1-8, 10-16, 18, 21-34, 38-41, 45-46, 51-53, 55-56, 58, 63-65, 68-75, 79-80), MVSC stated that, notwithstanding its objections, it would produce certain responsive, non-privileged materials subject to a reasonable search using "search terms agreed to by the parties." Accordingly, we would like to understand MVSC's views regarding Defendants' proposed search terms. Defendants proposed search terms to MVSC on May 25, 2018. Please let us know if you have any comments or proposed edits regarding those search terms.

Finally, MVSC's response to RFP 61 is incomplete and states: "Subject to and without waiving the foregoing objections, . ." Please clarify MVSC's response.

2. **MVSC's Responses and Objections to Defendants' Interrogatories**

In response to the following Interrogatories, MVSC raised baseless objections regarding relevance, burden and overbreadth, among others, but concluded with a sentence stating that MVSC is willing to meet and confer about the Interrogatory. Accordingly, we would like to meet and confer with you regarding these Interrogatories.

- Interrogatory 8 (information regarding unidentified witnesses referenced in complaint)

- Interrogatory 18 (information regarding MVSC's superior security claims)

- Interrogatory 26 (description of MVSC's EVR services for non-new car franchised dealerships)

- Interrogatory 30 (facts supporting allegation that Reynolds and CDK are disabling scripts used by dealers to extract data)

- Interrogatory 31 (facts supporting allegation that CDK and Reynolds have threatened dealers)

- Interrogatory 36 (identity of dealers who started using MVSC's EVR services after January 1, 2014).

In response to the following Interrogatories, MVSC raised baseless objections regarding relevance, burden and overbreadth, among others, but did not agree to provide any information. We would also like to meet and confer with you regarding these Interrogatories.

- Interrogatories 14-15 (information regarding independent data integrators used by MVSC and whether they were authorized to access a Reynolds or CDK DMS)

Michael E. Nemelka
July 18, 2018
Page 4

- Interrogatory 25 (DMS logins and passwords provided to MVSC by dealers or independent data integrators for a Reynolds or CDK DMS)

MVSC's responses to the following Interrogatories were evasive, inaccurate and/or incomplete. We would also like to meet and confer regarding these Interrogatories.

- Interrogatories 1-4 (information regarding non-privileged communications, interviews or statements regarding allegations in complaint)

  - MVSC provided no information in response to these Interrogatories, and instead stated that "MVSC responds that this Interrogatory seeks protected attorney work product and attorney-client privileged communications." This response is improper because Defendants are only seeking non-privileged information in response to these Interrogatories. Indeed, Interrogatories 3 and 4 specifically state this. Interrogatories 1 and 2 seek communications with third parties, which would not be privileged or protected. MVSC's responses are therefore improper and evasive and MVSC must respond and provide any non-privileged responsive information in its possession. If MVSC only has privileged information in its possession, it must say so and set forth the basis for the privilege claim or claims.

- Interrogatory 22 (why did MVSC conceal the fact that it was accessing DMS using independent data integrators?)

  - In its response, MVSC states that it "did not withhold" information from Reynolds or CDK regarding its use of independent data integrators to access dealer data on a Reynolds or CDK DMS. This is false. When Matt Armstrong of MVSC submitted MVSC's application to the RCI program in 2014, he did not inform Reynolds that MVSC had been accessing Reynolds's DMS through Authenticom, even though this information should have been provided in response to one of the questions on the application form. Please supplement MVSC's response to explain why this information was withheld from Reynolds.

- Interrogatory 29 (description of what a fair price for RCI or 3PA would be)

  - MVSC's substantive response is only about 3PA. Please supplement MVSC's response to describe what MVSC believes would be a fair price for RCI and why.

We look forward to meeting and conferring with you and discussing these issues in more detail.

Michael E. Nemelka
July 18, 2018
Page 5

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227775265.2

# EXHIBIT 13

MAYER • BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 19, 2018

**B**Y **E-M**AIL

Matthew D. Provance
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

Michael N. Nemelka
K̲ELLOGG, H̲ANSEN, T̲ODD, F̲IGEL & F̲REDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Mike:

I write regarding Authenticom's responses to CDK Global, LLC's ("CDK") requests for production ("RFPs"), interrogatories, and requests for admission ("RFAs").

**Authenticom's Responses to CDK's RFPs**

We received no response to our June 14 letter concerning Authenticom's responses to RFPs 2, 51, and 68. Accordingly, we can only conclude that Authenticom has rejected our offer for compromise concerning RFP 2, which has been the subject of numerous meet-and-confers and numerous letters, and the parties have reached impasse. We also conclude from Authenticom's failure to respond to our June 14 letter that Authenticom refuses to provide an answer to our questions and requests for clarification concerning RFPs 51 and 68.

**Authenticom's Responses to CDK's Interrogatories**

Authenticom's June 22 "amended" responses to Interrogatories No. 4, 5, 9, 10, 11, 13, and 21 suffer from the same problems that we previously identified. For most of these, it appears that Authenticom has added a sentence to the end of the original response that does not meaningfully alter or expand upon the response. Further, Authenticom continues to object to Interrogatory No. 25. We have explained during prior meet-and-confers and in prior correspondence why we believe Authenticom's objections to Interrogatory No. 25 are improper. We believe that the parties are at an impasse as to these Interrogatories.

**Authenticom's Responses to CDK's RFAs**

Authenticom's June 22 "amended" responses to RFAs No. 3 and 4 suffer from the same problems that we previously identified. Authenticom now responds by "admitting" to different facts than what each of these RFAs is asking about. Again, we believe that the parties are at an impasse as to these RFAs.

Mayer Brown LLP

Michael N. Nemelka
July 19, 2018
Page 2


Particularly in light of the numerous outstanding discovery issues that *do* require additional meet-and-confers between the MDL parties over the next two weeks, we are struggling to see the value of further meet-and-confers with Authenticom on the issues identified in this letter. However, if you believe otherwise, please let us know by Friday, July 20.

Sincerely,


*/s/ Matthew D. Provance*
Matthew D. Provance

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

# EXHIBIT 14

| | |
|---|---|
| **From:** | Michaels, Jessica A. |
| **Sent:** | Thursday, July 19, 2018 2:19 PM |
| **To:** | 'SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com' |
| **Cc:** | Miller, Britt M.; Provance, Matthew D.; Hastert, Ethan A. |
| **Subject:** | In re DMS MDL: Plaintiffs Proposed Additional Search Terms to CDK |
| **Attachments:** | Redline_MDL Plaintiffs_ Additional Search terms for CDK ESI 5 25 2018 v CDK Revisions 07 19 2018 (729500271_4).DOCX |

Counsel,

To further our discussions on search terms, attached are CDK's responses and edits to the additional search terms that MDL Plaintiffs proposed on May 25, 2018. The terms originally proposed by Plaintiffs were wildly overbroad to the point of essentially defeating the purpose of using search terms; they returned over 93% of the dataset tested (returning over 4 million documents), which is not even a complete collection of additional documents potentially requiring review from the 30 CDK custodians under discussion. We are still in the process of running hit reports for the proposed revisions across all the likely custodians' data and therefore reserve all rights. Additionally, our willingness to use any of the terms is necessarily dependent on resolving outstanding issues related to both custodians and CDK's responses to Plaintiffs' Requests for Production.

We will be prepared to discuss CDK search terms in connection with our discussion of Cox, AutoLoop, and Authenticom search terms tomorrow. In addition, we reiterate our request for MVSC's response as to the search terms that were proposed for it on 05/25 so that the parties can meet-and-confer, as needed, as soon as possible.

Regards,
Jessica Michaels

MDL Plaintiffs' Additional Search Terms for CDK ESI **(Revised by CDK 07.19.2018)**

| | | |
|---|---|---|
| 1 | ~~(Authenticom or DealerVault or SIS or SelectQ* or "Superior Integrat* Solutions" or StoneEagle or ProQuotes or integrat*) and (pay* or paid or charge* or fee* or expend* or cost* or outlay* or spend* or bill* or invoice*)~~ | To the extent that CDK responds to the RFPs related to this search term, CDK intends to do so via a non-custodial production. |
| 2 | (Dan.McCray@CDK.com or Dan.McCray@ADP.com or McCray or Dan) AND (damn* or shit* or fuck* or crap or bullshit or screw* or hell or bitch* or whore* or puss*) | |
| 3 | (McCray or Dan) w/40 (damn* or shit* or fuck* or crap or bullshit or screw* or hell or bitch* or whore* or puss*) | |
| 4 | ((Reynolds or RCI or *@reyrey.com) and (CDK or DMI or "Digital Motor*" or Integralink)) ~~and~~w/20 (comingl* or commingl* or syndicat* or agent* or cleans* or exclusive or designat* or partner* or provider or retransmit or share) | Overbroad. Original term returning over 22,000 documents to review.[1] |
| 5 | ~~(3PA or (third w/3 part*) or (3rd w/3 par*) or data or integrat* or (CDK and (interface or hub or platform or agreement)) or "DMS access" or MIA or "managed interface") and (pric* or fee* or cost* or bill* or charg* or surchar* or pay* or high or exorbitant or expen* or spend* or "too much" or inability or excessive or robbery or "second mortgage" or ransom or *afford*)~~ | Overbroad. Returning over 457,000 documents to review. |
| 6 | ~~(pric* or fee* or cost* or bill* or charg* or surchar* or pay* or high or exorbitant or expen* or spend*) and (cancel* or end* or terminat* or contin* or discontin* or cease* or stop* or withdraw or join or serv* or sell* or reduc* or limit* or only or eliminate*)~~ | Overbroad. Returning over 1,088,800 documents to review. |
| 7 | ((RCI or Reynolds) ~~and~~w/10 (fee* or charg* or bill* or pric* or cost* or surcharg* or pass* or pay* or invoice*)) and (dealer* or customer* or user*) | Overbroad. Original term returning over 56,000 documents to review. |

[1] These estimates are based on a partial collection of documents from agreed-to CDK document custodians, which is ongoing. Once the list of CDK document custodians is finalized and collections are completed, CDK will re-run MDL plaintiffs' terms and reserves the right to make additional overbreadth and burden objections as may be warranted upon examination of the complete dataset. In addition, all search terms remain subject to additional testing and validation, and may require adjustment in order to address syntax errors or individual terms that return voluminous nonrelevant, non-responsive results against the dataset we ultimately use to review and produce documents. CDK reserves all of its rights in this regard.

| MDL Plaintiffs' Additional Search Terms for CDK ESI (Revised by CDK 07.19.2018) | |
|---|---|

| 8 | (~~extract\* or poll\* or pull\* or access\* or download\* or acquir\* or collect or DMS or "dealer management system\*" or~~ "manual report\*") or ~~DR or~~ "Dynamic ~~or report\* or generat\*) and~~") w/20 (utility or use\* or difficult\* or eas\* or abilit\* or limit\* or slow or small or unsophisticated) | Overbroad. Original term returning over 716,500 documents to review. |
|---|---|---|
| 9 | ~~(\*MenuVantage\* or \*PartsVoice\* or \*Cobalt\* or "F&I Results" or \*IntraVision\* or "Lot Management" or \*lotmanagement\* or \*one-eighty\* or \*oneeighty\* or "DLS accelerator" or \*DLS\* or "Performance 20" or \*Performance20\* or CVR or "computer vehicle registration" or \*@cvrconnect.com or CDK or ADP or "Digital Motor Works" or DMI or Integralink or \*@CDK.com or \*@ADP.com or \*@DMI.com or \*@integralink.com or \*@digitalmotorworks.com) and (pass\* or user\* or ID or login or log-in or "log in" or code or credential)\*~~ | Exceeds 450 characters. See 9A and B below. |
| ~~10~~9A | ~~(CDK or ADP or "Digital Motor Works" or DMI or Integralink or \*@CDK.com or \*@ADP.com or \*@DMI.com or \*@integralink.com or \*@digitalmotorworks.com) and (pass\* or user\* or ID or login or log-in or "log in" or code or credential\*)~~ | Overbroad. Returning over 2,922,000 documents to review. |
| 9B | ~~(\*MenuVantage\* or \*PartsVoice\* or \*Cobalt\* or "F&I Results" or \*IntraVision\* or "Lot Management" or \*lotmanagement\* or \*one-eighty\* or \*oneeighty\* or "DLS accelerator" or \*DLS\* or "Performance 20" or \*Performance20\* or CVR or "computer vehicle registration" or \*@cvrconnect.com) and (pass\* or user\* or ID or login or log-in or "log in" or code or credential)\*~~ | Overbroad. Returning over 452,000 documents to review. |
| 10 | ~~(Security or cyber\* or infosec) and (protocol\* or manual\* or polic\* or plan\* or requir\* or mandate\* or train\* or process\* or tool\* or method\* or guideline\* or strateg\*) and (dev\* or admin or program\*)~~ | Overbroad. Returning over 80,000 documents to review. |
| 11 | "Vendor X" | |
| 12 | "Joint team" | |
| 13 | "Combined team" | |
| 14 | "No disruption" w/50 "security level" | |
| 15 | "Iron dome" | |
| 16 | "Secure DMS Strategy" | |
| 17 | "lock out\*" | |
| 18 | "Security Advisory Council" | |
| 19 | "Project Scarlett" | |
| 20 | "Project Ledson" | |
| 21 | Unhook ~~AND~~w/10 (Rey\* or RR or R&R) | |
| 22 | "Data breach" AND (OneEighty or "One Eighty") | |
| 23 | "Evil empire" | |
| 24 | "DDX mass activation" | |
| 25 | Trust\* w/50 (Rey\* or RR or R&R or \*Schafer or \*Brockman) | |

MDL Plaintiffs' Additional Search Terms for CDK ESI **(Revised by CDK 07.19.2018)**

| | | |
|---|---|---|
| 26 | Threat* w/50 (Rey* or RR or R&R) | |
| 27 | Exorbitant w/50 (Rey* or RR or R&R) | |
| 28 | DMI and "one stop shop" | |
| 29 | (Leak or leakage) w/50 (Authen* or SIS) | |
| 30 | Drain* w/20 swamp | |
| 31 | ("Managed Interface" OR "Interface Agreement" OR MIA OR 3PA) ~~AND~~w/20 (Cox* OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* OR *Loop* OR XRM OR AutoBook OR SmartLane) | Overbroad. Original term returning over 47,000 documents to review. |
| 32 | ((3PA OR access OR poll* OR extract* OR integrat* OR data) AND (pric* OR fee OR rate OR cost)) w/20 (Cox OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* OR *Loop* OR XRM OR AutoBook OR SmartLane OR (MVSC OR DealerDesk)) | |
| 33 | (("Managed Interface" OR 3PA) AND (access OR poll* OR extract* OR integrat* OR data)) ~~AND~~w/20 (Cox OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* OR *Loop* OR XRM OR AutoBook OR SmartLane OR (MVSC OR DealerDesk)) | Overbroad. Original term returning over 16,000 documents to review. |
| 34 | (share OR permit* OR comingl* OR commingl* OR retransmit OR syndicat* OR agent OR cleans* OR exclusiv* OR designat*) ~~AND~~w/20 (Cox* OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* OR *Loop* OR XRM OR AutoBook OR SmartLane) | Overbroad. Original term returning over 42,000 documents to review. |
| 35 | ("Most Favor*" OR MFN) AND (Cox* OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime*) | |
| 36 | ((Least OR low* OR cheapest OR best) ~~AND~~w/10 (pric* OR fee OR rate OR cost)) AND (Cox* OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* OR Dealertrack) | Overbroad. Original term returning over 26,000 documents to review. |
| 37 | (compet* OR threat* OR challeng* OR loss OR lose OR losing) w/20 (Cox* OR Autotrader* OR Dealer Dot Com OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* Dealertrack OR "DT DMS") | |
| 38 | ((DMS OR ~~data~~"dealer management system") w/~~20~~10 (block* | Overbroad. |

**MDL Plaintiffs' Additional Search Terms for CDK ESI** (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | OR restrict* OR disable* OR stop* OR "~~"~~cut off~~"~~")) | Original term returning over 28,000 documents to review. |
| 39 | (access* OR scrap* OR emulat* OR poll* OR pull* OR integrat* OR extract*) w/~~20~~10 (block* OR restrict* OR disable* OR stop* OR "~~"~~cut off~~"~~") AND (third party OR 3d party OR compet* OR non-Reynolds OR non-CDK) | Overbroad. Original term returning over 13,000 documents to review. |
| 40 | Tilt* AND field | |
| 41 | Advan* OR favor AND (own w/3 (app* OR self OR *selves)) | |
| 42 | (Lever* OR edge OR favor* OR advantage*) w/~~15~~10 (DMS OR ~~data~~"dealer management system") | Overbroad. Original term returning over 24,000 documents to review. |
| 43 | "natural advantage" | |
| 44 | ~~(~~("repair order" OR RO) ~~AND~~w/20 (allow* OR permi* OR access* OR create OR modify~~)~~) AND (app* OR Xtime* OR ServiceEdge OR "Service Edge" OR *Loop* OR SmartLane) | Overbroad. Original term returning over 25,000 hits. |
| 45 | ("repair order" OR RO) ~~AND~~w/20 (Xtime* OR ServiceEdge OR "Service Edge" OR *Loop* OR SmartLane) | Overbroad. Original term returning over 14,000 documents to review. |
| 46 | (Dealertrack OR Cox) ~~AND~~w/20 (leas* OR purchas* OR desk* OR rent* OR loan* OR buy OR lessee OR paper*) | Overbroad. Original term returning over 31,000 documents to review. |
| 47 | "CVR Category" | |
| 48 | Dealertrack AND (Nissan OR NMAC OR Honda OR AHFC OR nissanfinance* OR hondafinancial*) | |
| 49 | Dealertrack ~~AND~~w/20 (transit* OR switch* OR transf* OR chang*) | Overbroad. Original term returning over 23,000 documents to review. |
| 50 | Push w/~~10~~5 app* | Overbroad. |

**MDL Plaintiffs' Additional Search Terms for CDK ESI** (Revised by CDK 07.19.2018)

|  |  | Original term returning over 15,000 documents to review. |
|---|---|---|
| 51 | Push w/10 3PA |  |
| 52 | "push notification" |  |
| 53 | (Burden OR load OR stress OR performance) ANDw/20 (Cox* OR *Loop* OR (MVSC* OR DealerDesk*)) | Overbroad. Original term returning over 23,000 documents to review. |
| 54 | ("Managed Interface" OR 3PA) AND (lag OR laten* OR delay OR "response time") |  |
| 55 | (RCI OR ""certified interface"" OR RCA OR "certified access") AND (lag OR laten* OR delay OR "response time") |  |
| 56 | "Project Peach" |  |
| 57 | ("Open Dealer Exchange" OR ODE OR "digital deal" OR eContracting) AND (Cox OR Dealertrack) AND integrat* |  |
| 58 | (Cox OR Dealertrack) AND ("vehicle regist*" OR "electronic regist*" OR titling) AND (access* OR integrat* OR poll OR extract OR data OR pull) |  |
| 59 | ("Managed Interface" OR "Interface Agreement" OR MIA OR 3PA) AND *Loop* OR *loop* |  |
| 60 | (hostile OR scrap* OR emulat* OR poll* OR pull* OR integrat* OR extract* OR Authenticom OR DealerVault OR SIS OR SelectQu OR SelectQ OR ""Superior Integrated Solutions"" OR StoneEagle OR ProQuotes) ANDw/20 (*Loop* OR *loop*) |  |
| 61 | (*CDK.com OR *adp.com) AND (Cox* OR *Loop* OR (MVSC* OR DealerDesk*) AND (*KIA* OR *Hyundai* OR *Honda* OR *Toyota* OR *Chevy* OR *Chevrolet* OR *Buick* OR *Cadillac* OR *GMC* OR *Dodge* OR *Chrysler* OR *Jeep* OR *Acura* OR *Lexus* OR *BMW* OR *Mercedes* OR *Volkswagen* OR *VW* OR *Audi* OR *Ford* OR *Lincoln* OR *Volvo* OR *Mazda* OR *Suzuki* OR *Fiat* OR *Scion* OR *Mitsubishi* OR *Motor* OR *Penske*) | Overbroad. Too broad for tool to even calculate number of hits. |
| 62 | ((Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@mvscusa.com) AND (*@evrconnect.com OR @avrs.com) AND (*@cdk.com OR *@adp.com OR *@reyrey.com OR *@digitalmotorworks.com OR *@integralink.com) AND ((California OR Calif. OR CA OR IL OR Ill. OR Virginia OR VA OR Va. OR Oregon OR Ore. OR | Syntax error. Impossible to narrow/fix as drafted. |

| MDL Plaintiffs' Additional Search Terms for CDK ESI (Revised by CDK 07.19.2018) | | |
|---|---|---|

| | | |
|---|---|---|
| | ~~expan* OR new OR threat* OR compet* OR presence OR grow*~~ ~~OR pressur* OR (number w/10 dealer*) OR revenue*) w/20~~ ~~(market* OR *share OR establish* OR enter* OR penetrat* OR~~ ~~danger*)~~ | |
| 63 | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR ~~*@mvscusa.com~~ *@mvscusa.com) AND ((((*@cdk.com OR *@adp.com OR *@digitalmotorworks.com OR *@integralink.com) AND ~~*@reyrey.com~~ *@reyrey.com) OR ((*@cvrconnect.com OR @avrs.com) AND (*@cdk.com OR *@adp.com OR *@digitalmotorworks.com OR *@integralink.com OR *@reyrey.com))) | |
| 64 | ~~(Armstrong OR Kimball OR Nemelka OR Brueggeman OR~~ ~~Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR~~ ~~DMVDesk OR "DMV Desk" OR *@vitu.com OR~~ ~~*@dmvdesk.com OR *@mvscusa.com) AND (3PA OR RCI OR~~ ~~"third party" OR "3rd party" OR "third-party" OR (Reynolds w/10~~ ~~(hub OR interface OR agreement)) OR integrat* OR access OR~~ ~~(DMS w/10 (data OR access)) OR "managed interface" OR appl*~~ ~~OR certif* OR approv* OR pric* OR term* OR top-line OR "top~~ ~~line" OR danger* OR compet* OR participat* OR permit* OR~~ ~~integrat*)~~ | Exceeds 450 characters. See 64A and B below. |
| 64A | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR *@mvscusa.com) AND (3PA OR RCI OR "third party" OR "3rd party" OR "third-party" OR (Reynolds w/10 (hub OR interface OR agreement)) OR integrat* OR access) | |
| 64B | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR ~~*@mvscusa.com~~ *@mvscusa.com) AND ((DMS w/10 (data OR access)) OR "managed interface" OR appl* OR certif* OR approv* OR pric* OR term* OR top-line OR "top line" OR danger* OR compet* OR participat* OR permit* OR integrat*) | |
| 65 | ~~(Dealertrack OR "General Systems Solutions" OR "Title~~ ~~Technologies" OR TitleTec OR "Diversified Vehicle Services"~~ ~~OR Envirotest OR TitleNGO OR Renuit OR "Decision~~ ~~Dynamics" OR "National Financial" OR TriVin OR VinTek OR~~ ~~"Interstate Title Solutions" OR "Computer Technology~~ ~~Management Services" OR "DDI Technology" OR "Auto Data~~ ~~Direct" OR AIB OR DLRdmv OR "EMV agent" OR EMV11 OR~~ ~~Opus OR INSTeTAG OR "USA ELT" OR "Auto Titles of~~ ~~America" OR "Florida ELT" OR "Dealer Support Services" OR~~ | Exceeds 450 characters. See 65A-D below. Overbroad. Original term returning over 45,000 documents to review. |

MDL Plaintiffs' Additional Search Terms for CDK ESI (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | "Secure Title Administration" OR "Assurant Specialty Property" OR PDP OR "FDI Collateral Management") OR EVR OR "electronic vehicle" OR "titling" OR (vehicle w/3 registration)) AND (3PA OR RCI OR "third party" OR "3rd party" OR "third-party" OR (Reynolds w/10 (hub OR interface OR agreement)) OR "managed interface" OR integrat* OR access OR (DMS w/10 data) OR appl* OR certif* OR approv* OR participat*) | |
| 65A | ("National Financial" OR TriVin OR VinTek OR "Interstate Title Solutions" OR "Computer Technology Management Services" OR "DDI Technology" OR "Auto Data Direct" OR AIB) AND w/20 (3PA OR RCI OR "third party" OR "3rd party" OR "third-party" OR (Reynolds w/10 (hub OR interface OR agreement)) OR "managed interface" OR integrat* OR access OR (DMS w/10 data) OR appl* OR certif* OR approv* OR participat*) | |
| 65B | (Dealertrack OR "General Systems Solutions" OR "Title Technologies" OR TitleTec OR "Diversified Vehicle Services" OR Envirotest OR TitleNGO OR Renuit OR "Decision Dynamics") w/20 (3PA OR RCI OR "third party" OR "3rd party" OR "third-party" OR (Reynolds w/10 (hub OR interface OR agreement)) OR "managed interface" OR integrat* OR access OR (DMS w/10 data) OR appl* OR certif* OR approv* OR participat*) | |
| 65C | ("Secure Title Administration" OR "Assurant Specialty Property" OR PDP OR "FDI Collateral Management" OR EVR OR "electronic vehicle" OR "titling" OR "vehicle registration") w/20 (3PA OR RCI OR "third party" OR "3rd party" OR "third-party" OR (Reynolds w/10 (hub OR interface OR agreement)) OR "managed interface" OR integrat* OR access OR (DMS w/10 data) OR appl* OR certif* OR approv* OR participat*) | |
| 65D | ("Auto Titles of America" OR "Florida ELT" OR "Dealer Support Services" OR DLRdmv OR "EMV agent" OR EMV11 OR Opus OR INSTeTAG OR "USA ELT") w/20 (3PA OR RCI OR "third party" OR "3rd party" OR "third-party" OR (Reynolds w/10 (hub OR interface OR agreement)) OR "managed interface" OR integrat* OR access OR (DMS w/10 data) OR appl* OR certif* OR approv* OR participat*) | |
| 66 | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR *@mvscusa.com *@mvscusa.com) AND (Security OR cyber OR infosec OR (dealer w/10 data)) | |
| 67 | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu) | |
| 68 | (MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR *@mvscusa.com) AND (exec* OR officer OR CEO OR president | |

MDL Plaintiffs' Additional Search Terms for CDK ESI (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | OR chairman OR COO OR chief) | |
| 69 | (Don OR Kelly OR Joseph OR Joe OR John OR Napa) AND (MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR *@mvscusa.com) | |
| 70 | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR *@mvscusa.com *@mvscusa.com) AND (acquir* OR purchas* OR invest* OR buy* OR bough* OR merg* OR consolidat*) | |
| 71 | Ledson OR (AVRS AND (acqui* OR purchas* OR invest* OR buy* OR bought OR obtain* OR merg* OR consolidat*)) | |
| 72 | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR *@mvscusa.com *@mvscusa.com) AND (block* OR disable* OR remove* OR exclude OR clos* OR lock OR disrupt* OR restrict OR shut OR suspend OR "cut" OR stop* OR secur* OR interrupt* OR hostile OR *authoriz*) | |
| 73 | (Armstrong OR Kimball OR Nemelka OR Brueggeman OR Bulusu OR MVSC OR "motor vehicle software" OR Vitu OR DMVDesk OR "DMV Desk" OR *@vitu.com OR *@dmvdesk.com OR *@mvscusa.com *@mvscusa.com) AND (Authenticom OR Dealervault OR "Dealer Vault" OR SIS OR "Superior Integrat* Solutions" OR ProQuotes OR StoneEagle OR SelectQ* OR integrat* OR poll* OR extract* OR access* OR pull* OR emulate* OR scrape OR retrieve OR gather* OR produc* OR report* OR enter) | |
| 74 | (*@cvrconnect.com OR *@avrs.com OR CVR OR AVRS OR Ledson OR "Computer* vehicle registration" OR EVR OR ((vehicle OR title OR electronic) w/10 (titling OR regist*)) OR "CDK Vehicle Registration" OR "Reynolds Vehicle Registration") | Overbroad. Captures all of CVR business. |
| 75 | ("realtime" OR "real time" OR "bi-directional" OR bidirectional OR "two-way" OR twoway OR push OR instant OR MDS OR "managed data" OR "managed interface") w/10 (integrat* OR DMS) | Overbroad. Original term returning over 134,000 documents to review. |
| 76 | (*@cvrconnect.com OR *@avrs.com OR CVR OR AVRS OR Ledson OR "Computer* vehicle registration" OR EVR OR ((vehicle OR title OR electronic) w/10 (titling OR regist*)) OR "CDK Vehicle Registration" OR "Reynolds Vehicle Registration") AND (California OR Illinois OR CA OR IL OR Calif. OR Ill.) AND (expan* OR new OR threat* OR compet* | Exceeds 450 characters. See 76A-B below. |

MDL Plaintiffs' Additional Search Terms for CDK ESI (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | OR presence OR grow* OR pressur* OR (number* w/10 dealer*) OR market* OR *share OR analy* OR assess* OR consult* OR examin* OR customer* OR forecast* OR project* OR revenue*) | |
| 76A | ("CDK Vehicle Registration" OR "Reynolds Vehicle Registration") AND (California OR Illinois OR CA OR IL OR Calif. OR Ill.) AND (expan* OR new OR threat* OR compet* OR presence OR grow* OR pressur* OR (number* w/10 dealer*) OR market* OR *share OR analy* OR assess* OR consult* OR examin* OR customer* OR forecast* OR project* OR revenue*) | |
| 76B | (*@cvrconnect.com OR *@avrs.com OR CVR OR AVRS OR Ledson OR "Computer* vehicle registration" OR EVR OR ((vehicle OR title OR electronic) w/10 (titling OR regist*))) AND (California OR Illinois OR CA OR IL OR Calif. OR Ill.) AND (expan* OR new OR threat* OR compet* OR presence OR grow* OR pressur* OR (number* w/10 dealer*) OR market* OR *share OR analy* OR assess* OR consult* OR examin* OR customer* OR forecast* OR project* OR revenue*) | Overbroad. Captures all of CVR business. |
| 77 | (*@cvrconnect.com OR *@avrs.com OR CVR OR AVRS OR Ledson OR "Computer* vehicle registration" OR EVR OR ((vehicle OR title OR electronic) w/10 (titling OR regist*)) OR "CDK Vehicle Registration" OR "Reynolds Vehicle Registration") | Overbroad. Captures all of CVR business. |
| 78 | ((forecast* OR project* OR revenue* OR profit* OR cost* OR income OR sale* OR turnover OR "bottom line" OR "top line" OR EBITA OR "P and L" OR "P&L" OR liabilit* OR debt OR credit OR budget OR overhead OR "cost of sales" OR margin* OR balance OR "cash flow*") w/20 (3PA or "third party access")) AND DMS | Overbroad. Original term returning over 1,059,000 documents to review. |
| 79 | (*@cvrconnect.com OR *@avrs.com OR CVR OR AVRS OR Ledson OR "Computer* vehicle registration" OR EVR OR ((vehicle OR title* OR electronic) w/10 (titling OR regist*)) OR "CDK Vehicle Registration" OR "Reynolds Vehicle Registration") | Duplicate of 77. |
| 80 | (backlog* OR delay* OR (too w/5 time) OR (too w/5 long) OR slow OR pace OR days OR months OR faster OR compet* OR fail* OR deficien* OR service OR los* OR falling OR beat* OU outcompet* OR *efficien* OR error* OR *accura* OR unacceptable OR *sustain*) | Overbroad. Returning 1,278,000 documents to review. Impossible to narrow as written. |
| 81 | (*@cdk.com OR *@adp.com) AND (*@cvrconnect.com OR *@avrs.com OR AVRS OR CVR OR "CDK Vehicle Registration" OR "Reynolds Vehicle Registration" OR Ledson OR EVR OR ((vehicle OR title* OR electronic) w/10 (titling* OR regist*))) | Overbroad as to CDK; CDK would consider running this term or a variation |

MDL Plaintiffs' Additional Search Terms for CDK ESI  (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | | thereof on CVR ESI once RFPs are served and appropriate custodians are identified. |
| 82 | (CDK OR ADP) AND (CVR OR AVRS OR Ledson OR "Computer* vehicle registration" OR EVR OR ((vehicle OR title* OR electronic) w/10 (titling OR regist*)) OR "CDK Vehicle Registration" OR "Reynolds Vehicle Registration") | Overbroad as to CDK; CDK would consider running this term or a variation thereof on CVR ESI once RFPs are served and appropriate custodians are identified. |
| 83 | (manag* OR budget* OR capital* OR invest* OR hiring OR hire OR hired OR firing OR fired OR fire OR personnel OR salary OR bonus OR strateg* OR priorit* OR sales OR market* OR operat* OR headcount OR staff* OR employ*) | Overbroad. Returning 1,524,000 documents to review. Impossible to narrow as written. |
| 84 | ((JQuinlan@cvrconnect.com OR *Quinlan@adp.com OR *Quinlan@cdk.com OR Quinlan) AND (*Karp@cdk.com OR *Karp@adp.com OR Karp)) AND (CVR OR "Computer* vehicle registration" OR AVRS OR Ledson OR EVR OR ((vehicle OR title* OR electronic) w/10 (titling OR regist*)) OR "CDK Vehicle Registration" OR "Reynolds Vehicle Registration") | |
| 85 | "Soft Landing" | |
| 86 | Open* w/5 categ* | |
| 87 | CFAA OR "computer fraud and abuse" | |
| 88 | (Cox* OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* OR *Loop* OR XRM OR AutoBook OR SmartLane) w/15 (poll* OR pull* OR access* OR quer* OR request*) AND minute* | |
| 89 | (sensitive OR secret OR confidential OR nonpublic OR non-public) w/10 (Cox* OR Autotrader* OR "Dealer Dot Com" OR Dealer.com OR Dealertrack* OR HomeNet* OR "Kelley Blue Book" OR KBB OR Bluebook OR vAuto* OR VinSolution* OR Xtime* OR *Loop* OR XRM OR AutoBook OR SmartLane) AND (information OR data OR spec*) AND 3PA | |
| 90 | ReverseRisk AND (access* OR scrap* OR poll* OR pull* OR | |

**MDL Plaintiffs' Additional Search Terms for CDK ESI** (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | integrat* OR extract*) | |
| 91 | "DMS Dashboard" w/15 secur* | |
| 92 | Secur* w/5 init* | |
| 93 | (Antitrust OR competition law) AND (train* OR seminar OR class) | |
| 94 | Fortellis OR "Automotive Exchange" | |
| 95 | (*Carlyle* OR *silverlake* OR "Silver Lake" OR "Vista Equity" OR *vistaequitypartners* OR *Bain* OR "Thoma Bravo" OR *ThomaBravo* OR "Advent International" OR *adventinternational* OR Advent OR "investment bank" OR "venture capital" OR "private equity" OR PE) AND (valu* OR pric*) | Not relevant. |
| 96 | Data w/~~15~~5 valu* | Overbroad. Original term returning over 27,000 documents to review. |
| 97 | (Access AND restrict) w/15 valu* | |
| 98 | ("Data access" OR "integration" OR scraping OR polling w/5 market) AND (anal* OR compet* OR rival) | |
| 99 | (integrat* OR 3PA OR DMI OR IntegraLink) w/15 ((sale* w/5 report) OR market* plan OR strategic plan OR market* report OR (cost w/5 report) OR general ledger report OR (compet* w/5 anal*) OR P&L OR "profit and loss") | |
| 100 | (integrat* OR 3PA OR DMI OR IntegraLink) AND (project* OR estimat* or forecast or budget or target or anticipate* or expect*) | Overbroad. Term returning over 205,000 documents to review. |
| 101 | (integrat* OR 3PA OR DMI OR IntegraLink) AND (valuation OR business value) | Not relevant. |
| 102 | DMS w/15 (valuation OR business value) | Not relevant. |
| 103 | ("Reynolds Certified" OR RCI OR RCA OR "Certified Interface" OR "Certified Access" OR poll* OR extract* OR integrat* OR 3PA OR DMI OR IntegraLink) AND (automotive news OR banks report OR autotrader OR (industry w/3 news)) | |
| 104 | (DMS or Dealer Management System) AND (automotive news OR banks report OR autotrader OR (industry w/3 news)) | |
| 105 | ((customer* w/5 gain*) OR (customer* w/5 los*)) AND (3PA or "third party access" or DMS or "dealer management system") | Overbroad. |
| 106 | Thornhill | |
| 107 | Ben w/3 Braun | Overbroad. |
| 108 | Wenclewicz | |
| 109 | Martin w/ 3 (Jon* OR John) | |
| 110 | Farley w/ 3 will* | |

| | MDL Plaintiffs' Additional Search Terms for CDK ESI (Revised by CDK 07.19.2018) | |
|---|---|---|
| 111 | Grabill | |
| 112 | Hellyer | |
| 113 | Schwartz w/ 3 (Tom OR Thomas) | |
| 114 | (Antitrust OR "competition law" OR trouble OR illegal OR "Price-fixing" OR "Price fixing" OR ~~implications OR appropriate OR~~ inappropriate OR monopol* OR tied OR Tying OR FTC ~~OR Federal~~) AND (R&R OR Reynolds OR Shaefer OR ~~*@reyrey.com~~*@reyrey.com OR Brockman OR Lamb OR "Bob b" OR ~~Bob OR~~ BB) | Overbroad. Original term returning over 41,000 documents to review. |
| 115 | ~~(Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR critique* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yell*) AND (dealer* OR dlr* OR "auto* group*" OR "automotive group*" OR "auto sales" OR "motor sales") AND ((pric* OR Fee OR Cost* OR charge* OR Pay* OR Paid OR Bill* or Invoic*) w/10 (increas* OR chang* OR high* OR expensive OR exorbitant* OR more)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement" OR (lose w/5 busin*)) OR (certified OR 3PA OR RCI OR "wind down" OR DEA))~~ | Exceeds 450 characters. See 115A-E below. |
| 115A | (Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR critique* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yell*) AND ((dealer* OR dlr* OR "auto* group*" OR "automotive group*" OR "auto sales" OR "motor sales") w/20 ((pric* OR Fee OR Cost* OR charge*) w/10 (increas* OR chang* OR high* OR expensive OR exorbitant* OR more))) | |
| 115B | (Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR critique* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yell*) AND ((dealer* OR dlr* OR "auto* group*" OR "automotive group*" OR "auto sales" OR "motor sales") w/20 ((Pay* OR Paid OR Bill* or Invoic*) w/10 (increas* OR chang* OR high* OR expensive OR exorbitant* OR more))) | |
| 115C | (Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR critique* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yell*) AND ((dealer* OR dlr* OR "auto* group*" OR "automotive group*" OR "auto sales" OR "motor sales") w/20 (certified OR 3PA OR RCI OR "wind down" OR DEA)) | |
| 115D | (Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* | |

MDL Plaintiffs' Additional Search Terms for CDK ESI  (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | OR oppos* OR critic* OR critique* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yell*) AND (dealer* OR dlr* OR "auto* group*" OR "automotive group*" OR "auto sales" OR "motor sales") AND ("Master services agreement" OR (lose w/5 busin*)) | |
| 115E | (Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR critique* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yell*) AND ((dealer* OR dlr* OR "auto* group*" OR "automotive group*" OR "auto sales" OR "motor sales") ~~AND ((pric* OR Fee OR Cost* OR charge* OR Pay* OR Paid OR Bill* or Invoice*) w/10 (increas* OR chang* OR high* OR expensive OR exorbitant* OR more)) OR~~ w/20 (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract ~~OR "Master services agreement" OR (lose w/5 busin*)) OR (certified OR 3PA OR RCI OR "wind down" OR DEA)~~)) | |
| 116 | (~~(~~DMS OR "dealer management System*" OR ~~master~~ "master services agreement") w/10 (negot* OR renew* OR refresh* OR sign*)) AND (dealer* OR Dealership* OR dlr* OR "auto group" OR "automotive group" OR "auto sales" OR "motor sales" OR customer) ~~AND (negot* OR renew* OR refresh* OR sign*)~~ | Overbroad. Original term returning over 115,142 documents to review. |
| 117 | (SelectQu OR ~~"~~ "Superior Integrated Solutions" ~~"~~ OR SIS OR StoneEagle OR ProQuotes OR AutoLoop OR "Phil B" OR "Phillip B" OR Battista) ~~AND~~ w/20 (compet* OR stand* OR pause* OR agree* OR target* OR "hands off") | Overbroad. Original term returning over 17,000 documents to review. |
| 118 | (Surcharge OR (charg* w/5 (addition* OR added OR extra OR higher OR greater OR "on top of"))) w/ 20 (Extract* OR Integrat* OR hostile OR independent OR 3PA OR RCI OR Certif* OR Authorize* OR SecurityFirst OR SF OR "Security 1st" ~~"~~ OR Security1st) | |
| 119 | (dealer* OR Dealership* OR dlr* OR "auto group" OR "automotive group" ~~OR "auto sales" OR "motor sales" OR customer~~) AND (~~System OR (~~DMS OR "Dealer Management System") w/ ~~105~~ 5 (switch OR chang* OR ~~risk OR capt* OR~~ trap* OR "down time" OR downtime OR transition* OR Leave OR Left OR stuck) ~~)~~ ) | Overbroad. Original term returning over 40,000 documents to review. |
| 120 | ((dealer* OR Dealership* OR dlr* OR "auto group" OR "automotive group" OR "auto sales" OR "motor sales") w/10 (forc* OR compel* OR push OR Compli* OR Comply OR demand OR "no choice" OR stuck)) w/20 (Extract* OR Integrat* OR hostile OR independent OR 3PA OR RCI OR Certif* OR Authorize* OR SecurityFirst OR SF OR "Security 1st" ~~"~~ OR | |

MDL Plaintiffs' Additional Search Terms for CDK ESI **(Revised by CDK 07.19.2018)**

| | | |
|---|---|---|
| | Security1st) | |
| 121 | **(**(protect* OR keep OR stabl* OR Duopoly OR threat* OR prevent*) w/10 ((~~market w/ 5 (share OR power))**)** AND (CDK OR ADP OR 3PA OR DMI OR Integralink OR "partner program" OR Dealertrack) | |
| 122 | market w/10 (control* OR share OR power OR percent* OR divis* OR divid*) w/10 (Extract* OR Integrat* OR DIS OR DMS) | |
| 123 | (Slack OR Telegram OR Signal OR Whatsapp OR iMessage OR Allo OR Facebook OR FB OR messenger OR "talk live" OR Lync OR Phone OR call) w/20 (**"**~~"~~Do not**"**~~"~~ OR Don't OR should OR shouldn't OR "in writing" OR "via email" OR E2E ~~OR comfortable~~) AND (~~trouble OR~~ illegal OR Price-fixing OR antitrust OR ~~implications OR appropriate OR~~ inappropriate OR monopol* OR tied OR Tying OR FTC ~~OR Federal~~) AND (CDK OR ADP) | Overbroad. Original term returning over 32,000 documents to review. |
| 124 | ~~(dealer* OR dlr* OR "auto group" OR "automotive group" OR "auto sales" OR "Motor sales") AND (MSA OR "Master agreement" OR contract OR "master Services agreement" OR 3PA OR RCI OR DMI OR Authenticom OR Dominion OR SIS OR Superior OR Integralink OR refresh OR recontract) AND (forc* OR compel* OR push OR Compli* OR Comply OR demand)~~ | Not relevant. |
| 125 | (*trust* OR skeptic* OR doubt* OR "buying it" OR *believ*) w/ 10 (reason* OR rationa* OR justif*) AND (Securityfirst OR "information security" OR vulnerable OR (data w/ 3 secur*) OR "Security 1st**"**" OR Security1st) | |
| 126 | **(**(Pric* w/10 (secre* OR confident*) ~~OR ((line OR item* invoice* OR bill~~*) AND (~~security*~~**"third party access"** OR 3pa OR RCI)) | Overbroad. Original term returning over 98,000 documents to review. |
| 127 | ~~(vendor OR (app w/ 3 provider)) w/10 (attribut* OR ascrib* OR blam* OR refer* OR (tell* OR told) w/ 5 dealer*") AND ((pric* OR Fee OR Cost) w/ 10 (increas* OR chang* OR high*)) AND (3PA OR RCI OR Certif* OR Authorized OR SecurityFirst OR SF OR "Security 1st" OR Security1st OR "security first))~~ | Error in term. No clear way to fix it. |
| 128 | **(**(Migrat* OR capture OR transition) w/ 10 (dealer* OR dlr* OR "auto group" OR "automotive group" OR "auto sales" OR "motor sales"**) AND (DMS or "dealer management system")** | |
| 129 | (Manoj OR Mohandas OR Siva OR Balakrishnan ~~OR "lock down" OR rapid~~) w/ 20 (disrupt* OR Impact OR Block OR target* OR "lock down" OR rapid OR team OR Level OR security*) | Overbroad. Original term returning over 32,000 documents to |

**MDL Plaintiffs' Additional Search Terms for CDK ESI  (Revised by CDK 07.19.2018)**

| | | |
|---|---|---|
| | | review. |
| 130 | (scarecrow OR lion OR "tin man" OR Tinman OR (capture w/3 dollars)) AND (3PA OR RCI OR refresh* OR Gardner) | |
| 131 | ~~(KIA OR Hyundai OR Honda OR Toyota OR Chevy OR Chevrolet OR Buick OR Cadillac OR GMC OR Dodge OR Chrysler OR Jeep OR Acura OR Lexus OR BMW OR Mercedes OR Volkswagen OR VW OR Audi OR Ford OR Lincoln OR Volvo OR Mazda OR Suzuki OR Fiat OR Scion OR Mitsubishi) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))~~ | Term exceeds 450 characters. See term 131a-h below. |
| 131a | (KIA OR Hyundai OR Honda OR Toyota) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131b | (Chevy OR Chevrolet OR Buick OR Cadillac) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131c | (Chrysler OR Jeep OR Acura) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131d | (Lexus OR BMW OR Mercedes) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR | |

MDL Plaintiffs' Additional Search Terms for CDK ESI **(Revised by CDK 07.19.2018)**

| | | |
|---|---|---|
| | free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131e | (Volkswagen OR VW) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131f | (Audi OR Ford OR Lincoln OR Volvo) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131g | (Mazda OR Suzuki OR Fiat) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131h | (Scion OR Mitsubishi) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/20 (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA))) | |
| 131i | (GMC OR Dodge) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR angry OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/ 20 (((pric* OR fee* OR rate OR cost* OR charg*) w/ 10 (increas* OR chang* OR high*)) OR (Restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement") OR (certified OR 3PA OR RCI OR "wind down" OR DEA)))) | |
| 132 | (KIA OR Hyundai OR Honda OR Toyota OR Chevy OR Chevrolet OR Buick OR Cadillac OR GMC OR Dodge OR Chrysler OR Jeep OR Acura OR Lexus OR BMW OR Mercedes | |

MDL Plaintiffs' Additional Search Terms for CDK ESI  (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | OR Volkswagen OR VW OR Audi OR Ford OR Lincoln OR Volvo OR Mazda OR Suzuki OR Fiat OR Scion OR Mitsubishi) AND ((Complain* OR grumble OR rumbl* OR whin* OR anger* OR Pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate) w/ 10 (Authenticom OR SIS OR RCI OR 3PA)) | |
| 133 | ("Dealers Association" OR *ADA OR VADA OR (Hall w/3 Don)) AND (Complain* OR grumble OR rumbl* OR whin* OR anger* OR pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yelling OR yelled) AND (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) AND (disrupt OR restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement" OR certified OR 3PA OR RCI OR "wind down" OR DEA OR unapproved OR )) | Duplicate of 134 |
| 134 | ("Dealers Association" OR *ADA OR VADA OR (Hall w/3 Don)) AND (Complain* OR grumble OR rumbl* OR whin* OR anger* OR pissed OR griev* OR dissatis* OR disagree* OR grip* OR oppos* OR critic* OR accus* OR irate OR skepti* OR "push back" OR "push-back" OR stink OR yelling OR yelled) AND (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) AND (disrupt OR restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement" OR certified OR 3PA OR RCI OR "wind down" OR DEA OR unapproved OR )) | Exceeds 450 characters. See 134A-C below. |
| 134a | ("Dealers Association" OR *ADA OR VADA OR (Hall w/3 Don)) AND (Complain* OR grumble OR rumbl* OR whin* OR anger* OR pissed) AND (((pric* OR fee* OR rate OR cost* OR charg*) w/10 (increas* OR chang* OR high*)) AND (disrupt OR restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement" OR certified OR 3PA OR RCI OR "wind down" OR DEA OR unapproved)) | |
| 133134b | ("Dealers Association" OR *ADA OR VADA OR (Hall w/ 3 Don)) AND (griev* OR dissatis* OR disagree* OR grip* OR critic* OR accus*) AND (((pric* OR fee* OR rate OR cost* OR charg*) w/ 10 (increas* OR chang* OR high*)) AND (disrupt OR restrict* OR free* OR MSA OR "Master agreement" OR refresh OR Recontract OR "Master services agreement" OR certified OR 3PA OR RCI OR "wind down" OR DEA OR unapproved)) | |
| 134c | ("Dealers Association" OR *ADA OR VADA OR (Hall w/ 3 Don)) AND (irate OR skepti* OR "push back" OR "push-back" OR stink OR yelling OR yelled) AND (((pric* OR fee* OR rate OR cost* OR charg*) w/ 10 (increas* OR chang* OR high*)) AND (disrupt OR restrict* OR free* OR MSA OR "Master | |

**MDL Plaintiffs' Additional Search Terms for CDK ESI** (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | agreement" OR refresh OR Recontract OR "Master services agreement" OR certified OR 3PA OR RCI OR "wind down" OR DEA OR unapproved)) | |
| 135 | ((3PA OR RCI OR access OR poll* OR extract* OR integrat* OR data OR Vendor OR Cox OR Autosoft) AND ((pric* OR fee OR rate OR cost OR charg*)) w/ 2010 (("pass* w/3 through) OR (pass* w/3 customer)" OR "passed thru" OR passthrough or shared OR sent OR "passed to" OR "passed on" OR absorb*) )) | Overbroad. Original term returning over 54,000 documents to review. |
| 136 | (DMS OR "Dealer management" OR "core business") w/ 10 ((pric* OR fee OR rate OR cost* OR charg*) AND (increase* OR chang* OR high* OR hike OR loss OR profit OR rais* OR increment OR CPI OR percent)) | |
| 137 | "ACA Motors" OR "Continental Acura" OR "Continental NV Autos" OR "Continental Audi" OR "Continental Classic Motors" OR "Continental Autosports" OR "HDA Motors" OR "Continental Honda" OR "Naperville Zoom Cars" OR "Continental Mazda" OR "5800 Countryside" OR "Continental Mitsubishi" OR "Continental Motors" OR "Continental Nissan" OR "Continental Autos" OR "Continental Toyota" OR "Continental Group" | |
| 138 | "Kenny Thomas Enterprises" OR "Olathe Toyota" | |
| 139 | "Baystate Ford" | |
| 140 | Waconia w/5 (Dodge OR Jeep OR Chrysler OR Ram) | |
| 141 | Pitre w/5 (Buick OR GMC OR Kia) | |
| 142 | "JCF Autos" OR "440 Jericho Turnpike Sales" OR ""Patchogue 112 Motors" | |
| 143 | Hoover w/5 ("Dodge Chysler Jeep" OR Automotive OR Summerville) | |
| 144 | "Cliff Harris" OR (Warrensburg w/3 Ford) OR (Marshall w/3 (Chrysler OR Jeep OR Dodge)) OR ""Warrensburg Chrysler Dodge Jeep" | |
| 145 | Barkholz | |
| 146 | ("Autow/Mate" OR Automate OR "Auto Mate" OR Chimney OR Esposito OR Colson) AND (migrat* OR limit* OR Dealer OR cull OR lose OR compet* OR (share w/3 (opportunity OR market OR sales) OR FTC OR switch OR "flight risk" OR viability OR viable OR pric* OR (current w/3 customer*) OR (large* w/3 dealer*) OR "contracted users" OR Drive OR Dash OR lock OR (kick* w/3 butt*) OR "service levels" OR terminat* OR cease OR (par* w/2 down)) | Not relevant. |
| 147 | ((dealer* OR dlr* OR "auto group" OR "automotive group" OR "auto sales" OR "Motor sales") AND (allow* OR provid* OR access)) w/25 (login or "log in" or credential* or password* or pwd or psk or username or user) | Overbroad. |
| 148 | (Refresh w/5 (3pa OR Contract OR master)) AND ( analy* OR | |

MDL Plaintiffs' Additional Search Terms for CDK ESI (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | "top line" OR "bottom line" OR performance OR Summary OR Financ* OR margin) | |
| 149 | (Refresh OR Certif* OR authoriz*) w/~~105~~ (Rule* OR guideline* OR polic* OR FAQ OR Timeline OR Steps OR upgrad* OR "state of the art" or "advancement" or enhance* OR boost OR improv*) | Overbroad. |
| 150 | (dealer* OR dlr* OR "auto group" "automotive group" OR "auto sales" OR "Motor sales" OR customer OR vendor*) and ((manual* OR "in house") w/~~10~~ (5 (extract* or scrap* or poll* or pull* or gather or produc* or report*)) | Overbroad. |
| 151 | ~~((dealer* OR dlr* OR "auto group" OR "automotive group" OR "auto sales" OR "Motor sales" OR customer OR vendor*) and (DMS OR system)) w/10 ((lost or loss or lose or win* or gain* or churn* or defect* or (turn* w/3 over) or turnover or switch or chang* or mov*) AND (time OR expens* OR cost OR afford OR litig* OR court OR threat* OR))~~ | Term creates error because of use of proximity terms. No clear way to fix problem. |
| 152 | (Fire OR ("not ~~w/2~~ renew*")" OR "month to month" OR m2m) w/5 (dealer* OR dlr* OR customer OR vendor*) | |
| 153 | ((Hostile OR (independent w/3 integrat*)) OR (Automat* w/5 (renew or refresh or extension))) w/10 (contract OR lease OR agreement OR master) | |
| 154 | (DMS ~~OR Core~~) AND ((pric* OR fee* OR rate OR ~~cost* OR~~ charg*) w/~~105~~ (increas* OR chang* OR ~~high* OR~~ freez* OR spik*)) | Overbroad. Original term returning over 53,000 documents to review. |
| 155 | (DMS OR Core) AND ((Overhead OR COGs OR "Cost of services" OR COS OR cost) w/5 (breakout OR breakdown)) | |
| 156 | (pric* OR fee* OR rate OR cost* OR charg*) w/~~155~~ (Rey* or "R&R" or RR or Cox or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/5 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Autow/Mate" or Automate or "auto mate" or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop) | Overbroad. Original term returning over 29,000 documents to review. |
| 157 | (dealer* OR dlr* OR "auto group" OR "automotive group" OR "auto sales" OR "Motor sales" OR customer) w/30 (Breach OR breech OR (enforc* w/10 (term* OR contract* OR agreement))) | |
| 158 | ((Manual*w/5 (extract* OR integrat* OR Scrap*)) w/10 (process OR step* OR guide OR compar OR better OR worse)) AND (integralink OR DMI OR "Digital Motorworks" OR 3PA) | |
| 159 | Security w/3 (Event OR incident) | |
| 160 | (Data ~~and (diagram OR schema* OR~~ w/20 (separation OR segregate* OR commingl* OR mix OR "server farm" OR Datacenter OR "Data center" OR "security measures")) AND | Overbroad. Original term returning over |

**MDL Plaintiffs' Additional Search Terms for CDK ESI** (Revised by CDK 07.19.2018)

| | | |
|---|---|---|
| | (DMS or "dealer management system") | 44,000 documents to review. |
| 161 | ("Dealer* ~~w/3~~ Assoc*~~)~~" OR NADA) w/25 (~~(Data w/5~~ Secur*~~)~~ OR cybersecurity OR "10 Steps Dealers Need to Take to protect") | Original term creates error due to use to multiple proximity terms. |
| 162 | ((CDK OR DMI OR "Digital Motorworks" OR "Digital Motor works" OR IntegraLink OR 3PA) AND (Draft OR material* OR present* OR Powerpoint OR flyer OR Handout OR video)) w/10 ("Dealers Association" OR *ADA OR "Digital Dealer" OR Conference OR Convention) | |
| 163 | ((P&L OR Budget OR Margin OR Revenue OR Marketing) w/5 (projection OR Analy* OR plan OR "financial statement" ~~OR~~ )) AND (DMS or "dealer management system" or 3PA or "third party access" or integrat*) | Overbroad. Original term returning over 40,000 hits. |
| 164 | ~~(Document OR Record*) w/3 (retention OR polic* OR Preservation OR disposal)~~ | CDK's General Retention Schedule has been produced. |

# EXHIBIT 15

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 25, 2018

**Matthew D. Provance**
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

<u>By E-Mail</u>

Robert A. Wallner
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        <u>MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)</u>

Dear Rob:

I write on behalf of CDK Global, LLC ("CDK") in response to your July 19, 2018 letter regarding the Dealership Class Plaintiffs' document custodians.

While we appreciate your offer to provide "one ESI custodian for each Dealership Class Plaintiff named in the Consolidated Complaint," that is not sufficient. First, as reiterated in our July 13 correspondence, certain Dealership Class Plaintiffs have identified multiple, affirmative Rule 26(a)(1) witnesses—these are potential trial witnesses, and without question CDK needs to take discovery of their communications on relevant issues in the litigation. Second, based on the Dealership Class Plaintiffs' interrogatory responses and our own investigation, additional document custodians beyond the Rule 26(a)(1) witness(es) at certain Dealerships are necessary to capture the people who serve as the primary point of contact for third-party data integrators and actual and potential DMS providers. It is hard to imagine more straightforward and appropriate criteria for document custodians. Your assertions that CDK's position is "unreasonable" and "overreaching" are completely baseless.[1]

---

[1]     Your July 19 letter also complains about the number of requests for production ("RFPs") that CDK served on the Dealership Class Plaintiffs and the number of search terms that CDK proposed for the Dealership Class Plaintiffs. Those are also meritless accusations. Indeed, the Dealership Class Plaintiffs served more RFPs than CDK (including by their purported incorporation of RFPs served by the non-Dealer Plaintiffs) and proposed more ESI search terms than CDK, without even counting the 100+ RFPs that CDK has already received and the 100+ agreed-upon ESI search terms that CDK is already running in connection with pre-MDL discovery in *Authenticom*. The Dealership Class Plaintiffs are sophisticated business entities just like the other parties in this MDL and they have the same duty to participate in discovery. Moreover, the Dealership Class Plaintiffs have not substantively responded to CDK's proposed search terms, which were served on May 25—60 days ago. If the Dealership Class Plaintiffs object to any of CDK's proposed search terms, they need to identify those objections immediately so that the parties can meet-and-confer as necessary in advance of the current August 6 motions deadline.

Mayer Brown LLP

Robert A. Wallner
July 25, 2018
Page 2

Nevertheless, in a further effort to resolve this issue without Court involvement, below we propose 27 identified document custodians using the above criteria (18 of which are Dealership Rule 26(a)(1) witnesses), as well as at least 3 that require information that is missing from the Dealership Class Plaintiffs' interrogatory responses before they can be identified. Specifically, the deficiencies in the Dealership Class Plaintiffs' interrogatory responses—as they relate to the identification of appropriate document custodians—are as follows:

- Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat – These plaintiffs' responses to CDK Interrogatories No. 4, 5, and 13 merely list the names of nine employees but supply no information about their responsibilities as to each Plaintiff or with regard to third-party data integrations, DMS providers, or vendors, instead stating for each "Unknown at this time." This missing information is necessary to assess which of these individuals should be custodians.

- John O'Neil Johnson Toyota, LLC – As we have raised numerous times, this Plaintiff has not responded to CDK's interrogatories at all. You have never acknowledged this or told us when we can expect John O'Neil Johnson Toyota's responses. If John O'Neil Johnson intends to answer CDK's interrogatories without a Court order, please provide those responses no later than Friday, July 27 so we can evaluate its responses to CDK Interrogatories No. 4, 5, and 13 as they pertain to appropriate document custodians.

- Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota – This Plaintiff's responses to CDK Interrogatories No. 4, 5, and 13 merely list the names of three employees but supply no information about their responsibilities with regard to third-party data integrations, DMS providers, or vendors, instead stating for each "TBD." This missing information is necessary to assess which of these individuals should be custodians.

The details of CDK's counter-proposal is set forth below. We reserve the right to name additional custodians as appropriate upon receiving full and complete answers to CDK's interrogatories from those Dealership Class Plaintiffs who have yet to provide them.

1. ACA Motors, Inc. d/b/a Continental Acura; Continental Autos, Inc. d/b/a Continental Toyota; Continental Classic Motors, Inc. d/b/a Continental Autosports; 5800 Countryside, LLC d/b/a Continental Mitsubishi; HDA Motors, Inc. d/b/a Continental Honda; H & H Continental Motors, Inc. d/b/a Continental Nissan; Naperville Zoom Cars, Inc. d/b/a Continental Mazda; NV Autos, Inc. d/b/a Continental Audi
   a. Dale Batson, CEO (Various Plaintiffs) (Rule 26(a)(1) witness)
   b. Mark Johnson, IT Director (Various Plaintiffs)
   c. Cheryl Nelson (Continental Toyota, Continental Mitsubishi)
   d. Joel Weinberger (Continental Audi, Continental Acura, Continental Mazda, Continental Autosports)
   e. Jay Weinberger (Continental Honda, Continental Nissan)

Mayer Brown LLP

Robert A. Wallner
July 25, 2018
Page 3

2. Baystate Ford Inc.
    a. Frank Lupaccino, President (Rule 26(a)(1) witness)
    b. Ronnie Eames, Controller (Rule 26(a)(1) witness)
    c. Heather Pauliks, Division Parts Manager (Rule 26(a)(1) witness)

3. Cherry Hill Jaguar

    a. Tom Hessert, II, President (Rule 26(a)(1) witness)
    b. Michele Condo, Comptroller

4. Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat
    a. Cliff Harris, Owner (Rule 26(a)(1) witness)
    b. Additional custodian(s), based on missing information to be supplied by the Dealership Class Plaintiffs, sufficient to identify the people at each of the above-identified Plaintiffs who serve as the primary point of contact for third-party data integrators and/or actual and potential DMS providers for each named Plaintiff

5. Gregoris Motors, Inc.
    a. Robert DeGregoris, Service Manager (Rule 26(a)(1) witness)

6. Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville
    a. Keith Roberts (Rule 26(a)(1) witness)

7. JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Patchogue 112 Motors LLC d/b/a Stevens Ford
    a. David Benstock, General Manager (Rule 26(a)(1) witness)
    b. Steve Gomes

8. Jim Marsh American Corporation d/b/a Jim Marsh Kia and Jim Marsh Chrysler/Jeep
    a. Jim Marsh, President (Rule 26(a)(1) witness)
    b. Allen Yarborough, Sales Manager (Rule 26(a)(1) witness)
    c. Mark Grim, Sales Manager (Rule 26(a)(1) witness)
    d. Andy Kerby

9. John O'Neil Johnson Toyota, LLC
    a. Kevin Winningham, General Manager (Rule 26(a)(1) witness)
    b. Additional custodian(s), based on missing information to be supplied by the Dealership Class Plaintiffs, sufficient to identify the people who serve as the primary point of contact for third-party data integrators and/or actual and potential DMS providers

Mayer Brown LLP

Robert A. Wallner
July 25, 2018
Page 4

    10. Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota
        a. Kelly Thomas, General Manager (Rule 26(a)(1) witness)
        b. Additional custodian(s), based on missing information to be supplied by the Dealership Class Plaintiffs, sufficient to identify the people who serve as the primary point of contact for third-party data integrators and/or actual and potential DMS providers for each named Plaintiff

    11. Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC
        a. Tom Stever, CFO (Rule 26(a)(1) witness)

    12. Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram
        a. Alan Graf Jr., Comptroller and Office Manager (Rule 26(a)(1) witness)
        b. Alan Graf Sr.

    13. Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram
        a. Andy Strong (Rule 26(a)(1) witness)
        b. Eric Strong (Rule 26(a)(1) witness)
        c. Amy Strong

Given the looming August 6, 2018, deadline to file discovery motions, please respond to our proposal and supplement the Dealership Class Plaintiffs' responses to CDK's Interrogatories No. 4, 5, and 13 to cure the deficiencies noted above no later than Friday, July 27.

Sincerely,

*/s/ Matthew D. Provance*
Matthew D. Provance

cc:    Lead MDL Plaintiff Counsel of Record
       Reynolds Counsel of Record
       Mark Ryan
       Britt Miller
       Andrew Marovitz

# EXHIBIT 16

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

July 26, 2018

*Via Electronic Mail*

Andrew Marovitz
Matthew Provance
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois  60606

      Re:    Cox and AutoLoop Discovery Responses

Dear Andy and Matt,

      I write on behalf of Cox Automotive and AutoLoop with respect to our meet-and-confers on July 20, 2018, and July 23, 2018, concerning CDK's proposed search terms and requests for production.  At Andy's suggestion, this letter concerns only CDK's document requests.  We will address CDK's interrogatories in a separate letter.

      On these calls, we explained that CDK's Requests for Production ("RFPs" or "requests") are overbroad, burdensome, and seek irrelevant documents.  We stand on our objections to CDK's requests.  Nonetheless, in practice, we will produce all non-privileged documents that are responsive to CDK's document requests and that are reviewed as a result of our agreement to run search terms through custodial repositories, subject to several exceptions identified below.  We will do so even though many of CDK's requests seek irrelevant documents that we have no obligation to produce.  And we make this offer despite the fact that CDK and Reynolds are the primary source of relevant documents regarding the anticompetitive conduct at issue in this litigation.  Cox Automotive and AutoLoop have far fewer relevant documents, principally concerning the injuries they have suffered as a result of CDK's and Reynolds' anticompetitive conduct.

      Below we set forth the relevance limitations that we will impose in our review and the status of our search terms negotiations.

      **Relevance Limitations.**  CDK's requests seek an extraordinary amount of competitively sensitive information from Cox Automotive and AutoLoop that has no possible relevance to this litigation.  We will impose reasonable limitations on such requests.

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 2

*First*, CDK's requests seek substantially all documents related to Cox Automotive's and AutoLoop's "automotive software products or services" (Paragraph 2 of "Definitions" to Cox Automotive and Paragraph 3 of "Definitions" to AutoLoop) regardless of whether those applications are even at issue in the litigation and regardless of whether the documents discuss relevant issues. We will produce documents only to the extent they pertain to the applications at issue in this litigation (*e.g.*, Xtime). We will not produce documents that pertain to other applications (*e.g.*, Manheim).

Moreover, we will not produce all documents concerning the applications at issue. For example, Request No. 24 to Cox Automotive seeks "[a]ll . . . strategic plans . . . or strategies[] concerning Your Applications," which would result in the production of substantial amounts of competitively sensitive information that has no relevance to this litigation. We will limit our productions to documents that relate to (1) damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct, (2) data integration of Cox Automotive's applications and AutoLoop's applications with any DMS, and (3) any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS. We will not produce documents solely relating to other topics, such as planned product features.

*Second*, with respect to Cox, CDK's requests seek broad swaths of information regarding Dealertrack DMS without any relation to this litigation. For example, Request No. 8 seeks "[a]ll written business plans or presentations related to DealerTrack." We will limit requests regarding Dealertrack to documents related to three broad issues that will capture any documents with possible relevance to this litigation: (1) competition in the DMS market, (2) data integration with Dealertrack DMS, (3) the security, performance, and data integrity of Dealertrack DMS.

*Third*, we request that CDK explain the relevance of the following requests before we agree to produce documents responsive to these requests:

- **Request No. 4 (Cox Automotive)** seeks "[a]ll documents You submitted to the United States Federal Trade Commission or any other regulatory authority as part of Your Hart-Scott-Rodino Act ('HSR') filing related to Your acquisition of Dealertrack." Please explain how these documents are relevant, particularly in light of CDK's decision to seek a protective order against producing documents provided to the FTC in relation to the Auto/Mate merger.

- **Request No. 5 (Cox Automotive)** seeks "[a]ll documents related to the divestiture of assets and other conduct required of You pursuant to the Final Judgment (Dkt. No. 11) entered on January 21, 2016, in *United States v. Cox Enter., Inc., et al.*, Civ. Action No. 15-01583 (D.D.C.)." As with Request No. 4, please explain how this request is relevant,

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 3

particularly in light of CDK's refusal to provide similar documents in connection with the Auto/Mate merger.

- **Request No. 85 (Cox Automotive) and Request No. 55 (AutoLoop)** seek "[d]ocuments sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on a CDK [or Reynolds] DMS." (AutoLoop's request does not include the bracketed text.) Please explain what you mean by "syndication of data" and how that would be relevant to this litigation.

- **Request No. 86 (Cox Automotive) and Request No. 56 (AutoLoop)** seek "[d]ocuments sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on each non-CDK DMS." Please explain what you mean by "syndication of data" and how that would be relevant to this litigation.

- **Request No. 87 (Cox Automotive) and Request No. 57 (AutoLoop)** seek "[d]ocuments sufficient to show how data from each DMS was integrated into Your Applications." This request appears to seek all of the highly confidential technical details of Cox Automotive's applications. Please explain how that would be relevant to this litigation. To the extent this request is merely seeking the manner in which Cox Automotive and AutoLoop's applications integrate with non-CDK and non-Reynolds DMS, we would consider providing such data.

- **Request No. 96 (Cox Automotive) and Request No. 13 (AutoLoop)** seek "[a]ll documents related to Your offer and marketing of bundled products and Relevant Services and compensation for solution gaps." Please explain what you mean by "solution gaps" as well as the relevance of this request to the litigation.

- **Request No. 104 (Cox Automotive) and Request No. 69 (AutoLoop)** seek "[a]ll documents related to any presentations that You have prepared or given, or meetings of Your board of directors, shareholders, or investors, that refer or relate to CDK, Your claims and allegations, or this litigation." Please explain the relevance of any documents that "refer or relate to CDK" that would not already be responsive to other requests.

**Search Terms.** On May 25, 2018, CDK provided lists of 129 and 123 proposed search terms for Cox Automotive and AutoLoop, respectively. We investigated the burden of these search terms – many of which were extremely broad and difficult to parse – with respect to more than 25 custodians that CDK requested from Cox Automotive and AutoLoop. On July 12, 2018, we responded to CDK's proposal. Our responses fell into four categories: (1) search terms that we agreed to run without modification; (2) search terms that we agreed to run with modifications

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 4

to reduce the burden; (3) search terms that were overly burdensome and had no readily apparent modification to reduce the burden; and (4) search terms that were irrelevant.

*Category 1*:  We have agreement on these search terms and do not believe they need to be discussed further

*Category 2*:  CDK requested on our July 20, 2018 meet-and-confer that we provide hit counts for the modified terms.  Those hit counts are provided in Exhibits A and B.  Please let us know whether you agree with our modifications.

*Category 3*:  CDK committed on our July 20, 2018 meet-and-confer either to propose a modified search term or to state that it was requesting we run the original search term.  CDK provided those responses on July 24, 2018.  We have responded to these revised terms in Exhibits A and B.

*Category 4*:  We explained on our July 20, 2018 meet-and-confer that we were inclined not to agree to run search terms targeting two categories of documents.  *First*, we do not believe it would be appropriate to apply search terms that target documents to support CDK's procompetitive justifications of DMS security, performance, and data integrity.  We explained that evidence supporting those procompetitive justifications would be within CDK's control and that Cox Automotive's documents would be largely irrelevant.  Moreover, we explained that we would already produce documents relating to DMS security, performance, or data integrity to the extent those documents are gathered by other search terms.  We further noted that CDK had proposed broad search terms that could be expected to gather such documents.

We understand that you believe documents within Cox Automotive's possession – but not CDK's – may somehow provide justification for CDK's anticompetitive acts.  We are willing to consider any authority you have on this issue.

*Second*, we do not believe it would be appropriate to run search terms targeting documents related to CDK's theoretical counterclaims hinging on purported unauthorized access. We explained that CDK has not brought such counterclaims against Cox Automotive or AutoLoop, and therefore, those requests were irrelevant.  CDK stated that such requests would be relevant to CDK's counterclaims against *other* plaintiffs.  We stated that we would consider running search terms that are tailored specifically to those counterclaims against other plaintiffs. Please let us know whether you will propose such search terms.

Although we do not believe any search terms in Category 4 should be used – even those with limited numbers of hits – we are willing to run *some* of these disputed terms as a compromise.  Those terms are listed in Exhibits A and B.  In addition, as you requested during

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 5

our July 20, 2018 meet-and-confer, those exhibits provide hit counts for all remaining search terms in Category 4 and identify why we believe those search terms target irrelevant documents.[1]

Best regards,

*s/ Dan Dorris*

Dan Dorris

Enclosure

CC:     MDL Counsel Email List

---

[1]     In requesting additional data regarding hit counts, CDK stated that it would provide a commensurate level of detail to plaintiffs in these actions.

**CDK's Proposed Search Terms to Cox Automotive**

*Cox proposes to run search terms for all searches from January 1, 2014 to December 11, 2017 (the day Cox filed its complaint). Cox's willingness to use any of CDK's proposed search terms is dependent on reaching a final reasonable agreement on custodians, and therefore Cox reserves all rights.*

| No. | Search Terms | Cox Comments |
|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | Not relevant; Pro-competitive justification; 4,953 documents |
| 2 | (CDK OR Reynolds OR DMS OR or system) AND (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) | Not relevant; Counterclaims; 55,719 documents |
| 3 | "Data Authorization" | We are willing to run this term as a compromise. |
| 4 | (data /3 integrat*) AND (CDK or Rey* or RR or "R&R" or DMS or "dealer management system") OR (data /3 extract*) AND (CDK or Rey* or RR or "R&R" or DMS or "dealer management system") | Overly burdensome. This revised proposal still hits 14,928 documents. |
| 5 | (DMS OR "dealer management system") /5 market* | Agreed. |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" | Agreed. |
| 7 | "nonpublic personal information" OR NPI | We are willing to run this term as a compromise. |
| 8 | "personally identifiable information" OR PII | Not relevant; Pro-competitive justification; 2,648 documents |
| 9 | "Proprietary Data" | We are willing to run this term as a compromise. |
| 10 | "secure web form" | We are willing to run this term as a compromise. |
| 11 | "sensitive personal information" | We are willing to run this term as a compromise. |
| 12 | "User Emulation" | We are willing to run this term as a compromise. |

1

| No. | Search Terms | Cox Comments |
|---|---|---|
| 13 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) | Not relevant; Pro-competitive justification; 19,610 documents |
| 14 | ((compet* or threat* or challeng* or superior* or compare*) w/15 (CDK)) AND (app* or solution* or product* or service*) OR ((app* or solution* or product* or service*) w/15 (compet* or threat* or challeng* or replac* or bypass*)) AND (DMS or "dealer management system") | Overly burdensome.  This revised proposal still hits 7,037 documents. |
| 15 | (dealer w/5 data) w/20 ((retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) w/20 (manual OR push OR FTP)) | Agreed. |
| 16 | (los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang* or mov*) w/15 (dealer or customer or contract or business or sale)) AND (DMS or "dealer management system" or app* or vendor or integrator or service* or product* or solution*)) | Overly burdensome.  This revised proposal still hits 106,129 documents. |
| 17 | (((pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) AND w/5 data) AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | As originally formulated, this search term returned more than 35,000 documents for just five custodians.  As revised, this still hits 10,963 documents. |
| 18 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR  access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) | Not relevant; Pro-competitive justification; 24,225 documents |
| 19 | ((Rey* or "R&R" or RR OR CDK OR ADP) w/10 (compar* or better or worse or "no* good" or more or less or close* or open)) AND (DMS or system) | Agreed. |
| 20 | ((security OR Data) AND (standard* OR rule* OR guid* OR memo* OR report)) AND (NADA OR AIADA OR "National Automobile Dealers Association" OR "American International Automobile Dealers Association") | Not relevant; Pro-competitive justification; 21,064 documents |
| 21 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack or Cox) w/5 system) OR DMS OR "Dealer Management System") | Not relevant; Counterclaims; Still investigating |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 22 | ((up w/3 front) or "up front" or install* or initial or recur* or month* or annual or (set w/3 up) or setup) w/20 (fee* or pric* or charg or rat* or bill or cost* or pay*)) and (extract* or integrat*)) | Overly burdensome. This revised proposal still hits 51,914 documents. |
| 23 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | Not relevant; Pro-competitive justification; 5,679 documents |
| 24 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | Agreed. |
| 25 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | Not relevant; Counterclaims; 26,235 documents |
| 26 | (*settle* or assign*) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR "multi district") | Not relevant; Miscellaneous; 14,117 documents |
| 27 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | Agreed. |
| 28 | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) | Agreed. |
| 29 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) | Not relevant; Pro-competitive justification; 22,434 documents |
| 30 | (BOD or "Board of Directors" or shareholder or investor) AND (minutes or notes or present*) AND (CDK or RR or Rey* or "R&R" or Authenticom or litigat* or Cottrell or "DMS MDL" or "Kellogg" or "1:18-CV-864") | Agreed (2,659 documents). |
| 31 | (breach or hack or attack or data) AND (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire") | Not relevant; Pro-competitive justification; 47,553 documents |
| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) | Agreed. |
| 33 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | Agreed. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) | Not relevant; Pro-competitive justification; 5,252 documents |
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | Agreed. |
| 36 | (CDK OR Reynolds OR R&R OR RR ~~OR DMS or "Dealer Management System" OR Cox OR DealerTrack~~) ~~AND~~ w/10 (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | As originally formulated, the search string was overbroad (more than 48,000 hits for just five custodians) and sought irrelevant information. As revised, this still hits 5,111 documents. |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) | Agreed. |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) ~~AND~~ w/5 (control or power or authority) ~~AND~~ w/10 (data or system) | As originally formulated, the search string was overbroad, returning more than 38,000 documents for just five custodians. As revised, this still hits 185 documents. |
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | Not relevant; Pro-competitive justification; 7,532 documents |
| 40 | (Compet* w/20 harm*) | Agreed. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 41 | (contract* or agree*) AND (CDK or Rey* or RR or "R&R") AND (term or year* or length or period) | Overly burdensome. This revised proposal still hits 30,452 documents. |
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | As formulated, this search term is overbroad. It returns more than 36,000 documents for just five custodians. CDK has indicated it will delete this term if there is agreement on Search Term #16. We are still evaluating that request. |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) | Not relevant; Pro-competitive justification; 7,332 documents |
| 44 | (data AND integration) w/20 market | Agreed. |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) AND (DMS or "dealer management system" or CDK or RR or Rey* or "R&R") | Overly burdensome. This revised proposal still hits 1,223 documents. |
| 46 | "Dealer Management System" w/5 market | Agreed. |
| 47 | "DMS functions" w/20 (CDK or Reynolds OR Dealertrack or Cox) | Agreed. |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack or Cox) | Agreed. |
| 49 | (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Rey* or RR or "R&R") AND (analy* or forecast or project* or survey* or evaluat* or stud* or (market w/3 share) or (market /3 condition) or compet*) | Overly burdensome. This revised proposal still hits 162,266 documents. |
| 50 | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) | Not relevant; Miscellaneous; 74,834 documents |
| 51 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* or agree* or provision* or section* or paragraph) AND (CDK or 3PA or "third party access" or "partner program" or "Access Program") | Overly burdensome. This revised proposal still hits 27,241 documents. |

| No. | Search Terms | Cox Comments |
|-----|-------------|--------------|
| 52 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | Agreed. |
| 53 | (exclusiv*or sole or only) w/20 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system") | Agreed. |
| 54 | (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) and ((pass w/5 through) or passthrough or share* or sent or "passed to" or "passed on" or "pass on") | Overly burdensome. This revised proposal still hits 86,975 documents. |
| 55 | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/1~~2~~0 (~~vend* or integrat* or appl* or~~ Authenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | As originally formulated, the search string was overbroad, returning more than 107,000 documents for just five custodians. As revised, this still hits 1,054 documents. |
| 56 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") | Agreed. |
| 57 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) | Not relevant; Pro-competitive justification; 2,344 documents |
| 58 | (harm OR injur* OR disrupt* OR los* OR interrupt*) w/15 (Reynolds OR R&R OR RR OR CDK) | Agreed. |
| 59 | (CDK or RR or Rey* or "R&R" or Authenticom or Cottrell or Kellogg) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding) OR MDL or subpoena OR "class plaintiff" or "lead plaintiff" or "class representative") | Overly burdensome. This revised proposal still hits 13,060 documents. |
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) AND (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) | Not relevant; Pro-competitive justification; 27,937 documents |

| No. | Search Terms | Cox Comments |
|-----|-------------|--------------|
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | Not relevant; Pro-competitive justification; 3,043 documents |
| 62 | ((fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI or DealerVault or Authenticom or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes)) AND (integrat* or extract* or (data w/3 access)) | Overly burdensome. This revised proposal still hits 27,402 documents. |
| 63 | Withdrawn by CDK | N/A |
| 64 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10~~5~~ (DealerVault or Authenticom ~~or Integrat* or vendor*~~ or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) | As formulated, this search term is overbroad. It returns more than 51,000 documents for just five custodians. As revised, this still hits 2,740 documents. |
| 65 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*))) | Agreed. |
| 66 | (purchase or buy or sale or aquire or acquisition) AND (DMS or "dealer management system") | Not relevant; Miscellaneous; 33,687 documents |
| 67 | "Query Builder" OR (QB AND Reynolds) | Agreed. |
| 68 | ("Report Generator" OR "report scheduler") AND (schedule or automat*) | Agreed. |
| 69 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | Not relevant; Miscellaneous; 18,060 documents |
| 70 | (*reyrey.com) AND (*cdk.com or *adp.com) OR ((*reyrey.com or Rey" or RR or "R&R") AND CDK AND (DEA or "Data Exchange Agreement" or RCI or 3PA or "third party access" or "Access Program" or "partner program" or Authenticom or hostile or integrat* or extract* or block* or (access w/3 (DMS or data) or destroy* or market* or compet*)) | Overly burdensome. This revised proposal still hits 17,009 documents. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 71 | "Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access" | Overbroad; 18,419 documents |
| 72 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | Not relevant; Pro-competitive justification; 5,658 documents |
| 73 | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) | Not relevant; Pro-competitive justification; 13,652 documents |
| 74 | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) | Not relevant; Pro-competitive justification; 18,215 documents |
| 75 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | Overbroad; 285 documents |
| 76 | (Superior Integrated Solutions) OR SIS OR *@4-superior.com | Overbroad; 1,955 documents |
| 77 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/10 (corrupt* OR integrity)) OR (data w/10 security) OR complain* or investigat*) | Not relevant; Pro-competitive justification; 34,146 documents |
| 78 | (Third w/3 Party) or thirdparty or "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK or Rey* or RR or "R&R" or DMS or data or "Dealer Management System") | Overly burdensome. This revised proposal still hits 24,050 documents. |
| 79 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary | Agreed. |
| 80 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | Not relevant; Counterclaims; 5,078 documents |

| No. | Search Terms | Cox Comments |
|-----|--------------|--------------|
| 81 | (unauthorized w/5 access) w/20 (data OR server OR information) | Not relevant; Counterclaims; 3,343 documents |
| 82 | (win or los* or cancel* or switch or defect* or mov* or chang* or transfer*) w/20 (DMS or "dealer management system" OR CDK OR Rey* or "R&R" or RR or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "Auto Mate" or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop or vendor or integrat*) | Overly burdensome. This revised proposal still hits 70,957 documents. |
| 83 | "secure web form" | We are willing to run this term as a compromise. |
| 84 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) | Not relevant; Pro-competitive justification; 20,642 documents |
| 85 | Agreement w/20 (CDK OR Reynolds OR R&R) w/20 (illegal OR anticompet*) | Agreed. |
| 86 | anticompet* | Overbroad; 168 documents |
| 87 | antitrust | Overbroad; 1,567 documents |
| 88 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 | Overbroad; 5,234 documents |
| 89 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | Not relevant; Counterclaims; 4,057 documents |
| 90 | AutoLoop or (loop w/3 llc) or *Autoloop.net or 18-cv-02521 | Overbroad; 5,268 documents |
| 91 | (*cdk.com or *adp.com or CDK or ADP) AND (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" or access* or scrap*) | Overly burdensome. This revised proposal still hits 47,957 documents. |
| 92 | Circumvent AND (security OR dms OR block*) | We are willing to run this term as a compromise. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 93 | cyber w/5 insurance | We are willing to run this term as a compromise. |
| 94 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" | Agreed. |
| 95 | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov | Overbroad; 6,065 documents |
| 96 | FTP w/3 push | Agreed. |
| 97 | hide or conceal or (cover w/3 up) or veil or bury | Overbroad; 33,207 documents |
| 98 | Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | Not relevant; Counterclaims; 11,989 documents |
| 99 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | Agreed. |
| 100 | Lock w/10 account | Agreed. |
| 101 | OEM AND data | Overbroad; 38,263 documents |
| 102 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | Overbroad; 549 documents |
| 103 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | We are willing to run this term as a compromise. |
| 104 | Secur* w/20 (Audit* OR Standard OR proced*) | Not relevant; Pro-competitive justification; 5,041 documents |

| No. | Search Terms | Cox Comments |
|-----|--------------|--------------|
| 105 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | Agreed. |
| 106 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv-01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | Agreed. |
| 107 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) | Agreed. |
| 108 | manual w/10 (report* or tool* or extract*) | Agreed. |
| 109 | (data or access or integrat* or extract* or CDK or Rey* or RR or "R&R") w/20 (policy* or guideline* or rule* or requir*) | Overly burdensome.  This revised proposal still hits 44,380 documents. |
| 110 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) | Overbroad; 12,540 documents |
| 111 | ((manag* /2 interfac*) OR 3PA OR RCI or "third party access" or "Access Program" or "Certified Interface" or ((CDK or RR or Rey* or "R&R") w/5 (DMS or "dealer management system"))) w/10 (agree* OR contract*) | Overly burdensome.  This revised proposal still hits 8,535 documents. |
| 112 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS) | Not relevant; Counterclaims; 4,508 documents |

| No. | Search Terms | Cox Comments |
|-----|-------------|--------------|
| 113 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) | Agreed. |
| 114 | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract)) | Not relevant; Counterclaims; 18,297 documents |
| 115 | (Autotrader or "Dealer Dot Com" or "Dealer.com" or DealerTrack or "Dealer Track" or HomeNet or "Kelley Blue Book" OR vAuto OR VinSolutions or Xtime or RegUSA or RTS or "OLRS") AND (DMS or "Dealer Management System" or CDK or 3PA or Reynolds or R&R or RCI or integrat* or extract* or access* or hostile or data or unauthoriz* or authoriz* or Authenticom or DealerVault) | Not relevant; Counterclaims; 235,598 documents |
| 116 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") | Agreed. |
| 117 | "Alex Taylor*" OR "Cliff Bank*" OR "Automotive News" OR "BWG" | Overbroad; 15,824 documents |
| 118 | (Acquisition* or acquir*) /s DealerTrack | Overbroad; 6,917 documents |
| 119 | ("HSR" OR *Rodino*) AND DealerTrack* | Not relevant; Miscellaneous; 59 documents |
| 120 | (Invest* OR financ*) AND (DealerTrack* OR Cox* OR "data security" OR ((secur* OR access* OR limit* OR /s DMS)) | Not relevant; Pro-competitive justification; 99,582 documents |
| 121 | DealerTrack AND (business AND (OR strategy OR plan)) | Overbroad; 36,758 documents |
| 122 | ("solution gap*" OR bundl* /s (app* OR solution* OR service*)) | Not relevant; Miscellaneous; 9,187 documents |
| 123 | CDK* w/10 (nondisclosure* or share* or provide*) w/10 (fee* OR charge*) | Agreed. |

| No. | Search Terms | Cox Comments |
|-----|--------------|--------------|
| **124** | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | Agreed. |
| **125** | Non-DMS or (DMS w/5 alternative) | Agreed. |
| **126** | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | Not relevant; Pro-competitive justification; 3,643 documents |
| **127** | (declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) | We are willing to run this term as a compromise. |
| **128** | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell | Agreed. |
| **129** | Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort* | Overbroad; 22,856 documents |

13

**EXHIBIT B**

**CDK'S PROPOSED SEARCH TERMS TO AUTOLOOP**

*AutoLoop proposes to run search terms for all searches from January 1, 2014, to April 9, 2018 (the day AutoLoop filed its complaint). AutoLoop's willingness to use any of CDK's proposed search terms is dependent on reaching a final reasonable agreement on custodians, and therefore AutoLoop reserves all rights.*

| No. | Search Terms | AutoLoop Comments | De-duplicated Hits, Date Limited WITHOUT FAMILIES[1] | Cox No. |
|---|---|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | Not relevant; pro-competitive justification. | 3736 | 1 |
| 2 | (CDK OR Reynolds OR DMS OR or system) AND (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) | Not relevant; counterclaims. | 14942 | 2 |
| 3 | "Data Authorization" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 3 |
| 4 | July 24 proposal: (data /3 integrat*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") OR (data /3 extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") | Agreed to 7/24 proposal. | | 4 |
| 5 | (DMS OR "dealer management system") /5 market*) | Agreed. | | 5 |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" | Agreed. | | 6 |
| 7 | "nonpublic personal information" OR NPI | AutoLoop does not believe this term is relevant. We are, however, willing to | | 7 |

---

[1] Adding families to a search typically increases the total number of responsive documents by a factor of more than 2.

| | | compromise and run this search term. | | |
|---|---|---|---|---|
| 8 | "personally identifiable information" OR PII | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 8 |
| 9 | "Proprietary Data" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 9 |
| 10 | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 10 |
| 11 | "sensitive personal information" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 11 |
| 12 | "User Emulation" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 12 |
| 13 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) | Not relevant; pro-competitive justification. | 3736 | 13 |
| 14 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 31916 | N/A |
| 15 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track")) AND data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 2312 | N/A |
| 16 | July 24 proposal: ((compet* OR threat* OR challeng* OR superior* OR compare*) w/15 (CDK)) AND (app* | This search term remains overbroad. | 3711 | 14 |

|   | | | | |
|---|---|---|---|---|
|   | OR solution* OR product* OR service*) OR ((app* OR solution* OR product* OR service*) w/15 (compet* OR threat* OR challeng* OR replac* OR bypass*)) AND (DMS OR "dealer management system") | | | |
| 17 | (dealer w/~~10~~ 5 data) ~~AND~~ w/20 ((retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) | AutoLoop is willing to agree to the term as modified (the modification was circulated on our last meet and confer). | | 15 |
| 18 | July 24 proposal: (los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang* or mov*) w/15 (dealer or customer or contract or business or sale)) AND (DMS or "dealer management system" or app* or vendor or integrator or service* or product* or solution*)) | This search term remains overbroad. | 21375 | 16 |
| 19 | (((pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) ~~AND~~ w/5 data) AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. Even as revised, this term is overbroad. | 4144 | 17 |
| 20 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) | Not relevant; pro-competitive justification. | 1284 | 18 |
| 21 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 1468 | 21 |

| | | | | |
|---|---|---|---|---|
| 22 | July 24 proposal: (up w/3 front) or "up front" or install* or initial or recur* or month* or annual or (set w/3 up) or setup) w/20 (fee* or pric* or charg or rat* or bill or cost* or pay*)) and (extract* or integrat*)) | This search term remains overbroad. | 14160 | 22 |
| 23 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | Not relevant; pro-competitive justification. | 2653 | 23 |
| 24 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | Agreed. | | 24 |
| 25 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 3914 | 25 |
| 26 | (*settle* or assign*) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 action or proceeding)) OR MDL OR "multi district") | Not relevant; miscellaneous. | 2746 | 26 |
| 27 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | Agreed. | | 27 |
| 28 | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) | Agreed. | | 28 |
| 29 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) | Not relevant; pro-competitive justification. | 863 | 29 |
| 30 | July 24 proposal: (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) AND (CDK OR RR OR Rey* OR "R&R" OR Authenticom OR litigat* OR Cottrell OR "DMS MDL" OR "Kellogg" OR "1:18-CV-864") | AutoLoop is still exploring its alternative proposal. | | 30 |
| 31 | (breach or hack or attack or data) AND (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire") | Not relevant; pro-competitive justification. | 7818 | 31 |

| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) | Agreed. | | [32](#) |
|----|----|----|----|----|
| 33 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | Agreed. | | [33](#) |
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) | Not relevant; pro-competitive justification. | 1865 | [34](#) |
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | Upon additional processing and review, this term is overbroad as written. AutoLoop is willing to meet and cover about an alternative search term. | 8985 | [35](#) |
| 36 | (CDK OR Reynolds OR R&R ~~OR RR OR DMS or "Dealer Management System" OR Cox OR DealerTrack)~~ ~~AND~~ w/10 (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | Agreed with modifications proposed prior to our last meet and confer. | | [36](#) |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) | Agreed. | | [37](#) |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) ~~AND~~ w/5 (control or power or authority) ~~AND~~ w/10 (data or system) | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable | 602 | [38](#) |

| | | modifications. | | |
|---|---|---|---|---|
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | Not relevant; pro-competitive justification. | 27 | 39 |
| 40 | (Compet* w/20 harm*) | Agreed. | | 40 |
| 41 | (contract* or agree*) AND (term or year* or length or period) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 18229 | 41 |
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 3801 | 42 |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) | Not relevant; pro-competitive justification. | 1428 | 43 |
| 44 | (data AND integration) w/20 market | Agreed. | | 44 |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) | Agreed. | | 45 |
| 46 | "Dealer Management System" w/5 market | Agreed. | | 46 |
| 47 | "Dms function*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | 47 |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | 48 |
| 49 | July 24 proposal: (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Rey* or RR or "R&R") AND (analy* or forecast or project* or survey* or evaluat* or stud* or (market w/3 share) or (market /3 condition) or compet*) | This search remains overbroad. | 63343 | 49 |

| | | | | |
|---|---|---|---|---|
| **50** | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 50 |
| **51** | July 24 propsoal: (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph) AND (CDK OR 3PA OR "third party access" OR "partner program" OR "Access Program") | Agreed. | | 51 |
| **52** | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | Agreed. | | 52 |
| **53** | (exclusiv*or sole or only) w/20 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system") | Upon further document collection and analysis, this term is overbroad as written. AutoLoop is willing to meet and confer about reasonable modifications. | 22234 | 53 |
| **54** | July 24 proposal: (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) and ((pass w/5 through) or passthrough or share* or sent or "passed to" or "passed on" or "pass on") | This search remains overbroad. | 26448 | 54 |
| **55** | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/~~20~~10 (~~vend* or integrat* or appl* or~~ Authenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | 15972 | 55 |
| **56** | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") | Agreed. | | 56 |
| **57** | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) | Not relevant; pro-competitive justification. | 593 | 57 |
| | (harm or injur* OR disrupt* OR los* OR interrupt* ~~OR~~ | Agreed with modifications proposed before | | 58 |

| 58 | ~~cancel* OR end* OR stop*~~) w/15 (Reynolds OR R&R OR RR OR CDK) | our last meet and confer. | | |
|---|---|---|---|---|
| 59 | (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative" | As originally formulated, the search string was overbroad. The search also seeks documents that are likely to be privileged, and thus the burden associated with the search is disproportionate to the likelihood of producing responsive, non-privileged documents. | 9559 | 59 |
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) AND (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) | Not relevant; pro-competitive justification. | 15792 | 60 |
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | Not relevant; pro-competitive justification. | 1448 | 61 |
| 62 | July 24 proposal: ((fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI or DealerVault or Authenticom or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes)) AND (integrat* or extract* or (data w/3 access)) | This search remains overbroad. | 7915 | 62 |
| 63 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (data or access* or integrat* or 3PA or "third party access" or "partner program" or "Access Program" | As formulated, this search term is overbroad. Moreover, it appears to seek information regarding CDK's pricing, which is already within CDK's possession. | 24933 | 63. |
| | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/~~15~~ 10 (DealerVault or | This search term is overbroad, even with the proposed modifications circulated before | 1376 | 64 |

| 64 | Authenticom ~~or Integrat* or vendor*~~ or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) | our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | | |
|---|---|---|---|---|
| 65 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/1 ~~0~~5 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*))) | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | 4625 | 65 |
| 66 | "Query Builder" OR (QB AND Reynolds) | Agreed. | | 67 |
| 67 | ("Report Generator" OR "report scheduler") AND (schedule or automat*) | Agreed. | | 68 |
| 68 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | As formulated, this search term is overbroad and does not appear likely to return relevant documents. We are willing to discuss the purported relevance of this request. | 2799 | 69 |
| 69 | July 24 proposal: (*reyrey.com) AND (*cdk.com OR *adp.com) OR ((*reyrey.com OR Rey OR RR OR "R&R") AND CDK AND (DEA OR "Data Exchange Agreement" OR RCI OR 3PA OR "third party access" OR "Access Program" OR "partner program" OR Authenticom OR hostile OR integrat* OR extract* OR block* OR (access w/3 (DMS OR data) OR destroy* OR market* OR compet*)) | Agreed. | | 70 |
| 70 | "Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access" | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 7917 | 71 |
| 71 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | Not relevant; pro-competitive justification. | 1327 | 72 |
| 72 | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) | Not relevant; pro-competitive justification. | 2515 | 73 |
| 73 | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) | Not relevant; pro-competitive justification. | 3158 | 74 |

| | | | | |
|---|---|---|---|---|
| **74** | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 742 | [75](#) |
| **75** | (Superior Integrated Solutions) OR SIS OR *@4-superior.com | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 11233 | [76](#) |
| **76** | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/10 (corrupt* OR integrity)) OR (data w/10 security) OR complain* or investigat*) | Not relevant; pro-competitive justification. | 20765 | [77](#) |
| **77** | <mark>July 24 proposal:</mark> (Third w/3 Party) OR thirdparty OR "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR data OR "Dealer Management System") | This search remains overbroad. | 4411 | [78](#) |
| **78** | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary | Agreed. | | [79](#) |
| **79** | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | Not relevant; counterclaims. | 3728 | [80](#) |
| **80** | (unauthorized w/5 access) w/20 (data OR server OR information) | Not relevant; counterclaims. | 905 | [81](#) |
| **81** | (win or los* or cancel* or switch or defect* or mov* or chang* or transfer*) w/20 (DMS or "dealer management system" OR CDK OR Rey* or "R&R" or RR or Cox or Dealertrack or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "Auto Mate" or SelectQu or SelectQ or | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 145107 | [82](#) |

| | | | | |
|---|---|---|---|---|
| | "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop or vendor or integrat*) | | | |
| 82 | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 83 |
| 83 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) | Not relevant; pro-competitive justification. | 4770 | 84 |
| 84 | Agreement w/20 (CDK OR Reynolds OR R&R) w/20 (OR illegal OR anticompet* OR alleg*) | Agreed as modified (modification circulated prior to our last meet and confer). | | 85 |
| 85 | anticompet* | As formulated, this search term is overbroad. | 107 | 86 |
| 86 | antitrust | As formulated, this search term is overbroad. | 186 | 87 |
| 87 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 | As formulated, this search term is overbroad. | 1044 | 88 |
| 88 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | Not relevant; counterclaims. | 1068 | 89 |
| 89 | July 24 proposal: (*cdk.com OR *adp.com OR CDK OR ADP) AND (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*) | This search remains overbroad. | 13600 | 91 |
| 90 | Circumvent AND (security OR dms OR block*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 92 |
| 91 | Cox or Autotrader or "Dealer Dot Com" or DealerTrack or "Dealer Track" or HomeNet or "Kelley Blue Book" OR vAuto OR VinSolutions or Xtime or 17-cv-925 | As formulated, this search term is overbroad. | 13803 | (compare to 90) |
| 92 | cyber w/5 insurance | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 93 |
| 93 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" | We are willing to compromise and run this search term. | | 94 |
| 94 | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov | As formulated, this search term is overbroad. | 1956 | 95 |

| 95 | FTP w/3 push | Agreed. | | 96 |
|----|----|----|----|----|
| 96 | hide or conceal or (cover w/3 up) or veil or bury | As formulated, this search term is overbroad. | 1099 | 97 |
| 97 | Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | Not relevant; counterclaims. | 4771 | 98 |
| 98 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 99 |
| 99 | Lock w/10 account | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 100 |
| 100 | OEM AND data | As formulated, this search term is overbroad. | 5764 | 101 |
| 101 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | As formulated, this search term is overbroad. | 867 | 102 |
| 102 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 103 |
| 103 | Secur* w/20 (Audit* OR Standard OR proced*) | Not relevant; pro-competitive justification. | 788 | 104 |
| 104 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" | Agreed. | | 105 |

| | | | |
|---|---|---|---|
| | OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | | |
| 105 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv- 01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | Agreed. | 106 |
| 106 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) | Agreed. | 107 |
| 107 | manual w/10 (report* or tool* or extract*) | Agreed. | 108 |
| 108 | July 24 proposal: (*cdk.com OR *adp.com OR CDK OR ADP) AND (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*) | This search term remains overbroad. | 9095 → 109 |
| 109 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) | As formulated, this search term is overbroad and seeks information within CDK's possession. | 2739 → 110 |
| 110 | July 24 proposal: ((manag* /2 interfac*) OR 3PA OR RCI OR "third party access" OR "Access Program" OR "Certified Interface" OR ((CDK OR RR OR Rey* OR "R&R") w/5 (DMS OR "dealer management system"))) w/10 (agree* OR contract*) | This search term remains overbroad. | 8420 → 111 |
| 111 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS) | Not relevant; counterclaims. | 1245 → 112 |
| 112 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) | Agreed. | 113 |

| | | | | |
|---|---|---|---|---|
| **113** | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract)) | Not relevant; counterclaims. | 7456 | [114](#) |
| **114** | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") | Agreed. | | [116](#) |
| **115** | ("solution gap*" OR bundl* /s (app* OR solution* OR service*)) | Not relevant; miscellaneous. | 1986 | [122](#) |
| **116** | SmartLane* AND ("Service Edge*" OR CDK OR prob* OR issue* OR allow* OR access*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 5809 | [N/A](#) |
| **117** | CDK* ~~AND~~ w/10 (nondisclosure* or share* or provide*) ~~AND~~ w/10 (fee* OR charge*) | Agreed. | | [123](#) |
| **118** | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | Agreed. | | [124](#) |
| **119** | Non-DMS or (DMS w/5 alternative) | Agreed. | | [125](#) |
| **120** | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | Not relevant; procompetitive justification. | 2153 | [126](#) |
| **121** | (declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) | Not relevant; counterclaims. | 2928 | [127](#) |
| **122** | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or | Agreed. | | [128](#) |

| | Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell | | | |
|---|---|---|---|---|
| **123** | Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort* | As formulated, this search term is overbroad. | 2607 | 129 |

# EXHIBIT 17

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
_____
(202) 326-7900
FACSIMILE:
(202) 326-7999

July 27, 2018

*Via Electronic Mail*

Matt Provance, Esq.
Mayer Brown
71 South Wacker Drive
Chicago, IL 60606

     Re:    *In re Dealer Management Systems Antitrust Litigation,* MDL No. 2817

Dear Matt:

     I'm writing in response to your July 19, 2018, letter regarding Authenticom's responses to CDK's RFPs, Interrogatories, and RFAs.

     **RFPs.** You ask about Authenticom's responses to RFP Nos. 2, 51, and 68. With respect to RFP No. 2, Authenticom agrees to produce the different types of standard queries that it runs for CDK dealers, and the standard "schedule" for its queries. We believe that provides even more information than you have requested in your June 14 letter.

     As for RFP No. 51, you are correct that Authenticom has agreed to provide documents sufficient to show how data is received, stored, and transmitted by DealerVault, and is willing to meet and confer regarding the balance of RFP No. 51 as part of a broader discussion regarding Defendants' responses to Authenticom's RFPs on the same topics.

     As for RFP No. 68, we can confirm that if a third party has provided Authenticom with documents for use as evidentiary material even without a subpoena request, we agree to produce those documents.

     **Interrogatories.** In your letter, you assert that Authenticom's amended responses to Interrogatory Nos. 4, 5, 9, 10, 11, 13, and 21 are insufficient. But you do not identify any specific insufficiencies with Authenticom's interrogatory responses. Your general characterization leaves Authenticom with no information on what it could do to address CDK's unspecified concerns. And in fact, Authenticom amended each Interrogatory response to address the particular issues that CDK had previously identified. If CDK still has concerns with Authenticom's interrogatory responses, please let us know what they actually are.

     As for Interrogatory No. 25, Authenticom stands on its objections.

     **RFAs.** With respect to RFA Nos. 3 and 4, you again complain that the responses are insufficient. But you do not identify with any particularity how. You state that Authenticom

admits to "different facts than what each of these RFAs is asking about," but Authenticom's RFAs appropriately respond to the propounded RFAs.

* * * * *

We remain willing to discuss any of the foregoing.

Very truly yours,

*s/ Michael N. Nemelka*

Michael N. Nemelka

# EXHIBIT 18

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 27, 2018

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

B<span>Y</span> E-M<span>AIL</span>

Michael N. Nemelka, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, *Cox v. CDK* (18-CV-1058) &
        *Loop v. CDK* (18-CV-2521)

Dear Mike:

I write to follow up on our July 17 letter and July 23 telephonic meet-and-confer regarding Cox Automotive's ("Cox") and Loop, LLC's ("AutoLoop") (collectively, the "Individual Plaintiffs") responses to CDK's respective First Sets of Interrogatories and Requests for Production ("RFPs") (collectively, the "discovery requests").  During that lengthy meet-and-confer, the parties fully addressed Individual Plaintiffs' responses to CDK's First Sets of Interrogatories, including Cox's improper general objection limiting its responses to information generated after January 1, 2014, a full year after the commencement of the agreed-upon general discovery period.  We plainly are at-issue with respect to a number of the interrogatories, but would welcome Individual Plaintiffs' withdrawal of any of the objections that they told us they wished to reconsider.

Also during the meet-and-confer, the parties began discussing Individual Plaintiffs' responses to CDK's RFPs.  After covering the first 24 or so RFPs, Individual Plaintiffs proposed to send to us a written guide of their production offer that would obviate the need to walk through the remaining RFPs.  Thank you for your letter last night in that regard.  We are reviewing it and will respond in substance to it before our follow-up meet-and-confer on Tuesday, July 31.

In the meantime, CDK agreed to give further thought to a handful of issues that the Individual Plaintiffs raised during our July 23rd meet-and-confer.  The balance of this letter addresses those.

Before doing so, we note that the specific discovery requests addressed below are no broader than corresponding requests that the Individual Plaintiffs and other plaintiffs have served on CDK.  CDK's offer to narrow the scope of these discovery requests are contingent upon the Individual Plaintiffs' willingness to do the same for corresponding discovery requests served on CDK where CDK's objections to the Requests are principally based on their overbreadth.[1]  If

---

[1]      CDK will be addressing the Individual Plaintiffs' RFPs in separate correspondence.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 27, 2018
Page 2

they do not agree to do so, CDK will seek compliance with its requests as written.  Here are the
requests we agreed to continue to consider, along with our specific offers to narrow them:

Cox Interrogatory Response No. 19/AutoLoop Interrogatory Response No. 15 (*number of times
You or Your Data Extractors accessed a CDK DMS*): Cox and AutoLoop claimed that it would
be unduly burdensome to identify each time Individual Plaintiffs or their Data Extractors
"accessed" a CDK DMS.  CDK has considered your objection and proposes to revise these
interrogatories to the following: "Identify the number of times that You or Your Data Extractors
(when acting on Your behalf or at your direction) have accessed and/or queried data maintained
on a CDK DMS through means other than approved 3PA access during each month since
January 1, 2013."  Please let us know whether Individual Plaintiffs will fully answer the
interrogatories as proposed above.

Cox RFP Response Nos. 1 (*public statements re DealerTrack's acquisition*), 2 (*statements to
investors re DealerTrack acquisition*), 4 (*filing re DealerTrack acquisition*), 8 (*written
DealerTrack business plans or presentations*), 10 (*marketing materials that reference CDK or
Reynolds*): In our meet-and-confer, Cox objected to each of these RFPs as overly broad, despite
the fact that many of Individual Plaintiffs' RFPs served on CDK are as broad, if not broader,
than these particular RFPs.  For example, Individual Plaintiffs' RFP Nos. 29, 31 and 37 each
seek communications with Dealers and OEMs that in any way mention the Individual Plaintiffs,
regardless of context.

Additionally, with respect to RFP No. 4, you claimed in our meet-and-confer that this RFP is
inconsistent with CDK's position with respect to the documents Authenticom requested
regarding AutoMate.  You also questioned the relevance of RFP No. 4 in last night's letter,
particularly in light of CDK's efforts to obtain a protective order in relation to the AutoMate
documents.  CDK disagrees with your characterization of RFP No. 4 as being parallel to
Authenticom's demand for the entirety of CDK's production to the FTC in connection with the
previously proposed AutoMate acquisition.  CDK further notes that it has agreed to produce in
the *Authenticom* litigation the relevant documents from its production of AutoMate documents to
the FTC.  The parties' positions regarding the AutoMate documents are set forth, at length, in
their briefing on CDK's motion for a protective order; there is no need to rehash them here.
Moreover, CDK made clear during the meet-and-confer that documents responsive to RFP No. 4
are relevant to the nature of competition in the relevant marketplace.

That being said, in your letter from last night, you offered to produce documents responsive to
DealerTrack-specific RFPs (which presumably includes these RFP Nos. 1, 2, 4, 8 & 10) that
relate to a limited subset of issues.  While we appreciate your offer, the issues as outlined in your
letter are too narrow.  That said, the parties do not appear to be too far apart in their respective
positions at least with respect to RFP Nos. 1, 2, 4, 8 & 10.  Thus, in the spirit of compromise,
CDK is willing to revise these RFPs to the following, which closely tracks your proposal with
slight modifications:

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 27, 2018
Page 3

- <u>RFP 1</u>: All documents related to any public statements about the acquisition of DealerTrack that relate to or reference (a) competition in the DMS market,[2] including any mention of CDK and/or Reynolds; (b) data integration; or (c) third-party access to DMSs, including DealerTrack's DMS.

- <u>RFP 2</u>: All documents related to any statements made to DealerTrack investors regarding Your acquisition of DealerTrack that relate to or reference (a) competition in the DMS market, including any mention of CDK and/or Reynolds; (b) data integration; or (c) third-party access to DMSs, including DealerTrack's DMS.

- <u>RFP 4</u>: All documents You submitted to the United States Federal Trade Commission as part of Your Hart-Scott-Rodino Act ("HSR") filing related to Your acquisition of DealerTrack and that otherwise relate to or reference (a) competition in the DMS market, including any mention of CDK and/or Reynolds, (b) data integration, or (c) third-party access to DMSs, including DealerTrack's DMS, or that are otherwise relevant to this MDL, and, to the extent not already included in the aforementioned request, all documents that are responsive or otherwise submitted pursuant to Item 4(c) of Your HSR Form.

- <u>RFP 8</u>: All written business plans or presentations related to DealerTrack that relate to or reference (a) competition in the DMS market, including any mention of CDK and/or Reynolds, (b) data integration, or (c) third-party access to DMSs, including DealerTrack's DMS.

- <u>RFP 10</u>: All marketing materials that refer to DealerTrack, Your Applications, the OpenTrack program or API, and that reference or relate to CDK, Reynolds, and/or any CDK or Reynolds product, including, but not limited to, materials related to third-party access to DMSs, including DealerTrack's DMS <u>or</u> created after June 1, 2015 (which is shortly before the public announcement of CDK's SecurityFirst initiative).

Please let us know whether Cox will fully produce documents in response to these formulations of RFP Nos. 1, 2, 4, 8 & 10.

We look forward to receiving your letter and to discussing these proposals during our next meet-and-confer on Tuesday, July 31.

---

[2]     The term "DMS market" is used throughout this letter and is intended to have the same meaning as the term is defined in CDK's response to No.12 of CDK's Responses and Objections to Authenticom's First Set of Interrogatories.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 27, 2018
Page 4

Sincerely,

Andrew S. Marovitz

729559998

# EXHIBIT 19

**Sheppard**Mullin

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

File Number: 48KZ-266044

July 28, 2018

**VIA EMAIL**

Michael E. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Ste. 400
Washington, DC 20036-3215
mnemelka@kellogghansen.com

      Re:    *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL No. 2817 (N.D. Ill.)

Dear Mike:

      I write this letter in response to your July 27 email and letter and to follow up on certain issues we discussed during our July 25 telephonic meet and confer.

      **1.    Authenticom's RFP Responses**.

          **a.  Instances of DMS Access**

      Thank you for the sample of the proposed log of DMS access that Authenticom is willing to create in response to certain RFPs from Reynolds. We have some questions:

- Please explain the data fields set forth in this log (in other words, what do the headings represent?)

- Please provide a key or dictionary so that we can understand the actual entries in the ACDealerID, DealerStore ID and FileType columns

- What is the earliest entry that will appear in the log?

- As we understand from prior discussions, based on the limits of what is available to Authenticom, the log shows when data from a Reynolds or CDK DMS was entered into Authenticom's system, but does not distinguish between data entered by a dealer versus data entered by Authenticom itself. Is this what the sample will show, or will it show something different?

- Please confirm that the proposed sample will provide all the data regarding Authenticom's DMS access that remains available to Authenticom.

Michael E. Nemelka
July 28, 2018
Page 2

- Has Authenticom taken any steps to preserve DMS access information and/or shut off automatic deletion settings since we requested that Authenticom do so in our May 23 letter? If not, why not?

### b. Authenticom's DMS Connections

Thank you for agreeing to collect and produce Authenticom's data regarding DMS connections. We understood from our call on Wednesday that this data would be produced soon. Please let us know when we can expect to receive this data. The motion to compel deadline is August 6 and we have been requesting the data for months.

### 2. Authenticom's RFA Responses

When will we receive Authenticom's amended RFA responses? Given that Authenticom has twice responded to these RFAs after rephrasing them into different requests, Reynolds needs to be sure that this third attempt will actually answer the RFAs as phrased.

### 3. Subpoenas to Authenticom-Affiliated Non-Parties

We have some questions regarding your representation that subpoena recipients 621 Holdings, Inc., Data Services LLC, Data Specialty Group LLC, DMS Update LLC, 2320 Cunningham Street LLC, and Central States Arms LLC do not have any responsive materials separate from Authenticom's documents:

- It appears from your response that 621 Holdings, Inc., Data Services LLC, DMS Update LLC and Data Specialty Group LLC are subsidiaries of Authenticom. Is that correct?

- You state that to the extent 621 Holdings, Inc., Data Services LLC, DMS Update LLC and Data Specialty Group LLC have documents, they are within Authenticom's files or ESI. Please identify the custodians who would have materials relating to these entities and confirm that your search for documents responsive to Reynolds's subpoenas will include these custodians, as well as any centralized files at Authenticom relating to these entities.

- You state that 2320 Cunningham Street LLC and Central States Arms LLC are not related to Authenticom but are both related to Steve Cottrell. You also state that neither entity has responsive documents. How did you determine that they have no responsive documents?

  As discussed on my call with Ben Rudofsky, and which he confirmed, Steve Cottrell transacts business relating to Central States Arms LLC, which has a Class 3 license[1] to deal arms, using his Authenticom email address. *See also*

---

[1] A Class 3 license is required in order to become a dealer of certain types of firearms restricted under the National Firearms Act ("NFA"), such as machine guns. *See, e.g.,*

Michael E. Nemelka
July 28, 2018
Page 3

https://www.gsltechnology.com/dealers/central-states-arms-llc/ (identifying Steve@Authenticom.com as the contact email address for Central States Arms, LLC); https://www.ffl123.com/class-3-dealer-list-wisconsin-class-3-dealers/ (same).

Please confirm that to the extent documents responsive to Reynolds's subpoenas are located within Steve Cottrell's files, they will not be excluded from production.

Aside from Steve Cottrell, please identify the Authenticom custodians who would have materials relating to 2320 Cunningham Street LLC and Central States Arms LLC (if any) and confirm that your search for documents responsive to Reynolds's subpoenas will include these custodians, as well as any centralized files at Authenticom relating to these entities.

Are there custodians of 2320 Cunningham Street LLC and Central States Arms LLC who are not Authenticom custodians? Who are they?

Please note that the six subpoena recipients above have waived all objections to Reynolds's subpoenas. The subpoenas were served on June 6, 2018, and the return date on each subpoena was June 25, 2018. The subpoena recipients did not provide written objections within 14 days of service and did not file a timely motion to compel prior to the response date, thereby waiving all objections. *See* Fed. R. Civ. Proc. 45(d). If there are materials responsive to Reynolds's subpoenas, they must be collected and produced.

### 4. MVSC's Responses to Defendants' Document Requests

On Wednesday, July 25, the parties met and conferred telephonically regarding MVSC's responses to Defendants' document requests. With respect to a significant number of RFPs, MVSC stated that it would discuss internally and get back to us in a letter. When will we receive the letter?

Finally, we are still waiting for MVSC's comments on the search terms we proposed over two months ago on May 25, 2018. When will we receive MVSC's comments?

We need clarity on the extent of our document disputes relating to MVSC in order to determine what motions to compel are needed. MVSC lags far behind all other plaintiffs and defendants with respect to making its positions known.

You've recently informed us that MVSC may be experiencing some vendor / document collection issues. When do you anticipate that those will be resolved?

---

https://en.wikipedia.org/wiki/Federal_Firearms_License#cite_note-5 ;
https://www.atf.gov/firearms/qa/which-firearms-are-regulated-under-nfa.

Michael E. Nemelka
July 28, 2018
Page 4

### 5. Reynolds's Responses to Individual Plaintiffs' Document Requests

Following our telephonic meet and confer on July 23 regarding Reynolds's responses to Individual Plaintiffs' document requests, we have been working as quickly as possible and as hard as possible to follow up on numerous issues that came out of that call and our call with the Dealership Class Plaintiffs regarding their document requests. We are close to having responses for you. However, I cannot guarantee that you will have a letter from us by Monday at noon ET, as you demanded yesterday. We will get our letter to you as soon as possible and then schedule a call to discuss.

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227863399.1

# EXHIBIT 20

MILBERG TADLER PHILLIPS GROSSMAN LLP

<div align="right">NEW YORK</div>

Robert A. Wallner
Direct Dial: (212) 946-9335
rwallner@milberg.com

July 28, 2018

**VIA EMAIL**

Matthew Provance, Esq.
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
MProvance@mayerbrown.com

      Re:    *In re Dealer Management Systems Antitrust Litig.*,
              MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Matt:

      This will respond to your July 16th letter regarding Dealership Plaintiffs' Responses and Objections to CDK's Requests for Production.

      Dealership Plaintiffs are not "improperly withholding" any documents. As we stated in our General Objections and reiterated on our July 9th meet and confer teleconference, CDK's Requests for Production, consisting of 107 individual Requests (many with subparts) are unnecessarily voluminous and place an undue burden on Dealership Plaintiffs. Nevertheless, for several of your Requests, we are willing to search for and produce responsive documents, as set forth in our written Responses and below. Many of your Requests, however, are simply too vague and/or broad for Dealership Plaintiffs to conduct a reasonable search for responsive documents. And several of your Requests seek discovery that is otherwise improper under Fed. R. Civ. Pro. 26.

      **a.   Objections Related to *Authenticom* Ruling**

      It appears that you misunderstand Dealership Plaintiffs' position here. Judge St. Eve's motion to dismiss ruling in *Authenticom* shows that the documents sought by these Requests are irrelevant as a matter of law. Insofar as CDK contends that its challenged conduct can be explained by any purported security-related concerns, CDK would have to demonstrate, based on its own, internal documents, that those concerns drove its decisions. In the *Authenticom*

Page 2

preliminary injunction order, Judge Peterson found that CDK's purported data-security concerns were not persuasive (Order at 15-16).   CDK's efforts to shift to plaintiffs the burden to produce documents on these issues is unduly burdensome and not proportional to the needs of the case.

**b. Publicly Available Documents**

Dealership Plaintiffs should not be required to produce documents that CDK can simply access on its own. As to Request Nos. 75 and 79, to the extent the documents cited in Dealership Plaintiffs' Consolidated Class Action Complaint and/or Dealership Plaintiffs' responses to interrogatories are in the public domain, CDK can access those documents, and it is unnecessary for Dealership Plaintiffs to produce them in discovery. As to Request Nos. 87, 88, 89, 97, 98, and 99, to the extent Dealership Plaintiffs identify responsive documents that are publicly available but have not been identified or provided to CDK in the past, Dealership Plaintiffs will produce those documents or direct CDK to their locations. Please advise if you believe additional clarification is needed.

**c. Specific Requests**

Request No. 5

We have attempted to meet and confer with you to determine if there is a reasonable way to locate additional documents responsive to this Request, beyond those containing the term "exclusive dealing provisions." On our July 9th teleconference, we reiterated our position that it would be unduly burdensome for us to attempt to identify additional documents that "relate" to "exclusive dealing provisions" without further clarification. We asked if you had included proposed search terms that would help target the additional documents you are seeking in this Request. In your July 16th letter, you point to Proposed Search Terms 74 and 116, but those Proposed Search Terms are too broad to narrow the focus of this Request.

Request No. 46

As we explained on our meet and confer, we objected to this Request largely on the basis that it seeks all documents Dealerships may have received from any source that contain any reference to Vendor Application and/or DMS market share. We appreciate that you are apparently now willing to limit the Request to just the DMS market, per your July 16th letter.  At this point, we can agree that, to the extent the agreed-upon custodians and search terms yield non-privileged documents wherein Dealership Plaintiffs refer to CDK and/or Reynolds' market share in the DMS market, those documents will be produced. Please advise if you are agreeable to this.

Request No. 47

On our July 10th meet and confer, we explained that this Request, as currently worded, is vague, broad, and unduly burdensome, as it asks for all documents (including promotional

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 3

materials) where CDK, Reynolds, or any Vendor makes any comparison to any competing product. This would require Dealership Plaintiffs and their counsel to review essentially every document or communication that Dealerships have received from CDK, Reynolds, or Vendors. Since it appears you are unwilling to narrow this Request in any meaningful way, we are at an impasse.

Request No. 51

To the extent that agreed-upon custodians and search terms yield non-privileged documents wherein Dealership Plaintiffs have discussed NADA or AIADA guidelines on "data security," those documents will be produced. Plaintiffs continue to object to the breadth of this request to the extent that it would demand Dealership Plaintiffs to produce all correspondence from NADA, AIADA, or from any other Dealership association that concern only "data" in the abstract or merely the use of data from any DMS in the day to day operations of Dealership Plaintiffs' business.

Request No. 84

To the extent the agreed-upon custodians and search terms yield non-privileged documents wherein Dealership Plaintiffs refer to Defendants' conduct as "anticompetitive" or "harmful to competition" in the DMS market or the DIS market, those documents will be produced. Please advise if you are agreeable to this approach.

Request Nos. 85, 96

We stand by our written objections to these Requests. These Requests improperly demand that Dealership Plaintiffs produce all documents that support their claims before discovery is substantially complete.

Request No. 95

To the extent the agreed-upon custodians and search terms yield non-privileged documents wherein Dealership Plaintiffs refer to the February 2015 agreements between CDK and Reynolds, those documents will be produced. Please advise if you are agreeable to this approach.

Request No. 100

To the extent the agreed-upon custodians and search terms yield non-privileged communications between Dealership Plaintiffs and potential class members regarding this litigation, those documents will be produced. Please advise if you are agreeable to this approach.

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 4

### d. Requests for Clarification

<u>Agreements to Produce "Subject to and Without Waiving" Objections</u>

Unless otherwise indicated, we are not intentionally limiting our Responses based on our objections.

<u>Request No. 30</u>

To the extent they exist and are within Dealership Plaintiffs' possession, custody, and control Dealership Plaintiffs intend to produce documents "sufficient to show whether a Vendor or Data Extractor acts, or have ever acted, as Dealership Plaintiffs' agent with respect to accessing Dealership Plaintiffs' own data on a Reynolds or CDK DMS" through a production of pre-existing records such as contracts, emails to the extent that agreed upon custodians and search terms yield non-privileged documents. Dealership plaintiffs continue however, to object to the extent that this request appears to seek all communications between Dealership Plaintiffs and Vendors or Data Extractors.

<u>Requests Nos. 33, 34, 35, 36, 48</u>

As to Request No. 34, to the extent they exist and are within Dealership Plaintiffs' possession, custody, ad control, Dealership Plaintiffs will produce documents sufficient to show all up-front, initial (non-recurring) and monthly fees each Dealership Plaintiff has paid for DMS services during the Relevant Time Period.

As we indicated in our meet and confer, Request Nos. 33, 35, 36, and 48, as worded, appear to cover essentially every document in the Dealerships' possession, custody, or control that has anything to do with DMS services. We have already agreed to produce DMS contracts/agreements and categories of related documents in response to Request Nos. 2-4. During our meet and confer, we asked you to clarify what additional categories of relevant documents, if any, are sought by these Requests. Since you have not done so, we stand by our objections and refuse to produce anything beyond what we are already producing for Request Nos. 2-4.

<u>Requests Nos. 39, 43</u>

We stand by our objections as indicated in our written Responses.

<u>Requests Nos. 40, 42, 44</u>

As to Request 40, Dealership Plaintiffs reiterate their objection that the documents sought by this request are subsumed within Requests 26 and 38, for which Dealership Plaintiffs have already offered to produce responsive documents. With regard to Request 42, Dealership

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 5

Plaintiffs stand on their objections that this request is overbroad, unduly burdensome as to any documents not subsumed within Request 2-4, 38 and Interrogatory 2. Dealership Plaintiffs state that such documents are subsumed within Requests 2,3, 38 as well as Interrogatory no. 2. However, as CDK believes that a request for quote or request for proposal from a competing DMS provider issued by a named dealership is responsive to Request 44, but not to Request 38, Dealership Plaintiffs will produce these documents.

Requests No. 66, 69, 70, 73, 91

In response to part "(i)" of your proposal, we have already agreed to produce documents sufficient to show all up-front, initial (non-recurring) and monthly fees paid to Data Extractors and Vendors (on a per-application basis) during the Relevant Time Period, pursuant to your Request No. 4. As to part "(ii)" of your proposal, we will agree to produce non-privileged documents to the extent they are identifiable through agreed-upon custodians and search terms.

Request No. 58

With regard to your request for Dealerships' Cyber Liability insurance documents, such a request is bound up in CDK's irrelevant pursuit of documents relating to Dealerships' data security practices. Insofar as CDK contends that its challenged conduct is explained by any purported security-related concerns, CDK should have to demonstrate, based on its own, internal documents, that those concerns drove its decisions.

Request No. 64

While we confirm that documents responsive to Request No. 64 are encompassed in other requests to which we have agreed to produce documents, Dealership Plaintiffs also reassert that insofar as CDK contends that its challenged conduct is explained by any purported security-related concerns, CDK should have to demonstrate, based on its own, internal documents, that those concerns drove its decisions.

Request No. 97, 98, 99

With regard to your proposal that CDK will accept the Dealership Plaintiffs' responses to these Requests if they will also agree to produce non-privileged communications with the other MDL plaintiffs, defined here as Cox or its counsel, Authenticom or its counsel, and AutoLoop or its counsel, regarding any of the actions now consolidated into this MDL, including those filed by the Dealership Plaintiffs," we respond that Dealership Plaintiffs will agree to this modification of their responses.

*****

MILBERG TADLER PHILLIPS GROSSMAN LLP

Page 6

       We are agreeable to continuing to meet and confer with you on any remaining disputes regarding these Requests.

                           Sincerely,

                           Robert A. Wallner
                           Robert A. Wallner

CC:    Derek T. Ho
        Michael Nemelka

MILBERG TADLER PHILLIPS GROSSMAN LLP

# EXHIBIT 21

MAYER · BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 30, 2018

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

B<span>Y</span> E-M<span>AIL</span>

Michael N. Nemelka, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, *Cox v. CDK* (18-CV-1058) &
        *Loop v. CDK* (18-CV-2521)

Dear Mike:

I write to follow up on our July 23 telephonic meet-and-confer regarding Cox Automotive's ("Cox") and Loop, LLC's ("AutoLoop") (collectively, the "Individual Plaintiffs"[1]) responses to CDK's First Sets of Interrogatories and Requests for Production ("RFPs") (collectively, the "discovery requests"), and the portion of your July 26 letter regarding CDK's RFPs.[2]  By this letter, we summarize the parties' positions with respect to the discovery requests and respond in substance to the portion of Individual Plaintiffs' July 26 letter regarding CDK's RFPs.

## I.     Cox's General Objection 19 to CDK's RFPs; Cox's General Objection 10 to CDK's Interrogatories (*time period January 1, 2014 to the present*)

Cox improperly included a general objection in its interrogatory responses, purporting to limit its responses to information generated after January 1, 2014, a full year after the commencement of the agreed-upon general discovery period.   During our meet-and-confer, you indicated you would confirm in writing whether or not Cox will withhold responsive information on the basis that it pertains to 2013.  As previously stated in our July 17 letter and the meet-and-confer, in the event Cox does not agree to produce information from 2013, we will be at an impasse and will seek compliance with CDK's requests as written.

## II.     Individual Plaintiffs' Responses to CDK's First Set of Interrogatories

During our lengthy meet-and-confer, the parties addressed the Individual Plaintiffs' responses to CDK's First Set of Interrogatories, as outlined in our July 17, 2018 letter.  We summarize the status of the parties' respective positions with respect to these interrogatories below:

---

[1] We refer to AutoLoop, along with Cox, collectively as "Individual Plaintiffs," despite the fact that AutoLoop has now brought a putative class action against CDK, for consistency purposes and ease of reference.

[2] We will provide a follow-up to the search term portion of your July 26 letter by separate cover.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 30, 2018
Page 2

- Cox Response 1 / AutoLoop Response 1 (*Terms of Alleged Unlawful Agreement(s))*: You explained that you had responded in full based your present knowledge to date and a good faith investigation of the facts as currently known, and were not withholding any relevant non-privileged information by your response. You also confirmed that you would supplement your response at a later date in the event you discovered or otherwise learned of any new information. Based upon that representation, the parties are not at issue with respect to these interrogatories.

- Cox Response 2 / AutoLoop Response 2 (*Competitors*): Cox's position is that this interrogatory is overbroad and that it should not have to identify all of its competitors across all of its business lines. In the interest of finding a potential compromise this Interrogatory, we suggested narrowing the request so that Cox would only have to identify DealerTrack's DMS-provider competitors and the competitors of Cox's application-provider subsidiaries. We extend a similar offer to AutoLoop. It is our understanding that Individual Plaintiffs are considering these offers. We look forward to hearing from you on them either during or in advance of our meet-and-confer.

- Cox Response 3 (*DMS Switching*): You questioned the relevancy of Dealer-switching with respect to DealerTrack DMSs. We explained that this topic is plainly relevant, particularly to CDK's defenses. You stated that you would take this Interrogatory under consideration and would follow up with us on this. If you do not answer this interrogatory as written, we will be at impasse. Please be prepared to let us know if you intend to respond to this interrogatory as written either during or in advance of our meet-and-confer.

- Cox Responses 4-6, 8, 17 (*Various*): You confirmed that Cox and/or AutoLoop had responded in full based on your present knowledge to date and a good faith investigation of the facts as currently known, and were not withholding any relevant, non-privileged information by your responses. You also confirmed that you would supplement Cox and/or AutoLoop's responses at a later date in the event you discovered or otherwise learned of any new information. Based upon that representation, the parties are not at issue with respect to these interrogatories.

- Cox Response 7 (*DealerTrack Third-Party Access Restrictions*): The parties disagree as to the propriety of Cox limiting its response to Cox's "practices," rather than identifying the requested "actions." During the meet-and-confer, you explained that the Interrogatory as written was overbroad, but then later stated that the manner in which you responded was actually broader than what was requested. We asked Cox to reconsider its position and to answer this interrogatory as written and identify specific actions taken by You to block or limit Data Extractors' access to DealerTrack's DMS, as requested in the interrogatory. If it does not, we will be at impasse.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 30, 2018
Page 3

- <u>Cox Responses 8-13 / AutoLoop Responses 4-9</u>: The parties disagree as to the propriety of Individual Plaintiffs' limiting their responses to these interrogatories to "current" information rather than responding to the interrogatories as written (*i.e.*, to identify information from January 1, 2013 to the present). You shared with us your position that these interrogatories seek only current information because they are drafted in the present tense, unlike some of the other interrogatories. But we made clear during the meet-and-confer that CDK seeks fully responding information from January 1, 2013 to the present, as specified in Instruction No. 1 to CDK's Interrogatories (May 25, 2018). Indeed, Instruction No. 3 to CDK's Interrogatories also makes clear that the interrogatories are intended to be given a broad reading, consistent with the Federal Rules, not the more narrow one you've tried to apply. If the Individual Plaintiffs persist in advocating their "gotcha" position, especially now that we've left no doubt about the scope of the interrogatories, we will be at impasse.

- <u>Cox Response 14 / AutoLoop Response 10 (*Scripts and Executable Programs*)</u>: The parties dispute the relevance of and burden associated with producing the information requested in these interrogatories. You argue that Individual Plaintiffs' security practices are not at issue in the litigation and that information related to Individual Plaintiffs' security practices of which CDK and Reynolds were unaware, is not relevant. You further took the position that your identification and provision of Individual Plaintiffs' third-party access policies was nonetheless a sufficient response. We disagree. As explained during the meet-and-confer, Individual Plaintiffs have plainly put their security practices at issue by virtue of their allegations regarding the propriety of CDK's security initiatives. Indeed, information related to any measures taken by Cox and AutoLoop to obtain access to or obtain data from CDK's DMS through the use of automated scripts or executable programs, and how those scripts and executable programs work, is directly relevant to whether CDK's security concerns were objectively justified. Furthermore, these interrogatories are reasonable and not overly broad. You agreed to take these issues under consideration. If the Individual Plaintiffs do not answer this interrogatory as written, we will be at impasse.

- <u>Cox Response 15 / AutoLoop Response 11 (*Allegedly Unlawful/Unenforceable Terms of Dealer and Vendor Contracts*)</u>: The parties are at an impasse with respect to these interrogatories unless Individual Plaintiffs reconsider their position. Despite the fact that you admitted during the meet-and-confer that there are no more than half a dozen allegedly unlawful/unenforceable terms in the parties' agreements and that they are easily identifiable in the pleadings and/or briefing you identified, you nonetheless went to the trouble of submitting lengthy objections about them, including the objection that identification of the terms would be overly burdensome. If the Individual Plaintiffs do not answer this interrogatory as written, we will be at impasse.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 30, 2018
Page 4

- Cox Response 16 / AutoLoop Response 13 (*Alleged Restrictions on Data Use*):  During the meet-and-confer, we discussed the sources you identified in Individual Plaintiffs' responses to these interrogatories, and you explained that the requested information is primarily found in the Individual Plaintiffs' respective complaints.  There do not appear to be any remaining issues with respect to these interrogatories.

- Cox Response 18 / AutoLoop Response 14 (*Third-Party Access Fees*):  You agreed to confirm whether Individual Plaintiffs had responded in full based on your present knowledge to date and a good faith investigation of the facts as currently known, and were not withholding any relevant, non-privileged information by your responses.  We look forward to hearing from you.

- Cox Response 19 / AutoLoop Response 15 (*Frequency of Queries/DMS Access*):  Please refer to our July 27, 2018 letter, which addresses these interrogatories, where we proposed to revise these interrogatories to the following: "Identify the number of times that You or Your Data Extractors (when acting on Your behalf or at your direction) have accessed and/or queried data maintained on a CDK DMS through means other than approved 3PA access during each month since January 1, 2013." As requested in our July 27, 2018 letter, please let us know whether Individual Plaintiffs will fully answer the interrogatories as proposed.

- Cox Response 20 / AutoLoop Response 17 (*Manual Reporting*): After clarifying that, with respect to these interrogatories, the term "manual reporting" generally refers to a dealer's methods of preparing and transmitting data without allowing third party access and screen scraping (which we thought was already very clear to you, given the number of times this concept was discussed during the preliminary injunction hearing, the testimony about it that you and your co-counsel elicited, the discovery requests that your clients have served about manual reporting, and the numerous times this issue has been discussed in connection with prior discovery issues), you agreed to consider responding to these interrogatories in substance and promised to follow-up in writing.  We made clear during the meet-and-confer that we will be at impasse to the extent you have responsive information that you refuse to disclose.

- Cox Responses 21-23 (*Facts Supporting Allegations*): You confirmed that Cox had responded in full to these interrogatories based on your present knowledge to date and a good faith investigation of the facts as currently known, and were not withholding any relevant, non-privileged information by your responses.  You also confirmed that you would supplement Cox responses at a later date in the event you discovered or otherwise learned of any new information.  When asked whether you would consider providing additional specificity with respect to your responses, you responded that the information was readily and easily available to CDK in the complaints.  We will be at an impasse to

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 30, 2018
Page 5

the extent you fail to provide any more specificity in your responses to these interrogatories.

- <u>Cox Response 24 (<em>Damages</em>)</u>:  You refused to give any further specificity with respect to this interrogatory at this time, and stated during our meet-and-confer that you will supplement your response once expert discovery was under way.  We are at impasse.

### III.      Individual Plaintiffs' Responses to CDK's First Set of Requests for Production

During our meet-and-confer, the parties began discussing Individual Plaintiffs' responses to CDK's RFPs.  After covering the first 24 or so RFPs, Individual Plaintiffs proposed to send to us a written guide of their production offer that would obviate the need to walk through the remaining RFPs.  Thank you for your July 26 letter in that regard.

In your July 26 letter, you agree to produce "all non-privileged documents that are responsive to CDK's document requests and that are reviewed as a result of our agreement to run search terms through custodial repositories," subject to certain limitations with respect to relevance and search terms.

You first propose to limit your production to documents that pertain to applications "at issue" in this litigation.  We cannot agree to your proposal without understanding the criteria that Individual Plaintiffs are using to determine whether one of their applications is "at issue."  Please be prepared to explain this during our meet-and-confer tomorrow.

You also propose to limit your production of documents pertaining to applications to those documents relating to three specific issues.  While we appreciate your offer, CDK will not agree to such a blanket limitation without Individual Plaintiffs specifying to which particular RFPs they propose to apply this limitation.  Thus, we ask that you please be prepared, either before or during our Tuesday meet-and-confer, to provide CDK with a list of RFPs to which this limit would be applied.  Further, CDK is amenable to narrowing certain RFPs to address particular issues, but the issues outlined in your letter are too narrow.  That said, in the spirit of compromise, CDK is willing to revise certain RFPs to request documents related to or that reference the following specific issues (which closely tracks your proposal with slight modifications): (a) competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds; (b) data integration; or (c) access to DMSs, whether third-party or, in Cox's case, to DealerTrack DMSs.  To be clear, this offer is contingent on Individual Plaintiffs identifying the particular RFPs to which they propose to narrow in this regard.

You also propose to limit to three specific issues your responses to DealerTrack-related RFPs.  Again, while we appreciate your proposal, and without withdrawing the offers outlined in our July 27 letter, CDK will not agree to such a blanket limitation without Individual Plaintiffs specifying which particular RFPs they propose to apply this limitation.  Thus, we ask that you be

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 30, 2018
Page 6

prepared to provide CDK with a list of applicable RFPs either before or during our Tuesday meet-and-confer. Further, as partially addressed in our July 27 letter, CDK is amenable to narrowing certain DealerTrack-related RFPs to address particular issues, but the issues outlined in your letter are too narrow. That said, in the spirit of compromise, CDK is willing to revise certain RFPs to request documents related to or that reference the following specific issues (which closely tracks your proposal with slight modifications): (a) competition in the DMS market,[3] including any mention of CDK and/or Reynolds; (b) data integration; or (c) third-party access to DMSs, including DealerTrack's DMS. Again, this offer is contingent on Individual Plaintiffs identifying the particular RFPs to which they propose to apply their restriction.

Lastly, you ask us to explain the relevance of several specific requests. Please see our responses below:

- <u>Request No. 4 (Cox)</u>: We provided an explanation during our July 23 meet-and-confer. Please also refer to our July 27 letter.

- <u>Request No. 5 (Cox)</u>: As explained during our meet-and-confer, the information requested by this RFP is directly relevant to the nature of the DMS market and competition in it. Moreover, your point regarding AutoMate documents neglects to account for the fact that CDK agreed to produce in the *Authenticom* litigation the relevant documents from its production of AutoMate documents to the FTC.

- <u>Request No. 85 (Cox) and Request No. 55 (AutoLoop)</u>: "Syndication," for purposes of these RFPs is intended to mean "distribution." We are particularly interested in documents that are related to Cox or AutoLoop's distribution of data obtained from a CDK or Reynolds DMS to other third parties, including without CDK or Reynolds's authorization, issues that plainly are directly relevant to CDK's defenses.

- <u>Request No. 86 (Cox) and Request No. 56 (AutoLoop)</u>: Please see directly above for our explanation of what "syndication" means. Additionally, we are interested in documents requested in these RFPs for the same reasons as discussed directly above.

- <u>Request No. 87 (Cox) and Request No. 57 (AutoLoop)</u>: The documents requested by these RFPs are directly relevant to CDK's defenses, and particularly to data security issues. Nonetheless, in the interest of finding a potential compromise for these RFPs, we propose limiting this RFP to: (a) operative policies, guides, and standards for data

---

[3] The term "DMS market" is used throughout this letter and is intended to have the same meaning as the term is defined in CDK's response to No 12 of CDK's Responses and Objections to Authenticom's First Set of Interrogatories: "The 'DMS market,' to the extent there is such a thing . . . at a minimum includes all automotive dealers – new car and used, franchised or independent – that use a DMS in the operation [of] their business."

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 30, 2018
Page 7

integration with respect to any DMS, including those that were created or promulgated by the DMS provider; and (b) additional documents, if any, related to the creation and purpose of policies, guides and standards for data integration with respect to any DMS.

- <u>Request No. 96 (Cox) and Request No. 13 (AutoLoop)</u>:  It is our understanding that Cox (and potentially AutoLoop) started offering customers discounted "bundled" products/services and products/services that would provide "solution gaps" to customers, as a marketing strategy to compete with CDK.  Such documents are directly relevant to Individual Plaintiffs' ability to compete in the relevant markets.

- <u>Request No. 104 (Cox) and Request No. 69 (AutoLoop)</u>: In the interest of finding a potential compromise for these RFPs, we propose limiting this RFP to the three issues related to DealerTrack and the applications discussed above.  Please be prepared to let us know during or in advance of our meet-and-confer whether Individual Plaintiffs will respond in full to these RFPs as proposed.

We look forward to discussing these proposals during our next meet-and-confer on Tuesday, July 31.

Sincerely,

Andrew S. Marovitz

# EXHIBIT 22

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

File Number: 48KZ-266044

July 30, 2018

**VIA EMAIL**

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215
mnemelka@kellogghansen.com

      Re:    *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL
             No. 2817 (N.D. Ill.)

Dear Mike:

      I write this letter to follow up on certain issues we discussed during our telephonic meet and confer on July 23 concerning the Individual Plaintiffs' First Set of Requests for Production ("Requests" or "RFPs") to Reynolds.

      Any statements or proposed compromises contained in this letter are subject to and without waiver of Reynolds's general or specific objections to Individual Plaintiffs' RFPs. In particular, Reynolds does not intend to waive any arbitration rights through any statement or position taken in this letter, or through its participation in discovery in this MDL, and expressly reserves such rights.

      **1.**   **General Issues**

          **a.**   **Temporal Scope of Individual Plaintiffs' RFPs**

      There does not appear to be a dispute that, as a general matter, Jan. 1, 2013 is an appropriate cut-off for document discovery. Authenticom has already agreed to this cut-off. MVSC's own responses to Reynolds's document requests purport to apply a 2015 cut-off.

      There are good reasons for a January 1, 2013 cut-off. The Individual Plaintiffs' claims and allegations center primarily around an alleged 2015 agreement between CDK and Reynolds. 2013 is a full two years before that alleged agreement and encompasses sufficient materials regarding the background and context for the alleged 2015 agreement. And to the extent that Individual Plaintiffs are making claims based on other types of conduct or that require an understanding of other business practices, 5+ years of discovery is more than enough to understand those practices.

Michael N. Nemelka
July 30, 2018
Page 2

Furthermore, January 1, 2013 encompasses the entire statute of limitations period (four years for federal antitrust claims). The first filed Individual Plaintiff complaint was *MVSC*, filed on February 3, 2017. Therefore, the limitations period for the MVSC case extends, at most, to February 3, 2013, and the limitations period cuts off at even later dates for the other Individual Plaintiff cases. A cut-off of January 1, 2013 is therefore proportional to (and if anything, generous in light of) the needs of the case. *See, e.g., Greene v. Sears Prot. Co.*, 2017 U.S. Dist. LEXIS 43810, *13-14 (N.D. Ill. Mar. 27, 2017) (limiting discovery to the statute of limitations period, holding: "This Court agrees . . . that plaintiffs have provided no compelling argument that discovery going back earlier than [the applicable statute of limitations] is warranted."); *Wilson v. MRO Corp.*, 2017 U.S. Dist. LEXIS 18967, *4-5 (S.D.W.V. Feb. 10, 2017) (denying motion to compel production of documents pre-dating statute of limitations period); *Arenas v. Unified Sch. Dist. No. 223*, 2016 U.S. Dist. LEXIS 143338, *18 (D. Kan. Oct. 17, 2016) (limiting document discovery and testimony to statute of limitations period "to avoid unnecessary burden and expense.").

Reynolds is willing to consider certain one-off exceptions to this cut-off period for certain categories of documents or data, if there is a good reason for a longer date period that is proportional to the needs of the case and not unduly burdensome on Reynolds. However, for the vast majority of Requests, Reynolds believes January 1, 2013 is the appropriate cut-off.

### b. Searching Centralized Files

You asked whether Reynolds will be searching centralized files in response to the Individual Plaintiffs' RFPs. Reynolds confirms that it will utilize reasonably searchable centralized files likely to contain responsive documents for a given request, consistent with its General Objection No. 9.

### 2. Issues With Specific RFPs

### a. Additional RFPs For Which Reynolds Is Willing To Meet And Confer Regarding Search Terms (RFPs 2, 5, 18, 22, 23, 68)

Following our meet and confer discussions, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing) for the following RFPs: 2, 5, 18, 22, 23, 68.

Reynolds maintains its position that many of these Requests are irrelevant or have minimal relevance to the Cox and Autoloop cases, where Reynolds is entitled to greater protection from burdensome or irrelevant discovery requests because of its status as a third party. However, given that these RFPs may have some limited relevance to the Authenticom or MVSC cases, Reynolds is willing to proceed using reasonable search terms.

### b. RFPs Clarified By Individual Plaintiffs (RFPs 16, 19, 57, 58, 60, 61, 63, 80, 81, 82, 86, 87)

Michael N. Nemelka
July 30, 2018
Page 3

We asked for, and you provided, clarifications for a number of RFPs.  Set forth below are our responses to those clarifications.

- **RFPs 16 and 87 (Documents relating to "push" functionality).**  You clarified that RFPs 16 and 87 seek documents and communications reflecting Reynolds giving realtime DMS integration to its own applications, but something less to non-Reynolds applications.  With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFP 19 (Documents relating to time to set up RCI interface).**  You clarified that RFP 19 seeks documents and communications reflecting intentional delays or foot dragging by Reynolds with respect to setting up RCI interfaces for non-Reynolds vendors.  With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFPs 57-58 (Communications with Authenticom customers).**  Your July 26 letter references a list of vendor customers and a list of dealer customers.  With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFP 60 (Cost of capital, cost of equity, cost of debt, average cost of capital).**  During our meet and confer call you were unable to articulate the relevance of this Request.  In your July 26 letter, you state that the material requested will allow Individual Plaintiffs to understand the "financial health" of Reynolds.  This is not a relevant topic.  Reynolds's financial health does not help Individual Plaintiffs understand whether Reynolds engaged in any conduct that violated the antitrust laws, whether that conduct caused any harm to Individual Plaintiffs, or what specific amounts of damages were suffered by Individual Plaintiffs, if any.  You state that understanding Reynolds's financial health will shed light on "overcharges imposed by Reynolds, as enabled by Reynolds's anticompetitive conduct."  Reynolds disagrees.  The documents that are potentially relevant to understanding whether Reynolds engaged in anticompetitive conduct or imposed unlawful overcharges, are documents relating to Reynolds's actual alleged conduct or Reynolds's prices, not the categories covered by this RFP.

- **RFP 61 (Documents relating to economic value of DMS access).**  Reynolds's concern is that the concept of "economic value" as used in this RFP is so vague and broad that this RFP could essentially function as a catch-all because every Reynolds document potentially has some relation to economic value of data, data access or DMS access.  You clarified when we spoke that RFP 61 is not a "back door" that swallows up all RFPs.

Michael N. Nemelka
July 30, 2018
Page 4

Your July 26 letter provides additional clarification.  With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFP 63 (Fortellis).**  You clarified that although this RFP asks about CDK's Fortellis Automotive Exchange, it was not mistakenly directed at Reynolds.  Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

- **RFPs 80-81 (Industry reports).**  These RFPs seek documents and communications "concerning industry publications or industry reports with respect to data integration services."  I explained on our meet and confer call that, as phrased, the RFP may capture a large number of irrelevant, duplicative, and/or cumulative files.  For example, it is easy to imagine that many of Reynolds's document custodians might have subscriptions to a variety of industry publications or reports and receive daily, weekly or monthly emails consisting of nothing but those publications and reports.  There is no reason why Reynolds should have to collect and produce materials like this, and they do not bear on any claims or defenses.

  Your July 26 letter now states that these RFPs seek communications with or documents generated by industry publications or industry reporting organizations or interest groups relating to data integration services.  This does not solve the problem described above.  To the contrary, it broadens the RFP beyond its original wording to encompass materials relating to the vague concept of "interest groups."

  Reynolds proposes the following compromise for RFPs 80 and 81 instead: If it will resolve these requests, Reynolds will search for documents and communications exchanged with industry publications or industry reporting organizations regarding data integration services.  Reynolds will also search for discussions or analyses about industry publications or industry reports with respect to data integration services.  If this is acceptable, Reynolds is willing to proceed accordingly using agreed upon search terms (the negotiation of which is ongoing) with respect to documents from January 1, 2013 forward.

- **RFP 82 (Forecasts/budgets/etc. relating to integration).**  You clarified that RFP 82 seeks documents and communications referring to (not "relied upon") the categories of materials listed in the RFP.  With this clarification, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

Michael N. Nemelka
July 30, 2018
Page 5

- **RFP 86 (Latency).**  You clarified that this RFP relates to the time to send or receive data from DMS through RCI.  By contrast, RFP 19 seeks material relating to the time it takes to set up an RCI interface.  As with RFP 19, Reynolds understands that Individual Plaintiffs are seeking materials relating to allegedly intentionally slower service provided to non-Reynolds vendors.  With these clarifications, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

    c. <u>RFP Responses Clarified By Reynolds (RFPs 17, 73, 74, 83, 84, 85, 92)</u>

You asked for clarifications regarding certain of Reynolds's RFP responses.  Set forth below are our clarifications.

- **RFP 17 (Differences in functionality offered).**  RFP 17 asks for:  "All documents regarding functionality, data access, or level of data integration provided to one vendor but not offered to a competing vendor or vendors."  In response, Reynolds states that "it is not aware of any responsive documents." Our understanding is that all vendors that provide applications to dealerships have the opportunity to obtain the same functionality, data access, or level of data integration that is available to any other vendor in its category.

- **RFP 73 (Financial information relating to integration).**  This RFP requests materials "sufficient to show" certain profit, cost and revenue information relating to Reynolds's integration services. As set forth in Reynolds's response, with respect to the requested RCI profit and cost information, Reynolds does not fully allocate its costs and therefore does not have documents sufficient to show the requested information.  With respect to the requested revenue information, Reynolds has already provided RCI revenue information for the period 2011-2017.  You asked that we consider a 2009 date cut-off for this Request. Reynolds disagrees and believes that a cut-off of Jan. 1, 2013 is appropriate for the reasons described in Section 1.a.  Furthermore, Reynolds has already agreed to provide certain revenue information going back to 2011.

- **RFP 74 (RCI transactional information).**  This RFP requests materials "sufficient to show" certain sales data relating to Reynolds's integration services. As set forth in Reynolds's response, Reynolds has already produced all of its RCI pricing information from 2010-2017.  *See* REYMDL0037507. This contains information regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees). You asked that we consider a 2009 date cut-off for this Request.  Reynolds disagrees and believes that a cut-off of Jan. 1, 2013 is appropriate for the reasons described in Section 1.a.  Furthermore, the information contained in REYMDL0037507 goes back to 2010.

Michael N. Nemelka
July 30, 2018
Page 6

- **RFP 83 (DMS Connections).** RFP 83 requests documents sufficient to show the number of DMS connections established by Reynolds. As set forth in the response, Reynolds does not have documents sufficient to show the requested information. Reynolds does not track DMS connections because unlike a data broker, Reynolds does not do business with vendors in terms of individual "connections" to DMS.

- **RFPs 84 and 85 (Win/loss reports and reasons for switching).** In response to these RFPs, Reynolds stated that it was willing to meet and confer regarding search terms to identify documents relating to reasons why customers joined or left RCI. Reynolds also stated that it does not have "win/loss" reports for RCI. Notwithstanding this statement, Reynolds clarifies that if a document similar to a win/loss report for RCI is located through its custodial search, it will not withhold any such document from production.

- **RFP 92 (Cake pictures).** Reynolds is not aware of any documents responsive to this RFP.

### d. Requests relating to MVSC, CVR or EVR (RFPs 40, 46, 47, 53, 56)

Following our meet and confer discussions, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing) for the following RFPs: 40 and 53.

For RFPs 46 (Reynolds's ownership in CVR), 47 (CVR financial benefits), and 56 (CVR's Board of Directors), Reynolds already stated in its response that it is willing to meet and confer about search terms. You insisted that RFPs 46 and 56 should have no date limitation, and that the date cut-off for RFP 47 should be Jan. 1, 2011. Reynolds disagrees and believes that Jan. 1, 2013 is an appropriate cut-off for all of the reasons described in Section 1.a above. However, in the interest of reaching a compromise, if it will resolve these requests, Reynolds is willing to apply your proposed expanded temporal scope to a centralized file of CVR-related documents that has been maintained by Reynolds, which contains documents dating back to 1992.

### e. Industry Conferences and Phone Records (RFPs 65-67)

RFPs 65 through 67 seek documents that relate to or show attendance at industry conferences (RFP 65), records of phone calls between Reynolds and CDK (RFP 66), and records of phone calls involving Reynolds document custodians (RFP 67). These RFPs are overbroad, not proportional to the needs of the case, and request materials that would be irrelevant to the claims and defenses in this case.

Mere participation or attendance by Reynolds at conferences or conventions has nothing to do with the issues or defenses in this case. To the extent that documents were created in connection with conferences or conventions that actually relate to issues in the case, they will already be captured by dozens of other RFPs that have been served on Reynolds and CDK. To

Michael N. Nemelka
July 30, 2018
Page 7

take just one example, any materials regarding collaboration or exchange of information between Reynolds and CDK about blocking data brokers from accessing DMS would be captured by Authenticom RFP 12, even if the materials are created or used or exchanged at a conference. The same is true for dozens of additional RFPs that have been served on Reynolds by multiple parties in this case. It is not clear what relevant materials would be captured by RFP 65 that would not already be captured by other RFPs.

 With respect to phone records, you proposed narrowing RFPs 66 and 67 to request phone records of Reynolds's documents custodians reflecting phone calls with CDK. Whether in narrowed form or as originally drafted, the request for phone records is irrelevant and out of proportion to the needs of the case. The fact that CDK and Reynolds communicated with each other is not in dispute. For example, it is not in dispute that CDK and Reynolds communicated with each other leading up to the February 2015 written agreements. It is also not in dispute that CDK and Reynolds communicated with each other about CVR, their jointly owned EVR joint venture. CDK and Reynolds also had other joint ventures. There is no doubt that phone calls or other communications occurred during the relevant time period. What is important is not whether communications occurred, it is what the communications are about and whether anticompetitive agreements were reached that is important.

 It is not proportional to the needs of the case to force Reynolds to produce phone records in order to establish something that is already undisputed. These records are voluminous, and also contain a significant amount information about calls having nothing to do with CDK.

### f. Improper Use Of Information Submitted During RCI Certification Process (RFPs 90-91)

 When vendors apply for RCI certification, they provide certain information to Reynolds. RFP 90 seeks documents relating to Reynolds's policies about not using that information for Reynolds's own competing applications, and RFP 91 seeks documents relating to Reynolds's improper use of such information for its own competing applications.

 These RFPs seek information that is not relevant to the claims and defenses in this case. The complaints do not include any claims alleging that Reynolds improperly used information obtained from vendors through the RCI certification process. It would not be proportional to the needs of the case to required Reynolds to search for and produce such materials.

 Furthermore, to the extent that Individual Plaintiffs believe that the information Reynolds requests from vendors during the RCI certification process is unnecessary or that there is no valid reason for the requests, RFP 89 already addresses this. RFP 89 requests: "All documents and communications regarding how Reynolds determined what kinds of data, information, or technical specifications to require vendors to provide as part of the RCI certification process, including 'workflow' models, live demonstrations of the add-on applications, justifications for how add-on applications use each data element, and the add-on

Michael N. Nemelka
July 30, 2018
Page 8

application's security features." As stated in response to RFP 89, Reynolds is willing to meet and confer regarding search terms to locate documents responsive to this Request.

### g. Late-served RFP (RFP 93)

RFP 93 purports to incorporate by reference the 44 RFPs that the Dealership Class Plaintiffs served on Reynolds. RFP 93 is improper for several reasons.

Pursuant to the 5/7/18 Case Management Order (Dkt. 166), May 25, 2018 was the "[d]eadline to serve any additional, non-duplicative, coordinated discovery requests, search terms, and custodians." Individual Plaintiffs' RFP 93 was served nearly three weeks after May 25 and is therefore untimely.

RFP 93 is also improper because it is duplicative and not coordinated. The 44 Dealership Class Plaintiffs' RFPs purportedly incorporated into RFP 93 are not complementary to the 92 remaining Individual Plaintiffs' RFPs. Instead, a review of the 44 Dealership Class Plaintiffs' RFPs and the 92 Individual Plaintiffs' RFPs and the 89 Authenticom Requests that have been served on Reynolds thus far (225 Requests to Reynolds in total) exhibit an enormous degree of overlap, duplication and repetition. Numerous specific RFPs from the Dealership Class Plaintiffs cover substantially the same type of material as RFPs from the Individual Plaintiffs. Certain Dealership Class Plaintiff RFPs are nearly word-for-word identical to RFPs previously served on Reynolds by Authenticom.

Regardless, Reynolds has stated in response to RFP 93 that to the extent that Reynolds produces materials in response to the Dealership Class Plaintiffs' RFPs, it will also produce those materials to the Individual Plaintiffs.

Individual Plaintiffs expressed concern that some relevant documents might not be produced to the Individual Plaintiffs without RFP 93. Given the high degree of overlap between the various sets of comprehensive RFPs that have been served on Reynolds, and the fact that the Individual Plaintiffs and Dealership Class Plaintiffs have proposed a joint set of search terms to be run on the same set of agreed custodians for Reynolds, this appears to be a theoretical concern rather than an actual problem. If Individual Plaintiffs can identify a specific type of document that it believes will not be produced unless Reynolds responds to RFP 93, Reynolds is happy to discuss it with the Individual Plaintiffs.

Michael N. Nemelka
July 30, 2018
Page 9

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227864704.1

# EXHIBIT 23

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 30, 2018

<u>B</u>Y <u>E-M</u>AIL

Matthew D. Provance
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

Michael N. Nemelka
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        <u>MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)</u>

Dear Mike:

I write in follow-up to our July 19, 2018, meet-and-confer regarding non-Dealer Plaintiffs' (Cox, AutoLoop, MVSC, and Authenticom) ("Plaintiffs") May 25, 2018, requests for production ("RFPs" or "Requests") to CDK Global, LLC's ("CDK").

**Responsive Time Period**

<u>*Responsive Time Period for Certain Cox, AutoLoop, MVSC Discovery:*</u>  As discussed during our meet-and-confer, CDK's responses to certain Requests (2, 3, 4-6, 8, 16, and 26) seeking documents related to negotiations with Plaintiffs Cox, AutoLoop, and MVSC related to their participation/possible participation in the 3PA program include date limitations of January 1, 2015 (for Cox and AutoLoop) and January 1, 2014 (for MVSC) based on the timing of when those negotiations began.  Plaintiffs challenge those limitations, seeking responsive documents from CDK back to 2013 and, in some cases, 2011.  But at the same time, these three Plaintiffs maintain that *their own* productions should be limited across-the-board—not just for certain document requests—to 2014 to the present (Cox and AutoLoop) and 2015 to the present (MVSC).[1]  There is no justification for Plaintiffs' inconsistent positions on what the relevant time period should be, and there is no basis for imposing a broader, more burdensome period on CDK for Cox, AutoLoop, and MVSC-related discovery than those Plaintiffs are willing to

---

[1]      *See* Cox Gen. Obj. No. 10; MVSC Gen. Obj. No. 11.  AutoLoop's written responses to CDK's requests for production state that "[u]nless otherwise stated, AutoLoop's response will relate to the time period January 1, 2013, to the present," AutoLoop Gen. Obj. No. 11, but this is illusory and misleading because AutoLoop apparently is only willing to run ESI search terms from January 1, 2014 to April 9, 2018.  *See* Attachment to  07/12/2018 Email from D. Guarnera to B. Miller and M. Provance.

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 2

accept. If Plaintiffs will agree to the same for their own discovery responses, then CDK will agree to a general cut-off of January 1, 2013 for Requests 2, 3, 4-6, 8, 16, and 26.[2]

_Pre-2013 Discovery:_   Plaintiffs (including Authenticom itself) are now seeking to reopen the general discovery cut-off of January 1, 2013 (with certain exceptions) that the parties agreed to following extensive meet-and-confer discussions in _Authenticom._ In particular, Plaintiffs seek documents and data back to 2011 for certain Requests (2, 3, 4, 43, 44, 46, 54) and discovery of CDK's pricing, cost, revenue, profit, and other categories of financial and other information well into the _2000s_ or even earlier (_see_ Requests 64, 81-93). We refer you to (and incorporate) our recent correspondence with the Dealership Class Plaintiffs on this issue, which reiterates why we believe 2013 is the appropriate cut-off for the vast majority of discovery in Plaintiffs' cases and the MDL overall, and why it would be inefficient and disproportionate for CDK to retread discovery issues that it has already covered (_e.g._, sales transactional data) based on the agreed-upon time periods in _Authenticom_ simply because Plaintiffs (including Authenticom) now seek substantially the same discovery from a broader time period. _See_ 07/25/2018 Ltr. from M. Provance to R. Wallner at 1-3.[3] We would also point out that MDL Plaintiffs have all consistently taken the position that _their own_ discovery obligations—including discovery related to their damages claims—should be limited according to cut-off dates of January 1, 2013 or later.

During our meet-and-confer, you argued that extra years of discovery, particularly for CDK's financial data (which CDK is already providing back to 2011 instead of 2013), are now necessary because claims have been asserted on behalf of Dealer and Vendor putative classes. As it relates to the appropriate relevant time period for discovery, we believe that is a distinction without a difference. The Vendor and Dealer putative classes' damages claims are similarly limited, at most, by the four-year limitations period (just like Authenticom). And, to the extent that the putative Vendor and Dealer putative classes will rely on CDK's financial data, CDK is already providing such data back to 2011—providing a "clean period" of at least three to four years before any alleged anticompetitive conduct by CDK.

Therefore, for the reasons noted above, among others, we are not inclined revisit the general 2013/2011 cut-offs that we negotiated with you in connection with the _Authenticom_ discovery requests. However, as you know, CDK also has agreed to search for discovery from earlier periods on discrete issues (_e.g._, documents, communications, or statements regarding third-party access to CDK's DMS and documents related to "SMART-R") through the use of limited search terms (from among those search terms already proposed) and custodians. If Plaintiffs have

---

[2]     Moreover, for the reasons discussed below, there is no reason to expand the responsive time period back to 2011 for Requests 2, 3, or 4, as you demanded during our meet-and-confer.

[3]     Among other things, January 1, 2013, is several months beyond the applicable limitations period for Plaintiffs' claims. Our July 25 letter to Mr. Wallner cites authority for the proposition that courts routinely recognize the applicable limitations period as a primary if not dispositive factor in defining the relevant time period for discovery in complex civil litigation. In addition to those cases, we also direct you to: _Greene v. Sears Protection Co._, 2017 WL 1134484, at *5 (N.D. Ill. Mar. 27, 2017).

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 3

proposals for other one-off categories of documents sought by their Requests, we are willing to consider making additional exceptions if warranted.

## Specific Requests for Production

Below, we provide further responses to disputed Requests discussed during our July 19 meet-and-confer. Any offers to produce additional categories of documents are subject to and without waiver of CDK's general and specific objections set forth in its initial written responses dated June 22, 2018, and are contingent on resolving the parties' disputes as to the identified Requests.

*Request 1 (3PA Contracts):* CDK maintains that this Request (originally served as Authenticom RFP 43) is overbroad and unduly burdensome, and CDK's existing commitment to producing documents sufficient to show any material variation in its 3PA contracts, as well as the current version of its standard 3PA contract, is sufficient notwithstanding that Plaintiff AutoLoop now purports to represent a putative class of Vendors. Nevertheless, in the interest of finding a potential compromise for this Request, to the extent that any 3PA program participants have entered into 3PA/Managed Interface Agreements with CDK on or after January 1, 2013 that vary from CDK's standard contract with respect to any of the provisions that are being challenged by the AutoLoop putative class (*i.e.*, the alleged "exclusive dealing" and "price secrecy" provisions), CDK will separately produce those 3PA/Managed Interface Agreements. Please let us know if this would resolve our dispute.

*Request 7 ("Better" 3PA Pricing):* As you know, Cox's allegations that another 3PA member receives "better" pricing than Cox are based exclusively on the terms of CDK's February 2015 3PA agreement with Reynolds—which Cox already has (*see* CDK-0000014-39). CDK is also producing non-privileged documents related to the negotiation and drafting of the CDK-Reynolds 3PA agreement, including any "pricing" terms. Moreover, as we discussed during our meet-and-confer, CDK has already produced structured data (CDK-0701423-49) sufficient to show monthly prices paid by all 3PA members for data integration services. CDK disputes Cox's allegation that other 3PA members receive "better" pricing than Cox for comparable services, so the only way that CDK can reasonably respond to this Request is by producing the objective data on pricing that it has already produced.

*Requests 11-15 (3PA "Categories"):* You asked us to confirm whether documents that are responsive to these Requests would be produced from non-custodial sources. Of course, we have not determined where every document potentially responsive to Plaintiffs' requests may located. To the extent we identify non-custodial sources where responsive documents are reasonably likely to be found, they will be searched (just as CDK has done, and is doing, for all document requests in this litigation). That said, for the majority of Plaintiffs' Requests (including 11-15) we would expect that responsive documents, if any, will be located in the files of agreed-upon custodians through the use of agreed-upon search terms (from among those search terms already proposed). Therefore, where we state below that CDK is prepared produce certain categories of documents "to the extent they exist and can be identified through a reasonable search," that is generally what we mean.

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 4

_Requests 19 & 20 ("Push" Functionality; Levels of Integrations):_ We explained the overbreadth of these Requests during our meet-and-confer. For example, as phrased, Request 19 literally seeks every piece of data that might be generated by any application that receives a "push" notification through its integration with CDK's DMS. You agreed, and suggested that these Requests could be narrowed. In the interest of finding a potential compromise for these Requests, CDK is prepared to produce non-privileged documents reflecting analyses or consideration by CDK regarding whether to provide "push" notifications for CDK applications only or whether to offer different categories of functionality, data access, or level of data integration through the 3PA program to Vendor applications based on whether those applications compete with CDK applications, to the extent such documents exist and can be identified through a reasonable search. Please let us know if this would resolve our dispute.

_Request 22 (Certification Time):_ You explained that this Request seeks documents that discuss how long it takes to certify and deploy integrations requested by Vendors under the 3PA program. You asserted that such documents were relevant because some Vendors believe that CDK "drags its feet." We disagree that the amount of time it takes to certify and deploy 3PA integrations is relevant to any claim or defense in this litigation, and moreover, the amount of time it takes can be different for every Vendor depending on myriad factors, including factors that are outside of CDK's control. Nevertheless, in the interest of finding a potential compromise for this Request, CDK is prepared to produce documents related to any complaints by Vendors that the 3PA certification process is taking too long, to the extent such documents exist and can be identified through a reasonable search. Please let us know if this would resolve our dispute.

_Request 23 ("Project Peach"):_ We still fail to see the relevance of "Project Peach," a proposed venture between ODE (a joint venture between CDK and Reynolds) and Cox, which related to credit and contract processing but was never consummated. Your explanation that any and all documents related to Project Peach will purportedly reflect CDK and Reynolds's "views on data access" was not persuasive. Project Peach appears to have had nothing to do with CDK's alleged third-party DMS access restrictions, the use of so-called "independent integrators," or any other core issue that is relevant to the claims and defenses in this litigation.

_Request 24 & 25 (RTS):_ Following our discussion of these Requests during the meet-and-confer, in the interest of finding a potential compromise, CDK is prepared to produce documents related to (a) RTS's eligibility or possible participation in the 3PA program, and/or (b) RTS's access to CDK's DMS outside the 3PA program, to the extent such documents exist and can be identified through a reasonable search. Please let us know if this would resolve our dispute.

_Request 29, 31 & 37 (References to Cox, AutoLoop, MVSC):_ These Requests seek all communications—and all documents about those communications—between CDK and Dealers and OEMs that in any way mention Cox, AutoLoop, or MVSC, in any context. As we explained, these Requests are overbroad, as not every mention of Plaintiffs, in any context, is relevant to the claims and defenses in this litigation. Cox, AutoLoop, and MVSC seem to understand this concept when communications are requested from _them_ that mention or refer to CDK—they

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 5

objected to producing *any* such documents on the purported ground that the Requests are "overbroad." *See, e.g.*, CDK's RFPs 10 & 32 to Cox; CDK's RFP 8 to AutoLoop. CDK has already agreed to produce documents responsive to these Requests that relate to access to CDK's DMS by Cox, AutoLoop, and MVSC. That limitation should be sufficient to capture the vast majority of relevant communications. However, in the interest of finding a potential compromise for this Request, CDK is also prepared to produce additional documents that relate to (a) the way in which the above-referenced Plaintiffs access or use DMS data; (b) their possible participation in the 3PA program and/or 3PA certification status; and (c) their security and data practices, to the extent such documents exist and can be identified through a reasonable search. If there are additional, relevant topics that you would like us to consider, please let us know.

<u>Requests 35 & 36 (EVR Provider 3PA Certification):</u> As drafted, these Requests are overbroad. Nevertheless, in addition to documents sufficient to show the EVR providers who are enrolled in CDK's 3PA program and the contractual terms and conditions of their enrollment, which CDK has already agreed to produce, in the interest of finding a potential compromise CDK is prepared to produce documents related to negotiations with EVR providers for their participation in the 3PA program, including pricing terms, to the extent such documents exist and can be identified through a reasonable search. Please let us know if this would resolve our dispute.

<u>Request 38 (MVSC Executives):</u> We are formulating an appropriate search term for this Request and likely will make a proposal tomorrow, or Wednesday.

<u>Request 39 (Acquisition of MVSC):</u> Notwithstanding our objections to this Request, and that we fail to see the relevance of any contemplated acquisition of MVSC to the claims and defenses at issue, we are still confirming whether any non-privileged documents that are responsive to this Request exist, and expect to follow up shortly in that regard.

<u>Requests 43 & 44 (CVR Customer Base and Market Share):</u> We reiterate that this Request is better directed to CVR, not CDK.[4] However, in the interest of finding a potential compromise for these Requests, CDK is prepared to produce documents sufficient to show the number of CVR's customers for EVR services, on an annual basis, from 2013 to 2017, to the extent those statistics are maintained by CDK. Further, to the extent that a state-by-state breakdown of those statistics exists, it will be included in CDK's production. As we explained, CDK may not be able to conclusively determine, much less produce documents that are "sufficient to show," CVR's "share" of EVR customers. Any estimates of "share" would be based on CVR's own

---

[4]    This Request is among many seeking information most likely to be found in CVR's corporate records and in the files of its custodians. You again confirmed during our meet-and-confer that Plaintiffs intend to serve separate discovery requests upon CVR. Per your prior conversation with Britt Miller, we understand that Plaintiffs are "holding off" until the Court rules on CVR's pending motion to dismiss so as not to expend unnecessary resources in the event CVR's motion is granted. As Ms. Miller informed you during that same conversation, while CVR appreciates that plaintiffs are trying not to unnecessarily burden CVR, CVR will not be prejudiced by Plaintiffs' delay and it reserves all rights to seek relief from such discovery, including but not limited to an extension of the discovery schedule, based on, among other things, Plaintiffs' delay.

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 6

EVR customer count and varying estimates of the total number of available EVR users obtained from available data, including public data and third-party data. However, to the extent that such estimates exist and can be identified through a reasonable search—mostly, we would expect, through a review of custodians' files—CDK is prepared to produce them from 2013 to the present if it would resolve the parties' dispute. Please let us know.

*Request 46 (CVR Financial Information):* This is another Request that is better directed to CVR. To the extent CDK maintains CVR-related financial information, it is largely—as you pointed out—for purposes of consolidating CVR's financials into CDK's aggregated financial returns. As you know, CDK has already committed to producing documents sufficient to show its profit, projections, margin, and cost information at the individual product line level (*e.g.*, DMS), at the divisional level (e.g., Data Services), and at the management level (*e.g.*, the Retail Sales corporate level), or some combination thereof, to the extent such documents/information exist, back to 2011. We confirm that to the extent that CDK's profit, projection, margin, and cost information is broken out separately for CVR, it will be produced that way.

*Requests 47 & 48 (CVR "Deficiencies" and EVR Provider Product Quality):* Once again, these Requests are better directed to CVR. But, thank you for the example, CDK-0076911, of a document that Plaintiffs consider to be responsive to these Requests (and we note that the document also would be considered responsive according to the parameters of CDK's written responses to these Requests). We confirm that documents like CDK-0076911 will be produced to the extent that they exist within CDK's possession, custody, or control and can be identified through a reasonable search.

*Request 49 (EVR Delays and "Backlogs"):* As above, this Request is better directed to CVR. However, in the interest of finding a potential compromise for this Request, CDK is prepared to produce—in addition to "backlogs"—documents related to any complaints or concerns regarding delays by EVR providers in processing electronic vehicles registrations and titles, to the extent such documents exist, are within CDK's possession, custody, or control, and can be identified through a reasonable search. Please let us know if this would resolve our dispute.

*Request 51 (EVR Costs of Entry):* Thank you for clarifying that this Request seeks documents discussing or analyzing the licensing requirements, DMV requirements, or "entry" costs associated with providing EVR services (in states where private EVR providers are licensed to offer such services). As clarified, CDK will produce non-privileged documents reflecting CDK's analysis of these issues (EVR licensing requirements, DMV requirements, or "entry" costs), to the extent they exist, are within CDK's possession, custody, or control, and can be identified through a reasonable search. Please let us know if further discussion is needed.

*Request 53 (Reynolds's Interest in CVR):* As we explained, CDK has already produced the operative agreement between CDK and Reynolds concerning the formation and ownership structure of CVR (CDK-0001931), and a number of ancillary agreements pertaining to CVR (*e.g.*, CDK-0002076, CDK-0001964, CDK-0002137, CDK-0002143, CDK-0002010, CDK-0002126, CDK-0002145, CDK-0002130, CDK-0002110, CDK-0002041). Further, in response

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 7

to Plaintiffs' Request 52, CDK is producing documents sufficient to show CVR's ownership structure, including documents sufficient to show how CVR's revenues and profits are divided between CDK and Reynolds. We are not aware of any other documents in CDK's possession, custody, or control that relate to Reynolds's ownership interest in CVR, which it acquired in the early 1990s. But even if such documents exist, we do not believe they are relevant—the agreements speak for themselves and supersede any collateral documents or communications that might exist from the 1990s discussing Reynolds's ownership interest. Finally, if anyone should have to go looking for documents discussing how and why Reynolds acquired an ownership interest in CVR (which we do not agree is relevant or remotely proportional to the needs of the case) respectfully it should be Reynolds conducting a search of its own files for documents that speak to these issues, not CDK.

_Request 54 (CVR "Financial Benefits")_:  As discussed above, CDK is producing documents sufficient to show how CVR is structured and how CVR's profits are allocated. As further discussed above, CDK is also producing documents sufficient to show profit, projections, margin, and cost information, to the extent such information exists and is broken out for CVR, back to 2011. To the extent that this Request seeks documents about other types of "financial benefits" related to CVR, it is not clear what that even means. To the extent that Plaintiffs continue to seek "[a]ll documents and communications" that are in any way related to the CVR-related information that CDK is producing, CDK maintains that the Request is grossly overbroad and unduly burdensome.

_Request 55 (CVR Ownership Agreement)_:  We are fairly certain that CDK-0001931 is the "operative CVR ownership agreement between CDK and Reynolds," but will confirm this in the short term following additional investigation, which is still ongoing at this time.

_Requests 57 & 58 (CDK's "Involvement" in CVR)_:  The discovery sought through these Requests relates to MVSC's new allegations that CDK "controls" CVR, which (a) are pled in service of a Section 2 claim that has been dismissed once already and is subject to another pending motion to dismiss, and (b) contradict allegations in MVSC's prior complaints that CDK *and* Reynolds jointly "control" CVR. However, in the interest of finding a potential compromise for this Request, CDK is prepared to search for and produce documents that are responsive to these Requests—to the extent such documents exist and can be identified through a reasonable search—in the event that MVSC's Section 2 claim against CDK is not dismissed. Please let us know if this would resolve our dispute.

_Request 59 (CDK/Reynolds Communications re CVR)_:  This Request seeks all communications between CDK and Reynolds related to their joint venture, CVR, regardless of their relevance. CDK has already offered to produce such communications if they pertain CVR's operations (*i.e.*, what CVR does), its finances, and/or CVR's participation in CDK and Reynolds's respective 3PA and RCI programs. We are at a loss as to what other topics could remotely be relevant to the claims and defenses in this litigation. If there are additional, relevant topics that you would like us to consider short of "all" communications, we are willing to consider them.

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 8

_Requests 60 & 61 (AVRS Acquisition):_   Again, documents pertaining to CVR's acquisition of AVRS are better requested from CVR.  Moreover, the CVR-AVRS transaction is not at issue in this litigation and so these Requests for every document in any way related to the acquisition are substantially overbroad.   However, in the interest of finding a potential compromise for this Request, CDK is prepared to produce (a) documents related to the acquisition of AVRS that discuss the impact of the acquisition on CVR's ability to compete with other EVR providers, and (b) documents related any complaints received from Dealers (in other words, "communications regarding deficiencies or perceived deficiencies in AVRS's product and service levels") following the AVRS acquisition, to the extent such documents exist, are within CDK's possession, custody, or control, and can be identified through a reasonable search.  Please let us know if this would resolve our dispute.

_Requests 62 & 63 (CVR, AVRS & Applications' Use of "Independent Integrators"):_   As we discussed, CDK's response to these Requests—in which it agrees to produce non-privileged documents related to any agreements with "independent integrators" with respect to CVR, AVRS (after its acquisition by CVR), or CDK applications' access to data maintained on CDK or Reynolds's DMS, or any other DMS providers with policies restricting third-party access— tracks the offer that CDK made in response to Authenticom RFP 25, which is substantially similar except that it relates to _CDK_'s use of so-called "independent integrators."  To the extent that you believe, as you stated during our meet-and-confer, that there are unresolved issues surrounding Authenticom RFP 25, we suggest that these Requests (Authenticom RFP 25 and Plaintiffs' RFP 62) be discussed together during our next meet-and-confer.[5]

_Request 64 (CVR Board Materials):_   During our meet-and-confer we explained the overbreadth problems with this Request, including that it seeks "[a]ll documents related to CVR's Board of Directors" (In what respects? Are you seeking their personnel files?) from literally the beginning of time and "[a]ll communications between or among CVR's Board of Directors" on any topic or subject matter—_e.g._, whether they are going to the annual Christmas party, etc.   You acknowledged during our meet-and-confer that the Request was overbroad.  CDK's written response already commits to producing non-privileged documents sufficient to show the composition of CVR's Board of Directors, CVR Board of Directors meeting minutes, and materials distributed to CVR Board members in advance of Board meetings, to the extent those documents exist within CDK's possession, custody, or control.  If there are specific, additional relevant topics that are subsumed within this Request, we believe that it is Plaintiffs' responsibility to identify them for us.

_Requests 65 & 66 (Communications with Authenticom Customers):_   Thank you for identifying the documents produced by Authenticom at AUTH_00045915, AUTH_00045922, AUTH_00009614, and PHX-97.   They appear to identify hundreds of purported Vendor

---

[5]       On our July 19 call, you also accused me of mischaracterizing the record of meet-and-confer discussions and correspondence regarding Authenticom RFP 25.  If that is still your position, please explain how you think I have mischaracterized the record or correspondence.  We have looked into it following our call and believe our representations were accurate.

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 9

customers and thousands of purported Dealer customers. CDK maintains that producing all communications with hundreds of individual Vendors and thousands of individual Dealers that in any way relate to "data integration services" or "data access," in any context, is overbroad and unduly burdensome. Moreover, it appears to us that this Request seeks additional document discovery on behalf of Authenticom well after the March 23, 2018, deadline established by Judge St. Eve during the MDL consolidation proceedings (Dkt. 43). Can you explain to us why this Request was not served previously? Provided that we receive a satisfactory response, in the interest of finding a potential compromise for these Requests, CDK would be prepared to produce responsive documents with the following limitation: To the extent that such documents exist and can be identified through a reasonable search, CDK will produce communications with the above-identified Dealers and Vendors related to their use (or potential or former use) of Authenticom for data integration services or data access. Please let us know if this would resolve our dispute.

_Request 68 (CDK Cost of Capital):_  It appears that Plaintiffs are withdrawing this Request, as you were unable to explain the basis for its relevance during our July 19 meet-and-confer and did not provide one in your July 26 follow-up letter.

_Request 69 ("Economic Value of Data"):_  In light of the clarifications that Plaintiffs provided regarding this Request during our meet-and-confer, we believe that documents responsive to this Request are subsumed within other discovery requests to which CDK is producing responsive documents. In other words, to the extent CDK reasonably can identify discussions of the vague and amorphous terms used in this Request like "the economic value of data" in business records reviewed in connection with this litigation, they are being produced.

_Request 70 (CDK "Valuations"):_  During our meet-and-confer, we explained why we do not believe that any "valuations" of CDK in connection with potential acquisitions are relevant to any claim or defense in this litigation. No issue has been raised about whether CDK could pay a judgment rendered in this litigation, nor does any party's alleged damages depend on CDK's market value. If there is a clear basis for the relevance of this Request, we have yet to hear it.

_Request 71 (Fortellis):_  The Fortellis Automotive Commerce Exchange is a new cloud-based technology platform created by CDK that allows Dealers, Vendors, third-party developers and OEMs to share data and software solutions through the platform using DMS-agnostic API specifications. Currently, CDK has not provided access to its DMS through these APIs. Thus, it is unclear what Fortellis has to do with the claims and defenses in this litigation or how requiring CDK to gather and produce "[a]ll documents" related to Fortellis, including all financial information, could be proportional to the needs of the case. We also note that Fortellis launched in March 2018, which is after the dates that we understand several Plaintiffs have proposed cutting off their own productions of responsive discovery (based on the dates of their complaints), and well after any alleged anticompetitive conduct as and between Reynolds. This appears to be a rank fishing expedition and we have yet to hear a plausible explanation for why all documents related to Fortellis should be produced.

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 10

_Request 72 (Projections & Forecasts):_  As discussed during our meet-and-confer, we believe that the myriad financial information that CDK is already producing—including documents sufficient to show third-party profit, projections, margin, and cost information—in response to Authenticom RFPs 52, 53, 55, 57, 58, 59, and 60, among others, is sufficient to meet any legitimate need for the discovery sought by this Request.

_Request 73 (Industry Conferences):_  Plaintiffs confirmed that this Request is substantially duplicative—despite the Court's direction to the contrary—of the Dealership Class Plaintiffs' RFPs 37 and 38, which collectively seek all documents concerning any "industry conference." One difference may be that this Request is even broader than the Dealership Class Plaintiffs' RFPs in so far as it simply seeks "[a]ll documents" concerning any "industry conference," apparently regardless of whether CDK attended or considered attending the conference.  Beyond the grossly overbroad nature of this Request, as we explained during our meet-and-confers with the Dealers, to the extent that relevant events occurred at industry conferences (_e.g._, the April 2016 discussion between Mr. McCray and Mr. Cottrell mis-described in several Plaintiffs' complaints) or relevant documents were created or disseminated by CDK in connection with industry conferences, those documents likely will be produced in response any number of discovery requests that CDK has received that track the issues in this litigation and not the conferences themselves.  For example, non-privileged documents (if any) related to Mr. McCray's conversation with Mr. Cottrell—the alleged content of which, to be clear, we dispute—are being produced in response to Authenticom's RFP 10 ("[a]ll documents and communications referencing, relating to, or concerning Authenticom, DealerVault, or Steve Cottrell"), if not many others. The same is true for other potentially relevant documents, _e.g._, communications about SecurityFirst or the 3PA "refresh," such that the significant additional burden of responding to these Requests are not proportional to the needs of the case.

_Requests 74 & 75 (Telephone Records):_  During our meet-and-confer, Plaintiffs offered to limit these Requests.  As we understood the offer, Plaintiffs are willing to accept telephone records (to the extent they exist within CDK's possession, custody, or control) showing calls made between CDK and Reynolds documents custodians, going back to 2014.  While we appreciate Plaintiffs' offer, it does not make the telephone records relevant.  This is not a case (unlike, for example, _Urethanes_ or _Containerboard_) in which Defendants are accused of fixing prices or engaging in coordinated output restrictions such that it would make sense to examine how frequently Defendants communicated or whether they communicated during or in proximity to allegedly parallel price announcements, plant closures, etc.  Thus, we appear to be at an impasse regarding these Requests, and CDK does not intend to respond to them.[6]

---

[6]      In addition, please be advised that the information CDK has in its possession, custody, or control that may be responsive to these Requests is extremely limited.  CDK maintains access to telephone records for employee landline telephone numbers going back, at most, two years.  For CDK employees who are on a CDK-sponsored plan with their mobile carrier (AT&T, Verizon, and until 2016, Sprint), CDK's access to telephone records is much more limited.  Of course, additional records may be maintained by the carrier—but CDK does not know what records are maintained by each carrier nor can it represent that such records exist.

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 11

*Request 78 ("Secure the DMS" Dashboard Reports):*   As we explained, the "Secure the DMS" Dashboard Reports subject to this Request were generated by CDK employees periodically from information primarily maintained in CDK's Dealer Data Exchange ("DDX") database, which was included in CDK's production of structured data at the Bates numbers listed in CDK's written response to this Request.  To the extent that Dashboard Reports are identified in the custodial files that CDK is searching and reviewing to respond to Plaintiffs' discovery requests, we confirm that the Reports will be produced.  We have not located any central file or repository that purports to contain all "Secure the DMS" Dashboard Reports, but to the extent such file or repository exists we will consider producing its contents to the extent not duplicative of documents that CDK has already produced or is producing.

*Request 79 (ReverseRisk):*   This Request seeks "[a]ll documents regarding access by ReverseRisk to CDK's DMS platform," so every single document, email, data transmission, etc. that relates to ReverseRisk accessing CDK's DMS is requested, without any limitation.  While that is grossly overbroad, CDK has already agreed to produce the Managed Interface Agreement and Statement of Work between CDK and ReverseRisk.  Your July 26 letter asserts that additional documents and communications regarding ReverseRisk's access to CDK's DMS are relevant because CDK purportedly "whitelisted" ReverseRisk and allowed it to use Authenticom to access data.  We disagree with your characterizations, but in the interest of finding a potential compromise for this Request CDK is prepared to produce additional documents related to this issue—the purported "whitelisting" of ReverseRisk in connection with its use of Authenticom to access CDK's DMS, to the extent such documents exist and can be identified through a reasonable search.  Please let us know if this would resolve our dispute.

*Requests 81-82, 84-86 (Additional Financial Information):*   As discussed during our meet-and-confer, we believe that the myriad financial information that CDK is already producing in response to Authenticom RFPs 52, 53, 55, 57, 58, 59, and 60, among others, is sufficient to meet any legitimate need for the discovery sought by these Requests.

*Request 83 (Sales and Marketing Plans):*   Despite the grossly overbroad nature of this Request, and notwithstanding that it is duplicative of several Authenticom RFPs seeking largely the same categories of sales, marketing, and financial information, in the interest of finding a potential compromise for this Request CDK is prepared to produce responsive documents from 2013 to the present to the extent they are identified in custodial files through the use of agreed-upon search terms (from among those search terms already proposed).  Please let us know if this would resolve our dispute.

*Requests 87 & 88 (DMS, 3PA, DMI & IntegraLink "Valuations"):*   This Request seeking "valuations" of CDK's DMS, 3PA, DMI, and IntegraLink business lines appears to be no more relevant than Plaintiffs' RFP 70, discussed above, which seeks "valuations" of CDK as a whole.  CDK objects for largely the same reasons.  Further, during our meet-and-confer, you asserted that valuations of CDK's data services businesses were relevant to showing a motive to conspire.  What potential motive would any "valuations" of those business lines reveal that would not be

Michael N. Nemelka
July 30, 2018
Page 12

reflected in the financial results—*i.e.*, revenue, profits, costs, projections—that CDK has already committed to producing?

*Requests 89 & 90 (Industry Publications):*  CDK maintains that these Requests—which seek all documents and communications relating in any way to industry publications or reports that touch on "data integration" or DMS services—are overbroad.  However, in the interest of finding a potential compromise for these Requests, CDK is prepared to produce responsive documents from 2013 to the present that reflect CDK's analysis, commentary, or discussion of data integration of DMS services apart from the publications themselves, to the extent such documents exist and can be identified through a reasonable search. (For example, under CDK's offer, an otherwise blank email attaching an industry publication would be non-responsive, but an email attaching the publication with additional commentary about it would be responsive.)  Please let us know if this would resolve our dispute.

*Request 91 (Projections – Reliance Material):*  As discussed above, CDK is already producing financial projections, including to the extent that projections are located in custodial files and identified through the use of agreed-upon search terms.  In the interest of finding a potential compromise for this Request, CDK is prepared to produce additional documents identified within those custodial files that reflect documents or information relied upon to create those projections.  Please let us know if this would resolve our dispute.

*Request 92 (3PA, DMI & IntegraLink Connections):*  Following our meet-and-confer discussion and in the interest of finding a potential compromise for this Request, CDK is prepared to produce documents sufficient to show the total number of Vendors and applications that have enrolled in the 3PA program, to the extent available, from 2013 to the present.  CDK will also produce documents sufficient to show the total number of DMS connections maintained in connection with data extraction services offered through CDK's former DMI and IntegraLink subsidiaries, to the extent available, from 2013 to the present.  Please let us know if this would resolve our dispute.

*Requests 93 & 94 (Data Integration "Win/Loss" Reports):*  As we explained, unlike for its DMS business, CDK does not maintain "win/loss" reports (or their equivalent) for its data integration business.  To the extent that there have been one-off reports—although we currently are not aware of any—analyzing the number of Vendors who join or leave the 3PA program during a given period, or gains or losses of DMI and IntegraLink customers, we would expect that such documents would be found in the files of agreed-upon custodians. To the extent such documents exist and are identified using agreed-upon search terms (from among those search terms already proposed), in the interest of finding a potential compromise for this Request, CDK is prepared to produce them from 2013 to the present.  Please let us know if this would resolve our dispute.

*Request 95 (3PA Request/Response):*  As clarified in their July 26 letter, Plaintiffs are seeking documents through this Request related to the "latency" of data integration through the 3PA program, *i.e.*, how long it takes for the 3PA interface to complete a requested data transaction once it is initiated by a Vendor application.  That is what we thought Plaintiffs were seeking,

Mayer Brown LLP

Michael N. Nemelka
July 30, 2018
Page 13

although there was some confusion about this during our meet-and-confer. CDK maintains that this Request is overbroad and implicates, if read literally, transactional-level detail from millions of data transactions that occur through the 3PA program interface. To the extent that this Request is instead seeking analyses of 3PA "latency" periods (as this Request is using the term), in the interest of finding a potential compromise CDK is prepared to produce such analyses, if any, if it would resolve the parties' dispute over this Request. Please let us know.

*Request 96 ("Push" Functionality):* Based on your July 26 letter, we understand that Plaintiffs are withdrawing this Request as duplicative of Request 19.

*Requests 98-100 (3PA Certification Requirements):* Following our meet-and-confer discussion and in the interest of finding a potential compromise for these Requests, CDK is prepared to produce (a) its operative policies, guides, and certification standards for the 3PA program, (b) additional documents, if any, related to creation and purpose of policies, guides, and certification standards for Vendor technical data submissions, and (c) additional documents, if any, that relate to the use of such technical data for competitive purposes or limitations on the use of such technical data for competitive purposes. Please let us know if this would resolve our dispute.

Sincerely,

*/s/ Matthew D. Provance*
Matthew D. Provance

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

729553811

# EXHIBIT 24

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 31, 2018

Matthew D. Provance
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

B**Y** E-M**AIL**

Michael N. Nemelka
K**ELLOGG**, H**ANSEN**, T**ODD**, F**IGEL** & F**REDERICK**, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Mike:

Thank you for your response to my June 14 and July 19 letters regarding Authenticom's responses to CDK Global, LLC's ("CDK") requests for production ("RFPs"), interrogatories, and requests for admission ("RFAs"). Based on your response, here is where things stand.

**Authenticom's Responses to CDK's RFPs**

*CDK RFP 2:* In your response, you state that Authenticom intends to produce documents that provide "even more information" than was requested through our offer for compromise regarding this Request. We will accept Authenticom's representation; however, we need Authenticom to identify the documents that are responsive to this Request in its production or, if they have not been produced yet, to produce them as soon as possible and identify the documents, by Bates number, when they are produced. To the extent that the documents are not produced until after August 6 and we determine that they fail to live up to Authenticom's representation, we also need an agreement that Authenticom will waive the August 6 motions deadline for issues related to this Request. If necessary, will Authenticom submit a stipulation to this effect? Please let us know during the meet-and-confer tomorrow.

*CDK RFP 51:* We anticipate discussing and finalizing our positions regarding this Request during tomorrow's meet-and-confer.

*CDK RFP 68:* It appears that we have resolved our dispute as to this Request.

**Authenticom's Responses to CDK's Interrogatories**

*CDK Interrogatories 4, 5, 9, 10, 11, 13 & 21:* You state that our July 19 letter does "do[es] not identify any specific insufficiencies with Authenticom's interrogatory responses." That is simply not accurate. We explained that Authenticom's "amended" interrogatory responses do not address the deficiencies that we have previously identified; for most of them Authenticom has

Mayer Brown LLP

Michael N. Nemelka
July 31, 2018
Page 2

just added a throw-away sentence to the end of the original response that does not meaningfully alter or expand upon the response. Here is a good example:

CDK Interrogatory 13: "Describe all steps that You take to ensure that third-parties who access or receive DMS data from You do so only as authorized by Dealers."

***Authenticom's Original Response***:
"Subject to and without waiving the foregoing objections, Authenticom's DealerVault platform allows the dealer to control what dealer data is sent to specific vendors of the dealer's choosing, as Authenticom demonstrated at the preliminary injunction hearing. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *2 (W.D. Wis. 2017) ("DealerVault provides an interface that allows dealers to monitor and control the data provided from its DMS to the vendors it uses. DealerVault is popular with dealers, who generally feel strongly that because they own their data, they should be able to control and monitor its use.")."

***Authenticom's June 22 "Amended" Response***:
"Subject to and without waiving the foregoing objections, Authenticom's DealerVault platform allows the dealer to control what dealer data is sent to specific vendors of the dealer's choosing, as Authenticom demonstrated at the preliminary injunction hearing. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *2 (W.D. Wis. 2017) ("DealerVault provides an interface that allows dealers to monitor and control the data provided from its DMS to the vendors it uses. DealerVault is popular with dealers, who generally feel strongly that because they own their data, they should be able to control and monitor its use."). Authenticom further states that it has designed the DealerVault database and import system so that they will not support the import of data beyond that which the dealer has authorized."

The underlined sentence is the only difference. It does not add anything of substance to the answer. We are now in an infinite loop of meeting and conferring about these interrogatories without making any progress. Authenticom has amended its responses and thus presumably believes them to be responsive. We disagree and thus consider the parties at impasse.

*CDK Interrogatory 25:* We are at an impasse.

**Authenticom's Responses to CDK's RFAs**

*CDK RFAs 3 & 4:* There is no mystery about these RFAs, which seek admission of very specific facts. Authenticom refuses to answer them as-is, with either "admitted" or "denied." Here again, we believe the parties have stated their respective positions and the parties are at impasse.

* * * * * *

We look forward to hopefully resolving the remainder of the above-identified issues tomorrow.

Mayer Brown LLP

Michael N. Nemelka
July 31, 2018
Page 3

Sincerely,

*/s/ Matthew D. Provance*
Matthew D. Provance

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

# EXHIBIT 25

| | |
|---|---|
| **From:** | Marovitz, Andrew S. |
| **Sent:** | Tuesday, July 31, 2018 8:24 PM |
| **To:** | Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL |
| **Cc:** | Miller, Britt M.; Ryan, Mark; Wayne, Natalie F.; Aundrea K Gulley; Brian T. Ross; Leo Caseria |
| **Subject:** | RE: In re DMS -- Discovery Letter |

Dear Dan:

During this afternoon's call, we left open one item on our end.  We promised to close the loop on it by tonight or early tomorrow morning, which is why we're writing now.

You asked whether CDK was requesting that Cox produce all documents responsive to Request for Production 4 or just those that Cox deemed "relevant" to the case.  Cox explained that, by relevant, it meant that it would produce all documents provided to the FTC that are related to its acquisition of DealerTrack from the files of its custodians that hit agreed-upon search terms.  We responded that we might be able to accept this, subject to agreement on the search terms, so long as the production included all of the hit-upon documents and also included all of Cox's HSR Form 4(c) documents, without regard to their location or whether they hit upon search terms.  I now have discussed this with my colleagues and can confirm that we would accept such a production based upon that agreement.

As my colleagues previously mentioned, and to be clear, by accepting that proposal, we do not suggest that this approach would be applicable to CDK's very different, proposed AutoMate merger documents, in light of the material differences between the two sets of requests, the far broader search terms being pressed by Cox and the other plaintiffs in the case, and the large number of documents those broader terms would hit.  In any event, CDK has made clear that it is willing to produce relevant documents in response to such a request, and it stands by that commitment.

That's it from our side.  We look forward to receiving by tomorrow night or very first thing Thursday morning, as agreed by the parties, your final positions on all outstanding issues from Cox/AutoLoop's side.  We've made some progress on our differences, but we now need to know, with clarity and finality, where the Individual Plaintiffs stand, so there are no misunderstandings about disagreements that need to be decided by the Court.

Thanks.

    - ASM

Andrew S. Marovitz (amarovitz@mayerbrown.com)
Mayer Brown LLP (www.mayerbrown.com)
71 S. Wacker Drive
Chicago, IL 60606-4637
tel: 312.701.7116
fax: 312.706.8651



**From:** Wayne, Natalie F.
**Sent:** Monday, July 30, 2018 3:15 PM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

In advance of our scheduled meet-and-confer tomorrow, please see the attached correspondence, which I send on behalf of Andy Marovitz.

---

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Wayne, Natalie F.
**Sent:** Friday, July 27, 2018 3:15 PM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

Please see the attached follow-up letter to our July 23 meet-and-confer, which I send on behalf of Andy Marovitz.

---

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Thursday, July 26, 2018 9:59 PM
**To:** Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy and Matt, please see the attached letter. We are available to discuss this coming Tuesday afternoon. Best, Dan.

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Tuesday, July 17, 2018 8:51 PM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>;

Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Mike, thank you for your letter and your note. With regard to CDK, one day's notice is not sufficient time to meet and confer on the many issues raised in your letter. However, we agree that discussions about the parties' RFP responses (both CDK and the non-dealer Plaintiffs) should take place this week. And we agree that discussions about CDK, Cox, and AutoLoop's search terms need to occur this week. Working around unavoidable conflicts that we have (*e.g.*, depositions and flights) for the people on our team who will lead these calls, we can make the following work: We can be available to discuss CDK's RFP responses on Thursday afternoon provided that Cox and AutoLoop can meet and confer on their discovery responses (please see the attached letter) on Friday afternoon and search terms on Friday (any time). As you previously noted that Kellogg had some availability issues on Friday, we are amenable to discussing search terms early or later in the day, depending on what works better for you.

Please let us know if Cox and AutoLoop will agree to proceed in this manner.

Thanks,
Matt

---

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

---

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Tuesday, July 17, 2018 5:50 AM
**To:** SERVICE-EXTERNAL-DMS-MDL
**Subject:** In re DMS -- Discovery Letter

Dear Britt and Brian,

Please see the attached letter regarding CDK's and Reynolds' RFP responses.

Thanks,
Mike


Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

---

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Information about how we handle personal information is available in our [Privacy Notice](#).

# EXHIBIT 26

| | |
|---|---|
| **From:** | Hughes, John [jhughes@milberg.com] |
| **Sent:** | Wednesday, August 01, 2018 12:58 PM |
| **To:** | FW-CLIENT-CDK-MDL-Team |
| **Cc:** | DMSTeam; Nemelka, Michael N.; Rudofsky, Benjamin L.; Dorris, Daniel V. |
| **Subject:** | DMS. Dealership Search term modifications and objections |
| **Attachments:** | In re DMS. CDK Proposed Search Terms for Dealer Class Plaintiffs - Dealer Plaintiffs Mods and Objs .docx; In re DMS. CDK Proposed Search Terms for Dealer Class Plaintiffs - Dealer Plaintiffs Mods and Objs .pdf |

Attached please find Dealership Plaintiffs' modifications and objections to CDK's Proposed Search Terms. We are available to meet and confer on these terms at your convenience.

John Hughes
Attorney at Law*
**Milberg Tadler Phillips Grossman LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
T: 212.594.5300
F: 212.868.1229
Jhughes@milberg.com

*Licensed in Michigan only

1

**CDK's Search Terms for Dealership Plaintiffs ESI – Dealership Plaintiffs' Modifications and Objections**

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 2 | (CDK OR Reynolds OR DMS OR or system) AND (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 3 | InDesign OR IDD | This search term is overly broad and burdensome as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 4 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv-01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | This search term is acceptable as drafted but is likely to pull mainly privileged communications. | |
| 5 | "Data Authorization" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | "CDK Data Authorization" |

---

[1] Owing to CDK and Dealership Class Plaintiffs' ongoing negotiation for document custodians, revisions of the foregoing search terms are based on evaluation of the substance of the search terms themselves, rather than an application of these terms to collected custodial ESI. Where proposed search terms do not appear to be linked to relevant documents, Dealership Plaintiffs have objected on this basis. Specifically, where proposed search terms appear to be targeted to information that Dealership Plaintiffs have not agreed to produce due to an open disagreement during the RFP meet and confer process, this is indicated in the comments column. Dealership Plaintiffs reiterate their position that discovery related to Dealership Plaintiffs' purported violations of cyber-security laws is improper; insofar as CDK contends that its challenged conduct can be explained by security-related concerns, CDK should have to demonstrate, based on its own, internal documents, that those concerns drove its decisions. The terms subject to this objection include search terms numbered 1, 2, 15 16, 20, 21, 22, 24, 25, 26, 27, 29, 30, 32, 34, 35, 43, 47, 52, 56, 61, 66, 82, 83, 84, 85, 88, 89, 90, 95, 96, 99, 100, 101, 103, 104, 110, 115, 118, 123, 132 and 134.

[2] Dealership Class plaintiffs reserve the right to make additional objections should any search term return voluminous nonrelevant, non-responsive results upon examination against a complete collection of Custodial ESI.

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 6 | "Dealer Management System" w/5 market | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ("Dealer Management System" w/5 market) AND CDK AND Reynolds |
| 7 | "Digital Motorworks" OR Integralink OR DMI OR "Digit Motor Works" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ("Digital Motorworks" OR Integralink OR DMI OR "Digit Motor Works") w/10 Integration |
| 8 | "Dms function*" w/20 (CDK OR Reynolds OR Dealertrack OR Cox) | This search term is acceptable as drafted | |
| 9 | "Dms menu*" w/20 (CDK OR Reynolds OR Dealertrack OR Cox) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 10 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | This search term is overly broad and burdensome and unacceptable as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term if possible. | |
| 11 | "Integrated Document Solutions" | This search term is acceptable as drafted | |
| 12 | "MDL 2817" OR "In re Dealer Management Systems Antitrust Litigation" | This search term is acceptable as drafted | |
| 13 | "Motor Vehicle Software Corporation" OR MVSC | This search term is acceptable as drafted | |
| 14 | "New Freedom" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | "new freedom data resources" |
| 15 | "nonpublic personal information" OR NPI | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 16 | "personally identifiable information" OR PII | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 17 | "Proprietary Data" | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 18 | "Query Builder" OR (QB AND Reynolds) | This search term is overly broad and burdensome and irrelevant as drafted. | |
| 19 | "Reynolds Certified Interface" OR RCI OR 3PA OR "third party access" OR "security first" OR securityfirst OR "third-party access" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | "Reynolds Certified Interface" OR RCI OR 3PA ~~OR "third party access"~~ OR ("security first" w/10 CDK) OR securityfirst ~~OR "third-party access"~~ |
| 20 | "secure web form" | This search term is overly broad and burdensome as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 21 | "sensitive personal information" | This search term is overly broad and burdensome as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 22 | "User Emulation" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 23 | ("Report Generator" OR "report scheduler") AND (schedule OR automat*) | This search term is overly broad and burdensome as drafted. This term also appears to be irrelevant. | |
| 24 | ((CDK OR Reynolds) w/20 DMS) AND data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 25 | ((code w/4 box) OR "code-on-the-box" OR push OR writeback OR (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 26 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) OR "write back") AND (protocol* OR polic) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

3

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 27 | (hostile OR foreign OR unauthorized OR independent OR "third party" OR thirdparty OR "3rd party" OR Authenticom OR DealerVault OR SIS OR SelectQu OR SelectQ OR "Superior Integrated Solutions" OR SIS OR Dominion OR StoneEagle OR ProQuotes) w/10 (access* OR integra* OR *extract) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 28 | (los* OR win* OR gain* OR churn* OR defect* OR cancel* OR (turn* w/3 over) OR turnover OR switch OR chang* OR mov*) w/15 (sale OR business OR contract OR customer OR vendor OR integrator OR DMS OR "dealer management system") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (los* OR win* OR gain* OR churn* OR defect* OR cancel* OR (turn* w/3 over) OR turnover OR switch OR ~~chang* OR mov*~~) w/~~15~~5 (~~sale OR business OR contract OR customer OR~~ vendor OR integrator OR DMS OR "dealer management system") AND (Contract or agreement) |
| 29 | (pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) AND data AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 30 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR access OR secur* OR priva*) w/20 (data)) AND (polic* OR practic*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 31 | ((Rey* OR "R&R" OR RR OR CDK OR ADP) w/20 (compar* OR better OR worse OR "no* good" OR more OR less OR close* OR open)) AND (DMS OR system) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((Rey* OR "R&R" OR RR OR CDK OR ADP) w/5 ((compar* OR better OR worse OR "no* good" OR more OR less OR close* OR open)) AND (DMS OR system)) |
| 32 | ((security OR Data) AND (standard* OR rule* OR guid* OR memo* OR report)) AND (NADA OR AIADA OR "National Automobile Dealers | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

4

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | Association" OR "American International Automobile Dealers Association") | | |
| 33 | ((Third w/3 Party) OR thirdparty OR "3rd party" OR OEM OR CDK OR Reynolds OR RR OR R&R) w/5 Proprietary | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 34 | ((Third w/3 Party) OR thirdparty OR "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK OR Reynolds OR RR OR R&R OR Dealertrack OR Cox OR DMS OR data OR "Dealer Management System") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 35 | ((unauthorized w/5 access) OR (not /5 authoriz*) OR ((express OR written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 36 | ((up w/3 front) OR "up-front" OR instal* OR initial OR month* OR recur* OR annual OR (set w/3 up) OR setup) w/20 (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((up w/3 front) OR "up-front" OR instal* OR initial OR month* OR recur* OR annual OR (set w/3 up) OR setup) w/20 (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay*) w/10 (DMS OR "Dealer Management System") |
| 37 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | This search term is acceptable as drafted | |
| 38 | (*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* ~~OR scrap*~~ OR pull* OR extract* OR access*)) ~~AND~~ w/10 ((CDK OR Reynolds OR Dealertrack OR Cox) AND (DMS OR "Dealer Management System")) |
| 39 | (*settle* OR assign*) AND (Lawsuit OR litigat* OR complaint OR alleg* OR claim* OR (legal w/3 (action OR proceeding)) OR MDL OR "multi district") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (*settle* OR assign*) AND (Lawsuit OR litigat* OR complaint OR alleg* OR claim* OR (legal w/3 (action OR proceeding)) OR MDL OR "multi |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | | district") AND Antitrust w/10 (DMS OR "Dealer Management System") |
| 40 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | This search term is acceptable as drafted | |
| 41 | ("Data element*" OR "data field*") w/20 ((CDK OR Reynolds) w/10 DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. | |
| 42 | ("tilt the table" OR (tilt w/3 table)) AND (CDK OR DMI OR "Digital Motorworks" OR "Digital Motor works" OR Integralink OR RR OR "R&R" OR "Reynolds" OR "security first" OR "securityfirst" OR "3PA Refresh" OR "Partner Program") | This search term is acceptable as drafted | |
| 43 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 44 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS OR "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) OR data) AND (Polic* OR practice) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. | |
| 45 | (Autosoft OR "PB Financial Systems" OR "Applied Computer Systems" OR ACS OR "Supreme Software" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) | This search term is acceptable as drafted | |
| 46 | (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) w/10 (DMS OR "Dealer Management System") |
| 47 | (breach OR hack OR attack OR data) AND (target OR "north korea" OR Sony OR "Community Health" OR Equifax OR Facebook OR DealerBuilt OR "New Hampshire")) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 48 | (CDK AND (rey* OR "R&R" OR RR OR Reynolds")) AND ("data exchange agreement" OR DEA) | This search term is acceptable as drafted | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 49 | (CDK AND (Reynolds OR "R&R" OR RR)) AND (coordinat OR conspir OR anticompet* OR antitrust OR tying OR tie OR tort*) | This search term is acceptable as drafted | |
| 50 | (CDK OR DMI OR "Digital Motorworks" OR "Digital Motor Works" OR Integralink OR 3PA OR "Partner Program" OR "Access Program") w/10 (agree* OR contract) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR DMI OR "Digital Motorworks" OR "Digital Motor Works" OR Integralink OR 3PA ~~OR "Partner Program"~~ OR "Access Program") w/10 (agree* OR contract) |
| 51 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | This search term is acceptable as drafted | |
| 52 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password OR pwd OR access OR credential*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 53 | (CDK OR Reynolds OR R&R OR RR OR DMS OR "Dealer Management System" OR Cox OR DealerTrack) AND (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* OR damage* OR disarm OR impair OR cripple OR defus* OR hamper OR imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR Reynolds OR R&R OR RR OR DMS OR "Dealer Management System" OR Cox OR DealerTrack) AND (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* OR damage* OR disarm OR impair OR cripple OR defus* OR hamper OR imped* OR restrain* OR circumscribe ~~OR (shut w/5 off) OR (turn w/5 off)~~) |
| 54 | (CDK OR Reynolds OR RR OR R&R OR ADP) w/20 (injur* OR damage* OR harm* OR hurt*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR Reynolds OR RR OR R&R OR ADP) w/~~20~~10 (injur* OR damage* OR harm* OR hurt*) |
| 55 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/~~15~~ (system**s** OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/~~20~~5 (data w/3 |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | | integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) |
| 56 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (perform* OR threat* OR break OR slow* OR breach OR destroy OR degrad* OR (data w/10 (corrupt* OR integrity)) OR (data w/10 security) OR complain* OR investigat*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 57 | (cede OR (give w/3 up) OR ((hand OR sign OR turn) w/3 over) OR relinquish OR renounce) AND (control OR power OR authority) AND (data OR system) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 58 | (compet* OR threat* OR challeng* OR loss OR lose OR losing OR superior* OR compar*) w/15 (DMS OR Drive OR Dash OR ODE OR integrat* OR app* OR solution* OR product OR service) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (compet* OR threat* OR challeng* OR loss OR lose OR losing OR superior* OR compar*) w/15 (DMS OR (CDK w/2 Drive) OR (CDK w/2 Dash) OR ODE OR integrat* OR app* OR solution* OR product OR service) |
| 59 | (Compet* w/20 harm*) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 60 | (contract* OR agree*) AND (term OR year* OR length OR period) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (contract* OR agree*) AND w/10 (term OR year* OR length OR period) AND (CDK OR Reynolds) |
| 61 | (data OR system OR DMS) w/20 (breach OR attack OR steal OR stolen OR hack* OR corrupt* OR cybersec* OR (cyber w/5 secur*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 62 | (data /3 integrat*) OR (data /3 extract*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (data /3 integrat*) OR (data /3 extract*) |
| 63 | (data AND integration) w/20 market | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 64 | (data OR access OR "third party" OR thirdparty OR "3rd party" OR integrat* OR extract*) AND (policy* OR guideline* OR rule* OR requir*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 65 | (dealer w/10 data) AND (retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (dealer w/10 ~~105~~ data) AND (retriev* OR ~~obtain~~ OR access* OR collect* OR transmit* OR poll* ~~OR scrap*~~ OR pull* OR extract*) AND (manual OR push OR FTP) AND (DMS OR "dealer management system" |
| 66 | ((declin* OR refus* OR ((will OR would) /3 not) OR won't) w/10 (authoriz* OR grant OR give OR allow OR share)) AND (login OR credential OR password OR pwd OR access) AND (Cox OR DealerTrack OR DMS OR Reynolds OR R&R OR RR OR CDK OR integrat* OR Authenticom OR DealerVault OR vendor*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 67 | (DMS OR "dealer management system" OR integrat* OR app* OR vendor OR CDK OR Reynolds OR Dealertrack OR Cox) AND (analy* OR forecast OR project* OR survey* OR evaluat* OR stud* OR (market w/3 share) OR (market w/3 condition*) OR profit* OR compet* OR market OR pric*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (DMS OR "dealer management system" OR integrat* ~~OR app* OR vendor~~ OR CDK OR Reynolds OR Dealertrack OR Cox) ~~AND~~ W/10 (analy* OR forecast OR project* OR survey* OR evaluat* OR stud* OR (market w/3 share) OR (market w/3 condition*) OR profit* OR compet* OR market OR pric*) |
| 68 | (DMS OR "dealer management system") /5 market* | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 69 | (DMS OR "Dealer Management System") AND (promot* OR rebate* OR discount* OR sale*) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 70 | (DMS OR "Dealer Management System" ) w/10 (agree* OR contract) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((DMS OR "Dealer Management System") AND (CDK OR REYNOLDS)) w/10 (agree* OR contract) |
| 71 | (DMS OR integrat* OR vendor*) w/10 cancel | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 72 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph)) w/10 (DMS OR "Dealer Management System") |
| 73 | (employee OR agent*) AND (agree* OR contract) AND ((permit OR allow OR access OR authoriz*) w/25 DMS) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 74 | (exclusiv*or sole OR only) w/20 (DMS OR CDK OR Reynolds OR R&R OR RR OR provider OR service* OR "dealer management system") | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 75 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap* OR integrat*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap* OR integrat*)) |
| 76 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (DealerVault OR Authenticom OR Integrat* OR vendor* OR (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap*))) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (DealerVault OR Authenticom OR Integrat* OR vendor* OR (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap*))) |
| 77 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) AND (Digital Motorworks OR Integralink OR DMI OR "Digit Motor Works") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) AND w/10 (Digital Motorworks OR Integralink OR DMI OR "Digit Motor Works") |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 78 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) w/15 (Rey* OR "R&R" OR RR OR Cox OR DealerTrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/5 (system OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "auto mate" OR SelectQu OR "SelectQ" OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) ~~w/20~~ w/5 (Rey* OR "R&R" OR RR OR Cox OR DealerTrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/5 (system OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "auto mate" OR SelectQu OR "SelectQ" OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop) |
| 79 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) w/20 (data OR access* OR integrat* OR 3PA OR "third party access" OR "partner program" OR "Access Program") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) ~~w/20~~ w/5 ~~(data OR access*~~ ~~OR~~ integrat* OR 3PA OR "third party access" ~~OR "partner program"~~ OR "Access Program") |
| 80 | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice*) AND ((pass w/5 through) OR passthrough OR shared OR sent OR "passed to" OR "passed on" OR "pass on") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice*) AND ((pass w/5 through) OR passthrough OR shared ~~OR sent~~ OR "passed to" OR "passed on" OR "pass on") AND (DMS OR 3PA) |
| 81 | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice*) w/20 (vend* OR integrat* OR appl* OR Authenticom OR SIS OR "Superior Integrated Solutions" OR InDesign OR 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice*) ~~w/20~~ w/5 (vend* OR integrat* OR appl* OR Authenticom OR SIS OR "Superior Integrated Solutions" OR InDesign OR 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") |
| 82 | (FTP OR "File transfer protocol") AND (push OR writeback OR (write w/5 back)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|-----|-------------|-----------------------------------|---------------------------------------------|
| 83 | (Gramm-Leach-Bliley) OR (Gramm Leach Bliley) OR GLB OR GLBA | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 84 | (hack OR steal OR misuse OR misapprop*) w/20 (data OR server OR information OR password OR pwd OR login OR credentials OR access OR DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 85 | (harm OR injur* OR disrupt* OR los* OR interrupt* OR cancel* OR end* OR stop*) w/15 (Reynolds OR R&R OR RR OR CDK) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (Service AND (harm OR injur* OR disrupt* OR los* OR interrupt* OR cancel* OR end* OR stop*)) w/15 (Reynolds OR R&R OR RR OR CDK) |
| 86 | (Integrat* OR vendor OR application OR app* OR customer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 87 | Lawsuit OR litigat* OR complaint OR alleg* OR claim* OR (legal w/3 (action OR proceeding)) OR MDL OR subpoena OR "class plaintiff" OR "lead plaintiff" OR "class representative" | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 88 | (Login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) AND (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* OR access) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 89 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 90 | (PII OR (non w/3 dealer) OR (proprietary data) OR SSN OR "social security" OR "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 91 | (purchase OR buy OR sale OR aquire OR acquisition) AND (DMS OR "dealer management system") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership | (purchase OR buy OR sale OR aquire OR acquisition) AND w/5 (DMS OR "dealer management system") |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 92 | (R&R) OR RR OR Rey* OR *reyrey.com OR Reynolds | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services, this may hit on every daily use of the system, each of which would have only minimal relevance | |
| 93 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (restrict* OR *authoriz* OR allow*) ~~AND~~ w/5 ((Reynolds OR CDK) ~~AND~~ w/5 (DMS OR system) AND (contract OR agree*)) |
| 94 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox ~~OR system~~) ~~AND~~ w/5 ("processing loads" OR burden ~~OR effects~~) |
| 95 | (secur* OR priva*) AND data AND (concern* OR worr* OR anxi* OR distress* OR nervous* OR uneas* OR trouble*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 96 | (Secur* w/10 ( data OR information)) AND (polic* OR plan OR system) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 97 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 98 | (Superior Integrated Solutions) OR SIS OR *@4-superior.com | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 99 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 100 | (unauthorized w/5 access) w/20 (data OR server OR information) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 101 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 102 | (win OR los* OR cancel* OR switch OR defect* OR mov* OR chang* OR transfer*) w/20 (DMS OR "dealer management system" OR CDK OR Rey* OR "R&R" OR RR OR Cox OR Dealertrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "Auto Mate" OR SelectQu OR SelectQ OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop OR vendor OR integrat*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (~~win OR~~ los* OR cancel* OR switch OR defect* OR ~~mov* OR~~ chang* ~~OR transfer*~~) w/~~20~~205 (DMS OR "dealer management system" OR CDK OR Rey* OR "R&R" OR RR OR Cox OR Dealertrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/~~15~~5 (system~~s~~ OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "Auto Mate" OR SelectQu OR SelectQ OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop OR vendor OR integrat*) |
| 103 | "secure web form" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 104 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data OR system)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 105 | agen* | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 106 | Agreement w/20 (CDK OR Reynolds OR R&R OR illegal OR anticompet* OR alleg*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | Agreement w/~~20~~5 ((CDK OR Reynolds OR R&R) ~~OR~~ AND (illegal OR anticompet* OR alleg*)) |
| 107 | anticompet* | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | anticompet* AND (DMS OR "Dealer Management System") |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 108 | antitrust | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | Antitrust AND (DMS OR "Dealer Management System") |
| 109 | Authenticom OR DealerVault OR Cottrell OR Dvault OR ACOM OR DVLT OR DVT OR Cotrel OR Cotrel OR Cotrell OR AuthentiLink OR 17-cv-318 | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (Authenticom OR DealerVault OR Cottrell OR Dvault OR ACOM OR DVLT OR DVT OR Cotrel OR Cotrel OR Cotrell OR AuthentiLink) OR w/10 (17-cv-318 OR antitrust) |
| 110 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 111 | AutoLoop OR (loop w/3 llc) OR *Autoloop.net OR 18-cv-02521 | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (AutoLoop OR (loop w/3 llc) OR *Autoloop.net) OR w/10 (18-cv-02521 OR antitrust) |
| 112 | Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime OR 17-cv-925 | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services, this could hit on every use of the apps, which would have only minimal relevance and would be utterly cumulative. | (Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime) w/10 (17-cv-925 OR antitrust) |
| 113 | CDK OR ADP OR *cdk.com OR *adp.com | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 114 | CDK* AND (nondisclosure* OR share* OR provide*) AND (fee* OR charge*) | This search term is acceptable as drafted | |
| 115 | Circumvent AND (security OR dms OR block*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 116 | Conspir* OR monop* OR (market /2 alloc*) OR (market /2 division) OR "exclusive dealing" OR "tying arrangement" OR boycott* OR anticompetitive OR "single brand aftermarket" OR antitrust OR "refusal to deal" OR duopoly OR dominat* OR "market power" OR "lock in" OR "locked in" OR "barriers to entry" OR "barrier to entry" OR tort* | This search term is overly broad and burdensome, and is not targeted to locate responsive documents. DCPs may propose modifications to narrow it. | (Conspir* OR monop* OR (market /2 alloc*) OR (market /2 division) OR "exclusive dealing" OR "tying arrangement" OR boycott* OR anticompetitive OR "single brand aftermarket" OR antitrust OR "refusal to deal" OR duopoly OR dominat* OR "market power" OR "lock in" OR "locked in" OR "barriers to entry" OR "barrier to entry" OR tort*) AND |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | | (DMS OR "Dealer Management System") |
| 117 | Cox OR Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime OR 17-cv-925 | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services, this could hit on every use of the app, which would have only minimal relevance and would be utterly cumulative. | (Cox OR Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime OR ) w/10 (17-cv-925 OR antitrust) |
| 118 | cyber w/5 insurance | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 119 | Disable | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 120 | FTC OR DOJ OR "federal trade commission" OR "department of justice" OR *ftc.gov OR *doj.gov | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | (FTC OR DOJ OR "federal trade commission" OR "department of justice" OR *ftc.gov OR *doj.gov) AND (DMS OR "Dealer Management System") |
| 121 | FTP w/3 push | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 122 | hide OR conceal OR (cover w/3 up) OR veil OR bury | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | hide OR conceal OR (cover w/3 up) OR veil OR bury AND (DMS OR "Dealer Management System") |
| 123 | Illegal OR unlawful OR CFAA OR (not w/3 (law* OR legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 124 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | This search term is overly broad and burdensome. DCPs may propose modifications to narrow it. | Interfer* w/20 5 ((CDK OR Reynolds) w/20 5 (DMS OR "Dealer Management System")) |
| 125 | Lock w/10 account | This search term is overly broad and burdensome. DCPs may propose modifications to narrow it. | Lock w/10 5 account AND (DMS OR "Dealer Management System") |
| 126 | manual w/10 (report* OR tool* OR extract*) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |

16

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 127 | Nakedlime OR (naked lime) | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services, this could hit on every use of the app, which would have only minimal relevance and would be utterly cumulative. | |
| 128 | Non-DMS OR (DMS w/5 alternative) | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 129 | OEM AND data | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 130 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 131 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services this could hit on every use of the app, which would have only minimal relevance and would be utterly cumulative. | |
| 132 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 133 | Schaefer OR Strawsburg OR (kelly /2 hall) OR Brockman OR Gardner OR Hellyer OR Mccray OR reyrey* OR Workman OR Lamb OR Karp OR Frey OR Crutchfield OR Bonifay OR Conver OR (Steve* /2 French) OR Noser OR Thorne OR Herbers OR Quinlan* OR Roeder* OR Cottrell | This search term is overly broad and burdensome. DCPs may propose modifications to narrow it. | "Bob Schaefer" OR "Jon Strawsburg" OR (kelly /2 hall) OR "Bob Brockman" OR "Howard Gardner" OR Hellyer OR "Dan Mccray" OR reyrey* OR "Ron Workman" OR "Ronald Lamb" OR "Robert Karp" OR "Ron Frey" OR "Dean Crutchfield" OR Bonifay OR "Leigh Conver" OR "Steve French" OR "Michael Noser" OR "Malcolm Thorne" OR "Scott Herbers" OR Quinlan* OR Roeder* OR "Steve Cottrell" |
| 134 | Secur* w/20 (Audit* OR Standard OR proced*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 135 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Pensacola Motor" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | This search term is overly broad and burdensome, especially in light of the inclusion of many of the dealership plaintiffs' own name or the names of its own employees, as these terms will return thousands of irrelevant hits. Dealership Class Plaintiffs are open to a separation of these search terms, to be run against each named plaintiff custodian, which omit terms associated with that named plaintiff. For example, any search run against Waconia Dodge should not apply the terms "Waconia" or "Andy Strong." | |

**CDK's Search Terms for Dealership Plaintiffs ESI – Dealership Plaintiffs' Modifications and Objections**

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|-----|-------------|-------------------------------------|---------------------------------------------|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND  (DMS OR platform OR system) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 2 | (CDK OR Reynolds OR DMS OR or system) AND (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 3 | InDesign OR IDD | This search term is overly broad and burdensome as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 4 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv-01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | This search term is acceptable as drafted but is likely to pull mainly privileged communications. | |
| 5 | "Data Authorization" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | "CDK Data Authorization" |
| 6 | "Dealer Management System" w/5 market | This search term is overly broad and burdensome | ("Dealer Management System" w/5 |

---

[1] Owing to CDK and Dealership Class Plaintiffs' ongoing negotiation for document custodians, revisions of the foregoing search terms are based on evaluation of the substance of the search terms themselves, rather than an application of these terms to collected custodial ESI. Where proposed search terms do not appear to be linked to relevant documents, Dealership Plaintiffs have objected on this basis. Specifically, where proposed search terms appear to be targeted to information that Dealership Plaintiffs have not agreed to produce due to an open disagreement during the RFP meet and confer process, this is indicated in the comments column. Dealership Plaintiffs reiterate their position that discovery related to Dealership Plaintiffs' purported violations of cyber-security laws is improper; insofar as CDK contends that its challenged conduct can be explained by security-related concerns, CDK should have to demonstrate, based on its own, internal documents, that those concerns drove its decisions.  The terms subject to this objection include search terms numbered 1, 2, 15 16, 20, 21, 22, 24, 25, 26, 27, 29, 30, 32, 34, 35, 43, 47, 52, 56, 61, 66, 82, 83, 84, 85, 88, 89, 90, 95, 96, 99, 100, 101, 103, 104, 110, 115, 118, 123, 132 and 134.

[2] Dealership Class plaintiffs reserve the right to make additional objections should any search term return voluminous nonrelevant, non-responsive results upon examination against a complete collection of Custodial ESI.

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | market) AND CDK AND Reynolds |
| 7 | "Digital Motorworks" OR Integralink OR DMI OR "Digit Motor Works" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ("Digital Motorworks" OR Integralink OR DMI OR "Digit Motor Works") w/10 Integration |
| 8 | "Dms function*" w/20 (CDK OR Reynolds OR Dealertrack OR Cox) | This search term is acceptable as drafted | |
| 9 | "Dms menu*" w/20 (CDK OR Reynolds OR Dealertrack OR Cox) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 10 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | This search term is overly broad and burdensome and unacceptable as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term if possible. | |
| 11 | "Integrated Document Solutions" | This search term is acceptable as drafted | |
| 12 | "MDL 2817" OR "In re Dealer Management Systems Antitrust Litigation" | This search term is acceptable as drafted | |
| 13 | "Motor Vehicle Software Corporation" OR MVSC | This search term is acceptable as drafted | |
| 14 | "New Freedom" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | "new freedom data resources" |
| 15 | "nonpublic personal information" OR NPI | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 16 | "personally identifiable information" OR PII | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 17 | "Proprietary Data" | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 18 | "Query Builder" OR (QB AND Reynolds) | This search term is overly broad and burdensome and irrelevant as drafted. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 19 | "Reynolds Certified Interface" OR RCI OR 3PA OR "third party access" OR "security first" OR securityfirst OR "third-party access" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | "Reynolds Certified Interface" OR RCI OR 3PA ~~OR "third party access"~~ OR ("security first" w/10 CDK) OR securityfirst ~~OR "third-party access"~~ |
| 20 | "secure web form" | This search term is overly broad and burdensome as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 21 | "sensitive personal information" | This search term is overly broad and burdensome as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 22 | "User Emulation" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 23 | ("Report Generator" OR "report scheduler") AND (schedule OR automat*) | This search term is overly broad and burdensome as drafted. This term also appears to be irrelevant. | |
| 24 | ((CDK OR Reynolds) w/20 DMS) AND data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 25 | ((code w/4 box) OR "code-on-the-box" OR push OR writeback OR (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 26 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) OR "write back") AND (protocol* OR polic) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 27 | (hostile OR foreign OR unauthorized OR independent OR "third party" OR thirdparty OR "3rd party" OR Authenticom OR DealerVault OR SIS OR SelectQu OR SelectQ OR "Superior Integrated Solutions" OR SIS OR Dominion OR | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
|  | StoneEagle OR ProQuotes) w/10 (access* OR integra* OR *extract) |  |  |
| 28 | (los* OR win* OR gain* OR churn* OR defect* OR cancel* OR (turn* w/3 over) OR turnover OR switch OR chang* OR mov*) w/15 (sale OR business OR contract OR customer OR vendor OR integrator OR DMS OR "dealer management system") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (los* OR win* OR gain* OR churn* OR defect* OR cancel* OR (turn* w/3 over) OR turnover OR switch OR ~~chang* OR mov*~~) w/~~15~~5 (~~sale OR business OR contract OR customer OR~~ vendor OR integrator OR DMS OR "dealer management system") AND (Contract or agreement) |
| 29 | (pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) AND data AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. |  |
| 30 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR access OR secur* OR priva*) w/20 (data)) AND (polic* OR practic*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. |  |
| 31 | ((Rey* OR "R&R" OR RR OR CDK OR ADP) w/20 (compar* OR better OR worse OR "no* good" OR more OR less OR close* OR open)) AND (DMS OR system) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((Rey* OR "R&R" OR RR OR CDK OR ADP) w/5 ((compar* OR better OR worse OR "no* good" OR more OR less OR close* OR open)) AND (DMS OR system)) |
| 32 | ((security OR Data) AND (standard* OR rule* OR guid* OR memo* OR report)) AND (NADA OR AIADA OR "National Automobile Dealers Association" OR "American International Automobile Dealers Association") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. |  |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 33 | ((Third w/3 Party) OR thirdparty OR "3rd party" OR OEM OR CDK OR Reynolds OR RR OR R&R) w/5 Proprietary | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 34 | ((Third w/3 Party) OR thirdparty OR "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK OR Reynolds OR RR OR R&R OR Dealertrack OR Cox OR DMS OR data OR "Dealer Management System") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 35 | ((unauthorized w/5 access) OR (not /5 authoriz*) OR ((express OR written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 36 | ((up w/3 front) OR "up-front" OR instal* OR initial OR month* OR recur* OR annual OR (set w/3 up) OR setup) w/20 (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((up w/3 front) OR "up-front" OR instal* OR initial OR month* OR recur* OR annual OR (set w/3 up) OR setup) w/20 (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay*) w/10 (DMS OR "Dealer Management System") |
| 37 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | This search term is acceptable as drafted | |
| 38 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND w/10 ((CDK OR Reynolds OR Dealertrack OR Cox) AND (DMS OR "Dealer Management System")) |
| 39 | (*settle* OR assign*) AND (Lawsuit OR litigat* OR complaint OR alleg* OR claim* OR (legal w/3 (action OR proceeding)) OR MDL OR "multi district") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (*settle* OR assign*) AND (Lawsuit OR litigat* OR complaint OR alleg* OR claim* OR (legal w/3 (action OR proceeding)) OR MDL OR "multi district") AND Antitrust w/10 (DMS OR "Dealer Management System") |
| 40 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | This search term is acceptable as drafted | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 41 | ("Data element*" OR "data field*") w/20 ((CDK OR Reynolds) w/10 DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. | |
| 42 | ("tilt the table" OR (tilt w/3 table)) AND (CDK OR DMI OR "Digital Motorworks" OR "Digital Motor works" OR Integralink OR RR OR "R&R" OR "Reynolds" OR "security first" OR "securityfirst" OR "3PA Refresh" OR "Partner Program") | This search term is acceptable as drafted | |
| 43 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 44 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS OR "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) OR data) AND (Polic* OR practice) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. | |
| 45 | (Autosoft OR "PB Financial Systems" OR "Applied Computer Systems" OR ACS OR "Supreme Software" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) | This search term is acceptable as drafted | |
| 46 | (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) w/10 (DMS OR "Dealer Management System") |
| 47 | (breach OR hack OR attack OR data) AND (target OR "north korea" OR Sony OR "Community Health" OR Equifax OR Facebook OR DealerBuilt OR "New Hampshire")) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 48 | (CDK AND (rey* OR "R&R" OR RR OR Reynolds")) AND ("data exchange agreement" OR DEA) | This search term is acceptable as drafted | |
| 49 | (CDK AND (Reynolds OR "R&R" OR RR)) AND (coordinat OR conspir OR anticompet* OR antitrust OR tying OR tie OR tort*) | This search term is acceptable as drafted | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 50 | (CDK OR DMI OR "Digital Motorworks" OR "Digital Motor Works" OR Integralink OR 3PA OR "Partner Program" OR "Access Program") w/10 (agree* OR contract) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR DMI OR "Digital Motorworks" OR "Digital Motor Works" OR Integralink OR 3PA OR "Partner Program" OR "Access Program") w/10 (agree* OR contract) |
| 51 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | This search term is acceptable as drafted | |
| 52 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password OR pwd OR access OR credential*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 53 | (CDK OR Reynolds OR R&R OR RR OR DMS OR "Dealer Management System" OR Cox OR DealerTrack) AND (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* OR damage* OR disarm OR impair OR cripple OR defus* OR hamper OR imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR Reynolds OR R&R OR RR OR DMS OR "Dealer Management System" OR Cox OR DealerTrack) AND (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* OR damage* OR disarm OR impair OR cripple OR defus* OR hamper OR imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) |
| 54 | (CDK OR Reynolds OR RR OR R&R OR ADP) w/20 (injur* OR damage* OR harm* OR hurt*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR Reynolds OR RR OR R&R OR ADP) w/2010 (injur* OR damage* OR harm* OR hurt*) |
| 55 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (systems OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/205 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | | StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) |
| 56 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (perform* OR threat* OR break OR slow* OR breach OR destroy OR degrad* OR (data w/10 (corrupt* OR integrity)) OR (data w/10 security) OR complain* OR investigat*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 57 | (cede OR (give w/3 up) OR ((hand OR sign OR turn) w/3 over) OR relinquish OR renounce) AND (control OR power OR authority) AND (data OR system) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 58 | (compet* OR threat* OR challeng* OR loss OR lose OR losing OR superior* OR compar*) w/15 (DMS OR Drive OR Dash OR ODE OR integrat* OR app* OR solution* OR product OR service) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (compet* OR threat* OR challeng* OR loss OR lose OR losing OR superior* OR compar*) w/15 (DMS OR (CDK w/2 Drive) OR (CDK w/2 Dash) OR ODE OR integrat* ~~OR app* OR solution* OR product OR service~~) |
| 59 | (Compet* w/20 harm*) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 60 | (contract* OR agree*) AND (term OR year* OR length OR period) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (contract* OR agree*) ~~AND~~w/10 (term OR year* OR length OR period) AND (CDK OR Reynolds) |
| 61 | (data OR system OR DMS) w/20 (breach OR attack OR steal OR stolen OR hack* OR corrupt* OR cybersec* OR (cyber w/5 secur*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 62 | (data /3 integrat*) OR (data /3 extract*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (data /3 integrat*) OR (data /3 extract*) |
| 63 | (data AND integration) w/20 market | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 64 | (data OR access OR "third party" OR thirdparty OR "3rd party" OR integrat* OR extract*) AND (policy* OR guideline* OR rule* OR requir*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 65 | (dealer w/10 data) AND (retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (dealer w/~~105~~ data) AND (retriev* ~~OR obtain~~ OR access* OR collect* OR transmit* OR poll* ~~OR scrap*~~ OR pull* OR extract*) AND (manual OR push OR FTP) AND (DMS OR "dealer management system" |
| 66 | ((declin* OR refus* OR ((will OR would) /3 not) OR won't) w/10 (authoriz* OR grant OR give OR allow OR share)) AND (login OR credential OR password OR pwd OR access) AND (Cox OR DealerTrack OR DMS OR Reynolds OR R&R OR RR OR CDK OR integrat* OR Authenticom OR DealerVault OR vendor*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 67 | (DMS OR "dealer management system" OR integrat* OR app* OR vendor OR CDK OR Reynolds OR Dealertrack OR Cox) AND (analy* OR forecast OR project* OR survey* OR evaluat* OR stud* OR (market w/3 share) OR (market w/3 condition*) OR profit* OR compet* OR market OR pric*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (DMS OR "dealer management system" OR integrat* ~~OR app* OR vendor~~ OR CDK OR Reynolds OR Dealertrack OR Cox) ~~AND~~ W/10 (analy* OR forecast OR project* OR survey* OR evaluat* OR stud* OR (market w/3 share) OR (market w/3 condition*) OR profit* OR compet* OR market OR pric*) |
| 68 | (DMS OR "dealer management system") /5 market* | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 69 | (DMS OR "Dealer Management System") AND (promot* OR rebate* OR discount* OR sale*) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 70 | (DMS OR "Dealer Management System" ) w/10 (agree* OR contract) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((DMS OR "Dealer Management System") AND (CDK OR REYNOLDS)) w/10 (agree* OR contract) |
| 71 | (DMS OR integrat* OR vendor*) w/10 cancel | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 72 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | ((draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph)) w/10 (DMS OR "Dealer Management System") |
| 73 | (employee OR agent*) AND (agree* OR contract) AND ((permit OR allow OR access OR authoriz*) w/25 DMS) | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 74 | (exclusiv*or sole OR only) w/20 (DMS OR CDK OR Reynolds OR R&R OR RR OR provider OR service* OR "dealer management system") | This search term is overly broad and burdensome, additionally it is not targeted to locate responsive documents. | |
| 75 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap* OR integrat*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap* OR integrat*)) |
| 76 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (DealerVault OR Authenticom OR Integrat* OR vendor* OR (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap*))) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice OR quot*) w/15 (DealerVault OR Authenticom OR Integrat* OR vendor* OR (data w/5 (gather* OR extract* OR (write w/3 back) OR pull* OR poll* OR scrap*))) |
| 77 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) AND (Digital Motorworks OR Integralink OR DMI OR "Digit Motor Works") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) AND w/10 (Digital Motorworks OR Integralink OR DMI OR "Digit Motor Works") |

10

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 78 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) w/15 (Rey* OR "R&R" OR RR OR Cox OR DealerTrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/5 (system OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "auto mate" OR SelectQu OR "SelectQ" OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) ~~w/20~~w/5 (Rey* OR "R&R" OR RR OR Cox OR DealerTrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/5 (system OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "auto mate" OR SelectQu OR "SelectQ" OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop) |
| 79 | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) w/20 (data OR access* OR integrat* OR 3PA OR "third party access" OR "partner program" OR "Access Program") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge OR rate* OR bill OR cost* OR pay* OR invoice) ~~w/20~~w/5 (~~data OR access*~~ ~~OR~~ integrat* OR 3PA OR "third party access" ~~OR "partner program"~~ OR "Access Program") |
| 80 | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice) AND ((pass w/5 through) OR passthrough OR shared OR sent OR "passed to" OR "passed on" OR "pass on") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice*) AND ((pass w/5 through) OR passthrough OR shared ~~OR sent~~ OR "passed to" OR "passed on" OR "pass on") AND (DMS OR 3PA) |
| 81 | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice*) w/20 (vend* OR integrat* OR appl* OR Authenticom OR SIS OR "Superior Integrated Solutions" OR InDesign OR 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (fee* OR pric* OR charge* OR rate* OR bill OR cost* OR pay* OR paid OR invoice*) ~~w/20~~w/5 (vend* OR integrat* OR appl* OR Authenticom OR SIS OR "Superior Integrated Solutions" OR InDesign OR 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") |
| 82 | (FTP OR "File transfer protocol") AND (push OR writeback OR (write w/5 back)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 83 | (Gramm-Leach-Bliley) OR (Gramm Leach Bliley) OR GLB OR GLBA | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 84 | (hack OR steal OR misuse OR misapprop*) w/20 (data OR server OR information OR password OR pwd OR login OR credentials OR access OR DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 85 | (harm OR injur* OR disrupt* OR los* OR interrupt* OR cancel* OR end* OR stop*) w/15 (Reynolds OR R&R OR RR OR CDK) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (Service AND (harm OR injur* OR disrupt* OR los* OR interrupt* OR cancel* OR end* OR stop*)) w/15 (Reynolds OR R&R OR RR OR CDK) |
| 86 | (Integrat* OR vendor OR application OR app* OR customer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 87 | Lawsuit OR litigat* OR complaint OR alleg* OR claim* OR (legal w/3 (action OR proceeding)) OR MDL OR subpoena OR "class plaintiff" OR "lead plaintiff" OR "class representative" | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 88 | (Login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) AND (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* OR access) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 89 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 90 | (PII OR (non w/3 dealer) OR (proprietary data) OR SSN OR "social security" OR "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 91 | (purchase OR buy OR sale OR aquire OR acquisition) AND (DMS OR "dealer management system") | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a | (purchase OR buy OR sale OR aquire OR acquisition) ~~AND~~ w/5 (DMS OR "dealer management system") |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | narrowed search term. | |
| 92 | (R&R) OR RR OR Rey* OR *reyrey.com OR Reynolds | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services, this may hit on every daily use of the system, each of which would have only minimal relevance | |
| 93 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (restrict* OR *authoriz* OR allow*) ~~AND~~ w/5 ((Reynolds OR CDK) ~~AND~~ w/5 (DMS OR system) AND (contract OR agree*)) |
| 94 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox ~~OR system~~) ~~AND~~ w/5 ("processing loads" OR burden ~~OR effects~~) |
| 95 | (secur* OR priva*) AND data AND (concern* OR worr* OR anxi* OR distress* OR nervous* OR uneas* OR trouble*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 96 | (Secur* w/10 ( data OR information)) AND (polic* OR plan OR system) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 97 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 98 | (Superior Integrated Solutions) OR SIS OR *@4-superior.com | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | |
| 99 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 100 | (unauthorized w/5 access) w/20 (data OR server OR information) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| 101 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 102 | (win OR los* OR cancel* OR switch OR defect* OR mov* OR chang* OR transfer*) w/20 (DMS OR "dealer management system" OR CDK OR Rey* OR "R&R" OR RR OR Cox OR Dealertrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/15 (system OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "Auto Mate" OR SelectQu OR SelectQ OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop OR vendor OR integrat*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (win OR los* OR cancel* OR switch OR defect* OR mov* OR chang* OR transfer*) w/20 5 (DMS OR "dealer management system" OR CDK OR Rey* OR "R&R" OR RR OR Cox OR Dealertrack OR Autosoft OR Dealerbuilt OR PBS OR Dominion OR (Adam w/155 (systems OR DMS)) OR Quorum OR Advent OR DPC OR RCI OR "certified interface" OR DealerVault OR Authenticom OR "Auto/mate" OR Automate OR "Auto Mate" OR SelectQu OR SelectQ OR "Superior Integrated Solutions" OR SIS OR StoneEagle OR ProQuotes OR AutoLoop OR vendor OR integrat*) |
| 103 | "secure web form" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 104 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data OR system)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 105 | agen* | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 106 | Agreement w/20 (CDK OR Reynolds OR R&R OR illegal OR anticompet* OR alleg*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | Agreement w/20 5 ((CDK OR Reynolds OR R&R) OR AND (illegal OR anticompet* OR alleg*)) |
| 107 | anticompet* | This search term is overly broad and burdensome and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | anticompet* AND (DMS OR "Dealer Management System") |
| 108 | antitrust | This search term is overly broad and burdensome | Antitrust AND (DMS OR "Dealer |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | and appears to be irrelevant as drafted. DCPs will meet and confer regarding a narrowed search term. | Management System") |
| 109 | Authenticom OR DealerVault OR Cottrell OR Dvault OR ACOM OR DVLT OR DVT OR Cotrel OR Cottrel OR Cotrell OR AuthentiLink OR 17-cv-318 | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (Authenticom OR DealerVault OR Cottrell OR Dvault OR ACOM OR DVLT OR DVT OR Cotrel OR Cottrel OR Cotrell OR AuthentiLink) OR w/10 (17-cv-318 OR antitrust) |
| 110 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 111 | AutoLoop OR (loop w/3 llc) OR *Autoloop.net OR 18-cv-02521 | This search term is overly broad and burdensome and appears to be irrelevant as drafted. Dealership Class Plaintiffs will meet and confer regarding a narrowed search term. | (AutoLoop OR (loop w/3 llc) OR *Autoloop.net) OR w/10 (18-cv-02521 OR antitrust) |
| 112 | Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime OR 17-cv-925 | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services, this could hit on every use of the apps, which would have only minimal relevance and would be utterly cumulative. | (Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime) w/10 (17-cv-925 OR antitrust) |
| 113 | CDK OR ADP OR *cdk.com OR *adp.com | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 114 | CDK* AND (nondisclosure* OR share* OR provide*) AND (fee* OR charge*) | This search term is acceptable as drafted | |
| 115 | Circumvent AND (security OR dms OR block*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 116 | Conspir* OR monop* OR (market /2 alloc*) OR (market /2 division) OR "exclusive dealing" OR "tying arrangement" OR boycott* OR anticompetitive OR "single brand aftermarket" OR antitrust OR "refusal to deal" OR duopoly OR dominat* OR "market power" OR "lock in" OR "locked in" OR "barriers to entry" OR "barrier to entry" OR tort* | This search term is overly broad and burdensome, and is not targeted to locate responsive documents. DCPs may propose modifications to narrow it. | (Conspir* OR monop* OR (market /2 alloc*) OR (market /2 division) OR "exclusive dealing" OR "tying arrangement" OR boycott* OR anticompetitive OR "single brand aftermarket" OR antitrust OR "refusal to deal" OR duopoly OR dominat* OR "market power" OR "lock in" OR "locked in" OR "barriers to entry" OR "barrier to entry" OR tort*) AND (DMS OR "Dealer Management |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | | System") |
| 117 | Cox OR Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime OR 17-cv-925 | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services, this could hit on every use of the app, which would have only minimal relevance and would be utterly cumulative. | (Cox OR Autotrader OR "Dealer Dot Com" OR DealerTrack OR "Dealer Track" OR HomeNet OR "Kelley Blue Book" OR vAuto OR VinSolutions OR Xtime OR ) w/10 (17-cv-925 OR antitrust) |
| 118 | cyber w/5 insurance | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 119 | Disable | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 120 | FTC OR DOJ OR "federal trade commission" OR "department of justice" OR *ftc.gov OR *doj.gov | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | (FTC OR DOJ OR "federal trade commission" OR "department of justice" OR *ftc.gov OR *doj.gov) AND (DMS OR "Dealer Management System") |
| 121 | FTP w/3 push | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 122 | hide OR conceal OR (cover w/3 up) OR veil OR bury | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | hide OR conceal OR (cover w/3 up) OR veil OR bury AND (DMS OR "Dealer Management System") |
| 123 | Illegal OR unlawful OR CFAA OR (not w/3 (law* OR legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 124 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | This search term is overly broad and burdensome. DCPs may propose modifications to narrow it. | Interfer* w/205 ((CDK OR Reynolds) w/205 (DMS OR "Dealer Management System")) |
| 125 | Lock w/10 account | This search term is overly broad and burdensome. DCPs may propose modifications to narrow it. | Lock w/105 account AND (DMS OR "Dealer Management System") |
| 126 | manual w/10 (report* OR tool* OR extract*) | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 127 | Nakedlime OR (naked lime) | This search term is overly broad and burdensome | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|---|---|---|---|
| | | and unacceptable as drafted. If a dealership uses these services, this could hit on every use of the app, which would have only minimal relevance and would be utterly cumulative. | |
| 128 | Non-DMS OR (DMS w/5 alternative) | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 129 | OEM AND data | This search term is overly broad and burdensome, and is not targeted to locate responsive documents | |
| 130 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | This search term is overly broad and burdensome, and appears to be irrelevant as drafted. | |
| 131 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | This search term is overly broad and burdensome and unacceptable as drafted. If a dealership uses these services this could hit on every use of the app, which would have only minimal relevance and would be utterly cumulative. | |
| 132 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |
| 133 | Schaefer OR Strawsburg OR (kelly /2 hall) OR Brockman OR Gardner OR Hellyer OR Mccray OR reyrey* OR Workman OR Lamb OR Karp OR Frey OR Crutchfield OR Bonifay OR Conver OR (Steve* /2 French) OR Noser OR Thorne OR Herbers OR Quinlan* OR Roeder* OR Cottrell | This search term is overly broad and burdensome. DCPs may propose modifications to narrow it. | "Bob Schaefer" OR "Jon Strawsburg" OR (kelly /2 hall) OR "Bob Brockman" OR "Howard Gardner" OR Hellyer OR "Dan Mccray" OR reyrey* OR "Ron Workman" OR "Ronald Lamb" OR "Robert Karp" OR "Ron Frey" OR "Dean Crutchfield" OR Bonifay OR "Leigh Conver" OR "Steve French" OR "Michael Noser" OR "Malcolm Thorne" OR "Scott Herbers" OR Quinlan* OR Roeder* OR "Steve Cottrell" |
| 134 | Secur* w/20 (Audit* OR Standard OR proced*) | This search term is overly broad and burdensome and appears to be irrelevant as drafted. It also appears to seek documents subject to Dealerships' objection in Footnote 1. | |

| No. | Search Term | Dealership Plaintiffs' Comments[1] | Proposed narrowed term where applicable[2] |
|-----|-------------|-----------------------------------|--------------------------------------------|
| 135 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Pensacola Motor" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | This search term is overly broad and burdensome, especially in light of the inclusion of many of the dealership plaintiffs' own name or the names of its own employees, as these terms will return thousands of irrelevant hits. Dealership Class Plaintiffs are open to a separation of these search terms, to be run against each named plaintiff custodian, which omit terms associated with that named plaintiff. For example, any search run against Waconia Dodge should not apply the terms "Waconia" or "Andy Strong." | |

# EXHIBIT 27

MAYER • BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

Jessica A. Michaels
Direct Tel +1 312 701 7121
Direct Fax +1 312 706 8135
jmichaels@mayerbrown.com

August 1, 2018

B<small>Y</small> E-M<small>AIL</small>

John Hughes
M<small>ILBERG</small> T<small>ADLER</small> P<small>HILLIPS</small> G<small>ROSSMAN</small> LLP
One Pennsylvania Plaza
New York, NY 10119

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        <u>MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)</u>

Dear John:

I write in response to your August 1, 2018 email attaching Dealership Plaintiffs' modifications and objections to CDK's proposed search terms.

CDK served its proposed search terms on Dealership Plaintiffs on May 25, 2018—over two months ago—and since then has been available to meet-and-confer with Dealership Plaintiffs regarding any objections to the proposed terms. Given the August 6 deadline for motions to compel is only 5 days away, Dealership Plaintiffs' failure to substantively respond to CDK's proposed search terms until now is not only inappropriate, but highly prejudicial to CDK.

Dealership Plaintiffs' have participated in meet-and-confer discussions relating to search terms for most, if not all, other Parties in this MDL. As a result, they are well aware of the steps the parties have taken and the information they have exchanged—*e.g.*, term-by-term hit reports—that is necessary to engage in a meaningful discussion regarding the potential over breadth or burden associated with individual terms. Yet no such information was provided by Dealership Plaintiffs—indeed no information about how Dealership Plaintiffs determined a given term was unduly burdensome was provided—leaving CDK without any means to evaluate those burden claims or the efficacy of plaintiffs' proposed alternative search terms (where alternatives were provided).

While CDK remains open to working with Dealership Plaintiffs in good faith to resolve the ongoing dispute relating to CDK's proposed search terms, it is skeptical that the issue can be resolved in the 3 business days before motions to compel are due given all of the other issues the parties are addressing and the need to focus on finalizing their respective motions. In any event, before the parties can meaningfully meet-and-confer, CDK requests that you provide the below information:

1.  How many custodians have the Dealership Plaintiffs collected data from?

Mayer Brown LLP

John Hughes
August 1, 2018
Page 2

2.   What is the total volume of the data collected?  After global de-duplication of the data and applying a January 2, 2013 date filter, what is the total number of documents in Dealership Plaintiffs' collection?

3.   Have you tested the search terms, as originally proposed by CDK on May 25, 2018, against the data collected?  If yes, please provide post de-duplication hit counts on a term-by-term basis for all the original terms proposed by CDK on May 25.

4.   For the terms that you have proposed a modification, have you tested the proposed modification against the data collected? If yes, please provide post de-duplication hit counts on a term-by-term basis for the modified terms.

After we have had an opportunity to evaluate Dealership Plaintiffs' responses to these questions, we will promptly make ourselves available to meet-and-confer on the issue.  In the event the parties are able to reach agreement, CDK will withdraw any motion to compel it may file on Monday related to this issue.

Please let me know if Dealership Plaintiffs agree to provide the requested information, and if so, when the information will be provided.

Sincerely,


*/s/ Jessica A. Michaels*
Jessica A. Michaels

cc:   Lead MDL Plaintiff Counsel of Record
      Reynolds Counsel of Record
      Mark Ryan
      Britt Miller
      Andrew Marovitz
      Matt Provance

# EXHIBIT 28

| | |
|---|---|
| **From:** | Marovitz, Andrew S. |
| **Sent:** | Thursday, August 02, 2018 3:02 PM |
| **To:** | Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL |
| **Cc:** | Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria |
| **Subject:** | RE: In re DMS -- Discovery Letter |

Dan:

We each left Tuesday's meet-and-confer with to-do items.   We've done ours, consistent with the commitment we made to you.  The Individual Plaintiffs did not do theirs.  The suggestion that, in fulfilling our commitments, my e-mail and letter responses from yesterday and today represented additional work for you – when you raised those very issues and we timely addressed them – is more than a little unfair.  Further, both sides knew that the search term negotiations were ongoing, even as other discussions progressed.

I remain hopeful that we will hear from you soon, in the next few hours, instead of in "due course," as suggested below, and that the Individual Plaintiffs will agree to a final, productive resolution of the outstanding issues, as we have proposed.  We certainly would prefer to have your agreement than to be compelled to seek judicial intervention, but as I noted below, the deadline is approaching fast.

Best.

   - ASM

Andrew S. Marovitz (amarovitz@mayerbrown.com)
Mayer Brown LLP (www.mayerbrown.com)
71 S. Wacker Drive
Chicago, IL 60606-4637
tel: 312.701.7116
fax: 312.706.8651



**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Thursday, August 02, 2018 1:36 PM
**To:** Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy, after that call, CDK proposed additional modifications to more than 60 search terms for Cox Automotive and AutoLoop, which are time consuming to run.  We also received two additional proposals from you (the July 31, 2018

email and your letter of this morning). We are still evaluating those search terms and proposals and will respond to them in due course. Best, Dan

---

**From:** Marovitz, Andrew S. [mailto:AMarovitz@mayerbrown.com]
**Sent:** Thursday, August 02, 2018 2:26 PM
**To:** Dorris, Daniel V. <ddorris@kellogghansen.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Dan, following up. You told us during our Tuesday meet-and-confer that, by last night or first thing this morning, you would provide us with a letter laying out Cox and AutoLoop's final positions on their outstanding discovery objections issues they wished to reconsider. That time has passed and we haven't heard from you.

We need clarity on whether Cox and AutoLoop will be withdrawing any of the unresolved objections, just as they demanded from CDK. The parties' motion deadline is approaching fast.

　　　- ASM

---

**From:** Wayne, Natalie F.
**Sent:** Thursday, August 02, 2018 10:02 AM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Dan:

Please see the attached correspondence regarding certain issues we discussed during our 7/31 meet and confer, which I send on behalf of Andy Marovitz.

---
**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Wayne, Natalie F.
**Sent:** Wednesday, August 01, 2018 6:13 PM
**To:** 'Dorris, Daniel V.'; Provance, Matthew D.; 'Nemelka, Michael N.'; 'SERVICE-EXTERNAL-DMS-MDL'
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; 'Aundrea K Gulley'; 'Brian T. Ross'; 'Leo Caseria'
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

Please see the attached correspondence regarding AutoLoop's 7/30 Responses & Objections to CDK's Second Set of Interrogatories and RFPs, which I send on behalf of Andy Marovitz.

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Wayne, Natalie F.
**Sent:** Monday, July 30, 2018 3:15 PM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

In advance of our scheduled meet-and-confer tomorrow, please see the attached correspondence, which I send on behalf of Andy Marovitz.

---

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Wayne, Natalie F.
**Sent:** Friday, July 27, 2018 3:15 PM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

Please see the attached follow-up letter to our July 23 meet-and-confer, which I send on behalf of Andy Marovitz.

---

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Thursday, July 26, 2018 9:59 PM
**To:** Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy and Matt, please see the attached letter.  We are available to discuss this coming Tuesday afternoon.  Best, Dan.

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Tuesday, July 17, 2018 8:51 PM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Mike, thank you for your letter and your note. With regard to CDK, one day's notice is not sufficient time to meet and confer on the many issues raised in your letter. However, we agree that discussions about the parties' RFP responses (both CDK and the non-dealer Plaintiffs) should take place this week. And we agree that discussions about CDK, Cox, and AutoLoop's search terms need to occur this week. Working around unavoidable conflicts that we have (*e.g.*, depositions and flights) for the people on our team who will lead these calls, we can make the following work: We can be available to discuss CDK's RFP responses on Thursday afternoon provided that Cox and AutoLoop can meet and confer on their discovery responses (please see the attached letter) on Friday afternoon and search terms on Friday (any time). As you previously noted that Kellogg had some availability issues on Friday, we are amenable to discussing search terms early or later in the day, depending on what works better for you.

Please let us know if Cox and AutoLoop will agree to proceed in this manner.

Thanks,
Matt

_____

Matt Provance
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Tuesday, July 17, 2018 5:50 AM
**To:** SERVICE-EXTERNAL-DMS-MDL
**Subject:** In re DMS -- Discovery Letter

Dear Britt and Brian,

Please see the attached letter regarding CDK's and Reynolds' RFP responses.

Thanks,
Mike


Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Information about how we handle personal information is available in our Privacy Notice.

# EXHIBIT 29

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 2, 2018

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

**BY E-MAIL**

Daniel V. Dorris, Esq.
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:    *In re Dealer Management Systems Antitrust Litig.*,
       MDL No. 2817, *Loop v. CDK* (18-CV-2521)

Dear Dan:

We write to follow up on our July 31 meet-and-confer regarding the parties' respective positions and proposals regarding the three specific "issues" to which Cox Automotive ("Cox") and Loop, LLC ("AutoLoop") (collectively, the "Individual Plaintiffs") proposed to limit their document productions in response to certain application- and DealerTrack-related RFPs (hereinafter, the "relevancy issues"). As a preliminary matter, please note that Individual Plaintiffs have not yet identified the particular RFPs to which they propose to apply these three relevancy limitations, as agreed to during the meet-and-confer. Thus, the proposals outlined in this letter are contingent on Plaintiffs identifying those RFPs as promised. Nothing in this letter should in any way delay the Individual Plaintiffs from identifying their final positions on all outstanding issues concerning CDK's RFPs and Interrogatories, which they promised to do no later than yesterday evening or "first thing this morning."

For ease of reference, we include the parties' respective proposals below[1]:

- **Relevancy Issues for Application-Related RFPs**:

  o  Individual Plaintiffs proposed in their 7/26/18 letter the following:  (1) damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct, (2) data integration of Cox Automotive's applications and AutoLoop's applications with any DMS, and (3) any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS.

---

[1] For ease of reference, we (CDK) refer to our proposed relevancy issues by conforming to your numbering system (1-3) rather than by our earlier lettering system (a-c) (as written in our earlier letter), so the two can be more easily compared.  Accordingly, we refer to issue (a) in our 7/30/18 letter as (1), issue (b) as (2) and issue (c) as 3.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 2, 2018
Page 2

- o CDK countered in its 7/30/18 letter with the following: (1) competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds; (2) data integration; or (3) access to DMSs, whether third-party or, in Cox's case, to DealerTrack DMSs.

- Relevancy Issues for DealerTrack-Related RFPs:

  - o Individual Plaintiffs proposed in their 7/26/18 letter the following: (1) competition in the DMS market, (2) data integration with DealerTrack DMS, and (3) the security, performance and data integrity of DealerTrack DMS.

  - o CDK countered in its 7/30/18 letter with the following: (1) competition in the DMS market, including any mention of CDK and/or Reynolds; (2) data integration; or (3) third-party access to DMSs, including DealerTrack's DMS.

During our meet-and-confer, we attempted to find common ground on the three relevancy issues, given that the parties' respective proposals did not appear to be too far apart. Additionally, we agreed to further consider Issue 1 for the application-related RFPs, and Issue 3 for the application- and DealerTrack-related RFPs. Here is our understanding of the parties' respective positions and proposal regarding these relevancy issues here:

- Relevancy Issue 1 for the application-related RFPs: During the meet-and-confer, we discussed whether there was any overlap between our respective Issue 1s. You offered that any information relevant to your proposed Issue 1 as written (regarding damages) would fall under CDK's proposed Issue 1 regarding competition in general, with the exception that Individual Plaintiffs' Issue 1 would likely not include any information related to Individual Plaintiffs' applications that do not compete with CDK or Reynolds applications. While we appreciate Individual Plaintiffs' offer, we cannot agree to the use of Individual Plaintiffs' Issue 1 in place of our Issue 1. Indeed, as written, there does not appear to be much overlap between the parties' respective descriptions. For example, Individual Plaintiffs' Issue 1 as written would likely only include documents related to allegedly increased fees paid by Dealers. Or, it could be interpreted by the Individual Plaintiffs to mean whatever they want it to mean, since they are the ones in charge of coming up with their damages theory. It would not include documents concerning competition for applications (which would be captured in CDK's Issue 1), which are obviously relevant in light of, among other things, the Individual Plaintiffs' allegations that innovation and competition for applications has been harmed by Defendants' alleged conduct. We ask that Individual Plaintiffs reconsider adding CDK's Issue 1 to their relevancy issues for the application-related RFPs (whether in addition to or as a replacement for Individual Plaintiffs' Issue 1). If not, the parties are at an impasse.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 2, 2018
Page 3

- <u>Relevancy Issues 2 and 3 for application- and DealerTrack-related RFPs</u>: During the meet and confer, we discussed whether CDK's Issue 3 regarding third-party access, was subsumed within Individual Plaintiffs' Issue 2 regarding data integration. You stated that your definition of "data integration" (at least for purposes of these relevancy issues) means <u>any and all</u> access to DMSs, including access outside of CDK's 3PA or Reynolds' RCI programs. Thus, you would not exclude as irrelevant to "data integration" documents related to, for example, the methods that Individual Plaintiffs use (or have used) to access Defendants' DMSs outside their respective 3PA and RCI programs, the frequency of such access, the data that is accessed, how Individual Plaintiffs use the data, whether they re-syndicate that data to other third parties, and their interactions with dealers, other vendors, and so-called "independent integrators" regarding the foregoing. If our understanding of your definition of "data integration" is correct, then, in the spirit of compromise, CDK will agree to Individual Plaintiffs' Issue 3 as written for both the application- and DealerTrack-related RFPs, provided that Individual Plaintiffs agree to: (1) CDK's proposal to broaden Issue 2 for the RFPs to include "data integration," as discussed during the meet-and-confer, and (2) add "including any mention of CDK and/or Reynolds" to Issue 1 for DealerTrack-Related RFPs (which tracks CDK's Issue 1).

For clarity's sake, here are the relevancy issues as proposed above:

- <u>Relevancy Issues for Application-Related RFPs</u>: (1) damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct, (2) competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds; (3) data integration, and (4) any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS.

- <u>Relevancy Issues for DealerTrack-Related RFPs</u>: (1) competition in the DMS market, including any mention of CDK and/or Reynolds, (2) data integration, and (3) the security, performance and data integrity of DealerTrack DMS.

Let us know if you agree with our understanding and/or whether we have an agreement. We do not think the parties are far apart with respect to these relevancy issues and hope that these compromise proposals, based upon our discussions, will help the parties avoid impasse.

Thanks.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 2, 2018
Page 4


Sincerely,

Andrew S. Marovitz

729628165

# EXHIBIT 30

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

August 2, 2018

Andrew Marovitz
Matthew Provance
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois 60606

      Re:    Cox Automotive and AutoLoop Discovery Responses

Dear Andy and Ethan,

      We write on behalf of Cox Automotive and AutoLoop with respect to Andy's letters on July 27, 2018, July 30, 2018, and August 2, 2018, our meet-and-confer on July 31, 2018, and Andy's email on July 31, 2018. This letter is intended to memorialize the current agreements and outstanding areas of dispute regarding Cox Automotive's and AutoLoop's responses to CDK's Requests For Production ("RFPs") and interrogatories.[1]

## I.    CDK's RFPs To Cox Automotive And AutoLoop

      **Time Period.** In your July 30, 2018 letter, you requested that Cox Automotive and AutoLoop agree to search custodial documents back to January 1, 2013 rather than January 1, 2014. We believe this request is overbroad. Defendants likely have relevant documents prior to January 1, 2014 that would provide context and motivation for their illegal agreement, but Cox Automotive and AutoLoop would not. Nevertheless, in the interest of compromise, we will agree to extend the searches of custodial documents back to January 1, 2013.

      **General Limitations on RFPs.** In Cox Automotive's and AutoLoop's responses to the RFPs, we objected to a number of requests on relevance, burden, and other grounds. Notwithstanding those objections – which we continue to stand on – we explained in our July 26, 2018 letter that we would respond to CDK's RFPs by running agreed search terms through the

---

    [1]    As you noted in your August 2, 2018 letter, we stated during the first of our two meet-and-confers on July 31, 2018 that we would attempt to provide a letter response on August 1, 2018 or early August 2, 2018. However, during the second meet-and-confer that afternoon, CDK requested that Cox Automotive and AutoLoop attempt to run more than 60 modified searches. Those searches were time consuming.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

documents of agreed custodians and would produce responsive documents returned by those searches, subject to several limitations. As a result, CDK will receive many of the irrelevant (or marginally relevant) documents that it has requested from Cox Automotive and AutoLoop. On our July 20, 2018 meet-and-confer, we further explained that we would be willing to consider additional targeted searches for specific documents proposed by CDK. We have not yet received a response to that offer.

Our July 26, 2018 letter explains the limitations that we would impose during our search and review of custodial documents. *First*, we will only produce documents that relate to the applications at issue in this litigation. You have asked us to explain what we mean by the applications "at issue." By that, we mean the Cox Automotive applications and AutoLoop applications that have been harmed by CDK's and Reynolds' anticompetitive conduct and for which we seek damages or other relief in this litigation. Those claims are described in our complaints. This is a proper limitation because there is no basis for CDK to seek documents regarding applications that Cox Automotive and AutoLoop do not allege were harmed or for which they do not seek damages or other relief.

*Second*, we explained in our July 26, 2018 letter that we would only produce documents about the applications at issue that relate to (1) damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's and Reynolds' anticompetitive conduct, (2) data integration of Cox Automotive's applications and AutoLoop's applications with any DMS, and (3) any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS. For Cox Automotive, we would also produce documents that relate to (1) competition in the DMS market, (2) data integration with Dealertrack DMS, (3) the security, performance, and data integrity of Dealertrack DMS. As we have explained on several occasions, these categories are broad and include many documents that are not relevant to this litigation and that Cox Automotive and AutoLoop would be entitled to withhold from production.[2]

In your July 30, 2018 letter, on the July 31, 2018 meet-and-confer, and in your August 2, 2018 letter, you stated that these categories may be too narrow in some areas. Nonetheless, in your August 2, 2018 letter, you expressed the sentiment that there does not appear to be substantial disagreement on how to define these categories (a point on which we agree). Below we address the possible areas of disagreement:

1.      You requested that we include documents related to "competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds." We believe any relevant information in that category would already be subsumed within the category for documents relating to "damages suffered by . . . applications as a result of CDK's and Reynolds' anticompetitive conduct." That category includes documents relating to competition between Cox Automotive's applications and AutoLoop's applications and CDK's applications and Reynolds' applications. To avoid any confusion, we will agree to change this

---

[2]      Your August 2, 2018 letter incorrectly refers to these categories as "relevancy issues." These categories are broader than what is relevant to this litigation. We offer to produce documents from these broad categories only as a compromise.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

category to have two subparts:  (a) "damages suffered by . . . applications as a result of CDK's and Reynolds' anticompetitive conduct" and (b) "competition between the Cox Automotive and AutoLoop applications at issue and CDK's and Reynolds' applications."  This reformulation does not change the substance of our prior description, and we believe it (as well as the prior version) covers all potentially relevant documents on these issues (and more).  Please let us know if this satisfies your concerns.

2.      You requested that we include documents relating to "data integration."  We believe that such documents would already be subsumed within the categories of documents relating to "data integration of Cox Automotive's applications and AutoLoop's applications with any DMS" and "data integration with Dealertrack DMS."  You mentioned on our July 31, 2018 meet-and-confer that these categories might exclude hypothetical documents in Cox Automotive's or AutoLoop's possession about the data integration of applications of other vendors with non-Dealertrack DMS.  We believe that there would not be substantial numbers of documents falling in that very specific category, and further, that any such documents would be irrelevant.  But to alleviate any concern you might have, we reiterate that you will also receive documents relating to "competition in the DMS market," which would include documents concerning the differences between the data integration practices of DMS providers.  Please confirm that this clarification adequately addresses your concerns.

3.      You requested that we include documents relating to "access to DMSs" and "third-party access to DMSs, including DealerTrack's DMS."  As we explained on the July 30, 2018 meet-and-confer, we understand those categories to be almost entirely subsumed within the category of documents relating to "data integration of Cox Automotive's applications and AutoLoop's applications with any DMS."  The only documents not falling within that category would concern data integration of applications of other vendors with non-Dealertrack DMS.  Again, we believe that it would be unlikely for Cox Automotive or AutoLoop to have any such documents, and that, if such documents existed, they would either be irrelevant or would be produced as relating to "competition in the DMS market."

In your August 2, 2018 letter, you state your understanding that our "data integration" category includes "all access to DMSs, including outside of CDK's 3PA and Reynolds' RCI programs."  That is correct with the caveat that we would not consider access to the DMS without any authorization from any party to fall within this "data integration" category (but such documents may fall within the "security" categories).  However, you also state that "data integration" includes "how Individual Plaintiffs use the data" and "whether they re-syndicate that data to other third parties."  That is incorrect.  Those issues have nothing to do with accessing the DMS, nor do they appear to have any relevance to this case.  Moreover, we are concerned that asking for all documents about how Cox Automotive and AutoLoop "use the data" seeks an enormous amount of competitively sensitive information – with no relevance to the case – about how Cox Automotive's applications and AutoLoop's applications function.  Seeking such information is a classic example of an improper fishing expedition.

We have asked you on at least two occasions to explain the relevance of how Cox Automotive and AutoLoop "use the data" and whether they "syndicate" data (the July 23, 2018 and July 31, 2018 meet-and-confers).  In your July 30, 2018 letter, you made the conclusory

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

assertion that "Cox or AutoLoop's distribution of data obtained from a CDK or Reynolds DMS to other third parties, including without CDK or Reynolds's authorization" are "issues that plainly are directly relevant to CDK's defenses." And on our July 31, 2018 meet-and-confer, you stated that unidentified experts may have an unspecified interest in such documents (in part, because they would show Cox Automotive's and AutoLoop's revenue from any such "syndication"). You also clarified that you were requesting documents relating to any "syndication" of data even if explicitly approved by CDK and Reynolds. Given these responses, we still do not understand how these documents are relevant to the case.

We understand from our July 31, 2018 meet-and-confer that CDK is considering moving to compel on these issues. Accordingly, it appears CDK may have already articulated in writing why such documents would be relevant. We would urge you simply to provide that information to us rather than engaging in needless motion practice. We remain willing to consider producing documents on these topics once CDK articulates their relevance.

    4.    You requested that we include documents relating to "competition in the DMS market, including any mention of CDK and/or Reynolds." We will already produce documents relating to competition in the DMS market, including with respect to CDK's DMS and Reynolds' DMS. However, we will not produce *all* documents mentioning CDK or Reynolds. We believe any relevant documents mentioning CDK or Reynolds would already fall within one of the six broad categories of documents that we will produce. If you believe there is any specific category of document mentioning CDK or Reynolds that is not already covered by our proposal, please let us know in writing, and we will consider it.

                    *            *            *

You also requested in your July 30, 2018 letter that we specify which specific RFPs may have responsive documents that could be reviewed but withheld by the proposal above. The simple answer is that our review of documents retrieved by running agreed search terms against agreed custodians will be limited in this manner for all RFPs, as we explained in our July 26, 2018 letter. Because the six categories of documents that we will produce are so broad, there are likely to be many RFPs for which no (or few) documents reviewed would be withheld. Accordingly, we do not think it is worthwhile to attempt to parse every RFP to determine whether there is any category of documents that may be responsive to the RFP but would be withheld. Nonetheless, we attempt to do so in Exhibit C to this letter, though we caution the precision of our efforts is severely limited by the overbreadth and vague wording of the RFPs.

**Specific RFPs.** In your July 27, 2018 letter, you raised possible compromises on several disputed RFPs. We address those below.

For **RFP 1, RFP 2, and RFP 8**, you have proposed limiting the requests to the three categories of documents in your July 30, 2018 letter. As we have explained above, we do not think there are any substantial differences between the categories you propose and the six broad categories we will use. Accordingly, we believe our existing proposal for custodial searches is appropriate. Please let us know if you disagree.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

For **RFP 4**, we are currently considering the proposal in your July 31, 2018 email that Cox Automotive produce "all documents provided to the FTC that are related to its acquisition of DealerTrack from the files of its custodians that hit agreed-upon search terms" and the Item 4(c) documents.

For **RFP 10**, you have proposed limiting the request to "[a]ll marketing materials that refer to DealerTrack, Your Applications, the OpenTrack program or API, and that reference or relate to CDK, Reynolds, and/or any CDK or Reynolds product . . . ." We believe our existing proposal for custodian searches will properly respond to this request. In particular, Dealertrack marketing and OpenTrack materials that reference CDK or Reynolds fall substantially (if not entirely) within the category of documents relating to "competition in the DMS market." And application marketing materials that reference CDK or Reynolds fall substantially (if not entirely) within the category of documents relating to "damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct" – as that those marketing materials would be relevant to competition between applications. Please let us know if you disagree with the sufficiency of our proposal.

**Search Terms.** We have now agreed to run 42 of 129 terms (for Cox Automotive) and 39 of 123 terms (for AutoLoop). As we explained in our July 26, 2018 letter, we objected to running the remaining search terms for several reasons. Most notably, the search terms hit on an overly burdensome number of documents and sought irrelevant or marginally relevant information. In particular, many of these terms targeted documents to support hypothetical counterclaims against Cox Automotive and AutoLoop regarding "unauthorized access" to CDK's DMS and Reynolds' DMS. CDK has no basis to engage in a fishing expedition for documents to support claims it has not even asserted and have no basis in fact. Many terms also sought documents from *Cox Automotive* and *AutoLoop* to explain the motivations for *CDK's* anticompetitive conduct. But evidence of CDK's motivations will be almost exclusively in CDK's possession.

Nonetheless, we attempted to compromise in our July 26, 2018 letter. We agreed to run 11 additional terms for Cox Automotive and 15 additional terms for AutoLoop despite the burden and lack of relevance of those terms. CDK did not accept this proposal. Rather, it continued to insist we run all terms (but three) with some modifications.

Given the October 12, 2018 deadline for document productions and the need to begin reviewing documents, we once again make a compromise offer. We now offer to run 87 of 129 terms for Cox Automotive and 77 of 123 terms for AutoLoop, shown by the green highlighting in Exhibits A and B. If CDK does not agree to these proposals, please respond in writing with a counterproposal with any additional terms that CDK insists on being included. If CDK insists on additional terms, we would encourage CDK to review its search term list and withdraw other requested terms that do not truly seek relevant documents. Once we have that proposal in writing, we are willing to meet-and-confer.

\*          \*          \*

- 5 -

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

In contrast to our transparent explanation of how documents will be searched, reviewed, and produced, CDK and Reynolds have yet to provide a similar explanation. On our July 20, 2018 and July 31, 2018 meet-and-confers, we requested that CDK and Reynolds also describe how its reviewers would be making relevancy determinations – *i.e.*, the equivalent of our six categories of documents that we would produce. During that call, CDK and Reynolds were unable to give any more specificity than that they would respond consistent with their written responses to the Plaintiffs' document requests, as well as dozens of follow-up letters and meet-and-confers. However, as one defendant acknowledged, those written responses, letters, and calls are not guidance that can be practically applied by reviewers to determine which documents were relevant and which documents are not. We thus have no way of knowing whether CDK and Reynolds have properly instructed the people who are actually reviewing the documents. Please be prepared to discuss these issues on our next meet-and-confer. We reserve all rights in this regard.

## II.  CDK's Interrogatories To Cox Automotive And AutoLoop

On our July 23, 2018 meet-and-confer and in Andy's July 30, 2018 letter, CDK raised a number of issues with respect to Cox Automotive's and AutoLoop's interrogatory responses. We address those below.

**Cox Automotive Interrogatory No. 2; AutoLoop Interrogatory No. 2 (Competitors).** We will accept your narrowing of these interrogatories and amend the responses, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 3 (DMS Switching).** Cox Automotive agrees to amend the response and respond to the interrogatory, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 7 (DealerTrack Third-Party Access).** Based on your description that this interrogatory covers "actions" and not just "practices," Cox Automotive will amend its response to the interrogatory if there is any additional information to add, including pursuant to Rule 33(d).

**Cox Automotive Interrogatories Nos. 8-13; AutoLoop Interrogatories Nos. 4-9.** As we explained during the July 23, 2018 meet and confer, we answered these interrogatories as written, which is in the present tense. When CDK wanted to ask about past practices, it did so. Having a generally applicable time period, which you maintain your interrogatories do, to differently worded interrogatories with respect to past and present tense is vague, ambiguous, and confusing. Far from a "gotcha" moment, Cox Automotive and AutoLoop answered the exact questions you asked. You now insist that Cox Automotive and AutoLoop respond to different interrogatories. Nevertheless, in the spirit of compromise, we will determine if the answers for the past would be different from the present for these interrogatories, and if so, amend the responses accordingly, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 14; AutoLoop Interrogatory No. 10 (Scripts And Executable Programs).** We are still considering how and whether to respond to this interrogatory. In particular, we are not certain whether this interrogatory is asking for scripts or

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

executable programs used by Cox Automotive, AutoLoop, or their data integrators, used by dealers, or both.  Please provide clarification.  We are also willing to meet-and-confer.

      **Cox Automotive Interrogatory No. 15; AutoLoop Interrogatory No. 11 (Unlawful/Unenforceable Terms).**  As we confirmed during the meet and confer, Cox Automotive's and AutoLoop's present answers are full and complete as of the date of their response.  Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery proceeds.  But for now, the additional specificity that you are seeking is apparently the pin cites to specific sections of CDK's "standard agreements with Dealers and Vendors."  Before we can answer that interrogatory, CDK will need to provide what it considers to be the "standard agreements with Dealers and Vendors."  Please do so, and we will amend the responses to provide that further specificity.

      **Cox Automotive Interrogatory No. 18; AutoLoop Interrogatory No. 14 (Access Fees).**  As we confirmed during the July 23, 2018 meet and confer, Cox Automotive and AutoLoop confirm their present answers are full and complete answers as of the date of their response.  Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery proceeds.

      **Cox Automotive Interrogatory No. 19; AutoLoop Interrogatory No. 15 (Frequency of Queries/DMS Access).**  During our meet and confer, we clarified that, as written, the interrogatory includes access to the Reynolds and CDK DMS through any means, including 3PA and any other authorized means.  Because such access is extremely voluminous, responding to this interrogatory as written is unduly burdensome, particularly given that such records of such authorized access should be equally available to Defendants.  You stated that you would consider whether or not to limit the request in light of that undue burden, and, on July 27, 2018, you proposed narrowing this interrogatory to the following: "Identify the number of times that You or Your Data Extractors (when acting on Your behalf or at your direction) have accessed and/or queried data maintained on a CDK DMS through means other than approved 3PA access during each month since January 1, 2013."  Cox Automotive and AutoLoop will amend their answers to regarding their use of independent integrators to the extent the requested information exists, including pursuant to Rule 33(d).

      **Cox Automotive Interrogatory No. 20; AutoLoop Interrogatory No. 17 (Manual Reporting Tools).**  During our meet and confer, you clarified that this request is targeted at instances where Cox or AutoLoop have received data from a Reynolds or CDK dealer other than through a third-party data integrator using screen-scraping technology.  With that clarification, AutoLoop and Cox Automotive will amend their answer to supply the requested information within their possession, if any, including pursuant to Rule 33(d).

      **Cox Automotive Interrogatories Nos. 21-23 (Facts Supporting Allegations).**  As we confirmed during the meet and confer, Cox Automotive's and AutoLoop's present answers are full and complete as of the date of their response.  Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery proceeds.  But for now, the additional specificity that you are seeking is apparently the

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

pin cites within the documents cited in these interrogatories. We will amend the responses to provide that further specificity.

      **Cox Automotive Interrogatory No. 24; AutoLoop Interrogatory No. 18 (Damages).**
As we confirmed during the July 23, 2018 meet and confer, Cox Automotive and AutoLoop confirm their present answers are full and complete answers as of the date of their response. Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery and expert analysis proceed.

                    Best regards

                    /s/ *Dan Dorris*

                    Dan Dorris

Enclosure

CC:    MDL Counsel Email List

**Exhibit A:  CDK's Proposed Search Terms to Cox Automotive[1]**

*Cox Automotive proposes to run search terms for all searches from January 1, 2013 to December 11, 2017 (the day Cox Automotive filed its complaint).  Cox Automotive's willingness to use any of CDK's proposed search terms is dependent on reaching a final reasonable agreement on custodians, and therefore Cox Automotive reserves all rights.*

| No. | Search Terms | Cox Comments |
|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | Not relevant;<br>Pro-competitive justification;<br>4,953 documents |
| 2 | (CDK OR Reynolds OR DMS OR or system) ~~AND~~ w/10 (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) | Not relevant;<br>Counterclaims;<br>55,719 (old); 16,946 (new) |
| 3 | "Data Authorization" | We are willing to run this term as a compromise. |
| 4 | (data /3 integrat*) ~~AND~~ w/20 (CDK or Rey* or RR or "R&R" or DMS or "dealer management system") OR (data /3 extract*) AND (CDK or Rey* or RR or "R&R" or DMS or "dealer management system") | Overly burdensome.  This revised proposal still hits 10,133 documents. |
| 5 | (DMS OR "dealer management system") /5 market* | Agreed. |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" | Agreed. |
| 7 | "nonpublic personal information" OR NPI | We are willing to run this term as a compromise. |
| 8 | "personally identifiable information" OR PII | Not relevant;<br>Pro-competitive justification;<br>2,648 documents |
| 9 | "Proprietary Data" | We are willing to run this term as a compromise. |

---

[1] Hit counts have been updated only for terms that have been modified in the most recent iteration of this chart.  Hit counts include family documents and are calculated using the most recent search parameters requested by CDK (as we understand them).  Currently, those search parameters use the 12 custodians contemplated by the parties' correspondence and a date range of January 1, 2013 to December 11, 2017.

| No. | Search Terms | Cox Comments |
|---|---|---|
| 10 | "secure web form" | We are willing to run this term as a compromise. |
| 11 | "sensitive personal information" | We are willing to run this term as a compromise. |
| 12 | "User Emulation" | We are willing to run this term as a compromise. |
| 13 | ((audit OR report OR assessment OR analysis) ~~AND~~ w/25 data) AND (privacy OR security) | Not relevant; Pro-competitive justification; 19,610 (old); 9,181 (new) |
| 14 | ((compet* or threat* or challeng* or superior* or compare*) w/15 (CDK)) AND (app* or solution* or product* or service*) OR ((app* or solution* or product* or service*) w/15 (compet* or threat* or challeng* or replac* or bypass*)) AND (DMS or "dealer management system") | Overly burdensome. This revised proposal still hits 7,037 documents. |
| 15 | (dealer w/5 data) w/20 ((retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) w/20 (manual OR push OR FTP)) | Agreed. |
| 16 | (los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang* or mov*) w/~~15~~ 5 (dealer or customer or contract or business or sale)) AND (DMS or "dealer management system" or app* or vendor or integrator or service* or product* or solution*)) | Overly burdensome. This revised proposal still hits 65,819 documents. |
| 17 | (((pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) w/5 data) AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | Agreed. |
| 18 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR  access OR secur* OR priva*) w/20 (data)) ~~AND~~ w/20 (polic* or practic*) | Not relevant; Pro-competitive justification; 24,225 (old); 4,523 (new) |
| 19 | ((Rey* or "R&R" or RR OR CDK OR ADP) w/10 (compar* or better or worse or "no* good" or more or less or close* or open)) AND (DMS or system) | Agreed. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 20 | ((security OR Data) AND (standard* OR rule* OR guid* OR memo* OR report)) AND w/20 (NADA OR AIADA OR "National Automobile Dealers Association" OR "American International Automobile Dealers Association") | Not relevant; Pro-competitive justification; 21,064 (old); 1,949 (new) |
| 21 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | Not relevant; Counterclaims; 2,693 documents |
| 22 | ((up w/3 front) or "up front" or install* or initial or recur* or month* or annual or (set w/3 up) or setup) w/20 5 (fee* or pric* or charg or rat* or bill or cost* or pay*)) and (extract* or integrat*)) | Overly burdensome.  This revised proposal still hits 36,500 documents. |
| 23 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | Not relevant; Pro-competitive justification; 5,679 documents |
| 24 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | Agreed. |
| 25 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | Not relevant; Counterclaims; 26,235 (old); 22,824 (new) |
| 26 | (*settle* or assign*) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 action or proceeding)) OR MDL OR "multi district") AND (CDK OR Reynolds OR RR OR Authenticom) | Not relevant; Miscellaneous; 14,117 (old); 5,332 (new) |
| 27 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | Agreed. |
| 28 | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) | Agreed. |
| 29 | (Authoriz* OR access OR stor* OR Secur*) AND w/20 (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) | Not relevant; Pro-competitive justification; 22,434 (old); 13,531 (new) |
| 30 | (BOD or "Board of Directors" or shareholder or investor) AND (minutes or notes or present*) AND (CDK or RR or Rey* or "R&R" or Authenticom or litigat* or Cottrell or "DMS MDL" or "Kellogg" or "1:18-CV-864") | Agreed. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 31 | (breach or hack or attack or data) AND w/10 (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire") | Not relevant; Pro-competitive justification; 47,553 (old); 6,868 (new) |
| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) | Agreed. |
| 33 | (CDK OR Drive) AND ((manual report*) (operational report*) OR ERPG OR (Enhanced Report Generator)) | Agreed. |
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) | Not relevant; Pro-competitive justification; 5,252 documents |
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | Agreed. |
| 36 | (CDK OR Reynolds OR R&R OR RR OR DMS or "Dealer Management System")) w/20 (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | Not relevant; Pro-competitive justification; 9,809 documents. |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) | Agreed. |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) w/5 10 (control or power or authority) AND w/10 (data or system) | Not relevant; Pro-competitive justification; 2,385 documents. |
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | Not relevant; Pro-competitive justification; 7,532 documents |

4

| No. | Search Terms | Cox Comments |
|---|---|---|
| 40 | (Compet* w/20 harm*) | Agreed. |
| 41 | (contract* or agree*) AND /w20 (CDK or Rey* or RR or "R&R") AND (term or year* or length or period) AND (CDK or Rey* or RR or "R&R") | Overly burdensome. This revised proposal still hits 13,925 documents. |
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer OR DMS OR "dealer management system") w/510 (win OR loss OR switch) | Overly burdensome. This revised proposal still hits 15,058 documents. |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) | Not relevant; Pro-competitive justification; 7,332 documents |
| 44 | (data AND integration) w/20 market | Agreed. |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) AND (DMS or "dealer management system" or CDK or RR or Rey* or "R&R") | Agreed. |
| 46 | "Dealer Management System" w/5 market | Agreed. |
| 47 | "DMS functions" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. |
| 49 | (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Rey* or RR or "R&R") AND w/10 (analy* or forecast or project* or survey* or evaluat* or stud* or (market w/3 share) or (market /3 condition) or compet*) | Overly burdensome. This revised proposal still hits 71,350 documents. |
| 50 | (DMS or "Dealer Management System") AND w/20 (promot* or rebate* or discount* or sale*) | Not relevant; Miscellaneous; 43,750 documents |
| 51 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND w/25 (contract* or agree* or provision* or section* or paragraph) AND (CDK or 3PA or "third party access" or "partner program" or "Access Program") | Overly burdensome. This revised proposal still hits 13,825 documents. |
| 52 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | Agreed. |
| 53 | (exclusiv*or sole or only) w/20 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system") | Agreed. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 54 | (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and (fee* or pric* or charge* or rate* or bill or ~~cost*~~ or pay* or paid or invoice*) ~~and~~ w/20 ((pass w/5 through) or passthrough or share* ~~or sent~~ or "passed to" or "passed on" or "pass on") | Overly burdensome.  This revised proposal still hits 20,740 documents. |
| 55 | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/1~~2~~0 (vend* or integrat* or appl* or Authenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS or SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | Overly burdensome.  This revised proposal still hits 45,348 documents. |
| 56 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") | Agreed. |
| 57 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) | Not relevant; Pro-competitive justification; 2,344 documents |
| 58 | (harm OR injur* OR disrupt* OR los* OR interrupt*) w/15 (Reynolds OR R&R OR RR OR CDK) | Agreed. |
| 59 | (CDK or RR or Rey* or "R&R" or Authenticom or Cottrell or Kellogg) ~~AND~~ w/20 (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative") | Overly burdensome.  This revised proposal still hits 3,541 documents. |
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) ~~AND~~ w/20 (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) | Not relevant; Pro-competitive justification; 27,937 (old); 16,991 (new) |
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | Not relevant; Pro-competitive justification; 3,043 documents |
| 62 | ((fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI or DealerVault or Authenticom or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes) ~~AND~~ w/20 (integrat* or extract* or ~~(~~data ~~w/3~~ access~~*~~)~~)~~ | Overly burdensome.  This revised proposal still hits 14,199 documents. |

6

| No. | Search Terms | Cox Comments |
|---|---|---|
| 63 | Withdrawn by CDK | N/A |
| 64 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10~~5~~ (DealerVault or Authenticom or Integrat* or vendor* or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) | Overly burdensome. This revised proposal still hits 45,348 documents. |
| 65 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*))) | Agreed. |
| 66 | (purchase or buy or sale or aquire or acquisition) ~~AND~~ w/20 (DMS or "dealer management system") | Not relevant; Miscellaneous; 33,687 (old); 10,149 (new) |
| 67 | "Query Builder" OR (QB AND Reynolds) | Agreed. |
| 68 | ("Report Generator" OR "report scheduler") AND (schedule or automat*) | Agreed. |
| 69 | (restrict* OR *authoriz* OR allow*) ~~AND~~ W/20 ((Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*)) | Not relevant; Miscellaneous; 18,060 (old); 1,291 (new) |
| 70 | (*reyrey.com) AND (*cdk.com or *adp.com) OR ((*reyrey.com or Rey" or RR or "R&R" AND CDK AND (DEA or "Data Exchange Agreement" or RCI or 3PA or "third party access" or "Access Program" or "partner program" or Authenticom or hostile or integrat* or extract* or block* or (access w/3 (DMS or data) or destroy* or market* or compet*)) | Overly burdensome. This revised proposal still hits 17,009 documents. |
| 71 | (Rey* OR RR or "R&R") w/20 (3PA or "third party access" or "access program")~~"Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access"~~ | Overbroad; 18,419 (old); 663 (new) |
| 72 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | Not relevant; Pro-competitive justification; 5,658 documents |
| 73 | (Secur* w/10 ( data or information)) AND (polic* OR plan) AND (DMS OR "Dealer Management System" ~~system~~) | Not relevant; Pro-competitive justification; 13,652 (old) 5,011 (new) |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 74 | ((secur* or priva*) ~~AND~~ w/10 data) AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) | Not relevant;<br>Pro-competitive justification;<br>18,215 (old);  6,811 (new) |
| 75 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | Overbroad;<br>285 documents |
| 76 | (Superior Integrated Solutions) OR SIS OR *@4-superior.com | Overbroad;<br>1,955 documents |
| 77 | (CDK OR Reynolds OR RR* OR "R&R" OR Autosoft or Dealerbuilt or PBS or Dominion or ~~("Adam~~ system" or "Adam DMS" ~~w/15 (system or DMS)~~) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/~~1~~20 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/~~5~~10 (corrupt* OR integrity)) OR (data w/~~10~~5 security)  OR complain* or investigat*) | Not relevant;<br>Pro-competitive justification;<br>34,146 (old); 25,385 (new) |
| 78 | ((Third w/3 Party) or thirdparty or "3rd party") AND ((access* OR poll* OR pull* OR scrap* OR extract*) ~~AND~~ w/20 (data or information) AND (CDK or Rey* or RR or "R&R" ~~or~~ OR DMS or ~~data or~~ "Dealer Management System") | Overly burdensome.  This revised proposal still hits 11,464 documents. |
| 79 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary | Agreed. |
| 80 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | Not relevant;<br>Counterclaims;<br>5,078 documents |
| 81 | (unauthorized w/5 access) w/20 (data OR server OR information) | Not relevant;<br>Counterclaims;<br>3,343 documents |
| 82 | (win or los* or cancel* or switch or defect* or mov* or chang* or transfer*) w/~~20~~10 (DMS or "dealer management system" OR CDK OR Rey* or "R&R" or RR or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "Auto Mate" or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop or vendor or integrat*) | Overly burdensome.  This revised proposal still hits 52,064 documents. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 83 | "secure web form" | We are willing to run this term as a compromise. |
| 84 | (("SOC" or SSAE or cybersec*) w/20 (hack* or breach*)) AND (data or system)~~"SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system))~~ | Not relevant; Pro-competitive justification; 20,642 (old); 372 (new) |
| 85 | Agreement w/20 (CDK OR Reynolds OR R&R) w/20 (illegal OR anticompet*) | Agreed. |
| 86 | anticompet* | Overbroad; 168 documents |
| 87 | antitrust | Overbroad; 1,567 documents |
| 88 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 | Overbroad; 5,234 documents |
| 89 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | Not relevant; Counterclaims; 4,057 documents |
| 90 | AutoLoop or ~~(loop w/3 llc) or~~ *Autoloop.net ~~or 18-cv-02521~~ | Overbroad; 5,268 (old); 4,906 (new) |
| 91 | (*cdk.com or *adp.com ~~or CDK or ADP~~) AND (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" or access* or scrap*) Note: This term was is run excluding *cdk.com and *adp.com from sender and addressee fields. | Overly burdensome.  This revised proposal still hits 4,086 documents. |
| 92 | Circumvent AND (security OR dms OR block*) | We are willing to run this term as a compromise. |
| 93 | cyber w/5 insurance | We are willing to run this term as a compromise. |
| 94 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" | Agreed. |
| 95 | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov | Overbroad; 6,065 documents |
| 96 | FTP w/3 push | Agreed. |
| 97 | (CDK or RR or REY* or "R&R") AND (hide or conceal or (cover w/3 up) or veil or bury) | Overbroad; 33,207 (old); 10,184 (new) |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 98 | (Illegal or unlawful or CFAA or (against w/3 (law or contract or agree* or regulat*)) or (prohibit* w/5 (law or contract* or agree* or regulat*))) AND (DMS or "dealer management system" or ((hostile or unauthoriz* or "not authorize*") w/5 (integrat* or access* or extract*))Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | Not relevant; Counterclaims; 11,989 (old); 4,493 (new) |
| 99 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | Agreed. |
| 100 | Lock w/10 account | Agreed. |
| 101 | OEM AND data AND (access*_pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) OEM AND data | Overbroad; 38,263 (old); 14,191 (new) |
| 102 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | Overbroad; 549 documents |
| 103 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | We are willing to run this term as a compromise. |
| 104 | Secur* w/20 (Audit* OR Standard OR proced*) | Not relevant; Pro-competitive justification; 5,041 documents |
| 105 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | Agreed. |

| No. | Search Terms | Cox Comments |
|---|---|---|
| 106 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv-01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | Agreed. |
| 107 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) | Agreed. |
| 108 | manual w/10 (report* or tool* or extract*) | Agreed. |
| 109 | (data or access or integrat* or extract* or CDK or Rey* or RR or "R&R") w/~~20~~ 10 (policy* or guideline* or rule* or requir*) | Overly burdensome. This revised proposal still hits 33,332 documents. |
| 110 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) | Overbroad; 12,540 documents |
| 111 | ((manag* /2 interfac*) OR 3PA OR RCI or "third party access" or "Access Program" or "Certified Interface" or ((CDK or RR or Rey* or "R&R") w/5 (DMS or "dealer management system"))) w/10 (agree* OR contract) | Overly burdensome. This revised proposal still hits 8,535 documents. |
| 112 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS) | Not relevant; Counterclaims; 4,508 documents |
| 113 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) | Agreed. |
| 114 | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (DMS or "Dealer Management System" or data or information)) AND (access* or integra* or *extract) | Not relevant; Counterclaims; 18,297 (old); 20,544 (new) |
| 115 | (Autotrader or "Dealer Dot Com" or "Dealer.com" or DealerTrack or "Dealer Track" or HomeNet or "Kelley Blue Book" OR vAuto OR VinSolutions or Xtime or RegUSA or RTS or "OLRS") ~~AND~~ w/10 ~~(DMS or "Dealer Management System" or~~ CDK or 3PA or Reynolds or R&R or RCI or integrat* or extract* or access* or hostile or data or unauthoriz* or authoriz* or Authenticom or DealerVault) | Not relevant; Counterclaims; 235,598 (old); 96,645 (new) |

11

| No. | Search Terms | Cox Comments |
|---|---|---|
| 116 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") | Agreed. |
| 117a | (DealerTrack w/5 acquisition) AND ("Cliff Bank" OR "Alex Taylor") "Alex Taylor*" OR "Cliff Bank*" OR "Automotive News" OR "BWG" | Overbroad; 15,824 (old); 96 (new) |
| 117b | (Dealertrack w/5 acquisition) w/20 ("DMS market" or "dealer management system market" or "third party access" OR CDK OR Rey* OR RR OR "R&R" OR compet*) | Overbroad; 530 documents |
| 118 | (Acquisition* or acquir*) /s DealerTrack | Overbroad; 6,917 documents |
| 119 | ("HSR" OR *Rodino*) AND DealerTrack* | Not relevant; Miscellaneous; 59 documents |
| 120 | (invest* OR cost* OR finac*) /20 (data /10 (secur* or access* or protect*)) (Invest* OR finac*) AND (DealerTrack* OR Cox* OR "data security" OR ((secur* OR access* OR limit* OR /s DMS)) | Not relevant; Pro-competitive justification; 99,582 (old); 2,674 (new) |
| 121 | DealerTrack AND w/20 (business AND (OR strategy OR plan)) | Overbroad; 36,758 (old); 2,718 (new) |
| 122 | ("solution gap*" OR bundl* /s (app* OR solution* OR service*)) | Not relevant; Miscellaneous; 9,187 documents |
| 123 | CDK* w/10 (nondisclosure* or share* or provide*) w/10 (fee* OR charge*) | Agreed. |
| 124 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | Agreed. |
| 125 | Non-DMS or (DMS w/5 alternative) | Agreed. |
| 126 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | Not relevant; Pro-competitive justification; 3,643 documents |

12

| No. | Search Terms | Cox Comments |
|---|---|---|
| **127** | (declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) | We are willing to run this term as a compromise. |
| **128** | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell | Agreed. |
| **129** | (Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort*) AND (CDK OR RR OR "R&R" OR Rey*) | Overbroad;<br>22,856 (old); 8,966 (new) |

13

**EXHIBIT B**

**CDK'S PROPOSED SEARCH TERMS TO AUTOLOOP**

*AutoLoop proposes to run search terms for all searches from January 1, 2013, to April 9, 2018 (the day AutoLoop filed its complaint). AutoLoop's willingness to use any of CDK's proposed search terms is dependent on reaching a final reasonable agreement on custodians, and therefore AutoLoop reserves all rights.*

| No. | Search Terms | AutoLoop Comments | De-duplicated Hits, Date Limited WITHOUT FAMILIES[1] | Notes |
|---|---|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 3736 | |
| 2 | (CDK OR Reynolds OR rey* OR RR OR "R&R" OR DMS OR system"dealer management system") w/20 (script* OR program OR executable OR bypass OR avoid OR ("work w/5 around") OR ("break w/5 (through OR down") OR evade) | Not relevant; counterclaims. | 14,942 (old) 10,582 (new) | |
| 3 | "Data Authorization" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 59 | |

---

[1] These search terms were run using a starting date of January 1, 2014. Extending the time frame by another year will substantially increase the hit count. Moreover, adding families to a search typically increases the total number of responsive documents by a factor of more than 2.

| | | | | |
|---|---|---|---|---|
| 4 | (data /3 integrat*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") OR (data /3 extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") | Agreed. | 4670 | |
| 5 | (DMS OR "dealer management system") /5 market*) | Agreed. | | |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" | Agreed. | | |
| 7 | "nonpublic personal information" OR NPI | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 8 | "personally identifiable information" OR PII | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 9 | "Proprietary Data" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 10 | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |

| | | | | |
|---|---|---|---|---|
| 11 | "sensitive personal information" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 12 | "User Emulation" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 13 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) | Not relevant; pro-competitive justification. | 3736 | |
| 14 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) AND (extract* OR pull* OR push* OR poll* OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain* OR gather* OR data)) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 31916 (old) 17826 (new) | |
| 15 | (CDK OR Rey* OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track")) w/20 data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) | Agreed. | 2312 | |

3

| | | | |
|---|---|---|---|
| 16 | ((compet* OR threat* OR challeng* OR superior* OR compare*) w/15 (CDK)) AND (app* OR solution* OR product* OR service*) OR ((app* OR solution* OR product* OR service*) w/15 (compet* OR threat* OR challeng* OR replac* OR bypass*)) AND (DMS OR "dealer management system") | This search term remains overbroad. | 3711 | |
| 17 | (dealer w/5 data) w/20 ((retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) | Agreed. | 1524 | |
| 18 | (los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang* or mov*) w/15 (dealer or customer or contract or business or sale)) AND (DMS or "dealer management system" or app* or vendor or integrator or service* or product* or solution*)) | This search term remains overbroad. | 21375 (old) 11743 (new) | |
| 19 | (((pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) w/5 data) AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | This search term remains overbroad. | 4144 | |
| 20 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1284 | |

| | | | | |
|---|---|---|---|---|
| 21 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 1468 | |
| 22 | (up w/3 front) or "up front" or install* or initial or recur* or month* or annual or (set w/3 up) or setup) w/~~20~~ 5 (fee* or pric* or charg or rat* or bill ~~or cost*~~ or pay*)) and (extract* or integrat*)) | This search term remains overbroad. | 14160 (old) 10342 (new) | |
| 23 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2653 | |
| 24 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | Agreed. | | |
| 25 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 3914 | |
| 26 | (*settle* or assign*) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR "multi district") | Not relevant; miscellaneous. | 2746 | |
| 27 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | Agreed. | | |
| 28 | ("Data element*" OR "data field*") w/20 ((CDK OR Reynolds) w/10 DMS) | Agreed. | | |

| | | | | |
|---|---|---|---|---|
| 29 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 863 | |
| 30 | (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) AND (CDK OR RR OR Rey* OR "R&R" OR Authenticom OR litigat* OR Cottrell OR "DMS MDL" OR "Kellogg" OR "1:18-CV-864") | AutoLoop is still exploring its alternative proposal. | | |
| 31 | (breach or hack or attack or data) AND (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire") AND (dealer* OR DMS* OR auto* OR integrat*) | Not relevant; pro-competitive justification. | 7818 (old) 7755 (new) | |
| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) | Agreed. | | |
| 33 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | Agreed. | | |
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1865 | |

6

| | | | |
|---|---|---|---|
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | Overbroad. | 8985 | |
| 36 | (CDK OR Reynolds OR RR w/10 (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | Agreed. | | |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) | Agreed. | | |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) w/5 (control or power or authority) w/10 (data or system) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 602 | |
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | AutoLoop does not believe this term is relevant. We are, however, willing to run this search term. | 27 | |
| 40 | (Compet* w/20 harm*) | Agreed. | | |

| | | | |
|---|---|---|---|
| 41 | ((contract* or agree*) w/20 (term or year* or length or period)) AND (CDK OR Rey* OR RR OR "R&R")(contract* or agree*) AND (term or year* or length or period) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 18229 (old) 1590 (new) | |
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | This search remains overbroad. | 3801 | |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1428 | |
| 44 | (data AND integration) w/20 market | Agreed. | | |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) | Agreed. | | |
| 46 | "Dealer Management System" w/5 market | Agreed. | | |
| 47 | "Dms function*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | |
| 49 | (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Rey* or RR or "R&R") AND w/10 (analy* or forecast or project* or survey* or evaluat* or stud* or (market w/3 share) or (market /3 condition)  or compet*) | This search remains overbroad. | 63343 (old) 12036 (new) | |

| | | | | |
|---|---|---|---|---|
| **50** | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| **51** | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph) AND (CDK OR 3PA OR "third party access" OR "partner program" OR "Access Program") | Agreed. | | |
| **52** | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | Agreed. | | |
| **53** | ((exclusiv* or sole or only) w/~~20~~ 10 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system")) AND (vend* OR extract* OR appl* OR integrat*) | Upon further document collection and analysis, this term is overbroad as written. AutoLoop is willing to meet and confer about reasonable modifications. | 22234 (old) 10021 (new) | |
| **54** | (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and (fee* or pric* or charge* or rate* or bill ~~or cost*~~ or pay* or paid or invoice*) ~~and~~ w/20 (~~"~~pass ~~w/5~~ through~~"~~) or passthrough or share* ~~or sent~~ or "passed to" or "passed on" or "pass on") | This search remains overbroad. | 26448 (old) 8162 (new) | |

| | | | |
|---|---|---|---|
| 55 | ((fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/10 (integrat* OR extract* OR (Authenticom or Dealervault OR SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | 15972 (old) 12028 (new) | |
| 56 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") | Agreed. | | |
| 57 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 593 | |
| 58 | (harm OR injur* OR disrupt* OR los* OR interrupt*) w/15 (Reynolds OR R&R OR RR OR CDK) | Agreed. | | |
| 59 | (CDK or RR or Rey* or "R&R" or Authenticom or Cottrell OR Cox) AND w/20 (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative")(Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative" | As originally formulated, the search string was overbroad. The search also seeks documents that are likely to be privileged, and thus the burden associated with the search is disproportionate to the likelihood of producing responsive, non-privileged documents. | 9559 (old) 5216 (new) | |

| | | | | |
|---|---|---|---|---|
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) ~~AND~~ w/10 (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) | Not relevant; pro-competitive justification. | 15792 (old) 6787 (new) | |
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1448 | |
| 62 | ((fee* or pric* or charge or rate* or bill ~~or cost*~~ or charge* or pay* or invoice) w/~~20~~ 10 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI ~~or DealerVault or Authenticom or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes)) AND (integrat* or extract* or (data w/3 access))~~ | This search remains overbroad. | 7915 (old) 8582 (new) | |
| 63 | (fee* or pric* or charge or rate* or bill ~~or cost*~~ or pay* or invoice) w/20 (data w/10 (~~or~~ access* or integrat* or extract*)~~3PA or "third party access" or "partner program" or "Access Program"~~) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 24933 (old) 5140 (new) | |
| 64 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10 (DealerVault or Authenticom or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1376 | |

11

| | | | |
|---|---|---|---|
| **65** | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*))) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 4625 | |
| **66** | "Query Builder" OR (QB AND Reynolds) | Agreed. | | |
| **67** | ("Report Generator" OR "report scheduler") AND (schedule or automat*) | Agreed. | | |
| **68** | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2799 | |
| **69** | (*reyrey.com) AND (*cdk.com OR *adp.com) OR ((*reyrey.com OR Rey OR RR OR "R&R") AND CDK AND (DEA OR "Data Exchange Agreement" OR RCI OR 3PA OR "third party access" OR "Access Program" OR "partner program" OR Authenticom OR hostile OR integrat* OR extract* OR block* OR (access w/3 (DMS OR data) OR destroy* OR market* OR compet*)) | Agreed. | | |
| **70** | "Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access" | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 7917 | |

| | | | | |
|---|---|---|---|---|
| 71 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1327 | |
| 72 | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2515 | |
| 73 | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) | Not relevant; pro-competitive justification. | 3158 | |
| 74 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 742 | |
| 75 | ((Superior Integrated Solutions) OR SIS OR *@4-superior.com) AND (extract* OR integrat* OR CDK OR Rey* OR RR OR "R&R" OR access*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 11233 (old) 8260 (new) | |

| | | | |
|---|---|---|---|
| 76 | (CDK OR ~~Reynolds~~ Rey* OR RR* OR "R&R" OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/~~20~~ 10 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/~~10~~ 5 (corrupt* OR integrity)) OR (data w/~~10~~ 5 security) OR complain* or investigat*) | Not relevant; pro-competitive justification. | 20765 (old) |
| 77 | (Third w/3 Party) OR thirdparty OR "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR data OR "Dealer Management System") | This search remains overbroad. | 4411 |
| 78 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary | Agreed. | |
| 79 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | Not relevant; counterclaims. | 3728 |
| 80 | (unauthorized w/5 access) w/20 (data OR server OR information) | Not relevant; counterclaims. | 905 |
| 81 | Withdrawn | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 145107 |
| 82 | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | |

| | | | | |
|---|---|---|---|---|
| 83 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) | Not relevant; pro-competitive justification. | 4770 | |
| 84 | Agreement w/20 (CDK OR Reynolds OR R&R) w/20 (illegal OR anticompet*) | Agreed. | | |
| 85 | anticompet* | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 107 | |
| 86 | antitrust | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 186 | |
| 87 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 | As formulated, this search term is overbroad. | 1044 | |
| 88 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | Not relevant; counterclaims. | 1068 | |
| 89 | (*cdk.com OR *adp.com) AND (integrat* OR extract* OR 3PA OR "third party access" OR "access program" OR scrap*) | Agreed. | 727 | This term is run excluding *cdk.com and *adp.com from the sender and recipient fields. |
| 90 | Circumvent AND (security OR dms OR block*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 91 | Withdrawn | As formulated, this search term is overbroad. | 13803 | |

| | | | |
|---|---|---|---|
| 92 | cyber w/5 insurance | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 93 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" | We are willing to compromise and run this search term. | | |
| 94 | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov | As formulated, this search term is overbroad. | 1956 | |
| 95 | FTP w/3 push | Agreed. | | |
| 96 | hide or conceal or (cover w/3 up) or veil or bury | As formulated, this search term is overbroad. | 1099 | |
| 97 | Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | Not relevant; counterclaims. | 4771 | |
| 98 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 99 | Lock w/10 account | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 100 | OEM AND data AND (access* pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain~~OEM AND data~~ | As formulated, this search term is overbroad. | 5764 (old) 3423 (new) | |

16

| | | | |
|---|---|---|---|
| 101 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 867 | |
| 102 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 103 | Secur* w/20 (Audit* OR Standard OR proced*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 788 | |

| | | | | |
|---|---|---|---|---|
| 104 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | Agreed. | | |
| 105 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv- 01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | Agreed. | | |
| 106 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) | Agreed. | | |
| 107 | manual w/10 (report* or tool* or extract*) | Agreed. | | |
| 108 | (*cdk.com OR *adp.com OR CDK OR ADP) ~~AND~~ w/10 (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*) | This search term remains overbroad. | 9095 (old) 8813 (new) | |

| | | | | |
|---|---|---|---|---|
| 109 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) | As formulated, this search term is overbroad and seeks information within CDK's possession. | 2739 | |
| 110 | (manag* /2 interfac*) OR 3PA OR RCI OR "third party access" OR "Access Program" OR "Certified Interface" OR ((CDK OR RR OR Rey* OR "R&R") w/5 (DMS OR "dealer management system"))) w/~~10~~ 5 (agree* OR contract*) | Agree. | 8420 (old) 1384 (new) | |
| 111 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1245 | |
| 112 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) | Agreed. | | |
| 113 | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract)) AND (DMS OR "dealer management system" OR data OR information) | Not relevant; counterclaims. | 7456 | |
| 114 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") | Agreed. | | |

19

| | | | |
|---|---|---|---|
| 115 | ("solution gap*" OR bundl* /s (app* OR solution* OR service*)) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1986 | |
| 116 | SmartLane* AND ("Service Edge*" OR CDK OR prob* OR issue* OR allow* OR access*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 5809 | |
| 117 | CDK* w/10 (nondisclosure* or share* or provide*) w/10 (fee* or charge*) | Agreed. | | |
| 118 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | Agreed. | | |
| 119 | Non-DMS or (DMS w/5 alternative) | Agreed. | | |
| 120 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2153 | |
| 121 | (declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) | Not relevant; counterclaims. | 2928 | |
| 122 | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell | Agreed. | | |

| 123 | Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort* | As formulated, this search term is overbroad. | 2607 | |

**Exhibit C**

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 1 | N/A | See letter |
| 2 | N/A | See letter |
| 3 | | Yes, but all possibly relevant documents covered by the six categories |
| 4 | N/A | See letter |
| 5 | | Yes, but all possibly relevant documents covered by the six categories |
| 6 | | None |
| 7 | 45 | Yes, but all possibly relevant documents covered by the six categories |
| 8 | | Yes, but all possibly relevant documents covered by the six categories |
| 9 | | None |
| 10 | | See letter |
| 11 | | None |
| 12 | | None |
| 13 | | None |
| 14 | 59 | None |
| 15 | | None |
| 16 | 60 | Yes, but all possibly relevant documents covered by the six categories |
| 17 | | None |
| 18 | 40 | Yes, but all possibly relevant documents covered by the six categories |
| 19 | 43 | Yes, but all possibly relevant documents covered by the six categories |
| 20 | | None |
| 21 | 41 | Yes, but all possibly relevant documents covered by the six categories |
| 22 | 44 | Yes, but all possibly relevant documents covered by the six categories |
| 23 | 46 | Yes, but all possibly relevant documents covered by the six categories |
| 24 | 1 | Yes, but all possibly relevant documents covered by the six categories |
| 25 | 2 | None |

[1] All responses are limited to the applications at issue (for AutoLoop) and the applications at issue and Dealertrack DMS (for Cox Automotive), and to the agreed date range. We do not repeat those limitations throughout.

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 26 | 3 | Yes, but all possibly relevant documents covered by the six categories |
| 27 | 4 | None |
| 28 | | Yes, but all possibly relevant documents covered by the six categories |
| 29 | 5 | Yes, but all possibly relevant documents covered by the six categories |
| 30 | 6 | None |
| 31 | 7 | None |
| 32 | 8 | Yes, but all possibly relevant documents covered by the six categories |
| 33 | 9 | None |
| 34 | 10 | None |
| 35 | 11 | None |
| 36 | 12 | None |
| 37 | | None |
| 38 | | None |
| 39 | | Yes, but all possibly relevant documents covered by the six categories |
| 40 | | None |
| 41 | | None |
| 42 | | None |
| 43 | | None |
| 44 | | None |
| 45 | 27 | Yes, but all possibly relevant documents covered by the six categories |
| 46 | | None |
| 47 | | None |
| 48 | 19 | Yes, but all possibly relevant documents covered by the six categories |
| 49 | 20 | None |
| 50 | 21 | Yes, but all possibly relevant documents covered by the six categories |
| 51 | 22 | Yes, but all possibly relevant documents covered by the six categories |
| 52 | 23 | Yes, but all possibly relevant documents covered by the six categories |
| 53 | 24 | Yes, but all possibly relevant documents covered by the six categories |
| 54 | | Yes, but all possibly relevant documents covered by the six categories |
| 55 | 25 | Yes, but all possibly relevant documents covered by the six categories |

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 56 | 26 | Yes, but all possibly relevant documents covered by the six categories |
| 57 | 28 | Yes, but all possibly relevant documents covered by the six categories |
| 58 | 29 | Yes, but all possibly relevant documents covered by the six categories |
| 59 | 30 | Yes, but all possibly relevant documents covered by the six categories |
| 60 | 31 | Yes, but all possibly relevant documents covered by the six categories |
| 61 | 32 | None |
| 62 | 33 | Yes, but all possibly relevant documents covered by the six categories |
| 63 | 34 | None |
| 64 | 14, 15 | None |
| 65 | 16 | None |
| 66 | 17 | None |
| 67 | 18 | None |
| 68 | | Yes, but all possibly relevant documents covered by the six categories |
| 69 | | See letter |
| 70 | | Yes, but all possibly relevant documents covered by the six categories |
| 71 | | See letter |
| 72 | 35 | None |
| 73 | 36 | None |
| 74 | 37 | None |
| 75 | | None |
| 76 | 38 | None |
| 77 | 47 | None |
| 78 | 48 | Yes, but all possibly relevant documents covered by the six categories |
| 79 | 49 | None |
| 80 | 50 | None |
| 81 | 51 | None |
| 82 | 52 | None |
| 83 | 53 | None |
| 84 | 54 | None |
| 85 | 55 | See letter |
| 86 | 56 | See letter |
| 87 | 57 | Yes, but all possibly relevant documents covered by the six categories |

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 88 | | Yes, but all possibly relevant documents covered by the six categories |
| 89 | | Yes, but all possibly relevant documents covered by the six categories |
| 90 | | Yes, but all possibly relevant documents covered by the six categories |
| 91 | | Yes, but all possibly relevant documents covered by the six categories |
| 92 | 61 | None |
| 93 | | None |
| 94 | 62 | None |
| 95 | | None |
| 96 | 13 | Yes, but all possibly relevant documents covered by the six categories |
| 97 | | Yes, but all possibly relevant documents covered by the six categories |
| 98 | 63 | None |
| 99 | 64 | None |
| 100 | 65 | None |
| 101 | 66 | None |
| 102 | 67 | None |
| 103 | 68 | Yes, but all possibly relevant documents covered by the six categories |
| 104 | 69 | Yes, but all possibly relevant documents covered by the six categories |
| 105 | 70 | None |
| 106 | 71 | None |
| 107 | | Yes, but all possibly relevant documents covered by the six categories |
| 108 | 72 | Yes, but all possibly relevant documents covered by the six categories |
| | 39 | None |
| | 42 | Yes, but all possibly relevant documents covered by the six categories |

# EXHIBIT 31

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

August 2, 2018

*Via Electronic Mail*

Brian Ross, Esq.                                    Britt M. Miller, Esq.
Gibbs & Bruns LLP                                   Mayer Brown
1100 Louisiana, Suite 5300                          71 South Wacker Drive
Houston, TX 77002                                   Chicago, IL 60606

Leo D. Caseria, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071

      Re:     *In re: Dealer Management Systems Antitrust Litigation*, MDL No. 2817
             *Motor Vehicle Software Corporation v. CDK Global*, Case No. 1:18-cv-865 (N.D. Ill.)

Dear Leo and Britt:

      I write regarding the issues raised by CDK, Reynolds, and CVR on our meet and confer on July 25, 2018, regarding MVSC's responses to Defendants' Requests for the Production of Documents ("RFPs") and Interrogatories.

      **I.**      **January 1, 2013 Baseline for Document Productions**

      Defendants suggested MVSC agree to a January 1, 2013 baseline for the production of responsive documents. For MVSC, we continue to believe that January 1, 2014 is more than appropriate. MVSC's collection from January 1, 2014, is already immense, numbering in the millions of documents. The burden of going back one more year is not commensurate or proportional with the needs of the case. As we understand it, Defendants believe MVSC should go back to January 1, 2013 because that is the general start for Defendants' collection. But Defendants are entirely differently situated, as they are the Defendants in multiple actions in this MDL. To the extent Defendants have specific RFPs that they think the January 1, 2013 start date should apply, MVSC will consider those. But it will not go back to January 1, 2013 as a general matter.

      **II.**      **MVSC RFP Responses**

      **RFP 9:** Marketing and business plans for Vitu. This request is overbroad to the extent it seeks not only MVSC's marketing and business plans for Vitu, but "all" documents "relating to" any such marketing and business plans. Nevertheless, in the spirit of compromise, MVSC will

agree to produce responsive, non-privileged marketing and business plans for MVSC's Vitu product pursuant to acceptable, agreed-upon search terms.

**RFP 17:** <u>Complaints about EVR providers.</u>  This request is similarly overbroad, but in the spirit of compromise, MVSC will agree to produce documents relating to "complaints" about either (1) MVSC's EVR service or (2) the EVR services of MVSC's competitors in the markets in which MVSC competes, pursuant to acceptable, agreed-upon search terms.

**RFP 19.** <u>MVSC's dealer contracts</u>.  MVSC will agree to produce representative samples of its standard contract with dealers throughout the relevant time frame (2014 to present) and contracts sufficient to show any variations from the standard terms.

**RFP 20.** <u>MVSC's communications with EVR providers</u>.  This request is overbroad as phrased, because it purports to encompass MVSC's communications with *any* EVR provider, including EVR providers that operate in states where MVSC does not compete or operate.  In the spirit of compromise, however, MVSC will agree to produce non-privileged communications with other EVR providers in California and Illinois on issues that are relevant to this case, to the extent any such communications exist and pursuant to acceptable, agreed-upon search terms.

**RFPs 35, 42, 47, 48.** <u>MVSC's use of independent integrators</u>.  These requests are duplicative and overbroad as phrased, but in the spirit of compromise, MVSC will agree to produce responsive, non-privileged documents (pursuant to acceptable, agreed-upon search terms) relating to (1) MVSC's use or contemplated use of independent integrators; and (2) communications between MVSC and independent integrators concerning MVSC's use or contemplated use of independent data integration services pursuant to acceptable, agreed-upon search terms.

**RFPs 36-37.** <u>MVSC's access to non-CDK, non-Reynolds DMSs</u>.  On the call, you stated that the terms and prices of MVSC's access to non-CDK, non-Reynolds DMSs are relevant as a benchmark against which to judge whether the prices that CDK and Reynolds quoted to MVSC were unreasonable.  In the spirit of compromise, MVSC will agree to produce documents sufficient to show MVSC's terms of access (including pricing) to non-CDK, non-Reynolds DMSs.

**RFPs 43-44.** <u>Legality of independent integrators and the CFAA</u>.  The Computer Fraud and Abuse Act has no conceivable relevance to this case.  Judge St. Eve already rejected Reynolds' antitrust injury argument based upon the CFAA, and that decision is "law of the case."  Status Hr'g Tr. 31:3-4 (June 18, 2018) (Judge Dow).  On our call, Reynolds indicated it is using these requests to investigate potential – but unalleged – CFAA counterclaims against MVSC.  But there is no CFAA claim that can be brought against MVSC consistent with Rule 11.  MVSC does not access the Reynolds DMS, and Reynolds has no good-faith basis to allege that MVSC has somehow conspired with independent integrators by doing what automotive vendors nationwide have done for more than a decade, *i.e.*, used dealer-authorized independent integrators to access dealer data in the ordinary course of business.  Moreover, Reynolds' attempt to use discovery as a fishing expedition to support claims it might bring in the future – but presently has no basis to allege – is improper.  As CDK recently argued in this MDL, courts "are unanimous in prohibiting discovery from being used as a 'fishing expedition'" to gather

"material they can use to support new claims." Dkt. 197, at 10. MVSC stands on its objections to these Requests.

**RFP 49.** <u>Complaints about independent integrators.</u> Defendants explained on our call that the quality of independent integrators may be relevant to show that MVSC stopped using independent integrators because MVSC was displeased with the quality of their services or because dealers complained about independent integrators, separate and apart from any conduct on Defendants' part. That is speculative at best, but in the spirit of compromise, MVSC will agree to produce responsive, non-privileged documents, if any exist, concerning any decision or contemplated decision by MVSC to stop using independent integrators because of the quality of service, pursuant to acceptable, agreed-upon search terms.

**RFPs 57, 59-62, 66:** <u>MVSC's security policies and practices.</u> Defendants have failed to articulate how MVSC's own security policies and practices are relevant to its claims, especially the core claim that CDK and Reynolds blocked MVSC from their data integration programs. Not even Defendants claim that MVSC's security policies and practices played any role in their decision with respect to MVSC's participation in their data integration programs. But in the spirit of compromise, MVSC will agree to produce responsive, non-privileged documents, if any exist, sufficient to show MVSC's data security policies and practices, any data breach suffered or thwarted by MVSC, data security training, and MVSC's policies and practices with respect to the handling of login information, pursuant to acceptable, agreed-upon search terms

**RFP 67:** <u>MVSC's market analyses and long-range business plans.</u> This request is overbroad as phrased, but in the spirit of compromise, MVSC will agree to produce responsive, non-privileged (1) analyses of competition in the EVR market within MVSC's possession and control and (2) documents sufficient to show MVSC's long-term plans to operate and expand its EVR business, pursuant to acceptable, agreed-upon search terms.

**RFP 76.** <u>MVSC's communications with eLead.</u> On our call, you explained this Request is seeking any non-privileged communications between MVSC and eLead relating to the claims in this case. After a reasonable investigation, there are no such communications.

**RFP 77.** <u>MVSC's awareness of the facts giving rise to its claims.</u> On our call, you indicated you may drop this Request. Please confirm that is the case.

### III. <u>MVSC's Interrogatory Responses</u>

**Interrogatory 8.** <u>Identifying witnesses cited in MVSC's Complaint</u>: MVSC will amend its response to this Interrogatory with the assurance from Defendants that they will not retaliate against of the named individual(s).

**Interrogatories 14-15**. <u>Reynolds' CFAA Interrogatories</u>: MVSC will amend its response to these Interrogatories to identify each independent data integrator that MVSC used to access a Reynolds or CDK DMS, including what MVSC understood to be the independent integrators' authority to provide those data integration services.

**Interrogatory 18.** <u>MVSC's security policies and practices</u>: MVSC will amend its response to this Interrogatory.

**Interrogatory 22.** MVSC's identification of independent integrator usage: We are currently investigating the issue Reynolds raised on our call with respect to MVSC's application to participate in the RCI program. MVSC will amend its response to this Interrogatory as appropriate.

**Interrogatory 25.** Logins and passwords: This Interrogatory asks MVSC to identify the logins and passwords provided to it by dealers and independent integrators. On our call, you indicated you would get back to us with an explanation as to why this Interrogatory has any conceivable relevance. In the meantime, MVSC stands by its objections.

**Interrogatory 26.** Non-franchised dealership customers: MVSC will amend its response to this Interrogatory.

**Interrogatory 29.** "Fair" price for data integration: MVSC reiterates that subjective opinions about what constitutes a "fair" price are irrelevant and that this is a contention Interrogatory that should be answered at the end of discovery rather than the beginning. CDK asked MVSC to clarify the "public pricing list" that priced data integrations services for EVR providers at under $50 per month per dealership rooftop. The "public pricing list" MVSC was referring to in its response to this Interrogatory was posted on CDK's website.

**Interrogatory 30.** Reynolds and CDK disabling of scripts: MVSC will amend its response to this Interrogatory.

**Interrogatory 31.** CDK and Reynolds threats to dealers. MVSC will amend its response to this Interrogatory.

**Interrogatory 36.** MVSC's new customers since 2014. MVSC will amend its response to this Interrogatory.


Very truly yours,

*s/ Michael N. Nemelka*

Michael N. Nemelka

# EXHIBIT 32

| | |
|---|---|
| **From:** | Provance, Matthew D. |
| **Sent:** | Thursday, August 02, 2018 9:17 PM |
| **To:** | Hughes, John; Michaels, Jessica A. |
| **Cc:** | Miller, Britt M.; Hastert, Ethan A.; SERVICE-EXTERNAL-DMS-MDL |
| **Subject:** | RE: DMS. Dealership Search term modifications and objections |

Talk to you tomorrow. I assume you mean 9:30 Eastern?

---

Matt Provance
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Hughes, John [mailto:jhughes@milberg.com]
**Sent:** Thursday, August 02, 2018 6:59 PM
**To:** Provance, Matthew D.; Michaels, Jessica A.
**Cc:** Miller, Britt M.; Hastert, Ethan A.; SERVICE-EXTERNAL-DMS-MDL
**Subject:** RE: DMS. Dealership Search term modifications and objections

Matt,

We are happy to try to make this an efficient call. Therefore, we will meet and confer regarding the Search Terms and CDK's Interrogatories if you will also confer with us on issues for which CDK owes answers to Dealership Plaintiffs. Our letter of July 31 requested a response by today regarding a number of issues with CDK's Responses to Dealership Plaintiffs' RFPs.

If we can speak about the issues on both sides, we can be available at 9:30 AM tomorrow.

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Thursday, August 02, 2018 3:57 PM
**To:** Hughes, John; Michaels, Jessica A.
**Cc:** Miller, Britt M.; Hastert, Ethan A.; SERVICE-EXTERNAL-DMS-MDL
**Subject:** RE: DMS. Dealership Search term modifications and objections

John, we received your letter. We take issue with much of it, and likely will be responding to its substance separately. However, I want to make one thing clear: our letter of last night was not a "substantive refusal to meet and confer regarding search terms." Rather, our letter identified the basic information, missing from your last-minute response regarding search terms, that not only CDK but all the parties in this MDL (including the Dealers) have found critically important when engaging in meaningful meet-and-confers regarding ESI search terms.  It was certainly appropriate for us to ask for this information, and to do so promptly. Nothing in our letter can be reasonably interpreted to state that CDK refuses to meet-and-confer; to the contrary, we said that "CDK remains open to working Dealership Plaintiffs in good faith to resolve the ongoing dispute relating to CDK's proposed search terms," and that we would "promptly make ourselves available to meet-and-confer on the issue" once we received your response. Of course, we remain skeptical that these issues can be resolved prior to the August 6 motions deadline, more so after seeing the tenor of your response letter, but in no way are we refusing to meet-and-confer.

I am available between 5:00 and 7:00 (Eastern) this afternoon, and then again early tomorrow morning. I would ask for efficiency's sake that when we schedule this call we also include a discussion of CDK's Interrogatories.

Thanks,
Matt

---

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Hughes, John [mailto:jhughes@milberg.com]
**Sent:** Thursday, August 02, 2018 12:48 PM
**To:** Michaels, Jessica A.
**Cc:** Miller, Britt M.; Hastert, Ethan A.; Provance, Matthew D.; SERVICE-EXTERNAL-DMS-MDL
**Subject:** Re: DMS. Dealership Search term modifications and objections

Jessica -

Please see our response to CDK's letter of last night.

John Hughes
Attorney at Law*
**Milberg Tadler Phillips Grossman LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
T: 212.594.5300
F: 212.868.1229
Jhughes@milberg.com

*Licensed in Michigan only

**From:** Michaels, Jessica A. <JMichaels@mayerbrown.com>
**Sent:** Thursday, August 2, 2018 12:38:34 AM
**To:** Hughes, John
**Cc:** SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com; Miller, Britt M.; Hastert, Ethan A.; Provance, Matthew D.
**Subject:** RE: DMS. Dealership Search term modifications and objections

John –

Please see attached regarding Dealership Plaintiffs' modifications and objections to CDK's Proposed Search Terms.

Regards,
Jessica Michaels

**From:** Hughes, John [mailto:jhughes@milberg.com]
**Sent:** Wednesday, August 01, 2018 12:58 PM
**To:** FW-CLIENT-CDK-MDL-Team
**Cc:** DMSTeam; Nemelka, Michael N.; Rudofsky, Benjamin L.; Dorris, Daniel V.
**Subject:** DMS. Dealership Search term modifications and objections

Attached please find Dealership Plaintiffs' modifications and objections to CDK's Proposed Search Terms. We are available to meet and confer on these terms at your convenience.

John Hughes
Attorney at Law*
**Milberg Tadler Phillips Grossman LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
T:  212.594.5300
F:  212.868.1229
Jhughes@milberg.com

*Licensed in Michigan only

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.
Information about how we handle personal information is available in our Privacy Notice.

# EXHIBIT 33

MILBERG TADLER PHILLIPS GROSSMAN LLP

John D. Hughes
(212)594-5300
jhughes@milberg.com

August 2, 2018

**VIA EMAIL**

Jessica a Michaels, Esq.
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
JMichaels@mayerbrown.com

Re:   *In re Dealer Management Systems Antitrust Litig.*,
       MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Jessica:

        We write in response to CDK's letter of August 1, 2018 and substantive refusal to meet and confer regarding search terms.

        As we previously noted, the disparity in resources between CDK and the Dealerships in this MDL is immense.[1] In your August 1, 2018 letter you require that our clients, numerous small businesses from more than 20 locations around the country, submit to the collection of ESI for individuals who, as yet, have not been agreed to by CDK. The untargeted collection of documents for such unagreed custodians would cause an unwarranted disruption to our clients' daily business activities. Additionally, as you are aware, meet and confers on search terms to be applied to CDK and Reynolds custodians did not meaningfully begin until after the number and identity of Defendants' custodians had been established.

        Even at this late date, Dealership Plaintiffs believe that a meet and confer on the substance of CDK's search terms, despite the absence of an agreed list of custodians[2] will indeed

_____

[1] As noted in our complaint and CDK's own public filings, CDK is a multinational corporation with a market capitalization of $8 billion.

[2] We are open to meet and confer with CDK regarding our latest proposal for dealership custodians as well, though your letter of last night does not mention this proposal at all. Based on recent correspondence, we believe that the parties are reasonably close to an agreement.

One Pennsylvania Plaza 19th Floor ● New York, NY 10119 ● 212.594.5300 ● F 212.868.1229 ● www.milberg.com

Jessica A. Michaels
August 2, 2018
Page 2

be helpful in narrowing the issues between the parties. As we stated in a footnote accompanying our search term modifications and objections ,[3] in many instances, we object to the substance of many of your search terms and question their relevance to the case. Many of your proposed terms are simply overbroad and irrelevant such that they can be discussed in a substantive manner without the use of hit counts.[4]

Your requirement that Dealership Plaintiffs provide de-duplicated hit counts of all ESI collected is also unrelated to our ability to meaningfully meet and confer. The probability of duplicate documents from between the many named Dealerships is considerably less than for other parties, owing to the spread of proposed custodians across multiple dealerships.

Despite lack of agreement on custodians, efforts are underway to procure samples of our clients' ESI for a test similar to that which you demand. Given CDK's newly expressed barriers to any meet any confer on the search terms, we expect CDK will reject such a sample as unrepresentative as to CDK's requirements. Please let us know if that is not the case.

To avoid any purported prejudice to CDK regarding this issue, Dealership Plaintiffs would stipulate to suspending the August 6th motions deadline regarding search terms served on Dealership Plaintiffs so that we can attempt to work through these issues without involving the court. Please let us know if you are amenable to discuss possible terms of this proposal.

CC:     Derek T. Ho                          Sincerely,
        Michael Nemelka
        Benjamin Rudofsky                    */s/ John D. Hughes*
                                             John D. Hughes

---

[3] The footnote also narrows the terms to be discussed by listing those we believe to be targeted at discovery of cyber-security law, and therefore not subject to negotiation.

[4] By way of example: CDK's Search Term #60, (contract* OR agree*) AND (term OR year* OR length OR period),would include any discussion of any agreement or contract entered into by our clients, whether with their retail customers or with the parties to this litigation and could easily be narrowed. Search Term #122 is simply a list of words, hide OR conceal OR (cover w/3 up) OR veil OR bury, with no reference to the subject matter of this litigation. Search Term #135 is simply a list of the dealerships' names and employees which, without modification will likely return every email in every account searched at those dealerships with no regard to relevance. Search Term #119 is simply the word "disable", which again, without more is entirely untargeted.

MILBERG TADLER PHILLIPS GROSSMAN LLP

# EXHIBIT 34

**Sheppard**Mullin

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

File Number: 48KZ-266044

August 3, 2018

**VIA EMAIL**

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215
mnemelka@kellogghansen.com

      Re:     *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL
No. 2817 (N.D. Ill.)

Dear Mike:

I write in response to your August 2, 2018 letter and to follow up on our telephonic meet and confers on August 2 and 3 regarding Defendants' discovery requests to MVSC.

**1.   January 1, 2013 Date Cut-Off For Discovery**

The parties are at impasse on the appropriate date cut-off for discovery. Defendants believe it should be January 1, 2013, while MVSC believes it should be January 1, 2014. MVSC is the only party in this entire MDL seeking a discovery cut-off later than January 1, 2013.

A cut-off of 2014 cannot be justified for MVSC. MVSC filed its original complaint in February 2017. The statute of limitations applicable to MVSC's federal antitrust claims is four years, dating back to February 1, 2013. MVSC is alleging a conspiracy that may have existed prior to 2014. *See* Second Amended Complaint ("SAC") ¶¶ 11, 100. Based on our telephonic meet and confers, our understanding is that MVSC is seeking damages for the entire limitations period. Furthermore, MVSC alleges that Defendants unlawfully blocked MVSC from joining RCI and 3PA, and MVSC applied to join RCI in 2013.

For all of these reasons, Defendants are entitled to discovery from MVSC going back to January 1, 2013. Materials from 2013 are essential to fully understanding and defending against MVSC's claims and allegations, including on issues relating to liability, causation and damages.

Michael N. Nemelka
August 3, 2018
Page 2

### 2. RFP 19 (MVSC's dealer contracts)

Thank you for clarifying that the "representative samples" you refer to will include materials sufficient to understand the different contract variations that MVSC has with dealers, and materials sufficient to support MVSC's claims. Defendants agree with this proposed compromise.

### 3. RFPs 35, 42, 47, 48 (MVSC's use of data brokers)

MVSC's August 2 letter states that it is willing to search for and produce documents relating to "(1) MVSC's use or contemplated use of independent integrators; and (2) communications between MVSC and independent integrators concerning MVSC's use or contemplated use of independent data integration services pursuant to acceptable, agreed-upon search terms."

During our phone call we clarified that MVSC's proposed compromise includes: (1) internal (not just external) communications or documents; (2) documents discussing or evaluating independent data integrators even if those integrators were not used by MVSC; and (3) documents referring to competition between or among independent data integrators.

With the above clarifications, Defendants agree with this proposed compromise.

### 4. RFPs 43-44 (CFAA issues)

RFP 43 seeks documents referring to the "legality or illegality" of independent data integrator conduct, and RFP 44 seeks documents reflecting MVSC's knowledge or intent that an independent data integrator would access a Reynolds or CDK DMS without authorization from Reynolds or CDK. Based on our August 3 call, Defendants understand that MVSC is agreeing to produce responsive documents subject to agreement regarding search terms.

### 5. RFP 49 (Complaints about data brokers)

RFP 49 requests "[a]ll documents relating to complaints about independent data integrators or their products or services." Based on our August 3 call, Defendants understand that MVSC is agreeing to produce responsive documents subject to agreement regarding search terms.

### 6. RFP 67 (marketing plans, strategic plans, business plans, etc.)

You confirmed that in addition to the materials described in your letter, MVSC would produce MVSC's marketing plans, strategic plans and business plans in response to RFP 67.

### 7. RFPs 50 and 54 (RFPs left out of MVSC's August 2 letter)

Your August 2 letter did not address Defendants' RFPs 50 (security issues) and 54 (payments to integrators). You confirmed on our call that MVSC would produce materials

Michael N. Nemelka
August 3, 2018
Page 3

responsive to RFP 54. You also confirmed that MVSC would produce materials responsive to RFP 50, subject to agreement regarding search terms, which the parties are still negotiating.

**8. RFPs 9, 17, 20, 36-37, 57, 59-62, 66, 76, 77 (remaining RFPs referenced in August 2 letter)**

With respect to the remaining RFPs set forth in MVSC's August 2 letter, Defendants are in agreement with MVSC's proposed compromise positions.

**9. Centralized Files**

You confirmed on our call that to the extent MVSC is responding to Defendants' RFPs, it will search centralized files likely to contain material responsive to those RFPs.

**10. Interrogatories**

You confirmed that to the extent that MVSC comes across documents containing Reynolds or CDK DMS logins and passwords provided to it by dealers or independent data integrators (or documents just containing passwords), you would not exclude those from MVSC's production. This resolves our dispute regarding Interrogatory No. 25.

With respect to the remaining interrogatories, thank you for agreeing to amend them. Reynolds reserves the right to have further meet and confers or file additional motions to compel after August 6 depending on how those are amended.

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227876039.2

# EXHIBIT 35

# MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 3, 2018

<u>By E-Mail</u>

Matthew D. Provance
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

Robert A. Wallner
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        <u>MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)</u>

Dear Rob:

I am writing to follow-up on CDK's discovery requests (RFPs and Interrogatories) and proposed document custodians for the Dealership Class Plaintiffs. After several rounds of correspondence and meet-and-confers, this letter confirms the parties' respective positions.

## I.      Requests for Production

*"Publicly Available" Documents:*     We explained why otherwise responsive documents in the Dealership Class Plaintiffs' possession, custody, or control should not be withheld on the grounds that they are purportedly "publicly available." No other party in this MDL has taken this position as a general basis for withholding relevant and responsive discovery. Your letter confirms that the Dealership Class Plaintiffs are.[1] We are at issue.

*Requests No. 1, 7, 8, 9, 10, 11, 12, 13, 14, 17, 19, 22, 23, 24, 25, 27, 29, 31, 49, 50, 52, 53, 54, 55, 56, 57, 59, 60, 61, 62, 63, 71 & 72:*     We do not believe that we "misunderstand the Dealership Plaintiffs' position" on these Requests. We are at an impasse.

*CDK Request No.5:*     Documents that are relevant and responsive to this Request include more than documents that contain the literal phrase "exclusive dealing provisions," yet that is the only thing that the Dealership Class Plaintiffs are willing to produce. We are at an impasse.

*CDK Request No. 30:*     Thank you for the clarification that Dealership Class Plaintiffs intend to produce documents "sufficient to show whether a Vendor or Data Extractor acts, or have ever

---

[1]     Your July 28 letter states that for Requests 87, 88, 89, 97, 98, and 99, "to the extent Dealership Plaintiffs identify responsive documents that are publicly available but have not been identified or provided to CDK in the past, Dealership Plaintiffs will produce those documents *or direct CDK to their locations.*" So for all the other Requests, responsive documents that are purportedly "publicly available" are being withheld. And even for Requests 87, 88, 89, 97, 98, and 99, the Dealership Class Plaintiffs maintain the option of "direct[ing] CDK to their locations," which is both vague and improper.

Mayer Brown LLP

Robert A. Wallner
August 3, 2018
Page 2

acted, as Dealership Plaintiffs' agent with respect to accessing Dealership Plaintiffs' own data on a Reynolds or CDK DMS" through a production of pre-existing records such as contracts and emails. That resolves our dispute over this Request.

*CDK Requests No. 39, 43:* The Dealership Class Plaintiffs rejected CDK's offer for compromise, and therefore we are at an impasse.

*CDK Requests No. 33, 34, 35, 36, 48:* Thank you for agreeing that in response to Request 34, the Dealership Class Plaintiffs will produce documents sufficient to show all up-front, initial (non-recurring) and monthly fees that each Plaintiff has paid for DMS services, back to January 1, 2013. With respect to Requests 33, 35, 36, and 48, the Dealership Class Plaintiffs continue to refuse to produce responsive documents, stating that the "relevant" portions of RFPs 33, 35, 36, and 48 are subsumed within other Requests. We are at an impasse.

*CDK Requests No. 40, 42, 44:* The Dealership Class Plaintiffs' proposal to respond to these Requests is not sufficient. They refuse to produce responsive documents that are not subsumed within other Requests, except for documents reflecting "a request for quote or request for proposal from a competing DMS provider issued by a named dealership." That single category of documents is far from the only relevant, non-duplicative material that is responsive to these Requests. Accordingly, we are at an impasse.

*CDK Request No. 46:* The Dealership Class Plaintiffs' proposal to produce "documents wherein Dealership Plaintiffs refer to CDK and/or Reynolds' market share in the DMS market" is insufficient. First, our July 16 letter was not intended to limit this Request to seeking market share information for DMS services—it seeks such information for both Applications and DMS services. Both are relevant. Moreover, market share information for competing providers besides CDK and Reynolds are also relevant. We are at an impasse.

*CDK Request No. 47:* We are at an impasse.

*CDK Request No. 51:* Contrary to your July 28 letter, this Request does not seek "all correspondence from NADA, AIADA, or from any other Dealership association that concern only 'data' in the abstract or merely the use of data from any DMS in the day to day operations of Dealership Plaintiffs' business." The Request is specific to industry standards or guidance regarding DMS access, data distribution, data scraping, data security, or data privacy. Moreover, it is not limited to industry standards or guidance that originate from just the NADA or the AIADA. Industry standards or guidance from other sources are relevant, and this Request is appropriately phrased as-is. We are at an impasse.

*CDK Request No. 58:* We are at an impasse.

*CDK Request No. 64:* Thank you for confirming that the Dealership Class Plaintiffs are producing documents responsive to this Request. That resolves our dispute.

Mayer Brown LLP

Robert A. Wallner
August 3, 2018
Page 3

*CDK Requests No. 66, 69, 70, 73:*  It appears that the Dealership Class Plaintiffs have accepted CDK's proposal as to these Requests.  That resolves our dispute.

*CDK Request No. 84:*  The Dealership Class Plaintiffs' limitation is improper:  there are relevant documents that may be responsive to this Request beyond those that literally use the phrases "anticompetitive" or "harmful to competition."  We are at an impasse.

*CDK Request No. 85 & 96:*  We are at an impasse.

*CDK Request No. 91:*  We asked the Dealership Class Plaintiffs to confirm that no documents responsive to this Request (documents related to the Dealers' damages claims) were being withheld.  You did not.  Therefore, we are at an impasse.

*CDK Request No. 97, 98, 99:* We are in agreement.

*CDK Request No. 100:*  CDK accepts the Dealership Class Plaintiffs' proposal.

## II.      Interrogatories

*Missing Responses:*  Earlier this afternoon, we received supplemental Interrogatory responses on behalf of the following Plaintiffs:  John O'Neil Johnson Toyota, LLC; Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; Warrensburg Chrysler Dodge Jeep, LLC d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat; and Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota.  We are reviewing those supplemental responses and reserve the right to raise issues concerning any deficiencies, as appropriate, following the August 6 motions deadline.

*Interrogatory No. 3:*  We accept the Dealership Class Plaintiffs' representation that to the extent each Plaintiff has information that is responsive to subparts (1)-(4) of this Interrogatory, the information will be produced either in a supplemental response or pursuant to Rule 33(d).

*Interrogatories No. 8 & 9:*  We confirmed during our meet-and-confer earlier this morning that the parties are at an impasse with respect to these Interrogatories.

## III.     Document Custodians

Thank you for your August 1 letter and counter-proposal for Dealership Class Plaintiff document custodians.  It appears that we have reached agreement on custodians for most Dealers.

1. ACA Motors, Inc. d/b/a Continental Acura; Continental Autos, Inc. d/b/a Continental Toyota; Continental Classic Motors, Inc. d/b/a Continental Autosports; 5800 Countryside, LLC d/b/a Continental Mitsubishi; HDA Motors, Inc. d/b/a Continental Honda; H & H Continental Motors, Inc. d/b/a Continental Nissan; Naperville Zoom Cars, Inc. d/b/a Continental Mazda; NV Autos, Inc. d/b/a Continental Audi

Mayer Brown LLP

Robert A. Wallner
August 3, 2018
Page 4

    a. We have reached agreement on the following document custodians, which resolves our outstanding issues: Dale Batson, Mark Johnson, Cheryl Nelson, Joel Weinberger and Jay Weinberger.

2. Baystate Ford Inc.

    a. We have reached agreement on the following document custodians, which resolves our outstanding issues: Frank Lupaccino, Ronnie Eames, and Heather Pauliks.

3. Cherry Hill Jaguar

    a. We have reached agreement on the following document custodians, which resolves our outstanding issues: Tom Hessert, II and Michele Condo.

4. Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat

    a. We have reached agreement on Cliff Harris. In addition, CDK accepts your representation—subject to confirmation against these Dealers' forthcoming Interrogatory responses—that Linda Smith is, along with Mr. Harris, most likely to possess relevant ESI related to data integration and actual and potential DMS providers. Therefore, it appears that our issues are resolved.

5. Gregoris Motors, Inc.

    a. We have reached agreement on the following document custodian, which resolves our outstanding issues: Robert DeGregoris.

6. Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville

    a. We have reached agreement on the following document custodian, which resolves our outstanding issues: Keith Roberts.

7. JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Patchogue 112 Motors LLC d/b/a Stevens Ford

    a. We have reached agreement on the following document custodians, which resolves our outstanding issues: David Benstock and Steve Gomes.

8. Jim Marsh American Corporation d/b/a Jim Marsh Kia and Jim Marsh Chrysler/Jeep

    a. We have reached agreement on Andy Kerby. We appreciate the Dealership Class Plaintiffs' offer of Gail Jones instead of Rule 26(a)(1) witnesses Jim Marsh, Allen Yarborough, and Mark Grim, but it is not sufficient. Mssrs.

Mayer Brown LLP

Robert A. Wallner
August 3, 2018
Page 5

Marsh, Yarborough, and Grim may testify at trial for the Dealership Class Plaintiffs; we need to take discovery of their documents. Thus, we are at an impasse concerning these additional three custodians.

9. John O'Neil Johnson Toyota, LLC

   a. The Dealership Class Plaintiffs' August 1 letter did not respond to our offer regarding John O'Neil Johnson Toyota document custodians. The parties are at an impasse with respect to this Dealer.

10. Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota

    a. We have reached agreement on Kelly Thomas. In addition, CDK accepts your representation—subject to confirmation against Kenny Thomas Enterprises' forthcoming Interrogatory responses—that Tracy Davis is, along with Ms. Thomas, a proper custodian of documents concerning the dealership's arrangements for DMS services and other third parties. Therefore, it appears that our issues are resolved.

11. Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC

    a. We have reached agreement on the following document custodian, which resolves our outstanding issues: Tom Stever.

12. Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram

    a. We have reached agreement on Alan Graf Jr. If, contrary to Teterboro Automall's interrogatory responses, Alan Graf, Sr., does not negotiate with DMS providers, Data Extractors, or Vendors, then we propose that Teterboro Automall identify an alternative document custodian who does. We further request that Teterboro Automall amend its Interrogatory responses to correct the inaccuracies concerning Alan Graf, Sr., pursuant to Rule 26(e).

13. Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram

    a. We have reached agreement on the following document custodians: Andy Strong and Eric Strong. It appears you are correct about "Amy Strong," and we withdraw our request. Thus, our issues are resolved.

Mayer Brown LLP

Robert A. Wallner
August 3, 2018
Page 6

Sincerely,

*/s/ Matthew D. Provance*
Matthew D. Provance
cc:    Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

# EXHIBIT 36

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

Jessica A. Michaels
Direct Tel +1 312 701 7121
Direct Fax +1 312 706 8135
jmichaels@mayerbrown.com

August 3, 2018

<u>By E-Mail</u>

John Hughes
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

Re:    *In re Dealer Management Systems Antitrust Litig.*,
       MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear John:

Thank you for the meet-and-confer today. Per our discussion, we understand the following:

1. The Dealership Class Plaintiffs object to running any of the search terms identified in footnote 1 of their Modifications and Objections, regardless of the burden, if any, that is associated with those terms.[1]

2. The Dealership Class Plaintiffs' objections to certain other proposed search terms as "overly broad and burdensome" are not supported by any data (*e.g.*, hit counts, or anything else). As the Dealership Class Plaintiffs have yet to collect ESI from any custodian, you represented that such data does not exist and is not going to be forthcoming by the August 6 motions deadline.

Accordingly, and for the additional reasons noted in our August 1 letter, we will be filing a motion on Monday to address the Dealership Class Plaintiffs' failure to substantively engage regarding the search terms to be applied to their own ESI.

Additionally, in the interests of having a clear record, we respond below to the other assertions in your August 2 letter.

*First*, any "disparity in resources between CDK and the Dealerships" does not excuse the Dealership Class Plaintiffs from meeting their discovery obligations in this MDL. In failing to respond, much less substantively engage, with CDK concerning search terms for more than 65 days after those terms were first proposed, the Dealers unilaterally granted themselves an extension not afforded them by the Case Management Order or by agreement of any party.

---

[1]    We understand those proposed search terms include: 1, 2, 15 16, 20, 21, 22, 24, 25, 26, 27, 29, 30, 32, 34, 35, 43, 47, 52, 56, 61, 66, 82, 83, 84, 85, 88, 89, 90, 95, 96, 99, 100, 101, 103, 104, 110, 115, 118, 123, 132 and 134.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

John Hughes
August 3, 2018
Page 2

*Second*, your assertion that "meet and confers on search terms to be applied to CDK and Reynolds custodians did not meaningfully begin until after the number and identity of Defendants' custodians had been established" is incorrect. Substantive negotiations regarding Plaintiffs' proposed search terms to be applied to CDK's ESI—and the exchange of relevant data, such as hit counts—began weeks before CDK reached agreement with MDL Plaintiffs concerning CDK's custodians. Indeed, according to MDL Plaintiffs' counsel, the parties just reached agreement on custodians yesterday (of course, this "global resolution" obviously does not include the Dealership Class Plaintiffs, which we will address in separate correspondence). *See* 08/02/2018 Ltr. from M. Nemelka to B. Miller and B. Ross. Further, if the Dealership Class Plaintiffs are now hiding behind their own delay in engaging with CDK on document custodians,[2] that is certainly no excuse.

*Third*, you are mistaken that CDK erected "barriers to any meet any confer on the search terms" by asking the Dealership Class Plaintiffs to substantiate their burden and overbreadth objections to the search terms with supporting data. Our request that Dealers provide such data is wholly appropriate and is exactly what the Dealerships, and the other MDL Plaintiffs, have demanded from CDK when meeting and conferring about search terms to be run on CDK's ESI.

\* \* \* \* \*

We hope this letter clarifies CDK's position.

Sincerely,

*Jessica A. Michaels*
Jessica A. Michaels

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

---

[2]     In accordance with § B.6 of the Court's Case Management Order (Dkt. 166), CDK proposed document custodians for the Dealership Class Plaintiffs on May 25, 2018. Despite initially stating in letters that they wanted to meet-and-confer about custodians "as soon as possible," and requiring Defendants to do so, the Dealership Class Plaintiffs then changed course, advising CDK that they would not even *consider* CDK's proposal for document custodians until they had answered CDK's discovery requests on June 22. And then, once the Dealership Class Plaintiffs had finally answered the discovery, it took them until July 7—an additional 15 days—to provide any substantive response to CDK's proposal.

# EXHIBIT 37

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 4, 2018

Andrew S. Marovitz
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

<u>By E-Mail</u>

Daniel V. Dorris, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:    *In re Dealer Management Systems Antitrust Litig.*,
       MDL No. 2817, *Cox v. CDK* (18-CV-1058) &
       *Loop v. CDK* (18-CV-2521)

Dear Dan:

We received your August 2 letter and write to summarize the parties' positions with respect to Cox Automotive ("Cox") and Loop, LLC's ("AutoLoop") (collectively, the "Individual Plaintiffs') responses to CDK's Requests for Production ("RFPs") and Interrogatories.

As a preliminary matter, we note that your letter does not respond to CDK's August 1 letter regarding AutoLoop's Responses to CDK's Second Set of Interrogatories and Requests for Production. Given the impending motion deadline, we ask that you please respond by 5:00 p.m. today (in accord with the Individual Plaintiffs' demand of us last night). The points raised in that letter should not be controversial, but given that almost three days have passed with no word from you, we will assume that the parties are at an impasse if we do not hear from you by then.

As to Cox and AutoLoop's responses to CDK's First Set of RFPs and Interrogatories, we summarize below the parties' positions:

**CDK's RFPs**

**I.      Relevant Time Period**: Thank you for confirming that you will agree to search for and produce documents in response to CDK's RFPs that go back to January 1, 2013. The parties are not at issue with respect to the relevant time period.

**II.     General Limitations on RFPs**

A.      <u>Applications "at issue"</u>: During our 7/31 meet-and-confer, you agreed to supply a list of applications you consider "at issue," which would have provided us with clear guidance on how you intend to limit your productions. You did not do so in your 8/2 letter and instead simply repeated the same vague "standard" you mentioned during the meet-and-confer about which we requested clarification. The parties are impasse here.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 2

B. <u>Relevancy "Categories"</u>[1]: As you state in your 8/2 letter, you explained in an earlier correspondence that, rather than respond to most of CDK's RFPs as written, you would only produce documents in response to RFPs related to applications "at issue" and DealerTrack that are relevant to certain "categories" of information. Exhibit C of your latest letter makes clear the consequences of your proposed approach. That exhibit shows that out of CDK's 108 RFPs to Cox, you only agree to respond to 57 of them as written; and out of the 75 RFPs served on AutoLoop, you agree to only respond to 38 of them as written. For the remaining half of CDK's RFPs you state you intend to **withhold** documents responsive to these RFPs with the caveat that (in your view) "all possibly relevant documents [will be] covered by the six [relevance] categories" you propose. But that approach, which amounts to a wholesale rewriting of these RFPs, substitutes the Individual Plaintiffs' amorphous, subjective definition of "relevant" for the identified – and highly relevant – documents that we specifically requested in order to defend the case.

We tried to compromise with respect to your "categories" of relevant information during our meet-and-confers. We even proposed reasonable modifications to your approach by identifying categories that actually would provide us with the relevant documents that were requested by our RFPs, but you have not accepted those proposals. We therefore are left with no assurance that we will be receiving necessary, responsive documents from the Individual Plaintiffs' files. The parties are at impasse on this issue.

## III. <u>Specific RFPs</u>

A. <u>RFPs 1, 2, 8 and 10</u>: You offer to respond to these RFPs based on your proposed relevancy "categories." Because the parties are at issue on those relevancy "categories", the parties are at impasse on these requests.

B. <u>RFP 10</u>: You state in your 8/2 letter that you continue to consider our 7/31 offer. Unless we hear from you as requested above, we will assume that the parties are at impasse.

## IV. <u>Search Terms</u>

We understand that the Cox and AutoLoop search terms highlighted in green in Exhibits A and B of your 8/2 letter are your "best and final" offer. While both plaintiffs moved somewhat by agreeing to the highlighted terms, those modified terms plainly are insufficient. Indeed, the terms to which you have not agreed are likely to return documents relevant to this litigation and responsive to CDK's discovery requests.

---

[1] We appreciate that Plaintiffs do not agree with this naming convention, but we use it for ease of reference.

Daniel V. Dorris, Esq.
August 4, 2018
Page 3

You objected to the following terms based on relevance: Cox terms 2, 21, 25, 29, 39, 60, 77, 80, 98, 114, and 122; and AutoLoop terms 2, 21, 25, 31, 60, 73, 76, 79, 83, 88, 97, 113, and 121. As an initial matter, CDK disagrees with your assertions that such terms are irrelevant because they relate to CDK's and Reynolds' "pro-competitive justifications," the counterclaims, or other "miscellaneous" issues (your words). Further, your position that these search terms will only return documents related to those issues is unsupportable. On their face, these terms are likely to hit on documents that are directly relevant to the ***claims and defenses*** in this litigation, including, but not limited to: the security of DMS data when accessed by third-parties; DMS performance and data corruption issues caused by unauthorized methods of access; unauthorized access by third-parties to non-dealer data, including CDK proprietary data; third-party attempts to evade CDK blocking efforts; and the over-arching defense that CDK was objectively justified in instituting its security measures. Indeed, Plaintiffs cannot simply produce documents that are only relevant to their own theories of the case. These terms therefore need to be used to identify Individual Plaintiffs' relevant and responsive documents.

Furthermore, you object to countless search terms as overly burdensome, when those terms in many instances have resulted in fewer than 10,000 hits, based on your own reports. CDK disagrees that such terms are overbroad, especially given CDK's agreement to run many similar terms of plaintiffs, which result in much higher hit counts. Moreover, your offer to meet-and-confer on several of these search terms and your invitation that CDK revise its search term proposal—which came at 11:42 p.m. on the eve of the last business day before the August 6 motions deadline—is illusory at this late state of the negotiations. As you know, and as CDK has agreed to do each time the parties have agreed to amend certain of the search terms Individual Defendants' proposed to CDK, the technicalities and logistics involved in running hit counts on these terms takes time, which we simply do not have at this point.

The parties, therefore, are at an impasse with respect to search terms.

## CDK'S INTERROGATORIES

Cox Interrogatory No. 2 / AutoLoop Interrogatory No. 2 (*Competitors*): You accepted our proposal and have agreed to amend your responses. The parties, therefore, are not at issue with respect to these interrogatories. At the same time, Individual Plaintiffs have not specified when they intend to amend their responses. CDK, therefore, reserves its rights to move to compel Individual Plaintiffs' amended interrogatory responses after the August 6, 2018 deadline in the event the amended responses remain deficient in any material respect and the parties are unable to amicably resolve any issues.

Cox Interrogatory No. 3 (*DMS Switching*) and Cox Interrogatory No. 7 (*DealerTrack Third-Party Access Restrictions*): You accepted our proposal and have agreed to amend your responses to these interrogatories. The parties, therefore, are not at issue. Cox, however, again has not indicated when it intends to amend its responses. CDK, therefore, reserves its rights as to the August 6, 2018 deadline in the event the amended responses remain deficient.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 4


Cox Interrogatory Nos. 8-13 / AutoLoop Interrogatory Nos. 4-9 (*Various*): You agreed to investigate whether your answers for the past would be different from the present and to amend your responses accordingly. The parties, therefore, are not at issue with respect to these interrogatories. Individual Plaintiffs, however, have not specified when they will revert with further information regarding these interrogatories. As with the other interrogatory responses plaintiffs have indicated will be forthcoming after the August 6 motions deadline, CDK reserves its right to move to compel in the event plaintiffs' responses to these interrogatories are deficient in any material respect.

Cox Interrogatory No. 14 / AutoLoop Interrogatory No. 10 (*Scripts and Executable Programs*): You stated that you are still considering whether and how to respond to these interrogatories. As CDK has made clear on multiple occasions, CDK seeks information related to scripts and executable programs (a) used by both Cox, AutoLoop, and/or its data integrators, and (b) provided to dealers for purposes of accessing CDK's and/or Reynolds's DMS. If this clarification resolves Individual Plaintiffs' objections to these interrogatories, the parties will not be at issue; provided, however, that in the event Individual Plaintiffs decide to amend their responses after the August 6 motions deadline, CDK reserves its rights to move to compel as to any materially deficient responses after that date.

Cox Interrogatory No. 15 / AutoLoop Interrogatory No. 11 (*Allegedly Unlawful/Unenforceable Terms of Dealer and Vendor Contracts*): You asked us to identify what CDK "considers to be [] 'standard agreements with Dealers and Vendors,'" before you agree to provide greater specificity in your response to these interrogatories. We ascribe the same meaning as the "standard agreements" Individual Plaintiffs discuss in their complaints. *See, e.g.*, Cox Compl. ¶¶ 136, 142. We hope this resolves any confusion and forecloses any disagreements over these interrogatories. If not, we are at impasse. And, here again, should Individual Plaintiffs agree to respond to these interrogatories as written in light of the above representation, CDK reserves its rights to move to compel any deficient amended interrogatory responses after the August 6, 2018 deadline.

Cox Interrogatory No. 18 / AutoLoop Interrogatory No. 14 (*Third-Party Access Fees*); Cox Interrogatory No. 24 (*Damages*): You confirmed that you have responded in full with information currently known to both plaintiffs and will supplement your responses, as appropriate, at a later date. The parties, therefore, are not at issue with respect to these interrogatories.

Cox Interrogatory No. 19 / AutoLoop Interrogatory No. 15 (*Frequency of Queries/DMS Access*) and Cox Interrogatory No. 20 / AutoLoop Interrogatory No. 17 (*Manual Reporting*): You accepted our proposals/clarifications as to these interrogatories and have agreed to amend your responses. The parties, therefore, are not at issue with respect to these interrogatories. As with the their other promised amendments, Individual Plaintiffs have not specified when they intend to provide their amendments. CDK, therefore, again reserves its rights to move to compel as to any continuing deficient responses after the August 6, 2018 deadline.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 5

<u>Cox Interrogatory Nos. 21-23 (<em>Facts Supporting Allegations</em>)</u>: You agreed to provide greater specificity in response to these interrogatories. The parties, therefore, are not at issue with respect to these interrogatories. Cox, however, has not specified when it intends to amend its responses. As with the other interrogatory responses Cox has indicated will be forthcoming after the August 6 motions deadline, CDK reserves its right to move to compel in the event Cox's amended response is deficient in any material respect.

Sincerely,

Andrew S. Marovitz

# EXHIBIT 38

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

August 5, 2018

B<small>Y</small> E-M<small>AIL</small>

Daniel V. Dorris, Esq.
K<small>ELLOGG</small>, H<small>ANSEN</small>, T<small>ODD</small>, F<small>IGEL</small> & F<small>REDERICK</small>, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
         MDL No. 2817, *Cox v. CDK* (18-CV-1058) &
         *Loop v. CDK* (18-CV-2521)

Dear Dan:

We write in response to the letter we received from you this afternoon regarding Cox Automotive ("Cox") and Loop, LLC's ("AutoLoop") (collectively, the "Individual Plaintiffs") responses to CDK's First and Second Requests for Production ("RFPs") and Interrogatories.

**I.      General Limitations on RFPs**

A.      <u>Applications "at issue"</u>: Thank you for identifying the specific applications "at issue" by which you propose to limit the Definitions contained in Paragraphs 2 and 3 of Cox's and AutoLoop's RFPs respectively.  We accept your proposed limitation provided you confirm that:

        1.      You will only apply this limitation to RFPs seeking documents that relate to plaintiffs' applications (*e.g.*, RFP Nos. 24, 44, 76-77); and to the extent an RFP seeks documents related to third-party applications (*e.g.*, RFP Nos. 16, 43, 108), you will respond to the RFPs as written; and

        2.      The identified applications are the only applications you allege may have been harmed by CDK's and Reynolds' alleged conduct.

As I am sure you can appreciate, we have shared your list of Cox and AutoLoop applications "at issue" with our client and are awaiting comment.  We appreciate that you are open to discussing further additions to the list, as warranted.  If we are unable to come to ground on an agreed list of applications "at issue" before tomorrow, CDK must reserve its rights on this issue as to the August 6, 2018 deadline.

B.      <u>Relevancy "categories"</u>: Thank you for your offer with respect to these relevancy categories.  We've previously articulated our concerns that applying your relevancy "categories" to the particular RFPs listed in Exhibit C of your August 2 letter amounts to

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 2

a wholesale rewriting of these RFPs and substitutes plaintiffs' definition of "relevant" for what we have identified as relevant. Nonetheless, in an effort to avoid motion practice, we accept the compromise offer outlined in your letter from today, provided that you're agreeable to the following confirmations:

1.      In proposing to accept your offer, we're relying upon your representation that the relevancy "categories" cover documents CDK has requested, other than those identified in your letter from this afternoon and any other document requests we've specifically offered in writing to narrow, of course. This is important: we need you to confirm our understanding, because otherwise you might apply a different standard of "relevance" than we would. For example, we need confirmation that you will not withhold documents, including communications, related to: unauthorized DMS access, as CDK defines the term, by any third party (including applications and third-party data extractors), not just Cox and AutoLoop applications; use of third-party data extractors; third-party DMS access policies, including any limitations on third-party access, that were adopted or considered for DealerTrack; pricing policies or decisions regarding third-party access; data security policies and any cyber liability policies for DealerTrack and any Cox or AutoLoop applications that access CDK's DMS; data security breaches, incidents, or reports related to DealerTrack or any Cox or AutoLoop application that accesses CDK's DMS; data corruption issues or impacts on data integrity or system performance caused by third-party access to DealerTrack or by access by the Cox and AutoLoop applications "at issue" to any DMS; any discussion or analysis of the third-party access provisions in CDK's vendor and dealer contracts; the use of third-party code ("code-on-the-box") to access any DMS; all of the information called for in Cox Requests 57 through 59 (what possible responsive information is being withheld by the "relevance" limitations?); all responsive documents called for by Cox Request 60 (again, what could possibly be withheld for this Request by the "relevance" limitations?); all documents that are responsive to Cox Request 62 (same question); business and marketing plans concerning DealerTrack and competition with other DMS providers; DMS customer switching data; market share information for DealerTrack and the applications "at issue." Further, how will Cox's production of the DealerTrack financial information called for by Requests 88-91 be limited by the "relevancy" limitations? What documents responsive to Requests 107 and 108 are being withheld by the "relevancy" limitations? This may not be an exhaustive list of questions and concerns that we have regarding the proposed "categories" framework, but they are the most important ones that we feel we need answers to in order to fully understand how the framework is being applied.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 3

2.      Similarly, we need confirmation that these categories are intended to be applied to the RFPs identified in Exhibit C of your August 2 letter, and are not intended to entirely replace or supplant all of CDK's RFPs.

3.      You confirm that your proposed "categories" will be added to the categories we previously proposed, subject to the edits you identified in your letter.  For example, it is our understanding that, our proposed language for the data integration "category" will replace your proposed data integration language, but that you intend to include both our proposed DMS access "category" and your data security "category." To that end, we would appreciate if plaintiffs would put their final proposal with respect to these relevancy "categories" in writing.

4.      As offered in your letter earlier today, you include an additional relevancy "category" for both the application- and DealerTrack-related RFPs.  We propose the following language: "Plaintiffs' use of data obtained from DMSs, including their re-syndication of any such data to third-parties."  This type of information is relevant to the claims and defenses in this litigation in several ways, including: to show whether Cox and AutoLoop are re-syndicating data obtained from CDK's DMS to other third-parties, and if so, whether they are doing so with the knowledge and consent of CDK or dealers; to show whether Cox and AutoLoop are observing proper data security protocols to the extent they are engaged in such conduct; and to demonstrate whether Cox and AutoLoop are in compliance with provisions in their contracts with CDK regarding re-syndication of data obtained from CDK's DMS.

## II.     Specific RFPs

A.      <u>RFP Nos. 1, 2, and 8</u>: If the parties have an agreement with respect to the relevancy "categories" (see above), they will not be at issue on these RFPs.

B.      <u>RFP No. 10</u>:  If the parties have an agreement with respect to the relevancy "categories" (see above), and if Cox confirms that it will produce documents responsive to CDK's July 31 proposed modification of RFP No. 10, then the parties will not be at issue with respect to this RFP.

C.      <u>RFP No. 4</u>: Based on your representation that you will not oppose motion practice with respect to this RFP after the August 6, 2018 deadline should the parties fail to come to an agreement, CDK agrees to suspend motion practice with respect to this RFP, without prejudice, and continue to try to reach an agreement here.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 4

**III.     Search Terms**

We appreciate plaintiffs' efforts on search terms and hope that the parties can come to an agreement on them at some point today.  You state in your letter that there may be "a couple search terms that generate too many spurious hits."  In an effort to try to resolve this issue without motion practice, despite the fact that the terms we circulated yesterday were our best and final offer, we certainly will entertain slight technical modifications to a couple of our latest proposed terms.

**IV.     Interrogatories**

Cox Interrogatory No. 14 / AutoLoop Interrogatory No. 10:  you confirmed you would amend your response to these interrogatories as clarified.  The parties, therefore, are not at issue with respect to these interrogatories. Given that you have not, however, specified when you intend to amend you response, however, CDK reserves its rights to move to compel Individual Plaintiffs' amended interrogatory responses after the August 6, 2018 deadline in the event the amended responses remain deficient in any material respect and the parties are unable to amicably resolve any issues.

Cox Interrogatory No. 15 / AutoLoop Interrogatory No. 11: You did not address these outstanding interrogatories in your letter from earlier today.  As stated in our August 4 letter, the parties can avoid an impasse with respect to these interrogatories so long as Individual Plaintiffs agree to respond to them as clarified in our August 4 letter.  Please confirm that is the case. Should Individual Plaintiffs agree to respond to these interrogatories as written in light of CDK's clarification, CDK reserves its rights to move to compel Individual Plaintiffs' amended interrogatory responses after the August 6, 2018 deadline in the event the amended responses remain deficient in any material respect and the parties are unable to amicably resolve any issues.

**V.     CDK's Second Set of Discovery Requests to AutoLoop**

Thank you for confirming that you will produce information back to January 1, 2013, and that you are not withholding any non-privileged information, with respect to your responses to CDK's Second Set of Discovery Requests to AutoLoop.  The parties are not at an impasse with respect to these issues.

Sincerely,

Andrew S. Marovitz

# EXHIBIT 39

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

August 5, 2018

Andrew Marovitz
Ethan Hastert
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois 60606

      Re:    Cox Automotive and AutoLoop Discovery Responses

Dear Andy and Ethan,

We write on behalf of Cox Automotive and AutoLoop with respect to Andy's letter dated August 4, 2018, and Ethan's search term proposal dated August 4, 2018.

**I.      General Limitations on RFPs.**

We have explained on several occasions our approach for searching, reviewing, and producing documents in response to CDK's 108 RFPs to Cox Automotive and 75 RFPs to AutoLoop, and do not do so again here. CDK's letter dated August 4, 2018 raises several concerns with that approach, which we address below.

**A.**      We have previously explained that we may withhold documents that do not relate to the applications "at issue" in the litigation. Our August 2, 2018 letter explained that we defined the applications "at issue" to be the Cox Automotive applications and the AutoLoop applications that have been harmed by CDK's and Reynolds' anticompetitive conduct and for which we seek damages or other relief in this litigation. We further noted that our complaints described those claims. We believe this explanation demonstrates that no relevant documents are being withheld.

Your August 4, 2018 letter asks for a "list of applications" for which we will produce documents. For Cox Automotive that list includes every Cox Automotive application mentioned in the complaint: Autotrader, Dealer.com, Dealertrack (DMS, Sales, Financing & Insurance, and Registration and Titling Solutions), HomeNet, Kelley Blue Book, vAuto, VinSolutions, and Xtime. For AutoLoop that list includes each of its applications, including Essentials, Loyalty, Direct Mail, Email Append, XRM, Call Center, Quote, Newsletter, Trade-In Valet, Showroom Valet, Voice Valet, Trade AI, Book, SmartLane, MPI, ShopMonitor, BDC Connect, Messaging,

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Billpay, Open Recalls, and Confident Financial Solutions, and any other brand names sometimes used by these products. If you still believe this limitation may result in the withholding of relevant documents, please let us know. We would be willing to consider adjustments.

      **B.**    We have also previously explained that we will limit our document production to documents relating to six broad categories of information. These categories have been described in our prior correspondence. We imposed these limitations because many of CDK's RFPs were overbroad, and we chose these six categories because they encompass any possibly relevant information requested by CDK's RFPs, and more.

      We understand that CDK believes these categories are too narrow and that the parties are at impasse. But with few minor exceptions already addressed, CDK has not yet raised any category of documents that it believes are relevant and that would not fall within those categories. Accordingly, we believe our answer to any motion to compel that CDK files on these issues likely would be that we are not withholding the documents that CDK believes we are withholding, and that if CDK had asked, we would have said as much.

      In one last attempt to avoid needless motion practice, we will agree to include the modifications to the six categories that CDK proposed in its July 30, 2018 letter, with several necessary changes discussed below. We believe these changes should resolve any of CDK's questions about whether relevant documents are being withheld.

      For applications, CDK requested that we produce documents relating to these issues: "(a) competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds; (b) data integration; or (c) access to DMSs, whether third-party or, in Cox's case, to DealerTrack DMSs." We will agree to include (b) and (c), but we will modify (a) as follows: "competition between the applications at issue and other applications." We make this modification because no "application market(s)" have been alleged in this litigation. We also do not agree to produce every document reviewed with "any mention of competing applications offered by CDK and/or Reynolds." That would be overbroad. Any relevant documents mentioning competition applications offered by CDK or Reynolds would already fall within the other categories.

      For Dealertrack DMS, CDK requested that we produce documents relating to these issues: "(a) competition in the DMS market, including any mention of CDK and/or Reynolds; (b) data integration; or (c) third-party access to DMSs, including DealerTrack's DMS." We will agree to include (b) and (c), but we will modify (a) as follows: "competition in the DMS market." We will not agree to produce every document reviewed with "any mention of CDK and/or Reynolds" because that would be overbroad. Any relevant documents mentioning CDK or Reynolds would already fall within the other categories.

      As we explained in our August 2, 2018 letter, we do not include documents relating to how Cox Automotive and AutoLoop "use the data" and "whether they re-syndicate th[e] data" within the "data integration" category. On several occasions we have asked CDK to explain the relevance of such documents but have yet to receive a substantive response. Since CDK did not raise this issue in its August 4, 2018 letter, we assume the issue is not in dispute. However, as

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

we have mentioned on multiple occasions, we would be willing to consider appropriate adjustments to our document review process on this issue once CDK explains why it believes these documents would be relevant to any claims or defenses in this litigation. If CDK would like to discuss this issue on Monday, please feel free to contact me.

Finally, we address the table that we prepared in our August 2, 2018 letter. At your request, we had prepared this table to show which RFPs might have responsive documents that would be withheld during our review as a result of the limitations described above. For example, RFP No. 8 to Cox Automotive seeks "[a]ll written business plans or presentations related to DealerTrack." Some Dealertrack business plans or presentations might concern routine personnel decisions, graphical design choices, or a host of other irrelevant topics. Those documents would be properly withheld as a result of the limitations above. At the same time, we have explained that we will produce any Dealertrack presentation or business plan that we review that relate to competition in the DMS market (including with Reynolds and CDK), data integration, or the security, performance, and data integrity of Dealertrack DMS. This ensures that no relevant "written business plans or presentations related to DealerTrack" that are reviewed will be withheld.

We reiterate that, if CDK has any questions on particular RFPs, we are available to discuss them at your convenience. There is no need to schedule a formal meet-and-confer. Please feel free to contact me directly.

## II.    Specific RFPs

**RFPs No. 1, 2, 8, and 10.** We agree with your August 4, 2018 letter that any dispute regarding RFP No. 1, 2, and 8 is subsumed within the discussion of the general limitations on the RFPs. We believe we have resolved those issues. For RFP No. 10, we believe our proposal for reviewing custodial documents according to search terms is likely to be adequate. However, to the extent that review does not result in the production of the requested marketing materials, we will do a targeted search for those materials.

**RFP No. 4.** We are still discussing with our client your July 31, 2018 proposal that Cox Automotive produce "all documents provided to the FTC that are related to its acquisition of DealerTrack from the files of its custodians that hit agreed-upon search terms" and Item 4(c) documents. Due to summer vacations, we are not likely to be able to provide an answer by tomorrow's motion to compel deadline, though we fully expect to have an answer well before briefing on the motions to compel is completed. Accordingly, we believe it would be premature to raise this issue in a motion to compel. We propose that the parties continue efforts to resolve this issue. If the parties remain in dispute, we will not oppose either CDK re-filing its motion to compel to address this issue or submitting supplemental briefing on this issue, whichever you believe would be most convenient for the Court. We believe that briefing could be completed on the same schedule as the existing motions to compel.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

### III.    Search Terms

We received your revised search-term proposal on evening of Saturday, August 4, 2018. We are still reviewing the specifics of that proposal.  However, given the approaching motion-to-compel deadline, we wanted to extend the courtesy of stating in advance that we expect to be able to reach agreement based on that proposal.  There may still be a couple search terms that generate too many spurious hits.  If so, we expect to be able to work through reasonable modifications on those small numbers of terms.

### IV.    Interrogatories

We will answer Cox Automotive Interrogatory No. 14 and AutoLoop Interrogatory No. 10 as clarified.  We do not believe there are any remaining disputes on interrogatories.

### V.    Second Set Of Discovery Requests To AutoLoop

We agree with the understanding stated in your August 1, 2018 letter.  We will use a beginning date of January 1, 2013 for our searches of custodial documents.  We will perform the same search of custodian documents for AutoLoop RFP No. 73-75 as we will with other document requests.  And we are not withholding non-privileged information with respect to AutoLoop Interrogatory No. 19.

Best regards

/s/ *Dan Dorris*

Dan Dorris

Enclosure

CC:    MDL Counsel Email List

# EXHIBIT 40

| | |
|---|---|
| **From:** | Miller, Britt M. |
| **Sent:** | Monday, August 06, 2018 3:35 PM |
| **To:** | Wedgworth, Peggy |
| **Cc:** | Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL |
| **Subject:** | RE: DMS MDL -- CDK review of custodians and search terms re Dealership Custodians |

Peggy –

Thanks.  As I explained when we spoke, we don't think it is efficient or in keeping with the Court's orders and rules for the parties' to submit their motions to compel piecemeal—some motions today on some issues, some motions on Wednesday on other (but nonetheless related) issues.  Moreover, although we appreciate the offer of additional information with respect to hit rates, we do not believe that we will be able to make an informed decision as to search terms on the basis of the data of one (perhaps two) dealerships.  That said, as I made clear when we spoke, CDK remains willing to continue to meet-and-confer in good faith on any of the issues to be raised in the parties' motions to compel and if the parties are able to reach agreement, promptly inform the Court of the resolution.

Regards – Britt

_____

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

**From:** Wedgworth, Peggy [mailto:pwedgworth@milberg.com]
**Sent:** Monday, August 06, 2018 2:20 PM
**To:** Miller, Britt M.
**Cc:** Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Subject:** Re: DMS MDL -- CDK review of custodians and search terms re Dealership Custodians

Britt
As I offered on the phone today, Dealership plaintiff's offered to give you hit results regarding a dealership as a sample (with possible one other) tomorrow and postpone your motion to Wednesday in order for us to negotiate a global solution regarding dealership custodians' search terms. This offer remains open.
Regards
Peggy

Sent from my iPhone

On Jul 31, 2018, at 7:09 PM, Miller, Britt M. <BMiller@mayerbrown.com> wrote:

> Mike –
>
> Please see the attached correspondence and the promised hit reports.
>
> Regards – Britt

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

---

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Tuesday, July 31, 2018 2:52 PM
**To:** Miller, Britt M.
**Cc:** SERVICE-EXTERNAL-DMS-MDL
**Subject:** Re: DMS MDL -- CDK review of custodians and search terms

Britt –

Thank you for this information. We need to know CDK's position on whether the agreed-to search terms will be used for the agreed-to custodians. The entire formulation and negotiation of new search terms, negotiation of additional custodians, and the conduct of discovery has been premised on the fact that the original search terms would be used for all custodians. If CDK is truly changing its position on that at this hour, we will need to seek the emergency relief described below.

Thanks,

Mike

On Jul 30, 2018, at 10:13 PM, Miller, Britt M. <BMiller@mayerbrown.com> wrote:

Mike -

Given the hour, I was not able to get a full download of the meet-and-confer that occurred earlier tonight (which I understand you did not participate in either). From what I have been able to discern, your statement that CDK is "refusing to run the search terms that CDK previously agreed to across any of the additional custodian that CDK agreed to" is incorrect.

Rather, I understand that Ethan and Jessica reported on the very high hit rates that we were informed of late last week resulting from running both the Authenticom search terms on the new proposed custodians and the new "All Plaintiff" search terms against the all of the proposed CDK custodians. I am told that we then suggested a proposal to try to address the burden issues raised by those hit counts. I further understand that in response, plaintiffs requested the hit counts for the search terms — a request that Ethan said CDK would consider.

I can commit that CDK will produce those hit rate numbers tomorrow. I will follow-up

with the team in the morning and respond to the balance of your email shortly thereafter.

- Britt

Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-8663 -- Direct Dial
(312) 706-8763 -- Direct Facsimile
bmiller@mayerbrown.com
www.mayerbrown.com

Sent from my iPad

On Jul 30, 2018, at 9:54 PM, Miller, Britt M. <BMiller@mayerbrown.com> wrote:

> Mike -
>
> I just landed in Chicago and received your email of earlier this evening. Before I can meaningfully respond I need to talk to Ethan and the other members of my team to discuss the meet-and-confer and the issues you raised (as I obviously was not on the call). I will do so as soon as possible and revert back.
>
> - Britt
>
> Britt M. Miller
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, IL 60606
> (312) 701-8663 -- Direct Dial
> (312) 706-8763 -- Direct Facsimile
> bmiller@mayerbrown.com
> www.mayerbrown.com
>
> Sent from my iPad
>
> On Jul 30, 2018, at 6:41 PM, Nemelka, Michael N. <mnemelka@kellogghansen.com> wrote:
>
>> Britt,
>>
>> On the meet and confer that just ended regarding MDL Plaintiffs' search terms of Defendants' ESI, your colleague Ethan Hastert informed us – for the first time – that apparently CDK is refusing to run the search terms that CDK previously agreed to across any of the additional custodians that CDK has agreed to. Is that true? That is contrary to all of your prior representations regarding search terms and custodians. It is also contrary to a fundamental premise – perhaps

3

the fundamental premise – of the entire negotiation of custodians and search terms, namely, that all agreed search terms would be run across all agreed upon custodians. This is especially important in light of CDK's RFP responses, which largely agree to produce documents based on custodians and search terms. Finally, the new custodians are absolutely critical to this case, and we negotiated away many of our requested and desired custodians based on your representations (and all parties' understanding) that the new custodians would be treated the same as the previously agreed-to custodians. For example, Josh Douglas, Trey Gerlich, Brian MacDonald, Scott Herbers, and the other new custodians are marquee custodians. They will be witnesses at the various trials in this MDL. And they are going to have a plethora of relevant documents.

CDK finds itself as a defendant in this industry-wide MDL where all levels have sued CDK, from vendors to dealers to competitors. Given our many concessions, there can be no doubt that any burden argument CDK may attempt to assert is meritless in light of its central role in these cases. And Reynolds, of note, is not taking the same position as CDK, even though Reynolds is not a defendant in the vendor class and the Cox Automotive lawsuits. CDK is a defendant in every case.

Please let us know tonight if CDK is in fact taking the position articulated on today's meet and confer. If it is, we consider it in the utmost bad faith and will file an emergency motion with the Court not only to compel but seeking appropriate sanctions.

Thanks,
Mike, Derek, and Peggy


Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Information about how we handle personal information is available in our Privacy Notice.

&lt;CDK Hit Report_12.2017 Terms Over 05.2018 New Custodian Data.pdf&gt;

&lt;CDK Hit Report_05.2018 Proposed Terms Over All Data.pdf&gt;

&lt;7-31-18 Letter to M Nemelka.pdf&gt;

# EXHIBIT 41

| | |
|---|---|
| **From:** | Wayne, Natalie F. |
| **Sent:** | Monday, August 06, 2018 4:51 PM |
| **To:** | 'Dorris, Daniel V.'; Hastert, Ethan A.; Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL |
| **Cc:** | Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria |
| **Subject:** | RE: In re DMS -- Discovery Letter |

Thanks, Dan.

Based on your below email, we believe the parties have at this point been able to resolve all but one of the outstanding RFP and interrogatory issues. We summarize below the parties' respective positions on these outstanding issues, using your outline below as a guidepost

- Based on your representations in 1.A.1 and 1.A.2 below, the parties are not at issue with respect to the applications "at issue." We note, however, that, as stated in our 8/5 letter, we still are waiting on our client's comment with respect to these applications. Thus, we must reserve our rights on this issue as to the August 6, 2018 deadline. We, however, remain hopeful that we will not have to invoke those rights with respect to this issue.

- We are in agreement with respect to your representations in 1.B.1 and 1.B.2 below.

- Thank you for putting in writing your final proposal regarding relevancy categories in 1.B.3 below. The parties are in agreement with respect to these relevancy categories, with one exception: Cox and AutoLoop have declined to include as a category their use of data obtained from DMSs, including their re-syndication of any such data to third-parties. In 1.B.4 below, you state that you will not include this category in your list of relevancy categories. Thus, the parties are at an impasse with respect to this particular relevancy category and the affected RFPs, which include Cox Nos. 45, 69-71, 85-86; and AutoLoop Nos. 27, and 55-56.

- With respect to II below, we confirm that we are in agreement with respect to the specific RFPs outlined in our 8/5 letter.

- We agree with your statement below in III regarding search terms.

- Based on your representation in IV below, the parties are not at issue with respect to Cox Interrogatory No. 15 and AutoLoop Interrogatory No. 11. We refer Plaintiffs to our 8/5 letter, where we state that we reserve the right to move to compel Cox's and AutoLoop's amended responses to these interrogatories after the August 6, 2018 deadline in the event the amended responses remain deficient in any material respect and the parties are unable to amicably resolve any issues. We hope that this will not be necessary.

If you have any questions, please feel free to call.

_____

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Monday, August 06, 2018 9:37 AM
**To:** Wayne, Natalie F.; Hastert, Ethan A.; Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Natalie & Andy, in the interest of time, we will respond point by point.

I.A.1 – We will not withhold documents that mention only third-party applications to the extent they fall within one of the "categories" we have been discussing. For example for RFP No. 16, we would not withhold a study analyzing eLead because eLead is an application that competes with VinSolutions (one of the applications "at issue"). And for RFP No. 43, we would not withhold an application from eLead for admission to the OpenTrack program because that would concern access to the Dealertrack DMS. I think that addresses your question but let me know it does not.

1.A.2 – We do not currently allege that any application other than those listed has been harmed by CDK's and Reynolds' alleged conduct.

1.B.1 and 1.B.2 – The "categories" are routine limitations that will be applied to the RFPs because of their overbreadth. That is, the documents will be reviewed for responsiveness to CDK's RFPs, and then those limitations are applied. Application of these limitations – as modified today – would not result in withholding of any of the specific categories of documents listed in 1.B.1. Our response here assumes that CDK defines "industry data" in RFP No. 107 and 108 to mean documents that would relate to the state of competition for the applications "at issue" or DMS, and that RFP No. 90 requests more specific information than sought in RFP No. 91 (i.e., monthly rather than quarterly revenue and profit, costs, and attribution of revenue, costs, and profits to specific dealers). However, to the extent your letter intended to assert that we had represented these categories would "cover [all] documents CDK has requested," that would be incorrect. For example, RFP No. 24 requests "[a]ll . . . strategies[] concerning Your Applications." It is possible that application of these limitations would result in the withholding of documents reviewed that discuss "strategies" for applications not at issue or "strategies" that have nothing to do with "competition between the applications at issue" (e.g., personnel decisions).

I.B.3 – We will add the additional categories to our list and remove any that are entirely duplicative. Please see below for a full list:

- damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct
- any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS
- competition in the DMS market
- the security, performance, and data integrity of Dealertrack DMS
- competition between the applications at issue and other applications
- data integration
- access to DMSs, whether third-party or, in Cox's case, to DealerTrack DMSs

I.B.4 – We will not agree to this change. We do not believe any of the reasons listed in CDK's letter relate to any claims or defenses currently asserted in the litigation.

II. – We believe we are in agreement.

III. – We continue to believe we will reach agreement on search terms and will address those in separate correspondence.

IV. – We will answer Cox Interrogatory No. 15 and AutoLoop Interrogatory No. 11 based on our current understanding of what CDK's "standard agreements" are.

Best, Dan

---

**From:** Wayne, Natalie F. [mailto:NWayne@mayerbrown.com]
**Sent:** Sunday, August 05, 2018 9:31 PM
**To:** Dorris, Daniel V. <ddorris@kellogghansen.com>; Hastert, Ethan A. <EHastert@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Dan:

Please see the attached correspondence, which I send on behalf of Andy Marovitz.

---

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Sunday, August 05, 2018 1:21 PM
**To:** Hastert, Ethan A.; Wayne, Natalie F.; Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy and Ethan, please see the attached letter. As mentioned in the letter, we are still evaluating the specifics of the proposed search term modifications below, but we expect to be able to reach agreement based on this proposal. Though, there may still be a couple search terms that generate too many spurious hits, for which we may propose reasonable modifications. We expect to be able to get back to you today regarding which terms we have agreement on and the few for which we may need to run additional tests and propose modifications. Hope you enjoy the rest of your weekend, Dan.

---

**From:** Hastert, Ethan A. [mailto:EHastert@mayerbrown.com]
**Sent:** Sunday, August 05, 2018 12:59 AM
**To:** Wayne, Natalie F. <NWayne@mayerbrown.com>; Dorris, Daniel V. <ddorris@kellogghansen.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Dan,

Below please find CDK's counter-proposals for the search terms that, based on your Exhibits A and B attached to your last letter, we understand Cox and AutoLoop are willing to continue to meet and confer on. Should Plaintiffs agree to the below search terms, we agree to drop the following terms: Cox terms 13, 26, 50, 66, 81, 95, 115; and AutoLoop terms 13, 26, 80, 94. Please note, however, that our agreement to drop Cox term 95 is based on your representation during our meet-and-confers that Plaintiffs will not limit the documents they produce in response to Cox RFP 4 to a custodial-only search. Our offer to withdraw Cox term 95 is also contingent on Plaintiffs' ultimate position with respect to that RFP, given that you have indicated in your correspondence that you are still "considering" it. Please let us know if you agree to this offer.

Given that our deadline for filing motions to compel is fast approaching, this offer is our best and final offer regarding search terms. Thus, to the extent Plaintiffs accept this offer, CDK understands that the parties remain at an impasse with respect to the following search terms:

- Those to which you continue to object based on burden: Cox terms 4, 59, 78, 88, 90, 97, and 129; and AutoLoop terms 16, 18, 19, 22, 42, 59, 77, 87, 96, 109, 116, and 123;
- Those to which you continue to object based on relevance: Cox terms 2, 21, 25, 29, 39, 60, 77, 80, 98, 114, and 122; and AutoLoop terms 2, 21, 25, 31, 60, 73, 76, 79, 83, 88, 97, 113, and 121; and
- AutoLoop search term 30, to which you are "still exploring [your] alternative proposal."

**CDK'S FINAL COUNTER PROPOSALS ON SEARCH TERMS:**

**COX**

- No. 16: ((los* or win* or gain* or churn* or defect* or (turn* w/3 over) or turnover or switch) w/5 (dealer or customer or contract or business or sale)) AND (DMS or "dealer management system" or app* or vendor or integrator))

- No. 22: ("up front" or "up-front" and "set up" or "set-up" or setup) w/5 (fee* or pric* or charg or rat* or bill or pay*)) w/20 (extract* or integrat*))

- No. 41: (contract* or agree*) w/15 (term or year* or length or period) AND (CDK or Rey* or RR or "R&R")

- No. 49: (CDK or Rey* or RR or "R&R") w/20 (analy* or forecast or project* or survey* or evaluat* or stud* or (market w/3 share) or (market w/3 condition) or compet*) w/20 (contract* or agree* or provision* or section* or paragraph) AND (CDK OR 3PA or "third party access" or "partner program" or "Access Program")

- No. 51: (draft or modify or edit or write or chang* or negotiate* or enforce* or interpret* or adjust* or tweak or delete or amend*)

- No. 54: (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") AND ((fee* or pric* or charg* or rate* or bill or pay* or paid* or invoice*) w/10 ("pass through" or passthrough or share* or "passed to" or "passed on" or Pass on"))

- No. 55: (fee* or pric* or charg* or bill or pay* or paid or invoice*) w/10 (vend* or integrat* or appl* or Authenticom or SIS or "Superior Integrated Solutions" or InDesign or 1DMS or SelectQu or "New Freedom" or "Stone Eagle" or "ProQuotes" or Dealervault)

- No. 62: ((fee* or pric* or charg* or bill or invoice) w/15 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI w/20 (integrat* or extract* or (data w/3 access*))

4

- No. 63 (fee* or pric* or charg* or bill or invoice) w/20 (data w/10 (access* or integrat* or extract*)

- No. 64: (fee* or pric* or charge or bill or pay* or invoice or quot*) w/8 or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*)))

- No. 70: (((*reyrey.com) AND (*cdk.com or *adp.com)) OR ((Rey* or RR or "R&R") AND CDK)) AND (DEA or "Data Exchange Agreement" or RCI or 3PA or "third party access" or "Access Program" or "partner program" or Authenticom or hostile or integrat* or extract* or block* or (access w/3 (DMS or data)) or destroy* or market* or compet*)

- No. 78: ((Third w/3 party) or thirdparty or "3rd party") AND ((access* OR poll* or pull* OR scrap* or extract*) w/10 (data or information)) and (CDK or Rey* or RR or "R&R" or DMS or "Dealer Management System")

- No. 82: (win or los* or switch or defect* or transfer*) w/10 (DMS or "dealer management system" or CDK or Rey* or "R&R" or RR or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/10 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "Auto Mate" or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop or vendor or integrat*)

- No. 101: OEM AND (data w/25 (access* or pull* or poll* or push or writeback or (write w/3 back) or extract* or scrap* or quer*))

- No. 109: (data or access or CDK or Rey* or RR or "R&R") w/5 (policy* or guideline* or rule* or require*)

**AUTOLOOP:**

- No. 14: (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (certif* OR agree* OR integrat* OR contract)) AND (extract* or pull* or push* or poll* or writeback or (write w/3 back) or extract* or scrap* or quer*)

- No. 35: (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/15 ((Independent w/10 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com)

- No. 49: (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Rey* or RR or "R&R") w/10 (analy* or forecast or project* or survey* or stud* or (market w/3 share) or (market w/3 condition) or compet*)

- No. 53: ((exclusive* or sole) w/10 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system")) w/30 (vend* or extract* or appl* or integrat*)

- No. 54: (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and ((fee* or pric* or charge* or rate* or bill or pay* or paid or invoice*) w/15 ("pass through" or passthrough or share* or sent or "passed to" or "passed on" or "pass on"))

- No. 55: (fee* or pric* or charge* or bill or pay* or paid or invoice*) w/10 (Authtenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes")

- No. 62: ((fee* or pric* or charg* or bill or pay* or invoice) w/10 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI)

- No. 63: (fee* or pric* or charge or bill or pay* or invoice) w/20 (data w/5 (access* or integrat* or extract))

- No. 65: (fee* or pric* or charge or bill or pay* or invoice) w/10 (data w/5 (gather* or extract* or (write /3 back) or pull* or poll* or scrap* or integrat*))

- No. 70: ("Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access") AND (CDK or RR or R&R or Rey*)

- No. 75: ((Superior Integrated Solutions) OR SIS OR *@4- superior.com) w/15 (extract* or integrat* or CDK OR Rey* OR RR OR "R&R" OR access*)

- No. 100: OEM AND (data w/25 (access* or pull* or poll* or push or writeback or (write w/3 back) or extract* or scrap* or quer*))

- No. 108: (*cdk.com or * adp.com or cdk or ADP) w/10 (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*)

Best,


Ethan

_____

**Ethan A. Hastert**
Mayer Brown LLP
Tel: +1-312-701-7656
Fax: +1-312-706-8368
ehastert@mayerbrown.com
71 South Wacker Drive
Chicago, Illinois 60606-4637

**From:** Wayne, Natalie F.
**Sent:** Saturday, August 04, 2018 2:34 PM
**To:** Dorris, Daniel V.; Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

This email is sent on behalf of Ethan Hastert, who you have been conferring with on the search terms:

Dan:

The bulk of your email, including your attempts to cast further aspersions on CDK, do not warrant a response. Although it is true that Cox and AutoLoop, not CDK, are the ones that would have to run any revised search terms and produce hit counts, based on the parties' dealings on this issue, we are dubious that they would be forthcoming in time for us to meaningfully evaluate them, meet-and-confer, and, if the parties are still at impasse, for CDK to prepare its motion by

end of day Monday. Moreover, your response overlooks a fundamental point made in our letter—namely that regardless of Cox and AutoLoop's "offer" to meet-and-confer as to a some of the proposed search terms, they have refused to run many other, clearly relevant terms. But, so as there can be no question that we have done all that we reasonably can to avoid motion practice on this issue (and we don't think that there is any question now), we will send your team some counter-proposals to the search terms later today. We will remain hopeful that we can reach some sort of resolution but continue to prepare our motion in the event that further discussions do not bear fruit.

_____

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Saturday, August 04, 2018 11:57 AM
**To:** Wayne, Natalie F.; Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy, we will respond to your letter as soon as we are able. However, we did want to address immediately one issue raised in your letter. You state that our offer to meet-and-confer is "illusory at this late stage of the negotiations." That is not true. Every time we have discussed Cox Automotive's and AutoLoop's discovery responses (including search terms), the parties have moved closer to agreement and narrowed the issues. If you disagree with our current proposal, please send us a counterproposal today, and we can be available to meet-and-confer tomorrow. Contrary to the suggestion in your letter, "the technicalities and logistics involved in running hit counts" does not prevent CDK from doing so. Cox Automotive and AutoLoop (not CDK) must prepare the hit counts, and we have already provided them to you.

We further note that any difficulties finding a time to meet-and-confer prior to the August 6, 2018 motion to compel deadline is the result of CDK not seeking to meet-and-confer until July 20, 2018 – almost a month after Cox Automotive and AutoLoop had served their discovery responses on June 22, 2018. To say the least, we think it would be contrary to the parties' discovery obligations for CDK to manufacture an exigency through its own delay and then to move to compel before the parties had completed their meet-and-confers. Best, Dan

---

**From:** Wayne, Natalie F. [mailto:NWayne@mayerbrown.com]
**Sent:** Saturday, August 04, 2018 11:50 AM
**To:** Dorris, Daniel V. <ddorris@kellogghansen.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Dan:

Please see the attached correspondence, which I send on behalf of Andy Marovitz.

_____

**Natalie F. Wayne**

Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Thursday, August 02, 2018 11:41 PM
**To:** Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy, please see the attached letter.  Best, Dan

---

**From:** Marovitz, Andrew S. [mailto:AMarovitz@mayerbrown.com]
**Sent:** Thursday, August 02, 2018 4:02 PM
**To:** Dorris, Daniel V. <ddorris@kellogghansen.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Dan:

We each left Tuesday's meet-and-confer with to-do items.   We've done ours, consistent with the commitment we made to you.  The Individual Plaintiffs did not do theirs.  The suggestion that, in fulfilling our commitments, my e-mail and letter responses from yesterday and today represented additional work for you – when you raised those very issues and we timely addressed them – is more than a little unfair.  Further, both sides knew that the search term negotiations were ongoing, even as other discussions progressed.

I remain hopeful that we will hear from you soon, in the next few hours, instead of in "due course," as suggested below, and that the Individual Plaintiffs will agree to a final, productive resolution of the outstanding issues, as we have proposed.  We certainly would prefer to have your agreement than to be compelled to seek judicial intervention, but as I noted below, the deadline is approaching fast.

Best.

          - ASM

Andrew S. Marovitz (amarovitz@mayerbrown.com)
Mayer Brown LLP (www.mayerbrown.com)
71 S. Wacker Drive
Chicago, IL 60606-4637
tel: 312.701.7116
fax: 312.706.8651



**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Thursday, August 02, 2018 1:36 PM
**To:** Marovitz, Andrew S.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy, after that call, CDK proposed additional modifications to more than 60 search terms for Cox Automotive and AutoLoop, which are time consuming to run. We also received two additional proposals from you (the July 31, 2018 email and your letter of this morning). We are still evaluating those search terms and proposals and will respond to them in due course. Best, Dan

**From:** Marovitz, Andrew S. [mailto:AMarovitz@mayerbrown.com]
**Sent:** Thursday, August 02, 2018 2:26 PM
**To:** Dorris, Daniel V. <ddorris@kellogghansen.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Dan, following up. You told us during our Tuesday meet-and-confer that, by last night or first thing this morning, you would provide us with a letter laying out Cox and AutoLoop's final positions on their outstanding discovery objections issues they wished to reconsider. That time has passed and we haven't heard from you.

We need clarity on whether Cox and AutoLoop will be withdrawing any of the unresolved objections, just as they demanded from CDK. The parties' motion deadline is approaching fast.

    - ASM

**From:** Wayne, Natalie F.
**Sent:** Thursday, August 02, 2018 10:02 AM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Dan:

Please see the attached correspondence regarding certain issues we discussed during our 7/31 meet and confer, which I send on behalf of Andy Marovitz.

_____
**Natalie F. Wayne**
Associate, Litigation

Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Wayne, Natalie F.
**Sent:** Wednesday, August 01, 2018 6:13 PM
**To:** 'Dorris, Daniel V.'; Provance, Matthew D.; 'Nemelka, Michael N.'; 'SERVICE-EXTERNAL-DMS-MDL'
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; 'Aundrea K Gulley'; 'Brian T. Ross'; 'Leo Caseria'
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

Please see the attached correspondence regarding AutoLoop's 7/30 Responses & Objections to CDK's Second Set of
Interrogatories and RFPs, which I send on behalf of Andy Marovitz.

---

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Wayne, Natalie F.
**Sent:** Monday, July 30, 2018 3:15 PM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

In advance of our scheduled meet-and-confer tomorrow, please see the attached correspondence, which I send on
behalf of Andy Marovitz.

---

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Wayne, Natalie F.
**Sent:** Friday, July 27, 2018 3:15 PM
**To:** Dorris, Daniel V.; Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Mike:

Please see the attached follow-up letter to our July 23 meet-and-confer, which I send on behalf of Andy Marovitz.

_____

**Natalie F. Wayne**
Associate, Litigation
Mayer Brown LLP
Tel:+1-312-701-8316
nwayne@mayerbrown.com
www.mayerbrown.com

---

**From:** Dorris, Daniel V. [mailto:ddorris@kellogghansen.com]
**Sent:** Thursday, July 26, 2018 9:59 PM
**To:** Provance, Matthew D.; Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Ryan, Mark; Marovitz, Andrew S.; Aundrea K Gulley; Brian T. Ross; Leo Caseria
**Subject:** RE: In re DMS -- Discovery Letter

Andy and Matt, please see the attached letter. We are available to discuss this coming Tuesday afternoon. Best, Dan.

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Tuesday, July 17, 2018 8:51 PM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Brian T. Ross <bross@gibbsbruns.com>; Leo Caseria <LCaseria@sheppardmullin.com>
**Subject:** RE: In re DMS -- Discovery Letter

Mike, thank you for your letter and your note. With regard to CDK, one day's notice is not sufficient time to meet and confer on the many issues raised in your letter. However, we agree that discussions about the parties' RFP responses (both CDK and the non-dealer Plaintiffs) should take place this week. And we agree that discussions about CDK, Cox, and AutoLoop's search terms need to occur this week. Working around unavoidable conflicts that we have (*e.g.*, depositions and flights) for the people on our team who will lead these calls, we can make the following work: We can be available to discuss CDK's RFP responses on Thursday afternoon provided that Cox and AutoLoop can meet and confer on their discovery responses (please see the attached letter) on Friday afternoon and search terms on Friday (any time). As you previously noted that Kellogg had some availability issues on Friday, we are amenable to discussing search terms early or later in the day, depending on what works better for you.

Please let us know if Cox and AutoLoop will agree to proceed in this manner.

Thanks,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

---

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Tuesday, July 17, 2018 5:50 AM
**To:** SERVICE-EXTERNAL-DMS-MDL
**Subject:** In re DMS -- Discovery Letter

Dear Britt and Brian,

Please see the attached letter regarding CDK's and Reynolds' RFP responses.

Thanks,
Mike


Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC  20036
Direct:  (202) 326-7932
mnemelka@kellogghansen.com

NOTICE:  This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication.  Thank you.

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Information about how we handle personal information is available in our Privacy Notice.

# EXHIBIT 42

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

AUTHENTICOM, INC.,

                        Plaintiff,                    MDL Number 2817
                                                        Case No. 1:18-cv-00868

     v.

CDK GLOBAL, LLC, and THE REYNOLDS
AND REYNOLDS COMPANY,

                        Defendants.

---

**AUTHENTICOM'S OBJECTIONS AND RESPONSES TO**
**DEFENDANT CDK'S FIRST SET OF INTERROGATORIES**

---

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

Authenticom, Inc. ("Authenticom") hereby serves the following Objections and Responses to

Defendant CDK Global, LLC's ("CDK") First Set of Interrogatories, served by CDK on January

3, 2018. Authenticom reserves the right to amend, supplement, and correct its objections or

responses as necessary.

**GENERAL OBJECTIONS**

1.      Authenticom objects to each and every Definition and Instruction to the extent it

attempts to alter the scope of discovery or impose obligations that are inconsistent with or exceed

those required under the Federal Rules of Civil Procedure.

2.      Authenticom objects to the Interrogatories to the extent they seek information that

is in the possession, custody, or control of CDK.

3.      Authenticom objects to the Interrogatories to the extent they seek information that

is in the public domain or is otherwise equally accessible to CDK as it is to Authenticom.

4.      Authenticom objects to the Interrogatories to the extent they seek information not in Authenticom's possession, custody, or control.

5.      Authenticom objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, that consists of attorney work product, or that is otherwise protected from disclosure by a common interest privilege or any other privilege or protection.  Authenticom does not intend to disclose any such information, nor does it intend to waive any applicable privileges with respect to any such information that is inadvertently produced.  Any inadvertent disclosure of information that is privileged or exempt from discovery shall not constitute a waiver of any privilege, or any other ground for objecting to discovery, or of Authenticom to object to its use during this litigation or otherwise.

6.      Authenticom objects to the Interrogatories, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, call for a legal conclusion, and/or do not specify the information sought with sufficient particularity.  Authenticom will use reasonable diligence in interpreting the Interrogatories and providing responsive information.

7.      Authenticom objects to the Interrogatories to the extent they are premature, and Authenticom's responses to these Interrogatories are without prejudice to this objection. Authenticom reserves the right to amend and/or supplement each of its Responses.

8.      Authenticom objects to the Interrogatories to the extent they purport to impose a duty on Authenticom to seek information or documents beyond a reasonable search of files where potentially responsive materials or information would reasonably be found.  Authenticom further objects to the breadth of the Interrogatories to the extent that they impose any

unreasonable expense on Authenticom or create a significant delay that is not outweighed by the probative value or relevance of the material sought.

9.      Authenticom objects to the Definition of "You," "Your," and "Authenticom" as overbroad, unduly burdensome, and seeking information that is not reasonably available to Authenticom and not within Authenticom's possession, custody, or control.

10.     In responding or objecting to the Interrogatories, Authenticom does not admit that any of the information sought in the Interrogatories is material, relevant, or admissible.  Each response and objection is being provided subject to Authenticom's right to object to the introduction of such response and/or objection herein at any hearing or trial in this action, or in connection with any other discovery related to the subject matter of the Interrogatories.

11.     Each of Authenticom's General Objections are incorporated in each response to each Interrogatory, regardless of whether it is enumerated in the Specific Objections to that Interrogatory.

12.     Authenticom's investigation and discovery is ongoing, and Authenticom reserves the right to amend and supplement the responses provided herein.

## RESPONSES AND SPECIFIC OBJECTIONS

## INTERROGATORY NO. 1

Please specifically identify every term of any agreement between CDK and Reynolds that you allege is a *per se* violation of the antitrust laws.

## RESPONSE TO INTERROGATORY NO. 1

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory on the grounds that it is vague, ambiguous, and calls for a legal conclusion.  Many words and phrases used in this Interrogatory, including but not

3

limited to "term" and "agreement," are vague, ambiguous, and undefined in this context. Authenticom further objects on the grounds that this Interrogatory improperly attempts to view in isolation individual "terms" of agreements between CDK and Reynolds, which is an incorrect and misplaced mode of analysis. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and depositions have not yet been taken. Authenticom's response is therefore preliminary.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, The Honorable James D. Peterson's opinions and orders, and Authenticom's briefing before the Court of Appeals for the Seventh Circuit which articulate CDK and Reynolds' *per se* violations of the federal antitrust laws. Discovery is ongoing and additional details of Defendants' illegal collusion will be forthcoming.

At a minimum, CDK and Reynolds colluded to boycott and drive Authenticom out of the data integration market. The key "term" of this agreement is CDK and Reynolds' joint agreement and objective to eliminate Authenticom as a provider of data integration services for dealers using a CDK or Reynolds DMS. In addition, CDK and Reynolds entered into a market division agreement by which they agreed not to compete for data integration services for dealers using their respective DMSs. Part of that agreement is evidenced in the series of written agreements dated February 2015. The written agreements not only corroborate the existence of the conspiracy to boycott Authenticom, but those agreements are – in and of themselves – *per se* unlawful. Significant terms of those agreements include *inter alia* Sections 4.1, 4.4, 4.5, and 6.1 of the "Wind Down Access Agreement" and the provisions of the 3PA Agreement and RCI

4

Agreement that give reciprocal, preferential treatment to CDK and Reynolds' respective add-on applications. *See* Dkt. No. 172, Opinion & Order, at 6-7.

## INTERROGATORY NO. 2

Please identify each person who, prior to the filing of this lawsuit, Steve Cottrell told of (i) his alleged conversation with Robert Schaefer described in Paragraph 181 of the Complaint, or (ii) his alleged conversation with Dan McCray described in Paragraphs 10, 120 and 180 of the Complaint. You may omit privileged conversations with counsel.

## RESPONSE TO INTERROGATORY NO. 2

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory to the extent it seeks information more properly obtained from Mr. Cottrell during a deposition.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom responds that Mr. Cottrell told Brian Clements about his May 2015 conversation with Mr. Schaefer, as detailed in Paragraph 181 of the Complaint, and about his April 3, 2016 conversation with Mr. McCray, as detailed in Paragraph 180 of the Complaint.

## INTERROGATORY NO. 3

Please identify each competitor of Authenticom's for the period January 1, 2013 to the present and, for each, the products or services on which it competes or competed with Authenticom.

## RESPONSE TO INTERROGATORY NO. 3

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as vague, ambiguous, and undefined, including such

terms as "products or services." To respond to this Interrogatory, Authenticom will define

"products and services" as data integration services.

Subject to and without waiving the foregoing objections and the General Objections,

Authenticom agrees that the data integration providers listed by Malcolm Thorne at CDK-

0105059 are relevant "[c]ompetitors." Authenticom's present and former competitors since

January 1, 2013 include, but are not limited to, the following list of data integration service

providers:

- CDK's 3PA program
- Digital Motorworks (DMI)
- Dimension Marketing Group, Inc.
- ETL Solutions
- HomeNet
- IntegraLink
- Inventory Command Center
- New Freedom Data Resources
- Oxlo Systems
- ProQuotes
- Reynolds' RCI program
- SelectQu
- Superior Integrated Solutions
- Stone Eagle

**INTERROGATORY NO. 4**

Please describe the steps taken by Authenticom from January 1, 2013 to the present to

prevent either Reynolds or CDK from (i) detecting Authenticom's access to data on Reynolds or

CDK DMS platforms, or (ii) blocking Authenticom's access.

**RESPONSE TO INTERROGATORY NO. 4**

Authenticom incorporates by reference each of the General Objections set forth above.

Authenticom objects to this Interrogatory as overbroad and unduly burdensome, as it is

impracticable for Authenticom to identify every action it has taken for the past five years in

response to Reynolds' or CDK's anticompetitive conduct.

6

Subject to and without waiving the foregoing objections and the General Objections, Authenticom responds as follows: Reynolds and CDK have made it a practice to deactivate, or lock, Authenticom's dealer-created username profiles and to create hurdles for Authenticom's polling scripts (such as by introducing CAPTCHA challenges) in order to prevent Authenticom from accessing dealers' data with dealer authorization. When Authenticom detects that its profiles are being deactivated, Authenticom asks its dealer clients to call Reynolds and/or CDK and request that these profiles be reactivated. Authenticom researches what is causing the lockouts, including by speaking to dealers, and works with dealers to re-establish access to the dealers' data.

**INTERROGATORY NO. 5**

Please identify the means (*e.g.*, screen-scraping, data "push," API, or other) by which Authenticom accesses data on non-Reynolds, non-CDK DMS platforms.

**RESPONSE TO INTERROGATORY NO. 5**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as overbroad and unduly burdensome.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom accesses dealer data on non-Reynolds, non-CDK DMS platforms through a variety of means that are approved by the dealer, including *inter alia* screen-scraping, data pushing, and API. No other DMS provider, aside from CDK and Reynolds, has ever disabled or interrupted Authenticom's dealer-authorized access to dealer data.

**INTERROGATORY NO. 6**

Please identify any Dealer from whom Authenticom has extracted or syndicated data that told or complained to Authenticom that it did not have the Dealer's consent to do so.

**RESPONSE TO INTERROGATORY NO. 6**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as overbroad and unduly burdensome, as it is impracticable for Authenticom to review or recall every communication since January 1, 2013 that the company's employees had with dealers regarding data extraction or syndication.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom is not aware of any dealer who communicated to Authenticom that it lacked the dealer's consent to extract or syndicate the dealer's data. While Authenticom has received inquiries from dealers as to who authorized Authenticom's access to the dealer's data, Authenticom has been able to show appropriate authorization for all such occurrences.

**INTERROGATORY NO. 7**

Please identify any Vendor who has received DMS data through Authenticom or DealerVault without the Dealer's express consent.

**RESPONSE TO INTERROGATORY NO. 7**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as overbroad and unduly burdensome, as it is impracticable for Authenticom to review or recall every communication or transaction since January 1, 2013 involving the transmission of dealer data through Authenticom or DealerVault to a vendor.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom is not aware of any instance in which Authenticom transmitted dealer data through Authenticom or DealerVault to a vendor without the dealer's express consent.

**INTERROGATORY NO. 8**

Please identify and describe the "attempts to diversity [sic] Authenticom's business and pursue opportunities outside the automotive sector" referenced in Paragraph 10 of the December 22, 2017 Declaration of Steve Cottrell.

**RESPONSE TO INTERROGATORY NO. 8**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as irrelevant to the claims and allegations in this case.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom states that Mr. Cottrell has explored the possibility of offering Authenticom's data integration services to industries outside of the automotive sector in an effort to offset the damage that Defendants have caused and are continuing to cause as a result of their conspiracy and exclusionary conduct to drive Authenticom out of the dealer data integration market. Mr. Cottrell has had discussions with manufacturing companies looking to utilize data to increase efficiency and expand current processes. He has also spoken with government agencies on the topic of event planning services as well as with recycling companies on the topic of inventory acquisition and control. All possibilities are merely speculative at this time and have not materialized into any deals.

Dated: February 2, 2018                    Respectfully submitted,

                                           *s/ Michael N. Nemelka*
                                           Michael N. Nemelka *(pro hac vice)*
                                           Aaron M. Panner *(pro hac vice)*
                                           David L. Schwarz *(pro hac vice)*
                                           Kevin J. Miller *(pro hac vice)*
                                           Derek T. Ho *(pro hac vice)*
                                           Daniel V. Dorris *(pro hac vice)*
                                           Joshua Hafenbrack *(pro hac vice)*
                                           Joanna T. Zhang *(pro hac vice)*

KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax:     (202) 326-7999
Email: mnemelka@kellogghansen.com
          apanner@kellogghansen.com
          dschwarz@kellogghansen.com
          kmiller@kellogghansen.com
          dho@kellogghansen.com
          ddorris@kellogghansen.com
          jhafenbrack@kellogghansen.com
          jzhang@kellogghansen.com

Jennifer L. Gregor
Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
Fax:     608-257-0609
Email: jgregor@gklaw.com
          areimann@gklaw.com

*Attorneys for Plaintiff Authenticom, Inc.*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 2, 2018, I caused a true and correct copy of the foregoing **Authenticom Inc.'s Objections and Responses to Defendant CDK Global, LLC's First Set of Interrogatories** to be served by via email upon the following individuals:

Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
Jeffrey A. Simmons (jsimmons@foley.com)
Joseph S. Harper (jharper@foley.com)
Aundrea K. Gulley (agulley@gibbsbruns.com)
Brian T. Ross (bross@gibbsbruns.com)
Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
Ross M. MacDonald (rmacdonald@gibbsbruns.com)
Justin D. Patrick (jpatrick@gibbsbruns.com)
Kathy D. Patrick (kpatrick@gibbsbruns.com)
Michael P. A. Cohen (mcohen@sheppardmullin.com)
Amar S. Naik (anaik@sheppardmullin.com)
James L. McGinnis (jmcginnis@sheppardmullin.com)
John S. Skilton (jskilton@perkinscoie.com)
Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
Michelle M. Umberger (mumberger@perkinscoie.com)
Brandon M. Lewis (blewis@perkinscoie.com)
Jesse J. Bair (jbair@perkinscoie.com)
Kathleen A. Stetsko (kstetsko@perkinscoie.com)

/s/ *Michael N. Nemelka*
Michael N. Nemelka

# EXHIBIT 43

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

IN RE: DEALER MANAGEMENT         MDL No. 2817
SYSTEMS ANTITRUST LITIGATION     Case No. 18 C 864

This Document Relates to:
*Authenticom, Inc. v. CDK Global, LLC*, *et al.,*     Hon. Amy J. St. Eve
Case No. 1:18-cv-00868

---

### AUTHENTICOM, INC.'S OBJECTIONS AND RESPONSES
### TO DEFENDANT CDK GLOBAL, LLC'S REQUESTS FOR ADMISSION

Pursuant to the Federal Rules of Civil Procedure and the governing Local Rules,

Authenticom, Inc. ("Authenticom") submits the following Responses and Objections to CDK

Global, LLC's ("CDK") Requests for Admission.

### GENERAL OBJECTIONS

These General Objections are incorporated into each specific response below as if they

were fully repeated therein and will not be specifically repeated or referenced in each such

response. Authenticom reserves the right to assert additional objections as necessary and/or

appropriate.

     1.      Authenticom objects to each and every Definition, Instruction, and Request for

Admission ("Requests") to the extent it attempts to alter the scope of discovery or impose

obligations that are inconsistent with or exceed those required under the Federal Rules of Civil

Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any

order of this Court, or any agreement between the parties.

     2.      Authenticom objects to the Requests to the extent they seek information protected

by applicable privileges (including, but not limited to, the attorney-client privilege, joint defense

or common interest privilege, and attorney work product privilege) or otherwise protected under

1

applicable law.  In the event such information is produced in response to these Requests, such production is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other applicable ground for protecting such documents from disclosure.

3.      Authenticom objects to the Requests to the extent they are vague, overly broad, unduly burdensome, irrelevant, duplicative, or not reasonably calculated to lead to the discovery of admissible evidence.

4.      Authenticom's responses are made without waiver of and with preservation of all objections as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action and in any other action; the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action and any other action; and the right to object on any ground at any time to a demand or request for further response to these Requests or other discovery proceedings involving or related to the subject matter of the discovery to which these responses are provided.

5.      Authenticom objects to the Requests to the extent that they seek information that is not reasonably available.  Authenticom will provide only information that is reasonably available.

6.      Authenticom objects to the Requests insofar as they seek information that is not relevant to the claim or defense of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  By responding to these Requests, Authenticom does not concede the relevance or admissibility of any information provided, and reserves the right to object to the relevance and admissibility of any information provided in response to the Requests.

7.      Authenticom objects to the Requests insofar as they seek confidential, proprietary or trade secret information, the disclosure of which would cause irreparable competitive injury to Authenticom, without providing adequate assurances that such information will not be disclosed. All confidential or proprietary materials or information provided are subject to the Protective Order entered in this case.

8.      Authenticom objects to the Requests insofar as they purport to impose upon it a duty to provide information not within Authenticom's possession, custody, or control. Authenticom shall respond to the Requests on behalf of itself only.

9.      Authenticom objects to the Requests to the extent that they contain or rely upon a misstatement of fact or law, or assume the existence of facts or events that do not exist or did not take place. Any answer of Authenticom to a Request for Admission shall not be construed as an admission that any characterization of facts, circumstances, or legal obligations stated or implied in that Request is accurate. Authenticom reserves the right to contest any such characterization as inaccurate.

10.     Authenticom objects to the Requests to the extent that they are overbroad, cumulative, unduly burdensome, unreasonable, vague, indefinite, uncertain, imprecise, ambiguous, susceptible to multiple interpretations, and/or otherwise cannot reasonably be responded to.

11.     Authenticom objects to the Requests to the extent that they call for information over an unreasonably long timeframe or over a time period for which Authenticom does not maintain historical records.

<u>**SPECIFIC OBJECTIONS AND RESPONSES**</u>

<u>**REQUEST FOR ADMISSION NO. 1**</u>

Admit that You provide "data integration" services with respect to data maintained on DMSs that are not licensed to new car franchised automobile dealerships.

<u>**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 1**</u>

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame.  Authenticom will construe this Request as concerning

Authenticom's current practices.  Authenticom further objects to this Request to the extent the

phrase "with respect to data maintained on DMSs that are not licensed to new car franchised

automobile dealerships" is vague and ambiguous.  Authenticom will construe this Request as

concerning Authenticom's provision of data integration services to vendors that service non-

franchised car dealerships.  Authenticom further objects to this Request because it is irrelevant to

the claims and defenses in this litigation.  Authenticom further objects to this Request to the

extent it suggests that data integration for vendors servicing non-franchised car dealerships is the

same as data integration services for new car franchised dealerships.

Subject to and without waiving the foregoing objections, Authenticom admits that, for

non-franchised dealerships, it provides data extraction, which is a type of data integration

service, for vendors primarily needing access to inventory data.  Authenticom otherwise denies

this Request.

<u>**REQUEST FOR ADMISSION NO. 2**</u>

Admit that You provide stand-alone data cleansing and standardization services to customers that are not dependent or conditioned on You providing "data integration" services to those customers.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 2

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as vague and ambiguous to the extent it concerns Authenticom's provision of data cleansing and standardization services that are "dependent" on its data integration services. Authenticom further objects to this Request as compound. Authenticom further objects to this Request because it is irrelevant to the claims and defenses in this litigation.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 3

Admit that You have accessed data maintained on CDK DMSs without a license from CDK.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 3

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom objects to this Request because "license from CDK" is vague and ambiguous. Authenticom will interpret "license from CDK" to include authority granted by a dealer that possesses a license from CDK and authorizes Authenticom to access the dealer's data as agent for the dealer.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 4

Admit that You developed scripts to access data maintained on CDK DMSs by responding "YES" to the log-in prompt shown below.

```
login: heidi
Password:
Last login: Thu Mar 24 09:10:10 from 139.126.150.113
A RAID EVENT has been reported in the raid event directory.
It is important to notify your CRR of this RAID EVENT as soon as possible.
The CDK Global DMS is for authorized Dealer personnel only.
Use or access by unauthorized third parties is prohibited.
Those using this system without authorization will be denied
access and may have their services revoked.
Enter "YES" to confirm you are an authorized dealer employee
in order to continue,  enter "NO" to exit this program.
yes

****************************************************************
    Software was loaded on the system during the maintenance window.
                        Enhanced Forms
                  Tue Jul 17 00:05:14 PDT 2007
****************************************************************



***************This is a test of the first line -- 39. * C2.02 L5.5 *
**********24 MAR 2016 This is a test of the 2nd 09:37:12*************
```

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 4**

Authenticom objects to this Request because "You developed scripts to access data maintained on CDK DMSs" is vague and ambiguous.  Authenticom will interpret "You developed scripts to access data maintained on CDK DMSs" to mean "Authenticom used scripts to obtain access to data on CDK DMSs without authorization granted by a dealer that possesses a license from CDK and authorizes Authenticom to access the dealer's data."

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 5**

Admit that Your employees solicit and obtain usernames and passwords used to access data maintained on CDK DMSs over plain text email.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame.  Authenticom will construe this Request as concerning Authenticom's current practices.  Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 6

Admit that Dealers do not own all data maintained on CDK DMSs.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 6

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as vague and ambiguous to the extent it does not define "data maintained on CDK DMSs."

Subject to and without waiving the foregoing objections, Authenticom lacks information sufficient to admit or deny this Request.

## REQUEST FOR ADMISSION NO. 7

Admit that when You access data maintained on a CDK DMS using DMS username and password credentials, You have the capability as a technical matter to access all data directories in the DMS that are available to the account associated with the username and password that You are using.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 7

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as vague and ambiguous to the extent it seeks information about whether Authenticom, as a "technical matter," has the theoretical ability to access undefined "data directories." Authenticom further objects that this Request is not relevant to any claim or defense in this litigation.

Subject to and without waiving the foregoing objections, Authenticom lacks information sufficient to admit or deny this Request because Authenticom only accesses the data authorized by dealers, and does not explore whether it has the "technical" capability to access "data directories" beyond what the dealer authorized.

**REQUEST FOR ADMISSION NO. 8**

Admit that You access the "PARTS," "OP-CODES," and "WIP-HISTORY" files maintained on CDK DMSs.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as asking whether Authenticom currently accesses the identified files. Authenticom further objects because "You access the 'PARTS,' 'OP-CODES,' and 'WIP-HISTORY' files" is vague and ambiguous. Authenticom will interpret that language to mean "Authenticom accesses the 'PARTS,' 'OP-CODES,' and 'WIP-HISTORY' files without authorization granted by a dealer that possesses a license from CDK and authorizes Authenticom to access the data."

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 9**

Admit that You perform bulk-data queries on CDK DMSs between 5:00 a.m. and 10:00 p.m.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request because it does not define what CDK considers to be "bulk-data queries" or the frequency with which such queries would need to occur in order for Authenticom to "perform" them within the meaning of this Request.

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 10**

Admit that You became aware no later than August 1, 2016 that CDK objects to Your methods of accessing data maintained on CDK DMSs.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 10**

Authenticom objects to this Request as ambiguous to the extent it does not state how CDK purportedly "object[ed]" to Authenticom's access to the CDK DMS. Authenticom further objects to the Request as ambiguous to the extent it concerns CDK's purported "object[ion]" to Authenticom's "method[] of access[ing]" dealers' data. Authenticom will construe "method[]" to mean the technological "method[]" it uses to access dealer data in order to provide data integration services. Authenticom further objects to this Request as misleading as CDK's own internal documents (including documents after August 1, 2016) state that dealers have the right to use Authenticom for data integration services. *See* CDK-0032559, at 63 ("Is [Authenticom] forbidden? No. ***Dealers can set up access if they want***." (emphasis added)); *see also* CDK-0040165 ("Dealers may choose to provide a username and a password to a third party. The dealer has that right.").

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 11**

Admit that You continued to access data maintained on CDK DMSs after becoming aware that CDK objects to Your methods of access.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 11**

Authenticom objects to this Request as ambiguous to the extent it does not state how CDK purportedly "object[ed]" to Authenticom's access to the CDK DMS. Authenticom further objects to the Request as ambiguous to the extent it concerns CDK's purported "object[ion]" to Authenticom's "method[] of access[ing]" dealers' data. Authenticom will construe "method[]" to mean the technological "method[]" it uses to access dealer data in order to provide data

integration services.  Authenticom further objects to this Request as misleading as CDK's own internal documents state that dealers have the right to use Authenticom for data integration services.  *See* CDK-0032559, at 63 ("Is [Authenticom] forbidden?  No.  **Dealers can set up access if they want**." (emphasis added)); *see also* CDK-0040165 ("Dealers may choose to provide a username and a password to a third party.  The dealer has that right.").

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 12

Admit that You became aware no later than May 1, 2017 that Your methods of accessing data maintained on CDK DMSs are prohibited by CDK's standard Master Services Agreement with Dealers.

## REQUEST FOR ADMISSION NO. 12

Authenticom objects to this Request as vague and ambiguous to the extent it concerns Authenticom's "methods" of accessing the CDK DMS.  Authenticom will construe "method[]" to mean the technological "method[]" it uses to access dealer data pursuant to dealer authorization in order to provide data integration services.  Authenticom further objects to this Request as misleading as CDK's standard Master Services Agreement does not prohibit dealers from authorizing independent integrators to access dealer data.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 13

Admit that You continued to access data maintained on CDK DMSs after You became aware that Your methods of access are prohibited by CDK's standard Master Services Agreement with Dealers.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 13

Authenticom objects to this Request as vague and ambiguous to the extent it concerns Authenticom's "methods" of accessing the CDK DMS.  Authenticom will construe "method[]"

to mean the technological "method[]" it uses to access dealer data pursuant to dealer authorization in order to provide data integration services. Authenticom further objects to this Request as misleading as CDK's standard Master Services Agreement does not prohibit dealers from authorizing independent integrators to access dealer data.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 14

Admit that You have attempted to evade efforts by CDK to detect or prohibit Your access to data maintained on CDK DMSs, including efforts by CDK to disable the usernames and passwords that You use.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 14

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects because the Request does not define CDK's supposed efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to dealer data. Authenticom further objects to the Request as misleading with respect to the implication that Authenticom "evade[s]" CDK's efforts. Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Authenticom admits that when CDK improperly disables dealer-created login credentials, Authenticom works with affected dealers to reestablished dealer-authorized connections to dealer data. Authenticom otherwise denies this Request.

## REQUEST FOR ADMISSION NO. 15

Admit that You have created scripts or executable programs designed to re-enable CDK DMS usernames and passwords every hour once they are disabled by CDK.

11

**<u>AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 15</u>**

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame.  Authenticom will construe this Request as concerning

Authenticom's current practices.  Authenticom further objects to this Request as compound.

Authenticom further objects to this Request to the extent "scripts" or "executable programs" is

undefined and vague and ambiguous.

Subject to and without waiving the foregoing objections, denied.

**<u>REQUEST FOR ADMISSION NO. 16</u>**

Admit that You have provided scripts or executable programs to Dealers designed to re-
enable CDK DMS usernames and passwords every hour once they are disabled by CDK.

**<u>AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 16</u>**

Authenticom objects to this Request as compound.  Authenticom further objects to this

Request to the extent "scripts" or "executable programs" is undefined and vague and ambiguous.

Subject to and without waiving the foregoing objections, denied.

**<u>REQUEST FOR ADMISSION NO. 17</u>**

Admit that You continued to circumvent efforts by CDK to detect or prohibit
Your access to data maintained on CDK DMSs after the District Court's preliminary injunction
was stayed on August 8, 2017.

**<u>AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 17</u>**

Authenticom objects to this Request as vague and ambiguous because it fails to define

CDK's purported efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to

dealer data.  Authenticom further objects that the Request is vague, ambiguous, and misleading

to the extent it refers to "Your access" to the CDK DMS.  Authenticom further objects to this

Request as compound.

Subject to and without waiving the foregoing objections, Authenticom admits that it continued to use dealer-authorized login credentials to access dealer data on CDK DMSs after August 8, 2017, but otherwise denies this Request.

**REQUEST FOR ADMISSION NO. 18**

Admit that You continued to circumvent efforts by CDK to detect or prohibit Your access to data maintained on CDK DMSs after the District Court's preliminary injunction was vacated on November 6, 2017.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 18**

Authenticom objects to this Request as vague and ambiguous because it fails to define CDK's purported efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to dealer data. Authenticom further objects that the Request is vague, ambiguous, and misleading to the extent it refers to "Your access" to the CDK DMS. Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Authenticom admits that it continued to use dealer-authorized login credentials to access dealer data on CDK DMSs after November 6, 2017, but otherwise denies this Request.

**REQUEST FOR ADMISSION NO. 19**

Admit that You continue to circumvent efforts by CDK to detect or prohibit Your access to data maintained on CDK DMSs today.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 19**

Authenticom objects to this Request as vague and ambiguous because it fails to define CDK's purported efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to dealer data. Authenticom further objects that the Request is vague, ambiguous, and misleading to the extent it refers to "Your access" to the CDK DMS. Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Authenticom admits that it continues to use dealer-authorized login credentials to access dealer data on CDK DMSs today, but otherwise denies this Request.


Dated:  May 7, 2018                                                      Respectfully submitted,


                                                                        */s/ Derek T. Ho*
                                                                        Derek T. Ho
                                                                        Michael N. Nemelka
                                                                        Aaron M. Panner
                                                                        Joanna T. Zhang
                                                                        Joshua Hafenbrack
                                                                        **Kellogg, Hansen, Todd,**
                                                                          **Figel & Frederick, P.L.L.C.**
                                                                        1615 M Street, NW, Suite 400
                                                                        Washington, D.C. 20036
                                                                        (202) 326-7900
                                                                        dho@kellogghansen.com
                                                                        mnemelka@kellogghansen.com
                                                                        apanner@kellogghansen.com
                                                                        jzhang@kellogghansen.com
                                                                        jhafenbrack@kellogghansen.com

                                                                        Jennifer L. Gregor
                                                                        Kendall W. Harrison
                                                                        **Godfrey & Kahn S.C.**
                                                                        One East Main Street, Suite 500
                                                                        Madison, WI 53703
                                                                        (608) 257-0609
                                                                        jgregor@gklaw.com
                                                                        kharrison@gklaw.com

                                                                        *Attorneys for Authenticom, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2018, I caused a true and correct copy of the foregoing Authenticom, Inc.'s Objections and Responses to Defendant CDK Global, LLC's Requests for Admission to be served by email upon the following individuals:

Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
Jeffrey A. Simmons (jsimmons@foley.com)
Joseph S. Harper (jharper@foley.com)
Aundrea K. Gulley (agulley@gibbsbruns.com)
Brian T. Ross (bross@gibbsbruns.com)
Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
Ross M. MacDonald (rmacdonald@gibbsbruns.com)
Justin D. Patrick (jpatrick@gibbsbruns.com)
Kathy D. Patrick (kpatrick@gibbsbruns.com)
Michael P. A. Cohen (mcohen@sheppardmullin.com)
Amar S. Naik (anaik@sheppardmullin.com)
James L. McGinnis (jmcginnis@sheppardmullin.com)
John S. Skilton (jskilton@perkinscoie.com)
Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
Michelle M. Umberger (mumberger@perkinscoie.com)
Brandon M. Lewis (blewis@perkinscoie.com)
Jesse J. Bair (jbair@perkinscoie.com)
Kathleen A. Stetsko (kstetsko@perkinscoie.com)

*/s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT 44

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IN RE: DEALER MANAGEMENT
SYSTEMS ANTITRUST LITIGATION

This Document Relates to:
*Authenticom, Inc. v. CDK Global, LLC*, *et al.*
Case No. 1:18-cv-00868

MDL No. 2817
Case No. 18 C 864

Hon. Amy J. St. Eve

**AUTHENTICOM, INC.'S OBJECTIONS AND RESPONSES TO
DEFENDANT CDK GLOBAL, LLC'S SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

Authenticom, Inc. ("Authenticom") hereby serves the following Objections and Responses to

Defendant CDK Global, LLC's ("CDK") Second Set of Interrogatories.  Authenticom reserves

the right to amend, supplement, and correct its objections or responses as necessary.

**<u>GENERAL OBJECTIONS</u>**

These General Objections are incorporated into each specific response below as if they

were fully repeated therein and will not be specifically repeated or referenced in each such

response.  Authenticom reserves the right to assert additional objections as necessary and/or

appropriate.

1.      Authenticom objects to each and every Definition, Instruction, and Interrogatory

to the extent it attempts to alter the scope of discovery or impose obligations that are inconsistent

with or exceed those required under the Federal Rules of Civil Procedure, the Local Rules of the

U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement

between the parties.

2.      Authenticom objects to the Interrogatories to the extent they seek information

protected by applicable privileges (including, but not limited to, the attorney-client privilege,

1

joint defense or common interest privilege, and attorney work product privilege) or otherwise protected under applicable law. In the event such information is produced in response to these Interrogatories, such production is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other applicable ground for protecting such information from disclosure.

3.       Authenticom objects to the Interrogatories to the extent they are vague, overly broad, unduly burdensome, irrelevant, duplicative, or not reasonably calculated to lead to the discovery of admissible evidence.

4.       Authenticom's responses are made without waiver of and with preservation of all objections as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action and in any other action; the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action and any other action; and the right to object on any ground at any time to a demand or request for further response to these requests or other discovery proceedings involving or related to the subject matter of the discovery to which these responses are provided.

5.       Authenticom objects to the Interrogatories to the extent that they seek information that is not reasonably available. Authenticom will provide only information that is reasonably available.

6.       Authenticom objects to the Interrogatories insofar as they seek information that is not relevant to the claim or defense of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence. By responding to these Interrogatories, Authenticom does not concede the relevance or admissibility of any information provided, and reserves the

right to object to the relevance and admissibility of any information provided in response to these Interrogatories.

7.     Authenticom objects to the Interrogatories insofar as they seek confidential, proprietary or trade secret information, the disclosure of which would cause irreparable competitive injury to Authenticom, without providing adequate assurances that such information will not be disclosed.  All confidential or proprietary materials or information provided are subject to the Protective Order entered in this case.

8.     Authenticom objects to the Interrogatories insofar as they purport to impose upon it a duty to provide information not within Authenticom's possession, custody, or control. Authenticom shall respond to the Interrogatories on behalf of itself only.

9.     Authenticom objects to the Interrogatories to the extent that they seek information for which the burden of ascertaining the answer is substantially the same for CDK, or which is equally available to CDK from other sources which are more convenient, less burdensome, or less expensive.

10.    Authenticom objects to the Interrogatories to the extent that they contain or rely upon a misstatement of fact or law, or assume the existence of facts or events that do not exist or did not take place.  Any response of Authenticom to an Interrogatory shall not be construed as an admission that any characterization of facts, circumstances, or legal obligations stated or implied in that Interrogatory is accurate.  Authenticom reserves the right to contest any such characterization as inaccurate.

11.    Authenticom objects to the Interrogatories to the extent that they are overbroad, cumulative, unduly burdensome, unreasonable, vague, indefinite, uncertain, imprecise,

ambiguous, susceptible to multiple interpretations, and/or otherwise cannot reasonably be responded to.

12.     Authenticom objects to the Interrogatories to the extent that they seek information Authenticom has provided or will provide pursuant to Requests for Production of Documents submitted by Defendants in this action.  Authenticom reserves the right to refer Defendants to that information.

13.     Authenticom objects to the Interrogatories to the extent that they call for information over an unreasonably long timeframe or over a time period for which Authenticom does not maintain historical records.

14.     Authenticom objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure.  CDK has impermissibly put forth numerous compound Interrogatories that bring the total number of Interrogatories to well above 25.  Because CDK has violated Rule 33(a)(1), Authenticom will not answer any additional interrogatories from CDK unless and until CDK obtains leave of the Court.

15.  Authenticom's investigation of this case is ongoing, and its Responses to these Interrogatories are made after reasonable inquiry into the relevant facts within the time period allowed for such Responses.  Authenticom has not completed its investigation, discovery, analysis, legal research, or preparation for trial in this matter.  Authenticom anticipates that further investigation, discovery, and research may result in the ascertainment of additional or different information or documentation or different factual and legal contentions.  Accordingly, Authenticom reserves the right to modify, correct, or supplement its Responses, which should not be construed to prejudice Authenticom's right to conduct further investigation, discovery and

4

research, or to limit Authenticom's right to utilize any additional evidence that may be discovered.

<div align="center">

**RESPONSES AND SPECIFIC OBJECTIONS**

</div>

**INTERROGATORY NO. 9**

Describe all steps that You take to ensure that You have a Dealer's express authorization to obtain data from a CDK or Reynolds DMS on that Dealer's behalf.

**RESPONSE TO INTERROGATORY NO. 9**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps." Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom receives express authorization from CDK dealers before accessing that dealer's data. Before activating its service, Authenticom provides dealers with information about the DealerVault setup process and notifies the dealer of Authenticom's Terms and Conditions. After receiving the dealer's affirmation, Authenticom provides the dealer with the information necessary to access DealerVault. Upon the dealer's initial log-in to DealerVault, the dealer is prompted to "click

<div align="center">5</div>

agree" to Authenticom's Terms and Conditions. Moreover, dealers wishing to use Authenticom's services must expressly provide Authenticom with access to that dealer's data by providing login credentials. The dealer has the ability to unilaterally deactivate the login credentials at any time. Authenticom further refers CDK to Authenticom Dkt. No. 143 (Declaration of S. Cottrell, June 22, 2017) and the expert reports and testimony of Peter Swire.

**INTERROGATORY NO. 10**

Describe all steps that You take to ensure that Your access to data maintained on a CDK or Reynolds DMS does not exceed a Dealer's express authorization.

**RESPONSE TO INTERROGATORY NO. 10**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps." Authenticom objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom responds that Authenticom accesses dealer data on a CDK or Reynolds DMS through reporting functions that CDK and Reynolds make available to dealers. Authenticom runs these reports only with the express permission of the dealers and using login credentials supplied by the dealers.

6

Authenticom's DealerVault platform allows dealers to add, remove, or change the data sets that Authenticom polls and gives the dealer the ability to control what specific dealer data is sent to each of the dealer's vendors. By giving dealers complete control through the DealerVault platform, Authenticom is only able to access the dealer data that dealers expressly authorize.

**INTERROGATORY NO. 11**

Describe all steps that You take to ensure that You do not access data maintained on a CDK or Reynolds DMS that are proprietary to the DMS provider, OEMs, or to any other third parties.

**RESPONSE TO INTERROGATORY NO. 11**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps." Authenticom objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to its response to Interrogatory No. 10.

**INTERROGATORY NO. 12**

Describe all steps that You take to secure data and/or prevent unauthorized access to data that You have obtained from a CDK or Reynolds DMS.

**RESPONSE TO INTERROGATORY NO. 12**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps" Authenticom takes "to secure data and/or prevent unauthorized access." Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects that the "unauthorized access" is undefined, vague, and ambiguous in this context. Authenticom further objects to this Interrogatory as compound. Authenticom further objects to this Interrogatory on the ground that it contains at least two separate interrogatories. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom responds that it has numerous security measures in place. Authenticom partners with Microsoft Azure cloud services to store dealer data at rest. All dealer data that is at rest is secured behind a firewall. All dealer data in transit is encrypted. For Reynolds and CDK dealers, Authenticom accesses dealer data over an industry standard secure shell (SSH) tunnel. For manual pushing for Reynolds and

8

CDK dealers, dealers send exported data to Authenticom over an industry standard secure file transfer protocol (SFTP).

## INTERROGATORY NO. 13

Describe all steps that You take to ensure that third-parties who access or receive DMS data from You do so only as authorized by Dealers.

## RESPONSE TO INTERROGATORY NO. 13

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps" Authenticom takes "to ensure that third-parties who access or receive DMS data from You do so only as authorized by Dealers." Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects that the terms "DMS data" and "access" are undefined, vague, and ambiguous in this context. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom's DealerVault platform allows the dealer to control what dealer data is sent to specific vendors of the dealer's choosing, as Authenticom demonstrated at the preliminary injunction hearing. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *2 (W.D. Wis. 2017) ("DealerVault provides an interface that allows dealers to monitor and control the data provided from its DMS to the

vendors it uses. DealerVault is popular with dealers, who generally feel strongly that because they own their data, they should be able to control and monitor its use.").

## INTERROGATORY NO. 14

Identify all written policies, guidelines, or other documents maintained by You that reflect the steps described in Your responses to Interrogatories 9-13, above.

## RESPONSE TO INTERROGATORY NO. 14

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for identification of "all written policies, guidelines, or other documents." Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects that the terms "other documents" and "reflect" are undefined, vague, and ambiguous in this context. Authenticom further objects to this Request because it is actually four separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom, at this preliminary stage, refers CDK to AUTH_00045748; AUTH_00000418; AUTH_00000516; and AUTH_00000769.

## INTERROGATORY NO. 15

Identify all scripts or executable programs that You have used or provided to Dealers to access data maintained on a CDK or Reynolds DMS, and describe their function.

## RESPONSE TO INTERROGATORY NO. 15

Authenticom objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects that the terms "executable programs," "used," "provided," "access," and "data" are undefined, vague, and ambiguous in this context. Authenticom further objects to this Interrogatory insofar as it seeks confidential and proprietary information. Authenticom further objects to this Request because it is actually two separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached. Authenticom further objects to this Interrogatory as irrelevant to the claims and allegations in this case.

Subject to and without waiving the foregoing objections, Authenticom responds that it is willing to meet and confer with CDK to clarify the content and scope of this Interrogatory.

## INTERROGATORY NO. 16

Specifically identify all documents or other information—including, by Bates number, each document produced by any party or non-party in this litigation—that establishes or reflects any terms of the alleged unlawful agreement described in Your response to CDK Interrogatory

No. 1.  You may exclude documents that are responsive to this Interrogatory solely because they reflect the express written terms of the February 2015 Agreements.

**RESPONSE TO INTERROGATORY NO. 16**

Authenticom objects to this Interrogatory as seeking "all documents or other information" establishing Defendants' unlawful conspiracy as unduly burdensome and impracticable.  Authenticom further objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions.  Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken.  Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete.  The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness.  Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony.  Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's

12

briefing before the Court of Appeals for the Seventh Circuit, and Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided at an appropriate time.

**INTERROGATORY NO. 17**

Identify all employees, officers, representatives, or agents of Defendants who were aware prior to January 1, 2017 that Defendants were "collud[ing] to boycott and drive Authenticom out of the data integration market," as stated in Your response to CDK Interrogatory No. 1.

**RESPONSE TO INTERROGATORY NO. 17**

Authenticom objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached. Authenticom further objects to this Interrogatory as seeking "all employees, officers, representatives, or agents of Defendants."

Subject to and without waiving the foregoing objections, Authenticom refers CDK to

13

Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, and Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss.  Discovery is ongoing and additional details of the purposes and effects of Defendants' illegal collusion will be provided at any appropriate time.

**INTERROGATORY NO. 18**

Specifically identify all documents and information—including, by Bates number, each document produced by any party or non-party in this litigation—that tends to exclude the possibility that Defendants acted unilaterally in establishing their respective third-party DMS access policies. You may exclude documents that are responsive to this Interrogatory solely because they reflect the express written terms of the February 2015 Agreements.

**RESPONSE TO INTERROGATORY NO. 18**

Authenticom objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions.  Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken.  Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete.  The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness.  Authenticom further objects to this

14

Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached. Authenticom further objects to this Interrogatory as seeking "all documents and information" establishing Defendants' unlawful conspiracy as unduly burdensome and impracticable. Authenticom further objects to this Interrogatory to the extent it implies that Authenticom must produce evidence that "exclude[s] the possibility that Defendants acted unilaterally" where there is direct evidence of conspiracy.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, and Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided at any appropriate time.

## INTERROGATORY NO. 19

Identify every term or provision contained in the February 2015 Agreements that You contend is unlawful and/or unenforceable.

## RESPONSE TO INTERROGATORY NO. 19

Authenticom objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents

have not yet been produced and depositions have not yet been taken. Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss, and Authenticom's response to CDK's Interrogatory No. 1. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided at any appropriate time.

## INTERROGATORY NO. 20

Identify every term or provision contained in CDK's standard agreements with Dealers and Vendors that You contend is unlawful and/or unenforceable.

## RESPONSE TO INTERROGATORY NO. 20

Authenticom objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to this Interrogatory because it is actually two separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss, and Authenticom's response to CDK's Interrogatory No.

1. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided at any appropriate time.

**INTERROGATORY NO. 21**

Identify the terms of access that You are seeking with respect to CDK DMSs, and state whether those same terms should apply to other third-party "data integrators" or applications providers who may seek access (including, specifically, each "data integration service provider" identified in Your response to CDK Interrogatory No. 3).

**RESPONSE TO INTERROGATORY NO. 21**

Authenticom objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and calls for speculation as to "other third-party 'data integrators' or application[] providers." Authenticom further objects that this Interrogatory is compound. Authenticom further objects that the phrase "terms of access" is vague, ambiguous, and undefined in this context.

Subject to and without waiving the foregoing objections, Authenticom directs CDK to Authenticom's Complaint, in which Authenticom articulates the relief it is seeking in this action.

**INTERROGATORY NO. 22**

Identify any circumstances under which CDK and/or Reynolds may lawfully exclude You from accessing data maintained on their respective DMSs.

**RESPONSE TO INTERROGATORY NO. 22**

Authenticom objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and calls for a legal conclusion. Authenticom further objects on the ground that this Interrogatory calls for speculation as to hypothetical "circumstances" inapplicable here.

18

Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this contention Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to this Interrogatory because it is actually two separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom states that discovery is ongoing and will respond to this contention interrogatory at an appropriate time.

**INTERROGATORY NO. 23**

Identify the number of times that You have accessed a CDK DMS and/or queried data maintained on a CDK DMS during each month since January 1, 2013.

**RESPONSE TO INTERROGATORY NO. 23**

Authenticom objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Authenticom further objects to this Interrogatory on the ground that the time period covered by this Interrogatory, January 1, 2013 to the present, is overly broad and unduly burdensome as it

19

relates to tracking every time Authenticom has provided data integration services for a CDK dealer. Authenticom will respond to this Interrogatory as requesting Authenticom to "identify by month the number of times Authenticom has accessed a CDK DMS." Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom responds that it does not have this information in its possession, custody, or control.

## INTERROGATORY NO. 24

Identify every Dealer who has provided data to You that was obtained from a CDK or Reynolds DMS through the use of manual reporting tools, or any other method besides screen-scraping, and identify the method that each Dealer used.

## RESPONSE TO INTERROGATORY NO. 24

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome. Authenticom further objects to this Interrogatory as irrelevant to the claims and allegations in this case. Authenticom further objects to this Interrogatory on the ground that the time period covered by this request, January 1, 2013 to the present, is overly broad and unduly burdensome as it relates to "every Dealer who has provided data to [Authenticom]." Authenticom further objects that the term "any other method besides screenscraping" is undefined and vague. Authenticom further objects that this Interrogatory is compound and is actually two separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in

20

order until the allowable limit is reached.  Authenticom further objects to this Interrogatory insofar as it seeks confidential and proprietary information, the disclosure of which would cause irreparable competitive injury to Authenticom.

Subject to and without waiving the foregoing objections, Authenticom responds that it is willing to meet and confer with CDK to clarify the scope and content of this Interrogatory.

## INTERROGATORY NO. 25

If any of Your responses to CDK's First Requests for Admission ("RFAs") 1-19 is anything other than a complete and unqualified admission: identify the RFA; identify the factual basis for Your response; identify all documents and information—including, by Bates number, each document produced by any party or non-party in this litigation—supporting Your response; and identify all persons who have knowledge of the facts supporting Your response.

## RESPONSE TO INTERROGATORY NO. 25

Authenticom objects that this Interrogatory is compound, as it asks Authenticom to evaluate each of CDK's 19 Requests for Admission in CDK's First Requests for Admission, and then propounds multiple interrogatories with respect to each.  Prior to this Interrogatory, CDK had already propounded more Interrogatories than permitted under the Federal Rules.  CDK has vastly exceeded the number of Interrogatories permitted under the Federal Rules of Civil Procedure.  Authenticom therefore objects to responding to these Interrogatories on the ground that CDK has propounded more Interrogatories than allowed in violation of Rule 33.

Dated: May 7, 2018                                   Respectfully submitted,


                                                     */s/ Derek T. Ho*
                                                     Derek T. Ho
                                                     Michael N. Nemelka
                                                     Aaron M. Panner
                                                     Joanna T. Zhang
                                                     Joshua Hafenbrack
                                                     **Kellogg, Hansen, Todd,**
                                                     **  Figel & Frederick, P.L.L.C.**
                                                     1615 M Street, NW, Suite 400
                                                     Washington, D.C. 20036
                                                     (202) 326-7900
                                                     dho@kellogghansen.com
                                                     mnemelka@kellogghansen.com
                                                     apanner@kellogghansen.com
                                                     jzhang@kellogghansen.com
                                                     jhafenbrack@kellogghansen.com

                                                     Jennifer L. Gregor
                                                     Kendall W. Harrison
                                                     **Godfrey & Kahn S.C.**
                                                     One East Main Street, Suite 500
                                                     Madison, WI 53703
                                                     (608) 257-0609
                                                     jgregor@gklaw.com
                                                     kharrison@gklaw.com

                                                     *Attorneys for Authenticom, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on May 7, 2018, I caused a true and correct copy of the foregoing Authenticom Inc.'s Objections and Responses to Defendant CDK Global, LLC's Second Set of Interrogatories to be served by email upon the following individuals:

     Mark W. Ryan (mryan@mayerbrown.com)
     Britt M. Miller (bmiller@mayerbrown.com)
     Matthew D. Provance (mprovance@mayerbrown.com)
     Jeffrey A. Simmons (jsimmons@foley.com)
     Joseph S. Harper (jharper@foley.com)
     Aundrea K. Gulley (agulley@gibbsbruns.com)
     Brian T. Ross (bross@gibbsbruns.com)
     Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
     Ross M. MacDonald (rmacdonald@gibbsbruns.com)
     Justin D. Patrick (jpatrick@gibbsbruns.com)
     Kathy D. Patrick (kpatrick@gibbsbruns.com)
     Michael P. A. Cohen (mcohen@sheppardmullin.com)
     Amar S. Naik (anaik@sheppardmullin.com)
     James L. McGinnis (jmcginnis@sheppardmullin.com)
     John S. Skilton (jskilton@perkinscoie.com)
     Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
     Michelle M. Umberger (mumberger@perkinscoie.com)
     Brandon M. Lewis (blewis@perkinscoie.com)
     Jesse J. Bair (jbair@perkinscoie.com)
     Kathleen A. Stetsko (kstetsko@perkinscoie.com)

                        */s/ Derek T. Ho*
                        Derek T. Ho

## VERIFICATION OF INTERROGATORY ANSWERS

I, Steve Cottrell, am authorized to make this verification for and on behalf of Authenticom, Inc.  I have read the foregoing Authenticom Inc.'s Objections and Responses to Defendant CDK Global, LLC's Second Set of Interrogatories and know their contents.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed this 7th day of May, 2018.

Steve Cottrell
Chief Executive Officer of Authenticom, Inc.

24

# EXHIBIT 45

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to:<br>*Authenticom, Inc. v. CDK Global, LLC, et al.,*<br>Case No. 1:18-cv-00868 (N.D. Ill.) | Hon. Robert M. Dow, Jr. |

**AUTHENTICOM'S AMENDED OBJECTIONS AND RESPONSES TO
DEFENDANT CDK'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

Authenticom, Inc. ("Authenticom") hereby serves the following Amended Objections and

Responses to Defendant CDK Global, LLC's ("CDK") First Set of Interrogatories, served by

CDK on January 3, 2018. Autheticom's responses to Interrogatory Nos. 4 and 5 have been

supplemented with this submission. Authenticom reserves the right to further amend,

supplement, and correct its objections or responses as necessary.

**GENERAL OBJECTIONS**

1.      Authenticom objects to each and every Definition and Instruction to the extent it

attempts to alter the scope of discovery or impose obligations that are inconsistent with or exceed

those required under the Federal Rules of Civil Procedure.

2.      Authenticom objects to the Interrogatories to the extent they seek information that

is in the possession, custody, or control of CDK.

3.      Authenticom objects to the Interrogatories to the extent they seek information that

is in the public domain or is otherwise equally accessible to CDK as it is to Authenticom.

4.      Authenticom objects to the Interrogatories to the extent they seek information not

in Authenticom's possession, custody, or control.

5.     Authenticom objects to the Interrogatories to the extent they seek information that is protected by the attorney-client privilege, that consists of attorney work product, or that is otherwise protected from disclosure by a common interest privilege or any other privilege or protection.  Authenticom does not intend to disclose any such information, nor does it intend to waive any applicable privileges with respect to any such information that is inadvertently produced.  Any inadvertent disclosure of information that is privileged or exempt from discovery shall not constitute a waiver of any privilege, or any other ground for objecting to discovery, or of Authenticom to object to its use during this litigation or otherwise.

6.     Authenticom objects to the Interrogatories, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, call for a legal conclusion, and/or do not specify the information sought with sufficient particularity.  Authenticom will use reasonable diligence in interpreting the Interrogatories and providing responsive information.

7.     Authenticom objects to the Interrogatories to the extent they are premature, and Authenticom's responses to these Interrogatories are without prejudice to this objection.  Authenticom reserves the right to amend and/or supplement each of its Responses.

8.     Authenticom objects to the Interrogatories to the extent they purport to impose a duty on Authenticom to seek information or documents beyond a reasonable search of files where potentially responsive materials or information would reasonably be found.  Authenticom further objects to the breadth of the Interrogatories to the extent that they impose any unreasonable expense on Authenticom or create a significant delay that is not outweighed by the probative value or relevance of the material sought.

9.      Authenticom objects to the Definition of "You," "Your," and "Authenticom" as overbroad, unduly burdensome, and seeking information that is not reasonably available to Authenticom and not within Authenticom's possession, custody, or control.

10.      In responding or objecting to the Interrogatories, Authenticom does not admit that any of the information sought in the Interrogatories is material, relevant, or admissible.  Each response and objection is being provided subject to Authenticom's right to object to the introduction of such response and/or objection herein at any hearing or trial in this action, or in connection with any other discovery related to the subject matter of the Interrogatories.

11.      Each of Authenticom's General Objections are incorporated in each response to each Interrogatory, regardless of whether it is enumerated in the Specific Objections to that Interrogatory.

12.      Authenticom's investigation and discovery is ongoing, and Authenticom reserves the right to amend and supplement the responses provided herein.

## RESPONSES AND SPECIFIC OBJECTIONS

## INTERROGATORY NO. 1

Please specifically identify every term of any agreement between CDK and Reynolds that you allege is a *per se* violation of the antitrust laws.

## RESPONSE TO INTERROGATORY NO. 1

Authenticom incorporates by reference each of the General Objections set forth above.  Authenticom objects to this Interrogatory on the grounds that it is vague, ambiguous, and calls for a legal conclusion.  Many words and phrases used in this Interrogatory, including but not limited to "term" and "agreement," are vague, ambiguous, and undefined in this context.  Authenticom further objects on the grounds that this Interrogatory improperly attempts to view

3

in isolation individual "terms" of agreements between CDK and Reynolds, which is an incorrect and misplaced mode of analysis. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and depositions have not yet been taken. Authenticom's response is therefore preliminary.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, The Honorable James D. Peterson's opinions and orders, and Authenticom's briefing before the Court of Appeals for the Seventh Circuit which articulate CDK and Reynolds' *per se* violations of the federal antitrust laws. Discovery is ongoing and additional details of Defendants' illegal collusion will be forthcoming.

At a minimum, CDK and Reynolds colluded to boycott and drive Authenticom out of the data integration market. The key "term" of this agreement is CDK and Reynolds' joint agreement and objective to eliminate Authenticom as a provider of data integration services for dealers using a CDK or Reynolds DMS. In addition, CDK and Reynolds entered into a market division agreement by which they agreed not to compete for data integration services for dealers using their respective DMSs. Part of that agreement is evidenced in the series of written agreements dated February 2015. The written agreements not only corroborate the existence of the conspiracy to boycott Authenticom, but those agreements are – in and of themselves – *per se* unlawful. Significant terms of those agreements include *inter alia* Sections 4.1, 4.4, 4.5, and 6.1 of the "Wind Down Access Agreement" and the provisions of the 3PA Agreement and RCI Agreement that give reciprocal, preferential treatment to CDK and Reynolds' respective add-on applications. *See* Dkt. No. 172, Opinion & Order, at 6-7.

**INTERROGATORY NO. 2**

Please identify each person who, prior to the filing of this lawsuit, Steve Cottrell told of (i) his alleged conversation with Robert Schaefer described in Paragraph 181 of the Complaint, or (ii) his alleged conversation with Dan McCray described in Paragraphs 10, 120 and 180 of the Complaint. You may omit privileged conversations with counsel.

**RESPONSE TO INTERROGATORY NO. 2**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory to the extent it seeks information more properly obtained from Mr. Cottrell during a deposition.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom responds that Mr. Cottrell told Brian Clements about his May 2015 conversation with Mr. Schaefer, as detailed in Paragraph 181 of the Complaint, and about his April 3, 2016 conversation with Mr. McCray, as detailed in Paragraph 180 of the Complaint.

**INTERROGATORY NO. 3**

Please identify each competitor of Authenticom's for the period January 1, 2013 to the present and, for each, the products or services on which it competes or competed with Authenticom.

**RESPONSE TO INTERROGATORY NO. 3**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as vague, ambiguous, and undefined, including such

terms as "products or services." To respond to this Interrogatory, Authenticom will define "products and services" as data integration services.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom agrees that the data integration providers listed by Malcolm Thorne at CDK-0105059 are relevant "[c]ompetitors." Authenticom's present and former competitors since January 1, 2013 include, but are not limited to, the following list of data integration service providers:

- CDK's 3PA program
- Digital Motorworks (DMI)
- Dimension Marketing Group, Inc.
- ETL Solutions
- HomeNet
- IntegraLink
- Inventory Command Center
- New Freedom Data Resources
- Oxlo Systems
- ProQuotes
- Reynolds' RCI program
- SelectQu
- Superior Integrated Solutions
- Stone Eagle

**INTERROGATORY NO. 4**

Please describe the steps taken by Authenticom from January 1, 2013 to the present to prevent either Reynolds or CDK from (i) detecting Authenticom's access to data on Reynolds or CDK DMS platforms, or (ii) blocking Authenticom's access.

**RESPONSE TO INTERROGATORY NO. 4**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as overbroad and unduly burdensome, as it is impracticable for Authenticom to identify every action it has taken for the past five years in response to Reynolds' or CDK's anticompetitive conduct.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom responds as follows: Reynolds and CDK have made it a practice to deactivate, or lock, Authenticom's dealer-created username profiles and to create hurdles for Authenticom's polling scripts (such as by introducing CAPTCHA challenges) in order to prevent Authenticom from accessing dealers' data with dealer authorization. When Authenticom detects that its profiles are being deactivated, Authenticom asks its dealer clients to call Reynolds and/or CDK and request that these profiles be reactivated. Authenticom researches what is causing the lockouts, including by speaking to dealers, and works with dealers to re-establish access to the dealers' data. Authenticom further states that it works with dealers to randomize the usernames and passwords that dealers create and provide to Authenticom.

## INTERROGATORY NO. 5

Please identify the means (*e.g.*, screen-scraping, data "push," API, or other) by which Authenticom accesses data on non-Reynolds, non-CDK DMS platforms.

## RESPONSE TO INTERROGATORY NO. 5

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as overbroad and unduly burdensome.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom accesses dealer data on non-Reynolds, non-CDK DMS platforms through a variety of means that are approved by the dealer, including *inter alia* screen-scraping, data pushing, and API. No other DMS provider, aside from CDK and Reynolds, has ever disabled or interrupted Authenticom's dealer-authorized access to dealer data. On rare occasions, some dealers have provided Authenticom with encrypted hard drives or storage media devices containing the dealers' data.

**INTERROGATORY NO. 6**

Please identify any Dealer from whom Authenticom has extracted or syndicated data that told or complained to Authenticom that it did not have the Dealer's consent to do so.

**RESPONSE TO INTERROGATORY NO. 6**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as overbroad and unduly burdensome, as it is impracticable for Authenticom to review or recall every communication since January 1, 2013 that the company's employees had with dealers regarding data extraction or syndication.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom is not aware of any dealer who communicated to Authenticom that it lacked the dealer's consent to extract or syndicate the dealer's data. While Authenticom has received inquiries from dealers as to who authorized Authenticom's access to the dealer's data, Authenticom has been able to show appropriate authorization for all such occurrences.

**INTERROGATORY NO. 7**

Please identify any Vendor who has received DMS data through Authenticom or DealerVault without the Dealer's express consent.

**RESPONSE TO INTERROGATORY NO. 7**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as overbroad and unduly burdensome, as it is impracticable for Authenticom to review or recall every communication or transaction since January 1, 2013 involving the transmission of dealer data through Authenticom or DealerVault to a vendor.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom is not aware of any instance in which Authenticom transmitted dealer data through Authenticom or DealerVault to a vendor without the dealer's express consent.

**INTERROGATORY NO. 8**

Please identify and describe the "attempts to diversity [sic] Authenticom's business and pursue opportunities outside the automotive sector" referenced in Paragraph 10 of the December 22, 2017 Declaration of Steve Cottrell.

**RESPONSE TO INTERROGATORY NO. 8**

Authenticom incorporates by reference each of the General Objections set forth above. Authenticom objects to this Interrogatory as irrelevant to the claims and allegations in this case.

Subject to and without waiving the foregoing objections and the General Objections, Authenticom states that Mr. Cottrell has explored the possibility of offering Authenticom's data integration services to industries outside of the automotive sector in an effort to offset the damage that Defendants have caused and are continuing to cause as a result of their conspiracy and exclusionary conduct to drive Authenticom out of the dealer data integration market. Mr. Cottrell has had discussions with manufacturing companies looking to utilize data to increase efficiency and expand current processes. He has also spoken with government agencies on the topic of event planning services as well as with recycling companies on the topic of inventory acquisition and control. All possibilities are merely speculative at this time and have not materialized into any deals.

Dated:  June 22, 2018

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Joanna T. Zhang
Joshua Hafenbrack
**Kellogg, Hansen, Todd,**
  **Figel & Frederick, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com

Jennifer L. Gregor
Kendall W. Harrison
**Godfrey & Kahn S.C.**
One East Main Street, Suite 500
Madison, WI 53703
(608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com

*Attorneys for Authenticom, Inc.*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

Plaintiff Authenticom Inc.'s Amended Objections and Responses to Defendant CDK Global,

LLC's First Set of Interrogatories to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

/s/ *Derek T. Ho*
Derek T. Ho

# EXHIBIT 46

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

IN RE: DEALER MANAGEMENT
SYSTEMS ANTITRUST LITIGATION

This Document Relates to:
*Authenticom, Inc. v. CDK Global, LLC, et al.,*
Case No. 1:18-cv-00868 (N.D. Ill.)

MDL No. 2817
Case No. 18 C 864

Hon. Robert M. Dow, Jr.

---

**AUTHENTICOM, INC.'S AMENDED OBJECTIONS AND RESPONSES
TO DEFENDANT CDK GLOBAL, LLC'S
FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to the Federal Rules of Civil Procedure and the governing Local Rules,

Authenticom, Inc. ("Authenticom") submits the following Amended Responses and Objections

to CDK Global, LLC's ("CDK") First Set of Requests for Admission, served by CDK on March

23, 2018.  Authenticom's responses to Requests for Admission Nos. 3, 4, and 8 have been

supplemented with this submission.  Authenticom reserves the right to further amend,

supplement, and correct its objections or responses as necessary.

## <u>GENERAL OBJECTIONS</u>

These General Objections are incorporated into each specific response below as if they

were fully repeated therein and will not be specifically repeated or referenced in each such

response.  Authenticom reserves the right to assert additional objections as necessary and/or

appropriate.

1.      Authenticom objects to each and every Definition, Instruction, and Request for

Admission ("Requests") to the extent it attempts to alter the scope of discovery or impose

obligations that are inconsistent with or exceed those required under the Federal Rules of Civil

Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement between the parties.

2.      Authenticom objects to the Requests to the extent they seek information protected by applicable privileges (including, but not limited to, the attorney-client privilege, joint defense or common interest privilege, and attorney work product privilege) or otherwise protected under applicable law.  In the event such information is produced in response to these Requests, such production is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other applicable ground for protecting such documents from disclosure.

3.      Authenticom objects to the Requests to the extent they are vague, overly broad, unduly burdensome, irrelevant, duplicative, or not reasonably calculated to lead to the discovery of admissible evidence.

4.      Authenticom's responses are made without waiver of and with preservation of all objections as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action and in any other action; the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action and any other action; and the right to object on any ground at any time to a demand or request for further response to these Requests or other discovery proceedings involving or related to the subject matter of the discovery to which these responses are provided.

5.      Authenticom objects to the Requests to the extent that they seek information that is not reasonably available.  Authenticom will provide only information that is reasonably available.

6.      Authenticom objects to the Requests insofar as they seek information that is not relevant to the claim or defense of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  By responding to these Requests, Authenticom does not concede the relevance or admissibility of any information provided, and reserves the right to object to the relevance and admissibility of any information provided in response to the Requests.

7.      Authenticom objects to the Requests insofar as they seek confidential, proprietary or trade secret information, the disclosure of which would cause irreparable competitive injury to Authenticom, without providing adequate assurances that such information will not be disclosed. All confidential or proprietary materials or information provided are subject to the Protective Order entered in this case.

8.      Authenticom objects to the Requests insofar as they purport to impose upon it a duty to provide information not within Authenticom's possession, custody, or control. Authenticom shall respond to the Requests on behalf of itself only.

9.      Authenticom objects to the Requests to the extent that they contain or rely upon a misstatement of fact or law, or assume the existence of facts or events that do not exist or did not take place.  Any answer of Authenticom to a Request for Admission shall not be construed as an admission that any characterization of facts, circumstances, or legal obligations stated or implied in that Request is accurate.  Authenticom reserves the right to contest any such characterization as inaccurate.

10.      Authenticom objects to the Requests to the extent that they are overbroad, cumulative, unduly burdensome, unreasonable, vague, indefinite, uncertain, imprecise,

ambiguous, susceptible to multiple interpretations, and/or otherwise cannot reasonably be responded to.

11.     Authenticom objects to the Requests to the extent that they call for information over an unreasonably long timeframe or over a time period for which Authenticom does not maintain historical records.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST FOR ADMISSION NO. 1

Admit that You provide "data integration" services with respect to data maintained on DMSs that are not licensed to new car franchised automobile dealerships.

### AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 1

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame.  Authenticom will construe this Request as concerning Authenticom's current practices.  Authenticom further objects to this Request to the extent the phrase "with respect to data maintained on DMSs that are not licensed to new car franchised automobile dealerships" is vague and ambiguous.  Authenticom will construe this Request as concerning Authenticom's provision of data integration services to vendors that service non-franchised car dealerships.  Authenticom further objects to this Request because it is irrelevant to the claims and defenses in this litigation.  Authenticom further objects to this Request to the extent it suggests that data integration for vendors servicing non-franchised car dealerships is the same as data integration services for new car franchised dealerships.

Subject to and without waiving the foregoing objections, Authenticom admits that, for non-franchised dealerships, it provides data extraction, which is a type of data integration service, for vendors primarily needing access to inventory data.  Authenticom otherwise denies this Request.

4

## REQUEST FOR ADMISSION NO. 2

Admit that You provide stand-alone data cleansing and standardization services to customers that are not dependent or conditioned on You providing "data integration" services to those customers.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 2

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as vague and ambiguous to the extent it concerns Authenticom's provision of data cleansing and standardization services that are "dependent" on its data integration services. Authenticom further objects to this Request as compound. Authenticom further objects to this Request because it is irrelevant to the claims and defenses in this litigation.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 3

Admit that You have accessed data maintained on CDK DMSs without a license from CDK.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 3

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as vague and ambiguous to the extent it does not define "license." Authenticom accesses dealer data with the express authorization of dealers, who are licensed to access their data on the CDK DMS and entitled, by contract and otherwise, to designate Authenticom to access the dealers' data.

Subject to and without waiving the foregoing objections, Authenticom admits that certain CDK dealers authorize Authenticom to access dealer data for purposes of providing data integration services. Authenticom otherwise denies this Request.

## REQUEST FOR ADMISSION NO. 4

Admit that You developed scripts to access data maintained on CDK DMSs by responding "YES" to the log-in prompt shown below.

```
login: heidi
Password:
Last login: Thu Mar 24 09:10:10 from 139.126.150.113
A RAID EVENT has been reported in the raid event directory.
It is important to notify your CRR of this RAID EVENT as soon as possible.
The CDK Global DMS is for authorized Dealer personnel only.
Use or access by unauthorized third parties is prohibited.
Those using this system without authorization will be denied
access and may have their services revoked.
Enter "YES" to confirm you are an authorized dealer employee
in order to continue.  enter "NO" to exit this program.
yes

**************************************************************
     Software was loaded on the system during the maintenance window.
                       Enhanced Forms
                 Tue Jul 17 00:05:14 PDT 2007
**************************************************************



***************This is a test of the first line -- 39. * C2.02 L5.5 *
**********24 MAR 2016 This is a test of the 2nd 09:37:12**************
```

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 4

Authenticom objects to this Request as vague and ambiguous to the extent it does not define "scripts." Authenticom further objects to this Request to the extent it suggests that Authenticom accesses dealer data on a dealer's behalf without dealer authorization. Authenticom accesses dealer data with the express authorization of dealers, who are licensed to access the CDK DMS and entitled, by contract and otherwise, to designate Authenticom to access the dealers' data as the dealers' agent.

Subject to and without waiving the foregoing objections, Authenticom admits that dealers authorize Authenticom to access dealer data for purposes of providing data integration services,

including by using login credentials in connection with the log-in prompt above. Authenticom

otherwise denies this Request.

## REQUEST FOR ADMISSION NO. 5

Admit that Your employees solicit and obtain usernames and passwords used to access
data maintained on CDK DMSs over plain text email.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 5

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame. Authenticom will construe this Request as concerning

Authenticom's current practices. Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 6

Admit that Dealers do not own all data maintained on CDK DMSs.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 6

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame. Authenticom will construe this Request as concerning

Authenticom's current practices. Authenticom further objects to this Request as vague and

ambiguous to the extent it does not define "data maintained on CDK DMSs."

Subject to and without waiving the foregoing objections, Authenticom lacks information

sufficient to admit or deny this Request.

## REQUEST FOR ADMISSION NO. 7

Admit that when You access data maintained on a CDK DMS using DMS username and
password credentials, You have the capability as a technical matter to access all data directories
in the DMS that are available to the account associated with the username and password that You
are using.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as vague and ambiguous to the extent it seeks information about whether Authenticom, as a "technical matter," has the theoretical ability to access undefined "data directories." Authenticom further objects that this Request is not relevant to any claim or defense in this litigation.

Subject to and without waiving the foregoing objections, Authenticom lacks information sufficient to admit or deny this Request because Authenticom only accesses the data authorized by dealers, and does not explore whether it has the "technical" capability to access "data directories" beyond what the dealer authorized.

**REQUEST FOR ADMISSION NO. 8**

Admit that You access the "PARTS," "OP-CODES," and "WIP-HISTORY" files maintained on CDK DMSs.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as asking whether Authenticom currently accesses the identified files. Authenticom further objects because "You access the 'PARTS,' 'OP-CODES,' and 'WIP-HISTORY' files" is vague and ambiguous. Authenticom further objects to this Request to the extent it is not dealer-specific. Authenticom further objects to this Request as compound. Authenticom further objects that this Request is not relevant to any claim or defense in this litigation.

Subject to and without waiving the foregoing objections, Authenticom admits that some dealers authorize Authenticom to access the listed files when the dealer that owns and maintains

custody over those files specifically authorizes and requests that Authenticom do so.
Authenticom otherwise denies this Request.

## REQUEST FOR ADMISSION NO. 9

Admit that You perform bulk-data queries on CDK DMSs between 5:00 a.m. and
10:00 p.m.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 9

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame.  Authenticom will construe this Request as concerning

Authenticom's current practices.  Authenticom further objects to this Request because it does not

define what CDK considers to be "bulk-data queries" or the frequency with which such queries

would need to occur in order for Authenticom to "perform" them within the meaning of this

Request.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 10

Admit that You became aware no later than August 1, 2016 that CDK objects to Your
methods of accessing data maintained on CDK DMSs.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 10

Authenticom objects to this Request as ambiguous to the extent it does not state how

CDK purportedly "object[ed]" to Authenticom's access to the CDK DMS.  Authenticom further

objects to the Request as ambiguous to the extent it concerns CDK's purported "object[ion]" to

Authenticom's "method[] of access[ing]" dealers' data.  Authenticom will construe "method[]"

to mean the technological "method[]" it uses to access dealer data in order to provide data

integration services.  Authenticom further objects to this Request as misleading as CDK's own

internal documents (including documents after August 1, 2016) state that dealers have the right

to use Authenticom for data integration services.  *See* CDK-0032559, at 63 ("Is [Authenticom]

forbidden?  No.  ***Dealers can set up access if they want***." (emphasis added)); *see also* CDK-0040165 ("Dealers may choose to provide a username and a password to a third party.  The dealer has that right.").

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 11

Admit that You continued to access data maintained on CDK DMSs after becoming aware that CDK objects to Your methods of access.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 11

Authenticom objects to this Request as ambiguous to the extent it does not state how CDK purportedly "object[ed]" to Authenticom's access to the CDK DMS.  Authenticom further objects to the Request as ambiguous to the extent it concerns CDK's purported "object[ion]" to Authenticom's "method[] of access[ing]" dealers' data.  Authenticom will construe "method[]" to mean the technological "method[]" it uses to access dealer data in order to provide data integration services.  Authenticom further objects to this Request as misleading as CDK's own internal documents state that dealers have the right to use Authenticom for data integration services.  *See* CDK-0032559, at 63 ("Is [Authenticom] forbidden?  No.  ***Dealers can set up access if they want***." (emphasis added)); *see also* CDK-0040165 ("Dealers may choose to provide a username and a password to a third party.  The dealer has that right.").

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 12

Admit that You became aware no later than May 1, 2017 that Your methods of accessing data maintained on CDK DMSs are prohibited by CDK's standard Master Services Agreement with Dealers.

**REQUEST FOR ADMISSION NO. 12**

  Authenticom objects to this Request as vague and ambiguous to the extent it concerns Authenticom's "methods" of accessing the CDK DMS.  Authenticom will construe "method[]" to mean the technological "method[]" it uses to access dealer data pursuant to dealer authorization in order to provide data integration services.  Authenticom further objects to this Request as misleading as CDK's standard Master Services Agreement does not prohibit dealers from authorizing independent integrators to access dealer data.

  Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 13**

  Admit that You continued to access data maintained on CDK DMSs after You became aware that Your methods of access are prohibited by CDK's standard Master Services Agreement with Dealers.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 13**

  Authenticom objects to this Request as vague and ambiguous to the extent it concerns Authenticom's "methods" of accessing the CDK DMS.  Authenticom will construe "method[]" to mean the technological "method[]" it uses to access dealer data pursuant to dealer authorization in order to provide data integration services.  Authenticom further objects to this Request as misleading as CDK's standard Master Services Agreement does not prohibit dealers from authorizing independent integrators to access dealer data.

  Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 14**

  Admit that You have attempted to evade efforts by CDK to detect or prohibit Your access to data maintained on CDK DMSs, including efforts by CDK to disable the usernames and passwords that You use.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 14

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects because the Request does not define CDK's supposed efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to dealer data. Authenticom further objects to the Request as misleading with respect to the implication that Authenticom "evade[s]" CDK's efforts. Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Authenticom admits that when CDK improperly disables dealer-created login credentials, Authenticom works with affected dealers to reestablished dealer-authorized connections to dealer data. Authenticom otherwise denies this Request.

## REQUEST FOR ADMISSION NO. 15

Admit that You have created scripts or executable programs designed to re-enable CDK DMS usernames and passwords every hour once they are disabled by CDK.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 15

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as compound. Authenticom further objects to this Request to the extent "scripts" or "executable programs" is undefined and vague and ambiguous.

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 16**

      Admit that You have provided scripts or executable programs to Dealers designed to re-enable CDK DMS usernames and passwords every hour once they are disabled by CDK.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 16**

      Authenticom objects to this Request as compound. Authenticom further objects to this

Request to the extent "scripts" or "executable programs" is undefined and vague and ambiguous.

      Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 17**

      Admit that You continued to circumvent efforts by CDK to detect or prohibit
Your access to data maintained on CDK DMSs after the District Court's preliminary injunction
was stayed on August 8, 2017.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 17**

      Authenticom objects to this Request as vague and ambiguous because it fails to define

CDK's purported efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to

dealer data. Authenticom further objects that the Request is vague, ambiguous, and misleading

to the extent it refers to "Your access" to the CDK DMS. Authenticom further objects to this

Request as compound.

      Subject to and without waiving the foregoing objections, Authenticom admits that it

continued to use dealer-authorized login credentials to access dealer data on CDK DMSs after

August 8, 2017, but otherwise denies this Request.

**REQUEST FOR ADMISSION NO. 18**

      Admit that You continued to circumvent efforts by CDK to detect or prohibit
Your access to data maintained on CDK DMSs after the District Court's preliminary injunction
was vacated on November 6, 2017.

<u>**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 18**</u>

Authenticom objects to this Request as vague and ambiguous because it fails to define CDK's purported efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to dealer data. Authenticom further objects that the Request is vague, ambiguous, and misleading to the extent it refers to "Your access" to the CDK DMS. Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Authenticom admits that it continued to use dealer-authorized login credentials to access dealer data on CDK DMSs after November 6, 2017, but otherwise denies this Request.

<u>**REQUEST FOR ADMISSION NO. 19**</u>

Admit that You continue to circumvent efforts by CDK to detect or prohibit Your access to data maintained on CDK DMSs today.

<u>**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 19**</u>

Authenticom objects to this Request as vague and ambiguous because it fails to define CDK's purported efforts to "detect" or "prohibit" Authenticom's dealer-authorized access to dealer data. Authenticom further objects that the Request is vague, ambiguous, and misleading to the extent it refers to "Your access" to the CDK DMS. Authenticom further objects to this Request as compound.

Subject to and without waiving the foregoing objections, Authenticom admits that it continues to use dealer-authorized login credentials to access dealer data on CDK DMSs today, but otherwise denies this Request.

Dated:  June 22, 2018

Respectfully submitted,

*/s/ Derek T. Ho*

Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Joanna T. Zhang
Joshua Hafenbrack
**Kellogg, Hansen, Todd,**
  **Figel & Frederick, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com

Jennifer L. Gregor
Kendall W. Harrison
**Godfrey & Kahn S.C.**
One East Main Street, Suite 500
Madison, WI 53703
(608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com

*Attorneys for Authenticom, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

Plaintiff Authenticom Inc.'s Amended Objections and Responses to Defendant CDK Global,

LLC's First Set of Requests for Admission to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com


*/s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT 47

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE: DEALER MANAGEMENT                    MDL No. 2817
SYSTEMS ANTITRUST LITIGATION                Case No. 18 C 864

This Document Relates to:                   Hon. Robert M. Dow, Jr.
*Authenticom, Inc. v. CDK Global, LLC, et al.*
Case No. 1:18-cv-00868 (N.D. Ill.)

**AUTHENTICOM, INC.'S AMENDED OBJECTIONS AND RESPONSES TO**
**DEFENDANT CDK GLOBAL, LLC'S SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

Authenticom, Inc. ("Authenticom") hereby serves the following Amended Objections and

Responses to Defendant CDK Global, LLC's ("CDK") Second Set of Interrogatories, served by

CDK on March 23, 2018. Authenticom's responses to Interrogatory Nos. 9, 10, 11, 13, 14, 15,

and 21 have been supplemented with this submission. Authenticom reserves the right to further

amend, supplement, and correct its objections or responses as necessary.

## <u>GENERAL OBJECTIONS</u>

These General Objections are incorporated into each specific response below as if they

were fully repeated therein and will not be specifically repeated or referenced in each such

response. Authenticom reserves the right to assert additional objections as necessary and/or

appropriate.

1.      Authenticom objects to each and every Definition, Instruction, and Interrogatory

to the extent it attempts to alter the scope of discovery or impose obligations that are inconsistent

with or exceed those required under the Federal Rules of Civil Procedure, the Local Rules of the

U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement

between the parties.

1

2.      Authenticom objects to the Interrogatories to the extent they seek information protected by applicable privileges (including, but not limited to, the attorney-client privilege, joint defense or common interest privilege, and attorney work product privilege) or otherwise protected under applicable law.  In the event such information is produced in response to these Interrogatories, such production is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other applicable ground for protecting such information from disclosure.

3.      Authenticom objects to the Interrogatories to the extent they are vague, overly broad, unduly burdensome, irrelevant, duplicative, or not reasonably calculated to lead to the discovery of admissible evidence.

4.      Authenticom's responses are made without waiver of and with preservation of all objections as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action and in any other action; the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action and any other action; and the right to object on any ground at any time to a demand or request for further response to these requests or other discovery proceedings involving or related to the subject matter of the discovery to which these responses are provided.

5.      Authenticom objects to the Interrogatories to the extent that they seek information that is not reasonably available.  Authenticom will provide only information that is reasonably available.

6.      Authenticom objects to the Interrogatories insofar as they seek information that is not relevant to the claim or defense of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  By responding to these Interrogatories, Authenticom

2

does not concede the relevance or admissibility of any information provided, and reserves the right to object to the relevance and admissibility of any information provided in response to these Interrogatories.

7. Authenticom objects to the Interrogatories insofar as they seek confidential, proprietary or trade secret information, the disclosure of which would cause irreparable competitive injury to Authenticom, without providing adequate assurances that such information will not be disclosed. All confidential or proprietary materials or information provided are subject to the Protective Order entered in this case.

8. Authenticom objects to the Interrogatories insofar as they purport to impose upon it a duty to provide information not within Authenticom's possession, custody, or control. Authenticom shall respond to the Interrogatories on behalf of itself only.

9. Authenticom objects to the Interrogatories to the extent that they seek information for which the burden of ascertaining the answer is substantially the same for CDK, or which is equally available to CDK from other sources which are more convenient, less burdensome, or less expensive.

10. Authenticom objects to the Interrogatories to the extent that they contain or rely upon a misstatement of fact or law, or assume the existence of facts or events that do not exist or did not take place. Any response of Authenticom to an Interrogatory shall not be construed as an admission that any characterization of facts, circumstances, or legal obligations stated or implied in that Interrogatory is accurate. Authenticom reserves the right to contest any such characterization as inaccurate.

11. Authenticom objects to the Interrogatories to the extent that they are overbroad, cumulative, unduly burdensome, unreasonable, vague, indefinite, uncertain, imprecise,

ambiguous, susceptible to multiple interpretations, and/or otherwise cannot reasonably be responded to.

12.     Authenticom objects to the Interrogatories to the extent that they seek information Authenticom has provided or will provide pursuant to Requests for Production of Documents submitted by Defendants in this action. Authenticom reserves the right to refer Defendants to that information.

13.     Authenticom objects to the Interrogatories to the extent that they call for information over an unreasonably long timeframe or over a time period for which Authenticom does not maintain historical records.

14.     Authenticom objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure. CDK has impermissibly put forth numerous compound Interrogatories that bring the total number of Interrogatories to well above 25. Because CDK has violated Rule 33(a)(1), Authenticom will not answer any additional interrogatories from CDK unless and until CDK obtains leave of the Court.

15. Authenticom's investigation of this case is ongoing, and its Responses to these Interrogatories are made after reasonable inquiry into the relevant facts within the time period allowed for such Responses. Authenticom has not completed its investigation, discovery, analysis, legal research, or preparation for trial in this matter. Authenticom anticipates that further investigation, discovery, and research may result in the ascertainment of additional or different information or documentation or different factual and legal contentions. Accordingly, Authenticom reserves the right to modify, correct, or supplement its Responses, which should not be construed to prejudice Authenticom's right to conduct further investigation, discovery and

research, or to limit Authenticom's right to utilize any additional evidence that may be discovered.

## RESPONSES AND SPECIFIC OBJECTIONS

## INTERROGATORY NO. 9

Describe all steps that You take to ensure that You have a Dealer's express authorization to obtain data from a CDK or Reynolds DMS on that Dealer's behalf.

## RESPONSE TO INTERROGATORY NO. 9

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps." Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom receives express authorization from CDK dealers before accessing that dealer's data. Before activating its service, Authenticom provides dealers with information about the DealerVault setup process and notifies the dealer of Authenticom's Terms and Conditions. After receiving the dealer's affirmation, Authenticom provides the dealer with the information necessary to access DealerVault. Upon the dealer's initial log-in to DealerVault, the dealer is prompted to "click

5

agree" to Authenticom's Terms and Conditions. Moreover, dealers wishing to use Authenticom's services must expressly provide Authenticom with access to that dealer's data by providing login credentials. The dealer has the ability to unilaterally deactivate the login credentials at any time. Authenticom further refers CDK to Authenticom Dkt. No. 143 (Declaration of S. Cottrell, June 22, 2017) and the expert reports and testimony of Peter Swire. Authenticom further states that, absent dealer affirmation and authorization through the provision of login credentials to Authenticom, Authenticom has no ability to access the dealers' data.

**INTERROGATORY NO. 10**

Describe all steps that You take to ensure that Your access to data maintained on a CDK or Reynolds DMS does not exceed a Dealer's express authorization.

**RESPONSE TO INTERROGATORY NO. 10**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps." Authenticom objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom responds that Authenticom accesses dealer data on a CDK or Reynolds DMS through reporting functions that

CDK and Reynolds make available to dealers. Authenticom runs these reports only with the express permission of the dealers and using login credentials supplied by the dealers. Authenticom's DealerVault platform allows dealers to add, remove, or change the data sets that Authenticom polls and gives the dealer the ability to control what specific dealer data is sent to each of the dealer's vendors. By giving dealers complete control through the DealerVault platform, Authenticom is only able to access the dealer data that dealers expressly authorize. Authenticom further states that it has designed the DealerVault database and import system so that they will not support the import of data beyond that which the dealer has authorized.

**INTERROGATORY NO. 11**

Describe all steps that You take to ensure that You do not access data maintained on a CDK or Reynolds DMS that are proprietary to the DMS provider, OEMs, or to any other third parties.

**RESPONSE TO INTERROGATORY NO. 11**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps." Authenticom objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to its response to Interrogatory No. 10 as amended.

**INTERROGATORY NO. 12**

Describe all steps that You take to secure data and/or prevent unauthorized access to data that You have obtained from a CDK or Reynolds DMS.

**RESPONSE TO INTERROGATORY NO. 12**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps" Authenticom takes "to secure data and/or prevent unauthorized access." Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom further objects that the "unauthorized access" is undefined, vague, and ambiguous in this context. Authenticom further objects to this Interrogatory as compound. Authenticom further objects to this Interrogatory on the ground that it contains at least two separate interrogatories. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom responds that it has numerous security measures in place. Authenticom partners with Microsoft Azure cloud services to store dealer data at rest. All dealer data that is at rest is secured behind a firewall. All

8

dealer data in transit is encrypted. For Reynolds and CDK dealers, Authenticom accesses dealer data over an industry standard secure shell (SSH) tunnel. For manual pushing for Reynolds and CDK dealers, dealers send exported data to Authenticom over an industry standard secure file transfer protocol (SFTP).

## INTERROGATORY NO. 13

Describe all steps that You take to ensure that third-parties who access or receive DMS data from You do so only as authorized by Dealers.

## RESPONSE TO INTERROGATORY NO. 13

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for a description of "all steps" Authenticom takes "to ensure that third-parties who access or receive DMS data from You do so only as authorized by Dealers." Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame. Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects that the terms "DMS data" and "access" are undefined, vague, and ambiguous in this context. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom's DealerVault platform allows the dealer to control what dealer data is sent to specific vendors of the dealer's choosing, as Authenticom demonstrated at the preliminary injunction hearing. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *2 (W.D. Wis. 2017) ("DealerVault provides an

9

interface that allows dealers to monitor and control the data provided from its DMS to the vendors it uses. DealerVault is popular with dealers, who generally feel strongly that because they own their data, they should be able to control and monitor its use.").  Authenticom further states that it has designed the DealerVault database and import system so that they will not support the import of data beyond that which the dealer has authorized.

## INTERROGATORY NO. 14

Identify all written policies, guidelines, or other documents maintained by You that reflect the steps described in Your responses to Interrogatories 9-13, above.

## RESPONSE TO INTERROGATORY NO. 14

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly burdensome to the extent it asks for identification of "all written policies, guidelines, or other documents."  Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken.  Authenticom further objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame.  Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present.  Authenticom will construe this Request as concerning Authenticom's current practices.  Authenticom further objects that the terms "other documents" and "reflect" are undefined, vague, and ambiguous in this context.  Authenticom further objects to this Request because it is actually four separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1).  Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom, at this preliminary stage, refers CDK to AUTH_00045748; AUTH_00000418; AUTH_00000516; and AUTH_00000769.  Authenticom will supplement this response with references to additional documents, identified by Bates number, when discovery is substantially complete.

**INTERROGATORY NO. 15**

Identify all scripts or executable programs that You have used or provided to Dealers to access data maintained on a CDK or Reynolds DMS, and describe their function.

**RESPONSE TO INTERROGATORY NO. 15**

Authenticom objects to this Interrogatory as ambiguous to the extent it does not state a specific time frame.  Authenticom further objects to this Request as unduly burdensome to the extent it purports to apply a time period of January 1, 2013 to the present.  Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken.  Authenticom further objects that the terms "executable programs," "used," "provided," "access," and "data" are undefined, vague, and ambiguous in this context.  Authenticom further objects to this Interrogatory insofar as it seeks confidential and proprietary information. Authenticom further objects to this Request because it is actually two separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1).  Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.  Authenticom further objects to this Interrogatory as irrelevant to the claims and allegations in this case.

Subject to and without waiving the foregoing objections, Authenticom will supplement this response by identifying documents (by Bates number) reflecting a representative sample of

the scripts and executable programs run by Authenticom during the relevant time frame.

**INTERROGATORY NO. 16**

Specifically identify all documents or other information—including, by Bates number, each document produced by any party or non-party in this litigation—that establishes or reflects any terms of the alleged unlawful agreement described in Your response to CDK Interrogatory No. 1. You may exclude documents that are responsive to this Interrogatory solely because they reflect the express written terms of the February 2015 Agreements.

**RESPONSE TO INTERROGATORY NO. 16**

Authenticom objects to this Interrogatory as seeking "all documents or other information" establishing Defendants' unlawful conspiracy as unduly burdensome and impracticable. Authenticom further objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more

Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, and Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided at an appropriate time.

## INTERROGATORY NO. 17

Identify all employees, officers, representatives, or agents of Defendants who were aware prior to January 1, 2017 that Defendants were "collud[ing] to boycott and drive Authenticom out of the data integration market," as stated in Your response to CDK Interrogatory No. 1.

## RESPONSE TO INTERROGATORY NO. 17

Authenticom objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is

near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached. Authenticom further objects to this Interrogatory as seeking "all employees, officers, representatives, or agents of Defendants."

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, and Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss. Discovery is ongoing and additional details of the purposes and effects of Defendants' illegal collusion will be provided at any appropriate time.

## INTERROGATORY NO. 18

Specifically identify all documents and information—including, by Bates number, each document produced by any party or non-party in this litigation—that tends to exclude the possibility that Defendants acted unilaterally in establishing their respective third-party DMS access policies. You may exclude documents that are responsive to this Interrogatory solely because they reflect the express written terms of the February 2015 Agreements.

## RESPONSE TO INTERROGATORY NO. 18

Authenticom objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions. Authenticom further

objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached. Authenticom further objects to this Interrogatory as seeking "all documents and information" establishing Defendants' unlawful conspiracy as unduly burdensome and impracticable. Authenticom further objects to this Interrogatory to the extent it implies that Authenticom must produce evidence that "exclude[s] the possibility that Defendants acted unilaterally" where there is direct evidence of conspiracy.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, and Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided at any appropriate time.

**INTERROGATORY NO. 19**

Identify every term or provision contained in the February 2015 Agreements that You contend is unlawful and/or unenforceable.

**RESPONSE TO INTERROGATORY NO. 19**

Authenticom objects to this contention interrogatory insofar as it purports to require Authenticom to recite all of the evidence and bases for its contentions. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, Cox Automotive's Opposition to

16

Defendant CDK's Motion to Dismiss, and Authenticom's response to CDK's Interrogatory No.

1. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided

at any appropriate time.

## INTERROGATORY NO. 20

Identify every term or provision contained in CDK's standard agreements with Dealers

and Vendors that You contend is unlawful and/or unenforceable.

## RESPONSE TO INTERROGATORY NO. 20

Authenticom objects to this contention interrogatory insofar as it purports to require

Authenticom to recite all of the evidence and bases for its contentions. Authenticom further

objects to this Interrogatory on the ground that discovery is ongoing and relevant documents

have not yet been produced and depositions have not yet been taken. Authenticom objects to this

Interrogatory as premature as Authenticom is not required to respond to contention

interrogatories before discovery is complete as doing so would require multiple supplemental

answers in the future and improperly require Authenticom to commit to a position before

discovery is complete. The general rule is to defer contention interrogatories until discovery is

near an end in order to promote efficiency and fairness. Authenticom further objects to this

Interrogatory insofar as it asks for information that is properly the subject of expert testimony.

Authenticom further objects to this Interrogatory because it is actually two separate requests,

including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the

Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under

the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is

reached.

Subject to and without waiving the foregoing objections, Authenticom refers CDK to

Authenticom's Complaint, Authenticom's briefing in support of its motion for a preliminary injunction, the transcript from the preliminary injunction hearing, the exhibits introduced at the preliminary injunction hearing (which express concerns about the threatened disintermediation of DMS functionality), The Honorable James D. Peterson's opinions and orders, Authenticom's briefing before the Court of Appeals for the Seventh Circuit, Cox Automotive's Opposition to Defendant CDK's Motion to Dismiss, and Authenticom's response to CDK's Interrogatory No. 1. Discovery is ongoing and additional details of Defendants' illegal collusion will be provided at any appropriate time.

**INTERROGATORY NO. 21**

Identify the terms of access that You are seeking with respect to CDK DMSs, and state whether those same terms should apply to other third-party "data integrators" or applications providers who may seek access (including, specifically, each "data integration service provider" identified in Your response to CDK Interrogatory No. 3).

**RESPONSE TO INTERROGATORY NO. 21**

Authenticom objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and calls for speculation as to "other third-party 'data integrators' or application[] providers." Authenticom further objects that this Interrogatory is compound. Authenticom further objects that the phrase "terms of access" is vague, ambiguous, and undefined in this context.

Subject to and without waiving the foregoing objections, Authenticom directs CDK to Authenticom's Complaint, in which Authenticom articulates the relief it is seeking in this action. Authenticom further states that the proper remedy would include setting aside any agreements that are found to violate the antitrust laws. *See Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d

1019, 1026 (7th Cir. 2017). Authenticom further states that it is seeking to ensure that dealers can choose how they share their own data with third parties.

## INTERROGATORY NO. 22

Identify any circumstances under which CDK and/or Reynolds may lawfully exclude You from accessing data maintained on their respective DMSs.

## RESPONSE TO INTERROGATORY NO. 22

Authenticom objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and calls for a legal conclusion. Authenticom further objects on the ground that this Interrogatory calls for speculation as to hypothetical "circumstances" inapplicable here. Authenticom further objects to this Interrogatory on the ground that discovery is ongoing and relevant documents have not yet been produced and depositions have not yet been taken. Authenticom objects to this contention Interrogatory as premature as Authenticom is not required to respond to contention interrogatories before discovery is complete as doing so would require multiple supplemental answers in the future and improperly require Authenticom to commit to a position before discovery is complete. The general rule is to defer contention interrogatories until discovery is near an end in order to promote efficiency and fairness. Authenticom further objects to this Interrogatory insofar as it asks for information that is properly the subject of expert testimony. Authenticom further objects to this Interrogatory because it is actually two separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom states that

discovery is ongoing and will respond to this contention interrogatory at an appropriate time.

**INTERROGATORY NO. 23**

Identify the number of times that You have accessed a CDK DMS and/or queried data maintained on a CDK DMS during each month since January 1, 2013.

**RESPONSE TO INTERROGATORY NO. 23**

Authenticom objects to this Interrogatory on the grounds that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Authenticom further objects to this Interrogatory on the ground that the time period covered by this Interrogatory, January 1, 2013 to the present, is overly broad and unduly burdensome as it relates to tracking every time Authenticom has provided data integration services for a CDK dealer.  Authenticom will respond to this Interrogatory as requesting Authenticom to "identify by month the number of times Authenticom has accessed a CDK DMS."  Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached.

Subject to and without waiving the foregoing objections, Authenticom responds that it does not have this information in its possession, custody, or control.

**INTERROGATORY NO. 24**

Identify every Dealer who has provided data to You that was obtained from a CDK or Reynolds DMS through the use of manual reporting tools, or any other method besides screen-scraping, and identify the method that each Dealer used.

**RESPONSE TO INTERROGATORY NO. 24**

Authenticom objects to this Interrogatory on the grounds that it is overbroad and unduly

burdensome. Authenticom further objects to this Interrogatory as irrelevant to the claims and allegations in this case. Authenticom further objects to this Interrogatory on the ground that the time period covered by this request, January 1, 2013 to the present, is overly broad and unduly burdensome as it relates to "every Dealer who has provided data to [Authenticom]." Authenticom further objects that the term "any other method besides screenscraping" is undefined and vague. Authenticom further objects that this Interrogatory is compound and is actually two separate requests, including "discrete subparts," *see* Fed. R. Civ. P. 33(a)(1). Authenticom further objects to the Interrogatories on the ground that CDK has propounded more Interrogatories than allowed under the Federal Rules of Civil Procedure and will answer them in order until the allowable limit is reached. Authenticom further objects to this Interrogatory insofar as it seeks confidential and proprietary information, the disclosure of which would cause irreparable competitive injury to Authenticom.

Subject to and without waiving the foregoing objections, Authenticom responds that it is willing to meet and confer with CDK to clarify the scope and content of this Interrogatory.

**INTERROGATORY NO. 25**

If any of Your responses to CDK's First Requests for Admission ("RFAs") 1-19 is anything other than a complete and unqualified admission: identify the RFA; identify the factual basis for Your response; identify all documents and information—including, by Bates number, each document produced by any party or non-party in this litigation—supporting Your response; and identify all persons who have knowledge of the facts supporting Your response.

**RESPONSE TO INTERROGATORY NO. 25**

Authenticom objects that this Interrogatory is compound, as it asks Authenticom to evaluate each of CDK's 19 Requests for Admission in CDK's First Requests for Admission, and

then propounds multiple interrogatories with respect to each. Prior to this Interrogatory, CDK had already propounded more Interrogatories than permitted under the Federal Rules. CDK has vastly exceeded the number of Interrogatories permitted under the Federal Rules of Civil Procedure. Authenticom therefore objects to responding to these Interrogatories on the ground that CDK has propounded more Interrogatories than allowed in violation of Rule 33.

Dated:  June 22, 2018

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Joanna T. Zhang
Joshua Hafenbrack
**Kellogg, Hansen, Todd,**
  **Figel & Frederick, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com

Jennifer L. Gregor
Kendall W. Harrison
**Godfrey & Kahn S.C.**
One East Main Street, Suite 500
Madison, WI 53703
(608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com

*Attorneys for Authenticom, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

Plaintiff Authenticom Inc.'s Amended Objections and Responses to Defendant CDK Global,

LLC's Second Set of Interrogatories to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT 48

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL 2817<br>Case No. 18 C 864 |
| This Document Relates to: | Hon. Robert M. Dow, Jr. |
| *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-CV-2521 (N.D. Ill.) | |

**PLAINTIFF AUTOLOOP'S OBJECTIONS AND RESPONSES TO
CDK GLOBAL, LLC'S FIRST REQUESTS FOR PRODUCTION**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Loop, LLC, d/b/a AutoLoop, "AutoLoop" or "Plaintiff") hereby serves these objections and responses to CDK Global, LLC's ("CDK") First Set of Requests for the Production of Documents.[1] AutoLoop reserves the right to supplement its responses or document production if it learns of additional information or responsive documents. Any production of documents is subject to the Agreed Confidentiality Order ("Protective Order") and the Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Protocol") entered by the Court in this case.

**GENERAL OBJECTIONS**

AutoLoop makes the following general objections to CDK's definitions, instructions, and requests for production ("Requests"), which are hereby incorporated by reference and made part of AutoLoop's response to each and every individually numbered request for production as if fully set forth therein. AutoLoop reserves the right to supplement, revise, correct, clarify, or otherwise modify its objections and responses to each Request. AutoLoop also reserves the right

---

[1] AutoLoop filed an amended complaint on behalf of itself and a class of automotive software vendors on June 5, 2018, subsequent to CDK's transmittal of its First Set of Requests for the Production of Documents.

to assert any other applicable objections to these Requests, and to object to any other request relating to the subject matter of the responses herein. AutoLoop's response to any of the Requests is not a waiver of any of these rights.

1.      AutoLoop has not completed its investigations or discovery with respect to the information and facts that may be discoverable or relevant in this action.  AutoLoop reserves the right to supplement or amend its responses set forth below should additional responsive or relevant information or documents be discovered as its investigation proceeds.

2.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they seek discovery of information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, or other applicable privileges and protections against disclosures.  AutoLoop will not disclose or produce information protected by any such privilege or doctrine.

3.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they seek information that exceeds the permissible scope of discovery, including information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they attempt to impose duties upon AutoLoop that are not provided for by the Federal Rules of Civil Procedure, or any other applicable law or rule.

5.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they call for the production of documents not in the possession, custody, or control of AutoLoop.

6. AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent the answers sought may be derived from publicly available information, where the burden of deriving the responsive information is substantially the same for CDK as it is for AutoLoop.

7. AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they seek documents and information already in CDK's or The Reynolds & Reynolds Company's ("Reynolds") possession, custody, or control.

8. AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they call for information not kept by AutoLoop in the ordinary course of business.

9. AutoLoop objects to CDK's Requests to the extent they seek the disclosure of trial preparation or expert documents prior to the dates fixed for such disclosure in this case. Any disclosure of such documents is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other protection.

10. AutoLoop objects to CDK's Requests to the extent they seek documents that are publicly available or otherwise equally available to CDK from other sources.

11. AutoLoop objects to CDK's Requests to the extent they contain no temporal limitation. Unless otherwise stated, AutoLoop's response will relate to the time period January 1, 2013, to the present.

12. AutoLoop objects to CDK's Requests to the extent they request or call for the provision of documents covered by a Non-Disclosure Agreement or other contract barring dissemination.

13.     AutoLoop objects to the "Definitions" and "Instructions" to the extent they purport to change the common meaning of the English language with regard to any word or phrase.

14.     AutoLoop objects to the Requests to the extent they seek information that is more appropriately sought through another discovery device.

15.     AutoLoop objects to the Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this action.

16.     AutoLoop objects to the Requests as overly broad and unduly burdensome to the extent that they call for the production of "all" documents when documents "sufficient to show" would suffice to provide the relevant facts.

17.     AutoLoop objects to the Requests, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, and/or do not specify the documents sought with sufficient particularity. AutoLoop will use reasonable diligence in interpreting the Requests and providing responsive information or documents.

18.     AutoLoop disclaims any suggested obligation to create documents in response to the Requests.

19.     AutoLoop objects to CDK's Requests for production to the extent that they call for the production of documents beyond the scope of the ESI Protocol.

20.     AutoLoop objects to the definition of "Document" to the extent it purports to alter discovery available under the Federal Rules, the ESI protocol, or what is reasonably accessible.

21.     AutoLoop objects to the definition of the terms "AutoLoop," "You" and "Your" to the extent those definitions purport to include entities other than AutoLoop, and to the extent

- 4 -

those terms purport to require the production of documents within the possession, custody, or control of the aforementioned entities.

22.     AutoLoop objects to the definition of the term "Contracted Data Extractor" as argumentative, vague, and overbroad.  AutoLoop will interpret the term "Contracted Data Extractor" to mean any data integrator with which AutoLoop has contracted to provide data integration services as that term is used in the Amended Complaint.

23.     AutoLoop objects to the definition of the term "Data Extractor" as argumentative, vague, and overbroad.  AutoLoop will interpret the term "Data Extractor" to mean any entity that provides data integration services as that term is used in the Amended Complaint.

24.     AutoLoop objects to the definition of the term "Data Extraction Services" as argumentative, vague, and overbroad.  AutoLoop will interpret the term "Data Extraction Services" to mean data integration services as that term is used in the Amended Complaint.

25.     AutoLoop objects to the definition of the term "Dealer" as overbroad and seeking information that is not relevant to the claims or defenses in this Action.  AutoLoop will interpret the term "Dealer" to mean any franchised new car dealer in the United States.

26.     AutoLoop objects to the Instructions to the extent they are inconsistent with the Protective Order, ESI Protocol, and Federal Rules of Civil Procedure.

27.     AutoLoop's productions are subject to any agreement among the parties as to the relevant time period, the identity of custodians' files to be searched, and search terms.

28.     By making the accompanying objections and responses to the Requests, AutoLoop does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this Action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy,

materiality, and privilege. Further, AutoLoop provides the objections and responses herein without in any way implying that they consider the Requests and responses to be relevant to any claims or defenses asserted in this Action or proportional to the needs of this Action.

29. A response to a Request indicating that documents will be produced shall not be deemed or construed to suggest that there are, in fact, responsive documents, that AutoLoop performed any of the acts described in the document request, or that AutoLoop acquiesced in the characterization of the conduct or activities contained in the Request or any definitions and/or instructions applicable to the Request.

## AUTOLOOP'S STATEMENT REGARDING RESPONSES

1. AutoLoop states that its objections and responses to the Requests are based upon information presently available and specifically known to AutoLoop. AutoLoop expressly reserves the right to amend, supplement, or otherwise modify its objections, responses, and document productions as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

2. Where AutoLoop states that it will produce responsive, non-privileged documents pursuant "to a diligent search," this search will primarily include a search of the hard copy and electronically stored information of the custodians agreed to by the parties. Where appropriate, AutoLoop will also search non-custodial files (such as centrally-maintained drives and files) reasonably expected to contain responsive, non-duplicative documents. When searching emails and other electronically stored information, AutoLoop will use a set of search terms agreed to by the parties.

## AUTOLOOP'S RESPONSES AND SPECIFIC OBJECTIONS

### *Applications*

**DOCUMENT REQUEST NO. 1:** All advertising plans, business plans, strategic plans, estimates, revenue forecasts, sales or marketing plans or efforts, product launch plans, promotional programs, third party market research reports, or strategies, concerning Your Applications.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 2:** All documents that discuss the ability of Your Applications to compete with and/or replace traditional DMSs, including, but not limited to, the ability of Dealers to enter data directly into Your Applications in the first instance, bypassing the DMS completely.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 3:**  Documents sufficient to identify and describe the functionality of each Application that You have offered during the Relevant Time Period, and the number of Dealers who used each Application during each year of the Relevant Time Period.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.  AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 4:**  Documents sufficient to identify (1) all Dealers who used each of Your Applications and (2) the DMS providers they used for each month of the Relevant Time Period.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 5:** Market studies, survey data, or any other source of the market share information on all Applications used by Your Dealer customers.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 6:** Documents sufficient to identify Your share of Application sales (by Application type) for each month of the Relevant Time Period, in every way that You keep track of it.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "share of Application sales" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending

litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production

of documents that may not be maintained in the fashion requested and would require AutoLoop

to create documents not presently in existence.  AutoLoop further objects to this Request on the

basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 7:**  Documents sufficient to identify all competing Application
providers and their overall shares and shares by Applications segments for each month of the
Relevant Time Period.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop objects to the term "Applications segments" as vague, ambiguous, overbroad, and not

likely to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the grounds that it seeks the production of

documents that may not be maintained in the fashion requested and would require AutoLoop to

create documents not presently in existence.  AutoLoop further objects to this Request to the

extent that it seeks information not in the possession, custody, or control of AutoLoop.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant

information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 8:** All documents related to any analyses comparing Your Applications (including their functionality, service quality, features, technology, capabilities, pricing, and/or price changes) to the Applications offered by CDK or other Vendors or otherwise assessing competition for Application customers.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop objects to the term "otherwise assessing competition" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 9:** All documents related to Your allegation in Paragraph 28 of the Complaint that Your "products and services are superior" to those of CDK.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

      Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 10:**  Documents sufficient to identify all Dealers who have switched to or from one of Your Applications during the Relevant Time Period, and: (a) the Application that the Dealer switched to (or from); (b) the effective date of the switch; (b) the number of Dealer stores that switched; and (c) the Dealer's tenure using the prior Application.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.  AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.  AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 11:**  All "win/loss" reports and documents that reflect Application customer switching.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 12:** All documents reflecting communications with Dealers regarding complaints, shortcomings or disadvantages with respect to the functionality or capabilities of Your products and services.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 13:** All documents related to Your offer and marketing of any bundled products and Relevant Services and compensation for solution gaps.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop objects to the terms "bundled products" and "solution gaps" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 14:** All documents related to Your allegations in Paragraph 147 of the Complaint that CDK "withholds from AutoLoop the ability to create and modify repair orders using its SmartLane program," and "does not allow customers to sign repair orders in the dealer's service lane," while CDK's Service Edge program has these capabilities.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 15:** All documents related to Your ability to create and modify repair orders using Your SmartLane program by accessing any non-CDK DMS (*e.g.*, DealerTrack, ADAM, or Autosoft), including, but not limited to, any related communications with Dealers.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are

- 14 -

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

*Access to CDK or Reynolds DMS*

**DOCUMENT REQUEST NO. 16:**  Documents sufficient to identify for each year of the
Relevant Time Period: (a) each Data Extractor that You have used to access any CDK or
Reynolds DMS or the data maintained thereon; (b) the Dealers on whose behalf you engaged
each Data Extractor; and (c) all DMS directories and files that were accessed by the Data
Extractor.

   **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence.  AutoLoop further

objects to this Request on the basis that it seeks confidential and irrelevant information.

   Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 17:**  All documents related to any agreements between You and
any Data Extractors for access to any CDK or Reynolds DMS or the data maintained thereon,
including, but not limited to, the drafting, negotiation, interpretation, or enforcement of any such
agreements.

   **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant

information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 18:**  All documents related to pricing and/or services offered by
Data Extractors for access to CDK or Reynolds DMSs or the data maintained thereon.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request on

the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 19:**  All documents related to any CDK or Reynolds Data
Authorization forms that You or any Contracted Data Extractor sent to Dealers, and any
response(s) that You received.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop objects to the term "Data

Authorization forms" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 20:** Documents sufficient to show all agreements with Dealers and/or Contracted Data Extractors regarding access to any CDK or Reynolds DMS or the data maintained thereon.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 21:** Documents sufficient to show Your or any Contracted Data Extractor's methods of accessing, requesting, receiving, storing, securing, encrypting, or using data maintained on any CDK or Reynolds DMS or any CDK or Reynolds DMS username and password credentials through means other than approved 3PA or RCI integration, and any written policies, guidance, standards, procedures, or similar documentation that apply to Your or the Contracted Data Extractor's access methods.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "methods of accessing, requesting, storing, securing, encrypting, or using data" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible

- 17 -

evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 22:** Documents sufficient to show all requests for, receipts of, or attempts by You or any Contracted Data Extractor to obtain username and password credentials for any CDK or Reynolds DMS, including, but not limited to, any requests for system administrator-level or "UUP user" access to a CDK DMS.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop objects to the terms "administrator-level" and "UUP user" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

- 18 -

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 23:**  All documents related to any circumstances in which You or any Contracted Data Extractor have accessed a CDK or Reynolds DMS or the data maintained thereon without first obtaining express, written consent or authorization from a Dealer purporting to permit such access.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 24:**  All documents related to any Dealer's declination to authorize or request to stop Your or any Contracted Data Extractor's access or extraction of data maintained on any CDK or Reynolds DMS.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request to the extent that it seeks information not in the

possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 25:**  All documents discussing access privileges associated with
Dealer DMS login credentials, including any documents or communications that show whether
You or any Contracted Data Extractor have access to any non-Dealer owned data maintained in
any CDK or Reynolds DMS, including, but not limited to, any OEM, Third Party, CDK or
Reynolds Proprietary Data.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request to the extent that it seeks information not in the

possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 26:**  All documents related to Your or any Contracted Data
Extractor's development or installation of any "code-on-the-box" used to access data maintained
on any CDK DMS or the data maintained thereon.  For the avoidance of doubt, this includes
code-on-the-box installed by or for any of Your Applications.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop objects to the term "code-on-the-box" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 27:** All documents related to whether Your or any Contracted Data Extractor's methods of DMS access, data syndication, writeback, or data extraction: (a) are prohibited by any applicable laws, regulations, or contractual agreements; (b) comply with data security, data privacy, or automotive industry standards or guidance; (c) cause data security, data integrity, or system burden issues; or (d) are otherwise objectionable.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "otherwise objectionable" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 28:**  Documents sufficient to identify for each year of the Relevant Time Period: (a) all CDK DMSs (by Dealer) that You or any Contracted Data Extractor have accessed (directly or indirectly) through any means other than approved 3PA integration; (b) Your or any Contracted Data Extractor's means of accessing data maintained on the CDK DMS (*e.g.*, code-on the box, Dealer username and password and screen-scraping); (c) all usernames and passwords that You or any Contracted Data Extractor have used to access the CDK DMS; and (d) all DMS directories and files that that You or any Contracted Data Extractor accessed.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.  AutoLoop objects to the term "code-on-the-box" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.  AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 29:**  Documents sufficient to show all English statement queries that You or any Contracted Data Extractor have performed on a CDK DMS.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds

- 22 -

that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop objects to the term "English statement queries" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 30:** Documents sufficient to show the date, time, content, volume, frequency, and duration of all queries that You or any Contracted Data Extractor have performed on any CDK DMS or the data maintained thereon through means other than approved 3PA integrations.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

- 23 -

**DOCUMENT REQUEST NO. 31:**  All documents related to any data corruption, data integrity, or system performance-related issues experienced by any CDK or Reynolds Dealer, which were attributable to or otherwise related to a Vendor's access to the Dealer's licensed CDK or Reynolds DMS.

      **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request to the extent that it seeks information not in the

possession, custody, or control of AutoLoop.

      Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 32:**  All documents that refer or otherwise relate to: (a) CDK's or Reynolds's third-party access policies; (b) CDK's SecurityFirst program; and/or (c) CDK's "refreshed" 3PA program.

      **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.

      Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 33:** All documents related to any efforts or "threats" made by CDK to detect, block, disable, or otherwise restrict Your or any Contracted Data Extractor's access to a CDK DMS or the data maintained thereon, and/or Your or any Contracted Data Extractor's efforts to evade CDK's blocking and detection efforts, including any attempts to bypass security features implemented by CDK and documents sufficient to identify and describe all scripts, programs, or executable files that You or any Contracted Data Extractor have created, used, or provided to Dealers for any of these purposes.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses with respect to any efforts or "threats" made by CDK to detect, block, disable, or otherwise restrict access to a CDK DMS.

**DOCUMENT REQUEST NO. 34:** All documents related to Your allegation in Paragraph 153 of the Complaint that a CDK employee "admitted in private conversation with a vendor that the rhetoric around 'security' has 'little credibility.'"

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

*AutoLoop's 3PA Certification*

**DOCUMENT REQUEST NO. 35:** All documents related to Your January 2016 3PA Agreement with CDK, including, but not limited to: (a) the decision to enter into the Agreement; (b) any analysis of the financial impact of entering into the Agreement and the pricing terms therein; (c) all negotiations surrounding the Agreement; (d) any amendments to the Agreement; and/or (e) any analysis or communication concerning the legality, illegality, and/or scope of the Agreement.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 36:** All documents that reflect Your awareness of Reynolds's admission into the 3PA program and/or the 3PA fees paid by Reynolds during the Relevant Time Period.

   **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.

   Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 37:** All documents related to Your pass-through of 3PA fees to Dealers.

   **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant

information.

   Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 38:**  All documents related to the 3PA certification, decertification, or lack of certification, of Your Applications, including, but not limited to, any related negotiations and/or amendments, any applications to join, or any discussions regarding pricing, security protocols, or terms of access.

> **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.

> Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 39:**  All documents related to Your allegation in Paragraph 136 of the Complaint that CDK requires AutoLoop to pay 3PA integration fees for five products despite AutoLoop only receiving 3PA services for two of its solutions.

> **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop objects to this Request on the basis that it seeks confidential and irrelevant

information.  AutoLoop further objects to this Request as overly broad and unduly burdensome

to the extent that it calls for the production of "all" documents.

> Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

*Data Security*

**DOCUMENT REQUEST NO. 40:**  All documents related to Your or any Contracted Data
Extractor's data security policies (as they pertain to any Relevant Service), including, but not
limited to, Your or any Contracted Data Extractor's protocols for inputting, pushing, or
otherwise transferring data into or out of DMSs.

      **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request to the extent that it seeks information not in the

possession, custody, or control of AutoLoop.  AutoLoop further objects to this Request on the

basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 41:**  All documents related to actual or suspected unauthorized
third-party access to, misuse, or misappropriation of data maintained on any provider's DMS.

      **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop objects to the term "unauthorized

third-party access to, misuse, or misappropriation of data" as vague, ambiguous, overbroad, and

not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this

Request because it seeks information not relevant to any claim or defense in the pending

litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 42:** All documents related to any analysis of data security, data
integrity, or system performance risks caused by third-party access to any DMS or the data
maintained thereon.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant

information. AutoLoop further objects to this Request as seeking information subject to expert

opinion and analysis.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 43:** All documents and communications, whether internal or
involving a third-party, that discuss or refer to security threats to any DMS, including but not
limited to concerns regarding the security of data stored on a DMS.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 44:** All documents related to any Application, Data Extraction
Service, or DMS, and which refer to: (a) the 2013 data breach against Target; (b) North Korea's
June 2014 cyber attack against Sony Pictures Enterprise; (c) the August 2014 hack into
Community Health System's patient information; (d) the 2017 Equifax data breach; (e)
Cambridge Analytica's alleged data scraping of Facebook user's information; (f) the 2016 data
security incident at DealerBuilt; or (g) any other attempted or successful cyber attacks or data
security breaches.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request to

the extent that it seeks information not in the possession, custody, or control of AutoLoop.

AutoLoop further objects to this Request on the grounds that it seeks documents protected by the

attorney-client privilege, the attorney work product doctrine, joint defense or common interest

privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 45:** Documents sufficient to show Your investments in or
financing related to data security.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop objects to the terms "investments," "financing," and "data security" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 46:** All documents related to Your cyber liability insurance.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

<p align="center">*Pricing and Financial Information*</p>

a. *Applications*

**DOCUMENT REQUEST NO. 47:** For each of Your Applications, documents sufficient to show all initial, one-time, and monthly recurring prices from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further

objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 48:** Documents sufficient to show all initial, one-time, and monthly recurring prices that Dealers paid for non-AutoLoop Applications from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering. To the extent that these fees or charges differ depending on the DMS used by a Dealer, identify the fees by DMS (*e.g.*, AutoMate, CDK, Cox, Reynolds).

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further

objects to this Request to the extent that it seeks information not in the possession, custody, or

control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 49:** For each of Your Applications, documents sufficient to show monthly revenue, costs (including variable costs and/or COGS), and profit (including profit margin) from January 1, 2011 to the present.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request on the grounds that it seeks the production of

documents that may not be maintained in the fashion requested and would require AutoLoop to

create documents not presently in existence. AutoLoop further objects to this Request on the

basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 50:** Documents sufficient to show quarterly revenue and profit (including profit margin) for all Applications from January 1, 2011 to the present.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request on the grounds that it seeks the production of

documents that may not be maintained in the fashion requested and would require AutoLoop to

create documents not presently in existence. AutoLoop further objects to this Request on the

basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 51:**  Documents sufficient to show all integration and/or
extraction fees paid by You for each of Your Applications on a monthly basis from January 1,
2011 to the present, and the entity to whom such fees were paid for each of Your Applications.

 **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request on the grounds that it seeks the production of

documents that may not be maintained in the fashion requested and would require AutoLoop to

create documents not presently in existence.  AutoLoop further objects to this Request on the

basis that it seeks confidential and irrelevant information.

 Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses with respect to integration and/or extraction fees paid.

**DOCUMENT REQUEST NO. 52:**  Documents sufficient to show all integration and/or
extraction fees or costs charged to Dealers for each of Your Applications on a monthly basis
from January 1, 2011 to the present.  To the extent that these fees or costs differ depending on
the DMS used by a Dealer, identify the fees by DMS (*e.g.*, AutoMate, CDK, Cox, Reynolds).

 **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 53:** Documents sufficient to show Your projections with respect to revenue and profit for each of Your Applications from January 1, 2015 to the present.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

b. *Data Extraction Services*

**DOCUMENT REQUEST NO. 54:** Documents sufficient to show all initial, one-time, and monthly recurring fees that You paid to Data Extractors for each of Your Applications from January 1, 2011 to the present. Data should indicate the month each monthly charge is covering.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 55:** Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on a CDK DMS.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "syndication" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 56:** Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on each non-CDK DMS.

    **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "syndication" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

    Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 57:** Documents sufficient to show how data from each DMS was integrated into Your Applications.

    **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "integrated" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not

presently in existence.  AutoLoop further objects to this Request on the basis that it seeks

confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

*Miscellaneous*

**DOCUMENT REQUEST NO. 58:**  All documents regarding Dealers switching DMS
providers, including, but not limited to, any discussions with Dealers regarding switching DMS
providers.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request on

the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 59:**  All documents analyzing the ability of Dealers to switch
DMS providers, including, but not limited to, studies, reports, engagement letters, surveys, focus
group results, and communications.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request on

the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information. AutoLoop further objects to this Request as seeking information subject to expert opinion and analysis.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 60:** Any studies or surveys (including, but not limited to, all data and documentary input and output) conducted by or for You reporting on any automotive Dealers' DMS and/or Application use.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop objects to the term "any automotive Dealers' DMS and/or Application use" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information. AutoLoop further objects to this Request as seeking information subject to expert opinion and analysis.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 61:**  All documents related to the February 18, 2015 agreements between CDK and Reynolds described in Paragraph 96 of the Complaint, including all documents that reflect Your awareness of the agreements or of any term of the agreements.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 62:**  All documents that reflect coordinated conduct by CDK and Reynolds with respect to third-party DMS access programs, policies, business practices, strategy, or pricing, or that otherwise relate to Your claims that CDK has engaged in any illegal or anticompetitive activity or that competition in any market has been harmed.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 63:** All documents related to Your allegation in Paragraph 5 of the Complaint that "the damage to AutoLoop alone from its antirust claims [is] in the millions of dollars," including all computations of claimed damages and all documents on which you rely to substantiate Your alleged damages.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information. AutoLoop further objects to this Request as seeking information subject to expert opinion and analysis. AutoLoop objects to this Request to the extent it seeks information that is more appropriately sought through another discovery device.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 64:** Every document referred to, quoted, paraphrased, or excerpted in the Complaint, or otherwise relied upon as the basis for any allegation in the Complaint.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 65:** All documents You received from any non-parties in response to subpoenas, informal discovery requests, or other means in preparation for or connection with this litigation.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

      Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 66:** All documents and communications related to Your alleged injuries or damages.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 67:** All communications with Authenticom or its counsel regarding the subject matter of this litigation or the action that Authenticom filed against CDK and Reynolds in the United States District Court for the Western District of Wisconsin, Case No. 17-cv-318-jdp, including, but not limited to, communications in connection with the testimony You provided in the preliminary injunction hearing in the above-referenced case.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 68:** All documents provided by You to the United States Federal Trade Commission in connection with its investigation regarding CDK and Reynolds.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 69:** All documents related to any presentations that You have prepared or given, or meetings of Your board of directors, shareholders, or investors, that refer or relate to CDK, Your claims and allegations, or this litigation.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 70:** Documents sufficient to show Your policies and practices concerning the preservation, retention, storage, or destruction of any documents or ESI.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 71:** Documents sufficient to show Your organizational structure during the Relevant Time Period, including the identity of all officers, employees,

investors, partners, owners, shareholders, or principals with management-level responsibility for any Relevant Services.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request on the grounds that it seeks the production of

documents that may not be maintained in the fashion requested and would require AutoLoop to

create documents not presently in existence.

Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 72:** Any industry data (including survey data, market studies, or any other sources) that You have access to that provide information about Applications used by Dealers (including non-AutoLoop Applications).

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it

seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

Dated:  June 22, 2018

Richard J. Prendergast
Michael T. Layden
Collin M. Bruck
**RICHARD J. PRENDERGAST, LTD.**
111 W. Washington Street, Suite 1100
Chicago, Illinois 60602
Telephone: (312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
cbruck@rjpltd.com

Jennifer L. Gregor
Kendall W. Harrison
**GODFREY & KAHN S.C.**
One East Main Street, Suite 500
Madison, Wisconsin 53703
Telephone: (608) 284-2629
Fax: (608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com

Respectfully submitted,

 _/s/ Derek T. Ho_____
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
David L. Schwarz
Kevin J. Miller
Daniel V. Dorris
Joshua Hafenbrack
Daniel S. Guarnera
**KELLOGG, HANSEN, TODD,**
    **FIGEL &FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
dschwarz@kellogghansen.com
kmiller@kellogghansen.com
ddorris@kellogghansen.com
jhafenbrack@kellogghansen.com
dguarnera@kellogghansen.com

*Counsel for Plaintiff AutoLoop*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

Plaintiff AutoLoop's Objections and Responses to CDK Global, LLC's First Requests For

Production to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

                                      /s/ *Derek T. Ho*
                                       Derek T. Ho

# EXHIBIT 49

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL 2817<br>Case No. 18 C 864 |
| This Document Relates to: | Hon. Robert M. Dow, Jr. |
| *Cox Automotive, Inc, et al. v. CDK Global, LLC*, Case No. 1:18-CV-1058 (N.D. Ill.) | |

**PLAINTIFF COX AUTOMOTIVE'S OBJECTIONS AND RESPONSES TO
CDK GLOBAL, LLC'S FIRST REQUESTS FOR PRODUCTION**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Cox Automotive, Inc., along with its subsidiaries Autotrader.com, Inc., Dealer Dot Com, Inc. ("Dealer.com"), Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., and Xtime, Inc. (collectively, "Cox Automotive" or "Plaintiffs") hereby serves these objections and responses to CDK Global, LLC's ("CDK") First Set of Requests for the Production of Documents. Cox Automotive reserves the right to supplement its responses or document production if it learns of additional information or responsive documents. Any production of documents is subject to the Agreed Confidentiality Order ("Protective Order") and the Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Protocol") entered by the Court in this case.

**GENERAL OBJECTIONS**

Cox Automotive makes the following general objections to CDK's definitions, instructions, and requests for production ("Requests"), which are hereby incorporated by reference and made part of Cox Automotive's response to each and every individually numbered request for production as if fully set forth therein. Cox Automotive reserves the right to

supplement, revise, correct, clarify, or otherwise modify its objections and responses to each Request. Cox Automotive also reserves the right to assert any other applicable objections to these Requests, and to object to any other Requests relating to the subject matter of the responses herein. Cox Automotive's response to any of the Requests is not a waiver of any of these rights.

1.      Cox Automotive has not completed its investigations or discovery with respect to the information and facts that may be discoverable or relevant in this action. Cox Automotive reserves the right to supplement or amend its responses set forth below should additional responsive or relevant information or documents be discovered as its investigation proceeds.

2.      Cox Automotive objects to CDK's Requests and their accompanying instructions and definitions to the extent that they seek discovery of information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, or other applicable privileges and protections against disclosures. Cox Automotive will not disclose or produce information protected by any such privilege or doctrine.

3.      Cox Automotive objects to CDK's Requests and their accompanying instructions and definitions to the extent that they seek information that exceeds the permissible scope of discovery, including information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      Cox Automotive objects to CDK's Requests and their accompanying instructions and definitions to the extent they attempt to impose duties upon Cox Automotive that are not provided for by the Federal Rules of Civil Procedure, or any other applicable law or rule.

5.      Cox Automotive objects to CDK's Requests and their accompanying instructions and definitions to the extent they call for the production of documents not in the possession, custody, or control of Cox Automotive.

6.     Cox Automotive objects to CDK's Requests and their accompanying instructions and definitions to the extent the answers sought may be derived from publicly available information, where the burden of deriving the responsive information is substantially the same for CDK as it is for Cox Automotive.

7.     Cox Automotive objects to CDK's Requests and their accompanying instructions and definitions to the extent they seek documents and information already in CDK's or The Reynolds & Reynolds Company's ("Reynolds") possession, custody, or control.

8.     Cox Automotive objects to CDK's Requests and their accompanying instructions and definitions to the extent that they call for information not kept by Cox Automotive in the ordinary course of business.

9.     Cox Automotive objects to CDK's Requests to the extent they seek the disclosure of trial preparation or expert documents prior to the dates fixed for such disclosure in this case. Any disclosure of such documents is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other protection.

10.     Cox Automotive objects to CDK's Requests to the extent they seek documents that are publicly available or otherwise equally available to CDK from other sources. Cox Automotive objects to CDK's Requests to the extent they contain no temporal limitation. Unless otherwise stated, Cox Automotive's response will relate to the time period January 1, 2014, to the present.

11.     Cox Automotive objects to CDK's Requests to the extent they request or call for the provision of documents covered by a Non-Disclosure Agreement or other contract barring dissemination.

3

12.     Cox Automotive objects to the "Definitions" and "Instructions" to the extent they purport to change the common meaning of the English language with regard to any word or phrase.

13.     Cox Automotive objects to CDK's Requests to the extent they seek information that is more appropriately sought through another discovery device.

14.     Cox Automotive objects to CDK's Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this action.

15.     Cox Automotive objects to CDK's Requests as overly broad and unduly burdensome to the extent that they call for the production of "all" documents when documents "sufficient to show" would suffice to provide the relevant facts.

16.     Cox Automotive objects to CDK's Requests, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, and/or do not specify the documents sought with sufficient particularity.  Cox Automotive will use reasonable diligence in interpreting the Requests and providing responsive information or documents.

17.     Cox Automotive disclaims any suggested obligation to create documents in response to the Requests.

18.     Cox Automotive objects to CDK's Requests to the extent that they call for the production of documents beyond the scope of the ESI Protocol.

19.     Cox Automotive objects to the definition of "Document" to the extent it purports to alter discovery available under the Federal Rules of Civil Procedure, the ESI protocol, or what is reasonably accessible.

4

20.     Cox Automotive objects to the definition of the terms "Autotrader," "Cox," "DealerTrack," "Dealer Dot Com," "HomeNet," "Kelley Blue Book," "vAuto," "VinSolutions," "Xtime," "You" and "Your" to the extent those definitions purport to include entities other than Autotrader.com, Inc., Cox Automotive, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., and Xtime, Inc. and to the extent those terms purport to require the production of documents within the possession, custody, or control of the aforementioned entities.

21.     Cox Automotive objects to the definition of the term "Contracted Data Extractor" as argumentative, vague, and overbroad.  Cox Automotive will interpret the term "Contracted Data Extractor" to mean any data integrator with which Cox Automotive has contracted to provide data integration services as that term is used in the Complaint.

22.     Cox Automotive objects to the definition of the term "Data Extractor" as argumentative, vague, and overbroad.  Cox Automotive will interpret the term "Data Extractor" to mean any entity that provides data integration services as that term is used in the Complaint.

23.     Cox Automotive objects to the definition of the term "Data Extraction Services" as argumentative, vague, and overbroad.  Cox Automotive will interpret the term "Data Extraction Services" to mean data integration services as that term is used in the Complaint.

24.     Cox Automotive objects to the definition of the term "Dealer" as overbroad and seeking information that is not relevant to the claims or defenses in this Action.  Cox Automotive will interpret the term "Dealer" to mean any franchised new car dealer in the United States.

25.     Cox Automotive objects to the Instructions to the extent they are inconsistent with the Federal Rules of Civil Procedure, ESI Protocol, and the Protective Order.

26.     Cox Automotive's productions are subject to any agreement among the parties as to the relevant time period, the identity of custodians' files to be searched, and search terms.

27.     By making the accompanying objections and responses to the Requests, Cox Automotive does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this Action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, Cox Automotive provides the objections and responses herein without in any way implying that they consider the Requests and responses to be relevant to any claims or defenses asserted in this Action or proportional to the needs of this Action.

28.     A response to a Request indicating that documents will be produced shall not be deemed or construed to suggest that there are, in fact, responsive documents, that Cox Automotive performed any of the acts described in the document Request, or that Cox Automotive acquiesced in the characterization of the conduct or activities contained in the Request or any definitions and/or instructions applicable to the Request.

**COX AUTOMOTIVE'S STATEMENT REGARDING RESPONSES**

1.     Cox Automotive states that its objections and responses to the Requests are based upon information presently available and specifically known to them.  Cox Automotive expressly reserves the right to amend, supplement, or otherwise modify its objections, responses, and document productions as it believes to be necessary and appropriate in light of additional information, documents, or materials that are discovered or disclosed in the course of these proceedings.

2.     Where Cox Automotive states that it will produce responsive, non-privileged documents pursuant "to a diligent search," this search will primarily include a search of the hard copy and electronically stored information of the custodians agreed to by the parties.  Where

appropriate, Cox Automotive will also search non-custodial files (such as centrally-maintained

drives and files) reasonably expected to contain responsive, non-duplicative documents. When

searching emails and other electronically stored information, Cox Automotive will use a set of

search terms agreed to by the parties.

## COX AUTOMOTIVE'S RESPONSES AND SPECIFIC OBJECTIONS

*Acquisition and Development of DealerTrack*

**DOCUMENT REQUEST NO. 1:** All documents related to any public statements about the
acquisition of DealerTrack, including, but not limited to, Alex Taylor's presentation on the
acquisition as reported in *Automotive News* (July 25, 2016) and Cliff Bank's remarks at the
October 7, 2015 BWG Strategy conference.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

further objects to this Request because it seeks information not relevant to any claim or defense

in the pending litigation. Cox Automotive further objects to this Request to the extent that it

seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 2:** All documents related to any statements made to
DealerTrack investors regarding Your acquisition of DealerTrack.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 3:** All documents related to any endorsement of You by the California New Car Dealers Association.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 4:** All documents You submitted to the United States Federal Trade Commission or any other regulatory authority as part of Your Hart-Scott-Rodino Act ("HSR") filing related to Your acquisition of DealerTrack, including all documents which are responsive or otherwise submitted pursuant to Item 4(c) of Your HSR Form.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 5:** All documents related to the divestiture of assets and other conduct required of You pursuant to the Final Judgment (Dkt. No. 11) entered on January 21, 2016, in *United States v. Cox Enter., Inc., et al.*, Civ. Action No. 15-01583 (D.D.C.).

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 6:** All documents related to Your decision for DealerTrack to offer (and continue to offer) an "open" DMS, as that term is used in the Complaint.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

further objects to this Request because it seeks information not relevant to any claim or defense

in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 7:** Documents sufficient to show Your investments in or
financing related to DealerTrack, including, specifically, any investments in or financing related
to data security.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive objects to the terms "investments" and "financing" as vague,

ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox

Automotive further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. Cox Automotive further objects to this Request on the

grounds that it seeks the production of documents that may not be maintained in the fashion

requested and would require Cox Automotive to create documents not presently in existence.

Cox Automotive further objects to this Request on the basis that it seeks confidential and

irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 8:** All written business plans or presentations related to
DealerTrack.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 9:** All versions of Your standard agreements and/or terms and conditions with Dealers for DMS services offered by DealerTrack, including, but not limited to, contract initiation and expiration dates, all required payments, and provisions regarding sharing Dealers' log-in credentials with third-party Data Extractors.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 10:** All marketing materials that refer to DealerTrack, Your Applications, the OpenTrack program or API, CDK, Reynolds, and/or any CDK or Reynolds product, including, but not limited to, materials created after learning about CDK's decision to block third-party Data Extractors.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request because it seeks information not

relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 11:**  All documents comparing the DMS systems (including
their functionality, service quality, pricing, and/or price changes) offered by DealerTrack and
other DMS providers or otherwise assessing competition for DMS customers.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive

further objects to this Request because it seeks information not relevant to any claim or defense

in the pending litigation.  Cox Automotive further objects to this Request on the basis that it

seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 12:**  Documents sufficient to show the number and identity of:
(a) new automobile franchised Dealers; (b) new automobile independent (non-franchised)
Dealers; (c) used automobile Dealers; and (d) non-automobile Dealers who were DealerTrack
DMS customers for each month during the Relevant Time Period, and DealerTrack's share of
each Dealer category for each month during the Relevant Time Period.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 13:** Documents, including, but not limited to, "win/loss" reports, sufficient to identify all Dealers who have switched to or from a DealerTrack DMS during the Relevant Time Period, and: (a) the DMS that the Dealer switched to (or from); (b) the effective date of the switch; (c) the number of Dealer stores that switched; and (d) the length of time the Dealer used the DMS that it switched from.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects that this Request seeks information that is already in the possession of CDK or Reynolds. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 14:** All documents regarding Dealers switching DMS providers, including, but not limited to, Your strategies for switching Dealers to DealerTrack and/or any discussions with Dealers, industry groups, press, or other third parties regarding switching DMS providers.

      **Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

further objects to this Request on the basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 15:** All documents analyzing the ability of Dealers to switch DMS providers, including, but not limited to, studies, reports, engagement letters, surveys, focus group results, and communications. This [R]equest includes, but is not limited to, all documents underlying, evidencing, discussing, and describing the studies that Cox has publicly described as follows: "Cox Automotive partnered with two independent research firms to conduct studies with hundreds of [D]ealer respondents. This included surveys, focus groups, a national online panel, and one-on-one discussions . . . Respondents with a variety of current DMS providers, including CDK, Reynolds & Reynolds, Dealertrack DMS, and others participated in the research."

      **Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information. Cox Automotive further objects to this Request as seeking information subject to expert opinion and analysis.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 16:** Any studies or surveys (including, but not limited to, all data and documentary input and output) conducted by or for You reporting on any automotive Dealers' DMS and/or Application use.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive objects to the term "any automotive Dealers' DMS and/or Application use" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information. Cox Automotive further objects to this Request as seeking information subject to expert opinion and analysis.

15

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 17:** Documents sufficient to show DealerTrack's DMS market share in the United States DMS market, both by dealership rooftop and any other metric commonly used by Cox to track DMS market share (*e.g.*, percentage of car sales). For the avoidance of doubt, this Request is not limited solely to new car franchised dealerships, but applies to all automobile dealerships that use a DMS.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request as seeking information subject to expert opinion and analysis. Cox Automotive objects to this Request to the extent it contains legal conclusions or the application of law to facts that are subject to dispute in this case.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

*Data Security*

**DOCUMENT REQUEST NO. 18:** All documents related to Your or any Contracted Data Extractor's data security policies (as they pertain to any Relevant Service), including, but not limited to, Your or any Contracted Data Extractor's protocols for inputting, pushing, or otherwise transferring data into or out of DMSs.

16

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.  Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 19:**  All documents and communications, whether internal or involving a third-party, that discuss or refer to security threats to any DMS, including, but not limited to, concerns regarding the security of data stored on a DMS.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 20:**  All documents related to any analysis of data security, data integrity, or system performance risks caused by third-party access to any DealerTrack DMS or the data maintained thereon, including, but not limited to, data tracking access to Cox's DMS by Data Extractors, whether hostile or non-hostile extractors.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive objects to the term "data tracking access" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.  Cox Automotive further objects to this Request as seeking information subject to expert opinion and analysis.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 21:**  All documents related to actual or suspected unauthorized third-party access to, misuse, or misappropriation of data maintained on any DealerTrack DMS or any other provider's DMS.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive objects to the term "unauthorized third-party access to, misuse, or misappropriation of data" as

18

vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence.

Cox Automotive further objects to this Request because it seeks information not relevant to any

claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 22:** All documents related to any Application, Data Extraction
Service, or DMS, and which refer to: (a) the 2013 data breach against Target; (b) North Korea's
June 2014 cyber attack against Sony Pictures Enterprise; (c) the August 2014 hack into
Community Health System's patient information; (d) the 2017 Equifax data breach; (e)
Cambridge Analytica's alleged data scraping of Facebook user's information; (f) the 2016 data
security incident at DealerBuilt; or (g) any other attempted or successful cyber attacks or data
security breaches.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

further objects to this Request to the extent that it seeks information not in the possession,

custody, or control of Cox Automotive. Cox Automotive further objects to this Request on the

grounds that it seeks documents protected by the attorney-client privilege, the attorney work

product doctrine, joint defense or common interest privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 23:** All documents related to Your cyber liability insurance.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

<p align="center"><em>Applications</em></p>

**DOCUMENT REQUEST NO. 24:** All advertising plans, business plans, strategic plans, estimates, revenue forecasts, sales or marketing plans or efforts, product launch plans, promotional programs, third party market research reports, or strategies, concerning Your Applications.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 25:** All documents that discuss the ability of Your Applications to compete with and/or replace traditional DMSs, including, but not limited to, the ability of Dealers to enter data directly into Your Applications in the first instance, bypassing the DMS completely.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

<p align="center">20</p>

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 26:** Documents sufficient to identify and describe the functionality of each Application that You have offered during the Relevant Time Period, and the number of Dealers who used each Application during each year of the Relevant Time Period.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 27:** Documents sufficient to identify (1) all Dealers who used each of Your Applications and (2) the DMS providers they used, including non-Cox DMS providers, for each month of the Relevant Time Period.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 28:** All documents related to the fees You charge Your Vendor customers for 3PA and RCI integration. For the avoidance of doubt, this [R]equest includes, by way of example only, Application order forms and invoices on which You indicate a charge or fee for 3PA and RCI integration.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

22

**DOCUMENT REQUEST NO. 29:** Market studies, survey data, or any other source of market share information on all Applications used by Your Dealer customers.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 30:** Documents sufficient to identify Your share of Application sales for each month of the Relevant Time Period, in every way that You keep track of it.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive objects to the term "share of Application sales" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence.

Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 31:**  Documents sufficient to identify all competing Application providers and their overall shares and shares by Applications segments for each month of the Relevant Time Period.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive objects to the term "Applications segments" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence.  Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.  Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 32:**  All documents related to any analyses comparing Your Applications (including their functionality, service quality, features, technology, capabilities, pricing, and/or price changes) to the Applications offered by CDK or other Vendors or otherwise assessing competition for Application customers.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive objects to the term "otherwise assessing competition" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 33:**  All documents related to Your allegation in Paragraph 28 of the Complaint that Your "products and services are superior" to those of CDK.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 34:** Documents sufficient to identify all Dealers who have switched to or from one of Your Applications during the Relevant Time Period, and: (a) the Application that the Dealer switched to (or from); (b) the effective date of the switch; (b) the number of Dealer stores that switched; and (c) the Dealer's tenure using the prior Application.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 35:** All "win/loss" reports and documents that reflect Application customer switching.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

26

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 36:**  All documents reflecting communications with Dealers regarding complaints, shortcomings, or disadvantages with respect to the functionality or capabilities of Your products and services.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

*DealerTrack's Third-Party Access Policies*

**DOCUMENT REQUEST NO. 37:**  All documents related to Your policies and practices regarding third-party access to any DealerTrack DMS or data maintained thereon, including, but not limited to, any restrictions or limitations You have placed or considered placing on any DealerTrack DMS, such as: (a) locking access to [D]ealers' user IDs/logins; (b) disabling [D]ealers' userIDs/logins; (c) sunsetting [D]ealer's userIDs/logins and passwords; and/or (d) otherwise preventing Vendors or Data Extractors from accessing [D]ealers' DealerTrack DMSs.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive

27

further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 38:** All documents related to agreements with Data Extractors for access to DealerTrack DMSs or data maintained thereon, including, but not limited to, the drafting, negotiation, interpretation, or enforcement of any such agreements.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 39:** All documents related to agreements with other DMS providers for access by Applications to a DMS or data maintained thereon, including, but not limited to, the drafting, negotiation, interpretation, or enforcement of any such agreements.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 40:** All documents related to any restrictions or limitations You have placed or considered placing on Vendors or Data Extractors who use Dealer login credentials to access DealerTrack DMSs or the data maintained thereon.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 41:** All versions of standard agreements and/or terms and conditions for the OpenTrack program in effect since January 1, 2013, as well as, by means of a representative sample, all OpenTrack agreements with any named party in this MDL.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

29

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 42:** All documents related to any restrictions placed on participants in the OpenTrack program from accessing DealerTrack DMSs or the data maintained thereon through other means.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 43:** All documents related to the admission or request for admission into the OpenTrack program by any DMS provider, Data Extractor, or competing Application provider.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

30

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 44:** All documents related to any differences between how Your Applications access, extract, "writeback," and/or otherwise provide protected integration of data maintained on the DealerTrack DMS compared to the way that competing Applications do so as participants in the OpenTrack program.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 45:** All documents related to whether any Contracted Data Extractor's methods of DMS access, data syndication, writeback, or data extraction: (a) are prohibited by any applicable laws, regulations, or contractual agreements; (b) comply with data security, data privacy, or automotive industry standards or guidance; (c) cause data security, data integrity, or system burden issues; or (d) are otherwise objectionable.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive objects to the term "otherwise objectionable" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 46:** All documents related to any contemplation of charging fees for access to any DealerTrack DMSs or the data maintained thereon, either through the OpenTrack program, the OpenTrack API, or any other means.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 47:** All documents related to instances of diminished DMS functionality caused by third-party access to a DealerTrack DMS, whether such third party access was through the OpenTrack program, the OpenTrack API, or any other means.

 **Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

 Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

<p style="text-align:center"><em>Access to the CDK or Reynolds DMS</em></p>

**DOCUMENT REQUEST NO. 48:** All documents related to any CDK or Reynolds Data Authorization forms that You or any Contracted Data Extractor sent to Dealers, and any response(s) that You received.

 **Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive objects to the term "Data Authorization forms" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

<p style="text-align:center">33</p>

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 49:**  Documents sufficient to show all agreements with Dealers and/or Contracted Data Extractors regarding access to any CDK or Reynolds DMS or the data maintained thereon.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive objects to the term "Data Authorization forms" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 50:**  Documents sufficient to show Your or any Contracted Data Extractor's methods of accessing, requesting, receiving, storing, securing, encrypting, or using data maintained on any CDK or Reynolds DMS or any CDK or Reynolds DMS username and password credentials through means other than approved 3PA or RCI integration, and any written policies, guidance, standards, procedures, or similar documentation that apply to Your or the Contracted Data Extractor's access methods.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive objects to the term "methods of accessing, requesting, receiving, storing, securing, encrypting, or using data" as vague, ambiguous, overbroad, and not likely to

lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 51:** Documents sufficient to show all [R]equests for, receipts of, or attempts by You or any Contracted Data Extractor to obtain username and password credentials for any CDK or Reynolds DMS, including, but not limited to, any [R]equests for system administrator-level or "UUP user" access to a CDK DMS.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 52:**  All documents related to any circumstances in which You or any Contracted Data Extractor have accessed a CDK or Reynolds DMS or the data maintained thereon without first obtaining express, written consent or authorization from a Dealer purporting to permit such access.

      **Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

      Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 53:**  All documents related to any Dealer's declination to authorize or request to stop Your or any Contracted Data Extractor's access or extraction of data maintained on any CDK or Reynolds DMS.

      **Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 54:** All documents that purport to establish You or any Contracted Data Extractor as a Dealer's "agent" for purposes of accessing any CDK DMS or the data maintained thereon.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 55:** All documents discussing access privileges associated with Dealer DMS login credentials, including any documents or communications that show whether You or any Contracted Data Extractor have access to any non-Dealer owned data maintained in any CDK or Reynolds DMS, including, but not limited to, any OEM, Third Party, CDK or Reynolds Proprietary Data.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

37

further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 56:** All documents related to Your or any Contracted Data Extractor's development or installation of any "code-on-the-box" used to access any CDK DMS or the data maintained thereon. For the avoidance of doubt, this includes code-on-the-box installed by or for any of Your Applications.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 57:** Documents sufficient to identify for each year of the Relevant Time Period: (a) all CDK DMSs (by Dealer) that You or any Contracted Data Extractor have accessed (directly or indirectly) through any means other than approved 3PA integration; (b) Your or any Contracted Data Extractor's means of accessing the CDK DMS or the data maintained thereon (*e.g.*, code-on-the-box, Dealer username and password and screen-scraping); (c) all usernames and passwords that You or any Contracted Data Extractor have used to access the CDK DMS; and (d) all DMS directories and files that that You or any Contracted Data Extractor accessed.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 58:** Documents sufficient to show all English statement queries that You or any Contracted Data Extractor have performed on a CDK DMS.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

39

**DOCUMENT REQUEST NO. 59:**  Documents sufficient to show the date, time, content, volume, frequency, and duration of all queries that You or any Contracted Data Extractor have performed on any CDK DMS or the data maintained thereon through means other than approved 3PA integrations.

  **Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence.  Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.  Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

  Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 60:**  All documents related to any data corruption, data integrity, or system performance-related issues experienced by any CDK or Reynolds Dealer, which were attributable to or otherwise related to a Vendor's access to the Dealer's licensed CDK or Reynolds DMS.

  **Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense

in the pending litigation.  Cox Automotive further objects to this Request to the extent that it

seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 61:**  All documents that refer or otherwise relate to:  (a) CDK's
or Reynolds's third-party access policies; (b) CDK's SecurityFirst program; and/or (c) CDK's
"refreshed" 3PA program.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 62:**  All documents related to any efforts or "threats" made by
CDK to detect, block, disable, or otherwise restrict Your or any Contracted Data Extractor's
access to a CDK DMS or the data maintained thereon, and/or Your or any Contracted Data
Extractor's efforts to evade CDK's blocking and detection efforts, including any attempts to
bypass security features implemented by CDK and documents sufficient to identify and describe
all scripts, programs, or executable files that You or any Contracted Data Extractor have created,
used, or provided to Dealers for any of these purposes.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive

further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses with respect to any efforts or "threats" made by CDK to detect, block, disable, or otherwise restrict access to a CDK DMS.

**DOCUMENT REQUEST NO. 63:** All documents related to Your allegation in Paragraph 171 of the Complaint that a CDK employee "admitted in private conversation with a vendor that the rhetoric around 'security' has 'little credibility.'"

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 64:** All documents related to Your allegation in Paragraph 177 of the Complaint that "CDK allows other third-parties that it does not fear as competitive threats . . . the right to create and modify repair orders."

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

*Data Extraction Services*

**DOCUMENT REQUEST NO. 65:**  Documents sufficient to identify for each year of the
Relevant Time Period:  (a) each Data Extractor that You have used to access any CDK or
Reynolds DMS or the data maintained thereon; (b) the Dealers on whose behalf [Y]ou engaged
each Data Extractor; and (c) all DMS directories and files that were accessed by the Data
Extractor.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request because it seeks information not

relevant to any claim or defense in the pending litigation.  Cox Automotive further objects to this

Request on the grounds that it seeks the production of documents that may not be maintained in

the fashion requested and would require Cox Automotive to create documents not presently in

existence.  Cox Automotive further objects to this Request on the basis that it seeks confidential

and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 66:**  All documents related to any agreements between You and
Data Extractors for access to any CDK or Reynolds DMS or the data maintained thereon,
including, but not limited to, the drafting, negotiation, interpretation, or enforcement of any such
agreements.

43

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 67:** All documents related to pricing and/or services offered by any Data Extractor for access to CDK or Reynolds DMSs or the data maintained thereon.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 68:** All documents related to any Data Extraction Services that You offer or which You have offered during the Relevant Time Period.

44

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 69:** All documents related to Your actual or contemplated syndication of data maintained on any CDK or Reynolds DMS to third parties, including any related agreements.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive objects to the term "syndication" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

45

**DOCUMENT REQUEST NO. 70:** All documents reflecting communications, agreements, or transactions with 10 Foot Wave, LLC related to any CDK or Reynolds DMS or the data maintained thereon.

      **Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 71:** Documents sufficient to show each third party (including other Vendors) to whom You have syndicated data maintained on a CDK or Reynolds DMS, and all DMS directories and files that were syndicated to each third party.

      **Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive objects to the term "syndicated" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

*January 8, 2016 3PA Agreement*

**DOCUMENT REQUEST NO. 72:**  All documents related to Your 3PA Agreement with CDK
dated January 8, 2016, including, but not limited to:  (a) the decision to enter into the Agreement;
(b) any analysis of the financial impact of entering into the Agreement and the pricing terms
therein; (c) all negotiations surrounding the Agreement; (d) any amendments to the Agreement;
and/or (e) any analysis or communication concerning the legality or illegality of the Agreement.

   **Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive

further objects to this Request on the grounds that it seeks documents protected by the attorney-

client privilege, the attorney work product doctrine, joint defense or common interest privilege,

or any other applicable privilege.  Cox Automotive further objects to this Request on the basis

that it seeks confidential and irrelevant information.

   Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 73:**  All documents that reflect Your awareness of Reynolds's
admission into the 3PA program and/or the 3PA fees paid by Reynolds during the Relevant Time
Period.

   **Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 74:**  All documents related to Your pass-through of 3PA fees to
Dealers.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive

further objects to this Request because it seeks information not relevant to any claim or defense

in the pending litigation.  Cox Automotive further objects to this Request on the basis that it

seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 75:**  All documents related to Your allegation in Paragraph 129
of the Complaint that CDK made certain "threats" to discontinue Cox's integrations with data
maintained on CDK's DMSs.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 76:** All documents related to the 3PA certification, decertification, or lack of certification, of Your Applications, including, but not limited to, any related negotiations and/or amendments, any applications to join, or any discussions regarding pricing, security protocols, or terms of access.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

*Pricing and Financial Information*

a.    *Applications*

**DOCUMENT REQUEST NO. 77:** For each of Your Applications, documents sufficient to show all initial, one-time, and monthly recurring prices from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 78:** Documents sufficient to show all initial, one-time, and monthly recurring prices that Dealers paid for non-Cox Applications from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

50

**DOCUMENT REQUEST NO. 79:**  For each of Your Applications, documents sufficient to show monthly revenue, costs (including variable costs and/or COGS), and profit (including profit margin) from January 1, 2011 to the present.

   **Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence.  Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

   Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 80:**  Documents sufficient to show quarterly revenue and profit (including profit margin) for all Applications from January 1, 2011 to the present.

   **Response:**  Cox Automotive incorporates by reference each of the General Objections set forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence.  Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

   Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession,

51

custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 81:** Documents sufficient to show all integration and/or extraction fees paid by You for each of Your Applications on a monthly basis from January 1, 2011 to the present, and the entity to whom such fees were paid for each of Your Applications.

      **Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses with respect to integration and/or extraction fees paid.

**DOCUMENT REQUEST NO. 82:** Documents sufficient to show all integration and/or extraction fees or costs charged to Dealers for each of Your Applications on a monthly basis from January 1, 2011 to the present. To the extent that these fees and costs differ depending on the DMS used by a Dealer, identify the fees by DMS (*e.g.*, AutoMate, CDK, Cox, Reynolds).

      **Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this

Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 83:** Documents sufficient to show Your projections with respect to revenue and profit for each of Your Applications from January 1, 2015 to the present.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

  b.  *Data Extraction Services*

**DOCUMENT REQUEST NO. 84:** Documents sufficient to show all initial, one-time, and monthly recurring fees that You paid to Data Extractors for each of Your Applications from January 1, 2011 to the present. Data should indicate the month each monthly charge is covering.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 85:** Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on a CDK or Reynolds DMS.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive objects to the term "syndication" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require

54

Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 86:** Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on each non-CDK DMS.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive objects to the term "syndication" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 87:** Documents sufficient to show how data from each DMS was integrated into Your Applications.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive objects to the term "integrated" as vague, ambiguous, overbroad, and

55

not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

c.    *DealerTrack*

**DOCUMENT REQUEST NO. 88:** Documents sufficient to show all initial, one-time, and monthly recurring prices that each Dealer paid for DealerTrack from January 1, 2011 to the present. Data should indicate the month each monthly charge is covering.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 89:** Documents sufficient to show all initial, one-time, and monthly recurring prices that non-Cox Dealers paid (on average) for non-Cox DMS from January 1, 2011 to the present. Data should indicate the month each monthly charge is covering.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request to the extent that it seeks information not in the possession, custody, or control of Cox Automotive. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 90:** Documents sufficient to show monthly revenue, costs (including variable costs and/or COGS), and profit (including profit margin) attributed to DearlerTrack customers from January 1, 2011 to the present.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 91:** Documents sufficient to show quarterly revenue and profit (including profit margin) attributed to DealerTrack from January 1, 2011 to the present.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

*Miscellaneous*

**DOCUMENT REQUEST NO. 92:** All documents related to the February 18, 2015 agreements between CDK and Reynolds described in Paragraph 106 of the Complaint, including all documents that reflect Your awareness of the agreements or of any term of the agreements.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 93:** All documents related to any "wind down" agreement between You and any DMS provider, including, but not limited to, Reynolds.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive objects to the term "wind down" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 94:** All documents that reflect coordinated conduct by CDK and Reynolds with respect to third-party DMS access programs, policies, business practices, strategy, or pricing, or that otherwise relate to Your claims that CDK has engaged in any illegal or anticompetitive activity or that competition in any market has been harmed.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 95:**  All documents related to Your allegation in Paragraph 29
of the Complaint that CDK made certain statements that Cox "is the cause of ongoing
deficiencies in data integrations between DealerTrack Sales and F&I solutions and CDK's
DMS."

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 96:**  All documents related to Your offer and marketing of
bundled products and Relevant Services and compensation for solution gaps.

**Response:**  Cox Automotive incorporates by reference each of the General Objections set

forth above.  Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.  Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents.  Cox Automotive

objects to the terms "bundled products" and "solution gaps" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 97:** All documents related to any complaints that You failed to adequately focus on Dealers' needs.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 98:** All documents related to Your allegation in Paragraph 5 of the Complaint that "the damage to Cox Automotive alone from its antirust claims exceed[s] $200 million," including all computations of claimed damages and all documents on which [Y]ou rely to substantiate Your alleged damages.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

61

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly

burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

further objects to this Request on the basis that it seeks confidential and irrelevant information.

Cox Automotive further objects to this Request as seeking information subject to expert opinion

and analysis. Cox Automotive further objects to this Request to the extent it seeks information

that is more appropriately sought through another discovery device.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 99:** Every document referred to, quoted, paraphrased, or
excerpted in the Complaint, or otherwise relied upon as the basis for any allegation in the
Complaint.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 100:** All documents You received from any non-parties in
response to subpoenas, informal discovery requests, or other means in preparation for or
connection with this litigation.

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 101:** All documents and communications related to Your alleged injuries or damages.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 102:** All communications with Authenticom or its counsel regarding the subject matter of this litigation or the action that Authenticom filed against CDK and Reynolds in the United States District Court for the Western District of Wisconsin, Case No. 17-cv-318-jdp, including, but not limited to, Your draft or final declarations in connection with the preliminary injunction hearing in the above-referenced case.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

63

further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 103:** All documents provided by You to the United States Federal Trade Commission in connection with its investigation regarding CDK and Reynolds.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 104:** All documents related to any presentations that You have prepared or given, or meetings of Your board of directors, shareholders, or investors, that refer or relate to CDK, Your claims and allegations, or this litigation.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. Cox Automotive

further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 105:** Documents sufficient to show Your policies and practices concerning the preservation, retention, storage, or destruction of any documents or ESI.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Cox Automotive to create documents not presently in existence.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 106:** Documents sufficient to show Your organizational structure during the Relevant Time Period, including the identity of all officers, employees, investors, partners, owners, shareholders, or principals with management-level responsibility for any Relevant Services.

**Response:** Cox Automotive incorporates by reference each of the General Objections set forth above. Cox Automotive further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive further objects to this Request on the grounds that it seeks the

production of documents that may not be maintained in the fashion requested and would require

Cox Automotive to create documents not presently in existence.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive will produce responsive, relevant, non-privileged documents in its possession,

custody, or control that are identified and located pursuant to a diligent search as described in

Cox Automotive's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 107:** Any industry data (including survey data, market studies, or any other sources) that You have access to that provide information about DMS providers to Dealers (including non-Cox Dealers).

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive objects to the term "information about DMS providers" as vague,

ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Cox

Automotive further objects to this Request on the basis that it seeks confidential and irrelevant

information.

Subject to and without waiving the foregoing objections and the General Objections, Cox

Automotive is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 108:** Any industry data (including survey data, market studies, or any other sources) that You have access to that provide information about Applications used by Dealers (including non-Cox Applications and non-Cox Dealers).

**Response:** Cox Automotive incorporates by reference each of the General Objections set

forth above. Cox Automotive further objects to this Request on the basis that it is overly broad,

unduly burdensome, and not reasonably calculated to lead to the discovery of admissible

evidence. Cox Automotive objects to the term "industry data" as vague, ambiguous, overbroad,

and not likely to lead to the discovery of admissible evidence. Cox Automotive further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. Cox Automotive further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections and the General Objections, Cox Automotive is willing to meet and confer regarding this Request.

Dated:  June 22, 2018                                  Respectfully submitted,

                                                        _/s/ Derek T. Ho_____
Jennifer L. Gregor                                      Derek T. Ho
Kendall W. Harrison                                     Michael N. Nemelka
**GODFREY & KAHN S.C.**                                 Aaron M. Panner
One East Main Street, Suite 500                         David L. Schwarz
Madison, Wisconsin 53703                                Kevin J. Miller
Telephone: (608) 284-2629                               Daniel V. Dorris
Fax: (608) 257-0609                                     Joshua Hafenbrack
jgregor@gklaw.com                                       Daniel S. Guarnera
kharrison@gklaw.com                                     **KELLOGG, HANSEN, TODD,**
                                                            **FIGEL &FREDERICK, P.L.L.C.**
                                                        1615 M Street, N.W., Suite 400
                                                        Washington, D.C. 20036
                                                        Telephone: (202) 326-7900
                                                        Fax: (202) 326-7999
                                                        dho@kellogghansen.com
                                                        mnemelka@kellogghansen.com
                                                        apanner@kellogghansen.com
                                                        dschwarz@kellogghansen.com
                                                        kmiller@kellogghansen.com
                                                        ddorris@kellogghansen.com
                                                        jhafenbrack@kellogghansen.com
                                                        dguarnera@kellogghansen.com

                                                        *Counsel for Plaintiffs Cox Automotive, Inc.,*
                                                        *Autotrader.com, Inc., Dealer Dot Com, Inc.,*
                                                        *Dealertrack, Inc., HomeNet, Inc.,*
                                                        *Kelley Blue Book Co., Inc., vAuto, Inc.,*
                                                        *VinSolutions, Inc., and Xtime, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

Plaintiff Cox Automotive's Objections and Responses to CDK Global, LLC's First Requests for

Production to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

 */s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT 50

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Amy J. St. Eve |
| *All Class Actions* | |

**DEFENDANT CDK GLOBAL, LLC'S PROPOSED
SEARCH TERM AND CUSTODIAN LIST FOR DEALER CLASS PLAINTIFFS**

Defendant CDK Global LLC ("CDK") submits the following list of proposed custodians and search terms for Dealer Class Plaintiffs.[1] CDK has prepared this search term list in the absence of a Consolidated Amended Complaint, based solely on the limited information set forth in the Dealer Class Plaintiffs' Rule 26 disclosures. CDK reserves the right to serve additional discovery, including proposing additional custodians and search terms, on the Dealer Class Plaintiffs—including but not limited to any additional named plaintiffs not identified in Dealer Class Plaintiffs' current Rule 26 disclosures—as well as third-party discovery addressing issues in the Dealership cases, after the filing of the Consolidated Amended Complaint (currently due June 4, 2018).

The below proposed search terms and custodians only relate to the Dealer Class Plaintiffs' obligations to conduct reasonable custodian-based searches for documents responsive to Defendants' document requests, and are in no way intended to limit Dealer Class Plaintiffs' obligations to also search for and produce potentially responsive information from non-custodial sources where Dealer Class Plaintiffs reasonably expect responsive information to be found

---

[1] All capitalized terms and acronyms take the meanings set forth in Defendant CDK Global, LLC's First Requests For The Production Of Documents To Dealer Class Plaintiffs, served concurrently herewith.

(including, but not limited to, transactional or other data housed in a central database, or agreements or other documents saved on a central server or network).

**<u>Proposed Custodians</u>**

<u>All Named Putative Class Plaintiffs</u>
- The employee(s) responsible for negotiating contracts with DMS providers, Integrators, and Vendors throughout the relevant period
- The employee(s) who is/are Your contact(s) with Your DMS providers, Integrators, and Vendors throughout the relevant period
- The employee(s) responsible for evaluating and deciding which seller, provider, vendor, or supplier should be selected with respect to acquisitions of DMS, Integration, and Vendor products or services throughout the relevant period
- The employee(s) responsible for monitoring, managing, and assessing the quality and performance of any DMS, Integration, and Vendor products or services acquired by You during the relevant period.
- The employee(s) with knowledge about Your alleged damages in this lawsuit.
- The employee(s) responsible for communicating with OEMs regarding Your use and procurement of DMS, integration services, and Applications throughout the relevant period.
- The employee(s) with responsibility for issues concerning data privacy, data corruption, and data security during the relevant period.
- The employee(s) responsible for managing, safeguarding, and disclosing Your DMS log-in credentials.
- The employee(s) responsible for training Your employees in the use of DMS and Applications.

<u>Baystate Ford, Inc.</u>
- Frank Lupacchino, President
- Heather Paulikis, Controller
- Ronnie Eames, Division Parts Manager

<u>Cliff Harris Ford, LLC d/b/a Warrensburg Ford, Marshall Chrysler Jeep Dodge, LLC, and Warrenburg Chrysler Dodge Jeep, L.L.C.</u>
- Cliff Harris, Managing Member

<u>Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville</u>
- Keith Roberts, General Manager

JCF Autos LLC d/b/a Stevens Jersey City Ford, Patchogue 112 Motors LLC d/b/a Stevens Ford, and Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown

- David Benstock, General Manager

Jim Marsh American Corporation d/b/a Jim Marsh Mitsubishi Suzuki Kia Mahindra

- Jim Marsh, President
- Allen Yarborough, Sales Manager
- Mark Grim, Sales Manager

John O'Neil Johnson Toyota, LLC

- Kevin Winningham, General Manager

Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota

- Kelly Thomas, General Manager

Pitre, Inc. d/b/a Pitre Buick GMC and Pitre Imports, LLC d/b/a Pitre Kia

- Tom Stever, Chief Financial Officer

Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram

- Alan Graf, Jr., Comptroller and Office Manager

Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram

- Andy Strong, Manager
- Eric Strong, Service Manager

**Proposed Search Terms**

| No. | Search Term |
|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) |
| 2 | (CDK OR Reynolds OR DMS OR or system) AND (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) |
| 3 | InDesign OR IDD |
| 4 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv-01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" |
| 5 | "Data Authorization" |

| No. | Search Term |
|---|---|
| 6 | "Dealer Management System" w/5 market |
| 7 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" |
| 8 | "Dms function*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) |
| 9 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) |
| 10 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess |
| 11 | "Integrated Document Solutions" |
| 12 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" |
| 13 | "Motor Vehicle Software Corporation" OR MVSC |
| 14 | "New Freedom" |
| 15 | "nonpublic personal information" OR NPI |
| 16 | "personally identifiable information" OR PII |
| 17 | "Proprietary Data" |
| 18 | "Query Builder" OR (QB AND Reynolds) |
| 19 | "Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access" |
| 20 | "secure web form" |
| 21 | "sensitive personal information" |
| 22 | "User Emulation" |
| 23 | ("Report Generator" OR "report scheduler") AND (schedule or automat*) |
| 24 | ((CDK OR Reynolds) w/20 DMS) AND data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) |
| 25 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") |
| 26 | ((data w/5 transfer) OR push OR pull or writeback OR (write w/2 back) or "write back") AND (protocol* or polic) |
| 27 | (hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract) |
| 28 | (los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang* or mov*) w/15 (sale or business or contract or customer or vendor or integrator or DMS or "dealer management system") |
| 29 | (pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) AND data AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") |

4

| No. | Search Term |
|-----|-------------|
| 30 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR  access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) |
| 31 | ((Rey* or "R&R" or RR OR CDK OR ADP) w/20 (compar* or better or worse or "no* good" or more or less or close* or open)) AND (DMS or system) |
| 32 | ((security OR Data) AND (standard* OR rule* OR guid* OR memo* OR report)) AND (NADA OR AIADA OR "National Automobile Dealers Association" OR "American International Automobile Dealers Association") |
| 33 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary |
| 34 | ((Third w/3 Party) or thirdparty or "3rd party") AND  (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK or Reynolds or RR or R&R or Dealertrack or Cox or DMS or data or "Dealer Management System") |
| 35 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack or Cox) w/5 system) OR DMS OR "Dealer Management System") |
| 36 | ((up w/3 front) OR "up-front" OR instal* or initial or month* or recur* or annual or (set w/3 up) or setup) w/20 (fee* or pric* or charge or rate* or bill or cost* or pay*) |
| 37 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) |
| 38 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") |
| 39 | (*settle* or assign*) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR "multi district") |
| 40 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) |
| 41 | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) |
| 42 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") |
| 43 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) |
| 44 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) |
| 45 | (Autosoft OR "PB Financial Systems" OR "Applied Computer Systems" OR ACS OR "Supreme Software" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) |
| 46 | (BOD or "Board of Directors" or shareholder or investor) AND (minutes or notes or present*) |
| 47 | (breach or hack or attack or data) AND (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire")) |

| No. | Search Term |
|---|---|
| 48 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) |
| 49 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) |
| 50 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) |
| 51 | (CDK or Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) |
| 52 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) |
| 53 | (CDK OR Reynolds OR R&R OR RR OR DMS or "Dealer Management System" OR Cox OR DealerTrack) AND (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) |
| 54 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) |
| 55 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) |
| 56 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/10 (corrupt* OR integrity)) OR (data w/10 security) OR complain* or investigat*) |
| 57 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) AND (control or power or authority) AND (data or system) |
| 58 | (compet* or threat* or challeng* or loss or lose or losing or superior* or compar*) w/15 (DMS or Drive or Dash or ODE or integrat* or app* or solution* or product or service) |
| 59 | (Compet* w/20 harm*) |
| 60 | (contract* or agree*) AND (term or year* or length or period) |
| 61 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) |
| 62 | (data /3 integrat*) OR (data /3 extract*) |
| 63 | (data AND integration) w/20 market |
| 64 | (data or access or "third party" or thirdparty or "3rd party" or integrat* or extract*) AND (policy* or guideline* or rule* or requir*) |
| 65 | (dealer w/10 data) AND (retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) |

| No. | Search Term |
|---|---|
| 66 | ((declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share)) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) |
| 67 | (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Reynolds OR Dealertrack OR Cox) AND (analy* OR forecast OR project* OR survey* or evaluat* or stud* or (market w/3 share) OR (market w/3 condition*) OR profit* OR compet* OR market or pric*) |
| 68 | (DMS OR "dealer management system") /5 market* |
| 69 | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) |
| 70 | (DMS or "Dealer Management System" ) w/10 (agree* or contract) |
| 71 | (DMS or integrat* or vendor*) w/10 cancel |
| 72 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* or agree* or provision* or section* or paragraph) |
| 73 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS) |
| 74 | (exclusiv*or sole or only) w/20 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system") |
| 75 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/15 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*)) |
| 76 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/15 (DealerVault or Authenticom or Integrat* or vendor* or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) |
| 77 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") |
| 78 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/15 (Rey* or "R&R" or RR or Cox or DealerTrack or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/5 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "auto mate" or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop) |
| 79 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (data or access* or integrat* or 3PA or "third party access" or "partner program" or "Access Program") |
| 80 | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) AND ((pass w/5 through) or passthrough or shared or sent or "passed to" or "passed on" or "pass on") |
| 81 | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/20 (vend* or integrat* or appl* or Authenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") |
| 82 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) |
| 83 | (Gramm-Leach-Bliley) OR (Gramm Leach Bliley) OR GLB OR GLBA |

| No. | Search Term |
|---|---|
| 84 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) |
| 85 | (harm OR injur* OR disrupt* OR los* OR interrupt* OR cancel* OR end* OR stop*) w/15 (Reynolds OR R&R OR RR OR CDK) |
| 86 | (Integrat* OR vendor OR application OR app* OR customer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) |
| 87 | Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative" |
| 88 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) AND (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) |
| 89 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) |
| 90 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) |
| 91 | (purchase or buy or sale or aquire or acquisition) AND (DMS or "dealer management system") |
| 92 | (R&R) or RR OR Rey* or *reyrey.com or Reynolds |
| 93 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) |
| 94 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) |
| 95 | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) |
| 96 | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) |
| 97 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com |
| 98 | (Superior Integrated Solutions) OR SIS OR *@4-superior.com |
| 99 | (Unauthorized (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) |
| 100 | (unauthorized w/5 access) w/20 (data OR server OR information) |
| 101 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS |
| 102 | (win or los* or cancel* or switch or defect* or mov* or chang* or transfer*) w/20 (DMS or "dealer management system" OR CDK OR Rey* or "R&R" or RR or Cox or Dealertrack or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "Auto Mate" or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop or vendor or integrat*) |
| 103 | "secure web form" |
| 104 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) |

| No. | Search Term |
|---|---|
| 105 | agen* |
| 106 | Agreement w/20 (CDK OR Reynolds OR R&R OR illegal OR anticompet* OR alleg*) |
| 107 | anticompet* |
| 108 | antitrust |
| 109 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 |
| 110 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) |
| 111 | AutoLoop or (loop w/3 llc) or *Autoloop.net or 18-cv-02521 |
| 112 | Autotrader or "Dealer Dot Com" or DealerTrack or "Dealer Track" or HomeNet or "Kelley Blue Book" OR vAuto OR VinSolutions or Xtime or 17-cv-925 |
| 113 | CDK or ADP or *cdk.com or *adp.com |
| 114 | CDK* AND (nondisclosure* or share* or provide*) AND (fee* OR charge*) |
| 115 | Circumvent AND (security OR dms OR block*) |
| 116 | Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort* |
| 117 | Cox or Autotrader or "Dealer Dot Com" or DealerTrack or "Dealer Track" or HomeNet or "Kelley Blue Book" OR vAuto OR VinSolutions or Xtime or 17-cv-925 |
| 118 | cyber w/5 insurance |
| 119 | Disable |
| 120 | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov |
| 121 | FTP w/3 push |
| 122 | hide or conceal or (cover w/3 up) or veil or bury |
| 123 | Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) |
| 124 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) |
| 125 | Lock w/10 account |
| 126 | manual w/10 (report* or tool* or extract*) |
| 127 | Nakedlime OR (naked lime) |
| 128 | Non-DMS or (DMS w/5 alternative) |
| 129 | OEM AND data |
| 130 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" |
| 131 | ProQuotes OR (Pro Quotes) OR *@proquotes.net |
| 132 | Pwd OR "Preshared Key" OR PSK OR "Private Key" |
| 133 | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell |
| 134 | Secur* w/20 (Audit OR Standard OR proced*) |

9

| No. | Search Term |
|---|---|
| **135** | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Pensacola Motor" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley |

Dated: May 25, 2018

Respectfully submitted,

*/s/ Britt M. Miller*
Britt M. Miller
Andrew S. Marovitz
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
amarovitz@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, certify that I caused a copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S PROPOSED SEARCH TERMS AND CUSTODIAN LIST FOR DEALER CLASS PLAINTIFFS** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).

<div align="center"><em>/s/ Britt M. Miller</em>_____</div>

# EXHIBIT 51

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT<br>SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:  ALL ACTIONS | MDL No. 2817<br>Case No. 18-cv-00864<br>Hon. Amy J. St. Eve |

**DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS FOR DEFENDANT CDK GLOBAL, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Baystate Ford Inc.; Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville; JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Jim Marsh American Corporation d/b/a Jim Marsh Mitsubishi Suzuki Kia Mahindra; John O'Neil Johnson Toyota, LLC; Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota; Marshall Chrysler Jeep Dodge, LLC; Patchogue 112 Motors LLC d/b/a Stevens Ford; Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC; Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram; Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram; and Warrensburg Chrysler Dodge Jeep, L.L.C. ("Dealership Class Plaintiffs") request that CDK Global, LLC ("CDK") produce all documents in its actual or constructive possession, custody, or control related directly or indirectly to any of the matters described below, subject to the Definitions and Instructions set forth herein. All documents and tangible things responsive hereto shall be produced to the undersigned counsel, or at such other location as is mutually acceptable to the parties, by the time prescribed, or at such other time and place as the parties mutually agree.

## I.    DEFINITIONS

This section sets forth specific definitions applicable to certain words and terms used herein. Unless words or terms have been given a specific definition in this section or in a specific Request, each word or term shall be given its usual and customary dictionary definition, except where a word or term has a specific customary and usage definition in your trade and industry. In that case, the word or term shall be interpreted in accordance with the specific customary and usage definition.

1.    "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.    "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.    "Authenticom" shall mean Authenticom, Inc. (Plaintiff in *Authenticom, Inc. v. CDK Global, LLC*, No. 17-cv-318 (W.D. Wis.), now consolidated as a part of the above-captioned MDL), a provider of Data Integration Services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.    "CDK" shall mean CDK Global, LLC, a publicly traded Delaware corporation with its corporate headquarters and principal place of business located at 1950 Hassell Road, Hoffman Estates, Illinois. "CDK" shall include the Dealer Services business of Automatic Data Processing,

Inc. ("ADP"), or any other predecessor to CDK. "CDK" shall also include its present or former subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants, including those of ADP's Dealer Services business or any other predecessor to CDK.

6. "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

7. "Data access policies" means Your policies with respect to the ability of dealers to authorize independent integrators to access data on the DMS or otherwise grant third parties access to their data on the DMS.

8. "Data integrator(s)" shall refer to any service provider(s) that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both. For the avoidance of doubt, "data integrator(s)" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

9. "Data Integration Services" or "DIS" shall refer to the extracting, transforming, integrating, and/or organizing of data housed on dealer data management systems.

10. "Dealers" or "Dealerships" shall refer to businesses engaged in retail automobile sales, including but not limited to the Dealership Class Plaintiffs in this litigation.

11. "DMI" shall mean Digital Motorworks, Inc., a data integrator and wholly owned subsidiary of CDK. "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

12.    "DMS" shall mean Dealer Management System, the mission-critical enterprise software that manages nearly every function of a dealer's business.  DMS software handles and integrates the critical business functions of a car dealership, including sales, financing, inventory management (both vehicle and parts), repair and service, accounting, payroll, human resources, marketing, and more.  The DMS also operates as a database, housing dealer data related to inventory, customer, sales, and service information.

13.    The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers.

14.    "Document" and "documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure Rule 34(a) and shall include, but not be limited to any original, reproduction or copy, and/or non-identical copy (i.e., copy with marginal notes, deletions, etc.) of any kind of writings, drawings, graphs, charts, photographs, videos or sound recordings, images, data or data compilations, and/or documentary material, including but not limited to emails, letters, text messages, press releases, postings, instructions, memoranda, notes, diaries, journals, calendars, contract documents, publications, advertisements, calculations, estimates, vouchers, minutes of meetings, invoices, reports, studies, computer tapes, computer disks, computer cards, computer files, photographs, negatives, slide decks or slides, dictation belts, voice tapes, and telegrams. This includes any materials documenting, reflecting, or relating to discussions, conversations, telephone calls, meetings, presentations, conferences, seminars, and/or other spoken or oral communications.  Drafts or non-identical copies of, and amendments or supplements to, any of the foregoing are separate documents within the meaning of this term.

15.     "FTC Complaint" means the Federal Trade Commission Administrative Complaint, *In the Matter of CDK Global, Inc. et al.*, Index No. 1710156, ECF No. 9382 (March 19, 2018) (Redacted Public Version).

16.     "IntegraLink" shall mean IntegraLink, a data integrator and wholly owned subsidiary of CDK. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

18.     "Meeting" shall mean, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

19.      "Person" or "persons" shall mean, without limitation, any individual, corporation, partnership or any variation thereof (*e.g.*, limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, government entity, group or other form of legal entity.

20.     The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

21.     "Reynolds" shall mean The Reynolds & Reynolds Company, an Ohio corporation with its corporate headquarters and principal place of business located at One Reynolds Way, Kettering, Ohio. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

22.     "SecurityFirst" shall mean the CDK initiative to revamp its 3PA program publicly announced in June 2015.

23.     "SIS" means Superior Integrated Solutions, Inc. and shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

24.      "Third Party Integrators" shall mean data integrators that provide Data Integration Services on a DMS platform and are independent of or unaffiliated with the DMS provider.

25.     "Vendors" or "application providers" shall mean Vendors who provide software applications that perform operations functions for dealerships, such as inventory management, customer relationship management, and electronic vehicle registration and titling, among other functions.

26.     "You," "Your" or "Your Company" mean the responding defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding defendant.

27.     Any term stated in the singular includes the plural and vice versa.

28.     The use of any tense of any word includes all other tenses.

## II. INSTRUCTIONS

1.    All documents shall be produced as they are maintained in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved.

2.    In responding to these Requests, you shall produce all responsive documents (including those stored electronically), which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives. A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

3.    Each Request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever and created or used for any purpose, including, without limitation, the making of notes thereon. You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

4.    To the extent that there are documents containing information relevant to these Requests that are currently in electronic format, the documents are to be produced in their native format.

5.    Privilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege. No generalized claims of privilege or work-product protection

shall be permitted. With respect to each document or communication for which a claim of privilege or work product is made, the asserting party must at the time of assertion identify:

      (a)     The exact basis for withholding or redacting the document or communication;

      (b)     The medium of such document or communication;

      (c)     The general subject matter of such document or communication (such description shall not be considered a waiver of Your claimed privilege);

      (d)     Any document that was the subject of such document or communication and the present location of any such document;

      (e)     All persons making or receiving the privileged or protected document or communication; and

      (f)     Any document which records, refers, or relates to such document or communication and the present location of any such document.

      (g)     The steps taken to ensure the confidentiality of the documents or communication, including affirmation that no unauthorized persons have received the document or communication;

6.     If a portion of any document responsive to these Requests is withheld under claim of privilege pursuant to Instruction No. 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.     The log should also indicate, as stated above, the location where the document was found.

8.      You are to produce each document requested herein in its entirety, without deletion or excision (except as qualified by Instructions Nos. 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

9.      Documents attached to one another should not be separated. If any portion of any document is responsive to any portion of the document Requests below, then the entire document, including any attachments to the document, must be produced.

10.     Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

11.     If a document responsive to these Requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

        (a)     Whether the document is missing or lost;

        (b)     Whether it has been destroyed;

        (c)     Whether the document has been transferred or delivered to another person, and, if so, at whose request;

        (d)     Whether the document has been otherwise disposed of; and

        (e)     A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

12.     References to specific portions of your contracts with Dealers, Vendors, and others are provided solely as a convenience – to assist you in understanding the relevance or the types of

documents sought – and are not intended to, and do not, narrow or otherwise limit the scope of the Request.

13.     A Request to produce "all documents" means you must produce every non-identical document responsive to the subject matter of the Request. A Request to produce "documents sufficient to" identify or describe certain facts means you may select which documents to produce in response to the Request so long as you reasonably believe they include all of the information relating to the subject matter of the Request that would be reflected in all of the documents responsive to the Request. In lieu of producing "documents sufficient to" identify or describe certain facts, you may produce "all documents" relating to the subject matter of the Request. In that event, you should state that you have produced "all documents" relating to the Request in your written response to these Requests.

14.     Provide a source list that clearly identifies who maintained the document and the location from where it was collected.

15.     Each Request herein shall be construed independently. No Request shall be construed by reference to any other Request for the purpose of limiting the scope of the answers to such Request.

16.     If no document responsive to a Request exists, or if the only documents responsive to a Request are not within your possession, custody or control, please so state in your written response to the Request.

17.     These Requests shall be deemed continuing Requests so as to require supplemental responses if You obtain or discover additional documents between the time of initial production and the time of the trial. Such supplemental documents must be produced promptly upon

discovery. Dealership Class Plaintiffs specifically reserve the right to seek supplementary responses and the additional supplementary production of documents before trial.

18. These Requests incorporate by reference all Requests for the production of documents previously served on defendant CDK by Authenticom in *Authenticom, Inc. v. CDK Global, LLC*, No. 17-cv-318 (W.D. Wis.), now consolidated as a part of the above-captioned MDL.

## III. RELEVANT TIME PERIOD

Except as otherwise specified, each document Request concerns the time period from January 1, 2013 through the present (the "Relevant Time Period"). In responding to the Requests, you must produce all documents created, dated, prepared, drafted, generated, modified, sent, provided, obtained, used, or received during the Relevant Time Period, or the time period otherwise specified by the Request, that are responsive, in whole or in part, to the subject matter of the Request, and all responsive documents created before or after the Relevant Time Period, or the time period otherwise specified by the Request, that relate, in whole or in part, to facts, transactions, events, or occurrence taking place, or anticipated to take place, during the Relevant Time Period or the time period otherwise specified by the Request.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All documents concerning CDK's post-merger plans for Auto/Mate, including the planned downgrading of features and service as well as the prevention of CDK's larger customers from migrating from CDK as detailed in Paragraph 6 of the March 19, 2018 FTC Complaint.

**REQUEST NO. 2:**

All documents concerning any analysis by CDK regarding the effect of the acquisition of Auto/Mate on franchise Dealers.

**REQUEST NO. 3:**

All documents concerning any analysis by CDK regarding Auto/Mate's "aggressive competition," "winning an increasing share of opportunities," and Auto/Mate "successfully acquiring large dealership customers" as detailed in Paragraph 40 of the FTC Complaint.

**REQUEST NO. 4:**

All documents regarding CDK's 2016 plan designed to reduce the risk that some of its customers would switch to Auto/Mate as detailed in Paragraph 42 of the FTC Complaint.

**REQUEST NO. 5:**

All documents concerning the plans outlined in Paragraph 56 of the FTC Complaint regarding CDK's post-acquisition plan that would remove a DMS platform as a competitive alternative to CDK's other DMS products for many customers, which Dealer customers "highly value."

**REQUEST NO. 6:**

All documents regarding any cooperation, coordination, joint effort, assistance, exchange of information or technical knowhow, or any other type of collaboration between CDK and Reynolds in blocking any Third Party Integrators' access to Dealer data on their respective DMS platforms. There is no date limitation for this Request.

**REQUEST NO. 7:**

All documents regarding any VPN tunnel (or other direct access, *i.e.*, one that doesn't require use of login credentials) that CDK provided to any Third Party Integrators for accessing Dealer data on the CDK DMS, including any decision to rescind such access to Third Party Integrators.

**REQUEST NO. 8:**

All documents regarding CDK's policies concerning any changes to CDK's or other DMS providers' data access policies.  There is no date limitation for this Request.

**REQUEST NO. 9:**

All documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including the Reynolds DMS. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)     all communications with Dealers or Vendors, representations to Dealers or Vendors, or statements relating to Dealers or Vendors regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS;

(b)      all statements regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS; and

(c)      all documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS.

**REQUEST NO. 10:**

All documents and communications from CDK to former Dealer customers regarding the differences or similarities between CDK and Reynolds with respect to data access policies. For the avoidance of doubt, this Request includes, without limitation, any documents or communications in which CDK marketed its open access policy as a point of differentiation with the Reynolds DMS.

**REQUEST NO. 11:**

All documents relating to CDK's "SecurityFirst" and/or "3PA Refresh" initiative. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)      all presentations regarding the "SecurityFirst" and/or "3PA Refresh" initiative;

(b)      all financial analyses conducted relating to the "SecurityFirst" and/or "3PA Refresh" initiative;

(c)      all documents relating to the reasons CDK introduced the "SecurityFirst" and/or "3PA Refresh" initiative;

(d)      all documents and communications with Dealers and Vendors regarding the "SecurityFirst" and/or "3PA Refresh" initiative, including communications concerning

14

blocking or threatening to block Dealers and/or Vendors that did not meet the requirements of the initiative from the CDK DMS;

(e)    all documents concerning any certification requirements under the "SecurityFirst" and/or "3PA Refresh," including any termination or threat of termination of a Dealer and/or Vendor for failure to meet the certification requirements;

(f)    all documents and regarding any differences between the 3PA program before and after the "SecurityFirst" and/or "3PA Refresh" initiative;

(g)    all documents with respect to the technological implementation of the "SecurityFirst" and/or "3PA Refresh" initiative; and

(h)    all documents relating to any security or other technological enhancements instituted as part of the "Security First" and/or "3PA Refresh" initiative.

## REQUEST NO. 12:

All documents regarding the ability of Dealers to extract their data from the CDK DMS manually, including when that capability was instituted; the means by which data is extracted; how the means to extract data manually changed, if they changed at all, over the Relevant Time Period; how often Dealers extract their own data for purposes of providing the data to Vendors; how the use of this functionality (*i.e.*, the incidence of use) has changed over the Relevant Time Period, if at all; and the means by which Dealers send their manually-extracted data to Vendors.

## REQUEST NO. 13:

All documents and communications from CDK to Dealers (whether existing, former, or prospective DMS customers) regarding the differences or similarities between CDK and any other DMS provider with respect to data access policies. For the avoidance of doubt, this Request

includes, without limitation, any documents or communications in which CDK marketed its open access policy as a point of differentiation with the Reynolds DMS.

**REQUEST NO. 14:**

All documents concerning any other DMS provider. For the avoidance of doubt, this Request includes:

(a)     all documents concerning any other DMS provider's DMS and/or DMS services;

(b)     all documents concerning the system architecture of any other DMS or DMS provider, including but not limited to the technological aspects for retrieving data from any other DMS, blocking of third party access to other DMS, or any other relevant technological matter to the claims and defenses in this case; and

(c)     all documents concerning competition within the DMS or Data Integration Services market.

**REQUEST NO. 15:**

All documents concerning any of CDK's DMS customers switching or attempting to switch to a different DMS provider, including the time and expense associated with changing or switching DMS providers, as well as all documents concerning any of CDK's DMS customers who have discontinued use of CDK's services since January 1, 2014. For avoidance of doubt, this Request includes, without limitation:

(a)     all documents concerning any litigation or threatened litigation resulting from such a switch or attempted switch;

(b)    all documents concerning restricting access to a former customer's CDK DMS data or threatening to restrict access to a customer's CDK DMS data if it switched to a new DMS provider;

(c)    all documents concerning customers who have had a contract with CDK for DMS and/or DMS services and that contract was not renewed from January 1, 2014 to the present; and

(d)    all documents concerning customers who have had a month to month contract with CDK at any time from January 1, 2014 to present, regardless of whether that customer is a current CDK customer.

**REQUEST NO. 16:**

All current signed Master Services Agreements and/or other contracts, agreements, and/or written understandings between CDK and its Dealer customers. Each agreement should include all documents that comprise the DMS contract between CDK and the Dealer, including any user guides, addendums, exhibits, and other documents that form the agreement between CDK and its Dealer customers.

**REQUEST NO. 17:**

All documents concerning any provision in CDK's DMS contracts that provide for automatic renewal or extension of CDK's DMS contracts.

**REQUEST NO. 18:**

All documents relating to any changes or proposed changes to material terms in the CDK DMS contract, including with respect to the use of Third Party Integrators; and automatic renewal and/or extension of the contract.

17

**REQUEST NO. 19:**

All documents sufficient to show (1) which Dealers use or used a CDK DMS; (2) when each Dealer customer first used a CDK DMS; (3) how long each Dealer customer's tenure as a client of CDK has lasted; and (4) if any Dealer no longer uses a CDK DMS, when Dealer ceased using the DMS provider. For the avoidance of doubt, CDK shall provide the above information for any Dealer that was a customer of CDK at any time during the Relevant Time Period.

**REQUEST NO. 20:**

All documents sufficient to show the monthly pricing for DMS services paid by each Dealer customer identified in Request No. 19.

**REQUEST NO. 21:**

All documents sufficient to show the total number of Dealers (both by Dealership group and by rooftop) that used a CDK DMS, broken down on a month-by-month basis.

**REQUEST NO. 22:**

All documents relating to any change in the pricing for DMS services paid by CDK's Dealer customers.

**REQUEST NO. 23:**

All documents sufficient to show the cost of CDK providing DMS services separate and apart from providing Data Integration Services.

**REQUEST NO. 24:**

All documents relating to any Dealer that once obtained DMS services from CDK, but no longer does, including documents sufficient to show the reasons why those Dealers no longer obtain DMS services from CDK.

18

**REQUEST NO. 25:**

Documents sufficient to show any up-front initiation fees, per-dealership setup or installation fees, per-transaction fees, or other one-time charges that CDK has charged to its Dealer customers for DMS services, broken down on a Dealer-by-Dealer basis. This Request includes documents sufficient to show when these fees or charges were instituted; why they were instituted; their amounts; and by how much they increase a Dealer's monthly DMS fees.

**REQUEST NO. 26:**

All documents relating to the pricing charged by other DMS providers, including but not limited to Reynolds.

**REQUEST NO. 27:**

All documents concerning restrictions on Vendors' use of Third Party Integrators to access DMS data on CDK systems or otherwise require that Vendors use the 3PA program to access data on CDK DMS systems. For the avoidance of doubt, this Request includes, without limitation, all documents concerning any provision in CDK's Vendor contracts that limit the ability of Vendors to use Third Party Integrators to access data on CDK DMS systems.

**REQUEST NO. 28:**

All documents sufficient to show what each Vendor paid for Data Integration Services on a month-by-month basis until they stopped using IntegraLink and/or DMI for each month of the Relevant Time Period. For the avoidance of doubt, if any Vendor so identified no longer obtains Data Integration Services from IntegraLink or DMI, provide documents and documents sufficient to show when they stopped and what they paid when they stopped.

19

**REQUEST NO. 29:**

All documents concerning restrictions on Dealers' use of third parties to access DMS data on the CDK systems. For the avoidance of doubt, this Request includes, without limitation:

(a)     all documents concerning any restrictions on Dealers' use of Third Party Integrators to access DMS data on CDK systems;

(b)     all documents concerning any provision in CDK's DMS contracts that limit the ability of Dealers to use Third Party Integrators to access data on CDK DMS systems;

(c)     all documents and communications with Dealers relating to whether they can (or cannot) authorize Third Party Integrators to access data on the CDK DMS, including any communications that cite provisions in a particular DMS contract to that effect;

(d)     all documents relating to the enforcement or threat of enforcement of CDK's DMS contract against Dealers with respect to third-party access to data on the CDK DMS; and

(e)     all documents relating to Dealer rights under DMS contracts to authorize third parties to access data on the CDK DMS.

**REQUEST NO. 30:**

All documents sufficient to show the technological aspects of:

(a)     how data extraction occurs from the DMS database when using Third Party Integrators;

(b)     extracting data for Third Party Integrators differs from those for (i) DMI or IntegraLink or (ii) participants of the 3PA program;

(c)     how manual extraction of data occurs from the DMS database; and

(d)     how the technological aspects of manually extracting data from the DMS database differs from the technological aspects of extracting data for (i) DMI or IntegraLink or (ii) participants of the 3PA program.

**REQUEST NO. 31:**

All documents regarding CDK's use of any Third Party Integrator, including but not limited to Authenticom, for Data Integration Services. For the avoidance of doubt, this Request includes any instance in which a CDK-owned (wholly, jointly, or partially) add-on application used a Third Party Integrator for Data Integration Services with respect to any DMS platform.

**REQUEST NO. 32:**

All documents regarding data security and/or DMS system performance with respect to any Third Party Integrator's access to the Reynolds or CDK DMSs. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)     all documents relating to the effect of Third Party Integrators' access to the CDK DMS on the performance of the CDK DMS;

(b)     all documents relating to any data security incidents caused by Third Party Integrators' access to the CDK DMS; and

(c)     all documents relating to any specific system performance issue that was or is directly attributable to third parties' access to the CDK DMS.

**REQUEST NO. 33:**

All documents regarding any decision to block the access of a Third Party Integrator to the CDK DMS prior to the implementation of the "Security First initiative."

**REQUEST NO. 34:**

All documents sufficient to show how Dealer data is stored on the CDK DMS. For the avoidance of doubt, this Request includes, without limitation:

      (a)     all documents sufficient to show whether a Dealer's data is stored separate from the data of other Dealers;

      (b)     all documents sufficient to show whether a Dealer's data is commingled with data that does not belong to the Dealer;

      (c)     all documents sufficient to show where Dealer data is stored (whether on servers at the Dealership, at CDK-managed server farms, at third-party managed server farms, or at some other location, or in some other manner); and

      (d)     all documents sufficient to show how the storage of Dealer data may have changed over the Relevant Time Period.

**REQUEST NO. 35:**

All documents sufficient to show the specific changes to security measures instituted by CDK to protect security of Dealer data.

**REQUEST NO. 36:**

All documents referencing, relating to, or concerning the National Automobile Dealers Association in connection with Dealer data or data security, including, but not limited to, an August 28, 2013 memo of the National Automobile Dealers Association sent to members concerning Dealer data guidance and a 2014 memo entitled, "10 Steps Dealers Need To Take To Protect 'Dealer Data.'"

**REQUEST NO. 37:**

All documents demonstrating the attendance or participation of a CDK representative at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, diary entries, and travel, accommodation, and restaurants receipts, or any other documentation evidencing reimbursement for attendance at the conference or convention.

**REQUEST NO. 38:**

All documents produced, used or distributed at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, videos, emails and any other materials used to inform, instruct and/or train CDK representatives to market any of CDK's services to Dealers at any convention, meeting, gathering or informational events that would at any time include current or potential CDK customers.

**REQUEST NO. 39:**

Any Civil Investigative Demand served on CDK pertaining to alleged anticompetitive conduct and/or acquisitions or potential acquisitions by CDK and/or Reynolds. For avoidance of doubt, this request is for the Civil Investigative Demand itself and any attachments.

**REQUEST NO. 40:**

All documents concerning CDK sales data and information, including but not limited to invoices, relating to any data integrators or the following Vendors: TrueCar, Carfax, Autotrader, Cars.com, vAuto, Dealer.com, DealerSocket, RouteOne, NakedLime and DealerRater, and/or any of their subsidiaries, affiliates or related entities.

23

**REQUEST NO. 41:**

All documents exchanged between CDK and Reynolds and any Vendor relating to changes in data integration fees impacting (or potentially impacting) Vendors' prices and fees to Dealerships. This includes but is not limited to any documents or communications that relate in any way to Vendors increasing their prices and fees to Dealerships as a result of increases in data integration fees charged by CDK and/or Reynolds.

**REQUEST NO. 42:**

All documents concerning CDK's actual and projected financial results on a weekly, monthly, quarterly and/or yearly basis during the Relevant Time Period, including but not limited to:

      (a)      internal projections;

      (b)      profit and loss statements, analyses or projections;

      (c)      cost analyses or projections;

      (d)      analyses or projections of gross margins;

      (e)      budgets;

      (f)      marketing plans;

      (g)      business plans or other planning documents; and

      (h)      financial statements, including any filings with governmental agencies or presentations to banks or other financial institutions.

**REQUEST NO. 43:**

All documents concerning CDK's policies and/or practices directed at compliance with the United States antitrust laws.

**REQUEST NO. 44:**

All documents concerning any insurance policies, indemnification agreements or hold harmless agreements that may provide coverage for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made or costs incurred in defense of this action.

**REQUEST NO. 45:**

All documents concerning CDK's policies and/or practices regarding the retention, destruction, disposal, and/or preservation of documents.

**REQUEST NO. 46:**

All documents concerning the potential for entities to enter into the market for the supply of DMS, including the potential for such entry and the barriers or obstacles for such entry.

**REQUEST NO. 47:**

All documents concerning the potential for entities to enter into the market for the supply of DIS, including the potential for such entry and the barriers or obstacles for such entry.

**REQUEST NO. 48:**

All documents concerning CDK sales data and information, including but not limited to invoices and all underlying data used to generate invoices for Vendors that used (1) DMI, (2) Integralink, and/or (3) the 3PA program for data integration services, from 2011 to the present, as well as all underlying data used to generate invoices for dealers that used a CDK DMS, from January 1, 2011 to the present. This request includes but is not limited transactional data which shows the payor, date, price, discount, net payable, the category of data polled, as well as records that show the amounts paid to CDK in response to invoices.

Dated: May 25, 2018             Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
Elizabeth McKenna
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com
emckenna@milberg.com

*Dealership Interim Lead Class Counsel*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2018, I caused a true and correct copy of the foregoing

Dealership Class Plaintiffs' First Set of Requests for the Production of Documents for Defendant

CDK Global, LLC to be served by email upon the individuals at the following email address:

CDK-MDL-Team@mayerbrown.com

<div align="right">

*/s/ Elizabeth McKenna*
Elizabeth McKenna

</div>

# EXHIBIT 52
# (REDACTED)

# EXHIBIT 53

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT<br>SYSTEMS ANTITRUST LITIGATION<br><br>**This Document Relates To:**<br><br>**THE DEALERSHIP CLASS ACTION** | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Honorable Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**DEALERSHIP CLASS PLAINTIFFS' RESPONSES AND OBJECTIONS**
**TO DEFENDANT CDK GLOBAL, LLC'S FIRST REQUESTS**
**FOR THE PRODUCTION OF DOCUMENTS**

Pursuant to Fed. R. Civ. P. 26 and 34, Dealership Class Plaintiffs ACA Motors, Inc. d/b/a Continental Acura; Baystate Ford Inc.; TJH Automotive Co.. LLC d/b/a Cherry Hill Classic Cars (a/k/a Cherry Hill Jaguar); Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Continental Autos, Inc. d/b/a/ Continental Toyota; Continental Classic Motors, Inc. d/b/a Continental Autosports; 5800 Countryside, LLC d/b/a Continental Mitsubishi; HDA Motors, Inc. d/b/a Continental Honda; (H & H Continental Motors, Inc. d/b/a Continental Nissan; Gregoris Motors, Inc.; Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville; JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Jim Marsh American Corporation d/b/a Jim Marsh Kia and Jim Marsh Chrysler/Jeep; John O'Neil Johnson Toyota, LLC; Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota; Marshall Chrysler Jeep Dodge, LLC d/b/a Marshall Chrysler Jeep Dodge Ram; Naperville Zoom Cars, Inc. d/b/a Continental Mazda; NV Autos, Inc. d/b/a Continental Audi; Patchogue 112 Motors LLC d/b/a Stevens Ford; Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC; Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram; Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram; and Warrensburg Chrysler Dodge Jeep, L.L.C. d/b/a Warrensburg Chrysler Dodge Jeep Ram Fiat (collectively, "Dealership Plaintiffs") hereby serve the following Responses and Objections to Defendant CDK Global, LLC's ("CDK") First Requests for the

Production of Documents to Dealer Class Plaintiffs ("CDK's Requests" or "Requests"). Dealership Plaintiffs reserve the right to amend, supplement, and correct their responses or objections as necessary.

## **GENERAL OBJECTIONS**

The following objections are hereby incorporated fully by reference in each and all of the Specific Objections and Responses set forth below.

1.      Dealership Plaintiffs assert each of the following objections to the Requests. In addition to these General Objections, Dealership Plaintiffs may also state specific objections to each Request where appropriate. By setting forth such additional specific objections, Dealership Plaintiffs do not in any way intend to limit or restrict their General Objections. Moreover, to the extent Dealership Plaintiffs provide a response to any of the Requests to which Dealership Plaintiffs object, such response shall not constitute a waiver of any General Objection or specific objection.

2.      Dealership Plaintiffs object to these Requests as overbroad, unduly burdensome, and duplicative. Dealership Plaintiffs assert that CDK's 107 separately enumerated Requests, many of which request documents of marginal or no relevance, are disproportionate to the needs of this case and are substantially outweighed by the burden imposed on Dealership Plaintiffs in having to search for and produce such documents.

3.      Dealership Plaintiffs object to CDK propounding 107 Requests, many of which contain subparts, as abusive and designed to harass Dealership Plaintiffs.

4.      Nothing herein shall be construed as an admission by Dealership Plaintiffs regarding the competence, admissibility, or relevance of any fact sought by the Requests. Dealership Plaintiffs reserve their right to challenge the competency, relevance, materiality, and admissibility of any information or documents that they produce in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or any other action. Further, Dealership Plaintiffs intend no incidental or implied

2

admissions by its answers to the Requests. Whether Dealership Plaintiffs answer or object to any particular request should not be interpreted as an admission that Dealership Plaintiffs accept or admit the existence of any fact(s) set out or assumed by such Requests, that the Requests are proper, that Dealership Plaintiffs' answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether Dealership Plaintiffs answer part or all of any particular Request is not intended and should not be construed as a waiver by Dealership Plaintiffs of any or all objections to such Request or any other Request.

5.      Dealership Plaintiffs object to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of Dealership Plaintiffs' employees and other persons, including individuals who are not parties to this litigation. Dealership Plaintiffs reserve the right to protect the privacy and confidentiality interests of non-parties to this litigation, including by redacting such information from documents or electronically stored information ("ESI") that Dealership Plaintiffs may produce.

6.      Dealership Plaintiffs object to the Requests to the extent they purport to require the production of documents or information that are not maintained by Dealership Plaintiffs in the form or manner requested. Dealership Plaintiffs will not create any documents that do not otherwise already exist in order to respond to any of these Requests.

7.      To the extent that Dealership Plaintiffs have agreed to search for documents responsive to these Requests, their searches will be limited to the files of those documents custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found. Similarly, in accordance with the Stipulated Order Re: Discovery of Electronically Stored

Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (ECF No. 105), Dealership Plaintiffs will produce responsive, non-privileged documents and information in accordance with the parties' agreements regarding date limitations and search terms to avoid the need to manually inspect every responsive document. To the extent that responsive documents can be identified and produced without the use of search terms, custodian, or date limitations, Dealership Plaintiffs will make good-faith, diligent efforts to produce those responsive documents concurrent with resolving any disagreements over search criteria.

8. Dealership Plaintiffs object to, and will not be bound by, any request, instruction, definition, or directive contained in the Requests to the extent that they attempt to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement between the parties.

9. Dealership Plaintiffs object to CDK's Requests to the extent that they request communications or information protected by the attorney-client privilege, work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs hereby claim such privileges and protections to the extent implicated by each Request. Any inadvertent production of privileged or protected information shall not constitute a waiver of any applicable privileges and protections and shall not preclude Dealership Plaintiffs from objecting to the use of such information.

10. Dealership Plaintiffs object to CDK's Requests to the extent that they relate to an expert opinion or other opinion or contention on the grounds that such discovery requests are premature at this time.

11. Dealership Plaintiffs object to the Requests insofar as they seek confidential, proprietary or trade secret information, the disclosure of which would cause irreparable competitive injury to Dealership Plaintiffs, without providing adequate assurances that such information will not be disclosed. All confidential or proprietary materials or information provided are subject to the Protective Order entered in this case.

4

12.     Dealership Plaintiffs object to each Request to the extent it is vague, ambiguous, overbroad, and/or unduly burdensome.

13.     Dealership Plaintiffs object to CDK's Requests to the extent that they seek information within the possession, custody, or control of third parties or public records that are equally available to CDK. Dealership Plaintiffs further object to each Request to the extent that it seeks documents that are already in Defendants' possession, custody, or control.

14.     Dealership Plaintiffs object to CDK's Requests to the extent that they contain or rely upon misstatements of fact or law, or assume the existence of facts or events that do not exist or did not take place. Any response of Dealership Plaintiffs to a Request shall not be construed as an admission that any characterization of facts, circumstances, or legal obligations stated or implied in that Request is accurate. Dealership Plaintiffs reserve the right to contest any such characterization as inaccurate.

15.     Dealership Plaintiffs responses to CDK's Requests are based upon a good faith interpretation of the Requests. Should a different interpretation of any Request be asserted by CDK, Dealership Plaintiffs reserve the right to add to, modify, or otherwise change or amend these responses.

16.     Any response agreeing to produce a category or categories of documents is not an indication that such documents actually exist and/or are within the possession, custody, or control of Dealership Plaintiffs. Responsive documents, to the extent they exist, will be produced after a reasonable search of Dealership Plaintiffs' documents.

17.     Dealership Plaintiffs' responses herein are based only upon facts known at this time. Discovery in this matter is ongoing, and during the course of subsequent discovery, Dealership Plaintiffs may become aware of supplemental, additional, or other responsive documents. Dealership Plaintiffs reserve the right to update, amend, or supplement these responses and their document production. In addition, these Objections are made without prejudice to Dealership Plaintiffs' right to present further additional or other evidence or

contentions in a motion for summary judgment, at trial, or otherwise, based upon information hereafter identified, obtained, or developed.

18.     Dealership Plaintiffs object to each Request that uses the term "documents" as vague and ambiguous and overly broad and unduly burdensome to the extent that term is intended to impose burdens beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement between the parties.

19.     Dealership Plaintiffs object to each Request which uses the term "documents and communications" as overly broad and unduly burdensome to the extent that term is intended to impose burdens beyond those imposed by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement between the parties.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Dealership Plaintiffs object to all Definitions and Instructions which purport to broaden terms beyond their ordinary meaning and/or impose obligations on Dealership Plaintiffs that are broader than or inconsistent with the obligations created by the Federal Rules of Civil Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement between the parties.

2.     Dealership Plaintiffs object to Definition No. 2 (which purports to define the term "Application") as vague and ambiguous to the extent that it does not define "automotive software products or services." Dealership Plaintiffs further object to Definition No. 2 as overly broad, unduly burdensome, and oppressive in that it purports to encompass automotive software products or services "regardless of whether the application is capable of being integrated with any DMS." Software products or services that are incapable of being integrated with a DMS bear no relevance to any party's claims or defenses and discovery on such matters is disproportionate to the needs of the case.

6

3.      Dealership Plaintiffs object to Definition No. 6 (which purports to define the term "CDK Proprietary Data") as overly broad to the extent it seeks to include information which is not proprietary, including but not limited to, CDK's prices.

4.      Dealership Plaintiffs object to Definition No. 9 (which purports to define the term "Consolidated Amended Complaint") as the document referenced is actually titled "Consolidated Class Action Complaint. Dealership Plaintiffs will use the term "Consolidated Class Action Complaint" to refer to the Complaint Dealership Plaintiffs filed on June 4, 2018 (ECF No. 184).

5.      Dealership Plaintiffs object to Definition No. 10 (which purports to define the term "Contracted Data Extractor") because, except in rare circumstances, Dealerships have not directly contracted with data extractors.

6.      Dealership Plaintiffs object to Definition No. 15 (which purports to define the terms "Dealer Class Plaintiffs," "You," and "Your") as overly broad to the extent it encompasses entities other than the Dealership Plaintiffs named in the Consolidated Class Action Complaint.

7.      Dealership Plaintiffs object to Definition No. 17 (which purports to define the term "OEM") as overly broad and unduly burdensome to the extent that it refers to original equipment manufacturers other than those that manufacture automobiles or parts used in servicing automobiles.

8.      Dealership Plaintiffs object to Definition No. 17 (which purports to define the term "OEM Proprietary Data") as overly broad and unduly burdensome in that Dealership Plaintiffs cannot be expected to have knowledge of what data is "owned or created" by original equipment manufacturers ("OEMs") or what data is licensed to DMS providers by OEMs. Dealership Plaintiffs further object to Definition No. 17 to the extent it assumes Dealership Plaintiffs possess a full understanding of what data OEMs consider to be proprietary. Dealership Plaintiffs also object to Definition No. 17 as overly broad to the extent it encompasses information that is not proprietary.

7

9.      Dealership Plaintiffs object to Definition No. 21 (which purports to define the term "Reynolds Proprietary Data") as overly broad to the extent it seeks to include information which is not proprietary, including but not limited to, Reynolds' prices.

10.      Dealership Plaintiffs object to Definition No. 22 (which purports to define the term "Third-Party Proprietary Data") as overly broad and unduly burdensome in that Dealership Plaintiffs cannot be expected to have knowledge of what data is "owned or created" by unnamed third parties or what data is licensed to DMS providers by unnamed third parties. Dealership Plaintiffs further object to Definition No. 22 to the extent it assumes Dealership Plaintiffs possess a full understanding of what data OEMs consider to be proprietary. Dealership Plaintiffs also object to Definition No. 17 as overly broad to the extent it encompasses information that is not proprietary.

11.      Dealership Plaintiffs object to Instruction No. 3 as overly broad and unduly burdensome to the extent "constructive possession" is intended to impose on Dealership Plaintiffs duties and obligations that exceed, or are different from, those imposed by the Federal Rules of Civil Procedure, Local Rules, or any applicable order in this case.

12.      Dealership Plaintiffs object to Instruction No. 8 as overly broad and unduly burdensome to the extent it seeks to impose burdens beyond those imposed by the Federal Rules of Civil Procedure, Local Rules, or any applicable order in this case.

13.      Dealership Plaintiffs object to Instruction No. 9 as unduly burdensome and unreasonable, particularly to the extent it seeks to impose burdens beyond those imposed by the Federal Rules of Civil Procedure, Local Rules, or any applicable order in this case.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waving or limiting the above-asserted General Objections and Objections to Definitions and Instructions, and incorporating each and every General Objection and Objections to

8

Definitions and Instructions by reference into each of the responses below, Dealership Plaintiffs further respond to each specific Request as follows:

**REQUEST FOR PRODUCTION NO. 1:**

Documents sufficient to identify for each year of the Relevant Time Period: (a) each Data Extractor that You have used, or have allowed a Vendor to use, to access data maintained on any DMS; (b) the Data Extractor's means of accessing data maintained on the DMS (e.g., code-on-the box, username and password and screen-scraping); (c) all usernames and passwords that You provided to any Data Extractor that have been used to access data maintained on any DMS; (d) the Vendors to whom the data was provided; and (e) all DMS directories, data fields, and files that were accessed by the Data Extractor.

  **RESPONSE:**  Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, this Request is overly broad, unduly burdensome, and not proportional to the needs of the case as it requests "all usernames and passwords that You provided to any Data Extractor that have been used to access data maintained on any DMS" and "all DMS directories, data fields, and files that were accessed by the Data Extractor." Further, the Request fails to describe the items sought with reasonable particularity: the terms "code-on-the box" and "screen-scraping" are vague and ambiguous and call for guesswork and speculation as they are undefined terms. To the extent the purpose of this Request is to discover the identity of Data Extractors and Vendors that provided services to Dealership Plaintiffs, it is duplicative and/or cumulative of CDK's Interrogatory Requests No. 2 and 3. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as it seeks grossly overbroad and unduly

9

burdensome information as to "all DMS directories, data fields, and files that were accessed" by every Data Extractor used by Dealership Plaintiffs, or that Dealership Plaintiffs have allowed a Vendor to use.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents evidencing each Data Extractor that Dealership Plaintiffs have used, or have allowed a Vendor to use, to access data maintained on their DMS and the Vendors to whom the data was provided. To the extent this Request seeks documents sufficient to identify the Data Extractor's means of accessing the data maintained on the DMS, all usernames and passwords provided to any Data Extractor, and all DMS directories, data fields, and files that were accessed by the Data Extractors, Dealership Plaintiffs will not produce such information.

**REQUEST FOR PRODUCTION NO. 2:**

All versions of all contracts and agreements with DMS providers, Vendors and Data Extractors, including drafts, that have been contemplated or in effect during the Relevant Time Period.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, this Request is overly broad, unduly burdensome, not proportional to the needs of the case, and vague and ambiguous because it fails to identify the second party to the contracts and agreements at issue. Dealership Plaintiffs also object to this Request as vague and ambiguous insofar as "contemplated" is not defined. Dealership Plaintiffs further object to this Request to the extent it seeks contracts and agreements entered into with CDK, which are already within CDK's possession, custody and control. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See*

10

Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, to the extent the purpose of this Request is to discover the identity of Data Extractors and Vendors that provided services to Dealership Plaintiffs, it is duplicative and/or cumulative of CDK's Interrogatory Request Nos. 2 and 3.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged contracts and agreements between Dealership Plaintiffs and DMS providers, Vendors, and Data Extractors in effect during the Relevant Time Period.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and communications related to any contracts or agreements between You and any DMS Providers, Vendor, or Data Extractor, for access to data maintained on any DMS, including, but not limited to, the drafting, negotiation, interpretation, or enforcement of any such agreements or provisions therein.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request to the extent it seeks documents and communications with CDK, which are already within CDK's possession, custody and control. Dealership Plaintiffs further object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney-work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable.

11

*See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, to the extent the purpose of this Request is to discover the identity of Data Extractors and Vendors that provided services to Dealership Plaintiffs, it is duplicative and/or cumulative of CDK's Interrogatory Request Nos. 2 and 3.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents and communications related to any contracts or agreements between Dealership Plaintiffs and any DMS Providers, Vendor, or Data Extractors, for access to data maintained on any DMS, including but not limited to, the drafting, negotiation, interpretation, or enforcement of any such agreements or provisions therein.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications related to pricing charged and/or services offered by any DMS Provider, Vendor, or Data Extractor for access to data maintained on a DMS, including but not limited documents evidencing any monthly feels paid by You to Vendors or Data Extractors (such as any fees for Data Extraction Services) to the extent such services are separately charged.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the phrase, "not limited documents evidencing any monthly feels" is nonsensical and therefore vague and ambiguous. Further, to the extent that this Request seeks "pricing charged and/or services offered by" any Vendor which is unrelated to fees for access to data on a DMS it seeks information that is not relevant to any party's claims or defenses and

12

thus is beyond the scope of permissible discovery. Dealership Plaintiffs further object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Document Request Nos. 2 and 3 and CDK Interrogatory Request Nos. 2 and 3. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents involving pricing charged and/or services offered by any DMS Provider, Vendor, or Data Extractor for access to data maintained on a DMS, including but not limited to, documents evidencing any monthly fees paid by Dealership Plaintiffs to Vendors or Data Extractors (such as any fees for Data Extraction Services) to the extent such services are separately charged.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications related to "exclusive dealing provisions" in any agreement or contract between You or any Vendor or Contracted Data Extractor and Reynolds or CDK, as alleged in the Complaints.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any

party's claims or defenses and thus is beyond the scope of permissible discovery. Dealership Plaintiffs also object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation as to what "relates" to "exclusive dealing provisions" in the requested agreements or contracts. Dealership Plaintiffs further object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Document Request Nos. 2-4 and CDK Interrogatory Request Nos. 2 and 3. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request on the ground that some of the information requested is within the possession, custody, or control of CDK and Reynolds.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that they have already agreed to produce non-privileged contracts and agreements between Dealership Plaintiffs and DMS providers, Vendors, and Data Extractors in effect during the Relevant Time Period. Dealership Plaintiffs agree to produce non-privileged documents and communications that reference the specific term, "exclusive dealing provision(s)" in any agreement or contract between Dealership Plaintiffs or any Vendor or Contracted Data Extractor and Reynolds or CDK.

14

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications related to any CDK Data Authorization forms that You received from any Data Extractor and any response(s) that You provided.

      **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Dealership Plaintiffs also object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation, and the term "Data Authorization forms" is undefined. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other CDK Requests, including but not limited to, CDK Request No. 3.

      Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents and communications that specifically reference the term, "CDK Data Authorization"

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications related to Your or any Vendor's or Data Extractor's policies and practices for creating, sharing, sending, requesting, receiving, accessing, storing, securing, encrypting, or using (a) any

data obtained from any CDK or Reynolds DMS; or (b) any CDK or Reynolds DMS username and password credentials.

      **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Dealership Plaintiffs also object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request No. 3. Dealership Plaintiffs also further object to this Request to the extent that it is compound, complex, or unintelligible so as to make a meaningful or complete response impossible. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants.

      Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications related to any instance in which You have provided, or have been asked to provide, DMS username and password credentials to any other person, including any Data Extractor or Vendor.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, Dealership Plaintiffs object to this Request as overbroad and seeking information not relevant to any party's claims or defenses as it requests documents and communications "in any instance" where Dealership Plaintiffs have provided or been asked to provide DMS username and password credentials to "any other person." Dealership Plaintiffs also object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications related to any circumstances in which a Vendor or Data Extractor accessed data maintained on a DMS without first obtaining express, written consent or authorization from You purporting to permit such access. For avoidance of doubt, this Request includes circumstances where the Vendor's or Data Extractor's access exceeded the scope of the express permission granted.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, this Request is overly broad,

unduly burdensome, not proportional to the needs of the case, and seeks information not relevant to any party's claims or defenses, as it requests documents and communications "related to any circumstances" in which a Vendor or Data Extractor access data maintained on any DMS. Dealership Plaintiffs also object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and communications related to any instance where You declined to authorize DMS access, or asked any Vendor, Data Extractor, or third-party to stop accessing or extracting data maintained on any DMS.

**RESPONSE:**  Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, this Request is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information not relevant to any parties claims or defenses, as it requests documents and communications "related to any instance" in which Dealership Plaintiffs declined to authorize DMS access or requested that "any" Vendor, Data Extractor or

18

third-part stop accessing or extracting data maintained on "any DMS." Dealership Plaintiffs also object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

### REQUEST FOR PRODUCTION NO. 11:

All documents and communications related to or discussing access privileges associated with DMS login credentials, including any documents or communications that show whether any Vendors or Data Extractors have access to any non-Dealer owned data maintained in any DMS, including, but not limited to, any OEM, Third-Party, CDK or Reynolds Proprietary Data.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery.

Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is grossly overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS"

which is not the DMS licensed to an individually named Dealership Plaintiff. Dealership Plaintiffs further object to this Request to the extent it assumes Dealerships Plaintiffs are knowledgeable about what, if any, "non-Dealer owned data maintained in any DMS" is purportedly OEM, Third-Party, CDK, or Reynolds Proprietary Data. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 12:**

All documents and communications related to whether any Data Extractor's or Vendor's methods of DMS access, data syndication, write-back, or data extraction: (a) are prohibited by any applicable laws, regulations, or contractual agreements; (b) comply with data security, data privacy, or automotive industry standards or guidance; (c) cause data security, data integrity, or system burden issues; or (d) are otherwise objectionable.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery.

Specifically, Dealership Plaintiffs object to this Request as grossly overbroad, unduly burdensome, is not proportional to the needs of the case, and seeks information not relevant to any party's claims or defenses because it requests information on "any" Data Extractors or Vendors, regardless of whether they service Dealership Plaintiffs. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome

as it involves Data Extractor's and Vendor's – not Dealership Plaintiffs' – "methods of DMS access, data syndication, write-back or data extraction," and is therefore more appropriately directed to Data Extractors and Vendors themselves. Dealership Plaintiffs further object to the Request to the extent it inappropriately requires Dealership Plaintiffs to draw a legal conclusion regarding whether certain conduct is "prohibited by any applicable laws, regulations, or contractual agreements." Dealership Plaintiffs also object to this Request insofar as it refers to methods that are prohibited by contractual agreements to which Dealership Plaintiffs are not parties. Dealership Plaintiffs further object to this Request on the ground the terms "related to," "standards or guidance," "otherwise objectionable," and "issues" are vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also further object to this Request on the ground that any information pertaining to "system burden issues" is more appropriately directed to CDK and Reynolds. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 13:**

Documents sufficient to show the date, time, content, volume, frequency, and duration of all queries that any Vendor or Data Extractor performed on data maintained in any DMS licensed to You through means other than approved 3PA integrations.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery.

Specifically, Dealership Plaintiffs object to this Request as grossly overbroad, unduly burdensome, is not proportional to the needs of the case, and seeks information not relevant to any party's claims or defenses because it requests information on "any" DMS licensed to Dealership Plaintiffs, fails to define "queries," and the request for the "date, time, content, volume, frequency, and duration" of such "queries" is voluminous and irrelevant. Dealership Plaintiffs also object to this Request as overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individually named Dealership Plaintiff Dealership. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as it is more appropriately directed to the operators of DMS (including Defendants themselves), Vendors, or Data Extractors.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and communications related to any issues or problems with data security, data corruption, system integrity, or system performance of a DMS.

22

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, Dealership Plaintiffs object to this Request on the ground that the terms "related to," "any issues or problems," "data corruption," "system integrity," and "system performance" are overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms, nor is it limited to Dealership Plaintiffs' DMS. Dealership Plaintiffs further object to this Request to the extent it seeks documents that are not within Plaintiffs' possession, custody, or control. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 15:**

All documents and communications related to any efforts or "threats" made by CDK or Reynolds to detect, block, disable, or otherwise restrict a Vendor's or Data Extractor's access to data maintained on a DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork

and speculation, as to what constitutes "related to any efforts or 'threats' made by CDK or Reynolds." This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are not in Dealership Plaintiffs' possession, custody, or control. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents dealing with efforts or "threats" made by CDK or Reynolds to restrict a Vendor or Data Extractor's access to data maintained on a CDK or Reynolds DMS.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and communications related to any efforts or "threats" made by CDK or Reynolds to detect, block, disable, or otherwise restrict your ability to extract or share data maintained on a DMS.

**RESPONSE:**  Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation, as what is "related to any efforts or 'threats' made by CDK or Reynolds." Dealership Plaintiffs also object on the ground that the terms "any effort" and "'threats'" are vague and ambiguous and call for guesswork and speculation as to the nature of communications received by Dealership Plaintiffs. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. Finally, Dealership Plaintiffs object to

24

this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents and communications related to efforts or "threats" by CDK or Reynolds to restrict Dealership Plaintiffs' access to data maintained on a CDK or Reynolds DMS.

**REQUEST FOR PRODUCTION NO. 17:**

All documents and communications related to efforts by You or any Data Extractor or Vendor to evade Reynolds' or CDK's efforts to block, disable or otherwise restrict third-party access to a DMS platform, including but not limited to those describing any scripts or programs that You or any Data Extractor or Vendor have created, used, or been provided for any of these purposes (but excluding documents consisting solely of code, scripts, algorithms, or executable programs).

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the term "evade" is vague and ambiguous and undefined. The terms "scripts" and "programs" are also vague and ambiguous because they are undefined. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a DMS platform" which is not the DMS licensed to an individually named Dealership Plaintiff. Dealership Plaintiffs further object to this Request insofar as it suggests that Dealership Plaintiffs lack authority to access or provide access to data stored on their individual DMS, whether provided by Reynolds or

25

CDK, by a means of their choosing. Dealership Plaintiffs also object to this Request on the ground that it is duplicative and/or cumulative of other requests, including CDK Request No. 1. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, to the extent this Request seeks documents related to efforts by CDK or Reynolds to detect, block, disable, or otherwise restrict Dealership Plaintiffs' ability, directly or indirectly, to extract or share data maintained on a CDK or Reynolds DMS, it is duplicative and/or cumulative of CDK Request Nos. 15 and 16.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and communications related to third-party access to data on any DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object on the ground that the phrase "third-party access" is undefined, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. Dealership Plaintiffs also object to this Request to as overly broad and unduly burdensome to the extent it seeks information related to third parties with which

26

Dealership Plaintiffs have not conducted business. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that contain information protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs further object to this Request on the ground that it is duplicative and/or cumulative of numerous of CDK's other Requests, as well as Interrogatories Request Nos. 2 and 3. To the extent this Request seeks documents related to efforts by CDK or Reynolds to detect, block, disable, or otherwise restrict Dealership Plaintiffs' ability, directly or indirectly, to extract or share data maintained on a CDK or Reynolds DMS, it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request Nos. 15 and 16. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request to the extent that the information requested is within the possession, custody, or control of CDK and Reynolds.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and communications related to any instance in which any person other than You used your DMS log-in credentials. For avoidance of doubt, this Request includes instances where the other person was using Your DMS log-in credentials with your consent (express or implied).

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork

27

and speculation. Dealership Plaintiffs also object to this Request on the ground that the phrase "DMS log-in credentials" are undefined, calling for guesswork and speculation. Dealership Plaintiffs further object that this Request as overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. Dealership Plaintiffs also object to this Request insofar as it suggests that Dealership Plaintiffs lack authority to access or provide access to data stored on their individual DMS, whether provided by Reynolds or CDK, by a means of their choosing. To the extent this Request seeks documents related to efforts by CDK or Reynolds to detect, block, disable, or otherwise restrict Dealership Plaintiffs' ability, directly or indirectly, to extract or share data maintained on a CDK or Reynolds DMS, it is duplicative and/or cumulative of CDK Request Nos. 15 and 16. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs further object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and communications related to your knowledge or awareness of contractual or other restrictions on third-party access to any DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork

and speculation. Additionally, the phrase "knowledge and awareness" is overly broad, vague, and ambiguous, calling for guesswork and speculation about the state of mind of Dealership Plaintiffs at any given moment. Dealership Plaintiffs also object to this Request on the ground the term "contractual or other restrictions" is vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object on the ground that the phrase "third-party access" is undefined, calling for guesswork and speculation. Dealership Plaintiffs additionally object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individual named Dealership Plaintiff. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome to the extent the requested documents are already within CDK's possession, custody, or control. To the extent this Request seeks documents related to efforts by CDK or Reynolds to detect, block, disable, or otherwise restrict Dealership Plaintiffs' ability, directly or indirectly to extract or share data maintained on a CDK or Reynolds DMS, it is duplicative and/or cumulative of CDK Request Nos. 15 and 16. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as duplicative and/or cumulative of previous Requests requesting contracts and agreements between Dealership Plaintiffs and DMS providers, Data Extractors, or Vendors, including but not limited to, CDK's Request Nos. 2 and 3.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs'

possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents and communications related to their knowledge or awareness of contractual or other restrictions on third-party access to their CDK or Reynolds DMS.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and communications related to the types of data stored on a DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, Dealership Plaintiffs object to the undefined phrase "types of data," which is overly broad, vague, and ambiguous, calling for guesswork and speculation. Furthermore, as "communications related to the types of data stored on a DMS" may be interpreted to mean any conversation related to the broad spectrum of business-related activity in a Dealership, this Request is grossly overbroad, not proportional to the needs of this case, and not relevant to any party's claims or defenses in this case. Dealership Plaintiffs also object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms, nor is it limited to documents and communications related to the types of data stored by Dealership Plaintiffs on their own CDK or Reynolds DMS. To the extent that this Request seeks the types of data stored on any particular Dealership Plaintiff's DMS, it is overly broad and unduly burdensome as the information requested is more likely to be within the possession, custody, or control of CDK. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to CDK Interrogatory Request No. 2. Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

30

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and communications related to the persons who have the ability to access or have accessed from any DMS licensed to You—either directly or indirectly, including as a technical matter and regardless of any self-imposed, legal, or contractual restrictions or obligations—any Dealer employee or customer social security numbers, Nonpublic Personal Information ("NPI"), Personally Identifiable Information ("PII"), OEM Proprietary Data, CDK Proprietary Data, Reynolds Proprietary Data, Third-Party Proprietary Data, or any other non-Dealer created or non-Dealer owned data.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to the persons who have the ability to access or have accessed" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the basis that it is not proportional to the needs of this case as it seeks "all documents" that are "related" to persons who fit the description included in this Request. Dealership Plaintiffs further object to this Request on the ground the terms, "Nonpublic Personal Information" and "Personally Identifiable Information" are undefined, and therefore vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. Dealership Plaintiffs further object to this Request as overly broad and unduly burdensome to the extent it seeks documents related to "persons who have the ability to access or have accessed any DMS licensed" to Dealership Plaintiffs regardless of whether Dealership Plaintiffs have knowledge of that access. Dealership Plaintiffs also further object to this Request to the extent that it is compound, complex, or unintelligible so as to make a meaningful or complete response impossible. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to CDK Interrogatory Request No. 2. Insofar as the

31

Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 23:**

Documents sufficient to show (1) all DMS data fields that You have granted a Vendor or Data Extractor permission to access, extract from, or "push" back into any DMS, (2) the frequency of each, and (3) the identity of the Vendor or Data Extractor.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Requests Nos. 1–4, as well as CDK Interrogatory Request No. 2. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs further object to this Request as overly broad and unduly

burdensome as the information showing "all DMS data fields" that Dealership Plaintiffs "have granted a Vendor or Data Extractor permission to access, extract from, or 'push' back into any DMS" is not relevant to any party's claims or defenses in this case. Finally, Dealership Plaintiffs object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, and are more readily obtainable by Defendants than Dealership Plaintiffs.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 24:**

All documents and communications related to any request for administrator-level or "UUP user" access to any DMS, or any such access that You have granted whether or not it was requested.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Further, the Request fails to describe the items sought with reasonable particularity: the terms "administrative-level" and "UUP user" are vague and ambiguous and call for guesswork and speculation as they are undefined terms. Dealership Plaintiffs also object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Interrogatory Request No. 5. Dealership Plaintiffs further object to this Request on grounds that it is vague and ambiguous as to who is requesting elevated access and who is evaluating that request. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the

33

Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 25:**

All documents and communications related to any "user emulation software" or any other software code or executable programs that You have created, used, or been provided with by any Vendor or Data Extractor, to facilitate access by a Vendor or Data Extractor to any DMSs.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the terms "user emulation software" and "software code or executable programs" are vague and ambiguous and call for guesswork and speculation as they are undefined terms. Dealership Plaintiffs also object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. To the extent this Request seeks documents related to efforts by CDK or Reynolds to detect, block, disable, or otherwise restrict Dealership Plaintiffs' ability, directly or indirectly to extract or share data maintained on a CDK or Reynolds DMS, it is duplicative and/or cumulative of CDK Request Nos. 15 and 16. Insofar as the Request seeks documents

relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

## REQUEST FOR PRODUCTION NO. 26:

All documents and communications related to Your ability or alleged inability to provide data to Vendors and Data Extractors without allowing the Vendor or Data Extractor direct access to a Reynolds or CDK DMS, including through the use of manual reporting tools.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation Additionally, the Request fails to describe the items sought with reasonable particularity: the terms "direct access" and "manual reporting tools" are vague and ambiguous and call for guesswork and speculation as they are undefined terms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a Reynolds or CDK DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14,

35

2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, to the extent this Request seeks documents related to efforts by CDK or Reynolds to detect, block, disable, or otherwise restrict Dealership Plaintiffs' ability, directly or indirectly to extract or share data maintained on a CDK or Reynolds DMS, it is duplicative and/or cumulative of CDK Request Nos. 15 and 16.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 27:**

All documents and communications related to any actual or contemplated use of reporting tools and/or "push" methods by You to provide data stored on Your DMS to thid-parties (including but not limited to Authenticom).

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. The term "related to" is even more broad, vague, and ambiguous in combination with the term "contemplated" as it would require Dealership Plaintiffs to evaluate state of mind when documents were created or communications disseminated. Additionally, the Request fails to describe the items sought with reasonable particularity: the terms "reporting tools" and "'push' methods" are undefined and therefore call for guesswork and speculation. Additionally, the term "thid-parties" is nonsensical and therefore vague and ambiguous. Dealership Plaintiffs further object that this Request is overly broad and irrelevant because it is not limited to CDK and Reynolds DMS platforms. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not

cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 28:**

All communications with CDK or Reynolds regarding third-party access to any DMS or Your ability to grant access to any DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, the Request fails to describe the items sought with reasonable particularity: the term "third-party access" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. To the extent that this Request seeks "communications with CDK or Reynolds," it is overly broad and unduly burdensome as the information requested is more likely to be within the possession, custody, or control of CDK and Reynolds and readily, if not more, accessible to Defendants than Dealership Plaintiffs. Dealership Plaintiffs further object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs'

possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 29:**

All communications with Vendors, Data Extractors or other Dealers related to third-party access to any DMS or a Dealer's ability to grant access to any DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the term "third-party access" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individual named Dealership Plaintiff. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 30:**

All documents and communications related to whether a Vendor or Data Extractor acts, or has ever acted, as Your "agent."

> **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the term "agent" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome and irrelevant on the ground that the phrase "has ever acted as Your 'agent'" is not limited with respect to context. Dealership Plaintiffs further object to the Request to the extent it inappropriately requires Dealership Plaintiffs to draw a legal conclusion regarding whether an agency relationship existed at any given time with a Vendor or Data Extractor. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2 and 3 as well as CDK Interrogatory Request No. 2. To the extent this Request seeks to determine a relationship between Dealership Plaintiffs and any Vendor or Data Extractor, Dealership Plaintiffs direct CDK to these prior responses. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

39

Notwithstanding and subject to these objections, Dealership Plaintiffs will produce documents sufficient to show whether a Vendor or Data Extractor acts, or have ever acted, as Dealership Plaintiffs' agent with respect to accessing Dealership Plaintiffs' own data on a Reynolds or CDK DMS.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and communications related to Your or any Data Extractor's development or installation of any "code-on-the-box" used to access data maintained on any DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the term "code-on-the-box" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" which is not the DMS licensed to an individually named Dealership Plaintiff. Insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 32:**

All contracts and agreements, including drafts, for the provision of DMS services that have been contemplated or in effect during the Relevant Time Period.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "DMS services" which are not for the DMS licensed to an individually named Dealership Plaintiff. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2 and 3 as well as CDK Interrogatory Request No. 2. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 33:**

All documents and communications related to drafting, negotiation, interpretation, or enforcement of contracts or agreements for the provision of DMS services.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "DMS services" which are not for the DMS licensed to an individually

41

named Dealership Plaintiff. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2 and 3 as well as CDK Interrogatory Request No. 2. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 34:**

All documents and communications related to pricing or fees for DMS services, including receipts, invoices and purchase orders.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "DMS services" which are not for the DMS licensed to an individually named Dealership Plaintiff. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2-4 as well as CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

42

**REQUEST FOR PRODUCTION NO. 35:**

All documents and communications related to the terms or conditions in Your DMS contracts and agreements that require "dealers to cede control of their own data" as alleged in the Complaints.

      **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Requests No. 2 and 3 as well as CDK Interrogatory Request No. 2.

      Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 36:**

All documents and communications related to any terms and conditions of any acquisition by You of any DMS, including without limitation any rebates, discounts, promotional monies, or other financial benefits received in connection with the acquisition.

      **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "DMS services" which are not for the DMS licensed to an individual named Dealership Plaintiff. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly

broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2-4 as well as CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 37:**

All documents and communications related to Your needs or requirements regarding the purchase of DMS or any alternative to DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the phrase "needs and requirements" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs additionally object to the phrase "alternatives to DMS" as undefined, calling for guesswork and speculation. Moreover, no part of Dealership Plaintiffs' responses and objections to this or any other Request should be interpreted to imply the existence of any acceptable alternative to a DMS. Dealership Plaintiffs also object to this Request to the extent that it may be interpreted to mean any conversation related to the broad spectrum of business-related activity in a Dealership, this Request is grossly overbroad, not proportional to the needs of this case, and not relevant to any party's claims or defenses in this case. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2-4 as well as CDK Interrogatory Request No. 2.

44

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 38:**

All documents and communications comparing or contrasting (a) DMS products or the sellers of such products or (b) analyzing alternatives to DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, the Request fails to describe the items sought with reasonable particularity: the phrase "DMS products" and "sellers of such products" are undefined and therefore calls for guesswork and speculation.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and communications related to the existence or bounds of the alleged "DMS Market" and the "Dealer Data Integration Market" as those terms are used by the Dealer Class Plaintiffs in the Complaints.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the documents requested are within CDK's own possession, custody, or control. Dealership Plaintiffs note that the existence and bounds of the "DMS Market" and "Dealer Data Integration Market" will be subject to expert opinion and analysis and object so the extent this Request purports to require Dealership Plaintiffs to create any documents in response

45

to this Request or calls for the premature disclosure of such expert opinion and analysis. Dealership Plaintiffs further object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative of other Requests dealing with the evaluation and acquisition of DMS platforms and Dealer Data Integration services, including but not limited to CDK Request Nos. 2-4, 20, 38. Dealership Plaintiffs object to the term "Complaints" to the extent that this includes complaints filed by Dealerships not who are not named Dealership Plaintiffs in the Consolidated Class Action Complaint which is the operative complaint in this litigation. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and communications related to the use of standalone Applications as an alternative to traditional DMS, including but not limited to, the ability to Dealers to enter data directly into an Application in the first instance, bypassing the DMS completely.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. The Request also fails to describe the items sought with reasonable particularity: the phrase "traditional DMS" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a traditional DMS" rather than the DMS licensed to an individually

46

named Dealership Plaintiff. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Requests No. 26and 38.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and communications related to any actual or potential purchase or payment by You for a DMS

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a DMS" rather than the DMS licensed to an individually named Dealership Plaintiff. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2-4 as well as CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 42:**

All documents and communications related to Your decision(s) to acquire or not to acquire any DMS or Application, including Your consideration of any alternative items or products considered.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this

Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a DMS" rather than the DMS licensed to an individually named Dealership Plaintiff. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2-4 as well as CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and communications related to competition with or among any participants in the alleged "DMS Market" or "Data Integration Market," as those terms are used by the Dealer Class Plaintiffs in the Complaints, including all documents related to switching between DMS providers.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the documents requested are within CDK's own possession, custody, or control. Dealership Plaintiffs note that the existence and bounds of the "DMS Market" and "Data Integration Market" will be subject to expert opinion and analysis and object to the extent this Request purports to require Dealership Plaintiffs to create any documents in response to this Request or calls for the premature disclosure of such expert opinion and analysis. Dealership Plaintiffs object to the term "Complaints" to the extent that this includes complaints filed by Dealerships not who are not named Dealership Plaintiffs in the Consolidated Class Action Complaint which is the operative complaint in this litigation. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly

burdensome as it is duplicative and/or cumulative of other Requests, including CDK Request Nos. 1–4, 18, 28, 29, 37, and 38. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 44:**

Agreements, quotes, terms sheets, analyses, and communications (both internal and external) related to any actual or contemplated decision by You to change DMS providers, including but not limited to any documents and communications related to the costs associated with such a change and any reasons for changing or not changing DMS providers.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. The Request also fails to describe the items sought with reasonable particularity: the phrase "or contemplated decision" is grossly overbroad vague, and ambiguous and therefore calls for guesswork and speculation as to the purpose behind any "Agreements, quotes, terms sheets, analyses, and communications (both internal and external)" which may be in the possession of Dealership Plaintiffs. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2, 3,and 38 as well as CDK Interrogatory Request No. 2. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney client privilege, attorney work product doctrine, or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to show all Applications You used during the Relevant Time Period.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 2, 3, and 38 as well as CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 46:**

Market studies, survey data, or any other source of the market share information on all Applications and DMSs used by Dealers.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs note that the existence and bounds of the "Market studies, survey data, or any other source of the market share information on all Applications and DMSs used by Dealers" will be subject to expert opinion and analysis and object to the extent this Request purports to require Dealership Plaintiffs to create any documents in response to this Request or calls for the premature disclosure of such expert opinion and analysis. Dealership Plaintiffs also object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record,

well-known to or readily obtainable by Defendants. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 47:**

All documents related to any analyses comparing Applications (including their functionality, service quality, features, technology, capabilities, pricing, and/or price changes) offered by CDK, Reynolds or other Vendors or otherwise assessing Application competition.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the grounds that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the term "otherwise assessing Application competition" is vague and ambiguous, calling for guesswork and speculation. Finally, Dealership Plaintiffs object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 48:**

All documents and communications related to the length of the contractual term in any agreement between You and CDK or Reynolds.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and

speculation. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Requests No. 2–4 and 32.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 49:**

All documents and communications related to Your policies and practices regarding data security, protection and/or privacy, including as they relate to third-party access to data on any DMS and the storage and encryption of data that You provide to Data Extractors and Vendors from a DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object on the grounds that this Request calls for information not relevant to any claim or defense in this action. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 50:**

All documents and communications related to any audit or analysis of Your data security or data privacy policies and practices or your compliance with any laws concerning data security or data privacy.

      **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request to the extent that Dealership Plaintiffs' "compliance with any laws concerning data security or data privacy" calls for attorney-client privileged communications. Additionally, Dealership Plaintiffs object on the grounds that this Request calls for information not relevant to any claim or defense in this action. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

      Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 51:**

All documents and communications that relate to automotive industry standards or guidance regarding DMS access, data distribution, data scraping, data security, or data privacy, including as provided by the National Automobile Dealers Association or the American International Automobile Dealers Association.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. The Request also fails to describe the items sought with reasonable particularity: the term "automotive industry standards or guidance" is overly broad, vague, and ambiguous, and therefore calls for guesswork and speculation. Dealership Plaintiffs further object on the ground that the terms "data distribution," "data scraping," "data security," and "data privacy," are overly broad, vague, and ambiguous, calling for guesswork and speculation because they are undefined. This Request is especially broad and unduly burdensome to the extent it includes non-DMS data. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case. Dealership Plaintiffs also further object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 52:**

All documents and communications, whether internal or involving a third-party, that discuss or refer to concerns regarding the security of data stored on a DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object on the ground that this Request calls for information not relevant to any claim or defense in this action. Dealership Plaintiffs further

54

object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 53:**

All documents and communications that relate to any actual or potential data security, data breach, or data corruption issue with respect to any DMS or Application, whether used by you or another person, or any other computer system or database.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that "any actual or potential data security, data breach, or data corruption issue with respect to . . . any other computer system or database" is overly broad and unduly burdensome as it is not relevant to any party's claims or defenses in this case. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176,

55

Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Dealership Plaintiffs also further object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 54:**

All documents and communications related to Your data transfer protocols.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the term "data transfer protocols" is undefined and therefore calls for guesswork and speculation. Additionally, Dealership Plaintiffs object on the ground that this Request calls for information not relevant to any claim or defense in this action. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and communications related to any actual or attempted security breach of any DMS system licensed to You, including, but not limited to, any CDK DMS or Reynolds DMS.

**RESPONSE:**  Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the term "security breach" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs also object on the ground that this Request calls for information not relevant to any claim or defense in this action. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Dealership Plaintiffs further object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

57

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 56:**

All communications with a third-party regarding data security or data privacy.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Plaintiffs object to this Request on the ground that it is not limited to data security and data privacy in relation to DMS platforms and is therefore overly broad and unduly burdensome. Additionally, Dealership Plaintiffs object on the grounds that this Request calls for information not relevant to any claim or defense in this action. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Dealership Plaintiffs also further object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 57:**

Documents sufficient to show the form, content, and security features of any "secure web form" that You have used to provide DMS login credentials to any third-party, including Authenticom.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case.Specifically, the Request fails to describe the items sought with reasonable particularity: the term "secure web form" is undefined and therefore calls for guesswork and speculation. Additionally, Dealership Plaintiffs object on the grounds that this Request calls for information not relevant to any claim or defense in this action. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 58:**

All documents and communications related to any cyber liability insurance policy that You carry.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the term "cyber liability" is undefined and therefore calls for guesswork and speculation. Additionally, Dealership Plaintiffs object on the grounds that this Request calls for information not relevant to any claim or defense in

this action. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 59:**

All documents and communications related to any actual of suspected misuse or misappropriation of any data maintained on a DMS.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation Dealership Plaintiffs also object to this Request on the ground that the term "suspected" is vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request on the ground that the phrase "misuse or misappropriation" is vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this request on the ground that "any data maintained on a DMS" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "a DMS" rather than the DMS licensed to an individually named Dealership Plaintiff. Additionally, Dealership Plaintiffs object on the grounds that this Request calls for information not relevant to any claim or defense in this action. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because

60

such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Dealership Plaintiffs object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

### REQUEST FOR PRODUCTION NO. 60:

All documents and communications related to any actual or suspected misuse or misappropriation of any data provided by You to any Data Extractor or Vendor.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the terms "suspected," and "misuse or misappropriation are vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the term "any data" is overly broad, vague, and ambiguous, calling for guesswork and speculation. To the extent this term is intended to encompass non-DMS data, it is not relevant to this case. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks any information concerning any purported

defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 61:**

All documents and communications related to Your or any Data Extractor's protocols for inputting, pushing, or otherwise transferring data into or out of DMSs.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object on the ground that the terms "protocols" and "pushing" are vague and ambiguous, calling for guesswork and speculation. Additionally, Dealership Plaintiffs object on the grounds that this Request calls for information not relevant to any claim or defense in this action. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but

62

not limited to, CDK Request Nos.1–3. Finally, Dealership Plaintiffs object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 62:**

All documents related to any DMS, and which refer to: (a) the 2013 data breach against Target; (b) North Korea's June 2014 cyber attack against Sony Pictures Enterprise; (c) the August 2014 hack into Community Health System's patient information; (d) the 2017 Equifax data breach; (e) Cambridge Analytica's alleged data scraping of Facebook user's information; (f) the 2016 data security event at DealerBuilt that affected New Hampshire residents; or (g) any other attempted or successful cyber attacks or data security breaches.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs additionally object to this Request on the ground that the phrase "All documents related to any DMS, and which refer to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object that this Request is overly broad and irrelevant to the extent it is not limited to CDK and Reynolds DMS platforms. This Request is also overbroad, unduly burdensome, and irrelevant to the extent that it refers to "any DMS" rather than the DMS licensed to an individually named Dealership Plaintiff. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not

cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 63:**

Documents sufficient to show Your investments in or financing related to data security.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the Request fails to describe the items sought with reasonable particularity: the term "data security" is undefined and therefore calls for guesswork and speculation. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome as the documents requested are not relevant to any party's claims or defenses in this case. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 64:**

All documents and communications that refer or otherwise relate to: (a) CDK's or Reynolds's third-party access policies; (b) CDK's SecurityFirst program; and/or (c) CDK's "refreshed" 3PA program.

>    **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "refer or otherwise relate to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the terms "CDK's SecurityFirst program" and "CDK's 'refreshed' 3PA program" are undefined and therefore call for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4, 15, 16, 28 and CDK Interrogatory Request No. 2.. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome to the extent it seeks actual CDK or Reynolds policies or announcements of policies which are within the possession, custody, or control of CDK and Reynolds.

>    Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 65:**

All documents and communications related to the pass-through of 3PA fees from Contracted Data Extractors and Vendors to You or any other Dealer.

>    **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, Dealership Plaintiffs object to this Request as grossly overbroad and unduly burdensome to the extent that it seeks information related to "any other Dealer." Dealership Plaintiffs also

65

object to this Request to the extent that it calls for the premature production of expert reports, analysis, opinions or testimony. Such documents and information will be served in accordance with Case Management Order, ECF No. 166. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request Nos. 1-4.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 66:**

All documents and communication related to fees charge to or paid by You to any Vendor or Data Extractor, including all up-front fees, initial installation fees, and monthly fees.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4 and CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 67:**

All documents and communications that reflect Your awareness of Reynolds's admission into the 3PA program and/or the 3PA fees paid by Reynolds during the Relevant Time Period.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "that reflect" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Additionally, the term "awareness" is overly broad vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4, 15, 16, 28, and CDK Interrogatory Request No. 2. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome to the extent it seeks actual CDK or Reynolds agreements, policies or pricing or announcements of agreements, policies, or pricing which are within the possession, custody, or control of CDK and Reynolds.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 68:**

All documents and communications that reflect Your awareness of CDK's admission into the RCI program and/or the RCI fees paid by CDK during the Relevant Time Period.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "that reflect" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4, 15, 16, 28, and Interrogatory Request No. 2. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome to the extent it

seeks actual CDK or Reynolds agreements, policies or pricing or announcements of agreements, policies, or pricing which are within the possession, custody, or control of CDK and Reynolds.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 69:**

Documents sufficient to show all current and historical prices charged to You by any Vendor or Contracted Data Extractor, including Authenticom, for Data Extraction Services.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Dealership Plaintiffs further object to this Request as overly broad and unduly burdensome to the extent it requests "all current and historical prices charged" with no temporal limit. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4 and CDK Interrogatory Request No. 2. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 70:**

All documents and communications comparing the costs or pricing for Data Extraction Services provided by any Data Extractor, including Authenticom, against CDK's or Reynolds' costs or pricing.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome to the extent it requests comparisons of "CDK's or Reynolds costs or pricing" without limitation to Defendants' costs or pricing for Data Extraction Services. Dealership Plaintiffs also object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Dealership Plaintiffs further object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4 and CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 71:**

All documents and communications related to dissatisfaction with, or problems related to, DealerVault, Authenticom, or any other Data Extractor.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "that reflect" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the terms "dissatisfaction with" and "problems related to" are vague and ambiguous, calling for guesswork and speculation. Additionally, Dealership Plaintiffs object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the

69

Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 72:**

All documents and communications related to any products or services offered by current or former Data Extractors, including but not limited to Authenticom, Superior Integrated Solutions, InDesign Data/1DMS, SelectQu, New Freedom Data Resources, The Stone Eagle Group, and ProQuotes Inc.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "that reflect" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request is as vague, overbroad, unduly burdensome to the extent it seeks documents related to "any products or services offered" which are not Data Extraction Services as such services are irrelevant to this case. Dealership Plaintiffs further object to this Request to the extent that it calls for production of documents within Defendants' own possession, custody or control, or that are of public record, well-known to or readily obtainable by Defendants. Dealership Plaintiffs further object to this Request to the extent that it seeks any information concerning any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws; such information is not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176, Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit."). Finally, Dealership Plaintiffs also object to this Request on the ground that it is overly

broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4 and CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 73:**

All documents and communications related to fees charged by CDK or Reynolds, or received by CDK or Reynolds, for Data Extraction Services.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the Request is overly broad and unduly burdensome to the extent it seeks documentation of the actual fees charged by, and paid to, CDK and Reynolds as such information is within the possession, custody, or control of CDK and Reynolds. Dealership Plaintiffs further object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4 and CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 74:**

All documents and communications related to CDK's Data Extraction Services, including but not limited to documents that reference Digital Motorworks or Integralink.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork

and speculation. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of CDK's other Requests, including but not limited to, CDK Request Nos. 1-4 and CDK Interrogatory Request No. 2.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 75:**

Every document referred to, quoted, paraphrased, or excerpted in the Complaints or the Consolidated Amended Complaint, or otherwise relied upon as the basis for any allegation in either the Complaints or the Consolidated Amended Complaint.

**RESPONSE:** Dealership Plaintiffs object to this Request as overbroad, unduly burdensome, and duplicative. Specifically, this Request is overly broad and unduly burdensome as the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. This Request is further overly broad and unduly burdensome to the extent it seeks documents "referred to, quoted, paraphrased, or excerpted in the Complaints," as the operative complaint is now the Consolidated Class Action Complaint and the referenced documents are irrelevant as to previous complaints. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent such documents exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-publicly available, non-privileged documents referred to, quoted, paraphrased, or excerpted in the Consolidated Class Action Complaint so long as they are not documents previously produced, or filed, by the parties in this litigation.

72

**REQUEST FOR PRODUCTION NO. 76:**

All documents and communication related to any assignment by any other person to You of any claim asserted in the Complaints or the Consolidated Amended Complaint.

     **RESPONSE:** Dealership Plaintiffs object to this Request as overly broad, vague, and ambiguous. Specifically, the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is further overly broad and unduly burdensome to the extent it seeks documents in connection with the Complaints as the operative complaint is now the Consolidated Class Action Complaint and the referenced documents are irrelevant as to previous complaints. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

     Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce documents encompassing any assignment by any other person to any Dealership Plaintiffs of any claim asserted in the Consolidated Class Action Complaint.

**REQUEST FOR PRODUCTION NO. 77:**

All documents and communications related to any assignment by You to any other Person of any claim asserted in the Complaints or the Consolidated Amended Complaint.

     **RESPONSE:** Dealership Plaintiffs object to this Request as overly broad, vague, and ambiguous. Specifically, the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is further overly broad and unduly burdensome to the extent it seeks documents in connection with the Complaints as the operative complaint is now the Consolidated Class Action Complaint and the referenced documents are irrelevant as to previous complaints. Dealership Plaintiffs also object to this

Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce documents encompassing any assignment by Dealership Plaintiffs to any other person of any claim asserted in the Consolidated Class Action Complaint.

**REQUEST FOR PRODUCTION NO. 78:**

All documents and communications related to any contemplated or actual settlement agreements between You and any other person related to any of the claims asserted in the Complaints or the Consolidated Amended Complaint.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overly broad, and unduly burdensome. Specifically, the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Further, this Request is grossly overbroad and unduly burdensome as the documents sought are not relevant to any party's claims and defenses in this case. This Request is additionally unduly burdensome as any Class settlements reached in this case will be presented to the Court in accordance with the Federal Rules of Civil Procedure. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

74

**REQUEST FOR PRODUCTION NO. 79:**

Every document referred to, quoted, paraphrased, or excerpted in Your responses to any interrogatories in this litigation.

     **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, and unduly burdensome. Specifically, the term "referred to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

     Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged, non-publicly available documents quoted, paraphrased, or excerpted in Dealership Plaintiffs' responses to CDK's interrogatories in this litigation for those Interrogatories to which Plaintiffs provide substantive so long as they are not documents previously produced, or filed, by the parties in this MDL litigation.

**REQUEST FOR PRODUCTION NO. 80:**

All documents You received from any non-parties in response to subpoenas, informal discovery requests, or other means in preparation for or connection with this litigation.

     **RESPONSE:** Dealership Plaintiffs object to this Request as overbroad and vague. Specifically, the terms "informal discovery" and "other means in preparation for or connection with this litigation" are overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

75

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, Dealership Plaintiffs will produce documents received from any non-parties in response to subpoenas issued pursuant to this litigation.

**REQUEST FOR PRODUCTION NO. 81:**

All communications, other than communications protected by the attorney-client privilege, between You and any other person regarding any aspect of this litigation.

**RESPONSE:** Dealership Plaintiffs object to this Request as overbroad, unduly burdensome, and duplicative. Specifically, communications "regarding any aspect of this litigation" is grossly overbroad and can include an expansive scope of documents that is unduly burdensome and not proportional to the needs of the case. This Request is overly broad and unduly burdensome as it is duplicative of other Requests, including but not limited to, CDK Request Nos. 2–6, 15, 16, 20, 26, 28-30, 38 and 76–77. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 82:**

All documents and communications relate to any steps or actions taken by You to discover the facts alleged in the Complaints or the Consolidated Amended Complaint.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, a request for "all documents and communications relate to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is overly broad and unduly burdensome as the documents sought are publicly available, have already been produced, or filed, by parties in this litigation, and/or are already within CDK's possession, custody or control. This Request is further overly broad and unduly burdensome to the extent it seeks documents related

76

to the Complaints, as the operative complaint is now the Consolidated Class Action Complaint and such documents are irrelevant as to previous complaints. This Request is overly broad and unduly burdensome as it is duplicative of other Requests, including but not limited to, CDK Request Nos. 3–5, 15, 16, 26–29 and 75. Finally, Dealership Plaintiffs object to this Request to the extent it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 83:**

All documents and communications related to any statement or action by any Defendant or any other person that You contend had the effect of concealing any claims alleged in the Complaints or the Consolidated Amended Complaint.

**RESPONSE:**  Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is overly broad and unduly burdensome as the documents sought are publicly available, have already been produced, or filed, by parties in this litigation, and/or are already within CDK's possession, custody or control. This Request is further overly broad and unduly burdensome to the extent it seeks documents related to the Complaints, as the operative complaint is now the Consolidated Class Action Complaint and such documents are irrelevant as to previous complaints. This Request is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request Nos. 3 and 4. Dealership Plaintiffs also object to this Request to the extent it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from

disclosure. Finally, Dealership Plaintiffs object that this type of "contention" discovery request is improper before substantial discovery has occurred.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 84:**

All documents and communications related to Your suspicion, belief, or claims that any Defendant was engaged in any anticompetitive activity or that competition in any market has been harmed.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is overly broad and unduly burdensome as the documents sought are publicly available, have already been produced, or filed, by parties in this litigation, and/or are already within CDK's possession, custody or control. This Request is also overly broad and unduly burdensome to the extent it seeks documents related to "any anticompetitive activity" or indicating that competition in "any market" was categories include activities and markets which are not at issue in the Consolidated Class Action Complaint and are therefore not relevant to any party's claims or defenses. This Request is further overly broad and unduly burdensome to the extent it seeks documents related to the Complaints, as the operative complaint is now the Consolidated Class Action Complaint and such documents are irrelevant as to previous complaints. This Request is overly broad and unduly burdensome as it is duplicative of other Requests, including but not limited to, CDK Request Nos. 1–5, 15, 16, 20, 26, 28, 29, 38, and 75. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 85:**

All documents and communications that You contend to be evidence of an illegal agreement between CDK and Reynolds

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, this Request is overly broad and unduly burdensome as the documents sought are publicly available, have already been produced, or filed, by parties in this litigation, and/or are already within CDK's possession, custody or control. This Request is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request Nos. 75. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Finally, Dealership Plaintiffs object that this type of "contention" discovery request is improper before substantial discovery has occurred.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 86:**

All communications between You and any other named Plaintiff in this litigation.

**RESPONSE:** Dealership Plaintiffs object to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, duplicative, and seeking information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, this Request is overly broad and unduly burdensome as it calls for information, including "all communications" regarding any subject matter, even that which is not relevant to any party's claims or defenses in this case. Dealership

Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 87:**

All communications between You and any government agency related to CDK, Reynolds, Your claims and allegations, or this litigation.

**RESPONSE:** Dealership Plaintiffs object to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, and duplicative. Specifically, Dealership Plaintiffs object to this Request on the ground that it is vague, overly broad, and unduly burdensome as to communications concerning CDK and Reynolds, Dealership Plaintiffs' claims and allegations, "or" this litigation. Dealership Plaintiffs further object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request because the term "any government agency" is overly broad, vague, and ambiguous. This Request is also overly broad and unduly burdensome to the extent the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Finally, insofar as the Request seeks documents relevant to any purported defenses that Dealership Plaintiffs or their agents violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, or other cyber-security laws, the documents are not relevant because such defenses are not cognizable. *See* Memorandum Opinion and Order at 18, *Authenticom, Inc. v. CDK Global, LLC*, ECF No. 176,

Case No. 18-CV-864 (N.D. Ill. May 14, 2018) ("Courts have generally held that a plaintiff's wrongdoing is not a defense to an antitrust suit.").

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-publicly available, non-privileged communications between Dealership Plaintiffs and any government agency related to the claims set forth in the Consolidated Class Action Complaint.

**REQUEST FOR PRODUCTION NO. 88:**

All documents and communications related to any complaint to, or investigation by, any government agency concerning CDK or Reynolds, including all documents that You have provided to any government agency in connection with such complaint or investigation, either voluntarily or pursuant to a Civil Investigative Demand or other legal process.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information that is not relevant to any party's claims or defenses and is thus beyond the scope of permissible discovery. Specifically, the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is also overly broad and unduly burdensome as to complaints or investigations by government agencies concerning CDK and Reynolds, but not dealing with the claims asserted in this case. This Request is also overly broad and unduly burdensome to the extent the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and

81

valid grounds for withholding from disclosure. Finally, this Request is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request No. 87.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-publicly available, non-privileged documents that Dealership Plaintiffs have provided to any government agency in connection with a government complaint or investigation pertaining to the claims set forth in the Consolidated Class Action Complaint.

**REQUEST FOR PRODUCTION NO. 89:**

All documents and communications related to any presentations that You have prepared or given that refer to CDK or Reynolds, Your claims and allegations or this litigation.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case, and seeking information that is not relevant to any party's claims or defenses and is thus beyond the scope of permissible discovery. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the term "presentations" is vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request as overly broad and unduly burdensome as to references to CDK and Reynolds but not dealing with the claims asserted in this case. Dealership Plaintiffs also object that this Request is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request Nos. 3, 4, 15, 16, and 29. Finally, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-publicly available, non-privileged documents and communications relating to presentations Dealership Plaintiffs have prepared or given dealing with Dealership Plaintiffs' claims as asserted in the Consolidated Class Action Complaint.

**REQUEST FOR PRODUCTION NO. 90:**

All notes or minutes of any meetings of Your board of directors, shareholders, or investors that refer to CDK or Reynolds, Your claims and allegations, or this litigation.

**RESPONSE:** Dealership Plaintiffs object to this Request on the ground that the term "notes" is vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome to the extent such notes or minutes refer to CDK and Reynolds, but do not concern any claim, allegation or defense at issue in this case. Dealership Plaintiffs further object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-privileged minutes of any meetings of Dealership Plaintiffs' boards of directors, shareholders, or investors that deal directly with Dealership Plaintiffs' claims asserted in the Consolidated Class Action Complaint.

83

**REQUEST FOR PRODUCTION NO. 91:**

All documents and communications related to Your alleged injuries or damages.

**RESPONSE:** Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs also object to the extent that it calls for the premature production of expert reports, analysis, opinions or testimony. Such documents and information will be served in accordance with the schedule set forth in the Court's Case Management Order, ECF No. 166. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request No. 4.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 92:**

Documents sufficient to show Your policies concerning the preservation, retention, storage, or destruction of any documents or ESI.

**RESPONSE:** Dealership Plaintiffs object to the term "any documents" which is overly broad, vague, and ambiguous, calling for guesswork and speculation.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, Dealership Plaintiffs will produce non-privileged documents in response to this Request.

84

**REQUEST FOR PRODUCTION NO. 93:**

Documents sufficient to show Your organizational structure from January 1, 2013 to the present, including the identity of all officers, employees, investors, partners, owners, shareholders, or principals with management-level authority.

     **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, not proportional to the needs of the case. Specifically, to the extent that this Request seeks the creation of any original document for the purpose of responding to this Request, it is vague, overbroad, unduly burdensome and not proportional to the needs of the case. Dealership Plaintiffs also object to this Request as overly burdensome to the extent it requires disclosure of "all officers, employees, investors, partners, owners, shareholders" with or without "management level authority." Finally, the Request also fails to describe the items sought with reasonable particularity: the term "management-level authority" is overly broad, vague, and ambiguous because it is undefined.

     Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, Dealership Plaintiffs will produce organizational charts sufficient to show Dealership Plaintiffs' organizational structure from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 94:**

All documents provided to You by any non-party that are related to this litigation or otherwise responsive to these Requests, whether pursuant to a subpoena or otherwise.

     **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Dealership Plaintiffs object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs object to the phrase "any non-party" as grossly overbroad and burdensome. Dealership Plaintiffs object to the phrase "or otherwise responsive" as vague, grossly overbroad and

burdensome. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of *all* other Requests.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 95:**

All documents related to the February 15, 2015 agreements between CDK and Rynolds described in the Complaints, including all documents that reflect Your awareness of the agreements or any terms of the agreements.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the terms "related to" and "your awareness" are overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is also overly broad and unduly burdensome to the extent the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. Dealership Plaintiffs also object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs further object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request No.75. Finally, Dealership Plaintiffs object to the term "Complaints" to the extent that this includes complaints filed by Dealerships not who are not named Dealership Plaintiffs in the Consolidated Class Action Complaint which is the operative complaint in this litigation.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 96:**

All documents that reflect coordinated conduct by CDK and Reynolds with respect to third-party DMS access programs, policies, business practices, strategy, or pricing, or that otherwise relate to Your claims that CDK has engaged in any illegal or anticompetitive activity or that competition in any market has been harmed.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "otherwise relate to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. This Request is also overly broad and unduly burdensome to the extent the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. Dealership Plaintiffs object that this type of "contention" discovery request is improper before substantial discovery has occurred. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative of other Requests, including but not limited to, CDK Request No. 75.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 97:**

All communications with Authenticom or its counsel regarding the subject matter of this Litigation or the action that Authenticom filed against CDK and Reynolds in the United States District Court for the Western District of Wisconsin, Case No. 17-cv-318-jdp.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work

87

product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs also object to this Request on the ground that the term "regarding the subject matter of" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object on the ground that the term "this Litigation" is not defined as a special term and is therefore vague and ambiguous. Dealership Plaintiffs understand this term in this context to refer to the case brought against CDK and Reynolds by the Dealership Plaintiffs. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it calls for information that is not relevant to any party's claims or defenses in this case.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-publicly available, non-privileged communications with Authenticom regarding the action that Authenticom filed against CDK and Reynolds in the United States District Court for the Western District of Wisconsin, Case No. 17-cv-318-jdp, not including documents previously produced, or filed, by the parties in this litigation

**REQUEST FOR PRODUCTION NO. 98:**

All communications with Cox or its counsel regarding the subject matter of this Litigation or the action that Cox filed against CDK on December 11, 2017, in the United States District Court for the Western District of Wisconsin, in case number 17-cv-925.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs also object to this Request on the ground that the term "regarding the subject

matter of" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object on the ground that the term "this Litigation" is not defined as a special term and is therefore vague and ambiguous. Dealership Plaintiffs understand this term in this context to refer to the case brought against CDK and Reynolds by the Dealership Plaintiffs. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it calls for information that is not relevant to any party's claims or defenses in this case.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-publicly available, non-privileged communications with Cox regarding the action that Cox filed against CDK on December 11, 2017, in the United States District Court for the Western District of Wisconsin, in case number 17-cv-925, not including documents previously produced, or filed, by the parties in this litigation

**REQUEST FOR PRODUCTION NO. 99:**

All communications with AutoLoop or its counsel regarding the subject matter of this Litigation or the action that AutoLoop filed against CDK on April 9, 2018, in the United States District Court for the Western District of Wisconsin, in case number 18-cv-02521.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs also object to this Request on the ground that the term "regarding the subject matter of" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object on the ground that the term "this Litigation" is not defined as a special term and is therefore

vague and ambiguous. Dealership Plaintiffs understand this term in this context to refer to the case brought against CDK and Reynolds by the Dealership Plaintiffs. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it calls for information that is not relevant to any party's claims or defenses in this case.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce non-publicly available, non-privileged communications with AutoLoop regarding the action that AutoLoop filed against CDK on April 9, 2018, in the United States District Court for the Western District of Wisconsin, in case number 18-cv-02521, not including documents previously produced, or filed, by the parties in this litigation

**REQUEST FOR PRODUCTION NO. 100:**

All communications with any putative class members regarding the subject matter of this litigation.

**RESPONSE:** Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs further object to this Request on the ground that the term "regarding the subject matter of" is grossly overbroad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object on the ground that the term "this Litigation" is undefined and therefore vague and ambiguous. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it calls for information that is not relevant to any party's claims or defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

90

**REQUEST FOR PRODUCTION NO. 101:**

All documents and communications related to the alleged tying by CDK and Reynolds of DMS services to Data Extraction Services.

      **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not proportional to the needs of the case. Dealership Plaintiffs object to this Request to the extent that it seeks documents that are protected by the attorney-client privilege, attorney work product doctrine, common interest privilege or any other available and valid grounds for withholding from disclosure. Dealership Plaintiffs also object to this Request on the ground that the term "related to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request as overly broad and unduly burdensome to the extent the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. Dealership Plaintiffs object that this type of "contention" discovery request is improper before substantial discovery has occurred. Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it calls for information that is not relevant to any party's claims or defenses in this case as Dealership Plaintiffs have not alleged a tying claim in their Consolidated Class Action Complaint.

      Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 102:**

All documents and communications that relate to or mention CDK or CDK's DMS, CDK's third-party access program, business practices, policies, strategy or pricing.

      **RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "relate to" is overly broad, vague, and ambiguous, calling for guesswork

and speculation. Dealership Plaintiffs further object to this Request on the ground that the terms "business practices," "policies," and "strategy," are overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome to the extent the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request Nos. 15, 16, 20, 28, 29, 38, 75, 87–90, and 97–100.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 103:**

All documents and communications that relate to or mention Reynolds or Reynolds' DMS, Reynolds' third-party access program, business practices, policies, strategy or pricing.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "relate to" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request on the ground that the terms "business practices," "policies," and "strategy," are overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request as overly broad and unduly burdensome to the extent the documents sought are publicly available, already within the possession, custody or control of CDK and Reynolds, and/or have already been produced by one of the parties in this litigation. Finally, Dealership Plaintiffs object to this Request on the ground that it is overly broad and unduly burdensome as it is

duplicative and/or cumulative of other Requests, including but not limited to, CDK Request Nos. 15, 16, 20, 28, 29, 38, 75, 87-90, and 97-99.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 104:**

All documents and communications that related to or mention Authenticom, Steve Cottrell, DealerVault, Superior Integrated Solutions, InDesign Data/1DMS, SelectQu, New Freedom Data Resources, The Stone Eagle Group, ProQuotes Inc., or any other current or former Data Extractors.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, duplicative, and not at all proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the terms "relate to" and "mention" are overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs Dealership Plaintiffs also object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative of other Requests, including but not limited to, CDK Request No. 1–4, 15, 16, 28, 29, 75, 79, and 97.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 105:**

Documents sufficient to explain the full meaning of all terms, codes, and abbreviations in all data You produce.

**RESPONSE:** Dealership Plaintiffs object to this Request as vague, overbroad, unduly burdensome, and not at all proportional to the needs of the case. Specifically, to the extent that this Request seeks the creation of any original document for the purpose of responding to this Request, it is vague, overbroad, unduly burdensome and not proportional to the needs of the case. Dealership Plaintiffs object to this Request on the ground that the term "full meaning" is overly broad, vague, and ambiguous, calling for guesswork and

speculation. Dealership Plaintiffs also object to this Request on the ground that the term "codes" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs further object to this Request on the ground that the term "data" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome to the extent the information sought is in a form compiled on Defendants' DMSs, and therefore such definitions are already within the possession, custody or control of CDK and Reynolds

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce documents sufficient to define the terms, codes, and abbreviation in all data produced by Dealership Plaintiffs.

**REQUEST FOR PRODUCTION NO. 106:**

All of Your audited and un-audited financial statements, financial reports, and balance sheets.

**RESPONSE:** Dealership Plaintiffs object to this Request as overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case, as information sought is not relevant to the claims or defenses in this case and thus is beyond the scope of permissible discovery. To the extent this request seeks financial information regarding what Dealership Plaintiffs have paid for DMS and Data Extraction Services, Dealership Plaintiffs will be producing such documents pursuant to other Requests. Dealership Plaintiffs therefore object to this Request on the ground that it is overly broad and unduly burdensome as it is duplicative and/or cumulative of other Requests, including but not limited to, CDK Request No. 14. Finally, to the extent this Request seeks further financial information from Dealership Plaintiffs, such information is not relevant to the claims and defenses in this case.

Based on the foregoing objections, Dealership Plaintiffs will not produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 107:**

Documents sufficient to show Your predecessor or successor entities in existence during the Relevant Period, including the dates of any such combinations, mergers, divestitures, spin-offs, sales or other transactions, and the identities of all predecessor.

**RESPONSE:** Dealership Plaintiffs object to this Request as overbroad, unduly burdensome, duplicative, and not proportional to the needs of the case. Specifically, Dealership Plaintiffs object to this Request on the ground that the term "combinations" is overly broad, vague, and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs also object to this Request on the ground that the term "other transactions" vague and ambiguous, calling for guesswork and speculation. Dealership Plaintiffs do not understand this term in this context to have any independent meaning from "mergers, divestitures, spin-offs, [or] sales." Dealership Plaintiffs further object to this Request on the ground that the term "and the identities of all predecessor" vague and ambiguous, calling for guesswork and speculation, and nonsensical in this context. Dealership Plaintiffs also object to this Request as overbroad, unduly burdensome, not proportional to the needs of the case, as any information regarding entities other than those holding claims is not relevant to the claims or defenses in this case and thus is beyond the scope of permissible discovery. Finally, Dealership Plaintiffs object to this Request as overly broad and unduly burdensome to the extent it seeks information regarding predecessor or successor entities involving transactions that occurred before the Relevant Period.

Subject to and without waiving these or their General Objections or Objections to Definitions and Instructions, Dealership Plaintiffs state that to the extent they exist, and are within Dealership Plaintiffs' possession, custody, and control, and can be identified through a reasonable search of appropriate sources, Dealership Plaintiffs will produce documents sufficient to show Dealership Plaintiffs' predecessor or successor entities in existence during the Relevant Period.

95

Dated: June 22, 2018             Respectfully submitted,

                                     */s/ Peggy J. Wedgworth*_____
                                     Peggy J. Wedgworth
                                     Elizabeth McKenna
                                     **MILBERG TADLER PHILLIPS GROSSMAN LLP**
                                     One Pennsylvania Plaza, 19th Floor
                                     New York, NY 10119
                                     (212) 594-5300
                                     pwedgworth@milberg.com
                                     emckenna@milberg.com

                                     *Dealership Interim Lead Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing Dealership Class Plaintiffs' Responses and Objections to Defendant CDK Global, LLC's First Requests for the Production of Documents to be served by email upon the following recipients:

CDK-MDL-Team@mayerbrown.com

*/s/ John Hughes*
John Hughes

# EXHIBIT 54
# (REDACTED)

# EXHIBIT 55
# (REDACTED)

# EXHIBIT 56

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | )  )  )  ) | MDL No. 2817 Case No. 18 C 864 |
| *THIS DOCUMENT APPLIES TO:* | )  )  ) | Hon. Amy J. St. Eve |
| *Motor Vehicle Software Corp. v. CDK Global, Inc.,* No. 1:18-cv-865 (N.D. Ill.) | )  ) | |

### DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants The Reynolds and Reynolds Company, CDK Global, Inc. and Computerized Vehicle Registration hereby request that Plaintiff Motor Vehicle Software Corporation in the above-captioned matter produce for inspection and copying each of the documents and other things described below at the offices of Sheppard Mullin Richter & Hampton LLP, Attn: Leo Caseria, 333 S. Hope St., 43rd Floor, Los Angeles, California, 90071, within thirty (30) days after the date of the service hereof.

### DEFINITIONS

1.      The terms "MVSC," "you," and "your" mean Plaintiff Motor Vehicle Software Corporation, and any related companies, divisions, or subsidiaries, past or present, including, without limitation, the directors, officers, employees, agents, or attorneys thereof.

2.      The term "Reynolds" means Defendant The Reynolds and Reynolds Company and includes the directors, officers, employees, agents, or attorneys thereof.

3.      The term "CDK" means Defendant CDK Global, Inc. and includes the directors, officers, employees, agents, or attorneys thereof.

-1-

4.      The term "CVR" means Defendant Computerized Vehicle Registration and includes the directors, officers, employees, agents, or attorneys thereof.

5.      The term "Defendants" refers to Reynolds, CDK and CVR.

6.      The term "Authenticom" means Authenticom, Inc. and includes the directors, officers, employees, agents, or attorneys thereof.

7.      The term "complaint" shall refer to the operative complaint in the above-captioned matter.

8.      The term "DMS" means enterprise systems known in the industry as Dealer Management Systems, including hardware and software, and further including any databases or data relating thereto.

9.      The term "EVR" means electronic vehicle registration and titling services for automobiles sold at dealerships.

10.     The term "independent data integrator" has the same meaning ascribed to it in the complaint in the above-captioned action and includes Authenticom

11.     The terms "Dealer Data Integration Market" and "data integration market" are used interchangeably and have the same meaning set forth in the complaint in the above-captioned action.

12.     The term "vendor" has the same meaning ascribed to it in the complaint in the above-captioned action and includes MVSC.

13.     The term "RCI" means the Reynolds Certified Interface program offered by Reynolds.

14.     The term "3PA" means the Third Party Access program offered by CDK.

15. The terms "and," "or," and "and/or" include any item or combination of items identified in a request, and shall not be interpreted to exclude any information otherwise within the scope of a request.

16. The term "any" means one, some, or all of whatever quantity.

17. The term "including" means including, but not limited to.

18. The terms "document" or "documents" are used herein in their broadest possible sense and refer, without limitation, to all written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications or records of every kind and description, whether comprised of letters, words, numbers, pictures, sounds, or symbols, or any combination thereof, whether prepared by hand or by mechanical, electronic, magnetic, photographic, or other means, and including audio or video recordings of communications, occurrences or events. This definition includes, but is not limited to, any and all of the following: correspondence, notes, laboratory notebooks, research materials, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, invoices, orders, acknowledgements, receipts, bills, statements, checks, check registers, financial statements, journals, ledgers, appraisals, reports, forecasts, compilations, schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, newspaper clippings, tables, tabulations, financial packaging, plans, photographs, pictures, film, microfilm, microfiche, computer-stored or computer-readable data, computer programs, computer printouts, telegrams, telexes, telefacsimiles, tapes, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained. The terms "document" and "documents" shall include all preliminary versions, drafts or revisions of the foregoing, and all copies of a document shall be produced to the extent that the copies differ from the document produced due to notations, additions, insertions,

comments, enclosures, attachments or markings of any kind. Further, the terms "document" and "documents" shall include, without limitation, those categories as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, specifically, writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form and electronically stored information.

19. The term "things" means any tangible item, including without limitation, models, prototypes and samples of any device or apparatus or product.

20. The term "person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

21. The term "communication" means all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, advertisements, and all other documents evidencing any verbal or nonverbal interaction between or among persons and/or entities.

22. The term "agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons and/or entities.

23. The terms "concerning," "related to," or "relating to" shall be construed in the broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical or factual connection whatsoever with the subject addressed.

24.     The term "dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer.

25.     The term "dealer's association" refers to any association, formal or informal, of dealers of new or used automobiles, trucks, motorcycles, marine vehicles, recreational vehicles, or heavy equipment.

26.     When referring to a person, "identity" or "identify" means, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

27.     When referring to a document, "identity" or "identify" means, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

## INSTRUCTIONS

28.     In responding to these requests, you are required to furnish all information that is available to you or subject to your reasonable inquiry, including information in the possession of your attorneys, accountants, advisors, representatives, agents, or other persons directly or indirectly employed by, or connected with, you or your attorneys, and anyone else otherwise subject to your control.  All documents that respond, in whole or in part, to any portion of the requests below shall be produced in their entirety, including all attachments and enclosures.

29.     In construing these requests, the plural shall include the singular and the singular shall include the plural; a masculine, feminine, or neuter term shall include all other genders; the terms "or," "and," "and/or," and "including" shall be construed inclusively rather than

exclusively so as to bring within the scope of the request that which otherwise might be construed as being outside the scope of said request; and the terms "all" and "any" shall be interpreted inclusively so as to mean both "all" and "any" whenever either term is used.

30. If you contend that any documents sought by these discovery requests are privileged or otherwise protected from discovery, you must nevertheless identify for each document withheld:

      a. the legal basis for withholding the document;

      b. the person asserting any claim of privilege and/or protection;

      c. a description and identification of the requested document sufficient to frame an appropriate demand for the document and a motion to compel disclosure thereof, setting forth at least the following:

            i. the author and/or signatory of the document withheld;

            ii. the date of the document withheld;

            iii. all addressees and/or recipients of the document withheld; and

            iv. the subject matter and circumstances under which the document withheld was created in sufficient detail to ascertain applicability of the privilege or other legal basis asserted.

31. Notwithstanding a claim that a portion of a document is privileged or otherwise protected from disclosure, any such document must be produced with the portion claimed to be protected excised.

32. Any responsive electronically stored information shall be produced in accordance with protocols agreed upon by the parties or as otherwise directed by the Court.

33.    If there are no documents or things responsive to a particular request, you should so state in writing.  If any responsive document has been lost or destroyed, identify:

     a.  the author;

     b.  the date of loss or destruction;

     c.  the reason for loss or destruction;

     d.  the identity of those directing the destruction, if any; and

     e.  the substance of the document.

34.    If a refusal to provide documents responsive to any request is asserted on the grounds of burden, state in detail the reason(s) for any objection(s), including the number and nature of documents or records needed to be searched and/or produced, the location of the documents, the custodian of the documents, and the number of person hours and costs required to conduct the search.

35.    If you contend that any document request is ambiguous or unclear, contact undersigned counsel as soon as possible so that the request can be clarified to avoid unnecessary delays in discovery.

36.    Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you are required to supplement and correct your answers and responses on a timely basis.

37.    Unless otherwise indicated, the time period applicable to these requests is January 1, 2013 forward.

## <u>REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS</u>

1.    Without limitation as to time, all documents relied on, used, considered, reviewed, or consulted by you to draft your complaint or any prior version of your complaint, including any

documents or communications referenced or quoted in your complaint or any prior version of your complaint, and including all materials referenced in paragraph 18 of your complaint.

2.      Without limitation as to time, all documents relating to the allegations in your complaint and the claims you are asserting against Defendants, including, but not limited to: (1) your claim that Defendants have engaged in anticompetitive conduct; (2) your claim that Defendants have injured you; and (3) your claim that Defendants have harmed competition.

3.      Without limitation as to time, all documents relating to your allegations that Defendants have unlawfully conspired, including, but not limited to: (1) documents relating to the participants in each alleged conspiracy; (2) documents relating to the purpose and effect of each alleged conspiracy; (3) documents relating to when each alleged conspiracy was formed and how each alleged conspiracy was enforced.

4.      All documents supporting your allegations in paragraphs 11 and 100 of your complaint that a conspiracy by Defendants to block MVSC was in existence by at least by January 2014.

5.      All documents sufficient to show the EVR products and services offered by MVSC, and the associated prices and costs for those products and services.

6.      All documents sufficient to show MVSC's EVR customers, the EVR products and services they purchased from MVSC, and the associated prices, costs and other terms and conditions for those products and services.

7.      All documents referring to MVSC's EVR competitors, or competition between or among EVR providers, including any type of competitive intelligence report or assessment.

8.      All documents referring to products or services offered by other EVR providers, including any type of competitive intelligence report or assessment.

9. All documents relating to MVSC's marketing and business plans for its Vitu product.

10. All documents identifying the participants in the California and Illinois EVR markets.

11. All documents relating to the EVR market share for MVSC and its competitors, in each state where MVSC provides EVR services, including changes over time.

12. All documents sufficient to show how MVSC became the EVR market leader in California, Oregon, or any other market where MVSC holds the greatest EVR market share.

13. All documents sufficient to show when MVSC entered or exited any EVR market in any state.

14. All documents relating to any analysis, evaluation, assessment, communication or discussion of whether to enter or exit, or to not enter or not exit, any EVR market, and the reasons therefor.

15. All documents sufficient to identify all dealers that that have switched from using CVR to using MVSC for EVR, or vice versa (by dealer name, the effective date of the switch, and the number of stores switched), and documents relating to reasons for the switch.

16. All documents relating to the reasons why any customer or potential customer selects one EVR provider over another.

17. All documents referring to complaints about any EVR provider, including but not limited to complaints by your dealer customers regarding the functionality or capabilities of your products and services.

18. If you contend that MVSC offers EVR products or services that are superior to those offered by CVR, all documents supporting your contention.

19.     All contracts or agreements with dealers relating to your EVR services or products.

20.     All communications and documents exchanged between you and any other EVR provider.

21.     All documents referring or relating to CVR's acquisition of AVRS, Inc., including the acquisition's potential impact on MVSC or competition in any EVR market.

22.     All documents referring to Reynolds, CDK or CVR related to EVR.

23.     All communications and documents exchanged between you and Reynolds, CDK, or CVR.

24.     All documents and communications relating to negotiations between you and Reynolds or CDK concerning RCI or 3PA access, including documents showing terms, conditions, or prices that were offered, and any responses, counter-offers or rejections, including reasons therefor.

25.     All documents relating or referring to the RCI or 3PA program, including pricing, security protocols, and any terms of access.

26.     All documents and communications referring or relating to your applications or requests to participate in RCI or 3PA.

27.     All documents relating any analysis, evaluation, assessment, communication or discussion of access to dealership data through RCI or 3PA as compared to any other method, such as access through an independent data integrator or directly from a dealership.

28.     All documents referring or relating to complaints about Reynolds, RCI, CVR, CDK or 3PA, including but not limited to complaints by your dealer customers.

29.     All documents referring or relating to efforts by CVR to acquire your EVR customers in any state.

30.     All documents referring or relating to efforts by you to acquire CVR's EVR customers in any state.

31.     All documents referring or relating to your application to be an EVR provider in Oregon.

32.     All documents referring or relating to the assertion in paragraph 107 of your complaint that CVR has "generat[ed] hundreds of millions of dollars" for CDK and Reynolds.

33.     All documents referring or relating to CVR board meetings.

34.     All documents relating to your contention that Reynolds or CDK threatened dealers.

35.     All documents and communications referring or relating to your access to data from a Reynolds DMS or CDK DMS other than through RCI or 3PA.

36.     All documents and communications referring or relating to your access to data through a third-party program offered by a DMS provider other than Reynolds or CDK, including but not limited to Dealertrack and Advent.

37.     All documents and communications referring or relating to your application to participate in a third-party program offered by a DMS provider other than Reynolds or CDK, including but not limited to Dealertrack and Advent.

38.     All documents and communications relating to your allegations that Reynolds or CDK offered MVSC a rate for RCI or 3PA that was anticompetitive, exorbitant, inflated, unjustified, or impossible for MVSC to pay.

39.     All documents referring to the scope of any DMS market that Reynolds or CDK allegedly participates in, the participants in that market, their market shares, and/or changes to those market shares over time.

40.     All documents referring or relating to DMS competition or competitors.

41.     All documents supporting your allegation that it is difficult for a dealer to switch DMS providers.

42.     All documents referring to any independent data integrator, including the directors, officers, employees, agents, or attorneys thereof.

43.     All documents referring to the legality or illegality of any conduct by any independent data integrator, including Authenticom.

44.     All documents reflecting the extent to which MVSC knew or intended that any independent data integrator was accessing or would access a Reynolds DMS or CDK DMS without authorization from Reynolds or CDK.

45.     All documents referring to any independent data integrator's ability or inability to access a Reynolds DMS or CDK DMS.

46.     All documents referring to Defendants' efforts to prevent any independent data integrator from accessing a Reynolds DMS or CDK DMS, including any documents relating to perceived or purported changes in any such efforts.

47.     All communications and documents exchanged between you and any independent data integrator, including but not limited to Authenticom.

48.     All documents referring to competition between or among independent data integrators.

-12-

49.    All documents relating to complaints about independent data integrators or their products or services.

50.    All documents relating to security or privacy issues, policies, practices or concerns relating to access of DMS data through independent data integrators.

51.    All documents relating to the scope of any data integration market, the participants in any such market, their market shares, and/or changes to those market shares over time.

52.    All documents relating to the geographic markets served by any independent data integrator.

53.    All documents sufficient to show the products or services provided to you by any third party data integrator, including Authenticom, and the associated prices and costs for those products and services.

54.    All documents sufficient to show payments made by you to any independent data integrator, or received by you from any independent data integrator.

55.    All documents sufficient to show when you started or stopped using any independent data integrator, and the reasons therefor.

56.    Your contracts or agreements with any independent data integrator.

57.    All documents and communications relating to MVSC's data security or cybersecurity policies, guidelines, and practices.

58.    All documents or communications relating to your internal or external security audits, including those described in paragraph 204 of your complaint

59.    All documents reflecting, containing or referring to DMS logins and passwords for a Reynolds DMS or CDK DMS.

-13-

60.     All documents and communications relating to any data breach, system breach, or hack suffered by or thwarted by MVSC.

61.     All documents and communications relating to any data security or cybersecurity training provided to MVSC employees.

62.     All documents or communications reflecting MVSC's policies and practices with respect to handling or use of login and password information, whether for its own system or the systems of third parties.

63.     All documents or communications relating to the following allegation at paragraph 204 of your complaint: "MVSC maintains the highest-level security with respect to all sensitive, confidential data."

64.     All documents identifying the type of data or information MVSC needs from a Reynolds DMS or CDK DMS in order to provide EVR services.

65.     All documents identifying the type of data or information MVSC actually obtains from a Reynolds DMS or CDK DMS through independent data integrators.

66.     All documents and communications exchanged between MVSC and dealers describing how MVSC accessed or planned to access the DMS system for that dealer in order to provide services.

67.     All of MVSC's competitive analyses, strategic plans, long-range plans, business plans, marketing plans, and forecasts, and any documents referring or relating to these materials.

68.     All documents sufficient to show MVSC's monthly, quarterly and annual sales revenue and profits related to MVSC's EVR products and services, from their first sale to the present, with sufficient detail to show for each product or service: (a) the product name, number, or other identifier; (b) the amount of revenue and profits earned as a result of sale; (c) the

business division responsible for the sale; (d) the distribution channel for the sale; (e) the region where the sale occurred; and (f) the customer name.

69.     All documents sufficient to show MVSC's monthly, quarterly and annual expenses related to MVSC's EVR products and services, from their first sale to the present, with sufficient detail to show: (a) the product name, number, or other identifier related to the expenses; (b) the type of expense (e.g., taxes including excise taxes, selling expenses, marketing expenses, research & development expenses, overhead, legal expenses, royalty expenses); (c) the nature of the expense (e.g., fixed, semi-fixed or variable); (d) the business division related to the expense; (e) the distribution channel related to the expense; (e) the region where the expense was incurred; and (f) the customer name related to the expense.

70.     All documents sufficient to show MVSC's EVR profits and profit margins, by month and by customer.

71.     All forecasts or projections relating to MVSC's EVR products and services.

72.     All documents, such as organizational charts, sufficient to identify MVSC's corporate structure and reporting structure, including identifying all of MVSC's officers, directors, managers, and department heads.

73.     All documents referring or relating to any damages or other harm you claim to have suffered and for which you seek any form of recovery in this action, including documents sufficient to quantify the amount of any such damages, restitution or other harm or relief.

74.     All documents referring or relating to the February 2015 "Wind Down Access Agreement" referenced in your complaint.

75.     All documents or communications exchanged with or referring to Steve Cottrell.

76.     All documents or communications exchanged with or referring to Data Software Services, LLC or eLead, including the directors, officers, employees, agents, or attorneys thereof.

77.     All documents showing when and how you first became of aware of any of the facts alleged in your complaint or any prior version of your complaint.

78.     All documents reflecting statements or communications regarding any of the claims or allegations in your complaint, any of the claims or allegations in the cases that have been consolidated within the above-captioned matter (*In re Dealer Management Systems*, MDL No. 2817 (N.D. Ill.)), or any government investigation relating to the claims or allegations in the above-captioned matter.

79.     Without limitation as to time, all communications or documents that you sent to or received from the Federal Trade Commission or U.S. Department of Justice relating to Defendants, Authenticom, the EVR market, the DMS market, or the data integration market.

80.     All documents referenced or identified in your responses to Defendants' interrogatories.

Dated:  May 25, 2018                    Respectfully submitted,

                                        */s/ Aundrea K. Gulley*
                                        Aundrea K. Gulley
                                        Kathy D. Patrick
                                        Brian T. Ross
                                        Brice A. Wilkinson
                                        Ross A. MacDonald
                                        GIBBS & BRUNS LLP
                                        1100 Louisiana Street, Suite 5300
                                        Houston, TX 77002
                                        (713) 751-5258
                                        agulley@gibbsbruns.com
                                        kpatrick@gibbsbruns.com
                                        bross@gibbsbruns.com
                                        bwilkinson@gibbsbruns.com

rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and
Reynolds Company*

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendants
CDK Global, Inc. and
Computerized Vehicle Registration*

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2018, I caused a true and correct copy of the foregoing

Defendants' First Set of Requests for Production to be served by email upon the following

individuals:

Michael N. Nemelka (mnemelka@kellogghansen.com)
Derek T. Ho (dho@kellogghansen.com)
Joshua Hafenbrack (jhafenbrack@kellogghansen.com)
Jennifer L. Gregor (jgregor@gklaw.com)
Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
CDK-MDL-Team@mayerbrown.com
DMSTeam@milberg.com


*/s/ Leo D. Caseria*
Leo D. Caseria

# EXHIBIT 57

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates to: | Hon. Robert M. Dow, Jr. |
| *Motor Vehicle Software Corporation v. CDK Global, Inc., et al.* Case No. 1:18-cv-865 (N.D. Ill.) | |

**MOTOR VEHICLE SOFTWARE CORPORATION'S OBJECTIONS AND RESPONSES
TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Motor

Vehicle Software Corporation ("MVSC") hereby serves these Objections and Responses to

Defendants The Reynolds and Reynolds Company ("Reynolds"), CDK Global, Inc. ("CDK"), and

Computerized Vehicle Registration's ("CVR") (collectively "Defendants") First Set of Requests

for Production. MVSC reserves the right to supplement its responses or document production if it

learns of additional information or responsive documents. Any production of documents is subject

to the Agreed Confidentiality Order ("Protective Order") and the Stipulated Order Re: Discovery

of Electronically Stored Information ("ESI Protocol") entered by the Court in this case.

## GENERAL OBJECTIONS AND RESPONSES

MVSC makes the following general objections to Defendants' definitions, instructions,

and requests for production ("Requests"), which are hereby incorporated by reference and made

part of MVSC's response to each and every individually numbered request for production as if

fully set forth therein. MVSC reserves the right to supplement, revise, correct, clarify, or

otherwise modify its objections and responses to each Request. MVSC also reserves the right to

assert any other applicable objections to these Requests, and to object to any other request

relating to the subject matter of the responses herein. MVSC's response to any of the Requests is not a waiver of any of these rights.

1.     MVSC has not completed its investigations or discovery with respect to the information and facts that may be discoverable or relevant in this action. MVSC reserves the right to supplement or amend its responses set forth below should additional responsive or relevant information or documents be discovered as its investigation proceeds.

2.     MVSC objects to the Requests for production and their accompanying instructions and definitions to the extent that they seek discovery of information or documents protected by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or other applicable privileges and protections against disclosures. MVSC will not disclose or produce information protected by any such privilege or doctrine.

3.     MVSC objects to the Requests for production and their accompanying instructions and definitions to the extent that they seek information that exceeds the permissible scope of discovery, including information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.     MVSC objects to the Requests for production and their accompanying instructions and definitions to the extent they attempt to impose duties upon MVSC that are not provided for by the Federal Rules of Civil Procedure, or any other applicable law or rule.

5.     MVSC objects to the Requests for production and their accompanying instructions and definitions to the extent they call for the production of documents not in the possession, custody, or control of MVSC.

6.     MVSC objects to the Requests for production and their accompanying instructions and definitions to the extent the answers sought may be derived from publicly available

information, where the burden of deriving the responsive information is substantially the same for Defendants as it is for MVSC.

7.      MVSC objects to the Requests for production and their accompanying instructions and definitions to the extent they seek documents and information already in Defendants' possession, custody, or control.

8.      MVSC objects to the Requests for production and their accompanying instructions and definitions to the extent that they call for information not kept by MVSC in the ordinary course of business.

9.      MVSC objects to the Requests to the extent they seek the disclosure of trial preparation or expert documents prior to the dates fixed for such disclosure in this case.  Any disclosure of such documents is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other protection.

10.     MVSC objects to the Requests to the extent they seek documents that are publicly available or otherwise equally available to Defendants from other sources.

11.     MVSC objects to the Requests to the extent they contain no temporal limitation. Unless otherwise stated, MVSC's response will relate to the time period January 1, 2015, to the present.

12.     MVSC objects to the Requests to the extent they request or call for the provision of documents covered by a Non-Disclosure Agreement or other contract barring dissemination.

13.     MVSC objects to the "Definitions" and "Instructions" to the extent they purport to change the common meaning of the English language with regard to any word or phrase.

14.     MVSC objects to the definition of the terms "MVSC," "you" and "your" to the extent those terms purport to include documents from legal entities, employees, agents, officers, or directors of entities other than MVSC.

15.     MVSC objects to the Requests to the extent they seek information that is more appropriately sought through another discovery device.

16.     MVSC objects to the Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this action.

17.     MVSC objects to the Requests as overly broad and unduly burdensome to the extent that they call for the production of "all" documents when documents "sufficient to show" would suffice to provide the relevant facts.

18.     MVSC objects to the Requests, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, and/or do not specify the documents sought with sufficient particularity.  MVSC will use reasonable diligence in interpreting the Requests and providing responsive information or documents.

19.     MVSC disclaims any suggested obligation to create documents in response to the Requests.

20.     MVSC objects to the definition of "Document" to the extent it purports to alter discovery available under the Federal Rules, the ESI protocol, or what is reasonably accessible.

21.     By making the accompanying objections and responses to the Requests, MVSC does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this Action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.

Further, MVSC provides the objections and responses herein without in any way implying that they consider the Requests and responses to be relevant to any claims or defenses asserted in this Action or proportional to the needs of this Action.

22.     A response to a Request indicating that documents will be produced shall not be deemed or construed to suggest that there are, in fact, responsive documents, that MVSC performed any of the acts described in the document request, or that MVSC acquiesced in the characterization of the conduct or activities contained in the Request or any definitions and/or instructions applicable to the Request.

### MVSC'S STATEMENT REGARDING RESPONSES

1.      MVSC states that its objections and responses to the Requests are based upon information presently available and specifically known to it and subject to the General Objections identified above.  MVSC expressly reserves the right to amend, supplement, or otherwise modify its objections, responses, and document productions as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

2.      Where MVSC states that it will produce responsive, non-privileged documents pursuant "to a diligent search," this search will primarily include a search of the hard copy and electronically stored information of the custodians agreed to by the parties.  Where appropriate, MVSC will also search non-custodial files (such as centrally-maintained drives and files) reasonably expected to contain responsive, non-duplicative documents.  When searching emails and other voluminous electronically stored information, MVSC will use a set of search terms agreed to by the parties.

3.      Any instance in which MVSC agrees to produce documents is contingent on

Defendants likewise producing documents pursuant to the same or similar Requests from

MVSC.

## MVSC'S RESPONSES AND SPECIFIC OBJECTIONS

## DOCUMENT REQUEST NO. 1:

Without limitation as to time, all documents relied on, used, considered, reviewed, or consulted by you to draft your complaint or any prior version of your complaint, including any documents or communications referenced or quoted in your complaint or any prior version of your complaint, and including all materials referenced in paragraph 18 of your complaint.

**Response:**  MVSC incorporates by reference each of the General Objections set forth

above.  MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  MVSC

further objects to this Request on the grounds that it seeks documents protected by the attorney-

client privilege, the attorney work product doctrine, joint defense or common interest privilege, or

any other applicable privilege.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this Request

to the extent they exist and can be identified and located pursuant to a diligent search as described

in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 2:

Without limitation as to time, all documents relating to the allegations in your complaint and the claims you are asserting against Defendants, including, but not limited to: (1) your claim that Defendants have engaged in anticompetitive conduct; (2) your claim that Defendants have injured you; and (3) your claim that Defendants have harmed competition.

**Response:** MVSC incorporates by reference each of the General Objections set forth

above.  MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  MVSC

further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 3:**

Without limitation as to time, all documents relating to your allegations that Defendants have unlawfully conspired, including, but not limited to: (1) documents relating to the participants in each alleged conspiracy; (2) documents relating to the purpose and effect of each alleged conspiracy; (3) documents relating to when each alleged conspiracy was formed and how each alleged conspiracy was enforced.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 4:**

All documents supporting your allegations in paragraphs 11 and 100 of your complaint that a conspiracy by Defendants to block MVSC was in existence by at least by January 2014.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC objects to this Request insofar as the requested documents are already in Defendants' possession.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 5:**

All documents sufficient to show the EVR products and services offered by MVSC, and the associated prices and costs for those products and services.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control sufficient to show MVSC's EVR products and services and prices for those products and services to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 6:**

All documents sufficient to show MVSC's EVR customers, the EVR products and services they purchased from MVSC, and the associated prices, costs and other terms and conditions for those products and services.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls

for the production of "all" documents. MVSC further objects to this Request as seeking documents irrelevant to the claims in this case.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control sufficient to show MVSC's EVR customers to the extent the documents exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 7:

All documents referring to MVSC's EVR competitors, or competition between or among EVR providers, including any type of competitive intelligence report or assessment.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 8:

All documents referring to products or services offered by other EVR providers, including any type of competitive intelligence report or assessment.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 9:**

All documents relating to MVSC's marketing and business plans for its Vitu product.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information. MVSC further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

**DOCUMENT REQUEST NO. 10:**

All documents identifying the participants in the California and Illinois EVR markets.

**Response:** MVSC incorporates by reference each of the General Objections set forth

above. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 11:**

All documents relating to the EVR market share for MVSC and its competitors, in each state where MVSC provides EVR services, including changes over time.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 12:**

All documents sufficient to show how MVSC became the EVR market leader in California, Oregon, or any other market where MVSC holds the greatest EVR market share.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information. MVSC further objects to this Request as vague and ambiguous with respect to the use of the term "market leader." MVSC further objects to this Request insofar as it mischaracterizes MVSC's market position.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**<u>DOCUMENT REQUEST NO. 13:</u>**

All documents sufficient to show when MVSC entered or exited any EVR market in any state.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 14:**

All documents relating to any analysis, evaluation, assessment, communication or discussion of whether to enter or exit, or to not enter or not exit, any EVR market, and the reasons therefor.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request as seeking confidential and proprietary information. MVSC further objects to this Request as seeking documents irrelevant to any claims in this case.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 15:**

All documents sufficient to identify all dealers that that have switched from using CVR to using MVSC for EVR, or vice versa (by dealer name, the effective date of the switch, and the number of stores switched), and documents relating to reasons for the switch.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control sufficient to show the dealers that have switched from using CVR to MVSC, or vice versa, to the extent they exist and

13

can be identified and located pursuant to a diligent search as described in MVSC's Statement

Regarding Responses.

## DOCUMENT REQUEST NO. 16:

All documents relating to the reasons why any customer or potential customer selects one EVR provider over another.

**Response:** MVSC incorporates by reference each of the General Objections set forth

above.  MVSC further objects to this Request as overly broad and unduly burdensome to the

extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this

Request to the extent they exist and can be identified and located pursuant to a diligent search as

described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 17:

All documents referring to complaints about any EVR provider, including but not limited to complaints by your dealer customers regarding the functionality or capabilities of your products and services.

**Response:**  MVSC incorporates by reference each of the General Objections set forth

above.  MVSC further objects to this Request as overly broad and unduly burdensome to the

extent that it calls for the production of "all" documents.  MVSC further objects to "functionality

or capabilities" as vague and ambiguous.  MVSC further objects to this Request as seeking

information irrelevant to any claims in this litigation.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and

confer with Defendants regarding this Request.

## DOCUMENT REQUEST NO. 18:

If you contend that MVSC offers EVR products or services that are superior to those offered by CVR, all documents supporting your contention.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 19:

All contracts or agreements with dealers relating to your EVR services or products.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

**<u>DOCUMENT REQUEST NO. 20:</u>**

All communications and documents exchanged between you and any other EVR provider.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

**<u>DOCUMENT REQUEST NO. 21:</u>**

All documents referring or relating to CVR's acquisition of AVRS, Inc., including the acquisition's potential impact on MVSC or competition in any EVR market.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 22:**

All documents referring to Reynolds, CDK or CVR related to EVR.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 23:**

All communications and documents exchanged between you and Reynolds, CDK, or CVR.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that

17

it calls for the production of "all" documents.  MVSC further objects to this Request as seeking

documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this

Request to the extent they exist and can be identified and located pursuant to a diligent search as

described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 24:**

All documents and communications relating to negotiations between you and Reynolds or CDK concerning RCI or 3PA access, including documents showing terms, conditions, or prices that were offered, and any responses, counter-offers or rejections, including reasons therefor.

**Response:**  MVSC incorporates by reference each of the General Objections set forth

above.  MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

MVSC further objects to this Request as overly broad and unduly burdensome to the extent that

it calls for the production of "all" documents.  MVSC further objects to this Request as seeking

documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this

Request to the extent they exist and can be identified and located pursuant to a diligent search as

described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 25:**

All documents relating or referring to the RCI or 3PA program, including pricing, security protocols, and any terms of access.

**Response:**  MVSC incorporates by reference each of the General Objections set forth

above.  MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 26:**

All documents and communications referring or relating to your applications or requests to participate in RCI or 3PA.

**Response:**  MVSC incorporates by reference each of the General Objections set forth above.  MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 27:

All documents relating any analysis, evaluation, assessment, communication or discussion of access to dealership data through RCI or 3PA as compared to any other method, such as access through an independent data integrator or directly from a dealership.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 28:

All documents referring or relating to complaints about Reynolds, RCI, CVR, CDK or 3PA, including but not limited to complaints by your dealer customers.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 29:**

All documents referring or relating to efforts by CVR to acquire your EVR customers in any state.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 30:**

All documents referring or relating to efforts by you to acquire CVR's EVR customers in any state.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 31:**

All documents referring or relating to your application to be an EVR provider in Oregon.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 32:**

All documents referring or relating to the assertion in paragraph 107 of your complaint that CVR has "generat[ed] hundreds of millions of dollars" for CDK and Reynolds.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request as seeking documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 33:**

All documents referring or relating to CVR board meetings.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request as seeking documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 34:**

All documents relating to your contention that Reynolds or CDK threatened dealers.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request as seeking documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 35:

All documents and communications referring or relating to your access to data from a Reynolds DMS or CDK DMS other than through RCI or 3PA.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

## DOCUMENT REQUEST NO. 36:

All documents and communications referring or relating to your access to data through a third-party program offered by a DMS provider other than Reynolds or CDK, including but not limited to Dealertrack and Advent.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

## DOCUMENT REQUEST NO. 37:

All documents and communications referring or relating to your application to participate in a third-party program offered by a DMS provider other than Reynolds or CDK, including but not limited to Dealertrack and Advent.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

## DOCUMENT REQUEST NO. 38:

All documents and communications relating to your allegations that Reynolds or CDK offered MVSC a rate for RCI or 3PA that was anticompetitive, exorbitant, inflated, unjustified, or impossible for MVSC to pay.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

26

MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 39:

All documents referring to the scope of any DMS market that Reynolds or CDK allegedly participates in, the participants in that market, their market shares, and/or changes to those market shares over time.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request as seeking documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 40:**

All documents referring or relating to DMS competition or competitors.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request as seeking documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 41:**

All documents supporting your allegation that it is difficult for a dealer to switch DMS providers.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request as seeking documents equally available to Defendants.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as

described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 42:**

All documents referring to any independent data integrator, including the directors, officers, employees, agents, or attorneys thereof.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

**DOCUMENT REQUEST NO. 43:**

All documents referring to the legality or illegality of any conduct by any independent data integrator, including Authenticom.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

**DOCUMENT REQUEST NO. 44:**

All documents reflecting the extent to which MVSC knew or intended that any independent data integrator was accessing or would access a Reynolds DMS or CDK DMS without authorization from Reynolds or CDK.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 45:**

All documents referring to any independent data integrator's ability or inability to access a Reynolds DMS or CDK DMS.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the

grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 46:

All documents referring to Defendants' efforts to prevent any independent data integrator from accessing a Reynolds DMS or CDK DMS, including any documents relating to perceived or purported changes in any such efforts.

**Response:**  MVSC incorporates by reference each of the General Objections set forth above.  MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 47:

All communications and documents exchanged between you and any independent data integrator, including but not limited to Authenticom.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

## DOCUMENT REQUEST NO. 48:

All documents referring to competition between or among independent data integrators.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant

information.

**DOCUMENT REQUEST NO. 49:**

All documents relating to complaints about independent data integrators or their products or services.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

**DOCUMENT REQUEST NO. 50:**

All documents relating to security or privacy issues, policies, practices or concerns relating to access of DMS data through independent data integrators.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

## DOCUMENT REQUEST NO. 51:

All documents relating to the scope of any data integration market, the participants in any such market, their market shares, and/or changes to those market shares over time.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 52:

All documents relating to the geographic markets served by any independent data integrator.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 53:**

All documents sufficient to show the products or services provided to you by any third party data integrator, including Authenticom, and the associated prices and costs for those products and services.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 54:**

All documents sufficient to show payments made by you to any independent data integrator, or received by you from any independent data integrator.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 55:**

All documents sufficient to show when you started or stopped using any independent data integrator, and the reasons therefor.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 56:

Your contracts or agreements with any independent data integrator.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 57:

All documents and communications relating to MVSC's data security or cybersecurity policies, guidelines, and practices.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 58:**

All documents or communications relating to your internal or external security audits, including those described in paragraph 204 of your complaint.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as

described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 59:**

All documents reflecting, containing or referring to DMS logins and passwords for a Reynolds DMS or CDK DMS.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 60:**

All documents and communications relating to any data breach, system breach, or hack suffered by or thwarted by MVSC.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 61:**

All documents and communications relating to any data security or cybersecurity training provided to MVSC employees.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, . .

**DOCUMENT REQUEST NO. 62:**

All documents or communications reflecting MVSC's policies and practices with respect to handling or use of login and password information, whether for its own system or the systems of third parties.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 63:**

All documents or communications relating to the following allegation at paragraph 204 of your complaint: "MVSC maintains the highest-level security with respect to all sensitive, confidential data."

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 64:**

All documents identifying the type of data or information MVSC needs from a Reynolds DMS or CDK DMS in order to provide EVR services.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

41

MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 65:**

All documents identifying the type of data or information MVSC actually obtains from a Reynolds DMS or CDK DMS through independent data integrators.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this

Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 66:

All documents and communications exchanged between MVSC and dealers describing how MVSC accessed or planned to access the DMS system for that dealer in order to provide services.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

## DOCUMENT REQUEST NO. 67:

All of MVSC's competitive analyses, strategic plans, long-range plans, business plans, marketing plans, and forecasts, and any documents referring or relating to these materials.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 68:**

All documents sufficient to show MVSC's monthly, quarterly and annual sales revenue and profits related to MVSC's EVR products and services, from their first sale to the present, with sufficient detail to show for each product or service: (a) the product name, number, or other identifier; (b) the amount of revenue and profits earned as a result of sale; (c) the business division responsible for the sale; (d) the distribution channel for the sale; (e) the region where the sale occurred; and (f) the customer name.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control sufficient to show MVSC's sales revenue and profits for its EVR products and services as that information is kept in the ordinary course of business to the extent such documents exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 69:**

All documents sufficient to show MVSC's monthly, quarterly and annual expenses related to MVSC's EVR products and services, from their first sale to the present, with sufficient detail to show: (a) the product name, number, or other identifier related to the expenses; (b) the type of expense (e.g., taxes including excise taxes, selling expenses, marketing expenses, research &

development expenses, overhead, legal expenses, royalty expenses); (c) the nature of the expense (e.g., fixed, semi-fixed or variable); (d) the business division related to the expense; (e) the distribution channel related to the expense; (e) the region where the expense was incurred; and (f) the customer name related to the expense.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control sufficient to show MVSC's expenses for its EVR products and services as that information is kept in the ordinary course of business to the extent such documents exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 70:

All documents sufficient to show MVSC's EVR profits and profit margins, by month and by customer.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the

grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control sufficient to show MVSC's profits for its EVR products and services as that information is kept in the ordinary course of business to the extent such documents exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 71:**

All forecasts or projections relating to MVSC's EVR products and services.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control sufficient to show MVSC's forecasts or projections for its EVR products and services as that information is kept in

the ordinary course of business to the extent such documents exist and can be identified and

located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 72:**

All documents, such as organizational charts, sufficient to identify MVSC's corporate structure and reporting structure, including identifying all of MVSC's officers, directors, managers, and department heads.

**Response:** MVSC incorporates by reference each of the General Objections set forth

above. MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

MVSC further objects to this Request as overly broad and unduly burdensome to the extent that

it calls for the production of "all" documents. MVSC further objects to this Request on the

grounds that it seeks documents protected by the attorney-client privilege, the attorney work

product doctrine, joint defense or common interest privilege, or any other applicable privilege.

MVSC further objects to this Request on the basis that it seeks confidential and irrelevant

information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control sufficient to show

MVSC's organizational charts as that information is kept in the ordinary course of business to

the extent such documents exist and can be identified and located pursuant to a diligent search as

described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 73:**

All documents referring or relating to any damages or other harm you claim to have suffered and for which you seek any form of recovery in this action, including documents sufficient to quantify the amount of any such damages, restitution or other harm or relief.

**Response:** MVSC incorporates by reference each of the General Objections set forth

above. MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 74:**

All documents referring or relating to the February 2015 "Wind Down Access Agreement" referenced in your complaint.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive,

relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 75:**

All documents or communications exchanged with or referring to Steve Cottrell.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 76:**

All documents or communications exchanged with or referring to Data Software Services, LLC or eLead, including the directors, officers, employees, agents, or attorneys thereof.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

49

MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 77:**

All documents showing when and how you first became of aware of any of the facts alleged in your complaint or any prior version of your complaint.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

**DOCUMENT REQUEST NO. 78:**

All documents reflecting statements or communications regarding any of the claims or allegations in your complaint, any of the claims or allegations in the cases that have been consolidated within the above-captioned matter (*In re Dealer Management Systems*, MDL No. 2817 (N.D. Ill.)), or any government investigation relating to the claims or allegations in the above-captioned matter.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC is willing to meet and confer with Defendants regarding this Request.

**DOCUMENT REQUEST NO. 79:**

Without limitation as to time, all communications or documents that you sent to or received from the Federal Trade Commission or U.S. Department of Justice relating to Defendants, Authenticom, the EVR market, the DMS market, or the data integration market.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as

51

described in MVSC's Statement Regarding Responses.

## DOCUMENT REQUEST NO. 80:

All documents referenced or identified in your responses to Defendants' interrogatories.

**Response:** MVSC incorporates by reference each of the General Objections set forth above. MVSC further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. MVSC further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. MVSC further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. MVSC further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, MVSC will produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request to the extent they exist and can be identified and located pursuant to a diligent search as described in MVSC's Statement Regarding Responses.

Dated:  June 22, 2018

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Joanna T. Zhang
Joshua Hafenbrack
**Kellogg, Hansen, Todd,**
  **Figel & Frederick, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com

Gary Salomons
Daniel J. Friedman
**GABRIELSALOMONS, LLP**
16311 Ventura Blvd., Ste. 970
Encino, CA 91436
(818) 906-3700
gary@gabrielsalomons.com
daniel@gabrielsalomons.com

*Attorneys for Plaintiff Motor Vehicle*
*Software Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing Motor Vehicle Software Corporation's Objections and Responses to Defendants' First Set of Requests for Production to be served by email upon the following individuals:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

<div align="right">

*/s/ Derek T. Ho*
*Derek T. Ho*

</div>

# EXHIBIT 58

# Prospective RCI Participant Information

| Contact Information | | Date | 8/1/2013 | |
|---|---|---|---|---|
| **Company Name** | *Motor Vehicle Software Corporation* | | | |
| **Contact Name** | *Matt Armstrong* | **Title** | *VP, Client Services* | |
| **Address** | *29219 Canwood St Suite 205* | | | |
| **City, State, Zip** | *Agoura Hills, CA – 91301* | | | |
| **Phone** | *818 706 1949* | **Fax** | *818 707 7786* | |
| **E-mail** | *matt@dmvdesk.com* | **Web** | *www.mvscusa.com* | |

## Product Information

| Product Name | www.dmvdesk.com |
|---|---|
| **Product Description** | |

*DMVdesk is a comprehensive cutting edge technology service for electronically processing new and used vehicle registrations with sophisticated integrated tools for workflow and inventory management*

| Is your product rebranded or sold by other parties? | Yes    No |
|---|---|

| Who are your customers? | Auto Dealers    OEMs    Other _____ |
|---|---|

| DMS Integration Platform | ERA    POWER    Other IGNITE___ |
|---|---|

| Integration Region | United States    Canada    UK |
|---|---|

| Interface Needs | Extraction    Bi-Directional    Real Time |
|---|---|

**Check the appropriate box to indicate the data set(s) you are potentially interested in**

| Accounting | Daily Rental | Human Resources | Service Management |
|---|---|---|---|
| Body Shop | F&I | Vehicle Inventory | Vehicle Registration |
| CRM | Parts Management | | |
| Other : _____ | | | |

**How are you getting this data today?**

| Dealership sends data | Data Broker |
|---|---|
| Not getting data today | Accessing Reynolds dealership management system |

## Sales & Distribution Information:

| Are you currently in the Automotive Market? | Yes    No<br>If no, please specify _____ | |
|---|---|---|
| **Number of Total Customers** | __600__ | **Number of Automotive Customers**    __500__ |
| **Number of ERA Customers** | __60__ | **Number of POWER Customers**    __N/A__ |

Please complete this form and e-mail it to **certified_interface@reyrey.com**.





© 2012 The Reynolds and Reynolds Company. All rights reserved.

# EXHIBIT 59
# (REDACTED)