**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE DEALER MANAGEMENT SYSTEMS | ) | |
| ANTITRUST LITIGATION, MDL 2817 | ) | Case No. 18-cv-864 |
| | ) | |
| _____ | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| This document relates to: | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |
| ALL CASES | ) | |

**ORDER**

For the reasons stated below, Defendant CDK Global, LLC's motion for a protective order [197] is granted, but without prejudice to Plaintiffs' opportunity to request further documents from the FTC Merger Investigation production once they have completed their review of the documents that will be produced pursuant to the Court's direction set out below. Any further disputes concerning the scope of discovery in regard to the Merger Investigation should be presented to Magistrate Judge Gilbert, to whom this matter has been referred for all further discovery supervision.

**STATEMENT**

This motion concerns approximately 1.6 million documents (totaling about 3.5 million pages) that Defendant CDK Global, LLC ("CDK") previously has produced in an administrative proceeding before the Federal Trade Commission ("FTC") and that Plaintiffs seek in this antitrust litigation. The FTC obtained the documents in a now-closed investigation of CDK's proposed, but now-abandoned, acquisition of another company that operates in the "dealer management system" (or "DMS") market. CDK has agreed to produce nearly 670,000 documents from its production to the FTC in the "Merger Investigation," which it describes as the "plainly relevant portions of the collection." And CDK explains in its motion [197, at 4] that it is willing to produce more based on certain "agreed-upon (or court-ordered) custodians and search terms." But it insists that the production should stop there, because any further production—much less production of the materials sent to the FTC in the Merger Investigation *in toto*—would go well beyond documents relevant to the claims and defenses in this litigation and instead would allow Plaintiffs to engage in a "fishing expedition" for new claims.

Judge St. Eve's May 2018 opinion noted that there are two purported markets in the automotive operations space encompassed by this MDL: the DMS market and the data-integration market. [See 176, at 5.] In June 2017, after Plaintiff Authenticom had filed suit, the FTC opened two investigations that overlap—at least in part—with the subject matter of this MDL case: the Merger Investigation (mentioned above) and the Collusion (or Joint Conduct) Investigation. The former was intended to probe CDK's proposed acquisition of Auto/Mate in the DMS market space; the latter was looking into CDK's and Defendant Reynolds' activities in the data integration

services sector of the market. In each investigation, the FTC issued a "Civil Investigative Demand" (or "CID") in response to which Defendants produced millions of pages of documents. CDK asserts, and Defendants do not dispute, that separate FTC teams ran the two proceedings. After the FTC issued a complaint making crystal clear that it would vigorously oppose the proposed CDK-Auto/Mate merger, the parties abandoned the deal. The FTC subsequently closed the Merger Investigation and advised CDK that it would destroy the documents produced in that matter.

The core dispute presently before the Court thus presents a "numerator" question: how many of the millions of documents produced by CDK to the FTC in the Merger Investigation should be produced in this litigation? Plaintiffs suggest that the proper course is to turn over the entire production now, and have attempted to sweeten the pot by offering that CDK can designate all of the documents "Highly Confidential" for the time being, allowing the parties to defer until later the question of whether certain documents should be "de-designated" (and presumably also deferring privilege assessments as well). Plaintiffs contend that this proposal "would be far less burdensome than the complicated, time-consuming process CDK now proposes" and would lead to the production of "clearly relevant and likely inculpatory information." [206, at 4.][1]

1. Judge St. Eve's prior rulings

Plaintiffs' first contention is that Judge St. Eve's prior orders require full production of the materials from the Merger Investigation. CDK disputes Plaintiff's reading of the scope of those orders. Judge St. Eve's April 25 minute entry directed the parties to "produce any productions their clients made to the FTC, identified by bates number, by 5/9/18." If that were the lone relevant entry, the Court might be inclined to agree with Plaintiffs. However, on May 7, Judge St. Eve entered a Case Management Order [166] setting May 9 as the deadline for "all parties to exchange *Authenticom* productions as well as documents produced to the FTC in connection with its current investigation of Defendants (with documents produced to the FTC identified by bates number)." The reference in the second entry to the FTC's "current investigation" tends to support CDK's reading, as it appears to be undisputed that only the Collusion Investigation remained pending as of May 7. Read together, the prior orders do not mandate the production of the documents from the Merger Investigation *in toto*.

