PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| | Hon. Robert M. Dow, Jr. |
| *This filing relates to:* | Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP CLASS ACTION | |

**CDK'S RESPONSE IN OPPOSITION TO DEALERSHIP CLASS PLAINTIFFS'
MOTIONS TO COMPEL DISCLOSURE OF CDK'S CLAWBACK DOCUMENTS AND
1,807 DOCUMENTS PREVIOUSLY DISCLOSED
TO THE FEDERAL TRADE COMMISSION**

**PUBLIC VERSION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

ARGUMENT .................................................................................................................. 8

I.     CDK DID NOT WAIVE PRIVILEGE OVER DOCUMENTS
INADVERTENTLY PRODUCED TO THE FTC. ............................................... 8

      A.     CDK's Disclosures to the FTC Were Inadvertent And Occurred In the
Course of Compulsory, High-Volume, Time-Sensitive Productions. ................... 9

      B.     CDK's Reproductions of Certain Privileged FTC CID Documents to MDL
Plaintiffs Were Likewise Inadvertent. ................................................................. 14

      C.     CDK Took Reasonable Steps to Prevent Inadvertent Disclosures. ..................... 15

      D.     CDK Acted Reasonably and Promptly In Its Clawback Efforts. ........................ 17

II.    THE DEALERS' PRIVILEGE CHALLENGE TO ONE DOCUMENT FAILS,
AND ANY PRIVILEGE  CHALLENGE  AS TO 474 OTHER DOCUMENTS
NEVER PRODUCED TO THEM IS PREMATURE ................................................... 20

CONCLUSION ............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barton v. Zimmer Inc.,*
　　2008 WL 80647 (N.D. Ind. Jan. 7, 2008) ............................................................. 12

*Carmody v. Bd. of Trs. of Univ. of Ill.,*
　　893 F.3d 397 (7th Cir. 2018) ..................................................................... 13

*Coburn Grp., LLC v. Whitecap Advisors LLC,*
　　640 F. Supp. 2d 1032 (N.D. Ill. 2009) ........................................................ 11, 16

*Excel Golf Prods., Inc. v. MacNeill Eng'g Co., Inc.,*
　　2012 WL 1570772 (N.D. Ill. May 3, 2012) ..................................................... 9

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,*
　　529 F.3d 371 (7th Cir. 2008) ..................................................................... 11

*Kmart Corp. v. Footstar, Inc.,*
　　2010 WL 4512337 (N. D. Ill. Nov. 2, 2010) .................................................... 11

*In re Martin Marietta Corp.,*
　　856 F.2d 619 (4th Cir. 1988) ..................................................................... 11

*Muro v. Target Corp.,*
　　250 F.R.D. 350 (N.D. Ill 2007) ................................................................. 12

*Neal v. Honeywell, Inc.,*
　　1995 WL 591461 (N.D. Ill. Oct. 4, 1995) ..................................................... 10

*Permian Corp. v. United States,*
　　665 F.2d 1214 (D.C. Cir. 1981) ................................................................. 10

*In re Qwest Commc'ns Int'l Inc.,*
　　450 F.3d 1179 (10th Cir. 2006) ................................................................. 11

*Stafford Trading, Inc. v. Lovely,*
　　2007 WL 611252 (N.D. Ill. Feb. 22, 2007) .................................................... 21

*Viamedia, Inc. v. Comcast Corp.,*
　　2017 WL 2834535 (N.D. Ill. June 30, 2017) ..............................................*passim*

*Westinghouse Elec. Corp. v. Republic of Philippines,*
　　951 F.2d 1414 (3d Cir. 1991) ................................................................... 10

*In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods.*
  *Liab. Litig.,*
  2014 WL 4961490 (S.D. Ill. Oct. 3, 2014) ....................................................... 13, 17

**Other Authorities**

16 C.F.R. § 2.11(d) ............................................................................................ 8, 16, 17

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 8

Fed. R. Civ. P. 26(b)(5)(B) ................................................................................... 8, 9

Fed. R. Evid. 502(b) ........................................................................................ 8, 13, 16

Fed. R. Evid. 502(d) ................................................................................................ 3

## INTRODUCTION

In a good faith attempt to resolve this discovery dispute short of motion practice, Defendant CDK Global, LLC ("CDK") has engaged in extensive letter and email communications and separate meet-and-confers with the Dealership Class Plaintiffs. CDK expended considerable effort to promptly and accurately respond to the Dealers' requests for information regarding CDK's document productions and clawback efforts, while preserving its own privilege assertions. Now, in their back-to-back motions to compel, the Dealers attempt to rewrite the history of these interactions. But the correspondence attached to their own motions largely disproves the Dealers' assertions. *See infra* at 2–7.

Their twisting of the record aside, the Dealers concede that all but *one* of the 2,396 documents still subject to their motions are privileged. Their entire argument boils down to an assertion that CDK has waived privilege over any document that it inadvertently produced to the Federal Trade Commission ("FTC") in response to a Civil Investigative Demand ("CID") issued by the FTC in a separate proceeding, regardless of the circumstances, and despite the fact that all of the documents at issue have been clawed back from the FTC. The Dealers' position is contrary to federal privilege law, as discussed in a thorough and well-reasoned decision by Judge St. Eve last year rejecting substantially similar arguments that litigant Viamedia, Inc. had waived privilege over documents inadvertently produced to the Department of Justice. *See Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *1 (N.D. Ill. June 30, 2017).

MDL Plaintiffs Authenticom, Cox Automotive, AutoLoop, and MVSC have all conspicuously declined to sign on to the Dealers' overreaching motions to compel. Their silence speaks volumes. Each of the Dealers' meritless arguments that CDK has somehow waived privilege over any of the documents now at issue do not withstand scrutiny, and their motions should be denied.

