**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | ) | |
|---|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) | MDL No. 2817 Case No. 1:18-CV-00864 |
| *THIS DOCUMENT APPLIES TO:* | ) ) ) | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |
| ALL CASES | ) ) | |

**THE REYNOLDS AND REYNOLDS COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AND OPPOSITION TO DOMINION'S MOTION TO MODIFY THE PROTECTIVE ORDER**

The Reynolds and Reynolds Company ("Reynolds") respectfully submits this reply memorandum in support of its Motion to Compel and in opposition to Dominion's Motion to Modify the Protective Order.

The subpoena Reynolds issued to Dominion has been outstanding for nearly eight months. Dominion committed to reproduce certain documents it had produced to the Federal Trade Commission (the "FTC documents") to satisfy the subpoena seven months ago, in January 2018. *See* Dominion Mot., Exhibit 6. It revoked that commitment four months later, asking for assurances that retained litigation and trial counsel at the law firms Gibbs & Bruns, Sheppard Mullin and Mayer Brown are not engaged in "competitive decisionmaking," a defined legal standard that governs risk of inadvertent disclosure of protective order material. *See* Reynolds Mot. to Compel (ECF 283), Exhibit B.

Outside counsel representing defendants at all three law firms gave Dominion the assurances it sought. Dominion then indicated those assurances were not sufficient. It now seeks a modification to the protective order that would preclude counsel at these three national

1

law firms from providing legal advice to their respective clients regarding Dominion's conduct, a subject matter of this lawsuit.

The modification Dominion seeks is unprecedented. It has not cited any case making the proposed modification it now seeks. Nor has it cited any case that precludes outside retained law firm trial counsel from the ability to review materials designated under a Protective Order in connection with the defense of their clients. To the contrary, several cases Dominion cites precluding *in-house counsel* from access to Protective Order material (in certain limited patent infringement cases) cite the fact that outside retained trial counsel for the party will have access and be able to prepare the defense of their clients.

Dominion has the burden to provide facts and evidence that support its proposed modification. Dominion counsel's hypothetical arguments are not admissible under any Federal Rule of Evidence, and are unsupported by any proffered evidence of actual admissible facts that warrant considering any modification. Reynolds therefore respectfully asks this Court to deny Dominion's motion and grant the Motion to Compel, for these reasons and the grounds more fully set forth below.

1. **The Provisions of the Protective Order**: The Confidentiality Order the Court has entered in this case allows a party producing information to designate that material "Confidential" or "Highly Confidential." ECF No. 104 at ¶ 3(a). Designating material "Highly Confidential" limits the information to retained law firm trial counsel of record in the case and prevents "in-house" counsel — lawyers employed by a particular company who may be engaged in a mix of legal and other functions — from access to the material. *Id.* at ¶ 5(c).

2.       The Confidentiality Order also precludes the use of Confidential or Highly Confidential information "for any purpose whatsoever" other than this case.  *Id.* at ¶ 5(a).  Violating this provision is contempt of court.

3.       **<u>Dominion's Burden to Modify the Protective Order</u>**:  Dominion seeks a modification to the Confidentiality Order precluding retained law firm trial counsel from providing legal advice to their clients:

> No Receiving Party with access to Confidential Information or Items of Dominion Enterprise, Inc., its affiliates, and subsidiaries ("Dominion") shall provide advice, ***legal or otherwise*** regarding business relationships with or business conduct affecting Dominion until one year after the conclusion of this Action.  This prohibition does not extend to general advice, legal or otherwise that the Receiving Party has concluded affects Dominion no differently than its competitors after undertaking reasonable due diligence to investigate the potential effect.

