# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| IN RE: DEALER MANAGEMENT SYSTEMS | ) | MDL No. 2817 |
| ANTITRUST LITIGATION | ) | Case No. 18 C 864 |
| | ) | |
| _____ | ) | |
| This Document Relates To: | ) | |
| | ) | Hon. Robert M. Dow Jr. |
| The Dealership Class Action | ) | Magistrate Judge Jeffrey T. Gilbert |
| | ) | |

**THE REYNOLDS AND REYNOLDS COMPANY'S**
**RESPONSES AND OBJECTIONS TO**
**DEALER CLASS PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant The Reynolds and Reynolds Company ("Reynolds") hereby objects and responds to the First Set of Requests for the Production of Documents served on Reynolds by Plaintiffs Baystate Ford Inc.; Cliff Harris Ford, LLC d/b/a Warrensburg Ford; Hoover Automotive, LLC d/b/a Hoover Dodge Chrysler Jeep of Summerville; JCF Autos LLC d/b/a Stevens Jersey City Ford; Jericho Turnpike Sales LLC d/b/a Ford & Lincoln of Smithtown; Jim Marsh American Corporation d/b/a Jim Marsh Mitsubishi Suzuki Kia Mahindra; John O'Neil Johnson Toyota, LLC; Kenny Thomas Enterprises, Inc. d/b/a Olathe Toyota; Marshall Chrysler Jeep Dodge, LLC; Patchogue 112 Motors LLC d/b/a Stevens Ford; Pitre Imports, LLC d/b/a Pitre Kia; Pitre, Inc. d/b/a Pitre Buick GMC; Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram; Waconia Dodge, Inc. d/b/a Waconia Dodge Chrysler Jeep Ram; and Warrensburg Chrysler Dodge Jeep, L.L.C. ("Dealership Class Plaintiffs"), dated May 25, 2018, and a single additional Request served on June 13, 2018.

-1-

## GENERAL OBJECTIONS

1.       Reynolds asserts each of the following objections (the "General Objections") to Dealership Class Plaintiffs' Requests. In addition to these General Objections, Reynolds may also state specific objections to a Request where appropriate. By setting forth such additional specific objections, Reynolds does not in any way intend to limit or restrict its General Objections. Moreover, to the extent Reynolds provides a response to any of Dealership Class Plaintiffs' Requests to which Reynolds objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.       Nothing herein shall be construed as an admission by Reynolds regarding the competence, admissibility, or relevance of any fact or document, or as an admission of the truth or accuracy of any characterization or document of any kind sought by Dealership Class Plaintiffs' Requests. Reynolds reserves its right to challenge the competency, relevance, materiality, and admissibility of any documents Individual Plaintiffs produce in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action. Further, Reynolds intends no incidental or implied admissions by its answers to Dealership Class Plaintiffs' Requests. Whether Reynolds answers or objects to any particular Request should not be interpreted as an admission that Reynolds accepts or admits the existence of any fact(s) set out or assumed by such Request, that the Requests are proper, that Reynolds's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether Reynolds answers part or all of any particular Request is not intended and

should not be construed as a waiver by Reynolds of any or all objections to such Request or any other Request.

3. Reynolds objects to the Requests, definitions, and instructions to the extent that they purport to impose any obligations on Reynolds beyond the obligations imposed by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order. In responding to these Requests, Reynolds does not assume any burden not imposed by the Federal Rules, Local Rules, or applicable Court Orders.

4. Reynolds objects to the Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome. The limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). As a general matter, Reynolds objects to production of documents prior to January 1, 2013. Any production that includes documents prior to January 1, 2013 is expressly not intended to waive Reynolds's position as to the relevant time period for the purposes of any request or category of documents.

5. Reynolds objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of Reynolds; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "Privileged Documents or Information"). Reynolds does not intend

to disclose or produce any Privileged Documents or Information. Any disclosure of Privileged Documents or Information in response to any of the Requests is inadvertent and shall not be deemed a waiver of any applicable privileges or protections.

6.      To the extent Requests seek information and/or documents that are confidential or otherwise proprietary in nature, Reynolds shall only produce such information subject to the other considerations set forth in Federal Rule of Civil Procedure 26(b)(1), the terms of the Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Case No. 18-cv-864, Dkt. No. 104), and the contractual rights of any third parties whose confidential information is implicated by the Requests.

7.      Reynolds objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of Reynolds's employees and other persons, including individuals who are not parties to this litigation. Reynolds reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation (including government agencies), including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that Reynolds may produce.

8.      No statement that Reynolds will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that Reynolds will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

9.      To the extent Reynolds has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found. Similarly, Reynolds reserves the right to use electronic searching techniques, including but not limited to the use of agreed upon search terms, to avoid the need to manually inspect every potentially responsive document.

10.     Reynolds's responses to the Requests are based on its present knowledge, upon a reasonable inquiry. Discovery is ongoing, and Reynolds's investigation continues. Reynolds reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

11.     To the extent Reynolds has objected to or refused to produce documents or information in response to any given Request, and to the extent that Dealership Class Plaintiffs take issue with any such objection or refusal, Reynolds is willing to meet-and-confer with Dealership Class Plaintiffs and Co-Lead Counsel in the MDL to see if a reasonable, mutually-acceptable compromise might be reached.

12.     Reynolds objects to the extent that Dealership Class Plaintiffs' Requests are duplicative and/or cumulative of prior Requests for Production from Individual Plaintiffs or Authenticom, Inc. ("Authenticom"), and to the extent the Requests seek to end-run or undo specific agreements that have already been reached with Authenticom.

13.     Reynolds objects to the extent that any Dealership Class Plaintiff who has not asserted claims against Reynolds in this action, or who purports to represent a class that is not asserting claims against Reynolds, is purporting to request documents from Reynolds through a Request served under Rule 26.  For such Plaintiffs and/or the class or classes they purport to

-5-

represent, Reynolds is a third party, and a request for documents from Reynolds can only be accomplished through a properly served Rule 45 subpoena. Furthermore, Reynolds, as a third party, would be entitled to greater protection when responding to a Rule 45 subpoena, and any such Plaintiff would need to overcome a greater burden and relevance standard to justify its Requests to Reynolds. To the extent that Reynolds responds to any such Request, it does not intend to waive, and expressly preserves, these objections and protections.

14. Reynolds expressly reserves all applicable rights, if any, to arbitrate any claim by any Plaintiff or dealership, and does not intend to waive any such rights by responding to any Request.

15. Reynolds incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

<u>**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**</u>

1. Reynolds objects to each and every "Definition" set forth in the Requests, including "all," "any," "and," "or," "communication," "document," "documents," "including," "meeting," "person," "persons," "relating to," "related to," "referring to," "regarding," and "with respect to" to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on Reynolds broader than or inconsistent with the obligations created by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order. Reynolds will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2. Reynolds objects to the definitions of "Reynolds," "you," "your" and "your company" as overly broad and unduly burdensome to the extent they purport to require Reynolds to produce information and/or documents beyond Reynolds's possession, custody, or control. In

addition, Reynolds objects to these definitions to the extent they purport to require Reynolds to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on Reynolds's behalf.

3.    Reynolds objects to the definition of "data access policies" in so far as Reynolds does not provide dealers with "the ability . . . to authorize independent integrators to access data on the DMS or otherwise grant third parties access to their data on the DMS." To the extent that Reynolds responds to Requests that reference "data access policies," it does not mean that Reynolds agrees with or accepts Dealership Class Plaintiffs' definition or that Reynolds provides any such authorization.

4.    Reynolds objects to the definition of "data integrators" in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as Reynolds uses and understands the term. To the extent that Reynolds responds to Requests that reference "data integrators," it does not mean that Reynolds agrees with or accepts Individual Plaintiffs' definition.

5.    Reynolds objects to the definition of "data integration services" or "DIS" or "third party integrators" to the extent that the definition encompasses activities other than data integration services as Reynolds uses and understands that term. To the extent that Reynolds responds to Requests that reference "data integration services" or "DIS" or "third party integrators," it does not mean that Reynolds agrees with or accepts Dealership Class Plaintiffs' definition.

6.     Reynolds objects to the definitions of " "DMS Market" as inaccurate, irrelevant, assuming facts and legal conclusions, and calling for premature expert analysis. Reynolds does not agree that there is a relevant market for antitrust purposes that is limited to "the market for the provision of DMS services to new car franchised automobile dealers."  Non new car dealers also use DMS.  Therefore, DMS providers serving non new car dealers and non automotive dealers (e.g., off-highway vehicles, motorcycles, watercraft and powersports) are potentially part of a relevant DMS market as well.  Reynolds similarly objects to the extent that the definition of "DMS" is intended to only encompass DMS for new car franchised automobile dealers.

7.     Reynolds objects to Authenticom's purported "Instructions," including Instructions No. 1 through 18 and Definitions 28 and 29 (which only state instructions and do not define anything), to the extent that they purport to impose obligations on Reynolds broader than or inconsistent with the obligations created by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order, including the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (Case No. 18-cv-864, Dkt. No. 105). Reynolds will produce ESI responsive to these Requests in accordance with that Stipulation.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

## REQUEST FOR PRODUCTION NO. 1:

All documents relating to Third Party Integrators' (including DMI's and IntegraLink's) access to data on the Reynolds DMS. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a)     all documents and communications between Third Party Integrators and Reynolds regarding third party access to the Reynolds DMS;

(b)　　　the technological means by which Third Party Integrators access or accessed the Reynolds DMS;

(c)　　　the technological means by which Reynolds has either blocked (or attempted to block) or permitted Third Party Integrators' access to the Reynolds DMS;

(d)　　　all documents regarding Third Party Integrators' access to the Reynolds DMS;

(e)　　　all documents and communications with Vendors or Dealers regarding Third Party Integrators' access to the Reynolds DMS;

(f)　　　all documents sufficient to show which of Reynolds' Dealer customers utilized Third Party Integrators (as opposed to the RCI program) to provide access to their Reynolds DMS data, including the time period during which each Dealer utilized a Third Party Integrator; and

(g)　　　all documents relating to any Third Party Integrator's wind down of its access to data on the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests by Authenticom and/or Individual Plaintiffs. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents relating to third party integrators' "access to data on the Reynolds DMS," regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. For instance, examples (b), (c) and (d) are overbroad and irrelevant in that the technological means by which

access or blocking of access occurs makes no difference to the claims or defenses in this case. Either the decision to block was unlawful or it was not, how the blocking happened is irrelevant.  In addition, example (f) makes no sense because Reynolds has no way of knowing what non-Reynolds integrators third parties may or may not be using, and this information was deliberately concealed from Reynolds.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 2:**

All documents regarding any cooperation, coordination, joint effort, assistance, exchange of information or technical knowhow, or any other type of collaboration between Reynolds and

CDK in blocking any Third Party Integrators' access to Dealer data on their respective DMS platforms. There is no date limitation for this Request.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative.   Reynolds objects that this Request is duplicative and almost completely identical, word for word, to Authenticom Request No. 12.  It also seeks information that is not relevant to the claims or defenses in this case in that it has no date limitation.  the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 3:**

All documents regarding any VPN tunnel (or other direct access, *i.e.*, access that does not require the use of login credentials) that Reynolds provided to Third Party Integrators for accessing Dealer data on the Reynolds DMS, including any decision to rescind such access to a Third Party Integrator. There is no date limitation for this request.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Reynolds objects to this Request on the grounds that it is irrelevant, overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents relating to "any VPN tunnel" Reynolds provided to third party integrators, with no date limitation. The Dealership Class Plaintiffs have not asserted any antitrust claims based on Reynolds providing a VPN tunnel to third party integrators. There is no alleged conspiracy or monopolization based on purported Reynolds VPN tunnels. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to Reynolds blocking or disabling any Third Party Integrators' access to the Reynolds DMS, including without limitation all documents relating to the technological methods used by Reynolds to block or disable Dealer-provided login credentials, or otherwise block or disable Third Party Integrators' access to the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Request Nos. 1 and 2. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents relating to "blocking or disabling," regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. Specifically, "documents relating to the technological methods used by Reynolds to block or disable" are overbroad and irrelevant in that the technological means by which access or blocking of access occurs makes no difference to the claims or defenses in this case. Either the decision to block was unlawful or it was not, how the blocking happened is irrelevant. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it

-13-

seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 5:**

All documents, communications, and statements regarding Reynolds' policies concerning any changes to Reynolds' or other DMS providers' data access policies. There is no date limitation for this Request.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks not only certain policies, but all documents, communications and statements regarding those policies, regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. The limitations

period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 6:**

All documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including the CDK DMS. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

(a) all communications with Dealers or Vendors, representations to Dealers or Vendors, or statements relating to Dealers or Vendors regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including CDK DMS;

(b)    all statements regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including CDK DMS; and

(c)    all documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-Reynolds DMS, including CDK DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Request Nos. 1 and 2. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents relating to the "ability" of dealers to authorize, or vendors to use, third party integrators to access data on a non-Reynolds DMS, regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. Potentially anything could relate to whether dealers or vendors have such an "ability." Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 7:**

