Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| VIAMEDIA, INC., | ) | |
| | ) | |
| | ) | Case No. 1:16-cv-05486 |
| *Plaintiff*, | ) | |
| | ) | Hon. Amy St. Eve |
| v. | ) | |
| | ) | |
| COMCAST CORPORATION, and | ) | |
| COMCAST SPOTLIGHT, LP, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## DECLARATION OF THOMAS E. REILLY, JR.

I, Thomas E. Reilly, Jr., declare as follows:

1. I am a senior partner at the law firm of Gross McGinley, LLP.

2. I also serve as General Counsel for Viamedia, Inc. ("Viamedia"), plaintiff in the above-captioned action.

3. I submit this declaration in support of Viamedia's Motion for Protective Order regarding certain privileged and protected documents inadvertently produced to the Department of Justice and to defendants Comcast Corporation and Comcast Spotlight, LP (collectively, "Comcast").

4. Viamedia first approached three prospective litigation funders – Therium Capital Management, Ltd. ("Therium"), Longford Capital Management, LP ("Longford"), and Burford Capital LLC ("Burford") – in mid-2015, while it was actively contemplating litigation against Comcast.

1

5. As a condition of Viamedia's sharing information, each funder entered into a nondisclosure agreement ("NDA") that precludes it from disclosing confidential information to other unrelated parties and contemplates the preservation of all applicable privileges and protections from disclosure.

6. Attached as Exhibit 1 to this declaration is a true and correct copy of Viamedia's NDA with Therium.

7. Attached as Exhibit 2 to this declaration is a true and correct copy of Viamedia's NDA with Burford.

8. Attached as Exhibit 3 to this declaration is a true and correct copy of Viamedia's NDA with Longford.

9. In November 2015, Viamedia received a Civil Investigative Demand ("CID") from the Department of Justice Antitrust Division.

10. In my capacity as General Counsel of Viamedia, I was involved in and aware of Viamedia's process for collecting, reviewing, and producing documents responsive to the CID.

11. To respond to the CID, Viamedia conducted searches of its internal files and identified over nine million potentially responsive documents.

12. Viamedia engaged a third-party discovery vendor to run electronic searches through its document collections to narrow that universe of potentially responsive documents.

13. To aid the third-party vendor's searches, counsel for Viamedia crafted search terms designed to identify document custodians and capture responsive documents.

14. Those searches left in excess of 600,000 documents—spanning over four million pages—for further review.

2

15. Viamedia next engaged a team of contract attorneys to perform first-level attorney review of the post-search collection, under the supervision of Viamedia's litigation counsel.

16. Despite the costs of human review of so large a document collection, Viamedia decided that such a review was necessary in part to ensure that it did not produce privileged documents in response to the CID.

17. To aid the privilege review, Viamedia's counsel and litigation counsel created two lists of privilege terms: the first set identified the names of counsel and law firms engaged by Viamedia, and the second set identified general terms likely to appear in privileged documents. Viamedia's third-party vendor then took steps to ensure that those names and terms were highlighted on each document on which they appeared to facilitate the human privilege review process. Documents identified as potentially privileged were then collected and reviewed specifically for privilege.

18. The purpose of organizing the potentially privileged materials in this manner was to ensure that Viamedia did not include privileged documents in its productions to DOJ in response to the CID.

19. To guide that review, litigation counsel for Viamedia trained the reviewers and provided an extensive guidance protocol.

20. That protocol, among other things, instructed reviewers to elevate to Viamedia's litigation counsel any potentially privileged documents about which they were uncertain.

21. The reviewers then reviewed all documents—both those identified as privileged by the electronic searches and those marked for production—to ensure that Viamedia withheld all privileged material.

3

22. After the first-level review process was complete, senior contract attorney staff conducted a quality control review.

23. Litigation counsel for Viamedia performed a final quality control review and prepared a privilege log for production to DOJ.

24. On June 9, 2016, Viamedia completed its production of over 360,000 documents spanning over four million pages to DOJ in response to the CID, together with a privilege log identifying 5,795 privileged documents withheld from production.

25. Pursuant to the parties' agreement in this action to exchange their respective DOJ productions, Viamedia produced to Comcast on December 5, 2016, its DOJ production in the same form in which it had made that production to DOJ.

26. On January 27, 2017, Comcast first notified Viamedia that it had identified potentially privileged documents in Viamedia's DOJ production.

27. Comcast's January 27, 2017, letter was the first indication Viamedia had that any privileged document had been inadvertently produced to DOJ and therefore reproduced to Comcast.

28. On January 30, 2017, Comcast notified Viamedia that it had identified additional potentially privileged documents in Viamedia's DOJ production.

29. Immediately upon receiving Comcast's letters, Viamedia's litigation counsel began a comprehensive review of not only the documents Comcast had identified, but also its entire DOJ production.

30. Viamedia's litigation counsel developed keyword searches to identify other potentially privileged documents in its production; those searches identified approximately 2,000 potentially privileged documents.

4

31. Viamedia's litigation counsel then reviewed each of those documents individually, and determined that the documents Comcast had identified, as well as several hundred additional documents, were privileged and had been inadvertently produced.

32. Viamedia completed its review by February 7, 2017, and promptly notified both Comcast and DOJ that it had inadvertently produced privileged material.

33. Viamedia notified Comcast of its inadvertent production by letter dated February 7, 2017, and notified DOJ of its inadvertent production by letter dated February 9, 2017.

34. Viamedia initially identified 920 total privileged documents. Through the meet-and-confer process, Viamedia narrowed its privilege assertion to 432 documents based on Comcast's agreement that, in doing so, Viamedia had not waived any privilege over any subject matter.

35. Viamedia also produced—to both DOJ and Comcast—a supplemental privilege log describing the nature of the inadvertently produced documents.

36. Attached as Exhibit 4 to this declaration is a true and correct copy of Viamedia's NDA with PNC Bank.

37. Attached as Exhibit 5 to this declaration is a true and correct copy of Burford's NDA with PNC Bank.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated: May 17, 2017

_____
Thomas E. Reilly, Jr.

5