**PUBLIC VERSION**

# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AUTHENTICOM, INC., | |
| Plaintiff, | |
| vs. | Case No. 17-cv-318 |
| CDK GLOBAL, LLC, and THE REYNOLDS AND REYNOLDS COMPANY, | |
| Defendants. | |

## CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO AUTHENTICOM'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant CDK Global, LLC ("CDK") hereby objects and responds to Plaintiff Authenticom, Inc.'s ("Authenticom") First Set of Requests for the Production of Documents for Defendant CDK Global, LLC dated October 2, 2017.

## GENERAL OBJECTIONS

1.     CDK asserts each of the following objections (the "General Objections") to Authenticom's Requests.  In addition to these General Objections, CDK may also state specific objections to a Request where appropriate.  By setting forth such additional specific objections, CDK does not in any way intend to limit or restrict its General Objections.  Moreover, to the extent CDK provides a response to any of Authenticom's Requests to which CDK objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.     Nothing herein shall be construed as an admission by CDK regarding the competence, admissibility, or relevance of any fact or document, or as an admission of the truth or accuracy of any characterization or document of any kind sought by Authenticom's Requests.

CDK reserves its right to challenge the competency, relevance, materiality, and admissibility of any documents Authenticom produces in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action. Further, CDK intends no incidental or implied admissions by its answers to Authenticom's Requests. Whether CDK answers or objects to any particular Request should not be interpreted as an admission that CDK accepts or admits the existence of any fact(s) set out or assumed by such Request, that the Requests are proper, that CDK's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether CDK answers part or all of any particular Request is not intended and should not be construed as a waiver by CDK of any or all objections to such Request or any other Request.

3.     CDK objects to the Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome. The limitations period applicable to Authenticom's claims is, at most, four years from the date it filed suit—May 1, 2013. Further, Authenticom's Complaint does not allege any potentially actionable conduct by CDK until much later than that. Therefore, unless otherwise specified in its response to a specific Request, CDK production of documents will be limited to the time period beginning on or after January 1, 2013. Further, CDK objects to making multiple collections of documents for purposes of responding to these Requests, on the ground that such collections are unnecessarily burdensome and disproportional to the needs of the case.

4.      CDK objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of CDK; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "Privileged Documents or Information").   CDK does not intend to disclose or produce any Privileged Documents or Information.   Any disclosure of Privileged Documents or Information in response to any of the Requests is inadvertent and shall not be deemed a waiver of any applicable privileges or protections.

5.      CDK objects to the Requests to the extent that they seek information and/or documents that are confidential or otherwise proprietary in nature.   The represented parties in this litigation have agreed upon an Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on June 9, 2017 (Dkt. No. 85).   Thus, to the extent that a request calls for production of confidential or competitively sensitive material, as defined by the Confidentiality Order, CDK will only produce such material subject to that Order.

6.      CDK objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of CDK's employees and other persons, including individuals who are not parties to this litigation.   CDK reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation, including by allowing such parties to seek a protective order from the Court prior to the production of material that

implicates their confidential or private information, or by redacting such information from documents or ESI that CDK may produce.

7.      No statement that CDK will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that CDK will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.  In accordance with the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on October 26, 2017 (Dkt. No. 225), CDK intends to begin producing responsive, non-privileged documents and information following the identification of document custodians, date limitations, search terms, and other potential uses of computer-assisted review or predictive coding techniques through the meet and confer process.   However, to the extent that responsive documents can be identified and produced without the use of search terms, custodians, or date limitations, CDK will make good-faith, diligent efforts to produce those responsive documents as soon as practicable, prior to reaching agreement or resolving any disagreements over search criteria.  In addition, CDK will endeavor, to the extent feasible, to substantially complete its productions of documents identified as material to expert disclosures and dispositive motions reasonably in advance of the deadlines for such motions and disclosures so as not unreasonably delay the proceedings.  Similarly, where depositions of particular document custodians are requested, CDK will also endeavor, to the extent feasible, to produce responsive documents pertaining to that custodian before his or her deposition takes place.

8.    To the extent CDK has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found.  Similarly, CDK reserves the right to use electronic searching techniques, including but not limited to the use of agreed upon search terms, to avoid the need to manually inspect every potentially responsive document.

9.    CDK's responses to the Requests are based on its present knowledge, upon a reasonable inquiry.  Discovery is ongoing, and CDK's investigation continues.  CDK reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

10.   To the extent CDK has objected to or refused to produce documents or information in response to any given Request, and to the extent that Authenticom takes issue with any such objection or refusal, CDK is willing to meet-and-confer with Authenticom to see if a reasonable, mutually-acceptable compromise might be reached.

11.   CDK incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    CDK objects to each and every "Definition" set forth in the Requests, including "communication," "meeting," "person," "relating to," "related to," "referring to," "regarding," and "with respect to" to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 34 and/or any applicable Local Rule or other Court Order.  CDK will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     CDK objects to Authenticom's definition of "add-on application" in Definition No. 1 as overly broad and unduly burdensome, to the extent it purports to include "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

3.     CDK objects to Authenticom's definitions of "CDK" and "you," "your" and "your company" in Definition Nos. 6 and 27 as overly broad and unduly burdensome to the extent they purport to require CDK to produce information and/or documents beyond CDK's possession, custody, or control.  In addition, CDK objects to Definition Nos. 6 and 27 to the extent they purport to require CDK to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on CDK's behalf.

4.     CDK objects to Authenticom's definition of "data integrators" and "third party integrators" in Definition Nos. 9 and 25, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as CDK uses and understands the term.  To the extent that CDK responds to Requests that reference "data integrators" or "third party integrators," it does not mean that CDK agrees with or accepts Authenticom's definitions.

5.     CDK objects to Authenticom's definition of "DealerVault" in Definition No. 10 as overbroad and inaccurate to the extent it describes itself as a "data integration product".  As stated in Authenticom's Memorandum in Support of Its Motion for a Preliminary Injunction (Dkt. 61), Authenticom's DealerVault product does not actually "integrate" with a DMS (Dkt. 61

at n. 2); instead, Authenticom extracts data from the DMS using screen scraping technology and deposits certain of those data into DealerVault for later use.

6.      CDK objects to Authenticom's definitions of "DMI" and "IntegraLink" in Definition Nos. 11 and 14 as overly broad, unduly burdensome, and seeking documents and information that are irrelevant and not within CDK's possession, custody, or control, to the extent that these definitions purport to include any documents or information pertaining to Digital Motorworks, Inc. or IntegraLink before those entities were acquired by and incorporated into the business operations of CDK.

7.      CDK objects to Authenticom's "Instructions," including Instruction Nos. 1, 2, 3, 4, 5, 6, and 7, to the extent that they purport to conflict with, or impose any obligations that are greater than or otherwise inconsistent with, the ESI Stipulation.  CDK will collect, review, and produce ESI responsive to these Requests in accordance with that Stipulation.

**CDK'S SPECIFIC RESPONSES TO**
**REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

***Regulatory Investigations***

**REQUEST NO. 1.** All documents and correspondence relating to any inquiry or investigation by the Federal Trade Commission, Department of Justice, or any other federal or state regulatory authority regarding your DMS business, data integration business, add-on applications, data access policies, or any other related matter. The date limitation for this request is January 1, 2007, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.      any documents produced by you (or any other party) to any such regulatory authority;

    b.      any correspondence with any such regulatory authority, including any Civil Investigative Demand ("CID") or subpoena received from any such regulatory authority;

    c.      any transcripts, recordings, or records of any interviews and/or testimony provided by any witness to any such regulatory authority; and

7

        d.      any CDK or Reynolds internal documents relating to any investigation by any such regulatory authority.

**<u>RESPONSE:</u>** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome to the extent it seeks the production of "all" documents "relating," in any way, to "any inquiry or investigation" by the FTC, the DOJ, or any other regulatory authority regarding virtually every aspect of CDK's DMS-related business. CDK further objects to this Request as overly broad and unduly burdensome in that it seeks documents over 10 years old. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK also objects to this Request as overly broad to the extent it seeks documents related to any CDK business other than those at issue in this litigation.

Subject to and without waiving these or its General Objections, CDK states that subject to any restrictions imposed by the relevant regulatory authority and to the extent they exist and are within CDK's possession, custody, and control, CDK will produce any pre-existing business documents produced by CDK to any federal or state regulatory authority pursuant to a CID or subpoena, but only to the extent such documents relate to any formal inquiry or investigation initiated by such regulatory authority between January 1, 2013 and the present, are relevant to the claims and defenses in this litigation, and are not protected from disclosure by an applicable privilege.

.

***Agreements and Communications Between CDK and Reynolds***

**REQUEST NO. 2.** All communications between CDK and Reynolds regarding their respective DMS business, data integration business, add-on applications, data access policies, or any other related matter – including all documents concerning such communications. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome to the extent it seeks the production of "all" communications between CDK and Reynolds regarding virtually any aspect of their respective DMS-related businesses, as well as all documents "concerning" such communications since the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Thus, random correspondence as and between CDK and Reynolds regarding, for example, a business venture between the two companies related to an application from 1987 (to the extent such a document even exists) have no bearing on whether or not Defendants allegedly entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive and thus are beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged correspondence as and between CDK and Reynolds related to the companies' respective DMS-related business for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 3.** All communications between CDK and Reynolds regarding access by independent data integrators to data on their respective DMS platforms. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome to the extent it seeks "all" communications between CDK and Reynolds regarding access by independent data integrators to data on their respective DMS platforms since the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Thus, communications between CDK and Reynolds regarding third-party access to their respective DMS systems dating from, for example, 1991 (again to the extent such documents exist), would have no bearing on whether or not Defendants allegedly entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive and thus are beyond the scope of permissible discovery. CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 2.

Subject to and without waiving these or its General Objections, CDK states that, to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged correspondence as and between CDK and Reynolds regarding access by "independent data integrators" to data on CDK and Reynolds's respective DMS platforms for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 4.** All documents and communications regarding any agreement (written or otherwise) between CDK and Reynolds. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome to the extent it seeks "all" documents and communications regarding "any" agreement, written or otherwise, between CDK and Reynolds since the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Agreements between CDK and Reynolds predating January 2013 or those unrelated to the claims or defenses in this litigation are beyond the scope of permissible discovery. CDK further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents evidencing any agreements as and between CDK and Reynolds regarding access by "independent data integrators" to data on their respective DMS platforms for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 5.** All documents and communications relating to the February 18, 2015 "Data Exchange Agreement," "3PA Agreement," and "Reynolds Interface Agreement" (collectively, the "Agreements"). There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

11

a. all communications between CDK and Reynolds regarding the Agreements;

b. all communications with other parties (whether vendors or dealers) regarding the Agreements;

c. all drafts of the Agreements;

d. all documents describing, construing, or interpreting the Agreements;

e. all internal documents and communications regarding the Agreements;

f. because CDK and Reynolds have waived their attorney-client privilege with respect to the Agreements – and any such communications are subject to the crime-fraud exception in any event – all communications with counsel for CDK and/or Reynolds regarding the Agreements; and

g. any other document relating in any way to the Agreements.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent that it seeks information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to the three agreements identified in the Request. In addition, this Request is duplicative of other Requests including, for example, Request No. 4, which seeks "all" documents and communications regarding "any agreement" between CDK and Reynolds (which presumably would include the three agreements identified in Request No. 5), and Request No. 2, which seeks "all" communications between CDK and Reynolds regarding, among other things their DMS-related businesses (which presumably would include communications regarding the three agreements identified in Request No. 5). CDK also objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to the claims and defenses in this litigation. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Authenticom has not articulated the factual or legal basis for its assertion in subparagraph (f) of this Request purporting to justify its demand for "all communications with counsel for CDK and/or Reynolds

regarding the Agreements," and CDK is unaware of a valid basis for such a request and accordingly objects to producing responsive documents, if any.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents evidencing (a) communications between CDK and Reynolds regarding the Agreements; (b) communications with third parties regarding the Agreements; (c) non-privileged drafts of the Agreements, and (d) non-privileged internal documents and communications discussing the Agreements for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 6.** All documents and communications regarding the transition of vendor customers of CDK into the RCI program. For the avoidance of doubt, this request includes, without limitation:

    a.    all information provided by CDK to Reynolds about its vendor customers, *see*, *e.g.*, §§ 4.3, 4.4, Exhibit DEA-2 of the Data Exchange Agreement;

    b.    all communications between CDK and Reynolds about CDK's vendor customers;

    c.    all communications between CDK and its vendor customers regarding the RCI program;

    d.    all communications between Reynolds and CDK's vendor customers regarding the RCI program;

    e.    all communications with Reynolds DMS customers regarding the transition of CDK's vendor customers into the RCI program;

    f.    all pricing information regarding what CDK vendor customers paid for access to data on the Reynolds DMS before the Data Exchange Agreement, and what those vendor customers (1) paid when they entered into the RCI program, and (2) what they pay now; and

    g.    all communications related to any instance where Reynolds advised vendors awaiting RCI certification to move their data integration business to CDK, DMI, or IntegraLink in advance of RCI certification.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly

13

burdensome in that it literally seeks "all documents and communications" regarding the transition of any vendor, for any reason, from CDK to Reynolds's RCI program from the beginning of time to the present. CDK further objects to this Request as overly broad and unduly burdensome to the extent it seeks certain CDK vendor pricing information with respect to those vendors' access to data stored on Reynolds's DMS (subparagraph (f)). What prices CDK may have charged its vendor customers at some point in time prior to those vendors becoming Reynolds customers has no bearing on whether or not Defendants allegedly entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive. Such information has no bearing on the claims or defenses in the litigation and is beyond the scope of permissible discovery. In addition, this Request is duplicative of other Requests including, for example, Request No. 5 which seeks "all" documents and communications relating, in any way, the February 2015 Agreements (which presumably would include documents relating to the vendors affected by the wind-down provisions of the Data Exchange Agreement).

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents evidencing the transition of DMI and IntegraLink vendor customers to the RCI program pursuant to the February 2015 Agreements identified in Request No. 5 including (a) information provided by CDK to Reynolds about those customers pursuant to the Data Exchange Agreement; (b) communications between CDK and Reynolds regarding those customers; (c) communications between CDK and those vendor customers regarding the RCI program; (d) communications between Reynolds and those vendor customers regarding the RCI program, to the extent that

14

CDK received a copy of such communications; and (e) communications with Reynolds DMS customers regarding the transition of those vendor customers into the RCI program for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 7.** All documents and communications regarding data security and/or DMS system performance with respect to CDK's access to the Reynolds DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

    a.     all documents and communications relating to the effect of CDK's access to the Reynolds DMS on the performance of the Reynolds DMS;

    b.     all documents and communications relating to any data security incidents caused by CDK's access to the Reynolds DMS; and

    c.     all documents and communications relating to any specific system performance issue that was or is directly attributable to CDK's access to the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents and communications" regarding data security and/or DMS system performance with respect to "CDK's access," presumably through its subsidiaries DMI and IntegraLink, to Reynolds's DMS from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 8.**  All documents and communications regarding the impact on CDK's business (including the business of its subsidiaries, DMI and IntegraLink)—whether on CDK's finances, its dealer and vendor relationships, or otherwise—caused by Reynolds' blocking of CDK's access to dealer data on the Reynolds DMS.

**RESPONSE:**  CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it is unlimited in time, as no relevant time period for the Request is stated.  As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint.  Moreover, its claims center on an alleged agreement that did not occur until February 2015.  CDK further objects to this Request as overly broad in so far as information related to the impact, if any, of Reynolds's blocking of CDK's access, via DMI and IntegraLink, to data on the Reynolds DMS on CDK's finances has no bearing on the claims or defenses in this action and thus is beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 9.**  All documents regarding working with other data integrators – such as Authenticom, SIS, SelectQu, or others – and all communications with those entities regarding finding solutions (technological or otherwise) to Reynolds' blocking.

**RESPONSE:**  CDK objects to this Requests as vague, overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to the term "working with" as vague and overly broad—

working with other "data integrators" on any matter and for any purpose? Or working with them "regarding finding solutions (technological or otherwise) to Reynolds's blocking"? Or something else? CDK further objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents regarding any interaction as and between CDK and a "data integrator." CDK further objects to this Request as overly broad and unduly burdensome to the extent it seeks documents unrelated to any claim or defense in this litigation. Whether or not CDK "worked with" any "data integrator" to try to find a "solution" to Reynolds's blocking of attempted hostile access into its DMS system has no bearing on whether or not CDK and Reynolds entered into an alleged unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive. Such information is beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents evidencing any undertakings or communications as and between CDK and any "data integrators" regarding a possible "solution" to Reynolds's blocking of hostile integration into Reynolds's DMS for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

### _Authenticom_

**REQUEST NO. 10.** All documents and communications referencing, relating to, or concerning Authenticom, DealerVault, or Steve Cottrell. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly

17

burdensome in that it literally seeks "all documents and communications" relating, in any way, to Authenticom or its owner, Steve Cottrell, from the beginning of time to the present.  As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint.  Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 11.**  All documents and/or communications between CDK and Reynolds relating to Authenticom, DealerVault, or Steve Cottrell – including all documents concerning such communications. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and/or communications" between CDK and Reynolds, "including all documents concerning such communications," relating, in any way, to Authenticom or its owner, Steve Cottrell, from the beginning of time to the present.  As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint.  Moreover, its claims center on an alleged agreement that did not occur until February 2015.  In addition, this Request is duplicative of other Requests including, for example, Request No. 10, which seeks all documents—not just those as and between CDK and Reynolds—related to Authenticom, DealerVault, or Steve Cottrell.

18

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 12.** All documents and/or communications regarding any cooperation, coordination, joint effort, assistance, exchange of information or technical knowhow, or any other type of collaboration between CDK and Reynolds in blocking Authenticom's access to dealer data on their respective DMS platforms. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and/or communications" regarding "any" "exchange of information" or "collaboration" between CDK and Reynolds related to blocking Authenticom's access to "dealer data" on their respective DMS platforms. Moreover, whether CDK and Reynolds exchanged technical information, and if so, what technical information was exchanged, in order to facilitate the blocking of hostile access to their proprietary DMS systems has no bearing on whether or not CDK and Reynolds entered into an alleged unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive. Thus, such information has no bearing on the claims or defenses in the litigation and is beyond the scope of permissible discovery. In addition, this Request is duplicative of other Requests including, for example, Request No. 4 which seeks "all" documents and communications regarding "any agreement" between CDK and Reynolds, and Request No. 2, which seeks "all" communications between CDK and Reynolds regarding, among other things, their DMS-related businesses, and Request Nos. 10 and 11, which

seek, among other things, "all" communications CDK and Reynolds relating to Authenticom, DealerVault, or Steve Cottrell. CDK further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to this litigation. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents evidencing any cooperation or agreement between CDK and Reynolds to exclude Authenticom from the marketplace for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 13.** All communications with vendors and/or dealers regarding Authenticom, DealerVault, or Steve Cottrell. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and/or communications" between CDK and vendors and/or dealers relating, in any way, to Authenticom or its owner, Steve Cottrell, from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. In addition, this Request is duplicative of other Requests including, for example, Request No. 10, which seeks all documents—not just those as and between CDK and dealers/vendors—related to Authenticom, DealerVault, or Steve Cottrell.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 14.** All documents and communications to or from Dan McCray, Steve French, Howard Gardner, Malcolm Thorne, Robert Karp, Ron Workman, Steve Anenen, or Brian MacDonald relating to the following: Authenticom, Steve Cottrell, DealerVault, "hostile" or "unauthorized" integration, dealers using independent integrators to access their data, Bob Brockman, Robert Schaefer, Ron Lamb, Chris Hellyer, or Kelly Hall. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" to or from eight current or former CDK employees related to five broad subject matters and five Reynolds-affiliated employees from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. In addition, this Request is duplicative of other Requests including, for example, Request No. 10, which seeks all documents—not just those as and between the identified individuals—related to Authenticom, DealerVault, or Steve Cottrell.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 15.**  All documents and communications regarding the VPN tunnel that CDK provided to Authenticom for accessing dealer data on the CDK DMS, and the reasons why CDK stopped providing Authenticom with that access.

**RESPONSE:**  CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents and communications" regarding the "VPN tunnel" CDK used over five years ago in connection with its DMS services business and the reasons why CDK terminated that as a service.  In addition, CDK objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to this litigation.  As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint.  Moreover, its claims center on an alleged agreement that did not occur until February 2015.  Moreover, CDK's historical provision of access to a "VPN tunnel" to Authenticom or any other entity has no bearing on the claims or defenses at issue in this litigation and thus is beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

*CDK's Access to Other DMSs*

**REQUEST NO. 16.**  All documents and communications relating to CDK's (including through its subsidiaries, Digital Motorworks and Integralink) access to data on the Reynolds

22

DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

> a. all communications between CDK and Reynolds regarding CDK's access to the Reynolds DMS;
>
> b. the technological means by which CDK accesses or accessed the Reynolds DMS;
>
> c. the technological means by which Reynolds has either blocked or permitted CDK's access to the Reynolds DMS;
>
> d. any internal documents and communications regarding CDK's access to the Reynolds DMS;
>
> e. any communications with vendors or dealers regarding CDK's access to the Reynolds DMS;
>
> f. documents sufficient to show the revenues CDK received from vendors for providing access to data on the Reynolds DMS;
>
> g. documents sufficient to show the vendors for whom CDK provided access to data on the Reynolds DMS, including the time period during which CDK provided or has provided that access; and
>
> h. all documents and communications relating to CDK's wind down of its access to data on the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to CDK's access to data on Reynolds's DMS, from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 6, which seeks all documents related to the wind-down of DMI and IntegraLink's hostile access to Reynolds's DMS pursuant to the agreements identified in Request No. 5. In addition, the technological means by which CDK, through DMI and IntegraLink, accessed Reynolds's DMS (subsection (b)), the technological means by which Reynolds blocked that access (subsection (c)), and the revenues

CDK received from vendors for providing access to data on the Reynolds DMS (subsection (f)) have no bearing on the claims or defenses at issue in this litigation and thus are beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to subsections (a), (d), other than internal documents and communications that focus on the technological means by which CDK, through DMI and IntegraLink, accessed Reynolds's DMS, (e), (g), and (h) of this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 17.** All documents and communications relating to CDK's "SMART-R" program.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to CDK's "SMART-R" program, from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 16. In addition, the technological means by which CDK, through DMI and IntegraLink, accessed Reynolds's DMS has no bearing on the claims or defenses at issue in this litigation and thus is beyond the scope of permissible discovery.

**REQUEST NO. 18.**  All documents and communications relating to Reynolds blocking or disabling of the dealer-provided login credentials that Digital Motorworks and/or IntegraLink used to access the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to Reynolds's blocking or disabling CDK's access to data on Reynolds's DMS, from the beginning of time to the present.  As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 16.  In addition, the technological means by which Reynolds blocked CDK's access to Reynolds's DMS has no bearing on the claims or defenses at issue in this litigation and thus is beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 19.**  All documents and communications concerning CDK's (including through its subsidiaries, Digital Motorworks and IntegraLink) access to data on non-CDK, non-Reynolds DMS platforms. The date limitation for this request is January 1, 2014, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    all communications between CDK and any other DMS provider regarding
          CDK's access to that provider's DMS;
    b.    the technological means by which CDK accesses or accessed data on any
          other DMS provider's DMS, including the use of login credentials, APIs,

SFTPs, other file transfer protocols, cloud sharing technology (such as Dropbox), direct integration, or otherwise;

c.     the technological means by which any DMS provider has either blocked or permitted CDK's access to that provider's DMS;

d.     all agreements between Digital Motorworks or IntegraLink, on the one hand, and a DMS provider, on the other hand, regarding access to data on the provider's DMS;

e.     any internal documents and communications regarding CDK's access to data on non-CDK DMSs; and

f.     any communications with vendors or dealers regarding CDK's access to data on non-CDK DMSs.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to CDK's "access to data on non-CDK, non-Reynolds DMS platforms." CDK's access to non-CDK, non-Reynolds DMSs has no bearing on the claims or defenses at issue in this litigation and thus is beyond the scope of permissible discovery. CDK further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

### *CDK's Data Access Policies*

**REQUEST NO. 20.** All documents, communications, and statements (whether internal or public) regarding CDK's policies (or the policies of any other DMS provider) with respect to third-party access to dealer data on the CDK DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

a.     all documents and communications relating to your public statements regarding the data access policies of any other DMS provider, including Reynolds; and

b.     all documents and communications regarding your marketing of your open or closed data access policies as contrasted with the data access policies of other DMS providers.

**RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an

applicable privilege. Specifically, CDK objects to the use of the terms "open" and "closed data access policies" in subsection (b) of this Request as vague and ambiguous. To the extent possible, CDK will interpret those terms consistent with how they are used by CDK in the ordinary course of its business. CDK also objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents, communications, and statements" regarding, in any way, CDK's policies—or that of any other DMS provider—with respect to third party access to the CDK DMS, from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 16.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 21.** All documents and communications relating to Open Secure Access, Inc., including your participation or membership in the group, the policies and purpose of the group, the stated principles espoused by the group, or any other documents relating to the group and your own data access policies. The date limitation for this request is January 1, 2006, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents and communications" relating, in any way, Open Secure Access, Inc., or "any other documents relating to … your own data access policies" for an 11+ year

period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents relating to Open Secure Access, Inc. for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 22.** All documents, communications, and statements (whether internal or public) regarding the ability of dealers to authorize independent data integrators to access data on the CDK DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

    a.    all communications with dealers or vendors, representations to dealers or vendors, or statements relating to dealers or vendors (whether internal to CDK or public) regarding the ability of dealers to authorize independent data integrators to access data on the CDK DMS;

    b.    all public statements regarding the ability of dealers to authorize independent integrators to access data on the CDK DMS; and

    c.    all internal documents and communications regarding the ability of dealers to authorize independent integrators to access data on the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents, communications, and statements" regarding "the ability of dealers to authorize independent integrators to access data on the CDK DMS" from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 23.** All documents, communications, and statements (whether internal or public) regarding the ability of vendors to use independent integrators to access data on the CDK DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

a. all communications with dealers or vendors, representations to dealers or vendors, or statements relating to dealers or vendors (whether internal to CDK or public) regarding the ability of vendors to use independent integrators to access data on the CDK DMS;

b. all public statements regarding the ability of vendors to use independent integrators to access data on the CDK DMS; and

c. all internal documents and communications regarding the ability of vendors to use independent integrators to access data on the CDK DMS.

**RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of term "ability" in this Request as vague and ambiguous. For purposes of responding to this Request, CDK will interpret "ability" to mean whether or not vendors are permitted to use third parties to access data stored on CDK's DMS in accordance with CDK's third party access policies and contractual agreements with vendors and DMS customers. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks "all documents, communications, and statements" regarding "the ability of vendors to use independent integrators to access data on the CDK DMS" from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 24.** All communications between CDK and any provider of data integration services – such as SIS, Authenticom, or otherwise – including all documents concerning such communications. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

> a.   any communications regarding the integration provider's access to dealer data on the CDK DMS;
> b.   any internal documents regarding the integration provider's access to dealer data on the CDK DMS; and
> c.   any cease and desist letters or similar complaints regarding the integration provider's access to dealer data on the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all communications" between CDK and any provider of data integration services, as well as all documents concerning such communications, from the beginning of time to the present.  As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 10 which seeks all communications related to Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

evidencing the specific matters identified in subparagraphs (a)-(c) of this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 25.** All documents relating to any agreements between CDK and any provider of data integration services. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

    a.    any "wind down," settlement, or other agreements entered into between CDK and any data integration provider;

    b.    all communications between CDK and the integration provider regarding the agreements;

    c.    all communications with other parties (whether vendors or dealers) regarding the agreements;

    d.    all drafts of the agreements;

    e.    all documents describing, construing, or interpreting the agreements;

    f.    all internal documents and communications regarding the agreements;

    g.    all communications with counsel for CDK regarding the agreements; and

    h.    any other document relating in any way to the agreements.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent that it seeks information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents" relating, in any way, to *any* agreements between CDK and *any* provider of data integration services from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. In addition, this Request is duplicative of other Requests including, for example, Request No. 5 which seeks "all" documents and communications regarding "any agreement" between CDK and Reynolds. CDK further objects to this Request as overly broad and unduly burdensome in so far as CDK's agreements, if any, with providers of "data integration services" other than Reynolds (to the

extent Reynolds can properly be characterized as such) no bearing on the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.

### *CDK's 3PA Program*

**REQUEST NO. 26.** Documents and communications sufficient to describe the characteristics of the 3PA Program before the "SecurityFirst" and/or "3PA Refresh" initiative. The date limitation for this request is January 1, 2007, to January 1, 2016.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome, and to the extent that it seeks information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request to the extent it seeks documents over 10 years old. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to January 1, 2016.

**REQUEST NO. 27.** All documents and communications relating to CDK's "SecurityFirst" and/or "3PA Refresh" initiative. The date limitation for this request is January 1, 2014, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    All internal presentations and communications regarding the "Security First" and/or "3PA Refresh" initiative;

    b.    All financial analyses conducted relating to the "Security First" and/or "3PA Refresh" initiative;

    c.    All documents and communications relating to the reasons CDK introduced the "Security First" and/or "3PA Refresh" initiative;

    d.    All communications with dealers and vendors regarding the "Security First" and/or "3PA Refresh" initiative;

    e.    Documents to show the differences between the 3PA program before and after the "Security First" and/or "3PA Refresh" initiative;

    f.    All documents and communications with respect to the technological implementation of the "Security First" and/or "3PA Refresh" initiative; and

> g.    All documents and communications relating to any security enhancements instituted as part of the "Security First" and/or "3PA Refresh" initiative.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.    Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to CDK's "SecurityFirst" and "3PA Refresh" initiatives from for a 3+ year period.   CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 26.   In addition, CDK objects to this Request to the extent it seeks technical information regarding the implementation of its Security First protocols or is 3PA Refresh programs as such information does not relate to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents evidencing the specific matters identified in subparagraphs (a)-(e) and (g) of this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 28.**  Documents and communications regarding the ability of dealers to extract their data from the DMS manually, including when that capability was instituted; the means by which dealers extract the data manually; how often dealers extract their own data for purposes of providing the data to third-party vendors; and the means by which dealers send their manually-extracted data to vendors. The date limitation for this request is January 1, 2007, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent that it seeks information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request CDK objects to this Request as grossly overly broad

and unduly burdensome in that it literally seeks "all documents and communications" regarding manual extraction of data from the DMS for a 10+ year period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show when dealers gained the capability to manually extract from the DMS, the general means by which that extraction is performed, the frequency of that extraction, and the means by which dealers forward that data to vendors for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 29.** Documents and communications regarding whether vendors that participate in the 3PA program are able to obtain data directly from dealers consistent with the terms of the 3PA contract. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** Subject to and without waiving its General Objections, CDK states that it will produce non-privileged documents responsive to this Request for the period January 1, 2014 to the date of CDK's collections of documents for purposes of responding to these Requests, to the extent they exist and are within CDK's possession, custody, and control and after a reasonable search of appropriate sources.

*Whitelisting*

**REQUEST NO. 30.** All documents and communications relating to "whitelisting" – or CDK otherwise declining to disable or block – the login credentials created by dealers for certain vendors or data integrators. The date limitation for this request is January 1, 2015, to the present. For the avoidance of doubt, this request includes, without limitation:

      a.    All communications with data integrators, vendors, and/or dealers regarding the whitelisting of login credentials;

b.      Documents sufficient to show for which data integrators, vendors, or other third parties CDK whitelisted login credentials;

c.      Documents sufficient to show how whitelisting is accomplished, including all technical, system architecture, workflow processes, or other mechanisms used to whitelist login credentials;

d.      All internal documents and communications regarding whitelisting of login credentials, including whether to whitelist, how to whitelist, the benefits and drawbacks of whitelisting, or any other such materials regarding the protection of login credentials used by third parties; and

e.      Documents sufficient to show the number of dealers with a CDK DMS for which SIS continued to provide any data integration services after July 1, 2016, and the specific services that SIS provided and/or provides to each such dealer.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the term "whitelisting" as vague and imprecise as it is not a term typically used by CDK in the ordinary course of its business. The alternative definition for the term set forth in the Request—"declining to disable or block" login credentials—is vague and nonsensical when applied to some of the illustrative categories of documents the Request purports to seek—*e.g.*, subsection (c) seeks documents "sufficient to show how [CDK declining to disable or block the login credentials created by dealers for certain vendors or data integrators] is accomplished. CDK further objects to subsection (c) of the Request as overly broad and unduly burdensome. The technical specifications, "system architecture," workflow processes, or other used to "whitelist" login credentials have no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery. Further, as "whitelisting" individual dealer login credentials is not something that CDK typically does in the ordinary course of its business, it is unclear whether or how CDK could identify technical specifications, "system architecture," or workflow processes related to "whitelisting" in any event.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents for the period January 1, 2015 to the date of CDK's collections of documents for purposes of responding to these Requests evidencing the specific matters identified in subparagraphs (a), (b), and (d) of this Request, and for the period January 1, 2016 to the date of CDK's collections of documents for purposes of responding to these Requests evidencing the specific matters identified in subparagraph (e) of this Request.

*__DMS Business__*

**REQUEST NO. 31.** CDK's "win/loss" reports, communications, analysis, or any other documents sufficient to show the DMS customers (including by dealership group and by rooftop) that CDK has lost every year since 2000, including the reasons the DMS customer switched DMS providers and the identity of the DMS provider to whom the dealer switched.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "win/loss" reports and related information for a 17+ year period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 32.** CDK's "win/loss" reports, communications, analysis, or any other documents sufficient to show the DMS customers (including by dealership group and by rooftop) that CDK has won every year since 2000, including the reasons the DMS customer switched to CDK and the identity of the DMS provider from whom the dealer switched.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "win/loss" reports and related information for a 17+ year period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 33.** Documents sufficient to show or list the DMS customers that CDK has lost to Reynolds or won from Reynolds for every year since 2000.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "win/loss" information for a 17+ year period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 34.** All communications from CDK to dealers (whether existing or prospective DMS customers) regarding the differences or similarities between CDK and Reynolds with respect to data access policies. The date limitation for this request is January 1, 2006, to the present. For the avoidance of doubt, this request includes, without limitation, any documents or communications in which CDK marketed its open access policy as a point of differentiation with the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "win/loss" information for an 11+ year period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 35.** All documents and communications from January 1, 2015, to the present regarding any loss or potential loss of DMS customers in connection with the "SecurityFirst" initiative, "3PA Refresh," and/or CDK's decision to restrict dealers from using independent integrators.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. CDK's loss or potential loss of DMS customers as the result of its institution of the "SecurityFirst" initiative, the "3PA Refresh" program, and/or its decision to restrict dealers from allowing hostile integration into CDK's DMS has no bearing on the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK further objects to this Request as duplicative of other Requests including, for example: Request No. 31, which seeks, among other things, communications, analysis, and other documents sufficient to show the DMS

customers (including by dealership group and by rooftop) that CDK has lost and the reasons the DMS customer switched DMS providers; and Request No. 27, which seeks "all" documents and communications relating to CDK's "SecurityFirst" and "3PA Refresh" initiative, including, among other things, "all" internal presentations and communications regarding the "Security First" and/or "3PA Refresh" initiative, "all" financial analyses conducted relating to the "Security First" and/or "3PA Refresh" initiative, and "all" communications with dealers and vendors regarding the "Security First" and/or "3PA Refresh" initiative.

**REQUEST NO. 36.** Documents sufficient to show the tenure (i.e., how long they have been using a CDK DMS) of CDK's current DMS customers.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks customer "tenure" information for CDK's 7000+ current DMS customers. Such information has no bearing on the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.

### Contracts with Dealers, Vendors, or OEMs

#### a. DMS Contracts

**REQUEST NO. 37.** One (1) representative Master Services Agreement signed each year from 1990 to the present between CDK and its dealer customers for DMS services. Each representative agreement should include all documents that comprise a DMS contract between CDK and its dealer customers, including any user guides, addendums, exhibits, and other documents that form the agreement between CDK and its dealer customers.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent that it seeks the production of a "representative" dealer MSA, including all attachments and schedules, for a 26+ year period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint.

Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request as unduly burdensome to the extent it has already produced a representative example of its Master Services Agreement in place between 1994 and June 2017 (Defs. Ex. 4-10) in connection with Authenticom's preliminary injunction motion.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show any material variation in its standard dealer MSA, together with all standard attachments, addendums, exhibits, and schedules, for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 38.** One (1) representative example of each version of CDK's standard DMS contract with its dealer customers as it has materially changed over time from 1990 to the present. Each representative version should include all documents that comprise a DMS contract between CDK and its dealer customers, including any user guides, addendums, exhibits, and other documents that form the agreement between CDK and its dealer customers.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent that it seeks the production of a "representative" standard DMS contract, including all attachments and schedules, for a 26+ year period. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request as duplicative of other Requests including, for example, Request No. 37, which seeks a "representative Master Services Agreement" (which is CDK's standard DMS contract) from each year over the same period subject to this Request.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

sufficient to show any material variation in its standard dealer MSA, together with all standard

attachments, addendums, exhibits, and schedules, for the period January 1, 2013 to the date of

CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 39.** Twenty (20) representative, current signed Master Services
Agreements between CDK and its dealer customers. Each agreement should include all
documents that comprise the DMS contract between CDK and the dealer, including any user
guides, addendums, exhibits, and other documents that form the agreement between CDK and its
dealer customers.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and

duplicative.  Specifically, CDK objects to this Request as overly broad and unduly burdensome

to the extent that it seeks the production of 20 current "representative" dealer MSAs, including

all attachments and schedules, regardless of whether there is materially variation in those

agreements.  CDK further objects to this Request as duplicative of other Requests including, for

example, Request Nos. 37 and 38.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

sufficient to show its current standard dealer MSA, together with all standard attachments,

addendums, exhibits, and schedules, for the period January 1, 2013 to the date of CDK's

collections of documents for purposes of responding to these Requests.

**REQUEST NO. 40.**  All DMS contracts (and/or any addendum, exhibit, or part thereof)
that authorize or acknowledge that dealers may provide independent integrators access to data on
the CDK DMS. *See*, *e.g.*, Fitkin Reply Decl. ¶ 14, Dkt. No. 141 (June 22, 2017).

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome.

Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent

that it is unlimited in time unlimited in time and thus not limited to the time period relevant to

this litigation. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 41.** All documents and communications with respect to § 6.D of CDK's DMS contract or any other similar provision relating to the fact that a dealer's "employees and agents" may "have access" to the DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

    a.    all communications with other parties (whether vendors or dealers) regarding the provision or the ability for dealers to grant access to
    b.    all documents describing, construing, or interpreting the agreements;
    c.    all internal documents and communications regarding the agreements;
    d.    all communications with counsel for CDK regarding the agreements; and
    e.    any other document relating in any way to the agreements.

**RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to subsection (a) of this Request as vague, ambiguous, incomplete, and failing to specify the requested documents with reasonable particularity. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications relating to a dealer's employees having contractual access to the DMS as well as "any other document relating in any way to the agreements" from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until

42

February 2015. In addition, CDK objects to this Request in so far as it seeks documents unrelated to any claim or defense in this litigation. Whether or not CDK's contracts permit a dealer's employees or agents access to the DMS has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 42.** All documents and communications relating to CDK no longer allowing dealers to authorize independent integrators to access data on the CDK DMS. The date limitation for this request is January 1, 2015, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    All communications with dealers relating to whether they can (or cannot) authorize independent integrators to access data on the CDK DMS, including any communications that cite provisions in a particular DMS contract to that effect;

    b.    All documents and communications relating to the enforcement or threat of enforcement of CDK's DMS contract against dealers with respect to third-party access to data on the CDK DMS; and

    c.    Any internal documents relating to the dealer rights under their DMS contract to authorize third parties to access data on the CDK DMS.

**RESPONSE:** CDK objects to this request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications relating to CDK's prohibition of hostile access to the CDK DMS.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

### b. 3PA Contracts and Other Data Integration Contracts

**REQUEST NO. 43.** All current 3PA contracts between CDK and vendors.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request to the extent it seeks the current contract for CDK's 300+ current 3PA customers. Such information has no bearing on the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show any material variation in its 3PA contracts, as well as the current version of its standard 3PA contract, for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 44.** All contracts for data integration services between CDK and vendors that existed prior June 15, 2015. The date limitation for this request is January 1, 2012, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative. Specifically, CDK objects to this Request to the extent it seeks "all contracts" for "data integration services" for a 3+ year period. (Although this Request purports to seek contracts from the period "January 1, 2012, to the present," it is also limited to contracts "that existed prior to June 15, 2015." CDK interprets this to mean that Authenticom is seeking

44

contracts in effect between January 1, 2012 and June 15, 2015.)  CDK further objects to this

Request to the extent seeks vendor contracts with DMI and/or IntegraLink for "data integration

services" on non-CDK DMSs as such information has no bearing on the claims or defenses in the

litigation and thus is beyond the scope of permissible discovery.  CDK also objects to this

Request as duplicative of other Requests including, for example, Request No. 43.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

sufficient to show the versions of its standard 3PA contract in effect between January 1, 2013

and June 15, 2015, and any material variations in its 3PA contracts during this same period.

**REQUEST NO. 45.** All documents and communications (internal or external) with
respect to any changes to material terms in the 3PA contract, including with respect to the use of
other data integrators; price secrecy provisions; and the duration of any terms, including those
that survive the termination of the 3PA contract. The date limitation for this request is January 1,
2014, to the present.

**RESPONSE:** CDK objects to this request as overly broad, unduly burdensome, and to

the extent it seeks documents or information protected from disclosure by an applicable

privilege.  Specifically, CDK objects to this Request as overly broad and unduly burdensome to

the extent it seeks "all" documents and communications relating to "any" changes to the material

terms of CDK's 3PA contract over the past 3+ years.

Subject to and without waiving these or its General Objections CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

responsive to this Request for the period January 1, 2014 to the date of CDK's collections of

documents for purposes of responding to these Requests.

**REQUEST NO. 46.** All current contracts between IntegraLink and vendors, dealers, or OEMs.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all" current contracts between IntegraLink, a non-party, and every vendor, dealer, or OEM with which it deals, regardless of when the contract went into effect. IntegraLink's contracts in this regard have no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery.

**REQUEST NO. 47.** All contracts between IntegraLink and vendors, dealers, or OEMs that existed prior to June 15, 2015. The date limitation for this request is January 1, 2012 to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all" current contracts between IntegraLink, a non-party, and every vendor, dealer, or OEM with which it deals, that "existed"—not were entered into, but merely existed—from 2012 to mid-2015. IntegraLink's contracts in this regard have no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery.

**REQUEST NO. 48.** All current contracts between Digital Motorworks and vendors, dealers, or OEMs.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all" current contracts between Digital Motorworks ("DMI"), a non-party, and every vendor, dealer, or OEM with which it deals, regardless of when the contract went into effect. DMI's contracts in this regard have no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery.

**REQUEST NO. 49.** All contracts between Digital Motorworks and vendors, dealers, or OEMs that existed prior to June 15, 2015. The date limitation for this request is January 1, 2012 to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all" current contracts between DMI, a non-party, and every vendor, dealer, or OEM with which it deals, that "existed"—not were entered into, but merely existed—from 2012 to mid-2015. DMI's contracts in this regard have no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery.

**REQUEST NO. 50.** All documents and communications relating to CDK's enforcement, threat of enforcement, or CDK's interpretation of contractual provisions in vendors' current 3PA contracts. The date limitation for this request is January 1, 2015, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    All communications with vendors relating to whether they can (or cannot) use independent integrators to access data on the CDK DMS, including any communications that cite provisions in a particular 3PA contract to that effect;

    b.    All documents and communications relating to the enforcement or threat of enforcement of CDK's 3PA contract against vendors with respect to accessing data on the CDK DMS by means other than through the 3PA program;

    c.    All documents and communications relating to the enforcement or threat of enforcement of the price secrecy provisions in the 3PA contract;

    d.    All documents and communications relating to what vendors can tell dealers (whether on invoices, in general communications, or otherwise) with respect to what vendors pay CDK under the 3PA program for data integration;

    e.    All documents and communications with vendors and/or dealers with respect to any other contractual provision in the vendor's current 3PA contract; and

    f.    All documents describing, construing, or interpreting the 3PA agreements.

**RESPONSE:** CDK objects to this request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications relating to CDK's enforcement of its

current 3PA contracts including, without limitation, "all document describing, construing, or interpreting the 3PA agreements."

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015 to the date of CDK's collections of documents for purposes of responding to these Requests.

### *Pricing and Financial Documents*

###### a.    *D M S*

**REQUEST NO. 51.** Documents sufficient to show the monthly price for DMS services paid by CDK's dealer customers, from 2000 to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing information for CDK's DMS services over the past 17+ years.  As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint.  Moreover, its claims center on an alleged agreement that did not occur until February 2015.  CDK further objects to this Request on the grounds that it seeks information unrelated to any claim or defense in this litigation and thus is beyond the scope of permissible discovery.  The prices charged by CDK to its DMS customers— particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 52.** Documents sufficient to show CDK's revenue for DMS services, on a quarterly basis, from 2000 to the present.

**<u>RESPONSE:</u>** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of revenue information for CDK's DMS services over the past 17+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information that it seeks information unrelated to any claim or defense in this litigation and thus and thus is beyond the scope of permissible discovery. The revenue recognized by CDK in connection with its DMS services business—particularly prior to the relevant time period—has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**<u>REQUEST NO. 53.</u>** Documents sufficient to show CDK's profit (including profit margins) for DMS services, on a yearly basis, from 2000 to the present.

**<u>RESPONSE:</u>** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of profit information for CDK's DMS services over the past 17+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to any claim or defense in this litigation and thus is beyond the scope of permissible discovery. The profit recognized (or not) by CDK in connection with its DMS services business—particularly prior to the relevant time period—has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate

49

Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 54.** Documents and communications sufficient to show the price increases for DMS services paid by CDK's dealer customers, from 2000 to the present, including whether those price increases were mandated by contract.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing information for CDK's DMS services over the past 17+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to its DMS customers—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 55.** Documents and communications sufficient to show CDK's projections with respect to revenue and profit for its DMS services. The date limitation for this request is January 1, 2015, to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to any claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK's revenue and profit projections related to DMS services business has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate

Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are

anticompetitive.

**REQUEST NO. 56.** Documents and communications relating to CDK's announced acquisition of Auto/Mate. The date limitation for this request is January 1, 2017, to the present. For the avoidance of doubt, this request includes, without limitation:

      a.    documents sufficient to show the affect of CDK's acquisition of Auto/Mate on CDK's DMS business, including with respect to revenue, profit margins, and market share;

      b.    internal documents and communications relating to the rationale for the acquisition;

      c.    documents produced to any governmental regulatory authority with respect to the acquisition;

      d.    communications (whether by CDK or Auto/Mate) with vendors and/or dealers with respect to the acquisition;

      e.    documents and communications relating to Auto/Mate's data access policies and dealer use of independent integrators; and

      f.    documents and communications relating to Auto/Mate dealers' ability to authorize independent integrators to access data on the DMS after the close of the acquisition.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it seeks documents and information protected from disclosure by an applicable

privilege. Specifically, CDK objects to this Request on the grounds that it seeks information

unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible

discovery. CDK's proposed acquisition of Auto/Mate—announced in 2017—has no bearing on

whether or not CDK and Reynolds entered into an unlawful agreement in February 2015 to

eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor

contracts are anticompetitive.

      ***b.    Data Integration***

**REQUEST NO. 57.** Documents sufficient to show the cost of providing data integration services separate and apart from providing DMS services.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome.

Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks

51

the production of cost information related to CDK's DMS services as well as cost information related to DMI and IntegraLink's provision of "data integration" services for some unspecified period of time. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK's (and DMI's and IntegraLink's) cost structure—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive. Further, CDK's costs of providing data integration services with respect to its own DMS are not separable from its costs of providing DMS services, as data integration is part of the design and functionality of the DMS itself.

**REQUEST NO. 58.** Documents sufficient to show CDK's revenue for data integration services, on a quarterly basis, from 2000 to the present, with the revenues of 3PA, DMI, and IntegraLink broken out separately.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of revenue information for CDK's "data integration" services over the past 17+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The revenue recognized by CDK in connection with its 3PA program and/or by DMI and IntegraLink in connection with the data

management services they provide vis-à-vis other DMSs—particularly prior to the relevant time period—has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 59.** Documents sufficient to show CDK's profit (including profit margins) for data integration services, on a yearly basis, from 2000 to the present, with the revenues of 3PA, DMI, and IntegraLink broken out separately.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of profit information for CDK's "data integration" services over the past 17+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The profit recognized (or not) by CDK in connection with its 3PA program and/or by DMI and IntegraLink in connection with the data management services they provide vis-à-vis other DMSs—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 60.** Documents and communications sufficient to show CDK's projections with respect to revenue and profit for its data integration services, with projections for 3PA, DMI and IntegraLink broken out separately. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks

the production of revenue and profit projections for CDK's "data integration" services over the past 3+ years. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The revenue and profit projected by CDK in connection with its 3PA program and/or by DMI and IntegraLink in connection with the data management services they provide vis-à-vis other DMSs have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 61.** Documents sufficient to show (1) which vendor applications are or were participants in the 3PA program; (2) when they became participants in the program; (3) what they paid for integration services when they joined the program; (4) what they paid in January 1, 2015; (5) what they paid after the "3PA refresh"; (6) what they pay now; and (7) if they are no longer participants in the 3PA program, when they stopped and what they paid when they left.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of CDK's 3PA pricing information over the course of the entire program. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK in connection with its 3PA program have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show the vendor applications that are participants in the 3PA program, when they joined the 3PA program, and, if they left, when they left the 3PA program, for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests. Further, CDK is willing to meet and confer with Authenticom to determine whether a reasonable production of pricing data related to CDK's 3PA program can be made in response to this and other Requests seeking 3PA pricing information.

**REQUEST NO. 62.** Documents sufficient to show (1) which vendor applications obtain or obtained data integration services from Integralink and/or Digital Motorworks *for data on the CDK DMS*; (2) when those applications started to obtain such data integration services, and when they ended, as applicable; (3) what they paid for integration services when they started to obtain such integration services; (4) what they paid in January 1, 2015; (5) what they paid after the "3PA refresh"; and (6) what they pay now, if they still obtain such data integration services from Integralink and/or Digital Motorworks for data on the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing and other information related to CDK's subsidiaries' access to the CDK DMS for some unspecified period of time. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether and to what extent CDK's subsidiaries access CDK's DMS and the prices they may charge vendors and/or were charged by CDK in connection with that access have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom

55

from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 63.** Documents sufficient to show (1) which vendor applications obtain or obtained data integration services from Integralink and/or Digital Motorworks *for data on non-CDK DMSs*; (2) when those applications started to obtain such data integration services, and when they ended, as applicable; (3) what they paid for integration services when they started to obtain such integration services; (4) what they paid in January 1, 2015; (5) what they paid after the "3PA refresh"; and (6) what they pay now, if they still obtain such data integration services from Integralink and/or Digital Motorworks for data on non-CDK DMSs.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing and other information related to CDK's subsidiaries' access to non-CDK DMSs for some unspecified period of time. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether and to what extent CDK's subsidiaries access non-CDK DMSs and the prices they may charge vendors and/or were charged by other DMS providers in connection with that access have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 64.** All documents and communications with respect to any vendor application that once obtained data integration services from CDK for data on the CDK DMS, but no longer, including documents sufficient to show the reasons why those vendor applications no longer obtain data integration from CDK.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable

privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production, for some unspecified time period, of "all documents and communications" regarding "any" vendor application that used to integrate with CDK's DMS but no longer does, as well as documents sufficient to show the reasons for the cessation of integration. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether certain vendors were CDK customers and are no longer and, if they are not, the reasons they are not has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 65.** Documents sufficient to show the change in CDK's pricing for 3PA participants from January 1, 2007, to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing information for CDK's 3PA program over the past 10+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to 3PA participants— particularly prior to the relevant time period—have no bearing on whether or not CDK and

Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that it is willing to meet and confer with Authenticom to determine whether a reasonable production of pricing data related to CDK's 3PA program can be made in response to this and other Requests seeking 3PA pricing information.

**REQUEST NO. 66.** Documents and communications relating to the change in any pricing for 3PA participants after January 1, 2015.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of documents and communications relating, in any way, to changes in 3PA pricing over the past 2+ years. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to 3PA participants—and communications regarding those prices—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that it is willing to meet and confer with Authenticom to determine whether a reasonable production of pricing data related to CDK's 3PA program can be made in response to this and other Requests seeking 3PA pricing information.

**REQUEST NO. 67.** All internal documents and presentations with respect to changes in pricing for participants in the 3PA program. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of internal documents and presentations relating, in any way, to changes in 3PA pricing over the past 3+ years. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to 3PA participants— and communications regarding those prices—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that it is willing to meet and confer with Authenticom to determine whether a reasonable production of pricing data related to CDK's 3PA program can be made in response to this and other Requests seeking 3PA pricing information.

**REQUEST NO. 68.** All documents and communications relating to the prices charged by Integralink and Digital Motorworks for access to data on the CDK DMS as opposed to prices charged by CDK to participants in the 3PA program for access to data on the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of documents related to the prices charged by CDK and its subsidiaries for various types of access to the CDK DMS for some unspecified period of time. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request

on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether and to what extent CDK's subsidiaries access CDK's DMS and the prices they may charge vendors in connection with that access and/or what prices may have been charged by CDK to participants in the 3PA program for access to the CDK DMS have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

      **REQUEST NO. 69.** Documents sufficient to show any up-front initiation or certification fees, per-dealership setup fees, or other one-time charges that CDK has charged to participants in the 3PA program from January 1, 2007, to the present.

      **RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of cost information related to CDK's 3PA program over the last 10+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Fees and costs charged by CDK in connection in with participation in the 3PA program—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

      Subject to and without waiving these or its General Objections, CDK states that it is willing to meet and confer with Authenticom to determine whether a reasonable production of

pricing data related to CDK's 3PA program can be made in response to this and other Requests seeking 3PA pricing information.

**REQUEST NO. 70.** Documents sufficient to show any per-transaction fees charged to participants in the 3PA program, including when those per-transaction fees were instituted; why they were instituted; their amounts; and by how much they increase a vendor's monthly integration fees. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of cost information related to CDK's 3PA program over the last 3+ years. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Fees and costs charged by CDK in connection in with participation in the 3PA program, and any increases thereto—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that it is willing to meet and confer with Authenticom to determine whether a reasonable production of pricing data related to CDK's 3PA program can be made in response to this and other Requests seeking 3PA pricing information.

**REQUEST NO. 71.** All documents and communications relating to the practice of vendors passing through 3PA integration fees to dealers. This request includes not only internal documents and correspondence but also, without limitation, any correspondence between CDK and dealers or vendors regarding pass-through integration fees. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in

61

that it seeks the production of "all documents and communications" relating, in any way, to the alleged "practice" of vendors "passing through" 3PA integration fees over the past 3+ years. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Fees and costs charged by CDK in connection in with participation in the 3PA program, and whether those costs were ultimately passed on to the dealers by the vendors have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 72.** All documents and communications relating to the pricing charged by other data integrators for data integration services, including but not limited to Reynolds (through its RCI program), Authenticom, SelectQu, and SIS, from January 1, 2007 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to the pricing charged by non-CDK entities for "data integration services" over the past 10+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Fees and costs charged by non-CDK entities in connection with their provision of services—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents identifying or discussing pricing for "data integration services" charged by the non-CDK entities identified in this Request, for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 73.** Documents and communications relating to prices charged to OEMs for access to data on the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "documents and communications" relating, in any way, to the pricing charged to OEMs for access to the CDK DMS for some unspecified period of time. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Prices charged to OEMs by CDK for access, however limited—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

*DMS Architecture, Data Security and System Performance*

**REQUEST NO. 74.** Documents, communications, codes, scripts, and algorithms sufficient to show the system architecture of your DMS, technological aspects for retrieving data from the DMS database, blocking automated access to data on your DMS, or any other relevant technological matter to the claims and defenses in this case. The date limitation for this request is

63

January 1, 2016, to the present. For the avoidance of doubt, this request includes, without limitation:

  a.   Codes, scripts, and/or algorithms sufficient to show how you block automated access to data on the DMS;

  b.   Codes, scripts, and/or algorithms sufficient to show how data is retrieved from the DMS database;

  c.   Codes, scripts, and/or algorithms sufficient to show how data is entered, stored, and organized on the DMS database;

  d.   Documents sufficient to show the technological aspects for how data extraction occurs from the DMS database when using the RCI and/or 3PA programs;

  e.   Documents sufficient to show the technological aspects for how data extraction occurs from the DMS database when using independent integrators such as DMI, IntegraLink, or otherwise; and

  f.   All documents and communications reviewed by any testifying and/or consulting experts on data security and system performance engaged by you for this case, whether for the Authenticom preliminary injunction hearing or otherwise.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it seeks the production of "documents, communications, codes, scripts, and algorithms sufficient to show the system architecture of [CDK's] DMS, technological aspects for retrieving data from the DMS database, blocking automated access to data on [CDK's] DMS, or any other relevant technological matter to the claims and defenses in this case." In other words, Authenticom wants the technical readout of CDK's entire system—how its DMS works, how to retrieve data from the DMS, how CDK is technologically able to detect and block Authenticom's hostile access to CDK's DMS, etc. Such information, however, has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive. CDK further objects to subparagraph (f) of this Request on the grounds that it goes beyond the requirements of the Federal Rules of Civil Procedure as to the materials that must be produced in connection with any expert work performed in this litigation. CDK has complied with the Federal Rules in

connection with its production of expert materials in connection with the preliminary injunction

hearing.  Any request for other expert materials is premature and will be addressed as part of

merits expert discovery.

**REQUEST NO. 75.** All documents and communications regarding CDK's use of Authenticom for data integration services. The date limitation for this request is January 1, 2007, to the present. For the avoidance of doubt, this request includes any instance in which a CDK-owned (wholly, jointly, or partially) add-on application used Authenticom for data integration services with respect to any DMS platform.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome,

duplicative, and to the extent it seeks documents or information protected from disclosure by an

applicable privilege.  Specifically, CDK objects to this Request as grossly overly broad and

unduly burdensome in that it literally seeks "all documents and communications" regarding

CDK's "use" of Authenticom for "data integration services" over the past 10+ years.  As noted

above, Authenticom's claims are limited by the applicable statutes of limitation to no more than

four years prior to the filing of its complaint.  Moreover, its claims center on an alleged

agreement that did not occur until February 2015.  In addition, this Request is duplicative of

other Requests including, for example, Request No. 10, which seeks all documents related to

Authenticom, DealerVault, or Steve Cottrell.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

responsive to this Request for the period January 1, 2013 to the date of CDK's collections of

documents for purposes of responding to these Requests.

**REQUEST NO. 76.** All documents and communications regarding data security and/or DMS system performance with respect to Authenticom's access to the Reynolds or CDK DMSs. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" regarding data security and/or system performance vis-à-vis Authenticom's hostile access of CDK's DMS from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. In addition, this Request is duplicative of other Requests including, for example, Request No. 10, which seeks all documents related to Authenticom, DealerVault, or Steve Cottrell.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 77.** All documents, communications, or analyses regarding any specific security incident directly caused by Authenticom's (or any other independent integrator's) automated access to data on the CDK or Reynolds DMSs. There is no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents, communications, or analyses" regarding any security incident caused by Authenticom's hostile access (or another "independent integrator's" hostile access) of CDK's DMS from the beginning of time to the present. As noted

above, Authenticom's claims are limited by the applicable statutes of limitation to no more than

four years prior to the filing of its complaint. Moreover, its claims center on an alleged

agreement that did not occur until February 2015. In addition, this Request is duplicative of

other Requests including, for example, Request No. 10, which seeks all documents related to

Authenticom, DealerVault, or Steve Cottrell.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

responsive to this Request for the period January 1, 2013 to the date of CDK's collections of

documents for purposes of responding to these Requests.

**REQUEST NO. 78.** All documents, communications, or analyses with respect to the
effects on DMS system performance of Authenticom's (or any other independent integrator's)
automated access to data on the CDK or Reynolds DMSs, including any specific system
performance issue directly caused by Authenticom or any other independent integrator. There is
no date limitation for this request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome,

duplicative, and to the extent it seeks documents or information protected from disclosure by an

applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and

unduly burdensome in that it literally seeks "all documents, communications, or analyses"

regarding any "effects" on CDK's DMS "system performance" attributable to Authenticom's

hostile access (or another "independent integrator's" hostile access) of CDK's DMS from the

beginning of time to the present. As noted above, Authenticom's claims are limited by the

applicable statutes of limitation to no more than four years prior to the filing of its complaint.

Moreover, its claims center on an alleged agreement that did not occur until February 2015. In

addition, this Request is duplicative of other Requests including, for example, Request No. 10,

which seeks all documents related to Authenticom, DealerVault, or Steve Cottrell.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 79.** All documents and communications relating to the technological methods used by CDK to block or disable dealer-provided login credentials. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overly broad and unduly burdensome in that it seeks the production of "all documents and communications relating to the technological methods used by CDK to block or disable dealer-provided login credentials" over the past 3+ years. In other words, Authenticom wants to know how CDK is technologically able to detect and block Authenticom's hostile access to CDK's DMS, etc. Such information, however, has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 80.** Documents sufficient to show how dealer data is stored on the CDK DMS. The date limitation for this request is January 1, 2014, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    Documents sufficient to show whether a dealer's data is stored separate from the data of other dealers;

    b.    Documents sufficient to show whether a dealer's data is commingled with data that does not belong to the dealer; and

    c.    Documents sufficient to show where dealer data is stored (whether on servers at the dealership; at CDK-managed server farms; at third-party managed server farms; or somewhere else).

**RESPONSE:** Subject to and without waiving its General Objections, CDK states that it will produce non-privileged documents responsive to this Request for the period January 1, 2014 to the date of CDK's collections of documents for purposes of responding to these Requests, to the extent they exist and are within CDK's possession, custody, and control and after a reasonable search of appropriate sources.

**REQUEST NO. 81.** Documents and communications sufficient to show the specific security measures CDK has instituted to protect the security of dealer data. The date limitation of this request is January 1, 2014, to the present.

**RESPONSE:** Subject to and without waiving its General Objections, CDK states that it will produce non-privileged documents responsive to this Request for the period January 1, 2014 to the date of CDK's collections of documents for purposes of responding to these Requests, to the extent they exist and are within CDK's possession, custody, and control and after a reasonable search of appropriate sources.

**REQUEST NO. 82.** Documents sufficient to show the security infrastructure of the CDK DMS and how it has changed over time. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as vague, overly broad, and unduly burdensome. Specifically, CDK objects to the term "security infrastructure" as vague and overly broad. To the extent that the Request seeks specific technical specifications regarding CDK's security measures and undertakings in connection with its DMS over the past 3+ years, CDK object to the Request as overly broad and unduly burdensome. Such information has no bearing on the claims or defenses at issue in this litigation and thus is beyond the scope of permissible discovery.

**REQUEST NO. 83.** All documents and communications referencing, relating to, or concerning the August 28, 2013 memo of the National Automobile Dealers Association, which was introduced as Defendants' Exhibit 15 at the Preliminary Injunction Hearing.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" referencing, relating to, in any way, or concerning the August 28, 2013 NADA memo (Defs. Ex. 15) for some unspecified period of time.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 84.** All documents and communications referencing, relating to, or concerning the Gramm-Leach-Bliley Act in connection with data integration services. This request includes, without limitation, all documents and communications referencing, relating to, or concerning the Gramm-Leach-Bliley Act in connection with CDK's Digital Motorworks and IntegraLink data integration products.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" referencing, relating to, in any way, or concerning the Gramm-Leach-Bliley Act in connection with "data integration services" for some unspecified period of time. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 85.** All documents and communications referencing, relating to, or concerning the "GSO Threat and Security Assessment" report prepared by PwC, dated May 6, 2015 and introduced as Defendants' Exhibit 25 at the Preliminary Injunction Hearing.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" referencing, relating to, in any way, or concerning the "GSO Threat and Security Assessment" report prepared by PwC, dated May 6, 2015 (Defs. Ex. 25).

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 86.** All documents and communications relating to Elliott Management's investment in CDK, as well as any requests that Elliott Management has made on CDK (e.g., through letters to the CDK Board of Directors). The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in

that it seeks the production of "all documents and communications" relating, in any way, to Elliott Management's investment in CDK, and any requests it has made of CDK over the last 3+ years. A shareholder's investment and/or its inquiries of the company, however, has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

      **REQUEST NO. 87.** All documents and communications relating to Elliott Management in connection with CDK's "SecurityFirst" and/or "3PA Refresh" initiatives. The date limitation for this request is January 1, 2014, to the present.

      **RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to Elliott Management and SecurityFirst or 3PA Refresh. Such documents, even if they exist, have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

      **REQUEST NO. 88.** Documents concerning any instance in which CDK has made dealer data available to an OEM from a dealership that sells a different brand of automobile. For the avoidance of doubt, this request would include any instance where CDK made available to an OEM (e.g., Honda) the DMS data from a dealership family that included a Honda dealer as well as other non-Honda dealerships.

      **RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of documents concerning "any" instance in which CDK has shared one dealership's data available to an unrelated OEM from the beginning of time to the present.

As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

### *Miscellaneous*

**REQUEST NO. 89.** All documents and communications relating to any competitive threat or challenge posed by independent data integrators to CDK's business, including without limitation, to CDK's core DMS business and CDK's add-on applications. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to *any* competitive threat posed by so-called "independent integrators" to CDK's business.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2014 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 90.** All documents and communications relating to any competitive threat or challenged posed by application providers to CDK's DMS business, including without limitation, any threat of disintermediation.

73

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to **any** competitive threat posed by "application providers" to CDK's DMS business from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

**REQUEST NO. 91.** All documents and communications regarding CDK's effort to "tilt the table" for or advantage its own add-on applications as compared to applications offered by third-party vendors. The date limitation for this request is January 1, 2014, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.     All documents and communications regarding any "closed categories" of application types that CDK would not permit into the 3PA program;

    b.     All documents and communications regarding any functionality with respect to access to dealer data requested by vendors through the 3PA program that CDK refused, such as the ability to write repair orders back into the DMS; and

    c.     All documents and communications regarding any effort to disrupt the workflow of applications offered by competing vendors.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible

discovery. Whether CDK preferenced its own add-on applications over those offered by other third parties has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of CDK's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 92.** Documents sufficient to show CDK's organizational structure, including leadership positions over CDK's DMS and data integration businesses, from January 1, 2007, to the present.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of organizational and employee information for the past 10+ years. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections of documents for purposes of responding to these Requests.

Dated: November 1, 2017

Respectfully submitted,

/s/ *Britt M. Miller*

MARK W. RYAN
MICHAEL B. KIMBERLY
MATTHEW A. WARING
   *Mayer Brown LLP*
   *1999 K Street NW*
   *Washington, DC 20006*
   *(202) 263-3000*

BRITT M. MILLER
MATTHEW D. PROVANCE
   *Mayer Brown LLP*
   *71 S Wacker Drive*
   *Chicago, IL 60606*
   *(312) 782-0600*

JEFFREY A. SIMMONS
JOSEPH S. HARPER
   *Foley & Lardner LLP*
   *150 East Gilman Street*
   *P.O. Box 1497*
   *Madison, WI 53701-1497*
   *(608) 257-5035*

*Counsel for Defendant*
*CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Matthew D. Provance, an attorney, certify that I caused a copy of the foregoing **CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO AUTHENTICOM'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).


   /s/ *Matthew D. Provance*

PUBLIC VERSION

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

AUTHENTICOM, INC.,

      Plaintiff,

    vs.

CDK GLOBAL, LLC, and
THE REYNOLDS AND REYNOLDS
COMPANY,

      Defendants.

Case No. 17-cv-318

## THE REYNOLDS AND REYNOLDS COMPANY'S RESPONSES AND OBJECTIONS TO AUTHENTICOM'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant The Reynolds and Reynolds Company ("Reynolds") hereby objects and responds to Plaintiff Authenticom, Inc.'s ("Authenticom") First Set of Requests for the Production of Documents for Defendant CDK Global, LLC dated October 2, 2017.

## GENERAL OBJECTIONS

1.      Reynolds asserts each of the following objections (the "General Objections") to Authenticom's Requests. In addition to these General Objections, Reynolds may also state specific objections to a Request where appropriate. By setting forth such additional specific objections, Reynolds does not in any way intend to limit or restrict its General Objections. Moreover, to the extent Reynolds provides a response to any of Authenticom's Requests to which Reynolds objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.      Nothing herein shall be construed as an admission by Reynolds regarding the competence, admissibility, or relevance of any fact or document, or as an admission of the truth or accuracy of any characterization or document of any kind sought by Authenticom's Requests. Reynolds reserves its right to challenge the competency, relevance, materiality, and admissibility of any documents Authenticom produces in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action. Further, Reynolds intends no incidental or implied admissions by its answers to Authenticom's Requests. Whether Reynolds answers or objects to any particular Request should not be interpreted as an admission that Reynolds accepts or admits the existence of any fact(s) set out or assumed by such Request, that the Requests are proper, that Reynolds's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether Reynolds answers part or all of any particular Request is not intended and should not be construed as a waiver by Reynolds of any or all objections to such Request or any other Request.

3.      Reynolds objects the Requests, definitions, and instructions to the extent that they purport to impose any obligations on Reynolds beyond the obligations imposed by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order. In responding to these Requests, Reynolds does not assume any burden not imposed by the Federal Rules, Local Rules, or applicable Court Orders.

4.      Reynolds objects to the Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information

which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome. The limitations period applicable to Authenticom's claims is, at most, four years from the date it filed suit—May 1, 2013. As a general matter, Reynolds objects to production of documents prior to January 1, 2013. Any production that includes documents prior to January 1, 2013 is expressly not intended to waive Reynolds's position as to the relevant time period for the purposes of any request or category of documents.

5.      Reynolds objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of Reynolds; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "Privileged Documents or Information"). Reynolds does not intend to disclose or produce any Privileged Documents or Information. Any disclosure of Privileged Documents or Information in response to any of the Requests is inadvertent and shall not be deemed a waiver of any applicable privileges or protections.

6.      To the extent Requests seek information and/or documents that are confidential or otherwise proprietary in nature, Reynolds shall only produce such information subject to the other considerations set forth in Federal Rule of Civil Procedure 26(b)(1), the terms of the Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on June 9, 2017 (Dkt. No. 85), and the contractual rights of any third parties whose confidential information is implicated by the Requests.

PUBLIC VERSION

7.       Reynolds objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of Reynolds's employees and other persons, including individuals who are not parties to this litigation.  Reynolds reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation (including government agencies), including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that Reynolds may produce.

8.       No statement that Reynolds will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that Reynolds will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

9.       To the extent Reynolds has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found.  Similarly, Reynolds reserves the right to use electronic searching techniques, including but not limited to the use of agreed upon search terms, to avoid the need to manually inspect every potentially responsive document.

10.       Reynolds's responses to the Requests are based on its present knowledge, upon a reasonable inquiry.  Discovery is ongoing, and Reynolds's investigation continues.  Reynolds reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

11.     To the extent Reynolds has objected to or refused to produce documents or information in response to any given Request, and to the extent that Authenticom takes issue with any such objection or refusal, Reynolds is willing to meet-and-confer with Authenticom to see if a reasonable, mutually-acceptable compromise might be reached.

12.     Reynolds incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.     Reynolds objects to each and every "Definition" set forth in the Requests, including "communication," "document," "including," "meeting," "person," "relating to," "related to," "referring to," "regarding," and "with respect to" to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on Reynolds broader than or inconsistent with the obligations created by Fed. R. Civ. P. Nos. 26 and 34 and/or any applicable Local Rule or other Court Order.  Reynolds will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     Reynolds objects to Authenticom's definition of "Add-on application" in Definition No. 1 as overly broad and unduly burdensome, to the extent it purports to include "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

3.     Reynolds objects to Authenticom's definitions of "Reynolds" and "you," "your" and "your company" in Definitions No. 21 and 27 as overly broad and unduly burdensome to the extent they purport to require Reynolds to produce information and/or documents beyond Reynolds's possession, custody, or control.  In addition, Reynolds objects to Definitions No. 21 and 27 to the extent they purport to require Reynolds to produce information and/or documents

5

within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on Reynolds's behalf.

4.      Reynolds objects to Authenticom's definition of "data integrators" and "third party integrators" in Definitions No. 9 and 25, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as Reynolds uses and understands the term.  To the extent that Reynolds responds to Requests that reference "data integrators" or "third party integrators," it does not mean that Reynolds agrees with or accepts Authenticom's definitions.

5.      Reynolds objects to Authenticom's definition of "DealerVault" in Definition  No. 10 as overbroad and inaccurate to the extent it describes itself as a "data integration product".  As stated in Authenticom's Memorandum in Support of Its Motion for a Preliminary Injunction (Dkt. 61), Authenticom's DealerVault product does not actually "integrate" with a DMS (Dkt. 61 at n. 2); instead, Authenticom extracts data from the DMS using screen scraping technology and deposits certain of that data into DealerVault for later use and commercialization.

6.      Reynolds objects to Authenticom's purported "Instructions," including Instructions No. 1, 2, 3, 4, 5, 6, and 7, to the extent that they purport to conflict with, or impose any obligations that are greater than or otherwise inconsistent with, the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on October 26, 2017 (Dkt. No. 225).  Reynolds will produce ESI responsive to these Requests in accordance with that Stipulation.

## REYNOLDS'S SPECIFIC RESPONSES TO
## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

***Regulatory Investigations***

**REQUEST NO. 1.** All documents and correspondence relating to any inquiry or investigation by the Federal Trade Commission, Department of Justice, or any other federal or state regulatory authority regarding your DMS business, data integration business, add-on applications, data access policies, or any other related matter. The date limitation for this request is January 1, 2007, to the present. For the avoidance of doubt, this request includes, without limitation:

      a.      any documents produced by you (or any other party) to any such regulatory authority;

      b.      any correspondence with any such regulatory authority, including any Civil Investigative Demand ("CID") or subpoena received from any such regulatory authority;

      c.      any transcripts, recordings, or records of any interviews and/or testimony provided by any witness to any such regulatory authority; and

      d.      any CDK or Reynolds internal documents relating to any investigation by any such regulatory authority.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request to the extent it seeks the production of "all" documents "relating," in any way, to "any inquiry or investigation" by the FTC, the DOJ, or any other regulatory authority regarding virtually every aspect of Reynolds's DMS-related business. Reynolds further objects to this Request as overly broad and unduly burdensome in that it seeks documents over 10 years old. Reynolds also objects to this Request as overly broad to the extent it seeks documents related to any Reynolds business other than those at issue in this litigation. Reynolds objects that the request for "any" and "all" documents related to "any" inquiries is not relevant and/or proportional to the needs of the case. Finally, Reynolds objects to this Request to

the extent it purports to require the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, and subject to any objection or guidance from the relevant agencies, Reynolds states that it will produce, to the extent they exist and are within its possession, custody, or control, any pre-existing business documents produced by Reynolds to the FTC, DOJ, or other regulatory authority as the result of any inquiry by such regulatory body after January 1, 2013 that are relevant to the claims and defenses in this case.

### *Agreements and Communications Between CDK and Reynolds*

**REQUEST NO. 2.** All communications between CDK and Reynolds regarding their respective DMS business, data integration business, add-on applications, data access policies, or any other related matter – including all documents concerning such communications. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request to the extent it seeks the production of "all" communications between CDK and Reynolds regarding virtually any aspect of their respective DMS-related businesses as well as all documents "concerning" such communications since the beginning of time to the present. Such a request is grossly overbroad and unduly burdensome, and in any event not proportional to the needs of the case. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Thus, random correspondence as and between CDK and Reynolds regarding, for example, a business venture between the two companies related to an application from 1987 (to the extent such a document even exists) would have no relevance to any claim or

defense in the litigation but would nonetheless be called for by this Request. Reynolds further objects to this Request to the extent it purports to require the production of documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present[1] that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 3.** All communications between CDK and Reynolds regarding access by independent data integrators to data on their respective DMS platforms. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome as to time frame. Specifically, Reynolds objects to this Request to the extent it seeks "all" communications between CDK and Reynolds regarding access by independent data integrators to data on their respective DMS platforms since the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms. Despite the fact that the alleged agreement did not occur until February 2015, Reynolds will produce such documents (if any) from January 1, 2013 to the present.

---

[1] As used in these responses, to the "present" includes through the date of Reynolds's collection of documents for purposes of responding to these requests.

**REQUEST NO. 4.** All documents and communications regarding any agreement (written or otherwise) between CDK and Reynolds. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and fails to describe the items sought with reasonable particularity to the extent it seeks "all" documents and communications "regarding" "any" agreement, written or otherwise, between CDK and Reynolds since the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Agreements between CDK and Reynolds unrelated to the claims or defenses in this litigation are beyond the scope of permissible discovery. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds will produce documents evidencing any agreements between CDK and Reynolds regarding access by "independent data integrators" to data on their respective DMS platforms, or that are otherwise relevant to any party's claims or defenses, from January 1, 2013 to the present.

**REQUEST NO. 5.** All documents and communications relating to the February 18, 2015 "Data Exchange Agreement," "3PA Agreement," and "Reynolds Interface Agreement" (collectively, the "Agreements"). There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

a.    all communications between CDK and Reynolds regarding the Agreements;
b.    all communications with other parties (whether vendors or dealers) regarding the Agreements;
c.    all drafts of the Agreements;
d.    all documents describing, construing, or interpreting the Agreements;
e.    all internal documents and communications regarding the Agreements;
f.    because CDK and Reynolds have waived their attorney-client privilege with respect to the Agreements – and any such communications are subject to the crime-fraud exception in any event – all communications with counsel for CDK and/or Reynolds regarding the Agreements; and

10

       g.      any other document relating in any way to the Agreements.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent that it seeks information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to the three agreements identified in the Request. Reynolds further objects to this Request to the extent it seeks documents and communications protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. Reynolds has not waived, and expressly reserves, its privileges. Further, no such documents are subject to any exception to applicable privileges. Finally, Reynolds objects that subparagraph (g) of this Request fails to identify the items requested with reasonable particularity.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms, within the following requested categories: (a) communications between CDK and Reynolds regarding the Agreements; (b) communications with third parties regarding the Agreements; (c) non-privileged drafts of the Agreements, and (d) non-privileged internal documents and communications discussing the Agreements.

**REQUEST NO. 6.** All documents and communications regarding the transition of vendor customers of CDK into the RCI program. For the avoidance of doubt, this request includes, without limitation:

      a.      all information provided by CDK to Reynolds about its vendor customers, *see, e.g.*, §§ 4.3, 4.4, Exhibit DEA-2 of the Data Exchange Agreement;

      b.      all communications between CDK and Reynolds about CDK's vendor customers;

      c.      all communications between CDK and its vendor customers regarding the RCI program;

     d.     all communications between Reynolds and CDK's vendor customers regarding the RCI program;

     e.     all communications with Reynolds DMS customers regarding the transition of CDK's vendor customers into the RCI program;

     f.     all pricing information regarding what CDK vendor customers paid for access to data on the Reynolds DMS before the Data Exchange Agreement, and what those vendor customers (1) paid when they entered into the RCI program, and (2) what they pay now; and

     g.     all communications related to any instance where Reynolds advised vendors awaiting RCI certification to move their data integration business to CDK, DMI, or IntegraLink in advance of RCI certification.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome in that it literally seeks "all documents and communications" regarding the transition of any vendor, for any reason, from CDK['s affiliates] to Reynolds's RCI program from the beginning of time to the present. Reynolds further objects that this Request seeks information that is not relevant to any party's claims or defenses in this matter, and/or is not proportional to the needs of the case. By way of example, this Request would encompass irrelevant operational correspondence regarding technical specifications, etc. of Reynolds's RCI participants. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms, within the following requested categories: (a) information provided by CDK to Reynolds about those customers pursuant to the Data Exchange Agreement; (b) communications between CDK and Reynolds regarding those customers; (c) communications between CDK and those vendor customers regarding the RCI program; (d) communications between Reynolds and those vendor customers regarding the RCI program, not including purely technical / operational

correspondence; and (e) communications with Reynolds's DMS customers regarding the transition of those vendor customers into the RCI program for the period January 1, 2013 to the present.

**REQUEST NO. 7.** All documents and communications regarding data security and/or DMS system performance with respect to CDK's access to the Reynolds DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

    a.    all documents and communications relating to the effect of CDK's access to the Reynolds DMS on the performance of the Reynolds DMS;

    b.    all documents and communications relating to any data security incidents caused by CDK's access to the Reynolds DMS; and

    c.    all documents and communications relating to any specific system performance issue that was or is directly attributable to CDK's access to the Reynolds DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks "all documents and communications" regarding data security and/or DMS system performance with respect to "CDK's access," presumably through its subsidiaries DMI and IntegraLink, to Reynolds's DMS from the beginning of time to the present. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 8.** All documents and communications regarding the impact on CDK's business (including the business of its subsidiaries, DMI and IntegraLink)—whether on CDK's finances, its dealer and vendor relationships, or otherwise—caused by Reynolds' blocking of CDK's access to dealer data on the Reynolds DMS.

**RESPONSE:** Reynolds objects to this Request because it appears to seek documents that, to the extent they exist, would be in the possession, custody, or control of CDK—not Reynolds. Reynolds further objects that the Request is vague and ambiguous as to what documents would "regard" the impact on CDK's business.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 9.** All documents regarding working with other data integrators – such as Authenticom, SIS, SelectQu, or others – and all communications with those entities regarding finding solutions (technological or otherwise) to Reynolds' blocking.

**RESPONSE:** Reynolds objects to this Request because it appears to seek documents that, to the extent they exist, would be in the possession, custody, or control of CDK—not Reynolds. To the extent that the Request is intended to encompass subject matter broader than "regarding finding solutions (technological or otherwise) to Reynolds's blocking," Reynolds objects that the Request is overly broad as to time and scope, and seeks information that is not relevant or proportional to the needs of the case.

### *Authenticom*

**REQUEST NO. 10.** All documents and communications referencing, relating to, or concerning Authenticom, DealerVault, or Steve Cottrell. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to Authenticom or its owner, Steve Cottrell, from the beginning of time to the present. Reynolds

further objects that this Request does not describe the items requested with reasonable particularity. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 11.** All documents and/or communications between CDK and Reynolds relating to Authenticom, DealerVault, or Steve Cottrell – including all documents concerning such communications. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and/or communications" between CDK and Reynolds, "including all documents concerning such communications," relating, in any way, to Authenticom or its owner, Steve Cottrell, from the beginning of time to the present. Reynolds further objects that this Request does not describe the items requested with reasonable particularity. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 12.** All documents and/or communications regarding any cooperation, coordination, joint effort, assistance, exchange of information or technical knowhow, or any other type of collaboration between CDK and Reynolds in blocking Authenticom's access to dealer data on their respective DMS platforms. There is no date limitation for this request.

**RESPONSE:** Subject to and without waiver of its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 13.** All communications with vendors and/or dealers regarding Authenticom, DealerVault, or Steve Cottrell. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome, and fails to describe the documents requested with reasonable particularity in that it literally seeks "all documents and/or communications" between CDK and vendors and/or dealers relating, in any way, to Authenticom or its owner, Steve Cottrell, from the beginning of time to the present.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 14.** All documents and communications to or from Bob Brockman, Robert Schaefer, Ron Lamb, Chris Hellyer, or Kelly Hall relating to the following: Authenticom, Steve Cottrell, DealerVault, "hostile" or "unauthorized" integration, dealers using independent integrators to access their data, Dan McCray, Steve French, Howard Gardner, Malcolm Thorne, Robert Karp, Ron Workman, Steve Anenen, or Brian MacDonald. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and duplicative. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" to or from eight

16

current or former Reynolds employees related to five broad subject matters and five CDK-affiliated employees from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 15.** All documents and communications regarding the VPN tunnel that CDK provided to Authenticom for accessing dealer data on the CDK DMS, and the reasons why CDK stopped providing Authenticom with that access.

Reynolds objects to this Request because it appears to seek documents that, to the extent they exist, would be in the possession, custody, or control of CDK—not Reynolds.

***CDK's Access to Other DMSs***

**REQUEST NO. 16.** All documents and communications relating to CDK's (including through its subsidiaries, Digital Motorworks and Integralink) access to data on the Reynolds DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

   a.   all communications between CDK and Reynolds regarding CDK's access to the Reynolds DMS;
   b.   the technological means by which CDK accesses or accessed the Reynolds DMS;
   c.   the technological means by which Reynolds has either blocked or permitted CDK's access to the Reynolds DMS;
   d.   any internal documents and communications regarding CDK's access to the Reynolds DMS;
   e.   any communications with vendors or dealers regarding CDK's access to the Reynolds DMS;
   f.   documents sufficient to show the revenues CDK received from vendors for providing access to data on the Reynolds DMS;

      g.     documents sufficient to show the vendors for whom CDK provided access to data on the Reynolds DMS, including the time period during which CDK provided or has provided that access; and

      h.     all documents and communications relating to CDK's wind down of its access to data on the Reynolds DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" relating, in any way, to CDK's access to data on Reynolds's DMS, from the beginning of time to the present. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Reynolds further objects to this Request as duplicative of other Requests including, for example, Request No. 6, which seeks all documents related to the wind-down of DMI and IntegraLink's hostile access to Reynolds's DMS pursuant to the agreements identified in Request No. 5. In addition, the technological means by which CDK, through DMI and IntegraLink, accessed Reynolds's DMS (subsection (b)), the technological means by which Reynolds's blocked that access (subsection (c)), and the revenues CDK received from vendors for providing access to data on the Reynolds DMS (subsection (f)) have no bearing on the claims or defenses at issue in this litigation and thus are beyond the scope of permissible discovery. Reynolds further objects that documents and communications pertaining to CDK's certified (non-hostile) access to Reynolds's DMS likewise have no bearing on the claims or defenses at issue in this litigation and thus are beyond the scope of permissible discovery, and/or are not proportional to the needs of the case. Finally, Reynolds objects to this Request, particularly subsection (d), to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms with respect to subsections (a), (d), (e), and (h) of this Request.

**REQUEST NO. 17.** All documents and communications relating to CDK's "SMART-R" program.

**RESPONSE:** Reynolds objects that this Request seeks information that is not relevant, and/or not proportional to the needs of the case. "SMART-R" was CDK's program, not Reynolds's, and on information and belief, was concluded years before the time period relevant to this case. Reynolds further objects that the Request does not describe the items requested with reasonable particularity. Reynolds further objects to this Request to the extent it seeks documents or information protected from disclosure by an applicable privilege.

**REQUEST NO. 18.** All documents and communications relating to Reynolds blocking or disabling of the dealer-provided login credentials that Digital Motorworks and/or IntegraLink used to access the Reynolds DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad as to time and scope, unduly burdensome, duplicative, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, the fact that Reynolds has blocked or disabled dealer-provided login credentials that Digital Motorworks and/or IntegraLink used to access the Reynolds DMS is not in dispute, and thus discovery of "all documents" "relating" to this issue (including, for example, the technological means by which Reynolds blocked such access) are not relevant and/or are not proportional to the needs of the case. Finally, Reynolds objects that this Request does not describe the items requested with reasonable particularity.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are

located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 19.** All documents and communications concerning CDK's (including through its subsidiaries, Digital Motorworks and IntegraLink) access to data on non-CDK, non-Reynolds DMS platforms. The date limitation for this request is January 1, 2014, to the present. For the avoidance of doubt, this request includes, without limitation:

  a.   all communications between CDK and any other DMS provider regarding CDK's access to that provider's DMS;

  b.   the technological means by which CDK accesses or accessed data on any other DMS provider's DMS, including the use of login credentials, APIs, SFTPs, other file transfer protocols, cloud sharing technology (such as Dropbox), direct integration, or otherwise;

  c.   the technological means by which any DMS provider has either blocked or permitted CDK's access to that provider's DMS;

  d.   all agreements between Digital Motorworks or IntegraLink, on the one hand, and a DMS provider, on the other hand, regarding access to data on the provider's DMS;

  e.   any internal documents and communications regarding CDK's access to data on non-CDK DMSs; and

  f.   any communications with vendors or dealers regarding CDK's access to data on non-CDK DMSs.

**RESPONSE:** Reynolds objects to this Request because it appears to seek documents that, to the extent they exist, would be in the possession, custody, or control of CDK—not Reynolds. Reynolds further objects that the Request is vague and ambiguous as to what documents would "concern" CDK's access.

### *Reynolds's Data Access Policies*

**REQUEST NO. 20.** All documents, communications, and statements (whether internal or public) regarding Reynolds's policies (or the policies of any other DMS provider) with respect to third-party access to dealer data on the Reynolds DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

  a.   all documents and communications relating to your public statements regarding the data access policies of any other DMS provider, including CDK; and

  b.   all documents and communications regarding your marketing of your open or closed data access policies as contrasted with the data access policies of other DMS providers.

**RESPONSE:** Reynolds objects to this Request as overly broad as to time and scope, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents, communications, and statements" regarding, in any way, to Reynolds's policies—or that of any other DMS provider—with respect to third party access to the Reynolds DMS, from the beginning of time to the present. Reynolds further objects that this Request does not describe the items requested with reasonable particularity. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 21.** All documents and communications relating to Open Secure Access, Inc., including your attempted participation or membership in the group, the policies and purpose of the group, the stated principles espoused by the group, or any other documents relating to the group and your own data access policies. The date limitation for this request is January 1, 2006, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks "all documents and communications" relating, in any way, Open Secure Access, Inc., or "any other documents relating to … your own data access policies" for an 11+ year period. Reynolds further objects that this Request does not describe the items requested with reasonable particularity. Finally, Reynolds further objects to this Request to the extent it seeks

documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 22.** All documents, communications, and statements (whether internal or public) regarding the ability of dealers to authorize independent data integrators to access data on the Reynolds DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

    a.    all communications with dealers or vendors, representations to dealers or vendors, or statements relating to dealers or vendors (whether internal to CDK or public) regarding the ability of dealers to authorize independent data integrators to access data on the CDK DMS;

    b.    all public statements regarding the ability of dealers to authorize independent integrators to access data on the CDK DMS; and

    c.    all internal documents and communications regarding the ability of dealers to authorize independent integrators to access data on the CDK DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks "all documents, communications, and statements" regarding "the ability of dealers to authorize independent integrators to access data on the Reynolds DMS" from the beginning of time to the present. As worded, this Request would purportedly encompass (by way of example only) thousands of dealer DMS contracts that Reynolds has entered into with its customers over several decades. Reynolds further objects that this Request does not describe the items requested with reasonable particularity. Finally, Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 23.** All documents, communications, and statements (whether internal or public) regarding the ability of vendors to use independent integrators to access data on the Reynolds DMS. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

      a.      all communications with dealers or vendors, representations to dealers or vendors, or statements relating to dealers or vendors (whether internal to Reynolds or public) regarding the ability of vendors to use independent integrators to access data on the Reynolds DMS;

      b.      all public statements regarding the ability of vendors to use independent integrators to access data on the Reynolds DMS; and

      c.      all internal documents and communications regarding the ability of vendors to use independent integrators to access data on the Reynolds DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks "all documents, communications, and statements" regarding "the ability of vendors to use independent integrators to access data on the Reynolds DMS" from the beginning of time to the present. Reynolds further objects that this Request does not describe the items requested with reasonable particularity. Finally, Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are

located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable

search terms.

**REQUEST NO. 24.** All communications between Reynolds and any provider of data integration services – such as SIS, Authenticom, or otherwise – including all documents concerning such communications. There is no date limitation for this request. For the avoidance of doubt, this request includes, without limitation:

      a.    any communications regarding the integration provider's access to dealer data on the Reynolds DMS;

      b.    any internal documents regarding the integration provider's access to dealer data on the Reynolds DMS; and

      c.    any cease and desist letters or similar complaints regarding the integration provider's access to dealer data on the Reynolds DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and

to the extent it seeks documents or information protected from disclosure by an applicable

privilege. Specifically, Reynolds objects to this Request as grossly overly broad and unduly

burdensome in that it literally seeks "all communications," regardless of context, between

Reynolds and any provider of data integration services, as well as all documents "concerning"

such communications, from the beginning of time to the present. To the extent that this Request

encompasses documents that are relevant to any party's claims or defenses in this action, the

Request is duplicative of other Requests. Reynolds further objects that this Request does not

describe the items requested with reasonable particularity, to the extent that it requests

documents "concerning" responsive communications. Reynolds also objects this Request to the

extent it seeks documents protected from disclosure by the attorney-client privilege, the work

product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to

producing relevant, non-privileged documents from January 1, 2013 to the present that are

located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable

search terms; and will otherwise undertake a diligent search for cease and desist letters or similar

complaints from January 1, 2013 to the present regarding the integration provider's access to the

Reynolds DMS and will produce such cease and desist letters or similar complaints that are

located.

**REQUEST NO. 25.** All documents relating to any agreements between Reynolds and
any provider of data integration services. There is no date limitation for this request. For the
avoidance of doubt, this request includes, without limitation:

a.   any "wind down," settlement, or other agreements entered into between
     Reynolds and any data integration provider;
b.   all communications between Reynolds and the integration provider
     regarding the agreements;
c.   all communications with other parties (whether vendors or dealers)
     regarding the agreements;
d.   all drafts of the agreements;
e.   all documents describing, construing, or interpreting the agreements;
f.   all internal documents and communications regarding the agreements;
g.   all communications with counsel for Reynolds regarding the agreements;
     and
h.   any other document relating in any way to the agreements.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome,

duplicative, and to the extent that it seeks information protected from disclosure by an applicable

privilege.  Specifically, Reynolds objects to this Request as grossly overly broad and unduly

burdensome in that it literally seeks "all documents" relating, in any way, to *any* agreements

between Reynolds and *any* provider of data integration services from the beginning of time to the

present. In addition, this Request is duplicative of other Requests including, for example,

Request No. 5 which seeks "all" documents and communications regarding "any agreement"

between CDK and Reynolds.  With respect to relevant CDK-Reynolds agreements, Reynolds

will produce responsive documents according to the responses and objections to Request No. 5.

With respect to agreements between Reynolds and any other providers of "data integration

services," Reynolds will undertake a diligent search for and produce any "wind down,"

settlement, or similar agreements executed between January 1, 2013 and the present (subject to

the rights of any counter-party to seek protection from such disclosure), and will negotiate reasonable ESI search terms to be applied to a reasonable list of custodians regarding same, but objects to subparagraphs (b)-(h) as stated. Finally, Reynolds also objects to this Request (including specifically subparagraph (g)) to the extent it seeks documents and communications protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

### *Reynolds' RCI Program and Dynamic Reporting*

**REQUEST NO. 26.** Documents and communications sufficient to describe the characteristics of the RCI Program before Reynolds was acquired by Bob Brockman. The date limitation for this request is January 1, 2006, to January 1, 2016.

**RESPONSE:** Reynolds objects to this Request as vague and misleading because Reynolds was not "acquired by Bob Brockman." Reynolds further objects that this Request does not describe the items requested with reasonable particularity and does not specify what "characteristics" it seeks. Finally, Reynolds objects that this Request seeks documents that are not relevant to any party's claims and defenses, and/or not proportional to the needs of the case to the extent it requires production of documents over 11 years old.

Subject to and without waiving these or its General Objections, Reynolds states that it will undertake a reasonable search for documentation from reasonably accessible ESI sufficient to generally describe the RCI Program prior to October 2006; or will provide a response in the form of an equivalent interrogatory answer.

**REQUEST NO. 27.** Documents and communications regarding the ability of dealers to extract their data from the DMS manually (whether using the Dynamic Reporting tool or otherwise), including when that capability was instituted; the means by which dealers extract the data manually; how often dealers extract their own data for purposes of providing the data to third-party vendors; and the means by which dealers send their manually-extracted data to vendors. The date limitation for this request is January 1, 2007, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" regarding manual extraction of data from the DMS for a 10+ year period. Moreover, by its terms, the Request seeks documents that would be in the custody or control of dealers—not Reynolds. Reynolds further objects that this Request does not describe the items requested with reasonable particularity. Finally, Reynolds also objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms, and in any event will produce documents sufficient to describe the different methods of manual extraction available to Reynolds dealers from January 1, 2013 to the present.

**REQUEST NO. 28.** All documents and communications regarding the functionality of Dynamic Reporting, including the ability of dealers to extract data using bulk queries, individual queries only, and any other subject affecting the ease of use of Dynamic Reporting for dealers. The date limitation for this request is January 1, 2009 to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome. Specifically, Reynolds objects to this Request as overly broad in that it seeks literally "all documents and communications" "regarding" the identified topics. Reynolds further objects that this Request does not describe the items requested with reasonable particularity.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable

search terms, and in any event will produce documents sufficient to describe the functionality of

Dynamic Reporting.

**REQUEST NO. 29.** Documents and communications regarding whether vendors that participate in the RCI program are able to obtain data directly from dealers consistent with the terms of the RCI contract. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** Subject to and without waiving its General Objections, Reynolds is

agreeable to producing relevant, non-privileged documents from January 1, 2014 to the present

that are located pursuant to a diligent ESI search of a reasonable list of custodians, using

reasonable search terms.

*Whitelisting*

**REQUEST NO. 30.** All documents and communications relating to "whitelisting" – or Reynolds otherwise declining to disable or block – the login credentials created by dealers for certain vendors or data integrators. The date limitation for this request is January 1, 2015, to the present. For the avoidance of doubt, this request includes, without limitation:

a.  All communications with data integrators, vendors, and/or dealers regarding the whitelisting of login credentials;

b.  Documents sufficient to show for which data integrators, vendors, or other third parties Reynolds whitelisted login credentials;

c.  Documents sufficient to show how whitelisting is accomplished, including all technical, system architecture, workflow processes, or other mechanisms used to whitelist login credentials;

d.  All internal documents and communications regarding whitelisting of login credentials, including whether to whitelist, how to whitelist, the benefits and drawbacks of whitelisting, or any other such materials regarding the protection of login credentials used by third parties; and

e.  Documents sufficient to show the number of dealers with a Reynolds DMS for which SIS continued to provide any data integration services after the litigation between Reynolds and SIS terminated, and the specific services that SIS provided and/or provides to each such dealer.

**RESPONSE:** Reynolds objects to this Request as vague, overly broad, unduly

burdensome, and to the extent it seeks documents protected from disclosure by an applicable

privilege. Specifically, Reynolds objects to the term "whitelisting" as vague and imprecise as it

is not a term typically used by Reynolds in the ordinary course of its business. Reynolds further

specifically objects to subsection (c) of the Request as overly broad and unduly burdensome. The technical specifications, "system architecture," workflow processes, or other used to "whitelist" login credentials have no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery. Reynolds further objects that this Request does not describe the items requested with reasonable particularity in that it requests "all documents and communications" "relating to" the listed topics.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms, with respect to the matters identified in subparagraphs (a), (b), (d), and (e) of this Request to the present.

### *DMS Business*

**REQUEST NO. 31.** Reynolds' "win/loss" reports, communications, analysis, or any other documents sufficient to show the DMS customers (including by dealership group and by rooftop) that Reynolds has lost every year since 2000, including the reasons the DMS customer switched DMS providers and the identity of the DMS provider to whom the dealer switched.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome as to time frame. Specifically, the request for information for a 17+ year period encompasses information that is not relevant and/or not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the present, to the extent they exist and are within Reynolds's possession, custody, and control and after a reasonable search of appropriate sources.

**REQUEST NO. 32.** Reynolds' "win/loss" reports, communications, analysis, or any other documents sufficient to show the DMS customers (including by dealership group and by rooftop) that Reynolds has won every year since 2000, including the reasons the DMS customer switched to Reynolds and the identity of the DMS provider from whom the dealer switched.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome as to time frame. Specifically, the request for information for a 17+ year period encompasses information that is not relevant and/or not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the present, to the extent they exist and are within Reynolds's possession, custody, and control and after a reasonable search of appropriate sources.

**REQUEST NO. 33.** Documents sufficient to show or list the DMS customers that Reynolds has lost to CDK or won from CDK for every year since 2000.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome as to time frame. Specifically, the request for information for a 17+ year period encompasses information that is not relevant and/or not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the present, to the extent they exist and are within Reynolds's possession, custody, and control and after a reasonable search of appropriate sources.

**REQUEST NO. 34.** All communications from Reynolds to dealers (whether existing or prospective DMS customers) regarding the differences or similarities between Reynolds and CDK with respect to data access policies. The date limitation for this request is January 1, 2006, to the present. For the avoidance of doubt, this request includes, without limitation, any documents or communications in which Reynolds marketed its closed access policy as a point of differentiation with the CDK DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome, and because it fails to describe the items requested with reasonable particularity. More specifically, Reynolds objects that the request for "all communications" over an 11+ year time period "regarding the differences or similarities between Reynolds and CDK with respect to data access policies" is not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms; and will otherwise undertake a diligent search for (and produce any) historical marketing documents discussing the differences or similarities between Reynolds and CDK with respect to data access policies from the period January 1, 2013 to the present.

**REQUEST NO. 35.** All documents and communications from January 1, 2006, to the present regarding any loss or potential loss of DMS customers in connection with Reynolds's decision to restrict dealers from using independent integrators.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome, and because it fails to describe the items requested with reasonable particularity. More specifically, Reynolds objects that the request for "all documents and communications" over an 11+ year time period "regarding any loss or potential loss of DMS customers in connection with Reynolds's decision to restrict dealers from using independent integrators."

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from the period of January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 36.** Documents sufficient to show the tenure (i.e., how long they have been using a Reynolds DMS) of Reynolds's current DMS customers.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome. Specifically, Reynolds objects to this Request to the extent it purports to require Reynolds to produce customer "tenure" information for its thousands of current DMS customers. Such information is not relevant to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.

*__Contracts with Dealers, Vendors, or OEMs__*

    *a.*      *__DMS Contracts__*

__REQUEST NO. 37.__ One (1) representative Master Services Agreement signed each year from 1990 to the present between Reynolds and its dealer customers for DMS services. Each representative agreement should include all documents that comprise a DMS contract between Reynolds and its dealer customers, including any user guides, addendums, exhibits, and other documents that form the agreement between Reynolds and its dealer customers.

__RESPONSE:__ Reynolds objects to this Request as overly broad and unduly burdensome, both as to time frame and subject matter. More specifically, it is not disputed that Reynolds's standard DMS contract prohibits dealers from providing access to the DMS to any third party. *See* Dkt. # 63 ¶ 153 (Plaintiff's Statement of Facts). Thus, discovery of signed DMS contracts— let alone for a 27+ year period—is not relevant or proportional to the needs of the case. Moreover, Reynolds objects to gathering and producing "addendums, exhibits, and other documents" that are part of the DMS contract that are not relevant to any claims or defenses in the case.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce non-privileged documents sufficient to show its standard dealer Master Agreement and Customer Guide—i.e., the form contract documents that refer to issues referenced in Plaintiff's Complaint—from January 1, 2009 to the present.

__REQUEST NO. 38.__ One (1) representative example of each version of Reynolds's standard DMS contract with its dealer customers as it has materially changed over time from 1990 to the present. Each representative version should include all documents that comprise a DMS contract between Reynolds and its dealer customers, including any user guides, addendums, exhibits, and other documents that form the agreement between Reynolds and its dealer customers.

__RESPONSE:__ Reynolds objects to this Request as overly broad and unduly burdensome, both as to time frame and subject matter. More specifically, it is not disputed that Reynolds's standard DMS contract prohibits dealers from providing access to the DMS to any third party.

*See* Dkt. # 63 ¶ 153 (Plaintiff's Statement of Facts). Thus, discovery of signed DMS contracts—

let alone for a 26+ year period—is not relevant or proportional to the needs of the case.

Moreover, Reynolds objects to gathering and producing "addendums, exhibits, and other

documents" that are part of the DMS contract that are not relevant to any claims or defenses in

the case.

Subject to and without waiving these or its General Objections, Reynolds states that it

will produce non-privileged documents sufficient to show any material variation in its standard

dealer Master Agreement or Customer Guide form with respect to issues referenced in Plaintiff's

Complaint, from January 1, 2009 to the present.

**REQUEST NO. 39.** Twenty (20) representative, current signed Master Services
Agreements between Reynolds and its dealer customers. Each agreement should include all
documents that comprise the DMS contract between Reynolds and the dealer, including any user
guides, addendums, exhibits, and other documents that form the agreement between Reynolds
and its dealer customers.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and

duplicative. More specifically, it is not disputed that Reynolds's standard DMS contract prohibits

dealers from providing access to the DMS to any third party. Thus, discovery of signed DMS

contracts is not relevant or proportional to the needs of the case. Moreover, Reynolds objects to

gathering and producing "addendums, exhibits, and other documents" that are part of the DMS

contract that are not relevant to any claims or defenses in the case.

Subject to and without waiving these or its General Objections, Reynolds states that it

will produce non-privileged documents sufficient to show its current standard dealer Master

Agreement and Customer Guide form contract documents relevant to issues referenced in

Plaintiff's Complaint.

**REQUEST NO. 40.** All DMS contracts (and/or any addendum, exhibit, or part thereof)
that authorize or acknowledge that dealers may provide independent integrators access to data on
the Reynolds DMS. *See, e.g.*, Fitkin Reply Decl. ¶ 14, Dkt. No. 141 (June 22, 2017).

33

**RESPONSE:** Reynolds objects to this Request as unduly burdensome because it is purportedly based on an allegation having nothing to do with Reynolds. *See* Dkt. No. 141 ¶ 14. Reynolds further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to this litigation.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the present, to the extent they exist and are within Reynolds's possession, custody, and control and after a reasonable search of appropriate sources.

**REQUEST NO. 41.**  All documents and communications relating to Reynolds no longer allowing dealers to authorize independent integrators to access data on the Reynolds DMS. The date limitation for this request is January 1, 2006, to the present. For the avoidance of doubt, this request includes, without limitation:

      a.    All communications with dealers relating to whether they can (or cannot) authorize independent integrators to access data on the Reynolds DMS, including any communications that cite provisions in a particular DMS contract to that effect;

      b.    All documents and communications relating to the enforcement or threat of enforcement of Reynolds' DMS contract against dealers with respect to third-party access to data on the Reynolds DMS; and

      c.    Any internal documents relating to the dealer rights under their DMS contract to authorize third parties to access data on the Reynolds DMS.

**RESPONSE:** Reynolds objects to this request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, Reynolds objects to this Request as overly broad and unduly burdensome to the extent it purports to require the production of "all" documents and communications relating to Reynolds's prohibition of hostile access to the Reynolds DMS.  Reynolds further objects that it is undisputed that Reynolds has prohibited hostile access to its DMS for all of the relevant period, and thus this Request seeks documents that are not relevant to any party's claims and defenses, and/or not proportional to the needs of the case.  Reynolds further objects to this

34

Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

### b.     RCI Contracts and Other Data Integration Contracts

**REQUEST NO. 42.**  All current RCI contracts between Reynolds and vendors.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome. Specifically, Reynolds objects to this Request to the extent it purports to require Reynolds to produce the current contract for Reynolds's 150+ current RCI customers.  Such information has no bearing on the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.  Reynolds further states that Authenticom already has a standard form RCI contract (Plaintiff's Hearing Exhibit 53), and the relevant terms of that form are not disputed.

**REQUEST NO. 43.** All documents and communications (internal or external) with respect to any changes to material terms in the RCI contract, including with respect to the use of other data integrators; price secrecy provisions; and the duration of any terms, including those that survive the termination of the RCI contract. The date limitation for this request is January 1, 2009, to the present.

**RESPONSE:** Reynolds objects to this request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege.  Specifically, Reynolds objects to this Request as overly broad and unduly burdensome to the extent it purports to require the production of "all" documents and communications relating to "any" changes to the material terms of Reynolds's RCI contract over the past 8+ years.  This Request is not remotely limited to information that is relevant to any party's claims or defenses, and is not proportional to the needs of the case.  Reynolds further objects that the

Request fails to describe the items requested with reasonable particularity. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents or communications from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms, to the extent such documents or communications refer or discuss changes to material terms in the RCI contract that are at issue in the lawsuit.

**REQUEST NO. 44.** All documents and communications relating to Reynolds' enforcement, threat of enforcement, or Reynolds' interpretation of contractual provisions in vendors' current RCI contracts. The date limitation for this request is January 1, 2015, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    All communications with vendors relating to whether they can (or cannot) use independent integrators to access data on the Reynolds DMS, including any communications that cite provisions in a particular RCI contract to that effect;

    b.    All documents and communications relating to the enforcement or threat of enforcement of Reynolds's RCI contract against vendors with respect to accessing data on the Reynolds DMS by means other than through the RCI program;

    c.    All documents and communications relating to the enforcement or threat of enforcement of the price secrecy provisions in the RCI contract;

    d.    All documents and communications relating to what vendors can tell dealers (whether on invoices, in general communications, or otherwise) with respect to what vendors pay Reynolds under the RCI program for data integration;

    e.    All documents and communications with vendors and/or dealers with respect to any other contractual provision in the vendor's current RCI contract; and

    f.    All documents describing, construing, or interpreting the RCI agreements.

**RESPONSE:** Reynolds objects to this request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome to the extent it purports to require the production of "all" documents and communications

relating to Reynolds's enforcement of its current RCI contracts including, without limitation, "all documents describing, construing, or interpreting the RCI agreements" regardless of subject matter. For example, this Request would encompass all documents "relating" to any occasion where an RCI vendor failed to pay a bill due under an RCI Contract. Reynolds objects that this Request seeks information that is not relevant, and/or the Request is not proportional to the needs of the case. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

### *Pricing and Financial Documents*

#### *a.    D M S*

**REQUEST NO. 45.** Documents sufficient to show the monthly price for DMS services paid by Reynolds' dealer customers, from 2000 to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses, and/or not proportional to the needs of the case. Moreover, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing information for Reynolds's DMS services over the past 17+ years. The prices charged by Reynolds to its DMS customers—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 46.** Documents sufficient to show Reynolds' revenue for DMS services, on a quarterly basis, from 2000 to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses, and/or not proportional to the needs of the case. Moreover, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of revenue information for Reynolds's DMS services over the past 17+ years. The revenue recognized by Reynolds in connection with its DMS services business—particularly prior to the relevant time period—has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 47.** Documents sufficient to show Reynolds' profit (including profit margins) for DMS services, on a yearly basis, from 2000 to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses. Even assuming for the sake of argument that any "profit for DMS services" information were relevant, the Request for 17+ years of such information would be overly broad and not proportional to the needs of the case.

**REQUEST NO. 48.** Documents and communications sufficient to show the price increases for DMS services paid by Reynolds' dealer customers, from 2000 to the present, including whether those price increases were mandated by contract.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses, and/or not proportional to the needs of the case. Moreover, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing information for Reynolds's DMS services over the past 17+ years. The prices charged by Reynolds to its DMS customers—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 49.** Documents and communications sufficient to show Reynolds' projections with respect to revenue and profit for its DMS services. The date limitation for this request is January 1, 2015, to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses, and/or not proportional to the needs of the case. Reynolds's revenue and profit projections, if any, related to DMS services business has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 50.** Documents sufficient to show the cost of providing data integration services separate and apart from providing DMS services.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses. Reynolds further objects to this Request to the extent it purports to require Reynolds to generate analyses or calculations that are not otherwise generated during Reynolds's normal course of business.

**REQUEST NO. 51.** Documents sufficient to show Reynolds' revenue for data integration services, on a quarterly basis, from 2000 to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses. Even assuming for the sake of argument that any "revenue for data integration services" information were relevant, the Request for 17+ years of such information would be overly broad and not proportional to the needs of the case.

**REQUEST NO. 52.** Documents sufficient to show Reynolds' profit (including profit margins) for data integration services, on a yearly basis, from 2000 to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses. Even assuming for the sake of argument that any

"profit for data integration services" information were relevant, the Request for 17+ years of such information would be overly broad and not proportional to the needs of the case.

**REQUEST NO. 53.** Documents and communications sufficient to show Reynolds' projections with respect to revenue and profit for its data integration services. The date limitation for this request is January 1, 2009, to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant to any party's claims or defenses, and/or not proportional to the needs of the case. Reynolds's revenue and profit projections, if any, have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive.

**REQUEST NO. 54.** Documents sufficient to show (1) which vendor applications are or were participants in the RCI program; (2) when they became participants in the program; (3) what they paid for integration services when they joined the program; (4) what they paid in January 1, 2015; (5) what they pay now; and (6) if they are no longer participants in the RCI program, when they stopped and what they paid when they left.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome as to time and scope. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of Reynolds's RCI pricing information over the course of the entire program. Since Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint and its claims center on an alleged agreement that did not occur until February 2015, this Request seeks information that is not relevant, and/or is not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce documents sufficient to show (i) which vendor applications are or were participants in the RCI program from January 1, 2013 to the present; (ii) when they became participants in the program; and (iii) if they left, when they left the RCI program. Moreover, in the interest of

compromise, Reynolds is willing to negotiate towards the production of a reasonable time frame and set of RCI pricing information.

**REQUEST NO. 55.** All documents and communications with respect to any vendor application that once obtained data integration services from Reynolds for data on the Reynolds DMS, but no longer, including documents sufficient to show the reasons why those vendor applications no longer obtain data integration from Reynolds.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome, and because it fails to describe the items sought with reasonable particularity. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production, for some unspecified time period, of "all documents and communications" regarding "any" vendor application that used to integrate with Reynolds's DMS but no longer does, as well as documents sufficient to show the reasons for the cessation of integration. Reynolds further objects to this Request on the grounds that it seeks information that has no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery. Whether certain vendors were Reynolds customers and are no longer and, if they are not, the reasons they are not has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing documents sufficient to identify RCI vendors that left the RCI program since January 1, 2013.

**REQUEST NO. 56.** Documents sufficient to show the change in Reynolds' pricing for RCI participants from January 1, 2007, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome as to time and scope. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of Reynolds's RCI pricing information over more

than a ten-year period. Since Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint and its claims center on an alleged agreement that did not occur until February 2015, this Request seeks information that is not relevant, and/or is not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds states that in the interest of compromise, Reynolds is willing to negotiate towards the production of a reasonable time frame and set of RCI pricing information.

**REQUEST NO. 57.** Documents and communications relating to the change in any pricing for RCI participants after January 1, 2015.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome in that it seeks the production of documents and communications relating, in any way, to changes in RCI pricing over the stated time period. Reynolds further objects to this Request on the grounds that it seeks information that has no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. To the extent that this Request seeks pricing information itself, Reynolds incorporates its objections and responses to Request No. 56.

Subject to and without waiving these or its General Objections, Reynolds states that in the interest of compromise, Reynolds is willing to negotiate towards the production of a reasonable time frame and set of RCI pricing information.

**REQUEST NO. 58.** All internal documents and presentations with respect to changes in pricing for participants in the RCI program. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and because it fails to describe the items requested with reasonable particularity. Specifically,

Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all internal documents" "with respect to" any changes in RCI pricing. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. To the extent that this Request seeks pricing information itself, Reynolds incorporates its objections and responses to Request No. 56.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that discuss RCI pricing changes that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms. Moreover, subject to and without waiving these or its General Objections, Reynolds states that in the interest of compromise, Reynolds is willing to negotiate towards the production of a reasonable time frame and set of RCI pricing information.

**REQUEST NO. 59.** Documents sufficient to show any up-front initiation or certification fees, per-dealership setup fees, or other one-time charges that Reynolds has charged to participants in the RCI program from January 1, 2007, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome as to time and scope. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of Reynolds's RCI fees or charges over more than a ten-year period. Since Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint and its claims center on an alleged agreement that did not occur until February 2015, this Request seeks information that is not relevant, and/or is not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds states that in the interest of compromise, Reynolds is willing to negotiate towards the production of a reasonable time frame and set of RCI pricing information.

**REQUEST NO. 60.** Documents sufficient to show any per-transaction fees charged to participants in the RCI program, including when those per-transaction fees were instituted; why they were instituted; their amounts; and by how much they increase a vendor's monthly integration fees. The date limitation for this request is January 1, 2009, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome. Reynolds further objects to this Request on the grounds that the specific fees incurred by any given vendor has no bearing on the claims or defenses in the litigation, and/or is not proportional to the needs of the case.

Subject to and without waiving these or its General Objections, Reynolds will produce documents sufficient to describe generally any per-transaction fees charged to participants in the RCI program.

**REQUEST NO. 61.** All documents and communications relating to the practice of vendors passing through RCI integration fees to dealers. This request includes not only internal documents and correspondence but also, without limitation, any correspondence between Reynolds and dealers or vendors regarding pass-through integration fees. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and because it fails to describe the items requested with reasonable particularity. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to the alleged "practice" of vendors "passing through" RCI integration fees over the past 3+ years. Reynolds further objects to this Request on the grounds that it seeks information regarding a practice that is outside of Reynolds's control and that has no bearing on the claims or defenses in the litigation. Fees and costs charged by Reynolds in connection in with participation in the RCI program, and whether those costs were ultimately passed on to the dealers by the vendors have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are

anticompetitive. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds states that to the extent responsive documents from January 1, 2013 to the present are located in connection with agreed upon searches for documents relevant to other requests, Reynolds does not intend to withhold such documents from production.

**REQUEST NO. 62.** All documents and communications relating to the pricing charged by other data integrators for data integration services, including but not limited to CDK (through its 3PA program), Authenticom, SelectQu, and SIS, from January 1, 2007 to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to the pricing charged by non-Reynolds entities for "data integration services" over the past 10+ years. Reynolds further objects to this Request on the grounds that it seeks information that has no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery. Fees and costs charged by non-Reynolds entities in connection in with their provision of services—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds states that to the extent responsive documents from January 1, 2013 to the present are located in connection with agreed upon searches for documents relevant to other requests, Reynolds does not intend to withhold such documents from production.

**REQUEST NO. 63.** Documents and communications relating to prices charged to OEMs for access to data on the Reynolds DMS.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "documents and communications" relating, in any way, to the pricing charged to OEMs for access to the Reynolds DMS for some unspecified period of time. As noted above, Authenticom's claims are limited by the applicable statutes of limitation to no more than four years prior to the filing of its complaint. Moreover, its claims center on an alleged agreement that did not occur until February 2015. Reynolds further objects to this Request on the grounds that it seeks information that has no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery. Prices charged to OEMs by Reynolds for access, however limited—particularly prior to the relevant time period—have no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

***DMS Architecture, Data Security and System Performance***

**REQUEST NO. 64.** Documents, communications, codes, scripts, and algorithms sufficient to show the system architecture of your DMS, technological aspects for retrieving data

46

from the DMS database, blocking automated access to data on your DMS, or any other relevant technological matter to the claims and defenses in this case. The date limitation for this request is January 1, 2016, to the present. For the avoidance of doubt, this request includes, without limitation:

a. Codes, scripts, and/or algorithms sufficient to show how you block automated access to data on the DMS;

b. Codes, scripts, and/or algorithms sufficient to show how data is retrieved from the DMS database;

c. Codes, scripts, and/or algorithms sufficient to show how data is entered, stored, and organized on the DMS database;

d. Documents sufficient to show the technological aspects for how data extraction occurs from the DMS database when using the RCI and/or 3PA programs;

e. Documents sufficient to show the technological aspects for how data extraction occurs from the DMS database when using independent integrators such as DMI, IntegraLink, or otherwise; and

f. All documents and communications reviewed by any testifying and/or consulting experts on data security and system performance engaged by you for this case, whether for the Authenticom preliminary injunction hearing or otherwise.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome, and because the Request seeks information that is not relevant to any party's claims or defenses and/or is not proportional to the needs of the case. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it seeks the production of "documents, communications, codes, scripts, and algorithms sufficient to show the system architecture of the DMS, technological aspects for retrieving data from the DMS database, blocking automated access to data on the DMS, or any other relevant technological matter to the claims and defenses in this case." In other words, Authenticom wants the technical readout of Reynolds's entire system—how its DMS works, how to retrieve data from the DMS, how Reynolds is technologically able to detect and block Authenticom's hostile access to Reynolds's DMS, etc. Such information, however, has no bearing on whether or not CDK and Reynolds entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive. Reynolds further objects to

47

subparagraph (f) of this Request on the grounds that it goes beyond the requirements of the

Federal Rules of Civil Procedure as to the materials that must be produced in connection with

any expert work performed in this litigation. Reynolds has complied with the Federal Rules in

connection with its production of expert materials in connection with the preliminary injunction

hearing. Any request for other expert materials is premature and will be addressed pursuant to

the Federal Rules in the course of expert discovery.

**REQUEST NO. 65.** All documents and communications regarding Reynolds' use of Authenticom for data integration services. The date limitation for this request is January 1, 2007, to the present. For the avoidance of doubt, this request includes any instance in which a Reynolds-owned (wholly, jointly, or partially) add-on application used Authenticom for data integration services with respect to any DMS platform.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and

duplicative. Specifically, Reynolds objects to this Request as grossly overly broad and unduly

burdensome in that it literally seeks "all documents and communications" regarding Reynolds's

"use" of Authenticom for "data integration services" over the past 10+ years. Reynolds further

objects that documentation of any relationship between any Reynolds add-on application and

Authenticom is equally if not more accessible to Authenticom. Reynolds further objects that this

Request does not describe the items requested with reasonable particularity. Finally, Reynolds

objects to this Request to the extent it seeks documents protected from disclosure by the

attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to

producing documents (if any) sufficient to reflect any Reynolds add-on applications that have

used Authenticom for data integration services during the period January 1, 2013 to the present;

and any other relevant, non-privileged documents that are located pursuant to a diligent ESI

search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 66.** All documents and communications regarding data security and/or DMS system performance with respect to Authenticom's access to the Reynolds or CDK DMSs. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and because it fails to describe the items requested with reasonable particularity. More specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents and communications" regarding data security and/or system performance vis-à-vis Authenticom's hostile access of Reynolds's DMS from the beginning of time to the present. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 67.** All documents, communications, or analyses regarding any specific security incident directly caused by Authenticom's (or any other independent integrator's) automated access to data on the CDK or Reynolds DMSs. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and because it fails to describe the items requested with reasonable particularity. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents, communications, or analyses" "regarding" any security incident caused by Authenticom's hostile access (or another "independent integrator's" hostile access) of Reynolds's DMS from the beginning of time to the present. Finally, Reynolds objects to this

Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 68.** All documents, communications, or analyses with respect to the effects on DMS system performance of Authenticom's (or any other independent integrator's) automated access to data on the CDK or Reynolds DMSs, including any specific system performance issue directly caused by Authenticom or any other independent integrator. There is no date limitation for this request.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and because it fails to describe the items requested with reasonable particularity. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it literally seeks "all documents, communications, or analyses" "with respect to" any "effects" on DMS "system performance" attributable to Authenticom's hostile access (or another "independent integrator's" hostile access) automated access to data on the CDK or Reynolds DMSs from the beginning of time to the present. Finally, Reynolds objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 69.** All documents and communications relating to the technological methods used by Reynolds to block or disable dealer-provided login credentials. The date limitation for this request is January 1, 2009, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and because it seeks information that is not relevant to any party's claims or defenses, and/or is not proportional to the needs of the case. Specifically, Reynolds objects to this Request as grossly overly broad and unduly burdensome in that it seeks the production of "all documents and communications relating to the technological methods used by Reynolds to block or disable dealer-provided login credentials" over the past 8+ years. In other words, Authenticom wants to know how Reynolds is technologically able to detect and block Authenticom's hostile access to Reynolds's DMS, etc. Such information, however, has no bearing on whether or not CDK and Reynolds's entered into an unlawful agreement to eliminate Authenticom from the marketplace or whether the terms of Reynolds's dealer or vendor contracts are anticompetitive. It is not disputed that Reynolds has blocked or attempted to block hostile integration for the entire time period covered by this Request. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

**REQUEST NO. 70.** Documents sufficient to show how dealer data is stored on the Reynolds DMS. The date limitation for this request is January 1, 2014, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    Documents sufficient to show whether a dealer's data is stored separate from the data of other dealers;

    b.    Documents sufficient to show whether a dealer's data is commingled with data that does not belong to the dealer; and

    c.    Documents sufficient to show where dealer data is stored (whether on servers at the dealership; at Reynolds-managed server farms; at third-party managed server farms; or somewhere else).

**RESPONSE:** Subject to and without waiving its General Objections, Reynolds states that it will produce non-privileged documents sufficient to respond to this request, if they exist, or provide a response in the form of an equivalent interrogatory answer.

**REQUEST NO. 71.** Documents and communications sufficient to show the specific security measures Reynolds has instituted to protect the security of dealer data. The date limitation of this request is January 1, 2009, to the present.

**RESPONSE:** Reynolds objects to this Request as seeking information that is not relevant, and/or is not proportional to the needs of the case. It is not disputed that Reynolds has blocked or attempted to block hostile integration for the entire time period covered by this Request.

Subject to and without waiving these or its General Objections, Reynolds states that it will undertake a diligent search and produce non-privileged documents reflecting a reasonable level of detail regarding responsive security measures, to the extent such documents exist and are within Reynolds's possession, custody, and control and after a reasonable search of appropriate sources.

**REQUEST NO. 72.** Documents sufficient to show the security infrastructure of the Reynolds DMS and how it has changed over time. The date limitation for this request is January 1, 2009, to the present.

**RESPONSE:** Reynolds objects to this Request as vague, overly broad, and unduly burdensome. Specifically, Reynolds objects to the term "security infrastructure" as vague and overly broad. To the extent that the Request seeks specific technical specifications regarding Reynolds's security measures and undertakings in connection with its DMS over the past 8+ years, Reynolds objects to the Request as overly broad and unduly burdensome. Such information has no bearing on the claims or defenses at issue in this litigation, and/or is not proportional to the needs of the case, and thus is beyond the scope of permissible discovery.

Subject to and without waiving these or its General Objections, Reynolds refers Authenticom to Defs. Ex. 45 from the Preliminary Injunction Hearing, which represents the general security framework of the DMS as it relates to the Reynolds Integration Hub.

**REQUEST NO. 73.** All documents and communications referencing, relating to, or concerning the August 28, 2013 memo of the National Automobile Dealers Association, which was introduced as Defendants' Exhibit 15 at the Preliminary Injunction Hearing.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" "relating to" or "concerning" (in any way) the August 28, 2013 NADA memo (Defs. Ex. 15) for some unspecified period of time. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 74.** All documents and communications referencing, relating to, or concerning the Gramm-Leach-Bliley Act in connection with data integration services.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and because it fails to describe the items requested with reasonable particularity. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" "relating to" or "concerning" (in any way) the Gramm-Leach-Bliley Act "in connection with data integration services" for some unspecified period of time. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are

located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 75.** All documents and communications relating to any prospective sale of Reynolds, whether to a private equity firm, another corporation, or to public investors. The date limitation for this request is January 1, 2014.

**RESPONSE:** Reynolds objects that this Request seeks information that is not relevant, and/or is not proportional to the needs of the case. There are no allegations in the Complaint regarding any prospective sale of Reynolds. In the event that there were any such prospective sales, this Request would be overly broad and unduly burdensome.

**REQUEST NO. 76.** All documents and communications relating to any competitive threat or challenge posed by independent data integrators to Reynolds' business, including without limitation, to Reynolds' core DMS business and Reynolds' add-on applications. The date limitation for this request is January 1, 2014, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and fails to describe the items requested with reasonable particularity. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to *any* competitive threat posed by so-called "independent integrators" to Reynolds's business. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 77.** All documents and communications relating to any competitive threat or challenged posed by application providers to Reynolds' DMS business, including without limitation, any threat of disintermediation.

**RESPONSE:** Reynolds objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and because it seeks documents that are not relevant to any party's claims or defenses in this matter. More specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to *any* competitive threat posed by "application providers" to Reynolds's DMS business from the beginning of time to the present. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Subject to and without waiving these or its General Objections, Reynolds is agreeable to producing relevant, non-privileged documents from January 1, 2013 to the present that are located pursuant to a diligent ESI search of a reasonable list of custodians, using reasonable search terms.

**REQUEST NO. 78.** All documents and communications regarding Reynolds effort to advantage its own add-on applications as compared to applications offered by third-party vendors. The date limitation for this request is January 1, 2009, to the present. For the avoidance of doubt, this request includes, without limitation:

    a.    All documents and communications regarding any "closed categories" of application types that Reynolds would not permit into the RCI program;

    b.    All documents and communications regarding any functionality with respect to access to dealer data requested by vendors through the RCI program that Reynolds refused, such as the ability to write repair orders back into the DMS; and

    c.    All documents and communications regarding any effort to disrupt the workflow of applications offered by competing vendors.

**RESPONSE:** Reynolds objects to this Request as not relevant because, among other reasons, there is no allegation or evidence in the case of any effort by Reynolds to "advantage its own add-on applications as compared to applications offered by third-party vendors." Thus, the

Request seeks information that has no bearing on the claims or defenses in the litigation and thus are beyond the scope of permissible discovery.

**REQUEST NO. 79.** Documents sufficient to show Reynolds' organizational structure, including leadership positions over Reynolds' DMS and data integration businesses, from January 1, 2007, to the present.

**RESPONSE:** Reynolds objects to this Request as overly broad and unduly burdensome. Specifically, Reynolds objects to this Request as overly broad and unduly burdensome in that it seeks the production of organizational and employee information for the past 10+ years.

Subject to and without waiving these or its General Objections, Reynolds states that it will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the present, to the extent they exist and are within Reynolds's possession, custody, and control and after a reasonable search of appropriate sources.

**PUBLIC VERSION**

DATED:  November 1, 2017

John S. Skilton
JSkilton@perkinscoie.com
Charles G. Curtis, Jr.
CCurtis@perkinscoie.com
Michelle M. Umberger
MUmberger@perkinscoie.com
Brandon M. Lewis
BLewis@perkinscoie.com
Jesse J. Bair
JBair@perkinscoie.com
**PERKINS COIE LLP**
One East Main Street, Suite 201
Madison, WI 53703
Telephone:  608-663-7460
Facsimile:  608-663-7499


Kathleen A. Stetsko
KStetsko@perkinscoie.com
**PERKINS COIE LLP**
131 South Dearborn St., Suite 1700
Chicago, IL 60603
Telephone:  312-324-8400
Facsimile:  312-324-9400

Respectfully submitted,

/s/ *Brian T. Ross*
Kathy Patrick
kpatrick@gibbsbruns.com
Aundrea K. Gulley
agulley@gibbsbruns.com
Brian T. Ross
bross@gibbsbruns.com
Brice A. Wilkinson
bwilkinson@gibbsbruns.com
Ross M. MacDonald
rmacdonald@gibbsbruns.com
**GIBBS & BRUNS, LLP**
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone:  713-650-8805
Facsimile:   713-750-0903

Michael P.A. Cohen
MCohen@sheppardmullin.com
Amar S. Naik
ANaik@sheppardmullin.com
**SHEPPARD MULLIN RICHTER &**
**HAMPTON LLP**
Suite 100
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  202-747-1900
Facsimile:  202-747-1901


*Attorneys for Defendant*
*The Reynolds and Reynolds Company*

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2017, I caused a true and correct copy of the foregoing The Reynolds and Reynolds Company's Responses and Objections to Authenticom's First Set of Requests of Production of Documents to be served by email upon the following individuals:

Jennifer L. Gregor (jgregor@gklaw.com)

Allison W. Reimann (areimann@gklaw.com)

Michael N. Nemelka (mnemelka@kellogghansen.com)

Aaron M. Panner (apanner@kellogghansen.com)

David L. Schwarz (dschwarz@kellogghansen.com)

Kevin J. Miller (kmiller@kellogghansen.com)

Derek T. Ho (dho@kellogghansen.com)

Joshua Hafenbrack (jhafenbrack@kellogghansen.com)

Joanna T. Zhang (jzhang@kellogghansen.com)


*s/ Brian T. Ross*
Brian T. Ross

PUBLIC VERSION

# EXHIBIT 3

PUBLIC VERSION

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

December 7, 2017

*Via Electronic Mail*

Brian Ross, Esq.                                    Britt M. Miller, Esq.
Gibbs & Bruns LLP                                   Mayer Brown
1100 Louisiana                                      71 South Wacker Drive
Suite 5300                                          Chicago, IL 60606
Houston, TX 77002

      Re:    *Authenticom, Inc. v. CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds")*, Case No. 17-cv-318 (W.D. Wis.)

Dear Britt and Brian:

      I write regarding discovery in this matter, and in response to your Dec. 1 letters. Given CDK's and Reynolds' positions on which we have an impasse, and Defendants' failure to produce documents or engage in the scheduling of depositions, we have no choice but to file a motion to compel on several issues, which we intend to do on Monday. Those issues are addressed in the first part of this letter. The second part addresses issues where the parties are close to agreement based on a willingness to compromise. We appreciate the progress the parties have made on these issues.

## I.    <u>Issues Requiring a Motion to Compel to Be Filed Monday</u>

      **Depositions.** Over two weeks ago – on November 21st – I sent a letter to Andi and Britt, enclosing deposition notices for key CDK and Reynolds witnesses. In that letter I made clear that these depositions needed "to take place before expert reports are due given their likely relevance to those reports." I asked you to engage in the scheduling of those depositions. We have not heard a word back. Given the impending deadlines in this case, we cannot delay any longer in scheduling the depositions. Based on your failure to engage with us, we have no choice but to move to compel to schedule these depositions. If you commit to work with us to have a deposition schedule set by the end of next week (December 15th) – in which most of the depositions take place in January and early February in time for the expert reports – we will drop this issue from the motion. Otherwise, we will have no choice but to seek relief from the Court.

      **Document Production.** CDK has still not produced any documents. There is no excuse for that. And Reynolds' production consists of documents from the preliminary injunction hearing. That is also not acceptable. We understand that we are still engaged in conferring regarding search terms and custodians, but that does not mean CDK and Reynolds cannot start producing documents for the custodians we have already agreed to (the vast majority of them). Authenticom is doing so – in fact, you will soon receive a large production of such materials.

At a minimum, there are two sets of documents that Defendants could have – and should have – produced weeks ago: (1) the "factual" documents Defendants have already produced to the FTC or any other government agency that Defendants have agreed to produce here; and (2) DMS and RCI pricing and financial information. If CDK and Reynolds do not produce these documents by Monday, Defendants' failure to produce these documents (and overall general failure to make any progress on their document productions) will be part of the motion to compel.

**Materials Produced Pursuant to Government Investigations.** Defendants are refusing to produce factual materials provided to the FTC or other government agency if those materials are "otherwise privileged." If factual material was provided to the FTC, as we explained in my November 24th letter, it is not privileged. Please confirm that you are not withholding any factual materials. If not, that issue will be included in our motion to compel.

And to be clear, if Defendants have available documents that they provided the FTC or other government agency before January 1, 2013, on issues relating to this case, then they should produce them. Please confirm that Defendants are not withholding documents in response to Request No. 1 based on a date limitation. If not, that issue will be included in our motion to compel.

Defendants are also refusing to produce "advocacy pieces or 'white papers'" provided to the FTC or other government agency. As explained in my November 24th letter, those materials are not privileged, and your letter does not dispute that. Instead, you state that it would be a "burden" to produce those materials. We don't understand the burden – you have already produced them to the FTC. You also state that producing such materials would be "prejudicial" to Defendants because your thinking, as reflected in those advocacy pieces, might change. That is not a legitimate reason to withhold the documents. We are at an impasse and will move to compel the production of "advocacy pieces or 'white papers'" produced to the FTC or other government agency on issues related to this case.

Besides "advocacy pieces or 'white papers'" or other such materials that are not factual in nature, we understand that Defendants have agreed to produce everything else that they have provided to the FTC or other government agency in response relevant investigations. If we are mistaken, please let us know by Friday.

**Request No. 5 (communications regarding agreements).** We are at an impasse on this issue. Whether or not we include it in the forthcoming motion to compel, we reserve all rights.

**CDK Request Nos. 62 and 63.** Thank you for your agreement to produce documents related to DMI and IntegraLink integration pricing for non-CDK DMSs. However, we are at an impasse with respect to documents relating to DMI and IntegraLink pricing for access to the CDK DMS. We explained the relevance of those documents in my November 24th letter, and CDK's continued refusal to produce those documents is without justification. This issue will be subject to the motion to compel.

**CDK Requests Nos. 51, 52, 53, 54 & 55 (DMS Financials).** We accept the January 1, 2011, date limitation for these requests.

With respect to Requests No. 51 and 54, CDK has offered to provide the "basic" pricing going back to January 1, 2011 – thank you – but not the "bundled" pricing. CDK has no basis to withhold the "bundled" DMS pricing. That will be subject to the motion to compel.

As to DMS revenue, it appears we are in agreement.

As to DMS profit, projections (revenue and profit), margin, and costs, your letter suggests that the material may not be maintained in the way Authenticom thinks, without any agreement to produce the responsive documents that do exist. That is not acceptable. CDK is a public company, and so its reporting segments must track revenue, operating expenses, projections, and so forth. CDK must produce profit, projections (revenue and profit), margin, and cost information with respect to its DMS business, however it may be reported or included within a segment. Yet, CDK has still not agreed to produce these documents despite long calls and now multiple letters back and forth on this issue. And these materials should not be subject only to a custodial and search term limitation – your letter implies that scattered information may be within custodial files. The parties are at an impasse. These requests will be subject to the motion to compel.

**CDK Requests Nos. 57, 58, 59, 60, 61, 65, 66, 67, 69 & 70 (3PA Financials).** We accept the January 1, 2011, date limitation for these requests.

There is the same problem with respect to CDK's response to these requests as there is with respect to the request on DMS financials. As to 3PA profit, projections (revenue and profit), margin, and costs, your letter again suggests that the material may not be maintained in the way Authenticom thinks, without any agreement to produce the responsive documents that do exist. Again, CDK is a public company, and it has reporting segments. It has a Data Services division. However it is tracked or maintained, CDK must produce documents relating to 3PA profit, projections (revenue and profit), margin, and costs. As with DMS financials, your letter suggests that some responsive information would be scattered among custodial searches. But these requests cannot be limited to custodial searches. The parties are at an impasse. These requests will be subject to the motion to compel.

**CDK Request No. 73 (OEM Pricing).** The parties are at an impasse and this issue will be subject to the motion to compel.

**Reynolds Request Nos. 56-59 (RCI Pricing).** Thank you for agreeing to a period of 2011 through 2017. While we have substantial agreement on some categories of documents responsive to this request, we are at an impasse with respect to (1) communications regarding RCI pricing and deliberations with respect to changes in RCI pricing and (2) materials presented to or considered by the RCI pricing committee. Those will be subject to the motion to compel.

**Reynolds Request Nos. 47, 49, 50, 52, & 53 (RCI and DMS Financial Information).** For the same reasons identified above with respect to CDK, Reynolds has no basis to withhold documents relating to DMS and RCI profit, projections (revenue and profit), margin, and costs, no matter how such information may be tracked or included within various segments. The parties are at an impasse. These requests will be subject to the motion to compel.

- 3 -

## II.     Other Issues

**Sources of ESI.**  We must again raise the issue of searching central or shared files.  Brian, you referred us back to your November 16th letter, which said Reynolds would search such materials "to the extent such searches are proportional to the needs of the case."  That provides no assurance at all, and gives us no insight into which requests a search of central and shared materials would apply.  We again request confirmation along the lines in my November 24th letter.

### Reynolds Specific Issues

**Ron Lamb ESI.**  Thank you for the explanation.  We reserve all rights with respect to any other custodial files or other documents that were not preserved after getting notice of the MVSC litigation.

**Date Limitation for DMS and RCI financial information.**  Britt noted the date inconsistency in my Nov. 24th letter, and assumed correctly we were seeking documents going back to 2007 (see page 2 of my letter).  CDK has agreed to go back to 2011 with respect to these requests, and we ask the same of Reynolds.  Please let us know if you agree.

**Request No. 36 (DMS "Tenure").**  We are willing to accept your proposed compromise for now,  reserving all rights.

**Request No. 78.**  It appears that a further meet-and-confer would be fruitful on security-related documents.  Let's put this on the agenda for our next call.

### CDK Specific Issues

**Date Ranges.**  Your proposed compromises are acceptable.  Thank you.

**CRM Software.**  Thank you for looking to see if your CRM software allows for export of materials that can be searched.  We look forward to hearing from you on this.

**Request No. 6.**  In response to your question, yes, we would be willing to accept "documents sufficient to show" as a response to subsection (f) of this request.

**Request No. 17 ("SMART-R").**  Thank you for noting that if there are communications with vendors and/or dealers about SMART-R, they would be captured by the files of Steve French and Kevin Distelhorst.  Will the January 1, 2013, date limitation exclude relevant documents relating to SMART-R?  We note that CDK has agreed to other requests relating to how it accessed the Reynolds DMS before February 2015.  Documents related to SMART-R would be responsive to those requests too.

**Request No. 19 (DMI and IntegraLink Access to Non-CDK, Non-Reynolds DMSs).**  Your understanding of our proposal was correct.  We are in agreement.

**Request No. 25 (Agreements with Other Providers of Data Integration).**  You are correct that the remaining dispute centers on CDK's agreements with data integration providers

PUBLIC VERSION

for access to open systems, not just closed.  How CDK accessed / accesses open systems is relevant to many issues in this case, including the importance of data integrators; it helps define the market for data integration; it shows that open systems are secure, and CDK uses data from them; it shows that data integrators themselves are secure, such that CDK would use them; among other issues.  Please let us know if you will produce the requested documents or if we are at an impasse.

**Request No. 28.**  As noted in my November 24th letter, CDK represented to the court that CDK's dealers have the ability to extract data, implying they have a program akin to Reynolds' Dynamic Reporting.  CDK must produce documents to support that representation, whether or not they are in custodial files.  If dealers have that capability, CDK must have presentations and communications with dealers on the subject, technology notes on the capability, records of dealers actually doing so, and so forth.  Such materials are important not only to test CDK's representation to the Court, but also to test the viability of dealer-initiated data extraction.  Please confirm that CDK is producing the documents subject to this request, whether or not they may be in Howard Gardner's files.  If not, we will be at an impasse.

**Request Nos. 35 & 36.**  We are in agreement – your proposal to go back to October 2014 is acceptable, based on the representations in your letter.

**Request No. 74.**  It appears that a further meet-and-confer would be fruitful on security-related documents.  Let's put this on the agenda for our next call.

**Request Nos. 86 & 87 (Elliott Management).**  Please confirm that CDK will produce any communications with Elliott Management that relate to increased integration fees.

**Request No. 91 ("Tilt the Table").**  It appears that a further meet-and-confer would be fruitful on security-related documents.  Let's put this on the agenda for our next call.

Very truly yours,

*s/ Michael N. Nemelka*

Michael N. Nemelka

PUBLIC VERSION

# EXHIBIT "6"

PUBLIC VERSION

**Provance, Matthew D.**

| | |
|---|---|
| **From:** | Provance, Matthew D. |
| **Sent:** | Tuesday, December 19, 2017 7:25 PM |
| **To:** | Rudofsky, Benjamin L.; Miller, Britt M.; 'Brian Ross' |
| **Cc:** | Ryan, Mark; 'Aundrea Gulley'; 'Michael P. A. Cohen'; 'Gregor, Jennifer'; Hafenbrack, Joshua; 'Umberger, Michelle M. (Perkins Coie)'; Nemelka, Michael N. |
| **Subject:** | RE: Authenticom v. CDK/Rey |

Ben –

Thanks again for the call this afternoon, and for your additional proposed search "11c," which is copied below. Pending confirmation that the 11c term isn't adding an unacceptable volume of documents (which I don't expect), I think that we can agree to it. In sum, then, we can agree to run the edited terms reflected in your 12/18/2017 revision, except for your edits to searches 11a and 11b (*i.e.*, we will revert to our versions of those terms as reflected in our 12/15/2017 redline), but in exchange we'll agree to run your new proposed search 11c. Assuming that's clear enough, please let me know if we've now resolved our outstanding issues related to CDK's search terms. We appreciate your willingness to work with us to bring this issue to a close.

As we've noted in prior correspondence (and as Authenticom has noted as well), our terms remain subject to testing and validation with the full set of finally agreed custodians, and may require adjustment in order to address individual terms that return an unduly burdensome volume of irrelevant or non-responsive results against the final corpus of documents to be reviewed.  We will notify you if further changes are made and explain why they are being made.

Thanks,
Matt

11c: (disabl* or block* or ((without or no or absent) w/3 access*) or shut or end or terminate) AND ((hostile or foreign or unauthorized or independent) w/5 access*)

---

Matt Provance
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Rudofsky, Benjamin L. [mailto:brudofsky@kellogghansen.com]
**Sent:** Tuesday, December 19, 2017 2:43 PM
**To:** Provance, Matthew D.; Miller, Britt M.; 'Brian Ross'
**Cc:** Ryan, Mark; 'Aundrea Gulley'; 'Michael P. A. Cohen'; 'Gregor, Jennifer'; Hafenbrack, Joshua; 'Umberger, Michelle M. (Perkins Coie)'; Nemelka, Michael N.
**Subject:** RE: Authenticom v. CDK/Rey

4:00 PM is fine.  Please circulate a dial-in or call my direct line 202 326 7933.  We can finish the Custodians discussion as well.

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Tuesday, December 19, 2017 3:31 PM
**To:** Rudofsky, Benjamin L. <brudofsky@kelloghansen.com>; Miller, Britt M. <BMiller@mayerbrown.com>; 'Brian Ross' <bross@gibbsbruns.com>
**Cc:** Ryan, Mark <MRyan@mayerbrown.com>; 'Aundrea Gulley' <agulley@gibbsbruns.com>; 'Michael P. A. Cohen' <MCohen@sheppardmullin.com>; 'Gregor, Jennifer' <JGregor@gklaw.com>; Hafenbrack, Joshua

<jhafenbrack@kellogghansen.com>; 'Umberger, Michelle M. (Perkins Coie)' <MUmberger@perkinscoie.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>
**Subject:** RE: Authenticom v. CDK/Rey

Ben, can you talk at 4:00 p.m. Eastern (3:00 my time)? Or, any time between then and 5:00. Also, as a related issue and in the interest of efficiency, we'd like to resolve or complete meet and confer discussions on CDK custodians today. Our position on that issue is set forth in Britt's December 15 letter.

Thank you,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

---

**From:** Rudofsky, Benjamin L. [mailto:brudofsky@kellogghansen.com]
**Sent:** Tuesday, December 19, 2017 1:00 PM
**To:** Provance, Matthew D.; Miller, Britt M.; 'Brian Ross'
**Cc:** Ryan, Mark; 'Aundrea Gulley'; 'Michael P. A. Cohen'; 'Gregor, Jennifer'; Hafenbrack, Joshua; 'Umberger, Michelle M. (Perkins Coie)'; Nemelka, Michael N.
**Subject:** RE: Authenticom v. CDK/Rey

Matt,

Thank you for the quick reply. We are available any time between 3pm and 5pm EST, if a window in that time works for you.

Best,

Ben

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Tuesday, December 19, 2017 1:53 PM
**To:** Rudofsky, Benjamin L. <brudofsky@kellogghansen.com>; Miller, Britt M. <BMiller@mayerbrown.com>; 'Brian Ross' <bross@gibbsbruns.com>
**Cc:** Ryan, Mark <MRyan@mayerbrown.com>; 'Aundrea Gulley' <agulley@gibbsbruns.com>; 'Michael P. A. Cohen' <MCohen@sheppardmullin.com>; 'Gregor, Jennifer' <JGregor@gklaw.com>; Hafenbrack, Joshua <jhafenbrack@kellogghansen.com>; 'Umberger, Michelle M. (Perkins Coie)' <MUmberger@perkinscoie.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>
**Subject:** RE: Authenticom v. CDK/Rey

Ben –

Thanks for your correspondence and redline concerning Authenticom's proposed terms. We're still testing those additional changes, but the key problem from our point of view appears to be your removal of connectors from searches 11a and 11b. We'd like to meet and confer about that this afternoon, in the hope of trying to resolve outstanding issues over CDK's search terms in the short term. Absent the connectors that we proposed, the search will return any document that contains the words "disable," "block," "shut," "end," or "terminate" used in any context … which as you can imagine is going to pull in a massive number of documents with no connection to this case or the claims and

defenses that are at issue. We proposed to solve this problem with connectors, and are potentially open to other solutions, but leaving the search term as-is will not work.

Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Rudofsky, Benjamin L. [mailto:brudofsky@kellogghansen.com]
**Sent:** Monday, December 18, 2017 4:25 PM
**To:** Miller, Britt M.; 'Brian Ross'
**Cc:** Ryan, Mark; 'Aundrea Gulley'; Provance, Matthew D.; 'Michael P. A. Cohen'; 'Gregor, Jennifer'; Hafenbrack, Joshua; 'Umberger, Michelle M. (Perkins Coie)'; Nemelka, Michael N.
**Subject:** RE: Authenticom v. CDK/Rey

Britt and Brian –

Please see the attached correspondence and related attachment.

Regards,

Ben Rudofsky

**Benjamin L. Rudofsky**
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W. | Suite 400 | Washington, DC 20036
ph: 202-326-7933, fax: 202-326-7999

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via e-mail, and then destroy all instances of this communication. Thank you.

**From:** Miller, Britt M. [mailto:BMiller@mayerbrown.com]
**Sent:** Friday, December 15, 2017 5:40 PM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>; 'Brian Ross' <bross@gibbsbruns.com>
**Cc:** Ryan, Mark <MRyan@mayerbrown.com>; 'Aundrea Gulley' <agulley@gibbsbruns.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; 'Michael P. A. Cohen' <MCohen@sheppardmullin.com>; 'Gregor, Jennifer' <JGregor@gklaw.com>; Hafenbrack, Joshua <jhafenbrack@kellogghansen.com>; Rudofsky, Benjamin L. <brudofsky@kellogghansen.com>; 'Umberger, Michelle M. (Perkins Coie)' <MUmberger@perkinscoie.com>
**Subject:** RE: Authenticom v. CDK/Rey

Mike –

Please see the attached correspondence and related attachment.

Regards – Britt

PUBLIC VERSION

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

---

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Friday, December 08, 2017 4:42 PM
**To:** 'Brian Ross'
**Cc:** Miller, Britt M.; Ryan, Mark; 'Aundrea Gulley'; Provance, Matthew D.; 'Michael P. A. Cohen'; 'Gregor, Jennifer'; Hafenbrack, Joshua; Rudofsky, Benjamin L.; 'Umberger, Michelle M. (Perkins Coie)'
**Subject:** RE: Authenticom v. CDK/Rey

Dear Britt and Brian,

Please find the attached letter and word document regarding custodians and search terms.

Thanks and have a good weekend.

Mike

---

**From:** Nemelka, Michael N.
**Sent:** Friday, December 08, 2017 4:55 PM
**To:** 'Brian Ross'
**Cc:** 'Britt Miller'; 'Ryan, Mark'; 'Aundrea Gulley'; 'Provance, Matthew D.'; 'Michael P. A. Cohen'; 'Gregor, Jennifer'; Hafenbrack, Joshua; Rudofsky, Benjamin L.; 'Umberger, Michelle M. (Perkins Coie)'
**Subject:** RE: Authenticom v. CDK/Rey

Dear Britt and Brian,

Please see the attached letter.

Thanks,
Mike

---

**From:** Nemelka, Michael N.
**Sent:** Thursday, December 07, 2017 4:09 AM
**To:** 'Brian Ross'
**Cc:** Britt Miller; Ryan, Mark; Aundrea Gulley; Provance, Matthew D.; Michael P. A. Cohen; Gregor, Jennifer; Hafenbrack, Joshua; Rudofsky, Benjamin L.; Umberger, Michelle M. (Perkins Coie)
**Subject:** RE: Authenticom v. CDK/Rey

Dear Britt and Brian,

Please see the attached correspondence. We will also respond today regarding search terms, custodians, and the meet and confers we had on our responses to your requests. But we felt it important to provide the attached letter expeditiously.

Thanks,
Mike

**From:** Brian Ross [mailto:bross@gibbsbruns.com]
**Sent:** Friday, December 01, 2017 9:21 PM
**To:** Nemelka, Michael N.
**Cc:** Britt Miller; Ryan, Mark; Aundrea Gulley; Provance, Matthew D.; Michael P. A. Cohen; Gregor, Jennifer; Hafenbrack, Joshua; Rudofsky, Benjamin L.; Umberger, Michelle M. (Perkins Coie)
**Subject:** Re: Authenticom v. CDK/Rey

Mike—

Likewise please see the attached letter, also responding to your November 24 letter.

Thanks and best regards,

Brian

On Dec 1, 2017, at 6:18 PM, Miller, Britt M. <BMiller@mayerbrown.com> wrote:

Mike –
Please see the attached letter responding to your November 24 Letter.
Regards – Britt

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Friday, November 24, 2017 3:10 PM
**To:** Miller, Britt M.; Ryan, Mark; 'Aundrea Gulley'; Brian Ross; Provance, Matthew D.; Michael P. A. Cohen
**Cc:** Gregor, Jennifer; Hafenbrack, Joshua; Rudofsky, Benjamin L.
**Subject:** Authenticom v. CDK/Rey
Dear Britt and Brian,
Please see the attached letter on various discovery issues regarding Defendants' responses to Authenticom's document requests.
Thanks,
Mike
Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

PUBLIC VERSION

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

PUBLIC VERSION

# EXHIBIT 5

PUBLIC VERSION

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

January 19, 2018

*Via Electronic Mail*

Brian Ross, Esq.                                    Britt M. Miller, Esq.
Gibbs & Bruns LLP                                  Mayer Brown
1100 Louisiana                                     71 South Wacker Drive
Suite 5300                                         Chicago, IL 60606
Houston, TX 77002


        Re:    *Authenticom, Inc. v. CDK Global, LLC* ("CDK") *and The Reynolds and Reynolds
               Company* ("Reynolds"), Case No. 17-cv-318 (W.D. Wis.)

Dear Britt and Brian:

        I write regarding several discovery issues, including in response to certain
correspondence from the both of you.

        We thank you for all the progress the parties have made on discovery issues, and the
agreements and compromises we have reached as reflected in our prior correspondence.  There
are a few outstanding issues, however, and although the Court has entered a partial stay of
discovery related to depositions and the production of custodial ESI, the parties can still use the
time to make progress in resolving the issues outlined below.  *See infra* Part III.

        And with respect to the documents that are *not* subject to the stay of discovery – i.e., non-
custodial documents – we write to inquire about the status of those document productions,
particularly in light of Defendants' slow pace of producing documents to date.  *See infra* Parts I
and II.

        We request a meet and confer this coming Monday anytime after 2:00 p.m. ET to discuss
the issues described in this letter.

## I.    Documents Not Subject to the Stay of Discovery

        As Defendants' wrote in their moving papers for the stay of discovery, "[t]o be clear,
Defendants do not seek a total stay of discovery.  They will continue to gather and produce non-
custodial documents pursuant to the parties' ongoing discovery discussions and expect that
Plaintiff intends to do the same."  We therefore write to inquire about the status of the production
of non-custodial documents.

        As I pointed out in my letter from December 7, 2017, "there are two sets of documents" –
which are non-custodial – "that Defendants could have – and should have – produced weeks ago:

(1) the 'factual' documents  Defendants have already produced to the FTC or any other government agency that Defendants have agreed to produce here; and (2) DMS and RCI[/3PA] pricing and financial [expenses, costs, profits, projections, etc.] information." *See* Letter from M. Nemelka to B. Miller and B. Ross (Dec. 7, 2017).  That is of course even more true now more than a month later, and those documents should be produced promptly.  With respect to the DMS and 3PA pricing information, Britt wrote on December 8, 2017 that CDK "will promptly work to collect and produce this information."  We appreciate that statement, but it was made over five weeks ago and CDK has yet to produce the documents (all of which are non-custodial).  We accordingly expect those documents to be produced as soon as possible, along with the other DMS and data integration financial information.  In addition to those categories of documents (which our experts need), the following non-custodial categories of documents should also be produced as soon as possible: (1) centrally maintained documents related to the February 2015 agreements, including drafts of the agreements, documents implementing the agreements, and so forth; (2) the dealer, vendor, and other contracts Defendants have agreed to produce; and (3) documents on Defendants' whitelisting usernames and passwords for data integrators (including each other).  These are just examples of the non-custodial documents that Defendants should be producing now.  Our experts need these and the other agreed-to documents.

It is imperative that Defendants produce such documents promptly in light of their inadequate productions to date.  Before the stay of discovery, Reynolds had only made one document production of 1,561 documents (of largely duplicative documents from the preliminary injunction hearing).  CDK had made only two productions (though of substantially more documents than Reynolds).  Even so, the pace of productions was a problem we have had to point out repeatedly.  For example, Reynolds has not produced a single document since *November 16, 2017*, over two months ago.  That is unacceptable, as we have pointed out many times.  With the stay of discovery, Defendants should not have any excuses to make sure the non-custodial documents they have already agreed to produce are in fact produced promptly.

Finally, during the stay, Authenticom is continuing to work diligently to identify and prepare custodial documents responsive to Defendants' discovery requests so that we can make a very substantial custodian-based production promptly after the stay is lifted.  We hope and expect Defendants to do the same.

## II.     CDK's Improper Confidentiality Designations

As noted in my prior correspondence (my emails from January 4th; January 9th; and January 10th), we challenge CDK's designation of its entire re-produced FTC document production as "Highly Confidential."  On January 9th, I identified specific documents by Bates number that require re-designation from Highly Confidential to a lower confidentiality designation – whether Confidential or none at all.

Now, after further review of CDK's production, we have identified additional documents that we believe need to be re-designated.  Please find those – identified by Bates number – in the attached spreadsheet.  Your previous explanation as to why you could not properly apply confidentiality designations, before producing documents, related to timing.  Now that discovery has been stayed, however, you have ample time to apply the proper confidentiality designations and to produce properly stamped replacement copies.

- 2 -

And as for upcoming productions of documents previously produced to the FTC, applying the proper confidentiality designations to those documents should no longer result in any delay in their production. On January 10, 2018 – over a week ago – CDK indicated that applying the proper confidentiality designations would result in only a "modest delay" in their production. *See* Email from B. Miller to M. Nemelka (Jan. 10, 2018). As noted above, we again request that those documents be produced as soon as possible.

## III.  Other Discovery Issues

**Materials Produced Pursuant to Government Investigations.** To bring this issue to a close: Britt, in your December 15, 2017, letter, you stated that CDK is not withholding any "advocacy pieces, white papers, or other materials provided to the FTC that are not purely factual in nature." Letter from B. Miller to M. Nemelka (Dec. 15, 2017). If CDK does withhold any documents, then you agreed to "promptly notifyAuthenticom so that the parties can quickly meet-and-confer." *Id.* Thank you for that clarification of CDK's position. With that agreement, is it correct that CDK is not withholding any documents – whether factual or non-factual – that it has provided to the FTC or other government agency, as requested by RFP No. 1?

As for Reynolds: Brian, you wrote in your December 15, 2017, letter that "Reynolds agrees to withdraw its objections to producing relevant advocacy pieces and white papers" for the relevant period. Thank you. However, you state that Reynolds is still withholding factual documents produced to the FTC "that are not relevant." Our position remains that any factual material produced to the FTC is relevant: the FTC's investigation overlaps with the issues in this case. You also agreed on a meet and confer to describe the factual documents Reynolds is withholding so that we can test your "not relevant" statement, but you have not done so. I believe we are at an impasse on this issue, but please let me know if that is incorrect.

**CDK Request No. 73 and Reynolds Request No. 63 (OEM Pricing).** Based on the parties' initial productions to date, it is even more clear that information relating to data integration for OEMs is relevant to a host of issues in this case. For example, CDK's initial document productions have confirmed that OEMs – like any vendor – could and would use third-party data integration providers, including Authenticom, absent Defendants' anti-competitive agreements and conduct. *See, e.g.*, CDK-0019201 (Howard Gardner stating in email that one



As Mr. Gardner explained:

CDK-0019233 (email noting

CDK-0207612

CDK-0215599 (noting

; CDK-0235172                                                         In short,

OEMs are a direct purchaser and consumer of data integration and relevant to many issues in this case, including *inter alia* the relevant product market, Defendants' supra-competitive pricing and exclusionary conduct, harm to competition, antitrust injury, and Authenticom's damages.

As both Defendants have confirmed, we are at an impasse on this issue. *See* Letter from B. Miller to M. Nemelka (Dec. 8, 2017); Letter from B. Ross to M. Nemelka (Dec. 1, 2017).

Please let us know if the documents and further explanation provided above result in a change in Defendants' positions.

**CDK Request No. 74 and Reynolds Request No. 78.**  On security-related documents, we agreed to discuss those on a meet-and-confer, which we request to do.  At a minimum, for CDK, Authenticom's security-related requests cover documents related to CDK's Security Advisory Council.  Please confirm that CDK is producing such documents.

**Reynolds Specific Issue**

**Reynolds Request Nos. 47, 49, 50, 52, & 53 (RCI and DMS Financial Information).**  Reynolds has no basis to withhold documents relating to DMS and RCI profit, projections (revenue and profit), margin, and costs, no matter how such information may be tracked or included within various segments.  We have explained numerous times the relevance of such information, and CDK has agreed to produce it.  Reynolds has no basis to take a different position – the fact that Reynolds is private makes no difference to the relevance of the financial information, *see* Letter from B. Ross to M. Nemelka (Dec. 8, 2017) (refusing to produce such information because CDK is a public company and "Reynolds is not").  The parties are at an impasse.

**CDK Specific Issues**

**CDK Request Nos. 62 and 63.**  Thank you for your agreement to produce documents sufficient to show DMI and IntegraLink integration pricing for non-CDK DMSs beginning as of January 1, 2011.

**CDK Requests Nos. 51, 52, 53, 54 & 55 (DMS Financials).**  Please confirm that CDK is producing both "basic" and "bundled" DMS pricing information, as discussed in my December 8 correspondence.  We believe that is the case given Britt's note in her December 8 letter – "Nowhere in my December 1 Letter is a refusal to produce CDK's 'bundled' pricing.  To the contrary . . .," – but please confirm if that is not the case.  Letter from B. Miller to M. Nemelka (Dec. 8, 2017).

As to DMS profit, projections (revenue and profit), margin, and costs, thank you for your agreement to produce the requested information at the product line, divisional, and management level.  *See* Letter from B. Miller to M. Nemelka (Dec. 15, 2017).  As noted above, we again request that this information be produced promptly – our experts need it for their analysis.

**CDK Requests Nos. 57, 58, 59, 60, 61, 65, 66, 67, 69 & 70 (3PA Financials).**  As to 3PA profit, projections (revenue and profit), margin, and costs, thank you for your agreement to produce the requested information at the product line, divisional, and management level.  *See* Dec. 15, 2017 Letter from B. Miller to M. Nemelka.  As noted above, we again request that this information be produced promptly – our experts need it for their analysis.

**CRM Software.**  Britt, in your Dec. 8, 2017 letter, you wrote that "we hope to have resolution on this issue by early next week."  Sorry if we have missed correspondence on this issue, but we appear not to have received any information on this.  We look forward to your response.

- 4 -

**Request No. 17 ("SMART-R").**  We are agreeable to the compromise outlined in your December 8, 2017, letter.  Thank you.

**Request No. 25 (Agreements with Other Providers of Data Integration).**  As I noted in a prior letter, our dispute on CDK's refusal to produce agreements with data integration providers for access to open systems, not just closed.  You offered to meet and confer again on this issue, which we agree to do.

**Request No. 28.**  As noted in my prior correspondence, CDK represented to the court that CDK's dealers have the ability to extract data, implying they have a program akin to Reynolds' Dynamic Reporting.  It is unclear from your December 8, 2017, letter what CDK is willing to produce on this topic.  Let's discuss on our next meet and confer.

**Request Nos. 86 & 87 (Elliott Management).**  In addition to your agreement to produce communications with Elliott Management that relate to increased integration fees, we have become aware of information that further necessitates CDK to produce all of its communications with and documents related to Elliott Management.  For example, CDK CFO Al Nietzel engaged in a yearlong "ongoing private dialogue" with Elliott Management from Spring 2015 (if not earlier) to Spring 2016.  *See* https://www.businesswire.com/news/home/20160504005997/en/Elliott-Management-Sends-Letter-Board-Management-CDK.  During this "private dialogue," Elliott Management learned that CDK was well-positioned to increase profits in light of, among other things, its "sticky auto dealership customers with long-term contracts."  There is no plausible basis to withhold any of CDK's communications with Elliott Management.

**Request No. 91 ("Tilt the Table").**  Based on prior correspondence, it appears that CDK is producing the majority of documents requested by Authenticom on this topic.  *See* Dec. 1, 2017 Letter from B. Miller to M. Nemelka.  But as we have discussed, a further meet and confer on this topic appears necessary to understand where there may still be disagreement between the parties.

\* \* \* \* \*

As noted above, we request a meet and confer this coming Monday anytime after 2:00 p.m. ET to discuss the issues described in this letter.  Please let us know a time that works best for you.

Very truly yours,

*s/ Michael N. Nemelka*

Michael N. Nemelka

PUBLIC VERSION

# EXHIBIT 6

PUBLIC VERSION

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

January 29, 2018

Britt M. Miller
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

<u>B</u>y <u>E-M</u>ail

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036

Re:     *Authenticom, Inc. v. CDK Global, LLC*
        *and The Reynolds and Reynolds Company*,
        <u>Case No. 17-CV-318 (W.D. Wis.)</u>

Dear Mike:

Per your request, I write in response to your email of January 27, 2018 as well as your letters of January 19 and January 22.  As an initial matter, both my January 22 Letter and Brian Ross's January 23 email made clear that we could not meet-and-confer on your originally demanded date of January 22 (one business day after your January 19 letter), or on the subsequent two days because we needed an opportunity to review and discuss your January 19 Letter with our respective clients, needed to review and discuss your long-overdue January 22 Letter (finally responding to our December 19 Letters) which we received after the close of business that day, and we had other preexisting conflicts and travel for this case (and other matters) that week.  At no point did either Brian or I promise another written response to your December 19 letter in advance of any meet-and-confer; rather, we both indicated we would respond "as appropriate" at a later time.  Moreover, Defendants have not "pushed the conference off for over a week".  You originally asked for a meet-and-confer for Monday, January 22.  We have agreed to meet-and-confer, and are scheduled to speak, at noon today (January 29), exactly a week after initially requested.

As to the substance of your email and your letters, CDK responds as follows.

*Authenticom's January 19 Letter:*

**Sections I and II (Document Not Subject to the Stay and CDK's Confidentiality Designations)**:  As I responded to Sections I and II of your January 19 Letter in my letter of January 22, I will not further respond here except to address the Excel spreadsheet of "additional documents" referenced in your January 19 Letter that Authenticom indicated it "believe[s] need to be redesignated."  As you are aware, that spreadsheet was not included with your January 19 Letter, but rather produced via email on January 22.

As you also are no doubt aware, that spreadsheet contained a list of 79,686 documents.  Per you January 19 Letter, those documents were supposedly in "addition" to the 42,919 identified in the

Mayer Brown LLP

PUBLIC VERSION

Michael N. Nemelka
January 29, 2018
Page 2

six spreadsheets attached to your January 9 email. Considering CDK's December 15, 2017 production contained only about 86,500 documents, you can imagine our confusion of how there could be 122,605 documents in that production that Authenticom believed had been improperly designated. Upon further investigation, we determined that contrary to your representation that the January 22 list was one of "additional" documents that needed to be reviewed for confidentiality re-designation, in fact 41,827 of them had already been identified in your January 9 spreadsheets as requiring such review. Given this discrepancy, we decided to dig into your spreadsheets a bit more and quickly determined that your January 9 spreadsheets were little more than database print-out reports of every single document in the December 15 production that contained the six deponents' names. We then noted that the label on the tab in your January 22 spreadsheet (and, indeed, the title of the spreadsheet) was "CDK Production – Emails and Attachments." That, at least, was accurate—it literally was a list of *every single email and attachment* in CDK's December 15 production.

The Protective Order in this case—which Authenticom claimed to be complying with in providing us with the lists of documents it believed warranted confidentiality re-designation (*see* your email of January 10) requires that:

> A party challenging the designation of Confidential Information must do so in *good faith* and must begin the process by conferring directly with counsel for the Designating Party. In conferring, the challenging party must *explain the basis for its belief that the confidentiality designation was not proper*…. (emphasis added).

The only three "bases" that we can discern that Authenticom has articulated for its challenge to the confidentiality designations in CDK's December 15 production are (1) its objection to CDK's failure to immediately re-review that entire production and re-designate any non-Highly Confidential documents, (2) the fact that 42,919 documents in that production relating to six deponents are designated Highly Confidential, and (3) the fact that there are 79,686 emails and attachments in that production that are designated Highly Confidential.

Based on the foregoing, we do not believe that Authenticom has complied with either the good faith or the explanation requirement of Paragraph 9.a. of the Protective Order.

Nonetheless, so that there is no confusion going forward, in CDK's January 25 production Authenticom received replacement images and corresponding metadata for the documents identified in the remaining five spreadsheets attached to your January 9, 2018 email, which CDK downgraded from "Highly Confidential" to a lesser designation (CDK produced the re-designated Ayotte documents on January 11). It will receive later today replacement images and corresponding metadata for any other documents in the December 15 production which CDK is downgrading from "Highly Confidential" to a lesser designation, including but not limited to any from the 79,686 identified in your January 22 spreadsheet. In short, we now have reviewed the *entire* December 15 production and lowered the confidentiality designation on those documents that warrant a lesser designation.

Mayer Brown LLP

PUBLIC VERSION

Michael N. Nemelka
January 29, 2018
Page 3

Going forward, as no other FTC productions (or any other CDK productions) are going to be bulk designated, to the extent Authenticom wishes to challenge any more of CDK's confidentiality designations, we expect it to comply with the Protective Order and explain, *for each challenged document*, the basis for its belief that the confidentiality designation is not proper.

Finally, as for your comment regarding upcoming productions of documents previously produced to the FTC, as you note in your January 27 email, CDK produced more than 57,000 of those documents on January 25. We expect to produce another 100,000 or so documents later today, which will bring our total production in this case up to just short of ***300,000*** documents (over 55,000 of which are non-FTC produced documents). It will also bring our review and production of the bulk of the documents produced to the FTC in response to the CID (and to Authenticom in response to RFP 1) current through January 24. We understand that there was another substantial production made to the FTC in response to the CID late last week and we will promptly begin our review of that production for appropriate confidentiality designations. As we understand that production to have been at least several tens of thousands of documents, we expect that review will take a few weeks to complete.

## Section III (Other Discovery Issues):

*Materials Produced Pursuant to Government Investigations*. With respect to the documents subject to production in response to RFP No. 1, CDK is currently not withholding any "advocacy pieces, white papers, or other materials provided to the FTC that are not purely factual in nature." CDK will be including several factual documents produced to the FTC in response to the CID—*e.g.*, narrative responses to the CID specifications—in its upcoming productions.

*CDK Request No. 73 (OEM Pricing)*: The parties remain at an impasse on this issue for the reasons previously stated.

*CDK Request No. 74 (Security-Related Documents):* We assume that this will be part of our meet-and-confer later today. We can confirm that CDK is producing documents related to its Security Advisory Council to the extent that they are contained in the records of the agreed-upon custodians and are identified through the agreed-upon search terms. To our knowledge these records are not otherwise centrally-stored, but we will confirm.

## *CDK Specific Issues*

*CDK Request Nos. 62 and 63:* This issue is resolved.

*CDK Request Nos. 51, 52, 53, 54 & 55 (DMS Financials):* These requests were thoroughly discussed and resolved by my December 8 and December 15 correspondence.

*CDK Request Nos. 57, 58, 59, 60, 61, 65, 66, 67, 69 & 70 (3PA Financials):* This issue is resolved.

Mayer Brown LLP

PUBLIC VERSION

Michael N. Nemelka
January 29, 2018
Page 4

*CRM Software:*  You did not miss any correspondence on this topic.  Our efforts were redirected toward other pressing discovery issues at the time.  We appreciate you reminding us, and will raise the issue again with our client and report back as soon as we have additional information.

*Request No. 17 ("SMART-R")*:  This issue is resolved.

*Request No. 25 (Agreements with Other Providers of Data Integration)*:  We assume this will be discussed during today's call.

*Request No. 28 (Manual Reporting):*  My December 8 correspondence was perfectly clear on this topic, but let me reiterate.  CDK has a number of manual reporting tools (we did not represent that we have a "program akin to Reynolds' Dynamic Reporting") that its dealers can use to manually extract data from the DMS.  We are not aware of any repository of information related to manual polling/manual reporting.  We expect that information responsive to this Request, including presentations, communications with dealers, etc. will be in our agreed-upon custodians files and produced as part of our custodial ESI production (and as part of our FTC CID re-production).  To the extent we are able to export data from our CRM software (*see* above) and search that data, we will search it for documents responsive to this Request.  We also will be producing what documents we have for the relevant period that track or otherwise document dealers' manual reporting activity.

*Request Nos. 86 & 87 (Elliott Management):*  We note that the parties had previously reached agreement on these requests and Authenticom is now seeking to withdraw its agreement and re-negotiate.  Your request for "all" correspondence with Elliott Management is absurd.  That said, the search terms we agreed upon should capture any substantive documents relating to Elliott in our agreed custodians files and we will agree to produce any such substantive documents.

*Request No. 91:*  We are at a loss as to what could still be at issue here, but we nonetheless can include it in our discussion later today.

<u>Authenticom's January 22 Letter:</u>

So that we can ensure that all of the parties' issues are being addressed, we wanted to respond, in the short term, to your January 22 Letter.

*Usernames and Passwords:*  We believe that we have already explained why we believe passwords are relevant given Authenticom's conduct.  The parties are clearly at impasse and we reserve our right to address the issue with the Court, as appropriate.

*CDK Request No. 1:*  As Authenticom did with respect to several of CDK's responses to Authenticom's RFPs, please confirm that Authenticom's use of quotation marks around the word "ability" is not intended, and will not be used, to limit Authenticom's response to the Request to documents containing that word.

Mayer Brown LLP                                                                              PUBLIC VERSION

Michael N. Nemelka
January 29, 2018
Page 5

*CDK Request No. 2:*  We are not seeking to have Authenticom create documents. We asked for "[d]ocuments sufficient to show the date, time, content, and duration of all queries that You have performed on any CDK DMS."  Authenticom offered to provide a "sample" of the queries run and a "representative schedule" of when those queries are run.  We agreed to accept a "sample" if such sample would show (i) the different types of queries run at the five largest CDK dealers accessed by Authenticom, measured by number, frequency, and duration of queries; and (ii) the query "schedule" at each of those dealers during the months of January, May, September, and December during each year from 2013 through 2017.  If the information does not exist, that's one thing, but Authenticom has not made a representation to that effect, and its offer to provide a "sample" suggests that a much broader dataset is in fact available.  If necessary, we ask that this topic be included in today's meet-and-confer.

*CDK Request No. 8:*  Here again, we are not asking Authenticom to create documents.  As Authenticom has agreed to CDK's proposal to the extent documents already exist, the parties are in agreement.

*CDK Request No. 21:*  The parties are in agreement.

*CDK Request Nos. 32 and 33:*  Here again, we are not asking Authenticom to create documents. So long as Authenticom will produce documents "sufficient to show," to the extent they exist— i.e., it will not claim that responsive documents do not exist merely because all the requested information does not reside in a single document—then that should be sufficient for present purposes.

*CDK Request No. 37:*  The parties are in agreement.

*CDK Request No. 50:*  The parties are in agreement.

*CDK Request No. 51:*  Apparently another meet and confer is needed on this Request, or we have missed some relevant correspondence.  Authenticom's written response to this Request is that "Authenticom is willing to meet and confer regarding this Request." Thus, there are no "previously asserted objections and responses in which it agreed to produce documents in response to this Request" as referenced in your letter.

*CDK Request No. 53:*  The parties are in agreement.

*CDK Request Nos. 55, 56 and 57:*  The parties are in agreement.

*CDK Request No. 62:*  The parties are in agreement.

*CDK Request No. 63:*  The parties are in agreement.

*CDK Request No. 68:*  The parties apparently are not adequately communicating their positions on this Request as we do not believe that your response adequately addresses our concern.  We would ask that we add this Request to our list for this afternoon.

Michael N. Nemelka
January 29, 2018
Page 6

*Authenticom's January 27 Email:*

With respect to the balance of your January 27 email (the first part of which is addressed at the opening of this letter), I will simply respond that your complaints are, once again, not well taken. CDK already has produced numerous documents from non-custodial sources that are responsive to Authenticom's discovery requests, including, for example, sample 3PA agreements and corporate organizational documents (not unlike the handful of non-custodial documents that Authenticom has produced). Unsurprisingly, our focus during December and most of January was the review of custodian documents in advance of then-scheduled depositions (as you know, we produced over 55,000 custodial documents of Beth Ayotte) and the review of tens of thousands documents from our December 15 production for possible re-designation under the Protective Order, at Authenticom's request.

Discovery of non-custodial documents is not being ignored; as stated in my January 22 Letter we, like Reynolds, have every intention of making progress in discovery during the pendency of the partial stay, to the extent not inconsistent with the Court's January 12, 2018 Order. Had we not been distracted by Authenticom's blanket confidentiality challenge to every single email and every single document with a deponent's name on it in our initial 86,000+ document production, perhaps we would have had more resources to address other forms of discovery. Unfortunately, that was not the case and, regardless, our document production efforts are ongoing. We are working with all due diligence to comply with our discovery obligations and given what we have produced thus far, any suggestion that we are shirking those responsibilities would be patently false. In any event, under any measure CDK's document production to date is well ahead of Authenticom's. Hopefully given that we only have a handful of Requests left to resolve (*see* above), we can expect more progress from Authenticom in the near future.

\* \* \* \* \* \*

As always, any offer to produce additional categories of documents are subject to and without waiver of CDK's general and specific objections set forth in its initial written responses to Authenticom's document requests, and are contingent on resolving the parties' disputes as to the identified Requests.

We look forward to hopefully reaching resolution of most, if not all, of the parties' outstanding issues, in the short term so that once we hear from the MDL panel we can work to coordinate discovery with the other affected parties and move all of the cases forward.

Sincerely,

Britt M. Miller

Michael N. Nemelka
January 29, 2018
Page 7

cc:     Brian Ross
       Matt Provance
       Mark Ryan

PUBLIC VERSION

# GZJ KDKV'9

PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: DEALER MANAGEMENT | ) | MDL No. 2817 |
| SYSTEMS ANTITRUST LITIGATION | ) | Case No. 18 C 864 |

This Document Relates to All Cases

**AUTHENTICOM'S SECOND SET OF REQUESTS FOR THE PRODUCTION OF
DOCUMENTS FOR DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff

Authenticom, Inc. ("Authenticom") hereby requests that Defendant The Reynolds and Reynolds

Company ("Reynolds") produce all documents in its actual or constructive possession, custody,

or control related directly or indirectly to any of the matters described below.  All documents and

tangible things responsive hereto should be produced for inspection as soon as practicable and in

no event later than thirty (30) days from the date after service of these requests for production.

Production shall be made at the offices of KELLOGG, HANSEN, TODD, FIGEL &

FREDERICK, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036, or as

otherwise agreed to by the parties.

PUBLIC VERSION

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

2.      "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin.  "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

4.      "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF").  "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF.  "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

5.      "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

6.      "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

7.      "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF.  "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

8.      "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

9.      "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF.  "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

10.      "Including" (in addition to its usual meanings) shall mean including but not limited to.

11.      The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

12.      "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF.  "Reynolds" shall include its present or former predecessors,

subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

13. "Reynolds dealer" shall mean a dealership or dealership group that uses a Reynolds DMS.

14. "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

15. "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## INSTRUCTIONS

1. In producing documents and other materials, You must furnish all documents in Your possession, custody, or control, regardless of whether such documents or materials are possessed directly by You, Your employees or former employees, agents or former agents, parents, subsidiaries, affiliates, investigators, or by Your attorneys or their employees, agents, vendors, or investigators.

2. All documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business. All documents shall be produced in the file folder, envelope or other container in which the documents are kept or maintained.

3.      Documents attached to one another should not be separated.  If any portion of any document is responsive to any portion of the document requests below, then the entire document must be produced.

4.      Documents shall be produced in such fashion as to identify the natural person in whose possession they were found (i.e., the document custodian).

5.      If any document responsive to any of these requests is privileged, and the document or any portion of the document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the following information:

a.   the exact basis for withholding the document;
b.   the date of such communication;
c.   the medium of such communication;
d.   the general subject matter of such communication (such description shall not be considered a waiver of Your claimed privilege);
e.   the identity of any document that was the subject of such communication and the present location of any such document;
f.   the identity of all persons involved in such communication; and
g.   the identity of any document which records, refers, or relates to such communication and the present location of any such document.

6.      Each document requested herein should be produced in its entirety and without deletion, redaction, or excision, except as permitted by a recognized privilege, regardless of whether You consider the entire document or only part of it to be relevant or responsive to these document requests.  If You have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document You have redacted.

7.      Each request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of You or Your respective agents or attorneys.  You are

specifically instructed to review any storage and archive facilities and the personal files, records,

notes, correspondence, daily calendars, telephone logs, and records of all persons who would

likely have responsive documents.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 80.**  Communications and documents relating to how much Reynolds

spends on a monthly basis with independent data integrators, including Authenticom, SIS, or

and/or others, from January 1, 2013 to present.

**REQUEST NO. 81.**  Communications and documents concerning the potential or

expressed inability of vendors to afford the up front, minimum, and/or monthly fees Reynolds

charges through the RCI program, including but not limited to any communications with third

party vendors in which the third party indicated it could not afford RCI's up front, minimum,

and/or monthly fees.

**REQUEST NO. 82.**  Communications and documents concerning any vendor reducing

the services obtained through the RCI program in connection with (or as a result of) any price

increases for those services.  For the avoidance of doubt, this request would encompass any

vendor that ceased offering one or more applications to Reynolds dealers in connection with (or

as a result of) any price increase for the services provided through RCI.

**REQUEST NO. 83.**  Communications and documents concerning any instance in which

a Reynolds employee, agent, or independent contractor sent a dealership user-id and/or password

in an unencrypted format through email.

**REQUEST NO. 84.**  Documents sufficient to show the identity of any vendor and/or

dealer that used DMI and/or IntegraLink for data integration services on the Reynolds DMS

during the "wind down period," as described in the February 18, 2015 Data Exchange

Agreement.  For each such vendor and/or dealer, please produce documents sufficient to show the date (if any) on which each vendor and/or dealer exited the "wind down period" and no longer used DMI and/or IntegraLink for data integration services on the Reynolds DMS, as well as documents sufficient to show whether that vendor and/or dealer transitioned to RCI.

**REQUEST NO. 85.**  For the avoidance of doubt, all invoices for all vendors that used the RCI program for data integration services, from 2011 to the present.

**REQUEST NO. 86.**  For the avoidance of doubt, all invoices for all dealerships that used a Reynolds DMS, from 2011 to the present.

**REQUEST NO. 87.**  Communications and documents concerning whether, following February 18, 2015 Data Exchange Agreement, CDK (including through DMI and/or Integralink) had the right to syndicate or "comingle" Reynolds' data.  This request includes both internal communications and documents regarding CDK's syndication or "comingling" of Reynolds' data and any communications between you and CDK regarding the same.

**REQUEST NO. 88.**  All communications and documents concerning your security tools, processes, and training for your software developers.

**REQUEST NO. 89.**  Communications and documents not previously produced to Authenticom which contain any of the following terms:

- "Joint team"
- "Combined team"
- "Lock out*"
- "Security Advisory Council"
- Unhook & CDK
- "Data breach" & OneEighty or "One Eighty"
- "Evil empire"
- Trust* /50 CDK or Gardner or Anenen
- Threat* /50 CDK

Dated:  March 23, 2018

Respectfully submitted,

*/s/ Michael N. Nemelka*

Michael N. Nemelka
Aaron M. Panner
David L. Schwarz
Kevin J. Miller
Derek T. Ho
Joshua Hafenbrack
Joanna T. Zhang
KELLOGG, HANSEN, TODD,
   FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax:     (202) 326-7999
Email:  mnemelka@kellogghansen.com
           apanner@kellogghansen.com
           dschwarz@kellogghansen.com
           kmiller@kellogghansen.com
           dho@kellogghansen.com
           jhafenbrack@kellogghansen.com
           jzhang@kellogghansen.com


Jennifer L. Gregor
Allison W. Reimann
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
Fax:     608-257-0609
Email: jgregor@gklaw.com
areimann@gklaw.com


*Attorneys for Plaintiff Authenticom, Inc.*

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 23, 2018, I caused a true and correct copy of the foregoing Authenticom, Inc.'s Second Set of Requests for the Production of Documents for Defendant The Reynolds and Reynolds Company to be served by email upon the following individuals:

Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
Jeffrey A. Simmons (jsimmons@foley.com)
Joseph S. Harper (jharper@foley.com)
Aundrea K. Gulley (agulley@gibbsbruns.com)
Brian T. Ross (bross@gibbsbruns.com)
Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
Ross M. MacDonald (rmacdonald@gibbsbruns.com)
Justin D. Patrick (jpatrick@gibbsbruns.com)
Kathy D. Patrick (kpatrick@gibbsbruns.com)
Michael P. A. Cohen (mcohen@sheppardmullin.com)
Amar S. Naik (anaik@sheppardmullin.com)
James L. McGinnis (jmcginnis@sheppardmullin.com)
John S. Skilton (jskilton@perkinscoie.com)
Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
Michelle M. Umberger (mumberger@perkinscoie.com)
Brandon M. Lewis (blewis@perkinscoie.com)
Jesse J. Bair (jbair@perkinscoie.com)
Kathleen A. Stetsko (kstetsko@perkinscoie.com)

*/s/ Michael N. Nemelka*
Michael N. Nemelka

PUBLIC VERSION

# EXHIBIT 8

MAYER • BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

June 14, 2018

Matthew D. Provance
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

BY E-MAIL

Michael N. Nemelka
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Peggy J. Wedgworth
MILBERG TADLER PHILLIPS GROSSMAN LLP
One Pennsylvania Plaza
New York, NY 10119

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Mike and Peggy:

I write on behalf of CDK Global, LLC ("CDK") regarding two categories of issues addressed in recent correspondence and during our June 5, 2018 meet and confer: (1) Authenticom's responses to CDK's requests for production ("Requests" or "RFPs"); and (2) CDK's responses to Authenticom's first set of interrogatories ("Interrogatories").

**Authenticom's Responses to CDK's RFPs**

Our May 24, 2018 letter raised issues concerning Authenticom's responses to CDK RFP Nos. 1, 2, 8, 32, 33, 51, and 68. Based on your May 31 response, it appears that we are in agreement regarding RFP Nos. 1, 8, 32, and 33. The remaining RFPs are addressed below.

CDK RFP No. 2: In the spirit of compromise, we have offered to significantly narrow this Request by accepting a representative sample of data sufficient to show: (i) the different types of queries run at the five largest CDK dealers accessed by Authenticom, measured by number, frequency, and duration of queries; and (ii) the query "schedule" at each of those dealers during the months of January, May, September, and December during each year from 2013 through 2017. We have been awaiting Authenticom's response for several months; please let us know immediately whether Authenticom will accept this offer or if the parties are at impasse.

CDK RFP No. 51: We understand that Authenticom has agreed to provide documents sufficient to show how data is received, stored, and transmitted by DealerVault, and is willing to meet and confer regarding its response to the balance of RFP No. 51 as part of a broader discussion of Defendants' responses to certain of Authenticom's RFPs. Please confirm.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP                                                          PUBLIC VERSION

Michael N. Nemelka
Peggy J. Wedgworth
June 14, 2018
Page 2

<u>CDK RFP No. 68</u>:  We confirmed during our meet and confer that the parties are operating under an agreement to reproduce documents received from third parties pursuant to subpoenas issued in the litigation.  We also confirmed that to the extent Authenticom has received documents from a third party that are responsive to another CDK RFP to which Authenticom has agreed to produce documents, they are not being withheld from production.  The remaining unresolved issue surrounding RFP 68 concerns documents related to the litigation that Authenticom has received or may receive from a third party without a subpoena request.  As we discussed, one example would be any documents that Authenticom received from a third party to use as evidentiary material at the preliminary injunction hearing last summer.  Please let us know whether Authenticom will produce such documents.

**CDK's Responses to Authenticom's Interrogatories**

<u>Interrogatory No. 7</u>:  As discussed during our meet and confer, this Interrogatory requesting that CDK state whether it "contend[s] … that there is a competitive market for data integration services on DMSs other than the CDK DMS and the Reynolds DMS" is improper.  Aside from whether the interrogatory prematurely seeks discovery of CDK's contentions regarding a disputed legal issue (and it does), CDK is not in a position to state under oath whether a "competitive market" exists for so-called "data integration services" with respect to non-Reynolds, non-CDK DMSs.  Authenticom does not define what makes a "competitive" market for "data integration services"; and whether such a market (if it exists) is "competitive" likely depends on information within the possession, custody or control of other participants in such market besides CDK.  If Authenticom wishes to rephrase this Interrogatory, we would of course be happy to consider it, but otherwise CDK stands on its objections.

<u>Interrogatory No. 11</u>:  As we explained, CDK does not track the "average tenure" of its DMS customers.  It is our understanding that to the extent statements are made concerning the "average tenure" of CDK's DMS customers, they are based on an extrapolation of annual customer switching data, which CDK has provided.  You argued that CDK should answer this Interrogatory because CDK did not *dispute* a statement that "[t]he average DMS client tenure is over 20 years" asserted *by Authenticom* in connection with its preliminary injunction motion.  Not disputing an assertion made by Authenticom in an entirely different context is completely different than affirmatively making such a statement, under oath.  Moreover, the fact that CDK did not take issue with Authenticom's claim at the time, does not mean that CDK is obligated or even able to provide the "average tenure" of its DMS customers on an annual basis since 2009.  We have answered this Interrogatory to extent CDK is reasonably able to provide a response.

<u>Interrogatory No. 12</u>:  As we also explained, CDK cannot conclusively determine its "share" of DMS customers, whether defined as new, franchised dealers; user car dealers; non-automobile dealers; or however the alleged DMS "market" might be defined.  Any calculations of "share" are based on CDK's own DMS customer count (which has been provided) and varying estimates of the total number of DMS customers based on available data, including public data and third-party data.  The examples that we identified pursuant to Rule 33(d) reflect this, as does the

Mayer Brown LLP

PUBLIC VERSION

Michael N. Nemelka
Peggy J. Wedgworth
June 14, 2018
Page 3

"approx[imation]" of CDK's share of new car, franchised dealers included in the June 16, 2017 declaration of Robert Karp that you referenced during our call. Once again, we have answered this Interrogatory to the extent CDK is reasonably able to provide a response.

Interrogatory No. 14:  During our meet and confer, you offered to narrow this Interrogatory in order to address CDK's objections.  We look forward to your proposal.  CDK stands on its objections to the Interrogatory as currently phrased.

Sincerely,


*/s/ Matthew D. Provance*
Matthew D. Provance

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz

PUBLIC VERSION

# EXHIBIT 9

PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL 2817<br>Case No. 18 C 864 |
| This Document Relates to: | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC, et al.,* Case No. 1:18-cv-00868 | |

**PLAINTIFF AUTHENTICOM, INC.'S AMENDED OBJECTIONS AND
RESPONSES TO DEFENDANT THE REYNOLDS AND REYNOLDS
COMPANY'S REQUESTS FOR ADMISSION**

Pursuant to the Federal Rules of Civil Procedure and the governing Local Rules, Authenticom, Inc. ("Authenticom") submits the following Amended Objections and Responses to The Reynolds and Reynolds Company's ("Reynolds") Requests for Admission. Authenticom's responses to Reynolds' Requests for Admission Nos. 1, 2, and 3 have been supplemented with this submission. Authenticom reserves the right to further amend, supplement, and correct its objections or responses as necessary.

## <u>GENERAL OBJECTIONS</u>

These General Objections are incorporated into each specific response below as if they were fully repeated therein and will not be specifically repeated or referenced in each such response. Authenticom reserves the right to assert additional objections as necessary and/or appropriate.

1.     Authenticom objects to each and every Definition, Instruction, and Request for Admission ("Requests") to the extent it attempts to alter the scope of discovery or impose obligations that are inconsistent with or exceed those required under the Federal Rules of Civil

PUBLIC VERSION

Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement between the parties.

2. Authenticom objects to the Requests to the extent they seek information protected by applicable privileges (including, but not limited to, the attorney-client privilege, joint defense or common interest privilege, and attorney work product privilege) or otherwise protected under applicable law. In the event such information is produced in response to these Requests, such production is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other applicable ground for protecting such documents from disclosure.

3. Authenticom objects to the Requests to the extent they are vague, overly broad, unduly burdensome, irrelevant, duplicative, or not reasonably calculated to lead to the discovery of admissible evidence.

4. Authenticom's responses are made without waiver of and with preservation of all objections as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action and in any other action; the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action and any other action; and the right to object on any ground at any time to a demand or request for further response to these Requests or other discovery proceedings involving or related to the subject matter of the discovery to which these responses are provided.

5. Authenticom objects to the Requests to the extent that they seek information that is not reasonably available. Authenticom will only provide information that is reasonably available.

2

PUBLIC VERSION

6.      Authenticom objects to the Requests insofar as they seek information that is not relevant to the claim or defense of any party to this action nor reasonably calculated to lead to the discovery of admissible evidence.  By responding to these Requests, Authenticom does not concede the relevance or admissibility of any information provided, and reserves the right to object to the relevance and admissibility of any information provided in response to the Requests.

7.      Authenticom objects to the Requests insofar as they seek confidential, proprietary or trade secret information, the disclosure of which would cause irreparable competitive injury to Authenticom, without providing adequate assurances that such information will not be disclosed. All confidential or proprietary materials or information provided are subject to the Protective Order entered in this case.

8.      Authenticom objects to the Requests insofar as they purport to impose upon it a duty to provide information not within Authenticom's possession, custody, or control. Authenticom shall respond to the Requests on behalf of itself only.

9.      Authenticom objects to the Requests to the extent that they contain or rely upon a misstatement of fact or law, or assume the existence of facts or events that do not exist or did not take place.  Any answer of Authenticom to a Request for Admission shall not be construed as an admission that any characterization of facts, circumstances, or legal obligations stated or implied in that Request is accurate.  Authenticom reserves the right to contest any such characterization as inaccurate.

10.     Authenticom objects to the Requests to the extent that they are overbroad, cumulative, unduly burdensome, unreasonable, vague, indefinite, uncertain, imprecise,

ambiguous, susceptible to multiple interpretations, and/or otherwise cannot reasonably be responded to.

11.     Authenticom objects to the Requests to the extent that they call for information over an unreasonably long time frame or over a time period for which Authenticom does not maintain historical records.

<strong><u>SPECIFIC OBJECTIONS AND RESPONSES</u></strong>

**<u>REQUEST FOR ADMISSION NO. 1</u>**

Admit that you have accessed a Reynolds DMS without a license from Reynolds.

**<u>AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 1</u>**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame.  Authenticom will construe this Request as concerning Authenticom's current practices.  Authenticom further objects to this Request as vague and ambiguous to the extent it does not define "license."  Authenticom accesses dealer data with the express authorization of dealers, who are licensed to access their data on the Reynolds DMS and entitled, by contract and otherwise, to designate Authenticom to access the dealers' data.

Subject to and without waiving the foregoing objections, Authenticom admits that certain Reynolds dealers authorize Authenticom to access dealer data for purposes of providing data integration services.  Authenticom otherwise denies this Request.

**<u>REQUEST FOR ADMISSION NO. 2</u>**

Admit that you have used the software programs ERAccess.exe and ERALink.exe without a license from Reynolds.

**<u>AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 2</u>**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame.  Authenticom will construe this Request as concerning

Authenticom's current practices.  Authenticom further objects to this Request as vague and

ambiguous to the extent it does not define "license."  Authenticom accesses dealer data with the

express authorization of dealers, who are licensed to access their data on the Reynolds DMS and

entitled, by contract and otherwise, to designate Authenticom to access the dealers' data.

Subject to and without waiving the foregoing objections, Authenticom admits that certain

Reynolds dealers authorize Authenticom to access dealer data for purposes of providing data

integration services.  Authenticom otherwise denies this Request.

## REQUEST FOR ADMISSION NO. 3

Admit that you have evaded software security measures (for example, CAPTCHA) to
obtain access to a Reynolds DMS.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 3

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame.  Authenticom will construe this Request as concerning

Authenticom's current practices.  Authenticom further objects to the Request as misleading with

respect to the implication that Authenticom "evade[s]" Reynolds' efforts.  To the extent

Reynolds interferes with Reynolds dealers working with Authenticom, Authenticom works with

the affected dealers to reestablish dealer-authorized access to the dealers' data.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 4

Admit that you compete in the market for integration services relating to used and
independent automotive dealerships.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 4

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame.  Authenticom will construe this Request as concerning

Authenticom's current practices.  Authenticom objects to this Request to the extent it assumes

the legal conclusion that there is a separate "market" for data integration services for used and independent automotive dealerships. Whether a relevant antitrust market exists is a question of fact that depends on the commercial realities faced by consumers. Authenticom further objects to the Request as vague and ambiguous to the extent that it does not define "used and independent automotive dealerships." Authenticom will construe this Request as concerning non-franchised automotive dealerships. Authenticom further objects to this Request as irrelevant to the claims and defenses in this litigation. Authenticom further objects to this Request to the extent it suggests that data integration for vendors servicing non-franchised car dealerships is the same as data integration services for new car franchised dealerships.

Subject to and without waiving the foregoing objections, Authenticom admits that, for non-franchised dealerships, it provides data extraction, which is a type of data integration service, for vendors primarily needing access to inventory data. Authenticom otherwise denies this Request.

## REQUEST FOR ADMISSION NO. 6

Admit you are a certified provider in Dealertrack's Opentrack program.

## AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 6

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices.

Subject to and without waiving the foregoing objections, admitted.

## REQUEST FOR ADMISSION NO. 7

Admit that you have no evidence of the existence of an unlawful horizontal conspiracy or agreement involving Reynolds prior to February 2015.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 7**

Denied.

**REQUEST FOR ADMISSION NO. 8**

Admit that dealers do not purchase integration services directly from you.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 8**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom further objects that "purchase [] directly" is vague and ambiguous and calls for a legal conclusion.

Subject to and without waiving the foregoing objections, Authenticom admits that vendors (not dealers) typically make payments to Authenticom for data integration services. However, dealers must authorize Authenticom to provide their data to the vendors. Vendors also may pass through some or all of the data integration fees to dealers. Authenticom otherwise denies this Request.

**REQUEST FOR ADMISSION NO. 9**

Admit that you are not a competitor or customer in the DMS market.

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 9**

Authenticom objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. Authenticom will construe this Request as concerning Authenticom's current practices. Authenticom further objects to this Request as vague and ambiguous to the extent it fails to define "the DMS market."

Subject to and without waiving the foregoing objections, Authenticom admits that it does not sell or purchase dealer management systems.

**REQUEST FOR ADMISSION NO. 10**

Admit that dealers do not own all of the data in a Reynolds DMS.

7

**PUBLIC VERSION**

**AUTHENTICOM RESPONSE TO REQUEST FOR ADMISSION NO. 10**

Authenticom objects to this Request as vague and ambiguous to the extent it does not

state a specific time frame.  Authenticom further objects to this Request as vague and ambiguous

to the extent it does not define "data in a Reynolds DMS."

Subject to and without waiving the foregoing objections, Authenticom lacks information

sufficient to admit or deny this Request.

Dated:  June 22, 2018                                          Respectfully submitted,

                                                                          _/s/ Derek T. Ho_____
                                                                          Derek T. Ho
                                                                          Michael N. Nemelka
                                                                          Aaron M. Panner
                                                                          Joanna T. Zhang
                                                                          Joshua Hafenbrack
                                                                          **Kellogg, Hansen, Todd,**
                                                                          **  Figel & Frederick, P.L.L.C.**
                                                                          1615 M Street, NW, Suite 400
                                                                          Washington, D.C. 20036
                                                                          (202) 326-7900
                                                                          dho@kellogghansen.com
                                                                          mnemelka@kellogghansen.com
                                                                          apanner@kellogghansen.com
                                                                          jzhang@kellogghansen.com
                                                                          jhafenbrack@kellogghansen.com

                                                                          Jennifer L. Gregor
                                                                          Kendall W. Harrison
                                                                          **GODFREY & KAHN S.C.**
                                                                          One East Main Street, Suite 500
                                                                          Madison, Wisconsin 53703
                                                                          Telephone: (608) 284-2629
                                                                          Fax: (608) 257-0609
                                                                          jgregor@gklaw.com
                                                                          kharrison@gklaw.com

                                                                          *Attorneys for Authenticom, Inc.*

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing Plaintiff Authenticom, Inc.'s Amended Objections and Responses to Defendant The Reynolds and Reynolds Company's Requests for Admission to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Derek T. Ho*
Derek T. Ho

PUBLIC VERSION

# EXHIBIT 10

PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**THE DEALERSHIP CLASS ACTION** | **MDL No. 2817**<br>**Case No. 18-cv-00864**<br><br>**Hon. Robert M. Dow, Jr.**<br>**Magistrate Judge Jeffrey M. Gilbert** |

**CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO
DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF REQUESTS
FOR THE PRODUCTION OF DOCUMENTS**

Defendant CDK Global, LLC ("CDK"), by and through its attorneys, and pursuant to

Fed. R. Civ. P. 26 and 34, hereby submits its written objections and responses to Dealership

Class Plaintiffs' ("Plaintiffs'") First Set of Requests for the Production of Documents for

Defendant CDK Global, LLC, dated May 25, 2018 (the "Requests").[1]

**GENERAL OBJECTIONS**

1.      CDK asserts each of the following objections to the Requests.  In addition to these

General Objections, CDK may also state specific objections to a Request where appropriate.  By

setting forth such additional specific objections, CDK does not in any way intend to limit or

restrict its General Objections.  Moreover, to the extent CDK provides a response to any of the

Requests to which CDK objects, such response shall not constitute a waiver of any General

Objection or specific objection.

---

[1] On June 13, 2018, Plaintiffs served an "Amended" First Set of Requests for the Production of Documents, which reiterated their May 25 Requests verbatim and added a new Request No. 49 that purports to "incorporate[ ] all RFPs propounded by the Individual Plaintiffs and formally request[ ] all documents sought by those RFPs."  CDK believes that these "Amended" Requests are untimely under Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166), improper, and that in any event, CDK's responses are not due until July 13, 2018—thirty days after service.  Nevertheless, solely for efficiency's sake, CDK incorporates its responses to Request Nos. 1-48 and "Amended" Request No. 49, below, and hereby serves them as its responses to the "Amended" Requests as if fully and separately stated.

2.    Nothing herein shall be construed as an admission by CDK regarding the competence, admissibility, or relevance of any fact sought by the Requests.  CDK reserves its right to challenge the competency, relevance, materiality, and admissibility of any information or documents that it produces in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action.  Further, CDK intends no incidental or implied admissions by its answers to the Requests.  Whether CDK answers or objects to any particular Request should not be interpreted as an admission that CDK accepts or admits the existence of any fact(s) set out or assumed by such Requests, that the Requests are proper, that CDK's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether CDK answers part or all of any particular Request is not intended and should not be construed as a waiver by CDK of any or all objections to such Request or any other Request.

3.    CDK objects to any request, instruction, definition, or directive contained in the Requests to the extent that it purports to impose any obligations on CDK beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

4.    CDK objects to certain Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome.  The limitations period applicable to Plaintiffs' claims is, at most, four years from the date the first Dealer lawsuit was filed in this Multidistrict Litigation ("MDL"), which was

October 19, 2017. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. Therefore, CDK objects to the extent a Request seeks documents from any period beyond the applicable statute of limitations, and unless otherwise specified in its response, CDK's production of documents in response to such Request, if any, will be limited to the time period beginning on or after January 1, 2013.

5.      CDK objects to making multiple collections of documents for purposes of responding to these and other Requests for the Production of Documents served in the MDL, dated October 2, 2017, March 23, 2018, and May 25, 2018, on the ground that such collections are unnecessarily burdensome and disproportional to the needs of the case. Therefore, to the extent that CDK has already collected documents from sources implicated by these Requests in connection with fulfilling its discovery obligations in the MDL, CDK objects to making additional collections for purposes of responding to these Requests.

6.      CDK objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of CDK; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery. To the extent that the Requests, or any one of them, seek such information, CDK hereby claims such privilege and invokes such protection. The fact that CDK does not specifically object to an individual request on the grounds that it seeks privileged or protected material shall not be deemed a waiver of the protection afforded by any applicable privilege. Similarly, to the extent any information or documents subject to a privilege or otherwise

protected from discovery are produced in response to these Requests, such production is inadvertent and not intended as a waiver.

7.       CDK objects to the Requests to the extent that they seek information and/or documents that are confidential or otherwise proprietary in nature.  The represented parties in this litigation have agreed upon an Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Dkt. 104).  Thus, to the extent that a request calls for production of confidential or competitively sensitive material, as defined by the Confidentiality Order, CDK will only produce such material subject to that Order.

8.       CDK objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of CDK's employees and other persons, including individuals who are not parties to this litigation.  CDK reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation, including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that CDK may produce.

9.       CDK objects to the Requests to the extent they purport to require the production of documents or information that are not maintained by CDK in the form or manner requested.

10.      CDK objects to the Requests to the extent that they seek the production of documents or information beyond the possession, custody, or control of CDK or its current officers, directors, or employees and/or that cannot be located with a reasonably diligent search, thus making the Requests unduly burdensome.

PUBLIC VERSION

11. CDK objects to the Requests on the ground of undue burden to the extent that they seek the production of documents or information currently in Plaintiff's possession, custody, or control, that is publicly available, or that can be obtained more easily from third parties.

12. No statement that CDK will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that CDK will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

13. To the extent CDK has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found. Similarly, in accordance with the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (Dkt. 105), CDK will produce responsive, non-privileged documents and information in accordance with the parties' agreements regarding date limitations and search terms, to avoid the need to manually inspect every potentially responsive document. To the extent that responsive documents can be identified and produced without the use of search terms, custodian, or date limitations, CDK will make good-faith, diligent efforts to produce those responsive documents concurrent with resolving any disagreements over search criteria.

14. CDK's responses to the Requests are based on its present knowledge, upon a reasonable inquiry. Discovery is ongoing, and CDK's investigation continues. CDK reserves

PUBLIC VERSION

the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

15.     To the extent CDK has objected to or refused to produce documents or information in response to any given Request, and to the extent that Plaintiffs take issue with any such objection or refusal, CDK is willing to meet-and-confer with Plaintiffs to see if a reasonable, mutually-acceptable compromise might be reached.

16.     CDK objects to these Requests to the extent that they are duplicative of requests for production served by other parties in the MDL. Such Requests violate Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166), which directs the parties to serve "additional, *non-duplicative, coordinated* discovery requests" on or before May 25, 2018.

17.     CDK incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

**OBJECTIONS TO PLAINTIFFS'
DEFINITIONS AND INSTRUCTIONS**

1.     CDK objects to each and every "Definition" set forth in the Requests, including "document," "communication," "meeting," "person," "relating to," "related to," "referring to," "regarding," and "with respect to," to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 34 and/or any applicable Local Rule or other Court Order.  CDK will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     CDK objects to Plaintiffs' definition of "add-on application" in Definition No. 1 as overly broad and unduly burdensome, to the extent it purports to include "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications

used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

3.      CDK objects to Plaintiffs' definitions of "CDK" and "you," "your" and "your company" in Definition Nos. 5 and 26 as overly broad and unduly burdensome to the extent they purport to require CDK to produce information and/or documents beyond CDK's possession, custody, or control.  In addition, CDK objects to Definition Nos. 5 and 26 to the extent they purport to require CDK to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on CDK's behalf.

4.      CDK objects to Plaintiffs' definitions of "Authenticom," "Reynolds," and "SIS" in Definition Nos. 3, 21, and 23 as overly broad and unduly burdensome.

5.      CDK objects to Plaintiffs' definition of "data access policies" in Definition No. 7, in so far as CDK's "policies" for access to its DMS, as CDK uses and understands the term, are not limited simply to "the ability of dealers to authorize independent integrators to access data on the DMS or otherwise grant third parties access to their data on the DMS."  To the extent that CDK responds to Requests that reference "data access policies," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

6.      CDK objects to Plaintiffs' definitions of "data integrators" and "Third Party Integrators" in Definition Nos. 8 and 24, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as CDK uses and understands the term.  CDK further objects to Definition No. 8 as inaccurate.  CDK is not a "data integrator" "through its 3PA program"

7

despite Plaintiffs' repeated attempts to label it as such.  CDK's subsidiaries DMI and IntegraLink have served in that role (as CDK understands the term) at various times during the relevant period.  To the extent that CDK responds to Requests that reference "data integrators" or "Third Party Integrators," it does not mean that CDK agrees with or accepts Plaintiffs' definitions.

7.     CDK objects to Plaintiffs' definition of "Data Integration Service" in Definition No. 9, in so far as the "extracting, transforming, integrating, and/or organizing of data housed on dealer data management systems," in any regard, does not necessarily constitute "data integration service(s)" as CDK uses and understands the term.  To the extent that CDK responds to Requests that reference "Data Integration Service(s)," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

8.     CDK objects to Plaintiffs' definitions of "DMI" and "IntegraLink" in Definition Nos. 11 and 16 as overly broad, unduly burdensome, and seeking documents and information that are irrelevant and not within CDK's possession, custody, or control, to the extent that these definitions purport to include any documents or information pertaining to Digital Motorworks, Inc. or IntegraLink before those entities were acquired by and incorporated into the business operations of CDK.

9.     CDK objects to Plaintiffs' definitions of "DMS" and "DMS Market" in Definitions Nos. 12 and 13, in so far as the alleged "DMS Market" is a legal conclusion that requires the application of law to facts that are subject to dispute in this action.  The "DMS market," to the extent there is such a thing, is much broader than the DMSs sold to "new car franchised automobile dealers" and, at a minimum, includes all automotive dealers—new car and used, franchised or independent—that use a DMS in the operation their business.  To the extent

that CDK responds to Requests that reference a "DMS Market," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

10.     CDK objects to Plaintiffs' definition of "SecurityFirst" in Definition No. 22 as inaccurate, in so far as CDK's SecurityFirst initiative was not limited simply to "revamp[ing] its 3PA program." The SecurityFirst initiative had at least four elements: (i) industry transparency and education, (ii) security enhancements to the DMS, (iii) a "refresh" of the 3PA program, and (iv) a tool for dealers to gain visibility and control over how their data is accessed and used called the Dealer Data Exchange. To the extent that CDK responds to Requests that reference "SecurityFirst," it does not mean that CDK agrees with or accepts Plaintiffs' definition.

11.     CDK objects to Plaintiffs' definitions of "Vendors" and "application providers" in Definition No. 25 as overly broad and unduly burdensome, to the extent it purports to include "Vendors" or "application providers" of "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

12.     CDK objects to the use of the phrase "*all* document sufficient to show" in certain Requests as vague and ambiguous. CDK interprets the phrase "all documents sufficient to show" in these Requests as seeking documents sufficient to show the subject matter of the Request, not "all" documents that would be sufficient to show the subject matter of the Request.

13.     CDK objects to Plaintiffs' "Instructions" to the extent that they purport to conflict with, or impose any obligations that are greater than or otherwise inconsistent with, the ESI Stipulation, or to the extent that such instructions purport to impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 34 and/or any

applicable Local Rule or other Court Order. CDK will collect, review, and produce ESI responsive to these Requests in accordance with that Stipulation.

## CDK'S SPECIFIC RESPONSES TO
## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** All documents concerning CDK's post-merger plans for Auto/Mate, including the planned downgrading of features and service as well as the prevention of CDK's larger customers from migrating from CDK as detailed in Paragraph 6 of the March 19, 2018 FTC Complaint.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK's post-merger plans for the proposed Auto/Mate acquisition—which was announced in 2017 and subsequently abandoned in 2018—have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom's Request for Production ("Authenticom RFP") No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 2:** All documents concerning any analysis by CDK regarding the effect of the acquisition of Auto/Mate on franchise Dealers.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Any analysis by CDK of the likely effects on dealers of the proposed

acquisition of Auto/Mate—which was announced in 2017 and subsequently abandoned in 2018—has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 3:** All documents concerning any analysis by CDK regarding Auto/Mate's "aggressive competition," "winning an increasing share of opportunities," and Auto/Mate "successfully acquiring large dealership customers" as detailed in Paragraph 40 of the FTC Complaint.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Any analysis of Auto/Mate conducted by CDK relating to its proposed acquisition of the company—which was announced in 2017 and subsequently abandoned in 2018—has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 56, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 4:** All documents regarding CDK's 2016 plan designed to reduce the risk that some of its customers would switch to Auto/Mate as detailed in Paragraph 42 of the FTC Complaint.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege.  Specifically, CDK objects to this Request on the grounds that it seeks

information unrelated to the claims or defenses in the litigation and thus is beyond the scope of

permissible discovery.  Any analysis of Auto/Mate conducted by CDK relating to its proposed

acquisition of the company—which was announced in 2017 and subsequently abandoned in

2018—has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful

agreement, or whether the terms of CDK's agreements with dealers or vendors are

anticompetitive.  CDK further objects to this Request to the extent it is duplicative of other

Requests for Production, including but not limited to Authenticom RFP No. 56, to which CDK

has produced and is producing responsive documents subject to its objections.

    **REQUEST NO. 5:**   All documents concerning the plans outlined in Paragraph 56 of
the FTC Complaint regarding CDK's post-acquisition plan that would remove a DMS platform
as a competitive alternative to CDK's other DMS products for many customers, which Dealer
customers "highly value."

    **RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege.  Specifically, CDK objects to this Request on the grounds that it seeks

information unrelated to the claims or defenses in the litigation and thus is beyond the scope of

permissible discovery.  CDK's post-merger plans for the proposed Auto/Mate acquisition—

which was announced in 2017 and subsequently abandoned in 2018—have no bearing on

Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether

the terms of CDK's agreements with dealers or vendors are anticompetitive.  CDK further

objects to this Request to the extent it is duplicative of other Requests for Production, including

but not limited to Authenticom RFP No. 56, to which CDK has produced and is producing

responsive documents subject to its objections.

    **REQUEST NO. 6:**   All documents regarding any cooperation, coordination, joint
effort, assistance, exchange of information or technical knowhow, or any other type of

collaboration between CDK and Reynolds in blocking any Third Party Integrators' access to Dealer data on their respective DMS platforms. There is no date limitation for this Request.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "Dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" regarding any "exchange of information" or "collaboration" between CDK and Reynolds related to blocking "Third Party Integrators'" access to their respective DMSs. CDK further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to this litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 2, 3, and 12.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents evidencing (1) any cooperation or agreement between CDK and Reynolds to exclude any "Third Party Integrator" from the marketplace and (2) any communications regarding coordination, joint efforts, assistance, and exchanges of information between Reynolds and CDK aimed at blocking "Third Party Integrators" identified through the use of additional search terms and custodians as may be agreed upon by the parties.

13

**REQUEST NO. 7:**   All documents regarding any VPN tunnel (or other direct access, *i.e.*, one that doesn't require use of login credentials) that CDK provided to any Third Party Integrators for accessing Dealer data on the CDK DMS, including any decision to rescind such access to Third Party Integrators.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege.  Specifically, CDK objects to the use of the terms "accessing" and "Dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" regarding "any VPN tunnel" CDK used over five years ago in connection with its DMS services business and the reasons why CDK terminated that as a service.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013.  Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015.  Moreover, CDK's historical provision of access to a "VPN tunnel" to any so-called "Third Party Integrators" has no bearing on the claims or defenses at issue in this litigation and thus is beyond the scope of permissible discovery.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 15.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 8:**    All documents regarding CDK's policies concerning any changes to CDK's or other DMS providers' data access policies. There is no date limitation for this Request.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege.  In particular, CDK also objects to this Request as grossly overbroad and unduly burdensome in that it seeks "all documents" regarding "any" changes in CDK's policies for third-party access to data maintained on the CDK DMS—or that of any other DMS provider—from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013.  Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015.  Additionally, CDK objects to the extent this Request seeks information not within CDK's possession, custody or control.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 20 and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 9:**    All documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including the Reynolds DMS.  There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

        (a)      all communications with Dealers or Vendors, representations to Dealers or Vendors, or statements relating to Dealers or Vendors regarding the ability

of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS;

(b)    all statements regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS; and

(c)    all documents regarding the ability of Dealers to authorize, or Vendors to use, Third Party Integrators to access data on non-CDK DMS, including Reynolds DMS.

**RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of term "ability" in this Request as vague and ambiguous. For purposes of responding to this Request, CDK will interpret "ability" to mean whether or not non-CDK dealers or vendors are permitted to use third parties to access data stored on non-CDK DMSs in accordance with the DMS provider's third party access policies and/or contractual agreements. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" regarding "the ability of dealers to authorize, or vendors to use, Third Party Integrators to access data" on all "non-CDK DMS" from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 20 and 34.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 10:** All documents and communications from CDK to former Dealer customers regarding the differences or similarities between CDK and Reynolds with respect to data access policies. For the avoidance of doubt, this Request includes, without limitation, any documents or communications in which CDK marketed its open access policy as a point of differentiation with the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents and communications" to all "former" dealer customers regarding "differences or similarities between CDK and Reynolds with respect to data access policies." CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 34.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 11:** All documents relating to CDK's "SecurityFirst" and/or "3PA Refresh" initiative. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

> (a) all presentations regarding the "SecurityFirst" and/or "3PA Refresh" initiative;
> (b) all financial analyses conducted relating to the "SecurityFirst" and/or "3PA Refresh" initiative;
> (c) all documents relating to the reasons CDK introduced the "SecurityFirst" and/or "3PA Refresh" initiative;

17

(d)     all documents and communications with Dealers and Vendors regarding the "SecurityFirst" and/or "3PA Refresh" initiative, including communications concerning blocking or threatening to block Dealers and/or Vendors that did not meet the requirements of the initiative from the CDK DMS;

(e)     all documents concerning any certification requirements under the "SecurityFirst" and/or "3PA Refresh," including any termination or threat of termination of a Dealer and/or Vendor for failure to meet the certification requirements;

(f)     all documents and regarding any differences between the 3PA program before and after the "SecurityFirst" and/or "3PA Refresh" initiative;

(g)     all documents with respect to the technological implementation of the "SecurityFirst" and/or "3PA Refresh" initiative; and

(h)     all documents relating to any security or other technological enhancements instituted as part of the "SecurityFirst" and/or "3PA Refresh" initiative.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" relating, in any way, to CDK's "SecurityFirst" and "3PA Refresh" initiatives for an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. Moreover, subpart (e) of this Request is overbroad and unduly burdensome in so far as it seeks discovery of "certification" requirements for potentially hundreds of individual vendors certified under CDK's 3PA program (now known as the CDK Global Partner program), and nonsensical in so far as it seeks discovery of "certification" requirements for dealers who are not participants in the program. CDK further objects to this Request to the extent subpart (f) seeks technical information regarding the implementation of its SecurityFirst protocols or its 3PA Refresh programs as such information does not relate to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK further objects to this Request to the extent it

is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to subparts (a)-(d) and (h) of this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 12:** All documents regarding the ability of Dealers to extract their data from the CDK DMS manually, including when that capability was instituted; the means by which data is extracted; how the means to extract data manually changed, if they changed at all, over the Relevant Time Period; how often Dealers extract their own data for purposes of providing the data to Vendors; how the use of this functionality (*i.e.*, the incidence of use) has changed over the Relevant Time Period, if at all; and the means by which Dealers send their manually-extracted data to Vendors.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" regarding manual extraction of data maintained on CDK's DMS. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP No. 28.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents (1) sufficient to show when dealers gained the

capability to manually extract data from CDK's DMS, the general means by which that extraction is performed, the frequency of that extraction, the means by which dealers forward that data to vendors, and dealers' ability to manually extract data from CDK's DMS, and (2) reflecting communications regarding dealers' ability to manually extract data from CDK's DMS identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 13:** All documents and communications from CDK to Dealers (whether existing, former, or prospective DMS customers) regarding the differences or similarities between CDK and any other DMS provider with respect to data access policies. For the avoidance of doubt, this Request includes, without limitation, any documents or communications in which CDK marketed its open access policy as a point of differentiation with the Reynolds DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents and communications" with dealers regarding any differences or similarities between CDK's "data access policies" and the policies of any other DMS provider. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 20 and 34.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 14:** All documents concerning any other DMS provider. For the avoidance of doubt, this Request includes:

    (a)    all documents concerning any other DMS provider's DMS and/or DMS services;

    (b)    all documents concerning the system architecture of any other DMS or DMS provider, including but not limited to the technological aspects for retrieving data from any other DMS, blocking of third party access to other DMS, or any other relevant technological matter to the claims and defenses in this case; and

    (c)    all documents concerning competition within the DMS or Data Integration Services market.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request in that it seeks literally "all documents" related, in any way, to "any other DMS provider" regardless of their relevance to the claims and defenses at issue. Accordingly, this Request is grossly overbroad and disproportionate to the needs of this case. CDK further objects to this Request to the extent it is duplicative of Dealership Class Plaintiffs' Request for Production ("Dealership Class Plaintiffs' RFP") Nos. 13, 15, 26, 46, and 47 and other Requests for Production, including but not limited to Authenticom RFP Nos. 19, 31, 32, 72, 89 and 90, to which CDK has produced and is producing responsive documents subject to its objections, and "Individual Plaintiffs'" Request for Production ("Individual Plaintiffs' RFP") Nos. 30, 67, 83, 93 and 94.

**REQUEST NO. 15:** All documents concerning any of CDK's DMS customers switching or attempting to switch to a different DMS provider, including the time and expense associated with changing or switching DMS providers, as well as all documents concerning any of CDK's DMS customers who have discontinued use of CDK's services since January 1, 2014. For avoidance of doubt, this Request includes, without limitation:

    (a)    all documents concerning any litigation or threatened litigation resulting from such a switch or attempted switch;

    (b)    all documents concerning restricting access to a former customer's CDK DMS data or threatening to restrict access to a customer's CDK DMS data if it switched to a new DMS provider;

     (c)     all documents concerning customers who have had a contract with CDK for DMS and/or DMS services and that contract was not renewed from January 1, 2014 to the present; and

     (d)     all documents concerning customers who have had a month to month contract with CDK at any time from January 1, 2014 to present, regardless of whether that customer is a current CDK customer.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks "all documents" related to any DMS customer who switched DMS providers (of which there have been hundreds) over a multiyear period. It seeks, for example, "all documents" related to any customer who switched from CDK to another DMS provider—not even just the documents related to the switch itself—and "all documents" related to any customer who had a month-to-month contract. In other words, subparts (c) and (d) of this Request alone seek "all documents" that are in any way related to potentially hundreds of customers, regardless of whether they have any relevance to the claims and defenses in this litigation. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 31 and 32, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 16:** All current signed Master Services Agreements and/or other contracts, agreements, and/or written understandings between CDK and its Dealer customers. Each agreement should include all documents that comprise the DMS contract between CDK and the Dealer, including any user guides, addendums, exhibits, and other documents that form the agreement between CDK and its Dealer customers.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all" current signed Master Services Agreements and/or other contracts, agreements, and/or written understandings between CDK and thousands of dealer

customers, along with all user guides, addendums, exhibits, and potentially other documents related to each agreement. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 37 and 38, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 17:** All documents concerning any provision in CDK's DMS contracts that provide for automatic renewal or extension of CDK's DMS contracts.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks literally "all documents" concerning any automatic renewal or extensions of CDK's DMS contracts, which would include routine correspondence and communications between CDK and any of its thousands of DMS customers regarding such renewals or extensions. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 37 and 38, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 18:** All documents relating to any changes or proposed changes to material terms in the CDK DMS contract, including with respect to the use of Third Party Integrators; and automatic renewal and/or extension of the contract.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning any changes or proposed changes to "material terms" in CDK's DMS contracts. Moreover, CDK objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP

Nos. 37 and 38, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 19:** All documents sufficient to show (1) which Dealers use or used a CDK DMS; (2) when each Dealer customer first used a CDK DMS; (3) how long each Dealer customer's tenure as a client of CDK has lasted; and (4) if any Dealer no longer uses a CDK DMS, when Dealer ceased using the DMS provider. For the avoidance of doubt, CDK shall provide the above information for any Dealer that was a customer of CDK at any time during the Relevant Time Period.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects that the Request is overly broad and unduly burdensome in that it seeks multiple categories of information for thousands of current CDK DMS customers in addition to former customers who used a CDK DMS at any time since January 1, 2013, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK also objects to the extent that several categories of information sought by this Request have no relevance to the claims or defenses at issue in the litigation and thus are beyond the scope of permissible discovery. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 31, 32, 33, and 36, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 20:** All documents sufficient to show the monthly pricing for DMS services paid by each Dealer customer identified in Request No. 19.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of pricing information for "each" of CDK's thousands of current DMS customers in addition to former customers who used a CDK DMS at any time since January 1, 2013, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK further objects to this Request on the

24

grounds that it seeks information unrelated to any claim or defense in this litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to its DMS customers have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51 and 54.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 21:** All documents sufficient to show the total number of Dealers (both by Dealership group and by rooftop) that used a CDK DMS, broken down on a month-by-month basis.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, this Request seeks "all" documents sufficient to show the number of CDK DMS customers "both by Dealership group and by rooftop" for each month of a multiyear period. In the normal course of its business, CDK does not track or tabulate its total number of DMS customers in the manner sought by this Request, much less on a "month-by-month basis." CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The total number of dealers (both by dealership group and by rooftop) that used a

PUBLIC VERSION

CDK DMS each month has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 31, 32, and 33.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 22:** All documents relating to any change in the pricing for DMS services paid by CDK's Dealer customers.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" related to any change in pricing for any of CDK's thousands of DMS customers. CDK further objects to this Request on the grounds that it seeks information unrelated to any claim or defense in this litigation and thus is beyond the scope of permissible discovery. The prices charged by CDK to its DMS customers have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further

objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51 and 54.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show pricing (and therefore, changes in pricing) for DMS services paid by CDK's customers, to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 23:** All documents sufficient to show the cost of CDK providing DMS services separate and apart from providing Data Integration Services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks the production of cost information related to CDK's DMS services for a multiyear period, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK's cost structure has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. Further, CDK's costs of providing data integration services with respect to its own DMS are not separable from its costs of providing DMS services, as data integration is part of the design and functionality of the DMS itself. CDK further objects to this Request to the extent it is duplicative of other Requests for

PUBLIC VERSION

Production, including but not limited to Authenticom RFP Nos. 51, 52, 53, and 54, to which

CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 24:**  All documents relating to any Dealer that once obtained DMS services from CDK, but no longer does, including documents sufficient to show the reasons why those Dealers no longer obtain DMS services from CDK.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome,

and to the extent it is duplicative and seeks documents and information protected from disclosure

by an applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly

burdensome in that it literally seeks "all documents" concerning "any" dealer that once obtained

DMS services from CDK, but no longer does; it is inconceivable that "all" such documents could

be relevant to this litigation.  Moreover, "the reasons why those Dealers no longer obtain DMS

services from CDK" in particular have no bearing on Plaintiffs' allegations that CDK and

Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with

dealers or vendors are anticompetitive, and thus are beyond the scope of permissible discovery.

CDK further objects to this Request to the extent it is duplicative of other Requests for

Production, including but not limited to Authenticom RFP No. 31, to which CDK has produced

and is producing responsive documents subject to its objections.

**REQUEST NO. 25:**  Documents sufficient to show any up-front initiation fees, per-dealership setup or installation fees, per-transaction fees, or other one-time charges that CDK has charged to its Dealer customers for DMS services, broken down on a Dealer-by-Dealer basis. This Request includes documents sufficient to show when these fees or charges were instituted; why they were instituted; their amounts; and by how much they increase a Dealer's monthly DMS fees.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege.  Specifically, CDK objects that the Request is overly broad and unduly

burdensome because it seeks information regarding numerous categories of fees and charges for

each of CDK's thousands of DMS customers "on a Dealer-by-Dealer basis." CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Fees and costs charged by CDK in connection with DMS services have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51 and 54.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 26:** All documents relating to the pricing charged by other DMS providers, including but not limited to Reynolds.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "pricing charged by other DMS providers" in this Request as vague and ambiguous in so far as this Request does not specify whether it seeks information related to "pricing" charged by other DMS providers for other DMS products, applications, add-on services, etc., nor to whom such pricing is charged (dealers,

vendors, etc.).  CDK also objects to this Request as grossly overbroad and unduly burdensome in

that it seeks "all documents" relating, in any way, to the pricing charged by other DMS

providers.  CDK further objects to this Request on the grounds that it seeks information unrelated

to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.

Fees and costs charged by other DMS providers have no bearing on Plaintiffs' allegations that

CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's

agreements with dealers or vendors are anticompetitive.  Moreover, to the extent that other DMS

providers' pricing has any bearing or relevance to an issue in this litigation, such pricing data is

more readily available to Plaintiffs from other sources, namely, those other DMS providers.

**REQUEST NO. 27:**  All documents concerning restrictions on Vendors' use of Third
Party Integrators to access DMS data on CDK systems or otherwise require that Vendors use the
3PA program to access data on CDK DMS systems.  For the avoidance of doubt, this Request
includes, without limitation, all documents concerning any provision in CDK's Vendor contracts
that limit the ability of Vendors to use Third Party Integrators to access data on CDK DMS
systems.

**RESPONSE:** CDK objects to this request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents or information protected from disclosure by an

applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly

burdensome to the extent it seeks "all documents" related to restrictions on vendors' ability to

"use of Third Party Integrators to access DMS data on CDK systems" set forth in CDK's 3PA

contracts and "all documents" related to CDK's enforcement of such restrictions.  CDK further

objects to this Request to the extent it is duplicative of other Requests for Production, including

but not limited to Authenticom RFP Nos. 45 and 50.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents for the period January 1, 2015 to the date of CDK's document collections related to (1) communications with vendors regarding whether they can (or cannot) use independent integrators to access CDK's DMS, including any communications that cite provisions in a particular 3PA contract to that effect, and (2) the enforcement or threat of enforcement of CDK's 3PA contract against vendors with respect to accessing data on the CDK DMS by means other than through the 3PA program, identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 28:** All documents sufficient to show what each Vendor paid for Data Integration Services on a month-by-month basis until they stopped using IntegraLink and/or DMI for each month of the Relevant Time Period. For the avoidance of doubt, if any Vendor so identified no longer obtains Data Integration Services from IntegraLink or DMI, provide documents and documents sufficient to show when they stopped and what they paid when they stopped.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks monthly pricing information for "each Vendor" that obtained "Data Integration Services" from CDK's subsidiaries DMI and IntegraLink over a multi-year period, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The prices that CDK's subsidiaries charge and/or charged vendors for "Data Integration Services" and the reasons why certain vendors may have stopped obtaining such services have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are

anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 62 and 63.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data that captures the information sought by this Request to the extent that they exist and are within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK-0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 29:** All documents concerning restrictions on Dealers' use of third parties to access DMS data on the CDK systems. For the avoidance of doubt, this Request includes, without limitation:

    (a)    all documents concerning any restrictions on Dealers' use of Third Party Integrators to access DMS data on CDK systems;

    (b)    all documents concerning any provision in CDK's DMS contracts that limit the ability of Dealers to use Third Party Integrators to access data on CDK DMS systems;

    (c)    all documents and communications with Dealers relating to whether they can (or cannot) authorize Third Party Integrators to access data on the CDK DMS, including any communications that cite provisions in a particular DMS contract to that effect;

    (d)    all documents relating to the enforcement or threat of enforcement of CDK's DMS contract against Dealers with respect to third-party access to data on the CDK DMS; and

    (e)    all documents relating to Dealer rights under DMS contracts to authorize third parties to access data on the CDK DMS.

**RESPONSE:** CDK objects to this request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" concerning any restrictions placed by CDK on

dealers' use of third parties to access CDK's DMS software. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 27, 38, 40, 41 and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 30:** All documents sufficient to show the technological aspects of:

(a) how data extraction occurs from the DMS database when using Third Party Integrators;

(b) extracting data for Third Party Integrators differs from those for (i) DMI or IntegraLink or (ii) participants of the 3PA program;

(c) how manual extraction of data occurs from the DMS database; and

(d) how the technological aspects of manually extracting data from the DMS database differs from the technological aspects of extracting data for (i) DMI or IntegraLink or (ii) participants of the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad and unduly burdensome. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of the "technological aspects" of various methods of accessing CDK's DMS software and/or extracting data maintained on CDK's DMS, and because it seeks "all" documents sufficient to show as opposed to simply seeking documents sufficient to show. In other words, Plaintiffs want the technical readout of CDK's entire system—how its DMS works, how to retrieve data from the DMS, how CDK is technologically able to detect and block hostile access to CDK's DMS, etc. Such information is highly commercially sensitive yet has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or

whether the terms of CDK's agreements with dealers or vendors are anticompetitive.  In short,

CDK objects to producing the "technological aspects" of its DMS as unnecessary, overly

burdensome, and unduly prejudicial given the highly sensitive nature of the information.

**REQUEST NO. 31:**  All documents regarding CDK's use of any Third Party Integrator, including but not limited to Authenticom, for Data Integration Services.  For the avoidance of doubt, this Request includes any instance in which a CDK-owned (wholly, jointly, or partially) add-on application used a Third Party Integrator for Data Integration Services with respect to any DMS platform.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents or information protected from disclosure by an

applicable privilege.  Specifically, CDK objects to this Request as grossly overbroad and unduly

burdensome in that it literally seeks "all documents" regarding CDK's "use" of "any" so-called

"Third Party Integrator" for "Data Integration Services." CDK further objects to this Request to

the extent it is duplicative of other Requests for Production, including but not limited to

Authenticom RFP Nos. 19 and 75 and "Individual Plaintiffs" RFP No. 62.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the

use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 32:**  All documents regarding data security and/or DMS system performance with respect to any Third Party Integrator's access to the Reynolds or CDK DMSs. There is no date limitation for this Request. For the avoidance of doubt, this Request includes, without limitation:

  (a)   all documents relating to the effect of Third Party Integrators' access to the CDK DMS on the performance of the CDK DMS;

  (b)   all documents relating to any data security incidents caused by Third Party Integrators' access to the CDK DMS; and

> (c)     all documents relating to any specific system performance issue that was or is directly attributable to third parties' access to the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents" regarding any issues of "data security and/or DMS system performance" attributed to access by a "Third Party Integrator" to CDK's DMS from the beginning of time. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 76, 77, and 78.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 33:** All documents regarding any decision to block the access of a Third Party Integrator to the CDK DMS prior to the implementation of the "SecurityFirst initiative."

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning "any" decision to block the access of a

"Third Party Integrator" prior to the implementation of CDK's SecurityFirst initiative, which was announced in 2015. CDK further objects to this Request to the extent it seeks discovery outside the relevant time frame for purposes of this litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 20, 22, 23, 24, and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 34:** All documents sufficient to show how Dealer data is stored on the CDK DMS. For the avoidance of doubt, this Request includes, without limitation:

(a)    all documents sufficient to show whether a Dealer's data is stored separate from the data of other Dealers;

(b)    all documents sufficient to show whether a Dealer's data is commingled with data that does not belong to the Dealer;

(c)    all documents sufficient to show where Dealer data is stored (whether on servers at the Dealership, at CDK-managed server farms, at third-party managed server farms, or at some other location, or in some other manner); and

(d)    all documents sufficient to show how the storage of Dealer data may have changed over the Relevant Time Period.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative. Specifically, CDK objects to the use of the term "Dealer data" in this Request as vague, ambiguous, and undefined. CDK also CDK objects to this Request as

overly broad and unduly burdensome in that it seeks to the production of information showing

how the storage of data on CDK's DMS "may have changed" during a multiyear period, and

because it seeks "all" documents sufficient to show as opposed to simply seeking documents

sufficient to show.  CDK further objects to this Request to the extent it is duplicative of other

Requests for Production, including but not limited to Authenticom RFP No. 80, to which CDK

has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 35:**  All documents sufficient to show the specific changes to security
measures instituted by CDK to protect security of Dealer data.

**RESPONSE:**  CDK objects to this Request as duplicative of other Requests for

Production, including but not limited to Authenticom RFP No. 81, to which CDK has produced

and is producing responsive documents subject to its objections.

**REQUEST NO. 36:**  All documents referencing, relating to, or concerning the National
Automobile Dealers Association in connection with Dealer data or data security, including, but
not limited to, an August 28, 2013 memo of the National Automobile Dealers Association sent to
members concerning Dealer data guidance and a 2014 memo entitled, "10 Steps Dealers Need
To Take To Protect 'Dealer Data.'"

**RESPONSE:**  CDK objects to this Request as vague, overly broad, unduly burdensome,

and to the extent it is duplicative and seeks documents or information protected from disclosure

by an applicable privilege.  Specifically, CDK objects to the use of the term "Dealer data" in this

Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad

and unduly burdensome in that it seeks the production of "all documents" referencing, relating

to, in any way, or concerning the August 28, 2013 NADA memo.  CDK also objects to this

Request on the ground that it seeks information that is not within CDK's possession, custody, or

control and/or which is more readily available from other sources, namely NADA, the author of

the memo at issue.  CDK further objects to this Request to the extent it is duplicative of other

Requests for Production, including but not limited to Authenticom RFP No. 83, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 37:**  All documents demonstrating the attendance or participation of a CDK representative at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention.  This Request includes any memos, diary entries, and travel, accommodation, and restaurants receipts, or any other documentation evidencing reimbursement for attendance at the conference or convention.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.  CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.  Specifically, CDK objects to this Request on the ground that its participation (or not) at conferences and trade shows has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive.  CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all" documents demonstrating attendance by any CDK employee at industry conferences or trade shows where customers or potential customers were present (and not simply documents sufficient to show such attendance), including memos, diary entries, travel itineraries, and receipts.  CDK also objects to this Request on the ground that identifying which conferences and conventions were attended by customers or potential customers is unduly burdensome.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to "Individual Plaintiffs" RFP No. 73.

**REQUEST NO. 38:**  All documents produced, used or distributed at any conference or convention where customers or potential customers attended, including but not limited to any Digital Dealer Conference or any National Auto Dealers Association conference or convention. This Request includes any memos, videos, emails and any other materials used to inform,

instruct and/or train CDK representatives to market any of CDK's services to Dealers at any convention, meeting, gathering or informational events that would at any time include current or potential CDK customers.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that its participation (or not) at conferences and trade shows has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all documents" produced, used or distributed by anyone—not just CDK—at any "conference" or "convention" where customers or potential customers attended, irrespective of their relevance to the claims and defenses at issue in this litigation. CDK also objects to this Request on the ground that identifying which conferences and conventions were attended by customers or potential customers is unduly burdensome. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including, but not limited to "Individual Plaintiffs" RFP No. 73.

**REQUEST NO. 39:** Any Civil Investigative Demand served on CDK pertaining to alleged anticompetitive conduct and/or acquisitions or potential acquisitions by CDK and/or Reynolds. For avoidance of doubt, this request is for the Civil Investigative Demand itself and any attachments.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond

the scope of permissible discovery. The mere fact that CDK received a CID is not probative of any issue, nor is the mere fact that certain documents or information may have been sought from CDK through a CID probative of any issue. CDK also objects to producing any CID related to "potential acquisitions by CDK and/or Reynolds," in so far as acquisitions are not relevant to any claim or defense and "potential acquisitions" that were abandoned or otherwise never consummated are even less relevant. CDK further objects to this Request to the extent it seeks discovery outside the relevant time frame for purposes of this litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, CDK states that it will produce a copy of the Civil Investigative Demand issued to CDK in connection with the FTC's joint conduct investigation of CDK and Reynolds.

**REQUEST NO. 40:** All documents concerning CDK sales data and information, including but not limited to invoices, relating to any data integrators or the following Vendors: TrueCar, Carfax, Autotrader, Cars.com, vAuto, Dealer.com, DealerSocket, RouteOne, NakedLime and DealerRater, and/or any of their subsidiaries, affiliates or related entities.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it seeks documents or information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning "sales data" and/or "information," including all invoices, related to any so-called "data integrator" or any of ten other entities regardless of their relevance to any claim or defense. CDK also objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos.

51, 52, 53, 54, 57, 58, 59, 65, 66, 68, 69, 70, 102, and 103, to which CDK has produced and is

producing responsive documents subject to its objections.

**REQUEST NO. 41:** All documents exchanged between CDK and Reynolds and any
Vendor relating to changes in data integration fees impacting (or potentially impacting) Vendors'
prices and fees to Dealerships. This includes but is not limited to any documents or
communications that relate in any way to Vendors increasing their prices and fees to Dealerships
as a result of increases in data integration fees charged by CDK and/or Reynolds.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent is duplicative and it seeks documents and information protected from disclosure by an

applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly

burdensome in that it seeks "all documents" exchanged between CDK and Reynolds and "any"

vendor regarding data integration fees changes. CDK also objects to this Request on the grounds

that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond

the scope of permissible discovery. The data integration fees charged by CDK to vendors—and

communications regarding those fees—have no bearing on Plaintiffs' allegations that CDK and

Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with

dealers or vendors are anticompetitive. In addition, CDK objects to this Request to the extent it is

duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos.

66, 68, 71, 96, and 97.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents, if any, within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the

use of additional search terms and custodians as may be agreed upon by the parties.

41

**REQUEST NO. 42:** All documents concerning CDK's actual and projected financial results on a weekly, monthly, quarterly and/or yearly basis during the Relevant Time Period, including but not limited to:

        (a)      internal projections;
        (b)      profit and loss statements, analyses or projections;
        (c)      cost analyses or projections;
        (d)      analyses or projections of gross margins;
        (e)      budgets;
        (f)      marketing plans;
        (g)      business plans or other planning documents; and
        (h)      financial statements, including any filings with governmental agencies or presentations to banks or other financial institutions.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all documents" concerning CDK's "financial results" on a weekly, monthly, quarterly and/or yearly basis as such a request, taken literally, could be read to require the production of every document at CDK. Further, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery. CDK's financial status has no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. CDK further objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 52, 53, 55, 57, 58, 59, and 60, to which CDK has produced and is producing responsive documents subject to its objections, and "Individual Plaintiffs" RFP Nos. 81, 82, 83, 84, 85, 86 and 91.

**REQUEST NO. 43:** All documents concerning CDK's policies and/or practices directed at compliance with the United States antitrust laws.

**RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the phrase "policies and/or practices directed at compliance with the United States antitrust laws" in this Request as vague and ambiguous. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all documents" that in any way concern "policies and/or practices" regarding compliance with U.S. antitrust laws. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Policies and/or practices directed at compliance with the United States antitrust laws have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. Moreover, CDK objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to "Individual Plaintiffs" RFP No. 76.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control, and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged written antitrust compliance policies and training materials distributed to employees in the normal course of business for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 44:** All documents concerning any insurance policies, indemnification agreements or hold harmless agreements that may provide coverage for any of the claims or causes of action asserted in this action, or that may provide reimbursement for payments made or costs incurred in defense of this action.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable

privilege. Specifically, CDK objects to this Request on the ground that it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery. To the extent that any agreements subject to this Request may exist, such agreements—and any documents "concerning" such agreements—have no bearing on Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive.

Subject to and without waiving these or its General Objections, CDK states that, in accordance with its disclosures made pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), CDK is not aware of any documents that are responsive to this Request.

**REQUEST NO. 45:** All documents concerning CDK's policies and/or practices regarding the retention, destruction, disposal, and/or preservation of documents.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning CDK's policies and/or practices regarding the retention, destruction, disposal, and/or preservation of documents.

Subject to and without waiving these or its General Objections, CDK states that it has already produced its General Retention Schedule. *See* CDK-0701400. CDK stands on its objections to the extent this Request seeks "all documents" concerning the Schedule.

**REQUEST NO. 46:** All documents concerning the potential for entities to enter into the market for the supply of DMS, including the potential for such entry and the barriers or obstacles for such entry.

**RESPONSE** CDK objects to this Request as vague, ambiguous, overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request's use of the term "market" as

it contains legal conclusions or requires the application of law to facts that are subject to dispute

in this action.  Moreover, it is unclear what documents in CDK's possession, custody, or control

would speak to the potential for "entry" into such market or "barriers or obstacles for such

entry."  Plaintiffs will need to explain what they are actually seeking through this Request.  CDK

also objects to this Request to the extent that it seeks information unrelated to the claims or

defenses in this litigation and thus is beyond the scope of permissible discovery.  The potential

for entities to enter any alleged "DMS market" has no bearing on Plaintiffs' allegations that

CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's

agreements with dealers or vendors are anticompetitive.

      **REQUEST NO. 47:**  All documents concerning the potential for entities to enter into the
market for the supply of DIS, including the potential for such entry and the barriers or obstacles
for such entry.

      **RESPONSE:** CDK objects to this Request as vague, ambiguous, overly broad, unduly

burdensome, and to the extent it seeks documents and information protected from disclosure by

an applicable privilege.  Specifically, CDK objects to this Request's use of the term "market" as

it contains legal conclusions or requires the application of law to facts that are subject to dispute

in this action.  Moreover, it is unclear what documents in CDK's possession, custody, or control

would speak to the potential for "entry" into such market or "barriers or obstacles for such

entry."  Plaintiffs will need to explain what they are actually seeking through this Request.  CDK

also objects to this Request to the extent that it seeks information unrelated to the claims or

defenses in this litigation and thus is beyond the scope of permissible discovery.  The potential

for entities to enter any alleged market for "Data Integration Services" has no bearing on

Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether

the terms of CDK's agreements with dealers or vendors are anticompetitive.

**REQUEST NO. 48:** All documents concerning CDK sales data and information, including but not limited to invoices and all underlying data used to generate invoices for Vendors that used (1) DMI, (2) Integralink, and/or (3) the 3PA program for data integration services, from 2011 to the present, as well as all underlying data used to generate invoices for dealers that used a CDK DMS, from January 1, 2011 to the present. This request includes but is not limited transactional data which shows the payor, date, price, discount, net payable, the category of data polled, as well as records that show the amounts paid to CDK in response to invoices.

**RESPONSE:** CDK objects to this Request as grossly overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. CDK further objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks "all documents" concerning any "CDK sales data and information," including all "invoices" and "underlying data used to generate invoices." As written, this Request seeks the production of thousands upon thousands of invoices issued by CDK and two of its subsidiaries from January 1, 2011 to the present and all "underlying data" as well as "all documents" concerning CDK's sales which, taken literally, could be read to require the production of virtually every document at CDK. CDK further objects to this Request to the extent that it is not limited to the time period relevant to this litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims center on an alleged agreement that did not occur until February 2015. CDK also objects to this Request to the extent it is duplicative of other Requests for Production, including but not limited to Authenticom RFP Nos. 51, 52, 53, 54, 57, 58, 59, 65, 66, 68, 69, 70, 102, and 103, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 49:** This RFP incorporates all RFPs propounded by the Individual Plaintiffs and formally requests all documents sought by those RFPs.

**RESPONSE:** CDK objects to this Request as untimely, duplicative, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information unrelated to the claims or defenses in this litigation and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as untimely pursuant to Paragraph B.6 of the Court's May 7, 2018 Case Management Order. CDK also objects to this Request as overly broad and unduly burdensome in that it purports to duplicate 101 other Requests for Production served on behalf of the "Individual Plaintiffs," many of which have no bearing or relevance to the Dealer Class Plaintiffs' claims or any defenses thereto. This Request also violates the Case Management Order's directive for the parties to serve "additional, *non-duplicative*, coordinated discovery requests" on or before May 25, 2018.

Subject to and without waiving these or its General Objections, CDK states that to the extent it produces documents in response to the "Individual Plaintiffs" RFPs, those documents will in the normal course be provided to all other parties in the MDL.

Dated: June 22, 2018                    Respectfully submitted,


                                        */s/ Matthew Provance*
                                        Britt M. Miller
                                        Matthew D. Provance
                                        Mayer Brown LLP
                                        71 South Wacker Drive
                                        Chicago, IL 60606
                                        (312) 782-0600
                                        bmiller@mayerbrown.com
                                        mprovance@mayerbrown.com

                                        Mark W. Ryan
                                        Mayer Brown LLP
                                        1999 K Street NW
                                        Washington, DC 20006
                                        (202) 263-3000
                                        mryan@mayerbrown.com

                                        *Counsel for CDK Global, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

      I, Matthew D. Provance, an attorney, certify that I caused a copy of the foregoing **CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Matthew Provance*

PUBLIC VERSION

# EXHIBIT 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE:  DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | |
| **This Document Relates To:** | **MDL No. 2817** **Case No. 18-cv-00864** |
| *Motor Vehicle Software Corporation v. CDK Global, Inc. et al.*, Case No. 1:18-cv-00865 (N.D. Ill.); *Authenticom, Inc. v. CDK Global, LLC et al.*, Case No. 1:18-cv-00868 (N.D. Ill.); *Cox Automotive, Inc. et al v. CDK Global, LLC*, Case No. 1:18-cv-01058 (N.D. Ill.); *Loop LLC v. CDK Global, LLC*, Case No. 1:18-cv-02521 (N.D. Ill.) | **Hon. Robert M. Dow, Jr.** **Magistrate Judge Jeffrey M. Gilbert** |

## CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO "INDIVIDUAL PLAINTIFFS'" FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS

Defendant CDK Global, LLC ("CDK"), by and through its attorneys, and pursuant to Fed. R. Civ. P. 26 and 34, hereby submits its written objections and responses to plaintiffs Motor Vehicle Software Corporation ("MVSC"), Authenticom, Inc. ("Authenticom"), Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., Xtime (collectively, "Cox"), and Loop, LLC d/b/a AutoLoop's ("AutoLoop")[1] (collectively "Plaintiffs") First Set of Requests for the Production of Documents to CDK, dated May 25, 2018 (the "Requests").[2]

---

[1] CDK notes that AutoLoop is no longer an "Individual Plaintiff" but rather now purports to be suing on its own behalf as well as on behalf of a putative class of vendors.  *See* Dkt. 194.  CDK reserves the right to seek class-related discovery in that case as AutoLoop's amended complaint (in which the class allegations first appeared) was not filed until June 5, 2018—after the May 25, 2018 discovery deadline.

[2] On June 13, 2018, Plaintiffs served an "Amended" First Set of Requests for the Production of Documents, which reiterated their May 25 Requests verbatim and added a new Request No. 102 that purports to "incorporate[ ] all RFPs propounded by the Dealer Class Plaintiffs and formally request[ ] all documents sought by those RFPs."  CDK believes that Plaintiffs' "Amended" Requests are untimely under Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166) and therefore improper.  Nevertheless, solely for efficiency's sake, CDK incorporates

## GENERAL OBJECTIONS

1.      CDK asserts each of the following objections to the Requests.  In addition to these General Objections, CDK may also state specific objections to a Request where appropriate.  By setting forth such additional specific objections, CDK does not in any way intend to limit or restrict its General Objections.  Moreover, to the extent CDK provides a response to any of the Requests to which CDK objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.      Nothing herein shall be construed as an admission by CDK regarding the competence, admissibility, or relevance of any fact sought by the Requests.  CDK reserves its right to challenge the competency, relevance, materiality, and admissibility of any information or documents that it produces in response to any discovery request at trial, of Plaintiffs' actions or any other action, or at any subsequent proceeding, of Plaintiffs' actions or of any other action.  Further, CDK intends no incidental or implied admissions by its answers to the Requests.  Whether CDK answers or objects to any particular Request should not be interpreted as an admission that CDK accepts or admits the existence of any fact(s) set out or assumed by such Requests, that the Requests are proper, that CDK's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion Plaintiffs' actions or any other proceeding.  Furthermore, whether CDK answers part or all of any particular Request is not intended and should not be construed as a waiver by CDK of any or all objections to such Request or any other Request.

its responses to Request Nos. 1-101 and "Amended" Request No. 102, below, and hereby serves them as its responses to the "Amended" Requests as if fully and separately stated.

PUBLIC VERSION

3.     CDK objects to any request, instruction, definition, or directive contained in the Requests to the extent that it purports to impose any obligations on CDK beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

4.     CDK objects to the Requests to the extent they are unlimited in time or not limited to the time relevant to Plaintiffs' actions, on the ground that such Requests seek information which is neither relevant to any claim or defense in Plaintiffs' actions and is overly broad and unduly burdensome. The limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first complaint by any of them in this Multidistrict Litigation ("MDL"), which was February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. Therefore, unless otherwise specified in its response to a specific Request, CDK's production of documents will be limited to the time period beginning on or after January 1, 2013.

5.     CDK objects to Requests propounded on behalf of Authenticom and to the extent such Requests seek discovery on behalf of Authenticom or specific to the claims and defenses asserted in *Authenticom, Inc. v. CDK Global, LLC et al*. On October 2, 2017, Authenticom served CDK with 92 requests for production. On March 12, 2018, the Court ordered Authenticom to issue further "written discovery" to Defendants by March 23, 2018 (Dkt. 43); on March 23, Authenticom served CDK with another 15 requests for production, for a total of 107 separate requests, not including subparts. To the extent Authenticom purports to seek additional documents through the instant Requests, CDK objects to such Requests as untimely and because the burden of responding to such Requests outweighs any marginal benefit given the voluminous discovery that Authenticom has already sought and obtained from CDK. CDK further objects to the Requests to the extent they are not relevant to the claims or defenses asserted in each of the

3

PUBLIC VERSION

cases filed by the remaining Plaintiffs who issued these Requests: *Motor Vehicle Software Corp. v. CDK Global, Inc., et al.* ("*MVSC*"); *Cox Automotive, Inc., et al. v. CDK Global, LLC* ("*Cox*"); and *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC* ("*AutoLoop*").

6.      CDK objects to making multiple collections of documents for purposes of responding to these and other Requests for the Production of Documents served in the MDL, dated October 2, 2017, March 23, 2018, and May 25, 2018, on the ground that such collections are unnecessarily burdensome and disproportional to the needs of the MDL.  Therefore, to the extent that CDK has already collected documents from sources implicated by these Requests in connection with fulfilling its discovery obligations in the MDL, CDK objects to making additional collections for purposes of responding to these Requests.

7.      CDK objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of CDK; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery.  To the extent that the Requests, or any one of them, seek such information, CDK hereby claims such privilege and invokes such protection.  The fact that CDK does not specifically object to an individual request on the grounds that it seeks privileged or protected material shall not be deemed a waiver of the protection afforded by any applicable privilege.  Similarly, to the extent any information or documents subject to a privilege or otherwise protected from discovery are produced in response to these Requests, such production is inadvertent and not intended as a waiver.

4

8.      CDK objects to the Requests to the extent that they seek information and/or documents that are confidential or otherwise proprietary in nature.  The represented parties in this litigation have agreed upon an Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Dkt. 104).  Thus, to the extent that a request calls for production of confidential or competitively sensitive material, as defined by the Confidentiality Order, CDK will only produce such material subject to that Order.

9.      CDK objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of CDK's employees and other persons, including individuals who are not parties to Plaintiffs' actions.  CDK reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation, including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that CDK may produce.

10.     CDK objects to the Requests to the extent they purport to require the production of documents or information that are not maintained by CDK in the form or manner requested.

11.     CDK objects to the Requests to the extent that they seek the production of documents or information beyond the possession, custody, or control of CDK or its current officers, directors, or employees and/or that cannot be located with a reasonably diligent search, thus making the Requests unduly burdensome.

12.     CDK objects to the Requests on the ground of undue burden to the extent that they seek the production of documents or information currently in Plaintiffs' possession,

custody, or control, that is publicly available, or that can be obtained more easily from third parties.

13.     No statement that CDK will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that CDK will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

14.     To the extent CDK has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found.  Similarly, in accordance with the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (Dkt. 105), CDK will produce responsive, non-privileged documents and information in accordance with the parties' agreements regarding date limitations and search terms, to avoid the need to manually inspect every potentially responsive document.  To the extent that responsive documents can be identified and produced without the use of search terms, custodian, or date limitations, CDK will make good-faith, diligent efforts to produce those responsive documents concurrent with resolving any disagreements over search criteria.

15.     CDK's responses to the Requests are based on its present knowledge, upon a reasonable inquiry.  Discovery is ongoing, and CDK's investigation continues.  CDK reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

6

16.     To the extent CDK has objected to or refused to produce documents or information in response to any given Request, and to the extent that Plaintiffs take issue with any such objection or refusal, CDK is willing to meet-and-confer with Plaintiffs to see if a reasonable, mutually-acceptable compromise might be reached.

17.     CDK objects to these Requests to the extent that they are duplicative of Requests for the Production of Documents served by other parties in the MDL. Such Requests violate Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166), which directs the parties to serve "additional, *non-duplicative, coordinated* discovery requests" on or before May 25, 2018."

18.     CDK incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

1.     CDK objects to each and every "Definition" set forth in the Requests, including "communication," "relating to," "related to," "referring to," "regarding," and "with respect to," to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 34 and/or any applicable Local Rule or other Court Order. CDK will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     CDK objects to Plaintiffs' definition of "add-on application" in Definition No. 1 as overly broad and unduly burdensome, to the extent it purports to include "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications

used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

3.     CDK objects to Plaintiffs' definitions of "CDK" and "You," "Your" and "Your company" in Definition Nos. 9 and 20 as overly broad and unduly burdensome to the extent they purport to require CDK to produce information and/or documents beyond CDK's possession, custody, or control.  In addition, CDK objects to Definition Nos. 9 and 20 to the extent they purport to require CDK to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on CDK's behalf.

4.     CDK objects to Plaintiffs' definition of "CVR" in Definition No. 11 as overly broad and unduly burdensome, and to the extent it purports to require CDK to produce information and/or documents maintained by CVR.  Plaintiffs have stated their intent to serve separate discovery requests upon CVR; therefore, to the extent these Requests seek documents from CVR, they should be directed to CVR, not CDK.

5.     CDK objects to Plaintiffs' definitions of "Authenticom," "AutoLoop," "Cox Automotive," "MVSC," "RTS," and "Reynolds" in Definition Nos. 3, 4, 5, 6, 7, and 18 as overly broad and unduly burdensome.

6.     CDK objects to Plaintiffs' definition of "data integrators" in Definition No. 12, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as CDK uses and understands the term.  CDK further objects to Definition No. 12 as inaccurate.  CDK is not a "data integrator" "through its 3PA program" despite Plaintiffs' repeated attempts to label it as

8

such.  CDK's subsidiaries DMI and IntegraLink have served in that role (as CDK understands the term) at various times during the relevant period.  To the extent that CDK responds to Requests that reference "data integrators," it does not mean that CDK agrees with or accepts Plaintiffs' definitions.

7.      CDK objects to Plaintiffs' definitions of "DMI" and "IntegraLink" in Definition Nos. 13 and 15 as overly broad, unduly burdensome, and seeking documents and information that are irrelevant and not within CDK's possession, custody, or control, to the extent that these definitions purport to include any documents or information pertaining to Digital Motorworks, Inc. or IntegraLink before those entities were acquired by and incorporated into the business operations of CDK.

8.      CDK objects to Plaintiffs' definitions of "Vendors" and "application providers" in Definition No. 19 as overly broad and unduly burdensome, to the extent it purports to include "Vendors" or "application providers" of "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

9.      CDK objects to Plaintiffs' "Instructions" to the extent that they purport to conflict with, or impose any obligations that are greater than or otherwise inconsistent with, the ESI Stipulation.  CDK will collect, review, and produce ESI responsive to these Requests in accordance with that Stipulation.  CDK further objects to Instruction No. 1 to the extent it purports to require the production of privileged documents, including but not limited to those in the possession of CDK's "attorneys or their employees, agents, vendors, or investigators.

## CDK'S SPECIFIC RESPONSES TO REQUESTS FOR THE PRODUCTION OF DOCUMENTS

9

**REQUEST NO. 1:** The executed versions of every 3PA contract with a vendor.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks production of any executed contract for each of CDK's 300+ 3PA customers, from the beginning of time to the present, irrespective of whether the vendors are current or former customers, and without taking into consideration that CDK may have had executed multiple 3PA contracts with particular customers over time. CDK further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom's Request for Production ("Authenticom RFP") No. 43, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 2:** All documents and communications regarding CDK's Managed Interface Agreement with (a) Cox Automotive and (b) AutoLoop.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to the agreements identified in the

10

Request.  CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs'" Request for Production ("'Individual Plaintiffs' RFP") Nos. 1 and 6.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce (a) executed versions and non-privileged drafts of the agreements identified in this Request, and (b) non-privileged documents and communications regarding the agreements identified in this Request, for the period January 1, 2015 (approximately one year prior to the execution of Cox and AutoLoop's respective Managed Interface Agreements with CDK), to the date of CDK's collections.

**REQUEST NO. 3:** All documents and communications regarding the 3PA fees to be charged to (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as vague and overly broad to the extent it seeks information related to 3PA fees "to be charged" to Cox, AutoLoop, and MVSC; "to be charged" could refer to any number of things including but not limited fees that might or will be charged in the future or fees

CDK contemplated charging. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to the 3PA fees. CDK further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to the claims and defenses in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 6, 7, and 8, and 82 and Authenticom RFP Nos. 61 and 96.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the periods January 1, 2014 (for MVSC), and January 1, 2015 (for Cox and AutoLoop), to the date of CDK's collections.

**REQUEST NO. 4:** All documents and communications regarding access to dealer data on a CDK DMS through the 3PA program by (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly

burdensome to the extent it seeks "all documents and communications" relating, in any way, to

Cox's, AutoLoop's, or MVSC's access to "dealer data" through the 3PA program.  CDK further

objects to this Request to the extent that it is unlimited in time and thus is not limited to the time

period relevant to the Plaintiffs' actions.  As noted above, the limitations period applicable to

Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff"

complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable

conduct by CDK until much later than that.  CDK further objects to this Request to the extent it

seeks untimely and irrelevant additional discovery on behalf of Authenticom.  CDK further

objects to this Request to the extent it is duplicative of other Requests for Production served

upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 11-15,

32, 33, 37, and 96-97.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

responsive to this Request for the periods January 1, 2014 (for MVSC), and January 1, 2015 (for

Cox and AutoLoop), to the date of CDK's collections.

**REQUEST NO. 5:** All documents and communications regarding whether data received
by a (a) Cox Automotive or (b) AutoLoop application from a CDK DMS may be shared with
another application run by (a) Cox Automotive or (b) AutoLoop.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of Plaintiffs' actions, and to the extent it seeks documents and

information protected from disclosure by an applicable privilege.  Specifically, CDK objects to

this Request as overly broad and unduly burdensome to the extent it seeks "all documents and

communications" relating, in any way, to whether data from a CDK DMS can be shared between

Cox's or AutoLoop's multitude of applications, from the beginning of time to the present. CDK further objects to this Request to the extent that it is unlimited in time and thus is not limited to the time period relevant to the Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 6:** All documents and communications regarding the Most Favored Nations clause – or anything like it – in the Managed Interface Agreement between Cox Automotive and CDK.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to a particular clause, "or anything like it," in the agreement identified in this Request. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to

the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 2, 3, 7, and 8.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period beginning January 1, 2015 to the date of CDK's collections.

**REQUEST NO. 7:** All documents and communications regarding any instance in which a vendor received equal or better pricing than Cox Automotive for data integration under the 3PA program from 2015 to the present.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to "any instance" in which any of CDK's 300+ vendors received equal or better "pricing" (a term undefined in these Requests or Cox's Complaint) than those that Cox receives for services that are not comparable to the services that Cox receives. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to,, but not limited to "Individual Plaintiffs" RFP No. 82.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show pricing for data integration services paid by CDK's customers, to the extent that such data exists and is within CDK's possession, custody, and

control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 8:** All documents and communications regarding any representation made to Cox Automotive that it would pay the lowest rates for integration services.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as vague and overly broad to the extent it seeks documents and communications related to "any representation" in any form by any person or entity to Cox that it would pay the "lowest rate" (a term undefined in these Requests or Cox's complaint) for integration services. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 3.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 9:** All documents regarding 3PA Governance. *See*, *e.g.*, CDK-0001039, at 46.

16

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as vague to the extent it references CDK-0001039, which contains a passing reference to "3PA Governance" as it relates to "Writeback and IP Functions" made available to DMS providers. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" relating, in any way, to "3PA Governance," since the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK also objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 10:** All documents and communications regarding any DMS access restrictions, to which CDK add-on applications are not subject, that CDK places on third-party add-on applications.

17

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Whether CDK places the same "access restrictions" on its own applications—which CDK can monitor and for which it is ultimately responsible—as those placed upon applications offered by third parties has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding any "DMS access restrictions" placed on any "third-party add-on applications" offered by 300+ vendor customers, since the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs'" RFP Nos. 11-15 and Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 11:** All documents and communications regarding allowing applications to create or modify "repair orders." *See*, *e.g.*, CDK-0000786, at 818.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Whether CDK allows certain functionality for applications offered by third parties has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications," related in any way to allowing *any* third-party application to create and modify repair orders in CDK's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

19

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 12:** All documents and communications regarding allowing applications to finalize purchasing and leasing transactions. *See id.*

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Whether CDK allows certain functionality for applications offered by third parties has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" related in any way to allowing *any* third-party application to "finalize" purchasing and leasing transactions, the meaning of which is not clear from this Request, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC

20

and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 13:** All documents and communications regarding any "category restrictions" in place at any time with respect to data integration. *See*, *e.g.*, CDK-0001039, at 64.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" related in any way to *any* "category restrictions" on data access for third-party applications in place "at any time." As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 14:** All documents and communications relating to any "CVR Category" for data access by electronic vehicle registration and titling vendors.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the term "CVR Category" in this Request as vague and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications," related in any way to any "CVR" category for third-party data access, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control

22

responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 15:** All documents and communications relating to any "Closed Category" for data access by electronic vehicle registration and titling vendors.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the term "Closed Category" as vague and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" related in any way to *any* "Closed Category" for third-party data access, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

23

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 16:** All communications with Nissan Motor Acceptance Corporation, American Honda Finance Corporation, or their affiliates regarding Dealertrack's Sales and F&I solution.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all communications" relating, in any way, to Dealertrack's Sales and F&I solution, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce communications with Nissan Motor Acceptance Corp. and American Honda Finance Corporation as they relate to Dealertrack's Sales and F&I solution and the allegations in Cox's complaint, for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 17:** All documents and communications concerning the process of transitioning dealers from CDK's DMS to Dealertrack's DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable

24

privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding the transition of any dealer, for any reason, to Dealertrack's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody and control, and can be identified through a reasonable search of appropriate sources, CDK will produce documents sufficient to show its policies and procedures for transferring customer data to a new DMS provider for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 18:** All documents and communications regarding impeding, blocking, or in any way making it difficult for a dealer to switch from CDK's DMS to a competing DMS, including Dealertrack's DMS. For the avoidance of doubt, this Request includes all communications and documents regarding a dealer's ability to transfer the dealer's data stored on the CDK DMS to a competing DMS.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the phrase "difficult" in this Request as vague, ambiguous, and undefined. CDK could make it "difficult," for example, for customers to switch DMS providers by offering those customers better pricing or more attractive terms of service. CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is

25

beyond the scope of permissible discovery. Whether or not CDK "make[s] it difficult" to switch DMS providers, DMS customers regularly switch to and from CDK as demonstrated by information that CDK has already produced in this MDL. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery of CDK "making it difficult" "in any way" for a dealer to switch DMS providers, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody and control, and can be identified through a reasonable search of appropriate sources, CDK will produce documents sufficient to show its policies and procedures for transferring customer data to a new DMS provider for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 19:** All documents and communications regarding "push" notifications for 3PA or similar functionality provided to CDK's own add-on applications.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether CDK provides or has ever provided "push" notifications through the 3PA

program or for its own "add-on applications" has no bearing on the matters at issue in Plaintiffs'

actions, including whether CDK and Reynolds entered into an unlawful agreement or whether

the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this

Request as overly broad and unduly burdensome to the extent it seeks "all" documents and

communications regarding "push" notifications, from the beginning of time to the present. As

noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the

filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not

allege any potentially actionable conduct by CDK until much later than that. CDK further

objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC

and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects

to this Request to the extent it is duplicative of other Requests for Production served upon CDK

in this MDL, including, but not limited to, Authenticom RFP Nos. 26, 27, and 91, to which CDK

has produced and is producing responsive documents subject to its objections, and "Individual

Plaintiffs" RFP No. 96.

      **REQUEST NO. 20:** All documents regarding functionality, data access, or level of data integration provided to one vendor but not offered to a competing vendor or vendors.

      **RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks information that is protected from

disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds

that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond

the scope of permissible discovery. Whether or not all of CDK's 300+ current and former

vendor customers have equal or comparable data integrations has no bearing on the matters at

issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful

agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" comparing such data integrations, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 21:** All documents and communications regarding any purported burden placed on a CDK DMS by the applications of (a) Cox Automotive or (b) AutoLoop.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request to the extent it seeks discovery of the burden placed on CDK's DMS by 3PA-certified applications, which is irrelevant to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding "any" burden placed on a CDK DMS by any application affiliated with Cox or AutoLoop, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to the burden placed on CDK's DMS by unauthorized third-party applications, including from Cox and AutoLoop, for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 22:** All documents and communications regarding the response time for 3PA interfaces from the time they are requested by a vendor until the time they are actually activated.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "response time" in this Request as vague, ambiguous, and undefined. It is unclear whether "response time" is measured from the time that CDK is first contacted by a new vendor interested in the 3PA program, from the time that CDK and the vendor actually negotiate and execute a managed interface agreement, or some other point in time. CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The "response time" for activation of 3PA interfaces has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding response times for activation of 3PA interfaces for any vendor and any application, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first

29

"Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 23:** All documents and communications regarding "Project Peach."

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The project between non-party Open Dealer Exchange and Cox that is the subject of this Request has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding any aspect of the project. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 24:** All documents and communications regarding Dealertrack Registration & Titling's access to the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Dealertrack's EVR product is not at issue in

30

Plaintiffs' actions. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding DealerTrack Registration & Titling's access to CDK's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 4 and 10.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to Dealertrack Registration & Titling's eligibility for the 3PA program and any negotiations concerning its possible participation in the 3PA program.

**REQUEST NO. 25:** All documents and communications regarding RTS participating in the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Dealertrack's EVR product is not at issue in

31

Plaintiffs' actions. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding DealerTrack Registration & Titling's possible participation in CDK's 3PA program. Additionally, CDK objects to this Request as unlimited in time and thus not limited to the time period relevant to the claims and defenses in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 4, 5 10, and 24.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to Dealertrack Registration & Titling's eligibility for the 3PA program and any negotiations concerning its possible participation in the 3PA program.

**REQUEST NO. 26:** All documents and communications regarding AutoLoop's application to join the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications"

regarding AutoLoop's application to join the 3PA program. Additionally, CDK objects to this Request as unlimited in time and thus not limited to the time period relevant to the claims and defenses in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint— February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or Cox and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 27:** All documents and communications regarding CDK's certification of AutoLoop's products for the 3PA program under the January 2016 Statement of Work between AutoLoop and CDK.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding CDK's certification of AutoLoop's products in the 3PA program. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or Cox and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other

PUBLIC VERSION

Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 2.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 28:** All documents and communications regarding CDK's decision to let AutoLoop use independent third-party integrators to provide data integration services to CDK dealers after AutoLoop's acceptance into the 3PA program.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding a purported "decision" by CDK to permit AutoLoop to use "third party integrators" after its admission to the 3PA program. CDK also objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or Cox and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 30.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 29:** All communications – and all documents regarding those communications – between CDK and dealers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents and/or communications" between CDK and dealers relating, in any way, to Cox, AutoLoop, and MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 3, 4, and 5.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to communications with dealers regarding access by Cox, AutoLoop, and/or MVSC to CDK's DMS for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 30:** All documents and communications relating to any threat or perceived threat to Your DMS business posed by add-on applications, including but not limited to add-on applications provided by Cox Automotive.

35

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "threat" in this Request as vague, ambiguous, and undefined. "Threat" could mean competitive threats (as the term was used in Authenticom RFP 90) or the threats to data security and system performance and integrity caused by unauthorized third-party access. CDK assumes for the purposes of this Request that Plaintiffs mean the former. CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether or not add-on applications pose a competitive "threat" has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to any competitive threat posed by "add-on applications," from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 90.

36

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 31:** All documents and communications between CDK and OEMs or car manufacturers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents and/or communications" between CDK and OEMs relating, in any way, to Cox, AutoLoop, or MVSC, from the beginning of time to the present. OEMs are not parties to this case and Plaintiffs make no material allegations regarding OEMs in their complaints. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 3, 4, and 5.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified

37

through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to communications with OEMs regarding access by Cox, AutoLoop, and/or MVSC to CDK's DMS for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 32:** All communications, and documents related to those communications, between CVR and CDK concerning MVSC, including but not limited to: (1) MVSC's access to dealer data stored on the CDK DMS; (2) MVSC's presence and market share in California, Illinois, or any other state EVR market; (3) MVSC's expansion or potential expansion into states beyond California; and (4) any competitive threat or perceived competitive threat posed by MVSC to CVR.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data" in this Request as vague, ambiguous, and undefined  CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" communications with CVR, and documents "related" in any way to those communications, concerning MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint— February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 33:** All communications, and documents related to those communications, between CDK and Reynolds concerning or relating to MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" communications, and documents "related" in any way to those communications, between CDK and Reynolds concerning or relating to MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 2, 3, and 4.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 34:** All documents and communications related to MVSC's attempts or applications to join the Your data integration program, including but not limited to internal communications regarding whether to permit MVSC to participate in Your data integration program; internal communications regarding any competitive threat that permitting MVSC to join Your data integration program might pose to CVR; and the terms and pricing offered to MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "related," in any way, to any attempts by MVSC or applications submitted by MVSC to join CDK's 3PA program, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2014, to the date of CDK's collections.

**REQUEST NO. 35:** All documents and communications related to any other application or attempt by any EVR provider, other than MVSC, to join Your data integration program, including the terms and pricing offered to any such EVR vendor.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks

40

the production of "all" documents and communications "related," in any way, to any attempts or

applications submitted by any EVR provider other than MVSC to join CDK's 3PA program and

the terms and pricing offered to such provider, from the beginning of time to the present. As

noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the

filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not

allege any potentially actionable conduct by CDK until much later than that. CDK further

objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or

AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

sufficient to show the EVR providers who are enrolled in CDK's 3PA program and the

contractual terms and conditions of their enrollment in the 3PA program for the period January 1,

2013, to the date of CDK's collections.

**REQUEST NO. 36:** All documents and communications regarding any EVR provider
currently participating in Your data integration program, including when they started
participating; the pricing they pay for participation; their applications to participate in the
program; Your internal considerations regarding their applications; the data elements they
receive and /or have access to; and the state EVR markets in which they participate.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome,

and to the extent it seeks documents protected from disclosure by an applicable privilege.

Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it

seeks the production of "all" documents and communications "regarding," in any way, any EVR

providers' participation in CDK's 3PA program. CDK also objects to this Request as overly

broad and unduly burdensome in that it seeks documents from an unlimited time period. As

41

noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the

filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not

allege any potentially actionable conduct by CDK until much later than that. CDK further

objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or

AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK

further objects to this Request to the extent it is duplicative of other Requests for Production

served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 35.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents

sufficient to show the EVR providers who are enrolled in CDK's 3PA program and the

contractual terms and conditions of their enrollment in the 3PA program for the period January 1,

2013, to the date of CDK's collections.

**REQUEST NO. 37:** All communications, and documents related to those communications, between You and Your dealer customers regarding MVSC, including but not limited to communications between You and Your dealer customers concerning (1) the way in which MVSC accesses dealer data; (2) MVSC's attempts to join the 3PA program and/or 3PA certification status; and (3) MVSC's security and data practices.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome,

and to the extent it is duplicative and seeks documents protected from disclosure by an

applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer

data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as

overly broad and unduly burdensome to the extent it seeks the production of "all"

communications and documents between CDK and its customers "related," in any way, to

MVSC, from the beginning of time to the present. As noted above, the limitations period

applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 29.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to subparagraphs (1)-(3) of this Request for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 38:** All communications and documents concerning or mentioning any MVSC executive, including but not limited to Don Armstrong, Kelly Kimball, Joseph Nemelka, and John Brueggeman.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all communications and documents" "concerning or mentioning" any of four individuals affiliated with MVSC, in any context, from the beginning of time to the present. Of course, not "all" such documents have any relevance or bearing on the claims or defenses at issue in the MVSC litigation. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2017. Further, Plaintiffs do not allege

any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 3, 4, 31, 32, 33, 34, and 37.

Subject to and without waiving these or its General Objections, CDK states that it is willing to consider a search term based upon this Request in connection with the parties' ongoing negotiations concerning additional search terms and custodians.

**REQUEST NO. 39:** All communications and documents concerning CDK's consideration or evaluation of whether to acquire or purchase MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether CDK considered or evaluated purchasing MVSC has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications and documents "concerning," in any way, CDK's consideration or evaluation of whether to acquire or purchase MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual

Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 40:** All communications and documents concerning any efforts by You to block or impede MVSC's access to data for a dealer using Your DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the phrase "access to data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications and documents "concerning," in any way, CDK's supposed efforts to block or impede MVSC's access to CDK's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 14, 22, 23, 27, 42, 79, and 81.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

45

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the

use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 41:** All communications and documents concerning MVSC's use of
independent integrators, including but not limited to Authenticom, SIS, and ProQuotes, to access
data for a dealer using Your DMS platform.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents protected from disclosure by an applicable

privilege. Specifically, CDK objects to the phrase "access data for a dealer" in this Request as

vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly

burdensome to the extent it seeks the production of "all" communications and documents

"concerning," in any way, MVSC's use of "independent integrators" to access CDK's DMS,

from the beginning of time to the present. As noted above, the limitations period applicable to

Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff"

complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable

conduct by CDK until much later than that. CDK further objects to this Request to the extent it

seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and

irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to

the extent it is duplicative of other Requests for Production served upon CDK in this MDL,

including, but not limited to, Authenticom RFP Nos. 14, 22, 23, 27, and 42.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

46

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 42:**  All communications and documents concerning the importance of having real time or bi-directional data integration in order to provide EVR services in Illinois, California, or any other state EVR market.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the phrase "importance of having real time or bi-directional data integration" in this Request as vague, ambiguous, and undefined. Any document referring to such integrations could be interpreted to bear on their "importance," or not, to the provision of EVR services. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications and documents related to the "importance," in any context, of real time or bi-directional data integration in connection with the provision of EVR services. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks documents regarding any alleged "EVR market" in any state other than Illinois or California. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

47

responsive to this Request to the extent they relate to the provision of EVR services in Illinois or California for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 43:** Documents sufficient to show CVR's market share and customer base in every state in which it operates, from 2011 to present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents beyond CDK's possession, custody, or control. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks documents related to CVR's "market share" and "customer base" in every state in which it operates, from 2011 to the present. Only CVR's operations in Illinois and California are implicated by MVSC's claims. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show the number of customers that CVR serves in California and Illinois.

**REQUEST NO. 44:** All documents and communications concerning CVR's customer base and market share in California and Illinois, from 2011 to present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically,

48

Case: 1:18-cv-00864 Document #: 356-1 Filed: 08/30/18 Page 288 of 378 PageID #:13059

PUBLIC VERSION

CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications that are in any way related to CVR's customer base and "market share" in California and Illinois, from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents that refer to or otherwise purport to calculate CVR's "share" of EVR customers in California or Illinois for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 45:** All documents and communications concerning any market analysis or competitive analysis of the EVR markets in California and Illinois.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, any "market analysis" or "competitive analysis" of EVR services in California and Illinois, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—

February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 46:** All documents and communications concerning CVR's operational costs, revenues, profitability, and financial projections and forecasts, from 2011 to present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is beyond the scope of permissible discovery. The revenues or "profitability" realized by CVR— particularly prior to the relevant time period—has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, CVR's operational costs, revenues, profitability, and financial projections and forecasts from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the

50

first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 47:** All documents and communications concerning deficiencies or perceived deficiencies in CVR's product and service level. For the avoidance of doubt, this Request includes not only internal documents and communications but also communications with third parties (including CVR's dealer customers) regarding deficiencies or perceived deficiencies in CVR's product and service level.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning" supposed deficiencies in CVR's products or services, from the beginning of time the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

comparing the product quality or perceived product quality of CVR and MVSC for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 48:** All documents and communications concerning the product quality or perceived product quality of CVR's competitors, including but not limited to MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents beyond CDK's possession, custody, or control, or protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, the product quality or perceived product quality of CVR's competitors, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents comparing the product quality or perceived product quality of CVR and MVSC for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 49:** All documents and communications regarding any delays or backlogs by CVR in processing vehicle registrations and titles, including but not limited to any such delays or backlogs in California.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Any delays or backlogs in processing vehicle registrations and titles (if any) have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "regarding" such purported delays or backlogs, from the beginning of time to the present. Only CVR's operations in Illinois and California are implicated by MVSC's claims. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

related to any "backlogs" for EVR providers processing vehicle registrations and titles in California, for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 50:** All documents and communications concerning any advantage or perceived advantage CVR has over its competitors because of CVR's ability to access dealer data stored on the CDK and Reynolds DMSs.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to term "advantage" and the phrase "dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, any "advantage" that CVR has from its ability to access—along with several other EVR providers—data stored on CDK and Reynolds's DMSs. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks documents from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

comparing CVR against other EVR providers in terms of their ability to access to data on CDK

and/or Reynolds's DMSs for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 51:** All documents and communications concerning the costs associated with entering a new EVR market, including costs associated with legal licensing and DMV requirements and capital and technological costs.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks documents protected from

disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds

that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is

beyond the scope of permissible discovery. The entry costs associated with EVR services have

no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds

entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts

are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to

the extent it seeks the production of "all" documents and communications "concerning" such

costs, from the beginning of time to the present. As noted above, the limitations period

applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual

Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially

actionable conduct by CDK until much later than that. CDK further objects to this Request to

the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or

untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this

Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 52:** Documents sufficient to show CVR's ownership structure, including documents sufficient to show how CVR's revenues and profits are divided between CDK and Reynolds.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks documents from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 53:** All documents and communications relating to Reynolds' ownership interest in CVR, including when that interest was acquired; why Reynolds acquired that interest; from whom Reynolds acquired that interest; how much Reynolds paid for that ownership interest; and what Reynolds' rights are with respect to its ownership interest.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, this Request appears to have been mistakenly directed at CDK and obviously requests Reynolds documents as opposed to CDK documents (and an identical Request has been propounded to Reynolds). CDK also objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions

56

and thus is beyond the scope of permissible discovery.  The details surrounding when, how, and why Reynolds acquired its ownership interest in CVR have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "relating," in any way, to Reynolds' ownership interest in CVR, from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.  Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 54:**  All documents and communications relating to the financial benefits received by Reynolds and CDK relating to their ownership interest in CVR, including any allocated profits or other financial benefit, from 2011 to the present.

**RESPONSE:**  CDK objects to this Request as overly broad, vague, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the term "financial benefits" in this Request as vague, ambiguous, and undefined.  CDK further objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "relating," in any way, to "financial benefits" obtained by CDK and Reynolds from their ownership interest in CVR from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual

57

Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show how CVR's profits are allocated between CDK and Reynolds for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 55:** The operative CVR ownership agreement between CDK and Reynolds.

**RESPONSE:** Subject to and without waiving these or its General Objections, CDK states that it has already produced documents responsive to this Request. *See* CDK-0001931.

**REQUEST NO. 56:** All iterations of CVR's organizational chart from 2011 to the present.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "iterations" in this request as vague, ambiguous, and undefined, and overly broad and unduly burdensome to the extent it means drafts or non-final versions of the documents identified by this Request. CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks CVR's "organizational chart" from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.

Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.  Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 57:**  All documents concerning CDK's involvement in the operation of CVR, including but not limited to CDK's involvement in CVR's management, budget and capital investments, hiring, firing, personnel decisions, salary and bonus allotments, strategic priorities, sales and marketing efforts, and other daily business activities.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege.  Specifically, CDK objects to use of the term "involvement" in this Request as vague, ambiguous, and undefined.  CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.  MVSC's theory that CDK "controls" CVR is pled in service of a Section 2 claim that has been dismissed once already, is subject to another pending motion to dismiss, and contradicts MVSC's own allegations in prior versions of its complaint.  CDK further objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "relating," in any way, to CDK's "involvement" in the operation of CVR—which could mean

59

literally anything—from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 58:** All documents and communications between anyone at CVR, on the one hand, and anyone at CDK, on the other, including regarding the operations, finances, and/or management of CVR.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. MVSC's theory that CDK "controls" CVR is pled in service of a Section 2 claim that has been dismissed once already, is subject to another pending motion to dismiss, and contradicts MVSC's own allegations in prior versions of its complaint. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications between CVR and CDK, regardless of content, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely

60

and irrelevant additional discovery on behalf of Authenticom.  Finally, to the extent this Request

seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 59:**  All communications between CDK and Reynolds regarding CVR.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it seeks communications protected from disclosure by an applicable privilege.

Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it

seeks the production of "all" communications between CVR and CDK regarding CVR, in any

way, from the beginning of time to the present.  As noted above, the limitations period applicable

to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff"

complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable

conduct by CDK until much later than that.  CDK further objects to this Request to the extent it

seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and

irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged

communications between CDK and Reynolds regarding CVR's operations or finances, including

CVR's participation in CDK's and Reynolds's 3PA and RCI programs, for the period January 1,

2013, to the date of CDK's collections.

**REQUEST NO. 60:**  All documents and communications relating to CVR's acquisition
of AVRS, including the strategic and financial considerations in CVR's acquisition of AVRS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks documents protected from

disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds

that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is

beyond the scope of permissible discovery. The details of CVR's acquisition of AVRS—and

strategic or financial considerations thereof—have no bearing on the matters at issue in

Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or

whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects

to this Request as overly broad and unduly burdensome to the extent it seeks the production of

"all" documents and communications "relating," in any way, to CVR's acquisition of AVRS.

CDK further objects to this Request to the extent it seeks discovery unrelated to the claims

asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of

Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be

directed to CVR, not CDK.

**REQUEST NO. 61:** All documents and communications regarding deficiencies or
perceived deficiencies in AVRS's product and service levels after the acquisition. For the
avoidance of doubt, this Request includes not only internal documents and communications but
also communications with third parties (including AVRS's dealer customers) regarding
deficiencies or perceived deficiencies in AVRS's product and service level.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome,

not proportional to the needs of the case, and to the extent it seeks documents protected from

disclosure by an applicable privilege. Specifically, CDK objects to the use of the term

"deficiencies" in this Request as vague, ambiguous, and undefined. CDK also objects to this

Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs'

actions and thus is beyond the scope of permissible discovery. Any perceived deficiencies in

AVRS's products or service levels has no bearing on the matters at issue in Plaintiffs' actions,

including whether CDK and Reynolds entered into an unlawful agreement or whether the terms

of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as

overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning" such purported deficiencies, in any way. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 62:** All documents and communications regarding instances in which CVR or AVRS uses or used independent integrators for access to dealer data on a DMS platform, whether CDK's, Reynolds', or any other DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "regarding," the use of so-called "independent integrators" by CVR or AVRS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

related to any agreements with "independent integrators" with respect to CVR or AVRS's (after

its acquisition by CVR) access to data maintained on CDK or Reynolds's DMS, or any other

DMS providers with policies restricting third-party access.

**REQUEST NO. 63:** All documents and communications regarding any instance in which an add-on application owned (or partly owned) by CDK or Reynolds uses or used independent integrators for access to dealer data on a DMS platform, whether CDK's, Reynolds', or any other DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome,

and to the extent it is duplicative and seeks documents protected from disclosure by an

applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data"

in this Request as vague, ambiguous, and undefined. CDK further objects to this Request as

overly broad and unduly burdensome to the extent it seeks the production of "all" documents and

communications "regarding," in any way, the use of so-called "independent integrators" by an

add-on application owned by CDK or Reynolds, from the beginning of time to the present. As

noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the

filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not

allege any potentially actionable conduct by CDK until much later than that.  CDK further

objects to this Request to the extent it seeks untimely discovery on behalf of Authenticom.  CDK

further objects to this Request to the extent it is duplicative of other Requests for Production

served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 25.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents related to agreements with "independent integrators" with respect to CDK applications' access to data maintained on CDK or Reynolds's DMS, or any other DMS providers with policies restricting third-party access, identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 64:** All documents relating to CVR's Board of Directors or any equivalent governing body for CVR. This Request has no date limitation. This Request includes, but is not limited to:

    a.      All documents relating to the composition of CVR's Board of Directors;
    b.      Identification of every member of CVR's Board of Directors through time;
    c.      All materials presented to CVR's Board of Directors;
    d.      All materials considered by CVR's Board of Directors;
    e.      All minutes of meetings of CVR's Board of Directors; and
    f.      All communications between or among CVR's Board of Directors.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the phrase "materials considered" in this Request as vague and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents "relating," in any way, to CVR's Board of Directors or "any equivalent governing body," from the beginning of time to the present. CVR's Board of Directors discusses and considers a variety of issues unrelated to any of claims and defenses in Plaintiffs' actions. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and

65

irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show the composition of CVR's Board of Directors, CVR Board of Directors meeting minutes, and materials distributed to CVR Board members in advance of Board meetings for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 65:** All communications between You and any customer or former customer of Authenticom regarding data integration services or data access, including Team Velocity, Automotive Masterminds, or any other vendor customer of Authenticom.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications between CDK and any customer or former "customer" of Authenticom (which may include potentially hundreds of vendors) that are in any way related to "data integration services or data access," from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. In addition, the Request provides no way for CDK to determine who is a customer or former customer of Authenticom. CDK also objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely additional discovery on behalf of Authenticom. CDK

66

further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 10, 13, 20, and 22, to which CDK has produced and is producing responsive documents subject to its objections.

Subject to and without waiving these or its General Objections, CDK states that if Authenticom is able to provide a list of its current or former vendor customers, and the time periods when they were customers of Authenticom, CDK is willing to consider producing documents responsive to this Request to the extent that such documents can be identified through the use of agreed-upon search terms, date limitations, and custodians.

**REQUEST NO. 66:** All communications between You and any dealer customer or former dealer customer of Authenticom regarding data integration services or data access.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" communications between CDK and "any dealer customer or former customer of Authenticom" (which may include potentially thousands of dealers) related in any way to "data integration services or data access," from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK also objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely additional discovery on behalf of Authenticom. CDK further objects to this

67

Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 10, 13, 20, and 22, to which CDK has produced and is producing responsive documents subject to its objections.

Subject to and without waiving these or its General Objections, CDK states that if Authenticom is able to provide a list of its current or former dealer customers, and the time periods when they were customers of Authenticom, CDK is willing to consider producing documents responsive to this Request to the extent that such documents can be identified through the use of agreed-upon search terms, date limitations, and custodians.

**REQUEST NO. 67:** All documents concerning Your evaluation of the market for data access / integration services, including what companies compete with You for provision of data access / data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning any evaluation by CDK of the alleged "market for data access/integration services," from the beginning of time to the present. The alleged "market" for "data integration services" is a legal conclusion that requires the application of law to facts that are subject to dispute in Plaintiffs' actions. Moreover, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other

Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 89.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 68:** All documents concerning Your cost of capital, cost of equity, cost of debt, and/or weighted average cost of capital, including any documents upon which any of the foregoing are based.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's overall capital, debt, and equity costs—whether based on lines of business that are related to Plaintiffs' allegations or otherwise—have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning CDK's capital, debt, and equity costs from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this

69

Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 69:** All documents concerning the economic value of data or data access to dealers, vendors, or DMS providers, including any economic value placed by You on Your ability to deny, restrict, or in any way control access to data on Your DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the phrase "economic value of data or data access" in this Request as vague and ambiguous.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning such purported "economic value" from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 70:** All communications between CDK and any potential acquirer or acquirers, including The Carlyle Group, Silver Lake, Vista Equity Partners, Bain Capital, Thoma Bravo, and Advent International (or any person acting on behalf of the foregoing), regarding the valuation of CDK, its subsidiaries, or any aspect of their business.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that communications, if any, with potential acquirers regarding valuations of CDK or its business have no bearing on the matters at

70

issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful

agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK

also objects to this Request as overly broad and unduly burdensome to the extent it seeks the

production of "all" such communications, from the beginning of time to the present. As noted

above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing

of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege

any potentially actionable conduct by CDK until much later than that. CDK further objects to

this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of

Authenticom.

**REQUEST NO. 71:** All documents regarding CDK's Fortellis Automotive Exchange,
including all communications with dealers (including AutoNation, Lithia, Berkshire Automotive,
Group One, and the Larry Miller Group) and vendors; historical data or projections regarding the
costs of research and development, pricing, subscriptions, revenues, and profits.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks documents and information

protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request

as overly broad and unduly burdensome to the extent it seeks the production of "all" documents

"regarding" the Fortellis Automotive Exchange ("Fortellis"), in any respect. In particular, the

financial information and pricing and revenue data related to Fortellis called for in this Request

appears to have no relevance to any party's claims or defenses and thus is beyond the scope of

permissible discovery. CDK further objects to this Request to the extent it seeks untimely and

irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states it is willing to meet and confer with Plaintiffs to understand why they believe this Request is relevant to the matters at issue in Plaintiffs' actions.

**REQUEST NO. 72:** All projections, forecasts, or other financial analyses regarding CDK's 3PA, OEM DCS, and/or DMI data services programs.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" projections, forecasts, or "other financial analyses" related to nearly every aspect of CDK's Data Services business, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 73:** All documents concerning the following conferences and/or meetings from 2009 to the present: the National Automobile Dealers Association Show; the Digital Dealer Conference & Expo; or any other industry conference. For the avoidance of doubt, this Request includes all documents concerning: the identity of any of Your employees that attended the conference and/or meeting; any booth or other exhibition space obtained by You; and the exhibitor list and/or floor plan for any such show.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks information that

72

is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that its participation (or not) at conferences and trade shows has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning the National Automobile Dealers Association Show, the Digital Conference & Expo, "or any other industry conference" from 2009 to the present, irrespective of their relevance to the claims and defenses at issue in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Dealership Class Plaintiffs RFP Nos. 37-38.

**REQUEST NO. 74:** All telephone records – whether landline or cell phone – reflecting calls made or received by any Reynolds employee and any employee of CDK from 2014 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks information that is harassing and not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that it is grossly overbroad and unduly burdensome in so far as it seeks *all* telephone records reflecting calls made or received by any Reynolds or CDK employee,

73

regardless of their subject matter, from 2014 to the present. Thousands of employees' telephone records are potentially implicated by this Request, which, as written, is not even limited to calls made *between* CDK and Reynolds employees. CDK further objects to this Request to the extent it seeks information not within CDK's possession, custody, or control and/or more readily available from third parties, including telephone carriers. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 75:** All telephone records – whether landline or cell phone – for Your document custodians from 2014 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks information that is harassing and not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that it is grossly overbroad and unduly burdensome in so far as it seeks *all* telephone records for *all* CDK document custodians, regardless of their subject matter, from 2014 to the present. CDK further objects to this Request to the extent it seeks information not within CDK's possession, custody, or control and/or more readily available from third parties, including telephone carriers. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 76:** All documents concerning any training provided by You to Your employees regarding antitrust or competition laws.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case, and to the extent it is duplicative and seeks documents or information protected by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents that in any way concern "any training" provided to CDK employees regarding antitrust and

competition laws from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Dealer Class Plaintiffs RFP No. 43.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control, and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged written antitrust compliance policies and training materials distributed to employees in the normal course of business for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 77:** All documents concerning CDK's Secure the DMS initiative.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overbroad and unduly burdensome to the extent it seeks the production of "all" documents that in any way concern CDK's efforts to secure its DMS from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom. CDK

further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 20, 22, 23, 27, and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 78:** All Secure the DMS Dashboard Reports (*see*, *e.g*., CDK-0841086, at 87), including all data used to prepare such reports.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overbroad and unduly burdensome to the extent it seeks the production of not only "all" dashboard reports created in connection with CDK's "Secure the DMS" strategy, but "all data used to prepare such reports." CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production previously served upon CDK in this MDL, including Authenticom RFP Nos. 22 and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced the data used to track non-authorized access to CDK's DMS and communications with dealers featured in the report referenced in this Request. *See, e.g.*, CDK-0720676; CDK-0720677; CDK-0720678; CDK-0720679; CDK-0720680; CDK-0720681; CDK-

76

0720682; CDK-0720683; CDK-0720684; CDK-0720685; CDK-0720686; CDK-0720687; CDK-0720688; CDK-0720689; CDK-0720690; CDK-0720691; CDK-0720692; CDK-0720693; CDK-0720694; CDK-0720695; CDK-0720696; CDK-0720697; CDK-0720698; CDK-0720699; CDK-0720700; CDK-0720701; CDK-0720702; CDK-0720703; CDK-0720704; CDK-0720705; CDK-0720706; CDK-0720707; CDK-0720708; CDK-0720709; CDK-0720710; CDK-0720711; CDK-0720712; CDK-0720713; CDK-0720714; CDK-0720715; CDK-0720716; CDK-0720717; CDK-0720718; CDK-0720719; CDK-0720720; CDK-0720721; CDK-2437144.

**REQUEST NO. 79:**  All documents regarding access by ReverseRisk to CDK's DMS platform.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request on the grounds that the terms and conditions of access to CDK's DMS by one application among hundreds (if not thousands) is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents regarding ReverseRisk's access to CDK's DMS, from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

77

Subject to and without waiving these or its General Objections, CDK states that it will produce the Managed Interface Agreement and Statement of Work between CDK and ReverseRisk to the extent not otherwise produced in this litigation.

**REQUEST NO. 80:**  All documents concerning "hostile integration" or use of non-authorized usernames or passwords to extract data from the CDK or Reynolds platforms.

**RESPONSE:**  CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents in any way related to "hostile integration" or the use of non-authorized DMS usernames or passwords, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint— February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 10, 11, 12, 13, 14, 16, 18, 19, 20, 22, 23,  24, and 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 81:** Documents sufficient to show CDK's revenue, profit (including profit margins), and costs for providing data integration services, on a monthly basis, from January 1, 2000, to the present, with the revenues, profits, and costs of 3PA, DMI, and IntegraLink broken out separately.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks revenue, profit and cost information for "data integration" services from 2000 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. Further, CDK's costs of providing data integration services with respect to its own DMS are not separable from its costs of providing DMS services, as data integration is part of the design and functionality of the DMS itself. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 57, 58, and 59, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 82:** Documents sufficient to show transactional sales data (including sales, profit, and cost data) on a per-customer and per-transaction basis for data integration services from January 1, 2006, to the present, with the data for 3PA, DMI, and IntegraLink broken out separately. For the avoidance of doubt, this Request includes, without limitation, the following data linked to each data integration service transaction:

    a. Date and location of transaction;
    b. Data integration service customer;
    c. Specific data integration service purchased;
    d. Information tied to the specific data integration service purchased, including the unit price, unit cost, quantity, and applicable discounts;
    e. CDK salesperson and applicable commission;

       f.   Order number and other identifying order information; and

       g.   Any documents necessary to interpret the contents of these data fields, including abbreviation keys and explanations.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of documents sufficient to show transactional sales data (including sales, profit and cost data) on a per-customer and per-transaction basis for "data integration" services from 2006 to the present. As written, this Request literally seeks the production of thousands upon thousands of invoices issued by CDK and two of its subsidiaries from over a 10+ year period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 57-59, 65-66, 68-70, and 102 to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 83:** All reports and analyses pertaining to CDK's marketing and sales of data integration services from January 1, 2009 to the present, with information for 3PA, DMI, and IntegraLink broken out separately. For the avoidance of doubt, this Request includes, without limitation:

       a.     Sales reports;

       b.     Sales representative performance reports;

       c.     Marketing plans;

       d.     Marketing reports, including sales promotions and discounts;

       e.     Strategic plans, including pricing strategy;

       f.     Cost accounting reports;

g.     General ledger reports;
h.     Charts of accounts;
i.     Analyses of competitive position, including market share; and
j.     Profit and loss reports.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" reports, plans, and analyses of almost any kind related to CDK's data integration services from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.  CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 27, 58-60, 66 and 67, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 84:**  Documents sufficient to show CDK's projections with respect to revenue and profit for providing data integration services from January 1, 2009 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks revenue and profit projections for CDK's data integration services from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this

Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 85:** Documents sufficient to show CDK's projections with respect to costs for providing data integration services from January 1, 2009 to the present, with the projections for 3PA, DMI, and IntegraLink broken out separately.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks cost projections for CDK's data integration services from 2009 to the present. CDK's costs of providing data integration services with respect to its own DMS are not separable from its costs of providing DMS services, as data integration is part of the design and functionality of the DMS itself. Further, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 57, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 86:** All documents and communications concerning CDK's projections with respect to its data integration services from January 1, 2009 to the present. For the avoidance of doubt, this Request includes, without limitation, documents and communications

82

relating to estimates, forecasts, and budgets for revenue, profit, and costs associated with CDK's provision of data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents that in any way concern financial projections for CDK's data integration services from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 87:** All documents and communications concerning CDK's internal valuations of its data integration service businesses, separate and apart from its DMS business, from January 1, 2009 to the present, including, without limitation, valuations of 3PA, DMI, and IntegraLink.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's own internal business valuations are irrelevant to the claims or defenses in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to

83

the extent it seeks the production of "all" documents and communications that in any way concern CDK's internal valuations of its data integration services business from 2009 to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 88:**  All documents and communications concerning CDK's internal valuations of its DMS business, separate and apart from its data integration services, from January 1, 2009 to the present.

**RESPONSE:**  CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's own internal business valuations are irrelevant to any issue in Plaintiffs' actions.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications that in any way concern CDK's internal valuation of its DMS business from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 89:** All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of "all" documents and communications related to any "industry publications" and "reports" that in any context mention data integration services from 2009 to the present, regardless of their relevance to any issue in the litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 90:** All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to DMS services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents, information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of "all" documents and communications related to any "industry publications and reports" that in any context mention DMS services from 2009 to the present, regardless of their

85

relevance to any issue in the litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 91:** All documents and communications CDK relied upon from January 1, 2009 to the present in creating projections, estimates, forecasts, and budgets for revenue, profit, and costs associated with CDK's provision of data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative, seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" documents and communications relied upon by CDK in creating projections, estimates, forecasts, and budgets associated with CDK's data integration services from 2009 to the present. Such a Request encompasses nearly every piece of financial information that CDK possesses or has ever possessed related to data integration. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not

limited to, Authenticom RFP Nos. 57-60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 92:**  Documents sufficient to show the number of connections CDK has established between a vendor and a dealer's data for purposes of transmitting dealer data to the vendor, broken down by customer, specific service (3PA, DMI, or IntegraLink), and date, from January 1, 2009 to the present.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to the use of the term "dealer data" in this Request as vague, ambiguous, and undefined.  CDK also objects to this Request on the grounds that it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery.  The number of data "connections" (as defined by Plaintiffs in this Request) that CDK maintains between vendors and dealers is irrelevant to any claim or defense in Plaintiffs' actions.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery of every such "connection," broken down by customer, specific service, and date, from 2009 to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.

**REQUEST NO. 93:**  CDK's "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers (for 3PA, DMI, and IntegraLink, broken out separately) that CDK has lost every year since January 1, 2009, including the reasons the customer switched from a CDK data integration service to a non-CDK data integration service and the identity of the data integration service to whom the customer switched.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "win/loss" reports and other documents sufficient to show the "data integration" customers CDK has lost each year from 2009 to the present. CDK does not in the normal course of its business maintain "win/loss" reports or similar to track customer gains and losses, or the reasons for such gains or losses, outside of its core DMS business. Moreover, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show customers of CDK's 3PA program, DMI, and IntegraLink on a monthly basis—and therefore, which customers joined and left at various times—to the extent that such information exists and is within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 94:** CDK's "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers (for 3PA, DMI, and IntegraLink, broken out separately) that CDK has won every year since January 1, 2009, including the reasons

the customer switched to a CDK data integration service and the identity of the data integration service from whom the customer switched.

> **RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "win/loss" reports and other documents sufficient to show the "data integration" customers CDK has won each year from 2009 to the present. CDK does not in the normal course of its business maintain "win/loss" reports or similar to track customer gains and losses, or the reasons for such gains or losses, outside of its core DMS business. Moreover, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.

> Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show customers of CDK's 3PA program, DMI, and IntegraLink on a monthly basis—and therefore, which customers joined and left at various times—to the extent that such information exists and is within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 95:**  All documents and communications regarding the length of time to complete a request to receive data from or send data to a CDK DMS through the 3PA program.

**RESPONSE:**  CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to the use of the phrase "complete a request to receive data from or send data to a CDK DMS" as vague, ambiguous, and undefined.  Further, the amount of time that it takes a vendor to send or receive data through the 3PA program—however defined—is irrelevant to any issue in Plaintiffs' actions.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications related to such issues, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 96:**  All documents and communications regarding making "push" functionality available for the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative, seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible

discovery. CDK incorporate its additional objections and response to "Individual Plaintiffs" RFP No. 19.

**REQUEST NO. 97:** All documents and communications regarding how frequently vendors are allowed to pull, poll, or transfer data from the CDK DMS.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as vague and ambiguous to the extent it does not specify whether it relates to data polling activities within the 3PA program or by some other means. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications regarding how frequently vendors can "pull," "poll," or "transfer" data from CDK's DMS, presumably under the 3PA program, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 5, 26 and 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 98:** All documents and communications regarding how CDK determined what kinds of data, information, or technical specifications to require vendors to provide as part of the 3PA certification process, including "workflow" models, live demonstrations of the add-on applications, justifications for how add-on applications use each data element, and the add-on application's security features.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks documents and information

protected from disclosure by an applicable privilege, and seeks information that is not relevant to

any party's claims or defenses and thus is beyond the scope of permissible discovery.

Specifically, how CDK determines what kinds of information and data are necessary for vendors

to provide as part of the 3PA certification process is irrelevant to any issue in Plaintiffs' actions.

CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks

"all" documents and communications related to such requirements for 3PA certification, from

the beginning of time to the present. As noted above, the limitations period applicable to

Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff"

complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable

conduct by CDK until much later than that. CDK further objects to this Request to the extent it

seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 99:** All documents and communications regarding any CDK policies or guidelines designed to prevent competitively sensitive information submitted by vendors seeking 3PA certification from being shared with CDK's sales teams, add-on application development teams, or any other components of CDK other than those with direct responsibility for engineering the integration of the vendors' add-on applications with the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks documents and information

92

protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's policies and procedures for handling competitively sensitive information exchanged in the course of the 3PA certification process is irrelevant to any issue in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communication related in any way to the handling of such information, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 100:** All documents and communications regarding information, data, or technical specifications shared by vendors with CDK as part of the 3PA certification process used by CDK for any purpose other than engineering the integration of the vendors' add-on applications with the CDK DMS, including, for example, development of applications by CDK.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's handling of information provided by vendors in the course of the 3PA certification process is irrelevant to any issue in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communication related in any way to CDK's handling or use of such information, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs'

93

claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 101:** All pictures of the cake from party for the one-year anniversary of the 2015 agreements between CDK and Reynolds.

**RESPONSE:** CDK objects to this Request as not relevant to any claim or defense and thus beyond the scope of permissible discovery.  CDK also objects to this Request to the extent it assumes that CDK attended any "party" to commemorate the February 2015 agreements between CDK and Reynolds, or that there was a cake, or that the cake (if it existed) had anything to do with CDK.

Subject to and without waiving these or its General Objections, CDK states that based upon a reasonable investigation, it is not aware of any documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 102:**  This RFP incorporates all RFPs propounded by the Dealer Class Plaintiffs and formally requests all documents sought by those RFPs.

**RESPONSE:**  CDK objects to this Request as untimely, duplicative, grossly overbroad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as untimely pursuant to Paragraph B.6 of the Court's May 7, 2018 Case Management Order.  CDK also objects to this Request as overly broad and unduly burdensome in that it purports to duplicate 48 other Requests for Production served on behalf of the Dealer Class Plaintiffs, many of which have no

bearing or relevance to the "Individual Plaintiffs'" claims or any defenses thereto. This Request also violates the Case Management Order's directive for the parties to serve "additional, *non-duplicative*, coordinated discovery requests" on or before May 25, 2018.

Subject to and without waiving these or its General Objections, CDK states that to the extent it produces documents in response to the Dealer Class Plaintiffs' RFPs, those documents will in the normal course be provided to all other parties in the MDL.

Dated: June 22, 2018                                    Respectfully submitted,


                                                        */s/ Matthew Provance*
                                                        Britt M. Miller
                                                        Matthew D. Provance
                                                        Mayer Brown LLP
                                                        71 South Wacker Drive
                                                        Chicago, IL 60606
                                                        (312) 782-0600
                                                        bmiller@mayerbrown.com
                                                        mprovance@mayerbrown.com

                                                        Mark W. Ryan
                                                        Mayer Brown LLP
                                                        1999 K Street NW
                                                        Washington, DC 20006
                                                        (202) 263-3000
                                                        mryan@mayerbrown.com


                                                        *Counsel for Defendants*
                                                        *CDK Global, LLC*

95

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew D. Provance, an attorney, certify that I caused a copy of the foregoing **CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO "INDIVIDUAL PLAINTIFFS'" FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Matthew Provance*

PUBLIC VERSION

# EXHIBIT 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to: | Hon. Robert M. Dow, Jr. |
| *Motor Vehicle Software Corporation v. CDK Global, Inc., et al.* Case No. 1:18-cv-865 (N.D. Ill.) | |

**MOTOR VEHICLE SOFTWARE CORPORATION'S OBJECTIONS AND RESPONSES
TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to the Federal Rules of Civil Procedure and the governing Local Rules, Motor Vehicle Software Corporation ("MVSC") submits the following Responses and Objections to Defendants The Reynolds and Reynolds Company's ("Reynolds"), CDK Global, Inc.'s ("CDK"), and Computerized Vehicle Registration's ("CVR") (collectively "Defendants") First Set of Requests for Admission.  MVSC reserves the right to amend, supplement, and correct its objections or responses as necessary.  These objections and responses are subject to the Agreed Confidentiality Order ("Protective Order") entered by the Court in this case.

## GENERAL OBJECTIONS

These General Objections are incorporated into each specific response below as if they were fully repeated therein and will not be specifically repeated or referenced in each such response.  MVSC reserves the right to assert additional objections as necessary and/or appropriate.

1.     MVSC objects to each and every Definition, Instruction, and Request for Admission ("Requests") to the extent it attempts to alter the scope of discovery or impose obligations that are inconsistent with or exceed those required under the Federal Rules of Civil

Procedure, the Local Rules of the U.S. District Court for the Northern District of Illinois, any order of this Court, or any agreement between the parties.

2.      MVSC objects to the Requests to the extent they seek information protected by applicable privileges (including, but not limited to, the attorney-client privilege, joint defense or common interest privilege, and attorney work product privilege) or otherwise protected under applicable law.  In the event such information is produced in response to these Requests, such production is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other applicable ground for protecting such documents from disclosure.

3.      MVSC objects to the Requests to the extent they are vague, overly broad, unduly burdensome, irrelevant, duplicative, or not reasonably calculated to lead to the discovery of admissible evidence.

4.      MVSC's responses are made without waiver of and with preservation of all objections as to competency, relevancy, materiality, privilege, and admissibility of the responses and the subject matter thereof as evidence for any purpose and in any further proceeding in this action and in any other action; the right to object to the use of any such responses or the subject matter thereof, on any ground in any further proceeding in this action and any other action; and the right to object on any ground at any time to a demand or request for further response to these Requests or other discovery proceedings involving or related to the subject matter of the discovery to which these responses are provided.

5.      MVSC objects to the Requests to the extent that they seek information that is not reasonably available.  MVSC will provide only information that is reasonably available.

6.      MVSC objects to the Requests insofar as they seek information that is not relevant to the claim or defense of any party to this action nor reasonably calculated to lead to the

2

discovery of admissible evidence. By responding to these Requests, MVSC does not concede the relevance or admissibility of any information provided, and reserves the right to object to the relevance and admissibility of any information provided in response to the Requests.

7.      MVSC objects to the Requests insofar as they seek confidential, proprietary or trade secret information, the disclosure of which would cause irreparable competitive injury to MVSC, without providing adequate assurances that such information will not be disclosed. All confidential or proprietary materials or information provided are subject to the Protective Order entered in this case.

8.      MVSC objects to the Requests insofar as they purport to impose upon it a duty to provide information not within MVSC's possession, custody, or control. MVSC shall respond to the Requests on behalf of itself only.

9.      MVSC objects to the Requests to the extent that they contain or rely upon a misstatement of fact or law, or assume the existence of facts or events that do not exist or did not take place. Any answer of MVSC to a Request for Admission shall not be construed as an admission that any characterization of facts, circumstances, or legal obligations stated or implied in that Request is accurate. MVSC reserves the right to contest any such characterization as inaccurate.

10.     MVSC objects to the Requests to the extent that they are overbroad, cumulative, unduly burdensome, unreasonable, vague, indefinite, uncertain, imprecise, ambiguous, susceptible to multiple interpretations, and/or otherwise cannot reasonably be responded to.

11.     MVSC objects to the Requests to the extent that they call for information over an unreasonably long timeframe or over a time period for which MVSC does not maintain historical records.

PUBLIC VERSION

<u>**SPECIFIC OBJECTIONS AND RESPONSES**</u>

<u>**REQUEST FOR ADMISSION NO. 1**</u>

Admit that you have obtained data from a Reynolds DMS without a license from Reynolds.

<u>**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 1**</u>

MVSC objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. MVSC will construe this Request as concerning MVSC's current practices. MVSC further objects to this Request to the extent the legal term "license" is vague and ambiguous as used in this Request. MVSC further objects to this Request to the extent it incorrectly implies that MVSC "obtained data from a Reynolds DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers.

Subject to and without waiving the foregoing objections, denied.

<u>**REQUEST FOR ADMISSION NO. 2**</u>

Admit that you have obtained data from a CDK DMS without a license from CDK.

<u>**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 2**</u>

MVSC objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. MVSC will construe this Request as concerning MVSC's current practices. MVSC further objects to this Request to the extent the legal term "license" is vague and ambiguous as used in this Request. MVSC further objects to this Request to the extent it incorrectly implies that MVSC "obtained data from a CDK DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers.

Subject to and without waiving the foregoing objections, denied.

<u>**REQUEST FOR ADMISSION NO. 3**</u>

Admit that you did not obtain authorization from Reynolds prior to obtaining data from a Reynolds DMS using an independent data integrator.

PUBLIC VERSION

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 3

MVSC objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. MVSC further objects to this Request to the extent the legal term "authorization" is vague and ambiguous as used in this Request. MVSC further objects to this Request to the extent it incorrectly implies that MVSC "obtain[ed] data from a Reynolds DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers. MVSC further objects to the extent this Request incorrectly implies that MVSC needs the authorization of Reynolds to obtain a dealers' own data through a dealer-authorized independent integrator.

Subject to and without waiving the foregoing objections, MVSC denies that it has obtained data from a Reynolds DMS. MVSC admits that it has used dealer-authorized independent integrators for dealers that use the Reynolds DMS.

## REQUEST FOR ADMISSION NO. 4

Admit that you did not obtain authorization from CDK prior to obtaining data from a CDK DMS using an independent data integrator.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 4

MVSC objects to this Request as vague and ambiguous to the extent it does not state a specific time frame. MVSC further objects to this Request to the extent the legal term "authorization" is vague and ambiguous as used in this Request. MVSC further objects to this Request to the extent it implies that MVSC "obtain[ed] data from a CDK DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers. MVSC further objects to the extent this Request incorrectly implies that MVSC needs the authorization of CDK to obtain a dealers' own data through a dealer-authorized independent integrator.

5

Subject to and without waiving the foregoing objections, MVSC denies that it has

obtained data from a CDK DMS.  MVSC admits that it has used dealer-authorized independent

integrators for dealers that use the CDK DMS.

**REQUEST FOR ADMISSION NO. 5**

Admit that you are not a customer or competitor in any DMS market.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 5**

Admitted.

**REQUEST FOR ADMISSION NO. 6**

Admit that you provide EVR services to automobile dealers other than new car franchised
automobile dealerships.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 6**

MVSC objects to this Request the extent it incorrectly implies that EVR services

provided to franchised and non-franchised automobile dealerships are equivalent.  In general,

new car franchised dealerships use vendors, including EVR vendors, much differently than used

or non-franchised car dealerships.  For example, new car franchised dealerships use EVR

applications much more extensively than used or non-franchised car dealers.  Used and non-

franchised dealerships are not required, in many states, to provide EVR services at all.  MVSC

further objects because this Request is not related to any claims or defenses in this lawsuit.

Subject to and without waiving the foregoing objections, admitted.

**REQUEST FOR ADMISSION NO. 7**

Admit that you have no evidence of the existence of an unlawful horizontal conspiracy or
agreement involving Defendants prior to February 2015.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 7

MVSC objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 8

Admit that you have no evidence that the RCI terms and conditions offered to you by Reynolds were less favorable than the RCI terms and conditions offered to your competitors when offered.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 8

MVSC objects to this Request as compound. MVSC further objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects to the extent this Request concerns information that is within the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery. MVSC further objects to the extent the phrase "less favorable" is subjective, vague, and ambiguous.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 9

Admit that you have no evidence that the 3PA terms and conditions offered to you by CDK were less favorable than the 3PA terms and conditions offered to your competitors when offered.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 9

MVSC objects to this Request as compound. MVSC further objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects to the extent this Request concerns information that is within the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery.

7

PUBLIC VERSION

MVSC further objects to the extent the phrase "less favorable" is subjective, vague, and ambiguous.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 10

Admit that you have no evidence that the RCI terms and conditions offered to CVR by Reynolds were more favorable than the RCI terms and conditions offered to CVR's competitors when offered.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 10

MVSC objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects to the extent this Request concerns information that is within the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery. MVSC further objects to the extent the phrase "more favorable" is subjective, vague, and ambiguous.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 11

Admit that you have no evidence that the 3PA terms and conditions offered to CVR by CDK were more favorable than the 3PA terms and conditions offered to CVR's competitors when offered.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 11

MVSC objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects to the extent this Request concerns information that is within the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery. MVSC further objects to the extent the phrase "more favorable" is subjective, vague, and ambiguous.

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 12**

Admit that you have never participated in the Reynolds RCI program.

**REQUEST FOR ADMISSION NO. 12**

MVSC objects to this Request to the extent the phrase "participated in the Reynolds RCI program" is vague and ambiguous in this context. MVSC will construe "participat[ion]" in the RCI program as being RCI certified and purchasing data integration services through the RCI program.

Subject to and without waiving the foregoing objections, admitted.

**REQUEST FOR ADMISSION NO. 13**

Admit that you have never participated in the CDK 3PA program.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 13**

MVSC objects to this Request to the extent the phrase "participated in the CDK 3PA program" is vague and ambiguous in this context. MVSC will construe "participat[ion]" in the 3PA program as being 3PA certified and purchasing data integration services through the 3PA program.

Subject to and without waiving the foregoing objections, admitted.

**REQUEST FOR ADMISSION NO. 14**

Admit that you are not a competitor of either of the managed interface programs (RCI and 3PA) provided by Reynolds and CDK.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 14**

MVSC objects to this Request as compound.

Subject to and without waiving the foregoing objections, MVSC admits that it does not offer data integration services.

**REQUEST FOR ADMISSION NO. 15**

Admit that MVSC has been more successful in the California EVR market as compared to the Illinois EVR market in part because California laws and regulations do not require a car buyer to receive registration and license plates at the time of sale.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 15**

MVSC objects to this Request to the extent the phrase "more successful" is subjective, vague, and ambiguous.

Subject to and without waiving the foregoing objections, MVSC admits that Defendants' joint efforts to deprive MVSC of access to data integration services has substantially hindered MVSC's ability to compete in Illinois and other states that require point-of-sale vehicle registration and licensing. MVSC otherwise denies this Request.

**REQUEST FOR ADMISSION NO. 16**

Admit that access to RCI and 3PA is not necessary for MVSC to compete in the California EVR market.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 16**

MVSC objects to this Request to the extent the phrase "not necessary" is vague and ambiguous.

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 17**

Admit that MVSC is the EVR market leader in California.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 17**

MVSC objects to this Request to the extent the phrase "market leader" is vague, ambiguous, and undefined.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 18

Admit that MVSC has a higher market share than CVR in the California EVR market.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 18

MVSC objects to this Request to the extent the phrase "higher market share" is vague, ambiguous, and undefined.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 19

Admit that CDK and Reynolds do not compete directly in the EVR market.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 19

MVSC objects to this Request as compound. MVSC further objects to this Request to the extent the phrase "compete directly" is vague and ambiguous.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 20

Admit that CDK and Reynolds jointly own CVR.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 20

MVSC objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects to the extent this Request concerns information that is within the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery.

Subject to and without waiving the foregoing objections, MVSC admits that, based on its current understanding, CDK owns 80% of CVR and Reynolds owns 20% of CVR.

## REQUEST FOR ADMISSION NO. 21

Admit that you were able to obtain data from a Reynolds DMS after February 2015 using an independent data integrator.

PUBLIC VERSION

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 21

MVSC objects to this Request to the extent it incorrectly implies that MVSC "obtain[ed] data from a Reynolds DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 22

Admit that you were able to obtain data from a CDK DMS after February 2015 using an independent data integrator.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 22

MVSC objects to this Request to the extent it incorrectly implies that MVSC "obtain[ed] data from a CDK DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers.

Subject to and without waiving the foregoing objections, MVSC denies that it has obtained data from a CDK DMS after February 2015.  MVSC admits that it has used dealer-authorized independent integrators for dealers that use the CDK DMS after February 2015.

## REQUEST FOR ADMISSION NO. 23

Admit that you are currently able to obtain data from a Reynolds DMS using an independent data integrator.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 23

MVSC objects to this Request to the extent it incorrectly implies that MVSC "obtain[s] data from a Reynolds DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers.

Subject to and without waiving the foregoing objections, denied.

PUBLIC VERSION

**REQUEST FOR ADMISSION NO. 24**

Admit that you are currently able to obtain data from a CDK DMS using an independent data integrator.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 24**

MVSC objects to this Request to the extent it incorrectly implies that MVSC "obtain[s] data from a CDK DMS," as opposed to obtaining dealer data from MVSC's dealership customers or from agents of MVSC's dealership customers.

Subject to and without waiving the foregoing objections, MVSC denies that it currently obtains data from a CDK DMS. MVSC admits that it currently uses dealer-authorized independent integrators for dealers that use the CDK DMS.

**REQUEST FOR ADMISSION NO. 25**

Admit that you have no evidence that Defendants engaged in any consumer fraud or deception.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 25**

MVSC objects to this Request as compound. MVSC objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects because whether Defendants engaged in consumer fraud or deception are legal determinations.

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 26**

Admit that MVSC does not compete with CVR in any state other than California and Illinois.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 26**

Denied.

## REQUEST FOR ADMISSION NO. 27

Admit that you have no evidence that AIB, Inc. was offered terms or conditions by Reynolds or CDK for access to RCI and 3PA that materially differed from the terms that were offered to MVSC when offered.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 27

MVSC objects to this Request as compound. MVSC further objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects to the extent this Request concerns information that is within the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery. MVSC further objects to the extent the phrase "terms and conditions" and "materially differe[nt]" are vague, ambiguous, and undefined.

Subject to and without waiving the foregoing objections, denied.

## REQUEST FOR ADMISSION NO. 28

Admit that Reynolds allows EVR providers other than CVR and AIB access to its RCI program.

## MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 28

MVSC objects to this Request to the extent discovery is still ongoing and Defendants have not yet served MVSC-specific document productions. MVSC further objects to the extent this Request concerns information that is within the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery.

Subject to and without waiving the foregoing objections, MVSC can neither admit nor deny this Request.

## REQUEST FOR ADMISSION NO. 29

Admit that CDK allows EVR providers other than CVR and AIB access to its 3PA program.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 29**

MVSC objects to this Request to the extent discovery is still ongoing and Defendants

have not yet served MVSC-specific document productions.  MVSC further objects to the extent

this Request concerns information that is within the exclusive control of Defendants, not MVSC,

especially prior to MVSC-specific discovery.

Subject to and without waiving the foregoing objections, MVSC can neither admit nor

deny this Request.

**REQUEST FOR ADMISSION NO. 30**

Admit that CDK never offered standardized pricing of $49 per month for buyer, vehicle, and
financing data.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 30**

MVSC objects to this Request as compound.  MVSC objects to this Request to the extent

discovery is still ongoing and Defendants have not yet served MVSC-specific document

productions.  MVSC further objects to the extent this Request concerns information that is within

the exclusive control of Defendants, not MVSC, especially prior to MVSC-specific discovery.

Subject to and without waiving the foregoing objections, denied.

**REQUEST FOR ADMISSION NO. 31**

Admit that you have no evidence that Defendants entered into a market allocation agreement.

**MVSC RESPONSE TO REQUEST FOR ADMISSION NO. 31**

MVSC objects to this Request to the extent discovery is still ongoing and Defendants

have not yet served MVSC-specific document productions.

Subject to and without waiving the foregoing objections, denied.

PUBLIC VERSION

Dated:  June 22, 2018

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Joanna T. Zhang
Joshua Hafenbrack
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com

Gary Salomons
Daniel J. Friedman
**GABRIELSALOMONS, LLP**
16311 Ventura Blvd., Ste. 970
Encino, CA  91436
(818) 906-3700
gary@gabrielsalomons.com
daniel@gabrielsalomons.com

*Attorneys for Plaintiff Motor Vehicle Software Corporation*

16

**PUBLIC VERSION**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing Motor Vehicle Software Corporation's Objections and Responses to Defendants' First Set of Requests for Admission to be served by email upon the following individuals:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Derek T. Ho*

Derek T. Ho

PUBLIC VERSION

# EXHIBIT 13

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

July 26, 2018

*Via Electronic Mail*

Brian Ross, Esq.                              Matthew Provance, Esq.
Gibbs & Bruns LLP                             Mayer Brown
1100 Louisiana                                71 South Wacker Drive
Suite 5300                                    Chicago, IL 60606
Houston, TX 77002

Leo Casaria, Esq.
Sheppard Mullin
333 South Hope Street, 43rd Floor
Los Angeles, California 90071

      Re:     *In re Dealer Management Systems Antitrust Litigation,* MDL No. 2817

Dear Matt, Brian, and Leo:

On July 20 – last Friday – we discussed CDK's responses to the Individual Plaintiffs' RFPs. Given the deadlines in this case, we were assured that we would receive a prompt response on CDK's positions regarding the issues we discussed. We have yet to hear from CDK; please provide a response by tomorrow at close of business.

On July 23 – this past Monday – we discussed Reynolds' responses to the Individual Plaintiffs' RFPs. Similarly, given the deadlines in this case, we asked for a prompt turnaround on Reynolds' positions on the issues we discussed. We would also ask for a response from Reynolds by close of business tomorrow.

We propose a meet and confer on Monday, July 30, at either 11:00 a.m. ET or 1:00 p.m. ET to discuss Defendants' responses and finalize the areas where the parties may have agreement, and where they are at an impasse so that the Individual Plaintiffs can finalize their motions to compel on those issues. If those times do not work for Defendants on Monday, please propose a different time on that day that will work.

On our meet and confers, there were a handful of questions Defendants had, including specific documents you wanted Bates numbers for.

**CDK**

**RFP 47.** Among others, CDK-0076911 is an example of the type of document this RFP is designed to capture.

**RFP 65.** As discussed during the meet and confer, Authenticom has already provided Defendants with a list of its vendor customers in multiple places. *See, e.g.*, AUTH_00045915, AUTH_00045922, AUTH_00009614 (and similar financial documents), Preliminary Injunction Hearing PHX-97.

**RFP 66.** As discussed during the meet and confer, Authenticom has already provided Defendants with a list of its dealer customers. *See, e.g.*, Preliminary Injunction Hearing PHX-97.

**RFP 79.** This RFP asks for all documents regarding access by ReverseRisk to dealer data on CDK's DMS. You wanted us to provide written grounds for the relevance of this request. As you know, ReverseRisk is a Reynolds branded application ███████████████████████ ███████████████████████████████████████████████████████████ CDK-0048504; *see also* CDK-0048511 (███████████ ███████████████████ █ is directly probative of core issues in the case, including Reynolds and CDK cooperation, CDK's purported security concerns, and the alleged assessment within CDK that Authenticom represented an unacceptable risk both with respect to security and system performance degradation.

**RFP 95.** On our call, we discussed whether RFP 95 might be duplicative of RFP 22. We can confirm that RFP 95 is *not* duplicative of RFP 22, which seeks "documents and communications regarding the response time for 3PA interfaces from the time they are requested by a vendor until the time they are actually activated." That request is targeted on documents relating to the timeline of vendors requesting new 3PA interfaces, the implementation of those interfaces, and activation of those interfaces. In contrast, RFP 95 seeks "documents and communications regarding the length of time to complete a request to receive data from or send data to a CDK DMS through the 3PA program." This request is targeted at the latency of data integration through the 3PA program.

**RFP 96.** On our call, it was discussed that Request 96 might be duplicative of request 19. We can confirm that Request 96 *is* duplicative of Request 19; Request 19 should be considered the operative request on this topic.

**Reynolds**

**RFP 57.** Please see above response for CDK RFP 65.

**RFP 58.** Please see above response for CDK RFP 66.

**RFP 60.** This RFP seeks "Documents concerning Your cost of capital, cost of equity, cost of debt, and/or weighted average cost of capital." You wanted us to provide written grounds for the relevance of this request. Cost of capital serves as a measurement that would allow plaintiffs to more fully understand Reynolds's financial health, particularly long run profitability as compared to cost of investment and development. This, in turn, will shed light on any overcharges imposed by Reynolds, as enabled by Reynolds's anticompetitive conduct. Such metrics are thus directly probative of both liability and damages.

**RFP 61.**  This RFP seeks documents "concerning the economic value of data or data access to dealers, vendors, or DMS providers."  This RFP is intended to capture documents or communications reflecting analysis or discussion of the importance of dealer data and data access.  This importance would be reflected both in discussions of the qualitative and quantitative importance of dealer data.  This request is thus meant to target specific communications, presentations, reports, analyses, and similar documents that reflect or discuss the importance of access to dealer data and the quantitative and qualitative value of that data.

**RFP 80.**  This RFP seeks industry publications or industry reports with respect to data integration services.  As discussed during the meet and confer, the Individual Plaintiffs propose the following narrowing of RFP 80:

1) Communications with industry publications or industry reporting organizations or interest groups relating to data integration services.

2) Documents and reports generated by industry publications or industry reporting organizations or interest groups relating to data integrations services.

**RFP 86.**  As with CDK RFP 95, this request is targeted at the latency of data integration through the RCI program.

\*\*\*\*\*\*

We look forward to receiving your letters tomorrow confirming Defendants' positions on the various outstanding issues with respect to the Individual Plaintiffs' RFPs.  Please let us know when you are available on Monday – whether at 11:00 a.m. or 1:00 p.m. ET, or some other time – to finalize the issues in dispute.

Very truly yours,

*s/ Michael N. Nemelka*

Michael N. Nemelka

PUBLIC VERSION

# EXHIBIT 14

PUBLIC VERSION

# M A Y E R · B R O W N

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 31, 2018

Britt M. Miller
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

**B**Y **E-M**AIL

Michael N. Nemelka, Esq.
K**ELLOGG**, H**ANSEN**, T**ODD**, F**IGEL** & F**REDERICK**, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC  20036

Re:   *DMS Antitrust Litig.* MDL 2817

Dear Mike:

I'm writing to follow-up on our exchange of emails last night regarding the parties' discussions of the various "CDK" search terms proposed by plaintiffs in this MDL.  As noted in my email of last night, your statement that CDK is "refusing to run the search terms that CDK previously agreed to across any of the additional custodians that CDK agreed to" is incorrect.

Rather, again as I noted in my email last night, CDK was recently apprised of the search term results of running all of the search terms proposed by plaintiffs for CDK documents—the 100+ search strings agreed to as and between Authenticom and CDK last December and the 150+ search strings served by "all" of the MDL plaintiffs on May 25, 2018.

Specifically, we have been advised of the following:

- Running the Authenticom search terms on the collected population of the 13 proposed additional custodians (approximately 3 million documents) results in a **50%** hit rate—*i.e.,* it has returned **1.5 million documents** that would need to be reviewed for responsiveness to plaintiffs' discovery requests.  A copy of that hit rate report is included with this letter.

- Running the "MDL Plaintiffs'" search terms (the ones served May 25) against the entire collection of the 30 proposed custodians (minus those from the 17 Authenticom custodians' files that have already been initially determined to be responsive to Authenticom's discovery requests)—a total population of approximately 5.7 million documents—results in a **95%** hit rate—*i.e.*, it returned **5.4 million** documents that would need to be reviewed for responsiveness to plaintiffs' discovery requests.  A copy of that hit rate report also is included with this letter.

And although we are currently negotiating with MDL Plaintiffs, in good faith, proposed changes to the May 25 search terms in hopes of ultimately reducing the 95% hit rate noted above to something more reasonable, current hit reports still put the number of documents to be reviewed for responsiveness at approximately **800,000** documents.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Michael N. Nemelka, Esq.
July 31, 2018
Page 2

That is why Ethan and Jessica raised this issue with you yesterday and proposed our initial offer of compromise—namely that CDK would produce the responsive documents resulting from their review of the documents belonging to the 17 Authenticom custodians that hit on the December 2017 search terms (in addition, of course, to the over 800,000 documents (and over 2 million pages) it has already produced in this litigation) and would review the additional 800,000 (or whatever number ultimately results from the parties' negotiations) documents described above (hitting on the May 2018 terms), producing any documents from that collection that were responsive to plaintiffs' discovery requests.

We understand from the tenor of your email correspondence that this compromise is unacceptable to plaintiffs and, if we are interpreting your emails correctly, that plaintiffs believe that CDK is required to review the 1.5 million documents noted in the first bullet point above, as well as whatever non-duplicative portion of the 800,000 are still being negotiated. Your rationale for plaintiffs' position, as we understand it, is that CDK is a defendant in all of the cases in this MDL, that anything less than a full review (or production) of these documents is contrary to CDK's prior representations, that Reynolds is not taking the same position, and that plaintiffs' entire negotiation of search terms and custodians was premised on their understanding that all search terms would be applied to all custodians, full stop. If we have misunderstood plaintiffs' position, please let us know.

Without belaboring each of the individual points you raise (which we are sure will be addressed extensively by both parties if this issue goes to motion practice), we take issue with several of plaintiffs' statements. Specifically, we note the following:

- CDK's agreement to the Authenticom search terms back in December of last year was based solely on the hit rates that those terms produced with respect to the original 17 custodians. We could not anticipate, much less determine, at that time that plaintiffs would seek 13 additional custodians and serve an additional 164 search terms—much less that the Authenticom terms would produce such high hit rates when applied to those new custodians.

- All parties have consistently made clear—on both sides of the aisle—that their respective agreements on search terms were conditional on hit rates and burden analyses. Indeed, we are unaware of any affirmative representation we made that all of the search terms would be run on all of the custodians regardless of any attendant burden. Rather, it was always our understanding that the parties were reserving their rights on these topics until any search terms could be fully tested. To be sure, it was our hope and expectation that we would be able to run one set of search terms across the entire collection of custodial documents, but again, we had no way to predict during our negotiations over the past few months that that the search terms would produce the instant results and, as you know, the parties' custodian discussions continued into last week.

- The fact that CDK is a defendant in all of the cases while Reynolds is not is irrelevant to the instant question. The conspiracy alleged by plaintiffs is the same and, with the

Mayer Brown LLP

PUBLIC VERSION

Michael N. Nemelka, Esq.
July 31, 2018
Page 3

       exception of a few state law claims brought by Cox, plaintiffs' allegations are not unique to CDK.

- Similarly, the fact that Reynolds is not raising this same issue with plaintiffs is of no import. As we understand it, not only are the document collections associated with the agreed-upon Reynolds's custodians significantly smaller than those of the CDK custodians, but the search terms Reynolds agreed to are returning significantly lower hit rates than the ones described above. In other words, Reynolds is not facing the same burden that CDK is currently facing and thus, it's not surprising that they are differently situated.

In short, we disagree that "any burden argument CDK may attempt to assert is meritless in light of its central role in these cases" as burden is always an issue parties (and courts) consider in the context of discovery.

And so, the question for plaintiffs becomes: is it the MDL plaintiffs' position that CDK must review and/or produce all 1.5 million documents returned by applying the Authenticom search terms to the 13 new custodians as well as whatever non-duplicative portion of the 800,000 returned by the search terms currently being negotiated, *in addition to* the hundreds of thousands of documents CDK has already reviewed resulting from the Authenticom search terms on the original 17 custodians (the results of which CDK intends to produce shortly), *in addition to* the over 800,000 documents CDK has already produced to plaintiffs in this litigation.

If the answer to that question is "yes" please let us know promptly so that we can discuss with our client and determine whether the parties are at impasse. If there is some other way forward, we're happy to discuss.

We look forward to hearing from you.

Regards,

Britt M. Miller

cc:     Plaintiffs' Co-Lead Counsel
        Reynolds's Lead Counsel
        Mark Ryan
        Andrew Marovitz
        Matthew Provance

PUBLIC VERSION

# EXHIBIT 15

| | |
|---|---|
| **From:** | Nemelka, Michael N. [mnemelka@kellogghansen.com] |
| **Sent:** | Sunday, August 05, 2018 11:22 PM |
| **To:** | 'Wedgworth, Peggy'; 'Brian T. Ross' |
| **Cc:** | Leo Caseria; SERVICE-EXTERNAL-DMS-MDL |
| **Subject:** | RE: DMS MDL -- Discovery Letter |

Dear Brian,

I do not want my email to be misinterpreted, which it seems like you may have been doing. We fully support Peggy and the dealer plaintiffs. The fact that Reynolds has refused to provide even the most basic financial information and data has made it necessary to seek the invoice information. We have been seeking the financial information and data since last year, and repeatedly in my letters over the past 9 months, we've stated that we need the Reynolds financial information and data, for our experts among other reasons. Even now, the night before the motion to compel deadline, Reynolds still has not let us know whether it will provide the information. That is unacceptable on such basic data for an antitrust case. If Reynolds were providing the full financial information and data, then the compromise on invoices as a sampling may be acceptable. But Reynolds has not agreed to provide the requested financial information and data. So when I wrote about the need to "get as much information as we can," please do not interpret that as anything other than a description of the need to get the required information and data, wherever it may still be, including in invoices.

Thanks,
Mike

**From:** Wedgworth, Peggy [mailto:pwedgworth@milberg.com]
**Sent:** Sunday, August 5, 2018 11:47 PM
**To:** 'Brian T. Ross' <bross@gibbsbruns.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>
**Cc:** Leo Caseria <LCaseria@sheppardmullin.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Subject:** RE: DMS MDL -- Discovery Letter

Brian,

I appreciate your email and effort to reach agreement, but Dealership Plaintiffs have requested transactional data and invoices at RFP 17, 36, and 44 to Reynolds regarding DIS and DMS. Reynolds has refused to produce before August 2014 regarding DMS and have only offered sampling of invoices. Therefore we are moving on these Requests for Reynolds' transactional data as well as the actual invoices.

For example, my understanding is you are not producing DMS data ███████████████████████████████████
██████████████████████████████████████████████, we are entitled to it as we have alleged in our complaint that CDK and Reynolds restricted competition in the DMS market thereby increasing prices paid by dealers. In addition, we are also entitled to invoices if they exist, especially if no transactional data is available to cover that time period.

Please let me know if you would like to speak further on this.

Peggy Wedgworth
Partner
MILBERG TADLER PHILLIPS GROSSMAN LLP
One Pennsylvania Plaza, Suite 1920

PUBLIC VERSION

New York, NY 10119
Main:  212-594-5300
Direct: 646-515-1269
pwedgworth@milberg.com

**vCard  Bio  Website**

---

**From:** Brian T. Ross [mailto:bross@gibbsbruns.com]
**Sent:** Sunday, August 05, 2018 9:46 PM
**To:** Mike Nemelka
**Cc:** Leo Caseria; SERVICE-EXTERNAL-DMS-MDL
**Subject:** Re: DMS MDL -- Discovery Letter

Mike,

We are continuing to work with our client to see whether we can agree to a proposal along the lines discussed late last week regarding financial statements.  We understand your position that plaintiffs feel they must move to compel tomorrow if an agreement is not reached.

However, your suggestion that plaintiffs' motion is now going to seek "all Reynolds DMS and RCI invoices" because you "feel the need to get as much information as we can" is absolutely counterproductive and inappropriate.  The issue of DMS and RCI invoices involves entirely separate RFPs and has always been framed by you as a separate negotiation.  We spent significant time and effort working through the separate negotiation of DMS and RCI invoices and reached an agreement last week, which you confirmed in writing in your August 3rd letter.  Any attempt by plaintiffs to retrade that agreement will not be appreciated by Reynolds and, we believe, will not be appreciated by the Court.

Reynolds reserves all of its rights.

Brian


On Aug 5, 2018, at 4:53 PM, Nemelka, Michael N. <mnemelka@kelloghansen.com> wrote:

Dear Leo and Brian,

Given that we have not heard from you on Reynolds' financial information, we have no choice but to move to compel on all of the missing Reynolds financial information and data.  At this point, we think it's important for the Court to understand what Reynolds is withholding in terms of financial information and data in this antitrust case.  Because Reynolds has only agreed to produce pricing and revenue information – but has generally refused to produce anything else, including information regarding profit and loss, gross and net margins, expenses, costs, projections, budgets, balance sheets, etc., whether at the product line, division, business, or company level – we also feel we need to get as much information as we can, and so that would include all of Reynolds' DMS and RCI invoices.   It's unfortunate Reynolds is not producing such basic financial information and data.  Perhaps something can be worked out in the motion process, but for now, we as MDL Plaintiffs are moving to compel.

Thanks,
Mike

---

**From:** Leo Caseria [mailto:LCaseria@sheppardmullin.com]
**Sent:** Saturday, August 4, 2018 2:55 PM
**To:** Nemelka, Michael N. <mnemelka@kelloghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kelloghansen.com>
**Subject:** RE: DMS MDL -- Discovery Letter

**PUBLIC VERSION**

Hi Mike,

I can confirm that we have agreement as to RFPs 63, 80-81 as stated in your letter.

On the RFPs relating to DMS and RCI financial information, we are still investigating and will get back to you as soon as possible.

On RFP 88 regarding security, we are still at impasse.  If that changes I will let you know.

Leo D. Caseria
Partner
213.617.4206 | direct
213.443.2800 | direct fax
LCaseria@sheppardmullin.com | Bio

**Sheppard**Mullin
Sheppard Mullin Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071-1422
213.620.1780 | main
www.sheppardmullin.com

---

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Friday, August 3, 2018 5:17 PM
**To:** SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Subject:** DMS MDL -- Discovery Letter

Dear Brian, Leo, and Matt,

Please see the attached correspondence following up on our various meet and confers.  I have highlighted in yellow where we believe Defendants still need to let us know their positions.  If you could please provide that information tonight, we'd appreciate it.  If not, we would ask for it first thing in the morning.

Thanks,
Mike

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC  20036
Direct:  (202) 326-7932
mnemelka@kellogghansen.com

NOTICE:  This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication.  Thank you.

Attention: This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

PUBLIC VERSION

# EXHIBIT 16

**PUBLIC VERSION**



Brian T. Ross
Partner
bross@gibbsbruns.com
713.751.5286

August 23, 2018

**Via Email**
Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215

**Via Email**
Peggy J. Wedgworth
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

Re:    *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864, MDL
No. 2817 (N.D. Ill.)

Dear Counsel:

I am writing with regard to Topic #5 in Plaintiffs' Omnibus Motion to Compel ("Reynolds and CDK Financial Information"). As noted in Mike Nemelka's last letter on August 3, 2018, Reynolds has been continuing to explore whether a compromise analogous to what was agreed to with CDK is possible. In short, I am pleased to report that we are now in a position to agree to such a compromise.

As you explained, CDK agreed to produce documents sufficient to show CDK's DMS and 3PA revenue, profit, projections, margin, and cost information—i.e, at the individual product line level (e.g., DMS), at the divisional level (e.g., Data Services), at the management level (e.g., the Retail Sales corporate level), or some combination thereof—to the extent such documents / information exist. We understand that CDK has agreed to produce such documents from 2011 to the present, and that there is a dispute remaining as to the years 2009 and 2010.

Likewise, in an effort to reach a compromise, Reynolds is willing to produce documents sufficient to show Reynolds's DMS and RCI revenue, profit, projections, margin, and cost information to the extent maintained in the ordinary course of Reynolds's business from the years 2011 to the present.[1] Reynolds represents that such production will include monthly internal financial reports to management ███████████████████████████████

---

[1] Please note that at this time, Reynolds has only been able to locate information dating back to the fourth quarter of 2011, but if earlier 2011 information is located, it would be produced pursuant to this agreement.

Michael N. Nemelka
Peggy J. Wedgworth
August 23, 2018
Page 2 of 2

████████████████████████████████████████████████████ All such documents will be designated
"Highly Confidential - Attorneys' Eyes Only."

        As we have explained in previous correspondence, the information maintained by
Reynolds as identified above ██████████████████████████████████████████████████
████████████████████████████████████████████████ However, in the interest of
reaching this compromise, Reynolds would not be withholding information on that basis.

        As a part of this resolution, Reynolds would expect MDL Plaintiffs to confirm that
Reynolds is not required to produce internal financial reports for business units other than North
America DMS (which includes ERA, Power, and Data Services / RCI).

        In light of the upcoming deadline to file responses to motions to compel, please confirm
by close of business tomorrow that we have an agreement.  We understand if Plaintiffs wish to
reserve their motion with respect to the "2009 vs. 2011" date range issue, although for the reasons
set forth in footnote #1 above, we believe that issue is moot as to Reynolds.


                        Sincerely,


                        Brian T. Ross


Cc:      MDL Counsel Service List

PUBLIC VERSION

# EXHIBIT 17

From: **Wedgworth, Peggy** pwedgworth@milberg.com
Subject: **Topic #5 - Plaintiffs' Omnibus Motion to Compel - Reynolds Financial Information Response**
Date: August 29, 2018 at 11:40 AM
To: 'Brian Ross' (bross@gibbsbruns.com), bross@gibbsbruns.com, 'Leo Caseria' (LCaseria@sheppardmullin.com)
LCaseria@sheppardmullin.com
Cc: 'agulley@gibbsbruns.com' (agulley@gibbsbruns.com) agulley@gibbsbruns.com,
Nemelka, Michael N. (mnemelka@kellogghansen.com) mnemelka@kellogghansen.com, Ho, Derek T. (dho@kellogghansen.com)
dho@kellogghansen.com, McKenna, Elizabeth emckenna@milberg.com

Dear Brian,

Thank you for the call to discuss Reynolds' offer to produce certain financial information with regard to Topic #5. We are negotiating on Topic #5 with the understanding that all other topics in our Omnibus Motion to Compel are not affected by this possible agreement. After speaking with you, we review below our understanding of what you will produce, what you do not have, and what you are checking on for a possible agreement.

You will produce for 2011 to present, documents relating to Reynolds' DMS and RCI revenue, profit, projections, budgets, margins, expenses, and costs as such information was tracked and maintained by Reynolds in regular intervals. This will include production ███████████. If Reynolds ██ on requent basis (such as quarterly and yearly), then Reynolds will provide that information. Included within this information will be financial information related to ████████████ You are checking to determine if Reyno█████.



You represent that no data or hard copy documents exists with regard to financial information before the fourth quarter of 2011. We informed you that we would still pursue this part of the claim to ensure that Reynolds has carried out its duty and due diligence to search for this financial information.

If you can confirm these points above, we are hopeful that we can reach a compromise on this long-simmering issue. Though we requested a sample of the financial data, none has been provided. We will continue to negotiate with you nonetheless with the understanding that this offer from Reynolds will provide the best and most accurate and complete financial data that Reynolds has. We are available to speak today if you think a call would facilitate an agreement.

Thank you,
Peggy and Mike

PUBLIC VERSION

# EXHIBIT 18

PUBLIC VERSION



Brian T. Ross
Partner
bross@gibbsbruns.com
713.751.5286

August 29, 2018

**Via Email**
Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215

**Via Email**
Peggy J. Wedgworth
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

  Re:  *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864, MDL
     No. 2817 (N.D. Ill.)

Dear Mike and Peggy:

  I am writing with regard to Topic #15 in Plaintiffs' Omnibus Motion to Compel ("Reynolds Customer Relationship Management Data").

  Mike's last letter on the subject (August 3, 2018) stated that "we are conferring with Peggy and her team, and we will let you know what a fair compromise may be for you to search and produce responsive information from Reynolds' CRM." Unless I missed it, Reynolds never received such a proposal from Plaintiffs. Instead, Plaintiffs simply pressed forward with a motion to compel on this issue, and in that motion made the surprising and inaccurate assertion that "Reynolds refused to produce any documents from its CRM." (Dkt. No. 318 at 32).

  When Plaintiffs first inquired (in late July 2018) as to whether Reynolds uses a centralized CRM database, we promptly looked into the matter and reported to Plaintiffs that Reynolds does not use a CRM per se, but does use a centralized tool for tracking certain sales calls and opportunities, but that this unbranded internal solution (known within the company as "SMT") is not searchable and lacks the analytic and data management features typically found in CRM software. *See* 7/31/18 letter from L. Caseria. Regardless of whether one considers the SMT to be a "CRM" database—Reynolds does not, but ultimately that is not the real issue—Reynolds has never "refused to produce any documents" from the SMT.

**PUBLIC VERSION**

Michael N. Nemelka
Peggy J. Wedgworth
August 29, 2018
Page 2 of 2

To the contrary, Reynolds's concern throughout our dialogue has always been that ███████ ████████████████████████████████ *See* 7/31/18 Letter from L. Caseria; 8/3/18 Letter from B. Ross.

Despite Plaintiffs' failure to follow up on those discussions, Reynolds has continued over the past few weeks to work proactively and in good faith to evaluate and solve the challenges presented by the voluminous and unsearchable nature of the SMT. T███████████████████████████████████.

As such, we propose formally reopening the meet-and-confer process at your earliest convenience while the Court considers Plaintiffs' motion to compel. If both sides feel that initial discussions are constructive, then we would be amenable to jointly requesting that the Court table this part of the motion to compel while the details are worked out.

Please let me know your thoughts and availability for a further discussion on this issue.

Sincerely,

Brian T. Ross

Cc:     MDL Counsel Service List

PUBLIC VERSION

# EXHIBIT 19

PUBLIC VERSION

## Provance, Matthew D.

| | |
|---|---|
| **From:** | Provance, Matthew D. |
| **Sent:** | Wednesday, August 29, 2018 7:07 PM |
| **To:** | Hughes, John; FW-CLIENT-CDK-MDL-Team |
| **Cc:** | DMSTeam; Nemelka, Michael N.; Ho, Derek T.; Dorris, Daniel V.; Rudofsky, Benjamin L. |
| **Subject:** | RE: In re DMS. December 2017 Search Terms Proposal |
| **Attachments:** | CDK Hit Report - Pls Search Term Proposal_Revised Terms 08.3.2018_4 cust....pdf; CDK Hit Report - Pls Search Term Proposal_Revised Terms 08.21.2018_10 cu....pdf |

John –

Thank you for the proposal. It is returning (all-in) 1.643 million documents (plus families), another significant increase from Plaintiffs' last proposal prior to motions practice. Please see the attached hit reports. Once again, we appreciate the proposal, but we are not making any progress.

We disagree that CDK "has not provided the requested hit counts" for the various search term proposals that you have asked us to consider and respond to. Each time, CDK has provided hit counts for any proposed search term to which it objects, hit counts for any search term that it has proposed to modify, and "all-in" numbers representing the total review burden (unique hits, plus families) implicated by the proposal. This information is sufficient for Plaintiffs to fairly consider the parties' respective positions.

Your request for "custodian specific" hit counts associated with this latest proposal (or others) is not well taken. First, to obtain custodian-specific results, we would have to run the proposed search terms (and for 14 of our custodians, two sets of proposed search terms) on each custodian, essentially requiring 45 separate search term analyses. We don't have time for that, particularly at this point in the process. Second, a large percentage of the documents in our collection are associated with multiple custodians (e.g., an email on which multiple custodians are copied). It is not clear how those documents should be attributed to one or more of their custodians in "custodian-specific" hit reports. Therefore, we don't believe that custodian-specific hit reports are particularly helpful; what matters is the "all-in" number, which we have consistently provided.

Our team has spent several hours processing, troubleshooting, and evaluating Plaintiffs' August 21 and August 27 proposals, and our e-discovery vendor has spent considerably more time than that. It has not advanced the ball in terms of finding a potential compromise to our dispute; it has only moved the parties further apart. It does not seem likely that further proposals within Plaintiffs' framework are likely to produce materially different results.

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Hughes, John [mailto:jhughes@milberg.com]
**Sent:** Monday, August 27, 2018 1:36 PM
**To:** Provance, Matthew D.; FW-CLIENT-CDK-MDL-Team
**Cc:** DMSTeam; Nemelka, Michael N.; Ho, Derek T.; Dorris, Daniel V.; Rudofsky, Benjamin L.
**Subject:** RE: In re DMS. December 2017 Search Terms Proposal

Matt,

We had asked for the specific hit counts for the custodians at issue so that we could adjust our proposal as appropriate – that is, moving custodians from one list of search terms to the other in order to reduce the hit counts.  We are unable to do that because CDK has not provided the requested hit counts.  Nonetheless, we are willing to modify our proposal as follows:

- For Josh Douglas, Chris Morris, Trey Gerlich, and Scott Herbers, CDK will use MDL Plaintiffs' proposed search terms dated August 3, 2018.  Those are attached again here for your convenience.

- For the remaining new custodians (Brian MacDonald, Al Neitzel, Mike Joza, John Lilly, Jim Foote, Robert Marvin, David Wrobel, Jeffrey Barr, Michael Guentzel, and Mark Roman), CDK will use MDL Plaintiffs' proposed search terms dated August 21, 2018. Syntax errors noted in CDK's hit report from last night in terms numbered 39, 60, 70, and 131 have resulted in modifications of those terms. This list is also attached.

This proposal will substantially reduce the 1.411 million hit count from our August 3, 2018 proposal.  Please let us know whether CDK agrees with the proposal.  If not, we are willing to consider counter proposals.  To make any such discussions worthwhile, please provide the "all-in" hit count and the "custodian specific" hit count for our proposal and any counterproposal by CDK.

Best regards,
John

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Sunday, August 26, 2018 8:32 PM
**To:** Hughes, John; FW-CLIENT-CDK-MDL-Team
**Cc:** DMSTeam; Nemelka, Michael N.; Ho, Derek T.; Dorris, Daniel V.; Rudofsky, Benjamin L.
**Subject:** RE: In re DMS. December 2017 Search Terms Proposal

John –

Please see the attached hit reports generated for Plaintiffs latest proposal concerning the "December 2017" search terms to be applied to CDK's 14 additional document custodians. The total number of hits (plus family) have increased compared to Plaintiffs last proposal. All-in, the number of unique hits (plus family) resulting from both the December 2017 and May 2018 search terms has increased from approximately 1.411 million documents to approximately 1.740 million documents. This shouldn't be surprising given the nature of Plaintiffs' proposal, which was for us to run the December 2017 search terms "as-is" against the majority (8 out of 14) of CDK's new custodians.

This result (1.740 million) does not include the additional documents that would be added by fixing syntax errors introduced by a handful of the new searches proposed by Plaintiffs. Given that the total results are already higher than Plaintiffs' last proposal, we haven't attempted to fix the syntax errors, but they are identified in the corresponding hit report.

Although we are not opposed to further meet-and-confers, we are not sure how productive it will be to get on the phone to discuss these results. If you see it differently, please let us know and propose some times Monday and Tuesday that will work for Plaintiffs.

Matt

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**PUBLIC VERSION**

**From:** Hughes, John [mailto:jhughes@milberg.com]
**Sent:** Friday, August 24, 2018 8:41 AM
**To:** Provance, Matthew D.; FW-CLIENT-CDK-MDL-Team
**Cc:** DMSTeam; Nemelka, Michael N.; Ho, Derek T.; Dorris, Daniel V.; Rudofsky, Benjamin L.
**Subject:** Re: In re DMS. December 2017 Search Terms Proposal

Matt,

See attached for a word version of these terms if it will help expedite

John Hughes
Attorney at Law*
**Milberg Tadler Phillips Grossman LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
T:  212.594.5300
F:  212.868.1229
Jhughes@milberg.com

*Licensed in Michigan only

**From:** Provance, Matthew D. <MProvance@mayerbrown.com>
**Sent:** Wednesday, August 22, 2018 5:49:39 PM
**To:** Hughes, John; FW-CLIENT-CDK-MDL-Team
**Cc:** DMSTeam; Nemelka, Michael N.; Ho, Derek T.; Dorris, Daniel V.; Rudofsky, Benjamin L.
**Subject:** RE: In re DMS. December 2017 Search Terms Proposal

John –

As you are no doubt aware, Plaintiffs' request for a meet-and-confer regarding their latest search terms proposal on less than 24 hours' notice (as it came in last night after close of business) was not feasible. Of course, to properly evaluate Plaintiffs' proposal we will need to run it on our custodial datasets, essentially splitting our custodians up into different groups and running different sets of terms on each. That is a significant and time-consuming exercise. We will let you know when we have the results – at which point we can meet-and-confer. I am not certain – at least at this point – that we will be in a position to proceed tomorrow, as you suggest below. We will keep you posted.

Word versions of Plaintiffs' proposed searches may help expedite the process. Please send those to us if you're willing to share them.

Thanks,
Matt

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Hughes, John [mailto:jhughes@milberg.com]
**Sent:** Wednesday, August 22, 2018 4:28 PM
**To:** FW-CLIENT-CDK-MDL-Team

**PUBLIC VERSION**

**Cc:** DMSTeam; Nemelka, Michael N.; Ho, Derek T.; Dorris, Daniel V.; Rudofsky, Benjamin L.
**Subject:** RE: In re DMS. December 2017 Search Terms Proposal

Britt,

We have not heard back from you on the below. We had requested a meet and confer today at 5:00 p.m Eastern. It probably would be more productive to have the hit results before we talk, and of course that may be what your team is working on. Could you send us those hit results and then we can talk tomorrow?

Thanks,
John

---

**From:** Hughes, John
**Sent:** Tuesday, August 21, 2018 5:55 PM
**To:** CDK-MDL-Team@mayerbrown.com
**Cc:** DMSTeam; Nemelka, Michael N.; Ho, Derek T.; Dorris, Daniel V.; Rudofsky, Benjamin L.
**Subject:** In re DMS. December 2017 Search Terms Proposal

Counsel,

Please find the attached correspondence.

Thank you,

John Hughes
Attorney at Law*
**Milberg Tadler Phillips Grossman LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
T: 212.594.5300
F: 212.868.1229
Jhughes@milberg.com

*Licensed in Michigan only

---

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.
Information about how we handle personal information is available in our Privacy Notice.