**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to:<br>*Loop, LLC d/b/a AutoLoop v. CDK Global, LLC,*<br>Case No. 1:18-cv-2521 (N.D. Ill.) | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffery T. Gilbert<br><br>**PUBLIC-REDACTED** |

**PLAINTIFF AUTOLOOP'S OPPOSITION TO**
**DEFENDANT CDK GLOBAL, LLC'S MOTION TO DISMISS**
**AUTOLOOP'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

LEGAL STANDARD ................................................................................................................ 4

ARGUMENT ............................................................................................................................ 4

    I.    CDK Has No Right To Force AutoLoop To Arbitrate Its Claims Without Its Consent ............................................................................................................... 4

        A. CDK Has Waived Its Right To Seek Arbitration of AutoLoop's Claims ......... 4

        B. Equitable Estoppel Does Not Permit CDK To Compel Arbitration Contrary To the Parties' Agreement ......................................................... 7

        C. AutoLoop's Claims Against CDK Are Outside the Scope of Its Arbitration Agreement with Reynolds ...................................................... 15

    II.    AutoLoop Has Stated a Claim Under Section 1 of the Sherman Act (Counts I-II) ............................................................................................................... 16

        A. AutoLoop Has Sufficiently Alleged a Group Boycott ................................... 17

        B. AutoLoop Has Alleged an Unlawful Market-Division Agreement ................ 17

        C. AutoLoop Has Sufficiently Alleged Exclusive Dealing .................................. 19

    III.    AutoLoop Has Stated a Claim Under Section 2 of the Sherman Act (Count III) ................................................................................................................. 19

    IV.    AutoLoop Has Stated Its Claims Under Florida Law (Counts IV-V) .................. 20

CONCLUSION ......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
　　475 U.S. 643 (1986) ........................................................................... 9

*Acad. of Med. of Cincinnati v. Aetna Health, Inc.*,
　　842 N.E.2d 488 (Ohio 2006) ....................................................... 15, 16

*All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*,
　　135 F.3d 740 (11th Cir. 1998) ......................................................... 20

*Am. Needle, Inc. v. NFL*,
　　560 U.S. 183 (2010) ......................................................................... 18

*Angelopoulos v. Keystone Orthopedic Specialists, S.C.*,
　　2017 WL 2178504 (N.D. Ill. May 16, 2017) ..................................... 8

*Annecca Inc. v. Lexent, Inc.*,
　　345 F. Supp. 2d 897 (N.D. Ill. 2004) ................................................ 9

*Arthur Andersen v. Carlisle*,
　　556 U.S. 624 (2009) ..................................................................... 8, 12

*Authenticom, Inc. v. CDK Global, LLC*,
　　2017 WL 3017048 (W.D. Wis. July 14, 2017), *rev'd,* 874 F.3d 1019
　　(7th Cir. 2017) ............................................................................ 1, 17

*Banc of Am. Sec. LLC v. Indep. Tube Corp.*,
　　2010 WL 1780321 (N.D. Ill. May 4, 2010) .................................... 4, 7

*Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*,
　　846 F.3d 1297 (10th Cir. 2017) ...................................................... 21

*Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*,
　　50 F.3d 388 (7th Cir. 1995) ...................................................... 4, 6, 7

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*,
　　349 F.3d 376 (7th Cir. 2003) .......................................................... 19

*Cross v. Point & Pay, LLC*,
　　274 F. Supp. 3d 1289 (M.D. Fla. 2017) .......................................... 20

*Doe v. Archdiocese of Cincinnati*,
　　880 N.E.2d 892 (Ohio 2008) .......................................................... 11

*Entire Energy & Renewables, LLC v. Duncan*,
    999 N.E.2d 214 (Ohio Ct. App. 2013) ................................................................ 15

*Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*,
    304 F.3d 753 (7th Cir. 2002) ............................................................................... 4

*Ervin v. Nokia, Inc.*,
    812 N.E.2d 534 (Ill. App. Ct. 2004) .................................................................. 12

*Fazio v. Lehman Bros., Inc.*,
    340 F.3d 386 (6th Cir. 2003) ............................................................................. 15

*Fields v. Herrnstein Chrysler, Inc.*,
    2013 WL 772822 (Ohio Ct. App. Feb. 7, 2013) ................................................ 14

*Genaw v. Lieb*,
    2005 WL 435211 (Ohio Ct. App. Feb. 25, 2005) .............................................. 13

*Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*,
    744 F.2d 588 (7th Cir. 1984) ............................................................................. 17

*Gerig v. Kahn*,
    769 N.E.2d 381 (Ohio 2002) ............................................................................. 16

*Glob. Pac., LLC v. Kirkpatrick*,
    88 N.E.3d 431 (Ohio Ct. App. 2017) ................................................................. 13

*Guarantee Tr. Life Ins. Co v. Platinum Supplemental Ins. Inc.*,
    68 N.E.3d 481 (Ill. App. Ct. 2016) .................................................................... 12

*Hartford Fire Ins. Co. v. Henry Bros. Constr. Mgmt. Servs., LLC*,
    2011 WL 3563138 (N.D. Ill. Aug. 10, 2011) ............................................... 8, 10

*Henson, In re*,
    869 F.3d 1052 (9th Cir. 2017) ............................................................................. 9

*Hoffman v. Deloitte & Touche, LLP*,
    143 F. Supp. 2d 995 (N.D Ill. 2001) ............................................................ 12, 14

*Humana, Inc. Managed Care Litig., In re*,
    285 F.3d 971 (11th Cir. 2002), *rev'd sub nom.*
    *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003) ......................... 13, 14

*I Sports v. IMG Worldwide, Inc.*,
    813 N.E.2d 4 (Ohio Ct. App. 2004) .............................................................. 12, 13

*Judge v. Unigroup, Inc.*,
    2017 WL 3971457 (M.D. Fla. Sept. 8, 2017) ............................................... 11, 13

*Jurista v. Amerinox Processing, Inc.*,
    492 B.R. 707 (D.N.J. 2013) ................................................................. 17

*Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods.*,
    660 F.3d 988 (7th Cir. 2011) ............................................................... 6

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ............................................................. 16

*Lawson v. Life of the S. Ins. Co.*,
    648 F.3d 1166 (11th Cir. 2011) ........................................................... 12

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
    449 F. App'x 704 (10th Cir. 2011) ...................................................... 13

*McAfferty v. Conover's Lessee*,
    7 Ohio St. 99 (1857)............................................................................ 11

*McCualsky v. Appalachian Behavioral Healthcare*,
    100 N.E.3d 1049 (Ohio Ct. App. 2017)............................................... 10

*Markese v. Ellis*,
    229 N.E.2d 70 (Ohio Ct. App. 1967).................................................. 10

*Motor Vehicle Software Corp. v. CDK Global, Inc.*,
    2017 WL 5643163 (C.D. Cal. Oct. 2, 2017)................................... 1, 17

