# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Amy J. St. Eve |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-CV-2521 (N.D. Ill.) | |

**DEFENDANT CDK GLOBAL, LLC'S FIRST REQUESTS FOR THE
PRODUCTION OF DOCUMENTS TO LOOP, LLC, D/B/A AUTOLOOP.**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure, Defendant CDK Global, LLC ("CDK") hereby requests that Plaintiff Loop, LLC, d/b/a AutoLoop ("AutoLoop") produce all documents described below for inspection and copying at the offices of Mayer Brown LLP, 71 South Wacker Drive, Chicago, Illinois 60606, on or before 30 days after service hereof.[1] These Requests are to be responded to in accordance with the following Definitions and Instructions.

**DEFINITIONS**

1. "3PA" means CDK's Third-Party Access (3PA) Program.

2. Unless otherwise specified, "AutoLoop," "You," and "Your" means Loop, LLC, d/b/a AutoLoop, as well as its officers, directors, members, principals, employees, agents,

---

[1] CDK acknowledges that certain of the information sought by these Requests were previously requested, in whole or in part, in a December 7, 2017 third-party subpoena issued to AutoLoop in the matter captioned *Authenticom, Inc. v. CDK Global, LLC, et al.,* No. 18-cv-868 (N.D. Ill.) (formerly No. 17-cv-318 (W.D. Wis.)). AutoLoop, however, has not responded to that subpoena or otherwise engaged in third-party discovery in the *Authenticom* matter since filing its action. These Requests, therefore, are not intended to be duplicative of that third-party discovery. Rather, any overlapping requests are being served here to ensure that CDK receives full and complete information regarding the requested topics. To the extent AutoLoop intends to comply with the *Authenticom* subpoena, CDK is willing to meet and confer with AutoLoop and Reynolds (which issued the subpoena) to try to minimize duplication across AutoLoop's discovery responses in this and the *Authenticom* matter.

representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on AutoLoop's behalf, and any and all persons and entities affiliated with or controlled by AutoLoop.

3.　　"Application" shall mean any automotive software products or services, whether stand-alone, web-based, or otherwise and regardless of whether the applications is capable of being or is integrated with any DMS—including but not limited to inventory management, customer relationship management, and electronic vehicle registration and titling applications—utilized by Dealers, manufacturers, lenders and other businesses in the automotive industry.

4.　　"Authenticom" means Authenticom, Inc., as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on Authenticom's behalf, and any and all persons and entities affiliated with or controlled by Authenticom.

5.　　"CDK" means CDK Global, LLC, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on CDK's behalf, and any and all persons and entities affiliated with or controlled by CDK.

6.　　"CDK DMS" means any DMS licensed to a Dealer by CDK.

7.　　"CDK Proprietary Data" means data that are owned or created by CDK and licensed to DMS users, including, for example, service pricing guide information, operation codes and descriptions, and service labor hours and rates, regardless of whether those data have been re-keyed into another DMS field.

8. "Complaint" means the complaint You filed against CDK Global, LLC, on April 9, 2018, in the United States District Court for the Northern District of Illinois, in case number 18-cv-02521.

9. "Contracted Data Extractor" shall mean any Data Extractor with which You have contracted to provide Data Extraction Services.

10. "Data Extractor" shall mean a party who provides Data Extraction Services. For purposes of these Requests, this term is intended to include Data Integrators, as that term is used in the Complaint.

11. "Data Extraction Services" means the provision of services for extracting, cleansing, formatting, integrating, standardizing or organizing the data housed on a DMS.

12. "Dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer operating in the United States.

13. "DMS" means an enterprise system comprised of hardware, software, databases, and related data used by Dealers to manage and operate their dealerships, usually referred to as the DMS or Dealer Management System.

14. "OEM" means any Original Equipment Manufacturer.

15. "OEM Proprietary Data" means data that are owned or created by an OEM and licensed to DMS providers, including, for example, part numbers and descriptions, part costs, part return codes, part compensation values, part supersessions, operation codes and descriptions, and service labor hours and rates, regardless of whether those data have been re-keyed into another DMS field.

16. "Relevant Services" means the services that You provide as a Vendor to Dealers in the automotive industry.

17.     "Reynolds" means The Reynolds and Reynolds Company, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on Reynolds's behalf, and any and all persons and entities affiliated with or controlled by Reynolds.

18.     "Reynolds Proprietary Data" means data that are owned or created by Reynolds and licensed to DMS users, including, for example, service pricing guide information, operation codes and descriptions, and service labor hours and rates, regardless of whether those data have been re-keyed into another DMS field.

19.     "Third Party Proprietary Data" means data that are owned or created by any third-party and licensed to DMS providers, including for example, Motor labor times, third-party vehicle description data, and incentive data, regardless of whether those data have been re-keyed into another DMS field.

20.      "Vendor" means any third-party Applications provider that uses Dealer or DMS data to provide Dealers with services, including inventory management, customer relationship management, and electronic vehicle registration and titling.

## **<u>INSTRUCTIONS</u>**

1.     Unless otherwise indicated, each Request relates to the time period January 1, 2013 to the present (the "Relevant Time Period").

2.     You are instructed to produce all documents and communications identified by these Requests either as they are kept in the usual course of business or organized and labeled according to the record description to which they are deemed responsive.

3.     You are instructed to produce all documents and communications identified by these Requests that are in Your actual or constructive possession, custody, or control.

4.      Any noun used in the singular form shall be construed and applied so as to include the plural form also, and vice versa.

5.      Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request, except that documents responsive to more than one Request need be produced only once.

6.      Each and every non-identical copy of a document, whether different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

7.      If objecting to any Request, in whole or in part, the objection must state whether any responsive materials are being withheld on the basis of that objection in accordance with Fed. R. Civ. P. 34(b)(2)(c).

8.      If You become aware of any documents or communications requested in these Requests that have been destroyed, lost, misplaced, or are otherwise incapable of production, You are instructed to respond by providing the following information:

(a)      The type of document (*e.g.* e-mail, notes, letters, memorandum, etc.);

(b)      A description of the document and its contents;

(c)      The identity of the author of the document;

(d)      The circumstances under which the document was destroyed, lost, misplaced, or rendered otherwise incapable of production; and

(e)      The identity of all persons having knowledge of the documents or the circumstances under which the document was destroyed, lost misplaced or otherwise rendered incapable of production.

9.      In the event You assert any form of objection or privilege as a ground for not producing any documents or communications requested in these Requests, You must identify the legal grounds and facts supporting the objection or privilege in accordance with Fed. R. Civ. P. 26(b)(5) and any applicable local rules and orders issued in the above-captioned proceeding. With respect to each responsive document that is withheld on the basis of an applicable privilege or other protection against disclosure, You are instructed to:

(a)      Identify the author(s), sender(s), and recipient(s) of the document;

(b)      Identify the date(s) the document was created and distributed;

(c)      Identify the applicable privilege(s) or protection(s) against disclosure; and

(d)      Describe the nature of the document in a manner that will enable CDK to assess the applicability of the privilege(s) or protection(s) against disclosure that You rely on.

10.      This set of Requests shall be deemed continuing in accordance with Fed. R. Civ. P. 26(e). If You obtain or become aware of any further documents responsive to this set of Requests, You are required to produce such additional documents.

## **DOCUMENT REQUESTS**

### *Applications*[2]

1.      All advertising plans, business plans, strategic plans, estimates, revenue forecasts, sales or marketing plans or efforts, product launch plans, promotional programs, third party market research reports, or strategies, concerning Your Applications.

---

[2] The headers used in this document are for the convenience of the reader and should not be read to limit, in any way, the requests that appear beneath each.

2.     All documents that discuss the ability of Your Applications to compete with and/or replace traditional DMSs, including, but not limited to, the ability of Dealers to enter data directly into Your Applications in the first instance, bypassing the DMS completely.

3.     Documents sufficient to identify and describe the functionality of each Application that You have offered during the Relevant Time Period, and the number of Dealers who used each Application during each year of the Relevant Time Period.

4.     Documents sufficient to identify (1) all Dealers who used each of Your Applications and (2) the DMS providers they used for each month of the Relevant Time Period.

5.     Market studies, survey data, or any other source of the market share information on all Applications used by Your Dealer customers.

6.     Documents sufficient to identify Your share of Application sales (by Application type) for each month of the Relevant Time Period, in every way that You keep track of it.

7.     Documents sufficient to identify all competing Application providers and their overall shares and shares by Applications segments for each month of the Relevant Time Period.

8.     All documents related to any analyses comparing Your Applications (including their functionality, service quality, features, technology, capabilities, pricing, and/or price changes) to the Applications offered by CDK or other Vendors or otherwise assessing competition for Application customers.

9.     All documents related to Your allegation in Paragraph 28 of the Complaint that Your "products and services are superior" to those of CDK.

10.     Documents sufficient to identify all Dealers who have switched to or from one of Your Applications during the Relevant Time Period, and: (a) the Application that the Dealer

switched to (or from); (b) the effective date of the switch; (b) the number of Dealer stores that switched; and (c) the Dealer's tenure using the prior Application.

11.     All "win/loss" reports and documents that reflect Application customer switching.

12.     All documents reflecting communications with Dealers regarding complaints, shortcomings or disadvantages with respect to the functionality or capabilities of Your products and services.

13.     All documents related to Your offer and marketing of any bundled products and Relevant Services and compensation for solution gaps.

14.     All documents related to Your allegations in Paragraph 147 of the Complaint that CDK "withholds from AutoLoop the ability to create and modify repair orders using its SmartLane program," and "does not allow customers to sign repair orders in the dealer's service lane," while CDK's Service Edge program has these capabilities.

15.     All documents related to Your ability to create and modify repair orders using Your SmartLane program by accessing any non-CDK DMS (*e.g.*, DealerTrack, ADAM, or Autosoft), including, but not limited to, any related communications with Dealers.

### *Access to CDK or Reynolds DMS*

16.     Documents sufficient to identify for each year of the Relevant Time Period: (a) each Data Extractor that You have used to access any CDK or Reynolds DMS or the data maintained thereon; (b) the Dealers on whose behalf you engaged each Data Extractor; and (c) all DMS directories and files that were accessed by the Data Extractor.

17.     All documents related to any agreements between You and any Data Extractors for access to any CDK or Reynolds DMS or the data maintained thereon, including, but not limited to, the drafting, negotiation, interpretation, or enforcement of any such agreements.

18.     All documents related to pricing and/or services offered by Data Extractors for access to CDK or Reynolds DMSs or the data maintained thereon.

19.     All documents related to any CDK or Reynolds Data Authorization forms that You or any Contracted Data Extractor sent to Dealers, and any response(s) that You received.

20.     Documents sufficient to show all agreements with Dealers and/or Contracted Data Extractors regarding access to any CDK or Reynolds DMS or the data maintained thereon.

21.     Documents sufficient to show Your or any Contracted Data Extractor's methods of accessing, requesting, receiving, storing, securing, encrypting, or using data maintained on any CDK or Reynolds DMS or any CDK or Reynolds DMS username and password credentials through means other than approved 3PA or RCI integration, and any written policies, guidance, standards, procedures, or similar documentation that apply to Your or the Contracted Data Extractor's access methods.

22.     Documents sufficient to show all requests for, receipts of, or attempts by You or any Contracted Data Extractor to obtain username and password credentials for any CDK or Reynolds DMS, including, but not limited to, any requests for system administrator-level or "UUP user" access to a CDK DMS.

23.     All documents related to any circumstances in which You or any Contracted Data Extractor have accessed a CDK or Reynolds DMS or the data maintained thereon without first obtaining express, written consent or authorization from a Dealer purporting to permit such access.

24.     All documents related to any Dealer's declination to authorize or request to stop Your or any Contracted Data Extractor's access or extraction of data maintained on any CDK or Reynolds DMS.

25.     All documents discussing access privileges associated with Dealer DMS login credentials, including any documents or communications that show whether You or any Contracted Data Extractor have access to any non-Dealer owned data maintained in any CDK or Reynolds DMS, including, but not limited to, any OEM, Third Party, CDK or Reynolds Proprietary Data.

26.     All documents related to Your or any Contracted Data Extractor's development or installation of any "code-on-the-box" used to access data maintained on any CDK DMS or the data maintained thereon.  For the avoidance of doubt, this includes code-on-the-box installed by or for any of Your Applications.

27.     All documents related to whether Your or any Contracted Data Extractor's methods of DMS access, data syndication, writeback, or data extraction: (a) are prohibited by any applicable laws, regulations, or contractual agreements; (b) comply with data security, data privacy, or automotive industry standards or guidance; (c) cause data security, data integrity, or system burden issues; or (d) are otherwise objectionable.

28.     Documents sufficient to identify for each year of the Relevant Time Period: (a) all CDK DMSs (by Dealer) that You or any Contracted Data Extractor have accessed (directly or indirectly) through any means other than approved 3PA integration; (b) Your or any Contracted Data Extractor's means of accessing data maintained on the CDK DMS (*e.g.*, code-on-the box, Dealer username and password and screen-scraping); (c) all usernames and passwords that You or any Contracted Data Extractor have used to access the CDK DMS; and (d) all DMS directories and files that that You or any Contracted Data Extractor accessed.

29.     Documents sufficient to show all English statement queries that You or any Contracted Data Extractor have performed on a CDK DMS.

30.    Documents sufficient to show the date, time, content, volume, frequency, and duration of all queries that You or any Contracted Data Extractor have performed on any CDK DMS or the data maintained thereon through means other than approved 3PA integrations.

31.    All documents related to any data corruption, data integrity, or system performance-related issues experienced by any CDK or Reynolds Dealer, which were attributable to or otherwise related to a Vendor's access to the Dealer's licensed CDK or Reynolds DMS.

32.    All documents that refer or otherwise relate to: (a) CDK's or Reynolds's third-party access policies; (b) CDK's SecurityFirst program; and/or (c) CDK's "refreshed" 3PA program.

33.    All documents related to any efforts or "threats" made by CDK to detect, block, disable, or otherwise restrict Your or any Contracted Data Extractor's access to a CDK DMS or the data maintained thereon, and/or Your or any Contracted Data Extractor's efforts to evade CDK's blocking and detection efforts, including any attempts to bypass security features implemented by CDK and documents sufficient to identify and describe all scripts, programs, or executable files that You or any Contracted Data Extractor have created, used, or provided to Dealers for any of these purposes.

34.    All documents related to Your allegation in Paragraph 153 of the Complaint that a CDK employee "admitted in private conversation with a vendor that the rhetoric around 'security' has 'little credibility.'"

### *AutoLoop's 3PA Certification*

35.    All documents related to Your January 2016 3PA Agreement with CDK, including, but not limited to: (a) the decision to enter into the Agreement; (b) any analysis of the

financial impact of entering into the Agreement and the pricing terms therein; (c) all negotiations surrounding the Agreement; (d) any amendments to the Agreement; and/or (e) any analysis or communication concerning the legality, illegality, and/or scope of the Agreement.

36.     All documents that reflect Your awareness of Reynolds's admission into the 3PA program and/or the 3PA fees paid by Reynolds during the Relevant Time Period.

37.     All documents related to Your pass-through of 3PA fees to Dealers.

38.     All documents related to the 3PA certification, decertification, or lack of certification, of Your Applications, including, but not limited to, any related negotiations and/or amendments, any applications to join, or any discussions regarding pricing, security protocols, or terms of access.

39.     All documents related to Your allegation in Paragraph 136 of the Complaint that CDK requires AutoLoop to pay 3PA integration fees for five products despite AutoLoop only receiving 3PA services for two of its solutions.

*Data Security*

40.     All documents related to Your or any Contracted Data Extractor's data security policies (as they pertain to any Relevant Service), including, but not limited to, Your or any Contracted Data Extractor's protocols for inputting, pushing, or otherwise transferring data into or out of DMSs.

41.     All documents related to actual or suspected unauthorized third-party access to, misuse, or misappropriation of data maintained on any provider's DMS.

42.     All documents related to any analysis of data security, data integrity, or system performance risks caused by third-party access to any DMS or the data maintained thereon.

43. All documents and communications, whether internal or involving a third-party, that discuss or refer to security threats to any DMS, including but not limited to concerns regarding the security of data stored on a DMS.

44. All documents related to any Application, Data Extraction Service, or DMS, and which refer to: (a) the 2013 data breach against Target; (b) North Korea's June 2014 cyber attack against Sony Pictures Enterprise; (c) the August 2014 hack into Community Health System's patient information; (d) the 2017 Equifax data breach; (e) Cambridge Analytica's alleged data scraping of Facebook user's information; (f) the 2016 data security incident at DealerBuilt; or (g) any other attempted or successful cyber attacks or data security breaches.

45. Documents sufficient to show Your investments in or financing related to data security.

46. All documents related to Your cyber liability insurance.

*Pricing and Financial Information*

a. *Applications*

47. For each of Your Applications, documents sufficient to show all initial, one-time, and monthly recurring prices from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering.

48. Documents sufficient to show all initial, one-time, and monthly recurring prices that Dealers paid for non-AutoLoop Applications from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering. To the extent that these fees or charges differ depending on the DMS used by a Dealer, identify the fees by DMS (*e.g.*, AutoMate, CDK, Cox, Reynolds).

49.     For each of Your Applications, documents sufficient to show monthly revenue, costs (including variable costs and/or COGS), and profit (including profit margin) from January 1, 2011 to the present.

50.     Documents sufficient to show quarterly revenue and profit (including profit margin) for all Applications from January 1, 2011 to the present.

51.     Documents sufficient to show all integration and/or extraction fees paid by You for each of Your Applications on a monthly basis from January 1, 2011 to the present, and the entity to whom such fees were paid for each of Your Applications.

52.     Documents sufficient to show all integration and/or extraction fees or costs charged to Dealers for each of Your Applications on a monthly basis from January 1, 2011 to the present.  To the extent that these fees or costs differ depending on the DMS used by a Dealer, identify the fees by DMS (*e.g.*, AutoMate, CDK, Cox, Reynolds).

53.     Documents sufficient to show Your projections with respect to revenue and profit for each of Your Applications from January 1, 2015 to the present.

b.     *Data Extraction Services*

54.     Documents sufficient to show all initial, one-time, and monthly recurring fees that You paid to Data Extractors for each of Your Applications from January 1, 2011 to the present. Data should indicate the month each monthly charge is covering.

55.     Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on a CDK DMS.

56.     Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on each non-CDK DMS.

57.     Documents sufficient to show how data from each DMS was integrated into Your Applications.

*Miscellaneous*

58.     All documents regarding Dealers switching DMS providers, including, but not limited to, any discussions with Dealers regarding switching DMS providers.

59.     All documents analyzing the ability of Dealers to switch DMS providers, including, but not limited to, studies, reports, engagement letters, surveys, focus group results, and communications.

60.     Any studies or surveys (including, but not limited to, all data and documentary input and output) conducted by or for You reporting on any automotive Dealers' DMS and/or Application use.

61.     All documents related to the February 18, 2015 agreements between CDK and Reynolds described in Paragraph 96 of the Complaint, including all documents that reflect Your awareness of the agreements or of any term of the agreements.

62.     All documents that reflect coordinated conduct by CDK and Reynolds with respect to third-party DMS access programs, policies, business practices, strategy, or pricing, or that otherwise relate to Your claims that CDK has engaged in any illegal or anticompetitive activity or that competition in any market has been harmed.

63.     All documents related to Your allegation in Paragraph 5 of the Complaint that "the damage to AutoLoop alone from its antirust claims [is] in the millions of dollars," including all computations of claimed damages and all documents on which you rely to substantiate Your alleged damages.

64. Every document referred to, quoted, paraphrased, or excerpted in the Complaint, or otherwise relied upon as the basis for any allegation in the Complaint.

65. All documents You received from any non-parties in response to subpoenas, informal discovery requests, or other means in preparation for or connection with this litigation.

66. All documents and communications related to Your alleged injuries or damages.

67. All communications with Authenticom or its counsel regarding the subject matter of this litigation or the action that Authenticom filed against CDK and Reynolds in the United States District Court for the Western District of Wisconsin, Case No. 17-cv-318-jdp, including, but not limited to, communications in connection with the testimony You provided in the preliminary injunction hearing in the above-referenced case.

68. All documents provided by You to the United States Federal Trade Commission in connection with its investigation regarding CDK and Reynolds.

69. All documents related to any presentations that You have prepared or given, or meetings of Your board of directors, shareholders, or investors, that refer or relate to CDK, Your claims and allegations, or this litigation.

70. Documents sufficient to show Your policies and practices concerning the preservation, retention, storage, or destruction of any documents or ESI.

71. Documents sufficient to show Your organizational structure during the Relevant Time Period, including the identity of all officers, employees, investors, partners, owners, shareholders, or principals with management-level responsibility for any Relevant Services.

72. Any industry data (including survey data, market studies, or any other sources) that You have access to that provide information about Applications used by Dealers (including non-AutoLoop Applications).

Dated:  May 25, 2018

Respectfully submitted,

*/s/ Britt M. Miller*
Britt M. Miller
Andrew S. Marovitz
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
bmiller@mayerbrown.com
amarovitz@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202)263-3000
mryan@mayerbrown.com

*Counsel for CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

      I, Britt M. Miller, an attorney, certify that I caused a copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S FIRST SET OF REQUESTS FOR PRODUCTION TO LOOP, LLC, D/B/A AUTOLOOP.** to be served on MDL Co-Lead Counsel, Plaintiffs' Liaison Counsel, and Plaintiffs' Coordinating Counsel, as well as Defendants' counsel of record in the above-captioned proceeding via email in accordance with Fed. R. Civ. P. 5(b)(2)(E).


                                             _/s/ *Britt M. Miller*_____

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

*In re Dealer Management Systems Antitrust Litigation*, MDL 2817

This document relates to:

*Loop, LLC, d/b/a Autloop v. CDK Global, LLC,* Case No. 1:18-CV-2521 (N.D. Ill.)

No. 1:18-CV-864

Hon. Amy J. St. Eve

**DEFENDANT CDK GLOBAL, LLC'S FIRST SET OF
INTERROGATORIES TO LOOP, LLC, D/B/A AUTOLOOP**

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure, Defendant CDK Global, LLC ("CDK") hereby requests that Plaintiff Loop, LLC, d/b/a AutoLoop respond to the following Interrogatories within thirty (30) days from the date of service hereof. These Interrogatories are to be responded to in accordance with the following Definitions and Instructions.

**DEFINITIONS**

1.      "3PA" means CDK's Third-Party Access (3PA) Program.

2.      "Authenticom" means Authenticom, Inc., as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on Authenticom's behalf, and any and all persons and entities affiliated with or controlled by Authenticom.

3.      Unless otherwise specified, "AutoLoop," "You," and "Your" means Loop, LLC, d/b/a AutoLoop, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting

on AutoLoop's behalf, and any and all persons and entities affiliated with or controlled by AutoLoop.

4.      "CDK" means CDK Global, LLC, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on CDK's behalf, and any and all persons and entities affiliated with or controlled by CDK.

5.      "CDK DMS" means any DMS licensed to a Dealer by CDK.

6.      "Complaint" means the complaint You filed against CDK Global, LLC, on April 9, 2018, in the United States District Court for the Northern District of Illinois, in case number 18-cv-02521.

7.      "Data Extractor" means a party who provides Data Extraction Services. For purposes of these Requests, this term is intended to include Data Integrators, as that term is used in the Complaint.

8.      "Data Extraction Services" means the provision of services for extracting, cleansing, formatting, integrating, standardizing or organizing the data housed on a DMS.

9.      "Dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer operating in the United States.

10.     "DMS" means an enterprise system comprised of hardware, software, databases, and related data used by Dealers to manage and operate their dealerships, usually referred to as the DMS or Dealer Management System.

11.     "Identify," when used in reference to:

        (a)      an individual, means to state his or her name, present or last known home and business address(es) and telephone number(s), and present or last known business

affiliation including title and position;

(b)     a firm, organization, partnership, corporation or other business entity, means to state the correct name of the organization, type of organization (*e.g.*, corporation, partnership, firm or other entity), and present or last known address and telephone number;

(c)     a document, means to set forth the type of document (*e.g.*, letter, memorandum, notes, etc.), its date, author(s), addressee(s) (if any), title, present location and name of custodian.  It shall be deemed a sufficient answer to furnish true and legible copies of the documents asked to be identified, together with your answers to these interrogatories, provided that you specifically indicate the interrogatory, or portion thereof, for which the document is meant to serve as a response;

(d)     a communication, means to set forth the substance of the communication, the name and title of the person(s) making the communication, name and title of all parties to the communication, date and place of the communication, and whether such communication has been reduced to writing and, if so, an identification of such document(s);

(e)     a payment, means to identify the amount of the payment, the date on which the payment was made, the account into which the payment was deposited, the source of the payment, the account from which the payment was drawn, and the reason for the payment; and

(f)     a fact, means to set forth all facts explaining, concerning, causing or contributing to (whether positively or negatively) the information sought in the interrogatory.

12.     "OEM" means any Original Equipment Manufacturer.

13.     "Reynolds" means The Reynolds and Reynolds Company, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on Reynolds's behalf, and any and all persons and entities affiliated with or controlled by Reynolds.

14.     "Reynolds DMS" means any DMS licensed to a Dealer by Reynolds.

15.     "Vendor" means any third-party applications provider that uses Dealer or DMS data to provide Dealers with services, including inventory management, customer relationship management, and electronic vehicle registration and titling.

16.     "Your Data Extractor(s)" means any Data Extractor who has provided You with Data Extraction Services.

## **<u>INSTRUCTIONS</u>**

1.     Unless otherwise indicated, each Interrogatory relates to the time period January 1, 2013 to the present (the "Relevant Time Period").

2.     Rule 33 of the Federal Rules of Civil Procedure shall apply to any objection or claim of privilege asserted with respect to any of the Interrogatories herein.

3.     Notwithstanding any definition stated above, each word, term or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

4.     If, in answering these Interrogatories, you claim that any Interrogatory, Definition or Instruction is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as part of the response the language you claim is ambiguous and the interpretation of the language that you have used to respond to the Interrogatory.

5.     If you are unable to fully answer any of these Interrogatories, you shall answer to the fullest extent possible, specifying the reason(s) for your inability to answer the remainder, and stating whatever information, knowledge or belief you have concerning the answerable portion.

6.     These Interrogatories are continuing in nature and, to the extent that your responses may be enlarged, diminished or otherwise modified by information acquired subsequent to the production of your initial responses hereto, you are required, to the extent set forth in Rule 26(e) of the Federal Rules of Civil Procedure to produce promptly supplemental responses in writing reflecting such changes.

## INTERROGATORIES

1.     Specifically identify every term of any agreement between CDK and Reynolds that You allege is a *per se* violation of the antitrust laws.

2.     Identify each competitor of Autoloop's for the period January 1, 2013 to the present and, for each, the products or services on which it competes or competed with Autoloop.

3.     Identify all means (*e.g.*, screen-scraping, data "push," API, or other) by which any You or Your Data Extractors access or accessed data on CDK and Reynolds DMS platforms.

4.     Identify every instance when You received DMS data through a Data Extractor, including but not limited to Authenticom, without the Dealer's express consent.

5.     Describe all steps that You take to ensure that You have a Dealer's express authorization to obtain data from a CDK or Reynolds DMS on that Dealer's behalf.

6.     Describe all steps that You take to ensure that Your access to data maintained on a CDK or Reynolds DMS does not exceed a Dealer's express authorization.

7.     Describe all steps that You take or have taken to ensure that You and Your Data Extractors do not access data maintained on a CDK or Reynolds DMS that is proprietary to the DMS provider, OEMs, or to any other third parties.

8.     Describe all steps that You or Your Data Extractors take or have taken to secure data and/or prevent unauthorized access to data obtained from a CDK or Reynolds DMS.

9.     Identify all written policies, guidelines, or other documents maintained by You that reflect the steps described in Your responses to Interrogatories 5-8, above.

10.     Identify all scripts or executable programs that You or Your Data Extractors use or provide, or have used or provided, to Dealers to access data maintained on a CDK or Reynolds DMS, and describe their function.

11.     Identify every term or provision contained in CDK's standard agreements with Dealers and Vendors that You contend is unlawful and/or unenforceable.

12.     Identify the terms of access that You are seeking with respect to CDK DMSs, including but not limited to the price terms related to such access.

13.     Identify all facts and documents that form the basis of Your contention that CDK and Reynolds "impose anticompetitive restrictions on the use of [] data" Autoloop obtains from CDK and Reynolds DMSs, and that there is "no legitimate basis" for such restrictions. Compl. ¶ 25.

14.     Identify all facts and documents that form the basis of Your contention that CDK's and Reynolds' fees for access to and use of data obtained on their respective DMSs are "bloated" and "excessive." *See, e.g.,* Compl. ¶¶ 4, 126.

15.     Identify the number of times that You or Your Data Extractors have accessed a CDK DMS and/or queried data maintained on a CDK DMS during each month since January 1, 2013.

16.     Identify all facts and documents that form the basis of Your contention that CDK "tilts the table" with respect to You, as alleged throughout the Complaint. *See, e.g.*, Compl. ¶¶ 4, 22-23, 29.

17.     Identify every instance when a Dealer obtained data from a CDK or Reynolds DMS through the use of manual reporting tools, or any other method besides screen-scraping, and provided such data to any Data Extractor, including but not limited to Authenticom, to enable such Data Extractor to provide You with Data Extraction Services. For each instance, identify the method that the Dealer used to obtain the data from the DMS.

18.     Please describe in detail how, when, the manner in which, and the extent to which You believe You have been damaged as a result of the conduct alleged in the Complaint.

Dated:  May 25, 2018    Respectfully submitted,

         */s/ Britt M. Miller*
         Britt M. Miller
         Andrew S. Marovitz
         Matthew D. Provance
         MAYER BROWN LLP
         71 South Wacker Drive
         Chicago, IL 60606
         Tel: (312) 782-0600
         Fax: (312) 701-7711
         bmiller@mayerbrown.com
         amarovitz@mayerbrown.com
         mprovance@mayerbrown.com

         Mark W. Ryan
         MAYER BROWN LLP
         1999 K Street NW
         Washington, DC 20006
         (202) 263-3000
         mryan@mayerbrown.com

         *Counsel for CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, certify that I caused a copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S FIRST SET OF INTERROGATORIES TO LOOP, LLC, D/B/A AUTOLOOP** to be served on MDL Co-Lead Counsel, Plaintiffs' Liaison Counsel, and Plaintiffs' Coordinating Counsel, as well as Defendants' counsel of record in the above-captioned proceeding via email in accordance with Fed. R. Civ. P. 5(b)(2)(E).


_/s/ Britt M. Miller_____

728745083

# Exhibit C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Amy J. St. Eve |
| *Loop, LLC, d/b/a Autloop v. CDK Global, LLC*, Case No. 1:18-CV-2521 (N.D. Ill.) | |

**DEFENDANT CDK GLOBAL, LLC'S PROPOSED SEARCH TERM
AND CUSTODIAN LIST FOR LOOP, LLC, D/B/A AUTOLOOP**

Defendant CDK Global LLC ("CDK") submits the following list of proposed custodians and search terms for Plaintiff Loop, LLC, d/b/a AutoLoop ("Autoloop").[1]

The below proposed search terms and custodians only relate to Autoloop's obligation to conduct a reasonable custodian-based search for documents responsive to Defendants' document requests, and are in no way intended to limit Autoloop's obligation to also search for and produce potentially responsive information from non-custodial sources where Autoloop reasonably expects responsive information to be found (including, but not limited to, transactional or other data housed in a central database, or agreements or other documents saved on a central server or network).

**Proposed Custodians From Autoloop[2]**

1. <u>Steve Anderson</u> - Co-founder and Chief Executive Officer

2. <u>Graham Annett</u> - Vice President of Marketing

---

[1] All capitalized terms and acronyms take the meanings ascribed in Defendant CDK Global, LLC's First Requests For The Production Of Documents To Loop, LLC, d/b/a Autoloop, served concurrently herewith.

[2] CDK has included the titles of the specific individuals listed simply to aid the reader. This is in no way meant to limit Autoloop's search of relevant custodial documents. To clarify, CDK seeks all relevant custodial documents for such individuals, regardless of their title, during the Relevant Time Period.

3. <u>Dough Denham</u> - National Sales Director

4. <u>Alex Eckelberry</u> - Chief Operating Officer

5. <u>Patrick Kelly</u> - Vice President of Client Retention

6. <u>Sara Loehwing</u> - Senior Project Manager

7. <u>Tony Petruzzelli</u> - Senior Vice President, Sales

8. <u>Matthew Rodeghero</u> - Chief Product Officer

9. <u>Jim Thompson</u> - former Senior Director of Operations

10. The employees responsible for negotiating contracts with Data Extractors and Dealers.

11. The employees who are the main contacts with your Data Extractors and Dealers.

12. The employees responsible for evaluating and deciding which seller, provider, vendor, or supplier should be selected with respect to acquisitions of Data Extraction and Dealer products or services.

13. The employees responsible for security and privacy threats and/or policies with respect to data maintained on any DMS.

14. The employees with the most knowledge about your alleged damages in this Lawsuit.

15. The employees responsible for setting "integration" fees charged to Dealers customers of Autoloop's Applications.

**<u>Proposed Search Terms</u>**

| No. | Search Terms |
|-----|-------------|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) |
| 2 | (CDK OR Reynolds OR DMS OR or system) AND (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) |
| 3 | "Data Authorization" |
| 4 | (data /3 integrat*) OR (data /3 extract*) |
| 5 | (DMS OR "dealer management system") /5 market*) |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" |
| 7 | "nonpublic personal information" OR NPI |
| 8 | "personally identifiable information" OR PII |
| 9 | "Proprietary Data" |

| No. | Search Terms |
|-----|--------------|
| 10 | "secure web form" |
| 11 | "sensitive personal information" |
| 12 | "User Emulation" |
| 13 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) |
| 14 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) |
| 15 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track")) AND data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) |
| 16 | (compet* or threat* or challeng* or loss or lose or losing or superior* or compar*) w/15 (DMS or Drive or Dash or ODE or integrat* or app* or solution* or product or service) |
| 17 | (dealer w/10 data) AND (retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) |
| 18 | ((los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang* or mov*) w/15 (sale or business or contract or customer or dealer or vendor or integrator or DMS or "dealer management system") |
| 19 | ((pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) AND data AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") |
| 20 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR  access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) |
| 21 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") |
| 22 | ((up w/3 front) OR "up-front" OR instal* or initial or month* or recur* or annual or (set w/3 up) or setup) w/20 (fee* or pric* or charge or rate* or bill or cost* or pay*) |
| 23 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS |
| 24 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) |

| No. | Search Terms |
|-----|--------------|
| 25 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") |
| 26 | (*settle* or assign*) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR "multi district") |
| 27 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) |
| 28 | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) |
| 29 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) |
| 30 | (BOD or "Board of Directors" or shareholder or investor) AND (minutes or notes or present*) |
| 31 | (breach or hack or attack or data) AND (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire") |
| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) |
| 33 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) |
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) |
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) |
| 36 | (CDK OR Reynolds OR R&R OR RR OR DMS or "Dealer Management System" OR Cox OR DealerTrack) AND (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) AND (control or power or authority) AND (data or system) |
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") |
| 40 | (Compet* w/20 harm*) |

| No. | Search Terms |
|---|---|
| 41 | (contract* or agree*) AND (term or year* or length or period) |
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) |
| 44 | (data AND integration) w/20 market |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) |
| 46 | "Dealer Management System" w/5 market |
| 47 | "Dms function*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) |
| 49 | (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Reynolds OR Dealertrack OR Cox) AND (analy* OR forecast OR project* OR survey* or evaluat* or stud* or (market w/3 share) OR (market w/3 condition*) OR profit* OR compet* OR market or pric*) |
| 50 | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) |
| 51 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak or delete OR amend*) AND (contract* or agree* or provision* or section* or paragraph) |
| 52 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess |
| 53 | (exclusiv*or sole or only) w/20 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system") |
| 54 | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) AND ((pass w/5 through) or passthrough or shared or sent or "passed to" or "passed on" or "pass on") |
| 55 | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/20 (vend* or integrat* or appl* or Authenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") |
| 56 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") |
| 57 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) |
| 58 | (harm OR injur* OR disrupt* OR los* OR interrupt* OR cancel* OR end* OR stop*) w/15 (Reynolds OR R&R OR RR OR CDK) |
| 59 | (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative" |

| No. | Search Terms |
|---|---|
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) AND (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) |
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) |
| 62 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/15 (Rey* or "R&R" or RR or Cox or DealerTrack or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/5 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "auto mate" or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop) |
| 63 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (data or access* or integrat* or 3PA or "third party access" or "partner program" or "Access Program") |
| 64 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/15 (DealerVault or Authenticom or Integrat* or vendor* or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) |
| 65 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/15 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*))) |
| 66 | "Query Builder" OR (QB AND Reynolds) |
| 67 | ("Report Generator" OR "report scheduler") AND (schedule or automat*) |
| 68 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) |
| 69 | (R&R) or RR OR Rey* or *reyrey.com or Reynolds |
| 70 | "Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access" |
| 71 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) |
| 72 | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) |
| 73 | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) |
| 74 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com |
| 75 | (Superior Integrated Solutions) OR SIS OR *@4-superior.com |
| 76 | (CDK OR Reynolds OR RR* OR R&R or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/10 (corrupt* OR integrity)) OR (data w/10 security) OR complain* or investigat*) |

| No. | Search Terms |
|---|---|
| 77 | ((Third w/3 Party) or thirdparty or "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK or Reynolds or RR or R&R or Dealertrack or Cox or DMS or data or "Dealer Management System") |
| 78 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary |
| 79 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) |
| 80 | (unauthorized w/5 access) w/20 (data OR server OR information) |
| 81 | (win or los* or cancel* or switch or defect* or mov* or chang* or transfer*) w/20 (DMS or "dealer management system" OR CDK OR Rey* or "R&R" or RR or Cox or Dealertrack or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "Auto Mate" or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop or vendor or integrat*) |
| 82 | "secure web form" |
| 83 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) |
| 84 | Agreement w/20 (CDK OR Reynolds OR R&R OR illegal OR anticompet* OR alleg*) |
| 85 | anticompet* |
| 86 | antitrust |
| 87 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 |
| 88 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) |
| 89 | CDK or ADP or *cdk.com or *adp.com |
| 90 | Circumvent AND (security OR dms OR block*) |
| 91 | Cox or Autotrader or "Dealer Dot Com" or DealerTrack or "Dealer Track" or HomeNet or "Kelley Blue Book" OR vAuto OR VinSolutions or Xtime or 17-cv-925 |
| 92 | cyber w/5 insurance |
| 93 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" |
| 94 | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov |
| 95 | FTP w/3 push |
| 96 | hide or conceal or (cover w/3 up) or veil or bury |
| 97 | Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) |
| 98 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) |
| 99 | Lock w/10 account |
| 100 | OEM AND data |
| 101 | ProQuotes OR (Pro Quotes) OR *@proquotes.net |
| 102 | Pwd OR "Preshared Key" OR PSK OR "Private Key" |

| No. | Search Terms |
|---|---|
| 103 | Secur* w/20 (Audit* OR Standard OR proced*) |
| 104 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley |
| 105 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv-01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" |
| 106 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) |
| 107 | manual w/10 (report* or tool* or extract*) |
| 108 | (data or access or "third party" or thirdparty or "3rd party" or integrat* or extract*) AND (policy* or guideline* or rule* or requir*) |
| 109 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) |
| 110 | (DMS or "Dealer Management System" or dealer or franchise*) w/10 (agree* or contract) |
| 111 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS) |
| 112 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) |
| 113 | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract)) |
| 114 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") |
| 115 | ("solution gap*" OR bundl* /s (app* OR solution* OR service*)) |
| 116 | SmartLane* AND ("Service Edge*" OR CDK OR prob* OR issue* OR allow* OR access*) |
| 117 | CDK* AND (nondisclosure* or share* or provide*) AND (fee* OR charge*) |

| No. | **Search Terms** |
|---|---|
| **118** | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" |
| **119** | Non-DMS or (DMS w/5 alternative) |
| **120** | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) |
| **121** | (declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) |
| **122** | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell |
| **123** | Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort* |

Dated:  May 25, 2018    Respectfully submitted,

           */s/ Britt M. Miller*
           Britt M. Miller
           Andrew S. Marovitz
           Matthew D. Provance
           MAYER BROWN LLP
           71 South Wacker Drive
           Chicago, IL 60606
           Tel: (312) 782-0600
           bmiller@mayerbrown.com
           amarovitz@mayerbrown.com
           mprovance@mayerbrown.com

           Mark W. Ryan
           MAYER BROWN LLP
           1999 K Street NW
           Washington, DC 20006
           (202) 263-3000
           mryan@mayerbrown.com

           *Counsel for CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, certify that I caused a copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S PROPOSED SEARCH TERM AND CUSTODIAN LIST FOR LOOP, LLC, D/B/A AUTOLOOP** to be served on MDL Co-Lead Counsel, Plaintiffs' Liaison Counsel, and Plaintiffs' Coordinating Counsel, as well as Defendants' counsel of record in the above-captioned proceeding via email in accordance with Fed. R. Civ. P. 5(b)(2)(E).

_/s/ Britt M. Miller_

728746720

# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL 2817<br>Case No. 18 C 864 |
| This Document Relates to: | Hon. Robert M. Dow, Jr. |
| *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-CV-2521 (N.D. Ill.) | |

**PLAINTIFF AUTOLOOP'S OBJECTIONS AND RESPONSES TO
CDK GLOBAL, LLC'S FIRST REQUESTS FOR PRODUCTION**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Loop, LLC,

d/b/a AutoLoop, "AutoLoop" or "Plaintiff") hereby serves these objections and responses to

CDK Global, LLC's ("CDK") First Set of Requests for the Production of Documents.[1]

AutoLoop reserves the right to supplement its responses or document production if it learns of

additional information or responsive documents.  Any production of documents is subject to the

Agreed Confidentiality Order ("Protective Order") and the Stipulated Order Re: Discovery of

Electronically Stored Information ("ESI Protocol") entered by the Court in this case.

**GENERAL OBJECTIONS**

AutoLoop makes the following general objections to CDK's definitions, instructions, and

requests for production ("Requests"), which are hereby incorporated by reference and made part

of AutoLoop's response to each and every individually numbered request for production as if

fully set forth therein.  AutoLoop reserves the right to supplement, revise, correct, clarify, or

otherwise modify its objections and responses to each Request.  AutoLoop also reserves the right

_____

[1] AutoLoop filed an amended complaint on behalf of itself and a class of automotive software vendors on June 5, 2018, subsequent to CDK's transmittal of its First Set of Requests for the Production of Documents.

to assert any other applicable objections to these Requests, and to object to any other request relating to the subject matter of the responses herein. AutoLoop's response to any of the Requests is not a waiver of any of these rights.

1.      AutoLoop has not completed its investigations or discovery with respect to the information and facts that may be discoverable or relevant in this action.  AutoLoop reserves the right to supplement or amend its responses set forth below should additional responsive or relevant information or documents be discovered as its investigation proceeds.

2.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they seek discovery of information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, or other applicable privileges and protections against disclosures.  AutoLoop will not disclose or produce information protected by any such privilege or doctrine.

3.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they seek information that exceeds the permissible scope of discovery, including information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they attempt to impose duties upon AutoLoop that are not provided for by the Federal Rules of Civil Procedure, or any other applicable law or rule.

5.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they call for the production of documents not in the possession, custody, or control of AutoLoop.

6.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent the answers sought may be derived from publicly available information, where the burden of deriving the responsive information is substantially the same for CDK as it is for AutoLoop.

7.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they seek documents and information already in CDK's or The Reynolds & Reynolds Company's ("Reynolds") possession, custody, or control.

8.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they call for information not kept by AutoLoop in the ordinary course of business.

9.      AutoLoop objects to CDK's Requests to the extent they seek the disclosure of trial preparation or expert documents prior to the dates fixed for such disclosure in this case. Any disclosure of such documents is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other protection.

10.     AutoLoop objects to CDK's Requests to the extent they seek documents that are publicly available or otherwise equally available to CDK from other sources.

11.     AutoLoop objects to CDK's Requests to the extent they contain no temporal limitation.  Unless otherwise stated, AutoLoop's response will relate to the time period January 1, 2013, to the present.

12.     AutoLoop objects to CDK's Requests to the extent they request or call for the provision of documents covered by a Non-Disclosure Agreement or other contract barring dissemination.

13.     AutoLoop objects to the "Definitions" and "Instructions" to the extent they purport to change the common meaning of the English language with regard to any word or phrase.

14.     AutoLoop objects to the Requests to the extent they seek information that is more appropriately sought through another discovery device.

15.     AutoLoop objects to the Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this action.

16.     AutoLoop objects to the Requests as overly broad and unduly burdensome to the extent that they call for the production of "all" documents when documents "sufficient to show" would suffice to provide the relevant facts.

17.     AutoLoop objects to the Requests, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, and/or do not specify the documents sought with sufficient particularity. AutoLoop will use reasonable diligence in interpreting the Requests and providing responsive information or documents.

18.     AutoLoop disclaims any suggested obligation to create documents in response to the Requests.

19.     AutoLoop objects to CDK's Requests for production to the extent that they call for the production of documents beyond the scope of the ESI Protocol.

20.     AutoLoop objects to the definition of "Document" to the extent it purports to alter discovery available under the Federal Rules, the ESI protocol, or what is reasonably accessible.

21.     AutoLoop objects to the definition of the terms "AutoLoop," "You" and "Your" to the extent those definitions purport to include entities other than AutoLoop, and to the extent

those terms purport to require the production of documents within the possession, custody, or control of the aforementioned entities.

22.     AutoLoop objects to the definition of the term "Contracted Data Extractor" as argumentative, vague, and overbroad.  AutoLoop will interpret the term "Contracted Data Extractor" to mean any data integrator with which AutoLoop has contracted to provide data integration services as that term is used in the Amended Complaint.

23.     AutoLoop objects to the definition of the term "Data Extractor" as argumentative, vague, and overbroad.  AutoLoop will interpret the term "Data Extractor" to mean any entity that provides data integration services as that term is used in the Amended Complaint.

24.     AutoLoop objects to the definition of the term "Data Extraction Services" as argumentative, vague, and overbroad.  AutoLoop will interpret the term "Data Extraction Services" to mean data integration services as that term is used in the Amended Complaint.

25.     AutoLoop objects to the definition of the term "Dealer" as overbroad and seeking information that is not relevant to the claims or defenses in this Action.  AutoLoop will interpret the term "Dealer" to mean any franchised new car dealer in the United States.

26.     AutoLoop objects to the Instructions to the extent they are inconsistent with the Protective Order, ESI Protocol, and Federal Rules of Civil Procedure.

27.     AutoLoop's productions are subject to any agreement among the parties as to the relevant time period, the identity of custodians' files to be searched, and search terms.

28.     By making the accompanying objections and responses to the Requests, AutoLoop does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this Action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy,

materiality, and privilege.  Further, AutoLoop provides the objections and responses herein without in any way implying that they consider the Requests and responses to be relevant to any claims or defenses asserted in this Action or proportional to the needs of this Action.

29.     A response to a Request indicating that documents will be produced shall not be deemed or construed to suggest that there are, in fact, responsive documents, that AutoLoop performed any of the acts described in the document request, or that AutoLoop acquiesced in the characterization of the conduct or activities contained in the Request or any definitions and/or instructions applicable to the Request.

## AUTOLOOP'S STATEMENT REGARDING RESPONSES

1.     AutoLoop states that its objections and responses to the Requests are based upon information presently available and specifically known to AutoLoop.  AutoLoop expressly reserves the right to amend, supplement, or otherwise modify its objections, responses, and document productions as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

2.     Where AutoLoop states that it will produce responsive, non-privileged documents pursuant "to a diligent search," this search will primarily include a search of the hard copy and electronically stored information of the custodians agreed to by the parties.  Where appropriate, AutoLoop will also search non-custodial files (such as centrally-maintained drives and files) reasonably expected to contain responsive, non-duplicative documents.  When searching emails and other electronically stored information, AutoLoop will use a set of search terms agreed to by the parties.

## AUTOLOOP'S RESPONSES AND SPECIFIC OBJECTIONS

### *Applications*

**DOCUMENT REQUEST NO. 1:** All advertising plans, business plans, strategic plans, estimates, revenue forecasts, sales or marketing plans or efforts, product launch plans, promotional programs, third party market research reports, or strategies, concerning Your Applications.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 2:** All documents that discuss the ability of Your Applications to compete with and/or replace traditional DMSs, including, but not limited to, the ability of Dealers to enter data directly into Your Applications in the first instance, bypassing the DMS completely.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 3:** Documents sufficient to identify and describe the functionality of each Application that You have offered during the Relevant Time Period, and the number of Dealers who used each Application during each year of the Relevant Time Period.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 4:** Documents sufficient to identify (1) all Dealers who used each of Your Applications and (2) the DMS providers they used for each month of the Relevant Time Period.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested

- 8 -

and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 5:** Market studies, survey data, or any other source of the market share information on all Applications used by Your Dealer customers.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 6:** Documents sufficient to identify Your share of Application sales (by Application type) for each month of the Relevant Time Period, in every way that You keep track of it.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "share of Application sales" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending

litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 7:** Documents sufficient to identify all competing Application providers and their overall shares and shares by Applications segments for each month of the Relevant Time Period.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "Applications segments" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 8:** All documents related to any analyses comparing Your Applications (including their functionality, service quality, features, technology, capabilities, pricing, and/or price changes) to the Applications offered by CDK or other Vendors or otherwise assessing competition for Application customers.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop objects to the term "otherwise assessing competition" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 9:** All documents related to Your allegation in Paragraph 28 of the Complaint that Your "products and services are superior" to those of CDK.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 10:**  Documents sufficient to identify all Dealers who have switched to or from one of Your Applications during the Relevant Time Period, and: (a) the Application that the Dealer switched to (or from); (b) the effective date of the switch; (b) the number of Dealer stores that switched; and (c) the Dealer's tenure using the prior Application.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.  AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.  AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 11:**  All "win/loss" reports and documents that reflect Application customer switching.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 12:** All documents reflecting communications with Dealers regarding complaints, shortcomings or disadvantages with respect to the functionality or capabilities of Your products and services.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 13:** All documents related to Your offer and marketing of any bundled products and Relevant Services and compensation for solution gaps.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop objects to the terms "bundled products" and "solution gaps" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

- 13 -

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 14:**  All documents related to Your allegations in Paragraph 147 of the Complaint that CDK "withholds from AutoLoop the ability to create and modify repair orders using its SmartLane program," and "does not allow customers to sign repair orders in the dealer's service lane," while CDK's Service Edge program has these capabilities.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 15:**  All documents related to Your ability to create and modify repair orders using Your SmartLane program by accessing any non-CDK DMS (*e.g.*, DealerTrack, ADAM, or Autosoft), including, but not limited to, any related communications with Dealers.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

*Access to CDK or Reynolds DMS*

**DOCUMENT REQUEST NO. 16:** Documents sufficient to identify for each year of the Relevant Time Period: (a) each Data Extractor that You have used to access any CDK or Reynolds DMS or the data maintained thereon; (b) the Dealers on whose behalf you engaged each Data Extractor; and (c) all DMS directories and files that were accessed by the Data Extractor.

     **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further

objects to this Request on the basis that it seeks confidential and irrelevant information.

     Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 17:** All documents related to any agreements between You and any Data Extractors for access to any CDK or Reynolds DMS or the data maintained thereon, including, but not limited to, the drafting, negotiation, interpretation, or enforcement of any such agreements.

     **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant

information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 18:** All documents related to pricing and/or services offered by
Data Extractors for access to CDK or Reynolds DMSs or the data maintained thereon.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request on

the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 19:** All documents related to any CDK or Reynolds Data
Authorization forms that You or any Contracted Data Extractor sent to Dealers, and any
response(s) that You received.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop objects to the term "Data

Authorization forms" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 20:** Documents sufficient to show all agreements with Dealers and/or Contracted Data Extractors regarding access to any CDK or Reynolds DMS or the data maintained thereon.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 21:** Documents sufficient to show Your or any Contracted Data Extractor's methods of accessing, requesting, receiving, storing, securing, encrypting, or using data maintained on any CDK or Reynolds DMS or any CDK or Reynolds DMS username and password credentials through means other than approved 3PA or RCI integration, and any written policies, guidance, standards, procedures, or similar documentation that apply to Your or the Contracted Data Extractor's access methods.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "methods of accessing, requesting, storing, securing, encrypting, or using data" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible

evidence.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.  AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 22:**  Documents sufficient to show all requests for, receipts of, or attempts by You or any Contracted Data Extractor to obtain username and password credentials for any CDK or Reynolds DMS, including, but not limited to, any requests for system administrator-level or "UUP user" access to a CDK DMS.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.  AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.  AutoLoop objects to the terms "administrator-level" and "UUP user" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

- 18 -

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 23:**  All documents related to any circumstances in which You or any Contracted Data Extractor have accessed a CDK or Reynolds DMS or the data maintained thereon without first obtaining express, written consent or authorization from a Dealer purporting to permit such access.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.  AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 24:**  All documents related to any Dealer's declination to authorize or request to stop Your or any Contracted Data Extractor's access or extraction of data maintained on any CDK or Reynolds DMS.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 25:**  All documents discussing access privileges associated with Dealer DMS login credentials, including any documents or communications that show whether You or any Contracted Data Extractor have access to any non-Dealer owned data maintained in any CDK or Reynolds DMS, including, but not limited to, any OEM, Third Party, CDK or Reynolds Proprietary Data.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 26:**  All documents related to Your or any Contracted Data Extractor's development or installation of any "code-on-the-box" used to access data maintained on any CDK DMS or the data maintained thereon.  For the avoidance of doubt, this includes code-on-the-box installed by or for any of Your Applications.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop objects to the term "code-on-the-box" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 27:** All documents related to whether Your or any Contracted Data Extractor's methods of DMS access, data syndication, writeback, or data extraction: (a) are prohibited by any applicable laws, regulations, or contractual agreements; (b) comply with data security, data privacy, or automotive industry standards or guidance; (c) cause data security, data integrity, or system burden issues; or (d) are otherwise objectionable.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "otherwise objectionable" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 28:** Documents sufficient to identify for each year of the Relevant Time Period: (a) all CDK DMSs (by Dealer) that You or any Contracted Data Extractor have accessed (directly or indirectly) through any means other than approved 3PA integration; (b) Your or any Contracted Data Extractor's means of accessing data maintained on the CDK DMS (*e.g.*, code-on-the box, Dealer username and password and screen-scraping); (c) all usernames and passwords that You or any Contracted Data Extractor have used to access the CDK DMS; and (d) all DMS directories and files that that You or any Contracted Data Extractor accessed.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop objects to the term "code-on-the-box" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 29:** Documents sufficient to show all English statement queries that You or any Contracted Data Extractor have performed on a CDK DMS.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop objects to the term "English statement queries" as vague, ambiguous, overbroad, undefined, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 30:** Documents sufficient to show the date, time, content, volume, frequency, and duration of all queries that You or any Contracted Data Extractor have performed on any CDK DMS or the data maintained thereon through means other than approved 3PA integrations.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 31:** All documents related to any data corruption, data integrity, or system performance-related issues experienced by any CDK or Reynolds Dealer, which were attributable to or otherwise related to a Vendor's access to the Dealer's licensed CDK or Reynolds DMS.

> **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

> Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 32:** All documents that refer or otherwise relate to: (a) CDK's or Reynolds's third-party access policies; (b) CDK's SecurityFirst program; and/or (c) CDK's "refreshed" 3PA program.

> **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

> Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 33:** All documents related to any efforts or "threats" made by CDK to detect, block, disable, or otherwise restrict Your or any Contracted Data Extractor's access to a CDK DMS or the data maintained thereon, and/or Your or any Contracted Data Extractor's efforts to evade CDK's blocking and detection efforts, including any attempts to bypass security features implemented by CDK and documents sufficient to identify and describe all scripts, programs, or executable files that You or any Contracted Data Extractor have created, used, or provided to Dealers for any of these purposes.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses with respect to any efforts or "threats" made by CDK to detect, block, disable, or otherwise restrict access to a CDK DMS.

**DOCUMENT REQUEST NO. 34:** All documents related to Your allegation in Paragraph 153 of the Complaint that a CDK employee "admitted in private conversation with a vendor that the rhetoric around 'security' has 'little credibility.'"

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

*AutoLoop's 3PA Certification*

**DOCUMENT REQUEST NO. 35:** All documents related to Your January 2016 3PA Agreement with CDK, including, but not limited to: (a) the decision to enter into the Agreement; (b) any analysis of the financial impact of entering into the Agreement and the pricing terms therein; (c) all negotiations surrounding the Agreement; (d) any amendments to the Agreement; and/or (e) any analysis or communication concerning the legality, illegality, and/or scope of the Agreement.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 36:** All documents that reflect Your awareness of Reynolds's admission into the 3PA program and/or the 3PA fees paid by Reynolds during the Relevant Time Period.

    **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

    Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 37:** All documents related to Your pass-through of 3PA fees to Dealers.

    **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

    Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 38:**  All documents related to the 3PA certification, decertification, or lack of certification, of Your Applications, including, but not limited to, any related negotiations and/or amendments, any applications to join, or any discussions regarding pricing, security protocols, or terms of access.

 **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.

 Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 39:**  All documents related to Your allegation in Paragraph 136 of the Complaint that CDK requires AutoLoop to pay 3PA integration fees for five products despite AutoLoop only receiving 3PA services for two of its solutions.

 **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop objects to this Request on the basis that it seeks confidential and irrelevant

information.  AutoLoop further objects to this Request as overly broad and unduly burdensome

to the extent that it calls for the production of "all" documents.

 Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

*Data Security*

**DOCUMENT REQUEST NO. 40:** All documents related to Your or any Contracted Data
Extractor's data security policies (as they pertain to any Relevant Service), including, but not
limited to, Your or any Contracted Data Extractor's protocols for inputting, pushing, or
otherwise transferring data into or out of DMSs.

   **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request to the extent that it seeks information not in the

possession, custody, or control of AutoLoop.  AutoLoop further objects to this Request on the

basis that it seeks confidential and irrelevant information.

   Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 41:** All documents related to actual or suspected unauthorized
third-party access to, misuse, or misappropriation of data maintained on any provider's DMS.

   **Response:** AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop objects to the term "unauthorized

third-party access to, misuse, or misappropriation of data" as vague, ambiguous, overbroad, and

not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this

Request because it seeks information not relevant to any claim or defense in the pending

litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 42:** All documents related to any analysis of data security, data
integrity, or system performance risks caused by third-party access to any DMS or the data
maintained thereon.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant

information. AutoLoop further objects to this Request as seeking information subject to expert

opinion and analysis.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 43:** All documents and communications, whether internal or
involving a third-party, that discuss or refer to security threats to any DMS, including but not
limited to concerns regarding the security of data stored on a DMS.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 44:** All documents related to any Application, Data Extraction Service, or DMS, and which refer to: (a) the 2013 data breach against Target; (b) North Korea's June 2014 cyber attack against Sony Pictures Enterprise; (c) the August 2014 hack into Community Health System's patient information; (d) the 2017 Equifax data breach; (e) Cambridge Analytica's alleged data scraping of Facebook user's information; (f) the 2016 data security incident at DealerBuilt; or (g) any other attempted or successful cyber attacks or data security breaches.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop. AutoLoop further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 45:** Documents sufficient to show Your investments in or financing related to data security.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop objects to the terms "investments," "financing," and "data security" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 46:** All documents related to Your cyber liability insurance.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

*Pricing and Financial Information*

a.      *Applications*

**DOCUMENT REQUEST NO. 47:** For each of Your Applications, documents sufficient to show all initial, one-time, and monthly recurring prices from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further

objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 48:**  Documents sufficient to show all initial, one-time, and monthly recurring prices that Dealers paid for non-AutoLoop Applications from January 1, 2011 to the present. Data should indicate the month each monthly recurring charge is covering. To the extent that these fees or charges differ depending on the DMS used by a Dealer, identify the fees by DMS (*e.g.*, AutoMate, CDK, Cox, Reynolds).

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further

objects to this Request to the extent that it seeks information not in the possession, custody, or

control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

**DOCUMENT REQUEST NO. 49:** For each of Your Applications, documents sufficient to show monthly revenue, costs (including variable costs and/or COGS), and profit (including profit margin) from January 1, 2011 to the present.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 50:** Documents sufficient to show quarterly revenue and profit (including profit margin) for all Applications from January 1, 2011 to the present.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 51:**  Documents sufficient to show all integration and/or extraction fees paid by You for each of Your Applications on a monthly basis from January 1, 2011 to the present, and the entity to whom such fees were paid for each of Your Applications.

 **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request on the grounds that it seeks the production of

documents that may not be maintained in the fashion requested and would require AutoLoop to

create documents not presently in existence.  AutoLoop further objects to this Request on the

basis that it seeks confidential and irrelevant information.

 Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses with respect to integration and/or extraction fees paid.

**DOCUMENT REQUEST NO. 52:**  Documents sufficient to show all integration and/or extraction fees or costs charged to Dealers for each of Your Applications on a monthly basis from January 1, 2011 to the present.  To the extent that these fees or costs differ depending on the DMS used by a Dealer, identify the fees by DMS (*e.g.*, AutoMate, CDK, Cox, Reynolds).

 **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation.  AutoLoop further objects to this Request on the grounds

that it seeks the production of documents that may not be maintained in the fashion requested

and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 53:** Documents sufficient to show Your projections with respect to revenue and profit for each of Your Applications from January 1, 2015 to the present.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

    *b.*    *Data Extraction Services*

**DOCUMENT REQUEST NO. 54:** Documents sufficient to show all initial, one-time, and monthly recurring fees that You paid to Data Extractors for each of Your Applications from January 1, 2011 to the present. Data should indicate the month each monthly charge is covering.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 55:** Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on a CDK DMS.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "syndication" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 56:** Documents sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on each non-CDK DMS.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "syndication" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

      Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 57:** Documents sufficient to show how data from each DMS was integrated into Your Applications.

      **Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop objects to the term "integrated" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not

presently in existence.  AutoLoop further objects to this Request on the basis that it seeks

confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

*Miscellaneous*

**DOCUMENT REQUEST NO. 58:**  All documents regarding Dealers switching DMS
providers, including, but not limited to, any discussions with Dealers regarding switching DMS
providers.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request on

the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 59:**  All documents analyzing the ability of Dealers to switch
DMS providers, including, but not limited to, studies, reports, engagement letters, surveys, focus
group results, and communications.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request on

the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information. AutoLoop further objects to this Request as seeking information subject to expert opinion and analysis.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 60:** Any studies or surveys (including, but not limited to, all data and documentary input and output) conducted by or for You reporting on any automotive Dealers' DMS and/or Application use.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop objects to the term "any automotive Dealers' DMS and/or Application use" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information. AutoLoop further objects to this Request as seeking information subject to expert opinion and analysis.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 61:**  All documents related to the February 18, 2015 agreements between CDK and Reynolds described in Paragraph 96 of the Complaint, including all documents that reflect Your awareness of the agreements or of any term of the agreements.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 62:**  All documents that reflect coordinated conduct by CDK and Reynolds with respect to third-party DMS access programs, policies, business practices, strategy, or pricing, or that otherwise relate to Your claims that CDK has engaged in any illegal or anticompetitive activity or that competition in any market has been harmed.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 63:** All documents related to Your allegation in Paragraph 5 of the Complaint that "the damage to AutoLoop alone from its antirust claims [is] in the millions of dollars," including all computations of claimed damages and all documents on which you rely to substantiate Your alleged damages.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information. AutoLoop further objects to this Request as seeking information subject to expert opinion and analysis. AutoLoop objects to this Request to the extent it seeks information that is more appropriately sought through another discovery device.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 64:** Every document referred to, quoted, paraphrased, or excerpted in the Complaint, or otherwise relied upon as the basis for any allegation in the Complaint.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 65:**  All documents You received from any non-parties in response to subpoenas, informal discovery requests, or other means in preparation for or connection with this litigation.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 66:**  All documents and communications related to Your alleged injuries or damages.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 67:**  All communications with Authenticom or its counsel regarding the subject matter of this litigation or the action that Authenticom filed against CDK and Reynolds in the United States District Court for the Western District of Wisconsin, Case No. 17-cv-318-jdp, including, but not limited to, communications in connection with the testimony You provided in the preliminary injunction hearing in the above-referenced case.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request on the grounds that it seeks documents protected by the attorney-client privilege, the attorney work product doctrine, joint defense or common interest privilege, or any other applicable privilege. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 68:** All documents provided by You to the United States Federal Trade Commission in connection with its investigation regarding CDK and Reynolds.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 69:** All documents related to any presentations that You have prepared or given, or meetings of Your board of directors, shareholders, or investors, that refer or relate to CDK, Your claims and allegations, or this litigation.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 70:** Documents sufficient to show Your policies and practices concerning the preservation, retention, storage, or destruction of any documents or ESI.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

**DOCUMENT REQUEST NO. 71:** Documents sufficient to show Your organizational structure during the Relevant Time Period, including the identity of all officers, employees,

investors, partners, owners, shareholders, or principals with management-level responsibility for any Relevant Services.

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request on the grounds that it seeks the production of

documents that may not be maintained in the fashion requested and would require AutoLoop to

create documents not presently in existence.

Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 72:** Any industry data (including survey data, market studies, or any other sources) that You have access to that provide information about Applications used by Dealers (including non-AutoLoop Applications).

**Response:** AutoLoop incorporates by reference each of the General Objections set forth

above. AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request because it seeks information not relevant to any claim

or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it

seeks confidential and irrelevant information.

Subject to and without waiving the foregoing objections, AutoLoop is willing to meet and

confer regarding this Request.

Dated:  June 22, 2018

Richard J. Prendergast
Michael T. Layden
Collin M. Bruck
**RICHARD J. PRENDERGAST, LTD.**
111 W. Washington Street, Suite 1100
Chicago, Illinois 60602
Telephone: (312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
cbruck@rjpltd.com

Jennifer L. Gregor
Kendall W. Harrison
**GODFREY & KAHN S.C.**
One East Main Street, Suite 500
Madison, Wisconsin 53703
Telephone: (608) 284-2629
Fax: (608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com

Respectfully submitted,

  _/s/ Derek T. Ho_
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
David L. Schwarz
Kevin J. Miller
Daniel V. Dorris
Joshua Hafenbrack
Daniel S. Guarnera
**KELLOGG, HANSEN, TODD,**
   **FIGEL &FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
dschwarz@kellogghansen.com
kmiller@kellogghansen.com
ddorris@kellogghansen.com
jhafenbrack@kellogghansen.com
dguarnera@kellogghansen.com

*Counsel for Plaintiff AutoLoop*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

Plaintiff AutoLoop's Objections and Responses to CDK Global, LLC's First Requests For

Production to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

　　　　　　　　　　　　　　　　　　/s/ *Derek T. Ho*　　　　　　　
　　　　　　　　　　　　　　　　　Derek T. Ho

# Exhibit E

# Exhibit F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-CV-00864 |
| This document relates to: | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey M. Gilbert |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-CV-02521 (N.D. Ill.) | |

**DEFENDANT CDK GLOBAL, LLC'S SECOND SET[1] OF REQUESTS FOR THE
PRODUCTION OF DOCUMENTS TO PLAINTIFF LOOP, LLC, D/B/A AUTOLOOP.**

Pursuant to Rule 26 and 34 of the Federal Rules of Civil Procedure, Defendant CDK Global, LLC ("CDK") hereby requests that Plaintiff Loop, LLC, d/b/a AutoLoop ("AutoLoop") produce all documents described below for inspection and copying at the offices of Mayer Brown LLP, 71 South Wacker Drive, Chicago, Illinois 60606, on or before 30 days after service hereof. These Requests are to be responded to in accordance with the following Definitions and Instructions.

**DEFINITIONS**

1. "AutoLoop," "You," and "Your" means Loop, LLC, d/b/a AutoLoop, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on AutoLoop's behalf, and any and all persons and entities affiliated with or controlled by AutoLoop.

2. "CDK" means CDK Global, LLC, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or

---

[1] This Second Set of Requests for Production is issued in direct response to Autoloop's Amended Complaint (Dkt. 194), which was filed on June 5, 2018, without notice, more than 10 days after the deadline to issue discovery, and which contains new allegations and converts this suit into a putative class action. These Requests seek documents relevant to the new claims contained in the Amended Complaint and the new putative class.

predecessors, all persons acting on CDK's behalf, and any and all persons and entities affiliated with or controlled by CDK.

3.      "CDK DMS" means any DMS licensed to a Dealer by CDK.

4.      "Dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer operating in the United States.

5.      "DMS" means an enterprise system comprised of hardware, software, databases, and related data used by Dealers to manage and operate their dealerships, usually referred to as the DMS or Dealer Management System.

## **INSTRUCTIONS**

1.      Unless otherwise indicated, each Request relates to the time period January 1, 2013 to the present (the "Relevant Time Period").

2.      You are instructed to produce all documents and communications identified by these Requests either as they are kept in the usual course of business or organized and labeled according to the record description to which they are deemed responsive.

3.      You are instructed to produce all documents and communications identified by these Requests that are in Your actual or constructive possession, custody, or control.

4.      Any noun used in the singular form shall be construed and applied so as to include the plural form also, and vice versa.

5.      Each Request shall be construed independently, and no Request shall be viewed as limiting the scope of any other Request, except that documents responsive to more than one Request need be produced only once.

6.     Each and every non-identical copy of a document, whether different from the original because of stamps, indications of the recipient(s), handwritten notes, marks, attachments, or any other reason, is a separate document that must be produced.

7.     If objecting to any Request, in whole or in part, the objection must state whether any responsive materials are being withheld on the basis of that objection in accordance with Fed. R. Civ. P. 34(b)(2)(c).

8.     If You become aware of any documents or communications requested in these Requests that have been destroyed, lost, misplaced, or are otherwise incapable of production, You are instructed to respond by providing the following information:

(a)     The type of document (*e.g.* e-mail, notes, letters, memorandum, etc.);

(b)     A description of the document and its contents;

(c)     The identity of the author of the document;

(d)     The circumstances under which the document was destroyed, lost, misplaced, or rendered otherwise incapable of production; and

(e)     The identity of all persons having knowledge of the documents or the circumstances under which the document was destroyed, lost misplaced or otherwise rendered incapable of production.

9.     In the event You assert any form of objection or privilege as a ground for not producing any documents or communications requested in these Requests, You must identify the legal grounds and facts supporting the objection or privilege in accordance with Fed. R. Civ. P. 26(b)(5) and any applicable local rules and orders issued in the above-captioned proceeding. With respect to each responsive document that is withheld on the basis of an applicable privilege or other protection against disclosure, You are instructed to:

(a)     Identify the author(s), sender(s), and recipient(s) of the document;

(b)     Identify the date(s) the document was created and distributed;

(c)     Identify the applicable privilege(s) or protection(s) against disclosure; and

(d)     Describe the nature of the document in a manner that will enable CDK to assess the applicability of the privilege(s) or protection(s) against disclosure that You rely on.

10.     This set of Requests shall be deemed continuing in accordance with Fed. R. Civ. P. 26(e). If You obtain or become aware of any further documents responsive to this set of Requests, You are required to produce such additional documents.

## DOCUMENT REQUESTS

73.     All Documents related to communications with any putative class members regarding the subject matter of this litigation.

74.     All Documents identifying or describing how Dealers evaluate DMSs and/or the factors Dealers analyze when deciding which DMS to license, including, but not limited to, any Dealer's evaluation and analysis of the "true life-cycle cost" of licensing a particular DMS. *See* Am. Compl. ¶ 124.

75.     Documents sufficient to show the "data needs", and any variations thereto, of all putative class members with respect to access to CDK's DMS. *See* Am. Compl. ¶ 54.

Dated: June 29, 2018                    Respectfully submitted,

                                        */s/ Matthew D. Provance*
                                        Britt M. Miller
                                        Andrew S. Marovitz
                                        Matthew D. Provance
                                        MAYER BROWN LLP
                                        71 South Wacker Drive
                                        Chicago, IL 60606
                                        Tel: (312) 782-0600

bmiller@mayerbrown.com
amarovitz@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202)263-3000
mryan@mayerbrown.com

*Counsel for CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

 I, Matthew D. Provance, an attorney, certify that on June 29, 2018, I caused a copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO LOOP, LLC, D/B/A AUTOLOOP.** to be served on MDL Co-Lead Counsel, Plaintiffs' Liaison Counsel, and Plaintiffs' Coordinating Counsel, as well as Defendants' counsel of record in the above-captioned proceeding via email in accordance with Fed. R. Civ. P. 5(b)(2)(E).

     <u> /s/ *Matthew D. Provance*  </u>

# Exhibit G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-CV-00864 |
| This document relates to: | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey M. Gilbert |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-CV-02521 (N.D. Ill.) | |

## DEFENDANT CDK GLOBAL, LLC'S SECOND SET[1] OF
## INTERROGATORIES TO PLAINTIFF LOOP, LLC, D/B/A AUTOLOOP

Pursuant to Rule 26 and 33 of the Federal Rules of Civil Procedure, Defendant CDK Global, LLC ("CDK") hereby requests that Plaintiff Loop, LLC, d/b/a AutoLoop respond to the following Interrogatory within thirty (30) days from the date of service hereof. This Interrogatory is to be responded to in accordance with the following Definitions and Instructions.

## DEFINITIONS

1. "AutoLoop," "You," and "Your" means Loop, LLC, d/b/a AutoLoop, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on AutoLoop's behalf, and any and all persons and entities affiliated with or controlled by AutoLoop.

2. "CDK" means CDK Global, LLC, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on CDK's behalf, and any and all persons and entities affiliated with or controlled by CDK.

---

[1] This Second Set of Interrogatories is issued in direct response to Autoloop's Amended Complaint (Dkt. 194), which was filed on June 5, 2018, without notice, more than 10 days after the deadline to issue discovery, and which contains new allegations and converts this suit into a putative class action. The interrogatory set forth herein seeks information relevant to the new claims contained in the Amended Complaint and the new putative class.

3.    "CDK DMS" means any DMS licensed to a Dealer by CDK.

4.    "Dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer operating in the United States.

5.    "DMS" means an enterprise system comprised of hardware, software, databases, and related data used by Dealers to manage and operate their dealerships, usually referred to as the DMS or Dealer Management System.

## INSTRUCTIONS

1.    This Interrogatory relates to the time period January 1, 2013 to the present (the "Relevant Time Period").

2.    Rule 33 of the Federal Rules of Civil Procedure shall apply to any objection or claim of privilege asserted with respect to the Interrogatory herein.

3.    Notwithstanding any definition stated above, each word, term or phrase used in this Interrogatory is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

4.    If, in answering this Interrogatory, you claim that the Interrogatory, Definition or Instruction is ambiguous, do not use such claim as a basis for refusing to respond, but rather set forth as part of the response the language you claim is ambiguous and the interpretation of the language that you have used to respond to the Interrogatory.

5.    If you are unable to fully answer this Interrogatory, you shall answer to the fullest extent possible, specifying the reason(s) for your inability to answer the remainder, and stating whatever information, knowledge or belief you have concerning the answerable portion.

6.    This Interrogatory is continuing in nature and, to the extent that your response may be enlarged, diminished or otherwise modified by information acquired subsequent to the

production of your initial response hereto, you are required, to the extent set forth in Rule 26(e) of the Federal Rules of Civil Procedure to produce promptly a supplemental response in writing reflecting such changes.

### **INTERROGATORY**

19.    Please describe the "data needs" of all putative class members with respect to access to Dealer data on CDK's DMS.  *See* Am. Compl. ¶ 54.


Dated:  June 29, 2018                                     Respectfully submitted,

*/s/ Matthew D. Provance*

Britt M. Miller
Andrew S. Marovitz
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
bmiller@mayerbrown.com
amarovitz@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Matthew D. Provance, an attorney, certify that on June 29, 2018, I caused a copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S SECOND SET OF INTERROGATORIES TO LOOP, LLC, D/B/A AUTOLOOP** to be served on MDL Co-Lead Counsel, Plaintiffs' Liaison Counsel, and Plaintiffs' Coordinating Counsel, as well as Defendants' counsel of record in the above-captioned proceeding via email in accordance with Fed. R. Civ. P. 5(b)(2)(E).

_____/s/ Matthew D. Provance_____

729241630

# Exhibit H

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL 2817<br>Case No. 18 C 864 |
| This Document Relates to: | Hon. Robert M. Dow, Jr. |
| *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-CV-2521 (N.D. Ill.) | |

### PLAINTIFF AUTOLOOP'S OBJECTIONS AND RESPONSES TO
### CDK GLOBAL, LLC'S SECOND SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Loop, LLC, d/b/a AutoLoop, "AutoLoop" or "Plaintiff") hereby serves these Objections and Responses to CDK Global, LLC's ("CDK") Second Set of Requests for the Production of Documents. AutoLoop reserves the right to supplement its responses or document production if it learns of additional information or responsive documents. Any production of documents is subject to the Agreed Confidentiality Order ("Protective Order") and the Stipulated Order Re: Discovery of Electronically Stored Information ("ESI Protocol") entered by the Court in this case (Dkts. 104 and 105, respectively).

### GENERAL OBJECTIONS

AutoLoop makes the following general objections to CDK's definitions, instructions, and requests for production ("Requests"), which are hereby incorporated by reference and made part of AutoLoop's response to each and every individually numbered request for production as if fully set forth therein. AutoLoop reserves the right to supplement, revise, correct, clarify, or otherwise modify its objections and responses to each Request. AutoLoop also reserves the right to assert any other applicable objections to these Requests, and to object to any other request

relating to the subject matter of the responses herein. AutoLoop's response to any of the Requests is not a waiver of any of these rights.

1.    AutoLoop has not completed its investigations or discovery with respect to the information and facts that may be discoverable or relevant in this action. AutoLoop reserves the right to supplement or amend its responses set forth below should additional responsive or relevant information or documents be discovered as its investigations proceed.

2.    AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they seek discovery of information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, or other applicable privileges and protections against disclosures. AutoLoop will not disclose or produce information protected by any such privilege or doctrine.

3.    AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they seek information that exceeds the permissible scope of discovery, including information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

4.    AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they attempt to impose duties upon AutoLoop that are not provided for by the Federal Rules of Civil Procedure, or any other applicable law or rule.

5.    AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they call for the production of documents not in the possession, custody, or control of AutoLoop.

6.    AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent the answers sought may be derived from publicly

available information, where the burden of deriving the responsive information is substantially the same for CDK as it is for AutoLoop.

7.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent they seek documents and information already in CDK's or The Reynolds & Reynolds Company's possession, custody, or control.

8.      AutoLoop objects to CDK's Requests for production and their accompanying instructions and definitions to the extent that they call for information not kept by AutoLoop in the ordinary course of business.

9.      AutoLoop objects to CDK's Requests to the extent they seek the disclosure of trial preparation or expert documents prior to the dates fixed for such disclosure in this case. Any disclosure of such documents is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other protection.

10.     AutoLoop objects to CDK's Requests to the extent they seek documents that are publicly available or otherwise equally available to CDK from other sources.

11.     AutoLoop objects to CDK's Requests to the extent they contain no temporal limitation.  Unless otherwise stated, AutoLoop's response will relate to the time period January 1, 2014, to the present.

12.     AutoLoop objects to CDK's Requests to the extent they request or call for the provision of documents covered by a Non-Disclosure Agreement or other contract barring dissemination.

13.     AutoLoop objects to the "Definitions" and "Instructions" to the extent they purport to change the common meaning of the English language with regard to any word or phrase.

14.     AutoLoop objects to the Requests to the extent they seek information that is more appropriately sought through another discovery device.

15.     AutoLoop objects to the Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this action.

16.     AutoLoop objects to the Requests as overly broad and unduly burdensome to the extent that they call for the production of "all" documents when documents "sufficient to show" would suffice to provide the relevant facts.

17.     AutoLoop objects to the Requests, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, and/or do not specify the documents sought with sufficient particularity. AutoLoop will use reasonable diligence in interpreting the Requests and providing responsive information or documents.

18.     AutoLoop disclaims any suggested obligation to create documents in response to the Requests.

19.     AutoLoop objects to CDK's Requests to the extent that they call for the production of documents beyond the scope of the ESI Protocol.

20.     AutoLoop objects to the definition of "Document" to the extent it purports to alter discovery available under the Federal Rules, the ESI protocol, or what is reasonably accessible.

21.     AutoLoop objects to the definition of the terms "AutoLoop," "You" and "Your" to the extent those definitions purport to include entities other than AutoLoop, and to the extent those terms purport to require the production of documents within the possession, custody, or control of the aforementioned entities.

22.     AutoLoop objects to the definition of the term "Dealer" as overbroad and seeking information that is not relevant to the claims or defenses in this Action.  AutoLoop will interpret the term "Dealer" to mean any franchised new car dealer in the United States.

23.     AutoLoop objects to the Instructions to the extent they are inconsistent with the Protective Order, ESI Protocol, and/or Federal Rules of Civil Procedure.

24.     AutoLoop's productions are subject to any agreement among the parties as to the relevant time period, the identity of custodians' files to be searched, and search terms.

25.     By making the accompanying objections and responses to the Requests, AutoLoop does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this Action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege.  Further, AutoLoop provides the objections and responses herein without in any way implying that they consider the Requests and responses to be relevant to any claims or defenses asserted in this Action or proportional to the needs of this Action.

26.     A response to a Request indicating that documents will be produced shall not be deemed or construed to suggest that there are, in fact, responsive documents, that AutoLoop performed any of the acts described in the document request, or that AutoLoop acquiesced in the characterization of the conduct or activities contained in the Request or any definitions and/or instructions applicable to the Request.

## AUTOLOOP'S STATEMENT REGARDING RESPONSES

1.     AutoLoop states that its objections and responses to the Requests are based upon information presently available and specifically known to AutoLoop.  AutoLoop expressly reserves the right to amend, supplement, or otherwise modify its objections, responses, and document productions as it believes to be necessary and appropriate in light of additional

information, documents or materials that are discovered or disclosed in the course of these proceedings.

2.     Where AutoLoop states that it will produce responsive, non-privileged documents pursuant "to a diligent search," this search will primarily include a search of the hard copy and electronically stored information of the custodians agreed to by the parties.  Where appropriate, AutoLoop will also search non-custodial files (such as centrally-maintained drives and files) reasonably expected to contain responsive, non-duplicative documents.  When searching emails and other electronically stored information, AutoLoop will use a set of search terms agreed to by the parties.

### AUTOLOOP'S RESPONSES AND SPECIFIC OBJECTIONS

**DOCUMENT REQUEST NO. 73:**  All Documents related to communications with any putative class members regarding the subject matter of this litigation.

**Response:**  AutoLoop incorporates by reference each of the General Objections set forth above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents.  AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information.  AutoLoop further objects to this Request on the basis that the term "subject matter of this litigation" is ambiguous, and will interpret that phrase to mean any non-privileged communications about the actual litigation.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 74:**  All Documents identifying or describing how Dealers
evaluate DMSs and/or the factors Dealers analyze when deciding which DMS to license,
including, but not limited to, any Dealer's evaluation and analysis of the "true life-cycle cost" of
licensing a particular DMS.  *See* Am. Compl. ¶ 124.

     **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

AutoLoop further objects to this Request as overly broad and unduly burdensome to the extent

that it calls for the production of "all" documents.  AutoLoop further objects to this Request

because it seeks information not relevant to any claim or defense in the pending litigation.

AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant

information.  AutoLoop further objects to this Request to the extent that it seeks information not

in the possession, custody, or control of AutoLoop.  AutoLoop further objects to this Request as

seeking information that is not new to the Amended Complaint.  This Request should have and

could have been included in prior discovery requests.

     Subject to and without waiving the foregoing objections, AutoLoop will produce

responsive, relevant, non-privileged documents in its possession, custody, or control that are

identified and located pursuant to a diligent search as described in AutoLoop's Statement

Regarding Responses.

**DOCUMENT REQUEST NO. 75:**  Documents sufficient to show the "data needs", and any
variations thereto, of all putative class members with respect to access to CDK's DMS.  *See* Am.
Compl. ¶ 54.

     **Response:**  AutoLoop incorporates by reference each of the General Objections set forth

above.  AutoLoop further objects to this Request on the basis that it is overly broad, unduly

burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. AutoLoop further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation. AutoLoop further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require AutoLoop to create documents not presently in existence. AutoLoop further objects to this Request on the basis that it seeks confidential and irrelevant information. AutoLoop further objects to this Request to the extent that it seeks information not in the possession, custody, or control of AutoLoop.

Subject to and without waiving the foregoing objections, AutoLoop will produce responsive, relevant, non-privileged documents in its possession, custody, or control that are identified and located pursuant to a diligent search as described in AutoLoop's Statement Regarding Responses.

Dated:  July 30, 2018

Richard J. Prendergast
Michael T. Layden
Collin M. Bruck
**RICHARD J. PRENDERGAST, LTD.**
111 W. Washington Street, Suite 1100
Chicago, Illinois 60602
Telephone: (312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
cbruck@rjpltd.com

Jennifer L. Gregor
Kendall W. Harrison
Allison W. Reimann
**GODFREY & KAHN S.C.**
One East Main Street, Suite 500
Madison, Wisconsin 53703
Telephone: (608) 284-2629
Fax: (608) 257-0609
jgregor@gklaw.com
kharrison@gklaw.com
areimann@gklaw.com

Respectfully submitted,

 _/s/ Derek T. Ho_____
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
David L. Schwarz
Kevin J. Miller
Daniel V. Dorris
Joanna T. Zhang
Joshua Hafenbrack
Daniel S. Guarnera
**KELLOGG, HANSEN, TODD,**
 **FIGEL &FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
Fax: (202) 326-7999
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
dschwarz@kellogghansen.com
kmiller@kellogghansen.com
ddorris@kellogghansen.com
jzhang@kellogghansen.com
jhafenbrack@kellogghansen.com
dguarnera@kellogghansen.com

*Counsel for Plaintiff AutoLoop*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2018, I caused a true and correct copy of the foregoing

Plaintiff AutoLoop's Objections and Responses to CDK Global, LLC's Second Set of Requests

For Production to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

　　　/s/ *Derek T. Ho*　　　　　　
Derek T. Ho

# Exhibit I

# Exhibit J-1

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 17, 2018

**B**Y **E-M**AIL

Andrew S. Marovitz
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

Michael N. Nemelka, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:     *Dealer Management System Antitrust Litigation*,
         MDL 2817: *Cox v. CDK* (18-CV-1058) & *Loop v.*
         *CDK* (18-CV-2521)

Dear Mike:

Greetings from Chicago. We're writing this letter to focus the meet-and-confer process with respect to the following discovery responses:

> Plaintiff Cox Automotive's Objections and Responses to CDK Global, LLC's First Set of Interrogatories (June 22, 2018)

> Plaintiff AutoLoop's Objections and Responses to CDK Global, LLC's First Set of Interrogatories (June 22, 2018)

> Plaintiff Cox Automotive's Objections and Responses to CDK Global, LLC's First Set of Requests for Production (June 22, 2018)

> Plaintiff AutoLoop's Objections and Responses to CDK Global, LLC's First Set of Requests for Production (June 22, 2018)

Please let us know if you are available on Friday afternoon to address the issues identified in this letter. In light of the current deadline to bring motions to compel, if any, by August 6, we would like to proceed as expediently and efficiently as possible and therefore suggest that we cover both Cox and AutoLoop's discovery responses at the same time given the extent to which there are overlapping issues between them.

## I.      **GENERAL OBJECTIONS**

Cox and AutoLoop have incorporated every one of their General Objections into every one of their specific objections, but have not specified whether they are withholding documents or information on the basis of any objection, which is required by the Federal Rules of Civil Procedure. *See* Rule 34(b)(2)(c); *see also* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated *with specificity*") (emphasis added); *Grodzitsky v. American Honda Motor Co., Inc.,* 2017 WL 2616917, at *5 (C.D. Cal. 2017) (if information responsive to

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 2

plaintiff's interrogatory was withheld on the basis of defendant's general objections, the court held defendant "must so state and specify the information withheld"). With respect to the responses to CDK's interrogatories, this practice is improper, as it conceals what is being identified and what is not. Further, with respect to Plaintiffs' responses to the requests for production ("RFPs"), Cox and AutoLoop's decision not to specify what is being produced – or, alternatively, any types of documents actually being withheld in response to any such objections, as required by the Federal Rules – means that neither party is withholding any documents on the basis of such objections (or that those parties have waived their right to do so).

Still, without waiving our rights and for the sake of efficiency, we address these issues in the Specific Objections section below, by asking Plaintiffs to identify whether any of these General Objections forms the basis for withholding non-privileged information or documents responsive to CDK's interrogatories and RFPs.

There is one exception, which we'll address first:

*Cox General Objection 19 to CDK's RFPs; Cox General Objection 10 to CDK's Interrogatories (time period Jan. 1, 2014 to the present)*

Cox declares: "Unless otherwise stated, Cox Automotive's Responses will relate to the time period January 1, 2014, to the present." Although some exceptions have been made, as a general matter the agreed-upon discovery period for this case begins on January 1, 2013. *See* November 24, 2017 Ltr. from Authenticom to CDK and R&R (reflecting your agreement to "January 1, 2013 as the primary collection start date"). Further, Cox itself appears to be seeking discovery from Defendants from 2013 to the present, and even all the way back to 2011 for several of its RFPs. *See* July 17, 2018 Ltr. Cox's limitation to January 1, 2014, therefore, appears to be improper for many of its responses. Moreover, there should be mutuality with respect to the relevant time period for any Cox-related discovery. Please be prepared to discuss why Cox appears to be taking inconsistent positions with respect to the relevant time period, and/or to confirm that responsive information will not be withheld on the basis that it pertains to 2013.

## II.  SPECIFIC OBJECTIONS TO CDK'S INTERROGATORIES

Here are the topics regarding Cox and AutoLoop's specific objections to CDK's interrogatories that we would like to address during our upcoming meet-and-confer.

*Cox Resp. 1; AutoLoop Resp. 1 (identify every term of the agreement that you allege is a per se violation of the antitrust laws)*

Plaintiffs' responses list a series of interrogatory-specific objections and General Objections, but never identify what information is actually being withheld as a result of those objections. As noted above, that practice is improper, as it conceals what is being identified and what is not. To make matters less clear, the responses to this interrogatory run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts from an injunction hearing, Judge

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 3

St. Eve's opinion, Judge James D. Peterson's opinions and orders and briefing before the Seventh Circuit—without specifying information or pages from those sources. That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not.

All that said, if Plaintiffs' final paragraph of each of their responses to this interrogatory is intended to contain a full and complete answer, without withholding any information known to them on the basis of objections or otherwise, we are prepared to accept that. Is that the case?

Please be prepared to let us know the answer to that question and to the following questions during our upcoming meet-and-confer:

1.  Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.  If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.  Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 2; AutoLoop Resp. 2 (identify competitors)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope." We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action. In addition to Plaintiffs' stated difficulty in interpreting the word "competitor" and their insistence that an interrogatory about Plaintiff's competitors is not relevant to a lawsuit about competition, please be prepared to let us know the following:

1.  Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2.  With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

*Cox Resp. 3 (Dealer switching)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope." We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 4

claims and defenses in the action. In addition to those issues, please be prepared to let us know the following:

1. Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2. With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

### Cox Resp. 4 (DealerTrack DMS's market share)

Cox should be prepared to answer the following questions during our meet-and-confer:

1. Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2. If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3. Confirm that Cox is unaware of any information responsive to the interrogatory that has not been disclosed in its response.

### Cox Resp. 5; AutoLoop Resp. 3 (means of accessing data on CDK's or Reynolds's DMSs)

Plaintiffs should be prepared to answer the following questions during our meet-and-confer:

1. Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2. If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3. Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

### Cox Resp. 6 (means by which Data Extractors access data)

Cox should be prepared to answer the following questions during our meet-and-confer:

1. Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2. If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 5

3. Confirm that Cox is unaware of any information responsive to the interrogatory that has not been disclosed in its response.

*Cox Resp. 7 (actions taken by You to block or limit any Data Extractor's access to DealerTrack)*

Cox's answer is not responsive, as it redefined the interrogatory by discussing its "practice" (not its actions, as requested) so long as data integrators "use the approved means for such access" (another condition not permitted by the actual interrogatory served). While Authenticom's initial responses to certain interrogatories previously served upon Authenticom by CDK contained similar language redefining these interrogatories to its "practices" (*see* Authenticom's Resps. to CDK's Interrogatory Nos. 9- 14), Authenticom later agreed to revise these responses. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this same tactic. Please let us know during the meet-and-confer whether Cox intends to answer the interrogatory as written, without exception.

*Cox Resp. 8; AutoLoop Resp. 4 (identify when You received DMS data through a Data Extractor without the Dealer's express consent)*

Plaintiffs should be prepared to answer the following questions during our meet-and-confer:

1. Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2. If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3. Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 9; AutoLoop Resp. 5 (steps You take to ensure Dealer's express authorization to obtain data)*

Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices." While Authenticom initially refused to answer a similar interrogatory as written and instead declared that it would construe such interrogatory as concerning its "current practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 9), Authenticom later agreed to revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this same tactic. They cite other objections as well, but do not disclose whether information is actually being withheld on that basis. Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 6

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 10; AutoLoop Resp. 6 (steps You take to ensure that Your access to data maintained on a CDK or Reynolds DMS does not exceed a Dealer's express authorization)*

We have the same concern here.  Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices."  While Authenticom initially refused to answer a similar interrogatory as written and instead declared that it would construe the interrogatory as concerning its "current practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 10), Authenticom later agreed to revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this same tactic. They cite other objections as well, but do not disclose whether information is actually being withheld on that basis.  Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 11; AutoLoop Resp. 7 (steps You take to ensure that You or Your Data Extractors do not access certain data)*

Again, we have the same concern.  Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices."  While Authenticom initially refused to answer a similar interrogatory as written and instead declared that it would construe the interrogatory as concerning its "current practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 11), Authenticom later agreed to revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 7

same tactic. They cite other objections as well, but do not disclose whether information is actually being withheld on that basis.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

4.    AutoLoop has stated that it "currently accesses CDK and Reynolds DMS through the 3PA and RCI programs," so "any data obtained…in excess of the dealers' express authorization would be due to CDK's and Reynolds' own data integration services." However, before 2015, AutoLoop "used SIS to access data for dealers using the CDK DMS." *See* Am. Compl. ¶ 88.  Moreover, AutoLoop has alleged that CDK has allowed AutoLoop to continue to use SIS.  *See id.* at ¶ 156.  Does AutoLoop have any responsive information related to SIS's or any other data extractor's access to DMS data? If so, why has this responsive information been withheld?

*Cox Resp. 12; AutoLoop Resp. 8 (steps You or Data Extractors take to secure data)*

Again, we have the same concern.  Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices."  They cite other objections as well, but do not disclose whether information is actually being withheld on that basis.  Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

4.    Cox and AutoLoop do not provide any information regarding any steps taken by their data extractors during the relevant time period to prevent unauthorized access to DMS

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 8

data.  Do Cox and AutoLoop have such responsive information?  If so, why has this information been withheld?

*Cox Resp. 13; AutoLoop Resp. 9 (identify written policies, guidelines or other documents)*

Again, we have the same concern.  Plaintiffs refuse to answer the interrogatory as written for the relevant 2013-present time period and instead declare that they "construe this Interrogatory as concerning [Cox/AutoLoop's] current practices."  While Authenticom initially refused to answer a similar interrogatory as written and instead declared that it would construe the interrogatory as concerning its "current practices" (*see* Authenticom's Resp. to CDK's Interrogatory No. 14), Authenticom later agreed to revise this response. Given this agreement, it is improper for Plaintiffs to again attempt to delay providing CDK with the information it requests using this same tactic. They cite other objections as well, but do not disclose whether information is actually being withheld on that basis.  Finally, they state that they "will supplement [their] Response[s] as such documents are produced."  Please be prepared to answer the following questions during our meet-and-confer:

1. Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2. If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3. Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

4. Confirm that Plaintiffs will produce all documents from 2013-present responsive to this request.

*Cox Resp. 14; AutoLoop Resp. 10 (scripts and executable programs)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope."  We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action.  In addition to those issues, please be prepared to let us know the following:

1. Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2. With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

Michael N. Nemelka, Esq.
July 17, 2018
Page 9

3.      While AutoLoop has responded that it has not provided any scripts to dealers, it has not
        provided any information regarding scripts or executable programs that its data extractors
        (including but not limited to SIS) have used or provided to dealers to access data
        maintained on a CDK or R&R DMS.  Does AutoLoop have such responsive information?
        If so, why has this responsive information been withheld?

_Cox Resp. 15; AutoLoop Resp. 11 (purportedly unlawful or unenforceable terms)_

Plaintiffs rely upon a series of objections without specifying what is actually being withheld on
basis of those objections.  To make matters even less clear, the responses to this interrogatory run
through a litany of information sources—the complaint, motion to dismiss briefing, transcripts
and exhibits from an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's
opinions and orders and briefing before the Seventh Circuit—without specifying information or
pages from those sources.  That leaves us without any guide about what information from those
sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the
interrogatory at all.

These interrogatory responses constitute an example of Plaintiffs' refusal to provide
straightforward responses to simple questions, and to devote more time to objecting than it
would take to answer.  Please let us know whether or not Plaintiffs will answer the interrogatory
completely in a straightforward fashion.

_Cox Resp. 16; AutoLoop Resp. 13 (purportedly anticompetitive restrictions on data use)_

Following objections that are repeated throughout their responses, Plaintiffs run through a litany
of information sources—the complaint, motion to dismiss briefing, transcripts and exhibits from
an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's opinions and orders,
briefing before the Seventh Circuit and the response to Interrogatory No. 1—without specifying
information or pages from those sources.  That leaves us without any guide about what
information from those sources Plaintiffs believe is responsive and what is not, which hardly
provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written,
without exception, and to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or
        general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the
        information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory
        that has not been disclosed in their responses.

Michael N. Nemelka, Esq.
July 17, 2018
Page 10

*Cox Resp. 17; AutoLoop Resp. 12 (terms of access)*

We are willing to accept this answer, so long as no responsive information is actually being withheld.  Please confirm.

*Cox Resp. 18; AutoLoop Resp. 14 (allegedly "bloated" and "excessive" fees)*

Again, following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts and exhibits from an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's opinions and orders and briefing before the Seventh Circuit—without specifying information or pages from those sources.  That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written and to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 19; AutoLoop Resp. 15 (number of times You or Your Data Extractors accessed CDK DMS)*

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope."  We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action.  In addition to those issues, please be prepared to let us know the following:

1.      Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2.      With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

*Cox Resp. 20; AutoLoop Resp. 17 (manual reporting tools)*

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 11

Plaintiffs have refused to provide any substantive answer to this interrogatory on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "to clarify [the interrogatory's] content and scope."  We accept Plaintiffs' offer, but note that the content and scope are clear from the face of the interrogatory itself, as is its plain relevance to the claims and defenses in the action.  In addition to those issues, please be prepared to let us know the following:

1.      Upon which of your interrogatory-specific or general objections are you relying to actually withhold information in response to this request?

2.      With respect to each such objection, identify the nature of the information that is actually being withheld on the basis of that objection.

*Cox Resp. 21 (purported fraudulent concealment)*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint and motion to dismiss briefing—without specifying information or pages from those sources.  That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.      Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 22 (purported false statements)*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint and motion to dismiss briefing—without specifying information or pages from those sources.  That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 12

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 23; AutoLoop Resp. 16 ("tilts the table")*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint, motion to dismiss briefing, transcripts and exhibits from an injunction hearing, Judge St. Eve's opinion, Judge James D. Peterson's opinions and orders and briefing before the Seventh Circuit—without specifying information or pages from those sources.  That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

2.    If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.    Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

*Cox Resp. 24; AutoLoop Resp. 18 (damages)*

Following objections that are repeated throughout their responses, Plaintiffs run through a litany of information sources—the complaint and motion to dismiss briefing—without specifying information or pages from those sources.  That leaves us without any guide about what information from those sources Plaintiffs believe is responsive and what is not, which hardly provides any answer to the interrogatory at all.

Please be prepared to notify us whether Plaintiffs intend to answer the interrogatory as written, without exception, and to answer the following questions during our meet-and-confer:

1.    Is responsive information being withheld on the basis of any interrogatory-specific or general objection?

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 13

2.      If the answer to this question is yes, identify each such objection and the nature of the information that is actually being withheld on the basis of that objection.

3.      Confirm that Plaintiffs are unaware of any information responsive to the interrogatory that has not been disclosed in their responses.

## III.      SPECIFIC OBJECTIONS TO CDK'S REQUESTS FOR PRODUCTION

Here are the topics regarding Cox's and AutoLoop's specific objections to CDK's RFPs that we would like to address during our upcoming meet-and-confer.

### A.      OFFER TO MEET AND CONFER

For each of the below RFPs, Cox and/or AutoLoop have refused to produce documents responsive to the requests on the basis of a number of objections repeated throughout the responses, but have offered to meet-and-confer "regarding th[ese] Request[s]." We disagree with Plaintiffs' objections, but accept Plaintiffs' offer to meet-and-confer and note that it is plain from the face of each of the RFPs that the documents sought are directly relevant to the claims and defenses of this action and sufficiently limited in scope.

With respect to certain of the below RFPs, Cox and/or AutoLoop have also objected to producing documents on the basis that certain terms are vague. We disagree with these objections. Thus, please be prepared to discuss the basis for Plaintiffs' objections based on vagueness of terms. For ease of reference during our discussion, we have identified each such RFP below.

Moreover, for many of the below requests, Authenticom and/or MVSC have already agreed to produce documents responsive to similar requests in their respective litigations. Please be prepared to discuss why Cox and/or AutoLoop take a different position than other MDL plaintiffs with respect to certain RFPs, especially given that the same counsel is interpreting those requests. Again, for ease of reference, we note below which RFPs are similar to RFPs to which other MDL plaintiffs have agreed to produce documents.

In addition to these issues, please be prepared to let us know the following for each of the below RFPs: (1) upon which of your RFP-specific or general objections are you relying to actually withhold documents in response to this request? (2) with respect to each such objection, what is the nature of the documents that are being withheld on the basis of that objection?

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 14

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| | | **DEALERTRACK** | | |
| 1 | | Public statements re DealerTrack's acquisition | | |
| 2 | | Statements to investors re DealerTrack acquisition | Authenticom Resp. 54 | |
| 3 | | Endorsements by the California New Car Dealers Association | | |
| 4 | | Filing re DealerTrack acquisition | | |
| 5 | | Divestiture of assets | | |
| 7 | | Investments in or financing related to DealerTrack's data security | Authenticom Resp. 52 | |
| 8 | | Written DealerTrack business plans or presentations | Authenticom Resp. 53 | |
| 10 | | Marketing materials that reference CDK or Reynolds | Authenticom Resp. 27 & related correspondence | |
| 16 | | Studies or surveys re automotive dealers' DMS and/or app use | | "any automotive Dealers' DMS and/or Application use" |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 15

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| | | **DATA SECURITY** | | |
| | 45 | Investments in data security | Authenticom Resp. 52 | "investments," "financing," and "data security" |
| 18 | 40 | Cox/third-party extractor's data security policies | Authenticom Resp. 15 | |
| 19 | 43 | Documents discussing DMS security threats | Authenticom Resp. 4 | |
| 20 | 42 | Analysis of data security/system performance risks to [DealerTrack DMSs or any DMS] from third-party access, [including data tracking access to Cox's DMS by data extractors]) | Authenticom Resp. 4 | "data tracking access" |
| 21 | 41 | Documents re unauthorized third-party access, misuse, and misappropriation of data on DMS | Authenticom Resp. 22 | "unauthorized third-party access to, misuse, and misappropriation of data" |
| 22 | 44 | Documents re well-known data breaches | | |
| 23 | 46 | Documents re cyber liability insurance | Authenticom Resp. 21 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 16

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| **APPLICATIONS** | | | | |
| 24 | 1 | Business plans re applications | Authenticom Resp. 53 & related correspondence | |
| 25 | 2 | Applications competing with DMSs | | |
| 26 | 3 | Sufficient to identify and show functionality of apps, number of dealers on each, etc. | Authenticom Resp. 43, 50-51<br><br>MVSC Resp. 5-6 | |
| 27 | 4 | Sufficient to show number of dealers, DMS providers, for each application | Authenticom Resp. 43<br><br>MVSC Resp. 5-6 | |
| 29 | 5 | Market studies for applications | | |
| 30 | 6 | Share of application sales | Authenticom Resp. 62-64<br><br>MVSC Resp. 11 | "share of application sales" |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 17

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 31 | 7 | Competing share of applications/sales | Authenticom Resp. 62-64<br><br>MVSC Resp. 7, 8, 10 | "Application segments" |
| 32 | 8 | Comparing Cox/AutoLoop apps to CDK/Reynolds or other vendors' apps/services | Authenticom Resp. 27, 49, 63-64<br><br>MVSC Resp. 22 | "otherwise assessing competition" |
| 34 | 10 | Application switching data | Authenticom Resp. 63<br><br>MVSC Resp. 15-16 | |
| 35 | 11 | Application win/loss reports | | |
| 28 | | Fees charged to vendors for 3PA and RCI Integration | | |
| **DEALERTRACK'S THIRD-PARTY ACCESS POLICIES** | | | | |
| 38 | | Documents related to agreements b/t third party data extractors and DealerTrack | Authenticom Resp. 35-36 | |
| 39 | | Documents related to agreements with other DMS providers for access by apps to a DMS | Authenticom Resp. 35-36 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 18

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 40 | | Restrictions DealerTrack places on vendors or third-party extractors | | |
| 42 | | OpenTrack restrictions on access to DealerTrack DMSs | | |
| 43 | | Admission to OpenTrack program | | |
| 44 | | Differences between how Cox and third-party apps access DealerTrack DMSs | | |
| 45 | | Legality of data access methods | Authenticom Resp. 11-12 | "otherwise objectionable" |
| 46 | | Contemplation of charging fees for accessing DealerTrack DMSs through OpenTrack | | |
| 47 | | Diminished DMS capability caused by third-party access to DealerTrack DMS | Authenticom Resp. 4 | |
| **ACCESS TO CDK OR REYNOLDS DMS** | | | | |
| | 16 | Sufficient to identify data extractors used to access CDK and Reynolds DMSs | Authenticom Resp. 43 | |
| | 17 | Documents re agreements with third-party data extractors to access CDK and Reynolds DMSs | Authenticom Resp. 35-36

MVSC Resp. 56 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 19

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 48 | 19 | CDK//Reynolds Data Authorization forms sent to dealers | | |
| 49 | 20 | Agreements for access to CDK/Reynolds DMSs | Authenticom Resp. 35-36 MVSC Resp. 56 | "Data Authorization forms" |
| 50 | 21 | Sufficient to show methods of accessing, requesting, receiving, storing, securing, encrypting, or using data vis-à-vis a CDK or Reynolds DMS | Authenticom Resp. 5, 9 | "methods of accessing, requesting, receiving, storing, securing, encrypting, or using data" |
| 51 | 22 | Sufficient to show requests for or attempts to obtain login credentials for CDK/Reynolds DMSs, including requests for administrator-level or UUP user access | Authenticom Resp. 6-7 MVSC Resp. 45 | "administrator-level" and "UUP user" |
| 52 | 23 | Access without dealer authorization | Authenticom Resp. 40 MVSC Resp. 45 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 20

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 53 | 24 | Dealer declines authorization | Authenticom Resp. 41<br><br>MVSC Resp. 45 | |
| 55 | 25 | DMS access privileges/login credentials | Authenticom Resp. 6<br><br>MVSC Resp. 45 | |
| 56 | 26 | Code-on-the-box | Authenticom Resp. 8-10 | |
| | 27 | Legality of data access methods | Authenticom Resp. 11-12 | "otherwise objectionable" |
| 57 | 28 | Sufficient to show CDK DMSs accessed other than through 3PA, means of accessing, username/passwords used, DMS directors accessed | Authenticom Resp. 6-10 | |
| 58 | 29 | ENG queries | Authenticom Resp. 10 | "English statement queries" |
| 59 | 30 | Content, duration, frequencies of unapproved extractions | Authenticom Resp. 2 | |
| 60 | 31 | Data corruptions caused by unapproved access | Authenticom Resp. 4 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 21

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| **DATA EXTRACTION SERVICES** | | | | |
| 65 | | Documents sufficient to identify data extractors used to access CDK and Reynolds DMSs | Authenticom Resp. 43 | |
| 66 | | Documents re agreements with third-party data extractors to access CDK and Reynolds DMSs | Authenticom Resp. 35-36<br><br>MVSC Resp. 56 | |
| 68 | | Data extraction services Cox offers | Authenticom Resp. 50-51 | |
| 69 | | Syndication of data on CDK or Reynolds DMSs | Authenticom Resp. 50-51 | "syndication" |
| 70 | | 10 Foot Wave LLC | | |
| 71 | | Sufficient to show third parties to whom Cox has syndicated data on CDK or Reynolds DMSs | Authenticom Resp. 43 | "syndication" |
| **PRICING & FINANCIAL INFORMATION -- APPLICATIONS** | | | | |
| 77 | 47 | Sufficient to show prices for Cox/AutoLoop apps | Authenticom Resp. 46-47 | |
| 78 | 48 | Sufficient to show prices for competitor apps | Authenticom Resp. 49, 63 | |
| 82 | 52 | Data extraction fees charged back to dealers for Cox/AutoLoop apps | Authenticom Resp. 46-47 | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 22

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| **PRICING & FINANCIAL INFORMATION – DATA EXTRACTION SERVICES** | | | | |
| 85 | 55 | Revenue, costs and profit from syndication of CDK DMS data | Authenticom Resp. 44 | "syndication" |
| 86 | 56 | Revenue, costs and profit from syndication of non-CDK DMS data | | "syndication" |
| 87 | 57 | Integration of data with Cox/AutoLoop apps | | "integrated" |
| **PRICING & FINANCIAL INFORMATION -- DEALERTRACK** | | | | |
| 88 | | Dealer prices for DealerTrack | | |
| 89 | | Non-Cox dealer prices for non-Cox DMSs | | |
| 90 | | Monthly revenue, costs and profits | | |
| 91 | | Quarterly revenue, costs and profits | | |
| **MISCELLANEOUS** | | | | |
| | 60 | Studies or surveys re automotive dealers' DMS and/or app use | | "any automotive Dealers' DMS and/or application use" |
| 92 | 61 | Documents re: 2/18/2015 agreements between CDK and R&R | | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 23

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | Requests to Which Other MDL Plaintiffs Have Agreed to Produce Similar Documents | Vagueness Objection |
|---|---|---|---|---|
| 96 | 13 (under App section) | Bundled products | | "bundled products" and "solution gaps" |
| 98 | 63 | Damages | Authenticom Resp. 61<br><br>MVSC Resp. 73 | |
| 101 | 66 | Injury/damages | Authenticom Resp. 61 | |
| 102 | 67 | Communications re: Authenticom litigation | | |
| 104 | 69 | Presentations, etc. re: lawsuit and allegations | | |
| 107 | | Industry data re: DMS providers | | "information about DMS providers" |
| 108 | 72 | Industry data re: apps | | "industry data" |

## B.    AGREEMENT TO PRODUCE

For those RFPs to which Plaintiffs have agreed to produce documents, Plaintiffs list a series of RFP-specific objections and General Objections in their respective responses, but never identify what information is actually being withheld as a result of those objections. As noted above, that practice is improper, as it conceals what is being identified and what is not. *See* Fed. R. Civ. P. 34(b)(2)(C). Because Plaintiffs nonetheless have agreed to produce documents responsive to the

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 24

below RFPs, however, CDK assumes that Plaintiffs are producing everything requested in these RFPs. For ease of reference, we list these RFPs in the chart below.

For certain of the RFPs identified below, Plaintiffs also object on the basis that "the documents may not be maintained in the fashion requested and would require Plaintiffs to create documents not presently in existence." If Plaintiffs do not in fact have in their possession documents that are directly responsive to these Requests, please be prepared to let us know what type of documents Plaintiffs intend to produce in response to these RFPs.

Lastly, for certain of the below RFPs, Plaintiffs purport to limit their agreement to produce to only certain responsive documents. Please be prepared to discuss what types of documents Plaintiffs plan to withhold based on these limitations and the basis for such limitations.

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| **DEALERTRACK** | | | | |
| 6 | | Decision for DealerTrack to offer an "open" DMS | | |
| 9 | | Standard agreements with Dealers for DMS services | | |
| 11 | | Comparisons of DealerTrack DMS systems with others | | |
| 12 | | Number and identity of DealerTrack DMS customers | X | |
| 13 | | Win/loss reports re dealer switching to/from DealerTrack DMSs | X | |
| 14 | | DealerTrack's strategies and communications re dealers switching DMS providers | | |
| 15 | | Analysis of ability of dealers to switch DMS providers | | |
| 17 | | DealerTrack's DMS market share | X | |
| **APPLICATIONS** | | | | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 25

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| 33 | 9 | Docs re "superiority" of apps | | |
| 36 | 12 | Complaints from dealers re Cox/AutoLoop apps | | |
| **DEALERTRACK THIRD-PARTY ACCESS POLICIES** | | | | |
| 37 | | Policies re third-party access to DealerTrack DMSs | | |
| 41 | | Standard OpenTrack agreements | | |
| **ACCESS TO CDK OR REYNOLDS DMS** | | | | |
| 54 | | Cox or third-party extractor as "agent" | | |
| 61 | 32 | CDK/Reynolds' third-party access policies, Security First, and 3PA | | |
| 62 | 33 | CDK or Reynolds blocking access | | Responsive documents regarding "efforts" or "threats" made by CDK to block |
| 63 | 34 | CDK employee admitted that "rhetoric around security has little capability" | | |
| 64 | 14 (under "Apps" section) | Inability to create and modify repair orders | | |
| | 15 (under "Apps" section) | Ability to create and modify repair orders using SmartLane by accessing non-CDK DMSs | | |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 26

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| **DATA EXTRACTION SERVICES** | | | | |
| 67 | 18 (under "Access to CDK/RR DMS" section) | Pricing and/or services offered by any third-party data extractor to access CDK and Reynolds DMSs | | |
| **3PA AGREEMENTS/CERTIFICATION** | | | | |
| 72 | 35 | 3PA agreements | | |
| 73 | 36 | Reynolds 3PA participation, fees | | |
| 74 | 37 | Pass-through fees | | |
| 75 | | CDK "threats" to discontinue Cox integrations | | |
| 76 | 38 | 3PA certification and applications | | |
| | 39 | 3PA pricing terms for AutoLoop products | | |
| **PRICING & FINANCIAL INFO -- APPLICATIONS** | | | | |
| 79 | 49 | Monthly revenue, costs and profits | X | |
| 80 | 50 | Quarterly revenue and profits | X | |
| 81 | 51 | Fees paid to third-party data extractors for Cox/AutoLoop apps | X | Responsive docs "with respect to integration and/or extraction fees paid." |

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 27

| Cox Resp. No. | AL Resp. No. | Description of Documents Requested | "Docs May Not Be Maintained in Fashion Requested" Objection | Purported Limitation on Production |
|---|---|---|---|---|
| 83 | 53 | Revenue and profit projections | X | |
| **PRICING & FINANCIAL INFORMATION – DATA EXTRACTION SERVICES** | | | | |
| 84 | 54 | Fees paid to third-party data extractors for apps | X | |
| **MISCELLANEOUS** | | | | |
| | 58, 59 | Analysis of ability of dealers to switch DMS providers | | |
| 93 | | Wind down agreements b/t Cox and DMS providers | | |
| 95 | | CDK's statement that Cox is source of "ongoing deficiencies" | | |
| 97 | | Complaints that Cox failed to focus on dealer needs | | |
| 94 | 62 | Coordinated conduct by CDK & Reynolds | | |
| 99 | 64 | Docs relied upon in complaint | | |
| 100 | 65 | Subpoenaed docs | | |
| 103 | 68 | Docs produced to FTC re joint conduct investigation | | |
| 105 | 70 | Doc retention policies | X | |
| 106 | 71 | Org charts | X | |

We look forward to resolving these issues during the meet-and-confer this week. Please let us know your availability on Friday afternoon.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 17, 2018
Page 28

Sincerely yours,

Andrew S. Marovitz

cc:    Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Matthew Provance

# Exhibit J-2

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 23, 2018

**Ethan A. Hastert**
Direct Tel +1 312 701 7656
Direct Fax +1 312 706 8368
ehastert@mayerbrown.com

**By E-Mail**

Daniel S. Guarnera
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Daniel:

I write to follow up Friday's meet-and-confer regarding CDK's proposed search terms for AutoLoop and Cox (collectively, "Plaintiffs"). During the meet-and-confer, Plaintiffs agreed to provide CDK with the following information this week:

- Hit counts for each term proposed by CDK that Plaintiffs have objected to outright on relevance grounds or as overbroad.

- A list of search terms that fall into the following categories (as described by Plaintiffs during today's meet-and-confer): (1) those that, according to Plaintiffs, are relevant only to "CDK's and Reynolds' pro-competitive justifications;" and (2) those that, according to Plaintiffs, are relevant only to counter-claims CDK has brought against non-Cox and non-AutoLoop parties.

Plaintiffs also agreed to consider providing post-modification hit counts for each search term that Plaintiffs have modified—and pre-modification hit counts for those that Plaintiffs have modified and inadvertently failed to provide pre-modification hit counts for in Plaintiffs' July 12, 2018 email. Given the rapidly approaching August 6 motions deadline, we request that you respond to this letter by COB tomorrow (7/24) letting us know whether you will provide this information, and, if so, whether you are willing to provide it by the end of this week (7/27).

With regard to the search terms that Plaintiffs have: (1) objected to; (2) provided hit counts for; and (3) not offered modifications to, CDK will review those search terms and provide suggested modifications (if any) tomorrow. Likewise, once CDK has received the hit counts on Plaintiffs' suggested modifications (*see* second bullet above), CDK will evaluate whether CDK objects to Plaintiffs' proposed modifications and will promptly inform Plaintiffs of any objections or additional proposed modifications.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Daniel S. Guarnera
July 23, 2018
Page 2

Additionally, during the meet-and-confer, Plaintiffs indicated that they believe documents: (1) related to "CDK's and Reynolds pro-competitive justifications;" or (2) related to "CDK's counterclaims" are only "marginally relevant." As an example of the former, Plaintiffs cited documents related to data security or data integrity, such as unauthorized code on the DMS, and as an example of the latter, Plaintiffs referenced documents related to unauthorized or hostile access. As a result, Plaintiffs are objecting to running search terms targeting those documents and intend to only review and produce any such documents to the extent that they hit on other, unrelated search terms. As noted on Friday, CDK disagrees with Plaintiffs' position as we believe that the pleadings and discovery to date make clear that these documents are highly relevant to the issues in this litigation. Thus the parties are at impasse on this issue.

Sincerely,


*/s/ Ethan A. Hastert*
Ethan A. Hastert

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz
        Matthew Provance

# Exhibit J-3

# MAYER · BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 24, 2018

**By E-Mail**

**Britt M. Miller**
Direct Tel +1 312 701 8663
Direct Fax +1 312 706 8763
bmiller@mayerbrown.com

Michael N. Nemelka, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:    *Dealer Management System Antitrust Litigation*,
       MDL 2817: *Cox v. CDK* (18-CV-1058) & *Loop v.
       CDK* (18-CV-2521))

Dear Mike:

I'm writing to follow-up on our discussion of last Wednesday, July 18, regarding the parties' disagreement as to the appropriate custodians for your clients Cox Automotive (and its eight plaintiff subsidiaries) and AutoLoop.

To recap:

- On May 25, 2018, CDK proposed the following custodians for each of Cox and AutoLoop:

  o *Cox Automotive*: CDK identified 15 named custodians: Mike Barrington, Aaron Caw, Keith Jezek, Brian Green, John Kovac, Amy Mills, Sandy Schwartz, Lori Wittman, Paul Whitworth (inadvertently listed twice), Mani Fang, Jack Ternowchek, Dale Pollak, Chase Abbott, Sam Passer, and Corey Roberts; we also identified 7 subject matter custodians—namely those responsible for negotiating relevant contracts, interactions with relevant market participants, evaluating and purchasing certain products and services, responsibility for security and privacy threats and policies related thereto, responsibility for monitoring third-party access to Cox's DMS, responsibility for setting "integration" fees, and knowledge regarding Cox's alleged damages.

  o *AutoLoop*: CDK identified 9 named custodians: Steve Anderson, Graham Annett, Dough Denhem, Alex Eckelberry, Patrick Kelly, Sara Loehwing, Tony Petruzzelli, Matthew Rodeghero, and Jim Thompson; we also identified 6 subject matter custodians—namely those responsible for negotiating relevant contracts, interactions with relevant market participants, evaluating and purchasing certain products and services, responsibility for security and privacy threats and policies related thereto, responsibility for setting "integration" fees, and knowledge regarding AutoLoop's alleged damages.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 24, 2018
Page 2

As part of the parties' lengthy meet-and-confer discussions, you stated your belief that CDK's lists were overly broad and unduly burdensome and that all of the "subject matter" custodians were redundant of the named custodians that Cox and AutoLoop were willing to agree to, namely:

- *Cox Automotive (8 of the proposed 15):* Aaron Caw, Keith Jezek, Brian Green, John Kovac, Amy Mills, Lori Wittman, Paul Whitworth (again, inadvertently listed twice), and Dale Pollack.

- *AutoLoop (4 of the proposed 9):* Alex Eckelberry, Sara Loehwing, Tony Petruzelli, and Matthew Rodeghero.

*See* Letter from M. Nemelka to B. Ross and B. Miller, dated June 12, 2018.

In response we explained, at length, why Plaintiffs' complaints that CDK's proposed custodians were "redundant, overly burdensome, and largely irrelevant" are not well-taken. *See* Letter from M. Provance to M. Nemelka, dated July 12, 2018. Moreover, despite our repeated requests, Plaintiffs have refused to provide any organizational charts or any documentation to support their claims that any of the disputed custodians are actually duplicative or redundant. Nonetheless, in an effort to try to resolve this issue without motion practice, we offered to withdraw our requests for 3 of the Cox Automotive disputed custodians and 2 of the AutoLoop disputed custodians, adding only the following:

- *Cox Automotive:* Mike Barrington, Sandy Schwartz, Jack Ternowchek, and Corey Roberts; resulting in a total of 12 of the proposed 15 custodians.

- *AutoLoop:* Steve Anderson, Doug Denham, and Patrick Kelly; resulting in a total of 7 of the proposed 9 custodians.

*See, id.*

In our July 18 conversation, you stated that of the custodians identified in our July 12 Letter, Cox Automotive was *only* willing to add Sandy Schwartz and AutoLoop was *only* willing to add Steve Anderson. If CDK was unwilling to accept this ultimatum,[1] you explained, then the MDL Plaintiffs as a whole (not just Cox Automotive and AutoLoop) would consider the parties' agreement with respect to CDK's additional custodians to be null and void (as the parties would not have reached a "global resolution") and CDK, Cox Automotive, and AutoLoop (and presumably the Dealer Class Plaintiffs) would reserve their respective rights to seek/oppose the inclusion of any and all of the various custodians identified on their respective May 25, 2018 lists. As stated on our call, CDK disagrees that resolution of the Cox Automotive/AutoLoop

---

[1] Granted, you did intimate that Plaintiffs *might* be willing to offer one or two of the three other Cox custodians CDK requested, but only if CDK were willing to withdraw its request for Mr. Schwartz.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 24, 2018
Page 3

custodian issues has any bearing on the heavily negotiated agreement the parties reached with respect to CDK's custodians and we are disappointed that at this late date, the MDL Plaintiffs are taking such an untenable position—one which, we believe, is not supported by the parties' correspondence or discussions regarding the additional CDK custodians.

In any event, as you referenced the current uncertainty regarding custodians in the parties' most recent meet-and-confers, we either want to reach agreement on this in the very short term or promptly file a motion so that we can have some certainty and can meaningfully move forward with discovery. Thus, CDK is prepared to accept the following:

- _Cox Automotive:_ CDK will accept Sandy Schwartz and will withdraw its request for Jack Ternowchek. CDK stands by its request that Corey Roberts be a custodian.

- _AutoLoop:_ CDK will accept Steve Anderson provided that Plaintiffs will confirm that Mr. Anderson has relevant records to be searched—_i.e._, we will not be told later that AutoLoop has no records (or very limited records) for Mr. Anderson such that there is nothing to be searched. CDK will withdraw its request for Doug Denham and Patrick Kelly.

If we are in agreement, we understand that the MDL Plaintiffs will reaffirm the agreement the parties previously reached with respect to CDK's custodians—namely, the inclusion of Brian MacDonald, Jim Foote, Robert Marvin, Al Neitzel, David Wrobel, Mike Joza, Josh Douglas, John Lilly, Jeffrey Barr, Trey Gerlich, Scott Herbers, Michael Guentzel, and Mark Roman as full custodians for all cases in the MDL and Chris Morris as a partial custodian for _MVSC_ (the scope of which will be addressed by the parties' negotiations of search terms specific to Mr. Morris).

In addition, we have conferred with Reynolds's counsel regarding your offer with respect to Authenticom's custodians—again, an offer, if not accepted, you said would not only void the agreement with CDK, but also the MDL Plaintiffs' agreement with Reynolds regarding its additional custodians (which, like CDK, Reynolds does not believe is supported by the parties' correspondence on the issue). Specifically, you indicated that Authenticom would agree to include Joe Noth and Stephanie Vue and, potentially Collin Semb (subject to reaching agreement on all other custodian issues). Our records show that Authenticom had already agreed to include Joe Noth and would include Kyle Murphy as part of a "global resolution on custodians". _See_ Letter from M. Nemelka to B. Ross and B. Miller, dated June 12, 2018. Thus, for clarity, Defendants will accept Authenticom's offer to include Joe Noth, Kyle Murphy, Stephanie Vue and Collin Semb in order to resolve this issue—at least with respect to Authenticom.

In short, we believe that we have reached accord as to all outstanding Cox Automotive, AutoLoop, and Authenticom custodians, save one. Please let us know if Cox is willing to include Mr. Roberts or whether you are standing by your statement that CDK's unwillingness to accept only Sandy Schwartz for Cox (in addition to the agreed 8) means that there is no "global agreement" as to custodians and we should recommend the matter to the Court for resolution.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 24, 2018
Page 4

Regards,

Britt M. Miller

cc:    Plaintiffs' Co-Lead Counsel
       Reynolds's Lead Counsel
       Mark Ryan
       Andrew Marovitz
       Matthew Provance

# Exhibit J-4

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

July 26, 2018

*Via Electronic Mail*

Andrew Marovitz
Matthew Provance
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois  60606

  Re: Cox and AutoLoop Discovery Responses

Dear Andy and Matt,

  I write on behalf of Cox Automotive and AutoLoop with respect to our meet-and-confers on July 20, 2018, and July 23, 2018, concerning CDK's proposed search terms and requests for production.  At Andy's suggestion, this letter concerns only CDK's document requests.  We will address CDK's interrogatories in a separate letter.

  On these calls, we explained that CDK's Requests for Production ("RFPs" or "requests") are overbroad, burdensome, and seek irrelevant documents.  We stand on our objections to CDK's requests.  Nonetheless, in practice, we will produce all non-privileged documents that are responsive to CDK's document requests and that are reviewed as a result of our agreement to run search terms through custodial repositories, subject to several exceptions identified below.  We will do so even though many of CDK's requests seek irrelevant documents that we have no obligation to produce.  And we make this offer despite the fact that CDK and Reynolds are the primary source of relevant documents regarding the anticompetitive conduct at issue in this litigation.  Cox Automotive and AutoLoop have far fewer relevant documents, principally concerning the injuries they have suffered as a result of CDK's and Reynolds' anticompetitive conduct.

  Below we set forth the relevance limitations that we will impose in our review and the status of our search terms negotiations.

  **Relevance Limitations.**  CDK's requests seek an extraordinary amount of competitively sensitive information from Cox Automotive and AutoLoop that has no possible relevance to this litigation.  We will impose reasonable limitations on such requests.

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 2

*First*, CDK's requests seek substantially all documents related to Cox Automotive's and AutoLoop's "automotive software products or services" (Paragraph 2 of "Definitions" to Cox Automotive and Paragraph 3 of "Definitions" to AutoLoop) regardless of whether those applications are even at issue in the litigation and regardless of whether the documents discuss relevant issues. We will produce documents only to the extent they pertain to the applications at issue in this litigation (*e.g.*, Xtime). We will not produce documents that pertain to other applications (*e.g.*, Manheim).

Moreover, we will not produce all documents concerning the applications at issue. For example, Request No. 24 to Cox Automotive seeks "[a]ll . . . strategic plans . . . or strategies[] concerning Your Applications," which would result in the production of substantial amounts of competitively sensitive information that has no relevance to this litigation. We will limit our productions to documents that relate to (1) damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct, (2) data integration of Cox Automotive's applications and AutoLoop's applications with any DMS, and (3) any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS. We will not produce documents solely relating to other topics, such as planned product features.

*Second*, with respect to Cox, CDK's requests seek broad swaths of information regarding Dealertrack DMS without any relation to this litigation. For example, Request No. 8 seeks "[a]ll written business plans or presentations related to DealerTrack." We will limit requests regarding Dealertrack to documents related to three broad issues that will capture any documents with possible relevance to this litigation: (1) competition in the DMS market, (2) data integration with Dealertrack DMS, (3) the security, performance, and data integrity of Dealertrack DMS.

*Third*, we request that CDK explain the relevance of the following requests before we agree to produce documents responsive to these requests:

- **Request No. 4 (Cox Automotive)** seeks "[a]ll documents You submitted to the United States Federal Trade Commission or any other regulatory authority as part of Your Hart-Scott-Rodino Act ('HSR') filing related to Your acquisition of Dealertrack." Please explain how these documents are relevant, particularly in light of CDK's decision to seek a protective order against producing documents provided to the FTC in relation to the Auto/Mate merger.

- **Request No. 5 (Cox Automotive)** seeks "[a]ll documents related to the divestiture of assets and other conduct required of You pursuant to the Final Judgment (Dkt. No. 11) entered on January 21, 2016, in *United States v. Cox Enter., Inc., et al.*, Civ. Action No. 15-01583 (D.D.C.)." As with Request No. 4, please explain how this request is relevant,

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 3

particularly in light of CDK's refusal to provide similar documents in connection with the Auto/Mate merger.

- **Request No. 85 (Cox Automotive) and Request No. 55 (AutoLoop)** seek "[d]ocuments sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on a CDK [or Reynolds] DMS." (AutoLoop's request does not include the bracketed text.) Please explain what you mean by "syndication of data" and how that would be relevant to this litigation.

- **Request No. 86 (Cox Automotive) and Request No. 56 (AutoLoop)** seek "[d]ocuments sufficient to show Your monthly revenue, costs, and profit (including profit margin) derived from any syndication of data maintained on each non-CDK DMS." Please explain what you mean by "syndication of data" and how that would be relevant to this litigation.

- **Request No. 87 (Cox Automotive) and Request No. 57 (AutoLoop)** seek "[d]ocuments sufficient to show how data from each DMS was integrated into Your Applications." This request appears to seek all of the highly confidential technical details of Cox Automotive's applications. Please explain how that would be relevant to this litigation. To the extent this request is merely seeking the manner in which Cox Automotive and AutoLoop's applications integrate with non-CDK and non-Reynolds DMS, we would consider providing such data.

- **Request No. 96 (Cox Automotive) and Request No. 13 (AutoLoop)** seek "[a]ll documents related to Your offer and marketing of bundled products and Relevant Services and compensation for solution gaps." Please explain what you mean by "solution gaps" as well as the relevance of this request to the litigation.

- **Request No. 104 (Cox Automotive) and Request No. 69 (AutoLoop)** seek "[a]ll documents related to any presentations that You have prepared or given, or meetings of Your board of directors, shareholders, or investors, that refer or relate to CDK, Your claims and allegations, or this litigation." Please explain the relevance of any documents that "refer or relate to CDK" that would not already be responsive to other requests.

**Search Terms.** On May 25, 2018, CDK provided lists of 129 and 123 proposed search terms for Cox Automotive and AutoLoop, respectively. We investigated the burden of these search terms – many of which were extremely broad and difficult to parse – with respect to more than 25 custodians that CDK requested from Cox Automotive and AutoLoop. On July 12, 2018, we responded to CDK's proposal. Our responses fell into four categories: (1) search terms that we agreed to run without modification; (2) search terms that we agreed to run with modifications

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 4

to reduce the burden; (3) search terms that were overly burdensome and had no readily apparent
modification to reduce the burden; and (4) search terms that were irrelevant.

*Category 1*: We have agreement on these search terms and do not believe they need to be
discussed further

*Category 2*: CDK requested on our July 20, 2018 meet-and-confer that we provide hit
counts for the modified terms. Those hit counts are provided in Exhibits A and B. Please let us
know whether you agree with our modifications.

*Category 3*: CDK committed on our July 20, 2018 meet-and-confer either to propose a
modified search term or to state that it was requesting we run the original search term. CDK
provided those responses on July 24, 2018. We have responded to these revised terms in
Exhibits A and B.

*Category 4*: We explained on our July 20, 2018 meet-and-confer that we were inclined
not to agree to run search terms targeting two categories of documents. *First*, we do not believe
it would be appropriate to apply search terms that target documents to support CDK's
procompetitive justifications of DMS security, performance, and data integrity. We explained
that evidence supporting those procompetitive justifications would be within CDK's control and
that Cox Automotive's documents would be largely irrelevant. Moreover, we explained that we
would already produce documents relating to DMS security, performance, or data integrity to the
extent those documents are gathered by other search terms. We further noted that CDK had
proposed broad search terms that could be expected to gather such documents.

We understand that you believe documents within Cox Automotive's possession – but
not CDK's – may somehow provide justification for CDK's anticompetitive acts. We are willing
to consider any authority you have on this issue.

*Second*, we do not believe it would be appropriate to run search terms targeting
documents related to CDK's theoretical counterclaims hinging on purported unauthorized access.
We explained that CDK has not brought such counterclaims against Cox Automotive or
AutoLoop, and therefore, those requests were irrelevant. CDK stated that such requests would
be relevant to CDK's counterclaims against *other* plaintiffs. We stated that we would consider
running search terms that are tailored specifically to those counterclaims against other plaintiffs.
Please let us know whether you will propose such search terms.

Although we do not believe any search terms in Category 4 should be used – even those
with limited numbers of hits – we are willing to run *some* of these disputed terms as a
compromise. Those terms are listed in Exhibits A and B. In addition, as you requested during

Andrew Marovitz
Matthew Provance
July 26, 2018
Page 5


our July 20, 2018 meet-and-confer, those exhibits provide hit counts for all remaining search terms in Category 4 and identify why we believe those search terms target irrelevant documents.[1]



Best regards,

*s/ Dan Dorris*

Dan Dorris


Enclosure

CC:      MDL Counsel Email List

---

[1]      In requesting additional data regarding hit counts, CDK stated that it would provide a commensurate level of detail to plaintiffs in these actions.

**CDK's Proposed Search Terms to Cox Automotive**

**INTENTIONALLY OMITTED**

**EXHIBIT B**

**CDK'S PROPOSED SEARCH TERMS TO AUTOLOOP**

*AutoLoop proposes to run search terms for all searches from January 1, 2014, to April 9, 2018 (the day AutoLoop filed its complaint). AutoLoop's willingness to use any of CDK's proposed search terms is dependent on reaching a final reasonable agreement on custodians, and therefore AutoLoop reserves all rights.*

| No. | Search Terms | AutoLoop Comments | De-duplicated Hits, Date Limited WITHOUT FAMILIES[1] | Cox No. |
|---|---|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | Not relevant; pro-competitive justification. | 3736 | 1 |
| 2 | (CDK OR Reynolds OR DMS OR or system) AND (script* OR program OR executable OR bypass OR avoid OR (work w/5 around) OR (break w/5 (through OR down)) OR evade) | Not relevant; counterclaims. | 14942 | 2 |
| 3 | "Data Authorization" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 3 |
| 4 | July 24 proposal: (data /3 integrat*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") OR (data /3 extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") | Agreed to 7/24 proposal. | | 4 |
| 5 | (DMS OR "dealer management system") /5 market*) | Agreed. | | 5 |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" | Agreed. | | 6 |
| 7 | "nonpublic personal information" OR NPI | AutoLoop does not believe this term is relevant. We are, however, willing to | | 7 |

[1] Adding families to a search typically increases the total number of responsive documents by a factor of more than 2.

| | | compromise and run this search term. | | |
|---|---|---|---|---|
| 8 | "personally identifiable information" OR PII | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 8 |
| 9 | "Proprietary Data" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 9 |
| 10 | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 10 |
| 11 | "sensitive personal information" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 11 |
| 12 | "User Emulation" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 12 |
| 13 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) | Not relevant; pro-competitive justification. | 3736 | 13 |
| 14 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 31916 | N/A |
| 15 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track")) AND data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 2312 | N/A |
| 16 | July 24 proposal: ((compet* OR threat* OR challeng* OR superior* OR compare*) w/15 (CDK)) AND (app* | This search term remains overbroad. | 3711 | 14 |

| | | | | |
|---|---|---|---|---|
| | OR solution* OR product* OR service*) OR ((app* OR solution* OR product* OR service*) w/15 (compet* OR threat* OR challeng* OR replac* OR bypass*)) AND (DMS OR "dealer management system") | | | |
| 17 | (dealer w/10 5 data) AND w/20 ((retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) | AutoLoop is willing to agree to the term as modified (the modification was circulated on our last meet and confer). | | 15 |
| 18 | July 24 proposal: (los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang* or mov*) w/15 (dealer or customer or contract or business or sale)) AND (DMS or "dealer management system" or app* or vendor or integrator or service* or product* or solution*)) | This search term remains overbroad. | 21375 | 16 |
| 19 | (((pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) AND w/5 data) AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. Even as revised, this term is overbroad. | 4144 | 17 |
| 20 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) | Not relevant; pro-competitive justification. | 1284 | 18 |
| 21 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 1468 | 21 |

3

| | | | | |
|---|---|---|---|---|
| **22** | July 24 proposal: (up w/3 front) or "up front" or install* or initial or recur* or month* or annual or (set w/3 up) or setup) w/20 (fee* or pric* or charg or rat* or bill or cost* or pay*)) and (extract* or integrat*)) | This search term remains overbroad. | 14160 | 22 |
| **23** | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | Not relevant; pro-competitive justification. | 2653 | 23 |
| **24** | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | Agreed. | | 24 |
| **25** | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 3914 | 25 |
| **26** | (*settle* or assign*) AND (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 action or proceeding)) OR MDL OR "multi district") | Not relevant; miscellaneous. | 2746 | 26 |
| **27** | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | Agreed. | | 27 |
| **28** | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) | Agreed. | | 28 |
| **29** | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) | Not relevant; pro-competitive justification. | 863 | 29 |
| **30** | July 24 proposal: (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) AND (CDK OR RR OR Rey* OR "R&R" OR Authenticom OR litigat* OR Cottrell OR "DMS MDL" OR "Kellogg" OR "1:18-CV-864") | AutoLoop is still exploring its alternative proposal. | | 30 |
| **31** | (breach or hack or attack or data) AND (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire") | Not relevant; pro-competitive justification. | 7818 | 31 |

| | | | | |
|---|---|---|---|---|
| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) | Agreed. | | 32 |
| 33 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | Agreed. | | 33 |
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) | Not relevant; pro-competitive justification. | 1865 | 34 |
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | Upon additional processing and review, this term is overbroad as written. AutoLoop is willing to meet and cover about an alternative search term. | 8985 | 35 |
| 36 | (CDK OR Reynolds OR R&R ~~OR RR OR DMS or "Dealer Management System" OR Cox OR DealerTrack)~~ ~~AND~~w/10 (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | Agreed with modifications proposed prior to our last meet and confer. | | 36 |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) | Agreed. | | 37 |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) ~~AND~~ w/5 (control or power or authority) ~~AND~~ w/10 (data or system) | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable | 602 | 38 |

| | | modifications. | | |
|---|---|---|---|---|
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | Not relevant; pro-competitive justification. | 27 | 39 |
| 40 | (Compet* w/20 harm*) | Agreed. | | 40 |
| 41 | (contract* or agree*) AND (term or year* or length or period) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 18229 | 41 |
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 3801 | 42 |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) | Not relevant; pro-competitive justification. | 1428 | 43 |
| 44 | (data AND integration) w/20 market | Agreed. | | 44 |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) | Agreed. | | 45 |
| 46 | "Dealer Management System" w/5 market | Agreed. | | 46 |
| 47 | "Dms function*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | 47 |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | 48 |
| 49 | July 24 proposal: (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Rey* or RR or "R&R") AND (analy* or forecast or project* or survey* or evaluat* or stud* or (market w/3 share) or (market /3 condition) or compet*) | This search remains overbroad. | 63343 | 49 |

| | | | | |
|---|---|---|---|---|
| 50 | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | [50](#) |
| 51 | July 24 propsoal: (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph) AND (CDK OR 3PA OR "third party access" OR "partner program" OR "Access Program") | Agreed. | | [51](#) |
| 52 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | Agreed. | | [52](#) |
| 53 | (exclusiv*or sole or only) w/20 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system") | Upon further document collection and analysis, this term is overbroad as written. AutoLoop is willing to meet and confer about reasonable modifications. | 22234 | [53](#) |
| 54 | July 24 proposal: (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) and ((pass w/5 through) or passthrough or share* or sent or "passed to" or "passed on" or "pass on") | This search remains overbroad. | 26448 | [54](#) |
| 55 | (fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/~~20~~ 10 (~~vend* or integrat* or appl* or~~ Authenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | 15972 | [55](#) |
| 56 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") | Agreed. | | [56](#) |
| 57 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) | Not relevant; pro-competitive justification. | 593 | [57](#) |
| | (harm or injur* OR disrupt* OR los* OR interrupt* ~~OR~~ | Agreed with modifications proposed before | | [58](#) |

7

| 58 | ~~cancel* OR end* OR stop*~~) w/15 (Reynolds OR R&R OR RR OR CDK) | our last meet and confer. | | |
|---|---|---|---|---|
| 59 | (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative" | As originally formulated, the search string was overbroad. The search also seeks documents that are likely to be privileged, and thus the burden associated with the search is disproportionate to the likelihood of producing responsive, non-privileged documents. | 9559 | 59 |
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) AND (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) | Not relevant; pro-competitive justification. | 15792 | 60 |
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | Not relevant; pro-competitive justification. | 1448 | 61 |
| 62 | <mark>July 24 proposal:</mark> ((fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI or DealerVault or Authenticom or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes)) AND (integrat* or extract* or (data w/3 access)) | This search remains overbroad. | 7915 | 62 |
| 63 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) w/20 (data or access* or integrat* or 3PA or "third party access" or "partner program" or "Access Program") | As formulated, this search term is overbroad. Moreover, it appears to seek information regarding CDK's pricing, which is already within CDK's possession. | 24933 | 63. |
| | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/~~15~~ 10 (DealerVault or | This search term is overbroad, even with the proposed modifications circulated before | 1376 | 64 |

| 64 | Authenticom ~~or Integrat* or vendor*~~ or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) | our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | | |
|---|---|---|---|---|
| 65 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/105 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*))) | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | 4625 | 65 |
| 66 | "Query Builder" OR (QB AND Reynolds) | Agreed. | | 67 |
| 67 | ("Report Generator" OR "report scheduler") AND (schedule or automat*) | Agreed. | | 68 |
| 68 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | As formulated, this search term is overbroad and does not appear likely to return relevant documents. We are willing to discuss the purported relevance of this request. | 2799 | 69 |
| 69 | July 24 proposal: (*reyrey.com) AND (*cdk.com OR *adp.com) OR ((*reyrey.com OR Rey OR RR OR "R&R") AND CDK AND (DEA OR "Data Exchange Agreement" OR RCI OR 3PA OR "third party access" OR "Access Program" OR "partner program" OR Authenticom OR hostile OR integrat* OR extract* OR block* OR (access w/3 (DMS OR data) OR destroy* OR market* OR compet*)) | Agreed. | | 70 |
| 70 | "Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access" | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 7917 | 71 |
| 71 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | Not relevant; pro-competitive justification. | 1327 | 72 |
| 72 | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) | Not relevant; pro-competitive justification. | 2515 | 73 |
| 73 | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) | Not relevant; pro-competitive justification. | 3158 | 74 |

| | | | | |
|---|---|---|---|---|
| 74 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 742 | 75 |
| 75 | (Superior Integrated Solutions) OR SIS OR *@4-superior.com | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 11233 | 76 |
| 76 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/10 (corrupt* OR integrity)) OR (data w/10 security) OR complain* or investigat*) | Not relevant; pro-competitive justification. | 20765 | 77 |
| 77 | July 24 proposal: (Third w/3 Party) OR thirdparty OR "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR data OR "Dealer Management System") | This search remains overbroad. | 4411 | 78 |
| 78 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary | Agreed. | | 79 |
| 79 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | Not relevant; counterclaims. | 3728 | 80 |
| 80 | (unauthorized w/5 access) w/20 (data OR server OR information) | Not relevant; counterclaims. | 905 | 81 |
| 81 | (win or los* or cancel* or switch or defect* or mov* or chang* or transfer*) w/20 (DMS or "dealer management system" OR CDK OR Rey* or "R&R" or RR or Cox or Dealertrack or Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or RCI or "certified interface" or DealerVault or Authenticom or "Auto/mate" or Automate or "Auto Mate" or SelectQu or SelectQ or | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 145107 | 82 |

| | "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes or AutoLoop or vendor or integrat*) | | | |
|---|---|---|---|---|
| **82** | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 83 |
| **83** | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) | Not relevant; pro-competitive justification. | 4770 | 84 |
| **84** | Agreement w/20 (CDK OR Reynolds OR R&R) w/20 (OR illegal OR anticompet* OR alleg*) | Agreed as modified (modification circulated prior to our last meet and confer). | | 85 |
| **85** | anticompet* | As formulated, this search term is overbroad. | 107 | 86 |
| **86** | antitrust | As formulated, this search term is overbroad. | 186 | 87 |
| **87** | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 | As formulated, this search term is overbroad. | 1044 | 88 |
| **88** | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | Not relevant; counterclaims. | 1068 | 89 |
| **89** | July 24 proposal: (*cdk.com OR *adp.com OR CDK OR ADP) AND (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*) | This search remains overbroad. | 13600 | 91 |
| **90** | Circumvent AND (security OR dms OR block*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 92 |
| **91** | Cox or Autotrader or "Dealer Dot Com" or DealerTrack or "Dealer Track" or HomeNet or "Kelley Blue Book" OR vAuto OR VinSolutions or Xtime or 17-cv-925 | As formulated, this search term is overbroad. | 13803 | (compare to 90) |
| **92** | cyber w/5 insurance | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 93 |
| **93** | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" | We are willing to compromise and run this search term. | | 94 |
| **94** | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov | As formulated, this search term is overbroad. | 1956 | 95 |

| 95 | FTP w/3 push | Agreed. | | 96 |
|---|---|---|---|---|
| 96 | hide or conceal or (cover w/3 up) or veil or bury | As formulated, this search term is overbroad. | 1099 | 97 |
| 97 | Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | Not relevant; counterclaims. | 4771 | 98 |
| 98 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 99 |
| 99 | Lock w/10 account | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 100 |
| 100 | OEM AND data | As formulated, this search term is overbroad. | 5764 | 101 |
| 101 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | As formulated, this search term is overbroad. | 867 | 102 |
| 102 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | 103 |
| 103 | Secur* w/20 (Audit* OR Standard OR proced*) | Not relevant; pro-competitive justification. | 788 | 104 |
| 104 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" | Agreed. | | 105 |

| | | | |
|---|---|---|---|
| | OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | | |
| 105 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv- 01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | Agreed. | 106 |
| 106 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) | Agreed. | 107 |
| 107 | manual w/10 (report* or tool* or extract*) | Agreed. | 108 |
| 108 | July 24 proposal: (*cdk.com OR *adp.com OR CDK OR ADP) AND (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*) | This search term remains overbroad. <br><br> 9095 | 109 |
| 109 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) | As formulated, this search term is overbroad and seeks information within CDK's possession. <br><br> 2739 | 110 |
| 110 | July 24 proposal: ((manag* /2 interfac*) OR 3PA OR RCI OR "third party access" OR "Access Program" OR "Certified Interface" OR ((CDK OR RR OR Rey* OR "R&R") w/5 (DMS OR "dealer management system"))) w/10 (agree* OR contract*) | This search term remains overbroad. <br><br> 8420 | 111 |
| 111 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS) | Not relevant; counterclaims. <br><br> 1245 | 112 |
| 112 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) | Agreed. | 113 |

13

| | | | | |
|---|---|---|---|---|
| 113 | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract)) | Not relevant; counterclaims. | 7456 | 114 |
| 114 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") | Agreed. | | 116 |
| 115 | ("solution gap*" OR bundl* /s (app* OR solution* OR service*)) | Not relevant; miscellaneous. | 1986 | 122 |
| 116 | SmartLane* AND ("Service Edge*" OR CDK OR prob* OR issue* OR allow* OR access*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 5809 | N/A |
| 117 | CDK* ~~AND~~ w/10 (nondisclosure* or share* or provide*) ~~AND~~ w/10 (fee* OR charge*) | Agreed. | | 123 |
| 118 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | Agreed. | | 124 |
| 119 | Non-DMS or (DMS w/5 alternative) | Agreed. | | 125 |
| 120 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | Not relevant; procompetitive justification. | 2153 | 126 |
| 121 | (declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) | Not relevant; counterclaims. | 2928 | 127 |
| 122 | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or | Agreed. | | 128 |

| | Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell | | | |
|---|---|---|---|---|
| **123** | Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort* | As formulated, this search term is overbroad. | 2607 | 129 |

# Exhibit J-5

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

July 27, 2018

<u>B</u>Y <u>E-M</u>AIL

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

Michael N. Nemelka, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, *Cox v. CDK* (18-CV-1058) &
        *Loop v. CDK* (18-CV-2521)

Dear Mike:

I write to follow up on our July 17 letter and July 23 telephonic meet-and-confer regarding Cox Automotive's ("Cox") and Loop, LLC's ("AutoLoop") (collectively, the "Individual Plaintiffs") responses to CDK's respective First Sets of Interrogatories and Requests for Production ("RFPs") (collectively, the "discovery requests"). During that lengthy meet-and-confer, the parties fully addressed Individual Plaintiffs' responses to CDK's First Sets of Interrogatories, including Cox's improper general objection limiting its responses to information generated after January 1, 2014, a full year after the commencement of the agreed-upon general discovery period. We plainly are at-issue with respect to a number of the interrogatories, but would welcome Individual Plaintiffs' withdrawal of any of the objections that they told us they wished to reconsider.

Also during the meet-and-confer, the parties began discussing Individual Plaintiffs' responses to CDK's RFPs. After covering the first 24 or so RFPs, Individual Plaintiffs proposed to send to us a written guide of their production offer that would obviate the need to walk through the remaining RFPs. Thank you for your letter last night in that regard. We are reviewing it and will respond in substance to it before our follow-up meet-and-confer on Tuesday, July 31.

In the meantime, CDK agreed to give further thought to a handful of issues that the Individual Plaintiffs raised during our July 23rd meet-and-confer. The balance of this letter addresses those.

Before doing so, we note that the specific discovery requests addressed below are no broader than corresponding requests that the Individual Plaintiffs and other plaintiffs have served on CDK. CDK's offer to narrow the scope of these discovery requests are contingent upon the Individual Plaintiffs' willingness to do the same for corresponding discovery requests served on CDK where CDK's objections to the Requests are principally based on their overbreadth.[1] If

---

[1]     CDK will be addressing the Individual Plaintiffs' RFPs in separate correspondence.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 27, 2018
Page 2

they do not agree to do so, CDK will seek compliance with its requests as written.  Here are the requests we agreed to continue to consider, along with our specific offers to narrow them:

Cox Interrogatory Response No. 19/AutoLoop Interrogatory Response No. 15 (*number of times You or Your Data Extractors accessed a CDK DMS*): Cox and AutoLoop claimed that it would be unduly burdensome to identify each time Individual Plaintiffs or their Data Extractors "accessed" a CDK DMS.  CDK has considered your objection and proposes to revise these interrogatories to the following: "Identify the number of times that You or Your Data Extractors (when acting on Your behalf or at your direction) have accessed and/or queried data maintained on a CDK DMS through means other than approved 3PA access during each month since January 1, 2013."  Please let us know whether Individual Plaintiffs will fully answer the interrogatories as proposed above.

Cox RFP Response Nos. 1 (*public statements re DealerTrack's acquisition*), 2 (*statements to investors re DealerTrack acquisition*), 4 (*filing re DealerTrack acquisition*), 8 (*written DealerTrack business plans or presentations*), 10 (*marketing materials that reference CDK or Reynolds*): In our meet-and-confer, Cox objected to each of these RFPs as overly broad, despite the fact that many of Individual Plaintiffs' RFPs served on CDK are as broad, if not broader, than these particular RFPs.  For example, Individual Plaintiffs' RFP Nos. 29, 31 and 37 each seek communications with Dealers and OEMs that in any way mention the Individual Plaintiffs, regardless of context.

Additionally, with respect to RFP No. 4, you claimed in our meet-and-confer that this RFP is inconsistent with CDK's position with respect to the documents Authenticom requested regarding AutoMate.  You also questioned the relevance of RFP No. 4 in last night's letter, particularly in light of CDK's efforts to obtain a protective order in relation to the AutoMate documents.  CDK disagrees with your characterization of RFP No. 4 as being parallel to Authenticom's demand for the entirety of CDK's production to the FTC in connection with the previously proposed AutoMate acquisition.  CDK further notes that it has agreed to produce in the *Authenticom* litigation the relevant documents from its production of AutoMate documents to the FTC.  The parties' positions regarding the AutoMate documents are set forth, at length, in their briefing on CDK's motion for a protective order; there is no need to rehash them here.  Moreover, CDK made clear during the meet-and-confer that documents responsive to RFP No. 4 are relevant to the nature of competition in the relevant marketplace.

That being said, in your letter from last night, you offered to produce documents responsive to DealerTrack-specific RFPs (which presumably includes these RFP Nos. 1, 2, 4, 8 & 10) that relate to a limited subset of issues.  While we appreciate your offer, the issues as outlined in your letter are too narrow.  That said, the parties do not appear to be too far apart in their respective positions at least with respect to RFP Nos. 1, 2, 4, 8 & 10.  Thus, in the spirit of compromise, CDK is willing to revise these RFPs to the following, which closely tracks your proposal with slight modifications:

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 27, 2018
Page 3

- RFP 1: All documents related to any public statements about the acquisition of DealerTrack that relate to or reference (a) competition in the DMS market,[2] including any mention of CDK and/or Reynolds; (b) data integration; or (c) third-party access to DMSs, including DealerTrack's DMS.

- RFP 2: All documents related to any statements made to DealerTrack investors regarding Your acquisition of DealerTrack that relate to or reference (a) competition in the DMS market, including any mention of CDK and/or Reynolds; (b) data integration; or (c) third-party access to DMSs, including DealerTrack's DMS.

- RFP 4: All documents You submitted to the United States Federal Trade Commission as part of Your Hart-Scott-Rodino Act ("HSR") filing related to Your acquisition of DealerTrack and that otherwise relate to or reference (a) competition in the DMS market, including any mention of CDK and/or Reynolds, (b) data integration, or (c) third-party access to DMSs, including DealerTrack's DMS, or that are otherwise relevant to this MDL, and, to the extent not already included in the aforementioned request, all documents that are responsive or otherwise submitted pursuant to Item 4(c) of Your HSR Form.

- RFP 8: All written business plans or presentations related to DealerTrack that relate to or reference (a) competition in the DMS market, including any mention of CDK and/or Reynolds, (b) data integration, or (c) third-party access to DMSs, including DealerTrack's DMS.

- RFP 10: All marketing materials that refer to DealerTrack, Your Applications, the OpenTrack program or API, and that reference or relate to CDK, Reynolds, and/or any CDK or Reynolds product, including, but not limited to, materials related to third-party access to DMSs, including DealerTrack's DMS or created after June 1, 2015 (which is shortly before the public announcement of CDK's SecurityFirst initiative).

Please let us know whether Cox will fully produce documents in response to these formulations of RFP Nos. 1, 2, 4, 8 & 10.

We look forward to receiving your letter and to discussing these proposals during our next meet-and-confer on Tuesday, July 31.

---

[2]     The term "DMS market" is used throughout this letter and is intended to have the same meaning as the term is defined in CDK's response to No.12 of CDK's Responses and Objections to Authenticom's First Set of Interrogatories.

Mayer Brown LLP

Michael N. Nemelka, Esq.
July 27, 2018
Page 4

Sincerely,

Andrew S. Marovitz

# Exhibit J-6

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 1, 2018

**BY E-MAIL**

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

Michael N. Nemelka, Esq.
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, *Loop v. CDK* (18-CV-2521)

Dear Mike:

Thank you for AutoLoop's July 30, 2018 Responses to CDK's Second Set of Interrogatories and Requests for Production ("Second Set of Discovery Requests"). To be sure, CDK's Second Set of Discovery Requests pertains to slightly different topics than CDK's first round of discovery requests, but we believe that the parties' discussions in the recent meet-and-confers provide clear guidance on their potential resolution. Applying consistent rules and standards articulated during those discussions would lead to the following results on the Second Set of Discovery Requests:

- **General Objection Nos. 18 to CDK's Interrogatories and 11 to CDK's RFPs (*time period January 1, 2014 to the present*)**: AutoLoop's objections purport to limit the time period to information generated after January 1, 2014, a year after the commencement of the agreed-upon period. *See* General Objection No. 18 to CDK's Interrogatories and No. 11 to CDK's RFPs. AutoLoop's agreement to start the discovery period on January 1, 2013, as it previously agreed for the first set of requests, would moot this issue. Please confirm.

- **Specific Responses/Objections to Interrogatory No. 19 and RFP Nos. 73-75:** Also consistent with our prior meet-and-confers, AutoLoop's confirmation now that it is not withholding non-privileged information or documents in response to Interrogatory No. 19 and RFP Nos. 73-75, but instead has responded in full with information presently known to it, while committing to promptly supplement these responses at a later date in the event new information is discovered, would moot this issue as well. Please confirm.

Let us know if you agree with our understanding. If not, we would be glad to meet-and-confer tomorrow or Friday. Let us know if that's necessary and, if it is, a convenient date/time. Thanks.

Mayer Brown LLP

Michael N. Nemelka, Esq.
August 1, 2018
Page 2


Sincerely,

Andrew S. Marovitz

# Exhibit J-7

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
————
(202) 326-7900
FACSIMILE:
(202) 326-7999

August 2, 2018

Andrew Marovitz
Matthew Provance
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois 60606

      Re:    Cox Automotive and AutoLoop Discovery Responses

Dear Andy and Ethan,

      We write on behalf of Cox Automotive and AutoLoop with respect to Andy's letters on July 27, 2018, July 30, 2018, and August 2, 2018, our meet-and-confer on July 31, 2018, and Andy's email on July 31, 2018. This letter is intended to memorialize the current agreements and outstanding areas of dispute regarding Cox Automotive's and AutoLoop's responses to CDK's Requests For Production ("RFPs") and interrogatories.[1]

## I.    CDK's RFPs To Cox Automotive And AutoLoop

      **Time Period.** In your July 30, 2018 letter, you requested that Cox Automotive and AutoLoop agree to search custodial documents back to January 1, 2013 rather than January 1, 2014. We believe this request is overbroad. Defendants likely have relevant documents prior to January 1, 2014 that would provide context and motivation for their illegal agreement, but Cox Automotive and AutoLoop would not. Nevertheless, in the interest of compromise, we will agree to extend the searches of custodial documents back to January 1, 2013.

      **General Limitations on RFPs.** In Cox Automotive's and AutoLoop's responses to the RFPs, we objected to a number of requests on relevance, burden, and other grounds. Notwithstanding those objections – which we continue to stand on – we explained in our July 26, 2018 letter that we would respond to CDK's RFPs by running agreed search terms through the

---

    [1]    As you noted in your August 2, 2018 letter, we stated during the first of our two meet-and-confers on July 31, 2018 that we would attempt to provide a letter response on August 1, 2018 or early August 2, 2018. However, during the second meet-and-confer that afternoon, CDK requested that Cox Automotive and AutoLoop attempt to run more than 60 modified searches. Those searches were time consuming.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

documents of agreed custodians and would produce responsive documents returned by those searches, subject to several limitations. As a result, CDK will receive many of the irrelevant (or marginally relevant) documents that it has requested from Cox Automotive and AutoLoop. On our July 20, 2018 meet-and-confer, we further explained that we would be willing to consider additional targeted searches for specific documents proposed by CDK. We have not yet received a response to that offer.

Our July 26, 2018 letter explains the limitations that we would impose during our search and review of custodial documents. *First*, we will only produce documents that relate to the applications at issue in this litigation. You have asked us to explain what we mean by the applications "at issue." By that, we mean the Cox Automotive applications and AutoLoop applications that have been harmed by CDK's and Reynolds' anticompetitive conduct and for which we seek damages or other relief in this litigation. Those claims are described in our complaints. This is a proper limitation because there is no basis for CDK to seek documents regarding applications that Cox Automotive and AutoLoop do not allege were harmed or for which they do not seek damages or other relief.

*Second*, we explained in our July 26, 2018 letter that we would only produce documents about the applications at issue that relate to (1) damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's and Reynolds' anticompetitive conduct, (2) data integration of Cox Automotive's applications and AutoLoop's applications with any DMS, and (3) any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS. For Cox Automotive, we would also produce documents that relate to (1) competition in the DMS market, (2) data integration with Dealertrack DMS, (3) the security, performance, and data integrity of Dealertrack DMS. As we have explained on several occasions, these categories are broad and include many documents that are not relevant to this litigation and that Cox Automotive and AutoLoop would be entitled to withhold from production.[2]

In your July 30, 2018 letter, on the July 31, 2018 meet-and-confer, and in your August 2, 2018 letter, you stated that these categories may be too narrow in some areas. Nonetheless, in your August 2, 2018 letter, you expressed the sentiment that there does not appear to be substantial disagreement on how to define these categories (a point on which we agree). Below we address the possible areas of disagreement:

    **1.** You requested that we include documents related to "competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds." We believe any relevant information in that category would already be subsumed within the category for documents relating to "damages suffered by . . . applications as a result of CDK's and Reynolds' anticompetitive conduct." That category includes documents relating to competition between Cox Automotive's applications and AutoLoop's applications and CDK's applications and Reynolds' applications. To avoid any confusion, we will agree to change this

---

[2] Your August 2, 2018 letter incorrectly refers to these categories as "relevancy issues." These categories are broader than what is relevant to this litigation. We offer to produce documents from these broad categories only as a compromise.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

category to have two subparts:  (a) "damages suffered by . . . applications as a result of CDK's and Reynolds' anticompetitive conduct" and (b) "competition between the Cox Automotive and AutoLoop applications at issue and CDK's and Reynolds' applications."  This reformulation does not change the substance of our prior description, and we believe it (as well as the prior version) covers all potentially relevant documents on these issues (and more).  Please let us know if this satisfies your concerns.

       2.     You requested that we include documents relating to "data integration."  We believe that such documents would already be subsumed within the categories of documents relating to "data integration of Cox Automotive's applications and AutoLoop's applications with any DMS" and "data integration with Dealertrack DMS."  You mentioned on our July 31, 2018 meet-and-confer that these categories might exclude hypothetical documents in Cox Automotive's or AutoLoop's possession about the data integration of applications of other vendors with non-Dealertrack DMS.  We believe that there would not be substantial numbers of documents falling in that very specific category, and further, that any such documents would be irrelevant.  But to alleviate any concern you might have, we reiterate that you will also receive documents relating to "competition in the DMS market," which would include documents concerning the differences between the data integration practices of DMS providers.  Please confirm that this clarification adequately addresses your concerns.

       3.     You requested that we include documents relating to "access to DMSs" and "third-party access to DMSs, including DealerTrack's DMS."  As we explained on the July 30, 2018 meet-and-confer, we understand those categories to be almost entirely subsumed within the category of documents relating to "data integration of Cox Automotive's applications and AutoLoop's applications with any DMS."  The only documents not falling within that category would concern data integration of applications of other vendors with non-Dealertrack DMS.  Again, we believe that it would be unlikely for Cox Automotive or AutoLoop to have any such documents, and that, if such documents existed, they would either be irrelevant or would be produced as relating to "competition in the DMS market."

       In your August 2, 2018 letter, you state your understanding that our "data integration" category includes "all access to DMSs, including outside of CDK's 3PA and Reynolds' RCI programs."  That is correct with the caveat that we would not consider access to the DMS without any authorization from any party to fall within this "data integration" category (but such documents may fall within the "security" categories).  However, you also state that "data integration" includes "how Individual Plaintiffs use the data" and "whether they re-syndicate that data to other third parties."  That is incorrect.  Those issues have nothing to do with accessing the DMS, nor do they appear to have any relevance to this case.  Moreover, we are concerned that asking for all documents about how Cox Automotive and AutoLoop "use the data" seeks an enormous amount of competitively sensitive information – with no relevance to the case – about how Cox Automotive's applications and AutoLoop's applications function.  Seeking such information is a classic example of an improper fishing expedition.

       We have asked you on at least two occasions to explain the relevance of how Cox Automotive and AutoLoop "use the data" and whether they "syndicate" data (the July 23, 2018 and July 31, 2018 meet-and-confers).  In your July 30, 2018 letter, you made the conclusory

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

assertion that "Cox or AutoLoop's distribution of data obtained from a CDK or Reynolds DMS to other third parties, including without CDK or Reynolds's authorization" are "issues that plainly are directly relevant to CDK's defenses." And on our July 31, 2018 meet-and-confer, you stated that unidentified experts may have an unspecified interest in such documents (in part, because they would show Cox Automotive's and AutoLoop's revenue from any such "syndication"). You also clarified that you were requesting documents relating to any "syndication" of data even if explicitly approved by CDK and Reynolds. Given these responses, we still do not understand how these documents are relevant to the case.

We understand from our July 31, 2018 meet-and-confer that CDK is considering moving to compel on these issues. Accordingly, it appears CDK may have already articulated in writing why such documents would be relevant. We would urge you simply to provide that information to us rather than engaging in needless motion practice. We remain willing to consider producing documents on these topics once CDK articulates their relevance.

4.      You requested that we include documents relating to "competition in the DMS market, including any mention of CDK and/or Reynolds." We will already produce documents relating to competition in the DMS market, including with respect to CDK's DMS and Reynolds' DMS. However, we will not produce *all* documents mentioning CDK or Reynolds. We believe any relevant documents mentioning CDK or Reynolds would already fall within one of the six broad categories of documents that we will produce. If you believe there is any specific category of document mentioning CDK or Reynolds that is not already covered by our proposal, please let us know in writing, and we will consider it.

*              *              *

You also requested in your July 30, 2018 letter that we specify which specific RFPs may have responsive documents that could be reviewed but withheld by the proposal above. The simple answer is that our review of documents retrieved by running agreed search terms against agreed custodians will be limited in this manner for all RFPs, as we explained in our July 26, 2018 letter. Because the six categories of documents that we will produce are so broad, there are likely to be many RFPs for which no (or few) documents reviewed would be withheld. Accordingly, we do not think it is worthwhile to attempt to parse every RFP to determine whether there is any category of documents that may be responsive to the RFP but would be withheld. Nonetheless, we attempt to do so in Exhibit C to this letter, though we caution the precision of our efforts is severely limited by the overbreadth and vague wording of the RFPs.

**Specific RFPs.** In your July 27, 2018 letter, you raised possible compromises on several disputed RFPs. We address those below.

For **RFP 1, RFP 2, and RFP 8**, you have proposed limiting the requests to the three categories of documents in your July 30, 2018 letter. As we have explained above, we do not think there are any substantial differences between the categories you propose and the six broad categories we will use. Accordingly, we believe our existing proposal for custodial searches is appropriate. Please let us know if you disagree.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

For **RFP 4**, we are currently considering the proposal in your July 31, 2018 email that Cox Automotive produce "all documents provided to the FTC that are related to its acquisition of DealerTrack from the files of its custodians that hit agreed-upon search terms" and the Item 4(c) documents.

For **RFP 10**, you have proposed limiting the request to "[a]ll marketing materials that refer to DealerTrack, Your Applications, the OpenTrack program or API, and that reference or relate to CDK, Reynolds, and/or any CDK or Reynolds product . . . ." We believe our existing proposal for custodian searches will properly respond to this request. In particular, Dealertrack marketing and OpenTrack materials that reference CDK or Reynolds fall substantially (if not entirely) within the category of documents relating to "competition in the DMS market." And application marketing materials that reference CDK or Reynolds fall substantially (if not entirely) within the category of documents relating to "damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct" – as that those marketing materials would be relevant to competition between applications. Please let us know if you disagree with the sufficiency of our proposal.

**Search Terms.** We have now agreed to run 42 of 129 terms (for Cox Automotive) and 39 of 123 terms (for AutoLoop). As we explained in our July 26, 2018 letter, we objected to running the remaining search terms for several reasons. Most notably, the search terms hit on an overly burdensome number of documents and sought irrelevant or marginally relevant information. In particular, many of these terms targeted documents to support hypothetical counterclaims against Cox Automotive and AutoLoop regarding "unauthorized access" to CDK's DMS and Reynolds' DMS. CDK has no basis to engage in a fishing expedition for documents to support claims it has not even asserted and have no basis in fact. Many terms also sought documents from *Cox Automotive* and *AutoLoop* to explain the motivations for *CDK's* anticompetitive conduct. But evidence of CDK's motivations will be almost exclusively in CDK's possession.

Nonetheless, we attempted to compromise in our July 26, 2018 letter. We agreed to run 11 additional terms for Cox Automotive and 15 additional terms for AutoLoop despite the burden and lack of relevance of those terms. CDK did not accept this proposal. Rather, it continued to insist we run all terms (but three) with some modifications.

Given the October 12, 2018 deadline for document productions and the need to begin reviewing documents, we once again make a compromise offer. We now offer to run 87 of 129 terms for Cox Automotive and 77 of 123 terms for AutoLoop, shown by the green highlighting in Exhibits A and B. If CDK does not agree to these proposals, please respond in writing with a counterproposal with any additional terms that CDK insists on being included. If CDK insists on additional terms, we would encourage CDK to review its search term list and withdraw other requested terms that do not truly seek relevant documents. Once we have that proposal in writing, we are willing to meet-and-confer.

\* \* \*

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

In contrast to our transparent explanation of how documents will be searched, reviewed, and produced, CDK and Reynolds have yet to provide a similar explanation. On our July 20, 2018 and July 31, 2018 meet-and-confers, we requested that CDK and Reynolds also describe how its reviewers would be making relevancy determinations – *i.e.*, the equivalent of our six categories of documents that we would produce. During that call, CDK and Reynolds were unable to give any more specificity than that they would respond consistent with their written responses to the Plaintiffs' document requests, as well as dozens of follow-up letters and meet-and-confers. However, as one defendant acknowledged, those written responses, letters, and calls are not guidance that can be practically applied by reviewers to determine which documents were relevant and which documents are not. We thus have no way of knowing whether CDK and Reynolds have properly instructed the people who are actually reviewing the documents. Please be prepared to discuss these issues on our next meet-and-confer. We reserve all rights in this regard.

## II.     CDK's Interrogatories To Cox Automotive And AutoLoop

On our July 23, 2018 meet-and-confer and in Andy's July 30, 2018 letter, CDK raised a number of issues with respect to Cox Automotive's and AutoLoop's interrogatory responses. We address those below.

**Cox Automotive Interrogatory No. 2; AutoLoop Interrogatory No. 2 (Competitors).** We will accept your narrowing of these interrogatories and amend the responses, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 3 (DMS Switching).** Cox Automotive agrees to amend the response and respond to the interrogatory, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 7 (DealerTrack Third-Party Access).** Based on your description that this interrogatory covers "actions" and not just "practices," Cox Automotive will amend its response to the interrogatory if there is any additional information to add, including pursuant to Rule 33(d).

**Cox Automotive Interrogatories Nos. 8-13; AutoLoop Interrogatories Nos. 4-9.** As we explained during the July 23, 2018 meet and confer, we answered these interrogatories as written, which is in the present tense. When CDK wanted to ask about past practices, it did so. Having a generally applicable time period, which you maintain your interrogatories do, to differently worded interrogatories with respect to past and present tense is vague, ambiguous, and confusing. Far from a "gotcha" moment, Cox Automotive and AutoLoop answered the exact questions you asked. You now insist that Cox Automotive and AutoLoop respond to different interrogatories. Nevertheless, in the spirit of compromise, we will determine if the answers for the past would be different from the present for these interrogatories, and if so, amend the responses accordingly, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 14; AutoLoop Interrogatory No. 10 (Scripts And Executable Programs).** We are still considering how and whether to respond to this interrogatory. In particular, we are not certain whether this interrogatory is asking for scripts or

# Exhibit A: CDK's Proposed Search Terms to Cox Automotive

# INTENTIONALLY OMITTED

**EXHIBIT B**

**CDK'S PROPOSED SEARCH TERMS TO AUTOLOOP**

*AutoLoop proposes to run search terms for all searches from January 1, 2013, to April 9, 2018 (the day AutoLoop filed its complaint). AutoLoop's willingness to use any of CDK's proposed search terms is dependent on reaching a final reasonable agreement on custodians, and therefore AutoLoop reserves all rights.*

| No. | Search Terms | AutoLoop Comments | De-duplicated Hits, Date Limited WITHOUT FAMILIES[1] | Notes |
|---|---|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 3736 | |
| 2 | (CDK OR Reynolds OR rey* OR RR OR "R&R" OR DMS OR system"dealer management system") w/20 (script* OR program OR executable OR bypass OR avoid OR ("work w/5 around") OR ("break w/5 (through OR down") OR evade) | Not relevant; counterclaims. | 14,942 (old) 10,582 (new) | |
| 3 | "Data Authorization" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 59 | |

[1] These search terms were run using a starting date of January 1, 2014. Extending the time frame by another year will substantially increase the hit count. Moreover, adding families to a search typically increases the total number of responsive documents by a factor of more than 2.

1

| | | | | |
|---|---|---|---|---|
| 4 | (data /3 integrat*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") OR (data /3 extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") | Agreed. | 4670 | |
| 5 | (DMS OR "dealer management system") /5 market*) | Agreed. | | |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" | Agreed. | | |
| 7 | "nonpublic personal information" OR NPI | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 8 | "personally identifiable information" OR PII | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 9 | "Proprietary Data" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 10 | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |

| | | | | |
|---|---|---|---|---|
| 11 | "sensitive personal information" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 12 | "User Emulation" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 13 | (audit OR report OR assessment OR analysis) AND data AND (privacy OR security) | Not relevant; pro-competitive justification. | 3736 | |
| 14 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") AND (certif* OR agree* OR integrat* OR contract) AND (extract* OR pull* OR push* OR poll* OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain* OR gather* OR data)) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 31916 (old) 17826 (new) | |
| 15 | (CDK OR Rey* OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track")) w/20 data AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) | Agreed. | 2312 | |

3

| | | | |
|---|---|---|---|
| 16 | ((compet* OR threat* OR challeng* OR superior* OR compare*) w/15 (CDK)) AND (app* OR solution* OR product* OR service*) OR ((app* OR solution* OR product* OR service*) w/15 (compet* OR threat* OR challeng* OR replac* OR bypass*)) AND (DMS OR "dealer management system") | This search term remains overbroad. | 3711 | |
| 17 | (dealer w/5 data) w/20 ((retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*) AND (manual OR push OR FTP) | Agreed. | 1524 | |
| 18 | (los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang*~~or mov*~~) w/15 (dealer or customer or contract ~~or business or sale~~)) AND (DMS or "dealer management system" or app* or vendor or integrator or service* or product* or solution*)) | This search term remains overbroad. | 21375 (old) 11743 (new) | |
| 19 | (((pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain) w/5 data) AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | This search term remains overbroad. | 4144 | |
| 20 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1284 | |

4

| | | | | |
|---|---|---|---|---|
| 21 | ((unauthorized w/5 access) or (not /5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 1468 | |
| 22 | (up w/3 front) or "up front" or install* or initial or recur* or month* or annual or (set w/3 up) or setup) w/~~20~~ 5 (fee* or pric* or charg or rat* or bill ~~or cost*~~ or pay*)) and (extract* or integrat*)) | This search term remains overbroad. | 14160 (old) 10342 (new) | |
| 23 | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2653 | |
| 24 | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | Agreed. | | |
| 25 | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | Not relevant; counterclaims. | 3914 | |
| 26 | (*settle* or assign*) AND (Lawsuit OR litigat* OR complain or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR "multi district") | Not relevant; miscellaneous. | 2746 | |
| 27 | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | Agreed. | | |
| 28 | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) | Agreed. | | |

| | | | | |
|---|---|---|---|---|
| 29 | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 863 | |
| 30 | (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) AND (CDK OR RR OR Rey* OR "R&R" OR Authenticom OR litigat* OR Cottrell OR "DMS MDL" OR "Kellogg" OR "1:18-CV-864") | AutoLoop is still exploring its alternative proposal. | | |
| 31 | (breach or hack or attack or data) AND (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire") AND (dealer* OR DMS* OR auto* OR integrat*) | Not relevant; pro-competitive justification. | 7818 (old) 7755 (new) | |
| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) | Agreed. | | |
| 33 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | Agreed. | | |
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) /20 (user OR account OR password or pwd OR access or credential*)) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1865 | |

| | | | |
|---|---|---|---|
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 ((Independent w/20 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | Overbroad. | 8985 | |
| 36 | (CDK OR Reynolds OR RR w/10 (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | Agreed. | | |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) | Agreed. | | |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) w/5 (control or power or authority) w/10 (data or system) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 602 | |
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 27 | |
| 40 | (Compet* w/20 harm*) | Agreed. | | |

| | | | |
|---|---|---|---|
| 41 | ((contract* or agree*) w/20 (term or year* or length or period)) AND (CDK OR Rey* OR RR OR "R&R")(contract* or agree*) AND (term or year* or length or period) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 18229 (old) 1590 (new) | |
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | This search remains overbroad. | 3801 | |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1428 | |
| 44 | (data AND integration) w/20 market | Agreed. | | |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) | Agreed. | | |
| 46 | "Dealer Management System" w/5 market | Agreed. | | |
| 47 | "Dms function*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | Agreed. | | |
| 49 | (DMS or "dealer management system" or integrat* or app* or vendor or CDK or Rey* or RR or "R&R") AND w/10 (analy* or forecast or project* or survey* or evaluat* or stud* or (market w/3 share) or (market /3 condition)  or compet*) | This search remains overbroad. | 63343 (old) 12036 (new) | |

| | | | | |
|---|---|---|---|---|
| 50 | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 51 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph) AND (CDK OR 3PA OR "third party access" OR "partner program" OR "Access Program") | Agreed. | | |
| 52 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | Agreed. | | |
| 53 | ((exclusiv* or sole or only) w/~~20~~ 10 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system")) AND (vend* OR extract* OR appl* OR integrat*) | Upon further document collection and analysis, this term is overbroad as written. AutoLoop is willing to meet and confer about reasonable modifications. | 22234 (old) 10021 (new) | |
| 54 | (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and (fee* or pric* or charge* or rate* or bill ~~or cost*~~ or pay* or paid or invoice*) ~~and~~ w/20 (("pass ~~w/5~~ through") or passthrough or share* ~~or sent~~ or "passed to" or "passed on" or "pass on") | This search remains overbroad. | 26448 (old) 8162 (new) | |

| | | | |
|---|---|---|---|
| 55 | ((fee* or pric* or charge* or rate* or bill or cost* or pay* or paid or invoice*) w/10 (integrat* OR extract* OR (Authenticom or Dealervault OR SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | This search term is overbroad, even with the proposed modifications circulated before our last meet and confer. AutoLoop is willing to meet and confer about reasonable modifications. | 15972 (old) 12028 (new) | |
| 56 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") | Agreed. | | |
| 57 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 593 | |
| 58 | (harm OR injur* OR disrupt* OR los* OR interrupt*) w/15 (Reynolds OR R&R OR RR OR CDK) | Agreed. | | |
| 59 | (CDK or RR or Rey* or "R&R" or Authenticom or Cottrell OR Cox) AND w/20 (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative") (Lawsuit OR litigat* OR complaint or alleg* or claim* or (legal w/3 (action or proceeding)) OR MDL OR subpoena OR "class plaintiff" or "lead plaintiff" or "class representative" | As originally formulated, the search string was overbroad. The search also seeks documents that are likely to be privileged, and thus the burden associated with the search is disproportionate to the likelihood of producing responsive, non-privileged documents. | 9559 (old) 5216 (new) | |

| | | | |
|---|---|---|---|
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) ~~AND~~ w/10 (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR use OR maintain* OR email OR send OR stor* or access) | Not relevant; pro-competitive justification. | 15792 (old) 6787 (new) | |
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1448 | |
| 62 | ((fee* or pric* or charge or rate* or bill ~~or cost*~~ or charge* or pay* or invoice) w/~~20~~ 10 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI ~~or DealerVault or Authenticom or SelectQu or "SelectQ" or "Superior Integrated Solutions" or SIS or StoneEagle or ProQuotes)) AND (integrat* or extract* or (data w/3 access))~~ | This search remains overbroad. | 7915 (old) 8582 (new) | |
| 63 | (fee* or pric* or charge or rate* or bill ~~or cost*~~ or pay* or invoice) w/20 (data w/10 (~~or~~ access* or integrat* or extract*) ~~3PA or "third party access" or "partner program" or "Access Program"~~) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 24933 (old) 5140 (new) | |
| 64 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10 (DealerVault or Authenticom or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1376 | |

11

| | | | |
|---|---|---|---|
| **65** | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10 (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap* or integrat*))) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 4625 | |
| **66** | "Query Builder" OR (QB AND Reynolds) | Agreed. | | |
| **67** | ("Report Generator" OR "report scheduler") AND (schedule or automat*) | Agreed. | | |
| **68** | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2799 | |
| **69** | (*reyrey.com) AND (*cdk.com OR *adp.com) OR ((*reyrey.com OR Rey OR RR OR "R&R") AND CDK AND (DEA OR "Data Exchange Agreement" OR RCI OR 3PA OR "third party access" OR "Access Program" OR "partner program" OR Authenticom OR hostile OR integrat* OR extract* OR block* OR (access w/3 (DMS OR data) OR destroy* OR market* OR compet*)) | Agreed. | | |
| **70** | "Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access" | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 7917 | |

12

| | | | |
|---|---|---|---|
| **71** | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1327 |
| **72** | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2515 |
| **73** | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) | Not relevant; pro-competitive justification. | 3158 |
| **74** | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 742 |
| **75** | ((Superior Integrated Solutions) OR SIS OR *@4-superior.com) AND (extract* OR integrat* OR CDK OR Rey* OR RR OR "R&R" OR access*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 11233 (old) 8260 (new) |

| | | | | |
|---|---|---|---|---|
| 76 | (CDK OR ~~Reynolds~~ Rey* OR RR* OR "R&R" OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/~~20~~ 10 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/~~10~~ 5 (corrupt* OR integrity)) OR (data w/~~10~~ 5 security) OR complain* or investigat*) | Not relevant; pro-competitive justification. | 20765 (old) | |
| 77 | (Third w/3 Party) OR thirdparty OR "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR data OR "Dealer Management System") | This search remains overbroad. | 4411 | |
| 78 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary | Agreed. | | |
| 79 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | Not relevant; counterclaims. | 3728 | |
| 80 | (unauthorized w/5 access) w/20 (data OR server OR information) | Not relevant; counterclaims. | 905 | |
| 81 | Withdrawn | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 145107 | |
| 82 | "secure web form" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |

| | | | | |
|---|---|---|---|---|
| 83 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) | Not relevant; pro-competitive justification. | 4770 | |
| 84 | Agreement w/20 (CDK OR Reynolds OR R&R) w/20 (illegal OR anticompet*) | Agreed. | | |
| 85 | anticompet* | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 107 | |
| 86 | antitrust | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 186 | |
| 87 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 | As formulated, this search term is overbroad. | 1044 | |
| 88 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | Not relevant; counterclaims. | 1068 | |
| 89 | (*cdk.com OR *adp.com) AND (integrat* OR extract* OR 3PA OR "third party access" OR "access program" OR scrap*) | Agreed. | 727 | This term is run excluding *cdk.com and *adp.com from the sender and recipient fields. |
| 90 | Circumvent AND (security OR dms OR block*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 91 | Withdrawn | As formulated, this search term is overbroad. | 13803 | |

| | | | |
|---|---|---|---|
| 92 | cyber w/5 insurance | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | |
| 93 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" | We are willing to compromise and run this search term. | |
| 94 | FTC or DOJ or "federal trade commission" or "department of justice" or *ftc.gov or *doj.gov | As formulated, this search term is overbroad. | 1956 |
| 95 | FTP w/3 push | Agreed. | |
| 96 | hide or conceal or (cover w/3 up) or veil or bury | As formulated, this search term is overbroad. | 1099 |
| 97 | Illegal OR unlawful OR CFAA OR (not w/3 (law* or legal)) OR (against w/3 (law OR contract* OR agree* OR regulat*)) OR (prohibit* w/5 (law OR contract* OR agree* OR regulat*)) | Not relevant; counterclaims. | 4771 |
| 98 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | |
| 99 | Lock w/10 account | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | |
| 100 | OEM AND data AND (access* pull* OR poll OR push OR writeback OR (write /3 back) OR extract* OR scrap* OR quer* OR obtain~~OEM AND data~~ | As formulated, this search term is overbroad. | 5764 (old) 3423 (new) |

| | | | |
|---|---|---|---|
| 101 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 867 | |
| 102 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | | |
| 103 | Secur* w/20 (Audit* OR Standard OR proced*) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 788 | |

17

| | | | |
|---|---|---|---|
| 104 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | Agreed. | | |
| 105 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv- 01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | Agreed. | | |
| 106 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) | Agreed. | | |
| 107 | manual w/10 (report* or tool* or extract*) | Agreed. | | |
| 108 | (*cdk.com OR *adp.com OR CDK OR ADP ~~AND~~ w/10 (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*) | This search term remains overbroad. | 9095 (old) 8813 (new) | |

| | | | | |
|---|---|---|---|---|
| 109 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) | As formulated, this search term is overbroad and seeks information within CDK's possession. | 2739 | |
| 110 | (manag* /2 interfac*) OR 3PA OR RCI OR "third party access" OR "Access Program" OR "Certified Interface" OR ((CDK OR RR OR Rey* OR "R&R") w/5 (DMS OR "dealer management system"))) w/~~10~~ 5 (agree* OR contract*) | Agree. | 8420 (old) 1384 (new) | |
| 111 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1245 | |
| 112 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) | Agreed. | | |
| 113 | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract)) AND (DMS OR "dealer management system" OR data OR information) | Not relevant; counterclaims. | 7456 | |
| 114 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") | Agreed. | | |

19

| | | | |
|---|---|---|---|
| 115 | ("solution gap*" OR bundl* /s (app* OR solution* OR service*)) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 1986 | |
| 116 | SmartLane* AND ("Service Edge*" OR CDK OR prob* OR issue* OR allow* OR access*) | As formulated, this search term is overbroad. AutoLoop is willing to meet and confer about reasonable modifications. | 5809 | |
| 117 | CDK* w/10 (nondisclosure* or share* or provide*) w/10 (fee* or charge*) | Agreed. | | |
| 118 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | Agreed. | | |
| 119 | Non-DMS or (DMS w/5 alternative) | Agreed. | | |
| 120 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | AutoLoop does not believe this term is relevant. We are, however, willing to compromise and run this search term. | 2153 | |
| 121 | (declin* or refus* or ((will or would) /3 not) or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) | Not relevant; counterclaims. | 2928 | |
| 122 | Schaefer or Strawsburg or (kelly /2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or Conver or (Steve* /2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell | Agreed. | | |

| | | | | |
|---|---|---|---|---|
| **123** | Conspir* or monop* or (market /2 alloc*) or (market /2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort* | As formulated, this search term is overbroad. | 2607 | |

**Exhibit C**

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 1 | N/A | See letter |
| 2 | N/A | See letter |
| 3 | | Yes, but all possibly relevant documents covered by the six categories |
| 4 | N/A | See letter |
| 5 | | Yes, but all possibly relevant documents covered by the six categories |
| 6 | | None |
| 7 | 45 | Yes, but all possibly relevant documents covered by the six categories |
| 8 | | Yes, but all possibly relevant documents covered by the six categories |
| 9 | | None |
| 10 | | See letter |
| 11 | | None |
| 12 | | None |
| 13 | | None |
| 14 | 59 | None |
| 15 | | None |
| 16 | 60 | Yes, but all possibly relevant documents covered by the six categories |
| 17 | | None |
| 18 | 40 | Yes, but all possibly relevant documents covered by the six categories |
| 19 | 43 | Yes, but all possibly relevant documents covered by the six categories |
| 20 | | None |
| 21 | 41 | Yes, but all possibly relevant documents covered by the six categories |
| 22 | 44 | Yes, but all possibly relevant documents covered by the six categories |
| 23 | 46 | Yes, but all possibly relevant documents covered by the six categories |
| 24 | 1 | Yes, but all possibly relevant documents covered by the six categories |
| 25 | 2 | None |

---

[1] All responses are limited to the applications at issue (for AutoLoop) and the applications at issue and Dealertrack DMS (for Cox Automotive), and to the agreed date range. We do not repeat those limitations throughout.

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 26 | 3 | Yes, but all possibly relevant documents covered by the six categories |
| 27 | 4 | None |
| 28 | | Yes, but all possibly relevant documents covered by the six categories |
| 29 | 5 | Yes, but all possibly relevant documents covered by the six categories |
| 30 | 6 | None |
| 31 | 7 | None |
| 32 | 8 | Yes, but all possibly relevant documents covered by the six categories |
| 33 | 9 | None |
| 34 | 10 | None |
| 35 | 11 | None |
| 36 | 12 | None |
| 37 | | None |
| 38 | | None |
| 39 | | Yes, but all possibly relevant documents covered by the six categories |
| 40 | | None |
| 41 | | None |
| 42 | | None |
| 43 | | None |
| 44 | | None |
| 45 | 27 | Yes, but all possibly relevant documents covered by the six categories |
| 46 | | None |
| 47 | | None |
| 48 | 19 | Yes, but all possibly relevant documents covered by the six categories |
| 49 | 20 | None |
| 50 | 21 | Yes, but all possibly relevant documents covered by the six categories |
| 51 | 22 | Yes, but all possibly relevant documents covered by the six categories |
| 52 | 23 | Yes, but all possibly relevant documents covered by the six categories |
| 53 | 24 | Yes, but all possibly relevant documents covered by the six categories |
| 54 | | Yes, but all possibly relevant documents covered by the six categories |
| 55 | 25 | Yes, but all possibly relevant documents covered by the six categories |

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 56 | 26 | Yes, but all possibly relevant documents covered by the six categories |
| 57 | 28 | Yes, but all possibly relevant documents covered by the six categories |
| 58 | 29 | Yes, but all possibly relevant documents covered by the six categories |
| 59 | 30 | Yes, but all possibly relevant documents covered by the six categories |
| 60 | 31 | Yes, but all possibly relevant documents covered by the six categories |
| 61 | 32 | None |
| 62 | 33 | Yes, but all possibly relevant documents covered by the six categories |
| 63 | 34 | None |
| 64 | 14, 15 | None |
| 65 | 16 | None |
| 66 | 17 | None |
| 67 | 18 | None |
| 68 | | Yes, but all possibly relevant documents covered by the six categories |
| 69 | | See letter |
| 70 | | Yes, but all possibly relevant documents covered by the six categories |
| 71 | | See letter |
| 72 | 35 | None |
| 73 | 36 | None |
| 74 | 37 | None |
| 75 | | None |
| 76 | 38 | None |
| 77 | 47 | None |
| 78 | 48 | Yes, but all possibly relevant documents covered by the six categories |
| 79 | 49 | None |
| 80 | 50 | None |
| 81 | 51 | None |
| 82 | 52 | None |
| 83 | 53 | None |
| 84 | 54 | None |
| 85 | 55 | See letter |
| 86 | 56 | See letter |
| 87 | 57 | Yes, but all possibly relevant documents covered by the six categories |

| Cox Automotive RFP | AutoLoop RFP | Possible Limitations[1] |
|---|---|---|
| 88 | | Yes, but all possibly relevant documents covered by the six categories |
| 89 | | Yes, but all possibly relevant documents covered by the six categories |
| 90 | | Yes, but all possibly relevant documents covered by the six categories |
| 91 | | Yes, but all possibly relevant documents covered by the six categories |
| 92 | 61 | None |
| 93 | | None |
| 94 | 62 | None |
| 95 | | None |
| 96 | 13 | Yes, but all possibly relevant documents covered by the six categories |
| 97 | | Yes, but all possibly relevant documents covered by the six categories |
| 98 | 63 | None |
| 99 | 64 | None |
| 100 | 65 | None |
| 101 | 66 | None |
| 102 | 67 | None |
| 103 | 68 | Yes, but all possibly relevant documents covered by the six categories |
| 104 | 69 | Yes, but all possibly relevant documents covered by the six categories |
| 105 | 70 | None |
| 106 | 71 | None |
| 107 | | Yes, but all possibly relevant documents covered by the six categories |
| 108 | 72 | Yes, but all possibly relevant documents covered by the six categories |
| | 39 | None |
| | 42 | Yes, but all possibly relevant documents covered by the six categories |

# Exhibit J-8

M A Y E R · B R O W N

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 4, 2018

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

**BY E-MAIL**

Daniel V. Dorris, Esq.
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:  *In re Dealer Management Systems Antitrust Litig.*,
     MDL No. 2817, *Cox v. CDK* (18-CV-1058) &
     *Loop v. CDK* (18-CV-2521)

Dear Dan:

We received your August 2 letter and write to summarize the parties' positions with respect to Cox Automotive ("Cox") and Loop, LLC's ("AutoLoop") (collectively, the "Individual Plaintiffs') responses to CDK's Requests for Production ("RFPs") and Interrogatories.

As a preliminary matter, we note that your letter does not respond to CDK's August 1 letter regarding AutoLoop's Responses to CDK's Second Set of Interrogatories and Requests for Production. Given the impending motion deadline, we ask that you please respond by 5:00 p.m. today (in accord with the Individual Plaintiffs' demand of us last night). The points raised in that letter should not be controversial, but given that almost three days have passed with no word from you, we will assume that the parties are at an impasse if we do not hear from you by then.

As to Cox and AutoLoop's responses to CDK's First Set of RFPs and Interrogatories, we summarize below the parties' positions:

**CDK's RFPs**

**I.     Relevant Time Period**: Thank you for confirming that you will agree to search for and produce documents in response to CDK's RFPs that go back to January 1, 2013. The parties are not at issue with respect to the relevant time period.

**II.    General Limitations on RFPs**

        A.     Applications "at issue": During our 7/31 meet-and-confer, you agreed to supply a list of applications you consider "at issue," which would have provided us with clear guidance on how you intend to limit your productions. You did not do so in your 8/2 letter and instead simply repeated the same vague "standard" you mentioned during the meet-and-confer about which we requested clarification. The parties are impasse here.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 2

      B.    <u>Relevancy "Categories"</u>[1]: As you state in your 8/2 letter, you explained in an earlier correspondence that, rather than respond to most of CDK's RFPs as written, you would only produce documents in response to RFPs related to applications "at issue" and DealerTrack that are relevant to certain "categories" of information. Exhibit C of your latest letter makes clear the consequences of your proposed approach. That exhibit shows that out of CDK's 108 RFPs to Cox, you only agree to respond to 57 of them as written; and out of the 75 RFPs served on AutoLoop, you agree to only respond to 38 of them as written. For the remaining half of CDK's RFPs you state you intend to ***withhold*** documents responsive to these RFPs with the caveat that (in your view) "all possibly relevant documents [will be] covered by the six [relevance] categories" you propose. But that approach, which amounts to a wholesale rewriting of these RFPs, substitutes the Individual Plaintiffs' amorphous, subjective definition of "relevant" for the identified – and highly relevant – documents that we specifically requested in order to defend the case.

      We tried to compromise with respect to your "categories" of relevant information during our meet-and-confers. We even proposed reasonable modifications to your approach by identifying categories that actually would provide us with the relevant documents that were requested by our RFPs, but you have not accepted those proposals. We therefore are left with no assurance that we will be receiving necessary, responsive documents from the Individual Plaintiffs' files. The parties are at impasse on this issue.

**III.**    <u>**Specific RFPs**</u>

      A.    <u>RFPs 1, 2, 8 and 10</u>: You offer to respond to these RFPs based on your proposed relevancy "categories." Because the parties are at issue on those relevancy "categories", the parties are at impasse on these requests.

      B.    <u>RFP 10</u>: You state in your 8/2 letter that you continue to consider our 7/31 offer. Unless we hear from you as requested above, we will assume that the parties are at impasse.

**IV.**    <u>**Search Terms**</u>

We understand that the Cox and AutoLoop search terms highlighted in green in Exhibits A and B of your 8/2 letter are your "best and final" offer. While both plaintiffs moved somewhat by agreeing to the highlighted terms, those modified terms plainly are insufficient. Indeed, the terms to which you have not agreed are likely to return documents relevant to this litigation and responsive to CDK's discovery requests.

---

[1] We appreciate that Plaintiffs do not agree with this naming convention, but we use it for ease of reference.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 3


You objected to the following terms based on relevance: Cox terms 2, 21, 25, 29, 39, 60, 77, 80, 98, 114, and 122; and AutoLoop terms 2, 21, 25, 31, 60, 73, 76, 79, 83, 88, 97, 113, and 121. As an initial matter, CDK disagrees with your assertions that such terms are irrelevant because they relate to CDK's and Reynolds' "pro-competitive justifications," the counterclaims, or other "miscellaneous" issues (your words). Further, your position that these search terms will only return documents related to those issues is unsupportable. On their face, these terms are likely to hit on documents that are directly relevant to the ***claims and defenses*** in this litigation, including, but not limited to: the security of DMS data when accessed by third-parties; DMS performance and data corruption issues caused by unauthorized methods of access; unauthorized access by third-parties to non-dealer data, including CDK proprietary data; third-party attempts to evade CDK blocking efforts; and the over-arching defense that CDK was objectively justified in instituting its security measures. Indeed, Plaintiffs cannot simply produce documents that are only relevant to their own theories of the case. These terms therefore need to be used to identify Individual Plaintiffs' relevant and responsive documents.

Furthermore, you object to countless search terms as overly burdensome, when those terms in many instances have resulted in fewer than 10,000 hits, based on your own reports. CDK disagrees that such terms are overbroad, especially given CDK's agreement to run many similar terms of plaintiffs, which result in much higher hit counts. Moreover, your offer to meet-and-confer on several of these search terms and your invitation that CDK revise its search term proposal—which came at 11:42 p.m. on the eve of the last business day before the August 6 motions deadline—is illusory at this late state of the negotiations. As you know, and as CDK has agreed to do each time the parties have agreed to amend certain of the search terms Individual Defendants' proposed to CDK, the technicalities and logistics involved in running hit counts on these terms takes time, which we simply do not have at this point.

The parties, therefore, are at an impasse with respect to search terms.

## CDK'S INTERROGATORIES

Cox Interrogatory No. 2 / AutoLoop Interrogatory No. 2 (*Competitors*): You accepted our proposal and have agreed to amend your responses. The parties, therefore, are not at issue with respect to these interrogatories. At the same time, Individual Plaintiffs have not specified when they intend to amend their responses. CDK, therefore, reserves its rights to move to compel Individual Plaintiffs' amended interrogatory responses after the August 6, 2018 deadline in the event the amended responses remain deficient in any material respect and the parties are unable to amicably resolve any issues.

Cox Interrogatory No. 3 (*DMS Switching*) and Cox Interrogatory No. 7 (*DealerTrack Third-Party Access Restrictions*): You accepted our proposal and have agreed to amend your responses to these interrogatories. The parties, therefore, are not at issue. Cox, however, again has not indicated when it intends to amend its responses. CDK, therefore, reserves its rights as to the August 6, 2018 deadline in the event the amended responses remain deficient.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 4

Cox Interrogatory Nos. 8-13 / AutoLoop Interrogatory Nos. 4-9 (*Various*):  You agreed to investigate whether your answers for the past would be different from the present and to amend your responses accordingly.  The parties, therefore, are not at issue with respect to these interrogatories.  Individual Plaintiffs, however, have not specified when they will revert with further information regarding these interrogatories. As with the other interrogatory responses plaintiffs have indicated will be forthcoming after the August 6 motions deadline, CDK reserves its right to move to compel in the event plaintiffs' responses to these interrogatories are deficient in any material respect.

Cox Interrogatory No. 14 / AutoLoop Interrogatory No. 10 (*Scripts and Executable Programs*): You stated that you are still considering whether and how to respond to these interrogatories.  As CDK has made clear on multiple occasions, CDK seeks information related to scripts and executable programs (a) used by both Cox, AutoLoop, and/or its data integrators, and (b) provided to dealers for purposes of accessing CDK's and/or Reynolds's DMS.   If this clarification resolves Individual Plaintiffs' objections to these interrogatories, the parties will not be at issue;  provided, however, that in the event Individual Plaintiffs decide to amend their responses after the August 6 motions deadline, CDK reserves its rights to move to compel as to any materially deficient responses after that date.

Cox Interrogatory No. 15 / AutoLoop Interrogatory No. 11 (*Allegedly Unlawful/Unenforceable Terms of Dealer and Vendor Contracts*): You asked us to identify what CDK "considers to be [] 'standard agreements with Dealers and Vendors,'" before you agree to provide greater specificity in your response to these interrogatories.  We ascribe the same meaning as the "standard agreements" Individual Plaintiffs discuss in their complaints. *See, e.g.*, Cox Compl. ¶¶ 136, 142. We hope this resolves any confusion and forecloses any disagreements over these interrogatories.  If not, we are at impasse.  And, here again, should Individual Plaintiffs agree to respond to these interrogatories as written in light of the above representation, CDK reserves its rights to move to compel any deficient amended interrogatory responses after the August 6, 2018 deadline.

Cox Interrogatory No. 18 / AutoLoop Interrogatory No. 14 (*Third-Party Access Fees*); Cox Interrogatory No. 24 (*Damages*): You confirmed that you have responded in full with information currently known to both plaintiffs and will supplement your responses, as appropriate, at a later date.  The parties, therefore, are not at issue with respect to these interrogatories.

Cox Interrogatory No. 19 / AutoLoop Interrogatory No. 15 (*Frequency of Queries/DMS Access*) and Cox Interrogatory No. 20 / AutoLoop Interrogatory No. 17 (*Manual Reporting*):  You accepted our proposals/clarifications as to these interrogatories and have agreed to amend your responses. The parties, therefore, are not at issue with respect to these interrogatories.  As with the their other promised amendments, Individual Plaintiffs have not specified when they intend to provide their amendments. CDK, therefore, again reserves its rights to move to compel as to any continuing deficient responses after the August 6, 2018 deadline.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 5

<u>Cox Interrogatory Nos. 21-23 (*Facts Supporting Allegations*)</u>: You agreed to provide greater specificity in response to these interrogatories. The parties, therefore, are not at issue with respect to these interrogatories. Cox, however, has not specified when it intends to amend its responses. As with the other interrogatory responses Cox has indicated will be forthcoming after the August 6 motions deadline, CDK reserves its right to move to compel in the event Cox's amended response is deficient in any material respect.

Sincerely,

Andrew S. Marovitz

# Exhibit J-9

MAYER · BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

August 5, 2018

**Andrew S. Marovitz**
Direct Tel +1 312 701 7116
Direct Fax +1 312 706 8651
amarovitz@mayerbrown.com

BY E-MAIL

Daniel V. Dorris, Esq.
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
        MDL No. 2817, *Cox v. CDK* (18-CV-1058) &
        *Loop v. CDK* (18-CV-2521)

Dear Dan:

We write in response to the letter we received from you this afternoon regarding Cox Automotive ("Cox") and Loop, LLC's ("AutoLoop") (collectively, the "Individual Plaintiffs') responses to CDK's First and Second Requests for Production ("RFPs") and Interrogatories.

**I.      General Limitations on RFPs**

A.      <u>Applications "at issue"</u>: Thank you for identifying the specific applications "at issue" by which you propose to limit the Definitions contained in Paragraphs 2 and 3 of Cox's and AutoLoop's RFPs respectively.  We accept your proposed limitation provided you confirm that:

1.      You will only apply this limitation to RFPs seeking documents that relate to plaintiffs' applications (*e.g.*, RFP Nos. 24, 44, 76-77); and to the extent an RFP seeks documents related to third-party applications (*e.g.*, RFP Nos. 16, 43, 108), you will respond to the RFPs as written; and

2.      The identified applications are the only applications you allege may have been harmed by CDK's and Reynolds' alleged conduct.

As I am sure you can appreciate, we have shared your list of Cox and AutoLoop applications "at issue" with our client and are awaiting comment.  We appreciate that you are open to discussing further additions to the list, as warranted.  If we are unable to come to ground on an agreed list of applications "at issue" before tomorrow, CDK must reserve its rights on this issue as to the August 6, 2018 deadline.

B.      <u>Relevancy "categories"</u>: Thank you for your offer with respect to these relevancy categories.  We've previously articulated our concerns that applying your relevancy "categories" to the particular RFPs listed in Exhibit C of your August 2 letter amounts to

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 2

a wholesale rewriting of these RFPs and substitutes plaintiffs' definition of "relevant" for what we have identified as relevant. Nonetheless, in an effort to avoid motion practice, we accept the compromise offer outlined in your letter from today, provided that you're agreeable to the following confirmations:

1.      In proposing to accept your offer, we're relying upon your representation that the relevancy "categories" cover documents CDK has requested, other than those identified in your letter from this afternoon and any other document requests we've specifically offered in writing to narrow, of course. This is important: we need you to confirm our understanding, because otherwise you might apply a different standard of "relevance" than we would. For example, we need confirmation that you will not withhold documents, including communications, related to: unauthorized DMS access, as CDK defines the term, by any third party (including applications and third-party data extractors), not just Cox and AutoLoop applications; use of third-party data extractors; third-party DMS access policies, including any limitations on third-party access, that were adopted or considered for DealerTrack; pricing policies or decisions regarding third-party access; data security policies and any cyber liability policies for DealerTrack and any Cox or AutoLoop applications that access CDK's DMS; data security breaches, incidents, or reports related to DealerTrack or any Cox or AutoLoop application that accesses CDK's DMS; data corruption issues or impacts on data integrity or system performance caused by third-party access to DealerTrack or by access by the Cox and AutoLoop applications "at issue" to any DMS; any discussion or analysis of the third-party access provisions in CDK's vendor and dealer contracts; the use of third-party code ("code-on-the-box") to access any DMS; all of the information called for in Cox Requests 57 through 59 (what possible responsive information is being withheld by the "relevance" limitations?); all responsive documents called for by Cox Request 60 (again, what could possibly be withheld for this Request by the "relevance" limitations?); all documents that are responsive to Cox Request 62 (same question); business and marketing plans concerning DealerTrack and competition with other DMS providers; DMS customer switching data; market share information for DealerTrack and the applications "at issue." Further, how will Cox's production of the DealerTrack financial information called for by Requests 88-91 be limited by the "relevancy" limitations? What documents responsive to Requests 107 and 108 are being withheld by the "relevancy" limitations? This may not be an exhaustive list of questions and concerns that we have regarding the proposed "categories" framework, but they are the most important ones that we feel we need answers to in order to fully understand how the framework is being applied.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 3

2. Similarly, we need confirmation that these categories are intended to be applied to the RFPs identified in Exhibit C of your August 2 letter, and are not intended to entirely replace or supplant all of CDK's RFPs.

3. You confirm that your proposed "categories" will be added to the categories we previously proposed, subject to the edits you identified in your letter. For example, it is our understanding that, our proposed language for the data integration "category" will replace your proposed data integration language, but that you intend to include both our proposed DMS access "category" and your data security "category." To that end, we would appreciate if plaintiffs would put their final proposal with respect to these relevancy "categories" in writing.

4. As offered in your letter earlier today, you include an additional relevancy "category" for both the application- and DealerTrack-related RFPs. We propose the following language: "Plaintiffs' use of data obtained from DMSs, including their re-syndication of any such data to third-parties." This type of information is relevant to the claims and defenses in this litigation in several ways, including: to show whether Cox and AutoLoop are re-syndicating data obtained from CDK's DMS to other third-parties, and if so, whether they are doing so with the knowledge and consent of CDK or dealers; to show whether Cox and AutoLoop are observing proper data security protocols to the extent they are engaged in such conduct; and to demonstrate whether Cox and AutoLoop are in compliance with provisions in their contracts with CDK regarding re-syndication of data obtained from CDK's DMS.

## II. Specific RFPs

A. <u>RFP Nos. 1, 2, and 8</u>: If the parties have an agreement with respect to the relevancy "categories" (see above), they will not be at issue on these RFPs.

B. <u>RFP No. 10</u>: If the parties have an agreement with respect to the relevancy "categories" (see above), and if Cox confirms that it will produce documents responsive to CDK's July 31 proposed modification of RFP No. 10, then the parties will not be at issue with respect to this RFP.

C. <u>RFP No. 4</u>: Based on your representation that you will not oppose motion practice with respect to this RFP after the August 6, 2018 deadline should the parties fail to come to an agreement, CDK agrees to suspend motion practice with respect to this RFP, without prejudice, and continue to try to reach an agreement here.

Mayer Brown LLP

Daniel V. Dorris, Esq.
August 4, 2018
Page 4

### III.    Search Terms

We appreciate plaintiffs' efforts on search terms and hope that the parties can come to an agreement on them at some point today.  You state in your letter that there may be "a couple search terms that generate too many spurious hits."  In an effort to try to resolve this issue without motion practice, despite the fact that the terms we circulated yesterday were our best and final offer, we certainly will entertain slight technical modifications to a couple of our latest proposed terms.

### IV.    Interrogatories

Cox Interrogatory No. 14 / AutoLoop Interrogatory No. 10:  you confirmed you would amend your response to these interrogatories as clarified.  The parties, therefore, are not at issue with respect to these interrogatories. Given that you have not, however, specified when you intend to amend you response, however, CDK reserves its rights to move to compel Individual Plaintiffs' amended interrogatory responses after the August 6, 2018 deadline in the event the amended responses remain deficient in any material respect and the parties are unable to amicably resolve any issues.

Cox Interrogatory No. 15 / AutoLoop Interrogatory No. 11: You did not address these outstanding interrogatories in your letter from earlier today.  As stated in our August 4 letter, the parties can avoid an impasse with respect to these interrogatories so long as Individual Plaintiffs agree to respond to them as clarified in our August 4 letter.  Please confirm that is the case.  Should Individual Plaintiffs agree to respond to these interrogatories as written in light of CDK's clarification, CDK reserves its rights to move to compel Individual Plaintiffs' amended interrogatory responses after the August 6, 2018 deadline in the event the amended responses remain deficient in any material respect and the parties are unable to amicably resolve any issues.

### V.    CDK's Second Set of Discovery Requests to AutoLoop

Thank you for confirming that you will produce information back to January 1, 2013, and that you are not withholding any non-privileged information, with respect to your responses to CDK's Second Set of Discovery Requests to AutoLoop.  The parties are not at an impasse with respect to these issues.

Sincerely,

Andrew S. Marovitz

729666110

# Exhibit J-10

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
_____
(202) 326-7900

FACSIMILE:
(202) 326-7999

August 5, 2018

Andrew Marovitz
Ethan Hastert
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois 60606

Re:     Cox Automotive and AutoLoop Discovery Responses

Dear Andy and Ethan,

We write on behalf of Cox Automotive and AutoLoop with respect to Andy's letter dated August 4, 2018, and Ethan's search term proposal dated August 4, 2018.

**I.     General Limitations on RFPs.**

We have explained on several occasions our approach for searching, reviewing, and producing documents in response to CDK's 108 RFPs to Cox Automotive and 75 RFPs to AutoLoop, and do not do so again here. CDK's letter dated August 4, 2018 raises several concerns with that approach, which we address below.

**A.**     We have previously explained that we may withhold documents that do not relate to the applications "at issue" in the litigation. Our August 2, 2018 letter explained that we defined the applications "at issue" to be the Cox Automotive applications and the AutoLoop applications that have been harmed by CDK's and Reynolds' anticompetitive conduct and for which we seek damages or other relief in this litigation. We further noted that our complaints described those claims. We believe this explanation demonstrates that no relevant documents are being withheld.

Your August 4, 2018 letter asks for a "list of applications" for which we will produce documents. For Cox Automotive that list includes every Cox Automotive application mentioned in the complaint: Autotrader, Dealer.com, Dealertrack (DMS, Sales, Financing & Insurance, and Registration and Titling Solutions), HomeNet, Kelley Blue Book, vAuto, VinSolutions, and Xtime. For AutoLoop that list includes each of its applications, including Essentials, Loyalty, Direct Mail, Email Append, XRM, Call Center, Quote, Newsletter, Trade-In Valet, Showroom Valet, Voice Valet, Trade AI, Book, SmartLane, MPI, ShopMonitor, BDC Connect, Messaging,

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Billpay, Open Recalls, and Confident Financial Solutions, and any other brand names sometimes used by these products. If you still believe this limitation may result in the withholding of relevant documents, please let us know. We would be willing to consider adjustments.

 **B.** We have also previously explained that we will limit our document production to documents relating to six broad categories of information. These categories have been described in our prior correspondence. We imposed these limitations because many of CDK's RFPs were overbroad, and we chose these six categories because they encompass any possibly relevant information requested by CDK's RFPs, and more.

 We understand that CDK believes these categories are too narrow and that the parties are at impasse. But with few minor exceptions already addressed, CDK has not yet raised any category of documents that it believes are relevant and that would not fall within those categories. Accordingly, we believe our answer to any motion to compel that CDK files on these issues likely would be that we are not withholding the documents that CDK believes we are withholding, and that if CDK had asked, we would have said as much.

 In one last attempt to avoid needless motion practice, we will agree to include the modifications to the six categories that CDK proposed in its July 30, 2018 letter, with several necessary changes discussed below. We believe these changes should resolve any of CDK's questions about whether relevant documents are being withheld.

 For applications, CDK requested that we produce documents relating to these issues: "(a) competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds; (b) data integration; or (c) access to DMSs, whether third-party or, in Cox's case, to DealerTrack DMSs." We will agree to include (b) and (c), but we will modify (a) as follows: "competition between the applications at issue and other applications." We make this modification because no "application market(s)" have been alleged in this litigation. We also do not agree to produce every document reviewed with "any mention of competing applications offered by CDK and/or Reynolds." That would be overbroad. Any relevant documents mentioning competition applications offered by CDK or Reynolds would already fall within the other categories.

 For Dealertrack DMS, CDK requested that we produce documents relating to these issues: "(a) competition in the DMS market, including any mention of CDK and/or Reynolds; (b) data integration; or (c) third-party access to DMSs, including DealerTrack's DMS." We will agree to include (b) and (c), but we will modify (a) as follows: "competition in the DMS market." We will not agree to produce every document reviewed with "any mention of CDK and/or Reynolds" because that would be overbroad. Any relevant documents mentioning CDK or Reynolds would already fall within the other categories.

 As we explained in our August 2, 2018 letter, we do not include documents relating to how Cox Automotive and AutoLoop "use the data" and "whether they re-syndicate th[e] data" within the "data integration" category. On several occasions we have asked CDK to explain the relevance of such documents but have yet to receive a substantive response. Since CDK did not raise this issue in its August 4, 2018 letter, we assume the issue is not in dispute. However, as

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

we have mentioned on multiple occasions, we would be willing to consider appropriate adjustments to our document review process on this issue once CDK explains why it believes these documents would be relevant to any claims or defenses in this litigation. If CDK would like to discuss this issue on Monday, please feel free to contact me.

Finally, we address the table that we prepared in our August 2, 2018 letter. At your request, we had prepared this table to show which RFPs might have responsive documents that would be withheld during our review as a result of the limitations described above. For example, RFP No. 8 to Cox Automotive seeks "[a]ll written business plans or presentations related to DealerTrack." Some Dealertrack business plans or presentations might concern routine personnel decisions, graphical design choices, or a host of other irrelevant topics. Those documents would be properly withheld as a result of the limitations above. At the same time, we have explained that we will produce any Dealertrack presentation or business plan that we review that relate to competition in the DMS market (including with Reynolds and CDK), data integration, or the security, performance, and data integrity of Dealertrack DMS. This ensures that no relevant "written business plans or presentations related to DealerTrack" that are reviewed will be withheld.

We reiterate that, if CDK has any questions on particular RFPs, we are available to discuss them at your convenience. There is no need to schedule a formal meet-and-confer. Please feel free to contact me directly.

## II. Specific RFPs

**RFPs No. 1, 2, 8, and 10.** We agree with your August 4, 2018 letter that any dispute regarding RFP No. 1, 2, and 8 is subsumed within the discussion of the general limitations on the RFPs. We believe we have resolved those issues. For RFP No. 10, we believe our proposal for reviewing custodial documents according to search terms is likely to be adequate. However, to the extent that review does not result in the production of the requested marketing materials, we will do a targeted search for those materials.

**RFP No. 4.** We are still discussing with our client your July 31, 2018 proposal that Cox Automotive produce "all documents provided to the FTC that are related to its acquisition of DealerTrack from the files of its custodians that hit agreed-upon search terms" and Item 4(c) documents. Due to summer vacations, we are not likely to be able to provide an answer by tomorrow's motion to compel deadline, though we fully expect to have an answer well before briefing on the motions to compel is completed. Accordingly, we believe it would be premature to raise this issue in a motion to compel. We propose that the parties continue efforts to resolve this issue. If the parties remain in dispute, we will not oppose either CDK re-filing its motion to compel to address this issue or submitting supplemental briefing on this issue, whichever you believe would be most convenient for the Court. We believe that briefing could be completed on the same schedule as the existing motions to compel.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

### III. Search Terms

We received your revised search-term proposal on evening of Saturday, August 4, 2018. We are still reviewing the specifics of that proposal. However, given the approaching motion-to-compel deadline, we wanted to extend the courtesy of stating in advance that we expect to be able to reach agreement based on that proposal. There may still be a couple search terms that generate too many spurious hits. If so, we expect to be able to work through reasonable modifications on those small numbers of terms.

### IV. Interrogatories

We will answer Cox Automotive Interrogatory No. 14 and AutoLoop Interrogatory No. 10 as clarified. We do not believe there are any remaining disputes on interrogatories.

### V. Second Set Of Discovery Requests To AutoLoop

We agree with the understanding stated in your August 1, 2018 letter. We will use a beginning date of January 1, 2013 for our searches of custodial documents. We will perform the same search of custodian documents for AutoLoop RFP No. 73-75 as we will with other document requests. And we are not withholding non-privileged information with respect to AutoLoop Interrogatory No. 19.

Best regards

/s/ *Dan Dorris*

Dan Dorris

Enclosure

CC: MDL Counsel Email List

# Exhibit J-11

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

August 20, 2018

Brian Ross                                           Britt M. Miller
Gibbs & Bruns LLP                                    Mayer Brown LLP
1100 Louisiana, Suite 5300                           71 South Wacker Drive
Houston, TX 77002                                    Chicago, IL 60606

Leo D. Caseria, Esq.
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071

      Re:    *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.)

Dear Brian, Britt, and Leo:

      I write to confirm the search terms that CDK and Reynolds have agreed to use in addition to the terms used in *Authenticom*. These are listed in Appendix A for Reynolds and Appendix B for CDK. In addition, for the search terms used by Cox Automotive and AutoLoop, I write to provide several technical modifications that we have made to avoid syntax errors. These modifications are listed in Appendix C for Cox Automotive and Appendix D for AutoLoop.

      Finally, pursuant to Section 5(k) of the ESI Protocol, I write on behalf of MVSC, Authenticom, AutoLoop, and Cox Automotive to notify CDK and Reynolds that we may use email thread suppression. In particular, we would review and produce only emails with unique content. This would not result in the withholding of any communications or documents. For example, if an email is sent with attachments ("original email"), a person replies to that email ("middle email"), and another person replies to that reply ("top email"), both the original email and top emails would be produced (because they contain unique content) but the middle email would not be produced (because its content is not unique from the top email). Please let us know by August 22, 2018 if you have any questions or would like to discuss.

                                  Best regards

                                  /s/ *Dan Dorris*

Enclosure                              Dan Dorris

CC:    MDL Counsel Email List

**Proposed Search Terms to Cox Automotive, CDK and Reynolds**

**INTENTIONALLY OMITTED**

**Appendix D:  AutoLoop Search Terms.**

| No. | Search Term | Notes |
|---|---|---|
| 1 | ((social security) OR SSN OR (driver* w/3 license*)) AND (DMS OR platform OR system) | |
| 2 | (CDK or Reynolds or rey* or RR or "R&R" or DMS or system) w/10 (script* or program or executable or bypass or avoid or "work around" or workaround or "break through" or breakthrough or breakdown or "break down" or evade) | |
| 3 | "Data Authorization" | |
| 4 | (data w/3 integrat*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") OR (data w/3 extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR "dealer management system") | |
| 5 | (DMS OR "dealer management system") w/5 market*) | |
| 6 | "MDL 2817" or "In re Dealer Management Systems Antitrust Litigation" | |
| 7 | "nonpublic personal information" OR NPI | |
| 8 | "personally identifiable information" OR PII | |
| 9 | "Proprietary Data" | |
| 10 | "secure web form" | |
| 11 | "sensitive personal information" | |
| 12 | "User Emulation" | |
| 13 | Withdrawn | |

| No. | Search Term | Notes |
|---|---|---|
| 14 | ((CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/20 (certif* OR agree* OR integrat* OR contract)) AND (extract* or pull* or push* or poll* or writeback or (write w/3 back) or extract* or scrap* or quer*) | |
| 15 | ((CDK OR Rey* OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track")) w/20 data) AND available AND (poll* OR pulled* OR scrape* OR extract* OR integrat*) AND (field* OR element*) | |
| 16 | (((compet* OR threat* OR challeng* OR superior* OR compare*) w/15 (CDK)) AND (app* OR solution* OR product* OR service*)) OR ((app* OR solution* OR product* OR service*) w/15 (compet* OR threat* OR challeng* OR replac* OR bypass*)) AND (DMS OR "dealer management system") | |
| 17 | ((dealer w/5 data) w/20 (retriev* OR obtain OR access* OR collect* OR transmit* OR poll* OR scrap* OR pull* OR extract*)) AND (manual OR push OR FTP) | |
| 18 | ((los* or win* or gain* or churn* or defect* or cancel* or (turn* w/3 over) or turnover or switch or chang*) w/15 (dealer or customer or contract )) AND (DMS or "dealer management system" or app* or vendor or integrator or service* or product* or solution*)) | |
| 19 | (((pull* OR poll OR push OR writeback OR (write w/3 back) OR extract* OR scrap* OR quer* OR obtain) w/5 data) AND (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | |
| 20 | ((recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect* OR utilize* OR use OR maintain* OR email OR send OR access OR secur* OR priva*) w/20 (data)) AND (polic* or practic*) | |

| No. | Search Term | Notes |
|---|---|---|
| **21** | ((unauthorized w/5 access) or ("not" w/5 authoriz*) or ((express or written) w/5 permi*)) AND ((CDK w/5 system) OR (Reynolds w/5 system) OR ((Dealertrack OR Cox) w/5 system) OR DMS OR "Dealer Management System") | |
| **22** | ((up w/3 front) or "up front" or install* or initial or recur* or month* or annual or (set w/3 up) or setup) w/5 (fee* or pric* or charg or rat* or bill or pay*)) and (extract* or integrat*)) | |
| **23** | (Username OR Password OR userID OR (user w/5 ID)) AND DMS | |
| **24** | (*.gov) AND (CDK OR Reynolds OR DMS OR Dealertrack OR Cox) AND (complain* OR investigat* OR CID OR violat*) | |
| **25** | ((*authoriz* OR agree* OR permi* OR allow*) w/10 (integrat* OR poll* OR scrap* OR pull* OR extract* OR access*)) AND (CDK OR Reynolds OR Dealertrack OR Cox OR DMS OR "Dealer Management System") | |
| **26** | Withdrawn | |
| **27** | ("Civil Investigative Demand" OR CID) AND (CDK OR Reynolds) | |
| **28** | ("Data element*" OR "data field*") w/20 ((CDK or Reynolds) w/10 DMS) | |
| **29** | (Authoriz* OR access OR stor* OR Secur*) AND (DMS or "Dealer Management System" OR Password OR login OR credential* OR username OR pwd OR (user w/5 ID) or data) AND (Polic* or practice) | |
| **30** | (BOD OR "Board of Directors" OR shareholder OR investor) AND (minutes OR notes OR present*) AND (CDK OR RR OR Rey* OR "R&R" OR Authenticom OR litigat* OR Cottrell OR "DMS MDL" OR "Kellogg" OR "1:18-CV-864") | |
| **31** | ((breach or hack or attack or data) w/25 (target or "north korea" or Sony or "Community Health" or Equifax or Facebook or DealerBuilt or "New Hampshire")) AND (dealer* OR DMS* OR auto* OR integrat*) | |

| No. | Search Term | Notes |
|-----|-------------|-------|
| 32 | (CDK and (Reynolds or "R&R" OR RR)) AND (coordinat or conspir or anticompet* or antitrust or tying or tie or tort*) | |
| 33 | (CDK OR Drive) AND ((manual report*) OR (operational report*) OR ERPG OR (Enhanced Report Generator)) | |
| 34 | (CDK OR Reynolds OR "R&R" OR "RR" OR DMS OR "Dealer Management System") AND ((UUP OR admin*) w/20 (user OR account OR password or pwd OR access or credential*)) | |
| 35 | (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/15 ((Independent w/10 (data w/3 integrator*)) OR (Independent integrator) OR SIS OR SelectQu OR "Superior Integrated Solutions" OR StoneEagle OR ProQuotes OR *@proquotes.net OR *@4-superior.com OR *@stoneeagle.com OR *@selectqu.com) | |
| 36 | (CDK OR Reynolds OR R&R) w/10 (Block* OR detect* OR disabl* OR restrict* OR intercept* OR (cut w/3 off) OR prevent* OR undermin* or damage* OR disarm OR impair OR cripple or defus* OR hamper or imped* OR restrain* OR circumscribe OR (shut w/5 off) OR (turn w/5 off)) | |
| 37 | (CDK or Reynolds or RR or R&R or ADP) w/20 (injur* or damage* or harm* or hurt*) | |
| 38 | (cede or (give w/3 up) or ((hand or sign or turn) w/3 over) or relinquish or renounce) w/5 (control or power or authority) w/10 (data or system) | |
| 39 | ((code w/4 box) OR "code-on-the-box" or push or writeback or (write w/3 back)) w/20 (CDK OR Reynolds OR RR* OR R&R OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR "dealer management system" OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") | |
| 40 | (Compet* w/20 harm*) | |
| 41 | ((contract* or agree*) w/20 (term or year* or length or period)) AND (CDK OR Rey* OR RR OR "R&R") | |

| No. | Search Term | Notes |
|---|---|---|
| 42 | (Integrat* OR vendor OR application OR app* OR customer* OR dealer* OR DMS OR "dealer management system") w/10 (win OR loss OR switch) | |
| 43 | (data or system OR DMS) w/20 (breach or attack or steal or stolen or hack* or corrupt* OR cybersec* OR (cyber w/5 secur*)) | |
| 44 | (data AND integration) w/20 market | |
| 45 | ((data w/5 transfer) OR push OR pull OR writeback OR (write w/2 back) or "write back") AND (protocol* or polic) | |
| 46 | "Dealer Management System" w/5 market | |
| 47 | "Dms function*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | |
| 48 | "Dms menu*" w/20 (CDK or Reynolds OR Dealertrack OR Cox) | |
| 49 | (DMS or "dealer management system" or integrat* or app or apps or application or applications* or vendor or CDK or Rey* or RR or "R&R") w/10 (analy* or forecast or projection* or survey* or stud* or (market w/3 share) or (market w/3 condition) or compet*) | |
| 50 | (DMS or "Dealer Management System") AND (promot* or rebate* or discount* or sale*) | |
| 51 | (draft OR modify OR edit OR write OR chang* OR negotiat* OR enforc* OR interpret* OR adjust* OR tweak OR delete OR amend*) AND (contract* OR agree* OR provision* OR section* OR paragraph) AND (CDK OR 3PA OR "third party access" OR "partner program" OR "Access Program") | |
| 52 | "ERA link" OR ERALink OR "ERA Ignite" OR "ERA-Ignite" OR "Era Access" OR ERAccess OR ERAaccess | |
| 53 | ((exclusiv*or sole) w/10 (DMS or CDK or Reynolds or R&R or RR or provider or service* or "dealer management system")) w/30 (vend* OR extract* OR appl* OR integrat*) | |

| No. | Search Term | Notes |
|---|---|---|
| 54 | (CDK or 3PA or "third party access" or integrat* or extract* or "partner program" or "Access Program") and (fee* or pric* or charge* or rate* or bill or pay* or paid or invoice*) w/15 ("pass through" or passthrough or share* or sent or "passed to" or "passed on" or "pass on") | |
| 55 | ((fee* or pric* or charge* or bill or pay* or paid or invoice*) w/10 (Authenticom or SIS OR "Superior Integrated Solutions" OR InDesign or 1DMS OR SelectQu OR "New Freedom" OR "Stone Eagle" OR "ProQuotes") | |
| 56 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice) AND (Digital Motorworks or Integralink or DMI or "Digit Motor Works") | |
| 57 | (hack or steal or misuse or misapprop*) w/20 (data or server or information or password or pwd or login or credentials or access OR DMS) | |
| 58 | (harm OR injur* OR disrupt* OR los* OR interrupt*) w/15 (Reynolds OR R&R OR RR OR CDK) | |
| 59 | (CDK or RR or Rey* or "R&R" or Authenticom or Cottrell or Cox) w/10 (Lawsuit or litigat* or complaint or alleg* or claim* or (legal w/3 (action or proceeding)) or MDL or subpoena or "class plaintiff" or "lead plaintiff" or "class representative"). | |
| 60 | (Login OR username OR "user name" OR password OR credential* or pwd or (user w/5 ID)) w/10 (recei* OR stor* OR compil* OR encrypt* OR transmi* OR request OR shar* OR obtain OR gather OR acquir* OR protect OR utilize* OR maintain* OR email OR send OR stor* or access) | |
| 61 | (PII or (non w/3 dealer) OR (proprietary data) OR SSN or "social security" or "nonpublic personal" OR "personally identifiable") AND (DMS OR "Dealer Management System") AND (access* OR poll* OR pull* OR scrap* OR extract*) | |
| 62 | ((fee* or pric* or charge or bill or pay* or invoice) w/10 (CDK or 3PA or "third party access" or "partner program" or "Access Program" or DMI or IntegraLink or Rey* or "R&R" or RR or RCI) | |
| 63 | (fee* or pric* or charge or bill or pay* or invoice) w/20 (data w/5 (access* or integrat* or extract)) | |

| No. | Search Term | Notes |
|---|---|---|
| 64 | (fee* or pric* or charge or rate* or bill or cost* or pay* or invoice or quot*) w/10 (DealerVault or Authenticom or (data w/5 (gather* or extract* or (write w/3 back) or pull* or poll* or scrap*))) | |
| 65 | (fee* or pric* or charge or bill or pay* or invoice) w/10 (data w/5 (gather* or extract* or (write /3 back) or pull* or poll* or scrap* or integrat*)) | |
| 66 | "Query Builder" OR (QB AND Reynolds) | |
| 67 | ("Report Generator" OR "report scheduler") AND (schedule or automat*) | |
| 68 | (restrict* OR *authoriz* OR allow*) AND (Reynolds OR CDK) AND (DMS OR system) AND (contract OR agree*) | |
| 69 | ((*reyrey.com) AND (*cdk.com OR *adp.com)) OR ((*reyrey.com OR Rey OR RR OR "R&R") AND CDK) AND (DEA OR "Data Exchange Agreement" OR RCI OR 3PA OR "third party access" OR "Access Program" OR "partner program" OR Authenticom OR hostile OR integrat* OR extract* OR block* OR (access w/3 (DMS OR data)) OR destroy* OR market* OR compet*)) | |
| 70 | ("Reynolds Certified Interface" or RCI or 3PA or "third party access" or "security first" or securityfirst or "third-party access") w/25 (CDK OR RR OR R&R OR Rey*) | |
| 71 | (Reynolds OR RR OR R&R OR DMS OR CDK OR Dealertrack OR Cox OR system) AND ("processing loads" OR burden OR effects) | |
| 72 | (Secur* w/10 ( data or information)) AND (polic* OR plan OR system) | |
| 73 | (secur* or priva*) AND data AND (concern* or worr* or anxi* OR distress* or nervous* or uneas* or trouble*) | |
| 74 | (Stone Eagle Group) OR StoneEagle OR *@stoneeagle.com | |
| 75 | ((Superior Integrated Solutions) OR SIS OR *@4-superior.com) w/10 (extract* OR integrat* OR CDK OR Rey* OR RR OR "R&R" OR access*) | |

| No. | Search Term | Notes |
|-----|-------------|-------|
| 76 | (CDK OR Rey* OR RR* OR "R&R" OR Autosoft or Dealerbuilt or PBS or Dominion or (Adam w/15 (system or DMS)) or Quorum or Advent or DPC or Automate OR DMS OR system OR Dealeartra* OR "Dealer track" OR "dealer trak" OR Opentrack OR "Open Track") w/10 (perform* or threat* or break or slow* or breach or destroy OR degrad* OR (data w/5 (corrupt* OR integrity)) OR (data w/5 security) OR complain* or investigat*) | |
| 77 | (Third w/3 Party) OR thirdparty OR "3rd party") AND (access* OR poll* OR pull* OR scrap* OR extract*) AND (CDK OR Rey* OR RR OR "R&R" OR DMS OR data OR "Dealer Management System") | |
| 78 | ((Third w/3 Party) or thirdparty or "3rd party" or OEM or CDK or Reynolds or RR or R&R) w/5 Proprietary | |
| 79 | (Unauthorized OR (without authoriz*) OR (no* w/5 authoriz*)) AND (DMS OR "Dealer Management System" OR CDK OR Reynolds) | |
| 80 | Withdrawn | |
| 81 | Withdrawn | |
| 82 | "secure web form" | |
| 83 | "SOC" OR SSAE OR cybersec* OR hack* OR (breach* AND (data or system)) | |
| 84 | Agreement w/20 (CDK OR Reynolds OR R&R) w/20 (illegal OR anticompet*) | |
| 85 | anticompet* | |
| 86 | antitrust | |
| 87 | Authenticom or DealerVault or Cottrell or Dvault or ACOM or DVLT or DVT or Cotrel or Cottrel or Cotrell or AuthentiLink or 17-cv-318 | |
| 88 | Authoriz* AND ((Reynolds OR CDK) w/20 DMS) | |

| No. | Search Term | Notes |
|---|---|---|
| 89 | (*cdk.com OR *adp.com) AND (integrat* OR extract* OR 3PA OR "third party access" OR "access program" OR scrap*) | |
| 90 | Circumvent AND (security OR dms OR block*) | |
| 91 | Withdrawn | |
| 92 | cyber w/5 insurance | |
| 93 | "Digital Motorworks" or Integralink or DMI or "Digit Motor Works" | |
| 94 | Withdrawn | |
| 95 | FTP w/3 push | |
| 96 | hide or conceal or (cover w/3 up) or veil or bury | |
| 97 | (Illegal or unlawful or CFAA or ("not" w/3 (law* or legal)) or (against w/3 (law or contract* or agree* or regulat*)) or (prohibit* w/5 (law or contract* or agree* or regulat*))) and (CDK or RR or Rey* or "R&R" or DMS or "dealer management system" or integrat* or extract* or "third-party" or "third party" or hostile or unauthoriz*) | |
| 98 | Interfer* w/20 ((CDK OR Reynolds) w/20 (DMS OR "Dealer Management System")) | |
| 99 | Lock w/10 account | |
| 100 | OEM AND (data w/25 (access* or pull* or poll* or push or writeback or (write w/3 back) or extract* or scrap* or quer*)) | |
| 101 | ProQuotes OR (Pro Quotes) OR *@proquotes.net | |
| 102 | Pwd OR "Preshared Key" OR PSK OR "Private Key" | |
| 103 | Secur* w/20 (Audit* OR Standard OR proced*) | |

| No. | Search Term | Notes |
|-----|-------------|-------|
| 104 | Waconia OR "Andy Strong" OR "Eric Strong" OR Teterboro OR "Alan Graf" OR Pitre OR "Tom Stever" OR "Kenny Thomas" OR "kelly Thomas" OR "Olathe Toyota" OR "John O'Neil" OR "Johnson Toyota" OR "Kevin Winningham" OR "Jim Marsh" OR "Allen Yarborough" OR "Mark Grim" OR "David Benstock" OR "Dave Benstock" OR "JCF Auto" OR "JCFAutos" OR Patchogue OR "Stevens Ford" OR "Stevens Jersey City Ford" OR "Jericho Turnpike Sales" OR "Hoover Automotive" OR "Hoover Auto" OR "Cliff Harris" OR "Keith Robers" OR "Warrensburg Ford" OR "Marshall Chrysler" OR "Warrenburg Chrysler" OR "Baystate Ford" OR "Frank Lupacchino" OR "Heather Paulikis" OR "Ronnie Eames" OR Towne OR "FG Downing" OR "Bob Baker" OR "Northtown" OR "Cox Motors" OR "Cox Toyota" OR "Baystate Ford" OR "Pensacola Motor" or "Bob Tyler" OR "Apex Motor" OR "Shearer Acura" OR "Massey Automotive" OR "Massey Chrysler" OR Hartley | |
| 105 | "17-cv-07827" OR "17-cv-00864" OR "2:17-cv-11975" OR "3:18-cv-00029" OR "2:18-cv-00042-GMB" OR "2:17-cv-00896-DSF-AFM" OR "18-cv-00833" OR "3:17-cv-00888-HSO-JCG" OR "1:18-cv-01402" OR "2:17-cv-08714" OR "1:18-cv- 01707" OR "1:18-cv-02666" OR "3:17-cv-00318-wmc" OR "1:18-cv-02521" OR "1:18-cv-00996" OR "1:18-cv-00909" OR "1:18-cv-00846" OR "3:17-cv-00925" OR "1:18-cv-00987" | |
| 106 | (FTP OR "File transfer protocol") AND (push or writeback or (write w/5 back)) | |
| 107 | manual w/10 (report* or tool* or extract*) | |
| 108 | (*cdk.com or * adp.com or cdk or ADP) w/10 (DMS OR integrat* OR extract* OR "dealer management system" OR 3PA OR "third party" OR access* OR scrap*) | This term is run against documents that exclude *cdk.com and *adp.com from the sender and addressee fields. |
| 109 | (CDK or DMI or "Digital Motorworks" or "Digital Motor Works" or Integralink or 3PA or "Partner Program" or "Access Program") w/10 (agree* or contract) | |

| No. | Search Term | Notes |
|---|---|---|
| 110 | ((manag* w/2 interfac*) OR 3PA OR RCI OR "third party access" OR "Access Program" OR "Certified Interface" OR ((CDK OR RR OR Rey* OR "R&R") w/5 (DMS OR "dealer management system"))) w/5 (agree* OR contract*) | |
| 111 | (employee or agent*) AND (agree* or contract) AND ((permit or allow or access or authoriz*) w/25 DMS) | |
| 112 | (CDK AND (rey* or "R&R" or RR or Reynolds")) AND ("data exchange agreement" or DEA) | |
| 113 | ((hostile or foreign or unauthorized or independent or "third party" or thirdparty or "3rd party" or Authenticom or DealerVault or SIS or SelectQu or SelectQ or "Superior Integrated Solutions" or SIS or Dominion or StoneEagle or ProQuotes) w/10 (access* or integra* or *extract)) w/20 (DMS OR "dealer management system" OR data OR information) | |
| 114 | ("tilt the table" or (tilt w/3 table)) AND (CDK or DMI or "Digital Motorworks" or "Digital Motor works" or Integralink or RR or "R&R" or "Reynolds" or "security first" or "securityfirst" or "3PA Refresh" or "Partner Program") | |
| 115 | ("solution gap*" OR bundl* w/s 20 (app* OR solution* OR service*)) | |
| 116 | SmartLane* w/25 ("Service Edge*" OR CDK OR prob* OR issue* OR allow* OR access*) | |
| 117 | CDK* w/10 (nondisclosure* or share* or provide*) w/10 (fee* OR charge*) | |
| 118 | operational report* OR ERPG OR "Enhanced Report Generator" OR "dynamic report*" | |
| 119 | Non-DMS or (DMS w/5 alternative) | |
| 120 | (login OR username OR "user name" OR password OR credential* OR pwd OR (user w/5 ID)) w/15 ("Reynolds OR R&R OR RR OR CDK OR DMS) | |
| 121 | (declin* or refus* or ((will or would) w/3 "not") or won't) w/10 (authoriz* or grant or give or allow or share) AND (login or credential or password or pwd or access) AND (Cox OR DealerTrack or DMS OR Reynolds OR R&R OR RR OR CDK or integrat* or Authenticom or DealerVault or vendor*) | |

| No. | Search Term | Notes |
|-----|-------------|-------|
| 122 | Schaefer or Strawsburg or (kelly w/2 hall) or Brockman or Gardner or Hellyer or Mccray or reyrey* or Workman or Lamb or Karp or Frey or Crutchfield or Bonifay or Conver or (Steve* w/2 French) or Noser or Thorne or Herbers or Quinlan* or Roeder* or Cottrell | |
| 123 | (Conspir* or monop* or (market w/2 alloc*) or (market w/2 division) or "exclusive dealing" or "tying arrangement" or boycott* or anticompetitive or "single brand aftermarket" or antitrust or "refusal to deal" or duopoly or dominat* or "market power" or "lock in" or "locked in" or "barriers to entry" or "barrier to entry" or tort*) AND ("Reynolds OR R&R OR RR OR CDK OR DMS) | |

# Exhibit K

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) ) | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates To: | ) ) ) | Hon. Robert M. Dow Jr. |
| *Motor Vehicle Software Corporation v. CDK Global, Inc. et al., No. 1:18-cv-00865; Authenticom, Inc. v. CDK Global, LLC et al., No. 1:18-cv-00868; Cox Automotive, Inc. et al v. CDK Global, LLC, No. 1:18-cv-01058; and Loop LLC v. CDK Global, LLC, No. 1:18-cv-02521* | ) ) ) ) ) ) ) ) | Magistrate Judge Jeffrey T. Gilbert |

## THE REYNOLDS AND REYNOLDS COMPANY'S RESPONSES AND OBJECTIONS TO INDIVIDUAL PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant The Reynolds and Reynolds Company ("Reynolds") hereby objects and responds to the First Set of Requests for the Production of Documents served on Reynolds by Plaintiffs Motor Vehicle Software Corporation, Authenticom, Inc., Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., Xtime, and Loop, LLC ("Individual Plaintiffs"), dated May 25, 2018, and a single additional Request served on June 13, 2018.

## GENERAL OBJECTIONS

1.      Reynolds asserts each of the following objections (the "General Objections") to Individual Plaintiffs' Requests. In addition to these General Objections, Reynolds may also state specific objections to a Request where appropriate. By setting forth such additional specific objections, Reynolds does not in any way intend to limit or restrict its General Objections.

-1-

Moreover, to the extent Reynolds provides a response to any of Individual Plaintiffs' Requests to which Reynolds objects, such response shall not constitute a waiver of any General Objection or specific objection.

2. Nothing herein shall be construed as an admission by Reynolds regarding the competence, admissibility, or relevance of any fact or document, or as an admission of the truth or accuracy of any characterization or document of any kind sought by Individual Plaintiffs' Requests. Reynolds reserves its right to challenge the competency, relevance, materiality, and admissibility of any documents Individual Plaintiffs produce in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action. Further, Reynolds intends no incidental or implied admissions by its answers to Individual Plaintiffs' Requests. Whether Reynolds answers or objects to any particular Request should not be interpreted as an admission that Reynolds accepts or admits the existence of any fact(s) set out or assumed by such Request, that the Requests are proper, that Reynolds's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether Reynolds answers part or all of any particular Request is not intended and should not be construed as a waiver by Reynolds of any or all objections to such Request or any other Request.

3. Reynolds objects to the Requests, definitions, and instructions to the extent that they purport to impose any obligations on Reynolds beyond the obligations imposed by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order. In

responding to these Requests, Reynolds does not assume any burden not imposed by the Federal Rules, Local Rules, or applicable Court Orders.

4.      Reynolds objects to the Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). As a general matter, Reynolds objects to production of documents prior to January 1, 2013. Any production that includes documents prior to January 1, 2013 is expressly not intended to waive Reynolds's position as to the relevant time period for the purposes of any request or category of documents.

5.      Reynolds objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of Reynolds; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery (collectively, "Privileged Documents or Information"). Reynolds does not intend to disclose or produce any Privileged Documents or Information. Any disclosure of Privileged Documents or Information in response to any of the Requests is inadvertent and shall not be deemed a waiver of any applicable privileges or protections.

6.      To the extent Requests seek information and/or documents that are confidential or otherwise proprietary in nature, Reynolds shall only produce such information subject to the

other considerations set forth in Federal Rule of Civil Procedure 26(b)(1), the terms of the Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Case No. 18-cv-864, Dkt. No. 104), and the contractual rights of any third parties whose confidential information is implicated by the Requests.

7.      Reynolds objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of Reynolds's employees and other persons, including individuals who are not parties to this litigation. Reynolds reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation (including government agencies), including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that Reynolds may produce.

8.      No statement that Reynolds will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that Reynolds will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

9.      To the extent Reynolds has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found. Similarly, Reynolds reserves the right to use electronic searching techniques, including but not limited to the use of agreed upon search terms, to avoid the need to manually inspect every potentially responsive document.

10.     Reynolds's responses to the Requests are based on its present knowledge, upon a reasonable inquiry. Discovery is ongoing, and Reynolds's investigation continues. Reynolds reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

11.     To the extent Reynolds has objected to or refused to produce documents or information in response to any given Request, and to the extent that Individual Plaintiffs take issue with any such objection or refusal, Reynolds is willing to meet-and-confer with Individual Plaintiffs and Co-Lead Counsel in the MDL to see if a reasonable, mutually-acceptable compromise might be reached.

12.     Reynolds objects to the extent that Individual Plaintiffs' Requests are duplicative and/or cumulative of prior Requests for Production or the Class Plaintiffs' requests for production, and to the extent the Requests seek to end-run or undo specific agreements that have already been reached with Individual Plaintiffs' attorneys in connection with prior Requests by Authenticom, Inc. ("Authenticom").

13.     Reynolds objects to the extent that any Individual Plaintiff who has not filed a complaint against Reynolds in this action is purporting to request documents from Reynolds through a Request served under Rule 26.  For any such Plaintiff, Reynolds is a third party to its case, and that Plaintiff can only request documents from Reynolds through a properly served Rule 45 subpoena.  Furthermore, Reynolds, as a third party, would be entitled to greater protection when responding to a Rule 45 subpoena, and any such Plaintiff would need to overcome a greater burden and relevance standard to justify its Requests to Reynolds.  While Reynolds has agreed to serve responses and objections to such Requests without the need for

-5-

them being formally re-served as Rule 45 subpoenas, Reynolds does not intend to waive, and expressly preserves, these objections and protections.

14.     Reynolds expressly reserves all applicable rights, if any, to arbitrate any claim by any Plaintiff, and does not intend to waive any such rights by responding to any Request.

15.     Reynolds objects to the extent that any Request herein is served on behalf of Authenticom.  As set forth in the Court's March 12, 2018 Order and the Court's comments at the hearing that day, the parties in the *Authenticom* matter were ordered to issue any final written discovery in that case by March 23, 2018.  Accordingly, the Individual Plaintiffs' Requests, which were served on May 25, 2018, are untimely as to Authenticom.

16.     Reynolds incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Reynolds objects to each and every "Definition" set forth in the Requests, including "all," "any," "and," "or," "communication," "document," "including," "relating to," "related to," "referring to," "regarding," and "with respect to" to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on Reynolds broader than or inconsistent with the obligations created by the Federal Rules of Civil Procedure and/or any applicable Local Rule or other Court Order. Reynolds will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     Reynolds objects to the definitions of "Reynolds," "The Reynolds & Reynolds Company," and "you," "your" and "your company" as overly broad and unduly burdensome to the extent they purport to require Reynolds to produce information and/or documents beyond Reynolds's possession, custody, or control. In addition, Reynolds objects to these definitions to

the extent they purport to require Reynolds to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on Reynolds's behalf.

4.      Reynolds objects to the definition of "data integrators" in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as Reynolds uses and understands the term. To the extent that Reynolds responds to Requests that reference "data integrators," it does not mean that Reynolds agrees with or accepts Individual Plaintiffs' definition.

5.      Reynolds objects to Individual Plaintiffs' purported "Instructions," including Instructions No. 1, 2, 3, 4, 5, 6, and 7, to the extent that they purport to conflict with, or impose any obligations that are greater than or otherwise inconsistent with, the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (Case No. 18-cv-864, Dkt. No. 105). Reynolds will produce ESI responsive to these Requests in accordance with that Stipulation.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

The executed versions of every RCI contract with a vendor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Authenticom Request Nos. 41-44. Also, the Request seeks information that is not relevant to the claims or defenses in this case because it

has no time limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further states that Authenticom already has a standard form RCI contract (Plaintiff's Preliminary Injunction Hearing Exhibit 53), and the relevant terms of that form are not disputed. The burden of collecting and producing each and every executed RCI contract is not proportional to the needs of the case under these circumstances.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. Reynolds's RCI contracts are not relevant to the Cox and Autoloop matters, where the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

Reynolds objects that Reynolds's RCI contracts unrelated to the Electronic Vehicle Registration ("EVR") market are irrelevant to the MVSC matter. The Request therefore subjects Reynolds to an undue burden and is not proportional to the needs of the MVSC case.

Reynolds objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments. Reynolds further objects that this Request seeks to end-run or undo specific agreements that were reached in connection with certain of Authenticom's prior Requests.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds will, as previously agreed with Authenticom, produce (i) a representative, current RCI Agreement, along with any other current version(s) or template(s) of the RCI

Agreement that materially vary from Plaintiff's Preliminary Injunction Hearing Exhibit 53 with respect to any alleged exclusive dealing (i.e., "Non Approved Access") or price confidentiality provisions (each such version with vendor-specific identifying information redacted); (ii) any external modifications or waivers that Reynolds has agreed to with respect to the material terms; and (iii) a summary analysis showing the distribution of use (as a percentage of contracts) of each variant of the contracts identified.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and communications regarding Reynolds' RCI Agreements with (a) Cox Automotive and (b) AutoLoop.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Authenticom Requests 41-44 and 57. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications concerning any RCI agreement with Cox or Autoloop, regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further states that Authenticom already has a standard form RCI contract (Plaintiff's Preliminary Injunction Hearing Exhibit 53), and the relevant terms of that form are not disputed. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. Documents and communications regarding Reynolds's RCI contracts with Cox and Autoloop are not relevant to the Cox and Autoloop matters, where the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

Documents and communications regarding Reynolds's RCI contracts with Cox and Autoloop are also not relevant to the MVSC matter. The Request therefore subjects Reynolds to an undue burden and is not proportional to the needs of the MVSC case.

Reynolds objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

**REQUEST FOR PRODUCTION NO. 3:**

All documents and communications regarding the RCI fees to be charged to (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Authenticom Requests 55-61. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications concerning any RCI fee charged to Cox or Autoloop or MVSC, regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. The

limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to the extent the Request seeks to end-run or undo specific agreements that were reached in connection with certain of Authenticom's prior Requests, including agreements relating to RCI pricing. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. Documents and communications regarding Reynolds's RCI fees charged to Cox, Autoloop, and MVSC are not relevant to the Cox and Autoloop matters, where the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

Documents and communications regarding Reynolds's RCI fees charged to Cox and Autoloop are also not relevant to the MVSC matter, to the extent they do not relate to EVR. In addition, Reynolds never charged any RCI fees to MVSC because MVSC never joined the RCI program. The Request therefore subjects Reynolds to an undue burden and is not proportional to the needs of the MVSC case to the extent it seeks documents unrelated to EVR.

Reynolds objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments. Also, RCI fees charged to Cox and Autoloop, or offered to MVSC, have no relevance to the claims or defenses in the Authenticom case.

-11-

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds has already produced REYMDL0037507, consistent with its prior discovery agreements with Authenticom regarding RCI pricing information. Furthermore, in light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 4:**

All documents and communications regarding access to dealer data on a Reynolds DMS through the RCI program by (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests, including Authenticom Request No. 44. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications concerning access to data on a Reynolds DMS through RCI by Cox or Autoloop or MVSC, regardless of whether it relates to any of the claims or defenses in the case, and with no date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. Documents and communications regarding access to data on a Reynolds DMS through RCI by Cox, Autoloop, and MVSC are not relevant to the Cox and Autoloop matters, where the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

Documents and communications regarding access to data on a Reynolds DMS through RCI by Cox and Autoloop are also not relevant to the MVSC matter, to the extent they do not relate to EVR. In addition, MVSC never accessed a Reynolds DMS through RCI because MVSC never joined the RCI program. The Request therefore subjects Reynolds to an undue burden and is not proportional to the needs of the MVSC case to the extent it seeks documents unrelated to EVR.

Reynolds objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer

regarding reasonable search terms to be applied to agreed upon custodian files in a good faith

effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 5:**

All documents and communications regarding whether data received by a (a) Cox

Automotive or (b) AutoLoop application from a Reynolds DMS may be shared with another

application run by (a) Cox Automotive or (b) AutoLoop.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 5:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, not proportional to the needs of the case, and seeks information that is cumulative

and duplicative of other Requests.  It also seeks information that is not relevant to the claims or

defenses in this case and fails to describe the items sought with reasonable particularity to the

extent it effectively seeks all documents and communications regarding whether Cox or

AutoLoop may share data from a Reynolds DMS between applications, regardless of whether it

relates to any of the claims or defenses in the case, and with no date limitation.  The limitations

period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed

suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds further objects to this

Request to the extent it seeks documents protected from disclosure by the attorney-client

privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is

entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

Autoloop.  Documents and communications regarding whether Cox or AutoLoop may share

data from a Reynolds DMS between applications are not relevant to the Cox and Autoloop

matters, where the only claims asserted are against CDK.  The Request is therefore particularly

-14-

burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

Documents and communications regarding whether Cox or AutoLoop may share data from a Reynolds DMS between applications are also irrelevant to the MVSC and Authenticom matters. The Request therefore subjects Reynolds to an undue burden and is not proportional to the needs of the MVSC and Authenticom cases.

Reynolds objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 6:**

All documents and communications regarding any instance in which a vendor received equal or better pricing than Cox Automotive for data integration under the RCI program from 2015 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding instances when a vendor received equal or better RCI pricing than Cox, regardless of whether it relates to any of the claims or defenses in the case. The Request is also vague in that RCI products are

-15-

customized, and it is unclear how Individual Plaintiffs expect Reynolds to determine whether one vendor received an equal or better price than another. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, documents and communications regarding Reynolds' RCI pricing to Cox or other vendors is irrelevant because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request also does not have any relevance to the Autoloop, MVSC or Authenticom matters as stated. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds that it has already produced REYMDL0037507, which contains RCI pricing information.

### REQUEST FOR PRODUCTION NO. 7:

All communications with and documents regarding the RCI pricing committee.

### RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity because it seeks "all" communications with and documents regarding

"the RCI pricing committee," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, documents and communications regarding Reynolds' "RCI pricing committee," however it is defined, are irrelevant and overbroad because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

Also, Reynolds has previously discussed this topic with Authenticom in connection with earlier requests served by Authenticom, and has reached an agreement with Authenticom to produce certain materials. Reynolds objects to the extent this Request seeks to undo or end-run that agreement. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds is willing to perform a diligent search and produce any materials presented to or considered by an RCI pricing committee from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 8:**

All documents and communications regarding any DMS access restrictions, to which Reynolds' add-on applications are not subject, that Reynolds places on third-party add-on applications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding any DMS access restrictions that apply to non-Reynolds applications but not Reynolds applications, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, documents and communications regarding any DMS access restrictions that Reynolds applies to non-Reynolds applications but not Reynolds applications, are irrelevant and overbroad because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

As to MVSC, the Request is irrelevant to the extent it requests documents unrelated to DMS access restrictions on EVR applications.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 9:**

All documents and communications regarding allowing applications to create or modify "repair orders."

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding the vague concept of "allowing" applications to create or modify "repair orders," neither of which are defined or explained, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation.  The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds further objects to this Request to the extent it

seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant and overbroad to the extent they seek documents going beyond CDK's alleged conduct with respect to creating or modifying repair orders, because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

As to MVSC and Authenticom, the Request is irrelevant and inapplicable as those cases have nothing to do with "repair orders." Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 10:**

All documents and communications regarding allowing applications to finalize purchasing and leasing transactions.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding the vague concept of "allowing" applications to "finalize" purchasing and leasing transactions, neither of which are defined or explained, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant and overbroad to the extent they seek documents going beyond CDK's alleged conduct with respect to finalizing purchasing and leasing transactions, because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

As to MVSC and Authenticom, the Request is irrelevant and inapplicable as those cases have nothing to do with finalizing purchasing and leasing transactions. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer

regarding reasonable search terms to be applied to agreed upon custodian files in a good faith

effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 11:**

All documents and communications regarding any category restrictions in place at any

time with respect to data integration.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with

reasonable particularity to the extent it effectively seeks all documents and communications

regarding the vague concept of data integration "category restrictions," which is not defined or

explained, regardless of whether it relates to any of the claims or defenses in the case, and

without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is,

at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed

(MVSC). Furthermore, the concept of a category restriction is unintelligible, because RCI is

open to any vendor that provides an application to a dealership, if the vendor agrees to

Reynolds's terms and conditions and prices. Reynolds further objects to this Request to the

extent it seeks documents protected from disclosure by the attorney-client privilege, the work

product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is

entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant and overbroad

to the extent they seek documents going beyond CDK's alleged category restrictions, because the

only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

## REQUEST FOR PRODUCTION NO. 12:

All documents and communications relating to any "CVR Category" for data access by electronic vehicle registration and titling vendors.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding the vague concept of a "CVR Category," which is not defined or explained, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Furthermore, the concept of a CVR or EVR category is unintelligible, because RCI is open to any vendor that provides an application to a dealership, if the vendor agrees to Reynolds's terms and conditions and prices. Reynolds further objects to this Request to the extent it seeks documents protected

from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant and overbroad to the extent they seek documents going beyond an alleged CDK data access category, because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which does not relate to data access by EVR vendors. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 13:**

All documents and communications relating to any "Closed Category" for data access by electronic vehicle registration and titling vendors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications

regarding the vague concept of a "Closed Category," which is not defined or explained, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Furthermore, the concept of a "Closed Category" is unintelligible, because RCI is open to any vendor that provides an application to a dealership, if the vendor agrees to Reynolds's terms and conditions and prices. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant because those cases do not involve EVR. The Request is also irrelevant and overbroad to the extent it seeks documents going beyond an alleged CDK "Closed Category," because the only claims asserted by Cox and Autoloop are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which does not relate to EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 14:**

All documents and communications concerning the process of transitioning dealers from Reynolds' DMS to Dealertrack's DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding the "process of transitioning" dealers form Reynolds' DMS to Dealertrack's DMS, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. Cox and Autoloop have only asserted claims against CDK. The process of switching customers from a Reynolds DMS to a Dealertrack DMS is not relevant to the Cox and Autoloop claims against CDK. Furthermore, Cox (and all other plaintiffs) can more easily obtain information or documents concerning the process of switching from a Reynolds DMS to a Dealertrack DMS from Cox itself. The Request is therefore particularly burdensome, not

proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party

discovery protections.

The Request is also irrelevant as to the Authenticom, MVSC and Autoloop cases,

because those cases do not concern Dealertrack. Reynolds further objects that this Request is

untimely as to Authenticom, because Authenticom's deadline to issue written discovery was

March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as

follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied

to agreed upon custodian files in a good faith effort to capture responsive and relevant

documents from January 1, 2013 to the present.

## REQUEST FOR PRODUCTION NO. 15:

All documents and communications regarding impeding, blocking, or in any way making

it difficult for a dealer to switch from Reynolds' DMS to a competing DMS, including

Dealertrack's DMS. For the avoidance of doubt, this Request includes all communications and

documents regarding a dealer's ability to transfer the dealer's data stored on the Reynolds DMS

to a competing DMS.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with

reasonable particularity to the extent it effectively seeks all documents and communications

regarding "making it difficult" for a dealer to switch from a Reynolds' DMS to a competing

DMS, regardless of whether it relates to any of the claims or defenses in the case, and without

any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. The process of switching customers from a Reynolds DMS is not relevant to the Cox and Autoloop claims against CDK, as those plaintiffs are not DMS customers and have only asserted claims against CDK. Furthermore, Cox (and all other plaintiffs) can more easily obtain information or documents concerning the process of switching from a Reynolds DMS to a Dealertrack DMS from Cox itself. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom and MVSC cases, which do not concern DMS switching. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 16:**

All documents and communications regarding "push" notifications for RCI or similar functionality provided to Reynolds' own add-on applications.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding the vague and undefined concept of "push" notifications "or similar functionality," regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. Reynolds does not understand what "push" notifications "or similar functionality" refers to, making the Request unintelligible. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant and overbroad because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom and MVSC cases, which do not concern RCI push notifications. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 17:**

All documents regarding functionality, data access, or level of data integration provided to one vendor but not offered to a competing vendor or vendors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is also duplicative of Individual Plaintiffs' Request No. 8. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding "functionality," "data access" or "level of data integration" provided to one vendor but not another, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

Autoloop. As to both Cox and Autoloop, documents and communications regarding "functionality," "data access" or "level of data integration" provided to one vendor but not another, to the extent the request extends beyond CDK, are irrelevant and overbroad because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

As to MVSC, the Request is irrelevant to the extent it requests documents unrelated to EVR.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 18:**

All documents and communications regarding any purported burden placed on a Reynolds DMS by the applications of (a) Cox Automotive or (b) AutoLoop.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding "any purported burden," of any kind, placed on a Reynolds DMS by Cox or Autoloop applications, regardless of whether it relates to any of the claims or defenses in the case, and

without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, documents and communications regarding the burdens placed on a Reynolds DMS by Cox and Autoloop applications are irrelevant and overbroad because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the MVSC and Authenticom matters, which have nothing to do with the purported burdens of Cox and Autoloop applications on a Reynolds DMS.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

**REQUEST FOR PRODUCTION NO. 19:**

All documents and communications regarding the response time for RCI interfaces from the time they are requested by a vendor until the time they are actually activated.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding the vague concept of "response time for RCI interfaces," regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, documents and communications regarding the response time for RCI interfaces are irrelevant and overbroad because the only claims asserted are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the MVSC and Authenticom matters, which have nothing to do with response time for RCI interfaces.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

**REQUEST FOR PRODUCTION NO. 20:**

All documents and communications regarding Dealertrack Registration & Titling's access to dealer data on a Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding Dealertrack Registration & Titling's access to dealer data on a Reynolds DMS, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant because those cases do not involve EVR, and the Request relates to Cox's EVR application. The Request is further irrelevant and overbroad because it seeks documents relating to Cox's EVR's application's access to data on a Reynolds DMS, but the only claims asserted by Cox and Autoloop are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which does not relate to EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's

deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 21:**

All documents and communications regarding Dealertrack Registration and Titling's participating in the RCI program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks "all" documents and communications regarding Dealertrack Registration & Titling's "participating" in RCI, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The Request is also unintelligible because Dealertrack Registration & Titling does not participate in RCI. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

Autoloop.  As to both Cox and Autoloop, the documents requested are irrelevant because those cases do not involve EVR, and the Request relates to Cox's EVR application.  The Request is further irrelevant and overbroad because it seeks documents relating to Cox's EVR's application's participation in RCI, but the only claims asserted by Cox and Autoloop are against CDK.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which does not relate to EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 22:**

All documents and communications regarding AutoLoop's application to join the RCI program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding AutoLoop's application to join the RCI program, regardless of whether it relates to any

of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant and overbroad because they relate to RCI, but the only claims asserted by Cox and Autoloop are against CDK. Furthermore, documents relating to AutoLoop's application to join RCI are in the possession of AutoLoop itself. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom and MVSC cases, which have nothing to do with AutoLoop's application to join RCI. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

**REQUEST FOR PRODUCTION NO. 23:**

All documents and communications regarding Reynolds' certification of AutoLoop's products for the RCI program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding AutoLoop's RCI certification, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to both Cox and Autoloop, the documents requested are irrelevant and overbroad because they relate to RCI, but the only claims asserted by Cox and Autoloop are against CDK. Furthermore, documents relating to AutoLoop's RCI certification are in the possession of AutoLoop itself. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom and MVSC cases, which have nothing to do with AutoLoop's RCI certification. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

**REQUEST FOR PRODUCTION NO. 24:**

All communications – and all documents regarding those communications – between Reynolds and dealers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all communications between Reynolds and dealers regarding Cox, AutoLoop or MVSC, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Furthermore, the Request is additionally overbroad, not proportional to the needs of the case, and fails to describe the items sought with reasonable particularity in that it requests not only certain categories of communications, but also "all documents regarding those communications," which expands this Request exponentially. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to Cox, Autoloop, and MVSC, the documents requested are irrelevant and overbroad because not every Reynolds communication with a dealer about Cox, AutoLoop or MVSC is relevant to each of the Cox, AutoLoop and MVSC cases. In addition, the claims brought by Cox and AutoLoop are only against CDK, and have nothing to do with MVSC or EVR. Furthermore, communications with dealers can be obtained through the dealers themselves, who have also asserted claims in this case and are separately represented and are

supposed to be coordinating with Individual Plaintiffs. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is nconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 25:**

All documents relating to the threat to Your DMS business posed by add-on applications, such as those provided by Cox Automotive.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all" documents relating to the "threat" to Reynolds DMS posed by other applications, which is undefined and unexplained, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The Request is unintelligible as Reynolds does not view applications as "threats" to Reynolds' DMS. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date

-40-

they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK, and have nothing to do with Reynolds' DMS. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom and MVSC case, neither of which have to do with a purported threat to Reynolds' DMS posed by applications. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 26:**

All documents and communications between Reynolds and OEMs or car manufacturers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 26:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications Reynolds exchanged with OEMs about Cox, AutoLoop or MVSC, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation.  Not every communication with an OEM, even as to these entities, is relevant.  OEMs are not parties to this case and there are no material allegations regarding OEMs in the complaints.  The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop.  As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop do not relate to OEMs and are only against CDK, but the Request asks for documents exchanged between OEMs and Reynolds.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is nconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom and MVSC case, neither of which have to do with OEMs.  Reynolds further objects that this Request is untimely as to

Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 27:**

All communications, and documents related to those communications, between CVR and Reynolds concerning MVSC, including but not limited to:  (1) MVSC's access to dealer data stored on the Reynolds DMS; (2) MVSC's presence and market share in California, Illinois, or any other state EVR market; (3) MVSC's expansion or potential expansion into states beyond California; (4) any competitive threat or perceived competitive threat posed by MVSC to CVR; and (5) specific dealers served by either CVR or MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all communications between Reynolds and CVR about MVSC, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation.  Not every communication between Reynolds and CVR about MVSC is relevant.  Reynolds was a part owner of CVR and therefore may have had ordinary course discussions with CVR about CVR's business and CVR's competitors, including MVSC. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the

-43-

date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. Furthermore, the Request is additionally overbroad, not proportional to the needs of the case, and fails to describe the items sought with reasonable particularity in that it requests not only certain categories of communications, but also "documents related to those communications," which expands this Request exponentially.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK, but the Request asks for communications between Reynolds and CVR. Furthermore, the Cox and AutoLoop cases have nothing to do with MVSC, CVR, or EVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is nconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC, CVR or EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 28**:

All communications, and documents related to those communications, between CDK and Reynolds concerning or relating to MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28**:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all communications between Reynolds and CDK about MVSC, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Not every communication between Reynolds and CDK about MVSC is relevant. Reynolds and CDK jointly owned CVR and therefore may have had discussions about CVR's business and CVR's competitors, including MVSC. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. Furthermore, the Request is additionally overbroad, not proportional to the needs of the case, and fails to describe the items sought with reasonable particularity in that it requests not only certain categories of communications, but also "all documents related to those communications," which expands this Request exponentially.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad

because the claims brought by Cox and AutoLoop have nothing to do with MVSC, CVR, or EVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is nconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC, CVR or EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 29:**

All documents and communications related to MVSC's attempts or applications to join Your data integration program, including but not limited to internal communications regarding whether to permit MVSC to participate in Your data integration program; internal communications regarding any competitive threat that permitting MVSC to join Your data integration program might pose to CVR; and the terms and pricing offered to MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 29:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications related to MVSC's attempts to join RCI, regardless of whether they relate to any of the claims or defenses

in the case, and without any date limitation. The limitations period applicable to Individual

Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the

earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks

documents protected from disclosure by the attorney-client privilege, the work product doctrine,

or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is

entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad

because the claims brought by Cox and AutoLoop have nothing to do with MVSC, CVR, or

EVR. Also, the documents requested are irrelevant and overbroad because the claims brought by

Cox and AutoLoop are only against CDK, but the Request asks for documents relating to

MVSC's attempts to join RCI. The Request is therefore particularly burdensome, not

proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party

discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with

MVSC, CVR or EVR. Reynolds further objects that this Request is untimely as to Authenticom,

because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the

Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as

follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer

regarding reasonable search terms to be applied to agreed upon custodian files in a good faith

effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 30:**

All documents and communications related to any other application or attempt by any EVR provider, other than MVSC, to join Your data integration program, including the terms and pricing offered to any such EVR vendor.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications related to any attempt by any EVR provider to join RCI, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with MVSC, CVR, or EVR. Also, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK, but the Request asks for documents relating to EVR providers' attempts to join RCI. The Request is therefore particularly burdensome, not

proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC, CVR or EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present. With respect to EVR providers who actually joined RCI, Reynolds will produce documents sufficient to show the RCI prices applicable to those EVR providers.

**REQUEST FOR PRODUCTION NO. 31:**

All documents and communications regarding any EVR provider currently participating in Your data integration program, including when they started participating; the pricing they pay for participation; their applications to participate in the program; Your internal considerations regarding their applications; the data elements they receive and /or have access to; and the state EVR markets in which they participate.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications "regarding any

EVR provider" participating in RCI, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with MVSC, CVR, or EVR. Also, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK, but the Request asks for documents relating to EVR providers participating in RCI. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC, CVR or EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 32:**

All communications, and documents related to those communications, between You and Your dealer customers regarding MVSC, including but not limited to communications between You and Your dealer customers concerning (1) the way in which MVSC accesses dealer data; (2) MVSC's attempts to join the RCI program and/or RCI certification status; and (3) MVSC's security and data practices.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative of Individual Plaintiffs' Request No. 24. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all communications between Reynolds and dealers regarding MVSC, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Furthermore, the Request is additionally overbroad, not proportional to the needs of the case, and fails to describe the items sought with reasonable particularity in that it requests not only certain categories of communications, but also "all documents related to those communications," which expands this Request exponentially. Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

AutoLoop.  As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with MVSC, CVR, or EVR.  Also, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK, but the Request asks for communications between Reynolds and dealers about MVSC.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC, CVR or EVR.  Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

## REQUEST FOR PRODUCTION NO. 33:

All communications and documents concerning or mentioning any MVSC executive, including but not limited to Don Armstrong, Kelly Kimball, Joseph Nemelka, and John Brueggeman.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 33:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with

reasonable particularity to the extent it effectively seeks all communications that simply mention "any MVSC executive," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Not every document mentioning these individuals is automatically going to be relevant without regard to the remaining content of the document. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with MVSC or its executives. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC or its executives. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 34:**

All communications and documents concerning any efforts by You to block or impede MVSC's access to data for a dealer using Your DMS platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 34:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all" communications and documents concerning "any effort" by Reynolds to "block or impede" MVSC's access to DMS data, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. For instance, anything other than giving away RCI for free could be interpreted as "blocking" or "impeding" access, and any technical barrier or requirement of any kind, including a simple login and password requirement, could be viewed the same way. The concepts of blocking and impeding are not defined and are vague and unclear. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are solely against CDK and have nothing to do with MVSC or Reynolds' alleged efforts to block MVSC. The Request is therefore

particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC or Reynolds' alleged efforts to block MVSC. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 35:**

All communications and documents concerning MVSC's use of independent integrators, including but not limited to Authenticom, SIS, and ProQuotes, to access data for a dealer using Your DMS platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all communications and documents concerning MVSC's use of independent data integrators to access data on a Reynolds DMS, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further

objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are solely against CDK and have nothing to do with MVSC or MVSC's use of independent integrators to access data on a Reynolds DMS. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which has nothing to do with MVSC or MVSC's use of independent integrators to access data on a Reynolds DMS. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 36:**

All communications and documents concerning the importance of having real time or bi-directional data integration in order to provide EVR services in Illinois, California, or any other state EVR market.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all communications and documents concerning "the importance of having real time or bi-directional data integration in order to provide EVR services," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document relating to integration for EVR. The Request is also vague in that it does not explain how Reynolds should identify issues concerning "importance." Furthermore, Reynolds objects to the extent that the Request assumes that certain issues have "importance." Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with EVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with EVR. Reynolds further objects that this Request is untimely as to Authenticom, because

-57-

Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

In addition, MVSC's claims only relate to the alleged Illinois and California EVR markets, and the Request is therefore overbroad and irrelevant to the extent it seeks information beyond those markets.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

## REQUEST FOR PRODUCTION NO. 37:

Documents sufficient to show CVR's market share and customer base in every state in which it operates, from 2011 to present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 37:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks documents that are duplicative or cumulative of other Requests directed at Reynolds, CDK or CVR. Also, Reynolds objects to the extent the Request seeks documents going back to 2011. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects to the extent this Request, which seeks documents "sufficient to show" CVR's market share and customer base, is seeking duplicative or cumulative documents that could be or will be obtained from CVR. In addition, MVSC's claims only relate to the alleged Illinois and California EVR markets, and the Request is therefore overbroad and irrelevant to the extent it seeks information beyond those markets.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 38:**

All documents and communications concerning CVR's customer base and market share in California and Illinois, from 2011 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 38:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents concerning CVR's "customer base and market share," regardless of whether they relate to any of the claims or defenses in the case. Reynolds objects that this is so vague and broad that it could be read to include any document relating to any issue involving a CVR customer. Also, Reynolds objects to the extent the Request seeks documents going back to 2011. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects to the extent this Request is seeking to duplicative or cumulative documents that could be obtained from CVR.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 39:**

All documents and communications concerning any market analysis or competitive analysis of the EVR markets in California and Illinois.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 39:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications concerning "any market analysis or competitive analysis" of certain EVR markets, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document or communication relating to a particular market. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad

because the claims brought by Cox and AutoLoop have nothing to do with EVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with EVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 40:**

All documents and communications concerning CVR's operational costs, revenues, profitability, and financial projections and forecasts, from 2011 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications concerning CVR's "operational costs, revenues, profitability, and financial projections and forecasts," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document or communication relating to anything having to do with CVR. Also, Reynolds

objects to the extent the Request seeks documents going back to 2011. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or its "operational costs, revenues, profitability, and financial projections and forecasts." The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or its "operational costs, revenues, profitability, and financial projections and forecasts." Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, CVR's "operational costs, revenues, profitability, and financial projections and forecasts" are not relevant. MVSC alleges conspiracy and monopolization claims against Defendants relating to integration and EVR. CVR's costs, revenues, profits, and the like has no relevance to any of the claims or defenses, and have no bearing on liability, causation or damages issues. In addition, Reynolds objects to the extent this Request is seeking to duplicative or cumulative documents that could be obtained from CVR.

To the extent this Request seeks documents in the possession, custody, or control of CVR, the Request should be directed to CVR, not Reynolds.

**REQUEST FOR PRODUCTION NO. 41:**

All documents and communications concerning deficiencies or perceived deficiencies in CVR's product and service level. For the avoidance of doubt, this Request includes not only internal documents and communications but also communications with third parties (including CVR's dealer customers) regarding deficiencies or perceived deficiencies in CVR's product and service level.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications concerning "deficiencies or perceived deficiencies in CVR's product and service level," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document or communication relating to anything having to do with CVR's products or service. The reference to "deficiencies or perceived deficiencies" is also vague and overbroad, and does not explain how to identify a deficiency or perceived deficiency or differentiate between them. It is unclear if a communication or document concerning a suggested or requested improvement would be viewed as a document concerning a deficiency or perceived deficiency. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this

Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or its "deficiencies or perceived deficiencies." The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or its "deficiencies or perceived deficiencies." Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, CVR's "deficiencies or perceived deficiencies" are not relevant. MVSC alleges conspiracy and monopolization claims against Defendants relating to integration and EVR. CVR's "deficiencies or perceived deficiencies" have no relevance to any of the claims or defenses, and have no bearing on liability, causation or damages issues. In addition, Reynolds objects to the extent this Request is seeking to duplicative or cumulative documents that could be obtained from CVR.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied

to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 42:**

All documents and communications concerning the product quality or perceived product quality of CVR's competitors, including but not limited to MVSC.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications concerning "product quality or perceived product quality of CVR's competitors," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document or communication relating to anything having to do with CVR's competitors. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or the product quality or perceived product quality of its competitors. The Request is therefore particularly

burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or the product quality or perceived product quality of its competitors. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, the Request is also irrelevant and overbroad. MVSC alleges conspiracy and monopolization claims against Defendants relating to integration and EVR. The product quality or perceived product quality of CVR's competitors other than MVSC has no relevance to any of the claims or defenses, and have no bearing on liability, causation or damages issues. In addition, Reynolds objects to the extent this Request is seeking to duplicative or cumulative documents that could be obtained from CVR.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 43:**

All documents and communications regarding any delays or backlogs by CVR in processing vehicle registrations and titles, including but not limited to any such delays or backlogs in California.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is also duplicative and cumulative of Individual Plaintiffs' Request No. 41 above. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications concerning any "delays" or "backlogs," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document or communication relating to anything having to do with CVR's processing of vehicle registrations and titles. The reference to "delays or backlogs" is vague and overbroad, and does not explain how to identify a delay or backlog or differentiate between them. Every time CVR processes vehicle registrations and titles, the process takes time – the Request does not explain the point at which a "delay" or "backlog" arises. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or its "delays" or "backlogs." The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or its "delays" or "backlogs." Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, CVR's "delays" or "backlogs" are not relevant. MVSC alleges conspiracy and monopolization claims against Defendants relating to integration and EVR. CVR's "delays" or "backlogs" have no relevance to any of the claims or defenses, and have no bearing on liability, causation or damages issues. In addition, Reynolds objects to the extent this Request is seeking to duplicative or cumulative documents that could be obtained from CVR. Furthermore, MVSC's claims only relate to California and Illinois, and Reynolds objects to the extent the Request seeks information beyond those states.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 44:**

All documents and communications concerning any advantage or perceived advantage CVR has over its competitors because of CVR's ability to access dealer data stored on the CDK and Reynolds DMSs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with

reasonable particularity to the extent it seeks all documents and communications concerning any "advantage or perceived advantage" relating to CVR's access to data a Reynolds DMS or CDK DMS, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document or communication relating to or referencing the simple fact of CVR's access to data on a Reynolds DMS or CDK DMS. The reference to "advantage or perceived advantage" is also vague and overbroad, and does not explain how to identify an advantage or perceived advantage or differentiate between them. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or its "advantage or perceived advantage" relating to access to data on Reynolds DMS or CDK DMS. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or its "advantage or perceived advantage" relating to access to data on Reynolds DMS or CDK DMS. Reynolds further objects that this Request is untimely as to Authenticom,

because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, MVSC's claims only relate to California and Illinois, and Reynolds objects to the extent the Request seeks information beyond those states.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 45:**

Documents sufficient to show CVR's ownership structure, including documents sufficient to show how CVR's revenues and profits are divided between CDK and Reynolds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Reynolds objects that this Request seeks documents irrelevant to the Authenticom, Cox and Autoloop matters. Reynolds objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or its ownership structure or how its revenues or profits are divided between CDK and Reynolds. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or its ownership structure or how its revenues or profits are divided between CDK and Reynolds. Reynolds further objects that this Request is untimely as to Authenticom, because

-71-

Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects to the extent this Request is seeking duplicative or cumulative documents that could be obtained from CVR or CDK or that have already been produced by Reynolds.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 46:**

All documents and communications relating to Reynolds' ownership interest in CVR, including when that interest was acquired; why Reynolds acquired that interest; from whom Reynolds acquired that interest; how much Reynolds paid for that ownership interest; and what Reynolds' rights are with respect to its ownership interest.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 46:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications concerning Reynolds' ownership in CVR, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that this is so vague and broad that it could be read to include any document or communication relating to anything having to do with CVR's management or operations, and not just the details of Reynolds's ownership stake.

Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or its Reynolds' ownership of CVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or its Reynolds' ownership of CVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects to the extent this Request is seeking duplicative or cumulative documents that could be obtained from CVR or that have already been produced by Reynolds. In particular, Reynolds has already produced the executed agreements and related documents relating to the formation of CVR.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive documents relevant to Reynolds' ownership stake in CVR, as opposed to the management or operations of CVR, from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 47:**

All documents and communications relating to the financial benefits received by Reynolds and CDK relating to their ownership interest in CVR, including any allocated profits or other financial benefit, from 2011 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 47:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications relating to "financial benefits" that Reynolds or CDK received from CVR, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Also, Reynolds objects to the extent the Request seeks documents going back to 2011. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with "financial benefits" that Reynolds or CDK received from CVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with "financial benefits" that Reynolds or CDK received from CVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects to the extent this Request is seeking to duplicative or cumulative documents that could be obtained from CVR or CDK or that are requested by other requests herein, including Request Nos. 45 and 46, or materials that have already been produced. The Request is also not relevant. MVSC alleges conspiracy and monopolization claims against Defendants relating to integration and EVR. The "financial benefits" that Reynolds or CDK received from CVR have no relevance to any of the claims or defenses, and have no bearing on liability, causation or damages issues.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 48:**

The operative CVR ownership agreement between CDK and Reynolds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 48:**

This document has already been produced by Reynolds. See REYMDL134010-REYMDL134365.

**REQUEST FOR PRODUCTION NO. 49:**

All iterations of CVR's organizational chart from 2011 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 49:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all "iterations" of CVR's organizational chart, which may include drafts that may not reflect an organizational structure that was ever actually implemented. Also, Reynolds objects to the extent the Request seeks documents going back to 2011. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR or its organization. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR or its organization. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer

-76-

—

regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 50:**

All documents concerning CDK's involvement in the operation of CVR, including but not limited to CDK's involvement in CVR's management, budget and capital investments, hiring, firing, personnel decisions, salary and bonus allotments, strategic priorities, sales and marketing efforts, and other daily business activities.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 50:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents concerning CDK's "involvement in the operation" of CVR, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that Reynolds is not CDK or CVR and this Request appears to be aimed at CDK and/or CVR documents, not Reynolds documents. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with "CDK's

"involvement in the operation" of CVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CDK's "involvement in the operation" of CVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects to the extent this Request is seeking to duplicative or cumulative documents that could be obtained from CVR or CDK.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 51:**

All documents and communications between anyone at CVR, on the one hand, and anyone at Reynolds, on the other.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all communications between CVR and Reynolds, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds is a part owner of CVR and as a result it communicates with CVR for

reasons having nothing to do with the allegations in any complaint in this case. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK and have nothing to do with communications between Reynolds and CVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with communications between Reynolds and CVR. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects that this Request is extremely overbroad and seeks irrelevant material, as already noted above.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 52:**

All communications between CDK and Reynolds regarding CVR.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all communications between CDK and Reynolds regarding CVR, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds and CDK are joint owners of CVR and as a result they communicate about CVR for reasons having nothing to do with the allegations in any complaint in this case. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop have nothing to do with CVR. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR. Reynolds further objects that this Request is untimely as to Authenticom, because

Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's

March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects that this Request is extremely overbroad and

seeks irrelevant material, as already noted above.

Subject to and without waiving these or its General Objections, Reynolds responds as

follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer

regarding reasonable search terms to be applied to agreed upon custodian files in a good faith

effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 53:**

All documents and communications relating to CVR's acquisition of AVRS, including

the strategic and financial considerations in CVR's acquisition of AVRS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with

reasonable particularity to the extent it seeks all documents or communications relating to the

CVR acquisition of AVRS, regardless of whether they relate to any of the claims or defenses in

the case, and without any date limitation. CVR's acquisition of AVRS is not a violation of any

law or is it alleged to violate any law, nor has any Individual Plaintiff alleged that Reynolds

engaged in any unlawful conduct in connection with this acquisition. Reynolds further objects

that this Request appears to be aimed at CVR documents, not Reynolds documents. Also, the

limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date

they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to

this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK and have nothing to do with CVR's acquisition of AVRS. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR's acquisition of AVRS. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects that this Request is seeks irrelevant material, as already noted above, and is a request that appears to be directed at CVR documents, not Reynolds documents.

To the extent this Request seeks documents in the possession, custody, or control of CVR, the Request should be directed to CVR, not Reynolds.

**REQUEST FOR PRODUCTION NO. 54:**

All documents and communications regarding instances in which CVR or AVRS uses or used independent integrators for access to dealer data on the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds further objects that this Request appears to be aimed at CVR documents, not Reynolds documents. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK and have nothing to do with how CVR accessed a Reynolds DMS. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with how CVR accessed a Reynolds DMS. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects that this Request seeks irrelevant material, because whether CVR used independent integrators to access a Reynolds DMS makes no difference to MVSC claims of conspiracy or monopolization or whether MVSC was harmed by

that alleged conduct.  In addition, it is a request that appears to be directed at CVR documents, not Reynolds documents.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 55:**

All documents and communications regarding any instance in which an add-on application owned (or partly owned) by CDK or Reynolds uses or used independent integrators for access to dealer data on a DMS platform, whether CDK's, Reynolds', or any other DMS platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 55:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents or communications relating to the "use[]" of independent integrators for access to data on a DMS, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation.  There is no claim or defense in this case that turns on whether an application owned or partially owned by CDK or Reynolds used an independent integrator to access dealer data on a DMS platform.  CDK and Reynolds are each free to make whatever unilateral business decisions they want in this regard and no complaint claims otherwise.  Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the

-84-

earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks

documents protected from disclosure by the attorney-client privilege, the work product doctrine,

or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is

entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad

because the claims brought by Cox and AutoLoop are only against CDK. Reynolds' business

decisions regarding use of independent integrators is not at issue. The Request is therefore

particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is

inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case for reasons already described

above. Reynolds further objects that this Request is untimely as to Authenticom, because

Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's

March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects that this Request is duplicative and cumulative

of Request No. 54 above. To the extent that this Request seeks documents beyond those sought

in Request No. 54, it is overbroad and irrelevant, as the MVSC case only relates to EVR

applications.

Subject to and without waiving these or its General Objections, Reynolds responds as

follows: See Request No. 54 and corresponding response.

**REQUEST FOR PRODUCTION NO. 56:**

All documents relating to CVR's Board of Directors or any equivalent governing body

for CVR. This Request has no date limitation. This Request includes, but is not limited to:

a.     All documents relating to the composition of CVR's Board of Directors;

b.     Identification of every member of CVR's Board of Directors through time;

c.     All materials presented to CVR's Board of Directors;

d.     All materials considered by CVR's Board of Directors;

e.     All minutes of meetings of CVR's Board of Directors; and

f.     All communications between or among CVR's Board of Directors.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 56:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents or communications "relating to CVR's Board of Directors" or "any equivalent governing body," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation.  CVR's Board of Directors discusses and considers a variety of issues, many of which have nothing to do with the claims and defenses in this case.  The Request is also vague as to what "any equivalent governing body" means.  CVR has a Board of Directors.  Reynolds further objects that this Request appears to be aimed at CVR documents, not Reynolds documents.  Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK and have nothing to do with CVR's Board of Directors. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also irrelevant as to the Authenticom case, which also has nothing to do with CVR's Board of Directors. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects that this Request is seeks overbroad and irrelevant material, as already noted above, and is a request that appears to be directed at CVR documents, not Reynolds documents.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 57:**

All communications between You and any customer or former customer of Authenticom regarding data integration services or data access, including Team Velocity, Automotive Masterminds, or any other vendor customer of Authenticom.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 57:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not

relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all communications with "any customer or former customer" of Authenticom concerning integration or data access, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds has communicated with hundreds of vendors over the years in connection with hundreds of applications and issues relating to RCI and on numerous other topics that may generally relate to integration or data access but have nothing to do with the claims or defenses in this case. For instance, the Request, as phrased, would capture any communications between Reynolds and its RCI customers who are former Authenticom customers, and Reynolds objects that this is grossly overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the case. In addition, the Request provides no way for Reynolds to determine who is a customer or former customer of Authenticom. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons described above and also because the claims brought by Cox and AutoLoop are only against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the Authenticom case, for reasons described above. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the MVSC case, Reynolds objects that this Request is seeks overbroad and irrelevant material, for the reasons described above, and also because the only applications relevant to the MVSC case are EVR applications.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached. Specifically, if Authenticom is willing to provide a list of its current or former customers, and the time periods when they were customers of Authenticom, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present that reference Authenticom or Steve Cottrell.

**REQUEST FOR PRODUCTION NO. 58:**

All communications between You and any dealer customer or former dealer customer of Authenticom regarding data integration services or data access.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 58:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is duplicative of Individual Plaintiffs' Request No. 57 above. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the

extent it seeks all communications with "any dealer customer or former dealer customer" of Authenticom concerning integration or data access, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Reynolds has communicated with hundreds of dealers over the years in connection with issues relating to DMS and on numerous other topics that may generally relate to integration or data access but have nothing to do with the claims or defenses in this case. For instance, the Request, as phrased, would capture any communications between Reynolds and its DMS customers who are former Authenticom customers, and Reynolds objects that this is grossly overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the case. In addition, the Request provides no way for Reynolds to determine who is a customer or former customer of Authenticom. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons described above and also because the claims brought by Cox and AutoLoop are only against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

The Request is also overbroad, unduly burdensome, irrelevant, and not proportional to the needs of the Authenticom or MVSC cases, for reasons described above. Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue

written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and

hearing comments.

Subject to and without waiving these or its General Objections, Reynolds is willing to

meet and confer to explore whether a mutually acceptable compromise can be reached.

Specifically, if Authenticom is willing to provide a list of its current or former customers, and the

time periods when they were customers of Authenticom, Reynolds is willing to meet and confer

regarding reasonable search terms to be applied to agreed upon custodian files in a good faith

effort to capture responsive and relevant documents from January 1, 2013 to the present that

reference Authenticom or Steve Cottrell.

## REQUEST FOR PRODUCTION NO. 59:

All documents concerning Your evaluation of the market for data access / integration

services, including what companies compete with You for provision of data access / data

integration services.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 59:

Reynolds objects to this Request on the grounds that it is overly broad, unduly

burdensome, and not proportional to the needs of the case.  It also seeks premature expert

discovery on market definition issues.  It also seeks information that is not relevant to the claims

or defenses in this case and fails to describe the items sought with reasonable particularity to the

extent it seeks all documents concerning Reynolds' "evaluation" of "the market for data access /

integration services," without any date limitation.  The Request is vague as to what qualifies as

an "evaluation," how the "market" is defined, and what is meant by "data access / data

integration services."   Also, the limitations period applicable to Individual Plaintiffs' claims is,

at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed

-91-

(MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: In light of the partial relevance of this Request, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 60:**

All documents concerning Your cost of capital, cost of equity, cost of debt, and/or weighted average cost of capital, including any documents upon which any of the foregoing are based.

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 60</u>:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks premature expert discovery and expert financial analysis. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all" documents concerning Reynolds' "cost of capital," "cost of equity," "weighted average cost of capital," and "documents upon which any of the foregoing are based," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. None of these topics are relevant to any claim or defense in any Individual Plaintiff case. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

**REQUEST FOR PRODUCTION NO. 61:**

All documents concerning the economic value of data or data access to dealers, vendors, or DMS providers, including any economic value placed by You on Your ability to deny, restrict, or in any way control access to data on your DMS platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 61:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks premature expert discovery. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all" documents concerning "economic value of data or data access," regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. As phrased, this would potentially encompass any document having anything to do with DMS or integration, and any document having anything to do with DMS or integration pricing. Also, the value of data, as opposed to data access, is not an issue that is relevant to any of the Individual Plaintiff cases. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

-94-

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above. In addition, the MVSC case only relates to data access by EVR providers, and the Request is irrelevant and overbroad to the extent it seeks information unrelated to data access by EVR providers.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 62:**

All communications between CDK and any potential acquirer or acquirers, including The Carlyle Group, Silver Lake, Vista Equity Partners, Bain Capital, Thoma Bravo, and Advent International (or any person acting on behalf of the foregoing), regarding the valuation of CDK, its subsidiaries, or any aspect of their business.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 62:**

This Request appears to have been mistakenly directed at Reynolds and obviously requests CDK documents as opposed to Reynolds documents. The Request also does not seek documents relevant to any claim against Reynolds. Reynolds reserves all rights and objections in connection with this Request, including all General Objections noted above.

**REQUEST FOR PRODUCTION NO. 63:**

All documents regarding CDK's Fortellis Automotive Exchange, including all communications with dealers (including AutoNation, Lithia, Berkshire Automotive, Group One, and the Larry Miller Group) and vendors; historical data or projections regarding the costs of research and development, pricing, subscriptions, revenues, and profits.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 63:**

This Request appears to have been mistakenly directed at Reynolds and obviously requests CDK documents as opposed to Reynolds documents. The Request also does not seek documents relevant to any claim against Reynolds. Reynolds reserves all rights and objections in connection with this Request, including all General Objections noted above.

**REQUEST FOR PRODUCTION NO. 64:**

All projections, forecasts, or other financial analyses regarding CDK's 3PA, OEM DCS, and/or DMI data services programs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 64:**

This Request appears to have been mistakenly directed at Reynolds and obviously requests CDK documents as opposed to Reynolds documents. The Request also does not seek documents relevant to any claim against Reynolds. Reynolds reserves all rights and objections in connection with this Request, including all General Objections noted above.

**REQUEST FOR PRODUCTION NO. 65:**

All documents concerning the following conferences and/or meetings from 2009 to the present:  the National Automobile Dealers Association Show; the Digital Dealer Conference & Expo; or any other industry conference.  For the avoidance of doubt, this request includes all documents concerning:  the identity of any of Your employees that attended the conference and/or meeting; any booth or other exhibition space obtained by You; and the exhibitor list and/or floor plan for any such show.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 65:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents concerning "conferences," "meetings" or "any . . . industry conference," regardless of whether they relate to any of the claims or defenses in the case.  Reynolds' attendance or participation in industry conferences is not relevant to any claims or defenses in the Individual Plaintiff cases.  The specific examples referenced in the Request, including "exhibition space" or "floor plan" documents, are also irrelevant and do not tend to prove or disprove any material issue in any case.  Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad because the claims brought by Cox and AutoLoop are only against CDK, and do not concern Reynolds' attendance at industry conference. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 66:**

All telephone records – whether landline or cell phone – reflecting calls made or received by any Reynolds employee and any employee of CDK from 2014 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 66:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and harassing. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all "telephone records" involving any Reynolds or CDK employee. Thousands of employees are encompassed by this Request, and the requested phone records are not relevant to any claims or defenses in the Individual Plaintiff cases. A phone record provides no information about what was discussed, if anything, on a

particular phone call, and does not even necessarily provide enough information to determine who participated in the phone conversation. As such, phone records have no relevance or usefulness in this case. On the other hand, the burden of pulling thousands of phone records for thousands of employees is substantial. The Request, as phrased, is not limited to calls between Reynolds and CDK, but even if it were, it would still be objectionable. The fact of communications between CDK and Reynolds employees is not in dispute. Reynolds objects to undertaking the significant burden of pulling and producing phone records to aid in establishing something that is not in dispute (which a phone record does not even necessarily establish). Reynolds also objects to the extent that this Request purports to require Reynolds to pore over potentially millions of individual entries in all of the phone records for all of its employees, and attempt to determine whether each phone call reflected in each phone record represents a call between Reynolds and CDK.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and do not concern Reynolds' phone records. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

-99-

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

**REQUEST FOR PRODUCTION NO. 67:**

All telephone records – whether landline or cell phone – for Your document custodians from 2014 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 67:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and harassing. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all "telephone records" involving any certain Reynolds employees. The requested phone records are not relevant to any claims or defenses in the Individual Plaintiff cases. A phone record provides no information about what was discussed, if anything, on a particular phone call, and does not even necessarily provide enough information to determine who participated in the phone conversation. As such, phone records have no relevance or usefulness in this case. The Request, as phrased, is not limited to calls between Reynolds and CDK, but even if it were, it would still be objectionable. The fact of communications between CDK and Reynolds employees is not in dispute. Reynolds objects to undertaking the burden of pulling and producing phone records to aid in establishing something that is not in dispute (which a phone record does not even necessarily establish).

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only

-100-

against CDK, and do not concern Reynolds' phone records. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

**REQUEST FOR PRODUCTION NO. 68:**

All documents concerning any training provided by You to Your employees regarding antitrust or competition laws.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 68:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all" documents concerning antitrust training, regardless of whether they relate to any of the claims or defenses in the case. General antitrust training or compliance programs are not at issue in this case. Antitrust is a broad field of law that encompasses many issues not at issue in this case. The details of a general antitrust training program have no bearing on any claims or defenses in this case. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Moreover, antitrust law has changed over time and old antitrust training documents are particularly irrelevant.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons state above and because the claims brought by Cox and AutoLoop are only against CDK, and do not concern Reynolds' antitrust training. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Reynolds further objects to this Request because it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege. Reynolds objects that it would not have any antitrust training documents from January 1, 2013 to the present that are not privileged from disclosure by the attorney-client privilege or the attorney work product doctrine. Even if it did, it would not be proportional to the needs of the case to undertake the burden of sifting through all of the privileged material and creating a privilege log in the hopes that Reynolds might find a non-privileged document responsive to this Request.

**REQUEST FOR PRODUCTION NO. 69:**

All documents concerning CDK's Secure the DMS initiative.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 69:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents or communications relating to the CDK's Secure the DMS initiative, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. CDK's Secure the DMS initiative is not a violation of any law or is it alleged to violate any law, nor has any Individual Plaintiff alleged that Reynolds engaged in any unlawful conduct in connection with CDK's Secure the DMS initiative. Reynolds further objects that this Request appears to be aimed at CDK documents, not Reynolds documents. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 70:**

All Secure the DMS Dashboard Reports (*see*, *e.g*., CDK-0841086, at 87), including all data used to prepare such reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 70:**

This Request appears to have been mistakenly directed at Reynolds and obviously requests CDK documents as opposed to Reynolds documents. The Request also does not seek documents relevant to any claim against Reynolds. Reynolds reserves all rights and objections in connection with this Request, including all General Objections noted above.

**REQUEST FOR PRODUCTION NO. 71:**

All documents regarding access by ReverseRisk to CDK's DMS platform.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 71:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with

reasonable particularity to the extent it seeks all documents regarding access by ReverseRisk to a CDK DMS, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. Access by this one application to a CDK DMS makes no difference to the claims or defenses in the case. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above. Furthermore, ReverseRisk is not an EVR application, and is therefore irrelevant to the MVSC case, where the only relevant applications are EVR applications.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds directs Individual Plaintiffs to the following documents, which concern the

terms of access by ReverseRisk to CDK's DMS platform: REYMDL00017989-90; REYMDL00017979-88; REYMDL00017975-78.

**REQUEST FOR PRODUCTION NO. 72:**

All documents concerning "hostile integration" or use of non-authorized usernames or passwords to extract data from the CDK or Reynolds platforms.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 72:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents," without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the only claims asserted by Cox and Autoloop are against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

## REQUEST FOR PRODUCTION NO. 73:

Documents sufficient to show Reynolds' revenue, profit (including profit margins), and costs for providing data integration services, on a monthly basis, from January 1, 2009 to the present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 73:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents concerning Reynolds' "profit," "profit margins" or "costs," regardless of whether they relate to any of the claims or defenses in the case. The Request also provides no detail regarding what is meant by profit or cost or how those should be calculated or determined. Reynolds objects to the extent this Request seeks to compel Reynolds to create documents that do not exist in the ordinary course; for instance, Reynolds does not fully allocate its costs and therefore does not have documents sufficient to show the requested information. Also, profit and cost information is not relevant to any claim or defense in any Individual Plaintiff case. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims

is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds also objects to the extent that this Request is duplicative and cumulative of other Requests, and/or seeks to end run or undo agreements that have already been reached. Specifically, Reynolds and Authenticom previously reached agreement on the production of certain RCI revenue information for the period 2013-2017, and Reynolds ultimately produced certain RCI revenue information for the period 2011-2017.  *See* December 1, 2017 letter from Brian Ross.  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop.  As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

**REQUEST FOR PRODUCTION NO. 74:**

Documents sufficient to show transactional sales data (including sales, profit, and cost data) on a per-customer and per-transaction basis for data integration services from January 1, 2009 to the present. For the avoidance of doubt, this request includes, without limitation, the following data linked to each data integration service transaction:

a. Date and location of transaction;

b. Data integration service customer;

c. Specific data integration service purchased;

d. Information tied to the specific data integration service purchased, including the unit price, unit cost, quantity, and applicable discounts;

e. Reynolds salesperson and applicable commission;

f. Order number and other identifying order information; and

g. Any documents necessary to interpret the contents of these data fields, including abbreviation keys and explanations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 74:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case. Reynolds objects to the extent this Request seeks to compel Reynolds to create documents that do not exist in the ordinary course. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds also objects to the extent that this Request is duplicative and cumulative of other Requests, and/or seeks to end run or undo

agreements that have already been reached. Specifically, Reynolds and Authenticom previously reached agreement on the production of RCI pricing information, and pursuant to that agreement, Reynolds ultimately produced certain RCI pricing information bates numbered REYMDL0037507. REYMDL0037507 shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. It contains information from regarding per-vendor certification fees (one-time fees), per-rooftop installation fees (one-time fees), per-rooftop integration fees (monthly fees), and transactional fees (per transaction fees).

Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

**REQUEST FOR PRODUCTION NO. 75:**

All reports and analyses pertaining to Reynolds' marketing and sales of data integration services from January 1, 2009 to the present.  For the avoidance of doubt, this request includes, without limitation:

      a.      Sales reports;

      b.      Sales representative performance reports;

      c.      Marketing plans;

      d.      Marketing reports, including sales promotions and discounts;

      e.      Strategic plans, including pricing strategy;

      f.      Cost accounting reports;

      g.      General ledger reports;

      h.      Charts of accounts;

      i.      Analyses of competitive position, including market share;

      j.      Profit and loss reports.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 75:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, and seeks information that is cumulative and duplicative of other Requests from the Individual Plaintiffs and/or Authenticom.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all reports and analyses pertaining to Reynolds' marketing and sales of data integration, regardless of whether they relate to any of the claims or defenses in the case.  Reynolds also objects to the extent that the categories of documents (a) through (j) are not reports or analyses of Reynolds' marketing

and sales of RCI. Reynolds also objects to searching for or collecting documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above. The requested materials are additionally irrelevant as to MVSC to the extent they seek information unrelated to EVR.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 76:**

Documents sufficient to show Reynolds' projections with respect to costs for providing data integration services from January 1, 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 76:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is also duplicative or cumulative of other requests, including Individual Plaintiffs' Request No. 77 below. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "projections with respect to costs." Cost projections are not relevant to any claim or defense in this case. The Request also provides no detail regarding what is meant by "cost" or how it should be determined. Reynolds does not fully allocate its costs and therefore does not have documents sufficient to show the requested information. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference

in those cases.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

## REQUEST FOR PRODUCTION NO. 77:

All documents and communications concerning Reynolds' projections with respect to its data integration services from January 1, 2009 to the present.  For the avoidance of doubt, this request includes, without limitation, documents and communications relating to estimates, forecasts, and budgets for revenue, profit, and costs associated with Reynolds' provision of data integration services.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 77:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It is also duplicative or cumulative of other requests, including Individual Plaintiffs' Request No. 76 above.  It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications concerning "projections," regardless of whether they relate to any of the claims or defenses in the case. Not every projection of every kind or every document related to every projection is relevant to the

claims and defenses in this case. Revenue, profit and cost projections specifically mentioned in the Request are not relevant to any claim or defense in this case. Reynolds objects to the extent this Request seeks to compel Reynolds to create documents that do not exist in the ordinary course. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied

-115-

to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 78:**

All documents and communications concerning Reynolds' internal valuations of its data integration service business, separate and apart from its DMS business, from January 1, 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 78:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents and communications" concerning "internal valuations" of Reynolds' "data integration service business." Neither "internal valuations" nor Reynolds' "data integration service business" are defined, and Reynolds objects to both as vague. To the extent this Request is referring to Reynolds' RCI business, whether or how Reynolds valued its RCI business makes no difference to the claims and defenses in this case. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for

the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 79:**

All documents and communications concerning Reynolds' internal valuations of its DMS business, separate and apart from its data integration services, from January 1, 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 79:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks "all documents and communications" concerning "internal valuations." Neither "internal valuations" nor Reynolds' "data integration services" are defined, and Reynolds objects to both as vague. Whether or how Reynolds valued its DMS business makes no difference to the claims and defenses in this case. Reynolds also objects to

the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds that it is not aware of any responsive documents.

**REQUEST FOR PRODUCTION NO. 80:**

All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to data integration services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 80:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks not only all industry publications or reports but all documents and communications "concerning" those publications or reports, regardless of whether they relate to any of the claims or defenses in the case. The Request also does not explain what constitutes an industry publication or report or identify them by title. Not every such publication or report or every document concerning such documents will be relevant to the claims or defenses in the case. Furthermore, industry publications or reports published by third parties are equally available to Plaintiff from those third parties. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 81:**

All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to data integration services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 81:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks not only all industry publications or reports but all documents and communications "concerning" those publications or reports, regardless of whether they relate to any of the claims or defenses in the case. The Request also does not explain what constitutes an industry publication or report or identify them by title. Not every such publication or report or every document concerning such documents will be relevant to the claims or defenses in the case. Furthermore, industry publications or reports published by third parties are equally available to Plaintiff from those third parties. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3,

2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 82:**

All documents and communications Reynolds relied upon from January 1, 2009 to the present in creating projections, estimates, forecasts, and budgets for revenue, profit, and costs associated with Reynolds' provision of data integration services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 82:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It is also duplicative or cumulative of

other requests, including Individual Plaintiffs' Request No. 77 above. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications "relied upon" to create a variety of projections, estimates, forecasts, and budgets since 2009. Responding to this Request would require identifying and collecting each and every projection, estimate, forecast, and budget for revenue, profit, and costs associated with Reynolds' provision of data integration services since 2009, a nearly ten year period, and then, for each such document, determining all documents that were "relied upon" to create those documents. This likely requires identifying each author of each document and then interviewing all of them to ascertain what materials they relied on. This burden is grossly out of proportion to the needs of the case and is a task that cannot be reasonably completed under the Court ordered schedule for this case. Furthermore, projections, estimates, forecasts, and budgets for revenue, profit, and costs associated with Reynolds' provision of data integration services are not even relevant to the claims or defenses in this case. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only

against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

**REQUEST FOR PRODUCTION NO. 83:**

Documents sufficient to show the number of connections Reynolds has established between a vendor and a dealer's data for purposes of transmitting dealer data to the vendor, broken down by customer, specific service, and date, from January 1, 2009 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 83:**

Reynolds objects to this Request on the grounds that it is irrelevant, vague, unintelligible, overly broad and fails to describe the items sought with reasonable particularity. Specifically, Reynolds does not understand what is meant by "number of connections." Reynolds does not track or calculate its "number of connections" and objects to the request to the extent it requires Reynolds to create documents that do not exist in the ordinary course.

Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop. As to Cox and AutoLoop, the request is unintelligible, irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

Subject to and without waiving these or its General Objections, Reynolds responds that as it understands this Request, it does not have documents sufficient to show the requested information.

**REQUEST FOR PRODUCTION NO. 84:**

Reynolds' "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers that Reynolds has lost every year since January 1, 2009, including the reasons the customer switched from a Reynolds data integration service to a non-Reynolds data integration service and the identity of the data integration service to whom the customer switched.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 84:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  Reynolds objects to the extent this Request seeks to compel Reynolds to create documents that do not exist in the ordinary course; for instance, Reynolds does not track in a systematic fashion all of its RCI customer losses and the reasons for those losses.  Reynolds does not have "win/loss" report for RCI.  Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds also objects that Authenticom should have documents in its possession, custody or control relating to RCI customers who left RCI for Authenticom.  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and AutoLoop.  As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above. In addition, as to MVSC, the requested documents are irrelevant to the extent they are unrelated to EVR.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds refers Individual Plaintiffs to RCI data previously produced and bates numbered REYMDL0037507 which shows the prices paid by vendors participating in Reynolds's RCI program from 2010 to 2017. Using this information, Individual Plaintiffs can deduce when RCI customers joined or left RCI between 2010 and 2017. With respect to the reasons why RCI customers left RCI, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 85:**

Reynolds' "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers that Reynolds has won every year since January 1, 2009, including the reasons the customer switched to a Reynolds data integration service and the identity of the data integration service from whom the customer switched.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 85:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. Reynolds objects to the extent this Request seeks to compel Reynolds to create documents that do not exist in the ordinary course; for instance, Reynolds does not track in a systematic fashion all of its RCI customer wins and the reasons for those wins. Reynolds does not have "win/loss" report for RCI. Reynolds also objects to the extent this Request seeks documents going back to 2009; the limitations period

applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit –
February 3, 2013 for the earliest case filed (MVSC). Reynolds also objects that Authenticom
should have documents in its possession, custody or control relating to RCI customers who left
Authenticom for RCI. Reynolds further objects to this Request to the extent it seeks documents
protected from disclosure by the attorney-client privilege, the work product doctrine, or other
applicable privilege.

Reynolds additionally objects that as a third party to the Cox and AutoLoop matters, it is
entitled to greater protection from burdensome or irrelevant discovery requests from Cox and
AutoLoop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for
the reasons stated above and also because the claims brought by Cox and AutoLoop are only
against CDK, and understanding the requested information as to Reynolds makes no difference
in those cases. The Request is therefore particularly burdensome, not proportional to the needs
of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because
Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's
March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other
grounds as stated above. In addition, as to MVSC, the requested documents are irrelevant to the
extent they are unrelated to EVR.

Subject to and without waiving these or its General Objections, Reynolds responds as
follows: Reynolds refers Individual Plaintiffs to RCI data previously produced and bates
numbered REYMDL0037507 which shows the prices paid by vendors participating in
Reynolds's RCI program from 2010 to 2017. Using this information, Individual Plaintiffs can

deduce when RCI customers joined or left RCI between 2010 and 2017. With respect to the reasons why RCI customers joined RCI, Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present. Reynolds also refers Individual Plaintiffs to Reynolds' Response to Authenticom's Interrogatory No. 1.

**REQUEST FOR PRODUCTION NO. 86:**

All documents and communications regarding the length of time to complete a request to receive data from or send data to a Reynolds DMS through the RCI program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 86:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications "regarding" the "length of time to compete a request" to send or receive data to a Reynolds DMS through RCI, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. Reynolds objects that documents concerning each and every transmission of data to or from a Reynolds DMS through RCI are potentially responsive. Reynolds objects to the extent this Request seeks to compel Reynolds to create documents that are not maintained in the ordinary course. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above. In addition, as to MVSC, the requested documents are irrelevant to the extent they are unrelated to EVR.

Subject to and without waiving these or its General Objections, Reynolds is willing to meet and confer to explore whether a mutually acceptable compromise can be reached.

**REQUEST FOR PRODUCTION NO. 87:**

All documents and communications regarding making "push" functionality available for the RCI program.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 87:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications

regarding the "push" functionality which is not defined or described, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The Request is unintelligible in that Reynolds does not understand what is meant by "push' functionality. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above. In addition, as to MVSC, the requested documents are irrelevant to the extent they are unrelated to EVR.

Subject to and without waiving these or its General Objections, Reynolds responds that it is willing to meet and confer about this Request.

**REQUEST FOR PRODUCTION NO. 88**:

All documents and communications regarding how frequently vendors are allowed to pull, poll, or transfer data from the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 88**:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications "regarding" how frequently vendors are allowed to pull, poll, or transfer data from a Reynolds DMS, regardless of whether it relates to any of the claims or defenses in the case, and without any date limitation. The limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above. In addition, as to MVSC, the requested documents are irrelevant to the extent they are unrelated to EVR.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant documents from January 1, 2013 to the present.

**REQUEST FOR PRODUCTION NO. 89:**

All documents and communications regarding how Reynolds determined what kinds of data, information, or technical specifications to require vendors to provide as part of the RCI certification process, including "workflow" models, live demonstrations of the add-on applications, justifications for how add-on applications use each data element, and the add-on application's security features.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 89:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it effectively seeks all documents and communications regarding "how Reynolds determined" what kind of information to request from vendors, regardless of whether it relates to any of the claims or defenses in the case, and without any date

limitation.  One typically requests information that is not already known, and Reynolds cannot produce documents to show an absence of knowledge.  Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC).  Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop.  As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.  In addition, as to MVSC, the requested documents are irrelevant to the extent they are unrelated to EVR.  As to Authenticom, the Request has no relevance at all.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  Reynolds is willing to meet and confer regarding reasonable search terms to be applied to agreed upon custodian files in a good faith effort to capture responsive and relevant

-133-

documents from January 1, 2013 to the present showing that Reynolds' requests for information from vendors were not pretextual.

**REQUEST FOR PRODUCTION NO. 90:**

All documents and communications regarding any Reynolds policies or guidelines designed to prevent competitively sensitive information submitted by vendors seeking RCI certification from being shared with Reynolds' sales teams, add-on application development teams, or any other components of Reynolds other than those with direct responsibility for engineering the integration of the vendors' add-on applications with the Reynolds DMS.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 90:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case. It also seeks information that is not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it not only seeks policies or guidelines, but all documents and communications "regarding" those policies or guidelines, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. None of the Individual Plaintiffs have asserted any claims against Reynolds based on alleged misuse of confidential vendor information that would make this Request relevant. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and

Autoloop.  As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases.  The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

## REQUEST FOR PRODUCTION NO. 91:

All documents and communications regarding information, data, or technical specifications shared by vendors with Reynolds as part of the RCI certification process used by Reynolds for any purpose other than engineering the integration of the vendors' add-on applications with the Reynolds DMS, including, for example, development of applications by Reynolds.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 91:

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  It is also duplicative and cumulative of Request No. 90 above. It also seeks documents that are not relevant to the claims or defenses in this case and fails to describe the items sought with reasonable particularity to the extent it seeks all documents and communications regarding any information provided by a vendor in connection with "the RCI certification process" and used by Reynolds for any purpose other than

-135-

"engineering the integration" for that vendor, neither of which is defined, regardless of whether they relate to any of the claims or defenses in the case, and without any date limitation. None of the Individual Plaintiffs have asserted any claims against Reynolds based on alleged misuse of confidential vendor information that would make this Request relevant. Also, the limitations period applicable to Individual Plaintiffs' claims is, at most, four years from the date they filed suit – February 3, 2013 for the earliest case filed (MVSC). Reynolds further objects to this Request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, or other applicable privilege.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop. As to Cox and AutoLoop, the documents requested are irrelevant and overbroad for the reasons stated above and also because the claims brought by Cox and AutoLoop are only against CDK, and understanding the requested information as to Reynolds makes no difference in those cases. The Request is therefore particularly burdensome, not proportional to the needs of the Cox and Autoloop cases, and is inconsistent with third party discovery protections.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

As to the Authenticom and MVSC cases, Reynolds objects on relevance and other grounds as stated above.

## REQUEST FOR PRODUCTION NO. 92:

All pictures of the cake from the party for the one-year anniversary of the 2015 agreements between CDK the Reynolds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 92:**

Reynolds objects to this Request on the grounds that it is not proportional to the needs of the case, irrelevant, and harassing. A picture of a cake makes no difference to any claim or defense in this case.

Reynolds additionally objects that as a third party to the Cox and Autoloop matters, it is entitled to greater protection from burdensome or irrelevant discovery requests from Cox and Autoloop.

Reynolds further objects that this Request is untimely as to Authenticom, because Authenticom's deadline to issue written discovery was March 23, 2018, pursuant to the Court's March 12, 2018 Order and hearing comments.

Subject to and without waiving these or its General Objections, Reynolds responds as follows: Reynolds is willing to make a reasonable inquiry to determine if any responsive documents exist and, if so, is willing to further meet and confer with Plaintiffs regarding this Request.

**REQUEST FOR PRODUCTION NO. 93:**

This RFP incorporates all RFPs propounded by the Dealer Class Plaintiffs and formally requests all documents sought by those RFPs.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 93:**

Reynolds objects to this Request on the grounds that it is overly broad, unduly burdensome, not proportional to the needs of the case, duplicative, cumulative, seeks irrelevant material, and is untimely. Pursuant to the 5/7/18 Case Management Order (Dkt. 166), May 25, 2018 was the "[d]eadline to serve any additional, non-duplicative, coordinated discovery requests, search terms, and custodians." Individual Plaintiffs served a joint set of 92 Requests on

-137-

May 25, 2018.  This additional Request No. 93 was served nearly three weeks later, and only one week before responses and objections were due.  It purports to incorporate by reference forty-four additional Requests separately served by the Dealer Class Plaintiffs.  This would subject Reynolds to the substantially expanded and disproportionate burden of responding to dozens of additional Requests.

Furthermore, contrary to plaintiffs' representations in meet and confer discussions, the 92 Individual Plaintiffs' Requests and the 44 Dealer Class Plaintiffs' Requests and the 89 Authenticom Requests that have been served on Reynolds thus far (225 Requests to Reynolds in total) exhibit an enormous degree of overlap, duplication and repetition, making it clear that the separate sets of Requests were not coordinated.

Subject to and without waiving these or its General Objections, Reynolds responds as follows:  To the extent that Reynolds produces materials in response to the Dealer Class Plaintiffs' Requests, it will also produce those materials to Individual Class Plaintiffs.


Dated:  June 22, 2018          Respectfully submitted,

                                        */s/ Aundrea K. Gulley*
                                        Aundrea K. Gulley
                                        Kathy D. Patrick
                                        Brian T. Ross
                                        Brice A. Wilkinson
                                        Ross A. MacDonald
                                        GIBBS & BRUNS LLP
                                        1100 Louisiana Street, Suite 5300
                                        Houston, TX 77002
                                        (713) 751-5258
                                        agulley@gibbsbruns.com
                                        kpatrick@gibbsbruns.com
                                        bross@gibbsbruns.com
                                        bwilkinson@gibbsbruns.com
                                        rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and
Reynolds Company*

-139-

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, I caused a true and correct copy of the foregoing

The Reynolds and Reynolds Company's Responses and Objections to Individual Plaintiffs' First

Set of Requests for Production to be served by email upon the following individuals:

Michael N. Nemelka (mnemelka@kellogghansen.com)
Derek T. Ho (dho@kellogghansen.com)
Britt M. Miller (bmiller@mayerbrown.com; CDK-MDL-Team@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com; CDK-MDL-Team@mayerbrown.com)
Peggy Wedgworth (pwedgworth@milberg.com; DMSTeam@milberg.com)
All Parties (SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com)


_/s/  Jessica Campos_
Jessica Campos

# Exhibit L

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:  DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | |
| **This Document Relates To:** | **MDL No. 2817** **Case No. 18-cv-00864** |
| *Motor Vehicle Software Corporation v. CDK Global, Inc. et al.*, Case No. 1:18-cv-00865 (N.D. Ill.); *Authenticom, Inc. v. CDK Global, LLC et al.*, Case No. 1:18-cv-00868 (N.D. Ill.); *Cox Automotive, Inc. et al v. CDK Global, LLC*, Case No. 1:18-cv-01058 (N.D. Ill.); *Loop LLC v. CDK Global, LLC*, Case No. 1:18-cv-02521 (N.D. Ill.) | **Hon. Robert M. Dow, Jr.** **Magistrate Judge Jeffrey M. Gilbert** |

**CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO
"INDIVIDUAL PLAINTIFFS'" FIRST SET OF REQUESTS
<u>FOR THE PRODUCTION OF DOCUMENTS</u>**

Defendant CDK Global, LLC ("CDK"), by and through its attorneys, and pursuant to Fed.

R. Civ. P. 26 and 34, hereby submits its written objections and responses to plaintiffs Motor

Vehicle Software Corporation ("MVSC"), Authenticom, Inc. ("Authenticom"), Cox Automotive,

Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue

Book Co., Inc., vAuto, Inc., VinSolutions, Inc., Xtime (collectively, "Cox"), and Loop, LLC d/b/a

AutoLoop's ("AutoLoop")[1] (collectively "Plaintiffs") First Set of Requests for the Production of

Documents to CDK, dated May 25, 2018 (the "Requests").[2]

---

[1] CDK notes that AutoLoop is no longer an "Individual Plaintiff" but rather now purports to be suing on its own behalf as well as on behalf of a putative class of vendors.  *See* Dkt. 194.  CDK reserves the right to seek class-related discovery in that case as AutoLoop's amended complaint (in which the class allegations first appeared) was not filed until June 5, 2018—after the May 25, 2018 discovery deadline.

[2] On June 13, 2018, Plaintiffs served an "Amended" First Set of Requests for the Production of Documents, which reiterated their May 25 Requests verbatim and added a new Request No. 102 that purports to "incorporate[ ] all RFPs propounded by the Dealer Class Plaintiffs and formally request[ ] all documents sought by those RFPs."  CDK believes that Plaintiffs' "Amended" Requests are untimely under Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166) and therefore improper.  Nevertheless, solely for efficiency's sake, CDK incorporates

## GENERAL OBJECTIONS

1.       CDK asserts each of the following objections to the Requests.  In addition to these General Objections, CDK may also state specific objections to a Request where appropriate.  By setting forth such additional specific objections, CDK does not in any way intend to limit or restrict its General Objections.  Moreover, to the extent CDK provides a response to any of the Requests to which CDK objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.       Nothing herein shall be construed as an admission by CDK regarding the competence, admissibility, or relevance of any fact sought by the Requests.  CDK reserves its right to challenge the competency, relevance, materiality, and admissibility of any information or documents that it produces in response to any discovery request at trial, of Plaintiffs' actions or any other action, or at any subsequent proceeding, of Plaintiffs' actions or of any other action.  Further, CDK intends no incidental or implied admissions by its answers to the Requests.  Whether CDK answers or objects to any particular Request should not be interpreted as an admission that CDK accepts or admits the existence of any fact(s) set out or assumed by such Requests, that the Requests are proper, that CDK's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion Plaintiffs' actions or any other proceeding.  Furthermore, whether CDK answers part or all of any particular Request is not intended and should not be construed as a waiver by CDK of any or all objections to such Request or any other Request.

---

its responses to Request Nos. 1-101 and "Amended" Request No. 102, below, and hereby serves them as its responses to the "Amended" Requests as if fully and separately stated.

3.      CDK objects to any request, instruction, definition, or directive contained in the Requests to the extent that it purports to impose any obligations on CDK beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

4.      CDK objects to the Requests to the extent they are unlimited in time or not limited to the time relevant to Plaintiffs' actions, on the ground that such Requests seek information which is neither relevant to any claim or defense in Plaintiffs' actions and is overly broad and unduly burdensome. The limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first complaint by any of them in this Multidistrict Litigation ("MDL"), which was February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. Therefore, unless otherwise specified in its response to a specific Request, CDK's production of documents will be limited to the time period beginning on or after January 1, 2013.

5.      CDK objects to Requests propounded on behalf of Authenticom and to the extent such Requests seek discovery on behalf of Authenticom or specific to the claims and defenses asserted in *Authenticom, Inc. v. CDK Global, LLC et al*. On October 2, 2017, Authenticom served CDK with 92 requests for production. On March 12, 2018, the Court ordered Authenticom to issue further "written discovery" to Defendants by March 23, 2018 (Dkt. 43); on March 23, Authenticom served CDK with another 15 requests for production, for a total of 107 separate requests, not including subparts. To the extent Authenticom purports to seek additional documents through the instant Requests, CDK objects to such Requests as untimely and because the burden of responding to such Requests outweighs any marginal benefit given the voluminous discovery that Authenticom has already sought and obtained from CDK. CDK further objects to the Requests to the extent they are not relevant to the claims or defenses asserted in each of the

3

cases filed by the remaining Plaintiffs who issued these Requests: *Motor Vehicle Software Corp. v. CDK Global, Inc., et al.* ("*MVSC*"); *Cox Automotive, Inc., et al. v. CDK Global, LLC* ("*Cox*"); and *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC* ("*AutoLoop*").

6.     CDK objects to making multiple collections of documents for purposes of responding to these and other Requests for the Production of Documents served in the MDL, dated October 2, 2017, March 23, 2018, and May 25, 2018, on the ground that such collections are unnecessarily burdensome and disproportional to the needs of the MDL.  Therefore, to the extent that CDK has already collected documents from sources implicated by these Requests in connection with fulfilling its discovery obligations in the MDL, CDK objects to making additional collections for purposes of responding to these Requests.

7.     CDK objects to the Requests, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of CDK; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery.  To the extent that the Requests, or any one of them, seek such information, CDK hereby claims such privilege and invokes such protection.  The fact that CDK does not specifically object to an individual request on the grounds that it seeks privileged or protected material shall not be deemed a waiver of the protection afforded by any applicable privilege. Similarly, to the extent any information or documents subject to a privilege or otherwise protected from discovery are produced in response to these Requests, such production is inadvertent and not intended as a waiver.

4

8. CDK objects to the Requests to the extent that they seek information and/or documents that are confidential or otherwise proprietary in nature. The represented parties in this litigation have agreed upon an Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Dkt. 104). Thus, to the extent that a request calls for production of confidential or competitively sensitive material, as defined by the Confidentiality Order, CDK will only produce such material subject to that Order.

9. CDK objects to the Requests to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of CDK's employees and other persons, including individuals who are not parties to Plaintiffs' actions. CDK reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation, including by allowing such parties to seek a protective order from the Court prior to the production of material that implicates their confidential or private information, or by redacting such information from documents or ESI that CDK may produce.

10. CDK objects to the Requests to the extent they purport to require the production of documents or information that are not maintained by CDK in the form or manner requested.

11. CDK objects to the Requests to the extent that they seek the production of documents or information beyond the possession, custody, or control of CDK or its current officers, directors, or employees and/or that cannot be located with a reasonably diligent search, thus making the Requests unduly burdensome.

12. CDK objects to the Requests on the ground of undue burden to the extent that they seek the production of documents or information currently in Plaintiffs' possession,

custody, or control, that is publicly available, or that can be obtained more easily from third parties.

13.     No statement that CDK will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that CDK will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a reasonably diligent search.

14.     To the extent CDK has agreed to search for documents responsive to these Requests, its searches will be limited to the files of those document custodians agreed upon by the parties and to central or shared file locations (if any) where documents that are responsive to particular Requests are likely to be found.  Similarly, in accordance with the Stipulated Order Re: Discovery Of Electronically Stored Information ("ESI") ("ESI Stipulation"), which was approved and entered by the Court on April 6, 2018 (Dkt. 105), CDK will produce responsive, non-privileged documents and information in accordance with the parties' agreements regarding date limitations and search terms, to avoid the need to manually inspect every potentially responsive document.  To the extent that responsive documents can be identified and produced without the use of search terms, custodian, or date limitations, CDK will make good-faith, diligent efforts to produce those responsive documents concurrent with resolving any disagreements over search criteria.

15.     CDK's responses to the Requests are based on its present knowledge, upon a reasonable inquiry.  Discovery is ongoing, and CDK's investigation continues.  CDK reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

6

16.     To the extent CDK has objected to or refused to produce documents or information in response to any given Request, and to the extent that Plaintiffs take issue with any such objection or refusal, CDK is willing to meet-and-confer with Plaintiffs to see if a reasonable, mutually-acceptable compromise might be reached.

17.     CDK objects to these Requests to the extent that they are duplicative of Requests for the Production of Documents served by other parties in the MDL. Such Requests violate Paragraph B.6 of the Court's May 7, 2018 Case Management Order (Dkt. 166), which directs the parties to serve "additional, *non-duplicative, coordinated* discovery requests" on or before May 25, 2018."

18.     CDK incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

## OBJECTIONS TO PLAINTIFFS' DEFINITIONS AND INSTRUCTIONS

1.     CDK objects to each and every "Definition" set forth in the Requests, including "communication," "relating to," "related to," "referring to," "regarding," and "with respect to," to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 34 and/or any applicable Local Rule or other Court Order. CDK will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     CDK objects to Plaintiffs' definition of "add-on application" in Definition No. 1 as overly broad and unduly burdensome, to the extent it purports to include "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications

used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

3.      CDK objects to Plaintiffs' definitions of "CDK" and "You," "Your" and "Your company" in Definition Nos. 9 and 20 as overly broad and unduly burdensome to the extent they purport to require CDK to produce information and/or documents beyond CDK's possession, custody, or control.  In addition, CDK objects to Definition Nos. 9 and 20 to the extent they purport to require CDK to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on CDK's behalf.

4.      CDK objects to Plaintiffs' definition of "CVR" in Definition No. 11 as overly broad and unduly burdensome, and to the extent it purports to require CDK to produce information and/or documents maintained by CVR.  Plaintiffs have stated their intent to serve separate discovery requests upon CVR; therefore, to the extent these Requests seek documents from CVR, they should be directed to CVR, not CDK.

5.      CDK objects to Plaintiffs' definitions of "Authenticom," "AutoLoop," "Cox Automotive," "MVSC," "RTS," and "Reynolds" in Definition Nos. 3, 4, 5, 6, 7, and 18 as overly broad and unduly burdensome.

6.      CDK objects to Plaintiffs' definition of "data integrators" in Definition No. 12, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as CDK uses and understands the term.  CDK further objects to Definition No. 12 as inaccurate.  CDK is not a "data integrator" "through its 3PA program" despite Plaintiffs' repeated attempts to label it as

8

such.  CDK's subsidiaries DMI and IntegraLink have served in that role (as CDK understands the term) at various times during the relevant period.  To the extent that CDK responds to Requests that reference "data integrators," it does not mean that CDK agrees with or accepts Plaintiffs' definitions.

7.      CDK objects to Plaintiffs' definitions of "DMI" and "IntegraLink" in Definition Nos. 13 and 15 as overly broad, unduly burdensome, and seeking documents and information that are irrelevant and not within CDK's possession, custody, or control, to the extent that these definitions purport to include any documents or information pertaining to Digital Motorworks, Inc. or IntegraLink before those entities were acquired by and incorporated into the business operations of CDK.

8.      CDK objects to Plaintiffs' definitions of "Vendors" and "application providers" in Definition No. 19 as overly broad and unduly burdensome, to the extent it purports to include "Vendors" or "application providers" of "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

9.      CDK objects to Plaintiffs' "Instructions" to the extent that they purport to conflict with, or impose any obligations that are greater than or otherwise inconsistent with, the ESI Stipulation.  CDK will collect, review, and produce ESI responsive to these Requests in accordance with that Stipulation.  CDK further objects to Instruction No. 1 to the extent it purports to require the production of privileged documents, including but not limited to those in the possession of CDK's "attorneys or their employees, agents, vendors, or investigators.

**CDK'S SPECIFIC RESPONSES TO REQUESTS
FOR THE PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1:** The executed versions of every 3PA contract with a vendor.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks production of any executed contract for each of CDK's 300+ 3PA customers, from the beginning of time to the present, irrespective of whether the vendors are current or former customers, and without taking into consideration that CDK may have had executed multiple 3PA contracts with particular customers over time. CDK further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom's Request for Production ("Authenticom RFP") No. 43, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 2:** All documents and communications regarding CDK's Managed Interface Agreement with (a) Cox Automotive and (b) AutoLoop.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to the agreements identified in the

10

Request. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs'" Request for Production ("'Individual Plaintiffs' RFP") Nos. 1 and 6.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce (a) executed versions and non-privileged drafts of the agreements identified in this Request, and (b) non-privileged documents and communications regarding the agreements identified in this Request, for the period January 1, 2015 (approximately one year prior to the execution of Cox and AutoLoop's respective Managed Interface Agreements with CDK), to the date of CDK's collections.

**REQUEST NO. 3:** All documents and communications regarding the 3PA fees to be charged to (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as vague and overly broad to the extent it seeks information related to 3PA fees "to be charged" to Cox, AutoLoop, and MVSC; "to be charged" could refer to any number of things including but not limited fees that might or will be charged in the future or fees

CDK contemplated charging. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to the 3PA fees. CDK further objects to this Request to the extent that it is unlimited in time and thus not limited to the time period relevant to the claims and defenses in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 6, 7, and 8, and 82 and Authenticom RFP Nos. 61 and 96.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the periods January 1, 2014 (for MVSC), and January 1, 2015 (for Cox and AutoLoop), to the date of CDK's collections.

**REQUEST NO. 4:** All documents and communications regarding access to dealer data on a CDK DMS through the 3PA program by (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly

12

burdensome to the extent it seeks "all documents and communications" relating, in any way, to Cox's, AutoLoop's, or MVSC's access to "dealer data" through the 3PA program. CDK further objects to this Request to the extent that it is unlimited in time and thus is not limited to the time period relevant to the Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 11-15, 32, 33, 37, and 96-97.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the periods January 1, 2014 (for MVSC), and January 1, 2015 (for Cox and AutoLoop), to the date of CDK's collections.

**REQUEST NO. 5:** All documents and communications regarding whether data received by a (a) Cox Automotive or (b) AutoLoop application from a CDK DMS may be shared with another application run by (a) Cox Automotive or (b) AutoLoop.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to whether data from a CDK DMS can be shared between

Cox's or AutoLoop's multitude of applications, from the beginning of time to the present. CDK further objects to this Request to the extent that it is unlimited in time and thus is not limited to the time period relevant to the Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 6:** All documents and communications regarding the Most Favored Nations clause – or anything like it – in the Managed Interface Agreement between Cox Automotive and CDK.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of Plaintiffs' actions, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to a particular clause, "or anything like it," in the agreement identified in this Request. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to

the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 2, 3, 7, and 8.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period beginning January 1, 2015 to the date of CDK's collections.

**REQUEST NO. 7:** All documents and communications regarding any instance in which a vendor received equal or better pricing than Cox Automotive for data integration under the 3PA program from 2015 to the present.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" relating, in any way, to "any instance" in which any of CDK's 300+ vendors received equal or better "pricing" (a term undefined in these Requests or Cox's Complaint) than those that Cox receives for services that are not comparable to the services that Cox receives. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to,, but not limited to "Individual Plaintiffs" RFP No. 82.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show pricing for data integration services paid by CDK's customers, to the extent that such data exists and is within CDK's possession, custody, and

control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 8:** All documents and communications regarding any representation made to Cox Automotive that it would pay the lowest rates for integration services.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as vague and overly broad to the extent it seeks documents and communications related to "any representation" in any form by any person or entity to Cox that it would pay the "lowest rate" (a term undefined in these Requests or Cox's complaint) for integration services. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 3.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 9:** All documents regarding 3PA Governance. *See*, *e.g.*, CDK-0001039, at 46.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as vague to the extent it references CDK-0001039, which contains a passing reference to "3PA Governance" as it relates to "Writeback and IP Functions" made available to DMS providers. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" relating, in any way, to "3PA Governance," since the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK also objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 10:** All documents and communications regarding any DMS access restrictions, to which CDK add-on applications are not subject, that CDK places on third-party add-on applications.

17

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Whether CDK places the same "access restrictions" on its own applications—which CDK can monitor and for which it is ultimately responsible—as those placed upon applications offered by third parties has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding any "DMS access restrictions" placed on any "third-party add-on applications" offered by 300+ vendor customers, since the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 11-15 and Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 11:** All documents and communications regarding allowing applications to create or modify "repair orders." *See*, *e.g.*, CDK-0000786, at 818.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Whether CDK allows certain functionality for applications offered by third parties has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications," related in any way to allowing *any* third-party application to create and modify repair orders in CDK's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 12:** All documents and communications regarding allowing applications to finalize purchasing and leasing transactions. *See id.*

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Whether CDK allows certain functionality for applications offered by third parties has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" related in any way to allowing *any* third-party application to "finalize" purchasing and leasing transactions, the meaning of which is not clear from this Request, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC

and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 13:** All documents and communications regarding any "category restrictions" in place at any time with respect to data integration. *See*, *e.g.*, CDK-0001039, at 64.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" related in any way to *any* "category restrictions" on data access for third-party applications in place "at any time." As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 14:** All documents and communications relating to any "CVR Category" for data access by electronic vehicle registration and titling vendors.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the term "CVR Category" in this Request as vague and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications," related in any way to any "CVR" category for third-party data access, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control

22

responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 15:** All documents and communications relating to any "Closed Category" for data access by electronic vehicle registration and titling vendors.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to use of the term "Closed Category" as vague and undefined.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" related in any way to *any* "Closed Category" for third-party data access, from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 91.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 16:**  All communications with Nissan Motor Acceptance Corporation, American Honda Finance Corporation, or their affiliates regarding Dealertrack's Sales and F&I solution.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all communications" relating, in any way, to Dealertrack's Sales and F&I solution, from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce communications with Nissan Motor Acceptance Corp. and American Honda Finance Corporation as they relate to Dealertrack's Sales and F&I solution and the allegations in Cox's complaint, for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 17:**  All documents and communications concerning the process of transitioning dealers from CDK's DMS to Dealertrack's DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable

privilege.  Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding the transition of any dealer, for any reason, to Dealertrack's DMS, from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody and control, and can be identified through a reasonable search of appropriate sources, CDK will produce documents sufficient to show its policies and procedures for transferring customer data to a new DMS provider for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 18:**  All documents and communications regarding impeding, blocking, or in any way making it difficult for a dealer to switch from CDK's DMS to a competing DMS, including Dealertrack's DMS.  For the avoidance of doubt, this Request includes all communications and documents regarding a dealer's ability to transfer the dealer's data stored on the CDK DMS to a competing DMS.

**RESPONSE:**  CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to the use of the phrase "difficult" in this Request as vague, ambiguous, and undefined.  CDK could make it "difficult," for example, for customers to switch DMS providers by offering those customers better pricing or more attractive terms of service.  CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is

25

beyond the scope of permissible discovery. Whether or not CDK "make[s] it difficult" to switch DMS providers, DMS customers regularly switch to and from CDK as demonstrated by information that CDK has already produced in this MDL. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery of CDK "making it difficult" "in any way" for a dealer to switch DMS providers, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody and control, and can be identified through a reasonable search of appropriate sources, CDK will produce documents sufficient to show its policies and procedures for transferring customer data to a new DMS provider for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 19:** All documents and communications regarding "push" notifications for 3PA or similar functionality provided to CDK's own add-on applications.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether CDK provides or has ever provided "push" notifications through the 3PA

program or for its own "add-on applications" has no bearing on the matters at issue in Plaintiffs'

actions, including whether CDK and Reynolds entered into an unlawful agreement or whether

the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this

Request as overly broad and unduly burdensome to the extent it seeks "all" documents and

communications regarding "push" notifications, from the beginning of time to the present. As

noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the

filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not

allege any potentially actionable conduct by CDK until much later than that. CDK further

objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC

and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects

to this Request to the extent it is duplicative of other Requests for Production served upon CDK

in this MDL, including, but not limited to, Authenticom RFP Nos. 26, 27, and 91, to which CDK

has produced and is producing responsive documents subject to its objections, and "Individual

Plaintiffs" RFP No. 96.

**REQUEST NO. 20:**  All documents regarding functionality, data access, or level of data integration provided to one vendor but not offered to a competing vendor or vendors.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks information that is protected from

disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds

that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond

the scope of permissible discovery. Whether or not all of CDK's 300+ current and former

vendor customers have equal or comparable data integrations has no bearing on the matters at

issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful

agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents" comparing such data integrations, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 21:** All documents and communications regarding any purported burden placed on a CDK DMS by the applications of (a) Cox Automotive or (b) AutoLoop.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request to the extent it seeks discovery of the burden placed on CDK's DMS by 3PA-certified applications, which is irrelevant to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding "any" burden placed on a CDK DMS by any application affiliated with Cox or AutoLoop, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to the burden placed on CDK's DMS by unauthorized third-party applications, including from Cox and AutoLoop, for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 22:**  All documents and communications regarding the response time for 3PA interfaces from the time they are requested by a vendor until the time they are actually activated.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to the use of the term "response time" in this Request as vague, ambiguous, and undefined.  It is unclear whether "response time" is measured from the time that CDK is first contacted by a new vendor interested in the 3PA program, from the time that CDK and the vendor actually negotiate and execute a managed interface agreement, or some other point in time.  CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.  The "response time" for activation of 3PA interfaces has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive.  CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding response times for activation of 3PA interfaces for any vendor and any application, from the beginning of time to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first

29

"Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 23:** All documents and communications regarding "Project Peach."

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. The project between non-party Open Dealer Exchange and Cox that is the subject of this Request has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding any aspect of the project. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 24:** All documents and communications regarding Dealertrack Registration & Titling's access to the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Dealertrack's EVR product is not at issue in

30

Plaintiffs' actions. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding DealerTrack Registration & Titling's access to CDK's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 4 and 10.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to Dealertrack Registration & Titling's eligibility for the 3PA program and any negotiations concerning its possible participation in the 3PA program.

**REQUEST NO. 25:** All documents and communications regarding RTS participating in the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Dealertrack's EVR product is not at issue in

31

Plaintiffs' actions. CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding DealerTrack Registration & Titling's possible participation in CDK's 3PA program. Additionally, CDK objects to this Request as unlimited in time and thus not limited to the time period relevant to the claims and defenses in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 4, 5 10, and 24.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to Dealertrack Registration & Titling's eligibility for the 3PA program and any negotiations concerning its possible participation in the 3PA program.

**REQUEST NO. 26:** All documents and communications regarding AutoLoop's application to join the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications"

regarding AutoLoop's application to join the 3PA program. Additionally, CDK objects to this Request as unlimited in time and thus not limited to the time period relevant to the claims and defenses in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or Cox and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 27:** All documents and communications regarding CDK's certification of AutoLoop's products for the 3PA program under the January 2016 Statement of Work between AutoLoop and CDK.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks "all documents and communications" regarding CDK's certification of AutoLoop's products in the 3PA program. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or Cox and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other

Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 2.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2015, to the date of CDK's collections.

**REQUEST NO. 28:** All documents and communications regarding CDK's decision to let AutoLoop use independent third-party integrators to provide data integration services to CDK dealers after AutoLoop's acceptance into the 3PA program.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all documents and communications" regarding a purported "decision" by CDK to permit AutoLoop to use "third party integrators" after its admission to the 3PA program. CDK also objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or Cox and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 30.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 29:** All communications – and all documents regarding those communications – between CDK and dealers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents and/or communications" between CDK and dealers relating, in any way, to Cox, AutoLoop, and MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 3, 4, and 5.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to communications with dealers regarding access by Cox, AutoLoop, and/or MVSC to CDK's DMS for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 30:** All documents and communications relating to any threat or perceived threat to Your DMS business posed by add-on applications, including but not limited to add-on applications provided by Cox Automotive.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "threat" in this Request as vague, ambiguous, and undefined. "Threat" could mean competitive threats (as the term was used in Authenticom RFP 90) or the threats to data security and system performance and integrity caused by unauthorized third-party access. CDK assumes for the purposes of this Request that Plaintiffs mean the former. CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether or not add-on applications pose a competitive "threat" has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of "all documents and communications" relating, in any way, to any competitive threat posed by "add-on applications," from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 90.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 31:** All documents and communications between CDK and OEMs or car manufacturers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and duplicative. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it literally seeks "all documents and/or communications" between CDK and OEMs relating, in any way, to Cox, AutoLoop, or MVSC, from the beginning of time to the present. OEMs are not parties to this case and Plaintiffs make no material allegations regarding OEMs in their complaints. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 3, 4, and 5.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified

37

through a reasonable search of appropriate sources, CDK will produce non-privileged documents related to communications with OEMs regarding access by Cox, AutoLoop, and/or MVSC to CDK's DMS for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 32:** All communications, and documents related to those communications, between CVR and CDK concerning MVSC, including but not limited to: (1) MVSC's access to dealer data stored on the CDK DMS; (2) MVSC's presence and market share in California, Illinois, or any other state EVR market; (3) MVSC's expansion or potential expansion into states beyond California; and (4) any competitive threat or perceived competitive threat posed by MVSC to CVR.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data" in this Request as vague, ambiguous, and undefined CDK also objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" communications with CVR, and documents "related" in any way to those communications, concerning MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint— February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 33:** All communications, and documents related to those communications, between CDK and Reynolds concerning or relating to MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" communications, and documents "related" in any way to those communications, between CDK and Reynolds concerning or relating to MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 2, 3, and 4.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 34:** All documents and communications related to MVSC's attempts or applications to join the Your data integration program, including but not limited to internal communications regarding whether to permit MVSC to participate in Your data integration program; internal communications regarding any competitive threat that permitting MVSC to join Your data integration program might pose to CVR; and the terms and pricing offered to MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "related," in any way, to any attempts by MVSC or applications submitted by MVSC to join CDK's 3PA program, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2014, to the date of CDK's collections.

**REQUEST NO. 35:** All documents and communications related to any other application or attempt by any EVR provider, other than MVSC, to join Your data integration program, including the terms and pricing offered to any such EVR vendor.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks

40

the production of "all" documents and communications "related," in any way, to any attempts or applications submitted by any EVR provider other than MVSC to join CDK's 3PA program and the terms and pricing offered to such provider, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show the EVR providers who are enrolled in CDK's 3PA program and the contractual terms and conditions of their enrollment in the 3PA program for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 36:** All documents and communications regarding any EVR provider currently participating in Your data integration program, including when they started participating; the pricing they pay for participation; their applications to participate in the program; Your internal considerations regarding their applications; the data elements they receive and /or have access to; and the state EVR markets in which they participate.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "regarding," in any way, any EVR providers' participation in CDK's 3PA program. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks documents from an unlimited time period. As

41

noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 35.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show the EVR providers who are enrolled in CDK's 3PA program and the contractual terms and conditions of their enrollment in the 3PA program for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 37:** All communications, and documents related to those communications, between You and Your dealer customers regarding MVSC, including but not limited to communications between You and Your dealer customers concerning (1) the way in which MVSC accesses dealer data; (2) MVSC's attempts to join the 3PA program and/or 3PA certification status; and (3) MVSC's security and data practices.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications and documents between CDK and its customers "related," in any way, to MVSC, from the beginning of time to the present. As noted above, the limitations period

42

applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP No. 29.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to subparagraphs (1)-(3) of this Request for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 38:** All communications and documents concerning or mentioning any MVSC executive, including but not limited to Don Armstrong, Kelly Kimball, Joseph Nemelka, and John Brueggeman.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all communications and documents" "concerning or mentioning" any of four individuals affiliated with MVSC, in any context, from the beginning of time to the present. Of course, not "all" such documents have any relevance or bearing on the claims or defenses at issue in the MVSC litigation. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2017. Further, Plaintiffs do not allege

43

any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, "Individual Plaintiffs" RFP Nos. 2, 3, 4, 31, 32, 33, 34, and 37.

Subject to and without waiving these or its General Objections, CDK states that it is willing to consider a search term based upon this Request in connection with the parties' ongoing negotiations concerning additional search terms and custodians.

**REQUEST NO. 39:** All communications and documents concerning CDK's consideration or evaluation of whether to acquire or purchase MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. Whether CDK considered or evaluated purchasing MVSC has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications and documents "concerning," in any way, CDK's consideration or evaluation of whether to acquire or purchase MVSC, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual

44

Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 40:** All communications and documents concerning any efforts by You to block or impede MVSC's access to data for a dealer using Your DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the phrase "access to data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications and documents "concerning," in any way, CDK's supposed efforts to block or impede MVSC's access to CDK's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 14, 22, 23, 27, 42, 79, and 81.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the

use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 41:** All communications and documents concerning MVSC's use of independent integrators, including but not limited to Authenticom, SIS, and ProQuotes, to access data for a dealer using Your DMS platform.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it is duplicative and seeks documents protected from disclosure by an applicable

privilege. Specifically, CDK objects to the phrase "access data for a dealer" in this Request as

vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly

burdensome to the extent it seeks the production of "all" communications and documents

"concerning," in any way, MVSC's use of "independent integrators" to access CDK's DMS,

from the beginning of time to the present. As noted above, the limitations period applicable to

Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff"

complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable

conduct by CDK until much later than that. CDK further objects to this Request to the extent it

seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and

irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to

the extent it is duplicative of other Requests for Production served upon CDK in this MDL,

including, but not limited to, Authenticom RFP Nos. 14, 22, 23, 27, and 42.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 42:** All communications and documents concerning the importance of having real time or bi-directional data integration in order to provide EVR services in Illinois, California, or any other state EVR market.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the phrase "importance of having real time or bi-directional data integration" in this Request as vague, ambiguous, and undefined. Any document referring to such integrations could be interpreted to bear on their "importance," or not, to the provision of EVR services. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications and documents related to the "importance," in any context, of real time or bi-directional data integration in connection with the provision of EVR services. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks documents regarding any alleged "EVR market" in any state other than Illinois or California. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

47

responsive to this Request to the extent they relate to the provision of EVR services in Illinois or California for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 43:** Documents sufficient to show CVR's market share and customer base in every state in which it operates, from 2011 to present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents beyond CDK's possession, custody, or control. Specifically, CDK objects to this Request as overly broad and unduly burdensome in that it seeks documents related to CVR's "market share" and "customer base" in every state in which it operates, from 2011 to the present. Only CVR's operations in Illinois and California are implicated by MVSC's claims. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show the number of customers that CVR serves in California and Illinois.

**REQUEST NO. 44:** All documents and communications concerning CVR's customer base and market share in California and Illinois, from 2011 to present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically,

48

CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications that are in any way related to CVR's customer base and "market share" in California and Illinois, from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents that refer to or otherwise purport to calculate CVR's "share" of EVR customers in California or Illinois for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 45:** All documents and communications concerning any market analysis or competitive analysis of the EVR markets in California and Illinois.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, any "market analysis" or "competitive analysis" of EVR services in California and Illinois, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—

49

February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.  Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 46:**  All documents and communications concerning CVR's operational costs, revenues, profitability, and financial projections and forecasts, from 2011 to present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is beyond the scope of permissible discovery. The revenues or "profitability" realized by CVR— particularly prior to the relevant time period—has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, CVR's operational costs, revenues, profitability, and financial projections and forecasts from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the

first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 47:** All documents and communications concerning deficiencies or perceived deficiencies in CVR's product and service level. For the avoidance of doubt, this Request includes not only internal documents and communications but also communications with third parties (including CVR's dealer customers) regarding deficiencies or perceived deficiencies in CVR's product and service level.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning" supposed deficiencies in CVR's products or services, from the beginning of time the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint— February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

51

comparing the product quality or perceived product quality of CVR and MVSC for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 48:**  All documents and communications concerning the product quality or perceived product quality of CVR's competitors, including but not limited to MVSC.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents beyond CDK's possession, custody, or control, or protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, the product quality or perceived product quality of CVR's competitors, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents comparing the product quality or perceived product quality of CVR and MVSC for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 49:** All documents and communications regarding any delays or backlogs by CVR in processing vehicle registrations and titles, including but not limited to any such delays or backlogs in California.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Any delays or backlogs in processing vehicle registrations and titles (if any) have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "regarding" such purported delays or backlogs, from the beginning of time to the present. Only CVR's operations in Illinois and California are implicated by MVSC's claims. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

related to any "backlogs" for EVR providers processing vehicle registrations and titles in California, for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 50:** All documents and communications concerning any advantage or perceived advantage CVR has over its competitors because of CVR's ability to access dealer data stored on the CDK and Reynolds DMSs.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to term "advantage" and the phrase "dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning," in any way, any "advantage" that CVR has from its ability to access—along with several other EVR providers—data stored on CDK and Reynolds's DMSs. CDK also objects to this Request as overly broad and unduly burdensome in that it seeks documents from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

comparing CVR against other EVR providers in terms of their ability to access to data on CDK and/or Reynolds's DMSs for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 51:** All documents and communications concerning the costs associated with entering a new EVR market, including costs associated with legal licensing and DMV requirements and capital and technological costs.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is beyond the scope of permissible discovery. The entry costs associated with EVR services have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning" such costs, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 52:** Documents sufficient to show CVR's ownership structure, including documents sufficient to show how CVR's revenues and profits are divided between CDK and Reynolds.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks documents from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 53:** All documents and communications relating to Reynolds' ownership interest in CVR, including when that interest was acquired; why Reynolds acquired that interest; from whom Reynolds acquired that interest; how much Reynolds paid for that ownership interest; and what Reynolds' rights are with respect to its ownership interest.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, this Request appears to have been mistakenly directed at CDK and obviously requests Reynolds documents as opposed to CDK documents (and an identical Request has been propounded to Reynolds). CDK also objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions

and thus is beyond the scope of permissible discovery. The details surrounding when, how, and why Reynolds acquired its ownership interest in CVR have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "relating," in any way, to Reynolds' ownership interest in CVR, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 54:** All documents and communications relating to the financial benefits received by Reynolds and CDK relating to their ownership interest in CVR, including any allocated profits or other financial benefit, from 2011 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the term "financial benefits" in this Request as vague, ambiguous, and undefined. CDK further objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "relating," in any way, to "financial benefits" obtained by CDK and Reynolds from their ownership interest in CVR from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual

Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show how CVR's profits are allocated between CDK and Reynolds for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 55:** The operative CVR ownership agreement between CDK and Reynolds.

**RESPONSE:** Subject to and without waiving these or its General Objections, CDK states that it has already produced documents responsive to this Request. *See* CDK-0001931.

**REQUEST NO. 56:** All iterations of CVR's organizational chart from 2011 to the present.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "iterations" in this request as vague, ambiguous, and undefined, and overly broad and unduly burdensome to the extent it means drafts or non-final versions of the documents identified by this Request. CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks CVR's "organizational chart" from 2011 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.

58

Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.   Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents responsive to this Request for the period January 1, 2013 to the date of CDK's collections.

**REQUEST NO. 57:**  All documents concerning CDK's involvement in the operation of CVR, including but not limited to CDK's involvement in CVR's management, budget and capital investments, hiring, firing, personnel decisions, salary and bonus allotments, strategic priorities, sales and marketing efforts, and other daily business activities.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to use of the term "involvement" in this Request as vague, ambiguous, and undefined.  CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery.  MVSC's theory that CDK "controls" CVR is pled in service of a Section 2 claim that has been dismissed once already, is subject to another pending motion to dismiss, and contradicts MVSC's own allegations in prior versions of its complaint.  CDK further objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "relating," in any way, to CDK's "involvement" in the operation of CVR—which could mean

59

literally anything—from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 58:** All documents and communications between anyone at CVR, on the one hand, and anyone at CDK, on the other, including regarding the operations, finances, and/or management of CVR.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK also objects to this Request on the grounds that it seeks information unrelated to the claims or defenses in the litigation and thus is beyond the scope of permissible discovery. MVSC's theory that CDK "controls" CVR is pled in service of a Section 2 claim that has been dismissed once already, is subject to another pending motion to dismiss, and contradicts MVSC's own allegations in prior versions of its complaint. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications between CVR and CDK, regardless of content, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely

60

and irrelevant additional discovery on behalf of Authenticom.  Finally, to the extent this Request

seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 59:**  All communications between CDK and Reynolds regarding CVR.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to

the extent it seeks communications protected from disclosure by an applicable privilege.

Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it

seeks the production of "all" communications between CVR and CDK regarding CVR, in any

way, from the beginning of time to the present.  As noted above, the limitations period applicable

to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff"

complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable

conduct by CDK until much later than that.  CDK further objects to this Request to the extent it

seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and

irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that to the

extent they exist, are within CDK's possession, custody, and control and can be identified

through a reasonable search of appropriate sources, CDK will produce non-privileged

communications between CDK and Reynolds regarding CVR's operations or finances, including

CVR's participation in CDK's and Reynolds's 3PA and RCI programs, for the period January 1,

2013, to the date of CDK's collections.

**REQUEST NO. 60:**  All documents and communications relating to CVR's acquisition
of AVRS, including the strategic and financial considerations in CVR's acquisition of AVRS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not

proportional to the needs of the case, and to the extent it seeks documents protected from

disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds

that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is beyond the scope of permissible discovery. The details of CVR's acquisition of AVRS—and strategic or financial considerations thereof—have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "relating," in any way, to CVR's acquisition of AVRS. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 61:** All documents and communications regarding deficiencies or perceived deficiencies in AVRS's product and service levels after the acquisition. For the avoidance of doubt, this Request includes not only internal documents and communications but also communications with third parties (including AVRS's dealer customers) regarding deficiencies or perceived deficiencies in AVRS's product and service level.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the term "deficiencies" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request on the grounds that it seeks information unrelated to any claim or defense in Plaintiffs' actions and thus is beyond the scope of permissible discovery. Any perceived deficiencies in AVRS's products or service levels has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as

overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "concerning" such purported deficiencies, in any way. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

**REQUEST NO. 62:** All documents and communications regarding instances in which CVR or AVRS uses or used independent integrators for access to dealer data on a DMS platform, whether CDK's, Reynolds', or any other DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data" in this Request as vague, ambiguous, and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications "regarding," the use of so-called "independent integrators" by CVR or AVRS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint— February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents

63

related to any agreements with "independent integrators" with respect to CVR or AVRS's (after

its acquisition by CVR) access to data maintained on CDK or Reynolds's DMS, or any other

DMS providers with policies restricting third-party access.

**REQUEST NO. 63:** All documents and communications regarding any instance in
which an add-on application owned (or partly owned) by CDK or Reynolds uses or used
independent integrators for access to dealer data on a DMS platform, whether CDK's, Reynolds',
or any other DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome,

and to the extent it is duplicative and seeks documents protected from disclosure by an

applicable privilege. Specifically, CDK objects to the use of the terms "access" and "dealer data"

in this Request as vague, ambiguous, and undefined. CDK further objects to this Request as

overly broad and unduly burdensome to the extent it seeks the production of "all" documents and

communications "regarding," in any way, the use of so-called "independent integrators" by an

add-on application owned by CDK or Reynolds, from the beginning of time to the present. As

noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the

filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not

allege any potentially actionable conduct by CDK until much later than that. CDK further

objects to this Request to the extent it seeks untimely discovery on behalf of Authenticom. CDK

further objects to this Request to the extent it is duplicative of other Requests for Production

served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 25.

Subject to and without waiving these or its General Objections, CDK states that it has

already produced and is producing documents within its possession, custody, or control

responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states

that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents related to agreements with "independent integrators" with respect to CDK applications' access to data maintained on CDK or Reynolds's DMS, or any other DMS providers with policies restricting third-party access, identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 64:** All documents relating to CVR's Board of Directors or any equivalent governing body for CVR. This Request has no date limitation. This Request includes, but is not limited to:

a.    All documents relating to the composition of CVR's Board of Directors;
b.    Identification of every member of CVR's Board of Directors through time;
c.    All materials presented to CVR's Board of Directors;
d.    All materials considered by CVR's Board of Directors;
e.    All minutes of meetings of CVR's Board of Directors; and
f.    All communications between or among CVR's Board of Directors.

**RESPONSE:** CDK objects to this Request as overly broad, vague, unduly burdensome, and to the extent it seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the phrase "materials considered" in this Request as vague and undefined. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents "relating," in any way, to CVR's Board of Directors or "any equivalent governing body," from the beginning of time to the present. CVR's Board of Directors discusses and considers a variety of issues unrelated to any of claims and defenses in Plaintiffs' actions. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by Cox or AutoLoop and/or untimely and

65

irrelevant additional discovery on behalf of Authenticom. Finally, to the extent this Request seeks documents from CVR, it should be directed to CVR, not CDK.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged documents sufficient to show the composition of CVR's Board of Directors, CVR Board of Directors meeting minutes, and materials distributed to CVR Board members in advance of Board meetings for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 65:** All communications between You and any customer or former customer of Authenticom regarding data integration services or data access, including Team Velocity, Automotive Masterminds, or any other vendor customer of Authenticom.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" communications between CDK and any customer or former "customer" of Authenticom (which may include potentially hundreds of vendors) that are in any way related to "data integration services or data access," from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. In addition, the Request provides no way for CDK to determine who is a customer or former customer of Authenticom. CDK also objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely additional discovery on behalf of Authenticom. CDK

66

further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 10, 13, 20, and 22, to which CDK has produced and is producing responsive documents subject to its objections.

Subject to and without waiving these or its General Objections, CDK states that if Authenticom is able to provide a list of its current or former vendor customers, and the time periods when they were customers of Authenticom, CDK is willing to consider producing documents responsive to this Request to the extent that such documents can be identified through the use of agreed-upon search terms, date limitations, and custodians.

**REQUEST NO. 66:** All communications between You and any dealer customer or former dealer customer of Authenticom regarding data integration services or data access.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" communications between CDK and "any dealer customer or former customer of Authenticom" (which may include potentially thousands of dealers) related in any way to "data integration services or data access," from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK also objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely additional discovery on behalf of Authenticom. CDK further objects to this

67

Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 10, 13, 20, and 22, to which CDK has produced and is producing responsive documents subject to its objections.

Subject to and without waiving these or its General Objections, CDK states that if Authenticom is able to provide a list of its current or former dealer customers, and the time periods when they were customers of Authenticom, CDK is willing to consider producing documents responsive to this Request to the extent that such documents can be identified through the use of agreed-upon search terms, date limitations, and custodians.

**REQUEST NO. 67:** All documents concerning Your evaluation of the market for data access / integration services, including what companies compete with You for provision of data access / data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning any evaluation by CDK of the alleged "market for data access/integration services," from the beginning of time to the present. The alleged "market" for "data integration services" is a legal conclusion that requires the application of law to facts that are subject to dispute in Plaintiffs' actions. Moreover, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other

Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 89.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 68:** All documents concerning Your cost of capital, cost of equity, cost of debt, and/or weighted average cost of capital, including any documents upon which any of the foregoing are based.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's overall capital, debt, and equity costs—whether based on lines of business that are related to Plaintiffs' allegations or otherwise—have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning CDK's capital, debt, and equity costs from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this

69

Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 69:** All documents concerning the economic value of data or data access to dealers, vendors, or DMS providers, including any economic value placed by You on Your ability to deny, restrict, or in any way control access to data on Your DMS platform.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, and to the extent it is seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to the use of the phrase "economic value of data or data access" in this Request as vague and ambiguous. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning such purported "economic value" from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 70:** All communications between CDK and any potential acquirer or acquirers, including The Carlyle Group, Silver Lake, Vista Equity Partners, Bain Capital, Thoma Bravo, and Advent International (or any person acting on behalf of the foregoing), regarding the valuation of CDK, its subsidiaries, or any aspect of their business.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that communications, if any, with potential acquirers regarding valuations of CDK or its business have no bearing on the matters at

70

issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" such communications, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 71:** All documents regarding CDK's Fortellis Automotive Exchange, including all communications with dealers (including AutoNation, Lithia, Berkshire Automotive, Group One, and the Larry Miller Group) and vendors; historical data or projections regarding the costs of research and development, pricing, subscriptions, revenues, and profits.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents "regarding" the Fortellis Automotive Exchange ("Fortellis"), in any respect. In particular, the financial information and pricing and revenue data related to Fortellis called for in this Request appears to have no relevance to any party's claims or defenses and thus is beyond the scope of permissible discovery. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

71

Subject to and without waiving these or its General Objections, CDK states it is willing to meet and confer with Plaintiffs to understand why they believe this Request is relevant to the matters at issue in Plaintiffs' actions.

**REQUEST NO. 72:** All projections, forecasts, or other financial analyses regarding CDK's 3PA, OEM DCS, and/or DMI data services programs.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" projections, forecasts, or "other financial analyses" related to nearly every aspect of CDK's Data Services business, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 73:** All documents concerning the following conferences and/or meetings from 2009 to the present: the National Automobile Dealers Association Show; the Digital Dealer Conference & Expo; or any other industry conference. For the avoidance of doubt, this Request includes all documents concerning: the identity of any of Your employees that attended the conference and/or meeting; any booth or other exhibition space obtained by You; and the exhibitor list and/or floor plan for any such show.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks information that

72

is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that its participation (or not) at conferences and trade shows has no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents concerning the National Automobile Dealers Association Show, the Digital Conference & Expo, "or any other industry conference" from 2009 to the present, irrespective of their relevance to the claims and defenses at issue in Plaintiffs' actions. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Dealership Class Plaintiffs RFP Nos. 37-38.

 **REQUEST NO. 74:** All telephone records – whether landline or cell phone – reflecting calls made or received by any Reynolds employee and any employee of CDK from 2014 to the present.

 **RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks information that is harassing and not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that it is grossly overbroad and unduly burdensome in so far as it seeks *all* telephone records reflecting calls made or received by any Reynolds or CDK employee,

73

regardless of their subject matter, from 2014 to the present. Thousands of employees' telephone records are potentially implicated by this Request, which, as written, is not even limited to calls made *between* CDK and Reynolds employees. CDK further objects to this Request to the extent it seeks information not within CDK's possession, custody, or control and/or more readily available from third parties, including telephone carriers. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 75:** All telephone records – whether landline or cell phone – for Your document custodians from 2014 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it seeks information that is harassing and not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request on the ground that it is grossly overbroad and unduly burdensome in so far as it seeks *all* telephone records for *all* CDK document custodians, regardless of their subject matter, from 2014 to the present. CDK further objects to this Request to the extent it seeks information not within CDK's possession, custody, or control and/or more readily available from third parties, including telephone carriers. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 76:** All documents concerning any training provided by You to Your employees regarding antitrust or competition laws.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and not proportional to the needs of the case, and to the extent it is duplicative and seeks documents or information protected by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents that in any way concern "any training" provided to CDK employees regarding antitrust and

competition laws from an unlimited time period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Dealer Class Plaintiffs RFP No. 43.

Subject to and without waiving these or its General Objections, CDK states that to the extent they exist, are within CDK's possession, custody, and control, and can be identified through a reasonable search of appropriate sources, CDK will produce non-privileged written antitrust compliance policies and training materials distributed to employees in the normal course of business for the period January 1, 2013, to the date of CDK's collections.

**REQUEST NO. 77:**  All documents concerning CDK's Secure the DMS initiative.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.  Specifically, CDK objects to this Request as overbroad and unduly burdensome to the extent it seeks the production of "all" documents that in any way concern CDK's efforts to secure its DMS from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.  CDK

75

further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 20, 22, 23, 27, and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 78:** All Secure the DMS Dashboard Reports (*see*, *e.g*., CDK-0841086, at 87), including all data used to prepare such reports.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overbroad and unduly burdensome to the extent it seeks the production of not only "all" dashboard reports created in connection with CDK's "Secure the DMS" strategy, but "all data used to prepare such reports." CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production previously served upon CDK in this MDL, including Authenticom RFP Nos. 22 and 42.

Subject to and without waiving these or its General Objections, CDK states that it has already produced the data used to track non-authorized access to CDK's DMS and communications with dealers featured in the report referenced in this Request. *See, e.g.*, CDK-0720676; CDK-0720677; CDK-0720678; CDK-0720679; CDK-0720680; CDK-0720681; CDK-

0720682; CDK-0720683; CDK-0720684; CDK-0720685; CDK-0720686; CDK-0720687; CDK-0720688; CDK-0720689; CDK-0720690; CDK-0720691; CDK-0720692; CDK-0720693; CDK-0720694; CDK-0720695; CDK-0720696; CDK-0720697; CDK-0720698; CDK-0720699; CDK-0720700; CDK-0720701; CDK-0720702; CDK-0720703; CDK-0720704; CDK-0720705; CDK-0720706; CDK-0720707; CDK-0720708; CDK-0720709; CDK-0720710; CDK-0720711; CDK-0720712; CDK-0720713; CDK-0720714; CDK-0720715; CDK-0720716; CDK-0720717; CDK-0720718; CDK-0720719; CDK-0720720; CDK-0720721; CDK-2437144.

**REQUEST NO. 79:** All documents regarding access by ReverseRisk to CDK's DMS platform.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request on the grounds that the terms and conditions of access to CDK's DMS by one application among hundreds (if not thousands) is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents regarding ReverseRisk's access to CDK's DMS, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks discovery unrelated to the claims asserted by MVSC or AutoLoop and/or untimely and irrelevant additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that it will produce the Managed Interface Agreement and Statement of Work between CDK and ReverseRisk to the extent not otherwise produced in this litigation.

**REQUEST NO. 80:** All documents concerning "hostile integration" or use of non-authorized usernames or passwords to extract data from the CDK or Reynolds platforms.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents in any way related to "hostile integration" or the use of non-authorized DMS usernames or passwords, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 10, 11, 12, 13, 14, 16, 18, 19, 20, 22, 23, 24, and 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs. Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

78

**REQUEST NO. 81:** Documents sufficient to show CDK's revenue, profit (including profit margins), and costs for providing data integration services, on a monthly basis, from January 1, 2000, to the present, with the revenues, profits, and costs of 3PA, DMI, and IntegraLink broken out separately.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks revenue, profit and cost information for "data integration" services from 2000 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. Further, CDK's costs of providing data integration services with respect to its own DMS are not separable from its costs of providing DMS services, as data integration is part of the design and functionality of the DMS itself. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 57, 58, and 59, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 82:** Documents sufficient to show transactional sales data (including sales, profit, and cost data) on a per-customer and per-transaction basis for data integration services from January 1, 2006 to the present, with the data for 3PA, DMI, and IntegraLink broken out separately. For the avoidance of doubt, this Request includes, without limitation, the following data linked to each data integration service transaction:

    a. Date and location of transaction;
    b. Data integration service customer;
    c. Specific data integration service purchased;
    d. Information tied to the specific data integration service purchased, including the unit price, unit cost, quantity, and applicable discounts;
    e. CDK salesperson and applicable commission;

79

  f. Order number and other identifying order information; and

  g. Any documents necessary to interpret the contents of these data fields, including abbreviation keys and explanations.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of documents sufficient to show transactional sales data (including sales, profit and cost data) on a per-customer and per-transaction basis for "data integration" services from 2006 to the present. As written, this Request literally seeks the production of thousands upon thousands of invoices issued by CDK and two of its subsidiaries from over a 10+ year period. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 57-59, 65-66, 68-70, and 102 to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 83:** All reports and analyses pertaining to CDK's marketing and sales of data integration services from January 1, 2009 to the present, with information for 3PA, DMI, and IntegraLink broken out separately. For the avoidance of doubt, this Request includes, without limitation:

  a. Sales reports;

  b. Sales representative performance reports;

  c. Marketing plans;

  d. Marketing reports, including sales promotions and discounts;

  e. Strategic plans, including pricing strategy;

  f. Cost accounting reports;

g.     General ledger reports;
h.     Charts of accounts;
i.     Analyses of competitive position, including market share; and
j.     Profit and loss reports.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" reports, plans, and analyses of almost any kind related to CDK's data integration services from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.  CDK also objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 27, 58-60, 66 and 67, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 84:**  Documents sufficient to show CDK's projections with respect to revenue and profit for providing data integration services from January 1, 2009 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks revenue and profit projections for CDK's data integration services from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this

Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 85:** Documents sufficient to show CDK's projections with respect to costs for providing data integration services from January 1, 2009 to the present, with the projections for 3PA, DMI, and IntegraLink broken out separately.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks cost projections for CDK's data integration services from 2009 to the present. CDK's costs of providing data integration services with respect to its own DMS are not separable from its costs of providing DMS services, as data integration is part of the design and functionality of the DMS itself. Further, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 57, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 86:** All documents and communications concerning CDK's projections with respect to its data integration services from January 1, 2009 to the present. For the avoidance of doubt, this Request includes, without limitation, documents and communications

relating to estimates, forecasts, and budgets for revenue, profit, and costs associated with CDK's provision of data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents that in any way concern financial projections for CDK's data integration services from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP No. 60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 87:** All documents and communications concerning CDK's internal valuations of its data integration service businesses, separate and apart from its DMS business, from January 1, 2009 to the present, including, without limitation, valuations of 3PA, DMI, and IntegraLink.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's own internal business valuations are irrelevant to the claims or defenses in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to

83

the extent it seeks the production of "all" documents and communications that in any way concern CDK's internal valuations of its data integration services business from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 88:** All documents and communications concerning CDK's internal valuations of its DMS business, separate and apart from its data integration services, from January 1, 2009 to the present.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's own internal business valuations are irrelevant to any issue in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks the production of "all" documents and communications that in any way concern CDK's internal valuation of its DMS business from 2009 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 89:** All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of "all" documents and communications related to any "industry publications" and "reports" that in any context mention data integration services from 2009 to the present, regardless of their relevance to any issue in the litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 90:** All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to DMS services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents, information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome in that it seeks the production of "all" documents and communications related to any "industry publications and reports" that in any context mention DMS services from 2009 to the present, regardless of their

relevance to any issue in the litigation. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 91:** All documents and communications CDK relied upon from January 1, 2009 to the present in creating projections, estimates, forecasts, and budgets for revenue, profit, and costs associated with CDK's provision of data integration services.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative, seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as grossly overbroad and unduly burdensome to the extent it seeks the production of "all" documents and communications relied upon by CDK in creating projections, estimates, forecasts, and budgets associated with CDK's data integration services from 2009 to the present. Such a Request encompasses nearly every piece of financial information that CDK possesses or has ever possessed related to data integration. And, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom. CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not

86

limited to, Authenticom RFP Nos. 57-60, to which CDK has produced and is producing responsive documents subject to its objections.

**REQUEST NO. 92:**  Documents sufficient to show the number of connections CDK has established between a vendor and a dealer's data for purposes of transmitting dealer data to the vendor, broken down by customer, specific service (3PA, DMI, or IntegraLink), and date, from January 1, 2009 to the present.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to the use of the term "dealer data" in this Request as vague, ambiguous, and undefined.  CDK also objects to this Request on the grounds that it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery.  The number of data "connections" (as defined by Plaintiffs in this Request) that CDK maintains between vendors and dealers is irrelevant to any claim or defense in Plaintiffs' actions.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery of every such "connection," broken down by customer, specific service, and date, from 2009 to the present.  As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.

**REQUEST NO. 93:**  CDK's "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers (for 3PA, DMI, and IntegraLink, broken out separately) that CDK has lost every year since January 1, 2009, including the reasons the customer switched from a CDK data integration service to a non-CDK data integration service and the identity of the data integration service to whom the customer switched.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "win/loss" reports and other documents sufficient to show the "data integration" customers CDK has lost each year from 2009 to the present. CDK does not in the normal course of its business maintain "win/loss" reports or similar to track customer gains and losses, or the reasons for such gains or losses, outside of its core DMS business. Moreover, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show customers of CDK's 3PA program, DMI, and IntegraLink on a monthly basis—and therefore, which customers joined and left at various times—to the extent that such information exists and is within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 94:** CDK's "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers (for 3PA, DMI, and IntegraLink, broken out separately) that CDK has won every year since January 1, 2009, including the reasons

88

the customer switched to a CDK data integration service and the identity of the data integration service from whom the customer switched.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as overly broad and unduly burdensome to the extent it seeks "win/loss" reports and other documents sufficient to show the "data integration" customers CDK has won each year from 2009 to the present. CDK does not in the normal course of its business maintain "win/loss" reports or similar to track customer gains and losses, or the reasons for such gains or losses, outside of its core DMS business. Moreover, as noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely additional discovery on behalf of Authenticom.

Subject to and without waiving these or its General Objections, CDK states that it has already produced data sufficient to show customers of CDK's 3PA program, DMI, and IntegraLink on a monthly basis—and therefore, which customers joined and left at various times—to the extent that such information exists and is within CDK's possession, custody, and control. *See, e.g.*, CDK-0701423; CDK-0701424; CDK-0701425; CDK-0701426; CDK-0701427; CDK-0701428; CDK-0701429; CDK-0701430; CDK-0701431; CDK-0701432; CDK-0701433; CDK-0701434; CDK-0701435; CDK-0701436; CDK-0701437; CDK-0701438; CDK-0701439; CDK-0701440; CDK-0701441; CDK 0701442; CDK-0701443; CDK-0701444; CDK-0701445; CDK-0701446; CDK-0701447; CDK-0701448; CDK-0701449.

**REQUEST NO. 95:**  All documents and communications regarding the length of time to complete a request to receive data from or send data to a CDK DMS through the 3PA program.

**RESPONSE:**  CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to the use of the phrase "complete a request to receive data from or send data to a CDK DMS" as vague, ambiguous, and undefined.  Further, the amount of time that it takes a vendor to send or receive data through the 3PA program—however defined—is irrelevant to any issue in Plaintiffs' actions.  CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications related to such issues, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs' Complaints do not allege any potentially actionable conduct by CDK until much later than that.  CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 96:**  All documents and communications regarding making "push" functionality available for the 3PA program.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative, seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible

discovery. CDK incorporate its additional objections and response to "Individual Plaintiffs" RFP No. 19.

**REQUEST NO. 97:** All documents and communications regarding how frequently vendors are allowed to pull, poll, or transfer data from the CDK DMS.

**RESPONSE:** CDK objects to this Request as vague, overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, CDK objects to this Request as vague and ambiguous to the extent it does not specify whether it relates to data polling activities within the 3PA program or by some other means. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications regarding how frequently vendors can "pull," "poll," or "transfer" data from CDK's DMS, presumably under the 3PA program, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.  CDK further objects to this Request to the extent it is duplicative of other Requests for Production served upon CDK in this MDL, including, but not limited to, Authenticom RFP Nos. 5, 26 and 27.

Subject to and without waiving these or its General Objections, CDK states that it has already produced and is producing documents within its possession, custody, or control responsive to this Request in response to the Authenticom RFPs.  Answering further, CDK states that to the extent they exist and are within CDK's possession, custody and control, CDK will

produce additional non-privileged documents responsive to this Request identified through the use of additional search terms and custodians as may be agreed upon by the parties.

**REQUEST NO. 98:** All documents and communications regarding how CDK determined what kinds of data, information, or technical specifications to require vendors to provide as part of the 3PA certification process, including "workflow" models, live demonstrations of the add-on applications, justifications for how add-on applications use each data element, and the add-on application's security features.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, how CDK determines what kinds of information and data are necessary for vendors to provide as part of the 3PA certification process is irrelevant to any issue in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communications related to such requirements for 3PA certification, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 99:** All documents and communications regarding any CDK policies or guidelines designed to prevent competitively sensitive information submitted by vendors seeking 3PA certification from being shared with CDK's sales teams, add-on application development teams, or any other components of CDK other than those with direct responsibility for engineering the integration of the vendors' add-on applications with the CDK DMS.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information

92

protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's policies and procedures for handling competitively sensitive information exchanged in the course of the 3PA certification process is irrelevant to any issue in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communication related in any way to the handling of such information, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013. Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 100:** All documents and communications regarding information, data, or technical specifications shared by vendors with CDK as part of the 3PA certification process used by CDK for any purpose other than engineering the integration of the vendors' add-on applications with the CDK DMS, including, for example, development of applications by CDK.

**RESPONSE:** CDK objects to this Request as overly broad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks documents and information protected from disclosure by an applicable privilege, and seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK's handling of information provided by vendors in the course of the 3PA certification process is irrelevant to any issue in Plaintiffs' actions. CDK also objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents and communication related in any way to CDK's handling or use of such information, from the beginning of time to the present. As noted above, the limitations period applicable to Plaintiffs'

93

claims is, at most, four years from the filing of the first "Individual Plaintiff" complaint—February 3, 2013.  Further, Plaintiffs do not allege any potentially actionable conduct by CDK until much later than that. CDK further objects to this Request to the extent it seeks untimely and irrelevant additional discovery on behalf of Authenticom.

**REQUEST NO. 101:** All pictures of the cake from party for the one-year anniversary of the 2015 agreements between CDK and Reynolds.

**RESPONSE:** CDK objects to this Request as not relevant to any claim or defense and thus beyond the scope of permissible discovery.  CDK also objects to this Request to the extent it assumes that CDK attended any "party" to commemorate the February 2015 agreements between CDK and Reynolds, or that there was a cake, or that the cake (if it existed) had anything to do with CDK.

Subject to and without waiving these or its General Objections, CDK states that based upon a reasonable investigation, it is not aware of any documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 102:**  This RFP incorporates all RFPs propounded by the Dealer Class Plaintiffs and formally requests all documents sought by those RFPs.

**RESPONSE:**  CDK objects to this Request as untimely, duplicative, grossly overbroad, unduly burdensome, not proportional to the needs of the case, and to the extent it seeks information that is not relevant to any party's claims or defenses and thus is beyond the scope of permissible discovery. Specifically, CDK objects to this Request as untimely pursuant to Paragraph B.6 of the Court's May 7, 2018 Case Management Order.  CDK also objects to this Request as overly broad and unduly burdensome in that it purports to duplicate 48 other Requests for Production served on behalf of the Dealer Class Plaintiffs, many of which have no

94

bearing or relevance to the "Individual Plaintiffs'" claims or any defenses thereto. This Request also violates the Case Management Order's directive for the parties to serve "additional, *non-duplicative*, coordinated discovery requests" on or before May 25, 2018.

Subject to and without waiving these or its General Objections, CDK states that to the extent it produces documents in response to the Dealer Class Plaintiffs' RFPs, those documents will in the normal course be provided to all other parties in the MDL.

Dated: June 22, 2018                    Respectfully submitted,


*/s/ Matthew Provance*
Britt M. Miller
Matthew D. Provance
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com


*Counsel for Defendants*
*CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Matthew D. Provance, an attorney, certify that I caused a copy of the foregoing **CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO "INDIVIDUAL PLAINTIFFS'" FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Matthew Provance*

# Exhibit M

# Exhibit N