**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to:<br>*Authenticom, Inc. v. CDK Global, LLC*, *et al.*,<br>Case No. 1:18-cv-00868 (N.D. Ill.) | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffery T. Gilbert |

**AUTHENTICOM, INC.'S REPLY IN SUPPORT OF
ITS PARTIAL MOTION TO DISMISS THE COUNTERCLAIMS OF
THE REYNOLDS AND REYNOLDS COMPANY**

**INTRODUCTION**

Reynolds devotes most of its opposition brief to matters other than Authenticom's motion, which seeks dismissal only of Reynolds's counterclaim for conversion. To be clear, Authenticom has not, contrary to Reynolds's assertion, conceded the legal sufficiency of any of Reynolds's other claims and will raise its legal challenges at summary judgment.

Moreover, Authenticom's defenses to Reynolds's counterclaims are bound up with its affirmative antitrust claims. As the Court held in its Memorandum Opinion and Order, even assuming that Reynolds's contracts do not authorize access by dealers' agents, "Defendants are not free to withhold [authorization for Authenticom to access their DMSs] pursuant to illegal arrangements." Dkt. 176 at 21. Reynolds's argument that the Computer Fraud and Abuse Act ("CFAA") is a "kill shot" to Authenticom's antitrust claims thus gets things exactly backward: if Reynolds withheld authorization in violation of the antitrust laws, it cannot recover under the CFAA. Moreover, this Court has already rejected Reynolds's argument that the CFAA is its get-out-of-jail-free card, holding that "Defendants may be able to state valid cyber-security claims

against Authenticom *and* Authenticom may be able to state valid antitrust claims against Defendants." *Id*. at 19 (emphasis in original).

Contrary to Reynolds's contention (at 4 n.2), the Court's holding remains highly "pertinent" to this litigation, because Reynolds's counterclaims are not "independent" of Authenticom's antitrust claims. *See id*. at 20-21 ("In this case, unlike in those cases, Authenticom's as-alleged practices are not illegal independent of Defendants' challenged conduct."). Although Authenticom chose not to replead its claims that Reynolds's contracts with dealers were themselves anticompetitive tying and exclusive dealing, it has sufficiently alleged that Reynolds intensified its efforts to exclude Authenticom pursuant to unlawful group-boycott and market-division agreements with CDK. Even assuming Reynolds's DMS contract prohibits third-party access, Reynolds itself repeatedly allowed third parties to use dealer credentials to access the DMS when doing so suited Reynolds. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *9 (W.D. Wis. July 14, 2017) (observing that "Reynolds already allows many exceptions to its 'no hostile integration' policy"). As the Court held, Reynolds cannot recover on its counterclaims if its denial of access was the product of its unlawful conspiracy with CDK.

As to the actual issue before the Court, Reynolds's claim for conversion should be dismissed because Reynolds has not plausibly alleged that Authenticom's limited access to Reynolds's DMS – as authorized by Reynolds's dealer customers – so seriously interfered with Reynolds's ownership rights in its DMS that Authenticom should be ordered to pay the full value of the DMS, as required to state a claim for conversion. Reynolds's allegations on this score are inadequate as a matter of law.

## ARGUMENT

### I. Reynolds Fails To State a Claim for Conversion

It is undisputed that the standard for the "serious interference" element of conversion is whether "there has been so serious a violation [of Reynolds's ownership rights] that [Authenticom] should justly be required to pay the full value of the chattel." Restatement (Second) of Torts § 228 cmt. d; *accord, e.g.*, *Bruner v. Heritage Companies*, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999) (conversion requires showing that intentionally controlling property without the owner's consent resulted in "serious interference with the rights of the owner to possess the property"); *see also* Reynolds Opp. at 6, Dkt. 336. While Reynolds focuses on the factors that inform that inquiry under the Restatement (Second) of Torts, it skirts the ultimate question: whether Authenticom's use of the DMS effectively divested Reynolds of its right of control over the DMS. As the Restatement (Second) of Torts explains, conversion is "an exercise of . . . control over the chattel, as distinguished from a mere interference with the chattel itself." Restatement (Second) of Torts § 222A cmt. a; *see also FMC Corp. v. Capital Cities/ABC, Inc.*, 915 F.2d 300, 304 (7th Cir. 1990) ("The gravamen of the tort of conversion is the *deprivation* of the possession or use of one's property."). "Conversion is therefore properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value." Restatement (Second) of Torts § 222A cmt. c.

Under the correct legal standard, Reynolds's allegations do not plausibly establish an interference that rises to the level of a deprivation of control. Reynolds's principal allegation describing Authenticom's purported interference states that Authenticom "[u]se[d] . . . the DMS PC software program" to "send[] instructions to the Reynolds-owned server systems, which execute the instructions and send back a response." Counterclaim Compl. ¶ 163, Dkt. 225.

Similarly, Reynolds references (at 7) "automated scripts that Authenticom uses [to] 'ping' the DMS with computing requests." Counterclaim Compl. ¶ 99. But, critically, at no point does Reynolds allege that Authenticom's "use" of Reynolds's DMS prevented Reynolds, dealers, or anyone else from using the DMS. Nor could Reynolds plausibly make any such claim, as it does not deny that Authenticom accessed the Reynolds DMS pursuant to express dealer authorization and solely for the limited purpose of accessing the data that the dealers themselves were authorized by Reynolds to access. Authenticom in no way interfered with anyone else's use of the system.

