# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to:<br>*Authenticom, Inc. v. CDK Global, LLC, et al.,*<br>Case No. 1:18-cv-00868 (N.D. Ill.) | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffery T. Gilbert<br><br>**PUBLIC-REDACTED** |

## AUTHENTICOM, INC.'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS THE COUNTERCLAIMS OF CDK GLOBAL, LLC

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................. 1

    I.  CDK FAILS TO PLEAD PLAUSIBLY THAT AUTHENTICOM IS NOT THE
       DEALERS' AUTHORIZED "AGENT" ......................................................................... 1

        A.  CDK's Dealer Contracts Unambiguously Authorize Dealers To Permit Access By
        Their "Agents" ............................................................................................... 1

        B.  CDK Has Not Plausibly Alleged That Authenticom Does Not Act as the Dealers'
        Agent ............................................................................................................ 6

    II. ALL OF CDK'S COUNTERCLAIMS FAIL TO STATE A CLAIM ............................... 9

        A.  CFAA and Parallel Wisconsin and California Laws (Counts 1, 4, 6) ..................... 9

        B.  DMCA (Count 2) ......................................................................................... 10

        C.  Defend Trade Secrets Act / Misappropriation of Trade Secrets (Counts 3, 5) ....... 11

        D.  Trespass to Chattels (Count 9) ..................................................................... 12

        E.  Conversion (Count 10) ................................................................................. 13

        F.  Unjust Enrichment (Count 11) ...................................................................... 14

        G.  Fraud (Count 12) ........................................................................................ 15

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

## CASES

*Authenticom, Inc. v. CDK Global, LLC*,
2017 WL 3017048 (W.D. Wis. July 14, 2017) .......................................................... 7

*Automation By Design, Inc. v. Raybestos Prods. Co.*,
463 F.3d 749 (7th Cir. 2006) ............................................................................ 2, 3

*AutoMed Techs., Inc. v. Eller*,
160 F. Supp. 2d 915 (N.D. Ill. 2001) ...................................................................... 11

*BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*,
572 F.3d 353 (7th Cir. 2009) ............................................................................. 4, 8

*Boles v. Merscorp, Inc.*,
2008 WL 3971557 (C.D. Cal. Aug. 26, 2008) .............................................................. 14

*Bourke v. Dun & Bradstreet Corp.*,
159 F.3d 1032 (7th Cir. 1998) .............................................................................. 3

*Bruner v. Heritage Cos.*,
593 N.W.2d 814 (Wis. Ct. App. 1999) .................................................................... 13

*Chatterplug, Inc. v. Digital Intent, LLC*,
2016 WL 6395409 (N.D. Ill. Oct. 28, 2016) ............................................................... 11

*Cohabaco Cigar Co. v. U.S. Tobacco Co.*,
1998 WL 773696 (N.D. Ill. Oct. 30, 1998) ................................................................ 12

*Composite Marine Propellers, Inc. v. Van Der Woude*,
962 F.2d 1263 (7th Cir. 1992) ............................................................................. 11

*Cunningham v. Village of Sauget, Ill.*,
2007 WL 2410109 (S.D. Ill. Aug. 23, 2007) ................................................................ 3

*DIRECTV, Inc. v. Massey*,
2004 WL 1194744 (N.D. Ill. May 27, 2004) ............................................................... 13

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ........................................................................... 9, 10

*Fed. Armored Exp., Inc. v. Harris Tr. & Sav. Bank*,
1995 WL 124254 (N.D. Ill. Mar. 20, 1995) ................................................................. 5

*Geinosky v. City of Chicago*,
   675 F.3d 743 (7th Cir. 2012) .......................................................................... 7

*Hernandez ex rel. Gonzalez v. Tapia*,
   2010 WL 5232942 (N.D. Ill. Dec. 15, 2010) ................................................ 2

*Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*,
   51 F.3d 1336 (7th Cir. 1995) .......................................................................... 3

*Jackson v. Bank of New York*,
   2012 WL 2503956 (N.D. Ill. June 28, 2012) ................................................ 6

*Johnson v. Anderson*,
   2006 WL 2524125 (S.D. Ind. Aug. 29, 2006) ............................................... 6

*Keller v. United States*,
   58 F.3d 1194 (7th Cir. 1995) ..................................................................... 5, 6

*Kuligowska v. GNC Franchising, Inc.*,
   2002 WL 32131024 (W.D. Pa. Nov. 25, 2002) ........................................... 14

*Matter of Lade's Estate*,
   260 N.W.2d 665 (Wis. 1978) ...................................................................... 14

*McLeodUSA Telecomms. Servs., Inc. v. Qwest Corp.*,
   469 F. Supp. 2d 677 (N.D. Iowa 2007) ................................................. 13, 14

*Midwestern Helicopter, LLC v. Coolbaugh*,
   839 N.W.2d 167 (Wis. Ct. App. 2013) ....................................................... 13

