# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION ) ) ) ) ) ) ) ) ) | MDL No. 2817 Case No. 1:18-CV-00864 Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |

**DOMINION DECLARATION IN SUPPORT OF DOMINION'S
REPLY TO MOTION TO MODIFY CONFIDENTIALITY ORDER**

I, Alan Andreu, declare and state as follows:

1. I submitted a declaration in this matter on August 3, 2018. Dominion's counsel has asked me to provide more detail on the categories of Dominion documents that could lead to harm to Dominion if trial counsel used or divulged to R&R or CDK the confidential information contained in Dominion's documents.

2. As I stated in my first declaration, Dominion offers a DMS and numerous software applications that compete directly with R&R and CDK. If trial counsel unintentionally passed along to R&R or CDK confidential information regarding Dominion's general competitive strategy (including but not limited to our sales approach and product roadmap), R&R and CDK could use that information to competitively disadvantage Dominion. For example, if Dominion was developing a new feature for its DMS or one of its applications, R&R and CDK could obtain advance notice of that feature. They could then develop a similar feature more quickly than if they were unaware of the feature until Dominion announced the feature to the market. Trial counsel might divulge carelessly or otherwise a new feature of an application when providing advice on whether

1

Dominion's application features were within the set of features permitted pursuant to Dominion's Statement of Work or other agreement ancillary to its certification for an application (hereafter referred to as a "SOW"). The SOW is the document that provides the necessary description of the application and authorizes the Dominion application to retrieve car dealer data from R&R's or CDK's DMS pursuant to the certification.

3. I am not just concerned about R&R and CDK getting a jump on developing a new DMS or application feature. R&R and CDK have put themselves in a position where Dominion is dependent on them for car dealer data necessary for many Dominion applications to function. If R&R or CDK decided that they cannot introduce a comparable feature soon enough, they might cut off Dominion's ability to retrieve data through R&R's or CDK's integration application by terminating the certification agreement or refusing to renew it, or by restricting the data available to Dominion applications. Without the certification, Dominion's applications would not have access to the dealer data its applications need to function, thereby endangering the viability of the Dominion businesses that compete with CDK and R&R. Without certain fields of data, innovation also is quashed.

4. An episode that I recounted in my first declaration offers another example of how R&R or CDK could harm Dominion. As I testified, R&R's certification contract prevents Dominion from disclosing the price of integration to dealers. In 2012, faced with being cut off from its dealers' data, Dominion paid R&R $75,000 for allegedly breaching its contract by disclosing to dealers the cost of R&R's integration. I am concerned that one of the defendants would ask trial counsel for legal advice concerning whether Dominion is adhering to the terms of its certification agreement. Trial counsel may confusedly think it sees a breach of the certification agreement as a result of reviewing Dominion's

2

confidential documents. Trial counsel might accidentally convey that information to its client and that might result in Dominion paying a substantial fine. Dominion must pay the fine or risk cancellation of its certification. R&R or CDK might go beyond a fine and simply use the alleged breach as an excuse to terminate Dominion's certification, which would be devastating to many of Dominion's applications.

5. As I testified in my first declaration, Dominion's SelectQu is an integration application that competes with R&R's and CDK's integration application. R&R and CDK might ask trial counsel whether Dominion's use of SelectQu is in breach of its certification agreement. I am concerned that trial counsel might erroneously interpret something in Dominion's confidential documents suggesting a breach. If trial counsel unintentionally conveys this information to R&R or CDK, I am worried that R&R or CDK would claim a breach and either fine Dominion or terminate Dominion's certification, putting several applications in jeopardy. Alternatively, R&R or CDK might insist that Dominion withdraw SelectQu from the market if it wishes to retain its certification and its concomitant access to car dealer data in R&R's or CDK's DMS.

6. In my first declaration, I testified that CDK used its negotiating leverage over Dominion to demand access to Dominion's CRM roadmap, which, of course, is competitively sensitive information that Dominion does not want to be in a competitor's hands. Dominion provided its roadmap to CDK because otherwise CDK would not certify Dominion's use of CDK's 3PA integration. Dominion now offers a different CRM. I am worried that CDK trial counsel will review documents related to the present CRM and CDK will ask its trial counsel whether Dominion's CRM is operating in a way that is consistent with the description in the SOW covering the CRM. CDK's trial counsel may

3

then let slip some confidential information in Dominion's CRM roadmap. If CDK is displeased with the direction that Dominion is taking with its CRM, CDK could use it as an excuse to terminate the CRM's certification or it might demand that Dominion reverse the direction of its CRM if it wishes to remain certified.

7. As I testified in my first declaration, Dominion is entirely reliant on R&R and CDK to run its business. I have set forth herein examples of how R&R or CDK can harm Dominion's business if trial counsel improperly discloses or misuses Dominion's confidential information. While these examples are illustrative, they do not exhaust the ways that disclosure or misuse of Dominion's confidential information could harm Dominion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 11, 2018.

*[signature]*

Alan Andreu

4