# EXHIBIT 3



## CIVIL INVESTIGATIVE DEMAND
### Written Interrogatories and Report

| 1. TO | 2. FROM |
|---|---|
| Dominion Enterprises<br>c/o Jon Leibowitz, Esq.<br>Davis Polk & Wardwell LLP<br>901 15th Street, N.W.<br>Washington, D.C. 20005 | **UNITED STATES OF AMERICA**<br>**FEDERAL TRADE COMMISSION** |

This demand is issued pursuant to Section 20 of the Federal Trade Commission Act, 15 U.S.C. §57b-1, in the course of an investigation to determine whether there is, has been, or may be a violation of any laws administered by the Federal Trade Commission by conduct, activities or proposed action as described in Item 3.

3. SUBJECT OF INVESTIGATION

CDK Global, Inc.'s Proposed Acquisition of the Auto/Mate, Inc., File No. 171-0156 (See attached resolution).

You are required by this demand to answer the interrogatories on the attached schedule or provide the written report described on the attached schedule. Answer each interrogatory or report separately and fully in writing. Submit your answers or report to the Records Custodian named in Item 6 on or before the date specified in Item 4.

| 4. DATE ANSWERS OR REPORT MUST BE SUBMITTED | 5. COMMISSION COUNSEL |
|---|---|
| August 28, 2017 | Alicia Burns-Wright, Esq. 202-326-2347<br>James Abell, Esq. 202-326-2289 |

| 6. RECORDS CUSTODIAN | 7. DEPUTY RECORDS CUSTODIAN |
|---|---|
| Dominic Vote, Esq., Records Custodian | Matthew Gessesse, Esq., Deputy Records Custodian |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| August 3, 2017 | |

### INSTRUCTIONS AND NOTICES

The delivery of this demand to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply. The answers or report in response to this demand must be submitted under a sworn certificate, in the form printed on the second page of this demand, by the person to whom this demand is directed or, if not a natural person, by a person or persons responsible for answering each interrogatory or report question. This demand does not require approval by OMB under the Paperwork Reduction Act of 1980.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this demand be filed within 20 days after service, or, if the return date is less than 20 days after service, prior to the return date. The original and twelve copies of the petition must be filed with the Secretary of the Federal Trade Commission, and one copy should be sent to the Commission Counsel named in Item 5.

### YOUR RIGHTS TO REGULATORY ENFORCEMENT FAIRNESS

The FTC has a longstanding commitment to a fair regulatory enforcement environment. If you are a small business (under Small Business Administration standards), you have a right to contact the Small Business Administration's National Ombudsman at 1-888-REGFAIR (1-888-734-3247) or www.sba. gov/ombudsman regarding the fairness of the compliance and enforcement activities of the agency. You should understand, however, that the National Ombudsman cannot change, stop, or delay a federal agency enforcement action.

The FTC strictly forbids retaliatory acts by its employees, and you will not be penalized for expressing a concern about these activities.

A copy of the Commission's Rules of Practice is available online at http://bit.ly/FTCRulesofPractice. Paper copies are available upon request.

FTC Form **142** (rev. 3/03)

## Form of Certificate of Compliance*

I/We do certify that all of the information required by the attached Civil Investigative Demand which is in the possession, custody, control, or knowledge of the person to whom the demand is directed has been submitted to a custodian named herein.

If an interrogatory or a portion of the request has not been fully answered or portion of the report has not been completed the objection to such interrogatory or uncompleted portion and the reasons for the objection have been stated.

Signature _____

Title_____

Sworn to before me this day

_____    _____

_____
Notary Public

_____

*In the event that more than one person is responsible for answering the interrogatories or preparing the report, the certificate shall identify the interrogatories or portion of the report for which each certifying individual was responsible.  In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

**CIVIL INVESTIGATIVE DEMAND**
**ISSUED TO DOMINION ENTERPRISES**
**FTC FILE NO. 171-0156**

Unless modified by agreement with the staff of the Federal Trade Commission, each Specification of this Civil Investigative Demand ("CID") requires a complete search of "the Company" as defined in Paragraph D 1 of the Definitions, which appear after the following Specifications. If the Company believes that the required search or any other part of the CID can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss any questions and possible modifications with the Commission representative identified in Instruction I 10 of this CID. All modifications to this CID must be agreed to in writing pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(l).

