# EXHIBIT 4



# SUBPOENA DUCES TECUM

| 1. TO | 2. FROM |
|---|---|
| Dominion Enterprises<br>c/o Jon Leibowitz, Esq.<br>Davis Polk & Wardwell LLP<br>901 15th Street, N.W.<br>Washington, D.C. 20005 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described in Item 6.

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>Bureau of Competition<br>400 7th Street S.W.<br>Washington, DC 20024 | Alicia Burns-Wright, Esq.* |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION |
| | August 28, 2017 at 5:00pm.* |

**6. SUBJECT OF INVESTIGATION**

CDK Global, Inc.'s Proposed Acquisition of the Auto/Mate, Inc., File No. 171-0156 (See attached resolution).

**7. RECORDS YOU MUST BRING WITH YOU**

See attached "Specifications, Definitions and Instructions." *Personal appearance may not be required.

| 8. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 9. COMMISSION COUNSEL |
|---|---|
| Dominic Vote, Esq., Records Custodian<br>Matthew Gessesse, Esq., Deputy Records Custodian | Alicia Burns-Wright, Esq. 202-326-2347<br>James Abell, Esq. 202-326-2289 |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| August 3, 2017 | Terrell McSwee |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

**PETITION TO LIMIT OR QUASH**

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 9.

**TRAVEL EXPENSES**

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

A copy of the Commission's Rules of Practice is available online at http://bit.ly/FTCRulesofPractice. Paper copies are available upon request.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form 68-B (rev. 9/92)

## RETURN OF SERVICE

*I hereby certify that a duplicate original of the within subpoena was duly served:* (check the method used)

○ *in person.*

○ *by registered mail.*

○ *by leaving copy at principal office or place of business, to wit:*

*on the person named herein on:*

(Month, day, and year)

(Name of person making service)

(Official title)

**SUBPOENA DUCES TECUM**
**ISSUED TO DOMINION ENTERPRISES**
**FTC FILE NO. 171-0156**

Unless modified by agreement with the staff of the Federal Trade Commission, each Specification of this Subpoena *Duces Tecum* ("SDT") requires a complete search of "the Company" as defined in Paragraph D 1 of the Definitions, which appear after the following Specifications. If the Company believes that the required search or any other part of the SDT can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss any questions and possible modifications with the Commission representative identified in Instruction I 9 of this SDT. All modifications to this SDT must be agreed to in writing pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(l).

## SPECIFICATIONS

1.  Submit all strategic and marketing Plans generated or received by the Company regarding any Relevant Product including, but not limited to, business plans; short-term and long-range strategies and objectives; expansion or retrenchment plans; research and development efforts; presentations to management committees, executive committees, and boards of directors; and budgets and financial projections.

2.  Submit all documents relating to competition for the provision of any Relevant Product, including, but not limited to, market studies; business plans; forecasts and surveys; and documents relating to market shares, competitive position analyses, the relative strengths and weaknesses of companies providing any Relevant Product, supply and demand conditions for any Relevant Product, and any threatened, pending, or completed lawsuits.

3.  * Submit documents sufficient to show the details of each attempt by the Company to enhance any Relevant Product or expand the Company's capacity to provide any Relevant Product, including whether the attempt was successful, the expected (and, if applicable, actual) costs incurred, and the expected (and, if applicable, actual) time necessary to complete the enhancement or expansion. As used in this Specification, "enhance" includes, but is not limited to, the addition of new features or functionality, upgrades, or changes in software versions. As used in this Specification, "enhance" excludes regular maintenance, de-bugging, or other minor software changes. As used in this Specification, "capacity" refers to the productivity of the Persons involved in the development, sale, installation, or support of each Relevant Product.

    * Before beginning to prepare a response to Specification 3, the Company is encouraged to discuss any questions, including regarding the scope of documents sought, with the Commission representative identified in Instruction I 9.

1

4.  Submit all documents relating to the Company's Plans for, interest in, or efforts undertaken to bring about any acquisition, divestiture, joint venture, alliance, or merger of any kind involving the development or sale of any Relevant Product.

5.  Submit all documents relating to the Company's assessment of the potential for current and future entry, entry barriers, and costs to develop, market, install, and support any Relevant Product, including capital investment requirements and timeframes.

6.  Submit all documents related to analysis by the Company of the Proposed Transaction.

## DEFINITIONS

For the purposes of this SDT, the following Definitions apply:

D 1.   The term "Company" means Dominion Enterprises; its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between the Company and any other Person.

D 2.   The term "CDK" means CDK Global, Inc.; its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between CDK and any other Person.

