# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) ) | MDL No. 2817 Case No. 1:18-CV-00864 |
| *This Document Relates To:* | ) ) ) | Hon. Robert M. Dow, Jr. |
| All Actions | ) ) | Hon. Jeffrey T. Gilbert, Magistrate |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF A DEPOSITION PROTOCOL TO GOVERN MDL DEPOSITIONS

This MDL is essentially composed of a single law firm's substantially identical suits against two Defendants (a third Defendant is sued in only one of the cases) plus a follow-on class action.[1] Plaintiffs' current demand that Defendants engage in a multi-track, breakneck schedule to cram *105* party and third-party depositions within 18 winter weeks belies the reality of this case. More than one deposition per day, coast-to-coast, every business day, for 18 weeks spanning the major winter holidays is not proportional to the needs of this case. Plaintiffs' demand for a disproportionate (60%) share of those depositions is likewise unwarranted. By contrast, Defendants' proposed deposition protocol—while still extremely aggressive—is more equitable and, just as importantly, more feasible given the expedited schedule entered for these consolidated cases.

---

[1] As described in more detail below, there are 5 cases in the MDL. Two are brought against CDK only (*Cox* and *Vendor Class*) by the Kellogg Hansen firm ("Kellogg"); one (*Authenticom*) is brought by Kellogg against CDK and Reynolds; one (*Dealer Class*) is brought against CDK and Reynolds; and one (*MVSC*), the first filed case, is brought by Kellogg against CDK, Reynolds, and their joint venture, CVR. The *Dealer Class* action—which Kellogg describes as a "hatchet job of our work," Ex. 1 (Nemelka email to California Dealers' Association)—does not meaningfully expand on the factual allegations against the Defendants asserted in the Kellogg cases.

Fact witness depositions currently are scheduled to occur between October 15, 2018 and February 15, 2019. Dkt. 166 (Case Management Order). Despite this limited window[2] spanning the holiday season, and the limited number of defendants (only one in some cases), Plaintiffs unilaterally noticed *59* depositions of defense party witnesses. Ex. 2.[3] Plaintiffs have since modified their demand to 45 defense party witnesses, plus 18 third-party witnesses, provided that Defendants can only take 30 plaintiff witnesses and 12 third-parties. In other words, in response to Defendants' attempts to negotiate a reasonable schedule, Plaintiffs insist on an uneven deposition split heavily favoring Plaintiffs and a breakneck pace of 105 total depositions that would have two Defendants *defending* depositions the majority of the business days for four months—essentially preventing those two Defendants from taking the discovery that they need to defend themselves against *37 named plaintiffs* and develop their counterclaims against at least Authenticom.

Moreover, Plaintiffs' proposal that all depositions be scheduled up-front is an easy one for them to make, given that they have more than 2.6 million of pages of discovery from Defendants, the vast majority of which they have had since May, or earlier. But it is entirely unfair to expect the same from Defendants given that until late last week, only two Plaintiffs had

---

[2] Excluding limited potential off-days for holidays of 11/12 (Veterans Day), 11/22-23 (Thanksgiving Thursday and Friday), 12/24-25 (Christmas Eve and Christmas Day), 1/1 (New Year's Day), 1/21 (President's Day), that leaves 83 potential business days. Even assuming that two Defendants could staff deposition defense and/or offense every single possible day, given the holiday season and the week-long industry conference during this period, Defendants anticipate that scheduling one or more depositions every day during this period will be practically impossible.

[3] Plaintiffs' deposition notices violated the Federal Rules on their face (*see* Fed. R. Civ. P. 30(a)(2) (leave of court required for more than 10 depositions per side)) and standard professional courtesy (*see e.g.,* Standards for Professional Conduct within the Seventh Federal Judicial Circuit ("We will not use any form of discovery or discovery scheduling as a means of harassment"; "We will consult other counsel regarding scheduling matters in a good faith effort to avoid scheduling conflicts")). After numerous refusals to withdraw these improper notices, Plaintiffs finally agreed to do so shortly before the filing of these briefs, pending further deposition negotiations and this briefing (but only after Defendants noted they would need to move for protection if the 59 notices were not withdrawn).

produced any documents, and a number of Plaintiffs still have not produced a single document.[4] Dkt. 160 (setting substantial completion for October 12, the business day prior to the commencement of the deposition phase of the case).

