**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION
FOR ENTRY OF DEPOSITION PROTOCOL ORDER**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

   I. Plaintiffs Should Be Allowed to Take 45 Depositions of Defendants............................... 3

   II. Plaintiffs Should Be Allowed to Take 18 Third-Party Depositions ................................. 7

   III. The Court Should Apportion the Total Number of Depositions 60% for Plaintiffs and
       40% for Defendants ......................................................................................................... 8

   IV. Depositions Should Be Scheduled On a Multi-Track Basis, as Necessary, to Comply
       with Court-Ordered Discovery Deadlines ....................................................................... 9

   V. Two-Day Depositions of Mr. Schaefer and Mr. Gardner Are Necessary........................ 12

   VI. A Deponent Should Be Required to Answer Whether the Deponent Conferred with
       Counsel about His/Her Testimony During a Break ......................................................... 14

CONCLUSION.......................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
  1993 WL 171359 (N.D. Ill. May 18, 1993)............................................................... 14

*Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*,
  2007 WL 4557820 (N.D. Ill. Dec. 21, 2007)............................................................ 16

*Arista Records LLC v. Lime Group LLC*,
  2008 WL 1752254 (S.D.N.Y. Apr. 16, 2008) ......................................................... 17

*Authenticom, Inc. v. CDK Global, LLC*,
  874 F.3d 1019 (7th Cir. 2017) ............................................................................. 6, 9

*Callahan v. A.E.V. Inc.*,
  947 F. Supp. 175 (W.D. Pa. 1996) ......................................................................... 10

*Canal Barge Co. v. Commonwealth Edison Co.*,
  2001 WL 817853 (N.D. Ill. July 19, 2001) ............................................................ 16

*Coates v. Johnson & Johnson*,
  85 F.R.D. 731 (N.D. Ill. 1980) ............................................................................... 18

*Evans v. TIN, Inc.*,
  2013 WL 4501061 (E.D. La. Aug. 21, 2013).......................................................... 15

*In re Aftermarket Filters*,
  2010 WL 3909502 (N.D. Ill. Oct. 1, 2010) ............................................................ 11

*In re Broiler Chicken Antitrust Litig.*,
  2018 WL 999899 (N.D. Ill. Feb. 21, 2018) ............................................................ 18

*In re CFS-Related Sec. Fraud Litig.*,
  256 F. Supp. 2d 1227 (N.D. Okla. 2003)........................................................... 14, 15

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  2012 WL 1533221 (N.D. Ill. Apr. 27, 2012)........................................................... 11

*In re The TJX Cos., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  2008 WL 717890 (D. Kan. Mar. 17, 2008) ............................................................ 14

*In re Urethane Antitrust Litig.*,
  261 F.R.D. 570 (D. Kan. 2009) .............................................................................. 10

*Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*,
  2015 WL 4458903 (S.D. Ind. July 21, 2015) ......................................................... 16

*Kleen Prods. LLC v. Packaging Corp. of Am.*,
   2012 WL 4498465 (N.D. Ill. Sept. 28, 2012)......................................................... 10

*Parkland Venture, LLC v. City of Muskego*,
   2010 WL 4723411 (E.D. Wis. Nov. 15, 2010).......................................................... 17

**OTHER AUTHORITIES**

Case Management Order, *In re Optical Disk Drive Prods. Antitrust Litg.*,
   No. 3:10-md-2143, (N.D. Cal. Jul. 17, 2012), Dkt. 606............................................ 8

Case Management Order, *In Re Taxotere (Docetaxel) Prods. Liab. Litig.*,
   No. 2:16-md-02740 (E.D. La. Nov. 15, 2017), Dkt. 1110 ....................................... 10

Corrected Case Management Order No. 5, *In Re Stryker LFIT V40 Femoral
   Head Prods. Liab. Litig.*, MDL No. 17-md-2768 (D. Mass. Jan. 19, 2018), Dkt. 622 ............ 10

Joint Initial Report, *In re Credit Default Swaps Antitrust Litig.*,
   No. 1:13-md-02476 (S.D.N.Y Sept. 18, 2014), Dkt. 334........................................... 8

