# Exhibit A

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| Case No. | CV 17-896 DSF (AFMx) | Date | 10/2/17 |
|---|---|---|---|
| Title | Motor Vehicle Software Corp. v. CDK Global, Inc., et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs | Attorneys Present for Defendants |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING in PART and DENYING in PART Defendants' Motions to Dismiss (Dkts. 60, 61, 63)

## I.    INTRODUCTION

Plaintiff Motor Vehicle Software Corp. (MVSC) brings this action for damages and injunctive relief against CDK Global, Inc. (CDK), The Reynolds and Reynolds Company (Reynolds), and Computerized Vehicle Registration, Inc. (CVR), alleging violations of the Sherman Act and California and Illinois state laws.  Defendants individually move to dismiss these claims.  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  For the reasons stated below, CDK's and Reynolds' Motions to Dismiss are GRANTED in PART and DENIED in PART, and CVR's Motion to Dismiss is GRANTED.

## II.    FACTUAL ALLEGATIONS

Plaintiff MVSC, formed in 2005, is a provider of electronic vehicle registration and titling services ("EVR").  First Am. Compl. (FAC) ¶ 18.  Defendant CVR, founded in 1992 and jointly owned by CDK (80 percent) and Reynolds (20 percent), competes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

with MVSC to provide EVR services in Illinois and California.[1]  Id. ¶¶ 7, 21.  EVR providers like MVSC and CVR partner with state governments to issue license plates, title, and registration for vehicles sold at car dealerships.[2]  Id. ¶ 2.  To perform these tasks, EVR providers require certain data (vehicle information, buyer information, and financing details) that is stored exclusively on car dealers' software operating systems, called Dealer Management Systems (DMS).  Id. ¶ 3.  Defendants CDK and Reynolds are the leading DMS providers, controlling between 75 and 80 percent of the DMS market in the United States, measured by number of dealers.  Id. ¶¶ 4, 31.  Although CDK and Reynolds provide dealers with DMS software and manage the dealers' data on DMS, the dealers themselves own their data.  Id. ¶ 85.  Both CDK and Reynolds offer vendors, including EVR providers, real time access to data on their DMS systems:  CDK's program is called Third Party Access (3PA) and Reynolds' program is called Reynolds Certified Interface (RCI).  Id. ¶ 5.  In addition to these programs, EVR providers and other vendors in need of DMS data are able, or historically have been able, to obtain that data from "data integrators," companies that specialize in aggregating, standardizing, and delivering data they pull from DMS.  Id. ¶ 12.

MVSC alleges that CDK and Reynolds entered into an illegal horizontal agreement, in place at least by January 2014, to prevent MVSC from obtaining the DMS data it needs to provide EVR services.  Id. ¶¶ 6, 94.  This agreement, MVSC asserts, was entered into with "CVR's encouragement" in order to eliminate MVSC as a competitor to CVR in the Illinois and California EVR markets and prohibit MVSC from competing with CVR in markets it may seek to enter in the future.  Id. ¶¶ 96, 102.  CDK and Reynolds are alleged to have enforced the illegal agreement by (1) refusing to allow MVSC to participate in 3PA and RCI, either by denying outright MVSC's requests or by demanding such exorbitant fees that participation was commercially unreasonable; and (2) eliminating competition in the "data integration market" and threatening dealers in

---

[1] Both Illinois and California require the use of EVR for registering and titling all cars sold in-state; Illinois additionally requires that printed registration and license plates be provided at the time of sale.  FAC ¶¶ 60, 66.  MVSC asserts that in Illinois, CVR has approximately 95 percent of the EVR market; in California, CVR controls approximately 40 percent, MVSC approximately 50 percent, and another competitor, Dealertrack, the remaining 10 percent of the EVR market.  Id. ¶¶ 61, 80.

[2] States regulate EVR providers within their boundaries; each state is thus a separate EVR market.  Id. ¶ 49.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

order to preclude MVSC from obtaining the requisite data by any other means.  Id. ¶¶ 11, 105, 109-16.

