# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---

IN RE: DEALER MANAGEMENT
SYSTEMS ANTITRUST LITIGATION

This Document Relates to All Cases

MDL No. 2817
Case No. 18 C 864

Hon. Robert M. Dow, Jr.
Magistrate Judge Jeffery T. Gilbert

---

**INDIVIDUAL PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION**
**OF DOCUMENTS FOR DEFENDANT COMPUTERIZED VEHICLE REGISTRATION**

---

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Motor Vehicle Software Corporation, Authenticom, Inc., Cox Automotive, Inc.,

Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley

Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., Xtime, and Loop, LLC ("Individual

Plaintiffs") hereby request that Defendant Computerized Vehicle Registration ("CVR")

produce all documents in its actual or constructive possession, custody, or control related

directly or indirectly to any of the matters described below.  All documents and tangible

things responsive hereto should be produced for inspection as soon as practicable.

Production shall be made at the offices of KELLOGG, HANSEN, TODD, FIGEL &

FREDERICK, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036, or as

otherwise agreed to by the parties.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

2.      "Authenticom" shall mean Authenticom, Inc., a Plaintiff in this MDL and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

3.      "AutoLoop" shall mean Loop, LLC and its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.      "Cox Automotive" shall mean Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., and Xtime, Inc. (collectively, "Cox Automotive") and their present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

5.      "MVSC" shall mean Motor Vehicle Software Corporation and its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.      "RTS" shall mean Dealertrack's Registration and Titling Service and its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

2

7.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

8.      "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief (hereinafter, "SoAF"), *Authenticom* Dkt. No. 87 (June 16, 2017).  "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF.  "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9.      "Communication" or "Communications" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form.  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

10.      "CVR" shall mean Computerized Vehicle Registration and its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.  ***For the avoidance of doubt, included within the definition of CVR shall be "AVRS."***

11.      "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

12.     "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

13.     "EVR" shall mean electronic vehicle registration and titling.

14.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

15.     The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16.     "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF.  "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17.     "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

18.     "You," "Your," or "Your company" shall mean the responding Defendant, its present or former predecessors, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation, any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding Defendant.

*For the avoidance of doubt, included within the definition of "You," "Your," or "Your Company" shall be "AVRS."*

## INSTRUCTIONS

1.      In producing documents and other materials, You must furnish all documents in Your possession, custody, or control, regardless of whether such documents or materials are possessed directly by You, Your employees or former employees, agents or former agents, parents, subsidiaries, affiliates, investigators, or by Your attorneys or their employees, agents, vendors, or investigators.

2.      All documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business.  All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained.

3.      Documents attached to one another should not be separated.  If any portion of any document is responsive to any portion of the document requests below, then the entire document must be produced.

4.      Documents shall be produced in such fashion as to identify the natural person in whose possession they were found (i.e., the document custodian).

5.      If any document responsive to any of these requests is privileged, and the document or any portion of the document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the following information:

        a.      the exact basis for withholding the document;
        b.      the date of such communication;
        c.      the medium of such communication;
        d.      the general subject matter of such communication (such description shall not be considered a waiver of Your claimed privilege);

e.      the identity of any document that was the subject of such communication and the present location of any such document;

f.      the identity of all persons involved in such communication; and

g.      the identity of any document which records, refers, or relates to such communication and the present location of any such document.

6.      Each document requested herein should be produced in its entirety and without deletion, redaction, or excision, except as permitted by a recognized privilege, regardless of whether You consider the entire document or only part of it to be relevant or responsive to these document requests. If You have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document You have redacted.

7.      Each request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of You or Your respective agents or attorneys. You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

8.      Unless otherwise stated, the date range for these Requests shall be 2011 to the present.

## **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

### **Communications between CVR and CDK/Reynolds**

**REQUEST NO. 1.**      All communications between CVR document custodians and CDK.

**REQUEST NO. 2.**      All communications between CVR document custodians and Reynolds.

**REQUEST NO. 3.**    All communications between CVR and CDK and/or Reynolds concerning or relating to MVSC, RTS, TitleTech, or any other EVR provider, including but not limited to:  (1) their access to dealer data stored on a CDK or Reynolds DMS; (2) their presence and market share in California, Illinois, or any other state EVR market; (3) their expansion or potential expansion into states beyond California; and (4) any competitive threat or perceived competitive threat posed by them to CVR.

