**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL
DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY
TO PRODUCE UNREDACTED DOCUMENTS FOR *IN CAMERA* REVIEW**

**INTRODUCTION**

The Reynolds and Reynolds Company ("Reynolds") has redacted an email exchange between two key business executives – Reynolds's CEO, Bob Brockman, and Reynolds's Vice President of Data Services, Bob Schaefer – neither of whom are lawyers and both of whom played key roles in the Defendants' conspiracy. The surrounding emails in the chain suggest that the exchange between Mr. Brockman and Mr. Schaefer is highly relevant to this litigation. Specifically, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Plaintiff Authenticom, Inc. and Authenticom's CEO, Steve Cottrell. President Obama had visited La Crosse, Wisconsin – where Authenticom is based – and highlighted the success of Authenticom and its importance to the automotive and local communities. Authenticom is a competing provider of data integration services and was the principal target of Reynolds's and Defendant CDK Global, LLC's ("CDK") conspiracy – part of which was formalized in writing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬ – to exclude competition in the data integration market. Mr. Brockman responded to Mr. Schaefer's email ▬▬▬▬▬▬▬▬▬▬▬▬▬▬, apparently with commentary on the news article, but the substance of Mr. Brockman's email is redacted. Mr. Schaefer then responded to Mr. Brockman. Mr. Schaefer's response email is also redacted, except for a portion indicating that ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬ *See* Nemelka Decl. Exs. A & B.

Reynolds has withheld both emails based on a claim that they contain "privileged summaries of legal advice sought and received from Reynolds's outside legal counsel." *Id.* at Ex. D. From the surrounding context, however, that assertion appears highly implausible. No attorney appears anywhere on the email chain, nor is any legal matter alluded to in the unredacted portions. Given the potential importance of these documents to the core issues in this case, and to

1

depositions that are scheduled to start on October 15, 2018, Plaintiffs respectfully request that this Court order Reynolds to produce the unredacted email exchange for *in camera* review so that the Court can evaluate Reynolds's privilege assertion.[1]

## BACKGROUND

On July 16, 2018, Plaintiffs notified Reynolds of 105 documents in Reynolds's production that appeared to have improper redactions. *See id.* at Ex. C. Those 105 documents included the two documents described above. Like the two documents at issue in this motion, many of the other 103 documents appeared to be ordinary-course business documents that had been improperly withheld on privilege grounds:



- ███████████████████████████████████████████
  ████████████████
- ███████████████████████████████████████████
  ███████████████████████████████████████████
- ███████████████████████████████████████████
  ██████
- ███████████████████████████████████████████
  ██████
- ███████████████████████████████████████████
  ███████████████████████████████████████████
- ███████████████████████████████████████████
  ███████████████████████████████████████████
  █████████████████

---

[1] For purposes of this motion, "Plaintiffs" excludes the Dealership Class Plaintiffs given their pending settlement with Reynolds.

None of these documents included any attorney or appeared from the unredacted portions to concern any legal advice. Accordingly, Plaintiffs requested that Reynolds produce either unredacted copies or provide the basis for the redactions, including for the two emails at issue in this motion. *See id.* at Ex. C.

On July 30, 2018, Reynolds claimed that the redacted portions of the emails between Mr. Schaefer and Mr. Brockman were "clearly privileged summaries of legal advice sought and received from Reynolds's outside legal counsel." *Id.* at Ex. D. For the remaining documents at issue, Reynolds stated it would "independently review the 'originals'" of those documents and would "produce them in accordance with the Federal Rules." *Id.* To the extent any documents remain redacted, those documents would "be described at the appropriate time on Reynolds's privilege log." *Id.* Reynolds's privilege log is due November 2, 2018. *See* Case Mgmt. Order, Dkt. 166, at 2.

Given the importance of the two documents at issue in this motion, on September 6, 2018, Plaintiffs objected to the conclusory nature of Reynolds's description of the basis for its privilege claim and again asked Reynolds to substantiate its assertion of attorney-client privilege for the emails between Mr. Brockman and Mr. Schaefer by a date certain – September 10, 2018. *See id.* at Ex. E. Reynolds did not respond. Therefore, while Reynolds's final response with respect to the other 103 documents is still pending, Reynolds has given its final answer with respect to the two documents at issue in this motion – a conclusory, unexplained assertion of privilege.[2]

---

[2] At this time, Plaintiffs do not move to compel production of the other 103 documents in unredacted form because Reynolds has indicated it continues to re-evaluate the privilege of those documents.

