# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| | ) | |
| IN RE: DEALER MANAGEMENT SYSTEMS | ) | MDL No. 2817 |
| ANTITRUST LITIGATION | ) | Case No. 18 C 864 |
| | ) | |
| *THIS DOCUMENT APPLIES TO:* | ) | |
| | ) | Hon. Amy J. St. Eve |
| *Motor Vehicle Software Corp. v. CDK Global,* | ) | |
| *Inc.,* No. 1:18-cv-865 (N.D. Ill.) | ) | |

## DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants The Reynolds and Reynolds Company, CDK Global, Inc. and Computerized Vehicle Registration hereby request that Plaintiff Motor Vehicle Software Corporation in the above-captioned matter produce for inspection and copying each of the documents and other things described below at the offices of Sheppard Mullin Richter & Hampton LLP, Attn: Leo Caseria, 333 S. Hope St., 43rd Floor, Los Angeles, California, 90071, within thirty (30) days after the date of the service hereof.

## DEFINITIONS

1.      The terms "MVSC," "you," and "your" mean Plaintiff Motor Vehicle Software Corporation, and any related companies, divisions, or subsidiaries, past or present, including, without limitation, the directors, officers, employees, agents, or attorneys thereof.

2.      The term "Reynolds" means Defendant The Reynolds and Reynolds Company and includes the directors, officers, employees, agents, or attorneys thereof.

3.      The term "CDK" means Defendant CDK Global, Inc. and includes the directors, officers, employees, agents, or attorneys thereof.

4.      The term "CVR" means Defendant Computerized Vehicle Registration and includes the directors, officers, employees, agents, or attorneys thereof.

5.      The term "Defendants" refers to Reynolds, CDK and CVR.

6.      The term "Authenticom" means Authenticom, Inc. and includes the directors, officers, employees, agents, or attorneys thereof.

7.      The term "complaint" shall refer to the operative complaint in the above-captioned matter.

8.      The term "DMS" means enterprise systems known in the industry as Dealer Management Systems, including hardware and software, and further including any databases or data relating thereto.

9.      The term "EVR" means electronic vehicle registration and titling services for automobiles sold at dealerships.

10.     The term "independent data integrator" has the same meaning ascribed to it in the complaint in the above-captioned action and includes Authenticom

11.     The terms "Dealer Data Integration Market" and "data integration market" are used interchangeably and have the same meaning set forth in the complaint in the above-captioned action.

12.     The term "vendor" has the same meaning ascribed to it in the complaint in the above-captioned action and includes MVSC.

13.     The term "RCI" means the Reynolds Certified Interface program offered by Reynolds.

14.     The term "3PA" means the Third Party Access program offered by CDK.

15.     The terms "and," "or," and "and/or" include any item or combination of items identified in a request, and shall not be interpreted to exclude any information otherwise within the scope of a request.

16.     The term "any" means one, some, or all of whatever quantity.

17.     The term "including" means including, but not limited to.

18.     The terms "document" or "documents" are used herein in their broadest possible sense and refer, without limitation, to all written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications or records of every kind and description, whether comprised of letters, words, numbers, pictures, sounds, or symbols, or any combination thereof, whether prepared by hand or by mechanical, electronic, magnetic, photographic, or other means, and including audio or video recordings of communications, occurrences or events.  This definition includes, but is not limited to, any and all of the following:  correspondence, notes, laboratory notebooks, research materials, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, invoices, orders, acknowledgements, receipts, bills, statements, checks, check registers, financial statements, journals, ledgers, appraisals, reports, forecasts, compilations, schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, newspaper clippings, tables, tabulations, financial packaging, plans, photographs, pictures, film, microfilm, microfiche, computer-stored or computer-readable data, computer programs, computer printouts, telegrams, telexes, telefacsimiles, tapes, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained.  The terms "document" and "documents" shall include all preliminary versions, drafts or revisions of the foregoing, and all copies of a document shall be produced to the extent that the copies differ from the document produced due to notations, additions, insertions,

SMRH:227570736.3                                            -3-

comments, enclosures, attachments or markings of any kind. Further, the terms "document" and "documents" shall include, without limitation, those categories as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, specifically, writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form and electronically stored information.

19.     The term "things" means any tangible item, including without limitation, models, prototypes and samples of any device or apparatus or product.

20.     The term "person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

21.     The term "communication" means all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, advertisements, and all other documents evidencing any verbal or nonverbal interaction between or among persons and/or entities.

22.     The term "agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons and/or entities.

23.     The terms "concerning," "related to," or "relating to" shall be construed in the broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical or factual connection whatsoever with the subject addressed.

24. The term "dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer.

25. The term "dealer's association" refers to any association, formal or informal, of dealers of new or used automobiles, trucks, motorcycles, marine vehicles, recreational vehicles, or heavy equipment.

