# Exhibit C

**MAYER·BROWN**

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

**Matthew D. Provance**
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

June 12, 2018

**BY E-MAIL**

Michael N. Nemelka
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Peggy J. Wedgworth
MILBERG TADLER PHILLIPS GROSSMAN LLP
One Pennsylvania Plaza
New York, NY 10119

Re: *In re Dealer Management Systems Antitrust Litig.*,
MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Mike and Peggy:

I write regarding the parties' May 25, 2018 proposals for document custodians and in follow-up to our June 8 meet-and-confer on the same subject.[1]

**Additional CDK Document Custodians**

CDK has already produced more than 820,000 documents (totaling more than 2.4 *million* pages) in the MDL. CDK also has already agreed to seventeen document custodians, from which tens of thousands of additional documents (if not hundreds of thousands) will be produced in response to Authenticom's and the remaining Plaintiffs' discovery requests. Notwithstanding the foregoing, Plaintiffs now seek *twenty-seven* additional document custodians from CDK—which, if accepted, would result in *forty-four* CDK custodians in the MDL. While we are willing to explore a possible compromise, Plaintiffs' proposal is excessive and contrary to the proportionality requirement of Rule 26.

To be clear, we believe that the seventeen custodians already agreed to by CDK are sufficient to meet any legitimate needs for additional discovery that Plaintiffs may have. Solely in the interest of reaching a compromise, however, CDK is prepared to agree to seven additional custodians to

---

[1] Specifically, this letter addresses Plaintiffs' proposals for CDK and CVR document custodians, Defendants' proposal for MVSC document custodians, CDK's proposals for AutoLoop and Cox document custodians, and CDK's proposal for Dealership Class Plaintiff document custodians.

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Michael N. Nemelka
Peggy J. Wedgworth
June 12, 2018
Page 2

be selected by Plaintiffs from the three categories provided below.[2]  Please note that our offer is contingent on reaching a global resolution regarding CDK document custodians in the MDL.

| **Add'l CDK Management**[3] (select three) | **Add'l Sales, Mktg., Strategy** (select two) | **Add'l DMI & Data Services** (select two) |
|---|---|---|
| 1. Brian MacDonald[4] <br> 2. Jim Foote <br> 3. Robert Marvin <br> 4. Al Nietzel | 1. David Wrobel <br> 2. Mike Joza <br> 3. Jeff Barr <br> 4. Byron McDuffee | 1. Josh Douglas <br> 2. John Lilly <br> 3. Trey Gerlich |

CDK has organized its offer of additional custodians into categories (from which Plaintiffs may select two or three custodians of their own choosing) in an attempt to mitigate the already substantial duplication of discovery being produced from current CDK document custodians who possess overlapping documents and communications.  It also ensures that each relevant category of information is adequately represented.

CDK objects to the remaining additional CDK document custodians proposed by Plaintiffs as not reasonably likely to possess relevant, non-duplicative discovery, and because the burden of adding further custodians at this point is disproportional to any possible benefit.  Our objections

---

[2] During our June 8 meet and confer, you asked whether CDK's document production includes organizational charts.  CDK has produced numerous organizational charts, including at CDK-2412042, CDK-0859456, CDK-1170819, CDK-0822648, and CDK-0121298.

[3] Plaintiffs' May 25 proposal also requests Joe Bihner as a CDK document custodian, but Mr. Bihner is already an *Authenticom* custodian.  *See, e.g.*, 12/08/2017 Ltr. from M. Nemelka to B. Ross and B. Miller.  CDK will not count him against its offer for Plaintiffs to select seven additional document custodians.

