```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

   IN RE:                            ) No. 18 C 864
                                     )
   DEALER MANAGEMENT SYSTEMS         ) Chicago, Illinois
   ANTITRUST LITIGATION              ) October 5, 2018
                                     ) 9:23 a.m.

                       TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE JEFFREY T. GILBERT


   APPEARANCES:

   For Plaintiffs              KELLOGG, HANSEN, TODD, FIGEL &
   Authenticom, et al.:           FREDERICK, P.L.L.C.
                                BY:  MR. DEREK TAM HO
                                     MR. MICHAEL N. NEMELKA
                                1615 M Street, NW, Suite 400
                                Washington, D.C.  20036
                                (202) 236-7931
                                dho@kellogghansen.com
                                mnemelka@kellogghansen.com


   For the Dealer              MILBERG LLP
   Plaintiffs:                  BY:  MS. PEGGY J. WEDGWORTH
                                1 Penn Plaza, Suite 4800
                                New York, New York  10119
                                (212) 631-8622
                                pwedgworth@milberg.com


   Plaintiffs' Liaison         CLIFFORD LAW OFFICES
   Counsel:                     BY:  MS. SHANNON M. McNULTY
                                120 North LaSalle Street, Suite 3100
                                Chicago, Illinois  60602
                                (312) 899-9090
                                smm@cliffordlaw.com


   Official Court Reporter:    NANCY L. BISTANY, CSR, RPR, FCRR
                                219 South Dearborn Street, Room 1706
                                Chicago, Illinois  60604
                                (312) 435-7626
                                nancy_bistany@ilnd.uscourts.gov
```

```
 1    APPEARANCES:  (Continued)

 2    For Defendants CDK        MAYER BROWN LLP
      Global, LLC, and          BY:  MS. BRITT M. MILLER
 3    Computerized Vehicle           MR. MATTHEW D. PROVANCE
      Registration:             71 South Wacker Drive
 4                              Chicago, Illinois  60606
                                (312) 782-0600
 5                              bmiller@mayerbrown.com
                                mprovance@mayerbrown.com
 6

 7    For Defendant             GIBBS & BRUNS, L.L.P.
      The Reynolds and          BY:  MS. AUNDREA K. GULLEY
 8    Reynolds Company:              MR. BRIAN T. ROSS
                                     MR. ROSS MacDONALD
 9                              1100 Louisiana Street, Suite 5300
                                Houston, Texas  77002
10                              (713) 650-8805
                                agulley@gibbsbruns.com
11                              bross@gibbsbruns.com
                                rmacdonald@gibbsbruns.com
12

13    For Defendant             SHEPPARD MULLIN RICHTER & HAMPTON LLP
      The Reynolds and          BY:  MR. LEO CASERIA
14    Reynolds Company:         333 South Hope Street
                                Forty-third Floor
15                              Los Angeles, California  90071
                                (213) 620-1780
16                              lcaseria@sheppardmullin.com

17

18

19

20

21

22

23

24

25
```

1  and how many a week and everything else.  Right, Ms. Miller --
2  Ms. Gulley?
3      MS. GULLEY:  Yes, sir, that's correct.
4      THE COURT:  And I agree.  I think defendants are
5  probably right, that there are -- that the plaintiffs are
6  proposing to take too many depositions for a discovery to close
7  on February 12th.
8      I mean, can it be done by February 12th?  Yeah.  It
9  can only be done with double- and maybe triple-tracking
10 depositions when you consider Thanksgiving, Christmas, and the
11 fact that some documents -- you know, you're not going to hit
12 the ground -- on October 15th, you're not going to be doing 25
13 depositions.  You know, you're not -- I mean, some stuff is
14 sill happening.
15     I still have motions under advisement that are going
16 to affect this.  People are going to have to move forward.  You
17 know, the perfect is the enemy of the good here in terms of how
18 we're going to get that stuff.  You may take depositions and
19 later get documents.  But as long as -- in order to move this
20 case forward, that's what we're going to have to do.
21     But that's a lot of pain.  That would be a lot of
22 pain in this case.  I've been in these cases.  You know, I'm
23 sitting here now trying to direct traffic, but the defendants,
24 I think, cite *In Re:  CFS Securities Litigation*.  You probably
25 figured this out.  I was lead counsel in that case.  I know

