**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to All Cases | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC – REDACTED** |

**MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO
COMPEL DEFENDANT CDK GLOBAL, LLC TO RE-DESIGNATE DOCUMENTS
FROM "HIGHLY CONFIDENTIAL" TO "CONFIDENTIAL"**

Pursuant to Rule 37 and the Agreed Confidentiality Order, Dkt. 104 ("Confidentiality Order"), MDL Plaintiffs respectfully request that the Court compel Defendant CDK Global, LLC ("CDK") to re-designate the 66 documents discussed in this motion (the "Subject Documents") from "Highly Confidential" to "Confidential." The Subject Documents are listed and described at Exhibit F and attached to the Declaration of Michael N. Nemelka. *See* Exs. 1-66.[1]

## INTRODUCTION

CDK bears the burden of demonstrating that the Subject Documents merit Highly Confidential treatment, and CDK has not and cannot satisfy that burden. Under the Confidentiality Order, in order to merit Highly Confidential treatment, a document must contain information of a "highly sensitive nature the disclosure of which" to any in-house or party employee "could result in significant harm." Confidentiality Order, ¶ 2(g). As examples of such information, the Confidentiality Order lists "copyrighted software," "programming code," and "engineering specifications." *Id*.

The Subject Documents do not contain any such information. Rather, they are comprised of (1) collusive communications between competitors (CDK and The Reynolds and Reynolds Company ("Reynolds")); (2) CDK's internal emails regarding those collusive communications; and (3) emails and analysis regarding CDK's anticompetitive agreements with Reynolds, CDK's changing data access policies in response to those agreements, and general competition in the DMS and data integration markets. Documents such as these do not meet the standard for Highly Confidential information. Indeed, if the documents disclosed trade secrets or damaging sensitive information, then CDK would not have shared them with Reynolds, its purported chief competitor.

---

[1] Citations marked as "Ex." are Exhibits attached to the Declaration of Michael N. Nemelka in Support of MDL Plaintiffs' Motion to Compel Defendant CDK Global, LLC to Re-Designate Documents from Highly Confidential to Confidential ("Nemelka Decl.").

MDL Plaintiffs do not challenge the designation of these documents merely to enforce strict compliance with the Confidentiality Order. We do so cognizant of the burden such a challenge places on the Court, and only after an exhaustive effort to resolve the dispute amicably, because CDK's improper designation of these particular documents – a tiny fraction of the documents marked by CDK as Highly Confidential – is significantly hindering the ability of MDL Plaintiffs to participate meaningfully in this MDL. The Subject Documents – some of which have been cited and discussed (under seal) in pleadings and briefing before this Court – are among the most important produced so far in discovery. As a result of CDK's designations, MDL Plaintiffs' counsel cannot share pertinent and highly probative evidence with their clients unless CDK consents or the court orders. *See* Confidentiality Order, ¶ 5(c)(10). That result deprives counsel of the ability to advise their clients, and it deprives MDL Plaintiffs of the ability to evaluate the strength of their case, determine their litigation and settlement strategy, and provide informed direction to counsel. Moreover, the Confidentiality Order imposes severe restrictions on the use of Highly Confidential documents at depositions, placing an additional unnecessary burden on MDL Plaintiffs in prosecuting their case.

Re-designating the documents "Confidential" will fully protect CDK's legitimate interests. The Confidentiality Order restricts the sharing of Confidential information to in-house counsel and client employees who guide the conduct of the litigation. *See* Confidentiality Order, ¶ 5(b). Even with respect to that limited subset, clients who receive Confidential information can only use it for this MDL and not for any non-litigation purpose. CDK has not shown and cannot show that re-designating the Subject Documents – which never should have been labeled Highly Confidential in the first place – will prejudice CDK in any way.

## BACKGROUND

On April 4, 2018, this Court entered an Agreed Confidentiality Order – patterned after the Local Rule 26.2 Model Confidentiality Order – governing the "materials and information produced . . . in the course of formal or informal discovery" in this MDL. *See* Dkt. 104, ¶ 1. The Confidentiality Order provides a two-tiered structure, under which counsel can designate non-public documents as either "Confidential" or "Highly Confidential." The Confidentiality Order defines "Highly Confidential" information as follows:

> Confidential Information of a highly sensitive nature the disclosure of which could result in significant harm, including but not limited to competitive harm, to the business or operations of that Party or Non-Party or to an individual. Without limitation to other forms of Confidential Information properly designated as "HIGHLY CONFIDENTIAL" in accordance with this subparagraph, a Producing Party may designate copyrighted software and all other information reflecting computer or programming code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs as "HIGHLY CONFIDENTIAL."

