**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18-cv-00864 |
| **This Document Relates To:** | Honorable Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | |

**DEALERSHIP CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT BETWEEN DEALERSHIP CLASS PLAINTIFFS AND DEFENDANT
THE REYNOLDS AND REYNOLDS COMPANY AND FOR CONDITIONAL
CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND ............................................................................................................... 1

III.  SUMMARY OF THE SETTLEMENT AGREEMENT ........................................................ 3

IV.  STANDARDS APPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED
SETTLEMENT .................................................................................................................. 5

  A.  The Proposed Settlement Falls "Within the Range of Possible Approval" and Should Be
  Preliminarily Approved ................................................................................................... 5

  B.  The Settlement is Fair and Resulted from Arm's Length Negotiations ............................... 6

V.  THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS ................. 8

  A.  The Requirements of Rule 23(a) are Satisfied ................................................................ 9

    1.  Numerosity ............................................................................................................. 9

    2.  Common Questions of Law and Fact ....................................................................... 9

    3.  Typicality ............................................................................................................. 10

    4.  Adequacy .............................................................................................................. 11

  B.  The Proposed Settlement Class Satisfies Rule 23(b)(3) .................................................. 12

VI.  PROPOSED NOTICE TO THE CLASS .......................................................................... 14

VII.  THE COURT SHOULD ADOPT THE DEADLINES SET FORTH IN THE
PRELIMINARY APPROVAL ORDER ............................................................................ 18

VIII.  CONCLUSION ............................................................................................................... 19

**TABLE OF AUTHORITIES**

Cases                                                                          Pages

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997)..............................................................................8, 9, 13, 14

*Armstrong v. Board of School Directors of the City of Milwaukee,*
   616 F.2d 305 (7th Cir. 1980), *overruled on other grounds by Felzen v.*
   *Andreas,* 134 F.3d 873 (7th Cir. 1998) ...............................................................5, 8

*Authenticom, Inc. v. CDK Global, LLC,*
   874 F.3d 1019 (7th Cir. 2017) .......................................................................2, 3, 4

*In re Citric Acid Antitrust Litig.,*
   No. 1092, C-95-2963, 1997 WL 446239, (N.D.Cal. July 24, 1997) ......................18

*In re Cmty. Bank of N. Va.,*
   418 F.3d 277 (3d Cir. 2005)......................................................................................8

*In re Corrugated Container Antitrust Litig.,*
   643 F.2d 195 (5th Cir. 1981) ..................................................................................12

*Gautreaux v. Pierce,*
   690 F.2d 616 (7th Cir. 1982) ....................................................................................5

*Hughes v. Baird & Warner, Inc.,*
   No. 76 C 3929, 1980 WL 1894 (N.D. Ill. Aug. 20, 1980).....................................12

*Illinois Brick Co. v. Illinois,*
   431 U.S. 720 (1977).................................................................................................1

*In re Ins. Brokerage Antitrust Litig.,*
   282 F.R.D. 92 (D.N.J. 2012)...................................................................................17

*Int'l Brotherhood of Teamsters v. Philip Morris Inc.,*
   196 F.3d 818 (7th Cir. 1999) ....................................................................................6

*Isby v. Bayh,*
   75 F.3d 1191 (7th Cir. 1996) ....................................................................................5

*Kaufman v. Am. Express Travel Related Servs. Co.,*
   877 F.3d 276 (7th Cir. 2017) ....................................................................................7

*Kohen v. Pacific Inv. Mgmt.,*
   571 F.3d 672 (7th Cir. 2009) ..................................................................................11

*In re Mercedes-Benz Antitrust Litig.,*
   213 F.R.D. 180 (D.N.J. 2003)................................................................................10

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016), *cert. denied*, 137 S. Ct. 591 (2016) ...........................7

*Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*,
   231 F.R.D. 280 (N.D. Ill. 2005) ..................................................................................10

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 717519 (E.D.Mich. Feb 22, 2011) ...........................15

*Paper Sys. Inc. v. Nippon Paper Indus.*,
   281 F.3d 629 (7th Cir. 2002) .......................................................................................7

*In re Potash Antitrust Litig.*,
   161 F.R.D. 411 (D.Minn. 1995) .................................................................................18

*Saltzman v. Pella Corp.*,
   257 F.R.D. 471 (N.D. Ill. 2009) ..........................................................................10, 12

*Schmidt v. Smith & Wollensky LLC*,
   268 F.R.D. 323 (N.D. Ill. 2010) ...................................................................................9

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ......................................................................5, 14

*Schulte v. Fifth Third Bank*,
   No. 09-cv-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) .....................2, 5, 6, 7

