IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This filing relates to:* <br><br> ALL ACTIONS | Hon. Robert M. Dow, Jr. <br><br> Magistrate Judge Jeffrey T. Gilbert |

### DECLARATION OF HOWARD GARDNER

I, Howard Gardner, declare as follows:

1. I am currently the Vice President, Data Services for CDK Global, LLC ("CDK"). I have held that position since October 2014. Previously, I was Vice President, Data Strategy for Automated Data Processing ("ADP"), which spun off from CDK in 2014. I held that role at ADP since I joined the company in 2008.

2. As Vice President, Data Services at CDK, I have overall general management responsibility for CDK's Data Services business, which includes CDK's Global Partner Program (f/k/a the Third Party Access "3PA" program[1]) and Managed Data Services offered through CDK's former subsidiaries Digital Motorworks ("DMI") and IntegraLink. I am involved in establishing CDK's business strategies related to its Data Services business and the commercial relationships that CDK enters into in connection with its Data Services business. I am also generally familiar with CDK's overall strategies for its various business lines.

### The February 2015 Agreements

3. In February 2015, CDK and certain affiliates entered into three written

---

[1] For convenience, in this declaration I will refer to the Global Partner program as the "3PA program" since many of the documents referenced below also refer to the program by its former name.

agreements (the "February 2015 Agreements") with The Reynolds and Reynolds Company ("Reynolds") that, broadly speaking: (1) provided for an orderly wind-down of access to Reynolds's DMS by DMI and IntegraLink; (2) provided for CDK's admission into the Reynolds Certified Interface ("RCI") program with respect to certain CDK applications; and (3) provided for Reynolds's admission into the 3PA program with respect to certain Reynolds applications.

4. The terms of the February 2015 Agreements are confidential. Under Section 7.3 of the Data Exchange Agreement, which is one of the three February 2015 Agreements, both CDK and Reynolds are prohibited from disclosing "to any third party the specific terms of such agreements, or the existence or general nature of such agreements." ▇▇▇▇▇▇▇▇



The initial terms of the 3PA Agreement and the RCI Agreement expire in February 2020; therefore, the terms of these agreements—including pricing terms—remain in place today.

5. I understand that certain portions of the February 2015 Agreements have been made public in connection with this litigation. Those portions do not include the ▇▇▇▇▇ ▇▇▇▇▇ provisions of the 3PA and RCI Agreements described above.

6. Cox Automotive and AutoLoop are among the hundreds of vendors who currently participate in CDK's 3PA program. If their business executives gained access to the confidential terms the Reynolds 3PA Agreement, they would gain an unfair advantage in future negotiations with CDK. They would also gain an unfair advantage over other 3PA program participants. Both of these outcomes would cause CDK to suffer competitive harm.

7. In addition to the final terms of the February 2015 Agreements, CDK and Reynolds also maintain the negotiation of those Agreements as confidential and subject to the same non-disclosure requirements. ▮

8. I have reviewed the documents subject to Plaintiffs' "Motion to Compel Defendant CDK Global, LLC to Re-Designate Documents from 'Highly Confidential' to 'Confidential'" (the "Designation Motion") that relate to the negotiation, execution, and implementation of the February 2015 Agreements.[2] These documents reflect the confidential information described above. For example, ▮

### 3PA and DMS Agreements

9. As with the February 2015 Agreements, the specific terms and conditions of CDK's agreements with other 3PA program participants, managed data services customers, and DMS customers are maintained as confidential as and between the parties to each agreement, ▮ If other 3PA program participants (including Cox and AutoLoop) and DMS customers (including several of the Dealership Class Plaintiffs) had access to this information, they would gain an unfair advantage in future negotiations with CDK. They

---
[2] These include Exhibits 1-10, 14-16, 18-20, 22-25, and 29-36.

-3-

would also gain an unfair advantage over other 3PA program participants and DMS customers. Both of these outcomes would cause CDK to suffer competitive harm.

### 3PA "Refresh" and SecurityFirst

10. In 2015, the 3PA program began a strategy "refresh" that included, among other things, updated pricing policies and an approach to security called "SecurityFirst." Exhibits to the Designation Motion related to the 3PA "refresh" and SecurityFirst reflect CDK's internal strategies surrounding these initiatives.[3] ▌

11. Other exhibits to the Designation Motion relate to CDK's implementation of SecurityFirst, including the disruption of unauthorized access to CDK's DMS. ▌

12. ▌

---

[3] These include Exhibits 11-13, 17, 26-28, 38-39, 41, 43, 44-45, 47, 49, 51-52, 57, 60-63, and 66.

## Competitive Assessments

13. Certain exhibits to the Designation Motion reflect assessments of perceived threats from other competitors or third-party "integrators." ███████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

## Potential Acquisitions

14. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████

## Open Dealer Exchange

15. CDK is a participant in a joint venture called the Open Dealer Exchange ("ODE"). ████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on October 30, 2018 in Hoffman Estates, Illinois.

Howard Gardner