PUBLIC VERSION

# EXHIBIT 1

| | |
|---|---|
| **From:** | Nemelka, Michael N. <mnemelka@kellogghansen.com> |
| **Sent:** | Tuesday, January 09, 2018 5:23 PM |
| **To:** | Miller, Britt M. |
| **Cc:** | Ryan, Mark; Provance, Matthew D.; Brian Ross; Aundrea K. Gulley; Michael Cohen; Hafenbrack, Joshua; 'Gregor, Jennifer' |
| **Subject:** | RE: CDK confidentiality designations |
| **Attachments:** | CDK Production - Ayotte.csv; CDK Production - Noser.csv; CDK Production - Distelhorst.csv; CDK Production - Frey.csv; CDK Production - Conver.csv; CDK Production - Anenen.csv |

Dear Britt,

Your production of documents in this case must comply with the obligations of the protective order, and designating every single document as "Highly Confidential" does not comply with those obligations. We only agreed to your producing the first production as Highly Confidential – on a *provisional* basis – because CDK had not produced a single document and it was (and is) necessary to move the production of documents along. It has now been nearly a month since we made that provisional agreement, and per my email below, we again ask CDK to apply the proper designations to those documents.

To help you prioritize, please apply the proper designations to the documents relating to the following upcoming deponents. Specific Bates-numbered documents for each deponent are in the attached spreadsheets. Unless we hear from you otherwise seven days before the depositions of the below witnesses, we will consider the documents in the attached to be "Confidential."

1. Ayotte - 3,030 records
2. Noser - 7,671 records
3. Distelhorst – 7,183 records
4. Frey – 1,689 records
5. Conver – 21,957 records
6. Anenen – 1,389 records

As for future productions, we appreciate your efforts to get those to us as quickly as possible, and we recognize those efforts. But we think it would be more efficient to apply the proper designations in the first instance. Applying the proper designations should not be a reason that document productions are delayed, however.

Finally, we agree that with the amount of work the parties are doing that some over-designation may unfortunately occur. We would just note that in Authenticom's production, the descriptions your provided apply only to a handful of documents and are the extreme outliers.

Thanks and, again, we appreciate your efforts.

Mike

**From:** Miller, Britt M. [mailto:BMiller@mayerbrown.com]
**Sent:** Thursday, January 04, 2018 10:23 PM
**To:** Nemelka, Michael N.
**Cc:** Ryan, Mark; Provance, Matthew D.; Brian Ross; Aundrea K. Gulley; Michael Cohen; Hafenbrack, Joshua; 'Gregor, Jennifer'
**Subject:** RE: CDK confidentiality designations

Mike –

The production that we made on December 15, 2017, you will recall, was the first installment of CDK's FTC production in response to the CID.  As I explained in my December 8, 2017 letter (at p. 2) in response to your complaint that we had not yet produced any "factual" FTC documents as of that date, CDK had just begun producing custodial documents to the FTC and in order to comply with the Protective Order in this case, we would have to review those 86,569 documents and assign them appropriate confidentiality designations prior to production—an effort that would take some time.  In an attempt to get Authenticom documents sooner rather than later, however, we then offered that if Authenticom was willing to treat the documents as "HIGHLY CONFIDENTIAL" under the Protective Order (and we would label them as such), we would have a copy of the production delivered within 3 business days.  During our meet-and-confer on December 12, 2017, you accepted that offer and we made the production within the 3 promised days.  So the designation of the entire collection as "HIGHLY CONFIDENTIAL" was done with Authenticom's knowledge and consent.  Moreover, we also made clear during that meet-and-confer—in response to your specific question about this very subject—that we did not intend to go back and re-review those documents for confidentiality purposes but that we would be reasonable in entertaining any request by Authenticom that we downgrade the confidentiality of specific documents/targeted document ranges in that collection.  We stand by that offer.  And although it is no doubt true that all of the documents in that collection do not warrant "HIGHLY CONFIDENTIAL" status, we're sure that there are many that do.  Thus, your request that we "*en masse*" designate them as "CONFIDENTIAL" is not a reasonable request.  If you have specific documents/document ranges you would like us to consider downgrading, we are happy to do so and will do so promptly.  If you are asking us to undertake a re-review of the entire collection for confidentiality purposes, we can do so, but that will take some time as we are working diligently to get documents out for the upcoming depositions (as I described during our call earlier today).

