# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to All Cases | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

## MDL PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT CDK GLOBAL, LLC TO RE-DESIGNATE DOCUMENTS FROM "HIGHLY CONFIDENTIAL" TO "CONFIDENTIAL"

As MDL Plaintiffs' opening memorandum explained (Dkt. 418, "Motion" or "Mot."), CDK Global, LLC's ("CDK") designation of the 66 documents at issue ("Subject Documents") as "Highly Confidential" was improper because the documents do not contain material that meets the standard for Highly Confidential information under the Agreed Confidentiality Order, Dkt. 104 ("Confidentiality Order") or under any other legal authority. The Subject Documents contain collusive communications between CDK and its *principal competitor*, Defendant The Reynolds and Reynolds Company ("Reynolds"); internal emails about those collusive communications; emails and analysis regarding CDK's anticompetitive agreements with Reynolds; CDK's changing data access policies; and CDK's general comments about competition in the industry.

CDK's characterizations of the Subject Documents in their opposition (Dkt. 429, "Opp."), now supplemented with a self-serving declaration from CDK executive Howard Gardner ("Gardner Decl."), Dkt. 429-1, do nothing to advance its cause. The documents speak for themselves and show that CDK's characterizations are inaccurate. Moreover, CDK's focus

on irrelevant topics (such as pre-MDL de-designation requests) and finger-pointing at MDL Plaintiffs' productions are merely attempts to distract from CDK's inability to satisfy its burden to justify the Highly Confidential treatment for the Subject Documents.

**I.  CDK Has Not Met Its Burden for Treating the Subject Documents as Highly Confidential**

As MDL Plaintiffs demonstrated in their Motion, CDK cannot satisfy its burden to justify "Highly Confidential" treatment for the Subject Documents. "The designating party must do more than show that it is a competitor of the receiving party or that the documents in question disclose information about the designating party's relationships with other competitors." *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. Sept. 23, 2015) ("If there is any doubt as to whether the material should be sealed, it is resolved in favor of disclosure").[1] Rather, CDK must demonstrate that a re-designation from "Highly Confidential" to "Confidential" "will work a clearly defined and serious injury." *Motorola, Inc. v. Lemko Corp.*, 2010 WL 2179170, at *5 (N.D. Ill. June 1, 2010). CDK cannot make that showing.

MDL Plaintiffs divided the Subject Documents into six categories and described why the specific documents within each category do not merit "Highly Confidential" treatment. Mot. at 5-8. As explained below, CDK's arguments to the contrary are unavailing.

---

[1] CDK's analysis (Opp. at 8) of *Global Material* is inapt. CDK argues (*id.* at 9 n.11) that "[t]he *Global Material* court's denial of AEO [Attorneys' Eyes Only] status for some documents was largely influenced by the fact that there remained a 'disturbingly murky question' regarding whether two of the parties were 'still functioning companies' that could even be considered competitors of plaintiff," but that is not an accurate description of the Court's analysis. Instead, the Court relied on the fact – also applicable here – that the designating party (1) failed to elaborate actual competitive harm that would result from removing the AEO designations; (2) failed to explain how the alleged "generalized harms" would result from allowing a limited number of party employees to review the documents; and (3) failed, "in particular," to address that the information was "stale." *Global Material*, 133 F. Supp. 3d at 1084-86.

1. **CDK-Reynolds Communications.** The first category of Subject Documents comprises communications between CDK and Reynolds. *See* Dkt. 418-2, Exs. 1-10. As MDL Plaintiffs explained (Mot. at 10-11), those documents cannot constitute information of a "highly sensitive nature" because those documents contain information that CDK *already shared with its supposed principal competitor*. CDK makes no attempt to make a particularized showing that its own collusive conversations with Reynolds, as reflected in Exhibits 1-10, merit a Highly Confidential designation. *Meharg v. AstraZeneca Pharm. LP*, 2009 WL 2960761, at *3 (S.D. Ind. Sept. 14, 2009) ("Vague and conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make a particularized showing that the information sought is confidential and come forward with specific examples of competitive harm") (quoting *Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 WL 311125, at *8 (W.D. Mich. Feb. 9, 2009)).

