# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to All Cases | Magistrate Judge Jeffrey T. Gilbert |

## ORDER

Defendants' Omnibus Motion to Compel Certain Plaintiffs' Compliance With Their Discovery Obligations in Response to Defendants' Written Discovery Requests [ECF 312] is granted in part, denied in part, and remains under advisement in part. See Statement below for further details.

## STATEMENT

Defendants CDK Global, LLC ("CDK") and Reynolds and Reynolds Company ("Reynolds") jointly filed an Omnibus Motion to Compel Certain Plaintiffs' Compliance With Their Discovery Obligations in Response to Defendants' Written Discovery Requests ("Defendants' Motion") [ECF 312]. After Defendants' Motion was filed, the Dealership Plaintiffs announced a settlement with Reynolds and sought preliminary approval of that settlement. [ECF 427]. Preliminary approval was granted on November 7, 2018. [ECF 432]. CDK, therefore, appears to be the primary movant on Defendants' Motion insofar as the Dealership Plaintiffs are concerned. Reynolds remains a Defendant in other Plaintiffs' cases in this MDL Litigation, a counterclaimant against Plaintiff Authenticom, and a movant in connection with Defendants' Motion. In the discussion below, the Court has attempted to recognize and take account of the current position of each Defendant in the context of the pending Motion as much as possible.

### Defendants' Discovery to the Dealership Plaintiffs

1. **Data Security, Data Integrity, and System Performance.** The Court overrules Dealership Plaintiffs' wholesale objections to Defendants' discovery into these areas to the extent those objections are based on these Plaintiffs' belief that ANY discovery into data security, data integrity, and system performance issues is out of bounds because Judge St. Eve ruled that Defendants cannot defend this case on the grounds that Plaintiffs are violating cybersecurity laws. Plaintiffs appear to overread Judge St. Eve's opinion in this regard. Although Judge St. Eve held that Defendants cannot use certain Plaintiffs' alleged violation of cybersecurity laws as a defense to those Plaintiffs' antitrust claims, she also said Defendants could raise their data security, data integrity, and system performance arguments as counterclaims and also that some of Defendants' arguments in this regard could be relevant in the context of the balancing required as part of a rule of reason analysis of all Plaintiffs' claims. Memorandum Opinion and Order (St. Eve, J.) [ECF

176] at 18-19.  Defendants now have asserted counterclaims against Plaintiff Authenticom [ECF 225, 230] and a motion to dismiss those counterclaims is pending [ECF 277].

The Court agrees with CDK that it is entitled to discovery both in support of its counterclaim against Plaintiff Authenticom and more broadly in furtherance of its defense that data security, data integrity, and system performance concerns supposedly justified or motivated, in whole or in part, the steps it took to protect its data and systems.  Some of Defendants' discovery requests arguably can be proper vehicles to discover information that is relevant to these defenses.  The Court also understands, however, that Plaintiffs completely dismiss  Defendants' arguments that security concerns justify the steps each Defendant has taken to block access to their systems and, therefore, Plaintiffs presumably would say that any discovery in this area should be extremely limited even if it is technically permissible.  Therefore, the nature and extent of discovery that should be permitted on these subjects is not clear.

CDK cites by number to specific requests for production and two interrogatories it argues are directly relevant to security-related matters that are legitimate subjects of discovery in this case.  Defendants' Memorandum In Support Of Their Omnibus Motion To Compel ("Defendants' Memo") [ECF 317] at 7-8.  Dealership Plaintiffs do not engage with CDK on a request-by-request basis.  Rather, they take the approach that virtually none of Defendants' interrogatories or requests for production are proper in this case given the way they interpret Judge St. Eve's ruling on the motions to dismiss.  Other than to note, correctly, that they have agreed to produce some of the documents Defendants request (though comparatively few, it seems, overall), these Plaintiffs take the position that all Defendants' discovery requests in the security-related area are out of bounds.

To the extent CDK seeks "all documents and communications" in a category or in response to a request for production, its requests are overbroad, burdensome, and not proportional to the needs of the case.  Certain of Defendants' requests for production, however, seek only "documents sufficient to [identify or show]," and those requests obviously are more limited in scope and with respect to the corresponding burden they impose.  In addition, some of Defendants' requests for production may be overbroad, vague, burdensome, or not proportional to the needs of the case for other reasons.  For example, it may be that a request for production technically seeks information that is relevant, but the scope or breadth of the request is not justified by the importance of the issue that is the basis for the request in the context of this litigation.  Plaintiffs argue, and they may be correct, that Defendants' purported defense that their actions were motivated in part by data security, data integrity, and system performance concerns will be supported primarily with documents and information in Defendants' own possession and that any information they can obtain from Plaintiffs in this area is of minimal or tertiary utility in this case.  Further, as noted, Plaintiffs in certain instances have agreed, notwithstanding their objections, to produce certain documents in response to Defendants requests for production and it is not clear how or whether those productions may be sufficient for Defendants' legitimate purposes.

