# EXHIBIT B

```
 1                   IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3
         IN RE:                         )  Docket No. 18 C 864
 4       DEALER MANAGEMENT SYSTEMS      )  Chicago, Illinois
         ANTIRUST LITIGATION            )  October 9, 2018
 5                                      )  9:41 a.m.
                                        )
 6

 7                        TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE ROBERT M. DOW, JR.
 8                                  and
                     THE HONORABLE JEFFREY T. GILBERT
 9
         APPEARANCES:
10
         For the Plaintiffs:     KELLOGG, HANSEN, TODD, FIGEL &
11                               FREDERICK, PLLC, by
                                 MR. MICHAEL N. NEMELKA
12                               1615 M Street, N.W.
                                 Suite 400
13                               Washington, District of Columbia  20036
                                 (202) 236-7931
14                               mnemelka@kellogghansen.com

15                               MILBERG LLP, by
                                 MS. PEGGY J. WEDGWORTH
16                               1 Penn Plaza
                                 Suite 4800
17                               New York, New York  10119
                                 pwedgworth@milberg.com
18
                                 CLIFFORD LAW FIRM PC, by
19                               MS. SHANNON McNULTY
                                 120 North LaSalle Street
20                               31st Floor
                                 Chicago, Illinois  60602
21                               smm@cliffordlaw.com

22                               ROBBINS GELLER RUDMAN & DOWD, by
                                 MR. FRANK ANTHONY RICHTER
23                               200 S. Wacker Drive
                                 31st Floor
24                               Chicago, Illinois  60606
                                 frichter@rgddlaw.com
25
```

```
 1    APPEARANCES (Continued)

 2    For the Defendants:      MAYER BROWN LLP, by
                               MS. BRITT M. MILLER
 3                             71 South Wacker Drive
                               Chicago, Illinois  60606
 4                             (312) 782-0600
                               bmiller@mayerbrown.com
 5
                               GIBBS & BRUNS, LLP, by
 6                             MS. AUNDREA K. GULLEY
                               1100 Louisiana
 7                             Suite 5300
                               Houston, Texas  77002
 8                             (713) 650-8805
                               agulley@gibbsbruns.com
 9

10

11

12

13

14

15

16

17

18

19

20

21    Court Reporter          KRISTIN M. ASHENHURST, CSR, RDR, CRR
                               Official Court Reporter
22                             United States District Court
                               219 S. Dearborn Street, Suite 2303-A
23                             Chicago, IL 60604
                               (312) 818-6549
24                             kristin_ashenhurst@ilnd.uscourts.gov

25
```

1          THE CLERK:  18 civil 864, In Re: Dealer Management
2     Systems Antitrust.
3          THE COURT:  Good morning, everybody.
4          MS. WEDGWORTH:  Good morning, your Honor.
5          THE COURT:  We have a two-judge panel this morning.
6          JUDGE GILBERT:  No dissents, though.
7          THE COURT:  Yeah.  No, that's right.  We will be
8     totally amazed this morning.
9          For plaintiffs we have?
10          MS. WEDGWORTH:  Peggy Wedgworth on behalf of the class
11     dealership.
12          MR. NEMELKA:  Mike Nemelka on behalf of the Direct
13     Purchaser Vendorfy, Cox Automotive, MVSC, and Authenticom.
14          THE COURT:  Okay.
15          MS. McNULTY:  Shannon McNulty, liaison counsel for all
16     plaintiffs.
17          MR. RICHTER:  Frank Richter, Robbins Gellar for the
18     PSC for dealer Fox.
19          THE COURT:  Okay.  Beautiful.  And we have one for
20     each defendant.
21          MS. GULLEY:  Good morning, your Honor.  Andi Gulley on
22     behalf of Reynolds.
23          MS. MILLER:  Good morning, your Honor.  Britt Miller
24     on behalf of CDK Global and computer registration.
25          THE COURT:  Okay.  Very good.  Here's the agenda as

1    far as I can tell.  One is you guys are going to tell us about
2    the settlement, which is the reason we set this.
3                 JUDGE GILBERT:  Do you think there is anybody on the
4    phone?
5                 THE COURT:  Oh, are there people on the phone?  I'm
6    sorry.  Are there people on the phone for the MDL case?
7                 Oh, it's for another case.  Okay.
8                 JUDGE GILBERT:  Sorry.
9                 THE COURT:  No, that's okay.  We are trained to hear
10   the beep.
11                So you're going to tell me about the settlement, at
12   least what you can tell me on the record.  I'm going to tell
13   you I've read all of the briefs on the motion to stay.  And
14   then Judge Gilbert has asked for a few minutes to talk about
15   what you guys talked about on Friday.
16                MS. GULLEY:  Great.
17                THE COURT:  All right.  So tell me about the
18   settlement first, please.
19                MS. WEDGWORTH:  We are currently finalizing the
20   definitive agreement.  Our target date to file it with this
21   Court is October 19th.  And there may be a little bit of
22   slippage, but we have got strong goals and working hard to do
23   that.  We have got a notice in the works.  We have got a
24   website in the works.  We are talking to claims and notice
25   administrators.  We've got the CAFA notice also in the works.

1    So lots of things in the works that will be attached to the

2    definitive settlement agreement when it's filed, again target

3    date October 19th.  Hopefully, there's no slippage, but as you

4    know, things happen.

