IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC et al.*, Case No. 1:18-cv-00868 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL NON-PARTIES PURPORTEDLY REPRESENTED BY KELLOGG HANSEN TO RESPOND AND PRODUCE DOCUMENTS PURSUANT TO SUBPOENA**

Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") respectfully move for an order pursuant to Federal Rule of Civil Procedure 45 compelling two non-party subpoena recipients, Generating Dealer Traffic, LLC d/b/a/ Open Recalls ("Open Recalls"), and Ghaben Auto Group, LLC ("Ghaben"), both of whom are purportedly represented by Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg Hansen"), to promptly respond and produce relevant documents in response to subpoenas served more than ten months ago by Defendants in the *Authenticom* litigation.

As detailed below, the subpoenas are narrow in scope and seek plainly relevant documents related to the testimony that Open Recalls and Ghaben provided in support of Authenticom's pre-MDL motion for a preliminary injunction and other core issues that bear on Authenticom's claims and Defendants' defenses. Responding on behalf of Open Recalls and Ghaben, Kellogg Hansen refused to produce the requested documents and has effectively refused to meet and confer about the subpoenas entirely. Shortly before discovery was partially stayed in *Authenticom* pending MDL consolidation, Kellogg Hansen served boilerplate objections to both subpoenas. After consolidation and once the partial stay on discovery entered in the *Authenticom*

case was lifted, Defendants promptly reinitiated their efforts to meet and confer about the subpoenas. Kellogg Hansen then responded that Open Recalls and Ghaben were "still determining what their intentions are with respect to the subpoenas" and that it was "unclear if they intend to have Kellogg Hansen continue to represent them." Ex. 1 (05/15/2018 Ltr. from M. Nemelka). Defendants repeatedly asked Kellogg Hansen to confirm that they in fact continue to represent Open Recalls and Ghaben. Ex. 2 (07/27/2018 and 07/30/2018 Emails from M. Provance). To this day, Kellogg Hansen still has not confirmed that it continues to represent Open Recalls and Ghaben, putting Defendants in an impossible position: Kellogg Hansen does not substantively engage with them regarding the subpoenas, but Defendants are also barred from engaging with Open Recalls and Ghaben directly as they are nominally represented by counsel.

Defendants therefore ask the Court to (1) order Kellogg Hansen to confirm whether it in fact continues to represent Open Recalls and Ghaben and (2) order Open Recalls and Ghaben to produce responsive documents.

## I.     BACKGROUND

On May 18, 2017, Authenticom filed for a preliminary injunction in the Western District of Wisconsin, where Authenticom is headquartered.[1] In those proceedings, Authenticom relied on both the declaration and live testimony of Michael Korp, the owner of putative vendor class member Open Recalls and an employee of putative dealership class member Ghaben. *See* Korp. Decl. (*Authenticom* Dkt. 54) ¶¶ 1, 18; P.I. Hrg. Tr. 1-P-188:17, 195:13 (*Authenticom* Dkt. 162).

---

[1] The district court initially granted Authenticom's motion, based in large part on since-discredited claims by Authenticom that it faced imminent demise without immediate, Court-administered access to Defendants' respective DMSs. On November 6, 2017, the Seventh Circuit vacated the preliminary injunction. *See Authenticom* Dkt. 226. Now, a year after the Seventh Circuit's opinion and more than two years since CDK allegedly began blocking its access to the CDK DMS (and many years after Reynolds began doing the same), Authenticom remains in operation.

Defendants subpoenaed both Open Recalls and Ghaben for documents related to Mr. Korp's declaration and issues that go to the heart of this case, including: (1) Ghaben's contemplated switching of DMS providers during the relevant time period (Korp Decl. ¶¶ 20, 23; P.I. Hrg. Tr. 1-P-210:2 (*Authenticom* Dkt. 162)); (2) the availability of "manual" DMS reporting tools as an alternative to engaging third-party integrators like Authenticom (P.I. Hrg. Tr. 1-P-203–204, 206, 212 (*Authenticom* Dkt. 162)); (3) any data security, system integrity, data corruption, or DMS performance issues caused by Ghaben's use of third-party integrators (Korp Decl. ¶¶ 7, 25, 30; P.I. Hrg. Tr. 1-P-212:21 (*Authenticom* Dkt. 162)); and (4) any consideration that Open Recalls has given to joining Defendants' respective certified third-party access programs (P.I. Hrg. Tr. 1-P-205–207 (*Authenticom* Dkt. 162)). *See* Ex. 3 (Resp. to Open Recalls Subpoena); Ex. 4 (Resp. to Ghaben Subpoena); *infra* at 7–9.

