# EXHIBIT 1

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

May 15, 2018

*Via Electronic Mail*

Brian T. Ross, Esq.
Ross MacDonald
Gibbs & Bruns LLP
1100 Louisiana
Suite 5300
Houston, TX 77002

Re:  *In re: Dealer Management Systems Antitrust Litigation*, MDL No. 2817

Dear Brian and Ross:

I write in response to your letter regarding Reynolds' subpoenas to AutoLoop, LLC; Cox Automotive, Inc.; DealerTrack; Inc.; Open Recalls, Inc.; Ghaben Auto Group LLC; and Authenticom Services, LLC.  I also write regarding your refusal to discuss the issues raised in my May 11th letter (which outlined several issues with respect to Defendants' document productions) until Defendants themselves can prepare a letter with issues they would like to discuss relating to Authenticom's document productions.

**Discovery from Parties and Third Parties.**  With respect to AutoLoop, Cox Automotive, and DealerTrack, they are each now plaintiffs in this MDL.  The Court has set May 25, 2018 as the date when document requests are due for them (and from them).  It appears that Reynolds is trying to short-circuit that process by having these MDL parties respond to Reynolds' document requests first.  Instead, the proper course is to evaluate and discuss Defendants' document requests together, in accordance with the deadlines in the Case Management Order.  Responding to and discussing document requests, custodians, and search terms piecemeal party-by-party – first from Reynolds and then from CDK – is not how Defendants themselves have advocated document discovery should go.

With respect to Authenticom Services, LLC, that entity does not have documents separate from Authenticom, Inc.  We will produce Authenticom Services, LLC documents, if there are any, as part and parcel of the Authenticom, Inc. productions.

Finally, with respect to Ghaben Auto and Open Recalls, given the long stay of discovery, we are still determining what their intentions are with respect to the subpoenas. It is unclear if they intend to have Kellogg Hansen continue to represent them, and we will let you know once we find out.

Given the foregoing, we do not believe a call is still necessary on the subpoenas. If you disagree, we can discuss on the call this Friday. *See infra*.

**Call to Discuss Discovery Issues Raised in my May 11th Letter.** We look forward to discussing the issues raised in my May 11th letter. We proposed a call for this Tuesday or Wednesday. You responded by proposing Friday because you wanted more time to prepare a letter from Defendants on issues you would like to discuss with respect to Authenticom's RFP responses. So that we have sufficient time to evaluate the substance of any letter before Friday's call, please send the letter today.

We note that while we are willing to wait for Defendants this time, this is not how the process should work going forward. Now that the Court has largely denied Defendants' motions to dismiss (this MDL's conspiracy, monopolization, and other claims are going forward), in addition to having set a schedule with firm deadlines (a schedule advocated by Defendants), we as MDL Plaintiffs cannot tolerate any continued slow-rolling by Defendants.

We look forward to receiving your letter today. As for the proposed call on Friday, we are available at 10:00 a.m. EST. If you could circulate a dial-in, we would appreciate it.

Very truly yours,

*s/ Michael N. Nemelka*

Michael N. Nemelka

CC:     MDL Counsel Email List

2

# GZJ KDKV'4"

## Provance, Matthew D.

| | |
|---|---|
| **From:** | Provance, Matthew D. |
| **Sent:** | Monday, July 30, 2018 12:25 PM |
| **To:** | Nemelka, Michael N. |
| **Cc:** | Miller, Britt M.; SERVICE-EXTERNAL-DMS-MDL; Marovitz, Andrew S.; Ryan, Mark; Leo Caseria; Brian T. Ross; Aundrea K Gulley |
| **Subject:** | RE: In re DMS MDL |

Mike –

Like Reynolds, we are working hard to respond to the issues we discussed concerning the non-dealers' RFPs and intend to serve a letter today—but not by the noon (Eastern) "deadline" that you purported to give us. Once we serve our letter, we can schedule a further meet-and-confer.

As to the balance of your email, I think the record speaks for itself as to the parties' respective levels of engagement and the timeliness of their responses to issues that have been raised in the course of discovery. We don't need to indulge in further debate about it. That said, in May you asked us not to contact Open Recalls or Ghaben regarding their subpoenas until you had resolved whether Kellogg Hansen continues to represent them following the MDL consolidation. You still have not told us. Please let us know promptly so that we can proceed accordingly.

Thanks,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Friday, July 27, 2018 4:41 PM
**To:** Provance, Matthew D.
**Cc:** Miller, Britt M.; SERVICE-EXTERNAL-DMS-MDL; Marovitz, Andrew S.; Ryan, Mark; Leo Caseria; Brian T. Ross; Aundrea K Gulley
**Subject:** RE: In re DMS MDL

Matt and Leo –

We need your letters with Defendants' final positions on the disputed issues by Monday at noon ET, if you are not going to provide them today, as we requested and as is more than reasonable. We can then meet and confer on Monday at 3:00 p.m. ET. Does that work for you? Tuesday does not work for us.

Matt's justifications for not providing a timely response are unfortunate and have introduced counterproductive elements into these MDL-wide discovery discussions. Contrast Defendants' actions with those of the Plaintiffs: we met and conferred with CDK on Monday regarding its various issues with the Individual Plaintiffs' discovery responses; *three days later* – earlier than we had promised – we provided written responses following up on our meet and confer. We did that in response to Andy Marovitz's request for a prompt response by the end of the week, and in recognition of the burden we share in finalizing disputes in advance of the August 6th motion to compel deadline. It is only fair and right that we provide such timely responses given the case deadlines.

CDK, on the other hand, has done the opposite. We met and conferred with CDK last Thursday – over a week ago and days before we met and conferred on CDK's issues – and we still have no response. Moreover, we did not hold up our response to CDK's issues, even though CDK is not timely responding to our issues. In contrast, Matt's email brought up diversionary items that are completely beside the point. Take Open Recalls and Ghaben Auto Group – we told you that these third parties had not decided whether to retain us. But what does that have to do with whether CDK will respond to the issues raised in our meet and confer? Similarly, we told you that there have been complications processing the huge volume of documents collected from MVSC, and we are working around the clock trying to address these issues. But what does that have to do with whether CDK will respond to the issues raised in our meet and confer? As for our letter following up on the meet and confer, as a courtesy we provided Bates numbers of specific documents and other information you requested, but such information has nothing to do with whether CDK can timely respond to the many open issues currently in dispute.

As I have stated throughout these discussions, what all parties need is clarity on where we have final disputes so that we can prepare the necessary motions to compel. If we can find common ground and avoid motions to compel, that would be great. But where we cannot reach a compromise, we need Defendants' positions so that we actually know where we have disagreement.

We therefore ask Defendants to provide their letters as soon as possible, and no later than Monday at noon ET. And in those letters, please provide clear explanations of Defendants' final positions so that we can have an efficient and meaningful meet and confer on Monday at 3:00 p.m. If Monday at 3:00 p.m. does not work for Defendants, please identify a time later that same day; we will make ourselves available as Tuesday does not work for us.

Thanks,
Mike

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Friday, July 27, 2018 11:30 AM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Leo Caseria <LCaseria@sheppardmullin.com>; Brian T. Ross <bross@gibbsbruns.com>; Aundrea K Gulley <agulley@gibbsbruns.com>
**Subject:** Re: In re DMS MDL

Mike –

We received your letter. Thank you for the additional information concerning non-Dealer Plaintiffs' RFPs 47, 65, 66, 79, and 95 to CDK. As I think you know, I am traveling overseas this week and returning over the weekend, so we will not be responding substantively to those Requests and the others discussed during our meet-and-confer by today, as your letter demands (nor did I promise you a response by then).

It's surprising that you are making demands for responses when we have yet to receive an initial response (much less a meet-and-confer) regarding the ESI search terms that Defendants proposed for your client MVSC on 05/25, which was over 60 days ago. And we will not be able to meaningfully meet and confer with your other clients Cox and AutoLoop on CDK's RFPs until next week, because of Cox and AutoLoop's strategy of broadly objecting and withholding from many of their discovery responses any explanation of what they intended to produce, until last night's letter (which we are

reviewing).  Additionally,we are still waiting for you to tell us, as you promised to do in May, whether Kellogg Hansen still represents third-party subpoena recipients Open Recalls and Ghaben Auto Group (whom you specifically asked us not to contact regarding their subpoenas until you had followed up about representing them).

We intend to serve a letter regarding the non-Dealer Plaintiffs' RFPs on Monday. I understand that Reynolds intends to respond to the non-Dealer Plaintiffs' RFPs to Reynolds on Monday as well.

Matt

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

On Jul 26, 2018, at 11:54 PM, Nemelka, Michael N. <mnemelka@kellogghansen.com> wrote:

Dear Britt and Brian,

Please see the attached letter regarding document custodians.

Thanks,
Mike

**From:** Miller, Britt M. [mailto:BMiller@mayerbrown.com]
**Sent:** Tuesday, July 24, 2018 8:34 PM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>; Leo Caseria <LCaseria@sheppardmullin.com>; Brian T. Ross <bross@gibbsbruns.com>; Aundrea K Gulley <agulley@gibbsbruns.com>; Provance, Matthew D. <MProvance@mayerbrown.com>
**Subject:** RE: In re DMS MDL

Counsel –

Please see the attached letter regarding document custodians for Cox Automotive, AutoLoop, and Authenticom.

Regards – Britt

_____

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

3

**From:** Provance, Matthew D.
**Sent:** Thursday, July 12, 2018 2:10 PM
**To:** Nemelka, Michael N.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Marovitz, Andrew S.; Ryan, Mark; Leo Caseria; Brian T. Ross; Aundrea K Gulley
**Subject:** RE: In re DMS MDL

Counsel, please see the attached letter regarding document custodians.

Matt Provance

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Thursday, June 14, 2018 12:46 PM
**To:** SERVICE-EXTERNAL-DMS-MDL
**Subject:** In re DMS MDL

Dear Counsel,

Please see the attached letter regarding custodians and other matters discussed on our call yesterday.

Thanks,
Mike

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC 20036
Direct: (202) 326-7932
mnemelka@kellogghansen.com

NOTICE: This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication. Thank you.

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Information about how we handle personal information is available in our Privacy Notice.

