# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**THE INDIVIDUAL AND THE VENDOR CLASS PLAINTIFFS'
SECOND SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS
TO DEFENDANT CDK GLOBAL, LLC**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Motor Vehicle Software Corporation, Authenticom, Inc., Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., Xtime, Inc., and Loop, LLC d/b/a AutoLoop on behalf of itself and a class of vendors (collectively, the "Individual and Vendor Class Plaintiffs") hereby request that Defendant CDK Global, LLC ("CDK") produce all documents in its actual or constructive possession, custody, or control related directly or indirectly to any of the matters described below. All documents and tangible things responsive hereto should be produced for inspection as soon as practicable and in no event later than the date provided for in the Case Management Order, Dkt. 166. Production shall be made at the offices of KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., 1615 M Street, N.W., Suite 400, Washington, D.C. 20036, or as otherwise agreed to by the parties.

**DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1. "A.T. Kearney" shall refer to A.T. Kearney, Inc., including its parents, divisions, subsidiaries, affiliates, and corporate predecessors; its current and former partners, directors, owners, officers, members, employees, agents, representatives, and attorneys; and any other persons under its control or acting on its behalf.

2. "Add-on Software Application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

3. "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

4. "AutoLoop" shall mean Loop, LLC and its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

5. "Cox Automotive" shall mean Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., and Xtime, Inc. (collectively, "Cox Automotive") and their present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

7. "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief

2

(hereinafter, "SoAF"), *Authenticom* Dkt. 87 (June 16, 2017). "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

8. "Communication" or "Communications" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

9. "Data Integration" shall mean the provision of access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both, and for the avoidance of doubt "Data Integration" includes CDK's 3PA program and Reynolds' RCI program.

10. "Data Integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both. For the avoidance of doubt, "Data Integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

11. "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

12. "ELEAD1ONE" shall mean "Data Software Services LLC" and shall include its present or former predecessors, subsidiaries, divisions, affiliates, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

3

13. "Including" (in addition to its usual meanings) shall mean including but not limited to.

14. The term "MSA" shall refer to any standard-form or bespoke "Master Services Agreement" that you entered into with any dealer.

15. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16. "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

17. "You," "Your," or "Your company" shall mean the responding Defendant, its present or former predecessors, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation, any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding Defendant.

18. The "Platform Rationalization" and "Platform Assessment" initiatives are the initiatives referenced at CDK-1189463.

19. The "Margin Improvement" initiative is the initiative referenced at CDK-1189463.

## **INSTRUCTIONS**

1. In producing documents and other materials, You must furnish all documents in Your possession, custody, or control, regardless of whether such documents or materials are possessed directly by You, Your employees or former employees, agents or former agents, parents, subsidiaries, affiliates, investigators, or by Your attorneys or their employees, agents, vendors, or investigators.

2. All documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business. All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained.

3. Documents attached to one another should not be separated. If any portion of any Document is responsive to any portion of the document requests below, then the entire document must be produced.

4. Documents shall be produced in such fashion as to identify the natural person in whose possession they were found (i.e., the document custodian).

5. If any document responsive to any of these requests is privileged, and the document or any portion of the document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the following information:

    a. the exact basis for withholding the document;
    b. the date of such communication;
    c. the medium of such communication;
    d. the general subject matter of such communication (such description shall not be considered a waiver of Your claimed privilege);
    e. the identity of any document that was the subject of such communication and the present location of any such document;
    f. the identity of all persons involved in such communication; and
    g. the identity of any document which records, refers, or relates to such communication and the present location of any such document.

6. Each document requested herein should be produced in its entirety and without deletion, redaction, or excision, except as permitted by a recognized privilege, regardless of whether You consider the entire document or only part of it to be relevant or responsive to these document requests. If You have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document You have redacted.

7. Each request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of You or Your respective agents or attorneys. You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

8. Unless otherwise indicated, each Request refers to the time period between January 1, 2013, and the present.

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 103.** All Documents and Communications relating to any purported amendment of Your MSA to eliminate any language discussing dealer agents and/or the ability of agents of the dealer to access the DMS (as referenced in ¶ 75 and n.52 of Your Counterclaims against Authenticom (Dkt. 229)), including but not limited to:

(a) All Documents and Communications discussing any rationale, justification, or need for the change;

(b) All Documents and Communications concerning the amended language;

(c) All Communications with any dealer customers concerning the amended language;

(d) All internal Communications concerning dealer reaction to or feedback on the amended language;

(e) Copies of all amendments to existing MSAs that reflect or contain the new MSA language; and

(f) Copies of every executed MSA containing the new contract language.

