IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This document relates to:<br><br>ALL CASES | No. 18 CV 0864<br><br>Jeffrey T. Gilbert<br>Magistrate Judge |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant The Reynolds and Reynolds Company's ("Reynolds's") Motion to Compel Production of Documents Pursuant to Subpoena [ECF No. 280]. In responding to Reynolds's motion, Non-Party Dominion Enterprises, Inc. ("Dominion") also moved to Modify the Confidentiality Order entered in this case [ECF No. 303]. For the reasons stated below, Reynolds's Motion [ECF No. 280] is granted and Non-Party Dominion's Motion [ECF No. 303] is denied.

### I. BACKGROUND

On December 7, 2017, Reynolds served a subpoena *duces tecum* on Dominion with a return date of December 22, 2017. Reynolds's Motion, [ECF No. 283], ¶ 1; Dominion's Motion, [ECF No. 305], at 4. According to Reynolds, the purpose of the subpoena was to obtain information from Dominion related to the testimony of one of Dominion's employees, Alan Andreu. Reynolds's Motion [ECF No. 283], ¶ 2. Mr. Andreu testified on Dominion's behalf during a preliminary injunction hearing in one of the cases that make up this multi-district litigation, *Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048 (W.D. Wisc. 2017). *Id*. Reynolds contends that Mr. Andreu made statements that implicated Reynolds and its co-Defendant, CDK

Global, LLC ("CDK"), in alleged unlawful conduct that led to price increases in the integration fees charged to Dominion. Reynolds's Motion [ECF No. 283], ¶ 2. Reynolds says it is seeking documents that form the basis of Dominion's testimony in the *Authenticom* case and documents that Dominion produced to the Federal Trade Commission ("FTC"). Reynolds's Motion [ECF No. 283], ¶¶ 2, 3. It says it wants the documents to rebut assertions in this case that Reynolds and CDK engaged in activities that violate the anti-trust laws. *Id.*

Dominion objected to Reynolds's subpoena stating that because it "continues to be a direct competitor of Reynolds . . . . Dominion needs assurances that the outside attorneys with access to Dominion's documents are not attorneys that advise defendants on business issues." Dominion's Motion [ECF No. 305], at 4; Reynolds's Motion [ECF No. 283], ¶ 4. According to Dominion, its counsel and Reynolds's then-counsel, Perkins Coie, were near agreement on Dominion's production of documents in response to the subpoena, which was served in the *Authenticom* case, when that case and others were transferred to the Northern District of Illinois as part of this multi-district litigation in early 2018. Dominion's Motion [ECF No. 305], at 4. Following the transfer of the case, however, Reynolds changed counsel. *Id.* Dominion contends that Reynolds's new counsel rescinded the previous confidentiality accommodations agreed to by Perkins Coie, a fact that Reynolds does not dispute. *Id.*; Reynolds's Motion [ECF No. 283], ¶ 4.

Reynolds says that the existing Confidentiality Order addresses satisfactorily all of Dominion's confidentiality concerns stemming from it and Reynolds being competitors or Dominion being a customer of Reynolds. Reynolds's Motion [ECF No. 283], at ¶ 7. Dominion, on the other hand, continues to be concerned that, while the Confidentiality Order prohibits receiving parties (*i.e.*, Reynolds's outside counsel) from using discovery materials for any purpose outside of the litigation, it is not sufficient to protect Dominion's interests in this case. Dominion's position

is rooted in its speculation that once Reynolds's outside counsel receives Dominion's confidential information, it will be impossible for counsel not to use that information in a way that would harm Dominion if counsel were to be asked to provide legal advice to Reynolds having anything to do with Dominion outside the context of this litigation. Dominion's Motion [ECF No. 305], at 6. Specifically, Dominion fears that Reynolds's outside counsel may use the information it receives to provide business advice or aid their client in competitive decision-making. *Id.* at 6-9. Reynolds's response is two-fold: first, that none of Reynolds's outside counsel are involved in competitive decision-making for the company, and second, that the Confidentiality Order has safeguards that prevent Reynolds's counsel from sharing or using the information it receives from Dominion for any purpose outside the litigation. Reynolds's Motion [ECF No. 283], ¶¶ 7, 11.[1]

The parties agree they are at an impasse. Dominion's Motion [ECF No. 305], at 6; Reynolds's Motion [ECF 283], at ¶ 5. The Court also agrees. Reynolds seeks documents it believes are relevant to its defense of this case while Dominion refuses to produce those documents without a stronger confidentiality order and assurances from Reynolds that, once the documents are produced, Reynolds will not use confidential information contained in those documents to do harm to Dominion's business.

