# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow Jr. Magistrate Judge Jeffery T. Gilbert |

---

**PLAINTIFF MVSC'S FIRST SET OF INTERROGATORIES
FOR DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY**

---

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Motor Vehicle Software Corporation ("MVSC") hereby requests that Defendant The Reynolds and Reynolds Company ("Reynolds") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

1

**DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.　　"All" shall be construed as all and any, and the term "any" shall be construed as all and any.

2.　　The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

3.　　"AVRS" shall mean AVRS Inc. a provider of electronic registration software solutions in California. "AVRS" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants. In April 2015, CVR acquired AVRS.

4.　　"CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF"). "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

5.　　"Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

6.　　"CVR" shall mean Computerized Vehicle Registration and shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers,

managers, employees, attorneys, and accountants. Unless otherwise indicated, all references to "CVR" shall include "AVRS."

7. "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

8. "EVR" shall mean electronic vehicle registration and titling.

9. "Including" (in addition to its usual meanings) shall mean including but not limited to.

10. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

11. "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

12. "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## **INSTRUCTIONS**

1.     If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2.     To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3.     If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.     Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.     The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.     The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.     Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8.      Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## INTERROGATORIES

**INTERROGATORY NO. 1**   Identify each EVR Provider (including CVR) that is (or was) enrolled in the Reynolds RCI Program, including the beginning date and, if applicable, the end date of their enrollment, and the state EVR markets in which they participated at the time of their enrollment.

**INTERROGATORY NO. 2**   For each EVR Provider identified in response to Interrogatory No. 1, from 2011 to the present, identify the price they paid and/or pay on a per-month, per-rooftop basis for participation in the RCI program, and the total monthly and annual RCI fees that the EVR provider or providers have paid to Reynolds since joining the RCI program.  For the avoidance of doubt, if prices paid have changed for any EVR Provider since January 1, 2011, please describe those changes and the date(s) they were made.

**INTERROGATORY NO. 3**   For each EVR Provider identified in response to Interrogatory No. 1, identify the data elements they receive and/or have access to as participants in the RCI program.  For the avoidance of doubt, if the data elements or data access has changed for any EVR Provider since January 1, 2011, please describe those changes and the date(s) they were made.

**INTERROGATORY NO. 4**   Since January 1, 2011 to the present, identify every instance Reynolds received a request by an EVR Provider to participate in the RCI program, including the date of the request, Reynolds' responses to the request, and the final resolution of the request, including the terms and pricing, if any, Reynolds offered to the EVR Provider.

**INTERROGATORY NO. 5**  For each instance identified in response to Interrogatory No. 4, identify the employee or employees that made the final decision regarding Reynolds' response to the EVR Provider's request, including, if applicable, the terms and pricing ovvered to the EVR Provider.

**INTERROGATORY NO. 6**  If CVR has not participated in the RCI program at any time from 2011 to the present, describe CVR's methods for accessing data for purposes of providing EVR services for Reynolds DMS dealer customers, including the scope of CVR's data access and the prices CVR paid to Reynolds on a per-month, per-rooftop basis.

**INTERROGATORY NO. 7**  For each year from January 1, 2011 to the present, identify the financial benefits that Reynolds has received as a result of its 20% ownership of CVR, including but not limited to, any profit distributions.

**INTERROGATORY NO. 8** \Describe the terms (i.e., financial consideration) and purpose of Reynolds' acquisition of 20% of CVR.

**INTERROGATORY NO. 9** Identify all communications between CDK and Reynolds regarding MVSC's access to dealer data.

Dated:  November 21, 2018                Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Plaintiff MVSC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2018, I caused a true and correct copy of the

foregoing MVSC INTERROGATORIES FOR DEFENDANT THE REYNOLDS AND

REYNOLDS COMPANY to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com


                                   */s/ Derek T. Ho*
                                   Derek T. Ho

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow Jr. Magistrate Judge Jeffery T. Gilbert |

---

**PLAINTIFF MVSC'S FIRST SET OF INTERROGATORIES
FOR DEFENDANT CDK GLOBAL, LLC**

---

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Motor Vehicle Software Corporation ("MVSC") hereby requests that Defendant CDK Global, LLC ("CDK") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

2.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

3.      "AVRS" shall mean AVRS Inc. a provider of electronic registration software solutions in California.  "AVRS" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.  In April 2015, CVR acquired AVRS.

4.      "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF").  "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF.  "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

5.      "CVR" shall mean Computerized Vehicle Registration and shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.  Unless otherwise indicated, all references to "CVR" shall include "AVRS."

6.      "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to

2

include instances where one party addresses the other party but the other party does not necessarily respond.

7.      "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

8.      "EVR" shall mean electronic vehicle registration and titling.

9.       "Including" (in addition to its usual meanings) shall mean including but not limited to.

10.      The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

11.      "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF.   "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

12.      "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## **INSTRUCTIONS**

1.      If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2.      To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3.      If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.      Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.      The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.      The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.      Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8. Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## INTERROGATORIES

**INTERROGATORY NO. 1** . Identify each EVR Provider (including CVR) that is (or was) enrolled in the CDK 3PA Program, including the beginning date and, if applicable, the end date of their enrollment, and the state EVR markets in which they participated at the time of their enrollment.

**INTERROGATORY NO. 2** . For each EVR Provider identified in response to Interrogatory No. 1, from 2011 to the present, identify the price they paid and/or pay on a per-month, per-rooftop basis for participation in the 3PA program, and the total monthly and annual 3PA fees that the EVR provider or providers have paid to CDK since joining the 3PA program. For the avoidance of doubt, if prices paid have changed for any EVR Provider since January 1, 2011, please describe those changes and the date(s) they were made.

**INTERROGATORY NO. 3** . For each EVR Provider identified in response to Interrogatory No. 1, identify the data elements they receive and/or have received access to as participants in the 3PA program. For the avoidance of doubt, if the data elements or data access has changed for any EVR Provider since January 1, 2011, please describe those changes and the date(s) they were made.

**INTERROGATORY NO. 4** . Since January 1, 2011 to the present, identify every instance CDK received a request by an EVR Provider to participate in the 3PA program, including the date of the request, CDK's responses to the request, and the final resolution of the request, including the terms and pricing, if any, CDK offered to the EVR Provider.

**INTERROGATORY NO. 5** .  For each instance identified in response to Interrogatory No. 4, identify the employee or employees that made the final decision regarding CDK's response to the EVR Provider's request, including, if applicable, the terms and pricing offered to the EVR Provider.

**INTERROGATORY NO. 6** .  For each year from January 1, 2011 to the present, identify the financial benefits that CDK has received as a result of its 80% ownership of CVR, including but not limited to, any profit distributions.

**INTERROGATORY NO. 7** .  Describe Your involvement in the management and operations of CVR, including, but not limited to:  (1) Your role in the hiring and firing of CVR officers and employees; (2) Your control over CVR's budgets and capital investments; (3) Your role in CVR's marketing efforts; (4) Your participation in CVR's internal business meetings; and (5) the selection and arrangement of CVR's physical office locations.

**INTERROGATORY NO. 8** .  Describe the scope, purpose, and duration (i.e., when it started) of the "Closed Category" described in CDK's documents with respect to the ability of CVR competitors to join the 3PA program, including which employee or employees formulated and then enforced the Closed Category.

