**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

---

IN RE: DEALER MANAGEMENT SYSTEMS
ANTITRUST LITIGATION

This Document Relates to:

*ALL CASES*

MDL No. 2817
Case No. 18 C 864

Hon. Robert M. Dow, Jr.
Magistrate Judge Jeffery T. Gilbert

---

**INDIVIDUAL AND VENDOR CLASS PLAINTIFFS'
NOTICE FOR DECEMBER 13 STATUS CONFERENCE**

---

The Individual and Vendor Class Plaintiffs ("Plaintiffs") respectfully submit this Notice to address additional issues for discussion at tomorrow's status hearing. They are: (1) Interrogatory and Request for Admission ("RFA") written discovery, *see infra* Part I; (2) general status of deposition discovery, *see infra* Part II; (3) the fact that Defendants have taken or requested 14 depositions of the Individual and Vendor Class Plaintiffs, but requested only one Dealership Class deposition, contrary to Defendants' arguments when they advocated for needing 30 depositions and a 50/50 split, *see infra* Part III; and (4) the scheduling of MVSC depositions, *see infra* Part IV. We also respond briefly in writing to Defendants' baseless claims about needing to extend the case schedule even further, *see infra* Part V.

**I.     The Case Management Order Allows For the Service of Interrogatories and RFAs**

On November 21 and 27, 2018 – almost five months before the end of discovery – Plaintiffs served Defendants with Interrogatories. *See* Defs.' Notice, Dkt. 466, at 2-3. In their "Notice" filed yesterday, Defendants took the position (at 1-5) that Plaintiffs were required to serve any Interrogatories (and RFAs) on May 25, 2018, the Case Management Order's deadline for serving "discovery requests, search terms, and custodians." Dkt. 166, § 6. Defendants' argument (1) is a misreading of the Case Management Order; (2) should have raised earlier, as yesterday's Notice

was the first time Defendants indicated that this was their position; (3) would deprive MDL Plaintiffs of critical discovery tools; and (4) is improperly being used by Defendants in their effort to extend the case schedule even further.

1.      The Case Management Order states that the "[d]eadline to serve any additional, non-duplicative, coordinated discovery requests, search terms, and custodians" is May 25, 2018. *Id.* It does *not* say that all interrogatories and RFAs likewise needed to be served by that date. "Discovery requests," read in context, clearly refers to *document* requests – that is why "search terms" and "custodians" immediately follows "discovery requests." There are no "search terms" or "custodians" needed for the responses to Interrogatories and RFAs. It is also illogical and contrary to modern discovery practice to require the service of all Interrogatories and RFAs at the beginning of discovery – before Defendants have even substantially completed their document productions.

Defendants' argument is also inconsistent with their own actions. Authenticom is the only plaintiff that served Interrogatories on or before May 25, 2018, and in response to those Interrogatories, Defendants stated: "***[G]iven that discovery is ongoing and depositions have not yet occurred, CDK objects to this Interrogatory as premature.***" *See* Nemelka Decl. Ex. A, CDK's Resp. & Objs. to Authenticom's First Set of Interrogs. (May 7, 2018) at 11 (emphasis added). Indeed, Defendants repeatedly objected to Authenticom's Interrogatories as premature, even though they were served before May 25, 2018. *See*, *e.g.*, *id*. at 12 ("Finally, CDK objects to this Interrogatory as premature in that it not only seeks information subject to expert opinion and analysis but discovery, including of Authenticom and third parties, has not concluded such that this discovery request is an improper contention interrogatory."). Thus, if MDL Plaintiffs had served their Interrogatories on May 25, 2018 – just after Defendants objected to Authenticom's

Interrogatories as "premature" – then Defendants no doubt would have objected to them as "premature" too. *Id.* Defendants cannot have it both ways.

2.        Yesterday's Notice is the first time Defendants have indicated that all Interrogatories and RFAs needed to be served at the beginning of discovery in this MDL. If that was Defendants' position, then they should have made that clear for Judge St. Eve and for all parties. Instead, for the first time this case – and in a filing with the Court no less, without the courtesy of letting Plaintiffs know of their position in a letter or meet and confer – Defendants revealed their position in their Notice to this Court. Major discovery positions like this should not be "gotcha" moments. They should be the subject of clear communications with the Court when deadlines are set and with parties when discovery is served and discussed. But Defendants did neither. And it is important for this Court to understand that Judge St. Eve adopted Defendants' wording for the Case Management Order, and so this intended trap was apparently set by Defendants at the case schedule's inception. But the Plaintiffs had no knowledge that any such trap. The Court should reject this.

