# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817 <br> Case No. 18-cv-00864 |
| **This Document Relates To:** <br><br> **THE DEALERSHIP CLASS ACTION** | Honorable Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert |

**DEALERSHIP CLASS PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................1

II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND......................................3

     A. Preliminary Approval of the Settlement ...............................................................3

     B. Implementation of the Notice Program.................................................................3

III.    TERMS OF THE SETTLEMENT AGREEMENT ....................................................6

     A. Dealership Class Definition.................................................................................6

     B. Benefits to the Class .........................................................................................6

     C. Releases.............................................................................................................6

     D. Administration and Distribution of Net Settlement Fund........................................7

     E. Continuing Discovery and Motion Practice..........................................................8

     F. No Reversion.....................................................................................................8

IV.    ARGUMENT ........................................................................................................9

     A. The Settlement Satisfies the Fair, Reasonable, and
       Adequate Standard for Final Approval.............................................................9

        1. The Strength of Dealership Plaintiffs' Case Compared to
          the Amount of Reynolds's Settlement Offer..............................................10

        2. The Settlement Eliminates Significant Risk to a Class
          Facing Complex, Lengthy, and Expensive Litigation....................................12

        3. The Response of Class Members to Date Supports the Settlement..............14

        4. The Opinion of Competent Counsel Supports Final Approval.....................16

        5. The State of the Proceedings and the Amount of Discovery
          Completed at the Time of the Settlement Supports Final Approval.................17

B. The Rule 23(e)(2) Considerations Favor Final Approval…………………………………..…19

    1. Rule 23(e)(2)(A): Dealership Class Representatives and Class Counsel have Adequately Represented the Dealership Class……………………....………………19

    2. Rule 23(e)(2)(B): The Settlement was Negotiated at Arm's Length…..……..……..20

    3. Rule 23(e)(2)(C): The Relief Provided for the Class is Adequate…………..……..21

    4. Rule 23(e)(2)(D): The Proposed Settlement Treats Class Members Equitably Relative to Each Other………………..……………………………….…..………..23

V.    CONCLUSION...................................................................................................................23

**TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page(s)**

*Agretti v. ANR Freight Sys., Inc.*,
    982 F.2d 242 (7th Cir. 1992) ................................................................................................11

*All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*,
    203 F.R.D. 403 (S.D. Ind. 2001)...........................................................................................11

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 CV 2989, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)................................................16

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
    789 F. Supp. 2d 935 (N.D. Ill. 2011) .............................................................................14, 18

*Authenticom, Inc. v. CDK Global, LLC*,
    No. 18 C 868 (N.D. Ill.) ..........................................................................................................6

*Cox Auto., Inc. v. CDK Global, LLC*,
    No. 17 C 925 (W.D. Wis.) ........................................................................................................6

*Gehrich v. Chase Bank USA, N.A.*,
    316 F.R.D. 215 (N.D. Ill. 2016).................................................................................12, 17, 18

*Goldsmith v. Tech. Sols. Co.*,
    No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995)................................................21

*Hanlon v. Chrysler Corp*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................................20

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ........................................................................................ *passim*

*Kaufman v. Am. Express Travel Related Servs. Co.*,
    877 F.3d 276 (7th Cir. 2017) ..................................................................................................11

*Kaufman v. Am. Express Travel Related Servs., Co.*,
    No. 07-cv-1707, 2016 WL 806546 (N.D. Ill. Mar. 2, 2016) ..................................................11

*Kleen Prods. LLC v. Int'l Paper Co.*,
    No. 1:10-cv-05711, 2017 WL 5247928 (N.D. Ill. Oct. 17, 2017) ..........................................16

*Loop, LLC, d/b/a AutoLoop LLC v. CDK Global, LLC*,
    No. 18 C 2521 (N.D. Ill.).........................................................................................................6

*Mangone v. First USA Bank*,
    206 F.R.D. 222 (S.D. Ill. 2001) ..............................................................................................15

iii

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ...........................................................14, 16

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) (Graber, J., concurring), *overruled on other*
   *grounds by Dukes v. Wal-Mart Stores, Inc*., 603 F.3d 571 (9th Cir. 2010) ............18

*Murray v. New Cingular Wireless Servs., Inc.*,
   232 F.R.D. 295 (N.D. Ill. 2005), *aff'd*, 523 F.3d 719 (7th Cir. 2008) .....................20

*MVSC v. CDK Global, Inc.*,
   No. 17 C 896 (C.D. Cal.) .............................................................................................6

*Paper Sys. Inc. v. Nippon Paper Indus.*,
   281 F.3d 629 (7th Cir. 2002) ....................................................................................10

*Reynolds v. Beneficial Nat'l Bank*,
   288 F.3d 277 (7th Cir. 2002) ....................................................................................10

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ....................................................................................21

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................................ *passim*

*Schulte v. Fifth Third Bank*,
   No. 09-cv-6655, 2010 WL 8816289 (N.D. Ill. Sept. 10, 2010) ................................10

*Swift v. DirectBuy, Inc.*,
   No. 2:11-CV-401-TLS, 2013 WL 5770633 (N.D. Ind. Oct. 24, 2013) .....................15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ....................................................................................10

*Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).........................................................................................14

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ..........................................................................9, 10, 19

**Statutes**

17 U.S.C. § 501 ...................................................................................................................7

17 U.S.C. § 1201 .................................................................................................................7

Class Action Fairness Act of 2005, 28 U.S.C. § 1715(a)(2)...............................................5

Computer Fraud and Abuse Act, 18 U.S.C. § 1030............................................................7

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (3d ed. 1992)............................15

*Manual for Complex Litigation Second, Moore's Federal Practice* (1986) .................................11

## I.      INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's November 7, 2018 Preliminary Approval Order (ECF No. 432) ("Preliminary Approval Order"), [1] Dealership Class Plaintiffs ("Dealership Plaintiffs") respectfully request that the Court grant final approval of the settlement (the "Settlement") reached between Dealership Plaintiffs and Defendant The Reynolds and Reynolds Company ("Reynolds").

