EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18-cv-00864 |
| **This Document Relates To:** | Honorable Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | |

I, CAMERON R. AZARI, ESQ., hereby declare and state as follows:

1.      My name is Cameron R. Azari, Esq.  I am over the age of twenty-one and I have personal knowledge of the matters  set forth herein, and I believe them to be true and correct.

2.      I am a nationally recognized expert in the field of legal notice and I have served as a legal notice expert in dozens of federal and state cases involving class action notice plans.

3.      I am the Director of Legal Notice for Hilsoft Notifications ("Hilsoft"), a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans.  Hilsoft is a business unit of Epiq Class Action & Claims Solutions, Inc. ("Epiq").

4.      Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.  With experience in more than 400 cases, including more than 35 MDLs, notices prepared by Hilsoft have appeared in 53 languages with distribution in almost every country, territory and dependency in the world.  Judges, including in published decisions, have recognized and approved numerous notice plans developed by Hilsoft, which decisions have always withstood collateral reviews by other courts and appellate challenges.

DECLARATION OF CAMERON AZARI, ESQ. REGARDING NOTICE ADMINISTRATION

5.      In forming my expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences.  I am an active member of the Oregon State Bar, receiving my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College.  I have served as the Director of Legal Notice for Hilsoft since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs since that time.  Prior to assuming my current role with Hilsoft, I served in a similar role as Director of Epiq Legal Noticing (previously called Huntington Legal Advertising).  Overall, I have over 18 years of experience in the design and implementation of legal notification and claims administration programs having been personally involved in well over one hundred successful notice programs.  I have been directly and personally responsible for designing all of the notice planning here, including analysis of the individual notice options and the media audience data and determining the most effective mixture of media required to reach the greatest practicable number of Dealership Class Members.  Numerous court opinions and comments as to our testimony, and opinions on the adequacy of our notice efforts, are included in Hilsoft's curriculum vitae included as **Attachment 1**.

6.      The facts in this declaration are based on what I personally know, as well as information provided to me in the ordinary course of my business by my colleagues at Hilsoft and Epiq.

## OVERVIEW

7.      On November 7, 2018, the Court approved the appointment of Epiq as the Settlement Administrator for the Dealership Class in *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.) (ECF No. 432 ¶ 8).   For purposes of the proposed Settlement with Reynolds, the Court defined the Class as follows:

> "Dealership Class" means all persons and entities located in the United States engaged in the business of the retail sale of automobiles who

purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018. Excluded from the Dealership Class are Defendants, including any entity or division in which any Defendant has a controlling interest, as well as Defendants' joint ventures, subsidiaries, affiliates, assigns, and successors.

*Id.* at ¶ 2.

8.     After the Court's preliminary approval of the Settlement, Epiq began to provide notice and settlement administration services for the Settlement. This declaration will detail the successful completion of the notice and settlement administration activities to date.

9.     To date, Notice has been implemented by Epiq as ordered by the Court, including dissemination of direct mail notice to known or potential Dealership Class Members via postal mail, and additional notice exposures via publication notice, banner notices, the settlement website, (www.DealershipClassDMSSettlement.com) ("Settlement Website"), and a toll-free telephone number dedicated to this Settlement.

### *Individual Notice – Direct Mail*

10.     Epiq received two data files from Dealership counsel, which contained over 16,000 Reynolds and CDK Global, LLC ("CDK") records containing names and mailing addresses for Reynolds and CDK dealership customers in the United States that purchased Data Management Systems (potential Dealership Class Members). Epiq combined the data files and removed duplicate records, which resulted in 15,648 Dealership Class Member records (and 15,643 records with valid mailing addresses for the initial notice mailing).

11.     Prior to mailing, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS").[1]  Any

---

[1] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it

addresses that were returned by the NCOA database as invalid were updated through a third-party address search service ("ALLFIND," maintained by Lexis/Nexis). In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

12.     On November 16, 2018, Epiq mailed 15,643 Mail Notices via USPS first class mail, postage prepaid, to all individuals and entities identified as potential Dealership Class Members with a valid address. The Mail Notice is included as **Attachment 2**.

13.     In addition, a Long Form Notice is mailed via USPS first class mail, postage prepaid, to all persons who request one via the toll-free telephone number. As of December 11, 2018, one (1) Long Form Notice has been requested. The Long Form Notice is included as **Attachment 3**.

14.     The return address on the Mail and Long Form Notices is a post office box maintained by Epiq. Mail Notices are auto-forwarded by the USPS and remailed by Epiq to addresses returned with a forwarding address from the USPS, as received. For Notices that are returned as undeliverable without a forwarding address from the USPS, Epiq undertakes additional public record research, using a third-party lookup service ("ALLFIND", maintained by Lexis/Nexis). As of December 11, 2018, Epiq has received 111 undeliverable mail pieces for third-party lookup address research and remailing. Address updating and re-mailing for undeliverable Notices is ongoing and will continue through the Final Approval Hearing. Even

---

are automatically updated with any reported move based on a comparison with the person's name and known address.

though the undeliverable processing, address research and re-mailing process is ongoing, at this stage I expect the final reach of the mailing effort to be well over 90% to Dealership Class Members.

### *Trade Publication*

15.     The Publication Notice appeared in the November 26, 2018 national edition of *Automotive News,* as a 3 col. x 10" (quarter page) ad unit.  *Automotive News* is a national, weekly publication with a circulation of 56,684.  The printed version of the publication is also available online as a digital copy to subscribers.  The Publication Notice is included as **Attachment 4**.  A copy of the tear sheet for the insertion is included as **Attachment 5**.

### *Internet Banner Notices*

16.     Internet Banner Notices measuring 728 x 90 pixels (top position) and 300 x 250 pixels (side position) were placed on *WardsAuto* (WardsAuto.com).[2]  *WardsAuto.com* is a top source for news and insights covering automotive industry trends and all aspects of successful dealership management.

17.     The Banner Notices delivered approximately 34,547 adult impressions,[3] which ran from November 20, 2018 to December 3, 2018.  Clicking on the banner linked readers to the Settlement Website where they could obtain information about the Settlement.  There were three frames of the Banner Notice, which are included as **Attachment 6**.

---

[2] Epiq's original Notice Plan included a Banner Notice (Electronic Newsletter ad) would appear in the electronic *WardsAuto Dealer Edition Newsletter*.  However, at the time of placement, it was discovered that all ad space in the *Newsletter* was sold out for the remainder of 2018.  The Court approved Banner Notices on *WardsAuto* (WardsAuto.com) as an appropriate replacement (ECF No. 449, which is posted to the Settlement Website under "Documents").

[3] An online ad impression is the number of times a specific media vehicle (most commonly a digital banner) is displayed on a specific website.  An impression measures the number of times an ad is displayed, whether it is clicked on or not.  Each time an ad displays it is counted as one impression.

*Settlement Website*

18.     On November 16, 2018, a neutral, informational, Settlement Website (www.DealershipClassDMSSettlement.com) was established and is now maintained by Epiq to allow potential Dealership Class Members to obtain additional information and documents about the Settlement, including the Mail Notice, Long Form Notice, Settlement Agreement, Preliminary Approval Order, Consolidated Class Action Complaint, November 26, 2018 Minute Entry re: substitute publication, and any other information that the parties agree to provide or that the Court may require. The Settlement Website includes information on how potential Class Members can opt-out or object to the Settlement if they choose, answers to Frequently Asked Questions, and a registration page to obtain more information. The website address and toll-free telephone number, discussed below, were prominently displayed in all printed notice documents.

19.     As of December 19, 2018, there have been 1,385 unique visitors and 4,436 website pages presented for visitors to view.

20.     Epiq will continue operating, maintaining, and as appropriate, updating the Settlement Website until the conclusion of this administration as determined by counsel or the Court.

*Toll-free Telephone Number and Postal Mailing Address*

21.     On November 16, 2018, Epiq established a toll-free telephone Voice Response Unit ("VRU") (1-888-842-3161) to provide information to Dealership Class Members about the proposed Settlement. Callers hear an introductory message and then have the option to obtain information about the Settlement in the form of recorded answers to Frequently Asked Questions and direct Dealership Class Members to the Settlement Website, or to speak to a call center representative. The automated telephone system is available 24 hours per day, 7 days per week

and a "live" call center representative is available 6:00 am to 6:00 pm Pacific Time, Monday through Friday, excluding official holidays. This information is available on the "Contact Us" page of the Settlement Website.

22.     As of December 19, 2018, the automated toll-free telephone number has received 51 calls representing 271 minutes of use, and call center representatives have handled 15 inbound calls representing 158 minutes of use and 2 outbound calls representing 12 minutes of use.

23.     A post office box was also established to allow Dealership Class Members to contact the Settlement Administrator, by mail, with any specific requests or questions.  As of December 19, 2018, Epiq has not received any correspondence.

### *Exclusion Requests and Objections*

24.     The deadline for Dealership Class Members to request exclusion from the Settlement or to object to the Settlement is January 2, 2019.

25.      The answer to question 11 of the Long Form Notice instructed Class Members that written requests for exclusion from the Class were to be mailed so that they are postmarked on or before January 2, 2019 addressed to Dealership Class Settlement—DMS Antitrust Litigation, Exclusions, c/o Epiq, Settlement Administrator, P.O. Box 6727, Portland, OR 97228-6727. Epiq has monitored all mail delivered to the designated Post Office Box.

26.     As of December 19, 2018, Epiq has not received any requests for exclusion from the Settlement.

27.     Epiq will submit a supplemental declaration after the January 2, 2019 deadline for requesting exclusions, which will address all exclusion requests that are received.

### *CAFA Notice*

28.      On October 24, 2018, as required by the federal Class Action Fairness Act of 2005

(CAFA), 28 U.S.C. § 1715, Epiq sent a CAFA notice packet (or "CAFA Notice") to 57 federal and state officials. The CAFA Notice was mailed by certified mail to 56 officials, including the Attorneys General of each of the 50 states, the District of Columbia and the U.S. Territories. The CAFA Notice was also sent by United Parcel Service ("UPS") to the Attorney General of the United States.

## **CONCLUSION**

29.    In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and further by case law pertaining to notice. This framework directs that the notice program be designed to reach the greatest practicable number of potential Class Members and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to Class Members in any way. All of these requirements were met in this case.

30.    Our notice effort followed the guidance for how to satisfy due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions which are: a) to endeavor to actually inform the class, and b) to demonstrate that notice is reasonably calculated to do so:

   A. "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950).

   B. "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974) (citing *Mullane* at 314).

31.    The Notice Program provided the best notice practicable under the circumstances

of this case, conformed to all aspects of Federal Rule of Civil Procedure 23, and comported with the guidance for effective notice articulated in the Manual for Complex Litigation 4th.

32.     The Notice Plan schedule afforded enough time to provide full and proper notice to Dealership Class Members before any opt-out and objection deadlines.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 19th, 2018.

Cameron R. Azari, Esq.

# Attachment 1



Hilsoft Notifications is a leading provider of legal notice services for large-scale class action and bankruptcy matters. We specialize in providing quality, expert, notice plan development – designing notice programs that satisfy due process requirements and withstand judicial scrutiny. For more than 23 years, Hilsoft Notifications' notice plans have been approved and upheld by courts. Hilsoft Notifications has been retained by defendants and/or plaintiffs on more than 300 cases, including more than 30 MDL cases, with notices appearing in more than 53 languages and in almost every country, territory and dependency in the world. Case examples include:

➤ Hilsoft designed and implemented monumental notice campaigns to notify current or former owners or lessees of certain BMW, Mazda, Subaru, Toyota, Honda, and Nissan vehicles as part of $1.2 billion in settlements regarding Takata airbags. The Notice Plans included individual mailed notice to more than 51.5 million potential Class Members and notice via consumer publications, U.S. Territory newspapers, radio spots, internet banners, mobile banners, and specialized behaviorally targeted digital media. Combined, the Notice Plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle with a frequency of 4.0 times each. *In re: Takata Airbag Products Liability Litigation (OEMS – BMW, Mazda, Subaru, Toyota, Honda and Nissan)*, MDL No. 2599 (S.D. Fla.).

➤ A comprehensive notice program within the *Volkswagen Emissions Litigation* that provided individual notice to more than 946,000 vehicle owners via first class mail and to more than 855,000 via email. A targeted internet campaign further enhanced the notice effort. *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch Settlement)*, MDL No. 2672 (N.D. Cal.).

➤ Hilsoft designed and implemented an extensive settlement Notice Plan for a class period spanning more than 40 years for smokers of light cigarettes. The Notice Plan delivered a measured reach of approximately 87.8% of Arkansas Adults 25+ with a frequency of 8.9 times and approximately 91.1% of Arkansas Adults 55+ with a frequency of 10.8 times. Hispanic newspaper notice, an informational release, radio PSAs, sponsored search listings and a case website further enhanced reach. *Miner v. Philip Morris USA, Inc.*, No. 60CV03-4661 (Ark. Cir.).

➤ One of the largest claim deadline notice campaigns ever implemented, for BP's $7.8 billion settlement claim deadline relating to the Deepwater Horizon oil spill. Hilsoft Notifications designed and implemented the claim deadline notice program, which resulted in a combined measurable paid print, television, radio and Internet effort that reached in excess of 90% of adults aged 18+ in the 26 identified DMAs covering the Gulf Coast Areas an average of 5.5 times each. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.).

➤ Large asbestos bar date notice effort, which included individual notice, national consumer publications, hundreds of local and national newspapers, Spanish newspapers, union labor publications, and digital media to reach the target audience. *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Date Notice)*, 14-10979(CSS) (Bankr. D. Del.).

➤ Landmark $6.05 billion settlement reached by Visa and MasterCard. The intensive notice program involved over 19.8 million direct mail notices to class members together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade & specialty publications, and language & ethnic targeted publications. Hilsoft also implemented an extensive online notice campaign with banner notices, which generated more than 770 million adult impressions, a case website in eight languages, and acquisition of sponsored search listings to facilitate locating the website. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.).

➤ BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill emerged from possibly the most complex class action in U.S. history. Hilsoft Notifications drafted and opined on all forms of notice. The 2012 notice program designed by Hilsoft reached at least 95% Gulf Coast region adults via television, radio, newspapers, consumer publications, trade journals, digital media and individual notice. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010,* MDL No. 2179 (E.D. La.).

➤ Momentous injunctive settlement reached by American Express regarding merchant payment card processing. The notice program provided extensive individual notice to more than 3.8 million merchants as well as coverage in national and local business publications, retail trade publications and placement in the largest circulation newspapers in each of the U.S. territories and possessions. *In re American Express Anti-Steering Rules Antitrust Litigation (II)*, MDL No. 2221 (E.D.N.Y.) ("Italian Colors").

➤ Overdraft fee class actions have been brought against nearly every major U.S. commercial bank. For related settlements, Hilsoft Notifications has developed programs that integrate individual notice and paid media efforts. PNC, Citizens, TD Bank, Fifth Third, Harris Bank M&I, Comerica Bank, Susquehanna Bank, Capital One, M&T Bank and Synovus are among the more than 20 banks that have retained Hilsoft. *In re Checking Account Overdraft Litigation,* MDL No. 2036 (S.D. Fla.).

➤ Possibly the largest data breach in U.S. history with approximately 130 million credit and debit card numbers stolen. *In re Heartland Data Security Breach Litigation,* MDL No. 2046 (S.D. Tex.)

➤ Largest and most complex class action in Canadian history. Designed and implemented groundbreaking notice to disparate, remote aboriginal people in the multi-billion dollar settlement. *In re Residential Schools Class Action Litigation,* 00-CV-192059 CPA (Ont. Super. Ct.).

➤ Extensive point of sale notice program of a settlement providing payments up to $100,000 related to Chinese drywall – 100 million notices distributed to Lowe's purchasers during a six-week period. *Vereen v. Lowe's Home Centers,* SU10-CV-2267B (Ga. Super. Ct.).

➤ Largest discretionary class action notice campaign involving virtually every adult in the U.S. for the settlement. *In re Trans Union Corp. Privacy Litigation,* MDL No. 1350 (N.D. Ill.).

➤ Most complex national data theft class action settlement involving millions of class members. *Lockwood v. Certegy Check Services, Inc.,* 8:07-cv-1434-T-23TGW (M.D. Fla.).

➤ Largest combined U.S. and Canadian retail consumer security breach notice program. *In re TJX Companies, Inc., Customer Data Security Breach Litigation,* MDL No. 1838 (D. Mass.).

➤ Most comprehensive notice ever in a securities class action for the $1.1 billion settlement of *In re Royal Ahold Securities and ERISA Litigation,* MDL No. 1539 (D. Md.).

➤ Most complex worldwide notice program in history. Designed and implemented all U.S. and international media notice with 500+ publications in 40 countries and 27 languages for $1.25 billion settlement. *In re Holocaust Victims Assets,* "Swiss Banks", No. CV-96-4849 (E.D.N.Y.).

➤ Largest U.S. claim program to date. Designed and implemented a notice campaign for the $10 billion program. *Tobacco Farmer Transition Program,* (U.S. Dept. of Ag.).

➤ Multi-national claims bar date notice to asbestos personal injury claimants. Opposing notice expert's reach methodology challenge rejected by court. *In re Babcock & Wilcox Co,* No. 00-10992 (E.D. La.).



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

2

**LEGAL NOTICING EXPERTS**

***Cameron Azari, Esq., Director of Legal Notice***
Cameron Azari, Esq. has more than 17 years of experience in the design and implementation of legal notification and claims administration programs. He is a nationally recognized expert in the creation of class action notification campaigns in compliance with Fed R. Civ. P. 23(c)(2) (d)(2) and (e) and similar state class action statutes. Cameron has been responsible for hundreds of legal notice and advertising programs. During his career, he has been involved in an array of high profile class action matters, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (MasterCard & Visa), In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, Heartland Payment Systems, In re: Checking Account Overdraft Litigation, Lowe's Home Centers, Department of Veterans Affairs (VA),* and *In re Residential Schools Class Action Litigation.* He is an active author and speaker on a broad range of legal notice and class action topics ranging from amendments to FRCP Rule 23 to email noticing, response rates and optimizing settlement effectiveness. Cameron is an active member of the Oregon State Bar. He received his B.S. from Willamette University and his J.D. from Northwestern School of Law at Lewis and Clark College. Cameron can be reached at caza@legalnotice.com.

***Lauran Schultz, Executive Director***
Lauran Schultz consults extensively with clients on notice adequacy and innovative legal notice programs. Lauran has more than 20 years of experience as a professional in the marketing and advertising field, specializing in legal notice and class action administration for the past seven years. High profile actions he has been involved in include companies such as BP, Bank of America, Fifth Third Bank, Symantec Corporation, Lowe's Home Centers, First Health, Apple, TJX, CNA and Carrier Corporation. Prior to joining Epiq in 2005, Lauran was a Senior Vice President of Marketing at National City Bank in Cleveland, Ohio. Lauran's education includes advanced study in political science at the University of Wisconsin-Madison along with a Ford Foundation fellowship from the Social Science Research Council and American Council of Learned Societies. Lauran can be reached at lschultz@hilsoft.com.

**ARTICLES AND PRESENTATIONS**

➢ **Cameron Azari** Co-Author, "A Practical Guide to Chapter 11 Bankruptcy Publication Notice." E-book, published, May 2017.

➢ **Cameron Azari** Featured Speaker, "Proposed Changes to Rule 23 Notice and Scrutiny of Claim Filing Rates," DC Consumer Class Action Lawyers Luncheon, December 6, 2016.

➢ **Cameron Azari** Speaker, "2016 Cybersecurity & Privacy Summit. Moving From 'Issue Spotting' To Implementing a Mature Risk Management Model." King & Spalding, Atlanta, GA, April 25, 2016.

➢ **Cameron Azari** Speaker, "Live Cyber Incident Simulation Exercise." Advisen's Cyber Risk Insights Conference, London, UK, February 10, 2015.

➢ **Cameron Azari** Speaker, "Pitfalls of Class Action Notice and Claims Administration." PLI's Class Action Litigation 2014 Conference, New York, NY, July 9, 2014.

➢ **Cameron Azari** Co-Author, "What You Need to Know About Frequency Capping In Online Class Action Notice Programs." *Class Action Litigation Report*, June 2014.

➢ **Cameron Azari** Speaker, "Class Settlement Update – Legal Notice and Court Expectations." PLI's 19th Annual Consumer Financial Services Institute Conference, New York, NY, April 7-8, 2014 and Chicago, IL, April 28-29, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements - Recent Developments." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 29-30, 2014.

