**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION <br><br> This document relates to: <br><br> ALL CASES | ) MDL NO. 2817 <br> ) <br> ) Case No. 1:18-CV-00864 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Hon. Robert M. Dow, Jr. <br> ) Magistrate Judge Jeffrey T. Gilbert |

**NON-PARTY DOMINION ENTERPRISES, INC.'S RULE 72(A) OBJECTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO MAGISTRATE'S ORDER REQUIRING PRODUCTION OF DOCUMENTS AND DENYING MODIFICATION OF CONFIDENTIALITY ORDER**

Pursuant to Federal Rule of Civil Procedure 72(a), non-party Dominion Enterprises, Inc. and its subsidiary, Dominion Dealer Solutions, (together "Dominion") hereby object to the Memorandum Opinion and Order of Magistrate Judge Jeffrey T. Gilbert [ECF No. 461] ("Op." or "Opinion and Order") granting The Reynolds and Reynolds Company's ("Reynolds" or "R&R") Motion to Compel Production of Documents Pursuant to Subpoena [ECF No. 280] and denying Dominion's Motion to Modify the Confidentiality Order [ECF No. 303].

**I.    INTRODUCTION**

R&R asserts that trial counsel for R&R and CDK ("Defendants") can review Dominion's confidential documents and then provide legal advice to their clients on their clients' business dealings with Dominion without using or disclosing Dominion's confidential information because the current Confidentiality Order ("Protective Order" or "Order") protects Dominion. Dominion disagrees and submitted declarations establishing that producing Dominion documents under the Order poses an existential threat to Dominion's businesses. Dominion therefore opposed the Motion to Compel and sought a narrow modification to the Order that would offer Dominion some protection, after which Dominion would produce an agreed-upon first set of documents pursuant to R&R's subpoena.

Rather than specifically addressing these declarations, the Magistrate rejected a relevance argument that neither Dominion nor R&R made, and then denied Dominion's reasonable request for a minor modification of the Protective Order that would minimize the potential harm to Dominion while allowing the Defendants' counsel full access to Dominion's documents.

The Magistrate's Opinion and Order is clearly erroneous and should be vacated under Rule 72(a) because the Magistrate either ignored or rejected compelling evidence showing that (1) Defendants could easily drive Dominion out of application businesses and they have incentives to do so; (2) CDK forces competitors to divulge confidential information; (3) Dominion's

confidential information is likely to be misused and inadvertently disclosed; (4) Dominion is likely to be harmed by R&R's trial counsel's misuse of Dominion confidential information in negotiations to force Dominion not to compete with R&R's integration product; (5) Dominion provided additional evidence, not "mere speculation," of a likelihood of harm as a result of misuse and or inadvertent disclosure of Dominion's confidential information; (6) R&R's trial attorneys are not entitled to the presumption that they will follow the highest ethical standards with respect to the Order; (7) R&R's interpretation of the Order raises concerns about the extent to which R&R will comply with the Order; (8) Dominion is unlikely to be aware of and unlikely to be able to prove Order violations; (9) Dominion does not have an adequate remedy for Order violations even if it becomes aware of an Order violation; (10) there is no evidence of any cost to the litigating parties of Dominion's proposed modification; and (11) Dominion is not adequately protected by the existing Order.

The Magistrate's Opinion is also contrary to law. The Magistrate incorrectly held that he could modify the Protective Order only: (a) under "extraordinary circumstances" or a showing of "compelling need" and (b) based upon a showing that Defendants had already engaged in improper conduct in this litigation that resulted in harm. The Magistrate also failed to recognize (c) that non-parties are entitled to more protection than parties; (d) the decisions holding that trial counsel cannot avoid misusing confidential information if given the opportunity; and (e) that the law required the Court to balance the harm to the parties against the benefit to non-parties of modifying confidentiality orders. Finally, the Magistrate addressed the issue of trial counsel's intentional disclosure but failed to apply the law addressing inadvertent disclose and misuse of confidential information.

