EXHIBIT A

**From:** list@dealercounsel.simplelists.com <list@dealercounsel.simplelists.com> **On Behalf Of** Miller, Bradley
**Sent:** Friday, December 21, 2018 12:44 PM
**To:** list@dealercounsel.com
**Subject:** FW: Critical Court Deadline Approaching for R&R, CDK Dealers – Dealer Action Required by January 2, 2019

Listserve members,
Please note that the following message and linked Q&A document were sent to all NADA members earlier today. You will note that both the message and the Q&A document strongly encourage dealers to consult with their attorneys regarding the subject matter outlined therein. As a result, we wanted to share the communication with you so that you were aware of the source and nature of any questions you may receive. Thank you for your time and attention, and the very best to each of you for a Happy Holiday season.

Best regards,
Brad Miller


**Bradley Miller**
**Director | Legal and Regulatory Affairs**
**Senior Counsel | Digital Affairs**
**National Automobile Dealers Association**

bmiller@nada.org
o 703.827.7401
8484 Westpark Drive
Suite 500
Tysons, VA 22102
**nada.org**





**Notice to all NADA members who have a Reynolds and Reynolds (R&R) or CDK DMS or had an R&R or CDK DMS in the past:**

On Wednesday, December 19, 2018, lawyers in the dealer antitrust litigation against Reynolds and Reynolds and CDK filed a motion seeking final approval of a settlement of all dealer claims with Reynolds and Reynolds. These lawyers do not represent you individually, but you will be bound by the terms of the settlement if you fail to act. Any dealer that has (or had) a Reynolds or CDK DMS should carefully review the attached Q&A document and must act by January 2, 2019 if you wish to opt out or object to that settlement. Failure to act will result in a waiver of important rights.

Important items outlined in the Q&A document include:

- The proposed settlement is not yet final; dealers need to consider their options and may need to act prior to January 2, 2019.
- The deadline applies to R&R **and CDK** dealers, and any dealer who may be affected should review this memorandum with their attorney.
- If you fail to act, you will be legally bound by the settlement and will waive potentially important rights of which you may not be aware.

Again, please review the entire Q&A document and consult your attorney in the coming days to ensure you do not miss the court-imposed deadline.

# DMS Litigation Update
# Dealer Class Proposed Settlement with Reynolds and Reynolds Q&A
# Dealer Action Required by Jan. 2, 2019 – Please Review with Your Attorney

1. **What is this about?**

A number of lawsuits[1] have been filed against two dealer management system ("DMS") providers, Reynolds and Reynolds ("Reynolds"), and CDK (together, the "DMS Companies"), related to the DMS Companies' third-party "certification" programs.[2]  These cases generally allege that the DMS Companies have engaged in an illegal conspiracy in violation of antitrust and other laws in their adoption and implementation of these certification programs.  Plaintiffs in those cases have alleged that these acts have, among other things, caused dealerships to pay as much as $10,000 to $16,000 per month in excess fees.[3]  We are providing this Q&A document in response to numerous questions from dealers and dealer representatives about the proposed settlement outlined below.

2. **What is the status of the litigation?**

The various claims asserted by vendors and dealers have been consolidated in one proceeding, called a "Multi-District Litigation" or "MDL"[4] proceeding.  The lawsuits brought by dealers include claims against both CDK and Reynolds and allege damage to all similarly situated dealers based on increased prices charged directly and indirectly to dealers, and other alleged harm from the alleged antitrust conspiracy. On October 23, 2018, the putative Dealership Class Plaintiffs and Reynolds filed a Motion for Preliminary Approval of Settlement and for Conditional Certification of the Proposed Settlement Class ("Proposed Settlement").  This means that Reynolds and the lawyers representing the putative dealer class have reached a settlement in principle, and that settlement is awaiting final approval by the MDL court.  On November 7, the MDL court entered a Preliminary Approval Order of the Proposed Settlement and on December 19, 2018, plaintiffs' counsel filed a Motion for Final Approval of the Settlement.

