**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to:<br>*Cox Automotive, Inc., et al. v. CDK Global, LLC*, Case No. 1:18-cv-1058 (N.D. Ill.) | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

**COX AUTOMOTIVE, INC., ET AL.'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER
TO PREVENT THE DEPOSITION OF SANDY SCHWARTZ**

Plaintiff Cox Automotive, Inc. and its affiliates ("Cox Automotive") respectfully request a protective order pursuant to Federal Rule of Civil Procedure 26(c) to preclude the deposition of Sandy Schwartz, President of Cox Automotive. It is well-established that depositions of "apex" executives like Mr. Schwartz are disfavored unless the deponent has unique, personal knowledge of the issues in the litigation and there are no alternative, less-burdensome means of discovery available. Here, Defendant CDK Global, LLC seeks to question Mr. Schwartz on issues that are tangentially relevant to this litigation at best. And even on those issues, Mr. Schwartz has no unique, personal knowledge. Nor can CDK show otherwise. To date, CDK has taken only two depositions of Cox Automotive witnesses, and has not yet noticed, much less taken, a Rule 30(b)(6) deposition. Because the burden to Mr. Schwartz and Cox Automotive of an "apex" deposition far outweigh the value to Defendants of Mr. Schwartz's testimony, a protective order should be granted.

**BACKGROUND**

Cox Automotive is one of the individual plaintiffs in this MDL. It is a vendor that offers software solutions to help automotive dealers run their businesses. Cox Automotive has sued to remedy the harm that it has suffered as a result of the anticompetitive conduct of Defendant CDK Global, LLC ("CDK") and its non-defendant co-conspirator, The Reynolds & Reynolds Company ("Reynolds"). Like the other plaintiffs in this MDL, Cox Automotive alleges that CDK and Reynolds have conspired to eliminate independent data integrators, forcing vendors like Cox Automotive to use CDK's and Reynolds's data integration services. *See* Dkt. 505 (Cox Automotive Opinion), at 4-6. This has caused the prices for data integration to increase and the quality to decrease.

Cox Automotive has approximately 36,000 employees and approximately $7 billion in annual revenue. Sandy Schwartz is the President of Cox Automotive and the company's highest ranking employee. He oversees Cox Automotive's entire business, which encompasses more than 25 brands, only a subset of which is at issue in this litigation. For example, Cox Automotive runs the largest whole sale auto auction service (Manheim Auctions) and one of the largest automobile dealer financing services (NextGear Capital), neither of which is at issue.

During discussions regarding CDK's written discovery requests, Cox Automotive agreed to search the files of Mr. Schwartz for responsive documents while reserving its rights to oppose any deposition of Mr. Schwartz. Of the 20,281 documents produced by Cox Automotive, only 136 documents are from the files of Mr. Schwartz. To date, CDK has deposed only two Cox Automotive employees (Keith Jezek and Paul Whitworth), has not sought a Rule 30(b)(6) deposition, and has not sought to depose any other Cox Automotive employees other than Mr. Schwartz. Mr. Jezek is the President of the Retail Solutions Group, which is the division of Cox

Automotive that encompasses most of the software solutions at issue in this litigation.[1] Mr. Whitworth is a Senior Vice President in the Retail Solutions Group. He has served as the General Manager (the highest ranking executive responsible for day-to-day management) of two Cox Automotive solutions at issue: Xtime and Kelley Blue Book. Mr. Whitworth also served as the General Manager of Dealertrack Dealer Management System ("DMS"), which competes with the DMS offered by CDK and Reynolds.

CDK seeks to depose Mr. Schwartz about his "role in Cox's sales, marketing, and other relevant business dealings with defendants and others in this case including, but not limited to his involvement in Cox's marketing strategy, the acquisition of DealerTrack, and direct communications with Defendants and Cox's dealer customers." Ex. A (Email from B. Miller to D. Dorris (Feb. 19, 2019)). On February 25, 2019, counsel for Cox Automotive and CDK conferred regarding the deposition of Mr. Schwartz and were unable to reach agreement.

## ARGUMENT

### I. Legal Standard

"[T]he court must limit" discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Upon a showing of good cause, a court may issue a protective order to shield a party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "[T]he court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and

---

[1] Cox Automotive has brought suit on behalf of the following solutions: Autotrader.com, Dealer.com, Dealertrack Financing & Insurance ("F&I"), HomeNet, Kelley Blue Book, vAuto, VinSolutions, and Xtime. Each of these solutions is presently overseen by Mr. Jezek, though at various points of the relevant period, Autotrader.com, Dealer.com, and Kelley Blue Book were part of a division that did not report to Mr. Jezek.

taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (internal quotation marks and citation omitted).

