IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>**This Document Relates To:**<br><br>**THE DEALERSHIP CLASS ACTION** | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**DEALERSHIP CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM DEFENDANTS' PRIVILEGE LOGS AND TO COMPEL DISCOVERY REGARDING DRAFTING OF AGREEMENTS**

# TABLE OF CONTENTS

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 1

    A. **Privilege Logs** ........................................................................................................... 1

    B. **Defendants' Implicit Waiver of Privilege over the Agreements** ..................................... 4

III. ARGUMENT ..................................................................................................................... 5

    A. **Disclosure of Purportedly Privileged Information Beyond Necessary Employees** ...... 6

        1. **Documents Sent to Numerous Recipients** ............................................................... 6

        2. **Email Distribution Lists** .......................................................................................... 7

    B. **Disclosure to Third-Party Advisors, Consultants, and Agents** ..................................... 7

    C. **Advice Not Predominately Legal in Nature** ................................................................. 10

    D. **Implicit Waiver of Privilege** ........................................................................................ 11

IV. CONCLUSION ................................................................................................................. 13

## I. INTRODUCTION

For the last few months, Dealership Class Plaintiffs ("Dealership Plaintiffs") and Defendants CDK Global, LLC ("CDK") and The Reynolds & Reynolds Company ("Reynolds") (collectively, "Defendants") have been in negotiations regarding certain deficiencies in Defendants' privilege logs. Defendants have failed to meet their burden to establish privilege for a number of entries on their privilege logs. These include entries reflecting emails sent to a large number of recipients, emails sent to unidentified email distribution lists, emails sent to third party consultants, and entries that do not describe predominately legal advice. Defendants should be compelled to produce these documents.

In addition, through their reliance in this litigation on a provision of the Data Exchange Agreement that was drafted by counsel for Defendants, Defendants have implicitly waived privilege related to the drafting of the Data Exchange Agreement, the 3PA Agreement, and the Reynolds Interface Agreement (collectively, "Agreements"). Defendants should be compelled to produce any and all withheld documents related to the drafting of the Agreements, amend their written discovery responses to the extent they omit formerly privileged information about the Agreements, and allow witnesses to testify about their communications with counsel related to the drafting of the Agreements.

## II. BACKGROUND

### A. Privilege Logs

Dealership Plaintiffs served their initial detailed challenges to Reynolds' and CDK's privilege logs on December 26, 2018. In letters and the accompanying detailed challenges, Dealership Plaintiffs raised several issues, some of which have been successfully resolved. However, Dealership Plaintiffs and Defendants have reached an impasse on the following issues: (1) entries containing emails sent to large numbers of individuals, indicating that purportedly

privileged information was likely distributed beyond the scope of those who needed it, thus waiving privilege; (2) entries containing communications were sent to email "distribution lists" where the recipients are unidentified, therefore making it impossible for Dealership Plaintiffs to properly assess Defendants' claim of privilege; (3) entries containing communications that were disclosed to third parties, thus waiving privilege; and (4) entries that appear to involve communications involving primarily business advice as opposed to legal advice. *See* Declaration of Daniel J. Nordin ("Nordin Decl."), Exhibits A & B. Reynolds first responded to Dealership Plaintiffs' challenges by letter on January 4, 2019. *See id.*, Ex. C. Reynolds claimed that its log descriptions were adequate with respect to email distribution lists and entries which Dealership Plaintiffs identified as not describing predominately legal advice. CDK responded to Dealership Plaintiffs' challenges by letter on January 7, 2019. *Id.*, Ex. D. CDK claimed that certain third parties were agents retained by CDK "for the purpose of obtaining or providing legal advice." *Id.* CDK indicated it was further evaluating privilege entries identified by Dealership Plaintiffs involving third parties. Regarding distribution lists, CDK provided the initial response that "based on CDK investigation to date, none of [the distribution lists] include non-CDK employees." *Id.*

The Parties subsequently met and conferred, and ultimately agreed on a timeline to provide revised privilege logs and additional information. On the email distribution list issue, Dealership Plaintiffs agreed to a compromise that included the approximate number of individuals on each email list and the general purpose of each list. Defendants phrased the email distribution compromise as follows: "defendants will provide the number of current members of each group email address that is challenged in dealership plaintiffs' excel chart, along with a brief description of the current general purpose of the group." *See* Nordin Decl., Ex. E. The Parties did not discuss how to handle email distribution lists that were no longer in use.

