# Exhibit 6

**MAYER·BROWN**

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

**Jessica A. Michaels**
Direct Tel +1 312 701 7121
Direct Fax +1 312 706 8135
jmichaels@mayerbrown.com

January 07, 2019

<u>BY E-MAIL</u>

Michael N. Nemelka
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, DC 20036

Re: *In re Dealer Management Systems Antitrust Litig.*,
MDL No. 2817

Dear Michael:

I write on behalf of Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") to address certain deficiencies in Authenticom's revised privilege and redaction logs (the "Logs") produced to Defendants on December 6, 2018. In particular, many entries in the Logs do not satisfy Authenticom's burden of establishing privilege under the Federal Rules of Civil Procedure or the Stipulated Order Re: Discovery of Electronically Stored Information (the "ESI Order") (Dkt. 105), which governs discovery matters—including privilege logs—in the above referenced litigation.

Included with this letter are excel spreadsheets that identify various deficiencies with the Logs on an entry-by-entry basis. Defendants are available to meet-and-confer with Authenticom regarding the deficiencies in the Logs on Friday, January 11, 2019 at 1 pm Central. Please let us know if you are available at that time. If not, please propose another time this week that Authenticom is available to discuss the deficiencies in its Logs.

Although the below list is not exhaustive, the Logs are deficient in the following areas:

1. **<u>Vague Descriptions</u>**

The descriptions of the subject matter in many of Authenticom's Log entries are so vague as to be meaningless. The party withholding otherwise discoverable materials under a claim that they are privileged or protected as work product bears the burden of proving that the materials are in fact immunized from discovery. *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003). To meet its burden, the withholding party must describe the nature of the material in such a way that the requesting party can "assess the claim." Fed. R. Civ. Pro. 26(b)(5)(A). As the court explained in *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992):

> The log should . . . describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories,

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Mayer Brown LLP

Michael Nemelka
January 07, 2019
Page 2

> especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the [existence of the claimed privilege or immunity].

Many entries on the Logs fall far short of this basic requirement. For example, AUTH_MDL_PRIV_0032, is described as a "[c]onfidential communication reflecting the provision of legal advice regarding Reynolds." While AUTH_MDL_PRIV_0956, for example, is described as a "[c]onfidential communication reflecting the request for legal advice of Brown*, Dane regarding draft communications." It is simply not possible, based on such oblique descriptions, for Defendants to assess Authenticom's privilege claims. Defendants request that Authenticom supplement the Log descriptions for each entry to meet its burden of establishing privilege.

## 2. Work Product

The work product doctrine "protects from discovery documents and tangible things that are prepared in anticipation of litigation," but "generic descriptions" in the Logs do not establish the privilege. *See RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217, 220 (N.D. Ill. 2013) (internal quotation marks omitted). The party asserting work-product immunity bears the burden of showing the documents are "prepared because an articulable claim, likely to lead to litigation, has arisen," rather than "in the normal course of business for the remote prospect of litigation." *Lockhart v. ExamOne World Wide, Inc.*, No. 2:11-CV-37-JMS-WGH, 2012 WL 243688, at *2 (S.D. Ind. Jan. 25, 2012).

Many Log entries claiming protection under the work-product doctrine appear akin to the "report in anticipation of litigation" that the *Allendale* court provided as an example of an insufficiently vague description. 145 F.R.D. at 88. AUTH_MDL_PRIV_0021, for example, is described as a "[c]onfidential communication compiling information on data access issues at the request of counsel in anticipation of litigation." This is insufficient for Defendants to determine whether the work product "was prepared because an articulable claim, likely to lead to litigation, ha[d] arisen." AUTH_MDL_PRIV_0107, like many other documents, is described as a "[c]onfidential communication reflecting the request for legal advice in anticipation of litigation regarding potential antitrust lawsuit." The vague reference to a "potential antitrust lawsuit" is also insufficient for Defendants to determine whether the work product "was prepared because an articulable claim, likely to lead to litigation, ha[d] arisen." Descriptions providing that a document is a "[c]onfidential communication compiling information at the request of counsel in anticipation of litigation," *see, e.g.*, AUTH_MDL_PRIV_1623, are similarly insufficient.

Authenticom's work product claims fall short of establishing protection under the work product doctrine. To the extent Authenticom continues to assert work product protection over these documents, Defendants request that Authenticom supplement the Log descriptions for each entry to meet its burden of establishing privilege.

