**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Cox Automotive, Inc, et al. v. CDK Global, LLC*, Case No. 1:18-CV-1058 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 (N.D. Ill.) | |

**DEFENDANT CDK GLOBAL, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD OR REDACTED BY PLAINTIFFS LOOP, LLC d/b/a AUTOLOOP AND COX AUTOMOTIVE, INC. OR, IN THE ALTERNATIVE, FOR AN *IN CAMERA* INSPECTION OF THE CHALLENGED DOCUMENTS**

**PUBLIC VERSION**

## INTRODUCTION

Plaintiffs Loop, LLC, d/b/a AutoLoop ("AutoLoop") and Cox Automotive, Inc ("Cox") continue to improperly withhold relevant and important discovery based on unsupported assertions of the attorney-client privilege and the work product and common interest doctrines. Pursuant to Fed. R. Civ. P. 37 and Local Rule 37.2, CDK now moves for an order compelling AutoLoop and Cox to produce the improperly-withheld documents or, in the alternative, for an *in camera* inspection of such documents by the Court.

## BACKGROUND

AutoLoop and Cox's original privilege logs, provided to Defendants on December 5, 2018,[1] claimed that, respectively, 1,445 and 4,442 documents were either partially or completely privileged. While a number of AutoLoop's privilege claims were suspect, Cox's claims were particularly overreaching, as it had only produced a *total* of 12,368 documents (1,233 of which had redactions). In other words, Cox initially claimed that nearly *30%* of the documents it had identified as relevant to this litigation were privileged.

On January 9, 2019, CDK challenged 531 inadequate entries on AutoLoop's logs and 2,785 entries on Cox's log, identifying numerous deficiencies in many of the entries, including vagueness, failure to satisfy the elements of the work-product doctrine, failure to identify authors and recipients, and apparent disclosure of purportedly privileged communications to third parties. *See* Exhibit 1 (01/09/2019 Letter from J. Michaels to D. Ho re: AutoLoop); Exhibit 2 (01/09/2019 Letter from J. Michaels to D. Dorris re: Cox).

---

[1] The parties initially exchanged privilege logs on November 2, 2018 pursuant to Paragraph B(8) of the Case Management Order (Dkt. 166). However, before meet-and-confer discussions about Cox and AutoLoop's November 2 logs began, they each served amended logs on December 5, 2018.

*AutoLoop*. Among the most glaring deficiencies in AutoLoop's privilege logs[2] are almost 140 entries reflecting communications with third parties from 2013 to 2017, including AutoLoop's data extraction vendor Superior Integrated Solutions ("SIS"), other competing software vendors, and those entities' outside law firms. Because the disclosure of communications to third parties ordinarily waives any privilege, CDK requested that "[f]or each entry involving a third party, AutoLoop should produce the document or provide a specific justification for not doing so." Exhibit 1 at 4. Where AutoLoop's privilege log entries vaguely referred to a "common interest," moreover, CDK asked AutoLoop to "identify the specific common interest AutoLoop is claiming," because "[a]s written, the Logs contain no such justifications." *Id.* AutoLoop's response provided no explanation whatsoever, however. *See* Exhibit 3 at 4 (01/18/2019 Letter from D. Guarnera to J. Michaels). Nor did AutoLoop furnish any further information about the nature of its "common interest" claims during the meet-and-confer process, despite CDK's specific request that it do so. Exhibit 4 (02/20/2019 Email from J. Coleman to D. Guarnera).

*Cox*. Many of the entries on Cox's privilege log were so vague that CDK could not determine what Cox was claiming, *e.g.*, "Email communication(s) reflecting the request and provision of legal advice regarding guidance with draft correspondence (with attachment(s))." Exhibit 2 at 1-2. Others referred to communications reflecting the "impressions of counsel," without elaboration, or tacked the words "work product" onto descriptions without indicating that there was any pending or contemplated litigation. *Id.* at 3. Meanwhile, many entries on Cox's log failed even to identify the author, sender, or recipient as Paragraph 9(a) of the Stipulated Order re: Discovery of Electronically Stored Information (Dkt. 105) ("ESI Stip.") requires. Finally, almost

---

[2] AutoLoop served two privilege logs. One identifies documents fully withheld from production and the other identifies documents that AutoLoop has partially produced with redactions.

