## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864 |
| This Document Relates to:<br>*Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*,<br>Case No. 1:18-CV-2521 (N.D. Ill.) | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

## AUTOLOOP'S ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES TO DEFENDANT CDK GLOBAL, LLC'S COUNTERCLAIM

### INTRODUCTION[*]

1.      In January 2016, AutoLoop entered into a Managed Interface Agreement ("3PA Agreement") with CDK, pursuant to which AutoLoop has certified several applications for managed, bi-directional integration with CDK's DMS through the CDK Third Party Access ("3PA program") n/k/a the CDK Global Partner Program. Under the express terms of the 3PA Agreement, AutoLoop is prohibited from receiving data from CDK's DMS through unapproved means outside of the 3PA program. This contractual restriction in the 3PA Agreement is an essential element of the 3PA program itself, which is built on CDK's ability to manage when and how data maintained in its DMS is accessed by third parties.

**ANSWER:**      Loop, LLC ("AutoLoop") admits that it entered into a Managed Interface Agreement ("3PA Agreement") with CDK in January 2016, and that AutoLoop has certified several applications for managed, bi-directional integration with CDK's DMS through the 3PA program.  AutoLoop also admits that the terms of the 3PA Agreement purport to prohibit AutoLoop from receiving data from CDK's DMS through unapproved means outside of the 3PA program.  AutoLoop lacks sufficient knowledge or information to form a belief as to the current

---

[*] To the extent the headings or other content in the Counterclaims not contained in numbered paragraphs, such as section headings, are considered allegations within the pleading, AutoLoop denies them.

naming conventions of the 3PA program. AutoLoop denies the remaining allegations in Paragraph 1.[1]

2.      Discovery has now shown that AutoLoop is in breach of this provision in its 3PA Agreement. Beginning at least as early as January 2018, AutoLoop began receiving a feed of vehicle inventory data sourced from CDK's DMS from vAuto, Inc. ("vAuto"), a participant in CDK's 3PA program, and another plaintiff in this MDL. vAuto's unauthorized syndication of vehicle inventory data to AutoLoop is in violation of a separate Managed Interface Agreement between CDK and vAuto's parent corporation, Cox Automotive, Inc. ("Cox Automotive"). Concurrent with the filing of this counterclaim, CDK brings separate counterclaims against vAuto, Cox Automotive, and other Cox-affiliated entities for their unlawful conduct.

**ANSWER:**      AutoLoop admits that vAuto is a plaintiff in this MDL and that CDK concurrently filed separate counterclaims against vAuto, Cox Automotive, and other Cox-affiliated entities. AutoLoop also admits that beginning at least as early as January 2018, it began receiving a feed of vehicle inventory data from vAuto. AutoLoop lacks sufficient knowledge or information to form a belief as to the terms of the Managed Interface Agreement between Cox Automotive and CDK, whether vAuto is a participant in CDK's 3PA program, or the source of vAuto's inventory data, and on that basis denies the related allegations. AutoLoop denies the remaining allegations in Paragraph 2.

3.      AutoLoop's unauthorized receipt of data sourced from CDK's DMS creates significant security risks in addition to violating CDK's contractual rights. Each time that AutoLoop receives DMS data syndicated by vAuto (or from any other source outside the 3PA program), CDK is deprived of the ability to monitor AutoLoop's access to the data, much less verify whether AutoLoop is using the data for an approved purpose or with the relevant dealer's knowledge or consent. CDK accordingly seeks damages from AutoLoop as well as an injunction barring it from engaging in further conduct in breach of the 3PA Agreement.

**ANSWER:**      Denied.

---

[1] The footnote in Paragraph 1 of CDK's counterclaim – "In its complaint, AutoLoop refers to the contract as the parties' "3PA agreement," in reference to CDK's Third Party Access ("3PA") Program, now known as the CDK Global Partner Program. For the Court's convenience, these counterclaims refer to the parties' agreement as the "3PA Agreement" and to CDK's third-party access program as the "3PA" program notwithstanding its name change." – does not require a response. To the extent a response is required, AutoLoop lacks sufficient knowledge or information to form a belief as to the truth of the allegations in the footnote in Paragraph 1 and on that basis denies them.

## PARTIES

4.      Counter-Plaintiff CDK Global, LLC is a Delaware limited liability company with its corporate headquarters and principal place of business at 1950 Hassell Road, Hoffman Estates, Illinois 60169. CDK is a global provider of integrated information technology and digital marketing solutions to the automotive retail industry.

**ANSWER:**      AutoLoop lacks sufficient knowledge or information to form a belief as to the

truth of the allegations in Paragraph 4 and on that basis denies them.

