# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to:<br>*Cox Automotive, Inc., et al. v. CDK Global, LLC,*<br>Case No. 1:18-cv-1058 (N.D. Ill.) | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

**COX AUTOMOTIVE, INC., ET AL.'S REPLY IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER TO PREVENT
THE DEPOSITION OF SANDY SCHWARTZ**

**INTRODUCTION**

There is no legitimate basis for deposing Sandy Schwartz. He is the apex executive (President) of a 36,000-employee company. Large portions of the company's operations that he oversees are not at issue in this litigation. And as to the company's operations that are relevant to this litigation, Mr. Schwartz is necessarily multiple steps removed from the individuals who actually would have unique, personal knowledge. Accordingly, a deposition of Mr. Schwartz will not yield probative evidence and would just be a burdensome distraction.

CDK fails to show otherwise. Tellingly, Cox Automotive agreed to make Mr. Schwartz a document custodian and produced documents from his files. If Mr. Schwartz had unique, personal knowledge relevant to this litigation (as CDK claims), there would be documents to show it. But Cox Automotive produced only 136 documents from Mr. Schwartz's files (compared to thousands from other indisputably relevant Cox Automotive executives), which by itself shows that Mr. Schwartz has an extremely remote connection to this litigation. CDK's attempt to cobble together evidence of Mr. Schwartz's unique, personal knowledge from these 136 documents confirms that Mr. Schwartz has no such knowledge. The documents highlighted by CDK show that Mr. Schwartz engaged in typical activities for an apex executive of a large company and that he has no unique knowledge about the issues in this litigation.

Further, CDK tacitly concedes that it has not attempted to utilize less burdensome means of obtaining the evidence that it seeks from Mr. Schwartz, as numerous courts require. Instead, CDK claims, contrary to law, that it had no obligation to do so. CDK also argues that it could not use other means of discovery because of the impending close of fact discovery. That is both irrelevant and incorrect. Any timing constraints faced by CDK are the result of CDK's choices about who to depose and when. In any case, CDK has already noticed a remarkable three-days

of Rule 30(b)(6) depositions of Cox Automotive spanning 52 broad topics, including on issues about which CDK seeks to depose Mr. Schwartz.  At the very least, CDK should take those depositions, and then if CDK feels necessary, attempt to make a showing as to the necessity of Mr. Schwartz's deposition.

**ARGUMENT**

**I.     Mr. Schwartz Does Not Have Unique, Personal Knowledge About This Case**

CDK accepts – as it must – that, under the apex doctrine, courts allow a deposition of an apex executive only where the executive has "unique personal knowledge" relevant to the litigation.  *Murillo v. Kohl's Corp.*, 2016 WL 6090862, at *2 (E.D. Wis. Oct. 18, 2016); *see* CDK Resp. at 5-7.  Cox Automotive has met its burden for a protective order by demonstrating that Mr. Schwartz has no such knowledge.  Among other things, Cox Automotive submitted the relevant portions of the depositions of two senior Cox Automotive executives (the only two depositions taken of Cox Automotive).  Both executives testified on issues about which CDK seeks to depose Mr. Schwartz, and neither indicated that Mr. Schwartz would have additional knowledge.  *See* Cox Automotive Mem., Dkt. 529 at 5-7 & Exs. B, C.  Cox Automotive also noted that, even though it had searched Mr. Schwartz's files by agreement, Cox Automotive had produced only 136 potentially relevant documents from Mr. Schwartz's files.  *See id.* at 6.  None of those documents show Mr. Schwartz has unique, personal knowledge relevant to this litigation.  Accordingly, CDK is wrong to assert (at 7) that Cox Automotive "simply argu[es]" Mr. Schwartz has no unique, personal knowledge.  The entirety of discovery taken of Cox Automotive demonstrates the lack of such knowledge.[1]

---

[1] It is irrelevant that Cox Automotive has not submitted an affidavit from Mr. Schwartz to re-affirm what discovery has already shown.  CDK cites no authority that such an affidavit is required, and CDK even argues (at 7) that an affidavit would have been worthless.

