# Exhibit P

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This Document Relates to All Cases* | Hon. Robert M. Dow, Jr. |
| | Magistrate Judge Jeffrey T. Gilbert |

**NOTICE OF 30(b)(6) DEPOSITION OF COX AUTOMOTIVE, INC., AUTOTRADER.COM, INC., DEALER DOT COM, INC., DEALERTRACK, INC., HOMENET, INC., KELLEY BLUE BOOK CO., INC., VAUTO, INC., VINSOLUTIONS, INC., AND XTIME, INC.**

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants CDK Global, LLC and the Reynolds and Reynolds Company, by their counsel, will take the deposition upon oral examination of Cox Automotive, Inc. and its subsidiaries Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., and Xtime, Inc. (collectively, "Cox"), at the offices of Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, GA 30309, or such other location to be determined by mutual agreement of the parties. The deposition will take place on April 25 & 26, 2019, at 9:00AM EST.

Pursuant to Rule 30(b)(6), Cox must designate one or more officers, directors, managing agents, or other persons who will testify on behalf of Cox regarding the matters known or reasonably available to Cox with respect to the 40 topics listed in Exhibit A. The deposition will be conducted before a Notary Public, certified court reporter, or other person duly qualified to administer an oath. The deposition will continue for at least one, seven-hour day, and is subject to continuance or adjournment until completed. The deposition and testimony will be recorded by

video and stenographic means. Under Federal Rule of Civil Procedure 30(b)(3)(B), Defendants reserve the right to designate another method of recording the deposition. Defendants also reserve the right to use the video or audio recording for use as discovery, as evidence at trial or any other proceeding in this or any related action, or for any other purposes allowed by the Federal Rules of Civil Procedure and the Rules of the Court.

Dated: March 6, 2019

Respectfully submitted,

/s/ *Ross MacDonald*
Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross M. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 650-8805
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

/s/ *Matthew D. Provance*
Matthew D. Provance
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mprovance@mayerbrown.com
bmiller@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendants CDK Global, LLC and Computerized Vehicle Registration*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on March 6, 2019, I caused a true and correct copy of the foregoing Defendants' Notice of Deposition to be served by email upon counsel of record pursuant to the SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com email list.

                                     */s/ Matthew D. Provance*
                                     Matthew D. Provance
                                     MAYER BROWN LLP
                                     71 South Wacker Drive
                                     Chicago, IL 60606
                                     Phone: (312) 782-0600
                                     Fax: (312) 701-7711
                                     E-mail: mprovance@mayerbrown.com

**EXHIBIT A**

**DEFINITIONS**

Notwithstanding any definition stated below, each word, term, or phrase used in the Topics is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of this Court.

1. "Application" shall mean any automotive software products or services, whether stand-alone, web-based, or otherwise and regardless of whether the application is capable of being or is integrated with any DMS—including, but not limited to, inventory management, customer relationship management, F&I, service lane, multi-point inspection, and electronic vehicle registration and titling applications—utilized by Dealers, manufacturers, lenders and other businesses in the automotive industry.

2. "CAPTCHA prompt" means the CAPTCHA control CDK designed to prevent unauthorized, automated third-party access to its DMS, as illustrated by the following prompt:



3. "CDK" means CDK Global, LLC, as well as its officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or

1

2

predecessors, all persons acting on CDK's behalf, and any and all persons and entities affiliated with or controlled by CDK.

4. "CDK DMS" means the DMS licensed to Dealers by CDK

5. "Concern," "concerning," "reflect," "reflecting," "relate to," or "relating to" any given subject means all information which assesses, concerns, constitutes, contains, describes, discusses, embodies, evidences, identifies, records, reflects, regards, shows, states, refers or relates, directly or indirectly, in any way, to the subject matter identified.

6. "Contracted Data Extractor" means any Data Extractor with which You have contracted to provide Data Extraction and Writeback Services.

7. "Complaint" means the complaint filed by You against CDK Global, LLC, in the United States District Court for the Western District of Wisconsin, in case number 17-cv-925 on December 11, 2017.

8. "Cox," "You," and "Your" mean the following entities as well as their officers, directors, members, principals, employees, agents, representatives, contractors, subsidiaries, parents, successors or predecessors, all persons acting on Cox's behalf, and any and all persons and entities affiliated with or controlled by Cox:

      a) Cox Automotive, Inc. ("Cox Automotive");

      b) Autotrader.com, Inc. ("Autotrader");

      c) Dealer Dot Com, Inc. ("Dealer Dot Com");

      d) Dealertrack, Inc. ("Dealertrack"), including Dealertrack's DMS, Sales and F&I, and Registration and Title solutions;

      e) HomeNet, Inc. ("HomeNet");

      f) Kelley Blue Book Co., Inc. ("KBB");

    g)  vAuto, Inc. ("vAuto");

    h)  VinSolutions, Inc. ("VinSolutions");

    i)  Xtime, Inc. ("Xtime").

