# Exhibit 5

# GUSTAFSON GLUEK PLLC
### ATTORNEYS AT LAW

CANADIAN PACIFIC PLAZA
120 SOUTH SIXTH STREET, SUITE 2600
MINNEAPOLIS, MINNESOTA 55402
TEL (612) 333-8844 • FAX (612) 339-6622

DANIEL J. NORDIN
DNORDIN@GUSTAFSONGLUEK.COM

December 25, 2018

**VIA E-MAIL**
Jessica A. Michaels
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
jmichaels@mayerbrown.com

      Re: *In re Dealer Management Systems Antitrust Litigation*,
           No. 1:18-cv-00864
           CDK's Privilege Log

Dear Jessica:

    I write on behalf of the Dealership Plaintiffs with regard to CDK Global, LLC's ("CDK") revised privilege log (the "Log"), which Plaintiffs received on December 5, 2018. While CDK's revision of the Log to include the email addresses of the listed individuals corrected an important facial deficiency in the original log, closer inspection and analysis of the Log reveals additional deficiencies that cause a large number of entries to fall short of the burden required for establishing privilege. In addition, some Log entries provide information that appears to contradict CDK's privilege claim.

    Dealership Plaintiffs' analysis begins with the principle that "[a] party asserting attorney-client privilege must establish: "(1) that legal advice of any kind was sought (2) from a lawyer in his capacity as such, (3) the communications related to that purpose, (4) they were made in confidence (5) by the client and/or his agent, (6) were at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless waived." *Glenwood Halsted Ltd. Liab. Co. v. Vill. of Glenwood*, No. 11-CV-6772, 2013 U.S. Dist. LEXIS 4471, at *3-4 (N.D. Ill. Jan. 11, 2013), *citing United States v. White,* 950 F.2d 426, 430 (7th Cir.

Page 2
December 26, 2018

1991).   The party claiming privilege has the burden of establishing all of the essential elements of the privilege. *United States v. BDO Seidman, LLP*, 337 F.3d 802, 811 (7th Cir. 2003); Glenwood Halsted Ltd. Liab. Co. v. Vill. of Glenwood, No. 11-CV-6772, 2013 U.S. Dist. LEXIS 4471, at *4-5 (N.D. Ill. Jan. 11, 2013) ("The burden of establishing the essential elements of the attorney-client privilege, including the fact that the document was not disclosed to non-privileged recipients, rests with Defendants, as the party asserting the privilege."). Further, a party claiming privilege must provide sufficient information to "enable other parties to assess the claim." Fed. R. Civ. P. 26.

**CDK's Remaining Log Deficiencies**

1) <u>Required information is not provided for emails claimed as privileged that are not the top/most recent email in a chain.</u>

   The CDK Log includes 2,287 email chains for which the privilege claim relates to an e-mail that is not the top/most recent in the chain.  Because CDK has logged only the top/most recent email, the entry does not disclose the senders or recipients of the email for which privilege is claimed.[1]

More specifically:

- 1,992 documents are described in the Log as "including prior emails to [a named lawyer]."  (1,986 are redacted, 6 are withheld.)  For example, Bates No. CDK-2393890 is described in the Log as: "Email chain between clients including prior email(s) to Mayer Grashin ESQ from clients providing information to obtain legal advice regarding In re DMS Antitrust litigation and/or settlement and prepared in anticipation of and connection with In re DMS Antitrust litigation."  The Log discloses information related to the top/most recent email, an email among non-lawyers with five recipients.  The document itself shows that the email for which privilege is claimed was

---

[1] Paragraph 9(b) of the Stipulated Order Re: Discovery of Electronically Stored Information ("ESI") (ECF No. 105) provides: "For each Document comprising a chain of privileged e-mails, the Withholding Party need only include one entry for the top/most recent email on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately."  The documents at issue here do not "comprise a chain of privileged e-mails," as the top/most recent email in each chain is not privileged.  Moreover, nothing in the Stipulated Order permits a party to omit from a privilege log the essential information required by Rule 26 (*e.g.,* the sender and recipients of emails claimed to be privileged), which can be included without the need to "log each e-mail contained in the chain separately."

Page 3
December 26, 2018

    sent directly to 14 people and cc'd to 4 additional people, one of whom was Mr. Grashin.

- 295 entries are described in the Log as "forwarding [an] email chain" containing privileged information. (19 are redacted, 276 are withheld.) Example: CDK-687630. The entry for the top/most recent email shows three individual recipients. The forwarded email, which is the subject of the privilege claim, was sent to different recipients, including "AUS Account Directors" and "AUS Client Execs."

