# Exhibit 6

PUBLIC VERSION

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

File Number: 48KZ-266044

January 4, 2019

**VIA EMAIL**

Daniel J. Nordin
Gustafson Gluek PLLC
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
dnordin@gustafsongluek.com

   Re: *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL No. 2817 (N.D. Ill.)

Dear Dan:

  I write this letter in response to your December 25, 2018 letter regarding Reynolds's privilege log.

  **1.** **Email chains**

  In your letter, you seek information relating to emails that extends beyond the requirements for privilege logs set forth in the stipulated ESI Order. *See* ESI Order (Dkt. 105). You already previously demanded information relating to emails beyond the requirements of the ESI Order, which Reynolds provided.[1] Now, you fault Reynolds for only including sender or recipient information in its privilege log relating to the "top/most recent email" in an email chain. However, this is expressly permitted under paragraph 9(b) of the ESI Order, which provides:

> "For each Document compromising a chain of privileged e-mails, the Withholding Party need only include one entry for the top/most recent email on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately."

---

[1] Your November 9 letter requested that Reynolds provide email addresses for the senders and recipients of all logged documents, which was not required under the ESI Order. *See* ESI Order (Dkt. 105). Nevertheless, following our November 20 meet and confer, Reynolds revised its privilege log to provide email addresses for senders and recipients, to the extent the information was available in the metadata. All other parties similarly revised their privilege logs. This was not required under the ESI Order, and indeed, no party other than the dealership plaintiffs had previously provided such information in their privilege logs.

Daniel J. Nordin
January 4, 2019
Page 2

Dealership plaintiffs agreed to this provision following an extensive negotiation and meet and confer process. The obvious purpose of this stipulated provision was to reduce the burden on all parties with respect to logging of email chains by permitting the parties not to separately log individual emails within a string of emails. It makes no sense for dealership plaintiffs to complain now that Reynolds, consistent with the ESI Order, has provided a privilege log that does not separately log emails within a single email chain.

You assert that for redacted email chains, as opposed to entirely withheld email chains, the entire document does not literally constitute a "chain of privileged e-mails" and therefore paragraph 9(b) above does not apply. Again, this makes no sense. Paragraph 9(b) expressly applies to "privilege/redaction log[s]" and, therefore, redacted chains also fall within the language of 9(b). There is also no logical reason why the parties would agree to reduce the burdens associated with logging entirely privileged email chains but not redacted email chains. Furthermore, as to redacted email chains, the additional sender and recipient information you seek is available by reviewing the redacted documents themselves, as you concede in your letter.

With respect to fully privileged email chains that have been withheld, your letter does not dispute that Reynolds has logged them consistently with paragraph 9(b). Instead, you simply argue that Reynolds has withheld "information required by Rule 26." But again, the parties in this case negotiated and agreed on paragraph 9(b) of the ESI Order, and that paragraph, by its plain terms, does not require Reynolds to provide the information you seek. Default rules in the FRCP on a variety of subjects have been modified through stipulated orders, including as to privilege logs. The time to raise these issues was when the ESI Order was being negotiated in March and April, not eight months later, after Reynolds has already spent significant time and resources preparing privilege logs according to agreed requirements.

## 2. Entries described as "request for legal advice/opinion."

According to dealership plaintiffs, documents in Reynolds's privilege log described as "request for legal advice/opinion" are "incorrect or misleading" because some documents are between non-attorneys, some redactions are too short to be privileged, and some documents only copy an attorney but are not sent directly to an attorney. None of these presents a legitimate reason why a document listed on Reynolds's privilege log as a request for legal advice or reflecting a request for legal advice would not be privileged.

Communications between non-attorneys at Reynolds reflecting or regarding privileged requests for legal advice are privileged. As Judge Gilbert has already recognized, communications between non-attorneys at Reynolds regarding privileged communications are also privileged. *See* 11/13/18 Minute Entry (Dkt. 439) ("The communication of attorney client privileged information from one employee to another when both employees are directly concerned with or need to know the information in the course of their employment does not waive the privilege."); *see also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 434 (N.D. Ill. 2006) ("Plaintiffs' insistence that an attorney must be involved as a participant in the communication before it can be found to reflect a client confidence or legal advice is misplaced.").

