# Exhibit 1

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

January 18, 2019

*Via Electronic Mail*

Jessica A. Michaels
Mayer Brown
71 South Wacker Drive
Chicago, IL 60606

    Re:    *In re Dealer Management Systems Antitrust Litig.*, MDL No. 2817

Dear Jessica:

I write in response to your January 7[1] letter regarding Defendants' objections to Authenticom's revised privilege and redaction logs produced to Defendants on December 6, 2018.

**1. Allegedly Vague Descriptions**

Defendants assert that Authenticom's privilege log contains "vague descriptions" that are not sufficient to establish the privileged nature of the documents. Although Defendants' letter requests that "Authenticom supplement the Log descriptions for *each* entry" (emphasis added), we understand Defendants' assertion to apply to 342 documents for which Defendants have asserted as a "Basis for Challenge" that the "description is vague."

Defendants' assertion that all of Authenticom's log entries are insufficiently descriptive is belied by an examination of the log. By way of example, AUTH_MDL_PRIV_0016, is an email from Authenticom's Chief Operating Officer to Authenticom's general counsel, which is described as "Confidential communication reflecting the request for legal advice in anticipation of litigation regarding potential antitrust lawsuit.|" An internal communication to Authenticom's attorney seeking legal advice in anticipation of antitrust litigation has plainly satisfied the requirements of the federal rules to describe the subject matter, purpose, and basis of privilege. That description provides "the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992).

---

[1] Received at 12:45 am EST on January 8, 2019.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Michaels
Page 2

We further note that the specificity provided by Cox Automotive mirrors what Defendants have themselves provided in their privilege logs. CDK's privilege log contains entries with a description of the form "[d]ocument reflecting legal advice of [an attorney] regarding regulatory investigation and/or litigation." In addition, there appears to be more than 1,300 entries on CDK's privilege log of the form, "[d]ocument reflecting legal advice of [an attorney] regarding contract enforcement and/or termination," or "[d]ocument reflecting legal advice of [an attorney] regarding contract interpretation." Similarly, Reynolds has a bevy of entries with descriptions such as "[e]mail chain requesting legal advice from Reynolds In-House Counsel regarding draft agreement," *see* Reynolds Log 4, or "Email chain requesting legal advice and analysis from Reynolds In-House Counsel regarding dealer negotiations." *See* Reynolds Log 2265.

As such, we strongly disagree that "each" of the challenged Authenticom descriptions are inadequate. Nevertheless, *if* Defendants will do likewise, in order to avoid waste of the parties and the court's resources in what Authenticom believes would be futile motion practice, Authenticom will supplement the descriptions it has provided for the Log entries specifically challenged by Defendants on this basis. To the extent that Defendants seek relief regarding purportedly "vague" descriptions on Authenticom's privilege log, Authenticom will request that any relief ordered by the Court apply reciprocally to Defendants.

**2. Work Product**

Defendants' assertion that all of Authenticom's log entries concerning work product are insufficient is incorrect. Although Defendants' letter requests that "Authenticom supplement the Log descriptions for *each* entry" (emphasis added), Defendants have only identified 233 documents that they challenge because it purportedly "cannot be determined from the description whether the requirements of the work product doctrine have been met."

Indeed, the very first log entry asserting work product protection, AUTH_MDL_PRIV_2007, is an internal Authenticom email only months prior to the filing of the lawsuit, and is described as "[c]onfidential communication requesting and gathering information necessary for counsel to advise in anticipation of litigation regarding CDK and Reynolds data access issues." This description plainly discloses the nature of the anticipated litigation (in fact, this litigation), indicates the communication is confidential and was undertaken to provide necessary information to counsel, and that the communication is in anticipation of litigation. It is difficult to discern what more information Defendants believe was required of Authenticom to establish that the document is protected by the work product privilege. To that point, both Defendants make liberal use of substantially similar entry descriptions. *See, e.g.* Reynolds Privilege Log 116 ("Calendar invitation prepared in anticipation of/in connection with litigation reflecting information to counsel for Reynolds Outside Counsel regarding Authenticom litigation."); CDK_Priv_0005601 ("Email between clients gathering information at request of counsel Mayer Grashin ESQ regarding proposed merger with Auto/Mate and prepared in anticipation of and connection with the same potential litigation.")

