**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Loop, LLC v. CDK Global, LLC, et al.*,<br>Case No. 1:18-cv-002521 (N.D. Ill.) | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFFS LOOP, LLC'S D/B/A AUTOLOOP AND COX AUTOMOTIVE, INC.'S
OPPOSITION TO DEFENDANT CDK GLOBAL, LLC'S MOTION TO COMPEL
PRODUCTION OF DOCUMENTS WITHHELD OR REDACTED OR,
IN THE ALTERNATIVE, FOR AN *IN CAMERA* INSPECTION
OF THE CHALLENGED DOCUMENTS**

## INTRODUCTION

CDK Global, LLC ("CDK") seeks to compel Loop, LLC d/b/a AutoLoop ("AutoLoop") and Cox Automotive, Inc. to produce documents that AutoLoop and Cox Automotive have identified as protected by the attorney-client privilege or work-product doctrine. CDK fails to demonstrate that any of the challenged documents were not properly redacted or withheld.

*First*, CDK challenges more than 1,000 privilege log entries from AutoLoop and Cox Automotive because of a purported failure to provide sender or recipient information. But the vast majority of these documents are attachments to emails for which no sender or recipient information exists and for which *more* information was provided than required by the ESI Stipulation. AutoLoop and Cox Automotive also provided all available sender and recipient information for the few remaining documents challenged on this basis.

*Second*, CDK argues that AutoLoop waived privilege for 137 documents by sharing them with third parties. Most of these documents were shared confidentially with third parties that shared a common legal interest with AutoLoop in seeking legal relief for CDK's and Reynolds's anticompetitive conduct, including members of the putative vendor class that AutoLoop seeks to represent. Under the common interest doctrine, sharing communications with those third parties did not waive the attorney-client privilege. The documents are also protected by the work-product privilege. With one exception, CDK does not contest that the documents are subject to the work-product privilege. Nor does CDK attempt to satisfy its burden of showing that privilege was waived by sharing the documents in a manner that substantially increased the risk that the documents would be disclosed to AutoLoop's adversaries.

*Third*, CDK demands that Cox Automotive produce the *current* number of people on certain email distribution lists that appear in Cox Automotive's privilege logs. That information

will serve no purpose. It cannot possibly help CDK evaluate privilege at the time the emails in question were sent (up to six years ago). Nevertheless, Cox Automotive will provide the information so that the Court need not waste time resolving an inconsequential dispute.

*Fourth*, CDK quibbles with the words "impressions of counsel" that Cox Automotive has used in the descriptions for 366 entries. Read in context, the only reasonable way to interpret those words is to refer to the "impressions" (*i.e.*, opinions) of attorneys on various subject matters that were communicated to other Cox Automotive employees. This sufficiently describes the documents. CDK also complains that Cox Automotive has not provided the precise in-house counsel that provided legal advice for 479 documents that, for example, generically refer to "Legal" without identifying the specific in-house counsel. Cox Automotive has provided the information that it reasonably has, which is sufficient to establish privilege.

## ARGUMENT

**I.     AutoLoop and Cox Automotive Have Sufficiently Provided Senders and Recipients**

**A.**     CDK argues (at 5) that AutoLoop has "waived" privilege for five documents that do not have senders or recipients. As AutoLoop explained in its January 18, 2019 letter and again during a meet and confer on February 21, 2019, each of these documents is either a draft email or standalone file for which there is no sender or recipient information to provide because the documents were not sent or received. Instead, AutoLoop provided the equivalent information for these types of files – the custodian (who possessed the document) and the author (who wrote the document). *See* Ex. A at 3 (D. Guarnera Letter to J. Michaels (Jan. 18, 2019)). AutoLoop disclosed that three documents (PRIV_0505, PRIV_0155, and PRIV_0294) were from the files of AutoLoop's Chief Product Officer Matt Rodeghero, that PRIV_0505 contained legal advice "authored" by Kellogg Hansen, and that PRIV_0155 and PRIV_0294 reflected legal advice

provided by AutoLoop's General Counsel. AutoLook further disclosed that PRIV_0837 and PRIV_0258 were draft emails of Vice President of Sales Tony Petruzzelli and Chief Operating Officer Alex Eckelberry, respectively, that both sought legal advice from Authenticom's General Counsel, that PRIV_0837 did not have any would-be recipients listed, and that PRIV_0258 listed Authenticom's General Counsel as the would-be recipient. This information is more than sufficient to establish the existence of a privilege, and CDK does not even attempt to argue otherwise.

