# Exhibit D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE:  DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | |
| THE DEALERSHIP CLASS ACTION | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey M. Gilbert |

**NON-PARTY DATA SOFTWARE SERVICES, LLC'S RESPONSES
AND OBJECTIONS TO DEALERSHIP CLASS PLAINTIFFS' SUBPOENA TO
PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT
INSPECTION OF PREMISES IN A CIVIL ACTION**

Non-Party Data Software Services, LLC ("DSS"), by and through its attorneys, and pursuant to Fed. R. Civ. P. 26, 34, and 45, hereby submits its written objections and responses to Dealership Class Plaintiffs' ("Plaintiffs'") Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, dated September 26, 2018 (the "Subpoena").

**GENERAL OBJECTIONS**

1.      DSS asserts each of the following objections to the Subpoena.  In addition to these General Objections, DSS may also state specific objections to a request contained in the Subpoena (a "Request") where appropriate.  By setting forth such additional specific objections, DSS does not in any way intend to limit or restrict its General Objections.  Moreover, to the extent DSS provides a response to any of the Requests to which DSS objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.      Nothing herein shall be construed as an admission by DSS regarding the competence, admissibility, or relevance of any fact sought by the Subpoena.  Further, DSS intends no incidental or implied admissions by its objections or responses to the Subpoena.

Whether DSS answers or objects to any particular Request should not be interpreted as an admission that DSS accepts or admits the existence of any fact(s) set out or assumed by such Requests, that the Requests are proper, that DSS's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether DSS answers part or all of any particular Request is not intended and should not be construed as a waiver by DSS of any or all objections to such Request or any other Request.

3.     DSS objects to any request, instruction, definition, or directive contained in the Subpoena to the extent that it purports to impose any obligations on DSS beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois.

4.     DSS objects to certain Requests to the extent they are unlimited in time or not limited to the time relevant to this litigation, on the ground that such Requests seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly burdensome, particularly when requested of a non-party. The limitations period applicable to Plaintiffs' claims is, at most, four years from the date the first Dealer lawsuit was filed in this Multidistrict Litigation ("MDL"), which was October 19, 2017. Therefore, DSS objects to the extent a Request seeks documents from any period beyond the applicable statute of limitations, and unless otherwise specified in its response, DSS's production of documents in response to such Request, if any, will be limited to the time period beginning on or after January 1, 2013.

5.     DSS objects to the Subpoena, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged

2

attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of DSS; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery. To the extent that the Requests, or any one of them, seek such information, DSS hereby claims such privilege and invokes such protection. The fact that DSS does not specifically object to an individual request on the grounds that it seeks privileged or protected material shall not be deemed a waiver of the protection afforded by any applicable privilege. Similarly, to the extent any information or documents subject to a privilege or otherwise protected from discovery are produced in response to the Subpoena, such production is inadvertent and not intended as a waiver.

6.      DSS objects to the Subpoena to the extent that it seeks information and/or documents that are confidential or otherwise proprietary in nature. Discovery in the above-captioned litigation is governed by an Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 4, 2018 (Dkt. 104). Thus, to the extent that a request calls for production of confidential or competitively sensitive material, as defined by the Confidentiality Order, DSS will only produce such material subject to that Order.

7.      DSS objects to the Subpoena to the extent that it violates any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of DSS's employees and other persons, including individuals who are not parties to this litigation.

8.      DSS objects to the Subpoena to the extent it purports to require the production of documents or information that are not maintained by DSS in the form or manner requested.

9. DSS objects to the Subpoena to the extent that it seeks the production of documents or information beyond the possession, custody, or control of DSS or its current officers, directors, or employees and/or that cannot be located with a reasonably diligent search, thus making the Requests unduly burdensome, especially given DSS's status as a non-party.

10. DSS objects to the Requests on the ground of undue burden to the extent that they seek the production of documents or information currently in Plaintiffs' possession, custody, or control, that is publicly available, or that is equally available from parties to the case.

11. DSS objects to the Requests to the extent they seek the production of documents or information that is not relevant to any of the claims or defenses in the litigation.

