# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re: Dealer Management Systems Antitrust Litig. | )<br>)<br>)<br>) Case No. 1:18-cv-864<br>)<br>) MDL No. 2817<br>)<br>) Judge Robert M. Dow Jr.<br>)<br>) Magistrate Judge Jeffrey T. Gilbert<br>) |

## THIRD PARTY SUBPOENA RESPONDENT
## ACCEL-KKR CAPITAL PARTNERS, IV, LP'S MOTION TO QUASH
## SUBPOENAS FOR DOCUMENTS AND DEPOSITION TESTIMONY

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY .............................. 1

    <u>I</u>.    The Document Subpoena ................................................................................. 2

    II.    The Deposition Subpoena ................................................................................ 3

    III.    The Parties Meet and Confer Concerning the Subpoenas ................................. 4

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

    I.    The Subpoenas Impose a Substantial and Undue Burden on Non-Party AKKR ............... 6

    II.    The Subpoenas Improperly Seek Documents and Testimony that R&R Did Seek or Could Have Sought from MVSC (Doc. Req. Nos. 1-3, 5-9; Dep. Topic Nos. 1, 5-11) ..... 7

    III.    The Only Documents and Testimony that R&R Could Not Have Acquired Directly from MVSC, Concerning AKKR's Internal Documents and Communications, Are Irrelevant (Doc. Req. Nos. 2-9; Dep. Topic Nos. 2-11) ................................... 8

    IV.    R&R's Contention that AKKR, as an MVSC Investor, is Entitled to Less Protection than Other Non-Parties, is Not Suported by Applicable Law .......................................... 10

    V.    R&R's Eleventh-Hour Service of the Subpoenas on the Eve of Fact Discovery Closing Weighs in Favor of Quashing the Subpoenas ..................................................... 11

CONCLUSION ................................................................................................................... 12

## INTRODUCTION

Accel-KKR Capital Partners IV, LP ("AKKR") moves to quash two subpoenas (the "Subpoenas") served on it by defendant Reynolds & Reynolds Co. ("R&R") on February 26 and March 6, 2019. The Subpoenas, issued and served on the eve of fact discovery closure, seek documents and corresponding deposition testimony on an expansive array of topics. No basis exists under Federal Rule of Civil Procedure 45(c)(3) to require AKKR's compliance.

As set forth in the declaration of AKKR's counsel attached hereto as **Exhibit A**, such compliance would take months and cost many tens-of-thousands of dollars in attorney's fees and related costs. AKKR, a non-party whose only connection to this case is that it is an investor in plaintiff Motor Vehicle Software Corporation ("MVSC"), should not have to shoulder such an extreme burden where (i) the documents and testimony sought are almost entirely duplicative of those MVSC has produced or will produce in the course of party discovery; and (ii) the only non-duplicative documents—AKKR's internal documents and communications—are irrelevant and no less burdensome to search for and produce than the entirety of what R&R has requested.

That the Subpoenas were issued at the tail end of fact discovery and, if enforced, would likely delay the case for months, only further militates in favor of granting AKKR's motion. Just as this Court declined to allow plaintiff to seek discovery from a party-defendant "in the late gestation of the case," (Dkt. 498, p. 3.) so too should R&R be prohibited from subpoenaing non-party AKKR for exhaustive, duplicative and irrelevant documents and testimony. AKKR's Motion to Quash should be granted.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

This is an antitrust dispute in which MVSC has alleged that R&R and other defendants committed federal and state antitrust violations by conspiring to monopolize and restrain trade within the Illinois and California markets for electronic vehicle registration and titling services

1

("EVR"). MVSC initiated this lawsuit in February 2017 and, in October 2018, this Court denied defendants' Motions to Dismiss MVSC's Second Amended Complaint. (Dkt. 425.) Defendants have not asserted any counterclaims against MVSC.

