UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Dealer Management Systems Antitrust Litig. | ) ) ) ) Case No. 1:18-cv-864 ) ) MDL No. 2817 ) ) Judge Robert M. Dow Jr. ) ) Magistrate Judge Jeffrey T. Gilbert ) |

## DECLARATION OF SARA SIEGALL

I, Sara Siegall, under penalty of perjury pursuant to 28 U.S.C. 1746, state as follows:

1. I am an attorney with the law firm Chapman Spingola, LLP, which represents subpoena respondent Accel-KKR Capital Partners IV, LP ("AKKR") in this matter.

2. This declaration is based on personal knowledge.

3. Defendant Reynolds & Reynolds Co. ("R&R") issued to AKKR (i) the Document Subpoena attached hereto as **Exhibit 1**, served on February 26, 2019; and (ii) the Deposition Subpoena attached hereto as **Exhibit 2**[1], served on March 6, 2019 (collectively, the "Subpoenas").

4. In late February and early March 2019, I worked with AKKR to estimate the volume of documents and electronically stored information ("ESI") potentially responsive to the Document Subpoena.

5. On March 5, 2019, AKKR applied the following eight search terms for the requested time period of January 1, 2013 to the present to its email archives, which were current as of that date: (i) MVSC, (ii) CDK, (iii) EVR, (iv) CVR, (v) Vitu, (vi) DMVDesk, (vii) "Motor

---

[1] To avoid unnecessary duplication, Exhibit B to the Deposition Subpoena, which is the same as Exhibit B to the Document Subpoena, has been omitted from Exhibit 2 hereto.

1

Vehicle Software Corporation", or (iii) "electronic vehicle registration". These terms, which track closely the document requests served on AKKR, yielded 41,576 emails.

6. Based on my experience with numerous similar discovery projects in other cases throughout my eleven years of practice as a commercial litigator, these 41,756 emails, when exported into a software program for reviewing and producing documents in litigation (*e.g.*, "Relativity"), which treats each attachment to an email as a separate "document," would very likely expand to at least 80,000 documents or more requiring attorney review.

7. To the best of my knowledge, it is not possible to calculate the precise document count yielded by these emails without undertaking the expensive and time-consuming process of extracting and processing them in Relativity—an expense that will likely exceed $10,000 and that AKKR seeks to avoid with its Motion to Quash.

8. In addition to emails, AKKR possesses substantial additional potentially responsive ESI maintained on various computer servers, the quantity of which cannot be estimated with any accuracy without actually gathering and processing those documents into Relativity.

9. Moreover, a substantial portion of potentially responsive email and nonemail ESI is likely to reveal privileged communications between AKKR and its corporate counsel, thus requiring AKKR's attorneys to conduct a careful privilege review and likely prepare an extensive privilege log following the privilege review.

10. Likewise, because AKKR is an investor in MVSC, a large portion of its responsive ESI is certain to contain highly proprietary and commercially sensitive information that, in addition to privilege concerns, would need to be carefully reviewed for confidentially designations under the protective order governing this matter.

11. Attached hereto as **Exhibit 3** is a copy of Defendants' First Set of Requests to Produce to MVSC. It is my understanding that MVSC has, to date, produced more than 27,800 documents in response to defendants' many requests.

12. Likewise, I understand that since October 2018, the parties to this matter have collectively taken nearly sixty fact witness depositions.

13. Additionally, defendants served on MVSC a Rule 30(b)(6) deposition notice, a copy of which is attached hereto as **Exhibit 4**, containing deposition topics that appear to substantially overlap with those set forth in the Deposition Subpoena to AKKR. I understand that an MVSC representative is scheduled to testify in response to that deposition subpoena on Wednesday, March 20, 2019.

14. On March 5, 2019, I sent the letter attached hereto as **Exhibit 5** to R&R's counsel outlining AKKR's objections to the Document Subpoena.

15. On March 7, 2019, I received from R&R's counsel the responsive letter attached hereto as **Exhibit 6**.

16. On March 11, 2019, I conferred with R&R's counsel by telephone concerning both the Deposition Subpoena and Document Subpoena.

17. During this call, I informed R&R's counsel that AKKR performed a basic search of its email archives for the requested time period (January 1, 2013-present) using eight basic search terms, and that this search captured over 40,000 e-mails.

18. R&R's counsel then offered that R&R may be willing to narrow its subpoenas (both document and deposition) to the following topics:

    a. AKKR's pre-investment analysis of the pros/cons of investing in MVSC and the EVR market (including the role of CDK/Reynolds in that market); and

      b. AKKR's post-investment analysis of MVSC's actual performance, projections of MVSC's future performance, and ongoing analysis of the EVR market (including the role of CDK/Reynolds in that market).

19. I informed R&R's counsel that I did not agree that documents meeting those parameters would be relevant or discoverable, but agreed to confer with AKKR to determine whether, in any event, there would be any practical means of isolating those documents and communications without capturing and reviewing the same large swath of emails responsive to the search previously conducted (not to mention other ESI).

20. I subsequently conferred with AKKR and confirmed that there are not any discrete ESI repositories at AKKR that would exclusively or comprehensively capture the more narrow categories of documents or information described in paragraph 18 above, nor is there any other means, to AKKR's knowledge, of isolating responsive documents on an automated basis.

21. I communicated the results of my inquiry to R&R's counsel on March 17, 2019 in the email attached hereto as **Exhibit 7**.

22. Based on my experience with many other similar discovery projects as set forth above, and on the fact that AKKR has over 40,000 emails alone responsive to the search terms which closely track the topics on which R&R seeks documents and testimony, I conservatively estimate that AKKR would incur at least 350 billable attorney hours to fully comply with the Subpoenas. At least a substantial portion of that billable time would be required to be performed by more experienced counsel with hourly rates in the range of $400-$550/hour.

23. Based on my investigation to date and substantial experience with discovery projects of this sort in other commercial litigation matters, it is my belief that narrowing the

4

subpoena requests and deposition topics to the categories set forth in paragraph 18 would not materially reduce the billable time needed to comply with the Subpoenas.

24. Finally, In the course of responding to the Subpoenas, I and my colleagues would likely need to spend significant time conferring with AKKR representatives to understand the context and content of potentially responsive ESI and make decisions concerning confidentiality and privilege, thereby imposed an additional burden on AKKR.

                                                  */s/ Sara Siegall*

**CERTIFICATE OF SERVICE**

    I, Sara Siegall, counsel for subpoena respondent Accel-KKR Capital Partners IV, LP, certify that on Tuesday, March 19, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF electronic filing system, which will send a notice of electronic filing to counsel of record.

/s/ Sara L. Siegall