# chapman | spingola
### ATTORNEYS AT LAW

Sara Siegall
Phone | (312) 606-8665
E-mail | ssiegall@chapmanspingola.com

March 6, 2019

**BY PDF/EMAIL**

Mr. Leo Caseria
Sheppard Mullin Richter & Hampton, LLP
4 Embarcadero Center, 17th Floor
San Francisco, California 94111
lcaseria@sheppardmullin.com

Re: *In re: Dealer Management Systems Antitrust Litigation*, 1:18-CV-864/MDL No. 2817
Document Subpoena to Accel-KKR Capital Partners IV, LP ("AKKR")

Dear Mr. Caseria:

We represent AKKR and write to you concerning the document subpoena ("Subpoena") served on it by the Reynolds & Reynolds Co. ("R&R") in the above-referenced matter. I write to raise concerns as to the timing, overbreadth, lack of relevance and undue burden imposed by the requests set forth in the Subpoena, and ask that we set a time to meet and confer by telephone following your review of this letter.

As you know, the scope of discovery obtainable from a subpoenaed third-party is narrower than what may be obtained from parties. *Allstate Ins. Co. v. Electrolux Home Prod. Inc.*, No. 16-cv-4161, 2017 WL 5478297, *2 (N.D. Ill. Nov. 15, 2017) (Dow, J.) (noting that, in assessing whether a document request imposes undue burden, "[n]on-parties generally are entitled to greater protection[.]"). Under Rule 45(d)(3)(A)(iv), the district court must quash or modify any subpoena that subjects the respondent to undue burden. *See Ameritox, Ltd. v. Millennium Laboratories, Inc.*, No. 12-cv-7493, 2012 WL 6568226, at *2-3 (N.D. Ill. Dec. 14, 2012) (granting third-party subpoena respondent's motion to quash in its entirety). In determining whether such an undue burden exists, courts consider "numerous factors, including the likelihood that compliance will result in production of the information, whether the discovery is unreasonably cumulative or duplicative, and whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source." *Allstate Ins. Co.*, 2017 WL 5478297 at *2 (internal quotations and citations omitted). One or more of those factors apply to all of the requests in the Subpoena.

1. **The Subpoena is Untimely**

The court's scheduling order required the parties to this litigation to issue all party discovery in May 2018 and to substantially complete their document productions in October 2018. (Dkt. 166.) While we understand that fact discovery has remained open for certain purposes, such as



EXHIBIT 5

L. Caseria
March 6, 2019
Page 2 of 3



completing depositions, the time to issue new wide-ranging discovery requests that could easily have been served at the outset of this dispute has long since passed.

Judge Gilbert recently granted CDK Global, LLC's ("CDK") motion for protective order, declining to allow plaintiff's October 2018 discovery requests because they were "served very late in the gestation of [the] case," and would have required CDK to spend "a great deal of time" at "significant expense" to respond. (Dkt. 498, p. 3.) Surely, Judge Gilbert will reach the same conclusion with respect to R&R's February 2019 discovery propounded on a non-party. Moreover, R&R should not be permitted to use the Subpoena as an end-run around the long-since elapsed deadline to seek discovery directly from plaintiff Motor Vehicle Software Corporation ("MVSC").

> 2. **The Subpoena Improperly Requests Documents that Were or Could Have Been Sought from MVSC**

It is axiomatic that third-party subpoenas should not be used to obtain documents that are available from parties to the case. *Earthly, LLC v. BB&HC, LLC*, No. 16-cv-4934, 2017 WL 4512761, *3 (N.D.Ill. Oct. 10, 2017) (granting motion to quash where issuer of subpoena could have sought the requested information from parties to the litigation). Here, Request Nos. 1 and 6-9 seek documents that R&R could easily have sought from MVSC. Moreover, requests 5 through 9 substantially overlap with R&R's requests to MVSC, in response to which MVSC has produced voluminous documents. (*See* R&R's First Set of RFPs to MVSC, Req. Nos. 2-8, 10-12, 20, 22-41, 43-46, 49-56, 71.)

There is no basis on which AKKR, a third-party, should be burdened with responding to this Subpoena without R&R demonstrating (i) why R&R could not seek the same documents from MVSC; (ii) what relevant and responsive documents R&R believes AKKR would have that MVSC would not; and (iii) why R&R waited until this very late gestation of the dispute to serve these requests.

> 3. **The Requests to AKKR are Overbroad and Seek Largely Irrelevant Information**

Temporarily putting aside issues of timeliness and burden, the Subpoena seeks documents that are not relevant to this dispute, which centers on defendants' alleged monopolization of the Illinois EVR Market and California EVR Market (as defined in MVSC's Second Amended Complaint (Dkt. 76, ¶¶ 65-85). Defendants have not asserted any counterclaims or raised any allegations that implicate AKKR or would otherwise render AKKR's internal communications and records relevant.

Even if the requests set forth in Subpoena could be construed as capturing some relevant information, the scope of the requests are extraordinarily overbroad. There are no legitimate reasons why R&R needs *all* documents and communications in AKKR's possession from January 2013 to the present concerning the expansive topics of: MVSC (Reqs. 1-2, 5-6), CVR (Req. 3), Rob Cohen (Req. 4), each of the defendants (Reqs. 7-8), and DMS integration service providers (Req. 9).

Moreover, R&R's requests to AKKR in the Subpoena are substantially similar in nature to those issued to CDK, and which Judge Gilbert overruled on relevance grounds, for (i) CDK's

L. Caseria
March 6, 2019
Page 3 of 3



communications with "any potential acquirer or acquirers including [six identified private equity firms] regarding the valuation of CDK, its subsidiaries, or any aspect of their business" (Dkt. 441, p. 8.); and (ii) documents and information related to CDK's acquisition of ELEAD1ONE (Dkt. 446, p. 4; Dkt. 498, p. 4). If CDK, an actual party to this dispute, should not be required to respond such requests, neither should a third party like AKKR.

We fail to see how *any* of R&R's request seek documents relevant to the ultimate issues in the case. Instead, the Subpoena appears to be a blatant litigation tactic designed to harass MVSC's investor and needlessly increase costs.

### 4. The Subpoena Imposes an Undue Burden on AKKR

In order to respond to the Subpoena's sweeping requests, AKKR and its counsel would have to spend hundreds of hours identifying, culling, and reviewing for responsiveness and privilege voluminous emails and other electronic documents. There is no basis on which AKKR should be forced to endure such a burden, particularly since any *relevant* documents AKKR may possess are highly likely to overlap with the nearly 28,000 documents that MVSC has already produced.

Please provide dates and times this week when you are available to meet and confer by telephone concerning this letter.

Sincerely,

*Sara Siegall [electronic signature]*

Sara Siegall

cc: Peter M. Spingola, Esq.