**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**THE DEALERSHIP CLASS ACTION** | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**DEALERSHIP CLASS PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM DEFENDANTS' PRIVILEGE LOGS AND TO COMPEL DISCOVERY REGARDING DRAFTING OF AGREEMENTS**

# TABLE OF CONTENTS

**I. INTRODUCTION** .... 1

**II. ARGUMENT** .... 1

- **A. Purportedly Privileged Documents Sent to Numerous Recipients Suggest Waiver** .... 1
- **B. Communications Sent to Unknown Email Distribution Lists Cannot Be Assessed for Privilege.** .... 3
- **C. Unjustified Disclosure to Third-Party Advisors, Consultants, and Agents Waives any Privilege.** .... 4
  - **1. Arthur Petrochenko (Secureworks)** .... 5
  - **2. Morgan Stanley** .... 6
  - **3. Presidio Technology Partners** .... 7
  - **4. Aberdeen Strategies, Sard Verbinnen & Co., and Joele Frank** .... 7
- **D. Advice Not Predominantly Legal in Nature Is Not Privileged.** .... 9
- **E. Defendants Have Implicitly Waived Privilege.** .... 10

**III. CONCLUSION** .... 11

# I. INTRODUCTION

In opposing Dealership Class Plaintiffs' ("Dealership Plaintiffs") Motion ("Defs.' Opp.") (ECF No. 570),[1] Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") (collectively, "Defendants") mischaracterize Dealership Plaintiffs' positions and otherwise obfuscate the issues in an attempt to avoid providing Dealership Plaintiffs with the necessary information to evaluate Defendants' claims of privilege. While it is true that Dealership Plaintiffs have narrowed the scope of their challenges from the outset of this process, the overall scope of Dealership Plaintiffs' initial challenges and the subsequent work Defendants have done in supplementing their logs, revising redactions, and producing formerly withheld documents is directly a result of Defendants' inadequate privilege logs. That the other MDL Plaintiffs have not joined Dealership Plaintiffs in this motion in no way impacts the validity of Dealership Plaintiffs' arguments. Motions are decided on merit, not by the counting of ballots. The Court should reject Defendants' arguments and grant Dealership Plaintiffs' Motion.

# II. ARGUMENT

## A. Purportedly Privileged Documents Sent to Numerous Recipients Suggest Waiver.[2]

CDK completely mischaracterizes the core of Dealership Plaintiffs' argument on this issue. Defs.' Opp. at 5–6. *Muro* stands for the premise that the number of recipients is not alone dispositive of questions of privilege. *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007).

[1] Dealership Class Plaintiffs' Memorandum of Law in Support of Their Motion to Compel Production of Inadequately Logged Documents from Defendants' Privilege Logs and to Compel Discovery Regarding Drafting of Agreements (ECF No. 538) shall be referred to herein as "Dealers' Mot."

[2] CDK notes that of the 51 entries on its log challenged by Dealership Plaintiffs in this category, CDK ended up producing 40 of those documents. CDK characterizes its re-review and production of these formerly allegedly privileged documents as being undertaken "[i]n the spirit of compromise." Defs.' Opp. at 2; Nordin Decl., Ex. F at 2. However, it more accurately depicts a significant number of documents inappropriately designated as privileged by CDK.

But Dealership Plaintiffs are not alleging that "nine of CDK's privilege log entries are inadequate [solely] because they identify communications with 'numerous' recipients." Defs.' Opp. at 5. Dealership Plaintiffs do not dispute that there are some circumstances under which it is necessary to send privileged communications to large numbers of people within an organization (*e.g.*, litigation hold letters). Rather, Dealership Plaintiffs have argued that CDK's privilege log entries are inadequate where they *fail to explain why* purportedly privileged communications were sent to numerous recipients. Dealers' Mot. at 4. Dealership Plaintiffs have repeatedly communicated with CDK on this issue, requesting clarification and explanation. *See, e.g.,* Dealers' Mot., Nordin Decl., Ex. H at 1–2. Moreover, Dealership Plaintiffs did *not* include entries from Reynolds' log reflecting emails sent to as many as *267* recipients because those entries were identified as communications related to litigation holds, and thereby explained the necessity for wide distribution. In contrast, CDK has refused to provide information as to why it was necessary to distribute multiple entries on its privilege log to numerous recipients.

