## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

*In re Dealer Management Systems Antitrust Litigation*, MDL 2817

_____

*This document relates to:*

*Authenticom, Inc. v. CDK Global, LLC et al.,*
Case No. 1:18-cv-00868 (N.D. Ill.)

No. 1:18-CV-864

Hon. Robert M. Dow, Jr.

Magistrate Judge Jeffrey T. Gilbert

---

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL AUTHENTICOM TO PRODUCE THIRD-PARTY COMMUNICATIONS, OR, IN THE ALTERNATIVE, SUBMIT SUCH COMMUNICATIONS FOR *IN CAMERA* REVIEW

---

# TABLE OF CONTENTS

I.      Introduction ................................................................................................. 1

II.     Communications with Management Coach Lori Zimmer Were Not Privileged
        ...................................................................................................................... 2

III.    Authenticom's Common Interest Argument Is Unsupported by Law or Facts ...... 5

        a.      Only Evidence Negates Authenticom's Claim of Common Interest ................... 5

        b.      Authenticom's Addition of New Common Interest Members Undercuts its
                Claims ............................................................................................... 6

        c.      Authenticom Has Failed to Establish the Common Interest Doctrine Applies
                ........................................................................................................ 9

IV.     Authenticom Has Not Established and/or Has Waived its Work Product
        Privilege ........................................................................................................ 13

V.      Conclusion ..................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Acceleration Bay Llc v. Activision Blizzard*,
2018 WL 798731 (D. Del. Feb. 9, 2018) ...............................................................13

*In re Air Crash Disaster at Sioux City*,
133 F.R.D. 515 (N.D.Ill.1990) ..............................................................................6

*Arthrex, Inc. v. Parcus Medical, LLC*,
2012 WL 5382050 (M.D. Fla. 2012) ......................................................................6

*Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*,
709 F.2d 1109 (7th Cir. 1983) .............................................................................13

*Borase v. M/A COM, Inc.*,
171 F.R.D. 10 (D. Mass. 1997)..............................................................................6

*BSP Software, LLC v. Motio, Inc.*,
12 C 2100, 2013 WL 3456870 (N.D. Ill. July 9, 2013) ...........................................2

*Dexia Credit Local v. Rogan*,
231 F.R.D. 268 (N.D. Ill. 2004)........................................................................9, 10

*Flagstar Bank v. Freestar Bank, N.A.*,
2009 WL 2706965 (N.D. Ill. Aug. 25, 2009) ..........................................................4

*In re Grand Jury Proceedings*,
220 F.3d 568 (7th Cir.2000) .................................................................................2

*Grochocinski v. Mayer Brown Rowe & Maw*,
LLP, 251 F.R.D. 316 (N.D. Ill. 2008)...........................................................9, 10, 12

*Heriot v. Bryne*,
257 F.R.D. 645 (N.D. Ill. 2009)..............................................................................4

*Lady Liberty Transp. Co., Inc. v. Philadelphia Parking*,
2007 WL 707372 (E.D. Pa. 2007) .........................................................................6

*Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc.*,
613 F. Supp. 2d 670 (D. Md. 2009).......................................................................6

*LG Elecs., Inc. v. Motorola*,
2010 WL 4513722, (N.D. Ill. Nov. 2, 2010) .........................................................14

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*,
661 F. Supp. 2d 958 (N.D. Ill. 2009) .......................................................2, 3, 4, 12

ii

*Ludwig v. Pilkington North America, Inc.*,
  2004 WL 1898238 (N.D. Ill. 2004) ......................................................................13

*McCook Metals L.L.C. v. Alcoa, Inc.*,
  192 F.R.D. 242 (N.D.Ill.2000) .............................................................................15

*U.S. ex rel. McGee v. IBM Corp.*,
  2017 WL 1232616 (N.D. Ill. Apr. 4, 2017) .........................................................13

*Miller UK Ltd. v. Caterpillar*,
  17 F. Supp. 3d 711 (N.D. Ill. 2014) ..................................................................5, 10

*In re Milo's Kitchen Dog Treats Consol. Cases*,
  2015 WL 1650963 ..................................................................................................11

*Ostrowski v. Holem*,
  2002 WL 31956039 (N.D. Ill. Jan. 21, 2002) ......................................................15

*Pampered Chef v. Alexanian*,
  737 F. Supp. 2d 958, 966 (N.D. Ill. 2010) ...........................................................10

*Pravak v. Meyer Eye Group, PLC*,
  2009 WL 10664851 (W.D. Tenn. Oct. 22, 2009) .................................................14

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  268 F.R.D. 114 (D.D.C. 2010) ..............................................................................15

*Rao v. Bd. of Trustees of the Univ. of Illinois*,
  2016 WL 6124436 (N.D. Ill. Oct. 20, 2016) ................................................3, 4, 10

