PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|   |   |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 <br> Case No. 18 C 864 |
| *This document relates to:* <br> ALL CASES | Hon. Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert |

**THE REYNOLDS AND REYNOLDS COMPANY'S OPPOSITION TO SUBPOENA RECIPIENT ACCEL-KKR CAPITAL PARTNERS, IV, LP'S MOTION TO QUASH**

Defendant The Reynolds and Reynolds Company ("Reynolds") respectfully opposes the Motion to Quash Subpoenas for Documents and Deposition Testimony filed by Accel-KKR Capital Partners, IV, LP ("Accel-KKR").

Accel-KKR ▮▮▮▮ of plaintiff Motor Vehicle Software Corporation ("MVSC"), and ▮▮▮▮. This investment occurred in the middle of a period of alleged unlawful anticompetitive activity by defendants that allegedly significantly harmed MVSC both before and after 2015 and caused it to lose millions of dollars. Accel-KKR's documents and testimony regarding the reasons for its investment in MVSC and the factors bearing on its valuation of MVSC are therefore likely to shed important light on whether defendants engaged in any alleged misconduct that harmed MVSC, and, if so, the extent to which that conduct damaged MVSC (if at all).

Accel-KKR, through its motion, seeks to avoid producing <u>any</u> relevant documents or testimony whatsoever, based on exaggerated and unrealistic burdens that fail to meaningfully consider the parties' meet and confer discussions. Reynolds has clarified that its subpoenas are narrow in scope and seek Accel-KKR's opinions and insights, not materials that overlap with

-1-

existing productions. Any burden on Accel-KKR of providing this limited information would be outweighed by its substantial probative value, and Accel-KKR fails to meet its burden of establishing otherwise. Reynolds therefore respectfully asks this Court to deny Accel-KKR's motion, for these reasons set forth herein.

1. On February 5, 2019, Reynolds served Accel-KKR with a limited discovery subpoena containing nine document requests ("Document Subpoena").[1] On March 7, 2019, Reynolds served Accel-KKR with a subpoena requesting the deposition of a corporate representative who could testify as to eleven topics ("Deposition Subpoena"). A copy of the Document Subpoena is attached hereto as **Exhibit A**, and a copy of the Deposition Subpoena is attached hereto as **Exhibit B**.

2. **Reynolds Seeks Highly Relevant Information.** The subpoenas Reynolds served on Accel-KKR seek documents and testimony relevant to the claims brought by MVSC against defendants. MVSC alleges that starting in at least 2014, defendants engaged in anticompetitive conduct that blocked MVSC's access to certain data and thereby harmed MVSC in the Electronic Vehicle and Registration ("EVR") market. ████████████████████████████

████████████████████████████████████████████ *See* **Exhibit C**

(3/19/19 Don Armstrong Dep. Tr. (Rough), 159:3-17); **Exhibit D** (3/20/19 MVSC Rule 30(b)(6)

---

[1] Accel-KKR's Motion incorrectly states that the Document Subpoena was not served until February 26, 2019. It was served on Accel-KKR on February 5, 2019. On February 18, 2019, Accel-KKR requested that Reynolds extend the response deadline from February 22, 2019 to March 15, 2019. *See* **Exhibit F**. Reynolds agreed to this request on February 20, 2019. *Id.* The parties participated in a telephonic meet and confer on March 11, where Accel-KKR requested a further extension until March 22, which Reynolds agreed to. This agreement was confirmed in an email on March 12. *Id.* On March 17, Accel-KKR informed Reynolds that the parties were at impasse. *Id.*

PUBLIC VERSION

Dep. Tr. (Rough), 181:11-184:6).[2] ███████████████████

███████████████████████████████████████

██████████████████████████████ *See* **Exhibit E**

(MVSC_MDL_0070017-41 at 0070027-28).

    3.    This puts Accel-KKR in a unique position to shed light on MVSC's claims against defendants. In 2015, ████████████████████████████████

████████████████████ MVSC alleges it was suffering from defendants' alleged unlawful misconduct and had been "significantly damaged" by that conduct, which MVSC alleges began "at least" by 2014. *See* MVSC Second Amended Complaint ("SAC"), ¶¶ 11, 194. Yet Accel-KKR chose this moment to make a substantial investment in MVSC. The Accel-KKR documents are therefore likely to contain important and valuable insights into whether or not defendants caused harm to MVSC, and if so, how, and to what extent. In the course of determining whether to invest in MVSC and for how much, Accel-KKR must have performed its own analysis of the relevant markets and its own due diligence on MVSC. Such documents are relevant to understanding MVSC's claimed injuries and damages (if any), and what conduct by defendants impacted MVSC (if any).

