**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817 <br> Case No. 18-cv-00864 |
| **This Document Relates To:** | Honorable Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | |

**DEALERSHIP COUNTER-DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS THE COUNTERCLAIMS OF CDK GLOBAL, LLC**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

LEGAL STANDARD............................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

I.  CDK'S BREACH OF CONTRACT CLAIM FAILS AND SHOULD
     BE DISMISSED AS A MATTER OF LAW (FIRST COUNTERCLAIM) ..................... 5

II.  CDK'S COMPUTER FRAUD AND ABUSE ACT CLAIM IS
     TIME-BARRED, FAILS TO PLEAD "ACCESSER" LIABILITY,
     AND FAILS TO ALLEGE ANY RECOVERABLE LOSS OR
     DAMAGE (SECOND COUNTERCLAIM)...................................................................... 8

     A.  The CFAA Counterclaim Is Time-Barred.................................................... 8

     B.  The CFAA Counterclaim Fails To Plead "Accesser" Liability
          Against Dealership Counter-Defendants.................................................. 10

     C.  CDK Has Not Alleged The Requisite Loss Or Damage Under The CFAA.............. 13

III.  CDK HAS FAILED TO PLEAD A VIOLATION OF THE DIGITAL
      MILLENNIUM COPYRIGHT ACT (THIRD COUNTERCLAIM) ............................. 15

     A.  Providing Usernames And Passwords Does Not Violate The DMCA..................... 15

     B.  The Continental And Warrensburg Counter-Defendants Cannot Be
          Held LiableFor Allegations Against Authenticom.................................................. 17

CONCLUSION...................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**                  **Page(s)**

*Adobe Sys. Inc. v. A & S Elecs., Inc.,*
 No. C 15-2288 SBA, 2015 WL 13022288 (N.D. Cal. Aug. 19, 2015) ................................. 16

*Bourke v. Dun & Bradstreet Corp.*,
 159 F.3d 1032 (7th Cir. 1998) ................................................................................................. 7

*Cassetica Software, Inc. v. Computer Sciences Corp.,*
 No. 09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009) ................................................ 14

*Central Bank of Denver v. First Interstate Bank,*
 511 U.S. 164 (1994) ......................................................................................................... 11,17

*Chauffeurs, Teamsters, etc. v. Jefferson Trucking Co.*,
 628 F.2d 1023 (7th Cir. 1980) .............................................................................................. 10

*Crandon v. United States,*
 494 U.S. 152 (1990) ............................................................................................................... 12

*Crestview Vill. Apartments Ltd. P'ship v. United States HUD,*
 No. 01 C 6913, 2002 U.S. Dist. LEXIS 26508 (N.D. Ill. Feb. 5, 2002) .................................. 4

*CustomGuide v. CareerBuilder, LLC,*
 813 F. Supp. 2d 990 (N.D. Ill. 2011) ..................................................................................... 14

*Egilman v. Keller & Heckman, LLP*,
 401 F. Supp. 2d 105 (D.D.C. 2005)…………………………………………………………..15

*GC2 Inc. v. Int'l Game Tech.,*
 No. 16 C 8794, 2018 WL 5921315 (N.D. Ill. Nov. 12, 2018) ................................................ 18

*Gomez v. Illinois State Board of Education,*
 811 F.2d 1030 (7th Cir. 1987) ................................................................................................. 5

*Ground Zero Museum Workshop v. Wilson,*
 813 F. Supp. 2d 678 (D. Md. 2011) ....................................................................................... 15

*In re Am. Online, Inc.*,
 168 F. Supp. 2d 1359 (S.D. Fla. 2001) .................................................................................. 13

*In re DoubleClick Privacy Litig.*,
 154 F. Supp. 2d 497 (S.D.N.Y. 2001) .............................................................................. 13, 14

*Int'l Airport Centers, LLC v. Citrin*,
 440 F.3d 418 (7th Cir. 2006)…………………………………………………………………12

*Jefferson v Ambros,*
 90 F.3d 1291 (7th Cir. 1996) .................................................................................................. 5

*Leocal v. Ashcroft*,
    543 U.S. 1 (2004) ......................................................................................... 12

*Love v. First Transit, Inc.*,
    No. 16-cv-2208, 2017 WL 1022191 (N.D. Ill. Mar. 16, 2017) ............................... 5

*Meyer Tech. Solutions, LLC v. Kaegem Corp.*,
    No. 17 C 281, 2017 WL 4512918 (N.D. Ill. Oct. 10, 2017) ............................... 8, 10

*Midwest Grinding Co. v. Spitz*,
    976 F.2d 1016 (7th Cir. 1992) ............................................................................ 4

*Navistar, Inc. v. New Baltimore Garage, Inc.*,
    No. 11-cv-6269, 2012 WL 4338816 (N.D. Ill. Sept. 20, 2012) ..................................... *passim*

*Perkins v. Silverstein*,
    939 F.2d 463 (7th Cir. 1991) ............................................................................. 4

*Rand Bond of N. Am., Inc. v. Saul Stone & Co.*,
    726 F.Supp. 684 (N.D. Ill. 1989) ..................................................................... 18

