# EXHIBIT A

1

1   IN THE UNITED STATES DISTRICT COURT
2   NORTHERN DISTRICT OF ILLINOIS
    EASTERN DIVISION

3   IN RE: DEALER MANAGEMENT SYSTEMS,                  )
    ANTITRUST LITIGATION, MDL 2817                     )   No. 18 CV 864
4                                                       )
                                                        )   Chicago, Illinois
5                                                       )   December 13, 2018
                                                        )   9:20 o'clock a.m
6

7                     TRANSCRIPT OF PROCEEDINGS
8   BEFORE THE HONORABLE JEFFREY T. GILBERT, MAGISTRATE JUDGE

9

10  For the Plaintiffs:      KELLOGG, HANSEN, TODD, FIGEL & FREDERICK,
                             P.L.L.C.
11                           BY:  Michael N. Nemelka
                             1615 M Street, NW
12                           Suite 400
                             Washington, DC 20036
13                           (202) 326-7932
                             Email: Mnemelka@kellogghansen.com
14
                             MILBERG LLP
15                           BY:  Peggy J Wedgworth
                             1 Penn Plaza
16                           Suite 4800
                             New York, NY 10119
17                           (212) 631-8622
                             Email: Pwedgworth@milberg.com
18

19  Court reporter:           BLANCA I. LARA
                             Official Court Reporter
20                           219 South Dearborn Street
                             Room 2504
21                           Chicago, Illinois 60604
                             (312) 435-5895
22                           blanca_lara@ilnd.uscourts.gov

23

24

25

1    Appearances    (continued: )

2

3    For Reynolds and Reynolds Company:

                         GIBBS & BRUNS, L. L. P.
4                        BY:    Aundrea Kristine Gulley
                                Brian T. Ross
5                        1100 Louisiana
                         Suite 5300
6                        Houston, Texas 77002
                         (713) 650-8805
7                        Email: Agulley@gibbsbruns.com

8

      For Computerized Vehicle Registration, Inc.; also known as CDK
9     Vehicle Registration, Inc.

10                       MAYER BROWN LLP
                         BY:    Britt Marie Miller
11                              Matthew David Provance
                         71 South Wacker Drive
12                       Chicago, IL 60606
                         (312) 782-0600
13                       Email: Bmiller@mayerbrown.com

14

15

16

17

18

19

20

21

22

23

24

25

1              ( Proceedings taken in open court: )

2          THE CLERK:   18 CV 864, In Re Dealer Management Systems

3  Antitrust Litigation.

4          THE COURT:   For the plaintiffs.

09:19:15  5          MR. NEMELKA:   Michal Nemelka from Kellogg Hansen on

6  behalf of the individual and vendor class plaintiffs.

7          MS. WEDGWORTH   Good morning, Your Honor.  Peggy

8  Wedgworth from Milberg Tadler Phillips Grossman on behalf of

9  the Dealership Class plaintiffs.

09:19:28  10         THE COURT:   Okay.  In the back row.

11          MS. GULLEY:   On behalf of the defendants, the Reynolds

12  and Reynolds Company, Aundrea Gulley.

13          MR. ROSS:   Good morning, Your Honor.  Brian Ross from

14  Gibbs & Bruns also on behalf of the Reynolds and Reynolds

09:19:48  15  Company.

16          MS. MILLER:   Good morning, Your Honor.  Britt Miller

17  from Mayer Brown on behalf of CDK Global, LLC, and Computerized

18  Vehicle Registration.

19          THE COURT:   Okay.

09:19:57  20         MR. PROVANCE   Good morning, Your Honor.  Matt

21  Provance of Mayer Brown on behalf of CDK Global, LLC, and

22  Computerized Vehicle Registration.

23          THE COURT:   If it's a Thursday, you're here on

24  Dealers, right, Mr. Provance?

09:20:08  25         MR. PROVANCE   Right.

| | |
|---|---|
| 1 | THE COURT: Because on other days, you're here on |
| 2 | another case. |
| 3 | And, Mr. Nemelka, you're here for Authenticom and all |
| 4 | the rest of the plaintiffs other than the Dealership Class, |
| 5 | right? |
| 6 | MR. NEMELKA: That's correct, Your Honor. |
| 7 | THE COURT: Brenda, can you push that mike down on the |
| 8 | podium. |
| 9 | THE CLERK: Yes. |
| 10 | THE COURT: You guys can use the mikes. Identify |
| 11 | yourselves for our court reporter before you speak, at least at |
| 12 | the beginning until she gets everybody's name or the face here. |
| 13 | So I'm glad to see that I'm not the only lawyer who is |
| 14 | a deadline junkie who files things, right when the bell is |
| 15 | ringing, but I'd rather file than have to read it. I did read |
| 16 | everything that was filed for today. |
| 17 | I understand you wanted to get some things in front of |
| 18 | me -- |
| 19 | MS. MILLER: I'm sorry, Your Honor. I can't hear you. |
| 20 | THE COURT: You can't hear me; right. Would the |
| 21 | microphone help? |
| 22 | MS. MILLER: Thank you. |
| 23 | THE COURT: Okay. You heard my poor joke about |
| 24 | deadline junkies, though? |
| 25 | MS. MILLER: Didn't hear it. |

09:20:20
09:20:27
09:21:07
09:21:19
09:21:33

1    THE COURT:  Okay.  I said I'm glad to see I'm not the

2    only one who's a deadline junkie.  I was referencing the stuff

3    filed very recently before the hearing, including at 8:00

4    o'clock last night; okay.  But I read everything.

09:21:45

5    I'm not crazy about that system, but I understand why

6    that happened here.  I had you here on, I guess, December 6th,

7    and people who were here at that time said they wanted to take

8    advantage of this setting of this motion to have a more general

9    status hearing.

09:22:00

10   And I get that.  And, you know, I had said early on --

11   well, not early on, but when I got involved and when I first

12   started meeting with you and Judge Dow that I would set a

13   status and then I didn't.  My default was, if you wanted one,

14   you'd file a motion for one.  So, you know, we're getting

09:22:16

15   together today, and we can address some things today and move

16   this thing forward a little bit.

17   On my agenda, based upon what has been submitted to

18   me, I've got -- and I just want to make sure there's nothing

19   else -- I have Reynolds' motion to reconsider.  So I've got the

09:22:40

20   opening brief and I have a response.  I saw the stipulation

21   with respect to a briefing schedule.

22   I'm not actually sure.  Did we ever enter that

23   briefing schedule, Brenda?  Because that would have a reply due

24   on December 19th.  They sent that in very recently.

09:22:55

25   But I could ask Reynolds whether they want to reply.

1    I could address it somewhat in midstream here, too, frankly,

2    because now I've heard what Reynolds has to say and what

3    plaintiff had to say and maybe I could direct traffic a little

4    bit.  So I have that motion to reconsider.

09:23:17    5         And I cleared out my docket this morning.  I had other

6    things scheduled.  I had you for 15 minutes on the motion, but

7    I cleared some stuff out, so we're going to have some time

8    together.

9         I have the issue of the discovery that's been served

09:23:31    10   after May 25th, and the extension of the discovery schedule

11   that I'd like to address somewhat here.  I don't think we have

12   a briefing -- nobody suggested a briefing schedule on the

13   discovery issue because that was in these dueling status

14   reports, right?

09:23:50    15            MS. WEDGWORTH:  Correct, Your Honor.

16            THE COURT:  Okay.  I want to address the motion -- I

17   want to address what motions I still have under advisement that

18   are on discovery to make sure I have everything right.  I know

19   that I have plaintiffs' motion, I guess the Dealership Class

09:24:05    20   plaintiffs' motion, right, to clawback with respect to CDK's

21   clawback documents, that's what I had everything submitted

22   in-camera on?

23            MS. WEDGWORTH:  Yes, Your Honor.  And I think they

24   submitted 100 sample documents.

09:24:15    25            THE COURT:  Right.  And I've looked at a bunch of

1    them, and I think we need to address that in some way.

2          There is a motion that's either currently being

3    briefed or is already briefed.  I'll bring that out.  Hold on.

4          (Brief pause).

09:24:37    5          THE COURT:  I have plaintiffs' motion to compel FTC

6    documents, is that something that's pending now?

7          MS. MILLER:  I believe that's part of the clawback

8    motion.  There were two separate motions filed on the same

9    issue, FTC documents.

09:25:05    10          THE COURT:  FTC documents.

11          MS. MILLER:  Yes, Your Honor.

12          THE COURT:  Okay.

13          MS. WEDGWORTH  With regard to that one, though, Your

14    Honor, I don't think any of those documents are in-camera for

09:25:15    15    review, the FTC motion.  They are certainly linked in that all

16    the documents were produced to the FTC, is our understanding.

17    The clawback motion came first due to the procedural status of

18    the way we were handling them.

19          THE COURT:  And is the FTC document motion, does it

09:25:33    20    reference like 1800 documents, or something like that?

21          MS. WEDGWORTH  Correct, Your Honor.  Yes.

22          THE COURT:  Okay.  I have that, too.

23          And I've got plaintiffs' motion to redesignate

24    documents from highly confidential to confidential.  There was

09:25:47    25    a new defendants' motion to compel filed on November 30th, or

1  am I misreading that?

2  MR. PROVANCE:  Your Honor, that's a motion for

3  protective order.

4  THE COURT:  Protective order.  And did I set a

5  briefing schedule on that?

6  MS. MILLER:  It's fully brief.

7  MR. PROVANCE:  Yes, it's fully brief.

8  THE COURT:  It's fully briefed now?

9  MS. MILLER:  Yes, we filed our reply on Tuesday.

10  THE COURT REPORTER:  I'm sorry, and your name?

11  MS. MILLER:  Britt Miller.

12  THE COURT:  Okay.  And then I have this motion to

13  reconsider.  Any other motions that are on you guys horizon

14  that I haven't mentioned here?

