# **EXHIBIT C**



Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

March 15, 2019

**Matthew D. Provance**
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

**By E-Mail**

Matt Kupillas
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

Re: *In re Dealer Management Systems Antitrust Litig.*,
MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Matt:

I write regarding the interrogatories that Dealership Class Plaintiffs served on March 8, 2019 (with a duplicate copy served again on March 11), purportedly in response to CDK Global, LLC's counterclaims. As you know, much discovery in this MDL has already been propounded to all parties, and in particular to CDK. We will not recount the statistics in this letter, although they are in our view a compelling indicator that enough written discovery has been served in this case. We also believe, based on the Court's prior rulings and its statements made in open court, that the Court tends to agree.

Therefore, although CDK could certainly propound additional discovery on the Dealership Class Plaintiffs related to its counterclaims, in the interest of facilitating an orderly and timely end to fact discovery in this MDL, CDK is willing to forego such additional discovery and rely on the written discovery that it previously served on the Dealership Class Plaintiffs on May 25, 2018 in accordance with Paragraph B(6) of the Case Management Order (Dkt. 166). We believe that Dealership Class Plaintiffs should do the same and rely on the extensive written discovery that they and the other Plaintiffs in this MDL have already propounded on CDK—which in our view will provide the parties the information they need to address CDK's counterclaims. We communicated CDK's position to Dealership Class Plaintiffs during the parties' in-person meet-and-confer held on February 27, 2019. Although the parties were not in agreement at that time, we understood that the Dealership Class Plaintiffs were willing to engage with CDK further in an effort to potentially agree on the parameters for any limited, additional (and bilateral) discovery on CDK's counterclaims that was not duplicative of discovery that has already been served. We are disappointed that Dealership Class Plaintiffs elected not to engage in those discussions and instead chose to serve their discovery requests unilaterally.

It is also clear to us that Dealership Class Plaintiffs' March 8 discovery requests are duplicative of discovery that they have already served. Interrogatory No. 1, for example, seeks the detailed

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Matt Kupillas
March 15, 2019
Page 2

identification of all "public statements" by CDK employees from 2011 to the present concerning whether Dealers were permitted to provide their DMS login credentials to third parties. Interrogatory No. 2 is similar. Plaintiffs have already served extensive written discovery on this topic. *See, e.g.*, Dealership Class Plaintiffs' RFPs 9 and 29; Authenticom RFPs 20, 21, 22, 23 and 42. Interrogatory No. 3 seeks the detailed identification of all instances from 2011 to the present in which CDK attempted to enforce certain provisions in its DMS customers' Master Services Agreement ("MSA"). Plaintiffs have already served extensive written discovery on this topic. *See, e.g.*, Dealership Class Plaintiffs' RFP 18; Authenticom RFPs 40 and 41. Interrogatories No. 4, 5, 6, and 7 seek the detailed identification of all instances from 2011 to the present in which CDK, DMI, or IntegraLink used dealer-provided login credentials to access or extract data from a DMS. Again, this was the subject of many of Plaintiffs' earlier discovery requests. *See, e.g.*, Dealership Class Plaintiffs' RFP 31; Authenticom RFPs 9, 16, 17, 18, 19 and 100. We could go on. The bottom line is that Dealership Class Plaintiffs could have served these interrogatories on May 25, 2018 as contemplated by Paragraph B(6) of the Case Management Order and this appears to be, at least in part, an attempt get around the Court's prior rulings on the meaning of Paragraph B(6) by serving additional affirmative written discovery under the guise of "counterclaim" discovery. Dealership Class Plaintiffs have already received many documents from CDK on these same topics. Moreover, Dealership Class Plaintiffs have already questioned numerous CDK witnesses about these topics extensively during their depositions, and they will have an opportunity to continue to do so at the depositions of CDK witnesses that are upcoming as well as during CDK's upcoming Rule 30(b)(6) deposition.

The interrogatories are also incredibly burdensome, purporting to require CDK to "identify" each and every instance of numerous events across an 8+ year period. Realistically, the only way that CDK could attempt to answer these interrogatories would be to review and analyze the 1,000,000+ documents in its production, which, of course, are equally available to Dealership Class Plaintiffs as they are to CDK.

For these reasons, we request that Dealership Class Plaintiffs withdraw their March 8 interrogatories. Please let us know by Friday, March 22 if the interrogatories will be withdrawn. If Dealership Class Plaintiffs will not withdraw their interrogatories, then CDK will seek protection from the Court, as it did regarding Individual Plaintiffs' Second Set of Requests for Production. Should the Court rule that Dealership Class Plaintiffs' additional discovery requests can proceed, then CDK will promptly serve its additional discovery requests, as well.

\* \* \*

We appreciate your consideration of the foregoing and will await your response.

Sincerely,

*/s/ Matthew D. Provance*
Matthew D. Provance
cc: MDL 2817 Counsel of Record

731666937