# EXHIBIT 2

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900

FACSIMILE:
(202) 326-7999

March 14, 2019

Daniel T. Fenske
Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606

Dear Dan:

      I write on behalf of Cox Automotive, Inc. in response to your March 6, 2019 letter.

**I.    CDK's Requests For Counterclaim Discovery**

      As an initial matter, CDK's requests for counterclaim discovery are untimely. Cox Automotive filed its complaint on December 11, 2017, but CDK did not file its counterclaims until more than a year later on February 15, 2019. Moreover, CDK did not seek discovery with respect to these counterclaims until March 6, 2019, less than two months before the close of fact discovery. Nothing prohibited CDK from filing its counterclaims at an earlier date and seeking discovery on those claims at the appropriate time. *See* Wright & Miller, *Federal Practice & Procedure* § 1361 ("[S]hould the defendant file a Rule 12(b) motion simultaneously with the answer, the district court will view the motion as having preceded the answer and thus as having been interposed in a timely fashion."); *Beary v. West Publishing Co.*, 763 F.2d 66, 68 (2d Cir. 1985) ("[N]othing in the rule prohibits the filing of a motion to dismiss with an answer."); *Contois v. State Mut. Life Assur. Co. of Worcester, Mass.*, 66 F. Supp. 76, 77 (N.D. Ill. 1945) (same), *aff'd* 156 F.2d 44 (7th Cir. 1946).

      Nonetheless, Cox Automotive has already produced many of the documents in the three categories raised by CDK's letter, as set forth below.

      **Data Syndication.** As noted in my January 16, 2019 letter, Cox Automotive has already produced documents responsive to RFP Nos. 45, 69-71, and 95-96 consistent with the parties' agreed search protocol.

      **DMS Access.** Cox Automotive would not have intentionally withheld documents relating to Cox Automotive's access to CDK's DMS consistent with the parties' agreed search protocol, including if any were found relating to alleged access through means other than 3PA

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel T. Fenske
March 14, 2019
Page 2

integration and alleged efforts to circumvent security protocols. Given that Cox Automotive denies CDK's allegations on these issues, Cox Automotive is not surprised that CDK has not found any documents on these issues.

**Data License Agreement.** Cox Automotive is not aware of any pending document request for documents relating to the Data License Agreement. CDK's letter cites RFP No. 72, but that request seeks documents relating to the different 3PA Agreement. *See* RFP No. 72 ("All documents related to Your *3PA Agreement* with CDK . . . .") (emphasis added). Moreover, CDK's apparent request for "all" documents related to the Data License Agreement is not proportional to the needs of the case for CDK's counterclaim. The amount in controversy for CDK's claim that Cox Automotive breached the Data License Agreement is *de minimis*. The total contract was for $7.5 million and the vast majority of that amount was for other data not at issue in the counterclaim. CDK's claim concerns only a sliver of data that Cox Automotive did not even commit to provide to CDK but agreed to "meet and confer with CDK, in good faith," regarding "possible" provision of the data. All that being said, Cox Automotive is willing to consider reasonable proposals for discovery on this claim.

**II.    Financial, Pricing, and Switching Data**

As we have explained in letters dated December 10, 2018, and January 3, 2019, Cox Automotive produced documents according to the process to which CDK and Cox Automotive agreed for Cox Automotive's document production, namely the use of specific search terms and custodians and the use of a responsiveness and relevance review. Cox Automotive would not have intentionally withheld any of the financial, pricing, or switching data documents that CDK references in its letter that were reviewed according to that process. In addition, Cox Automotive conducted additional searches for various financial documents requested by CDK (*i.e.*, those listed on pages 2-3 of CDK's November 28, 2018 letter and as set forth on pages 3-4 of Cox Automotive's January 3, 2019 letter). Therefore, Cox Automotive has already fulfilled its discovery obligations as to CDK's requests.

**Revenue, Costs, and Profits.** CDK contends that Cox Automotive's production of financial information (revenue, costs, and profits) is insufficient because Cox Automotive has not provided data on a dealer-by-dealer basis. As an initial matter, CDK's RFPs do not request this information, and Cox Automotive has no obligation to provide it. *See*, *e.g.*, RFP No. 79 (seeking "monthly revenue, costs . . . , and profit" per application but not per dealer). And CDK's March 6, 2019 letter – sent less than two months before the close of fact discovery – is the first time that CDK has asked about this data.

In any case, Cox Automotive's production appears to already contain the data that CDK seeks. Cox Automotive has produced database exports containing revenue information per dealer, per month, per application. Other financial documents (including the Ossining reports referenced by CDK) contain cost and profit data for the specific applications as well as the

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

Daniel T. Fenske
March 14, 2019
Page 3

number of dealers using the applications. *See*, *e.g.*, COX_0116843. That data is sufficient to enable CDK to conduct its own analysis of the cost and profit per dealer. Moreover, Cox Automotive would not have intentionally withheld from production documents attributing specific costs and profits to specific dealerships had such documents been reviewed under the agreed custodians, search terms, and date ranges.[1]

**Data Integration and Extraction Fees.** CDK seeks the integration fees paid by Cox Applications and any integration fees "charged to dealers by each of Cox's applications." As CDK notes, Cox Automotive's production contains documents with this data, and as set forth above, Cox Automotive would not have intentionally withheld any such documents that were reviewed according to the agreed custodians, search terms, and date ranges. In addition, Cox Automotive produced database exports of integration fees paid by Cox Automotive and of the line-item charges made to each dealer by month and by application. The queries that generated these database export included each of the applications at issue and the entire time range requested by CDK.

**Customer Switching and Win/Loss Data.** As with the other categories of information above, Cox Automotive would not have intentionally withheld documents containing switching data or "win/loss" reports. In particular, the Ossining reports (and similar reports) typically contain "churn" and new subscriber data on a monthly basis. *See*, *e.g.*, CDK_0116843; COX_0012084. Notwithstanding that CDK has sought additional information on these topics for the first time less than two months before the close of fact discovery, Cox Automotive will investigate whether additional switching data exists.

Best regards,

*/s/ Dan Dorris*

Dan Dorris

CC: MDL Counsel Email List

---

[1] CDK claims that it is still missing Ossining reports for certain unspecified applications and time periods. Cox Automotive has produced all Ossining reports that it has been able to locate for the relevant time period and applications, except for Kelley Blue Book, Autotrader, and Dealer.com for which Cox Automotive may still produce additional financial data.