1
2
3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

4   IN RE DEALER MANAGEMENT SYSTEMS        )   No. 18 C 864
    ANTITRUST LITIGATION, MDL 2817.        )
5                                          )   Chicago, Illinois
                                           )   April 2, 2019
6                                          )   4:38 p.m.

7
8

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HON. JEFFREY T. GILBERT, MAGISTRATE JUDGE

9
10

APPEARANCES:

11
12
13

For the Plaintiffs:     MR. DANIEL V. DORRIS
                        Kellogg, Hansen, Todd,
                        Figel & Frederick, PLLC,
                        1615 M Street, NW, Suite 400,
                        Washington, DC  20036

14
15

                        MR. ROBERT A. WALNER
                        Milberg Tadler Phillips Grossman, LLP,
                        One Pennsylvania Place, 19th Floor,
                        New York City, New York  10119

16   For Defendant
17   CDK Global:             MS. BRITT M. MILLER
                             MR. ROBERT E. ENTWISLE
                             MR. MATTHEW D. PROVANCE
18                           MS. NATALIE F. WAYNE
                             Mayer Brown LLP,
19                           71 South Wacker Drive,
                             Chicago, Illinois  60606
20

21   For Defendant
     Reynolds:               MR. BRIAN T. ROSS
22                           Gibbs & Bruns, LLP,
                             1100 Louisiana Street, Suite 5300,
23                           Houston, Texas  77002

24
25

PATRICK J. MULLEN, Official Court Reporter
219 South Dearborn Street, Room 1412
Chicago, Illinois  60604
(312) 435-5565

1      THE CLERK:  18 CV 864, In Re Dealer Management Systems

2  Antitrust Litigation for emergency motion hearing.

3      THE COURT:  Okay.  Good afternoon.  I'm in the

4  courtroom, so we have the sound system on to record this

5  hearing.  I'd like counsel to identify themselves for the

6  record if they anticipate speaking during this hearing.  If you

7  are on the phone but don't anticipate speaking but you want to

8  be listed as having appeared of record, send an e-mail to

9  Brenda Renozzi, my courtroom deputy, which is brenda_renozzi --

10  R-e-n-o-z-z-i-- @ilnd.uscourts.gov.  If anybody ever gets this

11  transcript written, then Brenda can share that with the court

12  reporter.

13      And then before you speak, even though you've

14  identified yourself ahead of time, please state your name just

15  so that the court reporter will get all that down, again, if

16  somebody writes this.  So let's go forward.

17      We're here on defendant CDK Global's emergency motion

18  to take Cox's Rule 30(b)(6) data deposition off calendar due to

19  late production of data and unresolved objections.  I don't

20  know what -- I have a courtesy copy of it.  I suppose that

21  would be ECF 610.  Okay.  Go ahead.  Who's for CDK?

22      MR. ENTWISLE:  (Via telephone) Your Honor, you've got

23  Bob Entwisle from Mayer Brown representing CDK.

24      THE COURT:  Okay.  I cannot hear you.  I cannot hear

25  you.  You may be on a speaker phone.  So if you are, could you

1   pick up the headset?

2            MR. ENTWISLE:  Okay.

3            MS. MILLER:  (Via telephone) Good afternoon, Your

4   Honor.  Britt Miller of Mayer Brown on behalf of CDK Global

5   LLC.

6            MR. ENTWISLE:  And Bob Entwisle for defendant CDK.

7            THE COURT:  Are you on a cell phone?

8            MR. PROVANCE:  (Via telephone) Your Honor, also

9   present are Matt Provance and Natalie Wayne from Mayer Brown.

10           THE COURT:  Mr. Province, are all you guys on a cell

11   phone?  Because you're breaking up.

12           MS. MILLER:  We're on a speaker phone, but we will

13   dial in separately if you cannot hear us.  Can you hear me,

14   Your Honor?

15           THE COURT:  You, I can hear, yes, Ms. Miller.  I hear

16   you fine.  So I heard Provance, too, and someone else.

