UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Dealer Management Systems Antitrust Litig. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:18-cv-864<br><br>MDL No. 2817<br><br>Judge Robert M. Dow Jr.<br><br>Magistrate Judge Jeffrey T. Gilbert |

**THIRD PARTY SUBPOENA RESPONDENT**
<u>**ACCEL-KKR CAPITAL PARTNERS, IV, LP'S REPLY IN SUPPORT OF MOTION TO
QUASH SUBPOENAS FOR DOCUMENTS AND DEPOSITION TESTIMONY**</u>

TABLE OF CONTENTS

INTRODUCTION ................................................................................................................................. 1

ARGUMENT ......................................................................................................................................... 2

    I.    AKKR's Internal Analysis of and Data Concerning MVSC, the EVR Market, and Defendants Have No Relevance to this Case ....................................................................... 2

    II.   AKKR Has Offered More than Sufficient Evidence that the Subpoenas, Even as Modified by R&R, Impose an Undue Burden ................................................................... 5

    III.  R&R's Service of the Subpoenas in the "Late Gestation" of this Matter Militates in Favor of Granting AKKR's Motion to Quash ..................................................................... 8

CONCLUSION ..................................................................................................................................... 9

## INTRODUCTION

In its Response (Dkt. 589, "Resp."), R&R[1] has no credible explanation for why, at the tail end of fact discovery, it needs AKKR's proprietary internal analysis of MVSC and the EVR market. Nor does R&R acknowledge the heavy burden on AKKR of responding to the Subpoenas, let alone explain why the benefit of production outweighs this burden, as F.R.C.P. 45 requires.

Instead, R&R spends the bulk of its Response insisting that, because AKKR invested in MVSC during the period in which defendants were allegedly engaged in antitrust conduct, AKKR's internal reasoning for continuing to invest is somehow probative of "whether and to what extent" MVSC suffered an antitrust injury. This argument, unsupported by *any* citations to antitrust cases, makes little sense since (i) the law does not preclude a successful company from proving that, but for defendant's antitrust conduct, it would have been *more* successful; and (ii) MVSC has already produced its audited financial statements and projections for the entire relevant time period, demonstrating exactly how it was expected to and actually did perform.

Similarly, R&R's conclusory assertion that, because it narrowed the scope of the Subpoenas to AKKR's internal documents and information, the burden imposed is reasonable, ignores the declaration supporting AKKR's motion. This declaration lays out in detail why R&R's modification of its expansive Subpoenas does little, in practical terms, to limit the time and expense involved in responding.

The Subpoenas seek a wide array of proprietary and competitive information that is time consuming and expensive to isolate and produce, and has virtually no relevance to the merits of the case. There are no clearer circumstances in which a motion to quash should be granted.

---

[1] AKKR adopts herein the same defined terms used in its motion to quash. (Dkt. 578.)

**ARGUMENT**

I. **AKKR's Internal Analysis of and Data Concerning MVSC, the EVR Market, and Defendants Have No Relevance to this Case**

**(Reply to Resp. ¶¶ 1-8.)**

As noted in *Bank of America, National Ass'n v. LaSalle Commercial Mortgage Securities, Inc.* (Mot. p. 6), important factors in ruling on a motion to quash are "the relevance of the discovery sought" and, correspondingly, "the subpoenaing party's need for the documents." 12 C 9612, 2014 WL 3928441, at *3 (N.D. Ill. Aug. 12, 2014); *see also In re CareSource Mgmt. Group Co.*, 289 F.R.D. 251, 253 (S.D. Ohio 2013) (internal quotation omitted) ("the party who issued the subpoena has the burden of establishing a need for the breadth of the information sought in response to a non-party's *prima facie* showing that the discovery would be burdensome").[2] R&R in its Response offers no legitimate explanation for why either factor weighs in its favor.

