**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* <br><br> *ALL ACTIONS* | Hon. Robert M. Dow, Jr. <br><br> Magistrate Judge Jeffrey T. Gilbert |

### DEFENDANTS' MOTION TO COMPEL DEPOSITION DATES PURSUANT TO SECTION IV.B OF THE DEPOSITION PROTOCOL, AND TO CLARIFY DEFENDANTS' RIGHT TO TAKE THIRD-PARTY DEPOSITIONS AFTER THE DISCOVERY CUT-OFF THAT REMAIN SUBJECT TO PENDING MOTIONS

Defendants CDK Global, Inc. ("CDK") and The Reynolds and Reynolds Company ("Reynolds") respectfully move this Court for an Order under Fed. R. Civ. P. 37(a) and Section IV.B of the Deposition Protocol in this MDL (Dkt. 422 at 4-5) directing Plaintiffs to provide a date, after the current close of fact discovery if necessary, for the deposition of third-party witness William Lamm. Defendants also respectfully move that the Court clarify that, after the pending discovery motions filed by third-parties Dominion Enterprises, Inc. and InDesign Data, LLC, are resolved, Defendants will be permitted to take the depositions of those entities, even if it is necessary to do so after the current close of fact discovery.

The facts bearing on this motion are as follows:

1. In October 2018, the parties agreed to, and the Court entered, a Deposition Protocol Order (Dkt. 422) to govern the scheduling of depositions in the case. As relevant here, the Deposition Protocol provides that "each 'side' may notice a maximum of 15 third party depositions each." *Id.* § I.A. It also provides that, absent an agreement of the parties or a court

1

order, the parties may schedule "a maximum of one third party deposition per week per side (2 total)." *Id.* § I.B.

2.  Given the prohibition on either side's scheduling more than one third-party deposition per week without agreement or Court approval, the parties recognized that prompt, efficient deposition scheduling would be critical if each was to be able to take its allotted number of third-party depositions within the time allotted for fact discovery. Thus, they agreed that "[i]f [a] noticed party objects to the date of [a] noticed deposition, counsel for the noticed party will respond to the party issuing notice within five (5) business days and will counter-propose alternative dates on which the witness and his or her counsel will be available within fourteen (14) days of the requested date." Dkt. 422 § IV.B. This procedure would enable all of the necessary third party depositions to be scheduled expeditiously so that they could occur before the close of fact discovery on April 30, 2019 (*see* Dkt. 553 at 1).

3.  At a status hearing before the Court on February 27, 2019, the parties agreed to identify all remaining third-party depositions they wished to take by March 6, 2019. There were eight weeks between March 6 and the close of fact discovery on April 30, meaning that each side could designate a maximum of eight additional third party depositions to be taken (for a total of two third party witnesses each week).

4.  On the March 6 deadline, Defendants named six third-party deponents; these, in addition to the depositions that Defendants had already subpoenaed from third parties Dominion and InDesign, would make for a total of eight additional third-party depositions. Plaintiffs, by contrast, initially designated an additional *eleven* third party depositions in their March 6 communication to Defendants. Ex. A (Nemelka 3/6/19 email). When Defendants objected that only eight weeks remained in fact discovery and that Plaintiffs had already scheduled one third-

2

party deposition during that period (Ex. B (Gulley 3/7/19 email)), Plaintiffs withdrew their pursuit of four third-party depositions, leaving seven to be scheduled. With Defendants' cooperation, all seven of Plaintiffs' noticed third-party depositions have now been scheduled to be taken prior to April 30 (and in compliance with the Deposition Protocol).[1]

5. Plaintiffs, however, have attempted to prevent Defendants from scheduling depositions of third-party witnesses who are represented by Plaintiffs' counsel. As relevant to the instant motion, Plaintiffs have refused to provide a date for William Lamm, in clear violation of the Deposition Protocol.[2] Worse, after weeks went by without Mr. Lamm's deposition being put on the calendar, Plaintiffs took the position that Defendants had forfeited their right to depose him because there is not enough time remaining before the close of fact discovery—April 30—to depose both Mr. Lamm and the third-party witnesses who are subject to pending discovery motions (InDesign and Dominion) within the one-third-party-deposition-per-side-per-week limit set forth in § I.B of the Deposition Protocol. In short, not only do Plaintiffs still refuse to provide a date for Mr. Lamm's deposition, but it appears that Plaintiffs will seek to block Defendants from taking the depositions of InDesign and Dominion in the event that the Court rules in Defendants' favor on the discovery motions that both of these third parties have filed. Notably, even if Defendants take all three of these depositions, they will still have taken fewer than the 15 third-party depositions permitted by the Deposition Protocol. Dkt. 422 § I.A.

