# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | Honorable Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP CLASS ACTION | |

# DEALERSHIP COUNTER-DEFENDANTS' MEMORANDUM IN OPPOSITION TO CDK GLOBAL, LLC'S MOTION FOR PROTECTIVE ORDER

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARDS ................................................................................................... 4

ARGUMENT ................................................................................................................... 5

  I.   THE INTERROGATORIES ARE TIMELY ........................................................ 5

  II.  THE INTERROGATORIES ARE RELEVANT, PROPORTIONAL, AND NON-
      DUPLICATIVE ..................................................................................................... 7

     A.    The Interrogatories Are Squarely Aimed at CDK's Counterclaims ............................ 8

     B.    The Interrogatories Are Neither an "End Run" Around the Deadline for Other
            Written Discovery, Nor Impermissibly Duplicative of Prior Discovery .................. 11

     C.    The Interrogatories Are Not Unduly Burdensome ...................................... 13

  III.  CDK SHOULD NOT BE ALLOWED TO SERVE RETALIATORY DISCOVERY ..... 15

CONCLUSION ................................................................................................................ 15

## Table of Authorities

**Federal Cases**                                                                    **Page(s)**

*B. & S. Drilling Co. v. Halliburton Oil Well Cementing Co.,*
    24 F.R.D. 1 (S.D. Tex. 1959) ................................................................ 15

*Ball Corp. v. Air Tech of Mich., Inc.,*
No. 4:16-cv-42,2019 U.S. Dist. LEXIS 11384 (N.D. Ill. Jan. 24, 2019) ...................... 7

*Bank of Am., N.A. v. First Mut. Bancorp of Ill.,*
No. 09 C 5108-GSB, 2010 U.S. Dist. LEXIS 58519 (N.D. Ill. June 14, 2010) .......................... 14

*Calhoun v. City of Chicago*,
    273 F.R.D. 421 (N.D. Ill. Apr. 8, 2011) ............................................... 8

*Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich. Inc.,*
    674 F.3d 630 (7th Cir. 2012) ............................................................ 7

*GEFT Outdoor, L.L.C. v. City of Westfield,* No. 1:17-cv-04063-TWP-TAB,
    2018 U.S. Dist. LEXIS 167580 (S.D. Ind. Sept. 28, 2018) ............................. 12

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89 (1981) ..................................................................... 7

*Infowhyse GmbH v. Fleetwood Grp.*, No. 15 cv 11229,
    2016 U.S. Dist. LEXIS 99217 (N.D. Ill. July 29, 2016) ............................... 16

*In re Folding Carton Antitrust Litig.*,
    83 F.R.D. 256 (N.D. Ill. 1979) ........................................................ 15

*In re Peregrine Fin. Grp. Customer Litig.,* No. 12 C 5546,
    2015 U.S. Dist. LEXIS 34829 (N.D. Ill. Mar. 20, 2015) .............................. 16

*In re Sulfuric Acid Antitrust Litig.*,
    231 F.R.D. 351 (N.D. Ill. 2005) .................................................. 16, 17

*Jackson v. N'Genuity Enters. Co.,* No. 09 C 6010,
    2011 U.S. Dist. LEXIS 113511 (N.D. Ill. Oct. 3, 2011) ............................. 16

*James v. Hyatt Regency Chicago*,
    707 F.3d 775 (7th Cir. 2013) ......................................................... 7

*Jasco Tools, Inc. v. Dana Corp.*
    (*In re Dana Corp.*), 574 F.3d 129 (2d Cir. 2009) ................................... 14

*Lawson Prods. v. Midwest Motor Supply Co.,* No. 17 C 1250,
    2017 U.S. Dist. LEXIS 202835 (N.D. Ill. Dec. 8, 2017) .............................. 7

*Motorola Sols., Inc. v. Hytera Commc'ns. Corp.,* No. 17 C 1973,
    2019 U.S. Dist. LEXIS 42286 (N.D. Ill. Mar. 15, 2019) ..................................................... 10

*Reimer v. Ctr. for Counseling & Health Res.,* No. C07-1123 MJP,
    2008 U.S. Dist. LEXIS 116837 (W.D. Wash. July 7, 2008)........................................... 13, 14

*Sun Life Assurance Co. of Canada v. Jackson,* No. 3:14-cv-41,
    2015 U.S. Dist. LEXIS 16220 (S.D. Ohio Feb. 9, 2015) ..................................................... 14

