# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

# MEMORANDUM OF LAW IN SUPPORT OF MDL PLAINTIFFS' MOTION CHALLENGING CDK GLOBAL, LLC'S MARCH 8, 2019 CLAWBACKS AND TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM CDK GLOBAL, LLC'S FTC PRIVILEGE LOG

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

LEGAL STANDARD ....................................................................................................................... 4

ARGUMENT .................................................................................................................................... 4

    I.    CDK's Attempt To Clawback Unprivileged Documents Should Be Rejected .................... 4

    II.   CDK's Questionable Assertions Of Privilege Warrant Further In Camera Review Of A Sample Of Documents From The Belated FTC Privilege Log .......................................... 8

    III.  CDK Improperly Asserts Privilege Over Communications With Third Parties .................. 9

    IV.  The Court Should Apply The Same Rulings To CDK That The Court Orders With Respect To Identical Issues That CDK Has Raised .......................................................... 12

CONCLUSION ............................................................................................................................... 13

## INTRODUCTION

Defendant CDK Global, LLC ("CDK") has made sweeping and unwarranted claims of privilege over documents that are damaging to its case. On March 8, 2019, CDK sought to claw back 690 documents that had been produced months ago. There is no basis for CDK to claim privilege for most of these documents. For example, CDK seeks to shield from discovery a summary of business discussions between CDK and Reynolds about their unlawful agreements merely because a CDK employee copied an in-house attorney with the note: ████████ ███████████████. In many others, CDK employees discuss business issues in emails that copy an attorney but do not contain any request for or provision of legal advice. It is well-established that merely copying an attorney on an email does not warrant invocation of the attorney-client privilege, or else parties would make a mockery of the privilege by always copying attorneys. Mindful of the Court's time, MDL Plaintiffs request the Court rule on a sample of 25 documents submitted *in camera*. The parties can apply those rulings to the remaining documents challenged by MDL Plaintiffs and, if necessary, bring any remaining disputes to the Court.

CDK's unwarranted assertions of privilege also raise concerns with more than 40,000 entries in privilege logs CDK produced to the Federal Trade Commission pursuant to a Civil Investigative Demand ("CID") (later consolidated into one log). CDK produced these logs to MDL Plaintiffs for the first time on March 8, 2019 – less than two months prior to the close of fact discovery. MDL Plaintiffs do not know whether CDK's belated privilege assertions are sound because, unlike the documents that CDK seeks to claw back, MDL Plaintiffs have not seen the underlying documents for this privilege log. However, strong indicia suggest that the same problems infect the most recent privilege claims by CDK. Accordingly, MDL Plaintiffs respectfully request that the Court order CDK to submit another 25 documents selected by MDL Plaintiffs for *in camera* review (for a total of 50 documents). The Court should order production

of any of those documents that are not privileged. Based upon the results of that review, MDL Plaintiffs may seek further relief.

The Court should also compel production of approximately 500 documents on CDK's privilege log that include a third party, thus facially defeating the privilege asserted by CDK. MDL Plaintiffs have requested that CDK provide further information explaining why these communications remain privileged despite the inclusion of third parties, but CDK has declined to provide that information. Nor does it appear there is any basis to assert privilege over these documents. CDK must establish that the inclusion of the third party was necessary for the provision of legal advice. Many of the documents, however, are with The Reynolds and Reynolds Company ("Reynolds") (CDK's purported competitor), public relations firms, and business advisers – each of whom are tangential, at best, to any legal advice provided by CDK's counsel.

Finally, CDK has previously moved to compel production of documents from Plaintiff Cox Automotive for which Plaintiff Cox Automotive did not identify the author or recipients of the documents on the privilege log or did not identify the name of the attorney whose legal advice was requested or provided. Notwithstanding CDK's contention that failure to include that information results in forfeiture of any privilege, CDK itself has not provided the same information for thousands of documents on its privilege logs. To the extent the Court grants CDK's motion to compel on these issues, MDL Plaintiffs respectfully request that the Court order the same relief with respect to the same issues in CDK's privilege logs.

**BACKGROUND**

CDK's document production in this litigation consists of two parts. CDK initially re-produced documents that CDK has previously produced to the FTC in response to a CID regarding anticompetitive conduct between CDK and Defendant Reynolds (the "FTC Production"). CDK also produced additional documents that were responsive to MDL Plaintiffs' discovery requests.

