IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| THE DEALERSHIP CLASS ACTION | Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT CDK GLOBAL, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER**

In opposing CDK's motion, the dealers rely almost exclusively on statements made by Judge St. Eve to the effect that "counterclaim discovery" was not subject to the May 25, 2018 deadline for written discovery that she established for this MDL in her Case Management Order (Dkt. 166). But the dealers' premise—*i.e.*, that their eleventh-hour interrogatories are "counterclaim discovery"—is incorrect. The dealers could have served almost all of these interrogatories long ago, as evidenced by the fact that they and the other plaintiffs in the MDL served discovery requests in May 2018 that go to the very same information. To allow the dealers to obtain this discovery now, in the guise of "counterclaim" discovery, would violate both the letter and the spirit of the Case Management Order. At minimum, if the Court does permit this discovery, it should permit CDK to take narrow discovery of its own on its counterclaims against the dealers and other MDL plaintiffs.

Their belatedness aside, the new interrogatories also do not pass the proportionality test of Rule 26(b)(1). Nearly all of them require a painstaking inquiry into every occurrence of various kinds of events over a period of more than eight years. The only way to answer these interrogatories is to review vast amounts of documents to catalogue each occurrence in each category and to interview numerous employees in order to determine whether any such occurrences are not reflected in the documentary record. It is patently unfair to impose that kind of burden on CDK in the final days of fact discovery, particularly when the dealers have the necessary documents in their possession and can review them themselves. CDK's motion for a protective order should accordingly be granted.

**ARGUMENT**

    **A.    The Interrogatories Are Duplicative and Unnecessary**

The dealers argue at length that their new interrogatories are relevant to CDK's counterclaims and are therefore permissible "counterclaim-related discovery." Opp. 5; *see also id.* at 8-10. But if mere relevance to counterclaims, without more, made discovery "counterclaim"

1

discovery, the discovery deadline that Judge St. Eve imposed would have no teeth at all: Most, if not all, merits-related discovery could be characterized as relevant to the counterclaims, given the breadth of the relevance standard and the fact that CDK's counterclaims are compulsory counterclaims under Rule 13(a) and therefore arise out of many of the same facts as Plaintiffs' claims. Thus, in order to be proper "counterclaim discovery" under the Case Management Order, discovery requests should be ones that seek discovery of information that is unique and specific to CDK's counterclaims and could not have been served before CDK's counterclaims were filed—and at a bare minimum, any such requests should not be duplicative of merits discovery that was served prior to the May 2018 deadline.

The dealers' new interrogatories fail that test, because they are duplicative of discovery that the dealers served before the deadline, and nearly a year ago. CDK's opening brief demonstrated this in detail, by showing how each interrogatory in the new set save a few[1] was directed at information that was encompassed in the dealers' prior requests. Dkt. 600 (Mem.) at 5-11.

In response to this detailed showing, the dealers offer little apart from a blanket assertion that "the prior requests identified by CDK are only tangentially related to the information sought by the [new] Interrogatories." Dkt. 632 (Opp.) at 11. The dealers only attempt to substantiate that assertion with respect to a single interrogatory, No. 8—and their argument as to this interrogatory boils down to the proposition that that interrogatory is not identically worded to the prior discovery requests. Even with the differences in wording, however, the dealers cannot credibly maintain that any information responsive to Interrogatory 8, which concerns instances in which CDK "obtained copies of any other DMS provider's DMS software without that DMS provider's prior consent" (Mem. 8),

---

[1] CDK did not identify any previous discovery request that overlapped with new Interrogatories Nos. 11, 16, and 17, but these interrogatories are still improper because they are not proportional to the needs of the case, as explained in the opening brief and below. If the Court disagrees, it should require CDK to respond, at most, to those three interrogatories, given the dealers' failure to explain why any other interrogatory is not duplicative of Plaintiffs' earlier discovery.

2

would not have been captured by Plaintiffs' prior broadly-worded RFPs seeking "[a]ll documents and communications concerning CDK's . . . access to data on non-CDK, non-Reynolds DMS platforms," including "the technological means by which CDK accesses or accessed data on" those DMSs (Dkt. 320-4 at 13 (Authenticom RFP No. 19), and "[a]ll documents regarding CDK's use of any Third Party Integrator . . . for Data Integration Services" (Dkt. 320-6 at 20 (Dealer RFP No. 31)). If this is what the dealers believe is their *strongest* example of non-duplication, cherry-picked among their eighteen new interrogatories, their argument surely fails.

