**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to All Cases | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

## MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANTS' OEM FINANCIAL DATA

**1.** MDL Plaintiffs respectfully request that the Court order Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") to produce a narrow category of financial data showing Defendants' sales of data integration services to automotive Original Equipment Manufacturers (or "OEMs") from 2011 to present. Because fact discovery closes today, Plaintiffs file this Motion to preserve our rights to obtain the financial data necessary for our economic experts to conduct a complete analysis.

**2.** OEM financial data is highly relevant to multiple issues in this MDL, including calculating damages for Plaintiff Authenticom, Inc., and showing how the Defendants' conduct harmed competition and led to supra-competitive data prices. On the flip side, Plaintiffs' Motion will impose no undue burden on Defendants, because Plaintiffs are only seeking the production of OEM pricing data for use by our economic experts — not emails or other documents that would require custodian-by-custodian collection and review.

**3.** As explained more fully in prior rulings and pleadings, this MDL is about CDK and Reynolds' collusive and anti-competitive conduct that caused prices to skyrocket in the market for automotive data integration services. There are two types of consumers that buy data integration

services. *First*, software application providers purchase data integration service, because they need access to dealer data in order to provide meaningful analysis and services to dealerships. *Second*, OEMs — automotive manufacturers such General Motors, Honda, and Toyota — also purchase data integration services, because they too need access to dealer data for a wide range of programs and operations, such as warranty programs and product safety recalls. Both vendors and OEMs pay CDK and Reynolds large fees for data integration services.

4. In this MDL, CDK and Reynolds have produced financial data showing their data integration charges *to vendors* from 2009 to present. However, CDK and Reynolds have refused to produce financial data showing their data integration charges *to OEMs* for any time frame.

5. MDL Plaintiffs previously moved to compel the production of "documents and communications relating to prices charged to OEMs for access to data on the CDK and Reynolds DMSs." Dkt. 441 at 5. The Court denied the motion to compel after concluding that — to the extent Plaintiffs wanted OEM pricing information — a "narrower request would seem to do the trick"; the Court invited Plaintiffs to "bring the issue back to the Court's attention." *Id.* In accordance with the Court's order, MDL Plaintiffs now seek only financial data showing Defendants' data integration charges to OEMs from 2011 to the present, not the broader set of documents and communications concerning those charges.

6. Following the Court's order, Plaintiffs reached out to Defendants and requested the narrower set of OEM pricing data (excluding documents and communications regarding those prices). Defendants declined to provide the OEM pricing data. *See* Exs. A.1 – A. 6.

**7.** Financial data showing the prices paid by consumers in the relevant product market is standard fare for discovery in antitrust cases.[1] OEMs are direct purchasers of data integration services from CDK and Reynolds. Defendants' OEM financial data will show (1) how much CDK and Reynolds charged OEMs for data integration over time; (2) how those prices changed or increased (including before and after the Defendants began coordinating their data access policies in 2013); and (3) the quantity of data integration services OEMs purchased from Defendants. This data is highly relevant to Authenticom's damages model. Without Defendants' anti-competitive restraints, Authenticom — a third-party data integrator that competes with Defendants' data integration offerings — could and would have won OEM business away from CDK and Reynolds.[2] Moreover, discovery showed that, before the CDK-Reynolds conspiracy, *every* North American OEM purchased data integration through CDK's third-party integration subsidiary, DMI, rather than purchasing those services directly from Reynolds through its RCI program. *See* Ex. B (PX 872 at CDK-1390279.004). Defendants' February 2015 agreements deprived OEMs of that competitive choice and forced them to purchase data integration from Reynolds (at greatly inflated

---

[1] *See, e.g., Kleen Prods. LLC v. Packaging Corp. of Am.*, 2013 WL 120240, at *9 (N.D. Ill. Jan. 9, 2013) (collecting cases order discovery of financial information in antitrust cases); *Seah Chee Wei v. Rocky Point Int'l LLC*, 2017 WL 3911585, at *2 (E.D. Wis. Sept. 6, 2017) (granting motion to compel defendant to produce financial information in antitrust action); *City of New York v. Group Health, Inc.*, 2008 WL 4974578, at *2-3 (S.D.N.Y. Nov. 21, 2008) (granting motion to compel information necessary for antitrust expert); *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 2010 WL 11474256, at *7 (M.D. Fla. Dec. 6, 2010) (financial information discoverable in antitrust case).

[2] Plaintiffs' previous motion to compel cited specific instances (with supporting documents) where Authenticom competed head-to-head with Defendants for OEM data integration business. *See* Dkt. 318 at 17-19.

3

prices).[3] OEM pricing information will therefore provide additional evidence of how Defendants' collusion directly and substantially harmed competition and consumers.

## CONCLUSION

The Court should compel CDK and Reynolds to produce the OEM financial data described above from 2011 to present.

Dated: April 30, 2019

Respectfully submitted,

/s/ Peggy J. Wedgworth
Peggy J. Wedgworth
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com

/s/ Derek T. Ho
Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

---

[3] Third-party discovery has shown that another OEM, Subaru, purchased data integration services exclusively from a third-party provider called Superior Integrated Solutions (or "SIS"). CDK and Reynolds forced SIS out of the market, which in turn forced Subaru to purchase data integration services directly from Defendants at supra-competitive prices (far above what Subaru had paid SIS for the same services). *See* Ex. C (SIS Dep. Tr. at 119-121; 184-185).

## CERTIFICATE OF SERVICE

   I, Derek T. Ho, an attorney, hereby certify that on April 30, 2019, I caused a true and correct copy of the foregoing **MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL DEFENDANTS' OEM FINANCIAL DATA** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                      */s/ Derek T. Ho*
                      Derek T. Ho
                      **KELLOGG, HANSEN, TODD,**
                       **FIGEL & FREDERICK, P.L.L.C.**
                      1615 M Street, NW, Suite 400
                      Washington, D.C. 20036
                      (202) 326-7900
                      dho@kellogghansen.com