# Exhibit A.1

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900

FACSIMILE:
(202) 326-7999

MILBERG TADLER PHILLIPS GROSSMAN LLP

One Pennsylvania Plaza 19th Floor ● New York, NY 10119 ● 212.594.5300 ● F 212.868.1229 ● www.milberg.com

November 21, 2018

*Via Electronic Mail*

| | |
|---|---|
| Andi Gulley, Esq. | Britt M. Miller, Esq. |
| Gibbs & Bruns LLP | Mayer Brown |
| 1100 Louisiana | 71 South Wacker Drive |
| Suite 5300 | Chicago, IL 60606 |
| Houston, TX 77002 | |

Re: *In re Dealer Management Systems Antitrust Litigation*, MDL No. 2817

Dear Britt and Andi:

We write regarding the Court's recent rulings on the parties' motions to compel. With respect to the materials that Defendants have been ordered to be produced, we ask that Defendants produce those materials as soon as possible, and no later than December 1, 2018. Given the upcoming depositions, the timely production of these materials is critical. We would like to discuss these issues on a meet and confer on Monday at 10:00 a.m. or 2:00 p.m. ET. Please let us know which time works for Defendants.

**Industry Conference Materials.** The Court granted Plaintiffs' motion with respect to Reynolds, holding that Reynolds must abide by the agreement CDK agreed to with the Dealership Class Plaintiffs. Namely, Defendants must produce the following with respect to industry conferences: "(a) documents evidencing or otherwise reflecting meetings between CDK and Reynolds, if any, at such conferences, (b) marketing and promotional materials used or distributed by CDK [or Reynolds] at such conferences, and (c) written training and instructions provided to CDK [or Reynolds] employees concerning the marketing of CDK's [or Reynolds'] DMS services, applications, or Data Services at such conferences." *See* Dkt. 321 ¶ 23. Has CDK already produced these materials, as it agreed to do? Did CDK search non-custodial sources for responsive industry materials?

As for the other materials that the Individual and Vendor Class Plaintiffs sought, the Court noted that "a number of Plaintiffs' other requests for production of documents encompass

1

all or some of the documents called for by Plaintiffs' industry conference requests or at least the aspects of those requests that can be interpreted as seeking relevant information." We agree. For example, that would include any "meeting notes," "preparatory materials," and meeting "agendas" for industry conference meetings between CDK and Reynolds, or between any Defendant and a named Plaintiff, such as Cox Automotive, MVSC, AutoLoop, and Authenticom. Please confirm that Defendants are indeed producing such materials, if they have not already. Given that many of these materials likely reside outside of custodial files, please also confirm that Defendants are searching non-custodial locations for these responsive documents.

**DMS Customer Tenures.** The Court granted Plaintiffs' motion on this issue, compelling Defendants to respond to Plaintiffs' interrogatory on this topic. The Court directed the parties to meet and confer to discuss obtaining the information we seek.

**Reynolds and CDK Financial Information.** The Court granted Plaintiffs' motion to compel Defendants to produce the requested financial information going back to 2009 (as opposed to 2011). We request that Defendants immediately update their financial information with information going back to 2009. To be clear, this information must include – besides the revenue information that Defendants have already agreed to produce – the financial information described in our motion to compel:

- Financial statements reflecting the financial performance of its DMS and data integration businesses, from 2009 to the present.
- DMS and data integration profit and loss information, including gross and net profit margins, from 2009 to the present.
- Costs and expenses related to providing DMS and data integration services, from 2009 to the present.
- Projections and budgets for DMS and data integration revenues, profits, and costs, from 2009 to present.

With respect to "product lines that are not involved in this case," the Court agreed that financial information for those product lines need not be produced. The one product line Defendants pointed to in their opposition related to Reynolds' forms business. In light of the Court's ruling, we agree that Reynolds need not produce financial information with respect to the forms business, but other product lines are relevant to this MDL. In particular, financial information with respect to Defendants' own add-on applications, such Naked Lime (Reynolds) and ServiceEdge and eLead (CDK) are responsive. Please confirm that Defendants are producing financial information with respect to their own add-on applications.

