# Exhibit A.2

**MAYER•BROWN**

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

December 5, 2018

**BY E-MAIL**

Jessica A. Michaels
Direct Tel +1 312 701 711
Direct Fax +1 312 706 8135
jmichaels@mayerbrown.com

Derek Ho
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C
1615 M. STREET, N.W., SUITE 400
WASHINGTON, DC 20036

Peggy Wedgworth
MILBERG TADLER PHILLIPS GROSSMAN LLP
ONE PENNSYLVANIA PLAZA, SUITE 1920
NEW YORK, NY 10119

Re: *In re Dealer Management Systems Antitrust Litig.,*
MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Derek and Peggy:

I write in response to your letter dated November 21, 2018 regarding the Court's recent rulings on the parties' motions to compel (the "Order") (Dkt. 441) and, to the extent necessary, to clarify CDK's positions following our meet-and-confer on Friday, November 30, 2018.

*Industry Conference Materials*

Plaintiffs' motion to compel on this topic was denied as to CDK. CDK has maintained its end of the bargain it struck with the Dealership Plaintiffs (which the Court has now endorsed) and in good faith believes that its resulting production on this topic is substantially complete.

According to that agreement, CDK conducted a diligent search for "(a) documents evidencing or otherwise reflecting meetings between CDK and Reynolds, if any, at such conferences, (b) marketing and promotional materials used or distributed by CDK at such conferences, and (c) written training and instructions provided to CDK employees concerning the marketing of CDK's DMS services, applications, or Data Services at such conferences" ("Industry Conference Materials") as stated in the August 3, 2018 letter from Matt Provance to Robert Wallner. CDK has produced all responsive, non-privileged documents identified during that search and the subsequent document review to Plaintiffs in this MDL. As you requested, we confirm that this search included collecting documents within the relevant time period that hit on agreed-upon search terms from (1) the files of CDK's agreed-upon ESI custodians; (2) the non-custodial sources identified by the above-referenced CDK custodians; and (3) non-custodial sources identified by CDK as likely to include responsive materials.

Derek Ho
Peggy Wedgworth
December 5, 2018
Page 2

### *DMS Customer Tenure*

As CDK previously has stated, CDK does not keep formal statistics on the "average" DMS customer tenure. With respect to the Court's direction for the parties to meet-and-confer regarding "appropriate and reasonable parameters that Defendants can use to provide the information Plaintiffs are seeking," CDK states as follows: The SalesForce data previously produced by CDK at Bates CDK-0701450 – CDK-0701472 and CDK-0701475 – CDK-0701477 includes data that shows current and historical DMS installation dates and contract expiration dates associated with individual customer accounts. The following fields may be associated with any particular customer account: Current Install Date, Current Term Expiration Date, Original Install Date, and Original Expiry Date. While it is possible to determine a particular DMS customer's tenure from the aforementioned data points, the data is not maintained for that specific purpose (nor does CDK use the data for that purpose). Thus, this Salesforce data may not provide a complete picture of a customer's tenure.

CDK believes that its production coupled with the above information is sufficient under Federal Rules of Evidence 33(d)(1), which states, "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Indeed, because DMS customer "tenure" is not a statistic that CDK keeps or maintains in the ordinary course of its business, the burden of ascertaining whatever customer "tenure" statistics may be gleaned from the above-identified dataset is equal to both parties.

### *Financial Information*

Pursuant to the Order, CDK will supplement its production of financial data, to the extent available, back to 2009. However, we do not agree, to the extent your letter suggests it, that Plaintiffs' motion to compel on this topic sought any additional categories of financial information from CDK (other than with respect to the applicable time-frame) beyond what CDK agreed to produce in the course of pre-motion meet-and-confers, and the record on that point speaks for itself. That said, the four bullet-points on page 2 of your November 21 letter appear broadly consistent with the financial information that CDK has agreed to produce.

### *OEM Pricing Information*

The Court clearly stated that "Plaintiffs' requests for documents and communications relating to prices charged to OEMs for access to data on the CDK and Reynolds DMSs is overbroad, seeks information that is not relevant to a claim or defense pled in this case, and is not proportional to the needs of the case." Order, § 8. We do not view the Court's ruling or its statement that

Mayer Brown LLP

Derek Ho
Peggy Wedgworth
December 5, 2018
Page 3

Plaintiffs might "bring [the] issue back to the Court's attention" in the event that a basis arose to seek OEM pricing discovery as an invitation to renegotiate the scope of this discovery request. Nevertheless, if Plaintiffs have a specific proposal in mind, we will consider it.

*Technological Implementation of "Security First" and "Granular System Design" Documents*

Once again, your motion on these issues was denied so it is not clear what remains outstanding at this point. We confirm that CDK has honored the commitments it made during pre-motion meet-and-confer discussions and as stated in its briefing on these issues.

*Correspondence with Private Equity Firms*

This is another issue where the Court ruled that the discovery sought by Plaintiffs was irrelevant or, even if marginally relevant, substantially overbroad and unduly burdensome. If Plaintiffs have a proposal in mind to "significantly narrow the scope of their request to the material they claim is relevant," then please let us know and we will consider it. We will not agree to produce certain materials (*e.g.*, an "offering or due diligence memorandum," assuming one exists) without understanding plaintiffs' full proposal on this issue.

*CDK's "Involvement" with CVR*

CDK will be supplementing its production in the near term with non-privileged documents that are responsive to this Request (and that were not previously produced due to being responsive to one or more other requests(s)).

Regards,

*/s/ Jessica A. Michaels*
Jessica A. Michaels

cc:   Plaintiffs' Co-Lead Counsel
      Defendants' Counsel