# Exhibit A.5



Brian T. Ross
Partner
bross@gibbsbruns.com
713.751.5286

March 5, 2019

**Via Email**
Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215

**Via Email**
Peggy J. Wedgworth
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza
New York, NY 10119

Re: *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864, MDL No. 2817 (N.D. Ill.)

Dear Mike and Peggy,

I am writing on behalf of Reynolds to follow up on the list of outstanding discovery issues identified in Liz McKenna's email last week. For ease of reference, each heading is copied verbatim from that email and is not necessarily intended to reflect that Reynolds agrees with the description or validity of the issue.

1. **Refresh of Defendants' financial information as of April 1, 2019.** We need to better understand what Plaintiffs have in mind here. For example, specifically what information Plaintiffs propose will be refreshed, reciprocity, etc. Without conceding that any refresh is necessary or proportional to the needs of the case, Reynolds is willing to meet and confer about this issue at a mutually convenient time.

2. **Defendants' Interrogatory responses regarding DMS Customer Tenures.** As you will recall, Judge Gilbert's November 19, 2018 order instructed the parties to meet and confer about a reasonable method for addressing this interrogatory in light of the burdens involved. After an initial meet-and-confer call, Plaintiffs requested a concrete proposal from Reynolds, and Reynolds then promptly provided one. *See* December 17, 2018 Letter from B. Ross. Reynolds never received a response to that proposal.

3. **OEM Pricing Information.** We understand this refers to Plaintiffs' request that Defendants undertake the burden of producing OEM pricing information despite Judge Gilbert's denial of Plaintiffs' omnibus motion to compel on this issue. On December 11, 2018, Plaintiffs proposed a purportedly narrower compromise request for OEM data, which as we expressed in our December 17, 2018 response, we viewed as even

Michael N. Nemelka
Peggy J. Wedgworth
March 5, 2019
Page 2 of 3

    broader than the request on which the Court denied the motion to compel. In any event, for the avoidance of doubt, Reynolds cannot agree to Plaintiffs' proposal and respectfully declines to make a counter proposal.

4. **Production of documents from Reynolds' Competitive Intelligence files.** Reserving all of its rights, Reynolds stands by the offer stated in our January 18, 2019 letter (i.e., we would agree to make a supplemental production of <u>all</u> responsive, non-privileged materials from the competitive intelligence "folders" for AutoLoop, Cox Automotive, vAuto, Vinsolutions, and Xtime if that will resolve the issue on competitive intelligence materials). *See* January 18, 2019 Letter from B. Ross. For the avoidance of doubt, Reynolds does not believe it should have to undertake the burden of searching or reviewing documents for the competitive intelligence email address.

5. **Redactions by Reynolds of financial information.** For the reasons expressed on our meet-and-confer call and my letters dated January 8, 2019 and January 10, 2019, Reynolds believes that its financial statement production and redactions are more than reasonable.

6. [Number 6 is intentionally skipped, as it does not relate to Reynolds].

7. **PX-442 — proposed joint venture between Reynolds and ADP**. We previously communicated our response on this issue in my letter dated February 1, 2019.

8. [Number 8 is intentionally skipped, as it does not relate to Reynolds].

9. [Number 9 is intentionally skipped, as it does not relate to Reynolds].

10. **Third party subpoena to ReverseRisk.** As explained in Ross MacDonald's email dated February 6, 2019, my email dated February 15, 2019, and during my meet-and-confer call with Josh Hafenbrack and Michael Gallagher on February 15, 2019, Reynolds believes that the purported third-party subpoena to ReverseRisk (Reynolds's wholly owned subsidiary) is an improper attempt to lodge additional untimely party discovery requests to Reynolds. On the February 15 call, Plaintiffs inquired whether Reynolds would consider a compromise proposal under which Reynolds/ReverseRisk would only need to respond to one of Plaintiffs' pre-acquisition requests, using narrow search terms and "one or two custodians." I offered to check whether Reynolds would consider such a compromise before Plaintiffs expended any time formulating a specific proposal, and also investigated whether Reynolds even has any pre-acquisition ReverseRisk emails so that the parties didn't waste time further discussing an issue that is entirely moot. We have ascertained that Reynolds does have some pre-acquisition ReverseRisk emails, but at this time Reynolds is inclined to stand on its objections to undertaking the burden of gathering or searching such emails. That being said, if Plaintiffs wish to proceed with a specific compromise offer, we will consider it in good faith.

Michael N. Nemelka
Peggy J. Wedgworth
March 5, 2019
Page 3 of 3

Sincerely,

/s/ Brian Ross

Brian T. Ross