PUBLIC VERSION

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-00864 |
| *This document relates to:* <br><br> ALL ACTIONS | Hon. Robert M. Dow, Jr. <br><br> Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT CDK GLOBAL LLC'S RESPONSE IN OPPOSITION TO MDL
PLAINTIFFS' MOTION CHALLENGING CDK GLOBAL, LLC'S MARCH 8, 2019
CLAWBACK AND TO COMPEL PRODUCTION OF INADEQUATELY LOGGED
DOCUMENTS FROM CDK GLOBAL, LLC'S FTC PRIVILEGE LOG**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

    I.    CDK Properly Clawed Back Inadvertently Disclosed Privileged Documents ................... 3

        A.   CDK's Communications with Counsel Regarding Business Matters Are Privileged so Long As Legal Advice is Sought or Provided ............................................................ 4

           1. CDK-2701505 (Plaintiffs' Ex. J) ........................................................................ 5

           2. CDK-1175238 (Plaintiffs' Ex. K) ....................................................................... 5

           3. CDK-0207446 (Plaintiffs' Ex. L) ....................................................................... 6

           4. CDK-0879580 (Plaintiffs' Ex. M) ...................................................................... 6

           5. CDK-1083883 (Plaintiffs' Ex. N) ....................................................................... 6

           6. CDK-0467349 and CDK-0467597 (Plaintiffs' Ex. O and P) ............................... 6

        B.   CDK's Disclosure of Privileged Material was Inadvertent ........................................ 7

    II.   Plaintiffs' Challenges to CDK's FTC Log are Meritless ..................................................... 7

        A.   Plaintiffs Challenge Inadvertently Redacted Communications with Reynolds that Were Produced and Over Which There is No Dispute ............................................... 7

        B.   CDK Properly Withheld Communications with Third Parties .................................... 8

           1. Integral ("part-and-parcel") communications ..................................................... 8

           2. Aberdeen Strategies LLC .................................................................................... 9

           3. Morgan Stanley, Deloitte, EY, and PwC ........................................................... 10

           4. Presidio Technology Partners ............................................................................. 12

           5. Open Dealer Exchange ("ODE") ....................................................................... 13

           6. Personal communications of CDK employees ..................................................... 13

           7. Communications inadvertently shared with third parties ..................................... 13

        C.   None of the Challenges that CDK Made to Deficiencies in Cox Automotive's Log Support Plaintiffs' Challenges to the FTC Log ....................................................... 14

    III.  Allowing Plaintiffs to Cherry-Pick FTC Log and Clawback Documents for *In Camera* Review is Not a Proper Basis for Representative Rulings ............................................... 15

CONCLUSION................................................................................................................ 15

## INTRODUCTION

On March 8, 2019, CDK notified MDL Plaintiffs of its inadvertent production of and intent to claw back 690 privileged documents and reproduced CDK's FTC CID Privilege Log ("FTC Log"), which had been finalized and provided to the FTC on the same date. Plaintiffs then forced a rushed meet-and-confer process before prematurely bringing a motion to compel without affording the parties an opportunity for meaningful engagement regarding their challenges, which are meritless. Repeatedly, Plaintiffs attempt to cast aspersions on CDK that are unwarranted and, moreover, go to merits issues that have nothing to do with whether the clawback documents now before the Court are privileged or whether CDK's FTC Log is sufficient. In the end, the instant motion to compel is the latest of several questionable discovery motions brought by the Plaintiffs in this MDL that, like the others, should be denied.

## BACKGROUND

In this MDL, CDK has produced almost 1,050,000 documents, totaling approximately 3,116,000 pages in response to 271 separate requests for production, some of them exceedingly burdensome. The time-sensitive and expansive discovery in this MDL has run parallel to similarly time-sensitive and expansive discovery in response to a June 26, 2017 Civil Investigative Demand ("CID") issued by the Federal Trade Commission ("FTC"), which has required CDK to produce in excess of 790,000 documents. CDK expended significant resources to train and oversee contract reviewers, applying multiple levels of review and quality control checks in the process. This was done under the direction of CDK's FTC counsel (Paul, Weiss, Rifkind, Wharton & Garrison LLP) for documents responsive to the CID and under the direction of CDK's MDL counsel (Mayer Brown LLP) for documents responsive to discovery requests in the MDL.

