# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| THE DEALERSHIP CLASS ACTION | Magistrate Judge Jeffrey T. Gilbert |

# DEFENDANT CDK GLOBAL, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH OR MODIFY SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii
BACKGROUND ...............................................................................................................1
    A.   The MDL Plaintiffs' Earlier Demand for Phone Records ...............................1
    B.   The Current Subpoena From The Dealers .......................................................2
ARGUMENT ......................................................................................................................3
I.   THE SUBPOENA SHOULD BE QUASHED ..........................................................3
    A.   CDK's Motion To Quash Is Timely .................................................................4
    B.   CDK Has Standing To Move To Quash The Subpoena ..................................5
    C.   The Subpoena Should Be Quashed As To Phone Records Other Than Those
          Covering 2015-2016 .........................................................................................6
II.  IN THE ALTERNATIVE, THE COURT SHOULD ENTER A PROTECTIVE
    ORDER PREVENTING THE DISCLOSURE OF MR. GARDNER'S PHONE
    RECORDS OUTSIDE THE 2015-2016 TIME FRAME ........................................7
CONCLUSION ...................................................................................................................8

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allstate Ins. Co. v. Electrolux Home Prod., Inc.*,
   2017 WL 5478297 (N.D. Ill. Nov. 15, 2017) ...........................................................................3, 7

*Broadcort Capital Corp. v. Flagler Sec., Inc.*,
   149 F.R.D. 626 (D. Colo. 1993) ..................................................................................................5

*Brown v. Yellow Transp., Inc.*,
   2009 WL 3270791 (N.D. Ill. Oct. 9, 2009)..................................................................................6

*City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*,
   2011 WL 2672018 (C.D. Ill. June 30, 2011) ..............................................................................6

*CSC Holdings, Inc. v. Redisi*,
   309 F.3d 988 (7th Cir. 2002) ......................................................................................................6

*In re Disposable Contact Lens Antitrust Litig.*,
   306 F. Supp. 3d 372 (D.D.C. 2017) ............................................................................................3

*In re Factor VIII*,
   174 F.R.D. 412 (N.D. Ill. 1997)..................................................................................................3

*In re Photochromic Lens Antitrust Litig.*,
   2012 WL 12904391 (M.D. Fla. Dec. 20, 2012)..........................................................................3

*Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*,
   2015 WL 1548959 (S.D. Ind. Apr. 7, 2015) ...............................................................................6

*Jackson v. Parker*,
   2008 WL 4844747 (N.D. Ill. Nov. 7, 2008) ...............................................................................6

*Jallali v. Nova Southeastern University*,
   2012 WL 2368322 (N.D. Ill. June 21, 2012) ..............................................................................4

*Mancuso v. Fla. Metro. Univ., Inc.*,
   2011 WL 310726 (S.D. Fla. Jan. 28, 2011) ................................................................................5

*Mfr. Direct, LLC v. Directbuy, Inc.*,
   2007 WL 496382 (N.D. Ind. Feb. 12, 2007)...............................................................................7

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ................................................................................................4

*Mosely v. City of Chi.*,
    252 F.R.D. 421 (N.D. Ill. 2008) ................................................................................................6

*Parker v. Four Seasons Hotels, Ltd.*,
    291 F.R.D. 181 (N.D. Ill. 2013) ................................................................................................5

*Special Markets Ins. Consultants, Inc. v. Lynch*,
    2012 WL 1565348 (N.D. Ill. May 2, 2012) ..........................................................................3, 8

*Sunlust Pictures, LLC v. Does 1-75*,
    2012 WL 3717768 (N.D. Ill. Aug. 27, 2012) ...........................................................................5

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*,
    444 F.3d 462 (6th Cir. 2006) ....................................................................................................3

*U.S. Equal Employment Opportunity Comm'n v. AutoZone, Inc.*,
    2016 WL 7231576 (N.D. Ill. Dec. 14, 2016) ...........................................................................6

*Winter v. Bisso Marine Co.*,
    2014 WL 3778833 (E.D. La. July 29, 2014) ............................................................................5

*Woodard v. Victory Records, Inc.*,
    2014 WL 2118799 (N.D. Ill. May 21, 2014) ...........................................................................4

