**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | ) ) ) ) | MDL No. 2817 Case No. 1:18-CV-00864 |
| _____ | ) ) | |
| *This Document Relates To:* | ) ) ) | Hon. Robert M. Dow, Jr. |
| i3 Brands, Inc. et al. v. CDK Global, LLC, et al., No. 1:19-CV-01412 | ) ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT CDK GLOBAL, LLC'S
MOTION TO STAY OR, IN THE ALTERNATIVE, TO DISMISS**

## INTRODUCTION

Through its Motion to Stay, or In the Alternative, To Dismiss ("Motion"), Defendant CDK Global, LLC ("CDK") requests that the Court stay Plaintiffs' lawsuit entirely or, alternatively, dismiss Count II of the complaint in part, and Count XI of the Complaint in full. Mtn. at 1. The Court should deny CDK's Motion for four reasons. First, CDK misunderstands the standard for granting a stay. Second, CDK misunderstands Plaintiffs' relationship with The Reynolds and Reynolds Company ("Reynolds" and, together with CDK, collectively "Defendants"). Third, CDK misunderstands Plaintiffs' vendor status. Finally, CDK fails to appreciate the impact of its anticompetitive activity vis-à-vis Plaintiffs and non-party Nissan North America ("Nissan").

## RELEVANT FACTUAL BACKGROUND AND ALLEGATIONS

Plaintiffs i3 Brands, Inc. and PartProtection, LLC ("Plaintiffs") are "***vendors*** of automotive services." Compl. ¶ 25 (emphasis added); *see also id.* ¶ 27 ("PartProtection is a ***vendor*** that offers an extended-warranty product to dealerships, and dealerships that contract with PartProtection can offer its warranties to their customers, including independent repair facilities.") (emphasis added).

Plaintiffs allege that prior to 2015, the market for data integration providers was competitive. *Id.* ¶ 6. In February 2015, however, Defendants conspired to destroy all competition in the data integration market through a series of illegal agreements, including an agreement to block third-party data integrators from accessing their DMS. *Id.* ¶ 7. Vendors, such as Plaintiffs, now have no choice but to retain Defendants' DMS data integration services in order to retrieve usable customer DMS data. *Id.*

Each of the Defendants took very specific action as part of its attempts to monopolize the market for providing access to car dealerships' Dealer Management Systems ("DMS"). For example, Plaintiffs allege CDK "revamped" its data integration program in June 2015 to restrict access to its DMS to users of CDK's data integration services. *Id.* ¶ 49. Plaintiffs also allege that

CDK now disables login credentials that dealers provide to their favored third-party data integrators on the grounds that they are "unauthorized users"—and in spite of the existence of dealer contracts that specifically permit this type of access. *Id*.

What's more, Defendants now charge vendors monopolistic data integration fees in order to "tilt the table" in favor of their own interests. *Id*. ¶ 8. Plaintiffs must either absorb these exorbitant data fees, or pass them on to their clients. *Id*. When Plaintiffs take the latter approach, Defendants can undercut the vendor prices and offer substantially lower rates—which, ultimately, may drive Plaintiffs out of business completely. *Id*. Plaintiffs believe each of the Defendants should be held liable for its actions.

To that end, Plaintiffs filed suit against each of the Defendants. In response, CDK filed a motion to stay the case against it, or, in the alternative, to dismiss one of Plaintiffs' claims in part and one of their claims in full. As discussed below, CDK's motion should be denied.

## ARGUMENT

## I.     CDK'S REQUEST FOR A STAY SHOULD BE DENIED.

According to CDK, "[w]ithout reaching the merits of i3 Brands's allegations, the Court should stay the complaint in favor of arbitration." Mtn. at 4. The reason, CDK says, is that "i3 agreed to arbitrate any and all claims against Reynolds when it signed up for Reynolds's RCI program" and i3 Brands is attempting to "evade its commitment to arbitrate" by suing CDK in addition to Reynolds. *Id*. CDK is wrong.

First and foremost, Plaintiffs' claims against Reynolds are not subject to arbitration.[1] Separately, Plaintiffs are suing CDK because CDK "conspired [with Reynolds] to destroy all competition in the data integration market through a series of illegal agreements[.]" Compl. ¶ 7.

