**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Honorable Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP CLASS ACTION | |

**DEALERSHIP COUNTER-DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
THEIR MOTION TO DISMISS THE COUNTERCLAIMS OF CDK GLOBAL, LLC**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.      CDK FAILS TO ALLEGE A BREACH OF CONTRACT CLAIM ................... 2

     A.      CDK Has Alleged Facts Sufficient to Establish that Data Extractors are Agents of Dealerships Which Means Access was Permitted by the Master Service Agreement ............................................... 2

     B.      Counter Defendants' Conduct is different than that of Data Extractors ...................................................................................................... 4

     C.      Agency is a Question of Law in the Context of the MSA ........................ 5

     D.      Agents are Not Third Parties ................................................................... 6

II.     THE CFAA COUNTERCLAIM IS TIME BARRED, PERMISSIVE, FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED ....................... 6

     A.      The Counterclaim is Time-Barred ........................................................... 6

     B.      The Counterclaim is Permissive ............................................................. 7

     C.      The Counterclaim, Even if Compulsory, is Still Time-Barred ................. 9

     D.      Continuing Conduct Allegations Cannot Resuscitate the Counterclaim ........................................................................................ 10

     E.      CDK Fails to Allege Wrongful Access by Counter-Defendants ............. 11

     F.      CDK Fails to Adequately Allege Loss ................................................... 12

III.    CDK CONFLATES THE DMCA AND FAILS TO STATE A CLAIM AGAINST WARRENSBURG AND CONTINENTAL ..................................... 15

     A.      CDK Conflates 17 U.S.C. § 1201: Section 1201(a)(1)(A) and 1201(a)(2) ............................................................................................. 15

     B.      CDK Fails to Plead the Requite Copyright Registration ........................ 17

     C.      Warrensburg and Continental Counter-Defendants' Conduct is Exempted Under § 1201(f)(2) ................................................................ 18

D.     There is No Provision for Secondary Liability Under the DMCA ........... 19

CONCLUSION ..................................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agilysys, Inc. v. Hall,*
   258 F. Supp. 3d 1331 (N.D. Ga. 2017) ................................................................. 11

*In re Aimster Copyright Litig.,*
   334 F.3d 643 (7th Cir. 2003) ................................................................. 20

*Asset Allocation & Mgmt. Co. v. W' Emp'rs Ins. Co.,*
   892 F.2d 566 (7th Cir. 1989) ................................................................. 10

*Boim v. Holy Land Found. for Relief & Dev.,*
   549 F.3d 685 (7th Cir. 2008) ................................................................. 11

*Car Carriers, Inc. v. Ford Motor Co.,*
   745 F.2d 1101 (7th Cir. 1984) ................................................................. 12, 14

*Cent. Bank of Denver v. First Interstate Bank,*
   511 U.S. 164 (1994) ................................................................. 11

*Charles Schwab & Co. v. Carter,*
   No. 04 C 7071, 2005 WL 2369815 (N.D. Ill. Sept. 27, 2005) ................................. 12

*Chas. S. Winner, Inc. v. Polistina,*
   No. 06-4865 (NLH), 2007 WL 1652292 (D.N.J. June 4, 2007) ................................. 15

*Chauffeurs, Teamsters, Warehousemen and Helpers,*
*Local Union No. 135 v. Jefferson Trucking Co.,*
   628 F.2d 1023 (7th Cir. 1980) ................................................................. 10

*Clark v. Doe,*
   202 F.3d 272 (7th Cir. 1999) ................................................................. 2

*Clark v. Paul Gray, Inc.,*
   306 U.S. 583 (1939) ................................................................. *passim*

*Doe v. GTE Corp.,*
   347 F.3d 655 (7th Cir. 2003) ................................................................. 11

*Ellison v. Robertson,*
   357 F.3d 1072 (9th Cir. 2004) ................................................................. 20

*Exxon-Mobil Corp. v. Allapattah Servs. Inc.,*
   545 U.S. 546 (2005) ................................................................. 13

*Goose Island Dev. Corp. v. Preferred Inv. IX Ltd. P'Ship,*
   No. 92 C 2250, 1992 WL 220649 (N.D. Ill. Sept. 3, 1992) ................................. 9

*Gordon v. Nextel Commc'ns,*
    345 F.3d 922 (6th Cir. 2003) ................................................................... 20

*Greene v. Dep't of Education,*
    770 F.3d 667 (7th Cir. 2014) ................................................................... 7

*Jagex Ltd. v. Impulse Software,*
    750 F. Supp. 2d 228 (D. Mass. 2010) ..................................................... 18

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
    501 U.S. 350 (1991) ................................................................................ 9

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    387 F.3d 522 (6th Cir. 2004) ............................................................ 18, 19

*McWane, Inc. v. Crow Chicago Indus., Inc.,*
    224 F.3d 582 (7th Cir. 2000) ................................................................... 5

*MDY Indus., LLC v. Blizzard Entm't, Inc.,*
    629 F.3d 928 (9th Cir. 2010) ................................................................. 19

*Meyer Tech. Solutions, LLC v. Kaegem Corp.,*
    No. 17 C 281, 2017 WL 4512918 (N.D. Ill. Oct. 10, 2017) ........................... 10, 11

*Moore v. New York Cotton Exchange*
    270 U.S. 593 (1926) ................................................................................ 8

