**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION

This Document Relates To:

ALL ACTIONS

MDL No. 2817
Case No. 18-cv-00864

Hon. Robert M. Dow, Jr.
Magistrate Judge Jeffrey T. Gilbert

**PUBLIC-REDACTED**

# REPLY IN SUPPORT OF MDL PLAINTIFFS' MOTION CHALLENGING CDK GLOBAL, LLC'S MARCH 8, 2019 CLAWBACKS AND TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM CDK GLOBAL, LLC'S FTC PRIVILEGE LOG

## INTRODUCTION

Defendant CDK Global, LLC ("CDK") has doubled down on its unwarranted assertions of privilege over ordinary business discussions that happen to copy in-house attorneys. Many of these discussions plainly do not seek legal advice – for example, one email copies an in-house attorney with the note "For Your Information." Nonetheless, CDK speculates that there were "implicit" requests for advice on unspecified legal issues because attorneys were copied on the emails. That speculation falls short of CDK's burden of demonstrating that the "primary" or "predominant" purpose of the emails was legal. It is also contrary to black letter law that merely copying an attorney does not transform unprivileged matters into privileged communications. Given CDK's erroneous position that the attorney-client privilege applies to ordinary business discussions, MDL Plaintiffs respectfully submit that the Court should also review a sample of documents from CDK's FTC Privilege Log to determine whether the same infirmities exist there.

In addition, CDK's FTC Privilege Log fails to justify assertions of privilege over communications with third parties. CDK does not even contend that many of these third-party communications are privileged in their own right but rather claims those communications are privileged because they are attached to other privileged emails (the so-called "part-and-parcel" doctrine). However, CDK must still produce the unprivileged attachments in some form (which CDK concedes it has not done for all documents at issue). CDK also claims privilege over communications with its third-party consultants but fails to satisfy the exacting standard of showing that the use of the consultants was necessary for the provision of legal advice.

Finally, CDK has previously challenged certain approaches taken by other parties in their privilege logs, but CDK has used those same approaches for its FTC Privilege Log. The Court should apply consistent relief on these issues.

## BACKGROUND

CDK's contention (at 1) that MDL Plaintiffs "forced a rushed meet-and-confer process before prematurely bringing a motion to compel" inaccurately characterizes the history of the present dispute. The parties previously agreed to a March 1, 2019 deadline for filing motions to compel with respect to the parties' privilege logs. *See* ECF No. 491. However, by that date, CDK had only provided its privilege log with respect to documents produced to MDL Plaintiffs but not to the FTC (consisting of 12,060 privilege entries). On February 28, 2019 – with the April 30, 2019 fact discovery deadline approaching – the parties agreed to a separate schedule for any challenges to CDK's forthcoming FTC Privilege Log. That separate schedule set March 7, 2019 as the deadline for CDK to provide the FTC Privilege Log, created a one-week period for the parties to meet-and-confer regarding that privilege log (deadline March 14, 2019), and gave MDL Plaintiffs two weeks to prepare any motion to compel (due March 28, 2019). *See* CDK Ex. 4.[1]

At the time MDL Plaintiffs agreed to this schedule, they were unaware that CDK's FTC Privilege Log would contain more than 40,000 entries – nearly 80% of CDK's privilege entries for this litigation – a fact which CDK surely knew but did not disclose. *See id.* After receiving CDK's FTC Privilege Log, the parties agreed to extend the time for the meet-and-confers from one week to two weeks (which was a schedule *proposed by CDK*). *See* MDL Pl. Ex. D. MDL Plaintiffs adhered to that schedule given the impending April 30, 2019 close of fact discovery, and CDK never sought additional time. Having received the additional time that it sought to meet-and-confer and having declined to seek more time, CDK can hardly complain that the process was "rushed."

---

[1] "MDL Pl. Br. __" and "MDL Pl. Ex. __" refers to the opening brief and exhibits submitted by MDL Plaintiffs (ECF Nos. 634, 635). "CDK Br. __" and "CDK Ex. __" refers to the opposition brief and exhibits submitted by CDK (ECF Nos. 668, 669).

In any event, any time constraints – which have adversely affected MDL Plaintiffs far more than CDK – are solely the result of CDK's tactical decision to withhold its FTC Privilege Log (containing nearly 80 percent of its privilege assertions in this litigation) until March 8, 2019 – nearly four months after the deadline for privilege logs and many months after CDK had finalized and provided substantial portions of the FTC Privilege Log to the FTC. Indeed, CDK had finalized more than half of its FTC Privilege Log and provided it to the FTC on *March 21, 2018*, but inexplicably waited nearly a year to provide that same information to MDL Plaintiffs. CDK attempts (at 3) to rationalize its decisions by claiming that it would have been "highly inefficient for CDK to reproduce interim subsections of its FTC Log to Plaintiffs" until the Log was complete. That holds little water given that CDK provided the FTC Privilege Log to the FTC on a rolling basis but just neglected to do so for MDL Plaintiffs.[2]

## ARGUMENT

### I. CDK Has Not Established The Clawback Documents Are Privileged

CDK has attempted to clawback numerous emails that contain ordinary business discussions merely because an attorney is copied on the email. But it is black letter law that "the inclusion of general counsel does not transform all business discussions into privileged attorney-client communications." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013). Rather, CDK bears the burden of demonstrating that "the 'primary' or 'predominant' purpose of

[2] CDK's attempted comparison (at 3 n.3) to additions that certain MDL Plaintiffs have made to their privilege logs is inapposite. Certain MDL Plaintiffs have periodically added entries to their timely produced privilege logs because those plaintiffs have produced additional documents in response to ongoing discovery negotiations with CDK and Reynolds. Those plaintiffs did not withhold privilege logs that had been prepared many months ago, and their additions – 100 additional for Dealership Plaintiffs and 146 new entries for Cox Automotive – were far smaller than the 40,000-plus new privilege entries made by CDK less than two months prior to the close of fact discovery.

the communication is to render or solicit legal advice." *Motorola Solutions, Inc. v. Hytera Commc'ns Corp.*, 2018 WL 1804350, at *3 (N.D. Ill. Apr. 17, 2018); *see* MDL Pl. Br. 5 (citing cases). CDK does not – and cannot – dispute these principles.

MDL Plaintiffs have submitted 25 exemplar documents to the Court *in camera* (and to CDK) to obtain rulings on these exemplars that can be applied to the remaining documents being challenged. *See* MDL Pl. Br. 5. CDK has failed to satisfy its burden of showing that the portions of these 25 documents that CDK seeks to withhold are "primarily" or "predominantly" legal.

**A. CDK-2701505 (MDL Pl. Ex. J)**

In Exhibit J, [REDACTED]

There is no plausible way to interpret this entire email as seeking legal advice that would justify CDK withholding the entire document. *See Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 2011 WL 3489828, at *4 (N.D. Ill. Aug. 9, 2011) (holding a "choice to only copy [in-house counsel] suggests an intent merely to keep [in-house counsel] in the loop," which "does not render [the email] privileged").[3]

**B. CDK-1175238 (MDL Pl. Ex. K)**

In Exhibit K, [REDACTED]

---

[3] [REDACTED] It is far from apparent that those discussions have anything to do with legal advice, and even if they did, the solution would be for CDK to redact the sub-bullets rather than withholding the entire email. *See* MDL Pl. Br. 6 n.2.

[redacted] *See Dyson, Inc. v. SharkNinja Operating LLC*, 2017 WL 1250830, at *2 (N.D. Ill. Apr. 5, 2017) (rejecting privilege claims for documents copying attorneys that do not mention legal issues).

**C. CDK-0207446 (MDL Pl. Ex. L)**

In Exhibit L, [redacted] *See In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 5180, at *5 (N.D. Ill. Jan. 3, 1996) ("document memorializ[ing] a telephone conversation" without any "substantive legal advice" was not privileged).

**D. CDK-0879580 (MDL Pl. Ex. M)**

In Exhibit M, CDK attempts to withhold an entire email chain even though several emails within the chain are not privileged. [redacted] CDK claims (at 6) that it withheld this email because it was "integral" to subsequent legal advice, but it fails to explain how disclosure of this initial email would reveal any attorney-client confidence. *See Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 796 (N.D. Ill. 2015) (use

of attorney-client privilege should be "limited to those instances where it is necessary" to prevent disclosure of legal advice). Because that response was intended to be communicated to a third-party, this is not a confidential communication subject to any privilege. *See RBS Citizens*, 291 F.R.D. at 216 ("[C]ommunications . . . with the intent that they will be disclosed to a third party are not privileged.") (citing *United States v. Evans*, 113 F.3d 1457, 1462 (7th Cir. 1997)).

**E. CDK-1083883 (MDL Pl. Ex. N)**

In Exhibit N, CDK seeks to withhold an email chain that principally concerns business discussions about CDK has already redacted the portions of the email chain discussing legal issues relating to CDK's compliance with its contracts with vendors. CDK provides no reason why it must also redact the business discussions. *See Equity Residential v. Kendall Risk Mgmt., Inc.*, 246 F.R.D. 557, 568 (N.D. Ill. 2007) (for communications containing legal and business discussions, redactions should be limited to portions "discussing legal advice given by an attorney").

**F. CDK-0467349 (MDL Pl. Ex. O) & CDK-0467597 (MDL Pl. Ex. P)**

In Exhibits O and P, CDK also seeks to redact business discussions – . CDK's contention (at 6) that other portions of this email chain concern is irrelevant because CDK has already redacted those portions.

CDK Br. 6. Here too, CDK does not explain why it would be necessary to redact business discussions that are severable from any legal advice. *See id.*

**II. MDL Plaintiffs Properly Request That The Court Review A Sample Of Documents**

MDL Plaintiffs have requested that the Court rule on a sample of 25 clawback documents so that the parties can use those rulings to resolve disputes regarding the remaining 576 challenged clawback documents. *See* MDL Pl. Br. 4-5. In addition, because of CDK's unwarranted assertions of privilege with respect to clawback documents, MDL Plaintiffs have requested that the Court review a sample of 25 documents from the FTC Privilege Log (to be selected by MDL Plaintiffs) to determine whether the same problems exist in the FTC Privilege Log. *See id.* at 8-9.

Other courts have adopted similar approaches where (as here) it would be impractical for the Court to review each challenged document. For example, in *Dyson*, the Court addressed plaintiff's concern that the defendant had "over-designated certain communications and documents as privileged" by allowing the plaintiff to "select a sample of 5% of the documents" for the Court to review *in camera*. 2017 WL 1250830 at *1. "If, after review, the Court believed that there was sufficient over-designation," the Court would address the unreviewed documents (there, by appointing a special master). *Id.*; *see also In re Blue Cross Blue Shield Antitrust Litig.*, 2018 WL 2676165, at *3 (N.D. Ala. Jan. 29, 2018) (approving review of sample of documents selected by plaintiffs and holding "[w]here the number of challenged documents is too numerous to allow for document-by-document examination, courts may employ sampling of withheld documents to determine the validity of a party's overall privilege claims") (citing cases).

CDK incorrectly contends (at 15) that the process proposed by MDL Plaintiffs is contrary to Seventh Circuit precedent. In *Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of U.S.*, 406 F.3d 867 (7th Cir. 2005), the Court held that it was improper for a

court to review a sample of documents *in camera* and then, based upon that review, to order production of other documents that had not been reviewed. *See id.* at 878-80. MDL Plaintiffs do not request such a process. Rather, MDL Plaintiffs request that the Court provide rulings on documents submitted *in camera* – consistent with Seventh Circuit guidance, *see id.* at 880 – and then that the parties use those rulings to resolve disputes regarding the remaining documents.[4]

**III. CDK Fails To Establish Privilege Over Communications With Certain Third Parties**

CDK's FTC Privilege Log asserted privilege over a number of communications with third parties. These communications are presumptively not privileged. *See* MDL Pl. Br. 9 (citing *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *2 (N.D. Ill. Apr. 4, 2017) ("Distribution of materials to third parties outside the company would obviously, with rare exceptions, result in a waiver."). MDL Plaintiffs requested further information from CDK to assess whether these communications remained privileged despite their disclosure to third parties but did not receive additional information from CDK. *See* MDL Pl. Ex. E. CDK continues to fail to justify its claim of privilege over communications with the following third parties.

**A. "Part-And-Parcel" Communications**

CDK defends withholding certain emails with third parties not because the emails are privileged but because the emails were attached to other emails that CDK asserts are privileged. However, "[a]ttachments which are not themselves privileged do not become privileged merely by attaching them to a communication with an attorney." *Nucap Indus.*, 2017 WL 3624084, at *2; *see SEC v. Hollnagel*, 2010 WL 11586980, at *16 (N.D. Ill. Jan. 22, 2010) (similar). Thus, CDK

[4] CDK's request (at 15) that the Court use a "randomly generated, statistically significant sample" would result in the Court reviewing even more documents (a sample of approximately 400 documents would be needed to ensure a margin of error less than five percent) and would not be productive because many documents in the sample would not concern the issues in dispute.

must produce the unprivileged attachments, which it can do without disclosing any privileged matter. *See* MDL Pl. Br. 10 & n.3.

CDK provides no authority to support its contrary position. The principal case that CDK relies upon (at 8-9) – *Muro v. Target Corp.*, 250 F.R.D. 350 (N.D. Ill. 2007) – actually contradicts CDK's position. *Muro* held that, although a party can "legitimately withhold an entire e-mail *forwarding* prior materials to counsel," it must "disclos[e] those prior materials themselves." 250 F.R.D. at 363. That is, while CDK may withhold an email with unprivileged attachments, it must still produce the unprivileged attachments in some form. The other cases on which CDK relies are in accord. *See Rainey v. Plainfield Cmty. Consol. Sch. Dist. No. 202*, 2009 WL 1033654, at *2 (N.D. Ill. Apr. 16, 2009) (holding unprivileged attachments "must be disclosed to the extent they are responsive to a proper discovery request"); *Barton v. Zimmer Inc.*, 2008 WL 80647, at *5 (N.D. Ind. Jan. 7, 2008) (unprivileged portion of email "remains unprotected"); *Engage Healthcare Commm'cns, LLC v. Intellisphere, LLC*, 2017 WL 10259770, at *3 n.5 (D.N.J. Sept. 12, 2017) ("[T]o the extent a non-privileged attachment to a privileged communication exists independent of the privileged communication, Defendants would be obligated to produce it.").

Here, CDK has withheld emails and their unprivileged attachments based on the so-called "part-and-parcel" doctrine without producing the unprivileged attachments. As CDK concedes, some portion of the unprivileged attachments that CDK has withheld have not been produced to MDL Plaintiffs. *See* CDK Br. 8 n.9 (stating 49 attachments have not been produced). This Court should compel CDK to produce those documents.[5]

[5] CDK represents that it has produced 237 of the 286 challenged unprivileged attachments. MDL Plaintiffs previously requested that CDK provide such information to narrow the dispute, but CDK did not respond to that request until filing its brief.

**B. Aberdeen Strategies**

CDK has withheld communications with its public relations consultant, Aberdeen Strategies. Numerous cases hold that such communications are not privileged even if they concern the public relations strategy regarding the litigation at issue. *See* MDL Pl. Br. at 11-12 (citing cases). As one court explained, "[i]t may be that the modern client comes to court as prepared to massage the media as to persuade the judge; but nothing in the client's communications for the former purpose constitutes the obtaining of legal advice or justifies a privileged status." *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

CDK relies (at 9-10) on cases applying two narrow exceptions to this rule. *First*, communications "between lawyers and public relations consultants . . . *hired by the lawyers*" may be privileged where the communications are "*directed at handling the client's legal problems*" as opposed to "ordinary public relations advice." *In re Grand Jury Subpoenas Dated March 24, 2003 Directed to (A) Grand Jury Witness Firm and (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 330-31 (S.D.N.Y. 2003) (emphasis added); *see also Eagle Harbor Holdings, LLC v. Ford Motor Co.*, 2014 WL 1681623, at *1 (W.D. Wash. Apr. 28, 2014) (following *In re Grand Jury Subpoenas*). In *Grand Jury Subpoenas*, for example, public relations advice was "directed at handling the client's legal problems" because that advice concerned efforts to influence criminal prosecution decisions. *See* 265 F. Supp. 2d at 331. *Second*, a party's communications with a public relations firm are privileged to the extent the firm "was, essentially, incorporated" into the party "to perform a corporate function." *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001).[6]

---

6 CDK has argued elsewhere that this Court should not even recognize the "de facto" employee exception to third-party communications. *See* ECF No. 585, at 2.

CDK fails to show that the first exception applies. As an initial matter, [redacted] which is fatal to CDK's argument. *See* ECF No. 668-2 (Kinzer Decl.) ¶ 4; *In re Grand Jury Subpoenas*, 265 F. Supp. 2d at 331 ("[T]he privilege applies where the lawyers do the hiring."). Moreover, CDK fails to show that Aberdeen Strategies was engaged for the purpose of "handling [CDK's] legal problems." *Id.* CDK merely states that Aberdeen Strategies [redacted] CDK Br. 9-10. But such public relations advice that – at best – "simply serves to assist counsel in assessing the probable public reaction to various strategic alternatives" is not privileged. *Calvin Klein*, 198 F.R.D. at 54-55; *see Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *4 (N.D. Ill. May 1, 2014) (citing cases). Moreover, CDK's privilege log descriptions show Aberdeen Strategies was engaged for generic public relations issues (*e.g.*, [redacted]).[7] *See* MDL Pl. Ex. G. And CDK does not even attempt to argue that second exception applies. To the contrary, CDK states that Aberdeen Strategies [redacted] not that Aberdeen Strategies was incorporated into CDK and had assumed responsibility for CDK's public relations. *See* CDK

[7] CDK also relies on an affidavit that makes conclusory statements that Aberdeen Strategies [redacted] ECF No. 668-2 (Kinzer Decl.) ¶¶ 5-6. Those should be given no weight. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009) ("[A]pplication of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statement[s]."); *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 796 (N.D. Ill. 2015) ("[C]onclusory assertions are insufficient to carry th[e] burden."); *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 540-41 (N.D. Ill. 2000) (disregarding conclusory affidavit submitted to substantiate privilege assertion); *Alexander v. FBI*, 192 F.R.D. 42, 45-46 (D.D.C. 2000) (same).

Br. 9-10 (emphasis added). CDK's communications with Aberdeen Strategies must therefore be produced.

**3. Morgan Stanley, Deloitte, Ernst & Young, and PwC**

CDK claims privilege over communications with various consultants and advisors on the basis that these consultants were included on the challenged communications to facilitate the request for or provision of legal advice. CDK Br. 10-12. For these communications to remain privileged, CDK must demonstrate that the consultant was "necessary, or at least highly useful" to the attorney's provision of legal advice to CDK. *See* MDL Pl. Br. at 12 (citing *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 227-28 (D. Mass. 2010). CDK has not done so.

CDK conclusorily claims that the consultants' presence was [REDACTED] in reliance on an affidavit containing similar boilerplate assertions of necessity. *See* CDK Br. 11 (citing ECF No. 668-2 (Kinzer Decl.) ¶¶ 8, 10, 12, 15). Neither the conclusory assertions made by CDK in its briefing nor by its affiant should be given any weight. *See supra* p. 11 n.7. Even taken at face value, the statements by CDK's affiant do not explain why the use of Morgan Stanley, Ernst & Young, and Deloitte, was necessary for CDK's attorneys to provide legal advice with respect to the specific documents that CDK withholds. CDK has therefore failed to carry its burden with respect to the withheld communications for Morgan Stanley, Ernst & Young, and Deloitte. *See In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("An assertion of privilege therefore must be made on a document-by-document basis.").

For the remaining consultant (PwC), CDK claims (at 11-12) that [REDACTED]



[redacted] Therefore, PwC's assistance was neither "necessary" nor "highly useful" to the provision of legal advice. [redacted]

This Court should compel CDK to produce those underlying communications.[8]

#### 4. Remaining Third Parties

There is no longer any additional dispute for the Court to resolve with the remaining third parties. MDL Plaintiffs previously attempted to narrow disputes between the parties by requesting additional information about why communications with these third parties were privileged, *see* MDL Pl. Ex. E, but did not receive that information until CDK filed its opposition brief.[9]

### III. The Court Should Apply Identical Treatment To Certain Issues Challenged By CDK That Also Exist In CDK's FTC Privilege Log

As MDL Plaintiffs previously explained, CDK challenged certain issues in Cox Automotive's privilege log even though CDK had taken the same approach with its privilege log.

---

[8] [redacted]

[9] CDK wrongly states (at 7-8) it was "misleading[ ]" for MDL Plaintiffs to argue that CDK withheld communications with Reynolds, but CDK does not deny that it did withhold the communications. Indeed, CDK continued to assert privilege over these communications in its FTC Privilege Log dated April 10, 2019, which was created *after* CDK claims to have withdrawn its assertions of privilege with respect to Reynolds. *See* CDK Ex. 9. In any event, with the understanding that CDK is no longer asserting privilege with respect to communications with Reynolds, *see* CDK Br. 7-8, there is no dispute for the Court to resolve.

Accordingly, MDL Plaintiffs requested that any relief ordered by the Court with respect to these issues for Cox Automotive should also be applied to CDK. *See* MDL Pl. Br. 12-13.

CDK fails in its attempt to distinguish its challenges to Cox Automotive's privilege log from CDK's own approach to its privilege log. *First*, CDK contends (at 14) that it challenged the lack of author and sender information for certain attachments on Cox Automotive's privilege log only for attachments that were "independently privileged" as opposed to covered by the so-called "part-and-parcel" doctrine. That is a distinction without a difference. CDK argued that Cox Automotive's privilege log was deficient because Paragraph 9(a) of the ESI Stipulation and case law require identification of the author and recipient for every document on a privilege log (including attachments for which no such information is available). *See* ECF No. 544, at 5-6. While CDK's argument is incorrect, *see* ECF No. 573, at 3-4, that argument (if adopted by the Court) would apply regardless of whether a document is "independently privileged" or covered by the so-called "part-and-parcel" doctrine.

*Second*, CDK claims (at 14-15) that it challenged certain entries on Cox Automotive's privilege log that stated legal advice was requested or provided by "Cox Legal Department" only to the extent those entries did not refer to legal advice by a member of Cox Automotive's in-house legal department. But CDK actually argued that certain "entries contain generic references to the 'Cox Legal Department,' . . . without identifying any attorney by name," which is "insufficient." ECF No. 544, at 14. This argument is incorrect, *see* ECF No. 573, at 14-15, but if adopted by the Court, it should be applied to CDK's privilege log as well.

## CONCLUSION

For the foregoing reasons, MDL Plaintiffs' motion should be granted.

Dated: May 8, 2019

Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I, Derek T. Ho, an attorney, hereby certify that on May 8, 2019, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF MDL PLAINTIFFS' MOTION CHALLENGING CDK GLOBAL, LLC'S MARCH 8, 2019 CLAWBACKS AND TO COMPEL PRODUCTION OF INADEQUATELY LOGGED DOCUMENTS FROM CDK GLOBAL, LLC'S FTC PRIVILEGE LOG** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com