**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817 <br> Case No. 18-cv-00864 |
| **This Document Relates To:** | Hon. Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | |

**DEALERSHIP CLASS PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
CDK GLOBAL, LLC'S MOTION TO QUASH OR MODIFY SUBPOENA OR,
IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ......................................................................................1

II.  CDK'S MOTION TO QUASH SHOULD BE DENIED ...................................................2

    A.   The AT&T Subpoena Seeks Highly Relevant Phone Records ............................2

    B.   The AT&T Subpoena Does Not Impose an Undue Burden ..................................6

    C.   CDK Does Not Have Standing and Its Motion is Untimely..................................7

III. CDK'S MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED....................8

IV.  CONCLUSION...................................................................................................................9

## I.    PRELIMINARY STATEMENT

Defendant CDK Global, LLC ("CDK") has moved to quash, in part, a subpoena issued to AT&T Wireless (the "AT&T Subpoena").  *See* ECF No. 672 ("CDK Mem.").  The AT&T Subpoena seeks mobile phone records of a single CDK employee, Howard Gardner, CDK's Vice President of Data Services, for calls to or from phone numbers for certain employees of CDK's co-conspirator, The Reynolds & Reynolds Company ("Reynolds").  Mr. Gardner is a central figure in the anticompetitive conspiracy between CDK and Reynolds who had responsibility for both devising and implementing the alleged unlawful agreement.  His contacts – including the timing, manner, and frequency – with counterparts at Reynolds are highly probative evidence.

CDK concedes that Mr. Gardner's phone records from 2015-2016 are relevant and merely argues that phone records pre-dating or post-dating 2015-2016 are irrelevant because the 2015-2016 time period is supposedly the sole focus of this case.  That is incorrect.  ███████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████.  Indeed, CDK itself has argued that documents from January 1, 2013 to the present are discoverable, *see, e.g.*, ECF No. 322 at 3 (moving to compel documents from "the baseline relevant time period that every other party in this MDL has accepted: January 1, 2013 to the present"), and has issued subpoenas to non-parties seeking discovery for that timeframe.

To the extent CDK claims "undue burden," that objection is meritless.  There is no burden on CDK because the subpoena is directed to AT&T.  Moreover, the subpoena is narrow in scope – seeking Mr. Gardner's phone records with six phone numbers at Reynolds.  Tellingly, AT&T has not objected to the burden of the subpoena, has apparently already collected the responsive documents, and would have already produced the documents but for CDK's motion.

- 1 -

## II.     CDK'S MOTION TO QUASH SHOULD BE DENIED

"The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Anderson v. City of Chi.*, No. 16-cv-1963, 2019 WL 423144, at *2 (N.D. Ill. Feb. 4, 2019). Those discovery rules are "broad and liberal." *United States ex rel. Ceas v. Chrysler Group LLC*, 191 F. Supp. 3d 885, 888 (N.D. Ill. 2016). "Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, No. 17-cv-04384, 2018 WL 3105987, at *2 (N.D. Ill. June 25, 2018). As the moving party, CDK bears the burden "to show why a particular discovery request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). CDK fails to meet that burden because the AT&T subpoena seeks relevant material and imposes no undue burden.

### A.     The AT&T Subpoena Seeks Highly Relevant Phone Records

The antitrust claims in this MDL concern a horizontal conspiracy between CDK and Reynolds. *See* ECF No. 507 at 5-8 (describing allegations). CDK and Reynolds agreed to coordinate their third-party data access policies for their DMS and coordinated their efforts to eliminate third-party data integrators who competed with Reynolds's and CDK's own data integration services. *See id.* Mr. Gardner, CDK's Vice President of Data Services, was a principal actor in this conspiracy. He was heavily involved in devising, negotiating, and implementing the agreement with Reynolds. Given his central role in this case, the Court previously allowed his deposition to occur over two days; he was the only CDK witness for whom a two-day deposition was allowed. *See* ECF No. 422 at 2; ECF No. 414-7 at 58:12-14 ("Let me talk about the two-day depositions for Schaefer and Gardner. I don't see anything unreasonable with that. These guys are at the center of this.").

The AT&T Subpoena seeks mobile phone records for Mr. Gardner to or from six Reynolds phone numbers from January 1, 2013 to present. CDK does not contend that all of these phone records are irrelevant, nor could it. This Court previously recognized the potential relevance of phone records, especially those records from before 2017. *See* ECF No. 441 at 1-2. Such phone records are relevant because, for example, the manner of communication – Mr. Gardner's use of his mobile phone to contact his counterparts at Reynolds (CDK's purported competitor) – suggests conspiratorial communications. *See In re Korean Ramen Antitrust Litig.*, 281 F. Supp. 3d 892, 901, 905 (N.D. Cal. 2017) (noting probative value of "evidence that employees used methods to communicat[e] sensitive information that would not leave a 'trail'" (citing cases)). And the timing and frequency of phone contacts corroborates the existence and scope of an antitrust conspiracy and can be used to corroborate testimony or impeach witnesses. *See, e.g.*, *United States v. Apple, Inc.*, 791 F.3d 290, 315, 319 (2d Cir. 2015) ("[E]vidence of a high level of interfirm communications" – like phone records – "may raise an inference of conspiracy"); *In re Catfish Antitrust Litig.*, 908 F. Supp. 400, 405 (N.D. Miss. 1995) ("[T]he sheer number of contacts between [the] competition . . . is circumstantial evidence of the existence of a conspiracy"); *In re Plastics Additives Antitrust Litig.*, No. Civ.A. 03-2038, 2004 WL 2743591, at *14 (E.D. Pa. Nov. 29, 2004) (finding information relevant where it "may" lead to evidence regarding defendants' "opportunity for the alleged conspiracy" or the "breadth of the conspiracy," or to information that "may help . . . impeach defendants' trial witnesses").[1]

Rather, CDK contends that phone records from 2013 and 2014 are irrelevant because any alleged conspiracy began and was implemented in 2015 and 2016. ███████████████

---

[1] CDK and Reynolds have previously argued that there were legitimate reasons for CDK and Reynolds to communicate with one another. *See* ECF No. 354 at 2-3. To the extent CDK renews that argument here, *see* ECF No. 672 at 7, it is not specific to Mr. Gardner (whose records are at issue), and it goes to the weight a factfinder should give the records, not whether they are discoverable.

[REDACTED]

CDK itself has argued that evidence from January 1, 2013 to the present is relevant and discoverable. As CDK previously noted in a motion to compel, "the parties have agreed [to a] baseline relevant time period that every other party in this MDL has accepted: January 1, 2013 to the present." ECF No. 322 at 3. CDK then argued that the Court should compel another party to produce records back to January 1, 2013 because that "is a sensible date that ensures the capture of relevant documents while keeping discovery proportional to the 'needs of the case.'" *Id.* at 31 (quoting Fed. R. Civ. P. 26(b)(1)). CDK has also issued several subpoenas to non-parties seeking documents from "January 1, 2013 to the present." *See, e.g.*, Case No. 19-cv-00419 (N.D. Ill.), ECF No. 1-1 (CDK subpoena to non-party InDesign Data, LLC). Having argued that documents from 2013 to the present are relevant when doing so suits its own

- 4 -

purposes, and seeking discovery from non-parties from that time period, CDK can now hardly argue that evidence from that time period is irrelevant. *See In re Broiler Chicken Antitrust Litig.*, No. 16 C 8637, 2018 WL 3586183, at *2-3 (N.D. Ill. July 26, 2018) (holding one defendant "should not be exempted from producing documents and ESI for the discovery time frame applicable to all other Defendants in this case").

CDK misplaces reliance on this Court's prior ruling regarding CDK's phone records. *See* CDK Mem. at 1-2, 6-7 (citing ECF No. 441). There, the Court denied a motion to compel CDK to produce phone records because CDK represented its records went back only to January 2017, and because – on the record then before the Court – MDL Plaintiffs had not shown that producing phone records from 2017 to the present was proportional to the needs of the case. *See* ECF No. 441, 1-3; *id.* at 3 (noting willingness "to revisit this issue" on a different record). The Court stated that the "critical time frame for telephone communications between Defendants" preceded 2017. *Id.* at 1. Here, the AT&T Subpoena seeks phone records from the "critical time frame" of 2013 to 2016 – when CDK and Reynolds were devising and implementing their unlawful agreement – and through present day, as the conspiracy has continued and is ongoing.

CDK is incorrect that the Court previously held the "critical time frame" for discovery was only 2015 and 2016. Because CDK represented that it did not have phone records prior to 2017, it was not necessary for the Court to decide how far back the "critical time frame" extended. *See Weigle v. SPX Corp.*, 729 F.3d 724, 736-37 (7th Cir. 2013) ("[S]tatements not necessary in the determination of the issues presented are *obiter dictum*. They are not binding and do not become law."). Nor did this Court squarely address that issue in dicta. The Court referenced events in February 2015 and in 2016 and then stated, "[t]he critical time frame for telephone communications between Defendants . . . *would appear to be around* that time frame." ECF No. 441, at 1 (emphasis added). Fairly read, this statement supports discovery of phone

records from before and after 2015-2016. In any event, ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████[2]

## B. The AT&T Subpoena Does Not Impose an Undue Burden

CDK "bears th[e] burden of demonstrating that the information sought subjects a person to undue burden." *See Malibu Media, LLC v. Reynolds*, No. 12 C 6672, 2013 WL 870618, at \*5 (N.D. Ill. March 7, 2013). CDK cannot do so because the AT&T Subpoena requires *nothing* from CDK. *See id.* at \*6 ("Because [defendant] is not the party directed to respond to the subpoena and no action is required of him, he cannot maintain that the subpoena creates an undue burden." (citing cases)); *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 251 (N.D. Ill. 2011) ("Defendants have not asserted any hardship from subpoenas" issued to non-parties, "let alone undue hardship."); *In re Szanto*, No. 1:18-mc-00061-JMS-DLP, 2019 WL 1877226, at \*2 (S.D. Ind. Apr. 25, 2019) (subpoena "place[d] no burden on the [moving party] to do anything, so the Court fails to see how it could impose an undue burden"). This alone requires rejection of any burden argument.

Further, there is no undue burden on the subpoena recipient, AT&T. The subpoena seeks limited phone records for Mr. Gardner. AT&T has not raised any objection to the subpoena. The absence of an objection makes clear that the subpoena does not impose an undue burden.

---

[2]     The cases on which CDK relies are inapposite. *See, e.g.*, *Brown v. Yellow Transp.*, No. 08 C 5908, 2009 WL 3270791 (N.D. Ill. Oct. 9, 2009) (denying motion to compel evidence regarding guilty pleas from more than 20 years before the case was filed); *City of Greenville, Ill. v. Syngenta Crop Protection, Inc.*, No. 11-mc-2025, 2011 WL 2672018 (C.D. Ill. June 30, 2011) (denying motion to compel evidence that could not be relevant until a separate motion to intervene was decided); *Indianapolis Airport Authority v. Travelers Property Casualty Comp. of Am.*, No. 1:13-cv-01316-JMS-TAB, 2015 WL 1548959 (S.D. Ind. Apr. 7, 2015) (denying motion to compel unrelated communications with a non-party that would reveal non-party's sensitive business information).

*Szanto*, 2019 WL 1877226, at *2 (noting that non-party "had not lodged any objection to the subpoena" and "if the subpoena were inherently unreasonable or constituted an undue burden, the Court would have received an objection"). Indeed, AT&T has already assembled the information and is prepared to produce. *See* CDK Mem. at Ex. B (email from M. Provance stating that "AT&T intends to respond to the subpoena on May 2, 2019").[3]

### C. CDK Does Not Have Standing and Its Motion is Untimely

Dealership Plaintiffs are mindful that the Court has advised that "Plaintiffs need not address CDK's arguments with respect to timeliness and its standing to move to quash the subpoenas." ECF No. 673. Dealership Plaintiffs briefly present these issues to provide further support for the arguments above and to preserve the arguments.

First, CDK cannot show undue burden because it does not have standing to move to quash. "Ordinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 186 (N.D. Ill. 2013). CDK does not establish any personal right or privilege regarding a narrow subset of Howard Gardner's phone records. *See id.* CDK claims it has "business and privacy interests in preventing the disclosure of these records except as is absolutely necessary to this litigation." CDK Mem. at 6. CDK's motion does not seek to protect any business or privacy interest, and CDK's business conduct is at issue in this case. Accepting such a generic argument would swallow the rule and is insufficient to confer standing. *See Parker*, 291 F.R.D. at 186 (holding

---

[3]    CDK does not address the considerations for proportionality set forth in Rule 26, which also support denying CDK's motion. Rule 26 requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the anti-competitive conduct at issue impacts thousands of dealerships and is alleged to violate the federal antitrust laws, the amount in controversy is substantial as shown by the $29.5 million settlement with Reynolds, and both CDK and AT&T are multi-billion-dollar companies.

that "[r]elevance, burden or service objections" fall to the subpoenaed non-party, and that granting standing based on vague interests "would effectively wipe out the rule entirely").

Second, CDK's failure to timely file undermines the significance of its stated burden and relevance concerns. A motion to quash must be filed on or before the date of compliance. *See Jallali v. Nova Se. Univ.*, No. 11 C 8115, 2012 WL 2368322, at *3 (N.D. Ill. June 21, 2012) (citing cases); *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953-CIV-LENARD, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) ("Ample authority exists holding that timeliness means within the specified compliance period, so long as that period is of reasonable duration."). The date of compliance for the AT&T Subpoena was April 26, 2019 and CDK's motion to quash was not filed until May 2, 2019. *See St. Petersburg*, 2008 WL 1995298, at *2 (holding that motion to quash filed day after compliance date was "untimely and must be denied").[4] CDK claims the delay should be excused because it did not read the second subpoena to AT&T. *See* CDK Mem. at 4. But the fact that Dealership Plaintiffs issued a second subpoena should have alerted CDK that it had changed, as there would be no reason to serve an identical subpoena. Accordingly, CDK's motion is untimely.

## III.   CDK'S MOTION FOR A PROTECTIVE ORDER SHOULD BE DENIED

In the alternative to quashing the subpoena, CDK asks the Court to enter a protective order under Rule 26(c). *See* CDK Mem. at 7. The Court should deny this request as well. Rule 26(c)(1) provides that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). CDK does not explain how the AT&T Subpoena exposes it or Mr. Gardner to

---

[4]   The fact that AT&T had not yet produced does not make CDK's motion timely. *See, e.g.*, *HT S.R.L. v. Velasco*, No. 15-664 (RBW), 2015 WL 13759884, at *5-6 (D.D.C. Nov. 13, 2015) (holding motion to quash untimely where neither deposition nor production had occurred). Unlike in the *Woodward* case relied on by CDK, the parties have not agreed to "adjourn" the subpoena or engaged in conduct that would warrant delay.

"annoyance, embarrassment, [or] oppression," and, as explained above, the AT&T Subpoena clearly does not impose an undue burden. *See* § II.B. To the extent that this Court considers CDK's relevance arguments in the context of a motion for protective order, those arguments should be rejected for the same reasons set forth above. *See* § II.A.

## IV. CONCLUSION

The AT&T Subpoena is narrow and reasonable. It imposes no burden on CDK and seeks information that is relevant and discoverable concerning phone calls between a central CDK employee in this action and Reynolds employees. AT&T has not lodged any objection to the subpoena, and CDK has failed to carry its burden to quash or modify. Dealership Plaintiffs respectfully request that this Court deny CDK's motion.

DATED: May 10, 2019        Respectfully submitted,

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Counsel for the Dealership Class*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

David W. Mitchell (*pro hac vice*)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, CA 92101
Tel: (619) 231-1058
Fax: (619) 231-7 423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*
Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com
dnordin@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

Leonard A. Bellavia (*pro hac vice*)
Steven Blatt
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com
sblatt@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

- 10 -

Robert A. Clifford
Shannon M. McNulty
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31 Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

*MDL Liaison Counsel*

**CERTIFICATE OF SERVICE**

I, Peggy J. Wedgworth, an attorney, hereby certify that on May 10, 2019, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT CDK GLOBAL, LLC'S MOTION TO QUASH OR MODIFY SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth