IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* <br> THE DEALERSHIP CLASS ACTION | Hon. Robert M. Dow, Jr. <br><br> Magistrate Judge Jeffrey T. Gilbert |

**CDK GLOBAL, LLC'S SURREPLY TO THE DEALERSHIP COUNTER-DEFENDANTS' MOTION TO DISMISS CDK'S COUNTERCLAIMS**

The Dealership Counter-Defendants' Motion to Dismiss CDK's Counterclaims should be denied in its entirety for the reasons set forth in CDK's Opposition (Dkt. 639). As shown below, nothing in the Dealership Counter-Defendants' Reply (Dkt. 674) changes that conclusion.

## I. The Breach-of-Contract Claim States A Claim.

The Reply doubles down on the absurd contention that by referencing the dealers' purported "authorization" of access by hostile data extractors in an introductory paragraph, CDK has pled itself out of a contract claim. On a motion to dismiss, this Court "draw[s] all reasonable inferences in favor" of the non-movant and "reads the [] complaint and assesses its plausibility as a whole." *Gerba v. Nat'l Hellenic Museum*, 2019 WL 423371, at \*3 (N.D. Ill. Feb. 4, 2019). The Counterclaims explain in detail why data extractors were not acting as the dealers' agents and thus why allowing and facilitating their access to CDK's DMS breached the express terms of the MSA. Indeed, the Court already has concluded that whether Authenticom and other data extractors were acting as "agents" cannot be resolved on a motion to dismiss. *See* Opp. 3-5.

Having ignored the *Authenticom* Order in their opening brief, the Dealership Counter-Defendants now attempt to distinguish it. Reply 4-5. The last-minute distinctions have no substance. Whether or not CDK "objected" to the use of unauthorized third-party data extractors—and it did (CC ¶¶ 92-93)—has nothing to do with whether those hostile extractors were acting as the dealer's agents. CDK alleges that *all* data extractors, not just Authenticom, were not acting in an agency capacity. *Id.* ¶ 49. And the Court's earlier analysis focused squarely on the language in the MSA that the Reply now urges (at 5) is "control[ling]." *See* Dkt. 506 at 8-12.

## II. The CFAA Claim States A Claim.

### A. CDK States A Claim For Direct CFAA Liability.

CDK's Opposition explained why, under established law, "the Dealership Counter-

1

Defendants are *directly* liable under the CFAA." Opp. 8 (emphasis added). The Reply completely ignores this, contending simply that the CFAA does not encompass *secondary* liability. Reply 11-12. By failing to address CDK's principal argument, the Dealership Counter-Defendants have forfeited the point. *See Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) (failure to respond in a reply brief "waived any counterarguments [a party] could have raised").[1]

In addition to pleading direct liability, the Counterclaims allege facts sufficient to make out a CFAA conspiracy claim. *See* Opp. 8-9. The Reply wrongly asserts that CDK cannot pursue a conspiracy claim because the Counterclaims do not denote that legal theory expressly. Binding law in this Circuit is to the contrary. *E.g.*, *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *see also* Opp. 7 n.3. And as for the Reply's one-sentence assertion (at 12) that a CFAA conspiracy claim is "futile," that argument is so "perfunctory and undeveloped" as to be waived. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 879 (7th Cir. 2014). Indeed, the only decision the Reply cites to show the supposed futility of a CFAA conspiracy claim *declined* to dismiss the claim. *Porters Bldg. Ctrs. v. Sprint Lumber*, 2017 WL 4413288, at *3 (W.D. Mo. Oct. 2, 2017).

### B. CDK Adequately Alleges Damage Or Loss.

CDK has adequately alleged $5,000 of loss or damage for purposes of its CFAA claim. Relying on a decision by this Court, CDK's Opposition explained how allegations of "costs reasonably incurred in responding to an alleged CFAA offense" are sufficient to satisfy the statutory prerequisite for damages or loss. Opp. 11. This alone is enough to state a claim, and CDK

---

[1] As CDK has shown, moreover, the CFAA *does* allow for secondary liability. Opp. 8-10. The Reply makes no effort to engage with any of the authority CDK marshalled in support of this proposition. Instead, it reiterates that there is no presumption of aiding-and-abetting liability for federal statutory claims and cites *Boim v. Holy Land Foundation for Relief & Development*, 549 F.3d 685 (7th Cir. 2008). *See* Reply 11. CDK already explained why the *Central Bank* rule does not apply here and why the portion of *Boim* on which the Dealership Counter-Defendants rely is dictum. *See* Opp. 10 & n.5. Ultimately, this question is moot in light of CDK's direct liability theories, which go unrebutted.

2

alleges other harms, too. The Reply contends that the Court's earlier decision was limited to whether a CFAA claim can be premised only on allegations of "loss," not "damage." Reply 15 n.11. But in answering this question, the Court squarely held that a party can "stat[e] a CFAA claim by alleging" (as here) "that they incurred costs in investigating an alleged CFAA offense." *Navistar, Inc. v. New Baltimore Garage, Inc.*, 2012 WL 4338816, at *8 (N.D. Ill. Sept. 20, 2012).[2]

CDK previously showed that the Dealership Counter-Defendants' alternative "aggregation" argument was premised on a fundamental confusion between CFAA claims involving multiple *plaintiffs/victims* and claims involving multiple *defendant/violators*. Opp. 12-13. The Reply does not dispute this point.[3] The only case addressing the appropriate standard remains *Wolf v. Schadegg*, 2016 WL 1117364 (D. Colo. Mar. 21, 2016), which demonstrates that in a case involving multiple defendants, "who caused the alleged loss" and "to what degree" are questions of fact that must await summary judgment. *Id*. at *4.[4]

### C. CDK's Claim Is Timely.

CDK's counterclaims are compulsory, not permissive.[5] Accordingly, the statute of

---

[2] The Reply's efforts (at 15) to cast CDK's allegations of damages and loss as conclusory fail in light of CDK's detailed allegations about ongoing work to investigate, secure, repair, and restore its system against hostile access. *E.g.*, CC ¶¶ 72-90.

[3] To the contrary, the Reply abandons reliance on the aggregation cases cited in the opening brief and attempts to analogize to *Clark v. Paul Gray, Inc.*, 306 U.S. 583 (1939). Reply 13. *Clark* concluded that for purposes of federal *subject-matter jurisdiction* in a multi-plaintiff case, each plaintiff must separately allege that it satisfies the amount-in-controversy requirement. That has nothing to do with the question here.

[4] The fact that *Quantlab Technologies Ltd. v. Godlevsky*, 2015 WL 1651251 (S.D. Tex. Apr. 14, 2015), was decided on summary judgment thus cuts *against* the Dealership Counter-Defendants. *See* Reply 14 n.10. CDK need only plead facts plausibly suggesting liability at this stage—a lower standard than in *Quantlab*.

[5] In particular, this case is not like *Oak Park Trust & Savings Bank v. Therkildsen*, 209 F.3d 648 (7th Cir. 2000), in which a subdivision owner sued the Village of Inverness for failing to provide compensation for utilities that the village required the subdivision to maintain, and a village trustee counterclaimed because the corporation allegedly had failed to maintain security in a gated community where the trustee lived. Rather, as CDK explained (Opp. 14-16), its CFAA claim turns on fundamentally the same question as that posed by the dealers' antitrust claims: Whether CDK has the legal right to exclude hostile integrators like Authenticom who use dealer or other credentials to illegally access its systems.

limitations for the Counterclaims was tolled upon the filing of the first putative dealer class complaint. Opp. 14-16. The Reply cites two cases in response, but both are irrelevant. Reply 9-10. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), holds that the *equitable tolling* doctrine does not apply to a claim under § 10(b) of the Securities Exchange Act of 1934. It says nothing about calculating limitations periods for compulsory counterclaims. Likewise, *Chauffeurs v. Jefferson Trucking Co.*, 628 F.2d 1023 (7th Cir. 1980), holds only that a defendant who fails to bring a claim within the statute of limitations cannot raise that claim as an affirmative defense to an action filed after the limitations period has run.

Regardless of whether the counterclaim was compulsory or permissive, moreover, at least some portion of CDK's claims still are timely. The CFAA does not license dealers to illegally access CDK's systems forever simply because they began accessing CDK's systems without authorization more than two years ago. Opp. 17. CDK thus at a minimum can bring a CFAA claim premised on unlawful access done or facilitated by the dealers in the two years prior to filing suit. The only response the Reply can muster is a bare citation to *Meyer Technology Solutions, LLC v. Kaegem Corp.*, 2017 WL 4512918 (N.D. Ill. Oct. 10, 2017). Reply 10. But CDK already explained why that case was not persuasive (Opp. 17 n.10), and the Reply ignores these points.

**III.    The DMCA Claim States A Claim.**

The Dealership Counter-Defendants cite nothing to show that DMCA Section 1201(a)(1)(A) requires "direct action." Regardless, CDK has stated a direct claim against the Warrensburg Counter-Defendants, who, as CDK specifically alleged, installed and used a software tool for the purpose of circumventing CDK's security measures. Opp. 19; CC ¶¶ 101, 113.

In addition to direct liability, CDK has stated secondary liability claims against both DMCA counter-defendants. *See* Opp. 19-23. The Reply takes issue with the availability of

4

secondary liability for DMCA Section 1201(a) claims, but its discussion is hard to follow. The Dealership Counter-Defendants do not dispute the common-law history of secondary liability in copyright or that the DMCA was enacted to supplement and extend traditional copyright protections for the digital age. *See* Opp. 19-21. Rather, they appear to argue that there cannot be secondary DMCA liability because a claim under Section 1201(a) does not require a "nexus" between circumvention and copyright infringement. Reply 19. But that is immaterial. As CDK demonstrated, Congress enacted Section 1201(a) against the backdrop of existing copyright law. In integrating Section 1201(a)'s protections into this framework, Congress showed no intent to depart from the longstanding secondary liability principles that obtained in the copyright context. Indeed, Congress was aware of and did not displace those principles generally. Opp. 20-21.

Finally, the Reply inappropriately raises two new arguments against DMCA liability: (1) lack of copyright registration, and (2) the DMCA Section 1201(f)(2) exemption. Reply 17-19. The Dealership Counter-Defendants forfeited these arguments by saving them for reply. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). They are meritless in any event. Lack of registration is not a bar to a DMCA claim.[6] And because Section 1201(f)(2) is an "affirmative defense," *Chamberlain Grp., Inc. v. Skylink Techs.*, 381 F.3d 1178, 1200 n.15 (Fed. Cir. 2004), CDK does not need to "plausibly allege" that conduct "falls outside" that section. Reply 18.[7]

The Court should deny the Dealership Counter-Defendants' Motion in its entirety.

---

[6] *See, e.g.*, *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 2018 WL 1583103, at *2 n.1 (N.D. Ohio Mar. 30, 2018); *Gattoni v. Tibi, LLC*, 254 F. Supp. 3d 659, 664 (S.D.N.Y. 2017); *Exec. Corp. v. Oisoon, LLC*, 2017 WL 4310113, at *4 (M.D. Tenn. Sept. 28, 2017). This rule makes sense. A valid copyright is an element of a DMCA claim. *See Agfa Monotype Corp. v. Adobe Sys., Inc.*, 404 F. Supp. 2d 1030, 1034 (N.D. Ill. 2005). However, a copyright need not be registered with the Copyright Office to be valid. *See Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003).

[7] In addition, by its terms Section 1201(f)(2) applies only to a claim under Section 1201(a)(2) and 1201(b)'s anti-trafficking provisions, not to a claim under Section 1201(a)(1). *See* 17 U.S.C. § 1201(f)(2) ("Notwithstanding the provisions of subsections (a)(2) and (b)…").

Dated: May 10, 2019                                         Respectfully submitted,

                                                                   */s/ Britt M. Miller*
                                                                   Britt M. Miller
                                                                   Michael A. Scodro
                                                                   Matthew D. Provance
                                                                   MAYER BROWN LLP
                                                                   71 South Wacker Drive
                                                                   Chicago, IL 60606
                                                                   (312) 782-0600
                                                                   bmiller@mayerbrown.com
                                                                   mscodro@mayerbrown.com
                                                                   mprovance@mayerbrown.com

                                                                   Mark W. Ryan
                                                                   MAYER BROWN LLP
                                                                   1999 K Street NW
                                                                   Washington, DC 20006
                                                                   (202) 263-3000
                                                                   mryan@mayerbrown.com

                                                                   *Counsel for Defendant*
                                                                   *CDK Global, LLC*

## **CERTIFICATE OF SERVICE**

      I, Britt M. Miller, an attorney, hereby certify that on May 10, 2019, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC'S SURREPLY TO THE DEALERSHIP COUNTER-DEFENDANTS' MOTION TO DISMISS CDK'S COUNTERCLAIMS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

      */s/ Britt M. Miller*
      Britt M. Miller
      MAYER BROWN LLP
      71 South Wacker Drive
      Chicago, IL 60606
      Phone: (312) 782-0600
      Fax: (312) 701-7711
      E-mail: bmiller@mayerbrown.com