IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION <br><br> This document relates to: <br><br> ALL CASES | ) <br> ) MDL No. 2817 <br> ) Case No. 1:18-CV-00864 <br> ) Case No. 1:19-CV-00419 <br> ) <br> ) Magistrate Judge Jeffrey T. Gilbert <br> ) <br> ) |

## ORDER

Non-Party InDesign Data, LLC's Motion to Quash Deposition Subpoena or, Alternatively, Motion for Protective Order [ECF No. 1] is granted in part and denied in part, in both respects without prejudice. The parties shall meet and confer to discuss how to proceed with the deposition of InDesign's corporate representative consistent with the Court's ruling. See Statement below for further details.

## STATEMENT

This matter is before the Court on Non-Party InDesign Data, LLC's ("InDesign") Motion to Quash Deposition Subpoena or, Alternatively, Motion for Protective Order.[1] For the reasons stated herein, InDesign's Motion is granted in part and denied in part, in both respects without prejudice. As discussed below, Defendant CDK Global, LLC ("CDK") should be permitted to depose an InDesign corporate representative about the documents InDesign produced pursuant to subpoena and about certain topics identified in its Rule 30(b)(6) notice that, even if they are confidential or highly confidential, can be adequately protected by the Confidentiality Order (as defined later in this Order) entered in this case. *In re Dealer Mgmt. Sys. Antitrust Litig.*, Case No. 1:18 CV 864, [ECF Nos. 104, 650]. There are, however, other subjects referenced in CDK's Rule 30(b)(6) notice having to do with the development, use, functionality, and technological properties or methods of InDesign's software, and its customers that should be off-limits in a Rule 30(b)(6) deposition of InDesign because CDK has not shown a substantial need for that information pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure even assuming the information is somewhat relevant to its claims or defenses in this case.

---

[1] This Motion to Quash originally was filed in the Southern District of Florida, Case No. 9:18-mc-81646-DMM, and was transferred to this District, 1:19-CV-00419, as a member case in the underlying multidistrict litigation pending in this Court, MDL No. 2817. As such, some of the initial filings and docket entries relating to InDesign's Motion to Quash only can be found on the docket in 1:19-CV-00419 rather than as part of the docket in the MDL proceedings. Unless otherwise noted, when citing an ECF docket entry in this Order, the Court is referring to docket entries contained in Case No. 1:19-CV-00419.

## I. Background

InDesign provides technology services to allow car dealerships and third-party vendors to gather information from software platforms known as dealer management systems ("DMS"). DMS platforms are used to run the everyday operations of car dealerships including payroll, inventory, accounting, sales, parts, service, finance, and insurance. Plaintiffs in this multidistrict litigation ("MDL") allege that Defendants CDK and Reynolds and Reynolds Co. ("Reynolds") conspired to prevent independent DMS data integrators, such as InDesign, from accessing CDK's and Reynolds's DMS platforms. As the Court understands, InDesign's proprietary software applications can be used by individual dealers and vendors to access or integrate with the CDK's and Reynolds's DMS platforms to run reports on dealership operations, including sales, maintenance, parts, accessories, and inventory, among others.

On May 14, 2018, CDK issued a subpoena for documents directed to InDesign. InDesign is not a party to this case, but it provides similar services as Authenticom, Inc. ("Authenticom"), which is a plaintiff in this MDL proceeding. InDesign is a direct competitor of Authenticom and, to some extent, of CDK. CDK's subpoena sought documents relating to, among other things, the development, use, functionality, and technical properties of InDesign's software and the means by which InDesign's application is able to access or integrate with CDK's and Reynolds's DMS software platforms. In addition, CDK sought InDesign's marketing materials, business plans, strategic plans, insurance policies, financial information, and information about InDesign's customers. InDesign objected to producing many of the documents and much of the information requested by CDK. After meeting and conferring with counsel for CDK, however, InDesign agreed to and did produce about 25 documents comprising 52 pages. CDK's Opposition [ECF No. 11], at 6.

On November 19, 2018, CDK then served InDesign with a second subpoena, this time seeking to take the deposition of an InDesign corporate representative, identifying 12 topics for examination concerning, among other topics, InDesign's dealings with Authenticom and another non-party integrator, Dominion Enterprises, Inc. ("Dominion"), its data access methods, its data security policies and practices, and its dealings with its customers. InDesign argues that the testimony sought by CDK goes to the very core of its business and implicates highly confidential business information and trade secrets. InDesign objects to producing a corporate representative for deposition for those reasons. InDesign also argues that the requested testimony is not relevant or necessary to CDK's case and, therefore, that CDK has not shown it has a substantial need for the information it is requesting pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure. As a non-party to this case and a direct competitor of CDK and Reynolds, InDesign argues it is entitled to protection from CDK's subpoena. The Court will address each of InDesign's arguments in turn.

## II. Discussion

To the extent InDesign argues that the testimony CDK is seeking in its deposition subpoena is not relevant, the Court both agrees and disagrees with InDesign. Some of the information CDK is seeking about InDesign, how it conducts its business, and in particular the fact that it helps customers access CDK's DMS platform is relevant to the claims and defenses in the underlying

MDL litigation. In the same vein, in the Court's view, is information about InDesign's communications and potential coordination with other integrators who compete with InDesign such as Authenticom and Dominion. It is hard to see how InDesign's communications with its competitors, or at least all of them, are highly confidential.

CDK argues that Authenticom and others similarly situated, including InDesign, among others, improperly have accessed its DMS platform to gather information to sell to their customer dealers and vendors. Whether InDesign has accessed CDK's DMS platform, therefore, is relevant to CDK's and Reynolds's defenses in this case and provides some context to why CDK and Reynolds may have limited access by and/or locked out third parties from their DMS platforms. Moreover, InDesign essentially has conceded that some of the information in its files is relevant to CDK since InDesign produced some documents in response to CDK's first subpoena.

The question is should CDK be allowed to depose an InDesign corporate representative and, if so, how far should CDK be allowed to go in questioning that representative? CDK states in its opposition to InDesign's Motion that:

> CDK intends to explore what kinds of customers InDesign has (i.e., data extractors, vendors, etc.); what kinds of software applications those customers provide; the types of automobile or vehicle dealerships those customers serve; and other general information about InDesign's customer base and business that bears upon the alleged market for hostile "data integration" at issue in the MDL and on CDK's and Reynolds's unilateral reasons for restricting unauthorized access to their systems.

CDK's Opposition [ECF No. 11], at 13. The Court agrees that the more generalized business information specifically identified by CDK potentially is relevant and discoverable. As appropriate, that information can be designated as Confidential or Highly Confidential within the meaning of the Confidentiality Order entered in this case.

It appears though, at least from the topics in CDK's Rule 30(b)(6) notice and the discussion in the briefing of InDesign's Motion, that CDK intends to go deeper into certain subjects than is immediately apparent from its description of the "general" inquiries it says it wants to make. In that respect, CDK has not satisfied the Court that information about the development, use, functionality, and technological properties or methods of InDesign's software, and about its customers, depending again upon the detail CDK intends to cover, is relevant to CDK's claims or defenses and, even if it is, that CDK has a substantial need for that information. It would seem that CDK should be able to show in general terms what InDesign and other integrators do and how they do it, and how those activities allegedly put CDK's DMS platforms at risk, without knowing all the technical details of what InDesign does and how it does it. Those technical details as well as the details of InDesign's customer relationships go to the heart of InDesign's business and would seem to satisfy any definition of information that is highly proprietary and sensitive and, therefore, protectable.[2]

---

[2] In addition, the Court has some concern based on the briefing that CDK's inquiry, at least potentially, could be characterized as pre-litigation investigation or discovery of claims it might have against InDesign. CDK, however, is not permitted to use discovery in this case or a non-party deposition of InDesign's

3

CDK argues that the Confidentiality Order provides InDesign with sufficient protection for any sensitive testimony it will elicit from InDesign's corporate representative. But before the Court needs to determine whether the Confidentiality Order provides InDesign with sufficient protection, it first must determine that, assuming the information is confidential (which both sides here appear to concede it is), CDK has shown it has a substantial need for this information. *See* FED. R. CIV. P. 45(d)(3). CDK has not met that burden for information the Court characterized above as proprietary and highly sensitive.

On the other hand, for information that is properly called for by CDK's deposition subpoena, the Court agrees the Confidentiality Order entered in this case on April 4, 2018, and recently modified by Judge Dow in the Second Amended Agreed Confidentiality Order ("Confidentiality Order") entered on April 25, 2019, should provide InDesign with the protection it needs and assurance that sensitive information will not be used for purposes outside the litigation. *In re Dealer Mgmt. Sys. Antitrust Litig.*, Case No. 1:18 CV 864, [ECF Nos. 104, 650]. Confidentiality orders routinely are entered in cases like this one to protect sensitive and confidential material. Even assuming that some of the testimony called for by CDK's subpoena might constitute confidential business information or other confidential research or commercial information within the meaning of Federal Rule of Civil Procedure 45, the operative Confidentiality Order entered in this case provides ample protection to InDesign to ensure that confidential information will not be disclosed to InDesign's competitors. Among other protections, the Confidentiality Order permits qualifying portions of the deposition transcript to be designated "Highly Confidential," which prohibits disclosure beyond outside counsel of record, including to the parties (and their in-house counsel) or to the public. *In re Dealer Mgmt. Sys. Antitrust Litig.*, Case No. 1:18 CV 864, [ECF No. 650]. at ¶¶ 3, 4. To date, the Confidentiality Order has been used effectively to govern party and non-party discovery in this MDL.

The Confidentiality Order in this case already has been deemed sufficient to protect a nonparty's interests in confidential or trade secret information. Late last year, this Court granted a motion to compel non-party Dominion to produce documents responsive to a subpoena from Reynolds. The Court explained:

> [t]he current Confidentiality Order provides that a third party may designate as "confidential" or "highly confidential" any document or information that it discloses to a requesting party. These designations limit both the scope and purpose for which the documents can be used. A document marked "highly confidential" only may be shared with outside legal counsel for the parties and outside counsel is required to "make best efforts to prevent unauthorized or inadvertent disclos[ure] of Confidential Information. . . . Courts have found that confidentiality orders with similar provisions are sufficient to protect a party or third-party's interest.

---

corporate representative to conduct pre-litigation discovery to determine if it has any basis to file an independent lawsuit against InDesign. As a non-party in this case, InDesign is not required to provide CDK such information under the guise of discovery in this case. If CDK believes InDesign is doing something wrong and illegal, then CDK has recourse in the court system to file a lawsuit against InDesign. But it cannot use discovery in this case to discover claims not yet pled.

*In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6413199, at *3 (N.D. Ill. Dec. 6, 2018). Judge Dow overruled non-party Dominion's objections to this Court's ruling that it should produce the requested documents and the Court's finding that the Confidentiality Order was more than sufficient to protect the non-party's confidential information. *In re Dealer Mgmt. Sys. Antitrust Litig.*, Case No. 1:18 CV 864, [ECF No. 649]. Judge Dow, however, entered the Second Amended Agreed Confidentiality Order which added the following language: "Outside counsel for the parties have not been, nor for the duration of this litigation will be, involved in competitive decision-making with their clients." *In re Dealer Mgmt. Sys. Antitrust Litig.*, Case No. 1:18 CV 864, [ECF No. 650], at ¶ 20. The added language provided additional protection to Dominion Enterprises, and it also affords InDesign additional protection.

As CDK pointed out in its opposition to InDesign's Motion to Quash, there are plenty of federal cases that hold two-tiered protective orders such as the Confidentiality Order that governs this case are sufficient to accommodate a non-party's confidentiality concerns. CDK's Opposition [ECF No. 11], at 9-10 (citing cases).[3] Similarly, courts in the Southern District of Florida also agree that confidentiality orders "provide sufficient protection" for a non-party's confidential information and have denied motions to quash when (as here) "[t]here is no reason to assume that the parties, through their lawyers, will not comply with . . . the Protective Order in the Antitrust Litigation." *Direct Purchaser Class Plaintiffs v. Apotex Corp.*, 2017 WL 4230124, at *5 (S.D. Fla. May 15, 2017). Any testimony provided by InDesign's corporate representative will be amply protected by the Confidentiality Order in this case, and there is minimal risk to InDesign because the Confidentiality Order ensures that any testimony in response to CDK's questions that is properly designated by InDesign as Highly Confidential cannot be shared with either the parties to the litigation or the public.

The Court is not convinced, though, that the parties have satisfied their meet and confer obligations on the specific subpoena topics identified by CDK. It also is not clear which topics CDK wants to cover at the Rule 30(b)(6) deposition and how deeply it wants to explore them. According to CDK, when CDK and InDesign met and conferred about the subpoena, InDesign informed CDK that it would not produce a witness on any of the noticed topics, and it is not clear any substantive discussion occurred after that about topics that could be appropriate and others that would have to be off-limits. If InDesign cut short those discussions based on its belief that no Rule 30(b)(6) deposition should proceed, then InDesign has not satisfied its Local Rule 37.2 meet and confer obligation as a predicate to filing its Motion. Accordingly, the parties need to re-engage in the meet and confer process to discuss how to proceed with the deposition of InDesign's corporate representative consistent with this Order.

---

[3] *See e.g., StoneEagle Servs., Inc. v. UMB Bank, N.A.*, 2015 WL 2452926, at *8 (W.D. Mo. May 22, 2015) ("the protective order will preserve UMB Bank's economic interests in any trade secrets, and confidential and proprietary business information it produces pursuant to the subpoena"); *Dr. Greens, Inc. v. Spectrum Labs., LLC*, 2012 WL 3111746, at *3 (D. Kan. July 31, 2012) ("As the court in the underlying action has already found, production of trade secrets or other similar confidential information can be adequately protected under an 'Outside Attorneys Eyes Only' protective order."); *Med. Tech., Inc. v. Breg, Inc.*, 2010 WL 3734719, at *5 (E.D. Pa. Sept. 21, 2010) (confidentiality concerns "associated with production according to the terms of the subpoenas are cured by the general Protective Order issued in the underlying Texas litigation").

Both CDK and InDesign include in their briefs charts in which they discuss in a high level, bullet point fashion why particular Rule 30(b)(6) deposition topics are or are not appropriate. CDK's Opposition [ECF No. 11], at 7; InDesign's Reply [ECF No. 18], at 9. The Court cannot parse these topics to determine which topics are or are not appropriate, in whole or in part, based upon the information provided by the parties in their briefs without more information. The discussion in this Order, however, might help CDK and InDesign to have a more fruitful discussion about the topics to be covered during the Rule 30(b)(6) deposition and to submit to the Court in a more focused and particularized way any disputes that remain about what can and cannot be covered at that deposition. The Court suggests that, after they have that discussion, if disputes remain, CDK and InDesign should contact the Court's courtroom deputy to schedule either an in-person or telephonic hearing for the purpose of addressing those disputes and determining the best vehicle with which to present them to the Court.

### III. Conclusion

For the reasons discussed above, Non-Party InDesign Data, LLC's Motion to Quash Deposition Subpoena or, Alternatively, Motion for Protective Order [ECF No. 1] is granted in part and denied in part, in both respects without prejudice. The parties shall meet and confer to discuss how to proceed with the deposition of InDesign's corporate representative consistent with this Order. To the extent the parties cannot agree upon parameters for the Rule 30(b)(6) deposition with the guidance provided in this Order, they can bring specific disputes back to the Court, and the Court will resolve them with more context than is presented by the briefs submitted to date on InDesign's Motion to Quash.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: May 14, 2019