## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 1:18-CV-00864 |
| *This document relates to:* | |
| ALL CASES | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |

### ORDER

MDL Plaintiffs' Motion to Compel Defendant CDK Global, LLC ("CDK") to Re-Designate Documents From "Highly Confidential" to "Confidential" ("Plaintiffs' Motion") [415] is denied. See Statement below for further details.

### STATEMENT

I.

The parties negotiated an Agreed Confidentiality Order ("ACO") that was entered by Judge St. Eve on April 4, 2018 [104] and recently was amended by the now-presiding District Judge in this case, Judge Dow, in one respect [650].[1] Among other things, the ACO allows the parties to designate documents they produce as "Confidential" or "Highly Confidential." Highly Confidential Documents can be shown to outside counsel and others but cannot be shown to an opposing party's employees.[2]

The ACO defines Highly Confidential documents as documents that contain Confidential information that is "of a highly sensitive nature the disclosure of which could result in significant harm, including but not limited to competitive harm, to the business operations [of the designating party] or an individual." ACO [104] at 1(g). The definition of Confidential information that is a predicate for a Highly Confidential designation includes the standard categories contained in the Court's model confidentiality order, but it broadens some of those categories to include business and financial information that is not generally known outside the

---

[1] As the sections of the ACO relevant to the matters discussed in this Order have not changed, references will be to the original ACO entered as ECF No. 104.

[2] According to the ACO, Highly Confidential documents can be shown only to outside counsel for the parties, the Court and court personnel, court reporters and recorders, contractors, consultants and experts, witnesses at deposition as long as prescribed procedures are followed, the author, subject or recipient of the document, special masters and direct staff, mediators and staff, and others by consent. ACO [104] at 5(c).

producing company and then adds "or . . . other information the Producing Party reasonably believes is subject to protection." ACO [104] at 1(c).[3]

It appears the parties sought to reserve for themselves maximum flexibility to insulate from disclosure to employees of an opposing party material they did not want to disclose, at least at the outset of discovery. The language of the ACO allows parties and their counsel to make those determinations in a highly subjective way. The ACO, though, provides little guidance for the Court to use in resolving a dispute as to whether information should be categorized as Confidential or Highly Confidential.[4]

In the Court's view, the definitions of Confidential and Highly Confidential information in the ACO, in combination, appear to be so broad that, as it is said, one can drive a Mack® truck through them. As is standard in confidentiality orders entered in this District, the ACO provides that entry of a confidentiality order by the Court should not be construed as a judicial determination that material designated as confidential by a party or by counsel is entitled to such protection under Rule 26(c) of the Federal Rules of Civil Procedure. ACO [104] at 16. That does not mean, however, that a court is or should be inclined to rewrite a confidentiality order to which the parties agreed whenever a dispute arises about the proper designation of material produced in discovery to ensure that the order complies with Rule 26(c). Rather, that is the parties' obligation in the first instance. The Court's job is to determine the parties' confidentiality designations are appropriate under the order and, at some point, to determine whether good cause exists to shield from public view the documents designated for restricted disclosure under the order. Fed.R.Civ.P. 26(c).

The Court assumes the parties agreed to the broad language in the ACO to facilitate early production of documents in a case moving forward quickly on a tight discovery schedule and to avoid contentious battles at the outset about document production that could have slowed discovery. Production of documents that can be seen only by outside counsel and select others

---

[3] The ACO categorizes computer software and programs as Highly Confidential information but that specific reference does not, as Plaintiffs contend, swallow and then limit the otherwise very broad definition of Highly Confidential information to which the parties agreed.

[4] The Court's own research reveals many cases in which the parties used much more precise language to define the type of information that could be treated as highly confidential for purposes of discovery in litigation. For example, the Agreed Confidentiality Order entered in *Federal Trade Commission v. Advocate Health Care Network,* No. 16-CIV-11473 (N.D. Ill.), Docket Entry 36, defines "Highly Confidential" information as information that meets the restrictive definition of "Confidential" information in that Order and, in addition,

"constitutes (i) specific cost, rates, reimbursements, pricing, sales, revenue, or margin information relating to the producing party or a customer of the producing party; (ii) specific current or future pricing, rates, or reimbursement plans; (iii) specific information on capacity or plans for capacity expansion; (iv) proprietary technology and know-how; (v) specific payor contracts; (vi) specific payor claims data; (vii) specific marketing and advertising data or plans that identify specific competitors or customers; or (viii) current or future proprietary strategies or policies related to competition that have been kept confidential by the producing party, the disclosure of which would cause competitive harm to the producing party, a party to the litigation, or a third party, and that harm could not be avoided by less restrictive means."

*See generally* the discussion in *Federal Trade Commission v. Advocate Health Care Network,* 162 F. Supp. 3d 666, 670 (N.D. Ill. 2016).

allows for prompt production of responsive documents and leaves for another day battles such as the one now teed up by Plaintiffs in their Motion about whether documents designated as Highly Confidential technically meet that designation. And the parties' decision to proceed in that way appears largely to have served its purpose in this case. Despite Plaintiffs' prediction in their Motion that oral discovery would be plagued by disputes about the designation and use of Highly Confidential information at depositions, Plaintiffs' Reply [437] at 11, those disputes did not surface until very recently, near the very end of the oral discovery period, and they were limited in nature and easily resolved. *See* ECF Nos. 646, 651 – 659. *See also* Transcript of May 15, 2019 Hearing at p. 92-93 ("Mr. Nemelka: ". . . I would have to say that for the most part, the depositions have run pretty smoothly.").

Plaintiffs and Defendants in this case appear to have taken liberal advantage of the Highly Confidential designation. Plaintiffs contend that CDK has designated many of its documents as Highly Confidential even though Plaintiffs seek the re-designation of only a relatively small subset of those documents in their Motion. CDK contends that Plaintiffs have designated fully 60% of the documents they produced as Highly Confidential although CDK is not challenging those designations now. CDK's Opposition [429] at 7.

II.

With that preamble, the Court proceeds to the merits of Plaintiffs' Motion [415]. In their Motion, Plaintiffs largely ignore the extremely broad definition of Highly Confidential information in the ACO and, instead, cite language from cases that generally say the definition of "highly confidential" or "attorney's eyes only" information is to be narrowly construed. Those cases are, unsurprisingly, fact specific and depend in large part on the language of the confidentiality orders entered in those cases. In addition, Plaintiffs' argument that discovery generally should be conducted in public rings a bit hollow given their own designation of such a large percentage of their own produced documents as Highly Confidential and the broad definition of Confidential and Highly Confidential Information to which they agreed in the ACO. And that is true even putting aside that the 1978 case Plaintiffs cite for that proposition, *Am. Tel. & Tel. Co. v. Grady,* 594 F.2d 594, 596 (7th Cir. 1978), is at best somewhat diminished by the Supreme Court's intervening decision in *Seattle Times Company v. Rhinehart,* 467 U.S. 20, 33 (1984) ("restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."). In another case cited by Plaintiffs, *Global Material Techs., Inc. v. Dazheng Metal Fibre Co., Ltd.,* 133 F. Supp. 3d 1079 (N.D. Ill. 2015), the court ordered the re-designation of a handful of documents but only so they could be shown to a very limited group of employees of an opposing party, a limiting accommodation found nowhere in Plaintiffs' Motion.

Plaintiffs say CDK has not carried its burden of showing the documents it designated as Highly Confidential are properly designated as such. Plaintiffs' also say even if the documents are properly designated, they have a compelling need to see them because their counsel are hampered in prosecuting this case by not being able to show to Plaintiffs' employees the Highly Confidential documents identified in the Motion. For its part, CDK says it appropriately designated the documents as Highly Confidential given the definition contained in the ACO, and

Plaintiffs have not shown a compelling need to show the Highly Confidential documents to their clients.

It is worth noting that Plaintiffs are not asking that the documents be stripped of any protection. They are asking that the documents be re-designated as Confidential under the ACO which maintains the restriction on filing those documents in the public record but allows Plaintiffs' employees to see them. Therefore, the issue here is not whether the documents are entitled to no confidentiality protection. It is only whether the documents should be treated as Confidential rather than Highly Confidential within the meaning of the ACO.

The Court acknowledges, as did Judge Kennelly in *Motorola, Inc. v. Lemke Corp.*, 2010 WL 2179170, at *5 (N.D. Ill. June 1, 2010), *citing Arvco Container Corp. v. Weyerhaeuser Co.*, 2009 WL 311125 (W.D. Mich. Feb. 9, 20019), the innate benefit of allowing counsel to share with their clients facts uncovered during discovery as the case moves toward trial or possible settlement assuming the legitimate interest of an adverse party in protecting its internal information is respected. At the same time, however, the Court also must acknowledge that the parties in this case, on both sides of the versus and, indeed, on the same side, are competitors in the dealer management services space. CDK and its co-defendant Reynolds and Reynolds Company ("Reynolds") are competitors, and CDK and Reynolds compete with Plaintiffs Authenticom, Inc., and Cox Automotive, Inc. This perhaps explains and animates to some extent the relatively broad Highly Confidential designation that all parties agreed to in the ACO entered early in the discovery process in this case.

III.

It is CDK's burden under the ACO as the designating party to show that it properly designated the documents as Highly Confidential. ACO [104] at 8(b). In an effort to meet its burden, CDK submitted the declaration of its vice-president for data services, Howard Gardner, who attests broadly to the highly sensitive nature of the documents at issue in Plaintiffs' Motion and speaks specifically about a handful of documents that he says contain highly sensitive information which, if disclosed to Plaintiffs' employees, would cause CDK to suffer competitive harm. [ECF No. 429-1.] Plaintiffs have submitted all the documents in question with their Motion and essentially argue all the Court needs to do is look at the documents to see they are not Highly Confidential within the meaning of the ACO. The Court has looked at each of the documents referenced in Plaintiffs' Motion.

Neither side does a good job of marshalling its arguments overall on a document-by-document basis. Rather, Plaintiffs and CDK speak mostly in general terms about categories of documents and reference specific documents or portions of documents sparingly or not at all. Plaintiff's broad stroke attack on the designation of dozens of documents as Highly Confidential also does not always put CDK or the Court on clear notice of where the attack is focused or whether it is narrowly directed at particular information contained in lengthy documents that sometimes run to dozens of pages. On this record and given how the parties have presented the issue to the Court, the Court finds that CDK has met its burden to show it properly designated the documents Plaintiffs are challenging as Highly Confidential in the context of this case being litigated on all sides by aggressive business competitors. Even if CDK has over-designated as Highly

4

Confidential some documents or portions of very lengthy documents, it is impossible for the Court to make those calls on this record and engage in the scalpel-like exercise that would be necessary to re-categorize the documents in whole or in part when the parties argue the dispute on essentially an all or nothing basis.

As noted, in his Declaration [ECF No. 429-1], Mr. Garner addresses specifically only a small number of the documents to which CDK has affixed the Highly Confidential designation. He mentions, however, certain concrete information contained in particular documents that is generally considered to be confidential or even highly confidential and sensitive in business litigation, such as pricing terms, fee schedules and technical specifications of the February 2015 agreements between CDK and its co-defendant in this case (¶4); internal discussions within CDK about its strategy in negotiating with Reynolds, its competitor (¶4); a proposed fee schedule in a draft amendment to the CDK-Reynolds agreements (¶ 8), current pricing terms in current contracts (¶ 9); confidential details about revenue generated from certain accounts and pricing strategies and current pricing terms (¶ 10); detailed descriptions of the tools CDK uses to disrupt unauthorized access to its DMS the disclosure of which could help customers circumvent its security measures (¶¶11-12); internal discussions about the potential acquisition of a party to this litigation (¶14); and business initiatives and strategies that are not publicly known (¶ 15).

Mr. Garner speaks more generally about other things like unspecified confidential terms that would give others an unfair advantage if they were disclosed, (¶ 6); the negotiation, execution, and implementation of the February 2015 Agreements (¶ 8); contract terms that the contracting parties are contractually prohibited from disclosing (¶ 9); and internal assessments of perceived threats from other competitors or third-party integrators (¶ 13). It is not clear that this kind of information is properly designated as Highly Confidential as opposed to Confidential based on what Mr. Garner says in his Declaration. But the Court also cannot say it is not Highly Confidential under the circumstances of this case, and Plaintiffs do not provide the Court with the tools to unpack these designations. One of Plaintiffs' major arguments, for example, is that internal communications within CDK about its negotiations with Reynolds and those companies' communications with each other cannot possibly be confidential because CDK and Reynolds are competitors and they are alleged to have conspired to commit antitrust violations. But CDK and Reynolds are not completely aligned with each other for all purposes in business or even in this case. And the Court can understand how disclosure to Reynolds of some of CDK's internal communications and disclosure to Plaintiffs' business executives of certain communications between the two companies and CDK's internal discussions could be damaging.

The Court does not agree with Plaintiffs that a document cannot be designated properly as Highly Confidential just because it, for example, goes to the heart of their case or because it tends to show, in counsel's view, that one or more defenses raised by CDK are meritless or implausible. The Court agrees that those documents likely will lose any pretention to confidentiality under Seventh Circuit law if they are used at trial or attached to dispositive motions and referenced by the trial court in a dispositive decision. *See, e.g., Baxter International, Inc. v. Abbott Laboratories,* 297 F.3d 544, 546 (7th Cir. 2002); *Union Oil of California v. Leavell,* 220 F.3d 562, 567-68 (7th Cir. 2000). But that is a different matter than whether the documents properly are designated as Highly Confidential when produced initially in discovery. In other words, that a document might be admissible in evidence to prove

Plaintiffs' case does not mean it cannot be designated as Highly Confidential when produced initially in discovery.

The Court also agrees that Plaintiffs have not shown a compelling need for the wholesale re-designation of the documents attached to their Motion so their counsel can show them to Plaintiffs' employees. To the extent CDK has met its burden to justify its Highly Confidential designations, Plaintiffs inability to show a compelling need for the documents to be re-designated undercuts their request that the documents be re-designated. Plaintiffs do not explain persuasively how their counsel's ability to prosecute the case has been hampered seriously because Plaintiffs' employees have not seen for themselves any of the challenged documents or portions of the documents.

Plaintiffs' counsel broadly contend their clients should be able to see these documents so they can better participate in directing the case and evaluating the strengths and weaknesses of their claims. The Court agrees that ideally is the best way to proceed in most cases. But the argument mostly seems to come down to a strong desire by counsel to show their clients documents that counsel believe contain strong evidence that supports Plaintiffs' claims or even "smoking guns," not that a compelling need exists to show those documents to Plaintiffs' employees at this juncture to enable counsel to prosecute their clients' claims effectively. If Plaintiffs had pointed to specific documents and made a cogent argument as to why their ability to prosecute the case was being seriously impeded because they could not discuss a document or a portion of a document with a client decision maker, that would be another matter. But that is not how the issue is now being presented.

It should be noted that one of the main arguments Plaintiffs advanced in support of their Motion, that depositions could not proceed effectively if the documents retained a Highly Confidential designation, is no longer imperative. As noted above, Plaintiffs' counsel conceded at a recent status hearing held on May 15, 2019, that the depositions the parties have all but finished taking went very smoothly despite Plaintiffs' counsel's fear that they would be plagued by endless disputes involving the use of Highly Confidential documents, and that CDK even re-designated certain documents during depositions to avoid conflict over Highly Confidential designations.

Finally, upon the Court's inquiry at that same status hearing, it was clear that Plaintiffs' Motion is just the tip of the iceberg if the Court indicates a willingness to consider requiring the wholesale re-designation of documents from Highly Confidential to Confidential. Plaintiffs and Defendants would then challenge each other's designations on an even broader basis than Plaintiffs have done in their pending Motion. The Court is not interested in provoking a free for all challenge to Highly Confidential designations at this juncture. That would not be a productive use of anyone's time in the Court's view.

IV.

For all these reasons, MDL Plaintiffs' Motion to Compel Defendant CDK Global, LLC to Re-Designate Documents From "Highly Confidential" to "Confidential" [415] is denied.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:  May 20, 2019

7