**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*In re Dealer Management Systems Antitrust Litigation*, MDL 2817

This filing relates to:

*i3 Brands, Inc. et al. v. CDK Global LLC et al.*, Case No. 19-cv-1412 (N.D. Ill.)

No. 1:18-CV-864

Hon. Robert M. Dow, Jr.

**DEFENDANT CDK GLOBAL, LLC'S REPLY**
**IN SUPPORT OF ITS MOTION TO STAY OR, IN THE ALTERNATIVE, TO DISMISS**

Plaintiffs (collectively, "i3") should not be permitted to proceed on their claims against CDK. i3 agreed to arbitrate its identical antitrust claims against defendant Reynolds, and this case should accordingly be stayed pending the outcome of that arbitration. i3's argument to the contrary is built on a misapprehension that the *Colorado River* abstention doctrine applies in this context (it does not), and should be rejected.

If the Court does not stay the entire case pending arbitration, it should dismiss Count XI of the complaint, along with Count II insofar as it pertains to CDK's dealer contracts. i3 claims that Count II has nothing to do with these contracts, but that is not what the complaint says, and i3 should be precluded from proceeding on any theory related to the dealer contracts—which has already been rejected in this MDL. Count XI's tortious-interference claim, meanwhile, rests on far too meager a factual basis to satisfy i3's pleading burden, and must be dismissed.

## ARGUMENT

### I.   Plaintiffs' Claims Against CDK Should Be Stayed.

The bulk of i3's opposition is devoted to arguments why it should be allowed to evade its agreement to arbitrate disputes with Reynolds by proceeding in court against CDK now. Opp. 2-7. But none of these arguments has merit.

i3 first argues that motions to stay in favor of a parallel arbitration that are brought by a nonsignatory to the arbitration agreement are governed by the "principal [sic]" of "parallel-proceeding abstention." Opp. 3. This premise is generally accurate: motions to stay in this context are "a specific application of the abstention doctrines that can be invoked whenever parallel legal or arbitral proceedings are pending." *G&G Closed Circuit Events, LLC v. Castillo*, 2017 WL 1079241, at *9 (N.D. Ill. Mar. 22, 2017). But the conclusion i3 draws from that premise—that CDK's stay motion is governed by *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)—is wrong. *Colorado River* abstention is a particular kind of parallel-proceeding abstention

1

that only "comes into play when parallel state court and federal court *lawsuits* are pending between the same parties"—which is not the case here. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497-98 (7th Cir. 2011) (emphasis added). Tellingly, i3 does not cite a single case applying *Colorado River* principles to a motion like CDK's.

Indeed, the very idea of applying the factors that govern *Colorado River* abstention to motions to stay litigation pending arbitration is nonsensical. Those factors, which compare the current status and potential for interference between parallel state and federal court actions, are inapplicable on their face to a motion like CDK's—as i3's attempt to apply them to this case demonstrates. Opp. 5-6.

In short, *Colorado River* has no relevance to this motion. Rather, the Court's decision whether to stay i3's claims against CDK pending the outcome of its arbitration with Reynolds turns on "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 972 (7th Cir. 2007) (internal quotation marks omitted). "When these factors weigh in favor of staying the entire action pending arbitration, the district court may abuse its discretion in allowing the nonarbitrable issues to proceed absent a stay." *Id.* And as the Seventh Circuit has previously explained, these factors *do* weigh in favor of a stay when "a party to an arbitration agreement, trying to get around it, sues not only the other party to the agreement but some related party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration." *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996). In those circumstances (which are present here), there is a high risk that resolving the claims first in the litigation will interfere with the

arbitration, and the court should therefore "stay the proceedings before it and let the arbitration go forward unimpeded." *Id.*

i3 next argues that it is not attempting to evade its agreement to arbitrate. But that is *precisely* what it is doing. i3 was not required to sue CDK in addition to Reynolds—i3 would be entitled to its full damages from either party if it prevailed on its conspiracy claims. *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980). The focus on Reynolds in i3's complaint suggests that i3's purpose in naming CDK as well was to avoid having to resolve its claims in arbitration. That purpose should not be rewarded.

Finally, i3 contends that CDK's motion to stay should be denied because CDK's motion cited Exhibit 2 to i3's complaint—which i3 represents is a "draft 2018 agreement between Plaintiffs and Reynolds" (Opp. 6) that "was never finalized" (*id.* at 7). This "gotcha" argument should be rejected. i3 does not deny that it signed an arbitration agreement with Reynolds: While its opposition to Reynolds's arbitration motion denies that its claims are arbitrable under that agreement, i3 does not contest the formation of the agreement itself. *See* Dkt. 678 at 3-10. Nor does i3 claim that the arbitration provision in the "draft" that it chose to attach to its complaint differs in any material way from the one in the RCI agreement that it signed. That is unsurprising, given that i3's complaint repeatedly cited this document (draft or not) and portrayed it as representative of its RCI agreement with Reynolds "from 2014." Compl. ¶ 79; *see also id.* ¶ 81. And in any event, whether CDK cited the correct document is beside the point, because CDK is not attempting to enforce the terms of i3's RCI agreement itself—rather, CDK's point is simply that, if the Court grants Reynolds's motion to compel arbitration, i3's claims should be stayed.

One final point merits mention—namely, i3's repeated observation that it has made a claim against CDK that it has not made against Reynolds (*i.e.*, the tortious-interference claim in Count XI).

3

Even though this claim has no direct analogue in the i3-Reynolds dispute, it should be stayed along with the rest of the case pending the outcome of the arbitration. i3 expressly links this claim to its core conspiracy allegations, contending that CDK's purported interference "was done pursuant to CDK's illegal conspiracy" with Reynolds. Compl. ¶ 221; *see also* Opp. 8 ("CDK did this because it had reached anticompetitive agreements with Reynolds.") (internal quotation marks omitted). The outcome of that claim thus depends on whether CDK and Reynolds improperly conspired in the first place—a question that an i3-Reynolds arbitration will answer. CDK's request for a stay pending the outcome of that arbitration should accordingly be granted with respect to each of the claims against CDK.

## II.    Plaintiffs' Exclusive Dealing Claim (Count II) Must Be Dismissed To The Extent It Relates To CDK's Dealer Contracts.

i3 attacks as a "strawman" CDK's motion to dismiss Count II to the extent that it relates to CDK's dealer contracts, arguing that the complaint makes clear that it "relates [only] to vendor contracts." Opp. 7. The complaint does no such thing; on the contrary, it mentions CDK's dealer contracts repeatedly in setting forth i3's exclusive-dealing claim. Compl. ¶¶ 153-55. The claim should therefore be dismissed with respect to CDK's dealer contracts—for this Court rejected that claim in *Cox* and *Authenticom*, Mot. at 5—although if the Court is inclined to read i3's opposition brief as abandoning any claim regarding the dealer contracts, CDK's motion could in that respect be denied as moot.

## III.    Plaintiffs' Conclusory Tortious-Interference Claim (Count XI) Must Be Dismissed.

CDK's motion to dismiss explained (at 7) that i3's claim for tortious interference with prospective economic advantage is inadequately pled, because a plaintiff cannot state a claim by "offer[ing] nothing more than 'threadbare recitals of the elements of a cause of action' and conclusory statements." *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2018 WL

835222, at *5 (N.D. Ill. Feb. 13, 2018) (quoting *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008)). In response, i3 simply walks the court through a threadbare recital of the elements of a tortious interference claim. Opp. 8-9. i3 offers no further detail on the pleading deficiencies identified by CDK, including the lack of any factual detail about the nature of its purported "pilot program" and how that program impinged on the interests of one of CDK's (unidentified) customers. Nor does i3 explain, even after being prompted in CDK's motion (at 7), the discrepancy between its allegation that CDK "refused to finalize integration" for PartProtection in 2015 (Compl. ¶ 85) and its allegation that PartProtection has been paying supracompetitive fees for 3PA integration. i3's minimal showing does not "raise [its] right to relief above the speculative level" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and its tortious-interference claim should therefore be dismissed.

## CONCLUSION

The Court should stay further proceedings pending the outcome of an arbitration between Plaintiffs and Reynolds. In the alternative, the Court should dismiss Count XI of the complaint, along with Count II to the extent that it pertains to CDK's dealer contracts.

Dated: May 24, 2019

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on May 24, 2019, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S REPLY IN SUPPORT OF ITS MOTION TO STAY OR, IN THE ALTERNATIVE, TO DISMISS**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
E-mail: bmiller@mayerbrown.com