# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC et al.*, Case No. 1:18-cv-00868 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL OUTSTANDING DISCOVERY AND TESTIMONY FROM PLAINTIFF AUTHENTICOM, INC.

Defendants The Reynolds and Reynolds Company ("Reynolds") and CDK Global LLC ("CDK") hereby submit their Brief in Support of their Motion to Compel Outstanding Discovery and Testimony from Plaintiff Authenticom, Inc. on two of the outstanding discovery issues identified by Defendants in the Joint Proposed Agenda submitted on May 8, 2019 (Dkt. 684): (1) Authenticom's failure to produce (or even retain) a 7-day example of its Polling Client Manager Log in response to Defendants' requests for production and (2) Authenticom's improper instructions to its 30(b)(6) witness not to answer questions about Authenticom's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pursuant to the Court's request, these two issues were identified to the Court by email as issues that remained in dispute on June 5, 2019. Ex. 1; Dkt. 695.

1. **Authenticom Has Regularly Purged its Polling Client Manager Logs Throughout this Litigation—And Refused to Produce Even the Limited Data Set it Says it Retains**

The Polling Client Manager ("PCM") is the Authenticom "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" from a dealer management system ("DMS"). Ex. 2 (Clements Dep.) at 97:16-19. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 304:19-20; 306:17-18 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Authenticom has represented to Defendants that this PCM log is the only manner through which Authenticom tracks the specific instances of how, when, and how frequently it accesses Defendants' DMSs. *E.g.,* Ex. 3 (stating Authenticom does not otherwise "track instances of DMS data access."). This information is responsive to several of Defendants'

1

document requests. *See, e.g.*, Ex. 4 at No. 2 (documents sufficient to show the date, time, content, of Authenticom's queries); Ex. 5 at Nos. 8, 10, 11, 19, 22, 33 (asking for all documents related to "access to Reynolds' DMS," "any attempt to obtain access" or "log in to a Reynolds DMS," any instance "in which Authenticom has accessed or attempted to access data from a Reynolds DMS" and similar).

Discovery regarding the specific instances of when, how frequently, and through what methods Authenticom accesses Defendants' DMSs is relevant to Defendants' independent rationales for adopting computer security measures to prevent hostile third parties like Authenticom from accessing their respective systems. It is additionally highly relevant to Defendants' counterclaims, which allege that each instance of Authenticom's unauthorized DMS access is a violation of the Digital Millennium Copyright Act and the Computer Fraud and Abuse Act, an infringement of Reynolds's copyrights, and a violation of other federal and state statutes and common-law rights. *See generally,* Dkt. 225, 229. What follows is just a partial list of the means and methods Authenticom used to wrongfully access Defendants' DMSs.

- ██████████████████████████████████████████████████████. Ex. 6 (Munns Dep.) at 36:17-37:17, 73:1-73:12, 114:1-4. ██████████████████████████████████████████████████████." *Id.* at 111:13-15, 115:20-116:22.

- ██████████████████████████████████████████████████████. *Id.* at 104:1-107:12.

- ██████████████████████████████████████████████████████ *Id.* at 140:4-5. ██████████████████████████████████████████████████████. *Id.* at 148:11-149:19.

- . *Id*. at 63:14-64:2. ███████████████████████████████████████████. *Id*. at 64:4-8.

- ███████████████████████████████████████████. *Id.* at 253:16-254:9; Ex. 7. ███████████████████████████████████████████. Ex. 8 (Cottrell Dep.) at 184:14-186:22.

- ███████████████████████████████████████████. Ex. 9 (Auth. 30(b)(6) (Brown)) at 363:10-365:6; Ex. 10.

Each instance of Authenticom's access to Defendants' DMSs constitutes an independently tortious act for which Defendants seek to recover under their counterclaims, and the PCM log is direct evidence of how frequently (and through what methods) Authenticom accesses Defendants' systems. For example, the PCM log would demonstrate the exact scripts Authenticom is running on Defendants' DMSs, when those scripts are run, how long it takes to extract that data, what data is being extracted, and potentially, what circumvention measures are being automatically implemented by Authenticom today. Ex. 2 (Clements Dep.) at 306:17-18; Ex. 11 at 7 (showing queries run for single poll at a single dealership).

Despite this, and despite Reynolds's litigation hold notice to Authenticom and Mr. Cottrell on April 30, 2017 (before this lawsuit was filed, but after it was threatened) requesting that they preserve all evidence of Authenticom's access to Reynolds's systems, Authenticom has made no effort to retain—and indeed continues to purge—its PCM log. *See* Ex. 12; Ex. 13 ("[Y]ou explained that Authenticom has not preserved, and indeed purges, any data it has relating to the

3

number and dates of specific instances when Authenticom accessed a Reynolds DMS..."); Ex. 2 (Clements Dep.) at 306:20-2 ("▇▇▇."). To repeat—evidence that goes to the core of Defendants' claims (and defenses) has been routinely and knowingly destroyed since the inception of the litigation—and Authenticom has indicated that it does not otherwise maintain any data that can reasonably replace what has been lost.[1]

According to Authenticom, it made this decision because retaining the logs ▇▇▇. Ex. 2 (Clements Dep.) at 306:1-5 ("▇▇▇"). However, Authenticom did not timely make Defendants aware of this decision to purge its records, never articulated the purported costs of preservation, and never proposed any alternative to complete purging (e.g., preserve a 30-day snapshot).

In the summer of 2018, after Defendants challenged Authenticom about its failure to retain this information, Authenticom proposed creating a separate log—not a PCM log—demonstrating instances where data was entered into Authenticom's system. Ex. 14. Defendants asked Authenticom to produce this alternative log but specifically "reserve[d] the right to have further meet and confers or file additional motions to compel . . . depending on what is produced." Ex. 15. After receiving Authenticom's substitute log months later, in October 2018, Defendants realized that it was both materially incomplete and a poor substitute for an actual PCM log. For example, the log did not show all types of data extractions, ▇▇▇,[2] and did

---

[1] While Defendants only seek to compel production here, Defendants reserve all rights to seek any other appropriate relief, at a later date, to remedy the harm caused to them by Authenticom's failure to retain this information.

[2] On May 8, 2019, counsel for Authenticom represented that the log in question contained all data Authenticom obtained, ▇▇▇. Ex. 31. But it is undisputed that the log labels all data "▇▇▇" data and that Authenticom obtained other kinds of data from Defendants' DMSs (including parts, appointment, repair orders, employee, and inventory data). Further, defendants responded to Authenticom's representation that it is inconsistent both with Authenticom's 30(b)(6) deposition

not directly correlate to actual instances of DMS access. Ex. 16 (Auth. 30(b)(6) (Noth)) at 37:14-20; 45:11-46:5.

On November 7, 2018, Defendants asked Authenticom to produce a 7-day PCM log exemplar—which was the length of time Authenticom had represented it could produce. Ex. 17 (asking for "the PCM log(s) showing all instances of Authenticom's Dealer DMS access for the past seven days."). On November 21, Defendants followed up, again asking for a "7-day example of the PCM log." Ex. 18. On December 7, Authenticom indicated that it would investigate "whether it is possible to create an example of a PCM Log, as Defendants' request." Ex. 19. Defendants reasonably assumed that this meant that Authenticom was investigating producing what Defendants had requested—and what Authenticom's witnesses represented they retained—which was a 7-day PCM log example. Eventually, Authenticom agreed to produce an example PCM log. *E.g.,* Ex. 20 ("On our call, you indicated that Authenticom was still working toward production of an exemplar PCM Log."). However, Authenticom never told Defendants that the "example" PCM log it intended to produce *was not* the 7-day example Defendants had requested. Instead, on March 12, 2019, after Defendants had waited an additional four months, Authenticom produced only a snapshot of a single poll of a single dealer from a single day. This document is only 18 lines of text. Ex. 11 at 7. It is produced below in its entirety.

---

testimony on this issue and other documents Authenticom produced, and asked Authenticom to explain how its representation could be accurate in light of those facts. Ex. 31. Authenticom has not responded to Defendants' request for clarification.

5

CDK-PollingLog.txt



This "example" of one instance of polling at a single dealer selected by Authenticom is not sufficient or responsive to Defendants' discovery requests because it is not representative of Authenticom's total query activity on Defendants' systems. At this point, Defendants were resolved to move to compel, but Authenticom once more asked them to hold off. Ex. 21; Ex. 22. On April 18, 2019, Authenticom offered a proposed compromise, to produce a "random sample of 10 CDK dealers and 10 Reynolds dealers for a given day" rather than the 7-day example that Defendants thought Authenticom had agreed to produce in December. Ex. 23.

That is also not sufficient. It would not show, even for a limited period, the total extent, nature, or variety of Authenticom's polling operation. As a result, Defendants are forced to seek the Court's intervention. A full, 7-day segment of the PCM log is available to Authenticom, highly relevant to this case, and responsive to outstanding discovery requests. The information contained therein also has not been satisfactorily produced in other forms. *E.g.,* Ex. 24. For instance, Authenticom has testified that it is not able to track, on a regular basis, the number of its dealer

6

connections being serviced ████████████████████████

████—information that could be gleaned, at least for a representative 7-day period, from the PCM log. Ex. 16 (Auth 30(b)(6) (Noth)) at 216:22-217:3. Further, Authenticom has acknowledged that the proposed alternative log it offered to create in the summer of 2018 is incomplete. *Id.* at 42:6-16; 45:1-47:2. In fact, their own corporate representative stated it was "████████████ ████████████████████████." *Id.* at 37:18-20 (emphasis added).

On June 4, 2019, Authenticom, for the first time, indicated that the production of the requested PCM log(s) might be "technically impossible." Ex. 25. Despite six months of negotiations, Authenticom had never informed Defendants of this before—not during the meet and confers in December, January, February, March, and May; not when Defendants first informed Authenticom they intended to move to compel and Authenticom requested that they hold off; and not when Defendants added the issue to the Court's May 15 status hearing agenda. *See, e.g.,* Ex. 25, Dkt. 684. Further, this statement is inconsistent with the testimony of Authenticom's Chief Operating Officer, Brian Clements, who stated ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████. Ex. 2 (Clements Dep.) at 304:19-20; 306:7-23 (████████████████████████████████████████ ████████████████); Ex. 26 at 2 (identifying the "PCM Log" as the "████████████████ ████████████████"). In any event, Authenticom has not satisfactorily explained how or why it is "technically impossible" to export this log and when it became so.

The PCM log—even though it would only contain data for a limited time period—may be the only means through which Defendants can understand Authenticom's polling activities on a poll-by-poll, and dealer-by-dealer basis. If the PCM log for the originally requested 7-day period

7

in November 2018 was not been preserved, Defendants ask that the Court compel the production of a 7-day PCM log covering the more recent period June 10 to June 16, 2019 and any other PCM logs that have been preserved since the beginning of discovery.[3]

### 2. Authenticom Wrongly Instructed its 30(b)(6) Witness Not to Answer Questions About Authenticom's Practice of ▮▮▮▮▮▮

Defendants served a Rule 30(b)(6) Notice on Authenticom that specifically defined Authenticom to include "any related companies, divisions, or subsidiaries" such as the affiliated company Xcelerated, Inc. Ex. 27 ("Notice") at 4. The first topic was "Any efforts by Authenticom to secure or protect 'dealer data'...." *Id.* The seventh topic was "[a]ny use of or agreements with third-party vendors to obtain data maintained on a CDK or Reynolds DMS." *Id.* Authenticom designated its General Counsel, Dane Brown, to testify on the noticed topics and did not serve any objections limiting the scope of his testimony. Ex. 28.

Authenticom's primary business is extracting data from DMSs to provide to third-party application providers. In other words, a vendor hires Authenticom to extract data from a dealer's DMS, ostensibly with the dealer's knowledge, and to transmit data from the dealer to a specified vendor. Defendants have recently learned, however, that Authenticom would, ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮ ▮▮▮▮▮▮. Ex. 29 (Robinson Dep.) at 97:9-98:15; Ex. 30 (explaining the ▮▮▮▮▮▮ ▮▮▮▮▮▮).

At the 30(b)(6) deposition, Defendants attempted to ask Mr. Brown about this practice. In response, however, Authenticom's counsel instructed the witness not to answer the questions

---

[3] Though in its regular course of business Authenticom may only preserve a running 7-day PCM log, it produced a log from December 2018 in March 2019. To the extent Authenticom has retained one-off logs from any other periods of time beyond the last 7 days, Defendants move to compel their production as well.

8

either on the grounds that the information was outside of the scope of the Notice and/or that the information was privileged. *See, e.g.,* (Auth 30(b)(6)-Brown) at 225:16-20 ("███████████████████████████████████████████████████████████████████████████████████████████████████████████████████."). As a result, the witness refused to answer questions including: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" and similar questions. Ex. 9 (Auth(30(b)(6) (Brown)) at 222:12-17; 225:21-226:4; 226:1-227:6.

These instructions—and the witness's refusal to answer—were improper. First, these questions were within the scope of the Notice, as they relate both to the way Authenticom protected "dealer data" and to Authenticom's agreements to distribute data extracted from Defendants' DMSs. Even if they had not been within the Notice, however, it was improper for counsel to instruct the witness not to answer, as a 30(b)(6) witness has an obligation to answer any relevant questions even if they are not explicitly about a noticed topic. *Fed. Deposit Ins., Corp. v. Giancola*, 13 C 3230, 2015 WL 5559804, at *2 (N.D. Ill. Sept. 18, 2015) ("Courts are in agreement that once the witness satisfies the minimum standard [for serving as a designated witness], the scope of the deposition is determined by relevance under Rule 26…."); *Am. Gen. Life Ins. Co. v. Billard*, C10-1012, 2010 WL 4367052, at *4 (N.D. Iowa Oct. 28, 2010) (collecting cases). Indeed, Plaintiffs asked Defendants' own 30(b)(6) witnesses dozens of questions outside the scope of their noticed topics without any instructions not to answer. *E.g.*, Ex. 32 (CDK 30(b)(6) (Coleman)) at 137:23-140:8 (questioning the witness about retention of CDK earnings call transcripts).

Second, the fact that the witness was the General Counsel does not privilege the underlying information sought. If the questions were within the noticed topic, Authenticom clearly had an obligation to answer them. *Corcoran v. CVS Health*, 15CV03504YGRJSC, 2016 WL 11565649, at *2 (N.D. Cal. Dec. 9, 2016) ("In designating an attorney, the party cannot effectively frustrate or impede the deposition under the banner of privilege..."). If not, the questions still did not seek privileged information. None of the refused questions asked the witness to reveal attorney-client communications. Rather, the questions exclusively sought basic facts concerning Authenticom's business and security practices. *DSM Desotech Inc. v. 3D Sys. Corp.*, 08 C 1531, 2011 WL 117048, at *2 (N.D. Ill. Jan. 12, 2011) ("[P]rivilege does not generally justify the withholding of purely factual material."). As such, Authenticom's conduct was improper.

Defendants request that the Court order a continuation of the Authenticom 30(b)(6) deposition, with a witness prepared on these issues, for up to an additional 2 hours so that Defendants may cover these and related topics.

### 3. Conclusion

Authenticom should be compelled to produce any PCM log(s) in its possession, including a full 7-day example, and to produce a prepared 30(b)(6) witness to answer Defendants' questions related to DataVast and Authenticom's practice of selling data to third-parties.

Dated: June 5, 2019                                                                Respectfully submitted,

| | |
|---|---|
| /s/ *Aundrea K. Gulley* | /s/ *Britt M. Miller* |
| Aundrea K. Gulley | Britt M. Miller |
| Brian T. Ross | Daniel T. Fenske |
| GIBBS & BRUNS LLP | Matthew D. Provance |
| 1100 Louisiana Street | MAYER BROWN LLP |
| Suite 5300 | 71 South Wacker Drive |
| Houston, TX 77002 | Chicago, IL 60606 |
| (713) 751-5258 | (312)782-0600 |
| agulley@gibbsbruns.com | bmiller@mayerbrown.com |
| bross@gibbsbruns.com | dfenske@mayerbrown.com |
| | mprovance@mayerbrown.com |
| | |
| Michael P.A. Cohen | Mark W. Ryan |
| SHEPPARD MULLIN RICHTER & HAMPTON, LLP | MAYER BROWN LLP |
| 2099 Pennsylvania Avenue NW, Suite 100 | 1999 K Street NW |
| Washington, DC 20006 | Washington, DC 20006 |
| (202) 747-1900 | (202) 263-3000 |
| mcohen@sheppardmullin.com | mryan@mayerbrown.com |
| | |
| *Counsel for Defendant* | *Counsel for Defendant* |
| *The Reynolds and Reynolds Company* | *CDK Global, LLC* |

## CERTIFICATE OF SERVICE

I, Aundrea Gulley, an attorney, hereby certify that on June 5, 2019, I caused a true and correct copy of the foregoing **BRIEF IN SUPPORT OF DEFENDANTS MOTION TO COMPEL OUTSTANDING DISCOVERY AND TESTIMONY FROM PLAINTIFF AUTHENTICOM, INC.**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

              */s/ Aundrea Gulley*
              Aundrea K. Gulley
              GIBBS & BRUNS LLP
              1100 Louisiana Street, Suite 5300
              Houston, TX 77002
              (713) 751-5258
              agulley@gibbsbruns.com