# Exhibit 5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AUTHENTICOM, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CDK GLOBAL, LLC, and THE REYNOLDS AND REYNOLDS COMPANY, <br><br> Defendants. | No. 3:17-CV-318-JDP |

**THE REYNOLDS AND REYNOLDS COMPANY'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant The Reynolds and Reynolds Company requests that Plaintiff Authenticom, Inc. produce the following documents and things within thirty (30) days at such place as agreed to by counsel for the Parties.

**DEFINITIONS**

1. The terms "Authenticom," "you," and "your" mean Plaintiff Authenticom, Inc., and any related companies, divisions, or subsidiaries, past or present, including, without limitation, the directors, officers, employees, agents, or attorneys thereof.

2. The term "Reynolds" means Defendant The Reynolds and Reynolds Company and includes the directors, officers, employees, agents, or attorneys thereof.

3. The term "CDK" means Defendant CDK Global, LLC and includes the directors, officers, employees, agents, or attorneys thereof.

4. The term "DMS" means enterprise systems known in the industry as Dealer Management Systems, including hardware and software, and further including any databases or data relating thereto.

5. The terms "and," "or," and "and/or" include any item or combination of items identified in a request, and shall not be interpreted to exclude any information otherwise within the scope of a request.

6. The term "any" means one, some, or all of whatever quantity.

7. The term "including" means including, but not limited to.

8. The terms "document" or "documents" are used herein in their broadest possible sense and refer, without limitation, to all written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications or records of every kind and description, whether comprised of letters, words, numbers, pictures, sounds, or symbols, or any combination thereof, whether prepared by hand or by mechanical, electronic, magnetic, photographic, or other means, and including audio or video recordings of communications, occurrences or events.  This definition includes, but is not limited to, any and all of the following:  correspondence, notes, laboratory notebooks, research materials, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, invoices, orders, acknowledgements, receipts, bills, statements, checks, check registers, financial statements, journals, ledgers, appraisals, reports, forecasts, compilations, schedules, studies, summaries, analyses, pamphlets, brochures, advertisements, newspaper clippings, tables, tabulations, financial packaging, plans, photographs, pictures, film, microfilm, microfiche, computer-stored or computer-readable data, computer programs, computer printouts, telegrams, telexes, telefacsimiles, tapes, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained.  The terms "document" and "documents" shall include all preliminary versions, drafts or revisions of the foregoing, and all copies of a document shall be produced to the extent that the copies differ from the document produced due to notations, additions, insertions, comments, enclosures, attachments or markings of any kind.  Further, the terms "document" and "documents" shall include, without limitation, those categories as set forth in Rule 34(a) of the Federal Rules of Civil Procedure, specifically, writings, drawings, graphs, charts, photographs, phonorecords, and other data compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form and electronically stored information.

9. The term "things" means any tangible item, including without limitation, models, prototypes and samples of any device or apparatus or product.

10. The term "person" means any natural person, corporation, company, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, office or other business or legal entity, whether private or governmental.

11. The term "communication" means all written, oral, telephonic or other inquiries, dialogues, discussions, conversations, interviews, correspondence, consultations, negotiations, agreements, understandings, meetings, letters, notes, advertisements, and all other documents evidencing any verbal or nonverbal interaction between or among persons and/or entities.

12. The term "agreement" means a contract, arrangement, or understanding, formal or informal, oral or written, between two or more persons and/or entities.

13. The terms "concerning," "referring to," "related to," or "relating to" shall be construed in the broadest possible sense, and shall mean without limitation and whether in whole or in part: referring to, constituting, bearing upon, commenting upon, reflecting, evidencing, pertaining to, describing, depicting, consisting of, containing, comprising, embodying, identifying, stating, discussing, analyzing, studying, summarizing, dealing with, relating to, or having any logical or factual connection whatsoever with the subject addressed.

## INSTRUCTIONS

A. In responding to these requests, you are required to furnish all information that is available to you or subject to your reasonable inquiry, including information in the possession of your attorneys, accountants, advisors, representatives, agents, or other persons directly or indirectly employed by, or connected with, you or your attorneys, and anyone else otherwise subject to your control. All documents that respond, in whole or in part, to any portion of the requests below shall be produced in their entirety, including all attachments and enclosures.

B. In construing these requests, the plural shall include the singular and the singular shall include the plural; a masculine, feminine, or neuter term shall include all other genders; the terms "or," "and," "and/or," and "including" shall be construed inclusively rather than exclusively so as to bring within the scope of the request that which otherwise might be construed as being outside the scope of said request; and the terms "all" and "any" shall be interpreted inclusively so as to mean both "all" and "any" whenever either term is used.

C. If you contend that any documents sought by these discovery requests are privileged or otherwise protected from discovery, you must nevertheless identify for each document withheld:

(1) the legal basis for withholding the document;

(2) the person asserting any claim of privilege and/or protection;

(3) a description and identification of the requested document sufficient to frame an appropriate demand for the document and a motion to compel disclosure thereof, setting forth at least the following:

(a) the author and/or signatory of the document withheld;

(b) the date of the document withheld;

(c) all addressees and/or recipients of the document withheld; and

(d) the subject matter and circumstances under which the document withheld was created in sufficient detail to ascertain applicability of the privilege or other legal basis asserted.

D. Notwithstanding a claim that a portion of a document is privileged or otherwise protected from disclosure, any such document must be produced with the portion claimed to be protected excised.

E. Any responsive electronically stored information shall be produced in accordance with protocols agreed upon by the parties or as otherwise directed by the Court.

F. If there are no documents or things responsive to a particular request, you should so state in writing. If any responsive document has been lost or destroyed, identify:

(1) the author;

(2) the date of loss or destruction;

(3) the reason for loss or destruction;

(4) the identity of those directing the destruction, if any; and

(5) the substance of the document.

G. If a refusal to provide documents responsive to any request is asserted on the grounds of burden, state in detail the reason(s) for any objection(s), including the number and nature of documents or records needed to be searched and/or produced, the location of the documents, the custodian of the documents, and the number of person hours and costs required to conduct the search.

H. If you contend that any document request is ambiguous or unclear, contact undersigned counsel as soon as possible so that the request can be clarified to avoid unnecessary delays in discovery.

I. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, you are required to supplement and correct your answers and responses on a timely basis.

J. Unless a different time period is indicated in a specific Request or category of Requests below, please produce responsive documents for the time period January 1, 2013 to the present (the "Relevant Time Period").

### REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS

**A. Documents Related to Pleadings[1]**

**Note: There is no time limitation intended for Requests 1-7.**

1. All documents relied on, used, considered, reviewed, or consulted by you to draft or respond to your Complaint(s) and/or Motion for Preliminary Injunction (and supporting

---

[1] The headings herein are for convenience and should not be construed as limiting the plain language of any request.

papers, including expert declarations) and Reply in support thereof (and supporting papers, including expert declarations), and any pleadings or papers filed in any related appeal thereof (collectively "**Injunction Pleadings**").

2. All documents supporting, refuting, or otherwise relating to the allegations in your Complaint(s) and Injunction Pleadings.

3. All documents and things that you intend to offer into evidence or otherwise present or use in connection with any trial, motion, or hearing in the present litigation.

4. All contracts with which you claim Reynolds has tortiously interfered.

5. All documents referring or relating to Authenticom's claim that competition has been harmed as a result of any conduct by Reynolds.

6. All documents referring or relating to Authenticom's claim that it has been injured as a result of any conduct by Reynolds.

7. All documents supporting, refuting, or otherwise relating to the testimony by Stephen M. Cottrell in his declarations in support of Authenticom's preliminary injunction motion, his testimony at the preliminary hearing, and his declaration to the Seventh Circuit.

**B. Documents Relating to Reynolds**

8. All documents (including but not limited to, communications with dealers, vendors, customers, potential customers, DMS providers, automotive manufacturers ("**OEMS**"), employees, agents, consultants, Reynolds, government agencies/entities/representatives or any other person or entity) referring or relating to Reynolds, including but not limited to the following topics:

      a. Reynolds business practices
      b. Reynolds DMS (ERA or POWER)
      c. Reynolds RCI program
      d. Reynolds reporting functions (e.g., query builder, 6910, dynamic reporting).
      e. Access to Reynolds DMS
      f. Data stored on Reynolds DMS
      g. Usernames and/or passwords to Reynolds DMS
      h. Reynolds security protocols or security enhancements
      i. Litigation involving Reynolds (including but not limited to this litigation, litigation involving MVSC, SIS, or any other party)

9. All documents related to Reynolds's technology, including but not limited to Reynolds's security measures, ERAaccess, ERA Link, Report Generator, 6910, Query Builder, 7601, Dynamic Reporting, ERA, POWER, DMS menus, DMS functions, data elements contained in the DMS, and/or the Reynolds Integration Hub.

10. All documents referring or relating to any attempt to access the Reynolds DMS, including but not limited to:

   a. any attempt to obtain log-in credentials to a Reynolds DMS (by you or any third party)
   b. all communications with dealers, vendors, OEMs or others regarding Reynolds DMS usernames, passwords, or other access credentials;
   c. any attempt to obtain access to a Reynolds DMS (by you or any third party)
   d. any attempts to log in to a Reynolds DMS that failed;
   e. any attempt to circumvent or work around security measures of the Reynolds DMS (by you or any third party)
   f. any communication with dealers, vendors, customers, potential customers, DMS providers, OEMS, employees, agents, consultants, or any other person or entity regarding any of the foregoing.

11. All documents referring or relating to any instance in which Authenticom has accessed or attempted to access data from a Reynolds DMS, including but not limited to:

   a. dealers' business and operational data,
   b. consumer data,
   c. OEM data,
   d. Reynolds's data, or
   e. Other third parties' data.

12. All documents referring or relating to any instance in which Authenticom has pulled, extracted, or scraped data from within the Reynolds DMS; or has written back, or pushed data back, into the Reynolds DMS.

13. Documents sufficient to show all data elements (at the data element level) pulled, extracted, or scraped by Authenticom from any Reynolds DMS.

14. All documents referring or relating to the processing loads, burden, or effects that Authenticom's software puts on a Reynolds DMS, including any efforts to minimize, study, quantify, or analyze the effect(s) that Authenticom's data integration services can cause to a Reynolds DMS.

15. All documents referring or relating to actual or potential data corruption on any Reynolds DMS, including but not limited to (1) any policies, technologies, or other measures used by Authenticom to prevent data corruption and (2) any incidents, investigations, or complaints related to data corruption.

16. All documents referring or relating to Authenticom's knowledge or awareness of contractual restrictions on unauthorized third-party access to the Reynolds DMS contained in Reynolds's contracts with dealers. There is no time limitation intended for this Request.

17. All documents referring or relating to Authenticom's knowledge or awareness of Reynolds's intellectual property rights or licenses of intellectual property from third parties.

18. All of Authenticom's communications and agreements with dealers, customers, potential customers, DMS providers, OEMs, employees, agents, consultants, or any other person or entity that in any way relate to any of the following topics: (i) Reynolds, (ii) the Reynolds DMS, or (iii) Reynolds's intellectual property.

19. All documents referring or related to any receipt, storage, compilation, accessing, encryption, access rights to, or transmission of any login credentials to a Reynolds DMS (including user names or passwords), as well as any policies or practices related to Reynolds DMS login credentials.

20. All documents that include a username and/or password to any Reynolds DMS.

21. All documents indicating any security measures taken to secure any information produced in response to Request Number 20.

22. Documents sufficient to show every means by which Authenticom has accessed a Reynolds DMS.

23. Documents sufficient to show every means and method by which Authenticom has obtained data from a Reynolds DMS.

24. All communications between Authenticom and Reynolds.

25. All communications between Authenticom and any third party discussing or referring to any communications that are responsive to Request Number 24.

26. All internal Authenticom communications discussing or referring to any communications that are responsive to Request Number 24.

C. **Documents Relating to Authenticom's Alleged "Dealer Data Integration"[2]**

27. All documents relating to Reynolds's efforts to prevent Authenticom from gaining access to the Reynolds DMS, whether through the use of dealer login credentials or otherwise; including but not limited to all documents relating to Authenticom's responses to those efforts and efforts to circumvent Reynolds's efforts to bar access.

28. All code used by Authenticom to access a Reynolds DMS, including, but not limited to code for any "user emulation" software.

---

[2] For all requests referring to "Dealer Data Integration," that term is intended to have the meaning alleged in your Complaint.

29. All communications between (i) Authenticom and (ii) any Reynolds DMS customer(s), RCI vendors, or OEMS, regarding Authenticom's provision of "dealer data integration" (or data extraction) products and services (including but not limited to DealerVault).

30. All documents referring or relating to competition in the alleged market for "Dealer Data Integration" services.

31. All documents referring or relating to Authenticom's transfer of "Dealer Data Integration" services from its Authenticom product to its DealerVault product.

32. Any market communications or presentations describing Authenticom's "Dealer Data Integration" products or services.

33. All documents referring or relating to any instance in which Authenticom has used or attempted to use a dealer's existing log-in credentials to access the Reynolds DMS or in which Authenticom has obtained or attempted to obtain log-in credentials created for it by a dealer in order to access the Reynolds DMS.

34. All agreements with dealers, vendors, OEMs or any other person or entity for whom Authenticom purports to provide "data integration" (or data extraction) products or services involving a Reynolds DMS customer. This Request is limited to agreements that were in effect at any time from January 1, 2017 to the present.

35. All documents purporting to give Authenticom authorization to access a Reynolds DMS or other Reynolds product or service.

36. All documents identifying to a Reynolds DMS customer the specific data elements available to Authenticom when DMS credentials are provided, the specific data elements taken by Authenticom, and every destination (vendor or otherwise) to which each data element taken from a Reynolds DMS are sent.

37. All documents purporting to appoint Authenticom as an agent of a Reynolds DMS customer.

38. All documents relating to Authenticom's status as a certified provider in Dealertrack's "Opentrack" program, including but not limited to any agreements between Authenticom and Dealertrack, and internal or external discussions of the benefits of such certification.

39. All documents relating to Authenticom's status as a certified provider for any DMS provider other than Dealertrack, including but not limited to any agreements between Authenticom and such other DMS provider(s), and internal or external discussions of the benefits of such certification.

40. All documents referring or relating to any complaints about Authenticom, its products, or its services, including but not limited to any complaints from vendors, dealers, or OEMs regarding:
   a. Authenticom accessing, scraping, sharing, compiling, transmitting, disclosing, or otherwise using data without proper permission or authorization;
   b. any issues related to data quality, accuracy and/or timeliness;
   c. any system performance issues;
   d. Authenticom's compliance with contracts, policies, regulations and/or laws.

**D. Security Issues**

41. All documents referring or relating to Authenticom's cyber security, including but not limited to any policies, measures, technologies (hardware or software), encryption protocols, training, audits, or testing related to cyber security.

42. All documents supporting, refuting, or relating to any efforts by Authenticom to to:
   a. Identify and classify data taken from the DMS;
   b. Meet all data security and data privacy legal requirements for any data taken from the DMS;
   c. Protect sensitive consumer information;
   d. Secure and monitor credentials (including but not limited to, two-factor authentication);
   e. Secure transmission of data from or to the DMS to or from any other system.

43. All documents supporting, refuting, or relating to your contention that "Authenticom has never had a security breach." There is no time limitation intended for this Request.

44. All documents referring or related to Authenticom's network architecture, including its servers, endpoints, firewalls, routers, and data centers, as well as any configurations or settings thereof.

45. All contracts, terms of use, conditions, and other documents referring or related to Authenticom's use of Microsoft Azure and any other cloud data hosting services used by Authenticom.

46. All documents referring or relating to any engagement by Authenticom of any outside expert(s) or consultant(s) for the purpose of improving or assessing Authenticom's data security practices (including but not limited to Microsoft Azure, if you contend that Microsoft Azure is responsive to this topic).

47. All documents referring or relating to any security issues, privacy issues, breaches, or other complaints regarding any vendor to which Authenticom has provided data, as well as any investigations, audits, or other efforts by Authenticom to ensure its vendors'

compliance with all applicable data security laws, data privacy laws, and other applicable confidentiality requirements (contractual or otherwise).

48. All documents referring or relating to any security issues in any way relating to Authenticom, its products, or its services, including but not limited to potential or actual security breaches, unauthorized access to log-in credentials, disclosure of third party information, potential disclosure of third-party information, or concerns or recommendations raised about Authenticom's data security practices.

49. All documents referring or relating to any security issues in any way relating to any other provider of "dealer data integration" (or data extraction) products or services, including but not limited to potential or actual security breaches, unauthorized access to log-in credentials, disclosure of third party information, potential disclosure of third party information, or concerns or recommendations raised about such other "dealer data integration" provider's data security practices.

**E. Alleged "Dealer Data Integration" Market**

50. All documents referring to or related to a "Dealer Data Integration" market, including, but not limited to, any documents referring to or related to Authenticom's share of that market.

51. All documents that report, describe, summarize, analyze, discuss, or comment on the features (e.g., performance, reliability, data integrity, security) or pricing of any company's dealer data integration services.

52. All documents relating to any "Dealer Data Integration" products offered by any third party, including, but not limited to, InDesign Data / 1DMS; Superior Integrated Solutions; SelectQu; New Freedom Data Resources; The Stone Eagle Group; and ProQuotes Inc.

53. All documents supporting, refuting, or relating to your contention that there is a valid and recognizable market and/or single-brand aftermarket for dealer data integration services on, to, or with the Reynolds DMS, as well as any documents relating to competition in such alleged market(s).

54. Documents sufficient to identify each vendor customer of Authenticom's alleged Dealer Data Integration services, when those services began and ended, and whether they included access to a Reynolds's DMS.

55. For dealer customers of Authenticom's that are also Reynolds DMS customers, documents sufficient to identify each dealer customer of Authenticom's alleged Dealer Data Integration services, and when those services began and ended.

**F. DMS Market**

56. All documents that report, describe, summarize, analyze, discuss or comment on competition from, or the marketing or sales strategies, market shares or projected market shares, market conditions or the profitability of any company in the DMS market or the market for "Dealer Data Integration" services, including all competitive analysis, strategic plans, long-range plans and business plans of any such company.

### G. Alleged Harm to Authenticom/Damages

57. Authenticom's audited and unaudited monthly, quarterly and annual financial statements (income statements, balance sheets, statements of cash flow, and statements of changes in shareholder's equity) for the past ten years, including all related notes and disclosures made to Authenticom's investors and/or lenders.

58. Any interim financial statements covering the time period since Authenticom's latest annual or quarterly financial statement.

59. Authenticom's monthly, quarterly, and annual detailed income statements and detailed balance sheets breaking out revenue, expenses, assets and liabilities by each account, for the past ten years.

60. Documents sufficient to show Authenticom's monthly, quarterly and annual sales revenue and profits related to Authenticom's "dealer data integration" (or data extraction) products and services, from their first sale to the present, with sufficient detail to show for each product: (a) the product name, number, or other identifier; (b) the amount of revenue and profits earned as a result of sale; (c) the business division responsible for the sale; (d) the distribution channel for the sale; (e) the region where the sale occurred; and (f) the customer name.

61. Documents sufficient to show Authenticom's monthly, quarterly and annual expenses related to Authenticom's "dealer data integration" (or data extraction) products and services, from their first sale to the present, with sufficient detail to show: (a) the product name, number, or other identifier related to the expenses; (b) the type of expense (e.g., taxes including excise taxes, selling expenses, marketing expenses, research & development expenses, overhead, legal expenses, royalty expenses); (c) the nature of the expense (e.g., fixed, semi-fixed or variable); (d) the business division related to the expense; (e) the distribution channel related to the expense; (e) the region where the expense was incurred; and (f) the customer name related to the expense.

62. Documents sufficient to show Authenticom's revenues and expenses, by month, from the first sale to the present, from any alleged Dealer Data Integration services related to dealers that license a Reynolds DMS.

63. Any forecasts or projections (e.g., revenue forecasts, cost of goods sold forecasts, capital expenditure forecasts, etc.) relating to Authenticom's "dealer data integration" (or data extraction) products and services, including but not limited to (a) forecasts included in any loan applications; and (b) forecasts attached to public or securities offering documents. This Request is limited to documents generated on or after January 1, 2017.

64. Any forecasts or projections (e.g., revenue forecasts, cost of goods sold forecasts, capital expenditure forecasts, etc.) relating to Authenticom's "dealer data integration" (or data extraction) products and services related to dealers that license a Reynolds DMS, including but not limited to (a) forecasts included in any loan applications; and (b) forecasts attached to public or securities offering documents. This Request is limited to documents generated on or after January 1, 2017.

65. Documents sufficient to show Authenticom's long-term gross profit, operating profit, incremental profit, and net profit forecasts, budgets and projections. To the extent you have any confusion regarding the qualifier "long-term," please provide the longest term forecasts, budgets and projections that Authenticom currently maintains.

66. Documents sufficient to show Authenticom's long-term gross profit, operating profit, incremental profit, and net profit forecasts, budgets and projections related to alleged Dealer Data Integration products and services related to dealers that license a Reynolds DMS. To the extent you have any confusion regarding the qualifier "long-term," please provide the longest term forecasts, budgets and projections that Authenticom currently maintains.

67. All documents referring or relating to the value of Authenticom or its products or services, whether prepared internally or by third parties. This Request is limited to documents generated on or after January 1, 2017.

68. All documents supporting, refuting, or otherwise relating to the "DMS Connections" chart on page 27 of Consolidated Brief for Plaintiff-Appellee Authenticom filed in the Seventh Circuit on September 5, 2017 (or any subsequent version thereof).

69. Documents sufficient to identify the vendors and dealers that comprise the "R&R" line "DMS Connections" chart on page 27 of Consolidated Brief for Plaintiff-Appellee Authenticom filed in the Seventh Circuit on September 5, 2017 (or any subsequent update version thereof).

70. Documents sufficient to identify the type of "connection" referenced in the "R&R" line "DMS Connections" chart on page 27 of Consolidated Brief for Plaintiff-Appellee Authenticom filed in the Seventh Circuit on September 5, 2017 (or any subsequent version thereof).

71. All documents relating to any harms or injuries you claim to have suffered as the result of the Seventh Circuit's stay of the preliminary injunction in this litigation, including any serious and irreversible harm you claim to have suffered; any significant customer attrition and loss of revenue; any net cash flow; any employee layoffs; and any collection or foreclosure activities by any bank or other creditor.

72. All documents relating to the April 16, 2014 Credit Agreement, promissory note, and related loan documents between Authenticom and others and BMO Harris Bank N.A.,

including Authenticom's compliance or failure to comply with its obligations; any defaults by Authenticom; all forbearance agreements relating to these obligations and proposed additional agreements or extensions of agreements; all documents provided to BMO Harris Bank regarding financial forecasts and alternative scenarios; and all related documents to or from or involving BMO Harris Bank.

73. All documents relating to any attempts by Authenticom to refinance its debt currently at BMO Harris Bank with any other bank, lender, or other institution or lender, including Citizens State Bank, including all documents provided to any potential lender or financier regarding financial forecasts and alternative scenarios; and all related documents to or from or involving potential lenders or financiers.

74. All documents relating to any alleged need for an injunction pending the outcome of this litigation in order to avoid insolvency, including but not limited to all documents relating to any financing or insurance arrangements affecting Authenticom's ability to continue in business pending the outcome of this litigation.

75. All agreements under which any third party has advanced, loaned, contributed, or donated (or will advance, loan, contribute, or donate) funds towards Authenticom's legal expenses in this action.

### H. Corporate Documents

76. Authenticom's (and DealerVault's, to the extent DealerVault is a separate entity) articles of incorporation, articles of organization, certificates of formation, or other documents that evidence Authenticom's formation. There is no time limitation intended for this Request.

77. All documents referring or relating to Authenticom's (and DealerVault's, if applicable) formal or informal codes of ethics or codes of conduct, including but not limited to Authenticom's practices or policies regarding third parties' proprietary or confidential information or third parties' intellectual property. There is no time limitation intended for this Request.

78. Documents, such as organizational charts, sufficient to identify Authenticom's corporate structure from 2012 to the present, including identifying all of Authenticom's officers, directors, managers, and department heads during this period.

79. All minutes from meetings of Authenticom's board of directors, managers, or members that refer, relate to, or mention, Reynolds, CDK, or this litigation.

### I. Experts

80. All documents provided to, prepared by, or considered by any expert or consultant retained by Authenticom in connection with the present litigation, except for such documents that are specifically exempted from discovery by Federal Rule of Civil Procedure 26(b)(3)-(4).

81. For any expert retained by Authenticom to testify at trial in the present litigation, all hearing transcripts, deposition transcripts, declarations, affidavits, or expert reports containing testimony or other statements made in connection with any other legal proceeding.

82. All documents referring or relating to Authenticom's policies or practices concerning preservation, retention, storage, or destruction of any documents or electronically stored information.

### J. Litigation and Investigation Documents

83. All documents requested by or produced to CDK in this litigation.

84. All documents provided or produced to Authenticom by any third party (pursuant to subpoena or otherwise) relating to this litigation or responsive to any requests for production in this litigation.

85. All documents relating to communications by you with any third parties regarding this litigation, issues relating to the litigation, Reynolds's integration, and/or RCI certification including but not limited to press releases, communications from or to the press, communications from or to customers, communications from or to vendors, communications from or to other "Dealer Data Integrators", any WebEx, Webinars, presentations, and/or speeches.

86. All communications to or from any government agency, including but not limited to the Federal Trade Commission, relating to Reynolds or any of Reynolds's business practices and/or any alleged market for "Dealer Data Integration". There is no time limitation intended for this Request.

87. All communications to or from any third party referring or relating to any complaints to, or investigation by, the Federal Trade Commission relating to Reynolds or any of Reynolds's business practices and/or any alleged market for "Dealer Data Integration". There is no time limitation intended for this Request.

88. All communications between Authenticom (and/or its attorneys) and any of the following third parties (and/or their respective attorneys) relating to this litigation:

   a. Brian Maas / California New Car Dealers Association
   b. Chris Longpre / Lexus of Westminster
   c. Michael Korp / Open Recalls / Ghaben Auto Group
   d. Wayne Fitkin / Walter's Automotive Group
   e. Paul Whitworth / Cox Automotive, Inc.
   f. Loop, LLC (a/k/a AutoLoop)
   g. Dominion Enterprises

89. All communications relating to the "Webinar" hosted on February 16, 2017 by Brian Ankney, with "featured guests" Steve Cottrell and Mike Esposito, including but not limited to any communications discussing the planning, substance, logistics of, or reactions to, the Webinar.

### K. Authenticom Investor Payments and Objections

90. All documents relating to any employee or investor of Authenticom (including DealerVault) relating to any disagreements they expressed regarding Authenticom's business practices or its development of DealerVault; or any objections or concerns they expressed regarding the management and future direction of Authenticom.

91. All documents related to any ownership or investment interest held by any investor in Authenticom (including DealerVault), including specifically the buyout or similar payment relating to any such interest, including, but not limited to regarding the following individuals:

   a. Brian Clements
   b. Steven Dolezel
   c. Travis Robinson
   d. Russell Gentry

DATED: October 13, 2017

Respectfully submitted,

s/ Brian T. Ross
Kathy Patrick
kpatrick@gibbsbruns.com
Aundrea K. Gulley
agulley@gibbsbruns.com
Brian T. Ross
bross@gibbsbruns.com
Brice A. Wilkinson
bwilkinson@gibbsbruns.com
Ross M. MacDonald
rmacdonald@gibbsbruns.com
**GIBBS & BRUNS, LLP**
1100 Louisiana, Suite 5300
Houston, Texas 77002
Telephone: 713-650-8805
Facsimile: 713-750-0903

Michael P.A. Cohen
MCohen@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
Suite 100
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: 202-747-1900
Facsimile: 202-747-1901

John S. Skilton
JSkilton@perkinscoie.com
Charles G. Curtis, Jr.
CCurtis@perkinscoie.com
Michelle M. Umberger
MUmberger@perkinscoie.com
**PERKINS COIE LLP**
One East Main Street, Suite 201
Madison, WI 53703
Telephone: 608-663-7460
Facsimile: 608-663-7499

*Attorneys for Defendant*
*The Reynolds and Reynolds Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2017, I caused a true and correct copy of the foregoing The Reynolds and Reynolds Company's First Set of Requests of Production of Documents and Things for Plaintiff Authenticom, Inc. to be served by email upon the following individuals:

Jennifer L. Gregor (jgregor@gklaw.com)
Allison W. Reimann (areimann@gklaw.com)
Michael N. Nemelka (mnemelka@kellogghansen.com)
Aaron M. Panner (apanner@kellogghansen.com)
David L. Schwarz (dschwarz@kellogghansen.com)
Kevin J. Miller (kmiller@kellogghansen.com)
Derek T. Ho (dho@kellogghansen.com)
Joshua Hafenbrack (jhafenbrack@kellogghansen.com)
Joanna T. Zhang (jzhang@kellogghansen.com)

*s/ Brian T. Ross*
Brian T. Ross