# Exhibit 12



Aundrea K. Gulley
Partner
agulley@gibbsbruns.com
713.751.5258

April 30, 2017

Michael Namelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
Sumner Square
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
mnemelka@kellogghansen.com

RE: Authenticom Litigation

Dear Mike,

The allegations against Reynolds in the threatened lawsuit that you provided to me earlier this week are wholly without merit, contain untruths (including false accusations of statements by respected Reynolds' executives), and cause serious concerns regarding Authenticom's, and perhaps others' on Authenticom's behalf, inducement of breaches of contractual confidentiality and nondisclosure provisions.

In addition, the allegations confirm that Authenticom has knowingly induced Reynolds' customers to breach their agreements with Reynolds in Authenticom's effort to profit from those breaches at Reynolds' expense.

Without waiver of any of Reynolds' rights or defenses, I write to: (1) ensure that your client is preserving documents relevant to Reynolds' claims against Authenticom, DealerVault and Steve Cottrell, and (2) formally put you and your client on notice that the draft complaint contains confidential and proprietary information that you or your client have evidently procured in violation of Reynolds' contracts and applicable law, which would be compounded if such information is placed in the public record in the course of your filing.

1.  Duty to Preserve Evidence

For the avoidance of any doubt, The Reynolds and Reynolds Company ("Reynolds") hereby notifies Authenticom, Inc., DealerVault, Steve Cottrell and all of their related affiliates, agents, investors, and employees (collectively referred to herein as "Authenticom") of a dispute relating to Authenticom's tortious interference with Reynolds's written contracts with third parties including, without limitation, DMS customers and Reynolds Certified Interface (RCI) program participants; and Authenticom's unlawful access to Reynolds' DMS system by, inter alia, hostile

Michael Namelka
April 30, 2017
Page 2

integration, attempted hostile integration, or otherwise accessing or attempting to hostilely access Reynolds proprietary systems and software without authorization. Reynolds expects to assert claims against Authenticom in the near future ("Potential Litigation").

Because of the Potential Litigation, Authenticom is legally obligated to preserve all documents, electronically stored information ("ESI") and other evidence relevant to the Potential Litigation. *A litigation hold notice detailing these obligations is attached.*

   2. **Confidentiality**

In addition, your draft complaint includes several references that indicate a breach of contractual confidentiality provisions. You have asked me to quickly provide you with the information that we believe should be redacted from the 79 page draft complaint that you recently provided. Based on what you have provided, at least the following allegations disclose confidential and/or proprietary information (references are to paragraphs in the redacted draft complaint that you provided to me):

- Allegations concerning the details of Reynolds confidential contracts, including without limitation:

    o Paragraph 49
    o Paragraph 86 and 195, as they relate to Reynolds.
    o Paragraph 96, as it relates to Reynolds.
    o Paragraphs 140-142 and 146, et seq.
    o Paragraph 125, et seq. as it relates to Reynolds' contracts to the extent not in the public record in previous litigation and previous communications with Authenticom (these paragraphs are also wholly misleading as to timing of the Reynolds contractual provisions and false in several other material respects).
    o Setting aside the false characterization in Paragraph 149, **paragraph 149 specifically quotes at length from a letter from Reynolds to another one of your clients in an unrelated matter**. Communications regarding that agreement with your other client are confidential, as you know from recent litigation for that client in which you were required to take immediate measures to remedy your breach after wrongly filing that contract in the public record. To my knowledge, you have access to those confidential communications (and perhaps other information described elsewhere herein) only because of your role as counsel for that separate client. I am uniquely concerned to see confidential communications with eLead appear in your draft Authenticom complaint, as described in more detail below.

- In addition, your allegations in Paragraph 110, et seq regarding the contents of a confidential settlement agreement (which you outrageously attempt to spin as a

Michael Namelka
April 30, 2017
Page 2

    "horizontal conspiracy") appear to have been wrongfully procured from a source not authorized to provide it. This fact is obvious from the face of the document from which you have quoted liberally (albeit misleadingly). You have told me that you believe this document is a public document. I have seen no evidence of that, and the document itself belies that claim. If you stand by that assertion, please immediately provide me with relevant evidence of your public source for that document to save unnecessary expense.

- You have also elected to include information relating to Authenticom's own contract with Reynolds, despite its violation of the mutual confidentiality provision Authenticom drafted and inserted into that contract (e.g., Paragraph 184 & 220).

You have redacted the complaint that you provided to me, and it is only in draft form. In addition, you have provided only a limited time for me to review it in light of your desire to file suit immediately in advance of CDK's earnings call. You and your client's obligations to ensure that you do not reveal confidential, proprietary, and commercially sensitive information in the public record remain in full force and effect, regardless of whether I have specifically noted it above. Further, redaction alone is not likely to cure the breaches of confidentiality that are apparent in the draft complaint.

In addition to the request to redact this information from the public record, please confirm that you have not already shared it with CDK, your client, or any other of your firm's clients or other third parties, including any litigation investors. Please also ensure that you have instructed your client or any agents operating on its or his behalf to cease inducing confidentiality breaches.

Finally, I must note that this is your third new client to sue or threaten to sue Reynolds in the last four months. Your other clients have NDAs and/or confidential contracts with Reynolds that prohibit them from sharing confidential and proprietary information with your newest client and each other. On one occasion already, you flagrantly violated one of those contracts by filing its contents in the public record. I again caution you regarding the confidentiality obligations of your various clients and the obvious sensitivity of technological and other confidential, proprietary, and commercially sensitive information in a competitive software and hardware marketplace. Reynolds reserves all of its rights with respect to violations of these confidentiality obligations as well as with respect to Reynolds' intellectual property.

                                      Regards,

                                      Aundrea K. Gulley

Encl.

# **LITIGATION HOLD NOTICE TO AUTHENTICOM, DEALERVAULT, AND STEVE COTTRELL REGARDING DUTY TO PRESERVE EVIDENCE (INCLUDING ELECTRONICALLY STORED INFORMATION)**

The Reynolds and Reynolds Company ("Reynolds") hereby notifies Authenticom, Inc., DealerVault, Steve Cottrell and all of their related affiliates, agents, investors, and employees (collectively referred to herein as "Authenticom") of a potential dispute relating to Authenticom's tortious interference with Reynolds's written DMS and Reynolds Certified Interface (RCI) contracts with automobile dealers and other third-parties and its unlawful access to Reynolds' DMS system. Reynolds expects to assert claims against Authenticom for this interference in the near future ("Potential Litigation").

Because of the Potential Litigation, Authenticom is legally obligated to preserve all documents, electronically stored information ("ESI") and other evidence that might become relevant in the Potential Litigation. These obligations arise out of the discovery and electronic discovery rules that apply in the United States Federal Courts, Wisconsin courts, as well as in most other state courts. Authenticom's duty to preserve information extends to information in any form including without limitation: internal memoranda, email, writings, webinars, papers, drawings, graphs, charts, accounts, photographs, images or graphics, audio files, electronic and sound recordings, video files, data and data compilations, studies, calendar entries, telephone messages, voicemails, instant messaging (including Gchat, Facebook Messenger or any other service), text messaging, social media, books, physical materials or tangible items or things. Relevant information includes information stored in any medium, device or location including without limitation: Outlook; applications or databases such as Word, Excel, PowerPoint, Access, Lotus Notes; personal drives or shared network drives; cloud-based services such as Dropbox, iCloud, and Google Drive; hard drives; Internet or Intranet site content or Web applications; external storage devices such as flash drives, memory sticks, thumb drives; cellular phones, smartphones, Blackberrys, PDAs, CDs, DVDs, external hard drives, floppy disks, audio/video tapes, microfiche, microfilm or aperture cards, and any other computer, magnetic or electronic storage medium.

Authenticom is obligated to cease its normal document retention/destruction practices and take all necessary steps to protect and preserve any documents, ESI and other evidence in its possession or control, related to the above-described issues. The documents and ESI Authenticom is legally obligated to preserve includes all information potentially relevant to the Potential Litigation, including without limitation, the following:

1. All communications and documents relating to The Reynolds & Reynolds Company ("Reynolds").

2. All communications and documents relating to Reynolds' contracts or contractual provisions.

3. All communications and documents relating to Authenticom's provision of services to (a) Reynolds dealership customers, (b) third party vendors that offer services to Reynolds dealership customers, and (c) original equipment manufacturers ("OEM") whose dealerships utilize Reynolds DMS services.

4. All communications and documents relating to Authenticom's access or attempts to access Reynolds' dealer management system including both POWER and ERA ("DMS") or any Reynolds software, hardware, or program.

5. All communications with (and documents concerning any communications) investors (including litigation investors) regarding Reynolds Certified Interface ("RCI") program, Reynolds, and/or gaining access to Reynolds' DMS.

6. All communications and documents regarding Authenticom's attempts to participate in Reynolds's RCI program.

7. All communications and documents regarding the RCI program.

8. All communications and documents regarding third-party vendor and/or OEM access to Reynolds' DMS or any Reynolds software, hardware, or program.

9. All communications and documents regarding data security, including but not limited to (i) Authenticom's data security policies and measures; (ii) any third-party vendor's data security policies and measures; (iii) any data security breaches, incidents, or concerns, whether at Authenticom, a third-party vendor, or automobile dealer; and (iv) any and all attempts by Authenticom to comply with any data security or privacy laws including, without limitation, in the United States, Canada, and Europe.

10. All contracts between Authenticom and any third-party vendor relating to Authenticom's services.

11. All contracts between Authenticom and any automobile dealer relating to Authenticom's services.

12. All communications and (documents concerning any communications) with any automobile dealership regarding access to DMS data, whether by Authenticom, third-party vendors, intermediary access providers, or otherwise.

13. All communications (and documents concerning any communications) with any third-party vendors of Authenticom's regarding Reynolds, RCI, or access to DMS data.

14. All communications (and documents concerning any communications) with any automobile dealership regarding Reynolds or RCI.

15. All communications (and documents concerning any communications) with any OEM regarding Reynolds or RCI.

16. All communications (and documents concerning any communications) with any third party regarding Reynolds or RCI.

17. All communications (and documents concerning any communications) with state or national automobile dealer associations, or any other industry or trade group, publication or forum, regarding Reynolds or RCI.

18. All communications (and documents concerning any communications) with government officials, employees, agencies, departments, and/or any government entity regarding Reynolds or RCI.

19. All communications (and documents concerning any communications) between Authenticom, on the one hand, and Reynolds, on the other hand.