# Exhibit 4

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

213.617.4206 direct
lcaseria@sheppardmullin.com

File Number: 48KZ-266044

June 5, 2018

**VIA EMAIL**

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Ste. 400
Washington, DC 20036-3215
mnemelka@kellogghansen.com

Peggy J. Wedgworth
Milberg Tadler Phillips Grossman, LLP
One Pennsylvania Plaza
New York, NY 10119
pwedgworth@milberg.com

**\*\*\*INCLUDES INFORMATION DESIGNATED AS HIGHLY CONFIDENTIAL\*\*\***

Re:   *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864; MDL No. 2817 (N.D. Ill.)

Dear Mike:

I write this letter to follow up on certain issues discussed in our telephonic meet and confers on May 18, 21, and 22, 2018, and also to correct several inaccuracies in your letters dated May 25 and 31, 2018.

### I.  FTC Productions

Thank you for your confirmation that the Individual Plaintiffs commit to producing transcripts, recordings, or other records of any FTC interviews in the FTC's joint conduct investigation. With that, we confirm that Reynolds will do the same. For the avoidance of doubt, this agreement is not intended to include any privileged records – e.g., attorney notes.

### II.  Custodial Documents

On May 25, 2018, Plaintiffs served Reynolds with 136 new requests for production, 168 proposed new search strings, and 24 proposed new custodians (for a total of 225 requests for production, 277 proposed search strings, and 38 proposed custodians). For Reynolds to proceed with previously contemplated custodial discovery before these massive, new discovery demands are negotiated and resolved (let alone before they were even served) is an obvious

Michael N. Nemelka
June 5, 2018
Page 2

recipe for wastefulness and duplication of effort. Reynolds strongly objects to the imposition of that burden.

However, now that Reynolds at least has seen the total landscape of Plaintiffs' requests, unreasonable as those requests are, Reynolds has continued to assess the possibility of resuming custodial discovery before the—likely arduous—process of negotiating a reasonable set of discovery criteria is completed. While Reynolds remains concerned about the inevitable duplication and undue expense it faces as a result of Plaintiffs' positions, Reynolds is preparing to resume work on custodial discovery. Reserving all of its rights, Reynolds is taking this approach in an abundance of good faith and to ensure that it does what it can to meet the various discovery milestones in the case.

### III.     Reynolds's Preservation of Documents

With respect to document preservation, you raised a number of concerns in a letter dated May 11, 2018, to which we responded in detail on May 16, 2018. On our subsequent meet and confer call, the only follow-up question you raised was whether Bob Schaefer's ESI had been preserved.

In an effort to be responsive and constructive, but without waiver of any privilege, we confirmed on our call that Mr. Schaefer's ESI has in fact been preserved in good faith since the date Reynolds received the draft MVSC complaint in January 2017. However, as explained in our May 16 letter, the exact details of Reynolds' litigation hold policies and procedures, including which custodians were place on litigation hold and when and in what manner or matter, are privileged. *Muro v. Target Corp.*, 250 F.R.D. 350, 360 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009). As such, we did not discuss the details of specific devices with you on our call, and decline to do so here.

More broadly, Plaintiffs' threats of a "strategy for dealing with" your unfounded accusations regarding Reynolds's document preservation are not well taken. To the extent that Plaintiffs choose to follow through with this misguided strategy—which is apparently based on nothing more than a difference in volume of the Defendants' respective FTC productions—please explicitly state whether you are prepared to engage in a device-by-device, date-specific discussion of all of your clients' litigation hold efforts, including but certainly not limited to those undertaken in response to the litigation hold request directed to Authenticom and Mr. Cottrell on April 30, 2017.

### IV.     Reynolds's Responses to Authenticom's RFPs

The portion of your May 31, 2018 letter that purports to memorialize the parties' meet and confer discussions regarding Reynolds's responses to Authenticom's RFPs contained numerous inaccuracies and ignored or revised large portions of the parties' discussions. Below is an accurate memorialization of what the parties discussed:

Michael N. Nemelka
June 5, 2018
Page 3

**Authenticom RFP 80**

In RFP 80, Authenticom requested documents relating to Reynolds's monthly spend with independent data integrators from 2013 to the present. Reynolds objected on numerous grounds, including relevance, proportionality, breadth, and burden, and also because the request is duplicative or cumulative of previously served RFPs, many of which have already been discussed and resulted in agreements.

The parties did not reach any agreements as to RFP 80. However, we stated that we would further discuss and consider this request with Reynolds, which we are in the process of doing.

At this time, Reynolds notes that its monthly spend with independent data integrators has no bearing on whether Reynolds engaged in any conduct that violated the antitrust laws, nor does it have any bearing on Authenticom's injury or amount of damages, if any. As a result, the RFP seeks documents that are irrelevant and not proportional to the needs of the case.

**Authenticom RFP 81**

In RFP 81, Authenticom requested documents relating to "the potential or expressed inability of vendors to afford the up front, minimum, and/or monthly fees Reynolds charges through the RCI program, including but not limited to any communications with third party vendors in which the third party indicated it could not afford RCI's up front, minimum, and/or monthly fees." Reynolds objected on numerous grounds, including relevance, proportionality, breadth, and burden, and also because the request is duplicative or cumulative of previously served RFPs, many of which have already been discussed and resulted in agreements.

The parties did not reach any agreements as to RFP 81. Instead, Reynolds stated that it would consider search terms proposed by Authenticom in connection with RFP 81, and agreed to by all plaintiffs, and that any further discussions or meet and confers regarding RFP 81 could take place in the context of those discussions.

However, Reynolds notes that whether vendors had a potential or actual inability to afford RCI, and what they said in that regard, has no bearing on whether Reynolds engaged in any conduct that violated the antitrust laws, nor does it have any bearing on Authenticom's injury or amount of damages, if any. As a result, the RFP seeks documents that are irrelevant and not proportional to the needs of the case.

**Authenticom RFP 82**

In RFP 82, Authenticom requested documents "concerning any vendor reducing the services obtained through the RCI program in connection with (or as a result of) any price increases for those services." Reynolds objected on numerous grounds, including relevance, proportionality, breadth, and burden, and also because the request is duplicative or cumulative of previously served RFPs, many of which have already been discussed and resulted in agreements.

Michael N. Nemelka
June 5, 2018
Page 4

The parties did not reach any agreements as to RFP 82. Instead, Reynolds stated that it would consider search terms proposed by Authenticom in connection with RFP 82, and agreed to by all plaintiffs, and that any further discussions or meet and confers regarding RFP 82 could take place in the context of those discussions. To the extent that Reynolds agrees to respond to this RFP, it will also search centralized files reasonably expected to contain responsive material.

However, Reynolds notes that whether vendors reduced services obtained through RCI has no bearing on whether Reynolds engaged in any conduct that violated the antitrust laws, nor does it have any bearing on Authenticom's injury or amount of damages, if any. As a result, the RFP seeks documents that are irrelevant and not proportional to the needs of the case.

**Authenticom RFP 83**

In RFP 83, Authenticom requested documents "concerning any instance in which a Reynolds employee, agent, or independent contractor sent a dealership user-id and/or password in an unencrypted format through email." Reynolds stated numerous objections, but notwithstanding those objections, responded that it was willing to consider search terms proposed by Authenticom in connection with RFP 83, and agreed to by all plaintiffs, and that any further discussions or meet and confers regarding RFP 83 could take place in the context of those discussions. Reynolds has also made clear that to the extent it agrees to search for materials responsive to this RFP, it will only search for documents containing both user ids and passwords, not user ids alone. Emails containing user ids without passwords are not relevant to any claim or defense in this case and it would not be proportional to the needs of the case to force Reynolds to undertake the burden of gathering or producing such material.

**Authenticom RFP 84**

In RFP 84, Authenticom requested certain documents relating to both vendors and dealers and their use of DMI or Integralink during the "wind down period" described in the February 18, 2015 Data Exchange Agreement. Reynolds objected on numerous grounds, including that dealers (as opposed to vendors) did not "use" DMI or Integralink. During the parties' meet and confer, Reynolds suggested clarifying this request to include vendors only and you stated that this proposal sounded reasonable and that you would discuss it with co-counsel. Please let us know if we have an agreement.

**Authenticom RFP 85**

In RFP 85, Authenticom requested all invoices for all vendors that used the RCI program from 2011 to the present. Reynolds objected on numerous grounds, including relevance, proportionality, breadth, and burden, and also because the request is duplicative or cumulative of previously served RFPs, many of which have already been discussed and resulted in agreements. In particular, Reynolds has already produced RCI pricing data consistent with the parties' prior discussions and agreements (see REYMDL0037507). Reynolds does not see any reason to undertake the burden of searching for, collecting, and producing individual invoices that would be duplicative and cumulative of the information contained in REYMDL0037507.

Michael N. Nemelka
June 5, 2018
Page 5

In your letter, you propose that Reynolds provide a very large sample that covers seven and a half years of RCI invoices for forty different vendors. Again, Reynolds does not see any reason to undertake this burden when all RCI pricing data for that period has already been made available through REYMDL0037507.

**Authenticom RFP 86**

In RFP 86, Authenticom requested all invoices for all dealers that used a Reynolds DMS from 2011 to the present. Reynolds objected on numerous grounds, including relevance, proportionality, breadth, and burden, and also because the request is duplicative or cumulative of previously served RFPs, many of which have already been discussed and resulted in agreements. Also, as we informed you during our telephonic meet and confer, transactional data for products purchased by dealers was produced as part of Reynolds's May 9, 2018 production, consistent with the parties' prior discussions and agreements. Reynolds does not see any reason to undertake the burden of searching for, collecting, and producing individual invoices that would be duplicative and cumulative of the information produced on May 9.

In your letter, you propose that Reynolds provide a very large sample that covers seven and a half years of DMS invoices for one hundred different dealers. Again, Reynolds does not see any reason to undertake this burden when transactional data for products purchased by dealers has already been made available.

**Authenticom RFP 87**

In RFP 87, Authenticom requested documents relating to the syndication or commingling of data following the February 18, 2015 Date Exchange Agreement. Reynolds objected on numerous grounds, including relevance, proportionality, breadth, and burden, and also because the request is duplicative or cumulative of previously served RFPs, many of which have already been discussed and resulted in agreements.

The parties did not reach any agreements as to RFP 87. Instead, Reynolds stated that it would consider search terms proposed by Authenticom in connection with RFP 87, and agreed to by all plaintiffs, and that any further discussions or meet and confers regarding RFP 87 could take place in the context of those discussions. To the extent that Reynolds agrees to respond to this RFP, it will also search centralized files reasonably expected to contain responsive material.

However, as we noted on our call, we are not currently aware of any centralized files relating to the February 18, 2015 Data Exchange Agreement.

**Authenticom RFP 88**

Thank you for agreeing to narrow this RFP. We will respond as appropriate once that occurs.

Michael N. Nemelka
June 5, 2018
Page 6

    **Authenticom RFP 89**

Reynolds will consider plaintiffs' proposed search terms.

### V.     Authenticom's Responses to Reynolds's Discovery Requests

Brian Ross's May 16, 2018 letter raised numerous deficiencies in Authenticom's discovery responses, which the parties discussed during a telephonic meet and confer on May 18, 21, and 22. I followed those discussions up with a letter dated May 23, 2018 and you responded to that letter on May 25, 2018 with your own letter. Several issues remain outstanding, including certain items you said you were investigating. We need to bring these issues to a close and move to compel if you are not willing or able to provide responses soon.

    1. **Authenticom's RFP Responses**.

        a. **Usernames and Passwords**

Reynolds has now asked several times for Authenticom to agree to produce documents without redacting usernames or passwords. At both the telephonic meet and confer and in your May 25 letter, you said Authenticom would consider it. It has been nearly three weeks since Brian Ross's May 16 letter. Please let us know this week if Authenticom will produce documents without redacting usernames or passwords. If not, we are at impasse.

        b. **Instances of DMS Access**

During our telephonic meet and confer, you explained that Authenticom has not preserved, and indeed purges, any data it has relating to the number and dates of specific instances when Authenticom accessed a Reynolds DMS without authorization. You confirmed that Authenticom has not and will not change its retention/purging practices with respect to DMS access data.

In an attempt to justify Authenticom's purging practices, you stated on our call that the data in question was "dealer data." I responded and asked you whether you were taking the position that data relating to instances of **Authenticom's** access to DMS was strictly dealer data and not also Authenticom data, to which you said "no." Therefore, your May 25 letter is inaccurate and falsely states that you did not claim that the data in question is Authenticom data. To the extent you are changing your answer on this after the fact, please explain how data relating to Authenticom's access to a Reynolds DMS is not Authenticom's data.

You also stated during our telephonic meet and confer that you were investigating whether you could provide a partial record of DMS access cobbled together from the existing, limited data that is available. What have you learned? You also offered to provide a sample. When can we expect to see the sample?

Michael N. Nemelka
June 5, 2018
Page 7

### c. Authenticom's DMS Connections

Reynolds has now been repeatedly asking for some time for Authenticom to produce full and complete data regarding its DMS connections by DMS type over time. You have advised that you are investigating. Please let us know the results of your investigation this week.

Reynolds notes that it is strange that any investigation would be necessary or that it would take this long to investigate, given that Authenticom has provided various analyses and breakdowns of DMS connections data at the preliminary injunction stage last year, and also in Authenticom's September 5, 2017 brief to the Seventh Circuit. There must be data underlying those submissions. If it cannot be extracted or produced, then surely it can be made available for inspection.

### 2. Authenticom's RFA Responses

Your May 25 letter states: "Authenticom will agree to amend its responses to Reynolds' RFA Nos. 1-3." It has been over a week since you made this statement and nearly one month since the RFA responses were due. When will we receive amended RFA responses?

### 3. Authenticom's Interrogatory Responses

Your May 25 letters states that Authenticom will supplement its responses to Interrogatories 13 and 20. When will we receive supplemental interrogatory responses?

You provide no date by which you will supplement Interrogatory 13, which asks Authenticom to identify its business arrangements with Cox. And in connection with Interrogatory 20, which asks Authenticom to identify the contracts underlying its tortious interference claim, you state that it "will need to wait for a fuller discovery record." Neither is acceptable.

You explained during our telephonic meet and confer that Authenticom's response to Interrogatory 20 encompasses all Authenticom contracts, because Authenticom is taking the position that Reynolds interfered with all of its contracts. As a result, a response to both Interrogatory 13 and 20 should be simple, and contrary to your letter, does not depend on a "fuller discovery record." Authenticom need only identify its business arrangements and contracts with Cox. Even if the response requires further supplementation or revision later, this is not a justification for refusing to respond now. If Authenticom is unable or unwilling to commit this week to supplementing interrogatories 13 and 20 by next week, we are at impasse.

Please provide answers to all of the above outstanding questions and issues above this week.

Michael N. Nemelka
June 5, 2018
Page 8

Sincerely,

*[signature: Leo Caseria]*

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:227606407.1