# Exhibit 9

| | |
|---|---|
| **From:** | Stein, Micah D. |
| **To:** | Nemelka, Michael N. |
| **Cc:** | SERVICE-EXTERNAL-DMS-MDL; Ryan, Mark |
| **Subject:** | RE: Authenticom discovery [MB-AME.FID2247823] |
| **Date:** | Thursday, April 18, 2019 11:05:24 AM |

Mike:

I am writing to follow up on your March 28 email and to raise a number of discovery issues concerning Authenticom that have come up during recent depositions.

**Box.com Production**. Thank you for your response and for agreeing to produce the requested documents. It appears there has been some confusion regarding the September 19, 2016 document, which you state has already been produced at AUTH_00256645-50. The document that you reference is the same document that Mark cited in his March 6, 2019 email requesting the Box.com documents—it contains a *link* to the relevant Box.com document, but that document still has not been produced.

To avoid any further confusion, we request that you produce the document that is described and hyperlinked on AUTH_00256645. ("In the link following, we have outlined some a potential phases to our full CDK solution (https://authenticom.app.box.com/files/0/f/11362319262/1/f_95291280847)."). Please produce this document by April 23, 2019.

**Hembd Videos**. At Lucas Hembd's deposition, you asserted a claim of privilege over the "CDK and RR Polling Videos" created by Mr. Hembd and Zak Fry-Kunkel and referenced in AUTH_00087500 (Defs. Ex. 709) ("here are the edited versions of the CDK and RR polling videos Zak and I created last week."). You stated that you "believe" these videos were created at the request of Kellogg Hansen but were "not a hundred percent sure," and you could not confirm that the videos were logged on Authenticom's privilege log. Hembd Dep. 415:8-423:10. Please confirm whether you are, in fact, asserting a claim of privilege over these videos; if not, please produce the videos by April 23, 2019.

**Authenticom Agency Appointment Documents**. At the Authenticom 30(b)(6) deposition, Mr. Brown testified that Authenticom "sometimes" obtained written documentation from CDK dealers appointing Authenticom as their agent. ("Q. And is it -- is it Authenticom's view that CDK dealers have, in fact, appointed Authenticom an agent for purposes of accessing the CDK system? A. Yes. Q. Okay. And is that appointment in writing? A. Sometimes yes it is in writing."). We have been unable to locate any such documentation in your production. Please let us know whether these written agency appointment documents have been produced and, if so, where they are located in your production. If the documents have not been produced, please produce them by April 23, 2019.

**Incident Response Plan and Security Policies.** At the Authenticom 30(b)(6) deposition, Mr. Brown testified that he "believe[s]" Authenticom has a written Incident Response Plan that "provides a guideline for if Authenticom encounters an incident and how to respond and how to resolve that incident." Mr. Brown stated generally that the document directs Authenticom employees to "Identify the problem. Bring it to the attention of the leadership of the company and then to work to resolve it," but could provide no further details about the Incident Response Plan, nor was he aware when it was enacted or whether Authenticom produced the document in this litigation. Mr. Brown further testified that Authenticom may have additional documented security policies that were not produced. ("Q. Aside from the incident response plan, the business continuity plan, and the Authenticom employee handbook, are you aware of any other documented security policies that Authenticom has? A. There could be others, but none come to mind.").

Please let us know whether Authenticom's Incident Response Plan has been produced and, if so, where it is located in your production. If the document has not been produced, please produce it—along with any other written security policies that Authenticom has not produced—by April 23, 2019.

**Testimony Regarding Authenticom Affiliates**. At the Authenticom 30(b)(6) deposition, you maintained that all questions concerning DataVast, including what steps Authenticom took to protect the security of dealer data

in connection with the DataVast product, fell outside the scope of the deposition. In any event, Mr. Brown testified that he undertook no preparation as Authenticom's corporate representative to testify regarding DataVast and refused to answer any questions regarding the DataVast product. ("Q. Did your preparation to serve as a corporate witness include DataVast? A. It did not."). Mr. Brown further refused to answer questions from Ms. Wedgworth about whether Authenticom ever informed dealers of the existence of Data Services, LLC and Xcelerated. These issues all fall within the scope of Defendants' 30(b)(6) deposition notice.

Defendants' 30(b)(6) deposition notice to Authenticom encompassed "any related companies, divisions, or subsidiaries, past or present" of Authenticom, which plainly covers DataVast, Xcelerated, and Data Services, LLC. *See* Defs. Notice of 30(b)(6) Deposition of Authenticom at Schedule A. The noticed 30(b)(6) topics included "efforts by Authenticom to secure or protect 'dealer data,'" and "[t]he basis for Authenticom's pleaded allegation that 'Authenticom has never had a data breach.'" We are therefore entitled to answers regarding the steps that Authenticom took to secure and account for the dealer data that Authenticom may have provided to DataVast. Similarly, Ms. Wedgworth's questions also concern the security of dealer data—in particular, whether and to what extent Authenticom notified dealers about where their data was being sent. By April 23, 2019, please confirm that you will provide supplemental testimony on these topics.

Thanks,
Micah

**Micah D. Stein**
1 202 263 3279

---

**From:** Nemelka, Michael N. <mnemelka@kellogghansen.com>
**Sent:** Thursday, March 28, 2019 4:29 PM
**To:** SERVICE-EXTERNAL-DMS-MDL <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Subject:** Authenticom discovery

**\*\*EXTERNAL SENDER\*\***

Dear Counsel,

With respect to the four Box.com documents you have inquired about below, we have the following update:

1. **September 13, 2016 document.** This document is privileged and we will be updating our privilege log.
2. **September 19, 2016 document.** This document is an email and has already been produced (on 10/12/2018) and is Bates labeled AUTH_00256645 - AUTH_00256650.
3. **October 3, 2016 video.** We will be producing this video this week.
4. **November 11, 2016 presentation.** We will be producing the presentation this week.

We will also be producing the Slack attachments this week. With respect to the Archer documents, we are having difficulties exporting the located documents from the Archer system, and are working to resolve the issue.

Thanks,
Mike

Michael N. Nemelka
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M. St. N.W., Suite 400
Washington, DC  20036
Direct:  (202) 326-7932
mnemelka@kellogghansen.com

NOTICE:  This transmission is intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately via reply e-mail, and then destroy all instances of this communication.  Thank you.

_____

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities, including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Information about how we handle personal information is available in our Privacy Notice.