**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* <br><br> *Authenticom, Inc. v. CDK Global, LLC et al.,* Case No. 1:18-cv-00868 (N.D. Ill.) | Hon. Robert M. Dow, Jr. <br><br> Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANTS CDK GLOBAL, LLC AND THE REYNOLDS AND REYNOLDS COMPANY'S MEMORANDUM IN SUPPORT OF THEIR
<u>MOTION TO CLARIFY JUNE 12, 2019 ORDER (DKT. 719)</u>**

Defendants CDK Global, LLC and The Reynolds and Reynolds Company respectfully move this Court to clarify its June 12, 2019 Order (Dkt. 719) relating to Defendants' Motion to Compel Outstanding Discovery and Testimony from Plaintiff Authenticom, Inc. (the "Motion") (Dkt. 709). Defendants do not seek to revisit or challenge the Court's ruling on the Motion. However, Defendants respectfully request that the Court clarify its ruling and order Authenticom to produce the "more limited information from its system" referenced in the Order—example polling client manager logs covering a single day of polling for 10 CDK and 10 Reynolds dealers—which Authenticom previously suggested both to Defendants and the Court that it was willing and able to produce but now refuses to produce. Dkt. 719 at 2.

**I.     Introduction & Background**

Defendants will not rehash the long history of this issue set forth more completely in their original Brief in Support of the Motion. *See* Dkt. 711. In short, as the Court will recall, over a period of months Defendants and Authenticom engaged in a lengthy back-and-forth over whether

1

Authenticom would produce, and to what extent it would produce, illustrative logs from its internal Polling Client Manager ("PCM") system. Dkt. 711 at 3-7. Authenticom has claimed that the PCM is the only source of information that Authenticom maintains that demonstrates each instance that Authenticom accesses a Defendant's dealer management system ("DMS"), precisely what data is taken, and exactly what scripts are run to extract such data. Dkt. 711 at 1-2. Authenticom has also claimed that certain alternative sources of this information that it produced in this litigation were inaccurate, unreliable, and/or has otherwise refused to answer questions about them. Dkt. 711 at 7. *See also* Ex. 1. Authenticom only maintains a running, seven-day log of this information in the PCM before it overwrites, or deletes, any prior information. Dkt. 711 at 4-5; Dkt. 719 at 1. During this litigation, Authenticom has not taken any steps to save or prevent the deletion of this information (or any subset thereof). *Id.*[1]

During the back-and-forth regarding this issue, Authenticom offered to provide Defendants an illustrative sample from the PCM of polls run on "10 CDK dealers and 10 Reynolds dealers for a given day." Dkt. 711 at 6. Defendants believed this was insufficient—and a re-trade of what Defendants thought had been Authenticom's prior offer to provide a full seven-day sample—and moved to compel a full-seven-day sample. Dkt. 709. Authenticom, in its brief in opposition to the Motion, relied upon its offer of a 10 CDK and 10 Reynolds dealer one-day sample as a proportional compromise that the Court should accept. Dkt. 715 at 8 ("Authenticom has offered to manually create Polling Client Manager records for twenty randomly selected dealers."). At the hearing held on June 10, Authenticom repeated this offer to the Court:

---

[1] Defendants continue to reserve all rights related to Authenticom's failure to retain this information despite Defendants' repeated requests that it be preserved, beginning more than two years ago.

> The Court: So what are you now offering to do for certain – you mention 24 or something. I don't know what you're offering.
>
> MR. HO: Ten CDK dealers and ten Reynolds data --dealer rather.
>
> MR. NEMELKA: Twenty.
>
> MR. HO: So 20 total.
>
> THE COURT: So you're offering to do what they're asking for.
>
> MR. HO: For one day.

Ex. 2 ("2019-6-10 Hearing Tr.") at 41:14-22; *see also id.* at 38 ("We have, as we pointed out, offered to do somewhat more than one day for one dealer that we have offered. And to the extent that a slightly broader sample or illustrative set could be useful, we have offered to do that.").

Not only did Authenticom re-offer this proposal to the Court, but the Court appeared to rely on it in considering whether to order that a broader subset of data needed to be produced (as Defendants had requested). The Court stated, "I think the proposal of ten CDK dealers and ten Reynolds dealers for one day during this period of time will provide the defendants with—and I don't care if it is a screenshot or however it is….I do think that the proposal of ten CDK and ten Reynolds dealers is much more proportional to the needs of the case and will provide the defendants with some of the information they're getting, at least on an exemplar basis." Ex. 2 at 45:22-46:25. The Court went on to indicate that the question was not whether Defendants were entitled to *some* information from the PCM—but that the "only question really is how large the sample should be." *Id.* at 47:5-7. *See also id.* at 48:6-10.

Two days after the hearing, the Court denied Defendants' Motion for a full seven-day example of the PCM log. Dkt. 719. In doing so, the Court again specifically referenced that there were "easier ways to obtain a snapshot" of the PCM log than requiring a "full rolling 7-days," and

3

referenced that Authenticom "has offered to produce more limited information from its system that can be used for this purpose." Dkt. 719 at 2. After this Order, Defendants requested that Authenticom make good on the offer it had provided both to Defendants and the Court—and asked for Authenticom to in fact provide a 1-day sample of PCM information for 10 specified CDK and Reynolds dealers. Ex. 3 at 2. Authenticom responded that it was unwilling to provide a 1-day sample of PCM information for the 10 identified CDK and Reynolds dealers and would not produce any additional PCM information at all. Ex. 3 at 1. Defendants therefore seek clarification of the Court's Order on the issue of whether Authenticom should be required to produce, at a bare minimum, the previously offered exemplar PCM information.

## II. Argument

As the Court has already heard (and has previously stated), this information is relevant and proportional to the needs of this case. As such, Defendants are entitled to it. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…").

First, the information sought is relevant. While the Court expressed skepticism that the value of a full, seven-day log sufficiently outweighed that of single-day logs for some subset of Reynolds and CDK dealers so as to justify the additional burden that would be required to produce it, the Court made a threshold finding of relevance. *See* Ex. 2 at 46:13-16 ("[P]robably the information is still helpful to you…. in substance, I think the information that you're looking for has some relevance."). At the June 10 hearing, the Court acknowledged that even a limited exemplar could end up being "a really nice visual in front of a jury, so I can understand why they might want to see it." *Id.* at 35:20-22. And as Defendants have previously pointed out, the PCM remains the best source of information available from Authenticom for illustrative examples of

how, when, with what frequency, and for what data Authenticom polled Defendants' DMS systems. Dkt. 711 at 6-9; Ex. 2 at 42:4-44:12. Further, given that Authenticom maintains dozens of different connection methods to Defendants' DMSs and polls a large variety of data sets, it makes the single poll, single dealer snapshot already produced insufficient and of limited illustrative value. Dkt. 711, Ex. 11 at 7.

Second, during the June 10 hearing, the Court's commentary indicated to Defendants that a 1-day, 20-dealer snapshot would be proportional to the needs of the case. Ex. 2 at 49:22-2 ("[Y]eah, I mean, I think—I'm not sure how much better than—this snapshot is proportional to the needs of the case."); at 46:22-25 ("I do think that the proposal of ten CDK and ten Reynolds dealers is much more proportional to the needs of the case and will provide the defendants with some of the information they're getting, at least on an exemplar basis.").

Not only is it proportional to the needs of the case, but Authenticom previously represented to both the Court and Defendants that this offer remained open. It appears that the Court relied on this offer in entering its Order. In its Order, the Court stated that Authenticom "*has offered*" not *had offered* "to produce more limited information from its system that can be used for this purpose"—indicating that it believed that this information would still be available to Defendants. Dkt. 719 at 2. The Court's comments at the hearing were in accord. Ex. 2 at 47:5-6 ("So, the only question really is how large the sample should be."); *id.* at 48:6-7 ("But what you are getting is an exemplar. And the only question is how large that exemplar should be.").

Defendants respectfully submit that Authenticom should not be allowed to rely on its "good faith" offer to produce a PCM snapshot of twenty dealers to defeat Defendants' motion on proportionality grounds and then withdraw that offer the moment the Order was entered. Dkt. 715 (calling their offer "a further show of good faith"). As such, the Defendants request that the Court

clarify its Order to indicate that Authenticom is still required to produce an example PCM log of the requested 10 CDK and 10 Reynolds dealers for a single day.

Dated:  July 25, 2019

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com


Michael P.A. Cohen
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

**CERTIFICATE OF SERVICE**

I, Aundrea Gulley, an attorney, hereby certify that on July 25, 2019, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF THEIR MOTION TO CLARIFY JUNE 12, 2019 ORDER (DKT. 719)**, to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Aundrea Gulley*
Aundrea K. Gulley
GIBBS & BRUNS LLP
1100 Louisiana Street, Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com