**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to:<br><br>*Authenticom, Inc. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00868 (N.D. Ill.) | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**AUTHENTICOM'S OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY
THE COURT'S JUNE 12, 2019 ORDER (Dkt. 719)**

Plaintiff Authenticom, Inc. respectfully submits this opposition to CDK Global, LLC's ("CDK") and The Reynolds and Reynolds Company's ("Reynolds") motion to clarify the Court's June 12, 2019 Order (Dkt. 719) (the "Order"). Defendants' motion is mislabeled – it is not a motion to clarify at all. Instead, Defendants ask this Court to reverse its order denying their motion to compel the production of transitory software data from Authenticom's Polling Client Manager ("PCM"). The Court denied that original motion in full. Dkt. 719. Defendants did not appeal that ruling or seek reconsideration, and the time for doing so is now past.

As a basis for "clarification" – or more accurately, for "reconsideration" – Defendants rely on an offer that Authenticom made during the meet and confer process before Defendants chose to file their original motion. Authenticom offered to produce a single day's log for ten *randomly selected* CDK dealers and ten *randomly selected* Reynolds dealers. But Authenticom made that offer as a matter of compromise despite – and without waiving – its position that it should not be required to produce anything in light of the burden required to create even a single log and the marginal relevance of the transitory data. But "Defendants rejected that olive branch." Dkt. 716

at 8. Compromise offers do not bind a party once the offer is rejected and the party is compelled to litigate the issue. So when Defendants instead chose to file a motion seeking far more than Authenticom offered, Authenticom was entitled to argue that no production should be ordered, especially in light of the significant burden that the creation of the logs would require. The Court ruled in Authenticom's favor. Dkt. 719. At the hearing on Defendants' motion, Authenticom argued that *if* the Court were to order the production of anything, then the Court should limit its ruling to Authenticom's compromise offer that Defendants had rejected. The Court mentioned Authenticom's offer in the course of its opinion, *see id*. at 2, but it notably did not compel production even to that extent. The Court denied Defendants' motion in full. *Id*. Therefore, there is nothing to clarify, and Authenticom cannot be held to a compromise offer that Defendants rejected. Having lost, Defendants belatedly seek another bite at the apple. For all the reasons the Court gave in its Order denying in full Defendants' original motion, *see* Dkt. 719, there is no basis to reconsider the Court's ruling.

Second, while Defendants characterize their motion to clarify as one designed simply to force Authenticom to follow through on the compromise offer that Defendants rejected, Defendants in fact seek something very different. Authenticom had premised its offer to manually create log samples for twenty dealers on the condition that the dealers be *randomly* selected. But in their motion to clarify, Defendants ask the Court to order Authenticom to produce logs for multi-store dealership groups (resulting in a number well in excess of twenty dealer stores) that Defendants themselves have hand selected. At the hearing on Defendants' original motion, Authenticom explained that allowing Defendants to cherry pick the dealers would not only undermine the purpose for which Defendants purportedly need the logs – so that their experts can perform extrapolations – but it is something Authenticom never offered to do. *See infra* pp. 4-5.

2

Thus, Defendants' motion does not seek to enforce Authenticom's compromise that they rejected; it asks for something much more. Indeed, because Defendants have included multi-store dealership "groups" among their list of twenty dealers, the number of sample PCM logs Authenticom would be required to produce would far exceed twenty, imposing a large burden on an already strapped company.

Finally, because Defendants waited so long to bring this motion to clarify – a month and a half after the Court denied Defendants' motion – there is not sufficient time for Authenticom to create the numerous requested logs and Defendants' experts to incorporate those logs into their analysis before the August 26, 2019 expert report deadline. It would be a futile effort. Defendants' tardiness should not be rewarded by granting their belated motion to clarify.

**1.** The Court denied Defendants' original motion in full, and there is nothing to clarify. Dkt. 719. In denying Defendants' motion in its entirety, the Court held "that the PCM log is ephemeral or transient data that generally is not discoverable in most cases." Order at 1 (quotation marks and citations omitted). The Court likewise held that "Authenticom is not obligated to create a report for Defendants that it does not otherwise create or maintain in its business for the sole purpose of responding to Defendants' discovery requests" – whether that report is comprised of seven days (as Defendants originally sought) or one day (as Defendants now seek) of manually extracted data. *Id*. at 2. The Court also held that Defendants "have not shown good cause under Federal Rule 26(b)(3)(B) to justify production of the PCM log." *Id*. In short, the Court denied Defendants' motion in full, and the reasons the Court gave apply to Defendants' renewed request.

Defendants base their motion to clarify – which is really a belated motion to reconsider – on a compromise that Authenticom made but Defendants rejected, but the rejected compromise provides no basis to reconsider or change the Court's ruling. In the meet and confer process before

3

Defendants' original motion, Authenticom offered to create a day's PCM log for twenty randomly selected dealers. "While that would be a laborious effort, Authenticom was willing to do it to resolve the issue, but Defendants rejected that olive branch." Dkt. 716 at 8. That compromise did not bind Authenticom once Defendants rejected the offer and instead chose to litigate the issue. Indeed, in its opposition to Defendants' original motion, Authenticom made clear that it opposed Defendants' motion in full and argued that no production should be ordered. Dkt. 716. And at the hearing on the motion, Authenticom argued that *if* the Court were to order any production, then it should limit its ruling to Authenticom's prior rejected compromise. That did not mean that Authenticom changed its position from the one in its papers – Authenticom still opposed the production of any additional PCM log. And the Court ruled in Authenticom's favor. Dkt. 719. While the Court referenced Authenticom's prior compromise offer in the course of its opinion, the Court unambiguously denied Defendants' motion in full. *See Id*. at 2. Thus, even if Defendants' motion were timely – which it is not – Defendants have provided no basis to reconsider or alter that ruling. To the contrary, for all the reasons stated in the Court's opinion, that ruling should stand and Defendants' motion to clarify should be denied.

**2.** Defendants describe (at 1) their motion as seeking something that "Authenticom previously suggested both to Defendants and the Court that it was willing and able to produce," but that is incorrect. As Authenticom explained in its opposition to Defendants' original motion, Authenticom's rejected compromise was "to manually create Polling Client Manager records for *twenty randomly selected* dealers." Dkt. 716 at 8 (emphasis added). But Defendants now seek information for twenty dealers that they have hand selected. Dkt. 725 at 4; Dkt. 725-3 at 2. Authenticom never offered to produce PCM logs for dealers cherry picked by Defendants. At the hearing on Defendants' original motion, Authenticom explained why this matters: "[A] red flag,

4

you know, is raised in my mind when I hear the defendant saying, well, actually we'd like to pick the dealers because a central principle of any kind of extrapolation is that it be from a statistically random sample. So they are skewing the sample by their very request to decide which dealers to choose." Dkt. 725-2 (2019-6-10 Hearing Tr.) at 56:7-12. Yet, in their motion – which Defendants characterize as seeking only that which Authenticom "previously suggested" it would provide – Defendants ask for the production of PCM logs for the following specific dealers:

Reynolds Dealers

1. Bettenhausen Chrysler Jeep
2. Dover Dodge Chrysler Jeep Ram
3. Acton Toyota
4. Suburban Chevrolet
5. Right Honda
6. Triangle Honda 65
7. Luther Bloomington Kia
8. Nissan of Turnersville
9. Gateway Toyota
10. Lexus of Warwick

CDK Dealers

1. Ganley Corporation
2. Oremor Automotive Group
3. Braman Automotive Group
4. The Curry Corporation
5. ContinentalGroup/J&J Partnership
6. Johnny Londoff Chevrolet
7. Tysinger Auto Group
8. Chase Chevrolet
9. Smith Motor Sales Haverhill
10. MINI of Daytona Beach

*See* Dkt 725-3 at 2. Not only does this hand-selected group skew the statistical results for which Defendants say they need this information, it also exacerbates the burden on Authenticom. Many of the dealers identified by Defendants are actually dealership *groups* with multiple locations. For example, Oremor Automotive Group has *thirteen* separate rooftops, one for each of its different franchised stores, *see* https://www.oremorautomotive.com/locations/index.htm, and so that is in reality thirteen separate dealerships. If Defendants had their way, Authenticom would have to create thirteen separate PCM logs for just that one dealership group. It is the same with many other "dealers" selected by Defendants, resulting in a total number of dealership stores – and thus PCM logs – far exceeding anything Authenticom had ever offered to provide. The burden on

Authenticom would be immense. *See* Order at 1 (noting that "the information would have to extracted manually," which "is an expensive and time-consuming process, particularly for a company that says it has lost a substantial percentage of its workforce during this litigation"); *see also* Dkt. 716-2 (Affidavit of Brian Clements).

In short, the premise of Defendants' motion is false, namely, that it seeks to enforce Authenticom's compromise offer that Defendants had previously rejected. To the contrary, Defendants' motion seeks something new – PCM logs for a list of specific dealerships groups selected by Defendants – that Authenticom never offered to provide. And by selecting multi-store dealership groups, Defendants are seeking much more than just twenty total sample PCM logs, compounding the burden on Authenticom. The Court should see through what Defendants are doing here and deny their motion to "clarify," which is nothing of the sort.

**3.** Finally, Defendants' motion is contrary to the professed purpose for seeking sample PCM logs – i.e., so that Defendants can provide the samples to their "experts" for "extrapolation" purposes, *see*, *e.g.*, Dkt. 725-2 at 48-49. Defendants repeatedly argued to this Court that they needed the sample PCM logs so that they could provide the logs to their experts to extrapolate "damages" and instances of access by Authenticom. *See*, *e.g.*, *id.* at 43-44, 48-49, 51; *see also id.* 51:8-9 ("You say you are going to give this to your experts."). Because Defendants waited so long to come back to this Court after it denied their motion, there is no chance that Defendants' experts will be able to incorporate the PCM logs into their reports before the expert report deadline – which is August 26, 2019 – even if the Court were to grant Defendants' motion.

The Court held a hearing on Defendants' original motion on June 10, 2019. Dkt. 719 at 1. Acting quickly, the Court denied Defendants' motion just two days later in a written opinion issued on June 12, 2019. *Id.* The Court thus gave Defendants ample time to move for reconsideration;

seek to clarify; or appeal the Order before the expert report deadline. Instead, Defendants waited nearly a month after the Court's ruling before asking Authenticom to provide the sample PCM logs (even though the Court had denied Defendants' motion in full). And then after Authenticom politely rejected Defendants' request, *see* Dkt. 725-3 at 1, Defendants waited nearly another week before filing the instant motion to clarify. The result is that, by the time this motion is fully briefed on August 6, 2019, the expert report deadline will be less than three weeks away. Should the Court grant Defendants' motion, it is not even clear if Authenticom could produce the requested PCM logs before the expert report deadline. It would require a huge effort by Authenticom and consume scarce resources within the company, with employees working under pressure and a tight timeframe all because Defendants waited to bring this motion on the eve of the expert report deadline. To so require would be contrary to the basic principles of fairness embodied by the Federal Rules of Civil Procedure, especially in a case where discovery is long over. And even if Authenticom could create the sample PCM logs before the expert report deadline, it is doubtful that Defendants' experts could perform the necessary "extrapolations" and incorporate the analysis into their expert reports in time. Because the logs would not even serve the professed purpose that Defendants have given for seeking this discovery, the Court should deny Defendants' belated motion.

Dated: August 2, 2019 			Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Co-Lead MDL Counsel and
Counsel for Authenticom, Inc.*

## **CERTIFICATE OF SERVICE**

      I, Derek T. Ho, an attorney, hereby certify that on August 2, 2019 I caused a true and correct copy of the foregoing **AUTHENTICOM'S OPPOSITION TO DEFENDANTS' MOTION TO CLARIFY THE COURT'S JUNE 12, 2019 ORDER (Dkt. 719)** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by email to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                                  */s/ Derek T. Ho*
                                                 Derek T. Ho
                                                 **KELLOGG, HANSEN, TODD,**
                                                 **FIGEL &FREDERICK, P.L.L.C.**
                                                 1615 M Street, NW, Suite 400
                                                 Washington, D.C. 20036
                                                 (202) 326-7900
                                                 dho@kellogghansen.com