**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Honorable Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP CLASS ACTION | |

**DEALERSHIP COUNTER-DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL RESPONSES TO INTERROGATORIES**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION .......................................................................................................................... 1

BACKGROUND ............................................................................................................................ 2

LEGAL STANDARDS .................................................................................................................. 4

ARGUMENT .................................................................................................................................. 5

   **I.** The Information Sought By Interrogatories Nos. 4, 7 and 10 Is Relevant To Dealership Counter-Defendants' Defenses to CDK's Counterclaims ................................................. 5

   **II.** CDK Should Be Required to Supplement Its Inadequate Response to Damages-Related Interrogatory No. 11 ............................................................................................................. 9

   **III.** The Information Sought By Interrogatory No. 16 Is Directly Relevant to CDK's Alleged Counterclaim Damages ...................................................................................................... 11

   **IV.** CDK Should be Compelled to Respond to Interrogatories Nos. 17 and 18 ..................... 12

CONCLUSION ............................................................................................................................. 15

i

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Am. Commer. Lines LLC v. Lubrizol Corp.*,
 4:12-cv-135-SEB-WGH, 2013 WL 3781119 (S.D. Ind. July 18, 2013)…… …………..13

*BASF Catalysts LLC v. Aristo, Inc.*,
 No. 2:07-cv-222, 2009 WL 187808,  (N.D. Ind. Jan. 23, 2009)…………………………13

*Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich. Inc.*,
 674 F.3d 630 (7th Cir. 2012)…………………………………………………………...5

*Commerce Bank, N.A. v. Widger*,
 No. 06-CV-1103, 2008 WL 630611, (C.D. Ill. Mar. 5, 2008)…….…………………..13

*Deputy v. City of Seymour*,
 2014 WL 4907911 (S.D. Ind. Sept. 30, 2014)……………………….……………..13

*eBay Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006)…………………………………………………………………….9

*Estate of Swayzer v. Clarke*,
 Case No. 16-CV-1703, 2019 WL 1980349 (E.D. Wisc. May 3, 2019)…………………14

*Farris v. Kohlrus*,
 No. 17-cv-3279, 2019 WL 351876 (C.D. Ill. Jan. 29, 2019)……….…………….……….4

*FDIC v. Urban P'ship Bank*,
 No. 17-cv-1517, 2018 WL 2021223 (N.D. III. May 1, 2018)…….…………….……...8

*Gulf Oil Co. v. Bernard*,
 452 U.S. 89 (1981)…………………………………………………………………...6

*Hellyer Communs. v. WRC Props.*,
 969 F. Supp. 1150 (S.D. Ind. 1997)……………………………………...…………..7

*Herbert v. Lando*,
 441 U.S. 153 (1979)…………………………………………………………………….4

*In re Ocwen Loan Servicing, LLC*,
 491 F.3d 638 (7th Cir. 2007)………………………………………………………….14

*In re Peregrine Fin. Grp. Cust. Litig.*,
 No. 12 C 5546, 2015  WL 1344466 (N.D. Ill. Mar. 20, 2015)………………………*passim*

*In re Sulfuric Acid Antitrust Litig.*,
　　231 F.R.D. 351 (N.D. Ill 2005)………………………………..……………………..7

*Jackson v. N'Genuity Enters. Co.*,
　　No. 09 C 6010, 2011 WL 4628683 (N.D. Ill. Oct. 3, 2011)……...…………………….6

*James v. Hyatt Regency Chicago*,
　　707 F.3d 775 (7th Cir. 2013)………………………………………………………...5

*Jenkins v. White Castle Mgmt. Co.*,
　　No. 12 C 7273, 2014 2014 WL 3809763 (N.D. Ill. Aug. 4, 2014)……...………………6

*LAJIM, LLC v. Gen. Elec. Co.*,
　　917 F.3d 933 (7th Cir. 2019)………………………………………………………...8

*Leonard v. Katsinas*,
　　No. 05-CV-1069, 2006 WL 1063768 (C.D. Ill. Apr. 20, 2006)………..…………….10

*Meridian Sec. Ins. Co. v. Sadowski*,
　　441 F.3d 536 (7th Cir. 2006)………………………………………………………13

*Nammari v. Town of Winfield*,
　　No. 2:07 cv 306, 2010 WL 1286733 (N.D. Ind. Mar. 29, 2010)……..…………..……...5

*Nat'l Diamond Syndicate, Inc. v. United Parcel Serv., Inc.*,
　　897 F.2d 253 (7th Cir.1990) …………………………………………………………7

*Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*,
　　970 F.2d 273 (7th Cir. 1992)………………………………………………………...8

*Rawat v. Navistar Intl. Corp.*,
　　No. 08 C 4305, 2011 WL 3876957 (N.D. Ill. Sept. 1, 2011)……...………………….……14

*Roper Whitney of Rockford, Inc. v. TAAG Mach. Co.*,
　　No. 99 C 50032, 2002 WL 425925 (N.D. Ill. Mar. 18, 2002)……………….…………..7

*Sanimax AGS, Inc. v. Gulf Hydrocarbon, Inc.*,
　　1:09-cv-37-SEB-TAB, 2010 WL 1088649 (S.D. Ind. Mar. 19, 2010)……..….……...9

*Stevens v. Dewitt Cty.*,
　　No. 11-cv-3162, 2013 WL 819372 (C.D. Ill. Mar. 6, 2013)…………..….…………...9

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
　　1:03-cv-680-SEB-WGH, 2011 WL 4387293 (S.D. Ind. Sept. 20, 2011)……..………15

*Vidimos, Inc. v. Laser Lab Ltd.*,
  99 F.3d 217 (7th Cir. 1996)…………………………………………………………...13

*Zimnicki v. General Foam Plastics Corp.*,
  No. 09 C 2132, 2011 WL 833601 (N.D. Ill. Mar. 3, 2011)…….…..………………12


**Statutes**

18 U.S.C. § 1030…………….....………………………………………………………2,8

17 U.S.C. § 1201……....……....………………………………..…………………………...2

**Other Authorities**

Fed. R. Civ. P. 26 ……………………………………………………………………4

Fed. R. Civ. P. 33………………………………………………………………...1, 6, 13

Fed. R. Civ. P. 37…………………………………………………………………1, 5

Counter-Defendants ACA Motors, Inc.; Continental Classic Motors, Inc.; 5800 Countryside, LLC; HDA Motors, Inc.; H & H Continental Motors, Inc.; Continental Autos, Inc.; Naperville Zoom Cars, Inc.; NV Autos, Inc.; Baystate Ford Inc.; Cliff Harris Ford, LLC; Marshall Chrysler Jeep Dodge, L.L.C.; Warrensburg Chrysler Dodge Jeep, L.L.C.; Cherry Hill Jaguar; JCF Autos LLC; Jericho Turnpike Sales LLC; Patchogue 112 Motors LLC; and Waconia Dodge, Inc. (collectively, "Counter-Defendants" or "Dealership Counter-Defendants"), by their undersigned counsel, and pursuant to Fed. R. Civ. P. 33 and 37, respectfully submit this memorandum in support of their Motion to Compel CDK Global, LLC to Respond to Dealership Class Plaintiffs' First Set of Interrogatories Concerning CDK's Counterclaims (the "Motion").

## <u>INTRODUCTION</u>

CDK Global, LLC ("CDK") should not be permitted to avoid its discovery obligations. Dealership Counter-Defendants served their First Set of Interrogatories to CDK Global, LLC Concerning CDK's Counterclaims (the "Interrogatories," attached as Ex. A hereto) promptly after CDK served its Counterclaims. CDK sought to completely avoid responding to the Interrogatories, first by asking Counter-Defendants to voluntarily withdraw the Interrogatories, then by moving for a protective order permitting CDK not to respond.

Although the Court flatly rejected CDK's motion for protective order, CDK still has not fully responded to the Interrogatories. Instead, in its Responses and Objections to Dealership Class Plaintiffs' First Set of Interrogatories Concerning CDK's Counterclaims (the "Responses," attached as Ex. B hereto), CDK chose to provide no response whatsoever to many of the Interrogatories, and to provide inadequate responses to other Interrogatories.

CDK's objections to the Interrogatories are meritless. Each of the Interrogatories is squarely aimed at obtaining information relevant to CDK's Counterclaims and/or to Counter-Defendants' defenses to those Counterclaims. CDK's vague assertions of "undue burden" are

unsupported by any explanation or showing of why responding to the Interrogatories would be burdensome or costly, much less why those burdens and costs would be "undue" in light of the massive amount of damages that CDK apparently seeks from Dealership Counter-Defendants on its Counterclaims. The case schedule also provides no basis for CDK to avoid responding to the Interrogatories. Counter-Defendants served the Interrogatories expeditiously after CDK filed the Counterclaims, and well-within fact discovery; again, CDK chose not to respond in a timely manner, but to seek a protective order against the Interrogatories. Accordingly, the timing of this Motion is solely due to CDK's repeated efforts to avoid meaningfully responding to the Interrogatories.

CDK should not be allowed to "run out the clock" on its discovery obligations, and to force Dealership Counter-Defendants to go into expert discovery and dispositive motion practice without the fundamental information about CDK's Counterclaims that is sought by the Interrogatories. For the reasons set forth below, CDK should be required to fully respond to the Interrogatories.

## BACKGROUND

CDK filed its Counterclaims, along with its answer to Dealership Class Plaintiffs' Consolidated Class Action Complaint, on February 22, 2019. *See* Dkt. No. 523. The Counterclaims assert causes of action for alleged common law breach of contract, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), and violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 ("DMCA"). *Id.* At their core, CDK's Counterclaims allege that Dealership Counter-Defendants impermissibly handed out their DMS login credentials, directly or indirectly, to third-party data extractors, in order to enable those entities to access the dealerships' CDK DMSs. *Id.* ¶ 2. Dealership Counter-Defendants strongly contest CDK's Counterclaims, as CDK's contracts with dealerships specifically provide that dealerships may allow their employees and

2

agents to access the DMS.[1]

Dealership Counter-Defendants expeditiously served the Interrogatories on CDK two weeks later, on March 8, 2019. As discussed more fully below, the Interrogatories are narrowly targeted to obtain information concerning (1) CDK's enforcement and/or waiver of the contract provisions that CDK claims were breached by Dealership Counter-Defendants; (2) CDK's own commission of the same acts which CDK accuses Dealership Counter-Defendants of committing; and (3) the damages that CDK alleges it has suffered as a result of Counter-Defendants' alleged conduct. Also, on March 29, 2019, Dealership Counter-Defendants moved for dismissal of the Counterclaims; that motion remains pending. *See* Dkt. No. 593.

On April 1, 2019, CDK filed a Motion for Protective Order, arguing that the Interrogatories were untimely, irrelevant and unduly burdensome. *See* Dkt. No. 600. Dealership Plaintiffs opposed that motion, arguing that the Interrogatories were served promptly after the service of CDK's Counterclaims, and that the Interrogatories were directly relevant to the Counterclaims. *See* Dkt. No. 632. On June 10, 2019, the Court denied CDK's motion, holding that "plaintiffs would be prejudiced unfairly if after their motion to dismiss the counterclaims was denied, they are denied the opportunity to proceed with written discovery on the counterclaims." *See* Transcript of Proceedings, June 10, 2019, at 26:13-28:25 (attached as Ex. C hereto). *See also* Dkt. No. 717 ("Order" dated June 10, 2019)

On July 3, 2019, CDK served its Responses. *See* Ex. B. In the Responses, CDK asserted specific objections to each of the individual Interrogatories; CDK provided ***no response***



*whatsoever* to six of the Interrogatories (Interrogatories Nos. 4, 7, 10, 16, 17 and 18), and provided minimal responses (at best) to other Interrogatories (including damages-related Interrogatories Nos. 11-14). *Id.*

On July 11, 2019, counsel for Counter-Defendants wrote to CDK's counsel identifying the deficiencies in CDK's Responses (attached as Ex. D hereto). On July 17, 2019, the parties held a telephonic meet-and-confer conference in an attempt to resolve their disputes over CDK's Responses; Counter-Defendants' counsel memorialized that conference in a letter dated July 22, 2019. (attached as Ex. E hereto.) On July 26, 2019, CDK's counsel sent a response letter in which CDK reiterated its refusal to respond to Interrogatories 4, 7, 10, 16, 17 and 18, or to supplement its inadequate response to Interrogatory No. 11 (attached as Ex. F hereto). Those Interrogatories are the subject of this Motion.

## <u>LEGAL STANDARDS</u>

Rule 26 allows the discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When determining the scope of discovery, Rule 26(b)(1) requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

"The federal discovery rules are to be construed broadly and liberally." *Farris v. Kohlrus*, No. 17-cv-3279, 2019 WL 351876, at *3 (C.D. Ill. Jan. 29, 2019) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). "Discovery is ordinarily allowed even '[i]f there is a possibility that [it] may lead to information relevant to the subject matter of the action.'" *In re Peregrine Fin. Grp. Cust. Litig.*, No. 12 C 5546, 2015 WL 1344466, at *1 (N.D. Ill. Mar. 20, 2015) (citation omitted). "Even when information is not directly related to the claims or defenses identified in the pleadings,

the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard." *Nammari v. Town of Winfield*, No. 2:07 cv 306, 2010 WL 1286733, at *1 (N.D. Ind. Mar. 29, 2010) (citation omitted).

"The party opposing discovery bears the burden of showing why discovery should be disallowed." *In re Peregrine*, 2015 WL 1344466, at *1; *see also Nammari*, 2010 WL 1286733, at *2 ("The objecting party must show with specificity that the request is improper.") (citation omitted). "Courts have repeatedly warned litigants who oppose discovery that their 'burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is . . . overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *In re Peregrine*, 2015 WL 1344466, at *3 (citation omitted).

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). The Court has broad discretion when resolving discovery disputes. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013); *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich. Inc.*, 674 F.3d 630, 636 (7th Cir. 2012).

## ARGUMENT

I.   **THE INFORMATION SOUGHT BY INTERROGATORIES NOS. 4, 7 AND 10 IS RELEVANT TO DEALERSHIP COUNTER-DEFENDANTS' DEFENSES TO CDK'S COUNTERCLAIMS**

Interrogatories Nos. 4, 7 and 10 each seek information about CDK's own commission of the same acts for which CDK now seeks to hold Counter-Defendants liable. Interrogatory No. 4 asks CDK to "[i]dentify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) solicited a dealer to provide DMS login credentials to CDK after the login credentials that CDK had previously been using to access that dealer's DMS had

been disabled by the dealer's DMS provider . . . ." Interrogatory No. 7 asks CDK to "[i]dentify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) used dealer-provided DMS login credentials to extract data from a dealer's DMS. . . ." Interrogatory No. 10 asks CDK to "[i]dentify all instances, from January 1, 2011 to the present, in which CDK knowingly "engaged in unauthorized access to" another DMS provider's DMS (as those terms are used in ¶ 142 of CDK's Counterclaims). . . ." *See* Ex. A attached hereto.

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████CDK's "reflexive invocation of the same baseless [] litany of objections" should be rejected. *In re Peregrine*, 2015 WL 1344466, at *3; *see also* Fed. R. Civ. P. 33(b)(4) ("the grounds for objecting to an interrogatory must be stated *with specificity*.") (emphasis added). Any generic assertions of "undue burden" should be rejected, as CDK's Responses do not offer any explanation of the specific burdens that would purportedly be involved in responding to the Interrogatories, or any explanation of why those burdens would be "undue". *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (undue burden or expense, actual or potential, must be shown by "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.").[2]

---

[2] *See also Jenkins v. White Castle Mgmt. Co.*, No. 12 C 7273, 2014 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014) (noting that "claims of 'undue burden' are not exempt from the basic principle that unsupported statements of counsel . . . are not evidence and do not count."); *Jackson v. N'Genuity Enters. Co.*, No. 09 C 6010, 2011 WL 4628683, at *15 (N.D. Ill. Oct. 3, 2011) ("[B]oilerplate claims of undue burden are insufficient.") (citing *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 351, 360-61 (N.D. Ill 2005)).

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

First, CDK's own "unauthorized" access to other DMS providers' DMSs is relevant to CDK's counterclaims for breach of contract, as CDK's own conduct within the automotive industry may guide the interpretation of those provisions of the MSA which purportedly prohibit dealers from providing their DMS login credentials to third parties. *See Hellyer Communs. v. WRC Props.*, 969 F. Supp. 1150, 1154 (S.D. Ind. 1997) ("Rules of contract interpretation ordinarily confine the Court's analysis to the explicit terms of the instrument. However, the Restatement (Second) of Contracts permits evidence extrinsic to a contract to be considered in order to establish an industry usage which would have been understood by the contracting parties to form the backdrop to their agreement."). However, the existence of an industry custom "cannot be considered established when the proof consists of a few isolated instances." *Roper Whitney of Rockford, Inc. v. TAAG Mach. Co.*, No. 99 C 50032, 2002 WL 425925, at *4 (N.D. Ill. Mar. 18, 2002)) (internal quotations omitted) (quoting *Nat'l Diamond Syndicate, Inc. v. United Parcel Serv., Inc.,* 897 F.2d 253, 260 (7th Cir.1990)). Accordingly, CDK's responses to these Interrogatories will provide a quantification of CDK's own "unauthorized" access to other DMS providers' platforms, which will enable the Court to interpret the MSAs in the context of that conduct.

Further, to the extent that CDK engaged in "unauthorized" access to other DMS providers'

DMSs, the frequency of that conduct would be relevant to Dealership Counter-Defendants'
knowledge and belief that third parties' access to the CDK DMS was "authorized" (as that term is
used in the CFAA). Similarly, to the extent that CDK circumvented technological measures
imposed by other DMS providers to prevent access to their DMSs, CDK's actions would be
relevant to whether Dealership Counter-Defendants "intentionally induced Authenticom and other
third parties to repeatedly circumvent CDK's access control measures in order to access the CDK
DMS …," as CDK alleges. Dkt. No. 523, Counterclaims ¶ 151. CDK should be required to identify
how often it engaged in "unauthorized" access to other providers' DMSs and "circumvented"
technological measures imposed by other DMS providers, so that the parties and the Court can
better assess whether Dealership Counter-Defendants were reasonable in believing that their
actions were authorized by CDK.

CDK's unauthorized access to other companies' DMSs is also relevant to CDK's demand
for injunctive relief against Dealership Counter-Defendants. To the extent that CDK has engaged
in (and may continue to engage in) unauthorized access to other providers' DMSs, CDK's own
"unclean hands" and, more generally, the overall equities may bar its request for injunctive relief.
*See Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d
273, 281 (7th Cir. 1992) ("Unclean hands is a traditional defense to an action for equitable relief.");
*FDIC v. Urban P'ship Bank*, No. 17-cv-1517, 2018 WL 2021223, at *7 (N.D. Ill. May 1, 2018)
(the "unclean hands" doctrine "permits courts to deny equitable relief to parties who have
themselves engaged in misconduct or acted in bad faith."). Further, in evaluating requests for
injunctive relief, courts consider a number of factors, including the public interest. *See LAJIM,
LLC v. Gen. Elec. Co.*, 917 F.3d 933 (7th Cir. 2019) ("To merit injunctive relief, a plaintiff must
demonstrate . . . that the public interest would not be disserved by a permanent injunction.") (citing

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). To the extent that CDK engaged (or still engages) in "unauthorized" access to other DMS providers' DMSs, it would be against the public interest for the Court to enjoin auto dealers from engaging in similar conduct.

## II.   CDK SHOULD BE REQUIRED TO SUPPLEMENT ITS INADEQUATE RESPONSE TO DAMAGES-RELATED INTERROGATORY NO. 11

Interrogatory No. 11 asks CDK to "[i]dentify, for each Dealership Counter-Defendant, all 'losses, expenses and other damages' that CDK allegedly suffered as a result of that Dealership Counter-Defendant's alleged (i) breaches of contract, (ii) violations of the Conputer Fraud and Abude Act, and/or (iii) violations of the Digital Millenium Copyright Act, including the date and amount of each such loss, expense, and other damage." *See* Ex. A, Interrogatories at 9-10 However,

CDK's objection to Interrogatory No. 11 is meritless and should be rejected. CDK may not withhold responsive information concerning its alleged damages and losses. *See*, *e.g.*, *Sanimax AGS, Inc. v. Gulf Hydrocarbon, Inc.*, 1:09-cv-37-SEB-TAB, 2010 WL 1088649 , at *2  (S.D. Ind. Mar. 19, 2010) (rejecting counter-plaintiff's argument that it need not respond to damages-related interrogatory because it has "no duty to prove its damages at the discovery stage" and "will produce an expert report on damages in accordance with the Case Management Plan  . . . .," and instead

---

granting motion to compel response to interrogatory seeking itemization of damages); *Stevens v. Dewitt Cty.*, No. 11-cv-3162, 2013 WL 819372, at *4 (C.D. Ill. Mar. 6, 2013) (compelling plaintiff to respond to interrogatory seeking computations of economic damages that "are capable of computation"); *Leonard v. Katsinas*, No. 05-CV-1069, 2006 WL 1063768, at *7 (C.D. Ill. Apr. 20, 2006) ("While [plaintiff] has listed various types of damages, he has not indicated any amounts for these categories as directed in the interrogatory. [plaintiff's] answer is incomplete; he must answer the interrogatories as completely as possible after due inquiry.").

CDK should not be allowed to use the upcoming expert disclosure deadline as an excuse to avoid providing information concerning its alleged damages; Counter-Defendants served the Interrogatories over five months ago, and it is only CDK's repeated efforts to avoid responding to the Interrogatories that has caused the expert report deadline to "bump up" against the filing of this Motion. Dealership Counter-Defendants should not be forced to wait any further, until CDK serves its expert reports, to learn the specific damages that CDK seeks to recover; indeed, there is no guarantee that CDK's expert reports will contain a quantificiation of the damages it seeks, much less a separate quantification of the alleged damages that were caused by each individual Counter-Defendant. ████████████████████████████████████████████ ████████████████████████████████████████████ It is therefore imperative that CDK itself provide information any putative damages through written, sworn interrogatory answers. To the extent that CDK possesses information on the specific damages that it alleges are recoverable under its Counterclaims, CDK should be required to provide that information to Counter-Defendants without further delay.

---

[4] ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████

III.    **THE INFORMATION SOUGHT BY INTERROGATORY NO. 16 IS DIRECTLY RELEVANT TO CDK'S ALLEGED COUNTERCLAIM DAMAGES**

Interrogatory No. 16 asks CDK to ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████

The information sought by Interrogatory No. 16 is relevant to CDK's alleged Counterclaim

damages. █████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

Dealership Counter-Defendants are entitled to know the damages and expenses that CDK

incurred as a result of its own data security failures, so that Dealership Counter-Defendants can

ensure that CDK does not include those same damages and expenses in its calculations of damages

that are allegedly attributable to Dealership Counter-Defendants' purported conduct. Without the

information sought by Interrogatory No. 16, Dealership Counter-Defendants may be unable to

determine whether CDK is including losses caused by its own security failures in CDK's calculation of damages that it is seeking to recover from Dealership Counter-Defendants.

Dealership Counter-Defendants' concern is not merely theoretical. ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ *See Zimnicki*

*v. General Foam Plastics Corp.*, No. 09 C 2132, 2011 WL 833601, at \*2 (N.D. Ill. Mar. 3, 2011) (compelling response to interrogatory which was "reasonably calculated to lead to the discovery of evidence that would either support or undermine [plaintiff's] claim for indirect damages").

## IV. CDK SHOULD BE COMPELLED TO RESPOND TO INTERROGATORIES NOS. 17 AND 18

Interrogatory No. 17 asks CDK to "[i]dentify, for each Dealership Counter-Defendant, all documents that you believe support your counterclaims against that Dealership Counter-Defendant." *See* Ex. A.  Similarly, Interrogatory No. 18 asks CDK to "[i]dentify, for each Dealership Counter-Defendant, all evidence that you believe support your counterclaims against that Dealership Counter-Defendant." *Id.*

Interrogatories Nos. 17 and 18 are classic "contention interrogatories," in that they seek the identification of the evidence that CDK intends to use to support its contentions against each Dealership Counter-Defendant. *See BASF Catalysts LLC v. Aristo, Inc.*, No. 2:07-cv-222, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009) (internal quotations omitted). (the term "contention interrogatories" includes interrogatories asking a party to "state all facts or evidence upon which it bases some specific contention"). "The use of 'contention' interrogatories is provided for under Fed. R. Civ. P. 33(a)(2) [and] a party responding to such interrogatories must make a good faith effort to respond in a timely manner." *Am. Commer. Lines LLC v. Lubrizol Corp.*, 4:12-cv-135-SEB-WGH, 2013 WL 3781119, at *3 (S.D. Ind. July 18, 2013) (granting motion to compel). "[A]n interrogatory is not immune from being answered simply because it is a contention interrogatory." *In re Peregrine Fin. Grp. Cust. Litig.*, 2015 WL 1344466, at *4. Indeed, the federal rules note that "[o]pinion and contention interrogatories are used routinely." Fed. R. Civ. P. 33 Advisory Committee's Notes (2007 Amendment).

The Seventh Circuit permits the use of contention interrogatories to "smoke out" what exactly a plaintiff is claiming or stands to recover. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006). Contention interrogatories provide parties with a "useful tool to 'minimize uncertainty concerning the scope of [a plaintiff's] claims.'" *Deputy v. City of Seymour*, 2014 WL 4907911, at *5 n.2 (S.D. Ind. Sept. 30, 2014) (citing *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996) (brackets in original)); *see also Commerce Bank, N.A. v. Widger*, No. 06-CV-1103, 2008 WL 630611, at *1 (C.D. Ill. Mar. 5, 2008) (contention interrogatories "serve a proper purpose of narrowing the issues for litigation."). "The basic premise of a contention interrogatory is to require a party to commit to a position and to give support for that position." *BASF Catalysts*, 2009 WL 187808, at *2.

In assessing a motion to compel a party to answer contention interrogatories, courts should be guided by "[t]he twin aims of efficiency and fairness" and consider whether the "answers will meaningfully contribute to issue clarification, narrow the scope of the dispute, or provide for early settlement." *Id*. In light of the massive number of documents produced in this MDL proceeding, as well as the hundreds of hours of deposition testimony, it is fair and reasonable for Counter-Defendants to require CDK to identify the specific evidence on which it intends to rely to prove its Counterclaims. Such an identification will clarify the evidence underlying the Counterclaims, will narrow the parties' focus in expert discovery and dispositive motions, and may assist in assessing the merits of the Counterclaims for purposes of settlement.

Contention interrogatories are particularly appropriate in situations involving lengthy, complex complaints such as CDK's Counterclaims, which span 42 pages with 158 paragraphs of allegations. *See In re Ocwen Loan Servicing, LLC*, 491 F.3d 638, 641 (7th Cir. 2007) (noting that contention interrogatories would have been appropriate because "[t]he complaint is a hideous sprawling mess, 40 pages in length with 221 paragraphs of allegations").

Because the relevance of Interrogatories Nos. 17 and 18 is undisputed, it is CDK's burden to establish why it should not have to respond to them. *In re Peregrine*, 2015 WL 1344466, at *1. On that point, CDK merely asserts that "[i]dentifying every single document [or "all evidence"] that may support CDK's Counterclaims is grossly overbroad and unduly burdensome, especially given the vast number of documents produced [, depositions taken, and other evidence developed] thus far in this multidistrict litigation." *See* Ex. B , Responses at 23, 24. This unsupported assertion is wholly insufficient for CDK to meet its burden. *See, e.g., Rawat v. Navistar Intl. Corp.*, No. 08 C 4305, 2011 WL 3876957, at *11 (N.D. Ill. Sept. 1, 2011) (claims of undue burdensomeness require a specific showing of what is involved). CDK offers no plausible explanation why it would

need to review the entire body of evidence in this case in order to respond to Interrogatories Nos. 17 and 18; having filed the Counterclaims, and having pursued discovery into those Counterclaims, CDK should be in a position to identify the principal evidence that it intends to rely on to prove its Counterclaims without undue burden or expense.

Additionally, and contrary to CDK's contention, Dealership Counter-Defendants did ***not*** agree to withdraw these two Interrogatories. Dealership Counter-Defendants previously offered to withdraw Interrogatories Nos. 17 and 18, but only "if CDK agrees to respond to the Interrogatories 1-16". *See* Ex. J attached hereto. CDK did not agree to respond to those other Interrogatories, but chose instead to move forward with its Motion for Protective Order, thereby ***rejecting*** Dealership Counter-Defendants' offer. Further, at the hearing on CDK's Motion for Protective Order, the Court made clear that it would not require Dealership Counter-Defendants to maintain their offer to withdraw Interrogatories Nos. 17 and 18. *See* Ex. C, Transcript of Proceedings, June 10, 2019, at 27:18-28:4.

In light of the factors discussed above, CDK should be required to respond to Interrogatories Nos. 17 and 18. *See Estate of Swayzer v. Clarke*, Case No. 16-CV-1703, 2019 WL 1980349 (E.D. Wisc. May 3, 2019) (granting motion to compel responses to contention interrogatories); *United States ex rel. Lusby v. Rolls-Royce Corp.*, 1:03-cv-680-SEB-WGH, 2011 WL 4387293, at *4 (S.D. Ind. Sept. 20, 2011) (granting motion to compel responses to contention interrogatories in *qui tam* action, and ordering the relator "to identify all documents and witnesses that he intends to use at trial to support his claims," including the identification of responsive documents "at least by Bates number").

## CONCLUSION

For the foregoing reasons, Dealership Counter-Defendants respectfully submit that the Court should grant their Motion in its entirety.

DATED:  August 12, 2019                    Respectfully submitted,


                                           */s/ Peggy J. Wedgworth*
                                           Peggy J. Wedgworth (*pro hac vice*)
                                           Elizabeth McKenna (*pro hac vice*)
                                           **MILBERG PHILLIPS GROSSMAN LLP**
                                           One Pennsylvania Plaza, Suite 1920
                                           New York, New York 10119-0165
                                           Tel: (212) 594-5300
                                           Fax: (212) 868-1229
                                           pwedgworth@milberg.com
                                           emckenna@milberg.com

                                           *Interim Lead Counsel for the Dealership
                                           Class*

                                           Leonard A. Bellavia (*pro hac vice*)
                                           Steven Blatt
                                           **BELLAVIA BLATT, PC**
                                           200 Old Country Road, Suite 400
                                           Mineola, New York 11501
                                           Tel: (516) 873-3000
                                           Fax: (516) 873-9032
                                           lbellavia@dealerlaw.com
                                           sblatt@dealerlaw.com

                                           *Dealership Class Plaintiffs' Steering
                                           Committee*

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Daniel E. Gustafson
David A. Goodwin
Daniel J. Nordin
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
dgoodwin@gustafsongluek.com
dnordin@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, Illinois 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.con

David W. Mitchell (pro hac vice)
Alexandra S. Bernay
Carmen A. Medici
**ROBBINS GELLER RUDMAN & DOWD LLP**
655 West Broadway, Suite 1900
San Diego, California 92101
Tel: (619) 231-1058
Fax: (619) 231-7423
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
Shannon M. McNulty
**CLFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31st Floor

17

Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com
SNM@cliffordlaw.com

***MDL Liaison Counsel***

## <u>CERTIFICATE OF SERVICE</u>

       I, Peggy J. Wedgworth, an attorney, hereby certify that on August 12, 2019, I caused a true and correct copy of the foregoing DEALERSHIP COUNTER-DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


                           */s/ Peggy J. Wedgworth*
                           Peggy J. Wedgworth

19