# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | MDL No. 2817 Case No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP CLASS ACTION | **CONTAINS INFORMAION DESIGNATED CONFIDENTIAL AND HIGHLY CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER** |

**CDK GLOBAL, LLC'S RESPONSES AND OBJECTIONS TO
DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF INTERROGATORIES
CONCERNING CDK'S COUNTERCLAIMS**

Defendant CDK Global, LLC ("CDK"), by and through its attorneys, and pursuant to Fed. R. Civ. P. 26 and 33, hereby submits its written objections and responses to the Dealership Class Plaintiffs' (the "Dealership Plaintiffs'") First Set of Interrogatories to CDK Global, LLC Concerning CDK's Counterclaims, dated March 8, 2019 (the "Interrogatories").

## GENERAL OBJECTIONS

1.     CDK asserts each of the following objections to the Interrogatories. In addition to these General Objections, CDK may also state specific objections to an Interrogatory where appropriate. By setting forth such additional specific objections, CDK does not in any way intend to limit or restrict its General Objections. Moreover, to the extent CDK provides a response to any of the Interrogatories to which CDK objects, such response shall not constitute a waiver of any General Objection or specific objection.

2.      Nothing herein shall be construed as an admission by CDK regarding the competence, admissibility, or relevance of any fact sought by the Dealership Plaintiffs' Interrogatories. CDK reserves its right to challenge the competency, relevance, materiality, and admissibility of any information or documents that it produces in response to any discovery request at trial, of this or any other action, or at any subsequent proceeding, of this action or of any other action. Further, CDK intends no incidental or implied admissions by its answers to the Dealership Plaintiffs' Interrogatories. Whether CDK answers or objects to any particular Interrogatory should not be interpreted as an admission that CDK accepts or admits the existence of any fact(s) set out or assumed by such Interrogatory, that the Interrogatories are proper, that CDK's answers or objections constitute admissible evidence, that the documents or information sought are relevant, material, or otherwise within the proper bounds of discovery, that such documents or information are properly discoverable, or that other such discovery requests will be treated in a similar fashion in this or any other proceeding. Furthermore, whether CDK answers part or all of any particular Interrogatory is not intended and should not be construed as a waiver by CDK of any or all objections to such Interrogatory or any other Interrogatory.

3.      CDK objects to any Interrogatory, instruction, definition, or directive contained in the Interrogatories to the extent that it purports to impose any obligations on CDK beyond those set forth in the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Illinois, or any applicable orders of the Court.

4.      CDK objects to the Interrogatories to the extent they are unlimited in time or not limited to the time period relevant to this litigation (e.g., that they purport to see information "from January 1, 2011 to the present"), on the ground that such Interrogatories seek information which is neither relevant to any claim or defense in this action and is overly broad and unduly

burdensome. Therefore, unless otherwise specified in its response to a specific Interrogatory, CDK's responses will be limited to the time period beginning on or after January 1, 2013.

5.      CDK objects to the Interrogatories to the extent they seek the identification of all "instances" or occurrences of certain events because those Interrogatories are overly broad, unduly burdensome, and not proportional to the needs of the case. In accordance with the Dealership Plaintiffs' representations concerning these Interrogatories, to the extent that CDK responds to them, it will provide an approximate number of "instances" and/or a summary of the identifying information sought by the Interrogatory. *See* ECF No. 599-4; ECF No. 632, at 4.

6.      CDK objects to the Interrogatories, and each and every definition, instruction, and request therein, to the extent they seek information and/or documents that: (a) contain privileged attorney-client communications; (b) constitute work product; (c) were prepared in anticipation of or in connection with litigation or trial; (d) disclose the mental impressions, conclusions, opinions or legal theories of any attorney for or other representative of CDK; (e) are subject to the common-interest or joint-defense privileges; or (f) are otherwise privileged or exempt from discovery. To the extent that the Interrogatories, or any one of them, seek such information, CDK hereby claims such privilege and invokes such protection. The fact that CDK does not specifically object to an individual Interrogatory on the grounds that it seeks privileged or protected material shall not be deemed a waiver of the protection afforded by any applicable privilege. Similarly, to the extent any information or documents subject to a privilege or otherwise protected from discovery are produced in response to these Interrogatories, such production is inadvertent and not intended as a waiver.

7.      CDK objects to the Interrogatories to the extent that they seek information and/or documents that are confidential or otherwise proprietary in nature. The represented parties in this

litigation have agreed upon a Second Amended Agreed Confidentiality Order ("Confidentiality Order"), which was approved and entered by the Court on April 25, 2019 (Dkt. 650). Thus, to the extent that an Interrogatory calls for production of confidential or competitively sensitive material, as defined by the Confidentiality Order, CDK will only provide information in response to such Interrogatory subject to that Order.

8.      CDK objects to the Interrogatories to the extent that they violate any constitutional, statutory, or common law rights of privacy and confidentiality, including those provided under U.S. state or federal law or any other country's law, of CDK's employees and other persons, including individuals who are not parties to this litigation. CDK reserves the right to protect the privacy and confidentiality interests of non-parties to this litigation, including by allowing such parties to seek a protective order from the Court prior to the production of information that implicates their confidential or private information, or by redacting such information from any response that CDK may produce.

9.      CDK objects to the Interrogatories to the extent they purport to require the production of documents or information that are not maintained by CDK in the form or manner requested.

10.     CDK objects to the Interrogatories to the extent that they seek the production of documents or information beyond the possession, custody, or control of CDK or its current officers, directors, or employees and/or that cannot be located with a reasonably diligent search, thus making the Interrogatories unduly burdensome.

11.     CDK objects to the Interrogatories on the ground of undue burden to the extent that they seek the production of documents or information currently in the Dealership Plaintiffs'

possession, custody, or control, that is publicly available, or that can be obtained more easily from third parties.

12.     CDK's responses to the Interrogatories are based on its present knowledge, upon a reasonable inquiry. Discovery is ongoing, and CDK's investigation continues. CDK reserves the right to supplement, amend, and correct these responses and objections, if necessary, based on information later obtained through investigation, discovery, or otherwise.

13.     To the extent CDK has objected to or refused to respond to any given Interrogatory, in whole or in part, and to the extent that the Dealership Plaintiffs take issue with any such objection or refusal, CDK is willing to meet-and-confer with the Dealership Plaintiffs to see if a reasonable, mutually-acceptable compromise might be reached.

14.     CDK incorporates each of the foregoing General Objections as though fully set forth in each response and objection below.

**OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS**

1.     CDK objects to each and every "Definition" and "Instruction" set forth in the Interrogatories to the extent that such definitions or instructions purport to broaden terms beyond their ordinary meaning or impose obligations on CDK broader than or inconsistent with the obligations created by Fed. R. Civ. P. 26 and 33 and/or any applicable Local Rule or other Court Order. CDK will respond to the Interrogatories in accordance with the Federal Rules.

2.     CDK objects to the Dealership Counter-Defendants' definition of "Authenticom" in Definition No. 2 as "the Plaintiff in this action," in so far as Authenticom is not the only Plaintiff in this multidistrict litigation and these Interrogatories purport to relate to CDK's Counterclaims, not to any claims brought by Authenticom, the Dealership Plaintiffs, or other any party.

5

3.      CDK objects to the Dealership Counter-Defendants' definitions of "CDK" and "you," "your" and "your company" in Definition Nos. 4 and 16 as overly broad and unduly burdensome to the extent they purport to require CDK to produce information and/or documents beyond CDK's possession, custody, or control. In addition, CDK objects to Definition Nos. 4 and 16 to the extent they purport to require CDK to produce information and/or documents within the possession, custody, or control of any person or entity other than its current officers, directors, employees, agents, or any person acting on CDK's behalf.

4.      CDK objects to the Dealership Counter-Defendants' definition of "data integrators" in Definition No. 6, in so far as an entity that does not own or provide its own DMS but which "provide[s] access by any means to dealer data" on another provider's "DMS database, whether by extracting the data, writing data back into the DMS, or both," is not providing "integration" services as CDK uses and understands the term. To the extent that CDK responds to Interrogatories that reference "data integrators" or "third party integrators," it does not mean that CDK agrees with or accepts the Dealership Counter-Defendants' definitions.

5.      CDK objects to the Dealership Counter-Defendants' definitions of "DMI" and "IntegraLink" in Definition Nos. 7 and 10 as overly broad, unduly burdensome, and seeking documents and information that are irrelevant and not within CDK's possession, custody, or control, to the extent that these definitions purport to include any documents or information pertaining to Digital Motorworks, Inc. or IntegraLink before those entities were acquired by and incorporated into the business operations of CDK.

## CDK'S SPECIFIC RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1**: Identify all public statements by CDK executives, from January 1, 2011 to the present, concerning CDK's policy or position on whether CDK dealers were permitted to provide their DMS login credentials to third parties, including, for each such public statement, (i) the date on which the statement was made, (ii) the identity of the person who made

the statement (or on whose behalf the statement was made), (iii) the identity of the persons or entities to whom the statement was made, and (iv) the content of the statement.



0001117; CDK-2670251; CDK-0016062; CDK-0214705; CDK-0055595; CDK-1176495; CDK-1176497; CDK-0111950; CDK-0887485; CDK-0887504; CDK-0215677; CDK-0012615.

**INTERROGATORY NO. 2**: Identify all instances, from January 1, 2011 to the present, in which CDK communicated (to any entity, including without limitation any dealer or vendor) its consent for a CDK dealer to provide its DMS login credentials to a third party, including, for each such instance, (i) the date(s) of the communication(s), (ii) the people involved in the communication(s), and (iii) the dealer to whom CDK gave the consent.

**RESPONSE:** CDK objects to this Interrogatory as overly broad and unduly burdensome in that it is not proportional to the needs of the case and seeks information that is not relevant to any of CDK's Counterclaims or any defenses to those Counterclaims, and thus is beyond the scope of permissible discovery. Any "communicat[ions]" CDK may have had with any dealers, vendors, or other "entit[ies]" that are not among the named Dealership Counter-Defendants has no bearing on those Dealership Counter-Defendants' breaches of contract and statutory violations.





**INTERROGATORY NO. 3**: Identify all instances, from January 1, 2011 to the present, in which CDK attempted to enforce §§ 6(A), 6(B), and/or 6(D) of CDK's Master Services Agreement ("MSA") against any CDK Dealer, including, for each such instance, (i) the identity of the CDK Dealer, (ii) the date(s) on which CDK attempted to enforce those provisions, (iii) the means by which CDK attempted to enforce those provisions (i.e., through the filing of a lawsuit or arbitration proceeding, the termination of CDK's contract with the dealer, or other means), and (iv) the identity of all persons who possess relevant information about the enforcement attempt.







**INTERROGATORY NO. 4**: Identify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) solicited a dealer to provide DMS login credentials to CDK after the login credentials that CDK had previously been using to access that dealer's DMS had been disabled by the dealer's DMS provider, including, for each such instance, (i) the date(s) on which CDK solicited the dealer to provide the DMS login credentials, (ii) the identity of the dealer's DMS provider, (iii) whether the dealer did provide CDK with new login credentials in response to the solicitation, (iv) whether the dealer sent the new login credentials to CDK in unencrypted "plain text", and (v) the identity of all persons who possess relevant information about the solicitation.



**INTERROGATORY NO. 5**: Identify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) requested or encouraged any dealers to install "software scripts and programs on the dealer's own computers" which "allowed" CDK "to access" the dealer's DMS, and/or were "used to … re-enable CDK's dealer-provider login credentials" after those credentials were disabled (as those terms are used in ¶ 64 of CDK's Counterclaims), including, for each such instance, (i) the date on which the instance occurred, (ii) the identity of the dealer(s) to whom CDK made the request or encouragement.



**INTERROGATORY NO. 6**: Identify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) "dug into" or otherwise accessed any other DMS provider's "DMS software in order to research vulnerabilities" in the DMS provider's "system" and "find different ways to get data out of" the DMS provider's "system" (as those terms are used in ¶ 66 of CDK's Counterclaims) without the DMS provider's prior consent, including,

for each such instance, (i) the date on which CDK accessed the DMS provider's software, (ii) the identity of the DMS provider whose software was accessed by CDK, (iii) the people at CDK who accessed the DMS provider's software, and (iv) the identities of all people who possess relevant information about CDK's access to the DMS provider's software.



**INTERROGATORY NO. 7**: Identify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) used dealer-provided DMS login credentials to extract data from a dealer's DMS, including, for each such instance, (i) the date on which the instance occurred, (ii) the identity of the provider of the DMS from which CDK extracted data; (iii) whether CDK obtained prior consent from the dealer's DMS provider to extract data from that dealer's DMS; (iv) the data fields that were extracted by CDK; (v) whether CDK extracted any proprietary information owned by third parties from the dealer's DMS (including, without limitation, any "DMS program code" or other "proprietary information" of the types referenced in ¶¶ 71-72 of CDK's Counterclaims); and (vi) whether CDK accessed or copied any data that was created using the DMS provider's "third-party proprietary forms and functions within the DMS" (as those terms are used in ¶ 74 of CDK's Counterclaims).





**INTERROGATORY NO. 8**: Identify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) obtained copies of any other DMS provider's DMS software without that DMS provider's prior consent, including, for each such instance, (i) the identity of the DMS provider whose DMS software was obtained by CDK, (ii) the date on which CDK obtained the DMS software, (iii) the identity of the person or entity from whom CDK obtained the DMS software, (iv) whether CDK loaded that software onto CDK's own computers and servers, (v) the identities of all individuals who possess relevant knowledge concerning the circumstances of CDK's acquisition of the DMS software; and (vi) the identities of all individuals who possess relevant information about how CDK used the DMS software.



**INTERROGATORY NO. 9**: Identify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) accessed another DMS provider's DMS and created a copy of "portions of the DMS program code in the computer's Random Access Memory", "original and distinctive page layouts", "graphical content", "text", "arrangement, organization, and display of information", and/or "dynamic user experience" (as those terms are used in ¶ 71 of CDK's Counterclaims) without the DMS provider's prior consent.

***BEGIN CONFIDENTIAL DESIGNATION***



**INTERROGATORY NO. 10**: Identify all instances, from January 1, 2011 to the present, in which CDK knowingly "engaged in unauthorized access to" another DMS provider's DMS (as those terms are used in ¶ 142 of CDK's Counterclaims), including, for each such instance, (i) the date on which CDK engaged in that unauthorized access, (ii) the identity of the dealer whose DMS was accessed by CDK, (iii) the identity of the provider of the DMS with which CDK engaged in unauthorized access, (iv) all data fields that were extracted by CDK through that unauthorized access; and (v) the identities of all individuals who possess relevant information about CDK's unauthorized access to the DMS.



**INTERROGATORY NO. 11**: Identify, for each Dealership Counter-Defendant, all "losses, expenses and other damages" that CDK allegedly suffered as a result of that Dealership Counter-Defendant's alleged (i) breaches of contract, (ii) violations of the Computer Fraud and Abuse Act, and/or (iii) violations of the Digital Millennium Copyright Act, including the date and amount each such loss, expense, and other damage.



**INTERROGATORY NO. 12**: Identify all instances, from January 1, 2011 to the present, in which any dealer's computer systems were overburdened or "tied up" as a result of any Dealership Counter-Defendant's alleged actions, including, for each such instance, (i) the date on

which the instance occurred, (ii) the extent to which the dealer's computer systems were overburdened or "tied up", (iii) any damages that CDK allegedly suffered as a result of the instance, (iv) all facts supporting CDK's assertion that the instance was caused by any Dealership Counter-Defendant's alleged actions; and (v) the identities of all individuals who possess relevant knowledge concerning the instance.





**INTERROGATORY NO. 13**: Identify all instances, from January 1, 2011 to the present, in which CDK's own computer systems (i.e., not including a CDK Dealer's DMS or other

computer systems) were overburdened or "tied up" as a result of any Dealership Counter-Defendant's alleged actions, including, for each such instance, (i) the date on which the instance occurred, (ii) the extent to which CDK's systems were overburdened or "tied up", (iii) any damages that CDK allegedly suffered as a result of the instance, (iv) all facts supporting CDK's assertion that the instance was caused by any Dealership Counter-Defendant's alleged actions; and (v) the identities of all individuals who possess relevant knowledge concerning the instance.



**INTERROGATORY NO. 14**: Identify all instances, from January 1, 2011 to the present, in which CDK's own computer systems (i.e., not including a CDK Dealer's DMS or other computer systems) experienced "data corruption issues" (as that term is used in ¶ 82 of CDK's Counterclaims) as a result of any Dealership Counter-Defendant's alleged actions, including, for each such instance, (i) the date on which the "data corruption issues" occurred, (ii) the extent to which CDK's systems experienced "data corruption issues", (iii) any damages that CDK allegedly suffered as a result of the "data corruption issues", (iv) all facts supporting CDK's assertion that the "data corruption issues" were caused by any Dealership Counter-Defendant's alleged actions; and (v) the identities of all individuals who possess relevant knowledge concerning the "data corruption issues".



20



**INTERROGATORY NO. 15**: Identify all instances, from January 1, 2011 to the present, in which a data security breach occurred as a result of any Dealership Counter-Defendant's alleged actions, including, for each such instance, (i) the date on which the data security breach occurred, (ii) the date on which CDK first learned of the data security breach, (iii) the individuals or entities whose data was breached in the data security breach, (iv) any damages that CDK allegedly suffered as a result of the data security breach, (v) all facts supporting CDK's assertion that the data security breach was caused by any Dealership Counter-Defendant's alleged actions; and (vi) the identities of all individuals who possess relevant knowledge concerning the data security breach.







**INTERROGATORY NO. 17**: Identify, for each Dealership Counter-Defendant, all documents that you believe support your counterclaims against that Dealership Counter-Defendant.

**RESPONSE:** CDK objects to this Interrogatory as overly broad and unduly burdensome in that it is not proportional to the needs of the case, and thus is beyond the scope of permissible discovery. Identifying every single document that may support CDK's Counterclaims is grossly overbroad and unduly burdensome, especially given the vast number of documents produced thus far in this multidistrict litigation. Additionally, on information and belief, Dealership Counter-Defendants have agreed to withdraw this Interrogatory, and therefore no Response is required. *See* ECF No. 599-4; ECF No. 632, at 4, 10 (stating that Dealership Counter-Defendants' offer to withdraw Interrogatories No. 17 and 18 "still stands").

**INTERROGATORY NO. 18**: Identify, for each Dealership Counter-Defendant, all evidence that you believe supports your contentions against that Dealership Counter-Defendant.

**RESPONSE:** CDK objects to this Interrogatory as overly broad and unduly burdensome in that it is not proportional to the needs of the case, and thus is beyond the scope of permissible discovery. Identifying "all evidence" that may support CDK's Counterclaims is grossly overbroad and unduly burdensome, especially given the vast number of documents produced, depositions taken, and other evidence developed thus far in this multidistrict litigation. Additionally, on information and belief, Dealership Counter-Defendants have agreed to withdraw this Interrogatory, and therefore no Response is required. *See* ECF No. 599-4; ECF No. 632, at 4, 10 (stating that Dealership Counter-Defendants' offer to withdraw Interrogatories No. 17 and 18 "still stands").


Dated:  July 3, 2019                                    Respectfully submitted,

                                                        /s/ *Matthew D. Provance*
                                                        Matthew D. Provance
                                                        Britt M. Miller
                                                        MAYER BROWN LLP
                                                        71 South Wacker Drive
                                                        Chicago, IL 60606
                                                        (312) 782-0600
                                                        mprovance@mayerbrown.com
                                                        bmiller@mayerbrown.com

                                                        Mark W. Ryan
                                                        MAYER BROWN LLP
                                                        1999 K Street NW
                                                        Washington, DC 20006
                                                        (202) 263-3000
                                                        mryan@mayerbrown.com

                                                        *Counsel for Defendant*
                                                        *CDK Global, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2019, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC'S RESPONSE AND OBJECTIONS TO DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF INTERROGATORIES CONCERNING CDK'S COUNTERCLAIMS** to be served by email upon counsel of record pursuant to the SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com email list by agreement of the parties in accordance with Fed. R. Civ. P. 5(b)(2)(E).

*/s/ Matthew D. Provance*
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL  60606
Phone:  (312) 782-0600
Fax:  (312) 701-7711
E-mail:  mprovance@mayerbrown.com

## **VERIFICATION**

I, Michael Noser, hereby declare that I am employed by CDK Global, LLC ("CDK") as Senior Director, Operations of CDK Data Services. I have read the foregoing RESPONSES AND OBJECTIONS TO DEALERSHIP CLASS PLAINTIFFS' FIRST SET OF INTERROGATORIES CONCERNING CDK'S COUNTERCLAIMS dated July 3, 2019, and based on CDK's records, on information furnished to me, or on my personal knowledge, and without waiving any objections asserted therein, the statements of fact contained in these responses are true and correct to the best of my knowledge and belief.

Except as to matters stated on information and belief, I declare under penalty of perjury of the laws of the United States that the foregoing statement is true and correct.

Executed on July 3, 2019, at Austin, Texas.

Michael Noser
Senior Director, Operations
CDK Data Services