# EXHIBIT D



NEW YORK
LOS ANGELES

Matthew A. Kupillas
Direct Dial: (212) 613-5697
mkupillas@milberg.com

July 11, 2019

BY EMAIL

Britt M. Miller
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606

Re: *In re Dealer Management Systems Antitrust Litigation - CDK's Responses and Objections to Dealership Class Plaintiffs' First Set of Interrogatories Concerning CDK's Counterclaims*

Dear Counsel,

I write concerning CDK's Responses and Objections to Dealership Class Plaintiffs' First Set of Interrogatories Concerning CDK's Counterclaims, which were served by CDK on July 3, 2019 (the "Responses"). For the reasons set forth below, Dealership Plaintiffs request a meet-and-confer conference concerning the Responses.

**Interrogatory No. 1**:

Dealership Plaintiffs believe that CDK's objections to Interrogatory No. 1 are without merit. The information sought by the interrogatory is relevant to CDK's Counterclaims, as CDK's publicly stated policy on dealer-permissioned access to the CDK DMS may, *inter alia*, inform the Court's interpretation of certain provisions of the Master Services Agreements ("MSAs") between Counter-Defendants and CDK, establish that CDK waived certain provisions of the MSAs, and demonstrate that Dealership Counter-Defendants did not knowingly induce any third parties to engage in unauthorized access to CDK's DMS. CDK's objection that "the burden of deriving or ascertaining information responsive to this Interrogatory is substantially the same for Dealership Counter-Defendants as it is for CDK" is factually incorrect, as CDK's executives will certainly have a greater knowledge of their own public statements on this subject than Dealership Counter-Defendants possess. CDK's objection to the term "CDK executives" is meritless; despite CDK's size, the number of executives who would have been making public statements about this subject on CDK's behalf is likely to be small. Accordingly, we believe that CDK should fully respond to this Interrogatory.

July 11, 2019
Page 2

Moreover, while CDK identified "various documents responsive to this Interrogatory", that response is insufficient. This Interrogatory seeks the identification of "all public statements", not merely a handful of self-serving examples. Further, many of the documents identified by CDK do not contain any responsive information, as those documents say nothing about "CDK's policy or position on whether CDK dealers were permitted to provide their DMS login credentials to third parties", but instead reflect only general statements about DMS security.[1]

**Interrogatory No. 2**:

Dealership Plaintiffs believe that CDK's objections to Interrogatory No. 2 are without merit. The information sought by this Interrogatory is relevant to CDK's Counterclaims, as CDK's giving of consent to individual dealers to provide their DMS login credentials to third parties, *inter alia*, would have informed Dealership Counter-Defendants about CDK's policy concerning dealer-permissioned access to the DMS. It is also relevant to whether CDK gave "authorization" to dealers to allow third parties to access their DMS as that term is used in the Computer Fraud and Abuse Act ("CFAA"), and whether Dealership Counter-Defendants knowingly induced any third parties to engage in unauthorized access to CDK's DMS.

Further, while CDK did identify a small number of documents that purportedly identify dealers whose MSAs contained Non-Standard Addenda ("NSAs") permitting those dealers to provide their DMS login credentials to third parties, Interrogatory No. 2 seeks the identification of all communications of such consent, not merely those that were formally documented in MSAs. To the extent that CDK is aware of other instances -- aside from the MSAs -- in which CDK communicated its consent for a CDK dealer to provide its DMS login credentials to a third party, CDK is required to identify those instances.

**Interrogatory No. 3**:

Dealership Plaintiffs believe that CDK's objections to Interrogatory No. 3 are without merit. The information sought by this Interrogatory is relevant to CDK's Counterclaims, as CDK's efforts to enforce (or failure to enforce) the relevant provisions of the MSAs may, *inter alia*, inform the Court's interpretation of those provisions of the MSA, and may establish that CDK waived those provisions of the MSAs through its consistent and intentional failure to enforce them.

While CDK did provide a narrative response to this Interrogatory, CDK's response is deficient. Interrogatory No. 3 calls for the identification of "all" efforts by CDK to enforce the relevant provisions of the MSA, but CDK has only provided examples of those enforcement efforts. Further, many of the examples identified by CDK are not responsive to this Interrogatory,

---

[1] Two of the documents that CDK identified as responsive to Interrogatory No. 1 (CDK-0887485 and CDK-0887504) have been withheld from production by CDK under claim of privilege. This is puzzling, as Interrogatory No. 1 seeks the identification of public statements made by CDK executives, and due to their public nature, such statements would not be protected from disclosure by claim of privilege. Dealership Plaintiffs request that CDK clarify if it is continuing to assert privilege over the production of these documents, or if CDK intends to withdraw those claims of privilege.



July 11, 2019
Page 3

as they do not reflect efforts by CDK to enforce the relevant provisions of the MSA, but instead reflect general suggestions concerning data security. CDK should amend its responses to identify all instances in which it attempted to enforce the relevant provisions of the MSA, and to remove any non-responsive information.

**Interrogatories Nos. 4, 7 and 10**:

Dealership Plaintiffs believe that CDK's objections to Interrogatories Nos. 4, 7, and 10 are without merit. CDK objects to each of these Interrogatories on the ground that "[a]ny past conduct by CDK, DMI and/or IntegraLink with respect to the DMSs of other DMS providers is not relevant to whether the Dealership Counter-Defendants' actions with respect to the CDK DMS were lawful or appropriate."

However, the information sought by these Interrogatories is directly relevant to CDK's Counterclaims and Dealership Counter-Defendants' defenses thereto, for multiple reasons. For example, CDK's own "unauthorized" access to other DMS providers' DMSs may well prove fatal to CDK's allegations. *See Hellyer Communs. v. WRC Props.*, 969 F. Supp. 1150, 1154 (S.D. Ind. 1997) ("Rules of contract interpretation ordinarily confine the Court's analysis to the explicit terms of the instrument. However, the Restatement (Second) of Contracts permits evidence extrinsic to a contract to be considered in order to establish an industry usage which would have been understood by the contracting parties to form the backdrop to their agreement.").

Further, to the extent that CDK engaged in "unauthorized" access to other DMS providers' DMSs, that conduct would have been well-known within the automotive sales industry, and thus would be relevant to Dealership Counter-Defendants' knowledge and belief that third parties' access to the CDK DMS was authorized. Similarly, to the extent that CDK circumvented technological measures imposed by other DMS providers to prevent access to their DMSs, industry knowledge of CDK's actions would be relevant to whether Dealership Counter-Defendants "intentionally induced Authenticom and other third parties to repeatedly circumvent CDK's access control measures in order to access the CDK DMS …", as CDK alleges. Counterclaims ¶ 151.

CDK's unauthorized access to other DMS providers' DMSs is also relevant to CDK's demand for injunctive relief against Dealership Counter-Defendants. To the extent that CDK has engaged in (and may continue to engage in) unauthorized access to other providers' DMSs, CDK's own "unclean hands" and, more generally, the overall equities may bar its request for injunctive relief. *See Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992) ("Unclean hands is a traditional defense to an action for equitable relief."). Further, in evaluating requests for injunctive relief, courts consider a number of factors, including the public interest. *See LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933 (7th Cir. 2019) ("To merit injunctive relief, a plaintiff must demonstrate . . . that the public interest would not be disserved by a permanent injunction.") (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). To the extent that CDK has engaged, and may still engage, in "unauthorized" access, it would be against the public interest for the Court to enjoin Dealership Counter-Defendants from engaging in similar conduct.



July 11, 2019
Page 4

**Interrogatories Nos. 11, 12, 13, and 14**:

Dealership Plaintiffs believe that CDK's objections to these Interrogatories are without merit. Each of these Interrogatories seeks information concerning the damages and losses that CDK purportedly suffered as a result of Dealership Counter-Defendants' alleged breaches of contract and statutory violations. As such, CDK's objection that these Interrogatories "seek[] information that is not relevant to any of CDK's Counterclaims or any defenses to those Counterclaims" is patently incorrect. Further, while CDK objects to these Interrogatories on the ground that they are "premature in that [they] seek[] information subject to expert opinion and analysis", CDK may not withhold responsive information concerning its alleged damages and losses that is currently within CDK's knowledge. *See*, *e.g.*, *Sanimax AGS, Inc. v. Gulf Hydrocarbon, Inc.*, 1:09-cv-37-SEB-TAB, 2010 U.S. Dist. LEXIS 26443, at *6 (S.D. Ind. Mar. 19, 2010) (rejecting counter-plaintiff's argument that it need not respond to damages-related interrogatory because it has "no duty to prove its damages at the discovery stage" and "will produce an expert report on damages in accordance with the Case Management Plan …").

With regard to Interrogatory No. 14, CDK asserts multiple objections, and does not provide any response; however, CDK then states "that its investigation is ongoing, and it reserves the right to supplement its response to this Interrogatory to the extent additional information becomes available." Dealership Plaintiffs request that CDK clarify its response to this Interrogatory: Does CDK assert that Interrogatory No. 14 is so objectionable that it does not merit a response, or does CDK assert that it does not currently possess any information that is responsive to this Interrogatory?

**Interrogatory No. 16**:

Dealership Plaintiffs believe that CDK's objections to this Interrogatory are without merit. The information sought by this Interrogatory is relevant to CDK's Counterclaims; Dealership Plaintiffs are entitled to know the specific damages and costs that CDK incurred as a result of its own data security weaknesses and failures, *inter alia*, in order to ensure that CDK does not include those same damages and costs in any calculation of the damages and losses that are allegedly attributable to Dealership Counter-Defendants' alleged breaches of contract and statutory violations.

**Interrogatories Nos. 17 and 18**:

In its responses to these Interrogatories, CDK states that "on information and belief, Dealership Counter-Defendants have agreed to withdraw this Interrogatory, and therefore no Response is required." CDK is correct that Dealership Counter-Defendants offered to withdraw these Interrogatories, both before CDK moved for a protective order, and in the briefing on that motion. However, by continuing to pursue its motion for protective order to a decision by the Court, CDK implicitly rejected Dealership Counter-Defendants' offer. Moreover, at the hearing on CDK's motion for protective order, Judge Gilbert stated that "You know, if plaintiffs are still willing to say, we will withdraw these and accept something else, I'm not saying now my ruling supersedes that." Transcript of Proceedings, June 10, 2019, at 28. However, following that hearing, Dealership Counter-Defendants did not indicate that we are still willing to withdraw these



July 11, 2019
Page 5

Interrogatories, and CDK was wrong to presume so "on information and belief". CDK is required to fully respond to these Interrogatories.

* * *

    The foregoing is not intended to provide an exhaustive description of the inadequacies of the Responses or our arguments pertaining thereto. We request a conference to meet-and-confer concerning the matters discussed above. Please inform us of your availability for a conference in the next week.

                                              Very truly yours,

                                              */s/ Matthew A. Kupillas*

                                              Matthew A. Kupillas

MAK:ln

cc:     All counsel of record

