**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-00864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| THE DEALERSHIP CLASS ACTION | Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT CDK GLOBAL, LLC'S RESPONSE IN OPPOSITION TO DEALERSHIP CLASS PLAINTIFFS' MOTION (i) TO COMPEL PRODUCTION OF CDK/COX SETTLEMENT AGREEMENT; AND (ii) TO STAY WITTMAN DEPOSITION PENDING RULING ON MOTION**

The Dealership Plaintiffs' motion to compel is based on pure speculation and conjecture. There is no basis for thinking that the confidential, arms-length settlement agreement between CDK Global, LLC ("CDK") and Cox Automotive, Inc. and its subsidiaries ("Cox") requires Cox to "cooperate" with CDK or will otherwise influence the testimony of any Cox witness. In fact, CDK and Cox have represented to the Dealership Plaintiffs' counsel in writing that the settlement agreement contains no cooperation requirement and that the parties are not otherwise cooperating in the litigation. There also is no basis for demanding production of the settlement agreement to avoid a supposed risk of "double recovery." If and when a verdict is entered on CDK's counterclaims, the Dealership Plaintiffs *may* be able to show the agreement's potential relevance for damages purposes, but until then their supposed concerns about double recovery are purely hypothetical. The Court should deny the motion to compel in its entirety.

## **ARGUMENT**

Rule 26(b)(1) permits discovery of documents that are relevant to a claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The court has "significant discretion" in balancing these factors when resolving a motion to compel. *Baxter Int'l, Inc. v. AXA Versicherung*, 224 F. Supp. 3d 648, 651 (N.D. Ill. 2016) (Gilbert, J.) (citing *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996)).[1]

---

[1] The Dealership Plaintiffs state that the court may, for "good cause," order discovery into information not related to any claims or defenses but "related to the broader subject matter at hand." Dkt. 738 ("MTC") at 3. That is incorrect. As this Court has explained, the 2015 amendments "deleted from Rule 26 a party's ability, for good cause, to obtain discovery of any information relevant to the subject matter of the case." *Ye v. Cliff Veissman, Inc.*, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016) (Gilbert, J.).

Because the subject of the Dealership Plaintiffs' motion to compel is a confidential settlement agreement, the Dealership Plaintiffs face an even more stringent relevancy standard. Both the Seventh Circuit and the Federal Rules recognize that as a matter of public policy "[t]he law generally favors and encourages settlements." *Nat'l Cas. Co. v. White Mountains Reins. Co. of Am.*, 735 F.3d 549, 556 (7th Cir. 2013); *see also, e.g.*, Fed. R. Evid. 408. In light of the fundamental policy favoring settlement, courts have recognized that when a party moves to compel production of a confidential settlement agreement, the burden is "on the requester" to make "a *particularized and/or heightened* showing that the settlement information sought is relevant and likely to lead to admissible evidence." *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 n.1 (S.D. Ind. 1999) (collecting cases) (emphasis added).[2]

Here, the Dealership Plaintiffs contend that the CDK/Cox settlement agreement is relevant on three grounds: (1) to establish a possible damages offset in light of CDK's purportedly "overlapping" counterclaims; (2) to investigate "potential bias" of Cox witnesses; and (3) to "promote settlement discussions" between CDK and the Dealership Plaintiffs. MTC 4-6. As shown below, these arguments are wholly unpersuasive. The Dealership Plaintiffs do not satisfy *any* standard for relevance, let alone the heightened standard that prevails in this context.

## I. THE DEALERSHIP PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY OF THE CONFIDENTIAL SETTLEMENT AGREEMENT TO EXPLORE SPECULATIVE CLAIMS OF "DOUBLE RECOVERY."

The Dealership Plaintiffs argue that the settlement agreement is relevant to a possible damages offset regarding CDK's counterclaims. MTC 4-5. However, they do not explain how or

---

[2]       *See also, e.g.*, *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 2018 WL 6169347, at *2-3 (N.D. Cal. Nov. 26, 2018) (while pretrial discovery is "admittedly broad," courts "have found it less so when examining the potential disclosure of confidential terms"); *In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013) (requiring "heightened showing of relevance or need"); *Wis. Elec. Power Co. v. N. Assur. Co. of Am.*, 2007 WL 4631363, at *1 (W.D. Wis. Oct. 31, 2007) (requiring "a likelihood that admissible evidence will be generated by the disclosure of . . . the settlement agreements").

why CDK's settlement with Cox could lead to a double recovery for CDK. Instead, the Dealership Plaintiffs note that the claims against Cox turn in part on allegations that Cox "engaged in conduct violative of CDK's contract with dealers" by accessing certain dealers' CDK-licensed DMS without authorization (MTC 2), and assert that they are "entitled to examine the Settlement Agreement to determine how much CDK has already received" and "to ensure that Dealership Plaintiffs are not being asked to pay for any alleged damages that CDK has already recovered through the Cox settlement" (MTC 4). This is insufficient. Indeed, the Dealership Plaintiffs' own authority demonstrates that a party cannot compel production of a confidential settlement agreement by simply reciting general allegations regarding supposedly overlapping claims.

In *Wagner v. Circle W Mastiffs*, 2013 WL 2096655 (S.D. Ohio May 14, 2013) (cited at MTC 3 & 5), the court declined to compel production of a settlement agreement because the moving party had not "set forth facts" about the "potentially overlapping claims" that would "show, or even make likely, that conduct engaged in" by the settling party "could form the basis for any claim" against the non-settling party, or that the settling and non-settling parties' actions "*necessarily* combined to produce a single injury." *Id*. at *9 (emphasis added). The same is true here. Where a movant fails to adduce specific facts in support of a double recovery theory and relies on "nothing more than speculation," the motion to compel "will not be granted." *Id*.

Even if the Dealership Plaintiffs had addressed the offset issue with sufficient specificity, their argument fails for a second reason: It is inappropriate to compel production of a confidential settlement agreement on setoff grounds prior to trial. As the court in *Wisconsin Electric Power* recognized, determinations regarding setoff "will not be able to be made until final judgment has been rendered." 2007 WL 4631363, at *1. The court thus denied the motion to compel because "[a]t the present time" discovery of the settlement agreement "does not appear to be reasonably

calculated to lead to discovery of admissible evidence." *Id*. at *1-2. The *Wagner* court, denying a renewed motion to compel, reached the same conclusion. It explained that the prudent course is to "dela[y] disclosure of settlement agreements until after trial because set-off is not an issue to be addressed until after the entry of a verdict." *Wagner v. Circle W Mastiffs*, 2013 WL 4479070, at *4 (S.D. Ohio Aug. 19, 2013) (collecting cases). A host of other decisions are in accord.[3]

Besides *Wagner*, which supports denial of the motion, the other cases Dealership Plaintiffs cite are inapposite and unpersuasive. Two of the cases—*Arrow Electronics, Inc. v. Aetna Casualty & Surety Co.*, 2018 WL 4792014 (C.D. Cal. Apr. 12, 2018), and *Asko Processing, Inc. v. Kibble & Prentice Holding Co.*, 2018 WL 834744 (W.D. Wash. Feb. 12, 2018)—involve an insurer's well-established right to offset coverage obligations by any amounts recovered by the insured. The third—*White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364 (N.D. Ill. 2001)—presented a scenario where it was "undisputed that there are overlapping claims of liability." *Id*. at 367. Moreover, *White* also "found analogical support" in the insurance context, and courts have concluded that its holding "does not extend" to other situations where the availability of an offset was not as straightforward. *In re AT&T Fiber Optic Cable Installation Litig.*, 2002 WL 1364157, at *2 (S.D. Ind. June 5, 2002). Furthermore, none of the cases the Dealership Plaintiffs cite even considered whether it was appropriate to defer production until such time as the Court must address a potential damages offset (if ever).

---

[3]    *E.g.*, *O'Neill v. LVNV Funding, LLC*, 2015 WL 5730271, at *1 (S.D.N.Y. Sept. 30, 2015) ("courts routinely hold that settlement agreements may be withheld until after trial" where relevance turns on the apportionment of damages); *In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 ("set-off may be addressed after a verdict has been entered"); *McKinney v. Balboa Ins. Co.*, 2013 WL 12106204, at *2 (M.D. Fla. Nov. 1, 2013) ("whether the settlement agreement is relevant to the issue of set-off is premature at this time"); *Anderson v. Ford Motor Co.*, 2010 WL 4156256, at *1 (E.D. Pa. Oct. 20, 2010) ("disclosure of settlements should be deferred until after the entry of the judgment when the court would entertain a defendant's set-off argument").

## II. THE DEALERSHIP PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY OF THE CONFIDENTIAL SETTLEMENT AGREEMENT TO EXPLORE SPECULATIVE CLAIMS OF "BIAS."

The Dealership Plaintiffs also contend that the settlement agreement is necessary to test the purported "bias" of a Cox employee, Senior Vice President Lori Wittman, who is scheduled to be deposed next week. This argument is conjectural and premature as well.

The Dealership Plaintiffs do not offer any reason to think that Ms. Witmann had anything to with the settlement agreement, much less that her sworn deposition testimony will be impacted (or "biased") by the settlement agreement in any way. Instead, they offer speculation that "the settlement agreement *may well* be admissible to show, *inter alia*, Wittman's [supposed] bias." MTC 4 n.5 (first emphasis added). As the Second Circuit has stated, "[d]iscovery with respect to a settlement agreement of an ongoing litigation . . . is permissible only where the moving party 'lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.'" *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) (quoting *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987)); *see also Doe v. Methacton School Dist.*, 164 F.R.D. 175, 176 (E.D. Pa. 1995) ("in the Second and Seventh Circuits, discovery [of a confidential settlement agreement] is permitted only if the movant 'lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive'") (quoting *Grant Thornton* and *Mars Steel*). Accordingly, "broad assertions" about a need to impeach witnesses that "might be produced" at trial "are not enough." *Spear v. Fenkell*, 2015 WL 3947559, at *3 (E.D. Pa. June 26, 2015).

The Dealership Plaintiffs' purported need for impeachment material is even less convincing given CDK's and Cox's express written representations that the settlement agreement contains nothing that would require CDK or Cox to cooperate in this litigation. *See* Ex. A hereto.

5

Should the Court wish to verify the accuracy of that representation, CDK will submit a copy of the settlement agreement for *in camera* review.[4]

In addition to lacking a factual basis, the motion to compel is premature. As *Wagner* recognizes, a confidential settlement agreement is not relevant "to the issue of bias or credibility where there is . . . no indication that particular witnesses will testify." 2013 WL 2096655, at *6. The Dealership Plaintiffs provide no reason to think that Ms. Wittman will be called as a trial witness. If she is, the Dealership Plaintiffs can renew their request for the settlement agreement at that time. *See id.* at *7; *Pamlab, LLC v. Rite Aid Corp.*, 2006 WL 286199, at *2 (E.D. La. Feb. 7, 2006) ("Should the issue of witness bias arise in such a way that the fact of the settlement and/or deposition testimony is insufficient to impeach . . . , Breckenridge is free to re-urge its request for production."). Indeed, the Dealership Plaintiffs pile speculation on speculation, asserting that they need the settlement agreement now because, "[g]iven Ms. Wittman's location outside this District, her deposition *may well* be treated as trial testimony." MTC 5 (emphasis added). But whether Ms. Wittman will be called to testify at a potential trial (in a District yet to be determined) and whether she will agree to attend is far too hypothetical to justify a motion to compel at this point.

The Dealership Plaintiffs' authority on this point is again unpersuasive. In addition to *Wagner*, they cite *White*, where the settling party was allegedly conspiring with the co-defendant and thus would "likely be a witness" a trial. 203 F.R.D. at 367. Here, by contrast, the Dealership Plaintiffs have not made any such showing nor adduced any facts that would support a finding that

---

[4]     Courts routinely review confidential settlement agreements *in camera* in response to motions to compel. *E.g.*, *Newby v. Enron Corp.*, 623 F. Supp. 2d 798, 839 (S.D. Tex. 2009) ("As for bias and credibility, . . . the Court will examine the settlement agreements *in camera* to insure that Defendant is not deprived of any relevant information"); *Rowe Entm't, Inc. v. William Morris Agency, Ltd.*, 2001 WL 699051, at *1 (S.D.N.Y. June 21, 2001) ("based on an *in camera* review, I find that the settlement agreement contains no such terms"). *Meharg v. I-Flow Corp.*, 2009 WL 3032327 (S.D. Ind. Sept. 18, 2009) (cited at MTC 3), similarly relied on *in camera* review. *Id.* at *2.

former *Plaintiff* Cox is somehow colluding with *Defendant* CDK. The Dealership Plaintiffs also cite *ABN Amro, Inc. v. Capital International, Ltd.*, 2006 WL 6898001 (N.D. Ill. Jan. 30, 2006), which merely noted in dicta that some courts had allowed discovery into settlement agreements for purposes of showing bias. *Id*. at *3. *ABN Amro* also involved particularized evidence that a party had reversed course on a critical substantive issue in the litigation (the existence of an agency relationship between the settling defendant and the other parties) after the settlement took place. *See id*. at *2. Nothing of the sort has taken place here.

The Dealership Plaintiffs also cite *State Farm Mutual Automobile Insurance Co. v. Physiomatrix, Inc.*, 2014 WL 10294813 (E.D. Mich. Apr. 24, 2014), where—contrary to *Centillion* and *Wisconsin Electric Power* (not to mention *Mars Steel*)—the court declined to impose a heightened relevancy standard. The posture of the *State Farm* case also was far different than the present dispute; *State Farm* was decided after the settling party's deposition and much closer to the eve of trial. And *State Farm* is not followed even in the Eastern District of Michigan. As another court in that District later held, a party's general desire to explore "bias" or "credibility" does not warrant disclosure of confidential settlement agreements in large, complex multi-district litigations like this one. *See* Order, *In re Automotive Parts Antitrust Litig.*, No. 12-md-2311, Dkt. 1777, at 9-10 (E.D. Mich. June 19, 2017) ("the Court declines to compel production of settlement agreements between the OEMs and suppliers") (attached as Ex. B hereto).

## III. THE DEALERSHIP PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY OF THE CONFIDENTIAL SETTLEMENT AGREEMENT TO "PROMOTE SETTLEMENT."

The Dealership Plaintiffs briefly urge production of the settlement agreement in order to "promote settlement discussions," observing that the amount of the settlement has "great strategic significan[ce]." MTC 5-6 (citing *White*). This argument perfectly encapsulates why the Dealership Plaintiffs' request is improper and should be denied. The Federal Rules are not intended to provide

litigants with a free peek into their adversary's "strategic" thinking. *Cf. Mars Steel*, 834 F.2d at 684 ("Discovery of settlement negotiations in ongoing litigation is unusual *because* it would give a party information about an opponent's strategy.") (emphasis added). Unsurprisingly, many courts have squarely rejected *White*'s conclusion that a party can show relevancy by claiming that a confidential settlement agreement reached by other parties will promote settlement.[5]

Common sense demonstrates that far from promoting settlement in this and other complex litigation, the rule that the Dealership Plaintiffs urge would undercut it. Litigants exploring settlement will be unwilling to make hard compromises if they know that the remaining parties can demand production of a confidential agreement based on thinly justified theories of relevance and a purported desire to "foster" their own settlement talks. As courts recognize, "absent special circumstances, a court should honor confidentialities that are bargained-for elements of settlement agreements," for "[c]onfidential settlement agreements are likely in the long run to best serve the interests of the public and the parties alike." *Grove Fresh Distributors, Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995). Thus, though they might prefer otherwise, the Dealership Plaintiffs "must evaluate their settlement position and prepare their negotiating strategies using the talents, skills, and resources of their own legal counsel and other expert advisors." *Centillion*, 193 F.R.D. at 553 (denying motion to compel).

## IV. THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY DISCOVERY.

Even if the Dealership Plaintiffs had met their burden to show relevancy (they have not), the motion still should be denied. Rule 26(b)(1) requires not only relevancy but also weighing of competing interests, including the importance of discovery in resolving the issues and whether the

---

[5]     *See, e.g.*, *Wagner*, 2013 WL 2096655, at *8 ("The Court agrees that access to a settlement agreement for purposes of evaluation of settlement or negotiation strategy is not an issue directed to relevance."); *Centillion*, 193 F.R.D. at 553 ("we believe, on balance, that settlements are and will be encouraged, in the run of cases, more by maintaining the confidentiality of agreements than by disclosure").

burden or expense of the proposed discovery outweighs its likely benefit. The Dealership Plaintiffs do not even attempt to show that they satisfy this standard.

Here, any minimal relevance would be outweighed by CDK's and Cox's significant interests in maintaining the bargained-for confidentiality of their settlement as well as the very important public policy favoring voluntary settlement of litigation. "[W]here a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the discovering party will be required to demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would cause either the other party or the interests cited by it." *Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y. 1985). Under that standard, courts have regularly declined to compel production of "sensitive, albeit unprivileged, material." *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 562 (S.D.N.Y. 1996); *see also Xmission, L.C. v. Adknowledge, Inc.*, 2016 WL 3746528, at *3-4 (D. Utah July 8, 2016) (denying motion to compel production of settlement agreements as disproportionate to the needs of the case). Denial of the motion on this ground is particularly warranted at this time because, as discussed above, the motion is so speculative and premature. *See supra* Parts I & II.

Any minimal relevance also is outweighed by the fact that the Dealership Plaintiffs' motion is vastly overbroad. Although the Dealership Plaintiffs largely claim that they need the settlement agreement to determine if there are cooperation provisions or damages offsets, they have requested production of the *entire* agreement, even those portions that would have no conceivable bearing on those two theories. *Cf. Spear*, 2015 WL 3947559, at *3 (moving party's purported need to investigate bias could be satisfied by production of a redacted agreement "containing the names of the parties and dates of agreement, signature of the parties, and any indemnification provisions

between Squire and Alliance"). This is more proof that the motion to compel is nothing more than an improper fishing expedition.

## V.      THERE IS NO BASIS TO DELAY THE WITTMAN DEPOSITION.

In a single sentence at the end of their brief, the Dealership Plaintiffs argue that the Court should stay Ms. Wittman's deposition (scheduled for August 22, 2019) pending a ruling on the motion. MTC 6. The Court should deny that request.

CDK and Cox's settlement was announced publicly on July 11, 2019. *See* Dkt. 722. The Dealership Plaintiffs did not ask for the settlement agreement until the afternoon of July 31 (twenty days later) and did not move to compel until August 9. *See* Ex. A hereto; Dkt. 736. Moreover, the Dealership Plaintiffs did not notice their motion as an emergency motion and set the hearing for August 15, 2019, just one week before the deposition is scheduled to take place. Dkt. 737. Any urgency here is of the Dealer Plaintiffs' own making. Fact discovery generally closed on April 30, 2019, and Ms. Wittman's deposition is the last outstanding deposition in this MDL. In short, further delay of the remaining Cox deposition is not warranted.

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to compel should be denied.

Dated: August 14, 2019        Respectfully submitted,

*/s/ Britt M. Miller*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on August 14, 2019, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S RESPONSE IN OPPOSITION TO DEALERSHIP CLASS PLAINTIFFS' MOTION (i) TO COMPEL PRODUCTION OF CDK/COX SETTLEMENT AGREEMENT; AND (ii) TO STAY WITTMAN DEPOSITION PENDING RULING ON MOTION** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Britt M. Miller
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
E-mail: bmiller@mayerbrown.com

# Exhibit A

| | |
|---|---|
| **From:** | Miller, Britt M. <BMiller@mayerbrown.com> |
| **Sent:** | Tuesday, August 6, 2019 4:10 PM |
| **To:** | Wallner, Robert |
| **Cc:** | Ho, Derek T.; Nemelka, Michael N.; Wedgworth, Peggy; Ryan, Mark; 'SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com' |
| **Subject:** | [EXTERNAL] RE: DMS |

**\*\*EXTERNAL SENDER\*\***

Rob –

We don't think the Dealership Plaintiffs have provided a basis to show that the settlement agreement is relevant. A number of courts—including in the Seventh Circuit—require a party seeking discovery into a confidential settlement agreement to make particularized showing of need; merely speculating that the agreement might contain something that could be used to impeach a witness is not enough. E.g., *Centillion Data Sys. v. Ameritech Corp.*, 193 F.R.D. 550, 552 n.1 (S.D. Ind. 1999); *Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982). Indeed, the Seventh Circuit, discussing the *General Motors* case you originally cited, has said that "[d]iscovery of settlement negotiations in ongoing litigation is unusual" and "is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive." *Mars Steel v. Continental Nat'l Bank & Tr.*, 834 F.2d 677, 684 (7th Cir. 1987). Dealership Plaintiffs have made (and can make) no such showing here.

In the hopes of avoiding needless litigation on this issue, however, CDK and Cox will represent that the settlement agreement between the two contains no cooperation requirement and the parties are not otherwise cooperating in the litigation. As the allegation of "cooperation" and the resulting potential impeachment of Cox witnesses is the only basis Dealership Plaintiffs have given for seeking discovery of the agreement, this representation should moot that request.

Given the foregoing, we don't believe that a meet-and-confer is necessary, but if you believe that there is something further to discuss, please let us know.

Regards – Britt

_____

**Britt M. Miller**
*Partner*
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
T +1 312 701 8663

LinkedIn | Twitter
mayerbrown.com

---

**From:** Wallner, Robert <RWallner@milberg.com>
**Sent:** Monday, August 05, 2019 12:08 PM
**To:** Wallner, Robert <RWallner@milberg.com>; Miller, Britt M. <BMiller@mayerbrown.com>
**Cc:** Ho, Derek T. <dho@kellogghansen.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Wedgworth, Peggy <pwedgworth@milberg.com>; Ryan, Mark <MRyan@mayerbrown.com>; 'SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com' <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Subject:** RE: DMS

**\*\*EXTERNAL SENDER\*\***

Britt,

As it appears we may be at an impasse, I would like to schedule a meet and confer for this Wednesday, August 7. Please let me know what time that day works for you; if you're unavailable, please propose an alternative time for this week.

Regards,
Rob

---

**From:** Wallner, Robert <RWallner@milberg.com>
**Sent:** Thursday, August 1, 2019 5:21 PM
**To:** Miller, Britt M. <BMiller@mayerbrown.com>
**Cc:** Ho, Derek T. <dho@kellogghansen.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Wedgworth, Peggy <pwedgworth@milberg.com>; Ryan, Mark <MRyan@mayerbrown.com>; 'SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com' <SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com>
**Subject:** [EXTERNAL] RE: DMS

Britt,

Your statement that the CDK/Cox agreement is a "private, non-class" one, simply has no bearing here. In addition to the 7th Circuit's GM decision, numerous cases support discovery of the CDK/Cox settlement agreement. *See, e.g., ABN Amro, Inc. v. Capital Int'l Ltd.*, No. 04 C 3123, 2006 U.S. Dist. LEXIS 3789, at *8 (N.D. Ill. Jan. 30, 2006) ("The courts have allowed discovery of settlement agreements because the settlement terms and agreements may be relevant for the purpose of proving the bias or prejudice of a witness under Rule 408."); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 367-68 (N.D. Ill. 2001) (compelling production of settlement agreement) (citing authorities); *Meharg v. I-Flow Corp.*, No. 1:08-cv-0184-DFH-TAB, 2009 U.S. Dist. LEXIS 85931, at *10 (S.D. Ind. Sept. 18, 2009) (citing *White* with approval); *Wagner v. Mastiffs*, No. 2:08-cv-431, 2013 U.S. Dist. LEXIS 68349, at *18 (S.D. Ohio May 14, 2013) ("settlement agreements frequently are found to be discoverable in order to allow the requesting party to explore [bias and credibility] with respect to witnesses.") (citing authorities); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2014 U.S. Dist. LEXIS 184665, at *7 (E.D. Mich. Apr. 24, 2014).

Unless CDK is prepared to represent that (i) it will not rely on the upcoming Wittman deposition testimony for any purpose (including for summary judgment motion practice), or the live trial testimony of any Cox witness, and (ii) Cox and CDK are not cooperating for any purpose in this litigation, CDK should produce the settlement agreement forthwith. Please let us know.

Regards,
Rob

---

**From:** Wallner, Robert
**Sent:** Thursday, August 1, 2019 10:17 AM
**To:** Miller, Britt M. <BMiller@mayerbrown.com>
**Cc:** Ho, Derek T. <dho@kellogghansen.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Wedgworth, Peggy <pwedgworth@milberg.com>; Ryan, Mark <MRyan@mayerbrown.com>
**Subject:** RE: DMS

Britt,

If you have any authority supporting your refusal to produce the Cox/CDK settlement agreement, please pass it along.

Regards,
Rob

---

**From:** Miller, Britt M. <BMiller@mayerbrown.com>
**Sent:** Thursday, August 1, 2019 10:14 AM
**To:** Wallner, Robert <RWallner@milberg.com>
**Cc:** Ho, Derek T. <dho@kellogghansen.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Wedgworth, Peggy <pwedgworth@milberg.com>; Ryan, Mark <MRyan@mayerbrown.com>
**Subject:** RE: DMS

Rob –

The case you cite is inapplicable in the instant situation and we are unaware of any authority that would compel production of a private, non-class settlement of this nature. As such, we decline your request for its production. Of course, if you believe that there is some authority—other than the case you have already cited—that we should consider, please let us know.

Regards – Britt

_____

**Britt M. Miller**
*Partner*
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
T +1 312 701 8663

LinkedIn | Twitter
mayerbrown.com

---

**From:** Wallner, Robert <RWallner@milberg.com>
**Sent:** Wednesday, July 31, 2019 3:32 PM
**To:** Miller, Britt M. <BMiller@mayerbrown.com>
**Cc:** Ho, Derek T. <dho@kellogghansen.com>; Nemelka, Michael N. <mnemelka@kellogghansen.com>; Wedgworth, Peggy <pwedgworth@milberg.com>
**Subject:** DMS

**\*\*EXTERNAL SENDER\*\***

Britt,

The recently-filed notice of dismissal of the Cox lawsuit references a settlement between CDK and Cox. *See* ECF 722 (filed July 11, 2019). Obviously, the settlement terms, including any cooperation between the settling parties, may affect the Dealership Plaintiffs' case going forward (including the responsiveness of upcoming deponent Lori Wittman and other Cox witnesses to Dealership Plaintiffs' questioning). Accordingly, we request a copy of the settlement agreement. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979). Thank you.

Regards,
Rob

Robert A. Wallner, Esq.
**Partner**

3



One Pennsylvania Plaza, Suite 1920
New York, New York 10119
**Main:** 212-594-5300
**Direct:** 212-946-9335

---

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities, including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

Information about how we handle personal information is available in our Privacy Notice.

Exhibit B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

MASTER FILE NO. 12-md-02311
HON. MARIANNE O. BATTANI

_____

In re: All Auto Parts Cases

2:12-md-02311-MOB-MKM

_____

THIS DOCUMENT RELATES TO:

ALL AUTO PARTS CASES

_____/

**OPINION AND ORDER REGARDING DEFENDANTS' AND OEMs'
OBJECTIONS TO THE SPECIAL MASTER'S ORDER
COMPELLING PRODUCTION OR SETTLEMENT AGREEMENTS
AND SETTLEMENT COMMUNICATIONS**

This matter is before the Court on several objections to the Special Master's

order of January 25, 2017. (Doc. 1649 (Daimler Domestic Entities' Objection); Doc.

1650 (Defendants' Objection); Doc. 1655 (Ford's Objection); Doc. 1656 (Certain OEMs'

Objection)). With the exception of the objection filed by the Daimler Domestic Entities,

which will be addressed separately, the objections consist of similar arguments, and the

Court discusses them collectively for purposes of this opinion. Defendants and certain

subpoenaed entities contend that the Special Master erred by directing production of

settlement-related communications and settlement agreements. Pursuant to notice,

interested parties appeared for a hearing on the objections on May 16, 2017. As

discussed more fully below, the Special Master's Order is **REVERSED IN PART** and

**AFFIRMED IN PART**.

## I.      BACKGROUND

In July and August of 2015, a comprehensive subpoena was served on the Non-Party Original Equipment Manufacturers and their affiliated entities (collectively, "OEMs").  (Doc. 1187, Exh. 2).  By Request No. 31 of the subpoena, the serving parties sought:

> All Documents relating to Your or other OEMs' negotiations or Communications with any of the Defendants or other Components or Assemblies suppliers in connection with Defendants' and other Components or Assemblies suppliers' conduct at issue in MDL No. 2311 and Documents Defendants or other Components or Assemblies suppliers provided to You or other OEMs, in connection with the facts described in any Plaintiffs' Complaints.

By a letter dated December 18, 2015, certain of the OEMs objected to Request No. 31 on the basis that any communications between OEMs and Defendants could be "obtained directly from the Defendants themselves."  Further, the OEMs contended that, "to the extent the request goes beyond such communications, such information would be unequivocally privileged."  (Doc. 1187, Exh. 7).

On January 19, 2016, Automobile Dealer Plaintiffs ("ADPs"), End-Payor Plaintiffs ("EPPs"), Truck and Equipment Dealer Plaintiffs ("TEDPs"), The State of Florida, and The State of Indiana (collectively, "Plaintiffs") moved to compel the OEMs to produce materials sought by Request No. 31 of the subpoena.  (Doc. 1187).  Defendants and certain OEMs responded (Docs. 1216, 1227), Plaintiffs replied (Doc. 1254), certain OEMs filed additional oppositions (Docs. 1519, 1528, 1534, 1536), Plaintiffs filed a supplemental statement (Doc. 1550), and a hearing was held before the Special Master on December 9, 2016.

The Special Master, noting that evidentiary privileges are to be narrowly construed, concluded that "the discussions that occurred at the initial meetings where

the defendants disclosed to the original equipment manufacturers the existence of a conspiracy . . . are not settlement negotiations." (Doc. 1572, pp. 7-9). In further explanation, the Special Master stated that "once the conspiracy has been identified, once the wrong has been described, anything after that is settlement negotiations." (Id., p. 10).

With regard to settlement agreements, the Special Master concluded that "[e]ven under Goodyear Tire [& Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976, 980 (6th Cir. 2003)] a settlement agreement is not subject to exclusion based upon privilege." (Id., p. 7). Acknowledging Defendants' and the OEMs' position that settlement agreements fall outside the scope of Plaintiff's motion to compel, the Special Master concluded that "in the interest of time . . . I am going to order that the settlement documents be produced." (Id., p. 16). The Special Master further held that Defendants and the OEMs "can take the entire matter before Judge Battani on the relevancy of the settlement production and my order that they be produced." (Id.).

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 53(f) provides that the Court shall decide *de novo* all objections to the Special Master's findings of fact, unless the parties otherwise stipulate, and shall also decide *de novo* objections to the Special Master's conclusions of law. See Fed. R. Civ. P. 53(f)(3), (4). (See also Doc. 792 (Order Appointing Master)). In contrast, objections to the Special Master's rulings on procedural matters may be set aside only for abuse of discretion. Fed. R. Civ. P. 53(f)(5).

Issues regarding privilege are legal questions subject to *de novo* review. In re Grand Jury Proceedings Oct. 12, 1995, 78 F.3d 251, 253-54 (6th Cir. 1996). With

regard to the relevance of settlement agreements, the Special Master's ruling was made "in the interest of time" and with the express reservation that objections could be taken up before the Court. (Doc. 1572, p. 16). Accordingly, the Special Master did not address the substance of the Parties' contentions regarding the relevance of settlement agreements, and the Court reviews this issue *de novo*.

## III. ANALYSIS

Plaintiffs seek materials relating to negotiations or communications between the OEMs and Defendants or other suppliers in connection with the allegations at issue in this dispute. Defendants and the OEMs object to producing communications made in furtherance of settlement, citing the "settlement privilege" adopted by the <u>Goodyear</u> Court. In addition, Defendants and OEMs object to producing settlement agreements on the basis that the OEMs' and Defendants' interests in the confidentiality of their settlement agreements and the public policy encouraging settlement outweigh the agreements' relevance to these proceedings.

Further, the Daimler Domestic Entities object to the Special Master's order, contending that all subpoenaed entities except the "core" OEMs were "carved out" by the Court during the June 23, 2016 hearing regarding the Special Master's order of April 20, 2016.

### A. Settlement Communications

Defendants and the OEMs assert that, by requiring production of materials evidencing discussions at "initial meetings," the Special Master's order misapplies the Sixth Circuit settlement privilege recognized in <u>Goodyear</u>. Plaintiffs assert that the "initial meetings" threshold is proper.

4

"[C]ommunications made in furtherance of settlement are privileged." Goodyear, 332 F.3d at 983. This "settlement privilege" serves an important public interest because "[p]arties are unlikely to propose the types of compromises that most effectively lead to settlement unless they are confident that their proposed solutions cannot be used on cross examination." Id. at 980. Moreover, settlement communications are of dubious probative value. Id. at 981, 983 (observing the "inherent questionability of the truthfulness of any statements made [in settlement negotiations]," which "may be motivated by a desire for peace rather than from any concession of weakness of position").

In determining whether a communication is protected by settlement privilege, the question is "whether the particular communication was authored or created for the purpose of settlement negotiations." Thornton v. State Farm Mut. Auto Ins. Co., No. 1:06-cv-00018, 2006 WL 3499986, at *3 (N.D. Ohio Dec. 5, 2006). See also Allen Cnty. v. Reilly Indus., 197 F.R.D. 352, 354 (N.D. Ohio 2000) (holding that letters "generated in the course of settlement discussions between counsel" were privileged).

Goodyear protects settlement communications from discovery whether they "are done under the auspices of the court or informally between the parties." Snap-On Business Solutions, Inc. v. Hyundai Motor America, 2011 WL 6957594, at *1 n.2 (N.D. Ohio Feb. 3, 2011) (quoting Goodyear, 332 F.3d at 980). "There is no requirement that the privileged communication be between adverse parties." Biolumix, Inc. v. Centrus Int'l, Inc., No. 08-11418, 2012 WL 6015896, at *5 (E.D. Mich. Nov. 14, 2013).

The Special Master directed the OEMs to produce "[d]ocuments evidencing discussions or exchanged [*sic*] between OEMs and automotive parts suppliers at initial

5

meetings concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent, as well as descriptions of parts involved and of the wrongful acts of the conspirators." (Doc. 1622).  In contrast, the Special Master ruled that "[d]ocuments analyzing damages caused by the conspiracy, created for the purpose of reaching a settlement, that were exchanged between OEMs and automotive parts suppliers, are settlement communications protected from production by the Sixth Circuit settlement privilege and will not be produced."  (Id.).

On the basis of the law set forth above, the Court reverses the Special Master's order to the extent that it directs the OEMs to produce any materials reflecting "communications made in furtherance of settlement."  The settlement privilege may encompass discussions "concerning the existence of the automotive parts conspiracy and its scope, duration, nature, and extent," so long as those communications were made in furtherance of settlement.

While the Court sympathizes with the Special Master's attempt to craft a bright-line rule, the "initial meetings" threshold fails to ensure proper application of the Sixth Circuit settlement privilege.  Speaking in generalities, the OEMs and Defendants contended that initial meetings, in which suppliers proffered facts regarding their role in the conspiracy, (i) were held only after execution of confidentiality agreements and (ii) were intended to resolve potential claims by the OEMs without litigation.  Although the existence of a confidentiality agreement does not preclude discovery, such an agreement signals the negotiating parties' intent that communications made under the auspices thereof would not be made except in furtherance of settlement.

Moreover, <u>Goodyear</u> does not distinguish between factual proffers and discussions regarding damages.  Plaintiffs assert that <u>Goodyear</u> protects "the back and forth exchange of potential terms and conditions of settlement" but does not protect "descriptions of the suppliers' conspiracy."  (Doc. 1681, p. 7).  This distinction does not comport with the rationales cited by the <u>Goodyear</u> Court, including the unreliable nature of factual assertions made during settlement negotiations.  <u>Goodyear</u>, 332 F.3d at 980 ("What is stated as fact on the record could very well not be the sort of evidence which the parties would otherwise actually contend to be wholly true. That is, the parties may assume disputed facts to be true for the unique purpose of settlement negotiations. The discovery of these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement.") (quoting <u>Cook v. Yellow Freight System, Inc.</u>, 132 F.R.D. 548, 554 (E.D.Cal.1990)).

Accordingly, the OEMs are entitled to assert settlement privilege over any communication made in furtherance of settlement.  The order of the Special Master is reversed to the extent that it directs the OEMs to produce any such communication.

### B. Settlement Agreements

Defendants and the OEMs assert that the Special Master erred by requiring production of "settlement agreements between OEMs and automotive parts suppliers." The objecting parties contend that settlement agreements are outside the scope of Plaintiffs' motion to compel, that the agreements are irrelevant, and that Plaintiffs' need for the agreements is outweighed by the negative impact on present and future settlement negotiations.

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(1).  The court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.  Fed. R. Civ. P. 26(b)(2)(C).  In addition, a party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  Fed. R. Civ. P. 45(d).

The Goodyear settlement privilege does not extend to the settlement agreement itself.  QSI–Fostoria, D.C., LLC v. BACM 2001–1 Central Park West, 2006 WL 2010791 at *2 (N.D.Ohio 2006) (the settlement privilege "does not extend beyond actual negotiations to the terms of the final [settlement] agreement").

Rule 26 demands a "balancing of competing interests" in determining if discovery is appropriate.  Flagg ex rel. Bond v. City of Detroit, 268 F.R.D. 279, 284 (E.D. Mich. 2010).  "[W]here a party establishes that disclosure of requested information could cause injury to it or otherwise thwart desirable social policies, the discovering party will be required to demonstrate that its need for the information, and the harm that it would suffer from the denial of such information, outweigh the injury that disclosure would

cause either the other party or the interests cited by it." Apex Oil Co. v. DiMauro, 110 F.R.D. 490, 496 (S.D.N.Y. 1985). The Court may decline to compel production of "sensitive, albeit unprivileged, material." Johnson v. Nyack Hosp., 169 F.R.D. 550, 562 (S.D.N.Y. 1996).

The Special Master directed the OEMs to produce "[s]ettlement agreements between OEMs and automotive parts suppliers." (Doc. 1622). During the hearing on Plaintiffs' motion to compel, the Special Master made clear that his ruling regarding settlement agreements was being made "in the interest of time" and with the understanding that the Parties could "take the entire matter before" this Court. (Doc. 1572). Accordingly, the Court will address de novo the relevance and proportionality of compelling production of the settlement agreements.

Plaintiffs assert that the requested settlement agreements are relevant to: (i) the "practices and mechanics of OEMs' commercial relationship with their suppliers," (ii) "post-conspiracy modifications of collusive rates," (iii) potential bias of OEM witnesses, (iv) discovery of additional materials referenced in the agreements. (Doc. 1680, pp. 17-18). In further explanation, Plaintiffs contend that the settlement agreements are likely to contain descriptions of Defendants' and the OEMs' commercial relationship, as well as Defendants' conduct at issue in the present case. Moreover, Plaintiffs submit that the term "burden" as used in Rule 26 does not encompass commercial confidentiality concerns.

In contrast, Defendants and the OEMs question Plaintiffs' relevance arguments and express concerns regarding the "chilling effect" of compelling OEMs to produce settlement agreements. In particular, Defendants assert that Plaintiffs "do not need

settlement agreements to show price changes in the 'post-collusion' period because that information is available from an alternative source: Defendants' and OEMs' transactional data." (Doc. 1692, p. 2). Further, Defendants and the OEMs assert that the settlement agreements "reflect a myriad of highly sensitive business considerations," the production of which would "serve to discourage such settlement in the future." (Doc. 1655, p. 9). Finally, the OEMs emphasize that a third party subpoena "must take reasonable steps to avoid imposing undue burden on the third party." (Doc. 1694, p. 6 (citing Fed. R. Civ. P. 45(d)(1)). Defendants and the OEMs contend that the term "burden" as used by Rule 26 and Rule 45 does take into consideration commercial confidentiality concerns.

Weighing Plaintiffs' need for the settlement agreements against the detrimental side-effects of compelling production, the Court finds that to order production would be disproportionate to the needs of this case, and would impose an undue burden on the subpoenaed entities. Plaintiffs fail to demonstrate that the settlement agreements contain relevant information that could not be obtained from a less obtrusive source. Accordingly, the Court declines to compel production of settlement agreements between the OEMs and suppliers. The order of the Special Master is reversed to the extent that it directs the OEMs to produce any such agreements.

### C. Daimler Entities' Objection

The Daimler Domestic Entities object to the Special Master's Order on the basis that the Court's June 23, 2016 Order from the bench "set aside" discovery against all the subpoenaed parties other than six "core" OEMs. (Doc. 1649, p. 2). Review of the June 23, 2016 hearing and the surrounding context reveals that the "carve-out" at issue

applied only to the Rule 30(b)(6) depositions that were the focus of the Special Master's order of April 20, 2016.  (See Doc. 1294).

Oral argument during the June 23, 2016 hearing, including by counsel for the Daimler Entities, centered on the burden of preparing and producing Rule 30(b)(6) deponents.  (See, e.g., Doc. 1405, pp. 58, 59).  At the conclusion of this hearing, the Court directed the parties "to submit Rule 45 subpoenas with an outline of the questions to be asked to the larger non-party groups" but "exclude[d] the Daimler Trucks and all of the non-core groups and the rest of the manufacturers."  In provisionally excluding the non-core groups from Rule 30(b)(6) depositions, the Court did not intend to impose a general embargo of all discovery directed to these entities.

For these reasons, the Special Master's Order remains applicable against all subpoenaed entities.

## IV.  CONCLUSION

As discussed above, the OEMs are entitled to assert settlement privilege over any communication made in furtherance of settlement.  In addition, the Court declines to compel production of settlement agreements between the OEMs and suppliers.  The Special Master's Order is **REVERSED** to the extent that it directs otherwise.  Finally, the Special Master's Order applies to all subpoenaed entities and is **AFFIRMED** in this regard.

**IT IS SO ORDERED.**

Date:  June 19, 2017                          s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on June 19, 2017.

s/ Kay Doaks
Case Manager