2. CDK-Authenticom prior discovery agreement

CDK looks even further back in time, urging the Court to hold Plaintiffs to a purported agreement between counsel for Authenticom and counsel for CDK reached in November 2017 concerning the scope of merger-related discovery. Plaintiffs acknowledge that counsel for Authenticom accepted CDK's offer as to the scope of production from the documents provided to the FTC in the Merger Investigation [see 197, Ex. 4, at 12], but contend that the Court should not enforce that agreement given the vastly changed circumstances of this litigation over the past nine months. The Court agrees. At the time of the prior arrangement, the parties to it were litigating a

---

[1] As Plaintiffs note [206, at 13], CDK has made equally broad document requests to Plaintiffs—seeking "all" documents provided to the FTC in connection with the Merger Investigation. CDK recognizes [210, at 6] that the scope of each side's productions should be symmetrical—that is, either "*in toto*" or limited by relevance or some other defined scope.

single action on a fast track in the Western District of Wisconsin. Since then, the Wisconsin action has been stayed and later folded into this MDL proceeding. Even after the transfer, as recently as the March 12, 2018 status hearing before Judge St. Eve, Plaintiffs' counsel advised that they wished to "move very quickly, even if that costs us some of the normal range of discovery that we would have" due to Authenticom's then-dire business concerns. [See 210, Ex. 2, at 35.] Since that time, the parties have mutually agreed to place the case on a more typical litigation track— eschewing the prior fast track—and Authenticom is not the sole party on the Plaintiffs' side of the dispute. Given all of these changes to both the pace and the scope of the litigation, the Court declines to bind Plaintiffs to the November 2017 discovery arrangement.

### 3. Relevance and proportionality

Unable to resolve the current motion on the basis of either the parties' prior agreements or Judge St. Eve's prior orders, the Court turns to the applicable rules—namely, Federal Rule of Civil Procedure 26(b)(1) and (c). As amended in December 2015, Rule 26(b)(1) limits the scope of permissible discovery to materials that are (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case." When a party's discovery requests exceed the bounds of relevance or proportionality, a court may interpose a protective order under Rule 26(c).

CDK concedes the relevance of at least some subset of the documents produced to the FTC in the Merger Investigation. Judge St. Eve's May 14 memorandum opinion and order [176, at 5] confirms the relevance of competition in the DMS market, as has at least one of CDK's own experts [see DE 130, *Authenticom, Inc. v. CDK Global, LLC, et al.*, Case No. 18-cv-868 (N.D. Ill.) (Declaration of S. Addanki, paragraphs 43, 47-52).]. Yet, as the examples cited in CDK's brief [210, at 7] demonstrate, the Merger Investigation production also contains "a long list of materials having nothing to do with the MDL." Indeed, had the FTC viewed the Merger Investigation as overlapping entirely or even substantially with the Collusion Investigation, one might have expected the team members conducting the former investigation to have forwarded the materials that they collected to their colleagues rather than agreeing to destroy them.

The foregoing discussion convinces the Court that requiring CDK to re-produce the entirety of its Merger Investigation production is not warranted, at least at present. "Proportionality" permits the Court to order a partial production now without foreclosing the possibility of supplemental productions later. Starting with the documents that CDK has agreed to produce based on search terms and custodians that will be negotiated [see 197, at 3]—and documents that Plaintiffs will produce on a reciprocal basis as to scope [see 206, at 13; 210, at 6]—the parties will exchange an initial tranche of the most relevant documents from the Merger Investigation. Once the parties have reviewed those documents, they can assess whether to request a supplemental production focused on other subjects and/or custodians. As one court has summarized, "[p]roportionality focuses on the marginal utility of the discovery sought" (*Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *14 (S.D.N.Y. Feb. 16, 2016)), and in every case— even an MDL—the parties' appetite for further discovery eventually is curbed by the law of diminishing marginal returns. Although the Court is in no position to say answer precisely the "numerator" question posed above, the approach outlined above is designed to permit the parties to move gradually (though deliberately) toward, but not past, the optimal point for production of paper in this matter.

For the reasons stated above, CDK's motion for a protective order [197] is granted, but without prejudice to Plaintiffs' opportunity to request further documents from the FTC Merger Investigation production once they have completed their review of the documents that will be produced pursuant to the Court's direction set out above. Any further disputes concerning the scope of discovery in regard to the Merger Investigation should be presented to Magistrate Judge Gilbert, to whom this matter has been referred for all further discovery supervision.

Dated: August 14, 2018

_____
Robert M. Dow, Jr.
United States District Judge