## BACKGROUND

The FTC's June 26, 2017 CID commanded CDK to produce a broad range of documents in connection with the agency's ongoing joint conduct investigation of Defendants. CDK made its first custodian-based document production in response to that CID on November 15, 2017, and its last production on March 23, 2018[1]; in that short time frame, CDK produced more than 790,000 documents to the FTC. *See* Declaration of Kristen-Elise F. DePizzo ("DePizzo Decl."), ¶¶ 4–5. Meanwhile, CDK began making rolling reproductions of its FTC-CID documents in the *Authenticom* litigation, beginning on December 15, 2017, and ending on April 27, 2018. On May 7, Judge St. Eve entered a Case Management Order in the MDL (Dkt. 166) requiring the parties to "exchange *Authenticom* productions as well as documents produced to the FTC" in the joint conduct investigation no later than May 9, 2018. CDK made its reproductions to all the MDL Plaintiffs in accordance with that court-ordered deadline.[2]

On June 21, 2018, CDK informed the Dealers and other MDL Plaintiffs that it had inadvertently produced 681 documents[3] ("Clawback Documents") protected by the attorney-client

---

[1] CDK also made 12 extremely small, targeted document productions to the FTC in response to the CID between July 7, 2017 and October 31, 2017, consisting of 678 documents—less than .09% of its ultimate production in the joint-conduct investigation. None of these documents is at issue in the current motion, which focuses entirely on documents produced by CDK from custodian datasets.

[2] CDK reproduced the documents on April 23, 2018 and April 30, 2018.

[3] Schedule A to CDK's June 21, 2018 letter listed 681 inadvertently produced Clawback Documents that CDK requested Plaintiffs return or destroy. *See* Wedgworth Decl., Ex. 1. But the replacement production provided by CDK—which included slip-sheets and redacted images (where appropriate) for all Clawback Documents—included one additional document inadvertently omitted from Schedule A. This document (CDK-0207384) was brought to Plaintiffs' attention in CDK's July 16 letter, which was immediately after CDK realized the omission. *See* Wedgworth Decl., Ex. 5, at 3–4. Out of the 682 Clawback Documents, 678 were produced to the FTC (not 675 as asserted at footnote 4 of Dealers' July 30 Clawback Motion). CDK has reached agreement with the MDL Plaintiffs relating to 43 of the 678 documents produced to the FTC. Therefore, there are 635 documents still at issue from CDK's June 21, 2018 clawback. The Dealers then placed another 1,807 documents at issue when they filed their August 6, 2018 motion to compel. Finally, earlier today, CDK informed the Dealers that it would produce 12 of the contested documents—all from the additional 1,807 documents identified in the Dealers' August 6 motion—after determining, upon further

2

privilege and/or the work product doctrine. *See* Declaration of Peggy J. Wedgworth Attached to Dkt. 294 ("Wedgworth Decl."), Ex. 1. In that letter, CDK invoked Paragraph 13(b) of the parties' Agreed Confidentiality Order, the section specifically allowing for the clawback of inadvertent disclosures, which the Court entered pursuant to Federal Rule of Evidence 502(d). *See* Agreed Confidentiality Order, Dkt. 104, at 18–19. CDK accordingly asked the MDL Plaintiffs to return or destroy the Clawback Documents, and confirmed in that same letter that the FTC had been notified of the inadvertent productions and had been asked to destroy or return them. *See* Wedgworth Decl., Ex. 1, at 1.

The MDL Plaintiffs responded with a letter to CDK on July 11, 2018, "reserv[ing] their rights" to argue that CDK waived its privileges and protections in connection with the Clawback Documents because CDK had initially produced most of them to the FTC. *See* Wedgworth Decl., Ex. 2, at 2.[4] The following day, the Dealership Plaintiffs sent their own letter to CDK, asking for information on CDK's productions in the FTC joint conduct investigation, and also referred briefly to a subset of CDK's Clawback Documents—without identifying those documents—that the Dealers asserted were "not produced to Dealership Class Plaintiffs" but had been produced to the FTC, Authenticom, or both. *See* Wedgworth Decl., Ex. 3, at 1. Despite not knowing which documents the

---

investigation, that 12 of the 1,8017 documents had not been clawed back from the FTC. *See* Ex. C, 8/22/2018 Letter from J. Michaels to. E. McKenna.

This leaves a total of 2,396 documents now at issue in the Dealers' motions. The Bates numbers of those are reflected in Exhibit B to this filing. *See* Ex. B. This total of 2,396 documents reflects that several of the documents that appeared in the Dealers' list of 1,807 documents, Wedgworth Decl. II, Ex. 1, were duplicative of the Clawback Documents or appeared on that list of 1,807 documents multiple times.

[4] In their July 11 letter, the MDL Plaintiffs also stated that they were contesting CDK's privilege assertions with respect to 73 of the Clawback Documents. *See* Wedgworth Decl., Ex. 2, at 1 and Ex. A. That number fluctuated as discussions continued, with the MDL Plaintiffs eventually saying they were maintaining their challenge to the underlying privilege for only 41 documents. *See* Wedgworth Decl., Ex. 10, at 2–3. As noted above, however, the non-Dealer Plaintiffs (Authenticom, Cox Automotive, AutoLoop, and MVSC) did not file or join in the Dealers' motions challenging any of the Clawback Documents. Moreover, in the instant motions, the Dealership Class Plaintiffs challenge the underlying privilege of only a single document. As shown below, *see infra* Part II, that single privilege challenge is meritless.

Dealers were referencing, CDK promptly investigated whether all 681 of the Clawback Documents had been produced to the Dealers. *See* Wedgworth Decl. to Dkt. 308 ("Wedgworth Decl. II"), Ex. 5, at 1. CDK responded to the Dealers just four days after their July 12 letter, confirming that all of the Clawback Documents had been produced to the Dealership Class Plaintiffs on hard drives shipped to the Milberg firm. *See* Wedgworth Decl., Ex. 5, at 3. CDK further provided the dates of each shipment and the number of Clawback Documents in each production volume, and asked that the Dealers check their records and alert CDK if any discrepancies remained. *Id.*

On July 17, 2018, the Dealership Plaintiffs responded by purporting to "clarify"—but actually amending—their prior statement that a subset of Clawback Documents had not been produced to them. *See* Wedgworth Decl., Ex. 6, at 1. The Dealers explained that the subset of documents had been produced to them as placeholder slip-sheets reading "Document Withdrawn for Privilege," and the Dealers identified these 474 documents—for the first time—by their Bates numbers. *Id.* at 1 and Ex. C. The parties met and conferred that day. Contrary to the Dealers' allegation that CDK was "unwilling" to discuss the documents, *see* Dkt. 294, ("Clawback Mot.") at 5, CDK offered not only to discuss them but to also produce a privilege log—despite having no obligation to do so—to make the ongoing meet-and-confer conversations more productive.

CDK also promptly investigated the Dealers' questions once again, and managed to respond just three days later with a detailed explanation of CDK's decision to produce certain documents to the Dealership Plaintiffs in slip-sheet form. *See* Wedgworth Decl., Ex. 7, at 2. In particular, CDK reiterated that it had become aware of inadvertently disclosed privileged documents in its FTC joint conduct productions—which, CDK noted, totaled more than 790,000 documents. *Id.* CDK explained that it clawed those documents back from the FTC as CDK became aware of them, replacing them with slip-sheets in its own document production database to prevent their further disclosure as CDK

4

made rolling reproductions in *Authenticom* and the MDL. *Id.* With respect to the subset of 474 documents, CDK explained—clearly and in detail—that it had identified these documents as privileged after it produced them to the FTC and re-produced them in *Authenticom*, but before it had produced them to the Dealership Plaintiffs in this MDL. *Id.* CDK therefore took a necessary step to *avoid* waiver of its privileged material by producing these 474 documents to the Dealers in slip-sheet form only—*i.e.*, by not producing them. *See id.* As CDK explained in that July 20 letter, this meant that while CDK needed to claw these 474 documents back from Authenticom, it did not need to claw them back from the Dealers. *Id.*

At the Dealers' request, CDK also attached to its July 20 letter an individualized privilege log for the Clawback Documents then at issue. *Id.* at 4. For each disputed document, this log set forth the basis of CDK's privilege claim and—to help the Plaintiffs evaluate CDK's privilege claims— identified and described any privileged family members associated with the document. CDK provided this information despite having no obligation do to so at this stage under the Agreed Confidentiality Order. *See* Agreed Confidentiality Order at 19 (providing that producing party must produce privilege log within "ten business days of receipt of the notification that the Disclosed Protected Information has been returned or destroyed").

Despite CDK providing these and other careful explanations in its July 20 letter, counsel for the Dealership Plaintiffs sent an email to CDK on July 23, 2018, requesting additional categories of information regarding CDK's productions and clawback efforts. *See* Wedgworth Decl., Ex. 8. The parties agreed to meet and confer telephonically on July 26, 2018; at that time, counsel for the Dealers vaguely alluded to the Dealers' belief that there were thousands of additional slip-sheeted documents in their production. *See* Wedgworth Decl. II, Ex. 5, at 2. CDK explained on the call that many documents identified as privileged before they were produced to *either* the FTC or the MDL

Plaintiffs initially had been produced as slip-sheets. By way of example, CDK explained that where email attachments were withheld from the FTC as privileged, but the remaining family members were produced, CDK may have initially produced the withheld attachments as slip-sheets to the FTC and therefore re-produced to the MDL Plaintiffs that way. *Id.*

The next day—July 27, 2018—CDK wrote a letter responding to each of the questions that counsel for the Dealer Plaintiffs posed in her July 23, 2018 email. *See* Wedgworth Decl., Ex. 11. Contrary to the Dealers' assertion, CDK was anything but "oblique," *see* Clawback Mot., at 7; instead, over several pages, CDK either provided the requested information or fully explained why that information was burdensome to provide and irrelevant to the parties' discovery dispute. *See* Wedgworth Decl., Ex. 11, at 1–4. CDK also attached the letter it received from the FTC on April 20, 2018, confirming that all documents clawed back from the FTC as of that date had been destroyed in the FTC's internal database and that the original production media had been sequestered. *See* Wedgworth Decl., Ex. 11A. Moreover, the FTC has since confirmed that it has applied those same procedures in response to each of CDK's subsequent clawback requests. *See* Ex. A, 8/7/2018 Email From W. Lanning to G. Pruden.

The Dealers nitpick CDK's explanation that its counsel in this litigation and in the FTC joint conduct investigation "coordinated to identify" inadvertently disclosed documents. *See* Clawback Mot. 7. But that accurately describes CDK's rolling process for identifying and addressing disclosed documents. The Dealers' effort to paint CDK's treatment of one particular document[5]— CDK-0207384—as "misleading" is just as misguided. *See id.* CDK stated in its July 27 letter that it took prompt remedial action once it discovered the inadvertent omission of that document from its

---

[5] This document is sometimes referred to with a digit missing from the Bates number in correspondence from CDK and the Dealers. *See* Wedgworth Decl., Ex. 5, at 4; *id.* Ex. 8, at 1 (referring to document as "CDK-020734").

PUBLIC VERSION

prior FTC clawback requests. *See* Wedgworth Decl., Ex. 11, at 3. That CDK's FTC counsel formally requested on July 24 that the FTC return or destroy that single document—information CDK voluntarily disclosed in its July 27 letter—does not suggest unreasonable delay in a clawback process following the production of more than 790,000 documents. *See id.* Indeed, it is precisely this type of oversight, one that can easily occur despite reasonable precautions, that the clawback process exists to remedy.

The Dealership Class Plaintiffs filed the first of the two motions in response to CDK's clawback on July 30. They then continued their campaign, sending a letter on August 1, 2018 identifying for the first time approximately 4,500 additional slip-sheeted documents to which they had alluded only generally during the July 26 meet-and-confer. *See* Wedgworth Decl. II, Ex. 2. CDK responded by letter *the same day*, explaining in clear terms that to the extent any of these 4,500 documents bore a "CDK_CID" Bates prefix, the document was either (1) identified as privileged by CDK before CDK's productions to the FTC, and therefore initially produced to the FTC as a slip-sheet and re-produced to MDL Plaintiffs in the same form, or (2) originally produced to the FTC in the joint conduct investigation, but subsequently identified by CDK as privileged before CDK re-produced the FTC production to the Dealership Class Plaintiffs on April 23, 2018 and April 30, 2018. *See* Wedgworth Decl. II, Ex. 3 at 1–2. CDK again noted in that letter that the second category of documents had already been clawed back from the FTC and Authenticom (to the extent any were produced to the latter). *Id.* at 2.

The Dealers responded by letter on August 2, 2018, stating that they intended to file a second motion to compel. *See* Wedgworth Decl. II, Ex. 4. Nonetheless, CDK provided additional information in an August 3, 2018 letter regarding the roughly 4,500 documents on which the Dealers were now focused. *See* Wedgworth Decl. II, Ex. 5 at 2–3. The Dealers requested even more

information that same day, including the Bates numbers for all the documents in each of the above-described categories. *See* Wedgworth Decl. II, Ex.6. Despite time constraints caused by other filing deadlines, CDK quickly provided the requested Bates numbers and other information by email the following day. *See* Wedgworth Decl. II, Ex. 8.

The Dealers filed their second motion on August 6, 2018, asking this Court to compel the production of 1,807 additional documents that—like the 474 documents the parties discussed before the Dealers' first motion—CDK had clawed back from the FTC before they were produced to the Dealers as slip-sheets. *See* Dkt. 308 ("Mot. Re: 1,807 Documents"). The Dealers raise no new arguments as to those documents, instead merely incorporating by reference the waiver argument from their prior motion. *See id.* at 5. Once again, the non-Dealer Plaintiffs did not join this motion.

## ARGUMENT

Federal Rule of Civil Procedure 26 cabins the scope of permissible discovery to "any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). CDK holds privilege—which it has not waived—over all the documents at issue, and therefore cannot be compelled to produce them.

## I. CDK Did Not Waive Privilege Over Documents Inadvertently Produced to the FTC.

The Dealers argue that CDK "waived" privilege over the Clawback Documents by initially producing them—despite clawing them back just a few months later—in the FTC joint conduct investigation. *See* Clawback Mot. at 8–12; Mot. Re: 1,807 Documents at 5. But CDK's inadvertent disclosures to the FTC did not waive the privilege because these disclosures fall squarely within the protection of Federal Rule of Evidence 502(b).

Rule 502(b) applies to inadvertent disclosures "made in a federal proceeding or to a federal office or *agency*." Fed. R. Evid. 502(b) (emphasis added). The FTC has promulgated its own Rule, which mirrors the requirements of Rule 502(b) and further provides that the FTC must promptly

**PUBLIC VERSION**

return, destroy, or sequester the inadvertently produced material upon notification from the privilege holder. *See* 16 C.F.R. § 2.11(d). Under Rule 502(b), when a party discloses privileged material "in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if" three conditions are met: "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502(b); *see also Viamedia*, 2017 WL 2834535, at *5. In evaluating the first question of whether a disclosure was inadvertent, "the majority of courts in this district adhere to a 'simple intent-based approach,'" *Viamedia*, 2017 WL 2834535, at *6, which "asks merely whether the production was unintentional." *Excel Golf Prods., Inc. v. MacNeill Eng'g Co., Inc.*, 2012 WL 1570772, at *2 (N.D. Ill. May 3, 2012).

CDK easily meets this standard. Nor did CDK waive privilege over the subset of documents it later reproduced to—and then clawed back from—the MDL Plaintiffs, for those disclosures were similarly inadvertent and subject to reasonably prompt corrective action.

### A. CDK's Disclosures to the FTC Were Inadvertent And Occurred In the Course of Compulsory, High-Volume, Time-Sensitive Productions.

CDK's disclosures of privileged material in the FTC's joint conduct investigation were inadvertent. They occurred in the context of a time-sensitive, mandatory production of more than 790,000 documents. These circumstances bear a striking resemblance to *Viamedia*, where Judge St. Eve concluded that the plaintiff's disclosures were inadvertent in light of the compulsory nature of the CID to which it was responding, the size of the production, and the plaintiff's assertion of privilege over other documents in the course of its production to the government. *See Viamedia*,

9

2017 WL 2834535, at *6. As in *Viamedia*, those same considerations point to the inadvertence of CDK's disclosures here.[6]

CDK inadvertently disclosed privileged documents to the FTC in response to a compulsory CID. The Dealers' arguments that CDK seeks a "tactical advantage" or attempts to benefit from a "selective waiver" are misplaced and based on inapposite case law. *See* Clawback Mot. at 10–11. For this "tactical advantage" argument, the Dealers rely on *Permian Corp. v. United States*, 665 F.2d 1214, 1220 (D.C. Cir. 1981), which held that a corporation had "destroyed the confidential status" of attorney-client communications by allowing their disclosure to the U.S. Securities and Exchange Commission. *Id.* But *Permian* made clear that those disclosures "were not inadvertent within the meaning of the doctrine recognized by some courts that preserves privilege claims when inadvertent disclosure is made despite diligent precautions in massive expedited discovery." *Id.* at 1220 n.11. The corporation took no "necessary steps to preserve privilege claims" against the SEC before the documents were delivered, nor did it assert its privilege when it later learned which documents had been disclosed. *Id.* 1220 & n.11.

The Dealers' other purported "tactical advantage" case, *Neal v. Honeywell, Inc.*, 1995 WL 591461, at *6 (N.D. Ill. Oct. 4, 1995), did not even involve inadvertent disclosures. Rather, the court held that the defendant waived attorney work-product protection to the extent it had "gained a tactical advantage" by participating in the Department of Defense's "voluntary disclosure program," for which it received "the possibility . . . of lenient treatment." *Id.* CDK obtained no such advantage. It inadvertently produced documents and then took prompt and reasonable action to claw them back. This production in no way "advantage[d]" CDK in the FTC joint conduct investigation.

---

[6] The Dealers acknowledge *Viamedia* with a single "*but see*" citation in a footnote, *see* Clawback Mot. at 12 n.17, and make no meaningful effort to distinguish that decision.

The Dealers' "selective waiver" argument—based chiefly on cases dealing with deliberate and often strategic disclosures, rather than inadvertent, clawed-back disclosures like CDK's—fails for the same reason. *See, e.g.*, *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1182 (10th Cir. 2006) ("For purposes of clarity, we also note that this decision involves no issues of inadvertent disclosure"); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1431 (3d Cir. 1991) (corporation "deliberately disclosed work product to two government agencies investigating allegations against it"); *In re Martin Marietta Corp.*, 856 F.2d 619, 625 (4th Cir. 1988) ("the disclosures were made in a direct attempt to settle active controversies between [the corporation] and the United States Attorney and the DOD").

The inadvertence of CDK's disclosures is further supported by the sheer size of its FTC joint conduct production. At the outset, CDK identified approximately three million potentially responsive documents from custodial data sources. *See* DePizzo Decl., ¶ 3. Over approximately five months, CDK then produced more than 790,000 documents in response to the CID. *See Viamedia*, 2017 WL 2834535, at *6 (finding plaintiff's production "large by any standard" where it involved "a review of 600,000 documents and a production of over 300,000 documents"); *Coburn Grp., LLC v. Whitecap Advisors LLC,* 640 F. Supp. 2d 1032, 1039 (N.D. Ill. 2009) (review of "72,000 pages of potentially responsive documents, from which 40,000 pages of documents were produced . . . substantially exceed[s] the number of documents that have been characterized as 'large'").

Courts in this district have routinely recognized that "mistakes can take place in such large-scale document productions." *Viamedia*, 2017 WL 2834535, at *6; *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008) ("Where discovery is extensive, mistakes are inevitable and claims of inadvertence are properly honored so long as appropriate precautions are taken." (internal quotation marks omitted) (interpreting law before

current Rule 502 took effect)). Here, the Dealership Class Plaintiffs seek to compel the production of 2,396 documents, representing roughly 0.3% of CDK's total production volume in the FTC joint conduct investigation. This tiny proportion of contested documents alone supports a finding that their disclosure was inadvertent. *See Viamedia*, 2017 WL 2834535, at *6 (finding inadvertence where contested documents comprised approximately 0.1% of total production); *Kmart Corp. v. Footstar, Inc.*, 2010 WL 4512337, at *4 (N. D. Ill. Nov. 2, 2010) (noting that inadvertent disclosure of less than 3% of production is not "a significant mistake," and that the "broader the scope of the discovery, the more extensive a party's disclosure of confidential materials may be without waiving the privilege" (internal quotation marks omitted)).

The Dealers point to the fact that CDK redacted some documents produced in the FTC joint conduct investigation. *See* Clawback Mot. at 9, 12. But rather than showing that its privileged disclosures were somehow intentional, these redactions support a finding that CDK had no intention of making any privilege waivers. As in *Viamedia*, the fact that CDK did claim privilege over a large quantity of documents—more than 47,000, *see* DePizzo Decl., ¶ 5—in its CID productions to the FTC shows that CDK "did not intend to produce all privileged materials." *See Viamedia*, 2017 WL 2834535, at *6.

The Dealers also ignore the logic of Rule 502(b) and the realities of large-scale document production. It is true that some of CDK's document reviewers did not apply privilege designations uniformly to a handful of documents—*e.g.*, cover emails and email attachments. *See Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill 2007) ("[E]ven though one e-mail is not privileged, a second e-mail which forwards that prior e-mail to counsel might be privileged in its entirety."); *Barton v. Zimmer Inc.*, 2008 WL 80647, at *5 (N.D. Ind. Jan. 7, 2008) ("[T]he very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying

information remains unprotected."). A few inadvertent redaction errors on some of the Clawback Documents—which the clawback process exists to correct—do not invalidate the privilege or render CDK's privilege review efforts unreasonable. CDK expended significant resources to train and oversee reviewing attorneys, applying multiple levels of review and quality control checks in the process.[7] Despite these efforts, it is hardly unsurprising or remarkable that the more than 790,000 documents that CDK produced to the FTC were not one hundred percent free of reviewing errors, particularly given the compressed timeline for these massive productions.

Similarly misguided is the Dealers' argument that CDK's disclosures could not have been inadvertent because its counsel "reviewed and screened" documents before producing them and had "ample time" for that review. Clawback Mot. at 8–9. As detailed below, CDK *did* undertake a rigorous, multi-level document review process. Contrary to the Dealers' assertion, however, CDK's use of that process shows the absence of waiver here. Under the Dealers' view, a disclosure would only be inadvertent where counsel performed no document review at all prior to production, but that is absurd, and of course it violates Rule 502(b)'s requirement that the producing party take reasonable steps to prevent disclosure. *See Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 406 (7th Cir. 2018) (finding a disclosure inadvertent under Rule 502(b) where circumstances "indicate[d] an unfortunate but inadvertent mistake *rather than a casual, produce-first, review-later* approach" (emphasis added)); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, 2014 WL 4961490, at *3 (S.D. Ill. Oct. 3, 2014) (finding production inadvertent and noting that "the fact that the document was subject to review prior to production, redacted, and marked as confidential does not establish a lack of mistake"). It cannot be that parties may satisfy one 502(b) requirement only by failing to satisfy another.

---

[7] This process, by which CDK took reasonable steps to prevent inadvertent disclosures, is described in greater detail below in Part I.C.

In addition, far from having "ample time" to perfect its productions, CDK was under intense time pressure to provide hundreds of thousands of documents to the FTC. CDK worked diligently to respond to the compulsory CID, and in the span of about five months produced more than 790,000 documents. As one would expect, CDK experienced no small amount of strain in its efforts to negotiate and select document custodians, collect and process potentially responsive data, and identify and produce this massive number of documents in a short period. In such large-scale productions, "mistakes can take place," *Viamedia*, 2017 WL 2834535, at *6, and that is precisely what happened here.

Nor is there anything to the Dealers' irrelevant question whether CDK's civil litigation or FTC counsel first "discovered that documents needed to be clawed back" from the FTC. *See* Clawback Mot. at 9. CDK's counsel in the MDL and its counsel of record in the FTC joint conduct investigation "coordinated to identify" inadvertently disclosed documents. *See id.* Given the re-production of FTC CID documents in the civil litigation, it makes perfect sense for them to do so to achieve a common goal for their client: thoroughly and promptly investigating and clawing back these documents. The fact that lawyers representing the same client worked together does nothing to suggest that CDK's disclosures were intentional.

**B.    CDK's Reproductions of Certain Privileged FTC CID Documents to MDL Plaintiffs Were Likewise Inadvertent.**

CDK's privileged disclosures in its reproductions of certain Clawback Documents to the MDL Plaintiffs were inadvertent for the same reasons described above. CDK reproduced its FTC CID productions to Authenticom on a rolling basis beginning in December 2017. At that time, CDK's productions in the FTC joint conduct investigation remained ongoing; CDK did not make its most recent production in that investigation until March 23, 2018.

Because CDK's initial productions to the FTC and reproductions to Authenticom (and later all the MDL Plaintiffs) were largely simultaneous, CDK inadvertently reproduced some of the same privileged material to both.

### C. CDK Took Reasonable Steps to Prevent Inadvertent Disclosures.

Against the backdrop of a large-scale, compulsory FTC production, CDK took reasonable steps to prevent the disclosure of privileged documents in the joint conduct productions to the FTC and, later, in the MDL productions. As in *Viamedia*, these steps included a comprehensive protocol for reviewing the huge volume of documents in play, as well as heavy involvement and oversight of vendor employees by highly skilled lawyers. *See Viamedia*, 2017 WL 2834535, at *7.

Indeed, CDK's precautions go well beyond the reasonable steps required to avoid the waiver of privilege. In an effort to avoid the production of privileged documents, CDK's FTC counsel—Paul, Weiss, Rifkind, Wharton & Garrison LLP—worked in consultation with CDK's counsel in the instant litigation to create a list of privilege terms, including counsel and law firms engaged by CDK and general terms likely to appear in privileged documents. DePizzo Decl., ¶ 8. Under the supervision of CDK's FTC counsel, a third-party e-discovery vendor ran electronic searches using those privilege search terms and isolated documents that resulted from those searches. *Id.* ¶ 9.

Then, a team of contract reviewers engaged by CDK conducted an initial-level review to evaluate and identify any potentially privileged documents. *Id.* ¶ 10. Paul, Weiss associates and staff attorneys also performed a second-level review of documents identified as potentially privileged, as well as targeted quality control reviews, as appropriate. *Id.* ¶ 11. These quality control reviews by Paul, Weiss associates and staff attorneys included targeted electronic searches, as well as sampling for documents that underwent privilege coding changes between first- and second-level reviews. *Id.*.

CDK's FTC counsel provided training to the first- and second-level reviewers that included guidance on how to identify and code privileged documents; instruction on how to elevate to Paul,

Weiss associates any questions about potentially privileged documents; and an extensive list of in-house and outside counsel likely to appear on documents in the review. *Id.* ¶ 13. In addition, CDK's FTC counsel took steps to ensure that the electronic search terms indicative of privilege were highlighted in each document in which they appeared—during both levels of the two-tiered review—to enable reviewers to easily identify any appearances of those privileged terms. *See id.* Throughout this review process, Paul, Weiss associates and staff attorneys also coordinated closely with the first-level reviewers to provide them with feedback and to promote accuracy and consistency during the ongoing review. *Id.* ¶ 12.

This multi-staged review, with training, quality control, and ongoing feedback, easily qualifies for Rule 502(b) protection. *See*, *e.g.*, *Viamedia*, 2017 WL 2834535, at *4–5, *7; *Coburn Grp.*, 640 F. Supp. 2d at 1038–40 (finding protocol sufficiently reasonable under Rule 502(b) even where it involved document review by non-lawyers). CDK's conduct was especially reasonable in the context of its time-sensitive, far-reaching CID response. *See* Fed. R. Evid. 502(b) Advisory Committee Note, Revised Nov. 28, 2007 ("[C]onsiderations bearing on the reasonableness of a producing party's efforts include the number of documents to be reviewed and the time constraints for production.").

The Dealers complain that CDK "did not enter into any kind of confidentiality agreement with the FTC before producing documents," but the absence of such an agreement is immaterial to the waiver analysis here. *See* Clawback Mot. at 12. Rule 502(b) applies to inadvertent disclosures made to federal agencies. *See* Fed. R. Evid. 502(b); *see also* Fed. R. Evid. 502(b) Advisory Committee Note, Revised Nov. 28, 2007 ("The rule applies to inadvertent disclosures made to a federal office or agency, including but not limited to an office or agency that is acting in the course of its regulatory, investigative or enforcement authority."). Moreover, the FTC's own rule—16

16

C.F.R. § 2.11(d)—expressly contemplates that inadvertent disclosures will not effect privilege waivers. CDK adhered to the requirements of Rule 502(b) and 16 C.F.R. § 2.11(d), and the FTC has confirmed that it treated the documents at issue in accordance with § 2.11(d). *See* Ex. A; Wedgworth Decl., Ex. 11A. That CDK did not enter into a confidentiality agreement with the FTC had no bearing on the FTC's acceptance of CDK's clawback efforts, and similarly has no bearing on the current dispute.

CDK took reasonable steps to prevent the disclosure of privileged material and has not waived privilege over documents inadvertently produced in the FTC joint conduct investigation or reproduced to Authenticom. As the Court recognized in *Viamedia*, "the fact of disclosure alone cannot be enough to find insufficient steps to prevent disclosure" because "[o]therwise, Rule 502 would become a nullity." *Viamedia*, 2017 WL 2834535, at *7; *see also In re Yasmin*, 2014 WL 4961490, at *3 ("The mere fact of a mistaken production does not—in and of itself—establish reasonable precautions were not taken.").

### D. CDK Acted Reasonably and Promptly In Its Clawback Efforts.

CDK's reasonable conduct continued after it discovered the inadvertent disclosures. Pursuant to Rule 502(b) and in accordance with 16 C.F.R. § 2.11(d), CDK "promptly took reasonable steps to rectify" its inadvertent disclosures to the FTC by investigating those disclosures and informing the FTC of them. CDK similarly followed the procedures of the relevant Agreed Confidentiality Orders[8] to claw back its inadvertently disclosed documents from Authenticom and the other MDL Plaintiffs, and—though those Orders include no clawback deadline—CDK did so with more than reasonable dispatch.

---

[8] CDK undertook its initial clawback from Authenticom pursuant to Paragraph 14 of the Agreed Confidentiality Order in that case. *See Authenticom, Inc. v CDK Global, LLC*, No. 17-cv-318 (W.D. Wis.), Dkt. No. 85, at ¶ 14. Judge St. Eve later entered a new Agreed Confidentiality Order in this MDL, but there are no material differences between Paragraph 14 of the *Authenticom* Agreed Confidentiality Order and Paragraph 13 of the MDL Agreed Confidentiality Order.

The Dealers' argument that CDK somehow failed to take timely action to address its inadvertent disclosures is baseless. After CDK first learned that it had included privileged documents in its CID productions, CDK's FTC and MDL counsel kept an open line of communication to ensure that CDK was investigating and addressing the inadvertent disclosures as efficiently and scrupulously as possible. *See* DePizzo Decl., ¶ 18. The longest time period that passed between an inadvertent disclosure to the FTC and CDK's initiation of the claw back procedure was approximately six-and-a-half months; for many documents, that period was even shorter, as CDK made its productions to the FTC on a rolling basis.[9] *See id.* ¶ 14. CDK's FTC counsel first determined in December 2017 that CDK had inadvertently disclosed privileged materials in response to the CID, and that same month, CDK sent its first clawback letter to that federal agency's CID team. *Id.* ¶¶ 17–20. CDK sent additional clawback letters to the FTC in connection with the CID productions in January, April, and May of 2018, each time alerting the FTC promptly after identifying its inadvertent disclosures. *Id.* ¶ 20. CDK's timing was both prompt and reasonable.

As for the clawbacks it pursued from Authenticom and the MDL Plaintiffs, the Agreed Confidentiality Orders—pursuant to which CDK wrote its clawback letters to Authenticom on March 2, 2018, and to the MDL Plaintiffs on June 21, 2018—do not state or imply any deadline for invoking those Orders' clawback provisions.[10] In any event, CDK's timing in clawing back documents from Authenticom and the other MDL Plaintiffs was more than reasonable under the

---

[9] And, as the Advisory Committee Note to Rule 502(b) explains, "[t]he rule does not require the producing party to engage in a post-production review to determine whether any protected communication or information has been produced by mistake." Fed. R. Evid. 502(b) Advisory Committee Note, Revised Nov. 28, 2007.

[10] Paragraph 13(a) of the Agreed Confidentiality Order in this case provides in relevant part that the inadvertent production of Disclosed Protected Information "shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection," and Paragraph 13(b) provides in relevant part that "[a] Producing Party may assert in writing attorney-client privilege or work product protection with respect to Disclosed Protected Information." *See* Agreed Confidentiality Order at 18. The same language appears in Paragraphs 14(a) and (b) of the *Authenticom* Agreed Confidentiality Order. *See Authenticom*, No. 17-cv-318, Dkt. No. 85, at ¶ 14.

circumstances. CDK's FTC counsel was uncovering privileged documents in its FTC CID productions at around the same time the Court ordered CDK to reproduce its prior productions in the MDL. *See* DePizzo Decl., ¶ 20. Rather than delaying the civil discovery process or knowingly disclosing privileged documents, CDK proactively worked to continue meeting its production obligations while openly preserving its privilege by producing Bates-stamped slip-sheets to the MDL Plaintiffs, including the Dealers, in place of the privileged documents. CDK therefore acted reasonably to avoid similar inadvertent disclosures in its productions to the Dealers and other MDL Plaintiffs.

The Dealers attempt to cast CDK as evasive in its communications, but CDK's letters and emails to the Dealership Plaintiffs belie this characterization. Throughout the clawback discussions, CDK promptly responded to round after round of questions from the Dealers. And time and again, CDK provided more information regarding the documents, productions, and Clawback Documents at issue than the Agreed Confidentiality Order required, often expending time and resources to find that information despite other pressing deadlines in the litigation. Where the Dealers' questions were imprecise, CDK answered them as best it could; where the Dealers requested irrelevant information, CDK said so and provided a detailed explanation for its position. At all times, CDK's conduct was more than reasonable.

Finally, there is nothing to the Dealers' argument that CDK somehow violated the Case Management Order's directive to exchange its *Authenticom* productions and its CID productions with the other MDL parties. *See* Clawback Mot. at 13. CDK did make those reproductions, and it did so by the court-ordered deadline; it would be utterly unreasonable to interpret that Order to require CDK to *knowingly* reproduce privileged documents that it had *inadvertently* produced, had already identified as privileged, and was working to claw back. The same goes for CDK's response to the

Court at the April 25, 2018 hearing—the transcript of which the Dealers' both quote in and attach to their first motion—that it had "turned over" all of its *Authenticom* discovery. *See* Clawback Mot. at 13; Wedgworth Decl., Ex. 13. CDK's counsel was correctly saying, of course, that CDK had completed its *Authenticom* reproductions; there was no need to further state that CDK had not produced privileged documents to the MDL Plaintiffs, as that would be expected in the normal course of litigation.

## II.     The Dealers' Privilege Challenge to One Document Fails, and Any Privilege Challenge As To 474 Other Documents Never Produced to Them Is Premature

The Dealers challenge CDK's underlying privilege assertion as to only a single, two-page document, CDK-2286595-96/CDK_CID_01937962-63. But CDK properly produced the document with redactions of material subject to the attorney-client privilege. *See* Wedgworth Decl., Ex. 14-A, 14-B.

The redacted material in the challenged email is privileged because it is a confidential communication in which clients provide information to an attorney for the purpose of obtaining legal advice. In the earliest redacted communication, CDK employee Chris Morris sent an email to CDK in-house counsel Tom d'Ambrosio and four other CDK employees to ███████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████ *See* Wedgworth Decl., Ex. 14-A, 14-B; Declaration of Chris Morris ("Morris Decl.), ¶¶ 1–2. ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████ *See* Wedgworth Decl., Ex. 14-A, 14-B; Morris Decl. ¶ 3. In-house counsel was included on these communications to enable him to provide advice, as appropriate, regarding ████████████████████████████████████████████████████ ████████████████████████████████████████████████ Morris Decl. ¶¶ 2–3. ███████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ 4. Although the email chain naturally

bears on business decisions, too, d'Ambrosio was included to facilitate legal advice. "While it is true

that *solely* personal or business advice is not protected by the attorney-client privilege, legal advice

*relating to* business matters clearly is." *Stafford Trading, Inc. v. Lovely*, 2007 WL 611252, at *2

(N.D. Ill. Feb. 22, 2007) (emphases added) (internal quotation marks omitted). The redacted material

in this email thread is subject to the attorney-client privilege.

Beyond this single document, the Dealers take issue with their current inability to challenge

CDK's privilege assertions with respect to the 474 documents it inadvertently disclosed to, and then

clawed back from, Authenticom.[11] *See* Clawback Mot. at 14. But these documents were never

inadvertently produced to the Dealers. Accordingly, the Dealers may challenge CDK's privilege

assertions as to those documents—if ever—when the parties prepare and exchange their respective

privilege logs on November 2, 2018. *See* Case Mgmt. Order at 2. Likewise, CDK has had no

"opportunity" to challenge the withholding of purportedly privileged documents by any of the MDL

Plaintiffs, and will not be able to do so until the parties exchange their privilege logs in the normal

course.

## CONCLUSION

For the foregoing reasons, the Dealership Class Plaintiffs' motions to compel disclosure of

CDK's Clawback Documents and the additional 1,807 documents CDK previously disclosed to the

FTC should be denied in their entirety.

---

[11] Notably, Authenticom has not challenged the underlying privilege of these documents.

**PUBLIC VERSION**

Dated: August 22, 2018                        Respectfully submitted,

                                              /s/ *Britt M. Miller*
                                              Britt M. Miller
                                              Michael A. Scodro
                                              Matthew D. Provance
                                              MAYER BROWN LLP
                                              71 South Wacker Drive
                                              Chicago, IL 60606
                                              (312) 782-0600
                                              bmiller@mayerbrown.com
                                              mprovance@mayerbrown.com

                                              Mark W. Ryan
                                              MAYER BROWN LLP
                                              1999 K Street NW
                                              Washington, DC 20006
                                              (202) 263-3000
                                              mryan@mayerbrown.com

                                              *Counsel for Defendant*
                                              *CDK Global, LLC*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on August 22, 2018, I caused a true and correct copy of the foregoing **CDK'S RESPONSE IN OPPOSITION TO DEALERSHIP CLASS PLAINTIFFS' MOTIONS TO COMPEL DISCLOSURE OF CDK'S CLAWBACK DOCUMENTS AND 1,807 DOCUMENTS PREVIOUSLY DISCLOSED TO THE FEDERAL TRADE COMMISSION** and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
E-mail: bmiller@mayerbrown.com