Dominion Memorandum of Law in support of its Motion to Modify Confidentiality Order and Response to Reynolds' Motion to Compel ("Mem."), ECF No. 305, at 15 (emphasis added).[1]

4.       The proposed modification language is not supported by any precedent.  Nor is there any case under the "competitive decisionmaking" legal standard, which governs the risk of inadvertent disclosure beyond the provisions of a protective order, precluding retained outside law firm counsel from providing legal advice.  The only instances where courts have added additional safeguards to a protective order relate to circumstances where the moving party demonstrates with actual evidence a risk of "inadvertent disclosure" in connection with "competitive decisionmaking" functions ***in-house counsel*** may perform in addition to their company legal roles.  *See* Reynolds Motion to Compel ¶¶ 7, 9-10, 17-20; *see infra* ¶¶ 15-19.

---

[1] Dominion circulated and obtained consent to its proposed modification language from various plaintiff's counsel.  Dominion did not circulate its proposed modification language or discuss it with defense counsel prior to filing its motion.

3

5. Dominion's business dealings with defendants, moreover, are a subject matter of this lawsuit, as Dominion's testimony as a witness for plaintiff Authenticom in the preliminary injunction hearing demonstrates. Accordingly, the modification Dominion now seeks would preclude outside law firm trial counsel for defendants from advising their clients on any and all aspects of the lawsuit relating to Dominion. If every witness obtained the same protection, defense counsel would not be able to represent their clients in the action. In this regard, it is important to note that Dominion currently is a member of the putative plaintiff vendor class action against defendant CDK, in addition to its current technical status as a non-party.

6. Dominion has the burden to show good cause for its proposed protective order modification. Fed. R. Civ. P. 26(c)(1); *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377-78 (Fed. Cir. 2010); *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *2 (N.D. Ill. 2011). "To establish good cause [sic] under Rule 26(c), the moving party must present a '***particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements***.'" *Trading Techs.*, 2011 WL 148252, at *2 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16) (emphasis added); *see also Hobley v. Chicago Police Commander Burge*, 225 F.R.D. 221, 224 (N.D. Ill. 2004) ("Good cause is established by showing that the disclosure will cause a clearly defined and serious injury").

7. **Dominion Has Not Satisfied its Legal Burden**: Dominion proffers a declaration from Mr. Andreu to support good cause. The declaration offers a single conclusory statement to support Dominion's proposed modification:

> Dominion is very concerned that the use or disclosure of
> Dominion's confidential data in an inappropriate context could
> lead to the failure of Dominion's business.

Mem., Exhibit 1 (Andreu Declaration) at ¶ 25.

8. This type of assertion is a "stereotyped and conclusory statement," not a "particular and specific demonstration of fact" or "clearly defined and serious injury" required by the law. *See supra* ¶ 6. The assertion does not define any document or even categories of documents or information that would lead to Dominion's failure as a business if the information reached the hands of outside retained law firm trial counsel for defendants. Nor does it identify what legal advice lawyers at Gibbs & Bruns, Sheppard Mullin or Mayer Brown might provide that would lead to Dominion's demise.

9. The hypotheticals Dominion proffers in argument are not evidence. They stem from imagination regarding future possibilities, rather than admissible facts that demonstrate probabilities. Taking the last example in the list makes the point:

> Suppose that R&R's trial counsel has deposed Dominion's negotiator, and being under oath, Dominion's negotiator cannot bluff. The R&R's trial counsel attends business negotiated between R&R and Dominion. Counsel says nothing, but her mere presence intimidates Dominion's negotiator, as R&R's trial counsel would know when Dominion is bluffing.

(Mem., p. 8.) There is zero evidence that lawyers from Gibbs & Bruns, Sheppard Mullin or Mayer Brown have ever attended business (as apart from legal settlement) negotiations for their respective clients. None.

10. Dominion counsel's hypothetical, moreover, could apply to every case anywhere in the country regardless of subject matter anytime any customer, supplier or competitor is involved as an adverse party. That is why the law requires specific showings of fact to support risk of inadvertent disclosure in "competitive decisionmaking." *See U.S. v. Aetna Inc. and Humana Inc.*, 2016 WL 8738422, at *8 (D.D.C. Sept. 22, 2016) ("non-parties' speculations regarding potential future harms are not sufficient to justify imposing a three-year ban. . . . because it is not always possible to anticipate who may be considered a business competitor in

particular situations, the proposed modification may force defense counsel to make an untenable choice between providing fulsome representation in this case, or being able to provide such representation in future cases").[2]

11. The correspondence from Gibbs & Bruns litigation partner Aundrea Gulley (attached as Exhibit 2 to Dominion's moving papers) does not require a different result. Gibbs & Bruns is a Houston, Texas boutique trial law firm hired for one purpose: litigation. *See* https://www.gibbsbruns.com/the firm/. Ms. Gulley is a trial partner in the firm who represents multiple clients across industries and complex subject matters in courtroom proceedings. *See* https://www.gibbsbruns.com/agulley/ (she is also the firm's pro bono coordinator, and serves on the Dean's Advisory Board to the University of Illinois College of Law). She is a member of the bars of Illinois since 2000 and Texas since 2002, has always been in good standing, and has never been sanctioned by any court or subject to any disciplinary proceeding.

12. Reynolds has retained Ms. Gulley (and Gibbs & Bruns) in connection with litigation disputes. The correspondence from Ms. Gulley that Dominion cites is a legal cease and desist demand to Dominion's affiliate (SelectQu) relating to the subject matter (in part) of this lawsuit: unauthorized attempts to access the Reynolds computer system. *See* Mem., Exhibit 2. A cease and desist demand is a legal demand to enforce legal rights appropriately and commonly sent by outside retained litigation counsel. To that end here, Ms. Gulley's letter is addressed to

---

[2] Mr. Andreu also declares that "CDK and R&R Actions Are Already Taking a Toll on Dominion's Application Business," "Dominion's Business Depends on Business Relationships with R&R and CDK," and "as both a competitor and heavily dependent customer of R&R and CDK, Dominion is in a very uncomfortable position because Dominion is entirely reliant on a R&R and CDK to run its business." (Andreu Decl. ¶¶ 23-25). These assertions, regardless of their truth or falsity, do not bear on the ability of outside retained law firm counsel at Gibbs Bruns, Sheppard Mullin or Mayer Brown to comply with the current Confidentiality Order, or the risk of inadvertent disclosure in connection with competitive decisionmaking.

***Dominion's in-house attorney***, General Counsel Guy Friddell.  *Id.*  It is not a business communication or business negotiation.  Nor is it an act of criminal conspiracy, as Dominion has argued, reflecting Dominion's approach to this discovery process.

13. Likewise Ms. Miller from Mayer Brown and Mr. Cohen from Sheppard Mullin are both outside retained law firm partners who represent multiple clients.  *See* https://www.mayerbrown.com/people/britt-m-miller/; https://www.sheppardmullin.com/mcohen.  They, and the other members of their law firms working on the instant litigation, too have always been members of their respective bars in good standing, and have not been sanctioned by any court or bar or subject to any disciplinary proceedings.

14. Dominion has not proffered any evidence to demonstrate any risk that any of these outside retained law firm trial counsel will inadvertently disclose Dominion's confidential information in connection with competitive decisionmaking for their clients.

15. The cases Dominion cites also do not support its proposed modification.  *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.* **limited the in-house counsel's access to certain documents**.  237 F.R.D. 405, 410 (N.D. Ill. 2006).  The court held this extra safeguard would not impair the party's ability to litigate the case, ***because outside counsel will have "sufficient time and resources to review confidential materials***."  *Id*. (emphasis added).  The Court in *Autotech* further held that protective orders with "attorneys eyes only" provisions "have become *de rigeur*, at least where outside counsel are to have access to the information."  *Id.* at 406-407.

16. *Fed. Trade Comm'n v. Sysco Corp.* also involved three ***in-house*** attorneys.  83 F. Supp. 3d 1, 3-4 (D.D.C. 2015).  There, only the in-house Chief Legal Officer, who also served

on the company's executive team as the Vice President of Corporate Affairs, was denied access to trade secret information. *Id*.

17. *Pinterest, Inc. v. Pintrips, Inc.* involved restricting access to the plaintiff's in-house Deputy General Counsel, who was part of a small legal team and advised on almost all aspects of the company. 2014 WL 5364263, at *1 (N.D. Cal. Oct. 21, 2014). The court held ***restricting the in-house General Counsel's access will not harm plaintiff because the company "has competent outside counsel that has been involved in this case from the outset."*** *Id*. at *3 (emphasis added).

18. In *PhishMe, Inc. v. Wombat Sec. Techs. Inc.*, the court restricted access for an ***in-house*** General Counsel responsible for "all of PhishMe's legal affairs and provide[d] advice and counsel to the company on legal, compliance, and privacy matters," served on the company's management executive team, and reported directly to the CEO. 2017 WL 4138961, at *3-4 (D. Del. Sept. 8, 2017). The court held it would be difficult for that in-house general counsel to "lock up trade secrets in his mind" because "he reports to the final decisionmakers directly—and that his legal advice is crucial to shaping those decisions." *Id*. at *6. Other in-house attorneys and ***all outside counsel were granted access to the confidential information***. *Id*. at *9.

19. *Trading Techs* also is a patent case involving a plaintiff's in-house attorney, which the court recognized as "an issue unique to patent law." 2011 WL 148252 at *1. Similarly, *Brown Bag Software v. Symantec Corp.* was a patent case involving ***in-house counsel***, not outside counsel. 960 F. 2d. 1465, 1471 (9th Cir. 1992). Reynolds has already distinguished *Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936 (N.D. Ill. 2017) and *ST Sales*

8

*Tech Holdings, LLC v. Daimler Chrysler Co., LLC*, 2008 WL 5634214 (E.D. Tex. March 14, 2008) in its Motion to Compel. (*See* ECF 283, at ¶ 18.)[3]

20. Dominion can already obtain the result all these cases yield by operation of the existing Protective Order. Dominion can preclude in-house counsel from access to information it designates "Highly Confidential" under the existing Order. None of Dominion's cited cases, however, preclude outside retained law firm trial counsel from access to information produced by a party or witness. That outside retained law firm counsel can still access the information is in fact an underpinning to the decisions, because that fact guarantees a party's right to its defense by counsel of its choice.

21. Any other result would be tantamount to disqualification. All of the cases Dominion cites apply the "competitive decisionmaking" standard to in-house counsel employed by a party — no case goes beyond that clear standard or disqualifies retained outside law firm trial counsel. *See Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982) ("disqualification . . . is a drastic measure which courts should hesitate to impose except when absolutely necessary" because it "serves to destroy a relationship by depriving a party of representation of their own choosing").[4]

22. **<u>Reynolds Accurately Represented Dominion's Trial Testimony</u>**: Finally, Reynolds feels obligated to respond to Dominion's accusation that Reynolds did not provide the

---

[3] *In re Ampal-Am. Israel Corp.*, 534 B.R. 569 (Bankr. S.D.N.Y. 2015) and *Jardin v. DATAllegro, Inc.*, 2011 WL 3299395 (S.D. Cal. July 29, 2011), also cited by Dominion, are cases where an actual conflict of interest existed that warranted an ethical wall (having nothing to do with the competitive decisionmaking analysis). No such conflicts exist here.

[4] Dominion's suggestion that defendants can select new counsel from the attendees at the American Bar Association annual Antitrust Section Spring Meeting does not address the constitutional standards governing a party's right to counsel of their choice. *See Deutsche Bank*, 605 F.3d at 1380 (a party has the "right to have the benefit of counsel of its choice").

9

court with a full record regarding Dominion's role in the Authenticom preliminary injunction trial predating these MDL proceedings. Plaintiff Authenticom called Dominion as a witness.[5] Dominion's brief does not indicate whether Dominion's counsel cooperated with plaintiff counsel in that regard, or whether Dominion itself met with plaintiff counsel in connection with that testimony. Dominion would not meet or speak with defendants before taking the stand.

23. Authenticom alleged that in 2015, defendants conspired to "block" Authenticom from their respective computer systems. Authenticom further contended the alleged 2015 conspiracy caused marketplace injury in the form of higher prices to application software providers like Dominion. *See* Authenticom ECF No. 165, Hearing Transcript (June 27, 2017) at 41:16-25, 53:19-24 (Dominion's testimony solicited by Authenticom).

24. On cross-examination, Reynolds established that any large price increases to Dominion occurred *before* the conspiracy conduct that plaintiffs (and Dominion) have alleged:

> Q Every increase since 2013 has been either 5% or this year 10%, right?
>
> A That is actually correct, yes.

*Id*. at 54:7-9.

25. Authenticom's counsel in closing argument, however, proffered the price increases to Dominion as injury resulting from the alleged conspiracy:

> THE COURT: Before you get into the harm, just on the massive price increase, tell me what the state of the record is on the price increase by Reynolds. . . . [Reynolds] at least suggested maybe that their prices were high before.
>
> MR. PANNER: Actually, Your Honor, there's terrific evidence, and it came in through Dominion. Dominion talked about its RCI contract, and they said in 2011 when they entered into the RCI –

---

[5] Dominion points to the fact it received a subpoena to testify in that trial. On June 12, 2017, Authenticom served the "Notice of Intent to serve the Subpoena" on Dominion's counsel, Mr. Schildkraut. One day later, on June 13th, Authenticom disclosed the name of the Dominion witness who would be appearing, and on what topics he would be testifying.

>THE COURT: Is this Mr. Andreu?
>
>MR. PANNER: Yes. Yes, Your Honor. That when they entered into a contract with Reynolds in 2011, they were paying $247 a month and that today they are looking at, after their next price increase, $893 a month. And the testimony was for the same thing.

Authenticom ECF No. 166, Hearing Transcript (June 28, 2017) at 55-56.

26. The District Court and the Seventh Circuit subsequently cited Dominion's testimony as evidence of price increases resulting from the alleged conspiracy. *Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *4 (W.D. Wisc. July 14, 2017) ("Alan Andreu, testified that when his software company, Dominion, first began using RCI in 2011, it was paying $247 per month per dealer. Come September 2017, that same data package will cost $893"); *rev'd* 874 F.3d 1019 (7th Cir. 2017) ("There is evidence that prices have increased considerably since the 2015 agreements took effect. Alan Andreu, a manager who works for the third-party application vendor Dominion Dealer Solutions, testified that in 2011 his company purchased data integration from Authenticom and another independent company for $30 to $35 per month, per dealer. At that time, Reynolds charged $247 for similar services, a figure that has now risen to a whopping $893 in the aftermath of its agreements with CDK."). Reynolds accurately represented the trial proceedings to this court.

## CONCLUSION

27. For the foregoing reasons, Reynolds respectfully asks this Court to grant its Motion to Compel and deny Dominion's Motion to Modify the Protective Order.

Dated: August 23, 2018

Respectfully submitted,

*/s/ Michael P.A. Cohen*
Michael P.A. Cohen
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross M. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

Dylan I. Ballard
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
(415) 434-9100
dballard@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

## **CERTIFICATE OF SERVICE**

I, Leo D. Caseria, an attorney, hereby certify that on August 23, 2018, I caused a true and correct copy of the foregoing THE REYNOLDS AND REYNOLDS COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AND OPPOSITION TO DOMINION'S MOTION TO MODIFY THE PROTECTIVE ORDER, to be filed and served electronically via the court's CM/ECB system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System. A copy of the foregoing will be served on non-party Dominion via a courtesy copy sent to Dominion's counsel via electronic mail.

<u>/s/ Leo D. Caseria</u><br>
LEO D. CASERIA<br>
SHEPPARD MULLIN RICHTER & HAMPTON, LLP<br>
333 S. Hope St., 43rd Floor<br>
Los Angeles, CA 90071<br>
(213) 617-4206<br>
lcaseria@sheppardmullin.com