All documents and communications from Reynolds to former Dealer customers regarding the differences or similarities between Reynolds and CDK with respect to data access policies. For the avoidance of doubt, this Request includes, without limitation, any documents or communications in which Reynolds marketed its closed access policy as a point of differentiation with the CDK DMS or with other DMS providers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Request No. 6. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications regarding the differences or similarities between Reynolds and CDK with respect to data access policies, regardless of whether they relate to any of the claims or defenses in the case, and with no date limitation. Reynolds objects that this could potentially encompass anything communication from Reynolds to a dealer regarding data access. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they

filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

All documents regarding the ability of Dealers to extract their data from the Reynolds DMS manually (whether using the Dynamic Reporting tool or otherwise), including when that capability was instituted; the means by which data is extracted; how the means to extract data manually changed, if they changed at all, over the Relevant Time Period; how often Dealers extract their own data for purposes of providing the data to Vendors; how the use of this functionality (*i.e.*, the incidence of its use) has changed over the Relevant Time Period, if at all; and the means by which Dealers send their manually-extracted data to Vendors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests. Reynolds objects that this Request is duplicative and almost completely identical, word for word, to Authenticom Request No. 27. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents and communications" regarding manual extraction of data from DMS, regardless of whether they relate to any of the claims or defenses in the case, and with no date limitation. Moreover, by its terms, the Request seeks documents that would be in the custody or control of dealers—not Reynolds. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied

to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 9:**

All documents concerning any other DMS provider. For the avoidance of doubt, this Request includes:

> (a)    all documents concerning any other DMS provider's DMS and/or DMS services;

> (b)    all documents concerning the system architecture of any other DMS or DMS provider, including but not limited to the technological aspects for retrieving data from any other DMS, blocking of third party access to other DMS, or any other relevant technological matter to the claims and defenses in this case; and

> (c)    all documents concerning competition within the DMS or Data Integration

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests.  Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" "concerning any other DMS provider," regardless of whether they relate to any of the claims or defenses in the case, and with no date limitation.  Reynolds objects that as phrased, this Request is so broad that it would encompass a significant number of other Requests from the Dealership Class Plaintiffs, Individual Plaintiffs, and Authenticom. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013

-20-

for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

## REQUEST FOR PRODUCTION NO. 10:

All documents concerning any of Reynolds' DMS customers switching or attempting to switch to a different DMS provider, including the time and expense associated with changing or switching DMS providers, as well as all documents concerning any of Reynolds' DMS customers who have discontinued use of Reynolds' services since January 1, 2014. For avoidance of doubt, this Request includes, without limitation:

(a)     all documents concerning any litigation or threatened litigation resulting from such a switch or attempted switch;

(b)     all documents concerning restricting access to a former customer's Reynolds DMS data or threatening to restrict access to a customer's Reynolds DMS data if it switched to a new DMS provider;

        (c)     all documents concerning customers who have had a contract with Reynolds for DMS and/or DMS services and that contract was not renewed from January 1, 2014 to the present; and

        (d)     documents concerning customers who have had a month to month contract with Reynolds at any time from January 1, 2014 to present, regardless of whether that customer is a current Reynolds customer.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that examples (c) and (d) effectively seek all documents relating to certain Reynolds customers, regardless of whether they relate to any of the claims or defenses in the case. Reynolds objects that the requested documents are in the possession of the dealers themselves. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents concerning any of Reynolds' DMS customers switching or attempting to switch to a different DMS provider.

**REQUEST FOR PRODUCTION NO. 11:**

All documents regarding any gain or potential gain of DMS customers in connection with the "SecurityFirst" initiative, "3PA Refresh," and/or CDK's decision to restrict dealers from using third party integrators or otherwise restrict access to Dealer's DMS data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" without any date limitation. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

## REQUEST FOR PRODUCTION NO. 12:

All documents concerning any provision in Reynolds' RCI contracts (or any other Vendor contracts) that provide for automatic renewal or extension of such contracts.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning automatic renewal provisions in RCI contracts, without any date limitation. Automatic renewal or extension provisions in RCI contracts have no bearing on the claims or defenses in the Dealership Class Plaintiffs' case. It would not be proportional to the needs of the case to require Reynolds to produce every RCI contract with an automatic renewal provision and every document concerning those provisions. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 13:**

All current signed Master Services Agreements and/or contracts, agreements, and/or written understandings between Reynolds and its Dealer customers. Each agreement should include all documents that comprise the DMS contract between Reynolds and the Dealer, including any user guides, addendums, exhibits, and other documents that form the agreement between Reynolds and its Dealer customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It would not be proportional to the needs of the case to require Reynolds to produce every single Master Services Agreement or other contract with a dealer. Moreover, Reynolds objects to gathering and producing "addendums, exhibits, and other documents" that are not relevant to any claims or defenses in the case. Furthermore, these documents are in the possession of the dealers themselves. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce non-privileged documents sufficient to show its standard dealer Master Agreement and Customer Guide form contract documents from 2009 to the present.

**REQUEST FOR PRODUCTION NO. 14:**

All documents concerning any provision in Reynolds' DMS contracts that provide for automatic renewal or extension of Reynolds' DMS contracts.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of Dealership Class Plaintiffs' Request No. 15. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning automatic renewal provisions in DMS contracts, without any date limitation. Automatic renewal or extension provisions in DMS contracts have no bearing on the claims or defenses in the Dealership Class Plaintiffs' case. It would not be proportional to the needs of the case to require Reynolds to produce every DMS contract with an automatic renewal provision and every document concerning those provisions. Furthermore, these documents are in the possession of the dealers

-26-

themselves. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to produce a representative sample of automatic renewal or extension terms in DMS contracts.

**REQUEST FOR PRODUCTION NO. 15:**

All documents with respect to any changes or proposed changes to material terms in the Reynolds DMS contract, including with respect to the use of Third Party Integrators; and automatic renewal and/or extension of the contract.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning changes or proposed changes to "material terms" in Reynolds DMS contracts, without any date limitation.

The Request is vague in that it does not define "material" and provides no way to determine what is material and what is not material. In additional, automatic renewal or extension provisions in DMS contracts are not relevant and have no bearing on the claims or defenses in the Dealership Class Plaintiffs' case. Nor are such provisions "material" to DMS contracts. It would not be proportional to the needs of the case to require Reynolds to produce every DMS contract with an automatic renewal provision and every document concerning those provisions. Furthermore, these documents are in the possession of the dealers themselves. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to produce a representative sample of DMS contracts reflecting changes in the provisions relating to use of third party integrators.

**REQUEST FOR PRODUCTION NO. 16:**

All documents sufficient to show (1) which Dealers use or used a Reynolds DMS; (2) when each Dealer customer first used a Reynolds DMS; (3) how long each Dealer customer's tenure as

a client of Reynolds has lasted; and (4) if any Dealer no longer uses a Reynolds DMS, when Dealer ceased using the DMS provider. For the avoidance of doubt, Reynolds shall provide the above information for any Dealer that was a customer of Reynolds at any time during the Relevant Time Period.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks irrelevant material. Reynolds also objects to the extent that this Request asks Reynolds to create documents that do not exist in the ordinary course of business. Reynolds does not systematically track DMS tenure information in a comprehensive fashion. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds refers Dealership Class Plaintiffs to Reynolds' Response to Authenticom's Interrogatory No. 2, and the materials cited therein.

-29-

**REQUEST FOR PRODUCTION NO. 17:**

All documents sufficient to show the monthly pricing for DMS services paid by each Dealer customer identified in Request No. 16.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds objects that this Request is duplicative and cumulative of other Requests, including Request No. 18 below. Reynolds also objects to the extent that this Request asks Reynolds to create documents that do not exist in the ordinary course of business. Reynolds' transactional data for purchases by dealers only goes back to August 2014. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to its transaction-level data from Aug. 2014 – Oct. 2017 for products purchased by its dealer customers and a data dictionary explaining the

"Billing Company" and "Billing Entity" values that appear in the data, bates numbered REYCID0137882–REYCID0137921.

**REQUEST FOR PRODUCTION NO. 18:**

All documents relating to any change in the pricing for DMS services paid by Reynolds' Dealer customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds objects that this Request is duplicative and cumulative of other Requests, including Request No. 17 above. It is also overbroad and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents." Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to its transaction-level data from Aug. 2014

– Oct. 2017 for products purchased by its dealer customers and a data dictionary explaining the "Billing Company" and "Billing Entity" values that appear in the data, bates numbered REYCID0137882–REYCID0137921.

**REQUEST FOR PRODUCTION NO. 19:**

All documents sufficient to show the total number of Dealers (both by Dealership group and by rooftop) that used a Reynolds DMS, broken down on a month-by-month basis.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds also objects to the extent that this Request asks Reynolds to create documents that do not exist in the ordinary course of business. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds refers Dealership Class Plaintiffs to Reynolds' Response to Authenticom's Interrogatory No. 2, and the materials cited therein.

**REQUEST FOR PRODUCTION NO. 20:**

All documents sufficient to show the cost of Reynolds providing DMS services separate and apart from providing Data Integration Services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. The Request is also vague and does not describe the materials requested with reasonable particularity. Reynolds does not fully allocate its costs and therefore does not have documents sufficient to show the requested information. Reynolds also objects to the extent that this Request asks Reynolds to create documents that do not exist in the ordinary course of business. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

**REQUEST FOR PRODUCTION NO. 21:**

All documents relating to any Dealer that once obtained DMS services from Reynolds, but no longer does, including documents sufficient to show the reasons why those Dealers no longer obtain DMS services from Reynolds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It is duplicative and cumulative of other Requests, including Dealership Class Plaintiffs' Request No. 10.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that it seeks "all documents," without any date limitation.  Reynolds objects that the requested documents are in the possession of the dealers themselves.  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds refers Dealership Class Plaintiffs to Reynolds' Response to Authenticom's Interrogatory No. 2, and the materials cited therein.

-34-

**REQUEST FOR PRODUCTION NO. 22:**

Documents sufficient to show any up-front initiation fees, per-dealership setup or installation fees, per-transaction fees, or other one-time charges that Reynolds has charged to its Dealer customers for DMS services, broken down on a Dealer-by-Dealer basis. This Request includes documents sufficient to show when these fees or charges were instituted; why they were instituted; their amounts; and by how much they increase a Dealer's monthly DMS fees.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that it seeks documents without any date limitation, and to the extent it seeks documents showing "why" every DMS fee or charge, to any dealer, ever, was instituted. Reynolds objects that the requested documents are in the possession of the dealers themselves. Reynolds also objects to the extent that this Request seeks to require Reynodls to create documents that do not exist in the ordinary course; Reynolds tracks certain aspects of DMS fees and charges but not others, and it cannot produce what it does not track. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to its transaction-level data from Aug. 2014 – Oct. 2017 for products purchased by its dealer customers and a data dictionary explaining the "Billing Company" and "Billing Entity" values that appear in the data, bates numbered REYCID0137882–REYCID0137921.

**REQUEST FOR PRODUCTION NO. 23:**

All documents relating to the pricing charged by other DMS providers, including but not limited to CDK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent that it seeks "all documents" relating to other DMS providers' prices, without any date limitation. Reynolds objects that information and documents concerning other DMS providers' prices are in the possession of the dealers themselves or can be obtained from those DMS providers. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present concerning pricing charged by other DMS providers.

**REQUEST FOR PRODUCTION NO. 24:**

All documents concerning restrictions on Vendors' use of Third Party Integrators to access DMS data on Reynolds systems. For the avoidance of doubt, this Request includes, without limitation, all documents concerning any provision in Reynolds' RCI or Vendor contracts that limit the ability of Vendors to use Third Party Integrators to access data on Reynolds DMS systems or otherwise require that Vendors use RCI to access data on Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Dealership Class Plaintiffs' Requests Nos. 1 and 2 above. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" relating to certain restrictions on access to DMS data, without any date limitation. The fact that Reynolds did not permit or authorize use of third party integrators to

access a Reynolds DMS is not in dispute. It would not be proportional to the needs of the case to require Reynolds to produce every RCI contract with a provision restricting the use of third party integrators, and every document concerning those provisions. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present concerning Reynolds's restrictions on vendors' use of third party integrators to access data on a Reynolds DMS. Reynolds is also willing to meet and confer to explore whether a mutually acceptable compromise can be reached to provide a representative sample of RCI contract provisions containing such restrictions.

**REQUEST FOR PRODUCTION NO. 25:**

All documents sufficient to show what each Vendor paid for Data Integration Services on a month-by-month basis until they stopped using IntegraLink and/or DMI for each month of the

Relevant Time Period. For the avoidance of doubt, if any Vendor so identified no longer obtains Data Integration Services from IntegraLink or DMI, provide documents and documents sufficient to show when they stopped and what they paid when they stopped.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

This Request appears to have been mistakenly directed at Reynolds and obviously requests CDK documents as opposed to Reynolds documents. Reynolds reserves all rights and objections in connection with this Request, including all General Objections noted above.

**REQUEST FOR PRODUCTION NO. 26:**

All documents concerning restrictions on Dealers' ability to allow third parties to access data on the Reynolds DMS systems. For the avoidance of doubt, this Request includes, without limitation:

(a)    all documents concerning any restrictions on Dealers' use of Third Party Integrators to access DMS data on Reynolds systems;

(b)    all documents concerning any provision in Reynolds' DMS contracts that limit the ability of Dealers to use Third Party Integrators to access data on Reynolds DMS systems;

(c)    all documents and communications with Dealers relating to whether they can (or cannot) authorize Third Party Integrators to access data on the Reynolds DMS, including any communications that cite provisions in a particular DMS contract to that effect;

(d)    all documents relating to the enforcement or threat of enforcement of Reynolds' DMS contract against Dealers with respect to third-party access to data on the Reynolds DMS; and

(e)     all documents relating to Dealer rights under DMS contracts to authorize third parties to access data on the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Authenticom Request Nos. 22 and 23.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" relating to "restrictions" on dealers' "ability" to allow third parties to access data on a Reynolds DMS, without any date limitation.  Dealers do not have any "ability" to authorize third party integrators or other third parties to access a Reynolds DMS, because only Reynolds, as the owner of the Reynolds DMS, can provide such authorization. To the extent this Request assumes contrary facts, Reynolds objects. Also, the fact that Reynolds did not permit or authorize use of third party integrators to access a Reynolds DMS is not in dispute.  It would not be proportional to the needs of the case to require Reynolds to produce every document potentially relating to this topic.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 27:**

All documents sufficient to show the technological aspects of:

(a) how data extraction occurs from the DMS database when using Third Party Integrators;

(b) extracting data for Third Party Integrators differs from those for (i) DMI or IntegraLink or (ii) participants of the 3PA program;

(c) how manual extraction of data occurs from the DMS database; and

(d) how the technological aspects of manually extracting data from the DMS database differs from the technological aspects of extracting data for (i) DMI or IntegraLink or (ii) participants of the 3PA program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" "sufficient to show the technological aspects" associated with extracting data from a DMS, and with no date limitation.

The Request is vague and it is not clear what is meant by "the technological aspects." Reynolds objects that, as written, this would potentially require handing over, among other things, the source code for Reynolds' DMS and data extraction tools. The Request is also overbroad and irrelevant in that the technological means by which data extraction occurs makes no difference to the claims or defenses in this case. In addition, examples (b) and (d) appear to have been mistakenly directed at Reynolds and obviously request CDK documents as opposed to Reynolds documents, suggesting that the entire Request may be mistakenly directed at Reynolds. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

**REQUEST FOR PRODUCTION NO. 28:**

All documents regarding Reynolds' use of any Third Party Integrator, including but not limited to Authenticom, for Data Integration Services. For the avoidance of doubt, this Request includes any instance in which a Reynolds-owned (wholly, jointly, or partially) add-on application used a Third Party Integrator for Data Integration Services with respect to any DMS platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" regarding Reynolds' use of a third party integrator, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation.  Whether Reynolds ever used a third party integrator is not relevant to whether Reynolds and/or CDK violated any antitrust laws or whether their conduct harmed Dealership Class Plaintiffs.  It would not be proportional to the needs of the case to require Reynolds to produce every document potentially relating to this topic.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied

to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 29:**

All documents regarding data security and/or DMS system performance with respect to any Third Party Integrator's access to the Reynolds or CDK DMSs. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

 (a) all documents relating to the effect of Third Party Integrators' access to the Reynolds DMS on the performance of the Reynolds DMS;

 (b) all documents relating to any data security incidents caused by Third Party Integrators' access to the Reynolds DMS; and

 (c) all documents relating to any specific system performance issue that was or is directly attributable to third parties' access to the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Authenticom Requests 66-68. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" regarding data security and/or system performance vis-à-vis every single third party integrator's hostile access of Reynolds's DMS from the beginning of time to the present. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this

Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 30:**

All documents sufficient to show how Dealer data is stored on the Reynolds DMS. For the avoidance of doubt, this Request includes, without limitation:

(a)    all documents sufficient to show whether a Dealer's data is stored separate from the data of other Dealers;

(b)    all documents sufficient to show whether a Dealer's data is commingled with data that does not belong to the Dealer;

(c)    all documents sufficient to show where Dealer data is stored (whether on servers at the Dealership, at Reynolds-managed server farms, at third-party managed server farms, or at some other location, or in some other manner); and

(d)     all documents sufficient to show how the storage of Dealer data may have

changed over the Relevant Time Period.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 30:

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case.  It is duplicative and cumulative of

other Requests, including Authenticom Request No. 70.  In fact, a substantial portion of this

Request is nearly identical, word for word, to Authenticom Request No. 70.  Reynolds objects to

the extent that this Request seeks to end-run or undo agreements that have already been reached

with Authenticom regarding a response.  Reynolds objects that this Request seeks information

that is not relevant to the claims or defenses in this case and fails to describe the items sought

with reasonable particularity to the extent it effectively seeks "all documents sufficient to show"

how dealer data is stored on a Reynolds DMS, from the beginning of time to the present.   It is

not entirely clear if this Request seeks all documents or documents sufficient to show.   Reynolds

objects that, as written, this would potentially require handing over, among other things, the

source code for Reynolds' DMS.   This is grossly overbroad and irrelevant in and makes no

difference to the claims or defenses in this case, while subjecting Reynolds to enormous risk in

that the most critical, competitively sensitive details surrounding its most important crown jewel,

the Reynolds DMS, would need to be disseminated to counsel for numerous parties in this case

for no reason.  Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at

most, four years from the date they filed suit – October 19, 2013 for the earliest case filed

(Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected

from disclosure by the attorney-client privilege, the work product doctrine, or other applicable

privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached regarding a response in the form of a interrogatory.

**REQUEST FOR PRODUCTION NO. 31:**

All documents sufficient to show the specific changes to security measures instituted by Reynolds to protect security of Dealer data.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Authenticom Request No. 71. Reynolds objects to the extent that this Request seeks to end-run or undo agreements that have already been reached with Authenticom regarding a response. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents sufficient to show" from the beginning of time to the present. It is not entirely clear if this Request seeks all documents or documents sufficient to show. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the

earliest case filed (Teterboro).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership.  For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any.  Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 32:**

All documents referencing, relating to, or concerning the National Automobile Dealers Association in connection with Dealer data or data security, including, but not limited to, an August 28, 2013 memo of the National Automobile Dealers Association sent to members concerning Dealer data guidance and a 2014 memo entitled, "10 Steps Dealers Need To Take To Protect 'Dealer Data.'"

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It is duplicative and cumulative of other Requests, including Authenticom Request No. 73.  Reynolds objects to the extent that this

Request seeks to end-run or undo agreements that have already been reached with Authenticom regarding a response. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" from the beginning of time to the present that relate to both the National Automobile Dealers Association and "dealer data" or "data security." These are vague and overbroad concepts and the Request, as phrased, will encompass numerous irrelevant materials that make no difference to the claims or defenses in this case. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 33:**

All documents demonstrating the attendance or participation of a Reynolds representative at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, diary entries, and travel, accommodation, and restaurants receipts, or any other documentation evidencing reimbursement for attendance at the conference or convention.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 65. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" from the beginning of time to the present "demonstrating" mere "attendance" or "participation" by any Reynolds representative at any "conference or convention where customers or potential customers attended." This is grossly overbroad and will encompass numerous irrelevant materials that make no difference to the claims or defenses in this case. For example, if any of Reynolds' thousands of employees attended any convention on any topic, and any customer or potential customer also attended that convention, this Request would encompass those situations. Reynolds would need to interview each employee and former employee to determine each and every convention ever attended by that employee, and then somehow obtain a complete registration or attendance list for each such convention and then determine if any other attendee was an employee of a customer or potential customer of Reynolds. It is not

proportional to the needs of the case for Reynolds to undertake such a burden, and it would be impossible to do so within any reasonable time period and certainly not the time periods set forth in the Court's schedule. The examples given in the Request, for things like "restaurant receipts" and "diary entries," only further illustrate the gross overbreadth and harassing nature of this Request. A restaurant receipt is not going to make any difference to the claims or defenses in this case. The fact of meetings and communications between Reynolds and its customers, and between Reynolds and CDK, is not in dispute. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 34:**

All documents produced, used or distributed at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer

Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, videos, emails and any other materials used to inform, instruct and/or train Reynolds representatives to market any of Reynolds' services to Dealers at any convention, meeting, gathering or informational events that would at any time include current or potential CDK customers.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 65. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" "used" at any conference attended by "customers or potential customers," without regard to relevance and without any date limitation. This is grossly overbroad and will encompass numerous irrelevant materials that make no difference to the claims or defenses in this case. It is not proportional to the needs of the case for Reynolds to undertake such a burden. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to

Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer about this Request.

## REQUEST FOR PRODUCTION NO. 35:

Any Civil Investigative Demand served on Reynolds pertaining to alleged anticompetitive conduct and/or acquisitions by CDK and/or Reynolds. For avoidance of doubt, this request is for the Civil Investigative Demand itself and any attachments.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 35:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and is overbroad in that it contains no date limitation. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds has already produced the Civil Investigative Demand served on Reynolds in the FTC's joint conduct investigation. Reynolds is willing to meet and confer with Plaintiffs regarding the discoverability of the Civil Investigative Demand served on Reynolds in the FTC's Automate merger investigation.

## REQUEST FOR PRODUCTION NO. 36:

All documents concerning Reynolds sales data and information, including but not limited to invoices, relating to any data integrators or the following Vendors: TrueCar, Carfax, Autotrader, Cars.com, vAuto, Dealer.com, DealerSocket, RouteOne, NakedLime and DealerRater, and/or any of their subsidiaries, affiliates or related entities.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 36:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds also objects to the extent that this Request is duplicative and cumulative of other Requests, and/or seeks to end run or undo agreements that have already been reached. Specifically, Reynolds and Authenticom previously reached agreement on the production of RCI pricing information, and pursuant to that agreement, Reynolds ultimately produced certain RCI pricing information bates numbered REYMDL0037507. REYMDL0037507 shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees). The Request is also duplicative and cumulative of Dealership Class Plaintiffs' Request No. 44.

Producing invoices is unduly burdensome and not proportional to the needs of the case in light of the fact that RCI pricing information is already available via REYMDL0037507.

Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "Reynolds sales data and information," for certain entities without regard to relevance and without any date limitation. This is grossly overbroad and potentially encompasses every document relating to any of the listed entities, as any such document may have "information" broadly relating to sales. It is not proportional to the needs of the case for Reynolds to undertake such a burden. Furthermore, several specific entities identified in this Request are affiliated with Individual Plaintiffs, and the information can be obtained more easily from Individual Plaintiffs, who have been and should be coordinating with Dealership Class Plaintiffs on discovery. Furthermore, Reynolds also has no way of determining who all of the "subsidiaries, affiliates or related entities" are for all of the entities identified in the Request. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration

rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to REYMDL0037507, which shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees). Reynolds is willing to further meet and confer regarding this Request.

**REQUEST FOR PRODUCTION NO. 37:**

All documents exchanged between Reynolds and CDK and any Vendor relating to changes in data integration fees impacting (or potentially impacting) Vendors' prices and fees to Dealerships. This includes but is not limited to any documents or communications that relate in any way to Vendors increasing their prices and fees to Dealerships as a result of increases in data integration fees charged by Reynolds and/or CDK.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "any documents or communications that relate in any way" to the topic of pass-through, without any date limitation. This is grossly overbroad. Reynolds has no way of knowing or tracking whether and to what extent each vendor increases its price to a dealer, and for what reason. It is not clear how Reynolds would identify documents related to this; not every vendor price increase or discussion

of a possible vendor price increase is responsive. It is not proportional to the needs of the case for Reynolds to undertake such a burden. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present relating to the extent to which vendors pass on integration fees to dealers.

**REQUEST FOR PRODUCTION NO. 38:**

All documents concerning Reynolds's actual and projected financial results on a weekly, monthly, quarterly and/or yearly basis during the Relevant Time Period, including but not limited to:

      (a)     internal projections;

      (b)     profit and loss statements, analyses or projections;

      (c)     cost analyses or projections;

      (d)     analyses or projections of gross margins;

      (e)     budgets;

      (f)     marketing plans;

      (g)     business plans or other planning documents; and

      (h)     financial statements, including any filings with governmental agencies or presentations to banks or other financial institutions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 75. Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" concerning "projected financial results," regardless of whether they relate to any of the claims or defenses in the case. The Request is not even limited to DMS or RCI. This is grossly overbroad and it is not proportional to the needs of the case for Reynolds to undertake such a burden. Reynolds objects that the requested categories of documents have no relevance to the claims or defenses in this case, particularly (b), (c), (d) and (h). Furthermore, Reynolds objects to the extent that this Request seeks to force Reynolds to create documents that do not exist in the ordinary course. Reynolds may or may not have each of the requested categories of documents on a weekly, quarterly, monthly, and/or yearly basis, as requested. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present that analyze or evaluate Reynolds' RCI or DMS business.

**REQUEST FOR PRODUCTION NO. 39:**

All documents concerning Reynolds's policies and/or practices directed at compliance with the United States antitrust laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and duplicative and cumulative of other Requests, including Individual Plaintiffs' Request No. 68. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" concerning Reynolds' antitrust policies and practices, regardless of whether they relate to any of the claims or defenses in the case, and without limitation as to time. General antitrust compliance programs or policies are not at issue in this case. Antitrust is a broad field of law that encompasses many issues not at

issue in this case. The details of a general antitrust training program or policy have no bearing on any claims or defenses in this case. The Request is not even limited to DMS or RCI. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro).

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Reynolds further objects to this Request because it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. Reynolds objects that it would not have any documents related to antitrust policies or practices from January 1, 2013 to the present that are not privileged from disclosure by the attorney-client privilege or the attorney work product doctrine. Even if it did, it would not be proportional to the needs of the case to undertake the burden of sifting through all of the privileged material and creating a privilege log in the hopes that Reynolds might find a non-privileged document responsive to this Request.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents not protected by the attorney-client privilege or attorney work product doctrine.

**REQUEST FOR PRODUCTION NO. 40:**

All documents concerning any insurance policies, indemnification agreements or hold harmless agreements that may provide coverage for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made or costs incurred in defense of this action.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Reynolds is not currently aware of any such documents.

**REQUEST FOR PRODUCTION NO. 41:**

All documents concerning CDK's policies and/or practices regarding the retention, destruction, disposal, and/or preservation of documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents" concerning any "practice[]" regarding "retention, destruction, disposal, and/or preservation" of documents, without any date limitation. These issues are not relevant to any claim or defense in this case. Furthermore, the Request refers to CDK's practice, not Reynolds, indicating that the Request was mistakenly directed at Reynolds. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is

improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds previously produced its written document retention policy and refers Dealership Class Plaintiffs to that document.

**REQUEST FOR PRODUCTION NO. 42:**

All documents concerning the potential for entities to enter into the market for the supply of DMS, including the potential for such entry and the barriers or obstacles for such entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "the potential" for any entity to enter "the market for the supply of DMS" and without any date limitation. Reynolds objects that the Request is vague in that "the market for the supply of DMS" is not defined. Reynolds objects to the extent this Request assumes a DMS market that is limited to franchise new car dealers as opposed to all cars and vehicles, new or used, and further objects that issues of market definition and barriers to entry are expert discovery issues. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from

disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 43:**

All documents concerning the potential for entities to enter into the market for the supply of DIS, including the potential for such entry and the barriers or obstacles for such entry.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "the potential" for any entity to enter "the market for the supply of DIS" and without any date limitation. Reynolds objects that the Request is vague in that "the market for the supply of DIS" is not defined. Reynolds objects to the extent this Request assumes a DIS market that is

limited to integration to DMSs for franchise new car dealers as opposed to DMSs for all cars and vehicles, new or used, and further objects that issues of market definition and barriers to entry are expert discovery issues. Furthermore, Reynolds objects to the extent this Request assumes that integrators or DIS encompasses both third party "integrators" such as Authenticom as well as integrators such as Reynolds or CDK; Reynolds does not view the services provided by Authenticom or other such entities as constituting true integration to a DMS. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 44:**

All documents concerning Reynolds sales data and information, including but not limited to invoices and all underlying data used to generate invoices for Vendors that used (1) DMI, (2)

Integralink, and/or (3) the RCI program for data integration services, from 2011 to the present, as well as all underlying data used to generate invoices for dealers that used a Reynolds DMS, from January 1, 2011 to the present. This request includes but is not limited transactional data which shows the payor, date, price, discount, net payable, the category of data polled, as well as records that show the amounts paid to CDK in response to invoices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds also objects to the extent that this Request is duplicative and cumulative of other Requests, and/or seeks to end run or undo agreements that have already been reached. Specifically, Reynolds and Authenticom previously reached agreement on the production of RCI pricing information, and pursuant to that agreement, Reynolds ultimately produced certain RCI pricing information bates numbered REYMDL0037507. REYMDL0037507 shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees).

Producing invoices is unduly burdensome and not proportional to the needs of the case in light of the fact that RCI pricing information is already available via REYMDL0037507.

Reynolds objects that this Request seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all documents" concerning "Reynolds sales data and information," including for all RCI customers, without regard to relevance. This is grossly overbroad and potentially encompasses every document relating to any RCI customer, ever. It is not

proportional to the needs of the case for Reynolds to undertake such a burden. Furthermore, categories 1 and 2 in the Request refer to CDK entities, for which Reynolds would have none of the requested data or other information. Also, the limitations period applicable to Dealership Class Plaintiffs' claims is, at most, four years from the date they filed suit – October 19, 2013 for the earliest case filed (Teterboro). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects to the extent that it has arbitration agreements with any Dealership Class Plaintiffs or purported class members on the grounds that this Request is improper as to any such dealership. For any such dealership, the only discovery available as to Reynolds is the discovery provided for in any applicable arbitration agreement or arbitration rules, if any. Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Dealership Class Plaintiffs to REYMDL0037507, which shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees).

**<u>REQUEST FOR PRODUCTION NO. 45</u>:**

This RFP incorporates all RFPs propounded by the Individual Plaintiffs and formally requests all documents sought by those RFPs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, duplicative, cumulative, seeks irrelevant material, and is untimely.  Pursuant to the 5/7/18 Case Management Order (Dkt. 166), May 25, 2018 was the "[d]eadline to serve any additional, non-duplicative, coordinated discovery requests, search terms, and custodians."  Dealership Class Plaintiffs served a set of 44 Requests on May 25, 2018.  This additional Request No. 45 was served nearly three weeks later, and only one week before responses and objections were due.  It purports to incorporate by reference ninety-three additional Requests separately served by the Individual Plaintiffs.  This would subject Reynolds to the substantially expanded and disproportionate burden of responding to dozens of additional Requests.

Furthermore, contrary to plaintiffs' representations in meet and confer discussions, the 92 Individual Plaintiffs' Requests and the 44 Dealer Class Plaintiffs' Requests and the 89 Authenticom Requests that have been served on Reynolds thus far (225 Requests to Reynolds in total) exhibit an enormous degree of overlap, duplication and repetition, making it clear that the separate sets of Requests were not coordinated.  There are numerous examples above of Requests from the Dealership Class Plaintiffs that substantially overlap with other Requests from Authenticom or Individual Plaintiffs, and certain Requests were copied nearly word for word.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  To the extent that Reynolds produces materials in response to the Individual Plaintiffs' Requests, it will also produce those materials to Dealership Class Plaintiffs.

Dated:  June 22, 2018          Respectfully submitted,

*/s/ Aundrea K. Gulley*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and
Reynolds Company*

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

The Reynolds and Reynolds Company's Responses and Objections to Dealership Class

Plaintiffs' First Set of Requests for Production to be served by email upon the following

individuals:

    Michael N. Nemelka (mnemelka@kellogghansen.com)
    Derek T. Ho (dho@kellogghansen.com)
    Britt M. Miller (bmiller@mayerbrown.com; CDK-MDL-Team@mayerbrown.com)
    Matthew D. Provance (mprovance@mayerbrown.com; CDK-MDL-Team@mayerbrown.com)
    Peggy Wedgworth (pwedgworth@milberg.com; DMSTeam@milberg.com)
    All Parties (SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com)


                                */s/  Jessica Campos*
                                  Jessica Campos

# EXHIBIT B

# **Sheppard**Mullin

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

July 2, 2018

File Number: 48KZ-266044

**VIA EMAIL**

Peggy J. Wedgworth
Milberg Tadler Phillips Grossman, LLP
One Pennsylvania Plaza
New York, NY 10119
pwedgworth@milberg.com

Michael E. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Ste. 400
Washington, DC 20036-3215
mnemelka@kellogghansen.com

       Re:    *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL
             No. 2817 (N.D. Ill.)

Dear Peggy:

      I write this letter in response to your letter to Reynolds dated June 28, 2018.

      You have requested a telephonic meet and confer on July 3, at 10 a.m. Eastern Time
between Dealer Class Plaintiffs and Reynolds regarding certain of Reynolds' responses to
Dealer Class Plaintiffs' discovery requests. We are unavailable at that time. Subject to the
caveat set forth below, Reynolds and CDK are both available for a telephonic meet and confer
on Friday, July 6, at 10 a.m. Eastern Time, the same time that you proposed for a meet and
confer with CDK regarding CDK's responses to Dealer Class Plaintiffs' discovery requests.

      To be clear, Defendants believe all parties should participate in the discovery meet and
confer process relating to plaintiffs' discovery requests. The Court's Case Management Order
(Dkt. 166) makes clear that discovery is supposed to be "non-duplicative" and "coordinated."
Many of the discovery issues that Reynolds will be discussing with the Dealer Class Plaintiffs
will be identical or substantially similar to issues that CDK will be discussing with the Dealer
Class Plaintiffs, and vice versa. The same is true of the discovery issues that Defendants will
be discussing with the Dealer Class Plaintiffs and the Individual Plaintiffs. Having all parties
present during the meet and confer process is most efficient and most likely to ensure that
discussions proceed in a coordinated and non-duplicative manner.

Peggy J. Wedgworth
July 2, 2018
Page 2

Please let us know if both the Individual Plaintiffs and Dealer Class Plaintiffs are available for a meet and confer with Reynolds and CDK on Friday, July 6, at 10 a.m. Eastern Time.

In addition, Defendants are reviewing plaintiffs' responses to defendants' May 25 discovery requests and anticipate raising issues regarding deficiencies in those responses. Please reserve time on Friday to discuss these issues as well.

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227737898.2

# EXHIBIT C

MILBERG TADLER PHILLIPS GROSSMAN LLP                                    NEW YORK

Peggy Wedgworth
Direct Dial: 646-515-1269
pwedgworth@milberg.com

July 5, 2018

**VIA E-MAIL**

Leo Caseria, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
lcaseria@sheppardmullin.com

> Re:  *In re Dealer Management Systems Antitrust Litig.*,
>       MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Leo:

This will respond to your letter dated July 2, 2018, wherein you propose that Dealership Class Plaintiffs meet and confer with both Defendants jointly regarding our Requests for Production addressed to each Defendant. We disagree with your position that a joint meet and confer is needed here. We would like to move forward with separate meet and confers with each Defendant.

Judge St. Eve's Case Management Order (ECF No. 166) ("CMO") neither requires nor contemplates that both Defendants participate in a meet and confer regarding discovery requests addressed to one Defendant only. The CMO states that the *discovery requests* served on May 25, 2018 were to be non-duplicative and coordinated, and Dealership Class Plaintiffs have followed that order. However, the presence of one Defendant on a meet and confer call regarding discovery requests addressed to the other Defendant does nothing to advance the interests underlying the CMO.

Although your letter suggests that a joint meet and confer is warranted because Reynolds and CDK wish to address similar issues regarding Dealership Class Plaintiffs' responses to CDK's discovery requests, we do not share that view. We do not plan to negotiate any portion of our responses to CDK's discovery requests with your participation. Indeed, Reynolds served no discovery requests on Dealership Class Plaintiffs.

One Pennsylvania Plaza, 19th Floor ● New York, NY 10119 ● 212.594.5300 ● F 212.868.1229 ● www.milberg.com

Leo Caseria, Esq.
July 5, 2018
Page 2


      To avoid the need for court intervention, we would like to move forward with a telephonic meet and confer with CDK on Friday, July 6, 2018, at 10:00 am EST, and will schedule a separate telephonic meet and confer with Reynolds to occur as soon as possible. Please advise whether you are available to meet and confer regarding Reynolds' Responses to Dealership Class Plaintiffs' Requests for Production on Monday, July 9, 2018 at 10:00 am EST.

      Sincerely,

      Peggy Wedgworth

PW:jg

MILBERG TADLER PHILLIPS GROSSMAN LLP

# EXHIBIT D

## Leo Caseria

| | |
|---|---|
| **From:** | Leo Caseria |
| **Sent:** | Monday, July 16, 2018 7:30 PM |
| **To:** | Schindler, Sarah |
| **Cc:** | Wedgworth, Peggy; Hughes, John; McKenna, Elizabeth; dho@kellogghansen.com; Nemelka, Michael N.; Brian T. Ross; Aundrea K Gulley; Ryan, Mark; Marovitz, Andrew S.; Miller, Britt M.; Evans, Thomas P.; Wallner, Robert; Taylor, Sarah; Hartman, Taylor; SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com; Provance, Matthew D. |
| **Subject:** | RE: DMS - CDK Meet and Confer |

Dear Sarah,

We are not available until 4 p.m. EST tomorrow.  Does that time work for you?

Leo D. Caseria
Partner
213.617.4206 | direct
213.443.2800 | direct fax
LCaseria@sheppardmullin.com | Bio

**Sheppard**Mullin
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com

---

**From:** Schindler, Sarah [mailto:sschindler@milberg.com]
**Sent:** Monday, July 16, 2018 6:21 PM
**To:** Leo Caseria <LCaseria@sheppardmullin.com>
**Cc:** Wedgworth, Peggy <pwedgworth@milberg.com>; Hughes, John <jhughes@milberg.com>; McKenna, Elizabeth <emckenna@milberg.com>; dho@kellogghansen.com; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Brian T. Ross <bross@gibbsbruns.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Miller, Britt M. <BMiller@mayerbrown.com>; Evans, Thomas P. <TEvans@mayerbrown.com>; Wallner, Robert <RWallner@milberg.com>; Taylor, Sarah <staylor@milberg.com>; Hartman, Taylor <thartman@milberg.com>; SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com; Provance, Matthew D. <MProvance@mayerbrown.com>
**Subject:** Re: DMS - CDK Meet and Confer

Leo,
Given the upcoming discovery deadlines in this case, in the interests of moving forward with meaningfully meeting and conferring on Reynolds' Responses to our Requests for Production, we can agree not to argue that Reynolds' participation in the discovery process to date constitutes a waiver of arbitration rights (assuming, *arguendo*, Reynolds has any such rights). We still believe that CDK's presence on this meet and confer is unnecessary. Are you agreeable to moving forward with a meet and confer at the proposed time of tomorrow, Tuesday, at 10:00am EST?

**Sarah O. Schindler**
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor

1

New York, New York 10119
T: 610.833.4063 (Direct)
F: 212.868.1229
sschindler@milberg.com
*admitted in PA and NJ only*

On Jul 16, 2018, at 1:25 PM, Leo Caseria <LCaseria@sheppardmullin.com> wrote:

> Dear Sarah,
>
> We'd like to move forward with you but cannot do so if the Dealer Class Plaintiffs intend to argue that any aspect of Reynolds's participation in discovery, on a coordinated basis, constitutes a waiver of arbitration rights or is otherwise not permitted. Dealer Class Plaintiffs are arbitrarily making and changing the rules as we go to suit their own purposes, without support for the positions they are taking.
>
> We are willing to meet and confer with the Dealer Class Plaintiffs regarding discovery issues, without conditions, on a coordinated basis with CDK, subject to Reynolds's objections and reservations of arbitration rights. Please confirm that you are willing to proceed on this basis and that Reynolds does not waive arbitration rights by participating in discovery or coordinating with CDK on meet and confers. If not, we ask again that you provide supporting authority for your position, which we still have not seen.
>
> Leo
>
> Leo D. Caseria
> Partner
> 213.617.4206 | direct
> 213.443.2800 | direct fax
> LCaseria@sheppardmullin.com | Bio
>
> **Sheppard**Mullin
> Sheppard Mullin Richter & Hampton LLP
> 333 South Hope Street, 43rd Floor
> Los Angeles, CA 90071-1422
> 213.620.1780 | main
> www.sheppardmullin.com
>
> ---
>
> **From:** Schindler, Sarah [mailto:sschindler@milberg.com]
> **Sent:** Friday, July 13, 2018 1:14 PM
> **To:** Leo Caseria <LCaseria@sheppardmullin.com>
> **Cc:** Wedgworth, Peggy <pwedgworth@milberg.com>; Hughes, John <jhughes@milberg.com>; McKenna, Elizabeth <emckenna@milberg.com>; dho@kellogghansen.com; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Brian T. Ross <bross@gibbsbruns.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Miller, Britt M. <BMiller@mayerbrown.com>; Evans, Thomas P. <TEvans@mayerbrown.com>; Wallner, Robert <RWallner@milberg.com>; Taylor, Sarah <staylor@milberg.com>; Hartman, Taylor <thartman@milberg.com>; SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com; Provance, Matthew D. <MProvance@mayerbrown.com>
> **Subject:** Re: DMS - CDK Meet and Confer
>
> Leo,

We believe we have sufficiently explained our position that we wish to meet and confer with each Defendant separately regarding our Requests for Production, and that we believe this approach is consistent with the May 7th CMO (ECF No. 166). Per our July 5th letter, we appreciate the interest of a defendant in an MDL not being subject to the same requests from multiple parties, but we fail to see how that interest is furthered by the defendant joining in meet and confers regarding discovery requests addressed to a co-defendant.

Prior to our meet and confers with CDK, we also advised you of our position that Reynolds' presence on meet and confers regarding our Requests to CDK could constitute a waiver of Reynolds' rights, if any, to arbitration. You elected to participate in our first meet and confer with CDK on Friday, July 9th, and you decided not to join our subsequent meet and confers with CDK.

Presently, we are in agreement that Reynolds will not waive any arbitration rights by meeting and conferring with us on our Requests for Production directed to Reynolds. At this juncture, whether Reynolds may properly participate in our meet and confers with CDK without waiving its arbitration rights (if any) is entirely beside the point.


Please confirm whether you are willing to meet and confer with us on Tuesday at 10:00 a.m. EST.

Sarah Schindler*
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, New York 10119
T: 610.833.4063 (Direct)
F: 212.868.1229
sschindler@milberg.com
**Website**
*admitted in PA and NJ only*

This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL information and is intended only for the use of the individual or entity it is addressed to. If you are not the intended recipient, please note that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please erase this message and its attachments and notify me immediately. Thank You.

---

**From:** Leo Caseria <LCaseria@sheppardmullin.com>
**Date:** Friday, July 13, 2018 at 12:10 PM
**To:** Sarah <sschindler@milberg.com>
**Cc:** "Wedgworth, Peggy" <pwedgworth@milberg.com>, "Hughes, John" <jhughes@milberg.com>, "McKenna, Elizabeth" <emckenna@milberg.com>, "dho@kellogghansen.com" <dho@kellogghansen.com>, "Nemelka, Michael N." <mnemelka@kellogghansen.com>, "Brian T. Ross" <bross@gibbsbruns.com>, Aundrea K Gulley <agulley@gibbsbruns.com>, "Ryan, Mark" <MRyan@mayerbrown.com>, "Marovitz, Andrew S." <AMarovitz@mayerbrown.com>, "Miller, Britt M." <BMiller@mayerbrown.com>, "Evans, Thomas P." <TEvans@mayerbrown.com>, "Wallner, Robert" <RWallner@milberg.com>, "Taylor, Sarah" <staylor@milberg.com>, "Hartman, Taylor" <thartman@milberg.com>, "SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com" <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>, "Provance, Matthew D."

<MProvance@mayerbrown.com>
**Subject:** RE: DMS - CDK Meet and Confer
**Resent-From:** <service-external-dms-mdl@lists.kellogghansen.com>

Dear Sarah,

Thank you for clarifying and agreeing with us that Reynolds does not waive arbitration rights by meeting and conferring with, or producing documents to, the Dealer Class Plaintiffs in response to their document requests to Reynolds. In light of that acknowledgment, your position that any participation by Reynolds in meet-and-confer calls involving CDK makes no sense. Please clearly explain how one could constitute a waiver of arbitration rights while the other, which you have now acknowledged, does not. Absent any such explanation, we must assume that you have no legal support for your position and have simply been trying to exclude Reynolds from such calls for tactical reasons.

To be clear, we continue to disagree that Reynolds and CDK cannot both be present on meet and confer calls to discuss Dealer Class Plaintiffs' document requests directed at only one defendant. We think this is extremely inefficient, impractical, and inconsistent with the Court's Case Management Order (Dkt. 166). As I explained in my July 9 email, the parties have been ordered to "coordinate" on discovery, consistent with one of the central purposes of an MDL, and it makes no sense for the parties to coordinate on discovery and then be uncoordinated when it comes to meet and confers. While there will be some issues unique to either defendant, there are numerous requests directed to CDK and Reynolds that are virtually identical, and numerous overlapping issues that could be discussed together, such as the proper time frame of the dealer class plaintiffs' requests.

We've explained several times why we think coordinated meet and confers are permitted and make sense, and have provided you with supporting authority and reasons. Your July 11 email simply repeats your position but does not support it, and includes a threat to seek relief from the Court. What authority supports your position that Reynolds and CDK are not allowed to coordinate on discovery meet and confers and both be present on one another's meet and confer calls? We are not aware of any and you have not pointed us to any. Furthermore, as we understand it, counsel for the Individual Plaintiffs has been present on all meet and confer calls between the Dealer Class Plaintiffs and CDK. If the Individual Plaintiffs and Dealer Class Plaintiffs are not barred from both being present on a meet and confer call to discuss discovery that only involves one set of plaintiffs, doesn't that mean Reynolds and CDK are not barred from both being present on meet and confer calls involving only one or other defendant? Please explain this inconsistency. Because of your baseless position, all parties except Reynolds have been present on discovery meet and confer calls this week, to the detriment of Reynolds.

As you point out in the first paragraph of your July 11 email, Reynolds stated in response to Dealer Class Plaintiffs' document requests that it was willing to meet and confer. However, Reynolds never agreed to move forward with meet and confers that would be subject to baseless conditions and restrictions unilaterally imposed by the Dealer Class Plaintiffs, such as forced lack of coordination with CDK. Reynolds's willingness to move forward with meet and confers is also subject to its reservation of arbitration rights, and we need to understand the extent to which Dealer Class Plaintiffs are still taking the position that coordinated meet and confers constitute a waiver of arbitration rights. Please provide the answers and clarifications requested above so that we can evaluate whether and how Reynolds will proceed with discovery and discovery meet and confers with respect to Dealer Class Plaintiffs. To be clear, Reynolds expressly reserves all rights to proceed in arbitrations with dealers. It does not, and has never, waived any arbitration rights, as set forth in my July 9 email below and in numerous prior statements by Reynolds.

Lastly, while we appreciate that you are planning ahead for inevitable arbitrations with Reynolds, we disagree that Reynolds's subpoena to ProQuotes somehow entitles the Dealer Class Plaintiffs to eviscerate Reynolds's contractual rights to proceed with dealers in arbitration as to discovery. First, Reynolds is not aware of any contractual arbitration rights it has with respect to ProQuotes, as opposed to the dealers. Second, CDK dealers are not entitled to prejudice Reynolds's contractual arbitration rights by simply proceeding with the same discovery and claims and thereby subverting Reynolds's contractual arbitration rights. Third, you cite to Reynolds's Notice of Subpoena to ProQuotes, which states that it applies to "all cases," but that is unremarkable. Rule 45(a)(4) requires that a notice of subpoena be sent to "each party" before a subpoena is served on a third party. The subpoena Reynolds served on ProQuotes is issued out of the Northern District of Illinois in *In re Dealer Management Systems*, MDL 2817, as reflected on the first page of the actual subpoena to ProQuotes. Pursuant to Rule 45(a)(4), Reynolds was required to serve a notice on all parties in MDL 2817, which includes the Dealer Class Plaintiffs, which is why the notice says "all cases." However, make no mistake, the actual subpoena to ProQuotes only relates to a subset of cases within the MDL (this should be obvious as Reynolds is not even named as a defendant in certain cases in the MDL). Should ProQuotes raise relevance objections, Reynolds will be happy to discuss those issues with ProQuotes.

Leo

Leo D. Caseria
Partner
213.617.4206 | direct
213.443.2800 | direct fax
LCaseria@sheppardmullin.com |Bio

**SheppardMullin**
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com

---

**From:** Schindler, Sarah [mailto:sschindler@milberg.com]
**Sent:** Friday, July 13, 2018 7:31 AM
**To:** Leo Caseria <LCaseria@sheppardmullin.com>
**Cc:** Wedgworth, Peggy <pwedgworth@milberg.com>; Hughes, John <jhughes@milberg.com>; McKenna, Elizabeth <emckenna@milberg.com>; dho@kellogghansen.com; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Brian T. Ross <bross@gibbsbruns.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Miller, Britt M. <BMiller@mayerbrown.com>; Evans, Thomas P. <TEvans@mayerbrown.com>; Wallner, Robert <RWallner@milberg.com>; Taylor, Sarah <staylor@milberg.com>; Hartman, Taylor <thartman@milberg.com>; SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com; Provance, Matthew D. <MProvance@mayerbrown.com>
**Subject:** Re: DMS - CDK Meet and Confer

Leo,

We have not received any response to my email below. Please advise whether you are agreeable to meeting and conferring with us on Reynolds' Responses to our Requests for Production on Tuesday, July 17th, at 10:00 a.m. EST.

Thanks -

Sarah Schindler*
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, New York 10119
T: 610.833.4063 (Direct)
F: 212.868.1229
sschindler@milberg.com
**Website**
*admitted in PA and NJ only*

This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL information and is intended only for the use of the individual or entity it is addressed to. If you are not the intended recipient, please note that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please erase this message and its attachments and notify me immediately. Thank You.

---

**From:** Sarah <sschindler@milberg.com>
**Date:** Wednesday, July 11, 2018 at 10:15 PM
**To:** Leo Caseria <LCaseria@sheppardmullin.com>
**Cc:** "Wedgworth, Peggy" <pwedgworth@milberg.com>, "Hughes, John" <jhughes@milberg.com>, "McKenna, Elizabeth" <emckenna@milberg.com>, "dho@kellogghansen.com" <dho@kellogghansen.com>, "Nemelka, Michael N." <mnemelka@kellogghansen.com>, "Brian T. Ross" <bross@gibbsbruns.com>, Aundrea K Gulley <agulley@gibbsbruns.com>, "Ryan, Mark" <MRyan@mayerbrown.com>, "Marovitz, Andrew S." <AMarovitz@mayerbrown.com>, "Miller, Britt M." <BMiller@mayerbrown.com>, "Evans, Thomas P." <TEvans@mayerbrown.com>, "Wallner, Robert" <RWallner@milberg.com>, "Taylor, Sarah" <staylor@milberg.com>, "Hartman, Taylor" <thartman@milberg.com>, "SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com" <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>, "Provance, Matthew D." <MProvance@mayerbrown.com>
**Subject:** Re: DMS - CDK Meet and Confer

Leo,

Your July 9 email indicates that Reynolds is refusing to meet and confer with, or otherwise produce documents to, Dealership Class Plaintiffs regarding your Responses to our Requests for Production.  This is directly contrary to your prior representation that Reynolds "is willing to meet-and-confer" with us regarding our document requests.  *See* Reynolds' Responses and Objections to Dealership Class Plaintiffs' First Set of Requests for Production, p. 4, ¶ 11 (dated June 22, 2018).

For the avoidance of any doubt, it is not our position that Reynolds' meeting and conferring with us regarding Reynolds' Responses to our Requests for Production (as Reynolds previously indicated it would do) and producing documents to us, constitute a waiver of Reynolds' right, if any, to seek arbitration. We were opposed to Reynolds joining meet and confer

teleconferences regarding discovery requests and responses exchanged between Dealership Class Plaintiffs and CDK.

Even assuming, arguendo, that Reynolds' customers' claims against Reynolds are subject to arbitration, we would still be entitled to obtain the requested discovery from Reynolds (for example, in connection with claims of CDK customers). Indeed, Reynolds has initiated third-party discovery in "all cases" -- including the Dealership Class Case -- seeking, among other things, documents related to CDK and CDK dealers. *See* Reynolds' Notice of Issuance of Subpoena to Produce Documents to Non-Party ProQuotes Inc. (dated June 25, 2018), Requests ¶¶ 8-14.

Moreover, our view that Reynolds should not participate in our meet and confers with CDK is consistent with our view that CDK should not participate in our meet and confers with Reynolds.

We request that you reconsider your position so that we may schedule a meet and confer in the next several days to address Reynolds' objections. Please let us know by the close of business tomorrow whether you are prepared to do so; otherwise, we will seek appropriate relief from the Court.

Regards -

Sarah Schindler*
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, New York 10119
T: 610.833.4063 (Direct)
F: 212.868.1229
sschindler@milberg.com
**Website**
*admitted in PA and NJ only*

This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL information and is intended only for the use of the individual or entity it is addressed to. If you are not the intended recipient, please note that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please erase this message and its attachments and notify me immediately. Thank You.

**From:** Sarah <sschindler@milberg.com>
**Date:** Monday, July 9, 2018 at 4:06 PM
**To:** Leo Caseria <LCaseria@sheppardmullin.com>
**Cc:** "Wedgworth, Peggy" <pwedgworth@milberg.com>, "Hughes, John" <jhughes@milberg.com>, "McKenna, Elizabeth" <emckenna@milberg.com>,

"dho@kellogghansen.com" <dho@kellogghansen.com>, "Nemelka, Michael N." <mnemelka@kellogghansen.com>, "Brian T. Ross" <bross@gibbsbruns.com>, Aundrea K Gulley <agulley@gibbsbruns.com>, "Ryan, Mark" <MRyan@mayerbrown.com>, "Marovitz, Andrew S." <AMarovitz@mayerbrown.com>, "Miller, Britt M." <BMiller@mayerbrown.com>, "Evans, Thomas P." <TEvans@mayerbrown.com>, "Wallner, Robert" <RWallner@milberg.com>, "Taylor, Sarah" <staylor@milberg.com>, "Hartman, Taylor" <thartman@milberg.com>, "SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com" <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>, "Provance, Matthew D." <MProvance@mayerbrown.com>

**Subject:** RE: DMS - CDK Meet and Confer

Leo,

For the record, we do not acknowledge any right of Reynolds to proceed in arbitration.

Regards –

Sarah Schindler*
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, New York 10119
T: 610.833.4063 (Direct)
F: 212.868.1229
sschindler@milberg.com
**Website**
*admitted in PA and NJ only*

This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL information and is intended only for the use of the individual or entity it is addressed to. If you are not the intended recipient, please note that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please erase this message and its attachments and notify me immediately. Thank You.

---

**From:** Leo Caseria [mailto:LCaseria@sheppardmullin.com]
**Sent:** Monday, July 09, 2018 12:29 AM
**To:** Schindler, Sarah <sschindler@milberg.com>; Provance, Matthew D. <MProvance@mayerbrown.com>
**Cc:** Wedgworth, Peggy <pwedgworth@milberg.com>; Hughes, John <jhughes@milberg.com>; McKenna, Elizabeth <emckenna@milberg.com>; dho@kellogghansen.com; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Brian T. Ross <bross@gibbsbruns.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Miller, Britt M. <BMiller@mayerbrown.com>; Evans, Thomas P. <TEvans@mayerbrown.com>; Wallner, Robert <RWallner@milberg.com>; Taylor, Sarah <staylor@milberg.com>; Hartman, Taylor <thartman@milberg.com>; SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com
**Subject:** RE: DMS - CDK Meet and Confer

Dear Sarah,

I am writing on behalf of Reynolds in response to the Dealer Class Plaintiffs' suggestion that Reynolds' mere attendance at meet and confer discussions between the Dealer Class Plaintiffs and CDK may constitute a waiver of Reynolds' arbitration rights. While we appreciate your recognition of Reynolds'

rights to proceed in arbitration rather than in court, the Dealer Class Plaintiffs are wrong to the extent they believe there has been any waiver, and Reynolds is not aware of any authority supporting such a position. We asked for supporting authority during Friday's meet and confer call between CDK and the Dealer Class Plaintiffs, but the Dealer Class Plaintiffs were unable to identify any, and we have not received any to date.

To be clear, Reynolds has and continues to fully reserve, and does not in any way waive, its rights to proceed in arbitration against the dealer class plaintiffs (rights that your objection to our attendance at meet and confer calls implicitly concedes). Reynolds has consistently made this position known by reserving its rights to arbitration and making corresponding objections throughout the litigation, including, but not limited to, in pleadings, at hearings, and during discovery and discovery conferences. See, e.g., Joint Initial Status Report dated 3/15/18, p. 2 (Dkt. 64) (reservation of rights); 4/25/18 Hearing Transcript, p. 13 (stating that Reynolds intends to file a motion to compel arbitration); Reynolds' Responses and Objections to Dealer Class Plaintiffs' RFPs (raising objections to each and every discovery request based on arbitration rights: "Reynolds does not intend to waive any arbitration rights by responding to this Request and expressly reserves such rights."). Indeed, I again made this clear on Friday during our call – a call at which Reynolds observed but did not participate.

The Court, aware that Reynolds intended to pursue arbitration of dealership claims, nevertheless set a schedule that contemplated that discovery would proceed before Reynolds's arbitration rights could be briefed and resolved. See Case Management Order (Dkt. 166). In addition, the Court has specifically ordered that discovery must be "coordinated." Accordingly, Reynolds has responded to Dealer Class Plaintiffs' document demands subject to arbitration-based objections and reservations of rights, has not served any discovery on the Dealer Class Plaintiffs at all, and has tried to move forward with coordinated meet and confers. It makes no sense for discovery to be coordinated but for discovery meet and confers to be uncoordinated, and your contrary reading of the Court's Case Management Order is unreasonable. See also 2/1/18 JPML Transfer Order, p. 3 (Dkt. 63) (assigning cases to Judge St. Eve for "coordinated or consolidated pretrial proceedings.")

Under the circumstances described above, Reynolds does not waive arbitration rights by proceeding with coordinated discovery and participating in or attending meet and confers subject to its objections and reservations of rights, because it has not "manifested an intent to proceed with the litigation" with respect to the dealership class plaintiffs. Kawasaki Heavy Industries, Ltd. V. Bombardier Recreational Products, Inc. and BRP U.S., Inc., 660 F.3d 988, 994 (7th Cir. 2011); Skyline Restoration, Inc. v. First Baptist Church, 2017 WL 6570077 (N.D. Ill. Dec. 21, 2017); Paragon Micro, Inc. v. Bundy, 22 F. Supp. 3d 880 (N.D. Ill. 2014); Davis v. Fenton, 26 F. Supp. Ed 727 (N.D. Ill. 2014). For the avoidance of any doubt (there is none), Reynolds intends to move to compel the dealer plaintiffs to arbitration pursuant to their respective contracts.

In light of Dealer Class Plaintiffs' position and demands, and out of an abundance of caution, Reynolds will agree not to attend or participate in any further discovery or discovery meet and confers involving Dealer Class Plaintiffs. This includes discovery directed by the Dealer Class Plaintiffs at CDK, discovery directed by CDK at the Dealer Class Plaintiffs, and discovery directed by the Dealer Class Plaintiffs at Reynolds. Once Reynolds's arbitration rights have been resolved by the Court, we will either resume these discussions in arbitrations or in this litigation, depending on the Court's ruling and depending on the extent to which discovery is permitted under applicable arbitration agreements and rules.

Leo D. Caseria
Partner
213.617.4206 | direct

213.443.2800 | direct fax
LCaseria@sheppardmullin.com |Bio

**Sheppard**Mullin
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com

---

**From:** Schindler, Sarah [mailto:sschindler@milberg.com]
**Sent:** Sunday, July 8, 2018 7:28 PM
**To:** Provance, Matthew D. <MProvance@mayerbrown.com>
**Cc:** Wedgworth, Peggy <pwedgworth@milberg.com>; Hughes, John <jhughes@milberg.com>; McKenna, Elizabeth <emckenna@milberg.com>; dho@kellogghansen.com; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Leo Caseria <LCaseria@sheppardmullin.com>; Brian T. Ross <bross@gibbsbruns.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Ryan, Mark <MRyan@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Miller, Britt M. <BMiller@mayerbrown.com>; Evans, Thomas P. <TEvans@mayerbrown.com>; Wallner, Robert <RWallner@milberg.com>; Taylor, Sarah <staylor@milberg.com>; Hartman, Taylor <thartman@milberg.com>
**Subject:** Re: DMS - CDK Meet and Confer

Matt,
We look forward to reconvening at 10am EST tomorrow. We will circulate call-in information in the morning.

Thanks-

**Sarah O. Schindler**
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, New York 10119
T: 610.833.4063 (Direct)
F: 212.868.1229
sschindler@milberg.com
*admitted in PA and NJ only*

On Jul 8, 2018, at 6:53 PM, Provance, Matthew D. <MProvance@mayerbrown.com> wrote:

> Sarah –
>
> Thanks for your prompt response. Although we disagree with plaintiffs' position on these issues, in the interest of moving forward with initial meet-and-confers, we are prepared to proceed for up to another two hours on dealership plaintiffs' RFPs, tomorrow from 10:00-12:00 p.m. We believe that two additional hours (for a total of four hours) is more than sufficient to get through plaintiffs' RFPs, not all of which should require individual discussion. Please be prepared to discuss CDK's RFPs tomorrow from 1:00-3:00 p.m. and, if needed, on Tuesday at 10:00 a.m.

Regards,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

_____

**From:** Schindler, Sarah [mailto:sschindler@milberg.com]
**Sent:** Sunday, July 08, 2018 4:54 PM
**To:** Provance, Matthew D.
**Cc:** Wedgworth, Peggy; Hughes, John; McKenna, Elizabeth; dho@kellogghansen.com;
Nemelka, Michael N.; Leo Caseria; Brian T. Ross; Aundrea K Gulley; Ryan, Mark;
Marovitz, Andrew S.; Miller, Britt M.; Evans, Thomas P.; Wallner, Robert
**Subject:** Re: DMS - CDK Meet and Confer

Matt,

As we indicated on Friday's call and in our letter yesterday, we are agreeable to
discussing our responses to your RFP's, but we feel it would be most efficient to
get through the remainder of your responses to our RFP's first. We spent much
of Friday's call discussing global issues which applied to many of your responses
to our RFP's. With that discussion concluded, the next call should move more
quickly.

In the interests of compromise, we propose we discuss CDK's responses to our
RFP's from 10am-12pm EST tomorrow, with the goal of getting through as many
RFP's as possible, and reconvene to discuss our responses to your RFP's from
1pm-3pm EST tomorrow. We will also reserve 10am-1pm EST on Tuesday to
continue our discussions as needed, starting with our responses to your RFP's if
you prefer. Please confirm you are agreeable to this compromise
approach.

As to Reynolds' involvement, we maintain that, if Reynolds chooses to join in
meet and confer calls, that may constitute a further waiver of its rights, if any, to
seek arbitration.

We look forward to hearing back from you.


Regards -


Sarah Schindler*
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, New York 10119
T: 610.833.4063 (Direct)

F: 212.868.1229
sschindler@milberg.com
**Website**
*admitted in PA and NJ only*

This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL information and is intended only for the use of the individual or entity it is addressed to. If you are not the intended recipient, please note that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please erase this message and its attachments and notify me immediately. Thank You.

**From:** "Provance, Matthew D." <MProvance@mayerbrown.com>
**Date:** Sunday, July 8, 2018 at 2:34 PM
**To:** Sarah <sschindler@milberg.com>, "Wallner, Robert" <RWallner@milberg.com>
**Cc:** "Wedgworth, Peggy" <pwedgworth@milberg.com>, "Hughes, John" <jhughes@milberg.com>, "McKenna, Elizabeth" <emckenna@milberg.com>, "dho@kellogghansen.com" <dho@kellogghansen.com>, "Nemelka, Michael N." <mnemelka@kellogghansen.com>, Leo Caseria <LCaseria@sheppardmullin.com>, "Brian T. Ross" <bross@gibbsbruns.com>, Aundrea K Gulley <agulley@gibbsbruns.com>, "Ryan, Mark" <MRyan@mayerbrown.com>, "Marovitz, Andrew S." <AMarovitz@mayerbrown.com>, "Miller, Britt M." <BMiller@mayerbrown.com>, "Evans, Thomas P." <TEvans@mayerbrown.com>
**Subject:** RE: DMS - CDK Meet and Confer

Robert and Sarah –

We received your letter last night and will be responding to the substantive aspects in due course. However, we wanted to respond immediately to the statements in your letter concerning further meet-and-confers.  Dealership plaintiffs' repeated efforts to dictate the pace and composition of the discovery process—including by demanding that defendants engage in fulsome discussions of document custodians while refusing to discuss their own custodians at all (your letter of last night was the first we've substantively heard from you in that regard), by refusing to conduct joint meet-and-confers with defendants regarding common and overlapping issues, and now, by refusing to commit, much less engage, in a substantive discussion of dealership plaintiffs' discovery responses until after they have completed their inquiry of CDK—is improper and CDK is not inclined to continue in this manner.  As you know, both CDK and the dealership plaintiffs both have requested to meet-and-confer about their respective document requests. On Friday, we spent two hours discussing CDK's responses to the dealers' RFPs and did not address the dealers' responses to CDK's RFPs at all, despite our request that the meet and confer be bilateral.  As a result, we reached out later in the day to inquire as to the dealership plaintiffs' availability on Monday morning to begin discussions regarding their discovery responses.  You have now refused to engage in such a discussion, suggesting instead that the parties defer *any* discussion of CDK's RFPs—or even scheduling those discussions—until we finish discussing the dealers' RFPs to CDK (to say nothing of their RFPs to Reynolds).  That is not workable, particularly given (a) the pace at which the dealers moved through their RFPs on Friday (our two hour discussion only covered 16 of 49 RFPs) and (b) the number of CDK RFPs to which the dealers are apparently refusing to produce any documents (by

our count, more than 70 of 107 RFPs), necessitating a meet-and-confer. And there is no reason why the parties' discovery discussions have to occur consecutively—*i.e.*, that the discussion of CDK's discovery responses have to be complete before discussion of the dealership plaintiffs' responses can even begin.

In light of the foregoing but in an attempt to move forward productively, we are prepared to reconvene our meet-and-confer regarding the dealers' RFPs tomorrow from 10:00 a.m.-11:00 a.m. (Eastern) only on the condition that you confirm a commensurate amount of time—3 hours (of which we hope to use less)—to discuss CDK's RFPs to the dealership plaintiffs from among the following options (all Eastern time):

Monday: 12:00-3:00 p.m.; 3:00-6:00 p.m.
Tuesday: 10:00-1:00 p.m.

Please let us know today which of these times will work for you.

Finally, with respect to your suggestion that any meet-and-confers regarding CDK's RFPs should occur in secret, outside the presence of Reynolds, we disagree. As we explained, we are unaware of any authority by which the dealership plaintiffs have the right to exclude Reynolds from attending any discovery-related meet-and-confers. If dealership plaintiffs are aware of relevant authority, we would be happy to consider it. In the short term, however, we have conferred with counsel for Reynolds and they have informed us that, reserving all of its rights, Reynolds will accede to your demand that it not attend meet-and-confer discussions of MDL discovery directed to class plaintiffs by CDK despite Reynolds's status as a party to the MDL.


Regards,
Matt Provance
_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397


**From:** Schindler, Sarah [mailto:sschindler@milberg.com]
**Sent:** Saturday, July 07, 2018 7:11 PM
**To:** Miller, Britt M.; Provance, Matthew D.
**Cc:** Wallner, Robert; Wedgworth, Peggy; Hughes, John; McKenna, Elizabeth; dho@kellogghansen.com; Nemelka, Michael N.
**Subject:** DMS - CDK Meet and Confer

Britt/Matt,

In follow up on our meet and confer on Friday morning, please see the attached correspondence. Please confirm you are available to reconvene on Monday at 10:00 a.m. EST.

Thanks-

Sarah Schindler*
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, New York 10119
T: 610.833.4063 (Direct)

F: 212.868.1229
sschindler@milberg.com
**Website**
*admitted in PA and NJ only*

This electronic message transmission contains ATTORNEY PRIVILEGED AND CONFIDENTIAL information and is intended only for the use of the individual or entity it is addressed to. If you are not the intended recipient, please note that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please erase this message and its attachments and notify me immediately. Thank You.

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Information about how we handle personal information is available in our Privacy Notice.

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

# EXHIBIT E

**Sheppard**Mullin

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com


213.617.4206 direct
lcaseria@sheppardmullin.com

File Number: 48KZ-266044

July 31, 2018

**VIA EMAIL**

Robert A. Wallner
John Hughes
Sarah Schindler
Milberg Tadler Phillips Grossman, LLP
One Pennsylvania Plaza
New York, NY 10119
rwallner@milberg.com
jhughes@milberg.com
sschindler@milberg.com

      Re:     *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL No. 2817 (N.D. Ill.)

Dear Rob, John and Sarah:

      I write this letter in response to your letter dated July 27, 2018 and to follow up on certain issues we discussed during our telephonic meet and confers on July 20 and 24 concerning the Dealership Class Plaintiffs' First Requests for the Production of Documents ("Requests" or "RFPs") to Reynolds.

      Any statements or proposed compromises contained in this letter are subject to and without waiver of Reynolds's general or specific objections to Dealership Class Plaintiffs' RFPs. In particular, Reynolds has moved to compel arbitration of claims brought by Reynolds Dealers and believes that the proper place to conduct the vast majority of the discovery requested by Class Plaintiffs is in any future individual arbitration. Reynolds does not intend to waive any arbitration rights (including related to discovery) through any statement or position taken in this letter and expressly reserves such rights. In addition, given the lack of coordination between MDL Plaintiffs, we must insist that all compromises proposed herein be premised on the assumption that a different MDL Plaintiff will not then force Reynolds to litigate a motion to compel regarding the same subject matter.

     1.  **General Issues**

        a.  **Temporal Scope of Dealership Class Plaintiffs' RFPs**

      There does not appear to be a dispute that, as a general matter, Jan. 1, 2013 is the appropriate cut-off for document discovery. Page 11 of Dealership Class Plaintiffs' RFPs

Robert A. Wallner
July 31, 2018
Page 2

specifically identifies this as the generally applicable "Relevant Time Period," which you
reiterated on our call.

As discussed, Reynolds is willing to consider certain one-off exceptions to this cut-off
period for certain categories of documents or data, if there is a good reason for a longer date
period that is proportional to the needs of the case and not unduly burdensome on Reynolds.
However, for the vast majority of Requests, Reynolds believes January 1, 2013 is the
appropriate cut-off.

There are good reasons for a January 1, 2013 cut-off. The Dealership Class Plaintiffs'
claims and allegations center primarily around an alleged 2015 agreement between CDK and
Reynolds. 2013 is a full two years before that alleged agreement and encompasses sufficient
materials regarding the background and context for the alleged 2015 agreement. And to the
extent that Dealership Class Plaintiffs are making claims based on other types of conduct or that
require an understanding of other business practices, 5+ years of discovery is more than
enough to understand those practices. Your repeated statements that Reynolds's position
regarding the January 1, 2013 time frame relies entirely on the statute of limitations is not
accurate.

That being said, it is true that January 1, 2013 encompasses the entire statute of
limitations period (four years for federal antitrust claims), plus nine months. The first filed
Dealership Class complaint was *Teterboro*, filed on October 19, 2017. Therefore, the limitations
period for the Dealership Class extends, at most, to October 19, 2013. A cut-off of January 1,
2013 is therefore proportional to (and if anything, generous in light of) the needs of the case.
*See, e.g., Greene v. Sears Prot. Co.*, 2017 U.S. Dist. LEXIS 43810, *13-14 (N.D. Ill. Mar. 27,
2017) (limiting discovery to the statute of limitations period, holding: "This Court agrees . . . that
plaintiffs have provided no compelling argument that discovery going back earlier than [the
applicable statute of limitations] is warranted."); *Wilson v. MRO Corp.*, 2017 U.S. Dist. LEXIS
18967, *4-5 (S.D.W.V. Feb. 10, 2017) (denying motion to compel production of documents pre-
dating statute of limitations period); *Arenas v. Unified Sch. Dist. No. 223*, 2016 U.S. Dist. LEXIS
143338, *18 (D. Kan. Oct. 17, 2016) (limiting document discovery and testimony to statute of
limitations period "to avoid unnecessary burden and expense.").

During our calls, you explained that certain RFPs should have a cut-off earlier than Jan.
1, 2013 because various Reynolds pleadings refer to alleged events or conduct that occurred
prior to 2013. As an example, you pointed to basic background information set forth in
Reynolds's 7/18/18 motion to dismiss (Dkt. 256 at p. 1) and supporting declaration, including the
statement that "Since the late 1980s, Reynolds has spent billions of dollars building and
maintaining a proprietary, high-end, closely-controlled enterprise software and computing
platform for car dealerships, generally referred to in the industry as a Dealer Management
System, or 'DMS.'" Reynolds disagrees that a simple background statement such as this
"opens the door" to decades of additional document discovery.

Robert A. Wallner
July 31, 2018
Page 3

### b.  Advice of Counsel Defense

You asked whether Reynolds is asserting an advice of counsel defense.  Reynolds has not asserted this defense to date and does not currently intend to assert such a defense.  If Reynolds's position changes we will let you know.

### c.  Searching Centralized Files

You asked whether Reynolds will be searching centralized files in response to the Dealership Class Plaintiffs' RFPs.  Reynolds directs you to its General Objection No. 9 for its position on centralized files.  To the extent that your July 27 letter is intended to impose a greater burden than General Objection No. 9, we disagree with it.[1]

Moreover, your purported list of examples of centralized files that would be searched overstates what Reynolds has committed to.  We agreed to investigate the extent to which such data sources exist and are reasonably searchable, and if so, will utilize those sources consistent with General Objection No. 9.  For the avoidance of doubt, Reynolds does not intend to engage in a manual review of large databases in hopes of locating the proverbial needle-in-a-haystack, nor would such an approach be remotely feasible under the discovery schedule in this case.

With respect to your question about whether Reynolds has a centralized CRM database, Reynolds does not have a CRM database per se.  Reynolds does utilize a centralized tool for tracking certain sales calls and opportunities.  The database for this tool is not searchable.  It is capable of running certain manual reports, the burden of which we are still examining.  At this time it appears that anything close to a comprehensive review or examination of this database would be patently unworkable under the current case schedule, but we may be able to agree to provide an agreed upon sample of information to you as a compromise.

Lastly, although your June 27 letter refers to "data dictionaries" for "each of the databases in question," the discussion on that point related only to the data dictionary for the transactional data that has been produced in this case.  Per your request, the bates number is set forth in Section 3 below, along with all of the other bates numbers you asked us to locate for you.

### d.  Pricing Committee Documents

You asked whether documents relating to Reynolds's pricing committee would be produced.  Reynolds will perform a diligent search and produce any materials presented to or

---

[1] Also, numerous Reynolds responses to RFPs state that Reynolds is willing to meet and confer regarding search terms to be applied to custodial materials, and General Objection No. 9 applies to each of those responses with respect to centralized files. To the extent that your July 27 letter purports to memorialize statements by Reynolds that describe a different response or different commitment with respect to searches of custodial or centralized files, such as in response to RFPs 23-29, Reynolds disagrees.

Robert A. Wallner
July 31, 2018
Page 4

consider by an RCI pricing committee from January 1, 2013 to the present.  Reynolds does not have a DMS pricing committee.

### 2.  Issues With Specific RFPs

### a.  RFPs Seeking "Technological" Materials (RFPs 1, 4, 27)

Certain RFPs request documents relating to the "technological" aspects of Reynolds's business, particularly with respect to how DMS access is provided or blocked.  *See, e.g.*, RFPs 1, 4, 27.  As we explained, the phrase "technological" is vague and overbroad, and Reynolds does not believe that it is relevant or proportional to the needs of the case to force Reynolds to produce materials relating to Reynolds's source code or the technical details about how its systems are designed.  What is potentially relevant is whether or why Reynolds engaged in certain conduct, not the technological details about how it granted or denied DMS access.

As a compromise, you proposed limiting the concept of "technological" in RFPs 1, 4, and 27 to discussions that occur in "layman's terms."  Subject to this clarification, which Reynolds understands not to include materials such as granular system design documents, source code, algorithms, etc., Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing).

To the extent your July 27 letter purports to state a different agreement with respect to these requests, it is inaccurate.

### b.  Dealer Agreements (RFPs 13, 14, 15)

Certain RFPs request all agreements between Reynolds and dealers and all documents and communications related to those agreements and certain types of provisions in those agreements.  *See, e.g.,* RFPs 13, 14, 15. As we explained, these RFPs are overbroad and would subject Reynolds to the undue burden of locating, collecting, reviewing and producing an unworkably large body of documents, much of which is irrelevant to the claims and defenses in the case, and much of which is not centrally located.

We discussed possible compromise solutions.  You asked Reynolds to investigate whether it has or could generate a chart summarizing key contract terms applicable to various dealers.

As an initial matter, we have confirmed that the current form Master Agreement and Customer Guide, which have been produced, have remained unchanged since early 2009.  In addition, if it will resolve these requests, Reynolds is willing to produce the following:

- A chart or data sufficient to show the DMS contract term length (and renewal term length) for each of Reynolds's current DMS customers;

Robert A. Wallner
July 31, 2018
Page 5

- With respect to RFP 15, Reynolds is willing to produce non-privileged documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing) discussing changes or proposed changes to the following standard terms (i) contract renewal and/or extension; (ii) the ability of individuals or entities other than Reynolds and the Dealership customer to access the DMS and/or use data stored on the DMS; (iii) any time or limitations period for bringing claims; and/or (iv) Reynolds' ability to change the prices charged to Dealership customers for DMS software and services. Please note that this proposal covers all of the terms requested in your July 27 letter except for "contract duration," for which there is no standard term for which a search for changes or proposed changes would make sense;

- Finally, if it is necessary to resolve these requests, Reynolds may be able to produce a chart or data sufficient to show any agreed upon exceptions or alterations to the Master Agreement or Customer Guide that have been agreed upon between Reynolds and any of its current DMS customers (however, we are still working with the client to confirm this).

Please let us know if the above compromise would resolve these requests. All of the projects above involve a serious burden, and thus will only be undertaken if these requests can be considered resolved.

### c. RCI Agreements (RFP 24)

Certain RFPs request all documents concerning restrictions on vendors' use of data brokers to scrape data from a Reynolds DMS, including relevant contracts or contract provisions. See, e.g., RFP 24. Reynolds's response states that it is willing to meet and confer regarding search terms, but with respect to RCI agreements themselves, Reynolds believes it is not proportional to the needs of the case and would subject Reynolds to an undue burden to collect every variation of every RCI agreement, much of which is irrelevant to the claims and defenses in the case.

Your July 27 letter does not accurately describe our conversation on this request. During our call, Dealership Class Plaintiffs committed to revert with a proposed sample of RCI agreements that it would find acceptable, which you have not done.

Nevertheless, as a compromise, Reynolds would produce (i) a representative, current RCI Agreement, along with any other current version(s) or template(s) of the RCI Agreement that materially vary from Plaintiff's Preliminary Injunction Hearing Exhibit 53 with respect to any alleged exclusive dealing (i.e., "Non Approved Access") or price confidentiality provisions (each such version with vendor-specific identifying information redacted); and (ii) a summary analysis showing the distribution of use (as a percentage of contracts) of each variant of the contracts identified. In addition, to the extent RCI agreements are attached to otherwise responsive custodial emails, they will not be withheld.

Please let us know if the above compromise will resolve this request.

Robert A. Wallner
July 31, 2018
Page 6

### d. Additional RFPs For Which Reynolds Is Willing To Meet And Confer Regarding Search Terms (RFPs 18, 21, 22, 25)

Following our meet and confer discussions, Reynolds states that it is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing) for the following requests:

- RFP 18 (changes in Reynolds DMS pricing)

- RFP 21 (reasons why dealers switched from Reynolds's DMS to another DMS)

- RFP 22 (reasons for Reynolds DMS fees)

- RFP 25 (payments for integration services to IntegraLink and/or DMI)

As we explained on our calls, Reynolds does not expect to have any responsive materials for RFP 25. Nevertheless, we are amenable to proceeding as outlined above using reasonable search terms.

### e. Dealership Count (RFP 19)

Your July 27 letter states that you asked on our July 24 call whether Reynolds is agreeable to producing responsive data for 2011 to the present. We do not recall, and our notes don't reflect, that question being asked.

But in any event, Reynolds has already produced responsive data dating back to 2008. *See* Store Base Reports referenced in Reynolds's RFP responses.

### f. Cost Information (RFP 20)

You asked us to confirm whether Reynolds does or does not have materials responsive to RFP 20. We hereby confirm that as stated in RFP 20, Reynolds does not fully allocate its costs and therefore does not have documents sufficient to show the requested information.

### g. How Dealer Data Is Stored On The Reynolds DMS (RFP 30)

RFP 30 requests documents sufficient to show how dealer data is stored on the Reynolds DMS. Reynolds stated that it was willing to provide a response in the form of an interrogatory. This proposed interrogatory will address issues (a) through (d) in RFP 30 (whether one dealer's data is stored separate from the data of other dealers; whether one dealer's data is commingled with data that does not belong to the dealer; where dealer data is stored; how the storage of dealer data has changed over time).

You asked for confirmation that Reynolds's proposed interrogatory response will cover the period from January 1, 2013 to the present. We can confirm that it will.

Robert A. Wallner
July 31, 2018
Page 7

### h. **Time Period Applicable To RFP Regarding Reynolds's Security Measures (RFP 31)**

RFP 31 requests "documents sufficient to show the specific changes to security measures instituted by Reynolds to protect security of Dealer data." Reynolds responded that it was willing to discuss search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

You asked that we consider expanding the scope of the response to this RFP to capture materials going back to January 1, 2011. For all of the reasons set forth in Section 1.a above, Reynolds believes that the date cut-off of January 1, 2013 is reasonable for this Request.

### i. **Industry Conferences (RFPs 33-34)**

RFP 33 requests all documents "demonstrating the attendance or participation of a Reynolds representative at any conference or convention where customers or potential customers attended" and RFP 34 requests all "documents produced, used or distributed at any conference or convention where customers or potential customers attended." These RFPs are vague, overbroad and request materials that would be irrelevant to the claims and defenses in this case.

Mere participation or attendance by Reynolds at conferences or conventions has nothing to do with the issues or defenses in this case. To the extent that documents were created in connection with conferences or conventions that actually relate to issues in the case, they will already be captured by dozens of other RFPs that have been served on Reynolds and CDK. To take just one example, any materials regarding collaboration or exchange of information between Reynolds and CDK about blocking data brokers from accessing DMS would be captured by RFP 2, even if the materials are created or used or exchanged at a conference. The same is true for dozens of additional RFPs that have been served on Reynolds by multiple parties in this case. It is not clear what additional relevant materials would be captured by RFPs 33 and 34 that would not be captured by these other RFPs.

In addition, these RFPs do not identify the specific conferences or conventions that the Dealership Class Plaintiffs are actually interested in. The RFPs are not even limited to conventions that relate to DMS or integration. Reynolds has no reasonable way to determine every single possible conference that every single Reynolds employee since 2013 may have attended where a customer or potential customer also attended. During our call, we asked that Dealership Class Plaintiffs at least identify the specific conferences or conventions they are interested in but you declined to do so.

The burden of responding to RFPs 33 and 34 is not proportional to the needs of the case. If Dealership Class Plaintiffs can provide additional specificity and narrow the RFPs to potentially relevant materials, Reynolds is willing to consider a proposed compromise.

Robert A. Wallner
July 31, 2018
Page 8

### j. Invoices (RFPs 36 and 44)

RFPs 36 and 44 request "sales data and information" relating to RCI, including invoices. In response to both RFPs, Reynolds directed Dealership Class Plaintiffs to REYMDL0037507, which shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. Reynolds objected to producing all invoices because the relevant information is already contained in REYMDL0037507 and therefore the burden of collecting and producing invoices is not proportional to the needs of the case.

Your July 27 letter asks (i) whether, during the Relevant Time Period, Reynolds has maintained a database containing invoices for Vendors that used DMI, Integralink, or the RCI Program; and (ii) whether Reynolds is agreeable to producing a sampling of such invoices.

DMI and Integralink, of course, are not Reynolds companies, and Reynolds has not maintained a database containing DMI or Integralink invoices. We understand that Reynolds does have a data source from which it can pull historical RCI invoices (or the data that would have been included in the invoices) back to April 2014.[2] The burden of doing so is material, and we do not believe is justified for the reasons that we have explained.

Nevertheless, if it will resolve these requests, Reynolds is willing as a compromise to produce invoices (or the data that would have been included in the invoices) from April 2014 to the present for the following vendors specified in RFP 36: TrueCar, Carfax, Autotrader, Cars.com, vAuto, Dealer.com, DealerSocket, RouteOne, and DealerRater.[3] If you would prefer to substitute another RCI vendor for one or more of those entities, we would likely be agreeable in the event the overall number remains the same.

Lastly, to the extent RCI invoices are located in the course of Reynolds' custodial email review, they will not be withheld.

Please let us know if the above compromise will resolve these requests.

### k. Antitrust Compliance Documents (RFP 39)

Your July 27 letter asks that we confirm whether Reynolds has any non-privileged documents responsive to this request. After a diligent inquiry, we understand that Reynolds does not.

---

[2] Prior to April 2014, such data is not reasonably accessible from any centralized source.

[3] Please note that this includes all of the entities specified in your RFP 36 with the exception of NakedLime which, as we have informed you previously, is a d/b/a of Reynolds.

Robert A. Wallner
July 31, 2018
Page 9

## I.    Late-served RFP (RFPs 45)

RFP 45 purports to incorporate by reference the 92 RFPs that the Individual Plaintiffs served on Reynolds.  RFP 45 is improper for several reasons.

Pursuant to the 5/7/18 Case Management Order (Dkt. 166), May 25, 2018 was the "[d]eadline to serve any additional, non-duplicative, coordinated discovery requests, search terms, and custodians."  Dealership Class Plaintiffs' RFP 45 was served nearly three weeks after May 25 and is therefore untimely.

RFP 45 is also improper because it is duplicative and not coordinated. The 92 Individual Plaintiffs RFPs purportedly incorporated into RFP 45 are not complementary to the 44 remaining Dealership Class Plaintiffs' RFPs.  Instead, a review of the 92 Individual Plaintiffs' Requests and the 44 Dealer Class Plaintiffs' Requests and the 89 Authenticom Requests that have been served on Reynolds thus far (225 Requests to Reynolds in total) exhibit an enormous degree of overlap, duplication and repetition.  Numerous specific RFPs from the Dealership Class Plaintiffs cover substantially the same type of material as RFPs from the Individual Plaintiffs.  Certain Dealership Class Plaintiff RFPs are nearly word-for-word identical to RFPs previously served on Reynolds by Authenticom.

Regardless, Reynolds has stated in response to RFP 45 that to the extent that Reynolds produces materials in response to the Individual Plaintiffs' RFPs, it will also produce those materials to the Dealership Class Plaintiffs.

Dealership Class Plaintiffs expressed concern that some relevant documents might not be produced to the Dealership Class Plaintiffs without RFP 45.  Given the high degree of overlap between the various sets of comprehensive RFPs that have been served on Reynolds, and the fact that the Individual Plaintiffs and Dealership Class Plaintiffs have proposed a joint set of search terms to be run on the same set of agreed custodians for Reynolds, this appears to be a theoretical concern rather than an actual problem.  If Dealership Class Plaintiffs can identify a specific type of document that it believes will not be produced unless Reynolds responds to RFP 45, Reynolds is happy to discuss it with the Dealership Class Plaintiffs.

### 3.    Information Requested By Dealership Class Plaintiffs Regarding Certain Reynolds Documents Or RFP Responses

#### a.    Bates Numbers

During our meet and confers, you requested REYMDL bates numbers for various documents that Reynolds referenced in its RFP responses.  Reynolds notes that your requests for these bates numbers makes clear that you had not even reviewed the specific documents Reynolds referenced in its RFP responses, even though you had sent us a meet and confer letter about those RFP responses and we were on a call with you to discuss those RFP responses, which is disappointing.

The requested bates numbers are provided below:

Robert A. Wallner
July 31, 2018
Page 10

- Bill Stop Report (original):  REYMDL00017997

- Bill Stop Report (update):  REYMDL00133969

- Store Base Report:  REYMDL00133958-67

- Transaction-level data from Aug. 2014 – Oct. 2017 for products purchased by dealer customers:  REYMDL00133970-REYMDL00134009

- Data dictionary:  REYMDL00134009

- CID for FTC's Joint Conduct Investigation: REYMDL00037470-506

- Reynolds's document retention policies:  REYMDL00134861-75

### b.  Marketing Files (RFP 7)

You asked whether Reynolds has a centralized file of marketing materials that would be searched in response to this RFP.  We confirm that there is a centralized marketing file or files that will be searched for the Relevant Time Frame.

### c.  Information Regarding Bill Stop Report, Store Base Report, and Dealer Transactional Data (RFP 16)

In connection with RFPs 16 and 19, you have asked for more information about the databases underlying Reynolds's Bill Stop Report, Store Base report, and its dealer transactional data.  The dealer transactional data is generated from a database, and the data fields are defined in the data dictionary.  The Bill Stop Report and the Store Base Report are not generated from a database.  Both of these reports are manually created and updated.

Your July 27 letter inquires for the first time whether the data set forth in the previous paragraph are "sufficient to identify the Dealerships that used a Reynolds DMS during the Relevant Time Period, plus the dates those Dealers started and (if applicable) stopped using a Reynolds DMS."  Breaking that question down, our understanding is that that information is sufficient to identify the dealerships that used a Reynolds DMS during the period covered by the transactional data, but not necessarily prior to that period.  That information is sufficient to reflect whether and when a dealership stopped using a Reynolds DMS during the Relevant Period.  For some dealers (specifically those that became Reynolds customers during the period covered by the transactional data), it will be sufficient to reflect when the dealers became Reynolds DMS customers.  Based on our investigation, there is no reasonably accessible way to determine the start date for all Reynolds dealer customers during the Relevant Period.  However, if it will resolve these Requests, Reynolds is willing to produce a chart reflecting the inception date for the current contract term of current Dealership customers.

In connection with RFP 17, you have asked whether the transactional data reflects amounts paid by dealers rather than just amounts invoiced.  The dealer transactional data only

Robert A. Wallner
July 31, 2018
Page 11

reflects invoiced amounts, not final amounts actually paid.  Based on our investigation, any attempt to pull payment history information for the same period would take approximately 3 to 4 months of effort, and thus is not proportional to the needs of the case.

### 4.  Requests that Dealership Class Plaintiffs Have Attempted to Narrow

#### a.  "All documents concerning any other DMS provider" (RFP 9)

RFP 9 was plainly overbroad as originally formulated.  We appreciate the effort to narrow the request, as set forth in your July 27 letter and believe that your suggested revisions could form the basis of an acceptable compromise.  However, the statement that "we reserve our right to seek supplemental discovery responsive to this Request as originally worded" undermines any incentive to reach a compromise here.  Please let us know if Dealership Class Plaintiffs are interested in reaching an actual resolution of this RFP.

#### b.  Switching-related documents (RFP 10)

RFP 10 was plainly overbroad as originally formulated.  We appreciate the effort to narrow the request, as set forth in your July 27 letter, but the request as purportedly narrowed is still overbroad.

In the interest of compromise, if it will resolve the request, Reynolds is willing to produce non-privileged, responsive documents from January 1, 2013 forward located using agreed upon search terms (the negotiation of which is ongoing) for subsections (a) and (b) as originally formulated, and subsection (c) as revised in your July 27 letter.

For the avoidance of doubt, to the extent your July 27 letter's statement that Reynolds agreed to produce "all documents in its possession, custody, or control that are responsive to parts (a) and (b) of this Request" purports to impose a burden that is unbound by the stated time frame and reasonable custodians, it is inaccurate.

#### c.  "All documents concerning" automatic renewal provisions (RFP 12)

RFP 12 was plainly overbroad as originally formulated.  We appreciate the effort to narrow the request, as set forth in your July 27 letter and believe that your suggested revisions could form the basis of an acceptable compromise.  However, the statement that "we reserve our right to seek supplemental discovery responsive to this Request as originally worded" undermines any incentive to reach a compromise here.  Please let us know if Dealership Class Plaintiffs are interested in reaching an actual resolution of this RFP.

Robert A. Wallner
July 31, 2018
Page 12

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227863437.3