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) ............................................................ 12

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ............................................................ 14

*Nefores v. BrandDirect Mktg., Inc.*,
    2002 WL 31057387 (Ohio Ct. App. Sept. 14, 2002)......................... 14

*Ohio State Bd. of Pharmacy v. Frantz*,
    555 N.E.2d 630 (Ohio 1990) .............................................................. 11

*Pagan v. Integrity Sol. Servs., Inc.*,
    42 F. Supp. 3d 932 (E.D. Wis. 2014).................................................. 12

*Paper Sys. Inc. v. Nippon Paper Indus. Co.*,
    281 F.3d 629 (7th Cir. 2002) .............................................................. 7

*Peach v. CIM Ins. Corp.*,
    816 N.E.2d 668 (Ill. App. Ct. 2004) ................................................... 12

*Premovic v. Northshore Univ. Health Sys.*,
    2015 WL 71708 (Ill. App. Ct. Jan. 5, 2015) ................................................................ 12

*Protective Ins. Co. v. Montgomery Tank Lines, Inc.*,
    1989 WL 152527 (N.D. Ill. Dec. 8, 1989) ................................................................ 8

*Rhinehart v. Scutt*,
    2014 WL 5361936 (E.D. Mich. June 20, 2014) ................................................................ 17

*Riggs v. Patriot Energy Partners, LLC*,
    2014 WL 605668 (Ohio Ct. App. Feb. 13, 2014) ................................................................ 14

*Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    544 F.3d 752 (7th Cir. 2008) ................................................................ 8

*Ross v. Am. Express Co.*,
    547 F.3d 137 (2d Cir. 2008) ................................................................ 14

*Safeco Ins. Co. v. Jelen*,
    886 N.E.2d 555 (Ill. App. Ct. 2008) ................................................................ 9

*Sanchez v. CleanNet USA, Inc.*,
    78 F. Supp. 3d 747 (N.D. Ill. 2015) ................................................................ 12, 13

*Scheurer v. Fromm Family Foods LLC*,
    863 F.3d 748 (7th Cir. 2017) ................................................................ 8, 9, 11, 12

*SEC v. Steffes*,
    805 F. Supp. 2d 601 (N.D. Ill. 2011) ................................................................ 4

*Short v. Res. Title Agency, Inc.*,
    2011 WL 1203906 (Ohio Ct. App. Mar. 31, 2011) ................................................................ 14

*Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*,
    2015 WL 2403129 (D.N.J. May 20, 2015) ................................................................ 9

*Smith v. Adams & Assocs.*,
    2015 WL 5921098 (N.D. Ill. Oct. 9, 2015) ................................................................ 5, 7

*St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*,
    969 F.2d 585 (7th Cir. 1992) ................................................................ 5

*TFT-LCD (Flat Panel) Antitrust Litig., In re*,
    2011 WL 4017961 (N.D. Cal. Sept. 9, 2011) ................................................................ 14, 15

*Thomas v. Guardsmark, Inc.*,
    381 F.3d 701 (7th Cir. 2004) ................................................................ 8

*Trans Union Corp. Privacy Litig.*, *In re*,
    211 F.R.D. 328 (N.D. Ill. 2002) ........................................................................ 9

*U.S. Bank N.A. v. Wilkens*,
    2012 WL 892898 (Ohio Ct. App. Mar. 15, 2012) ........................................... 14

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ......................................................................................... 9

*Vhora v. Michelen N. Am., Inc.*,
    1999 WL 63682 (N.D. Ill. Feb. 4, 1999) ......................................................... 9

*Warciak v. Subway Rests., Inc.*,
    880 F.3d 870 (7th Cir. 2018) .............................................................. 10, 11, 13

*Wireless Tel. 911 Calls Litig.*, *In re*,
    2005 WL 2709286 (N.D. Ill. Oct. 20, 2005) .................................................... 5

## STATUTES AND RULES

Fla. Stat. Ann. § 501.203(3)(c) ............................................................................ 20

## OTHER AUTHORITIES

Manual for Complex Litigation (Fourth) (2004) .................................................. 17

**INTRODUCTION**

Plaintiff Loop, LLC ("AutoLoop") has brought suit against CDK Global, LLC ("CDK") on behalf of a class of automotive software vendors that have suffered harm resulting from CDK's anticompetitive conduct. As alleged in AutoLoop's Amended Complaint (Dkt. 194), CDK has imposed exclusive-dealing provisions on vendors, monopolized the data integration market for CDK-brand Dealer Management Systems ("DMS"), and entered into an agreement with nonparty The Reynolds and Reynolds Company ("Reynolds") – CDK's primary competitor in the DMS market – to boycott independent integrators and divide the data integration market between themselves. After eliminating all alternative sources of data integration, CDK raised the data integration fees charged to AutoLoop and other vendors up to tenfold.

Three federal district courts have held that the core allegations of AutoLoop's complaint state viable antitrust claims, including most recently this Court's Memorandum Opinion and Order in the *Authenticom* case (Dkt. 176, "*Authenticom* MTD Opinion"). *See also Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *6 (W.D. Wis. July 14, 2017), *rev'd on other grounds*, 874 F.3d 1019 (7th Cir. 2017); *Motor Vehicle Software Corp. v. CDK Global, Inc.*, 2017 WL 5643163, at *4 (C.D. Cal. Oct. 2, 2017) ("*MVSC*"). Because AutoLoop's allegations are even more detailed than the allegations held – correctly – to state a claim in the *Authenticom* MTD Opinion, CDK's motion to dismiss for failure to state a claim should also be denied.

Faced with the near-certain denial of its motion to dismiss on substantive grounds, CDK – for the first time in this case – argues that AutoLoop is required to arbitrate its claims against CDK, even though the contract between them contains no agreement to arbitrate. That argument fails for three independent reasons. First, CDK actively litigated in this Court – including pursuing extensive discovery against AutoLoop – without invoking arbitration until it lost its motion to dismiss in *Authenticom*. That is classic waiver: a party may not litigate in federal court only to

invoke arbitration when the judicial forum starts to seem unfavorable. Second, CDK's invocation of equitable estoppel to rely on an arbitration clause in AutoLoop's contract with *Reynolds* is unavailing. CDK's separate contract with AutoLoop contains no agreement to arbitrate, and, furthermore, states that it contains the parties' entire agreement. CDK cannot use equitable estoppel to override the parties' clear intent to preserve the right to sue in court. Also, under applicable state law, equitable estoppel requires detrimental reliance, which CDK does not (and cannot) show. CDK's argument that it can *benefit* from its unlawful conspiracy by availing itself of Reynolds's arbitration clause is legally baseless and perverse as a matter of antitrust policy and common sense. Third, AutoLoop's claims against CDK fall outside the scope of the arbitration clause in the Reynolds contract in any event.

## BACKGROUND

AutoLoop sells automotive software products and services to dealers, including applications that help dealers market, sell, and service cars. Am. Compl. ¶¶ 6-7. AutoLoop's applications, like those of other vendors, require access to dealer data stored on a dealer's DMS. *Id*. ¶¶ 8-9. CDK and Reynolds have together dominated the DMS market for decades. *See id*. ¶ 43. For many years, CDK touted the fact that dealers could share their data with vendors through independent data integrators, *see id*. ¶¶ 12, 64-68, but its policy changed abruptly in early 2015, when it entered into an agreement with Reynolds to block independent integrators, *id*. ¶¶ 95-109.

Through that agreement, CDK was able to seize control over dealer data stored on CDK-brand DMSs. *Id*. ¶ 3. Vendors had no choice but to access dealer data through CDK's own data integration services, and CDK promptly and dramatically raised its prices – AutoLoop went from paying about $79 per dealer rooftop per month to $730 per dealer rooftop per month. *Id*. ¶ 27. Eliminating data integration providers also enabled CDK to "tilt the table" in favor of its own software applications. *Id*. ¶ 91. And, ultimately, seizing control over dealer data served to protect

CDK's (and Reynolds's) lucrative DMS businesses and forestall the market's natural evolution toward less expensive and more efficient software solutions sold by vendors.  *Id*. ¶¶ 4, 21, 92.

AutoLoop's Amended Complaint cites the same detailed evidence that the Court deemed sufficient in *Authenticom*, including: (1) admissions by CDK and Reynolds executives, *id*. ¶¶ 103-104; (2) internal CDK presentations describing the need for "reciprocal agreements" with Reynolds, *id*. ¶ 94; (3) written agreements from February 2015 in which CDK and Reynolds allocated the data integration market, *id*. ¶¶ 96-97, 102; and (4) implementation of the conspiracy by CDK and Reynolds, *id*. ¶¶ 98-101.  AutoLoop's Amended Complaint also cites incriminating documents produced since briefing of the *Authenticom* motion to dismiss, including evidence of extensive coordination to eliminate competition in the data integration market.  *See id*. ¶ 106.

AutoLoop has separate contractual relationships with CDK and Reynolds.  The Reynolds Interface Agreement, executed on January 19, 2015, contains an agreement to arbitrate disputes ██████████████████████████████ ████████████████████████████████ Declaration of Michael N. Nemelka ("Nemelka Decl.") Ex. M § 6.12 (emphasis added). Thereafter, on January 12, 2016, nearly one year later, AutoLoop entered into a separate Managed Interface Agreement with CDK, ████████████████.  *See* Nemelka Decl. Ex. N, § 11(f).  That agreement has no arbitration clause.  Moreover, it states that it ███████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████  *Id.* § 11(c). The agreement also states that it ████████████████████████ ██████████████  *Id.* § 11(b).

3

## LEGAL STANDARD

AutoLoop's Amended Complaint must provide "a short and plain statement of the claim" that "raise[s] the possibility of relief above the speculative level." *SEC v. Steffes*, 805 F. Supp. 2d 601, 607 (N.D. Ill. 2011). "[T]he Court accepts as true all well-pleaded facts alleged by [AutoLoop] and all reasonable inferences that can be drawn therefrom." *Id*.

## ARGUMENT

### I. CDK Has No Right To Force AutoLoop To Arbitrate Its Claims Without Its Consent

#### A. CDK Has Waived Its Right To Seek Arbitration of AutoLoop's Claims

Even assuming CDK had a contractual right to compel AutoLoop to arbitrate (which it does not, *see infra* Points I.B, I.C.), CDK waived any such right because it "acted inconsistently with the right to arbitrate." *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 756 (7th Cir. 2002) (internal quotation marks omitted). CDK actively litigated against AutoLoop for several months – including by moving to dismiss AutoLoop's original complaint and pursuing extensive discovery against it – without ever asserting that AutoLoop was required to arbitrate based on AutoLoop's separate agreement with Reynolds.[1] That is waiver for three reasons.

*First*, CDK did not act diligently in asserting its purported arbitration right. *See id*. at 756-57 ("[D]iligence or the lack thereof should weigh heavily in the decision – '*did that party do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration?*'") (quoting *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)). CDK clearly did not assert arbitration at the "earliest feasible" time. It did not claim any right to arbitrate in moving to dismiss AutoLoop's original complaint, which contained substantially similar allegations and claims. *See* CDK Mem.

---

[1] Waiver is a question for this Court. *See Banc of Am. Sec. LLC v. Indep. Tube Corp.*, 2010 WL 1780321, at *4-6 (N.D. Ill. May 4, 2010) (St. Eve, J.).

4

in Supp. Mot. Dismiss AutoLoop Compl., Dkt. 171. By the time AutoLoop filed its initial complaint on April 9, 2018, CDK had known about AutoLoop's contract with Reynolds for nearly a year – at least since an AutoLoop representative testified at the preliminary injunction hearing in *Authenticom*. *See* Hr'g Tr. at 58-59, *Authenticom* Dkt. 165 (discussing Reynolds Interface Agreement). CDK had also already elected not to seek arbitration in response to the lawsuit filed by Cox Automotive, Inc. ("Cox Automotive"), another vendor with a Reynolds contract. Rather than seek to avoid litigation in this forum, CDK engaged in full-blown discovery, serving AutoLoop with 75 requests for production, 18 interrogatories, and 123 proposed search terms. *See* Nemelka Decl. Exs. A, B, C and J. CDK even served new discovery requests in response to AutoLoop's Amended Complaint. *See* Nemelka Decl. Exs. F and G. AutoLoop has devoted hundreds of hours of in-house and outside attorney time responding to CDK's discovery requests, including reviewing tens of thousands of documents for a production process that is well underway. *See* Nemelka Decl. ¶¶ 15-16. *See id.* Exs. A-J. That conduct strongly supports waiver. *See*, *e.g.*, *In re Wireless Tel. 911 Calls Litig.*, 2005 WL 2709286, at \*3 (N.D. Ill. Oct. 20, 2005) (waiver where defendant "propound[ed] written discovery and participat[ed] in oral argument concerning discovery matters"); *Smith v. Adams & Assocs.*, 2015 WL 5921098, at \*5 (N.D. Ill. Oct. 9, 2015) (same where defendant "acquiesced to the setting of a discovery cut-off" and "prepared written discovery").

*Second*, CDK's conspicuous silence with respect to arbitration in comparison to Reynolds indicates that CDK's choice to litigate in court was deliberate. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 589-91 (7th Cir. 1992) (significant consideration is whether the party delayed its request for arbitration to seek a tactical advantage). While Reynolds repeatedly and pointedly reserved its right to arbitrate, including at court hearings,

in briefing, and in status reports,[2] CDK has declined to join in Reynolds's reservations of rights and (until now) has never given any notice to the Court or any party that it believed it had a right to arbitrate under Reynolds's contracts.[3]  For example, whereas Reynolds reserved its right to seek arbitration when it responded to AutoLoop's requests for production, CDK did not.[4]  CDK's lengthy delay in even mentioning arbitration reinforces the conclusion that it affirmatively elected not to pursue any arbitration right in this case.  *See Cabinetree*, 50 F.3d at 391 ("Parties know how important it is to settle on a forum at the earliest possible opportunity, and the failure of either of them to move promptly for arbitration is powerful evidence that they made their election – against arbitration."); *cf. Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988, 996 (7th Cir. 2011) (no waiver when the defendant's "assertion of its right to arbitrate was not out of the blue" because it "mentioned its desire to arbitrate at every turn").

*Third*, the circumstances here strongly suggest that CDK's sudden pivot toward arbitration constitutes improper forum-shopping.  When CDK filed its motion to dismiss AutoLoop's original

---

[2] *See, e.g.*, Defs.' Mem. in Supp. of Mot. for Transfer at 2 n.1, *In re DMS Antitrust Litig.*, No. 2817 (J.P.M.L. Nov. 7, 2017), Dkt. 1-1 ("Reynolds files this motion without waiver of, and reserving all rights with respect to, the controlling arbitration provisions in its dealer and vendor contracts."); Defs.' Reply to Interested Party Resp. at 1 n.2, *In re DMS Antitrust Litig.*, No. 2817 (J.P.M.L. Dec. 27, 2017), Dkt. 48 (reserving Reynolds's rights "to compel arbitration, with respect to any future claims the *Cox Automotive* plaintiffs may assert against Reynolds"); Status Hr'g Tr. at 20-21 (Mar. 12, 2018), Dkt. 65 ("MS. GULLEY: . . . [I]f the new [vendor] we just heard about from Mr. Ho [i.e., AutoLoop] involves Reynolds, that would also be subject to the same [arbitration] issue."); *id*. at 16 ("MS. GULLEY: . . . Reynolds' contracts with its dealers and vendors have arbitration clauses").

[3] CDK's lone mention of arbitration referred to "Defendants" generally and expressly limited any reservation of rights to arbitration clauses in CDK's *own* contracts.  *See* Parties' (Corrected) Joint Initial Status Report at 2, Dkt. 64 ("Defendants reserve their rights to move to compel arbitration of any claims subject to any arbitration clauses contained in their *respective* dealer and vendor contracts.") (emphasis added).

[4] *Compare* Nemelka Decl. Ex. K (Reynolds's Resps. and Objs. to Individual Plaintiffs' First Set of Reqs. for Prod., ¶ 14 (June 22, 2018) (reserving the right "to arbitrate any claim by any Plaintiff")), *with* Nemelka Decl. Ex. L (CDK's Resps. and Objs. to "Individual Plaintiffs' " First Set of Reqs. for the Prod. of Docs. (June 22, 2018)).

complaint, without seeking arbitration, CDK's motion to dismiss Authenticom's nearly identical claims was still pending. By the time AutoLoop filed its Amended Complaint on June 5, 2018, however, the Court had denied the bulk of CDK's motion to dismiss in *Authenticom*. CDK invoked arbitration only *after* it had already failed to obtain dismissal of the core antitrust claims in this MDL. CDK's conduct here indicates that it "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration. It wanted to play heads I win, tails you lose." *Cabinetree*, 50 F.3d at 391. Waiver doctrine prevents such gamesmanship. *See Smith*, 2015 WL 5921098, at *5 (finding waiver when the defendant "desire[d] to determine whether this court or an arbitrator would be the most favorable forum for the defense"); *Banc of Am. Sec.*, 2010 WL 1780321, at *8 (finding waiver because "[i]t was only when it faced the prospect of dismissal of one of its claims . . . that Independence Tube halted its efforts in the federal courts and pursued its claim in arbitration").

### B. Equitable Estoppel Does Not Permit CDK To Compel Arbitration Contrary To the Parties' Agreement

AutoLoop's Managed Interface Agreement with CDK contains no arbitration clause and thus preserves both parties' right to litigate in court.[5] CDK's argument that the doctrine of equitable estoppel nevertheless permits it to piggyback on Reynolds's arbitration agreement with AutoLoop is incorrect for three independent reasons. First, AutoLoop's contract with CDK forecloses such an argument. Second, detrimental reliance is a necessary element of equitable estoppel under applicable state law, and CDK has failed to show that it relied on AutoLoop's contract with Reynolds. Third, "concerted misconduct" between co-conspirators is not sufficient

---

[5] CDK accuses AutoLoop (at 6) of "strategically" declining to sue Reynolds, but AutoLoop merely pursued its contractual right to sue CDK in court. "[T]he norm that every [antitrust] conspirator is responsible for the acts of every other," *Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281 F.3d 629, 632 (7th Cir. 2002), does not alter AutoLoop's contractual obligations to CDK.

to trigger equitable estoppel against the victim of that misconduct. CDK's contrary position is doctrinally wrong and would perversely reward conspirators for engaging in unlawful collusion.

### 1. Illinois Law Governs CDK's Equitable Estoppel Claim

Under *Arthur Andersen v. Carlisle*, 556 U.S. 624 (2009), "'traditional principles of state law' govern whether a contract, including an arbitration agreement, is enforceable by or against a non-party." *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752 (7th Cir. 2017) (quoting *Arthur Andersen*, 556 U.S. at 631). In this case, ████████████████████████

██████████, not Ohio law (which is the same in any event, *see infra* notes 9, 11-12).[6] ████

████████████████████████████████████████████████████ *see* Nemelka

Decl. Ex. N (Managed Interface Agreement) § 11(f), and that agreement is enforceable under well-settled Illinois law. *See Hartford Fire Ins. Co. v. Henry Bros. Constr. Mgmt. Servs., LLC*, 2011 WL 3563138, at \*5 & n.8 (N.D. Ill. Aug. 10, 2011) (Dow, J.) (applying Illinois law based on parties' choice-of-law clause); *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704-05 (7th Cir. 2004) (Illinois respects a choice of law clause if the contract is valid and the law does not contradict Illinois's fundamental public policy).

Moreover, even setting the parties' choice-of-law clause aside, Illinois choice-of-law principles dictate application of Illinois substantive law, not Ohio law. "The presumption is that Illinois law, as forum law, will govern any state-law issue and, if a choice of law issue is raised, it will be decided by Illinois' own choice of law rules." *Protective Ins. Co. v. Montgomery Tank Lines, Inc.*, 1989 WL 152527, at \*2 (N.D. Ill. Dec. 8, 1989); *see also Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 544 F.3d 752, 759 (7th Cir. 2008). Accordingly, absent a contrary agreement between the parties, courts apply the forum's substantive law to claims

---

[6] CDK has waived the argument that state law other than Ohio's applies. *See Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 WL 2178504, at \*5 (N.D. Ill. May 16, 2017).

of agreement-by-equitable-estoppel. *See Sicily by Car S.p.A. v. Hertz Glob. Holdings, Inc.*, 2015 WL 2403129, at *4 (D.N.J. May 20, 2015) (applying the forum state's equitable estoppel doctrine); *see also Annecca Inc. v. Lexent, Inc.*, 345 F. Supp. 2d 897, 906 (N.D. Ill. 2004) (applying the law of the forum state – Illinois – to equitable estoppel defense).[7]  Moreover, Illinois clearly has a more significant relationship to the parties' dispute than Ohio.  *See In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 343 (N.D. Ill. 2002) (Illinois's "most significant relationship test" considers "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the place of business of the parties; and (4) where the relationship of the parties is centered").  CDK is headquartered in Illinois, its anticompetitive conduct was conceived of and directed from Illinois, and CDK's relationship with AutoLoop is centered in Illinois.  *See, e.g., Safeco Ins. Co. v. Jelen*, 886 N.E.2d 555, 560 (Ill. App. Ct. 2008) (Illinois law applied where the "injury-causing conduct occurred in Illinois," the defendants were domiciled in Illinois, and "the relationship between the parties arose in Illinois"); *Vhora v. Michelin N. Am., Inc.*, 1999 WL 63682, at *2 (N.D. Ill. Feb. 4, 1999) (similar).

### 2.     CDK's Agreement With AutoLoop Forecloses Its Attempt To Compel Arbitration

It is fundamental that "[a] party 'cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Scheurer*, 863 F.3d at 752 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  Here, AutoLoop and CDK plainly preserved their right to litigate in court.  The Managed Interface Agreement contains no

---

[7] CDK cannot invoke the choice-of-law clause in *Reynolds's* contract with AutoLoop, because a choice-of-law clause "is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears."  *In re Henson*, 869 F.3d 1052, 1059-60 (9th Cir. 2017) (per curiam) (applying forum state law to nonsignatory's argument for arbitration based on equitable estoppel, notwithstanding choice-of-law provision).  CDK's "rights, if any, to compel arbitration do not arise under [the Reynolds contract] itself," but instead derive from "state law principles of equity."  *Sicily*, 2015 WL 2403129, at *4.

arbitration clause. ██████████████████████████████████████

█████████████████████████████████████████████████████████

████████████ Nemelka Decl. Ex. N § 11(c). "To permit Defendant, a non-signatory, to invoke th[e]

equitable doctrine despite the express disavowal in its own contract of any intent to arbitrate any

dispute . . . would create the proverbial 'tail wagging the dog' scenario" and "would lead to an

unfair and unjust result." *Hartford Fire Ins.*, 2011 WL 3563138, at *8. "[T]he doctrine of

equitable estoppel is not available to [CDK]" or, alternatively, is waived given the parties' written

agreement that neither party is required to arbitrate. *Id.* (applying Illinois law).[8]

### 3.  CDK Cannot Satisfy the Detrimental Reliance Requirement for Equitable Estoppel

In any event, even if equitable estoppel were available, the doctrine would not entitle CDK

to arbitrate under Reynolds's agreement with AutoLoop, because CDK cannot demonstrate that it

detrimentally relied on that agreement, an essential element of equitable estoppel. *See Warciak v.*

*Subway Rests., Inc.*, 880 F.3d 870, 872 (7th Cir. 2018) ("In Illinois, [a] claim of equitable estoppel

exists where a person, by his or her statements or conduct, induces a second person to rely, to his

or her detriment, on the statements or conduct of the first person.") (internal quotation marks

omitted; alteration in original). Here, CDK has offered no argument that it detrimentally relied on

AutoLoop's agreement to arbitrate with Reynolds, such that, as a matter of equity, AutoLoop

should be estopped from suing CDK in court. And any such argument (which is now waived)

would be futile anyway, because CDK disclaimed any reliance on any prior statements or conduct

by AutoLoop when it agreed in the Managed Interface Agreement that ████████████████████

---

[8] Ohio law likewise recognizes that equitable estoppel is "formulated to prevent results contrary to good conscience and fair dealing," *Markese v. Ellis*, 229 N.E.2d 70, 73 (Ohio Ct. App. 1967), and can be waived, *see, e.g.*, *McCualsky v. Appalachian Behavioral Healthcare*, 100 N.E.3d 1049, 1055 (Ohio Ct. App. 2017).

███████████████████████████████████████ Nemelka Decl. Ex.

N, § 11(c) (emphasis added). The absence of detrimental reliance is fatal to CDK's equitable

estoppel claim under settled Circuit law. *See Warciak*, 880 F.3d at 872 (because "Subway [the

nonsignatory] cannot show detrimental reliance" as required by Illinois law, "Subway cannot rely

on estoppel to enforce T-Mobile's arbitration agreement against Warciak"); *Scheurer*, 863 F.3d at

753 (similarly declining to apply equitable estoppel under Wisconsin law because the nonsignatory

could not show detrimental reliance).[9]

### 4. CDK's "Concerted Misconduct" Standard Is Legally Erroneous and Inapplicable To This Case

Without acknowledging the hornbook requirement of detrimental reliance, or the

disavowal of any arbitration agreement in its own contract with AutoLoop, CDK argues (at 6-7)

that a nonsignatory can always use equitable estoppel to take advantage of a co-conspirator's

arbitration clause. *See* Dkt. 260 at 7 (arguing that equitable estoppel applies because AutoLoop

has alleged "interdependent and concerted misconduct" between CDK and Reynolds). That is

wrong.

CDK makes the same legal error the Seventh Circuit in *Scheurer* identified in rejecting the

same argument CDK makes here: CDK "cit[es] almost exclusively pre-*Arthur Andersen*

---

[9] The result would be no different if the court applied Ohio law. Like Illinois, the Ohio Supreme Court applies the traditional, black-letter test for equitable estoppel: "The party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable . . . ." *Ohio State Bd. of Pharmacy v. Frantz*, 555 N.E.2d 630, 633 (Ohio 1990); *see also Doe v. Archdiocese of Cincinnati*, 880 N.E.2d 892, 894-95 (Ohio 2008) ("The concept of estoppel is little changed since the mid-19th century, when we stated, 'As a general rule, a party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter.' ") (quoting *McAfferty v. Conover's Lessee*, 7 Ohio St. 99, 105 (1857)); *see also Judge v. Unigroup, Inc.*, 2017 WL 3971457, at *5 (M.D. Fla. Sept. 8, 2017) (holding that "[t]he defendants cannot compel arbitration of the agreements [between plaintiffs and a nonparty] governed under Ohio law" because "[t]he defendants advance neither fact nor law establishing detrimental reliance").

decisions" in which federal courts had expanded traditional equitable estoppel principles for the arbitration context. 863 F.3d at 752 n.3. For example, the principal Illinois case cited by CDK – *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001) – drew its equitable estoppel test from *MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999). But, as the Eleventh Circuit itself has since recognized, *MS Dealer* was "overruled or at least undermined to the point of abrogation by [*Arthur Andersen*]." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011); *see also Pagan v. Integrity Sol. Servs., Inc.*, 42 F. Supp. 3d 932, 933, 936 (E.D. Wis. 2014) (tracing *Hoffman*'s equitable estoppel test to a repudiated Middle District of Alabama opinion from the mid-1990s).[10] *Arthur Andersen* makes clear that federal courts may not create "[s]ubstantive federal arbitration law" to "'alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them).'" *Scheurer*, 863 F.3d at 753 (quoting *Arthur Andersen*, 556 U.S. at 630).

The critical point here is that Illinois appellate courts – the source of the relevant law here – have repeatedly held, at least since *Ervin v. Nokia*, 812 N.E.2d 534 (Ill. App. Ct. 2004), that they "decline to follow federal decisions that adopt th[e] expanded interpretation of equitable estoppel." *Id.* at 542; *see also Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins. Inc.*, 68 N.E.3d 481, 491-92 (Ill. App. Ct. 2016) ("[T]he appellate court has declined to follow the federal decisions adopting [*MS Dealer*'s] expanded interpretation of equitable estoppel."); *Premovic v. Northshore Univ. Health Sys.*, 2015 WL 71708, at *5 (Ill. App. Ct. Jan. 5, 2015) (reaffirming *Ervin*); *Peach v. CIM Ins. Corp.*, 816 N.E.2d 668, 674 (Ill. App. Ct. 2004) (same).[11] The "concerted misconduct"

---

[10] CDK also cites *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 758 (N.D. Ill. 2015), which (erroneously) draws its equitable estoppel test solely from cases applying pre-*Arthur Andersen* federal common-law standards.

[11] The lone Ohio case cited by CDK – *I Sports v. IMG Worldwide, Inc.*, 813 N.E.2d 4 (Ohio Ct. App. 2004) – not only relied on pre-*Arthur Andersen* federal common law cases in articulating

test is not good law.  *See Warciak*, 880 F.3d at 872 (following *Ervin*; requiring detrimental reliance).

Moreover, even under the "expanded" federal definition that has been abrogated by *Arthur Andersen* and rejected in Illinois, equitable estoppel did not extend to benefit co-conspirators.  As the Eleventh Circuit itself stated after *MS Dealer*, "[a] plaintiff's allegations of collusive behavior between the signatory and nonsignatory parties to the contract do not automatically compel a court to order arbitration of all of the plaintiff's claims against the nonsignatory defendant."  *In re Humana, Inc. Managed Care Litig.*, 285 F.3d 971, 975-76 (11th Cir. 2002) (stating that a contrary reading of *MS Dealer* "is only tenable if the passage is read completely out of context"), *rev'd on other grounds sub nom. PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003); *accord Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 710 (10th Cir. 2011).  Nor do CDK's cases from this Circuit apply equitable estoppel to co-conspirators.  In those cases, plaintiffs' claims were inextricably bound up with a close and preexisting *lawful* relationship between the defendant and the party that contracted for arbitration with the plaintiff.  It was that lawful relationship – not the fact that the defendant unlawfully conspired with another party – that was the basis for allowing the defendant to invoke the arbitration clause.  *See Sanchez*, 78 F. Supp. 3d at 751, 758 (franchise agreement between plaintiff-franchisee and regional "area" franchisor was enforceable by national "master" franchisor, which plaintiff treated as "a single concerted

---

an "alternate estoppel theory," *see id.* at 8, but its discussion was dicta because the court denied the motion to compel arbitration.  *See also Judge*, 2017 WL 3971457, at *4 n.4 ("*I-Sports* applies pre-*Arthur Anderson* federal estoppel law; *Arthur Anderson* requires the application of state law.").  Subsequent Ohio intermediate appellate cases have affirmed that the rights of a nonsignatory to invoke an arbitration agreement are governed by traditional equitable estoppel principles, which include detrimental reliance, as explained above (at n.9).  *See Glob. Pac., LLC v. Kirkpatrick*, 88 N.E.3d 431, 435 (Ohio Ct. App. 2017) ("Nonsignatories can be compelled to arbitrate if the party is bound to an arbitration agreement under ordinary contract and agency principles."); *Genaw v. Lieb*, 2005 WL 435211, at *4 (Ohio Ct. App. Feb. 25, 2005) (similar).

13

entity" with the "area" franchisor); *Hoffman*, 143 F. Supp. 2d at 1005 ("[T]he facts alleged in the complaints support a conclusion that [nonsignatories] D & T and/or Jefferies were acting as EPS's *agent(s)* at the time some or all of the alleged fraudulent misconduct occurred.") (emphasis added); *id*. (contract with arbitration clause was "intended to confer benefit on D & T, and . . . appear[s] to give D & T an[] additional right to enforce the agreement").[12]

Indeed, CDK's legal argument would lead to the perverse consequence that a defendant can "bootstrap [its] way into arbitration based on nothing more than the very conduct which constituted a violation of the antitrust laws in the first place." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4017961, at *5 (N.D. Cal. Sept. 9, 2011) (declining to apply equitable estoppel to force a plaintiff to arbitrate with a defendant based on an agreement between the plaintiff and a nonparty); *see also Ross v. Am. Express Co.*, 547 F.3d 137, 148 (2d Cir. 2008) ("[I]t would be wrong to suggest that a claim against a co-conspirator of a party alleged to have engaged in antitrust violations will always be intertwined to a degree sufficient to work an estoppel.") (internal quotation marks omitted); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) ("Mere allegations of collusion are insufficient to trigger equitable estoppel."). Such a result would turn *equitable* estoppel doctrine on its head, by allowing a defendant to use its own wrongdoing to obtain a windfall and deprive the victim its right to litigate in court. *See Humana*, 285 F.3d at 976 ("the lynchpin for equitable estoppel is equity, and the point of applying it to compel arbitration is

---

[12] The same is true, again, under Ohio law. *See*, *e.g.*, *Riggs v. Patriot Energy Partners, LLC*, 2014 WL 605668, at *8 (Ohio Ct. App. Feb. 13, 2014) (assignee); *Short v. Res. Title Agency, Inc.*, 2011 WL 1203906, at *3 (Ohio Ct. App. Mar. 31, 2011) (agent); *Nefores v. BrandDirect Mktg., Inc.*, 2002 WL 31057387, at *6 (Ohio Ct. App. Sept. 14, 2002) (parent-subsidiary); *U.S. Bank N.A. v. Wilkens*, 2012 WL 892898, at *10-11 (Ohio Ct. App. Mar. 15, 2012) (mortgage servicer); *Fields v. Herrnstein Chrysler, Inc.*, 2013 WL 772822, at *7 (Ohio Ct. App. Feb. 7, 2013) (multiparty commercial transaction). AutoLoop is aware of no Ohio appellate case – and CDK has not identified any – that supports CDK's argument that a company can invoke an *unlawful conspiracy* to compel arbitration under its co-conspirator's arbitration clause.

to prevent a situation that would fly in the face of fairness") (internal quotation marks omitted). Such a rule would also conflict with the purposes of Section 1 of the Sherman Act, since "[f]orcing [a plaintiff] to arbitrate because defendants entered into a complex, interdependent conspiracy would . . . impede the enforceability of the antitrust laws." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4017961, at \*5. The law does not support that unreasonable result.

### C.     AutoLoop's Claims Against CDK Are Outside the Scope of Its Arbitration Agreement with Reynolds

Finally, even if CDK were allowed to invoke Reynolds's arbitration clause, it would not be entitled to arbitration because AutoLoop's claims *against CDK* are not one of the subjects that AutoLoop and Reynolds agreed to arbitrate. ████████████████████████████████ ██████████████████████████████████████████████, under which disputes about the scope of arbitration turn on "whether the parties agreed to arbitrate the issue." *Acad. of Med. of Cincinnati v. Aetna Health, Inc.*, 842 N.E.2d 488, 493 (Ohio 2006). To answer this question, "a proper method of analysis . . . is to ask if an action could be maintained without reference to the contract . . . at issue." *Id*. at 494 (first alteration in original) (quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003)). When a nonsignatory like CDK seeks to take advantage of an arbitration clause, "a presumption *against* arbitrability applie[s]" when interpreting the scope of the provision. *Entire Energy & Renewables, LLC v. Duncan*, 999 N.E.2d 214, 221 (Ohio Ct. App. 2013) (emphasis added).

The Reynolds contract's arbitration clause only applies to disputes ████████████████ ████████████████  Nemelka Decl. Ex. M, § 6.12 (emphasis added). CDK cannot show that AutoLoop's claims against it arise from or relate to the *Reynolds contract*. AutoLoop's lawsuit against CDK could be maintained without reference to that contract because, as discussed above, AutoLoop's claims against CDK are based on either *CDK's* contract with AutoLoop or CDK's

15

unlawful conspiracy with Reynolds. The Amended Complaint briefly mentions AutoLoop's contract with Reynolds, but the gravamen of AutoLoop's claims is independent of the terms of the Reynolds contract.[13]

The Ohio Supreme Court's opinion in *Academy of Medicine* is instructive. There, the court affirmed that doctors' antitrust conspiracy claim against an insurer did not "relate to" the provider agreements between the doctors and the insurer because "the doctors' [cause of action] could be maintained without reference to the individual provider agreements." 842 N.E.2d at 491. Not only can AutoLoop's claims stand without reference to Reynolds's vendor contract, but unlike *Academy of Medicine*, the contract with the arbitration clause is between AutoLoop and a nonparty. AutoLoop and Reynolds did not agree to arbitrate such claims, and CDK cannot expand the arbitration clause beyond the scope of their agreement. *See Gerig v. Kahn*, 769 N.E.2d 381, 385 (Ohio 2002) (holding that "[b]ecause [the nonsignatories] derive their interest in the agreement through [a signatory], they can have no greater right than [the signatory]" under the agreement).

## II. AutoLoop Has Stated a Claim Under Section 1 of the Sherman Act (Counts I-II)

As AutoLoop previously explained, *see* Dkt. 242 at 2-5, the *Authenticom* MTD Opinion resolves CDK's motion to dismiss AutoLoop's core antitrust claims – horizontal conspiracy, exclusive dealing, and unlawful monopolization. *See* Dkt. 176. As this Court has noted, that Opinion is the "law of the case," Status Hr'g Tr. at 31:3-4 (June 18, 2018), Dkt. 211, and thus forecloses CDK's arguments for dismissal of AutoLoop's claims. In any event, the Court's rulings are correct.

---

[13] Whether AutoLoop's contract with Reynolds might provide useful evidence of damages in AutoLoop's case against CDK is not the relevant test. "[T]he correct analysis is . . . not whether the court must look to the [contract] to ascertain the requested relief. The emphasis of the case law is unmistakably on the claim itself, not the relief." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1131-32 (9th Cir. 2013).

## A.     AutoLoop Has Sufficiently Alleged a Group Boycott

AutoLoop's Amended Complaint contains the same factual allegations of concerted conduct as Authenticom's complaint, *see* Am. Compl. ¶¶ 95-113, and thus likewise states a claim for the reasons set forth in the *Authenticom* MTD Opinion (at 25-31). *See also MVSC*, 2017 WL 5643163, at *4 (finding group boycott claim viable); *Authenticom*, 2017 WL 3017048, at *1, 8 (finding claim was not only plausible but had a likelihood of succeeding on the merits – a higher standard than required to survive a Rule 12(b)(6) motion).[14] CDK's motion is merely an invitation to re-litigate issues it has already lost – multiple times before multiple judges – in derogation of the core principle that MDL proceedings are meant to "avoid conflicting rulings," not create them. *See* Manual for Complex Litigation (Fourth) § 20.131 (2004). Regardless, the Court's prior opinion is thorough, well-reasoned, and correct. CDK's remaining arguments for dismissal of the group-boycott claim are meritless for the reasons set forth in Cox Automotive's opposition to CDK's motion to dismiss. *See* Dkt. 126 at 7-9.

## B.     AutoLoop Has Alleged an Unlawful Market-Division Agreement

The *Authenticom* MTD Opinion held that CDK's February 2015 agreements with Reynolds "expressly prohibit Defendants from assisting in the hostile access of one another's DMSs," thereby imposing a "partial ceasefire and mutual forbearance between two rivals." Dkt. 176 at 26-27. Such an agreement to divide the market constitutes a *per se* Section 1 violation. *See Gen. Leaseways, Inc. v. Nat'l Truck Leasing Ass'n*, 744 F.2d 588, 595 (7th Cir. 1984).

In *Authenticom*, this Court found that Authenticom – as a competitor to CDK and Reynolds in the data integration market – was not plausibly harmed by Defendants' market-division

---

[14] *See*, *e.g.*, *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 778 (D.N.J. 2013) ("[T]he standard for obtaining injunctive relief is considerably higher than the standard for surviving dismissal [under Rule 12(b)(6)]."); *Rhinehart v. Scutt*, 2014 WL 5361936, at *11 (E.D. Mich. June 20, 2014) (same).

agreement. *See Authenticom* MTD Op. at 31-33. But the *Authenticom* MTD Opinion's ruling that *consumers* have antitrust standing to challenge that agreement confirms the validity of *AutoLoop's* claim that, as a consumer of data integration services, it was harmed by the reduction in competition and increase in price that resulted from Defendants' market-division agreement. *See id*. at 32 ("When a horizontal merger, price fixing, market division, or similar collaboration among competitors substantially reduces competition, consumers suffer while existing rivals benefit.") (quoting Areeda & Hovenkamp, *Antitrust Law* ¶ 348b).

CDK's argument (at 7-9) that the agreement was a decision to "wind down" the provision of data integration services for dealers using a Reynolds DMS cannot be credited on a motion to dismiss because it "requires an inference in Defendants' favor and [AutoLoop's] disfavor." *Authenticom* MTD Op. at 29 (rejecting the same argument). Indeed, CDK's characterization of the agreement as a "wind down" of its efforts to compete for Reynolds's customers is just a euphemism for unlawful market division. *See Am. Needle, Inc. v. NFL*, 560 U.S. 183, 193 (2010) ("[T]he Sherman Act . . . is aimed at substance rather than form.").

Moreover, as explained in the Cox Automotive's opposition to CDK's motion to dismiss (Dkt. 126 at 4-6, 9-11), the evidence already produced in discovery amply corroborates the unlawful market-division agreement. For example, AutoLoop's Amended Complaint includes evidence of a direct promise by a high-ranking Reynolds official to forbear from competition against CDK in the provision of data integration. *See* Am. Compl. ¶ 97 (Ex. 6). And in another telling document, a CDK executive described the February 2015 agreement as the "key" for Reynolds to fulfill its desire "to completely block Authenticom," the last remaining independent data integrator. *Id*. ¶ 93 (Ex. 5).

### C.     AutoLoop Has Sufficiently Alleged Exclusive Dealing

The Court held that Authenticom stated a plausible claim that CDK's contracts with vendors contain unlawful exclusive dealing provisions.  *See Authenticom* MTD Op. at 35-39. AutoLoop makes those same allegations, *see* Am. Compl. ¶¶ 114-126, and thus also states a claim. *See also* Cox Automotive Opp'n at 12-16, Dkt. 126.

### III.    AutoLoop Has Stated a Claim Under Section 2 of the Sherman Act (Count III)

1.     AutoLoop has adequately pleaded monopolization based on the same allegations found sufficient in the *Authenticom* MTD Opinion.  *See* Dkt. 176 at 47-50; *see also* Am. Compl. ¶¶ 47-50 (alleging that dealers are "locked in" to their DMS); *id.* ¶¶ 86-94, 132-144 (alleging that CDK abruptly "closed" its DMS after assurances that it would remain "open").  CDK rehashes arguments properly rejected in the *Authenticom* MTD Opinion.  *First*, CDK contends (at 17) that dealers knew of the "possibility" that the contractual bar on third-party DMS access "*could* be enforced," even if CDK had not enforced it before 2015.  But that factual assertion cannot be credited at this stage, especially given that (1) CDK's contracts permitted dealers to authorize their "agents" to access the DMS (Am. Compl. ¶¶ 65, 72, 88), and (2) the Amended Complaint is "replete with detailed allegations . . . showing that, before 2015, CDK publicly and loudly took the position that it permitted third-party integrator access." *Authenticom* MTD Op. at 47; *see also* Am. Compl. ¶¶ 64-68.[15]  *Second*, CDK claims (at 18) that AutoLoop has contradictorily alleged that dealers "industry-wide" (1) knew about CDK's high integration fees because they were "unwilling" to pay them, yet (2) were unable to evaluate the lifecycle cost of CDK's DMS.  Again,

---

[15] CDK's only citation (at 17-18) for the proposition that the terms of CDK's contracts are all that matter is *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003), a non-antitrust case.  CDK also mistakenly says (at 18) that "sophisticated businesses like AutoLoop" should know the terms of their contracts.  But CDK prevented *dealers* – which have a broad range of sophistication – from assessing the lifecycle cost of a DMS.

this is a factual contention, which the Court dismissed as "a stretch" because "[a] contract can prohibit vendors from sharing pricing information and a few vendors can do so anyway." *Authenticom* MTD Op. at 48.

**2.**     AutoLoop has also plausibly alleged exclusionary conduct by CDK.  CDK asks the Court (at 19-20) to dismiss AutoLoop's Section 2 claim to the extent that it relies on a refusal to deal with independent integrators.  But a horizontal conspiracy with Reynolds and exclusive dealing provisions with vendors and dealers are well-established bases for Section 2 liability.  *See Authenticom* MTD Op. at 50; *see also Buccaneer Energy (USA) Inc. v. Gunnison Energy Corp.*, 846 F.3d 1297, 1308-09 (10th Cir. 2017) ("*Trinko* simply does not speak to claims . . . alleging concerted refusals to deal.").

## IV.     AutoLoop Has Stated Its Claims Under Florida Law (Counts IV-V)

"Federal and Florida antitrust laws are analyzed under the same rules and case law."  *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 n.11 (11th Cir. 1998).  Likewise, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") defines "deceptive and unfair practices" to include "violations of '[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.' "  *Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1296 (M.D. Fla. 2017) (quoting Fla. Stat. Ann. § 501.203(3)(c)).  AutoLoop's plausible antitrust allegations are thus sufficient to deny CDK's motion to dismiss its FDUTPA claims.

## CONCLUSION

The Court should deny CDK's motion to dismiss AutoLoop's Amended Complaint.

Dated:  August 31, 2018 Respectfully submitted,

/s/ *Derek T. Ho*

Richard J. Prendergast
Michael T. Layden
Collin M. Bruck
**RICHARD J. PRENDERGAST, LTD.**
111 W. Washington Street, Suite 1100
Chicago, Illinois 60602
Telephone: (312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
cbruck@rjpltd.com

Jennifer L. Gregor
Kendall W. Harrison
Allison W. Reimann
**GODFREY & KAHN S.C.**
One East Main Street, Suite 500
Madison, WI 53703
(608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com
areimann@gklaw.com

Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
Joanna T. Zhang
Joshua Hafenbrack
Daniel S. Guarnera
Christine Bonomo
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com
dguarnera@kellogghansen.com
cbonomo@kellogghansen.com

*Counsel for Plaintiff Loop, LLC, d/b/a AutoLoop*

## <u>CERTIFICATE OF SERVICE</u>

I, Derek T. Ho, an attorney, hereby certify that on August 31, 2018, I caused a true and correct copy of the foregoing **PLAINTIFF AUTOLOOP'S OPPOSITION TO DEFENDANT CDK GLOBAL, LLC'S MOTION TO DISMISS AUTOLOOP'S AMENDED COMPLAINT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

 /s/ *Derek T. Ho*

Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com