For that reason, Reynolds's citation (at 8) of the Restatement's illustration regarding unauthorized use of a desk misses the mark. A desk may only be used by one person at a time. A person that uses another person's desk every day for six months has deprived the desk's owner of the use and enjoyment of the desk for that entire period. But, unlike a desk, the DMS can be – and is – used by many users at the same time. Likewise, data on the DMS can be accessed by multiple users at once. Thus, Authenticom's access to data stored on the DMS on behalf of dealers does nothing to interfere with the use of the DMS by any other person, including Reynolds itself. *Cf. FMC Corp.*, 915 F.2d at 303-04 (finding that plaintiff had stated a claim for conversion because "the owner, FMC, does not have a copy of the documents known to be in the possession of the alleged converter," and noting by contrast that "[i]n cases where the alleged converter has only a copy of the owner's property and the owner still possesses the property itself, the owner is in no way being deprived of the use of his property.").

Moreover, the fact that *dealers* are indisputably authorized to access the DMS – and to obtain the very same data Authenticom obtained on the dealers' behalf – proves that Authenticom's conduct could not plausibly have constituted conversion (even assuming it was unauthorized). Reynolds has, at most, an objection to the *identity* of the party accessing the DMS,

4

but it has ceded, by contract, any objection to the act of accessing the data or the DMS. The fact that dealers chose to use a third party to access the data rather than do so on their own does not create any incremental "interference" with the DMS and certainly does not constitute such a drastic interference as to deprive Reynolds of its right of ownership of the DMS, such that Authenticom should be required to pay for its full value.

The two cases Authenticom cited in its motion for partial dismissal, *DIRECTV, Inc. v. Massey*, 2004 WL 1194744 (N.D. Ill. May 27, 2004) and *SCS Healthcare Mktg., LLC v. Allergan USA, Inc.*, 2012 WL 6565713 (N.J. Super. Ch. Dec. 7, 2012), demonstrate that courts are reluctant to find conversion where, as here, there is no plausible allegation that Reynolds was denied control of its DMS. The factual differences between these cases and the instant case do not, as Reynolds claims (at 8-10), detract from this principle.

In *Massey*, DIRECTV brought a conversion claim on the basis that the defendant used a pirating device to unlawfully intercept DIRECTV's satellite signals. *See* 2004 WL 1194744, at *4. The court dismissed the conversion claim because "DIRECTV has not alleged that any of the [satellite] signals sent to its paying customers were disrupted as a result of [defendant's] interception [of those signals] or that DIRECTV was somehow unable to enjoy the benefit of those signals sent out." 2004 WL 1194744, at *4. And in *SCS Healthcare Mktg.*, the court allowed a trespass to chattels claim to survive, while dismissing a conversion claim, noting that "an action for trespass to chattels is favored" over an action for conversion "in the context of unauthorized computer access," because "unauthorized access to a computer does not deprive the owner of the value and/or use of the computer, as is typically required to sustain an action in conversion." 2012 WL 6565713. Like DIRECTV in *Massey*, Reynolds has failed to allege that it is unable to provide DMS services to its customers as a result of Authenticom's access to the DMS. And consistent

with the court's observation in *SCS Healthcare Mktg.*, Reynolds has not plausibly alleged that Authenticom's access to Reynolds's DMS – which is identical to the access Reynolds authorized to its dealer customers – deprived Reynolds or its customers of the value or use of the DMS. Reynolds accordingly fails to state a claim for conversion.

## CONCLUSION

The Court should dismiss Reynolds's conversion claim.

Dated:  September 7, 2018                              Respectfully submitted,


                                                       _/s/ Derek T. Ho_____

Jennifer L. Gregor                                     Derek T. Ho
Kendall W. Harrison                                    Michael N. Nemelka
**GODFREY & KAHN S.C.**                                Aaron M. Panner
One East Main Street, Suite 500                        Daniel V. Dorris
Madison, WI 53703                                      Joanna T. Zhang
(608) 257-0609                                         Joshua Hafenbrack
jgregor@gklaw.com                                      Christine Bonomo
kharrison@gklaw.com                                    **KELLOGG, HANSEN, TODD,**
                                                        **FIGEL & FREDERICK, P.L.L.C.**
                                                       1615 M Street, NW, Suite 400
                                                       Washington, D.C. 20036
                                                       (202) 326-7900
                                                       dho@kellogghansen.com
                                                       mnemelka@kellogghansen.com
                                                       apanner@kellogghansen.com
                                                       ddorris@kellogghansen.com
                                                       jzhang@kellogghansen.com
                                                       jhafenbrack@kellogghansen.com
                                                       cbonomo@kellogghansen.com

                   *Attorneys for Authenticom, Inc.*

7

**CERTIFICATE OF SERVICE**

I, Derek T. Ho, an attorney, hereby certify that on September 7, 2018, I caused a true and correct copy of the foregoing **AUTHENTICOM INC.'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS THE COUNTERCLAIMS OF THE REYNOLDS AND REYNOLDS COMPANY** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.

    */s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

8