*Navistar, Inc. v. New Balt. Garage, Inc.*,
   2012 WL 4338816 (N.D. Ill. Sept. 20, 2012) ........................................ 10, 11

*Priority Int'l Animal Concepts, Inc. v. Bryk*,
   2012 WL 1995113 (E.D. Wis. June 1, 2012) ............................................ 2, 8

*Restoration Specialists, LLC v. Hartford Fire Ins. Co.*,
   2009 WL 3147481 (N.D. Ill. Sept. 29, 2009) ............................................... 7

*Travelers Indem. Co. v. Bailey*,
   557 U.S. 137 (2009) ...................................................................................... 4

*United Nat'l Ins. Co. v. Fasteel, Inc.*,
   550 F. Supp. 2d 814 (N.D. Ill. 2008) ........................................................... 4

*Universal Forest Prods. E. Div., Inc. v. Morris Forest Prods., LLC*,
   558 F. Supp. 893 (E.D. Wisc. 2008) ........................................................... 14

*Wald v. Chicago Shippers Ass'n*,
    529 N.E.2d 1138 (Ill. App. Ct. 1988) ........................................................................ 5

*Walker v. Trailer Transit, Inc.*,
    824 F.3d 688 (7th Cir. 2016) .................................................................................... 9

*Watts v. Watts*,
    405 N.W.2d 303 (Wis. 1987) ................................................................................... 14

*Wis. Tel. Co. v. Reynolds*,
    87 N.W.2d 285 (Wis. 1958) ..................................................................................... 12

**STATUTES**

17 U.S.C. § 1201(a)(3)(A) ............................................................................................ 10

17 U.S.C. § 1201(a)(3)(B) ............................................................................................ 10

18 U.S.C. § 1030(a)(2)(C) ............................................................................................. 9

18 U.S.C. § 1839(6) ..................................................................................................... 11

Wis. Stat. § 134.90(2) .................................................................................................. 11

**OTHER AUTHORITIES**

Black's Law Dictionary (8th ed. 2004) .......................................................................... 2

Restatement (First) of Torts, § 218 (1934) ................................................................... 12

Restatement (Second) of Agency § 441 (1958) .............................................................. 7

Restatement (Second) of Torts § 218 (1965) ................................................................ 13

Restatement (Second) of Torts § 222A (1965) .............................................................. 13

Restatement (Third) of Agency § 1.01 (2006) ................................................................ 6

Restatement (Third) of Agency § 1.02 (2001) ................................................................ 8

## INTRODUCTION

CDK acknowledges that the viability of its counterclaims depends on whether it has adequately alleged that Authenticom engaged in "*unauthorized* access to CDK's [DMS]." Opp. at 1, Dkt. 337 (emphasis added). If Authenticom's access was *authorized* by CDK's contracts with dealers, its claims fail. CDK's arguments on that central issue founder on the plain language of those contracts, which expressly authorize not only dealers themselves but dealers' "agents" to access the DMS. CDK has not plausibly alleged – and cannot plausibly allege – that Authenticom is not acting as the dealers' agent when it accesses the CDK DMS with dealers' authorization, to obtain dealers' data on dealers' behalf, for dealers' benefit. Indeed, that is the hornbook definition of a common-law agency relationship. And it is the position that CDK took for years (before its conspiracy with Reynolds) when CDK loudly and repeatedly stated that using independent integrators like Authenticom "is the dealer's right." *See infra* pp. 4-5.

CDK's argument that other provisions of the contract indicate a general intent to restrict third-party access – and its insistence that CDK would not have agreed, as a matter of business judgment, to allow dealers to determine who could access their own data on CDK's DMS, even though that was the exact position CDK took before its conspiracy with Reynolds – is doomed by the plain language of its agreements with dealers. The contract spells out in clear terms who is authorized to access the DMS: dealers' "employees and agents." This Court should construe those words straightforwardly, and conclude that they foreclose CDK's counterclaims.

## ARGUMENT

### I. CDK FAILS TO PLEAD PLAUSIBLY THAT AUTHENTICOM IS NOT THE DEALERS' AUTHORIZED "AGENT"

#### A. CDK's Dealer Contracts Unambiguously Authorize Dealers To Permit Access By Their "Agents"

CDK's standard DMS contract with dealers, known as the "Master Services Agreement," or "MSA," expressly provides that dealers may permit "█████████████" to access the DMS on the dealers' behalf.  *See, e.g.*, July 2015 MSA, § 6(D), Dkt. 276-4; *see generally* Authenticom Mem. at 2-3, Dkt. 276 (describing the CDK MSA's standard terms).   As the Court held in *Hernandez ex rel. Gonzalez v. Tapia*, 2010 WL 5232942, at *7 (N.D. Ill. Dec. 15, 2010), "[t]he phrase 'agents and employees' is not ambiguous," and "the plain meaning of th[o]se terms" should be applied on a motion to dismiss.  Likewise, the Seventh Circuit has recognized that the term "agent" unambiguously means "[o]ne who is authorized to act for or in place of another; a representative."  *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 757 (7th Cir. 2006) (alteration in original) (quoting Black's Law Dictionary (8th ed. 2004)).  Many other cases are to the same effect.  *See* Authenticom Mem. at 6 (citing cases).

CDK tries (at 7) to dismiss *Hernandez* on the ground that it "did not hold that those words are always unambiguous in every contract."  But the fact that the court did not purport to resolve future cases does not detract from the force of *Hernandez*'s reasoning, which is that "employees and agents" is a well-worn phrase with a longstanding and commonly understood meaning that can be determined as a matter of law.  *See also Priority Int'l Animal Concepts, Inc. v. Bryk*, 2012 WL 1995113, at *5 (E.D. Wis. June 1, 2012) ("Agency status is a question of law").  Likewise, CDK's contention (at 7) that *Automation by Design* was a summary judgment case also misses the point, which is that the term "agent," when used in a commercial contract, has an unambiguous legal meaning.  Indeed, in *Automation by Design* the Seventh Circuit specifically declined to consider any parol evidence from discovery in deciding the agent question, because "resort to extrinsic evidence is unavailable given the lack of ambiguity in the agreement."  463 F.3d at 754.

CDK repeatedly says that the contract is "ambiguous" and "far from clear." But CDK cannot manufacture ambiguity regarding a commonly used term simply by saying that it disagrees with its plain meaning. *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995) ("[T]he court must not create an ambiguity where none exists; a clear and unambiguous provision must be applied as written."); *Automation by Design*, 463 F.3d at 754 ("The language of a contract is not ambiguous simply because the parties disagree as to the meaning of the terms.").[1] And CDK fails to offer arguments based in applicable principles of contract interpretation to support a reasonable alternative construction. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1039 (7th Cir. 1998) ("In Illinois, '[a]n instrument is ambiguous only if the language used is reasonably or fairly susceptible to having more than one meaning.'") (internal quotations omitted); *id.* (rejecting appellants' argument that the contract at issue is ambiguous because "[a]ppellants have failed to show that their interpretation is reasonable").

First, CDK's argument (at 6, 10) that "agent" cannot be given its ordinary meaning because sections 4(B) and 4(D) of the CDK dealer agreement prohibit third-party access ignores the key language of those two provisions. Section 4(D) says dealers "█████████████████████████████ ███████████████████████████████████████████████," *see* Counterclaim Compl. ¶ 71 (Dkt. 229), and section 4(B) says that dealers shall not permit "████████████ █████████████████████████████████████████████████████████████████

---

[1] During the two-and-one-half day Authenticom preliminary injunction proceedings, Chief Judge Peterson reviewed CDK's dealer contracts and observed that "[i]t does seem that CDK allows the dealer to designate agents." Prelim. Inj. Hr'g Tr., *Authenticom* Dkt. 166, at 100:5-6. That observation is of course not binding on this Court, but CDK is wrong to suggest (at 6 n.1) that statements made by a federal judge in open court are not subject to judicial notice. *See Cunningham v. Village of Sauget, Ill.*, 2007 WL 2410109, at *6 n.3 (S.D. Ill. Aug. 23, 2007) (court can take judicial notice of "matters of public record" on a Rule 12(b)(6) motion).



," *id.*[2]  Because § 6(D) specifically permits dealers to designate " █████████████ " to access the DMS on the dealer's behalf, access by authorized agents is " ███████████ " and not prohibited by § 4(B) or § 4(D).

Indeed, the " █████████████████████████ " proviso confirms that §6(D) *does* permit dealers to authorize access by dealers' third-party agents.  If §6(D) did not do so, the " █████████████████████ " proviso would be surplusage, given that CDK has pointed to no other provision of the contract to which that proviso could refer.  *BKCAP, LLC v. CAPTEC Franchise Trust 2000-1*, 572 F.3d 353, 362 (7th Cir. 2009) ("[C]ourts must . . . give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.") (alteration in original).

Second, CDK's argument (at 7) that the Court cannot give "agents" its ordinary meaning because it is "exceedingly unlikely" and "strains credulity" that CDK would have agreed to let dealerships' agents to access the DMS is also unavailing because a party's subjective intent (here, CDK's business motives) is not relevant to proper contract interpretation, especially in the absence of an ambiguity on the face of the agreement.  *E.g.*, *United Nat'l Ins. Co. v. Fasteel, Inc.*, 550 F. Supp. 2d 814, 824 (N.D. Ill. 2008) ("[T]he subjective intent of the parties is irrelevant where contractual language is clear."); *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009) ("[I]t is black-letter law that the terms of an unambiguous private contract must be enforced irrespective of the parties' subjective intent.").  CDK cannot use self-serving, after-the-fact assertions about what it intended to circumvent the plain meaning of the language to which it agreed.

---

[2] As CDK notes, *see* Counterclaim Compl. ¶ 73 n.52, before 2017, these provisions appeared in Section 6 of the MSA.  *See* July 2015 MSA, Dkt. 276-4 (§ 6(B) and § 6(D), respectively).

Moreover, CDK's allegations contradict CDK's binding admissions[3] that it engaged in a years-long public campaign touting that CDK dealers have the "right" to access their data using third-party data integrators, including Authenticom. *See* Authenticom Mem. at 5 (CDK public statement, among many, that agent access "is the dealer's right. We have no right to tell them they can't do that."). Exactly as CDK said they could, thousands of CDK dealers therefore used Authenticom and other independent integrators to access their data. *See* CDK Answer ¶ 77, Dkt. 229. It thus does *not* "strain credulity" (at 7) to believe that CDK permitted dealers to authorize third-party access: CDK admittedly did just that, publicly and loudly. Thus, even if the contract were ambiguous, under Illinois law, where "the parties themselves have placed a construction on the language by their conduct, that construction should be adopted by the court." *Fed. Armored Exp., Inc. v. Harris Tr. & Sav. Bank*, 1995 WL 124254, at *3 (N.D. Ill. Mar. 20, 1995); *see also Wald v. Chicago Shippers Ass'n*, 529 N.E.2d 1138, 1147 (Ill. App. Ct. 1988) ("Further, where the terms of a contract are doubtful or uncertain and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts."). It was only after CDK entered into its 2015 conspiracy with Reynolds that it switched its contractual construction. The language of its DMS contracts did not change, however, leaving the unambiguous right of dealers to use "agents" like Authenticom.[4]

_____

[3] CDK has admitted that it repeatedly made public statements regarding the right of dealers to use independent integrators. *See* CDK Answer ¶¶ 68-70, Dkt. 229. That constitutes a judicial admission – a formal concession that is binding on CDK in this litigation. *See Keller v. United* States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (noting that "formal concessions in the pleadings" are "judicial admissions" that "are binding upon the party making them").

[4] As Authenticom's Motion demonstrated (at 10 & n.5), CDK's purported change to its standard dealer contracts – made in late 2017 after CDK lost at the *Authenticom* preliminary injunction hearing and was sued by its dealers in multiple class actions in this MDL – cannot save CDK's counterclaims. CDK made no argument to the contrary in its opposition brief, and has therefore waived any such argument.

**B.    CDK Has Not Plausibly Alleged That Authenticom Does Not Act as the Dealers' Agent**

**1.**    CDK has not plausibly alleged that Authenticom's access to the DMS was unauthorized because the facts alleged make clear that Authenticom was acting as the dealers' agent when it pulled dealer data on behalf of those dealers and subject to their control.  CDK's counterclaims allege that Authenticom provided its services using "*dealer-issued* login credentials *from a computer running on the dealers' network*."  Counterclaim Compl. ¶ 44 (emphases added); *see also id.* ¶ 41; *see* Authenticom Mem. at 3-4.  Those allegations establish, as a matter of law, that Authenticom was the dealers' agent because it acted with the dealers' permission and under the dealers' control.  *See Jackson v. Bank of New* York, 2012 WL 2503956, at *2 (N.D. Ill. June 28, 2012) (agency relationship established when the principal has "the right to control the manner that the work is done"); Restatement (Third) of Agency § 1.01.  These allegations constitute judicial admissions for purposes of this motion and they are enough to plead CDK out of court. *See Johnson v. Anderson*, 2006 WL 2524125, at *3 n.4 (S.D. Ind. Aug. 29, 2006) ("[A] statement incorporated into the complaint is a binding judicial admission" through which a plaintiff "can plead himself out of court" (second quotations omitted) (citing *Keller*, 58 F.3d at 1198 n.8).

Even putting these admissions aside, moreover, CDK's counterclaims offer no concrete factual allegations that Authenticom acts *without* dealer authorization or *outside* the dealers' control, as required to state a claim.  CDK argues (at 8) that "*Authenticom* has not shown . . . that dealers exercise sufficient control over Authenticom's 'undertaking' to make Authenticom their agent."  But that gets the pleading burden backwards.  It is *CDK's* obligation under *Twombly* and *Iqbal* to make concrete, non-conclusory, and plausible factual allegations that Authenticom was an unauthorized user on the CDK DMS, despite the dealer's contractual right to designate agents to access the DMS on its behalf.  The counterclaims contain no such allegations.  Nor did CDK

attempt to supplement its factual allegations in its opposition brief, as it could have done. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). CDK offers no allegation to suggest that Authenticom ever acted without dealers' authorization and approval. *Accord Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *2 (W.D. Wis. July 14, 2017) ("With the dealer's consent, Authenticom accesses the dealer's data on its DMS."); *see id.* ("[T]he data to which Authenticom has access is controlled by the dealer.").[5]

CDK also briefly suggests (at 8) that Authenticom cannot be an agent of the dealers because vendors pay in the first instance for data integration services. But *payment* is not the measure of agency. *Cf.* Restatement (Second) of Agency § 441 cmt. a (1958) ("Unless the circumstances create a restitutional duty, a principal has no duty to pay compensation to an agent for services rendered in the absence of a promise to pay for them."). To give an example, a lawyer can serve as her client's agent, even though a third party is paying the fee. The question is who authorizes Authenticom to engage in the act in question – accessing dealer data on the CDK DMS. And CDK's own counterclaims acknowledge that dealers, not vendors, authorize Authenticom's access, provide Authenticom with login credentials, and control the categories of data to which Authenticom has access. *See* Authenticom Mem. at 3-4; *Authenticom*, 2017 WL 3017048, at *2. Thus, Authenticom's relationship with vendors has no bearing on the plain meaning of CDK's dealer contracts or whether Authenticom acts with dealer authorization.

**2.** Authenticom's contracts with dealers, which CDK now argues (at 8-9) can be considered on a motion to dismiss, also negate the plausibility of CDK's claim that Authenticom

---

[5] *Restoration Specialists, LLC v. Hartford Fire Ins. Co.*, 2009 WL 3147481 (N.D. Ill. Sept. 29, 2009) is inapposite because, in that case, the plaintiff plausibly alleged alternative theories that the defendant was either an agent or a subagent for purposes of evaluating an insurance policy. *Id.* at *3. The court could not decide that issue on a motion to dismiss. Here, however, CDK offers no factual allegations that, if proven, would establish that Authenticom is not acting as the dealers' agent when it provides data integration services.

lacked authorization to access the DMS.  The DealerVault Terms and Conditions, *see* Dkt. 273-6, make abundantly clear that Authenticom provides DealerVault's services for the *dealerships'* use and under the *dealerships'* direction.  The dealership is "solely responsible" for the actions of DealerVault's users, who control DealerVault's access to the dealership data on the DMS.  *Id.* § 3.2; *see generally* § 3.0 (governing dealerships' "Use of [Authenticom's] Services").  Moreover, the contract makes clear that "DealerVault shall only extract the Dealership Data that the *Dealership* permits DealerVault to extract."  *Id.* § 3.4 (emphasis added).  The Terms and Conditions thus establish an agency relationship as a matter of law.

The contract's specification that the parties are in an "independent contractor" rather than "employment agency" relationship is not in tension with that conclusion.  As an initial matter, the existence of an agency depends on the reality of the parties' relationship, not the labels the parties adopt, *see* Restatement (Third) of Agency § 1.02, and here the contract makes clear that Authenticom is acting under dealers' direction and control.  At any rate, as Authenticom demonstrated in its Motion (at 9), independent contractors often are agents – a point CDK does not dispute.  *See Animal Concepts*, 2012 WL 1995113, at *5 (rejecting argument that an independent contractor could not be an agent on a motion to dismiss).[6]  And the parties' disclaimer of an "*employment* agency" confirms the reality of their relationship – although Authenticom acts as an agent, it is not the dealerships' employee.[7]  CDK's suggestion that the Court should read the

---

[6] CDK tries to distinguish *Animal Concepts* on the ground that the contract there alternatively referred to the defendant as both an agent and an independent contractor.  *See* 2012 WL 1995113, at *5.  But that just proves the point:  a party can be an agent for some purposes and an independent contractor for others.

[7] CDK argues (at 9) that "employment agency" cannot be interpreted as an "employment" relationship without violating the canon against rendering words surplusage, but that is not true:  reading "employment agency" to mean "the employment type of agency relationship" *does* give effect to every word of the contract, as that canon requires.  *See CAPTEC Franchise Trust*, 572 F.3d at 362.

provision as though the parties had disclaimed *any* agency relationship (by inserting a comma between "employment" and "agency") would not only contravene the reality of the parties' relationship but also violate the fundamental principle that courts do not "rewrite contracts after the fact to favor one side." *Walker v. Trailer Transit, Inc.*, 824 F.3d 688, 690 (7th Cir. 2016).

## II.    ALL OF CDK'S COUNTERCLAIMS FAIL TO STATE A CLAIM

All of CDK's claims depend on the allegation that Authenticom accessed CDK's DMS *without authorization*. Because CDK has not plausibly alleged that Authenticom lacked such authorization, those claims should be dismissed under Rule 12(b)(6). Several of CDK's counterclaims fail to state a claim for additional reasons as well.

### A.    CFAA and Parallel Wisconsin and California Laws (Counts 1, 4, 6)

CDK's claims that Authenticom violated the Computer Fraud and Abuse Act ("CFAA") (Count One) and the parallel Wisconsin (Count Four) and California (Count Six) statutes hinge on the contention that Authenticom obtains "unauthorized" access to CDK's DMS. *See* 18 U.S.C. § 1030(a)(2)(C). But, for the reasons described above, CDK makes no plausible allegation that Authenticom's access was unauthorized.

CDK's argument (at 11-12) that Authenticom can violate the CFAA even though its access was expressly authorized under CDK's dealer contracts is meritless. As shown above, Authenticom was an authorized user on the CDK DMS so long as it acted as the dealer's agent. CDK could not revoke that authorization simply by telling Authenticom that it would prefer that the access had not been granted. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) is inapposite, because the agreement between Facebook and its users prohibited users from sharing credentials for accessing the site. The defendant in that case could no longer "reasonably . . . have thought" that Facebook users had the right to authorize its access once Facebook informed the defendant (via a cease-and-desist letter) that users had no such right under Facebook's terms

9

and conditions. *Id.* at 1067. Here, dealers have the contractual right to authorize Authenticom as their agent to access the DMS on their behalf; CDK's contrary assertion does not change that.

### B. DMCA (Count 2)

CDK's argument (at 13) that "Authenticom did not simply use dealer-provided credentials without authorization," but instead "circumvented" CDK's measure of "disabling credentials used by integrators" cannot be squared with precedent from this Court, which holds that use of a password does not "circumvent" a password prompt. *Navistar, Inc. v. New Balt. Garage, Inc.,* 2012 WL 4338816, at *5 (N.D. Ill. Sept. 20, 2012). By the same token, the use of features built into CDK's software to re-enable passwords cannot meet the statutory definition of circumvention. Under the statute's definition, circumvention requires the defendant to "descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair *a technological measure.*" 17 U.S.C. § 1201(a)(3)(A) (emphasis added). As this Court held in *Navistar*, the Digital Millennium Copyright Act requires "circumvention" of the access-controlling technological measure itself; using software's built-in features as they were designed to operate "does not involve descrambling, decrypting, or otherwise avoiding, bypassing, removing, deactivating, or impairing a 'technological measure.'" 2012 WL 4338816, at *5.

CDK's arguments concerning "challenge prompts" fail for the same reason. CDK relies on an out of circuit district court authority to focus on the *intent* of its technological measures, but nowhere in the statute does the *intent* of a system matter. What matters is whether a technological measure "effectively controls access," *see* 17 U.S.C. § 1201(a)(3)(B), and whether *that measure* is circumvented as defined by the statute, *id.* § 1201(a)(3)(A). Clearly, the *intent* of the passwords in *Navistar* was to control access to the system, but, as this Court ruled, simply providing required information (whether a password or a response to a "challenge prompt" or CAPTCHA) does not

meet the statutory definition of circumvention, even if such interaction is contrary to the desires of the system's designer.  2012 WL 4338816, at *5.

### C. Defend Trade Secrets Act / Misappropriation of Trade Secrets (Counts 3, 5)

CDK's claims for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA) and Wisconsin Uniform Trade Secrets Act ("WUTSA") are fatally defective because Authenticom's use of the DMS was authorized, as explained above in Part I.  *See* 18 U.S.C. § 1839(6) ("improper means" of access to a trade secret "does not include . . . any . . . lawful means of acquisition"); Wis. Stat. § 134.90(2) (same).

In addition, these claims should be dismissed for the independent reason that CDK fails to articulate any legally cognizable trade secrets taken by Authenticom.  As an initial matter, Authenticom accesses only dealer data, which is not CDK's trade secret.  Moreover, while CDK refers to "forms, accounting rules, tax tables, and proprietary tools and data compilations," Counterclaim Compl. ¶¶ 23, 115, 127, there is nothing inherently secret about any of these, and CDK alleges no "concrete secrets" that the Seventh Circuit requires to state a viable claim. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992) (per curiam).  CDK defends the sufficiency of its vague allegations (at 15-16) by arguing that more specificity could "compromise" its purported trade secrets, relying on *Chatterplug, Inc. v. Digital Intent, LLC*, 2016 WL 6395409, at *3 (N.D. Ill. Oct. 28, 2016) and *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915 (N.D. Ill. 2001).  But a specific description of material and why it is secret need not reveal anything confidential, and this Court's cases make clear that, though a party need not disclose the *details* of a purported secret at the pleading stage, it still has to give the opposing party sufficient information to discern what is at issue.  *Chatterplug*, 2016 WL 6395409, at *3 ("[Plaintiff] is not required to compromise its trade secrets, but *Defendants are entitled to be able to discern what trade secrets are at issue*.") (emphasis added); *AutoMed*, 160 F. Supp. 2d at 920

("It is *not enough to point to broad areas of technology* and assert that something there must have been secret and misappropriated.") (internal quotation marks omitted).[8] CDK's allegations fall far short of that requirement. *See*, *e.g.*, *Cohabaco Cigar Co. v. U.S. Tobacco Co.*, 1998 WL 773696, at *9 (N.D. Ill. Oct. 30, 1998) (holding that plaintiff's "repeated allegations of defendant misappropriation of general business information, marketing plans, strategies and other 'confidential and proprietary information' do not satisfy the Seventh Circuit's requirement of pleading concrete, protectable trade secrets").[9]

### D. Trespass to Chattels (Count 9)

As CDK acknowledges (at 16-17), trespass to chattels occurs only when "[o]ne who *without a consensual* or other privilege to do so" uses or interferes with chattel in the possession of another. *E.g.*, *Wis. Tel. Co. v. Reynolds*, 87 N.W.2d 285, 288 (Wis. 1958) (emphasis added) (quoting Restatement (First) of Torts, § 218). Because Authenticom accessed the DMS as a dealer agent and with dealer authorization, CDK's trespass claim must be dismissed. CDK attempts to salvage it by contending that, even crediting Authenticom's interpretation of the MSA, CDK began blocking Authenticom's access in 2015, and therefore its access was not consensual. But the fact remains that CDK had already granted express permission – in a formal contract – to dealers and their agents to access the DMS. CDK was not entitled unilaterally to withdraw that consent in derogation of its own written agreements. *See* July 2015 MSA, § 18(A), Dkt. 276-4 ("█████

---

[8] Moreover, CDK could have filed secret details under seal – including in its opposition to this motion. (As the Court is aware, filings under seal are hardly exceptional in this case.)

[9] As noted in Authenticom's Motion (at 17), the one purported trade secret that CDK arguably alleged with more particularity – "proprietary programs" to "calculate the expected monthly payment for a financed car deal" – fails to qualify as a protectable trade secret because it is little more than a basic math calculation. In its opposition, CDK restyles this "secret," claiming protection over the data sets plugged in to the calculating tool, rather than the calculating tool itself (at 16 n.6). But CDK cannot claim that the data sets are its trade secret, when that data is owned by the *dealers*, not CDK. *See Authenticom* MTD Op. at 7, Dkt. 176.

████████████████████████████████████████████████████.").  As a result, CDK cannot now maintain a claim for trespass to chattels against one of those agents, Authenticom.  Restatement (Second) of Torts § 218 cmt. b. (1965) (noting that if "the possessor consents to the actor's trespass, the actor is not liable to him").

### E.  Conversion (Count 10)

Because CDK authorized Authenticom to access the DMS, there can be no conversion as a matter of law.  *See*, *e.g.*, *Midwestern Helicopter, LLC v. Coolbaugh*, 839 N.W.2d 167, 170 (Wis. Ct. App. 2013).  Even assuming that dealers did not authorize Authenticom's access, the claim is deficient because, at most, CDK claims that Authenticom accesses the DMS to run search queries and extract data – that is far from the sort of "serious interference" CDK needs to allege to state a plausible claim.  *Bruner v. Heritage Cos.*, 593 N.W.2d 814, 818 (Wis. Ct. App. 1999).

In response, CDK merely points again (at 17) to its own inadequate allegations and asserts that these suffice.  But conversion is "an exercise of . . . control over the chattel, as distinguished from a mere interference with the chattel itself."  Restatement (Second) of Torts § 222A cmt. a.  It is thus "properly limited, and has been limited by the courts, to those *serious*, *major*, and *important* interferences with the right to control the chattel which justify requiring the defendant to pay its full value."  *Id*. § 222A cmt. c (emphasis added).  Authenticom's (authorized) access of the DMS to run search queries does not plausibly fit that rubric.  *See*, *e.g.*, *DIRECTV, Inc. v. Massey*, 2004 WL 1194744 (N.D. Ill. May 27, 2004) (dismissing conversion claims for alleged interference with satellite broadcasts because there were no allegations that the interference deprived the plaintiff owner of the right to use the signals).[10]

---

[10] CDK's only authority is one out-of-circuit case, *McLeodUSA Telecomms. Servs., Inc. v. Qwest Corp.*, 469 F. Supp. 2d 677 (N.D. Iowa 2007).  But *McLeodUSA* is distinguishable.  There the defendant, a telephone service provider, filed counterclaims alleging that the plaintiff, another telephone service provider, regularly routed calls from its customers over the defendant's network.  *Id.* at 682.  The defendant

### F.     Unjust Enrichment (Count 11)

CDK clarifies for the first time in its opposition that it intended to plead unjust enrichment under Wisconsin law.[11]  Under that state's law, CDK's pleadings are inadequate.  In Wisconsin, "an action for recovery based on unjust enrichment is grounded on the moral principle that one who has received a benefit has a duty to make restitution *where retaining such a benefit would be unjust*."  *Watts v. Watts*, 405 N.W.2d 303, 313 (Wis. 1987) (emphasis added).  But here, dealers engaged Authenticom as their agent pursuant to the express terms of their MSAs.  As such, any benefit Authenticom received was permitted, not *unjust*.  *See Universal Forest Prods. Eastern Div., Inc. v. Morris Forest Prods., LLC*, 558 F. Supp. 893, 908 (E.D. Wis. 2008) (rejecting unjust enrichment claim where the benefit was contractually authorized).  Moreover, for a party to state a viable unjust enrichment claim, that party must have actually conferred a benefit on the opposing party.  *See Matter of Lade's Estate*, 260 N.W.2d 665, 668 (Wis. 1978).  The benefits CDK alleges were conferred on Authenticom – access to the DMS and payment by vendors – were conferred by *dealers* and *vendors*, not CDK.

---

alleged that it lost revenue it would have earned as a result.  *Id.*  Here, CDK merely alleges – in a conclusory manner – that the search queries can reduce the efficiency of the DMS.  It never alleges that the search queries have actually cost CDK money, or seriously impeded CDK's ability to operate the DMS.  *See* Counterclaim Compl. ¶¶ 49-56.  That is not enough to state a conversion claim.

[11] CDK's complaint failed to specify the state law source for its unjust enrichment claim.  As Authenticom demonstrated (at 19-21), courts have repeatedly dismissed allegations of unjust enrichment on that ground alone.  In response, CDK argues that the Court can evaluate its unjust enrichment claim notwithstanding its failure to identify the relevant state law, pointing to *Boles v. Merscorp, Inc.*, 2008 WL 3971557 (C.D. Cal. Aug. 26, 2008) and *Kuligowska v. GNC Franchising, Inc.*, 2002 WL 32131024 (W.D. Pa. Nov. 25, 2002).  Both cases, however, are inapposite, because neither concerns whether a plaintiff must plead an unjust enrichment claim with specificity.  *See Merscorp*, 2008 WL 3971557, at *1 (observing that a *quiet title* claim arose under California law because the property at issue was located in California); *Kuligowska*, 2002 WL 32131024, at *8 (accepting plaintiffs' averment that its economic duress claim arose under Arizona law, but subsequently rejecting the Arizona claim because of a choice of law provision).

### G.     Fraud (Count 12)

CDK's fraud allegations suffer from two significant flaws, neither of which CDK's opposition adequately cures. *First*, CDK fails to allege a material misstatement of fact. In CDK's view, Authenticom's "YES" answer in response to a CAPTCHA prompt asking if it was "an authorized dealer employee" qualifies as such a statement. But, as established, Authenticom was an authorized dealer agent. The terms of CDK's contract with dealers draw no distinction between the dealers' employees and its agents – it permits *both* to access the DMS. Since being a dealer "employee" versus "agent" makes no difference under the terms of the MSA, CDK cannot allege that such a difference is "material."

CDK does not dispute that there is no material difference between an authorized "employee" and an authorized "agent." Instead, it responds (at 19) that it viewed Authenticom as different from any other authorized dealer employee or agent and that it did not condone its access. But the CAPTCHA prompt did not require Authenticom to identify itself. It just prompted it to verify it was authorized. Authenticom made no material misstatement by answering "YES," as dealers directed it to do.

*Second*, CDK cannot plausibly plead damages from justifiable reliance. CDK argues (at 20) that it was not "obvious" that Authenticom was accessing the DMS. But given that Authenticom was *authorized* to do so pursuant to the MSA and its contracts with dealers – and given that CDK repeatedly and publicly confirmed that dealers had the right to use independent integrators like Authenticom – CDK had ample reason to know that Authenticom would access dealer data on the dealers' behalf.

### CONCLUSION

The Court should dismiss CDK's counterclaims.

Dated:  September 7, 2018                           Respectfully submitted,


                                                     _/s/ Derek T. Ho_____
Jennifer L. Gregor                                  Derek T. Ho
Kendall W. Harrison                                 Michael N. Nemelka
**GODFREY & KAHN S.C.**                             Aaron M. Panner
One East Main Street, Suite 500                     Daniel V. Dorris
Madison, WI 53703                                   Joanna T. Zhang
(608) 257-0609                                      Joshua Hafenbrack
jgregor@gklaw.com                                   Christine Bonomo
kharrison@gklaw.com                                 **KELLOGG, HANSEN, TODD,**
                                                     **FIGEL & FREDERICK, P.L.L.C.**
                                                    1615 M Street, NW, Suite 400
                                                    Washington, D.C. 20036
                                                    (202) 326-7900
                                                    dho@kellogghansen.com
                                                    mnemelka@kellogghansen.com
                                                    apanner@kellogghansen.com
                                                    ddorris@kellogghansen.com
                                                    jzhang@kellogghansen.com
                                                    jhafenbrack@kellogghansen.com
                                                    cbonomo@kellogghansen.com

                    *Attorneys for Authenticom, Inc.*

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that on September 7, 2018, I caused a true and correct copy of the foregoing **AUTHENTICOM INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE COUNTERCLAIMS OF CDK GLOBAL, LLC** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

 */s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

17