## SPECIFICATIONS

1.  \* List each Relevant Product developed or sold by the Company in the Relevant Area, and for each:

    (a)  provide a detailed description of the Relevant Product, including a description of each constituent software module or suite, each programming language used to develop the Relevant Product, and the Relevant Product's end uses;

    (b)  identify and describe in detail each certification, approval, endorsement, or partnership with an OEM or other Person related to the Relevant Product, including the purpose of each;

    (c)  describe each update or enhancement to the Relevant Product made since January 1, 2015, and identify the date each update or enhancement was made available to customers. Describe each planned update or enhancement to the Relevant Product and identify the date each update or enhancement is expected to be made available to customers. As used in this Specification, updates or enhancements include, but are not limited to, the addition of new features or functionality, upgrades, or changes in software versions. As used in this Specification, updates or enhancement exclude regular maintenance, de-bugging, or other minor software changes; and

    (d)  state the brand name and the division, subsidiary, or affiliate of the Company that develops or sells or has developed or sold the Relevant Product.

\* Before beginning to prepare a response to Specification 1(c), the Company is encouraged to discuss any questions, including regarding the scope of information sought, with the Commission representative identified in Instruction I 10.

2. For each Relevant Product listed in response to Specification 1 above, state or provide:

(a) the Company's Sales to all customers in the Relevant Area since January 1, 2013, stated separately in units and dollars;

(b) all costs incurred by the Company related to the Sales identified in response to Specification 2(a), including but not limited to production costs, marketing costs, distribution costs, support costs, standard costs, expected costs, and opportunity costs;

(c) the names and addresses of the 20 Persons who purchased, separately, the largest unit and dollar amounts of the Relevant Product;

(d) for DMS products only, the name, estimated Sales, and estimated market share of the Company and each of the Company's competitors in the Relevant Area in the development or sale of the Relevant Product;

(e) for DMS products and data integration services only, a description of all security policies or protocols; and

(f) for DMS products and data integration services only, a description of any security breaches, events, or incidents, including any remedial measures or steps taken by or on behalf of the Company.

3. State the location of each facility, operated by the Company or another Person, that develops, sells, installs, or supports any Relevant Product sold in the Relevant Area by the Company, and for each such facility state:

(a) the number of Persons involved in the following functions:

(i) development of each Relevant Product;

(ii) sales of each Relevant Product;

(iii) customer service for each Relevant Product; and

(iv) installation for each Relevant Product;

(b) the largest, smallest, and median annual gross compensation, in dollars, for the Persons involved in the functions identified in Specification 3(a)(i)-(iv); and

(c) the current capacity and the annual capacity utilization rate of the Persons

2

involved in the functions identified in Specification 3(a)(i)-(iv), separately for the development, sale, support, and installation of each Relevant Product, specifying all factors used to calculate capacity and the feasibility of increasing capacity 20%, including the costs and time required. As used in this Specification, "capacity" refers to the productivity of the Persons involved in the development, sale, installation, or support of each Relevant Product.

4.    ** For each Relevant Product in the Relevant Area, compile and submit one or more Data Sets from any database used or maintained by the Company at any time after January 1, 2013, that contains or discusses discount requests or approvals (including rebates and other promotions), sales personnel call reports, meeting competition requests or approvals, customer relationships, or transaction-level Sales and customer account data for any customer, including, but not limited to:

(a)    the customer name;

(b)    the customer address;

(c)    the number of rooftops maintained by the customer, if any, on the transaction date; and the number of rooftops maintained by the customer, if any, as of the date the customer account was terminated or, if the customer account was not terminated, the last date such information is available;

(d)    the identity of each OEM with which the customer maintained a franchise agreement, if any, on the transaction date; and the identity of each OEM with which the customer maintained a franchise agreement, if any, as of the date the customer account was terminated or, if the customer account was not terminated, the last date such information is available;

(e)    the date of the transaction;

(f)    the date the customer relationship was terminated, if any;

(g)    the revenue by unit and dollars, separately for each month;

(h)    the costs and margin, separately for each month;

(i)    the number of expected users of the Relevant Product on the transaction date; and the number of actual users for each Relevant Product as of the date the customer account was terminated or, if the customer account was not terminated, the last date such information is available;

(j)    the product code(s);

3

(k)     a description of each Relevant Product, and each constituent software module or suite, purchased by the customer; and

(l)     for each customer of a DMS product, the number of new and used cars sold and the number of vehicle maintenance service and parts orders as of the transaction date; and the number of new and used cars sold and the number of vehicle maintenance service and parts orders as of the date the customer account was terminated, or, if the customer account was not terminated, the last date such information is available.

** The Company should consult Instruction I 4 regarding the inclusion of Sensitive Personally Identifiable Information or Sensitive Health Information in a Data Set(s) responsive to Specification 4.

5.     Identify, and provide documents or Data Sets sufficient to show, each occasion since January 1, 2011, that the Company (i) submitted a bid or negotiated to provide or sell any Relevant Product in or from the Relevant Area; or (ii) declined to submit a bid or negotiate to provide or sell any Relevant Product in or from the Relevant Area. For each such occasion, state or provide:

(a)     the date the request for proposal, inquiry, or other solicitation for bids or offers was received;

(b)     information about the Person that requested or received the bid, including the Person's address, the number of rooftops maintained by the Person, and the identity of each OEM with which the Person maintained a franchise agreement;

(c)     the identity of the incumbent provider(s), if any, of the Relevant Product(s) included in the bid request;

(d)     the request for proposal, inquiry, or other solicitation for the bid, including any proposed specifications, request for information, or request for quotation;

(e)     if applicable, the terms of the Company's final bid, including, but not limited to, any aspects relating to price or quantity (e.g., incentives not to switch; rebates, pre-bates, cash awards, etc.; the product/services covered; the geography covered); the terms of any non-final Company bid, including any bids submitted in rounds prior to the final round; the date each Company bid was submitted; and, if applicable, the round in which each Company bid was considered;

(f)     if applicable, the pricing methodology or calculations the Company used for its bid(s), and all factors considered in determining the bid price and other terms;

(g)    an itemized breakdown of the Company's estimated total, fixed, and variable costs, and the Company's gross margin, relating to each bid;

(h)    the reason the Company declined to bid, if applicable;

(i)    the identity of each Person that submitted a competing bid, the terms of each competing bid, and the round in which each such bid was considered;

(j)    the date that the contract was awarded or that the Company expects it to be awarded;

(k)    if applicable, the identity of the Person(s) to whom the contract or order was awarded, the price and terms of the winning bid(s), and the products or services included in the winning bid(s); and

(l)    whether the Company won the contract or order, and if so, state the Company's actual Sales by Relevant Product; the total, fixed, and variable costs incurred by the Company; and the margin earned by the Company, pursuant to the contract.

6.    For each Relevant Product, identify or describe (including the bases for your response):

(a)    the requirements for entry into the production or sale of the Relevant Product in the Relevant Area including, but not limited to, research and development, planning and design, production requirements, distribution systems, service requirements, patents, licenses, sales and marketing activities, OEM or other certification requirements, and any necessary governmental and customer approvals, and the time necessary to meet each such requirement;

(b)    the requirements to obtain each certification, approval, endorsement, or partnership identified in Specification 1(b), including but not limited to research and development, planning and design, production requirements, distribution systems, service requirements, patents, licenses, sales and marketing activities, and any necessary governmental and customer approvals, and the time necessary to meet each such requirement;

(c)    the requirements to obtain and maintain access to the Company's or any other Person's DMS for add-on applications developed or data integration services provided by the Company or any other Person, including but not limited to research and development, planning and design, production requirements, distribution systems, service requirements, patents, licenses, sales and marketing activities, and any necessary governmental and customer approvals, and the time necessary to meet each such requirement;

5

(d)    the total costs required for entry into the production or sale of the Relevant Product in the Relevant Area; the amount of such costs that would be recoverable if the entrant were unsuccessful or elected to exit the development or sale of the Relevant Product; the methods and amount of time necessary to recover such costs; and the total Sunk Costs entailed in satisfying the requirements for entry;

(e)    barriers to entry into the production or sale of the Relevant Product in the Relevant Area, including but not limited to network and customer lock-in effects; and

(f)    possible new entrants into the development or sale of the Relevant Product in each Relevant Area.

## DEFINITIONS

For the purposes of this CID, the following Definitions apply:

D 1.    The term "Company" means Dominion Enterprises; its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between the Company and any other Person.

D 2.    The term "add-on application" refers to applications that integrate with or compliment the DMS.

D 3.    The term "core dealer management system" or ("DMS") means the enterprise resource planning software used in automotive dealerships. The DMS is comprised of several software modules or suites that address designated aspects of dealership operations, such as accounting, finance and insurance, and service and parts management.

D 4.    The term "data integration" refers to all programs, processes, or initiatives related to the transfer of information between the DMS and add-on applications, including information management, optimization, monitoring, and security.

D 5.    The term "Data Set" means all or a subset of data held by, or accessible to, the Company in the normal course of business provided by the Company to respond to any Specification in this CID.

D 6.    The term "documents" means any information, on paper or in electronic format, including computer files and written, recorded, and graphic materials of every kind, in the possession, custody, or control of the Company. The term "documents" includes, without limitation: email messages; audio files; instant messages; drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed electronically; copies of documents that are not identical duplicates of the originals in that Person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company.

   (a)    Unless otherwise specified, the term "documents" excludes:

      (i)    bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature;

      (ii)    architectural plans and engineering blueprints;

      (iii)    documents solely relating to environmental, tax, human resources, OSHA,

7

or ERISA issues; and

(iv)    relational and enterprise databases, except as required to comply with an individual Specification.

(b)    The term "computer files" includes information stored in, or accessible through, computer or other information retrieval systems. Thus, the Company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off Company premises. If the Company believes that the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss a possible modification to this Definition with the Commission representatives identified on the last page of this CID. The Commission representative will consider modifying this Definition to:

(i)    exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from files that exist in personal computers, portable computers, workstations, minicomputers, mainframes, and servers searched by the Company;

(ii)    limit the portion of backup disks and tapes and archive disks and tapes that needs to be searched and produced to certain key individuals, or certain time periods or certain Specifications identified by Commission representatives; or

(iii)    include other proposals consistent with Commission policy and the facts of the case.

D 7.    The term "original equipment manufacturer" or ("OEM") means any manufacturer of automobiles, any Person authorized to act on behalf of a manufacturer of automobiles in the Relevant Area, or any Person authorized to distribute the manufacturer's automobiles in the Relevant Area.

D 8.    The term "Person" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

D 9.    The term "relating to" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or stating.

D 10.    The terms "and" and "or" have both conjunctive and disjunctive meanings.

D 11.   The term "Sales" means net sales (i.e., total sales after deducting discounts, returns, allowances and excise taxes). "Sales" includes Sales of the Relevant Product whether provided by the Company itself or purchased from sources outside the Company and resold by the Company in the same manufactured form as purchased.

D 12.   The term "Relevant Product" as used herein means:

    (a)   DMS products, and information shall be provided separately for each DMS product;

    (b)   add-on applications, and information shall be provided separately for each add-on application; and

    (c)   data integration services, and information shall be provided separately for each data integration service.

D 13.   The term "Relevant Area" means the United States.

D 14.   The term "Sunk Costs" means the acquisition costs of tangible and intangible assets necessary to develop and sell the Relevant Product that cannot be recovered through the redeployment of these assets for other uses.

## INSTRUCTIONS

For the purposes of this CID, the following Instructions apply:

I 1.    All references to year refer to calendar year. Unless otherwise specified, each of the Specifications calls for information for each of the years from January 1, 2015, to the present. Provide information separately for each year; where yearly data is not yet available, provide data for the calendar year to date. If calendar year information is not available, supply the Company's fiscal year data indicating the 12-month period covered, and provide the Company's best estimate of calendar year data.

I 2.    This CID shall be deemed continuing in nature so as to require production of all documents responsive to any Specification included in this CID produced or obtained by the Company up to 30 calendar days prior to the date of the Company's full compliance with this CID.

I 3.    The Company or its attorney must contact the Commission staff representatives identified in Instruction I 10 as soon as possible to schedule a meeting (telephonic or in person) to be held within fourteen (14) days after receipt of this CID to discuss compliance and to address and attempt to resolve all issues, including issues relating to protected status and the form and manner in which claims of protected status will be asserted. Pursuant to 16 C.F.R. § 2.7(k), the Company must make available personnel with the knowledge necessary for resolution of the issues relevant to compliance with this CID, including but not limited to personnel with knowledge about the Company's information or records management systems, relevant materials such as organizational charts, and samples of material required to be produced. If any issues relate to electronically-stored information, the Company must make available a person familiar with its electronically-stored information systems and methods of retrieval.

I 4.    Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") prior to discussing the information with a Commission representative. If any document responsive to a particular Specification contains unresponsive Sensitive PII or SHI, redact the unresponsive Sensitive PII or SHI prior to producing the document.

The term "Sensitive Personally Identifiable Information" means an individual's Social Security Number alone; or an individual's name, address, or phone number in combination with one or more of the following:

- date of birth
- driver's license number or other state identification number, or a foreign country equivalent
- passport number

10

- financial account number
- credit or debit card number

The term "Sensitive Health Information" includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. Sensitive Health Information relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

15.     Form of Production:  The Company shall submit documents as instructed below absent written consent.

   (a)     Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original documents:

      (i)     Submit Microsoft Excel, Access, and PowerPoint files in native format with extracted text and metadata.

      (ii)     Submit emails in TIFF format with extracted text and the following metadata and information:

| Metadata/Document Information | Description |
| --- | --- |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the email. |
| Bates End | Bates number of the last page of the email. |
| Custodian | Name of the person from whom the email was obtained. |
| Email BCC | Names of person(s) blind copied on the email. |
| Email CC | Names of person(s) copied on the email. |
| Email Date Received | Date the email was received.  [MM/DD/YYYY] |
| Email Date Sent | Date the email was sent.  [MM/DD/YYYY] |

11

| Email From | Names of the person who authored the email. |
| --- | --- |
| Email Message ID | Microsoft Outlook Message ID or similar value in other message systems. |
| Email Subject | Subject line of the email. |
| Email Time Received | Time email was received. [HH:MM:SS AM/PM] |
| Email To | Recipients(s) of the email. |
| Email Time Sent | Time email was sent. [HH:MM:SS AM/PM] |
| Folder | File path/folder location of email. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |

(iii)    Submit email attachments other than those described in subpart (a)(i) in TIFF format. For all email attachments, provide extracted text and the following metadata and information as applicable:

| Metadata/Document Information | Description |
| --- | --- |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Custodian | Name of person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |

12

| Filename with extension | Name of the original native file with file extension. |
| --- | --- |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Native Link | Relative file path to submitted native or near native files. Example: \NATIVES\001\FTC0003090.xls |
| Parent ID | Document ID or beginning Bates number of the parent email. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

(iv)    Submit all other electronic documents, other than those described in subpart (a)(i), in TIFF format accompanied by extracted text and the following metadata and information:

| Metadata/Document Information | Description |
| --- | --- |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Custodian | Name of the original custodian of the file. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY HH:MM:SS AM/PM] |

| Filename with extension | Name of the original native file with file extension. |
| --- | --- |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Originating Path | File path of the file as it resided in its original environment. |
| Production Link | Relative path to submitted native or near native files. Example: \NATIVES\001\FTC0003090.xls |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC-0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

(v)  Submit documents stored in hard copy in TIFF format accomplished by OCR with the following information:

| Metadata/Document Information | Description |
| --- | --- |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Bates number of the last page of the document. |
| Custodian | Name of person from whom the file was obtained. |

(vi)  Submit redacted documents in TIFF format accompanied by OCR with the metadata and information required by relevant document type in subparts (a)(i) through (a)(v) above. For example, if the redacted file was originally an attachment to an email, provide the metadata and information specified in subpart (a)(iii) above. Additionally, please provide a basis for each privilege claim as detailed in Instruction I(6).

(b)     Submit data compilations in electronic format, specifically Microsoft Excel spreadsheets or delimited text formats, with all underlying data un-redacted and all underlying formulas and algorithms intact.  Submit data separately from document productions.

(c)     Produce electronic file and TIFF submissions as follows:

     (i)     For productions over 10 gigabytes, use hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in USB 2.0 or 3.0 external enclosure.

     (ii)    For productions under 10 gigabytes, CD-ROM (CD-R, CD-RW) optical disks and DVD-ROM (DVD+R, DVD+RW) optical disks for Windows-compatible personal computers, and USB 2.0 Flash Drives are acceptable storage formats.

     (iii)   All documents produced in electronic format shall be scanned for and free of viruses prior to submission.  The Commission will return any infected media for replacement, which may affect the timing of the Company's compliance with this CID.

     (iv)    Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged.

(d)     Each production shall be submitted with a transmittal letter that includes the FTC matter number; production volume name; encryption method/software used; list of custodians and document identification number range for each; total number of documents; and a list of load file fields in the order in which they are organized in the load file.

(e)     If the Company intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media, or if the Company's computer systems contain or utilize such software, the Company must contact a Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner the Company may use such software or services when producing materials in response to this CID.

I 6.    All documents responsive to this CID:

(a)     shall be produced in complete form, un-redacted unless privileged, and in the order in which they appear in the Company's files;

(b)     shall be marked on each page with corporate identification and consecutive document control numbers when produced in TIFF format (e.g, ABC-00000001);

(c)     if written in a language other than English, shall be translated into English, with the English translation attached to the foreign language document;

(d)     shall be produced in color where necessary to interpret the document (if the coloring of any document communicates any substantive information, or if black-and-white photocopying or conversion to TIFF format of any document (e.g., a chart or graph), makes any substantive information contained in the document unintelligible, the Company must submit the original document, a like-colored photocopy, or a JPEG format TIFF);

(e)     shall be accompanied by an index that identifies:  (i)  the name of each Person from whom responsive documents are submitted; and (ii) the corresponding consecutive document control number(s) used to identify that Person's documents, and if submitted in paper form, the box number containing such documents.  If the index exists as a computer file(s), provide the index both as a printed hard copy and in machine-readable form (provided that, Commission representatives determine prior to submission that the machine-readable form would be in a format that allows the agency to use the computer files).  The Commission representative will provide a sample index upon request; and

(f)     shall be accompanied by an affidavit of an officer of the Company stating that the copies are true, correct, and complete copies of the original documents.

I 7.    If the Company is unable to answer any question fully, supply such information and data as are available.  Explain why the answer is incomplete, the efforts made by the Company to obtain the information and data, and the source from which the complete answer may be obtained.  If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates.  Estimated data should be followed by the notation "est."  If there is no reasonable way for the Company to make an estimate, provide an explanation.

I 8.    If information responsive to a particular Specification no longer exist for reasons other than the ordinary course of business or the implementation of the Company's document retention policy, but the Company has reason to believe have been in existence, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the Specification(s) to which they are responsive, and identify the Persons having knowledge of the content of such documents.

16

I 9.    In order for the Company's response to this CID to be complete, the attached certification form must be executed by the Company official supervising compliance with this CID, notarized, and submitted along with the responsive materials.

I 10.   Any questions you have relating to the scope or meaning of anything in this CID or suggestions for possible modifications thereto should be directed to Alicia Burns-Wright at (202) 326-2347 or James Abell at (202) 326-2289. The response to the CID shall be addressed to the attention of Alicia Burns-Wright and delivered between 8:30 a.m. and 5:00 p.m. on any business day to the Federal Trade Commission, 400 7th Street, SW, Washington, D.C. 20024. If you wish to submit your response by United States mail, please call the staff listed above for mailing instructions.

## CERTIFICATION

The response to the Civil Investigative Demand, together with any and all appendices and attachments thereto, was prepared and assembled under my supervision in accordance with instructions issued by the Federal Trade Commission. Subject to the recognition that, where so indicated, reasonable estimates have been made because books and records do not provide the required information, the information is, to the best of my knowledge, true, correct, and complete in accordance with the statute and rules.

Where copies rather than original documents have been submitted, the copies are true, correct, and complete. If the Commission uses such copies in any court or administrative proceeding, the Company will not object based on the Commission not offering the original document.

_____ (Signature)


_____

(Type or Print Name and Title)


     Subscribed and sworn to before me at the City of _____,

State of _____, this _____ day of _____, 20___.


_____

(Notary Public)


_____

(Date Commission Expires)

UNITED STATES OF AMERICA'
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:      Maureen K. Ohlhausen, Acting Chairman
                    Terrell McSweeny

RESOLUTION AUTHORIZING USE OF
COMPULSORY PROCESS IN NON-PUBLIC INVESTIGATION

File No. 171-0156

Nature and Scope of Investigation:

To determine whether the proposed acquisition by CDK Global, Inc. of Auto/Mate, Inc. is in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended; to determine whether the aforesaid acquisition, if consummated would be in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended, or Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended; and to determine whether the requirements of Section 7A of the Clayton Act, 15 U.S.C. § 18a, have been or will be fulfilled with respect to said transaction.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50 and 57b-1, as amended; Federal Trade Commission Procedures and Rules of Practice, 16 C.F.R. §§ 1.1, *et seq.*, and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

Issued: July 26, 2017