D 3.   The term "Auto/Mate" means Auto/Mate, Inc.; its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures; and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25% or more) or total ownership or control between Auto/Mate and any other Person.

D 4.   The term "add-on application" refers to applications that integrate with or compliment the DMS.

D 5.   The term "core dealer management system" or ("DMS") means the enterprise resource planning software used in automotive dealerships. The DMS is comprised of several software modules or suites that address designated aspects of dealership operations, such as accounting, finance and insurance, and service and parts management.

D 6.   The term "data integration" refers to all programs, processes, or initiatives related to the transfer of information between the DMS and add-on applications, including information management, optimization, monitoring, and security.

D 7.   The term "Data Set" means all or a subset of data held by, or accessible to, the Company in the normal course of business provided by the Company to respond to any Specification in this SDT.

D 8.   The term "documents" means any information, on paper or in electronic format, including computer files and written, recorded, and graphic materials of every kind, in the possession, custody, or control of the Company. The term "documents" includes, without limitation: email messages; audio files; instant messages; drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created,

revised, or distributed electronically; copies of documents that are not identical duplicates of the originals in that Person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company.

(a)      Unless otherwise specified, the term "documents" excludes:

         (i)      bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature;

         (ii)      architectural plans and engineering blueprints;

         (iii)      documents solely relating to environmental, tax, human resources, OSHA, or ERISA issues; and

         (iv)      relational and enterprise databases, except as required to comply with an individual Specification.

(b)      The term "computer files" includes information stored in, or accessible through, computer or other information retrieval systems. Thus, the Company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off Company premises. If the Company believes that the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss a possible modification to this Definition with the Commission representatives identified on the last page of this SDT. The Commission representative will consider modifying this Definition to:

         (i)      exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from files that exist in personal computers, portable computers, workstations, minicomputers, mainframes, and servers searched by the Company;

         (ii)      limit the portion of backup disks and tapes and archive disks and tapes that needs to be searched and produced to certain key individuals, or certain time periods or certain Specifications identified by Commission representatives; or

         (iii)      include other proposals consistent with Commission policy and the facts of the case.

D 9.   The term "original equipment manufacturer" or ("OEM") means any manufacturer of automobiles, any Person authorized to act on behalf of a manufacturer of automobiles in the Relevant Area, or any Person authorized to distribute the manufacturer's automobiles in the Relevant Area.

D 10.   The term "Person" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

D 11.   The term "relating to" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or stating.

D 12.   The terms "and" and "or" have both conjunctive and disjunctive meanings.

D 13.   The term "Plans" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

D 14.   The term "Proposed Transaction" means CDK's proposed acquisition of Auto/Mate.

D 15.   The term "Sales" means net sales (i.e., total sales after deducting discounts, returns, allowances and excise taxes).  "Sales" includes Sales of the Relevant Product whether provided by the Company itself or purchased from sources outside the Company and resold by the Company in the same manufactured form as purchased.

D 16.   The term "Relevant Product" as used herein means:

(a)     DMS products, and information shall be provided separately for each DMS product;

(b)     add-on applications, and information shall be provided separately for each add-on application; and

(c)     data integration services, and information shall be provided separately for each data integration service.

D 17.   The term "Relevant Area" means the United States.

# INSTRUCTIONS

For the purposes of this SDT, the following Instructions apply:

I 1.  All references to year refer to calendar year. Unless otherwise specified, each of the Specifications calls for documents for each of the years from January 1, 2015 to the present.

I 2.  This SDT shall be deemed continuing in nature so as to require production of all documents responsive to any Specification included in this SDT produced or obtained by the Company up to 30 calendar days prior to the date of the Company's full compliance with this SDT.

I 3.  The Company or its attorney must contact the Commission staff representatives identified in Instruction I 9 as soon as possible to schedule a meeting (telephonic or in person) to be held within fourteen (14) days after receipt of this SDT to discuss compliance and to address and attempt to resolve all issues, including issues relating to protected status and the form and manner in which claims of protected status will be asserted. Pursuant to 16 C.F.R. § 2.7(k), the Company must make available personnel with the knowledge necessary for resolution of the issues relevant to compliance with this SDT, including, but not limited to, personnel with knowledge about its information or records management systems, relevant materials such as organizational charts, and samples of material required to be produced. If any issues relate to electronically-stored information, the Company must make available a person familiar with its electronically-stored information systems and methods of retrieval.

I 4.  Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") or Sensitive Health Information ("SHI") prior to discussing the information with a Commission representative. If any document responsive to a particular Specification contains unresponsive Sensitive PII or SHI, redact the unresponsive Sensitive PII or SHI prior to producing the document.

The term "Sensitive Personally Identifiable Information" means an individual's Social Security Number alone; or an individual's name, address, or phone number in combination with one or more of the following:

- date of birth
- driver's license number or other state identification number, or a foreign country equivalent
- passport number
- financial account number
- credit or debit card number

6

The term "Sensitive Health Information" includes medical records and other individually identifiable health information, whether on paper, in electronic form, or communicated orally. Sensitive Health Information relates to the past, present, or future physical or mental health or condition of an individual, the provision of health care to an individual, or the past, present, or future payment for the provision of health care to an individual.

I5. Form of Production: The Company shall submit documents as instructed below absent written consent.

    (a)    Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in the following electronic format provided that such copies are true, correct, and complete copies of the original documents:

        (i)    Submit Microsoft Excel, Access, and PowerPoint files in native format with extracted text and metadata.

        (ii)    Submit emails in TIFF format with extracted text and the following metadata and information:

| Metadata/Document Information | Description |
| --- | --- |
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the email. |
| Bates End | Bates number of the last page of the email. |
| Custodian | Name of the person from whom the email was obtained. |
| Email BCC | Names of person(s) blind copied on the email. |
| Email CC | Names of person(s) copied on the email. |
| Email Date Received | Date the email was received. [MM/DD/YYYY] |
| Email Date Sent | Date the email was sent. [MM/DD/YYYY] |
| Email From | Names of the person who authored the email. |
| Email Message ID | Microsoft Outlook Message ID or similar |

| | value in other message systems. |
|---|---|
| Email Subject | Subject line of the email. |
| Email Time Received | Time email was received. [HH:MM:SS AM/PM] |
| Email To | Recipients(s) of the email. |
| Email Time Sent | Time email was sent. [HH:MM:SS AM/PM] |
| Folder | File path/folder location of email. |
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |

(iii)   Submit email attachments other than those described in subpart (a)(i) in TIFF format. For all email attachments, provide extracted text and the following metadata and information as applicable:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Custodian | Name of person from whom the file was obtained. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY] |

| Filename with extension | Name of the original native file with file extension. |
|---|---|
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Native Link | Relative file path to submitted native or near native files. Example: \NATIVES\001\FTC0003090.xls |
| Parent ID | Document ID or beginning Bates number of the parent email. |
| Text Link | Relative path to submitted text file. Example: \TEXT\001\FTC0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

(iv)    Submit all other electronic documents, other than those described in subpart (a)(i), in TIFF format accompanied by extracted text and the following metadata and information:

| Metadata/Document Information | Description |
|---|---|
| Alternative Custodian | List of custodians where the document has been removed as a duplicate. |
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Last Bates number of the document. |
| Custodian | Name of the original custodian of the file. |
| Date Created | Date the file was created. [MM/DD/YYY] |
| Date Modified | Date the file was last changed and saved. [MM/DD/YYYY HH:MM:SS AM/PM] |
| Filename with extension | Name of the original native file with file |

9

| | extension. |
|---|---|
| Hash | Identifying value used for deduplication – typically SHA1 or MD5. |
| Originating Path | File path of the file as it resided in its original environment. |
| Production Link | Relative path to submitted native or near native files.<br>Example: \NATIVES\001\FTC0003090.xls |
| Text Link | Relative path to submitted text file.<br>Example: \TEXT\001\FTC-0003090.txt |
| Time Created | Time file was created. [HH:MM:SS AM/PM] |
| Time Modified | Time file was saved. [HH:MM:SS AM/PM] |

(v)    Submit documents stored in hard copy in TIFF format accomplished by OCR with the following information:

| Metadata/Document Information | Description |
|---|---|
| Bates Begin | Beginning Bates number of the document. |
| Bates End | Bates number of the last page of the document. |
| Custodian | Name of person from whom the file was obtained. |

(vi)    Submit redacted documents in TIFF format accompanied by OCR with the metadata and information required by relevant document type in subparts (a)(i) through (a)(v) above. For example, if the redacted file was originally an attachment to an email, provide the metadata and information specified in subpart (a)(iii) above. Additionally, please provide a basis for each privilege claim as detailed in Instruction I(6).

(b)    Submit data compilations in electronic format, specifically Microsoft Excel

10

spreadsheets or delimited text formats, with all underlying data un-redacted and all underlying formulas and algorithms intact. Submit data separately from document productions.

(c) Produce electronic file and TIFF submissions as follows:

(i) For productions over 10 gigabytes, use hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in USB 2.0 or 3.0 external enclosure.

(ii) For productions under 10 gigabytes, CD-ROM (CD-R, CD-RW) optical disks and DVD-ROM (DVD+R, DVD+RW) optical disks for Windows-compatible personal computers, and USB 2.0 Flash Drives are acceptable storage formats.

(iii) All documents produced in electronic format shall be scanned for and free of viruses prior to submission. The Commission will return any infected media for replacement, which may affect the timing of the Company's compliance with this SDT.

(iv) Encryption of productions using NIST FIPS-Compliant cryptographic hardware or software modules, with passwords sent under separate cover, is strongly encouraged.

(d) Each production shall be submitted with a transmittal letter that includes the FTC matter number; production volume name; encryption method/software used; list of custodians and document identification number range for each; total number of documents; and a list of load file fields in the order in which they are organized in the load file.

(e) If the Company intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media, or if the Company's computer systems contain or utilize such software, the Company must contact a Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner the Company may use such software or services when producing materials in response to this SDT.

16. All documents responsive to this SDT:

(a) shall be produced in complete form, un-redacted unless privileged, and in the order in which they appear in the Company's files;

(b)    shall be marked on each page with corporate identification and consecutive document control numbers when produced in TIFF format (e.g. ABC-00000001);

(c)    if written in a language other than English, shall be translated into English, with the English translation attached to the foreign language document;

(d)    shall be produced in color where necessary to interpret the document (if the coloring of any document communicates any substantive information, or if black-and-white photocopying or conversion to TIFF format of any document (e.g., a chart or graph), makes any substantive information contained in the document unintelligible, the Company must submit the original document, a like-colored photocopy, or a JPEG format TIFF);

(e)    shall be accompanied by an index that identifies: (i) the name of each Person from whom responsive documents are submitted; and (ii) the corresponding consecutive document control number(s) used to identify that Person's documents, and if submitted in paper form, the box number containing such documents. If the index exists as a computer file(s), provide the index both as a printed hard copy and in machine-readable form (provided that, Commission representatives determine prior to submission that the machine-readable form would be in a format that allows the agency to use the computer files). The Commission representative will provide a sample index upon request; and

(f)    shall be accompanied by an affidavit of an officer of the Company stating that the copies are true, correct, and complete copies of the original documents.

17.    If documents responsive to a particular Specification no longer exist for reasons other than the ordinary course of business or the implementation of the Company's document retention policy, but the Company has reason to believe have been in existence, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the Specification(s) to which they are responsive, and identify the Persons having knowledge of the content of such documents.

18.    In order for the Company's response to this SDT to be complete, the attached certification form must be executed by the Company official supervising compliance with this SDT, notarized, and submitted along with the responsive materials.

19.    Any questions you have relating to the scope or meaning of anything in this SDT or suggestions for possible modifications thereto should be directed to Alicia Burns-Wright at (202) 326-2347 or James Abell at (202) 326-2289. The response to the SDT shall be addressed to the attention of Alicia Burns-Wright and delivered between 8:30 a.m. and 5:00 p.m. on any business day to the Federal Trade Commission, 400 7th Street, SW, Washington, D.C. 20024. If you wish to submit your response by United States mail,

please call the staff listed above for mailing instructions.

## CERTIFICATION

The response to the Subpoena *Duces Tecum*, together with any and all appendices and attachments thereto, was prepared and assembled under my supervision in accordance with instructions issued by the Federal Trade Commission. Subject to the recognition that, where so indicated, reasonable estimates have been made because books and records do not provide the required information, the information is, to the best of my knowledge, true, correct, and complete in accordance with the statute and rules.

Where copies rather than original documents have been submitted, the copies are true, correct, and complete. If the Commission uses such copies in any court or administrative proceeding, the Company will not object based on the Commission not offering the original document.

_____ (Signature)


_____
(Type or Print Name and Title)


     Subscribed and sworn to before me at the City of _____,

State of _____, this _____ day of _____, 20___.


_____
(Notary Public)


_____
(Date Commission Expires)

14

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:    Maureen K. Ohlhausen, Acting Chairman
Terrell McSweeny

RESOLUTION AUTHORIZING USE OF
COMPULSORY PROCESS IN NON-PUBLIC INVESTIGATION

File No. 171-0156

Nature and Scope of Investigation:

To determine whether the proposed acquisition by CDK Global, Inc. of Auto/Mate, Inc. is in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended; to determine whether the aforesaid acquisition, if consummated would be in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, as amended, or Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended; and to determine whether the requirements of Section 7A of the Clayton Act, 15 U.S.C. § 18a, have been or will be fulfilled with respect to said transaction.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10 and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50 and 57b-1, as amended; Federal Trade Commission Procedures and Rules of Practice, 16 C.F.R. §§ 1.1, *et seq.*, and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

Issued: July 26, 2017