The burden Plaintiffs seek to impose is not commensurate with its benefit. Defendants CDK Global, LLC, Computerized Vehicle Registration ("CVR"), and The Reynolds and Reynolds Company therefore seek an order establishing reasonable deposition limits and protocols in this MDL as detailed below and in the attached Proposed Order.

## BACKGROUND

Discovery was ongoing in the *Authenticom* case when it was transferred to this Court along with the other member cases of this MDL. At that time, Authenticom (whose counsel now represents all but one of the Plaintiff-families[5] in the current actions) sought 23 depositions from the Defendants. Ex. 3 at 1-2 (Order, Dkt. 245 in *Authenticom*); Ex. 4 (Nov. 21, 2017 Nemelka Letter). Now Plaintiffs seek almost twice as many defendant depositions (45), despite the fact that there has been no material change to the Plaintiffs' allegations. If anything, the liability issues raised by Plaintiffs now are narrower than they were prior to consolidation, given Judge St. Eve's subsequent dismissal of substantial parts of Plaintiffs' antitrust theories, including dismissal of Plaintiffs' core "market division" theory. *See* Order, Dkt. 176 at 33 (Judge St. Eve

---

[4] To date Defendants have produced approximately 2.6 million pages of documents, and Plaintiffs have produced approximately 187 thousand pages. The vast majority of the named plaintiffs have produced no documents at all. Before last Thursday, only Authenticom and AutoLoop had produced any documents. Between Thursday and today, both Cox and MVSC made their first productions, accounting for fewer than 31,000 pages combined. The Dealer Class plaintiffs have still yet to produce any documents.

[5] Defendants use the term party "family" in this brief to mean affiliated entities, *e.g.*, the nine Plaintiffs who are named as parties in the Cox complaint.

3

dismissing Authenticom's market-division claims).[6] What *has* changed, however, is the addition of 36 new Plaintiffs from which Defendants are entitled to discovery, and the addition of counterclaims against Authenticom, with possibly others to follow.

The cases that now make up this MDL currently are as follows:

| Case | 37 Plaintiffs | 1, 2, or 3 Defendants | Plaintiffs' Counsel |
|---|---|---|---|
| *Dealer Class* | 25 Named Plaintiffs | CDK Reynolds | Interim lead: Milberg |
| *Vendor Class* | 1 Named Plaintiff | CDK | Interim lead: Kellogg |
| *MVSC* (opt out vendor) | 1 Plaintiff | CDK Reynolds CVR (Defendants' JV) | Kellogg |
| *Authenticom* (alleged vendor service provider) | 1 Plaintiff (counterdefendant) | CDK (counterplaintiff) Reynolds (counterplaintiff) | Kellogg |
| *Cox* (opt out vendors) | 9 Plaintiffs | CDK | Kellogg |

As indicated in this chart, there are really only two cases here: (1) Kellogg's claims against Defendants (including CVR, a joint venture of CDK and Reynolds, named in a single case); (2) the Dealer Class's derivative claims against just CDK and Reynolds.[7] Plaintiffs' claims in these actions are centered on the same allegations as the *Authenticom* case and all rise and fall with Authenticom's allegations of a "conspiracy" between CDK and Reynolds. Counsel for Authenticom, Cox, MVSC and the putative vendor class—Kellogg—concurs, asserting that the dealer class claims are merely "copycat class actions" that "copied the Authenticom Complaint verbatim" or "copied Authenticom's substantive allegations while altering a few

---

[6] Indeed, certain Plaintiffs have admitted that their claims are barred, in part, by Judge St. Eve's Order. (Dkt. No. 235 at 3 (*Cox* and *MVSC* Notice of Supplemental Authority noting that tying claims are barred)).

[7] Kellogg also represents a dealer (Bob Baker Volkswagen) that was not included as a named plaintiff in the Consolidated Dealer Complaint and has thus far refused to dismiss its pending action for that dealership.

words," "largely track Authenticom's causes of action" and are essentially "free riding." *See* Dkt. 91 at 17.

Meanwhile, Defendants also have brought claims against Authenticom for its unauthorized access to their systems in violation of federal law, among other illegal behavior. These claims will also proceed to discovery as Authenticom has not moved to dismiss at least ten of the claims pending against it. In other words, very little has changed for *Plaintiffs*' discovery needs since Kellogg sought only 23 defendant depositions in *Authenticom*. On the other hand, Defendants must now discover information regarding at least 36 other named plaintiffs (including 2 putative class actions), and prosecute their current counterclaims—not to mention any counterclaims that Defendants may bring against the remaining Plaintiffs at the appropriate time. Any deposition split that does not give the two primary defendants at least as many depositions as the Plaintiffs would unfairly prejudice Defendants and impair their ability to defend these cases and prosecute their counterclaims.

## ARGUMENT

The parties have reached agreement on certain issues but are fundamentally at odds on several issues governing depositions. Defendants seek entry of the attached Proposed Order. The areas of dispute and Defendants' arguments for entering the attached order with respect to each of them are outlined below and highlighted in the attached Proposed Order.[8]

**1. Number and Split of Depositions (Proposed Order, Part I)**

Plaintiffs cannot have it both ways: a compressed schedule *and* an opportunity to depose

---

[8] Defendants' Deposition Protocol Order highlights provisions on which the parties disagree. The remaining, non-highlighted sections are agreed. Defendants move for entry of their proposed Deposition Protocol subject to and without waiver of their arbitration rights and motions to dismiss, including those asserted in currently pending motions. Defendants reserve the right to seek to modify any deposition protocol entered in this case in light of further orders of the court or other changed conditions.

every witness that they can conceive of. In fact, Defendants are willing to consider the more than one hundred total depositions proposed by Plaintiffs—but not on the current schedule. And even on the current schedule, Defendants are willing to agree to 6 depositions in many of the available working weeks—but not on the lopsided terms demanded by Plaintiffs. Defendants proposed as a compromise, and Plaintiffs have rejected, the following aggressive deposition schedule:

(a) A maximum of **6 depositions per week as follows**:
(1) At most, two party depositions per week per *side* (4),
(2) At most, one third-party per week initially noticed by each *side* (2).[9]

(b) No individual party to submit to more than one deposition on the same day.

(c) A split between the "sides" of 50/50.[10]

(d) Total deposition numbers as follows:

(1) **If the current schedule is maintained: Maximum of 74 depositions as follows:**
a. Defendants to notice no more than 25 plaintiff-party depositions[11]
b. Plaintiffs to notice no more than 25 defendant-party depositions
c. Defendants to notice no more than 12 third party depositions
d. Plaintiffs to notice no more than 12 third party depositions.

(2) **If the deposition schedule is extended two months to April 15: Maximum of 106 depositions as follows:**[12]
a. Defendants to notice no more than 38 plaintiff-party depositions[13]
b. Plaintiffs to notice no more than 38 defendant-party depositions
c. Defendants to notice no more than 15 third party depositions

---

[9] To date, the parties have served document subpoenas on more than 70 non-parties; Authenticom previously served two non-party deposition notices which, to Defendants' knowledge, have not been withdrawn.

[10] Given that each of the cases has 1, 2, or 3 defendants, versus 37 named plaintiffs, anything short of a 50/50 split is fundamentally unfair. If anything, Defendants should be permitted to take more depositions than Plaintiffs. In this motion, Defendants offer their most generous compromise position.

[11] Note, this is *fewer* than the total number of named Plaintiffs (37).

[12] This is essentially **Plaintiffs' proposal** on the total number (they propose 105), but with an even split of depositions and an additional two months for depositions.

[13] This is just one more than the total number of named Plaintiffs.

        d.  Plaintiffs to notice no more than 15 third party depositions.

The attached Proposed Order includes the first proposal. However, Defendants are also willing to compromise with the second proposal if provided commensurate relief from the accelerated schedule.[14]

Defendants' proposal is more than fair to Plaintiffs, who will have the opportunity to depose at least twelve times more witnesses on a per-party basis than Defendants (as there are 37 Plaintiffs but only 3 Defendants—and that is counting CVR), and more than twice the number of witnesses that were on Authenticom's original wish list. *See* Ex. 3 at 1-2; Ex. 4. Defendants' proposal also still reflects an extremely aggressive schedule, ensuring that counsel will be required to take or defend depositions nationwide virtually every day for several months (often more than one in a day). Anything more would be excessive and unnecessary—discovery for its own sake—and unfair to Defendants.

Further, Plaintiffs' request for 45 depositions from Defendants is out of line with precedent. Contrast this case (where there are 2 primary Defendants,[15] and a 4-month winter deposition schedule) with the following cases:

- In the *Broiler Chicken* case currently pending in this Court, while the overall number of depositions remains disputed, the plaintiffs there are only seeking to take an average of 10 fact witnesses per defendant family over a *ten-month* deposition period. *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08637, Dkt. 1131 at 2 (N.D. Ill. Aug. 17, 2018). The defendants, by contrast, have proposed no more than 7 depositions per defendant family. *Id.* at 11.

---

[14] In addition, currently pending before the Court are omnibus motions to compel filed by both sides. To the extent that the results of those motions require the parties to search for, review and/or produce a substantial number of additional documents, either deposition schedule may require adjustment. The parties are entitled to documents in advance of depositions, and to present their witnesses only once.

[15] As noted above, defendant CVR currently is named in only one action—*MVSC*—and thus would anticipate that it would only participate in depositions related to that case to the extent its pending motion to dismiss is not granted.

- *Kleen Prods., LLC v. Int'l Paper*, No. 1:10-cv-05711, Dkt. 462 (N.D. Ill. Mar. 5, 2013) (plaintiffs allowed 100 depositions from ***seven*** defendant families, and an equal number of depositions per side).

- *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420 Dkt. 905 at ¶ I(D) (N.D. Cal. Oct. 19, 2015) (plaintiffs allowed no more than 12 party witness depositions per defendant family).

- *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143, Dkt. 606 at ¶ (e) (N.D. Cal. July 17, 2012) (plaintiffs allowed 15 party-witness depositions from each of the 12 defendant families).

- *In re Credit Default Swaps Antitrust Litig.*, MDL No. 2476, Dkt. 334 at ¶ VI(G) (S.D.N.Y. Sep. 18, 2014) (plaintiffs allowed 11 depositions from each of 14 defendant families).

- *In re Capacitors Antitrust Litig.*, No. 14-cv-03264, Dkt. 725 at ¶ B(1) (N.D. Cal. May 28, 2015) (plaintiffs permitted 10 percipient witness depositions per defendant family with a maximum total of 135 percipient witness depositions).

- *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670, Dkt. 495 at ¶ 4 (S.D. Cal. Sept. 26, 2017) (20 fact witness depositions for each of only three defendant families).

- *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09-cv-3690 (N.D. Ill.) (20 depositions per side) (*see* May 14, 2010 Order, ECF No. 112).

There is no basis for a schedule that would require 2 Defendants to do more than take or defend at least one deposition (often more) nearly every day for at least three months. The only justification for the break-neck pace of Plaintiffs' proposed deposition schedule that they have ever offered is that Authenticom at various stages, including in the Seventh Circuit over a year ago, has argued that it was on the brink of bankruptcy and required an accelerated pretrial schedule. But Judge St. Eve allowed discovery into this contention when it was obvious that Authenticom's dire predictions had not come true and, following that financial-condition deposition, the Court ultimately rejected Authenticom's proposed schedule. *See* Dkt. 155, 166. Additional discovery since then—as well as the passage of time—has confirmed that

8

Authenticom is not on the brink of demise as it represented to the Wisconsin district court, the Seventh Circuit, and this Court. To the contrary, Authenticom has proven itself more than able to prosecute its alleged claims on the schedule set out in this MDL or longer if necessary to accommodate the amount of written and oral discovery that Plaintiffs have sought from Defendants.

Plaintiffs have raised several other red herrings on the issue of the total number of depositions that also warrant exposure. First, Plaintiffs have claimed that the Defendants have "lots of lawyers." This is misdirection. Defendants vigorously contest all of Plaintiffs' liability allegations and theories of damage. Plaintiffs seek to require Defendants to put up apex witnesses (*e.g.*, the President/CEO of both CDK and Reynolds) and virtually every member of certain departments as well as other key senior personnel, many days a week, for 18 weeks over the Thanksgiving and winter holidays. Even if Defendants theoretically *could* staff those weeks with armies of lawyers with no other cases, clients, or conflicts as Plaintiffs apparently believe, the burden on the *parties* created by Plaintiffs' proposed schedule is still unreasonable. Fed. R. Civ. P. 26(b)(1).

In any event, the Plaintiffs overstate the size of Defendants' legal teams. To be sure, the scattershot procedural history of this case—suits across the country (including cases in California and Wisconsin by the same firm and numerous pre-consolidation "dealer" actions coast-to-coast), a preliminary injunction hearing in the Western District of Wisconsin, a successful appeal of that ruling in the 7th Circuit, etc.—has required the assistance of multiple firms and offices. However, many of those counsel are no longer active in the case, and the core litigation team expected to take and defend depositions for Defendants is relatively modest in size and, of

9

course, has other client obligations. In any event, there are certainly not more lawyers actively litigating these cases for Defendants than there are for Plaintiffs.

Second, Plaintiffs have asserted that the current accelerated schedule was the "Defendants' schedule," so Defendants cannot object to Plaintiffs' demand for 105 depositions during the four-month window for fact witness depositions that the schedule contemplates. This again is misleading. The current schedule was a *compromise* proposed by Defendants after they had already reached a hard-fought partial agreement with certain of the Plaintiffs (including the dealerships represented by now interim co-lead counsel for the dealer class) on a significantly longer schedule. *See* Dkt. 36 at 5-6 (Defendants and certain dealerships, including those represented by now interim lead class counsel agreed to a schedule in which the fact discovery cut off ***was not until February 2020*** – a full year after the current schedule's end date for depositions). In no event would Defendants have compromised on their initial proposed discovery timetable had Plaintiffs even hinted that they would be seeking to take more than 100 depositions during that period. Prior to those negotiations, Plaintiffs had requested only 23 depositions of Defendants (and Defendants had reserved their rights—and successfully obtained a stay—with respect to that already burdensome proposal).

Defendants' proposal for a 50-50 split between the number of depositions that Plaintiffs and Defendants may take, as well as the overall limits on depositions that Defendants propose (Proposed Order, Part I) are aggressive and more than fair to Plaintiffs in light of the current case deadlines. Plaintiffs' proposal, on the other hand, is only fair to Plaintiffs.

### 2. Multiple Days with One Witness (Proposed Order, Part II(A))

The Federal Rules provide for a deposition of not more than 7 hours. Fed. R. Civ. P. 30(d)(l). The parties have agreed that in this case, the 7 hours will be exclusive of examination

by any party on the same side of the "v." as the witness (not just the party presenting the witness).  *See* Proposed Order, Part III (C).  Once breaks are included, these "7-hour depositions" will make for some very long days.  Nevertheless, Plaintiffs demand that at least one witness from each of CDK and Reynolds be made available for 14 hours, subject to the same conditions.  On the other hand, Plaintiffs categorically refuse to provide any Plaintiff witness for more than 7 hours.

The unfairness of Plaintiffs' proposal is obvious.  Defendants should be required to produce one of their witnesses for 14 hours of examination only if Plaintiffs are required to produce one such witness from each Plaintiff "family" as well.  If anyone is entitled to two-day depositions of certain witnesses, it is Defendants, since Plaintiffs are making far fewer of their witnesses available for deposition in the first place on a per-party basis (12 to 1 at best).  While Plaintiffs will be able to depose literally dozens of CDK and Reynolds witnesses under either side's proposal, Defendants will only get a few depositions from some Plaintiff families (*e.g.*, Cox) and may not even be able to depose even *one* witness from each putative Dealer Class representative on the merits of their claims.[16]

Plaintiffs suggest that their own conspiracy allegations provide some basis for extending the depositions of certain witnesses to more than a day.  However, Plaintiffs have it exactly backwards.  Now that Authenticom's market-allocation theory has been dismissed, Plaintiffs' remaining allegations of conspiracy rely on the (Defendants contend, unsupportable) testimony of an interested *Plaintiff* witness regarding his alleged oral conversations with individual employees from each of CDK and Reynolds. Dkt. 176 at n.9 (Judge St. Eve's Order on Motion

---

[16] Defendants reserve their right to seek the depositions of class plaintiffs they are unable to depose during this merits phase on issues relating solely to class certification during the Class Certification stage of the litigation.

to Dismiss *Authenticom* noting that allegations of "admissions" of conspiracy were based on Authenticom's CEO Steve Cottrell's testimony). That same witness is also the primary witness on Authenticom's supposed damages and (now disproven) claims of imminent harm. If there were any reason to depose someone for more than one day, it might be Mr. Cottrell. But Defendants have not requested an advance ruling from the Court allowing them more than 7 hours with Mr. Cottrell before deposing any other witnesses. And Plaintiffs have flatly refused to even *consider* making him or any other Plaintiff witness available for more than one day in exchange for Defendants agreeing to do the same for one of their own witnesses.

Plaintiffs cannot demonstrate now, at the outset, that there is a need to enter a prophylactic lopsided rule that favors only Plaintiffs or that they will be unable to obtain the relevant deposition testimony they need from 7 hours with the dozens of party witnesses or the third-party witnesses proposed in Defendants' schedule. Plaintiffs' request for one-sided additional time in excess of 7 hours of examination by Plaintiffs should be denied.

3.  **Calendaring (Proposed Order, Part IV(D))**

A procedure for calendaring that fairly takes into account the positions of all parties is necessary. Plaintiffs have unilaterally sent Defendants a proposed calendar. Ex. 5. But Plaintiffs' calendaring proposal is entirely illusory. The problems with this proposed calendar are legion, including:

- It assumes that Plaintiffs win on all issues and the Court will grant them leave to take 45 depositions (and presumably only 30 to Defendants).

- Defendants have not yet had the opportunity to review the productions that have just begun to come in from some plaintiffs (Authenticom, Cox and AutoLoop have made small productions, MVSC made a very small production yesterday, and the dealer class plaintiffs have yet to produce anything at all) in order to discern their preferred witnesses.

- That Plaintiffs' counsel can pick all of their preferred dates now since they have millions of pages of Defendants' documents and force Defendants to slot in behind them even though Defendants have had no opportunity to evaluate documents.

- That Plaintiffs' counsel can forgo travel on all (or virtually all) Mondays and Fridays as well as the weeks of Thanksgiving, Christmas, and New Year's, but Defendants counsel should attempt to slot the depositions that they need to take during those less preferred periods.

- That depositions will be able to be scheduled during the week-long National Automotive Dealer Association conference in which all, or virtually all, of the parties will be largely unavailable.

In short, Plaintiffs' proposed approach to calendaring depositions is as unworkable as it is unfair. Defendants propose instead that within 3 business days after the ruling on this motion, the Parties will let the other side know their proposed witnesses for October. Because the substantial completion date for discovery is not until October 12, and because there are significant issues pending before the court regarding discovery, Defendants propose that they be permitted a reasonable amount of time to review documents before scheduling additional depositions. *See* Proposed Order at Part IV(D).

The parties have agreed to a deposition scheduling committee that will work together to schedule depositions (one lawyer from each of the Kellogg, Milberg, Mayer Brown, and Gibbs & Bruns firms). Defendants propose that the committee schedule depositions on a monthly basis, to allow Defendants the time necessary to identify Plaintiffs witnesses after an opportunity to review their documents, and to slot depositions on an equal basis rather than based on Plaintiffs left-overs as Plaintiffs demand. *See* Proposed Order, Part IV(D). In light of Plaintiffs' meager or nonexistent productions, Defendants are already at a distinct disadvantage. Plaintiffs' calendaring proposal only compounds it.

### 4. 30(b)(6) Depositions (Proposed Order, Part IV(D), cont.)

Plaintiffs' proposal on the treatment of 30(b)(6) depositions in their proposed calendar (Ex. 5) highlights the unworkability of Plaintiffs' proposal. Plaintiffs have proposed that their 30(b)(6) depositions count as "one" deposition for each of CDK and Reynolds. However, the most recent 30(b)(6) notices served by Authenticom contemplated 56 numbered topics (156 topics including subparts) for CDK and 48 numbered topics (116 topics including subparts) for Reynolds. Ex. 6. Authenticom's 30(b)(6) notices were, of course, unreasonable on their face, and Defendants would move for protection if any such notice were renewed. A corporate representative deposition like those contemplated by Plaintiffs would require multiple representatives in depositions that spanned days if not weeks if permitted to proceed.

To prevent such abuses, Defendants construe the party-witness limits and 7-hour limits of Proposed Order Parts I & II to apply to 30(b)(6) notices as well. In other words, Defendants seek to limit each 30(b)(6) notice to topics that a single witness (counting against the party-witness limits) could reasonably cover, for which the examining party will have 7 hours on the record. The parties, therefore, must tailor their notices to related topics that can be covered by a single witness in a single day. The parties may of course issue as many single 30(b)(6) notices as they choose, subject to the limits of the party-depositions in the deposition protocol order, with each single notice counting as a single deposition under those limits.

### 5. Claims of Privilege / Conduct at Depositions (Proposed Order, Parts VII(A)(3) & IX(C))

The parties are largely agreed on issues of privilege and conduct at depositions. For example, the parties agree that breaks cannot be taken while a question is pending, except for the limited purpose of determining whether there is a privilege objection. Proposed Order, Part IX(B). The parties also agree that "all depositions shall be conducted in accordance with

14

applicable Federal Rules of Civil Procedure, Federal Rules of Evidence, the Local Rules of the United States District Court for the Northern District of Illinois, applicable standing orders regarding attorney conduct, ethical rules governing conduct of attorneys, and standard practice and rulings of courts in the United States District Court for the Northern District of Illinois, and this Order." Proposed Order, Part IX(A). However, Plaintiffs seek to insert a blanket requirement that witnesses also answer "whether counsel conferred with a deponent about his or her testimony during a private conference/break." Plaintiffs incorporate this request in two places in their Proposed Order (*see* Plaintiffs Proposed Order at Parts VII(A)(3) and second sentence of Part IX(C)). Given that conferences may be privileged, Defendants object to such a categorical invasion of the attorney-client privilege, and request that this sentence be removed from both places in any final order.

## CONCLUSION

For the forgoing reasons, the Defendants respectfully request the entry of the attached Proposed Order to govern depositions in this MDL.

Dated: September 18, 2018      Respectfully submitted,

*/s/ Aundrea K. Gulley*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross M. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 650-8805
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

*/s/ Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street, NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendants CDK Global, LLC and Computerized Vehicle Registration*

## **CERTIFICATE OF SERVICE**

      I, Aundrea K. Gulley, an attorney, hereby certify that on September 18, 2018, I caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF A DEPOSITION PROTOCOL TO GOVERN MDL DEPOSITIONS**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                            */s/ Aundrea K. Gulley*
                                            Aundrea K. Gulley
                                            GIBBS & BRUNS LLP
                                            1100 Louisiana, Suite 5300
                                            Houston, Texas 77002
                                            Phone: (713) 650-8805
                                            E-mail: agulley@gibbsbruns.com