*Manual for Complex Litigation (Fourth)* § 11.454 (2004) ........................................... 14

Order, *In Re Lithium Ion Batteries Antitrust Litg.*,
   No. 4:13-md-02420 (N.D. Cal. Oct. 19, 2015), Dkt. 905........................................... 8

Stipulation and Order, *In Re Capacitors Antitrust Litig.*,
   No. 14-cv-03264 (N.D. Cal. May 28, 2015), Dkt. 725.............................................. 8

## INTRODUCTION

Plaintiffs in this MDL, consisting of (1) a class of Dealership Plaintiffs, represented by 25 individual dealerships; (2) a class of Vendor Plaintiffs, represented by Plaintiff Loop, LLC, d/b/a AutoLoop; (3) Cox Automotive, Inc. and its eight subsidiaries; (4) Motor Vehicle Software Corporation ("MVSC"); and (5) Authenticom, Inc. (collectively, "Plaintiffs"), respectfully submit this brief in support of their motion for the entry of the accompanying proposed Deposition Protocol Order ("Order").

The parties have reached agreement regarding the vast majority of the proposed Order. And Plaintiffs have agreed to the full number of depositions that Defendants CDK Global, LLC ("CDK"), The Reynolds and Reynolds Company ("Reynolds"), and Computerized Vehicle Registration ("CVR") (collectively, "Defendants") seek from Plaintiffs and third parties. Defendants, however, have not reciprocated. In this large and complex antitrust MDL, Plaintiffs seek a modest total of 45 party depositions, but Defendants are willing to provide *only 25 depositions* across all three Defendants – including 30(b)(6) depositions. As explained below, Defendants' proposed number is so low that it would greatly prejudice Plaintiffs' prosecution of their case. As for third-party depositions, Plaintiffs seek 18 total third-party depositions – again, a very modest number for a case of this magnitude – but Defendants have proposed *only 12*, which is too few given that evidence from third parties is critical to Plaintiffs' claims.

Defendants do not allege that Plaintiffs' requested depositions are irrelevant or disproportionate to the needs of the case given the detailed allegations of unlawful conduct that have been deemed sufficient to state a claim under the antitrust laws. Instead, Defendants' objection rests on the premise that the requested depositions cannot be feasibly completed before the February 15, 2019 discovery deadline. But, as we explain below, Plaintiffs' proposal is entirely manageable in the time allotted. Plaintiffs have already identified the witnesses they

seek to depose, and have provided a calendar with the requested dates for the deponents. *See* Exhibit A[1]. As the calendar makes clear, Plaintiffs' proposed schedule leaves ample available days for Defendants' requested depositions. Defendants' objections rest on rigid and untenable assumption that Defendants get exactly the same number of depositions as Plaintiffs, even though the case revolves around the conduct of *Defendants*, not Plaintiffs. Defendants also have absolutely refused to have more than one deposition in the case on a given day, even though multi-tracking depositions on certain days is commonplace in large cases such as this.

Defendants' adherence to these inflexible and arbitrary constraints appears to have a deeper motive to delay the resolution of the serious charges against them, as evidenced by their threat to seek a postponement of the case schedule if Plaintiffs insist on additional depositions. To be clear, Plaintiffs adamantly oppose any extension of the case schedule, which Judge St. Eve ordered after extensive briefing by the parties. Indeed, any extension is directly contrary to the Seventh Circuit's direction that, with respect to Authenticom, the district court "expedite its final judgment" so that a "potentially sound antitrust case [does] not disappear before its eyes because the plaintiff runs a high risk of going out of business while the litigation drags on." *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1021, 1026 (7th Cir. 2017); *see also* Case Management Order, Dkt. 166. The Court should adopt Plaintiffs' reasonable proposal, and maintain the current schedule for completion of those depositions.

---

[1] Citations marked as "Ex." are Exhibits attached to the Declaration of Michael N. Nemelka in Support of MDL Plaintiffs' Motion for Entry of Deposition Protocol Order.

To summarize, the parties' positions are as follows:

|  | **Plaintiffs' Position** | **Defendants' Position** |
|---|---|---|
| Party Depositions by Plaintiffs | 45 | 25 |
| Party Depositions by Defendants | 25[2] | 25 |
| Third-Party Depositions by Plaintiffs | 18 | 12 |
| Third-Party Depositions by Defendants | 12 | 12 |
| Total Depositions | 100 | 74 |
| Allow for Multi-Tracking | Yes | No |
| Division of Total Depositions | 60% Plaintiffs / 40% Defendants | 50% Plaintiffs / 50% Defendants |

Plaintiffs respectfully request that the Court to enter their proposed Order on these, and other issues, as explained below.

## ARGUMENT

### I. Plaintiffs Should Be Allowed to Take 45 Depositions of Defendants

Plaintiffs have noticed the depositions of 42 individual defendant witnesses: 23 for CDK, 17 for Reynolds, and two for CVR – along with one Rule 30(b)(6) deposition for each Defendant, for a total of 45 depositions. Plaintiffs carefully selected the witnesses, and have provided Defendants with a comprehensive calendar with specific dates for each deposition spread out over the case schedule's four-month deposition period. *See* Ex. A. Defendants have rejected the requested depositions and dates, insisting instead that Plaintiffs should be limited to 25 total depositions across all Defendants. That number of depositions is much too low for a major antitrust MDL like this and should be rejected.

*First*, Defendants have made (and can make) no argument that the requested deponents are irrelevant or disproportionate to the needs of this MDL. No deponent is peripheral to the

---

[2] Defendants initially requested 30 depositions, and Plaintiffs agreed to that request. *See* Ex. C. Defendants, however, changed position, asserting that the total number of party depositions should be split evenly. Defendants have therefore reduced their requested number of depositions to 25 in order to limit Plaintiffs to 25 depositions as well. *See* Ex. D.

relevant factual issues. Each is a document custodian agreed to by Defendants and either played a key role in the collusive conversations between Defendants, worked internally to implement the conspiracy, or communicated directly with dealerships and vendors on issues in this case.

*Second*, Defendants' contention that the requested depositions cannot be completed before the discovery deadline of February 15, 2019, is based on their own artificial constraints and thus provides no justification for artificially limiting the number of depositions Plaintiffs should be permitted to take. As the deposition calendar demonstrates, *see* Ex. A, there is enough time in the existing schedule to complete the party depositions proposed by Plaintiffs. Plaintiffs have identified the specific dates for each of the witnesses, and spaced them across the deposition calendar. *Id*. Plaintiffs' proposal leaves **50** available business days on the calendar (excluding holidays and the week between Christmas and New Year's Day) to schedule Defendants' 25 depositions and third parties. *Id*.[3] Plaintiffs acknowledge that it will be a busy four months of depositions, but that is not unusual in complex federal litigation.

*Third*, Defendants' effort to impose unnecessary constraints on deposition scheduling – with the effect of making it more difficult to complete the requested depositions within the set schedule – similarly cannot justify denying Plaintiffs necessary discovery. Defendants' insistence that there can be no double-tracking of depositions is (as explained further below) inconsistent with standard practice, undermines the Court's direction to find creative solutions for working within the condensed timeline, and is unreasonable in light of the large teams and able lawyers representing both sides. *See infra* Part IV. Defendants' refusal to schedule more

---

[3] Plaintiffs have requested that Defendants start identifying dates for their 25 witnesses, but Defendants have refused. *See* Exs. B and C. Defendants claim that they first need completed document productions, but Plaintiffs are producing documents on a rolling basis – Authenticom and the Vendor Plaintiffs have each produced thousands of documents, and the Dealership Plaintiffs will begin their productions shortly. There is no reason that Defendants, based on the knowledge and documents they already have, cannot start identifying deposition witnesses and dates now.

than two total Defendant depositions within a single week is likewise unreasonable. According to Defendants, if two CDK witnesses are deposed in a week, not a single Reynolds or CVR deposition can take place that week. Such inflexible rules are unnecessary and serve only to impede the progress of discovery.[4] There is likewise no justification for Defendants' categorical rejection of Plaintiffs' offer to take two half-day depositions on the same day, one morning and one afternoon. *See* Ex. A. Half-day depositions at the same location on the same day are neither unusual nor unreasonable. They are another way to complete depositions efficiently.

*Fourth*, Defendants' offer to agree to the requested depositions if Plaintiffs agree to a two-month extension to the case schedule is a red flag, inconsistent with this Court's prior order, and unacceptable to Plaintiffs. As this Court has recognized, the MDL court is under twin directives. *See* Hr'g Tr. 30:9-16 (Apr. 6, 2018), Dkt. 116. First, in vacating the preliminary injunction in Authenticom's favor, the Seventh Circuit instructed the district court on remand to "expedite its final judgment." *Authenticom*, 874 F.3d at 1021. Second, the MDL Panel transferred *Authenticom* and the other cases to this Court for coordinated discovery. As Judge St. Eve summarized:

> I am mindful of the Seventh Circuit's directive. And I am mindful of the potential harm to Authenticom, which is why they gave their directive that that piece should move as quickly as possible. But I am also mindful of the expense and the issues of making the defendants do things multiple times. So, I am going to try to help you, if you cannot come to a solution on your own, to creatively achieve both of those goals to the best extent possible.

---

[4] Similarly, Defendants contend that only two witnesses from Plaintiffs should be deposed in a week. But Plaintiffs do not want nor need this limitation for their witnesses. Plaintiffs are willing to have their witnesses deposed on consecutive and multiple days in a given week. And with respect to third parties, Defendants propose a stringent one-per-week rule. But the parties should be more flexible than that when working with the schedules of third parties. Third-party depositions should take place when most convenient for the third parties, not based on the convenience of Defendants.

Hr'g Tr. 30:9-16 (Apr. 6, 2018), Dkt. 116. Based on the Court's direction, the parties worked hard on a creative solution that best achieved the two goals of this MDL, but they could not agree. Ultimately, the Court entered the schedule proposed by Defendants (Plaintiffs had proposed a faster schedule). *See* Dkt. 166. Defendants cannot now artificially restrict the number of depositions Plaintiffs are entitled to take pursuant to a schedule Defendants themselves proposed.[5]

     *Finally*, this is an antitrust conspiracy and monopolization case, involving claims under both Section 1 and Section 2 of the Sherman Act, and the requested depositions are more than appropriate in light of the serious allegations at issue – something that Defendants do not dispute. In antitrust cases, courts "permit broad discovery," *Kleen Prods. LLC v. Packaging Corp. of Am.*, 2012 WL 4498465, at *13 (N.D. Ill. Sept. 28, 2012) (citing cases), because antitrust cases "involve improper business conduct" that is often "covert and must be gleaned from records, conduct, and business relationships," *Callahan v. A.E.V. Inc.*, 947 F. Supp. 175, 179 (W.D. Pa. 1996). And in cases involving collusion, "this liberal policy favoring discovery is particularly appropriate because broad discovery may be needed to uncover evidence of invidious design, pattern, or intent." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 & n.12 (D. Kan. 2009) (citing cases). Restricting Plaintiffs to 25 total depositions across all three Defendants would severely prejudice Plaintiffs' ability to prosecute their claims. It would be inconsistent with the

---

[5] Defendants claim that they never would have proposed the schedule – which was ultimately entered – if they had known Plaintiffs would seek 45 party depositions. Defendants' position is contradicted by the facts. On November 21, 2017, Authenticom issued 23 deposition notices on Defendants before this MDL existed. *See* Ex. E. Afterwards, dealerships filed multiple class actions; AutoLoop filed a vendor class action; Cox Automotive filed its own major lawsuit with unique claims, including fraudulent inducement and breach of contract; and MVSC had its outstanding case with unique claims against not only CDK and Reynolds, but also CVR. It could not have come as a surprise that Plaintiffs combined would seek substantially more depositions than Authenticom did on its own.

principles guiding discovery in antitrust actions. And it would be highly unusual, if not unprecedented, in a major antitrust MDL like this one. *See infra* Part IV.

## II.     Plaintiffs Should Be Allowed to Take 18 Third-Party Depositions

Plaintiffs propose a total of 30 third-party depositions, with Plaintiffs taking 18 and Defendants taking 12. Ex D. Defendants propose 24 third-party depositions, with each side taking a maximum of 12. *Id*. Thus, as with party depositions, Plaintiffs are willing to give Defendants what they seek – 12 third-party depositions – but Defendants are not willing to give Plaintiffs the 6 additional third-party depositions that they need. Third-party discovery is an indispensable element of antitrust litigation in this case as it is in general, *see, e.g.*, *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 2012 WL 1533221, at *5 (N.D. Ill. Apr. 27, 2012), and the Court should grant Plaintiffs a total of 18 third-party depositions.

*First*, Plaintiffs need discovery from all sectors of the industry, while Defendants do not. This is best illustrated by the third-party subpoenas the parties have issued. Plaintiffs have served a total of 49 third-party subpoenas to the following: (1) former data integrators that Defendants drove from the market; (2) dealerships with unique evidence regarding Defendants' anticompetitive conduct; (3) vendors regarding their pass-through of integration fees; (4) car manufacturers regarding their need for integration services; (5) security firms that have audited Defendants' security practices; (6) other DMS providers; and (7) competitors to MVSC and CVR. *See* Nemelka Declaration ¶ 13. Defendants, by contrast, have served 22 third-party subpoenas to former employees of Authenticom; Authenticom's former subsidiaries; and to the dealers and vendors that supported Authenticom at the preliminary injunction hearing. *Id*. ¶ 14.

*Second*, particularly for the Dealership Class Plaintiffs, depositions from subpoenaed vendors is essential to proving pass-through charges to establish antitrust injury, which is the core of an indirect purchaser case. *See, e.g.*, *In re Aftermarket Filters,* 2010 WL 3909502, at *2

(N.D. Ill. Oct. 1, 2010) ("[I]t is undisputed that discovery from direct purchasers is necessary" for indirect purchasers.). That pass-through data is available from vendors, but no one else, because Defendants have concealed the data through price secrecy provisions in vendor contracts. *See* Dealer Class Consol. Compl. ¶¶ 118-121, Dkt. 198. Defendants cannot now stand in the way of discovery that they, through their anticompetitive price secrecy provisions, have made more difficult to obtain.

*Finally*, courts in other antitrust class actions have not set a limit on the number of third-party depositions, or set a limit far higher than Plaintiffs propose. *See*, *e.g.*, Stipulation and Order at I.B(1), *In Re Capacitors Antitrust Litig.*, No. 14-cv-03264 (N.D. Cal. May 28, 2015), Dkt. 725 (declining to set a numeric limit on third-party depositions); Order at I(D), *In Re Lithium Ion Batteries Antitrust Litg.*, No. 4:13-md-02420 (N.D. Cal. Oct. 19, 2015), Dkt. 905 (same); Case Management Order at 2-3, *In re Optical Disk Drive Prods. Antitrust Litg.*, No. 3:10-md-2143, (N.D. Cal. Jul. 17, 2012), Dkt. 606 (same); Joint Initial Report at VI(G), *In re Credit Default Swaps Antitrust Litig.*, No. 1:13-md-02476 (S.D.N.Y Sept. 18, 2014), Dkt. 334 (each side provided 45 third-party depositions).

## III. The Court Should Apportion the Total Number of Depositions 60% for Plaintiffs and 40% for Defendants

Plaintiffs' proposed deposition numbers – party depositions: 45 for Plaintiffs and 25 for Defendants; third-party depositions: 18 for Plaintiffs and 12 for Defendants – divides the total depositions 60% for Plaintiffs and 40% for Defendants. Defendants, on the other hand, maintain that the split should be 50/50. Whatever the total number of depositions allowed by the Court, the split should be Plaintiffs' proposed 60/40.

This case is about the alleged antitrust violations of *Defendants*, not Plaintiffs. Defendants' conduct has sparked far-reaching investigations by the FTC and New York

Attorney General. Defendants are being investigated, not Plaintiffs. Defendants' conduct involves not just conspiracy charges under Section 1, but also monopolization charges under Section 2 – claims that have been upheld as viable not only by this Court, but also by two other federal courts before this litigation was consolidated into an MDL. On these claims and others, Plaintiffs bear the burden of proof. At a minimum, therefore, Plaintiffs should have at least 60% of the overall depositions in this MDL.

Defendants claim that they need as many depositions as Plaintiffs, but that is not so. Plaintiffs' claims are centered on a conspiracy between CDK and Reynolds, and any exculpatory evidence would come from Defendants' themselves, not from Plaintiffs. Moreover, Defendants have asserted no counterclaims against the Dealership Class Plaintiffs; no counterclaims against Cox Automotive; no counterclaims against MVSC; and no counterclaims against AutoLoop.

Finally, Plaintiffs have granted Defendants the full number of depositions they have requested. In fact, Defendants at one time sought 30 total depositions, which Plaintiffs agreed to. But in order to limit Plaintiffs to 25 depositions, and maintain the 50/50 split, Defendants now seek only 25 depositions. Just because Defendants seek fewer depositions does not mean Plaintiffs should be hamstrung in proving their claims. Whatever total number of depositions is granted by the Court, Plaintiffs should get at least 60% of them.

## IV. Depositions Should Be Scheduled On a Multi-Track Basis, as Necessary, to Comply with Court-Ordered Discovery Deadlines

As is commonplace in large cases with compressed discovery schedules, Plaintiffs propose that some depositions be scheduled on a multi-track basis, with more than one deposition taking place per day. The deposition calendar proposed by Plaintiffs, *see* Ex. A, demonstrates both the feasibility and necessity of multi-tracking depositions in order to comply

with case deadlines. Defendants have rejected anything but a one-deposition-per-day rule, claiming that multi-tracking would be overly burdensome.

In complex litigation, "to meet discovery deadlines it may be necessary to conduct depositions on a multitrack basis, with depositions of several different witnesses being taken at the same time in one or more locations." *See In re The TJX Cos., Inc., Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 2008 WL 717890, at *3 (D. Kan. Mar. 17, 2008) (citing *Manual for Complex Litigation (Fourth)* § 11.454 (2004)). Depositions frequently occur on a multitrack basis in the MDL context. *See* Corrected Case Management Order No. 5 at III(B), *In Re Stryker LFIT V40 Femoral Head Prods. Liab. Litig.*, MDL No. 17-md-2768 (D. Mass. Jan. 19, 2018), Dkt. 622 ("[When] there is a demonstrated need to multitrack depositions of the employees of defendants . . . the parties shall meet and confer on the establishment of a reasonable schedule . . ."); Case Management Order at III(E), *In Re Taxotere (Docetaxel) Prods. Liab. Litig.*, No. 2:16-md-02740 (E.D. La. Nov. 15, 2017), Dkt. 1110 ("multi-tracking of depositions may be necessary considering the date of the trials and the status of discovery. The parties shall meet and confer on the establishment of a reasonable schedule for the multi-tracking of deposition").

Multi-tracked deposition are used by courts as a way to ensure cases meet discovery deadlines. *See In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1241-42 (N.D. Okla. 2003) (double-track deposition schedule permitted over 200 witnesses to be deposed); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 1993 WL 171359, at *2 (N.D. Ill. May 18, 1993) (noting the parties' ability to meet an "accelerated discovery schedule" through double-tracked depositions); *Evans v. TIN, Inc.*, 2013 WL 4501061, at *7 (E.D. La. Aug. 21, 2013) (ensuring an expedited

10

case resolution in the face of "rigorous time limitations" by "conducting up to three depositions simultaneously per day").

Multi-tracking depositions in this MDL is even more appropriate than in the typical case. As described above, the Seventh Circuit directed the district court to expedite the *Authenticom* case to final judgment, and Judge St. Eve specifically ordered the parties to search for creative solutions to make that happen, while still coordinating to avoid duplication. *See supra* pp. 5-6. Therefore, the standard practice of multi-tracking depositions – far from being controversial – should have been one of the first things the parties agreed upon. In fact, the Deposition Protocol Order recently addressed by this Court in *In Re Broiler Chicken Antitrust Litig.*, 16-cv-08637 (N.D. Ill. June 27, 2018), Dkt. 995 (Ex. F), which was used as the template for the Deposition Protocol in this case, provides for "double- or triple-tracking of depositions" where doing so "becomes necessary to comply with scheduling deadlines." *See also* Ex. G, Order Regarding Deposition Protocol at Section II(B), *In re Fresh and Process Potatoes Antitrust Litig.*, No 10-md-02186 (D. Idaho Oct. 22, 2013), Dkt. 485 (permitting up to four depositions per day, with five months remaining in fact discovery, where over 100 depositions were authorized); Ex. H, Discovery Order No. 3 at Section 3(a), *In Re Blue Cross Blue Shield Antitrust Litig.*, No. 13-cv-20000 (N.D. Ala. Feb. 12, 2015), Dkt. 327 ("Multitracking of depositions is expected where appropriate; however, no more than three employees or former employees of a single plaintiff or defendant may be scheduled for deposition on the same day, and any such depositions shall not overlap, unless the interested parties consent.").

Defendants' only argument against multi-tracking relates to attorney burden, but Defendants are represented by highly capable and well-staffed law firms. Indeed, 29 lawyers have entered appearances in this MDL on behalf of Defendants. Defense counsel have attorneys

within their ranks to cover multi-tracked depositions.  It is what parties do every day in complex litigation, and it should be ordered in this MDL.

## V.     Two-Day Depositions of Mr. Schaefer and Mr. Gardner Are Necessary

Although depositions are presumptively seven hours, Rule 30(d) provides that, "[t]he court **must** allow additional time consistent with Rule 26(b)(2) if needed to fairly examine the deponent." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 4458903, at *1 (S.D. Ind. July 21, 2015) (emphasis in original) (quoting Rule 30(d)(1)).  Courts consider a variety of factors in setting the length of depositions, such as "if the examination will cover events occurring over a long period of time, if the witness will be questioned about numerous lengthy documents, or in multi-party cases." *Am. Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, 2007 WL 4557820, at *1 (N.D. Ill. Dec. 21, 2007).

1.     Good cause exists for two-day depositions of the two most important witnesses in this MDL:  CDK's Howard Gardner (Vice President for Data Strategy) and Reynolds' Robert Schaefer (Vice President for Data Services).  Mr. Gardner and Mr. Schaefer engaged in extensive collusive conversations at the heart of this MDL; they were the primary negotiators of Defendants' 2015 agreements; and they are the primary decision-making executives for CDK's and Reynolds' respective data integration policies.  Mr. Gardner and Mr. Schaefer are thus central figures in the most relevant documents and correspondence produced in discovery to date.[6]  Their importance in this MDL cannot be overstated.  *See, e.g., Canal Barge Co. v. Commonwealth Edison Co.*, 2001 WL 817853, at *4 (N.D. Ill. July 19, 2001) (authorizing two-day deposition based on "factual complexity" and the "need to refer to numerous accompanying

---

[6] A sampling of highly relevant documents featuring Mr. Gardner and Mr. Schaefer can be found in the exhibits attached to Cox Automotive's opposition to Defendants' motion to dismiss. *See* Dkt. 126-01 (Exhibit Nos. 1, 2, 6, 7, 8, 10).  Mr. Gardner, for example, is on 122,958 records that CDK has produced so far, with many more to come as CDK has not even produced his full custodial file yet.

documents"); *Parkland Venture, LLC v. City of Muskego*, 2010 WL 4723411, at *1 (E.D. Wis. Nov. 15, 2010) (two-day deposition for witness with "central role").

Two-day depositions of Mr. Gardner and Mr. Schaefer are also warranted in light of the magnitude of this MDL in which they are the central players. This case is not just a large antitrust MDL involving two class actions (plus multiple individual plaintiffs), but it has prompted active investigations by the FTC and the New York Attorney General. *See Arista Records LLC v. Lime Group LLC*, 2008 WL 1752254, at *2 (S.D.N.Y. Apr. 16, 2008) (authorizing two-day deposition where "the stakes are high, both sides have significant resources, and [the witness] is apparently a central figure in the case. . . . The presumptive length of depositions provided in Rule 30, which are more than adequate for the general run of simpler litigation, was not designed for a witness of this significance in a case of this magnitude."). This MDL also features a dual lead counsel structure, meaning two different sets of plaintiffs will need time to examine Mr. Gardner and Mr. Schaefer (although Plaintiffs will of course strive to avoid duplicative questioning) – another factor favoring extra time. Of the scores of potential witnesses, Plaintiffs have limited their request for additional time to just two.

2.      Defendants contend that if two-day depositions are granted for Mr. Gardner and Mr. Schaefer, then they should get *five* two-day depositions (for Authenticom, MVSC, Cox Automotive, and the respective vendor and dealership classes). *See* Ex. D. But this MDL centers on whether CDK's and Reynolds' conduct violates the antitrust laws – issues on which plaintiffs bear the burden of proof. Moreover, prior to Plaintiffs' request for two-day depositions of Mr. Gardner and Mr. Schaefer, Defendants never raised a need for two-day depositions of *any* plaintiff, and request them now based not on need, but on hollow reciprocity. Nor have

13

Defendants identified any particular witness to demonstrate the necessary good cause for a two-day deposition. There are no such plaintiff witnesses.

Deposing a named class plaintiff for two days would be harassment. *See In re Broiler Chicken Antitrust Litig.*, 2018 WL 999899, at *1 (N.D. Ill. Feb. 21, 2018) (the potential value of discovery from putative class representatives must be weighed against the "potential chilling effect on private antitrust enforcement"). There is no witness from Cox Automotive, MVSC, or AutoLoop, and certainly there is not one particular dealership among the 25 named dealership plaintiffs, that comes close to rivaling the importance of Mr. Gardner and Mr. Schaefer. There is no scenario Defendants can reference that would support any deposition exceeding seven hours for a dealership or vendor that are class representatives. As for Authenticom, on April 23, 2018, Defendants already deposed CEO Steve Cottrell for over five hours on a wide range of topics, including Authenticom's finances, customers, and business operations. *See* Nemelka Declaration ¶ 18. Defendants can get a second deposition day from him, but not a third. Not even Plaintiffs are asking for three days for Mr. Gardner and Mr. Schaefer.

## VI. A Deponent Should Be Required to Answer Whether the Deponent Conferred with Counsel about His/Her Testimony During a Break

Section IX(C) of the proposed Order provides in pertinent part that "[p]rivate conferences between deponents and attorneys to determine whether a privilege should be asserted and/or to determine whether to clarify or correct testimony previously given by the deponent are permissible." However, the parties disagree on the following sentence in that paragraph, which Defendants seek to omit:

> When a deposition resumes, counsel questioning a deponent may inquire, and deponent shall answer, whether counsel conferred with a deponent about his or her testimony during a private conference/break.[7]

---

[7] Plaintiffs also include this language in Section VII(A)(3), "Conduct of Depositions," in the Deposition Protocol Order. *See* Ex. B.

14

*See* Ex. B, Proposed Deposition Protocol Order, Section IX(C). This sentence is appropriate because whether such a conversation took place is not privileged. *See Coates v. Johnson & Johnson*, 85 F.R.D. 731, 735 (N.D. Ill. 1980) (questions regarding when counsel conversations took place are "without the attorney-client privilege and must be answered.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed Deposition Protocol Order.

Dated:  September 18, 2018           Respectfully submitted,

*/s/ Peggy J. Wedgworth*              */s/ Derek T. Ho*

Peggy J. Wedgworth                Derek T. Ho

**MILBERG TADLER PHILLIPS**     **KELLOGG, HANSEN, TODD,**

**GROSSMAN LLP**              **FIGEL & FREDERICK, P.L.L.C.**

One Pennsylvania Plaza, 19th Floor   1615 M Street, NW, Suite 400

New York, NY 10119              Washington, D.C. 20036

(212) 594-5300                 (202) 326-7932

pwedgworth@milberg.com         dho@kellogghansen.com

*MDL Co-Lead Counsel*

16

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that on September 18, 2018, I caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR ENTRY OF DEPOSITION PROTOCOL ORDER** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
**FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

17