### A. CDK and Reynolds Agree to Prohibit MVSC From Participating in 3PA and RCI

MVSC applied to participate in CDK's 3PA program on five separate occasions between February 2014 and May 2016.  Id. ¶¶ 105-13.  Each time, MVSC's application was denied:  once without any explanation, once with the explanation that it was being denied because MVSC competes with CVR, and three times by quoting prices that were so high—far higher than the "standardized" $49 price CDK advertises for EVR providers on its published price list—that they were effective refusals to deal.[3]  Id. ¶¶ 91-92, 105, 110-13.  MVSC further alleges that a "participant in the collusive conversations" informed MVSC that this "illegal conspiracy" is called "Closed Category," which refers to 3PA being closed to MVSC, and a CDK executive confirmed that CDK "agreed" to "keep EVR as a 'closed category' within the 3PA program to keep MVSC out and to protect CVR."  Id. ¶¶ 100, 103.

Around the same time, MVSC applied twice to Reynolds' RCI program, but each time, MVSC alleges, it was quoted an exorbitant rate that if accepted would have forced MVSC to "operate at a steep loss."  Id. ¶¶ 115-16.  MVSC also asserts that Reynolds refused to offer a quote unless MVSC provided detailed information about MVSC's future business plans.  Id. ¶ 115.  When an MVSC executive complained to a CVR executive about Reynolds' quoted rates, the CVR executive "confirmed that the quotes were not serious and were simply designed as an effective refusal to deal."  Id. ¶ 117.  MVSC also was a "recurring topic of conversation" at CVR board meetings, which are attended by executives from both Reynolds and CDK.  Id. ¶ 101.

MVSC asserts that Defendants' illegal agreement to deny MVSC's participation in 3PA and RCI targets MVSC in the markets in which MVSC competes with CVR.  As an

---

[3] There is no objection to the Court considering the two documents (CDK's published price list and a data security publication) referenced in the FAC.  See CDK Request for Judicial Notice, Dkt. 62.  CDK contends that the $49 packages advertised in its published price list do not include the data EVR providers like MVSC require (vehicle information, buyer information, and financing information).  While it is true that the price list does not mention "EVR," it is not implausible that the "Dealer Website" package contains the data EVR providers require.  See Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

UNITED STATES DISTRICT COURT<br>
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

example, MVSC alleges that another EVR provider, AIB, Inc. (AIB), is allowed to participate in 3PA and RCI because AIB operates only in Texas and CVR does not operate in that state. <u>Id.</u> ¶ 119. By contrast, in Illinois and California, where MVSC competes with CVR, CDK and Reynolds refuse to allow EVR providers other than CVR to participate in 3PA and RCI. <u>Id.</u> ¶ 120. MVSC names specific individuals at CDK, Reynolds, and CVR who allegedly are responsible for "forming and implementing" the illicit agreement to block MVSC from participating in the third-party access programs. <u>Id.</u> ¶ 97.

### B. CDK and Reynolds Agree to Eliminate <u>Competition in the Data Integration Market</u>

Historically, MVSC has been able to obtain dealer data from intermediary "data integrators," who, for a fee, pull data from DMS and deliver it in a usable format to MVSC and other vendors. <u>Id.</u> ¶ 151. MVSC alleges, however, that in 2015, CDK and Reynolds agreed they would no longer compete with each other in the "Dealer Data Integration Market." <u>Id.</u> ¶ 123. Pursuant to the agreement, CDK agreed to stop accessing (and selling to vendors) data stored on Reynolds' DMS. <u>Id.</u> The 2015 agreement also mandated a coordinated effort between CDK and Reynolds to transition vendors who had relied on CDK for Reynolds' DMS data to Reynolds' RCI program. <u>Id.</u> ¶¶ 127-31.

According to MVSC, senior executives at CDK and Reynolds have admitted to entering into an agreement to "restrict access to dealer data on their systems and destroy data integrators." <u>Id.</u> ¶ 133. MVS alleges as an example that one of CDK's executives told an executive at a leading data integration firm, Authenticom,[4] that CDK and Reynolds had agreed to block such firms from accessing data on CDK's and Reynolds' DMS, and that Reynolds' executives had "delivered the same message." <u>Id.</u> ¶¶ 134-35.

### C. Defendants Seek to Preserve CVR's Monopoly in Illinois <u>and Regain its Monopoly in California</u>

<u>Illinois</u>. MVSC asserts that by refusing to allow MVSC (or any EVR provider other than CVR) to participate in 3PA and RCI, Defendants have ensured that no EVR provider can compete with CVR in Illinois. <u>Id.</u> ¶¶ 138-39. Because CDK and Reynolds

---

[4] Contrary to Plaintiff's assertion, the order in <u>Authenticom, Inc. v. CDK Global, LLC</u>, No. 17-cv-00318, 2017 WL 3017048 (W.D. Wis. July 14, 2017) granting that plaintiff's motion for a preliminary injunction is not "dispositive here."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

"control the management and decisionmaking of CVR" and because CDK and Reynolds' decision to block access to their third-party access programs is "the only reason" CVR maintains its dominant position, MVSC alleges that CDK and Reynolds are liable for CVR's monopolization of the Illinois EVR market.  Id. ¶ 141.

<u>California</u>.  Despite CVR's previously dominant position, MVSC claims that it was able to make inroads into California's EVR market because of MVSC's dedication to quality products and services and because California does not require that printed license plates and registration be provided at the time of sale.  Id. ¶ 142.  MVSC asserts, however, that CVR has engaged in an aggressive campaign to market itself as the only "certified" EVR provider in California (meaning that it has "certified integration" with CDK's DMS).  Id. ¶¶ 144-47.

MVSC alleges that, in addition to CVR exploiting its position, CDK and Reynolds have eliminated MVSC's ability to obtain dealer data through "intermediaries" in California—Reynolds by trying to "choke off" data integrator Authenticom, and CDK by seeking to cut off Authenticom and two other data integrators.  Id. ¶¶ 152-58.  MVSC also alleges that CDK and Reynolds are attempting to eliminate MVSC's final avenue for obtaining the data it needs by going after the dealers themselves, who can, on a daily basis, run a script that generates a report containing that data.  Id. ¶ 159.  According to MVSC, CDK and Reynolds have sought to disable the script and have threatened dealers with breach of contract claims if they transfer data to EVR providers in that manner.  Id. ¶¶ 159-66.  Given that "DMS is the mission-critical software that a car dealership cannot operate without," threats from DMS providers have weight.  Id. ¶¶ 4, 162.

Blocking data integrators and dealers from accessing and delivering DMS data to vendors directly harms MVSC, MVSC asserts, because the result is that MVSC has no source other than 3PA and RCI from which to obtain the data necessary to provide EVR services—and MVSC has been denied participation in both programs.  MVSC also alleges harm to competition generally and to dealerships and consumers:  by eliminating EVR providers like MVSC, dealerships are restricted in their EVR provider choice, car buyers are forced to embrace an inferior product, and innovation is stifled.  Id. ¶¶ 183-85.

**III.   LEGAL STANDARD**

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

grounds upon which it rests." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (ellipsis in
original; internal quotation marks omitted). But Rule 8 "requires more than labels and
conclusions, and a formulaic recitation of the elements of a cause of action will not do."
<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for
failure to state a claim upon which relief can be granted. "[W]hen ruling on a
defendant's motion to dismiss, a judge must accept as true all of the factual allegations
contained in the complaint." <u>Erickson</u>, 551 U.S. at 94. A court is "not bound to accept as
true a legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662,
678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders
naked assertion[s] devoid of further factual enhancement." <u>Id.</u> (alteration in original;
citation and internal quotation marks omitted). A complaint must "state a claim to relief
that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. This means that the complaint
must plead "factual content that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. "The plausibility
standard is not akin to a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." <u>Id.</u>

"If there are two alternative explanations, one advanced by defendant and the other
advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion
to dismiss under Rule 12(b)(6)." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).
"Plaintiff's complaint may be dismissed only when defendant's plausible alternative
explanation is so convincing that plaintiff's explanation is *implausible*." <u>Id.</u>

## IV.  DISCUSSION

### A. Plaintiff Has Stated a Claim Under Section 1 of the Sherman Act
### <u>(First Cause of Action)</u>

Section 1 of the Sherman Act prohibits conspiracies "in restraint of trade or
commerce." 15 U.S.C. § 1. To state a Section 1 claim, "a plaintiff must allege facts that,
if true, will prove: (1) the existence of a conspiracy, (2) intention on the part of the co-
conspirators to restrain trade, and (3) actual injury to competition." <u>Coal. For ICANN
Transparency, Inc. v. VeriSign, Inc.</u>, 611 F.3d 495, 501-02 (9th Cir. 2010) (citation
omitted). MVSC has sufficiently pleaded those elements. It alleges CDK and Reynolds
(1) conspired to block MVSC from participating in their respective third-party access

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

programs, (2) in order to restrain competition in the EVR market, and (3) there is an actual injury to competition because when EVR providers like MVSC are unable to compete, innovation is stifled and consumer choice restricted.[5]

Contrary to Defendants' contentions, MVSC has pleaded sufficient "who, what, when, and where" facts to state a plausible claim that CDK's and Reynolds' actions amount to more than mere parallel conduct. See In re Musical Instruments & Equip. Antitrust Litig., 798 F.3d 1186, 1194 n.6 (9th Cir. 2015); see also Twombley, 550 U.S. at 557 (when allegations of parallel conduct are set out to make a Section 1 claim, the plaintiff must plead enough nonconclusory facts to place that parallel conduct "in a context that raises a suggestion of a preceding agreement."). MVSC alleges: (1) it was quoted prices to participate in CDK's and Reynolds' third-party access programs that were in effect refusals to deal; (2) a CDK executive confirmed that MVSC would not be approved for 3PA access because CDK had classified EVR a "closed category" in order to keep MVSC from competing with CVR; (3) a CVR executive admitted that Reynolds' RCI participation quotes constituted a refusal to deal because they didn't "want [MVSC] in the program"; (4) CDK and Reynolds had a common motive to hamstring MVSC so that CVR could dominate the EVR market; (5) discussions related to the illegal agreement to cut MVSC out of the EVR market took place at CVR board meetings; and (6) CDK and Reynolds agreed and took affirmative steps to block MVSC's access to dealer data through means other than 3PA and RCI, by seeking to eliminate independent data integrators and prohibit dealers from transferring the data to MVSC.[6]

---

[5] MVSC also asserts that blocking MVSC's ability to obtain DMS data forces EVR consumers to use CVR—which MVSC alleges is more costly than (and inferior to) MVSC's EVR product. See VeriSign, 611 F.3d at 502-03 ("CFIT has also alleged that consumers are harmed by this anti-competitive restraint, in the form of higher prices for registration of domain names, and potentially lower-quality services. In combination with the allegations regarding the existence of the conspiracy between VeriSign and ICANN as well as the intent to restrain competition, these allegations of harm to competition are sufficient to state a claim under Section 1.").

[6] CDK and Reynolds argue that MVSC lacks standing to allege an antitrust violation in the "data integration" market because MVSC does not compete in that market. MVSC has alleged, however, that it is a direct consumer of data integrators' product. See Freeman v. San Diego Ass'n of Realtors, 322 F.3d 1133, 1154 (9th Cir. 2003), as amended on denial of reh'g (Apr. 24, 2003) ("If the associations exclude competitors, [plaintiff] suffers inflated prices, and she has standing to sue [under the Sherman Act] as an aggrieved consumer.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

MVSC has thus pleaded sufficient factual matter to "nudge" its allegations of a horizontal agreement between CDK and Reynolds "across the line from conceivable to plausible," and therefore survives a motion to dismiss. Twombley, 550 U.S. at 547; see also Starr, 652 F.3d at 1216. CDK's and Reynold's motions to dismiss for failure to state a claim under Section 1 of the Sherman Act are therefore DENIED.

**B. Plaintiff Has Failed to State a Claim Under Section 2 of the Sherman Act (Second through Fourth Causes of Action)**

Section 2 of the Sherman Act prohibits monopolization. 15 U.S.C. § 2. Plaintiff asserts three Section 2 claims: (1) monopolization of the Illinois EVR market (second cause of action); (2) attempted monopolization of the California EVR market (third cause of action); and (3) conspiracy to monopolize the Illinois and California EVR markets (fourth cause of action).

Defendants argue that Plaintiff's Section 2 claims should be dismissed to the extent they are based on allegations of concerted conduct rather than on the conduct of a single entity. See Rebel Oil Co. v. Atlantic Richfield Co., 51 F.3d 1421, 1443 (9th Cir. 1995) ("To pose a threat of monopolization, one firm *alone* must have the power to control market output and exclude competition. An oligopolist lacks this unilateral power."). The Court agrees, except with respect to Plaintiff's fourth cause of action, which alleges a conspiracy among CDK, Reynolds, and CVR to monopolize through one firm alone, i.e., CVR. As explained below, however, Plaintiff's Section 2 claims fail for other reasons.

A claim for monopolization under Section 2 has two elements: (1) defendant's "possession of monopoly power in the relevant market," and (2) defendant's "acquisition or perpetuation of this power by illegitimate 'predatory practices.'" VeriSign, 611 F.3d at 506 (citation omitted). To state a claim for attempted monopolization, Plaintiff "must allege facts that, if true, will prove: (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power." Id. (citation omitted). A claim for conspiracy to monopolize has four elements: "(1) the existence of a combination or conspiracy to monopolize; (2) an overt act in furtherance of the conspiracy; (3) the specific intent to monopolize; and (4) causal antitrust injury." Paladin Assocs., Inc. v. Montana Power Co., 328 F.3d 1145, 1158 (9th Cir. 2003).

A defendant may be found liable for monopolization only if the defendant competes in the relevant market. See Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

456 (1993) ("[D]emonstrating the dangerous probability of monopolization in an attempt case [] requires inquiry into the relevant product and geographic market and the defendant's economic power in that market.") (emphasis added); Mercy-Peninsula Ambulance, Inc. v. San Mateo Cty., 791 F.2d 755, 759 (9th Cir. 1986) ("The gravamen of a section 2 claim is the deliberate use of market power by a competitor to control price or exclude competition.") (emphasis added).

### 1. MVSC Has Not Alleged That CDK and Reynolds Compete in the Relevant EVR Markets

The First Amended Complaint defines the relevant markets for the monopolization claims as follows: the EVR market in Illinois for the monopolization claim (second cause of action); the EVR market in California for the attempted monopolization claim (third cause of action); and the EVR markets in both Illinois and California for the conspiracy to monopolize claim (fourth cause of action). MVSC does not allege, however, that CDK and Reynolds themselves possess monopoly power or even compete in those markets.[7]  See Spectrum, 506 U.S. at 456; Mercy-Peninsula Ambulance, 791 F.2d at 759.

Instead, MVSC claims that because CDK and Reynolds jointly own CVR—which holds a 95 percent share of the Illinois EVR market and a 40 percent share of the California EVR market—CDK, Reynolds, and CVR are "jointly and severally liable for any violation of the antitrust laws, including monopolization of the EVR market."  Dkt. 66 (Opp'n) at 20.  Because the Court finds that that MVSC has failed to state Section 2 claims against CVR (as discussed below), MVSC's second, third, and fourth causes of action against CDK and Reynolds are DISMISSED with leave to amend.[8]

---

[7] MVSC asserts that it is a direct consumer of "data integrators," but its Section 2 claims are directed solely at the EVR markets in Illinois and California.

[8] Therefore, the Court need not address whether MVSC adequately stated unilateral refusal to deal claims against CDK and Reynolds.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

### 2.  <u>MVSC Has Failed to State a Section 2 Claim Against CVR</u>

#### a.  Monopolization and Attempted Monopolization

MVSC has sufficiently alleged that CVR possesses monopoly power in Illinois, having an EVR market share of more than 95%.  FAC ¶ 138; <u>U.S. v. Grinnell Corp.</u>, 384 U.S. 563, 571 (1966) ("87% of the accredited central station service business leaves no doubt that the congeries of these defendants have monopoly power").  MVSC has failed, however, to plead facts demonstrating that CVR itself "acqui[red] or perpet[rated] . . . this power by illegitimate 'predatory practices'" sufficient to state a claim for monopolization or attempted monopolization.  <u>VeriSign</u>, 611 F.3d at 506 (citation omitted).  "Predatory conduct is 'conduct that is in itself an independent violation of the antitrust laws or that has no legitimate business justification other than to destroy or damage competition.'"  <u>Mozart Co. v. Mercedes-Benz of N. Am., Inc.</u>, 833 F.2d 1342, 1352 (9th Cir. 1987) (citation omitted).

None of the allegations related to CVR constitutes an independent violation of antitrust laws, and CVR's advertising and customer outreach efforts are consistent with legitimate competitive activity.  That CVR's former general manager, who allegedly denied MVSC's application to participate in 3PA, held a concurrent position at CDK and previously worked at Reynolds does not - without more - support MVSC's claim that the manager is "at the nexus of the conspiracy."  FAC ¶¶ 98, 101; <u>cf. Credit Bureau Servs. v. Experian Info. Sols.</u>, 2013 WL 3337676, at *8 (C.D. Cal. June 28, 2013) (naming executives at one defendant who formerly worked at another without alleging specific communications between the executives at the two companies does not state a claim).  Nor does the fact that MVSC may have been discussed at CVR board meetings where Reynolds and CDK were in attendance suggest a conspiracy.  FAC ¶ 101; <u>see In re Citric Acid Litig.</u>, 996 F.Supp. 951, 959 (N.D. Cal. 1998); <u>aff'd</u>, 191 F.3d 1090 (9th Cir. 1999) ("Where cooperation is necessary for a legitimate business purpose, the mere opportunity to conspire at business meetings is insufficient to support an inference of conspiracy.").  And that CVR engages in aggressive marketing, including leveraging its access to CDK's and Reynolds' data, appears consistent with legitimate competitive actions.  FAC ¶ 144; <u>see Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.</u>, 875 F.2d 1369, 1379 (9th Cir. 1989) ("[T]he goal of prevailing against all competitors is the very essence of a competitive marketplace."); <u>Mozart</u>, 833 F.2d at 1352.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

**b. Conspiracy to Monopolize**

CVR asserts that MVSC has failed to plead the first required element (the existence of a conspiracy) because CVR is wholly owned by CDK and Reynolds and thus has "a complete unity of interest" such that it is legally incapable of conspiring with its parent companies. It relies on Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 776 (1984), where the Supreme Court concluded that "the coordinated behavior of a parent and its wholly owned subsidiary falls outside the reach" of Section 1 of the Sherman Act.[9] MVSC argues in response that under the framework set out in Am. Needle, Inc. v. Nat'l Football League, 560 U.S. 183 (2010), it is "[not] determinative that two legally distinct entities have organized themselves under a single umbrella or into a structured joint venture," id. at 196, and here, CVR should be considered a distinct economic entity. Opp'n at 29-30.[10]

The Court need not determine the applicability of Copperweld and American Needle because MVSC has failed to plead facts sufficient to state a plausible claim that CVR conspired with CDK and Reynolds to monopolize the EVR markets in Illinois or California. As set out above, the few factual allegations related to CVR do not identify conspiratorial conversations between CVR and CDK or Reynolds. Alleging only that CVR had motive and opportunity to conspire is insufficient to suggest an illegal agreement. See Twombly, 550 U.S. at 556 (a conspiracy claim under the Sherman Act "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made."); Citric Acid, 996 F.Supp. at 959.

---

[9] See also Freeman, 322 F.3d at 1148 ("[T]he single-entity rule [announced in Copperweld] is relevant in a variety of contexts . . . . The theme in these cases is economic unity.") (citations omitted); Stanislaus Food Prod. Co. v. USS-POSCO Indus., No. CV F 09-0560, 2010 WL 3521979, at *20 (E.D. Cal. Sept. 3, 2010) ("Apart from economic unity, courts consider whether the entities compete."); Vollrath Co. v. Sammi Corp., No. CV 85-820 MRP, 1989 WL 201632, at *15 (C.D. Cal. Dec. 20, 1989), aff'd, 9 F.3d 1455 (9th Cir. 1993) (Copperweld single-entity rule should be equally applicable to allegations of conspiracy under Section 2 of the Sherman Act).

[10] MVSC claims that there is "no inconsistency between the argument that CDK and Reynolds are liable for monopolization as owners of the CVR joint venture, and the argument under American Needle that Reynolds, CDK, and CVR are distinct entities for purposes of allegations of unlawful conspiracy." Opp'n at 30. The Court need not address that issue at this time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

MVSC's second, third, and fourth causes of action against CVR are therefore DISMISSED with leave to amend.

### C. **State Law Claims (Fifth Through Eighth Causes of Action)**

MVSC alleges in its fifth cause of action that Defendants violated Section 3(3) of the Illinois Antitrust Act, which makes it illegal to "[e]stablish, maintain, use, or attempt to acquire monopoly power over any substantial part of trade or commerce of [Illinois] for the purpose of excluding competition or controlling, fixing or maintaining prices in such trade or commerce." 740 Ill. Comp. Stat. Ann. 10/3(3). The Illinois Antitrust Act "parallels the federal Sherman and Clayton Acts." Tamburo v. Dworkin, 601 F.3d 693, 700 (7th Cir. 2010); 740 Ill. Comp. Stat. Ann. 10/11 ("When the wording of this Act is identical or similar to that of a federal antitrust law, the courts of this State shall use the construction of the federal law by the federal courts as a guide in construing this Act."). Thus, for the same reasons the Court has dismissed the claims under Section 2 of the Sherman Act, MVSC's Illinois Antitrust Act claim is DISMISSED with leave to amend.

Defendants' motions to dismiss the sixth, seventh, and eighth causes of actions are DENIED as against Defendants CDK and Reynolds. See Cty. of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1160 (9th Cir. 2001) ("[T]he analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act was modeled after the Sherman Act.") (citation omitted); People v. Ebay, No. 12-cv-05874, 2013 WL 5423774, at *4 (N.D. Cal. Sept. 27, 2013) (claims under California's Cartwright Act and UCL "rise and fall" with Sherman Act claims) (citations omitted); In re Michaels Stores Pin Pad Litig., 830 F. Supp. 2d 518, 525 (N.D. Ill. 2011) ("To determine whether a practice is unfair under the ICFA, the court considers whether the practice offends public policy, whether it is immoral, unethical, oppressive, or unscrupulous, and whether it causes substantial injury to consumers. A plaintiff does not need to satisfy all three criteria to support a finding of unfairness.") (citation omitted). MVSC has failed, however, to allege facts sufficient to state a plausible claim against CVR under California and Illinois state laws. MVSC's seventh and eighth causes of action are DISMISSED against CVR with leave to amend.

### V. CONCLUSION

CDK's and Reynolds' motions to dismiss Plaintiff's first cause of action for failure to state a claim under Section 1 of the Sherman Act are DENIED. Defendants' motions to dismiss Plaintiff's second, third, and fourth causes of action for failure to state claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

under Section 2 of the Sherman Act are GRANTED with leave to amend. Defendants'
motions to dismiss Plaintiff's fifth cause of action under Section 3(3) of the Illinois
Antitrust Act are GRANTED with leave to amend. CDK's and Reynolds' motions to
dismiss Plaintiff's sixth cause of action under the Cartwright Act are DENIED.
Defendants' motions to dismiss Plaintiff's seventh and eighth causes of action under the
California Unfair Competition Law and the Illinois Consumer Fraud and Deceptive
Business Practices Act are DENIED as to Defendants CDK and Reynolds and
GRANTED with leave to amend as to Defendant CVR.

An amended complaint consistent with this Order may be filed and served no later
than November 2, 2017. Failure to file by that date will waive the right to do so. A
redlined version of the amended complaint that clearly identifies all changes from the
previously submitted complaint must be submitted to the chambers email and in paper
form. The Court does not grant leave to add new defendants or new claims. Leave to
add new defendants or new claims must be sought by a separate, properly noticed motion.

IT IS SO ORDERED.