**REQUEST NO. 4.**    All communications between CVR and CDK and/or Reynolds regarding data access by EVR providers.

**REQUEST NO. 5.**    All communications between CVR and CDK and/or Reynolds regarding data access fees to be charged to EVR providers.

**Data Access and Fees**

**REQUEST NO. 6.**    All documents and communications regarding how CVR obtains data from the DMSs of Reynolds and CDK dealers.

**REQUEST NO. 7.**    All documents and communications regarding any data integration agreement between CVR and any entity, including CDK, Reynolds, any non-CDK, non-Reynolds DMS provider, and/or any independent data integrator.

**REQUEST NO. 8.**    All documents and communications regarding the prices paid by and/or charged to CVR for data integration, including but not limited to 3PA fees, RCI fees, fees charged by independent integrators such as Authenticom, and fees charged by non-CDK, non-Reynolds DMS providers.

**REQUEST NO. 9.**    All documents and communications regarding the 3PA and RCI fees charged to and/or paid by CVR.

**REQUEST NO. 10.**   All documents and communications regarding access by CVR to dealer data on a CDK DMS through the 3PA program.

**REQUEST NO. 11.**   All documents and communications regarding access by CVR to dealer data on a Reynolds DMS through the RCI program.

**REQUEST NO. 12.**   All documents and communications regarding any data access restrictions, to which CVR is not subject, that CDK or Reynolds places on other EVR providers.

**REQUEST NO. 13.**   All documents and communications regarding CVR's access to a dealer's general ledger, and whether that access is provided to other EVR providers.

**REQUEST NO. 14.**   All documents and communications regarding any "category restrictions" in place at any time with respect to data integration.  *See*, *e.g.*, CDK-0001039, at 64.

**REQUEST NO. 15.**   All documents and communications relating to any "CVR Category" for data access by EVR providers.

**REQUEST NO. 16.**   All documents and communications relating to any "Closed Category" for data access by EVR providers.

**REQUEST NO. 17.**   All documents and communications regarding access by any EVR provider – whether MVSC, RTS, TitleTech, specifically, generally, or otherwise – to data on a CDK or Reynolds DMS.

**REQUEST NO. 18.**   All documents and communications regarding the prices to be charged to any EVR provider – whether MVSC, RTS, TitleTech, specifically, generally or otherwise – for access to data on a CDK or Reynolds DMS.

**REQUEST NO. 19.**   All documents and communications regarding MVSC's, RTS's, TitleTech's, or any other EVR provider's participation in the 3PA program.

**REQUEST NO. 20.**   All documents and communications regarding MVSC's, RTS's, TitleTech's, or any other EVR provider's participation in the RCI program.

**REQUEST NO. 21.**   All documents and communications related to MVSC's attempts or applications to join the 3PA or RCI program, including but not limited to communications regarding whether to permit MVSC to participate in the 3PA or RCI program; internal communications regarding any competitive threat that permitting MVSC to join the 3PA or RCI program might pose to CVR; and the terms and pricing offered to MVSC.

**REQUEST NO. 22.**   All documents and communications related to any application or attempt by any EVR provider, other than MVSC, to join the 3PA or RCI program, including the terms and pricing offered to any such EVR vendor.

**REQUEST NO. 23.**   All documents and communications regarding any EVR provider currently participating in the 3PA or RCI program, including the pricing they pay for participation; their applications to participate in the program; communications regarding their applications; the data elements they receive and /or have access to; and the state EVR markets in which they participate.

**REQUEST NO. 24.**   Documents sufficient to show the actual amounts paid by CVR to CDK and/or Reynolds for data integration services.

**REQUEST NO. 25.**   The actual checks, wires, or other money transfers from CVR to CDK and/or Reynolds for data integration services.  For the avoidance of doubt, this Request seeks documents and information sufficient to show how CVR paid CDK and Reynolds for data integration services.

**Communications with Dealers**

**REQUEST NO. 26.**   All communications – and all documents regarding those communications – between CVR and any dealer regarding (a) MVSC, (b) RTS, (c) TitleTech, or (d) any other EVR provider, including but not limited to communications concerning (1) the way in which they access dealer data; (2) their attempts to join the 3PA or RCI program and/or obtain 3PA or RCI certification status; and (3) their security and data practices.

**REQUEST NO. 27.**   All communications – and all documents regarding those communications – between CVR and any dealer regarding data access, including but not limited to communications regarding CVR's participation in the 3PA and RCI programs.

**REQUEST NO. 28.**   All communications – and all documents regarding those communications – between CVR and any dealer regarding data access fees.

**REQUEST NO. 29.**   All documents and communications between CVR and OEMs or car manufacturers regarding (a) MVSC, RTS, TitleTech, or any other EVR provider, or (b) data access.

**REQUEST NO. 30.**   All documents and communications, including but not limited to agreements or memoranda, concerning the prices and fees CVR charges to dealerships for the provision of EVR services for each geographical region in which CVR operates from January 1, 2009 to the present.

**REQUEST NO. 31.**   All documents and communications, including but not limited to agreements or memoranda, concerning any fees CVR remits to state regulators for each geographical region in which CVR operates from January 1, 2009 to the present.

**REQUEST NO. 32.**   All documents and communications concerning regulatory or statutory limits on fees that CVR may charge for EVR services, broken down by each applicable geographical jurisdiction, from January 1, 2009 to the present.

**REQUEST NO. 33.**   All documents and communications between CVR and state regulators from January 1, 2009 to the present.  This Request includes, without limitation, documents that discuss CVR's capital, pricing, and liquidity, as well as documents discussing the quality and nature of CVR's services.

**EVR Markets**

**REQUEST NO. 34.**   All documents regarding – including documents sufficient to show – CVR's market share and customer base in every state in which it operates from 2006 to the present.  For the avoidance of doubt, this Request includes all communications regarding CVR's market share.

**REQUEST NO. 35.**   All internal documents and communications discussing CVR's presence and market share in any state EVR market, including CVR's expansion or potential expansion into or withdrawal or potential withdrawal from any states.

**REQUEST NO. 36.**   All documents sufficient to show the EVR products and services offered by CVR, and the associated prices and costs for those products and services.

**REQUEST NO. 37.**   All documents sufficient to show CVR's EVR customers, the EVR products and services they purchased from CVR, and the associated prices, costs and other terms and conditions for those products and services.

**REQUEST NO. 38.**   All documents referring to CVR's EVR competitors, or competition between or among EVR providers, including any type of competitive intelligence report or assessment.

**REQUEST NO. 39.**   All documents referring to products or services offered by other EVR providers, including any type of competitive intelligence report or assessment.

**REQUEST NO. 40.**   All documents identifying the participants in the California, Illinois, and Virginia EVR markets.

**REQUEST NO. 41.**   All documents relating to the EVR market share for CVR and its competitors, in each state where CVR provides EVR services, including changes over time.

**REQUEST NO. 42.**   All documents sufficient to show when CVR entered or exited any EVR market in any state.

**REQUEST NO. 43.**   All documents relating to any analysis, evaluation, assessment, communication or discussion of whether to enter or exit, or to not enter or not exit, any EVR market, and the reasons therefor.

**REQUEST NO. 44.**   All documents and communications discussing a competitive threat or perceived competitive threat posed to CVR by any EVR provider, including MVSC.

**REQUEST NO. 45.**   All documents and communications concerning any market analysis or competitive analysis of any state EVR markets or the EVR industry generally.

**REQUEST NO. 46.**   All communications and documents concerning or mentioning any MVSC executive, including but not limited to Don Armstrong, Kelly Kimball, Joseph Nemelka, and John Brueggeman.

**REQUEST NO. 47.**   All communications and documents concerning CDK's or CVR's consideration or evaluation of whether to acquire or purchase MVSC or any other EVR provider.

**REQUEST NO. 48.**   All communications and documents concerning any efforts by to impede MVSC's – or any other EVR provider's – access to data for a dealer using the CDK or Reynolds DMS platform.

**REQUEST NO. 49.**   All communications and documents concerning MVSC's – or any other EVR provider's – use of independent integrators, including but not limited to Authenticom, SIS, and ProQuotes, to access data for a dealer using the CDK or Reynolds DMS platform.

**REQUEST NO. 50.**   All documents and communications regarding instances in which CVR or AVRS uses or used independent integrators for access to dealer data on a DMS platform, whether CDK's, Reynolds', or any other DMS platform.

**REQUEST NO. 51.**   All communications regarding Authenticom or Steve Cottrell or DealerVault or SIS.

**REQUEST NO. 52.**   All communications and documents concerning having real time or bi-directional data integration in order to provide EVR services, including in Illinois, California, or any other state EVR market.

**REQUEST NO. 53.**   All documents and communications regarding California Assembly Bill No. 516.

**REQUEST NO. 54.**   All documents and communications concerning deficiencies or perceived deficiencies in CVR's product and service level.  For the avoidance of doubt, this Request includes not only internal documents and communications but also communications with CDK, Reynolds, and third parties (including CVR's dealer customers) regarding deficiencies or perceived deficiencies in CVR's product and service level.

**REQUEST NO. 55.**   All documents and communications concerning the product quality or perceived product quality of CVR's competitors, including but not limited to MVSC.

**REQUEST NO. 56.**   All documents and communications regarding any delays or backlogs by CVR in processing vehicle registrations and titles, including but not limited to any such delays or backlogs in California.

13

**REQUEST NO. 57.**   All documents and communications concerning any advantage or perceived advantage CVR has over its competitors because of CVR's ability to access dealer data stored on the CDK and Reynolds DMSs, whether through the 3PA and RCI programs or otherwise.

**REQUEST NO. 58.**   All documents and communications concerning the costs associated with entering a new EVR market, including costs associated with legal licensing and DMV requirements and capital and technological costs.

**CVR Ownership**

**REQUEST NO. 59.**   Documents sufficient to show CVR's ownership structure, including documents sufficient to show how CVR's revenues and profits are divided between CDK and Reynolds.

**REQUEST NO. 60.**   All documents and communications relating to Reynolds' ownership interest in CVR, including when that interest was acquired; why Reynolds acquired that interest; from whom Reynolds acquired that interest; how much Reynolds paid for that ownership interest; and what Reynolds' rights are with respect to its ownership interest.

**REQUEST NO. 61.**   All documents and communications relating to the financial benefits received by Reynolds and CDK relating to their ownership interest in CVR, including any allocated profits or other financial benefit, from 2011 to the present.

**REQUEST NO. 62.**   All iterations of CVR's organizational chart from 2011 to the present.

**REQUEST NO. 63.**   All documents concerning CDK's involvement in the operation of CVR, including but not limited to CDK's involvement in CVR's management, budget and

capital investments, hiring, firing, personnel decisions, salary and bonus allotments, strategic priorities, sales and marketing efforts, and other daily business activities.

**REQUEST NO. 64.**   All documents and communications between anyone at CVR, on the one hand, and anyone at CDK, on the other, including regarding the operations, finances, and/or management of CVR.

**REQUEST NO. 65.**   All documents concerning Reynolds' involvement in the operation of CVR, including but not limited to Reynolds' involvement in CVR's management, budget and capital investments, hiring, firing, personnel decisions, salary and bonus allotments, strategic priorities, sales and marketing efforts, and other daily business activities.

**REQUEST NO. 66.**   All documents and communications between anyone at CVR, on one hand, and anyone at Reynolds, on the other, including regarding the operations, finances, and/or management of CVR.

**REQUEST NO. 67.**   All communications between CDK and Reynolds regarding CVR.

**REQUEST NO. 68.**   All documents and communications relating to CVR's acquisition of AVRS.  This Request includes, without limitation, the terms of the agreement, documents discussing strategic and financial considerations pertaining to the acquisition, all financial statements and projections provided by AVRS to CVR in connection with the acquisition, all internal and external valuation analyses of AVRS, and all accounting documents that reflect the manner in which the acquisition price was allocated.

**REQUEST NO. 69.**   All documents and communications regarding deficiencies or perceived deficiencies in AVRS's product and service levels after the acquisition.  For the avoidance of doubt, this Request includes not only internal documents and communications but

also communications with third parties (including AVRS's dealer customers) regarding deficiencies or perceived deficiencies in AVRS's product and service level.

**REQUEST NO. 70.**   All documents relating to CVR's Board of Directors or any equivalent governing body for CVR.  This Request has no date limitation.  This Request includes, but is not limited to:

      a.      All documents relating to the composition of CVR's Board of Directors;

      b.      Identification of every member of CVR's Board of Directors through time;

      c.      All materials presented to CVR's Board of Directors;

      d.      All materials considered by CVR's Board of Directors;

      e.      All minutes of meetings of CVR's Board of Directors; and

      f.      All communications between or among CVR's Board of Directors.

**REQUEST NO. 71.**   All communications with any potential acquirer or acquirers of CVR, including any private equity firm.

**Financial Information**

**REQUEST NO. 72.**   All communications between CVR and CDK and/or Reynolds regarding CVR's financial information.

**REQUEST NO. 73.**   All of CVR's financial statements, on a monthly, quarterly, and yearly basis, from 2006 to the present, both cumulative and broken out by state EVR market. This Request includes, without limitation, income statements, balance sheets, and statements of cash flows.

**REQUEST NO. 74.**   Documents regarding CVR's revenues on a monthly, quarterly, and yearly basis, from 2006 to the present, both cumulative and broken out by state EVR market.

**REQUEST NO. 75.**  Documents regarding the prices charged by CVR for its EVR services in each state in which it operates.

**REQUEST NO. 76.**  Documents sufficient to show CVR's profit (including profit margins), and costs for providing EVR services, on a monthly basis, from January 1, 2006 to the present, both cumulative and broken out by state EVR market.

**REQUEST NO. 77.**  Documents regarding CVR's financial projections from January 1, 2006 to the present.  For the avoidance of doubt, this Request includes, without limitation, documents and communications relating to estimates, forecasts, and budgets for revenue, profit, and costs associated with CVR's provision of EVR services.

**REQUEST NO. 78.**  All documents and communications You relied upon from January 1, 2006 to the present in creating projections, estimates, forecasts, and budgets for revenue, profit, and costs associated with Your provision of EVR services.

**REQUEST NO. 79.**  All documents and communications concerning CVR's operational costs, revenues, profitability, and financial projections and forecasts, from 2006 to present.

**REQUEST NO. 80.**  All documents concerning Your cost of capital, cost of equity, cost of debt, and/or weighted average cost of capital, including any documents upon which any of the foregoing are based.

**REQUEST NO. 81.**  All documents concerning the economic value of data or data access to dealers, vendors, or DMS providers, including any economic value placed by You on Your ability to access dealer data through the 3PA and RCI programs.

**REQUEST NO. 82.**  Documents sufficient to show transactional sales data (including sales, profit, and cost data) on a per-customer and per-transaction basis for EVR services from

January 1, 2006 to the present. For the avoidance of doubt, this Request includes, without limitation, the following data linked to each EVR transaction:

    a.   Date and location of transaction;

    b.   EVR dealer customer;

    c.   Specific EVR service purchased;

    d.   Information tied to the specific EVR service purchased, including the unit price, unit cost, quantity, and applicable discounts;

    e.   Order number and other identifying order information; and

    f.   Any documents necessary to interpret the contents of these data fields, including abbreviation keys and explanations.

**REQUEST NO. 83.** All reports and analyses pertaining to CVR's marketing and sales of EVR services from January 1, 2009 to the present. For the avoidance of doubt, this Request includes, without limitation:

    a.   Sales reports;

    b.   Sales representative performance reports;

    c.   Marketing plans;

    d.   Marketing reports, including sales promotions and discounts;

    e.   Strategic plans, including pricing strategy;

    f.   Cost accounting reports;

    g.   General ledger reports;

    h.   Charts of accounts;

    i.   Analyses of competitive position, including market share; and

    j.   Profit and loss reports.

**REQUEST NO. 84.**   All documents and communications concerning any valuations – whether internal or external – of CVR, from January 1, 2009 to the present.  These valuations include, without limitation, those prepared by outside auditors, independent valuation consultants, or representatives from CDK or Reynolds.  This Request includes, without limitation, formal valuation studies and impairment tests of value.

**REQUEST NO. 85.**   All documents and communications concerning internal and external valuations of Reynolds' and/or CDK's ownership interests in CVR from January 1, 2009 to the present.

**Miscellaneous**

**REQUEST NO. 86.**   All documents concerning any training provided by You to Your employees regarding antitrust or competition laws.

**REQUEST NO. 87.**   All documents concerning "hostile integration" or use of non-authorized usernames or passwords to extract data from the CDK or Reynolds platforms.

**REQUEST NO. 88.**   All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to EVR services.

**REQUEST NO. 89.**   All documents sufficient to identify all dealers that that have switched from using CVR to using MVSC for EVR, or vice versa (by dealer name, the effective date of the switch, and the number of stores switched), and documents relating to reasons for the switch.

**REQUEST NO. 90.**   All documents relating to the reasons why any customer or potential customer selects one EVR provider over another.

**REQUEST NO. 91.**   All documents referring to complaints about any EVR provider, including but not limited to complaints by your dealer customers regarding the functionality or capabilities of your products and services.

**REQUEST NO. 92.**   All contracts or agreements with dealers relating to your EVR services or products.

**REQUEST NO. 93.**   All communications and documents exchanged between you and any other EVR provider.

**REQUEST NO. 94.**   All documents relating or referring to the RCI or 3PA program, including pricing, security protocols, and any terms of access.

**REQUEST NO. 95.**   All documents and communications referring or relating to your applications or requests to participate in RCI or 3PA.

**REQUEST NO. 96.**   All documents relating any analysis, evaluation, assessment, communication or discussion of access to dealership data through RCI or 3PA as compared to any other method, such as access through an independent data integrator or directly from a dealership.

**REQUEST NO. 97.**   All documents referring or relating to complaints about Reynolds, RCI, CVR, CDK or 3PA, including but not limited to complaints by your dealer customers.

**REQUEST NO. 98.**   All documents referring or relating to efforts by CVR to acquire MVSC's EVR customers in any state.

**REQUEST NO. 99.**   All documents referring to CDK's and/or Reynolds' efforts to prevent any independent data integrator from accessing a Reynolds DMS or CDK DMS.

**REQUEST NO. 100.** All documents sufficient to show payments made by You to any independent data integrator.

**REQUEST NO. 101.** All documents sufficient to show when You started or stopped using any independent data integrator, and the reasons therefor.

**REQUEST NO. 102.** Your contracts or agreements with any independent data integrator.

**REQUEST NO. 103.** All documents and communications relating to CVR's data security or cybersecurity policies, guidelines, and practices.

**REQUEST NO. 104.** All documents or communications relating to CVR's internal or external security audits.

**REQUEST NO. 105.** All documents and communications relating to any data breach, system breach, or hack suffered by or thwarted by CVR.

**REQUEST NO. 106.** All documents and communications relating to any data security or cybersecurity training provided to CVR employees.

**REQUEST NO. 107.** All documents identifying the type of data or information CVR needs from a Reynolds DMS or CDK DMS in order to provide EVR services.

**REQUEST NO. 108.** All documents identifying the type of data or information CVR actually obtains from a Reynolds DMS or CDK DMS.

**REQUEST NO. 109.** All documents and communications exchanged between CVR and dealers describing how CVR accessed or planned to access the DMS system for that dealer in order to provide services.

**REQUEST NO. 110.** All of CVR's competitive analyses, strategic plans, long-range plans, business plans, marketing plans, and forecasts, and any documents referring or relating to these materials.

**REQUEST NO. 111.** Without limitation as to time, all communications or documents that you sent to or received from the Federal Trade Commission or U.S. Department of Justice

relating to CDK, Reynolds, Authenticom, the EVR market, the DMS market, or the data

integration market.

Dated:  August 30, 2018                     Respectfully submitted,

                                            */s/ Derek T. Ho*
                                            _____
                                            Derek T. Ho
                                            Michael N. Nemelka
                                            Aaron M. Panner
                                            Daniel V. Dorris
                                            Christine Bonomo
                                            KELLOGG, HANSEN, TODD,
                                               FIGEL & FREDERICK, P.L.L.C.
                                            1615 M Street, N.W., Suite 400
                                            Washington, D.C. 20036
                                            Phone: (202) 326-7900
                                            dho@kellogghansen.com
                                            mnemelka@kellogghansen.com
                                            apanner@kellogghansen.com
                                            ddorris@kellogghansen.com
                                            cbonomo@kellogghansen.com

                                            *Attorneys for Individual Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2018, I caused a true and correct copy of the foregoing Individual Plaintiffs' First Set of Requests for the Production of Documents for Defendant Computerized Vehicle Registration to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Derek T. Ho*
Derek T. Ho