**LEGAL STANDARD**

Reynolds bears the burden of establishing that the emails between Mr. Schaefer and Mr. Brockman are subject to the attorney-client privilege. *See United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis." *Id.* (internal quotation marks omitted). Moreover, a conclusory description of the basis for the privilege claim does not suffice; the proponent of the privilege must give its adversary enough information to test the claim of privilege through the adversarial process. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii).

When a claim of privilege is challenged, the district court should evaluate whether the party opposing production has established every element of the privilege. *See United States v. First State Bank*, 691 F.2d 332, 335 (7th Cir. 1982) (proponent of privilege must identify "facts which establish all the elements of the privilege he is claiming"). Where the party's description of the basis for privilege is insufficient to carry its burden of proof, it is appropriate to order the proponent of the privilege to produce the document, along with any affidavits or other evidence supporting the claimed privilege, for *in camera* review. *See*, *e.g.*, *United States v. Boender*, 2010 WL 3463128, at *4 (N.D. Ill. Aug. 30, 2010) (Dow, J.) (citing *Natta v. Zletz*, 418 F.2d 633, 636 (7th Cir. 1969)), *aff'd*, 649 F.3d 650 (7th Cir. 2011); *Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 3624084, at *1 (N.D. Ill. Aug. 23, 2017) (ordering *in camera* review of redactions in documents that movant argued were not "privileged because they involve business issues"); *Continental Cas. Co. v. Marsh*, 2004 WL 42364, at *1 (N.D. Ill. Jan. 6, 2004); *see also Renner v. Chase Manhattan Bank*, 2001 WL 1819215, at *4 (S.D.N.Y. July 13, 2001) ("Use of in camera review of documents to determine the applicability of the attorney-client privilege is common practice").

**ARGUMENT**

This Court should conduct an *in camera* inspection of the two emails at issue to evaluate Reynolds's claim of privilege, because there is serious doubt whether Reynolds's privilege assertion here is proper. To begin, "an attorney was not the author or among the recipients" of either email. *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *3 (N.D. Ill. Apr. 4, 2017). "That doesn't necessarily scotch a claim of privilege or work product, but it does raise red flags." *Id.* Those warning flags are multiplied because nothing in the surrounding emails suggests that the withheld email discussion reflects any legal advice. Rather, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Nemelka Decl. Ex. A. There is, to say the least, good cause to doubt whether ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ consists entirely of *legal* advice that falls within the protected scope of the attorney-client privilege. *See In re Walsh*, 623 F.2d 489, 494 (7th Cir. 1980) (lawyer–client relationship "does not create a cloak of protection (which is) draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client") (internal quotation marks omitted); *see also, e.g.*, *White*, 950 F.2d at 430 (attorney-client privilege covers "legal advice" sought "*from a professional legal adviser in his capacity as such*") (emphasis added); *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (attorney-client privilege "does *not* protect disclosure of the underlying facts by those who communicated with the attorney"); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 176, 181 (N.D. Ill. 2018) (privilege does not cover advice that is predominantly business rather than legal advice).

The doubts about Reynolds's privilege assertion are heightened by its refusal to provide further information about the basis of that assertion. To date, all Reynolds has said is that "the redacted portions are clearly privileged summaries of legal advice sought and received from Reynolds's outside legal counsel." Nemelka Decl. Ex. D. But such a conclusory description is insufficient under well-settled law, especially where there is no hint of any lawyer being present or any legal advice being sought or provided. *See McGee*, 2017 WL 1232616, at *2 ("Document descriptions like 'reflecting request for legal advice' do not make out a claim of attorney-client privilege."); *Nucap Indus.*, 2017 WL 3624084, at *1 ("[G]eneric descriptor[s]" like "Communication reflecting legal advice regarding anticipated litigation with Bosch" are "generally unhelpful"); *ConAgra, Inc. v. Arkwright Mut. Ins. Co.*, 32 F. Supp. 2d 1015, 1017 (N.D. Ill. 1999) ("mere conclusory statements will not suffice") (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 139 (N.D. Ill. 1993) (rejecting "conclusory assertions that the material reflects the advice of counsel or other confidential facts")). If Reynolds's privilege claim was well-founded, it is difficult to see why it would refuse to provide further information to substantiate it. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013) (ordering *in camera* review because RBS's "vague and generic description[s]" of the privilege were inadequate).

Given the significant doubts about the applicability of the attorney-client privilege, *in camera* review is warranted to ensure that Reynolds is not permitted to shield highly relevant information. As with every privilege, the attorney-client privilege "impede[s] the search for the truth." *Pierce County v. Guillen*, 537 U.S. 129, 144 (2003) (holding that "statutes establishing evidentiary privileges must be construed narrowly because privileges impede the search for the truth"); *see also*, *e.g.*, *White*, 950 F.2d at 430; *In re Walsh*, 623 F.2d at 493. Thus, the more relevant

the document, the more critical it is to ensure that the invocation of the attorney-client privilege does not become a means for one party to conceal (further) inculpatory information from its adversary. *See In re Feldberg*, 862 F.2d 622, 627 (7th Cir. 1988) ("The privilege is not good in itself. The legal system needs information to decide cases correctly. When the privilege shelters important knowledge, accuracy declines. Litigants may use secrecy to cover up machinations, to get around the law instead of complying with it.") (citation omitted).

Here, the email exchange at issue is very likely to be highly relevant to the claims in this case. The central claim in this litigation is that CDK and Reynolds conspired in the ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to eliminate independent data integrators like Authenticom from the market. As Authenticom's CEO, Mr. Cottrell, has stated in sworn testimony, Mr. Schaefer admitted the existence of the unlawful agreement in May 2015, when he told Mr. Cottrell that "CDK and Reynolds had an agreement to . . . block integration competitors like Authenticom" and that Mr. Brockman "was 'adamant' about blocking independent data integrators." *In re DMS Antitrust Litig.*, 313 F. Supp. 3d 931, 944, 950-51 (N.D. Ill. 2018). The agreement's existence is also corroborated by several formal written agreements between CDK and Reynolds from February 2015 in which CDK and Reynolds agreed not to compete with each other in the data integration market. The ▇▇▇▇▇▇ emails between Mr. Schaefer and Mr. Brockman commenting on ▇▇▇▇▇▇▇▇ therefore are highly likely to be of central relevance to the core claims in this MDL.

Accordingly, given the importance of the documents and the legitimate doubts about Reynolds's claim of privilege, Plaintiffs respectfully request that the Court order Reynolds to produce the documents and any supporting evidence for *in camera* review to evaluate whether Reynolds has met is burden to show that the redacted emails are, in fact, protected by the attorney-

7

client privilege. *See FDIC v. Crowe Horwath LLP*, 2018 WL 3105987, at *11 (N.D. Ill. June 25, 2018) (holding "redactions do raise enough of a question that the Court will require an *in camera* review"); *DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l*, 2002 WL 318129, at *1 (N.D. Ill. Feb. 28, 2002) ("this court has some doubts as to the validity of Pioneer's privilege claims and orders Pioneer to produce the requested product clearance forms for an in camera inspection").

## CONCLUSION

The Court should grant Plaintiffs' motion to compel Reynolds to produce unredacted documents for *in camera* review.

Dated: September 28, 2018

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

8

## **CERTIFICATE OF SERVICE**

  I, Derek T. Ho, an attorney, hereby certify that on September 28, 2018, I caused a true and correct copy of the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY TO PRODUCE UNREDACTED DOCUMENTS FOR *IN CAMERA* REVIEW** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

              */s/ Derek T. Ho*
              Derek T. Ho
              **KELLOGG, HANSEN, TODD,**
               **FIGEL & FREDERICK, P.L.L.C.**
              1615 M Street, NW, Suite 400
              Washington, D.C. 20036
              (202) 326-7900
              dho@kellogghansen.com