26. When referring to a person, "identity" or "identify" means, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of the person need be listed in response to subsequent discovery requesting the identification of that person.

27. When referring to a document, "identity" or "identify" means, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s).

## INSTRUCTIONS

28. In responding to these requests, you are required to furnish all information that is available to you or subject to your reasonable inquiry, including information in the possession of your attorneys, accountants, advisors, representatives, agents, or other persons directly or indirectly employed by, or connected with, you or your attorneys, and anyone else otherwise subject to your control. All documents that respond, in whole or in part, to any portion of the requests below shall be produced in their entirety, including all attachments and enclosures.

29. In construing these requests, the plural shall include the singular and the singular shall include the plural; a masculine, feminine, or neuter term shall include all other genders; the terms "or," "and," "and/or," and "including" shall be construed inclusively rather than

exclusively so as to bring within the scope of the request that which otherwise might be construed as being outside the scope of said request; and the terms "all" and "any" shall be interpreted inclusively so as to mean both "all" and "any" whenever either term is used.

30.     If you contend that any documents sought by these discovery requests are privileged or otherwise protected from discovery, you must nevertheless identify for each document withheld:

     a.   the legal basis for withholding the document;

     b.   the person asserting any claim of privilege and/or protection;

     c.   a description and identification of the requested document sufficient to frame an appropriate demand for the document and a motion to compel disclosure thereof, setting forth at least the following:

        i.   the author and/or signatory of the document withheld;

        ii.   the date of the document withheld;

        iii.   all addressees and/or recipients of the document withheld; and

        iv.   the subject matter and circumstances under which the document withheld was created in sufficient detail to ascertain applicability of the privilege or other legal basis asserted.

31.     Notwithstanding a claim that a portion of a document is privileged or otherwise protected from disclosure, any such document must be produced with the portion claimed to be protected excised.

32.     Any responsive electronically stored information shall be produced in accordance with protocols agreed upon by the parties or as otherwise directed by the Court.

33.     If there are no documents or things responsive to a particular request, you should so state in writing.  If any responsive document has been lost or destroyed, identify:

     a.   the author;

     b.   the date of loss or destruction;

     c.   the reason for loss or destruction;

     d.   the identity of those directing the destruction, if any; and

     e.   the substance of the document.

34.     If a refusal to provide documents responsive to any request is asserted on the grounds of burden, state in detail the reason(s) for any objection(s), including the number and nature of documents or records needed to be searched and/or produced, the location of the documents, the custodian of the documents, and the number of person hours and costs required to conduct the search.

35.     If you contend that any document request is ambiguous or unclear, contact undersigned counsel as soon as possible so that the request can be clarified to avoid unnecessary delays in discovery.

36.     Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you are required to supplement and correct your answers and responses on a timely basis.

37.     Unless otherwise indicated, the time period applicable to these requests is January 1, 2013 forward.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

1.     Without limitation as to time, all documents relied on, used, considered, reviewed, or consulted by you to draft your complaint or any prior version of your complaint, including any

documents or communications referenced or quoted in your complaint or any prior version of your complaint, and including all materials referenced in paragraph 18 of your complaint.

2.       Without limitation as to time, all documents relating to the allegations in your complaint and the claims you are asserting against Defendants, including, but not limited to: (1) your claim that Defendants have engaged in anticompetitive conduct; (2) your claim that Defendants have injured you; and (3) your claim that Defendants have harmed competition.

3.       Without limitation as to time, all documents relating to your allegations that Defendants have unlawfully conspired, including, but not limited to: (1) documents relating to the participants in each alleged conspiracy; (2) documents relating to the purpose and effect of each alleged conspiracy; (3) documents relating to when each alleged conspiracy was formed and how each alleged conspiracy was enforced.

4.       All documents supporting your allegations in paragraphs 11 and 100 of your complaint that a conspiracy by Defendants to block MVSC was in existence by at least by January 2014.

5.       All documents sufficient to show the EVR products and services offered by MVSC, and the associated prices and costs for those products and services.

6.       All documents sufficient to show MVSC's EVR customers, the EVR products and services they purchased from MVSC, and the associated prices, costs and other terms and conditions for those products and services.

7.       All documents referring to MVSC's EVR competitors, or competition between or among EVR providers, including any type of competitive intelligence report or assessment.

8.       All documents referring to products or services offered by other EVR providers, including any type of competitive intelligence report or assessment.

9.      All documents relating to MVSC's marketing and business plans for its Vitu product.

10.      All documents identifying the participants in the California and Illinois EVR markets.

11.      All documents relating to the EVR market share for MVSC and its competitors, in each state where MVSC provides EVR services, including changes over time.

12.      All documents sufficient to show how MVSC became the EVR market leader in California, Oregon, or any other market where MVSC holds the greatest EVR market share.

13.      All documents sufficient to show when MVSC entered or exited any EVR market in any state.

14.      All documents relating to any analysis, evaluation, assessment, communication or discussion of whether to enter or exit, or to not enter or not exit, any EVR market, and the reasons therefor.

15.      All documents sufficient to identify all dealers that that have switched from using CVR to using MVSC for EVR, or vice versa (by dealer name, the effective date of the switch, and the number of stores switched), and documents relating to reasons for the switch.

16.      All documents relating to the reasons why any customer or potential customer selects one EVR provider over another.

17.      All documents referring to complaints about any EVR provider, including but not limited to complaints by your dealer customers regarding the functionality or capabilities of your products and services.

18.      If you contend that MVSC offers EVR products or services that are superior to those offered by CVR, all documents supporting your contention.

19.     All contracts or agreements with dealers relating to your EVR services or products.

20.     All communications and documents exchanged between you and any other EVR provider.

21.     All documents referring or relating to CVR's acquisition of AVRS, Inc., including the acquisition's potential impact on MVSC or competition in any EVR market.

22.     All documents referring to Reynolds, CDK or CVR related to EVR.

23.     All communications and documents exchanged between you and Reynolds, CDK, or CVR.

24.     All documents and communications relating to negotiations between you and Reynolds or CDK concerning RCI or 3PA access, including documents showing terms, conditions, or prices that were offered, and any responses, counter-offers or rejections, including reasons therefor.

25.     All documents relating or referring to the RCI or 3PA program, including pricing, security protocols, and any terms of access.

26.     All documents and communications referring or relating to your applications or requests to participate in RCI or 3PA.

27.     All documents relating any analysis, evaluation, assessment, communication or discussion of access to dealership data through RCI or 3PA as compared to any other method, such as access through an independent data integrator or directly from a dealership.

28.     All documents referring or relating to complaints about Reynolds, RCI, CVR, CDK or 3PA, including but not limited to complaints by your dealer customers.

29.    All documents referring or relating to efforts by CVR to acquire your EVR customers in any state.

30.    All documents referring or relating to efforts by you to acquire CVR's EVR customers in any state.

31.    All documents referring or relating to your application to be an EVR provider in Oregon.

32.    All documents referring or relating to the assertion in paragraph 107 of your complaint that CVR has "generat[ed] hundreds of millions of dollars" for CDK and Reynolds.

33.    All documents referring or relating to CVR board meetings.

34.    All documents relating to your contention that Reynolds or CDK threatened dealers.

35.    All documents and communications referring or relating to your access to data from a Reynolds DMS or CDK DMS other than through RCI or 3PA.

36.    All documents and communications referring or relating to your access to data through a third-party program offered by a DMS provider other than Reynolds or CDK, including but not limited to Dealertrack and Advent.

37.    All documents and communications referring or relating to your application to participate in a third-party program offered by a DMS provider other than Reynolds or CDK, including but not limited to Dealertrack and Advent.

38.    All documents and communications relating to your allegations that Reynolds or CDK offered MVSC a rate for RCI or 3PA that was anticompetitive, exorbitant, inflated, unjustified, or impossible for MVSC to pay.

39. All documents referring to the scope of any DMS market that Reynolds or CDK allegedly participates in, the participants in that market, their market shares, and/or changes to those market shares over time.

40. All documents referring or relating to DMS competition or competitors.

41. All documents supporting your allegation that it is difficult for a dealer to switch DMS providers.

42. All documents referring to any independent data integrator, including the directors, officers, employees, agents, or attorneys thereof.

43. All documents referring to the legality or illegality of any conduct by any independent data integrator, including Authenticom.

44. All documents reflecting the extent to which MVSC knew or intended that any independent data integrator was accessing or would access a Reynolds DMS or CDK DMS without authorization from Reynolds or CDK.

45. All documents referring to any independent data integrator's ability or inability to access a Reynolds DMS or CDK DMS.

46. All documents referring to Defendants' efforts to prevent any independent data integrator from accessing a Reynolds DMS or CDK DMS, including any documents relating to perceived or purported changes in any such efforts.

47. All communications and documents exchanged between you and any independent data integrator, including but not limited to Authenticom.

48. All documents referring to competition between or among independent data integrators.

49.     All documents relating to complaints about independent data integrators or their products or services.

50.     All documents relating to security or privacy issues, policies, practices or concerns relating to access of DMS data through independent data integrators.

51.     All documents relating to the scope of any data integration market, the participants in any such market, their market shares, and/or changes to those market shares over time.

52.     All documents relating to the geographic markets served by any independent data integrator.

53.     All documents sufficient to show the products or services provided to you by any third party data integrator, including Authenticom, and the associated prices and costs for those products and services.

54.     All documents sufficient to show payments made by you to any independent data integrator, or received by you from any independent data integrator.

55.     All documents sufficient to show when you started or stopped using any independent data integrator, and the reasons therefor.

56.     Your contracts or agreements with any independent data integrator.

57.     All documents and communications relating to MVSC's data security or cybersecurity policies, guidelines, and practices.

58.     All documents or communications relating to your internal or external security audits, including those described in paragraph 204 of your complaint

59.     All documents reflecting, containing or referring to DMS logins and passwords for a Reynolds DMS or CDK DMS.

60.     All documents and communications relating to any data breach, system breach, or hack suffered by or thwarted by MVSC.

61.     All documents and communications relating to any data security or cybersecurity training provided to MVSC employees.

62.     All documents or communications reflecting MVSC's policies and practices with respect to handling or use of login and password information, whether for its own system or the systems of third parties.

63.     All documents or communications relating to the following allegation at paragraph 204 of your complaint:  "MVSC maintains the highest-level security with respect to all sensitive, confidential data."

64.     All documents identifying the type of data or information MVSC needs from a Reynolds DMS or CDK DMS in order to provide EVR services.

65.     All documents identifying the type of data or information MVSC actually obtains from a Reynolds DMS or CDK DMS through independent data integrators.

66.     All documents and communications exchanged between MVSC and dealers describing how MVSC accessed or planned to access the DMS system for that dealer in order to provide services.

67.     All of MVSC's competitive analyses, strategic plans, long-range plans, business plans, marketing plans, and forecasts, and any documents referring or relating to these materials.

68.     All documents sufficient to show MVSC's monthly, quarterly and annual sales revenue and profits related to MVSC's EVR products and services, from their first sale to the present, with sufficient detail to show for each product or service: (a) the product name, number, or other identifier; (b) the amount of revenue and profits earned as a result of sale; (c) the

business division responsible for the sale; (d) the distribution channel for the sale; (e) the region where the sale occurred; and (f) the customer name.

69.     All documents sufficient to show MVSC's monthly, quarterly and annual expenses related to MVSC's EVR products and services, from their first sale to the present, with sufficient detail to show: (a) the product name, number, or other identifier related to the expenses; (b) the type of expense (e.g., taxes including excise taxes, selling expenses, marketing expenses, research & development expenses, overhead, legal expenses, royalty expenses); (c) the nature of the expense (e.g., fixed, semi-fixed or variable); (d) the business division related to the expense; (e) the distribution channel related to the expense; (e) the region where the expense was incurred; and (f) the customer name related to the expense.

70.     All documents sufficient to show MVSC's EVR profits and profit margins, by month and by customer.

71.     All forecasts or projections relating to MVSC's EVR products and services.

72.     All documents, such as organizational charts, sufficient to identify MVSC's corporate structure and reporting structure, including identifying all of MVSC's officers, directors, managers, and department heads.

73.     All documents referring or relating to any damages or other harm you claim to have suffered and for which you seek any form of recovery in this action, including documents sufficient to quantify the amount of any such damages, restitution or other harm or relief.

74.     All documents referring or relating to the February 2015 "Wind Down Access Agreement" referenced in your complaint.

75.     All documents or communications exchanged with or referring to Steve Cottrell.

76.     All documents or communications exchanged with or referring to Data Software Services, LLC or eLead, including the directors, officers, employees, agents, or attorneys thereof.

77.     All documents showing when and how you first became of aware of any of the facts alleged in your complaint or any prior version of your complaint.

78.     All documents reflecting statements or communications regarding any of the claims or allegations in your complaint, any of the claims or allegations in the cases that have been consolidated within the above-captioned matter (*In re Dealer Management Systems*, MDL No. 2817 (N.D. Ill.)), or any government investigation relating to the claims or allegations in the above-captioned matter.

79.     Without limitation as to time, all communications or documents that you sent to or received from the Federal Trade Commission or U.S. Department of Justice relating to Defendants, Authenticom, the EVR market, the DMS market, or the data integration market.

80.     All documents referenced or identified in your responses to Defendants' interrogatories.

Dated:  May 25, 2018          Respectfully submitted,

*/s/ Aundrea K. Gulley*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com

rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and*
*Reynolds Company*

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendants*
*CDK Global, Inc. and*
*Computerized Vehicle Registration*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2018, I caused a true and correct copy of the foregoing

Defendants' First Set of Requests for Production to be served by email upon the following

individuals:


Michael N. Nemelka (mnemelka@kellogghansen.com)
Derek T. Ho (dho@kellogghansen.com)
Joshua Hafenbrack (jhafenbrack@kellogghansen.com)
Jennifer L. Gregor (jgregor@gklaw.com)
Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
CDK-MDL-Team@mayerbrown.com
DMSTeam@milberg.com


*/s/ Leo D. Caseria*
Leo D. Caseria