[4] As we have explained (*see* 11/15/2017 Ltr. from B. Miller to M. Nemelka and 12/15/2017 Ltr. from B. Miller to M. Nemelka), Steve Anenen was CDK's CEO until June 30, 2016—*i.e.*, during all of the events at the core of Plaintiffs' allegations.  Mr. MacDonald is not involved in the day-to-day operations of the aspects of the business at issue in this litigation, he was new to CDK when he joined in 2016, and he would not reasonably be expected to have documents responsive to Plaintiffs' discovery requests that are not otherwise contained in the files of other agreed upon custodians, most notably, Robert Karp, President of CDK North America throughout the relevant time period.  As discussed during our June 8 meet-and-confer, to the extent that Plaintiffs select Mr. MacDonald as an additional CDK document custodian as part of the proposed resolution, CDK expects that Plaintiffs will make their own CEOs (or equivalent positions) document custodians as well, including AutoLoop's Steve Anderson and Cox Automotive's Sandy Schwartz—both of whom, unlike Mr. MacDonald, were in charge of their respective businesses during the relevant events.  Regardless of whether Mr. MacDonald ultimately is made a document custodian, CDK reserves all rights to object to any deposition noticed for Mr. MacDonald under the "apex" doctrine and for the reasons set forth above.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
June 12, 2018
Page 3

to Mark Roman, DeAnne Hodum, and Michael Kane are outlined in prior correspondence.[5] Several other proposed custodians report directly to CDK employees who are already document custodians or offered as additional custodians in this letter; and therefore, to the extent they have documents that are relevant and responsive to Plaintiffs' discovery requests, we would expect those documents to be included in what CDK has already produced or will produce. For example, proposed custodian Mike Certain reports directly to Beth Ayotte (a custodian), who, along with Steve French (a custodian), reports to Kevin Distelhorst (a custodian). Therefore, Mr. Certain would not reasonably be expected to have relevant documents responsive to plaintiffs' discovery requests that are not otherwise contained in the files of other custodians, most notably, Ms. Ayotte, Mr. French, and Mr. Distelhorst.

Other proposed custodians did not report to existing or offered custodians, but their involvement in relevant issues overlaps significantly with existing or offered custodians—so the same principle applies. For example, proposed custodian Linda Bartman (who is no longer with the company) oversaw CDK's marketing efforts company-wide, across all products and services, and including CDK's international operations. The "communications strategy" noted in your May 25 letter surrounding CDK's SecurityFirst initiative and 3PA program—only a part of CDK's North American retail business—was principally implemented by David Wrobel. Therefore, CDK's offer to produce documents from the files of Mr. Wrobel (see above) is sufficiently likely to capture any relevant documents from the files of Ms. Bartman that are responsive to plaintiffs' discovery requests. The remaining proposed custodians, for the most part, perform ground-level sales, implementation, technical, and accounting functions. Their roles at CDK are such that they would not reasonably be expected to have relevant documents; and to the extent that they may be copied on a handful of relevant communications, those documents should be available from the files of other existing or offered custodians.[6]

Additionally, three individuals—David LaGreca, Mish Kumar, and Laura Stevens—appear to be on Plaintiffs' list of proposed custodians primarily because they are referenced on an agenda (CDK-1424530) that purports to identify attendees at a meeting between CDK and Reynolds regarding the February 2015 DEA, RCI, and 3PA agreements. Plaintiffs label these individuals as "Team Members" in the "CDK-Reynolds conspiracy." Of course, this meeting is not evidence of any "CDK-Reynolds conspiracy." The agenda makes clear that the meeting was about implementing Defendants' written agreements, which are lawful, and it was appropriate for Defendants to communicate about implementing them. Moreover, Mr. LaGreca and Ms. Kumar are simply identified as attendees; not as actual members of the "CDK Team," nearly all

---

[5] *See* 11/15/2017 Ltr. from B. Miller to M. Nemelka (addressing Mr. Roman, Mr. Kane, and Ms. Hodum); 12/15/2017 Ltr. from B. Miller to M. Nemelka (further addressing Mr. Roman).

[6] For example, proposed custodian JoAnn Billiter is an accounting specialist who works with account receivables. Her name appears on a tiny fraction of the documents produced by CDK, most of which appear to have no bearing or relevance to any issue in the litigation. She appears to be copied on *one* email between Beth Ayotte (a custodian) and an AutoLoop employee discussing AutoLoop billing issues.

Michael N. Nemelka
Peggy J. Wedgworth
June 12, 2018
Page 4

of whom are already agreed-upon document custodians. *See id.* Their possible attendance at one meeting does not justify making them document custodians.[7]

**CVR Document Custodians**

Thank you for confirming during our June 8 meet-and-confer that Plaintiffs intend to issue CVR-specific document requests and proposed search terms in the short term. Once we receive those materials, we will be prepared to discuss Plaintiffs' thirteen proposed CVR custodians. Preliminarily, we do not anticipate objecting to several of them, including Scott Herbers, Jim Quinlan, Janet Michaels, and Jason Bonifay. We have concerns that the remaining proposed custodians are somewhat far afield of Plaintiffs' allegations related to CVR and/or duplicative of the custodians listed above. However, we will reserve taking a firm position as to proposed CVR custodians pending our review of Plaintiffs' CVR-specific discovery requests.[8]

**MVSC Document Custodians**

Thank you for your agreement to make Don Armstrong, Kelly Kimball, Joseph Nemelka, John Brueggeman, Napa Bulusu, and Matt Armstrong document custodians. During our June 8 meet-and-confer, Defendants requested organizational charts or equivalent documentation to substantiate MVSC's position that these same individuals are properly identified as Defendants' proposed custodians (g)-(k), who were described by subject matter. We have yet to receive this information and ask that MVSC provide it in advance of our next meet-and-confer. We reserve the right to identify additional custodians who may be appropriate based on this information.

**Cox Document Custodians**

Thank you for your agreement to make Aaron Caw, Keith Jezek, Brian Green, John Kovac, Amy Mills, Lori Wittman, Paul Whitworth, and Dale Pollack document custodians. Here, too, CDK requested organizational charts or equivalent documentation to substantiate Cox's position that these same individuals are properly identified as CDK's proposed custodians No. 17-23, who were described by subject matter. And, here again, we have yet to receive this information and therefore ask that Cox provide it in advance of our next meet-and-confer. We again reserve the right to identify additional custodians who may be appropriate based on this information.

---

[7] Further, please be advised that Ms. Stevens was an outside consultant, and her documents were not retained when that engagement with CDK ended. As a result, no data is available for Ms. Stevens.

[8] In the interest of streamlining future discussions regarding proposed CVR custodians, please note that no documents or data are available for former AVRS employees Bob Reiger, Rick Francis, or Jose Ramirez. These individuals were either never employed by CVR or CDK (as is the case for Mr. Reiger), or they are former employees for whom no documents or data have been retained (as is the case for Mr. Francis and Mr. Ramirez, both of whom left in 2016).

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
June 12, 2018
Page 5

Further, while we appreciate Cox's agreement to several of the named custodians CDK identified, we do not believe that its exclusion of certain other proposed custodians is appropriate. Per your request, we summarize below the relevance of each of proposed custodians currently in dispute. Although we do not have the benefit of reviewing a substantial document production from Cox to identify custodians, the information available to CDK indicates that these custodians possess relevant, non-duplicative discovery.

1. *Mike Barrington, Senior VP, Sales and Lender Solutions, Retail Solutions Group (Cox Automotive)*. We understand that Mr. Barrington has responsibility for sales and lender solutions offered by Cox, including through Plaintiffs HomeNet, vAuto, VinSolutions, and Xtime. Among other things, it is likely that Mr. Barrington has relevant documents related to Cox's customer relationships, pricing of Cox's sales and lender solutions, and its participation in CDK's 3PA program.

2. *Sandy Schwartz, President, Cox Automotive*. The point that Plaintiffs made during our June 8 meet-and-confer regarding Mr. Schwartz—that he joined Cox Automotive from the "newspaper business"—is irrelevant. Regardless of where he came from, Mr. Schwartz has been running Cox Automotive since 2014. Moreover, while Cox has yet to produce documents, it is already apparent that Mr. Schwartz was personally involved in matters at issue in this lawsuit. As one example, dealers communicated directly with Mr. Schwartz about Cox's access to data on CDK's DMS. *See, e.g.*, CDK-0069980.

3. *Mandi Fang, VP Product Management (vAuto).*[9] Ms. Fang is likely to have relevant documents regarding vAuto's contracts and relationships with dealer and OEM customers, as we understand that she plays a key role in working with vAuto's dealer and OEM customers regarding software solutions, and in particular new and used vehicle inventory management solutions. Ms. Fang is also involved in, and has directly communicated with CDK regarding, pricing for CDK's services, including data integration fees. *See, e.g.*, CDK-2378980; CDK-1407408.

4. *Jack Ternowchek, Senior Manager, Strategic Initiatives (Homenet)*. Mr. Ternowchek is likely to have relevant documents related to Homenet's access to CDK's DMS and possible data security issues attributable to Homenet. For example, Mr. Ternowchek is likely to have engaged in communications related to what appears to be a data security incident at one dealer, which the dealer attributed to Homenet's syndication of the dealer's vehicle inventory data to various vendors without the dealer's knowledge or authorization. Mr. Ternowchek was also centrally involved in Homenet's methods of accessing data stored on CDK's DMS. *See, e.g.*, CDK-2120245; CDK-0456761.

---

[9] In CDK's initial proposed search terms and custodian list for Cox, Ms. Fang was misidentified as the Vice President of Product Management for DealerTrack.

Mayer Brown LLP

Michael N. Nemelka
Peggy J. Wedgworth
June 12, 2018
Page 6

5. *Chase Abbott, VP Sales (VinSolutions & DealerTrack F&I).* We understand that Mr. Abbott leads and manages VinSolutions and DealerTrack F&I sales, and therefore is likely to have relevant documents related to customer relationships, pricing for software solutions, and third-party DMS access, certification, and fees.

6. *Sam Passer, Assistant VP Client Onboarding (VinSolutions).* Mr. Passer is likely to have relevant documents related to VinSolutions products and customer relationships. Mr. Passer also likely has relevant documents, including communications with dealers, related to VinSolutions's access to data maintained on CDK's DMS. *See* CDK-1824371.

7. *Corey Roberts, General Manager (xTime).* Mr. Roberts is likely to have relevant documents related to xTime's customer relationships, pricing, and the terms and conditions of xTime's 3PA certification. *See* CDK-0207785.

**AutoLoop Document Custodians**

Thank you for your agreement to make Alex Eckelberry, Sara Loehwing, Tony Petruzelli, and Matthew Rodeghero document custodians. As with MVSC and Cox, CDK requested organizational charts or equivalent documentation to substantiate AutoLoop's position that these same individuals are properly identified as CDK's proposed custodians No. 10, 11, 14, and 15, who were described by subject matter. And, as with MVSC and Cox, we have yet to receive this information and would ask that it be produced in advance of our next meet-and-confer. We also await your identification of the AutoLoop employees who fit the descriptions of CDK's proposed custodians No. 12 and 13. Here again, we reserve the right to identify additional custodians who may be appropriate based on this information.

Further, while we appreciate AutoLoop's agreement to several of the named custodians CDK identified, we do not believe that its exclusion of certain other proposed custodians is appropriate. Per your request, we summarize below the relevance of each of proposed custodians currently in dispute. Once again, while we only have access to a small production of documents that AutoLoop previously made to the FTC, the information available to CDK indicates that these custodians possess relevant, non-duplicative discovery.

1. *Steve Anderson, Co-founder and Chief Executive Officer.* Mr. Anderson is likely to have relevant documents related to AutoLoop's products, data policies, market strategy, and financial information. We understand that Mr. Anderson also was involved in communications with government agencies regarding matters at issue in this litigation. In addition, Mr. Anderson played an integral role in AutoLoop's decision to join the 3PA program and has directly communicated with CDK about AutoLoop's enrollment in the program. *See, e.g.*, CDK-0015786; CDK-0045139.

2. *Doug Denham, National Sales Director.* Mr. Denham is likely to have relevant documents related to AutoLoop's customer relationships, the pricing of AutoLoop's applications (including any data integration "surcharges"), and direct communications

Michael N. Nemelka
Peggy J. Wedgworth
June 12, 2018
Page 7

    with customers regarding such charges. Mr. Denham is also likely to have relevant documents related to competition with other application providers, AutoLoop's claims that CDK has an "unfair advantage," and AutoLoop's claims regarding CDK's integration fees. *See, e.g.*, AUTOLOOP_FTC_0003972; AUTOLOOP_FTC_0003980.

3. *Jim Thompson, former Senior Director of Operations.* Mr. Thompson is likely to have relevant documents related to AutoLoop's admission into CDK's 3PA program, negotiations with CDK, and the effect of 3PA certification on AutoLoop's revenues and profitability. Dealers also directly communicated with Mr. Thompson about relevant issues, including switching DMS providers and their purported ownership of DMS data.

4. *Graham Annett, VP of Marketing.* Mr. Annett is likely to have relevant documents related to AutoLoop's marketing of competing products. It is also likely that Mr. Annett was involved in the creation of marketing materials related to the 3PA program and AutoLoop's 3PA certification, and related communications with AutoLoop's customers.

5. *Patrick Kelly, VP of Client Retention.* Mr. Kelly is likely to have relevant documents related to customer wins and losses (including the reasons for such wins and losses) and any effect that 3PA certification has had on AutoLoop's ability to retain customers. Mr. Kelly also is likely to have relevant documents related to AutoLoop's use of third-party data extractors for access to data maintained on CDK's DMS.

**Dealership Class Plaintiff Document Custodians**

CDK proposed the following Dealership Class Plaintiff document custodians: (1) the witnesses at each Dealership who are identified in the Dealership Plaintiffs' own Rule 26 disclosures; and (2) an additional set of custodians at each Dealership, identified by specific categories that CDK provided (*e.g.*, the "employee(s) responsible for negotiating contracts with DMS providers, Integrators, and Vendors").[10] During our June 8 meet-and-confer, the Dealership Plaintiffs suggested that they likely would only agree to the first category of proposed document custodians—their own Rule 26 witnesses. That is plainly insufficient. First, several parties who are named in the Consolidated Complaint are not included in the Dealership Plaintiffs' Rule 26 disclosures.[11] Second, the Dealership Plaintiffs have clearly taken the position that *Defendants*

---

[10] In accordance with the current Case Management Order, Defendants made their initial proposal for document custodians on May 25, without the benefit of any discovery from the Dealership Plaintiffs or the Consolidated Class Action Complaint (Dkt. 184), which was later filed on June 4. As stated in our May 25 proposal, Defendants reserve the right to propose additional Dealership Plaintiff document custodians—and serve other discovery—based on the new Consolidated Complaint.

[11] This despite the fact that the Court's May 7, 2018 Case Management Order (Dkt. 166) specifically required the Dealership Plaintiffs' disclosures to "include a statement as to the individual named plaintiffs ***who will*** prosecute this matter on behalf of the putative class…" (emphasis added). Accordingly,
(cont'd)

Michael N. Nemelka
Peggy J. Wedgworth
June 12, 2018
Page 8

are obligated to designate additional document custodians beyond the witnesses that each Defendant has disclosed under Rule 26. Third, many of the Dealership Plaintiffs' Rule 26 disclosures only identify their general manager (or an equivalent position). Other employees within a dealership besides the general manager will possess non-duplicative, relevant discovery. For example, as you are aware, one dealership's IT director offered testimony at Authenticom's preliminary injunction hearing last year. Those are some of the types of employees at each Dealership Plaintiff—in addition to the general manager—who should be included as document custodians.

At a minimum, at our June 8 meet-and-confer we asked each Dealership Plaintiff to identify the individuals within their respective organizations who meet the subject-matter descriptions set forth in Defendants' May 25 proposal. We have not received this information and asked that it be provided promptly, and, in any event, prior to our next meet-and-confer.

Sincerely,

*/s/ Matthew D. Provance*
Matthew D. Provance

cc: Lead MDL Plaintiff Counsel of Record
Reynolds Counsel of Record
Mark Ryan
Britt Miller
Andrew Marovitz

---

(… cont'd)

Defendants request that the Dealership Plaintiffs amend their Rule 26 disclosures immediately to account for all entities who are named plaintiffs in the Consolidated Complaint.