1 what 200 depositions looks like, and I know what double- and
2 triple-tracking depositions looks like. And if it has to be
3 done, it has to be done. I'm just not sure it has to be done
4 in this case right now.
5 One of the prime movers of the fast track that we're
6 on was Authenticom and the notion in Wisconsin that -- and in
7 the Seventh Circuit that Authenticom was going to go out of
8 business unless it can -- unless we can get this done
9 lickety-split. And I get that. I get the economic imperative
10 there.
11 But I talked to Judge Dow about this, and he said
12 when he's had you in front of him that that imperative has
13 somehow been reduced. And defendants say it was reduced in
14 their deposition protocol motion and -- or, you know, it's not
15 as, quote/unquote, serious. I think it's serious for
16 Authenticom. But the defendants said in their brief and
17 explained to me kind of what had happened and what's the
18 history on it.
19 And the plaintiffs didn't jump on that in the reply
20 that they filed, which was without leave, but I'm cool with
21 that. I mean, it was helpful.
22 So, you know, to me, if we're going to get this done
23 by February 15th, plaintiffs either have to cut down
24 dramatically on the number of depositions they want to take or
25 the discovery close date would have to be extended or both.

1  You're playing chicken a little bit with each other
2  here, and I recognize that, too. I mean, I've been there as
3  well. But to me I think discovery is going to have to be
4  extended here modestly. But I don't think you can do all that
5  you're talking about doing by February 15th, do it well, do
6  your clients justice with it, and not drive yourselves and your
7  staff and even your clients nuts on this. Okay?
8  I mean, that's my overall view. Discovery would have
9  to be extended to get all the depositions done in a timely
10 manner without killing yourselves, because I have some pending
11 discovery disputes under advisement, which happens, and because
12 we're still producing documents.
13 And I know everybody intends to get this done by
14 October 12th and intends to get everything done by November
15 2nd, but stuff happens. And, you know, I -- you know, I
16 just -- I just feel we're going to have to relieve the schedule
17 a little bit to get this done even if I cut down on the number
18 of depositions that are going to be taken, which I'm going to
19 do. Okay?
20 Maybe I should address numbers first and then hear
21 from you on this. Maybe plaintiffs are going to say, "Judge,
22 we can't -- we can't bear extending discovery." And I'll have
23 to understand why that's the case better than I do now.
24 Let me talk about numbers, and then I'm going to
25 pause and interact with you a little bit. And then after we

1   why they shouldn't be deposed.  I agree with you.  I'd rather
2   have them deposed during the discovery period than after the
3   discovery period, but that adds depositions.
4           MR. HO:  Your Honor, if I could just add one point.
5           You know, I think that what the Seventh Circuit
6   directed and what Judge St. Eve directed before she was
7   elevated to the Court of Appeals was for -- to have creative
8   solutions.  And we've been proponents of those kinds of
9   creative solutions.
10          I think one creative solution that we've put on the
11  table is to have more than your ordinary number of half-day
12  depositions.  So I think that in many of these -- in many
13  cases, depositions of these folks need not take an entire seven
14  hours on the record.
15          And so if you're talking about a window where there's
16  80 however many business days, not counting all the holidays,
17  and we want to get to a number of depositions that allows us to
18  at least touch on all of the people that we think, again,
19  include percipient witnesses to the unlawful agreement, I think
20  having a significant number of half-day depositions that could
21  be scheduled two on a day is a creative solution that could
22  bridge that gap.
23          THE COURT:  Yeah.  And when we get to that, which
24  we're going to have to get to soon, I agree.  I agree that
25  half-day depositions should be taken.  I agree that some

1  depositions -- some weeks there's going to be multiple tracks.
2  I'm not necessarily going to mandate it, but I'm not going to
3  say we can't do it either. It depends on how you're scheduling
4  these things. But if double-tracking depositions is necessary,
5  I'm good with that.
6        I am also good, again, in a two-defendant case to --
7  with defendants' proposal -- and I don't know that you opposed
8  it -- that, you know, they shouldn't have to be defending
9  multiple deps of their employees on the same day.
10       But, Ms. Gulley, of the 45 depositions that the
11 plaintiffs put on their hypothetical calendar, how many of
12 those depositions do the defendants say or would you move in a
13 protective order to say they're not necessary? Have you even
14 done that analysis?
15       MS. GULLEY: Well, we did the analysis to this
16 extent, that we felt that 25 depositions for the defendants was
17 enough in a case where this conspiracy was alleged -- this
18 narrow conspiracy was alleged.
19       We also think that what Judge St. Eve's four-month
20 order did is give us a creative solution, which is a small
21 amount of time, not in which to kill ourselves and put our
22 families in -- at least put me crossways with mine, but,
23 rather, to -- you know, because she saw this as what it is.
24 There are two -- generally two defendants and the companies'
25 JV, because the prejudice is not really to me, right, or to the

1  lawyers. It's to my client, who is sitting here. And, you
2  know, the reason he's here today is to figure out whether he
3  needs to basically shut down the company for four months or
4  whether or not this is going to be on a schedule that's doable.
5      So to your question 25, now, there is the issue of
6  the caveat. I agree we need to talk about that, or Ms. Miller
7  does, with respect to the class, because obviously in terms of
8  class certification, we need to hear from all the plaintiffs in
9  some way.
10     One of the creative solutions that Judge St. Eve did
11 come up with in her calendar was the bifurcation of the class
12 cert issue, which is much later than it might otherwise be.
13     MS. MILLER: Your Honor, I'll just echo what
14 Ms. Gulley said from the standpoint of we -- you would not be
15 surprised to learn that the parties are on two different ends
16 of the spectrum of who they think must be deposed.
17     There's any number of people that the disputes were
18 documented quite heavily when we were negotiating document
19 custodians. There's any number of custodians that were agreed
20 to despite defendants' belief that they are not witnesses that
21 should be either custodians or deponents, but certainly -- but
22 we agreed in order to reach an agreement and try to move the
23 case forward knowing that we were on an accelerated schedule,
24 but now that we're at the deposition phase, at no point did we
25 say simply because we agreed that these people are going to be

1 convinced me that he needs, you know, more than the 25 that the
2 plaintiffs are -- or the defendants were suggesting. I'm not
3 sure I'm convinced you need 45.
4     I am convinced that the case needs to move and to
5 continue to move. And so the way I would divide those up if I
6 was doing it at a 30,000-foot level is 30 for plaintiffs, 30
7 for the defendants, 15 plaintiff third parties, and 15
8 defendant third parties.
9     I -- I don't know where you are on the discovery --
10 *sua sponte*, I would extend the discovery date because I just
11 don't think this is -- that the brain damage -- that there
12 should be -- that you should undergo the brain damage that
13 we're talking about.
14     I would waiver between *sua sponte* extending the
15 discovery date by 30 versus 45 days. To me, 45 days is
16 eminently reasonable, but I don't -- you know, I don't know yet
17 what's going on. I don't know when I'm going to give you the
18 rulings.
19     So I would *sua sponte* extend your discovery cutoff so
20 you could play with the calendar a little bit more by 30 days.
21 So I'd move it from -- discovery cutoff from February 15th to
22 March 15th without prejudice to anybody on the defendants' side
23 or the plaintiffs' side saying we're going to need a little bit
24 more time to do that.
25     And this is a call I'm making today. If somebody,

1 plaintiffs, convince me you need more than that, I will listen,
2 but I'll listen to it based upon facts that I get rather than
3 the 30,000-foot level.
4     Again, I think there's a balance between what
5 plaintiffs need to do. If plaintiffs want to get this done
6 quick, then they have to make some compromises on who they're
7 going to depose. If you want to get this done in a year of
8 depositions, then you don't have to compromise, and we just go
9 ahead and do it. But I think that there's a tension between
10 those two that is not fully appreciated in the proposal that
11 has -- proposals that had been made.
12     And you'll continue to discuss these things. And if
13 there's things you need to bring to my attention on this, I
14 will look at it.
15     Let me address some of the other issues that have
16 been percolating here.
17     I think as a baseline, defendants' proposal of four
18 party depositions a week and two third-party depositions a week
19 by each side, so that's six depositions a week, that's not a
20 bad default, with no party to be deposed in more than one dep
21 per day.
22     I think that where necessary, deps can be double
23 tracked, either by agreement of the parties or with a motion to
24 me. I hope I don't get motions on this. There's no reason
25 that unrelated depositions can't be double tracked during this

1 period.

2 I agree with plaintiffs that there should be half-day
3 depositions if that's all that is necessary for a witness, and
4 two can be on the same day, one in the morning, one in the
5 afternoon. I don't see there's any reason why we can't do
6 that.

7 I'm also -- I'm more than willing to be in agreement
8 with any other creative proposals. I don't know how you're
9 going to do this. Plaintiffs have one week; defendants have
10 one week. You know, you could talk about that kind of stuff.
11 And if there are disputes you can't resolve, I'll do that.

12 Let me talk about the two-day depositions for
13 Schaefer and Gardner. I don't see anything unreasonable with
14 that. These guys are at the center of this. I can't believe
15 that -- or I would say I would bet that there's a need to take
16 these guys for up to two days, and I would permit that.

17 I don't think the tit for tat, "Well, then we need
18 two-day depositions for the five family groups" really is -- is
19 persuasive to me. I mean, I don't -- I don't get there. I
20 don't know whether Authenticom would need a two-day dep.
21 They're a major player here, so I could see that. But I
22 wouldn't approve just *pro forma*, well, they get two-day deps;
23 you get two-day deps.

24 I don't -- I don't think the dealer class plaintiffs,
25 you need two-day deps for those people. Those are -- those

1 are -- those are not there.

2 So I would approve in your schedule Schaefer and
3 Gardner. If -- if you wanted to take a two-day of Authenticom,
4 I wouldn't have a cow over that. But I'm not just going to
5 say, well, because they get it, you get it on the other side.

6 30(b)(6) depositions, okay, I agree with whoever said
7 it -- and I don't know who this is -- but my ruling on that is
8 they should count as one deposition even if multiple witnesses
9 testify to different topics. But if the topics are so diffuse
10 or unrelated and burdensome and if there's too many of them,
11 for example, I would impose a limit.

12 If the notice -- the 30(b)(6) notice contains more
13 than 20 topics, I'd say that counts for two depositions. All
14 right? If it contains more than 40, then it counts for three
15 depositions. You know, if it contains 30, maybe it's
16 two-and-a-half.

17 But, you know, I think you can't unreasonably put 70
18 30(b)(6) topics in that's going to require five people and say
19 that's one deposition. So I just think reason comes in there.

20 With respect to the dispute about conferences with
21 the deponent, which is defendants' section 9(c) of their
22 protocol and the plaintiffs' section 7(a)(3) --

23 MS. GULLEY: I believe it's both places for
24 plaintiffs.

25 THE COURT: Okay. Well, regardless, I'm not going to

1   to meet that deadline."
2          But to say, "This is a deadline, but really it's a
3   soft deadline, and we all know that it's going to be extended,"
4   I think is the worst of both worlds for everybody, because what
5   it's going to mean as a practical matter is that there's going
6   to be no urgency to doing this.  There is going -- there are
7   going to be objections that it's not convenient; there are
8   kids' soccer games.
9          We all know the imposition on the personal lives of
10  counsel and of witnesses that this process is inevitably going
11  to take to some degree.  And I think that the critical thing
12  here is that there be -- if there is going to be any extension,
13  a very modest extension, and that at least for now that
14  deadline be a firm deadline subject only to extension based on
15  an ordinary showing of good cause under Rule 16 so that
16  everybody knows this really is the date that you all have to be
17  targeting.  And, of course, if things really cannot be done in
18  that time, we can all come back.
19         MS. GULLEY:  If I could just respond.
20         THE COURT:  Yeah, you -- no, you don't need to
21  respond.  Somebody once told me if you're winning, you don't
22  need to respond.
23         You convinced me by what you said, that my gut was
24  right to move you to six months or April 15th.  That's not a
25  soft deadline.  I don't want to give you a soft deadline.  But

1  six months, when you take out the week of Christmas, New
2  Year's, Thanksgiving, other stuff that's going to be
3  inevitable, that's -- you're taking four to five depositions a
4  week during that time period.  That's a lot of depositions in a
5  case like this, particularly if you're traveling around the
6  country.
7         If I were to give you 30 days, that would be the soft
8  deadline, because then people are going to come in; i.e., the
9  defendants, and say, "Well, Judge, you know, I'm telling you we
10 can't get it done."
11        To me you could take 90 depositions in six months,
12 some of them double tracked, some of them half days.  You're
13 going to work hard, but I don't know that it's -- it's
14 certainly not as bad as the February 15th date.  I think it's
15 more doable than that.
16        That doesn't mean that somebody can't come in and ask
17 for more time for good cause because stuff happens, and I'll
18 look at that, but I'm not promising to extend it beyond then.
19 But I think six months is a reasonable compromise based upon
20 what I'm hearing.
21        I mean, I just -- I think that that's a push, but
22 it's not an impossible push.  It may have to get extended on
23 good cause, and I'll look at that, but I'm not promising right
24 now.
25        And I think if I do a 60-day extension now, it puts

1 everybody on notice that you got to make every effort to get it
2 done during that time for all the considerations and reasons
3 that I've been talking about here.
4 So I think, you know, based on what you said, I think
5 I should do April 15th and say get it done by April 15th, and
6 allow you to move the case forward rationally on that -- on
7 that basis.
8 So that's what I am going to do. Final answer in
9 terms of what I'm thinking.
10 Okay. Is there anything I haven't covered here?
11 MS. MILLER: Your Honor, on a -- on a separate -- if
12 we're done with the deposition protocol, there was just one
13 separate question we had.
14 We appeared in front of Judge --
15 THE COURT: Wait. Let me talk about the protocol.
16 So somebody has to submit to me something that makes
17 these changes, all right, so that I can sign it.
18 MS. MILLER: We'll be happy to do so.
19 MS. GULLEY: We will, Your Honor.
20 THE COURT: Okay. Go ahead. Yeah.
21 MS. MILLER: We appeared in front of Judge Dow last
22 week on CVR's motion to stay discovery as to just CVR, which,
23 again, is an entity that's only named in one case.
24 The MVSC filed a motion to compel in front of Your
25 Honor after we filed our motion to stay. Judge Dow indicated