*Id.* ¶ 2(g).

"Highly Confidential" documents can only be shown, as relevant here, to outside counsel and experts – not in-house counsel, the parties themselves, or employees of the parties. *Id.* ¶ 5(c). Furthermore, to show a deponent a "Highly Confidential" document (except in cases where the deponent already sent or received that document), a party must give the Designating Party seven days advance notice. *Id.* ¶ 5(c)(6). If the Designating Party objects, the party taking the deposition would need to seek emergency intervention from the Court to use the document at the deposition. *Id.*

By contrast, documents marked "Confidential" may be reviewed not only by outside counsel, but also by (1) in-house counsel; and (2) "[p]arties and employees of a Party, at any time, but only to the extent Counsel determines in good faith that the employee's assistance is reasonably

3

necessary to the conduct of this Action." *Id.* ¶ 5(b)(2). At depositions the parties can show "Confidential" documents to any witness "to whom disclosure is reasonably necessary according to the good faith judgment of" the counsel taking the deposition. *Id.* ¶ 5(b)(7).

The Confidentiality Order provides that "Discovery Material shall not be used or disclosed by the Receiving Parties, Counsel for the Receiving Parties, or any other persons identified in subparagraphs 5(b)-(c) for any purpose whatsoever other than in the above captioned case, including any appeal thereof (the 'Litigation')." *Id.* ¶ 5(a). Section 5 further states: "No person shall disclose or permit the disclosure of any Confidential Information designated as 'CONFIDENTIAL' to any person or entity except as set forth in subparagraphs 5(b)(1)-(11) of this Order." *Id.* ¶ 5(b).

MDL Plaintiffs have repeatedly objected to Defendants' use of the "Highly Confidential" designation for the Subject Documents. For example, on September 24, 2018, pursuant to ¶ 8(a) of the Confidentiality Order, MDL Plaintiffs identified the Subject Documents, and explained why they did not warrant Highly Confidential treatment. Ex. A. In response, CDK agreed to re-designate 13 of the Subject Documents as Confidential, but refused to change the "Highly Confidential" designation for the remaining documents. Ex. B. On October 11, 2018, the parties met-and-conferred, and CDK again refused to re-designate the remaining Subject Documents and confirmed the parties were at impasse with respect to those documents.[2]

The Subject Documents are some of the most probative and legally significant documents produced so far in this MDL. Indeed, some of the Subject Documents were introduced at the

---

[2] In subsequent correspondence, MDL Plaintiffs withdrew their challenge to two documents and CDK confirmed it was now re-designating as Highly Confidential five documents it had previously produced as Confidential. *See* Exs. C, D, E.

4

*Authenticom* preliminary injunction hearing[3] or have been cited and discussed in pleadings and briefing (under seal) before this Court since the MDL consolidation. *See*, *e.g.*, Dkt. 194 (AutoLoop Amended Complaint); Dkts. 126, 126-01 (Cox Automotive, Inc. Opposition to Motion to Dismiss, and Exhibits 1-17); Dkts. 136, 136-01 (MVSC Supplement to Opposition to Second Motions to Dismiss, and Exhibits 1-9); Dkts. 184 and 198 (Dealership Plaintiffs' Consolidated Complaint, and Exhibits 7, 14, 24, 26, 27, 30, 34, 35).

The Subject Documents fall into six general categories.

First, several of the Subject Documents are communications between CDK and Reynolds discussing the terms of their February 2015 written agreements. ████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Second, certain documents reflect CDK's internal communications concerning its agreement with Reynolds and Defendants' joint efforts to drive independent integrators out of the market. ████████

████████████████████████████████████████
████████████████████████████████████████

---

[3] *See generally Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048 (W.D. Wis. July 14, 2017).

5

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████

Third, other documents concern CDK's specific discussions about Authenticom and its plan to destroy Authenticom and other independent integrators, consistent with the alleged conspiracy between CDK and Reynolds. ███████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████

Fourth, some Subject Documents reflect CDK's internal policies relating to data access and analysis of the market dynamics that are central to the antitrust issues in this MDL. ███

███████████████████████████████████████████████
███████████████████████████████████████████████

6

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Fifth, several of the Subject Documents include statements that directly contradict CDK's key defenses and counterclaims in this litigation – i.e., ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

7

██████████████████████████████████████████████████████████████████

██

Sixth, the remaining Subject Documents are pertinent to the case brought by Motor Vehicle Software Corporation, which has distinct antitrust claims concerning the market for electronic vehicle registration and titling. ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

## LEGAL STANDARD

"As a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978) (per curiam). "Highly Confidential" designations – limiting disclosure to outside counsel – should "only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015).[4]

The Confidentiality Order provides that "[t]he burden of persuasion" "shall be on the Designating Party" – here, CDK – to justify Highly Confidential treatment for the Subject Documents at issue in this motion. Dkt. 104, ¶ 8(b). This Court has similarly held that, to maintain

---

[4] In this brief, MDL Plaintiffs use the "Highly Confidential" designation from the Confidentiality Order interchangeably with "Attorneys Eyes Only" or "Outside Counsel Only" designations, because they are functionally the same. *See supra* p. 3.

8

documents as "Highly Confidential" in the face of a challenge, the designating party must demonstrate that a "Confidential" designation "will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment." *Motorola, Inc. v. Lemko Corp.*, 2010 WL 2179170, at *5 (N.D. Ill. June 1, 2010).

## ARGUMENT

### I. The Subject Documents Do Not Merit "Highly Confidential" Protection

**A.** CDK cannot meet its burden to justify the "extreme" Highly Confidential designation for the Subject Documents, because they are not among the "small and select number of documents" that pose "a genuine threat of competitive or other injury." *See Global Material*, 133 F. Supp. 3d at 1084.

*First*, the Court will search the Subject Documents in vain for information of a "highly sensitive nature the disclosure of which could result in significant harm." Confidentiality Order, ¶ 2(g). The Subject Documents do not contain trade secrets, technological or proprietary information, current or recent customer lists, or even current or recent financial details about CDK's revenues and profits. Rather, they are comprised of collusive communications between CDK and Reynolds; information regarding their 2015 agreements; emails and analysis regarding CDK's data access policies, including discussions about limiting the functionality of CDK's dealer customers' DMS and subjecting dealers to increased operating expenses through the 3PA Program; and emails to dealers stating that they have the right to use Authenticom and other independent data integrators. *See supra* pp. 4-8.

The enumerated categories of "Highly Confidential" in ¶ 2(g) of the Confidentiality Order reinforce the inappropriateness of CDK's designations. That paragraph specifically permits Highly Confidential designation of certain extremely commercially sensitive information: (1) "copyrighted software"; (2) "computer or programming code and associated comments and

9

revision histories"; (3) or "formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms or structure of software or hardware designs." *Id.* But the Subject Documents contain nothing of the kind.

*Second*, virtually all of the Subject Documents are at least two years old. *See* Ex. F ("Date" Column). Many are even older. *See id.* Even if those documents were sensitive when first created (and they were not), it is CDK's burden to "establish good cause and explain with particularity why the information is not stale." *Global Material*, 133. F. Supp. 3d at 1085. CDK has made no attempt to meet that burden and explain with particularity, for any of the Subject Documents, why a Confidential designation for years-old emails and presentations would pose any serious present competitive harm to CDK.

*Third*, the Subject Documents center on communications between CDK and Reynolds about jointly blocking independent integrators, their 2015 agreements, and other topics at the heart of the antitrust conspiracy claims in this MDL. Given their subject matter, such documents cannot possibly be Highly Confidential. *See supra* p. 5 (describing several CDK-Reynolds communications). Indeed, the Highly Confidential designation is designed to prevent disclosure of information of a "highly sensitive nature" to competitors. But the Subject Documents concern communications CDK engaged in *with its principal competitor*.

Indeed, the logic of CDK's argument is perverse. Agreements to exclude competitors are *per se* unlawful under the antitrust laws, which is of course why CDK wishes to avoid disclosure of the documents at issue. But to protect CDK's collusive communications with Reynolds as if they were genuine "trade secrets" is to confer upon these communications the imprimatur of

10

legality when, under the Sherman Act, they are evidence of an unlawful conspiracy.[5] *In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 63 (D.D.C. 2016) ("[U]nlawful conspiracies may be inferred when collusive communications among competitors precede changed/responsive business practices, such as new pricing practices"); *see also In re Commodity Exch., Inc., Gold Futures & Options Trading Litig.*, 2018 WL 3585276, at *8 (S.D.N.Y. July 25, 2018) ("inter-firm communications that could be used to implement collusive price increases are probative of a conspiracy") (citing *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 369 (3d Cir. 2004)); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 313 F. Supp. 3d 931, 951 (N.D. Ill. 2018) (Defendants' executives "admit[ing] an agreement to block Authenticom and other integrators from accessing dealer data" would constitute direct evidence of an agreement to restrain trade.).

*Finally*, CDK must show that "disclosure of *these materials* to a small number of [Plaintiffs'] business personnel, all of whom will be subject to non-disclosure / non-use restrictions under the Court's protective order, presents a risk of disclosure (including inadvertently or accidentally) of sensitive competitive information." *Lemko*, 2010 WL 2179170, at *4. CDK cannot meet that burden. CDK has offered no reason to believe that MDL Plaintiffs, and their key employees necessary to the conduct of this MDL, will fail to abide by Confidentiality Order and use the Subject Documents for non-litigation purposes – much less do so in a manner that will result in "significant harm" to CDK. *Countryman v. Cmty. Link Fed. Credit Union*, 2012 WL 1143572, at *7 (N.D. Ind. Apr. 3, 2012) ("the Court will not presume that any party to the case

---

[5] CDK says (Ex. C at 3) that it shared information with Reynolds pursuant "mutual confidentiality/non-disclosure agreements," but that misses the point. If the information was truly Highly Confidential, CDK wouldn't have shared it *with Reynolds*, even if Reynolds was legally prohibited (via a non-disclosure agreement) from sharing it with other parties. Moreover, CDK's reference (*id.*) to CDK-Reynolds joint ventures is inapposite, because none of the CDK-Reynolds communications included in the Subject Documents concern joint ventures.

will violate [the] terms" of the protective order, "which have been made an order of this Court."); *accord Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *8 (N.D. Ill. Jan. 18, 2011).

**B.** CDK's arguments to the contrary are meritless. CDK has argued (Ex. B at 2) that the Highly Confidential designation is warranted because many of the Subject Documents concern CDK's "business strategies" and allowing "business executives at CDK's competitors to access these documents, regardless of whether their access is ostensibly for purposes of assisting counsel with the conduct of this MDL, could result in significant harm." But as noted above, there is no reason to believe MDL Plaintiffs' clients will violate the Confidentiality Order and exploit Confidential information for competitive gain to CDK's detriment. And, as this Court has held, merely asserting that a document relates to business strategy or is competitively significant "does not carry the day for defendants," *Lemko*, 2010 WL 2179170, at *4, because "the designating party must do more than show that it is a competitor of the receiving party or that the documents in question disclose information about the designating party's relationships with other competitors," *Global Material*, 133 F. Supp. 3d at 1084; *accord Meharg v. AstraZeneca Pharm. LP*, 2009 WL 2960761, at *3 (S.D. Ind. Sept. 14, 2009) ("Vague and conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make a particularized showing that the information sought is confidential and come forward with specific examples of competitive harm.") (quoting *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 WL 311125, at *8 (W.D. Mich. Feb. 9, 2009).

Notably, CDK agreed to re-designate 13 of the documents identified in MDL Plaintiffs' letter to "Confidential." *See supra* p. 4. Those documents were among the most important –



There is no basis to say those documents are any less commercially or competitively sensitive than the remaining Subject Documents. Put differently, if Confidential designations suffice for the 13 documents CDK voluntarily agreed to re-designate, it should also suffice for the remaining Subject Documents. The 13 documents CDK voluntarily agreed to re-designate are found at Exhibits 67-79.[6]

## II.     MDL Plaintiffs Have a Legitimate Need to Evaluate the Subject Documents

"On the other side of the ledger (assuming the Court even needs to get there, given defendants' failure to show a need for the extraordinarily restrictive limitations they seek to maintain), there is a legitimate need for . . . outside counsel to be able to consult with" their clients. *Lemko*, 2010 WL 2179170, at *5. MDL Plaintiffs have a legitimate need to review the Subject

---

[6] CDK also has argued, throughout its correspondence, that MDL Plaintiffs have used the Highly Confidential label more frequently than CDK. But that is a meaningless comparison. To date, CDK has not identified any specific documents that it believes MDL Plaintiffs should re-designate from Highly Confidential to Confidential. We note, moreover, that MDL Plaintiffs' initial productions have included a significant volume of recent financial data and other sensitive categories of documents that CDK itself has agreed should be marked Highly Confidential. If CDK requests re-designation of any documents by MDL Plaintiffs, MDL Plaintiffs will consider that request in good faith and respond appropriately. But the percentage of documents marked Highly Confidential by MDL Plaintiffs has no bearing on whether the documents challenged in this motion are appropriately so designated.

13

Documents, which are among the most probative and legally significant documents produced so far.

As this Court has explained, the "[Highly Confidential] designation must be used selectively because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious." *Global Material*, 133 F. Supp. 3d at 1084. "Further, courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement methods. It is difficult, and perhaps impossible, for an attorney to counsel a client . . . on the basis of information kept secret from the client." *Lemko*, 2010 WL 2179170, at *5 (quoting *Arvco Container*, 2009 WL 311125, at *6).

MDL Plaintiffs' ability to view the Subject Documents is critical to their meaningful participation in this MDL – including their ability to set their litigation strategy and priorities, provide knowledgeable input to counsel, and determine whether and when to settle. Indeed, as noted above, *see supra* pp. 4-8, many of the Subject Documents have already been attached to pleadings and argued in briefs, so MDL Plaintiffs' clients have been deprived of the ability to evaluate for themselves many of the pending motions before this Court. It is very likely that MDL Plaintiffs will continue to use many of the Subject Documents during depositions, at summary judgment, and at trial.

CDK responds (Ex. C at 3) that MDL Plaintiffs can review other documents CDK has marked Confidential, but that is irrelevant. CDK's improper Highly Confidential designations for *these* documents is highly prejudicial to all MDL Plaintiffs and is not mitigated by the ability to review other, less important documents. *See Lucas v. Gold Standard Baking, Inc.*, 2017 WL

14

1436864, at *3 (N.D. Ill. Apr. 24, 2017) ("Courts have recognized the 'hobbling' effect that an opponent may experience in litigation when a party restricts who may view certain information") (quoting *Meharg*, 2009 WL 2960761, at *3); *Petrovic v. City of Chicago*, 2007 WL 2410336, at *4 (N.D. Ill. Aug. 21, 2007) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)); *McDonald Apiary, LLC v. Starrh Bees, Inc.*, 2016 WL 868185, at *1 (D. Neb. Mar. 4, 2016) (noting that "because restrictions on a litigant's access to information . . . may severely hamper the litigant's participation, denying a litigant that right could well border on a denial of due process").

Finally, the Confidentiality Order imposes significant and cumbersome restrictions on the use of Highly Confidential documents at depositions, *see supra* p. 3, so CDK's improper designations with respect to the Subject Documents will unjustifiably make the deposition phase of this case (which is scheduled to begin this month) more difficult and expensive. *Global Material*, 133 F. Supp. 3d at 1084.

## CONCLUSION

The Court should grant MDL Plaintiffs' motion to compel CDK to re-designate the Subject Documents from Highly Confidential to Confidential.

Dated: October 15, 2018

Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

16

**CERTIFICATE OF SERVICE**

      I, Derek T. Ho, an attorney, hereby certify that on October 15, 2018, I caused a true and correct copy of the foregoing **MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT CDK GLOBAL, LLC TO RE-DESIGNATE DOCUMENTS FROM HIGHLY CONFIDENTIAL TO CONFIDENTIAL** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

      */s/ Derek T. Ho*
      Derek T. Ho
      **KELLOGG, HANSEN, TODD,**
       **FIGEL & FREDERICK, P.L.L.C.**
      1615 M Street, NW, Suite 400
      Washington, D.C. 20036
      (202) 326-7900
      dho@kellogghansen.com