*Standard Iron Works v. Arcelormittal*,
   No. 08 C 5214, 2014 WL 11350176 (N.D. Ill. Oct. 23, 2014) ...............................10

*Thillens, Inc. v. Cmty. Currency Exch. Ass'n*,
   97 F.R.D. 668 (N.D. Ill. 1983) ...................................................................................10

*In re Visa Check/MasterMoney Antitrust Litigation*,
   No. 96 C 5238, 2002 WL 31528478 (E.D.N.Y. June 21, 2002) .............................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................................9

**Statutes**

15 U.S.C. § 15(a) ...............................................................................................................6

17 U.S.C. § 501 ..................................................................................................................3

17 U.S.C. § 1201 ................................................................................................................3

18 U.S.C. § 1030 .................................................................................................................... 3

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................... 2

Fed. R. Civ. P. 23 ....................................................................................................... *passim*

## I.     INTRODUCTION

Dealership Class Plaintiffs ("Dealership Plaintiffs") respectfully submit this motion to preliminarily approve a proposed class action settlement ("Settlement") of claims between Dealership Plaintiffs and Defendant The Reynolds and Reynolds Company ("Reynolds"). This is a *partial* settlement, and does not affect Dealership Plaintiffs' claims against Defendant CDK Global, LLC ("CDK"). Pursuant to the Settlement Agreement,[1] Reynolds will pay the settlement class the sum of Twenty-Nine Million and Five Hundred Thousand Dollars ($29,500,000) in cash. Additionally, Reynolds will pay up to $250,000 for notice costs.

## II.    BACKGROUND

This is an antitrust class action filed on behalf of retail automobile dealerships in the United States who purchased Dealer Management Systems ("DMS") from Reynolds or CDK. Dealership Plaintiffs allege, *inter alia*, that Defendants entered into a conspiracy to restrain and/or eliminate competition in the DMS and data integration services ("DIS") markets, in violation of the Sherman Act, and various state antitrust and consumer laws.

On June 4, 2018, Dealership Plaintiffs filed their Consolidated Class Action Complaint ("Complaint") (ECF No. 184). Defendants Reynolds and CDK each filed motions to dismiss the Complaint (ECF Nos. 253, 255, 256, 262, 265, 266) and argued, *inter alia*, that (i) the claims of Dealership Plaintiffs with Reynolds contracts are subject to arbitration by virtue of agreements between the Dealership Plaintiffs and Reynolds; (ii) Dealership Plaintiffs lack standing to assert various claims under the *Illinois Brick* doctrine;[2] and (iii) Dealership Plaintiffs' claims fail to

---

[1] The Settlement Agreement is attached to the Declaration of Peggy J. Wedgworth ("Wedgworth Decl.") as Exhibit 1, submitted herewith.

[2] *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).

state antitrust claims under federal and state law. In addition, Reynolds has asserted that it may have counterclaims, in addition to defenses, against the Dealership Plaintiffs related to the sharing of log-in credentials. Dealership Plaintiffs have submitted more than 100 pages of briefing in opposition to Defendants' motions,[3] and Defendants have filed reply briefs. The motions are fully briefed.[4]

Dealership Plaintiffs' counsel have obtained substantial discovery from Reynolds and CDK, as well as third parties, and have continued their factual investigation into the conspiracy alleged in the Complaint.[5] Of the two defendants, Reynolds has the smaller share of the DMS market. *See Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1022 (7th Cir. 2017); Complaint ¶ 1 n.1 (alleging CDK and Reynolds market shares of 45% and 30%, respectively, of DMS market). Because of a defendants' joint and several liability under antitrust law, CDK will remain liable for all damages resulting from the alleged conspiracy (except for a possible set-off for the recovery obtained under the Settlement).

---

[3] Dealership Plaintiffs filed a motion to convert Reynolds' Rule 12(b)(6) motion to dismiss for failure to state a claim to a motion for summary judgment. *See* ECF No. 332. Although that motion was denied, the Court ruled that Reynolds' so-called "Master Agreement" should not be considered on the Rule 12(b)(6) motion. *See* ECF No. 340. Dealership Plaintiffs have also filed a motion, ECF No. 392, *inter alia*, to strike the Declaration of Jeffrey Scott Cherry, dated September 21, 2018 (*see* ECF No. 374-1), submitted with Reynolds' reply brief on its Rule 12(b)(3) motion to dismiss in favor of arbitration. Reynolds submitted that declaration in support of its contention that Reynolds Dealers' claims against Reynolds are subject to arbitration. *See* ECF No. 375 at 6-7. Dealership Plaintiffs' motion to strike the declaration has been stricken as moot in light of the Settlement. *See* ECF No. 405.

[4] Reynolds' motion to dismiss (ECF No. 252) has been stricken as moot in light of the Settlement. *See* ECF No. 412.

[5] An absence of formal discovery, however, would not necessarily preclude even final approval of a settlement. *See Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *4 (N.D. Ill. Sept. 10, 2010) (Dow, J.) ("That counsel conducted no formal discovery prior to settlement does not necessarily preclude eventual final approval of the proposed settlement").

### III.   SUMMARY OF THE SETTLEMENT AGREEMENT

After extensive arm's length negotiations, including a mediation lasting more than twelve hours, Dealership Plaintiffs and Reynolds have entered into a Settlement Agreement that provides for Reynolds' payment of $29,500,000, plus the payment of costs (up to $250,000) for the provision of notice of the Settlement to the proposed class. In consideration, Dealership Plaintiffs, on behalf of themselves and the Dealership Class, have agreed to release claims against Reynolds that were or could have been asserted arising from the conduct alleged in the Complaint.[6] The release does not extend to CDK.

For its part, in addition to the payments discussed above, Reynolds agrees to release Dealership Plaintiffs and the class from any counterclaims that could be asserted against them, including under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, the Copyright Act, 17 U.S.C. § 501, and the Digital Millennium Copyright Act, 17 U.S.C. § 1201.[7] The Settlement does not release any claims that Dealership Plaintiffs and Reynolds may have against each other in the ordinary course of business, including any claims against Reynolds for failing to provide services pursuant to its contracts with Dealership Plaintiffs, or any claims against Dealership Plaintiffs for filing to satisfy payment obligations under the contracts.

---

[6] The plaintiffs in the vendor class action (*Loop, LLC, d/b/a AutoLoop LLC  v. CDK Global, LLC*, No. 18 C 2521 (N.D. Ill.)), and the *Cox* action (*Cox Auto., Inc. v. CDK Global, LLC*, No. 17 C 925 (W.D. Wis.)) are not parties to the Settlement. The complaints in those actions allege a conspiracy between CDK and Reynolds, *see AutoLoop* Complaint, ECF No. 191, ¶ 3 (alleging that vendors "are direct targets of CDK's and Reynolds' conspiracy"); *Cox* Complaint, ECF No. 3, ¶ 3, No. 17 C 925 (W.D. Wis.)); however, they do not name Reynolds as a defendant. The Settlement also does not include the plaintiffs' claims in the *Authenticom* and *Motor Vehicle Software Corp.* ("*MVSC*") actions (*Authenticom, Inc. v. CDK Global, LLC*, No. 18 C 868 (N.D. Ill.); *MVSC v. CDK Global, Inc.*, No. 17 C 896 (C.D. Cal.)), in which Reynolds is a named defendant.

[7] Reynolds disputes the merits of Dealership Plaintiffs' claims. Dealership Plaintiffs dispute Reynolds' defenses and further dispute that any counterclaims, if asserted, would be meritorious.

3

Notwithstanding the Settlement, Dealership Plaintiffs' document discovery of Reynolds will continue, and depositions of Reynolds personnel will go forward, as part of Dealership Plaintiffs' ongoing case against CDK.

Dealership Plaintiffs' counsel are not seeking an award of attorneys' fees at this time. Additionally, the Settlement does not contemplate distributions to class members at this time; distributions will be made at a later date, subject to an allocation plan approved by the Court, upon notice to the class. Dealership Plaintiffs' counsel are seeking up to $3 million from the settlement fund for their litigation expenses (including expert fees, deposition costs and other expenses).[8] Applications for reimbursement of litigation expenses above the $3 million amount, awards of attorneys' fees for Dealership Plaintiffs' counsel, and Dealership Plaintiffs' service awards, will be made upon further notice to the class.[9] Dealership Plaintiffs' counsel's fee request will not exceed one-third of the recovery.

---

[8] Dealership Plaintiffs request this Court authorize Dealership Plaintiffs' counsel to utilize a portion of the Settlement Fund to pay expenses in prosecuting the remaining claims against the non-settling Defendant, CDK. *See In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-cv-897, MDL 997 (N.D. Ill. Feb 18, 1998) (authorizing disbursement of $6,000,000 from settlement to fund future litigation expenses) ("*BNPD* Order"); *In re WorldCom, Inc. Sec. Litig.*, No. 02-cv-3288, 2004 WL 2591402, at *22 (S.D.N.Y. Nov. 12, 2004) (in a $2.75B settlement, Court ordered the establishment of a $5,000,000.00 fund for future litigation expenses); *In re TFT-LCD (Flat Panel) Antitrust Litig.* ("*TFT-LCD* Order"), No. 07-MD-1827 (N.D. Cal. Feb. 18, 2011) (in a $17,000,000 settlement, court ordered a $3,000,000 for a future expense fund); *In re Packaged Ice Antitrust Litigation*, No. 08-MD-1952, 2011 WL 717519, at *13 (E.D. Mich. Feb. 22, 2011) (collecting cases for the same proposition). The *BNPD* and *TFT-LCD* Orders are attached to the Wedgworth Decl. as Exhibits a and b, respectively.

[9] The Settlement Agreement (at ¶ 24) provides that Reynolds shall have the option to terminate the agreement if a specified number of class members elects to "opt-out" of the class. In accordance with Fed. R. Civ. P. 23(e)(3), counsel discloses that the specified number is set forth in a separate confidential agreement, a copy of which will be provided to the Court *in camera* upon request.

## IV.     STANDARDS APPLICABLE TO PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### A.     The Proposed Settlement Falls "Within the Range of Possible Approval" and Should Be Preliminarily Approved

There is a strong public interest in settlement of class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"); *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011) (Dow, J.) (citing *Isby*).

Generally, before directing that notice be given to the class members, the court makes a preliminary evaluation of the proposed settlement. As explained in the Manual for Complex Litigation (Fourth):

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. * * * The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

*Id.,* § 21.632. *See also* 2 NEWBERG ON CLASS ACTIONS, §11.24 (3d ed. 1992); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) ("The first step in district court review of a class action settlement is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval'"); *see generally* Fed. R. Civ. P. 23(e).

A hearing on a motion for preliminary approval "is not a 'fairness hearing'; its purpose is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Schulte*, 2010 WL 8816289, at *2 (citing *Armstrong*).

5

"Also relevant to whether a proposed settlement should be preliminarily approved is whether it 'has no obvious deficiencies and does not improperly grant preferential treatment to class representatives or segments of the class.'" *Id.* (citation omitted).

### B. The Settlement is Fair and Resulted from Arm's Length Negotiations

The Settlement plainly meets the standards for preliminary approval. The Settlement, reached following intensive negotiations between experienced counsel, provides for Reynolds' payment of $29,500,000 for the benefit of the class, plus up to $250,000 for notice costs. Moreover, Reynolds will continue to be subject to discovery as Dealership Plaintiffs pursue their claims against CDK.

Dealership Plaintiffs, of course, do not concede that their claims against Reynolds lack merit (nor does Reynolds concede that the claims are meritorious).[10] These issues are sharply disputed. Nonetheless, the Settlement provides substantial benefits to the class while, at the same time, substantially reducing the risks confronted by the class -- including those raised in Reynolds' motions to dismiss the Complaint in favor of arbitration and for failure to state a claim.

---

[10] For example, Reynolds argues that it did not conspire with CDK, and that even prior to the alleged conspiracy, it had closed its DMS system to third-party data integrators. *See* ECF No. 256 at 29. *See generally Authenticom*, 874 F.3d at 1022 ("Until 2015, the system furnished by CDK placed no restrictions on data harvesting by third-party integrators; Reynolds, in contrast, has already forbidden that practice in its system licenses.") (reversing preliminary injunction). Dealership Plaintiffs, however, contend that, even if CDK (but not Reynolds) had modified its practices to close its DMS system, that would suffice to support claims against *both* CDK and Reynolds. *See* ECF No. 357 at 7; Complaint ¶ 171 ("Defendants agreed to reduce the functionality of CDK's DMS (including Dealers' ability to freely access their DMS data through authorized persons)."). *See generally Int'l Brotherhood of Teamsters v. Philip Morris Inc.*, 196 F.3d 818, 823 (7th Cir. 1999) ("Plaintiffs' contention that smokers could not recover under the antitrust laws because they are not injured in their 'business or property', 15 U.S.C. § 15(a), is silly. Paying too much, *or getting an inferior product for the same money* . . . causes a loss of one's money, which is 'property'") (emphasis supplied).

Importantly, while providing a substantial recovery, the Settlement will not diminish the potential damages recoverable from CDK. CDK will remain jointly and severally liable for all damages resulting from defendants' alleged conspiracy -- including those attributable to Reynolds' sales. *See Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output . . . . If [plaintiffs] can prove that there was indeed a conspiracy, they may collect damages not just firm-by-firm according to the quantity each sold, but from all conspirators for all sales"). Accordingly, the "net expected value of continued litigation" against CDK will be unaffected by the Settlement (save for a possible setoff for the proceeds of the Settlement). *See Schulte*, 2010 WL 8816289, at *2 (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)).

Additionally, the Settlement eliminates the risk that Reynolds' Dealers' claims against Reynolds will be dismissed in favor of arbitration. In its motion to dismiss the Complaint in favor of arbitration, Reynolds argues that it entered into contracts with Dealership Plaintiffs that require arbitration of claims against Reynolds. *See* ECF No. 256 at 6-7. Dealership Plaintiffs strongly dispute Reynolds' argument and contend, *inter alia*, that the claims asserted in this litigation are well beyond the scope of any arbitration agreement. *See* ECF No. 357 at 9. The Settlement moots Reynolds' efforts to require arbitration by Reynolds Dealers, which would potentially require them to pursue costly and inefficient individual arbitration proceedings in order to obtain relief for their claims.  It also moots Reynolds' argument that that the claims asserted against Reynolds by Dealership Plaintiffs who contracted with CDK should be stayed pending completion of arbitration by the Reynolds Dealers. *See Kaufman  v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 285-86 (7th Cir. 2017); *In re Nat'l Football League Players*

7

*Concussion Injury Litig*., 821 F.3d 410, 440 (3d Cir. 2016) (affirming approval of class action settlement: "[W]e must take seriously the litigation risks inherent in pressing forward with the case. The NFL's pending motion to dismiss and other available affirmative defenses could have left retired players to pursue claims in arbitration or with no recovery at all"), *cert. denied*, 137 S. Ct. 591 (2016).

In sum, the Settlement (1) provides substantial benefits to the class while eliminating significant litigation risks posed by Reynolds' purported defenses (including those set forth in its motion to compel arbitration and to dismiss); (2) is the result of extensive good faith negotiations between knowledgeable and experienced counsel; (3) was entered into after extensive factual investigation and legal analysis; and (4) is, in the opinion of experienced counsel, fair, reasonable, and adequate to the class. *See Armstrong*, 616 F.2d at 325 (in determining fairness of class action settlement, "the court is entitled to rely heavily on the opinion of competent counsel"). Accordingly, the Court should preliminarily approve the Settlement.

## V.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS

At the preliminary approval stage, the Court must also determine whether the proposed Settlement Class should be certified for settlement purposes. Under Rule 23, class actions may be certified for settlement purposes only. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Certification of a settlement class must satisfy each requirement set forth in Rule 23(a), as well as at least one of the separate provisions of Rule 23(b). *Id.* at 613-14; *see also In re Cmty. Bank of N. Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("[C]ertification of classes for settlement purposes only [is] consistent with Fed. R. Civ. P. 23, provided that the district court engages in a Rule 23(a) and (b) inquiry"). Dealership Plaintiffs seek certification of a Settlement Class consisting of:

> All persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018.

Settlement Agreement, ¶ 1(b). This proposed class is a simplified version of what was proposed in the Complaint, with an additional defined end of the class period. As detailed below, this proposed class meets the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3).

### A.     The Requirements of Rule 23(a) are Satisfied

####      1.      Numerosity

Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous as to make joinder of its members "impracticable." No magic number satisfies the numerosity requirement, however, "a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010) (citations omitted). The proposed Settlement Class consists of thousands of automobile dealerships that purchased DMS from CDK and/or Reynolds. Joinder of all class members would be impracticable; accordingly, Rule 23 (a)(1) is satisfied.

####      2.      Common Questions of Law and Fact

Fed. R. Civ. P. 23(a)(2) requires that there be "questions of law or fact common to the class." Plaintiffs must show that resolution of an issue of fact or law "is central to the validity of each" class member's claim and "[e]ven a single [common] question will" satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

A central common question in this case is whether Reynolds and CDK engaged in an antitrust conspiracy to charge supracompetitive prices in the DMS and DIS markets. Proof of this conspiracy will be common to all class members. *See, e.g.*, *Standard Iron Works v.*

*Arcelormittal*, No. 08 C 5214, 2014 WL 11350176, at *2 (N.D. Ill. Oct. 23, 2014) (common issues included "whether Defendants violated federal antitrust law by allegedly engaging in coordinated production cuts in order to raise, maintain or stabilize prices above competitive levels with respect to certain steel products"); *Thillens, Inc. v. Cmty. Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983) ("The overriding common issue of law is to determine the existence of a conspiracy."). Other common questions of law and fact include (1) whether Defendants' conduct violated Section 1 of the Sherman Act; (2) whether Defendants' conduct increased prices of DMS and DIS; and (3) the appropriate measure of damages. Accordingly, the Settlement Class satisfies Rule 23(a)(2).

### 3. Typicality

Fed. R. Civ. P. 23(a)(3) requires that the class representatives' claims be "typical" of class members' claims. "[T]ypicality is closely related to commonality and should be liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009) (citations omitted). Typicality is a "low hurdle," requiring "neither complete coextensivity nor even substantial identity of claims." *Owner-Operator Indep. Drivers' Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005). When "[the representative party's] claim . . . arises from the same . . . course of conduct that gives rise to the claims of other class members and [all of the] claims are based on the same legal theory," factual differences among class members do not defeat typicality. *Id.* Courts generally find typicality in cases alleging a price-fixing conspiracy. *See, e.g.*, *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2003) (finding plaintiffs met the typicality requirement based on the fact that plaintiffs' main claim -- that they were harmed by an illegal price-fixing conspiracy -- was the same for all class members).

Dealership Plaintiffs allege, *inter alia*, an unlawful conspiracy by Defendants to restrain competition by charging supracompetitive prices in the DMS and DIS markets. The named class

10

representative Plaintiffs will have to prove the same elements that absent Settlement Class members would have to prove, *i.e.*, the existence and effect of such conspiracy. As alleged in the Complaint, each named representative purchased DMS directly from one of the Defendants and was overcharged (and experienced decreased functionality); each representative indirectly purchased DIS and was overcharged for it; and each representative suffered an antitrust injury as a result of the violations alleged in the Complaint. (Complaint, ¶¶ 165-166). Because the representative Plaintiffs' claims arise out of the same alleged illegal anticompetitive conduct, are based on the same alleged theories, and will require the same types of evidence to prove those theories, the typicality requirement is satisfied.

### 4.    Adequacy

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy is measured by a two-part test: (i) the named plaintiffs cannot have claims in conflict with other class members; and (ii) the named plaintiffs and proposed class counsel must demonstrate their ability to litigate the case vigorously and competently on behalf of named and absent class members alike. *See Kohen v. Pacific Inv. Mgmt.*, 571 F.3d 672, 679 (7th Cir. 2009).

Both requirements are satisfied. As they demonstrated at the time they sought appointment, Lead Counsel and members of Plaintiffs Steering Committee ("PSC") are qualified, experienced, and thoroughly familiar with antitrust class action litigation. Furthermore, as demonstrated by their conduct in this case, they have litigated this case vigorously and aggressively and will continue to do so.[11]

---

[11] *See* ECF Nos. 90, 94 (Lead Counsel's and Plaintiff Steering Committee's ("PSC") Motions to Appoint Co-Lead and Liaison Counsel); ECF No. 122 (Court's Order of April 16, 2018).

Moreover, the interests of the settling class members are aligned with those of the representative Plaintiffs. Representative Plaintiffs, like all Settlement Class members, share an overriding interest in obtaining the largest possible recovery. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes").

As they respectfully submit has been demonstrated by their conduct to date, Lead Counsel and the PSC have diligently represented the interests of the Class in this litigation and will continue to do so. Accordingly, the requirements of Rule 23(a)(4) are satisfied.

**B.** **The Proposed Settlement Class Satisfies Rule 23(b)(3)**

Once Rule 23(a)'s prerequisites are met, Dealership Plaintiffs must show the proposed Settlement Class satisfies Rule 23(b)(3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As to predominance, "[c]onsiderable overlap exists between the court's determination of commonality and a finding of predominance. A finding of commonality will likely satisfy a finding of predominance because, like commonality, predominance is found where there exists a common nucleus of operative facts." *Saltzman*, 257 F.R.D. at 484.

In antitrust conspiracy cases, courts consistently find that common issues of the existence and scope of the alleged conspiracy predominate over individual issues. *Hughes v. Baird & Warner, Inc.*, No. 76 C 3929, 1980 WL 1894, at *3 (N.D. Ill. Aug. 20, 1980) ("Clearly, the existence of a conspiracy is the common issue in this case. That issue predominates over issues affecting only individual sellers."); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test

readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws").

Plaintiffs must also show that a class action is superior to individual actions, which is evaluated by four considerations:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed. R. Civ. P. 23(b)(3).

Here, any Class member's interest in individually controlling the prosecution of separate claims is outweighed by the efficiency of the class mechanism. Thousands of entities purchased DMS from Defendants during the class period: settling these claims in the context of a class action conserves both judicial and private resources. Indeed, in the absence of this Settlement, Reynolds no doubt would press its argument (previously set forth in its motion to dismiss) that the claims of class members must be arbitrated pursuant to its agreements with Reynolds dealers. Dealership Plaintiffs, of course, dispute that any claims in this case are subject to any arbitration agreement. Nonetheless, assuming *arguendo* that the claims *are* arbitrable, the superiority of the class mechanism over potentially thousands of individual arbitrations is even more self-evident.

Finally, while Dealership Plaintiffs see no management difficulties in this case, this final consideration is not pertinent to approving a settlement class. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial").

13

Accordingly, the proposed class action is superior to other available methods (if any) for the fair and efficient adjudication of the controversy relating to Reynolds.

## VI.    PROPOSED NOTICE TO THE CLASS

Rule 23(e) requires that prior to final approval, notice of a proposed settlement be given in a reasonable manner to all class members who would be bound by such a settlement. For a class proposed under Rule 23(b)(3), Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Schulte*, 805 F. Supp. 2d at 595. The Rule also specifies that "[t]he notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). "What comprises the best notice possible depends on various elements, including the size of the class, whether the class members can be easily identified, and the probability notice will reach the intended audience." *Schulte*, 805 F. Supp. 2d at 595.

Dealership Plaintiffs have retained Epiq Class Action & Claims Solutions, Inc. ("Settlement Administrator"), with more than 50 years of experience in class action administration and extensive experience in providing notification and administration services, to implement and administer a notice program ("Notice Plan"). In consultation with the Settlement Administrator, Dealership Plaintiffs have developed a Notice Plan that will consist of direct mail notice to approximately 15,000 Reynolds and CDK dealership DMS customers, publication notice in *Automotive News and WardsAuto: Dealer Edition Newsletter*, as well as a Settlement website, and a toll-free information line to answer questions from class members.

The direct mail notice ("Mail Notice") program will utilize detailed mailing lists containing information for Reynolds and CDK dealership customers in the United States that

purchased DMS (collectively "Mailing List" or "Lists"). The Mailing Lists date from January 1, 2015 to present for Reynolds dealership customers, and from January 1, 2015 through September 2017 for CDK dealership customers. Reynolds compiled its Mailing List using invoice data and internal accounting data; CDK's Dealership List was compiled using invoice data. Mail Notice contains information on the Settlement, who is included in the Settlement, class members' rights and options, and how to locate further information on the Settlement website, through the toll-free number, and/or though Dealership Class Counsel. The proposed Mail Notice is attached as Exhibit 1 to the proposed Preliminary Approval Order. The proposed Preliminary Approval Order is attached as Exhibit A to the Settlement Agreement (Wedgworth Decl., Exhibit 1).

Use of defendants' customer lists for notice purposes is commonplace in antitrust cases. *See, e.g.*, *In re Visa Check/MasterMoney Antitrust Litigation*, No. 96 C 5238, 2002 WL 31528478 at *2-3 (E.D.N.Y. June 21, 2002) ("For purposes of providing notice, the best way to identify individual merchant class members is . . . through merchant contact information . . . ."); *see also In re Packaged Ice Antitrust Litig.*, 2011 WL 717519, at *5 (approving notice program where defendants provided a "complete list of customers to whom they had sold packaged ice during the proposed class period," and plaintiffs provided direct notice to those customers, along with publishing a summary notice in the *Wall Street Journal* and posting the long form notice, settlement agreement, and class action complaint on a website).

Prior to mailing, all potential class members' mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the U.S. Postal Service ("USPS"). The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms, and lists submitted to it are automatically updated with any reported move based on a

comparison with the person's name and known address. Any address returned by the NCOA database as invalid will be updated by the Settlement Administrator through Lexis/Nexis. Once all duplicates have been removed from the list and the addresses have been verified and updated, the Settlement Administrator will send Mail Notice by first-class U.S. mail, postage prepaid, to all Dealership List recipients.

Notices that are returned as undeliverable will be re-mailed to any address indicated by the USPS in case of an unexpired automatic forwarding order. For those notices that are returned as non-deliverable, but for which a new address is not indicated by the USPS, the Settlement Administrator will conduct additional public record research, using Lexis/Nexis, to identify potential updated mailing addresses. If any address is found, Mail Notice will be re-mailed.

In addition to Mail Notice, the Notice Plan will include publication notice ("Publication Notice"), consisting of advertisements in *Automotive News* and *WardsAuto: Dealer Edition Newsletter*, premier resources for the auto industry, targeted to dealerships and others in the trade. *Automotive News* is a national, weekly publication with a circulation of over 56,000, and the notice will be in a quarter-page ad. The printed version of the publication will also be available online as a digital copy to subscribers. *WardsAuto: Dealer Edition Newsletter* is a national, weekly eNewsletter focused on news, analysis and commentary on matters that impact the auto industry. *WardsAuto*: *Dealer Edition Newsletter* is read by an audience of nearly 30,000 auto industry professionals. The eNewsletter ad size is 580 pixels by 80 pixels and is located at the Top Position of the eNewsletter. The proposed Publication Notice is attached as Exhibit 3 to the proposed Preliminary Approval Order (*see* Wedgworth Decl.). Publication Notice will highlight the toll-free number and Settlement website address where class members can obtain additional information relating to the Settlement, including requesting a copy of the long-form

notice ("Long-Form Posted Notice").

The Settlement Administrator will also develop and maintain a Settlement website to further advise class members about the litigation and Settlement. The Settlement website will allow potential class members to access the Long-Form Posted Notice (attached as Exhibit 2 to the proposed Preliminary Approval Order (*see* Wedgworth Decl.)), relevant court documents, including the Settlement Agreement, review "Frequently Asked Questions," and find any updates concerning the Settlement. Class members will be able to register on the website to receive notification of when the claims process will begin. The Settlement website and the toll-free number (discussed below) will be listed in the Mail Notice, Publication Notice, and the Long-Form Posted Notice.

A toll-free number will be established, allowing class members to call and request that notice materials be mailed to them. The toll-free number will provide 24-hour automated access to recorded information that will include answers to Frequently Asked Questions and direct class members to the Settlement website. There will also be live operators available to answer class member questions. A post office box will also be established in order to allow class members to contact the Settlement Administrator via mail with any questions or requests.

This Notice Plan is the "best notice that is practicable under the circumstances" and is similar to notice programs approved in other cases. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 109–10 (D.N.J. 2012) (notice program which consisted of direct mail notice, detailed notice posted on a website, and publication notice published in newspapers and magazines -- all of which were "written simply and plainly" -- complied with Rule 23(c)(2)(B)); *Citric Acid Antitrust Litig*., No. 1092, C-95-2963, 1997 WL 446239, at *1 (N.D.Cal. July 24, 1997) (direct mail notice to customers identified in customer lists submitted by defendants,

publication in *The Wall Street Journal*, and supplemental notices constitute "the best notice practicable as required by Rule 23(c)(2) of the Federal Rules of Civil Procedure"); *In re Potash Antitrust Litig.*, 161 F.R.D. 411, 413 (D. Minn. 1995) ("[W]e are satisfied that the general practice of including a generalized publication of a Notice to class members serves the worthy purpose of supplementing direct mailings in the event that an absent class member's address is misidentified, is changed, or is otherwise unavailable").

## VII.    THE COURT SHOULD ADOPT THE DEADLINES SET FORTH IN THE PRELIMINARY APPROVAL ORDER

The settling parties propose that the Court adopt the following deadlines governing this Settlement, as set forth in the Preliminary Approval Order:

| Event | Proposed Deadline |
|---|---|
| Mailing of Notice (Order, ¶ 11(b)) | on or before fourteen (14) days after the entry of the Preliminary Approval Order ("Notice Date") |
| Dissemination of Publication Notice (Order, ¶ 11(d)) | no later than seven (7) days after the Notice Date |
| File motion and supporting papers in support of final approval of the Settlement, including an application for reimbursement of costs and expenses and to set aside funds out of the Settlement Fund for future litigation costs and expenses (Order, ¶ 23) | no later than twenty-eight (28) days after the Notice Date |
| Submit Requests for Exclusion (Order, ¶ 13) | no later than forty-two (42) days after the Notice Date |
| File Objections (Order, ¶ 24) | no later than forty-two (42) days after the Notice Date |
| File all briefs, memoranda and papers in response to any objections (Order, ¶ 30) | no later than seven (7) days before the Settlement Hearing |
| Settlement Hearing (Order, ¶ 20) | at the Court's convenience, on or before January 22, 2019 |

## VIII.  CONCLUSION

For these reasons, Dealership Plaintiffs respectfully request that the Court preliminarily approve the Settlement and preliminarily certify the Settlement Class.


DATED: October 23, 2018

<div style="margin-left:40%">

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth (pro hac vice)
Elizabeth McKenna (pro hac vice)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Counsel for the Dealership Class*

Leonard A. Bellavia (pro hac vice)
Steven Blatt
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

</div>

Daniel C. Hedlund (pro hac vice)
Michelle J. Looby (pro hac vice)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mlooby@gustafsongluek.com
dnordin@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (pro hac vice)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

*MDL Liaison Counsel*