On this same point, however, we had understood that Authenticom was willing to handle CDK's future FTC productions in the same manner as our December 15 production and thus had been preparing to make another substantial production early next week.  But, I gather from your email that Authenticom is not willing to treat such collections as "HIGHLY CONFIDENTIAL" in their entirety (subject to appropriate downgrades upon reasonable request) and thus, we will not make that production in the short term.  Instead we will focus on producing those documents in the collection that belong to the upcoming deponents and assigning appropriate confidentiality designations to those documents so as to avoid this issue going forward.  If that is not Authenticom's position, please let us know promptly.

Finally, it is worth noting that in a case of this magnitude and with the speed with which all of the parties are working to try to get documents produced, some over-designation is bound to happen.  Indeed, a quick review of Authenticom's production to date shows that approximately 90% has been designated as "HIGHLY CONFIDENTIAL", including a number of organizational charts and other routine business documents that likely don't warrant the designation.  Consistent with the Protective Order, however, Defendants will reach out to Authenticom about downgrading the confidentiality of various documents when necessary/appropriate.

Regards – Britt

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

---

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Thursday, January 04, 2018 5:09 PM

**To:** Miller, Britt M.
**Cc:** Ryan, Mark; Provance, Matthew D.; Brian Ross; Aundrea K. Gulley; Michael Cohen; Hafenbrack, Joshua; 'Gregor, Jennifer'
**Subject:** CDK confidentiality designations

Dear Britt,

CDK has made one production to date – on December 15, 2017 – totaling 86,569 records. CDK designated every document Highly Confidential, even though these documents do not merit that designation. We hereby request that CDK de-designate these documents, and apply the "CONFIDENTIAL" designation to them. It is improper for CDK to maintain the highest confidentiality designation for its entire document production, meaning we cannot show any of the documents to our client or use them at depositions without undertaking arduous procedures. Treating the entire document production as Highly Confidential is inconsistent with the Protective Order. If CDK wishes to maintain any of them as Highly Confidential, then it should have identified those documents by now. But it is inappropriate for CDK to maintain the highest level of confidentiality *en masse*. Can we please confer about this matter tomorrow? We are generally available, and will work around your schedule.

Thanks,
Mike


Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distrbution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

_____


This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

PUBLIC VERSION

# Exhibit 2

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

January 19, 2018

*Via Electronic Mail*

Brian Ross, Esq.  
Gibbs & Bruns LLP  
1100 Louisiana  
Suite 5300  
Houston, TX 77002

Britt M. Miller, Esq.  
Mayer Brown  
71 South Wacker Drive  
Chicago, IL 60606

Re: *Authenticom, Inc. v. CDK Global, LLC* ("CDK") *and The Reynolds and Reynolds Company* ("Reynolds"), Case No. 17-cv-318 (W.D. Wis.)

Dear Britt and Brian:

I write regarding several discovery issues, including in response to certain correspondence from the both of you.

We thank you for all the progress the parties have made on discovery issues, and the agreements and compromises we have reached as reflected in our prior correspondence. There are a few outstanding issues, however, and although the Court has entered a partial stay of discovery related to depositions and the production of custodial ESI, the parties can still use the time to make progress in resolving the issues outlined below. *See infra* Part III.

And with respect to the documents that are *not* subject to the stay of discovery – i.e., non-custodial documents – we write to inquire about the status of those document productions, particularly in light of Defendants' slow pace of producing documents to date. *See infra* Parts I and II.

We request a meet and confer this coming Monday anytime after 2:00 p.m. ET to discuss the issues described in this letter.

### I.  Documents Not Subject to the Stay of Discovery

As Defendants' wrote in their moving papers for the stay of discovery, "[t]o be clear, Defendants do not seek a total stay of discovery. They will continue to gather and produce non-custodial documents pursuant to the parties' ongoing discovery discussions and expect that Plaintiff intends to do the same." We therefore write to inquire about the status of the production of non-custodial documents.

As I pointed out in my letter from December 7, 2017, "there are two sets of documents" – which are non-custodial – "that Defendants could have – and should have – produced weeks ago:

(1) the 'factual' documents Defendants have already produced to the FTC or any other government agency that Defendants have agreed to produce here; and (2) DMS and RCI[/3PA] pricing and financial [expenses, costs, profits, projections, etc.] information." *See* Letter from M. Nemelka to B. Miller and B. Ross (Dec. 7, 2017). That is of course even more true now more than a month later, and those documents should be produced promptly. With respect to the DMS and 3PA pricing information, Britt wrote on December 8, 2017 that CDK "will promptly work to collect and produce this information." We appreciate that statement, but it was made over five weeks ago and CDK has yet to produce the documents (all of which are non-custodial). We accordingly expect those documents to be produced as soon as possible, along with the other DMS and data integration financial information. In addition to those categories of documents (which our experts need), the following non-custodial categories of documents should also be produced as soon as possible: (1) centrally maintained documents related to the February 2015 agreements, including drafts of the agreements, documents implementing the agreements, and so forth; (2) the dealer, vendor, and other contracts Defendants have agreed to produce; and (3) documents on Defendants' whitelisting usernames and passwords for data integrators (including each other). These are just examples of the non-custodial documents that Defendants should be producing now. Our experts need these and the other agreed-to documents.

It is imperative that Defendants produce such documents promptly in light of their inadequate productions to date. Before the stay of discovery, Reynolds had only made one document production of 1,561 documents (of largely duplicative documents from the preliminary injunction hearing). CDK had made only two productions (though of substantially more documents than Reynolds). Even so, the pace of productions was a problem we have had to point out repeatedly. For example, Reynolds has not produced a single document since *November 16, 2017*, over two months ago. That is unacceptable, as we have pointed out many times. With the stay of discovery, Defendants should not have any excuses to make sure the non-custodial documents they have already agreed to produce are in fact produced promptly.

Finally, during the stay, Authenticom is continuing to work diligently to identify and prepare custodial documents responsive to Defendants' discovery requests so that we can make a very substantial custodian-based production promptly after the stay is lifted. We hope and expect Defendants to do the same.

**II.     CDK's Improper Confidentiality Designations**

As noted in my prior correspondence (my emails from January 4th; January 9th; and January 10th), we challenge CDK's designation of its entire re-produced FTC document production as "Highly Confidential." On January 9th, I identified specific documents by Bates number that require re-designation from Highly Confidential to a lower confidentiality designation – whether Confidential or none at all.

Now, after further review of CDK's production, we have identified additional documents that we believe need to be re-designated. Please find those – identified by Bates number – in the attached spreadsheet. Your previous explanation as to why you could not properly apply confidentiality designations, before producing documents, related to timing. Now that discovery has been stayed, however, you have ample time to apply the proper confidentiality designations and to produce properly stamped replacement copies.

And as for upcoming productions of documents previously produced to the FTC, applying the proper confidentiality designations to those documents should no longer result in any delay in their production. On January 10, 2018 – over a week ago – CDK indicated that applying the proper confidentiality designations would result in only a "modest delay" in their production. *See* Email from B. Miller to M. Nemelka (Jan. 10, 2018). As noted above, we again request that those documents be produced as soon as possible.

## III. Other Discovery Issues

**Materials Produced Pursuant to Government Investigations.** To bring this issue to a close: Britt, in your December 15, 2017, letter, you stated that CDK is not withholding any "advocacy pieces, white papers, or other materials provided to the FTC that are not purely factual in nature." Letter from B. Miller to M. Nemelka (Dec. 15, 2017). If CDK does withhold any documents, then you agreed to "promptly notifyAuthenticom so that the parties can quickly meet-and-confer." *Id.* Thank you for that clarification of CDK's position. With that agreement, is it correct that CDK is not withholding any documents – whether factual or non-factual – that it has provided to the FTC or other government agency, as requested by RFP No. 1?

As for Reynolds: Brian, you wrote in your December 15, 2017, letter that "Reynolds agrees to withdraw its objections to producing relevant advocacy pieces and white papers" for the relevant period. Thank you. However, you state that Reynolds is still withholding factual documents produced to the FTC "that are not relevant." Our position remains that any factual material produced to the FTC is relevant: the FTC's investigation overlaps with the issues in this case. You also agreed on a meet and confer to describe the factual documents Reynolds is withholding so that we can test your "not relevant" statement, but you have not done so. I believe we are at an impasse on this issue, but please let me know if that is incorrect.

**CDK Request No. 73 and Reynolds Request No. 63 (OEM Pricing).** Based on the parties' initial productions to date, it is even more clear that information relating to data integration for OEMs is relevant to a host of issues in this case. [REDACTED] In short, OEMs are a direct purchaser and consumer of data integration and relevant to many issues in this case, including *inter alia* the relevant product market, Defendants' supra-competitive pricing and exclusionary conduct, harm to competition, antitrust injury, and Authenticom's damages.

As both Defendants have confirmed, we are at an impasse on this issue. *See* Letter from B. Miller to M. Nemelka (Dec. 8, 2017); Letter from B. Ross to M. Nemelka (Dec. 1, 2017).

- 3 -

Please let us know if the documents and further explanation provided above result in a change in Defendants' positions.

**CDK Request No. 74 and Reynolds Request No. 78.** On security-related documents, we agreed to discuss those on a meet-and-confer, which we request to do. At a minimum, for CDK, Authenticom's security-related requests cover documents related to CDK's Security Advisory Council. Please confirm that CDK is producing such documents.

### Reynolds Specific Issue

**Reynolds Request Nos. 47, 49, 50, 52, & 53 (RCI and DMS Financial Information).** Reynolds has no basis to withhold documents relating to DMS and RCI profit, projections (revenue and profit), margin, and costs, no matter how such information may be tracked or included within various segments. We have explained numerous times the relevance of such information, and CDK has agreed to produce it. Reynolds has no basis to take a different position – the fact that Reynolds is private makes no difference to the relevance of the financial information, *see* Letter from B. Ross to M. Nemelka (Dec. 8, 2017) (refusing to produce such information because CDK is a public company and "Reynolds is not"). The parties are at an impasse.

### CDK Specific Issues

**CDK Request Nos. 62 and 63.** Thank you for your agreement to produce documents sufficient to show DMI and IntegraLink integration pricing for non-CDK DMSs beginning as of January 1, 2011.

**CDK Requests Nos. 51, 52, 53, 54 & 55 (DMS Financials).** Please confirm that CDK is producing both "basic" and "bundled" DMS pricing information, as discussed in my December 8 correspondence. We believe that is the case given Britt's note in her December 8 letter – "Nowhere in my December 1 Letter is a refusal to produce CDK's 'bundled' pricing. To the contrary . . .," – but please confirm if that is not the case. Letter from B. Miller to M. Nemelka (Dec. 8, 2017).

As to DMS profit, projections (revenue and profit), margin, and costs, thank you for your agreement to produce the requested information at the product line, divisional, and management level. *See* Letter from B. Miller to M. Nemelka (Dec. 15, 2017). As noted above, we again request that this information be produced promptly – our experts need it for their analysis.

**CDK Requests Nos. 57, 58, 59, 60, 61, 65, 66, 67, 69 & 70 (3PA Financials).** As to 3PA profit, projections (revenue and profit), margin, and costs, thank you for your agreement to produce the requested information at the product line, divisional, and management level. *See* Dec. 15, 2017 Letter from B. Miller to M. Nemelka. As noted above, we again request that this information be produced promptly – our experts need it for their analysis.

**CRM Software.** Britt, in your Dec. 8, 2017 letter, you wrote that "we hope to have resolution on this issue by early next week." Sorry if we have missed correspondence on this issue, but we appear not to have received any information on this. We look forward to your response.

**Request No. 17 ("SMART-R").** We are agreeable to the compromise outlined in your December 8, 2017, letter. Thank you.

**Request No. 25 (Agreements with Other Providers of Data Integration).** As I noted in a prior letter, our dispute on CDK's refusal to produce agreements with data integration providers for access to open systems, not just closed. You offered to meet and confer again on this issue, which we agree to do.

**Request No. 28.** As noted in my prior correspondence, CDK represented to the court that CDK's dealers have the ability to extract data, implying they have a program akin to Reynolds' Dynamic Reporting. It is unclear from your December 8, 2017, letter what CDK is willing to produce on this topic. Let's discuss on our next meet and confer.

**Request Nos. 86 & 87 (Elliott Management).** In addition to your agreement to produce communications with Elliott Management that relate to increased integration fees, we have become aware of information that further necessitates CDK to produce all of its communications with and documents related to Elliott Management. For example, CDK CFO Al Nietzel engaged in a yearlong "ongoing private dialogue" with Elliott Management from Spring 2015 (if not earlier) to Spring 2016. *See* https://www.businesswire.com/news/home/20160504005997/en/Elliott-Management-Sends-Letter-Board-Management-CDK. During this "private dialogue," Elliott Management learned that CDK was well-positioned to increase profits in light of, among other things, its "sticky auto dealership customers with long-term contracts." There is no plausible basis to withhold any of CDK's communications with Elliott Management.

**Request No. 91 ("Tilt the Table").** Based on prior correspondence, it appears that CDK is producing the majority of documents requested by Authenticom on this topic. *See* Dec. 1, 2017 Letter from B. Miller to M. Nemelka. But as we have discussed, a further meet and confer on this topic appears necessary to understand where there may still be disagreement between the parties.

\* \* \* \* \*

As noted above, we request a meet and confer this coming Monday anytime after 2:00 p.m. ET to discuss the issues described in this letter. Please let us know a time that works best for you.

        Very truly yours,

        *s/ Michael N. Nemelka*

        Michael N. Nemelka

# EXHIBIT 3

| | |
|---|---|
| **From:** | Miller, Britt M. |
| **Sent:** | Friday, February 16, 2018 6:05 PM |
| **To:** | Nemelka, Michael N.; Ryan, Mark |
| **Cc:** | Aundrea Gulley; Michael P. A. Cohen; Umberger, Michelle M. (Perkins Coie); Provance, Matthew D.; Patrick, Kathy (EXTERNAL CONTACT); Brian Ross; Gregor, Jennifer; Hafenbrack, Joshua |
| **Subject:** | RE: Authenticom v. CDK/Rey |

Mike –

We've now had a chance to review and analyze your February 7 spreadsheet. Having done so, it is unclear to us why you continue to make the same unreasonable demands.

- First you demanded, that we re-designate every document in our document collection marked "Highly Confidential" to "Confidential". 1/4/18 Email from M. Nemelka. That request was rejected, although we invited you to identify a reasonable sub-set of documents you would like us to consider downgrading and we would consider it. 1/4/18 Email from B. Miller.

- You then demanded that we review and re-designate 42,919 documents that you had identified as "relating to" the then-imminent 6 CDK depositions. 1/9/18 Email from M. Nemelka. We ultimately rejected that proposal and later determined that your spreadsheets were little more than database reports identifying every single document in CDK's production that belonged to or mentioned the 6 deponents.

- Ten days later, you sent a letter stating that "after further review of CDK's production, we have identified additional documents that we believe need to be re-designated." 1/19/18 Letter from M. Nemelka. We ultimately determined that the 79,686 documents identified in the spreadsheet referenced in that letter literally was a list of every single email and attachment in CDK's document production to date (41,827 of which were duplicates of the ones identified in your January 9 spreadsheets).

In your latest missive, you attach yet another spreadsheet, this time purporting to be a list of "communications between CDK and Reynolds" that, you contend, "do not merit any confidentiality protection." In support of your claim, you state that the 1225 documents in the spreadsheet fall into 1 of 4 categories—namely, they are correspondence "regarding (1) the 2015 agreements, which have already been produced by Defendants to the public without any confidentiality designations; (2) other illegal coordination; (3) competition (and the suppression of such) in the DMS and Data Integration Markets; and (4) other topics relating to the claims in this case." But once again, it appears that all you have provided is a database print-out from CDK's current production of every email to/from/cc/bcc a Reynolds email (with families) that bears a confidentiality designation.

In my January 29, 2018 Letter, we made clear that going forward, to the extent Authenticom wished to challenge any more of CDK's confidentiality designations, we expected it to comply with the Protective Order and explain, for each challenged document, the basis for its belief that the confidentiality designation is not proper. Your February 7 email fails to do this in every respect. Moreover, merely because correspondence relates to other documents that do not bear a confidentiality designation, relate to competition in the purported "markets" at issue in the case, or otherwise relate to "topics relating to the claims in this case" does not mean that they do not meet the criteria for designation pursuant to the Protective Order (and your hyperbolic accusations of there being correspondence regarding "other illegal coordination" and "shielding illegal conduct" do not warrant a response).

In any event, as before, the mere identification of huge swaths of documents in CDK's production—here every email to/from/cc/bcc a Reynolds email that bears a confidentiality designation—accompanied by an unsubstantiated claim that they do not warrant any confidentiality protection does not, in our view, meet the "good faith" requirement of

paragraph 9(a) of the Protective Order. CDK has undertaken a good faith review of all of the documents in its production to date and assigned the confidentiality designation it believes reasonably appropriate under the circumstances. Given the size of the production—almost 1 million pages—and the rapidity with which it was produced—approximately a month and a half—we will concede that there may have been some errors. Thus, as before, if Authenticom would like to articulate why, in its opinion, each of the 1225 documents it has identified (or some reasonable sub-set thereof) does not warrant confidentiality protection, we are happy to further discuss the issue. If it is unwilling to make that specified showing, then we stand by our response and Authenticom will need to seek relief from the Court if it would like to pursue this matter further.

Regards – Britt

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Wednesday, February 07, 2018 7:44 PM
**To:** Miller, Britt M.; Ryan, Mark
**Cc:** Aundrea Gulley; Michael P. A. Cohen; Umberger, Michelle M. (Perkins Coie); Provance, Matthew D.; Patrick, Kathy (EXTERNAL CONTACT); Brian Ross; Gregor, Jennifer; Hafenbrack, Joshua
**Subject:** Authenticom v. CDK/Rey

Dear Britt,

We have identified the attached communications between CDK and Reynolds that have been designated by CDK as either Confidential or Highly Confidential. These communications do not merit any confidentiality protection, and we accordingly request that the documents be de-designated. We have challenged these designations several times before over the past month, but CDK either did not change the designation or just changed the designation from Highly Confidential to Confidential. These documents do not merit any confidentiality protection, and should be de-designated accordingly.

These are communications between CDK and Reynolds – many between senior executives at both companies – regarding (1) the 2015 agreements, which have already been produced by Defendants to the public without any confidentiality designations; (2) other illegal coordination; (3) competition (and the suppression of such) in the DMS and Data Integration Markets; and (4) other topics relating to the claims in this case. There is no plausible argument that such communications between two erstwhile competitors are confidential. And CDK and Reynolds certainly have no recognizable interest in shielding their illegal conduct from public view.

Authenticom accordingly requests that CDK remove the confidentiality designations from the documents identified in the attached, consistent with the governing protective order.

Thank you,
Mike


Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400

2

Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

# EXHIBIT 4
# FILED UNDER SEAL

# EXHIBIT 5
# FILED UNDER SEAL

# EXHIBIT 6
# FILED UNDER SEAL

PUBLIC VERSION

# EXHIBIT 9

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**ORDER**

September 15, 2017

*By the Court:*

| | |
|---|---|
| No. 17-2540 & 17-2541 | AUTHENTICOM, INCORPORATED, Plaintiff - Appellee<br><br>v.<br><br>CDK GLOBAL, LLC, and REYNOLDS AND REYNOLDS COMPANY Defendants - Appellants |
| **Originating Case Information:** | |
| District Court No: 3:17-cv-00318-jdp<br>Western District of Wisconsin<br>District Judge James D. Peterson | |

The following is before the court:

1.  **PLAINTIFF-APPELLEE AUTHENTICOM, INC.'S OPPOSITION TO DE-DESIGNATION AND SEALING OF PORTIONS OF THE APPELLATE RECORD**, filed on September 8, 2017, by counsel for the appellee.

2. **APPELLANT CDK GLOBAL, LLC'S RESPONSE TO APPELLEE AUTHENTICOM, INC.'S OPPOSITION TO SEALING OF PORTIONS OF THE APPELLATE RECORD**, filed on September 13, 2017, by counsel for the appellant.

**IT IS ORDERED** that DEF 24 and 31 will remain sealed in this court and CDK Global does not need to submit redacted versions of the exhibits.

form name: **c7_Order_BTC**(form ID: **178**)