Indeed, these documents are direct evidence of the alleged conspiracy between CDK and Reynolds. For example:

- Dkt. 418-2, Ex. 2 – ███████████████

- Dkt. 418-2, Ex. 5 – ███████████████"

- Dkt. 418-2, Ex. 9 – ███████████████

- Dkt. 418-2, Ex. 10 – ███████████████

3

Conspirators cannot shield evidence of their unlawful communications by calling them competitively sensitive. The principle of confidentiality exists to shield *lawful* business discussions from scrutiny by other competitors. *See generally* Mot. at 10-11. As for the documents that relate to the February 2015 written agreements between CDK and Reynolds – agreements that form just one part of the alleged conspiracy in this case – CDK's suggestion that those written agreements are themselves highly sensitive does not withstand scrutiny for a very simple reason: *the agreements have already been made public*. *See* Appellants' Joint Circuit Rule 30(b) Appendix, Nos. 17-2540 & 17-2541 (7th Cir. Aug. 22, 2017), Dkt. 48. Therefore, CDK would suffer no harm by designating as Confidential its communications with Reynolds about their now-public agreements.

**2.  CDK's Internal Communications Concerning the 2015 Agreements.** The second category of Subject Documents concern CDK's internal communications about the February 2015 agreements and Defendants' joint efforts to eliminate independent integrators like Authenticom. Dkt. 418-3, 418-4, and 418-5, Exs. 11-36.

CDK claims (Opp. at 9-10) that the disclosure of Exhibits 5 and 24 – which in part show the 3PA pricing that CDK quoted to Reynolds as part of the 2015 agreements – would give Plaintiffs Cox Automotive and AutoLoop an "unfair advantage in future negotiations." But that is wrong for several reasons. First, CDK gave Reynolds *five free years* of data integration through the 3PA program, and that fact is public. Second, CDK publicly posts its 3PA prices[2] and has long touted standardized vendor pricing as core components of the "SecurityFirst" program. Thus, CDK's own practices belie any suggestion that the prices it offered Reynolds

---

[2]*See* CDK Global Partner Program Pricing Guide, https://www.cdkglobal.com/sites/default/files/PDFfiles/Partner_Program_Price_Guide.pdf (last visited November 9, 2018).

4

(before setting the price at "free") are highly sensitive or a trade secret. Third, pricing that CDK ostensibly offered Reynolds three years ago is now stale and irrelevant to any current negotiations. Finally, Cox Automotive and AutoLoop are bound by this Court's Confidentiality Order, which prohibits them from using Confidential information for any non-litigation purpose. CDK offers no reason to believe MDL Plaintiffs will violate this Court's order in an attempt to somehow exploit three-year-old pricing terms quoted to Reynolds.[3]

CDK argues (Opp. at 11) that Exhibits 11 and 12 are Highly Confidential because they were filed under seal in the Seventh Circuit *Authenticom* appeal proceedings. But an under seal filing does not justify *Highly* Confidential treatment, because Confidential documents are still shielded from public disclosure. Moreover, contrary to CDK's suggestion that Exhibits 11 and 12 would show MDL Plaintiffs how to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

CDK's justification (Opp. at 10) for Exhibit 14 to remain Highly Confidential is that it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ but merely labeling a document confidential does not make it so, let alone establish the showing required for Highly Confidential treatment. Moreover, the document is a presentation that merely describes the terms of the February 2015 agreements between CDK and Reynolds – which, as noted above, are already public. CDK cannot identify any highly sensitive material in that document.

Finally, CDK erroneously claims (Opp. at 12) that Exhibit 21 – a presentation entitled ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ – contains Highly Confidential information.

---

[3] Moreover, CDK's argument makes no sense with respect to Cox Automotive, which has a most favored nation clause in its 3PA contract. *See* Dkt. 126 at 23 (describing MFN clause). Cox Automotive has no reason to misappropriate comparative pricing information gleaned through discovery, because it is already contractually entitled to the lowest price CDK charges to any vendor.

Significantly, however, the attendees to this meeting (as evidenced by the first slide) were "Board Members" consisting of major players from *both* CDK and Reynolds. Moreover, the meeting was to be attended by the very CDK and Reynolds executives who are alleged to have conspired in this case. Regardless of venue, the exchange of information between so-called competitors is probative of the antitrust conspiracy claims asserted here, and as such, CDK should not be permitted to use the Highly Confidential designation as a shield.

**3. CDK's Discussions about Authenticom.** In the third category of Subject Documents, MDL Plaintiffs identified a number of documents regarding CDK's internal discussions about Authenticom and its plan to drive Authenticom and other independent integrators out of the data integration market. Dkt. 418-5 and 418-6, Exs. 36-46. CDK addresses only two of those documents (Exhibits 40 and 42), waiving any argument with respect to the rest. As for Exhibits 40 and 42, CDK claims they should remain Highly Confidential because the documents discuss in general terms the possible acquisition by CDK of Authenticom. But the possibility of an acquisition that never occurred – which instead turned into a collective effort with Reynolds to drive Authenticom from the market – cannot justify a Highly Confidential designation.

CDK originally (and correctly) designated Exhibit 40 as Confidential, only later changing it to Highly Confidential.[4] Furthermore, the document does not provide any detailed analysis about CDK's potential acquisition of Authenticom. Instead, a CDK executive (Ron Workman) generally describes a conversation he had with an investment bank about a potential deal to buy Authenticom. Contrary to CDK's argument, the sparse detail provided in Mr. Workman's correspondence does not reveal any meaningful "insight into CDK's internal evaluation" (Opp.

---

[4] In an October 12, 2018 Letter to MDL Plaintiffs, CDK subsequently designated this document as "Highly Confidential" after being notified that it had been originally labeled only as "Confidential." *See* Dkt. 416, Ex. D.

12) of a potential Authenticom acquisition. Moreover, CDK has not articulated any harm that would transpire if Authenticom's management had access to conversations about a now-abandoned acquisition. There is no suggestion that CDK has any ongoing interest in acquiring Authenticom.

Similarly, Exhibit 42 is an email thread that contains rudimentary comments by CDK executive Howard Gardner, such as: ███████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ These are basic thoughts about a potential acquisition that never occurred – hardly material warranting a Highly Confidential designation.

    **4.** **CDK's Data Access Policies.** The fourth category of documents concerns discussions of CDK's data access policies and terms. Dkt. 418-6 and 418-7, Exs. 47-56.

With respect to these documents, CDK argues that the disclosure of contract terms would give parties an "unfair advantage" in negotiations with CDK, citing to Exhibits 53, 54, and 56. However, none of those documents reveal confidential 3PA terms. Exhibits 53 and 54 refer generally to the price secrecy requirement in CDK's 3PA contract (without specific quotations), but the mere existence of that provision is already publicly known. *In re Dealer Management Systems Antitrust Litigation*, 313 F. Supp. 3d 931, 945 (N.D. Ill. May 14, 2018) ("CDK and Reynolds also both include 'price secrecy' provisions in their vendor contracts."). And Exhibit 56 is an email from a third party describing his conversations with CDK's dealer customers; it cannot possibly merit Highly Confidential treatment.

    **5.** **CDK Documents Undercutting Key Defenses.** The fifth category of documents

are emails containing statements undercutting CDK's key defenses, including its argument that Authenticom was an "unauthorized" user on the CDK system. Dkt. 418-7, Exs. 57-60. CDK makes no attempt to justify the Highly Confidential designations for these three documents.

      **6.** **Documents Pertaining to the MVSC Case.** The sixth and final category of documents are pertinent to the case brought by Motor Vehicle Software Corporation, which has distinct antitrust claims concerning the market for electronic vehicle registration and titling. Dkt. 418-7, Exs. 61-66. Here again, CDK makes no attempt to justify the Highly Confidential designation for the MVSC documents.

## II.    CDK's General Arguments for Highly Confidential Treatment Are Meritless

CDK makes four additional, general arguments in support of its Highly Confidential designations of the Subject Documents. None has merit.

*First*, CDK argues (Opp. at 12-13) that the Subject Documents do not fall under the enumerated categories of "Highly Confidential" in the Confidentiality Order, but instead fall under the catch-all provision allowing "other forms" of information to be properly designated as "Highly Confidential." Dkt. 104 at ¶ 2(g). While the Confidentiality Order contemplates situations where a document may fall outside the enumerated "Highly Confidential" categories, those should be the *exception* and not the rule. *See Callsome Solutions Inc. v. Google, Inc.*, 2018 WL 5267147 (N.Y. Sup. Ct. Oct. 23, 2018) citing *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 2006 U.S. Dist. LEXIS 89546, at *6 (S.D.N.Y. Dec. 6, 2006) (AEO designations "shall be made as sparingly as possible" since they have severe consequences affecting the adversary's investigation, attorney client communications, the search for truth, and the judicial system, which is inevitably draw into the discovery process); *see also Global Material*, 133 F. Supp. 3d at 1084 ("Although two-tiered protective orders contemplating that some documents will be produced with a heightened 'attorneys' eyes only' (AEO) designation

are not uncommon, the AEO designation should only be used on a relatively small and select number of documents") (*quoting Team Play, Inc. v. Boyer*, 2005 WL 256476, at *1 (N.D. Ill. Jan. 31, 2005)). The fact that CDK fails to point to *any* of the Subject Documents falling within *any* enumerated category only underscores its failure to establish that Highly Confidential treatment is appropriate here.

*Second*, CDK takes issue (Opp. at 13) with MDL Plaintiffs' argument that documents older than two years contain information that is "stale" and thus no longer warrant Highly Confidential treatment. However, CDK has failed to meet its burden to establish that the Subject Documents contain the kind of information that would pose significant *present* competitive harm if designated "Confidential," instead relying on generic propositions for protection. *See In re: Aqua Dots Prods. Liab. Litig.*, 2009 WL 1766776, at *1, *4 (N.D. Ill. June 23, 2009) (the designating party must show that the disclosure of information would result in "clearly defined and serious injury" with "specific demonstrations of fact").

*Third*, CDK suggests that the present Motion is an attempt to undermine the two-tiered Confidentiality Order. Opp. at 13. But that is a red herring. MDL Plaintiffs do not challenge the two-tiered Confidentiality Order. Rather, the dispute at issue is CDK's use of the Highly Confidential designation for *these particular documents*. *See, e.g.*, *Global Material*, 133 F. Supp. 3d at 1084 (recognizing that "discovery and trial preparation are made significantly more difficult and expensive" when the AEO designation is not used selectively) (citing *Motorola, Inc.*, 2010 WL 2179170, at *5.

*Fourth*, CDK characterizes (Opp. at 14) its agreement to re-designate thirteen documents from Highly Confidential to Confidential as a "good deed" that somehow justifies the continued improper designations of the Subject Documents. Not only is that argument a non-sequitur, but

9

CDK fails to explain how the re-designated documents are any less commercially or competitively sensitive than the remaining Subject Documents. Indeed, as MDL Plaintiffs explained in its opening brief, the thirteen downgraded documents are similar in substance when compared to the documents CDK refuses to re-designate. Mot. at 12-13. CDK "ignores this inconsistency and fails to explain why it assigned differing designations to groups of documents that appear to convey the same kinds of substantive information." *Global Material*, 133 F. Supp. 3d at 1090.

### III. CDK Fails to Take Seriously the Burdens That Its Overuse of the Highly Confidential Designation Imposes on MDL Plaintiffs

CDK gives short shrift to the fact that its overuse of the Highly Confidential designation deprives MDL Plaintiffs from meaningfully participating in this litigation and will make depositions more difficult and expensive.

With respect to MDL Plaintiffs' participation in this litigation, the vast majority of the most probative and important documents are hidden from the view of the actual parties in this case. Counsel cannot even discuss these documents with their clients. This is severely prejudicial to MDL Plaintiffs' right to effective advice of counsel and to make informed decisions about the litigation. CDK claims (Opp. at 14) that, because some of the Subject Documents have been used in prior pleadings and briefing, the "Highly Confidential" designation has not impeded the use of these documents in the litigation. But that misses the point: the MDL *parties* have been "deprived of the ability to evaluate *for themselves* many of the pending motions before this Court." Mot. at 14 (emphasis added). CDK simply ignores the plethora of cases cited by MDL Plaintiffs in which courts recognize the "hobbling" effect litigants experience when restricted from salient case information. *Id.* at 15.

With respect to depositions, CDK states (Opp. at 15) that there is "a procedure for using Highly Confidential documents at the depositions of witnesses who would not otherwise have access to the documents as an author or recipient," but that "procedure" involves a party giving the Designating Party seven days advance notice of the "Highly Confidential" documents to be used at a deposition, and if the Designating Party objects, the party taking the deposition must seek emergency intervention from the Court to use the documents at the deposition. Confidentiality Order at ¶ 5(c)(6). Given that MDL Plaintiffs were forced to file a motion to compel the de-designation of the Subject Documents, it follows that CDK will almost certainly object to the use of these (and other Highly Confidential documents) at depositions, and that emergency intervention from the Court will have to be sought – both an "expensive" and "difficult" process.

CDK points out (Opp. at 15) that MDL Plaintiffs marked twenty-eight "Highly Confidential" documents as exhibits at the deposition of CDK witness Beth Ayotte, but that observation is irrelevant. Ms. Ayotte is a *CDK* employee who authored, received, or was the subject of all but one of these documents, so MDL Plaintiffs did not need to undergo the significant and burdensome process of giving notice to the Designating Party. But witnesses who are not the author, subject, or recipient of the Highly Confidential documents cannot view them at a deposition without undergoing the onerous procedure outlined in the Confidentiality Order, which will most likely end in Court intervention. In fact, at Ms. Ayotte's deposition, CDK's counsel marked *the entire transcript* as Highly Confidential under the Confidentiality Order, thereby demonstrating, yet again, CDK's intention to deprive MDL Plaintiffs of the ability to view probative information and meaningfully participate in this litigation.[5]

---

[5] At the conclusion of Ms. Ayotte's deposition, CDK counsel stated as follows: "MR. RYAN: We want to claim the highly confidential protections of the protective order with respect to

11

## IV. CDK's Arguments about MDL Plaintiffs' Own Confidentiality Designations Are Irrelevant

CDK repeatedly references MDL Plaintiffs' use of the Highly Confidential designation, but those arguments are misplaced. MDL Plaintiffs' designations are not before the Court and have no bearing on whether the Subject Documents warrant Highly Confidential treatment. CDK has never identified any documents that it believes MDL Plaintiffs should re-designate from Highly Confidential to Confidential. Should CDK identify any such documents during the course of discovery, MDL Plaintiffs will respond in good faith. Instead of engaging in that process, CDK instead used its opposition brief to cherry-pick three inconsequential Authenticom documents that were mistakenly produced as Highly Confidential. *See* Opp. at 7-8 (citing Dkt. 418-2, Exs. 4-6). Before filing its opposition brief, CDK never reached out to MDL Plaintiffs to identify those documents (or any other) as being mis-designated. Since receiving CDK's opposition brief, Authenticom has re-produced the three cited documents with no confidentiality designation.

CDK similarly spills a lot of ink (Opp. at 3-4) rehashing correspondence between Authenticom and CDK from late 2017 and early 2018, before the formation of this MDL. Here again, the issues raised in Authenticom's prior letters are not before the Court and have no bearing on whether the Subject Documents merit Highly Confidential treatment. In any event, Authenticom's pre-MDL objections to CDK's designations were entirely appropriate. When CDK early on designated *every document* in an 86,000-record production as Highly Confidential, Authenticom objected and explained that it was "improper for CDK to maintain the highest confidentiality designation for its *entire document production*." Dkt. 429-2, Ex. 1 (emphasis

---

the testimony here today, okay? MR. KUPILLAS: The entire testimony? MR. RYAN: Yeah, the entire transcript." Ayotte Dep. 349:3-7, Oct. 18, 2018.

added). At CDK's behest, Authenticom subsequently identified specific categories of documents – by Bates number – that should have been re-designated from Highly Confidential to Confidential, including communications between CDK and Reynolds. Dkt. 429-2, Ex. 2 at 2-3. CDK largely refused Authenticom's requests, *see* Dkt. 429-2, Ex. 4, and shortly thereafter, discovery was stayed in the *Authenticom* case and it was transferred to this Court as part of the current MDL. CDK makes no argument that MDL Plaintiffs' present motion is overboard or failed to comply with the Confidentiality Order.

## CONCLUSION

The Court should grant MDL Plaintiffs' motion to compel CDK to re-designate the Subject Documents from "Highly Confidential" to "Confidential."

Dated: November 9, 2018

Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I, Peggy J. Wedgworth, an attorney, hereby certify that on November 9, 2018, I caused a true and correct copy of the foregoing **MDL PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANT CDK GLOBAL, LLC TO RE-DESIGNATE DOCUMENTS FROM "HIGHLY CONFIDENTIAL" TO "CONFIDENTIAL"** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Peggy J. Wedgworth*