On the present record, it is difficult for the Court to discern what types of documents have and have not been produced, how Defendants or CDK, in particular, potentially have narrowed certain requests for production, and which of Defendants' requests for production are or remain overbroad, vague, unduly burdensome, or not proportional to the needs of the case in the form currently on the table.   It may be that the Court's threshold overruling of Plaintiffs' wholesale

2

objection and its comments about the appropriate scope of discovery in this area can help the parties make better progress in discussing Defendants' requests for production and Plaintiffs' responses to them. There still may be a host of issues, however. Those issues may include the relevant time frame if this discovery is intended to support a defense that data security and integrity was a motivating factor for the allegedly anticompetitive conduct Plaintiffs challenge in this case; whether Defendants knew of the data security or integrity issue at the time they made their decisions; and the sheer breadth of many of Defendants' requests for production.

The Court, therefore, will set an in-court hearing at which it can address these issues with the parties. Before that hearing, however, the parties must meet and confer in the wake of the Court's threshold ruling that some of the information and documents Defendants are requesting may be relevant to the claims and defenses in this case, its comments about facial and practical overbreadth and burden, the premise for certain of this discovery, and ways to reduce the burden on Dealership Plaintiffs of responding to various of Defendants' requests for production in this area. In addition, there may be some room for give and take on this discovery directed to Plaintiffs and on Plaintiffs' discovery about Defendants' security tools, processes, and training addressed in the Court's rulings on Plaintiffs' Omnibus Motion To Compel [ECF 316] also issued today.

For these reasons, Defendants' Motion remains under advisement in these respects.

2. **Alleged Markets and Competition.** Dealership Plaintiffs have agreed to produce documents responsive to Requests for Production Nos. 40 and 44 so the basis of any continuing dispute about these requests for production is not clear. The Court agrees with these Plaintiffs that Requests for Production Nos. 39, 42, 43, 46, and 47 are overbroad. In some instances, they are vague and ambiguous (i.e., Nos. 39, 43, 46, 47) and in all cases they impose significant burden without the corollary that production of "all documents and communications" relating to the subject matter as framed, or even in those cases where a Defendant has purported to cut back on or limit the request, is proportional to the needs of the case. The Court also agrees that Requests for Production Nos. 39 and 43 appear to be premature and the likely subjects of expert opinion. For these reasons, Defendants' Motion is denied in this respect.

3. **DMS Contracts and Relevant Provisions.** The Court agrees with Dealership Plaintiffs that Defendants' Requests for Production Nos. 33, 35, 36, and 48 are overbroad and, for that reason, impose an undue burden. These requests seek "all documents and communications" relating to certain subject matters when a narrower request would seem to do the trick. The Court has read the exhibits to Defendants' Motion that the parties variously cite for the propositions that these Plaintiffs have agreed to produce documents in response to other requests for production that are responsive to the requests at issue in this dispute, that Plaintiffs served similar requests on CDK, and that Plaintiffs have either identified or produced information sufficient to respond reasonably to these requests for production. In the volume of material submitted, the current state of play is not clear to the Court. Fundamentally, however, the Court agrees with Dealership Plaintiffs that Defendants' Requests for Production Nos. 33, 35, 36, and 48 as written are overbroad and unduly burdensome so, for that reason, Defendants' Motion is denied in this respect.

4. **Contention Requests for Evidence of Liability of Damages.** The Court agrees with Dealership Plaintiffs that Defendants' Requests for Production Nos. 84, 85, and 96 are contention-

type requests that, as framed, are premature, overbroad, and not proportional to the needs of the case at this juncture. Request for Production No. 84, for example, asks for "all documents and communications related to Your suspicion, belief, or claims that any Defendant was engaged in any anticompetitive activity or that competition in any market has been harmed." That certainly is a mouthful, and no doubt Plaintiffs are pursuing discovery including depositions designed to uncover evidence to support their beliefs and claims. In the same vein are Requests for Production Nos. 85 and 96 that ask Plaintiffs to produce "all documents and communications" that they "contend to be evidence of an illegal agreement between CDK and Reynolds" or that "reflect coordinated conduct" by Defendants. In the Court's view, requiring Plaintiffs now to lay out their entire case in response to these requests for production, and be faced with continuing to supplement their responses as they take discovery and develop their case, is premature and not proportional to the needs of the case.

Defendants are correct that Plaintiffs should have produced documents responsive to these requests for production as part of the Rule 26(a)(1) initial disclosure process. But that can be true while at the same time Plaintiffs' properly can object to these particular requests for production as framed. By the same token, if Plaintiffs properly comply with the Rule 26(a)(1) and 26(e) process, then Defendants have or will have a good deal of the information they are requesting with these requests for production together with Plaintiffs' responses to Defendants' many other requests for production.

The Court agrees with Defendants, however, that they are entitled to a complete response to Request for Production No. 91 which seeks documents and communications related to Plaintiffs' alleged injuries or damages. The request for "all documents and communications" in this request for production may be overly broad, but certainly documents sufficient to support Plaintiffs' alleged injuries and claims for damages must be produced. For these reasons, Defendants' Motion is granted in part in this respect and denied in part as to the other requests for production discussed above.

5. **"Improperly" Narrowed Requests.** With respect to Request for Production No. 5, the Court agrees with Defendants that Dealership Plaintiffs' agreement to produce only contracts that contain the exact term "exclusive dealership provision(s)" is too restrictive if that means Plaintiffs are excluding from production contracts that contain an equivalent term without using these exact words. For example, if Plaintiffs' proposed protocol would result in them withholding a document that uses the term "exclusive relationship" or "exclusive dealing provision" then Plaintiffs' proposal is too narrow and limiting. The Court agrees with Plaintiffs, however, that Defendants' request for "all documents and communications related to 'exclusive dealing provisions'" is overbroad in the sense it repeats Defendants' convention of requesting "all documents and communications" that relate to a particular subject when a more limited universe probably would be acceptable. Therefore, Defendants' Motion is denied with respect to Request for Production No. 5 as written. This ruling, however, should not prevent the parties from revisiting Plaintiffs' proposed search protocol and the universe of responsive documents that might be subject to production in response to a narrower request.

With respect to Request for Production No. 51, the Court agrees with Plaintiffs that the request for "all documents and communications that relate to automotive industry standards or

guidance" regarding various subject matters is overbroad. By the same token, Plaintiffs' proposal to limit their response to Defendants' request by searching custodial files only for industry guidelines that mention "data security" probably is too narrow. This appears to be a silly fight. Defendants must know that a request for "all documents and communications that relate to" is an overly broad limiter in this context. And Plaintiffs must know that Defendants are interested in more than just documents that contain the term "data security." The Court, however, is not prepared to rewrite Defendants' overly broad request or to redline Plaintiffs' too narrow proposed limitation. The Request as written is overly broad, however, and, for that reason, Defendants' Motion is denied in this respect.

If the parties undertake the work necessary to meet and confer about these requests for production and step back from their extreme respective positions, and they still cannot reach agreement as to how to go forward, then one side or the other can bring this issue back to the Court.

6. **Publicly Available Documents.** Dealership Plaintiffs must produce documents quoted or relied upon in their complaints as a basis for an allegation as well as documents referred to, quoted, or paraphrased in an answer to an interrogatory even if those documents are in the public domain assuming the documents are in Plaintiffs' possession, custody, or control. The Court agrees with Defendants that these are reasonable requests. For this reason, the Court grants Defendants' Motion with respect to Requests for Production Nos. 75 and 79.

Dealership Plaintiffs have agreed to produce to Defendants publicly available documents responsive to Requests for Production Nos. 87, 88, 89, 97, 98, and 99 but only to the extent they "have not been identified or provided to CDK in the past" or, if they do not produce these documents, then Plaintiffs will "direct CDK to their locations." Exhibit 20 to Defendants' Memo [ECF 317-1] at CM/ECF p. 177. This appears to be a recipe for future disagreements. The Court does not understand Plaintiffs' first caveat and, in any case, it is susceptible to debate ("this previously was provided to you; no it wasn't"). The Court also does not fully understand Plaintiffs' second caveat and it also appears to contain within it the seeds of dispute and disagreement ("that location is more accessible to you than to me; no it isn't"). Accordingly, Defendants' Motion also is granted with respect to these requests for production and Plaintiffs shall produce to Defendants responsive documents even if they are publicly available assuming they are in Plaintiffs' possession, custody, or control.

7. **Dealership Plaintiffs' Objections to CDK's Search Terms.** Assuming this issue is still live and has not been overtaken by events since Defendants' Motion was filed, the Court grants Defendants' Motion to the extent of requiring Dealership Plaintiffs to run CDK's search terms and provide a report with the results of that effort the same as all parties in this case apparently have done including other Plaintiffs. If these parties continue to argue at length and in detail about search terms, the Court will appoint a special master to work with the parties in this area, resolve disputes, and make recommendations to the Court. Initially, the cost of the special master will be borne by each side equally. But if the Court determines that one side bears more responsibility than the other for disputes concerning electronic discovery, then the Court will reallocate the cost burden of the special master so that is falls more proportionally or completely on the party whose conduct necessitated the appointment.

**Defendants' Discovery to Individual Plaintiffs Cox and Autoloop**

Defendants' Motion is denied to the extent Defendants ask the Court to require Plaintiffs Cox and Autoloop to respond to certain requests for production that appear to have been propounded by CDK and that focus on these Plaintiffs' use of data including the provision or presentation of that data to a third-party. CDK's discovery requests, at least based on the limited record developed on Defendants' Motion, have the look and feel of an attempt to discover facts that could give rise to potential claims against these Plaintiffs relating to their use or sharing of data rather than to discover facts relevant to these Plaintiffs' existing claims and Defendants' defenses. But that is not a proper basis for this discovery.

CDK's professed concerns with the security of these particular Plaintiffs' systems or their use of data obtained from CDK's DMS is offset and undercut somewhat by the fact that CDK apparently continues to allow these Plaintiffs to access its data and systems. CDK has not sued either of these Plaintiffs for breach of contract or anything else. MDL Plaintiffs' Memorandum of Law in Opposition to CDK Global, LLC's Omnibus Motion to Compel ("Plaintiffs' Opp") [ECF 355] at 25-26. The Court recognizes that, as discussed earlier in this Order, CDK may be able to obtain some information relevant to its data security, integrity, and system performance defenses from other Plaintiffs. The Court, however, also caveated that position to some extent and it remains an open issue. Regardless, there does not appear to be a clear reason why CDK needs to obtain similar information from these Plaintiffs whom it continues to allow to access its systems. And, again, there appears to be some reason to exercise caution in this area if CDK's discovery is a veiled attempt to discover information that it might use to bring claims not yet asserted against these two Plaintiffs. Therefore, for these reasons, Defendants' Motion is denied in this respect.

**Defendants' Discovery Requests to Plaintiff Authenticom**

1. **Answers to Interrogatories.** The Court finds no significant fault with Authenticom's answers to the 10 interrogatories propounded by CDK. It always is difficult to determine when a party that actually responds to some extent to an interrogatory has not done enough or must do more. That is particularly true when, as here, the interrogatory does not simply ask the responding party to identify people, places, dates, etc., which is the most productive use of an interrogatory in the Court's view, but it requires a narrative response. In this case, Authenticom could have said more or provided more information in response to CDK's interrogatories. It also is true that on the spectrum of permissible responses, Authenticom's responses to CDK's interrogatories are on the lighter or sparser side. But the Court cannot say they are so inadequate as to require additional narrative supplementation. And Authenticom notes that it agreed to supplement its responses as necessary with citations to business records produced pursuant to Rule 33(d) by the date the case schedule required it to do so, which was about two months after Defendants' Motion was filed. The Court presumes Authenticom did what it said it was going to do, but even as is its interrogatory responses are not so inadequate as to require more. Nothing, of course, prevents Defendants from further inquiry into the subjects covered by these interrogatories at depositions which may be the more appropriate discovery vehicle in this context in any event. Accordingly, Defendants' Motion is denied in this respect.

2. **Responses to Requests for Admission.** The Court also does not find significant fault with Authenticom's amended responses to the two requests for admission propounded by CDK. Authenticom qualified its responses to these requests as it felt it needed to do, and Rule 36 allows it to do so. Again, there is a spectrum of permissible responses here and, in the Court's view, Authenticom has not strayed seriously outside what is permissible. Defendants' Motion also is denied in this respect.

3. **Interrogatory No. 25.** This interrogatory asks Authenticom to explain the factual basis that supports each denial of a request for admission, identify all documents and information that supports the denial, and identify all persons with knowledge of facts supporting its response. The Court agrees with Authenticom that the use of a single interrogatory for this purpose circumvents the limit on the number of interrogatories permitted by Rule 33 and effectively turns each request for admission into a separate interrogatory. *Makaeff v. Trump University, LLC,* 2014 WL3490356 (S.D. Cal. July 11, 2014) (Gallo, MJ.). While that might be an appropriate discovery tool in some cases, it is not in this case. The Court has reviewed Authenticom's responses to CDK's requests for admission. In many instances, Authenticom explained the reason it was denying a request for admission in the context of its response. Therefore, no constructive purpose would be served by requiring Authenticom to answer an interrogatory and say essentially the same thing. It also is unduly burdensome and, in the Court's view, not proportional to the needs of the case. For these reasons, Defendants' Motion is denied in this respect.

**Defendants' Discovery Requests to Plaintiff MVSC**

Plaintiff MVSC says it has agreed to produce documents going back to January 1, 2013, which moots this dispute.

For the reasons discussed above, Defendants' Omnibus Motion to Compel Certain Plaintiffs' Compliance With Their Discovery Obligations in Response to Defendants' Written Discovery Requests [ECF 312] is granted in part, denied in part, and remains under advisement in part.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 19, 2018