5              THE COURT:  Mm-hmm.

6              MS. WEDGWORTH:  After October 19th, we would ask for a

7    preliminary hearing on November 2nd, if that works for the

8    Court.

9              THE COURT:  November 2nd, I'm going to be in D.C.

10   There's a Civil Rules meeting that's set at that time, and

11   guess what we are talking about?

12             MS. WEDGWORTH:  Rule 23.

13             THE COURT:  That's in the house.  We're talking about

14   MDL rules.

15             MS. GULLEY:  Perfect.

16             THE COURT:  Yeah.  So -- yeah, you guys will be very

17   interested.  All kinds of people walk through here, and they're

18   not interested at all in that, but you guys are all very

19   interested.

20             MS. WEDGWORTH:  We are.

21             THE COURT:  So I can't do that now, and I start a

22   criminal trial on 11/5 that is going to go the entire month and

23   into December.  We can carve out some time for you on any day

24   during that time.  It will be a motion for preliminary

25   approval?

1    MS. WEDGWORTH:  Yes.  Would October 30th be a

2    possibility?

3         THE COURT:  That whole week -- so the MDL transferee

4    judges' conference is Monday, Tuesday, Wednesday, and the civil

5    rules is Thursday/Friday.  I'm completely out of the box that

6    whole week.  The week before is bad, too, because I have a

7    two-day fairness hearing on the Chicago Police Department

8    consent decree case.  So it's going to be a busy week.

9         MS. WEDGWORTH:  Big.  Big.

10        THE COURT:  Yeah.  So the best I could do for you, I

11   think, is the 6th of November, unless you would be ready on

12   October 22nd or -3rd?

13        MS. WEDGWORTH:  So if we can take a day or two to

14   confer to see if we can get to --

15        MS. GULLEY:  One minute.

16        THE COURT:  Oh, sure.

17        MS. WEDGWORTH:  You know, your Honor, if November 6th

18   is available for a preliminary hearing, let's go ahead and do

19   that.

20        THE COURT:  Okay.  We will put you in at 9:15 that

21   day, if we could.  It will be day two of a trial.  And I pray

22   that day one will include the completion of jury selection, but

23   you can never tell.  All right.  That sounds fine.  So 11/6 for

24   preliminary approval hearing.  Okay?

25        MS. WEDGWORTH:  And given some slippage with that day,

1  we were shooting to get you to the end of the story sometime in

2  mid-January for a final approval hearing.  That's after sending

3  out notice and a period for objection or opt-out.  Everyone is

4  comfortable with that.  Once those dates are in place, we would

5  shoot for the middle of January.

6  THE COURT:  Okay.  And why don't we -- and on the 6th

7  of November why don't we see if you guys are feeling like you

8  want to cinch up a date certain and we'll give you one then.

9  Sound good?

10  MS. GULLEY:  That would be great.

11  MS. WEDGWORTH:  And the plan is that will not

12  interfere with any other litigation going forward.

13  THE COURT:  All right.  You're not joining the

14  settlement yet?

15  MS. MILLER:  No, not that I am aware.

16  THE COURT:  Okay.  Sobeit.  That all works fine.  And,

17  you know, we'll keep you guys moving.  Those who want to go to

18  the door, we'll be happy to help you get there.

19  MS. WEDGWORTH:  So, quickly, the motions you don't

20  need to rule on are 252 of the docket, which is Reynolds motion

21  to dismiss.

22  MS. GULLEY:  And compel arbitration.

23  THE COURT:  Okay.  Now, you still have an arbitration

24  argument, though, right?

25  MS. MILLER:  Yes, I do, your Honor.

1        THE COURT:  All right.  Very good.  And so 252.

2        MS. WEDGWORTH:  And 344, which was a motion that had

3    been taken off calendar.  We sent a notice that we had solved

4    that issue, but it now can be eliminated entirely.

5        THE COURT:  Okay.

6        MS. WEDGWORTH:  And those, really, are the only two

7    currently.

8        THE COURT:  Okay.

9        JUDGE GILBERT:  Can I ask you, does this affect any of

10    the discovery motions that are under advisement, or no?

11    Because I think I've got defendants' motion to compel.

12        MS. WEDGWORTH:  Does not affect at all from my

13    perspective.

14        MS. GULLEY:  So those omnibus motions are basically

15    defendants on the one hand and plaintiffs on the other, and

16    since we are all still parties to them, it shouldn't affect

17    them.

18        THE COURT:  Okay.

19        MS. WEDGWORTH:  So as to the terms of the settlement,

20    we -- instead of rolling them out piecemeal for you, they will

21    all be in there on October 19th, the target date, or if there's

22    a little slippage, we can tell you that it's a cash settlement

23    and there are no coupons.  And this settlement came after long

24    negotiations and culminated in a mediation that lasted over 12

25    hours.  So the terms of the settlement, we'll have on

1    October 19th or shortly thereafter when we do file our

2    definitive settlement agreement.

3              THE COURT:  Okay.  Great.

4              Anything else on the settlement?

5              MS. GULLEY:  No, your Honor.

6              THE COURT:  Beautiful.  All right.  Thank you.

7              Now, my next piece is the motion to stay.  I have a

8    paragraph that will go on the docket later today.  But I'm

9    going to deny the motion to stay because I think

10   there -- whether CVR is a party or a nonparty, they're still

11   going to be very important to the litigation.  Within, I think,

12   a week or two, you will know if they're a party, because we're

13   working very hard on those motions to dismiss.

14             What we figured out is that we can't separate CVR's

15   motion out.  We have got to rule on all three of them at once.

16   And that takes more time than if we would have just pulled one

17   out, which was maybe my initial thought, and I thought maybe I

18   would have a ruling for you by last Friday, but it will be

19   sometime in the next two weeks, I think, based on my

20   back-and-forth with my law clerk on this.

21             So there will be this period where you will still be

22   in limbo, but you'll have to proceed with the discovery as if

23   they're a party.  They may not be a party.  They may be a

24   party.  But either way, they are going to be important and

25   people are going to be serving discovery on them.

1     It seems to me that you probably have these responses

2   pretty close to go, the one that you wanted 72 hours from the

3   ruling.

4         MS. MILLER:  Judge Gilbert gave us slightly longer

5   than that.  Since we didn't have a decision on Friday, I think

6   they are due sometime next week.

7         THE COURT:  I will not interfere with that whatsoever.

8   They're due, and Kassie is listening to this right now, so she

9   will amend the order.  We defer to Judge Gilbert on that

10  deadline.

11        JUDGE GILBERT:  Well, I might have to -- I only gave

12  you a week, right?

13        MS. MILLER:  Right.

14        JUDGE GILBERT:  And so do you want to amend that,

15  since you're going to be ruling soon, to a certain number of

16  days after the ruling is issued, so you don't have to keep

17  coming back with days?

18        MS. MILLER:  Certainly.  Currently, I believe, it was

19  a week from our last -- our last date, which was this coming

20  Wednesday.  So we understood that it was a week.  Sometime next

21  week, either Wednesday or Thursday, but if there's another date

22  that your Honor would like to enter, that would be perfectly

23  fine with us.

24        THE COURT:  I can't promise the day the ruling's going

25  to be ready.  I'm confident it will be ready no later than two

1    Fridays from now.  And maybe -- it probably won't be this

2    Friday, but it will be early next week.  So it's -- we're

3    talking about a matter of days or maybe even hours different

4    between what you said and what would happen.

5              JUDGE GILBERT:  Do you want to say three business days

6    after the ruling the documents should be produced?

7              MS. MILLER:  That would be fine by us.

8              THE COURT:  I mean, we're talking about days here, and

9    so I don't know that it makes a difference.  I'm happy to do

10   that.  So the shoe will drop sometime -- so be ready, because

11   the shoe could drop on Friday.  It will probably be better to

12   trigger it off that, though, because we don't know the date.

13             MS. MILLER:  Sure.

14             THE COURT:  But it might be Friday.  It might be

15   tomorrow for all I know.  But I don't think it will be tomorrow

16   because I have got a very busy day today.

17             MS. MILLER:  Hopefully not tomorrow --

18             JUDGE GILBERT:  I could just issue an amended order or

19   modify my order from Friday that says based on the discussion

20   held today, that you should produce documents.

21             MS. MILLER:  It's our responses to their RFPs.

22             JUDGE GILBERT:  Okay.  So your responses to their RFPs

23   would be due three business days after the ruling on the motion

24   to dismiss; is that right?

25             THE COURT:  Sounds -- that's exactly where the ruling

1   is going to be, so I will leave that with you, which is where I

2   wanted that to be in the first place.  But I realized it was

3   all contingent on how fast I could get a motion to dismiss

4   ruling done, and that will be done soon.

5           MS. MILLER:  Appreciate it, your Honor.  Thank you.

6           THE COURT:  So that's good.  And that would be

7   literally a paragraph that denies the stay motions.  Because

8   the ruling is going to come out quickly, it's really a

9   nonevent.

10          Okay.  That's all I have for today.  Do any of you

11  guys have anything before I turn the floor over to Judge

12  Gilbert?

13          MR. NEMELKE:  I have one thing.

14          THE COURT:  Yep.  Go ahead.

15          MR. NEMELKE:  It has to do with a trial date for

16  Authenticom.

17          THE COURT:  Okay.

18          MR. NEMELKE:  Judge Gilbert sua sponte extended the

19  factual deadline by two months.  And I think part of it is an

20  issue, you know, Authenticom has ping-ponged from court and

21  from judge to judge.  Sometimes we assume things that we maybe

22  should have done a better job educating the Court and Judge

23  Gilbert about.  Judge Gilbert, you did say that some of our

24  arguments were at the 30,000-feet level.  And one of them that

25  we would like to argue today is that the Authenticom need for

13

1   the trial and the directive from the Seventh Circuit is every

2   bit as needed now as it was a year ago when the Seventh

3   Circuit issued its ruling.

4           And to just bring it down, four points very quickly,

5   from 30,000 feet to actually facts, just to give you insight on

6   how Authenticom is struggling.  In August of 2017, after we got

7   the preliminary injunction, Authenticom was serving 4500 --

8   4,500 CDK dealers.  Today, because of defendants' joint

9   blocking, it's only serving 614.  Go -- that many dealers would

10  have to sever their relationship with Authenticom because of

11  the interruptions of its service.  With employees, it had 110

12  employees.  It had to lay off two-thirds of its workforce, and

13  it's now operating on a shoestring, 36 employees.  Vendors, it

14  almost -- at one time it served almost every vendor in this

15  entire industry.  Today it's dependent on just a few large

16  vendors to sustain its business, and if it were to lose one or

17  two of them, it would be devastating, and it's because of the

18  blocking.

19          Authenticom is cash-flow insolvent.  It's in breach of

20  its loan obligation.  Its bank has extended a forbearance

21  agreement in monthly installments.  It was June 2018 and now

22  it's December 2018 when the forbearance agreement expires.  And

23  Authenticom is in these dire straits because of the very

24  allegations at issue in this case, the joint blocking of and

25  the coordination of defendants.

1    And, you know, the Seventh Circuit said, "We

2   appreciate the District Court's concern to ensure that a

3   potentially sound anti-trust case should not disappear before

4   its eyes because the plaintiff runs a high risk of running out

5   of business or the litigation drags on."  And now we're here in

6   this MDL so the case won't disappear, but that engine that's

7   been driving it from the start may.  And as your Honor, Judge

8   Gilbert, said, "Authenticom took the dive and led the charge

9   and the entire industry jumped in, including my clients, the

10   direct purchasers, the vendors, and the dealers.  And we're

11   very happy to have the dealers here with us and we're very

12   happy for their settlement."

13    But while these industries discriminately survive --

14   will survive -- Authenticom may not.  And it's not just about

15   the harm to Authenticom.  My clients, the vendors, remember,

16   after they started -- based on allegations, the price increases

17   to Cox went up 500 percent for the same services.  They've had

18   no choice but to pass onto those fees, cost base tens and tens

19   of millions of dollars every year that CDK runs with data

20   access that they have to pass down to these dealers, not much

21   of them, not 100 percent.  And there's some poetic irony, if I

22   could point out, with the two-month extension on the case

23   schedule, if you look at it, that puts summary judgment and

24   *Daubert* briefing ending on November 6th, if all the dates move

25   two months, November 6, 2019.

1    The Seventh Circuit issued its ruling on November 6th,

2    the same day, 2017, two years before.  And in that opinion it

3    said, "We urge the District Court to do what it can to expedite

4    its final judgment."

5        We would respectfully submit that two years after that

6    injunction to even be done with summary judgment, not even at

7    trial yet, is not consistent with that.

8        THE COURT:  You guys have sent some mixed signals, I

9    have to say.  And I've addressed that in one of my prior

10   opinions where I quoted Professor Issacharoff.  And then you

11   asked for more discovery, and you haven't taken a consistent

12   line in this.  I get your point.  I read the Seventh Circuit

13   opinion very carefully, and I know Judge St. Eve did as well

14   and that she set you on a schedule.

15       MR. NEMELKE:  Right.

16       THE COURT:  And when Judge St. Eve sets a schedule,

17   it's just probably going to the tightest schedule it can be;

18   that's just based on 16 years of her being a judge.  I was

19   happy to adhere to that schedule as closely as I can.

20   Discovery supervision is with Judge Gilbert.  He's been hearing

21   you and meeting with you on a very regular basis and spending

22   an hour and 45 minutes with you at a time.  The fact that he's

23   extended the discovery to April 15th doesn't mean *the Daubert*

24   schedule has to go to November 6th.  It doesn't mean that at

25   all.

1    I, you know, you guys -- these are very deep and

2  talented law firms.  I know that.  And there's no reason that

3  you guys can't move as fast as people need to move.  And if you

4  were in Eastern District of Virginia, you would be tap-dancing.

5  Maybe if you were back in Wisconsin you would be tap-dancing,

6  too.  So the one doesn't necessarily follow from the other.

7  And if Authenticom's situation is more dire -- my

8  understanding, it was very dire when Professor Issacharoff made

9  this comment.  My understanding is it was less dire later when

10  you guys took positions in discovery that were not quite of the

11  same urgency as what Professor Issacharoff suggested.  If the

12  situation is continuing to change and becoming worse for

13  Authenticom, those are facts that we need to know.  And if you

14  want to -- you should certainly discuss with the other side,

15  but these law firms are all capable -- all of the law firms in

16  this case are capable of moving quickly.

17    MR. NEMELKE:  So that's all, actually, we would ask,

18  if we could would try to make up those two months in those

19  later dates, in the summary judgment and *Daubert*, we can confer

20  with defendants --

21    THE COURT:  Confer with the other side, but I have no

22  doubt that these law firms are capable of moving mountains.

23  I've seen it happen, a good part of it happening.  I know that

24  this can happen.

25    MR. NEMELKE:  And then the second request --

1       JUDGE GILBERT:  Well, what is currently -- one thing I

2   didn't address on -- I'm sorry to interrupt.  Is that okay?

3       THE COURT:  Yeah.  Sure.

4       JUDGE GILBERT:  One thing I didn't address on Friday,

5   because we were running out of time, was how an extension of

6   the fact discovery date would or should extend the expert

7   discovery date.  Okay?  As Judge Dow said, they don't

8   necessarily have to move in tandem, they often do.  And you --

9   and said in my order that I sua sponte extended the fact

10  discovery closing date for the reasons we discussed on Friday.

11  Sua sponte was done because there actually was not a motion

12  pending.  But the defendants did ask in their response, or in

13  their deposition protocol briefing, that if we were going to

14  take the depositions on kind of a break-neck schedule, they

15  actually asked for that April 15th date.  So although I was not

16  granting a motion by the defendants formally to extend the

17  date, they had asked for that in their deposition briefing.

18  And in order to take it off who was going to move, because

19  sometimes that's a game of chicken in a case like this, I took

20  it upon myself for the reasons I said on Friday to say, "Look,

21  I think we ought to move it."  And I still think that had to be

22  done, and I'm going to address some of that now.

23      But if you want to talk about what your discovery

24  schedule would be and what an expert disclosure date would be

25  for 26(a)(2) or 26(a)(2)(B) or (C), experts would be, which

1   works in a dep schedule like this before the end of fact

2   discovery --

3           MR. NEMELKE:  Mm-hmm.

4           JUDGE GILBERT:  -- I'm willing to entertain that.

5           MR. NEMELKE:  Okay.

6           JUDGE GILBERT:  And if that's going to be on my plate,

7   I'm willing to entertain --

8           MR. NEMELKE:  That's all we could ask of you.

9           JUDGE GILBERT:  Well, yeah.  Talk to the other side

10  and see if it works.  But that would require front-loading

11  depositions and then your experts are going to be at the back

12  end, but that's not impossible to do.

13          MR. NEMELKE:  Right.

14          JUDGE GILBERT:  And if you wanted to keep your

15  November 6th date as Judge Dow was saying, I'm not opposed to

16  that.  The facts that you talked about today with Authenticom

17  were nowhere in the record that I had in front of me.  And I

18  recognize that you said you're getting bounced around between

19  judges, a little bit.  I mean, I read the docket, too, and I

20  read all of Judge St. Eve and Judge Dow's opinions before I got

21  on the bench with you on Friday, trying to give a little

22  continuity.  But I, too, saw the riding two horses with respect

23  to Authenticom.  And I also saw plaintiffs asking for a

24  tremendous amount of discovery, which is somehow -- which I

25  felt was incompatible with let's get this tried next week.

1    Okay?  And I'm going to address a little bit of that in a

2    second.  So there's a -- there's a push and pull on that.  But

3    I'm certainly not opposed to getting you done on a schedule

4    that allows you to continue where you are.

5            You said you wanted a trial date.  I don't know who

6    can address that.

7            THE COURT:  I can give you a -- I don't know how I can

8    give you a trial date before -- I don't know how we can do a

9    trial before I ruled on all of these motions, but I can give

10    you a trial date.

11            MR. NEMELKE:  Well, I just wondered if we could go

12    back to Judge Peterson's conference and get on the calendar.

13            THE COURT:  Oh, sure.

14            MR. NEMELKE:  That's all I was wanting was to get on

15    the calendar.

16            THE COURT:  Tell me what the worst-case scenario is

17    for how much time you need for a trial.

18            MR. NEMELKE:  Well, we already had a trial date set

19    for October 22nd.  We wanted two weeks.  They asked for three

20    weeks.  And so Judge Peterson had a three-week trial that was

21    supposed to start October 22nd this year.

22            MS. MILLER:  Your Honor --

23            THE COURT:  Okay.  So you're going to give me your

24    motions whenever you're going to give me your motions, so we

25    have to have -- and they could be -- in a case like this you

1   guys could have lots of *Daubert* motions, and they could be

2   complicated *Daubert* motions, and you're going to have all kinds

3   of numbers running at me and I'm a history major, so you're

4   going to have to deal with that.  What I think you ought to do

5   about a trial date, right now I can tell you that 2020 is wide

6   open.  You can have any trial date you want in 2020.  I have

7   not set any trials in 2020, and I can give you three straight

8   weeks pretty much any time you want.  But you guys need to talk

9   amongst -- you need to tell me who has got things going.

10  Probably nobody has anything on their calendar for 2020 yet,

11  but that's -- what my suggestion is, now you know what your

12  discovery deadline is going to be.  Judge Gilbert's suggestion

13  was excellent.  There's no reason you can't front-load the

14  things you need so that you can keep the experts where you want

15  them.

16          MR. NEMELKE:  Yes.

17          THE COURT:  And you can keep these *Daubert* motions

18  where you want them.

19          MR. NEMELKE:  Yes.

20          THE COURT:  And then you can give me a sensible trial

21  date that comes sometime after the *Daubert* motions and all of

22  the other motions are filed and gives me time to resolve them

23  with the hearing the Seventh Circuit probably will require me

24  to have if there's disputed issues of fact on *Daubert*.  And

25  that's all stuff you guys can plan for, I guess, and give me a

1  status report on that.  The discovery, even the expert

2  discovery, that's all going to be over here.

3          MR. NEMELKE:  Okay.

4          THE COURT:  But I have no problem with anything that

5  Judge Gilbert said about how he wants to do this.

6          You're dying to say something.  Go ahead.

7      (Laughter.)

8          THE COURT:  Do you want to say something?

9          MS. MILLER:  Yes, your Honor.  Do you want to start?

10  I'll be the floor person.

11          MS. GULLEY:  So we haven't heard this before today.

12  Obviously, to the extent we're going to have written discussion

13  about the schedule, it makes sense for us to all discuss it

14  rather than hear about it today.  But Judge St. Eve -- we

15  disagree with this refrain about what is happening to

16  Authenticom.  Judge St. Eve allowed us to take discovery.  We

17  deposed the bank.  We deposed their corporate representative.

18  We very much disagree with the statements that were just made.

19          Judge Peterson --

20          THE COURT:  They're either true or they're not.

21          MS. GULLEY:  Exactly.

22          THE COURT:  And the circumstances may have changed

23  since any discovery you did while Judge St. Eve had the case is

24  at least six months old, so that may not be accurate anymore.

25  That's something you guys can discuss, and you probably don't

1  need another round of depositions to lay those cards on the

2  table.

3        MS. GULLEY:  And we sought the additional discovery,

4  you know, for the interim period and so forth.  We don't have

5  that yet -- all of it, but you're right, there's facts and

6  there's not facts.

7        Judge Peterson in Wisconsin after the Seventh Circuit

8  ruling, however, did recognize before when he stayed the case

9  before it came here that Authenticom can't drive the bus of the

10 whole case.  And I think that Magistrate Judge Gilbert

11 recognized that we can't have it both ways.  We can take 90

12 depositions.  I mean, right now the schedule is 90 depositions

13 in six months; that's still a lot.

14       THE COURT:  Right.

15       MS. GULLEY:  And, you know, we're only talking about

16 two months.  The question isn't can Authenticom -- what's going

17 to happen forever.  It's can we extend the schedule two

18 months --

19       THE COURT:  Mm-hmm.

20       MS. GULLEY:  -- to allow for the incredible burden of

21 discovery that they're asking from truly just two defendants.

22 I mean, I know there's CVR with JV, but truly it's just us two

23 are defending all of this.

24       THE COURT:  Mm-hmm.

25       MS. GULLEY:  And so I think, you know, to the extent

23

1   we talked about moving the schedule, there's going to have to

2   be changes to the schedule.  I mean, it's inevitable.  At some

3   point somebody -- in this game of chicken -- is going to say,

4   "We can't do this."  But we're going to try.  We're going to

5   try to do it on the schedule that's been given.  But the idea

6   that we're going to be simultaneously taking care of experts

7   that are currently due in March and a response in March, and

8   there's one in April.

9           MR. NEMELKE:  March 15th.

10          MS. GULLEY:  March 15th.  And then the responses on

11  April 15th, when discovery doesn't even begin -- the first

12  deposition begins three days after the substantial completion

13  deadline of discovery from plaintiff.  So although we have

14  produced millions of pages of documents, we're not expecting to

15  see Mr. Cattrell's custodial documents and other important

16  witnesses custodial documents until October 12th.  So

17  front-loading is going to be pretty onerous on the defendants.

18  We don't even have -- we don't even know who we're deposing

19  yet.

20          MS. MILLER:  She said it very succinctly.  The problem

21  we have trying to overlap fact discovery with expert discovery

22  is just that.  We don't have discovery from a number of the

23  plaintiffs yet.  So it's very hard for us to front-load

24  schedules to prepare for experts, when we don't have discovery

25  from a number of the people that are --

24

1      THE COURT:  And if they want to move you faster,

2  they're going to have to give you what it takes.  So maybe they

3  need to move faster, too --

4      MR. NEMELKE:  Right.

5      THE COURT:  -- if that's what they want.

6      I mean all of this, that's why we're here.  We're here

7  to be the equity that solves this problem as best we can.  I

8  don't know the answer yet.  All I know is that the conversation

9  Judge Gilbert and I had before we came out was what happened

10  last Friday and the reasons for extending the discovery to

11  April 15th seemed completely sensible to me based on what he

12  told me.

13      And you guys can then figure out what happens after

14  that.  And you can, you know, -- I think it makes sense to

15  stage your depositions in a way that's most efficient.  Maybe

16  most efficient is whose documents do you already have, do them

17  first.  Maybe it's who's -- what discovery will help us move

18  the expert and the summary judgment and every other piece of

19  this case forward.  I don't know what it is.  You guys know

20  this case better than we'll ever know it.  But the only message

21  I can give is to be efficient.

22      And, you know, I don't know the facts of Authenticom

23  past what the Seventh Circuit told me.  But the Seventh Circuit

24  did say that this would be a case where the assigned judges

25  should pay more attention to expedition than other cases

1   because there's a party that may be adversely affected by

2   delay.  That's basically what they said.

3          Now, as I said, we have gotten mixed signals from the

4   plaintiffs on this.  And I previously addressed that in one of

5   my opinions, in fact.  If you want to search the opinion,

6   search for Issacharoff because that's the quote I tied to my

7   discussion.  But you guys need to work this out amongst

8   yourselves first.  Then you need to come back with a concrete

9   plan.  If you have a disagreement about what that plan ought to

10  be, that's what we're here for.

11         MR. NEMELKE:  Just one thing in front of Authenticom.

12  We're doing coordinated discovery at defendants' insistence.

13  Authenticom wanted an offering, an exit, so they could move

14  more quickly.  The fact that -- Authenticom has never even been

15  saying that it should take all of this burdensome discovery to

16  slow things down.  It is because we are seeking coordinated,

17  unified discovery on behalf of the entire industry that

18  Authenticom is in the middle of --

19         THE COURT:  Yeah.  But you got that not only because

20  of what the defendants wanted, you got that because the JPML

21  ordered that.

22         MR. NEMELKE:  Exactly.

23         MS. GULLEY:  And they represent all of those car --

24         THE COURT:  The JPML is also like we are, they're in

25  the middle.  And, you know, I think your other clients might

26

1    not want to go off the streamlined version of this case that

2    Authenticom would want, and that's something you guys are going

3    to have to work towards.

4         MR. NEMELKE:  I can speak on behalf of the vendor

5    class and behalf of my client that they absolutely want the

6    quicker schedule.  They are suffering, too.

7         THE COURT:  Then that's when you need to stake a

8    consistent position on that because I don't feel like that's

9    the message we were getting since we got the case.  And I don't

10   know that you gave the message to Judge St. Eve either because

11   she did not set a shotgun schedule when she could have.  But we

12   are where we are today.

13        MR. NEMELKE:  Right.

14        THE COURT:  And what you guys need to do is come up

15   with a proposal, and if you disagree on things, you need to

16   bring them to us as quickly as you can.

17        Okay.  Judge Gilbert.

18        JUDGE GILBERT:  I almost don't know whether I should

19   take up your -- you have other cases here, right, that are

20   waiting.

21        Well, let me say two things.  I don't have to take you

22   down to my courtroom.  Let me say a couple of things.

23        We had a full and fair hearing on a lot of these

24   issues on Friday.  Full and fair, that's a stock word.  We had

25   a full hearing.  Right?  I'm still where I was at the end.

1           Things are coming out today nobody said on Friday,

2    okay?  And I still am willing to listen to arguments at a grass

3    roots level as opposed to a 30,000-foot level.  I mean, I think

4    part of the issue that I am dealing with is, for example, when

5    the plaintiffs tell me we need to take 45 depositions and we

6    want to take all of those, plus the depositions that the

7    defendants want by February 15th, without anybody telling me

8    who these deponents are and whether -- what they're necessary

9    to.  I have a hard time believing that 104 depositions need to

10   be taken in this case at the same time you're telling us that

11   we've got to get this done lickety-split.  All right?

12           So I think you need to regroup on this a little bit

13   and figure out what you want to do and how you want to do it,

14   and talk to defense counsel.  I can let it in -- the necessity

15   of doing this -- but there's cognitive dissidence when you tell

16   me you want to take 104 deposition by February 15th.  And you

17   know, you have different people on the plaintiffs' side, many

18   of them, almost all of who are represented by Keller Huber, and

19   there's -- if you tell us everybody wants to move really

20   quickly, but still take 104 depositions, then you need to tell

21   me who those people are and why they need to be deposed, and I

22   have to hear from the defendants on it.  Because there's two

23   sides to that that's of interest right now.

24           And as I said on Friday, I don't know why we have to

25   have such brain damage, if it's not necessary.  Now, if it's

28

1    necessary, I can deal with it.  But -- and I also need to

2    understand better this, you know, as Judge Dow said, about the

3    mixed signals on the Authenticom financial situation.  I

4    addressed that on Friday, and I quoted some briefs that I had.

5    And I didn't get a response to what the defendants said in

6    their brief as to plaintiffs, even though you filed a reply.

7         So, again, what I was going to tell you is I'm willing

8    to have this process continued.  All right?  If the plaintiffs

9    tell me "I can't do this in 30 depositions and here's why,"

10   then I need to know why.  If, on the other hand, you guys

11   decide to regroup and say, "I want less because I want to get

12   this thing done," and, you know, there's no God-given right to

13   depose everybody who is going to testify at trial, go to trial.

14    All right?  Take a few depositions, look at some documents,

15   take the case to trial.  You can do that, too.  So, again,

16   there's no one-size-fits-all.

17        The message I wanted to give to you is that I'm

18   willing to continue to talk to you, either on a motion for a

19   status hearing or a motion for a Rule 16 conference on

20   depositions or anything.  But some stuff has to give, depending

21   upon how we're doing.  And you have to give me enough

22   information to be able to help you and help the defendants,

23   too, make these decisions well.

24            MR. NEMELKE:  Okay.

25            THE COURT:  What I was going to say is we ended --

1   because I had that settlement conference that I had to go

2   to -- but I wanted the message to you to be I'm willing to

3   continue to work with you on this in a constructive and

4   productive way --

5           MR. NEMELKE:  We appreciate that helpful guidance.

6           THE COURT:  -- if you give me some more information.

7   And I need the information in order to help you.  And the first

8   thing you do is you have to talk amongst yourselves, because

9   I'm going to say to you, "Did you talk?"

10          MR. NEMELKE:  Right.

11          JUDGE GILBERT:  And, you know, "Who's being

12  unreasonable here and what's the deal?"

13          MR. NEMELKE:  I understand.

14          JUDGE GILBERT:  So I tried to give some guidance on

15  Friday on a broad level, but I'm happy to get back into the

16  weeds, too, if I need to.

17          MR. NEMELKE:  Thank you for that help.

18          JUDGE GILBERT:  Thank you.

19          MS. MILLER:  Thank you.

20          THE COURT:  The one other thing I want to say for you

21  guys, if you -- when you are ready to give further input to

22  Judge Gilbert about whether you want the schedule past this

23  April 15th to stay or move, just tee it up with him on that

24  schedule.  However, in terms of a trial date, give some serious

25  thought to what you think is coming down the pike, what a

1    reasonable amount of time for me to sort that out would be.  In

2    other words, if you're going to file 20 *Daubert* motions, don't

3    set a trial date two months out.  It's not going to happen.  If

4    you're going to file two *Daubert* motions, that might be more

5    realistic.  But think about that, and then I will give you

6    three weeks of my calendar in 2020 whenever you guys want it.

7             MR. NEMELKE:  I don't want to mislead you, your Honor.

8    We actually would like to -- for now, Authenticom would like to

9    go back to Wisconsin under the MDL statute.

10            THE COURT:  Oh, you would like to be tried there.

11   Okay.  That's one of the --

12            MR. NEMELKE:  My other clients may decide to stay in

13   front of your Honor.  They're based in La Crosse, Wisconsin;

14   that's their home court.

15            THE COURT:  Remand is certainly an issue we are

16   discussing in our MDL subcommittee, and when the time comes

17   for -- when pretrial proceedings are done, if you would like to

18   be remanded to Wisconsin, you can file a motion for it and they

19   can take their position on it.

20            MS. MILLER:  And, your Honor, that's to the point that

21   Mr. Nemelke made earlier.  He wants to try to get on Judge

22   Peterson's calendar.  We obviously oppose that in light of all

23   of the things that your Honor just said in terms of we may have

24   *20 Daubert* motions.  We may have, you know, very long summary

25   judgment motions, and calling and trying to reserve three weeks

1   in Judge Peterson's calendar for some unknown date seems

2   inappropriate.

3           THE COURT:  I don't have anything to do with Judge

4   Peterson's calendar.  So if you want to call Judge Peterson,

5   you may call Judge Peterson.  He may tell you, "I can't do

6   anything until I have the cases returned to me."  And I can't

7   return the case -- I shouldn't return the case under the JPML's

8   order sending it to me until pretrial proceedings are

9   concluded.  But in terms of a motion to remand after that,

10  there's certainly a trend in the cases that would support

11  remand, and there's a trend in the cases that supports -- you

12  know, Judge Pallmeyer has gone to other states to try cases.

13  Judge Peterson actually knows a lot about this case, and so

14  there wouldn't be any reason for me to try a case in Wisconsin.

15  If you're going back to Wisconsin, he'll try the case, not me.

16  As opposed to many MDLs where the transferee judges don't know

17  anything, so it makes sense to use inter-circuit transfer.  But

18  that won't be happening in this case.  First of all, I'm in the

19  same circuit.  But if this case goes back to Wisconsin, it will

20  go back to Judge Peterson.

21          But we're way ahead of the game.  I don't control

22  Judge Peterson's calendar.  I'm not going to forbid you from

23  calling Judge Peterson.  I'm not going to order you to call

24  Judge Peterson.  He has his own life and his own trial

25  calendar.  And if you guys -- you know, do what you do there.

1    I'm not -- but I can't give you a trial date with Judge
2    Peterson.
3              MR. NEMELKE:  I just wanted permission to be able to
4    go back and ask for a trial date.
5              THE COURT:  You can do whatever you want with Judge
6    Peterson.  I don't know what he's going tell you, but I'm not
7    enjoining you from calling Judge Peterson.  Now, he may say, "I
8    have a jurisdiction problem."
9              MR. NEMELKE:  Right.
10             THE COURT:  And he will have that jurisdiction
11   problem.  I'm not going to remand the case before its time.
12             MR. NEMELKE:  Right.
13             THE COURT:  Anything else for today?
14             MS. MILLER:  I mean, your Honor, if he wants to try to
15   make an ex parte phone call, we're not looking to get a hearing
16   in front of Judge Peterson.  We're not even sure he has
17   jurisdiction to hear a motion for a trial date in light of the
18   fact that we're front of your Honor, but...
19             THE COURT:  Those are issues you guys would have to
20   sort out. I'm sure if I got a motion -- first of all, I would
21   not take a phone call.
22             MR. NEMELKE:  Yeah.  I wouldn't be calling him.
23             THE COURT:  And I'm sure you wouldn't a make a phone
24   call.  So I don't know how you do it actually because I don't
25   believe he has the case.  But you figure that out.  I hadn't

1    thought about -- obviously, I hadn't thought about it because

2    when I started to talk about getting a trial date with you

3    guys, you guys don't want me.  I got that.

4         MR. NEMELKE:  No, no.  Some of my clients might want

5    you.

6         MS. WEDGWORTH:  Your Honor, the dealership class wants

7    you.

8         (Laughter.)

9         MS. McNULTY:  This seems like an appropriate time, as

10   liaison counsel, I am proposing that we will host an in-person

11   meet and confer to work through some of these issues, and we

12   appreciate the Court's generosity in giving us guidance both

13   last week and again today.  So we'll iron some of this out.

14        THE COURT:  All I can do about Judge Peterson is -- I

15   don't know what the vehicle is, but I'm neither urging you or

16   enjoining you from having anything to do with Judge Peterson.

17        MS. McNULTY:  Thank you, your Honor.

18        THE COURT:  Well, thank you, guys.  So I will give you

19   a ruling in the next -- by next Friday, I'm assuming.  And I

20   will track you guys through Judge Gilbert.  But if you want to

21   see me on anything, you have a standing invitation to ask for a

22   status, just like you did today, anytime.

23        MR. NEMELKE:  Thank you.

24        JUDGE GILBERT:  And as for me, wait for your ruling on

25   a motion to dismiss.  Have a meet and confer.  It sounds like

34

1    it could benefit everybody to talk in person and not just raise

2    stuff here.

3              MS. McNULTY:  Yes.

4              JUDGE GILBERT:  After you have that meet and confer,

5    please put together a motion for a status hearing in front of

6    me on discovery, scheduling, and other issues.  Give me an

7    agenda for it.  I'll pick a date for it.  We'll sit down and

8    I'll give you some time so that we can work some of your stuff

9    out.  But, first, talk amongst yourselves.  Once you've done

10   that, make a motion to me and tell me what we want on the

11   agenda and then what the parties' different positions briefly

12   are on that so that we can get together and I can move you

13   forward.

14             MR. NEMELKE:  Thank you.  Appreciate that.

15             MS. MILLER:  Thank you, your Honor.

16             THE COURT:  Very good.  See you soon.  Take care,

17   everybody.

18         (Proceedings concluded.)

19                   * * * * * * * * * *

20                 C E R T I F I C A T E

21        I certify that the foregoing is a correct transcript from

22   the record of proceedings in the above-entitled matter.

23

24
     /s/Kristin M. Ashenhurst, CSR, RDR, CRR  October 15, 2018
25   Kristin M. Ashenhurst, CSR, RDR, CRR      Date
     Federal Official Court Reporter