On December 21 and 22, 2017, Kellogg Hansen responded to the subpoenas on behalf of Open Recalls and Ghaben, making boilerplate objections and offering only to meet and confer about each request. *See* Ex. 3 and 4.[2] Three weeks later, on January 12, 2018, the district court in *Authenticom* issued partial stay of discovery pending MDL consolidation. *See Authenticom* Dkt. 245 at 3. The stay applied to depositions, discovery of ESI, all court deadlines, and rulings on dispositive motions that were pending at the time. *Id.*

On February 1, 2018, the JPML transferred *Authenticom* to this District for coordinated pretrial proceedings. On May 7, 2018, the Court entered a case management order establishing deadlines for discovery, dispositive motions, and class certification, among others. *See* MDL Dkt. 166. The following day, on May 8, Defendants sent Kellogg Hansen a letter identifying

---

[2] Ghaben subsequently produced 93 pages, consisting of its current DMS contract with CDK. Of course, CDK already had these documents; in fact, CDK admitted them as exhibits during Mr. Korp's testimony at the preliminary injunction hearing. *See* P.I. Hrg. Tr. 1-P-212–213 (*Authenticom* Dkt. 162). They were not requested by Defendants' subpoena and are not responsive to any of its requests. *See infra* at 8–9.

outstanding discovery issues with six non-party subpoena recipients that the firm represented prior to MDL consolidation, including Open Recalls and Ghaben, and requesting to "meet and confer regarding the full scope of the outstanding requests in the Kellogg Client Subpoenas, so that we may bring any differences to the Court's attention should we be unable to resolve them." Ex. 5 at 2 (05/08/2018 Ltr. from R. MacDonald).

Kellogg Hansen responded a week later, on May 15. *See* Ex. 1 (05/15/2018 Ltr. from M. Nemelka). As to Open Recalls and Ghaben, Kellogg Hansen asserted that "given the long stay of discovery, we are still determining what their intentions are with respect to the subpoenas. It is unclear if they intend to have Kellogg Hansen continue to represent them, and we will let you know once we find out." *Id.* at 2. Kellogg Hansen further opined that a meet-and-confer was "unnecessary" but agreed to discuss the subpoenas during an upcoming meet-and-confer on a number of other issues. *Id.* During those discussions, Kellogg Hansen reiterated that until they advised otherwise, Defendants were not to contact either Open Recalls or Ghaben concerning the subpoenas directly. *See* Ex. 2.

More than two months later, Kellogg Hansen had still not clarified whether it continued to represent Open Recalls and Ghaben in connection with Defendants' subpoenas. Counsel for Defendants followed up via email on July 27, 2018:

> Additionally, we are still waiting for you to tell us, as you promised to do in May, whether Kellogg Hansen still represents third-party subpoena recipients Open Recalls and Ghaben Auto Group (whom you specifically asked us not to contact regarding their subpoenas until you had followed up about representing them).

Ex. 2 (07/27/2018 Email from M. Provance). Kellogg Hansen responded to other issues raised in Defendants' correspondence, but ignored their inquiry as to Open Recalls and Ghaben. *See id.* (07/27/2018 Email from M. Nemelka). Defendants followed up the following business day:

-4-

> [I]n May you asked us not to contact Open Recalls or Ghaben regarding their subpoenas until you had resolved whether Kellogg Hansen continues to represent them following the MDL consolidation. You still have not told us. Please let us know promptly so that we can proceed accordingly.

*Id.* (07/30/2018 Email from M. Provance). Kellogg Hansen never responded.

Defendants made one more effort to engage with Kellogg Hansen about the subpoenas, requesting that they be discussed during a meet-and-confer scheduled for November 19. *See* Ex. 8 (11/16/2018 Email from M. Provance). Kellogg Hansen responded that it was not prepared to discuss the subpoenas because Defendants had "not raised them for several months." *Id.* (11/16/2018 Email from M. Nemelka). On November 29, Defendants followed up again to attempt to discuss the subpoenas during a meet-and-confer scheduled for the following day, on November 30, noting that Kellogg Hansen had made no effort to engage with them concerning the subpoenas and *still* had not even confirmed whether they continue to represent Open Recalls and Ghaben. *Id.* (11/29/2018 Email from M. Provance). During the November 30 meet-and-confer, Kellogg Hansen did not agree to produce any documents that are responsive to the subpoenas and, moreover, could not even definitively answer whether it continues to represent Open Recalls and Ghaben. *Id.* (11/30/2018 Email from M. Provance). Accordingly, despite two attempts to meet-and-confer telephonically about the subpoenas and multiple follow-up emails, Defendants are no closer to a resolution than they were in May, when Kellogg Hansen first suggested that its continued representation of Open Recalls and Ghaben was an open question. While ostensibly offering to meet-and-confer, Kellogg Hansen has repeatedly denied Defendants' efforts to do so and for more than *seven months* the firm has evaded answering the simple question of whether it continues to represent Open Recalls and/or Ghaben.

## II. ARGUMENT

After serving a subpoena in accordance with Rule 45, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). The responding party "has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Williams v. Blagojevich*, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008). Open Recalls and Ghaben cannot come close to making that showing here.

### A. The Court Should Compel Kellogg Hansen To Disclose Whether It Represents Open Recalls And Ghaben Concerning The Subpoenas

As a preliminary matter, for any future issues arising from Open Recalls and Ghaben's compliance with the subpoenas, it appears necessary for the Court to compel Kellogg Hansen to disclose to Defendants in definite terms whether it in fact continues to represent them. So long as Kellogg Hansen continues to refuse to engage with Defendants regarding the subpoenas because it *might* no longer represent Open Recalls and Ghaben, Defendants have no recourse. On the one hand, there is Kellogg Hansen's stonewalling. On the other, Defendants are ethically constrained from contacting the non-parties about the subpoenas directly if they are represented by counsel. *See, e.g.,* Ill. R. Prof'l Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."). The Rules of Professional Conduct should be respected as a device that encourages professional and ethical standards amongst attorneys, not as a tool for gamesmanship and unnecessary delay.

### B. The Discovery Sought From Open Recalls And Ghaben Is Relevant And Narrowly Tailored To Avoid Undue Burden

Regardless of whether Kellogg Hansen continues to represent Open Recalls and Ghaben in connection with the subpoenas, the Court should compel them to produce responsive documents because they were properly served while represented by Kellogg Hansen; they likely have waived their objections; and they cannot demonstrate that the requested discovery is overly broad, unduly burdensome, or irrelevant.

As a preliminary matter, because Open Recalls and Ghaben made only a variety of nonspecific, boilerplate objections to the subpoenas, they have not met their burden and thus should be deemed to have waived any objections that they may have to the subpoenas. *See, e.g.*, *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. Dec. 12, 2006) (non-party subject to same obligations and scope of discovery under Rule 45 as if it were a party proceeding under Rule 34, under which "failure to make particularized objections to document requests constitutes a waiver of those objections"); *see also Duracell U.S. Operations, Inc. v. JRS Ventures, Inc.*, 2018 WL 704686, at *6 (N.D. Ill. Feb. 5, 2018) (boilerplate objections are tantamount to making no objection at all); *Silverman v. Motorola, Inc.*, 2010 WL 4659535, at *2 (N.D. Ill. June 29, 2010) ("Conclusory statements of hardship are not sufficient to carry this burden."); *Teton Homes Europe v. Forks RV*, 2010 WL 3715566, at *2 (N.D. Ind. Sept. 14, 2010) ("Standing alone, a blanket claim that subpoenaed information is irrelevant is insufficient to prevent its disclosure."); *Ctr. For Individual Rights v. Chevaldina*, 2017 WL 5905191, at *5 (S.D. Fla. Nov. 29, 2017) (boilerplate objections to subpoena were "improper and without merit"); *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D. Tex. Dec. 3, 2015) ("boilerplate or unsupported objections are improper under Rule 45(d)(2)(B)").

Even if Open Recalls and Ghaben's objections are preserved, "[t]he scope of material obtainable pursuant to a Rule 45 subpoena is as broad as what is otherwise permitted under Rule 26(b)(1)." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, 2017 WL 5478297, at *2 (N.D. Ill. Nov. 15, 2017) (Dow, J.) (internal punctuation omitted). As shown below, each subpoena request is narrowly tailored to seek relevant and discoverable information:

### Open Recalls Subpoena (Ex. 3)

| Subpoena Request | Relevance |
|---|---|
| **Request No. 1**: Communications between Open Recalls and Kellogg Hansen related to the *Authenticom* litigation and the Korp declaration (*Authenticom* Dkt. 54). | Documents are relevant to the basis for the testimony that Open Recalls offered (through Mr. Korp) in support of Authenticom. |
| **Request No. 2**: Documents evidencing concerns raised by Dealers regarding data security, system integrity, data corruption, or system performance, as they relate to DMS platforms. | Documents are relevant to the basis for testimony asserting that the use of third-party integrators raises no data security, system integrity, data corruption, or system performance concerns. *See* Korp. Decl. ¶¶ 7, 25, 30 (*Authenticom* Dkt. 54); P.I. Hrg. Tr. 1-P-190, 212 (*Authenticom* Dkt.162). |
| **Request No. 3**: Documents identifying all software applications provided by Open Recalls to Dealers and the number of Dealers that used or purchased the applications. | Documents are relevant to the basis for testimony asserting that Open Recalls's ability to serve its Dealer customers and expand in the market has suffered as a result of Defendants' "blocking" efforts. *See* Korp. Decl. ¶¶ 9–11, 15–16 (*Authenticom* Dkt. 54). |
| **Request No. 4–5**: Documents evidencing data access or integration fees paid by Open Recalls to DMS providers or third-party integrators and the type of data and type of integration received for the fees charged. | Documents are relevant to the basis for testimony asserting that Defendants' "blocking" efforts have caused data access or integration fees to increase dramatically and have caused the quality of data received to decline. *See* Korp. Decl. ¶¶ 12, 17, 15, 28, 31 (*Authenticom* Dkt. 54); P.I. Hrg. Tr. 1-P-194–195 (*Authenticom* Dkt.162). |
| **Request No. 6–7**: Documents related to any efforts by Open Recalls to obtain certification under CDK's 3PA program or Reynolds's RCI program. | Documents are relevant to whether Open Recalls has considered or attempted to obtain direct certification through Defendants' third-party access programs or whether it evaluated the costs of doing so. *See* P.I. Hrg. Tr. 1-P- |

| | 194–195, 205–207 (*Authenticom* Dkt.162). |
|---|---|
| **Request No. 8**: Documents related to any use of Dealer initiated reporting or "push" methods (including Reynolds's Dynamic Reporting Tool and Automated Vehicle Inventory Download) to provide data stored on CDK's or Reynolds's DMS to third parties. | Documents are relevant to the availability of or issues relating to "manual" DMS reporting tools as an alternative to engaging third-party integrators. *See* P.I. Hrg. Tr. 1-P-203–206 (*Authenticom* Dkt.162). |
| **Request No. 9–10**: All agreements between Open Recalls and any third-party data integrators and a representative sample of any agreements or authorizations between Open Recalls and its Dealers that refer to the use of third-party integrators. | Documents are relevant to the basis for testimony asserting that Authenticom acts as Ghaben's "agent" when it pulls data from Ghaben's DMS, P.I. Hrg. Tr. 1-P-196–197, 208, 215 (*Authenticom* Dkt.162), as well testimony related to data security, system integrity, data corruption, or system performance issues, *see* Korp. Decl. ¶¶ 7, 25, 30 (*Authenticom* Dkt. 54); P.I. Hrg. Tr. 1-P-190, 212 (*Authenticom* Dkt.162). |

**Ghaben Subpoena (Ex. 4)**

| Subpoena Request | Relevance |
|---|---|
| **Request No. 1**: Communications between Ghaben and Kellogg Hansen related to the *Authenticom* litigation and the Korp declaration (*Authenticom* Dkt. 54). | Documents are relevant to the basis for the testimony that Ghaben offered (through Mr. Korp) in support of Authenticom. |
| **Request No. 2**: Documents related to any decision by Ghaben to change DMS providers. | Documents are relevant to the basis for testimony asserting that changing DMS providers is exceedingly difficult and cost prohibitive. *See* Korp. Decl. ¶¶ 20, 23 (*Authenticom* Dkt. 54); P.I. Hrg. Tr. 1-P-210–211, 214–215 (*Authenticom* Dkt.162). |
| **Request No. 3, 9**: Documents related to third-party data access on Ghaben's DMS, authorizations to do so, and the methods used by Authenticom to access data from or push data back into Ghaben's DMS as well as all agreements or authorizations between Ghaben and Authenticom or DealerVault. | Documents are relevant to the basis for testimony asserting that Authenticom acts as Ghaben's "agent" when it pulls data from Ghaben's DMS, P.I. Hrg. Tr. 1-P-196–197, 208, 215 (*Authenticom* Dkt.162), as well testimony related to data security, system integrity, data corruption, or system performance issues, *see* Korp. Decl. ¶¶ 7, 25, 30 (*Authenticom* Dkt. 54); P.I. Hrg. Tr. 1-P-190, 212 (*Authenticom* Dkt.162). |
| **Request No. 4**: Documents evidencing the | Documents are relevant to the basis for the |

| | |
|---|---|
| data access or integration fees paid by Ghaben to application providers. | testimony asserting that Ghaben cannot afford the higher costs associated with Defendants' "blocking" efforts and data access and integration fees. *See* Korp. Decl. ¶¶ 27, 31, 32 (*Authenticom* Dkt. 54). |
| **Request No. 5**: Documents related to Ghaben's use of reporting tools or "push" methods to provide data stored on Ghaben's DMS to third parties. | Documents are relevant to the availability of or issues relating to "manual" DMS reporting tools as an alternative to engaging third-party integrators. *See* P.I. Hrg. Tr. 1-P-203–204, 206, 212 (*Authenticom* Dkt.162). |
| **Request No. 6–8**: Documents related to Ghaben's efforts to evade CDK's blocking of third-party access to its DMS platform; Ghaben's policies and practices on data security, protection, and privacy; problems Ghaben has experienced relating to data security, system integrity, or system performance; and any costs Ghaben has incurred in connection with such issues. | Documents are relevant to the basis for testimony asserting that the use of third-party integrators raises no data security, system integrity, data corruption, or system performance concerns. *See* Korp. Decl. ¶¶ 7, 25, 30 (*Authenticom* Dkt. 54); P.I. Hrg. Tr. 1-P-190, 212 (*Authenticom* Dkt.162). |

Given the clear relevance of the requested documents, Open Recalls and Ghaben's boilerplate objections that the discovery sought is "unduly burdensome" or "seeks competitively sensitive information" are meritless. As to the purported burden, neither Open Recalls nor Ghaben have substantiated its burden objections with any specifics, much less the particularized showing that is required. *See, e.g.*, *Duracell*, 2018 WL 704686, \*6. Further, despite their status as non-parties to the litigation, Open Recalls and Ghaben both injected themselves into these proceedings voluntarily by offering testimony in support of Authenticom's preliminary injunction motion. Defendants are entitled to seek discovery into the basis for that testimony and for documents within their possession, custody, or control that might undermine it.

Finally, as to the purportedly "confidential" nature of any information requested by the subpoenas, the Agreed Confidentiality Order in place (MDL Dkt. 104) fully addresses any legitimate concerns that Open Recalls and Ghaben might have. *See, e.g.*, *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL148252, at \*6 (N.D. Ill. Jan. 18, 2011); *JAB Distributors,*

*LLC v. London Luxury, LLC*, 2010 WL 4008193, at *4 (N.D. Ill. Oct 13, 2010) (St. Eve, J.). Indeed, Plaintiffs in this MDL have subpoenaed largely the same type of pricing and product information from numerous non-parties. *See* Ex. 6 (example of subpoena issued to non-party putative vendor class member Max Digital, LLC); Ex. 7 (example of subpoena issued to non-party putative dealer class member Lithia Motors, Inc.).

## III.     CONCLUSION

For the foregoing reasons, the Court should (1) order Kellogg Hanson to disclose, going forward, whether it represents Open Recalls and Ghaben in connection with any issues related to their compliance with Defendants' subpoenas and (2) compel production of documents that are responsive to Defendants' subpoenas to the non-parties.

Dated: November 30, 2018

*/s/ Aundrea K. Gulley*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
333 S. Hope St., 43rd Floor
Los Angeles, CA 90071
(213) 617-4206
lcaseria@sheppardmullin.com

Dylan I. Ballard
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
Four Embarcadero Center., 17th Floor
San Francisco, CA 94111
(415) 434-9100
dballard@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

Respectfully submitted,

*/s/ Matthew D. Provance*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant CDK Global, LLC*

## **CERTIFICATE OF SERVICE**

I, Matthew D. Provance, an attorney, hereby certify that on November 30, 2018, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL NON-PARTIES PURPORTEDLY REPRESENTED BY KELLOGG HANSEN TO RESPOND AND PRODUCE DOCUMENTS PURSUANT TO SUBPOENA**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Matthew D. Provance*
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mprovance@mayerbrown.com