<2018 07 26 Letter re Custodians.pdf>

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

AUTHENTICOM, INC.,

                 Plaintiff,                      Case No. 17-cv-318-jdp

      vs.

CDK GLOBAL, LLC; and THE REYNOLDS
AND REYNOLDS COMPANY,

                 Defendants.

**OPEN RECALLS INC.'S OBJECTIONS AND RESPONSES TO**
**DEFENDANT CDK GLOBAL, LLC'S**
**RULE 45 SUBPOENA**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Generating Dealer Traffic, LLC d/b/a Open Recalls ("Open Recalls") hereby serves these Objections and Responses to Defendant CDK Global, LLC's ("CDK") Rule 45 Subpoena. Open Recalls reserves the right to supplement its responses or document production if it learns of additional information or responsive documents. Any production of documents is subject to the Protective Order.

## GENERAL OBJECTIONS AND RESPONSES

Open Recalls makes the following general objections to CDK's definitions, instructions, and document requests ("Requests"), which are hereby incorporated by reference and made part of Open Recalls' response to each and every individually numbered request for production as if fully set forth therein. Open Recalls reserves the right to supplement, revise, correct, clarify, or otherwise modify its objections and responses to each Request. Open Recalls also reserves the right to assert any other applicable objections to these Requests, and to object to any other request relating to the subject matter of the responses herein. Open Recalls' response to any of the Requests is not a waiver of any of these rights.

1.      Open Recalls has not completed its investigations or discovery with respect to the information and facts that may be discoverable or relevant in this Action.  Open Recalls reserves the right to supplement or amend its responses set forth below should additional responsive or relevant information or documents be discovered as its investigation proceeds.

2.      Open Recalls is not a party to this Action.  It objects to CDK's Requests to the extent they seek disproportionate discovery from Open Recalls as a non-party or seek information that should be sought from the parties to this Action.

3.      Open Recalls objects that CDK has not provided sufficient time to respond to the subpoena.  The subpoena was served to third-party Open Recalls on December 6, 2017, with a return date of December 21, 2017.

4.      Open Recalls objects to CDK's Requests to the extent they seek competitively sensitive information from Open Recalls.

5.      Open Recalls objects to CDK's Requests and their accompanying instructions and definitions to the extent that they seek discovery of information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, or other applicable privileges and protections against disclosures.  Open Recalls will not disclose or produce information protected by any such privilege or doctrine.

6.      Open Recalls objects to CDK's Requests and their accompanying instructions and definitions to the extent that they seek information that exceeds the permissible scope of discovery, including information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7.     Open Recalls objects to CDK's Requests and their accompanying instructions and definitions to the extent they attempt to impose duties upon Open Recalls that are not provided for by the Federal Rules of Civil Procedure, or any other applicable law or rule.

8.     Open Recalls objects to CDK's Requests and their accompanying instructions and definitions to the extent they call for the production of documents not in the possession, custody, or control of Open Recalls.

9.     Open Recalls objects to CDK's Requests and their accompanying instructions and definitions to the extent the answers sought may be derived from publicly available information, where the burden of deriving the responsive information is substantially the same for CDK as it is for Open Recalls.

10.     Open Recalls objects to CDK's Requests and their accompanying instructions and definitions to the extent they seek documents and information already in CDK's possession, custody, or control.

11.     Open Recalls objects to CDK's Requests and their accompanying instructions and definitions to the extent that they call for information not kept by Open Recalls in the ordinary course of business.

12.     Open Recalls objects to CDK's Requests to the extent they seek the disclosure of trial preparation or expert documents prior to the dates fixed for such disclosure in this case. Any disclosure of such documents is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other protection.

13.     Open Recalls objects to CDK's Requests to the extent they seek documents that are publicly available or otherwise equally available to CDK from other sources.

14.      Open Recalls objects to CDK's Requests to the extent they contain no temporal limitation.  Unless otherwise stated, Open Recalls' response will relate to the time period January 1, 2013, to the present.

15.      Open Recalls objects to CDK's Requests to the extent they request or call for the provision of documents covered by a Non-Disclosure Agreement or other contract barring dissemination.

16.      Open Recalls objects to the "Definitions" and "Instructions" to the extent they purport to change the common meaning of the English language with regard to any word or phrase.

17.      Open Recalls objects to the definition of the terms "Open Recalls," "you" and "your" to the extent those terms purport to include documents from legal entities, employees, agents, officers, or directors of entities other than Open Recalls.

18.      Open Recalls objects to CDK's Requests to the extent they seek information that is more appropriately sought through another discovery device.

19.      Open Recalls objects to CDK's Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this Action.

20.      Open Recalls objects to CDK's Requests as overly broad and unduly burdensome to the extent that they call for the production of "all" documents when documents "sufficient to show" would suffice to provide the relevant facts.

21.      Open Recalls objects to CDK's Requests, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, and/or do not specify the documents sought with sufficient

particularity. Open Recalls will use reasonable diligence in interpreting CDK's Requests and providing responsive information or documents.

22.     Open Recalls disclaims any suggested obligation to create documents in response to the Requests.

23.     Open Recalls' productions are subject to any agreement among the parties as to the relevant time period, the identity of custodians' files and repositories to be searched, and search terms.

24.     By making the accompanying responses and objections to the Requests, Open Recalls does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this Action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Open Recalls provides the responses and objections herein without in any way implying that they consider the Requests and responses to be relevant to any claims or defenses asserted in this Action or proportional to the needs of this Action.

25.     A response to a Request indicating that documents will be produced shall not be deemed or construed to suggest that there are, in fact, responsive documents, that Open Recalls performed any of the acts described in the Requests, or that Open Recalls acquiesced in the characterization of the conduct or activities contained in the Request or any definitions and/or instructions applicable to the Request.

## **OPEN RECALLS' STATEMENT REGARDING RESPONSES**

1.     Open Recalls states that its objections and responses to the Requests are based upon information presently available and specifically known to them. Open Recalls expressly reserves the right to amend, supplement, or otherwise modify its objections, responses, and

document productions as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

2.     Where Open Recalls states that it will produce responsive, non-privileged documents pursuant "to a diligent search," this search will primarily include a search of the hard copy and electronically stored information of the custodians and repositories agreed to by the parties.  Where appropriate, Open Recalls will also search non-custodial files (such as centrally-maintained drives and files) reasonably expected to contain responsive, non-duplicative documents.  When searching emails and other voluminous electronically stored information, Open Recalls may use a set of search terms agreed to by the parties.

## OPEN RECALLS' RESPONSES AND SPECIFIC OBJECTIONS TO CDK'S DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

Documents and Communications related to the Lawsuit, including but not limited to:  (a) all drafts of the Declaration; (b) all communications related to the Declaration; (c) all documents considered or relied upon in connection with the Declaration; and (d) all communications with (i) Authenticom, (ii) Cottrell, (iii) Godfrey & Kahn, S.C., (iv) Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., and (v) any Vendors or Dealers.

**Response:**  Open Recalls incorporates by reference each of the General Objections set forth above.   Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action.  Open Recalls further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Open Recalls to create documents not presently in existence.  Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Open Recalls further

objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents or communications. Open Recalls objects to the terms "related to the Lawsuit" and "considered or relied upon" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 2:**

Documents and Communications that evidence any complaints or concerns raised by Dealers regarding data security, system integrity, data corruption, or system performance, as they relate to DMS platforms or access by Open Recalls to any DMS platforms.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Open Recalls to create documents not presently in existence. Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls objects to the term "complaints or concerns" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

7

**DOCUMENT REQUEST NO. 3:**

Documents sufficient to identify all software application products Open Recalls offered and sold or otherwise provided to Dealers and the number of Dealer customers (indicating by Dealer rooftop, franchise, or other) that purchased or used those application products during each year of the Relevant Time Period.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Open Recalls to create documents not presently in existence. Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments sufficient to identify" the requested information. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 4:**

Documents sufficient to show the data access or data integration fees or charges paid by Open Recalls to DMS providers and/or third party data integrators in connection with sales of Open Recall's software application products to Dealers during the Relevant Time Period.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is

disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Open Recalls to create documents not presently in existence. Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments sufficient to show" the requested information. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 5:**

Documents sufficient to show the data elements and type of integration ("real time," daily batch, hourly batch, write-back, etc.) received for the fees or charges that are responsive to Request No. 4.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Open Recalls to create documents not presently in existence. Open Recalls further

objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments sufficient to show" the requested information. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

## DOCUMENT REQUEST NO. 6:

Documents and Communications related to any actual or contemplated effort by Open Recalls to join or otherwise obtain certification under CDK's 3PA program.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls objects to the term "contemplated effort" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 7:**

Documents and Communications related to any actual or contemplated effort by Open Recalls to join or otherwise obtain certification under Reynolds's RCI program.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls objects to the term "contemplated effort" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 8:**

Documents sufficient to show any actual or contemplated use of Dealer initiated reporting and/or "push" methods (including Reynolds's Dynamic Reporting Tool and Automated Vehicle Inventory Download) to provide data stored on CDK's or Reynolds's DMS to third-parties.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the basis that it is overly

broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments sufficient to show" the requested information. Open Recalls objects to the terms "contemplated use" and "Dealer initiated reporting and/or 'push' methods" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 9:**

All agreements between (i) Open Recalls and (ii) Authenticom or any other third party data integrator(s).

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Open Recalls to create documents not presently in existence. Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[a]ll agreements." Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 10:**

A representative sample of any agreements and/or authorization documents between Open Recalls and its Dealers customers that discuss or refer to the use of third party data integrators.

**Response:** Open Recalls incorporates by reference each of the General Objections set forth above. Open Recalls further objects that this Request seeks discovery that is disproportionate to Open Recalls' status as a non-party and that should be sought from the parties to this Action. Open Recalls further objects that this Request seeks competitively sensitive information. Open Recalls further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Open Recalls objects to the terms "representative sample" and "discuss or refer to" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Open Recalls further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Open Recalls is willing to meet and confer regarding this Request.

Dated:  December 21, 2017               Respectfully submitted,

*s/ Daniel V. Dorris*

Michael N. Nemelka *(pro hac vice)*
Aaron M. Panner *(pro hac vice)*
David L. Schwarz *(pro hac vice)*
Kevin J. Miller *(pro hac vice)*
Derek T. Ho *(pro hac vice)*
Daniel V. Dorris *(pro hac vice)*
Joshua Hafenbrack *(pro hac vice)*
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax:     (202) 326-7999
mnemelka@kellogghansen.com
apanner@kellogghansen.com
dschwarz@kellogghansen.com
kmiller@kellogghansen.com
dho@kellogghansen.com
ddorris@kellogghansen.com
jhafenbrack@kellogghansen.com

*Attorneys for Open Recalls Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 21, 2017, I caused a true and correct copy of the foregoing Objections and Responses to Defendant CDK Global, LLC's Rule 45 Subpoena to be served by email upon the following individuals:

Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
Jeffrey A. Simmons (jsimmons@foley.com)
Joseph S. Harper (jharper@foley.com)
Aundrea K. Gulley (agulley@gibbsbruns.com)
Brian T. Ross (bross@gibbsbruns.com)
Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
Ross M. MacDonald (rmacdonald@gibbsbruns.com)
Justin D. Patrick (jpatrick@gibbsbruns.com)
Kathy D. Patrick (kpatrick@gibbsbruns.com)
Michael P. A. Cohen (mcohen@sheppardmullin.com)
Amar S. Naik (anaik@sheppardmullin.com)
James L. McGinnis (jmcginnis@sheppardmullin.com)
John S. Skilton (jskilton@perkinscoie.com)
Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
Michelle M. Umberger (mumberger@perkinscoie.com)
Brandon M. Lewis (blewis@perkinscoie.com)
Jesse J. Bair (jbair@perkinscoie.com)
Kathleen A. Stetsko (kstetsko@perkinscoie.com)

*s/ Daniel V. Dorris*
Daniel V. Dorris

# EXHIBIT 6

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

AUTHENTICOM, INC.,

                Plaintiff,                Case No. 17-cv-318-jdp

     vs.

CDK GLOBAL, LLC; and THE REYNOLDS
AND REYNOLDS COMPANY,

                Defendants.

**GHABEN AUTO GROUP, LLC'S OBJECTIONS AND RESPONSES TO
DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S
RULE 45 SUBPOENA**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Ghaben Auto Group, LLC ("Ghaben") hereby serves these Objections and Responses to The Reynolds and Reynolds Company's ("Reynolds") Rule 45 Subpoena. Ghaben reserves the right to supplement its responses or document production if it learns of additional information or responsive documents. Any production of documents is subject to the Protective Order.

<u>**GENERAL OBJECTIONS AND RESPONSES**</u>

Ghaben makes the following general objections to Reynolds' definitions, instructions, and document requests ("Requests"), which are hereby incorporated by reference and made part of Ghaben's response to each and every individually numbered request for production as if fully set forth therein. Ghaben reserves the right to supplement, revise, correct, clarify, or otherwise modify its objections and responses to each Request. Ghaben also reserves the right to assert any other applicable objections to these Requests, and to object to any other request relating to the subject matter of the responses herein. Ghaben's response to any of the Requests is not a waiver of any of these rights.

1.     Ghaben has not completed its investigations or discovery with respect to the information and facts that may be discoverable or relevant in this Action.  Ghaben reserves the right to supplement or amend its responses set forth below should additional responsive or relevant information or documents be discovered as its investigation proceeds.

2.     Ghaben is not a party to this Action.  It objects to Reynolds' Requests to the extent they seek disproportionate discovery from Ghaben as a non-party or seek information that should be sought from the parties to this Action.

3.     Ghaben objects that Reynolds has not provided sufficient time to respond to the subpoena.  The subpoena was served to third-party Ghaben on December 7, 2017, with a return date of December 22, 2017.

4.     Ghaben objects to Reynolds' Requests to the extent they seek competitively sensitive information from Ghaben.

5.     Ghaben objects to Reynolds' Requests and their accompanying instructions and definitions to the extent that they seek discovery of information or documents protected by the attorney-client privilege, the attorney work-product doctrine, the common interest privilege, or other applicable privileges and protections against disclosures.  Ghaben will not disclose or produce information protected by any such privilege or doctrine.

6.     Ghaben objects to Reynolds' Requests and their accompanying instructions and definitions to the extent that they seek information that exceeds the permissible scope of discovery, including information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

7.     Ghaben objects to Reynolds' Requests and their accompanying instructions and definitions to the extent they attempt to impose duties upon Ghaben that are not provided for by the Federal Rules of Civil Procedure, or any other applicable law or rule.

8.     Ghaben objects to Reynolds' Requests and their accompanying instructions and definitions to the extent they call for the production of documents not in the possession, custody, or control of Ghaben.

9.     Ghaben objects to Reynolds' Requests and their accompanying instructions and definitions to the extent the answers sought may be derived from publicly available information, where the burden of deriving the responsive information is substantially the same for Reynolds as it is for Ghaben.

10.    Ghaben objects to Reynolds' Requests and their accompanying instructions and definitions to the extent they seek documents and information already in Reynolds' possession, custody, or control.

11.    Ghaben objects to Reynolds' Requests and their accompanying instructions and definitions to the extent that they call for information not kept by Ghaben in the ordinary course of business.

12.    Ghaben objects to Reynolds' Requests to the extent they seek the disclosure of trial preparation or expert documents prior to the dates fixed for such disclosure in this case. Any disclosure of such documents is inadvertent and shall not constitute a waiver of any privilege, doctrine, or other protection.

13.    Ghaben objects to Reynolds' Requests to the extent they seek documents that are publicly available or otherwise equally available to Reynolds from other sources.

14.    Ghaben objects to Reynolds' Requests to the extent they contain no temporal limitation.  Unless otherwise stated, Ghaben's response will relate to the time period January 1, 2013, to the present.

15.    Ghaben objects to Reynolds' Requests to the extent they request or call for the provision of documents covered by a Non-Disclosure Agreement or other contract barring dissemination.

16.    Ghaben objects to the "Definitions" and "Instructions" to the extent they purport to change the common meaning of the English language with regard to any word or phrase.

17.    Ghaben objects to the definition of the terms "Ghaben," "you" and "your" to the extent those terms purport to include documents from legal entities, employees, agents, officers, or directors of entities other than Ghaben.

18.    Ghaben objects to Reynolds' Requests to the extent they seek information that is more appropriately sought through another discovery device.

19.    Ghaben objects to Reynolds' Requests to the extent they contain legal conclusions or the application of law to facts that are subject to dispute in this Action.

20.    Ghaben objects to Reynolds' Requests as overly broad and unduly burdensome to the extent that they call for the production of "all" documents when documents "sufficient to show" would suffice to provide the relevant facts.

21.    Ghaben objects to Reynolds' Requests, including the Definitions and Instructions, to the extent they are argumentative, prejudicial, vague, ambiguous, duplicative, cumulative, unduly burdensome, and/or do not specify the documents sought with sufficient particularity. Ghaben will use reasonable diligence in interpreting Reynolds' Requests and providing responsive information or documents.

22.     Ghaben disclaims any suggested obligation to create documents in response to the Requests.

23.     Ghaben's productions are subject to any agreement among the parties as to the relevant time period, the identity of custodians' files and repositories to be searched, and search terms.

24.     By making the accompanying responses and objections to the Requests, Ghaben does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this Action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Ghaben provides the responses and objections herein without in any way implying that they consider the Requests and responses to be relevant to any claims or defenses asserted in this Action or proportional to the needs of this Action.

25.     A response to a Request indicating that documents will be produced shall not be deemed or construed to suggest that there are, in fact, responsive documents, that Ghaben performed any of the acts described in the Requests, or that Ghaben acquiesced in the characterization of the conduct or activities contained in the Request or any definitions and/or instructions applicable to the Request.

### GHABEN'S STATEMENT REGARDING RESPONSES

1.     Ghaben states that its objections and responses to the Requests are based upon information presently available and specifically known to them.  Ghaben expressly reserves the right to amend, supplement, or otherwise modify its objections, responses, and document productions as it believes to be necessary and appropriate in light of additional information, documents or materials that are discovered or disclosed in the course of these proceedings.

2.     Where Ghaben states that it will produce responsive, non-privileged documents pursuant "to a diligent search," this search will primarily include a search of the hard copy and electronically stored information of the custodians and repositories agreed to by the parties. Where appropriate, Ghaben will also search non-custodial files (such as centrally-maintained drives and files) reasonably expected to contain responsive, non-duplicative documents. When searching emails and other voluminous electronically stored information, Ghaben may use a set of search terms agreed to by the parties.

## GHABEN'S RESPONSES AND SPECIFIC OBJECTIONS TO REYNOLDS' DOCUMENT REQUESTS

### DOCUMENT REQUEST NO. 1:

Documents and Communications related to the Lawsuit, including but not limited to: (a) all drafts of the Declaration; (b) all communications related to the Declaration; (c) all documents considered or relied upon in connection with the Declaration; and (d) all communications with (i) Authenticom, (ii) Cottrell, (iii) Godfrey & Kahn, S.C., (iv) Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C., and (v) any Vendors or Dealers.

**Response:**  Ghaben incorporates by reference each of the General Objections set forth above.  Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action.  Ghaben further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Ghaben to create documents not presently in existence.  Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Ghaben further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "all" documents or communications.  Ghaben objects to the terms "related to the Lawsuit" and "considered or relied upon" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence.  Ghaben further objects

to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

## DOCUMENT REQUEST NO. 2:

Agreements, quotes, terms sheets, analyses, and communications (both internal and external) related to any actual or contemplated decision by Ghaben to change DMS providers, including but not limited to any documents and communications related to the costs associated with such a change and any reasons for changing or not changing DMS providers.

**Response:** Ghaben incorporates by reference each of the General Objections set forth above. Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action. Ghaben further objects that this Request seeks competitively sensitive information. Ghaben further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Ghaben to create documents not presently in existence. Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Ghaben objects to the term "contemplated decision" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

## DOCUMENT REQUEST NO. 3:

Documents and communications related to third-party access to data on Ghaben's DMS, including but not limited to: (i) agreements with Authenticom regarding access to such DMS; (ii) any documents that establish authorization for Authenticom's access to Ghaben's DMS, or

which appoint Authenticom as an "agent" of Ghaben with respect to its DMS platform; and (iii) documents related to the means and methods through which Authenticom has accessed, obtained data from, or pushed data back into Ghaben's DMS.

      **Response:**  Ghaben incorporates by reference each of the General Objections set forth above.  Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action.  Ghaben further objects that this Request seeks competitively sensitive information.  Ghaben further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Ghaben to create documents not presently in existence.  Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

      Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

## DOCUMENT REQUEST NO. 4:

      Documents sufficient to show any monthly fees paid by Ghaben to Vendors (broken out by month and Vendor), and specifying any fees for data integration or data access to the extent such fees are separately broken out by the Vendor.

      **Response:**  Ghaben incorporates by reference each of the General Objections set forth above.  Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action.  Ghaben further objects that this Request seeks competitively sensitive information.  Ghaben further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Ghaben to create documents not presently

in existence. Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Ghaben further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments sufficient to show" the requested information. Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

## DOCUMENT REQUEST NO. 5:

Documents sufficient to show any actual or contemplated use of reporting tools and/or "push" methods by Ghaben to provide data stored on Ghaben's DMS to third-parties (including but not limited to Authenticom).

**Response:** Ghaben incorporates by reference each of the General Objections set forth above. Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action. Ghaben further objects that this Request seeks competitively sensitive information. Ghaben further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Ghaben to create documents not presently in existence. Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Ghaben further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments sufficient to show" the requested information. Ghaben objects to the terms "contemplated use of reporting tools and/or 'push' methods" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence.

Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 6:**

Documents sufficient to show Ghaben's policies and practices regarding data security, protection and/or privacy (including as they relate to third-party access to data on Ghaben's DMS), and any costs Ghaben has incurred as well as any amounts it has invested in connection with such policies and practices.

**Response:** Ghaben incorporates by reference each of the General Objections set forth above. Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action. Ghaben further objects that this Request seeks competitively sensitive information. Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Ghaben objects to the request for "any costs Ghaben has incurred as well as any amounts it has invested in connection with such policies and practices" as vague, ambiguous, overbroad, and not likely to lead to the discovery of admissible evidence. Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

**DOCUMENT REQUEST NO. 7:**

Documents and communications sufficient to show any efforts by Ghaben or Authenticom to evade CDK's efforts to block, disable or otherwise restrict third-party access to Ghaben's DMS platform, including but not limited to those describing any scripts or programs that Ghaben or Authenticom has created and/or used for such purpose, and the availability and

10

efficacy of such scripts or programs (but excluding documents consisting solely of code, scripts, algorithms, or executable programs).

**Response:** Ghaben incorporates by reference each of the General Objections set forth above. Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action. Ghaben further objects that this Request seeks competitively sensitive information. Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Ghaben further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments and communications sufficient to show any efforts" as described in the Request. Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

## DOCUMENT REQUEST NO. 8:

Documents sufficient to show any problems with or issues related to data security, system integrity, data corruption, or system performance of Ghaben's DMS platform, including but not limited to data pulled from the DMS incorrectly, provided to a Vendor incorrectly, or written back to the DMS incorrectly.

**Response:** Ghaben incorporates by reference each of the General Objections set forth above. Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action. Ghaben further objects that this Request seeks competitively sensitive information. Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Ghaben further objects to

11

this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[d]ocuments sufficient to show" the requested information. Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

## DOCUMENT REQUEST NO. 9:

Any agreements or authorization forms between Ghaben and Authenticom (or DealerVault).

**Response:** Ghaben incorporates by reference each of the General Objections set forth above. Ghaben further objects that this Request seeks discovery that is disproportionate to Ghaben's status as a non-party and that should be sought from the parties to this Action. Ghaben further objects that this Request seeks competitively sensitive information. Ghaben further objects to this Request on the grounds that it seeks the production of documents that may not be maintained in the fashion requested and would require Ghaben to create documents not presently in existence. Ghaben further objects to this Request on the basis that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Ghaben further objects to this Request as overly broad and unduly burdensome to the extent that it calls for the production of "[a]ny agreements or authorization forms." Ghaben further objects to this Request because it seeks information not relevant to any claim or defense in the pending litigation.

Subject to and without waiving the foregoing objections, Ghaben is willing to meet and confer regarding this Request.

Dated:  December 22, 2017        Respectfully submitted,

*s/ Daniel V. Dorris*

Michael N. Nemelka *(pro hac vice)*
Aaron M. Panner *(pro hac vice)*
David L. Schwarz *(pro hac vice)*
Kevin J. Miller *(pro hac vice)*
Derek T. Ho *(pro hac vice)*
Daniel V. Dorris *(pro hac vice)*
Joshua Hafenbrack *(pro hac vice)*
KELLOGG, HANSEN, TODD, FIGEL &
FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax:    (202) 326-7999
mnemelka@kellogghansen.com
apanner@kellogghansen.com
dschwarz@kellogghansen.com
kmiller@kellogghansen.com
dho@kellogghansen.com
ddorris@kellogghansen.com
jhafenbrack@kellogghansen.com

*Attorneys for Ghaben Auto Group, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2017, I caused a true and correct copy of the foregoing Ghaben Auto Group, LLC's Objections and Responses to Defendant The Reynolds and Reynolds Company's Rule 45 Subpoena to be served by email upon the following individuals:

Mark W. Ryan (mryan@mayerbrown.com)
Britt M. Miller (bmiller@mayerbrown.com)
Matthew D. Provance (mprovance@mayerbrown.com)
Jeffrey A. Simmons (jsimmons@foley.com)
Joseph S. Harper (jharper@foley.com)
Aundrea K. Gulley (agulley@gibbsbruns.com)
Brian T. Ross (bross@gibbsbruns.com)
Brice A. Wilkinson (bwilkinson@gibbsbruns.com)
Ross M. MacDonald (rmacdonald@gibbsbruns.com)
Justin D. Patrick (jpatrick@gibbsbruns.com)
Kathy D. Patrick (kpatrick@gibbsbruns.com)
Michael P. A. Cohen (mcohen@sheppardmullin.com)
Amar S. Naik (anaik@sheppardmullin.com)
James L. McGinnis (jmcginnis@sheppardmullin.com)
John S. Skilton (jskilton@perkinscoie.com)
Charles G. Curtis, Jr. (ccurtis@perkinscoie.com)
Michelle M. Umberger (mumberger@perkinscoie.com)
Brandon M. Lewis (blewis@perkinscoie.com)
Jesse J. Bair (jbair@perkinscoie.com)
Kathleen A. Stetsko (kstetsko@perkinscoie.com)

_s/ Daniel V. Dorris_
Daniel V. Dorris

14

# EXHIBIT 5



Ross M. MacDonald
Associate
rmacdonald@gibbsbruns.com
713.751.5231

May 8, 2018

*VIA EMAIL*
Michael Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215

Re:     *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL
No. 2817 (N.D. Ill.)

Dear Mike,

I write regarding several outstanding document subpoenas issued by the Reynolds & Reynolds Company ("Reynolds'") to various entities represented by Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C. ("Kellogg"). All but one of these subpoenas were served prior to the consolidation of the Authenticom matter into this proceeding and remain pending. These subpoenas (together, the "Kellogg Client Subpoenas") were served on:

- Autoloop, LLC                   (Objections received: 12/22/17)
- Cox Automotive, Inc.            (Objections received: 12/19/17)
- DealerTrack, Inc.               (Objections received: 12/19/17)
- Open Recalls Inc.;              (Objections received: 12/21/17)
- Ghaben Auto Group LLC           (Objections received: 12/22/17)
- Authenticom Services, LLC       (Objections received: 4/23/18)

In response to the Kellogg Client Subpoenas, Cox Automotive and DealerTrack both represented that they would produce responsive documents to Reynolds' Requests Nos. 1 and 5, asking for "documents sufficient to show the DealerTrack DMS's market share in the United States DMS market" and "standard form DealerTrack DMS contract[s]." To date, however, neither Cox Automotive nor DealerTrack have produced any responsive documents.

For the remainder of the requests, Cox Automotive, DealerTrack, Open Recalls, Autoloop, and Authenticom Services refused to produce any responsive documents.[1] Instead, after raising a litany of objections,[2] each of these entities offered only to meet and confer. *See*., *e.g.*, Authenticom

---

[1] The Ghaben Auto Group also refused to produce documents in their objections, but later did in fact produce a small subset of documents, though far less than what would have been responsive to the subpoena's requests.

[2] For example, DealerTrack objected to requests that asked for "all documents" as "overly broad and unduly burdensome" "when documents 'sufficient to show' would suffice to provide the relevant facts," but then simultaneously objected to requests as being similarly "overly broad and unduly burdensome to the extent that [they]

May 8, 2018
Page 2


Services, LLC's Objections and Responses (all requests) ("Subject to and without waiving the foregoing objections, Authenticom Services is willing to meet and confer regarding this Request after the stay of discovery has been lifted.").

While Reynolds recognizes that certain of these entities will shortly produce those documents previously "produced to the FTC in connection with its current investigation of Defendants," pursuant to the recently entered Case Management Order (Dkt. 166), Reynolds would nevertheless like to meet and confer regarding the full scope of the outstanding requests in the Kellogg Client Subpoenas, so that we may bring any differences to the Court's attention should we be unable to resolve them.

We are available to meet either on Friday, May 11 from 11:30am-1:00pm CST or on Monday, May 14 from 12:00pm-2:00pm CST. Please advise us of your availability. If neither of these times works for you all, please suggest a few alternative times early next week when you are available.


Sincerely,


Ross MacDonald


cc:
Derek T. Ho
Britt M. Miller

---

call[ed] for production of 'documents sufficient to show.'" *Compare* DealerTrack Responses to Rule 45 Subpoena (12-19-2017) at 4 *with id.* at 7.

# EXHIBIT 6

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| In re DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates To: THE DEALERSHIP CLASS ACTION. | ) ) ) ) ) ) ) | Assigned to: Hon. Robert M. Dow, Jr. Magistrate Judge: Hon. Jeffrey T. Gilbert |

DEALERSHIP CLASS PLAINTIFFS' NOTICE OF SUBPOENA
TO PRODUCE DOCUMENTS TO MAX DIGITAL, LLC

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, pursuant to Rules 26, 34(c) and 45 of the Federal Rules of

Civil Procedure, Dealership Class Plaintiffs ("Plaintiffs"), by and through their undersigned counsel,

will inspect and copy the documents identified in the Subpoena and Schedule A attached hereto,

which are in the possession, custody or control of the non-party listed below, at the date, time and

location listed below.  The production of documents is pursuant to the attached Subpoena that will be

issued by Plaintiffs' Counsel on behalf of the United States District Court, and subject to the

Protective Order that has been entered in the litigation.

| Producing Party | Location | Date/Time |
|---|---|---|
| MAX Digital, LLC (f.k.a INCISENT and First Look) | Milberg Tadler Phillips Grossman LLP One Pennsylvania Plaza, 19th Floor New York, NY 10119 | October 10, 2018 9:00 a.m. |

PLEASE TAKE FURTHER NOTICE that the non-party listed above, pursuant to Fed. R.

Civ. P. 45(g), may be held in contempt of Court if it fails without adequate excuse to obey the

Subpoena served upon it and that the non-party has certain legal rights in response to Plaintiffs'

Subpoena served upon it outlined in Fed. R. Civ. P. 45(d) and (e).

DATED:  September 26, 2018

**MILBERG TADLER PHILLIPS
GROSSMAN LLP**
PEGGY J. WEDGWORTH
KENT A. BRONSON
ELIZABETH MCKENNA


*/s/ Kent A. Bronson*
KENT A. BRONSON

One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Telephone: 212/594-5300

Dealership Interim Lead Class Counsel


**ROBBINS GELLER RUDMAN
& DOWD LLP**
DAVID W. MITCHELL
ALEXANDRA S. BERNAY
CARMEN A. MEDICI
LONNIE A. BROWNE
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

**ROBBINS GELLER RUDMAN
& DOWD LLP**
JAMES E. BARZ (IL Bar # 6255605)
FRANK RICHTER (IL Bar # 6310011)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)

ROBBINS GELLER RUDMAN
& DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Dealership Plaintiffs' Steering Committee

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | |
|---|---|
| In Re Dealer Management Systems Antitrust Litigation | ) |
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 1:18-cv-00864, MDL No. 2817 |
| | ) |
| | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: MAX Digital, LLC (f/k/a INCISENT and FirstLook) c/o Registered Agent, Illinois Corporation Service Group
801 Adlai Stevenson Drive, Springfield IL 62703

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Milberg Tadler Phillips Grossman, LLP One Pennsylvania Plaza, 19th Floor New York, NY 10119 | Date and Time: October 10, 2018 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

    The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: September 26, 2018

| _CLERK OF COURT_ | |
|---|---|
| | OR |
| _____ | /s/ Kent A. Bronson |
| _Signature of Clerk or Deputy Clerk_ | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Dealership Class Plaintiffs _____, who issues or requests this subpoena, are:
Kent A. Bronson, Milberg Tadler Phillips Grossman LLP, One Pennsylvania Plaza, New York, NY 10119
212-594-5300; kbronson@milberg.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:18-cv-00864, MDL No. 2817

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A
## (MAX DIGITAL, LLC (F.K.A. INCISENT AND FIRST LOOK))

**I.      DEFINITIONS**

This section sets forth specific definitions applicable to certain words and terms used herein. Unless words or terms have been given a specific definition in this section or in a specific Request, each word or term shall be given its usual and customary dictionary definition, except where a word or term has a specific customary and usage definition in your trade and industry.  In that case, the word or term shall be interpreted in accordance with the specific customary and usage definition.

1.      "You," "your" or "your company" means MAX Digital, LLC (f.k.a INCISENT and First Look) (hereinafter "MAX Digital, LLC"), including its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, or any organization or entity that it manages or controls, together with all its present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on its behalf.

2.      "3PA" refers to CDK's Third Party Access Program, the data integration service provided by CDK for accessing data on its DMS.

3.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5.      "API" shall mean Application Programming Interface.

6.      "Application" shall mean a software application that dealers use in addition to or separate from their DMS (as defined below) in the course of operating their dealerships.

7.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

8.     "CDK" shall mean CDK Global, LLC, the operating company of the publicly traded CDK Global, Inc., with its corporate headquarters and principal place of business located at 1950 Hassell Road, Hoffman Estates, Illinois 60169. "CDK" shall include the Dealer Services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, or any other predecessor to CDK. "CDK" shall also include its present or former subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants, including those of ADP's Dealer Services business or any other predecessor to CDK.

9.     "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form.  The phrase "communication between" is defined to include, but not be limited to, instances where one party to the communication addresses the other party but the other party to the communication does not necessarily respond.

10.     "Data access policies" means any policies, procedures or practices with respect to the ability of dealers to authorize independent data integrators to access data on their DMS or otherwise grant third parties access to the data on their DMS.

11.     "Data integrator(s)" shall refer to any service provider(s) that provide access by any means to dealer data on a DMS database, whether by extracting the data, accessing data through an API, writing data back into a DMS, or otherwise.  For the avoidance of doubt, "data integrator(s)" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

12.     "Data integration services" shall refer to the extracting, transforming, integrating, and/or organizing of data housed on DMS.

13.     "Dealers" or "dealerships" shall refer to businesses engaged in retail automobile sales, including, but not limited to, the Dealership Class Plaintiffs in this litigation.

14.     "DMI" shall mean Digital Motorworks, Inc., a data integrator and wholly owned subsidiary of CDK.  "DMI" shall include any of its predecessors, as well as any of its present or former subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants, including those of its predecessors.

15.     "DMS" shall mean Dealer Management Systems, the mission-critical enterprise software that manages nearly every function of a dealer's business.  DMS software handles and integrates the critical business functions of a car dealership, including sales, financing, inventory management (both vehicle and parts), repair and service, accounting, payroll, human resources, marketing, and more.  DMS also operates as a database, housing dealer data related to inventory, customer, sales, and service information.

16.     "Document" and "documents" are used in the broadest extent permitted by Rule 34(a) of the Federal Rules of Civil Procedure and include "electronically stored information" as used in Fed. R. Civ. P. 34(a)(1)(A).  Drafts or non-identical copies are separate documents within the meaning of this term.

17.     "IntegraLink" shall mean IntegraLink, a data integrator and wholly owned subsidiary of CDK.  "IntegraLink" shall include any of its predecessors, as well as any of its present or former subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants, including those of its predecessors.

18.     "Include" denotes a portion of a larger whole and is used without limitation.

19.     "Including" (in addition to its usual meanings) shall mean including, but not limited to.

20.    "MDL" or the "MDL Litigation" refers to *In re Dealer Management Systems Antitrust Litig.*, No. 1:18-cv-00864, MDL No. 2817 (N.D. Ill.), and all actions transferred, consolidated, and/or coordinated as a part of the MDL, including *Authenticom, Inc. v. CDK Global, LLC*, No. 17-cv-00318 (W.D. Wis.), *Motor Vehicle Software Corp. v. CDK Global, Inc.*, No. 2:17-cv-00896 (C.D. Cal.), *Cox Automotive, Inc. v. CDK Global, LLC*, No. 17-cv-00925 (W.D. Wis.), and *Loop LLC d/b/a AutoLoop v. CDK Global, LLC*, No. 18-cv-2521 (N.D. Ill.).

21.    "Meeting" shall mean, without limitation, any assembly, convocation, encounter, communication or contemporaneous presence (whether in person or via any electronic, computer-assisted, digital, analog, video, or telephonic method of communication) of two or more persons for any purpose, whether planned or arranged, scheduled or not.

22.    "Person" or "persons" shall mean, without limitation, any individual, corporation, partnership or any variation thereof (*e.g.*, limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, government entity, group, or other form of legal entity.

23.    "Price secrecy provision" means any contractual provision designed to prevent vendors from informing dealers or other third parties about the pricing charged under the 3PA or RCI programs or otherwise charged by CDK or Reynolds for integration or access to CDK or Reynolds DMS.

24.    "RCI" refers to Reynolds' Certified Interface Program, the data integration service provided by Reynolds for accessing data on its DMS.

25.    The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying,

projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

26.     "Reynolds" shall mean The Reynolds and Reynolds Company, an Ohio corporation with its corporate headquarters and principal place of business located at One Reynolds Way, Dayton, Ohio, 45430.  "Reynolds" shall include any of its predecessors, as well as any of its present or former subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants, including those of its predecessors.

27.     "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are independent of or unaffiliated with the DMS provider, such as Authenticom, SelectQu, Superior Integrated Solutions (SIS), and ProQuotes, among others.

28.     "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, such as inventory management, customer relationship management, and electronic vehicle registration and titling, among other functions.

29.     Any term stated in the singular includes the plural and vice versa.

30.     The use of any tense of any word includes all other tenses.

31.      Use of a certain gender is inclusive of all other genders; for instance, use of the masculine includes the feminine and neuter genders.

## II.    INSTRUCTIONS

1.     All documents shall be produced as they are maintained in the ordinary course of business, and shall be produced in their original folders, binders, covers or containers, or facsimile thereof, *i.e.*, documents maintained electronically shall be produced in the manner in which such documents are stored and retrieved.

2.      In responding to these Requests, you shall produce all responsive documents (including those stored electronically), which are in your possession, custody or control, or in the possession, custody or control of your predecessors, successors, parents, subsidiaries, divisions or affiliates, or any of your respective directors, officers, managing agents, agents, employees, attorneys, accountants or other representatives.  A document shall be deemed to be within your control if you have the right to secure the document or a copy of the document from another person having possession or custody of the document.

3.      Each Request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever and created or used for any purpose, including, without limitation, the making of notes thereon.  You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

4.      To the extent that there are documents containing information relevant to these Requests that are currently in electronic format, the documents are to be produced in their native format.

5.      Privilege logs shall be promptly provided and must be sufficiently detailed and informative to justify the privilege or protection claimed.  No generalized claims of privilege or work-product protection shall be permitted.  With respect to each document or communication for which a claim of privilege or work product is made, the asserting party must at the time of assertion identify:

(a)      The exact basis for withholding or redacting the document or communication;

(b)      The medium of such document or communication;

(c)     The general subject matter of such document or communication (such description shall not be considered a waiver of your claimed privilege or protection);

(d)     A description of the place where each copy of that document is kept, including the title or description of the file in which said document may be found and the location of such file;

(e)     Any document that was the subject of such document or communication and the present location of any such document;

(f)     All persons making or receiving the privileged or protected document or communication;

(g)     Any document which records, refers, or relates to such document or communication and the present location of any such document; and

(h)     The steps taken to ensure the confidentiality of the documents or communication, including affirmation that no unauthorized persons have received the document or communication.

6.     If a portion of any document responsive to these Requests is withheld under a claim of privilege pursuant to Instruction No. 5, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

7.     You are to produce each document requested herein in its entirety, without deletion, excision or redaction (except as qualified by Instructions Nos. 5 and 6 above), regardless of whether you consider the entire document to be relevant or responsive to the Requests.

8.     Documents attached to one another should not be separated.  If any portion of any document is responsive to any portion of the document Requests below, then the entire document, including any attachments to the document, must be produced.

9.     Whenever a document is not produced in full or is produced in redacted form, so indicate on the document and state with particularity the reason or reasons it is not being produced in

full, and describe to the best of your knowledge, information and belief, and with as much particularity as possible, those portions of the document which are not being produced.

10. If a document responsive to these Requests was at any time in your possession, custody or control but is no longer available for production, as to each such document state the following information:

(a) Whether the document is missing or lost;

(b) Whether it has been destroyed;

(c) Whether the document has been transferred or delivered to another person, and, if so, at whose request;

(d) Whether the document has been otherwise disposed of; and

(e) A precise statement of the circumstances surrounding the disposition of the document and the date of its disposition.

11. A Request to produce "all documents" means you must produce every non-identical document responsive to the subject matter of the Request. A Request to produce "documents sufficient to" identify or describe certain facts means you may select which documents to produce in response to the Request so long as you reasonably believe they include all of the information relating to the subject matter of the Request that would be reflected in all of the documents responsive to the Request. In lieu of producing "documents sufficient to" identify or describe certain facts, you may produce "all documents" relating to the subject matter of the Request. In that event, you should state that you have produced "all documents" relating to the Request in your written response to these Requests.

12. Provide a source list that clearly identifies who maintained the document and the location from where it was collected.

13. Each Request herein shall be construed independently. Unless otherwise indicated, no Request shall be construed by reference to any other Request for the purpose of limiting the scope of the answers to such Request.

14. If no document responsive to a Request exists, or if the only documents responsive to a Request are not within your possession, custody or control, please so state in your written response to the Request.

15. These Requests shall be deemed continuing Requests so as to require supplemental responses if you obtain or discover additional documents between the time of initial production and the time of trial. Such supplemental documents must be produced promptly upon discovery. Plaintiffs specifically reserve the right to seek supplementary responses and the additional supplementary production of documents before trial.

16. Indicate whether any produced documents should be designated as confidential pursuant to the protective order in the underlying litigation. *See* Exhibit A.

17. If you identify any ambiguities in a Request's wording, please set forth the matter deemed ambiguous and the construction used in responding.

## III. RELEVANT TIME PERIOD

Except as otherwise specified, each document Request concerns the time period from January 1, 2013 through the present (the "Relevant Time Period").

## IV. REQUESTS FOR THE PRODUCTION OF DOCUMENTS

REQUEST FOR PRODUCTION NO. 1:

From January 1, 2010 to the present, documents sufficient to show the amounts you paid to either Reynolds or CDK, on a per-month, per-dealer-rooftop basis, pursuant to any contract or agreement for data integration services on an application-by-application basis, and the number of Reynolds and CDK dealers using each such application. For the avoidance of doubt, the amounts

you paid include, but are not limited to, any monthly subscription fees, transaction fees, set-up fees, or any other fees related to data integration services provided by Reynolds or CDK. If your data (or financial information) is kept in another format than is specified above, all data that reflects any charges paid in any format to Reynolds or CDK from January 1, 2010 to present.

REQUEST FOR PRODUCTION NO. 2:

From January 1, 2010 to the present, documents sufficient to show the amount you have charged CDK and Reynolds dealers for each of your application(s) on a monthly basis, and the amount of any data integration costs you pass on to your dealer customers as a result of charges to you by CDK or Reynolds. If your data (or financial information) is kept in another format than is specified above, all data that reflects any amounts charged by you to Reynolds or CDK dealers in any and all formats from January 1, 2010 to present.

REQUEST FOR PRODUCTION NO. 3:

Documents concerning any increases or decreases, or proposed increases or decreases, in the amount you pay to either Reynolds or CDK for services pursuant to any contract or agreement.

REQUEST FOR PRODUCTION NO. 4:

Any analysis or consideration of the financial, economic or business impact to you regarding the passing on of any data integration costs imposed by CDK or Reynolds from you to your customers, CDK dealers or Reynolds dealers.

REQUEST FOR PRODUCTION NO. 5:

Documents concerning any complaints by your customers (or anyone else) regarding any proposed or actual additional or increased costs imposed by you as a result of any additional or increases in costs charged to you by CDK or Reynolds.

REQUEST FOR PRODUCTION NO. 6:

From January 1, 2010 to the present, documents sufficient to identify any third party integrators (including DMI or IntegraLink) you utilized and the time period during which you utilized any such integrator.

REQUEST FOR PRODUCTION NO. 7:

From January 1, 2010 to the present, documents sufficient to show the costs paid by you to any third party integrators (including DMI or IntegraLink) for services pursuant to any contract or agreement on a per-month, per-dealer-rooftop basis, including costs you paid for data integration services on an application-by-application basis, and the brand(s) of DMS for which the third party integrators were providing integration.

REQUEST FOR PRODUCTION NO. 8:

One representative contract with each of Reynolds and CDK for data integration services for each year from 2010 through the present, plus any additional documents necessary to reflect any and all substantive modifications to any of your contracts with Reynolds and CDK for data integration services during any of those years.

REQUEST FOR PRODUCTION NO. 9:

Documents concerning any provision in your contracts or agreements with Reynolds or CDK which relate to any of the following: (i) limiting your ability to contract with or otherwise use third party integrators to access data on CDK or Reynolds DMS platforms (*i.e.*, any exclusive dealing provisions); (ii) prohibiting you from informing or communicating with dealers about any cost (or any changes in cost) to you for Reynolds or CDK data integration services (*i.e.*, any price secrecy provisions); or (iii) for liquidated damages, including any enforcement or threat of enforcement of any of the aforementioned provisions by Reynolds or CDK. For the avoidance of doubt, this

- 11 -

Request includes any communications to or from Reynolds or CDK (or anyone else) concerning any of the foregoing, or any internal communications concerning the same.

REQUEST FOR PRODUCTION NO. 10:

Any communications between you and CDK or Reynolds (or anyone else) relating to: (1) any attempts by you to join the 3PA or RCI programs; or (2) any actual or potential use by you of any third party integrator.

REQUEST FOR PRODUCTION NO. 11:

Any communications between you and CDK or Reynolds (or anyone else) relating to: (i) the functionality, or access to categories of data in their DMS, that you have sought for your applications through the 3PA or RCI programs but that CDK and/or Reynolds have refused to provide; or (ii) any competitive advantage that CDK or Reynolds provide to their own applications that they do not provide to your applications.

REQUEST FOR PRODUCTION NO. 12:

Documents sufficient to show any lost business, or any applications or products that you had to modify or withdraw from the market, or that you ceased or scaled back development of, as a result of Reynolds's or CDK's data policies and practices and/or 3PA or RCI pricing.

REQUEST FOR PRODUCTION NO. 13:

From January 1, 2010 to the present, documents sufficient to show any non-CDK and non-Reynolds DMS platforms that you accessed directly (*e.g.*, through the use of an API) and the cost you paid to access these systems, including the per-dealer, per-month costs you paid for data integration services on an application-by-application basis, the number of dealers using any non-CDK and non-Reynolds DMS platforms by month for each such application, the prices you charged to dealers using non-CDK and non-Reynolds DMS for each application, and the amount of any costs charged by the non-CDK and non-Reynolds DMS platforms that you passed on to your customers.

- 12 -

REQUEST FOR PRODUCTION NO. 14:

Any documents you have produced to the Federal Trade Commission ("FTC") in relation to any FTC investigation of CDK or Reynolds.

REQUEST FOR PRODUCTION NO. 15:

All documents produced to any other party as a part of this MDL or any of the related actions transferred, consolidated, and/or coordinated as a part of the MDL, whether produced before or after their transfer, consolidation, and/or coordination.

REQUEST FOR PRODUCTION NO. 16:

Any documents or communications regarding any effort by CDK or Reynolds to hinder or obstruct third-party integrators, including by blocking, attempting to block, or otherwise limiting third-party integrators' access to either of their DMS, or otherwise reflecting any collusion between CDK and Reynolds in the DMS market, data integration market, or markets for applications.

REQUEST FOR PRODUCTION NO. 17:

Documents sufficient to show the changes in market share over time of your applications and any of your competitors' applications thereof.

REQUEST FOR PRODUCTION NO. 18:

Documents sufficient to show your application sales revenue and gross margin on a monthly basis for each of your applications.

REQUEST FOR PRODUCTION NO. 19:

Documents sufficient to show, on a yearly basis, the types of contracts entered into with dealers for each of your applications from the year 2010 to the present, including, without limitation, full examples of each different type of contract.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2018, I caused a true and correct copy of the foregoing

DEALERSHIP CLASS PLAINTIFFS' NOTICE OF SUBPOENA TO PRODUCE DOCUMENTS

TO NON-PARTY MAX Digital, LLC to be served by email upon the following recipients: service-external-dms-mdl@lists.kellogghansen.com.



*/s/ Kent A. Bronson*
KENT A. BRONSON

GZJ KDKV'9

AO 88B  (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of Illinois

| | | |
|---|---|---|
| In re Dealer Management Systems Antitrust Litig. | ) | |
| _Plaintiff_ | ) | Civil Action No.  1:18-cv-00864, MDL No. 2817 |
| v. | ) | |
| | ) | (If the action is pending in another district, state where: |
| _Defendant_ | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Lithia Motors, Inc., 150 N. Bartlett Street, Medford, OR 97501
     c/o National Registered Agents, Inc., 780 Commercial St., Ste. 100, Salem, OR 97301

    ☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: See Exhibit A.

| Place:  150 N. Bartlett Street<br>       Medford, OR 97501 | Date and Time:<br>     09/13/2018 10:00 am |
|---|---|

    ❑ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

    The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____08/23/2018_____

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_ ___Individual Plaintiffs and___
___the Vendor Class_____ , who issues or requests this subpoena, are:

Joshua Hafenbrack
Kellogg, Hansen, Todd, Figel & Frederick, PLLC, 1615 M St., NW, Ste. 400, Washington, DC 20036
jhafenbrack@kellogghansen.com  (202) 326-7900

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:18-cv-00864, MDL No. 2817

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## EXHIBIT A

Pursuant to Federal Rules of Civil Procedure 45 and 34(c), and the accompanying Subpoena, you are hereby requested by the Individual Plaintiffs and Vendor Class, to produce for inspection and copying on or before September 13, 2018, at 10:00 a.m., at Lithia Motors, Inc., 150 N. Bartlett Street, Medford, Oregon 97501, or at such other time and place as agreed upon by counsel. The Individual Plaintiffs and Vendor Class are available to meet and confer regarding the scope of the following Documents Requests. Please contact Joshua Hafenbrack at jhafenbrack@kellogghansen.com or (202) 326-7916 if you have any questions regarding this subpoena.

## DEFINITIONS

1.      "Add-on Software Application" shall mean a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.      "Authenticom" shall refer to Authenticom Inc., one of the Plaintiffs in this MDL and a provider of Data Integration services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.      "CDK" shall mean CDK Global, LLC. "CDK" shall include the Dealer Services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.      "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

7.      "CVR" shall mean Computerized Vehicle Registration, a joint-venture of CDK and Reynolds and an Add-on Software Application provider that offers EVR services, as well as its predecessors, and present or former subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

8.      "Data Integrators" shall refer to providers of Data Integration. For the avoidance of doubt, the term "Data Integrators" includes CDK (through its 3PA program (defined below)) and Reynolds (defined below) (through its RCI program (defined below)) as well as Third Party Integrators (defined below).

9.      "Data Integration" shall mean the provision of access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.

10.     "DealerVault" shall refer to the current Data Integration product offered by Authenticom, which provides a unified user interface that enables dealers to add, remove, or change the data sets that Authenticom sends to vendors on the dealers' behalf.

11.     "DMS" shall mean Dealer Management System. "DMS" shall include any integrated system of computers that perform business office and other core dealership operation functions for an automotive dealership, including but not limited to accounting, Finance and Insurance ("F&I"), parts inventory, and basic service management.

12.     "Document" is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

13.     "Documents sufficient to show" or "Documents sufficient to identify" means both documents that are necessary and documents that are sufficient to provide the specified information. If summaries, compilations, lists, or synopses are available that provide the information being requested, these may be provided in lieu of the underlying documents.

14.     "Include" denotes a portion of a larger whole and is used without limitation.

15.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

16.     "MVSC" shall mean the Motor Vehicle Software Corporation, an electronic vehicle registration Add-on Software Application provider whose products include DMVdesk and Vitu.

17.     "OEM Provider" shall refer to any Original Equipment Manufacturer that provides or sells new automobiles to you, directly or indirectly, including but not limited to brands such as General Motors, Ford, Chrysler, BMW, Audi, etc.

18.     "Person" or "persons" shall mean, without limitation, any individual, corporation, partnership or any variation thereof (e.g., limited partnership, limited liability partnership), limited liability company, proprietorship, joint venture, association, government entity, group or other form of legal entity.

19.     The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

20.     "Reynolds" shall mean "The Reynolds & Reynolds Company." "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

21.     "RCI" means the Reynolds program through which vendors can purchase access to dealer data stored on the Reynolds DMS database, including its predecessor program "Performance Path" and any other similar program operated by Reynolds.

22.     "SIS" means Superior Integrated Solutions and shall include its present and former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4

23. "Third Party Integrators" shall mean Data Integrators that provide Data Integration services on a DMS platform and are unaffiliated with the DMS provider, including but not limited to Authenticom, SIS, ProQuotes, and StoneEagle.

24. "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships.

25. "You," "your" or "your company" refer to Lithia Motors, Inc., as set forth on the cover page served herewith, including its parents, divisions, subsidiaries, affiliates, and corporate predecessors; its current and former partners, directors, owners, officers, members, employees, agents, representatives, and attorneys; and any other persons under its control or acting on its behalf.

26. "Your Representatives" means any of your current or former employees, officers, executives, or agents, or any other Person acting on your behalf.

27. "3PA" means the CDK program through which vendors can purchase access to dealer data stored on the CDK DMS database.

## <u>INSTRUCTIONS</u>

A.      No Request shall be read as limiting any other Request.

B.      The singular form of a word shall be interpreted to include the plural, and "and" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any information that might otherwise not be included. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

C.      Indicate whether any produced documents should be designated as confidential or highly confidential pursuant to the protective order in the underlying litigation. *See* Exhibit B.

D.      Pursuant to Federal Rule of Civil Procedure 45(d)(1)(A), documents responsive to the requests are to be made available in their present condition and as they are kept in the ordinary course of business or labeled to identify the specific request to which they pertain, including folder title(s) and folder Bates range(s).

E.      Each Request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of you or your respective agents or attorneys.

F.      Each document requested herein should be produced in its entirety and without deletion, redaction or excision, except as permitted by a recognized privilege, regardless of whether you consider the entire document or only part of it to be relevant or responsive to these document requests. If you have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document you have redacted.

G.      If any Request for a document or thing cannot be complied with in full, please comply to the extent possible.

H.      To the extent any Request is objected to in whole or in part, please state with specificity all grounds for objection, and produce all documents and things responsive to those parts of the request as to which no objection is made.

I.      If you identify any ambiguities in the Request's wording, please set forth the matter deemed ambiguous and the construction used in responding.

J.      Unless otherwise indicated, the relevant time period for all Requests is January 1, 2013, to the present.

## REQUESTS

**REQUEST NO. 1:**

Your current DMS contract, and any prior contracts between you and your DMS provider, that cover the period from January 1, 2013, to the present, including your original contract with your DMS provider if your contract has merely been renewed or amended since January 1, 2013. For the avoidance of doubt, if You have multiple contracts with Your DMS provider, this Request seeks all such contracts.

**REQUEST NO. 2:**

Documents sufficient to show the monthly, quarterly, or yearly price you paid for your DMS, from January 1, 2013, to the present. For the avoidance of doubt, this Request is intended to cover the total monthly, quarterly, or yearly price you pay across all of the dealerships (if more than one) in your dealership group.

**REQUEST NO. 3:**

Documents sufficient to identify each Add-on Software Application used at your dealership(s) on an annual basis from January 1, 2013 to the present, including the dates that you started and stopped using each Add-on Software Application.

**REQUEST NO. 4:**

Documents sufficient to identify the names of each Add-on Software Application that you either stopped using or considered purchasing but decided not to purchase because of its price, and the names of each Add-on Software Application that you stopped using or considered purchasing but decided not to purchase because it lacked functionality or interoperability with your DMS (including, for example, the ability to open repair orders from a tablet, or the ability to "push" or "write" data into the DMS, or the ability to access DMS data in near-real time).

8

**REQUEST NO. 5:**

Documents or Communications containing statements by CDK or Reynolds regarding the price, functionality, or DMS interoperability of Add-on Software Applications, including software applications sold by CDK or Reynolds and software applications bundled with the CDK or Reynolds DMS.

**REQUEST NO. 6:**

Documents sufficient to identify each Data Integrator that you used or approved for use between January 1, 2013, and the present, and any contracts between you and each Data Integrator that you used or approved during that period.

**REQUEST NO. 7:**

Documents sufficient to show the monthly price you paid for each Add-on Software Application used at your dealership or dealerships, from January 1, 2013, to the present, including any separate Data Integration fees, if known.

**REQUEST NO. 8:**

Documents and Communications regarding any fees that software application vendors have charged you for Data Integration, including any fees your vendors pay to CDK or Reynolds and then "pass-through" to you, expressly or otherwise. Insofar as any of your vendors include a line item on their invoices for a 3PA, RCI, or other Data Integration fee, those invoices would be responsive to this request.

**REQUEST NO. 9:**

Communications between you and CDK or Reynolds regarding CDK or Reynolds blocking or threatening to block your ability to provide login credentials to third parties and your agents, including but not limited to Third Party Integrators.

**REQUEST NO. 10:**

Communications between you and CDK or Reynolds concerning "white-listing" (i.e., permission granted by CDK or Reynolds for your agents or other third parties to use DMS login credentials that you created for them), including but not limited to login credentials you created for Authenticom or other Third Party Integrators.

**REQUEST NO. 11:**

Communications between you and CDK or Reynolds concerning any automated reporting functions on their respective DMS platforms, including the ability to generate any automated or other non-standard reports.

**REQUEST NO. 12:**

Documents and Communications concerning DealerVault, including documents sufficient to show whether you have used DealerVault and your opinions of its product quality, service, and cost.

**REQUEST NO. 13:**

Documents sufficient to show any loss or disruption to your business operations that you have experienced as a result of CDK's or Reynolds's policies, data practices, 3PA or RCI pricing, or other restrictions placed by CDK or Reynolds on your ability to use any Add-on Software Application or a Third Party Integrator, including the effects of such loss or disruption.

**REQUEST NO. 14:**

Documents sufficient to show any disruption to your business or your ability to access your data during or resulting from any transition or attempted transition from CDK's or Reynolds's DMS platform to any other DMS platform (including switching from a Reynolds DMS to a CDK DMS or a CDK DMS to a Reynolds DMS), including the effects of such loss or disruption.

**REQUEST NO. 15:**

Documents sufficient to should disclosures you have made pursuant to the Gramm-Leach-Bliley Act (Public Law 106-102, 113 Stat. 1338 (1999)), including the Safeguards Rule and the Financial Privacy Rule (*see* Subtitle A of the Gramm-Leach-Bliley Act).

**REQUEST NO. 16:**

Documents and Communications sufficient to show your reasons for switching to, and/or away from, MVSC's electronic vehicle registration add-on application.

**REQUEST NO. 17:**

Documents reflecting any Communications (including marketing materials) from CDK, Reynolds, or CVR regarding CVR's purported advantages over MVSC or any other EVR application, including advantages with respect to Data Integration with the CDK DMS or Reynolds DMS, the ability to "write" to the DMS, the ability to pull data from the DMS in near-real time, the "approved" nature of CVR's Data Integration with the CDK DMS or Reynolds DMS, and whether MVSC or any other EVR provider is an "approved" or "unapproved" EVR provider.

**REQUEST NO. 18:**

Your current OEM contract, and any prior contracts between you and your OEM Provider(s), that cover the period from January 1, 2013, to the present, including your original contract with your OEM Provider(s) if any contract has merely been renewed or amended since January 1, 2013. Insofar as you have multiple contracts with your OEM Provider, this Request seeks any contract(s) that contain terms governing data sharing, data privacy, and/or any information that your OEM Provider deems to be proprietary or a trade secret.

# EXHIBIT 8

## Provance, Matthew D.

| | |
|---|---|
| **From:** | Provance, Matthew D. |
| **Sent:** | Friday, November 30, 2018 4:48 PM |
| **To:** | 'Nemelka, Michael N.'; 'SERVICE-EXTERNAL-DMS-MDL' |
| **Cc:** | 'Guarnera, Daniel S.' |
| **Subject:** | RE: Ghaben and Open Recalls |

Mike –

On our call today you did not agree to produce any documents that are responsive to our subpoenas, and in fact could not tell us whether you in fact continue to represent Ghaben and Open Recalls in connection with the subpoenas. We feel that we have no choice but to seek relief from the Court at this point. It's unfortunate that it has come to this, and I think that it could have been avoided.

Thanks,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

---

**From:** Provance, Matthew D.
**Sent:** Thursday, November 29, 2018 6:40 PM
**To:** 'Nemelka, Michael N.' <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Guarnera, Daniel S. <dguarnera@kellogghansen.com>
**Subject:** RE: Ghaben and Open Recalls

Mike –

I am writing again regarding the subpoenas that are outstanding to Ghaben and Open Recalls. In your November 16 email, below, you stated that you were not going to be ready to discuss them during our November 19 meet and confer; consistent with that statement, you made no mention of the issue during the call on November 19 and we have heard nothing from you in the week and half since that discussion. To our knowledge, despite our repeated requests you also have not confirmed—one way or the other—that Kellogg Hansen continues to represent either or both entities—the disclosure of which should not require a meet-and-confer at all. We believe that the record is clear that Defendants have tried, in good faith, to substantively meet-and-confer and have met their duties under Local Rule 37.2. What matters at this point is whether both companies will agree to produce responsive documents in the short term, or continue to refuse to do so (in which case we are at impasse). We will be prepared to meet and confer one final time about the subpoenas during tomorrow's call (assuming it goes forward; we have asked the Dealership Class Plaintiffs to confirm that they will be prepared to substantively meet-and-confer on the matters outlined in our November 28 letter). If Ghaben or Open Recalls are willing to produce responsive documents (and assuming you still represent them), you can let us know. If any categories of documents that are responsive to the subpoenas remain outstanding at the conclusion of our call, we will consider the parties to be at an impasse. We believe that this is more than fair under the circumstances.

1

Thanks,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

---

**From:** Nemelka, Michael N. <mnemelka@kellogghansen.com>
**Sent:** Friday, November 16, 2018 4:38 PM
**To:** Provance, Matthew D. <MProvance@mayerbrown.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Guarnera, Daniel S. <dguarnera@kellogghansen.com>
**Subject:** RE: Second Set of RFPs to CDK from the Individual and Vendor Class Plaintiffs

**EXTERNAL SENDER**

Matt,

Thanks for the email.  Earlier today we responded to the issues in Defendants' letters of October 26 and Nov. 7.   With respect to Ghaben and Open Recalls, Defendants have not raised them for several months.  We will not be ready to meet and confer regarding them by Monday.

We look forward to receiving the responses to our outstanding letters.

As for a meet and confer, we had proposed Monday at 2:00 p.m. ET in my letter of earlier today, but that time has now already been taken by another matter.  Let us confer with Peggy to see when would work for her team, and we will propose an alternative time.  We can then set an agenda as it appears there will be many issues to discuss.

Thanks,
Mike

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Friday, November 16, 2018 1:35 PM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Guarnera, Daniel S. <dguarnera@kellogghansen.com>
**Subject:** RE: Second Set of RFPs to CDK from the Individual and Vendor Class Plaintiffs

Mike –

Although CDK is, of course, willing to meet-and-confer regarding its responses to the Individual/Vendor Plaintiffs' latest discovery requests, it is unable to do so on the schedule you propose.  Moreover, it is both inappropriate and demonstrably unfair for  Plaintiffs to demand that Defendants meet-and-confer immediately (or within a matter of days) on issues related to Plaintiffs' discovery of Defendants while refusing to even respond to Defendants' requests for meet-and-confers regarding Defendants' discovery of Plaintiffs.  Discovery, as we all know, is a two-way street.  Thus, before we engage in a discussion regarding responses served three days ago, Plaintiffs need to meaningfully meet-and-confer regarding the issues that have been outstanding for weeks, namely:

1. On October 26, Defendants sent a letter requesting supplemented, non-custodial financial discovery from Authenticom. We followed up about that letter on November 8. We have heard nothing from Plaintiffs on this issue, including no indication of whether we should expect a response. If Plaintiffs do not intend to respond, please let us know so that we can promptly bring the issue before the Court.

2. On Nov. 7, Defendants sent a letter on a variety of discovery issues related to discovery of Authenticom/MVSC (attached). While we still await a response to that letter (and would appreciate one in the short term), the most pressing issue raised therein was a request to meet and confer regarding Authenticom's claims of privilege on communications between Steve Cottrell of Authenticom and Tony Petruzelli of AutoLoop. We asked if you were available that Friday (Nov. 9) to meet-and-confer (a request not unlike the one you made of us on Wednesday). You never responded. Defendants followed up on Monday, November 12, asking for a time this week to meet and confer about the Petruzelli issue, as his deposition is now less than two weeks away. Again, we have heard nothing from Plaintiffs. If Plaintiffs are unwilling to meet-and-confer in the short term on this issue, Defendants will assume they are unwilling to do so at all and promptly file a motion with the Court.

3. Finally, there is the issue of Ghaben and Open Recalls. As you know, both of these non-parties have largely refused to produce any documents in response to our subpoenas. (Ghaben did produce its current DMS contract with CDK, which Defendants already possess.) Our attempts to meet and confer with you were unsuccessful. Indeed, you would not engage with us before confirming that Kellogg Hansen continues to represent Ghaben and Open Recalls. And, in our most recent correspondence on the issue, you ignored our repeated efforts to follow up on the subject. Here again, as this issue has been pending for months, if Plaintiffs remain unwilling to meet-and-confer in the short term on this issue, Defendants will assume they are unwilling to do so and promptly file a motion with the Court.

And, although we appreciate that you are available from 10:00-3:00 p.m. Eastern today, we are unable to get a quorum on the defense side until after 3:00 p.m. Eastern. If your schedule changes and you are able to meet-and-confer this afternoon, please let us know. If not, we would ask that you suggest a time on Monday that would work on your end. Defendants will do their best to accommodate that.

With respect to Plaintiffs' outstanding requests to Defendants:

1. CDK is in receipt of Josh's reminder email of Wednesday regarding the Auto/Mate documents and the custodians and search terms for the 2006-2011 time frame (originally sent October 26). We expect to be responding early next week, but wanted to clarify that we have not been unnecessarily delaying our response. Rather, we have been collecting and processing data so that we can test appropriate search terms and be able to have a meaningful meet-and-confer on the subject.

2. Reynolds expects to be responding to Plaintiffs' November 9 letter regarding Reynolds email production by COB today.

3. Both Defendants expect to respond to Plaintiffs' November 8 Letters regarding data questions and their November 9 Letters regarding Defendants' privilege logs by COB today.

Once Plaintiffs have received the foregoing, Defendants would be happy to try to schedule a meet-and-confer to discuss any concerns Plaintiffs may have, as well as your concerns regarding CDK's November 13 discovery responses.

We look forward to hearing from you.

Thanks,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com

Tel: 312 701 8598
Fax: 312 706 9397

---

**From:** Nemelka, Michael N. <mnemelka@kellogghansen.com>
**Sent:** Wednesday, November 14, 2018 8:23 AM
**To:** Provance, Matthew D. <MProvance@mayerbrown.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Guarnera, Daniel S. <dguarnera@kellogghansen.com>
**Subject:** RE: Second Set of RFPs to CDK from the Individual and Vendor Class Plaintiffs

**\*\*EXTERNAL SENDER\*\***

Matt,

It appears that CDK is refusing to produce documents in response to each of these RFPs. Can we please have a meet and confer regarding CDK's refusal? I am available tomorrow after 2:00 p.m. ET, or Friday between 10:00 a.m. and 3:00 p.m. ET.

Thanks,
Mike

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Tuesday, November 13, 2018 11:37 PM
**To:** SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Guarnera, Daniel S. <dguarnera@kellogghansen.com>
**Subject:** RE: Second Set of RFPs to CDK from the Individual and Vendor Class Plaintiffs

Counsel, please see the attached responses.

Thanks,
Matt Provance

---

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

---

**From:** Guarnera, Daniel S. <dguarnera@kellogghansen.com>
**Sent:** Friday, October 12, 2018 8:18 PM
**To:** SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Subject:** Second Set of RFPs to CDK from the Individual and Vendor Class Plaintiffs

Britt and Matt,

Please find attached the Individual and Vendor Class Plaintiffs' Second Set of Requests for the Production of Documents to CDK.

All the best,
Dan

**Daniel S. Guarnera**
**Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.**
1615 M Street, N.W. | Suite 400 | Washington, DC 20036
Tel: 202-326-7923 | Fax: 202-326-7999

NOTICE:  This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication.  Thank you.

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities, including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Information about how we handle personal information is available in our Privacy Notice.