**REQUEST NO. 104.** All Documents and Communications relating to Your acquisition of ELEAD1ONE, including but not limited to:

(a) All analyses of ELEAD1ONE;

(b) All analyses of the commercial or competitive rationale for acquiring ELEAD1ONE, including any Communications concerning the same;

(c) All Communications with ELEAD1ONE concerning the acquisition;

(d) All Documents relating to ELEAD1ONE's Add-on Software Applications;

(e) All Documents relating to ELEAD1ONE's market share for its Add-on Software Applications;

(f) All Documents relating to add-on applications that You own that compete with ELEAD1ONE's Add-on Software Applications;

(g) All Documents regarding the market share of your Add-on Software Applications;

(h) All Documents regarding the purchase price and terms of the acquisition; and

7

(i) All Communications with Portico Capital Securities LLC related to the acquisition.

**REQUEST NO. 105.** All 3PA agreements and any other agreement with ELEAD1ONE concerning any Data Integration that You provide to ELEAD1ONE, including Documents sufficient to show the payments from ELEAD1ONE to You for Data Integration from January 1, 2013, to the present.

**REQUEST NO. 106.** All Documents and Communications concerning the Data Integration that You provide or will provide to ELEAD1ONE, including but not limited to:

(a) Any changes in the Data Integration that You provide or will provide to ELEAD1ONE;

(b) Any changes in the pricing for any Data Integration You provide or will provide to ELEAD1ONE;

(c) Any new or additional Data Integration features that You provide or will provide to ELEAD1ONE, such as the ability to open repair orders, write back to the DMS, or any other data integration features; and

(d) Documents sufficient to identify any Data Integration features or functionality that You provide or will provide to ELEAD1ONE that differ from those features that You make available to any other Vendor or Add-on Software Application provider such as Cox Automotive or AutoLoop.

**REQUEST NO. 107.** All Documents and Communications with car dealers regarding ELEAD1ONE, including but not limited to, the data integration pricing and data access that ELEAD1ONE's Add-on Software Applications will have as a result of the acquisition.

**REQUEST NO. 108.** All Documents that You have provided to any state or federal government agency, government entity, or regulator concerning Your acquisition of ELEAD1ONE, and, for the avoidance of doubt, any Documents that You provide in the future to any state or federal government agency, entity, or regulator on the ELEAD1ONE acquisition.

**REQUEST NO. 109.** All Documents and Communications between You and any automotive original equipment manufacturers ("OEMs") containing data-sharing or data-privacy

8

agreements or policies, including but not limited to agreements or contracts concerning the treatment of any OEM trade secret(s) or regarding the sale of dealer data to third parties.

**REQUEST NO. 110.** Documents sufficient to show CDK's financial expenditures related to its blocking of Authenticom and other independent Data Integrators from accessing CDK's DMS.

**REQUEST NO. 111.** Documents sufficient to show all DMS login credentials that dealers created for use by Authenticom that CDK deactivated, including the identity of the dealer that created the credentials, the date of deactivation, and any subsequent transaction history (e.g., re-activation of the login credentials).

**REQUEST NO. 112.** Documents sufficient to show the meaning or definition of any codes, abbreviations, and the contents of every data field included in any files produced by CDK to the Individual and the Vendor Class Plaintiffs.

**REQUEST NO. 113.** All Documents and Communications related to CDK's "Platform Rationalization" initiative, "Platform Assessment" initiative, and "Margin Improvement" initiative, including all Communications and Documents exchanged with and between A.T. Kearney about these initiatives.

**REQUEST NO. 114.** All Communications and Documents exchanged with A.T. Kearney.

**REQUEST NO. 115.** Documents sufficient to identify the Add-on Software Applications that CDK offers, and the following information for each such Add-on Software Application: (1) the dealer customers, by DMS type; (2) the monthly per-rooftop amount charged to dealers, including any Data Integration fees; (3) the monthly and annual revenues and profits, including information on profit margins, expenses, budgets, forecasts, and any other financial

9

information kept in the ordinary course of business; (4) the market share of the Add-on Software Applications, from January 1, 2013 to the present; (5) the Data Integration features that the Add-on Software Applications receive from CDK for CDK dealers; and (6) how the Add-on Software Applications obtain data from non-CDK dealers, and what those Add-on Software Applications pay for that data access and the type of data access that they receive.

Dated: October 12, 2018

Respectfully submitted,

*/s/ Derek T. Ho*

Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
Christine Bonomo
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com
cbonomo@kellogghansn.com

*Counsel for the Individual and Vendor Class Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2018, I caused a true and correct copy of the foregoing Individual and Vendor Class Plaintiffs' Second Set of Requests for the Production of Documents to Defendant CDK Global, LLC to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Derek T. Ho*
Derek T. Ho