## II. ANALYSIS

The Court will first address Reynolds's Motion to Compel and then deal with Dominion's Motion to Modify the Confidentiality Order. For the reasons discussed below, Reynolds's Motion is granted and Dominion's Motion is denied. The Court agrees with Reynolds that the existing Confidentiality Order adequately addresses Dominion's concerns and there is no basis for Dominion's insistence that the Confidentiality Order be modified.

---

[1] Reynolds is the movant here but Dominion's concerns about disclosure of confidential information extend to both Reynolds and its co-Defendant CDK.

3

A.  **Reynolds's Motion to Compel Non-Party Dominion to Produce Documents**

Reynolds says it served its subpoena on Dominion to assess Dominion's testimony in a preliminary injunction hearing in the *Authenticom* case. According to Reynolds, Dominion testified in that case to the effect that an alleged conspiracy between Defendants Reynolds and CDK caused a price increase in the integration fees charged to Dominion. Dominion raises two concerns about disclosing the information Reynolds has requested. First, Dominion contends that Reynolds is misrepresenting Dominion's testimony at the preliminary injunction hearing and it states that Dominion never testified about an alleged conspiracy between Reynolds and CDK. Second, Dominion insists that, as a customer and competitor of Reynolds, making the documents Reynolds has requested available to Reynolds would result in an unacceptable risk of harm to Dominion's business. Neither argument holds water.

While the Court recognizes that the parties disagree about the content and context of Dominion's testimony in the *Authenticom* case, this disagreement does not change the Court's conclusion that the documents Reynolds is seeking are relevant and discoverable in this case. The Court is persuaded by the fact that Dominion's testimony was introduced in a preliminary injunction proceeding in the *Authenticom* case and the information being sought is directly relevant to the allegations being made against Reynolds in the instant multi-district litigation. Dominion cannot, at this stage, avoid the discovery by disclaiming or minimizing its prior testimony in the *Authenticom* case or trying to explain it away. There will be time for that following the discovery phase of the case. It cannot now, however, use those arguments to withhold documents that are relevant to the testimony given by one of its employees in the *Authenticom* case. To do so would

deprive Reynolds of information that is relevant to its defense and is not justified by any burden that may be imposed on Dominion.

Reynolds also emphasizes that a Confidentiality Order already has been entered in this case that protects parties and non-parties, such as Dominion. The Confidentiality Order prohibits the use of confidential information produced in this case beyond the boundaries of the case. That Confidentiality Order explicitly envisions the sharing of highly confidential information with outside counsel and incorporates penalties for counsel who improperly share such information outside of the litigation. Given that Confidentiality Order, Reynolds contends Dominion should not be allowed to duck the subpoena it received by speculating about hypothetical risks that some harm may come to its business in the future if Reynolds's or CDK's counsel have access to those documents without a shred of evidence in the record that indicates such risks of harm are real. Reynolds also submits that, in any event, none of Reynolds's (or CDK's) counsel in the instant multidistrict litigation is involved in competitive decision-making for their respective clients.

While Dominion points to the potential harm to its business as a burden that should preclude discovery of the documents being sought by the subpoena, it has failed to show why Reynolds's discovery request is improper or how disclosure of these documents puts its business in harm's way. Dominion's conjecture about the multiplicity of ways Reynolds could use its confidential information to harm its business is, at this stage, pure speculation with no solid basis in the record to support it. As discussed in more detail in the next section of this Memorandum Opinion and Order, Dominion's concern about disclosing highly confidential information to Reynolds's or CDK's outside counsel is allayed by the existing Confidentiality Order entered in this case and the availability of a remedy if that Order is breached, *e.g.*, the possibility of holding

5

in contempt of court a person, party, or lawyer who improperly discloses confidential information with the attendant serious consequences such a finding would entail. The Court, mindful of the obligations and protections imposed by the Confidentiality Order, finds that Reynolds's request for relevant information is proper, that Dominion has not carried its burden to show that Reynolds's request is improper, and that Dominion has not shown the protections contained in the Confidentiality Order are inadequate to protect its interests.

**B.     Non-Party Dominion's Motion to Modify the Confidentiality Order**

With respect to Dominion's Motion to Modify the Confidentiality Order, the Court finds that the current Confidentiality Order is sufficient to protect Dominion's interest. Under Rule 26(c) the Court, for good cause, may issue an order to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(C). A protective order that limits discovery, however, requires the movant to show good cause by submitting "a particular and specific demonstration of fact." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Broad and speculative allegations of harm, unsubstantiated by specific examples or articulated reasoning are insufficient. *Id.* Where, as here, a protective order has already been entered "it can only be modified if 'extraordinary circumstances' or 'compelling need' warrants the requested modification." *Federal Deposit Insurance Corporation v. Ernst & Ernst*, 677 F.3d 230, 232 (2nd Cir. 1982). Dominion has not shown such circumstances are present in this case.

Dominion contends that allowing Reynolds's counsel to review Dominion's highly confidential materials will put Dominion at a severe competitive disadvantage and could destroy its business. While the Court appreciates Dominion's concern that the information disclosed could be used against it, there is simply nothing to indicate that will happen or even that it is likely to happen. The current Confidentiality Order provides that a third party may designate as

"confidential" or "highly confidential" any document or information that it discloses to a requesting party. These designations limit both the scope and purpose for which the documents can be used. A document marked "highly confidential" only may be shared with outside legal counsel for the parties and outside counsel is required to "make best efforts to prevent unauthorized or inadvertent disclose of Confidential Information." Further, the Confidentiality Order requires that all documents marked "confidential" or "highly confidential" be returned or destroyed within sixty days after dismissal or entry of final judgment in the case. Therefore, Dominion not only has the option of classifying documents as "confidential" or "highly confidential," it also has the benefit of an enforceable order that requires Reynolds and CDK to return or destroy Dominion's documents at the end of litigation.

Courts have found that confidentiality orders with similar provisions are sufficient to protect a party or third-party's interest. *See Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 2018 WL 1071444 at *4 (N.D. Ill. 2018) (upholding Magistrate Judge's ruling that party was protected by confidentiality order preventing parties from using confidential information outside of litigation.); *JAB Distributors, LLC v. London Luxury, LLC*, 2010 WL 4008193 at *4 (N.D. Ill. 2010) (finding that protective order was sufficient as it contained provisions that allowed documents to be marked confidential and receiving party was required to abide by ethical standards to not disclose documents.). Similarly, this Court expects that Defendants' attorneys will abide by the express terms of the Confidentiality Order and the highest duties and ethical standards required of them as members of the bar of this court and comply with the Confidentiality Order. Dominion is not left without a remedy in the unlikely event that counsel uses the information outside of this litigation as the Court could hold a party or lawyer in contempt for violating the Confidentiality Order.

Dominion's concerns with outside litigation counsel in this case seeing its documents are overblown and do not merit the relief it seeks. Dominion spends pages in its opposition brief spawning "hypotheticals" to illustrate its fear that CDK's or Reynolds's counsel might use confidential information in the future to Dominion's disadvantage in so-called "competitive decision-making." Dominion's Motion [ECF No. 305], at 7-9 ("[s]uppose CDK asks its trial counsel whether refusing to renew its integration contract with Dominion . . .;" "suppose [Reynolds's"] trial counsel has advised [Reynolds] that . . . .") There is absolutely no basis in the record for the parade of horrible potential harms that Dominion spins out. There is no evidence that the lawyers or law firms that represent Reynolds and CDK in this litigation are so involved in competitive decision-making for their clients that Dominion faces any realistic risk of harm if it produces documents under the existing Confidentiality Order which expressly prohibits such competitive use of the information produced. Dominion points to nothing that Defendants' trial counsel has done in representing their clients in this case that vaults those lawyers into a position in which there is a realistic or credible risk or threat that they will use Dominion's designated confidential information outside of this litigation in violation of the Confidentiality Order.[2]

The Court believes that counsel for parties and non-parties alike in this case understand the obligations of the Confidentiality Order and finds that Dominion's speculation about dire consequences that could flow from a violation of the Confidentiality Order, based upon hypothetical situations that may never occur, are not enough to upend a proven mechanism of protecting confidential information disclosed in the context of litigation. If a party or non-party were able to bar an opponent's litigation counsel from having access to confidential or highly confidential information on the basis of speculation and unsupported supposition that counsel

---

[2] This includes Dominion's specific contentions with respect to Reynolds's trial counsel in connection with her cease and desist request to Dominion's in-house counsel.

8

would misuse that information and violate a court order in the process, the already high cost of federal litigation would increase astronomically not only in this case but countless others.

### III. CONCLUSION

For the reasons set forth herein, Defendant The Reynolds and Reynolds Company's Motion to Compel Production of Documents Pursuant to Subpoena [ECF No. 280] is granted and Non-Party Dominion's Motion to Modify the Confidentiality Order [ECF No. 303] is denied. The Court recognizes that Dominion requested oral argument on its Motion, but the Court does not believe that is necessary. Both parties submitted extensive written materials in support of their respective positions. The parties to this case are engaged in an aggressive deposition schedule and the Court believes that the benefit of deciding this issue now without needing to find a date convenient to all relevant parties and the Court for oral argument outweighs the benefit of oral argument on the parties' well-briefed and argued positions.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 6, 2018