**INTERROGATORY NO. 9** .  Identify all communications between CDK and Reynolds – whether at meetings of CVR's Board of Directors or otherwise – regarding MVSC's access to dealer data.

**INTERROGATORY NO. 10**          Identify any valuation of AVRS or CVR performed by or on behalf of CDK, including the party performing the valuation, the date, and the conclusions reached.

Dated:  November 21, 2018                    Respectfully submitted,

                                             */s/ Derek T. Ho*
                                             Derek T. Ho
                                             **KELLOGG, HANSEN, TODD,**
                                             **  FIGEL & FREDERICK, P.L.L.C.**
                                             1615 M Street, NW, Suite 400
                                             Washington, D.C. 20036
                                             (202) 326-7900
                                             dho@kellogghansen.com

                                             *Counsel for Plaintiff MVSC*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 21, 2018, I caused a true and correct copy of the

foregoing MVSC INTERROGATORIES FOR DEFENDANT CDK GLOBAL, LLC to be

served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com


 */s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow Jr.<br>Magistrate Judge Jeffery T. Gilbert |

**PLAINTIFF MVSC'S FIRST SET OF INTERROGATORIES
FOR DEFENDANT COMPUTERIZED VEHICLE REGISTRATION**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Motor Vehicle Software Corporation ("MVSC") hereby requests that Defendant Computerized Vehicle Registration ("CVR") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1. "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

2. "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

3. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

4. "AVRS" shall mean AVRS Inc. a provider of electronic registration software solutions in California. "AVRS" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants. In April 2015, CVR acquired AVRS.

5. "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF"). "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6. "CVR" shall mean Computerized Vehicle Registration and shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers,

managers, employees, attorneys, and accountants. Unless otherwise indicated, all references to "CVR" shall include "AVRS."

7. "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

8. "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both. For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

9. "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF. "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

10. The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers, as described in Paragraphs 7-15 of the SoAF.

11. "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

12. "EVR" shall mean electronic vehicle registration and titling.

13. "Including" (in addition to its usual meanings) shall mean including but not limited to.

14. "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

15. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16. "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17. "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are unaffiliated with the DMS provider.

18. "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## **INSTRUCTIONS**

1. If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever

4

information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2. To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3. If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4. Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5. The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6. The singular includes the plural, and vice versa, so as to make the question more inclusive.

7. Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8. Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## **INTERROGATORIES**

**INTERROGATORY NO. 1**.  Identify when CVR – including AVRS – became enrolled in the CDK 3PA and/or RCI programs.

**INTERROGATORY NO. 2** .  From 2011 to the present, identify the price CVR – including AVRS – paid on a per-month, per-rooftop basis for participation in the 3PA and RCI programs, and the total monthly and annual 3PA and RCI fees that CVR paid to CDK and Reynolds for data integration.  For the avoidance of doubt, if the prices have changed since January 1, 2011, please identify those changes and the date(s) they were made.

**INTERROGATORY NO. 3** .  Identify the data elements to which CVR – including AVRS – receives and/or has received access as a participant in the 3PA and/or RCI programs. For the avoidance of doubt, if the data elements or data access has changed since January 1, 2011, please describe those changes and the date(s) they were made.

**INTERROGATORY NO. 4** .  For 2011 to the present, for each DMS for which CVR – including AVRS – obtains data, describe the method(s) by which CVR has accessed the data and the prices paid (whether on a per-month, per rooftop basis or otherwise) for each method of access.  If CVR has accessed data in more than one method for a particular DMS, then each method of access and the price for that method should be identified.  For the avoidance of doubt, if the prices or methods of access have changed since January 1, 2011, please describe those changes and the date(s) they were made.

By way of illustration, Your answer could take the form of the following tables:

**CVR**

| DMS | Method(s) of Access | Price(s) |
|---|---|---|
| Auto/Mate | | |
| Dealertrack | | |
| CDK | | |
| Reynolds | | |
| [Continue Listing DMS Types] | | |

**AVRS**

| DMS | Method(s) of Access | Price(s) |
|---|---|---|
| Auto/Mate | | |
| Dealertrack | | |
| CDK | | |
| Reynolds | | |
| [Continue Listing DMS Types] | | |

**INTERROGATORY NO. 5** .  For each year from January 1, 2011, to the present, identify each member of CVR's Board of Directors.

**INTERROGATORY NO. 6** .  For each year from January 1, 2011 to the present, identify (1) each state in which CVR – including AVRS – operated and/or operates, (2) CVR's market share in each state, and (3) CVR's competitors, if any, in each state.  For avoidance of doubt, do not aggregate the market shares of CVR and AVRS.

**INTERROGATORY NO. 7** .  For each year from January 1, 2011 to the present – on a monthly, yearly, and state-by-state basis – identify the revenues, profits, and profit margins earned by CVR.  For avoidance of doubt, do not aggregate the responses for CVR and AVRS.

**INTERROGATORY NO. 8** .  For each year from January 1, 2011 to the present, identify the average, marginal, or incremental costs incurred, and cost allocations made, by CVR.

**INTERROGATORY NO. 9** .  Identify your forecasts of (1) revenues and (2) market share in each state geographic market in which you have operated or have considered operating for periods between 2015 and 2023.

**INTERROGATORY NO. 10** .   Identify the factor or factors you consider when determining whether to enter a new state EVR market, refrain from entering a new state EVR market, or exit a state EVR market.

7

**INTERROGATORY NO. 11** .  Identify all dealerships – no matter the DMS they use – that have switched their EVR Provider from MVSC to CVR, from January 1, 2013 to the present, and the reasons therefor.

**INTERROGATORY NO. 12** .  Identify all communications between CVR and CDK and/or Reynolds – whether at meetings of CVR's Board of Directors or otherwise – regarding MVSC's access to dealer data.


Dated:  November 21, 2018                     Respectfully submitted,

                                               */s/ Derek T. Ho*
                                               Derek T. Ho
                                               **KELLOGG, HANSEN, TODD,**
                                                 **FIGEL & FREDERICK, P.L.L.C.**
                                               1615 M Street, NW, Suite 400
                                               Washington, D.C. 20036
                                               (202) 326-7900
                                               dho@kellogghansen.com

                                               *Counsel for Plaintiff MVSC*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2018, I caused a true and correct copy of the

foregoing MVSC INTERROGATORIES FOR COMPUTERIZED VEHICLE REGISTRATION

to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow Jr. Magistrate Judge Jeffery T. Gilbert |

**PLAINTIFF MVSC'S SECOND SET OF INTERROGATORIES
FOR DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Motor Software Vehicle Corporation ("MVSC") hereby requests that Defendant The Reynolds and Reynolds Company ("Reynolds") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

1

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.      "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.      "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF"). "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.      "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to

include instances where one party addresses the other party but the other party does not necessarily respond.

7.  "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

8.  "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF.  "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9.  The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers, as described in Paragraphs 7-15 of the SoAF.

10.  "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

11.  "Including" (in addition to its usual meanings) shall mean including but not limited to.

12.  "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

13.  "OEM" shall mean Original Equipment Manufacturer and shall include the present or former predecessors, subsidiaries, divisions, departments, and operating units of any Original Equipment Manufacturer.

14.    "Price Secrecy Provision" means any contractual provision designed to prevent vendors from informing dealers or other third parties about the pricing charged under the 3PA or RCI programs.

15.    The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16.    "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17.    "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are unaffiliated with the DMS provider.

18.    "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

19.    "Whitelisting" shall mean protecting DMS login credentials from disruption or blocking, including but not limited to setting a "no disruption" security level for a specific vendor, OEM, dealership, and/or data integrator.

20.    "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant

manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## INSTRUCTIONS

1.      If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2.      To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3.      If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.      Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.      The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.      The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.       Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8.       Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## INTERROGATORIES

**INTERROGATORY NO. 10**       For each Reynolds document custodian, please identify from January 1, 2013, to the present:  (1) the mobile carrier and telephone number for each document custodian; and (2) the office landline telephone number and carrier for each document custodian.  For the avoidance of doubt, if either the telephone number or carrier changed for a particular custodian from January 1, 2013, to the present, please make that clear in your answer.

**INTERROGATORY NO. 11**       Reynolds has publicly and repeatedly stated:  "The data belongs to the dealers.  We all agree on that."  *See*, *e.g.*, Authenticom Dkt. No. 64, Ex. 4. Reynolds has also stated to dealers on its website:  "Your Data, Your Way.  You own your data." *Id*. Ex. 14.  Please identify each specific data element to which Reynolds referred when it stated that "the data belongs to the dealers" and "[y]ou own your data."

**INTERROGATORY NO. 12**       Identify all functionality and/or types of data access that third party add-on application providers requested that You declined to provide as part of the RCI program.

**INTERROGATORY NO. 13**       Identify any vendor that Reynolds has denied admission into the RCI program because that vendor created a risk of a data breach, degraded system performance, or data corruption, including the identity of the vendor, the date on which they were denied admission to the RCI program, and the basis for such denial.

Dated: November 27, 2018                    Respectfully submitted,

                                        */s/ Derek T. Ho*

                                        Derek T. Ho
**KELLOGG, HANSEN, TODD,
FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Plaintiff MVSC*

7

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2018, I caused a true and correct copy of the

foregoing MVSC'S SECOND SET OF INTERROGATORIES FOR DEFENDANT THE

REYNOLDS AND REYNOLDS COMPANY to be served by email upon the following

recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

  */s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow Jr. Magistrate Judge Jeffery T. Gilbert |

**PLAINTIFFS COX AUTOMOTIVE AND AFFILIATES' FIRST SET OF
INTERROGATORIES FOR DEFENDANT CDK GLOBAL, LLC**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs Cox Automotive and its named-plaintiff affiliates ("Cox Automotive") hereby request that Defendant CDK Global, LLC ("CDK") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.     "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.     "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.     "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin.  "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.     "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF").  "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF.  "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.     "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to

2

include instances where one party addresses the other party but the other party does not necessarily respond.

7.     "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

8.     "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF.  "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9.     The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers, as described in Paragraphs 7-15 of the SoAF.

10.     "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

11.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

12.     "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

13.     "OEM" shall mean Original Equipment Manufacturer and shall include the present or former predecessors, subsidiaries, divisions, departments, and operating units of any Original Equipment Manufacturer.

14.     "Price Secrecy Provision" means any contractual provision designed to prevent vendors from informing dealers or other third parties about the pricing charged under the 3PA or RCI programs.

15.     The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16.     "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF.   "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17.     "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are unaffiliated with the DMS provider.

18.     "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

19.     "Whitelisting" shall mean protecting DMS login credentials from disruption or blocking, including but not limited to setting a "no disruption" security level for a specific vendor, OEM, dealership, and/or data integrator.

20.     "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant

manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

<u>**INSTRUCTIONS**</u>

1.      If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2.      To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3.      If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.      Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.      The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.      The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.      Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8.      Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## INTERROGATORIES

**INTERROGATORY NO. 1**      Identify all functionality and/or types of data access (such as creating and editing repair orders) that You provide, or have provided, to CDK add-on applications that You do not make available, or have not made available in the past, to at least one or more third party add-on application providers that receive data through the 3PA program.

**INTERROGATORY NO. 2**      Identify all functionality and/or types of data access that third party add-on application providers requested that You declined to provide as part of the 3PA program.

**INTERROGATORY NO. 3**      Identify all "closed categories" of add-on application providers that are (or have been) ineligible to participate in the 3PA program or are (or have been) eligible to participate in the 3PA program but only with certain restrictions (such as at increased rates or only in certain states) from January 1, 2013, to the present.  If such categories or restrictions are no longer in place, please describe the duration of any such categories or restrictions.

**INTERROGATORY NO. 4**      For each CDK document custodian, please identify from January 1, 2013, to the present:  (1) the mobile carrier and telephone number for each document custodian; and (2) the office landline telephone number and carrier for each document custodian.  For the avoidance of doubt, if either the telephone number or carrier changed for a particular custodian from January 1, 2013, to the present, please make that clear in Your answer.

**<u>INTERROGATORY NO. 5</u>**        CDK has publicly and repeatedly stated that it "has always understood that dealerships own their data." *See*, *e.g.*, Authenticom Dkt. No. 63, Exs. 15, 16. Please identify each specific data element to which CDK referred when it stated that "dealerships own their data."

Dated: November 27, 2018                    Respectfully submitted,

                                            */s/ Derek T. Ho*
                                            Derek T. Ho
                                            **KELLOGG, HANSEN, TODD,
                                            FIGEL & FREDERICK, P.L.L.C.**
                                            1615 M Street, NW, Suite 400
                                            Washington, D.C. 20036
                                            (202) 326-7900
                                            dho@kellogghansen.com

                                            *Counsel for Plaintiff Cox Automotive,
                                            Inc. and its named-plaintiff affiliates*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 27, 2018, I caused a true and correct copy of the

foregoing COX AUTOMOTIVE, INC.'S FIRST SET OF INTERROGATORIES FOR

DEFENDANT CDK GLOBAL, LLC to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

_/s/ Derek T. Ho_____
Derek T. Ho

# EXHIBIT F

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IN RE: DEALER MANAGEMENT
SYSTEMS ANTITRUST LITIGATION

MDL No. 2817
Case No. 18 C 864

This Document Relates to All Cases

Hon. Robert M. Dow Jr.
Magistrate Judge Jeffery T. Gilbert

**PLAINTIFF AUTOLOOP'S FIRST SET OF INTERROGATORIES
FOR DEFENDANT CDK GLOBAL, LLC**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Loop, LLC

d/b/a AutoLoop ("AutoLoop") hereby requests that Defendant CDK Global, LLC ("CDK") answer

the following interrogatories, in writing and under oath, no later than thirty (30) days after service

of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to

Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

1

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.      "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.      "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF"). "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.      "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to

include instances where one party addresses the other party but the other party does not necessarily respond.

7.      "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

8.      "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF.  "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9.      The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers, as described in Paragraphs 7-15 of the SoAF.

10.     "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

11.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

12.     "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

13.     "OEM" shall mean Original Equipment Manufacturer and shall include the present or former predecessors, subsidiaries, divisions, departments, and operating units of any Original Equipment Manufacturer.

14. "Price Secrecy Provision" means any contractual provision designed to prevent vendors from informing dealers or other third parties about the pricing charged under the 3PA or RCI programs.

15. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16. "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17. "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are unaffiliated with the DMS provider.

18. "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

19. "Whitelisting" shall mean protecting DMS login credentials from disruption or blocking, including but not limited to setting a "no disruption" security level for a specific vendor, OEM, dealership, and/or data integrator.

20. "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant

manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

**<u>INSTRUCTIONS</u>**

1.      If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2.      To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3.      If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.      Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.      The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.      The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.     Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8.     Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## INTERROGATORIES

**INTERROGATORY NO. 1**          Identify and describe the functionality and service of each add-on application that CDK has offered or sold from January 1, 2011 to the present, including the date on which CDK launched or acquired the application.

**INTERROGATORY NO. 2**          For each add-on application described in your response to Interrogatory No. 1, state (1) the per-month, per-rooftop, per-customer price that CDK has charged for each add-on application from January 1, 2011 to the present; and (2) the list of dealership customers that have used each add-on application by month (and the DMS provider used by each such dealership customer).

**INTERROGATORY NO. 3**          For each add-on application described in your response to Interrogatory No. 1, state the (1) revenues, (2) profits, and (3) costs on a monthly, quarterly, and/or annual basis, from January 1, 2011 to the present.  With respect to costs, please identify costs by type (e.g., variable, incremental, fixed, etc.).

**INTERROGATORY NO. 4**          For each add-on application described in your response to Interrogatory No. 1, state the data integration service or services used by the application by DMS type and number of dealers, from 2011 to the present.

**INTERROGATORY NO. 5**          Identify any CDK add-on applications that are (or have been) enrolled in the Reynolds RCI program, from January 1, 2011 to the present, and for all

such applications identify the data integration service the CDK add-on application was using before receiving data through the RCI program.

**INTERROGATORY NO. 6**        Identify the projections with respect to the revenues, profits, and costs of for each of the add-on applications identified in Interrogatory No. 1, from January 1, 2013, to the present.  For the avoidance of doubt, Your response should include projections going forward as far as You currently have projections.

**INTERROGATORY NO. 7**        Identify any instance after January 1, 2015 in which CDK has allowed a vendor to access a CDK DMS through means other than 3PA as long as the vendor pays the fees associated with 3PA, including the identity of the vendor and applications at issue, the dates on which CDK allowed such access, and the fees charged to such vendor by CDK.

**INTERROGATORY NO. 8**        Identify any vendor that CDK has denied admission into the 3PA program because that vendor created a risk of a data breach, degraded system performance, or data corruption, including the identity of the vendor, the date on which they were denied admission to the 3PA program, and the basis for such denial.

**INTERROGATORY NO. 9**        Identify all instances in which CDK has enforced or threatened to enforce the Price Secrecy Provision against a vendor, whether by imposing a fine, threatening to terminate the vendor from the 3PA program, terminating the vendor from the 3PA program, or otherwise.

Dated:  November 27, 2018                    Respectfully submitted,

                                             */s/ Derek T. Ho*          
                                             Derek T. Ho
                                             **KELLOGG, HANSEN, TODD,**
                                             **FIGEL & FREDERICK, P.L.L.C.**
                                             1615 M Street, NW, Suite 400
                                             Washington, D.C. 20036
                                             (202) 326-7900
                                             dho@kellogghansen.com

                                             *Counsel for Plaintiff AutoLoop*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2018, I caused a true and correct copy of the

foregoing AUTOLOOP'S FIRST SET OF INTERROGATORIES FOR DEFENDANT CDK

GLOBAL, LLC to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com


        _/s/ Derek T. Ho_____
        Derek T. Ho

# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow Jr. Magistrate Judge Jeffery T. Gilbert |

**PLAINTIFF AUTHENTICOM'S SECOND SET OF INTERROGATORIES**
**FOR DEFENDANT CDK GLOBAL, LLC**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Authenticom, Inc. ("Authenticom") hereby requests that Defendant CDK Global, LLC ("CDK") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.      "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin.  "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.      "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF").  "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF.  "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.      "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to

include instances where one party addresses the other party but the other party does not necessarily respond.

7.       "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

8.       "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF.  "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9.       The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers, as described in Paragraphs 7-15 of the SoAF.

10.     "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

11.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

12.     "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF. "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

13.     "OEM" shall mean Original Equipment Manufacturer and shall include the present or former predecessors, subsidiaries, divisions, departments, and operating units of any Original Equipment Manufacturer.

14. "Price Secrecy Provision" means any contractual provision designed to prevent vendors from informing dealers or other third parties about the pricing charged under the 3PA or RCI programs.

15. The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16. "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF. "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17. "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are unaffiliated with the DMS provider.

18. "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

19. "Whitelisting" shall mean protecting DMS login credentials from disruption or blocking, including but not limited to setting a "no disruption" security level for a specific vendor, OEM, dealership, and/or data integrator.

20. "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant

manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## INSTRUCTIONS

1.      If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2.      To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3.      If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.      Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.      The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.      The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.    Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8.    Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## INTERROGATORIES

**INTERROGATORY NO. 15**    For each OEM that has purchased data integration from CDK, please identify whether that access was provided by DMI, IntegraLink, or some other CDK business, the DMS provider(s) of the dealers whose data was accessed, and the dates of such services, from January 1, 2013, to the present.

**INTERROGATORY NO. 16**    For each OEM identified in response to Interrogatory No. 17, please identify the price per month, per rooftop for the data integration CDK provided.  If the prices charged varied depending on the dealer's DMS provider or the type of data access, please provide each set of prices.  For the avoidance of doubt, if the prices changed from January 1, 2013, to the present, please identify each price change.

**INTERROGATORY NO. 17**    Identify any CDK dealerships that have signed a Master Services Agreement ("MSA") that eliminates any language discussing dealer agents and/or the ability of agents of the dealer to access the DMS (as referenced in ¶ 75 and n.52 of your Authenticom Counterclaims (Dkt. 229)), including the date that any dealership or dealerships signed Your MSA without the "agent" language.

**INTERROGATORY NO. 18**    From January 1, 2014, to the present, identify any and all costs of your efforts to block Authenticom and other independent integrators from the CDK DMS.

6

**<u>INTERROGATORY NO. 19</u>**     From January 1, 2014, to the present, identify any and all costs you have incurred to fix any alleged data corruption and/or data security problems that you purport Authenticom and/or other independent integrators have caused.

Dated:  November 27, 2018

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
**FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Plaintiff Authenticom, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2018, I caused a true and correct copy of the

foregoing AUTHENTICOM'S SECOND SET OF INTERROGATORIES FOR DEFENDANT

CDK GLOBAL, LLC to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

  */s/ Derek T. Ho*
Derek T. Ho

# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18 C 864 |
| This Document Relates to All Cases | Hon. Robert M. Dow Jr. Magistrate Judge Jeffery T. Gilbert |

**PLAINTIFF AUTHENTICOM'S SECOND SET OF INTERROGATORIES
FOR DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Authenticom, Inc. ("Authenticom") hereby requests that Defendant The Reynolds and Reynolds Company ("Reynolds") answer the following interrogatories, in writing and under oath, no later than thirty (30) days after service of these interrogatories, and thereafter supplement such answers in a timely manner pursuant to Rule 26(e) of the Federal Rules of Civil Procedure through the date of any trial in this matter.

1

**DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.     "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.     "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.     "Authenticom" shall mean the Plaintiff in this action and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin. "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

5.     "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief, *Authenticom* Dkt. 87 (hereinafter, "SoAF"). "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF. "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.     "Communication" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form. The phrase "communication between" is defined to

include instances where one party addresses the other party but the other party does not necessarily respond.

7.     "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

8.     "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF.  "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9.     The "DMS Market" shall mean the market for the provision of DMS services to new car franchised automobile dealers, as described in Paragraphs 7-15 of the SoAF.

10.     "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

11.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

12.     "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF.  "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

13.     "OEM" shall mean Original Equipment Manufacturer and shall include the present or former predecessors, subsidiaries, divisions, departments, and operating units of any Original Equipment Manufacturer.

14.     "Price Secrecy Provision" means any contractual provision designed to prevent vendors from informing dealers or other third parties about the pricing charged under the 3PA or RCI programs.

15.     The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16.     "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF.  "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17.     "Third party integrators" shall mean data integrators that provide data integration services on a DMS platform and are unaffiliated with the DMS provider.

18.     "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

19.     "Whitelisting" shall mean protecting DMS login credentials from disruption or blocking, including but not limited to setting a "no disruption" security level for a specific vendor, OEM, dealership, and/or data integrator.

20.      "You," "Your" or "Your company" shall mean the responding Defendant, its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation any organization or entity that the responding Defendant

manages or controls, together with all present and former directors, officers, employees, agents, representatives or any persons acting or purporting to act on behalf of the responding Defendant.

## <u>INSTRUCTIONS</u>

1.      If any interrogatory cannot be answered in full after exercising due diligence to secure the information to do so, please so state and answer the interrogatory to the extent possible, specifying any inability to answer the remainder of any such interrogatory, and stating whatever information or knowledge is presently available to you concerning the unanswered portion of said interrogatory.

2.      To the extent that you consider any of the following interrogatories objectionable, answer so much of each interrogatory and each part thereof as is not objectionable in your view and separately state that part of each interrogatory as to which you raise objection and each ground for each such objection.

3.      If you object to any interrogatory or part thereof on the claim of privilege, identify each statement or other information for which the privilege is claimed and provide a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5).

4.      Whenever you are instructed to state a date or a dollar amount, if such date or amount is unknown to you, state your best estimate of such date or amount and indicate that it is an estimate.

5.      The use of the past tense shall include the present tense, and the use of the present tense shall include the past tense, so as to make the question inclusive rather than exclusive.

6.      The singular includes the plural, and vice versa, so as to make the question more inclusive.

7.      Each question is to be accorded a separate answer, and questions are not to be combined for the purpose of supplying a common answer thereto.

8.      Unless otherwise noted, the date range applicable to each Interrogatory shall be January 1, 2011, to the present.

## INTERROGATORIES

**INTERROGATORY NO. 12**      Identify and describe the functionality and service of each add-on application that Reynolds has offered or sold from January 1, 2011 to the present, including the date on which Reynolds launched or acquired the application.

**INTERROGATORY NO. 13**      For each add-on application described in your response to Interrogatory No. 12, state (1) the per-month, per-rooftop, per-customer price that Reynolds has charged for each add-on application from January 1, 2011 to the present; and (2) the list of dealership customers that have used each add-on application by month (and the DMS provider used by each such dealership customer).

**INTERROGATORY NO. 14**      For each add-on application described in your response to Interrogatory No. 12, state the (1) revenues, (2) profits, and (3) costs on a monthly, quarterly, and/or annual basis, from January 1, 2011 to the present.  With respect to costs, please identify costs by type (e.g., variable, incremental, fixed, etc.).

**INTERROGATORY NO. 15**      For each add-on application described in your response to Interrogatory No. 12, state the data integration service or services used by the application by DMS type and number of dealers, from 2011 to the present.

**INTERROGATORY NO. 16**      Identify any Reynolds add-on applications that are (or have been) enrolled in the CDK 3PA program, from January 1, 2011 to the present, and for all

such applications identify the data integration service the Reynolds add-on application was using before receiving data through the 3PA program.

**INTERROGATORY NO. 17**     Identify the projections with respect to the revenues, profits, and costs of for each of the add-on applications identified in Interrogatory No. 12, from January 1, 2013, to the present.  For the avoidance of doubt, Your response should include projections going forward as far as You currently have projections.

**INTERROGATORY NO. 18**     For each OEM that has purchased data integration from Reynolds, please describe how that access was provided, the DMS provider(s) of the dealers whose data was accessed, and the dates of such services, from January 1, 2013, to the present.

**INTERROGATORY NO. 19**     For each OEM identified in response to Interrogatory No. 19, please identify the price per month, per rooftop for the data integration Reynolds provided. If the prices charged varied depending on the dealer's DMS provider or the type of data access, please provide each set of prices.  For the avoidance of doubt, if the prices changed from January 1, 2013, to the present, please identify each price change.

**INTERROGATORY NO. 20**     From January 1, 2011, to the present, identify all security protections Reynolds implemented for its DMS, including the date on which they were implemented.

**INTERROGATORY NO. 21**     From January 1, 2011, to the present, identify any and all costs of your efforts to fix any alleged data corruption or data security problems that you purport Authenticom and other independent integrators have caused.

**INTERROGATORY NO. 22**     Identify all instances in which Reynolds has enforced or threatened to enforce the Price Secrecy Provision against a vendor, whether by imposing a fine,

threatening to terminate the vendor from the RCI program, terminating the vendor from the RCI program, or otherwise.

Dated:  November 27, 2018    Respectfully submitted,

        */s/ Derek T. Ho*
        Derek T. Ho
        **KELLOGG, HANSEN, TODD,**
        **FIGEL & FREDERICK, P.L.L.C.**
        1615 M Street, NW, Suite 400
        Washington, D.C. 20036
        (202) 326-7900
        dho@kellogghansen.com

        *Counsel for Plaintiff Authenticom, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2018, I caused a true and correct copy of the foregoing AUTHENTICOM'S SECOND SET OF INTERROGATORIES FOR DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY to be served by email upon the following recipients:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

_/s/ Derek T. Ho_
Derek T. Ho

# EXHIBIT I

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

MILBERG TADLER PHILLIPS GROSSMAN LLP

One Pennsylvania Plaza 19th Floor ● New York, NY 10119 ● 212.594.5300 ● F 212.868.1229 ● www.milberg.com

November 30, 2018

*Via Electronic Mail*

Britt M. Miller, Esq.                                  Matt Provance, Esq.
Mayer Brown                                            Mayer Brown
71 South Wacker Drive                                  71 South Wacker Driver
Chicago, IL 60606                                      Chicago, IL  60606

    Re:  *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817,
          Kevin Witt

Dear Britt and Matt:

    We write to request that CDK add Kevin Witt as a document custodian.  During the
course of discovery, we have learned that Mr. Witt is an important witness who likely has a
number of relevant documents in his custodial file, particularly as it relates to DMI and
Integralink's data integration business (including DMI/Integralink's services on the Reynolds
DMS and CDK's efforts to evade Reynolds' pre-2014 blocking of DMI).   Mr. Witt is the sender
or recipient of more than 7,000 emails and presentations in CDK's productions to date, including
multiple documents that are highly relevant to this litigation.  *See, e.g.*, CDK-0870025; CDK-
0833234; CDK-0848284; CDK-0906706; CDK-0942388; CDK-0943316; CDK-2395864; CDK-
2722013.  Kevin Distelhorst testified at his deposition that Mr. Witt was Mr. Distelhorst's peer in
the executive leadership of DMI/Integralink, (Draft Tr. 187:10-15), and that part of Mr. Witt's
job responsibilities included devising automated methods to get around Reynolds' CAPTCHA
prompts (Draft Tr. at 187:5 – 188:2).

    Moreover, because Mr. Witt left CDK in September 2013, any burden on CDK in
collecting and producing responsive materials for Mr. Witt should be minimal.

    On a related note, in the event we seek to depose Mr. Witt, could you please let us know
if Mayer Brown represents him?

1

Very truly yours,

*s/ Joshua Hafenbrack*                              *s/ Elizabeth McKenna*

Joshua Hafenbrack                                Elizabeth McKenna

cc:  DMS External Service List

# EXHIBIT J

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

November 16, 2018

File Number: 48KZ-266044

**VIA EMAIL**

Christine A. Bonomo
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Ste. 400
Washington, DC 20036-3215
cbonomo@kellogghansen.com

> Re: *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL No. 2817 (N.D. Ill.)

Dear Christine:

I write this letter on behalf of Defendants in response to your November 8 letters regarding Defendants' transaction level data.

Your November 8 letters contains interrogatory or deposition style questions (10 to CDK, 9 to Reynolds) regarding certain data produced by Defendants. They are the second such letters that Defendants have received from you. Only three weeks earlier, on October 17, we received data letters from you collectively containing over 30 interrogatory or deposition style questions (counting subparts).

Defendants both responded to the questions posed by your October 17 letters in good faith. *See* CDK Letter, dated October 25; Reynolds Letter, dated October 24. Our responses were not an invitation to continue asking data questions through additional letters. As we informed you in those letters, the deadline to serve written discovery requests and the deadline to move to compel responses to previously served written discovery requests has passed. Accordingly, data questions posed to Defendants in the form of a letter are improper and untimely. The appropriate way to seek answers to such questions is through a deposition of a knowledgeable witness.

For these reasons, Defendants do not intend to continue responding to repeated letters from plaintiffs containing data questions and will not be responding to plaintiffs' November 8 letters.

Christine A. Bonomo
November 16, 2018
Page 2

Defendants are, however, willing to enter an agreement that the parties will exchange coordinated[1] depositions on written questions (of an agreed length) regarding their respective data productions at a mutually agreeable time pursuant to Fed. R. Civ. P. 31.

Defendants are both willing to proceed with answering data questions on this mutual and straightforward basis. Let us know if this is acceptable to plaintiffs.

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227863399.1

---

[1] I.e., each individual party will receive only *one* such deposition on written questions, with plaintiffs on the one hand, and defendants on the other, coordinating to submit a single non-duplicative set of requests to each individual party.

# EXHIBIT K

## Aundrea K Gulley

**From:** Aundrea K Gulley
**Sent:** Tuesday, December 4, 2018 11:06 AM
**To:** SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com
**Cc:** Miller, Britt M.; Reynolds Team
**Subject:** In re DMS MDL: January 2019 Depositions

Counsel,

Thank you for confirming Mr. Brockman's deposition for January 16th and 17th. We can now confirm Mr. Whitworth for January 18. We also appreciate you providing a date for Mr. Kirby's deposition, though we note, again, that the date was provided over a month after Defendants requested one and for a date six and a half weeks after the date originally requested. Neither is in compliance with the Deposition Protocol entered by the Court and Defendants reserve their rights. In any event, we will accept that date in order to keep this process moving.

We are working on your requests for Defendants' witnesses for January and expect to be back to you within the time allotted by the Deposition Protocol.

As to your request that Defendants identify the Plaintiff witnesses they would like to depose in January, our ability to meaningfully proceed with depositions is being materially impacted by the deficiencies in a number of Plaintiffs' document productions (*see, e.g.*, 11/28/18 Letter from A. Marovitz re: Cox production; 12/3/18 Letter from L. Caseria re: MVSC production)—as highlighted in the depositions taken to date. Nonetheless, reserving all of their rights, Defendants request the following:

- Paul Whitworth (Cox) – holdover from December – January 18 (Atlanta) – CONFIRMED
- Alex Eckelberry (AutoLoop) – January 23
- Napa Bulusu (MVSC) – January 25
- Chris Kirby (Authenticom) – holdover from December – January 30 (Detroit) - CONFIRMED.

Per the Protocol, please let us know no later than December 11 whether the dates for Mssrs. Eckelberry and Bulusu are acceptable to Plaintiffs or, if not, what other dates (within 14 days of the requested date) are available.

In addition to the above witnesses, Defendants intend to take a 30(b)(6) deposition of Continental Motors* in late January (preferably January 29). Defendants will issue the topics for the notice no later than early next week so that Plaintiffs can identify the witness and confirm availability.

Finally, for purposes of subpoenas to the following third parties, please let us know by close of business on Thursday, December 6, if they are represented by Kellogg (or other Plaintiff's counsel):

1. The Presidio Group
2. Travis Robinson
3. Steve Dolezel
4. Russel Gentry

Regards – Andi and Britt

* Continental Motors, we understand, includes the following affiliated entities: ACA Motors, Inc. d/b/a Continental Acura; Continental Autos, Inc. d/b/a Continental Toyota; Continental Classic Motors, Inc. d/b/a Continental Autosports; 5800 Countryside, LLC d/b/a Continental Mitsubishi; HDA Motors, Inc. d/b/a Continental Honda; H & H Continental

Motors, Inc. d/b/a Continental Nissan; Naperville Zoom Cars, Inc. d/b/a Continental Mazda; and NV Autos, Inc. d/b/a Continental Audi.

**Aundrea K. Gulley** | **Gibbs & Bruns LLP** | 1100 Louisiana Suite 5300 | Houston, TX 77002 | 713.650.8805 firm | 713.751.5258 direct | 713.750.0903 fax | agulley@gibbsbruns.com | www.gibbsbruns.com

# EXHIBIT L

| | |
|---|---|
| **From:** | **Nemelka, Michael N.**  mnemelka@kellogghansen.com |
| **Subject:** | Re: In re DMS MDL: January 2019 Depositions |
| **Date:** | December 6, 2018 at 5:04 PM |
| **To:** | Aundrea K Gulley  agulley@gibbsbruns.com |
| **Cc:** | SERVICE-EXTERNAL-DMS-MDL  SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com, Miller, Britt M. |
| | BMiller@mayerbrown.com, **ReynoldsTeam (gibbsbruns.com)**  reynoldsteam@gibbsbruns.com |

Dear Andi and Britt,

It is unreasonable to identify former employees of Authenticom on Tuesday and impose a deadline of two days later (today) for confirmation whether Kellogg Hansen will represent them.  We will let you know promptly regarding Travis Robinson, Steve Dolezel, and Russell Gentry.

With respect to The Presidio Group, you may not be aware that William Lamm no longer works there.  He is now at Presidio Technology Partners (PTP).  We assume that it is Mr. Lamm you are interested in, but please let us know.  If it is, then we can confirm we will represent PTP.  If it is The Presidio Group you are after, we are not representing them.

Thanks,
Mike

On Dec 4, 2018, at 11:06 AM, Aundrea K Gulley <agulley@gibbsbruns.com> wrote:

Counsel,

Thank you for confirming Mr. Brockman's deposition for January 16th and 17th.  We can now confirm Mr. Whitworth for January 18.  We also appreciate you providing a date for Mr. Kirby's deposition, though we note, again, that the date was provided over a month after Defendants requested one and for a date six and a half weeks after the date originally requested.  Neither is in compliance with the Deposition Protocol entered by the Court and Defendants reserve their rights.  In any event, we will accept that date in order to keep this process moving.

We are working on your requests for Defendants' witnesses for January and expect to be back to you within the time allotted by the Deposition Protocol.

As to your request that Defendants identify the Plaintiff witnesses they would like to depose in January, our ability to meaningfully proceed with depositions is being materially impacted by the deficiencies in a number of Plaintiffs' document productions (*see, e.g.*, 11/28/18 Letter from A. Marovitz re: Cox production; 12/3/18 Letter from L. Caseria re: MVSC production)—as highlighted in the depositions taken to date. Nonetheless, reserving all of their rights, Defendants request the following:

- Paul Whitworth (Cox) – holdover from December – January 18 (Atlanta) – CONFIRMED
- Alex Eckelberry (AutoLoop) – January 23
- Napa Bulusu (MVSC) – January 25
- Chris Kirby (Authenticom) – holdover from December – January 30 (Detroit) - CONFIRMED.

Per the Protocol, please let us know no later than December 11 whether the dates for Mssrs. Eckelberry and Bulusu are acceptable to Plaintiffs or, if not, what other dates (within 14 days of the requested date) are available.

In addition to the above witnesses, Defendants intend to take a 30(b)(6) deposition of Continental Motors* in late January (preferably January 29).  Defendants will issue the topics for the notice no later than early next week so that Plaintiffs can identify the

witness and confirm availability.

Finally, for purposes of subpoenas to the following third parties, please let us know by close of business on Thursday, December 6, if they are represented by Kellogg (or other Plaintiff's counsel):

1. The Presidio Group
2. Travis Robinson
3. Steve Dolezel
4. Russel Gentry

Regards – Andi and Britt

\* Continental Motors, we understand, includes the following affiliated entities: ACA Motors, Inc. d/b/a Continental Acura; Continental Autos, Inc. d/b/a Continental Toyota; Continental Classic Motors, Inc. d/b/a Continental Autosports; 5800 Countryside, LLC d/b/a Continental Mitsubishi; HDA Motors, Inc. d/b/a Continental Honda; H & H Continental Motors, Inc. d/b/a Continental Nissan; Naperville Zoom Cars, Inc. d/b/a Continental Mazda; and NV Autos, Inc. d/b/a Continental Audi.

**Aundrea K. Gulley** | **Gibbs & Bruns LLP** | 1100 Louisiana Suite 5300 | Houston, TX 77002 | 713.650.8805 firm | 713.751.5258 direct | 713.750.0903 fax | agulley@gibbsbruns.com | www.gibbsbruns.com

# EXHIBIT M

**From:** Miller, Britt M. BMiller@mayerbrown.com
**Subject:** RE: MDL 2817 - Deposition Notices (Petruzelli, Jezek)
**Date:** November 20, 2018 at 1:05 PM
**To:** Nemelka, Michael N. mnemelka@kellogghansen.com, Provance, Matthew D. MProvance@mayerbrown.com, SERVICE-EXTERNAL-DMS-MDL SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com
**Cc:** Marovitz, Andrew S. AMarovitz@mayerbrown.com, Ryan, Mark MRyan@mayerbrown.com



Mike –

Thank you for your note.  We can confirm December 11 in Washington, DC for Mr. Rodeghro.  As for Mr. Kirby, it is disappointing that notwithstanding our October 29 request for his deposition he could not find a single day in December to sit for deposition.  Please let us know what days he is available in January so that we can promptly get him rescheduled.

Finally, as to Mr. Whitworth, we agree that the correspondence is clear on the parties' respective efforts (or lack thereof) to meaningfully engage in scheduling depositions in this matter.  We disagree that your reading of that correspondence is accurate.  A significant number of Defendants' executives, including a number of former employees, have moved their schedules around to accommodate Plaintiffs.  We offered any one of 7 business days in December for Mr. Whitworth's deposition; Plaintiffs rejected all of those and offered only one alternative.  In any event, can Mr. Whitworth be available on January 11, 15, 16, 17, or 18 instead?  Please let us know.

- Britt  & Andi

_____

**Britt M. Miller**
**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail:** bmiller@mayerbrown.com

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Tuesday, November 20, 2018 12:22 PM
**To:** Miller, Britt M.; Provance, Matthew D.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Marovitz, Andrew S.; Ryan, Mark
**Subject:** Re: MDL 2817 - Deposition Notices (Petruzelli, Jezek)

**\*\*EXTERNAL SENDER\*\***

Britt,

Mr. Rodeghro's deposition will be in DC.

I also have an update regarding Mr. Kirby's deposition.   He is unable to sit for a deposition in December, but he is available in January.

Thanks,
Mike

On Nov 16, 2018, at 6:17 PM, Nemelka, Michael N. <mnemelka@kellogghansen.com> wrote:

On Nov 16, 2018, at 6:44 PM, Nemelka, Michael N. <mnemelka@kellogghansen.com> wrote:

Britt,

That is disappointing that Defendants have taken Mr. Whitworth off the December calendar after he moved his schedule around to accommodate your requested deposition date within a matter of two days.   And as is clear from the correspondence, if Defendants had requested the December depositions promptly as we requested, the scheduling conflicts likely could have been avoided.

Thanks,
Mike

---

**From:** Miller, Britt M. [mailto:BMiller@mayerbrown.com]
**Sent:** Friday, November 16, 2018 6:05 PM
**To:** Nemelka, Michael N. <mnemelka@kellogghansen.com>; Provance, Matthew D. <MProvance@mayerbrown.com>; SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>
**Subject:** RE: MDL 2817 - Deposition Notices (Petruzelli, Jezek)

Mike –

Without addressing all of the statements in your email (a number of which are inaccurate and with which we disagree), the fact remains that Defendants have worked cooperatively with Plaintiffs to find dates for all of Plaintiffs' requested witnesses, the only exception being Leigh Ann Conver for which Plaintiffs rejected two proposed alternative dates (one in November, one in December).  Plaintiffs, in turn, have not only rejected all of Defendants' proposed December dates for Plaintiffs' witnesses, but still, almost three weeks after Defendants' October request for a December 17 date for Mr. Kirby, have provided neither confirmation nor an alternative date.  While we continue to wait for a date for Mr. Kirby, we respond as follows:

- Depending on location, Defendants accept December 11 for Mr. Rodeghro.
- Although we find it hard to believe that December 13 is the only date Mr. Whitworth is available in the time frame Defendants' requested, as previously stated, Defendants are unavailable on the 13th.  We will take Mr. Whitworth off-calendar and seek to find a mutually agreeable date in January.
- We appreciate that you continue to evaluate whether Mr. Munn's deposition can occur on the 20th instead of the 21st, but for the avoidance of doubt, Defendants are prepared to move forward on the 21st regardless.

Regards –

Britt & Andi

---

**Britt M. Miller**

**MAYER BROWN LLP**
**71 South Wacker Drive**
**Chicago, Illinois 60606-4637**
**Direct Dial: (312) 701-8663**
**Direct Fax: (312) 706-8763**
**e-mail: bmiller@mayerbrown.com**

---

**From:** Nemelka, Michael N. [mailto:mnemelka@kellogghansen.com]
**Sent:** Friday, November 09, 2018 3:52 PM
**To:** Provance, Matthew D.; SERVICE-EXTERNAL-DMS-MDL
**Cc:** Miller, Britt M.; Marovitz, Andrew S.; Ryan, Mark
**Subject:** RE: MDL 2817 - Deposition Notices (Petruzelli, Jezek)

**\*\*EXTERNAL SENDER\*\***

Matt,

We have been working diligently to find dates for the December witnesses, but given the holidays, work schedules, and most importantly, Defendants failure to timely request these depositions, it has been challenging. Indeed, as our correspondence shows, we repeatedly asked Defendants for their requested December depositions for this very reason. And even then, after we offered dates, Defendants have rejected all of them.

· With respect to Mr. Rodeghero, he is available on December 11th. We will let you know the location later.
· With respect to Mr. Whitworth, he is available on December 13 in Atlanta. That is two days within your requested date for him of December 11, and we are not able to accommodate your alternative dates.
· With respect to Mr. Munns, for now we cannot move the December 21 date to December 20, but we will continue to see if that will be a possibility.
· With respect to Mr. Kirby, we are still working on finding an available date and will get back to you as soon as we can.

Thanks,
Mike

---

**From:** Provance, Matthew D. [mailto:MProvance@mayerbrown.com]
**Sent:** Friday, November 9, 2018 3:27 PM
**To:** SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Cc:** Miller, Britt M. <BMiller@mayerbrown.com>; Marovitz, Andrew S. <AMarovitz@mayerbrown.com>; Ryan, Mark <MRyan@mayerbrown.com>
**Subject:** MDL 2817 - Deposition Notices (Petruzelli, Jezek)

Counsel –

Please see the attached deposition notices for Mr. Petruzelli and Mr. Jezek. Additionally, we have yet to hear from plaintiffs regarding our efforts to schedule the depositions of other witnesses in accordance with the Deposition Protocol Order. We agreed to these procedures, and defendants are abiding by them. We ask the same from plaintiffs.

- We are still awaiting a response to our email request from Tuesday, November 6, seeking a new date for the deposition of Mr. Rodeghero within 14 days of our requested date.
- We are still awaiting a response to our alternative proposals for Mr. Whitworth and Mr. Munns.
- We are still awaiting a response either confirming our December 17 date for Mr. Kirby or an alternative date. This request has been pending for two weeks.

Thank you,
Matt

_____

**Matt Provance**
Mayer Brown LLP
mprovance@mayerbrown.com
Tel: 312 701 8598
Fax: 312 706 9397

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities, including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Information about how we handle personal information is available in our Privacy Notice.

# EXHIBIT N

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
_____
(202) 326-7900
FACSIMILE:
(202) 326-7999

December 7, 2018

*Via Electronic Mail*

Ross M. MacDonald.
Gibbs & Bruns LLP
1100 Louisiana, Suite 5300
Houston, TX 77002

Re:      *In re: Dealer Management Systems Antitrust Litigation*, MDL No. 2817

Dear Ross:

Thanks for your letter of November 21, to which I write in response.

We agree that the parties should continue to confer in a respectful and professional manner. Part of that means honoring prior commitments. As described in my November 16th letter, that is something Defendants appear not to be doing. We do not think that is appropriate, especially where Authenticom relied on those prior commitments to undertake burdensome work.

That said, let's see if we can work through the issues.

## I.      Updated Financial Discovery

The current case schedule is based on a proposal that Defendants argued to the Court should be adopted. When you made that proposal to the Court, you were aware of all the facts that you say "are not materially different" today. Defendants therefore have no basis to argue that there should be a different schedule, especially after the Court's two-month extension to the fact discovery deadline. All the parties need to discuss, per the Court's instruction, is how to make up some of those two months at the back-end of the schedule.

You also mischaracterize our position. As I said in my letter, if Defendants want a refresh of Authenticom's financial documents kept in the ordinary course, then Authenticom will agree to provide it. But it will not undertake the burden of doing so multiple times. You state that Defendants want their refresh of Authenticom's financial documents before the parties discuss how to adjust the back-end of the case schedule. We will therefore provide Defendants with the updated financial documents promptly.

With respect to a refresh of Defendants' full financial information, MDL Plaintiffs will let Defendants know when they would like Defendants to provide that information.

## II.     Username & Password Policy

You are incorrect in your assumption, and as we wrote, Mr. Clements' testimony speaks for itself.

## III.     Slack Channels

As we've confirmed, Authenticom undertook a good faith search to identify the Slack channels that could contain responsive information, and reviewed and produced documents from those channels.  You state that there are some Slack communications that appear in email that were not produced in Slack channel form.  One reason for that is likely that we did not undertake the burden of producing duplicative documents and information.  But if there is unique information in the Slack channels, we will certainly investigate.  So that we can, could you please identify the communications to which you alluded?

## IV.     PCM Log Information

As I wrote, we believe that your request for PCM Logs is another instance of Defendants not honoring discovery commitments in this case, and ignoring the enormous burden that Authenticom undertook to create the DMS Access Log – even though it had no duty to create the document for Defendants.  Authenticom only undertook that burden because it resolved the discovery dispute with Defendants.  We have also repeatedly informed Defendants that Authenticom cannot retain the PCM Log Information because it is transitory data and would require a total system change that is beyond Authenticom's ability or means.

But again, in a further effort to address Defendants' demands, we have been investigating whether it is possible to create an example of a PCM Log, as Defendants request.  We have been undertaking this effort, and if it is possible, we expect to produce it to Defendants.

## V.     Axciom

Before we agree to produce documents outside of the agreed date range limitation, we would like to understand Defendants' claim of relevance regarding the 2012 Axciom security document.  In addition to being outside the agreed upon date range, it is fundamentally irrelevant – it cannot justify any security policies that Defendants adopted as it is something Defendants never knew about.  We fail to see the argument that a 2012 document has any bearing on what Defendants did starting in 2013 without knowledge of its existence.  If Defendants can articulate a relevant basis for the production of the document, we are happy to consider it.

## VI.     Screenshots

This week we produced replacement images for affected Authenticom, MVSC, Cox, and AutoLoop documents, and have therefore addressed this issue.

Very truly yours,

*s/  Michael N. Nemelka*

Michael N. Nemelka

- 2 -