3.        Judge St. Eve cannot possibly have intended that *all* Interrogatories and RFAs needed to be served at the beginning of discovery – especially where the Plaintiffs could not know that was required. To read the Case Management Order as Defendants now do would deprive MDL Plaintiffs of the ability to serve Interrogatories and RFAs, two critical discovery tools. As Wright & Miller explain: "Despite [their] limitations, the usefulness, popularity, and versatility of written interrogatories have also been demonstrated by experience under Rule 33. Interrogatories are an effective way to obtain simple facts, to narrow the issues by securing admissions from the

other party, and to obtain information needed in order to make use of the other discovery procedures."  8B Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 2163 (3d ed.)("W&M").[1]

Defendants are trying to prevent MDL Plaintiffs from using these discovery tools allowed by the Federal Rules.  Accepting Defendants' argument would be highly prejudicial to MDL Plaintiffs.

**4.**  At bottom, Defendants' position is a vehicle for them to argue for a further extension of the case schedule.  But Defendants' arguments are baseless.  First, Defendants point to Plaintiffs' Second Set of Requests for Production as being late served, but as the Court is aware – CDK's motion for a protective order is fully briefed, *see* Dkts. 443, 460, 467 – Plaintiffs are only seeking discovery on two topics that arose *after* May 25, 2018, and therefore Plaintiffs could not have served discovery by that deadline.  Defendants' argument regarding a deadline for "written discovery" therefore boils down to Interrogatories and RFAs.  Second, on that score, Plaintiffs served their Interrogatories with nearly *five months* left in the discovery schedule.  The Rules require Defendants to answer Interrogatories within 30 days – this month – and so the suggestion that the April 15, 2019 fact discovery deadline needs to be extended because of Interrogatories served in November 2018 is not well taken.  If MDL Plaintiffs served Interrogatories within 30 days of the fact discovery deadline – and therefore would require a response *after* the April 2019 discovery cutoff – then Defendants could appropriately refuse to answer that discovery.  Late served discovery does not require an extension in the case schedule.  There is no basis for

---

[1] The treatise likewise has this to say on RFAs: "Rule 36 is often more effective than the other discovery rules. Litigants can formulate their own answers to interrogatories and to questions at a deposition and can state their position in an ambiguous and equivocal manner. Requests for admissions, however, are formulated by the requesting party and are closed–ended. . . .  In addition, responses to other discovery procedures are merely evidence to be introduced at trial and they are subject to contradiction at the trial.  An admission, unless it is allowed to be withdrawn, concludes the matter and avoids any need for proof at trial.  For both of these reasons admissions are more likely to be fruitful in defining and limiting the controversy than are the other devices."  W&M § 2253.

Defendants' argument that discovery served on *them* requires an extension of the case schedule to allow them to answer it. Be that as it may, Plaintiffs served their Interrogatories with five months to spare. Third, Defendants suggest (at 4-5) that written discovery for Interrogatories and RFAs should be re-opened, but in fact it was never closed, as discussed above. If Defendants want to serve additional RFAs and Interrogatories within their allowable limits, they are free to do so and Plaintiffs will respond accordingly.

## II.     The Parties Are On Track to Complete Their Depositions by the End of Discovery

The parties are on track to complete their depositions by the end of discovery. MDL Plaintiffs have taken nine (9) depositions, and have seven (7) more scheduled (including one tomorrow) through the end of January 2019, for a total of 16 completed or scheduled depositions. Please see the attached MDL Deposition Calendar identifying the completed and pending depositions. *See* Nemelka Decl. Ex. B. Thus, out of the thirty (30) total party depositions allotted to them by the Deposition Protocol Order (Dkt. 422), MDL Plaintiffs will have eleven (11) remaining depositions and three (3) corporate depositions (one for each of the three Defendants) to complete by April 15, 2019. MDL Plaintiffs are therefore very much on track to complete their allotted party depositions by the end of discovery. And of the 16 completed or scheduled depositions, MDL Plaintiffs have split them almost evenly between CDK and Reynolds (9 of CDK witnesses, and 7 of Reynolds witnesses). Here are the figures in table form:

| MDL Plaintiffs' Depositions of Defendant Witnesses | |
| --- | --- |
| Depositions taken or requested through January 2019 | 16 (CDK – 9 ; Reynolds – 7) |
| Remaining Depositions for February – April 2019 | 14 |

Defendants, for their part, have taken or identified 15 party depositions through the end of January. Of those, 14 have been witnesses from the Individual and Vendor Class Plaintiffs.

Defendants have requested only one deposition of a Dealership Class Plaintiff, a 30(b)(6) deposition of Continental Motors. And of the 14 depositions Defendants have taken or requested, half of them have been for Authenticom. Here is the breakdown by Plaintiff:

| Defendant Depositions of MDL Plaintiffs Through January 2019 | |
|---|---|
| **Plaintiff** | **Deponents** |
| Authenticom | 7 |
| AutoLoop | 3 |
| Cox Automotive | 2 |
| MVSC | 2 |
| Dealers | 1 |
| **Total** | **15** |

### III. Defendants' Total Number of Party Depositions Should Be Reduced to 20, or They Should Be Ordered to Take a Proportional Number of Dealership Class Plaintiff Depositions

To support their request for 30 depositions and a 50/50 split between MDL Plaintiffs and Defendants, CDK and Reynolds repeatedly cited the fact that the Dealership Class includes 25 named plaintiffs from which Defendants are entitled to discovery, and that therefore they needed 30 depositions to depose the necessary Dealership Class plaintiffs. *See* Dkt. 368 at 3-5 ("What *has* changed, however, is the addition" of new Plaintiffs like the 25 Dealership Class Plaintiffs "from which Defendants are entitled to discovery . . . . Any deposition split that does not give the two primary defendants at least as many depositions as Plaintiffs would unfairly prejudice Defendants."). But as shown above, Defendants have requested only *one* dealership deposition so far (out of the 15 they have taken or requested). At this rate, Defendants will take only *two*

depositions of the Dealership Class Plaintiffs, and *28* depositions of the Individual and Vendor Class Plaintiffs (including a total of *14* depositions of Authenticom).

Given Defendants' arguments for why they needed 30 depositions and an equal 50/50 split, this is an improper bait-and-switch. Defendants are using all of their depositions for the Individual and Vendor Class Plaintiffs, and virtually none for the Dealership Class Plaintiffs. Either Defendants should take a proportional number of depositions of the Dealership Class Plaintiffs – just as Defendants said they needed to – or the Court should reduce the total number of party depositions to 20 that Defendants can take.

**IV.     Defendants Should Schedule More Than One MVSC Deposition Per Week**

MVSC is located in Agoura Hills, California, an hour north of Los Angeles. While counsel for Defendants have attorneys in Los Angeles, counsel for MVSC are in Washington, D.C. For the convenience of the parties and counsel – and as a professional courtesy – MVSC has therefore requested (several times) that, to the extent Defendants intend to depose multiple MVSC witnesses, some of those depositions be scheduled the same week. Defendants have refused. Instead, Defendants noticed an MVSC deposition for November, one for January, and any future MVSC witnesses for the months thereafter. This has created unnecessary burdens on the parties and counsel. MVSC's counsel must fly from Washington, D.C. to Los Angeles and back. That results in a single MVSC deposition filling up four valuable work days (two days of travel; at least one day of preparation with the witness; and one day for the deposition). Defendants' counsel, however, are both located in Los Angeles: at the MVSC deposition taken to date, both CDK's and Reynolds' counsel were from Los Angeles.

Plaintiffs ask for no accommodation that they have not extended to Defendants: Plaintiffs agreed to two Reynolds depositions the same week in Houston – one on Wednesday (Dec. 5) and

the other on Friday (Dec. 7) – to help minimize burden on counsel and parties and for the sake of efficiency. MVSC respectfully requests that the Court suggest to Defendants that they extend the same courtesy.

## V.      Defendants' Arguments With Regard to the Case Schedule Are Baseless

When the Court extended the fact discovery deadline by two months to April 15, 2019, the Court stated that it was "not a soft deadline" but a hard one. Transcript at 68 (Oct. 5, 2018 hearing). MDL Plaintiffs stated at the hearing that there was a need for "a firm deadline subject only to extension based on an ordinary showing of good cause under Rule 16 so that everybody knows this really is the date that you all have to be targeting." *Id*. Otherwise, as MDL Plaintiffs predicted, Defendants would be doing exactly what they are trying to do now, which is to extend the case schedule without any basis. The Court should reject Defendants' attempt.

First, the parties are on track to complete their allotted depositions before April 15, 2019, as noted above. The Court extended the fact discovery deadline for two months for this very reason: so that the parties could complete the allotted depositions. And the parties are on track to do that.

Instead of identifying any basis to conclude that the parties are off track with respect to depositions, Defendants state (at 5) that Plaintiffs have "refus[ed] to put forward [their] witnesses." That is simply not true. There is not a single witness Defendants have requested that Plaintiffs have refused to put forward. The scheduling "difficulties" that Defendants point to are misleading, as explained in a footnote below if the Court desires to read the details.[2] The reality is that the scheduling of depositions has gone relatively smoothly given the many moving parts.

---

[2] Defendants say (at 5) that Plaintiffs have refused "to provide dates within 14 days of the requested date," but the one witness they are referring to is a former employee of Authenticom and Defendants wanted his deposition in December around the holidays. The former Authenticom employee could not arrange his schedule in time to meet Defendants' demands, especially given the time of year. But his deposition now has a confirmed date, and

Second, Defendants' claim (at 6) that follow-up to Plaintiffs' document productions is a basis for a further extension in the case schedule is off the mark. Plaintiffs have gone the extra mile to produce documents and respond to Defendants' document requests. Indeed, *there was only one issue for which Defendants had a motion to compel on the Individual and Vendor Class Plaintiffs' document discovery responses.* Authenticom has given Defendants everything they have asked for, including on burdensome and late discovery requests served on August 13, 2018 (Defendants' *Fourth* Set of RFPs to Authenticom). MVSC has done the same. And with respect to the single discovery issue that Defendants raised in their motion to compel regarding production by Cox Automotive and AutoLoop, the Court ruled in Plaintiffs' favor. Defendants are now following up with respect to certain aspects of Plaintiffs' document productions, just as Plaintiffs are following up on perceived deficiencies in Defendants' document productions. That is par for the course. Defendants fail to mention that Plaintiffs have agreed to respond to Defendants' concerns by undertaking further targeted collection and review of documents (even though it should not be necessary).

Third, Defendants claim (at 6-7) that because the current evidence of Authenticom's hardship is "the *same* evidence" presented to Judge St. Eve when the Court entered the case schedule, that somehow means the case schedule should be extended further. That has it backwards: if the evidence is the same, then the case schedule should likewise stay the same. Defendants statement (at 7) that "Authenticom has refused outright to update" its financial

---

Defendants have no basis to complain. Defendants also point to their demand (at 6) that Kellogg Hansen identify *within two days* whether they would represent long-departed employees of Authenticom. It takes time to connect with former employees, and Defendants cannot seriously complain that they have suffered any prejudice because counsel did not let them know within two days whether former employees would be represented by the parties' counsel. And finally, Defendants point (at 6) to dates offered on a "take-it-or-leave-it" basis, but they omit the extensive back-and-forth the parties engaged in with respect to that witness. And more importantly, Defendants omit the fact that they have already taken that witness's deposition, without complaint.

information is, again, untrue.  To the contrary, in a letter sent on December 7, 2018, Authenticom

told Defendants: "[I]f Defendants want a refresh of Authenticom's financial documents kept in the

ordinary course, then Authenticom will agree to provide it. . . . We will therefore provide

Defendants with the updated financial documents."  Nemelka Decl. Ex. C (Dec. 7, 2018 Letter

from M. Nemelka to R. MacDonald).

Finally, Defendants point (at 7) to outstanding rulings on the motions to dismiss the

AutoLoop, Cox Automotive, and Dealership Class complaints, suggesting that those rulings could

necessitate extending the schedule.  But the claims in this MDL have already been upheld.  Any

ruling on the pending motions to dismiss will not materially alter the scope of discovery.

Defendants cannot point to any specific discovery that would be affected.

\* \* \* \* \*

The only action needed with respect to the case schedule is an adjustment of the dates at

the back-end of the schedule – such as expert report and summary judgment deadlines – to account

for the two-month extension of the fact discovery cutoff.  MDL Plaintiffs have repeatedly asked

Defendants to discuss that issue, but Defendants have refused.  Defendants insist that they will not

discuss the case schedule until the Court rules on all motions to dismiss.  That refusal to meet and

confer is improper.  The Court should accordingly order the parties to confer regarding the case

schedule to make up some of the two-months that were added to fact discovery by adjusting the

deadlines at the back-end of the schedule.

Dated:  December 12, 2018                Respectfully submitted,

                                  */s/ Derek T. Ho*

Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

11

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that on December 12, 2018, I caused a true and correct copy of the foregoing **INDIVIDUAL AND VENDOR CLASS PLAINTIFFS' NOTICE FOR DECEMBER 13 STATUS CONFERENCE** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

 */s/ Derek T. Ho*

Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

12