Dealership Plaintiffs' Settlement with Reynolds is fair, reasonable and adequate, and satisfies the standard for the Court's approval pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, including the newly-amended Rule 23(e)(2)(A-D). The Settlement provides substantial monetary relief to members of the Dealership Class in the sum of $29,500,000 ("Settlement Amount") in cash. Additionally, Reynolds is paying up to $250,000 for provision of Settlement notice to the Class ("Notice Costs"). In consideration, Dealership Plaintiffs, on behalf of themselves and the Dealership Class, have agreed to release claims against Reynolds as specified in the Settlement Agreement (ECF No. 427-2). This is a partial settlement; the Dealership Plaintiffs' claims against Defendant CDK Global, LLC ("CDK") remain pending. *See* the Declaration of Peggy J. Wedgworth ("Wedgworth Decl."), filed contemporaneously herewith, ¶ 6.

Since the Settlement was preliminarily approved, the Notice Program approved by the Court has been fully implemented, including dissemination of Mail Notice to over 15,000 known Dealership Class Members via first class mail, and additional notice exposures via publication notice and internet banner notices. The Settlement Administrator also established and maintains

---

[1] *See also* ECF No. 449 (Minute Entry substituting publication notice).

a settlement website, www.dealershipclassDMSsettlement.com ("Settlement Website"), and a toll-free telephone number, both dedicated to this Settlement. *See* the Declaration of Cameron Azari, Esq. Regarding Notice Administration ("Azari Decl.") ¶¶ 9-23, attached to the Wedgworth Decl. as Exhibit 1. At the time of this filing, no Class Member has objected to the Settlement, nor excluded itself from the Dealership Class. *See* Azari Decl. ¶ 26; *see also* Wedgworth Decl. ¶¶ 11,13.

As set forth in more detail below, an analysis of the factors outlined in *Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) establishes that the Settlement Agreement provides substantial benefits to the Dealership Class and should be finally approved as fair, reasonable, and adequate. The Settlement preliminarily approved by this Court is the result of arm's-length, intensive negotiations, undertaken in good faith, between competent and experienced attorneys. In settling this Action, Dealership Class Counsel have taken into account the information obtained during discovery as to the many contested legal and factual issues; the substantial expense and length of time necessary to prosecute the litigation against Reynolds; the significant uncertainties in predicting the outcome at each stage of this complex litigation, as well as the relative strengths and weaknesses of the parties' respective litigation positions in relation to the Settlement. Dealership Class Counsel believe this Settlement represents an excellent result for the Dealership Class. For the aforementioned reasons, and those discussed below, the proposed Settlement should be granted final approval by the Court.

## II.     RELEVANT PROCEDURAL AND FACTUAL BACKGROUND[2]

### A.  Preliminary Approval of the Settlement

Dealership Plaintiffs filed their Motion for Preliminary Approval (ECF No. 427) on October 23, 2018. Following a hearing on November 6, 2018, the Court entered a Preliminary Approval Order on November 7, 2018 (ECF No. 432). In the Preliminary Approval Order, the Court found that the Settlement satisfied all the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* The Court's Preliminary Approval Order, *inter alia*, certified the Settlement Class, appointed Dealership Interim Lead Class Counsel as Settlement Class Counsel, approved Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator for the Dealership Class ("Epiq" or "Settlement Administrator"), and approved the proposed plan for providing notice of the proposed Settlement to the Dealership Class (ECF No. 432 ¶¶ 3-11). On November 26, 2018, the Court entered a Minute Order (ECF No. 449) approving the replacement of publication notice in *WardsAuto Dealer Newsletter* with publication notice on *WardsAuto.com* (ECF No. 449). A Final Settlement Hearing is scheduled for January 22, 2019 (ECF No. 432 ¶ 20). *See* Wedgworth Decl. ¶ 35.

### B.  Implementation of the Notice Program

The Court has already determined that the Notice Plan in this case "constitutes the best notice practicable under the circumstances, is due and sufficient notice to the Dealership Class, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and with constitutional due process." *See* ECF No. 432 ¶¶ 9-10.

---

[2] Dealership Plaintiffs here provide only the procedural and factual background of the Court's preliminary approval of the Settlement and implementation of the Notice Program. A description of the relevant factual and procedural background of this litigation was included in Dealership Plaintiffs' Motion for Preliminary Approval of Settlement between Dealership Class Plaintiffs and Defendant The Reynolds and Reynolds Company and for Conditional Certification of the Proposed Class (ECF No. 427 at 1-2).

Epiq used customer records provided by Reynolds, and CDK customer records compiled using CDK invoice data. In accordance with the schedule set forth in the Preliminary Approval Order (ECF No. 432 ¶ 11), on November 16, 2018, Epiq executed the Notice Plan as approved by this Court by sending 15,643 Mail Notices, via first class mail, to potential Dealership Class Members. Azari Decl. ¶¶ 10-12. The content of the Court-approved Mail Notice, Long-Form Posted Notice, and Publication Notice (collectively, "Notices") (Azari Decl., Attachments 2-4) complies with the requirements of Rule 23(c)(2)(b).

The Mail Notice sent to the Dealership Class clearly and concisely provides in plain English, among other things: (1) information about the Action, the Settlement, and the release; (2) who is a member of the Settlement Class and the binding effects of Class membership; (3) how to object to the Settlement, how to exclude oneself from the Dealership Class, and the implications of both; (4) contact information for Dealership Class Counsel and the Settlement Administrator; and (5) the date and location of the final approval hearing. *See* Azari Decl. ¶ 12, Attachment 2. At this stage in the process, Epiq expects the final reach of the Mail Publication to Dealership Class Members to exceed 90%. *Id.* ¶ 14.

Epiq also disseminated Publication Notice, targeting media in the auto industry. On November 26, 2018, a quarter-page ad (Publication Notice) ran in the national edition of *Automotive News*, a weekly publication with a circulation of 56,684. *Id.* ¶ 15, Attachment 5. Epiq additionally placed Internet Banner Notices on *WardsAuto.com* during the period November 20, 2018 to December 3, 2018, delivering approximately 34,547 impressions.[3] *See id.* ¶¶ 16-17, Attachment 6. *WardsAuto.com* is a top source for news and insights covering automotive

---

[3] An online ad impression is the number of times a specific media vehicle (most commonly a digital banner) is displayed on a specific website. An impression measures the number of times an ad is displayed, whether it is clicked or not. Each time an ad displays it is counted as one impression. Azari Decl. ¶ 17 n.3.

industry trends and all aspects of successful dealership management. *Id.* ¶ 16. A reader clicking on a Banner Notice was directed to the Settlement Website, established on November 16, 2018, where Dealership Class Members may register and confirm their address, as well as obtain further information and important documents regarding the Settlement. As of December 19, 2018, there have been 1,385 unique visitors and 4,436 website pages presented for view to the visitors. *Id.* ¶¶ 18-20.

Epiq also maintains a toll-free telephone number to provide information to Dealership Class Members: an automated system with recorded answers to Frequently Asked Questions is available 24 hours a day/seven days a week, and "live" call center representatives are available twelve hours a day, Monday through Friday, excluding holidays. As of December 19, 2018, the automated telephone line has received 51 calls and the call center representatives have handled 15 calls. A post office box was also established for Dealership Class Members to contact the Settlement Administrator with specific questions or requests by mail. As of December 19, 2018, Epiq has received no correspondence from Dealership Class Members. *Id.* ¶¶ 21-23.

Finally, Epiq provided notice of the Settlement to all appropriate federal and state officials, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(a)(2). *Id.* ¶ 28.

The Notice Plan approved by the Court, and implemented by Epiq, successfully provided notice of these proceedings and the matters set forth therein, including the Settlement Agreement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process. *Id.* ¶¶ 29-32.

## III.  TERMS OF THE SETTLEMENT AGREEMENT[4]

### A.  Dealership Class Definition

The Court certified the Class, defined as follows:

> "Dealership Class" means all persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018. Excluded from the Dealership Class are Defendants, including any entity or division in which any Defendant has a controlling interest, as well as Defendants' joint ventures, subsidiaries, affiliates, assigns, and successors

ECF No. 432 ¶¶ 2-4, 8; *see also* ECF No. 427-2 ¶ A.1(b).

### B.  Benefits to the Class

Dealership Plaintiffs and Reynolds entered into a Settlement Agreement that provides for Reynolds's payment of $29,500,000, plus the payment of up to $250,000 for Notice Costs to the Dealership Class. *See* ECF No. 427-2, ¶¶ A.1(cc); E.13-14. Reynolds paid the Settlement Amount into an interest-bearing escrow account on or about November 20, 2018.

### C.  Releases

In consideration for the Settlement Amount and Notice Costs, Dealership Plaintiffs, on behalf of themselves and the Dealership Class, have agreed to release claims against Reynolds as specified in the Settlement Agreement. *See* ECF No. 427-2.[5] The release does not extend to CDK. *See* ECF No. 427-2 ¶ M.30.

---

[4] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement (ECF No. 427-2).
[5] The plaintiffs in the vendor class action (*Loop, LLC, d/b/a AutoLoop LLC v. CDK Global, LLC*, No. 18 C 2521 (N.D. Ill.)), and the *Cox* action (*Cox Auto., Inc. v. CDK Global, LLC*, No. 17 C 925 (W.D. Wis.)) are not parties to the Settlement. The complaints in those actions allege a conspiracy between CDK and Reynolds, *see AutoLoop* Complaint, ECF No. 191, ¶ 3 (alleging that vendors "are direct targets of CDK's and Reynolds's conspiracy"); *Cox* Complaint, ECF No. 3, ¶ 3, No. 17 C 925 (W.D. Wis.)); however, they do not name Reynolds as a defendant. The Settlement also does not include the plaintiffs' claims in the *Authenticom* and *Motor Vehicle Software Corp.* ("*MVSC*") actions (*Authenticom, Inc. v. CDK Global, LLC*, No. 18 C 868 (N.D. Ill.); *MVSC v. CDK Global, Inc.*, No. 17 C 896 (C.D. Cal.)), in which Reynolds is a named defendant.

In addition to the payments discussed above, Reynolds agrees to release Dealership Plaintiffs and the Class from any counterclaims that could be asserted against them, including under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, the Copyright Act, 17 U.S.C. § 501, and the Digital Millennium Copyright Act, 17 U.S.C. § 1201.[6] *Id.* ¶ A.1(y); C.7. The Settlement does not release any claims that Dealership Plaintiffs and Reynolds may have against each other in the ordinary course of business, including any claims against Reynolds for failing to provide services pursuant to its contracts with Dealership Plaintiffs, or any claims against Dealership Plaintiffs for failing to satisfy payment obligations under the contracts. *See* ECF No. 427-2, A.1(x)-(y); ¶¶ 6-7.

### D. Administration and Distribution of Net Settlement Fund

Subject to the approval and direction of the Court, the Settlement Fund, net of any Taxes and Tax Expenses, shall be used to pay (i) any attorneys' fees and litigation expenses awarded by the Court; and (ii) any Court-approved administration expenses involved in distributing funds to Dealership Class Members.[7] ECF No. 427-2 ¶ G.16. Upon further orders of the Court, the Settlement Administrator, subject to such supervision and direction of the Court and/or Dealership Class Counsel as may be necessary or as circumstances may require, will distribute the Net Settlement Fund to Dealership Class Members pursuant to a distribution plan to be approved by the Court. Dealership Class Counsel, either before or after final settlement approval, shall propose to the Court a reasonable distribution plan for the Net Settlement Fund designed to

---

[6] Reynolds disputes the merits of Dealership Plaintiffs' claims. Dealership Plaintiffs dispute Reynolds's defenses and further dispute that any counterclaims, if asserted, would be meritorious.

[7] As discussed in Dealership Plaintiffs' Preliminary Approval Motion (ECF No. 427 at 4), Dealership Plaintiffs' counsel are not seeking an award of attorneys' fees at this time and the Settlement does not contemplate distributions to class members at this time; distributions will be made at a later date, subject to an allocation plan approved by the Court, upon notice to the Class.

effectuate the Settlement and may require Dealership Class Members to submit claim forms to the Settlement Administrator. *Id.* ¶ G.17. In sum, proceeds (with accrued interest) will be used to (1) pay taxes and tax-related costs associated with the escrow account for Settlement proceeds; (2) pay attorneys' fees to Counsel for the Settlement Class, as well as costs and expenses that may be awarded by the Court; and (3) make a distribution to Dealership Class Members after resolution of the case in accordance with a Court-approved plan of allocation after further notice to the Dealership Class. *Id.* ¶ G.18, 20-22.[8]

### E. Continuing Discovery and Motion Practice

Notwithstanding the Settlement, Reynolds and Dealership Plaintiffs will continue to participate in coordinated discovery in the MDL, consistent with and subject to their respective rights and obligations under the Federal Rules of Civil Procedure and any applicable orders of the Court. In the event that Reynolds and/or Dealership Plaintiffs cease to be parties to the MDL, they will fulfill any discovery obligations they may have in the Dealership Class Action as third parties, subject to their respective rights to object to such discovery pursuant to the Federal Rules of Civil Procedure. With the exception of any motions to enforce this Settlement Agreement, or to enforce the discovery obligations described in this Paragraph, neither Reynolds nor Dealership Plaintiffs shall file any further motions against the other. ECF No. 427-2 ¶ D.12; *see also* ECF No. 432 ¶ 32.

### F. No Reversion

This is not a claims-made settlement. The Net Settlement Fund shall be distributed to the

---

[8] Dealership Class Counsel are seeking a court award of up to $3 million from the Settlement Amount for the advancement of specific categories of litigation expenses (including expert fees and deposition costs). *See* Dealership Class Plaintiffs' Motion for the Advancement of Litigation Expenses from the Settlement with Defendant The Reynolds and Reynolds Company, filed contemporaneously herewith. Applications for litigation expenses above the $3 million amount, awards of attorneys' fees for Dealership Plaintiffs' counsel, and Dealership Plaintiffs' service awards, will be made upon further notice to the Class. *See* ECF No. 432, ¶¶ 21(g), 34.

Dealership Class Members pursuant to a Court-approved distribution plan or as otherwise ordered by the Court. Reynolds shall not be entitled to the return of any of the settlement monies once the Settlement reaches the Effective Date. ECF No. 427-2 ¶ G.19.

## IV.    ARGUMENT

### A.  The Settlement Satisfies the Fair, Reasonable, and Adequate Standard for Final Approval

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011). The standard for final approval of a class action settlement is whether the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014). In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199.

Courts in this Circuit evaluate the following factors in determining the fairness of a class action settlement: (1) the strength of plaintiffs' case compared to the amount of defendants' settlement offer; (2) an assessment of the likely complexity, length, and expense of the litigation; (3) an evaluation of the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement. *Id.* Additionally, courts are instructed to scrutinize settlements for approval under the newly-amended Fed. R. Civ. P. 23(e)(2)(A-D). *Id.* at 1199-2000.

When evaluated under the applicable standards, it is clear the Settlement is fair, reasonable, and adequate, and therefore warrants final approval from the Court.

### 1. The Strength of Dealership Plaintiffs' Case Compared to the Amount of Reynolds's Settlement Offer

This Court recognizes that the first factor – balancing the strength of plaintiffs' case based on the merits with the amount of defendants' settlement offer – is the most important factor in determining if a proposed settlement satisfies Rule 23. *See Accretive*, 773 F.3d at 863-64; *Schulte*, 805 F. Supp. 2d at 578 (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). The Court should weigh "the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class's claims." *Id.* at 579. The Settlement Amount obtained for the Dealership Class is significant and provides considerable benefit to the Class when compared to the risks of continued litigation.

First, while the Settlement provides a substantial recovery, it will not diminish the potential damages recoverable from remaining Defendant CDK. CDK remains jointly and severally liable for all damages resulting from the alleged conspiracy, including those attributable to Reynolds's sales. *See Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002) ("[E]ach member of a conspiracy is liable for all damages caused by the conspiracy's entire output . . . . If [plaintiffs] can prove that there was indeed a conspiracy, they may collect damages not just firm-by-firm according to the quantity each sold, but from all conspirators for all sales"). Accordingly, the "net expected value of continued litigation" against CDK will be unaffected by the Settlement (except for a possible setoff for the proceeds of the Settlement). *Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *2 (N.D. Ill. Sept. 10, 2010) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)).

Second, the Settlement with Reynolds allows Dealership Plaintiffs to focus on litigating against – and potentially facilitating a future settlement with – remaining Defendant CDK. *See Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992) ("In complex litigation with a plaintiff class, 'partial settlements often play a vital role in resolving class actions'") (quoting 1-Part A *Manual for Complex Litigation Second, Moore's Federal Practice* § 30.46 (1986)); *see also All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) ("The settlement with the Dead Sea Defendants provides Plaintiffs with funding to pursue their perhaps more lucrative claims against [the non-settling defendant] . . . .").

Third, the parties entered into the Settlement before the Court ruled on Reynolds's Motion to Dismiss the Complaint (ECF Nos. 256, 358, 375). Dealership Plaintiffs evaluated the flaws and merits of Reynolds's arguments, including, *inter alia*, that the claims of Dealership Plaintiffs with Reynolds contracts are subject to arbitration by virtue of agreements between the Dealership Plaintiffs and Reynolds. *See* ECF No. 256 at 6-7. Dealership Plaintiffs dispute Reynolds's argument and contend that the claims in this Action are beyond the scope of any arbitration agreement. *See* ECF No. 358 at 9. The Settlement moots Reynolds's efforts to require arbitration by Reynolds Dealers entirely and quells the possibility of costly and inefficient arbitration proceedings with Reynolds.[9] Wedgworth Decl. ¶ 18.

Absent this Settlement, continued litigation of this Action against Reynolds would be complex and lengthy, requiring the investment of considerable resources by both parties and the

---

[9] *See Kaufman v. Am. Express Travel Related Servs., Co.*, No. 07-cv-1707, 2016 WL 806546, at *8 (N.D. Ill. Mar. 2, 2016) ("This court has been made aware by the parties that the Seventh Circuit and Supreme Court case law, as well as the trend of decisions relating to the enforcement of arbitration clauses, makes it at least possible, and perhaps likely, that its ruling on March 7, 2008 denying American Express motion to compel arbitration could be overturned [collecting cases]." Were this to happen, the class members would risk receiving nothing. *This strong legal defense weighs heavily in favor of finding that the settlement is fair and reasonable when compared to the $9.6 million figure representing the loss to the class*") (emphasis added); *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 284-86 (7th Cir. 2017) (affirming district court's decision that the arbitration appeal posed a risk to class's success).

Court. Liability and damages in this case are heavily contested and both sides would face considerable risks should the litigation proceed. Although Dealership Plaintiffs believe they would ultimately prevail on the merits at trial, success is far from assured. *Id.* ¶ 19. *See Schulte*, 805 F. Supp. 2d at 582 ("While Plaintiffs maintain that their claims would ultimately succeed, the above discussion establishes that Fifth Third has a number of potentially meritorious defenses. Absent settlement, Class Members would face the real risk that they would win little or no recovery"); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 229 (N.D. Ill. 2016) ("In light of Chase's potential defenses, the legal uncertainty concerning the application of the TCPA, and the time and expense inherent to litigation, proceeding to trial, and obtaining relief posed risks to Plaintiffs, and a possibility existed that they would have recovered nothing"). The Court should not "reject[ ]" a settlement "solely because it does not provide complete[ ] victory to plaintiffs," for "the essence of settlement is compromise." *Id.* at 228.

In evaluating the aforementioned risks, Dealership Plaintiffs and their counsel believe the Settlement represents a very favorable outcome for Class Members. The Settlement will avoid the risk and expenses of continued litigation against Reynolds and provide substantial monetary relief for Class Members. As such, this factor weighs in favor of the Court approving the Settlement.

**2. The Settlement Eliminates Significant Risk to a Class Facing Complex, Lengthy, and Expensive Litigation**

The likely complexity, length, and expense of continued litigation also favors approval of the Settlement. *See Isby*, 75 F.3d at 1199-1200. There is no doubt that antitrust class actions involve complex legal and factual issues. *See, e.g.*, Reynolds Memorandum in Support of its Motion to Dismiss (ECF No. 256 at 23-24) ("[Dealership] Plaintiffs' Complaint [containing] 736 paragraphs, 142 evidentiary footnotes, 60 exhibits, and 918 total pages incorporate[s] large

amounts of evidence about the underlying markets and economic relationships between the relevant market participants"). Another example of the complexity of the factual and legal issues presented in this case is Dealership Class Members' dual status as both the indirect purchasers of end-user automotive applications, but also as the direct purchasers of DMS products from Defendants Reynolds and CDK. This invokes a considerably complex question on determination of damages.

In terms of duration, this case is far from nearing its end, but the approval of this Settlement allows for the possibility of early resolution with Reynolds. The fact discovery deadline is April 15, 2019, and much is left to be accomplished. For example, CDK's motion to dismiss,[10] and numerous other discovery motions tied to production of documents, are pending; oral discovery commenced in October, and there are dozens of depositions left to be taken; third-party discovery is ongoing, parties are still producing documents, and there are many other discovery and expert-related issues being addressed or awaiting resolution. Numerous other important discovery deadlines and filings are approaching, including expert discovery and reports, class certification, and summary judgment, to name a few. Although the Case Management Order entered by Judge St. Eve (ECF No. 166) called for a compressed discovery schedule, extensions have already been granted, with the possibility of further extensions currently being discussed before this Court. *See* ECF No. 473.

Without approval of this Settlement, Dealership Plaintiffs will proceed toward trial with Reynolds. As trial approaches, a pre-trial order needs to be prepared, jury instructions need to be agreed upon, and motions *in limine* need to be drafted, submitted, and argued in front of the Court. As noted above, Dealership Class Members are both indirect and direct purchasers, which

---

[10] Reynolds's motion to dismiss (ECF No. 252) has been stricken as moot in light of the Settlement (*see* ECF No. 412). Dealership Plaintiffs have submitted briefing in excess of 100 pages in opposition to Defendants' motions (*see* ECF 427 at 2 n.3, 4).

potentially presents a complex determination of damages. *See Wal-Mart Stores, Inc., v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal"). Finally, a lengthy (and costly) appeals process may ensue at the end of any such trial and upon any judgment ordered by the Court.

Final approval of settlement is warranted where "continued litigation would require resolution of complex issues at considerable expense[.]" *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000); *aff'd*, 267 F.3d 743 (7th Cir. 2001). "[C]osts associated with discovery in complex class actions can be significant" – this case is no exception. *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 964 (N.D. Ill. 2011); *Schulte*, 805 F. Supp. 3d at 586. Although this Settlement will not remove Reynolds completely from the litigation, approval of the Settlement would substantially simplify the case for Dealership Plaintiffs in reducing the cost of prosecuting this case and allowing Dealership Plaintiffs to focus their resources and efforts on CDK.

The Settlement, in contrast to a lengthy, complex, and expensive litigation, delivers a real and substantial remedy, which fairly, reasonably, and adequately addresses the situation confronting the members of the Dealership Class, without the risk or delay inherent in prosecuting this matter against Reynolds through trial and appeal.

### 3. The Response of Class Members to Date Supports the Settlement

The reaction of Class Members to the Settlement supports final approval. District courts should evaluate the amount of opposition, if any, from affected parties when deciding if the settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200.

As discussed, since the Settlement was preliminarily approved, the Notice Program approved by the Court has been fully implemented. *See supra* Section II.B. The two-page Mail Notice advised Class Members in detail of their right to object to the Settlement, how to exclude themselves from the Dealership Class, the implications of both options, and that any such exclusions or objections must be received by January 2, 2019 (in bolded language). Azari Decl. ¶¶ 24-27. The Mail Notice also stated that there is no claims process at this time and claim forms will be sent to Dealership Class Members at a later date; distribution will occur once the lawsuit is concluded. Mail Notice advised Class Members that Dealership Class Counsel are not seeking any attorneys' fees or service awards for the Dealership Class Representatives at this time, and that notification about the claims process will include information about any applications for litigation expenses above $3 million, for attorneys' fees, or for service awards for the plaintiffs; and that any fee request will not exceed one-third of the amounts ultimately recovered on behalf of the Dealership Class. *Id.*

Although the time for objecting has not yet expired, thus far no Class Member has objected to the Settlement or excluded themselves from the Dealership Class. Wedgworth Decl. ¶ 13; Azari Decl. ¶ 26. The fact, however, that some class members object to a settlement does not by itself prevent the court from approving a settlement agreement. *Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) (collecting cases in which courts approved settlements despite objections). A relatively small number of class member objections, or no objections, is an indication of a settlement's fairness. *Swift v. DirectBuy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *6 (N.D. Ind. Oct. 24, 2013); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.48 at 11-116 (3d ed. 1992). It would be particularly persuasive here because the Dealership Class is comprised of car dealerships that are business

entities that can analyze the Settlement and make their own determination of its merits. Wedgworth Decl. ¶ 14. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2989, 2012 WL 651727, at *6 (N.D. Ill. Feb. 28, 2012).[11]

Thus the reaction of the Class to date – those affected by the Settlement – underscores the propriety of the Settlement and weighs in favor of granting approval.

**4. The Opinion of Competent Counsel Supports Final Approval**

The opinion of competent counsel is a factor to be considered by the Court in determining whether the Settlement is fair, reasonable, and adequate. *Isby*, 75 F.3d at 1200. Dealership Class Counsel have substantial experience and knowledge of the relevant antitrust, dealership, and class action law, and have developed expertise in applying that knowledge effectively and efficiently to prosecute complex class actions. *See* ECF No. 90 at 7-9, 19-21; ECF No. 96 at 5-20. Wedgworth Decl. ¶ 21. Dealership Class Counsel are of the opinion that the Settlement is a fair, reasonable, and adequate recovery for the Dealership Class. *See Schulte*, 805 F. Supp. 2d at 586-87 (The opinion of counsel with "extensive experience in . . . class actions and complex litigation" weighed in favor of approval); *see also Mexico Money Transfer*, 164 F. Supp. 2d at 1020 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). *Kleen Prods. LLC v. Int'l Paper Co.*, No. 1:10-cv-05711, 2017 WL 5247928, at *3 (N.D. Ill. Oct. 17, 2017) ("The Settlement was negotiated by highly skilled and experienced antitrust and class action lawyers, who have held leadership

---

[11] In accordance with the Court's Preliminary Approval Order, at or before the Settlement Hearing on January 22, 2019, Dealership Class Counsel shall file with the Court a list of all persons and entities who have timely and validly requested exclusion from the Dealership Class. *See* ECF 432 ¶¶ 16, 20, 25. Class Counsel shall file all briefs, memoranda, and papers in response to any objections no later than January 15, 2019, seven (7) days before the Settlement Hearing. *Id.* ¶ 29. Importantly, a new amendment went into effect for Rule 23(e)(5)(B) on December 1, 2018. Now, after a hearing, the District Court must approve any payment or consideration in exchange for an objector withdrawing or forgoing an objection. *See* Fed. R. Civ. P. 23(e)(5).

positions in some of the largest class actions around the country"). Accordingly, an analysis of this factor weighs in favor of supporting final approval.

5. **The Stage of the Proceedings and the Amount of Discovery Completed at the Time of the Settlement Supports Final Approval**

The last factor to be considered is the stage of the proceedings and the amount of discovery completed up to the point of settlement. This factor is relevant to determining if the settlement is fair, reasonable, and adequate because the stage of the proceedings and amount of discovery is an indicator as to how accurately the Court and counsel can evaluate the merits of the case in conjunction with the settlement proposal. *See Schulte*, 805 F. Supp. 2d 587-88 (granting final approval of settlement prior to completion of formal discovery); *see also Gehrich*, 316 F.R.D. at 230.

The case was settled with Reynolds (one of two defendants) approximately four months after the filing of Dealership Plaintiffs' Consolidated Class Action Complaint ("Consolidated Complaint") (ECF No. 184), and approximately twelve months after the first Dealership Class Complaint was filed in October 2017. Dealership Plaintiffs' Counsel performed a substantial amount of investigation early in the case, prior to filing the original complaint and subsequently the Consolidated Complaint, including reviewing thousands of documents and conducting additional extensive investigation of the claims and parties at issue, as evidenced by the 172-page Complaint with accompanying 61 exhibits (detailed in ECF No. 427-1; *see also* ECF No. 96 at 5-9). Wedgworth Decl. ¶ 16. *See Isby*, 75 F.3d at 1200 ("[T]he district court noted that while settlement discussions began at an early stage in the litigation, it was satisfied that the discovery and investigation conducted by class counsel prior to entering the settlement

negotiations was 'extensive and thorough' dating at least as far back as ten months prior to the filing of the complaint.").[12]

Counsel for Dealership Plaintiffs and Reynolds were well-informed of the factual and legal issues of the case when negotiating the Settlement. Wedgworth Decl. ¶ 17. To place arbitrary strictures on how long or how extensive formal discovery must be before settlement should be approved is unnecessary and this Circuit has recognized this fact. *See, e.g., Gehrich*, 316 F.R.D. at 230 ("[E]xtensive formal discovery would entail substantial cost and might not have placed the parties in a materially better position than they are now to determine an appropriate settlement value").

While there was, and continues to be, more discovery in this litigation, the completed discovery framed the issues sufficiently for the settling parties to fully understand their positions. Dealership Plaintiffs had filed an extensive and detailed Consolidated Complaint; reviewed thousands of pages reproduced in this litigation by Reynolds, CDK, Plaintiff Authenticom, Inc., and third parties; propounded and responded to written discovery requests; participated in numerous and lengthy meet and confers on numerous on discovery issues; as well as filed and responded to multiple discovery motions. Wedgworth Decl. ¶ 17. As discussed, *supra*, there were two fully briefed motions to dismiss regarding the Dealership Class in the case at the time of the Settlement. Accordingly, the parties negotiated the Settlement with a thorough understanding of the parties' respective claims and defenses. As such, the extent of discovery

---

[12] Indeed, "[e]arly dispute resolution is salutary, and we should not encourage the unnecessary expense, delay, and uncertainty caused by lengthy litigation when the parties are prepared to compromise. Nor should we hold . . . that a prompt settlement necessarily suggests a failure to prosecute or defend the action with due diligence and reasonable prudence. To the contrary, an early resolution may demonstrate that the parties and their counsel are well prepared and well aware of the strength and weaknesses of their positions and of the interests to be served by an amicable end to the case." *Molski v. Gleich*, 318 F.3d 937, 959 (9th Cir. 2003) (Graber, J., concurring), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010). Instead, "[t]he pertinent inquiry is what facts and information have been provided." *AT&T Mobility,* 789 F. Supp. 2d at 967.

completed and state of the proceedings weigh in favor of final approval of the Settlement. *See,
e.g.*, *Schulte*, 805 F. Supp. 2d at 586-89 (granting final approval of class settlement where court
had not yet ruled on motion to dismiss and no formal discovery conducted); *Accretive*, 773 F.3d
859 (same).[13]

## B. The Rule 23(e)(2) Considerations Favor Final Approval

Under the recently-amended Rule 23(e)(2), a court evaluating whether to grant final
approval of a class settlement must also consider whether: (A) the class representatives and class
counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;[14]
(C) the relief provided for the class is adequate (taking into consideration a number of factors);
and (D) the proposal treats class members equitably relative to each other. These factors
substantially overlap with the *Isby* factors discussed, *supra*, and similarly support final approval
of the Settlement.

### 1. Rule 23(e)(2)(A): Dealership Class Representatives and Class Counsel have Adequately Represented the Dealership Class

Dealership Class Representatives have each committed substantial time to and been
active participants in this litigation: meeting with counsel, searching for and producing
documents and responding to interrogatories in response to discovery requests, as well as being
willing to testify in upcoming depositions. Dealership Class Representatives' interests are
aligned with, and are not antagonistic to, the interests of the Dealership Class. Dealership Class

---

[13] "[T]he parties did not come to this Court holding hands. Rather, the filing of Defendant's motion to dismiss suggests that the parties began the litigation in an adversarial posture." *Schulte*, 805 F. Supp. 2d at 589.

[14] Rule 23(e)(2)(A) and (B) stand together as "important foundation for scrutinizing the substance of the proposed settlement. If the court has appointed class counsel or interim class counsel, it will have made an initial evaluation of counsel's capacities and experience. But the focus at this point is on the *actual performance* of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment (emphasis added).

Representatives have a sufficient interest in the outcome of the case and share an overriding interest in obtaining the largest possible recovery with all Class Members. Wedgworth Decl. ¶ 22. *See Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1021 (9th Cir. 1998) (adequacy satisfied where "each . . . plaintiff has the same problem"). Dealership Class Representatives and Class Members have all been damaged by the alleged conspiratorial conduct of Reynolds and CDK. *See Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 299 (N.D. Ill. 2005) (where prospective class representative brought an identical claim on behalf of himself and the putative class members, there was "no danger of conflicting claims"), *aff'd*, 523 F.3d 719 (7th Cir. 2008). Dealership Class Representatives have fairly and adequately protected the interests of the Class and will continue to do so.

Dealership Class Counsel have extensive experience litigating and settling antitrust class actions, and substantial knowledge of the relevant dealership, antitrust, and class action law necessary to effectively prosecute this case. *See supra* Section IV(A)(4). Class Counsel are well-qualified to represent the Class, and have and will continue to fairly and adequately protect the interests of the Class. Accordingly, this factor weighs in favor of final approval of the Settlement.

### 2. Rule 23(e)(2)(B): The Settlement was Negotiated at Arm's Length

This Settlement is the product of hard-fought, arm's-length negotiations, undertaken in good faith, between highly experienced and capable attorneys, assisted by an experienced and well-respected mediator, Kenneth S. Marks, Esq. *See* Declaration of Peggy J. Wedgworth in Support of Motion for Preliminary Approval (ECF No. 427-1 ¶ 6) (detailing several weeks of intensive negotiations and a mediation lasting twelve hours, with the parties' counsel debating many issues and negotiating the terms of the Settlement, both during and after the mediation).

When experienced counsel negotiate at arm's length and agree to a settlement, this protects against collusion, and the fruit of those negotiations – the settlement – is entitled to deference by the court. *See Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arm's-length, non-collusive, negotiated resolution"). This factor supports a determination that the Settlement is fair, reasonable, and adequate.

### 3. Rule 23(e)(2)(C): The Relief Provided for the Class is Adequate

In determining whether the relief provided by the Settlement is adequate, a number of factors are taken into consideration: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C)(i-iv). As discussed in Section III.B, *supra*, the relief provided for the Class satisfies this consideration

First, the costs, risks, and delay of trial and appeal strongly favor approval of the Settlement, as discussed in detail in Section IV(A), *supra*. Second, the effectiveness of any proposed method of distributing relief to the Class, including the method of processing class-member claims, is not a factor here at this time. No distribution plan has been proposed; under the terms of the Settlement Agreement, a distribution plan is not a necessary term of the Settlement Agreement, and is not a condition of the Agreement that any particular distribution plan be approved. Thus it is premature to address the method of distribution to the Class, as this

issue will not arise until the end of the litigation. *See* ECF No. 427-2 ¶ G.18;[15] *see also* ECF No. 432 ¶ 34. However, in accordance with the 2018 advisory committee notes, Dealership Class Counsel will provide periodic reports to the Court on the claims experience when distribution to the Class is made, subject to an allocation plan approved by the Court and upon further notice to the Class. When that time comes, the methodology will provide a system will be in place to ensure the filing of only legitimate claims.

Third, Mail and Publication Notice advised Class Members that Dealership Class Counsel are not seeking any attorneys' fees or service awards for the Dealership Class Representatives at this time, and that notification about the claims process will include information about any applications for litigation expenses above $3 million, for attorneys' fees, or for service awards for the Dealership Class Representatives; and that any fee request will not exceed one-third of the amounts ultimately recovered on behalf of the Dealership Class. *See* Azari Decl., Attachments 2-4; *see also* ECF No. 427-2 ¶¶ G.18, H.20. Finally, the relief provided by the Settlement is adequate, taking into consideration any agreement required to be identified under 23(e)(3). The Settlement Agreement provides adequate relief and treats all members of the class equally. There are no agreements that would render the Class consideration inadequate or treat Class Members unequally.

---

[15]Paragraph G.18 of the Settlement Agreement provides:

Distribution Plan. A distribution plan is not a necessary term of this Agreement and it is not a condition of this Agreement that any particular distribution plan be approved. A distribution plan will be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement in this Agreement, and any order or proceedings relating to any distribution plan shall not operate to terminate or cancel this Agreement or affect the finality of the Final Approval Order and Judgment, or any other orders entered pursuant to this Agreement. The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Final Approval Order and Judgment or an Alternative Judgment, regardless of whether either any distribution plan or application for attorneys' fees and expenses has been submitted to the Court or approved.

### 4. Rule 23(e)(2)(D): The Proposed Settlement Treats Class Members Equitably Relative to Each Other

The committee note to the recent amendment of Rule 23 emphasizes that "the apportionment of relief among class members takes appropriate account of difference among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 Amendment. The Settlement does not grant preferential treatment to the Dealership Class Representatives or to any segment of the Class. When distribution to Dealership Class Members is made, subject to an allocation plan approved by the Court and upon further notice to the Class, the plan of allocation will ensure that all Class Members will be treated equitably in relation to their claims, and that Class Counsel and the Settlement Administrator will work together to achieve that end.

## V. CONCLUSION

The Settlement is a favorable result, given the presence of competent and skilled counsel for all parties, the arm's-length Settlement negotiations, the considerable risk, expense, and delay if the Action were to continue, and substantial and certain financial benefit of the Settlement to the Dealership Class. Accordingly, Dealership Plaintiffs respectfully request that this Court approve the Settlement as fair, reasonable, and adequate.

DATED: December 19, 2018        Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth (pro hac vice)
Elizabeth McKenna (pro hac vice)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Counsel for the Dealership Class*

Leonard A. Bellavia (pro hac vice)
Steven Blatt
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Daniel C. Hedlund (pro hac vice)
Michelle J. Looby (pro hac vice)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mlooby@gustafsongluek.com
dnordin@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (pro hac vice)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

*MDL Liaison Counsel*

26