➢ **Cameron Azari** Speaker, "Legal Notice in Building Products Cases." HarrisMartin's Construction Product Litigation Conference, Miami, FL, October 25, 2013.



| | | | |
|---|---|---|---|
| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2100 |

3

- **Cameron Azari** Co-Author, "Class Action Legal Noticing: Plain Language Revisited." *Law360*, April 2013.

- **Cameron Azari** Speaker, "Legal Notice in Consumer Finance Settlements Getting your Settlement Approved." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 31-February 1, 2013.

- **Cameron Azari** Speaker, "Perspectives from Class Action Claims Administrators: Email Notices and Response Rates." CLE International's 8th Annual Class Actions Conference, Los Angeles, CA, May 17-18, 2012.

- **Cameron Azari** Speaker, "Class Action Litigation Trends: A Look into New Cases, Theories of Liability & Updates on the Cases to Watch." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 26-27, 2012.

- **Lauran Schultz** Speaker, "Legal Notice Best Practices: Building a Workable Settlement Structure." CLE International's 7th Annual Class Action Conference, San Francisco, CA, May 2011.

- **Cameron Azari** Speaker, "Data Breaches Involving Consumer Financial Information: Litigation Exposures and Settlement Considerations." ACI's Consumer Finance Class Actions and Litigation, New York, NY, January 2011.

- **Cameron Azari** Speaker, "Notice in Consumer Class Actions: Adequacy, Efficiency and Best Practices." CLE International's 5th Annual Class Action Conference: Prosecuting and Defending Complex Litigation, San Francisco, CA, 2009.

- **Lauran Schultz** Speaker, "Efficiency and Adequacy Considerations in Class Action Media Notice Programs." Chicago Bar Association, Chicago, IL, 2009.

- **Cameron Azari** Author, "Clearing the Five Hurdles of Email - Delivery of Class Action Legal Notices." *Thomson Reuters Class Action Litigation Reporter*, June 2008.

- **Cameron Azari** Speaker, "Planning for a Smooth Settlement." ACI: Class Action Defense – Complex Settlement Administration for the Class Action Litigator, Phoenix, AZ, 2007.

- **Cameron Azari** Speaker, "Noticing and Response Rates in Class Action Settlements" – Class Action Bar Gathering, Vancouver, British Columbia, 2007.

- **Cameron Azari** Speaker, "Structuring a Litigation Settlement." CLE International's 3rd Annual Conference on Class Actions, Los Angeles, CA, 2007.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Skadden Arps Slate Meagher & Flom, LLP, New York, NY, 2006.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Bridgeport Continuing Legal Education, Class Action and the UCL, San Diego, CA, 2006.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stoel Rives litigation group, Portland, OR / Seattle, WA / Boise, ID / Salt Lake City, UT, 2005.

- **Cameron Azari** Speaker, "Notice and Response Rates in Class Action Settlements" – Stroock & Stroock & Lavan litigation group, Los Angeles, CA, 2005.

- **Cameron Azari** Author, "Twice the Notice or No Settlement." Current Developments – Issue II, August 2003.

- **Cameron Azari** Speaker, "A Scientific Approach to Legal Notice Communication" – Weil Gotshal litigation group, New York, NY, 2003.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

4

## JUDICIAL COMMENTS

**Judge Charles R. Breyer, *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*** (May 17, 2017) MDL No. 2672 (N.D. Cal.):

> The Court is satisfied that the Notice Program was reasonably calculated to notify Class Members of the proposed Settlement. The Notice "apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). Indeed, the Notice Administrator reports that the notice delivery rate of 97.04% "exceed[ed] the expected range and is indicative of the extensive address updating and re-mailing protocols used." (Dkt. No. 3188-2 ¶ 24.)

**Judge Joseph F. Bataillon, *Klug v. Watts Regulator Company*** (April 13, 2017) No. 8:15-cv-00061-JFB-FG3 (D. Neb.):

> The court finds that the notice to the Settlement Class of the pendency of the Class Action and of this settlement, as provided by the Settlement Agreement and by the Preliminary Approval Order dated December 7, 2017, constituted the best notice practicable under the circumstances to all persons and entities within the definition of the Settlement Class, and fully complied with the requirements of Federal Rules of Civil Procedure Rule 23 and due process. Due and sufficient proof of the execution of the Notice Plan as outlined in the Preliminary Approval Order has been filed.

**Judge Yvonne Gonzalez Rogers, *Bias v. Wells Fargo & Company, et al.*** (April 13, 2017) No. 4:12-cv-00664-YGR (N.D. Cal.):

> The form, content, and method of dissemination of Notice of Settlement given to the Settlement Class was adequate and reasonable and constituted the best notice practicable under the circumstances, including both individual notice to all Settlement Class Members who could be identified through reasonable effort and publication notice.
>
> Notice of Settlement, as given, complied with the requirements of Rule 23 of the Federal Rules of Civil Procedure, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth herein.
>
> Notice of the Settlement was provided to the appropriate regulators pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715(c)(1).

**Judge Carlos Murguia, *Whitton v. Deffenbaugh Industries, Inc., et al*** (December 14, 2016) No. 2:12-cv-02247 (D. Kan.) and ***Gary, LLC v. Deffenbaugh Industries, Inc., et al*** (December 14, 2016) No. 2:13-cv-2634 (D. Kan.):

> The Court determines that the Notice Plan as implemented was reasonably calculated to provide the best notice practicable under the circumstances and contained all required information for members of the proposed Settlement Class to act to protect their interests. The Court also finds that Class Members were provided an adequate period of time to receive Notice and respond accordingly.

**Judge Yvette Kane, *In re: Shop-Vac Marketing and Sales Practices Litigation*** (December 9, 2016) MDL No. 2380 (M.D. Pa.):

> The Court hereby finds and concludes that members of the Settlement Class have been provided the best notice practicable of the Settlement and that such notice satisfies all requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, and all other applicable laws.

**Judge Timothy D. Fox, *Miner v. Philip Morris USA, Inc.*** (November 21, 2016) No. 60CV03-4661 (Ark. Cir.):

> The Court finds that the Settlement Notice provided to potential members of the Class constituted the best and most practicable notice under the circumstances, thereby complying fully with due process and Rule 23 of the Arkansas Rules of Civil Procedure.


PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

5

**Judge Eileen Bransten,** *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* (October 13, 2016) No. 650562/2011 (Sup. Ct. N.Y.):

> This Court finds that the Notice Program and the Notice provided to Settlement Class members fully satisfied the requirements of constitutional due process, the N.Y. C.P.L.R., and any other applicable laws, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all persons entitled thereto.

**Judge Jerome B. Simandle,** *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* (September 20, 2016) MDL No. 2540 (D. N.J.):

> The Court hereby finds that the Notice provided to the Settlement Class constituted the best notice practicable under the circumstances. Said Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the terms of the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Fed. R. Civ. P. 23, requirements of due process and any other applicable law.

**Judge Marcia G. Cooke,** *Chimeno-Buzzi v. Hollister Co. and Abercrombie & Fitch Co.* (April 11, 2016) No. 14-23120 (S.D. Fla.):

> Pursuant to the Court's Preliminary Approval Order, the Settlement Administrator, Epiq Systems, Inc. [Hilsoft Notifications], has complied with the approved notice process as confirmed in its Declaration filed with the Court on March 23, 2016. The Court finds that the notice process was designed to advise Class Members of their rights. The form and method for notifying Class Members of the settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, constituted the best notice practicable under the circumstances, and satisfied the requirements of Federal Rule of Civil Procedure 23(c)(2)(B), the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, and due process under the United States Constitution and other applicable laws.

**Judge Christopher S. Sontchi,** *In re: Energy Future Holdings Corp, et al.,* (July 30, 2015) 14-10979(CSS) (Bankr. D. Del.):

> Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

**Judge David C. Norton,** *In re: MI Windows and Doors Inc. Products Liability Litigation* (July 22, 2015) MDL No. 2333, No. 2:12-mn-00001 (D. S.C.):

> The court finds that the Notice Plan, as described in the Settlement and related declarations, has been faithfully carried out and constituted the best practicable notice to Class Members under the circumstances of this Action, and was reasonable and constituted due, adequate, and sufficient notice to all Persons entitled to be provided with Notice.
>
> The court also finds that the Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of: (1) the pendency of this class action; (2) their right to exclude themselves from the Settlement Class and the proposed Settlement; (3) their right to object to any aspect of the proposed Settlement (including final certification of the Settlement Class, the fairness, reasonableness, or adequacy of the proposed Settlement, the adequacy of the Settlement Class's representation by Named Plaintiffs or Class Counsel, or the award of attorney's and representative fees); (4) their right to appear at the fairness hearing (either on their own or through counsel hired at their own expense); and (5) the binding and preclusive effect of the orders and Final Order and Judgment in this Action, whether favorable or unfavorable, on all Persons who do not request exclusion from the Settlement Class. As such, the court finds that the Notice fully satisfied the requirements of the Federal Rules of Civil Procedure, including Federal Rule of Civil Procedure 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the rules of this court, and any other applicable law, and provided sufficient notice to bind all Class Members, regardless of whether a particular Class Member received actual notice.



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

6

**Judge Robert W. Gettleman,** *Adkins v. Nestle Purina PetCare Company, et al.,* (June 23, 2015) No. 12-cv-2871 (N.D. Ill.):

> *Notice to the Settlement Class and other potentially interested parties has been provided in accordance with the notice requirements specified by the Court in the Preliminary Approval Order. Such notice fully and accurately informed the Settlement Class members of all material elements of the proposed Settlement and of their opportunity to object or comment thereon or to exclude themselves from the Settlement; provided Settlement Class Members adequate instructions and a variety of means to obtain additional information; was the best notice practicable under the circumstances; was valid, due, and sufficient notice to all Settlement Class members; and complied fully with the laws of the State of Illinois, Federal Rules of Civil Procedure, the United States Constitution, due process, and other applicable law.*

**Judge James Lawrence King,** *Steen v. Capital One, N.A.* (May 22, 2015) No. 2:10-cv-01505-JCZ-KWR (E.D. La.) and No. 1:10-cv-22058-JLK (S.D. Fla.) as part of *In Re: Checking Account Overdraft Litigation*, MDL 2036 (S.D. Fla.)

> The Court finds that the Settlement Class Members were provided with the best practicable notice; the notice was reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'' *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15). This Settlement with Capital One was widely publicized, and any Settlement Class Member who wished to express comments or objections had ample opportunity and means to do so. Azari Decl. ¶¶ 30-39.

**Judge Rya W. Zobel,** *Gulbankian et al. v. MW Manufacturers, Inc.,* (December 29, 2014) No. 1:10-cv-10392-RWZ (D. Mass.):

> *This Court finds that the Class Notice was provided to the Settlement Class consistent with the Preliminary Approval Order and that it was the best notice practicable and fully satisfied the requirements of the Federal Rules of Civil Procedure, due process, and applicable law. The Court finds that the Notice Plan that was implemented by the Claims Administrator satisfies the requirements of FED. R. CIV. P. 23, 28 U.S.C. § 1715, and Due Process, and is the best notice practicable under the circumstances. The Notice Plan constituted due and sufficient notice of the Settlement, the Final Approval Hearing, and the other matters referred to in the notices. Proof of the giving of such notices has been filed with the Court via the Azari Declaration and its exhibits.*

**Judge Edward J. Davila,** *Rose v. Bank of America Corporation, and FIA Card Services, N.A.,* (August 29, 2014) No. 5:11-CV-02390-EJD; 5:12-CV-04009-EJD (N.D. Cal.):

> *The Court finds that the notice was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of this action, all material elements of the Settlement, the opportunity for Settlement Class Members to exclude themselves from, object to, or comment on the settlement and to appear at the final approval hearing. The notice was the best notice practicable under the circumstances, satisfying the requirements of Rule 23(c)(2)(B); provided notice in a reasonable manner to all class members, satisfying Rule 23(e)(1)(B); was adequate and sufficient notice to all Class Members; and, complied fully with the laws of the United States and of the Federal Rules of Civil Procedure, due process and any other applicable rules of court.*

**Judge James A. Robertson, II,** *Wong et al. v. Alacer Corp.* (June 27, 2014) No. CGC-12-519221 (Cal. Super. Ct.):

> *Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Based on the Declaration of Cameron Azari dated March 7, 2014, such Class Notice has been provided in an adequate and sufficient manner, constitutes the best notice practicable under the circumstances and satisfies the requirements of California Civil Code Section 1781, California Civil Code of Civil Procedure Section 382, Rules 3.766 of the California Rules of Court, and due process.*

**Judge John Gleeson,** *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, (December 13, 2013) No. 1:05-cv-03800 (E.D. NY.):

> *The Class Administrator notified class members of the terms of the proposed settlement through a mailed notice and publication campaign that included more than 20 million mailings and publication in more than 400 publications. The notice here meets the requirements of due process and notice standards… The objectors' complaints provide no reason to conclude that the purposes and requirements of a notice to a class were not met here.*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

7

**Judge Lance M. Africk,** *Evans, et al. v. TIN, Inc., et al,* (July 7, 2013) No. 2:11-cv-02067 (E.D. La.):

> *The Court finds that the dissemination of the Class Notice… as described in Notice Agent Lauran Schultz's Declaration: (a) constituted the best practicable notice to Class Members under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances…; (c) constituted notice that was reasonable, due, adequate, and sufficient; and (d) constituted notice that fully satisfied all applicable legal requirements, including Rules 23(c)(2)(B) and (e)(1) of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process Clause), the Rules of this Court, and any other applicable law, as well as complied with the Federal Judicial Center's illustrative class action notices.*

**Judge Edward M. Chen,** *Marolda v. Symantec Corporation,* (April 5, 2013) No. 08-cv-05701 (N.D. Cal.):

> *Approximately 3.9 million notices were delivered by email to class members, but only a very small percentage objected or opted out . . .  The Court . . . concludes that notice of settlement to the class was adequate and satisfied all requirements of Federal Rule of Civil Procedure 23(e) and due process.  Class members received direct notice by email, and additional notice was given by publication in numerous widely circulated publications as well as in numerous targeted publications.  These were the best practicable means of informing class members of their rights and of the settlement's terms.*

**Judge Ann D. Montgomery,** *In re Zurn Pex Plumbing Products Liability Litigation,* (February 27, 2013) No. 0:08cv01958 (D. Minn.):

> *The parties retained Hilsoft Notifications ("Hilsoft"), an experienced class-notice consultant, to design and carry out the notice plan.  The form and content of the notices provided to the class were direct, understandable, and consistent with the "plain language" principles advanced by the Federal Judicial Center.*
>
> *The notice plan's multi-faceted approach to providing notice to settlement class members whose identity is not known to the settling parties constitutes "the best notice [*26] that is practicable under the circumstances" consistent with Rule 23(c)(2)(B).*

**Magistrate Judge Stewart,** *Gessele et al. v. Jack in the Box, Inc.,* (January 28, 2013) No. 3:10-cv-960 (D. Or.):

> *Moreover, plaintiffs have submitted [a] declaration from Cameron Azari (docket #129), a nationally recognized notice expert, who attests that fashioning an effective joint notice is not unworkable or unduly confusing.  Azari also provides a detailed analysis of how he would approach fashioning an effective notice in this case.*

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (Medical Benefits Settlement),* (January 11, 2013) MDL No. 2179 (E.D. La.):

> *Through August 9, 2012, 366,242 individual notices had been sent to potential [Medical Benefits] Settlement Class Members by postal mail and 56,136 individual notices had been e-mailed.  Only 10,700 mailings—or 3.3%—were known to be undeliverable. (Azari Decl. ¶¶ 8, 9.)  Notice was also provided through an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, highly-trafficked websites, and Sunday local newspapers (via newspaper supplements).  Notice was also provided in non-measured trade, business and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming.  The combined measurable paid print, television, radio, and Internet effort reached an estimated 95% of adults aged 18+ in the Gulf Coast region an average of 10.3 times each, and an estimated 83% of all adults in the United States aged 18+ an average of 4 times each. (Id. ¶¶ 8, 10.)  All notice documents were designed to be clear, substantive, and informative.  (Id. ¶ 5.)*
>
> *The Court received no objections to the scope or content of the [Medical Benefits] Notice Program.  (Azari Supp. Decl. ¶ 12.)  The Court finds that the Notice and Notice Plan as implemented satisfied the best notice practicable standard of Rule 23(c) and, in accordance with Rule 23(e)(1), provided notice in a reasonable manner to Class Members who would be bound by the Settlement, including individual notice to all Class Members who could be identified through reasonable effort.  Likewise, the Notice and Notice Plan satisfied the requirements of Due Process.  The Court also finds the Notice and Notice Plan satisfied the requirements of CAFA.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

8

**Judge Carl J. Barbier,** *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* *(Economic and Property Damages Settlement)*, (December 21, 2012) MDL No. 2179 (E.D. La.):

> *The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rule of Civil Procedure 23(c)(2)(b) and 23(e), the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation. The notice program surpassed the requirements of Due Process, Rule 23, and CAFA. Based on the factual elements of the Notice Program as detailed below, the Notice Program surpassed all of the requirements of Due Process, Rule 23, and CAFA.*

> *The Notice Program, as duly implemented, surpasses other notice programs that Hilsoft Notifications has designed and executed with court approval. The Notice Program included notification to known or potential Class Members via postal mail and e-mail; an extensive schedule of local newspaper, radio, television and Internet placements, well-read consumer magazines, a national daily business newspaper, and Sunday local newspapers. Notice placements also appeared in non-measured trade, business, and specialty publications, African-American, Vietnamese, and Spanish language publications, and Cajun radio programming. The Notice Program met the objective of reaching the greatest possible number of class members and providing them with every reasonable opportunity to understand their legal rights. See Azari Decl. ¶¶ 8, 15, 68. The Notice Program was substantially completed on July 15, 2012, allowing class members adequate time to make decisions before the opt-out and objections deadlines.*

> *The media notice effort alone reached an estimated 95% of adults in the Gulf region an average of 10.3 times each, and an estimated 83% of all adults in the United States an average of 4 times each. These figures do not include notice efforts that cannot be measured, such as advertisements in trade publications and sponsored search engine listings. The Notice Program fairly and adequately covered and notified the class without excluding any demographic group or geographic area, and it exceeded the reach percentage achieved in most other court-approved notice programs.*

**Judge Alonzo Harris, Opelousas General Hospital Authority, A Public Trust, D/B/A Opelousas General Health System and Arklamiss Surgery Center, L.L.C. v. FairPay Solutions, Inc.,** (August 17, 2012) No. 12-C-1599 (27th Jud. D. Ct. La.):

> *Notice given to Class Members and all other interested parties pursuant to this Court's order of April 18, 2012, was reasonably calculated to apprise interested parties of the pendency of the action, the certification of the Class as Defined for settlement purposes only, the terms of the Settlement Agreement, Class Members rights to be represented by private counsel, at their own costs, and Class Members rights to appear in Court to have their objections heard, and to afford persons or entities within the Class Definition an opportunity to exclude themselves from the Class. Such notice complied with all requirements of the federal and state constitutions, including the Due Process Clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Class as Defined.*

**Judge James Lawrence King, In re Checking Account Overdraft Litigation (IBERIABANK),** (April 26, 2012) MDL No. 2036 (S.D. Fla):

> *The Court finds that the Notice previously approved was fully and properly effectuated and was sufficient to satisfy the requirements of due process because it described "the substantive claims . . . [and] contained information reasonably necessary to [allow Settlement Class Members to] make a decision to remain a class member and be bound by the final judgment." In re Nissan Motor Corp. Antitrust Litig., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release as well as the amount and method and manner of proposed distribution of the Settlement proceeds, and informed Settlement Class Members of their rights to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. The Notice also informed Settlement Class Members that a class judgment would bind them unless they opted out, and told them where they could obtain more information, such as access to a full copy of the Agreement. Further, the Notice described in summary form the fact that Class Counsel would be seeking attorneys' fees of up to 30 percent of the Settlement. Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The content of the Notice fully complied with the requirements of Rule 23.*


PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

9

**Judge Bobby Peters,** *Vereen v. Lowe's Home Centers,* (April 13, 2012) SU10-CV-2267B (Ga. Super. Ct.):

*The Court finds that the Notice and the Notice Plan was fulfilled, in accordance with the terms of the Settlement Agreement, the Amendment, and this Court's Preliminary Approval Order and that this Notice and Notice Plan constituted the best practicable notice to Class Members under the circumstances of this action, constituted due and sufficient Notice of the proposed Settlement to all persons entitled to participate in the proposed Settlement, and was in full compliance with Ga. Code Ann § 9-11-23 and the constitutional requirements of due process. Extensive notice was provided to the class, including point of sale notification, publication notice and notice by first-class mail for certain potential Class Members.*

*The affidavit of the notice expert conclusively supports this Court's finding that the notice program was adequate, appropriate, and comported with Georgia Code Ann. § 9-11-23(b)(2), the Due Process Clause of the Constitution, and the guidance for effective notice articulate in the FJC's Manual for Complex Litigation, 4th.*

**Judge Lee Rosenthal,** *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation,* (March 2, 2012) MDL No. 2046 (S.D. Tex.):

*The notice that has been given clearly complies with Rule 23(e)(1)'s reasonableness requirement... Hilsoft Notifications analyzed the notice plan after its implementation and conservatively estimated that notice reached 81.4 percent of the class members. (Docket Entry No. 106, ¶ 32). Both the summary notice and the detailed notice provided the information reasonably necessary for the presumptive class members to determine whether to object to the proposed settlement. See Katrina Canal Breaches, 628 F.3d at 197. Both the summary notice and the detailed notice "were written in easy-to-understand plain English." In re Black Farmers Discrimination Litig., — F. Supp. 2d —, 2011 WL 5117058, at *23 (D.D.C. 2011); accord AGGREGATE LITIGATION § 3.04(c).15 The notice provided "satisf[ies] the broad reasonableness standards imposed by due process" and Rule 23. Katrina Canal Breaches, 628 F.3d at 197.*

**Judge John D. Bates,** *Trombley v. National City Bank,* (December 1, 2011) 1:10-CV-00232 (D.D.C.)

*The form, content, and method of dissemination of Notice given to the Settlement Class were in full compliance with the Court's January 11, 2011 Order, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the final fairness hearing were provided to the Settlement Class.*

**Judge Robert M. Dow, Jr.,** *Schulte v. Fifth Third Bank,* (July 29, 2011) No. 1:09-cv-6655 (N.D. Ill.):

*The Court has reviewed the content of all of the various notices, as well as the manner in which Notice was disseminated, and concludes that the Notice given to the Class fully complied with Federal Rule of Civil Procedure 23, as it was the best notice practicable, satisfied all constitutional due process concerns, and provided the Court with jurisdiction over the absent Class Members.*

**Judge Ellis J. Daigle,** *Williams v. Hammerman & Gainer Inc.,* (June 30, 2011) No. 11-C-3187-B (27th Jud. D. Ct. La.):

*Notices given to Settlement Class members and all other interested parties throughout this proceeding with respect to the certification of the Settlement Class, the proposed settlement, and all related procedures and hearings—including, without limitation, the notice to putative Settlement Class members and others more fully described in this Court's order of 30th day of March 2011 were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination, to apprise interested parties and members of the Settlement Class of the pendency of the action, the certification of the Settlement Class, the Settlement Agreement and its contents, Settlement Class members' right to be represented by private counsel, at their own cost, and Settlement Class members' right to appear in Court to have their objections heard, and to afford Settlement Class members an opportunity to exclude themselves from the Settlement Class. Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedures, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

10

**Judge Stefan R. Underhill, *Mathena v. Webster Bank, N.A.*,** (March 24, 2011) No. 3:10-cv-1448 (D. Conn.):

*The form, content, and method of dissemination of Notice given to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all persons entitled to such notice, and said notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.*

**Judge Ted Stewart, *Miller v. Basic Research, LLC*,** (September 2, 2010) No. 2:07-cv-871 (D. Utah):

*Plaintiffs state that they have hired a firm specializing in designing and implementing large scale, unbiased, legal notification plans. Plaintiffs represent to the Court that such notice will include: 1) individual notice by electronic mail and/or first-class mail sent to all reasonably identifiable Class members; 2) nationwide paid media notice through a combination of print publications, including newspapers, consumer magazines, newspaper supplements and the Internet; 3) a neutral, Court-approved, informational press release; 4) a neutral, Court-approved Internet website; and 5) a toll-free telephone number. Similar mixed media plans have been approved by other district courts post class certification. The Court finds this plan is sufficient to meet the notice requirement.*

**Judge Sara Loi, *Pavlov v. Continental Casualty Co.*,** (October 7, 2009) No. 5:07cv2580 (N.D. Ohio):

*As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims. With a 99.9% effective rate, the Court finds that the notice program constituted the "best notice that is practicable under the circumstances," Fed. R. Civ. P. 23(c)(2)(B), and clearly satisfies the requirements of Rule 23(c)(2)(B).*

**Judge James Robertson, *In re Department of Veterans Affairs (VA) Data Theft Litigation*,** (September 23, 2009) MDL No. 1796 (D.D.C.):

*The Notice Plan, as implemented, satisfied the requirements of due process and was the best notice practicable under the circumstances. The Notice Plan was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their right to appear, object to or exclude themselves from the Settlement. Further, the notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice.*

**Judge Lisa F. Chrystal, *Little v. Kia Motors America, Inc.*,** (August 27, 2009) No. UNN-L-0800-01 (N.J. Super. Ct.):

*The Court finds that the manner and content of the notices for direct mailing and for publication notice, as specified in the Notice Plan (Exhibit 2 to the Affidavit of Lauran R. Schultz), provides the best practicable notice of judgment to members of the Plaintiff Class.*

**Judge Barbara Crowder, *Dolen v. ABN AMRO Bank N.V.,*** (March 23, 2009) No. 01-L-454, 01-L-493 (3rd Jud. Cir. Ill.):

*The Court finds that the Notice Plan is the best notice practicable under the circumstances and provides the Eligible Members of the Settlement Class sufficient information to make informed and meaningful decisions regarding their options in this Litigation and the effect of the Settlement on their rights. The Notice Plan further satisfies the requirements of due process and 735 ILCS 5/2-803. That Notice Plan is approved and accepted. This Court further finds that the Notice of Settlement and Claim Form comply with 735 ILCS 5/2-803 and are appropriate as part of the Notice Plan and the Settlement, and thus they are hereby approved and adopted. This Court further finds that no other notice other than that identified in the Notice Plan is reasonably necessary in this Litigation.*

**Judge Robert W. Gettleman, *In re Trans Union Corp.*,** (September 17, 2008) MDL No. 1350 (N.D. Ill.):

*The Court finds that the dissemination of the Class Notice under the terms and in the format provided for in its Preliminary Approval Order constitutes the best notice practicable under the circumstances, is due and sufficient notice for all purposes to all persons entitled to such notice, and fully satisfies the requirements of the Federal Rules of Civil Procedure, the requirements of due process under the Constitution of the United States, and any other applicable law… Accordingly, all objections are hereby OVERRULED.*

**Judge Steven D. Merryday, *Lockwood v. Certegy Check Services, Inc.*,** (September 3, 2008) No. 8:07-cv-1434-T-23TGW (M.D. Fla.):

> *The form, content, and method of dissemination of the notice given to the Settlement Class were adequate and reasonable and constituted the best notice practicable in the circumstances. The notice as given provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions of the Settlement Agreement, and these proceedings to all persons entitled to such notice, and the notice satisfied the requirements of Rule 23, Federal Rules of Civil Procedure, and due process.*

**Judge William G. Young, *In re TJX Companies*,** (September 2, 2008) MDL No. 1838 (D. Mass.):

> *The form, content, and method of dissemination of notice provided to the Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The Notice, as given, provided valid, due, and sufficient notice of the proposed settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings to all Persons entitled to such notice, and said Notice fully satisfied the requirements of Fed. R. Civ. P. 23 and due process.*

**Judge Philip S. Gutierrez, *Shaffer v. Continental Casualty Co.*,** (June 11, 2008) SACV-06-2235-PSG (PJWx) (C.D. Cal.):

> *…was reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Class Action Fairness Act, the United States Constitution (including the Due Process Clauses), the Rules of the Court, and any other applicable law.*

**Judge Robert L. Wyatt, *Gunderson v. AIG Claim Services, Inc.*,** (May 29, 2008) No. 2004-002417 (14th Jud. D. Ct. La.):

> *Notices given to Settlement Class members…were reasonably calculated under all the circumstances and have been sufficient, as to form, content, and manner of dissemination…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due and sufficient notice to all potential members of the Settlement Class.*

**Judge Mary Anne Mason, *Palace v. DaimlerChrysler Corp.*,** (May 29, 2008) No. 01-CH-13168 (Ill. Cir. Ct.):

> *The form, content, and method of dissemination of the notice given to the Illinois class and to the Illinois Settlement Class were adequate and reasonable, and constituted the best notice practicable under the circumstances. The notice, as given, provided valid, due, and sufficient notice of the proposed Settlement, the terms and conditions set forth in the Settlement Agreement, and these proceedings, to all Persons entitled to such notice, and said notice fully satisfied the requirements of due process and complied with 735 ILCS §§5/2-803 and 5/2-806.*

**Judge David De Alba, *Ford Explorer Cases*,** (May 29, 2008) JCCP Nos. 4226 & 4270 (Cal. Super. Ct.):

> *[T]he Court is satisfied that the notice plan, design, implementation, costs, reach, were all reasonable, and has no reservations about the notice to those in this state and those in other states as well, including Texas, Connecticut, and Illinois; that the plan that was approved—submitted and approved, comports with the fundamentals of due process as described in the case law that was offered by counsel.*

**Judge Kirk D. Johnson, *Webb v. Liberty Mutual Ins. Co.*,** (March 3, 2008) No. CV-2007-418-3 (Ark. Cir. Ct.):

> *The Court finds that there was minimal opposition to the settlement. After undertaking an extensive notice campaign to Class members of approximately 10,707 persons, mailed notice reached 92.5% of potential Class members.*

**Judge Carol Crafton Anthony, *Johnson v. Progressive Casualty Ins. Co.*,** (December 6, 2007) No. CV-2003-513 (Ark. Cir. Ct.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice reached a large majority of the Class members. The Court finds that such notice constitutes the best notice practicable…The forms of Notice and Notice Plan satisfy all of the requirements of Arkansas law and due process.*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

12

**Judge Kirk D. Johnson,** ***Sweeten v. American Empire Insurance Co.,*** (August 20, 2007) No. CV-2007-154-3 (Ark. Cir. Ct.):

> *The Court does find that all notices required by the Court to be given to class members was done within the time allowed and the manner best calculated to give notice and apprise all the interested parties of the litigation. It was done through individual notice, first class mail, through internet website and the toll-free telephone call center…The Court does find that these methods were the best possible methods to advise the class members of the pendency of the action and opportunity to present their objections and finds that these notices do comply with all the provisions of Rule 23 and the Arkansas and United States Constitutions.*

**Judge Robert Wyatt,** ***Gunderson v. F.A. Richard & Associates, Inc.,*** (July 19, 2007) No. 2004-2417-D (14th Jud. D. Ct. La.):

> *This is the final Order and Judgment regarding the fairness, reasonableness and adequacy. And I am satisfied in all respects regarding the presentation that's been made to the Court this morning in the Class memberships, the representation, the notice, and all other aspects and I'm signing that Order at this time.*

**Judge Lewis A. Kaplan,** ***In re Parmalat Securities Litigation,*** (July 19, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> *The Court finds that the distribution of the Notice, the publication of the Publication Notice, and the notice methodology…met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution, (including the Due Process clause), the Private Securities Litigation Reform Act of 1995 (15 U.S.C. 78u-4, et seq.) (the "PSLRA"), the Rules of the Court, and any other applicable law.*

**Judge Joe Griffin,** ***Beasley v. The Reliable Life Insurance Co.,*** (March 29, 2007) No. CV-2005-58-1 (Ark. Cir. Ct.):

> *[T]he Court has, pursuant to the testimony regarding the notification requirements, that were specified and adopted by this Court, has been satisfied and that they meet the requirements of due process. They are fair, reasonable, and adequate. I think the method of notification certainly meets the requirements of due process…So the Court finds that the notification that was used for making the potential class members aware of this litigation and the method of filing their claims, if they chose to do so, all those are clear and concise and meet the plain language requirements and those are completely satisfied as far as this Court is concerned in this matter.*

**Judge Lewis A. Kaplan,** ***In re Parmalat Securities Litigation,*** (March 1, 2007) MDL No. 1653-LAK (S.D.N.Y.):

> *The court approves, as to form and content, the Notice and the Publication Notice, attached hereto as Exhibits 1 and 2, respectively, and finds that the mailing and distribution of the Notice and the publication of the Publication Notice in the manner and the form set forth in Paragraph 6 of this Order…meet the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Securities Exchange Act of 1934, as emended by Section 21D(a)(7) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(7), and due process, and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

**Judge Anna J. Brown,** ***Reynolds v. The Hartford Financial Services Group, Inc.,*** (February 27, 2007) No. CV-01-1529-BR (D. Or):

> *[T]he court finds that the Notice Program fairly, fully, accurately, and adequately advised members of the Settlement Class and each Settlement Subclass of all relevant and material information concerning the proposed settlement of this action, their rights under Rule 23 of the Federal Rules of Civil Procedure, and related matters, and afforded the Settlement Class with adequate time and an opportunity to file objections to the Settlement or request exclusion from the Settlement Class. The court finds that the Notice Program constituted the best notice practicable under the circumstances and fully satisfied the requirements of Rule 23 and due process.*

**Judge Kirk D. Johnson,** ***Zarebski v. Hartford Insurance Company of the Midwest,*** (February 13, 2007) No. CV-2006-409-3 (Ark. Cir. Ct.):

> *Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Class Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminary Approval Order, was the best notice practicable under the circumstances to all members of the Settlement Class. Accordingly, the Class Notice and Claim Form as disseminated are*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

13

*finally approved as fair, reasonable, and adequate notice under the circumstances. The Court finds and concludes that due and adequate notice of the pendency of this Action, the Stipulation, and the Final Settlement Hearing has been provided to members of the Settlement Class, and the Court further finds and concludes that the notice campaign described in the Preliminary Approval Order and completed by the parties complied fully with the requirements of Arkansas Rule of Civil Procedure 23 and the requirements of due process under the Arkansas and United States Constitutions.*

**Judge Richard J. Holwell,** ***In re Vivendi Universal, S.A. Securities Litigation,*** 2007 WL 1490466, at *34 (S.D.N.Y.):

*In response to defendants' manageability concerns, plaintiffs have filed a comprehensive affidavit outlining the effectiveness of its proposed method of providing notice in foreign countries. According to this…the Court is satisfied that plaintiffs intend to provide individual notice to those class members whose names and addresses are ascertainable, and that plaintiffs' proposed form of publication notice, while complex, will prove both manageable and the best means practicable of providing notice.*

**Judge Samuel Conti,** ***Ciabattari v. Toyota Motor Sales, U.S.A., Inc.,*** (November 17, 2006) No. C-05-04289-SC (N.D. Cal.):

*After reviewing the evidence and arguments presented by the parties…the Court finds as follows…The class members were given the best notice practicable under the circumstances, and that such notice meets the requirements of the Due Process Clause of the U.S. Constitution, and all applicable statutes and rules of court.*

**Judge Ivan L.R. Lemelle**, ***In re High Sulfur Content Gasoline Prods. Liability Litigation,*** (November 8, 2006) MDL No. 1632 (E.D. La.):

*This Court approved a carefully-worded Notice Plan, which was developed with the assistance of a nationally-recognized notice expert, Hilsoft Notifications…The Notice Plan for this Class Settlement was consistent with the best practices developed for modern-style "plain English" class notices; the Court and Settling Parties invested substantial effort to ensure notice to persons displaced by the Hurricanes of 2005; and as this Court has already determined, the Notice Plan met the requirements of Rule 23 and constitutional due process.*

**Judge Catherine C. Blake,** ***In re Royal Ahold Securities and "ERISA" Litigation,*** (November 2, 2006) MDL No. 1539 (D. Md.):

*The global aspect of the case raised additional practical and legal complexities, as did the parallel criminal proceedings in another district. The settlement obtained is among the largest cash settlements ever in a securities class action case and represents an estimated 40% recovery of possible provable damages. The notice process appears to have been very successful not only in reaching but also in eliciting claims from a substantial percentage of those eligible for recovery.*

**Judge Elaine E. Bucklo,** ***Carnegie v. Household International,*** (August 28, 2006) No. 98 C 2178 (N.D. Ill.):

*[T]he Notice was disseminated pursuant to a plan consisting of first class mail and publication developed by Plaintiff's notice consultant, Hilsoft Notification[s]…who the Court recognized as experts in the design of notice plans in class actions. The Notice by first-class mail and publication was provided in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies all requirements of Rule 23(e) and due process.*

**Judge Joe E. Griffin,** ***Beasley v. Hartford Insurance Company of the Midwest,*** (June 13, 2006) No. CV-2005-58-1 (Ark. Cir. Ct.):

*Based on the Court's review of the evidence admitted and argument of counsel, the Court finds and concludes that the Individual Notice and the Publication Notice, as disseminated to members of the Settlement Class in accordance with provisions of the Preliminarily Approval Order, was the best notice practicable under the circumstances…and the requirements of due process under the Arkansas and United States Constitutions.*



PORTLAND AREA OFFICE     10300 SW ALLEN BLVD     BEAVERTON, OR 97005     T 503-597-7697
PHILADELPHIA AREA OFFICE     1420 LOCUST ST 30 F     PHILADELPHIA, PA 1910     T 215-721-2120

14

**Judge Norma L. Shapiro,** *First State Orthopedics et al. v. Concentra, Inc., et al.,* (May 1, 2006) No. 2:05-CV-04951-NS (E.D. Pa.):

> *The Court finds that dissemination of the Mailed Notice, Published Notice and Full Notice in the manner set forth here and in the Settlement Agreement meets the requirements of due process and Pennsylvania law. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice, is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement.*

**Judge Thomas M. Hart,** *Froeber v. Liberty Mutual Fire Ins. Co.,* (April 19, 2006) No. 00C15234 (Or. Cir. Ct.):

> *The court has found and now reaffirms that dissemination and publication of the Class Notice in accordance with the terms of the Third Amended Order constitutes the best notice practicable under the circumstances.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities and "ERISA" Litigation,* (January 6, 2006) MDL No. 1539 (D. Md.):

> *I think it's remarkable, as I indicated briefly before, given the breadth and scope of the proposed Class, the global nature of the Class, frankly, that again, at least on a preliminary basis, and I will be getting a final report on this, that the Notice Plan that has been proposed seems very well, very well suited, both in terms of its plain language and in terms of its international reach, to do what I hope will be a very thorough and broad-ranging job of reaching as many of the shareholders, whether individual or institutional, as possibly can be done to participate in what I also preliminarily believe to be a fair, adequate and reasonable settlement.*

**Judge Catherine C. Blake,** *In re Royal Ahold Securities & "ERISA" Litigation,* 437 F.Supp.2d 467, 472 (D. Md. 2006):

> *The court hereby finds that the Notice and Notice Plan described herein and in the Order dated January 9, 2006 provided Class Members with the best notice practicable under the circumstances. The Notice provided due and adequate notice of these proceedings and the matters set forth herein, including the Settlement and Plan of Allocation, to all persons entitled to such notice, and the Notice fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.*

**Judge Robert H. Wyatt, Jr.,** *Gray v. New Hampshire Indemnity Co., Inc.,* (December 19, 2005) No. CV-2002-952-2-3 (Ark. Cir. Ct.):

> *Notice of the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The Notice contained the essential elements necessary to satisfy due process, including the Settlement Class definition, the identities of the Parties and of their counsel, a summary of the terms of the proposed settlement, Class Counsel's intent to apply for fees, information regarding the manner in which objections could be submitted, and requests for exclusions could be filed. The Notice properly informed Class members of the formula for the distribution of benefits under the settlement…Notice was direct mailed to all Class members whose current whereabouts could be identified by reasonable effort. Notice was also effected by publication in many newspapers and magazines throughout the nation, reaching a large majority of the Class members multiple times. The Court finds that such notice constitutes the best notice practicable.*

**Judge Michael J. O'Malley,** *Defrates v. Hollywood Entm't Corp.,* (June 24, 2005) No. 02 L 707 (Ill. Cir. Ct.):

> *[T]his Court hereby finds that the notice program described in the Preliminary Approval Order and completed by HEC complied fully with the requirements of due process, the Federal Rules of Civil Procedure and all other applicable laws.*

**Judge Wilford D. Carter,** *Thibodeaux v. Conoco Phillips Co.,* (May 26, 2005) No. 2003-481 F (14th J.D. Ct. La.):

> *Notice given to Class Members…were reasonably calculated under all the circumstances and have been sufficient, both as to the form and content…Such notices complied with all requirements of the federal and state constitutions, including the due process clause, and applicable articles of the Louisiana Code of Civil Procedure, and constituted the best notice practicable under the circumstances and constituted due process and sufficient notice to all potential members of the Class as Defined.*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

15

**Judge Michael Canaday,** *Morrow v. Conoco Inc.,* (May 25, 2005) No. 2002-3860 G (14th J.D. Ct. La.):

*The objections, if any, made to due process, constitutionality, procedures, and compliance with law, including, but not limited to, the adequacy of notice and the fairness of the proposed Settlement Agreement, lack merit and are hereby overruled.*

**Judge John R. Padova,** *Nichols v. SmithKline Beecham Corp.,* (April 22, 2005) No. 00-6222 (E.D. Pa.):

*Pursuant to the Order dated October 18, 2004, End-Payor Plaintiffs employed Hilsoft Notifications to design and oversee Notice to the End-Payor Class. Hilsoft Notifications has extensive experience in class action notice situations relating to prescription drugs and cases in which unknown class members need to receive notice…After reviewing the individual mailed Notice, the publication Notices, the PSAs and the informational release, the Court concludes that the substance of the Notice provided to members of the End-Payor Class in this case was adequate to satisfy the concerns of due process and the Federal Rules.*

**Judge Douglas Combs,** *Morris v. Liberty Mutual Fire Ins. Co.,* (February 22, 2005) No. CJ-03-714 (D. Okla.):

*I am very impressed that the notice was able to reach – be delivered to 97 ½ percent members of the class. That, to me, is admirable. And I'm also – at the time that this was initially entered, I was concerned about the ability of notice to be understood by a common, nonlawyer person, when we talk about legalese in a court setting. In this particular notice, not only the summary notice but even the long form of the notice were easily understandable, for somebody who could read the English language, to tell them whether or not they had the opportunity to file a claim.*

**Judge Joseph R. Goodwin,** *In re Serzone Products Liability Litigation,* 231 F.R.D. 221, 231 (S.D. W. Va. 2005):

*The Notice Plan was drafted by Hilsoft Notifications, a Pennsylvania firm specializing in designing, developing, analyzing and implementing large-scale, unbiased legal notification plans. Hilsoft has disseminated class action notices in more than 150 cases, and it designed the model notices currently displayed on the Federal Judicial Center's website as a template for others to follow…To enhance consumer exposure, Hilsoft studied the demographics and readership of publications among adults who used a prescription drug for depression in the last twelve months. Consequently, Hilsoft chose to utilize media particularly targeting women due to their greater incidence of depression and heavy usage of the medication.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (November 24, 2004) MDL No. 1430 (D. Mass.):

*After review of the proposed Notice Plan designed by Hilsoft Notifications…is hereby found to be the best practicable notice under the circumstances and, when completed, shall constitute due and sufficient notice of the Settlement and the Fairness Hearing to all persons and entities affected by and/or entitled to participate in the Settlement, in full compliance with the notice requirements of Rule 23 the Federal Rules of Civil Procedure and due process.*

**Judge Richard G. Stearns,** *In re Lupron® Marketing and Sales Practice Litigation,* (November 23, 2004) MDL No. 1430 (D. Mass.):

*I actually find the [notice] plan as proposed to be comprehensive and extremely sophisticated and very likely be as comprehensive as any plan of its kind could be in reaching those most directly affected.*

**Judge James S. Moody, Jr.,** *Mantzouris v. Scarritt Motor Group Inc.,* (August 10, 2004) No. 8:03 CV- 0015-T-30 MSS (M.D. Fla.):

*Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the members of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement, it is hereby determined that all members of the Class, except for Ms. Gwendolyn Thompson, who was the sole person opting out of the Settlement Agreement, are bound by this Order and Final Judgment entered herein.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30 F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

16

**Judge Robert E. Payne,** *Fisher v. Virginia Electric & Power Co.,* (July 1, 2004) No. 3:02CV431 (E.D. Va.)**:**

*The record here shows that the class members have been fully and fairly notified of the existence of the class action, of the issues in it, of the approaches taken by each side in it in such a way as to inform meaningfully those whose rights are affected and to thereby enable them to exercise their rights intelligently…The success rate in notifying the class is, I believe, at least in my experience, I share Ms. Kauffman's experience, it is as great as I have ever seen in practicing or serving in this job…So I don't believe we could have had any more effective notice.*

**Judge John Kraetzer,** *Baiz v. Mountain View Cemetery,* (April 14, 2004) No. 809869-2 (Cal. Super. Ct.):

*The notice program was timely completed, complied with California Government Code section 6064, and provided the best practicable notice to all members of the Settlement Class under the circumstances. The Court finds that the notice program provided class members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to class members and all other persons wishing to be heard…The Court has determined that the Notice given to potential members of the Settlement Class fully and accurately informed potential Members of the Settlement Class of all material elements of the proposed settlement and constituted valid, due, and sufficient notice to all potential members of the Settlement Class, and that it constituted the best practicable notice under the circumstances.*

***Hospitality Mgmt. Assoc., Inc. v. Shell Oil Co.,*** 356 S.C. 644, 663, 591 S.E.2d 611, 621 (Sup. Ct. S.C. 2004):

*Clearly, the Cox court designed and utilized various procedural safeguards to guarantee sufficient notice under the circumstances. Pursuant to a limited scope of review, we need go no further in deciding the Cox court's findings that notice met due process are entitled to deference.*

**Judge Joseph R. Goodwin,** *In re Serzone Prods. Liability Litigation,* 2004 U.S. Dist. LEXIS 28297, at *10 (S.D. W. Va.):

*The Court has considered the Notice Plan and proposed forms of Notice and Summary Notice submitted with the Memorandum for Preliminary Approval and finds that the forms and manner of notice proposed by Plaintiffs and approved herein meet the requirements of due process and Fed.R.Civ.P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.*

**Judge James D. Arnold,** *Cotten v. Ferman Mgmt. Servs. Corp.,* (November 26, 2003) No. 02-08115 (Fla. Cir. Ct.):

*Due and adequate notice of the proceedings having been given and a full opportunity having been offered to the member of the Class to participate in the Settlement Hearing, or object to the certification of the Class and the Agreement…*

**Judge Judith K. Fitzgerald,** *In re Pittsburgh Corning Corp.,* (November 26, 2003) No. 00-22876-JKF (Bankr. W.D. Pa.):

*The procedures and form of notice for notifying the holders of Asbestos PI Trust Claims, as described in the Motion, adequately protect the interests of the holders of Asbestos PI Trust Claims in a manner consistent with the principles of due process, and satisfy the applicable requirements of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.*

**Judge Carter Holly,** *Richison v. American Cemwood Corp.,* (November 18, 2003) No. 005532 (Cal. Super. Ct.):

*As to the forms of Notice, the Court finds and concludes that they fully apprised the Class members of the pendency of the litigation, the terms of the Phase 2 Settlement, and Class members' rights and options…Not a single Class member—out of an estimated 30,000—objected to the terms of the Phase 2 Settlement Agreement, notwithstanding a comprehensive national Notice campaign, via direct mail and publication Notice…The notice was reasonable and the best notice practicable under the circumstances, was due, adequate, and sufficient notice to all Class members, and complied fully with the laws of the State of California, the Code of Civil Procedure, due process, and California Rules of Court 1859 and 1860.*



| PORTLAND AREA OFFICE | 10300 SW ALLEN BLVD | BEAVERTON, OR 97005 | T 503-597-7697 |
| PHILADELPHIA AREA OFFICE | 1420 LOCUST ST 30F | PHILADELPHIA, PA 1910 | T 215-721-2120 |

17

**Judge Thomas A. Higgins,** *In re Columbia/HCA Healthcare Corp.,* (June 13, 2003) MDL No. 1227 (M.D. Tenn.):

*Notice of the settlement has been given in an adequate and sufficient manner. The notice provided by mailing the settlement notice to certain class members and publishing notice in the manner described in the settlement was the best practicable notice, complying in all respects with the requirements of due process.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* 216 F.R.D. 55, 68 (S.D.N.Y. 2003):

*In view of the extensive notice campaign waged by the defendant, the extremely small number of class members objecting or requesting exclusion from the settlement is a clear sign of strong support for the settlement…The notice provides, in language easily understandable to a lay person, the essential terms of the settlement, including the claims asserted…who would be covered by the settlement…[T]he notice campaign that defendant agreed to undertake was extensive…I am satisfied, having reviewed the contents of the notice package, and the extensive steps taken to disseminate notice of the settlement, that the class notice complies with the requirements of Rule 23 (c)(2) and 23(e). In summary, I have reviewed all of the objections, and none persuade me to conclude that the proposed settlement is unfair, inadequate or unreasonable.*

**Judge Edgar E. Bayley,** *Dimitrios v. CVS, Inc.,* (November 27, 2002) No. 99-6209; *Walker v. Rite Aid Corp.,* No. 99-6210; and *Myers v. Rite Aid Corp.,* No. 01-2771 (Pa. Ct. C.P.):

*The Court specifically finds that: fair and adequate notice has been given to the class, which comports with due process of law.*

**Judge Dewey C. Whitenton,** *Ervin v. Movie Gallery, Inc.,* (November 22, 2002) No. 13007 (Tenn. Ch.):

*The content of the class notice also satisfied all due process standards and state law requirements…The content of the notice was more than adequate to enable class members to make an informed and intelligent choice about remaining in the class or opting out of the class.*

**Judge James R. Williamson,** *Kline v. The Progressive Corp.,* (November 14, 2002) No. 01-L-6 (Ill. Cir. Ct.):

*Notice to the Settlement Class was constitutionally adequate, both in terms of its substance and the manner in which it was disseminated. The notice contained the essential elements necessary to satisfy due process…*

**Judge Marina Corodemus,** *Talalai v. Cooper Tire & Rubber Co.,* (September 13, 2002) No. L-008830.00 (N.J. Super. Ct.):

*Here, the comprehensive bilingual, English and Spanish, court-approved Notice Plan provided by the terms of the settlement meets due process requirements. The Notice Plan used a variety of methods to reach potential class members. For example, short form notices for print media were placed…throughout the United States and in major national consumer publications which include the most widely read publications among Cooper Tire owner demographic groups.*

**Judge Harold Baer, Jr.,** *Thompson v. Metropolitan Life Ins. Co.,* (September 3, 2002) No. 00 Civ. 5071-HB (S.D.N.Y.):

*The Court further finds that the Class Notice and Publication Notice provided in the Settlement Agreement are written in plain English and are readily understandable by Class Members. In sum, the Court finds that the proposed notice texts and methodology are reasonable, that they constitute due, adequate and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure (including Fed. R. Civ. P. 23(c)(2) and (e)), the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.*

**Judge Milton Gunn Shuffield,** *Scott v. Blockbuster Inc.,* (January 22, 2002) No. D 162-535 (Tex. Jud. Dist. Ct.) ultimately withstood challenge to Court of Appeals of Texas. *Peters v. Blockbuster* 65 S.W.3d 295, 307 (Tex. App.-Beaumont, 2001):

*In order to maximize the efficiency of the notice, a professional concern, Hilsoft Notifications, was retained. This Court concludes that the notice campaign was the best practicable, reasonably calculated, under all*



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

18

*the circumstances, to apprise interested parties of the settlement and afford them an opportunity to present their objections…The notice campaign was highly successful and effective, and it more than satisfied the due process and state law requirements for class notice.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.,*** (October 30, 2001) No. MID-L-8839-00-MT (N.J. Super. Ct.):

*The parties have crafted a notice program which satisfies due process requirements without reliance on an unreasonably burdensome direct notification process…The form of the notice is reasonably calculated to apprise class members of their rights. The notice program is specifically designed to reach a substantial percentage of the putative settlement class members.*

**Judge Marina Corodemus,** ***Talalai v. Cooper Tire & Rubber Co.,*** (October 29, 2001) No. L-8830-00-MT (N.J. Super. Ct.):

*I saw the various bar graphs for the different publications and the different media dissemination, and I think that was actually the clearest bar graph I've ever seen in my life…it was very clear of the time periods that you were doing as to each publication and which media you were doing over what market time, so I think that was very clear.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases,*** (April 1, 2001) J.C.C.P. No. CJC-00-004106 (Cal. Super. Ct.):

*[C]oncerning dissemination of class notice; and I have reviewed the materials that have been submitted on that subject and basically I'm satisfied. I think it's amazing if you're really getting 80 percent coverage. That's very reassuring. And the papers that you submitted responded to a couple things that had been mentioned before and I am satisfied with all that.*

**Judge Stuart R. Pollak,** ***Microsoft I-V Cases,*** (March 30, 2001) J.C.C.P. No. 4106 (Cal. Super. Ct.):

*Plaintiffs and Defendant Microsoft Corporation have submitted a joint statement in support of their request that the Court approve the plan for dissemination of class action notice and proposed forms of notice, and amend the class definition. The Court finds that the forms of notice to Class members attached hereto as Exhibits A and B fairly and adequately inform the Class members of their rights concerning this litigation. The Court further finds that the methods for dissemination of notice are the fairest and best practicable under the circumstances, and comport with due process requirements.*

## LEGAL NOTICE CASES

Hilsoft Notifications has served as a notice expert for planning, implementation and/or analysis in the following partial listing of cases:

| | |
|---|---|
| ***Andrews v. MCI (900 Number Litigation)*** | S.D. Ga., CV 191-175 |
| ***Harper v. MCI (900 Number Litigation)*** | S.D. Ga., CV 192-134 |
| ***In re Bausch & Lomb Contact Lens Litigation*** | N.D. Ala., 94-C-1144-WW |
| ***In re Ford Motor Co. Vehicle Paint Litigation*** | E.D. La., MDL No. 1063 |
| ***Castano v. Am. Tobacco*** | E.D. La., CV 94-1044 |
| ***Cox v. Shell Oil (Polybutylene Pipe Litigation)*** | Tenn. Ch., 18,844 |
| ***In re Amino Acid Lysine Antitrust Litigation*** | N.D. Ill., MDL No. 1083 |
| ***In re Dow Corning Corp. (Breast Implant Bankruptcy)*** | E.D. Mich., 95-20512-11-AJS |

 PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

19

| | |
|---|---|
| *Kunhel v. CNA Ins. Companies* | N.J. Super. Ct., ATL-C-0184-94 |
| *In re Factor Concentrate Blood Prods. Litigation (Hemophiliac HIV)* | N.D. Ill., MDL No. 986 |
| *In re Ford Ignition Switch Prods. Liability Litigation* | D. N.J., 96-CV-3125 |
| *Jordan v. A.A. Friedman (Non-Filing Ins. Litigation)* | M.D. Ga., 95-52-COL |
| *Kalhammer v. First USA (Credit Card Litigation)* | Cal. Cir. Ct., C96-45632010-CAL |
| *Navarro-Rice v. First USA (Credit Card Litigation)* | Or. Cir. Ct., 9709-06901 |
| *Spitzfaden v. Dow Corning (Breast Implant Litigation)* | La. D. Ct., 92-2589 |
| *Robinson v. Marine Midland (Finance Charge Litigation)* | N.D. Ill., 95 C 5635 |
| *McCurdy v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-95-2601 |
| *Johnson v. Norwest Fin. Alabama* | Ala. Cir. Ct., CV-93-PT-962-S |
| *In re Residential Doors Antitrust Litigation* | E.D. Pa., MDL No. 1039 |
| *Barnes v. Am. Tobacco Co. Inc.* | E.D. Pa., 96-5903 |
| *Small v. Lorillard Tobacco Co. Inc.* | N.Y. Super. Ct., 110949/96 |
| *Naef v. Masonite Corp (Hardboard Siding Litigation)* | Ala. Cir. Ct., CV-94-4033 |
| *In re Synthroid Mktg. Litigation* | N.D. Ill., MDL No. 1182 |
| *Raysick v. Quaker State Slick 50 Inc.* | D. Tex., 96-12610 |
| *Castillo v. Mike Tyson (Tyson v. Holyfield Bout)* | N.Y. Super. Ct., 114044/97 |
| *Avery v. State Farm Auto. Ins. (Non-OEM Auto Parts)* | Ill. Cir. Ct., 97-L-114 |
| *Walls v. The Am. Tobacco Co. Inc.* | N.D. Okla., 97-CV-218-H |
| *Tempest v. Rainforest Café (Securities Litigation)* | D. Minn., 98-CV-608 |
| *Stewart v. Avon Prods. (Securities Litigation)* | E.D. Pa., 98-CV-4135 |
| *Goldenberg v. Marriott PLC Corp (Securities Litigation)* | D. Md., PJM 95-3461 |
| *Delay v. Hurd Millwork (Building Products Litigation)* | Wash. Super. Ct., 97-2-07371-0 |
| *Gutterman v. Am. Airlines (Frequent Flyer Litigation)* | Ill. Cir. Ct., 95CH982 |
| *Hoeffner v. The Estate of Alan Kenneth Vieira (Un-scattered Cremated Remains Litigation)* | Cal. Super. Ct., 97-AS 02993 |
| *In re Graphite Electrodes Antitrust Litigation* | E.D. Pa., MDL No. 1244 |
| *In re Silicone Gel Breast Implant Prods. Liability Litigation, Altrichter v. INAMED* | N.D. Ala., MDL No. 926 |
| *St. John v. Am. Home Prods. Corp. (Fen/Phen Litigation)* | Wash. Super. Ct., 97-2-06368 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

20

| *Crane v. Hackett Assocs. (Securities Litigation)* | E.D. Pa., 98-5504 |
| --- | --- |
| *In re Holocaust Victims Assets Litigation (Swiss Banks)* | E.D.N.Y., CV-96-4849 |
| *McCall v. John Hancock (Settlement Death Benefits)* | N.M. Cir. Ct., CV-2000-2818 |
| *Williams v. Weyerhaeuser Co. (Hardboard Siding Litigation)* | Cal. Super. Ct., CV-995787 |
| *Kapustin v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 98-CV-6599 |
| *Leff v. YBM Magnex Int'l Inc. (Securities Litigation)* | E.D. Pa., 95-CV-89 |
| *In re PRK/LASIK Consumer Litigation* | Cal. Super. Ct., CV-772894 |
| *Hill v. Galaxy Cablevision* | N.D. Miss., 1:98CV51-D-D |
| *Scott v. Am. Tobacco Co. Inc.* | La. D. Ct., 96-8461 |
| *Jacobs v. Winthrop Financial Associates (Securities Litigation)* | D. Mass., 99-CV-11363 |
| *Int'l Comm'n on Holocaust Era Ins. Claims – Worldwide Outreach Program* | Former Secretary of State Lawrence Eagleburger Commission |
| *Bownes v. First USA Bank (Credit Card Litigation)* | Ala. Cir. Ct., CV-99-2479-PR |
| *Whetman v. IKON (ERISA Litigation)* | E.D. Pa., 00-87 |
| *Mangone v. First USA Bank (Credit Card Litigation)* | Ill. Cir. Ct., 99AR672a |
| *In re Babcock and Wilcox Co. (Asbestos Related Bankruptcy)* | E.D. La., 00-10992 |
| *Barbanti v. W.R. Grace and Co. (Zonolite / Asbestos Litigation)* | Wash. Super. Ct., 00201756-6 |
| *Brown v. Am. Tobacco* | Cal. Super. Ct., J.C.C.P. 4042, 711400 |
| *Wilson v. Servier Canada Inc. (Canadian Fen/Phen Litigation)* | Ont. Super. Ct., 98-CV-158832 |
| *In re Texaco Inc. (Bankruptcy)* | S.D.N.Y. 87 B 20142, 87 B 20143, 87 B 20144 |
| *Olinde v. Texaco (Bankruptcy, Oil Lease Litigation)* | M.D. La., 96-390 |
| *Gustafson v. Bridgestone/Firestone, Inc. (Recall Related Litigation)* | S.D. Ill., 00-612-DRH |
| *In re Bridgestone/Firestone Tires Prods. Liability Litigation* | S.D. Ind., MDL No. 1373 |
| *Gaynoe v. First Union Corp. (Credit Card Litigation)* | N.C. Super. Ct., 97-CVS-16536 |
| *Carson v. Daimler Chrysler Corp. (Fuel O-Rings Litigation)* | W.D. Tenn., 99-2896 TU A |
| *Providian Credit Card Cases* | Cal. Super. Ct., J.C.C.P. 4085 |
| *Fields v. Great Spring Waters of Am., Inc. (Bottled Water Litigation)* | Cal. Super. Ct., 302774 |



HILSOFT NOTIFICATIONS   PORTLAND AREA OFFICE   10300 SW ALLEN BLVD   BEAVERTON, OR 97005   T 503-597-7697
PHILADELPHIA AREA OFFICE   1420 LOCUST ST 30 F   PHILADELPHIA, PA 1910   T 215-721-2120

21

| | |
|---|---|
| *Sanders v. Great Spring Waters of Am., Inc.* (Bottled Water Litigation) | Cal. Super. Ct., 303549 |
| *Sims v. Allstate Ins. Co.* (Diminished Auto Value Litigation) | Ill. Cir. Ct., 99-L-393A |
| *Peterson v. State Farm Mutual Auto. Ins. Co.* (Diminished Auto Value Litigation) | Ill. Cir. Ct., 99-L-394A |
| *Microsoft I-V Cases* (Antitrust Litigation Mirroring Justice Dept.) | Cal. Super. Ct., J.C.C.P. 4106 |
| *Westman v. Rogers Family Funeral Home, Inc.* (Remains Handling Litigation) | Cal. Super. Ct., C-98-03165 |
| *Rogers v. Clark Equipment Co.* | Ill. Cir. Ct., 97-L-20 |
| *Garrett v. Hurley State Bank* (Credit Card Litigation) | Miss. Cir. Ct., 99-0337 |
| *Ragoonanan v. Imperial Tobacco Ltd.* (Firesafe Cigarette Litigation) | Ont. Super. Ct., 00-CV-183165 CP |
| *Dietschi v. Am. Home Prods. Corp.* (PPA Litigation) | W.D. Wash., C01-0306L |
| *Dimitrios v. CVS, Inc.* (PA Act 6 Litigation) | Pa. C.P., 99-6209 |
| *Jones v. Hewlett-Packard Co.* (Inkjet Cartridge Litigation) | Cal. Super. Ct., 302887 |
| *In re Tobacco Cases II* (California Tobacco Litigation) | Cal. Super. Ct., J.C.C.P. 4042 |
| *Scott v. Blockbuster, Inc.* (Extended Viewing Fees Litigation) | 136th Tex. Jud. Dist., D 162-535 |
| *Anesthesia Care Assocs. v. Blue Cross of Cal.* | Cal. Super. Ct., 986677 |
| *Ting v. AT&T* (Mandatory Arbitration Litigation) | N.D. Cal., C-01-2969-BZ |
| *In re W.R. Grace & Co.* (Asbestos Related Bankruptcy) | Bankr. D. Del., 01-01139-JJF |
| *Talalai v. Cooper Tire & Rubber Co.* (Tire Layer Adhesion Litigation) | N.J. Super. Ct.,, MID-L-8839-00 MT |
| *Kent v. Daimler Chrysler Corp.* (Jeep Grand Cherokee Park-to-Reverse Litigation) | N.D. Cal., C01-3293-JCS |
| *Int'l Org. of Migration – German Forced Labour Compensation Programme* | Geneva, Switzerland |
| *Madsen v. Prudential Federal Savings & Loan* (Homeowner's Loan Account Litigation) | 3rd Jud. Dist. Ct. Utah, C79-8404 |
| *Bryant v. Wyndham Int'l., Inc.* (Energy Surcharge Litigation) | Cal. Super. Ct., GIC 765441, GIC 777547 |
| *In re USG Corp.* (Asbestos Related Bankruptcy) | Bankr. D. Del., 01-02094-RJN |
| *Thompson v. Metropolitan Life Ins. Co.* (Race Related Sales Practices Litigation) | S.D.N.Y., 00-CIV-5071 HB |
| *Ervin v. Movie Gallery Inc.* (Extended Viewing Fees) | Tenn. Ch., CV-13007 |
| *Peters v. First Union Direct Bank* (Credit Card Litigation) | M.D. Fla., 8:01-CV-958-T-26 TBM |
| *National Socialist Era Compensation Fund* | Republic of Austria |



PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

22

| | |
|---|---|
| *In re Baycol Litigation* | D. Minn., MDL No. 1431 |
| *Claims Conference–Jewish Slave Labour Outreach Program* | German Government Initiative |
| *Wells v. Chevy Chase Bank (Credit Card Litigation)* | Md. Cir. Ct., C-99-000202 |
| *Walker v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 99-6210 |
| *Myers v. Rite Aid of PA, Inc. (PA Act 6 Litigation)* | C.P. Pa., 01-2771 |
| *In re PA Diet Drugs Litigation* | C.P. Pa., 9709-3162 |
| *Harp v. Qwest Communications (Mandatory Arbitration Lit.)* | Or. Circ. Ct., 0110-10986 |
| *Tuck v. Whirlpool Corp. & Sears, Roebuck & Co. (Microwave Recall Litigation)* | Ind. Cir. Ct., 49C01-0111-CP-002701 |
| *Allison v. AT&T Corp. (Mandatory Arbitration Litigation)* | 1st Jud. D.C. N.M., D-0101-CV-20020041 |
| *Kline v. The Progressive Corp.* | Ill. Cir. Ct., 01-L-6 |
| *Baker v. Jewel Food Stores, Inc. & Dominick's Finer Foods, Inc. (Milk Price Fixing)* | Ill. Cir. Ct., 00-L-9664 |
| *In re Columbia/HCA Healthcare Corp. (Billing Practices Litigation)* | M.D. Tenn., MDL No. 1227 |
| *Foultz v. Erie Ins. Exchange (Auto Parts Litigation)* | C.P. Pa., 000203053 |
| *Soders v. General Motors Corp. (Marketing Initiative Litigation)* | C.P. Pa., CI-00-04255 |
| *Nature Guard Cement Roofing Shingles Cases* | Cal. Super. Ct., J.C.C.P. 4215 |
| *Curtis v. Hollywood Entm't Corp. (Additional Rental Charges)* | Wash. Super. Ct., 01-2-36007-8 SEA |
| *Defrates v. Hollywood Entm't Corp.* | Ill. Cir. Ct., 02L707 |
| *Pease v. Jasper Wyman & Son, Merrill Blueberry Farms Inc., Allen's Blueberry Freezer Inc. & Cherryfield Foods Inc.* | Me. Super. Ct., CV-00-015 |
| *West v. G&H Seed Co. (Crawfish Farmers Litigation)* | 27th Jud. D. Ct. La., 99-C-4984-A |
| *Linn v. Roto-Rooter Inc. (Miscellaneous Supplies Charge)* | C.P. Ohio, CV-467403 |
| *McManus v. Fleetwood Enter., Inc. (RV Brake Litigation)* | D. Ct. Tex., SA-99-CA-464-FB |
| *Baiz v. Mountain View Cemetery (Burial Practices)* | Cal. Super. Ct., 809869-2 |
| *Stetser v. TAP Pharm. Prods, Inc. & Abbott Laboratories (Lupron Price Litigation)* | N.C. Super. Ct., 01-CVS-5268 |
| *Richison v. Am. Cemwood Corp. (Roofing Durability Settlement)* | Cal. Super. Ct., 005532 |
| *Cotten v. Ferman Mgmt. Servs. Corp.* | 13th Jud. Cir. Fla., 02-08115 |
| *In re Pittsburgh Corning Corp. (Asbestos Related Bankruptcy)* | Bankr. W.D. Pa., 00-22876-JKF |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

23

| | |
|---|---|
| *Mostajo v. Coast Nat'l Ins. Co.* | Cal. Super. Ct., 00 CC 15165 |
| *Friedman v. Microsoft Corp. (Antitrust Litigation)* | Ariz. Super. Ct., CV 2000-000722 |
| *Multinational Outreach - East Germany Property Claims* | Claims Conference |
| *Davis v. Am. Home Prods. Corp. (Norplant Contraceptive Litigation)* | D. La., 94-11684 |
| *Walker v. Tap Pharmaceutical Prods., Inc. (Lupron Price Litigation)* | N.J. Super. Ct., CV CPM-L-682-01 |
| *Munsey v. Cox Communications (Late Fee Litigation)* | Civ. D. La., Sec. 9, 97 19571 |
| *Gordon v. Microsoft Corp. (Antitrust Litigation)* | 4th Jud. D. Ct. Minn., 00-5994 |
| *Clark v. Tap Pharmaceutical Prods., Inc.* | 5th Dist. App. Ct. Ill., 5-02-0316 |
| *Fisher v. Virginia Electric & Power Co.* | E.D. Va., 3:02-CV-431 |
| *Mantzouris v. Scarritt Motor Group, Inc.* | M.D. Fla., 8:03-CV-0015-T-30-MSS |
| *Johnson v. Ethicon, Inc. (Product Liability Litigation)* | W. Va. Cir. Ct., 01-C-1530, 1531, 1533, 01-C-2491 to 2500 |
| *Schlink v. Edina Realty Title* | 4th Jud. D. Ct. Minn., 02-018380 |
| *Tawney v. Columbia Natural Res. (Oil & Gas Lease Litigation)* | W. Va. Cir. Ct., 03-C-10E |
| *White v. Washington Mutual, Inc. (Pre-Payment Penalty Litigation)* | 4th Jud. D. Ct. Minn., CT 03-1282 |
| *Acacia Media Techs. Corp. v. Cybernet Ventures Inc., (Patent Infringement Litigation)* | C.D. Cal., SACV03-1803 GLT (Anx) |
| *Bardessono v. Ford Motor Co. (15 Passenger Vans)* | Wash. Super. Ct., 32494 |
| *Gardner v. Stimson Lumber Co. (Forestex Siding Litigation)* | Wash. Super. Ct., 00-2-17633-3SEA |
| *Poor v. Sprint Corp. (Fiber Optic Cable Litigation)* | Ill. Cir. Ct., 99-L-421 |
| *Thibodeau v. Comcast Corp.* | E.D. Pa., 04-CV-1777 |
| *Cazenave v. Sheriff Charles C. Foti (Strip Search Litigation)* | E.D. La., 00-CV-1246 |
| *National Assoc. of Police Orgs., Inc. v. Second Chance Body Armor, Inc. (Bullet Proof Vest Litigation)* | Mich. Cir. Ct., 04-8018-NP |
| *Nichols v. SmithKline Beecham Corp. (Paxil)* | E.D. Pa., 00-6222 |
| *Yacout v. Federal Pacific Electric Co. (Circuit Breaker)* | N.J. Super. Ct., MID-L-2904-97 |
| *Lewis v. Bayer AG (Baycol)* | 1st Jud. Dist. Ct. Pa., 002353 |
| *In re Educ. Testing Serv. PLT 7-12 Test Scoring Litigation* | E.D. La., MDL No. 1643 |
| *Stefanyshyn v. Consol. Indus. Corp. (Heat Exchanger)* | Ind. Super. Ct., 79 D 01-9712-CT-59 |
| *Barnett v. Wal-Mart Stores, Inc.* | Wash. Super. Ct., 01-2-24553-8 SEA |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

24

| | |
|---|---|
| *In re Serzone Prods. Liability Litigation* | S.D. W. Va., MDL No. 1477 |
| *Ford Explorer Cases* | Cal. Super. Ct., J.C.C.P. 4226 & 4270 |
| *In re Solutia Inc. (Bankruptcy)* | S.D.N.Y., 03-17949-PCB |
| *In re Lupron Marketing & Sales Practices Litigation* | D. Mass., MDL No. 1430 |
| *Morris v. Liberty Mutual Fire Ins. Co.* | D. Okla., CJ-03-714 |
| *Bowling, et al. v. Pfizer Inc. (Bjork-Shiley Convexo-Concave Heart Valve)* | S.D. Ohio, C-1-91-256 |
| *Thibodeaux v. Conoco Philips Co.* | D. La., 2003-481 |
| *Morrow v. Conoco Inc.* | D. La., 2002-3860 |
| *Tobacco Farmer Transition Program* | U.S. Dept. of Agric. |
| *Perry v. Mastercard Int'l Inc.* | Ariz. Super. Ct., CV2003-007154 |
| *Brown v. Credit Suisse First Boston Corp.* | C.D. La., 02-13738 |
| *In re Unum Provident Corp.* | D. Tenn., 1:03-CV-1000 |
| *In re Ephedra Prods. Liability Litigation* | D.N.Y., MDL No. 1598 |
| *Chesnut v. Progressive Casualty Ins. Co.* | Ohio C.P., 460971 |
| *Froeber v. Liberty Mutual Fire Ins. Co.* | Or. Cir. Ct., 00C15234 |
| *Luikart v. Wyeth Am. Home Prods. (Hormone Replacement)* | W. Va. Cir. Ct., 04-C-127 |
| *Salkin v. MasterCard Int'l Inc. (Pennsylvania)* | Pa. C.P., 2648 |
| *Rolnik v. AT&T Wireless Servs., Inc.* | N.J. Super. Ct., L-180-04 |
| *Singleton v. Hornell Brewing Co. Inc. (Arizona Ice Tea)* | Cal. Super. Ct., BC 288 754 |
| *Becherer v. Qwest Commc'ns Int'l, Inc.* | Ill. Cir. Ct., 02-L140 |
| *Clearview Imaging v. Progressive Consumers Ins. Co.* | Fla. Cir. Ct., 03-4174 |
| *Mehl v. Canadian Pacific Railway, Ltd* | D.N.D., A4-02-009 |
| *Murray v. IndyMac Bank. F.S.B* | N.D. Ill., 04 C 7669 |
| *Gray v. New Hampshire Indemnity Co., Inc.* | Ark. Cir. Ct., CV-2002-952-2-3 |
| *George v. Ford Motor Co.* | M.D. Tenn., 3:04-0783 |
| *Allen v. Monsanto Co.* | W. Va. Cir. Ct., 041465 |
| *Carter v. Monsanto Co.* | W. Va. Cir. Ct., 00-C-300 |
| *Carnegie v. Household Int'l, Inc.* | N. D. Ill., 98-C-2178 |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

25

| | |
|---|---|
| *Daniel v. AON Corp.* | Ill. Cir. Ct., 99 CH 11893 |
| *In re Royal Ahold Securities and "ERISA" Litigation* | D. Md., MDL No. 1539 |
| *In re Pharmaceutical Industry Average Wholesale Price Litigation* | D. Mass., MDL No. 1456 |
| *Meckstroth v. Toyota Motor Sales, U.S.A., Inc.* | 24th Jud. D. Ct. La., 583-318 |
| *Walton v. Ford Motor Co.* | Cal. Super. Ct., SCVSS 126737 |
| *Hill v. State Farm Mutual Auto Ins. Co.* | Cal. Super. Ct., BC 194491 |
| *First State Orthopaedics et al. v. Concentra, Inc., et al.* | E.D. Pa. 2:05-CV-04951-AB |
| *Sauro v. Murphy Oil USA, Inc.* | E.D. La., 05-4427 |
| *In re High Sulfur Content Gasoline Prods. Liability Litigation* | E.D. La., MDL No. 1632 |
| *Homeless Shelter Compensation Program* | City of New York |
| *Rosenberg v. Academy Collection Service, Inc.* | E.D. Pa., 04-CV-5585 |
| *Chapman v. Butler & Hosch, P.A.* | 2nd Jud. Cir. Fla., 2000-2879 |
| *In re Vivendi Universal, S.A. Securities Litigation* | S.D.N.Y., 02-CIV-5571 RJH |
| *Desportes v. American General Assurance Co.* | Ga. Super. Ct., SU-04-CV-3637 |
| *In re: Propulsid Products Liability Litigation* | E.D. La., MDL No. 1355 |
| *Baxter v. The Attorney General of Canada (In re Residential Schools Class Action Litigation)* | Ont. Super. Ct., 00-CV-192059 CPA |
| *McNall v. Mastercard Int'l, Inc. (Currency Conversion Fees)* | 13th Tenn. Jud. Dist. Ct., CT-002506-03 |
| *Lee v. Allstate* | Ill. Cir. Ct., 03 LK 127 |
| *Turner v. Murphy Oil USA, Inc.* | E.D. La., 2:05-CV-04206-EEF-JCW |
| *Carter v. North Central Life Ins. Co.* | Ga. Super. Ct., SU-2006-CV-3764-6 |
| *Harper v. Equifax* | E.D. Pa., 2:04-CV-03584-TON |
| *Beasley v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2005-58-1 |
| *Springer v. Biomedical Tissue Services, LTD (Human Tissue Litigation)* | Ind. Cir. Ct., 1:06-CV-00332-SEB-VSS |
| *Spence v. Microsoft Corp. (Antitrust Litigation)* | Wis. Cir. Ct., 00-CV-003042 |
| *Pennington v. The Coca Cola Co. (Diet Coke)* | Mo. Cir. Ct., 04-CV-208580 |
| *Sunderman v. Regeneration Technologies, Inc. (Human Tissue Litigation)* | S.D. Ohio, 1:06-CV-075-MHW |
| *Splater v. Thermal Ease Hydronic Systems, Inc.* | Wash. Super. Ct., 03-2-33553-3-SEA |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

26

| | |
|---|---|
| *Peyroux v. The United States of America (New Orleans Levee Breech)* | E.D. La., 06-2317 |
| *Chambers v. DaimlerChrysler Corp. (Neon Head Gaskets)* | N.C. Super. Ct., 01:CVS-1555 |
| *Ciabattari v. Toyota Motor Sales, U.S.A., Inc. (Sienna Run Flat Tires)* | N.D. Cal., C-05-04289-BZ |
| *In re Bridgestone Securities Litigation* | M.D. Tenn., 3:01-CV-0017 |
| *In re Mutual Funds Investment Litigation (Market Timing)* | D. Md., MDL No. 1586 |
| *Accounting Outsourcing v. Verizon Wireless* | M.D. La., 03-CV-161 |
| *Hensley v. Computer Sciences Corp.* | Ark. Cir. Ct., CV-2005-59-3 |
| *Peek v. Microsoft Corporation* | Ark. Cir. Ct., CV-2006-2612 |
| *Reynolds v. The Hartford Financial Services Group, Inc.* | D. Or., CV-01-1529 BR |
| *Schwab v. Philip Morris USA, Inc.* | E.D.N.Y., CV-04-1945 |
| *Zarebski v. Hartford Insurance Co. of the Midwest* | Ark. Cir. Ct., CV-2006-409-3 |
| *In re Parmalat Securities Litigation* | S.D.N.Y., MDL No. 1653 (LAK) |
| *Beasley v. The Reliable Life Insurance Co.* | Ark. Cir. Ct., CV-2005-58-1 |
| *Sweeten v. American Empire Insurance Company* | Ark. Cir. Ct., 2007-154-3 |
| *Govt. Employees Hospital Assoc. v. Serono Int., S.A.* | D. Mass., 06-CA-10613-PBS |
| *Gunderson v. Focus Healthcare Management, Inc.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Gunderson v. F.A. Richard & Associates, Inc., et al.* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Perez v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-00574-E |
| *Pope v. Manor Care of Carrollwood* | 13th Jud. Cir. Fla., 06-01451-B |
| *West v. Carfax, Inc.* | Ohio C.P., 04-CV-1898 (ADL) |
| *Hunsucker v. American Standard Ins. Co. of Wisconsin* | Ark. Cir. Ct., CV-2007-155-3 |
| *In re Conagra Peanut Butter Products Liability Litigation* | N.D. Ga., MDL No. 1845 (TWT) |
| *The People of the State of CA v. Universal Life Resources (Cal DOI v. CIGNA)* | Cal. Super. Ct., GIC838913 |
| *Burgess v. Farmers Insurance Co., Inc.* | D. Okla., CJ-2001-292 |
| *Grays Harbor v. Carrier Corporation* | W.D. Wash., 05-05437-RBL |
| *Perrine v. E.I. Du Pont De Nemours & Co.* | W. Va. Cir. Ct., 04-C-296-2 |
| *In re Alstom SA Securities Litigation* | S.D.N.Y., 03-CV-6595 VM |
| *Brookshire Bros. v. Chiquita (Antitrust)* | S.D. Fla., 05-CIV-21962 |

| | |
|---|---|
| *Hoorman v. SmithKline Beecham* | Ill. Cir. Ct., 04-L-715 |
| *Santos v. Government of Guam (Earned Income Tax Credit)* | D. Guam, 04-00049 |
| *Johnson v. Progressive* | Ark. Cir. Ct., CV-2003-513 |
| *Bond v. American Family Insurance Co.* | D. Ariz., CV06-01249-PXH-DGC |
| *In re SCOR Holding (Switzerland) AG Litigation (Securities)* | S.D.N.Y., 04-cv-7897 |
| *Shoukry v. Fisher-Price, Inc. (Toy Safety)* | S.D.N.Y., 07-cv-7182 |
| *In re: Guidant Corp. Plantable Defibrillators Prod's Liab. Litigation* | D. Minn., MDL No. 1708 |
| *Clark v. Pfizer, Inc (Neurontin)* | C.P. Pa., 9709-3162 |
| *Angel v. U.S. Tire Recovery (Tire Fire)* | W. Va. Cir. Ct., 06-C-855 |
| *In re TJX Companies Retail Security Breach Litigation* | D. Mass., MDL No. 1838 |
| *Webb v. Liberty Mutual Insurance Co.* | Ark. Cir. Ct., CV-2007-418-3 |
| *Shaffer v. Continental Casualty Co. (Long Term Care Ins.)* | C.D. Cal., SACV06-2235-PSG |
| *Palace v. DaimlerChrysler (Defective Neon Head Gaskets)* | Ill. Cir. Ct., 01-CH-13168 |
| *Lockwood v. Certegy Check Services, Inc. (Stolen Financial Data)* | M.D. Fla., 8:07-cv-1434-T-23TGW |
| *Sherrill v. Progressive Northwestern Ins. Co.* | 18th D. Ct. Mont., DV-03-220 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (AIG)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *Jones v. Dominion Resources Services, Inc.* | S.D. W. Va., 2:06-cv-00671 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Wal-Mart)* | 14th Jud. D. Ct. La., 2004-2417-D |
| *In re Trans Union Corp. Privacy Litigation* | N.D. Ill., MDL No. 1350 |
| *Gudo v. The Administrator of the Tulane Ed. Fund* | La. D. Ct., 2007-C-1959 |
| *Guidry v. American Public Life Insurance Co.* | 14th Jud. D. Ct. La., 2008-3465 |
| *McGee v. Continental Tire North America* | D.N.J., 2:06-CV-06234 (GEB) |
| *Sims v. Rosedale Cemetery Co.* | W. Va. Cir. Ct., 03-C-506 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Amerisafe)* | 14th Jud. D. Ct. La., 2004-002417 |
| *In re Katrina Canal Breaches Consolidated Litigation* | E.D. La., 05-4182 |
| *In re Department of Veterans Affairs (VA) Data Theft Litigation* | D.D.C., MDL No. 1796 |
| *Dolen v. ABN AMRO Bank N.V. (Callable CD's)* | Ill. Cir. Ct., 01-L-454 and 01-L-493 |

| | |
|---|---|
| *Pavlov v. CNA (Long Term Care Insurance)* | N.D. Ohio, 5:07cv2580 |
| *Steele v. Pergo( Flooring Products)* | D. Or., 07-CV-01493-BR |
| *Opelousas Trust Authority v. Summit Consulting* | 27th Jud. D. Ct. La., 07-C-3737-B |
| *Little v. Kia Motors America, Inc. (Braking Systems)* | N.J. Super. Ct., UNN-L-0800-01 |
| *Boone v. City of Philadelphia (Prisoner Strip Search)* | E.D. Pa., 05-CV-1851 |
| *In re Countrywide Customer Data Breach Litigation* | W.D. Ky., MDL No.1998 |
| *Miller v. Basic Research (Weight-loss Supplement)* | D. Utah, 2:07-cv-00871-TS |
| *Gunderson v. F.A. Richard & Assocs., Inc. (Cambridge)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Weiner v. Snapple Beverage Corporation* | S.D.N.Y., 07-CV-08742 |
| *Holk v. Snapple Beverage Corporation* | D.N.J., 3:07-CV-03018-MJC-JJH |
| *Coyle v. Hornell Brewing Co. (Arizona Iced Tea)* | D.N.J., 08-CV-2797-JBS-JS |
| *In re Heartland Data Security Breach Litigation* | S.D. Tex., MDL No. 2046 |
| *Satterfield v. Simon & Schuster, Inc. (Text Messaging)* | N.D. Cal., 06-CV-2893 CW |
| *Schulte v. Fifth Third Bank (Overdraft Fees)* | N.D. Ill., 1:09-CV-06655 |
| *Trombley v. National City Bank (Overdraft Fees)* | D.D.C., 1:10-CV-00232 |
| *Vereen v. Lowe's Home Centers (Defective Drywall)* | Ga. Super. Ct., SU10-CV-2267B |
| *Mathena v. Webster Bank, N.A. (Overdraft Fees)* | D. Conn, 3:10-cv-01448 |
| *Delandro v. County of Allegheny (Prisoner Strip Search)* | W.D. Pa., 2:06-cv-00927 |
| *Gunderson v. F.A. Richard & Assocs., Inc. (First Health)* | 14th Jud. D. Ct. La., 2004-002417 |
| *Williams v. Hammerman & Gainer, Inc. (Hammerman)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (Risk Management)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Williams v. Hammerman & Gainer, Inc. (SIF Consultants)* | 27th Jud. D. Ct. La., 11-C-3187-B |
| *Gwiazdowski v. County of Chester (Prisoner Strip Search)* | E.D. Pa., 2:08cv4463 |
| *Williams v. S.I.F. Consultants (CorVel Corporation)* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Sachar v. Iberiabank Corporation (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *LaCour v. Whitney Bank (Overdraft Fees)* | M.D. Fla., 8:11cv1896 |
| *Lawson v. BancorpSouth (Overdraft Fees)* | W.D. Ark., 1:12cv1016 |
| *McKinley v. Great Western Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |

HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

29

| | |
|---|---|
| *Wolfgeher v. Commerce Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Harris v. Associated Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Case v. Bank of Oklahoma (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Nelson v. Rabobank, N.A. (Overdraft Fees)* | Cal. Super. Ct., RIC 1101391 |
| *Fontaine v. Attorney General of Canada (Stirland Lake and Cristal Lake Residential Schools)* | Ont. Super. Ct., 00-CV-192059 CP |
| *Opelousas General Hospital Authority v. FairPay Solutions* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Marolda v. Symantec Corporation (Software Upgrades)* | N.D. Cal., 3:08-cv-05701 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement* | E.D. La., MDL No. 2179 |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Medical Benefits Settlement* | E.D. La., MDL No. 2179 |
| *Vodanovich v. Boh Brothers Construction (Hurricane Katrina Levee Breaches)* | E.D. La., 05-cv-4191 |
| *Gessele et al. v. Jack in the Box, Inc.* | D. Or., No. 3:10-cv-960 |
| *RBS v. Citizens Financial Group, Inc. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Mosser v. TD Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Mastercard & Visa)* | E.D.N.Y., MDL No. 1720 |
| *Saltzman v. Pella Corporation (Building Products)* | N.D. Ill., 06-cv-4481 |
| *In re Zurn Pex Plumbing, Products Liability Litigation* | D. Minn., MDL No. 1958 |
| *Blahut v. Harris, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Eno v. M & I Marshall & Ilsley Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Casayuran v. PNC Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Anderson v. Compass Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Evans, et al. v. TIN, Inc. (Environmental)* | E.D. La., 2:11-cv-02067 |
| *Opelousas General Hospital Authority v. Qmedtrix Systems, Inc.* | 27th Jud. D. Ct. La., 12-C-1599-C |
| *Williams v. SIF Consultants of Louisiana, Inc. et al.* | 27th Jud. D. Ct. La., 09-C-5244-C |
| *Miner v. Philip Morris Companies, Inc. et al.* | Ark. Cir. Ct., 60CV03-4661 |
| *Fontaine v. Attorney General of Canada (Mistassini Hostels Residential Schools)* | Qué. Super. Ct., 500-06-000293-056 & No. 550-06-000021-056 (Hull) |
| *Glube et al. v. Pella Corporation et al. (Building Products)* | Ont. Super. Ct., CV-11-4322294-00CP |

HILSOFT NOTIFICATIONS

PORTLAND AREA OFFICE
PHILADELPHIA AREA OFFICE

10300 SW ALLEN BLVD
1420 LOCUST ST 30 F

BEAVERTON, OR 97005
PHILADELPHIA, PA 1910

T 503-597-7697
T 215-721-2120

30

| | |
|---|---|
| *Yarger v. ING Bank* | D. Del., 11-154-LPS |
| *Price v. BP Products North America* | N.D. Ill, 12-cv-06799 |
| *National Trucking Financial Reclamation Services, LLC et al. v. Pilot Corporation et al.* | E.D. Ark., 4:13-cv-00250-JMM |
| *Johnson v. Community Bank, N.A. et al. (Overdraft Fees)* | M.D. Pa., 3:12-cv-01405-RDM |
| *Rose v. Bank of America Corporation, et al. (TCPA)* | N.D. Cal., 11-cv-02390-EJD |
| *McGann, et al., v. Schnuck Markets, Inc. (Data Breach)* | Mo. Cir. Ct., 1322-CC00800 |
| *Simmons v. Comerica Bank, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *George Raymond Williams, M.D., Orthopedic Surgery, a Professional Medical, LLC, et al. v. Bestcomp, Inc., et al.* | 27th Jud. D. Ct. La., 09-C-5242-B |
| *Simpson v. Citizens Bank (Overdraft Fees)* | E.D. Mich, 2:12-cv-10267 |
| *In re Plasma-Derivative Protein Therapies Antitrust Litigation* | N.D. Ill, 09-CV-7666 |
| *In re Dow Corning Corporation (Breast Implants)* | E.D. Mich., 00-X-0005 |
| *Mello et al v. Susquehanna Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Wong et al. v. Alacer Corp. (Emergen-C)* | Cal. Super. Ct., CGC-12-519221 |
| *In re American Express Anti-Steering Rules Antitrust Litigation (II) (Italian Colors Restaurant)* | E.D.N.Y., 11-MD-2221, MDL No. 2221 |
| *Costello v. NBT Bank (Overdraft Fees)* | Sup. Ct. Del Cnty., N.Y., 2011-1037 |
| *Gulbankian et al. v. MW Manufacturers, Inc.* | D. Mass., No. 10-CV-10392 |
| *Hawthorne v. Umpqua Bank (Overdraft Fees)* | N.D. Cal., 11-cv-06700-JST |
| *Smith v. City of New Orleans* | Civil D. Ct., Parish of Orleans, La., 2005-05453 |
| *Adkins et al. v. Nestlé Purina PetCare Company et al.* | N.D. Ill., 1:12-cv-02871 |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *In re MI Windows and Doors Products Liability Litigation (Building Products)* | D. S.C., MDL No. 2333 |
| *Childs et al. v. Synovus Bank, et al. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Steen v. Capital One, N.A. (Overdraft Fees)* | S.D. Fla., MDL No. 2036 |
| *Kota of Sarasota, Inc. v. Waste Management Inc. of Florida* | 12th Jud. Cir. Ct., Sarasota Cnty, Fla., 2011-CA-008020NC |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010—Economic and Property Damages Settlement (Claim Deadline Notice)* | E.D. La., MDL No. 2179 |

HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

31

| *Dorothy Williams d/b/a Dot's Restaurant v. Waste Away Group, Inc.* | Cir. Ct., Lawrence Cnty, Ala., 42-cv-2012-900001.00 |
| *In re: Energy Future Holdings Corp., et al. (Asbestos Claims Bar Notice)* | Bankr. D. Del., 14-10979(CSS) |
| *Gattinella v. Michael Kors (USA), Inc., et al.* | S.D.N.Y., 14-civ-5731 (WHP) |
| *Kerry T. Thibodeaux, M.D. (A Professional Medical Corporation) v. American Lifecare, Inc.* | 27th Jud. D. Ct. La., 13-C-3212 |
| *Ono v. Head Racquet Sports USA* | C.D.C.A., 2:13-cv-04222-FMO(AGRx) |
| *Opelousas General Hospital Authority v. PPO Plus, L.L.C., et al.* | 27th Jud. D. Ct. La., 13-C-5380 |
| *In re: Shop-Vac Marketing and Sales Practices Litigation* | M.D. Pa., MDL No. 2380 |
| *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litigation* | D. N.J., MDL No. 2540 |
| *In Re: Citrus Canker Litigation* | 11th Jud. Cir., Flo., No. 03-8255 CA 13 |
| *Whitton v. Deffenbaugh Industries, Inc., et al.* <br> *Gary, LLC v. Deffenbaugh Industries, Inc., et al.* | D. Kan., 2:12-cv-02247 <br> D. Kan., 2:13-cv-2634 |
| *Swift v. BancorpSouth Bank (Overdraft Fees)* | N.D. Fla., No. 1:10-cv-00090 |
| *Forgione v. Webster Bank N.A. (Overdraft Fees)* | Sup. Ct.Conn., X10-UWY-CV-12-6015956-S |
| *Small v. BOKF, N.A.* | D. Col., 13-cv-01125 |
| *Anamaria Chimeno-Buzzi & Lakedrick Reed v. Hollister Co. & Abercrombie & Fitch Co.* | S.D. Fla., 14-cv-23120-MGC |
| *In re: HSBC Bank USA, N.A., Checking Account Overdraft Litigation* | Sup. Ct. N.Y., No. 650562/11 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation (Bosch)* | N.D. Cal., MDL No. 2672 |
| *Hawkins v. First Tennessee Bank, N.A., et al. (Overdraft Fees)* | 13th Jud. Cir. Tenn., No. CT-004085-11 |
| *Greater Chautauqua Federal Credit Union v. Kmart Corp., et al. (Data Breach)* | N.D. Ill., No. 1:15-cv-02228 |
| *Bias v. Wells Fargo & Company, et al. (Broker's Price Opinions)* | N.D. Cal., No 4:12-cv-00664-YGR |
| *Klug v. Watts Regulator Company (Product Liability)* | D. Neb., No. 8:15-cv-00061-JFB-FG3 |
| *Ratzlaff v. BOKF, NA d/b/a Bank of Oklahoma, et al. (Overdraft Fees)* | Dist. Ct. Okla., No. CJ-2015-00859 |
| *Morton v. Greenbank (Overdraft Fees)* | 20th Jud. Dist. Tenn., No. 11-135-IV |
| *Jacobs, et al. v. Huntington Bancshares Inc., et al. (FirstMerit Overdraft Fees)* | Ohio C.P., No. 11CV000090 |



| HILSOFT NOTIFICATIONS | PORTLAND AREA OFFICE <br> PHILADELPHIA AREA OFFICE | 10300 SW ALLEN BLVD <br> 1420 LOCUST ST 30 F | BEAVERTON, OR 97005 <br> PHILADELPHIA, PA 1910 | T 503-597-7697 <br> T 215-721-2120 |

32

| *Farnham v. Caribou Coffee Company, Inc. (TCPA)* | W.D. Wis., No. 16-cv-00295-WMC |
| *Gottlieb v. Citgo Petroleum Corporation (TCPA)* | S.D. Fla., No. 9:16-cv-81911 |
| *McKnight v. Uber Technologies, Inc.* | N.D. Cal., No 3:14-cv-05615-JST |
| *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United States Tobacco Cooperative, Inc.)* | N.C. Gen. Ct of Justice, Sup. Ct. Div., No. 05 CVS 188, No. 05 CVS 1938 |
| *T.A.N. v. PNI Digital Media, Inc.* | S.D. GA., No. 2:16-cv-132-LGW-RSB. |
| *In re: Syngenta Litigation* | 4th Jud. Dist. Minn., No. 27-CV-15-3785 |
| *The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy)* | D. Puerto Rico, No. 17-04780(LTS) |
| *Callaway v. Mercedes-Benz USA, LLC (Seat Heaters)* | C.D. Cal., No 14-cv-02011 JVS |
| *In re: Takata Airbag Products Liability Litigation (OEMs – BMW, Mazda, Subaru, Toyota, Honda, and Nissan)* | S.D. Fla, MDL No. 2599 |

Hilsoft-cv-141



HILSOFT NOTIFICATIONS    PORTLAND AREA OFFICE    10300 SW ALLEN BLVD    BEAVERTON, OR 97005    T 503-597-7697
PHILADELPHIA AREA OFFICE    1420 LOCUST ST 30 F    PHILADELPHIA, PA 1910    T 215-721-2120

33

# Attachment 2

# If you are a U.S.-based retail auto dealership that bought a Reynolds or CDK Dealer Management System (DMS) from January 1, 2015 through October 23, 2018, you could benefit from a class action settlement.

A settlement with The Reynolds and Reynolds Company has been reached in an antitrust class action lawsuit (the Dealership Class Action in *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.)) over the price of Dealer Management Systems ("DMS") purchased from Reynolds and/or CDK Global, LLC during the period January 1, 2015 through October 23, 2018, including related vendor integration services. The lawsuit alleges CDK and Reynolds unlawfully colluded to force auto dealerships to pay more for DMS than they should have. Reynolds denies any wrongdoing and the Court has not ruled that Reynolds did anything wrong or violated any law. The Settlement is with Reynolds only; the litigation continues against CDK.

**Who Is Included in This Settlement?**

The "Dealership Class" means all persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018.

**What Can You Get from the Settlement?**

Reynolds will pay $29,500,000 in cash into a Settlement Fund which, after any Court-approved fees and expenses, will be distributed to Dealership Class Members who submit valid claim forms at a later date.

**How Can You Get a Settlement Payment?**

There is no claims process at this time. Claim forms will be sent to Dealership Class Members at a later date. You should keep all documentation you have about your DMS purchases, including invoices paid to vendors, from January 1, 2015 through October 23, 2018 for use in a claim form later. Once this lawsuit is concluded against all Defendants, the Settlement Fund will be distributed based on the claim forms submitted by Dealership Class Members, subject to an allocation plan approved by the Court, upon further notice to the Dealership Class. You do not need to sign up with a claims recovery service to participate in the Settlement. No-cost claims filing assistance will be available from Dealership Class Counsel and the Settlement Administrator once claim forms become available. The settlement website www.dealershipclassDMSsettlement.com will display updated claims information. You may register your email address at www.dealershipclassDMSsettlement.com to receive email alerts of future notices, including the claim form when the claims process begins. Please keep your address current with the Settlement Administrator to help ensure delivery of future notices.

(over)

**What Are Your Rights and Options?**

The Court will hold a Settlement Hearing on **January 22, 2019** at 10:00 a.m., and will consider whether to approve the Settlement and the request by the court-appointed lawyers for the Dealership Class (called "Dealership Class Counsel") for up to $3 million from the Settlement Fund in litigation expenses (including expert fees, deposition costs, and other expenses). Dealership Class Counsel are not seeking any attorneys' fees or service awards for the plaintiffs at this time. The notification about the claims process will include information about any applications for litigation expenses above $3 million, for attorneys' fees, or for service awards for the plaintiffs. Any fee request will not exceed one-third of the amounts ultimately recovered on behalf of the Dealership Class.

If you are a Dealership Class Member and you don't want to be eligible to receive a settlement payment, or don't want to be legally bound by this Settlement, you must exclude yourself by **January 2, 2019**, or you won't be able to sue, or continue to sue, Reynolds about the legal claims in this case. If you exclude yourself, you will not be eligible to receive a payment under this Settlement. If you remain a Dealership Class Member, you may object to the Settlement and/or the request for litigation expenses by **January 2, 2019**. The long-form notice, available at www.dealershipclassDMSsettlement.com, explains how to exclude yourself or object. You may appear at the Settlement Hearing, but you don't have to. Dealership Class Counsel have been appointed to represent the Dealership Class. These attorneys are listed in the long-form notice. You may hire your own attorney to appear for you, but you will have to pay that attorney.

**Where Can You Get More Information?**

For more information, visit www.dealershipclassDMSsettlement.com, call 1-888-842-3161, or write to *Dealership Class Settlement—DMS Antitrust Litigation*, c/o Epiq, Settlement Administrator, P.O. Box 6727, Portland, OR 97228-6727. You can also contact Dealership Class Counsel: Peggy J. Wedgworth, Milberg Tadler Phillips Grossman LLP, One Pennsylvania Plaza, 19th Floor, New York, NY 10119, Tel: (212) 594-5300, pwedgworth@milberg.com; or Leonard A. Bellavia, Bellavia Blatt, PC, 200 Old Country Road, Suite 400, Mineola, NY 11501, Tel: (516) 873-3000, lbellavia@dealerlaw.com.

**For More Information: 1-888-842-3161 or www.dealershipclassDMSsettlement.com**

# Attachment 3

United States District Court – Northern District of Illinois

# If you are a U.S.-based retail auto dealership that bought a Reynolds or CDK Dealer Management Systems (DMS) from January 1, 2015 through October 23, 2018, you could benefit from a class action settlement.

- The court in charge of this case approved this notice, which summarizes your legal rights and options. It is not a solicitation from a lawyer, and you are not being sued. Please read this notice carefully.

- There is a proposed class action Settlement with The Reynolds and Reynolds Company ("Reynolds") involving an alleged conspiracy by CDK Global, LLC ("CDK") and Reynolds to charge unlawful prices in the markets for Dealer Management System ("DMS") software services and Data Integration Services. Reynolds denies any wrongdoing and the Court has not ruled that Reynolds did anything wrong or violated any law.

- The Settlement with Reynolds is detailed in the Settlement Agreement Between the Dealership Class and Reynolds (the "Agreement"), dated October 23, 2018. All terms used in this notice have the same meanings as set forth in the Agreement.

- The Dealership Class Action will continue against CDK.

- There is no claims process at this time. Claim forms will be distributed and processed once this lawsuit is concluded against all the Defendants, subject to an allocation plan approved by the Court, upon further notice to the Dealership Class.

- Dealership Class Counsel and MDL Liaison Counsel are seeking up to $3 million from the Settlement Fund for litigation expenses (including expert fees, deposition costs and other expenses). They are not seeking attorneys' fees at this time, but will seek a fee at a later date. Any applications for reimbursement of litigation expenses above $3 million, for attorneys' fees, or for service awards to the Dealership Class Plaintiffs will be made upon further notice to the Dealership Class. Any fee request will not exceed one-third of the amounts ultimately recovered on behalf of the Dealership Class.

- If you are in the business of the retail sale of automobiles in the United States and purchased DMS from CDK and/or Reynolds (or any predecessor, successor, subsidiary, joint venture or affiliate) during the period from January 1, 2015 through October 23, 2018, you may be entitled to money back as part of the Settlement.

- If you have any questions about the lawsuit or this Notice, you may contact: Peggy J. Wedgworth, Milberg Tadler Phillips Grossman LLP, One Pennsylvania Plaza, 19th Floor, New York, NY 10119, Tel: (212) 594-5300, pwedgworth@milberg.com; or Leonard A. Bellavia, Bellavia Blatt, PC**,** 200 Old Country Road, Suite 400, Mineola, NY 11501, Tel: (516) 873-3000, lbellavia@dealerlaw.com.

| A SUMMARY OF YOUR RIGHTS AND CHOICES: | | |
|---|---|---|
| YOU MAY: | | Deadline: |
| DO NOTHING | You will give up your rights to be part of any other lawsuit against Reynolds based on the legal claims in this lawsuit. You will still be bound by the Court's orders. Claim forms will be made available later. **See Question 9.** | Not Applicable |
| EXCLUDE YOURSELF | **Remove yourself from the Dealership Class.** You may write and ask to get out of the Dealership Class and keep your right to sue Reynolds on your own, at your own expense, for the claims in the lawsuit. **See Question 11.** | **Postmarked on or before January 2, 2019** |
| OBJECT TO THE SETTLEMENT | **Object or comment to the Settlement.** If you do not exclude yourself, you may object or comment on the Settlement, either on your own or through a lawyer you hire. If you file a timely objection, you can attend the Settlement Hearing and ask to speak in Court about your objection to the Settlement. **See Question 16.** | **Filed with the Court and postmarked on or before January 2, 2019** |
| GO TO THE SETTLEMENT HEARING | **Go to the Settlement Hearing.** The Settlement Hearing will be held so that the Court can consider the Settlement and hear any objections. **See Questions 18-20.** | **January 22, 2019 at 10:00 a.m.** |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- If you have any questions, please call 1-888-842-3161 or visit the website at www.dealershipclassDMSsettlement.com.

## WHAT THIS NOTICE CONTAINS

### Table of Contents

**BASIC INFORMATION**..................................................................................................**4**

    1.    What is this lawsuit about? ...................................................... 4
    2.    Why is this a class action? ...................................................... 4
    3.    Why is there a settlement? ...................................................... 4
    4.    Who is a dealership class member in the settlement with Reynolds?............... 5
    5.    How do I know if I am part of the Settlement with Reynolds? ........................ 5

**SETTLEMENT BENEFITS — WHAT YOU GET** ............................................**5**

    6.    What does the Settlement with Reynolds provide? ........................... 5
    7.    How do I submit a claim to get a payment?.......................................... 5
    8.    I have been contacted by a claims recovery service encouraging me to sign up to participate in the Settlement. Do I need to sign up with the claims recovery service to get a payment or maximize my recovery?............................................. 6

**REMAINING IN THE CLASS** ..........................................................................**6**

    9.    What happens if I do nothing at all? ........................................... 6
    10.    What am I giving up to get a payment or stay in the Dealership Class?............... 6

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .................................**7**

    11.    How do I exclude myself from the Dealership Class?.......................... 7
    12.    If I do not exclude myself, can I sue Reynolds and the other Reynolds Releasees for the same thing later? ........................................ 8
    13.    If I exclude myself, can I get money from the Settlement? ................. 8

**THE LAWYERS REPRESENTING THE CLASS** ...........................................**8**

    14.    Do I have a lawyer representing me in this case?.......................... 8
    15.    How will the lawyers be paid? ................................................... 9

**OBJECTING TO THE SETTLEMENT** .............................................................**9**

    16.    How do I tell the Court that I do not like the Settlement? ................... 9
    17.    What is the difference between objecting and excluding?................... 10

**THE COURT'S SETTLEMENT HEARING** ..................................................**10**

    18.    When and where will the Court decide whether to approve the Reynolds Settlement? ...................................................... 10
    19.    Do I have to come to the hearing? .......................................... 11
    20.    May I speak at the hearing? ................................................. 11

**IF YOU DO NOTHING** ....................................................................................**11**

    21.    What happens if I do nothing at all? ........................................ 11

**GETTING MORE INFORMATION**.................................................................**12**

    22.    Where can I get more information? ....................................... 12

# BASIC INFORMATION

## 1. What is this lawsuit about?

The Court in charge of the case is the United States District Court for the Northern District of Illinois, and the case is known as the Dealership Class Action, *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.). This case was assigned to United States District Judge Robert M. Dow, Jr.. The group of auto dealerships in the U.S. who sued are called the Dealership Class Plaintiffs, and the companies they sued, Reynolds and CDK, are called the Defendants.

Defendants were sued by Dealership Class Plaintiffs who claim that Reynolds and CDK conspired, in violation of federal antitrust laws and certain state antitrust and consumer protection laws, to restrain and/or eliminate competition by charging Dealership Class Plaintiffs more than they should have in the markets for Dealer Management System ("DMS") software services and for Data Integration Services ("DIS") programs and services for extracting, formatting, integrating, and/or organizing data from DMSs.

The Defendants deny the claims in the lawsuit and have asserted legal defenses. Reynolds has agreed to settle this case to avoid the cost and uncertainty associated with continuing the lawsuit. The lawsuit will continue against CDK.

## 2. Why is this a class action?

In a class action, one or more people called class representatives sue on behalf of people who have similar claims. The people together are a "class" or "class members." The Court must still determine if it will allow the lawsuit to proceed as a class action. If it does, all decisions made will affect everyone in the class.

Here, the Dealership Class Plaintiffs and Reynolds have reached a proposed Settlement. The Court has preliminarily approved the Settlement with Reynolds and sending notice to the Dealership Class. There will be a Settlement Hearing for the Court to decide whether to give final approval to the Settlement with Reynolds (see Question 18).

## 3. Why is there a settlement?

A settlement is an agreement between a plaintiff and a defendant following negotiations. A settlement concludes the lawsuit as to that defendant but this does not mean that the Court has ruled in favor of the plaintiff or the defendant. A settlement allows both parties to avoid the cost and risk of a trial and allows them to establish a just, fair and final resolution that is best for all involved.

The lawyers representing Reynolds and the lawyers representing the Dealership Class ("Dealership Class Counsel") have engaged in extensive negotiations, including with the assistance of a mediator, regarding the issues presented in the lawsuit and the possible terms of a settlement. Reynolds has agreed to settle the claims in this lawsuit and Dealership Class Counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of the Dealership Class.

## 4. Who is a dealership class member in the settlement with Reynolds?

The Court directed, for the purposes of the proposed Settlement only, that everyone who fits this description is a Dealership Class Member: *all persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018.* Excluded from the Dealership Class are Defendants, including any entity or division in which any Defendant has a controlling interest, as well as Defendants' joint ventures, subsidiaries, affiliates, assigns, and successors.

## 5. How do I know if I am part of the Settlement with Reynolds?

If you meet the Dealership Class definition above, unless you exclude yourself, you are a member of the Dealership Class and will be included in the Settlement with Reynolds.

# SETTLEMENT BENEFITS — WHAT YOU GET

## 6. What does the Settlement with Reynolds provide?

In exchange for the release of claims in the Dealership Class Action (see Question 10), Reynolds will pay $29,500,000 for the benefit of the Dealership Class. This $29.5 million Settlement Fund, net of any fees and expenses allowed by the Court, will be made available to Dealership Class Members at the end of the lawsuit against all Defendants. The cash will be distributed to Dealership Class Members who submit valid claim forms.

Complete details about the Settlement can be accessed at www.dealershipclassDMSsettlement.com.

## 7. How do I submit a claim to get a payment?

There is no claims process at this time. Claim forms will be distributed and processed once this lawsuit is concluded against all the Defendants. You may register at www.dealershipclassDMSsettlement.com to receive notification of when the claims process will begin. Or, if a notice was sent to you by mail, a claim form will be sent to you at that address. If this Notice was forwarded to you by the postal service, or if it was otherwise sent to you at an address that is not current, you should immediately contact the Settlement Administrator, and provide them with your correct address. If the Settlement Administrator does not have your correct address, you may not receive notice of important developments in this lawsuit. You should keep all documentation you have about your DMS purchases, including invoices paid to vendors, during the period from January 1, 2015 through October 23, 2018 for your use in a claim form later. If you exclude yourself from the Dealership Class, you will not be eligible to submit a claim form to participate in the Settlement Fund.

> **8. I have been contacted by a claims recovery service encouraging me to sign up to participate in the Settlement. Do I need to sign up with the claims recovery service to get a payment or maximize my recovery?**

No, you will recover the maximum amount you are entitled to by directly filing your own claim with the Settlement Administrator once claim forms become available. No-cost claims filing assistance will be available from Dealership Class Counsel and the Settlement Administrator once claim forms become available.

# REMAINING IN THE CLASS

> **9. What happens if I do nothing at all?**

If you do nothing at this time, you will remain a member of the Dealership Class and you will be legally bound by the Settlement if it is approved, even if you do not submit a claim form later to participate in the Settlement Fund.

If the Settlement is approved, the claims against Reynolds will be completely released and you will never be able to sue Reynolds concerning the claims in this lawsuit. In order to receive any part of the Settlement Fund, you will eventually have to submit a claim form when those are made available.

> **10. What am I giving up to get a payment or stay in the Dealership Class?**

In short, if you remain in the Dealership Class, you cannot ever sue Reynolds for the claims made in this lawsuit. More specifically, unless you exclude yourself, you are staying in the Dealership Class, and that means that, upon the "Effective Date," you will release all "Released Dealership Class Claims" (as defined below) against the "Reynolds Releasees" (as defined below).

"Released Dealership Class Claims" means any and all claims, demands, judgments, actions, suits, and causes of action, whether class, individual or otherwise (whether or not any Dealership Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, indirectly, representatively, derivatively, or in any other capacity) that Dealership Class Releasors, or each of them, whether directly, indirectly, representatively, derivatively, or in any other capacity, ever had, now has, or hereafter can, shall, or may have against Reynolds Releasees, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, relating in any way to any conduct prior to the Effective Date and arising out of or related in any way, in whole or in part, to any facts, circumstances, acts, or omissions arising out of or related to the direct or indirect provision, licensing, pricing, purchasing, selling, marketing, development, availability, accessibility, or functionality of DMS or DIS, including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any complaints filed in the Dealership Class Action, including without limitation those arising under antitrust, unfair competition, consumer protection, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, civil conspiracy, common law or statutory fraud laws, whether under federal, state, local, or foreign law. For the avoidance of doubt, the Released Dealership Class Claims (a) include without limitation any claim or allegation relating in any way to a continuation after the Effective Date of any conduct described in the preceding sentence; but (b) do not release, alter, or affect any existing

or future contractual obligations between Reynolds and a Dealership Class Member for Reynolds to provide products or services to the Dealership Class Member and for the Dealership Class Member to pay for those products or services.

"Reynolds Releasees" means Reynolds and all of its past and present (as of the Execution Date), direct and indirect, parents, subsidiaries, and affiliates and all of their respective past and present (as of the Execution Date), direct and indirect, parents, subsidiaries, affiliates, unincorporated entities, divisions, and groups; the predecessors, predecessors in interest, successors, successors in interest and assigns of any of the above; and each and all of the present (as of the Execution Date) and former principals, partners, officers, directors, supervisors, employees, agents, representatives, stockholders, servants, members, entities, insurers, attorneys, heirs, executors, administrators, and assigns of any of the foregoing, as well as to anyone claiming by, for, or through any of the foregoing.

The "Effective Date" will occur when an Order entered by the Court approving the Settlement becomes final and not subject to appeal.

The Dealership Class Action is continuing against CDK. The Agreement does not settle or compromise any claim by the Dealership Class Plaintiffs or any other Dealership Class Member asserted in the Dealership Class Action against Non-Settling Defendant CDK or any subsequent defendant or unnamed co-conspirator other than the Reynolds Releasees.

If you remain a member of the Dealership Class, all of the Court's orders will apply to you and legally bind you.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to be eligible for a payment from this settlement, but you want to keep any right you may have to sue or continue to sue Reynolds, on your own, about the Released Dealership Class Claims, then you must take steps to get out. This is called excluding yourself — or is sometimes referred to as "opting out" of the class. Reynolds may withdraw from and terminate the Settlement if a certain number of Dealership Class Members exclude themselves.

If you exclude yourself, you will not be eligible to receive a payment from the Settlement, and you cannot object to the Settlement.

## 11. How do I exclude myself from the Dealership Class?

If you wish to be excluded from the Dealership Class, you must send a letter that includes all of the following:

1) Your name, address, and telephone number;
2) All trade names or business names and addresses used by you or your business;
3) The number of and physical address in the State or U.S. territory for the rooftops requesting exclusion;
4) That you or your business are a member of the Dealership Class and want to be excluded from the Settlement with Reynolds in the Dealership Class Action, *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.);
5) The date(s) during the Dealership Class Period you entered into a contract for DMS and who you entered into the contract with; and

6) Your signature or the signature of a person (identified by title) with the authority to bind you or your business.

All exclusion letters must be mailed first class, **postmarked on or before January 2, 2019,** to:

*Dealership Class Settlement—DMS Antitrust Litigation*
Exclusions
c/o Epiq, Settlement Administrator
P.O. Box 6727
Portland, OR 97228-6727

You cannot exclude yourself by telephone call or by e-mail. If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit.

## 12. If I do not exclude myself, can I sue Reynolds and the other Reynolds Releasees for the same thing later?

No. Unless you exclude yourself, you give up any rights to sue Reynolds and the other Reynolds Releasees for the Released Dealership Class Claims. If you have a pending lawsuit speak to your lawyer in that case immediately. You must exclude yourself from *this* class to continue your own lawsuit. Remember, the exclusion deadline is **January 2, 2019**.

## 13. If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself, you will not be eligible to receive a payment from the Settlement. But, you may exercise any right you may have to sue, continue to sue, or be part of a different lawsuit against Reynolds and the other Reynolds Releasees.

# THE LAWYERS REPRESENTING THE CLASS

## 14. Do I have a lawyer representing me in this case?

The Court ordered that the law firms of Milberg Tadler Phillips Grossman LLP, Bellavia Blatt, P.C., Gustafson Gluek PLLC, and Robbins Geller Rudman & Dowd LLP will represent the Dealership Class. These lawyers are called Dealership Class Counsel. The Court also ordered that The Clifford Law Offices will act as liaison counsel for the entire MDL.

You will not be charged personally for these lawyers, but they will ask the Court to approve a fee award at a later date. Dealership Class Counsel and MDL Liaison Counsel are not requesting fees from the Reynolds Settlement at this time. The future notification about the claims process in this case will include information about any request for fees.

The Court will determine the amount of any fees and expenses paid from the Settlement Fund. If you want to be represented by your own lawyer, you may hire one at your own expense. If you want your own lawyer to speak for you or appear in Court, you must file a Notice of Intention to Appear (see Question 20).

## 15. How will the lawyers be paid?

Dealership Class Counsel and MDL Liaison Counsel will ask the Court to approve payment from the Settlement Fund of litigation expenses (including expert fees, deposition costs and other expenses) for reimbursement and for the ongoing litigation against CDK. The expense request will not exceed $3 million without further notice to the Dealership Class.

Dealership Class Counsel and MDL Liaison Counsel are not seeking any attorneys' fees or service awards for the plaintiffs at this time. The notification about the claims process will include information about any applications for litigation expenses above $3 million, for attorneys' fees, or for service awards for the Dealership Class Plaintiffs. Any fee request will not exceed one-third of the amounts ultimately recovered on behalf of the Dealership Class.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the settlement or some part of it.

## 16. How do I tell the Court that I do not like the Settlement?

If you are a Dealership Class Member you can object to the Settlement or the application by Dealership Class Counsel for expenses. You may write to the Court setting out your objection. You may give reasons why you think the Court should not approve any or all of the Settlement terms or arrangements. The Court will consider your views if you file a proper objection within the deadline identified, and according to the following procedures.

To object, you must send a signed letter stating that you object to the proposed settlement with Reynolds in the Dealership Class Action, *In re Dealer Management Systems Antitrust Litigation*. The objection must include the following: (i) the objector's complete name, address, and telephone number, along with any trade names or business names used by the objector; (ii) a statement signed under penalty of perjury that the objector is a member of the Dealership Class and objects to the Settlement with Reynolds in the Dealership Class Action, *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.); (iii) all grounds for the objection and any supporting papers the objector wishes the Court to consider; (iv) the identity of all counsel who represent the objector; (v) a statement confirming whether the objector or any counsel representing the objector intends to personally appear and/or testify at the Settlement Hearing; and (vi) the number of times in which the objector or the objector's counsel (if any) has objected to a class settlement within the three years preceding the date that the objector files the objection and the caption of each case in which such objection was made.

Your objection must be filed with the Court and served on all the following counsel on or before **January 2, 2019**:

| COURT | DEALERSHIP CLASS LEAD COUNSEL | SETTLING DEFENDANT REYNOLDS'S COUNSEL |
|---|---|---|
| Clerk of the Court United States District Court for the Northern District of Illinois, Eastern Division Everett McKinley Dirksen United States Courthouse 219 South Dearborn Street Chicago, IL 60604 | Peggy J. Wedgworth Milberg Tadler Phillips Grossman LLP One Pennsylvania Plaza, 19th Floor New York, NY 10119 | Aundrea K. Gulley Gibbs & Bruns LLP 1100 Louisiana Street, Suite 5300 Houston, TX 77002 |

You do not need to go to the Settlement Hearing to have your written objection considered by the Court. At the Settlement Hearing, any Dealership Class Member who has not previously submitted a request for exclusion from the Dealership Class and who has complied with the procedures set out in this Question 16 and Question 20 below for filing with the Court and providing to the counsel for Dealership Class Plaintiffs and Reynolds a statement of an intention to appear at the Settlement Hearing may also appear and be heard, to the extent allowed by the Court, to state any objection to the Settlement or the application by Dealership Class Counsel for expenses. Any objector may appear in person or arrange, at that objector's expense, for a lawyer to represent the objector at the Settlement Hearing. If you or your attorney want to appear at the Settlement Hearing, your objection must include your Notice of Intention to Appear (see Question 20).

## 17. What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Dealership Class. Excluding yourself is telling the Court that you do not want to be part of the Dealership Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, but you do not have to.

## 18. When and where will the Court decide whether to approve the Reynolds Settlement?

The Court will hold a Settlement Hearing at **10:00 a.m.** on **Tuesday, January 22, 2019**, at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. At this hearing the Court will consider whether the settlement is fair, reasonable and adequate. The Court also will consider the application of Dealership Class Counsel for an award of litigation expenses (including expert fees, deposition costs and other expenses) for reimbursement and for the ongoing litigation against CDK.

The Court will take into consideration any written objections filed in accordance with the instructions in Question 16. The Court also may listen to people who have properly indicated, within the deadline identified above, an intention to speak at the hearing; but decisions regarding the conduct of the hearing will be made by the Court. See Question 20 for more information about

speaking at the hearing. The Court may also decide how much to pay to Dealership Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

You should be aware that the Court may change the date and time of the Settlement Hearing. Thus, if you want to come to the hearing, you should check with Dealership Class Counsel before coming to be sure that the date and/or time has not changed.

## 19. Do I have to come to the hearing?

No. Dealership Class Counsel will answer questions the Court may have. Attendance is not required, but you are welcome to come at your own expense. If you filed a written objection or other comment on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Dealership Class Members do not need to appear at the hearing or take any other action to indicate their approval.

## 20. May I speak at the hearing?

You may ask the Court for permission to speak at the Settlement Hearing. If you want to do so, you must include with your objection (see Question 16 above) a statement that this is your "Notice of Intention to Appear in the Dealership Class Action, *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.)." It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you, and identify any witnesses you may call to testify and exhibits you intend to introduce into evidence at the Settlement Hearing. Unless otherwise ordered by the Court, you cannot speak at the hearing if you excluded yourself from the Dealership Class or if you have not provided written notice of your intention to speak at the Settlement Hearing by the deadline identified, and in accordance with the procedures described in Questions 16 and 18 above.

# IF YOU DO NOTHING

## 21. What happens if I do nothing at all?

If you do nothing, you will remain a member of the Dealership Class and you will be legally bound by the Settlement if it is approved, even if you do not later submit a claim form to participate in the Settlement Fund.

If the Settlement is approved, the claims against Reynolds will be completely released and you will never be able to sue Reynolds concerning the claims in this lawsuit. In order to receive any part of the Settlement Fund, you will eventually have to submit a claim form when those are made available.

# GETTING MORE INFORMATION

## 22. Where can I get more information?

This notice summarizes the proposed settlement with Reynolds. More details are in the Settlement Agreement Between the Dealership Class and Reynolds (the "Agreement"), dated October 23, 2018, and the other legal documents that have been filed with the Court in this lawsuit. You can look at and copy these legal documents at any time during regular office hours at the Office of the Clerk of the Court, United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois 60604. Certain documents, including the papers in support of final approval of the Settlement and in support of the application for an award of costs and expenses, will also be available on the Settlement Administrator's website at www.dealershipclassDMSsettlement.com.

In addition, if you have any questions about the lawsuit or this Notice, you may:

- Visit the Settlement Administrator's website at www.dealershipclassDMSsettlement.com
- Call the Settlement Administrator toll-free at 1-888-842-3161
- Write to the Settlement Administrator at *Dealership Class Settlement—DMS Antitrust Litigation*, c/o Epiq, Settlement Administrator, P.O. Box 6727, Portland, OR 97228-6727.
- Contact Dealership Class Counsel: Peggy J. Wedgworth, Milberg Tadler Phillips Grossman LLP, One Pennsylvania Plaza, 19th Floor, New York, NY 10119, Tel: (212) 594-5300, pwedgworth@milberg.com; or Leonard A. Bellavia, Bellavia Blatt, PC**,** 200 Old Country Road, Suite 400, Mineola, NY 11501, Tel: (516) 873-3000, lbellavia@dealerlaw.com

An independent Settlement Administrator is handling the Settlement. Do not contact the Court, the Clerk's Office, or the Defendants directly about the Settlement.

Dated: Chicago, Illinois
November 21, 2018

By Order of the Court
CLERK OF THE COURT

# Attachment 4

# If you are a U.S.-based retail auto dealership that bought a Reynolds or CDK Dealer Management System (DMS) from January 1, 2015 through October 23, 2018, you could benefit from a class action settlement.

A settlement with The Reynolds and Reynolds Company has been reached in an antitrust class action lawsuit (the Dealership Class Action in *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.)) over the price of Dealer Management Systems ("DMS") purchased from Reynolds and/or CDK Global, LLC during the period January 1, 2015 through October 23, 2018, including related vendor integration services. The lawsuit alleges CDK and Reynolds unlawfully colluded to force auto dealerships to pay more for DMS than they should have. Reynolds denies any wrongdoing and the Court has not ruled that Reynolds did anything wrong or violated any law. The Settlement is with Reynolds only; the litigation continues against CDK.

## Who Is Included In This Settlement?

The "Dealership Class" means all persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018.

## What Can You Get From The Settlement?

Reynolds will pay $29,500,000 in cash into a Settlement Fund which, after any Court-approved fees and expenses, will be distributed to Dealership Class Members who submit valid claim forms at a later date.

## How Can You Get a Settlement Payment?

There is no claims process at this time. Claim forms will be sent to Dealership Class Members at a later date. You should keep all documentation you have about your DMS purchases, including invoices paid to vendors, from January 1, 2015 through October 23, 2018 for use in a claim form later. Once this lawsuit is concluded against all Defendants, the Settlement Fund will be distributed based on the claim forms submitted by Dealership Class Members, subject to an allocation plan approved by the Court, upon further notice to the Dealership Class. You do not need to sign up with a claims recovery service to participate in the Settlement. No-cost claims filing assistance will be available from Dealership Class Counsel and the Settlement Administrator once claim forms become available. The settlement website www.dealershipclassDMSsettlement.com will display updated claims information. You may register your email address at www.dealershipclassDMSsettlement.com to receive email alerts of future notices, including the claim form when the claims process begins. Please keep your address current with the Settlement Administrator to help ensure delivery of future notices.

## What Are Your Rights and Options?

The Court will hold a Settlement Hearing on **January 22, 2019** at 10:00 a.m. CT to consider whether to approve the Settlement and the request for the court-appointed lawyers for the Dealership Class (called "Dealership Class Counsel") for up to $3 million from the Settlement Fund in litigation expenses (including expert fees, deposition costs and other expenses). Dealership Class Counsel are not seeking any attorneys' fees or service awards for the plaintiffs at this time. The notification about the claims process will include information about any applications for litigation expenses above $3 million, for attorneys' fees, or for service awards for the plaintiffs. Any fee request will not exceed one-third of the amounts ultimately recovered on behalf of the Dealership Class.

If you are a Dealership Class Member and you don't want to be eligible to receive a settlement payment, or don't want to be legally bound by this Settlement, you must exclude yourself by **January 2, 2019**, or you won't be able to sue, or continue to sue, Reynolds about the legal claims in this case. If you exclude yourself, you will not be eligible to receive a payment under this Settlement. If you remain a Dealership Class Member, you may object to the Settlement and/or the request for litigation expenses by **January 2, 2019**. The long-form notice, available at www.dealershipclassDMSsettlement.com, explains how to exclude yourself or object. You may appear at the Settlement Hearing, but you don't have to. Dealership Class Counsel have been appointed to represent the Dealership Class. These attorneys are listed in the long-form notice. You may hire your own attorney to appear for you, but you will have to pay that attorney.

## Where Can You Get More Information?

For more information, visit www.dealershipclassDMSsettlement.com, call 1-888-842-3161, or write to *Dealership Class Settlement—DMS Antitrust Litigation*, c/o Epiq, Settlement Administrator, P.O. Box 6727, Portland, OR 97228-6727. You can also contact Dealership Class Counsel: Peggy J. Wedgworth, Milberg Tadler Phillips Grossman LLP, One Pennsylvania Plaza, 19th Floor, New York, NY 10119, Tel: (212) 594-5300, pwedgworth@milberg.com; or Leonard A. Bellavia, Bellavia Blatt, PC, 200 Old Country Road, Suite 400, Mineola, NY 11501, Tel: (516) 873-3000, lbellavia@dealerlaw.com

**For More Information: 1-888-842-3161 or www.dealershipclassDMSsettlement.com**

Attachment 5

# Automotive News

**NOVEMBER 26, 2018**

Entire contents © 2018 Crain Communications Inc. All rights reserved.

**$159/YEAR; $6/COPY**



**2018 Automotive News ALL STARS**

This year's class includes outspoken voices in trade talks and Ford executives who kept pickup plants humming. **I PAGES 26-33 I**



**MARY BARRA**

INDUSTRY LEADER OF THE YEAR AND CEO, GLOBAL AUTOMAKER

## 'Impatient' CEO reawakens spirit of crisis

**Michael Wayland**
mwayland@crain.com

In December 2014, nearly a year into her tenure as CEO of General Motors, Mary Barra said GM basically does "one thing":

"We build cars, trucks and crossovers."

She has spent the years since then trying to defy that bland characterization, moving GM aggressively into emerging segments such as electrification and autonomous vehicles — costly technologies with unproven business models.

It's a sign of how much the industry has changed, and how much that

see **BARRA**, Page 42



Saikawa, left, has had much to apologize for during his time as CEO. With Ghosn now out of the way, he vows that things will change.
BLOOMBERG PHOTOS

AUTOMOTIVE NEWS ILLUSTRATION

"Some things should be corrected, like the over-concentration of power in an individual that resulted in distortion."

Hiroto Saikawa, Nissan CEO

# CARLOS GONE

## Saikawa gets the green light to take Nissan in a new direction

**Hans Greimel**
hgreimel@crain.com

TOKYO — For nearly two decades, Nissan CEO Hiroto Saikawa had been the faithful protégé of high-flying frontman Carlos Ghosn. But that all came crashing to an end last week.

Saikawa is now using Ghosn's ouster to undo much of his erstwhile mentor's work at Nissan Motor Co. If it seemed the 65-year-old would be a transitional chief, he's suddenly talking like a transformational one, eager to get the carmaker back on track in Japan and the U.S.

To clear the way, Nissan's board re-

### MORE COVERAGE

- The next generation of leaders ascends in Europe **I PAGE 3 I**
- Keith Crain: Temptations just get bigger for auto execs **I PAGE 12 I**
- Can the alliance survive with a tarnished CEO? **I PAGE 40 I**
- How an inspection scandal undermined faith **I PAGE 40 I**

moved Ghosn as chairman and representative director Thursday, Nov. 22. It also appointed a committee led by outside directors to further investigate

Ghosn's alleged abuses, overhaul the company's governance and nominate a new chairman from the current board.

Mitsubishi Motors Corp., where Ghosn also is chairman, is expected to dismiss him from that role as well at an extraordinary board meeting this week.

"In one word, this is a soft coup d'etat," said Tatsuo Yoshida, a senior auto analyst at Sawakami Asset Management who worked at Nissan during the beginning of Ghosn's tenure. "There has been anti-Ghosn sentiment accumulating for a long time."

see **GHOSN**, Page 41



Automotive News WORLD CONGRESS
JANUARY 15–17 • DETROIT

**BARRA....FARLEY.... LENTZ....PENSKE....**

See them all, and more: autonews.com/worldcongress

NEWSPAPER

# ROBOCAR

## Uber takes interest in accessible cars

continued from Page 16

to prevent the formation of fiefdoms, round out individual skill sets and keep everyone pulling together.

A company software review infrastructure forces engineers to check one another's code every time they submit a new piece of the software. Comparing the system to open-source projects, King says the cross-company review policy "keeps everyone in the loop, keeps everyone engaged. Everybody knows what's going on because you're constantly pulled into reviewing people's code. It seems like a trivial thing, but big things are built out of tons of trivial things."

That collaboration ensures a shared sense of purpose as employees develop technology with real-world, potentially life-or-death consequences.

"Safety is a process, and it's an attitude, and it's a willingness to hear reservations, objections, thoughts from anywhere at any time and to treat them with all the attention they deserve," King said.

One of the company's maxims is that building a self-driving system is about turning science problems into engineering problems, and as Kislovsky puts it, "Engineering is fundamentally a human problem." The belief that a combination of brilliant talent and collaborative culture is the only way forward not only creates what Eade calls an "unironic Aurora spirit," but also a sense that the company can more or less ignore the ups and downs of its competitors and even perceptions of self-driving technology more broadly.

"We're sort of on Aurora Island," Kislovsky said. "There's too much noise; there's too much commotion; there's too much distraction; and we think we know what we're doing. ... One of the things we try to do is not only not say anything externally, but try to keep to our own game, play it the way we want to and really stay super focused."

### ☐ Uber lays low

A short walk from Aurora, past the hip shops and restaurants on Smallman Street and under the trestle bridge that runs over 33rd Street, is the original heavyweight of Pittsburgh's self-driving car scene: Uber Advanced Technologies Group. Inside its sprawling riverside building, the black and white decor feels on-brand and boasts more of the traditional signifiers of startup life. A large, buffet-style eating area complete with a fridge full of kombucha looks through giant plateglass windows into a quiet workshop full of idle Volvo XC90s. Nearby, a large, stepped amphitheater for allhands meetings looms over a pair of pingpong tables.

If there are fewer self-driving cars to be seen on Pittsburgh's streets than there were a year ago, that's because Uber's massive autonomous drive development program is grounded pending an external safety review following a fatal crash in Tempe, Ariz., in March.

Uber welcomed a visit from *Automotive News* but didn't make any of its staff available for interviews, saying that its public relations efforts are on hold until the safety review is published. The review appears to have had an effect on the company's direction. Issues that didn't seem to be major Uber priorities before, such as designing vehicles accessible for disabled people and establishing safety standards for autonomous vehicles, seem to be of deep interest to the company now.

There is a different vibe at ATG than at its intracity competitors, despite the fact that many of Aurora's and Argo's employees previously worked on autonomous drive technology at the ride-hailing giant. The staff is bigger, and the office space is more full than at the other two companies. The waiting room is busier, security seems tighter, and there's more of a slick, corporate sheen to everything.

Upstairs from the expansive common area, large workspaces house teams of coders developing software and electrical engineers tinkering on desks strewn with sensors, circuit boards and other electronic components. There's little evidence of the intense discussions that Aurora's tightknit and much smaller team describes, but at the moment, ATG's vehicles aren't on the road gathering data and identifying edge cases.

### ☐ Argonauts

Down Railroad Street from ATG is a brand-new building, where Argo AI occupies the top two floors. Like Aurora, Argo is a relative newcomer. Emerging from an elevator show fresh paint gives off "new startup smell," visitors are greeted by decor that occupies a middle ground between Aurora's spare minimalism and Uber ATG's branded, startup-playground feel. There's a grownup maturity, yet Nerf guns litter the engineering workspaces and standing desks.

Argo is open in ways the other companies aren't.

"We're all about transparency," CEO Bryan Salesky said.

For instance, *Automotive News* received one of the first on-the-record rides in one of Argo's test cars. It also was introduced to each major team in the technology stack, with each demonstrating its work on mapping, perception, prediction and route planning.

Argo has deep ties to Pittsburgh and its robotics community. Salesky and his two top lieutenants, President Peter Rander and Vice President of Robotics Brett Browning, have all put in considerable amounts of time at Carnegie Mellon's National Robotics Engineering Center: Salesky for five years, Browning for nearly 13 years and Rander for nearly 15. Their grounding in robotics gives them a perspective on self-driving systems that balances hardware and software, creating a different attitude compared with a software whiz who may have moved into self-driving cars because it was the next big thing.

Instead of hyping the potential of the technology, Argo's leadership appears to be looking for concrete commercial opportunities.



Salesky: "About transparency"

"When I first joined Carnegie Mellon, I have distinct memories of this faculty meeting where everyone was like, what's the killer app, like what's the thing where robotics will actually get beyond academia?" Browning said.

"No one had an answer at the time. ... There'd been a whole bunch of these different applications that were like wonderful creations of technology, but they hadn't quite hit that intersection of the technology being good enough and an application that was actually financially viable."

Self-driving cars are the commercial opportunity now vaulting robotics aficionados out of academia and applied robotics and into the hightech spotlight. Ford Motor Co.'s billion-dollar investment got Argo off the ground. Now, in addition to trying to develop a financially viable self-driving car in time for the automaker's planned 2021 deployment in Miami, the Argo team is talking to "a long list of suitors."

"What's neat about this space right now is we're anticipating a new industry," said Rander. "There's all this money coming into it, but it's a new industry. It's not a traditional core auto industry that people have learned and refined and honed and understand the dynamics. It's like, 'Well, gee, I don't know X, so that's interesting suddenly. Oh, this does this.' As you're figuring it out, suddenly you're like, 'Well, maybe we aren't competing.' "

Going through Argo's technology stack gives even a lay observer a sense of the dizzying technological challenge that self-driving cars represent.

Tasks from mapping to perception to prediction to planning are fiendishly difficult and fraught with a million ways to make a mistake, but understanding all of them individually — let alone how to bring them all together into a single functioning system — takes a staggering level of experience and focus.

"There's no way any one person could possibly get into every single detail," Browning said. "But you've actually got to get into a lot of details because that weakest link is the problem.

"It could be this really subtle little decision that seems so innocuous that some engineer in the team made one day that actually is the problem that we now have to fix. And that means part of the job is not just building the technology, but really building the team that has the right kind of mindset to check, double-check, scrutinize every decision we're making." **AN**

LEGAL NOTICE

## If you are a U.S.-based retail auto dealership that bought a Reynolds or CDK Dealer Management System (DMS) from January 1, 2015 through October 23, 2018, you could benefit from a class action settlement.

A settlement with The Reynolds and Reynolds Company has been reached in an antitrust class action lawsuit (the Dealership Class Action in *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.)) over the price of Dealer Management Systems ("DMS") purchased from Reynolds and/or CDK Global, LLC during the period January 1, 2015 through October 23, 2018, including related vendor integration services. The lawsuit alleges CDK and Reynolds unlawfully colluded to force auto dealerships to pay more for DMS than they should have. Reynolds denies any wrongdoing and the Court has not ruled that Reynolds did anything wrong or violated any law. The Settlement is with Reynolds only; the litigation continues against CDK.

### Who Is Included In This Settlement?

The "Dealership Class" means all persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018.

### What Can You Get From The Settlement?

Reynolds will pay $29,500,000 in cash into a Settlement Fund which, after any Court-approved fees and expenses, will be distributed to Dealership Class Members who submit valid claim forms at a later date.

### How Can You Get a Settlement Payment?

There is no claims process at this time. Claim forms will be sent to Dealership Class Members at a later date. You should keep all documentation you have about your DMS purchases, including invoices paid to vendors, from January 1, 2015 through October 23, 2018 for use in a claim form later. Once this lawsuit is concluded against all Defendants, the Settlement Fund will be distributed based on the claim forms submitted by Dealership Class Members, subject to an allocation plan approved by the Court, upon further notice to the Dealership Class. You do not need to sign up with a claims recovery service to participate in the Settlement. No-cost claims filing assistance will be available from Dealership Class Counsel and the Settlement Administrator once claim forms become available. The settlement website www.dealershipclassDMSsettlement.com will display updated claims information. You may register your email address at www.dealershipclassDMSsettlement.com to receive email alerts of future notices, including the claim form when the claims process begins. Please keep your address current with the Settlement Administrator to help ensure delivery of future notices.

### What Are Your Rights and Options?

The Court will hold a Settlement Hearing on **January 22, 2019** at 10:00 a.m. CT to consider whether to approve the Settlement and the request by the court-appointed lawyers for the Dealership Class (called "Dealership Class Counsel") for up to $3 million from the Settlement Fund in litigation expenses (including expert fees, deposition costs and other expenses). Dealership Class Counsel are not seeking any attorneys' fees or service awards for the plaintiffs at this time. The notification about the claims process will include information about any applications for litigation expenses above $3 million, for attorneys' fees, or for service awards for the plaintiffs. Any fee request will not exceed one-third of the amounts ultimately recovered on behalf of the Dealership Class.

If you are a Dealership Class Member and you don't want to be eligible to receive a settlement payment, or don't want to be legally bound by this Settlement, you must exclude yourself by **January 2, 2019**, or you won't be able to sue, or continue to sue, Reynolds about the legal claims in this case. If you exclude yourself, you will not be eligible to receive a payment under this Settlement. If you remain a Dealership Class Member, you may object to the Settlement and/or the request for litigation expenses by **January 2, 2019**. The long-form notice, available at www.dealershipclassDMSsettlement.com, explains how to exclude yourself or object. You may appear at the Settlement Hearing, but you don't have to. Dealership Class Counsel have been appointed to represent the Dealership Class. These attorneys are listed in the long-form notice. You may hire your own attorney to appear for you, but you will have to pay that attorney.

### Where Can You Get More Information?

For more information, visit www.dealershipclassDMSsettlement.com, call 1-888-842-3161, or write to *Dealership Class Settlement—DMS Antitrust Litigation*, c/o Epiq, Settlement Administrator, P.O. Box 6727, Portland, OR 97228-6727. You can also contact Dealership Class Counsel: Peggy J. Wedgworth, Milberg Tadler Phillips Grossman LLP, One Pennsylvania Plaza, 19th Floor, New York, NY 10119, Tel: (212) 594-5300, pwedgworth@milberg.com; or Leonard A. Bellavia, Bellavia Blatt, PC, 200 Old Country Road, Suite 400, Mineola, NY 11501, Tel: (516) 873-3000, lbellavia@dealerlaw.com

**For More Information: 1-888-842-3161 or www.dealershipclassDMSsettlement.com**

Attachment 6