## II. BACKGROUND

On December 7, 2017, R&R served a subpoena *duces tecum* on Dominion. Dominion objected because it "'continues to be a direct competitor of Reynolds'" and therefore "'need[ed] assurances that the outside attorneys with access to Dominion's documents are not attorneys that

advise defendants on business issues.'" Op. [ECF No. 461] at 2; Resp. [ECF No. 305] at 4. Dominion and R&R counsel were nearing an agreement when this matter was transferred to the Northern District of Illinois. Following months of silence, on May 18, 2018, different R&R counsel withdrew the previous accommodation. Op. [ECF No. 461] at 2; Resp. [ECF No. 305] at 4. Dominion proposed an initial document production that R&R found acceptable if the confidentiality issue could be resolved. But R&R would not go beyond the existing Order, while Dominion believed that the Order was insufficient because of the potential for misuse and inadvertent disclosure of its confidential information. Resp. [ECF No. 305] at 5; Op. [ECF No. 461] at 2-3.

As Dominion demonstrated via employee declarations, Response [ECF No. 305] at 2-3 and Ex. 1 and Reply [ECF No. 365] at 6 and Ex. 1, it is highly vulnerable to Defendants' actions. Most of Dominion's application customers use Defendants' DMSs to house data essential to Dominion's application businesses, Response [ECF No. 305] at 2. Traditionally, Dominion used its own integration application, SelectQu, and other integrators, such as Authenticom, to access dealer data. *Id*. Because of R&R's and CDK's aggressive blocking of competing integrators, Dominion must use CDK's and R&R's integration products to access data at a much higher price (or use inefficient manual access). *Id.* The exorbitant cost of R&R's integration service forced one Dominion application to exit the market. *Id*. at 3. This forced exit is but one demonstration of the Defendants' ability to drive Dominion out of application businesses by raising the integration price or by denying Dominion the ability to integrate outright. *Id.*; *see also* Reply [ECF No. 365] at 5. Indeed, Defendants have driven other competitors from the market. *Id*.

The problem is all the more serious because Dominion's applications compete with Defendants' applications, incentivizing Defendants to drive Dominion out of business. For example, Dominion's Customer Relationship Management ("CRM") application competes with Defendants' CRMs and Dominion's SelectQu competes with Defendants' integration products. This puts Dominion in a very vulnerable position when it is negotiating with Defendants for access to car dealer data. Resp. [ECF No. 305] at 3; *see also* Reply [ECF No. 365] at 6 (providing

3

categories of documents and type of legal advice that could drive Dominion out of business). In fact, CDK forced Dominion to provide its business-confidential CRM product roadmap by threatening to deny it access to data. Only after CDK reviewed the CRM development path did CDK agree to provide data access to Dominion's CRM. Resp. [ECF No. 305] at 3.

> Because of these concerns, Dominion sought a minor addition to the Protective Order:
>
> No Receiving Party with access to Confidential Information or Items of Dominion Enterprises, Inc., its affiliates, and subsidiaries ("Dominion") shall provide advice, legal or otherwise, regarding business relationships with or business conduct affecting Dominion until one year after the conclusion of this Action. This prohibition does not extend to general advice, legal or otherwise, that the Receiving Party has concluded affects Dominion no differently than its competitors after undertaking reasonable due diligence to investigate the potential effect.

Resp. [ECF No. 305] at 15.

On July 24, 2018, before Dominion had an opportunity to file any opposition to R&R's motion to compel, Magistrate Judge Gilbert made his position clear. While he would consider Dominion's arguments if Dominion insisted on making them, he also stated:

> The Court strongly encourages Dominion to consider producing, pursuant to Reynolds' subpoena, the documents it produced to the Federal Trade Commission, subject to the Confidentiality Order previously entered in this case [104], and without the amorphous assurance from Defendants' counsel about future legal advice concerning business dealings that Dominion has requested . . . [t]his preliminary indication is based only on a high-level review of Reynolds' Motion [280], the practicalities of discovery in this multi-district litigation, and what appears on its face to be a broad, vague, and potentially unworkable and unnecessary additional assurance sought by Dominion beyond the protections already provided by the Confidentiality Order [104].

Minute Entry [ECF No. 284].

On December 6, 2018, Magistrate Judge Gilbert issued his Opinion and Order, granting R&R's motion to compel document production and denying Dominion's motion to modify the Order. Op. [ECF No. 461]. With respect to R&R's motion, Judge Gilbert first found that Dominion's assertion that R&R misrepresented Dominion's testimony at the preliminary injunction hearing provided no basis for withholding relevant documents. *Id.* at 4.

Second, to Dominion's concern that producing its documents would result in an unacceptable risk of harm, Judge Gilbert held that Dominion failed to show "how disclosure of [Dominion's confidential] documents puts its business in harm's way." *Id.* at 5. According to Judge Gilbert, "Dominion's conjecture about . . . harm [to] its business is . . . pure speculation." *Id*. Judge Gilbert added, "Dominion has not shown the protections contained in the [existing] Confidentiality Order are inadequate to protect its interests." *Id*. at 6.

Judge Gilbert then addressed Dominion's motion to modify the Protective Order. The Magistrate acknowledged that the Court, for good cause, could issue an order protecting a party "from 'annoyance, embarrassment, oppression, or undue burden or expense.'" *Id*. (quoting Fed. R. Civ. P. 26(c)). But, he appeared to hold that the Court could only modify such an order "if 'extraordinary circumstances' or 'compelling need' warrants the requested modification." *Id*. (quoting *Fed. Deposit Ins. Corp. v. Ernst & Ernst*, 677 F.2d 230, 232 (2d Cir. 1982)). Dominion, according to Judge Gilbert, had not shown such circumstances: "there is simply nothing to indicate that will happen." *Id*.

## III.   ARGUMENT

Upon appeal of a magistrate judge's order regarding non-dispositive matters, the District Court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A); *Bobkoski v. Bd. of Educ. of Cary Consol. School Dist.*, 141 F.R.D. 88, 90 (N.D. Ill. 1992) (holding that discovery motions are non-dispositive). A magistrate's order is clearly erroneous when the District Court has a "firm conviction" that the magistrate judge has made a mistake. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). Even though magistrate judges have broad discretion regarding discovery, the District Court must review "magistrate-judge discovery decisions for clear error." *Domanus v. Lewicki*, 742 F.3d 290, 295 (7th Cir. 2014); *see also Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). Magistrate Judge Gilbert's opinion is both "clearly erroneous" and "contrary to law."

5

A.      **Misrepresentations by R&R Increase the Likelihood that Dominion's Confidential Information Will Be Used or Disclosed**

In granting R&R's motion, the Magistrate misunderstood what Dominion was seeking. While, technically, Dominion opposed the motion to compel, it made clear that it was only seeking a modification of the Order after which it would produce an agreed-upon first set of documents.[1] So, the Magistrate was not responding to Dominion's request for relief when he stated, "Dominion cannot . . . avoid the discovery by disclaiming or minimizing its prior testimony," and then held that it cannot "withhold documents that are relevant to the testimony …." Op. [ECF No. 461] at 4.

Dominion, however, never disclaimed or minimized prior testimony. R&R had asserted that Dominion testified that the "conspiracy between CDK and Reynolds . . . caused price increases for Dominion's integration fee." R&R's Mot. [ECF No. 283], ¶ 2. While a Dominion employee testified about Defendants' exorbitant price increases, he never connected them to a conspiracy (which a third party was very unlikely to know about). Resp. [ECF No. 305] at 10.

Dominion described the misrepresentation for one reason only: R&R's deliberate misstatements showed that R&R's attorneys are not entitled to the expectation that they will abide by the ethical standards required by the Order. Resp. [ECF No. 305] at 10 ("[I]f we cannot trust R&R's brief, how can we trust its representations regarding its future compliance with the Order?"). In fact, R&R continued to misrepresent the testimony even after Dominion pointed out its error. Reply [ECF No. 365] at 11-12. In addition, R&R contended that Dominion accused R&R of a "criminal conspiracy," which was also false. *Id*.

Further, the Magistrate did not address evidence showing R&R did not intend to strictly follow the Order. For example, R&R claims trial counsel privy to Dominion's confidential information can represent R&R in later litigations without leave of this Court. Reply [ECF No. 365] at 12, 4 n.3; R&R's Mot. [ECF 283] at 7. And, it believes it can send trial counsel with access

---

[1] Dominion reserves the right to oppose additional motions to compel regarding productions of documents beyond the first agreed-upon set, as these additional productions were not issues raised by R&R's motion to compel.

to Dominion's confidential information into negotiations to force a Dominion application out of business. Reply [ECF No. 365] at 8, 12.

Without addressing R&R's dishonesty and loose interpretations of the Order, the Magistrate erroneously embraced the "expect[ation] that Defendants' attorneys will abide by the express terms of the . . . Order and the . . . duties and ethical standards required of them . . . ." Op. [ECF No. 461] at 7. Even if this were correct, "crediting fully the . . . assurance that . . . counsel will endeavor to abide by any . . . protective order. . . . marks the beginning and not the end of analysis." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.,* 237 F.R.D. 405, 408 (N.D. Ill. 2006) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992)).

**B.     There is an Unacceptable Risk of Harm to Dominion in the Absence of a Modification to the Protective Order**

The Magistrate next addressed whether there is an unacceptable risk of harm to Dominion from its submission of confidential documents. Op. [ECF No. 461] at 4. The Magistrate found no evidence indicating that Dominion's confidential information is likely to be disclosed. *Id*. at 6. In making this finding, the Magistrate committed both legal and evidentiary errors by: (1) applying the wrong legal standard; and (2) ignoring the evidence of the harm that Dominion could suffer, focusing almost exclusively on intentional disclosure of its confidential information, while Dominion's foremost concern is that R&R will misuse its confidential information.

1.     The Magistrate Applied the Wrong Legal Standard When Assessing the Risk of Harm to Dominion.

The Magistrate found that the "multiplicity of ways Reynolds could use its confidential information to harm its business is, at this stage, pure speculation . . . ." Op. [ECF No. 461] at 5. Further, the Magistrate required Dominion to prove past harm in *this* proceeding to get relief: "Dominion points to nothing that Defendants' trial counsel has done *in representing their clients in this case* that vaults those lawyers into a position in which there is a realistic threat or credible risk that they will use Dominion's designated confidential information outside of this litigation in

violation of the Confidentiality Order." Op. [ECF No. 461] at 8 (emphasis added). The Magistrate committed both legal and evidentiary errors in reaching these conclusions.

With respect to legal error, a confidentiality order is supposed to prevent *future* harm. The Magistrate cites no authority suggesting that the endangered party must establish that harm has already occurred in this proceeding. The hypotheticals the Magistrate brushed aside demonstrate the Protective Order is not sufficient to prevent "potential dangers." Dominion is not required to nail down the exact harm or provide past-tense evidence of such harm. *Star Sci., Inc. v. Carter*, 204 F.R.D. 410, 416 (S.D. Ind. 2001) (good cause existed where "potential dangers" outweighed legitimate interest and "may lead to a competitive disadvantage"); *PhishMe, Inc. v. Wombat Sec. Techs., Inc.*, 2017 WL 4138961, at *8 (D. Del. Sept. 8, 2017) ("there are too many future scenarios in which—if [counsel] is given unfettered access to [defendant's] AEO Material—he may later find himself providing crucial legal advice to [plaintiff's] decision makers as to whether [plaintiff] should take action that might harm [defendant's] competitive position"); *see also* Reply [ECF No. 365] at 6-7. Further, hypotheticals are a standard means of courts' reasoning their way through legal problems. *Id*. at 5. In essence, the Magistrate created an evidentiary standard that no party could satisfy and condemned Dominion for not using his unprecedented standard.

The Magistrate made a second legal error when he ignored numerous precedents that hold that trial lawyers are not able to abide by a confidentiality order if they learn confidential information and then continue to advise their clients. In part, this legal error is a result of the Magistrate's undue focus on Defendants' intentional disclosure of confidential information rather than *inadvertent* disclosure or *misuse* of the information. *See, e.g.,* Op. [ECF No. 461] at 5-6 ("Dominion's concern . . . is allayed by the existing Confidentiality Order . . . and the availability of a remedy if . . . a lawyer . . . improperly *discloses* confidential information . . . .") (emphasis added).

The Magistrate missed the point: the "test is not that lawyers involved in such activities will intentionally misuse confidential information; rather, it is the risk that such information will be used or disclosed inadvertently because of the lawyer's role in the client's business decisions."

8

*Fed. Trade Comm'n v. Sysco Corp.*, 83 F. Supp. 3d 1, 3-4 (D.D.C. 2015). The harm to Dominion is foreseeable as a matter of law because it is impossible for lawyers *not* to use confidential information when providing advice or dealing directly with Dominion. *See* Resp. [ECF No. 305] at 6-9. The confidential information need not be disclosed; it may be implicitly imbedded in trial counsel's advice. *See, e.g.*, *Autotech Techs.*, 237 F.R.D. at 411 ("competitive decision-making" and "litigation decision-making" would "blend imperceptibly together"). As this Court has observed, counsel would not be able to separate the highly confidential information in their minds and use it solely for purposes of this litigation, as "[c]ompartmentalization would be exceedingly difficult" and "a feat beyond the compass of ordinary minds." *Id.* at 408, 410 (citation omitted). In fact, it is "manifestly impossible" for counsel to adhere to the Protective Order while providing legal advice because it requires them to engage in an unattainable level of "mental gymnastic[s]." *E.g.*, *id.* at 410. "If the rule were otherwise, there could never be a restriction." *Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F.Supp. 3d 936, 946 (N.D. Ill. 2017).

        2.        Dominion Provided Evidence that Its Submission of Confidential Materials is Likely to Result in Harm.

Central to the Magistrate's rejection of Dominion's evidence of harm was his conclusion that Dominion "failed to show . . . how disclosure of [Dominion's confidential] documents put[] its business in harm's way." Op. [ECF No. 461] at 5. The Magistrate failed, however, to consider the evidence showing that Defendants could drive Dominion out of application businesses by withholding or raising the price of accessing the car dealer data that its applications require. Resp. [ECF No. 305] at 2; Reply [ECF No. 365] at 5. Indeed, R&R never argued that it and CDK did not have the ability to drive Dominion out of these businesses. Reply [ECF No. 365] at 1, 4, 12. Nor did R&R dispute that CDK's competitive strategy includes appropriating competitor's confidential information. Resp. [ECF No. 305] at 5, Ex. 1, ¶ 21.

In addition, the Magistrate barely addressed Dominion's experience with R&R's trial lawyer Aundrea Gulley. The Magistrate opines that "Dominion points to nothing that Defendants' trial counsel has done *in representing their clients* **in this case** that vaults those lawyers into a

9

position in which there is a realistic or credible risk or threat that they will use Dominion's designated confidential information outside of this litigation . . . ." Op. [ECF No. 461] at 8 (emphasis added). In a footnote, n.2 at 8, the Magistrate seems to include the actions of Ms. Gulley.

But, the evidence shows that Ms. Gulley's actions pose an existential threat. On May 4, 2015, Ms. Gulley wrote to Dominion that SelectQu's access to dealer data in the R&R DMS is "unauthorized" and that any "attempt by SelectQu to induce Reynolds dealers to allow such third-party access . . . gives rise to liability on the part of SelectQu for … tortious interference with contracts." Ms. Gulley added, "Reynolds is open to . . . an orderly wind down of the unauthorized DMS access" and asked Dominion *to call her* to discuss this further. Resp. [ECF No. 305] at 3 and Ex. 2. If Ms. Gulley picks up where she left off, she could negotiate fully armed with confidential information about Dominion's product and strategy.

R&R does not suggest that Ms. Gulley can "selectively suppress information once learned." *Silversun*, 296 F. Supp. 3d at 946. Nor does it promise that Ms. Gulley will not make another attempt to drive out Dominion. Rather, it contends that Ms. Gulley's efforts to put Dominion out of *business,* fully armed with Dominion secrets, is fine because Ms. Gulley would be making a legal demand, not a business demand.[2] Thus, the Magistrate's conclusion is neither consistent with the evidence or R&R's arguments.

### C. The Magistrate Used an Erroneous Standard in Denying Dominion's Request to Modify the Confidentiality Order

1. Modification to the Protective Order Does Not Require "Extraordinary Circumstances."

The Magistrate held that the Court could only modify a protective order if "'extraordinary circumstances' or 'compelling need' warrants the requested modification." Op. [ECF No. 461] at

---

[2] Although the Magistrate did not address R&R's effort to distinguish the provision of legal advice from business entanglements, it is worth pointing out that Ms. Gulley attempted to change the nature of *business* competition by eliminating a competitor. Moreover, Ms. Gulley was offering a *business quid pro quo*: Reynolds would stop blocking SelectQu's access to data for some time if Dominion would agree to exit the market eventually. The details, such as the amount of time and the scope of Dominion's business during that time, would be the result of *business* negotiations *with Ms. Gulley*. *See* Reply [ECF No. 365] at 7-8.

10

6 (quoting *Fed. Deposit Ins.*, 677 F.3d at 232). This is not the correct standard. The *Federal Deposit Insurance* court actually held: "Once a confidentiality order has been entered *and relied upon,* it can only be modified if an 'extraordinary circumstance' or 'compelling need' warrants the requested modification." 677 F.3d at 232 (emphasis added). The present Order has not been relied upon in the way suggested by the *Federal Deposit Insurance* court. In that matter, a public interest group sought to modify an order requiring the FDIC to maintain confidentiality of the settlement terms between the FDIC and an accounting firm. The court refused to modify the order presumably because the parties relied on the confidentiality provisions in reaching the settlement. *Id*. Here, there is no evidence of such reliance.

    2.   The Standard for Modifying the Protective Order is Good Cause.

Instead of requiring a showing of "extraordinary circumstances," the Magistrate should modify a protective order where, as here, the movant shows good cause. *Trading Techs. Int'l, Inc. v. GL Consultants, Inc.*, 2011 WL 148252, at *2 (N.D. Ill. Jan. 18, 2011); *see also Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F. Supp. 3d 666, 673 (N.D. Ill. 2016); Resp. [ECF No. 305] at 6-15 (describing five reasons there was good cause to modify the Order).

    3.   Non-Parties Are Entitled to More Protection than Parties.

The Magistrate also failed to recognize that non-parties are entitled to better confidentiality protection than parties, especially when the non-party is a vulnerable competitor: "Courts in this circuit and other circuits recognize that the burden to show good cause is less demanding on non-parties." *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342 (N.D. Ill. 2008). *Northshore* is instructive. There, non-parties, in response to a motion to compel, objected to a protective order because it permitted "unbridled disclosure [that] would be costly in future negotiations and would destroy their competitive advantage." 254 F.R.D. at 341. The court agreed, holding, "[t]he inability of non-parties to maintain continuing control over their confidential commercial documents . . . enables non-parties to show good cause for a protective order." *Id.* The court further observed, "[w]hen non-parties are forced to produce commercial documents pursuant to a discovery request,

11

they are in effect handing over the keys to their corporate automobiles to parties who may, at best, be considered ambivalent towards their interests." *Id.* at 343. This Court's guidance in *Advocate Health* further distinguished the treatment of parties and non-parties, observing:

> The inescapable reality is that once . . . a lawyer . . . learns the confidential information that is being sought, that individual cannot rid himself of the knowledge he has gained; he cannot perform a prefrontal lobotomy on himself, as courts in various contexts have recognized. That risk is one that a party must, of necessity, endure*. **But it is not one that a nonparty ought to be forced to take where the party seeking the information is its foremost competitor** . . . .*

*Advocate Health*, 162 F. Supp. 3d at 670 (emphasis added) (citations omitted).

The *Northshore* and *Advocate* precedents are instructive and applicable here. First, the *Northshore* court modified the confidentiality order in the absence of an "extraordinary" justification. Second, both Dominion and the *Northshore* movants are non-parties entitled to additional protection. Third, neither Dominion nor the *Northshore* non-parties had a hand in drafting the Order, which was important to the *Northshore* court. *Northshore Univ. Healthsystem*, 254 F.R.D. at 339-40. Fourth, both Dominion and non-parties in *Northshore* were concerned about future negotiations. Fifth, the problem faced by competitors in *Northshore* was the possible loss of a competitive advantage. Dominion faces an even greater threat: a loss in negotiating leverage resulting in the forced exit of its competing businesses. Finally, Dominion has offered evidence of potential harm. The *Northshore* court appears to have found non-parties' assertions sufficient. *Id.*

### D. The Potential Harm to Dominion Outweighs Defendants' Preference for Legal Advice with Respect to Dominion Business Matters

To determine the proper level of protection in a confidentiality order, the Magistrate should have balanced the harm to Dominion of the present Order against the benefit to the Plaintiffs and Defendants of maintaining that Order. *See Autotech Techs.*, 237 F.R.D. at 408 ("the applicable factors weigh in favor of an order limiting in-house counsels' access"); *Northshore Univ. Healthsystem*, 254 F.R.D. at 341 ("In balancing the interests of the Objecting Non-Parties in obtaining a protective order and the presumption of public disclosure, the Court holds that the Additional Order is necessary to protect the Objecting Non-Parties' interests . . . .").

Dominion seeks narrow relief. *See* Reply [ECF No. 365] at 3-4. The proposed modification does not prevent trial counsel from reviewing Dominion's confidential information; it only prohibits them from providing business-related advice to their client once they access such information. Yet, the Magistrate wrote, Dominion is seeking to "bar an opponent's litigation counsel from having access to confidential or highly confidential information . . . ." Op. [ECF No. 461] at 8. Because the Magistrate was clearly in error in thinking that, he was also in error when he finished the thought by claiming, "the already high cost of federal litigation would increase astronomically" if the Court adopted Dominion's proposal. *Id*. at 9. Defendants would only need to involve different lawyers in business dealings with Dominion. Resp. [ECF No. 305] at 13-14. R&R offered no *evidence* that this would result in any costs, let along astronomical costs. It only offered legalese. *See Advocate Health*, 162 F. Supp. 3d at 674 ("There is only the *ipse dixit* of the defendants . . . . And that is not enough."). Notably, Plaintiffs, in the underlying litigation, raised *no* objections to the modification Dominion now seeks. Resp. [ECF No. 305] at 13; Reply [ECF No. 365] at 3 n.1. This speaks volumes about the absence of any costs to Dominion's proposal. Given that there is no evidence that the modification would potentially harm the parties or the course of the litigation and there is evidence of potential harm to Dominion, the case law supports the Court's adoption of Dominion's proposed modification of the Order.

### E. There is No Adequate Remedy for a Violation of the Order

The Magistrate observed that "Dominion's concern . . . is allayed by . . . the availability of a remedy if [the] Order is breached, *e.g.,* the possibility of holding in contempt . . . a . . . lawyer who improperly *discloses* confidential information . . . ." Op. [ECF No. 461] at 5-6 (emphasis added). And, similarly, the Confidentiality Order "incorporates penalties for counsel who improperly *share* such information . . . ." *Id.* at 5 (emphasis added). The Magistrate's reasoning suggests that the Order would thus deter intentional disclosure or sharing. But the Magistrate does not explain how it would deter inadvertent disclosure or misuse. In the former case, because it is not intentional, the deterrent is likely to have limited effect. In the latter case, the threat of sanctions

13

would have no deterrent effect: disclosure is unavoidable because quarantining the confidential information is "a feat beyond the compass of ordinary minds."

Nor does the Magistrate explain how Dominion would uncover a violation. First, Dominion, as a non-party with limited exposure to this litigation, is less likely than a party to discover a disclosure violation. Second, most breaches would occur under the cloak of privilege. Third, discovering misuse, absent disclosure, is likely impossible.

Ms. Gulley's conduct demonstrates the difficulties Dominion would have in protecting itself against misuse or inadvertent disclosure. R&R does not offer to restrict Ms. Gulley's role, despite the existing Order's prohibition against use of confidential information outside of this litigation. When negotiations are reopened, Ms. Gulley will use the information because "the bell cannot be unrung." *Silversun*, 296 F. Supp. 3d at 947 (citation omitted); *cf. PhishMe*, 2017 WL 4138961, at *5 ("[E]ven when an attorney states that their role is simply to provide 'legal advice' on 'legal issues'" this "may cloud the types of advice counsel provides."). The Magistrate would say that Dominion could seek sanctions, but it would be futile because Dominion could not prove that Ms. Gulley used Dominion's confidential information in such negotiations. And even if she didn't, the negotiating dynamics would change because Dominion could not bluff when Ms. Gulley has Dominion's confidential information.

Finally, the Magistrate never explains how sanctions would make Dominion whole if Defendants' trial counsel violates the Order. Dominion's concern is financial harm and that it will be driven out of multiple businesses. Sanctions offer only pyrrhic victories. Dominion does not want such victories; it wants to survive.

## IV. CONCLUSION

Dominion respectfully requests that the Court set aside the Magistrate's Memorandum Opinion and Order and modify the Protective Order.

Dated: December 20, 2018               Respectfully submitted,

                                       /s/ *Jeff Norberg*

                                       Jeff Norberg, Ill. Bar No. 6315012
                                       Neal & McDevitt, LLC
                                       1776 Ash Street
                                       Northfield, Il 60093

                                       (847) 441-9100
                                       jnorberg@nealmcdevitt.com

                                       Marc Schildkraut
                                       Deepti Bansal
                                       Cooley LLP
                                       1299 Pennsylvania Ave, NW,
                                       Suite 700
                                       Washington, DC 20004

                                       (202) 728-7000
                                       (202) 728-7027

                                       mschildkraut@cooley.com
                                       dbansal@cooley.com

                                       *Counsel for Non-Party Respondent*
                                       *Dominion Enterprises, Inc.*

## **CERTIFICATE OF SERVICE**

I, Jeff Norberg, an attorney, hereby certify that on December 20, 2018, I caused true and correct copies of the foregoing Non-Party Dominion Enterprises, Inc.'s Rule 72(a) Objection and Memorandum of Law in Support of Its Objection to Magistrate's Order Requiring Production of Documents and Denying Modification of Confidentiality Order to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

By: /s/ *Jeff Norberg*
Jeff Norberg, Ill. Bar No. 6315012
Neal & McDevitt, LLC
1776 Ash Street
Northfield, Il 60093
(847) 441-9100
jnorberg@nealmcdevitt.com

*Counsel for Non-Party Respondent Dominion Enterprises, Inc.*