3. **What is the "Proposed Settlement?"**

The Proposed Settlement[5] of the dealer claims would only apply as to Reynolds, as no settlement has been reached with CDK and the dealer claims against CDK would continue.  However, the Proposed Settlement, if approved, would apply as to all claims against Reynolds by dealers who have either Reynolds or CDK DMSs.[6]  The dealership class has not yet been certified, so the court has not yet considered any arguments regarding the fairness or appropriateness of a class certification.  However, the Proposed Settlement includes an agreement between the parties that the class should be certified.  If a class is certified, all dealers who are deemed members of that class who do not opt-out of the settlement will be bound by the terms of any settlement that is ultimately approved by the court.

The Proposed Settlement includes a payment by Reynolds of $29.5 million, and that amount, less (a) at least $3 million in litigation expenses[7], and (b) up to one-third in attorneys' fees[8], will be distributed among the members of the Proposed Reynolds Settlement Class who do not opt-out of the class.

The Proposed Settlement does *not* contain any equitable, structural, contractual, or behavioral relief for the dealers in the proposed class.[9]  This means that aside from the payment of the settlement amount,

THIS MEMORANDUM DOES NOT CONTAIN AND IS NOT INTENDED AS LEGAL ADVICE.  DEALERS SHOULD CONSULT WITH THEIR ATTORNEY REGARDING THE PROPOSED SETTLEMENT.

Reynolds will not be required to take any action, change any practice or amend any contract, or refrain from taking any action with respect to the certification program, dealers, or dealer vendors. As a result, the Reynolds third-party certification program will be allowed to continue with no required changes.

**4. Who does this affect?**

The dealer class that the proposed settlement would cover includes:

> *"all persons and entities located in the United States engaged in the business of the retail sale of automobiles who purchased* [sic] *DMS from CDK and/or Reynolds, or any predecessor, successor, subsidiary, joint venture or affiliate, during the period from January 1, 2015 through October 23, 2018."*[10] ("Proposed Reynolds Settlement Class")

> *NOTE – Both Reynolds and CDK dealers are included*.

All dealers that may be a member of the Proposed Reynolds Settlement Class – that is, all dealers that "purchased"[11] a CDK or Reynolds DMS during the relevant timeframe – should review this document carefully, along with the notice and other materials issued in connection with the Proposed Settlement and should consult with their attorney regarding their legal rights and options.

**5. What can I do?**

The court still needs to approve both the Proposed Settlement and the certification of the dealer class. The court has scheduled a hearing to determine the fairness of both the Proposed Settlement and the certification of the class on January 22, 2019. Prior to that hearing, any dealer who is a member of the Proposed Reynolds Settlement Class dealer has:

> "*the opportunity to request to be excluded from the Dealership Class and the opportunity to object to certification of the Dealership Class, the Settlement, or any attorneys' fees, costs and expenses sought by Dealership Class Counsel. . .*"[12]

Dealers should carefully review the notice and discuss with their lawyer how to timely challenge or opt-out of the Proposed Settlement if they should decide to do so.

**6. What is the deadline?**

**Importantly, the deadline for dealers to object to the settlement or to opt-out of the class is January 2, 2019.** Dealers must decide whether to challenge or opt-out of the settlement class and must act by January 2, 2019 in accordance with the court's instructions if they wish to preserve their claims against Reynolds and avoid being bound by the terms of the settlement. The instructions to opt-out or object are available at https://dealershipclassdmssettlement.com/Home/FAQ#faq11

**7. If I do nothing, what happens?**

**If a dealer in the Proposed Reynolds Settlement Class fails to act by January 2, 2019, it will be deemed to have accepted the Proposed Settlement and will be bound by its terms if approved by the court.** That means that you will participate in the settlement (that is, get paid some portion of the settlement amount (see above)) but, in exchange for such payment, all members of the class who do not opt out prior to the deadline would permanently waive the following claims against Reynolds:

**THIS MEMORANDUM DOES NOT CONTAIN AND IS NOT INTENDED AS LEGAL ADVICE. DEALERS SHOULD CONSULT WITH THEIR ATTORNEY REGARDING THE PROPOSED SETTLEMENT.**

*"Released Dealership Class Claims" means any and all claims, demands, judgments, actions, suits, and causes of action, whether class, individual or otherwise (whether or not any Dealership Class Member has objected to the settlement or makes a claim upon or participates in the Settlement Fund, whether directly, indirectly, representatively, derivatively, or in any other capacity) that Dealership Class Releasors, or each of them, whether directly, indirectly, representatively, derivatively, or in any other capacity, ever had, now has, or hereafter can, shall, or may have against Reynolds Releasees, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated, relating in any way to any conduct prior to the Effective Date and arising out of or related in any way, in whole or in part, to any facts, circumstances, acts, or omissions arising out of or related to the direct or indirect provision, licensing, pricing, purchasing, selling, marketing, development, availability, accessibility, or functionality of DMS or DIS[13], including but not limited to any conduct alleged, and causes of action asserted or that could have been alleged or asserted, in any complaints filed in the Dealership Class Action, including without limitation those arising under antitrust, unfair competition, consumer protection, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, civil conspiracy, common law or statutory fraud laws, whether under federal, state, local, or foreign law. For the avoidance of doubt, the Released Dealership Class Claims (a) include without limitation any claim or allegation relating in any way to a continuation after the Effective Date of any conduct described in the preceding sentence; but (b) do not release, alter, or affect any existing or future contractual obligations between Reynolds and a Dealership Class Member for Reynolds to provide products or services to the Dealership Class Member and for the Dealership Class Member to pay for those products or services."*[14]*

### 8. What does that mean?

You should consult with your attorney as to what agreeing to this release of claims may mean for you, but broadly speaking, it means that you would permanently waive your rights to ever bring a claim against Reynolds related to the issues described in the Release.

### 9. How much will I be paid?

An estimate of the average amount each proposed class member stands to be paid pursuant to the settlement would appear to be approximately $1,100.[15]  Note that it is difficult to estimate the exact payment to any class members for a number of reasons, including: (a) no class has yet been certified; (b) the total number of class members has not yet been determined; (c) the number of dealers who opt out is uncertain; (d) the exact definition and apportionment of the settlement proceeds is yet to be determined, and; (e) the total amount paid from the settlement proceeds paid to plaintiffs' counsel has not yet been determined.

In addition, for a dealer to obtain any such payment from the Proposed Settlement, it will need to be found to be a member of the class and thereafter may be able to collect funds from the settlement if it timely files the requisite claim forms and undertakes all other procedural requirements imposed by the

**THIS MEMORANDUM DOES NOT CONTAIN AND IS NOT INTENDED AS LEGAL ADVICE.  DEALERS SHOULD CONSULT WITH THEIR ATTORNEY REGARDING THE PROPOSED SETTLEMENT.**

court as part of the settlement. A dealer that fails to properly file a claim form will not be paid any portion of the settlement payment.

**10. What happens if I "opt-out"?**

If you "opt-out," and the Proposed Settlement is approved, you will not be paid any money as part of the settlement. However, you will not be deemed to have waived any claims you may have (as either a Reynolds or CDK dealer) against Reynolds.

The Proposed Settlement Agreement contains a provision that would allow Reynolds to terminate the Proposed Settlement if "*if a certain number of potential Dealership Class Members exclude themselves from the Dealership Class*."[16] It is unclear how many dealers would need to opt-out to lead to the exercise of such termination by Reynolds. However, if enough dealers opted-out, the Proposed Settlement could be abandoned by the parties and the litigation would continue.

**11. Why is the deadline so soon?**

The deadline was set by the court in the MDL. The timing is tight given the Holidays and the end of the year. Dealers who need more time to analyze the Proposed Settlement and to make their decision could seek an extension from the court and should consult with their attorney regarding their options in doing so. Any such extension grant would be decided by the court.

**12. What should I ask my lawyer?**

You should review these materials, along with the notice information provided in connection with the Proposed Settlement and should consult with your attorney in the coming days to decide what action to take in connection with the Proposed Settlement. In particular, dealers should understand what rights they are waiving if they decide to stay in the class and should weigh the loss of such rights against the benefits of participation in the Proposed Settlement proceeds.

Specific issues to discuss with your attorney include:

- Would I be part of this class?
- Should I opt-out?
- What claims will I permanently waive if I do nothing? (including "DMS" and "DIS" claims[17]).
- What does it mean that the Proposed Settlement contains no equitable, behavioral, or structural relief? How might that affect my dealership?
- Why is the deadline so soon? Can I seek an extension of time to opt out?
- Do I have objections to either the Proposed Settlement or the costs or attorneys' fees?

**Important dates in the settlement process:**

- Class Period - January 1, 2015 - October 23, 2018
- Deadline to opt out of class – January 2, 2019
- Deadline to object to settlement – January 2, 2019
- Settlement Hearing – January 22, 2019

4

**THIS MEMORANDUM DOES NOT CONTAIN AND IS NOT INTENDED AS LEGAL ADVICE. DEALERS SHOULD CONSULT WITH THEIR ATTORNEY REGARDING THE PROPOSED SETTLEMENT.**

---

[1] Motor Vehicle Software Corporation ("MVSC") brought a suit against CDK, Reynolds and Reynolds, and Computerized Vehicle Registration ("CVR"), a majority owned joint venture of Reynolds and CDK. MVSC's suit was originally filed in the U.S. District Court for the Central District of California on February 3, 2017.

Authenticom, Inc. brought a suit against CDK Global, LLC and Reynolds and Reynolds. Authenticom's suit was originally filed in the U.S. District Court for the Western District of Wisconsin on May 1, 2017.

Teterboro Automall, Inc. d/b/a Teterboro Chrysler Dodge Jeep Ram ("Teterboro") brought a putative class-action suit against CDK Global, LLC and Reynolds and Reynolds. Teterboro's suit was originally filed in the U.S. District Court for the District of New Jersey on October 19, 2017. Since that time, several more putative class actions have been filed in a variety of Federal District Courts, with substantively similar allegations; all of them have been consolidated with the MDL proceeding. On June 4, 2018, a Consolidated Class Action Complaint was filed on behalf of a putative class made up of all dealerships in the United States that directly or indirectly purchase DMS or data integration services from CDK or Reynolds and Reynolds.

Cox Automotive, along with multiple subsidiaries ("Cox"), brought suit against CDK Global, LLC. Cox's suit was originally filed in the U.S. District Court for the Western District of Wisconsin, on December 11, 2017.

Loop LLC d/b/a Autoloop ("Autoloop") brought suit against CDK Global, LLC in the U.S. District Court for the Northern District of Illinois on April 9, 2018, but reserved its rights with respect to remand to the U.S. District Court for the Western District of Wisconsin at the conclusion of the MDL proceedings. On June 5, 2018, Autoloop amended its complaint as a putative class action on behalf of itself and all other similarly situated vendors.

[2] The Reynolds and Reynolds program is called the "Reynolds Certified Interface," or "RCI" program, and CDK's is called "Third Party Access," or "3PA." Pursuant to these programs, any third-party vendor to whom a dealer wishes to grant access to data from a dealer's DMS to provide a service to that dealer, may only access the DMS or data from the DMS if they have been "certified."

[3] See Consolidated Class Action Complaint ¶ 140, n.119

[4] *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817 (N.D. Ill.). This includes the cases outlined above, including the Dealership Class Action, the Vendor Class Action, and the Individual Plaintiffs Actions brought by Authenticom, Inc., Case No. 1:17-cv-00318-JDP (W.D. Wis.), Cox Automotive, Inc., Case No. 1:18-cv-1058 (N.D. Ill.) and Motor Vehicle Software Corporation, Case No. 1:18-cv-00865 (N.D. Ill.), and any other cases coordinated or consolidated under the Multidistrict Litigation Number 2817.

[5] The proposed Settlement agreement can be seen here: https://dealershipclassdmssettlement.com/Content/Documents/Settlement%20Agreement.pdf. See also https://dealershipclassdmssettlement.com/ for notice and general materials regarding the proposed settlement.

[6] While this can be confusing, the basic idea is that because the allegations involve an illegal conspiracy between CDK and Reynolds, those two parties could be "jointly and severally" liable for any damages awarded. Thus, even dealers who purchased their DMS from CDK (and not Reynolds) could have claims against Reynolds for damages resulting from that conspiracy.

[7] "[I]ncluding expert fees, deposition costs and other expenses." See https://dealershipclassdmssettlement.com/

[8] Plaintiffs' counsel "*are not seeking attorneys' fees at this time, but will seek a fee at a later date. Any applications for reimbursement of litigation expenses above $3 million, for attorneys' fees, or for service awards to the Dealership Class Plaintiffs will be made upon further notice to the Dealership Class. Any fee request will not exceed*

**THIS MEMORANDUM DOES NOT CONTAIN AND IS NOT INTENDED AS LEGAL ADVICE. DEALERS SHOULD CONSULT WITH THEIR ATTORNEY REGARDING THE PROPOSED SETTLEMENT.**

*one-third of the amounts ultimately recovered on behalf of the Dealership Class.*" See
https://dealershipclassdmssettlement.com/

[9] Note that such equitable and structural relief is generally available in private antitrust litigation, and that many of the claims asserted in the litigation, including many of the remaining claims, explicitly seek equitable relief.

[10] Proposed Settlement Agreement, ¶ (A)(1)(b).

[11] It is unclear whether this only applies to dealers who initially "purchased" DMS services from CDK and/or Reynolds during that time, or to those dealers as well as all CDK and Reynolds dealers who were under an existing DMS contract during that time. It seems likely that it is intended to include the latter, but the notice does limit it to "purchasers." This is one of many issues dealers should discuss with their attorney.

[12] Proposed Settlement Agreement, ¶ (B)(4).

[13] DIS refers to "Dealer Integration Services" which are broadly speaking, "programs and services for extracting, formatting, integrating, and/or organizing data from DMSs." The implications of this broad term being included in the release should be discussed with your attorney.

[14] Proposed Settlement Agreement, ¶ (A)(1)(x).

[15] The assumptions underlying this figure are as follows: CDK has stated that they currently have 14,534 "customer sites" in the U.S. *See* CDK 10-Q filed November 7, 2018, at p.40. Assuming that "customer site" is a rough proxy for "franchise," we note that figure represents approximately 40% of the total U.S. franchised dealer "franchises." Upon information and belief, Reynolds has a smaller share of the same market - approximately 30%, or an equivalent of 10,900 "franchises" or "customer sites." If all those dealers are members of the putative class, and assuming a total settlement amount (after fees (of at least $3 million) and attorneys' fees of one-third of the total, (or $9,735,000)) of $16,765,000, that means that each "customer site" would receive *an average of $659. ($16,765,000/25,434)*. To be clear, this is just a very rough estimate, this could vary widely, and many dealers may receive more or less than this amount, based on a variety of factors. For example, there are roughly two franchises per "rooftop" in the U.S., and the number of dealer principals varies from "rooftops."

In addition, the Plaintiffs Motion for Final Approval of Settlement, filed with the court on December 19, 2018 states that notices have been sent to "over 15,000 known Dealership Class Members." (at p.7) (A total of 15,643 "potential Dealership Class Members" at p.10) This figure indicates that on average, each class member would stand to receive $1,072. *($16,765,000/15,763 = $1,071.73)*.

It is unclear how the Proposed Settlement amount would be apportioned among dealers, or as between CDK and Reynolds dealers. In addition, various factors, such as: (a) the uncertainty of these numbers; (b) the difficulty of accurately measuring the total dealers affected; (c) the likelihood that not all of these dealers will be members of the class or participate in the class, and; (d) a variety of other factors, make estimating this number difficult. However, we have estimated a that the average amount each class member could receive would approximately $1,100 based on the information outlined above. Again, this is an estimate, and we have no way of knowing at this time what the actual amounts would be for the average dealer, or for any particular dealer beyond what is laid out herein, in the court filings to date, and in the official notice materials.

[16] See Proposed Settlement Agreement, ¶ 24.

[17] See note above re "DIS."

**THIS MEMORANDUM DOES NOT CONTAIN AND IS NOT INTENDED AS LEGAL ADVICE. DEALERS SHOULD CONSULT WITH THEIR ATTORNEY REGARDING THE PROPOSED SETTLEMENT.**