Courts apply extra scrutiny to depositions of high-ranking executives because of the potential for harassment and because of the burden of presenting an executive for a deposition on issues that the executive may have scant first-hand knowledge. *See Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *2 (N.D. Ill. Dec. 7, 2017); *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment."). Accordingly,

> the Court may protect a high level corporate executive from the burdens of a deposition when any of the following circumstances exist: (1) the executive has no unique personal knowledge of the matter in dispute; (2) the information sought from the executive can be obtained from another witness; (3) the information sought from the executive can be obtained through an alternative discovery method; or (4) sitting for the deposition is a severe hardship for the executive in light of his obligations to his company.

*Murillo v. Kohl's Corp.*, 2016 WL 6090862, at *2 (E.D. Wis. Oct. 18, 2016).

## II.  There Is Good Cause To Bar The Deposition of Mr. Schwartz

### A.  The Requested Deposition of Mr. Schwartz Has Little Probative Value

The central issue in this litigation is whether CDK and Reynolds engaged in anticompetitive conduct – including by conspiring to eliminate competition from independent data integrators – and whether CDK's and Reynolds's actions were justified by procompetitive benefits (to the extent such considerations are legally relevant). *See* Dkts. 176 (Authenticom opinion), 505 (Cox Automotive opinion), 504 (AutoLoop opinion), 425 (MVSC opinion), 507

(Dealer Class opinion). Because those issues concern CDK's and Reynolds's conduct and their motivations, the relevant evidence will be principally in the possession of CDK and Reynolds. By contrast, the probative evidence in Plaintiffs' possession is generally limited to evidence of the harm they have suffered as a result of CDK's and Reynolds's conduct.[2]

CDK does not seek to depose Mr. Schwartz about CDK's and Reynolds's conduct or motivations or even about the harms suffered by Cox Automotive. Instead, CDK seeks to depose Mr. Schwartz about "his involvement in Cox's marketing strategy, the acquisition of DealerTrack, and direct communications with Defendants and Cox's dealer customers." Ex. A. As an initial matter, the vagueness of these deposition topics is reason enough to grant a protective order to protect Cox Automotive from undue burden and harassment. *See Berning v. UAW Local 2209*, 242 F.R.D. 510, 514 (N.D. Ind. 2007) (granting a protective order where the party seeking the deposition was "rather evasive about exactly what information she hopes to gain" from the apex witness). In any case, as set forth below, these broad deposition topics are (at best) marginally relevant to this litigation, and Mr. Schwartz does not have unique knowledge about them. Tellingly, only 136 of the 20,281 documents produced by Cox Automotive came from Mr. Schwartz's files. For comparison, 2,659 and 6,678 documents were produced from the files of the other two deponents (Mr. Jezek and Mr. Whitworth), respectively.

**Marketing Strategy.** Defendants have not explained what marketing strategy they seek to question Mr. Schwartz about, nor what relevance that undefined marketing strategy could have to this litigation. And even if Cox Automotive's marketing strategy was relevant in some respect, Mr. Schwartz would not have unique personal knowledge. Cox Automotive has a

---

[2] CDK has asserted counterclaims against Cox Automotive, but it does not seek deposition testimony from Mr. Schwartz regarding its counterclaims.

███████████████████████████████. Ex. B (Jezek Tr.) at 226. The shared marketing group reports to Cox Automotive's Chief Marketing Officer, who in turn reports to Mr. Schwartz. ██

████████████████████████████████████████████████████████████████████████

████████████ *See* Ex. C (Whitworth Tr.) at 133 ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. Accordingly, marketing group personnel and the individuals with whom they have collaborated in a specific business unit would have relevant knowledge about particular "marketing strategies." Mr. Schwartz would not have any unique personal knowledge to add.

**Dealertrack Acquisition.** In 2015, Cox Automotive acquired Dealertrack, Inc., which owned two of the software solutions now at issue in this litigation, Dealertrack F&I and Dealer.com. Dealertrack, Inc. also owned a DMS that it offered to dealers and that competes with the DMS offered by CDK and Reynolds. This transaction was reviewed and approved by the Department of Justice Antitrust Division. In connection with that merger review, Cox Automotive provided the Department of Justice with "studies, surveys, analyses and reports which were prepared by or for any officer(s) or director(s) . . . for the purpose of evaluating or analyzing the acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets." Antitrust Improvements Act Notification and Report Form at Item 4(c) (Feb. 4, 2018). Cox Automotive has already produced those documents to CDK. In addition, CDK has deposed Mr. Jezek and Mr. Whitworth regarding the acquisition. *See*, *e.g.*, Ex. B (Jezek Tr.) at 156-57, 173-88; Ex. C (Whitworth Tr.) at 45-46, 76, 161-64, 209-10. CDK has not identified any additional personal knowledge that Mr. Schwartz may have.

Based on the depositions of Mr. Jezek and Mr. Whitworth, it appears CDK is most interested in evidence about the competitiveness of Dealertrack DMS as compared to Reynolds's and CDK's DMS.  CDK has already deposed Mr. Whitworth (who was the general manager of Dealertrack DMS) and Mr. Jezek (to whom Mr. Whitworth reports) on this topic.  *See* Ex. C (Whitworth Tr.) at 62-72, 86-87, 141-50, 203-05; Ex. B (Jezek Tr.) at 31-36, 217-27, 268-81.  In his role as President of Cox Automotive, however, Mr. Schwartz is removed from the day-to-day operations of Dealertrack DMS and therefore has no additional "unique or specialized knowledge."  *Craig & Landredth, Inc. v. Mazda Motor of Am., Inc.*, 2009 WL 103650, at *2 (S.D. Ind. Jan. 12, 2009).  Indeed, neither Mr. Jezek nor Mr. Whitworth identified Mr. Schwartz as someone who would be better positioned to answer CDK's questions.  *See*, *e.g.*, Ex. C (Whitworth Tr.) at 23, 96-97, 133 (identifying individuals or departments other than Mr. Schwartz as having relevant knowledge); Ex. B (Jezek Tr.) at 35-36, 85-86, 155 (same); *see also Nucap Indus.*, 2017 WL 6059770, at *2 (granting a protective order where "no other witnesses have suggested that [the apex executive] was involved with, or has knowledge regarding, the central issues in the case").  Having already deposed two senior executives at Cox Automotive regarding Dealertrack DMS (Mr. Jezek and Mr. Whitworth), it would be duplicative and unduly burdensome to depose an even more senior executive (Mr. Schwartz).  *See In re Yasmin & Yaz*, 2011 WL 3759699, at *6 (S.D. Ill. Aug. 18, 2011) ("[I]t seems any information sought from these [apex] witnesses has been obtained (or will be obtained) through other deponents and would be duplicative.") (internal citation omitted).

*Murillo v. Kohl's Corporation* is instructive.  In that case, the plaintiff alleged that the Kohl's department store's pricing announcements constituted false advertising and sought to depose Kohl's Chief Merchandising and Customer Officer.  The court granted a protective order

because, "despite [her] role in overseeing 'merchandising,' 'planning and allocation,'" and related areas of the company, "the plaintiffs present[ed] no basis from which the Court can conclude that [the Chief Merchandising Officer] has any 'specialized' or 'unique' knowledge about the manner in which the defendants price their merchandise." 2016 WL 6090862, at *3. Mr. Schwartz – as President – is even further removed from the operation of Dealertrack DMS.

**Communications with Defendants and Dealers.** Defendants do not specify what communications they seek to question Mr. Schwartz about nor how those communications would be relevant to this litigation. Whatever occasional communications Mr. Schwartz may have had with CDK and Reynolds and specific dealers are at best "marginally relevant" to this litigation and do not justify Mr. Schwartz's deposition. *Craig & Landreth*, 2009 WL 103650, at *2. Moreover, the extent of Mr. Schwartz's communications with CDK, Reynolds, and dealers is limited. ███████████████████████████████████████████████

███████████████████████████ *See* Ex. B (Jezek Tr.) at 140-41. And although Mr. Schwartz occasionally communicates with dealers, his communications are much less frequent than sales staff who interact with Cox Automotive's dealer customers on a daily basis.

**B.     Less Burdensome Means To Obtain Evidence Are Available To CDK**

To the extent CDK's requested deposition topics are relevant, "less burdensome channels of discovery have been available to [CDK] to gather information on the topics at issue." *Murillo*, 2016 WL 6090862, at *3. Most notably, Defendants have been allotted 30 depositions but have only taken two of Cox Automotive and have not yet issued a deposition notice for a Rule 30(b)(6) deposition of Cox Automotive. There are many Cox Automotive witnesses who would be much more likely to have relevant knowledge on the deposition topics at issue than Mr. Schwartz, including the marketing staff who would have been involved in particular "marketing

strategies," individuals who have been involved in the day-to-day management of the Dealertrack businesses (such as Mr. Whitworth), individuals responsible for negotiating agreements with Defendants, and sales personnel who would have regular contact with Cox Automotive's dealer customers. CDK has yet to explore these sources of discovery, which are likely to be far more productive than a deposition of Mr. Schwartz. *See Patterson*, 281 F.3d at 682 (affirming district court's refusal to compel a deposition of a high-ranking executive in part because of plaintiff's "refusal to avail herself of other reasonably available means of discovery"); *Berning*, 242 F.R.D. at 513 (issuing protective order for apex executive after defendant chose to depose only one of the three assistants the defendant made available); *Nucap Indus.*, 2017 WL 6059770, at *3 ("[C]ompleting depositions of lower-ranking . . . employees first could result in more efficient depositions of higher-level witnesses later, if permitted.").

## II. CDK's Reliance On The Depositions Of Other Executives Are Inapposite

CDK has attempted to justify the deposition of Mr. Schwartz by noting that the CEOs of other parties have been deposed. But other parties' willingness to make their chief executives available for deposition has no bearing on whether Mr. Schwartz should be deposed. Indeed, the circumstances of these other CEOs are easily distinguishable. Unlike Mr. Schwartz, Authenticom's CEO Steve Cottrell, Reynolds's CEO Robert Brockman, and CDK's former CEO Steve Anenen each possess evidence regarding the conspiracy that is central to this litigation. Mr. Cottrell has already testified about conversations he had with CDK and Reynolds employees in which those employees disclosed the existence of the conspiracy. *See Authenticom, Inc. v. CDK Global, LLC*, Dkt. 164, at 138-143 (W.D. Wis. July 5, 2017) (testimony at preliminary injunction hearing regarding conversations with Robert Schaefer and Dan McCray). Mr. Brockman personally ███████████████████████████████████████

███████████████████████████████████████████████████████████. *See* Ex. D (Brockman Tr.) at 74-75, 82-89; Ex. E (PX 642); Ex. F (PX 646); Ex. G (PX 677). And Mr. Anenen also personally ████████████████████████████████ *See* Ex. H (CDK-2182930); Ex. I (PX 643), Ex. J (PX 645). MVSC's CEO Don Armstrong oversees a company of fewer than 200 employees and therefore has more direct involvement relevant to this litigation.

Notably, CDK has refused to make Brian MacDonald, who was CDK's CEO from 2016 to 2018, available for a deposition unless Cox Automotive makes Mr. Schwartz available for a deposition. *See* Ex. A. CDK has argued that Mr. MacDonald was "not involved in the day-to-day operations of the aspects of the business at issue in this litigation" and should not be deposed. *See* Ex. K (Letter from M. Provance to M. Nemelka (June 12, 2018)) at 2 n.4. If that were true (which Plaintiffs do not concede), then Mr. MacDonald and Mr. Schwartz would be similarly situated, and CDK's refusal to make Mr. MacDonald available for deposition would be inconsistent with their request to depose Mr. Schwartz.

## CONCLUSION

For the foregoing reasons, the Court should issue a protective order precluding the deposition of Mr. Schwartz.

Dated: February 28, 2019

                                        Respectfully submitted,

                                        */s/ Derek T. Ho*
                                        Derek T. Ho
                                        **KELLOGG, HANSEN, TODD,**
                                            **FIGEL & FREDERICK, P.L.L.C.**
                                        1615 M Street, NW, Suite 400
                                        Washington, D.C. 20036
                                        (202) 326-7900
                                        dho@kellogghansen.com

                                        *Counsel for Plaintiffs Cox Automotive, Inc.,*
                                        *Autotrader.com, Inc., Dealer Dot Com, Inc.,*
                                        *Dealertrack, Inc., HomeNet, Inc.,*
                                        *Kelley Blue Book Co., Inc., vAuto, Inc.,*
                                        *VinSolutions, Inc., and Xtime, Inc.*

**CERTIFICATE OF SERVICE**

      I, Derek T. Ho, an attorney, hereby certify that on February 28, 2019, I caused a true and correct copy of the foregoing **COX AUTOMOTIVE, INC., ET AL.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER TO PREVENT THE DEPOSITION OF SANDY SCHWARTZ** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

      */s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com