2

When CDK produced its revised privilege log on February 8, 2019, it indicated three distribution lists currently had zero individuals because they were "no longer in use." *See id.*, Ex. F. The two distribution lists still at issue are ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.[1] *Id.* CDK asserted that a number of third parties identified on its privilege log were hired by CDK and were necessary for the facilitation of legal advice. Dealership Plaintiffs provided their amended challenges to CDK's revised log on February 15, 2019. *Id.*, Ex. H. Dealership Plaintiffs objected that CDK had not established the necessity of sending certain purportedly privileged communications to a large number of recipients. Dealership Plaintiffs further objected that CDK had not established why its various third-party consultants and advisors were necessary for the provision of legal advice. Dealership Plaintiffs also noted that there were a number of entries involving communications that, as described, appeared to involve predominately business, rather than legal, advice. Finally, concerning the three email distribution lists that were no longer in use, Dealership Plaintiffs requested an approximate number of the recipients on the lists when they were in use, and the general purpose of each list during the time the lists were in use.

Reynolds provided its revised privilege log on February 8, 2019, along with a description of the email distribution lists appearing on Reynolds' privilege log. However, two of these email distribution lists, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬", did not include useful information because they were "[n]ot currently used." *See* Nordin Decl., Ex. H. Dealership Plaintiffs provided their amended challenges to Reynolds' revised privilege log on

---

[1] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

3

February 15, 2019, requesting information on the email distribution lists not currently used and identifying entries that, as described, appeared to involve predominately business, rather than legal, advice. *See id.*, Ex. I.

The Parties met and conferred by telephone on February 21, 2019. During that meet and confer, Defendants flatly refused to provide *any* information regarding the email distribution lists that were no longer in use. Despite the fact that the Parties never discussed the issue of distribution lists that were no longer in use, Defendants stated that the terms of the agreement to provide "current" information absolved them from providing any additional information. CDK also indicated that it was reviewing the entries Dealership Plaintiffs challenged as describing advice not predominately legal in nature and was still considering whether it would provide updates to its privilege log. Reynolds indicated that it would not be revising its privilege log entries that Dealership Plaintiffs challenged on this ground.

### B. Defendants' Implicit Waiver of Privilege over the Agreements

In CDK's motion to dismiss the Dealership Plaintiffs' Consolidated Complaint, CDK directly relied on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

4

On January 29, 2019, counsel for Plaintiffs informed Defendants that it was their position that Defendants had waived any claims of privilege over the Agreements by affirmatively relying on ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ language in disputing Dealership Plaintiffs' allegations and, therefore, Plaintiffs "are entitled to production of all responsive discovery concerning the Agreements, even if such discovery could otherwise be deemed privileged." *See* Nordin Decl., Ex. Q. The Parties subsequently met and conferred on the issue, and on February 26, 2019, Defendants provided a written a response stating they disagreed that privilege had been waived. *See id.*, Ex. R.

### III. ARGUMENT

In the Seventh Circuit, the attorney-client privilege applies only when the party asserting the privilege establishes:

> (1) that legal advice of any kind was sought (2) from a lawyer in his capacity as such, (3) the communications related to that purpose, (4) they were made in confidence (5) by the client and/or his agent, (6) were at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless waived.

*Glenwood Halsted LLC. v. Vill. of Glenwood*, No. 11-CV-6772, 2013 WL 140794, at *1 (N.D. Ill. Jan. 11, 2013) *citing United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991). The party claiming privilege has the burden of establishing all of the essential elements of the privilege. *United States v. BDO Seidman, LLP*, 337 F.3d 802, 811 (7th Cir. 2003); *Glenwood Halsted*, 2013 WL 140794, at *2 ("The burden of establishing the essential elements of the attorney-client privilege, including the fact that the document was not disclosed to non-privileged recipients, rests with Defendants, as the party asserting the privilege"). Further, a party claiming privilege must provide sufficient information to "enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

A. **Disclosure of Purportedly Privileged Information Beyond Necessary Employees**

"[I]n the corporate context, the attorney-client privilege extends only to an employee who communicates with counsel at the direction of corporate superiors regarding matters within the scope of the employee's duties for the purpose of securing legal advice. Communications going outside that boundary can waive the privilege." *United States ex rel. McGee v. IBM Corp.*, No. 11 C 3482, 2017 WL 1232616, at *2 (N.D. Ill. April 4, 2017) (citation omitted). It is well-established that "the sharing of privileged documents with employees who do not need the information waives the privilege." *Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10 C 461, 2012 WL 1831517, at *2 (N.D. Ill. May 18, 2012) citing *Muro v. Target Corp.*, No. 04-6267, 2006 WL 3422181, at *4 (N.D. Ill. Nov. 28, 2006).

1. **Documents Sent to Numerous Recipients**

There is no precise numerical limit on the number of employees who can be within the sphere of corporate privilege, and "privilege can extend to any employee who communicates with counsel at the direction of her superiors, regarding matters within the scope of her duties." *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007). However, the greater number of recipients of a purportedly privileged communication, the greater the likelihood that the recipients of that communication include individuals who are beyond the "need to know" sphere — *i.e.*, whose duties within the organization require him or her to know the privileged information. CDK has multiple entries on its privilege log where purportedly privileged information was sent to as many as 59 recipients. In order to assess these claims of privilege, Dealership Plaintiffs requested that CDK provide some indication as to why it was necessary to distribute these purportedly privileged communications to such large numbers of recipients. Because CDK has refused to provide the information necessary to assess these claims of privilege, and the burden to establish this privilege

is on CDK, CDK should be required to produce these documents. *See* Nordin Decl., Ex. J (listing relevant privilege log entries).

### 2. Email Distribution Lists

When a privilege log includes email distribution lists and does not identify all the people on those lists, it "represents a serious defect in the privilege log; without the identities and job descriptions of the persons on the distribution lists, there is no way for the opposing party to assess whether they are within the sphere of corporate privilege, as is required by Federal Rule of Civil Procedure 26(b)(5)(A)." *Muro*, 250 F.R.D. at 364.

As discussed in *Muro*, Dealership Plaintiffs would have been entirely justified in requesting a complete accounting of every individual on each email distribution list appearing on Defendants' logs. However, in an effort to compromise, Dealership Plaintiffs agreed to accept only an approximation of the number of individuals on each distribution list and the general purpose of each list. Now, Defendants have refused to provide even that with respect to the four distribution lists left at issue, hiding behind an artificially technical "gotcha" distortion of the compromise agreement Dealership Plaintiffs entered in good faith. Having failed to cure this "serious defect" in their privilege logs, Defendants should now be required to produce the subject documents. *See* Nordin Decl., Exs. K & N (listing relevant privilege log entries).

### B. Disclosure to Third-Party Advisors, Consultants, and Agents

"Distribution of materials to third parties outside the company would obviously, with rare exceptions, result in a waiver." *United States ex rel. McGee v. IBM Corp.*, No. 11 C 3482, 2017 WL 1232616, at *2 (N.D. Ill. Apr. 4, 2017); *Motorola Solutions, Inc. v. Hytera Comms. Corp.*, No. 17 C 1973, 2018 WL 1804350, at *4 (N.D. Ill. April 17, 2018) ("Thus, statements made to

7

8

one's attorney in the presence of a third-party non-lawyer, who is not necessary to the obtaining or giving of legal advice will result in a waiver of the privilege").



As already discussed *supra*, attorney-client privilege applies only where the communication is for the purpose of securing legal advice and relates to matters within the scope of an employee's duties, and sharing privileged information with employees who do not need that information waives the privilege. *McGee*, 2017 WL 1232616, at *2; *Pactiv Corp.*, 2012 WL 1831517, at *2. For this reason, the party claiming privilege must provide an adequate description

8

of the recipients' job title or role so that the party opposing can assess whether the communication was properly within the gambit of the recipients' roles within or for the organization. *See Muro*, 250 F.R.D. at 364–65 (holding that providing insufficient information regarding job titles of recipients on communications can "make it difficult for an opposing party to assess the applicability of privilege; it's hard to tell whether an individual . . . is being contacted concerning matters within her employment duties or not"). This is analogous to the present situation as CDK has not explained why any of these third parties were necessary participants in communications involving, or discussing, the provision of legal advice.

CDK's assertions of privilege are even more dubious regarding its public relations and communications advisors. "It may be that the modern client comes to court as prepared to massage the media as to persuade the judge; but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000). Similarly, "public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine . . . ." *Id.* Granted, an attorney's communications with a public relations consultant may qualify for work product protection if "the public relations firm needs to know the attorney's strategy in order to advise as to public relations, and the public relations impact bears, in turn, on the attorney's own strategizing as to whether or not to take a contemplated step in the litigation itself and, if so, in what form." *Id.*; *see also Amway Corp. v. Proctor & Gamble Co.*, No. 1:98-CV-726, 2001 WL 1818698, at *6–8 (W.D. Mich. Apr. 3, 2001) (rejecting work product protection for certain public relations documents); *Burke v. Lakin Law Firm, PC*, No. 07-CV-0076-MJR, 2008 WL 117838, at *3 (N.D. Ill. Jan. 7, 2008) (citing *Calvin Klein Trademark Trust*, 198 F.R.D. at 55; *Amway Corp.*, 2001 WL 1818698, at *6–8). As with the other third-party

9

consultants over whose communications CDK has claimed privilege, CDK has not established that its communications with public relations and communications consultants qualify for attorney-client privilege or work product protection. CDK should therefore be required to produce its entries related to communications with these third parties. Nordin Decl., Ex. L (listing relevant privilege log entries).

### C. Advice Not Predominately Legal in Nature

"When an attorney provides both legal and non-legal services to a client, the legal aspect must predominate in the communication under review in order for it to be protected by the attorney-client privilege." *Moore v. Bd. of Tr*s., No. 09 C 4479, 2010 WL 4703859, at *3 (N.D. Ill. Nov. 8, 2010) (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) ("[T]he privilege will not apply where the legal advice is incidental to business advice.")). "[P]rivilege is limited to situations in which the attorney is acting as a legal advisor—business and financial advice are not protected." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) (citing *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)). "Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Id.* (quoting *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987)). "[T]he inclusion of general counsel does not transform all business discussions into privileged attorney-client communications." *Id.*; *see also Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) (quoting *In re Matter of Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988)) ("The purpose of the communication must be the obtaining or providing of legal advice, not a business discussion. 'A business that gets marketing advice from a lawyer does not acquire a privilege in the bargain . . . .'").

Both the CDK and Reynolds logs include entries where the descriptions are so vague that they appear to describe the provision of advice that is not predominately legal in nature. Such entries claim legal advice regarding topics including: ███████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████ These types of descriptions at best appear to describe requests for, or provisions of, predominately *business* (not legal) advice. Having failed to establish privilege, CDK and Reynolds should be required to produce the documents reflected in these entries. *See* Nordin Decl., Exs. M & O (listing privilege log entries).

### D. <u>Implicit Waiver of Privilege</u>

Defendants implicitly waived any potential claims of privilege over the drafting of the DEA, the 3PA Agreement, and the Reynolds Interface Agreement (collectively, "Agreements") by repeatedly relying in this litigation on a provision in the DEA stating it "is not intended as a 'covenant not to compete . . .'"

> As opposed to explicit waiver of privilege, waiver by implication
>
> > occurs when a party takes a position in litigation that makes it unfair to protect that party's privileged communications. The implied waiver doctrine ultimately is based on considerations of fairness: that is, a party may not use privilege as a tool for manipulation of the truth-seeking process. The doctrine of waiver by implication reflects the position that the attorney-client privilege was intended as a shield, not a sword.
> >
> > In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials. The party asserting the claim is said to have implicitly waived the privilege. Courts that have imposed waivers under the fairness principle have tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question. Only those documents or portions of documents relating to the claim asserted by the client should be disclosed.

*Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711–12 (N.D. Ill. 2015) (citations omitted).

11

"If [defendant] supports its denial . . . with a contention or evidence that it relied on advice by legal counsel, then it will be deemed to have waived the attorney-client privilege." *Claffey v. River Oaks Hyundai*, 486 F. Supp. 2d 776, 778 (N.D. Ill. 2007).

> Though [defendant] says it does not intend to argue that its personnel *actually* consulted with counsel, its introduction of such documents would leave a fact finder with the distinct impression that [defendant] relied on advice by counsel on the matters at issue in this case. Were [defendant] allowed to create this impression but still maintain its attorney-client privilege, it would in effect be using the privilege as both a shield and a sword, which is not permitted. [defendant] "cannot have it both ways; [it] cannot seek refuge in consultation with counsel as evidence of [its] good faith yet prevent [plaintiffs] from discovering the contents of the communication."

*Id.* (citations omitted) (quoting *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 834 F. Supp. 1008, 1012 (N.D. Ill. 1993)); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, No. 12 CV 50324, 2015 WL 5123652, at *4 (N.D. Ill. Sept. 1, 2015) ("[A] party cannot assert reliance on advice of counsel, but then assert the attorney-client privilege to shield the disclosure of that advice").

By relying on the text of the Agreements, which were drafted by counsel, for their defense, Defendants have put the intent of those agreements at issue. Defendants have used those Agreements as a sword in an attempt to strike down Dealership Plaintiffs' claims, while also using privilege as a shield to prevent Dealership Plaintiffs from adequately testing the true intent behind the Agreements. The scope of the waiver is tailored "to the needs of the opposing party in litigating the claim in question." *Patrick*, 154 F. Supp. 3d at 711–12. Although Defendants have specifically relied on a clause in the DEA, the Agreements were drafted concurrently as three parts of a whole. The proper scope of the waiver therefore encompasses communications with counsel regarding the drafting of all of the Agreements, not only the DEA. There are some documents on Defendants' privilege logs that appear to be related to the drafting of the Agreements, but Dealership Plaintiffs are unable to reliably identify all entries related to the drafting of the Agreements with the

12

descriptions Defendants have provided.[2] *See* Nordin Decl., Exs. S & T. In addition, this waiver also applies to written discovery responses Defendants have submitted, to the extent those responses omitted information regarding the drafting of the Agreements on grounds of privilege. Dealership Plaintiffs should likewise be allowed to question witnesses regarding their communications with counsel related to the drafting of these Agreements.

## IV. CONCLUSION

For the foregoing reasons, Dealership Plaintiffs' Motion should be granted. Defendants should produce the identified documents from their privilege logs because they have not met their burden of establishing privilege. Having implicitly waived privilege, Defendants should also produce any and all withheld documents, and allow discovery, related to Defendants' discussions with counsel regarding the drafting of the Agreements.

DATED: March 1, 2019

Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG TADLERPHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

***Interim Lead Counsel for the Dealership Class***

---

[2] Dealership Plaintiffs also note that this is not, strictly speaking, a privilege log issue. Dealership Plaintiffs are not challenging Defendants' withholding of documents based on an insufficient privilege log, but rather based on their implicit waiver of privilege in the strategic choices they have made in this litigation.

Leonard A. Bellavia (*pro hac vice*)
Steven Blatt
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
dnordin@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (*pro hac vice*)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7 423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C .**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

*MDL Liaison Counsel*

15

## CERTIFICATE OF SERVICE

      I, Peggy J. Wedgworth, an attorney, hereby certify that on March 1, 2019, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM DEFENDANTS' PRIVILEGE LOGS AND TO COMPEL DISCOVERY REGARDING DRAFTING OF AGREEMENTS** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                       */s/ Peggy J. Wedgworth*  
                                                                       Peggy J. Wedgworth