Michael Nemelka
January 07, 2019
Page 3

### 3. No Author and/or Recipient Listed

The ESI Stipulation is clear: entries must identify, among other things, the "author" and "recipient(s)" of the document being withheld or redacted. ESI Stip. 18. Yet for many entries, Authenticom's Log fails to do so. AUTH_MDL_PRIV_0650, for example, is described as a "[c]onfidential communication reflecting the provision of legal advice of KHTFF in anticipation of litigation regarding CDK and Reynolds data access issues," but identifies neither the author nor recipient. Similarly AUTH_MDL_PRIV_1703 is described as a "[c]onfidential communication reflecting the request for and the provision of legal advice of counsel in anticipation of litigation regarding data access issues," but the Log does not identify the recipient. For a handful of other Log entries, Authenticom's privilege log that does not identify the sender of the communication. E.g., AUTH_MDL_PRIV_1421, 1669, 1726, 2058. Instead, the author is simply listed as "Unspecified Sender" or "0." Besides contravening the ESI Stipulation, this deficiency prevents Defendants from assessing the applicability of the privilege. *See* Fed. R. Civ. P. 26(b)(5)(A).

For those entries without identified authors and recipients, we ask that Authenticom either correct the deficiency or produce the underlying document.

### 4. Information Disclosed Outside Authenticom

As you are aware, "disclosure to a third party outside the scope of the privilege generally waives the protection of the attorney-client privilege by destroying the confidential nature of the communication." *LG Elecs. v. Whirlpool Corp.*, No. 08 C 242, 2009 WL 3294800, at *3 (N.D. Ill. Aug. 24, 2009). Based on our review of the Logs, the third-party communications described below may have been inappropriately withheld or redacted.[1] These include:

- *Jeff Van Dongen/Motormindz.* Motormindz is a third-party vendor and customer of Authenticom. Authenticom is claiming an attorney-client privilege over certain communications with employees of Motormindz, including Jeff Van Dongen. *E.g.*, AUTH_MDL_PRIV 1310, 1738. As Motormindz is a third-party, these communications were neither confidential nor protected by the attorney-client privilege.
- *NADA*. Authenticom is claiming a common-interest privilege and work product privilege over a communication with individuals employed by the National Automotive Dealers Association. See AUTH_MDL_PRIV_1636. Defendants do not believe that Authenticom has a colorable common interest with NADA, nor that its communication with NADA (an

---

[1] These listed communications are exclusive of the communications that were the subject of Defendants' previous meet-and-confer with Authenticom, regarding its claim of a broad "common-interest" privilege between Authenticom and a half-dozen other DMS and/or application providers, including Dominion Enterprises, Advent, ELeads, Autoloop, and others, that dates back at least to May 2015. *See, e.g.,* AUTH_MDL_PRIV 463, 539, 651. Though we believe that this privilege claim is improper, we understand that we are an impasse on the issue and will move the Court to review these documents *in camera*.

Mayer Brown LLP

Michael Nemelka
January 07, 2019
Page 4

- organization that does not represent Authenticom and for which Authenticom is not a member), is protected by any type of privilege.
- *BMO Harris*. BMO Harris is a third-party lender of Authenticom. Though it may have a rooting interest in this lawsuit, its interests, as a creditor, are obviously not identical to the interests of Authenticom. Nevertheless, Authenticom has claimed both an "attorney-client" and a "common interest" privilege with BMO Harris and withheld a number of communications on the basis of that purported privilege. *E.g.*, AUTH_MDL_PRIV_0296, 1609. It has also redacted certain communications with BMO Harris. *E.g.*, AUTH_00471747.
- *Team Velocity*. Team Velocity is a third-party vendor and customer of Authenticom. Authenticom is claiming an attorney-client privilege over certain communications with employees of Team Velocity. E.g., AUTH_MDL_PRIV_0308, 446. As Team Velocity is a third-party, these communications were neither confidential nor protected by the attorney-client privilege.
- *Edmunds*. Edmunds is another third-party vendor. Authenticom has withheld a communication with employees of Edmunds on the basis of a purported attorney-client privilege between Edmunds and Authenticom's in-house counsel, Dane Brown. AUTH_MDL_PRIV 001. As Edmunds is a third-party, it does not share any attorney-client privilege with Authenticom and, as best as we can tell, has never been represented by Dane Brown.
- *View Point*. There are a couple of communications with a woman named Brandi Fletcher at a company called "View Point Touch" listed on Authenticom's privilege log. *E.g.*, AUTH_MDL_PRIV_1241, 0005. As we understand it, View Point Touch is a third-party software developer. As such, these appear to be business communications with a third-party.
- *Davis Polk*. On our previous meet and confer, counsel for Authenticom indicated that Davis Polk never represented Authenticom but rather, only ever represented Dominion Enterprises. While Authenticom has (in our opinion, wrongly) claimed a common-interest privilege over certain communications with Dominion—an issue on which we have already conferred and reached an impasse—it has additionally claimed an attorney-client privilege over communications solely with attorneys at Davis Polk. *E.g.*, AUTH_MDL_PRIV_1886. As Davis Polk never represented Authenticom, it cannot share an attorney-client privilege with Authenticom.
- *Gilbert Hale*. Mr. Hale appears to be the owner of a third-party data integrator and competitor of Authenticom, New Freedom Data Resources. *E.g.*, AUTH_MDL_PRIV_0392, 1676. Nevertheless, Authenticom has claimed a "common interest" privilege, an "attorney-client" privilege, and a "work product" privilege over Mr. Cottrell's communications with him. It is not clear what common interest, if any, Mr. Hale shares with Mr. Cottrell and/or Authenticom.
- *Lori Zimmer*. Authenticom has withheld and/or redacted a number of communications with, or that include, a Lori Zimmer. *E.g.*, AUTH_MDL_PRIV_0067, 0369, 0517; AUTH_00469820-22. According to her website, Ms. Zimmer is a third-party executive

- management coach and/or consultant. Given that role, it seems unlikely that Ms. Zimmer's communications would have been for the purpose of furthering the giving or receiving of legal advice. As such, Defendants believe that most, if not all, of the communications with Ms. Zimmer are likely not privileged.
- *William Lamm*. Authenticom has withheld a communication between various employees of Authenticom and William Lamm, of the Presidio Group, an investment banker. AUTH_MDL_PRIV_0409. Mr. Lamm and the Presidio Group are third-parties, and there is no attorney-client protection for communications between Mr. Lamm and Authenticom.
- *Ron Haggin / Serra USA*. Authenticom has withheld a communication between Steve Cottrell and Ron Haggin, of Serra USA, an automobile dealership group. AUTH_MDL_PRIV_1662. As Serra USA is a third-party dealership, there is no attorney-client protection for communications between Serra USA and Authenticom.
- *Ford Direct*. Authenticom has withheld a communication between Mr. Cottrell and Beth Hill of Ford Direct. AUTH_MDL_PRIV_1567. Ford Direct is a third-party OEM/Vendor. Therefore, Authenticom cannot withhold communications with Ford Direct on the basis of an attorney client-relationship between Ford Direct and Dane Brown, Authenticom's in-house counsel.
- *Autodata / Chrome Data*. Authenticom has withheld a communication with both Craig Jennings of Auto Data and Jamie Kozlik of Chrome Data. AUTH_MDL_PRIV_0640. These are third-parties and therefore communications with them are not protected by an attorney-client privilege.
- *Patrick Wackerly*. One of the communications Authenticom has withheld is with Patrick J. Wackerly, then of the litigation finance firm Gerchen Keller. AUTH_MDL_PRIV_1103. Communications with litigation finance firms are generally not subject to attorney-client or common interest privilege protections. *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 731 (N.D. Ill. 2014).
- *Marzena Poniatowska*. Authenticom has listed a couple of communications to or from a Marzena Poniatowska on its privilege log. *E.g.*, AUTH_MDL_PRIV_0102, 1855. On a meet and confer regarding Authenticom's claim of a common interest privilege prior to the Tony Petruzzelli deposition, Defendants asked Authenticom to identify Ms. Poniatowska. Defendants have not heard back on that request. As best as Defendants can tell, Ms. Poniatowska is not an employee of Authenticom.
- *Joseph E. Long*. There is one communication from a "Joseph E. Long." AUTH_MDL_PRIV_0167. The description indicates that it reflects the legal advice of Kellogg Hansen, but we have been unable to identify an attorney at Kellogg Hansen, or an employee of Authenticom, by that name.
- *Chris Gordon / Get Tinder Box*. Authenticom has withheld a handful of communications between Mr. Bryan Anderson, on the one hand, and Chris Gordon or Ashley Creigh from Get Tinder Box. *E.g.*, AUTH_MDL_PRIV_0948. We are unable to identify who Chris Gordon, Ashley Creigh, or Get Tinder Box are, however, it appears these are third-party communications not protected by the attorney-client privilege.

Mayer Brown LLP

Michael Nemelka
January 07, 2019
Page 6

For each entry involving a third party, Authenticom should produce the document or provide a specific justification for not doing so. For instance, for each communication for which Authenticom is claiming a "common interest privilege," please identify the specific common interest Authenticom is claiming. As written, the Logs contain no such justifications.

### 5. Distribution Lists

Authenticom names a distribution list, executives@authenticom.com as a recipient of over 100 communications appearing on the Logs. It is difficult to evaluate the privilege claim as it would apply to an email sent to a list of unidentified recipients. Please confirm that, at least since January 1, 2013, no non-Authenticom employees have received emails through either the Executives@authenticom.com or Leadership@authenticom.com email addresses. If any non-Authenticom employees have received emails through those listservs, please identify them.

Similarly, Authenticom is withholding a communication between Mr. Cottrell and an email address "common_interest_privilege@yahoo.com." AUTH_MDL_PRIV_0338. Authenticom identified this communication as subject to a common interest and work product protection. Please identify who owns the "common_interest_privilege@yahoo.com" account, who authored the email, and what exactly the common interest privilege being claimed is.

*********

We reiterate that the above deficiencies are representative but not exhaustive. Our review of the Logs is ongoing and we reserve our rights to raise challenges to additional entries as necessary.


Sincerely,

*/s/ Jessica A. Michaels*

Jessica A. Michaels

cc:   Plaintiffs' Co-Lead Counsel
      Defendants' Counsel