500 entries on Cox's privilege log generically attribute purportedly privileged advice and "impressions of counsel" to the "Cox Legal Department" with no indication of who provided these "impressions." *Id.* at 4.

The meet-and-confer process has addressed some of these deficiencies, but many remain outstanding. After several additional rounds of correspondence and meet-and-confers on January 23 and February 21, 2019, the number of log entries in dispute has narrowed to 154 entries on AutoLoop's revised privilege logs and 1,876 entries on Cox's revised log. *See* Exhibit 5 (Challenges to AutoLoop's Rev. Privilege Log); Exhibit 6 (Challenges to AutoLoop's Rev. Redaction Log); Exhibit 7 (Challenges to Cox's Rev. Privilege Log). As detailed below, there is no basis for either to continue withholding these documents.

## LEGAL STANDARD

The attorney-client privilege protects confidential communications between attorneys and clients for the purpose of providing legal advice. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege extends only to communications made: "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *See LG Elecs. v. Whirlpool Corp.*, No. 08 C 242, 2009 WL 3294800, at *2 (N.D. Ill. Aug. 24, 2009) (citation omitted). "The mere assertion of a privilege is not enough," moreover; "instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003).

The work-product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3). "[T]he threshold determination in any case involving an assertion of the work product privilege … is whether the materials sought to be protected from disclosure were in fact prepared in anticipation of litigation." *Binks Mfg. Co. v. Nat'l Presto Indus.*, Inc., 709 F.2d

1109, 1118 (7th Cir. 1983). And for a document to be created in anticipation of litigation, "[t]here must be a concrete dispute between parties." *Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 898–99 (N.D. Ill. 2018). "The abstract possibility of a hypothetical lawsuit" or "the 'general possibility of litigation' is not enough." *Id.* Nor is "[t]he mere contingency that litigation may result" sufficient. *Id.* (*citing Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006); *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 976 (7th Cir. 1996)).

Federal Rule of Civil Procedure 26(b)(5)(ii) requires privilege log entries to describe the documents in a manner that allows the reader to assess the claim that information that is otherwise discoverable is privileged or subject to some other protection. And the party asserting a privilege or immunity has the burden of establishing all elements of that protection on a document-by-document basis. *Surgery Ctr. at 900 N. Mich. Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 632 (N.D. Ill. 2016) (citing *Univ. of Penn. v. E.E.O.C.*, 493 U.S. 182, 189 (1990); *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).

Courts in this district thus generally require privilege logs to identify, for each document, the date, author, recipient(s), subject matter, and purpose for its production, and to explain why the document is privileged. *See, e.g.*, *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218–21 (N.D. Ill. 2013).[3] "This information must be sufficiently detailed to allow the court to determine whether the party asserting the privilege has discharged its burden of establishing the applicability of the privilege." *Id*. Courts may treat inappropriately asserted and unsupported claims of privilege as a

---

[3] In addition, the ESI Stipulation requires "privilege/redaction logs . . .[to] be detailed enough to enable other parties to assess the applicability of the privilege asserted" and the entries to "identify the custodian, author, recipient(s), date, Bates or production number, privilege and/or doctrine relied upon, the subject matter of the document and provide a description of the Document and/or Document family by type and content consistent with the Federal Rules of Civil Procedure." ESI Stip. ¶ 9(a).

waiver of the claimed protection and order the production of the affected material. *See, e.g., Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010) ("[F]ailure to serve an adequate privilege log may result in a waiver of any protection from discovery. Counsel should not expect that the court will substitute its own review for a proper assertion of privilege.").

## ARGUMENT

### I. AUTOLOOP AND COX HAVE REFUSED TO IDENTIFY SENDERS, AUTHORS, AND/OR RECIPIENTS FOR SEVERAL LOG ENTRIES.

Paragraph 9(a) of the ESI Stipulation requires each privilege log entry to identify, among other things, the "author" and "recipient(s)" of the document being withheld or redacted. AutoLoop and Cox have refused to comply with this requirement for several of their log entries. Even without the ESI Stipulation, failure to provide such basic information dooms any privilege claim. *See, e.g.*, *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013); *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 539 (N.D. Ill. 2000).

### a. AutoLoop waived any privilege as to five documents by failing to provide author and/or recipient information.

AutoLoop's privilege log includes two entries describing documents as "█████████ █████████" without identifying the author or recipient. *See* Exhibit 5 (AL_MDL_PRIV_0155 and AL_MDL_PRIV_0294). Two additional entries on the AutoLoop log describe documents as "█████████" but the entries do not identify the authors. *See id.* (AL_MDL_PRIV_0258 and AL_MDL_PRIV_0837). Another document is described as a "█████████████████" yet the entry fails to identify the recipient(s). *See id.* (AL_MDL_PRIV_0505). Each of these deficient log entries violates the ESI Stipulation and prevents CDK from assessing AutoLoop's privilege and work-product assertions. Moreover, despite repeated requests, AutoLoop still has not provided the missing author or recipient information. *See* Exhibit 1 at 3; Exhibit 4.

5

**b. Cox waived any protection for several documents by failing to provide author and/or recipient information.**

Cox lists one entry on its log—COX_MDL_P0586—as a "███████" document and an "███████████████" without identifying the sender or recipient. Another entry, also flagged as a "█████" and described as an "████████████████"—COX_MDL_P4144—does not identify the recipient. Each of these deficient log entries violates the ESI Stipulation and prevents CDK from assessing the applicability of Cox's privilege and work-product assertions. Moreover, despite repeated requests, Cox still has not provided the missing author or recipient information. *See* Exhibit 2 at 4; Exhibit 8.

In addition, more than 1,000 entries on Cox's revised privilege log that appear to relate to attachments identify neither the author nor, where applicable, the recipient. Instead, these entries direct the reader to other entries on the log that correspond to the attachments' parent documents (in most cases, cover emails). *See* Exhibit 7 (*e.g.*, COX_MDL_P0052). Throughout the meet-and-confer process, CDK has been unable to ascertain whether Cox is asserting that these attachments are independently privileged or is merely withholding them as integral (or "part-and-parcel") to purportedly privileged communications in the parent documents to which they relate. *See, e.g.*, *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009). To the extent Cox is not relying on the part-and-parcel doctrine to withhold these attachments, CDK requests that the Court order Cox to provide author, sender, recipient, and other information required by the ESI Stipulation as needed for CDK to assess the validity of Cox's privilege claims.

**II. AUTOLOOP IS IMPROPERLY WITHHOLDING NUMEROUS DOCUMENTS THAT HAVE BEEN DISCLOSED TO THIRD PARTIES.**

AutoLoop is improperly withholding almost 140 documents shared with various third parties over whom no valid common interest has been established. "[O]rdinarily, statements made by a client to his attorney in the presence of a third person do not fall within the [attorney-client]

privilege, even when the client wishes the communication to remain confidential, because the presence of the third person is normally unnecessary for the communication between the client and his attorney." *Jenkins v. Bartlett*, 487 F.3d 482, 490 (7th Cir. 2007) (citing *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997)). The common interest doctrine applies as an exception to waiver only "where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *Nat'l Union Fire Ins. Co. of Pittsburg, Pa. v. Mead Johnson & Co.*, 2012 WL 28304, *1–2 (S.D. Ind. Jan. 5, 2012) (citing *BDO Seidman*, 492 F.3d at 815–16; *Evans*, 113 F.3d at 1467). For the common interest doctrine to apply: "(1) the parties must be aligned with regard to a common legal interest against a third party; (2) the parties must have agreed to share the privileged information; and (3) the information must remain confidential; *i.e.*, there must be no waiver of the privilege with respect to third parties." *Nat'l Union Fire Ins.*, 2012 WL 28304 at *2.

    a. **Communications with SIS regarding "███████████████"**

Ten entries on AutoLoop's privilege and redaction logs identify emails sent in 2013 by a third party, ███████████, purportedly relaying information from ███████████████████████████████████████████████████████████████ or "███████████████" regarding the same litigation.[4] Nine other entries similarly describe emails to ████.[5] Two other entries identify emails with ███████████████████████.[6] Three log entries for

---

[4] *See* Exhibit 5 (e.g. AL_MDL_PRIV_0050, AL_MDL_PRIV_0066, AL_MDL_PRIV_0153, AL_MDL_PRIV_0255, and AL_MDL_PRIV_0751); Exhibit 6 (AL_MDL_0081475, AL_MDL_0081481, AL_MDL_0081483, AL_MDL_0081485, and AL_MDL_0081571).

[5] *See* Exhibit 5 (AL_MDL_PRIV_0103, AL_MDL_PRIV_0114, AL_MDL_PRIV_0179, AL_MDL_PRIV_0197, AL_MDL_PRIV_0245, AL_MDL_PRIV_0628, and AL_MDL_PRIV_0678); Exhibit 6 (AL_MDL_0081566 and AL_MDL_0081569).

[6] *See* Exhibit 5 (AL_MDL_PRIV_0070 and AL_MDL_PRIV0131).

communications sent from or to █████████████████████████████ merely refer to "legal advice" generally rather than ███████████████████[7] AutoLoop's privilege log also contains four entries for internal communications purportedly involving "████████ ████████████████████████████████████████████████ ████████████████████████████████████████"[8]

AutoLoop has improperly withheld all 26 of these documents. To the extent counsel for AutoLoop was copied on certain communications,[9] any possible attorney-client privilege is waived by their disclosure to ██, a third party. Additionally, the requirements of the work-product doctrine have not been satisfied. While Reynolds and SIS were involved in their own litigation in 2013, *see* Case No. 1:12-cv-848 (S.D. Ohio), AutoLoop was never a party to it. Further, AutoLoop principle Tony Petruzzelli testified that ████████████████████████████ *See* Exhibit 12 at 42:2-43:3 (T. Petruzzelli Dep.). AutoLoop has not shown that an articulable claim involving it had arisen, much less that it and SIS's *legal* interests would have been aligned as to such claim. "[T]he 'general possibility of litigation' is not enough," and "[t]he requirements of concreteness cannot be overemphasized." *Towne Place*, 284 F. Supp. 3d at 898–99.

Moreover, despite repeated requests for clarification, AutoLoop has refused to articulate the basis for any purported common interest with SIS. In its initial challenge to these log entries, CDK asked AutoLoop to "identify the specific common interest AutoLoop is claiming." Exhibit 1 at 4 (01/09/2019 Letter from J. Michaels to D. Ho). AutoLoop's response did not articulate the basis for its claims. *See* Exhibit 3 (01/18/2019 Letter from D. Guarnera to J. Michaels). Nor did

---

[7] *See* Exhibit 5 (AL_MDL_PRIV_0163 and AL_MDL_PRIV_0598); Exhibit 6 (AL_MDL_0081337).
[8] *See* Exhibit 5 (AL_MDL_PRIV_0044, AL_MDL_PRIV_0054, AL_MDL_PRIV_0465, and AL_MDL_PRIV_0467).
[9] *See, e.g.*, Exhibit 5 (AL_MDL_PRIV_0163, AL_MDL_PRIV_0598, and AL_MDL_PRIV_0678).

AutoLoop explain its theory during any subsequent meet-and-confers despite a despite a specific request from CDK. Exhibit 4 (02/20/2019 Email from J. Coleman to D. Guarnera). In short, AutoLoop refuses to provide basic information needed to determine whether it and SIS were aligned to further an ongoing enterprise with regard to a common legal interest in Reynolds' "▮▮▮▮" or agreed to maintain the confidentiality of the shared information. *See Nat'l Union Fire Ins.*, 2012 WL 28304 at *1-2. Indeed, the AutoLoop employee involved in many of these communications—▮▮▮▮—was not ▮▮▮▮. *See* Exhibit 12 at 45:22-46:5 (T. Petruzzelli Dep.).

To be sure, AutoLoop may have wanted to see SIS succeed in its litigation with Reynolds. But "[a] shared rooting interest in the 'successful outcome of a case' . . . is not a common *legal* interest." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732–33 (N.D. Ill. 2014) (citing cases; emphasis in original); *see also In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129–30 (9th Cir. 2012) ("However, a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the common interest] exception.").

    b. **Communications with SIS and EasyCare/APCO regarding "▮▮▮▮▮▮"**

AutoLoop's redaction log contains an entry for a communication in January 2013 purportedly relating to the "▮▮▮▮▮▮▮▮▮▮▮▮" that was sent to, among others, ▮. *See* Exhibit 6 (AL_MDL_0081337). Another entry regarding the same subject matter was shared almost a year later, in January 2014, with another third party, ▮▮▮▮▮▮▮. *See id.* (AL_MDL_0081576). AutoLoop has not explained the basis for any purported common interest between it and SIS, much less between it, SIS, and EasyCare. Accordingly, these documents should be produced without redactions.

9

  c. **Communications with competing vendors, SIS, Authenticom, car dealerships, and industry associations regarding a "** ███████████████ **"**

AutoLoop claims that a further 102 entries—described as reflecting purported requests for, and provision of, "████████████████████████████████████████████ ███████████████" or as communications providing, compiling, or requesting information necessary for the provision of that advice—are protected from discovery. But these communications were shared with numerous competitors and automobile industry participants, including ███████████████,[10] ████████,[11] ██████████,[12] the ████████████████ ████████████████,[13] ██████████,[14] ████,[15] ██████████████████████████,[16] ████████████;[17] and ██████.[18] The communications span almost four years, from January 2013 to November 2017. *See generally* Exhibit 5. Moreover, many communications relate to supposed legal advice from third-party law firms that did not represent AutoLoop, including ████████ ████████████;[19] ████████████████████████████;[20] and ██████.[21] AutoLoop has not claimed that any of these firms acted as its attorneys, nor ████████████████████████████████

---

[10] *See* Exhibit 13 (*e.g.*, AL_MDL_PRIV_0790).

[11] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0010).

[12] Exhibit 5 (*e.g.*, AL_MDL_PRIV_0173,).

[13] *See* Exhibit 5 (AL_MDL_PRIV_0470, AL_MDL_PRIV_0480, AL_MDL_PRIV_0514, and AL_MDL_PRIV_0565).

[14] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0439).

[15] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0105).

[16] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0419).

[17] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0693).

[18] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0470).

[19] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0514).

[20] *See* Exhibit 5 (*e.g.*, _MDL_PRIV_0475).

[21] *See* Exhibit 5 (*e.g.*, AL_MDL_PRIV_0882).

███████████████████████████████████████████. *See* Exhibit 12 at 43:5-44:6 (T. Petruzzelli Dep.).

Many of the same communications are challenged in Defendants' concurrently-filed Motion to Compel Plaintiff Authenticom, Inc. to Produce Third-Party Communications or, in the Alternative, Submit Such Communications for *In Camera* Review ("Authenticom Mot."). CDK incorporates those arguments by reference (at pp. 2-10 of Defendants' brief) and respectfully submits that for largely the same reasons, AutoLoop cannot show that a common interest exception applies to its communications with these third parties.

Additionally, to the extent AutoLoop claims that privileged communications were shared with ELEAD1ONE under a "common interest" exception, those parties are now clearly adverse to one another. As the Court is aware, CDK acquired ELEAD1ONE in late 2018, leading to a dispute over whether Plaintiffs were entitled to discovery regarding the acquisition. *See* CDK Mot. for Protective Order (Dkt. 446); Order (Dkt. 498). As a wholly-owned subsidiary of CDK, the interests of ELEAD1ONE and CDK are fully aligned—and directly adverse to Plaintiffs. *See, e.g. In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007) ("parents and their wholly owned subsidiaries have the same interests"). Thus, even if a common interest exception applied to AutoLoop's pre-acquisition communications with ELEAD1ONE, which CDK disputes,[22] those communications must now be produced in discovery. *See Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 295 (N.D. Ill. 2005) ("An exception to the assertion of the common interest privilege exists when the participants in the common interest become adverse to each other in litigation."); *Gottlieb*

---

[22] Moreover, even before the acquisition by CDK, ELEAD1ONE's Chief Financial Officer submitted a declaration in the *Authenticom* litigation stating that ELEAD1ONE did "not consent to the use of [its] correspondence in this lawsuit" and that ELEAD1ONE was "not involved in this lawsuit and wish[ed] to remain neutral." Exhibit 15 ¶¶ 4 (Penney Decl.). Those are hardly the words of a third party who shares a common legal interest with the Plaintiffs in this MDL.

11

*v. Wiles*, 143 F.R.D. 241, 247 (D. Colo. 1992) ("When [parties] later become adverse, neither is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest.").[23]

### d. Communications with third parties regarding "███████"

AutoLoop claims protection under the attorney-client privilege and work-product and common interest doctrines for communications with certain competitors—███████;[24] ███████;[25] and ███████[26]—that AutoLoop describes as relating to "███████." But none of these third parties is involved in this litigation. No "common interest" has been established between AutoLoop and any of these competitors, none of whom has filed suit against CDK or Reynolds. *See* Authenticom Mot. at 7-8. Indeed, it is highly doubtful that a ███████ ███████ furthered a common legal interest when ELEAD1ONE had declared just months earlier that it "wish[ed] to remain neutral" in this dispute. *See* Exhibit 15 ¶ 4 (Penney Decl.).

---

[23] In addition, CDK contends that ELEAD1ONE is free to voluntarily disclose any otherwise privileged communications that it may have in its own files with AutoLoop or the other MDL Plaintiffs. *See Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 689 F. Supp. 841, 844 (N.D. Ill. 1988) ("[Subsidiary] has elected to voluntarily disclose the privileged information to its current sole shareholder . . . ; this waives the privilege."); *Bass, Pub. Co. v. Promus Companies Inc.*, 868 F. Supp. 615, 620 (S.D.N.Y. 1994) ("[A]s a joint holder of the attorney-client privilege, post-merger [subsidiary] was permitted to disclose its communications . . . to [its corporate parent]."). The sole exception to this rule discussed in *Medcom Holding* involved "joint defense material," which is not the basis for any of AutoLoop's privilege claims. Moreover, as described above, ELEAD1ONE and AutoLoop have now become adverse to one another. In an abundance of caution, counsel for CDK has instructed ELEAD1ONE not to disclose its communications with AutoLoop to CDK pending a ruling from the Court.

[24] *See* Exhibit 5 (AL_MDL_PRIV_0827, AL_MDL_PRIV_0828, AL_MDL_PRIV_0829, AL_MDL_PRIV_0833, and AL_MDL_PRIV_0834).

[25] *See* Exhibit 5 (AL_MDL_PRIV_0835).

[26] *See* Exhibit 5 (AL_MDL_PRIV_0187, AL_MDL_PRIV_0827, AL_MDL_PRIV_0828, AL_MDL_PRIV_0829, AL_MDL_PRIV_0833, and AL_MDL_PRIV_0834, and AL_MDL_PRIV0836).

Four other entries involve communications related to "▮▮▮▮▮▮▮▮" with attorneys at ▮▮▮▮▮▮▮[27] and ▮▮▮▮▮.[28] AutoLoop's assertion of an attorney-client privilege over communications solely with attorneys at ▮▮▮▮▮▮▮▮ is baseless. As noted above, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. See Exhibit 13 at 43:5-44:6 (T. Petruzzelli Dep.).

### III. COX REFUSES TO IDENTIFY THE CURRENT MEMBERSHIP OF EMAIL DISTRIBUTION LISTS APPEARING ON ITS PRIVILEGE LOG.

Cox's privilege log contains 51 entries reflecting communications sent to email distribution lists (*e.g.*, "▮▮▮▮▮▮▮▮"), without disclosing the list of recipients. Generally, privilege log entries for emails sent to distribution lists are considered deficient if they fail to identify all persons on the list. *See Muro*, 250 F.R.D. at 364. Here, however, because many of the email distribution lists maintained by the parties had significant turnover during the relevant discovery period (which begins, generally, in 2013), Defendants proposed that each party identify the *current* membership for each list. *See* Exhibit 9 (1/9/2019 Email from L. Caseria to D. Nordin, *et al.*) ("Defendants are willing to agree to do this if *all plaintiffs* agree to do this as well") (emphasis added). Plaintiffs accepted the proposal. *See id.* (1/11/2019 Email from D. Nordin to L. Caseria, et al.). CDK upheld its end of the bargain, providing the current membership and general purpose of 21 email distribution lists identified on its privilege log on February 8, 2019. *See* Exhibit 10 at 8-9 (02/08/2019 Letter from J. Michaels to D. Nordin)).

Cox, however, refused to comply with the parties' agreement. On February 28, 2019, the day before privilege log challenges were due, Cox finally disclosed the "general purpose" of the email distribution lists included on its privilege log entries. *See* Exhibit 11 (02/28/2019 Email from

---

[27] *See* Exhibit 5 (AL_MDL_PRIV_0064 and AL_MDL_PRIV_0303).
[28] *See* Exhibit 5 (AL_MDL_PRIV_0211 and AL_MDL_PRIV_0481).

D. Dorris to J. Coleman). But Cox refused to disclose the current membership of any distribution list, claiming that the composition of its email distribution lists was "irrelevant" and that CDK should simply trust Cox because "Cox Automotive has no reason to believe that these lists included any individual that would have waived the privileged nature of any document on Cox Automotive's privilege log." *Id.* Having failed to abide by the global agreement, Cox failed to comply with Fed. R. Civ. P. 26(b)(5)(A) and has therefore waived any claim of privilege as to these 51 documents. *See Muro*, 250 F.R.D. at 364.

## IV. COX HAS REFUSED TO IDENTIFY THE LEGAL PERSONNEL INVOLVED IN HUNDREDS OF COMMUNICATIONS ON ITS PRIVILEGE LOG.

Cox's privilege log contains 371 entries—including 367 entries that do not identify any attorney by name—for which it claims protection from disclosure under the attorney-client privilege solely because they purportedly reflect "impressions of counsel." *See generally* Exhibit 7. Another 479 entries contain generic references to the "Cox Legal Department," again without identifying any attorney by name. *See id.* Such generic references to the "Legal Department" and "impressions of counsel" are insufficient. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 483 (E.D. Pa. 2005); *AVX Corp. v. Horry Land Co.*, 2010 WL 4884903, at *10 (D.S.C. Nov. 24, 2010). Cox had many opportunities to cure these deficiencies and provide adequate log entries during the meet-and-confer process.[29] These documents should now be produced.

---

[29] For example, on January 9, 2019, Defendant requested that Cox supplement the vague references to "impressions of counsel" and "Cox Legal Department" in its privilege log with actual information that would "satisfy [Cox's] burden of identifying the attorney that provided the legal advice." *See* Exhibit 2 (01/09/2019 J. Michaels Letter to D. Dorris). After numerous meet-and-confers, on February 28, 2019, Cox declined to supplement its log but advised CDK via email that "Cox Legal Department" meant "either an attorney or a staff member" and "impressions of counsel" meant "either the request for or provision of legal advice." Exhibit 11 (02/28/2019 Email from D. Dorris to J. Coleman et al.). Of course, this does not suffice under the Federal Rules. Cox cannot substitute buzz words for actual log entries and shore them up with an email assuring CDK that its privilege calls are presumptively valid.

14

## V. ALTERNATIVELY, DEFENDANTS REQUEST AN *IN CAMERA* REVIEW

"[F]ailure to serve an adequate privilege log may result in a waiver of any protection from discovery." *Babych*, 271 F.R.D. at 608. But, to the extent this Court does not compel immediate production of documents subject to this motion, CDK requests that this Court conduct an *in camera* review of the challenged documents. Courts frequently conduct *in camera* reviews of documents to better assess the applicability of the claimed privileges. *See One Place Condo. LLC v. Travelers Prop. Cas. Co. of Am.*, 2013 U.S. Dist. LEXIS 28257 at *16 (N.D. Ill. Mar. 1, 2013). Indeed, this Court has already ordered such review to assess the underlying privileged nature of certain documents subject to the Dealership Plaintiffs' motions to compel disclosure of certain clawback documents previously produced by CDK. *See* 09/24/2018 Orders (Dkt. 384, 385).

## CONCLUSION

For the foregoing reasons, CDK requests that this Court compel AutoLoop and Cox to produce the challenged documents identified in this Motion. In the alternative, CDK requests that this Court conduct an *in camera* review of the challenged documents.

Dated: March 1, 2019

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on March 1, 2019, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD OR REDACTED BY PLAINTIFFS LOOP, LLC d/b/a AUTOLOOP AND COX AUTOMOTIVE, INC. OR, IN THE ALTERNATIVE, FOR AN IN CAMERA INSPECTION OF THE CHALLENGED DOCUMENTS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                           */s/ Britt M. Miller*
                                           Britt M. Miller
                                           MAYER BROWN LLP
                                           71 South Wacker Drive
                                           Chicago, IL  60606
                                           Phone:  (312) 782-0600
                                           Fax:  (312) 701-7711
                                           E-mail: bmiller@mayerbrown.com