5.      The automotive data ecosystem that CDK supports is massive, with tens of thousands of installations of approved vendor applications and millions of transactions every day, supporting hundreds of billions of dollars in commerce each year. CDK has made tremendous investments to build out and support its network of products and service offerings. Over the last three years alone, CDK has spent more than $480 million researching, developing, and deploying new and enhanced product solutions for its customers.

**ANSWER:**      AutoLoop admits that the automotive data ecosystem has tens of thousands of

installations of vendor applications and millions of transactions every day.  AutoLoop lacks

sufficient knowledge or information to form a belief as to the truth of the remaining allegations in

Paragraph 5 and on that basis denies them.

6.      In light of its network's size, scope, and importance to the American economy, CDK has been designated by the Department of Homeland Security as a Critical National Infrastructure "so vital to the United States that [its] incapacitation would have a debilitating effect on security [and] national economic security."

**ANSWER:**      AutoLoop lacks sufficient knowledge or information to form a belief as to the

truth of the allegations in Paragraph 6 and on that basis denies them.[2]

7.      Counter-Defendant AutoLoop is a Florida limited liability company with its headquarters and principal place of business at 33 N. Garden Avenue, Clearwater, Florida 33755. See Compl. ¶ 30. AutoLoop is an automotive software products and services company, providing integrated software solutions for car dealers. *Id* ¶ 6. AutoLoop alleges that its products are used by "more than 2,100 dealers," including numerous dealers who use CDK's DMS. *Id* ¶ 30.

---

[2] The footnote in Paragraph 6 of CDK's counterclaim – *See* Dep't of Homeland Security, What is Critical Infrastructure?, *available at* perma.cc/N8JR-YQ6Y – does not require a response.  To the extent a response is required, AutoLoop lacks knowledge or information to form a belief as to the truth of the allegations in footnote in Paragraph 6 and on that basis denies them.

**ANSWER:** Admitted.

## NATURE OF THE COUNTERCLAIM

8.      This counterclaim arises for breach of contract.

**ANSWER:** This paragraph states legal conclusions to which no answer is required.

9.      This Court has subject matter jurisdiction over this counterclaim pursuant to 28 U.S.C. §§ 1332(a)(1) and 1367(a). There is diversity jurisdiction under 28 U.S.C. § 1332(a)(1) because CDK is a citizen of Delaware and Illinois, AutoLoop is, on information and belief, a citizen of Florida, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. In addition, there is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because it is so related to AutoLoop's claims against CDK that they form part of the same case or controversy.

**ANSWER:** This paragraph states legal conclusions to which no answer is required.

10.      This Court has personal jurisdiction over AutoLoop because it is located and does business in this District; because many of the actions giving rise to these counterclaims occurred in, and/or were directed from, this District; and because AutoLoop filed its complaint against CDK in this District.

**ANSWER:** This paragraph states legal conclusions to which no answer is required.

11.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

**ANSWER:** This paragraph states legal conclusions to which no answer is required.

## FACTUAL ALLEGATIONS

12.      CDK's DMS offering (referred to herein as "CDK's DMS" or "the CDK DMS") primarily consists of two enterprise software products—Drive and DASH—that provide dealers with proprietary software tools and resources used to manage core aspects of their business. CDK's DMS currently is licensed to more than 27,000 dealerships across the world and more than 8,000 new and used car dealerships in North America.

**ANSWER:** AutoLoop lacks sufficient knowledge or information to form a belief as to the truth

of the allegations in Paragraph 12 and on that basis denies them.

13.      In addition to its core functionalities, the CDK DMS houses voluminous amounts of financial and accounting information and highly sensitive data, including financial statements, accounting data, payroll information, sales figures, inventory, parts data, warranty information, appointment records, service and repair records, vehicle information, customer personal identifiable information, proprietary intellectual property, and proprietary data that belongs to

CDK and third parties, including the data described below. CDK encrypts sensitive data in the DMS and appropriately expunges stale data regularly.

**ANSWER:** AutoLoop lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 and on that basis denies them.

14. Data housed in CDK's DMS belongs to several different types of entities. Some data is proprietary to OEMs, such as prices and part numbers for replacement parts, labor rates, and rebate, incentive, and warranty information. Other data in CDK's DMS is proprietary to third-party service providers, such as credit reporting bureaus like Equifax, Experian, and TransUnion. Still other data in the DMS is CDK's own proprietary, copyrighted data, including forms, accounting rules, tax tables, and proprietary tools and data compilations. And some data "belongs" to the dealers that use CDK's DMS. While access to third-party proprietary information in the DMS is permitted for licensed DMS customers, CDK is prohibited from sharing much of this information with other third parties absent a valid license.

**ANSWER:** AutoLoop admits that CDK's DMS houses data that belongs to dealers. AutoLoop lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 and on that basis denies them.

15. One of the ways that CDK maintains the stability and security of its DMS is by requiring that third parties—for example, software application providers that wish to interact with the DMS—access the CDK DMS primarily through a CDK-designed interface that provides managed, bi-directional integration with CDK's DMS (defined in the 3PA Agreement as the "CDK Interface System"). These restrictions are designed to ensure that 3PA program participants are the end user of the DMS data they access, that their access is limited to what is necessary to support the applications that they have certified in the 3PA program, and that such access is centrally managed by CDK in order to optimize data and system security and to prevent degradation of system performance and data corruption.

**ANSWER:** AutoLoop admits that the 3PA program is an interface that currently provides bi-directional integration with CDK's DMS. AutoLoop denies that CDK's restrictions on vendors' data access are designed to ensure that vendor access is limited to what is necessary to support the applications of the vendor. AutoLoop lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 15 and on that basis denies them.

16. Each vendor participating in the 3PA program enters into a written agreement with CDK, which grants the vendor a limited, non-transferrable license to use the CDK Interface System to access, send, and/or receive data on the DMS solely for the purpose of providing specific

5

applications to CDK dealers. These applications are described in detailed Statements of Work ("SOWs") that accompany the vendor's contract with CDK. From the inception of the 3PA program, CDK's standard 3PA contracts have strictly prohibited the unauthorized syndication of any data obtained though the 3PA program to third parties and have required 3PA program participants to use the data only in connection with providing the specific applications identified in their SOWs. These restrictions are designed to ensure that 3PA program participants are the end user of the DMS data they access and their access is limited to what is necessary to support the applications that they have certified in the 3PA program.

**ANSWER:** AutoLoop lacks sufficient knowledge or information to form a belief as to the

truth of the allegations in Paragraph 16 and on that basis denies them.

17. In accordance with the January 2016 3PA Agreement between CDK and AutoLoop and its accompanying Statements of Work, certain Autoloop [*sic*] applications use 3PA integration to obtain data maintained in CDK's DMS.

**ANSWER:** Admitted.

18. Section 1(f) of the 3PA Agreement expressly prohibits AutoLoop from receiving any data sourced from CDK's DMS outside the 3PA program:



**ANSWER:** Admitted.

19. Indeed, in its Complaint, AutoLoop cites this very provision of the 3PA Agreement and alleges that the Agreement "requires that any vendor using 3PA for any of its dealer-customers on a CDK DMS must agree to use 3PA exclusively for all of its dealer-customers on CDK DMSs." Compl. ¶ 115.

**ANSWER:** Admitted.

20. Discovery conducted to date has shown that beginning at least as early as January 2018, AutoLoop began receiving a daily feed of inventory data from vAuto ███████████ ████████████ On information and belief, the vAuto inventory data feed includes vehicle inventory data sourced from CDK's DMS.

**ANSWER:**     AutoLoop admits that at least as early as January 2018, AutoLoop began receiving a daily feed of inventory data from vAuto to support AutoLoop's Quote application. AutoLoop lacks sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 20 and on that basis denies them.

21.     First, vAuto itself is a participant in the 3PA program, under which vAuto receives inventory-related data maintained in CDK's DMS for the purpose of supplying data for vAuto's vehicle inventory analytics applications. For each CDK dealership customer, vAuto extracts an initial set of inventory data from CDK's DMS and then periodically "syncs" with the DMS—usually multiple times per day—to extract new or updated data from the DMS.

**ANSWER:**     AutoLoop lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 21 and on that basis denies them.

22.     Second, AutoLoop internal documents ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**ANSWER:**     AutoLoop admits that at least one AutoLoop document includes the quoted language.  AutoLoop denies the remaining allegations in Paragraph 22.

23.     CDK has never authorized AutoLoop to obtain inventory data sourced from its DMS though vAuto, and only learned of AutoLoop's unauthorized receipt of such data through discovery conducted in this MDL.

**ANSWER:**     AutoLoop admits that it has never received specific authorization from CDK to obtain inventory data from vAuto but denies that any such authorization is required.  AutoLoop lacks sufficient knowledge or information to form a belief as to when CDK learned of any facts. AutoLoop denies the remaining allegations in Paragraph 23.

24.     AutoLoop's unauthorized receipt of DMS data though vAuto harms CDK in multiple ways. First, it allows AutoLoop to avoid paying CDK the integration fees that it would otherwise owe under the 3PA Agreement for secure access to this data. Second, AutoLoop's receipt of DMS data outside the 3PA program allows it to sidestep the processes and procedures of the 3PA program that are designed to monitor how and when AutoLoop obtains data sourced from CDK's DMS. The success of the 3PA program depends on CDK's ability to verify that each

vendor in the program is using the data that it obtains for an approved end-use and with the dealer's express, written consent. These requirements are reflected in the standard terms of CDK's 3PA contracts as well as its 3PA certification and audit procedures. When AutoLoop unlawfully obtains DMS data without using secure 3PA integration, CDK cannot monitor how data is being transmitted, who is using and has access to the data, or verify whether AutoLoop is using the data for an approved purpose and with the dealer's knowledge or consent.

**ANSWER:** AutoLoop lacks sufficient knowledge or information to form a belief as to how any of its actions have harmed CDK and as to the standard terms in CDK's 3PA contracts, certification, and audit procedures. AutoLoop denies the remaining allegations in Paragraph 24.

## FIRST COUNTERCLAIM FOR RELIEF
### (Breach of Contract)

25. Paragraphs 1-24 above are incorporated herein by reference.

**ANSWER:** AutoLoop incorporates its answers to Paragraphs 1-24.

26. The 3PA Agreement between CDK and AutoLoop is a valid and enforceable contract and is binding on AutoLoop. CDK has fully performed or tendered all performance required under the 3PA Agreement.

**ANSWER:** AutoLoop lacks sufficient knowledge or information to form a belief as to the whether CDK has fully performed or tendered all performance required under the 3PA Agreement. AutoLoop denies the remaining allegations in Paragraph 26.

27. AutoLoop has breached its obligations under the 3PA Agreement by receiving data sourced from CDK's DMS from an unauthorized source, vAuto.

**ANSWER:** Denied.

28. AutoLoop's conduct has damaged CDK, including by depriving CDK of integration fees that CDK would otherwise charge for the data that AutoLoop has received.

**ANSWER:** AutoLoop lacks sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 28 and on that basis denies them.

29. Unless AutoLoop is enjoined from engaging in its unlawful conduct, AutoLoop will continue to violate the provisions in its 3PA Agreement that prohibit the receipt of DMS data from unauthorized sources, increasing the risk that CDK will suffer a security breach, incur liability to its dealer customers, and/or incur significant harm to its reputation, all which would

constitute an irreparable harm because no amount of monetary compensation could make CDK whole for the resulting potential loss of business, loss of goodwill, and reputational loss.

**ANSWER:** Denied.

## PRAYER FOR RELIEF

**ANSWER:** To the extent that an answer may be required to the Prayer for Relief at the end of CDK's Counterclaim, AutoLoop denies each and every allegation contained therein and denies that CDK is entitled to the relief it seeks.

## JURY DEMAND

**ANSWER:** To the extent that an answer may be required to Jury Demand at the end of CDK's Counterclaim, AutoLoop denies each and every allegation contained therein.

\*      \*      \*

## DENIAL

AutoLoop denies each and every allegation of CDK's Counterclaim not specifically admitted above.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Without assuming any burden of proof that it would not otherwise bear, AutoLoop also asserts the following affirmative and additional defenses.

### First Defense

The Counterclaim fails to state a claim upon which relief may be granted.

### Second Defense

As detailed in AutoLoop's Amended Complaint, CDK's actions and contracts purporting to prohibit AutoLoop's business activities are part of an unlawful scheme to eliminate competition. As such, the contractual and legal restrictions alleged herein are void as a matter of law. As a

result, CDK has failed to state a cause of action.

### Third Defense

CDK's claim is barred, in whole or in part, by the applicable statute of limitations. CDK filed its Counterclaim on February 15, 2019. CDK has not pled any event that would toll any applicable limitations period. As such, the statutory time limitation applicable to some or all of CDK's claims has passed and thus are time-barred.

### Fourth Defense

If and to the extent that CDK has been damaged, which AutoLoop denies, the amount of damages that CDK alleges to have suffered is too remote or speculative to allow recovery, and it is impossible to ascertain and allocate such alleged damages with reasonable certainty.

### Fifth Defense

If and to the extent CDK has been damaged, which AutoLoop denies, CDK, by the exercise of reasonable diligence, could have mitigated its damages but did not, and CDK is therefore barred from recovery. Alternatively, any damages sustained by CDK, which AutoLoop denies, must be reduced by the amount that such damages would have been reduced had CDK exercised reasonable diligence in mitigating its damages.

### Sixth Defense

CDK's claims are barred, in whole or in part, because to the extent CDK suffered any injury or incurred any damages as alleged in the Counterclaim, which AutoLoop denies, any such injury or damage was caused and brought about by the acts, conduct or omissions of individuals or entities other than AutoLoop and, as such, any recovery herein should be precluded or diminished in proportion to the amount of fault attributable to such other individuals or entities.

### Seventh Defense

CDK's claims are barred by the doctrine of unclean hands. The unclean hands doctrine bars CDK from bringing this counterclaim to allege that AutoLoop engaged in unlawful activity based on the manner in which AutoLoop has organized its corporate infrastructure, facilities, personnel, job responsibilities, and computer systems, because AutoLoop is informed and believes that CDK have themselves made similar decisions and engage in similar practices to those alleged of AutoLoop, including with regard to data syndication, both on its own behalf and by and through its subsidiaries and affiliates. The unclean hands doctrine demands that a plaintiff act fairly in the matter for which it seeks a remedy. The plaintiff must come into court with clean hands, and keep them clean, or it will be denied relief, regardless of the merits of its claim. The defense applies to bar legal and equitable claims, and need not involve criminal or tortious activity – simply conduct that violates conscience, good faith, and equitable standards of conduct. To the extent CDK seeks to contend that AutoLoop engaged in unlawful activity by allegedly performing the same or similar acts as CDK, within the same nexus of common customers and common sources of data or classes of software, its claims are barred because such conduct infects its claims and renders pursuing this action inequitable.

### Eighth Defense

To the extent lack of authorization for access is deemed an affirmative defense rather than an element on which CDK bears the burden of proof (and AutoLoop contends that the latter applies), CDK is barred from claiming violations of any statute or source of law because AutoLoop's access was authorized.

### Ninth Defense

CDK's claims are barred by the doctrine of acquiescence.

### Tenth Defense

CDK's claims are barred by the doctrines of laches, waiver, and estoppel.

### Eleventh Defense

The privilege of competition and other privileges available under state law bar CDK from pursuing its claims for relief.

### Twelfth Defense

The doctrine of implied license bars CDK from pursuing their claims for relief.

### Thirteenth Defense

CDK's claims are barred, in whole or in part, because CDK has not suffered any legally cognizable injury, including because CDK has not suffered an injury-in-fact and its alleged injuries are too speculative, indirect and remote from the alleged conduct, and cannot be ascertained and apportioned.

### Fourteenth Defense

CDK's claims are barred, in whole or in part, because to the extent CDK suffered any injury or incurred any damages as alleged, which AutoLoop denies, AutoLoop's alleged conduct was not the actual or proximate cause of any injury or damage to CDK.

### Fifteenth Defense

CDK's claims are barred, in whole or in part, because any recovery would result in unjust enrichment to CDK.

### Sixteenth Defense

CDK is barred from recovering because its acts are in violation of public policy.

**Seventeenth Defense**

CDK's breach of contract claim is barred because CDK has not tendered performance under the applicable contracts.

*      *      *

AutoLoop adopts by reference any applicable defense pled by any other counterclaim-defendant not expressly set forth herein. In addition, AutoLoop has insufficient knowledge or information upon which to form a basis as to whether it may have additional, as yet unstated, separate defenses available. AutoLoop reserves the right to amend this Answer to add, supplement or modify defenses based upon legal theories that may be or will be divulged, through discovery, or through further factual or legal analysis of CDK's allegations, contentions and positions in this litigation.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure, Rule 38(b), AutoLoop hereby demands trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AutoLoop requests that CDK's Counterclaim be dismissed with prejudice, that the Court find that CDK is not entitled to any judgment or relief, that the Court enter judgment in favor of AutoLoop, and that the Court award AutoLoop its attorneys' fees, costs and expenses, pre-judgment interest, and such other and further relief as the Court deems just and proper.

Dated: March 8, 2019

Respectfully submitted,

/s/ Derek T. Ho

Derek T. Ho
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Plaintiff Loop, LLC*
*d/b/a AutoLoop*

<u>**CERTIFICATE OF SERVICE**</u>

I, Derek T. Ho, an attorney, hereby certify that on March 8, 2019, I caused a true and correct copy of the foregoing **ANSWER AND AFFIRMATIVE AND ADDITIONAL DEFENSES TO DEFENDANT CDK GLOBAL, LLC'S COUNTERCLAIM** to be filed electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all counsel of record by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Copies were served on counsel of record via email.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

15