Nonetheless, CDK insists (at 7-8) that Mr. Schwartz has unique personal knowledge on three pertinent topics: (1) Cox Automotive's acquisition of and strategy for Dealertrack DMS, (2) the market for software applications for automotive dealerships, and (3) his own personal communications with industry participants. If Mr. Schwartz had unique, personal knowledge on these topics, there would be documents in his files demonstrating that knowledge, but there are no such documents. The documents from Mr. Schwartz's files that CDK chose to highlight confirms that fact.[2]

**Dealertrack DMS.** CDK's primary argument is that Mr. Schwartz has unique, personal knowledge about Dealertrack DMS. *See* CDK Resp. at 2-4, 7. As CDK notes, whether Dealertrack DMS is a viable competitor to CDK's DMS or Reynolds's DMS – and in particular, the ability of dealers to switch DMS providers – is relevant to MDL Plaintiffs' monopolization claims. *See* CDK Resp. at 3. But there is no basis for CDK's contention that Mr. Schwartz has unique personal knowledge on this issue. Dealertrack DMS was just a tiny fraction of the Dealertrack acquisition and an even tinier portion of Cox Automotive as a whole.[3]

CDK has already deposed Paul Whitworth who was the General Manager of Dealertrack DMS (with day-to-day responsibility for the product) and his boss, Keith Jezek, who was the President of the Retail Solutions Group. Neither suggested that Mr. Schwartz would have any

---

[2] CDK previously sought to depose Mr. Schwartz about Cox Automotive's "marketing strategy." *See* Dkt. 529 at Ex. A. Cox Automotive explained there was no basis to depose Mr. Schwartz on that topic. *See id.* at 5-6. CDK no longer argues that this is not an appropriate topic for Mr. Schwartz's deposition. *See* CDK Resp. at 7 (single stray mention of "marketing strategies").

[3] CDK misleadingly suggests (at 2) that Cox Automotive acquired Dealertrack DMS for $4 billion. Cox Automotive acquired Dealertrack, Inc. for $4 billion, but Dealertrack's DMS was just a "small component" – less than 10 percent by revenue – of the transaction. Ex. L (Whitworth Tr.) at 46; Ex. M (Jezek Tr.) at 184 ("The Dealertrack acquisition was mainly about, for us, to get into the business of dealer websites via Dealer.com and to get into . . . the whole lender side of the business.").

- 3 -

additional relevant knowledge about the competitiveness of Dealertrack DMS. When Mr. Whitworth or Mr. Jezek testified they lacked knowledge about Dealertrack DMS issues, it was because they were *too senior* to be involved in those issues. *See* Ex. L (Whitworth Tr.) at 22-23, 133; Ex. M (Jezek Tr.) at 35, 162, 205-06 (discussing DX-167, which CDK criticizes (at 4) Mr. Jezek for lacking knowledge about). CDK's request for a deposition of an even more senior person (Mr. Schwartz) will not fill any gaps in Mr. Whitworth's and Mr. Jezek's knowledge.[4]

The documents from Mr. Schwartz's files that CDK relies on (at 3-4) confirm CDK is grasping straws. CDK cites only three documents involving Mr. Schwartz that have any relationship to competition in the DMS market. *First*, CDK relies on a PowerPoint presentation *prepared by Keith Jezek and Paul Whitworth* about Dealertrack DMS that Mr. Schwartz merely commented on, *see* CDK Ex. 1;[5] Ex. L (Whitworth Tr.) at 140 (testifying he "assist[ed] in the preparation" of the PowerPoint and "present[ed] it to higher-ups"). *Second*, CDK cites a single dealer's complaints about Dealertrack DMS. *Mr. Whitworth* coordinated the response to those complaints; the email chain was merely forwarded to Mr. Schwartz. *See* CDK Ex. 6. *Third*, CDK points to Mr. Schwartz's musing upon receiving news that CDK was acquiring another DMS provider (Auto/Mate) that perhaps ███████████████████████████████████. *See* CDK Ex. 7. The sum of CDK's showing as to Mr. Schwartz's "unique personal knowledge" on Dealertrack's competitiveness is thus giving feedback on a PowerPoint created and presented by others (CDK Ex. 1), being forwarded an email chain with customer complaints (CDK Ex. 2),

---

[4] CDK incorrectly claims (at 4) that Mr. Whitworth – who actually managed Dealertrack DMS day-to-day – lacked knowledge about Dealertrack DMS's competitiveness because "he was not part of the due diligence or acquisition team." Mr. Whitworth explained that, although he had not been involved in the purchase due diligence for Dealertrack DMS, he became familiar with the business post-acquisition by reviewing business plans and his general understanding of the DMS industry. *See* Ex. L (Whitworth Tr.) at 76.

[5] All references to "CDK Ex. __" are to the exhibits attached to CDK's Under Seal Response to Cox Automotive's Motion for Protective Order (Dkt. 559).

- 4 -

and making a stray comment about possibly ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ due to an acquisition that never occurred (CDK Ex. 3).  This does not justify a deposition of Mr. Schwartz.  *See Nucap Indus. Inc. v. Robert Bosch LLC*, 2017 WL 6059770, at *3 (N.D. Ill. Dec. 7, 2017) (denying deposition of apex executive where discovery had failed to show the executive had unique personal knowledge); *Murillo*, 2016 WL 6090862, at *1-2 (same where executive lacked "unique" or "specialized" knowledge); *In re Yasmin & Yaz*, 2011 WL 3759699, at *6 (S.D. Ill. Aug. 18, 2011) (same where executives at best had "duplicative" knowledge, as shown by emails including executives to keep them "in the loop").[6]

**Market for Software Applications.**  CDK asserts (at 4-5) that Mr. Schwartz has unique personal knowledge about the competitiveness (in particular, the pricing and functionality) of Cox Automotive's software applications as compared to other software applications.  This strains credulity.  Mr. Schwartz oversees not only the entire Retail Solutions Group (which contains each of the eight applications that Cox Automotive has suffered damage due to CDK's and Reynolds's anticompetitive conduct) but also other groups that have no relationship to this litigation.  *See* Dkt. 529 at 2-3.  CDK provides no reason that Mr. Schwartz would have unique, personal knowledge about the competitiveness of particular applications under his ultimate purview.  Any such knowledge could have been obtained from Mr. Jezek (who heads the Retail Solutions Group), from individuals like Mr. Whitworth (who have day-to-day responsibility for

---

[6] The remaining documents that CDK cites have nothing to do with the competitiveness of Dealertrack DMS.  They demonstrate the unsurprising and irrelevant fact that Mr. Schwartz was involved in communicating the Dealertrack acquisition both internally and externally.  *See* CDK Ex. 2 (memo from Mr. Schwartz to Cox Automotive Leadership regarding how to discuss the proposed acquisition internally); CDK Ex. 3 (weekly report recounting a "Road Show Tour" to communicate the Dealertrack acquisition to clients in which Mr. Schwartz participated); CDK Ex. 4 (meeting agenda regarding integrating Dealertrack and Cox Automotive); CDK Ex. 5 (press release announcing the acquisition to be signed by Mr. Schwartz).

particular applications), or from other individuals who have even more direct involvement with the development, sales, and marketing of the particular applications at issue.

Tellingly, CDK cannot cite a single document from Mr. Schwartz's files suggesting that he has unique, personal knowledge on this topic. Instead, CDK relies (at 4) on Mr. Schwartz's online biography that states he has "nurture[ed] organic growth" in Cox Automotive's business and has "seamlessly integrat[ed]" acquisitions and on an interview in which Mr. Schwartz likened his role to conducting a symphony. *See* CDK Exs. 10, 11. Those generic statements merely refer to Mr. Schwartz's executive role, not unique personal knowledge about particular applications' competitiveness. *See Nucap*, 2017 WL 6059770, at \*3 (rejecting reliance on "'generalized and vague [statements made on a website], akin to statements attributable to any company's present and/or CEO regardless of his or her level of involvement'") (quoting *Bombardier Recreational Prods., Inc. v. Arctic Cat, Inc.*, 2014 WL 5685463, at \*3 (D. Minn. Sept. 24, 2014)). CDK also falsely claims (at 5) that Mr. Schwartz made a presentation about Cox Automotive's DMS strategy. *See* CDK Ex. 12. The cited presentation came from the files of Mr. Jezek and Mr. Whitworth, was prepared by Mr. Jezek and Mr. Whitworth, *see* Ex. N (COX_0006203), and CDK has deposed Mr. Jezek about it, *see* Ex. M (Jezek Tr.) at 274-83.

**Industry Communications.** Finally, CDK claims (at 5-6) that Mr. Schwartz had relevant communications with industry participants. CDK, however, fails to show that Mr. Schwartz's occasional communications with Cox Automotive's dealership customers and with Reynolds establishes unique, personal knowledge relevant to this litigation.

*First*, CDK points (at 5) to three communications with dealerships. The first two communications show that others would have far more probative knowledge than Mr. Schwartz. In one communication, Mr. Schwartz attempted to reassure a Dealertrack DMS customer that

- 6 -

Cox Automotive would address the customer's problems, *see* CDK Ex. 13, but *Mr. Whitworth* was the day-to-day manager of Dealertrack DMS with "direct responsibility" for addressing those problems, and he did so. *See* Ex. O (COX_0057547). In the other communication, a dealership emailed a complaint to 14 individuals at CDK and Cox Automotive, which Mr. Schwartz forwarded to Cox Automotive's General Counsel (Peter Cassat), who then responded. *See* CDK Ex. 14. The third communication concerns purported statements made by dealers to Mr. Schwartz about switching DMS providers. *See* Ex. M (Jezek Tr.) at 241-42. Those statements are hearsay, and deposing Mr. Schwartz about them would have little probative value.

*Second*, CDK notes (at 5-6) that Mr. Schwartz communicated with Reynolds's executives but fails to explain how these communications are relevant to this litigation. Nor could CDK do so. The communications do not relate either to Reynolds's and CDK's anticompetitive conduct or to the topics on which CDK seeks discovery (the competitiveness of Cox Automotive's DMS and other software products). *See* CDK Ex. 15 (referencing a "get acquainted meeting" between Reynolds's CEO Bob Brockman and Mr. Schwartz in October 2014); CDK Ex. 16 (Mr. Schwartz emailing Mr. Brockman in November 2014 in an attempt to improve relations between Cox Automotive and Reynolds in light of a negotiation impasse between *Mr. Whitworth* and Mr. Schaefer); CDK Ex. 17 (similar attempt to improve relations in January 2015). These communications even if "marginally relevant" (which they are not) would not justify Mr. Schwartz's deposition. *See Craig & Landreth, Inc. v. Mazda Motor of Am., Inc.*, 2009 WL 103650, at *2 (S.D. Ind. Jan. 12, 2009).[7]

\* \* \*

---

[7] CDK's statement (at 6) that Mr. Schwartz's interactions with Reynolds "are plainly relevant" because of "Cox's allegations that Reynolds' RCI program put Cox applications at a competitive disadvantage" is a non-sequitur.

CDK attempts (at 8-9) to excuse its inability to demonstrate that Mr. Schwartz has unique personal knowledge by complaining about deficiencies in Cox Automotive's production. CDK makes no serious attempt to substantiate that erroneous assertion. *See CFTC v. Newell*, 301 F.R.D. 348, 354 (N.D. Ill. 2014) ("The defendant cannot produce documents which do not exist. Mere speculation that there is more will not suffice.") (citation and internal quotation marks omitted). In particular, the size of Cox Automotive's production relative to CDK's and Reynolds's production is irrelevant. The central issue in this case is whether CDK and Reynolds engaged in anticompetitive conduct. *See* Dkt. 529 at 4-5. It is therefore not surprising that the vast majority of relevant documents are in CDK's and Reynolds's possession. In any case, CDK has had Cox Automotive's document production for months and has had all of Mr. Schwartz's documents since December 21, 2018. CDK could and should have brought any disputes regarding the production of Mr. Schwartz's documents to the Court before seeking to take his deposition. *See Medicines Co. v. Mylan Inc.*, 2013 WL 120245, at *2 (N.D. Ill. Jan. 9, 2013) ("[D]istrict courts may deny motions [to compel] as untimely due to unexplained or undue delay or when the late motion will require an extension of the discovery period.").[8]

## II. CDK Has Not Exhausted Other Less Burdensome Means Of Discovery

Cox Automotive previously explained that courts routinely reject attempts to depose apex executives like Mr. Schwartz when there are less burdensome means of obtaining the same evidence, and that CDK has made no such efforts. *See* Dkt. 529 at 8-9 (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (affirming protective order due in part to plaintiff's "refusal to avail herself of other reasonably available means of discovery"); *Nucap*,

---

[8] CDK claims (at 8) to have found communications with Mr. Schwartz in the files of CDK and Reynolds that Cox Automotive did not produce. But CDK does not argue that this fact makes Cox Automotive's production deficient in any respect. Nor does CDK claim that these communications support its efforts to depose Mr. Schwartz.

2017 WL 6059770, at *3 ("Plaintiffs should first seek testimony from other accessible deponents"); *Berning v. UAW Local 2209*, 242 F.R.D. 510, 513 (N.D. Ind. Apr. 9, 2007) (granting protective order in part due to "fail[ure] to pursue the desired information through less burdensome means"). CDK tacitly concedes that it has not attempted to use less burdensome means to obtain the evidence that it seeks from Mr. Schwartz by dismissing (at 10) this requirement – imposed by numerous courts – as "absurd."

The two cases that CDK relies on do not support CDK's position that it was not required to use less burdensome means of discovery. *In re Google Litigation*, 2011 WL 4985279 (N.D. Cal. Oct. 19, 2011), concerned claims that Google's search algorithm (PageRank) infringed on a patent. *See id.* at *1. The court allowed a single three-hour deposition of one of Google's co-founders (Larry Page) but not the other (Sergey Brin) only after the plaintiff had deposed six other Google employees who lacked the information sought and because Mr. Page unquestionably had unique personal knowledge – Mr. Page had personally developed the search algorithm at issue and was the named inventor on seven patents related to that algorithm. *See id.* Unlike *In re Google Litigation*, CDK has failed to use less burdensome means of discovery, and Mr. Schwartz has nowhere near the unique knowledge that Mr. Page possessed in that case. And unlike the present case, *Simpson v. Home Depot, Inc.*, 2002 WL 485661 (D. Kan. Mar. 7, 2002), concerned the deposition of a non-apex employee (a Vice President of Operations) that indisputably had relevant knowledge. *See id.* at *2.

Notably, two of the cases that CDK uses for support (at 7) impose the very requirement that CDK claims it need not satisfy. *See In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 2014 WL 257566, at *3 (S.D. Ill. Jan. 23, 2014) ("In the context of senior executives, in the majority of cases, the discovery sought can be obtained through some less intrusive means,

- 9 -

such as taking the depositions of other employees."); *RxUSA Wholesale, Inc. v. McKesson Corp.*, 2007 WL 1827335, at *4 (E.D.N.Y. June 25, 2007) (allowing depositions of executives "after all the other depositions have been completed" and only if "Plaintiff can establish that [the executives] have personal knowledge of the facts underlying the claims here and that such information cannot be derived from other sources").

CDK tries (at 10) to excuse its failure to explore less burdensome means of discovery by claiming that it has "only" 30 depositions to use on several plaintiffs. But CDK previously argued that 25 depositions were sufficient and justified that departure from the federal rules because of the number of plaintiffs. *See* Defs.' Dep. Protocol Mem., Dkt. 368 at 6-7. Having received more depositions than it requested and having used the number of plaintiffs to justify that number of depositions, CDK cannot now turn around and use the number of plaintiffs to argue that it has received too few depositions. CDK also claims (at 10) that it does not have time to take additional depositions given the April 30, 2019 close of fact discovery, but any timing constraints are the result of CDK's own decisions about who to depose and when.

In any case, CDK has belatedly begun to use less burdensome means of obtaining the discovery that it seeks from Mr. Schwartz. After Cox Automotive sought this protective order, CDK noticed three days of Rule 30(b)(6) depositions of Cox Automotive on 52 topics, many of which cover the same information that CDK seeks from Mr. Schwartz. *See*, *e.g.*, Ex. P at Topic 21 ("Cox's assessment of the competition faced by Dealertrack DMS . . . ."), at Topic 23 ("The procedures and costs associated with and the process of transitioning Dealers from a CDK or Reynolds DMS to a Dealertrack DMS, and vice versa."). At the very least, CDK should not be allowed to depose Mr. Schwartz until CDK has taken these Rule 30(b)(6) depositions and then only upon a showing of need.

**III.     The Deposition Will Be A Burdensome Distraction For Cox Automotive**

Courts frequently recognize that it is "quite costly and burdensome" for the apex executive of a company to interrupt management of the company's affairs to sit for a deposition. *Patterson*, 281 F.3d at 681-82; *see also Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan 25, 2007) (depositions of apex executives "create[ ] a tremendous potential for abuse or harassment"). This is precisely why courts have developed the so-called "apex doctrine" that applies exacting scrutiny to requests for depositions of apex executives. *See Nucap*, 2017 WL 6059770, at *1-2. These concerns apply squarely to Mr. Schwartz. He is the apex executive of a 36,000-employee company (not just a "business unit" as CDK claims (at 2)) with nearly $7 billion in annual revenue (most of which has no relationship to this litigation). This litigation is undoubtedly important to Cox Automotive, and if Mr. Schwartz had unique personal knowledge to offer, Cox Automotive would willingly present him for a deposition despite the burden imposed on the company. But because he lacks such knowledge, the burden far outweighs any limited purpose that his deposition could serve. *See id.* at *4 ("The more important consideration . . . is the executive's knowledge of relevant information.").[9]

## CONCLUSION

Cox Automotive's motion for a protective order should be granted.

---

[9] Although CDK notes (at 2, 9) that other apex executives have been or will be deposed, CDK fails to grapple with the unique personal knowledge of those other executives, such as personal involvement in the conspiracy between CDK and Reynolds. *See* Dkt. 529 at 9-10. Indeed, CDK has refused to present its own apex executive (Brian MacDonald) for a deposition on the basis that he lacks relevant knowledge unless Cox Automotive makes Mr. Schwartz available. *See id.* at 10.

Dated:  March 15, 2019   Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Plaintiffs Cox Automotive, Inc.,
Autotrader.com, Inc., Dealer Dot Com, Inc.,
Dealertrack, Inc., HomeNet, Inc.,
Kelley Blue Book Co., Inc., vAuto, Inc.,
VinSolutions, Inc., and Xtime, Inc.*

## **CERTIFICATE OF SERVICE**

      I, Derek T. Ho, an attorney, hereby certify that on March 15, 2019, I caused a true and correct copy of the foregoing **COX AUTOMOTIVE, INC., ET AL.'S REPLY IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER TO PREVENT THE DEPOSITION OF SANDY SCHWARTZ** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com