  9.  "Data Extractor" means a party who provides Data Extraction and Writeback Services.

  10.  "Data Extraction and Writeback Services" means the provision of services for extracting, cleansing, formatting, integrating, standardizing or organizing the data housed on a DMS and/or the insertion or "writeback" of data into a DMS.

  11.  "Dealer" means any new or used auto, truck, motorcycle, marine, recreational vehicle or heavy equipment dealer operating in the United States.

  12.  "DMS" means an enterprise system comprised of hardware, software, databases, and related data used by Dealers to manage and operate their dealerships, usually referred to as the DMS or Dealer Management System.

  13.  "PII" means Personally Identifiable Information, which is information that can be used to distinguish or trace an individual's identity, either alone or when combined with other personal or identifying information that is linked or linkable to a specific individual.

  14.  "SPI" means Sensitive Personal Information, which is information other than PII that is related to an individual and communicates information that is private or could potentially harm an individual should it be made public.

  15.  "Syndication" means the provision, transmittal or selling of data.

  16.  "Vendor" means any third-party provider that uses Dealer or DMS data to provide Dealers with services, including inventory management, customer relationship management, and electronic vehicle registration and titling.

17. "Lawsuit" means the lawsuit captioned on the foregoing notice, *In re: Dealer Management Systems Antitrust Litigation*, MDL No. 2817, Case No. 18 C 864, currently pending in the United States District Court for the Northern District of Illinois.

## TOPICS

Unless stated otherwise, the relevant time period for each of these Topics is January 1, 2013 through the present.

1. The extent to which RCI or 3PA integration or related fees paid by You to Reynolds or CDK were passed on to Dealers or other third parties.

2. Communications and marketing by Cox regarding RCI or 3PA integration or related fees.

3. The revenue and profits generated by Cox from providing Application services and solutions to Dealers using a CDK or Reynolds DMS and how those revenues and profits have changed over time.

4. A comparison of the integration and related fees charged by Reynolds and CDK in connection with their respective RCI and 3PA programs, with the integration and related fees charged by other certified integration programs (*e.g.*, OpenTrack, Open/Mate) and Data Extractors.

5. Cox's assessment of the competition faced by each of its Applications in the United States and Canada, including but not limited to assessments of future competition and the relative strengths and weaknesses of Cox Applications and the impact, if any, that Cox's payment of DMS integration fees may have on the competitiveness of Cox Applications.

6. Enhancement to Your Application offerings over time, including Applications that You have improved or that You have added to Your offerings to Dealers, including the reasons for doing so.

7. The methods and means of access by You or any Contracted Data Extractors to data maintained on Dealers' licensed CDK or Reynolds DMSs.

8. Information regarding the specific data and functionality that each Cox Application seeks through integration with the CDK and Reynolds DMSs (*i.e.*, the type of integration required to provide such data and functionality, the value of such data and functionality to Cox, the availability of substitutes for such data and functionality, and Cox's ability to obtain such data or functionality through "certified" integration programs).

9. The terms and conditions of Your agreements, if any, with Data Extractors, including the fees that Data Extractors have charged to You, and Your communications with Data Extractors related to the foregoing.

10. Any efforts of which You are aware by any person or party to circumvent or evade DMS access restriction policies or security protection procedures of Reynolds or CDK, including but not limited to Your discussions, contracts, or agreements with Data Extractors.

11. Your policies and procedures for protecting the security of data obtained from a Dealer's licensed DMS (including, but not limited to, SPI, PII, and customer social security numbers).

12. Cox's data access policies for, and methods and means of access by third parties or any Data Extractors to data maintained on, DealerTrack DMS, including any restrictions on Cox, Dealers, Vendors, or others.

5

13. Your monitoring and detection of any successful or attempted unauthorized access to, or misuse of information from, any Dealertrack DMS, including but not limited to, through computer hacking, phishing, spear phishing ("social engineering"), or by any other means.

14. Any instances of degradations in system performance, including but not limited to data corruption, writeback errors, or degradations in system integrity or performance attributable to access to Dealertrack DMS by a Vendor, Data Extractor, or other third party.

15. Any instances of degradations in system performance, including but not limited to data corruption, writeback errors, or degradations in system integrity or performance attributable to any Cox Application or DMS.

16. Any differences between how Cox Applications one the one hand and third-party Applications on the other integrate with, obtain data from, or write back data to the Dealertrack DMS, including differences in fees charged to Cox Applications and third-party Applications for comparable integrations, extractions, or write-back packages, and the reasons for such differences.

17. The means by which Cox Applications, Vendors, Data Extractors or other third-parties integrate with or otherwise access data maintained on Dealers' licensed Dealertrack DMSs, including the available application programming interfaces (APIs), data elements, and capabilities, such as real-time integration and data write-back.

18. Your Opentrack Certified Partner Program, including Your Opentrack contracts and the benefits of Opentrack certification for Opentrack participants.

19. Your monitoring of data accessed on Dealers' licensed Dealertrack DMSs by anyone other than the dealer (whether accessed by Vendors, Data Extractors or others).

20. The number of DMS customers lost and gained by Dealertrack and from and to which other DMS providers, from 2013-present. For the avoidance of doubt this request includes

all Dealers, including franchised new car Dealers, independent new car Dealers, used car Dealers, and truck, motorcycle, marine, recreational vehicle and heavy equipment Dealers.

21. Cox's assessment of the competition faced by Dealertrack DMS in the United States and Canada across all relevant metrics (such as the quality of the DMS software, the applications available with the DMS, expected integration costs, and hardware needed to operate the DMS), including but not limited to assessments of future competition and the relative strengths and weaknesses of Dealertrack DMS.

22. Research or analyses conducted directly by You or by a third party retained by You regarding the ability or willingness of Dealers to switch DMS providers and the reasons they switch or contemplate switching.

23. The procedures and costs associated with and the process of transitioning Dealers from a CDK or Reynolds DMS to a Dealertrack DMS, and vice versa.

24. The conditions and restrictions, if any, that You agree CDK or Reynolds may place on the ability of third parties to access their respective DMSs.

25. The manner and extent to which You believe You have been damaged as a result of the conduct alleged in Your Complaint, including the bases for Your alleged damages.

26. The Cox Applications that syndicate or have syndicated data obtained from CDK's or Reynolds's DMSs through the 3PA or RCI Program or any other means to third parties, the number and identity of third parties to which Cox Applications syndicate such data, the reason(s) for such syndication, and any fees charged for and revenues generated from such syndication, and the specific data fields obtained from CDK's or Reynolds's DMS that You syndicate or have syndicated to third parties on behalf of each Cox Application.

27. Your syndication of inventory data to Honcker and AutoLoop.

28. Your syndication of service appointment data to 10 Foot Wave n/k/a Spectrio.

29. Your syndication of or offer to syndicate any data obtained from a CDK or Reynolds DMS (through 3PA, RCI or otherwise) to an Original Equipment Manufacturer (OEM).

30. Your Applications' participation or involvement in OEM incentive and white-listing programs.

31. Your write-back of data into CDK's or Reynolds's DMS that originates from third parties, including the methods and means by which You receive and write-back such data and the revenues generated by such write-back of data.

32. Your policies and procedures for protecting the security of and monitoring and tracking the receipt and use of data obtained from CDK's or Reynolds's DMS that You syndicate to third parties.

33. Your syndication of data obtained from CDK's DMS internally amongst Your Applications, including but not limited to Your syndication of data from HomeNet to vAuto.

34. The methods and means by which You obtain or have obtained data maintained on CDK's or Reynolds' DMS on behalf of any Cox Application not certified or not in the process of becoming certified in the 3PA program, including through Your use of dealer-issued DMS login credentials.

35. Your solicitation, transmittal, storage, and use of dealer-issued login credentials to access CDK's or Reynolds' DMS directly or indirectly.

36. Processes or procedures that you have used to bypass or circumvent CDK or Reynolds security measures (including CAPTCHA prompts and other measures intended to prevent automated access).

37. Your licensing of vehicle inventory data maintained by Autotrader related to vehicles that are sold and marketed on the Autotrader website, including but not limited to search result page (SRP) and vehicle detail page (VDP) metrics, to third parties, including, the terms and conditions of Your licensing agreements with third parties, the licensing fees You charge those third parties, and the metrics provided to those third parties.

38. The basis for, and Your internal discussions regarding, Your representation to CDK that, "without the context and insights from Cox Automotive reporting and analytics products," reporting SRP and VDP metrics "may be more misleading than helpful for our mutual clients and Your refusal to provide CDK with links to those metrics," including why Your reporting of SRP and VDP metrics does not mislead Autotrader clients.

39. Your negotiation of the January 8, 2016 Autotrader Data Licensing Agreement, including but not limited to the provision of SRP and VDP metrics to CDK under the same Agreement.

40. Your identification and collection of documents responsive to CDK's discovery requests in this Lawsuit.