In both categories, the Log fails to disclose the senders and recipients of the emails claimed to be privileged, basic information required to establish CDK's privilege claims.

2) <u>Emails "cc'd" to attorneys are incorrectly described as "email(s) to" the attorney.</u>

    The privilege claims for many of the email chains described above are premised on the inclusion of "prior emails to" an attorney (*e.g.,* Mayer Grashin). In fact, in many of those emails were not sent directly to the attorney but, rather, the attorney was included on the "cc:" line. CDK-2393890 is one such example.

    In the context of assessing a privilege claim, there is a significant difference between an email sent directly to an attorney and one sent to non-attorneys with an attorney merely receiving a "cc."

> The mere fact that [a lawyer] was the recipient of a communication does not make the communication with her privileged. *E.g., In re Avantel, S.A.,* 343 F.3d 311, 321 n.11 (5th Cir. 2003) (sending communications to in-house counsel does not make them privileged; if that were the case, corporations would routinely copy in-house counsel on every communication); *Wierciszewski v. Granite City Illinois Hosp. Co.*, 2011 U.S. Dist. LEXIS 128772, 2011 WL 5374114 at *2 (S.D. Ill. Nov. 7, 2011) (copying of counsel on email does not make it privileged; *communications between employees at least must be directed at counsel for purpose of seeking legal advice*). Communications with her are privileged only if they were made *primarily* to obtain her legal advice.

Page 4
December 26, 2018

*First Fin. Bank, N.A. v. Citibank, N.A.*, No. 1:11-cv-0226-WTL-DML, 2012 U.S. Dist. LEXIS 23800, at *15-16 (S.D. Ind. Feb. 24, 2012) (emphasis added).

Because CDK has not met its burden to establish privilege for these entries, Dealership Plaintiffs request that CDK produce them. To the extent that CDK persists in its privilege claims for document that were not sent directly to an attorney, CDK should supplement the Log descriptions for such entries to meet its burden of establishing privilege.

**CDK's Log Entries Contradicting Privilege Claims**

1) Information disclosed outside of CDK.

Communications not held in confidence by the client are not privileged. The email addresses provided in CDK's revised log reveal numerous entries were sent and/or received by people whose email addresses are neither those of CDK nor CDK's outside counsel. "Distribution of materials to third parties outside the company would obviously, with rare exceptions, result in a waiver." *United States ex rel. McGee*, No. 11 C 3482, 2017 U.S. Dist. LEXIS 51041, at *6 (N.D. Ill. Apr. 4, 2017); *Motorola Solutions, Inc. v. Hytera Comms. Corp.*, No. 17 C 1973, 2018 WL 1804350, at *4 (N.D. Ill. April 17, 2018) ("Thus, statements made to one's attorney in the presence of a third party non-lawyer, who is not necessary to the obtaining or giving of legal advice will result in a waiver of the privilege.").

CDK should produce all emails disseminated outside the company or provide specific information to justify its claim that such dissemination did not waive privilege.

2) Communications with in-house counsel not predominantly legal in nature.

It is well established that when an attorney provides both legal and non-legal services to a client, *the legal aspect must predominate in the communication under review* in order for it to be protected by the attorney-client privilege. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 12, 137 (N.D. Ill. 1993) ("[T]he privilege will not apply where the legal advice is incidental to business advice.")." *Moore v. Bd. of Tr*s., No. 09 C 4479, 2010 U.S. Dist. LEXIS 120120, at *7 (N.D. Ill. Nov. 8, 2010) (emphasis added).

"Document descriptions like 'reflecting request for legal advice' do not make out a claim of attorney-client privilege. . . . The question is whether legal advice or a client confidence is revealed. Descriptions of documents entailing

Page 5
December 26, 2018

contract negotiations and invoices are similarly suspect." *United States ex rel. McGee v. IBM Corp.*, 2017 U.S. Dist. LEXIS 51041, at *7-8.

The CDK Log describes many of the documents claimed to be privileged as pertaining to subjects not predominantly legal in nature (*e.g.,* "Email chain between clients including prior email(s) relaying request of counsel John Warrick ESQ regarding negotiation of contracts for sales and marketing services;" "Email between clients forwarding email chain to Ken Gladish ESQ from client requesting legal advice regarding access to data on CDK's DMS."). The likelihood that these documents are not predominantly legal is magnified where the attorney involved was not a direct recipient of the email claimed to be privileged, a fact not accurately disclosed for many entries in the Log.

CDK should produce all documents involving communications with counsel where the advice being sought is not predominantly legal in nature. To the extent CDK continues to assert that the advice for the identified entries is predominately legal in nature, it should provide updated descriptions that sufficiently establish that claim.

3) <u>Communications disclosed beyond those necessary, thus waiving privilege.</u>

"[I]n the corporate context, the attorney-client privilege extends only to an employee who communicates with counsel at the direction of corporate superiors regarding matters within the scope of the employee's duties for the purpose of securing legal advice. Communications going outside that boundary can waive the privilege." *United States ex rel. McGee v. IBM Corp.*, 2017 U.S. Dist. LEXIS 51041. "[T]he sharing of privileged documents with employees who do not need the information waives the privilege." *Pactiv Corp. v. Multisorb Techs., Inc*., No. 10 C 461, 2012 U.S. Dist. LEXIS 69323, at *6-7 (N.D. Ill. May 18, 2012), citing Muro v. Target Corp., 04-6267, 2006 U.S. Dist. LEXIS 86030, at *11-12 (N.D. Ill. Nov. 28, 2006).

The Log includes emails sent to distribution lists without identifying the individual recipients, such as AUS Account Directors, AUS Client Execs (376), DMI Client Execs (160). This represents a serious defect in the privilege log; without the identities and job descriptions of the persons on the distribution lists, there is no way for an opposing party to assess whether they are within the sphere of corporate privilege, as is required by Federal Rule of Civil Procedure 26(b)(5)(A)." *Muro v. Target Corp*., 250 F.R.D. 350, 364 (N.D. Ill. 2007).

Page 6
December 26, 2018

Many emails claimed to be privileged were subsequently disseminated to broader groups of individuals with unprivileged business information. For example, CDK-0234171 contains an email from Leigh Ann Conver to Howard Gardner and Malcolm Thone, purportedly "relaying legal advice of Tom d'Ambrosio ESQ regarding contract enforcement and/or termination." Notably, Mr. d'Ambrosio's name appears nowhere in the entire document– if it was redacted, it should not have been– and the document contains no restriction on further dissemination. The purportedly privileged information was subsequently forwarded to at least eight other individuals in unprivileged business emails with no legal content. Thus, even if the redacted email from Ms. Conver was privileged, the subsequent disseminations waived any privilege.

CDK should produce such documents with the recognition that any privilege was waived, or provide information about the capacity of each recipient and an explanation of each recipient's need for the purportedly privileged information. *See Pactiv Corp. v. Multisorb Techs., Inc.,* No. 10 C 461, 2012 U.S. Dist. LEXIS 69323, at *6-7 (N.D. Ill. May 18, 2012) ("[T]he sharing of privileged documents with employees who do not need the information waives the privilege").

4) <u>No Attorney Identified as Involved in Communication</u>

That an attorney is not among the author or recipients of a document on a privilege log "doesn't necessarily scotch a claim of privilege or work product, but it does raise red flags." *United States ex rel. McGee v. IBM Corp.*, 2017 U.S. Dist. LEXIS 51041, at *5-6.

A number of entries on the Log do not identify an attorney as having been involved in the communication claimed to be privileged. In all such cases, CDK should produce the document in question or identify the attorney who is the source of the purported privilege.

\* \* \*

In sum, CDK's Log

> reflects a style of dealing with internal corporate communications that is inherently at odds with the basic principle that the ability to withhold otherwise-discoverable information is a privilege and an exception to the general rule of discoverability. It is difficult to imagine how communications circulated among such a large number of corporate employees without -- or in spite of -- an

> expression of confidentiality or limitation on further dissemination, and intermingled in so many instances with non-privileged business discussion, could have been created with the intention of being attorney-client privileged and could have, in fact, remained confidential communications.

*Muro v. Target Corp.*, 243 F.R.D. 301, 310 (N.D. Ill. 2007), objections sustained in part and overruled in part by *Muro*, 250 F.R.D. 350. CDK has not demonstrated privilege as to these documents, and Dealership Plaintiffs request that CDK produce them accordingly. Due to the motion to compel deadline of January 14, Dealership Plaintiffs need to have CDK's final position on Dealership Plaintiffs' privilege log challenges by January 4, 2019. Dealership Plaintiffs are available to meet and confer on these issues in the meantime.

Sincerely,

GUSTAFSON GLUEK PLLC

*/s/ Daniel J. Nordin*

Daniel J. Nordin

cc: Britt Miller
     Lead MDL Plaintiff Counsel of Record