Daniel J. Nordin
January 4, 2019
Page 3

In addition, a request for legal advice is still privileged even if it is brief and even if an attorney is only copied on the request. *See, e.g., United States v. Supervalu, Inc.*, 2018 WL 2416588, *4 (C.D. Ill. May 29, 2018) (holding that a single sentence in an email copying an attorney was properly redacted as a request for legal advice).

Furthermore, a communication of background information relating to a request for legal advice is also privileged, even if the communication itself is not literally a request for legal advice. *Id.* (holding that an email "consist[ing] of a copy of information on a third-party website" was privileged because it was sent "to provide background information . . . as part of a request for legal advice.").

Nevertheless, Reynolds is willing to undertake a re-review of each entry in its privilege log that includes the phrase "request for legal advice/opinion" in the description. We suggest that all parties agree to a 30-day extension of the privilege log motion to compel deadline to provide sufficient additional time for the parties to continue their investigation and discussion.

### 3. Purported third party email addresses

At pages 4-5 of your letter, you assert that Reynolds's privilege log improperly contains emails sent to individuals with non-Reynolds email addresses. You provide the following examples: cdk.com, opedealerexchange.com, rsmus.com, whoscalling.com, and nakedlime.com. Each is addressed below.

#### a. Joint venture communications (relates to cdk.com and opedealerexchange.com).

Reynolds and CDK jointly own the joint ventures Open Dealer Exchange ("ODE") and Computerized Vehicle Registration ("CVR"). Accordingly, Reynolds's privilege log includes certain privileged communications with individuals at CDK or ODE or CVR. All of the communications with cdk.com email addresses appearing in the Reynolds privilege log are communications that relate to the ODE or CVR joint ventures (with one exception[2]). All of the communications with opedealerexchange.com email addresses relate to ODE.

Communications between Reynolds, CDK, CVR and/or ODE concerning legal issues relating to CVR or ODE are privileged. There is no waiver under the common interest doctrine to the extent that Reynolds and CDK and each of their joint ventures shares a common legal interest. *See, e.g., Kirsch v. Brightstar Corp.*, 68 F. Supp. 3d 846, 856 (N.D. Ill. 2014) (holding that documents shared by Brightstar with third party Tech Data and their joint venture TDMobility, including email communications between attorneys and non-attorneys for the three entities, were privileged and "protected from disclosure under the common interest . . . doctrine[].");  *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 429, 434-35 (N.D. Ill. 2006) (holding that emails exchanged between nonattorneys of Noranda and DuPont concerning legal

---

[2] The one exception is entry 260 in Reynolds's privilege log, which upon re-review, Reynolds is removing from its privilege log and producing.

Daniel J. Nordin
January 4, 2019
Page 4

issues relating to their joint venture were privileged and protected under the common interest doctrine).

      **b.  Communications with rsmus.com.**

Reynolds's privilege log contains six entries relating to RSM US LLP. *See* Entries 79, 472, 711, 748, 1410 and 2017. Upon re-review, these documents were inadvertently logged and Reynolds will produce them.

      **c.  Communications with Reynolds d/b/a's (relates to whoiscalling.com and nakedlime.com).**

Who's Calling and Naked Lime are d/b/a's of Reynolds. Communications with these email addresses are not communications with third parties. Reynolds previously informed dealership plaintiffs that Naked Lime is a Reynolds d/b/a in an email dated July 6, 2018.

The excel chart you provided with your letter also challenges communications with the additional Reynolds d/b/a's Callbright and ReverseRisk. These are also not third parties.

In addition, your excel chart challenges certain communications with individuals who have an assurant.com email address. Assurant is the f/k/a of Secure Title Administration, which is a d/b/a of Reynolds.

      **d.  Communications with other third parties**

Notwithstanding the above, Reynolds is continuing to investigate entries in its privilege log challenged in the excel chart you provided as purportedly reflecting communications with third parties. Again, Reynolds suggests a 30-day extension of the motion to compel deadline to allow Reynolds to complete its investigation and allow the parties to continue their meet and confer.[3]

      **4.  Purported non-legal communications**

At page 5 of your letter, you assert that Reynolds's privilege log improperly contains communications that are not predominantly legal in nature. You seem to be conflating the subject matter of a communication with the question of whether the communication involves legal advice. Legal advice can be and often is provided on commercial subjects. The fact that a description in Reynolds's privilege log makes reference to a draft contract or letter does not mean that the communication is not legal in nature. No document in Reynolds's privilege log was withheld on the grounds that it involved business negotiations or non-legal issues. However, documents were withheld if they involved legal advice relating to contracts, letters, or any other subject, as the descriptions in the privilege log make clear. It is permissible to

---

[3] One note: The excel chart you provided with your letter challenges communications with Chris Pogue. Mr. Pogue was an expert retained in connection with a lawsuit filed against Reynolds by eLeads in C.D. Cal. Mr. Pogue submitted an expert report for Reynolds in that matter to

Daniel J. Nordin
January 4, 2019
Page 5

withhold such documents, and the descriptions are adequate. *See, e.g., Kirsch v. Brightstar Corp.*, 68 F. Supp. 3d 846, 856 (N.D. Ill. 2014) (redactions "concerning legal advice related to . . . Earn-Out provision" in contract were proper); *Stafford Trading, Inc. v. Lovely,* 2007 WL 611252, *7-12 (N.D. Ill. Feb. 22, 2007) (holding that numerous documents relating to a potential transaction were properly withheld); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433-34 (N.D. Ill. 2006) (holding that privilege log entries were "adequately described as either relating to legal advice regarding customer transactions and/or proposed contracts . . . .").

### 5. Group emails

At pages 5-6 of your letter, you assert that Reynolds's privilege log does not identify members of group emails (so that plaintiffs can determine whether they are "within the sphere of corporate privilege"), and you assert that Reynolds has improperly withheld documents that were distributed to large groups of recipients.

With respect to Reynolds's group email addresses, based on our investigation to date, none of them include non-Reynolds employees or individuals. In addition, the purpose of each group is apparent form the name of the group (for instance "DataSecurity" is a group of Reynolds employees with duties relating to data security). Therefore, communications with these groups were appropriately logged as privileged, maintained in confidence, and restricted to individuals who had responsibilities relevant to the communications at issue. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 5180, *4-5 (N.D. Ill. 1996) (documents properly logged as privileged where they were distributed to groups employees involved in a particular matter and maintained in confidence).

The number of recipients for a particular email or document is irrelevant, as was made clear by the *Muro* case you cite in your letter:

> "There is no rule of law . . . that puts a numerical upper limit on the number of corporate employees who can be within the sphere or privilege. Rather, privilege can extend to any employee who communicates with counsel at the direction of her superiors, regarding matters within the scope of her duties. Nor need this be a small group; in *Upjohn*, for instance, communications with eighty-six corporate employees were held to be within the scope of a potential privilege."

*Muro v. Target Corp.,* 250 F.R.D. 350, 364 (N.D. Ill. 2007) (citations omitted) (discussing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)).

### 6. Communications between non-attorneys

At pages 6-7 of your letter, you point out that Reynolds's privilege log contains emails between non-attorneys. As set forth above, and as we discussed during our prior meet and confer, and as Judge Gilbert has recognized, communications between non-attorneys can be privileged. *See* 11/13/18 Minute Entry (Dkt. 439) ("The communication of attorney client privileged information from one employee to another when both employees are directly concerned with or need to know the information in the course of their employment does not

Daniel J. Nordin
January 4, 2019
Page 6

waive the privilege."); *see also In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 434 (N.D. Ill. 2006) ("Plaintiffs' insistence that an attorney must be involved as a participant in the communication before it can be found to reflect a client confidence or legal advice is misplaced.").

      Accordingly, Reynolds has no obligation to do anything differently with respect to privilege log entries reflecting communications between non-attorneys.  However, to be clear, Reynolds has already provided some additional information as to the attorney that is the source of claimed privilege.  Specifically, the description field for these documents include references to "Reynolds Outside Counsel" or "Reynolds In-House Counsel."  This will inform you as to whether the source of the privilege is outside or in-house counsel.  Moreover, Reynolds provided a key together with its privilege log.  The key lists names of outside and in-house counsel.  References to in-house our outside counsel relate to the individuals identified in the key.

      We are not aware of any authority stating that additional information is either necessary or required with respect to privilege log entries reflecting communications between non-attorneys.

Sincerely,

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:228454654