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Michaels
Page 3

Nevertheless, *if* Defendants will do likewise, in order to avoid waste of the parties and the Court's resources in what Authenticom believes would be futile motion practice, Authenticom will supplement the descriptions it has provided for the Log entries asserting work-product privilege specifically challenged by Defendants on this basis. To the extent that Defendants seek relief regarding purportedly Authenticom's purportedly insufficient work-product descriptions, Authenticom will request that any relief ordered by the Court apply reciprocally to Defendants.

### 3. No Author and/or Recipient Listed

With respect to the handful of entries with blank, "0", or "unspecified sender" sender fields, to the extent such documents have available author or sender information, it was withheld as a result of a processing error. Authenticom will supplement its privilege log to accurately reflect the available information for the author field.

With respect to the "recipient" fields, most[2] documents in that category were not communications such that the document had a "recipient." As such, it would be impossible to populate a "recipient" field beyond the information available in the "custodian" field, which plainly reflects the identified persons who were in possession of such documents as collected. Authenticom further notes that CDK's own log has over 400 entries missing author and/or sender metadata, and Reynolds has nearly 300 such entries. To the extent such information is available, Defendants are obligated to provide it. To the extent Defendants seek relief with respect to purportedly missing author and/or recipient information, Authenticom will request that any relief apply reciprocally to Defendants.

### 4. Communications with Non-Authenticom Entities or Persons

Defendants challenge a number of privilege entries that purportedly include third parties, thereby breaking the assertion of privilege. We address these below.

*Jeff Van Dongen/Motormindz*

Five entries in the Log include communications with Jeff Van Dongen of Motormindz, a communications firm hired by Dealervault to assist with the marketing and launch of its products and messaging. Upon further investigation, AUTH_MDL_PRIV_1755, AUTH_MDL_PRIV_0791, AUTH_MDL_PRIV_1310, AUTH_MDL_PRIV_1738, and AUTH_MDL_PRIV_1755 were logged inadvertently and Authenticom will produce them.

---

[2] Upon further investigation, one such document is a scanned communication that was improperly populated, and such supplemental information as is available will be produced with the amended Log.

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

Jessica Michaels
Page 4

The remaining communication with Motormindz, AUTH_MDL_PRIV_1409, is a confidential communication sharing attorney work product prepared in anticipation of litigation and common interest privileged communications, seeking input from a communications agent. Disclosure of work product to third-parties does not waive the privilege over such documents unless disclosure "substantially increase[s] the opportunity for potential adversaries to obtain the information." *Appleton Papers, Inc. v. E.P.A.*, 702 F.3d 1018, 1025 (7th Cir. 2012). Given the nature of the relationship between Authenticom and Motormindz and the circumstances of the disclosure, that standard was not met, and the communication's privilege was not waived. Nor does disclosure of attorney-client privileged communications to agents. *Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 529 (N.D. Ill. 2011) ("when the third party is an agent of the client, no waiver occurs."); *Heriot v. Byrne*, 257 F.R.D. 645, 665 (N.D. Ill. 2009) ("the attorney-client privilege applies to third parties who are agents of either the lawyer or the client.").

*NADA*

Upon further investigation, Authenticom will produce AUTH_MDL_PRIV_1636.

*BMO Harris*

Upon further investigation, Authenticom will produce AUTH_MDL_PRIV_0127, AUTH_MDL_PRIV_1609, AUTH_MDL_PRIV_1991, as well as redacted documents AUTH_MDL_PRIV_1662, AUTH_00471022, AUTH_00471744, AUTH_00471745, AUTH_00471746, and AUTH_00471747.

AUTH_MDL_PRIV_0296, however, constitutes attorney-created work product concerning litigation strategy for the present litigation. Disclosure of work product to third parties does not waive the privilege unless doing so "substantially increase[s] the opportunity for potential adversaries to obtain the information." Appleton Papers, Inc. v. E.P.A., 702 F.3d 1018, 1025 (7th Cir. 2012). BMO Harris, as Authenticom's main creditor, is unlikely to betray such confidences; disclosure of work product to the bank thus does not meet this high standard. Authenticom will supplement its log with respect to this entry.

*Team Velocity*

Upon further investigation, Authenticom will produce AUTH_MDL_PRIV_0308, AUTH_MDL_PRIV_0446, AUTH_MDL_PRIV_0876, AUTH_MDL_PRIV_0921, AUTH_MDL_PRIV_1036, and AUTH_MDL_PRIV_1466.

*Edmunds*

Upon further investigation, Authenticom will produce AUTH_MDL_PRIV 001.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Michaels
Page 5

*View Point/Brandi*

Authenticom will produce AUTH_MDL_PRIV_1241 and AUTH_MDL_PRIV_0005.

*Davis Polk*

As you recognize in the letter, Authenticom has asserted the common-interest exception to the third-party waiver doctrine with respect to its common interest with Dominion and their attorneys at Davis Polk. Moreover, there was consideration during the relevant time period of Davis Polk also representing Authenticom. Thus, disclosure of attorney-client (not to mention work-product) privileged communications to Dominion's attorneys at Davis Polk did not break the attorney-client privilege. Authenticom will supplement the two impacted log entries to clarify.

*Gilbert Hale*

As you noted, Mr. Hale is the owner of a third-party data integrator, New Freedom Data Resources. AUTH_MDL_PRIV_1676 and AUTH_MDL_PRIV_0392 both constitute confidential communications between Authenticom and Mr. Hale regarding the collection of information for the prosecution of this litigation, undertaken at the direction of counsel. Authenticom thus stands by its assertion of common interest and work product privilege over these communications with Mr. Hale. *See United States v. Nobles*, 422 U.S. 225, 238–39 (1975) ("One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself."); *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 294 (N.D. Ill. 2005) ("it is the common legal interest, not business interest, that is central to application of the common interest doctrine."); *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 327 (N.D. Ill. 2008) (common interest privilege "generally applies to any parties who have a 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants.").

Additionally, upon further investigation it appears that AUTH_MDL_PRIV_0557 was inadvertently logged and Authenticom will produce it.

*Lori Zimmer*

Lori Zimmer was retained by Authenticom to work at the company, fully integrated into the executive team, working on the company's behalf as an agent, with full confidentiality and other such obligations. She served as part of the executive team meetings, participated in formulation of corporate strategy in the run-up to litigation, and was otherwise thoroughly integrated into the company to the extent that she was a functional equivalent of an employee. In such circumstances, "the disclosure of privileged communications to independent contractors and other third parties who are functional equivalents of employees, will not waive the attorney-client

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Michaels
Page 6

privilege." *Flagstar Bank, FSB v. Freestar Bank, N.A.*, 2009 WL 2706965, at *5 (N.D. Ill. Aug. 25, 2009) (citing *In re Bieter Co.*, 16 F.3d 929, 937–38 (8th Cir.1994)); *Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 529 (N.D. Ill. 2011) ("when the third party is an agent of the client, no waiver occurs."); *United States Sec. & Exch. Comm'n v. Hollnagel*, 2010 WL 11586980, at *14 (N.D. Ill. Jan. 22, 2010) (independent contractors who were embedded with company and held out as employees did not break privilege); *Heriot v. Byrne*, 257 F.R.D. 645, 665 (N.D. Ill. 2009) ("the attorney-client privilege applies to third parties who are agents of either the lawyer or the client."); *Rager v. Boise Cascade Corp.*, 1988 WL 84724, at *4 (N.D. Ill. Aug. 5, 1988) (independent contractors "was an agent who should be treated as an employee rather than as an independent contractor" for purposes of privilege).

*William Lamm*

As noted, disclosure of Attorney-Client communications to the agent of a client does not waive privilege. William Lamm, hired by Authenticom to help market the company, was such an agent, and thus did not break privilege. *Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 529 (N.D. Ill. 2011) ("when the third party is an agent of the client, no waiver occurs."); *Heriot v. Byrne*, 257 F.R.D. 645, 665 (N.D. Ill. 2009) ("the attorney-client privilege applies to third parties who are agents of either the lawyer or the client.").

*Ron Haggin/ Serra USA*

Upon further investigation, it appears that AUTH_MDL_PRIV_1662 was inadvertently logged and Authenticom will produce it. Because this email will be produced and contains the entirety of AUTH_MDL_PRIV_0338 within it, AUTH_MDL_PRIV_0338 will also be produced.

*Ford Direct*

Upon further investigation, Authenticom will produce AUTH_MDL_PRIV_1567 .

*Autodata / Chrome Data*

Upon further investigation, Authenticom will produce AUTH_MDL_PRIV_0640.

*Patrick Wackerly*

AUTH_MDL_PRIV_1103 is not a communication between Authenticom itself and a litigation finance firm. As reflected in the Log, this document is a communication directly between Authenticom's attorney and Mr. Wackerly. That communication reflects the mental impressions of Authenticom's attorney concerning legal topics directly at issue to the present litigation, and thus constitutes protected work-product.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Michaels
Page 7

The case you cite, *Miller UK ltd. v. Caterpillar, Inc.*, 17 F.Supp.3d 711, holds that "[m]aterials that contain counsel's theories and mental impressions created to analyze [a] case do not necessarily cease to be protected because they may also have been prepared or used to help Miller obtain financing." *Id.* at 735. This communication reflects Authenticom's attorney's mental impressions relating to this litigation, and were created in contemplation of litigation. As such, under the very authority you rely on, these document constitutes protected work product and were properly included on the Log. *See also Doe v. Soc'y of Missionaries of Sacred Heart*, No. 2014 WL 1715376, at *4 (N.D. Ill. May 1, 2014) (holding disclosure of work-product to litigation finance companies did not waive privilege because "work product protection is only waived by disclosure to a third party when that disclosure 'substantially increase[s] the opportunities for potential adversaries to obtain the information'") (quoting *Appleton Papers, Inc. v. E.P.A.,* 702 F.3d 1018, 1025 (7th Cir.2012)).

*Marzena Poniatowska*

Upon further investigation, the true author of these files is Michael Nemelka of Kellogg, Hansen, Todd, Figel, and Frederick. These documents, which represent draft legal filings related to this litigation, originated in our office with corrupted metadata incorrectly reflecting the author. As such, they were never disclosed to third-parties, and privilege remains intact.

*Joseph E. Long*

Joseph Long is researcher employed at Kellogg Hansen. AUTH_MDL_PRIV_0167 is an email from Mr. Long to Authenticom, sent at the direction of attorneys at Kellogg Hansen, conveying the advice and work-product of Kellogg Hansen attorneys.

*Chris Gordon/ Get Tinder Box*

Tinder Box is a web-based e-contracting platform utilized at that time by Authenticom. Each of the communications with Tinderbox and its employees on the Log is a confidential communication between Authenticom and its agent that was made for the purpose of obtaining or providing legal advice concerning the implementation of e-contracting services and formatting draft contracts for such use. As a result, and as CDK itself has argued, *see* January 7, 2019 Letter from Jessica Michaels to Dan Nordin, where third parties are an integral and necessary component in the provision of legal advice, their inclusion in otherwise privileged communications does not break privilege. *Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 529 (N.D. Ill. 2011) ("when the third party is an agent of the client, no waiver occurs."). These communications are thus protected by the attorney-client privilege and are properly included on the Log.

**5. Distribution Lists**

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Jessica Michaels
Page 8

      We confirm that, at least since January 1, 2013, no non-Authenticom employees have received emails through either the Executives@authenticom.com or Leadership@authenticom.com email addresses with the sole exception of Lori Zimmer for a certain time, whose presence did not break privilege, as addressed above.

      With respect to common_interest_privilege@yahoo.com, as noted above, the email will be produced.

                                                               Very truly yours,

                                                             *s/ Benjamin L. Rudofsky*

                                                             Benjamin L. Rudofsky

cc:   MDL External Service List