**B.** CDK challenges (at 6) 1,325 privilege log entries on the mistaken grounds that Cox Automotive did not provide author or recipient information. All but two of these documents are attachments to emails that Cox Automotive did not even need to include on its privilege log. The ESI Stipulation specifically allows the parties to provide only a single entry for a document "family" (an email plus all attachments). *See* Dkt. 105 (ESI Stipulation) § 9(b). This is what Cox Automotive did. It provided an entry for the family identifying the author (the sender of the email), the recipients, the relevant legal personnel, and the basis for asserting privilege (with a reference to attachments). But rather than stop there – as it was entitled to do – Cox Automotive also included entries for attachments and included *additional information* for the attachments, such as original author and last author of the attachment (where available) as well as the sender and recipient (if the attachment was itself an email). Cox Automotive explained all of this to CDK. *See* Ex. B at 5 (D. Dorris Letter to J. Michaels (Jan. 18, 2019)); Dkt. 544-11 (Def. Ex. 11). For the entries listing the attachments that Cox Automotive voluntarily provided, there was no additional sender or recipient information that Cox Automotive could disclose apart from the sender and recipient for the parent email that Cox Automotive had *already* disclosed. In all events,

Cox Automotive has provided more than enough information to establish privilege, and CDK does not attempt to contend otherwise.[1]

CDK's challenge to the remaining two documents are similarly baseless. COX_MDL_P0586 is a standalone Microsoft Word document that contains the copied text of three privileged email communications. Cox Automotive identified the author of the Microsoft Word document (Paul Whitworth) but did not identify a sender or recipient because there is no sender or recipient for this standalone Microsoft Word document. COX_MDL_P4144 is a draft (unsent) email. Cox Automotive identified the custodian of this draft email (Paul Whitworth), the would-be recipients (Keith Jezek and Dale Pollak), and the relevant legal personnel (Peter Cassat, then General Counsel of Cox Automotive). Cox Automotive, however, did not identify the sender of the email because an unsent email has no sender.

\*          \*          \*

Should the Court require Cox Automotive or AutoLoop to attempt to provide additional information for these entries, they request that the same relief be applied to CDK and Reynolds, who have included thousands of entries on their privilege logs without sender and recipient information. CDK's FTC privilege log (which was just produced on March 12, 2019 – *five months* after the deadline) by itself contains 9,619 such entries.

## II.     AutoLoop Did Not Waive Privilege For Communications With Third Parties

CDK challenges (at 6-13) 137 privileged documents that AutoLoop shared with third parties. With one exception, CDK does not challenge the existence of an underlying privilege

---

[1] CDK claims (at 6) that "[t]hroughout the meet-and-confer process, CDK has been unable to ascertain whether Cox is asserting that these attachments are independently privileged or is merely withholding them as integral," but that is because CDK never asked until February 21, 2019, a week before the motion to compel was due. *See* Dkt. 544-2 (Def. Ex. 2); Dkt. 544-8 (Def. Ex. 8). The answer is the challenged attachments are a mixture of documents that are independently privileged, integral to the email, or both.

- 4 -

(either work-product privilege, attorney-client, or both) but rather argues only that sharing these documents with third-parties waived the privilege. *See* CDK Mem. 8 (contesting whether the work-product privilege has been established for 26 communications).

Under the common interest doctrine, disclosure of attorney-client communications to third parties does not waive the privilege where the participants in the communication have "undertake[n] a joint effort with respect to a common legal interest." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007); *see Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004) (doctrine applies to communications with "any parties who have a 'common interest' in current or potential litigation, [including] as actual or potential plaintiffs"). For documents protected by work-product privilege, CDK bears the heavy burden to show that disclosure to a third-party "substantially increase[d] the opportunity for potential adversaries to obtain the information." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736-37 (N.D. Ill. 2014) (quoting *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012)).

As set forth below, the attorney-client communications challenged by CDK are protected from waiver by the common interest doctrine, and CDK has not met (or even attempted to satisfy) its burden of showing that AutoLoop shared attorney work product in a way that substantially increased the risk of disclosure to CDK and Reynolds.

### A. There Was No Privilege Waiver For Communications With SIS

CDK challenges (at 7-9) 26 communications between AutoLoop and Superior Integrated Solutions' ("SIS") CEO Phil Battista in 2013. SIS (like Authenticom) was a provider of data integration services used to access data on CDK's and Reynolds's DMS, and AutoLoop is a vendor of software applications that needed access to data on CDK's and Reynolds's DMS and that relied on SIS's services for that access.

**Attorney-client privilege.** SIS and AutoLoop shared a common legal interest. In February 2013, SIS sued Reynolds over Reynolds's anticompetitive blocking practices of data integrators like SIS (which harmed SIS's ability to serve its customers). *See* Am. Counterclaims, *Reynolds & Reynolds Co. v. Superior Integrated Sols., Inc.*, No. 12-848 (S.D. Ohio Feb. 28, 2013), Dkt. 25. These same anticompetitive practices harmed AutoLoop by decreasing competition for data integration services and thus increasing the price that AutoLoop paid for those services. *See* Dkt. 504 (AutoLoop MTD Op.) at 5. By the time of the challenged communications in 2013, AutoLoop was also considering bringing antitrust claims against Reynolds for the same blocking practices, and had begun to working with SIS on those claims. *See* Ex. C (PRIV_0598) (January 4, 2013 email between SIS and AutoLoop attaching legal memoranda dated January 31, 2012 from AutoLoop's outside counsel regarding potential antitrust claims against Reynolds; submitted *in camera*). These communications fall squarely within the common interest privilege. *See United States v. AT&T Co.*, 642 F.2d 1285, 1300 (D.C. Cir. 1980) ("The United States and MCI shared common interests in developing legal theories and analyses of documents on which to proceed on those issues where they both made the same antitrust claims against AT&T."); *Dexia*, 231 F.R.D. at 273-74 (common interest protects parties in "pursuit of litigation against a common adversary").

CDK's arguments to the contrary (at 8-9) fall flat. *First*, CDK's point that AutoLoop was not a party to the SIS litigation against Reynolds is irrelevant; "litigation need not be pending" for the common interest privilege to apply. *BDO Seidman*, 492 F.3d at 815-16. *Second*, CDK misrepresents Tony Petruzelli's testimony. He did not testify that AutoLoop did not anticipate litigation against Reynolds in 2013; he testified that AutoLoop had not "*decided* . . . to file a litigation against Reynolds" at that time. Dkt. 544-12 (Def. Ex. 12) at 42-43 (emphasis added). Mr. Petruzelli's testimony was accurate because AutoLoop did not file suit against Reynolds at

that time, but that has no bearing on application of the common interest doctrine. *See BDO Seidman*, 492 F.3d at 815-16. *Third*, contrary to CDK's contention, "an articulable claim" existed well before 2013. *See* Ex. C (PRIV_0598) (legal memoranda dated January 31, 2012 provided to AutoLoop regarding antitrust claims; submitted *in camera*). *Fourth*, Mr. Petruzelli's lack of awareness of a written common interest does not matter because "there is no requirement that there be a written agreement to enjoy the protections of the common interest doctrine." *Costello v. Poisella*, 291 F.R.D. 224, 232 (N.D. Ill. 2013).

**Work-product privilege.** The 26 challenged communications are also protected by the work-product privilege. The privilege log explains that these communications were prepared in anticipation of "litigation regarding Reynolds and Reynolds conduct" or with respect to "SIS/Reynolds litigation." CDK's only basis for contesting the existence of privileged work product is (at 8) that AutoLoop did not anticipate litigation against Reynolds in 2013. The evidence shows otherwise. *See* Ex. C (PRIV_0598) (submitted *in camera*). Nor does CDK even attempt to satisfy its burden of showing waiver. CDK conclusorily states (at 8) that waiver occurred merely because the document was shared with SIS, but CDK must show the disclosure to SIS "substantially increased" the likelihood of disclosure to Reynolds. *Miller*, 17 F. Supp. 3d at 736-38. Nor could CDK make such a showing given that AutoLoop and SIS were working together with respect to legal claims against Reynolds.

### B. There Was No Privilege Waiver For Other Third-Party Communications

CDK challenges a hodge-podge of other third-party communications: two with SIS and EasyCare/APCO regarding "Reynolds & Reynolds integration" (at 9), 102 communications with various third parties regarding a "pending regulatory matter" (at 10-11), and 12 communications with several third-parties regarding "this litigation" (at 12-13). These challenges lack merit.

### 1. Communications With SIS and EasyCare/APCO

CDK's challenge to the redactions in AL_MDL_0081337 – a communication solely between SIS and AutoLoop and their attorneys – is premised solely on AutoLoop's supposed failure to show a common interest between SIS and AutoLoop. That challenge fails for the reasons given above. *See supra* pp. 6-7. The other challenged document (AL_MDL_0081576) is a communication with EasyCare/APCO, a distributor of AutoLoop's software that was adversely affected by Reynolds's anticompetitive blocking practices. The redacted portion reflects AutoLoop's legal strategy for addressing those blocking practices and is therefore protected work product. *See Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 2000 WL 1898518, at *9 (N.D. Ill. Dec. 20, 2000) (holding "meeting notes" of "strategy" are privileged). CDK makes no effort to satisfy its burden of showing that AutoLoop sharing its legal strategy with a partner directly impacted by Reynolds unlawful conduct increased the risk of disclosure to Reynolds and effectuated a waiver. Nor could it. AutoLoop specifically states in the redacted portion that its legal strategy should be treated "very confidential."[2]

### 2. Communications Regarding The Pending Regulatory Matter

AutoLoop has withheld several communications with third-parties that furthered the parties' common legal interest in seeking redress for Reynolds's and CDK's anticompetitive practices of blocking independent data integrators. A portion of those efforts concerned the FTC's ongoing investigations into Reynolds's and CDK's unlawful conduct (the "pending regulatory matter"). Those communications are subject to the attorney-client privilege, the work-product

---

[2] AutoLoop withdraws its assertion of attorney-client privilege and common interest doctrine for this document. Moreover, AutoLoop's privilege log entry for this document should have stated that the document contains the legal strategy and mental impressions of AutoLoop and its attorneys regarding anticipated litigation with respect to Reynolds's anticompetitive conduct.

privilege, or both, and there is no waiver because of both the common interest doctrine and the ability to share work product confidentially with third parties.

As CDK notes (at 11), many of the 102 entries that CDK challenges are also challenged in Defendants' motion to compel against Authenticom. *See* Dkt. 541. CDK challenges AutoLoop's privilege assertions on the same basis and incorporates by reference the arguments made in the motion to compel against Authenticom. AutoLoop likewise incorporates by reference the arguments that Authenticom has made in its opposition to that motion at pages 6-11 (common interest) and 12-15 (work product).

There are only four possible differences with respect CDK's challenges to AutoLoop's assertion of the common interest doctrine. None change the result. *First*, AutoLoop asserts that it had a common interest with one additional third party – the National Automobile Dealers Association ("NADA"). Communications with NADA are protected for the same reason as communications with dealers because NADA is the national trade association for automobile dealers (like DARCARS) and advocates on their behalf.[3]

*Second*, while all of the communications challenged in Authenticom included attorneys, certain communications challenged here do not. This distinction does not matter because both work-product privilege and attorney-client privilege are not waived by "communicat[ions] between parties that had a common interest in litigation, even if non-lawyers served as the conduit for the[ ] communications." *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, 1999 WL 617842, at *9 (N.D. Ill. Aug. 12, 1999); *see Zitzka v. Vill. of Westmont*, 2009 WL 1346256, at *2

---

[3] CDK incorrectly states (at 10) that Cars.com was party to the challenged communications. CDK appears to have misread email addresses from "darcars.com." CDK also notes (at 10) that EasyCare/APCO is included on two challenged communications (PRIV_0693 and PRIV_0719). AutoLoop withdraws its assertion of attorney-client privilege and common interest doctrine for these two documents. However, they remain protected by the work-product privilege for the same reason as AL_MDL_0081576, *see supra* p. 8 & n.3, and for the same reasons given in the Authenticom opposition at pages 12-15.

(N.D. Ill. May 13, 2009) ("[T]he common interest doctrine may apply in certain circumstances to communications between two non lawyers who are both covered by the common interest.").

*Third*, several of the challenged communications are from 2013 and predate the Authenticom communications that Defendants challenged. However, the communications from 2013 are either solely between AutoLoop and SIS and their representatives, between AutoLoop and EasyCare (PRIV_0693, PRIV_0719, and AL_MDL_0081576), or between AutoLoop and Dominion's General Counsel Rusty Friddell (PRIV_0708). The communications between AutoLoop and SIS and between AutoLoop and EasyCare are privileged for the reasons explained above, *see supra* pp. 6-7 (SIS), 8 (EasyCare/APCO). For PRIV_0708, AutoLoop withdraws its assertion of attorney-client privilege and common interest doctrine and relies solely on work-product privilege. The grounds for that privilege are identical to those asserted with respect to the communications with EasyCare.

*Fourth*, CDK incorrectly argues that AutoLoop cannot assert common-interest protection for its communications with ELEAD1ONE ("eLead") because AutoLoop and eLead are now "adverse" as a result of CDK's mid-litigation acquisition of eLead. However, it is black letter law that a single party to common interest communications cannot cause a waiver of the privilege, let alone a third party like CDK. *See BDO Seidman*, 492 F.3d at 817 ("[T]he privileged status of communications falling within the common interest doctrine cannot be waived without the consent of all of the parties."). Although there is an exception to the common interest doctrine where the participants become adverse to one another, *see Dexia*, 231 F.R.D. 287, 295 (N.D. Ill. 2005), there is no adversity here. Neither AutoLoop nor eLead have asserted claims against one another, and certainly not in connection with the confidential communications at issue. Applying the adversity exception here would be contrary to the

"functional approach" that courts adhere to for privilege issues and "the underlying purposes of the privilege." *LG Elec. v. Whirlpool Corp.*, 2009 WL 3294800, at 1 (N.D. Ill. Aug. 24, 2009) (St. Eve, J.) (quotation marks and citation omitted).

Notably, CDK has not cited any case for the remarkable proposition that it can manufacture adversity by buying a participant to common-interest communications. Rather, the cases on which CDK relies demonstrate why it would be improper to apply the adversity exception here. In *Dexia*, the court applied that exception to prevent a litigant from gaining an unfair advantage by using an asserted common interest as "both a shield (to protect privileged documents . . . , from disclosure) and as a shield (to prevent [other parties] from using the communications arising out of a common interest . . .)." 231 F.R.D. at 296. And in *Gottlieb v. Wiles*, 143 F.R.D. 241 (D. Colo. 1992), the court applied the exception so that a party did not suffer an unfair disadvantage by losing access to documents that it could have previously accessed. *See id.* at 247. But here, CDK seeks to affirmatively use adversity to gain a strategic advantage.

Moreover, even if the adversity exception applied, AutoLoop could still assert privilege *against CDK and Reynolds*. The adversity exception only prevents adverse parties from asserting privilege against each other – not against the rest of the world. *See Lislewood Corp. v. AT & T Corp.*, 2015 WL 1539051, at *5 (N.D. Ill. Mar. 31, 2015) ("[T]he exception only precludes parties who share or shared a common interest from subsequently asserting privileges *against one another* for communications protected against outsiders by the common-interest doctrine."). At most, therefore, AutoLoop would be unable to assert privilege *against eLead*. Nor can CDK argue the corporate form should be disregarded, with eLead having

- 11 -

previously taken the position that it is a "nonparty" distinct from CDK. *See* Ex. D ("Non-Party Data Software Services, LLC's Responses and Objections").[4]

### 3. Communications Regarding This Litigation

CDK challenges (at 12-13) eight communications purportedly with AutoPoint, Dealer-FX, and eLead regarding this litigation. AutoPoint and Dealer-FX are application vendors like AutoLoop, and as members of the putative vendor class, they shared the same identical legal interest. CDK relies (at 12) on the same arguments to challenge the communications with AutoPoint and Dealer-FX as are made in the motion to compel against Authenticom. *See* Dkt. 541. Those arguments fail for the same reasons provided in Authenticom's opposition, and AutoLoop incorporates those arguments here. Upon further review, AutoLoop withdraws its assertion of privilege for the December 18, 2017 communication with eLead and will produce it. Although AutoLoop maintained a common interest with eLead at that time, AutoLoop has determined there was no privileged information in the communication.

\*     \*     \*

---

[4] CDK suggests (at 12 n.23) that eLead can unilaterally waive privilege for common-interest documents in its possession. But at most, eLead can "waive the common interest privilege as to its *own* communications," and it "may not waive the common interest privilege as to any of its own communications that reveal, either directly or indirectly, the confidential, privileged communications of any non-waiving member." *United States v. Balsiger*, 2011 WL 10879630, at \*9 (E.D. Wis. May 11, 2011) (emphasis added); *see also* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 76 (2000). CDK cites *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 689 F. Supp. 841, 844 (N.D. Ill. 1988), and *Bass Pub. Co. v. Promus Cos.,* 868 F. Supp. 615, 620 (S.D.N.Y.1994), but they are inapposite because they "treat the old joint-defense privilege (which applied only to actual codefendants in criminal litigation) as a doctrine separate from the co-client and community-of-interest privileges." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 380 n.35 (3d Cir. 2007), *as amended* (Oct. 12, 2007). "The joint defense privilege [is] more properly defined as the 'common interest rule,'" *Balsiger*, 2011 WL 10879630, at \*3 (quoting *Evans v. United States*, 113 F.3d 1457, 1467 (7th Cir. 1997), as demonstrated by *BDO Seidman*'s application of the common interest rule. *See* 492 F.3d at 817.

AutoLoop disagrees (at 2, 8-9) with CDK's assertion that AutoLoop did not previously explain the basis for its invocation of the common interest doctrine to protect the aforementioned communications. During a meet-and-confer on February 21, 2019, AutoLoop answered CDK's questions about AutoLoop's asserted common interest (among other topics). AutoLoop's counsel believed that it had adequately addressed CDK's questions, as CDK never stated on the meet-and-confer that it required more information nor sought more information after the meet-and-confer.

### III.     Cox Has Provided Sufficient Information About Its E-mail Distribution Lists

CDK faults (at 13-14) Cox Automotive for declining to provide the current number of recipients for email distribution lists that appear in 51 privilege log entries. This information is irrelevant to CDK's assessment of Cox Automotive's privilege claims. The current number of recipients on an email list sheds little light on how many recipients existed at the time the privileged communication was sent (up to six years ago) and even less about whether the document is privileged. Contrary to CDK's assertion (at 13-14), *Cox Automotive* did not agree to provide this irrelevant information even though other plaintiffs did. *See* Dkt. 544-9 (Def. Ex. 9). Moreover, Cox Automotive did provide information that is relevant to assessing privilege for these 51 entries, such as the purpose of the email distribution list (which matches exactly what CDK provided absent the irrelevant number of current recipients). *Compare* Dkt. 544-10 (Def. Ex. 10) at 8-9 (CDK), *with* Dkt. 544-11 (Def. Ex. 11) at 2-3 (Cox Automotive). Nonetheless, to avoid forcing the Court to rule on an inconsequential dispute, Cox Automotive will provide the current number of recipients for the email lists. But that is no basis for CDK to argue for waiver of privilege waiver. *See Am. Nat. Bank & Tr. Co. of Chi. v. Equitable Life Assur. Soc'y of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (*in camera* review necessary absent "bad faith, willfulness, or fault").

## IV. CDK's Remaining Challenges To Cox Automotive's Privilege Log Fail

**A.** CDK challenges (at 14) a purported 371 privilege log entries because they refer to "impressions of counsel."[5] As Cox Automotive has explained to CDK, when the challenged privilege entries are fairly read, "impressions of counsel" refers to communications that reflect the request for or provision of legal advice. *See* Ex. B at 5 (D. Dorris Letter to J. Michaels (Jan. 18, 2019); Dkt. 544-11 (Def. Ex. 11). For example, COX_MDL_P1668 is redacted because it "reflect[s] the impressions of counsel regarding interpretation of CDK contract." Dkt. 544-7 (Def. Ex. 7). The only reasonable way to interpret that statement is that the document contains "impressions" (*i.e.*, opinions) of an attorney about how to interpret a contract with CDK, and that is what was redacted. CDK's desire that Cox Automotive use more precise language in a privilege log is not grounds for waiver. *See Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *3 (N.D. Ill. June 30, 2017) (even inadvertent failure to assert privilege does not result in waiver where there is no prejudice).[6]

**B.** CDK also challenges (at 14) 479 entries that identify the "Cox Legal Department" as the relevant legal personnel. Cox Automotive has explained to CDK that this designation predominately references an in-house attorney or staff member working on behalf of the attorney. *See* Ex. B at 4 (D. Dorris Letter to J. Michaels (Jan. 18, 2019)); Dkt. 544-11 (Def. Ex. 11). For example, Cox Automotive has identified the "Cox Legal Department" as the relevant legal personnel for the redacted portion of COX_MDL_P3256 because that document refers to "working with legal" and the "Legal Position and message" but without specifying which in-house counsel

---

[5] Defendants' Exhibit 7 (Dkt. 544-7), which contains CDK's challenges, actually contests only 366 such entries.

[6] The cases CDK relies on (at 14-15) are far afield. They concern "mental impressions" that were not communicated to a client. *See AVX Corp. v. Horry Land Co.*, 2010 WL 4884903, at *10 & n.9 (D.S.C. Nov. 24, 2010); *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 483 (E.D. Pa. 2005).

- 15 -

provided the advice. This suffices to establish the privilege. *See Crabtree v. Experian Info. Sols., Inc.*, 2017 WL 4740662, at *2 & n.2 (N.D. Ill. Oct. 20, 2017) (privilege descriptions like at "request of the Legal Department" were sufficient). Should the Court require Cox Automotive to provide more detail for these privilege log entries, Cox Automotive requests that the same relief be applied to CDK and Reynolds, who also have thousands of entries on their privilege logs that do not identify specific attorneys. CDK's belatedly-produced FTC privilege log alone contains more than 1,000 such entries.

## CONCLUSION

The Court should deny CDK's motion to compel in its entirety.

Dated: March 15, 2019

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Plaintiff Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., Xtime, Inc., and Loop, LLC d/b/a AutoLoop*

## CERTIFICATE OF SERVICE

   I, Derek T. Ho, an attorney, hereby certify that on March 15, 2019, I caused a true and correct copy of the foregoing **PLAINTIFFS LOOP, LLC'S D/B/A AUTOLOOP AND COX AUTOMOTIVE, INC.'S OPPOSITION TO DEFENDANTS CDK GLOBAL, LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD OR REDACTED OR, IN THE ALTERNATIVE, FOR AN *IN CAMERA* INSPECTION OF THE CHALLENGED DOCUMENTS** to be filed UNDER SEAL electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all counsel of record by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Copies were served on counsel of record via email.

               */s/ Derek T. Ho*
               Derek T. Ho
               **KELLOGG, HANSEN, TODD,**
                **FIGEL & FREDERICK, P.L.L.C.**
               1615 M Street, NW, Suite 400
               Washington, D.C. 20036
               (202) 326-7900
               dho@kellogghansen.com