12. No statement that DSS will produce requested documents or information in response to any given Request shall be deemed a representation that such documents or information exist, but rather is a statement that DSS will undertake to produce responsive, non-privileged documents or information to the extent that they exist, are within its possession, custody, or control and can be located with a search that is reasonably diligent taking into account the fact that DSS is a non-party to the litigation.

13. DSS's responses to the Subpoena are based on its present knowledge, upon a reasonable inquiry. DSS reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

14. To the extent DSS has objected to or refused to produce documents or information in response to any given Request, and to the extent that Plaintiffs take issue with any such objection or refusal, DSS is willing to meet-and-confer with Plaintiffs to see if a reasonable, mutually-acceptable compromise might be reached.

4

15.     DSS objects to these Requests to the extent that they are duplicative of requests for production served by other parties in the MDL.

16.     DSS incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

**OBJECTIONS TO PLAINTIFFS'**
**DEFINITIONS**

1.     DSS objects to each and every "Definition" set forth in the Subpoena, including "document," "communication," "meeting," "person," "relating to," "related to," "referring to," "regarding," and "with respect to," to the extent that such definitions purport to broaden these terms beyond their ordinary meaning or impose obligations on DSS broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26, 34, and 45, and/or any applicable Local Rule or other Court Order.  DSS will interpret and respond to Requests using these terms consistent with their ordinary meaning.

2.     DSS objects to Plaintiffs' definitions of "you," "your" and "your company" in Definition No. 1 as overly broad and unduly burdensome to the extent it purports to require DSS to produce information and/or documents beyond DSS's possession, custody, or control.  The definition is particularly burdensome in light of DSS's non-party status.  In addition, DSS objects to Definition No. 1 to the extent it purports to require DSS to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on DSS's behalf.

3.     DSS objects to Plaintiffs' definitions of "CDK" and "Reynolds" in Definition Nos. 7 and 25 as overly broad and unduly burdensome.

5

4.     DSS objects to Plaintiffs' definition of "data access policies" in Definition No. 9, in so far as "policies" for access to the DMS, as DSS uses and understands the term, are not limited simply to "the ability of dealers to authorize independent data integrators to access data on their DMS or otherwise grant third parties access to the data on the DMS." To the extent that DSS responds to Requests that reference "data access policies," it does not mean that DSS agrees with or accepts Plaintiffs' definition.

5.     DSS objects to Plaintiffs' definitions of "data integrator(s)" and "Third party integrators" in Definition Nos. 10 and 26, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, accessing data through an API, writing data back into a DMS, or otherwise," is not providing "integration" services as DSS uses and understands the term. DSS further objects to Definition No. 10 as inaccurate. CDK is not a "data integrator" "through its 3PA program" despite Plaintiffs' repeated attempts to label it as such. CDK's former subsidiaries DMI and IntegraLink have served in that role (as DSS understands the term) at various times during the relevant period. To the extent that DSS responds to Requests that reference "data integrators" or "Third party integrators," it does not mean that DSS agrees with or accepts Plaintiffs' definitions.

6.     DSS objects to Plaintiffs' definition of "Data integration services" in Definition No. 11, in so far as the "extracting, transforming, integrating, and/or organizing of data housed on DMS," in any regard, does not necessarily constitute "data integration services" as DSS uses and understands the term. To the extent that DSS responds to Requests that reference "Data integration services," it does not mean that DSS agrees with or accepts Plaintiffs' definition.

7.      DSS objects to Plaintiffs' definitions of "DMI" and "IntegraLink" in Definition Nos. 13 and 16 as overly broad, unduly burdensome, and to the extent they seek documents or information that are irrelevant and not within DSS's possession, custody, or control.

8.      DSS objects to Plaintiffs' definitions of "Vendors" and "application providers" in Definition No. 27 as overly broad and unduly burdensome to the extent they purport to include "Vendors" or "application providers" of "software applications" that are not relevant to any party's claims or defenses, *e.g.*, software applications used by car dealerships that do not require direct or indirect access to data maintained by the dealership's licensed DMS.

## OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS

1.      DSS objects to Plaintiffs' "Instructions" to the extent that they purport to impose obligations on DSS broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26, 34, and 45, and/or any applicable Local Rule or other Court Order.

2.      DSS objects to Instruction 5 and 7 as unduly burdensome to a non-party and to the extent they are beyond the scope of information required by the Federal Rules of Civil Procedure and the Local Rules.  DSS does not agree to provide a privilege log at this time.  If DSS agrees in the future or is ordered to provide a privilege log, it does not mean that DSS's log will include every category identified in Instruction 5.

3.      DSS objects to Instruction 10 relating to documents no longer in its possession, custody, or control as unduly burdensome.

4.      DSS objects to Instruction 12 regarding the provision of a document "source list," because such a list is unduly burdensome for a non-party.  DSS is also unfamiliar with the concept of a document "source list" as referenced in this Instruction.

5.      DSS objects to Instruction 15's direction that the Requests shall be deemed

continuing.  The Instruction is unduly burdensome, particularly for a non-party.  DSS intends to

produce documents in response to this Subpoena, if any, only once.

### DSS'S SPECIFIC RESPONSES TO
### REQUESTS FOR THE PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:** From January 1, 2010 to the present, documents sufficient to show
the amounts you paid to either Reynolds or CDK, on a per-month, per-dealer-rooftop basis,
pursuant to any contract or agreement for data integration services on an application-by-
application basis, and the number of Reynolds and CDK dealers using each such application. For
the avoidance of doubt, the amounts you paid include, but are not limited to, any monthly
subscription fees, transaction fees, set-up fees, or any other fees related to data integration
services provided by Reynolds or CDK. If your data (or financial information) is kept in another
format than is specified above, all data that reflects any charges paid in any and all formats to
Reynolds or CDK from January 1, 2010 to present.

**RESPONSE:** DSS objects to the use of the term "per-dealer-rooftop basis" in this

Request as vague, ambiguous, subject to multiple interpretations, and to the extent it seeks

information other than as maintained by DSS in the ordinary course of its business.  DSS also

objects to this Request as overbroad, irrelevant, unduly burdensome, and to the extent it is

duplicative and seeks documents and information protected from disclosure by an applicable

privilege or documents that are more readily available from other entities, such as the parties to

the case.  Specifically, the Request is overbroad and unduly burdensome in that it seeks

information from January 1, 2010 to the present.  As noted above, the limitations period

applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint

in the MDL—October 19, 2013.  Moreover, Plaintiffs' claims in this litigation center on an

alleged agreement that did not occur until February 2015.  The Request also seeks irrelevant

information.  Payments from a single non-party to CDK or Reynolds have no bearing on the

matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an

unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive.

Subject to and without waiving these or its General Objections, DSS states that to the extent they exist, are within DSS's possession, custody, and control and can be identified through a reasonable search of appropriate sources, DSS will produce non-privileged information sufficient to show amounts paid to CDK or Reynolds in connection with their respective third-party access programs—as maintained by DSS in the ordinary course of its business—for the period from January 1, 2013 to the date of the Subpoena.

**REQUEST NO. 2:** From January 1, 2010 to the present, documents sufficient to show the amount you have charged CDK and Reynolds dealers for each of your application(s) on a monthly basis, and the amount of any data integration costs you pass on to your dealer customers as a result of charges to you by CDK or Reynolds. If your data (or financial information) is kept in another format than is specified above, all data that reflects any amounts charged by you to Reynolds or CDK dealers in any and all formats from January 1, 2010 to present.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, the Request is overbroad and unduly burdensome in that it seeks information from January 1, 2010 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. The Request also seeks irrelevant information. Charges from a single non-party to dealers have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. To the extent

they have any bearing, the burden of producing the documents outweighs the marginal value, if any, of the documents.

Subject to and without waiving these or its General Objections, DSS states that to the extent they exist, are within DSS's possession, custody, and control and can be identified through a reasonable search of appropriate sources, DSS will produce non-privileged information sufficient to show amounts charged to CDK and Reynolds dealerships in connection with applications for which DSS obtains data through CDK or Reynolds third-party access programs—as maintained by DSS in the ordinary course of its business—for the period from January 1, 2013 to the date of the Subpoena.

**REQUEST NO. 3:** Documents concerning any increases or decreases, or proposed increases or decreases, in the amount you pay to either Reynolds or CDK for services pursuant to any contract or agreement.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, DSS objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery related to actual or proposed price increases or decreases in connection with "services pursuant to any contract or agreement" with CDK or Reynolds, regardless of the subject matter. In addition, to the extent that there have been increases or decreases in any amounts paid by DSS to CDK or Reynolds pursuant to either party's third-party access programs, DSS anticipates that such increases or decreases will be reflected in the information it intends to produce in response to Request No. 1, above. As such, this Request is duplicative and unnecessary, and the burden on non-party DSS to locate and

10

review additional documents potentially responsive to this Request outweighs the marginal value, if any, of producing them.

**REQUEST NO. 4:** Any analysis or consideration of the financial, economic or business impact to you regarding the passing on of any data integration costs imposed by CDK or Reynolds from you to your customers, CDK dealers or Reynolds dealers.

**RESPONSE:** DSS objects to the use of the terms "financial, economic or business impact" and "passing on of any data integration costs" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of such terms fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.

Subject to and without waiving these or its General Objections, DSS states that based upon a reasonably diligent inquiry, it has no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 5:** Documents concerning any complaints by your customers (or anyone else) regarding any proposed or actual additional or increased costs imposed by you as a result of any additional or increase in costs charged to you by CDK or Reynolds.

**RESPONSE:** DSS objects to the use of the term "complaints" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of this term fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, subject to its objections, DSS is already producing information sufficient to show amounts paid to CDK or Reynolds in connection with their respective third-party access programs and amounts charged to CDK and Reynolds dealerships in connection with applications for which

11

DSS obtains data through CDK or Reynolds third-party access programs. Any complaints by DSS's customers or "anyone else," to the extent they exist, are not relevant to the claims or defenses in the MDL, and the burden on non-party DSS to locate and review documents potentially responsive to this Request outweighs the marginal value, if any, of producing them.

**REQUEST NO. 6:** From January 1, 2010 to the present, documents sufficient to identify any third party integrators (including DMI or IntegraLink) you utilized and the time period during which you utilized any such integrator.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, irrelevant and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, the Request is overbroad and unduly burdensome in that it seeks information from January 1, 2010 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. In addition, to the extent that DSS has engaged any "third party integrators" during the relevant time period, DSS has only engaged them with respect to non-CDK, non-Reynolds DMSs—which has no bearing on or relevance to any of the claims or defenses in the litigation, and thus the burden on non-party DSS to locate and review documents potentially responsive to this Request outweighs the marginal value, if any, of producing them.

**REQUEST NO. 7:** From January 1, 2010 to the present, documents sufficient to show the costs paid by you to any third party integrators (including DMI or IntegraLink) for services pursuant to any contract or agreement on a per-month, per-dealer-rooftop basis, including costs you paid for data integration services on an application-by-application basis, and the brand(s) of DMS for which the third party integrators were providing integration.

**RESPONSE:** DSS objects to the use of the term "per-dealer-rooftop basis" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent it seeks information other than as maintained by DSS in the ordinary course of its business. DSS also objects to this Request as overbroad, unduly burdensome, irrelevant and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, DSS objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery related to payments to "any" third party integrator for services pursuant to "any" contract or agreement, regardless of its subject matter. The Request is also overbroad and unduly burdensome in that it seeks information from January 1, 2010 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. In addition, to the extent that DSS has engaged any "third party integrators" during the relevant time period, DSS has only engaged them with respect to non-CDK, non-Reynolds DMSs—which has no bearing on or relevance to any of the claims or defenses in the litigation, and thus the burden on non-party DSS to locate and review documents potentially responsive to this Request outweighs the marginal value, if any, of producing them.

**REQUEST NO. 8:** One representative contract with each of Reynolds and CDK for data integration services for each year from 2010 through the present, plus any additional documents necessary to reflect any and all substantive modifications to any of your contracts with Reynolds and CDK for data integration services during any of those years.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, the Request is overbroad and unduly burdensome in that it seeks information from 2010 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, DSS states that to the extent they exist, are within DSS's possession, custody, and control and can be identified through a reasonable search of appropriate sources, DSS will produce current contracts with Reynolds and CDK as called for by this Request.

**REQUEST NO. 9:** Documents concerning any provision in your contracts or agreements with Reynolds or CDK which relate to any of the following: (i) limiting your ability to contract with or otherwise use third party integrators to access data on CDK or Reynolds DMS platforms (*i.e.*, any exclusive dealing provisions); (ii) prohibiting you from informing or communicating with dealers about any cost (or any changes in cost) to you for Reynolds or CDK data integration services (*i.e.*, any price secrecy provisions); or (iii) for liquidated damages, including any enforcement or threat of enforcement of any of the aforementioned provisions by Reynolds or CDK. For the avoidance of doubt, this Request includes any communications to or from Reynolds or CDK (or anyone else) concerning any of the foregoing, or any internal communications concerning the same.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, the Request is overly broad and unduly burdensome to the extent it seeks discovery on "any" communications between DSS and "anyone else" on provisions such as "liquidated damages," a subject that has nothing to do with whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor

14

contracts are anticompetitive. DSS further objects on the ground that to the extent such provisions exist, DSS anticipates that they will be reflected in the information it intends to produce in response to Request No. 8, above. As such, this Request is duplicative and unnecessary, and the burden on non-party DSS to locate and review additional documents potentially responsive to this Request outweighs the marginal value, if any, of producing them.

**REQUEST NO. 10:** Any communications between you and CDK or Reynolds (or anyone else) relating to: (1) your attempts to join the 3PA or RCI programs; or (2) your actual or potential use of any third party integrator.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, irrelevant and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, DSS objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery on "any" communications between DSS and "anyone else" regarding 3PA, RCI, or the use of third party integrators, no matter how attenuated the communications to the claims or defenses in the case. The Request also seeks irrelevant information. Communications with CDK or Reynolds or "anyone else" regarding third party integrators—when DSS has engaged them only with respect to non-CDK, non-Reynolds DMSs during the relevant time period—have no bearing on whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. Whether or how DSS joined the 3PA or RCI programs is similarly irrelevant. DSS is not complaining about the 3PA or RCI programs or the process of joining either program, nor do the details of DSS's initial certification—which occurred prior to the relevant time period—have bearing on any claim or defense in the litigation.

**REQUEST NO. 11:** Any communications between you and CDK or Reynolds (or anyone else) relating to: (i) the functionality, or access to categories of data in their DMS, that you have sought for your applications through the 3PA or RCI programs but that CDK and/or Reynolds have refused to provide; or (ii) any competitive advantage that CDK or Reynolds provide to their own applications that they do not provide to your applications.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, DSS objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery on "any" communications between DSS and "anyone else" on the requested topic, no matter how attenuated the communications to the claims or defenses in the case. The Request also seeks irrelevant information. Documents showing "any" communications between DSS and CDK or Reynolds or "anyone else" regarding any requested functionalities or "access to categories of data" that DSS has made with respect to its certified applications have no bearing on the matters at issue in Plaintiffs' actions, including whether CDK and Reynolds entered into an unlawful agreement or whether the terms of CDK's dealer and vendor contracts are anticompetitive. This is so, in particular, because DSS is unaware of any differences in "functionality" or "access" between its own applications and competing applications offered by CDK or Reynolds.

**REQUEST NO. 12:** Documents sufficient to show any lost business, or any applications or products that you had to modify or withdraw from the market, or that you ceased or scaled back development of, as a result of Reynolds's or CDK's data policies and practices and/or 3PA or RCI pricing.

**RESPONSE:** DSS objects to the use of the terms "market," "ceased or scaled back development of," and "as a result of Reynolds's or CDK's data policies and practices and/or 3PA or RCI pricing" in this Request as vague, ambiguous, subject to multiple interpretations, and to

16

the extent that the use of such terms fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege.

Subject to and without waiving these or its General Objections, DSS states that based upon a reasonably diligent inquiry, it has no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 13:** From January 1, 2010 to the present, documents sufficient to show any non-CDK and non-Reynolds DMS platforms that you accessed directly (*e.g.*, through the use of an API) and the cost you paid to access these systems, including the per-dealer, per-month costs you paid for data integration services on an application-by-application basis, the number of dealers using any non-CDK and non-Reynolds DMS platforms by month for each such application, the prices you charged to dealers using non-CDK and non-Reynolds DMS for each application, and the amount of any costs charged by the non-CDK and non-Reynolds DMS platforms that you passed on to your customers.

**RESPONSE:** DSS objects to the use of the phrase "DMS platforms that you accessed directly" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of this term fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, the Request is overbroad and unduly burdensome in that it seeks information from January 1, 2010 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Moreover, Plaintiffs' claims in this litigation center on an alleged agreement that did not occur until February 2015. DSS further objects on the ground

that it does not maintain in the ordinary course of its business summary statistics on the hyper-segmented data sought by this Request, *e.g.*, "per-dealer, per month" costs "on an application-by-application basis," the number of dealers served by DSS using each of various non-CDK, non-Reynolds DMSs under numerous specifications, etc.  DSS specifically objects to creating documents that do not otherwise exist for purposes of responding to this Request.  DSS also objects to this Request to the extent it seeks discovery into what DSS charges non-CDK, non-Reynolds dealers for any services, or whether any costs are "passed on" to such dealers, which has no bearing on or relevance to any claim or defense in this litigation.

Subject to and without waiving these or its General Objections, DSS states that to the extent they exist, are within DSS's possession, custody, and control and can be identified through a reasonable search of appropriate sources, DSS will produce documents sufficient to identify any non-CDK and non-Reynolds DMS platforms that it accessed "directly" (as DSS understand the term) and the amount that DSS paid to such non-CDK, non-Reynolds DMS providers for the period from January 1, 2013 to the date of the Subpoena.

**REQUEST NO. 14:** Any documents you have produced to the Federal Trade Commission ("FTC") in relation to any FTC investigation of CDK or Reynolds.

**RESPONSE:** Subject to and without waiving these or its General Objections, DSS states that based upon a reasonably diligent inquiry, it has no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 15:** All documents produced to any other party as a part of this MDL or any of the related actions transferred, consolidated, and/or coordinated as a part of the MDL, whether produced before or after their transfer, consolidation, and/or coordination.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an

applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Subject to and without waiving these or its General Objections, DSS states that based upon a reasonably diligent inquiry, it has no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 16:** Any documents or communications regarding any effort by CDK or Reynolds to hinder or obstruct third-party integrators, including by blocking, attempting to block, or otherwise limiting third-party integrators' access to either of their DMS, or otherwise reflecting any collusion between CDK and Reynolds in the DMS market, data integration market, or markets for applications.

**RESPONSE:** DSS objects to the use of the terms "hinder or obstruct third-party integrators," "blocking," and "collusion" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of such terms fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case.

Subject to and without waiving these or its General Objections, DSS states that based upon a reasonably diligent inquiry, it has no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 17:** Documents sufficient to show the changes in market share over time of your applications and any of your competitors' applications.

**RESPONSE:** DSS objects to the use of the term "market share" in this Request as vague, ambiguous, and subject to multiple interpretations. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, DSS objects to

19

this Request as overly broad, unduly burdensome, and to the extent it seeks information that is irrelevant to any party's claims or defenses in the litigation. Any changes in "market share" for non-party DSS and its competitors, assuming that they occurred and can be ascertained, are not at issue.

Subject to and without waiving these or its General Objections, DSS states that upon a reasonably diligent investigation, documents and information that DSS maintains in the ordinary course of business are not sufficient to show changes (if any) in "market share" of DSS's own applications or competing applications, and DSS objects to creating documents that do not otherwise exist for purposes of responding to this Request.

**REQUEST NO. 18:** Documents sufficient to show your application sales revenue and gross margin on a monthly basis for each of your applications.

**RESPONSE:** DSS objects to the use of the terms "application sales revenue" and "gross margin" in this Request as vague, ambiguous, and subject to multiple interpretations. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, DSS objects to this Request as overly broad, unduly burdensome, and seeking information that is irrelevant to any party's claims or defenses in the litigation. DSS's "sales revenue" and "gross margin" is not at issue for any of DSS's applications.

Subject to and without waiving these or its General Objections, DSS states that it will produce non-privileged information sufficient to show amounts charged to CDK and Reynolds dealerships in connection with applications for which DSS obtains data through CDK or Reynolds third-party access programs—as maintained by DSS in the ordinary course of its business—for the period from January 1, 2013 to the date of the Subpoena. DSS objects to

producing additional documents or information in response to this Request, including because DSS does not in the ordinary course of its business track sales revenue and "gross margin" on a monthly basis for each of its applications, and DSS objects to creating documents that do not otherwise exist for purposes of responding to this Request.

**REQUEST NO. 19:** Documents sufficient to show, on a yearly basis, the types of contracts entered into with dealers for each of your applications from the year 2010 to the present, including, without limitation, full examples of each different type of contract.

**RESPONSE:** DSS objects to the use of the term "types of contracts" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of such term fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege. Specifically, DSS objects to this Request as overly broad and unduly burdensome to the extent it seeks discovery related to any contracts that may exist with dealers, regardless of their subject matter. Moreover, the Request seeks information from 2010 to the present. As noted above, the limitations period applicable to Plaintiffs' claims is, at most, four years from the filing of the first Dealer complaint in the MDL—October 19, 2013. Plaintiffs' claims in this litigation also center on an alleged agreement that did not occur until February 2015.

Subject to and without waiving these or its General Objections, DSS states that to the extent they exist, are within DSS's possession, custody, and control and can be identified through a reasonable search of appropriate sources, DSS will produce its current standard form contract with dealers.

**REQUEST NO. 20:** All documents and communications relating to CDK's proposed and actual acquisition of you, including, but not limited to:

(a)      All analyses of any actual or potential benefits of being owned by or affiliated with CDK;

(b)      All analyses of any commercial or competitive rationale for accepting CDK's acquisition under the terms on which it was actually accomplished, or on any prior terms proposed or offered, including any communications concerning the same;

(c)      All analyses of any actual or potential competitive benefits you will or hope to obtain in the market for Customer Relationship Management ("CRM") Applications, including, but not limited to, Cox and AutoLoop;

(d)      All communications with CDK concerning the acquisition; and

(e)      All communications with Portico Capital Securities LLC related to the acquisition.

**<u>RESPONSE:</u>** DSS objects to the use of the terms "actual or potential benefits" and "actual and potential competitive benefits" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of such terms fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, irrelevant and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, DSS objects to what amounts to a request to re-create the due diligence conducted in connection with CDK's acquisition of DSS, which is not at issue in the litigation nor does it have any bearing on or relevance to the litigation. For example, documents related to CDK's acquisition of DSS have no bearing on or relevance to Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. To the extent that documents responsive to this Request even exist, the burden on non-party DSS to locate and review potentially responsive documents outweighs the marginal value, if any, of producing them. That the Request seeks "all documents and communications" related to the acquisition makes it even more burdensome and irrelevant.

Moreover, the fact that Plaintiffs may have some vague, undue interest in the acquisition does not make the details of the transaction relevant or discoverable.

**REQUEST NO. 21:** All documents and communications concerning any changes in the data integration services that CDK provides, has provided, or will provide to ELEAD1ONE, including, but not limited to:

    (a)    Any changes in the pricing for the data integration services that CDK provides, has provided or will provide to ELEAD1ONE;

    (b)    Any plans to "bundle" or otherwise combine ELEAD1ONE into the CDK DMS; and

    (c)    Any new or additional data integration features that CDK will provide to ELEAD1ONE, such as the ability to open repair orders or otherwise to write back to the DMS, or any others.

**RESPONSE:** DSS objects to the use of the terms "bundle or otherwise combine" and "new or additional data integration features" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of such terms fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, irrelevant and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, DSS objects to the Request to produce "all" communications on what amounts to potential efficiencies generated from CDK's acquisition of DSS, an acquisition that is not at issue in the litigation nor does it have any bearing on or relevance to the litigation. For example, documents related to CDK's acquisition of DSS have no bearing on or relevance to Plaintiffs' allegations that CDK and Reynolds entered into an unlawful agreement, or whether the terms of CDK's agreements with dealers or vendors are anticompetitive. To the extent that documents responsive to this Request even exist, the burden on non-party DSS to locate and review potentially responsive documents outweighs the marginal value, if any, of producing them. Moreover, the

23

fact that Plaintiffs may have some vague, undue interest in the acquisition does not make the details of the transaction relevant or discoverable.

**REQUEST NO. 22:** Documents sufficient to show any difference(s) in the data integration services that CDK provides, has provided, or will provide to ELEAD1ONE and the data integration services that ELEAD1ONE receives from or in connection with any other DMS provider (including, but not limited to, Reynolds, Cox (Dealertrack), and Auto/Mate).

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. DSS further objects to this Request to produce documents describing the potential efficiencies generated from CDK's acquisition of DSS, an acquisition that is not at issue in the litigation nor does it have any bearing on or relevance to the litigation. The fact that Plaintiffs may have some vague, undue interest in the acquisition does not make the details of the transaction relevant or discoverable.

Subject to and without waiving these or its General Objections, DSS states that based upon a reasonably diligent inquiry, it has no documents responsive to this Request within its possession, custody, or control.

**REQUEST NO. 23:** All documents and communications concerning any data integration features that CDK provides to you or will provide to you that differ from those features that it makes available to any other vendors or add-on application providers, including the data integration services made available to your competitors in the CRM market.

**RESPONSE:** DSS objects to the use of the terms "data integration features," "add-on application providers," and "competitors in the CRM market" in this Request as vague, ambiguous, subject to multiple interpretations, and to the extent that the use of such terms fails to identify the documents sought by this Request with reasonable particularity. DSS also objects to this Request as overbroad, unduly burdensome, irrelevant and to the extent it is duplicative and

24

seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. DSS further objects to this Request to produce documents describing any "data integration feature" that CDK does or will provide to DSS that differs from such "features" available to "any other vendors or add-on application providers," in connection with CDK's acquisition of DSS or otherwise. The fact that Plaintiffs may have some vague, undue interest in the acquisition does not make the details of the transaction relevant or discoverable.

Subject to and without waiving these or its General Objections, DSS states that documents that DSS maintains in the ordinary course of business do not show differences in data integration features that CDK provides to DSS relative to other vendors, and DSS objects to creating documents that do not otherwise exist for purposes of responding to this Request.

**REQUEST NO. 24:** All documents that you have provided or in the future provide to any state or federal government agency, government entity, or regulator concerning CDK's actual or proposed acquisition of you.

**RESPONSE:** DSS objects to this Request as overbroad, unduly burdensome, and to the extent it is duplicative and seeks documents and information protected from disclosure by an applicable privilege or documents that are more readily available from other entities, such as the parties to the case. Specifically, DSS objects to this Request as overly broad and unduly burdensome to the extent it seeks "all" documents DSS has provided in the past and might provide in the future to any government entity in connection with CDK's acquisition of DSS, an acquisition that is neither at issue in the litigation nor has any bearing on or relevance to the litigation. The fact that Plaintiffs may have some vague, undue interest in the acquisition does not make the details of the transaction relevant or discoverable.

Subject to and without waiving these or its General Objections, DSS states that based upon a reasonably diligent inquiry, it has no documents responsive to this Request within its possession, custody, or control.

Dated: October 24, 2018        Respectfully submitted,

*/s/ Matthew Provance*
Britt M. Miller
Matthew D. Provance
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Non-Party Subpoena Recipient*
*Data Software Services, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I, Matthew D. Provance, an attorney, certify that I caused a copy of the foregoing **NON-PARTY DATA SOFTWARE SERVICES, LLC'S RESPONSES AND OBJECTIONS TO DEALERSHIP CLASS PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION** to be served on counsel of record in the above-captioned proceeding via email in accordance the parties' written stipulation to receive service by electronic means pursuant to Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Matthew Provance*