Fact discovery in this matter commenced in May 2018 and was previously scheduled to close on October 12, 2018, though the parties have subsequently extended that date by agreement to April 30, 2019. (Dkts. 166, 553.) MVSC has substantially completed its production of documents responsive to defendants' requests to produce, producing more than 27,800 documents in response to defendants' many requests. (Declaration of Sara Siegall, "Siegall Decl." ¶ 11, **Ex. 3** thereto.) Likewise, since October 2018, the parties have collectively taken nearly sixty fact witness depositions. (*Id.* ¶ 12.) Additionally, defendants served on MVSC a Rule 30(b)(6) deposition notice containing deposition topics wholly overlapping with those set forth in the deposition subpoena to AKKR, and an MVSC representative is scheduled to testify in response to that deposition notice on Wednesday, March 20, 2019. (*Id.* ¶ 13, **Ex. 4** thereto.)

R&R served document and deposition subpoenas on AKKR on February 25, 2019 and March 6, 2019, respectively. (*Id.* ¶ 2, **Exs. 1 and 2** thereto.)

**I.      The Document Subpoena**

The Document Subpoena includes nine broad document requests, as follows:

1. All contracts, agreements, letters of intent, memorandums of understanding between Accel-KKR and MVSC;

2. All documents relating or referring to any actual or contemplated investment or acquisition of an ownership stake in MVSC, including your investment in MVSC in 2015. This request includes, but is not limited to: a. Presentations, studies, surveys, analyses, reports, or projections evaluating any aspect of MVSC or the pros and cons of investing in MVSC; b. Executed agreements, contracts, agreements, letters of intent, memorandums of understanding; c. Materials prepared by third parties for you, such as a confidential information memorandum or management presentation or market study; d. Documents provided to the Department of Justice or Federal Trade Commission.

3. All documents relating or referring to any actual or contemplated investment or acquisition of an ownership stake in CVR. This request includes, but is not limited to, presentations, studies, surveys, analyses, reports, or projections evaluating any aspect of CVR or the pros and cons of investing in CVR.

4. All communications or documents regarding or relating to Louis Robert Cohen (aka Rob Cohen), including your acquisition of Mr. Cohen's ownership stake in MVSC.

5. All documents or communications regarding MVSC following any investment or acquisition of an ownership stake in MVSC, including projections, plans, or strategies.

6. All documents or communications relating or referring to MVSC's Electron application, or Neutrino, an Electron feature or capability.

7. All documents or communications relating or referring to EVR, or providers of EVR services, including but not limited to CVR.

8. All documents or communications referring or relating to Reynolds, CDK, RCI, or 3PA.

9. All documents or communications referring or relating to Authenticom or competing providers of third party DMS integration services, including but not limited to ProQuotes, Superior Integrated Solutions ("SIS") or SelectQu.

## II. The Deposition Subpoena

Similarly, the Deposition Subpoena seeks to depose an AKKR corporate representative concerning eleven broad topics:

1. All contracts, agreements, letters of intent, memorandums of understanding between Accel-KKR and MVSC.

2. [AKKR's] actual or contemplated investment(s) in MVSC or acquisition of an ownership stake in MVSC, including [AKKR's] investment in MVSC in 2015. This topic includes the reasons or pros and cons for any such investment or acquisition, the extent to which the investment or acquisition has been successful, and any future plans or projections with respect to the investment or acquisition.

3. [AKKR's] contemplated investment(s) in CVR or acquisition of an ownership stake in CVR. This topic includes any reasons or pros and cons for possibly investing or acquiring CVR and any future plans or projections with respect to that contemplated investment or acquisition.

4. [AKKR's] actual or contemplated investment(s) in any EVR provider other than MVSC and CVR. This topic includes the reasons or pros and cons for any such investment or acquisition, the extent to which the investment or acquisition has

3

   been successful, and any future plans or projections with respect to the investment or acquisition.

5. MVSC's market share in any relevant market where MVSC competes, and the factors that impact MVSC's market share, including changes over time.

6. MVSC's profitability and the factors that impact MVSC's profitability, including changes over time.

7. MVSC's Electron application, or Neutrino, an Electron feature or capability.

8. MVSC's relationship with Reynolds and CDK, and MVSC's interest in or efforts to join RCI and 3PA.

9. MVSC's relationship with and use of Data Extractors and the role that Data Extractors play with respect to the EVR services that MVSC provides to dealers.

10. Any plans to expand or contract or change MVSC's business or the services it provides, including the reasons therefor and any related projections.

11. [AKKR's] communications and documents relating to the topics above and all documents requested of you or produced by you in response to Reynolds's subpoena to Accel- KKR for documents.

### III. The Parties Meet and Confer Concerning the Subpoenas

On March 5, 2019, AKKR's counsel wrote to R&R's counsel outlining AKKR's objections to the Document Subpoena (*Id.* ¶ 14, **Ex. 5** thereto.). R&R's counsel responded in writing on March 7, 2019. (*Id.* ¶ 15, **Ex. 6** thereto.)

On March 11, 2019, in accordance with L.R. 37.2, the parties' counsel met and conferred by telephone concerning both the Deposition Subpoena and Document Subpoena. (*Id.* ¶ 16.) During this call, AKKR's counsel informed R&R's counsel that AKKR performed a basic search of its email archives for the requested time period (January 1, 2013-present) using eight search terms, and that this search captured over 40,000 e-mails. (*Id.* ¶ 17.)

R&R's counsel then stated that R&R may be willing to narrow its Subpoenas to the following topics:

4

- AKKR's pre-investment analysis of the pros/cons of investing in MVSC and the EVR market (including the role of CDK/Reynolds in that market); and

- AKKR's post-investment analysis of MVSC's actual performance, projections of MVSC's future performance, and ongoing analysis of the EVR market (including the role of CDK/Reynolds in that market).

(*Id*. ¶ 18.)

AKKR's counsel, while disagreeing with the relevance of even that more limited subset of information, endeavored to determine whether there would be any practical means of isolating those documents and communications without capturing and reviewing the same large swath of ESI responsive to the search previously conducted. (*Id*. ¶ 19.) AKKR's counsel confirmed that there is not, and communicated the same to counsel on March 17, 2019. (*Id*. ¶¶ 20-21.) Accordingly, the parties have been unable to reach agreement on any mutually acceptable means of narrowing R&R's subpoenas, thereby necessitating AKKR's filing of this motion. (*Id*. ¶ 22.)

## LEGAL STANDARD

"Federal Rule 45(c)(3) governs the quashing of subpoenas." *Ameritox, Ltd. v. Millennium Laboratories, Inc.*, No. 12-cv-7493, 2012 WL 6568226, at *2 (N.D. Ill. Dec. 14, 2012) (granting third-party subpoena respondent's motion to quash in its entirety). "A court is required to quash a subpoena where . . . [it] subjects a person to undue burden." *Id*. In determining whether such an undue burden exists, courts consider "numerous factors, including the likelihood that compliance will result in production of the information, whether the discovery is unreasonably cumulative or duplicative, and whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source." *Allstate Ins. Co. v. Electrolux Home Prod. Inc.*, No. 16-cv-4161, 2017 WL 5478297, *2 (N.D. Ill. Nov. 15, 2017) (Dow, J.)

The scope of discovery obtainable from a subpoenaed third-party is narrower than what may be obtained from parties. *Allstate Ins. Co*., 2017 WL 5478297 at *2 (internal quotations and

5

citations omitted) (noting that, in assessing whether a document request imposes undue burden, "[n]on-parties generally are entitled to greater protection[.]"); *Bank of Am., Nat. Ass'n v. LaSalle Commercial Mortg. Sec., Inc.*, 12 C 9612, 2014 WL 3928441, at *3 (N.D. Ill. Aug. 12, 2014) (denying motion to compel responses to subpoenas for documents and testimony and stating that "non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue").

## ARGUMENT

### I. The Subpoenas Impose a Substantial and Undue Burden on Non-Party AKKR

"When determining if a burden is undue, the court must ask whether "the burden of compliance with the subpoena would exceed the benefit of production of the material sought by it." *Tresona Multimedia, LLC*, 15 C 4834, 2015 WL 4911093, at *2 (N.D. Ill. Aug. 17, 2015) (internal quotation omitted). "Because of the different expectations for non-parties in accepting the burdens of litigation, courts give special weight to the unwanted burdens thrust upon non-parties when balancing competing needs." *Id.* (internal quotation omitted).

Quashing the Subpoenas is more than justified because while the non-duplicative documents and testimony sought have minimal, if any, relevance (*see infra* Secs. II-III), the burden on AKKR of responding is extraordinary. The Subpoenas would require AKKR to retrieve and hire counsel to review tens of thousands of emails and other electronic documents, many of which will likely contain privileged and/or highly proprietary materials. (Siegall Decl., ¶¶ 9-10.) Attorney review of this quantity of ESI, including marking documents for responsiveness, confidentiality, and privilege, and preparing a corresponding privilege log, is likely to take hundreds of hours and stretch over multiple months. (Siegall Decl., ¶ 23.) Reviewing the produced documents with an AKKR representative in preparation for the subpoenaed deposition would result in additional costs. (*Id.* ¶ 24.) While the precise attorneys' fees that would be incurred to fully comply with the

Subpoenas is difficult to estimate with precision at this early stage, based on the undersigned counsel's experience completing similar discovery projects in other matters, AKKR would incur at least 350 billable attorney hours to fully comply with the Subpoenas, resulting in at least tens of thousands of dollars in legal fees. (*See id*. ¶¶ 22-23.)

In addition to the billable attorney time required, full compliance with the Subpoenas would require significant participation from AKKR representatives, taking them away from their regular work obligations. (*Id*. ¶ 24.) Further, exporting AKKR's potentially responsive ESI into a software program, such as Relativity, for attorney review and production, will likely add at least $10,000 in costs. (*Id*. ¶ 7.)

Courts have quashed or refused to enforce compliance with third-party subpoenas imposing burdens even less than AKKR would shoulder here. *See Musarra v. Digital Dish, Inc.*, CIVA 2:05-CV-545, 2008 WL 4758699, at *4 (S.D. Ohio Oct. 30, 2008) (denying motion to compel compliance with document subpoena to defendant's parent company, where respondent estimated that searching for and identifying responsive documents would take "more than 100 hours").

There is no basis to require AKKR to shoulder these burdens especially when, as set forth below, (i) the vast majority of requested documents and information were or could have been requested from MVSC; and (ii) the only non-duplicative documents and information sought have minimal if any relevance to the case. (*See infra*, §§ II-III.)

**II.   The Subpoenas Improperly Seek Documents and Testimony that R&R Did Seek or Could Have Sought from MVSC (Doc. Req. Nos. 1-3, 5-9; Dep. Topic Nos. 1, 5-11)**

It is axiomatic that third-party subpoenas should not be used to obtain documents that are available from parties to the case. *Earthly, LLC v. BB&HC, LLC*, No. 16-cv-4934, 2017 WL 4512761, *3 (N.D.Ill. Oct. 10, 2017) (granting motion to quash where issuer of subpoena could have sought the requested information from parties to the litigation); *see also Tresona Multimedia,*

7

*LLC*, 2015 WL 4911093, at *3 (granting motion to quash subpoena because, in part, documents sought were duplicative of those sought in party discovery).

Here, Document Request Nos. 1 and 6-9 and Deposition Topics 1 and 5-11 seek documents and information that R&R did seek or could have sought from MVSC. Demonstrating this fact, R&R's document request nos. 5 through 9 to AKKR substantially overlap with R&R's requests to MVSC, in response to which MVSC has produced voluminous documents. (Siegall Decl., ¶ 11, **Ex. 3** thereto, at RFP Nos. 2-8, 10-12, 20, 22-41, 43-46, 49-56, 71.) Along the same lines, the topics set forth in the Deposition Subpoena to AKKR are almost entirely duplicative of those included in defendants' Rule 30(b)(6) Deposition Notice to MVSC, pursuant to which an MVSC representative is scheduled to testify on Wednesday, March 20, 2019. (*Id*. ¶ 13, **Ex. 4** thereto.)

R&R should not be permitted to use the Subpoenas to AKKR to obtain the same discovery that it could have or did obtain directly from MVSC, especially when the deadline for party discovery elapsed months ago.

**III.    The Only Documents and Testimony that R&R Could Not Have Acquired Directly from MVSC, Concerning AKKR's Internal Documents and Communications, Are Irrelevant (Doc. Req. Nos. 2-9; Dep. Topic Nos. 2-11)**

The *only* documents and information sought from AKKR that R&R could not have obtained from MVSC are AKKR's internal documents and communications, not shared with MVSC, concerning the broad topics set forth in the Subpoenas, such as, for example: (i) MVSC (including financial analysis or projections), (ii) R&R and the other defendants; and (iii) the EVR market generally. These documents are irrelevant.

At issue in this dispute is whether defendants have monopolized the Illinois EVR Market and California EVR Market, as defined in the Second Amended Complaint, Dkt. 76, at paragraphs 65-85. Defendants have not brought any counterclaims and have not alleged any wrongdoing on

8

AKKR's part. Accordingly, AKKR's internal perspective on the topics outlined in the Subpoenas add little, if any, value to the truth-seeking process. MVSC's exhaustive documents produced and testimony provided covering identical topics are more than sufficient.

R&R's argument that AKKR's internal documents are relevant because they might reveal AKKR's assessment of MVSC as "a good investment target" and "dominant EVR provider unaffected by" the alleged antitrust conduct is unavailing. (Siegall Decl. ¶ 15, **Ex. 6** thereto, p. 2.) Assuming, *arguendo*, that AKKR's documents do reflect those conclusions, all that would demonstrate is a non-party's opinion that MVSC was a worthy investment target despite defendants' alleged antitrust violations. Even if such conclusions were theoretically drawn, that would have no impact on Defendants' potential liability in this case. Moreover, the fact that MVSC may have been performing profitably (which, if it were the case, would be readily apparent from MVSC's own documents), would not inhibit MVSC from presenting evidence that, but for defendants' alleged misconduct, MVSC would be *more* successful and competitive in the California, Illinois, and potentially other EVR markets.

Finally, and further demonstrating the irrelevance of the documents and information sought, this Court already overruled on relevance grounds similar requests issued to defendant CDK, for (i) CDK's communications with "any potential acquirer or acquirers including [six identified private equity firms] regarding the valuation of CDK, its subsidiaries, or any aspect of their business" (Dkt. 441, p. 8.); and (ii) documents and information related to CDK's acquisition of ELEAD1ONE (Dkt. 446, p. 4; Dkt. 498, p. 4). If such documents and information, very similar to what R&R seeks in the Subpoenas, were not discoverable from a *party*, AKKR similarly should not be burdened.

### IV. R&R's Contention that AKKR, as an MVSC Investor, is Entitled to Less Protection than Other Non-Parties, is Not Supported by Applicable Law

AKKR status "as an investor and part owner of MVSC" does not require this Court to treat AKKR differently than other non-parties or otherwise permit R&R to impose the heavy burdens triggered by the Subpoenas. (See Siegall Decl. ¶ 15, **Ex. 6** thereto, p. 1.) Courts frequently quash overbroad and unduly burdensome subpoenas to non-parties, despite their status as an owner or investor of a party to the case. *See e.g., Bank of Am., Nat. Ass'n*, 2014 WL 3928441, at *4 (in a breach of mortgage loan purchase agreement dispute, denying motion to compel third-party to comply with document and deposition subpoenas, and stating that "regardless of its status as an investor" in the loans at issue the respondent was "indisputably a non-party" unduly burdened by the subpoenas); *LegalZoom.com v. Rocket Lawyer Inc.*, 12-CV-00942 GAF, 2015 WL 12832823, at *3 (N.D. Cal. Mar. 23, 2015) (denying motion to compel compliance with document subpoena and rejecting argument that subpoena respondent should be treated as "less than a third party" because it was a "significant investor" in the defendant company).[1]

The lone case cited in R&R's March 7, 2019 letter, *Peoria Day Surgery Center v. OSF Healthcare Sys.*, 2008 WL 724798, *4 (C.D. Ill. Mar. 17, 2008), does not hold otherwise. That case involved an outpatient surgery center's antitrust claims against a competing hospital, and the defendant hospital served extensive document subpoenas on certain of plaintiff's physician-shareholders. *Id*. at *1. The court did not order the physicians to respond to the subpoenas due to their shareholder status but rather substantially narrowed the scope of the subpoenas to cover only

---

[1] *See also Musarra v. Digital Dish, Inc.*, 2008 WL 4758699, at *4 (rejecting as "not well-taken" plaintiff's argument that the any burden imposed would be justified because respondent, as defendant's corporate parent, was "not a stranger to" the case); *Core Laboratories LP v. Spectrum Tracer Services, L.L.C.*, CIV-11-1157-M, 2015 WL 5254534, at *4 (W.D. Okla. Sept. 9, 2015) (quashing subpoenas to investor in defendant company where the requested information was not relevant and largely already produced).

relevant documents that defendants had established were unobtainable from plaintiff. *Id*. at *4. Next, the court allowed further briefing on any remaining burden since the "cost and burden" of responding to the narrowed requests "could not be determined on [the existing] record." *Id*.

In contrast, AKKR has provided ample information on which to determine that the Subpoenas, even if narrowed as R&R proposed, would impose an undue burden. Thus, *Peoria Day Surgery Center* does not advance R&R's position. AKKR's motion should be granted.

## V. R&R's Eleventh-Hour Service of the Subpoenas on the Eve of Fact Discovery Closing Weighs in Favor of Quashing the Subpoenas

The timing of R&R's Subpoenas which were served on the eve of fact discovery closing, is also a factor that weighs in favor of granting AKKR's motion. This Court's scheduling order required the parties to this litigation to issue all party discovery in May 2018 and to substantially complete their document productions in October 2018. (Dkt. 166.) While AKKR understands that fact discovery remains open through April 2019 due to certain unfinished tasks, such as completing depositions, allowing R&R to issue new, wide-ranging subpoenas now would contradict at least the spirit and practical intent of the existing scheduling order.

Recognizing the need for fact discovery to come to an end, this Court recently granted CDK Global, LLC's ("CDK") motion for protective order, declining to allow plaintiff's October 2018 discovery requests because they were "served very late in the gestation of [the] case," and would have required CDK to spend "a great deal of time" at "significant expense" to respond. (Dkt. 498, p. 3.) The limitations imposed on party discovery in the interest of advancing this matter towards a final resolution should apply with at least equal force to a non-party, particularly when the vast majority of documents and testimony at issue was or could have been sought from MVSC, and where the relevance of any non-duplicative information is, at most, marginal.

**CONCLUSION**

For the foregoing reasons, movant Accel-KKR Capital Partners IV, LP respectfully requests that the Subpoenas served on it by defendant Reynolds & Reynolds Company be quashed.

Respectfully submitted,

**ACCEL-KKR CAPITAL PARTNERS IV, LP**

By: /s/ Sara L. Siegall_____

Peter M. Spingola (6243942)
Sara L. Siegall (6297622)
**CHAPMAN SPINGOLA, LLP**
190 S. LaSalle Street, Suite 3850
Chicago, IL 60603
(312) 630-9202 (phone)
(312) 630-9233 (fax)
pspingola@chapmanspingola.com
ssiegall@chapmanspingola.com

**CERTIFICATE OF SERVICE**

    I, Sara Siegall, counsel for subpoena respondent Accel-KKR Capital Partners IV, LP, certify that on Tuesday, March 19, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF electronic filing system, which will send a notice of electronic filing to counsel of record.

                                                                                   /s/ Sara L. Siegall