While CDK's log descriptions allegedly represent communications intended to request or provide legal advice, that is of little consequence when the issue, as Dealership Plaintiffs have clearly stated, is one of potential waiver. "Where the client is a corporation, the privilege is waived if the communications are disclosed to employees who did not need access to the communication." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987). In addition to addressing waiver of privilege by disclosure to unnecessary individuals, *Baxter Travenol Labs* dealt with the question of whether documents "incidentally" sent to attorneys became privileged. *Id.* It is in this context that the language quoted by CDK—"the mere fact that a document is sent to many non-legal personnel is not determinative of whether it is privileged"—appeared. *Id.* Nowhere in *Baxter Travenol Labs* does the court address questions of

waiver by disclosure to large groups of individuals. *Upjohn*, the only other case cited by Defendants for this point (Defs.' Opp. at 5-6), is likewise distinguishable in that it did not, as CDK implies, deal with a single purportedly privileged communication sent to 86 individuals, but rather 86 separate communications with a single, distinct individual. *Upjohn Co. v. United States*, 449 U.S. 383, 394 n.3 (stating that "[t]he communications at issue were made by Upjohn employees" and describing interviews with eighty-six employees).

CDK has refused to meet its burden to establish that the numerous recipients of these communications needed access to the purportedly privileged information. By refusing to provide information about why so many employees needed a purportedly privileged communication, CDK has failed its burden to provide the information necessary to assess the claims of privilege. Therefore, CDK should be required to produce these documents.

**B. <u>Communications Sent to Unknown Email Distribution Lists Cannot Be Assessed for Privilege.</u>**

In an effort to compromise and remedy a serious defect in Defendants' privilege logs, Dealership Plaintiffs agreed to accept an approximation of the number of individuals on each distribution list and the general purpose of each list. Prior to entering the agreement, Defendants and Dealership Plaintiffs did not discuss how to handle distribution lists that were no longer in use, nor did Defendants disclose that some of the distribution lists at issue were no longer in use.

Dealership Plaintiffs are not attempting to renege on an agreement made in good faith; rather, the dispute is over differing interpretation, borne in large part from Defendants' failure to disclose that some of the distribution lists in dispute were no longer in use at the time of the agreement. Moreover, contrary to Defendants' assertions, Dealership Plaintiffs have not requested "historical information about the purpose or membership of the distribution lists at the time the privileged communications took place" or that Defendants "recreat[e] the historical membership

of now-defunct email distribution lists on their privilege logs." Defs.' Opp. at 6–7. Rather, Dealership Plaintiffs have only requested "the approximate number of people and general purpose of each list while they were in use." Nordin Decl., Ex. H at 4 and Ex. I at 2.

Defendants also claim that, without knowing even the number of recipients and general purpose of the email distribution lists, Dealership Plaintiffs should have asserted that the lists contain individuals who would waive the privilege. Defs.' Opp. at 7. This is inaccurate. From the start, Dealership Plaintiffs have raised such concerns with Defendants. Nordin Decl., Ex. A at 5 and Ex. B at 6. It is also entirely inappropriate and illogical for Defendants to completely withhold all information about an email distribution list and then demand that the other party should state the reasons why individuals on that list may waive privilege. Dealership Plaintiffs are only seeking a reasonable compromise that provides basic and necessary information about these distribution lists that allow Dealership Plaintiffs to make an informed assessment of privilege. Dealership Plaintiffs continue to seek far less than they are entitled by law. *See Muro*, 250 F.R.D. at 364. Because Defendants have failed to provide any additional information to Dealership Plaintiffs about these distribution lists, they have not allowed Dealership Plaintiffs to adequately assess the claim of privilege.

### C. Unjustified Disclosure to Third-Party Advisors, Consultants, and Agents Waives any Privilege.[3]

Defendants argue that the challenged communications between CDK and various advisors and consultants are privileged because those advisors and consultants were essential to the

[3] Despite multiple requests, CDK resisted providing sufficient information on NERA Economic Consulting for Dealership Plaintiffs to adequately assess privilege. *See* Nordin Decl., Ex. A at 4 and Ex. H at 3. However, based on the new information provided by CDK (*see* the Declaration of James Kinzer ("Kinzer Decl.") accompanying Defs.' Opp.), Dealership Plaintiffs withdraw their challenges to the entries related to NERA Economic Consulting. These are entries CDK_Priv_0003351, CDK_Priv_0003591, and CDK_Priv_0003786 in Nordin Decl., Ex. L.

rendering of legal advice. Defs.' Opp. at 7–8. However, Defendants neglect to include that "[w]hen the third party is a professional . . . capable of rendering advice independent of the lawyer's advice to the client, the claimant must show that the third party served some specialized purpose in facilitating the attorney-client communications and was essentially indispensable in that regard." *Id.* (quoting *Cellco P'ship v. Certain Underwriters at Lloyd's London*, No. Civ. A 05-3158, 2006 WL 1320067, at *2 (D.N.J. May 12, 2006)). "[W]hat is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal advice from the lawyer*. If what is sought is not legal advice but only [the third party's] service . . . or if the advice sought is the [third party's] rather than the lawyer's, no privilege exists." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (emphasis in original) (quoting *United States v. Brown*, 478 F.2d 1038, 1040 (7th Cir. 1973)).

**1. Arthur Petrochenko (Secureworks)**



*See In re Grand Jury Proceedings*, 220 F.3d at 571. Therefore, Defendants have not established that the communications on which Secureworks or Petrochenko were included qualify for attorney-client privilege.

CDK should be required to produce these entries.

**2. Morgan Stanley**



In *Stafford Trading, Inc. v. Lovely*, cited by CDK, the court acknowledged, "[m]any courts have recognized that, in today's market place, attorneys need to be able to have confidential communications with investment bankers to render adequate legal advice." No. 05-C-4868, 2007 WL 611252, at *6 (N.D. Ill. Feb. 22, 2007). However, the *Stafford Trading* court *limited* the privilege to instances where the privilege claimant had demonstrated that the investment bankers confidentially communicated with the privilege claimant's in-house counsel for the purpose of obtaining or providing legal advice. *Id.* at *7. The court also held that "whether or not the attorney-client privilege applies cannot be determined generally. Instead, Plaintiff's claims of privilege must be made on a document by document basis." *Id.*

*See Stafford Trading*, 2007 WL 611252, at *7. Therefore, Defendants have not established that the attorney-client privilege applies to communications involving Morgan Stanley. CDK should be required to produce these entries.

**3. Presidio Technology Partners**

CDK argues that the communications involving Presidio Technology were properly withheld as they are attachments integral to a separate privileged attorney-client communication. *Id.* Defendants cite to *Muro.* for the proposition that "the fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected." 250 F.R.D. at 363. However, "non-privileged documents do not become privileged solely by virtue of being transmitted to counsel." *Id.* at 363 n.21 (citing *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980)). As the *Muro* court explained, "[a] party can therefore legitimately withhold an entire e-mail *forwarding* prior materials to counsel, while also disclosing those prior materials themselves." 250 F.R.D. at 363 (emphasis in original). Thus, while the itemization of attached unprotected materials is not necessary, the non-privileged materials themselves are not shielded from disclosure. Accordingly, CDK should be required to produce these entries.

**4. Aberdeen Strategies, Sard Verbinnen & Co., and Joele Frank**

CDK has not established that the communications involving these consultants provided anything beyond the consultants' own advice independent of any legal advice being rendered. *See In re Grand Jury Proceedings*, 220 F.3d at 571. "It may be that the modern client comes to court as prepared to massage the media as to persuade the judge; but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000). CDK has not established that the

communications in which Aberdeen Strategies, Sard Verbinnen & Co., and Joele Frank were involved qualify for attorney-client privilege, instead merely making the generic statement that the firms were "integral to obtaining and rendering legal advice on communications efforts." Defs.' Opp. at 11. The paragraphs cited in the Kinzer Declaration contain the same similarly vague statements without reference to specific entries at issue.

Defendants argue that Dealership Plaintiffs' motion did not address communications separately protected by the work product doctrine and thereby waived the issue. Defs.' Opp. at 11 n.8. In fact, Dealership Plaintiffs' motion stated, "public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine . . . . As with the other third-party consultants over whose communications CDK has claimed privilege, CDK has not established that its communications with public relations and communications consultants qualify for attorney-client privilege or work product protection." Dealers' Mot. at 11–12. Dealership Plaintiffs maintain their previously stated argument that the public relations advice at issue falls outside of the work product doctrine. *See Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-cv-02518, 2014 WL 1715376, at *4 (N.D. Ill. May 1, 2014); *Burke v. Lakin Law Firm, PC*, No. 07-CV-0076-MJR, 2008 WL 117838, at *3 (S.D. Ill. Jan. 7, 2008); *Calvin Klein*, 198 F.R.D. at 55. Aside from the mere assertion that work product protection applies, CDK fails to respond to Dealership Plaintiffs' arguments that public relations advice is excluded from work product protection or otherwise established any basis for the challenged communications involving these communications consultants to qualify for work product protection. Because these communications cannot properly be deemed attorney-client privileged or work product, CDK should be required to produce these entries.

**D. <u>Advice Not Predominantly Legal in Nature Is Not Privileged.</u>**

The CDK and Reynolds privilege logs include entries that have vague descriptions appearing to describe advice that is not predominantly legal in nature. *See* Dealers' Mot. at 11. Defendants agree that advice from lawyers must concern the legal implications of an issue for the attorney-client privilege to apply. Defs.' Opp. at 12. However, Defendants argue that the entries at issue discussing business matters all involve legal advice relating to those business matters. Defendants claim that Dealership Plaintiffs are conflating the nature of advice and the subject to which that advice relates. *Id.* at 11–12. Dealership Plaintiffs are well aware of this distinction, however, Defendants' descriptions fall short of establishing that the attorneys in question are providing primarily legal advice as opposed to primarily business advice.

To show that a communication relates to legal advice, instead of simply business advice, the proponent of the privilege must demonstrate that the communications were made primarily for the purpose of generating legal advice. *Visa U.S.A., Inc. v. First Data Corp.*, No. C-02-1786JSW(EMC), 2004 WL 1878209, at *3 (N.D. Cal. Aug. 23, 2004). "Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Abbott Labs*, 1987 WL 12919, at *5. Defendants only provide vague descriptions on their privilege logs which fail to establish that the challenged communications were made for the purpose of generating legal advice instead of generating solely business advice for the business matters listed in those privilege log descriptions. The privilege log entries Defendants compare in their brief in support of their argument actually underscore this point. Defs.' Opp. at 13 n.9. [redacted]

[redacted] In contrast, the Dealership Plaintiff log entry Defendants highlight in their brief explicitly deals with providing legal advice on the terms of a contract. As the proponents of the privilege, Defendants have failed to show that the privilege applies and should therefore be required to produce these documents.

**E. <u>Defendants Have Implicitly Waived Privilege.</u>**

Defendants argue that they have not waived privilege regarding the February 2015 Agreements -- the DEA, the 3PA Agreement, and the Reynolds Interface Agreement. Defendants cite *Beneficial Franchise Co. v. Bank One, N.A.*, for the proposition that courts have "specifically rejected the proposition that a party impliedly waives the privilege merely by asserting a defense that would make an attorney's advice relevant." 205 F.R.D. 212, 216–17 (N.D. Ill. 2001). The argument misses the mark. The language of DEA § 4.5 relied upon by Defendants in their motions to dismiss—*i.e.*, that the Section "is not intended as a 'covenant not to compete'"—is *not* legal advice. Instead, it is a factual representation (and a sharply disputed one at that). As such, under Defendants' cited authority, any privilege has been waived. *See* Defs.' Opp. at 14 (citing *Quality Croutons, Inc. v. George Weston Bakeries, Inc.*, No. 05 C 4928, 2006 WL 2375460, at *4 (N.D. Ill. Aug. 14, 2006), for proposition that waiver occurs where party asserting privilege "affirmatively put at issue the specific … information to which the privilege attaches.").

Defendants' argument also ignores that "[t]he implied waiver doctrine ultimately is based on considerations of fairness: that is, a party may not use privilege as a tool for manipulation of the truth-seeking process." *Patrick v. City of Chicago*, 154 F. Supp. 3d 705, 711 (N.D. Ill. 2015). "In practical terms, this means that parties in litigation may not abuse the privilege by asserting

claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Id.*

Defendants contend that, under Dealership Plaintiffs' argument, any reliance on contractual language drafted by attorneys would waive the privilege (Defs.' Opp. at 13–14), but that argument is misguided. Surely, Defendants may rely on the contents of their agreement to show the terms of those agreements (for example, the price terms). Here, however, Defendants impermissibly rely on the self-serving, attorney-drafted contractual language to defeat Dealership Plaintiffs' allegations of Defendants' conspiratorial conduct.

Also meritless is Defendants' timeliness argument. Dealership Plaintiffs filed their motion shortly after they took the deposition of Reynolds witness Robert Brockman in January 2019, during which he was questioned about the contract section in question (Section 4.5), and well before the conclusion of fact discovery.

## III. CONCLUSION

For the foregoing reasons, Dealership Plaintiffs' Motion should be granted. Defendants should produce the identified documents from their privilege logs because they have not met their burden of establishing privilege. Having implicitly waived privilege, Defendants should also produce any and all withheld documents and allow discovery related to Defendants' discussions with counsel regarding the drafting of the February 2015 Agreements.

DATED: March 22, 2019

Respectfully submitted,

*/s/ Michelle J. Looby*
Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
dnordin@gustafsongluek.com

***Dealership Class Plaintiffs' Steering Committee***

Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG TADLERPHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

***Interim Lead Counsel for the Dealership Class***

Leonard A. Bellavia (*pro hac vice*)
Steven Blatt
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com

***Dealership Class Plaintiffs' Steering Committee***

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (*pro hac vice*)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7 423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

***Dealership Class Plaintiffs' Steering Committee***

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C .**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

***MDL Liaison Counsel***

**CERTIFICATE OF SERVICE**

I, Michelle J. Looby, an attorney, hereby certify that on March 22, 2019, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM DEFENDANTS' PRIVILEGE LOGS AND TO COMPEL DISCOVERY REGARDING DRAFTING OF AGREEMENTS** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Michelle J. Looby*
Michelle J. Looby