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
  219 F.R.D. 66 (S.D.N.Y. 2003) .............................................................................14

*Schachar v. Am. Acad. of Ophthalmology Inc.*,
  106 F.R.D. 187 (N.D. Ill. 1985) ............................................................................11

*SEC v. Hollinagel*,
  2010 WL 11586980, (N.D. Ill. Jan. 22, 2010) .......................................................4

*Sidney I. v. Focused Retail Prop. I, LLC*,
  274 F.R.D. 212 (N.D. Ill. 2011) ..............................................................................7

*Stafford Trading v. Lovely*,
  2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ............................................................6

*Tallgrass Beef Co. LLC*, 2015 WL 3819373, (N.D. Ill. June 18, 2015) .........................9

*U.S. v. BDO Seidman*,
  492 F.3d 806, 816 (7th Cir. 2007) ........................................................................12

*U.S. v. Evans,*
    113 F.3d 1457 (7th Cir. 1997) ...................................................................................6

*US v. Const. Prod. Research, Inc.,*
    73 F.3d 464 (2d Cir.1996)........................................................................................6

*Vallone v. CNA Fin. Corp.,*
    2002 WL 1726524 (N.D. Ill. Mar. 19, 2002).......................................................11

## Other Authorities

Fed. R. 26(b)(3)(A) ...........................................................................................13, 14, 15

## I.    Introduction

Authenticom has not met its burden to establish that any privilege protects its communications with the host of challenged third-parties.  *See* Dkt. 541. Authenticom asserts that its former "management coach," Lori Zimmer, was a functional employee. Dkt. 572 ("Resp.") at 1.  But the Seventh Circuit has never adopted the "functional employee" exception, and even if it had, Authenticom neither lays out nor offers support for how Ms. Zimmer meets *any* of its factors. Importantly, Authenticom's main rationale for applying the privilege to Ms. Zimmer is that she would have been "substantially hindered" in providing her coaching services or "could not perform [her] job" without access to privileged communications.   Resp. at Ex. 2 (Zimmer Decl.) ¶¶ 5-6. But this turns the test on its head.  To meet the "functional employee" test, communications with the consultant must be essential for the provision of legal advice, not the other way around.

Authenticom's position on its "common interest" communications is equally backward.  In a nutshell, the indisputable facts are these: Differently situated companies, in different businesses, shared communications.  These communications ostensibly involved a subject matter relevant to this litigation—namely "CDK and Reynolds data access issues"—and their relation to the instant litigation is unclear and probably changed over time.  These communications occurred months, and sometimes *years*, before any litigation was filed.  Some of these communications involved outside counsel that represented one or more of the parties, some of them do not involve any outside counsel but instead in-house counsel of various parties, and some of them involved neither.[1] The only deponents to testify about these conversations deny joining or being part of any common interest and/or suggest it was not about litigation, but about lobbying the FTC.  Litigation

---

[1] Authenticom wrongly suggests each of the challenged "communications involved legal counsel for these parties."  Resp at 1.  Even including in-house counsel from other non-parties in this definition, this is still untrue.  *See, e.g.,* Dkt 541, Att. A at PRIV_0271, 1538 (emails between S. Cottrell and T. Petruzzelli).

was later filed by one and then two of the participating entities, but the rest did not participate, and one was even threatened to be added as a defendant. Authenticom then called the non-participating entities as "witnesses" in said litigation but refused to produce the prior years of communications with them. To uphold the alleged privilege here "justifies a common legal interest has no cognizable boundaries and runs the risk of allowing the common interest exception to swallow the rule." *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 966 (N.D. Ill. 2009).

## II.     Communications with Management Coach Lori Zimmer Were Not Privileged

Authenticom relies exclusively on the argument that Lori Zimmer was the "functional equivalent" of an employee and that therefore communications with her do not waive any applicable privilege. Resp. at 1, Ex. A (listing "functional equivalent" as only rationale). The functional equivalent test has never been adopted by the Seventh Circuit—and courts within the Circuit have "doubt[ed] its wisdom" and been "doubtful of whether the Seventh Circuit would endorse this test." *BSP Software, LLC v. Motio, Inc.*, 12 C 2100, 2013 WL 3456870, at *2 (N.D. Ill. July 9, 2013). *See also LG Elecs. U.S.A.,* 661 F. Supp. 2d at 963 (collecting cases). This stems from a fear that adopting this test has "the potential to expand the privilege dramatically and thus would run contrary to the Seventh Circuit's frequent admonition that the scope of the privilege must be carefully circumscribed." *BSP Software*, 2013 WL 3456870 at *3 (citing *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000)). The Court should decline to adopt it here and should find that any privilege for communications shared with Ms. Zimmer was waived.

Even if the Court disagrees, Ms. Zimmer cannot meet this "functional equivalent" test. Cases that endorse this test apply a multi-factor analysis: (1) "whether the consultant had primary responsibility for a key corporate job," (2) "whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation," and (3) "whether the consultant is likely to possess information

2

possessed by no one else at the company." *LG Electronics*, 661 F.3d at 963. Authenticom neither lays out these factors nor explains how Ms. Zimmer's coaching met them. Resp. at 3-4.

For the first and third factors, Authenticom provides no evidence at all. Ms. Zimmer states only that she was a "management coach" and that she "provide[]d leadership consulting and strategic planning services, including advising on company processes and strategic visioning and goals." Resp. at Ex. 2, ¶¶ 1-2, 4. Though these services may have been helpful, this is not evidence that she had essential, unavailable knowledge or primary responsibility for a key corporate job.

Authenticom's evidence on the second factor—that she consulted "on matters critical to the company's position in litigation"—is entirely unpersuasive. Neither Ms. Zimmer nor Authenticom state that she was essential to the litigation, or that Authenticom's attorneys relied on her to assist with their provision of legal advice. Her engagement agreement states not that she was hired to consult on bet-the-company litigation, but rather, to assist "███████████████ ███████████████" which had "███████████████." Resp. at Ex. 2.2. Her declaration only indicates that it was useful for her to have "access to confidential communications between Authenticom's executives," which included "those where legal advice was needed" and that it would have been "impractical" for her to be excluded because the litigation could not "be separated from broader discussions regarding the company's business strategy." Resp. at Ex. 2, ¶¶ 5-6.[2]

That it would have been "impractical" to exclude her from discussions, or that it was useful for her coaching to be involved in such discussions, is insufficient. Courts in this District have held that "[a] communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client." *Rao v. Bd. of Trustees of the Univ. of Ill.*, 14-CV-0066, 2016 WL

---

[2] Ms. Zimmer also states that she was included on Authenticom's Executives and Leadership email lists. Resp. at Ex. 2, ¶ 4. Authenticom previously represented that "her membership" could not be "conclusively determined." Ex. 8.

6124436, at *3 (N.D. Ill. Oct. 20, 2016). Put another way, the test is not whether inclusion of Ms. Zimmer necessary for *her* services, but for the *lawyer's* services—*i.e.*, "for the rendition of legal advice or the protection of a legal interest." *LG Elecs.*, 661 F. Supp. 2d at 963; *see Flagstar Bank v. Freestar Bank, N.A.*, 09 C 1941, 2009 WL 2706965, at *5 (N.D. Ill. Aug. 25, 2009) ("Defendant failed to meet its burden of showing that the letter was disclosed to Mr. Knights for the rendition of legal advice or the protection of a legal interest."). There is no such showing here. That a communication "made sense" to be shared or that a third-party was "extremely helpful to counsel" is not enough. *Flagstar Bank,* 2009 WL 2706965, at *5*; *Rao*, 2016 WL 6124436, at *3.

For example, in *LG Electronics*, Whirlpool argued that it would be "effectively impossible for Whirlpool's employees to communicate critical information…if they could not discuss legal issues." *Id.* at 965. But as Judge St. Eve held, "this misconstrues the scope of the attorney-client privilege." *Id.* It gets it backwards. Even if this Court were to adopt the "functional equivalent" test, Authenticom would need to show that Ms. Zimmer's inclusion on the challenged communications was "necessary, or at least highly useful, for the effective consultation between the client and the lawyer," *not* that it was useful for her provision of coaching services. *Heriot v. Bryne*, 257 F.R.D. 645, 666-67 (N.D. Ill. 2009). Authenticom has not attempted such a showing.[3]

---

[3] Authenticom's reliance on the unpublished decision of *SEC v. Hollinagel* is inapt. There, the individual "third-parties" were held out as employees, maintained offices at headquarters, used titles of the company, such as Executive Vice President, used client business cards, and were "an integral part of [the client's business]" and "day-to-day operations." 07 CV 4538, 2010 WL 11586980, at *13 (N.D. Ill. Jan. 22, 2010). The evidence here does not establish nearly that level of involvement. *See* Dkt. 541 at 11-12 (Authenticom executives discussing Ms. Zimmer's sporadic involvement, and indicating they were unsure of her role at the company.). Further, the court, after a review, only upheld privilege for communications "that appeared to be necessary to obtaining advice or implementing advice received on behalf of [the client.]." *Id.*

## III. Authenticom's Common Interest Argument Is Unsupported by Law or Facts

### a. Only Evidence Negates Authenticom's Claim of Common Interest

Authenticom has offered no evidence to support its contention that the various third-parties, Dominion, Autoloop, Advent Resources, eLead, MOC1 Solutions, DarCars, as well as the newly revealed CarFax, Superior Integrated Solutions ("SIS"), and DealerSocket, shared a protectible common interest—*i.e.*, that the underlying communications were otherwise privileged (or even whose privilege it was), that they were made in confidence, and they furthered an ongoing, identical legal interest. *Miller UK Ltd. v. Caterpillar*, 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014).

Authenticom attached no affidavits from any of the parties to the common interest agreement stating that they believed they were, in fact, in a common interest arrangement related to this litigation, that the various attorneys represented the various clients as they allege,[4] or that any common interest agreement actually existed between one or more of the entities.[5] The only real evidence is the testimony of the individuals involved in the withheld communications that, in fact, have testified *just the opposite*—that they did not join or were not involved in any common interest arrangement (and/or that any common interest only applied to complaints made to the FTC, not this litigation). *See, e.g.* Ex. 1 ("Petruzzelli Dep.) at 45:15-46:6. ██████████

████████████████████████████████

████████████ ██ ██████████ ██ ████████████████

████████████████████████████████

---

[4] Including that *in-house* counsel for one entity shared a privilege with officers of another. Resp. at 9 n.7 (alleging Dominion's in-house counsel provided legal advice to Authenticom's CEO).

[5] Authenticom has only submitted a supposed, non-executed common interest agreement from a communication Defendants did not challenge that is only between Mr. Cottrell and Mr. Schildkraut—and which is described, on Authenticom's privilege log, as an "engagement letter," not a common interest agreement. *See* Resp. at n.9; Resp. at Ex. 9. And though Authenticom states an NDA was in place, it does not submit the NDA, but only an email purportedly referencing it. Resp. at 15 n.12.



.");[6] Ex. 2 (SIS Dep.) at 308:18-309:6[7] ("

.").

Instead, Authenticom relies solely on its privilege log. But, as here, where other required information, including the "relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship," is nowhere found in a privilege log, such information must be supplied by *evidence*, namely, "affidavit or deposition testimony." *U.S. v. Const. Prod. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996).[8] Authenticom has supplied none and instead demands that the Court and Defendants to accept its assertions as fact. That is not the law and Authenticom has not met its burden. *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

    b.    <u>Authenticom's Addition of New Common Interest Members Undercuts its Claims</u>

Since filing their Motion, Defendants have discovered previously undisclosed communications by additional, purported third-party members of "Team CI" that were produced in response to subpoenas. Notably, these communications do not appear anywhere in Authenticom's (or Autoloop's) production nor do they appear on either Plaintiffs' privilege log.

---

[6] *See also* Ex. 1 (Petruzzelli Dep.) at 266:17-267:3 (stating that, among others,   had also complained to the FTC.)

[7] Citations to the SIS Deposition (Ex. 2) are to the deposition page number, not the exhibit page number. As of the time of filing, only a rough transcript of this deposition was available.

[8] *See Stafford Trading v. Lovely*, 2007 WL 611252 at *2 n. 3, 7, 8, 10 (N.D. Ill. Feb. 22, 2007) (party submitted affidavits in support of claims of privilege); *In re Air Crash Disaster at Sioux City*, 133 F.R.D. 515, 522-23 (N.D.Ill.1990) (similar). *See also Borase v. M/A COM, Inc.*, 171 F.R.D. 10, 15 (D. Mass. 1997) ("[T]here is a notable lack of evidence submitted by the defendant in support of its position. For example, there are no affidavits on record from the participants in these discussions confirming that legal advice was being sought or rendered."); *Lady Liberty Transp. Co. v. Philadelphia Parking*, 2007 WL 707372, *2 (E.D. Pa. 2007) (similar); *Leviton Mfg. Co., Inc. v. Shanghai Meihao Elec., Inc.,* 613 F. Supp. 2d 670 (D. Md. 2009). (similar); *Arthrex, Inc. v. Parcus Medical, LLC*, 2012 WL 5382050, *3 (M.D. Fla. 2012) (similar).

Ex. 3. For instance, SIS produced SIS_DMS_0018107—a communication between certain Team CI members, such as Authenticom, AutoLoop, Dominion, eLead, and MOC 1, and additional, previously undisclosed members, SIS, DealerSocket, and Autopoint on June 2, 2016—entitled "CDK Group." This document includes no outside counsel, was marked at SIS's deposition, and testified about, without objection. *See* Ex. 2 (SIS Dep.) at 308:12-310:24. As such, to the extent there was ever a privilege, Authenticom and Autoloop—whose counsel was present at the deposition—waived it. *Sidney I. v. Focused Retail Prop*. I, LLC, 274 F.R.D. 212, 218 (N.D. Ill. 2011) (waiver for documents introduced at deposition without objection as to privilege).

After the deposition, Defendants asked why neither this document or any of the included emails within the document existed in its production or its privilege log—as they were between agreed custodians and would have hit on agreed search terms—and asked Authenticom to re-review its emails to see if there were any, additional "Team CI" communications that had not been disclosed. Ex. 3. Authenticom responded by "clawing back" the document. *Id.* Authenticom also refused to certify that no such other unproduced and unlogged documents existed. *Id.* This means there may be additional, undisclosed communications out there.[9] In fact, on March 20, 2019, Authenticom clawed back an additional *six* documents produced by SIS that had not been produced by Plaintiffs or listed on their logs. *See* Ex. A ("Suppl. Priv. Claims")[10]; Ex. 4. Defendants request that the Court order Authenticom to produce, or alternatively, search for and submit, any previously undisclosed communications between the Team CI entities for *in camera* review.

---

[9] An additional unproduced document that appears to be between this same group (or a subset of this group) but which has not been snapped back is submitted as Exhibit 5.

[10] Defendants attach Exhibit A, listing the supplemental privilege claims Authenticom (and, for completeness, Autoloop) added since the Motion. Defendants add these documents into their challenge.

Authenticom has now added SIS, CarFax, DealerSocket, and Autopoint to its list of common entities (bringing the known total up to 11).[11] Authenticom's extension of this doctrine to include SIS proves too much, however, and exposes the claim for what it is: an *ex post* legal fiction. Not only did SIS—like Autoloop—indicate that it never joined any common interest arrangement (*see* Part III(a), *supra*), but Authenticom's counsel, Kellogg Hansen, ███████ ████████████████████████████████████████████████████████████████████████ ████. This bears repeating. Eight months after the communication that Authenticom seeks to withhold as privileged because SIS allegedly shared a common interest in suing CDK and Reynolds as co-conspirators in this antitrust case, Kellogg Hansen, on behalf of Plaintiff MVSC, ████████████████████████████████████████████████████████████████████████████ ██████████████████████████. *E.g.,* Ex. 6. While it is possible for parties to share a common interest and later become adverse, that is not the case here. Here the conflicted interests were *simultaneous.* Authenticom has taken the position that it shared a common interest with SIS in prosecuting a case revolving around an ongoing, alleged conspiracy that ████████ ██████████████████████████████████████████. Ex. 7.

Instead of admitting that it cannot share a common interest with SIS, Authenticom doubles down. It states that SIS_DMS_0018107 "plainly establishes the existence of a common legal enterprise" and that therefore "Defendants have no good-faith basis" to press their Motion. Resp. at 9. Defendants will not divulge the contents of a "clawed back" document but welcome an *in camera* review by the Court. The document includes no outside counsel, █████████ ████████████████████████████████████████████████████████.

---

[11] Authenticom, Autoloop, Dominion, Advent, eLead, MOC 1, DARCARS, CarFax, SIS, DealerSocket, and Autopoint. Of these, Authenticom filed suit in May 2017; Autoloop in April 2018, and the remainder are non-parties. Dominion, CarFax, SIS, and DealerSocket have all been deposed or noticed for deposition.

    c.    <u>Authenticom Has Failed to Establish the Common Interest Doctrine Applies</u>

Even taking its claims at face value, however, Authenticom has failed to establish that the challenged communications are subject to the "common interest" doctrine. Authenticom has not (1) shown the entities shared identical interests; (2) established that the entities all shared a common "legal" interest, as opposed to a rooting or business interest in being allowed access to Reynolds and CDK's DMSs; and (3) even if a common interest privilege did arise *at some point in time*, Authenticom has not established that it related to this litigation or arose in May 2015.

***Identical vs. Similar Interests***.  Even putting aside eLead and SIS—one of which expressly decided to "remain neutral," (Dkt. 541 at Ex. 3), and the other of which was a ███████████ ██████████—Authenticom has not established that the parties shared an "identical, not simply similar" interest when the various communications happened.  *Grochocinski v. Mayer Brown Rowe & Maw*, LLP, 251 F.R.D. 316, 327 (N.D. Ill. 2008); *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 273 (N.D. Ill. 2004) (same).   At the time, no litigation had been filed, the parties participated in different business lines and had different contractual relationships with CDK and Reynolds, and Plaintiffs' counsel had not even been hired.[12]  Dkt. 541 at 2-5; Resp. at 8.

Even if all the parties wanted *something* from Defendants—whether it was money, entry into certified interface programs, certain functionality on Defendants' DMSs, access points for hostile integrators to access the DMS, or lower prices—that is not enough to establish an identical legal interest if what they wanted at all diverged. *Tallgrass Beef Co. LLC*, 13 C 7322, 2015 WL 3819373, at *7 (N.D. Ill. June 18, 2015) ("[T]wo parties have an interest in pressing a case forward simultaneously is not, in itself, sufficient to show that the common interest doctrine applies.").

---

[12] The first communication with Kellogg Hansen appears to be in January 2017 (Resp. at Ex. 4, PRIV_1929).  Autoloop may not have retained ████████████████ Ex. 1 (Petruzzelli Dep). at 36:17-37:5 ("████████████████████████████████.").  Authenticom has previously refused to answer Defendants' questions regarding the dates of representation. Dkt. 541 at Ex. 2.

Finally, the only testimony regarding these communications is that they were (1) *not* about this litigation, but rather, were about coordinating complaints to the FTC and (2) that there was in fact no common interest formed. Ex. 1 (Petruzzelli Dep.) at 45:15-46:6. ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex. 2 (SIS Dep.) at 308:18-309:6 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis added). Authenticom does not allege that the common interest was advocacy to the FTC or that any privilege would attach to such communications.

***Legal Interests vs. Rooting Interests.*** In many instances it may be difficult to parse the difference between a "legal interest" and a "business" or "rooting" interest. Not so here. Here, where the asserted common interest is *litigation*, the entities that share such a legal interest are simple to determine—it would be other parties to that case.[13] If an entity is *not* a party to a case, but instead, is simply on the sidelines cheering it on—regardless of whether they would benefit from the outcome—that is by definition a *rooting* interest, not a legal interest. "A shared rooting interest in the 'successful outcome of a case' . . . is not a common legal interest*." Miller UK Ltd.*, 17 F. Supp. 3d at 732–33. This is the case even if the outcome of a case would profit or benefit one of the participants. *Grochochinski*, 251 F.R.D. at 327; *Rao*, 2016 WL 6124436, at *3.

It is true that *potential parties* can share a joint common interest—presumably even if one or more of them never end up filing. *Grochochinski*, 251 F.R.D. at 327 (theorizing common interest

---

[13] Authenticom's cases are in accord. In *Dexia*, the communications were between parties in two existent cases related to the same underlying facts, one of whom was bringing claims on behalf of the other, and the parties shared an attorney. *Dexia*, 231 F.R.D. at 273-4. In *Pampered Chef v. Alexanian*, not all the members were parties, but they *had* signed a common interest agreement, unlike the Team CI entities here, and had each been *threatened* with litigation. 737 F. Supp. 2d 958, 966 (N.D. Ill. 2010) ("All of the individuals who signed the written, common interest agreement now work for Park Lane…. The agreement indicates that plaintiff has threatened Park Lane and the individuals who are not yet named as defendants….").

could apply to "actual or potential plaintiffs" but declining to apply it to non-party with financial interest represented by separate counsel). But Authenticom has cited no case where, like here, the purported common interest (1) arose years before litigation was filed; (2) is shared between nearly a dozen differently situated parties; (3) almost none of whom were represented by the same counsel—and many of whom were never represented by outside counsel at all; (4) when the counsel who later filed the suit was not involved at the time; (5) the vast majority of the entities never filed suit and there is no evidence they seriously considered it; and (6) the only deponents on this subject have disclaimed joining any common interest arrangement.

*"Putative Class Action" Argument.* The fact that, two or three years later, Autoloop filed a putative vendor class action does not change the outcome. Resp. at 10. Authenticom's sole cited case does not address the issue of a "common interest" privilege applying to putative class members of a class action not filed until years later, and in fact, suggests the opposite: that no privilege would attach. *See Schachar v. Am. Acad. of Ophthalmology Inc.*, 106 F.R.D. 187, 192 (N.D. Ill. 1985) ("Much of the defendants' requests concern communications among co-plaintiffs about the *Vest* case; those statements are not protected merely because they might reiterate matters confided in the parties' attorneys as well.") (cited at Resp. at 10). Other cases have refused to apply the common interest exception in circumstances where there is no evidence that, at the time of the communications, any common interest agreement existed or that the other participants had opted-in to any class action. *In re Milo's Kitchen Dog Treats Consol. Cases*, 2015 WL 1650963, supp. 2015 WL 2341220, at *2 (W.D. Pa. 2015) (no privilege between putative class member and plaintiff where no evidence that party had "formally opted-in to the prospective class at the time or formally engaged counsel to represent her" and no indication of "joint defense agreement or shared litigation strategy."). *Cf. Vallone v. CNA Fin. Corp.*, 98 C 7108, 2002 WL 1726524, at *1 (N.D. Ill. Mar. 19, 2002) (no privilege for communications between counsel and putative class

members).  A class action that purports to represent some subset of the participants cannot, by virtue of being filed years later, spring a privilege into being that did not otherwise exist.

*Timing*.  Authenticom makes much of the fact that cases state that litigation need not be pending or anticipated to apply the common interest exception.  Resp. at 10.  But such cases arise when the alleged common interest *is not litigation*.  For example, in *U.S. v. BDO Seidman*, the issue was whether a common interest arose between an accounting firm and a law firm who consulted on a mutual client regarding overlapping tax issues.  492 F.3d 806, 816 (7th Cir. 2007).  The common interest was in providing tax advice to a shared client and therefore it was not relevant that there was no anticipated litigation.  Here, however, the alleged common interest *is* the litigation.  Resp. at 8 ("These 27 challenged communications concern legal discussions about what ultimately became this MDL.").  When the common interest *is* litigation, the litigation must be actual or at least threatened.  *Cf. LG Elecs.,* 661 F. Supp. 2d at 966 ("Whirlpool's position that fear of lawsuit, alone… runs the risk of allowing the common interest exception to swallow the rule.");  *Grochocinski*, 251 F.R.D. at 327 (litigation must be "current or potential").

Assuming the Court is inclined to apply the common interest doctrine to certain communications, the operative question is when did the agreement between the parties arise? Was it when Authenticom retained its current litigation counsel (late 2016 or early 2017)?[14]  Was it when a Cooley lawyer circulated a purported, unexecuted common interest agreement to Mr. Cottrell (October 2016)?[15] Was it when Authenticom allegedly first consulted counsel about this litigation (August 2016)?[16] The date that the common interest arose is important—as earlier

---

[14]The first communication with Kellogg Hansen appears in January 2017. (Resp. at Ex. 4, PRIV_1929). Allegedly, Authenticom was still considering Cooley and Davis Polk in late 2016.  Resp. at 8.

[15] Resp. at Ex. 9, PRIV_1016.

[16] Authenticom's first correspondence with Davis Polk is August 24, 2016 (Dkt. 541, Att. A at PRIV_1512). Its first correspondence with Cooley was August 5, 2016 (Dkt. 541, Att. A at PRIV_721).  This assumes that Authenticom's claim that its four plus months of communications with Davis Polk and Cooley were

communications, even if the parties thought they were privileged, would not be protected from disclosure. *Ludwig v. Pilkington N. Am., Inc.*, 2004 WL 1898238, *3–4 (N.D. Ill. 2004) (where no evidence of an earlier informal agreement or oral understanding, joint defense privilege did not arise prior to date of signed agreement); *Acceleration Bay Llc v. Activision Blizzard*, 2018 WL 798731, at *1-2 (D. Del. Feb. 9, 2018) (denying common interest where no litigation had been filed and no pre-existing common interest agreement). Authenticom has not suggested a date (or provided evidence of) when any formal or informal common interest agreement arose.

## IV. Authenticom Has Not Established and/or Has Waived its Work Product Privilege

Authenticom also has submitted no evidence that the communications it withholds as work product were made in anticipation of litigation and/or that they were created by or for Authenticom, as opposed to one of the other entities, to aid in its possible future litigation. *See* Part III(a), *supra*; Fed. R 26(b)(3). This is particularly troubling as the claims of work product begin as far back as July 2015. *See* Dkt. 541, Att A at PRIV_ID 1958; *U.S. ex rel. McGee v. IBM Corp.*, 11 C 3482, 2017 WL 1232616, at *2 (N.D. Ill. Apr. 4, 2017) ("[T]he claim that litigation was anticipated based on an articulable claim three or four years earlier must be viewed with a jaundiced eye."); *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983) ("[F]act that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege…"). Contrary to Authenticom's claim—this is *its* burden to prove, not Defendants to disprove. Resp. at 15; *Binks Mfg. Co.*, 709 F.2d at 1120.

Even if it could prove that it anticipated litigation in July 2015—but did not sue until May 2017, despite professed dire financial stress—Authenticom's argument that documents created "by or for" another alleged participant in the common interest arrangement can nevertheless constitute

---

part an elaborate, initial consultation as to "possible representation"—as opposed to communications with *another entity's counsel*—a claim Defendants view with skepticism. Resp. at 8, 10.

Authenticom's privileged work product is unsupported by any case law and belies the text of Rule 26. Fed. R. 26(b)(3)(A); *LG Elecs., Inc. v. Motorola*, Inc., 10 CV 3179, 2010 WL 4513722, at *3 (N.D. Ill. Nov. 2, 2010) ("This court has adhered to the plain language of that rule and held that its protections are limited to one who is a party (or a party's representative) to the litigation in which discovery is sought"); *Ricoh Co., Ltd. v. Aeroflex Inc.,* 219 F.R.D. 66, 69 (S.D.N.Y. 2003) ("Courts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3), even if the non-party is itself a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the instant suit."). Work product belonging to a non-party by definition *does not* belong to a **party** to this litigation.

Even if it did, Authenticom waived any work product claim to these documents by sharing them widely. Although it must substantially increase the risk of the disclosure to constitute a work product waiver—that test is met here. Authenticom shared the alleged protected communications with over a dozen different entities across the automotive space—including competitors (*e.g.*, Dominion, Advent, and Gil Hale), customers of the Defendants (*e.g.*, Autoloop, eLead, Dominion, and MOC 1), an entity Authenticom's counsel ████████████████████ (SIS), as well as  BMO Harris Bank, which Authenticom has alleged could foreclose on it at any minute, thereby forcing Authenticom into an adversarial bankruptcy proceeding. Auth. Dkt. 238 at ¶ 9.

Absent publication in a newspaper, it is hard to think what more Authenticom could have done to risk disclosure of this "confidential" information. Authenticom knew these entities would be witnesses in the ensuing litigation. It called Autoloop and Dominion to testify at the preliminary injunction hearing and has noticed depositions for SIS and DealerSocket (and sought to cross-notice Dominion). Ex. 9; Dkt. 541 at 8. *Rocoh,* 219 F.R.D. at 70 (communications with witness not work product); *Pravak v. Meyer Eye Group*, PLC, 2009 WL 10664851, at *7 (W.D. Tenn. Oct.

14

22, 2009) (same). Events in this case *prove* this point. SIS produced *seven* documents that Authenticom has now tried to claw back. *See* Part III(b), *supra*.

Finally, to the extent any of the asserted work product related to a separate effort to lobby the FTC—as discussed by SIS[17]—as opposed to the instant civil litigation, no work product protection would apply. *Ostrowski v. Holem*, 02 C 50281, 2002 WL 31956039, at *3 (N.D. Ill. Jan. 21, 2002) ("Fed. R. Civ. P 26(b)(3) limits protection to one who is a party (or a party's representative) to the litigation in which discovery is sought"). The lobbying of an administrative body, which is not investigating those doing the lobbying, is neither adversarial nor litigation. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010) ("In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation."); *McCook Metals L.L.C. v. Alcoa, Inc.,* 192 F.R.D. 242, 260 (N.D. Ill. 2000) (similar). As such, should the Court find that any of the challenged communications were created to lobby the FTC, as opposed to created for this litigation, there is no applicable work product protection. [18]

## V.     Conclusion

Defendants respectfully request that the Court order the production of the challenged communications, or alternatively, their submission for *in camera* review. Defendants further request that the Court order the production, or submission of, any additional, undisclosed communications between entities with whom Authenticom alleges a common interest.

---

[17] Ex. 2 (SIS Dep.) at 308:18-309:6; 318:1-10 ███████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████

[18] Defendants did not raise this issue in their opening Memorandum (Dkt. 541), because they were not aware that Authenticom's privilege log may have mischaracterized any common interest until the production of SIS_DMS_0018107, on March 1, (which Authenticom did not produce and then clawed back) and the Deposition of SIS on March 14, where Mr. Battista testified about his understanding of the purpose of the group. Given these circumstances, there should be no finding of waiver of this argument here.

Dated:  March 22, 2019                Respectfully submitted,


*/s/ Britt M. Miller*                 */s/ Aundrea K. Gulley*
Britt M. Miller                       Aundrea K. Gulley
Matthew D. Provance                   Brian T. Ross
MAYER BROWN LLP                       GIBBS & BRUNS LLP
71 South Wacker Drive                 1100 Louisiana Street, Suite 5300
Chicago, IL 60606                     Houston, TX 77002
(312) 782-0600                        (713) 751-5258
bmiller@mayerbrown.com                agulley@gibbsbruns.com
mprovance@mayerbrown.com              bross@gibbsbruns.com


Mark W. Ryan                          Michael P.A. Cohen
MAYER BROWN LLP                       SHEPPARD MULLIN RICHTER & HAMPTON, LLP
1999 K Street NW                      2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006                  Washington, DC 20006
(202) 263-3000                        (202) 747-1900
mryan@mayerbrown.com                  mcohen@sheppardmullin.com


*Counsel for Defendant CDK*           *Counsel for Defendant The Reynolds and Reynolds*
*Global, LLC*                         *Company*

16

## **CERTIFICATE OF SERVICE**

I, Aundrea Gulley, an attorney, hereby certify that on March 22, 2019, I caused a true and correct copy of the foregoing REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL AUTHENTICOM TO PRODUCE THIRD-PARTY COMMUNICATIONS, OR, IN THE ALTERNATIVE, SUBMIT SUCH COMMUNICATIONS FOR IN CAMERA REVIEW, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Aundrea Gulley*
Aundrea K. Gulley
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com