    4.    For similar reasons, analyses, studies, evaluations or projections that Accel-KKR performed following its investment in MVSC are also likely to contain information relevant to the extent of any harm MVSC allegedly suffered as a result of defendants' conduct. MVSC has alleged that defendants wanted to "eliminate" MVSC by "blocking" it from "the data on which its services depend" and that MVSC suffered "millions" of dollars in damages. *See* SAC at ¶ 6, 15, 194. Yet Accel-KKR invested ████████████ in MVSC in late 2015 and ██████

---

[2] Final versions of these deposition transcripts are not yet available.

██████████ Accel-KKR's analyses regarding the reasons for its continued investment in MVSC, whether the value of the company has gone up or down, projections as to where the investment is likely headed, along with the factors that bear on those analyses, are highly relevant to understanding whether and to what extent MVSC may have been harmed, if at all, by defendants' alleged conduct.

5. Contrary to Accel-KKR's arguments in Section III of its motion, the documents are highly relevant to liability, causation and damages issues, for the reasons described above. Accel-KKR should produce them. *Mosely v. City of Chicago*, 252 F.R.D. 421, 434 (N.D. Ill. 2008) (compelling non-party journalist to produce documents relating to discussions with defendant because they had "substantial, identifiable 'probative value'"). Courts often require non-parties to produce information bearing on a plaintiff's claims of lost opportunities, damages, or other harm allegedly caused by some conduct of defendants. *See, e.g., Scandinavian Airline Sys. v. McDonald's Corp.*, 1996 U.S. Dist. LEXIS 15750 (N.D. Ill. Oct. 23, 1996) (ordering non-party to produce materials relating to joint venture opportunity that plaintiff alleged was lost to non-party as a result of defendants' conduct, explaining that the materials were "a very ready index to what plaintiff's profitability might have been . . . ."); *Shields Enters., Inc. v. First Chicago Corp.*, No. 86 C 10213, 1988 WL 142200, *4-5 (N.D. Ill., Dec. 28, 1988) (requiring non-parties to produce materials relating to valuation of a business defendant acquired from plaintiff because they were "clearly relevant" to plaintiff's theory of the case and damages.).

6. Accel-KKR's reliance on Judge Gilbert's November 19, 2018 Order denying plaintiffs' request for defendant CDK's correspondence with private equity firms (Dkt. 441) is misplaced. That decision rejected plaintiffs' request for communications between CDK and *potential* investors in CDK. In contrast, the Reynolds Document Subpoena to Accel-KKR seeks

documents relating to a recent, actual, substantial investment in plaintiff MVSC ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, at a time when MVSC claims it was significantly harmed by defendants.  And unlike plaintiffs, who were seeking documents in order to learn about CDK's "opinions and insights" as opposed to the opinions and insights of the investors, Reynolds is seeking documents from Accel-KKR in order to learn about Accel-KKR's opinions and insights, not those of MVSC.

7.      Accel-KKR's reliance on Judge Gilbert's January 17, 2019 Order (Dkt. 498) denying plaintiffs' request for documents related to CDK's acquisition of ELEAD1ONE is also misplaced.  Those discovery requests were rejected as untimely, not because they were irrelevant.

8.      **The Information Reynolds Seeks Is Not In MVSC's Possession And Was Not Produced By MVSC.**  Contrary to Accel-KKR's arguments in Section II of its motion, the requested materials and information could not have been obtained from, and were not produced by, MVSC.  As Accel-KKR concedes, in response to concerns raised by Accel-KKR that the Document Subpoena would potentially encompass documents already produced by MVSC, Reynolds clarified during the parties' meet and confer that its Document Subpoena only sought documents reflecting Accel-KKR's own analyses and projections.  *See* Accel-KKR Motion at 4-5 (explaining that requested materials could be reduced to two categories of materials).  Such materials would only be in the possession of Accel-KKR, the parent, and not MVSC, the subsidiary.  *See, e.g., In re Subpoena to Huawei Techs. Co.*, 720 F. Supp. 2d 969, 977 (N.D. Ill. 2010) (denying motion to compel subsidiary Futurewei to produce documents from parent Huawei, holding:  "SynQor has produced no evidence that Huawei gives Futurewei access to its documents, and specifically no evidence that Huawei would give Futurewei any access to the

documents requested by the subpoena."). Accel-KKR's arguments in Section II are therefore moot, because Reynolds has already clarified that the materials and information it seeks relate to Accel-KKR's opinions and insights.

9. **The Document Subpoena Does Not Impose An Undue Burden On Accel-KKR.** Accel-KKR's assertions of undue burden defy common sense and disregard the parties' meet and confer discussions. On March 11, 2019, the parties met and conferred, and counsel for Accel-KKR stated her belief that the nine requests in the Reynolds Document Subpoena would require Accel-KKR to collect and review approximately 40,000 documents, in part due to overlap with MVSC materials. In response, counsel for Reynolds clarified that Reynolds was only seeking documents reflecting Accel-KKR's own analyses, projections, opinions and insights, not MVSC materials. Counsel for Reynolds also suggested that the parties could reduce the volume of documents through a discussion of search terms and custodians.

10. However, the next communication from Accel-KKR was an email on March 17 that simply repeated Accel-KKR's belief that the Document Subpoena would require a review of 40,000 documents, and declaring impasse. *See* **Exhibit F**. No meaningful effort was made by Accel-KKR to work with Reynolds to reduce the volume of documents. If a universe of 40,000 documents includes both Accel-KKR and MVSC materials, as Accel-KKR's attorney stated, then excluding all or some MVSC materials would obviously reduce the volume of documents. Accel-KKR's statement in its motion that it has "confirmed that there is not" a way to do this defies common sense. Accel-KKR Motion at 5. Accel-KKR made no effort to engage in a meaningful discussion with Reynolds on search terms or custodians. It did not provide a list of custodians and did not provide hits for the search terms it used to generate 40,000 results. Reynolds (or Accel-KKR itself) could have reviewed and revised such a list to reduce the

volume of documents. Instead, Accel-KKR was more interested in filing a motion based on its initial assessment.[3]

11. Thus, Accel-KKR's assertions that it would take "hundreds of hours" and "multiple months" to comply with Reynolds's Document Subpoena are self-serving and based on the false premise that Accel-KKR must review 40,000 documents, no matter what. But "[a] party claiming undue burden must do more than intone the phrase." *Jenkins v. White Castle Mgmt. Co.*, 2014 WL 3809763, *2 (N.D. Ill. Aug. 4, 2014). Reynolds made it very clear that it was willing to work with Accel-KKR to narrow the universe of documents, and suggested ways of accomplishing that result, but Accel-KKR was apparently not interested. Under these circumstances, Accel-KKR's assertion of undue burden should be rejected. *See id.* (granting motion to compel and rejecting White Castle's burden argument in light of the fact that White Castle "declined [plaintiff's] offer [to assist], while simultaneously insisting that requiring it to do the work would impose an 'undue burden' on it," creating an "unsoluble conundrum.").

12. Any *actual* burden on Accel-KKR (which has not been established by Accel-KKR) is outweighed by the probative value of the evidence Reynolds seeks. *See Peoria Day Surgery Center v. OSF Healthcare Sys.*, 2008 WL 724798, *4 (C.D. Ill. Mar. 17, 2008) ("The Court must weigh the burden of production . . . against the expected benefit . . . ."). MVSC is suing defendants for millions of dollars in antitrust damages, which will be automatically trebled if MVSC is successful. Judge Dow has already held that MVSC's conspiracy allegations are not "robust." *See* Dkt. 425 ("The Court recognizes that MVSC's allegations with respect to Reynolds's involvement in the alleged conspiracy are not robust."). MVSC's conspiracy

---

[3] Accel-KKR's Motion also raises, for the first time, concerns about creating a privilege log. Motion at 6. Reynolds does not require a privilege log from Accel-KKR.

allegations and case have not been robust for two years at this point, despite extensive discovery and two amendments to its complaint. In light of the timing and magnitude of Accel-KKR's investment in MVSC, its documents are likely to further refute MVSC's allegations about conspiracy, injury, and damages. Its refusal to produce *anything* is telling.

13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accel-KKR is closer to a party than the dozens of other nonparties that have already produced documents and/or agreed to depositions despite being completely unaffiliated with the parties in this MDL.[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Furthermore, at least one court in Illinois, in an antitrust case, has suggested that balancing the burdens and benefits of a subpoena "might produce different results for shareholders as compared to non-shareholders." *See Peoria Day Surgery Center v. OSF Healthcare Sys.*, 2008 WL 724798, *4 (C.D. Ill. Mar. 17, 2008). The court based its statement on the fact that shareholders of the plaintiff in that case "stand to economically benefit if [plaintiff] succeeds and, presumably, have some ability to control the course of [plaintiff's] litigation . . . ." *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



14. Regardless, even assuming, as Accel-KKR asserts, it is entitled to the same protections afforded true non-parties, it fails to establish that the purported burdens of complying with Reynolds's subpoena outweigh the benefits, for the reasons described above. It is Accel-KKR's burden to establish this. *Tresona Multimedia, LLC v. Legg*, 2015 WL 4911093, *2 (N.D.

---

[4] For example, non-party SIS has produced 5,698 documents and provided deposition testimony. Non-party Solera has produced 10,690 documents and provided deposition testimony. At least 74 non-parties have produced documents.

PUBLIC VERSION

Ill. Aug. 17, 2015). By setting up a false choice between 40,000 documents or zero, Accel-KKR fails to establish burden at all, much less a burden that outweighs the benefits of production.

15. **<u>Reynolds's Subpoenas Are Timely.</u>** Accel-KKR's assertions that Reynolds's subpoenas were somehow untimely are baseless. The fact discovery deadline is April 15, 2019, and the parties have stipulated to a new fact discovery deadline of April 30, 2019 (Dkts. 498; 553). Reynolds's Document Subpoena was served on Accel-KKR on February 5, 2019. Reynolds's Deposition Subpoena was served on March 7, 2019. They are therefore timely.

16. Accel-KKR's reliance on Judge Gilbert's January 17, 2019 Order (Dkt. 498) is misplaced. That Order dealt with discovery requests to a party that were issued after the May 25, 2018 deadline to issue discovery requests to parties. This deadline does not apply to Reynolds's subpoena to Accel-KKR. Furthermore, MVSC had not disclosed the existence of Accel-KKR to Reynolds as of May 25, 2018. It was not until after MVSC started producing documents that Reynolds first began to learn of the significance of Accel-KKR. The MVSC financial statements cited in paragraph 2 above and attached as Exhibit E were not produced until October 12, 2018.

17. Accel-KKR's argument that discovery must come to end and that the scheduling order must be maintained ring hollow. Reynolds's subpoenas to Accel-KKR seek limited and narrow categories of documents and information, and Accel-KKR could have complied with both the Document Subpoena and Deposition Subpoena on the current case schedule. Instead, Accel-KKR requested over three weeks' worth of extensions in connection with the Document Subpoena, ignored Reynolds's clarifications and suggestions designed to streamline Accel-KKR's production, and filed a motion to quash instead, not seeking to narrow or limit its compliance with the subpoenas, but instead seeking to eliminate any and all obligations on

PUBLIC VERSION

Accel-KKR to provide relevant evidence to Reynolds. It is Accel-KKR that has created the delay.

## CONCLUSION

For the foregoing reasons, Reynolds respectfully asks this Court to deny the Motion to Quash Subpoenas for Documents and Deposition Testimony filed by Accel-KKR.

Dated: March 26, 2019

Respectfully submitted,

*/s/ Leo D. Caseria*

Aundrea K. Gulley
Kathy D. Patrick
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
Justin D. Patrick
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
kpatrick@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com
jpatrick@gibbsbruns.com

Michael P.A. Cohen
Amar S. Naik
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
anaik@sheppardmullin.com

Leo D. Caseria
SHEPPARD MULLIN RICHTER
& HAMPTON, LLP

**PUBLIC VERSION**

    333 S. Hope St., 43rd Floor
    Los Angeles, CA 90071
    (213) 617-4206
    lcaseria@sheppardmullin.com

    Dylan I. Ballard
    SHEPPARD MULLIN RICHTER
    & HAMPTON, LLP
    Four Embarcadero Center., 17th Floor
    San Francisco, CA 94111
    (415) 434-9100
    dballard@sheppardmullin.com

    *Counsel for Defendant The Reynolds and Reynolds Company*

PUBLIC VERSION

# CERTIFICATE OF SERVICE

       I, Leo D. Caseria, an attorney, hereby certify that on March 26, 2019, I caused a true and correct copy of the foregoing **THE REYNOLDS AND REYNOLDS COMPANY'S OPPOSITION TO SUBPOENA RECIPIENT ACCEL-KKR CAPITAL PARTNERS, IV, LP'S MOTION TO QUASH**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                            */s/ Leo D. Caseria*
                                            Leo D. Caseria
                                            SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                                            333 S. Hope St., 43rd Floor
                                            Los Angeles, CA 90071
                                            (213) 617-4206
                                            lcaseria@sheppardmullin.com