*Roche v. Adkins*,
    998 F.2d 1016 (7th Cir. 1993) ............................................................................ 4

*Shell Oil Co. v. Manley Oil Corp.*,
    124 F.2d 714 (7th Cir. 1941) .............................................................................. 6

*Signs & Blanks, Ltd. v. Lanan Prod., Inc.*,
    No. 07 C 4063, 2009 WL 10695777 (N.D. Ill. Jan. 20, 2009) ............................... 7

*Thomas v. Farley*,
    31 F.3d 557 (7th Cir. 1994)…………………………………………………………5

*Thompson v. Gordon*,
    241 Ill. 2d 428 (2011) ..................................................................................... 6

*Tobey v. Chibucos*,
    890 F.3d 634 (7th Cir. 2018) ............................................................................. 4

*U.S. v. Midwest Generation, LLC*,
    694 F. Supp. 2d 999 (N.D. Ill. 2010) ................................................................. 4

*United States v. Gonzales*,
    520 U.S. 1 (1997) ............................................................................................ 6

*Wooley v. Jackson Hewitt, Inc.*,
    540 F. Supp. 2d 964 (N.D. Ill. 2008) ............................................................... 17

*Worldspan L.P. v Orbitz, LLC*,
    No. 05 C 3586, 2006 U.S. Dist. LEXIS 26153 (N.D. Ill. Apr. 2006) ........................... *passim*

**Statutes**

8 U.S.C. § 1324 ................................................................................................ 11

17 U.S.C. §1201 ........................................................................................... *passim*

18 U.S.C. § 201 ................................................................................................ 11

18 U.S.C. § 1512 .............................................................................................. 11

18 U.S.C. § 2422 .............................................................................................. 11

35 U.S.C. § 271 ................................................................................................ 11

18 U.S.C. § 1030 .......................................................................................... *passim*

**Other Authorities**

Fed R. Civ. P. 12(b)(6)……………..…………………………………………………*passim*

Black's Law Dictionary (10th ed. 2014)……………………..……………………………...6

Counter-Defendants ACA Motors, Inc.; Continental Classic Motors, Inc.; 5800 Countryside, LLC; HDA Motors, Inc.; H & H Continental Motors, Inc.; Continental Autos, Inc.; Naperville Zoom Cars, Inc.; NV Autos, Inc.; Baystate Ford Inc.; Cliff Harris Ford, LLC; Marshall Chrysler Jeep Dodge, L.L.C.; Warrensburg Chrysler Dodge Jeep, L.L.C.; Cherry Hill Jaguar; JCF Autos LLC; Jericho Turnpike Sales LLC; Patchogue 112 Motors LLC; and Waconia Dodge, Inc. (collectively, "Counter-Defendants" or "Dealership Counter-Defendants"), by their undersigned counsel, hereby move this Court for an order dismissing with prejudice the Counterclaims of CDK Global, LLC ("CDK") ("Counterclaims") (ECF No. 522) pursuant to Federal Rules of Civil Procedure 12(b)(6) and state as follows:

## INTRODUCTION

Recognizing that it faces significant liability for its own anticompetitive actions against its dealership customers, CDK has sued them, seeking monetary awards that would compound the profits CDK has already obtained as a result of its anticompetitive conduct. At their core, CDK's Counterclaims allege that Dealership Counter-Defendants impermissibly handed out their DMS login credentials, directly or indirectly, to third party data extractors, in order to enable those entities to access the dealerships' CDK DMSs.

Despite purportedly including the same language regarding third-party access in every DMS contract "since at least 1994" (Counterclaims ¶ 47), CDK only brings suit against the Dealership Counter-Defendants for allowing third-party data integration now, 25 years later. CDK's Counterclaims were filed only after this Court upheld Dealership Plaintiffs' allegations that CDK and Reynolds conspired to exclude competition and unlawfully increase prices. CDK's Counterclaims, which essentially seek further compensation for its anticompetitive blocking of third-party integrators, are meritless.

1

CDK's Counterclaims raise three causes of action allegedly arising under: (1) common law breach of contract asserted against all Dealership Counter-Defendants; (2) the Computer Fraud and Abuse Act, asserted against all Dealership Counter-Defendants; and (3) the Digital Millennium Copyright Act, asserted against the Continental and Warrensburg Counter-Defendants. Dealership Counter-Defendants respectfully request that the Court dismiss the Counterclaims for the following reasons.

With regard to CDK's First Counterclaim for breach of contract, CDK's own Counterclaims establish that Dealership Counter-Defendants were expressly permitted – in those same contracts – to grant access to their DMS to their "employees and agents." Further, CDK's Counterclaims themselves establish that Authenticom and other data extractors qualified as "agents" of the Dealership Counter-Defendants within the meaning of those contracts. Through its own allegations, CDK has shown that Dealership Counter-Defendants were fully within their contractual rights to provide their DMS login credentials to Authenticom and other data extractors; accordingly, CDK has plead itself out of a claim, and its First Counterclaim should be dismissed.

CDK's Second Counterclaim, brought under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), is subject to dismissal on multiple grounds. First, CDK's Second Counterclaim is time-barred under the applicable statute of limitations, as CDK did not file its Counterclaims until more than two years after CDK unquestionably became aware (as set forth in CDK's own pleadings) of the alleged actions by Dealership Counter-Defendants that form the basis of its CFAA Counterclaim. Second, CDK's Counterclaims fail to plead "accesser" liability on the part of Dealership Counter-Defendants, as required under the CFAA – *i.e.*, that Dealership Counter-Defendants ***themselves*** engaged in unauthorized access to the DMS. Instead, CDK

2

alleges that the complained-of computer access was conducted by persons other than the Dealership Counter-Defendants – namely, by "Authenticom and other third parties." Counterclaims ¶ 141. Because the CFAA only provides a cause of action against an "accesser" itself, and not against one who allegedly induces unauthorized access, CDK's Second Counterclaim is legally insufficient. Third, CDK fails to adequately plead the requisite loss or damage under the CFAA. With regard to loss, CDK fails to plead that any single Dealership Counter-Defendant's actions caused losses of at least $5,000 during any single one-year period, as required under the CFAA; instead, CDK's Counterclaims impermissibly recite generalized allegations of aggregate losses caused by multiple dealerships over many years. As for damages, CDK fails to allege facts sufficient to show any actual "impairment to the integrity or availability of data, a program, a system, or information," as required under the CFAA; instead, CDK's Counterclaims only recite the boilerplate statutory text concerning damages in conclusory fashion. Under any or all of these grounds, CDK's Second Counterclaim should be dismissed.

CDK's Third Counterclaim against the Continental and Warrensburg Counter-Defendants, for alleged violation of § 1201(a)(1)(A) of the Digital Millennium Copyright Act ("DMCA"), is subject to dismissal because CDK fails to allege that either of the two named Counter-Defendants themselves "circumvented a technological measure" within the meaning of that statute. CDK's Counterclaim focuses on Counter-Defendants' alleged provision of their DMS usernames and passwords to Authenticom and other data extractors; however, this Court has previously held that the provision of DMS login credentials to others does not qualify as "circumvention of a technological measure" within the meaning of the DMCA. To the extent that CDK alleges other acts that may qualify as "circumvention" under the statute, the Counterclaims alleges that those acts were overwhelmingly committed by the data extractors, not by the

3

Counter-Defendants themselves, and Counter-Defendants cannot be held secondarily liable under the DMCA, either under an "aiding and abetting" theory, agency principles, an "inducement" theory, or any other grounds. Accordingly, for multiple reasons, CDK's Third Counterclaim should be dismissed.

CDK should not be permitted to compound its illegal and anticompetitive behavior against its dealership customers through its facially deficient and fundamentally flawed Counterclaims. The Counterclaims against Dealership Counter-Defendants should be dismissed in their entirety.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) motions challenge the sufficiency of the complaint. *U.S. v. Midwest Generation, LLC*, 694 F. Supp. 2d 999, 1002 (N.D. Ill. 2010). Under Rule 12(b)(6), the court must accept all factual allegations as true and draw all reasonable inferences in favor of the pleader. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). Even under the liberal notice pleading standard of the Federal Rules of Civil Procedure, a pleading must include either direct or inferential allegations respecting all material elements of the claim asserted. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). Bare legal conclusions attached to narrated facts will not suffice. *Crestview Vill. Apartments Ltd. P'ship v. United States HUD*, No. 01 C 6913, 2002 U.S. Dist. LEXIS 26508, at *6 (N.D. Ill. Feb. 5, 2002); *Roche v. Adkins*, 998 F.2d 1016 (7th Cir. 1993); *see also Tobey v. Chibucos*, 890 F.3d 634, 639 (7th Cir. 2018) ("we do not credit legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements"). If, when viewed in the light most favorable to the pleader, the allegations fail to state a claim upon which relief can

be granted, the court must dismiss the claim. *See* Fed. R. Civ. P. 12(b)(6); *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987).

## ARGUMENT

### I. CDK'S BREACH OF CONTRACT CLAIM FAILS AND SHOULD BE DISMISSED AS A MATTER OF LAW    (FIRST COUNTERCLAIM)

CDK's First Counterclaim asserts a common law breach of contact claim based upon the Dealership Counter-Defendants' alleged breach of the "Master Services Agreement" ("MSA").[1] Counterclaims ¶¶ 133-37. CDK's claim fails. Courts have routinely recognized that a party may plead itself out of a claim, and that is precisely what CDK has done here. *See, e.g., Jefferson v Ambros*, 90 F.3d 1291, 1296 (7th Cir. 1996) ("[I]f a plaintiff chooses to 'plead particulars, and they show he has no claim, then he is out of luck--he has pleaded himself out of court'" (citing *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994)).

CDK's First Counterclaim alleges that Dealership Counter-Defendants *authorized* data extractors to extract data from the DMS. Counterclaims ¶ 3 (alleging that Dealership Counter-Defendants "knowingly provid[ed] login credentials to these data extractors and, actively or passively, '*authoriz[ed]' them* to access CDK's DMS to extract or insert data") (emphasis added). CDK also admits that, under the MSA, dealerships may grant DMS access to their "employees *and agents.*" *Id.* ¶ 49 (emphasis in original); *see also id.* ¶ 38 ("[E]ach user has access to the DMS that is commensurate with the access privileges assigned to his or her login credentials").

---

[1] Because the MSA is central to (and even quoted in) CDK's Counterclaims (*see, e.g.*, Counterclaims ¶¶ 44-48), the Court may properly consider the terms of the MSA in ruling on this motion. *See* Order dated Aug. 21, 2018, ECF No. 340 at 1 (citing *Love v. First Transit, Inc.,* No. 16-cv-2208, 2017 WL 1022191 at *2, n.1 (N.D. Ill. Mar. 16, 2017)). A sample MSA, the 2017 executed MSA between Counter-Defendant Continental Honda and CDK, produced to the parties in this litigation on October 12, 2018, is appended to this Memorandum as Exhibit A.

Given CDK's allegation that data extractors were "authorized" by dealers to access and extract data from the DMS, the extractors qualify as "agents." *See Agent, Black's Law Dictionary* (10th ed. 2014): an "agent" is "someone who is authorized to act for or in place of another; a representative." As such, CDK's own Counterclaims establish that the Dealership Counter-Defendants cannot have breached the MSA; accordingly, CDK's breach of contract claim fails as a matter of law.

CDK's reliance on language in the MSA that purportedly restricts access rights by *third parties* (*see* Counterclaims ¶ 50) is of no moment. By employing the separate terms "agents" and "third-parties," the MSA necessarily treats them as distinct, with different meanings. *Shell Oil Co. v. Manley Oil Corp.*, 124 F.2d 714, 715 (7th Cir. 1941) (common words are used in their ordinary meaning, they must be accepted in that sense); *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011) (when parties agree to and insert language into a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect; a court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used); *cf. United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion").

CDK may not magically convert an "agent" – who *is* authorized to access the DMS – into a "third party" who is not so authorized. Likewise, CDK may not abrogate Dealership Counter-Defendants' contractual rights by mischaracterizing the "agent's" software as impermissible "third party software." *See* Counterclaims ¶ 46 (alleging that MSA prohibits

"ANY THIRD PARTY SOFTWARE TO ACCESS THE [CDK] DEALER MANAGEMENT SYSTEM EXCEPT AS OTHER PERMITTED BY THIS AGREEMENT").

This conclusion is further underscored by the fact that CDK – not the dealerships – drafted the MSA.[2] As such, the term "agent" – if ambiguous – should be interpreted *against* CDK. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1037 (7th Cir. 1998). Had CDK so desired, it could have qualified the "agent" language, or eliminated it altogether. It chose to do neither. Moreover, in drafting the MSA, CDK chose to define numerous terms, but *not* "agent"[3] – further undermining CDK's claim.

Perhaps anticipating Dealership Counter-Defendants' arguments, CDK improperly relies on alleged dealership contracts with Authenticom and Superior Integrated Solutions to plead that data extractors authorized by the Dealership Counter-Defendants are not "agents" within the meaning of the MSA. Counterclaims ¶ 49. CDK is not a party to those alleged contracts; as such, those contracts cannot properly be used to defeat Dealership Counter-Defendants' rights under the MSA to permit their agents to access the DMS. Indeed, an agent may be both an independent contractor in one relationship and an agent in another. *Signs & Blanks, Ltd. v. Lanan Prod., Inc.*, No. 07 C 4063, 2009 WL 10695777, at *5 (N.D. Ill. Jan. 20, 2009) ("A person may be both and independent contractor and an agent with the authority both to control the details of the work and also the power to act for and to bind the principal in business negotiations within the scope of [the] agency"); *see also* ECF No. 506 (Jan. 25, 2019)

---

[2] *See generally* Counterclaims ¶ 49 & n.5.

[3] *See* ███████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████

(Order granting in part and denying in part CDK's Motion to Dismiss). Finally, the MSA may not properly be interpreted by reference to dealerships' contracts with other entities. *See generally* Exhibit A, ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████.

Because CDK's own allegations establish that Dealership Counter-Defendants authorized data extractors to perform the challenged acts as their agents under the MSA, CDK's breach of contract claim should be dismissed as a matter of law.

## II. CDK'S COMPUTER FRAUD AND ABUSE ACT CLAIM IS TIME-BARRED, FAILS TO PLEAD "ACCESSER" LIABILITY, AND FAILS TO ALLEGE ANY RECOVERABLE LOSS OR DAMAGE (SECOND COUNTERCLAIM)

CDK's Second Counterclaim asserts that Dealership Counter-Defendants violated the CFAA by permitting Authenticom and others to access the DMS without CDK's authorization. Counterclaims ¶¶ 138-46. As shown below, this Counterclaim fails on three separate grounds: (1) the Counterclaim is time-barred; (2) CDK failed to allege "accesser" liability; and (3) CDK failed to allege any recoverable loss or damage. Accordingly, the CFAA Counterclaim should be dismissed.

### A. The CFAA Counterclaim Is Time-Barred

CDK's Second Counterclaim is time-barred under the CFAA's two-year statute of limitations. *See* 18 U.S.C. § 1030(g) ("No action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained of or the date of the discovery of the damage"); *Meyer Tech. Solutions, LLC v. Kaegem Corp.*, No. 17 C 281, 2017 WL 4512918, at *1 (N.D. Ill. Oct. 10, 2017).

CDK filed its Counterclaims on February 22, 2019 (*see* ECF No. 522). That filing date, however, was well after the expiration of CFAA's prescribed two-year limitations period. As demonstrated by CDK's own allegations, the statute's two-year period started running no later than June 2015 – *i.e.*, some 3½ years before CDK filed the Counterclaim. *See* Counterclaims ¶ 92 (alleging Dealership Counter-Defendants "became aware that CDK objected to unauthorized access to the CDK DMS by third parties like Authenticom no later than when CDK announced SecurityFirst in June 2015 and *in all likelihood, much earlier*") (emphasis added).

CDK's Counterclaim further alleges that an "internal report prepared *in 2013* by CDK's former parent company . . . found that all of the more than 2,900 CDK DMS servers examined had some level of data corruption issues, many of which were attributable to 'hostile,' unauthorized access to the DMS similar to Authenticom's methods of access." *Id.* ¶ 83 (emphasis added); *see also id.* ¶ 93 (alleging that, "on August 22, 2016, CDK sent a letter to those dealers who ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████. Because

---

[4] ███████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

the CFAA Counterclaim was filed more than two years following CDK's own discovery of the alleged conduct underlying the Counterclaim, it should be dismissed as time-barred. *Meyer Tech. Solutions*, 2017 WL 4512918, at *1 (dismissing untimely CFAA claim on the pleadings); *see generally Chauffeurs, Teamsters, etc. v. Jefferson Trucking Co.*, 628 F.2d 1023, 1027 (7th Cir. 1980) ("A counterclaim for affirmative relief may not be asserted if barred by the statute of limitations").

### B. The CFAA Counterclaim Fails To Plead "Accesser" Liability Against Dealership Counter-Defendants

The Second Counterclaim should be dismissed for the additional reason that it fails to allege "accesser" liability on the part of the Dealership Counter-Defendants. CFAA violations require, *inter alia*, that the charged party engage in access of a computer system without authorization, or in excess of such authorization. *See, e.g.*, 18 U.S.C. § 1030(a)(2)(C) (imposing liability on person who "intentionally accesses a computer without authorization or exceeds authorized access . . . ."); § 1030(e)(6) ("the term 'exceeds authorized access' means to access a computer with authorization and to use such access to obtain or alter information in the computer that the *accesser* is not entitled so to obtain or alter") (emphasis added); *see also* ECF No. 506, at 14. CDK reasons that by permitting Authenticom (or others) to access the DMS, the Dealership Counter-Defendants engaged in unauthorized access. Counterclaims ¶¶ 142-43. The claim fails as a matter of law.

As alleged in the Second Counterclaim, the complained-of computer access was conducted by persons other than the dealerships – namely, "Authenticom and other third parties." *Id.* ¶ 141. CDK seeks to expand the statute's reach by alleging that the dealerships "induc[ed]" those persons to act. *Id.* ¶¶ 141-42. However, the statute creates no civil liability for

---

*See, e.g.*, Counterclaim Exhibit 4 at 1.

inducing others to act. Surely Congress could have drafted the statute to reach persons who induce others to commit unlawful acts, and it has frequently done so in other contexts. *See, e.g.*, 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer"); 8 U.S.C. § 1324(a)(11)(A)(iv) (imposing liability where person "encourages or induces" an alien to enter the country); 18 U.S.C. § 201(b)(1)(C); 18 U.S.C. § 1512(a)(2)(B); 18 U.S.C. § 2422(a). Congress did not do that here. *See Central Bank of Denver v. First Interstate Bank*, 511 U.S. 164, 176-77 (1994) (holding that there is no private right of action for aiding and abetting liability under federal securities law: "Congress knew how to impose aiding and abetting liability when it chose to do so . . . . If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not"). Congress's failure to include such language here further underscores the flaws in CDK's allegations.

Even assuming, *arguendo*, that the statute was construed to reach the conduct of persons *other* than those who engaged in the challenged computer access, dismissal is still warranted. As demonstrated in Section I, *supra*, CDK alleges that the dealerships "authoriz[ed]" Authenticom and other data integrators to access the DMS. *See* Counterclaims ¶ 3; *see also id.* ¶ 49 (dealerships' employees and agents may access DMS pursuant to Master Services Agreement). That alone requires dismissal of the counterclaim. *See Worldspan L.P. v Orbitz, LLC*, No. 05 C 5386, 2006 U.S. Dist. LEXIS 26153, at *13 (N.D. Ill. Apr. 2006) ("[T]he allegation that Orbitz accessed Worldspan's computers 'without authorization' is belied by the Agreement, which permits Orbitz to access Worldspan's computer").[5]

---

[5] To the extent CDK contends that the Counterclaim should be construed to allege that Dealership Counter-Defendants "exceeded" their authorization under the MSA, that argument should be rejected because it conflicts with the actual pleading. *See* Counterclaims ¶ 141; 18 U.S.C. § 1030(e)(6) (defining act of "exceed[ing] authorized access"). "As the Seventh Circuit has noted, . . . the CFAA explicitly

Dealership Counter-Defendants acknowledge that, in its decision denying Authenticom's motion to dismiss Defendants' CFAA Counterclaim, the Court cited, with approval, Judge Easterbrook's statement during an oral argument that the "authorization" required under the CFAA is that of the computer system's owner, not user. *See* ECF No. 506, at 15 (citation omitted). Dealership Counter-Defendants respectfully submit that this interpretation is not consonant with the statute's language, and that the required authorization under the CFAA is that of the *user*. The conclusion is further warranted because the CFAA is a penal statute (*see* 18 U.S.C. § 1030(c) (providing for imprisonment)), and thus any ambiguities in its language should be resolved in the dealerships' favor under the "rule of lenity." *Crandon v. United States*, 494 U.S. 152, 168 (1990); *see also Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies").

Nonetheless, even assuming that the required authorization is that of CDK, CDK *has* granted such authorization by contractually permitting dealerships to provide DMS access to their "agents." *See* Counterclaims ¶ 49 (MSA explicitly *permitted* dealers to provide DMS access to their "employees *and agents*") (emphasis in original); *see also supra,* at 6; *compare with* ECF No. 506, at 15 (denying motion to dismiss CFAA Counterclaim against Authenticom where CDK denied Authenticom authority: "Although dealers might have a breach of contract claim against CDK if CDK's denial of authority violated its contract with the dealers, that does not change the fact that CDK denied Authenticom authority").

---

distinguishes between the act of accessing a computer 'without authorization' and the act of 'exceeding authorized access.'" *Worldspan*, 2006 U.S. Dist. LEXIS 26153, at *12 (citing *Int'l Airport Centers, LLC v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006)). CDK charges Dealership Counter-Defendants only with accessing the DMS "without CDK's authorization." *See* Counterclaims ¶ 141.

In sum, the Second Counterclaim should be dismissed because the dealerships were not the "accessers" under the CFAA. Alternatively, the challenged access by others was authorized.

### C.    CDK Has Not Alleged The Requisite Loss Or Damage Under The CFAA

Finally, the Second Counterclaim should be dismissed because it fails to adequately allege loss or damage. Under the CFAA, a claimant may recover for a loss providing, among other things, that it (1) aggregates at least $5,000 during a one-year period; and (2) stems from a single act. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I).[6] CDK purports to satisfy this requirement by the following allegation:

> The Dealership Counter-Defendants' violations of the CFAA have caused CDK to suffer damages and losses . . . . On information and belief, these losses have exceeded $5,000 within a twelve-month period.

Counterclaims ¶ 144.

However, the pleading fails to allege that the loss allegedly caused by any *single* Dealership Counter-Defendant meets the $5,000 threshold. Instead, CDK asserts a loss – on an *aggregated* basis – caused by some *seventeen* dealers. *See id.* ¶¶ 7-26. Nothing in the statute permits CDK to aggregate the alleged losses caused by multiple dealerships, much less losses allegedly caused by their multiple acts, to reach the statutory threshold.[7] *See In re DoubleClick Privacy Litig*., 154 F. Supp. 2d 497, 523 (S.D.N.Y. 2001) (aggregation permitted only "across victims and over time for a single act"; "This interpretation is consistent with Congress' overall intent to limit the CFAA to major crimes"); *In re Am. Online, Inc*., 168 F. Supp. 2d 1359, 1373 (S.D. Fla. 2001). As such, the Second Counterclaim should be dismissed for failure to allege the

---

[6] A "loss" is "any reasonable cost to any victim, including the cost of responding to *an offense*, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to *the offense*, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11) (emphasis added).

[7] Under CDK's allegations, each of the dealerships could have caused as little as $294.12 in alleged losses ($5000 ÷ 17) -- far below the statute's requirement.

requisite loss. *See DoubleClick,* 154 F. Supp. 2d at 526 (dismissing CFAA claim on motion to dismiss for failure to allege requisite $5,000 threshold);[8] *see generally CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 998 (N.D. Ill. 2011) (dismissing CFAA claim on motion to dismiss for failure to allege loss); *Cassetica Software, Inc. v. Computer Sciences Corp.*, No. 09 C 0003, 2009 WL 1703015, at *4 (N.D. Ill. June 18, 2009) (same).

Additionally, CDK has failed to allege any "damage" caused by Dealership Counter-Defendants. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8); *see Worldspan*, 2006 U.S. Dist. LEXIS 26153, at *14. CDK, however, has not alleged facts indicating an actual impairment. *Id.*, at *15 (dismissing CFAA claim on motion to dismiss for failure to allege damage, explaining that complaint "merely parrots the 'causing damage' text of the CFAA in conclusory fashion and fails to allege any facts indicating that the completeness, usability, or availability of Worldspan's data was impaired," and rejecting claimant's argument that "the mere 'taking of information' constitutes 'damage' under the CFAA").

Accordingly, the Second Counterclaim should be also dismissed for failure to adequately allege loss or damage.

## III. CDK HAS FAILED TO PLEAD A VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT (THIRD COUNTERCLAIM)

### A. Providing Usernames And Passwords Does Not Violate The DMCA

In a final attempt to manufacture a claim against the dealerships, CDK alleges that the Continental and Warrensburg Counter-Defendants violated § 1201(a)(1)(A) of the DMCA Counterclaims ¶¶ 147-58. The DMCA provides, in relevant part, that "[n]o person shall

---

[8] The CFAA has been amended post-*DoubleClick*; the amendments, however, do not disturb the reasoning of that decision.

circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. §1201(a)(1)(A). To "circumvent a technological measure" means to "descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A).

Here, CDK alleges the Continental and Warrensburg Counter-Defendants "circumvent[ed] a technological measure" that controls access to CDK's DMS by "provid[ing] dealer login credentials to Authenticom and other third parties in violation of contractual requirements that such credentials be given to and used only by authorized dealer employees." Counterclaims ¶ 151. These allegations fail as a matter of law because "using a password to access a copyright work, even without authorization, does not constitute 'circumvention' under the DMCA." *Navistar, Inc. v. New Baltimore Garage, Inc.*, No. 11-cv-6269, 2012 WL 4338816, at *5 (N.D. Ill. Sept. 20, 2012) (quoting *Egilman v. Keller & Heckman, LLP*, 401 F. Supp. 2d 105, 112 (D.D.C. 2005)); *see also Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 692 (D. Md. 2011) (same).

This Court's holding in *Navistar* is directly on point. There, the plaintiff owned a password-protected computer system that enabled authorized truck dealers and servicers access to certain confidential and proprietary information. *Navistar*, 2012 WL 4338816, at *1. As CDK alleges here, the contract between the plaintiff and the defendant in *Navistar* specifically prohibited the defendant from sharing its username and password with unauthorized third parties. *Id.* And, like here, the plaintiff alleged that the defendant provided its login credentials to an unauthorized third party, who then "access[ed] and utilize[d]" the plaintiff's computer system "with the permission of [the defendant]." *Id.* at *2. This Court dismissed the plaintiff's DMCA

15

claim in *Navistar*, holding that "whatever the impropriety of defendant's conduct, the DMCA and the anti-circumvention provision at issue do not target 'the unauthorized use of a password intentionally issued by plaintiff to another entity.'" *Id.* at *5; *see also Adobe Sys. Inc. v. A & S Elecs., Inc*., No. C 15-2288 SBA, 2015 WL 13022288, at *8 (N.D. Cal. Aug. 19, 2015) (holding that where plaintiffs provided serial license keys to defendants, and defendants distributed the keys to unauthorized third parties, defendants' conduct was "not covered by the DMCA"). For the same reasons, the DMCA Counterclaim should be dismissed here.

Dealership Counter-Defendants acknowledge that CDK's Counterclaims here repeat some of the allegations this Court relied on in previously upholding a DMCA counterclaim against Authenticom. *See* ECF No. 506, at 16-18. Specifically, the Counterclaims allege that "Authenticom deployed its Profile Manager tool . . . which attempted to automatically re-enable [login credentials] from a computer installed on the dealer's network" (Counterclaims ¶ 100), and that Authenticom used computer-automated scripts to evade CDK's CAPTCHA controls (*id.* ¶¶ 102, 109). However, CDK's Counterclaims contain no allegations that either the Continental and Warrensburg Counter-Defendants themselves installed or used an automated program to bypass CDK's CAPTCHA controls; similarly, while the Counterclaims allege that "the Warrensburg Counter-Defendants installed Authenticom's Profile Manager tool" (*id.* ¶ 113), they do not allege that the Warrensburg Counter-Defendants created that tool, knew how it operated, or ran it themselves. Without any such conduct alleged against the Continental and Warrensburg Counter-Defendants, all that is left is their provision of usernames and passwords, and this Court "would agree that such an allegation would be insufficient to establish circumvention." *See* ECF No. 506, at 16. Accordingly, CDK's Third Counterclaim should be dismissed.

16

**B.    The Continental And Warrensburg Counter-Defendants Cannot Be Held Liable For Allegations Against Authenticom**

Apparently recognizing that it cannot state a DMCA violation against the Continental and Warrensburg Counter-Defendants for "provid[ing] dealer login credentials to Authenticom," CDK alleges that Continental and Warrensburg Counter-Defendants should be held liable based on allegations that they allegedly "knew Authenticom would attempt to evade CDK's security measures," or "contributed to the ability of Authenticom and other third parties to circumvent CDK's technological measure," or "intended" or were "willfully blind to" Authenticom's actions. *See* Counterclaims ¶¶ 153-55. These allegations fail to state a claim, as the Continental and Warrensburg Counter-Defendants cannot be held secondarily liable under Section 1201(a)(1)(A) of the DMCA.

First, CDK improperly attempts to hold the Continental and Warrensburg Counter-Defendants liable for aiding and abetting. *See Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 976 (N.D. Ill. 2008) (holding that allegations that the defendant was liable "because it knew of and directly benefitted" from the violations was an "attempt[] to hold [the defendant] liable under an aider and abettor theory"). It is well-established that where a statute does not contain the words "aid" or "abet," courts should not read aiding and abetting liability into the statute. *See id.* (holding in RICO action, "the absence of the words 'aid' or 'abet' in the statute indicates a congressional intent to not provide for aiding and abetting liability"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994) (holding in securities action, "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors . . . it is not plausible to interpret the statutory silence as tantamount to an implicit congressional intent to impose [securities fraud]

17

aiding and abetting liability"). Here, §1201(a)(1) of the DMCA does not contain the words "aid" or "abet" or contain any other language indicating Congress's intent to create aiding and abetting liability.[9] Thus, CDK's attempt to plead that the Continental and Warrensburg Counter-Defendants should be held liable for aiding and abetting a violation of the DMCA must fail.

Second, to the extent CDK attempts to impose liability on the Continental and Warrensburg Counter-Defendants for the conduct of Authenticom and other third parties based on agency principles, that theory also fails because CDK's own Counterclaims expressly disavow an agency relationship between the Continental and Warrensburg Counter-Defendants and Authenticom or other third parties. *See* Counterclaims ¶ 49 ("Third party hostile data extractors like Authenticom are not 'agents' of the Dealership Counter-Defendants."); *Rand Bond of N. Am., Inc. v. Saul Stone & Co.,* 726 F.Supp. 684, 687 (N.D. Ill. 1989) ("[I]t remains incumbent on the pleader to allege . . . the inference [of agency]").

Third, CDK's allegations that Dealership Counter-Defendants "induced" Authenticom and third parties to violate the DMCA are insufficient to state a claim. Mere inducement to act is not the action itself and the DMCA does not include any provisions establishing a cause of action for "induce[ment]." If Congress had intended to create a cause of action against individuals who "induce" violations of §1201(a)(1) of the DMCA by others, it would have stated as such. Indeed, the DMCA "statue imposes liability for violations by a defendant, not a third party." *GC2 Inc. v. Int'l Game Tech.*, No. 16 C 8794, 2018 WL 5921315, at *8 (N.D. Ill. Nov. 12, 2018).

---

[9] While §1201(a)*(2)* of the DMCA does impose liability on those who were "acting in concert" with those who market certain products, CDK does not – and cannot – bring a claim under §1201(a)(2). Moreover, the inclusion of "acting in concert" in §1201(a)*(2)* demonstrates that Congress could have included the same language in §1201(a)*(1)* but chose not to. *See Cent. Bank*, 511 U.S. at 176 ("Congress knew how to impose aiding and abetting liability when it chose to do so").

Fourth, no secondary liability arises under the DMCA for the Continental and Warrensburg Counter-Defendants' provision of usernames and passwords to Authenticom or other third parties. Providing a username and password to an unauthorized third party without permission may, as a practical matter, contribute to or facilitate the actions of the third party, whether intentional or not. But this Court and others have already held that DMCA liability does not arise from sharing usernames and passwords, implicitly recognizing that "contributing to" or having knowledge of a third-parties' conduct is not sufficient to allege circumvention under the DMCA. *See supra* Section III.A.; *Navistar,* 2012 WL 4338816, at *5 ("Plaintiffs' allegations amount to a theory that Defendant shared its password with a third-party; such an action simply does not appear to be covered by the DMCA").

At bottom, the Third Counterclaim fails to allege that the Continental and Warrensburg Counter-Defendants circumvented any technological measure in violation of the DMCA. To the extent CDK attempts to hold the Continental and Warrensburg Counter-Defendants liable for the actions of third-party integrators (and piggyback onto this Court's prior ruling), those allegations also fail as there is no basis to impose secondary liability. Accordingly, CDK's Third Counterclaim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss CDK's Counterclaims.

DATED:  March 29, 2019                 Respectfully submitted,


                                       */s/ Peggy J. Wedgworth*
                                       Peggy J. Wedgworth (*pro hac vice*)
                                       Elizabeth McKenna (*pro hac vice*)
                                       **MILBERG TADLER PHILLIPS GROSSMAN LLP**
                                       One Pennsylvania Plaza, 19th Floor
                                       New York, NY 10119
                                       Tel: (212) 594-5300
                                       Fax: (212) 868-1229
                                       pwedgworth@milberg.com
                                       emckenna@milberg.com

                                       ***Interim Lead Counsel for the Dealership Class***

                                       Leonard A. Bellavia (*pro hac vice*)
                                       Steven Blatt
                                       **BELLAVIA BLATT, PC**
                                       200 Old Country Road, Suite 400
                                       Mineola, New York 11501
                                       Tel: (516) 873-3000
                                       Fax: (516) 873-9032
                                       lbellavia@dealerlaw.com
                                       sblatt@dealerlaw.com

                                       ***Dealership Class Plaintiffs' Steering Committee***

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
dnordin@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (*pro hac vice*)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7 423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

21

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C .**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

*MDL Liaison Counsel*

## CERTIFICATE OF SERVICE

I, Peggy J. Wedgworth, an attorney, hereby certify that on March 29, 2019, I caused a true and correct copy of the foregoing **DEALERSHIP COUNTER-DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COUNTERCLAIMS OF CDK GLOBAL, LLC** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth

23