15  MS. WEDGWORTH:  Not that are currently filed, Your

16  Honor.

17  THE COURT:  Okay.  Well, that's all right.

18  MR. NEMELKA:  We agree.

19  THE COURT:  Okay.  Good.

20  MR. PROVANCE:  Your Honor, there are --

21  THE COURT:  I think I have to set some other dates

22  here, too, in terms of getting together again to deal with some

23  of these issues.

24  Okay.  Yes.  Who said that?  Mr. Provance?

25  MR. PROVANCE:  Yes.  Your Honor, there is one aspect

09:26:02

09:26:13

09:26:22

09:26:42

09:26:49

1   of the Court's rulings on defendants' omnibus motion to compel

2   that was kept under advisement with respect to the Dealer's

3   objections to RFP's and search terms related to data security,

4   system integrity and system performance issues related to

5   third-party integrators.

6           THE COURT:   Yes.   I went through those orders

7   yesterday, actually, and I saw -- I saw that, but I figured --

8   you know, I had said I needed to set an in-court hearing on

9   that to address these issues with the parties, because I

10  couldn't figure out what everybody was saying.

11          There were a couple other motions that I said, here's

12  my thoughts, talk more and then come back to me.   I was leaving

13  that on you; all right.

14          MS. WEDGWORTH:   And, Your Honor, we are speaking on

15  that.

16          MR. NEMELKA:   We are speaking on those issues.

17          THE COURT:   Okay.   I'm just taking down a note here.

18          (Brief pause).

19          THE COURT:   Okay.   So I need to address that motion,

20  it's still under advisement, a date and so forth, and the other

21  things I said.   Anything else pending or immediate?

22          MS. WEDGWORTH:   Not currently pending, Your Honor.

23          THE COURT:   Okay.

24          MS. GULLEY:   There's nothing currently pending or

25  immediate.   You saw -- and this is Aundrea Gulley, by the way.

09:27:10

09:27:28

09:27:41

09:28:37

09:28:49

1    You saw that there are issues that we expect are coming.   One

2    that is more immediate is, there was a third-party that filed a

3    motion to quash in the Southern District of Florida and there's

4    going to be a motion to transfer that.

09:29:06    5         MR. PROVANCE:   Your Honor, actually the motion has

6    been filed to transfer.   CDK served a deposition subpoena on a

7    third-party.   They moved for an order quashing the subpoena,

8    but they moved in the Southern District of Florida, and as of

9    yesterday we filed a motion to transfer.   I have a copy of it

09:29:25   10    if Your Honor would like to see it.   But, you know, in our

11   view, that issue should be coming to the Northern District of

12   Illinois.

13        MS. MILLER:   We've also been informed, Your Honor,

14   that one of the other third-parties who Your Honor recently

09:29:38   15   ruled on a -- on the motion for protective order with respect

16   to dominion, that they are not going to be producing documents,

17   and, in fact, are going to appeal Your Honor's ruling.

18        THE COURT:   Okay.   Well, I think I may have calibrated

19   my order.   I might have said 15 days, or something like that,

09:30:04   20   or something else, because I wanted to make sure that if

21   anybody was going to appeal --

22        Where's my order?

23        (Brief pause).

24        THE COURT:   Here it is.   Maybe I didn't say anything

09:30:32   25   about timing in there.

1      MS. MILLER:   We had a separate agreement with the

2   dominion's counsel that in the event that they did not prevail

3   on their motion, that they would produce their documents I

4   believe within three business days of the ruling.

5      THE COURT:   Uh-huh.

6      MS. MILLER:   So we reached out to their counsel to

7   inquire when they would be producing those documents, and at

8   that time we were informed that they were not going to be

9   producing and would be filing an appeal of Your Honor's ruling.

10      THE COURT:   Okay.   Well, that's on Judge Dow's plate,

11   or will be on Judge Dow's plate; that's fine.

12      Okay.   Let's see if we can march through some of this

13   stuff.   Let me first address the motion to reconsider a little

14   bit to maybe provide some guidance, potentially, I don't know.

15      Brenda, I'm going to print my notes on this because I

16   have my computer here, but I might as well just print it, and

17   you can grab it for me.   I think it's on my printer.

18      THE CLERK:   Okay.

19      THE COURT:   Hopefully it's on my printer.

20      THE CLERK:   Okay.

21      (Brief pause).

22      THE COURT:   So I misspoke in my order.   Totally right,

23   Reynolds.   But I actually understood the facts as both sides

24   agreed on.   I have read Judge St. Eve's opinion, I have read

25   the Seventh Circuit's opinion, I have read the complaints in

09:30:33

09:30:53

09:31:35

09:31:46

09:32:06

1    the case.  So the language in there, as I re-read it, is really
2    my misspeaking as to, you know, what happened in 2015, but I
3    understood that Reynolds' position is that it had its system in
4    place for some time.  I guess what I was trying to talk about
5    is, I know there are allegations that stuff happened in 2015
6    and there were alleged agreements in 2015 that had an impact on
7    this, and I think plaintiffs kind of laid that out in their
8    response to the motion to reconsider.

9          So to me, waiver is irrelevant, because having read
10   Reynolds' brief, I'm still where I was at the time I issued my
11   order in November.  I'm happy if you want to brief this on the
12   19th and push it over the holidays, then I have to figure out
13   when I can rule on it, but based on at least the two briefs
14   I've had, which should be Reynolds' best shot and plaintiffs'
15   best shot, and they do engage with each other on the points
16   that are raised, I still think the issue really is -- and kind
17   of as raised by Reynolds as its alternative point, is the scope
18   of discovery that plaintiffs are entitled to see on this topic.

19         I mean, I think the issue continues to be relevant as
20   to plaintiffs' desire.  And I think under the discovery rules,
21   they are right to discover the underpinnings for the security
22   rationale for not allowing, you know, unlimited access, or
23   whatever.  However you want to characterize "access," I don't
24   want to misspeak on that, too, but not allowing access to its
25   system.  Plaintiffs are entitled to some discovery on that

1    because it seems to me that whether Reynolds has been,

2    quote-unquote, blocking access for a long time or not, still

3    one of the underlying arguments for both defendants' positions

4    in the case is that doing that is necessary and something that

09:34:34    5    is, in part, driven by security needs.

6              And if that's still the argument, Ms. Gulley, which I

7    think it is -- I mean, you can tell me I'm still wrong, and

8    that's fine -- but I think there's some discovery that's

9    relevant on that.

09:34:50    10             Scope, I think, is an issue.  And the way these briefs

11    came in on the motions to compel, there was no reply on any of

12    them.  So, you know, it was one party in the other one and

13    there was a series of stuff and very long briefs, and to

14    varying degrees I had a hard time figuring out what the parties

09:35:09    15    were saying.  They had been sitting for a while, so events may

16    have overtaken some of the things.  And, you know, there wasn't

17    really -- I said in my order, there was no burden argument

18    raised at that time, but, you know, I'm not going to say you

19    waived that argument.  You know, I just think that's something

09:35:30    20    that I can deal with, but I'm still where I was, the area of

21    discovery is relevant, I just think the question of what

22    documents are relevant to that as you guys have now briefed it

23    in terms of time period.  You know, defendant says, Reynolds

24    says training documents are not relevant, plaintiff says they

09:35:51    25    are, I'd want to know the reasons for that.  And if I have to

decide the issue, I will.  I mean, you know, as an aside, this case to me -- well, I shouldn't say this maybe now; okay.

Ms. Gulley, do you want a chance to send something in on the briefing schedule you agree to on the 19th given my -- go ahead.  It's not really Ms. Gulley, it's the other firm?

MR. ROSS:  Well, Ms. Gulley is with me.  I just am more responsible for this particular --

THE COURT:  So you're Ross, right?

MR. ROSS:  Brian Ross, yes, Your Honor.

THE COURT:  All right.  Sorry.

MR. ROSS:  I guess I would say from Reynolds' perspective, this guidance is helpful.  I think we should talk about it and we will let the Court know whether we even feel the need to file a reply next week, we'll also talk to opposing counsel.

But from our perspective, the motion was really intended to be a fairly simple one.  From our standpoint, there appeared to be a mistake in the factual recitation in the order, which I think Your Honor has acknowledged to us that it appeared, as written, that it may be material to the Court's decision.  I'm hearing from the Court now that perhaps that statement was not still critical to the ultimate resolution as to relevance.

THE COURT:  Can I interrupt you for a record?  I just want to really clarify something.

1     MR. ROSS:   Yes, Your Honor.

2     THE COURT:   Yes, I misspoke; okay.  I did not mean to

3  say that Reynolds began -- based on the stuff I had ran, I

4  didn't necessarily mean to say that Reynolds began, you know,

5  blocking access to its systems in 2015, because I recognize

6  from the Seventh Circuit and here that Reynolds' position was

7  that for a long time before the alleged conduct or agreement

8  with CDK, Reynolds says it was, in fact, imposing security on

9  its system to block other vendors, other people from accessing

10  it; right?  That's Reynolds' position?

11     MR. ROSS:   That's correct, Your Honor.

12     THE COURT:   Okay.  And I understood that.  What I

13  meant to say in my opinion is kind of all the stuff in the

14  complaints that I was saying broadly changed the way both sides

15  did business in 2015, mostly with respect to its alleged, you

16  know, combination conspiracy, whatever.

17          So I know that there are events that happened in 2015,

18  and I misspoke in how they affected this particular issue.  Now

19  that I've read the briefs, I'm not actually sure how it affects

20  this particular issue because plaintiffs seem to be saying that

21  based on discovery, that there was a change in 2015 with

22  respect to how Reynolds was necessarily implementing it's

23  blocking.  And I knew from the other opinions that I had read

24  that -- and I don't know if any of what I'm saying is even

25  necessary, but I want to make sure you know what's in my head,

1 okay, because if you're going to spend time writing a brief, I

2 want you to know what is in here or is not in here.

3 You know, there were floating within this even when I

4 issued my order was the notion that Reynolds had been allegedly

09:39:11

5 selective in who it allowed into this system and who it didn't

6 allow into the system during a long period of time, and whether

7 or not it was blocking certain people and not others. I know

8 whitelisting is related to this, to some extent. I think,

9 unless you tell me it's not, in terms of who you would allow

09:39:32

10 into the system or not.

11 So, you know, bottom line, I wasn't trying to say, and

12 I misspoke to the extent that -- and I didn't mean to say that

13 Reynolds began blocking in 2015; okay. But the second point to

14 that is, it has no relevance at all to my decision as to why I

09:39:52

15 think the plaintiffs would be entitled to understand better the

16 rationale for Reynolds' security argument for whatever time

17 period during this case that is relevant. I do think that

18 information is relevant for the time period of this case. So

19 that may have confused you even more, but I just felt like I

09:40:13

20 needed to try and clarify and I may not have clarified.

21 MR. ROSS: I appreciate it, Your Honor. And I guess

22 I'll just say this, there's a lot there. We were a bit

23 surprised at the substance of the plaintiffs' filing last

24 night, because to us it did seem inconsistent with how we

09:40:32

25 understood the case had been pled. We could spend time in a

1    brief refuting or doing what we believe would refute the

2    factual recitation in the brief last night.  I'm not sure

3    that's going to be the most constructive use of the Court's

4    time.  The Court has said it appears to now be in dispute what

09:40:55    5    occurred in 2015.  Our understanding was that the pleadings

6    always acknowledged that Reynolds blocked as far back at least

7    2009, and I believe that the quote that we cited in our opening

8    brief here was that Reynolds began blocking in earnest, this

9    is, again, according to plaintiffs, in 2011.

09:41:16    10    And so if the issue is changes that were made in 2015;

11    understood.  That may result in further conversations amongst

12    the parties about whether that's the timeframe that we need to

13    be focusing on for purposes of this discovery, and if we're

14    unable to reach accord on that, I think we now have a vehicle

09:41:40    15    to come back to the Court in the form of our reply next week.

16    If there's anything in particular that the Court wants

17    to hear about in such a reply or does not want to hear about in

18    such a reply, I'm glad we're here.  This is a good chance to

19    get any sort of guidance on that.  But, otherwise, I think

09:42:00    20    we'll take all of this guidance to heart and see if we can

21    either resolve the issue or at the very least streamline it.

22    THE COURT:  Yeah.  And I will say that nothing that

23    you have said, Mr. Ross, or that I've read in your brief

24    changes my view that the subject matter of security being a

09:42:22    25    rationale among other rationales potentially for Reynolds

saying, "I do not want certain third-parties to be able to access my system," to me it's still a relevant issue in the case. I am not sure for what time period it is, and you're raising that. I'm not weighing in on that right now. You know, I mean, if your position is, we began blocking back in 2009 or 2002, which is a little bit farther back than the timeframe in this case, but we began blocking in 2009 and one of the reasons we did it was because we wanted to protect our system from security, I think that's relevant, that could be. I mean, I'm going out more on a limb here, but I think that could be a relevant subject matter for plaintiffs' discovery. If plaintiffs are saying there were material changes in 2015 that coincided with the alleged unlawful agreements with CDK during that period of time and that seems to be a profitable place to limit the scope of discovery, I can go with that, too.

The brief doesn't really talk about the scope of discovery, because the thrust -- well, your brief does, it's an alternative argument. If you believe the subject matter is relevant, then we have a question about scope. I didn't -- I don't think, from what I read this morning, because I didn't see it last night, plaintiffs really dealt with the scope issue. They dealt dealt more with the relevance issue.

Right, Ms. Wedgworth?

MS. WEDGWORTH: Yes, Your Honor. And if you want responses to some of the factual things, we're happy to give

1    it, but --

2        THE COURT:  I don't think I do.  I don't think I do.

3    Because my intention was to say, I understand I misspoke, but

4    to clarify what I understood then and now to say I think I'm

09:44:24    5    still focused on scope.  I don't know that the parties have

6    fully addressed scope yet themselves.  Maybe the clarification

7    of my precatory point could help.  And if there's a

8    disagreement on scope, then I understand I'm going to have to

9    decide that, but I don't think I have the tools yet or the

09:44:45    10    information yet to decide that, particularly if defendants'

11    position is now there's a slightly different tilt to the

12    plaintiffs case.  And you might say it's not a slightly

13    different tilt at all, this is where we've been going all

14    along, and, you know, I don't think I need to resolve that now

09:45:02    15    in this relatively short hearing.

16        So I think where I would end this is to say, you've

17    got a briefing schedule.  Reynolds ought to think about what it

18    wants to do in the wake of what I've just said.  Let Brenda

19    know, with a copy to the other side, whether you're going to

09:45:20    20    file a reply.  I'll look at whatever you've filed, and then to

21    the extent I have to rule on a fully briefed motion, then I

22    will.

23        If instead you want to engage on the issue of scope

24    and then key something up to me on that issue, that's fine,

09:45:39    25    too.  I think that's a perfect issue to be put in one document,

1    so that we don't need to have dueling briefs on that.  In other

2    words, the document would say, Motion to resolve discovery

3    dispute about scope of, you know, discovery of security tools,

4    processes and training, and it would say, Here's plaintiffs'

5    position and here's why plaintiffs have this position, here's

6    defendants' position and here's why defendants have that

7    position.  It could take a little bit longer to put that in one

8    document, but to me at least that way the briefs don't go past

9    each other as much as they do when sometimes they're

10   responsive.

11          And I guess I will take this opportunity to say what I

12   was going to say and the chips can fall where they may.  I have

13   lots of large cases and other MDL cases.  And for what it's

14   worth, the lawyers in this case and maybe the parties argue

15   about things that you don't need to argue about necessarily,

16   I'm not sure why that is.  And I'm the decider, I guess, right;

17   as maybe George Bush said.  I don't know how much judges are

18   quoting George Bush.  So I understand that.  But it just seems

19   to me that, you know, this is an issue also that if there's

20   reason on both sides and if there's, you know, good intent on

21   both sides as to how you're going to get this, you could agree

22   to something that would be produced here that wouldn't be

23   overly burdensome on one side and would get the plaintiffs what

24   they need.

25          I mean, you know, the other issue we're going to talk

1    about is, you know, defendants say they need more time for

2    discovery, plaintiffs say, no, we're going to be ready to get

3    this case done, and I know Authenticom wants to get the heck

4    out of Dodge and get back to Wisconsin and try its case.  So

09:47:28    5    plaintiffs have to calibrate how much discovery is enough to

6    get done what you want to do versus how much time we want to

7    argue about it.  So I'll just say that.

8                  MR. NEMELKA:  Your Honor, could I just say something,

9    very short?

09:47:45    10                  THE COURT:  Yes.

11                  MR. NEMELKA:  One is, on the scope of this, CDK and

12    plaintiffs have already come to an agreement, and that's what

13    we think that Reynolds should've -- you know, should've agreed

14    to that compromise.  And our position all along is that

09:47:58    15    Reynolds' position of, quote-unquote, "closed system" was only

16    ever honored in its breach, and that now that we have seen

17    discovery where they have 20,000 protected access points as of

18    this agreement with CDK shows -- shows that pretty starkly.

19                  THE COURT:  Okay.  I read all that; all right.  I'll

09:48:21    20    say to you now what I've said in my orders, which is the fact

21    that CDK agreed to something has a vote but not a veto in this

22    process.

23                  MR. NEMELKA:  Right.

24                  THE COURT:  It's got different processes, it's got

09:48:32    25    systems.  Maybe it has a box of all of the documents you're

1    looking for or an electronic file room for that and they can

2    give it to you more easily than the other side.  So, you know,

3    the fact that another company can get you something doesn't

4    necessarily mean it's not burdensome on a different company

09:48:47    5    with different processes and different systems, and, you know,

6    I understand your argument on the relevance of it.

7              MR. ROSS:  Your Honor, I'll say, your comments on

8    hopefully reaching an agreement on scope are well taken, and we

9    appreciate it --

09:48:58    10             THE COURT:  Okay.

11             MR. ROSS:  -- and I think we'll be in a better

12   position to at least potentially do that in light of the

13   guidance today.

14             THE COURT:  Right.  And I'm not saying, you know, if

09:49:06    15   you can't reach agreement, don't file something.  But I'm new

16   to your case.  I'm the newest person on the block in this room

17   and even on the judiciary between Judge Peterson and Judge St.

18   Eve and Judge Dow, but, you know, I have cases that are

19   multidistrict cases, and I've been involved in them as a lawyer

09:49:24    20   with many more lawyers and many more classes and many more

21   potentials for dispute.

22             You know, when I came over here, I said, you know, my

23   practice had very little of the type of discovery disputes I've

24   seen in employment discrimination cases because the lawyers had

09:49:39    25   understood the positives and the negatives of what was going to

1   happen and usually were able to reach agreement on some stuff

2   without having to spend a lot of time briefing it.  And, you

3   know, I'm trying to get to your briefs as quickly as I can, but

4   you see, it does slow things down.  I mean, it just slows

5   things down.  And, you know, plaintiffs, you know, want to be

6   on a fast locomotive, and the more issues that have to be

7   decided and therefore slow things down, cut against one of your

8   main purposes, which is getting out of Dodge and getting back

9   and trying the Authenticom case and getting these other cases

10   resolved.  So there's a tension there; okay.  And I'll do the

11   best I can to address it.

12          But full stop.  I'm talking too much about this.

13   Think about it, see what you want to do.  I'll respond to

14   whatever you're doing.  I'm getting current on this.  I'm not

15   current yet.  I understand I've got some motions under

16   advisement, but I'm attempting to, you know, get my land legs

17   in your case.

18          Okay.  The next issue that you guys teed up here was

19   the plaintiffs' discovery served after the deadline, which is

20   the way defendants characterize it, and related to that is the

21   extension of the discovery schedule.

22          On the latter point, I'm not in a position now to

23   extend any discovery schedule; okay.  I know that I got

24   plaintiffs very mad at me when I said, I don't think you can

25   get this done by, what was it, February 15th?

1    MR. NEMELKA:  Correct.

2    THE COURT:  Okay.  I was right.  I mean, I don't want

3    to just roll it over on anybody, but it was not going to get

4    done by February 15th; so that's fine.  If I'm going to extend

09:51:26    5    the discovery schedule again, though, based on what I saw in

6    the briefs, I need to have a very good idea of what needs to be

7    done and why it needs to be extended.

8    Plaintiffs seem to be telling me, look, we could be

9    done.  And defendants have said, we don't think we could be

09:51:40    10    done, in part, because I know you're -- at least one of the

11    playing pieces on that chess board that the defendants put in

12    their motions to dismiss and things are still pending.  You

13    know, I know Judge Dow will get you a ruling on those motions

14    to dismiss as soon as he can.  You may have read that he's got

09:52:00    15    this little consent decree issue that he's dealing with with

16    the Illinois Attorney General and the City of Chicago and the

17    Department of Justice, so that may have occupied some of his

18    time, I don't know.  It could've thrown him off a little bit.

19    But he's a very diligent judge and he's going to get your

09:52:18    20    ruling, I'm sure, as soon as he can.

21    But I'm not in a position on December 13th to say I'm

22    going to move April 15th deadline.  What I would suggest is

23    this, that we can either decide now or maybe you could talk

24    about this, I need more facts, you know.  And I probably can't

09:52:36    25    have those facts until sometime next year.  You know, from the

1    defendants' point of view, what still needs to be done, why

2    haven't we've been able to do it up until now, how much time do

3    we think needs to be done. You know, maybe you'll hold your

4    fire until you actually see a ruling on the motions to dismiss,

09:52:54    5    and see, you know, where the chips fall on that. I do not have

6    any inside information on that, I'm not saying, but I just

7    think to the extent that's relevant to you, you may -- but I'm

8    not -- it was unusual for me to do what I did months ago to say

9    I don't think we're going to get done by a particular date, but

09:53:14    10    in most cases, including large cases, I don't move those dates

11    without more information about what's going on and why I need

12    to do that. I mean, understood that people could come back to

13    me and say, I want more deps, too. You know, I'd have to look

14    at that, too.

09:53:33    15    MR NEMELKA:  And, Your Honor, what we tried to show

16    you is that the two-month extension has allowed us, as Your

17    Honor was correct, to complete a lot of depositions. And what

18    we tried to show you is that we are on track to complete those

19    allotted depositions.

09:53:48    20    THE COURT:  Yeah. I got that message. And, again, I

21    don't mean to toot my own horn, I just -- there was a lot of

22    push-back I think from you, Mr. Nemelka, and others saying, you

23    know, "we go to get this done," and I don't know how you

24    would've gotten that done without a whole lot of more brain

09:54:04    25    damage than you've already had.

1    MS. MILLER:   Your Honor, if I may briefly address the

2    Court on this.

3          THE COURT:   Yes.

4          MS. MILLER:   The challenge the defendants are having

5    is, we don't know what the actual deadlines for certain things

6    are.   We now -- we've already fully briefed the motion for

7    protective order on a second set of requests that were served

8    after May 25th.   And according to plaintiffs, that was the

9    deadline for document requests.   So, by definition, those

10   should not have been served.   But now we have 65

11   interrogatories that have been served that will have to be

12   answered if, in fact, written discovery is allowed to continue,

13   they'll have the answer sometime this month.

14         We have read Ms. Wedgworth's submission yesterday that

15   she intends to serve some unknown number of interrogatories and

16   RFA's and there may be more interrogatories coming from Mr.

17   Nemelka's clients.

18         So we already have 65 in the hopper, plus we have

19   these other document requests, plus, as we put in our paper,

20   plaintiffs have asked for another document custodian that

21   they're seeking for us to collect information and process.

22         We are still working, as Your Honor has acknowledged,

23   on the implementation of Your Honor's rulings on the motions to

24   compel.   We alluded to, and the parties are working on, what

25   they perceive as serious gaps in each other's document

1  productions that were served based on timely discovery

2  requests.  We've got outstanding responses to interrogatories

3  that were served on May 25th.

4        I appreciate that Mr. Nemelka and Ms. Wedgworth

5  represent that they think they can get the depositions done in

6  the time allotted, but everybody's math pretty much matches up,

7  and we will have completed 30 depositions by the end of

8  January, which is 3.5 months into the oral discovery period,

9  but now we're supposed to complete twice that number, 60 in

10  2.5 months after January, which, quite frankly, the math

11  doesn't really work.

12        Mr. Nemelka's suggestion was that we get less

13  depositions.  Obviously, we oppose that request for obvious

14  reasons, but then we also have this question of third-party

15  discovery where we have a number of third-parties that are

16  going to be appealing your order, filing motions to quash,

17  won't show up for a deposition.  We have one third-party of 30

18  that is currently agreed to a date, but even that party has

19  said that they plan to instruct their witness not to answer

20  anything that they deem confidential.  So I suspect that will

21  result in motion practice in front of Your Honor.

22        There are some 60-plus third-party subpoenas that are

23  pending.  As Ms. Wedgworth noted in her filing yesterday, they

24  have outstanding subpoenas to Mr. Nemelka's clients.

25        I could keep going, Your Honor, of the amount of stuff

09:55:35

09:55:56

09:56:13

09:56:28

09:56:45

1   that is purportedly all going to get done by April 15th, and I

2   don't think even if we were not to take time off for Christmas

3   and New Years, that is realistic.

4            MS. GULLEY:  Well, as Mr. Nemelka points out --

09:57:01

5            THE COURT:  That was Ms. Miller speaking.  This is

6   Ms. Gulley.

7            MS. GULLEY:  Thank you, Your Honor, Yes.  As Mr.

8   Nemelka points out, plaintiffs believe they are on track to

9   complete depositions of the two-plus CVR defendants in this

09:57:20

10   case.  But remember that defendants produced a huge chunk of

11   their documents in May, all of their FTC productions in the

12   joint conduct investigations.  We did not receive documents

13   from the plaintiffs, substantial portions of them, until

14   October, and are still receiving many.

09:57:37

15          In terms of the class of dealers, it's so few that

16   we've been unable to even identify a witness with enough

17   documents that we could figure out which of the many people at

18   the dealerships should even be deposed.

19          And so while it may be true that plaintiffs are way

09:57:54

20   ahead of the game because they've been way ahead of our game on

21   getting documents, we're just not able to keep up with

22   identifying which deponents we need, because, for example, when

23   we asked for organizational charts, certain of Mr. Nemelka's

24   clients refused.  And so without them -- this is early on in

09:58:13

25   the schedule prior to the due date, and so we were unable to go

1  through it and forgot who to depose.

2          The point is, these are not ripe issues before you,

3  but I agree with you, of course, you need in more detail of who

4  do you need, when, and why before we move the discovery

5  schedule.  It's just that the way that this train, this

6  locomotive is going is making it difficult for defendants,

7  that's true of the discovery and we need to come back and talk

8  to you about that.

9          Meanwhile, as Ms. Wedgworth pointed out in her brief

10  last night -- and this is another issue, is that we're kind of

11  facing a three-ring circus here with two different, you know,

12  sets of plaintiffs with different motives and goals where

13  they're subpoenaing each other, but as Ms. Wedgworth pointed

14  out in her brief last night, the affirmative experts are now

15  due two months before the end of discovery, including things

16  centrally at the heart of Ms. Wedgworth's subpoena to Mr.

17  Nemelka's clients, you know, our subpoenas to Mr. Nemelka's

18  clients, and CDK's discovery requests to them.

19          And so it's just difficult to envision a situation in

20  which we'd be able to put on damages experts in March and

21  April, that's just on the affirmative claims.  The

22  counterclaims, only one set have even been filed.  Ms. Miller

23  is awaiting rulings on motions to dismiss after which she will

24  file counterclaims, those aren't even on file yet, and the idea

25  that she would have an expert report due on that, you know, in

09:58:30

09:58:44

09:59:02

09:59:22

09:59:45

1    the first quarter of next year.

2         We're pointing out to you that these are issues that

3    are coming fast and with the holidays coming up, you know, are

4    going to have to be addressed.  Getting guidance from you as we

5    go into this period of negotiation would be very useful.

6         THE COURT:  Well; okay.  There's a lot of noise there.

7    I mean, there are a lot -- there's a lot of stuff there that I

8    cannot deal with right now.  I mean, plaintiffs filed something

9    at 8:05 p.m last night.  I did not see it until 7:00 a.m. this

10   morning.  I read it.  How fully I've digested that and what

11   defendants filed yesterday, I'm still at a fairly high-level

12   and the new kid on the block.

13        I mean, I could say certain things.  I'm not going to

14   have expert reports due and expert disclosures due before fact

15   discovery closes.  But instead of -- I mean -- and I can't

16   believe the plaintiffs' want that, too, but this is an example,

17   why don't you just talk and submit a proposed stipulation that

18   says, given the Court's extension of the fact discovery

19   deadline, and you didn't do the other deadlines, we're going to

20   need more time with that, and I'd sign that in a second, but if

21   you can't agree to that, then give me what your respective

22   proposals are and I'll flip a coin.

23        And I also understand that because motions to dismiss

24   have been filed by one or both defendants on different things,

25   they haven't even answered some of the claims yet because they

1    filed motions to dismiss them.  So, I mean, I get that, that's

2    not --

3            Yeah, Mr. Nemelka.

4            MR. NEMELKA:  Your Honor, as Ms. Gulley and Ms. Miller

5    will tell you, we've asked them multiple times to have that

6    very discussion that Your Honor suggested that we have, which

7    is, given the two-month extension of the fact discovery

8    deadline to see what other deadlines need to move because of

9    that, which we agree they need to move because of that.  They

10   have refused to meet and confer with us.  And so we agree with

11   Your Honor that we should confer on that, and at least if we

12   can't agree, submit competing proposals.

13           MS. MILLER:  Your Honor --

14           THE COURT:  Did you really refused to --

15           MS. MILLER:  No, Your Honor, that's a gross

16   overstatement of what we've done.  In fact, Your Honor -- if

17   you go back to the October 9th hearing -- suggested that we

18   have a meet-and-confer after the decisions on the motions to

19   dismiss came out so we would know what claims are in, what

20   claims are out.  I don't even know if I have a counterclaim.

21   Mr. Nemelka has moved to dismiss the whole thing.

22           So I don't know if I need to engage an expert with

23   respect to my counterclaim because I don't even know if I have

24   one.  If he prevails, I won't.  I still haven't filed

25   counterclaims in the other cases in which -- that are still

1   pending before Judge Dow.

2         So when Mr. Nemelka and Ms. Wedgworth ask that we have

3   a meet-and-confer to discuss a global schedule, we said we

4   agree with Your Honor that it makes sense to have that

5   discussion after we have rulings on the motions to dismiss.

6         In the interim, we have been told that although, at

7   least with respect to Mr. Nemelka's clients, he agrees that

8   some of the dates should be moved, it's the expert dates, but

9   his trial date under no circumstances shall move, the summary

10   judgment date shall in no circumstances -- or should not move

11   by much, i.e., they should not impact the trial date.

12         So I appreciate and we are happy to sit down and see

13   if there can be movement made, but with the fundamental premise

14   of the trial date will not move and everything else that has to

15   happen between now and then has to be scrunched into that time

16   period, there is -- we do not -- we have a fundamental

17   disagreement.

18         We still don't have, as we noted in our papers, we

19   still don't have updated financial information from Mr.

20   Nemelka's client that supposedly substantiates their continued

21   need for a super-fast trial date.

22         So we can have a discussion, I'm not sure it's not, in

23   large part, an exercise in futility beyond moving the start of

24   expert discovery after the April 15th date, but if Your Honor

25   would like us to sit down, we can have those conversations and

10:02:43
10:02:59
10:03:16
10:03:32
10:03:51

1    we can submit opposing schedules and briefs of whatever length

2    Your Honor would like to substantiate why we think our

3    schedules make sense.

4         THE COURT:    Point of clarification.    I'm looking at

5    Judge St. Eve's May 7th, 2018, case management order, I don't

6    see any trial date set.

7         MR. NEMELKA:    There's no trial date.

8         THE COURT:    Okay.   And you're intending to go back to

9    Wisconsin to try Authenticom, right?

10        MR. NEMELKA:    At least for Authenticom.   The other

11   cases we may stay here.

12        MS. WEDGWORTH    And the dealership case would stay

13   here, Your Honor.

14        MS. MILLER:    And I apologize, Your Honor.   It's not

15   the trial date itself, but the timing of when that trial would

16   occur, i.e., shortly after a ruling on the motions for summary

17   judgment.   They are looking to have a trial as early as

18   possible, and at this rate either at the end of next year or

19   early the following.

20        THE COURT:    Okay.   Well, I'm going to make this real

21   easy.   I'm going to strike the deadline -- the expert report

22   and discovery schedule set in the May 7th case management

23   order, because that schedule no longer makes sense given the

24   April 15th close of fact discovery; okay.   So those dates are

25   gone.

1       There are other dates after that, deadline for Daubert
2  and dispositive motions.  I don't know whether those are going
3  anywhere or not, but I haven't looked at that carefully.

4       Before I strike all those dates, I'd like to -- I
5  mean, I don't have to strike them right now, it's July.  You're
6  not writing your summary judgment briefs now.  My best bet is,
7  those dates are moving.  Those dates are going to move.  I know
8  that, you know that.  I was at the October 9th -- I was at the
9  October 9th hearing, too, and I know Judge Dow was very
10 optimistic in his getting a ruling on the other motions to
11 dismiss.  He gave you a pretty quick ruling on one of the
12 motions at that point.

13       MR. NEMELKA:  Correct.

14       THE COURT:  And he was optimistic on the other ones.
15 And that was, in part, the basis of my saying once we get a
16 ruling on that, then we should have this kind of status hearing
17 where we do this.  And because we didn't have that, you know,
18 as Ms. Miller says, we're waiting for another shoe to drop here
19 that is going to affect a lot of the scheduling here.

20       I'm going to order you to talk.  The issue is the
21 completion of fact discovery, but right now we still have an
22 April 15th date.  Part of it is just throwing darts on the
23 calendar until you have a ruling on the motions to dismiss,
24 that's the problem.

25       (Brief pause).

1      THE COURT:   But to the extent that your expert dates
2   were keyed off -- part of my problem in extending discovery,
3   frankly, is, I looked on the -- or even dealing with whether
4   the discovery plaintiffs have served is proper is, I looked to
5   see if there's a transcript of some hearing in front of Judge
6   St. Eve where everybody expressed their views on this, I
7   couldn't find one.
8      MS. WEDGWORTH   There isn't one, Your Honor.   This was
9   done before the structure was in place, at least for the
10  dealerships.
11      THE COURT:   Were there briefs on this?
12      MS. WEDGWORTH   There were, yes.
13      MS. MILLER:   There were briefs on the original
14  schedule.   The parties submitted their respective briefs.   At
15  one point, there was agreement among some parties as to the
16  schedule.   There was, obviously, not universal agreements
17  amongst the parties, and so the parties briefed the issue of
18  what is the schedule.   Judge St. Eve altered one of the
19  schedules that had been submitted and entered her schedule.   We
20  all can debate what she meant.   We, obviously, both think it's
21  very clear and we come out the other way on it.   We, obviously,
22  disagree with plaintiffs' attempt to try to provide context
23  beyond the plain reading of the order, but we're happy to have
24  that debate, but the fundamental question comes down, and I
25  appreciate the challenges Your Honor has with respect to

10:08:04

10:08:18

10:08:25

10:08:42

10:09:02

1    deciding where we are in discovery, but, obviously, with

2    respect to the -- we don't have an obligation to respond to the

3    second request for production because that's under advisement

4    with Your Honor in our motion for a protective order.

5           But as I sit here, we currently would have

6    interrogatory responses to some 65 interrogatories, if my math

7    is right, I think sometime next week or right after Christmas,

8    which with all due candor, I have not begun to prepare because

9    we think they're facially invalid.  And so we haven't wasted

10   our client's resources to undertake that effort because we

11   don't think they're, quite frankly, proper.  And, again, I

12   don't know whether or not I'm going to be getting a set of

13   another, you know, 65 interrogatories from Ms. Wedgworth's

14   clients that I'm then going to have to answer.

15          MS. WEDGWORTH:  Your Honor, if I can response briefly.

16   The May 25 deadline that defendants say incorporates requests

17   for admissions, as well as interrogatories and other discovery

18   requests, cannot in any form or fashion include requests for

19   interrogatories.

20          I was appointed lead counsel on April 16th, the order

21   came down for a May 25th deadline.  Requests for admissions in

22   other cases I've used to narrow the issues for trial, we hadn't

23   taken one discovery -- one deposition by May 25th, document

24   production wasn't in full swing until after that.  I wasn't

25   even up and running until the month of May.  So to think that

1    interrogatories and requests for admissions, at least on behalf

2    of dealerships if not all plaintiffs, could not have gone

3    forward in completeness by May 25th.

4              And as the rules say, one of the purposes of requests

10:10:43    5    for admission narrows issues many times for trial.  That's the

6    reason, again interrogatories as I put in my papers, I only

7    have so many to do.  I'm waiting and using those at the right

8    time in order to efficiently use them on behalf of the class in

9    this MDL to hopefully get the information at the right time.  I

10:11:04  10   don't want to use them too early and then inefficiently have to

11   come back and do it again.  So that May 25 deadline alone is

12   not in any way appropriate to be for any written discovery in

13   this matter.

14             THE COURT:  You know what?  1, I'm striking just the

10:11:51  15   expert discovery schedule here.  2, I don't know what my

16   authority is right now to set a schedule in front of Judge Dow

17   for Daubert and summary judgement motions; okay.  My best guess

18   is, those dates are going away, too, but I don't have to deal

19   with them right now.  I want to at least deal with the

10:12:16  20   asymmetry in the discovery schedule, because discovery is on my

21   plate.  There's no way I'm having expert reports done before

22   fact discovery is done.

23             The schedule that was entered by Judge St. Eve on

24   May 7th was an expedited schedule, in part, because she was

10:12:38  25   trying to comply with the Seventh Circuit's request that this

be done on an expedited basis, but the table -- the shape of
the table has changed since May 7th in a lot of ways.   My
feeling is, I should just keep the same schedule.   So there was
opening merits expert reports were 30 days after the fact
discovery closed, I would just set that for May 15th, and then
I would do the next one 30 days after that.   I would just push
these dates out with the same distance between these dates as
they were in the original case management order.   I'm going to
say in my order right now, "This is subject to change, as
necessary, after rulings on the motions to dismiss are entered
and the parties have a better chance to assess the shape of the
case at that time."

        And I will say in my order, so nobody has to read
between any lines, that if the Court has to change these dates
for expert discovery at a later date, it will do so; okay.   But
at least now I would do that.   Objections to that?

                MS. MILLER:   No, Your Honor -- oh, I'm sorry.

                MS. WEDGWORTH:   None here, Your Honor.

                MR. NEMELKA:   That makes sense, Your Honor.

                THE COURT:   And I will say in this order that in the
Court's view -- well, I don't want to step on anybody's toes
here with respect to trial dates and summary judgment, but it's
obvious to me, unless everybody is going to agree to brief
dispositive motions and do expert discovery at the same time
and there might be some overlap there, sometimes there is in

1    antitrust cases, that that's not going to be efficient.

2            MS. MILLER:    Your Honor, if I may?    We certainly don't

3    have an objection and appreciate Your Honor moving the expert

4    dates and we appreciate that you're willing to move them again.

5    Our concern, obviously, as you just said a moment ago, that the

6    landscape has changed.    And so with due respect, now that we

7    have two class actions, as well as a number of individual

8    actions, defendants are going to need more than 30 days to

9    respond to the multiple expert reports that are going to be

10   coming in on that opening date.

11           We're happy to have Your Honor keep the intervals for

12   now, but would like to give Your Honor a heads-up that

13   defendants are going to be seeking an extension of those

14   intervals for the simple reason that we are going to have a lot

15   more to respond to than we thought we were going to back in May

16   when we first started this.

17           THE COURT:    Okay.    And I'll look at those if you can't

18   agree to those.

19           MS. MILLER:    Okay.

20           THE COURT:    Can I just circle back to something and

21   then move forward on this discovery stuff?    There's a motion

22   for protective order -- plaintiff served some additional

23   discovery, defendants filed a motion for a protective order,

24   that was fully briefed on Tuesday.

25           MS. MILLER:    Yes, Your Honor.

10:14:52
10:15:10
10:15:26
10:15:43
10:15:59

1    THE COURT:   And that addresses some of the discovery

2    that is referenced in the stuff you filed in advance of today's

3    hearing.

4    MS. MILLER:   Correct, Your Honor.   That addresses the

10:16:11    5    October 12th second request for production that was served

6    on the substantial completion deadline by Mr. Nemelka's

7    clients.   In approximately a month and a half later, the

8    individual plaintiffs represented by Kellogg Hansen served

9    additional now 65 interrogatories on the various defendants

10:16:34    10    between, I think, November 21st and November 27th, and in that

11    time period we also received additional requests for new

12    document custodian.

13    THE COURT:   Okay.   You were groaning, Mr. Nemelka?   It

14    sounds like a free-for-all here, but go ahead.

10:17:02    15    MR. NEMELKA:   I would just say, the document request

16    that have been fully briefed it just concerns two topics that

17    as Your Honor will see in the briefing arose after the May 25th

18    deadline.   And in the interrogatories, you know, me and my

19    clients, like Ms. Wedgworth's, have not served any

10:17:19    20    interrogatories, and so, you know, felt like it was the

21    appropriate time to do so.

22    THE COURT:   Yeah, I hear you.   Let me tell you a

23    couple of things here.   I don't know how I'm going to deal with

24    this particular issue right now.   You know, it was teed up

10:17:32    25    beginning on the 12th and then yesterday.   I view -- I mean,

1    request for admissions, request to admit are hybrids; all

2    right.  I view them as useful at different parts of the case,

3    and, you know, there's a difference of opinion as to whether

4    these pure discovery, not pure discovery.  I can't -- I don't

5    understand enough right this second what the case looked like

6    when Judge St. Eve entered her order; okay.  I will tell you

7    reading English and just the cultural in this district, unless

8    the parties submit something that says interrogatories are to

9    be treated different than other discovery, written discovery,

10   most of the orders that we enter in this district where it says

11   discovery is to be served, discovery requests are to be served,

12   that means interrogatories and document requests for sure; all

13   right.  I don't know what you guys submitted to Judge St. Eve

14   when she entered the schedule, and I'll have to look at it, and

15   I don't know what the posture of the case was at that time.

16           Ms. Wedgworth, you say you were just appointed class

17   counsel on, what, April 25th?

18           MS. WEDGWORTH    April 16th, Your Honor.

19           THE COURT:   Okay.

20           MS. WEDGWORTH   So I didn't even have any document

21   production until after that.  And once you get a document

22   production, it doesn't automatically show up on your system.

23   You have to get your IT department, blah-blah-blah.

24           THE COURT:   Yeah, but I have to see what you guys

25   proposed; okay.  I mean, that doesn't matter to me as much as

1    what was being discussed at the time.  A case schedule means,

2    this is the schedule for everybody to abide by.  And I

3    understand the defendants saying, Well, we're months into

4    discovery and now I'm getting interrogatories, what do you want

10:19:22    5    me to do, do that and depositions.  I understand that point;

6    okay.  Parties could allow for that.  I've got cases where I've

7    got, after the first round of document production, the parties

8    -- and the Court enters an order -- but the parties propose

9    that there's another round of interrogatories.  And I also have

10:19:40   10    entered case management orders that say requests for admission

11    are due by this date and therefore they're not included in the

12    written discovery requests.

13           So I don't know what you all suggested to Judge St.

14    Eve.  If everybody was gung-ho on getting everything done as

10:19:56  15    soon as they can from the plaintiffs' point of view and you

16    submitted a schedule that said written discovery, essentially,

17    you know, additional non-duplicative coordinated discovery

18    requests, search terms and custodians are supposed to be due by

19    May 25th, that's the date that that stuff has to happen; all

10:20:12  20    right.  Now I just have to tell you, the way I read the English

21    language there; all right.

22           You're right, plaintiffs are right, it doesn't say

23    interrogatories, requests for admission and requests for

24    production.  I don't know what your briefs said because I

10:20:29  25    haven't read them and I'm going to have to now go back to the

docket and see what they have to say. But if nobody made any
distinctions about that, if people were arguing to the judge
written discovery should be served by "x" date and if the
plaintiffs were saying we got to get this show moving and
written discovery is going to have to be served by "x" date,
then it doesn't matter to me that you were appointed class
counsel on April, what did you say, 16th?

MS. WEDGWORTH: 16th.

THE COURT: 16th. Because if you were appointed class
counsel for a case that was a locomotive going straight on a
track, then between the 16th and the 25th you had to serve your
written discovery requests; okay.

I mean, again, I'm looking at the plaintiffs here and
I don't know where you want to go with this; okay. You want
expedited discovery, get it done quickly, when defendants said
that they might want to move the expert discovery schedule
because they don't have time in that 30-day period to serve the
six expert reports that they want. You guys, I saw on your
faces, your body language was: Oh, my goodness, that's another
extension.

On the other hand, if we're going to serve 65 document
requests and interrogatories or requests for admission, that's
going to slow down your train. So I don't -- and, again, Judge
Dow has said this from the bench and I see it, too, and I see
it in this briefing, where's the fire? Okay. Where's the

1    fire?  If there's a fire, you have to have pictures of the fire

2    to show or at least get as close enough to feel the heat.

3                So I can't deal with this thing right now, all right.

4    Now, what are they supposed to do with the interrogatories that

10:22:17   5    have been served and the requests for production that were

6    attached to their filing?  I haven't gone through them in the

7    day that I had to do it.

8                (Brief pause).

9                THE COURT:   I'm just looking at some of them now.

10:22:58   10                (Brief pause).

11                THE COURT:   I'm going to have to look at this, because

12    I don't understand in what world, even assuming the plaintiffs'

13    position 6 months after the discovery schedule is entered in a

14    case management order, it's fine to serve interrogatories in

10:24:05   15    the middle of depositions.  I got to understand why that world

16    is a world that you think Judge St. Eve allowed in her case

17    management order, I don't get that.  I mean, I'm looking at

18    some of these interrogatories.  I don't know the case as well

19    as you do.  Some of them are clearly following up on a

10:24:24   20    deposition, document production, whatever.  It would've been

21    totally fine for you to suggest a schedule to Judge St. Eve

22    that says after the first substantial completion of documents,

23    we want another ability to serve another round of document

24    requests and an opportunity to serve interrogatories to narrow

10:24:42   25    issues and maybe even a request for admission, but if you

1   would've done that, the date to complete depositions would

2   change; okay? Because you need that stuff before you're going

3   through the dep process. And I just don't understand what

4   world exists where 6 months after an order that says discovery

5   is supposed to be served by then, we can get all this other

6   discovery in there, I don't get that, I don't understand that

7   world.

8           MR. NEMELKA:  We never understood that deadline to

9   apply to interrogatories.

10          THE COURT:  What did you understand the deadline to

11  do? 30 days before the close of fact discovery you can give

12  them 25 interrogatories? I mean, under this schedule, the

13  deadline to complete fact discovery was February 15th. So

14  under this schedule, you're telling me that you thought that by

15  January 15th you could serve your interrogatories and that

16  would just be hunky Dory?

17          MR. NEMELKA:  Not necessarily would be hunky Dory. We

18  thought that we needed to serve interrogatories in time to try

19  to get responses to them. And we served them in November,

20  5 months before the end of discovery, and thought that 5 months

21  for the end of discovery on certain targeted interrogatories

22  was appropriate.

23          THE COURT:  I'm not sure that's true.

24          MS. WEDGWORTH:  Your Honor, on requests for admissions

25  -- and I hate to date myself in the Soybean Futures case a

1  thousand years ago with Magistrate Pallmeyer who is now judge
2  -- in that case, we did requests for admissions toward the end
3  of the depositions in discovery period, which were very
4  effective, and in other futures cases have that that, too, with
5  regards to counts, but we couldn't do summary positions of
6  particular traders or companies in the Futures market until we
7  had the documents and we took some depositions about those
8  documents.
9        And once we got an understanding of how the accounts
10  worked and how to calculate positions, we then issued a series
11  of requests for admissions and got responses for that, which
12  totally narrowed the issues for trial, that's the type of thing
13  I'm approaching it for requests for admissions here.
14        And I'm not saying we've got a bunch of accounts
15  running around with a bunch of traders, I understand that, but
16  in similar vein, we would have that type of requests for
17  admissions here, that's the reason, that would narrow it for
18  trial.
19        THE COURT:  Yeah.  And if you want to negotiate a new
20  case management order that incorporates different deadlines and
21  accommodates the case as it stands now as opposed to where it
22  stood on May 7th, nothing is preventing you from doing that,
23  okay, except yourselves; all right.  Because what I understood
24  you to be saying is, in Judge Pallmeyer's situation, that was
25  actually in her case management order; right?

10:26:22
10:26:36
10:26:55
10:27:07
10:27:27

1        MS. WEDGWORTH:   I actually don't know.   It was so long
2   ago.
3        THE COURT:   Well, first, in terms of responding, I'm
4   not staying any discovery right now; okay.   You got served with
5   a bunch of stuff; right?   You might file a response that says,
6   For the reasons set forth in this thing, we don't think we
7   ought to respond to it, all right, that's our objection.   I'm
8   not -- I am not right now, if this is what plaintiffs want me
9   to do, to order the defendants to provide substantive responses
10  to everything you just served, I have to go back and see how
11  the heck this happened; all right.   And I'm not going to
12  interfere with the normal case, but I would fully expect the
13  defendants to say to you in response to everything you're
14  serving, We don't think this is right and we're objecting to
15  it, until we get a court order, we're not responding to your
16  discovery, okay; full stop.
17        2, what did the case look like on May 7th?   So
18  Authenticom was a plaintiff --
19        MR. NEMELKA:   Authenticom was a plaintiff.
20        THE COURT:   -- the dealer class had filed, and on
21  April 16th you were appointed class counsel.
22        MS. WEDGWORTH:   Correct, Your Honor.
23        THE COURT:   Vendor class.
24        MR. NEMELKA:   AutoLoop had also filed, yes, and Cox
25  Automotive had also filed.   And MVSC was actually the first

1  case.

2        MS. MILLER:   And AutoLoop had only filed as an

3  individual at that point, they had not yet filed -- their

4  amended complaint purported to have changed their status from

10:28:55  5  an individual plaintiff to a class action.   So that had not

6  happened as of May 25th.

7        THE COURT:   But there had already been a class action

8  filed --

9        MS. MILLER:   Absolutely, Your Honor.

10:29:05  10        THE COURT:   -- where AutoLoop was a part of that

11  class.

12        MS. MILLER:   They were a standalone.   They were like

13  Cox and MVSC and Authenticom, they were suing individually.

14        THE COURT:   Okay.

10:29:14  15        MR. NEMELKA:   The only change that happened after May

16  25th is that the vendor -- that the AutoLoop complaint became a

17  vendor class complaint, and all of the other cases had been

18  filed.

19        MS. MILLER:   Your Honor, we're happy to have you read

10:29:24  20  the briefing on the schedules that were submitted.   You will

21  see that Judge St. Eve specifically changed the order to

22  require strict compliance with local Rule 37.2 as it relates to

23  the service of discovery requests and motions to compel and

24  with respect to non-governmental privilege logs.   And as Your

10:29:42  25  Honor noted, there's no separate provision for interrogatories

1     and anything else.  So I think the judge was very aware of what
2     she was doing.
3            THE COURT:  I mean, you have to be aware of the
4     culture in the individual district that you're in, I'm just
5     telling you that.  And, you know, I routinely enter orders that
6     say I think something like, written discovery requests -- or
7     written discovery is to be severed by "x" date or written
8     discovery requests are to be served by "x" date, and the
9     parties in these cases understand that's interrogatories and
10    requests for production.
11           But I have to go back and see where you are, because
12    I'm hearing there's cognitive dissidence here, and maybe it was
13    just everybody was moving very quickly at that point in time,
14    but to me if the intention was to allow interrogatories to be
15    served outside the schedule that was put in the case management
16    order on May 7th, it should've been set someplace.  I mean, she
17    says, "Deadline to file motions to compel, if any, after strict
18    compliance with local Rule 37.2."  She doesn't say -- well,
19    okay, I have to go look at this stuff.  Hold on for one second.
20           (Brief pause).
21           THE COURT:  To me, you're in the same position as you
22    were when I was talking with you in October.  There's a game of
23    chicken going on here.  There's a real game of chicken going on
24    here.  And I don't know whether I want to -- you know, the
25    question is, what does it mean to take the bull by the horns

1    there.   There are judges that would take over your case right

2    now and tell you exactly what you're going to do and when

3    you're going to do it.   When I was a lawyer, I hated that.   I

4    always, as a lawyer, wanted to be able to control my case as

10:31:48    5    much as possible and be able to have the judge cooperate to

6    that extent with me, and that's a little bit of what I mean by

7    what's going on here.

8         Let me review my notes, because we're going to have to

9    end soon.

10:32:35    10         (Brief pause).

11         THE COURT:   You know, I'm just going through the list

12    of issues here.   I think the better procedural vehicle

13    defendants, I'm sorry to make more work for you, but if you've

14    got discovery responses coming due on stuff that you have not

10:33:02    15    yet moved for a protective order, I need a short motion for a

16    protective order on that; okay?   Because I don't like just not

17    answering some stuff.   I think you got --

18         MS. MILLER:   We're happy to file one, Your Honor.

19    When would you like that?

10:33:16    20         THE COURT:   You got to file something short.   It

21    doesn't have to be crazy.   I'll decide what I want to do in

22    terms of briefing on that.

23         MS. MILLER:   When would you like that, Your Honor?

24         THE COURT:   As soon as you can do it.

10:33:25    25         MS. MILLER:   Not a problem.

1         THE COURT:  I mean, you should do it before your

2 discovery responses are due.

3         MS. MILLER:  Not a problem, Your Honor.

4         THE COURT:  You'll deal with this issue about the

5 discovery of the data security stuff.  Extension of discovery

6 schedule, aside from the experts is premature right now.  It's

7 going to have to happen sometime in the new year, at least to

8 address it once I know what -- once everybody knows what deps

9 are in the can.

10         So on the clawback stuff, real briefly.  I read this

11 stuff; okay.  I need a hearing on it.  I need to have an

12 in-person hearing.  I'm looking at the documents, I see what

13 you've got in the privilege log, but I don't have great

14 explanations as to why these things are being withheld.  Some

15 are clearly privileged, some I don't have a clue as to why it's

16 privileged.  Some of them are, as I see it, transmission

17 e-mails.  What I don't know is, on some of theses, whether the

18 attachment is being withheld and whether the attachment itself

19 is a privileged document or not.  And so I've been struggling a

20 little bit with how I want to address this with you and then

21 when I could have a hearing and I've just been slammed, but I'm

22 going to have to set an in-court hearing.  What I normally with

23 that is, I would have Brenda send out several dates to counsel

24 and then we'd have to see when I can get you in.

25         (Brief pause).

10:33:34
10:33:58
10:34:20
10:34:42
10:35:08

1    THE COURT:  Plaintiffs' motion to compel under
2    advisement on the data security, data integrity and system
3    performance.  Is the only thing waiting on that a hearing or
4    are you talking about that amongst yourselves?

5    MR PROVANCE   Yes, Your Honor.  There have been two
6    meet-and-confers.  In your ruling, you overruled the
7    plaintiffs' objections, I guess categorical, for producing any
8    discovery on these topics, which you ordered the parties to
9    meet and confer about scope, particularly as to the search
10   terms that the plaintiffs were refusing to run.

11       We have had two meet-and-confers about those issues.
12   What's happened is that issues such as syntax errors in the
13   search terms, which we wanted to address in June, July, August
14   before the motions deadline, they never got addressed because
15   the plaintiffs were categorically refusing to talk about them.
16   So we've had to talk about, you know, what are the syntax
17   errors in some of the search terms.  We've been asked to
18   correct them rather than the plaintiffs.  We believe we've done
19   that now.  We're still trying to figure out what the burden is
20   on the additional search terms that we proposed in May.  We
21   don't have an answer to that at this time.

22       We are also trying to understand what documents the
23   plaintiffs have already reviewed.  If they reviewed those
24   documents to identify things that were responsive to the
25   document requests that they objected to or if they're going to

1    have to look at those documents again now that their objections

2    to those particular ones have been overruled.  Those issues are

3    still outstanding, we don't have resolution to them, but the

4    parties have met and conferred and I believe are planning to do

5    so again.

10:37:05

6              THE COURT:  Well, I guess what I would like to say is,

7    I don't think I want to engage with this until I know what I

8    have to decide.  So as soon as you feel like you've run the

9    meet-and-confer process to ground on that and you have a

10   schedule for presenting it to me either in a joint filing or in

10:37:17

11   dueling filings, let Brenda know and I'll set that schedule,

12   but I don't want to set a date for me to engage with this if I

13   don't know what I'm supposed to engage with in terms of burden

14   and structure.  So I don't feel a need to set something on that

15   right now.

10:37:40

16             MS. MILLER:  And we're perfectly happy to do that, and

17   we'll try to bring it to Your Honor as expeditiously as

18   possible, because, obviously, we're trying to get these

19   documents because we need them for depositions.

20             THE COURT:  Yeah.  Give me one second here to gather

10:37:51

21   my thoughts.  I don't know that I can give you any dates on

22   this stuff, but I want to make sure I'm looking at everything

23   that I need to be looking at.

24             I have people set at 10:45, right?

25             THE CLERK:  Yes.

10:38:11

1    ( Recess. )

2         THE COURT:  You can sit, I'm going to stand.  I'm

3    tired of sitting.  After three joint replacements, I need to

4    stand every once in a while.

10:42:30  5         Okay.  I actually think from reviewing my notes, we

6    actually covered everything that I think we needed to cover

7    today.  Here's where I am on this, with respect to plaintiffs

8    recently served discovery, I'm going to deal with that on these

9    motions for protective order.  There's one motion that's a

10:42:47  10    protective order.  Defendants are going to file another one.

11    If that one needs to be briefed in any way more than what

12    you've already given me in the notices for this hearing, you

13    could agree to a schedule for that.  I would bet it doesn't

14    have to be, but I don't know, I'll leave it to you.  Right now,

10:43:11  15    I'm not taking over your case from you, because I always think

16    it's better for the lawyers to be able to litigate the case and

17    try it the way they like to do it without a judge who may not

18    have all the pieces in his or her mind, but I'm going to deal

19    with that discovery on the motion for protective order.  And

10:43:31  20    I'm going to go back and I'm going to read those earlier

21    briefs.

22         I will also say that this is an opportunity for you

23    all to talk; okay.  There are some things going on here, and I

24    don't fully appreciate them all, but I don't know that a world

10:43:53  25    in which there's a fast locomotive going down to come to trial,

1    coexists really well with a world where we're now starting
2    written discovery again and trying to get all your depositions
3    done and try to get all these other documents produced, I don't
4    know that.  You could talk to each other.  I'm not going to
5    force that conversation.  If there are adjustments to a case
6    management schedule that need to be done, you can propose them,
7    all right.  Or you could propose, you know, we've talked about
8    this but we disagree about that.  But I think some of this is
9    within the realm of things you could talk about.
10           So the discovery issues, I'm going to deal with on a
11   motion for protective order and you could also talk about how
12   those fit into a larger schedule.
13           On the issue of the motion to reconsider, Reynolds is
14   going to think about whether you want to file something on the
15   19th or whether it's a scope issue.  And if you file something
16   on the 19th that also includes scope, you got to give both
17   sides a little opportunity to tell me what's going on with
18   scope; okay?
19           And if you need more time to file something about
20   scope, you could agree with that, too, but just I would like
21   you to file something so I know when stuff is coming.  It could
22   even be a stipulation or, you know, agreed briefing schedule,
23   or something like that, but I need to know when that stuff is
24   coming in.
25           I will set a date for a hearing on the clawback issue.

10:44:14
10:44:35
10:44:53
10:45:09
10:45:20

1   The privilege issue that I talked about, I have a lot of balls

2   in the air right now in the early part of next year, so I got

3   to figure out when I could do that. I'll have Brenda send a

4   proposal to you with respect to that and we'll get a date that

5   works.

6   When you have run to ground the data security, data

7   integrity and system performance issue, file something, either

8   one document that says this is the pro and con on this, this is

9   what each side says, or give me a briefing schedule and I'll

10   enter it; okay. Because once you've run that to ground, then I

11   may need to get involved. And from either side's perspective,

12   if you can't talk to each other on this and somebody wants to

13   say, we can't talk, we want a hearing on this or something, let

14   me know. I prefer you talk.

15   I think I know all the motions in front of me. I do

16   agree that some of this stuff is going to become a little bit

17   clearer once you got the motions to dismiss decided. And I'm

18   sure Judge Dow is doing his best to get those to you. I think

19   once we have that and after people have been able the review

20   it, if the case is still here, we'll know a lot more about what

21   the case looks like, and some of these things can then fall

22   into place a little bit better, I recognize that. I don't feel

23   a need right now to have a hearing on a case schedule until we

24   see some of that. Mr. Nemelka, I'll hear from you one second

25   on that.

1    In terms of an extension of discovery schedule, again,

2    once we get to that point, I'm hoping that we have that

3    discussion after there's a motion to dismiss ruling, but if I'm

4    going to consider any extensions of the schedule, fact

5    discovery as it currently exists, I'm going to have to have a

6    lot more information about what's happened already, what hasn't

7    happened, why it hasn't happened, what needs to happen, and how

8    much time people feel we're going to need to have; okay.

9    Anything I haven't dealt with right now? I mean, I

10   know I haven't dealt with some stuff, but at least I have

11   addressed it in terms of some order.

12             MS. MILLER:    Not from our perspective, Your Honor.

13             MS. WEDGWORTH:    Not here, Your Honor.

14             MR. NEMELKA:    No, Your Honor.   We just raised the

15   issue about the depositions that defendants have noticed -- or

16   taken a notice of 15 depositions, 14 of which are from my

17   clients and only one from the dealership and we -- you know,

18   they said they needed 30, and we were wondering if we could

19   have it more proportional.   We were just wondering if the Court

20   had any thoughts on that.

21             THE COURT:    I don't.   I mean, that really just soft.

22   Yeah, that's what they've done.   I mean, I hear what you're

23   saying, you're kind of throwing dirt on them that they said

24   they wanted a proportional and now they're not doing it

25   proportional.   I don't care, they got a number of depositions.

1    How they allocate them is up to them, or whether they're going

2    to ask for more, I don't know, but I'm not going to deal with

3    it now.

4              MR. NEMELKA:  Okay.

5              THE COURT:  But that makes me step back for one second

6    because at some point during this hearing I was going to ask

7    each side, what did you want me to do?  From the plaintiffs'

8    perspective, what did you want to come out of here with?  So

9    tell me.

10             MR. NEMELKA:  We wanted not necessarily an order, but

11   a suggestion from the Court that they should use their

12   depositions more proportionally as they said they would.

13             THE COURT:  Okay.  I refuse to do that; okay.

14             MR. NEMELKA:  Okay.

15             THE COURT:  Next thing you want to come out of here

16   with?  I mean, when you were taking a shower this morning, what

17   were you thinking you wanted to have happen?  I mean, I just --

18             MR. NEMELKA:  I understand.

19             THE COURT:  I mean, I'm just wondering, because I

20   don't know that --

21             MR. NEMELKA:  The other thing that we'd like to come

22   out of here is, I would like to have that discussion with

23   defendants about the dates on the case schedule, and if there's

24   any room for interrogatories, or, you know, just very limited

25   number, I would like to have that discussion with defendants.

1    You know, we may disagree, but we do feel like -- and

2    understood that they've been waiting for motions to dismiss

3    rulings, but we do think that we could at least start those

4    discussions before those rulings come down.

5            THE COURT:  Well, I would say this to defendants on

6    that, to the extent -- I understand a response that says, we

7    can't really have this discussion until we know what the

8    motions to dismiss, how that's going to affect the shape of the

9    table.  But I also understand, try to talk about this now.

10           I mean, there's several moving pieces here, one of

11   them is all this discovery that the plaintiffs want to serve;

12   okay.  And you're response to that is:  (a), it's untimely.

13   But, (b), we can't do this and take all the depositions at this

14   point in time.  I personally, and I think most judges, and I

15   think Judge Dow, has a preference for deciding cases on the

16   merits rather than on a foot fault or something like that, or,

17   you know, too many times you broke the racquet or something

18   like that.  So there's an opportunity here for you to talk

19   about this, but both sides have to give something on that;

20   right?

21           I mean, if the plaintiffs come in and say we want the

22   current case schedule, we're not willing to move on anything,

23   we want you to respond to all the written discovery that we

24   just served and we want to be done on April 15th so Authenticom

25   can get out of Dodge and try this case, then you're going to

1  have some problems, I think, and you're not going to have a
2  receptive audience.

3              But I would encourage that discussion to happen. I
4  would encourage defendants to have the discussion as one thing
5  being, you know, this is all subject to what happens with the
6  motions to dismiss because, obviously, you don't have to do
7  anything if your motions to dismiss are granted in full, but if
8  they're granted in part, then there's some stuff that's
9  happening and then you got counterclaims.

10             But I think having that discussion and having you guys
11 control the case rather than having somebody here, because
12 although I'm not taking control of your case right now, I
13 could, okay, and so could Judge Dow, and that I don't think is
14 the preferred way to go.

15             Okay. So anything else from the plaintiffs that you
16 wanted to come out of here with?

17             MS. WEDGWORTH:  You addressed the issues on the expert
18 reports, those dates have to move given the discovery schedule
19 set.

20             THE COURT:  Okay. So on the defendants' schedule,
21 other than an order that quashed all plaintiffs' discovery
22 served, which I didn't do but at least I created I hope a
23 little bit of a rational process on that, what did you want to
24 come out of here with?

25             MS. MILLER:  Short of that, Your Honor, I think we've

1   addressed the major issues.   We now understand -- assuming we

2   file our motion for protective order, that will stay our

3   obligations to respond to the interrogatories until such time

4   as Your Honor rules.   So long as that's the understanding, then

5   I think Your Honor has addressed the things that we needed to

6   have addressed at this particular moment.

7          THE COURT:   I usually take the position that a firing

8   of a motion, I don't know if it stays it but it's a response

9   and then the Court has to do something about it.   And, again,

10  if there's a briefing schedule, let me know.

11          What I would like you to do, if you can, is send an

12  e-mail to Brenda, please, and talk about it together.   On the

13  docket of like 400, 500 stuff now, could you just agree amongst

14  yourselves what documents that have been filed on the docket

15  are relevant to the setting of that case management schedule on

16  May 7th so that I'm sure that I'm reading the right stuff and I

17  don't have to hunt about that.   And if there was a hearing date

18  or more than one hearing date at which these things were

19  addressed but we don't have a transcript on them, could you at

20  least tell me what those hearings dates are so I could get

21  those transcripts prepared.

22          MS. MILLER:   We will, Your Honor.

23          THE COURT:   Okay.   And could you do that -- I know

24  some people are traveling, but I'd love to have it today or

25  first thing tomorrow morning.

62

1        MS. MILLER:   We'll make it happen, Your Honor.

2        THE COURT:   Okay.

3        MS. WEDGWORTH:   Same here, Your Honor.

4        THE COURT:   Okay.   Thank you.   I think I have to go to

10:53:23  5  my other cases now.

6        MS. WEDGWORTH:   Thank you, Your Honor.

7        MR. NEMELKA:   Thank you, Your Honor.   Appreciate it.

8        THE COURT:   Safe travel back for those of you who are

9  traveling.

10:53:38  10        *     *     *     *     *     *     *     *

11

12

13  I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

14     RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER

15

16    /s/ Blanca I. Lara        December 13, 2018.

17

18

19

20

21

22

23

24

25