17           MS. MILLER:  That was Robert Entwisle,

18   E-n-t-w-i-s-l-e, also with Mayer Brown.

19           THE COURT:  Right.  Okay.  Good.

20           And I suppose we have somebody here for Cox?

21           MR. DORRIS:  (Via telephone) Good afternoon, Your

22   Honor.  It's Dan Dorris for Cox Automotive and its subsidiary.

23           THE COURT:  Okay.  Anybody else want to state their

24   appearance of record?

25           MR. WALNER:  (Via telephone) Good afternoon.  Robert

1    Walner for the dealership plaintiffs.

2            THE COURT:  Okay.  Anybody else?

3            MR. ROSS:  (Via telephone) Your Honor, this is Brian

4    Ross on behalf of Reynolds.

5            THE COURT:  Okay.  Just chime in if you want.

6        (No response.)

7            THE COURT:  Okay.  Good.

8            Okay.  I had a chance to quickly review CDK's motion,

9    and I understand the issue for a decision is whether the

10   deposition, the 30(b)(6) deposition of the Cox representative

11   goes forward tomorrow.  I know that our dep protocol says a

12   dep, once on the calendar, cannot be moved without agreement of

13   the parties or a court order, and there's no agreement of the

14   parties at this point.

15           So, therefore, Cox is looking -- I mean, CDK is

16   looking for a court order, and CDK would like an order that

17   says they can take this deposition off, not on the date that

18   it's noticed, but after that date and potentially after the

19   close of discovery, which deadline is coming up, I guess.

20           I'm not exactly sure what the alternative is.  So

21   maybe CDK can briefly state its position in support of its

22   motion.  You know, an emergency motion hearing at 4:30 in the

23   afternoon is not always the best place.  Maybe I can ask you

24   questions because I actually have read this.  I didn't see in

25   here when the request for production of these documents

1   actually first was served.

2   MR. ENTWISLE:  Your Honor, this is Bob Entwisle from
3   Mayer Brown.  My understanding is that those requests were
4   served in May of 2018.

5   THE COURT:  Okay.  Then I see the correspondence
6   that's attached here.  So, you know, within the last several
7   weeks there's been back and forth on whether the production is
8   complete and whether certain documents have or haven't been
9   produced, right?

10  MR. ENTWISLE:  That's correct, Your Honor.  I would
11  just hasten to add that there has been other correspondence and
12  attempts to obtain data throughout the fall and then into the
13  early part of the new year.  We only attached to the motion the
14  most relevant and most recent correspondence.

15  THE COURT:  Okay.  What's your position as to what
16  should happen today?  Do you have a date by which you would say
17  the deposition or a date on which the deposition should be
18  taken?  Do you want it to be continued to a date to be agreed
19  or ordered by the Court after you finish making sure you have
20  the documents you need?  What's your position?

21  And let me ask you this before you respond.  Am I
22  breaking up at all?  Because sometimes I have the same problem
23  with microphones in the courtroom.  Can you guys hear me okay?

24  MR. DORRIS:  Your Honor, you're breaking up.

25  THE COURT:  Okay.  I need to put the microphone

1    farther.  Can you hear me better now?

2         MR. DORRIS:  Yes.

3         THE COURT:  Okay.  If at some point I'm breaking up,

4    could somebody just yell or send an e-mail to Brenda?

5         THE CLERK:  Katie is on the call.

6         THE COURT:  Okay.

7         MR. ENTWISLE:  Yes, Your Honor.

8         THE COURT:  Okay.  What do you want?  What do you want

9    to happen here, Mr. Entwisle?

10        MR. ENTWISLE:  Your Honor, what we would like to

11   happen is we'd like an opportunity to assess the production

12   that was provided to us.  We want to be able to consult with

13   our experts on it.  Then we want to either do one of two

14   things:  address any issues if we can with Cox and get a

15   complete production before going forward with the deposition,

16   or if we're not able to do that, raise them with the Court just

17   to have those objections resolved.

18        THE COURT:  Okay.  And when -- I can't really tell.

19   When did you first start noticing that there were problems?

20   When did you first start engaging Cox with this?  When did you

21   start realizing there was a problem?  Was it early March, which

22   is the first correspondence I'm seeing here, like March 6th or

23   something?

24        MR. ENTWISLE:  Your Honor, my understanding is that

25   this has been an ongoing issue.  There's been ongoing

1    correspondence where we think we've gotten the production and

2    then we look and we determine that there are gaps or there are

3    items missing.  So I've come into the case more recently, but

4    it was on March 6th where, you know, we laid out that this is

5    the -- these are the open items that we believe that we're owed

6    and raised that with opposing counsel.

7        THE COURT:  Okay.  Am I right that April 15th is the

8    close of fact discovery?

9        MS. MILLER:  No, Your Honor.  The answer is that we

10   per your order -- this is Britt Miller.  Per our last status

11   conference in front of Your Honor, the parties submitted a

12   stipulation of revised dates to Judge Dow.  It hasn't made it

13   to the top of his stack yet, so he hasn't signed it.  But the

14   agreed date that is currently submitted is a close of fact

15   discovery of April 30th.

16       THE COURT:  Okay.  Is that a stipulation that includes

17   stuff other than fact discovery, other than discovery, which is

18   why it went to --

19       MS. MILLER:  Yes, Your Honor.  Per our last appearance

20   in front of Your Honor, it includes a revised date of the close

21   of fact discovery as well as revised dates for the different

22   expert disclosures that were contemplated by the original case

23   management order.  In the stipulation, as you may or may not

24   recall, but in the stipulation and in our appearance before

25   Your Honor, we listed out the number of things that were

1    outstanding and, of course, as you would expect, reserved our

2    right to come back and seek additional time from Your Honor in

3    the event situations like this arose and discovery could not be

4    completed before April 30th.

5           THE COURT:  Okay.  You guys submitted this to Judge

6    Dow to his proposed order file?  Because I don't see it on the

7    docket anyplace.

8           MS. MILLER:  I don't have the docket sitting in front

9    of me.  It was filed as a stipulation, so it should appear on

10   the docket and I believe an electronic copy was sent.  But I'll

11   have to go back and double-check to see if an electronic

12   version was sent to his proposed order, but it was certainly

13   filed as a stipulation on the docket.

14          THE COURT:  Okay.  Is it 553, stipulated amended case

15   management order?

16          MS. MILLER:  That sounds right, Your Honor.  Again, I

17   don't have it sitting in front of me, but that sounds correct.

18          THE COURT:  Yes, I see it.  So okay.  I mean, I can

19   look at it.  I mean, it wasn't noticed at all before either of

20   us.  Do you know that he's aware of this?

21          MS. MILLER:  There --

22          THE COURT:  Because I could sign this.

23          MS. MILLER:  Fair enough.  Your Honor, again, I will

24   have to double-check to see whether or not it was sent directly

25   to his proposed order but, if not, we'll promptly follow up

1    with his clerk and alert her to its existence.  The judge has

2    previously encouraged us that to the extent a stipulation is

3    not entered that we can approach his clerk and remind her that

4    it is still pending and that they will address it.  So after

5    this call, well, I suppose Judge Dow will probably be leaving

6    in the short term, but we will certainly reach out to his clerk

7    in the morning and remind her and ask that she remind the judge

8    that it is pending before him.

9          THE COURT:  Okay.  Because it looks like it was filed

10   at least of record on March 5th.  Okay.  But you're proceeding

11   under the understanding of that.  That's fine.

12         All right.  Let me hear from Cox.  Mr. Dorris?

13         MR. DORRIS:  Sure, Your Honor.  I apologize that you

14   don't have a written response from us.  We frankly just learned

15   of CDK's desire to move the deposition earlier this morning,

16   but we are happy to submit a written response.  If you allow me

17   two minutes to step back and explain what this dispute is about

18   from our point of view, I will try and be brief.

19         This is about a 30(b)(6) deposition of Cox that's

20   supposed to occur on Thursday.  It's on data issues.  The

21   topics generally ask Cox Automotive to interpret certain types

22   of financial documents that Cox Automotive has already produced

23   and asks questions about the manner in which Cox maintains

24   data.  It's not a fact deposition.  It really is just a person

25   in the financial department explaining certain financial

1 documents.

2      CDK has had these documents for a long time.  That's
3 how it's identified the documents for the deposition and how
4 it's identified the topics for the deposition.  We didn't learn
5 of any complaint that CDK was not able to go forward with the
6 deposition until 11:00 a.m. this morning, and the reason that
7 CDK has given why the deposition should be postponed is this
8 March 29th production.  We don't believe that the documents are
9 material to the deposition.

10      This production was made in response to CDK's request
11 that we produce additional versions of financial documents that
12 we've already produced.  So CDK may have the version of the
13 document from January, February, and March, but the April one
14 is missing from the production.  So we went back, we tried to
15 find those documents, and we produced additional versions.
16 Those aren't material to the deposition.

17      The deposition asks Cox's financial people to explain
18 the documents.  No particular version is really important to
19 the deposition.  So that's what's at stake, and the volume of
20 that production is frankly quite modest for this case.  There
21 are 2,000 families of documents -- and that's e-mails plus
22 attachments -- for comparison.  Another defendant, CDR, which
23 is represented by CDK's counsel as well, has produced over
24 80,000 documents in their own deposition discovery, and like I
25 said most of these documents are just cumulative with other

1    documents.

2           But to avoid any dispute about prejudice, we've made

3    an offer to CDK that if it does find something new in the March

4    29th production that it is not able to ask the witness

5    questions about because of the timing of the production, we're

6    glad to entertain responding in writing to those questions

7    after the deposition.

8           This is really similar to an offer that CDK itself

9    made to the plaintiffs in this case when it suggested that

10   these types of data questions should be resolved by written

11   questions.  These are interpreting financial documents.

12   They're not fact witness questions.  If there are any follow-up

13   questions, we can just address them in writing.

14          Now, to why we don't want to postpone the deposition,

15   the parties have 29 other depositions scheduled this month.

16   Trying to reschedule a deposition is a logistical challenge in

17   itself.  Plus the Cox Automotive representative has already set

18   aside a date for the deposition on Thursday and is prepared to

19   testify.  It's not fair to that witness to have to set aside

20   another day later in the month.

21          And my understanding from CDK's request is that they

22   want the deposition after April 15th.  The witness is not in --

23   is traveling the week of April 15th and is traveling the week

24   of April 30th.  The only week available on her schedule is the

25   week that there's also another two-day deposition of Cox, so

1  another two-day 30(b)(6) deposition of Cox.

2       So practically, I'm not going to say it's impossible

3  but quite prejudicial to reschedule it, and there are four

4  different sets of counsel scheduled to travel tomorrow morning.

5  To try and reschedule the deposition, there's just no reason to

6  do that given our offer to respond to any follow-up questions

7  in writing.

8       THE COURT:  CDK --

9       MS. MILLER:  Your Honor --

10       THE COURT:  CDK, let me ask you a question.  Why is a

11  solution here not to take the deposition, continue to look at

12  the documents and if there are -- you know, I recognize the

13  weasel word on this -- if there are documents that are new or

14  not produced before, I suppose that could be subjectively

15  determined, but follow up with written questions, or if you

16  feel written questions would be insufficient because of the

17  nature of the documents that you're looking at, convene the

18  deposition even after the deposition close date either by

19  agreement or on a motion to me and, you know, potentially

20  allocate the cost of that deposition if late documents required

21  it to Cox.

22       But why wouldn't it be to get on the plane, take the

23  deposition to the best of your ability, and if there are

24  additional documents that surface that need to be inquired into

25  after you've done the first inquiry versus, well, we did our

1    inquiry and we really don't want to ask him any more about

2    these additional documents now that we understand the data

3    situation, but if there are things that need to be asked about,

4    get an answer in writing or by agreement redepose the person at

5    a mutually convenient time or get a motion to me that says the

6    person needs to sit for additional deposition and Cox won't

7    allow it?  That at least allows the deposition to go forward as

8    it's scheduled now, and it may be you'll get a lot of stuff

9    accomplished.

10            MS. MILLER:  Your Honor, this is Britt Miller.  Thank

11   you.  We absolutely appreciate the Court's suggestion.  I want

12   to briefly say we take issue with a number of the statements

13   Mr. Dorris just made with respect to the nature and

14   characterization of the documents that were produced and his

15   statements regarding CDR, which as Your Honor will recall

16   wasn't even served discovery requests until much later than

17   everyone else.

18            On the deposition on written questions point,

19   Mr. Dorris is correct that we had previously offered a mutual

20   exchange of depositions on written questions with respect to

21   data so that we could avoid potentially having to take oral

22   depositions.  That offer was refused by plaintiff, and as a

23   result we as defendants ultimately had to notice the 30(b)(6)s,

24   the oral 30(b)(6)s, and use a number of their (inaudible) party

25   depositions to notice these.  So that's why we had to notice

1  these (inaudible).

2      So the belated offer to answer additional questions on
3  written questions, although appreciated, we are concerned that
4  that is the mechanism by which we largely got ourselves in this
5  position in the first place, which was served objections,
6  responses, meet and confer, letter writing campaigns, and the
7  back and forth.

8      Now that Your Honor has introduced the possibility of
9  us proceeding on Thursday, seeing how far we can get, our
10 understanding that we may not have resolved either the nature
11 of the documents or there are still outstanding objections that
12 Cox had lodged that it will and will not prepare its witness to
13 testify to, so that the parties can proceed on Thursday, get as
14 far as they can, and then continue to work through any
15 remaining issues that come out of that deposition when they are
16 related to the objections or related to the documents, and then
17 come to Your Honor if we cannot agree on another date whether
18 inside the April 30th time period or outside of that time
19 period, to start that deposition again and resolve those
20 outstanding issues, CDK would be amenable to that.

21     It was our understanding from our conversations with
22 the plaintiffs that that was something that they were not
23 willing to entertain, and it was that this was our one and only
24 shot at it.  And if we proceeded with the deposition, they
25 would be willing to, to use Mr. Dorris' word, entertain, not

1  necessarily respond to, but entertain questions on -- a

2  deposition on some questions afterwards or follow-up in

3  writing, but that they would not agree to producing a witness

4  again to answer any follow-up questions.

5          If that's a possibility and Your Honor has indicated

6  that you're willing to entertain such a motion, I'll be happy

7  to proceed in that route to try to be as efficient as possible.

8  Of course, if the witness is able to answer all of our

9  questions, then we don't -- then it becomes a moot point.

10          But we brought this motion out of concern that if we

11  do not bring the motion and, in fact, we're required to go take

12  the deposition on Thursday, we would thereby, at least from

13  plaintiffs' perspective, be estopped from taking any further

14  deposition on data at all.

15          THE COURT:  Well, based on what I know now, which is

16  just the motion that CDK filed and what I've heard you talk

17  about, you know, I'm alternating between ruling and trying to

18  negotiate or facilitate a resolution here.  Okay?  I mean, if I

19  have to rule, I'll rule.  If I could facilitate a resolution,

20  then I can do that.

21          I think based upon what you've said, Ms. Miller, and

22  also my own experience in this area both as a lawyer and a

23  judge, the written question mess can be a mess, particularly if

24  you don't have two willing players on it.  So, you know, I

25  almost would reverse the presumption here.  I think there's

1    a --

2            I mean, I don't know how much you don't know, CDK,
3    about what you need to question about and what the issue is,
4    but I appreciate Cox's position is:  We've got a lot of deps to
5    take.  We're coming down to the end of this process, and even
6    if you don't have perfect knowledge, perfect is the enemy of
7    the good here.

8            But, I guess, I would reverse it and say that I would
9    allow you, given the circumstances that I now understand, which
10   is that there has been fencing about the 30(b)(6) topic areas
11   and there's disagreement at the very least but also some real
12   issues about whether some documents have been produced, I'd say
13   go ahead with the deposition and that I would allow CDK to
14   reconvene the deponent, the 30(b)(6) deponent, unless the
15   parties can agree that follow-up questions can be done in
16   writing.

17           And I would reserve judgment as to who pays for the
18   reconvened deposition, you know, but I would say that if Cox is
19   being unreasonable either in producing documents or in
20   producing a witness on particular topics or in answering
21   questions, at least it's conceivable to me that the second
22   deposition Cox would have to pay the cost of it as something.
23   I'm not saying that that would happen now, and that would
24   probably have to happen by motion.

25           But I'd rather have the deposition go forward if there

1    is enough that examination can be conducted on that CDK knows
2    rather than postpone an entire deposition because you don't
3    know everything.  I'd rather have you go forward on what you
4    know, continue to figure out what you don't know and whether it
5    even matters with the -- and, you know, I would say then that
6    the deponent can be redeposed either before or after or the
7    deposition wouldn't -- you know, redeposed or continued either
8    after the close of discovery or before unless the parties can
9    agree that additional questions can be answered in writing.
10          And if anybody has a problem with what's going on, you
11   know my address just like you found me now.  I appreciate
12   you're not finding me as much, but I get why it was necessary
13   to come in on this.  I guess that's my proposal on the
14   facilitative end and, you know, even on the judicial resolution
15   end, too, depending upon what you guys tell me.
16          MS. MILLER:  Your Honor, for CDK, we're happy to
17   prepare -- to proceed in that manner.
18          MR. DORRIS:  This is Dan Dorris on behalf of Cox.  The
19   only concern I have with the proposal -- and I understand if
20   that's Your Honor's rule and we will go with it -- is we think
21   there should be some showing on CDK's behalf of the reason why
22   the deposition should be reconvened.  We don't think these
23   documents are material to the case, and if there's an automatic
24   reconvening of a deposition it's just a second bite at the
25   apple to ask questions that could have been asked at the first

1  deposition.

2  THE COURT:  Yes, and that's not my intention.  I
3  understand the apprehension about that, but again I think I'm
4  trying to be clear that the deposition would be reconvened
5  unless -- I don't even have to say the parties agree -- unless
6  the follow-up questions can be conducted efficiently in
7  writing.

8  So, you know, I'm giving CDK the option, and maybe
9  they'll say now they don't agree with what I'm saying if I'm
10  changing this, but I don't think it's a real change.  But what
11  I'm saying is I'm going to give them -- I don't know what the
12  issues are yet, and I don't know if there's going to be a need
13  for there to be a reconvened deposition versus answers in
14  writing.  Sometimes these things look a lot more serious at
15  this end of the telescope than they look at the other end once
16  you're there.

17  But, you know, if they are right that documents were
18  not produced or were produced in a corrupted way which would
19  have been the subject of examination at the deposition and they
20  didn't have them in advance of the deposition and it doesn't
21  make sense to do it in writing, I would say they can reconvene
22  the deposition.  But if it does make sense to do it in writing,
23  I would hope that they would do it to spare the expense and
24  that you would agree to it, too.  I'm just trying to give you
25  an incentive to do it rather than have the dep convene.

1    So I've probably talked over everything now, and I can
2    restate it in an order form.
3        MS. MILLER:  Your Honor, I believe we understand what
4    Your Honor is saying, and we understand that, of course, we are
5    not looking to waste the Court's time or waste deposition time
6    as unnecessary.  But to the point that Your Honor just made, we
7    don't know what we don't have, and we don't know whether what
8    they've produced is what we asked for, and we will not have an
9    opportunity, given at least from what we can tell that there
10   are a number of documents that are corrupted or don't have file
11   extensions and we've been told that we should go try to fix it
12   before we further complain, we don't know if we'll have an
13   opportunity to fix those before Thursday.
14       But we appreciate, you know, if it turns out that we
15   have all the documents that we have asked for and we are able
16   to serve targeted questions, what does this data field mean,
17   we're not going to be looking to reconvene a deposition to ask
18   that question.  But it's simply a situation that we don't know
19   what we don't know, so we are happy to proceed as Your Honor
20   suggests and see what Thursday reveals and what it does not.
21       MR. DORRIS:  Your Honor, this is Dan.  Oh, sorry to
22   interrupt.
23       THE COURT:  No, go ahead.
24       MS. MILLER:  No, I'm done, Dan.  Go ahead.
25       MR. DORRIS:  This is Dan.  I think with my

1  understanding now that we are also on board with that process,
2  and let me just restate it to make sure we're all clear on the
3  record and there's no ambiguity later.  My understanding is
4  that after the deposition and CDK reviews the documents that it
5  will identify any areas of inquiry that it thinks it wasn't
6  able to get into, and then the parties will confer about that
7  and, if necessary, the appropriate way to address those.  If
8  that's the ruling here, we're on board with that.  We're, of
9  course, going to comply with that.

10        The only concern I had is the presumption of an
11  automatic new deposition unless we moved for a protective order
12  on topics that we weren't sure what CDK wanted to address at
13  the second deposition.

14        MS. MILLER:  And, Your Honor, to be clear, that's not
15  my understanding of what we're talking about.  We certainly
16  have the 4500 documents that were produced on Friday which we
17  haven't gotten through, but we are also -- this data deposition
18  is going to the types of data of Cox and its subsidiaries in
19  its chain and the various issues about the types of data.  We
20  do not know as we sit here, beyond representations of counsel,
21  that, in fact, we have everything we asked for.  So there may
22  be additional documents that we still do not have even in that
23  production on Friday.

24        Also, there were objections served just this past
25  Thursday to the deposition notice in which Cox has taken

1  certain positions as to what their witness will and will not be

2  able to testify to.  That may be a lawyer's artifice and it may

3  be a distinction without a difference, but until we get the

4  witness on the stand and inquire as to that person's knowledge

5  and as to the files we have and whether there are other files

6  we do not have, we certainly can't make a representation that

7  any additional questions we may have, whether in (inaudible) or

8  in a secondary deposition, will be about just those 4500

9  documents that were produced.  There may be additional material

10  that we yet do not have about which we'd like to ask questions

11  under the guise of understanding the data that is going to be

12  at issue in this case.

13          So I had understood Your Honor's just (inaudible)

14  suggestion to the parties that we go on Thursday, see how far

15  we get, and if there are additional questions open either about

16  the documents that were just produced that we didn't have the

17  opportunity to ask about or there are additional documents or

18  additional information that we don't have that relate to the

19  data questions that we served, we would have the ability to

20  reconvene that deposition orally if the parties could not agree

21  to try to resolve it by written questions.

22          THE COURT:  Okay.  So we're all trying to state

23  something.  Let me try my hand at it.  I'm just making a note

24  here.

25          (Brief pause.)

1    THE COURT:  Okay.  Here's my attempt at this which

2  would be memorialized in an order that would say, you know, the

3  telephonic hearing of this motion.  The deposition of -- who's

4  the name of the deponent?

5    MR. DORRIS:  Tammy Guadalupe.

6    THE COURT:  Well, actually the 30(b)(6) deposition of

7  Cox Automotive, right?

8    MR. DORRIS:  Yes.

9    MS. MILLER:  Cox Automotive on data.

10    THE COURT:  On data noticed for April 4th, right?

11    MS. MILLER:  Yes, Your Honor.

12    MR. DORRIS:  Yes.

13    THE COURT:  It will proceed as scheduled.  If it turns

14  out that Cox has not produced reasonably before the deposition

15  documents requested by CDK that CDK needs to examine the

16  witness on the noticed 30(b)(6) topics -- and I guess I would

17  add here -- or the parties have not resolved their dispute

18  about appropriate 30(b)(6) topics sufficiently before the

19  deposition begins, then CDK can resume the deposition of the --

20  can resume the 30(b)(6) deposition unless the parties agree

21  that any additional inquiry CDK wants to conduct can be done on

22  written questions.  If the parties cannot reach agreement, they

23  can come back to the Court at that time.

24    The Court reserves -- well, I would say the resumed

25  deposition can occur either before or after the close of fact

1  discovery, and the Court reserves the ability to allocate the
2  cost of any resumed deposition based on a more complete record
3  and argument.

4      Let me throw that out there to you guys.  How does
5  that sound to you all?

6      MS. MILLER:  That is fine by CDK, Your Honor.

7      MR. DORRIS:  This is Dan Dorris.  I think that what we
8  would ask for is just the default rule on any deposition.  If
9  CDK believes any documents haven't been produced that gives
10 them sufficient time to question the witness, it can make a
11 motion and show good cause why there should be continuing need
12 for a deposition.

13     THE COURT:  Well, that's the motion that they have
14 now.  That's the motion that they filed now, and what they're
15 telling me now is that there's good cause to believe that they
16 don't have all the documents or that some of the data has been
17 corrupted.  You guys disagree with that, but I haven't heard
18 anything.  You know, they say, they say -- you know, they say
19 that, and you say, well, we don't think so.  I don't know who's
20 right, and I can't delve into it.

21     MR. DORRIS:  Right.

22     THE COURT:  And I was not intending to kick the ball
23 down the road like that.  You know, alternatively, I think,
24 Mr. Dorris, what I would say is, you know, not go through all
25 the rest of the verbiage here which I think is protective of

1   you and say the deposition shall go forward and CDK can resume

2   the deposition at Cox's expense in the future to address

3   documents that, you know, were produced late or were not

4   produced before the deposition or something like that.

5          I mean, you can't have your cake and eat it, too.  You

6   know, you want the deposition to go forward.  You've got 29

7   depositions on the schedule.  I'm trying to accommodate that

8   interest, but I'm trying not to nail CDK for going forward with

9   the deposition.  I mean, their original motion here is:  Don't

10  make me take it now at all, Judge.  Reschedule it sometime

11  later.

12         And, you know, I recognize you're saying the deponent

13  may not be available, that there's four sets of lawyers getting

14  on planes.  So I'm trying to do that.  But, I mean, you know,

15  if you want to do that --

16         MR. DORRIS:  Oh, completely understood, Your Honor.

17  We're asking for --

18         THE COURT:  If you want to preserve this argument

19  later, I'm going to enter a different order today.

20         MR. DORRIS:  I completely understand.  We're happy

21  with your version of the order.  We will confer with CDK after

22  the deposition about any questions that they believe they did

23  not have an opportunity to ask and the best way to address

24  them.

25         THE COURT:  Yes.

1    MR. DORRIS:  Consistent with your order.

2    THE COURT:  Okay.  To be clear to both sides -- and I

3 think Ms. Miller understands this -- I'm not trying to give

4 them a Mulligan here.  I'm not saying to take the dep and then

5 you have free rein to do it again.  I mean, I'm trying to cabin

6 it in a way that, you know, is based on the documents that were

7 produced.

8    But, you know, you guys are coming down to the wire

9 and you're arguing about 30(b)(6) topics and whether you have

10 all the documents, and everybody would like to get this stuff

11 done.  And my best guess is that going forward with the

12 deposition, nine times out of ten you're able to ask -- you've

13 got enough to ask enough to get what you need.  And certainly

14 after the deposition on these data issues CDK will be much more

15 informed about what the witness knows, what the data -- what

16 the documents show, what the data issues are, and so probably

17 can ask much more focused questions in the future that either

18 would be the subject of a written question or, you know, a much

19 more focused deposition.

20    But, you know, I'm faced at least on a prima facie

21 basis with an argument that the docs were produced late and,

22 you know, there wasn't complete cooperation here.  So, you

23 know, I'm trying to deal with all that here.  You know, I think

24 this is probably the best we can do right now.  You'll go

25 forward with the deposition.  If there's a problem in the

1  future, there's a mechanism to try and work it out.  Then if

2  you can't work it out, you know where I am.

3        Or like the stipulation before, just give it to Judge

4  Dow.  I'm just kidding, and I know if he reads the transcript

5  he would laugh when I said that, too.

6     (Laughter.)

7        MR. DORRIS:  All right.  Thank you, Your Honor.

8        MR. ENTWISLE:  Thank you.

9        THE COURT:  Okay.

10       MS. MILLER:  Thank you, Your Honor.

11       THE COURT:  All right.  I'm looking at your stipulated

12  motion here.  I see the reason you gave it to him, because it

13  extends to Daubert.  Okay.  I will also let him know that it's

14  sitting there.  I know you'll talk to his courtroom deputy, but

15  somebody will sign that.

16       MS. MILLER:  Thank you, Your Honor.

17       MR. DORRIS:  Thank you.

18       THE COURT:  Okay.  Bye-bye.

19    (Proceedings concluded.)

20                C E R T I F I C A T E

21       I, Patrick J. Mullen, do hereby certify the foregoing
   is an accurate transcript produced from an audio recording of
22  the proceedings had in the above-entitled case before the
   Honorable JEFFREY T. GILBERT, one of the magistrate judges of
23  said Court, at Chicago, Illinois, on April 2, 2019.

24                  */s/ Patrick J. Mullen*
                    Official Court Reporter
25                  United States District Court
                    Northern District of Illinois