Instead, R&R makes the unremarkable observation that, because AKKR spent a substantial sum to purchase a controlling interest in MVSC in 2015, and continues to hold that investment today, AKKR must have believed then, and believes now, that MVSC is a profitable enterprise. R&R then leaps to concluding that AKKR's "analyses regarding the reasons for its continued investment in MVSC . . . are highly relevant to understanding whether and to what extent MVSC may have been harmed, if at all, by defendants' alleged conduct." (Resp. p. 4.) This argument fails for two reasons.

First, the unstated assumption in R&R's argument—that a profitable company cannot have suffered an antitrust injury—is legally incorrect. Rather, "an antitrust plaintiff's post-violation

---

[2] *See also Brown v. Tax Ease Lien Servicing, LLC*, 3:15-CV-208-CRS, 2017 WL 6940735, at *4 (W.D. Ky. Aug. 21, 2017) (granting motion to quash subpoena that would require "significant man-hours and expense" to respond, while the documents sought were "of only marginal relevance").

successes do not necessarily preclude compensation for damages proximately caused by an antitrust violation." *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 436–37 (5th Cir. 1985); *see also Image Tech. Serv.s, Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1222 (9th Cir. 1997) ("Juries may award damages to profitable businesses for lost sales as the result of anticompetitive behavior."). MVSC's financial success throughout the relevant time period does not preclude MVSC from proving that, but for defendants' antitrust violations, it would have been *even more* successful in the relevant markets. *See Pierce*, 753 F.2d at 436-37; *Image Tech Servs., Inc.*, 125 F.3d at 1222.

Second, and in any event, R&R already knows precisely how profitable MVSC was before, during and after AKKR acquired a controlling interest in MVSC. R&R requested, and MVSC produced, MVSC's year-end audited financial statements for 2013 through 2017 (*See, e.g.*, Dkt. 589-5), as well as all of MVSC's financial projections during this same period. (*See, e.g.*, MVSC_MDL_0071898[3].) R&R does not articulate why AKKR's internal analysis of MVSC's actual or projected performance over a seven-year period that has already occurred and been fully disclosed (i) is expected to be different than the same information produced by MVSC; and/or (ii) would otherwise lead to the discovery of any non-duplicative admissible and relevant evidence.

Especially instructive is the antitrust matter, *Spartanburg Regional Healthcare System v. Hillenbrand Industries, Inc.*, in which the court quashed defendant's subpoena to a competitor for documents reflecting the competitor's analysis of, *inter alia*, (i) the relevant market; (ii) competitors within that market, and (iii) its actual and projected financial performance. 1:05-MC-107, 2005 WL 2045818, at **1-2 (W.D. Mich. Aug. 24, 2005), aff'd, 1:05-MC-107, 2005 WL 2571943 (W.D. Mich. Oct. 12, 2005). Rejecting the subpoena on relevance grounds, the court

---

[3] This document is a Microsoft Excel file ill-suited for reproduction as a paper exhibit. Upon request, AKKR will furnish a native copy to the court for *in camera* inspection.

3

reasoned that while "*factual* information regarding the [relevant] market . . . *may* be relevant," the same was not true of the "*thought processes* by which [respondent] develops, prices, and markets its products." *Id.* at *4 (emphasis in original).

Like the defendant in *Spartanburg*, R&R already has factual information concerning MVSC's historical and projected financial performance. No legitimate purpose exists to compel AKKR to disclose its proprietary *thought processes* concerning those undisputed facts. Yet, those thought processes are the *only* non-duplicative subject matter of the Subpoenas.

R&R's cited cases do not even involve antitrust claims, let alone stand for the proposition that a third-party investor's analysis of the relevant market, or of a company's past or future profitability, is probative of whether and to what extent that company has suffered an antitrust injury. *See, e.g., Mosely v. City of Chicago*, 252 F.R.D. 421, 423, 430-431 (N.D. Ill. 2008) (Resp. ¶ 5) (compelling journalist to produce her audio tapes and notes from interview of plaintiff on topics at the "epicenter" of his wrongful prosecution case under 42 U.S.C. § 1983); *Shields Enters., Inc. v. First Chicago Corp.*, No. 86 C 10213, 1988 WL 142200, **1, 4 (N.D. Ill. Dec. 28, 1988) (Resp. ¶ 5) (where defendants allegedly coerced plaintiff to sell minority interest in a company ("CBSI") at a depressed price, compelling production of "documents relating to the valuation" of another company used "as a benchmark" in valuing CBSI in the underlying transaction).[4]

R&R's remaining citation (Resp. ¶ 7), *Scandinavian Airline System v. McDonalds Corp.*, illustrates why AKKR's motion should be granted. 1996 U.S. Dist. LEXIS 15750 (N.D. Ill. Oct. 23, 2996). There, plaintiff airline ("SAS") brought a breach of fiduciary duty claim against a

---

[4] R&R's citation to *In re: Subpoena to Huwaei Techs. Co.*, for the proposition that MVSC cannot itself retrieve and produce AKKR's documents is misplaced. 720 F. Supp. 2d 969, 977 (N.D. Ill. 2010) (Resp. ¶ 8). AKKR claims not that MVSC should produce AKKR's responsive documents, but rather that R&R has failed to explain *why* AKKR documents are likely to contain non-duplicative relevant information.

company with whom it had negotiated to enter into a partnership to operate a duty-free shop, but the company instead partnered with another entity ("DFI"). *Id*. at \*\*3-4. SAS then subpoenaed financial information from the division of DFI ("Fenton") that operated the duty-free shop for the shop's "historical and projected financial information" needed to "determine the profits SAS lost from the alleged misappropriation of the business opportunity." *Id*. at \*4. The court compelled Fenton to respond because (i) the information was highly relevant to calculating lost profits damages; (ii) SAS could not obtain it from defendants; and (iii) Fenton claimed no burden apart from confidentiality concerns addressed by measures already in place. *Id.* at \*\*5-7.

Unlike SAS, which had no other means of discovering the financial performance of the enterprise allegedly stolen away, R&R already has MVSC's audited financial statements and projections showing precisely how MVSC was expected to and actually performed. Additionally, whereas Fenton claimed no undue burden, AKKR has provided proof of the substantial resources involved in responding to the subpoenas, even as narrowed by R&R. (*See infra,* Sec. II.)

Simply put, R&R articulates no compelling need for the discovery sought that justifies the significant burden imposed on AKKR, if forced to respond. The motion to quash should be granted.

II. **AKKR Has Offered More than Sufficient Evidence that the Subpoenas, Even as Modified by R&R, Impose an Undue Burden**

**(Reply to Resp. ¶¶ 9-14)**

R&R's contention that AKKR has not sufficiently demonstrated that the Subpoenas impose an undue burden both misconstrues AKKR's proffered evidence of burden, and misapplies applicable law.

R&R appears to concede that requiring AKKR to review 40,000 or more documents would be unduly burdensome, but posits that further meeting and conferring might have narrowed the universe of documents necessary to review. (Resp. ¶ 11.) To the contrary, the declaration of

5

AKKR's counsel explains that R&R's narrowing of the Subpoenas' substantive scope does not meaningfully reduce the quantity of documents AKKR would have to retrieve and review in order to produce responsive documents. This is because "there are not any discrete ESI repositories at AKKR that would exclusively or comprehensively capture the more narrow categories of documents or information" R&R seeks."[5] (Dkt. 579, ¶ 20.)

Stated succinctly, R&R's post-hoc narrowing of its expansive Subpoenas does not lessen the burden imposed because AKKR would still have to capture and review all documents responsive to the same search terms. *See Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, 13 C 408, 2013 WL 1883204, at *5 (N.D. Ill. May 6, 2013) (granting motion to quash and rejecting argument that the "specific" nature of document requests in subpoena prevented undue burden where response would nevertheless "require a significant amount of time, resources, and money" as well as the disclosure of confidential information"); *see also Rawcar Group, LLC v. Grace Med., Inc.*, 13CV1105-H (BLM), 2014 WL 12199977, at *4 (S.D. Cal. June 26, 2014) (denying motion to compel subpoena response on ground of undue burden where, even if there turned out to be no responsive documents, respondent would still "need to conduct numerous searches and document reviews" to make that determination).

Moreover, the declaration details, with reference to specific facts of which counsel has personal knowledge, that:

- AKKR's emails responsive to eight narrowly tailored search terms (excluding additional non-email ESI) would likely equate to more than 80,000 documents for outside counsel's review. (Dkt. 579, ¶¶ 5-6.)

- The *cost* alone of retrieving and preparing these emails for production would exceed $10,000, while attorney review is conservatively estimated to take 350

---

[5] In contrast, in R&R's cited case (Resp. ¶ 11), *Jenkins v. White Castle Management. Co.*, the motion to quash was denied because the movant-responded provided *no affidavit* substantiating its claim of undue burden. No. 12 C 7273, 2014 WL 3809763, *2 (N.D. Ill. Aug.4, 2014).

6

hours of billable attorney time, with at least a substantial portion of that time incurred by experienced counsel at rates of $400-$550 per hour.[6] (*Id.* ¶¶ 22-23.)

- In order to identify responsive documents, counsel would need to spend "significant time conferring with AKKR representatives to understand the content and context of potentially responsive ESI." (*Id.* ¶ 24.)

- AKKR's responsive documents would be "certain to contain highly proprietary and commercially sensitive information." (*Id.* ¶ 10.)

Under applicable law, this evidence is more than sufficient to establish the undue burden imposed by the Subpoenas, especially in light of the minimal probative value of the documents and information at issue, as set forth above in Section I. *See, e.g., United States v. Amerigroup Illinois, Inc.*, 02 C 6074, 2005 WL 3111972, at *3 (N.D. Ill. Oct. 21, 2005) (granting motion to quash subpoena and finding undue burden based on unrebutted affidavit of respondent's representative laying out the estimated time and costs that would likely be incurred); *In re CareSource Mgmt. Group Co.*, 289 F.R.D. at 253-54 (granting motion to quash subpoena and holding that affidavit of respondent's corporate compliance officer estimating that it would take 1000 hours to respond was sufficient to demonstrate undue burden); *Spartanburg Reg'l Healthcare Sys.*, 2005 WL 2045818, at *4 (proprietary nature of requested documents contributed to finding of undue burden, despite availability of two-tier protective order); *Uppal v. Rosalind Franklin Univ. of Med. & Sci.*, 124 F. Supp. 3d 811, 815 (N.D. Ill. 2015) (granting motion to quash a deposition subpoena that imposed an undue burden "without any offsetting value to the case").

---

[6] While R&R claims it "does not require" a privilege log from AKKR, AKKR's potentially responsive documents would, at a minimum, need to be *reviewed* for privilege. (Resp. ¶ 10, n. 3.) AKKR has provided unrebutted testimony that a "substantial portion" of its responsive documents are privileged. (Dkt. 579, ¶ 9.) Further, under applicable law, AKKR must provide a privilege log to protect itself from claims of waiver regardless of what R&R "requires." *See, e.g., Young v. City of Chicago*, 13 C 5651, 2017 WL 25170, at *6 (N.D. Ill. Jan. 3, 2017) (subpoena respondent waived claims of privilege where it did not timely produce a privilege log as required under F.R.C.P. 45 and F.R.C.P. 26(b)(5)).

R&R's continued insistence that AKKR's status as an investor in MVSC somehow justifies the burdens imposed by the Subpoenas is unpersuasive. (Resp. ¶ 13.) R&R fails to distinguish the cases cited in AKKR's motion (p.10), rejecting the same argument R&R makes here. Likewise, R&R cites the same case—*Peoria Day Surgery Center*—on which it relied in its meet and confer letter, and which AKKR distinguished in its motion (p. 10), without addressing AKKR's argument as to why the case "does not advance R&R's position," but rather supports AKKR. (Resp. ¶ 12.)

In sum, AKKR has provided specific, detailed evidence that the Subpoenas, even as modified by R&R, would require AKKR to (i) spend tens of thousands of dollars and hundreds of hours to respond, and (ii) produce proprietary and competitive information to which R&R would not otherwise be entitled, and which has little bearing on the ultimate merits of the case. As shown above, this is the textbook fact pattern on which findings of undue burden are made.

### III. R&R's Service of the Subpoenas in the "Late Gestation" of this Matter Militates in Favor of Granting AKKR's Motion to Quash

#### (Reply to Resp. ¶¶ 6-7, 15-17)

R&R's emphasis on the fact that its Subpoenas are "timely" because they were served prior to the close of fact discovery misses the point. AKKR has not contended that the Subpoenas violate any specific deadline or scheduling order, but rather that R&R's decision to serve them at the eleventh hour is a factor that weighs in favor of granting AKKR's motion.

R&R's protestation that MVSC did not "disclose the existence" of AKKR to R&R until May 2018 falls flat, since AKKR's investment in MVSC has been a matter of public record since at least September 2015. *See* https://www.prnewswire.com/news-releases/motor-vehicle-software-corporation-mvsc-receives-growth-equity-investment-from-accel-kkr-300143907.html (last accessed April 8, 2019).

8

From the outset of discovery in this matter, R&R was free to discover directly from MVSC information surrounding AKKR's publicly announced investment in MVSC. R&R's failure to pursue this information from MVSC over many months and, instead, to serve the Subpoenas near the close of fact discovery, underscores that R&R does not truly need the documents and information at issue. *See, e.g., Littlefield v. NutriBullet, L.L.C.*, CV 16-6894 MWF (SSX), 2018 WL 5264148, at *7 (C.D. Cal. Jan. 22, 2018) (granting motion to quash subpoenas served near the fact discovery cutoff and stating that the issuing parties' "delay in seeking the information weakens the persuasiveness of any argument that [they] truly need[ed]" the information).

Finally, granting AKKR's motion to quash would be consistent with this Court's declining to allow MVSC to pursue certain discovery served "very late in the gestation of the case," even while simultaneously acknowledging that the discovery at issue may have been "predicated on fact or developments of which plaintiffs were not [previously] fully aware." (Dkt. 498, p. 1.) This ruling was not strictly on the ground of timeliness, as R&R contends (Resp. ¶ 7), but also because (i) requiring CDK to respond could "delay materially the progress of this case;" and (ii) this Court questioned why Plaintiffs waited so long to propound the discovery at issue if the facts sought were truly "central" to the case. (Dkt. 498, p. 3.) The same rationale applies to R&R's Subpoenas.

## CONCLUSION

For the foregoing reasons, Accel-KKR Capital Partners IV, LP's Motion to Quash the Subpoenas served on it by defendant Reynolds & Reynolds Company should be granted.

Respectfully submitted,

**ACCEL-KKR CAPITAL PARTNERS IV, LP**

By: /s/ Sara Siegall

9

                    Peter M. Spingola (6243942)
                    Sara Siegall (6297622)
                    **CHAPMAN SPINGOLA, LLP**
                    190 S. LaSalle Street, Suite 3850
                    Chicago, IL 60603
                    (312) 630-9202 (phone)
                    (312) 630-9233 (fax)
                    pspingola@chapmanspingola.com
                    ssiegall@chapmanspingola.com

Case: 1:18-cv-00864 Document #: 623 Filed: 04/12/19 Page 12 of 13 PageID #:24059

**CERTIFICATE OF SERVICE**

I, Sara Siegall, counsel for subpoena respondent Accel-KKR Capital Partners IV, LP, certify that on Friday, April 12, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF electronic filing system, which will send a notice of electronic filing to counsel of record.

/s/ Sara Siegall