---

[1] On April 15, 2019, Plaintiffs served a new notice to depose third-party The Impact Group, Inc. on April 29, 2019. Defendants believe that the notice is untimely, as it violates the parties' agreed March 6 cut-off for the identification of all remaining third party deponents. Nonetheless, and whereas they are not available on April 29, 2019, Defendants are willing to meet-and-confer with Plaintiffs regarding a mutually agreeable date in May for this deposition.

[2] Plaintiffs also initially refused to provide a date for non-party witness J. David Brookshire (represented by counsel for the Dealership Class Plaintiffs), but have since provided a date in early May, thereby obviating the need for the Court to intervene at this time.

**PUBLIC VERSION**

*William Lamm (Presidio Group)*

6. William Lamm is an investment banker and advisor who specializes in the automotive space. During the time period relevant to this case, he was involved with an investment banking entity known as the "Presidio Group." In 2013, Authenticom retained Presidio and Mr. Lamm to serve as a financial advisor and facilitate a potential sale of the Authenticom companies; in that role, Presidio shopped Authenticom to over 90 potential buyers. As late as 2016, Mr. Lamm continued advising Authenticom and attempting to arrange a sale of the company. Through this working relationship, Mr. Lamm and Presidio conducted substantial due diligence on Authenticom's various business lines, its financials, and the risks and opportunities to its business model. Indeed, as Authenticom's investment banker and financial advisor during the key time period of this litigation, Mr. Lamm has unique information about the value of Authenticom's businesses, which is directly relevant to Authenticom's theory of its alleged antitrust damages. Plaintiffs have never asserted that Mr. Lamm's personal knowledge is not relevant to the claims and defenses in this case.

7. But Mr. Lamm's testimony goes to more than just damages. In particular, documents received from Presidio show that it has knowledge about Authenticom's possible unauthorized use and sale of consumer personal data that it obtains from dealers. These include ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Authenticom also informed Presidio that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

4

███████████████████████████████████████████████████ As Authenticom's financial advisor, Presidio ███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ Defendants expect that Mr. Lamm will testify about how these practices hampered Authenticom's financial projections and valuation; these issues also bear directly on the risks of permitting unauthorized third party access to the DMS and Defendants' efforts to safeguard sensitive personal data stored in the DMS.

8. Defendants requested that Plaintiffs' counsel inform Defendants whether they represented the Presidio Group on December 4, 2018. Ex. D (Gulley 12/4/18 email). Michael Nemelka of Kellogg Hansen responded two days later, explaining that the term "Presidio Group" could refer to more than one entity. He stated that Mr. Lamm no longer works at the Presidio Group, and that Mr. Lamm now works at "Presidio Technology Partners." Mr. Nemelka stated, "We assume that it is Mr. Lamm you are interested in, but please let us know. If it is, then we can confirm we will represent PTP. If it is The Presidio Group you are after, we are not representing them." Ex. E (Nemelka 12/6/18 email). Defendants, of course, were not in a position to know the difference between these two entities, and thus subpoenaed both for documents on January 22, 2019, in order to identify whom from these entities Defendants ought to depose. Counsel from Kellogg Hansen accepted the subpoena to Presidio Technology Partners on January 29, 2019. Ex. F (MacDonald 1/29/19 email).

9. While the Presidio Group (not represented by Kellogg Hansen) undertook meet and confer efforts and has produced documents in this case, Kellogg Hansen has thus far refused to produce *any* documents for Presidio Technology Partners—despite Defendants' attempt to ease any burden on Presidio Technology Partners by agreeing that it need not produce any

5

materials available from other parties to this case, or that were produced by other non-parties. Kellogg Hansen has admitted, however, that Mr. Lamm took substantial documentation with him when he left the Presidio Group, in late 2016, and that he retained access to his emails from before his departure.

10. Defendants selected Mr. Lamm as a deponent on March 6 and proposed April 8, 2019, as the date for his deposition. *See* Ex. G (Gulley 3/6/19 email). Under the Deposition Protocol, Kellogg Hansen had until March 13 (five business days after March 6) to either confirm April 8 as the date for Mr. Lamm's deposition or propose a new date, but Kellogg Hansen did neither of those things. In an effort to resolve the issue in a timely manner, Defendants contacted Kellogg Hansen the next day, March 14, to ask for a date for this deposition. Ex. H (Gulley 3/14/19 email). On that day, for the first time, Plaintiffs suggested that there was no longer enough time to depose Mr. Lamm along with the other third-party deponents that Defendants had identified prior to the fact discovery cut-off, and refused, on that basis, to offer a date for Mr. Lamm's deposition. *See* Ex. I (Nemelka 3/14/19 email). Plaintiffs followed up with another demand, eight days later, that Defendants reduce the number of third-party depositions they would take by two. Ex. J (McKenna 3/22/19 email).

11. Defendants insisted that Plaintiffs provide a date for Mr. Lamm's deposition, either during the week of April 8, as originally proposed, or on April 5, in a week during which Defendants had no third-party deposition scheduled. As Defendants explained to Plaintiffs, "it is unreasonable on its face for Plaintiffs to refuse to provide a date for Mr. Lamm's deposition and then seek to deprive Defendants of the opportunity to take that deposition because Defendants have been 'unable' to confirm a date." Ex. K (Gulley 3/26/19 email).

12. Plaintiffs refused, claiming that proceeding with the deposition of Mr. Lamm on April 5—one business day before the original April 8 date requested—would be "unreasonable." Ex. L (Nemelka 3/28/19 email). On April 3, the parties met and conferred once again about Mr. Lamm's deposition. Although Plaintiffs confirmed on the call that Mr. Lamm has no availability issues that would prevent his deposition from being scheduled during the month of April or at any other time, they once again refused to provide a date. Plaintiffs suggested that they might permit Mr. Lamm to be deposed for two hours—an offer completely unacceptable to Defendants, given the importance of Mr. Lamm's testimony and the fact that Plaintiffs' delay was the sole cause of any difficulty in scheduling his deposition. Ex. M (Provance 4/10/19 email).

13. In summary, on March 6, 2019, when Defendants formally requested Mr. Lamm's deposition, there was sufficient time remaining in the schedule for Defendants to take all of their allotted third party depositions, at the rate of one per week, before the close of fact discovery. But rather than provide a deposition date for Mr. Lamm, Plaintiffs engaged in delaying tactics, with the goal of resisting Defendants' request to depose Mr. Lamm once there was no longer enough time remaining in the fact discovery period for Defendants to take all of their third party depositions at the rate of one per week.

14. Plaintiffs should not be permitted to deprive Defendants of the ability to take a deposition they timely requested by means of this kind of bait-and-switch maneuver. Given the number of depositions on the April calendar (23 confirmed depositions to be taken over 22 business days), a number of depositions have already been scheduled for May, including the Fed. R. Civ. P. 30(b)(6) depositions of CDK, Computerized Vehicle Registration ("CVR"), and Reynolds and (as discussed above) the deposition of third-party witness David Brookshire. There is no reason why Mr. Lamm's deposition cannot similarly be taken in May, if not before. The

Court should therefore compel Plaintiffs, under Section IV.B of the Deposition Protocol, to provide a date for Mr. Lamm's deposition.

### *InDesign and Dominion*

15. As part of this motion, Defendants also request that the Court clarify that, pending the Court's resolution of the pending discovery motions filed by third parties Dominion Enterprises, Inc. ("Dominion") and InDesign Data, LLC ("InDesign"), Defendants will be permitted to take the depositions of those parties—even if it is necessary to do so after the close of fact discovery on April 30.

<u>Dominion</u>

16. As the Court is aware, Defendant Reynolds issued a document subpoena to Dominion in December 2017. Dkt. 461 at 1. Dominion refused to respond to this subpoena unless the Court modified the confidentiality order in the case (Dkt. 104) to protect Dominion against the purely speculative possibility that Reynolds's counsel would use Dominion's confidential information to harm Dominion's business. Reynolds, meanwhile, moved to compel Dominion to respond to the document subpoena. This Court granted Reynolds's motion to compel and denied Dominion's motion to modify the confidentiality order, holding that the information Reynolds sought was relevant to the litigation and that the existing confidentiality order was sufficient to protect Dominion's interests. Dkt. 461 at 9.

17. Dominion filed an objection to this Court's ruling with Judge Dow, pursuant to Fed. R. Civ. P. 72(a). *See* Dkt. 483. That objection is fully briefed, and has been awaiting decision by Judge Dow since January 7, 2019. *See* Dkt. 488.

18. On February 26, 2019, Defendants served Dominion with a deposition subpoena, noticing Dominion's deposition for April 15, 2019. But Dominion has refused, through counsel,

to appear for a deposition until its objection to the Court's order on Reynolds's motion to compel and Dominion's motion to modify the confidentiality order is resolved. Ex. N (Schildkraut 3/20/19 letter to Caseria). The deposition thus has yet to be scheduled.

20. Dominion testified as a non-party witness on behalf of Plaintiffs at the Authenticom preliminary injunction hearing in June 2017. Dominion is also identified by the Individual and Vendor Class Plaintiffs as a trial witness on "harm to vendors caused by Defendants' actions." In addition to appropriate subjects of examination that may arise from Dominion's document production, which is still being withheld by Dominion pending a ruling on its Rule 72(a) objections, Defendants are entitled to take a deposition on the substance of Dominion's anticipated trial testimony in support of Plaintiffs' claims.

<u>InDesign</u>

20. Defendants served a deposition subpoena on InDesign on November 19, 2018. *See* No. 19-cv-419, Dkt. 1-2. InDesign moved to quash this subpoena in the U.S. District Court for the Southern District of Florida; that motion was later transferred to this District (No. 19-cv-419, Dkt. 21) and referred to this Court (No. 19-cv-419, Dkt. 25). On February 27, 2019, the Court granted CDK's motion to supplement the record on InDesign's motion to quash with additional discovery material produced in the MDL (No. 18-cv-864, Dkt. 533). The motion has been fully briefed and pending for decision since then.

21. Defendants' reasons for deposing InDesign are detailed in CDK's opposition to InDesign's motion (No. 19-cv-419, Dkt. 11) and its motion to supplement (No. 18-cv-864, Dkt. 511). In short, InDesign is a hostile data extractor—like Plaintiff Authenticom—that has gained unauthorized access to Defendants' respective DMS, creating significant security risks in at least some instances. In 2016, Authenticom entered into an agreement with InDesign to license

9

InDesign's hostile integration software ("DMSConnect") and use it to access and extract data from Defendants' DMSs. Evidence of InDesign's methods of accessing Defendants' DMSs and of InDesign's security protocols is important to evaluating the legitimate, pro-competitive justifications for each Defendant's third-party access policies—which apply not only to Authenticom but to all hostile data extractors. This evidence is not available from other parties and was not available from InDesign via a document subpoena.[3]

22. Given the position asserted by plaintiffs on the matter, Defendants believe it is necessary for the Court to clarify that Defendants will be permitted to take the depositions of Dominion and InDesign if the pending motions are resolved in Defendants' favor after the close of fact discovery. Each deposition was timely noticed—indeed, InDesign was subpoenaed for a deposition in November 2018 and Dominion was subpoenaed in February 2019. Defendants should not lose their right to take these depositions simply because the pending motions may be resolved after the close of fact discovery. That result would not only prevent Defendants from obtaining information in these parties' possession—it would also prejudice their discovery rights, given that Defendants declined to designate other third parties as deponents on the understanding that they would be permitted to take these two depositions once the pending motions were resolved.[4]

---

[3] CDK served InDesign with a document request subpoena prior to seeking a deposition. InDesign produced a sum total of 52 pages in response, asserting after several meet-and-confers on the issue that additional responsive documents simply did not exist. *See* No. 19-cv-419, Dkt. 11 at 6. CDK was skeptical of that response, but was left with little choice but to seek a deposition from InDesign.

[4] For the same reasons, the Court should likewise clarify that, if the Court denies Cox Automotive's motion for a protective order to prevent the deposition of Sandy Schwartz (Dkt. 527) (which was fully briefed as of March 15, 2019 (Dkt. 568)), Defendants will be permitted to take that deposition, even if it is necessary to take the deposition after April 30.

**PUBLIC VERSION**

| | |
|---|---|
| Dated: April 17, 2019 | Respectfully submitted, |
| /s/ *Aundrea K. Gulley* | /s/ *Britt M. Miller* |
| Aundrea K. Gulley | Britt M. Miller |
| Brian T. Ross | Daniel T. Fenske |
| GIBBS & BRUNS LLP | Matthew D. Provance |
| 1100 Louisiana Street | MAYER BROWN LLP |
| Suite 5300 | 71 South Wacker Drive |
| Houston, TX 77002 | Chicago, IL 60606 |
| (713) 751-5258 | (312) 782-0600 |
| agulley@gibbsbruns.com | bmiller@mayerbrown.com |
| bross@gibbsbruns.com | dfenske@mayerbrown.com |
| | mprovance@mayerbrown.com |
| Michael P.A. Cohen | Mark W. Ryan |
| SHEPPARD MULLIN RICHTER & HAMPTON, LLP | MAYER BROWN LLP |
| 2099 Pennsylvania Avenue NW, Suite 100 | 1999 K Street NW |
| Washington, DC 20006 | Washington, DC 20006 |
| (202) 747-1900 | (202) 263-3000 |
| mcohen@sheppardmullin.com | mryan@mayerbrown.com |
| *Counsel for Defendant* | *Counsel for Defendant* |
| *The Reynolds and Reynolds Company* | *CDK Global, LLC* |

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on April 17, 2019, I caused a true and correct copy of the foregoing **DEFENDANTS' MOTION TO COMPEL DEPOSITION DATES PURSUANT TO SECTION IV.B OF THE DEPOSITION PROTOCOL, AND TO CLARIFY DEFENDANTS' RIGHT TO TAKE THIRD-PARTY DEPOSITIONS AFTER THE DISCOVERY CUT-OFF THAT REMAIN SUBJECT TO PENDING MOTIONS** to be filed UNDER SEAL and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
E-mail: bmiller@mayerbrown.com