*United States ex rel. Tyson v. Amerigroup Ill. Inc.*,
    230 F.R.D. 538 (N.D. Ill. 2005) ................................................................................... 12-13

*V.O. Machinoimport v. Clark Equip. Co.*,
    11 F.R.D. 55 (S.D.N.Y. 1951) ........................................................................................... 14

*Wiggins v. Burge,*
    173 F.R.D. 226 (N.D. Ill. 1997) ....................................................................................... 8, 8

*Young v. Verizon's Bell Atl. Cash Balance Plan*,
    615 F.3d 808 (7th Cir. 2010) ............................................................................................. 12

## Rules

Fed. R. Civ. P. 13 ................................................................................................................ 14

Fed. R. Civ. P. 26 ................................................................................................... 7, 7, 13, 14

Counter-Defendants ACA Motors, Inc.; Continental Classic Motors, Inc.; 5800 Countryside, LLC; HDA Motors, Inc.; H & H Continental Motors, Inc.; Continental Autos, Inc.; Naperville Zoom Cars, Inc.; NV Autos, Inc.; Baystate Ford Inc.; Cliff Harris Ford, LLC; Marshall Chrysler Jeep Dodge, L.L.C.; Warrensburg Chrysler Dodge Jeep, L.L.C.; Cherry Hill Jaguar; JCF Autos LLC; Jericho Turnpike Sales LLC; Patchogue 112 Motors LLC; and Waconia Dodge, Inc. (collectively, "Counter-Defendants" or "Dealership Counter-Defendants")[1], by their undersigned counsel, respectfully submit this memorandum in opposition to the Motion for Protective Order (Dkt. 597) filed by CDK Global, LLC ("CDK").

## **INTRODUCTION**

CDK voluntarily elected to file sweeping Counterclaims against Dealership Counter-Defendants. Having made that choice, CDK cannot escape its concomitant responsibility to respond to reasonable discovery concerning those Counterclaims. CDK should be required to fully respond to Dealership Class Plaintiffs' First Set of Interrogatories to CDK Global LLC, Concerning CDK's Counterclaims (the "Interrogatories").

Counter-Defendants' Interrogatories are timely. CDK chose to file its Counterclaims with only two months remaining in fact discovery; while Counter-Defendants had no control over the timing of those Counterclaims, they promptly served the Interrogatories only two weeks after the Counterclaims were filed. Counter-Defendants could not have served the Interrogatories before CDK's Counterclaims were filed; as CDK itself has previously argued (and Judge St. Eve has previously held), counterclaim-related discovery is not subject to the Court-ordered deadlines for other written discovery and does not need to be served until after the counterclaims are filed.

The Interrogatories are also proportional to the needs of this case. CDK apparently seeks millions of dollars in damages from Counter-Defendants, based on allegations of millions of purported individual breaches of contract and statutory violations. Dealership Counter-Defendants did not serve multiple, "blunderbuss" discovery requests in response to the Counterclaims; instead, the Interrogatories are limited in number and are narrowly tailored to obtain information necessary for Counter-Defendants' defenses to CDK's Counterclaims -- information which has not been obtained through prior discovery in this action.

CDK has failed to meet its heavy burden to establish that responding to the Interrogatories would be unduly burdensome, particularly in light of the importance of the discovery sought to Counter-Defendants' ability to defend against the Counterclaims, and the fact that CDK has not yet responded to any interrogatories served by Dealership Plaintiffs in this action. Any purported burden on CDK is low, and Counter-Defendants' compromise offers during meet-and-confer discussions further reduce any burden on CDK to respond to the Interrogatories. For the foregoing reasons, as addressed more fully below, CDK's Motion should be denied in its entirety.

## **BACKGROUND**

CDK filed its Counterclaims, along with its answer to Dealership Class Plaintiffs' Consolidated Class Action Complaint, on February 22, 2019. Dkt. 523. The Counterclaims assert causes of action for alleged common law breach of contract, violation of the Computer Fraud and Abuse Act ("CFAA"), and violation of the Digital Millennium Copyright Act ("DMCA"). *Id.* At their core, CDK's Counterclaims allege that Dealership Counter-Defendants impermissibly

---

[1] CDK's brief in support of its Motion ("CDK Mem.", Dkt. 599) incorrectly states (at 3) that CDK's counterclaims are asserted "against the putative dealership class". The Counterclaims are only asserted against specific Dealership Plaintiffs, not the entire class of dealerships.

handed out their DMS login credentials, directly or indirectly, to third-party data extractors, in order to enable those entities to access the dealerships' CDK DMSs. *Id.* ¶ 2. Dealership Counter-Defendants strongly contest CDK's Counterclaims, as CDK's contracts with dealerships specifically provide that dealerships may allow their employees and agents to access the DMS.[2]

Dealership Counter-Defendants expeditiously served the Interrogatories on CDK two weeks later, on March 8, 2019. *See* Ex. B to CDK Mem. As discussed more fully below, the Interrogatories are narrowly targeted to obtain information concerning (1) CDK's enforcement and/or waiver of the contract provisions that CDK claims were breached by Dealership Counter-Defendants; (2) CDK's own commission of the same acts which CDK accuses Dealership Counter-Defendants of committing; and (3) the damages that CDK alleges it has suffered as a result of Counter-Defendants' alleged conduct.

On March 15, 2019, CDK's counsel wrote to Dealership Counter-Defendants' counsel regarding the Interrogatories. *See* Ex. C to CDK Mem. In that letter, CDK requested that Counter-Defendants completely withdraw the Interrogatories, arguing that they were untimely, duplicative of prior discovery, and unduly burdensome. *Id.* CDK also stated that if Counter-Defendants refuse to withdraw the Interrogatories and CDK is required to respond to them, CDK will serve its own counterclaim-related discovery. *Id.*

On March 21, 2019, Dealership Counter-Defendants' counsel responded to CDK's March 15 letter. *See* Ex. D to CDK Mem. In that letter, Counter-Defendants declined to withdraw the Interrogatories, explaining that the Interrogatories were timely, non-duplicative of prior

---

[2] The Master Services Agreements ("MSAs") between CDK and Counter-Defendants provide that "[Dealership] shall treat as confidential and will not disclose or otherwise make available any of the CDK Products … or any trade secrets, processes, proprietary data, information or documentation related thereto …, in any form, to any person ***other than employees and agents of [Dealership]*** with a need to know." MSA at Section 6.D (emphasis added).

discovery, and not unduly burdensome. *Id.* However, Counter-Defendants indicated their willingness to modify some of the Interrogatories in order to address CDK's concerns. Specifically, in an attempt to reach a compromise and avoid motion practice, Counter-Defendants offered to completely withdraw Interrogatories Nos. 17 and 18, and offered to accept summary responses to the Interrogatories which called for CDK to identify numerous instances of certain events or conduct. *Id.* at 3 ("To the extent that CDK's responses to any Interrogatory would require CDK to identify an unduly burdensome number of 'instances', Dealership Plaintiffs are willing to accept a response which states the approximate number of instances of the events which are the subject of the Interrogatory, and which provides a summary of the other identifying information sought in the Interrogatory."). Dealership Counter-Defendants also remained open to consideration of other "burden" arguments by CDK. *Id.*

On March 28, 2019, having received no further response from CDK, Dealership Counter-Defendants' counsel sent an email to CDK's counsel asking "whether CDK intends to respond to Dealership Plaintiffs' counterclaim-related interrogatories, whether CDK seeks a further meet-and-confer call on this issue, or whether CDK intends to file a motion on this issue." *See* Exhibit 1, attached hereto. On April 1, 2019, CDK's counsel responded by email, stating that CDK intended to seek a protective order, *see id.*, and CDK filed its Motion later that same day.

## LEGAL STANDARDS

The Court has broad discretion when resolving discovery disputes. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013); *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich. Inc.*, 674 F.3d 630, 636 (7th Cir. 2012).

Rule 26 allows the discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When determining the scope of discovery, Rule 26(b)(1) requires consideration of "the importance of

the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

"The burden is on the party seeking the protective order to demonstrate that good cause exists for the entry of the order by making a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Ball Corp. v. Air Tech of Mich., Inc.*, No. 4:16-cv-42, 2019 U.S. Dist. LEXIS 11384, at *6 (N.D. Ill. Jan. 24, 2019) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)); *see also Lawson Prods. v. Midwest Motor Supply Co.*, No. 17 C 1250, 2017 U.S. Dist. LEXIS 202835, at *3 (N.D. Ill. Dec. 8, 2017) ("The movant bears a heavy burden to prove, through specific facts, that good cause exists."). "To determine whether a party has shown good cause, the district court must balance the parties' interests, taking into account the importance of disclosure to the nonmovant and the potential harm to the party seeking the protective order." *Calhoun v. City of Chicago*, 273 F.R.D. 421, 422 (N.D. Ill. Apr. 8, 2011) (citing *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997)).

## ARGUMENT

### I. THE INTERROGATORIES ARE TIMELY

Counter-Defendants' Interrogatories are timely, because counterclaim-related discovery is not subject to the May 25, 2018 deadline for other written discovery and need not be served until after the relevant counterclaims are filed, as CDK itself has previously argued.

CDK relies heavily on this Court's January 17, 2019 Order for its argument that the Interrogatories are untimely. But in the briefing of the motion which led to that Order, CDK took the exact *opposite* position. In November 2018, CDK sought a protective order against discovery requests filed by Authenticom and other individual plaintiffs. In its motion papers, in order to explain why its own counterclaim-related discovery was timely but Authenticom's

5

discovery was not, CDK stated that ***"[t]he May 25 deadline does not apply to any discovery on CDK's counterclaims.*** Those counterclaims were not filed until after May 25 (Dkt. 230), and ***Judge St. Eve made clear (Dkt. 65 at 63) that counterclaim discovery did not need to be served until after the counterclaims were on file***." Defendant CDK Global, LLC's Memorandum in Support of its Motion for Protective Order (Dkt. 446) at 6 n.6 (emphasis added). CDK further argued that "[a]ny claim … that CDK could have served its counterclaim discovery prior to filing its counterclaims … is wrong." *Id.* at 12 n.9; *see also id.* at 12 ("CDK's discovery related to its counterclaims ***necessarily*** followed the filing of those claims—a fact Judge St. Eve previously acknowledged.") (emphasis in original).

CDK now takes the diametrically opposite position, not only contradicting its own prior position, but also completely ignoring Judge St. Eve's prior ruling on the timeliness of counterclaim-related discovery. Over one year ago, Judge St. Eve "made clear" (as CDK put it) that counterclaim discovery was not governed by the deadline for other written discovery and did not need to be served until ***after*** the relevant counterclaims were filed:

> MS. GULLEY: Well, I just mentioned earlier that Reynolds has not filed their counterclaim – its counterclaims – yet; and, therefore, there's obviously – I mean, you're not suggesting that the not-yet-filed counterclaims discovery needs to be served by –
>
> THE COURT: No. If it is not on file yet, no.

Transcript of Proceedings, Mar. 12, 2018 (Dkt. 65), at 63. CDK's failure to acknowledge Judge St. Eve's prior ruling in its motion papers is completely unacceptable, especially as CDK has previously cited Judge St. Eve's ruling when it was helpful for CDK to do so.

CDK's prior position on this issue was correct: counterclaim-related discovery is ***not*** subject to the May 25, 2018 deadline, and parties are ***not*** required to serve counterclaim discovery until ***after*** those counterclaims are filed. CDK's prior arguments are even stronger

when applied to Dealership Counter-Defendants' Interrogatories; if CDK could not serve discovery relating to its *own* counterclaims before those claims were filed, Counter-Defendants certainly could not have served their counterclaim-related discovery before ever seeing CDK's Counterclaims. CDK's self-serving change of position on this issue should be rejected.

Dealership Counter-Defendants promptly served the Interrogatories two weeks after CDK filed its Counterclaims. CDK cannot argue that Counter-Defendants unduly delayed serving the Interrogatories, especially where CDK waited over six weeks after filing its counterclaims against Authenticom to serve discovery relating to those counterclaims. *See* Dkt. 446 at 12 ("CDK filed its *Authenticom* counterclaims on June 29, 2018, and served its counterclaim discovery requests several weeks later on August 13, 2018.").

Moreover, CDK and the Court were given advance notice of the Interrogatories. At the February 27, 2019 status conference with Magistrate Judge Gilbert, Dealership Plaintiffs' counsel informed the Court that Dealership Counter-Defendants intended to serve counterclaim-related discovery on CDK; the Court did *not* prohibit or discourage Plaintiffs from doing so. *See* Exhibit 2 (Transcript of Proceedings, Feb. 27, 2019) at 32 ("MS. WEDGWORTH: We anticipate some [counterclaim-related] discovery, at a minimum.").

Dealership Counter-Defendants are not clairvoyant and could not have served discovery in May 2018 to defend against counterclaims that were not filed until over nine months later – and no Court order required them to do so. Any argument to the contrary is illogical, contradicts CDK's prior position on counterclaim discovery, and should be rejected.

## II. THE INTERROGATORIES ARE RELEVANT, PROPORTIONAL, AND NON-DUPLICATIVE

The Interrogatories are proportional to the needs of Counter-Defendants to defend against CDK's recently asserted Counterclaims. The issues at stake are important, as they not only affect

Counter-Defendants, but may potentially affect all auto dealerships in the United States; the amount in controversy is high, as CDK alleges literally millions of individual breaches of contract and/or statutory violations by Counter-Defendants; CDK has direct access to the information sought by the Interrogatories, but Counter-Defendants do not; and CDK has ample financial and legal resources to respond to the Interrogatories.[3]

CDK argues that "The Interrogatories Are Unnecessary to Address CDK's Counterclaims". CDK Mem. at 5. However, it is not up to CDK to determine what evidence is necessary to defeat its Counterclaims; Dealership Counter-Defendants must be allowed to determine for themselves how they intend to defend against those claims. Unless CDK is willing to concede that its Counterclaims fail as a matter of law (as Counter-Defendants argue in their motion to dismiss), or that the evidence gathered in this MDL proceeding is already sufficient to require dismissal of the Counterclaims with prejudice, CDK cannot unilaterally dictate that the Interrogatories are "unnecessary" to Counter-Defendants' defense.

### A. The Interrogatories Are Squarely Aimed at CDK's Counterclaims

The Interrogatories are narrowly tailored to gain information concerning CDK's Counterclaims. Interrogatories Nos. 1-3 ask CDK to identify (1) all of its executives' public statements concerning "whether CDK dealers were permitted to provide their DMS login credentials to third parties ….", (2) all instances in which CDK "communicated … its consent for a CDK dealer to provide its login credentials to a third party ….", and (3) all instances in which CDK attempted to enforce the contract provisions that allegedly prohibited dealers from

---

[3] *See Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, No. 17 C 1973, 2019 U.S. Dist. LEXIS 42286, at *15 (N.D. Ill. Mar. 15, 2019) ("Proportionality analysis involves consideration of various factors, including the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issue, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

providing login credentials to third parties. These three interrogatories are directly relevant to CDK's Counterclaims, as Counter-Defendants believe CDK's public statements will confirm that Counter-Defendants' contracts with CDK permitted them to share access to their DMS with their employees and agents. At a minimum, CDK's statements will demonstrate a waiver of any alleged contractual prohibitions on dealers' ability to provide their login credentials to third parties, CDK explicitly waived those alleged contract prohibitions on multiple occasions, and CDK's consistent failure to enforce those alleged prohibitions also served as a waiver.

Interrogatories Nos. 4 through 10 focus on the alleged acts by Dealership Counter-Defendants which form the basis of CDK's Counterclaims and ask CDK to identify the instances in which it engaged in the *same* conduct which CDK now claims were violations of law. Indeed, these interrogatories quote CDK's own descriptions of those alleged acts. Counter-Defendants believe that CDK's responses to these interrogatories will reveal CDK's hypocrisy in asserting Counterclaims for the same conduct in which it has repeatedly engaged; evidence of CDK's own "unclean hands" is also relevant to CDK's request for equitable relief.[4]

Interrogatories Nos. 11 through 15 seek information concerning the specific damages that CDK claims to have suffered as a result of each Dealership Counter-Defendant's purported breaches of contract and/or violations of law. These interrogatories are directly related to CDK's Counterclaims and could not have been propounded before CDK filed its Counterclaims. Counter-Defendants believe CDK's responses will show that CDK has not suffered any

---

[4] *See* Counterclaims ¶¶ 145-46, 156-58 (requests for equitable relief). *See also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 822 (7th Cir. 2010) (the "unclean hands" doctrine provides that "equitable relief will be refused if it would give the plaintiff a wrongful gain," and the "plaintiff who acts unfairly, deceitfully, or in bad faith may not through equity seek to gain from that transgression"); *GEFT Outdoor, L.L.C. v. City of Westfield*, No. 1:17-cv-04063-TWP-TAB, 2018 U.S. Dist. LEXIS 167580, at *15 (S.D. Ind. Sept. 28, 2018) ("[Plaintiff]

compensable damages as a result of the conduct alleged in the Counterclaims; in any event, as CDK will have to prove the specific date, time, and place of each Counter-Defendant's alleged violations of law, these interrogatories will allow both parties to prepare a proper case for trial. Interrogatory No. 16 also focuses on CDK's alleged damages by seeking information concerning CDK's losses arising from its own internal data security problems; Counter-Defendants believe that CDK's responses will show that the damages that CDK seeks to recover were, in fact, caused by CDK's own actions, not by any actions of Counter-Defendants. *See United States ex rel. Tyson v. Amerigroup Ill. Inc.*, 230 F.R.D. 538, 544 (N.D. Ill. 2005) ("[W]here a defendant files a counterclaim, it must prove damages, and a contention interrogatory directed to the theory and amount of damages is likewise relevant and appropriate.").[5]

Finally, Interrogatories Nos. 17 and 18 ask CDK to identify the documents and other evidence that CDK believes support its Counterclaims against each Dealership Counter-Defendant. These interrogatories are directly related to CDK's Counterclaims and could not have been propounded prior to CDK's filing of the Counterclaims. In the spirit of cooperation and in order to avoid potentially overburdening CDK, Dealership Counter-Defendants have already offered to completely withdraw Interrogatories Nos. 17 and 18 (and that offer still stands).

---

has unclean hands and cannot now seek equitable relief in the form of a preliminary injunction.").

[5] CDK argues that it need not respond to damages-related interrogatories because it plans to serve Rule 26(a)(1)(A) disclosures on its claimed damages sometime "prior to the close of fact discovery." *See* CDK Mem. at 12. However, the mandatory, basic initial disclosures required under Rule 26(a)(1)(A) are ***not*** a substitute for full responses to discovery requests, and the existence of (as-yet unseen) initial disclosures on damages do not foreclose subsequent discovery on that same topic. *See* Fed. R. Civ. P. 26, Adv. Committee Notes to 1993 Amendments ("Nor are parties prohibited from using traditional discovery methods to obtain further information regarding these matters …."); *Reimer v. Ctr. for Counseling & Health Res.*, No. C07-1123 MJP, 2008 U.S. Dist. LEXIS 116837, at *3 (W.D. Wash. July 7, 2008) (Rule 26(a)(1)(A) "contemplates a 'prediscovery exchange of core information' and is not a substitute for the discovery process.").

**B.**    **The Interrogatories Are Neither an "End Run" Around the Deadline for Other Written Discovery, Nor Impermissibly Duplicative of Prior Discovery**

As established above, each of the Interrogatories is directly relevant to the Counterclaims filed by CDK. Dealership Counter-Defendants served the Interrogatories to gain information for their defense against CDK's Counterclaims, not as an "end run" around the May 25, 2018 deadline for other written discovery.

None of MDL Plaintiffs' prior discovery requests squarely sought the information that is sought in the Interrogatories. Although CDK's brief (at 6-11) includes a chart which purports to identify overlap between the Interrogatories and prior discovery requests, the prior requests identified by CDK are only tangentially related to the information sought by the Interrogatories. For example, Interrogatory No. 8 seeks the identification of all instances in which CDK "obtained copies of any other DMS provider's DMS software without that DMS provider's prior consent …"; CDK argues that that narrowly-drawn interrogatory overlaps with two prior document requests, but one of those prior requests ("Dealer RFP 31") has ***nothing*** to do with whether CDK obtained copies of any other DMS provider's DMS software, and the other request ("Authenticom RFP 19") only refers to "CDK's … access to data on non-CDK, non-Reynolds DMS platforms," not whether CDK obtained copies of any other DMS provider's DMS ***software***. For other Interrogatories (Nos. 11, 17 and 18), CDK does not identify ***any*** overlapping prior discovery request. *Id.*

To be sure, there is some overlap between the Interrogatories and MDL Plaintiffs' prior discovery requests; such overlap is to be expected, as counterclaims typically "arise[] out of the same transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1). However, despite that typical overlap, the Federal Rules of Civil Procedure do not prohibit counterclaim-related discovery; instead, it is axiomatic that counterclaim discovery

is contemplated by the Federal Rules.[6] Although prior discovery touches on some of the same topics as the Interrogatories, parties may use multiple forms of discovery to obtain relevant information, as the different discovery devices are meant to be complementary, not exclusive.[7]

Interrogatory responses can fill in discovery "gaps" by providing information that is not contained in documents and is outside the knowledge or recollection of deponents. Indeed, CDK executives have acknowledged lacking memory of many specific documents and events and have repeatedly testified that they were not aware of certain activities that took place at CDK; the Interrogatories seek to fill in the holes in that testimony.[8] For example, Interrogatories Nos. 11 through 15 seek information about the specific losses and damages that CDK claims to have suffered as a result of each Dealership Counter-Defendant's purported breaches of contract

---

[6] *See, e.g., Sun Life Assurance Co. of Canada v. Jackson*, No. 3:14-cv-41, 2015 U.S. Dist. LEXIS 16220, at *18-19 (S.D. Ohio Feb. 9, 2015) ("[Plaintiff] is, of course, entitled to discovery relevant to [defendant]'s counterclaims.") (citing Fed. R. Civ. P. 26(b)(1)), *aff'd*, 877 F.3d 698 (6th Cir. 2017); *Bank of Am., N.A. v. First Mut. Bancorp of Ill.*, No. 09 C 5108-GSB, 2010 U.S. Dist. LEXIS 58519, at *17 (N.D. Ill. June 14, 2010) (a counterclaim plaintiff "has an obligation to provide discovery about its counterclaims …").

[7] *See Jasco Tools, Inc. v. Dana Corp. (In re Dana Corp.)*, 574 F.3d 129, 150 (2d Cir. 2009) ("[T]he various discovery methods are more complementary than fungible. For example, documents or interrogatory answers may help to identify persons with knowledge of the pertinent events, so that those persons may be deposed; depositions, at which there can be cross-examination, may serve to clarify statements in documents that are ambiguous; and deposition testimony may be shown to have been false after documentary evidence is obtained. No one type of discovery is necessarily an adequate substitute for another."); *V.O. Machinoimport v. Clark Equip. Co.*, 11 F.R.D. 55, 60 (S.D.N.Y. 1951) ("The deposition-discovery rules create integrated procedural devices. The sections are complementary to one another and the use of one does not restrict the further use of the other on the same subject matter. The various sections may be used independently, simultaneously or consecutively as required.") (internal citations omitted).

[8] *See In re Folding Carton Antitrust Litig.*, 83 F.R.D. 256, 259 (N.D. Ill. 1979) ("Interrogatories are not improper simply because the same information can be obtained by use of a different discovery procedure.") (citing 8 C. Wright & A. Miller, Federal Practice and Procedure § 2169); *B. & S. Drilling Co. v. Halliburton Oil Well Cementing Co.*, 24 F.R.D. 1, 4 (S.D. Tex. 1959) (although a party may have given relevant deposition testimony on a particular topic, the opposing party "still is entitled to obtain a clear answer subsequently through interrogatories, unless a hardship or injustice would be done to plaintiff thereby.").

and/or violations of law. After the Counterclaims were filed, Plaintiffs' counsel took the depositions of Howard Gardner (CDK VP of Data Services) and Steven Anenen (former CDK CEO). Those witnesses were shown a list of the Dealership Counter-Defendants and asked if they knew whether any of those dealers caused financial damage to CDK; both witnesses denied having any knowledge of any damages caused by Counter-Defendants, and Anenen denied knowledge of *any* dealership clients of CDK that caused financial harm or damage to the company. *See* Exhibit 3 (Gardner Tr.) at 523:19-524:17; Exhibit 4 (Anenen Rough Tr.) at 305:08-306:04; Exhibit 5 (Plaintiffs' depo. ex. 977). Mssrs. Gardner's and Anenen's testimony demonstrates that depositions are not sufficient to obtain information concerning CDK's alleged losses and damages, and highlights the need for CDK to respond to the Interrogatories.

CDK's Counterclaims – for the first time – allege *millions* of specific instances in which Counter-Defendants allegedly enabled unauthorized access to their DMS. *See* Counterclaims ¶¶ 104-32. In order to defend against those new allegations, Counter-Defendants are entitled to require CDK to identify the damages that allegedly resulted from each Counter-Defendant's alleged acts, and the Interrogatories are the most appropriate way to obtain such information.

### C.     The Interrogatories Are Not Unduly Burdensome

CDK has not met its heavy burden to establish that responding to the Interrogatories would be unduly burdensome. CDK *cannot* meet that burden, because the Interrogatories as written are not unduly burdensome, and Dealership Counter-Defendants have already offered to reduce any burden on CDK by offering (a) to withdraw two of the Interrogatories, and (b) to accept summary responses to many of the other Interrogatories.

CDK does not merely claim that *some* of the Interrogatories are unduly burdensome; instead, CDK makes the blanket assertion that *each and every* individual Interrogatory is unduly burdensome, without offering an explanation as to why it would be unduly burdensome to

respond to any individual Interrogatory. Such blanket assertions are improper under Rule 26(c); instead, a party seeking a protective order must offer specific facts to establish that good cause exists for a protective order for each interrogatory it seeks to avoid.[9]

CDK devotes a mere two paragraphs of its brief (at 14-15) to explain why the Interrogatories are supposedly overly burdensome, and those flimsy arguments do not stand up to scrutiny. CDK states (at 14) that "fourteen of the eighteen interrogatories ask CDK to identify each instance, during a period of more than *eight years*, in which a particular kind of event occurred, and to provide details about those occurrences." But CDK fails to offer any specific facts why an eight-year time period for those responses is inappropriate and fails to propose a time period that CDK believes would be appropriate.

CDK also argues (at 14) that responding to the Interrogatories would require it to review its *entire* document production in this case; however, CDK fails to explain why reviewing its entire document production – as opposed to the portions of the production that are most likely to contain the requested information – would be necessary. CDK also fails to acknowledge that it has another source of information it can "tap into" for its responses: CDK's own employees. Unlike Dealership Counter-Defendants, CDK has direct, unfettered access to its own employees, who can direct CDK's counsel to the location of the information sought by the Interrogatories.

---

[9] *See Infowhyse GmbH v. Fleetwood Grp.*, No. 15 cv 11229, 2016 U.S. Dist. LEXIS 99217, at *13 (N.D. Ill. July 29, 2016) ("sweeping, boilerplate objections" to multiple document requests "without proper amplification, [are] inappropriate …."); *In re Peregrine Fin. Grp. Customer Litig.*, No. 12 C 5546, 2015 U.S. Dist. LEXIS 34829, at *13 (N.D. Ill. Mar. 20, 2015) (rejecting boilerplate assertions of undue burden, as "[c]laims of undue burdensomeness require a specific showing of what is involved."); *Jackson v. N'Genuity Enters. Co.*, No. 09 C 6010, 2011 U.S. Dist. LEXIS 113511, at *48 (N.D. Ill. Oct. 3, 2011) ("[B]oilerplate claims of undue burden are insufficient.") (citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360-361 (N.D. Ill. 2005)).

More importantly, CDK completely fails to acknowledge that Counter-Defendants have *already* offered to accept summary responses to most of the Interrogatories, should responding to them prove overly burdensome. *See* Ex. B to CDK Mem., at 3. Counter-Defendants also offered to completely withdraw Interrogatories No. 17 and 18. *Id.* CDK's brief says **nothing** about those compromise offers. Counter-Defendants' offer to accept summary responses to many of the targeted Interrogatories, and to withdraw two others, completely negates any argument of undue burden. CDK did not even respond to those offers, showing that CDK's "burden" argument is merely a pretext for its refusal to respond to the Interrogatories.

## III. CDK SHOULD NOT BE ALLOWED TO SERVE RETALIATORY DISCOVERY

Following service of the Interrogatories, CDK threatened to serve its own counterclaim discovery unless Dealership Counter-Defendants agreed to completely withdraw the Interrogatories. *See* Ex. A to CDK Mem., at 2. Counter-Defendants refused to give in to those pressure tactics. CDK now states that if the Court denies its Motion, it plans to serve its own counterclaim discovery. The Court should not permit CDK to serve such retaliatory discovery.

If CDK truly believed it needed discovery for its Counterclaims, CDK could have served such discovery concurrently with the filing of the Counterclaims. But CDK chose not to do so, in apparent recognition that such discovery was not necessary; that makes sense, because CDK's control over the content of its own Counterclaims allowed CDK to craft its prior discovery requests to obtain information relevant to its nascent counterclaims. CDK's current threat to serve its own counterclaim discovery appears to be an act of retaliation for being required to respond to the Interrogatories. Such tactics are plainly improper and should not be permitted.

## CONCLUSION

Dealership Counter-Defendants respectfully submit that for the foregoing reasons, the Court should deny CDK's Motion in its entirety.

DATED: April 17, 2019

Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Counsel for the Dealership Class*

Leonard A. Bellavia (*pro hac vice*)
Steven Blatt
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*
Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
dnordin@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

16

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (*pro hac vice*)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7 423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C .**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

*MDL Liaison Counsel*

## __CERTIFICATE OF SERVICE__

I, Peggy J. Wedgworth, an attorney, hereby certify that on April 17, 2019, I caused a true and correct copy of the foregoing DEALERSHIP COUNTER-DEFENDANTS' MEMORANDUM IN OPPOSITION TO CDK GLOBAL, LLC'S MOTION FOR PROTECTIVE ORDER to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*_____
Peggy J. Wedgworth

18