The deadline for substantial competition of document discovery was October 12, 2018, and the deadline for providing privilege logs was November 12, 2018. *See* ECF No. 166, at 2.

**2.** On March 8, 2019, CDK sought to claw back 690 documents that had previously been produced to MDL Plaintiffs months ago on grounds that these documents were actually privileged ("Clawback Documents"). *See* Ex. A ("Clawback Letter"). On March 26, 2019, MDL Plaintiffs challenged CDK's attempt to claw back 613 of the 690 Clawback Documents. *See* Ex. B. On April 10, 2019, CDK withdrew its request to claw back four of the contested documents but otherwise stood on its assertion of privilege with respect to the remaining 609 challenged Clawback Documents. That same day, CDK provided a privilege log explaining the basis for its privilege assertions for the Clawback Documents.

After months of MDL Plaintiffs repeatedly requesting that CDK produce a privilege log for its FTC Production, CDK finally agreed that it would do so on March 8, 2019 – nearly five months after the November 12, 2018 deadline for privilege logs. On that date, CDK provided for the first time 11 separate privilege logs for its FTC Production (which were later combined into a single privilege log, the "FTC Privilege Log"). The privilege logs were dated as far back as March 21, 2018 – indicating that these privilege logs had been created and provided to the FTC nearly a year before CDK decided to provide them to MDL Plaintiffs. The FTC Privilege Log contains more than 40,000 assertions of privilege less than two months prior to the close of fact discovery.[1] On March 26, 2019, MDL Plaintiffs provided CDK with their challenges to these belated privilege assertions. *See* Ex. B. The parties subsequently met-and-conferred but were unable to resolve

---

[1] Dealership Class Plaintiffs filed motions to compel (ECF Nos. 294 and 308), respectively, in July and August 2018, without the benefit of any CDK privilege logs. There are 1,399 documents that were challenged by Dealership Class Plaintiffs in those motions, and that are listed on the FTC logs that MDL Plaintiffs are currently challenging.

many of the disputes.  *See* Exs. C, D, E, and F.  Exhibit G contains MDL Plaintiffs' remaining challenges to CDK's FTC Privilege Log.

## LEGAL STANDARD

The party asserting the attorney-client privilege bears the burden of establishing:

> (1) that legal advice of any kind was sought (2) from a lawyer in his capacity as such, (3) the communications related to that purpose, (4) they were made in confidence (5) by the client and/or his agent, (6) were at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless waived.

*Glenwood Halsted LLC. v. Vill. of Glenwood*, 2013 WL 140794, at *1 (N.D. Ill. Jan. 11, 2013) (citing *United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991)).  A party claiming privilege must provide sufficient information to "enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A)(ii).

## ARGUMENT

### I. CDK's Attempt To Clawback Unprivileged Documents Should Be Rejected

MDL Plaintiffs challenge 601 of the 690 documents that CDK seeks to claw back.  See Ex. H.  MDL Plaintiffs appreciate that ruling on each of these 601 documents would be time consuming for the Court.  Accordingly, MDL Plaintiffs respectfully request that the Court rule on 25 disputed documents submitted *in camera*.  *See* Exs. I.1-I.25.  Each of these exhibits contains the version of the document originally produced by CDK (printed in white) and the version of the document that CDK proposes as a replacement to protect supposedly privileged information (printed in pink).  Upon receiving the Court's ruling, MDL Plaintiffs will confer with CDK to apply the rulings to the remaining documents and then raise any disputes that remain.  *See In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 2676165, at *3 (N.D. Ala. Jan. 29, 2018) ("Where the number of challenged documents is too numerous to allow for document-by-document

examination, courts may employ sampling of withheld documents to determine the validity of a party's overall privilege claims.").

The common thread running through most of the disputed claw back documents – and the documents submitted *in camera* – is that CDK has attempted to shield emails containing ordinary business discussions that happen to copy in-house counsel on (part of) the email chains. However, it is black letter law that "the inclusion of general counsel does not transform all business discussions into privileged attorney-client communications." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013). Rather, "[t]he purpose of the communication must be the obtaining or providing of legal advice, not a business discussion." *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) (quoting *Matter of Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988)). Even "[w]here a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *RBS Citizens*, 291 F.R.D. at 217 (quoting *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987)). "[T]he legal aspect must predominate in the communication under review in order for it to be protected by the attorney-client privilege." *Moore v. Bd. of Tr*s. *of Cmty. Coll. Dist. No. 508*, 2010 WL 4703859, at *3 (N.D. Ill. Nov. 8, 2010) (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) ("[T]he privilege will not apply where the legal advice is incidental to business advice.")).

The following examples from the documents submitted *in camera* illustrate the infirmities in CDK's assertions of privilege. In Exhibit J (CDK-2701505), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- 5 -

- 6 -

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████'██
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
████████████████████████████

Exhibit M (CDK-0879580) is an email thread that CDK originally produced with redactions (belying any notion of inadvertent production) but is now attempting to withhold in its entirety. Substantial parts of the email are not privileged, ████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

---

2 ███████████████████████████████████████
███████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████ There is no basis to withhold this evidence.

Exhibit N (CDK-1083883) is another email thread where CDK second guesses its original decision to produce with redactions and now tries to withhold entirely. ████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ This is directly relevant to MDL Plaintiffs'

claims. *See* ECF No. 198, ¶¶ 118-21 (Dealership Class Complaint).

In Exhibit O (CDK-0467349) and Exhibit P (CDK-0467597), CDK seeks to redact additional business discussions that are inconsistent with CDK's litigating position. ████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████

CDK's recent attempts to claw back unprivileged documents that are damaging to its case is not the first time that CDK has attempted to withhold damaging evidence. ████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

- 7 -



In this instance, MDL Plaintiffs were fortunate enough that some versions of the report had not been withheld so that they were aware of and could request production of this version of the report.  *See* Ex. S.

## II.  CDK's Questionable Assertions Of Privilege Warrant Further In Camera Review Of A Sample Of Documents From The Belated FTC Privilege Log

CDK's unwarranted assertions of privilege with respect to the Clawback Documents raise concern that the same problems infect CDK's FTC Privilege Log.  Indeed, MDL Plaintiffs challenge 6,159 entries in which no attorney is identified as receiving the most recent email in the withheld communications.  *See* Ex. G.  These appear likely to be situations in which CDK has sought to shield business discussions that incidentally copied in-house counsel on previous emails within the chain, as CDK has done in the challenged clawback documents.  In addition, CDK's privilege log contains communications between the same CDK employees who appear to have had a practice of copying in-house counsel on ordinary business discussions.

Here too, MDL Plaintiffs appreciate that it is not feasible for the Court to review the more than 40,000 new privilege claims made by CDK in its FTC Privilege Log.  Rather, MDL Plaintiffs respectfully request that CDK be ordered to provide the Court 25 documents to be selected by MDL Plaintiffs for *in camera* review, for a total of 50 documents to be reviewed *in camera*.  Courts have applied similar approaches when confronted with the possibility of overbroad assertions of privilege on large privilege logs.  *See Dyson, Inc. v. SharkNinja Operating LLC*, 2017 WL

1250830, at *1 (N.D. Ill. Apr. 5, 2017) (in response to challenging party's argument that opponent had "over-designated certain communications and documents as privileged," court conducted *in camera* review of five percent of the documents); *Gen. Elec. Co. v. Johnson*, 2006 WL 2616187, at *2 (D.D.C. Sept. 12, 2006) (reviewing sample of documents to assess whether privilege assertions were "overly broad and inapplicable"); *AAIpharma Inc. v. Kremers Urban Dev. Co.*, 2006 WL 3096026, at *1-2 (S.D.N.Y. Oct. 31, 2006) (ordering *in camera* review of documents to assess whether a party "had made improper claims of privilege on its privilege logs").

### III. CDK Improperly Asserts Privilege Over Communications With Third Parties

MDL Plaintiffs challenge 564 entries from CDK's FTC Privilege Log where CDK asserts privilege over documents shared with a third party. *See* Ex. G. "Distribution of materials to third parties outside the company would obviously, with rare exceptions, result in a waiver" of privilege. *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *2 (N.D. Ill. Apr. 4, 2017). To avoid waiver, CDK must meet the stringent standard of showing "statements made to one's attorney in the presence of a third party non-lawyer" were "necessary to the obtaining or giving of legal advice." *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 2018 WL 1804350, at *4 (N.D. Ill. Apr. 17, 2018); *see* ECF No. 541 at 11-13 (CDK moving to compel on the same grounds).

With its FTC Privilege Log, CDK included "legends" identifying the third parties, for example identifying Aberdeen Strategies as a "PR Firm hired by CDK counsel to assist with the Authenticom case." In large part, those "legends" failed to explain why the third parties were necessary to the provision of legal advice. Accordingly, MDL Plaintiffs requested that CDK provide additional information explaining why the privilege had not been broken by including these third parties in communications. *See* Ex. D. CDK did not provide additional information, and thus has failed to satisfy its burden of establishing the attorney-client privilege. *See Glenwood Halsted*, 2013 WL 140794 (burden lies with party asserting the privilege).

CDK has attempted to justify withholding some of the communications by relying on the so-called "part-and-parcel doctrine." CDK argues that it can withhold an otherwise unprivileged email with a third party merely because that email was attached to another email that CDK claims is privileged. *See* Ex. D. For example, CDK asserts privilege over an email with a car dealership because it was attached to another email that CDK claims is privileged. *See* Ex. G (CTRL-E0000055522.0001.0004.0003). There is no legal basis for that position. CDK can produce the communication with a third party – which CDK does not appear to claim is privileged in its own right – and still withhold the email to which the communication with a third party was attached. Doing so would not disclose the seeking or giving of any legal advice with respect to the communication with a third-party. *See Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000) ("In the end . . . , the question is: does the document in question reveal, directly or indirectly, the substance of a confidential attorney-client communication."), *on reconsideration in immaterial part,* 194 F.R.D. 624 (N.D. Ill. 2000); *see also United States v. Segal*, 2004 WL 830428, at *3 (N.D. Ill. Apr. 16, 2004) ("striv[ing] to permit disclosure of all information that would not reveal confidential information that Defendants provided to their attorneys for the purpose of obtaining legal advice").[3]

In addition to CDK's failure to provide sufficient information to sustain its privilege assertions over communications with third parties (which is reason enough to grant the motion to compel), the nature of the third parties themselves show there is no viable privilege claim. *First*, CDK has asserted privilege claims over communications with its *co-conspirator* Reynolds. ■

---

[3] The only case that CDK has cited to support its position actually undermines its position. In *Muro v. Target Corp.*, 250 F.R.D. 350 (N.D. Ill. 2007), the Court held that a party may "legitimately withhold an entire e-mail forwarding prior materials to counsel, *while also disclosing those prior materials themselves*." *Id.* at 363 (emphasis added). *Muro* thus stands for the principle that parties must produce unprivileged attachments in some form, but CDK has not.



In neither instance (nor others), is there any plausible basis to assert that it was "necessary" for CDK to share its in-house counsel's legal advice with its purported competitor Reynolds.

*Second*, CDK also seeks to shield its communications with public relations firms. *See*, *e.g.*, Ex. G (asserting privilege over communications with public relations firm Aberdeen Strategies regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (CTRL-E0000019473 and CTRL-E0000019473.0001). It is well established that communications with public relations firms do not even meet the standards for privileged attorney work product, let alone the more stringent standards of attorney-client privilege. *See*, *e.g.*, *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) ("It may be that the modern client comes to court as prepared to massage the media as to persuade the judge; but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status"; further, "public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine."); *Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at \*4 (N.D. Ill. May 1, 2014) (work product doctrine does not protect

communications that "strategiz[e] about the effects of the litigation on . . . the media, or on the public generally."). CDK has provided no reason to disregard that principle here.[4]

*Third*, CDK also asserts privilege over communications with financial advisors like Morgan Stanley and Presidio Technology Partners. *See*, *e.g.*, Ex. G (CTRL-E0000145915: communication with Morgan Stanley regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. G (CTRL-E0006068359: communication with Presidio regarding ▇▇▇▇▇▇▇▇▇▇▇▇ For financial advisors, courts apply a stringent standard for privilege that requires the financial advisory to be "necessary, or at least highly useful"; "merely improve[ing]" the legal advice is insufficient. *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 227-28 (D. Mass 2010) (citing cases); see *Heriot v. Byrne*, 257 F.R.D. 645, 666-67 (N.D. Ill. 2009). CDK has made no attempt to show why their financial advisors were necessary for CDK's attorneys to provide legal advice.

## IV. The Court Should Apply The Same Rulings To CDK That The Court Orders With Respect To Identical Issues That CDK Has Raised

In two instances, CDK has moved to compel production of documents for asserted deficiencies that exist in CDK's own privilege logs (including the belated FTC Privilege Log). *First*, CDK moved to compel production of Cox Automotive documents for which the privilege log entries did not identify the author or recipient. *See* ECF No. 544 at 5-6. CDK claimed that the

---

[4] *See also Chevron Corp. v. Salazar*, 2011 WL 3880896, at *1 (S.D.N.Y. Sept. 1, 2011) (public relations consultant's analysis of public reaction to a court judgment is not protected as work product); *In re Prograf Antitrust Litig.*, 2013 WL 1868227, at *3 (D. Mass. May 3, 2013) (attorney work product protection does not apply to communications discussing "standard public relations services related to . . . media fallout" from litigation); *A & R Body Specialty and Collision Works, Inc. v. Progressive Cas. Ins. Co.*, 2013 WL 6044342, at *4 and n.2 (D. Conn. Nov. 14, 2013) (updates by public relations firm to attorney regarding public relations activities relating to litigation are not protected by attorney work product doctrine); *Burke v. Lakin Law Firm, PC*, 2008 WL 117838, at *3 (S.D. Ill. Jan. 7, 2008) (finding "persuasive those cases in other districts ruling that public relations materials are not privileged work product").

ESI Stipulation required that such information be provided and that the "failure to provide such basic information dooms any privilege claim." *Id.* at 5. CDK made this argument despite the fact that all of the documents at issue were attachments to emails and therefore lacked author or recipient information separate from the email to which the documents were attached. *See id.* at 6 (CDK acknowledging most entries "appear to relate to attachments"); ECF No. 573, at 2-3 (Cox Automotive explaining the documents were attachments). *Second*, CDK moved to compel production of Cox Automotive documents for which the privilege log entries did not identify an attorney by name but rather referred to "Cox Legal Department." ECF No. 544, at 14. As Cox Automotive explained, these entries concerned documents that discussed legal advice of in-house counsel but did not identify the in-house counsel by name. *See* ECF No. 573, at 14-15.

CDK's privilege log takes the same approach as Cox Automotive's privilege log. CDK's FTC Privilege Log alone asserts privilege for 9,513 documents without providing the author or recipient. To be sure, many (if not all) of these documents are email attachments for which no author or sender information exists. That, however, does not distinguish CDK's assertion of privilege from Cox Automotive's assertion of privilege. Likewise, for 831 documents in its FTC Privilege Log, CDK does not identify an attorney by name but rather refers to "in-house counsel." Accordingly, MDL Plaintiffs respectfully request that the Court apply the same relief with respect to CDK's privilege logs as it does with respect to CDK's challenges based on the lack of author or recipient information and the lack of a specific name for the attorney providing advice.

## CONCLUSION

For the foregoing reasons, MDL Plaintiffs' Motion should be granted.

- 14 -

Dated: April 17, 2019                                        Respectfully submitted,

*/s/ Peggy J. Wedgworth*                                     */s/ Derek T. Ho*
Peggy J. Wedgworth                                           Derek T. Ho
**MILBERG TADLER PHILLIPS**                                  **KELLOGG, HANSEN, TODD,**
**GROSSMAN LLP**                                             **FIGEL & FREDERICK, P.L.L.C.**
One Pennsylvania Plaza, 19th Floor                           1615 M Street, NW, Suite 400
New York, NY 10119                                           Washington, D.C. 20036
(212) 594-5300                                               (202) 326-7900
pwedgworth@milberg.com                                       dho@kellogghansen.com

*MDL Co-Lead Counsel*

## CERTIFICATE OF SERVICE

      I, Derek T. Ho, an attorney, hereby certify that on April 17, 2019 I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MDL PLAINTIFFS' MOTION CHALLENGING CDK GLOBAL, LLC'S MARCH 8, 2019 CLAWBACKS AND TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM CDK GLOBAL, LLC'S FTC PRIVILEGE LOG** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                        */s/ Derek T. Ho*
                                        Derek T. Ho
                                        **KELLOGG, HANSEN, TODD,**
                                            **FIGEL & FREDERICK, P.L.L.C.**
                                        1615 M Street, NW, Suite 400
                                        Washington, D.C. 20036
                                        (202) 326-7900
                                        dho@kellogghansen.com