The dealers offer a number of other arguments why their new interrogatories are proper, but these arguments miss the point. The problem here is not simply that, as the dealers put it, "there is some overlap" between their new interrogatories and the previously-served discovery requests (Opp. 11); rather, it is that *all* of the information encompassed by the new interrogatories would have been produced in response to the earlier requests. Nor is CDK's objection, as the dealers suggest, a generic objection to the dealers using interrogatories to learn about a topic that is also the subject of other discovery. Opp. 12 & n.7. Had the dealers served their interrogatories in May 2018, their overlap with RFPs or other discovery requests served at the same time might not have been problematic. What is objectionable about the dealers' tactics here is that they served these interrogatories well *after* they received discovery productions encompassing the subject matter of the interrogatories—and after being admonished by the Court that it was time for discovery in the case to wind down, rather than continuing into further "detours" (Dkt. 498 at 3). That tactic should not be rewarded by allowing the dealers to avoid the consequences of their decision not to serve these interrogatories before the May 2018 deadline, by obtaining responses to them at this late date.

B.     **The Interrogatories Are Not Proportional to the Needs of the Case**

Even if the new interrogatories were not a second, belated bite at the apple on discovery topics that the dealers have already probed, they would be improper under Rule 26 because they are not proportional to the needs of the case.

The dealers' criticisms of CDK's burden argument as a "boilerplate objection" and a "blanket assertion" (Opp. 13-14 & n.9) are incorrect. CDK made the "specific showing of what [would be] involved" in answering these interrogatories that the dealers argue is lacking. *See In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *4 (N.D. Ill. Mar. 20, 2015). Specifically, CDK explained that these interrogatories are sweeping in their scope—most ask CDK to identify every instance in which a particular event occurred over a period of more than eight years and to give details about each instance. *See* Mem. Ex. B at 6-11. Answering these interrogatories would require CDK to review its entire documentary record and interview numerous employees to determine, for example, *every* instance in which it may have had a communication with a dealer of a particular kind (*id.* at 6) or *every* instance in which DMI or IntegraLink, CDK's former subsidiaries, accessed another DMS provider's DMS (*id.* at 7). *See* Mot. at 5-11. The dealers' professed confusion about "why an eight-year time period for those responses is inappropriate" (Opp. 14) is incredible—both because the requests are broad and burdensome on their face, and because the dealers' brief admits that the number of "specific instances" in which the dealer counterclaim-defendants accessed CDK's DMS without authorization is in the "millions" (*id.* at 13 (emphasis omitted)). It follows that the number of times CDK's DMS and its systems were "overburdened or 'tied up'" as a result of this unauthorized access (Interrogatories No. 12-14) may be similarly large—and that is only one of the numerous types of "instances" the dealers wish CDK to catalogue. It is manifestly burdensome for the dealers to ask CDK to compile all of this information in a belated set of interrogatories served less than two months before the close of fact discovery.

4

The dealers' suggestion that CDK can simply review "the portions of [its document] production that are most likely to contain the requested information" (Opp. 14) is incorrect; CDK effectively would need to review its entire production and interview numerous employees in order to answer the dealers' interrogatories accurately. For example, Interrogatory No. 3 in the new set asks CDK to identify "all instances . . . in which CDK attempted to enforce" its contractual restrictions on DMS access by third parties "against any CDK Dealer." Mem. Ex. B at 6. In order to respond to that interrogatory, CDK would need to review all the documents it produced in order to determine which are communications with dealers, and then review all of those communications in depth to determine their substance. CDK would also need to inquire of its employees in an effort to capture information not reflected in these documents. Similarly, Interrogatory No. 2 asks CDK to identify "all instances … in which CDK communicated (to *any entity*, including *without limitation* any dealer or vendor) its consent for a CDK dealer to provide its DMS login credentials to a third party." *Id.* (emphasis added). Once again, the only way for CDK to accurately answer this interrogatory effectively would require CDK to review all of its communications with dealers, vendors, and "any" other entities to determine whether they could be responsive, and to inquire of its employees regarding any responsive, undocumented information. There are no shortcuts to answering these interrogatories—or any of the others.

      Nor is the burden on CDK meaningfully alleviated by the dealers' offer to accept "summary responses" giving approximate numbers and details for each type of "instance" mentioned in the interrogatories. Opp. 15. As should be obvious, to compile even approximate numbers—and to gather all of the other details sought by the dealers—CDK would need to conduct essentially the same review as it would to provide a plenary response. Similarly, the dealers' offer to withdraw two interrogatories (of their own choosing) is cold comfort: Sixteen expansive interrogatories would

remain, each of which would require extensive efforts to answer properly.[2] The new interrogatories—even as unilaterally amended by the dealers—accordingly do not satisfy the proportionality test of Rule 26(b)(1).

### C. CDK Must Be Allowed to Pursue Counterclaim Discovery In The Event That The Court Allows The Dealers To Pursue Theirs

As CDK explained in its opening brief (at 15), CDK should be permitted to serve its own discovery related to its counterclaims if the dealers are permitted to take the discovery at issue here. The dealers decry this request as "an act of retaliation for being required to respond to the Interrogatories" (Opp. 15), but it is nothing of the sort—on the contrary, it is a request for simple fairness. Discovery in this case has been a long and arduous process, involving hundreds of RFPs, millions of documents (comprising millions more pages), over 70 depositions (with still more scheduled), and numerous discovery motions. At some point—as this Court has previously observed (Dkt. 498 at 1)—enough must be enough. Taking the Court's words to heart, CDK was willing to forgo any remaining counterclaim discovery it was entitled to take and proposed that the parties rest instead on the discovery that they have already obtained.

Before the dealers served these new interrogatories, it appeared that all parties were on board with this approach; indeed, neither Cox nor AutoLoop sought additional "counterclaim" discovery, even though both were served with similar counterclaims to the ones CDK filed against the dealers. The dealers alone chose, at the last minute, to serve new interrogatories that reopen numerous old discovery topics in the guise of "counterclaim" discovery. CDK's position is simply that, if the Court

---

[2] The dealers have withdrawn Interrogatory No. 17 (asking CDK to identify all documents and evidence that support its counterclaims) and No. 18 (asking CDK to identify all documents and evidence that support its counterclaims). Opp. 10, 15. That the dealers have volunteered, on their own initiative, to withdraw two of the three interrogatories that are least likely to be duplicative of previously-served discovery (*see* n.1, *supra*) speaks volumes about their purpose in serving the new interrogatories.

is inclined to reopen discovery for the limited purpose of allowing such "counterclaim" discovery, it should do so for *all* parties—not just the dealers.[3]

## CONCLUSION

CDK's motion for a protective order should be granted.

Dated: April 29, 2019

Respectfully submitted,

*/s/ Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant
CDK Global, LLC*

---

[3] The dealers' assertion that "CDK threatened to serve its own counterclaim discovery unless [the dealers] agreed to completely withdraw the Interrogatories" (Opp. 15) is false, as the correspondence they cite demonstrates (Dkt. 600-3 at 2). CDK's letter did not condition its willingness to serve counterclaim discovery on the dealers' withdrawing the new interrogatories. Rather, the letter said that if the dealers did not withdraw the interrogatories, CDK would do precisely what it is doing now—*i.e.*, seeking protection from the Court. *Id.* CDK indicated that it would seek to serve its own discovery if (and only if) the Court ruled that the dealers' interrogatories could proceed. *Id.* Again, that is no "threat"; it is merely a request for fairness.

## CERTIFICATE OF SERVICE

      I, Britt M. Miller, an attorney, hereby certify that on April 29, 2019, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER** to be filed and served by email upon counsel of record pursuant to the SERVICE-EXTERNAL-DMSMDL@lists.kellogghansen.com email list.

                                             */s/ Britt M. Miller*
                                             Britt M. Miller
                                             MAYER BROWN LLP
                                             71 South Wacker Drive
                                             Chicago, IL 60606
                                             Phone: (312) 782-0600
                                             Fax: (312) 701-7711
                                             E-mail: bmiller@mayerbrown.com