**Reynolds' Transactional Data and Invoices.** With respect to the invoices for 75 dealer customers and 30 RCI vendors, we would like to meet and confer regarding the identity of those dealer and vendor customers. We had met and conferred before regarding how they would be selected, and we would like to confirm that we have an agreement on that issue.

With respect to the transactional data that Reynolds does have, we would like to confirm the date range for that production, as it appears that Reynolds has discovered relevant

transactional data going back further in time than it originally said it had. Please confirm that date range.

**OEM Pricing Information.** Even though the Court denied Plaintiffs' motion on this issue, it invited Plaintiffs to "bring [this] issue back to the Court's attention" as appropriate. Given the clear record in this case that OEMs are relevant customers of data integration services – and that Defendants competed with Authenticom and others in providing those services – we would like to meet and confer to see if there is a compromise that can be reached.

**Reynolds' Security Tools, Processes, and Training.** The Court granted Plaintiffs' motion on this issue. CDK had already agreed to produce the following, and the Court ordered Reynold to do likewise:

- with respect to "security tools," documents and communications regarding the software used to test or analyze the security of Defendants DMS and data integration programs;
- with respect to "processes," Defendants' security planning documents, specifications for security and reliability, threat modeling, and risk analyses; and
- with respect to "training," documents and communications regarding the training given to software developers working on Defendants' DMS and data integration programs.

Given upcoming depositions, the immediate production in full of these materials is imperative.

**Reynolds' "Whitelisting."** The Court granted Plaintiffs' motion on this issue. CDK had already agreed to produce the following, and the Court ordered Reynolds to do likewise: documents sufficient to show how whitelisting is accomplished, including all technical, system architecture, workflow processes, or other mechanisms used to whitelist login credentials.

Given upcoming depositions, the immediate production in full of these materials is imperative.

**CDK's Technological Implementation of "SecurityFirst."** The Court agreed with CDK on this issue based on CDK's representation to the Court that "[v]irtually the only documents related to the 'technological' implementation of SecurityFirst that CDK is *not* producing in accordance with these parameters are the granular system design documents." Please confirm that CDK has completed the production of all responsive documents on "SecurityFirst," including the technological implementation of that initiative.

**Granular System Design Documents.** The Court invited Plaintiffs to address this issue further, and Plaintiffs are evaluating whether that will be necessary. We will meet and confer with Defendants before taking further action with the Court.

**CDK Correspondence with Private Equity Firms.** The Court suggested that Plaintiffs "significantly narrow the scope of their request to the material they claim is relevant," and Plaintiffs are willing to do so. The Court suggested that such material would include "an offering or due diligence memorandum" or "Powerpoint" on the issue. We agree, at a minimum,

those materials would be responsive and relevant.  Please confirm that CDK will produce such materials.  We would like to meet and confer to discuss other ways to narrow Plaintiffs' requests on this issue.

**CDK's Involvement with CVR.**  We do not believe that the parties had a substantive disagreement with respect to CDK's involvement with CVR.  Instead, it was a timing issue: CDK wanted to wait until the Court ruled on its motion to dismiss MVSC's Section 2 claims before producing documents.  Now that the Court has denied CDK's and CVR's motions, please confirm that CDK will produce all responsive information for the relevant RFPs.

**Reynolds' CRM Data.**  As the Court stated, "Reynolds says it offered to work with Plaintiffs toward a method for extracting information Plaintiffs want from the [CRM] system it uses," but that, according to Reynolds, those discussions were not completed.  The Court stated that "to the extent Plaintiffs need to run to ground the meet and confer process concerning this request, they should do so."  Plaintiffs would like to do that with Reynolds.

\* \* \* \* \* \*

As noted, we would like to discuss these issues on a meet and confer on Monday at 10:00 a.m. or 2:00 p.m. ET.  Please let us know which time works for Defendants.

Very truly yours,

*s/ Derek T. Ho*                                        *s/ Peggy J. Wedgworth*

Derek T. Ho                                              Peggy J. Wedgworth

4