The general process undertaken by CDK's FTC counsel to review the FTC production for privileged documents is set forth in the August 22, 2018 Declaration of Kristen DePizzo, submitted

in connection with the Dealership Plaintiffs' previous clawback motions (Dkt. 341-2). In denying those motions, the Court found that the procedures followed by CDK's FTC counsel demonstrated that "CDK took reasonable steps to prevent disclosure of its privileged information when it reviewed and produced documents to the FTC; and that CDK took reasonable steps to rectify the error once it learned it had occurred." Ex. 1 (2/27/2019 Hrg. Tr.) at 13:17-2l; Dkt. 533 (2/27/2019 Minute Order). CDK created and iteratively produced the FTC Log to the FTC in 11 subsections. Rockoff-Kirk Decl. ¶ 2; *see also*, Ex. 2 (3/12/2019 Letter from J. Michaels and M. Keane to P. Wedgworth and M. Nemelka). Each subsection of the FTC Log was produced on a rolling basis to the FTC, with the last subsection submitted on March 8, 2019. *Id.* Each subsection remained subject to revision after its initial production to the FTC. *Id.* Plaintiffs received a copy of the FTC Log—in the same form and format in which it was provided to the FTC—on the same day CDK completed its logging of documents and produced the last subsection of the privilege and redaction logs to the FTC. *Id.* ¶ 3. The FTC Log was prepared in the format specified by the FTC. *Id.* ¶ 2. It contains a separate entry for each responsive document withheld or redacted for privilege. *Id.* ¶ 4.[1] While the FTC Log contains over 40,000 entries, it is only approximately 29,000 families (including standalone documents), with 16,366 inclusive emails. *Id.* ¶ 5.

Plaintiffs attempt to disparage CDK's reproduction of the FTC Log as "belated," Mot. at 3, but CDK was justified in waiting until the FTC Log was finalized before producing it to MDL Plaintiffs. The parties' November 2, 2018 deadline to exchange "Non-Governmental Privilege Logs" under the Case Management Order (Dkt. 166, ¶ 8) clearly did not apply to CDK's FTC Log.

---

[1] Attachments to privileged parent emails were not required to be separately logged in the MDL pursuant to the ESI Stipulation, which allows for family logging (one log entry for an email plus its attachments). ESI Stipulation, ¶ 9(b) (Dkt. 105). As CDK explained to Plaintiffs, attachments in the FTC Log were logged consistent with the FTC's requirements, which required a separate entry for each document. Plaintiffs' Ex. D (3/28/2019 Email from J. Michaels to D. Nordin).

Moreover, CDK informed Plaintiffs that its process of logging privileged documents for the FTC was ongoing, and that CDK did not intend to produce the FTC Log to Plaintiffs until the Log was complete. *See* Ex. 3 (5/4/2018 Letter from B. Miller to M. Nemelka).[2] It would have been highly inefficient for CDK to reproduce interim subsections of its FTC Log to Plaintiffs piecemeal and deal with Plaintiffs' inevitable challenges while at the same time working to complete the ongoing FTC logging process. Instead, CDK reasonably waited until the FTC logging process was complete and then immediately reproduced the FTC Log in the MDL.[3]

Plaintiffs insisted on an aggressive meet-and-confer schedule for the FTC Log, under which initial challenges were made on March 26, 2019; any revisions to the Log were due by April 10; and Plaintiffs' motion was due on April 17. Mot., Ex. E (3/29/2019 Email from D. Nordin to J. Michaels); Dkt. 620 (Stipulation). This accelerated schedule did not bode well for meaningful discussions, and Plaintiffs' preference to rush to the Court was clear from April 10's "meet-and-confer," which took place less than one hour after delivery of CDK's revised FTC Log.

## ARGUMENT

### I.    CDK Properly Clawed Back Inadvertently Disclosed Privileged Documents

Plaintiffs challenge 601 (87%) of CDK's clawback designations, 25 of which were selected by Plaintiffs and submitted to the Court for *in camera* review. Only seven of the documents that

---

[2] Moreover, Plaintiffs waited to raise any concerns regarding the timing of the reproduction of the FTC Log until the eve of the deadline for filing a motion to compel regarding CDK's civil log. *See* Ex. 4 (3/1/2019 Email from J. Michaels to E. McKenna).

[3] Plaintiffs' disparagements also miss the mark in light of the fact that Dealership Plaintiffs themselves initially withheld numerous responsive documents from production, finally substantially completing their production on March 19, 2019. Dealership Plaintiffs did not provide a corresponding privilege log for the initially withheld documents until March 21, which represented a 161% increase in their privilege claims from their log produced on the November 2, 2018 deadline. Similarly, Plaintiff Cox Automotive added 146 new entries to its privilege log on the final day of fact discovery—April 30, 2019. Plaintiffs are in no position to criticize CDK for promptly reproducing its FTC Log on March 8, 2019.

PUBLIC VERSION

Plaintiffs submitted *in camera* are identified in their brief, but each of these documents—and the other documents subject to Plaintiffs' clawback challenge—is privileged.[4]

### A. CDK's Communications with Counsel Regarding Business Matters Are Privileged so Long As Legal Advice is Sought or Provided

Plaintiffs assert that CDK is attempting "to shield emails containing ordinary business discussions" from production because they "happen to copy in-house counsel on (part of) the email chains." Mot. at 5-8, Ex. I.1-I.25. Plaintiffs are incorrect.

Federal Rule of Civil Procedure 26 limits the scope of permissible discovery to "any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). The attorney-client privilege protects legal advice irrespective of the topic on which the legal advice is being given. As courts in this district have explained: "solely personal or business advice is not protected by the attorney-client privilege," but "legal advice relating to business matters clearly is." *Crabtree v. Experian Info. Sols., Inc.*, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017) (quoting *Marusiak v. Adjustable Clamp Co.*, 2003 WL 21321311, at *2 (N.D. Ill. June 5, 2003)). *See also Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) (upholding privilege claim after finding a suggested "rule exempting all communications of business information from protection . . . contrary to the Seventh Circuit's law").[5] Furthermore, whether counsel is copied,

---

[4] It is unclear to CDK whether Plaintiffs provided the Court with a legend identifying counsel involved in the communications that were submitted *in camera*. If it would assist the Court, and if the documents Plaintiffs chose to submit *in camera* are identified, CDK would be happy to provide a legend.

[5] Plaintiffs cite *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012), for the proposition that "[t]he purpose of the communication must be the obtaining or providing of legal advice, not a business decision." Mot. at 5. But this point adds nothing to their argument as they have failed to appreciate the distinction between business discussions and legal advice about business issues. Similarly, Plaintiffs cite *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013), for the propositions that the inclusion of counsel does not transform all business discussions into privileged communications and that the communication must be primarily legal in nature. But CDK does not seek to claim privilege for all communications including counsel; instead, CDK claims privilege where an email contains an express or implicit request for legal

blind copied, or a top-line recipient of an email is not dispositive of whether legal advice is being

sought or provided. Courts have held that "communications constitute implicit requests for legal

advice where an attorney is copied on the communications and the communications implicate

specific legal issues." *Greater New York Taxi Ass'n v. City of New York*, 2017 WL 4012051, at

*12 (S.D.N.Y. Sept. 11, 2017); *ADT Sec. Servs., Inc. v. Swenson*, 2010 WL 2954545, at *5 (D.

Minn. July 26, 2010) (emails concerning company's response to media coverage about pending

lawsuit on which attorney was copied were privileged as implicit requests for legal advice).[6] Each

of the seven *in camera* documents that Plaintiffs identified in their brief is privileged:

1.     <u>CDK-2701505 (Plaintiffs' Ex. J)</u>



2.     <u>CDK-1175238 (Plaintiffs' Ex. K)</u>

---

advice, where counsel is providing legal advice, or where someone is relaying or providing information in order for counsel to render legal advice. Plaintiffs also cite *Moore v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2010 WL 4703859, at *3 (N.D. Ill. Nov. 8, 2010), for the proposition that the legal aspect of the communication must predominate. In CDK's clawback documents, however, the communication's legal aspect *does* predominate. Simply because a document involves the provision of legal advice regarding business issues does not mean that the legal aspect is subordinated to a business discussion.

[6] Plaintiffs also hold themselves to a different standard than the one they apply to CDK. Scores of their own privilege log entries (including 282 such entries on AutoLoop's revised privilege logs) indicate that attorneys were only "copied" on communications. *See, e.g.*, Dkt. 544-5 (AL_MDL_PRIV_0002).

3.     <u>CDK-0207446 (Plaintiffs' Ex. L)</u>

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ While certain of

the communications relate to business issues, "legal advice relating to business matters clearly is"

protected by the attorney-client privilege. *Crabtree*, 2017 WL 4740662, at *2.

4.     <u>CDK-0879580 (Plaintiffs' Ex. M)</u>

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████.

5.     <u>CDK-1083883 (Plaintiffs' Ex. N)</u>

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ Ex. 5 (CDK-1083883 submitted *in camera* without redactions).

6.     <u>CDK-0467349 and CDK-0467597 (Plaintiffs' Ex. O and P)</u>

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

6

PUBLIC VERSION

██████████████████████████████████████████████

████████████████████████████████

### B.     CDK's Disclosure of Privileged Material was Inadvertent

CDK's disclosures of privileged material occurred in the context of the production of almost 1,050,000 documents. This is a large production by any measure. *See Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535 at *6 (N.D. Ill. June 30, 2017) (a production was "large by any standard" where it involved "a review of 600,000 documents and a production of over 300,000 documents"). In such large-scale productions, "mistakes can take place[.]" *Viamedia*, 2017 WL 2834535 at *6. That is precisely what happened here. Indeed, the Court ruled in connection with Plaintiffs' previous clawback challenges regarding CDK's FTC production that "[t]o hold that CDK intentionally rather than inadvertently produced assertedly privileged documents would be contrary to common sense on this record in this case." Ex. 1 (2/27/2019 Hrg. Tr.) at 18:12-14.[7]

### II.     Plaintiffs' Challenges to CDK's FTC Log are Meritless

### A.     Plaintiffs Challenge Inadvertently Redacted Communications with Reynolds that Were Produced and Over Which There is No Dispute

Plaintiffs misleadingly claim that "CDK has asserted privilege claims over communications with its [alleged] co-conspirator Reynolds." Mot. at 11 (citing Plaintiffs' Ex. G (CTRL-E0000688505). Plaintiffs neglect to inform the Court that once they brought the erroneous redaction of five communications with Reynolds to CDK's attention, CDK promptly confirmed that four of the five communications had *already* been separately produced without redactions and

---

[7] Plaintiffs assert that CDK's initial production of certain clawback documents with redactions "bel[ies] any notion of inadvertent production." Mot. at 6. To the contrary, these redactions support a finding that CDK had no intention of waiver. A few inadvertent redaction errors—which the clawback process exists to correct—do not invalidate the privilege or render CDK's privilege review efforts unreasonable.

that CDK immediately produced the fifth. Ex. 8 (3/11/2019 Email from J. Michaels to D. Dorris and M. Nemelka); Ex 9 (3/15/2019 Email from J. Michael to D. Dorris and M. Nemelka).[8]

**B.    CDK Properly Withheld Communications with Third Parties**

CDK properly withheld or redacted (i) third-party communications that were integral parts of privileged communications, (ii) communications with advisers and consultants whose inclusion on communications was necessary for the provision of legal advice, (iii) communications with Reynolds and counsel for Open Dealer Exchange ("ODE"), a joint venture between CDK and Reynolds, regarding legal issues concerning ODE, (iv) personal and privileged communications of CDK employees, and (v) communications inadvertently disclosed to third parties.

**1.    Integral ("part-and-parcel") communications**

CDK withheld certain communications with third parties that, in subsequent internal emails, were included as an integral part of requests for legal advice, to provide information necessary for the provision of legal advice, or to provide information in anticipation of litigation. Importantly, CDK only withheld copies of third-party communications that were included as an integral part of a privileged communication. In many, many cases, non-privileged versions of the underlying communications subject to Plaintiffs' challenge have already been produced.[9]

Courts in this district have found that "*Upjohn Co. v. United States* makes clear [that] the fact that non-privileged information was communicated to an attorney may be privileged, even if

---

[8] CDK-2229441, referenced in Exhibit 8, is an unredacted, produced duplicate of CTRL-E0000688505.

[9] Out of the 286 challenged documents that include third parties that CDK withheld not as independently privileged but as an integral part or attachment to a privileged communication, 237 (nearly 83%) have been separately produced to plaintiffs elsewhere in CDK's production. The remainder were not otherwise present in the files of CDK's agreed custodians, do not include the agreed-upon ESI search terms, or were not identified as responsive to Plaintiffs' document requests. The challenged communications that are separately produced elsewhere in CDK's document production are identified in Exhibit 10. If the Court would like to know the identity of the Bates numbers associated with these separately produced documents, which CDK considers to be privileged, CDK would be happy to provide the information *in camera*.

the underlying information remains unprotected." *Muro*, 250 F.R.D. at 363 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981)). "[E]ven though one e-mail is not privileged, a second e-mail which forwards that prior e-mail to counsel might be privileged in its entirety." *Id.* This is analogous to situations where "prior conversations or documents" are "quoted verbatim in a letter to a party's attorney." *Id.*

Numerous other courts have held similarly. For instance, in *Rainey v. Plainfield Cmty. Consol. Sch. Dist. No. 202*, 2009 WL 1033654, at *2 (N.D. Ill. Apr. 16, 2009), the court held that "[i]f legal advice is requested regarding the attachments, the communication with the attorney is privileged. Whether the attachments as independent documents are discoverable is a separate question." Some of the underlying communications in *Rainey* were, like some of those here, communications with third parties. *Id. See also, Barton v. Zimmer Inc.,* 2008 WL 80647, at *5 (N.D. Ind. Jan. 7, 2008) ("[T]he very fact that non-privileged information was communicated to an attorney may itself be privileged, even if that underlying information remains unprotected."); *Engage Healthcare Commc'ns, LLC v. Intellisphere, LLC*, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017), *report and recommendation adopted sub nom. Engage Healthcare Commc'ns, LLC. v. Intellisphere, LLC.*, 2017 WL 10259774 (D.N.J. Nov. 21, 2017) (finding that the attorney-client privilege applied to email chains that forwarded prior non-privileged emails).[10]

### 2. Aberdeen Strategies LLC

Plaintiffs challenge numerous communications with a strategic communications firm, Aberdeen Strategies LLC. *See* Mot. at 11-12. ████████████████████████

---

[10] It should be noted that Plaintiffs also withheld documents on the basis that they are integral (or part-and-parcel) to privileged communications as well. For example, Cox Automotive has withheld attachments to purportedly privileged emails that, according to Cox, are "a mixture of documents that are independently privileged, integral to the email, or both." Dkt. 573, 4 n. 1. CDK does not challenge Cox's withholding of attachments that are integral to a legitimately privileged communication. *See* Dkt. 587 at 13; *infra*, p. 14.

███████████████████████████████████████████

███████████████ *Id.* ¶¶ 5-6. Courts regularly find that the attorney-client privilege covers communications between counsel and non-attorneys hired to assist in providing legal advice by advising on public relations issues related to legal strategy. *See, e.g., Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2014 WL 1681623, at *1 (W.D. Wash. Apr. 28, 2014) (holding privileged communications between the plaintiff's counsel and a PR firm); *In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003) ("[T]he ability of lawyers to perform some of their most fundamental client functions … would be undermined seriously if lawyers were not able to engage in frank discussions of facts and strategies with the lawyers' public relations consultants."); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (finding communications with a public relations firm privileged where the firm was hired to handle publicity and public comments regarding high-profile litigation).

3.   Morgan Stanley, Deloitte, EY, and PwC

Plaintiffs' challenges to FTC Log entries identifying communications that were shared with bankers, consultants, and advisors at Morgan Stanley, Deloitte Touche Tohmatsu Limited ("Deloitte"), Ernst & Young ("EY"), and PricewaterhouseCoopers LLP ("PwC") are misguided. *See* Mot. at 12, Ex. G. "[I]n today's market place, attorneys need to be able to have confidential communications with investment bankers to render adequate legal advice." *Stafford Trading, Inc. v. Lovely*, 2007 WL 611252, at *6, 8-12 (N.D. Ill. Feb. 22, 2007). Similarly, communications between a law firm and an outside financial advisor intended to facilitate the provision of legal service by the attorney to the client are privileged. *In re FiberMark, Inc.*, 330 B.R. 480, 499 (Bankr. D. Vt. 2005). The complexities of modern business often require CDK to include outside advisors

on otherwise privileged communications. As detailed below, these entities were included on the challenged communication to facilitate the request for or provision of legal advice.

CDK produced several duplicate

copies of this report with minimal redactions in the first instance.[11] After Plaintiffs challenged the redactions, CDK determined that ████████████████████████████████ ████████████████████████████████████████ the final report itself is not privileged. *See* Plaintiffs' Ex. S. Understandably, however, some versions of the report received inconsistent privilege treatment during CDK's initial privilege review—which CDK resolved once it became aware of the issue.[12] In no way has CDK attempted to "hide the ball" ████████████████ and Plaintiffs' self-righteous accusations to that effect are both unfortunate and unwarranted. Of course, CDK also completely disagrees that ████████████████████████████ Mot. at 7, but that is wholly irrelevant to any issue of privilege that is now before Court.

4. <u>Presidio Technology Partners</u>

Plaintiffs also challenge communications involving Presidio Technology Partners ("Presidio"), ████████████████████████████████████ Mot. at 12. These communications were not withheld as independently privileged, however, but rather as attachments to separate emails from CDK employees ████████████████████████ ████████████████████████████████████████

---

[11] *See, e.g.,* Ex. 11 (CDK-3064278), on which only the following three statements on slides 37 and 39 are redacted: (i) ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

[12] Similarly, CDK has determined that a handful of challenged entries on the FTC Log reflect final versions of ████████████ that, under the agreement with Plaintiffs reflected in Plaintiffs' Exhibit S, will be produced: Ex. G, No. 1313 (CTRL-E0000054992.0001), 1652-53 (CTRL-E0000151401.0001 and CTRL-E0000151401.0001.0001), 1656 (CTRL-E0000151401.0001.0004), 1732-33 (CTRL-E0000156115 and CTRL-E0000156115.0001), 1751 (CTRL-E0000157046), 1856 (CTRL-E0000159272), 5621 (CTRL-E0003665144.0001), 14381 (CTRL-E0009930427), and 14416 (CTRL-E0009933014). Had Plaintiffs not rushed to Court to file their motion, disputes over these entries likely could have been resolved informally.

███.[13] The attachments were properly withheld as integral (or "part-and-parcel") to a privileged attorney-client communication. *See, supra*, pp. 8-9.

### 5.  Open Dealer Exchange ("ODE")

Plaintiffs challenge certain FTC Log entries identifying communications with Reynolds and ODE. Mot. at 11, Ex. G (CTRL-E0001000827). CDK and Reynolds jointly own ODE as a joint venture. Kinzer Decl. ¶ 16. All of the challenged communications concern legal issues relating to ODE. *See In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 429 (N.D. Ill. 2006), *supplemented*, 432 F. Supp. 2d 794 (N.D. Ill. 2006) (email sent between two companies and reflecting legal advice concerning a joint venture between the two was privileged).

### 6.  Personal communications of CDK employees

Plaintiffs challenge certain communications between a CDK employee and the law firm Godfrey & Kahn S.C., which was hired by the CDK employee in his personal capacity ███ ████████████████████████████ These documents are privileged. Another challenged communication involves a CDK employee, a potential purchaser of real estate that the employee was selling (███████████), and the accounting and advisory firm Baker Tilly Virchow Krause LLP. *See* Plaintiffs' Ex. G, No. 1586 (CTRL-E0000146054). This communication is irrelevant to both the FTC CID and the MDL and should not be produced.

### 7.  Communications inadvertently shared with third parties

Plaintiffs challenge communications that were inadvertently shared with third parties ███ ██████████████ by CDK's counsel in cases of erroneous email recipient auto-population. Privilege was not waived, as CDK employees immediately requested that the third parties delete

---

[13] CDK has identified one parent communication with Presidio and its attachments that are not integral to a subsequent privileged communication. *See* Plaintiffs' Ex. G. No. 7575-77 (CTRL-E0006068359, CTRL-E0006068359.0001, and CTRL-E0006068359.0002). These documents will be produced.

PUBLIC VERSION

the emails once becoming aware of the inadvertent disclosure. If necessary, CDK will submit proof that it promptly requested deletion of these communications for the Court's review *in camera*.

### C. None of the Challenges that CDK Made to Deficiencies in Cox Automotive's Log Support Plaintiffs' Challenges to the FTC Log

Plaintiffs challenged all entries on CDK's FTC log that lack author or recipient information, and attempt to equate this with a challenge by CDK regarding entries on Cox Automotive's logs that contained no author or recipient information. Mot. at 12. A key difference—which negates Plaintiffs' attempt to equate the two—is that CDK only sought author and recipient information from Cox to the extent the documents were solely being withheld as independently privileged. Dkt. 544 at 6. Cox stated that "the challenged attachments are a mixture of documents that are independently privileged, integral to the email, or both." Dkt. 573 at 4 n.1. Here, CDK confirms that all but 20 documents on CDK's FTC log that were missing author and recipient information are privileged by virtue of being an integral part of a privileged parent communication. *See* Rockoff-Kirk Decl. ¶¶ 7, 8. Moreover, CDK is providing author information for the 20 documents that are independently privileged. *See* Ex. 12.

Plaintiffs also assert that CDK's FTC Log "takes the same approach" as the Cox Automotive log for certain entries where the source of legal advice is identified as "in-house counsel." Mot. at 13. However, CDK's challenge to the Cox Automotive log entries that generically identify "Cox Legal Department" arose from Cox's evasive explanation that the term "Cox Legal Department" only "*predominantly* references an in-house attorney or staff member working on behalf of an attorney." Dkt. 574 at 14 (emphasis added). CDK stated that, "[i]f the document contains legal advice provided by an in-house attorney or staff member working on behalf of the attorney, then absent other problems, CDK does not challenge Cox's privilege

PUBLIC VERSION

claims." Dkt. 587 at 15. Here, all references to "in-house counsel" on the FTC Log mean attorneys or staff members acting on their behalf. *See* Rockoff-Kirk Decl. ¶ 9.

### III. Allowing Plaintiffs to Cherry-Pick FTC Log and Clawback Documents for *In Camera* Review is Not a Proper Basis for Representative Rulings

Plaintiffs, purporting to be "[m]indful of the Court's time," selected 25 out of their 601 challenged clawback documents to submit for the Court's *in camera* review and propose to select another 25 documents from the FTC Log to submit *in camera*. Mot. at 1, 8. Only seven of the 25 clawback documents submitted *in camera* were identified in Plaintiffs' motion such that CDK could prepare a response. *Supra*, pp. 4-7. Based on those seven documents, however, Plaintiffs have not established "questionable assertions of privilege" (Mot. at 8) warranting additional *in camera* review. But if the Court is inclined to review a sample of FTC Log documents, it should not be comprised of 25 documents that Plaintiffs unilaterally select. *See Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 879 (7th Cir. 2005) (overturning privilege rulings based on a sample of documents reviewed *in camera* where the "magistrate judge left the composition of the sample entirely up to the [challenging party's] unrestricted discretion," as the challenging party "had every incentive to cherry-pick the most vulnerable documents.").[14] Instead, the Court should request a randomly generated, statistically significant sample. *See, e.g., Gen. Elec. Co. v. Johnson*, 2006 WL 2616187, at *3 (D.D.C. Sept. 12, 2006); *Henderson Apartment Venture, LLC v. Miller*, 2011 WL 1300143, at *4 (D. Nev. Mar. 31, 2011).

### CONCLUSION

For the foregoing reasons, MDL Plaintiffs' motion should be denied.

---

[14] While the court in *Dyson, Inc. v. SharkNinja Operating LLC*, 2017 WL 1250830 (N.D. Ill. Apr. 5, 2017), cited by Plaintiffs (Mot. at 8), ordered the challenging party to select a five percent sample of documents listed on the other party's privilege logs to be provided for *in camera* review, this ruling conflicts with the Seventh Circuit's admonition against cherry-picking in *Am. Nat. Bank*, 406 F.3d at 879. In addition, *Dyson* primarily concerned a particularized category of documents ("Weekly Updates").

PUBLIC VERSION

Dated: May 1, 2019

Respectfully submitted,

*/s/ Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on May 1, 2019, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL LLC'S RESPONSE IN OPPOSITION TO MDL PLAINTIFFS' MOTION CHALLENGING CDK GLOBAL, LLC'S MARCH 8, 2019 CLAWBACK AND TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM CDK GLOBAL, LLC'S FTC PRIVILEGE LOG** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com