**Statutes and Rules**

28 U.S.C. § 1407(b) .......................................................................................................................3

Fed. R. Civ. P.
    26 ...............................................................................................................................................7
    26(b)(1) .................................................................................................................................6, 8
    26(c) ..................................................................................................................................5, 7, 8
    26(c)(1) .....................................................................................................................................8
    45 .......................................................................................................................................3, 4, 7
    45(c)(3) .....................................................................................................................................3
    45(d) ......................................................................................................................................3, 7
    45(d)(3)(A) ............................................................................................................................4, 5
    45(d)(3)(A)(iv) ..........................................................................................................................6

L.R. 37.2 .....................................................................................................................................3, 5

**Other Authorities**

Charles A. Wright et al.,
    9A Federal Practice & Procedure § 2463.1 (3d ed.) ................................................................3

This Court ruled last November that the plaintiffs in this MDL could not compel CDK and Reynolds to produce telephone records showing the calls between the two companies. The Court noted that CDK and Reynolds did not possess records covering the 2015-2016 time frame that is the focus of this case, and although records *were* available from 2017 onward, the Court rightly concluded that production of those records would not be proportional to the needs of the case, given their lack of relevance to the MDL Plaintiffs' conspiracy allegations.

Now that the Court has closed the front door on this discovery, the dealer class plaintiffs have decided to seek it through the back door. With less than a month to go in the fact discovery period, they served a subpoena on CDK's wireless provider, AT&T, seeking records for the phone number associated with CDK employee Howard Gardner's cell phone. That subpoena should be quashed or modified to exclude any records outside the 2015-2016 time period. Records of calls outside that "critical time frame" (Dkt. 441 at 1) are no more relevant to this case now than they were when the Court ruled six months ago, and the dealers should not be permitted to evade this Court's earlier ruling by serving a nonparty with a subpoena. In the alternative, the Court should grant a protective order precluding the disclosure of records outside the 2015-2016 time period.

## BACKGROUND

### A. The MDL Plaintiffs' Earlier Demand for Phone Records

As the Court will recall, the MDL Plaintiffs (*i.e.*, Authenticom, Cox Automotive and its subsidiaries, AutoLoop, and the dealer class plaintiffs) first sought to obtain CDK's phone records as part of their Omnibus Motion to Compel (Dkt. 316). In the motion, the MDL Plaintiffs asked the Court to compel CDK and Reynolds to produce records of all calls made and received between CDK and Reynolds' document custodians from 2014 to the present, arguing that these records would be "highly probative of the conspiracy" that they allege. Dkt. 319 at 4. Defendants opposed this

1

discovery request, explaining (among other things) that they only possessed telephone records going back to 2017 and that post-2017 phone records would have little relevance to the case. Dkt. 441 at 1.

This Court denied the MDL Plaintiffs' request. It reasoned that "[t]he critical time frame for telephone communications between Defendants . . . would appear to be around" 2015 and 2016, when the written agreements between CDK and Reynolds were signed and the oral statements to Authenticom about the purported conspiracy were allegedly made, and that CDK and Reynolds no longer possessed records for 2015 and 2016. Dkt. 441 at 1. As to the records for 2017 onward, the Court expressed skepticism that their production would be proportional to the needs of the case. The Court noted that this is not a case in which the *existence* of an agreement between the defendants is disputed—rather, the issue in the case is "the legal effect of th[e] agreements" between CDK and Reynolds and "Defendants' conduct pursuant to those agreements." *Id.* at 2. Given that fact, the Court concluded that "the telephone records Plaintiffs seek for a stub period of time [*i.e.*, 2017-present]" likely "have only limited utility in this case" and ought not be produced unless and until the MDL Plaintiffs could provide a better justification for seeking those records. *Id.* at 3.

B. **The Current Subpoena From The Dealers**

On April 5, 2019, the dealer class plaintiffs served a subpoena on AT&T, which is the wireless phone service provider to CDK. Ex. A at 2. The subpoena seeks (among other things) records of all calls placed or received by the mobile phone number associated with Howard Gardner from and to a list of other phone numbers for the period 2013-present. *Id.* at 3. On April 26, 2019, AT&T's Global Legal Demand Center informed CDK that it had received the subpoena and that AT&T would respond to the subpoena on May 2, 2019, unless it was informed before that date that CDK was contesting the subpoena. Ex. A at 1. CDK notified AT&T by letter on May 1, 2019, that it

2

planned to file this motion to quash. To CDK's knowledge, AT&T has not yet responded to the subpoena and does not intend to do so unless and until ordered to respond by this Court.[1]

## ARGUMENT

### I. THE SUBPOENA SHOULD BE QUASHED

"Rule 45 governs the issuance of subpoenas during litigation." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, 2017 WL 5478297, at *2 (N.D. Ill. Nov. 15, 2017) (Dow, Jr., J.). Rule 45(c)(3) "requires a court to quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or . . . subjects a person to undue burden." *Special Markets Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *1 (N.D. Ill. May 2, 2012). Under that standard, the dealers' subpoena to AT&T should be quashed.[2]

---

[1] CDK complied with L.R. 37.2 before filing the instant motion. Counsel for CDK notified the dealers' counsel by email on May 1, 2019, that CDK intended to seek relief from the Court unless the dealers agreed to limit the subpoena for Mr. Gardner's phone records to the 2015-2016 time period, which was the only period for which this Court had indicated phone records might be warranted. Ex. B at 2 (5/1/2019 Email from M. Provance to F. Richter). The dealers refused to do so, and although they offered to meet and confer, they stated that "we do not anticipate there being a middle ground here." *Id.* at 1 (5/1/2019 Email from F. Richter to M. Provance). Given that the "parties' positions here [are] absolute," Local Rule 37.2 required no further negotiations. Dkt. 498 at 4.

[2] Although Rule 45(d) gives the power to quash or modify a subpoena to "the court for the district where compliance is required"—here, the U.S. District Court for the Southern District of Florida (Ex. A at 2)—it is well established that "[a] judge presiding over an MDL case" can "enforce, modify, or quash a subpoena directed to an extra-district nonparty." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 468-69 (6th Cir. 2006) (citing 28 U.S.C. § 1407(b)); *In re Disposable Contact Lens Antitrust Litig.*, 306 F. Supp. 3d 372, 378 (D.D.C. 2017) (noting courts' holdings that "the transferee judge who manages an MDL has jurisdiction under section 1407 (i.e., the statute authorizing MDL proceedings) to enforce a subpoena that requires compliance in another district, despite the procedural requirements of Rule 45"); *In re Photochromic Lens Antitrust Litig.*, 2012 WL 12904391, at *2 (M.D. Fla. Dec. 20, 2012) ("[C]ourts have concluded that an MDL judge's authority extends to overseeing subpoenas for documents."); *In re Factor VIII*, 174 F.R.D. 412, 415 (N.D. Ill. 1997) ("[I]t is clear that 28 U.S.C. § 1407(b) gives this court the authority to rule, as transferee judge, on the motion to compel compliance with the subpoena issued in the District of Connecticut."); Charles A. Wright et al., 9A Federal Practice & Procedure § 2463.1 (3d ed.) ("In multidistrict litigation, the court in charge of the consolidated proceedings has the power to rule on a motion to quash subpoenas.").

### A. CDK's Motion To Quash Is Timely

Rule 45(d)(3)(A) provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that … subjects a person to undue burden." Neither Rule 45 nor the Advisory Committee Notes "define what constitutes a timely motion." *Woodard v. Victory Records, Inc.*, 2014 WL 2118799, at *4 (N.D. Ill. May 21, 2014)." In *Woodard*, the district court held that a motion to quash that was filed after the original date of compliance noted on the subpoena was timely, based on the "course of conduct between the parties": "the parties agreed on multiple occasions to adjourn" the subpoena, and the motion to quash was filed "before the Subpoena's actual date of compliance." *Id.* at *3, *4. The same result is warranted here: AT&T has not yet responded to the subpoena or produced any documents, and CDK moved swiftly to quash the subpoena after being informed by AT&T of the date on which it intended to respond. That is sufficient to make CDK's motion to quash timely.[3]

Even if the Court determines that April 26, 2019, is the operative date for determining whether CDK's motion is "timely" under Rule 45(d)(3)(A), the Court may excuse CDK's delay for good cause. *See Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (collecting cases). CDK respectfully submits that good cause exists, for two reasons. *First*, the dealers originally noticed their intent to serve AT&T with a subpoena that only sought telephone records related to a non-CDK witness, Vincenzo Rubino and/or TotalLoop, Inc. *See* Ex. C at 8 (3/7/2019 AT&T Subpoena Notice). When the dealers re-noticed the AT&T subpoena a few weeks later, CDK's counsel regrettably failed to appreciate at the time that a request had been added to the subpoena seeking Mr. Gardner's phone records. In an MDL where more than 110 third-party subpoenas have

---

[3] *Jallali v. Nova Southeastern University*, 2012 WL 2368322, at *3 (N.D. Ill. June 21, 2012), cited by the dealers in their correspondence to CDK, is not to the contrary. *Jallali* simply noted that a motion to quash filed on or before the date designated for compliance will be considered timely. Given that the motion there was filed on the date of compliance, the court had no occasion to address whether and when a motion filed after that date is nonetheless timely.

been served, this was an honest mistake. *Second*, CDK did not learn that AT&T intended to comply with the subpoena *unless* CDK filed a motion for relief until CDK received a letter from AT&T to that effect, dated April 26, 2019 (which CDK received on Monday, April 29). *See* Ex. A at 1. Once it became aware of AT&T's intent to comply with the subpoena, CDK moved promptly to satisfy its meet-and-confer obligations under L.R. 37.2 and file this motion as soon as possible.

Finally, whether the instant motion is technically considered "timely" under Rule 45(d)(3)(A) is irrelevant to CDK's alternative request for a protective order under Rule 26(c). For all these reasons, the Court should hear and decide CDK's motion on the merits.

### B. CDK Has Standing To Move To Quash The Subpoena

"[G]enerally, a party does not have standing to quash a subpoena to a non-party." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 187 (N.D. Ill. 2013). But a party does have standing to challenge a nonparty subpoena in certain instances—including where "the subpoena implicates a party's privacy interests." *Sunlust Pictures, LLC v. Does 1-75*, 2012 WL 3717768, at *2 (N.D. Ill. Aug. 27, 2012). A cellular telephone subscriber's interest in the privacy of its phone records is a paradigmatic example of the kind of privacy interest that will confer standing. *See, e.g.*, *Winter v. Bisso Marine Co.*, 2014 WL 3778833, at *1 (E.D. La. July 29, 2014) (concluding that plaintiff "has standing to object to defendant's subpoena to Verizon because he has a personal interest in the records of his own cell phone usage"); *Mancuso v. Fla. Metro. Univ., Inc.*, 2011 WL 310726, at *1 (S.D. Fla. Jan. 28, 2011) (noting that "[n]umerous courts . . . have held that parties have a personal interest in their financial and telephone records sufficient to confer standing to challenge a subpoena directed to a third-party"); *Broadcort Capital Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 628 (D. Colo. 1993) (defendant and nonparty had standing to challenge subpoena seeking their phone records).

CDK therefore has standing to move to quash the subpoena to AT&T seeking records for Mr. Gardner's corporate cell phone. CDK has important business and privacy interests in preventing the disclosure of these records except as is absolutely necessary to this litigation. Those interests amply suffice to give CDK standing to challenge the subpoena.

### C. The Subpoena Should Be Quashed As To Phone Records Other Than Those Covering 2015-2016

On the merits, the Court should quash the subpoena insofar as it seeks phone records for Mr. Gardner's phone from outside the 2015-2016 time period during which the MDL Plaintiffs allege that CDK and Reynolds entered into a conspiracy.

As noted above, a subpoena must be quashed or modified if it imposes an "undue burden" on any "person." Fed. R. Civ. P. 45(d)(3)(A)(iv). And "[a]n undue burden exists when the subpoena seeks information that is not relevant to the case." *City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 2011 WL 2672018, at *2 (C.D. Ill. June 30, 2011) (citing *CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 993 (7th Cir. 2002)); *see also, e.g.*, *Jackson v. Parker*, 2008 WL 4844747, at *1 (N.D. Ill. Nov. 7, 2008) ("[A] subpoena should not be enforced to the extent, *inter alia,* it seeks irrelevant information.") (citing *Mosely v. City of Chi.*, 252 F.R.D. 421, 430 (N.D. Ill. 2008)); *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 1548959, at *2 (S.D. Ind. Apr. 7, 2015) (quashing subpoena that did not seek relevant information); *Brown v. Yellow Transp., Inc.*, 2009 WL 3270791, at *3 (N.D. Ill. Oct. 9, 2009) (same). Likewise, a subpoena remains subject to the requirement that discovery be "'proportional to the needs of the case.'" *U.S. Equal Employment Opportunity Comm'n v. AutoZone, Inc.*, 2016 WL 7231576, at *2 (N.D. Ill. Dec. 14, 2016) (quoting Fed. R. Civ. P. 26(b)(1)).

The subpoena does not satisfy either the relevance or the proportionality requirement insofar as it seeks Mr. Gardner's phone records outside the 2015-2016 period. The MDL Plaintiffs' stated

6

purpose for seeking Defendants' phone records (and the dealers' ostensible purpose in seeking similar records now) is to establish the existence of a conspiracy between CDK and Reynolds. But as the Court explained in its order on Plaintiffs' Omnibus Motion to Compel (Dkt. 441 at 2), this is not a case in which there is a dispute about whether the defendants reached an agreement—the question in the case is whether Defendants' agreements had an illegal objective and whether Defendants engaged in anticompetitive conduct as a result of the agreements. Thus, the case for collecting *any* telephone records here is weak. And to the extent that any telephone records *are* sufficiently relevant to the case for their collection and production to be proportional to the needs of the case, the relevant records would be those from 2015-2016—the period that the Court explained is "the critical time frame" for the MDL Plaintiffs' conspiracy allegations. *Id.* at 1. The Court's order specifically rejected the notion that records from 2017 onward would be worth producing, explaining that such records would postdate the filing of this litigation, would not cover the alleged conspiracy period, and hence would "have only limited utility in this case." *Id.* at 3.

In short, the subpoena is far broader than necessary to obtain any information that could conceivably be relevant to the MDL Plaintiffs' case. The Court should quash or modify the subpoena and shut down the dealers' fishing expedition.

**II. IN THE ALTERNATIVE, THE COURT SHOULD ENTER A PROTECTIVE ORDER PREVENTING THE DISCLOSURE OF MR. GARDNER'S PHONE RECORDS OUTSIDE THE 2015-2016 TIME FRAME**

If the Court declines to quash the subpoena under Rule 45, it should enter a protective order under Rule 26(c) preventing the disclosure of phone records other than those from 2015-2016. It is well established that, irrespective of whether a party has standing to challenge a nonparty subpoena or whether quashing is warranted under Rule 45(d), a party "may 'achieve a similar end under Rule 26' by requesting a protective order relating to document requests served on [the] third party." *Allstate*, 2017 WL 5478297, at *3 (quoting *Mfr. Direct, LLC v. Directbuy, Inc.*, 2007 WL 496382, at

7

*3 (N.D. Ind. Feb. 12, 2007)); *Special Mkts. Ins. Consultants, Inc. v. Lynch*, 2012 WL 1565348, at *1-2 (N.D. Ill. May 2, 2012) (party had standing to object to non-party subpoena under Rule 26(c)(1)). For the reasons discussed above, the subpoena here fails Rule 26(b)(1)'s requirements of relevance and proportionality. The Court should therefore enter a protective order under Rule 26(c) preventing disclosure of Mr. Gardner's phone records from outside the 2015-2016 time period.

## CONCLUSION

The subpoena at issue should be quashed or modified to the extent that it seeks records relating to Howard Gardner's phone number outside the 2015-2016 time period. In the alternative, the Court should enter a protective order precluding the disclosure of records from outside that time period.

Dated: May 2, 2019

Respectfully submitted,

*/s/ Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant
CDK Global, LLC*

8

## CERTIFICATE OF SERVICE

      I, Britt M. Miller, an attorney, hereby certify that on May 2, 2019, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH OR MODIFY SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                             */s/ Britt M. Miller*
                                                             Britt M. Miller
                                                             MAYER BROWN LLP
                                                             71 South Wacker Drive
                                                             Chicago, IL 60606
                                                             Phone: (312) 782-0600
                                                             Fax: (312) 701-7711
                                                             E-mail: bmiller@mayerbrown.com