---

[1] *See* Plaintiffs' Opposition to The Reynolds and Reynolds Company's Motion to Dismiss in Favor of Arbitration, or in the Alternative, to Dismiss Under Rule 12(b)(6), filed contemporaneously herewith.

And *see* Mtn. at 3-4 (acknowledging Plaintiffs' allegations of a conspiracy between CDK and Reynolds). CDK's anticompetitive conduct does not exist in a vacuum; rather, each defendant's conduct is part and parcel of the other's nefarious attempts to "tilt the table" in their favor and to limit competition. *See* Compl. ¶¶ 9, 26, 29, 59-109. It would be nonsensical for Plaintiffs to allege such collusion and conspiracy and then only sue one of the claimed co-conspirators.

### A. CDK misstates the standard for granting a motion to stay.

In effect, CDK argues that the claims against it should be stayed because doing so "would serve important interests of judicial economy and would prevent the litigation of identical claims and issues in multiple forums." Mtn. at 5. But whether the claims are "identical" is not the test for a stay. Indeed, the Seventh Circuit has determined that "[a] test of substantive identity of issues…would be ridiculous." *IDS Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). Moreover, the claims are not, in fact, identical. As illustrated below, Plaintiffs are challenging specific acts taken by CDK. Indeed, there is one claim for which only CDK is a defendant— intentional interference vis-à-vis non-party Nissan. *See* Compl. ¶¶ 84-85, 216-224.

### B. Under the Relevant Standard, the Court Should Deny CDK's Motion.

Although never coming out and identifying it, the principal of law that CDK is trying to invoke is parallel-proceeding abstention. As is relevant here, a stay of litigation may be appropriate in accordance with the principles of parallel-proceeding abstention where "a party to an arbitration agreement, trying to get around it, sues not only the other party to the agreement, but some related third party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration." *IDS*, at 530. "Parallel proceedings, one judicial, one arbitral, are governed…by the normal rules for parallel-proceeding abstention." *Id*., at 529. Abstention is the exception, not the rule. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). It may be

invoked only in those "exceptional circumstances" in which abstention "would clearly serve an important countervailing interest." *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 360 (7th Cir. 1996) (quoting *Cty. Of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 (1959)).

A court conducts a two-part inquiry to determine if abstention is appropriate under *Colorado River* abstention principles. *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006). First, the court determines whether the two proceedings are parallel. *Id.* Because abstention is the exception and not the rule, if two suits are determined to be parallel, the Court then analyzes ten non-exclusive factors to determine whether abstention is appropriate. *Id.*

### 1.    Plaintiffs' claims against CDK are unique, not "parallel."

Generally, a "suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988). In deciding whether two proceedings are parallel, courts examine "whether the suits involve the same parties, arise out of the same facts, and raise similar factual and legal issues." *Tyrer*, at 752 (citing *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). Formal symmetry is not required (*i.e.*, the lawsuits do not need to be identical). *Id. See also IDS*, at 529.

Here, and under the first part of the *Colorado River* abstention test, there is presently only one forum for the litigation: the MDL. Thus, to the extent that CDK is attempting to invoke parallel-proceeding abstention, its request is made preemptively and, ultimately, because the Court has not yet ruled on Reynolds' motion to dismiss in favor of arbitration, it is premature. There are not two proceedings for the Court to examine "whether the suits involve the same parties, arise out of the same facts, and raise similar factual and legal issues." *Tyrer*, at 752. Even if there were, the allegations against CDK are not completely co-extensive with the allegations against Reynolds, and do not meet the test for similarity. *Id.* There is one claim, for example, for which only CDK

is a defendant—intentional interference vis-à-vis non-party Nissan. *See* Compl. ¶¶ 84-85, 216-224. But even assuming that the first part of the test was satisfied, CDK still has not and cannot establish the requisite exceptional circumstances to warrant a stay under the second part of the *Colorado River* test. As a result, the Court should deny CDK's Motion.

### 2. None of the ten *Caminiti* factors apply to Plaintiffs' claims.

A federal court may decline to exercise its jurisdiction because of parallel-proceedings only in exceptional circumstances. *Moses H. Cone Mem. Hosp. v. Mercury constr. Corp.*, 460 U.S. 1, 14-15 (1983). In order to do so, and once satisfied that two suits are parallel, courts undertake a balancing analysis of ten nonexclusive factors. *See Tyrer*, at 751. Those factors are:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7)the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Caminiti and latarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 701 (7th Cir. 1992) (citations and quotations omitted). "No one factor is necessarily determinative[.]" *Colorado River*, at 818-19. Absent or neutral factors weigh against a stay. *See Huon v. Johnson & Bell Ltd.*, 657 F.3d 641, 648 (7th Cir. 2011).

This case and CDK's desired arbitration between Plaintiffs and Reynolds do not lend themselves to application of parallel-proceeding abstention because none of the *Caminiti* factors point in favor of abstention:

- There is no property at issue.

- CDK is already defending against related antitrust claims in the MDL, and the forum is not inconvenient for it.

- All of Plaintiffs' claims against CDK can be determined by this Court, but only Plaintiffs' claims against Reynolds could conceivably be decided in arbitration (and assuming they were arbitrable, which they are not).

- Plaintiffs' lawsuit was the first filed; arbitration proceedings between Plaintiffs and Reynolds have not commenced (and should not commence).

- The majority of Plaintiffs' claims invoke violations of federal laws, and this Court has supplemental jurisdiction over Plaintiffs' state law claims.

- Staying this proceeding in favor of arbitration with Reynolds will not adequately protect Plaintiffs' rights because Plaintiffs' claims against CDK are not subject to arbitration.

- The relative progress of the two proceedings (if in fact there were two proceedings) is a neutral factor, and thus weighs against abstention. *Huon*, at 657 F.3d at 648.

- An arbitral panel would not have concurrent jurisdiction over Plaintiffs' claims against CDK because those claims are not subject to arbitration.

- The availability of removal is a neutral factor, and thus weighs against abstention. *Id.*

- Plaintiffs are pursuing claims against two alleged co-conspirators who entered into anticompetitive agreements; Plaintiffs' lawsuit is not an end-run around separate litigation.

Given that none of the factors favor a stay, there is no exceptional circumstance justifying CDK's request. The Court should thus deny CDK's Motion. *See Caminiti*, at 700 (citing *Colorado River*, 424 U.S. at 818).

### 3. CDK does not have a contract with Plaintiffs by which it could seek to stay the litigation on its own—and CDK's reliance upon Plaintiffs' contractual relationship with Reynolds is misplaced.

Finally, and as a matter of housekeeping, CDK does not have—and does not claim to have—any contract with Plaintiffs by which it could separately move to stay litigation or compel arbitration in this case. Instead, CDK relies upon the terms of a draft 2018 agreement between Plaintiffs and Reynolds. *See* Mtn. at 4 (citing Compl. Ex. 2, § 6.10.1). Such reliance is misplaced.

That agreement was never finalized and its proposed terms are no more binding on Plaintiffs than they are on Reynolds. The Court should deny CDK's request to stay proceedings on this basis.

## II. THE EXCLUSIVE DEALING CLAIM IS VENDOR-ONLY, THUS CDK'S MOTION IS MOOT.

CDK also moves to dismiss Plaintiffs' exclusive dealing claim "in part." Mtn. at 1. Specifically, it asks that the Court dismiss the claim "to the extent it relates to CDK's dealer contracts." Mtn. at 5. But the exclusive dealing claims do not relate to CDK's dealer contracts. Rather, as the complaint makes clear, they relate to vendor contracts. Compl. ¶ 27 ("PartProtection is a **vendor** that offers an extended-warranty product to dealerships, and dealerships that contract with PartProtection can offer its warranties to their customers, including independent repair facilities.") (emphasis added); *see also id.* ¶ 25 (stating that Plaintiffs are "vendors of automotive services"). Thus, CDK has done nothing more than raise a strawman and knock it down. As such, its motion to dismiss the exclusive dealing claim in part should be denied as moot.

## III. PLAINTIFFS STATE A CLAIM FOR INTENTIONAL INTERFERENCE

CDK's third and final challenge to the complaint is that it seeks dismissal of the intentional interference with prospective economic advantage claim against it on the grounds that "the complaint barely provides any detail about this claim at all." Mtn. at 6. Not so. As CDK acknowledges, "Under California law, a plaintiff alleging tortious interference with prospective economic advantage must show '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.'" Mt. at 6 (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 950 (Cal. 2003)). Plaintiffs' Complaint alleges each of these elements.

*First*, Plaintiffs allege an economic relationship between themselves and a third party. Specifically, they allege that "in early 2015, TradeMotion and PartProtection developed an exciting business opportunity with Nissan in which Nissan planned to launch a pilot program in which it would expand its contractual relationship with i3 Brands and offer [non-party] TradeMotion and PartProtection to wholesalers." Compl. ¶ 84. CDK representatives "stated the pilot program was 'very appealing[.]'" *Id*. ¶ 85. Plaintiffs believed that, through the contemplated partnership, "they would substantially expand their customer bases." *Id*. ¶ 84. *See also id*. ¶ 217.

*Second*, Plaintiffs allege CDK's knowledge of the relationship. Specifically, they allege that, on March 19, 2015, they participated in a conference call with Nissan personnel and with CDK "to discuss the pilot program"—including "the cost to Nissan if Nissan billed the dealers directly for their DMS access or absorbed the cost." *Id*. ¶ 85.

*Third*, Plaintiffs allege intentional acts by CDK designed to disrupt Plaintiffs' relationship with Nissan. Specifically, the Complaint alleges that in order to launch the pilot program, PartProtection and non-party TradeMotion needed to become "'certified' by CDK to integrate with CDK's DMS and provide a streamlined workflow based on real-time DMS data." *Id*. ¶ 84. Even though CDK representatives stated that the pilot program was "'very appealing,' upon determining that Nissan's proposal could take market share from one of CDK's largest customers, CDK looked for a way to derail the project." *Id*. ¶ 85. CDK thus "refused to finalize integration for TradeMotion and PartProtection[.]" *Id*. CDK did this "because it had reached anticompetitive agreements with Reynolds concerning the data integration market." *Id*. ¶ 221. In other words, CDK engaged in acts intended to disrupt Plaintiffs' relationship with Nissan. *Korea Supply Co*., at 1154 (specific intent not required; pleading that the defendant "knew that the interference was certain or substantially certain to occur" is sufficient).

**Fourth**, Plaintiffs allege actual disruption of their relationship with Nissan. "[I]n the absence of other evidence, timing alone *may be sufficient* to prove causation . . ." *Overhill Farms, Inc. v. Lopez*, 190 Cal.App.4th 1248, 1267 (Cal. 2010) (emphasis in original). Specifically, Plaintiffs' partnership with Nissan did not materialize as a result of CDK's wrongful conduct. *See* Compl. ¶ 221 ("CDK refused to provide integration to PartProtection and terminated Plaintiffs' access agreement[.]"), ¶ 222 (alleging that Plaintiffs' relationship with Nissan was disrupted as a result of "CDK's refusal to provide integration to PartProtection[.]"). The disruption occurred after CDK's initial acknowledgement that Plaintiffs' Nissan pilot project was "very appealing" and only when CDK determined that Nissan's proposal could take market share from one of its largest customers. *Id*. ¶ 85.

**Finally**, Plaintiffs allege they were economically harmed because of CDK's conduct, in an amount to be determined at trial. *Id*. ¶¶ 223-224.

In the event that the Court is not satisfied that Plaintiffs have sufficiently pleaded these allegations, however, Plaintiffs request leave to amend under this Court's liberal policy of allowing such amendment. (Fed. R. Civ. P. 15(a)(2) (leave to amend should be granted "freely…when justice so requires."); *Runnion ex rel. Runnion Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

## CONCLUSION

For the foregoing reasons, the Court should deny CDK's Motion in its entirety.

Dated: May 3, 2019                          Respectfully submitted,

                                            /s/ Michael E. Bloom
                                            J. Erik Connolly
                                            Michael E. Bloom
                                            Lauren C. Tortorella
                                            Benesch, Friedlander, Coplan & Aronoff LLP
                                            333 Wacker Drive, Suite 1900
                                            Chicago, IL 60606
                                            Telephone: (312) 212-4949
                                            econnolly@beneschlaw.com
                                            mbloom@beneschlaw.com
                                            ltortorella@beneschlaw.com

                                            *Attorneys for Plaintiffs i3 Brands, Inc. and
                                            PartProtection, LLC*

## <u>CERTIFICATE OF SERVICE</u>

Michael E. Bloom, an attorney, hereby certifies that on May 3, 2019, he caused a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT CDK GLOBAL, LLC'S MOTION TO STAY OR, IN THE ALTERNATIVE, TO DISMISS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

*/s/ Michael E. Bloom*