*Motorola, Inc. v. Lemko Corp.,*
    609 F. Supp. 2d 760 (N.D. Ill. 2009) ..................................................... 14

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,*
    781 F.3d 182 (5th Cir. 2015) ................................................................. 10

*Navistar, Inc. v. New Balt, Garage, Inc., No. 11-cv-6269,*
    2012 WL 4338816 (N.D. Ill. Sept. 20, 2012) ........................................ 15, 17

*Oak Park Trust and Savings Bank v. Therkildsen,*
    209 F.3d 648 (7th Cir. 2000) ................................................................... 7

*Opp v. Wheaton Van Lines, Inc.,*
    231 F.3d 1060 (7th Cir. 2000) ................................................................. 3

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.,*
    No. 11-CV-726 (CBA), 2013 WL 4409434 (E.D.N.Y. Aug. 2, 2013) ................. 18

*Porters Bldg. Ctrs., Inc. v. Sprint Lumber,*
    No. 16-06055-CV-SJ-ODS, 2017 WL 4413288 (W.D. Mo. Oct. 2, 2017) .......... 12

*Potenza v. Mitchell Int'l,*
    No. 96 C 3875, 1996 WL 596460 (N.D. Ill. Oct. 9, 1996) ........................... 5

*Quantlab Techs. Ltd. (BVI) v. Godlevsky*,
No. 4:09-CV-4039, 2015 WL 1651251 (S.D. Tex. Apr. 14, 2015) .......................................... 14

*In re Price*,
42 F.3d 1068 (7th Cir. 1994) ............................................................................................. 7

*Sec. Fund Servs., Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*,
542 F. Supp. 323 (N.D. Ill. 1982) ................................................................................ 5, 6

*Seitz v. Beiter, No. 11 C 4803*,
2013 WL 409428 (N.D. Ill. Jan. 31, 2013) ..................................................................... 8

*Snyder v. Harris*,
394 U.S. 332 (1969) ....................................................................................................... 13

*Stone v. Wright*
734 F.App'x 989 (7th Cir. 2018) ...................................................................................... 3

*Theotokatos v. Sara Lee Pers. Prods.*,
971 F. Supp. 332 (N.D. Ill 1997) ..................................................................................... 3

*Thermal Design, Inc. v. Guardian Building Prods., Inc.*,
No. 08-C-828, 2012 WL 2254195 (E.D. Wis. June 15, 2012) ........................................ 10

*Thompson v. Gordon*,
241 Ill.2d 428 (2011) ........................................................................................................ 6

*Us, Inc. v. FTC*,
221 F.3d 928 (7th Cir. 2000) ............................................................................................. 8

*Valentine v. WideOpen West Fin., LLC*,
288 F.R.D. 407 (N.D. Ill. 2012) ...................................................................................... 11

*Warshawsky & Co. v. Arcata Nat'l Corp.*,
552 F.2d 1257 (7th Cir. 1977) .......................................................................................... 7

*Wolf v. Schadegg*,
No. 15-cv-01035-KLM, 2016 WL 1117364 (D. Colo. Mar. 21, 2016) ...................... 13, 14

*Worldspan L.P. v Orbitz, LLC*,
No. 05 C 5386, 2006 WL 1069128 (N.D. Ill. Apr. 2006) .......................................... 15

*Zahn v. Int'l Paper Co.*,
414 U.S. 291 (1973) ....................................................................................................... 13

**Statutes**

15 U.S.C. ................................................................................................................. 9, 10

17 U.S.C. ................................................................................................................ *passim*

18 U.S.C. ............................................................................................................ 9, 11, 12

28 U.S.C. .................................................................................................................... 13

**Rules**

Fed. R. Civ. P. 12 ....................................................................................................... 1

Fed. R. Civ. P. 13 ....................................................................................................... 7

## **INTRODUCTION**

Dealership Counter-Defendants, by their undersigned counsel, file this reply in support of their motion to dismiss the counterclaims of CDK Global, LLC ("CDK") ("Counterclaims") (ECF No. 522) pursuant to Federal Rules of Civil Procedure 12(b)(6).

CDK's Opposition to Dealership Counter-Defendants' Motion to Dismiss CDK's Counterclaims ("CDK Opp.") (ECF No. 639) fails to refute Dealership Counter-Defendants' arguments. In reference to its breach of contract counterclaim, ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████ Further, agency, in the context of the MSA, is a question of law. ████████

███████████████████████████████████████████████████████████.

CDK's Computer Fraud and Abuse Act ("CFAA") counterclaim also fails to state a claim as it is time-barred and permissive. CDK fails to allege wrongful access by Dealership Counter-Defendants, as there was none, and also fails to allege loss. In its Digital Millennium Copyright Act ("DMCA") counterclaim, CDK mistakenly conflates two sections of 17 U.S.C. § 1201: 1201(a)(1)(A) and 1201(a)(2), while also conflating Authenticom's role with that of Dealership Counter-Defendants' -- which is also exempted under § 1201(f)(2). CDK fails to plead its Copyright Registration and then glosses over the cases it cites in support of its illusory argument for secondary liability under the DMCA and through the concept of copyright principles. CDK also fails to cite cases that involve § 1201(a)1(A). Lastly, CDK fails to cite any caselaw (nor could it), that any court has held that secondary liability should apply to an entity, like dealerships, in similar circumstances.

## ARGUMENT

I.  **CDK FAILS TO ALLEGE A BREACH OF CONTRACT CLAIM**

CDK makes four arguments in an attempt to save its breach of contract counterclaim from dismissal. None of CDK's arguments are availing and the breach of contract claim should be dismissed.

A.  **CDK Has Alleged Facts Sufficient to Establish that Data Extractors are Agents of Dealerships Which Means Access was Permitted by the Master Service Agreement**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████. By alleging that the access was authorized, CDK has alleged facts sufficient to establish that the data extractors are agents, █████████████████

████████████████████████████████████████████████████████.

"Pleading a legal conclusion . . . cannot save a complaint that alleges facts inconsistent with that conclusion" *Clark v. Doe*, 202 F.3d 272 (7th Cir. 1999) (dismissing complaint where plaintiff concluded defendants acted with "deliberate indifference" but alleged facts demonstrating defendants' lack of knowledge).

████████████████████████████████████████████████████████

███ ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████, CDK has alleged facts sufficient

---

[1] ████████████████████████████████████████████████████████
████████████████████████████████████

███████████████████████████ Under Illinois law, a principal/agent relationship is created when the agent has either actual or apparent authority to act on the principal's behalf. *Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000). An agent has actual authority when the "principal's words or actions would lead a reasonable person in the agent's position to believe that he or she was so authorized" to act on behalf of the principal. *Id.* "Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." *Id.* at 1065. ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

CDK argues that it did not plead itself out of its breach of contract claim because it repeatedly pled the "straightforward conclusion" that ████████████████████████

████████████████████████████████████████████████████

███████████████████████████ However, factual allegations trump legal conclusions, and by alleging that the data extractors were "authoriz[ed]" to access and extract data from the DMS, CDK has pled itself out of court. *See generally Theotokatos v. Sara Lee Pers. Prods.*, 971 F. Supp. 332, 338 (N.D. Ill 1997) (stating "if a plaintiff does plead particulars, and they show he has no claim, then he has pleaded himself out of court").[2]

---

[2] ████████████████████████████████████████████████ CDK Opp. at 4. CDK cites to *Stone v. Wright*, 734 F.App'x 989 (7th Cir. 2018), where the Seventh Circuit quoted the purported claim and then noted there was no part "of the Constitution that creates such a claim." *Id.* But here, unlike the claim in *Stone* that had no basis in the Constitution, ████████████████████████

**B.** **Counter Defendants' Conduct is Different than that of Data Extractors**

To avoid the argument that it has pled itself out of its breach of contract claim, CDK relies on this Court's Order denying Authenticom's motion to dismiss after finding CDK had sufficiently alleged unauthorized access by Authenticom ("Authenticom Order") (ECF No. 506). 

In its claims against Authenticom, however, CDK specifically alleged both that it objected to Authenticom's access (to Authenticom, not the dealerships) and that Authenticom took steps to circumvent CDK's security procedures to block access. *See* Authenticom Order at 8. Those allegations are sufficient to overcome the language in the MSA regarding access by "agents" or third parties with respect to Authenticom. *See* Authenticom Order at 13. Conversely,

. At a minimum, the counterclaim should be dismissed as to data extractors other than Authenticom. Moreover, the breach of contract claim should be dismissed even as to Authenticom because the dealership

---

to access the DMS and CDK's factual allegations (regarding login credentials and permission) establish agency and CDK's quotation around "authorizing" conceded the point.

contract with Authenticom was only one of several additional allegations relied on by the Court to find that Authenticom's unauthorized access had been sufficiently alleged. The Authenticom Order analyzed the question of authorization in the context of fraud and statutory-based, rather than contract-based, counterclaims against Authenticom.[3] Here, Dealership Counter-Defendants are seeking to dismiss CDK's breach of contract claim where ███████████████████████ . *See McWane, Inc. v. Crow Chicago Indus., Inc.*, 224 F.3d 582, 584 (7th Cir. 2000) (affirming dismissal of breach of contract claim and stating, "[t]he meaning of the contract must be determined from the words or language used, and a court cannot place a construction on the contract which is contrary to the plain and obvious meaning of the language"). ████████████ ████████████████████████████████████████████ ████████████████████

## C.    <u>Agency is a Question of Law in the Context of the MSA</u>

CDK argues that whether data extractors were agents is a question of fact that cannot be resolved on the pleadings. CDK Opp. at 5. While agency is "generally a question of fact . . . the cases that so hold have not involved situations in which the existence of the agency relationship is so clear on the face of a document." *Cf. Potenza v. Mitchell Int'l*, No. 96 C 3875, 1996 WL 596460, at *2 (N.D. Ill. Oct. 9, 1996) (denying motion to dismiss because "[t]here can be no question from the Agreement that [defendant] was acting as an agent for the Company"); *Sec. Fund Servs., Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 542 F. Supp. 323, 327 (N.D. Ill. 1982) (denying motion

---

[3] Specifically, CDK and Reynolds brought counterclaims against Authenticom pursuant to the Computer Fraud and Abuse Act, the Digital Millennium Copyright Act, the Copyright Act, the Defend Trade Secrets Act, the Wisconsin Computer Crimes Act, the California Comprehensive Computer Data Access and Fraud Act, the Wisconsin Uniform Trade Secrets Act, and state common law, consumer protection, and related laws. *See generally* ECF Nos. 225, 229.

to dismiss because "under the acts alleged, an agency relation existed"). ████████████

████████████████████████████████████████████████████

████████████████████████

### D. <u>Agents are Not Third Parties</u>

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████. *See, e.g.*, *Thompson v. Gordon*, 241 Ill.2d 428 (2011) (finding that, because contract used the words "improvements" and "replacement" separately, the Court presumed that the parties "chose the word purposefully, and we will give effect to that language"). ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

## II. THE CFAA COUNTERCLAIM IS TIME BARRED, PERMISSIVE, FAILS TO STATE A CLAIM AND SHOULD BE DISMISSED

### A. <u>The Counterclaim is Time-Barred</u>

CFAA's 2-year statute of limitations precludes CDK's counterclaim, ████████████

████████████████████████████████████████████████ (*see, e.g.*, Counterclaims at ¶¶ 91-96), more than two years before the counterclaim was filed. ████

██████████████████████ arguing that the counterclaim is compulsory, and that the underlying complaint tolled the limitations period. CDK Opp. at 13. The argument fails on both grounds.

### B.  The Counterclaim is Permissive

Contrary to CDK's contention (CDK Opp. at 14), the CFAA counterclaim is permissive, not compulsory. A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). *See generally In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994). The counterclaim does not meet that standard. *Greene v. Dep't of Education*, 770 F.3d 667 (7th Cir. 2014), a student loan case, is instructive here, in which plaintiff sued to enjoin the DOE from collecting student debt, and the DOE counterclaimed, seeking repayment of the debt. Although "[t]he 'transaction or occurrence' in question was the Greene's failure to repay the student loans, and it was also the basis of the counterclaim," the Court held that the counterclaim was not compulsory. *Id.* at 669. The Court explained that, "[t]he government's claim for repayment and Green's quest for cancellation of the debt by reason of undue hardship had a common origin, namely the student loans (which dated back to 1987), but it was a remote common origin." *Id.* at 670 (emphasis added).

Here, the counterclaim is permissive because it "arises from events other than those" that led to plaintiffs' claims. *Oak Park Trust and Savings Bank v. Therkildsen*, 209 F.3d 648 (7th Cir. 2000); *see also Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1262 (7th Cir. 1977) (CDK Opp. at 14) ("a counterclaim that has its roots in a separate transaction or occurrence [that is the subject matter of the opposing party's claim] is permissive") (citation omitted). Indeed, the counterclaim,  which ████████████████████████████████████ ████████████████████████████ , is miles apart from Dealership Class Plaintiffs' claims against CDK for engaging in an antitrust conspiracy with Reynolds. Dealership Class Plaintiffs' antitrust claims and CDK's counterclaim share no common origin -- not even a remote one. They

involve separate challenged actions, invoke different statutes, and assert unconnected damage theories. *Compare with Seitz v. Beiter*, No. 11 C 4803, 2013 WL 409428, at *3 (N.D. Ill. Jan. 31, 2013) (CDK Opp. at 14) (counterclaim deemed compulsory where both it and underlying claim "relate to the unauthorized access and disclosure of private email communications to third parties. Thus, the nature of the claims, legal basis for recovery and the laws involved are largely the same").[4]

CDK argues that its affirmative defenses "overlap" with the counterclaim (CDK Opp. at 15), but that argument is misguided. CDK's statement that it is "entitled" to control access to its DMS, *id.*, is no defense, given that CDK's horizontal conspiracy with Reynolds is a per se violation. *See Toys "R" Us, Inc. v. FTC*, 221 F.3d 928, 936 (7th Cir. 2000). Likewise, CDK's "Second Defense," based on plaintiffs' allegedly wrongful conduct as described in its counterclaims (*see* CDK Opp. at 15, citing ECF No. 523 at 235), is not viable under the Court's prior rulings. *See* ECF No. 176 at 21 ("Even assuming, without deciding, that the CFAA prohibits Authenticom from accessing DMSs without Defendants' authorization, Defendants are not free to withhold such approval pursuant to illegal arrangements"); *see also* ECF No. 425 at 20.

CDK also wrongly relies on *Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926). CDK Opp. at 15. In *Moore,* the parties' claims were, in large part, opposite sides of the same coin. *Id.* at 610 ("Essential facts alleged by appellant enter into and constitute in part the cause of action set forth in the counterclaim. * * * So close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish

---

[4]

a foundation for the latter . . . ."). Here, it certainly is not the case that any failure of Dealership Class Plaintiffs to prove their antitrust claims will establish a CFAA violation. The "essential facts" of Dealership Class Plaintiffs' claim -- including CDK's unlawful horizontal agreement with

████████████████████████████████████████████████████████████████.[5]

### C.    The Counterclaim, Even if Compulsory, is Still Time-Barred

Even if the CFAA counterclaim were deemed "compulsory," that would not defeat the time bar. Nothing in CFAA provides for tolling of the 2-year limitations period for counterclaims -- even compulsory ones. Instead, the statute unambiguously states, "[n]o action may be brought under this subsection unless such action is begun within 2 years of the date of the act complained or of the date of the discovery of the damage." 18 U.S.C. § 1030(g). Instructive here is *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). There, the Supreme Court held that claims under Section 10(b) of the Securities Exchange Act are not subject to tolling under the statute's 3-year limitations provision (now codified at 15 U.S.C. § 78i(f)).[6] *See Lampf,* 501 U.S. at 363 ("[t]he 3-year limit is a period of repose inconsistent with tolling"). The language of that provision is remarkably similar to CFAA's limitations provision, stating, "[n]o action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(f). Following *Lampf*, the Court should construe the CFAA's limitations provision as an absolute bar.

---

[5] *Goose Island Dev. Corp. v. Preferred Inv. IX Ltd. P'Ship*, No. 92 C 2250, 1992 WL 220649 (N.D. Ill. Sept. 3, 1992) (CDK Opp. at 15), is inapposite. That case involved two suits that "arise out of the exact same factual background," and involved "the exact same properties, the same contracts, . . . the same alleged oral representations," and "the same critical legal issue." *Id.* at *4.

[6] When *Lampf* was decided, the provision was codified at 15 U.S.C. § 78i(e). *See Lampf*, 501 U.S. at 364 n.9; *see generally* Pub. Law 111-203, 124 Stat. 1870 (July 21, 2010) (recodification).

Apart from an absolute bar, whether a complaint generally tolls the limitations period for a compulsory counterclaim is an open question. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 206-07 (5th Cir. 2015) ("compulsory counterclaims seeking affirmative relief are not tolled"). Although the Seventh Circuit has not squarely addressed the issue, its decision in *Chauffeurs, Teamsters, Warehousemen and Helpers, Local Union No. 135 v. Jefferson Trucking Co.*, 628 F.2d 1023 (7th Cir. 1980), is informative. That case involved a plaintiff's action to enforce an arbitration award and a defendant's effort to challenge that award. Even then, the Court affirmed the district court's ruling that "defendant was barred under the applicable statute of limitations from challenging the propriety of the arbitration award . . . ." *Id.* at 1025; *see id.* at 1027 ("[a] counterclaim for affirmative relief may not be asserted if barred by the statute of limitations"). *Chauffeurs* supports dismissal of the counterclaim on limitations grounds, even if it is "compulsory."[7]

### D.    Continuing Conduct Allegations Cannot Resuscitate the Counterclaim

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████. CFAA's limitations provision is not subject to any "continuing violation" exception where, as here, ████████████████████████████. *Meyer Tech. Solutions, LLC v. Kaegem Corp.*, No. 17 C 281, 2017 WL 4512918, at *1 (N.D. Ill. Oct. 10, 2017). Indeed, even if a continuing violation exception applied, the claim still would be deficient under CFAA's one

---

[7] Contrary to CDK's assertion, the Circuit's decision in *Asset Allocation & Mgmt. Co. v. W' Emp'rs Ins. Co.*, 892 F.2d 566 (7th Cir. 1989), does not suggest that the Circuit would permit assertion of an untimely compulsory counterclaim (CDK Opp. at 14). CDK's reliance on *Thermal Design, Inc. v. Guardian Building Prods., Inc.*, No. 08-C-828, 2012 WL 2254195 (E.D. Wis. June 15, 2012) is misplaced (*id.* at 14). That case involved the timeliness of a counterclaim for defamation arising under a state law, where a state statute provided that a counterclaim relates back to the filing of the underlying complaint. CDK points to no similar provision in the CFAA or any other applicable statute.

year/$5,000 loss requirement, 18 U.S.C. § 1030(c)(4)(A)(i)(I). 

(*see* Counterclaims at ¶ 83), it fails to allege a $5,000 loss attributable to any Dealership Counterclaim-Defendant for any one-year period starting in 2016.

### E. CDK Fails to Allege Wrongful Access by Counter-Defendants

The counterclaim also fails 

. *See* Counterclaims at ¶ 141 (alleging "induce[r]" liability).[8] Nothing in the CFAA specifies "inducer" liability or other secondary liability. See Dealership Counter Defendants' Memorandum in Support of Their Motion to Dismiss the Counterclaims of CDK Global, LLC ("Motion to Dismiss") (ECF No. 595) at 10-11; *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1343-44 (N.D. Ga. 2017).

. *Cent. Bank of Denver v. First Interstate Bank*, 511 U.S. 164 (1994). *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (en banc) ("statutory silence on the subject of secondary liability means there is none"); *Doe v. GTE Corp.*, 347 F.3d 655, 658-59 (7th Cir. 2003) ("[P]laintiffs say that GTE is liable for aiding and abetting Franco. Yet nothing in the [Electronic Communications Privacy Act] condemns assistants, as opposed to those who directly perpetrate the act. Normally federal courts refrain from creating secondary liability that is not specified by statute") (citing *Cent. Bank*); *Valentine v. WideOpen West Fin., LLC*, 288 F.R.D. 407, 412 (N.D. Ill. 2012) (citing *Cent. Bank*).

---

[8] . *See* Counterclaims at ¶ 141; Motion to Dismiss at 11 n.5.

███████████████████████████████████████████████████████

████████████████████████████████ (CDK Opp. at 9 n.4), and its brief cannot serve as an

amended pleading. *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

In any event, an amended pleading would be futile. *See Porters Bldg. Ctrs., Inc. v. Sprint Lumber*,

No. 16-06055-CV-SJ-ODS, 2017 WL 4413288, at *3 (W.D. Mo. Oct. 2, 2017) ("[I]t is doubtful

the CFAA permits a civil conspiracy claim").[9]

### F. CDK Fails to Adequately Allege Loss

The counterclaim should be dismissed in its entirety, ████████████████████████



*See generally Clark v. Paul Gray, Inc.*, 306 U.S. 583, 589 (1939) ("The general allegation in the

bill of complaint that 'the amount involved in this litigation is in excess of' $3,000 and the finding

of the court that 'the amount involved in the within action' exceeds the jurisdictional amount, give

no indication that the amount in controversy with respect to the claim of any single plaintiff

exceeds the jurisdictional amount and are insufficient to show that the district court had jurisdiction

of the cause"). To be sure, the CFAA permits the aggregation of losses to multiple victims caused

---

[9] ████████████████████████████████████████████████████
████████████ Counterclaims at ¶ 49 (emphasis in original). *See Charles Schwab
& Co. v. Carter*, No. 04 C 7071, 2005 WL 2369815, at *6 (N.D. Ill. Sept. 27, 2005). On the other hand, if
Authenticom *is* an agent, then there could be no CFAA liability, because the MSA authorizes "agents" to
access CDK's DMS. *See* Counterclaims at ¶ 49.

by a single violator. *See* 18 U.S.C. § 1030(c)(4)(A)(i)(I) (requiring "loss to 1 or more persons . . . aggregating at least $5,000 in value"). But it does not permit a single victim to aggregate the losses caused by multiple violators. Permitting CDK to aggregate alleged losses caused by 17 separate dealerships would not only violate the statute's plain language, it could be used as a weapon against potentially thousands of separate automobile dealers.

Disallowing the aggregation of alleged losses caused by the 17 Dealership Counter-Defendants is supported by analogous Supreme Court precedents. In *Clark*, the Court held that each car dealer challenging a California law needed to satisfy the "amount in controversy" statutory requirement. *See Clark*, 306 U.S. at 589 ("[W]hen several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements"). *See also Snyder v. Harris*, 394 U.S. 332, 336 (1969) ("The doctrine that separate and distinct claims could not be aggregated . . . is based rather upon this Court's interpretation of the statutory phrase 'matter in controversy'").

In *Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973), the Court held that in a class action brought under the diversity statute, 28 U.S.C. § 1332, "[e]ach plaintiff . . . must satisfy the jurisdictional amount." *Id.* at 301. Congress subsequently abrogated the *Zahn* rule by enacting the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), to permit aggregation. *See Exxon-Mobil Corp. v. Allapattah Servs. Inc.,* 545 U.S. 546, 571-72 (2005).

Here, Congress could have written the CFAA to permit aggregation of losses caused by multiple violators, but it did not do so. Instead, it wrote the statute to permit aggregation only of losses to multiple victims caused by a single violator. Accordingly, CDK's pleading -- which relies on an aggregation theory not permitted by the statute -- fails to state a claim.

CDK's reliance on *Wolf v. Schadegg*, No. 15-cv-01035-KLM, 2016 WL 1117364 (D. Colo. Mar. 21, 2016) (CDK Opp. at 12) is misplaced. There, the court found that the allegations against the defendants -- two former employees who moved to rival firm -- raised a "reasonable inference" of liability. *Id.* at *4. The allegations showed that the individuals worked "for the same rival company" and "undoubtedly were familiar with each other," thus permitting a reasonable inference that they "worked together to access Plaintiffs' data." *Id.* The court also noted that the amount of loss caused by each of the defendants was "not necessarily available to Plaintiffs prior to discovery." *Id.* In this case, however, fact discovery is virtually complete. ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███.[10] Insofar as CDK argues that it is not pursuing an aggregation theory (*see* CDK Opp. at 12), that argument is belied by its own pleading. *See* Counterclaims at ¶ 144. Any effort by CDK to abandon its flawed aggregation allegation via its opposition brief must be rejected. *See Car Carriers*, 745 F.2d at 1107 ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").

████████████████████████████████████████████████████████████████

████████████████████████████████████. *See generally Clark*, 306 U.S. at 589 (1939) ("The general allegation in the bill of complaint that 'the amount involved in this litigation is in excess of' $3,000 and the finding of the court that 'the amount involved in the within action'

---

[10] *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, No. 4:09-CV-4039, 2015 WL 1651251 (S.D. Tex. Apr. 14, 2015) (CDK Opp. at 13) is inapposite. That case addressed a summary judgment motion, where the record created a question of fact concerning the amount of losses attributable to one of the two defendants. *See Quantlab*, 2015 WL 1651251, at *4. *Motorola, Inc. v. Lemko Corp.*, 609 F. Supp. 2d 760 (N.D. Ill. 2009) (CDK Opp. at 13) also is inapposite: that decision's passing reference to losses caused by the defendants (*see* 609 F. Supp. 2d at 768) did not address the aggregation issue.

exceeds the jurisdictional amount, give no indication that the amount in controversy with respect to the claim of any single plaintiff exceeds the jurisdictional amount . . . .") (emphasis added).

Finally, as shown in Dealership Counter-Defendants' Motion to Dismiss, even apart from the $5,000 requirement, ███████████████████████████████████████ ███████████████████████████████████████ (*see* Counterclaims at ¶ 144) -- falls short of the pleading requirements. *See Chas. S. Winner, Inc. v. Polistina*, No. 06-4865 (NLH), 2007 WL 1652292, at *4 (D.N.J. June 4, 2007) (dismissing complaint, where "plaintiffs have simply stated that they hired a computer expert without providing the type of investigation or description of how the computer system was interrupted, damaged, or restored"); *Worldspan L.P. v Orbitz, LLC*, No. 05 C 5386, 2006 WL 1069128, at *4 (N.D. Ill. Apr. 2006).[11]

## III. CDK CONFLATES THE DMCA AND FAILS TO STATE A CLAIM AGAINST WARRENSBURG AND CONTINENTAL

### A. CDK Conflates 17 U.S.C. § 1201: Section 1201(a)(1)(A) and 1201(a)(2)

The anti-circumvention provisions of the Digital Millennium Copyright Act prohibit the circumvention of technological measures put in place to control the access to or reproduction of copyrighted works. The DMCA deals with two types of technological measures: those that protect access control to copyrighted works, and those that protect the rights of the copyright holder. In relevant part, § 1201(a)(1)(A) states: "[n]o person shall circumvent a technological measure that effectively controls access to a work protected under this title."[12] While § 1201(a)(1)(A) prohibits

---

[11] *Navistar, Inc. v. New Balt, Garage, Inc.*, No. 11-cv-6269, 2012 WL 4338816 (N.D. Ill. Sept. 20, 2012) (CDK Opp. at 11), is inapposite. That case addressed the issue whether a CFAA claim can be stated simply on the basis of a statutory "loss" in the absence of "damage," an issue not raised here *Id.* at *8.

[12] (A) to "circumvent a technological measure" means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner; and (B) a technological measure "effectively controls access to a work" if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work.

a person from engaging in the act of circumvention, § 1201(a)(2) prohibits a person from distributing or manufacturing products or services that would enable someone else to circumvent a technological measure. Section 1201(a)(2) states, in relevant part:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title.

17 U.S.C. § 1201(a)(2).

CDK states its counterclaims are based on the same general allegations that alleged a DMCA claim against Authenticom (CDK Opp. at 18); however, CDK's claims against Dealership Counter-Defendants are quite distinguishable. CDK pleads Dealership Counter-Defendants violated § 1201(a)(1)(A); however, § 1201(a)(1)(A) addresses the "conduct" of actually circumventing a technological measure, whereas § 1201(a)(2) addresses the underlying process of ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████.

*See* S. REP. 105-190, 12. 17 U.S.C. § 1201(a)(1)(A) does not apply ████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

Although this Court has found Authenticom's use of an automated program to bypass CDK's use of a CAPTCHA does avoid technological measures (ECF No. 506 at 16-17), ████████████████████████████████████████████████████████. CDK admits that Dealership Counter-Defendants did not violate 17 U.S.C. § 1201(a)(1)(A) as it states in its counterclaim: ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

16

(Counterclaims at ¶ 100) ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████████

████████████████████████ (Counterclaims at ¶ 154).[13] Indeed, this Court has found that circumvention requires "descrambling, decrypting, or otherwise avoiding, bypassing, removing, deactivating, or impairing a "technological measure."" *Navistar,* 2012 WL 4338816, at *5. The requirements dictate a direct action and demonstration that circumvention relates to the actor. Dealership Counter-Defendants committed no such act.

### B. CDK Fails to Plead the Requite Copyright Registration

CDK also fails to satisfy necessary pleading standards for a claim under § 1201(a)(1)(A) because it does not address "access to a work *protected under this title*" 17 U.S.C. § 1201(a)(1)(A) (emphasis added). The work that is being accessed must be protected under the Copyright Act. In the infringement context, parties must register their works with the U.S. Copyright Office before filing suit. In the DMCA context, where a party has not registered its work, the absence of

---

13 

registration "makes it difficult for [a] plaintiff to succeed on [its] DMCA claim, which is *dependent on proof of a valid copyright*" (emphasis added); *Jagex Ltd. v. Impulse Software,* 750 F. Supp. 2d 228, 237 (D. Mass. 2010); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, No. 11-CV-726 (CBA), 2013 WL 4409434, at *17 (E.D.N.Y. Aug. 2, 2013). It is a DMCA plaintiff's burden to show that the work accessed was "protected" under the Copyright Act. *See Jagex Ltd.*, 750 F. Supp. 2d at 236–37. Although CDK asserts its DMS is an original creative work protected under Title 17, it does not provide any proof of a valid copyright of such and therefore fails to meet the pleading requirement.

### C. Warrensburg and Continental Counter-Defendants' Conduct is Exempted Under § 1201(f)(2)

██████████████████████████████████████████████████ is exempted under 17 U.S.C. § 1201(f)(2). ████████████████████████████████████████████████

██████████ conduct falls outside the exemption of § 1201(f)(2) for those who:

> develop and employ technological means to circumvent a technological measure . . . for the purpose of enabling interoperability of an independently created computer program with other programs, if such means are necessary to achieve such interoperability, to the extent that doing so does not constitute infringement under this title."

17 U.S.C. § 1201(f)(2).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 550-51 (6th Cir. 2004) (reversing grant of preliminary injunction because plaintiff unlikely to prevail on merits of DMCA claim where circumvention was necessary to enable interoperability). Although this Court considered the "interoperability exemption" in Authenticom's Motion to Dismiss (ECF No.

273), the context of interoperability in Dealership Counter-Defendants' motion is different. 

.

### D.      There is No Provision for Secondary Liability Under the DMCA

CDK attempts to persuade this Court that § 1201(a)(1)(A) of the DMCA allows for secondary liability and that courts have applied secondary liability principles drawn from copyright laws to causes of action under the DMCA. CDK erroneously asserts that applying secondary liability from the copyright context to claims under § 1201(a)(1)(A) makes sense in light of the DMCA structure. CDK Opp. at 19. However, the opposite is true as Congress created a distinct anti-circumvention right under § 1201(a) without an infringement nexus requirement. *See* S.Rep. No. 105–190, at 12 (1998) (Discussing prohibition on conduct and Subsection 1201(a)(2) is designed to protect access to a copyrighted work). To interpret the statute in the context CDK does disregards the legislative history.

Further, courts have determined that as used in § 1201(a), to "circumvent a technological measure" means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure." Indeed, in § 1201(a)(1)(A), descrambling or decrypting is not necessarily an infringement of a copyright owner's traditional exclusive rights under § 106. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 948 (9th Cir. 2010). Section 1201(a) creates a new anticircumvention right distinct from copyright infringement. Descrambling and decrypting do not necessarily result in someone's reproducing, distributing, publicly performing, or publicly displaying the copyrighted work or creating

derivative works based on the copyrighted work, and attaching copyright context to this provision of the statute would be incorrect. *Id*. at 945.

CDK is plainly incorrect. No court has ever held that secondary liability should apply to an entity like dealerships in similar circumstances -- particularly those that are alleged to have violated § 1201(a)(1)(A). The cases CDK cites in alleged support, *In re Aimster Copyright Litig.*, 334 F.3d 643, 655 (7th Cir. 2003) and *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) (CDK Opp. at 22), for example, relate to an entirely different section of the DMCA -- § 17 U.S.C. § 512 -- which deals with transitory digital communications and service providers, not anything to do with circumvention.[14] As discussed *supra*, the Seventh Circuit's instruction is telling that "on the subject of secondary liability silence means there is none." Accordingly, as the DMCA does not provide for secondary liability, there is none. This assertion is further confirmed by the legislative history and absence of case law.

## CONCLUSION

For the foregoing reasons and those stated in their Motion to Dismiss, the Court should dismiss CDK's Counterclaims.

*[Signature block on next page.]*

---

[14] *Gordon v. Nextel Commc'ns*, 345 F.3d 922 (6th Cir. 2003), also relates to another entirely different section, 17 U.S.C. § 1202(b), which discuss when (1) a defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an obvious and direct financial interest in the infringement. The *Microsoft* and *Rosenthal* cases merely restate the flawed assertions from *Gordon* and *Ellison*.

DATED: May 3, 2019                 Respectfully submitted,

                                   */s/ Peggy J. Wedgworth*
                                   Peggy J. Wedgworth (*pro hac vice*)
                                   Elizabeth McKenna (*pro hac vice*)
                                   **MILBERG TADLER PHILLIPS GROSSMAN LLP**
                                   One Pennsylvania Plaza, 19th Floor
                                   New York, NY 10119
                                   Tel: (212) 594-5300
                                   Fax: (212) 868-1229
                                   pwedgworth@milberg.com
                                   emckenna@milberg.com

                                   ***Interim Lead Counsel for the Dealership Class***

                                   Daniel C. Hedlund (*pro hac vice*)
                                   Michelle J. Looby (*pro hac vice*)
                                   Daniel E. Gustafson
                                   David A. Goodwin
                                   Daniel J. Nordin
                                   **GUSTAFSON GLUEK PLLC**
                                   Canadian Pacific Plaza
                                   120 South Sixth Street, Suite 2600
                                   Minneapolis, MN 55402
                                   Tel: (612) 333-8844
                                   Fax: (612) 339-6622
                                   dhedlund@gustafsongluek.com
                                   mlooby@gustafsongluek.com
                                   dgustafson@gustafsongluek.com
                                   dgoodwin@gustafsongluek.com
                                   dnordin@gustafsongluek.com

                                   ***Dealership Class Plaintiffs' Steering Committee***

                                   Leonard A. Bellavia (*pro hac vice*)
                                   Steven Blatt
                                   **BELLAVIA BLATT, PC**
                                   200 Old Country Road, Suite 400
                                   Mineola, New York 11501
                                   Tel: (516) 873-3000
                                   Fax: (516) 873-9032
                                   lbellavia@dealerlaw.com
                                   sblatt@dealerlaw.com

                                   ***Dealership Class Plaintiffs' Steering Committee***

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (*pro hac vice*)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7 423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C .**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

*MDL Liaison Counsel*

22

<u>**CERTIFICATE OF SERVICE**</u>

I, Peggy J. Wedgworth, an attorney, hereby certify that on May 3, 2019, I caused a true and correct copy of the foregoing **DEALERSHIP COUNTER-DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS THE COUNTERCLAIMS OF CDK GLOBAL, LLC** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth