**PUBLIC REDACTED VERSION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

*In re Dealer Management Systems Antitrust Litigation*, MDL 2817

_____

*This document relates to:*

THE DEALERSHIP CLASS ACTION

_____

No. 1:18-CV-00864

Hon. Robert M. Dow, Jr.

Magistrate Judge Jeffrey T. Gilbert

**DEFENDANT CDK GLOBAL, LLC'S RESPONSE IN OPPOSITION TO
DEALERSHIP CLASS PLAINTIFFS' MOTION TO COMPEL
RESPONSES TO INTERROGATORIES**

**PUBLIC REDACTED VERSION**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    The Dealer Counter-Defendants' Interrogatories 4, 7, and 10 Are Improper ........ 3

        A.    The Interrogatories Are Irrelevant to CDK's Counterclaims .................... 4

        B.    The Interrogatories Are Not Proportional ................................................. 7

    II.    CDK's Response Interrogatory 11 is Sufficient, and the Issue is Moot in
        Any Event ................................................................................................................ 9

    III.    Interrogatory 16 is Unrelated to Any Damages that CDK is Seeking ................. 11

    IV.    Interrogatories 17 and 18 Are Improper "Blockbuster" Discovery Requests...... 12

CONCLUSION ................................................................................................................. 15

PUBLIC REDACTED VERSION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Safety, Inc. v. Teachers Realty Corp.*,
   185 Ill.2d 457, 706 N.E.2d 882 (1999) ...................................................................................5

*BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*,
   343 F. Supp. 3d 742 (N.D. Ill. 2018) ......................................................................................2

*Baxter Int'l, Inc. v. AXA Versicherung*,
   224 F. Supp. 3d 648 (N.D. Ill. 2016) (Gilbert, J.) ..................................................................2

*Buchanan v. Chi. Transit Auth.*,
   2016 WL 7116591 (N.D. Ill. Dec. 7, 2016) ............................................................................8

*CNH Indus. Am. LLC v. Jones Lange LaSalle Ams., Inc.*,
   2016 WL 11513247 (E.D. Wis. May 6, 2016) .......................................................................13

*Coexist Foundation, Inc. v. Fehrenbacher*,
   865 F.3d 901 (7th Cir. 2017) ...................................................................................................6

*Dakota Station II Condo. Assoc., Inc. v. Owners Ins. Co.*,
   2016 WL 9735773 (D. Colo. May 16, 2016) .................................................................13, 15

*Deputy v. City of Seymour*,
   2014 WL 4907911 (S.D. Ind. Sept. 30, 2014) ......................................................................15

*DIRECTV, Inc. v. Pickert*,
   2004 WL 2056226 (N.D. Ill. Sept. 8, 2004) .........................................................................11

*Dyson, Inc. v. Sharkninja Operating LLC*,
   259 F. Supp. 3d 816 (N.D. Ill. 2017) ......................................................................................6

*Exec. Mgmt. Servs., Inc. v. Fifth Third Bank*,
   2014 WL 5529895 (S.D. Ind. Nov. 3, 2014) ........................................................................13

*FirstMerit Bank, N.A. v. Quanstrom-Rose L.L.C.*,
   2013 WL 6577028 (N.D. Ill. Dec. 13, 2013) ..........................................................................6

*Gile v. United Airlines, Inc.*,
   95 F.3d 492 (7th Cir. 1996) .....................................................................................................2

*Grynberg v. Total S.A.*,
   2006 WL 1186836 (D. Colo. May 3, 2006) .....................................................................13, 14

*Hart v. Louisiana-Pacific Corp.*,
    2013 WL 12284613 (E.D.N.C. Jan. 4, 2013) ........................................................................11

*Hilt v. SFC Inc.*,
    170 F.R.D. 182 (D. Kan. 1997) ....................................................................................13, 15

*Int'l Union, Allied Indus. Workers of Am., AFL–CIO v. Local Union 589, Allied
    Indus. Workers of Am., AFL–CIO*,
    693 F.2d 666 (7th Cir. 1982) .............................................................................................6

*Lapine v. Edward Marshall Boehm, Inc.*,
    1990 WL 43572 (N.D. Ill. Mar. 28, 1990) .........................................................................5

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
    2011 WL 4387293 (S.D. Ind. Sept. 20, 2011) .................................................................14

*Meridian Sec. Ins. Co. v. Sadowski*,
    441 F.3d 536 (7th Cir. 2006) ...........................................................................................15

*NanoeXa Corp. v. Univ. of Chicago*,
    2011 WL 1399264 (N.D. Ill. Apr. 13, 2011) .....................................................................5

*In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*,
    491 F.3d 638 (7th Cir. 2007) ...........................................................................................15

*Shondel v. McDermott*,
    775 F.2d 859 (7th Cir. 1985) .............................................................................................5

*Estate of Swayzer v. Clarke*,
    2019 WL 1980349 (E.D. Wis. May 3, 2019) ...................................................................14

*Ye v. Cliff Veissman, Inc.*,
    2016 WL 950948 (N.D. Ill. Mar. 7, 2016) (Gilbert, J.) .....................................................2

**Statutes**

Computer Fraud and Abuse Act ...............................................................................................5, 10

Digital Millennium Copyright Act...........................................................................................6, 10

**Other Authorities**

Fed. R. Civ. P. 26.....................................................................................................................2, 11

**PUBLIC REDACTED VERSION**

## <u>INTRODUCTION</u>

The Dealer Counter-Defendants served 18 broad and far-reaching Interrogatories purportedly connected to CDK's counterclaims against them in this action. CDK answered 12 of the Dealers' Interrogatories, but objected to the remaining 6 because they are not, in fact, relevant to the counterclaims, they are immensely overbroad and burdensome, and/or they are otherwise improper or disproportionate to the needs of the case in light of the vast amounts of both fact and expert discovery that has already been produced on the same subject matter.[1]

CDK, Reynolds, Plaintiffs, and non-parties to this litigation have produced more than 1.75 million documents, more than 80 witnesses have been deposed, and the Court has already been called upon to resolve many discovery disputes. Any further discovery at this point should be laser-guided. However, the Dealer Counter-Defendants' Interrogatories are anything but "narrowly targeted." Dkt. 742 ("MTC") at 3. They seek a detailed accounting of thousands of events over an 8+ year period, CDK's costs associated with purported issues that have nothing to do with CDK's counterclaims or any damages that CDK is seeking to recover, and the identification of literally "all documents" and "all evidence" that support CDK's allegations. Further, those portions of the Dealers' motion seeking to compel more detailed disclosures of CDK's damages calculation are entirely moot in light of CDK's expert report on that issue, served last week.

The Dealer Counter-Defendants' explanations of purported relevance for many of the Interrogatories at issue do not withstand scrutiny. Moreover, the additional discovery that the Dealers are seeking through these Interrogatories is cumulative, unnecessary, and not proportional to the needs of the case. The Court should deny the motion to compel in its entirety.

---

[1] Subject to its stated objections, CDK did answer Interrogatory No. 11—one of the 7 Interrogatories now in dispute—but not to the improper level of detail the Dealer Counter-Defendants have demanded. In any event, that demand is now moot. *See infra*, pg. 11.

**PUBLIC REDACTED VERSION**

## ARGUMENT

Rule 26(b)(1) permits discovery of documents that are relevant to a claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). The court has "significant discretion" in balancing these factors when resolving a motion to compel. *Baxter Int'l, Inc. v. AXA Versicherung*, 224 F. Supp. 3d 648, 651 (N.D. Ill. 2016) (Gilbert, J.) (citing *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir. 1996)).[2] Moreover, as the Dealers concede, MTC at 7, these Interrogatories must be "relevant to CDK's [c]ounterclaims" against them, as opposed to the litigation in general or their own affirmative claims against CDK.

In accordance with these standards, CDK appropriately objected to the Interrogatories at issue, and—contrary to any assertion that CDK attempted to "run out the clock," MTC at 2—did so in timely fashion. Far from being "narrowly targeted," *id.* at 3, the disputed Interrogatories are sweeping in scope and often far removed from any issues relevant to CDK's counterclaims or possible defenses to the counterclaims. Indeed, several of the Interrogatories at issue bear no relevance to the counterclaims at all and simply attempt to seek additional discovery on the Dealership Plaintiffs' own affirmative claims (Nos. 4, 7, 10, 16). The remaining Interrogatories

---

[2] The Dealer Counter-Defendants state—as they have previously, *see* Dkt. 738 at 3—that the court may, for "good cause," order discovery into information not related to any claims or defenses but "related to the broader subject matter at hand." MTC at 4-5. That is incorrect. This Court has recognized that the 2015 amendments "deleted from Rule 26 a party's ability, for good cause, to obtain discovery of any information relevant to the subject matter of the case." *Ye v. Cliff Veissman, Inc.*, 2016 WL 950948, at *2 (N.D. Ill. Mar. 7, 2016) (Gilbert, J.). Similarly, the Dealer Counter-Defendants misstate the law once again by invoking the old "reasonably calculated to lead to the discovery of" admissible evidence standard. *See* MTC at 4, 12 (internal quotations omitted). The 2015 Rule amendments retired that standard as well. *See BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 343 F. Supp. 3d 742, 745 (N.D. Ill. 2018) (calling reference to the "reasonably calculated" standard "mystifying" given its 2015 retirement).

are either fully moot in light of CDK's recent expert disclosures (No. 11), or are so overbroad on their face that they fall well beyond the scope of appropriate discovery (Nos. 17, 18).

## I.     The Dealer Counter-Defendants' Interrogatories 4, 7, and 10 Are Improper

CDK's counterclaims arise from the Dealer Counter-Defendants' violations of provisions in agreements they entered into with *CDK* that prohibit them from facilitating unauthorized third-party (so-called "hostile") access to *the CDK DMS* by sharing their DMS login credentials (usernames and passwords) with unapproved third parties. *See* CDK Global, LLC's Counterclaims Against Certain Dealership Plaintiffs ("CDK's Counterclaims") Dkt. 522 ¶¶ 43-50, 103-137. The Dealer Counter-Defendants' violations of their contracts with *CDK* threatened the system performance of, and security of the data on, *the CDK DMS*. *Id.* ¶¶ 76-90.

Interrogatories 4, 7, and 10, however, ask CDK to identify every time since 2011 that two former CDK subsidiaries—DMI and IntegraLink—attempted to, or did, hostilely access *non-CDK DMSs* to extract data from *non-CDK* dealers. More specifically, these Interrogatories are largely aimed at DMI and IntegraLink's access to the Reynolds DMS. It is undisputed that until 2015, DMI and IntegraLink accessed that DMS via hostile integration. *See, e.g.*, CDK's Mem. in Support of Mot. to Dismiss Dealers' Consolidated Compl. (Dkt. 265), at 5. But neither that fact nor the number of times that DMI and IntegraLink hostilely accessed the Reynolds DMS is in any way relevant to CDK's counterclaims or any possible defenses to them. Rather, these Interrogatories are a veiled attempt to obtain more discovery on Plaintiffs' own affirmative claims against CDK. *See* Opp. Ex. 1 (RFP 31); Opp. Ex. 2 (RFP 18); Opp. Ex. 3 (RFP 100).[3]

---

[3] The Dealership Counter-Defendants served a request for production seeking "[a]ll documents regarding CDK's use of any Third Party Integrator," a term that was defined to include both DMI and IntegraLink. Opp. Ex. 1 (RFP 31, Definition No. 24; *see also* Definition Nos. 12, 16). Authenticom served requests for production seeking "[a]ll documents and communications related to Reynolds blocking or disabling of the dealer-provided login credentials that [DMI] and/or IntegraLink used to access the Reynolds DMS" and "[c]ommunications and documents concerning any instance in which a CDK, DMI, and/or IntegraLink

PUBLIC REDACTED VERSION

## A.    The Interrogatories Are Irrelevant to CDK's Counterclaims

The Dealership Counter-Defendants' strained efforts to connect these Interrogatories to CDK's counterclaims are unpersuasive. Each argument rests on an entirely faulty apples-to-oranges comparison of access by (1) different entities (Authenticom and the other hostile third parties enabled by the Dealership Counter-Defendants vs. DMI and IntegraLink), (2) to different DMSs (CDK DMSs vs. Reynolds DMSs), (3) licensed to different dealers (CDK dealers vs. Reynolds dealers), (4) under different contracts (CDK's DMS contract vs. Reynolds's DMS contract), and (5) occurring during different time periods (ongoing conduct by the Dealers vs. historical conduct by DMI and IntegraLink between 2011 and 2015).

First, the Dealer Counter-Defendants assert that the number of times DMI and IntegraLink engaged in "unauthorized" access to Reynolds's DMS "may guide the interpretation of" provisions in the Dealers' own DMS contracts with CDK that "prohibit dealers from providing their DMS login credentials to third parties." MTC at 7. It would not. Whether DMI and IntegraLink engaged in "unauthorized" access to the Reynolds DMS or understood their conduct to be prohibited under Reynolds's DMS contract with its own customers is of no moment to whether an entirely different agreement—the CDK DMS contract—prohibits the Dealer Counter-Defendants from sharing their DMS login credentials with third parties. Nor would the number of times that DMI and IntegraLink accessed the Reynolds DMS establish any "industry custom" relevant to interpreting the CDK DMS contract. *Id.* Tellingly, the Dealer Counter-Defendants do not explain how DMI and IntegraLink's purported conduct vis-à-vis the Reynolds DMS informed their own understanding of any provisions in the CDK DMS contract governing third-party access to the CDK DMS, nor

---

employee, agent, or independent contractor sent a dealership user-id and/or password in an unencrypted format through email" Opp. Ex. 2 (RFP 18); Opp. Ex. 3 (RFP 100). Interrogatories 4, 7, and 10 clearly seek to explore the same subject-matter as these prior requests for production.

**PUBLIC REDACTED VERSION**

could they. Evidence of a purported industry custom or usage is of no assistance to interpreting provisions in a contract when the "industry custom on which plaintiff relies is not relevant." *Lapine v. Edward Marshall Boehm, Inc.*, 1990 WL 43572, at *9 (N.D. Ill. Mar. 28, 1990).[4]

Second, the Dealer Counter-Defendants assert that whether and how many times DMI and IntegraLink accessed the Reynolds DMS bears upon their "knowledge and belief" as to whether their own conduct was "authorized" by CDK. MTC at 8. That argument fails for the same reasons set forth above: What DMI and IntegraLink purportedly did to access *the Reynolds DMS* would not establish whether Dealer Counter-Defendants believed they were authorized by CDK to provide login credentials to third parties to access *the CDK DMS*.[5]

Third, the Dealer Counter-Defendants assert that the information sought by these Interrogatories could establish an equitable defense of "unclean hands," MTC at 8, but that is incorrect. The Seventh Circuit has explained that the unclean hands doctrine "only applies when there is a *direct nexus* between the bad conduct and the activities sought to be enjoined." *Shondel v. McDermott*, 775 F.2d 859, 869 (7th Cir. 1985) (emphasis added) (internal quotations omitted). That nexus is lacking here, as Interrogatories Nos. 4, 7, and 10 seek information regarding alleged

---

[4] Notably, the Dealer Counter-Defendants also do not identify any provisions in their contracts that are ambiguous such that evidence of a purported industry custom would be admissible to interpret them. *See*, *e.g.*, *NanoeXa Corp. v. Univ. of Chicago*, 2011 WL 1399264, at *3 (N.D. Ill. Apr. 13, 2011) ("When interpreting a contact, the court looks first to its text, and if the text is 'facially unambiguous, then the contract is interpreted by the trial court as a matter of law without the use of parol evidence.'") (*quoting Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 706 N.E.2d 882, 884 (1999)). If the Dealers are referring to a provision in some of their contracts with CDK that prohibits them from permitting "any person other than employees and agents of [the dealer]" to access the DMS, the Court's recent order on the Dealer Counter-Defendants' motion to dismiss considered and expressly rejected their argument that the term "agent" in this provision is ambiguous. *See* Dkt. 749 at 7-8 (quoting *Hernandez ex rel. Gonzalez v. Tapia*, 2010 WL 5232942, at *7 (N.D. Ill. Dec. 15, 2010) ("The phrase 'agents and employees' is not ambiguous and therefore the court will apply the plain meaning of these terms.")).

[5] In addition, the Dealer Counter-Defendants' relevance argument is moot to the extent it relies on CDK's counterclaim under the Computer Fraud and Abuse Act ("CFAA"). *See* MTC at 7-8. On September 3, 2019, the Court dismissed that counterclaim without prejudice. *See* Dkt. 749 at 24.

conduct that "does not arise out of the same transaction from which" CDK's counterclaims arise. *Dyson, Inc. v. Sharkninja Operating LLC*, 259 F. Supp. 3d 816, 836 (N.D. Ill. 2017). The Dealer Counter-Defendants all licensed their DMSs from CDK. Purported conduct by DMI and IntegraLink concerning other DMSs used by non-CDK dealers is entirely distinct.

Courts have also recognized that "[t]he bad conduct constituting unclean hands must involve fraud, unconscionability or bad faith *toward the party proceeded against*," but DMI and IntegraLink's "unauthorized" access of non-CDK DMSs had nothing to do with, much less was directed toward, the Dealer Counter-Defendants. *See FirstMerit Bank, N.A. v. Quanstrom-Rose L.L.C.*, 2013 WL 6577028, at *2 (N.D. Ill. Dec. 13, 2013) (quoting *Int'l Union, Allied Indus. Workers of Am., AFL–CIO v. Local Union 589, Allied Indus. Workers of Am., AFL–CIO*, 693 F.2d 666, 672 (7th Cir. 1982)) (emphasis added). The Seventh Circuit recently declined to apply the unclean hands doctrine under Illinois or Florida law where the party asserting it "was not the victim of" fraudulent conduct by the founder of the plaintiff corporation, yet "sought to have the court rely on" the founder's conduct toward third parties "as a reason for denying relief" to the plaintiff corporation. *Coexist Foundation, Inc. v. Fehrenbacher*, 865 F.3d 901, 909 (7th Cir. 2017). As in *Coexist*, "[t]he doctrine of unclean hands simply does not apply to this situation," where the Dealer Counter-Defendants were in no way "the victim[s]," or even the targets, of any conduct potentially responsive to Interrogatories 4, 7, or 10. *See id.*[6]

---

[6] The Dealer Counter-Defendants also argue that granting CDK injunctive relief would be "against the public interest," but do so only in conclusory and undeveloped fashion. *See* MTC at 9. The Dealer Counter-Defendants cannot generically assert that the "public interest" is on their side in order to sidestep the fact that any conduct by DMI or IntegraLink, with respect to non-CDK DMSs licensed by other dealers, has no bearing on CDK's request for an injunction against the Dealer Counter-Defendants' enabling of unauthorized third-party access to CDK's DMSs. In any event, it remains unclear what interest the public could possibly have in preserving the Dealer Counter-Defendants' ability to continue breaching their contracts with CDK or violating (for certain Dealer Counter-Defendants) the Digital Millennium Copyright Act. *See* CDK's Counterclaims, ¶¶ 133-137, 147-158.

PUBLIC REDACTED VERSION

### B. The Interrogatories Are Not Proportional

Any marginal relevance these Interrogatories might have is clearly outweighed by the burden that responding to them would impose. They seek the identification of "all instances," over an 8+ year period, that DMI or IntegraLink solicited a dealer for login credentials after previously-used credentials had been disabled (No. 4), used dealer-provided login credentials to extract data from a DMS (No. 7), and "knowingly 'engaged in unauthorized access to' another DMS provider's DMS" (No. 10). To fully answer Interrogatory No. 4, for example, CDK would have to identify (i) the date(s) on which DMI or IntegraLink "solicited" login credentials from a dealer, (ii) the dealer's DMS provider, (iii) whether the dealer responded, (iv) how the dealer responded, and (vi) the names of all people who possess "relevant information" about the interaction. MTC Ex. A at 7. Every time that DMI or IntegraLink used dealer-provided credentials, Interrogatory No. 7 would require CDK further to identify (i) the date of access, (ii) the identity of the DMS provider, (iii) whether DMI or IntegraLink obtained the provider's consent, (iv) the specific "data fields" extracted from the DMS, (v) who the data belonged to, including (vi) whether any data that was extracted belonged to the DMS provider. *Id.* at 8. Finally, Interrogatory No. 10 would require CDK to restate some or all of the foregoing information if its access was "unauthorized" by the DMS provider. *Id.* at 9.

As explained in the accompanying Declaration of Steven French, CDK Senior Director of Client & Data Services, the type of records that would be needed to provide this level of granular detail about each instance of access to a non-CDK DMS by DMI or IntegraLink over an 8+ year period are not maintained in the ordinary course of business. French Decl. ¶¶ 4-8. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

PUBLIC REDACTED VERSION

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████

Between 2011 and 2015, Reynolds deployed security measures that sometimes disabled the DMS login credentials that DMI and IntegraLink were using to access Reynolds DMSs. *Id.* ¶ 3. When this happened, in many cases a customer service representative would attempt to contact the affected Reynolds dealer, often by telephone, and determine whether the dealer was willing to create new login credentials for DMI or IntegraLink to use. *Id.* ¶ 7. Account support notes *may* have been entered regarding these type of interactions with *some* dealers, which *might* still be available in the systems that CDK maintains. *Id.* ¶ 8. However, the only way to determine whether any of the information sought by Dealer Class Plaintiffs' Interrogatory No. 4 exists for a particular dealer is to open the account notes and read through them manually. *Id.* ¶ 9.

Based on his review of a sample of records that remain available for several dealers, Mr. French estimates that investigating CDK's records for information responsive to Interrogatory Nos. 4, 7, and 10 and providing responsive information (if any) would take up to one hour per dealer. *Id.* ¶ 9. █████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *Id.* ¶ 5.

Moreover, all of the requested categories of information are unlikely to be available for *any* dealers, and for many dealers, no information is likely to be available at all. *Id.* ¶ 8. Thus, the burden of responding to these Interrogatories would be tremendous, yielding very little, if any, probative value—in CDK's view, none. *See Buchanan v. Chi. Transit Auth.*, 2016 WL 7116591,

at *8 (N.D. Ill. Dec. 7, 2016) (denying majority of a motion to compel where the production of the requested documents "implicate[d] hundreds of hours of work with relatively negligible benefit").

Moreover, CDK has already reviewed *millions* of documents for responsiveness to Plaintiffs' requests for production covering largely the same subject matter, described above. *See supra* n.3. CDK has produced many responsive documents, including records identifying user IDs that DMI and IntegraLink used to access the Reynolds DMS, along with the associated dealerships. *See* French Decl. ¶ 5 (describing CDK-2388722). CDK has also produced records that show the total number of DMI and IntegraLink dealer-vendor "connections" for data extraction services across all DMS platforms on a monthly basis back to 2013. *Id.* (describing CDK-3112792). While the data that CDK has already produced does not align perfectly with what the Dealer Counter-Defendants requested, it is more than sufficient to meet any legitimate discovery needs they may have.

## II. CDK's Response Interrogatory 11 is Sufficient, and the Issue is Moot in Any Event

The Dealer Counter-Defendants complain that CDK did not "meaningfully respond" to their Interrogatory calling for "losses, expenses, and other damages" that CDK seeks to recover on its counterclaims. MTC at 9. But compare CDK's response (MTC Ex. B at 16) to the Dealers' own response to a nearly identical interrogatory (Opp. Ex. 4 at 11-12):

> **CDK INTERROGATORY NO. 6**: Please Describe in detail how, when, the manner in which, and the extent to which You believe You have been damaged as a result of the conduct alleged in the Consolidated Amended Complaint.

> **DEALER RESPONSE**:



PUBLIC REDACTED VERSION

**DEALER INTERROGATORY NO. 11**: Identify, for each Dealership Counter-Defendant, all "losses, expenses and other damages" that CDK allegedly suffered as a result of that Dealership Counter-Defendant's alleged (i) breaches of contract, (ii) violations of the Computer Fraud and Abuse Act, and/or (iii) violations of the Digital Millennium Copyright Act, including the date and amount each such loss, expense, and other damage.

**CDK RESPONSE**:



CDK did not "use" the expert discovery deadline as an "excuse" to avoid revealing the amount of damages it is seeking, MTC at 10, but instead took the position—███████████—that those specific calculations were more properly addressed by its yet-to-be-disclosed expert.

On August 26, 2019, CDK served an expert report that addresses the damages associated with CDK's counterclaims against the Dealer Counter-Defendants. The report sets forth the

categories of damages that CDK is seeking and the underlying methodologies used to calculate them based on the information presently available in the record. As expert discovery unfolds, the Dealer Counter-Defendants are free to explore the expert's opinions and methodologies, including by taking his deposition and by having their own experts review his work. Given CDK's expert disclosures, this dispute over the sufficiency of CDK's Interrogatory response—in addition to being meritless—is entirely moot.[7] *See*, *e.g.*, *DIRECTV, Inc. v. Pickert*, 2004 WL 2056226, at *2 (N.D. Ill. Sept. 8, 2004) ("[N]ow that plaintiff has filed its Rule 26(a)(2) disclosures on expert witnesses, this issue is moot."); *see also Hart v. Louisiana-Pacific Corp.*, 2013 WL 12284613, at *2 (E.D.N.C. Jan. 4, 2013) (defendant produced requested documents after plaintiffs filed their motion to compel, rendering that portion of plaintiffs' motion moot).[8]

### III. Interrogatory 16 is Unrelated to Any Damages that CDK is Seeking

The Dealer Counter-Defendants seek to compel



*Id.* at 11. However, that is exactly backwards. Costs that the Dealer Counter-Defendants admit should not be included in CDK's counterclaim damages calculations are not relevant to those damages. The Dealer Counter-

---

[7] The portion of Interrogatory No. 11 referencing CDK's counterclaim under the CFAA currently is moot for the additional reason that the Court has dismissed that counterclaim without prejudice. *See supra*, n.5.

[8]

Defendants are not entitled to take discovery of unrelated costs incurred by CDK that CDK has not put forth as part of its damages claim in order to prove a negative.

## IV. Interrogatories 17 and 18 Are Improper "Blockbuster" Discovery Requests

These are not, as the Dealer Counter-Defendants assert, simply "contention" interrogatories, but instead are exceedingly overbroad requests for "all documents" supporting CDK's "counterclaims" (No. 17) and "all evidence" supporting CDK's "contentions against" the Dealer Counter-Defendants (No. 18). Many courts have declined to compel responses to similarly boundless "blockbuster" interrogatories, which are overly broad and unduly burdensome on their face, and this Court should reach the same conclusion here.

While true "contention" interrogatories, directed toward a particular contention or assertion of the responding party, may be appropriate in some cases, Interrogatories Nos. 17 and 18 do not pass muster even within that category of discovery requests. Instead, these Interrogatories mirror ones that courts have described as "impermissible 'blockbuster' interrogator[ies] of a nature

repeatedly condemned by trial courts." *See Dakota Station II Condo. Assoc., Inc. v. Owners Ins. Co.*, 2016 WL 9735773, at *6 (D. Colo. May 16, 2016) (quoting *Grynberg v. Total S.A.*, 2006 WL 1186836, at *6 (D. Colo. May 3, 2006)). The interrogatory in *Dakota Station* asked the defendant to "'identify all documents and things in your possession which you believe support your claims against [third-party defendants].'" *Id.* The court denied a motion to compel responses to that interrogatory, explaining that to the extent the third-party defendants had "specific inquiries" about what information allegedly supported particular assertions, then they "should have tailored [their] written discovery to ask for that specific information." *Id.* Similarly, in *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997), the district court found interrogatories overly broad and unduly burdensome where they asked the plaintiff for "'each and every fact supporting all of the allegations' in Counts I through IV of her Complaint" and to "identify '[e]ach person having knowledge of each fact' and '[a]ll documents purporting to support Count[s I through IV].'" The *Hilt* court explained that "[i]ndiscriminate use of blockbuster interrogatories, such as these, do not comport with the just, speedy, and inexpensive determination of the action." *Id.* at 187.[9]

The Court may recall that the Dealer Counter-Defendants initially offered to withdraw these Interrogatories in their briefing on CDK's motion for a protective order. *See* Dkt. 632 at 10

---

[9] Illustrating these concepts, a Wisconsin district court recently granted a motion to compel interrogatory responses only *after* finding that none of the interrogatories at issue "call[ed] upon the defendant to state the entire factual basis of its position in this litigation or summarize the complete testimony of various witnesses." *CNH Indus. Am. LLC v. Jones Lange LaSalle Ams., Inc.*, 2016 WL 11513247, at *3 (E.D. Wis. May 6, 2016). The *CNH* court contrasted the permissible interrogatories in that case with the impermissible, "blockbuster" ones at issue in *Hilt, Grynberg* (where the court found a blockbuster interrogatory to be "unduly burdensome as a matter of law and an abuse of the discovery system," 2006 WL 1186836, at *7) and *Executive Management Services, Inc. v. Fifth Third Bank*, 2014 WL 5529895 (S.D. Ind. Nov. 3, 2014) (where the court refused to compel a response to an interrogatory that demanded "an ill-defined and potentially endless search for anyone who may have information related to this case"). *CNH*, 2016 WL 11513247, at *3. Those cases, the *CNH* court explained, "stand for the unremarkable proposition that interrogatories should not place the burden on a litigant to 'to provide the equivalent of a narrative or otherwise detailed account of her entire case in chief, together with identification of virtually all supporting evidence for each fact.'" *Id.* (quoting *Hilt*, 170 F.R.D. at 186).

-13-

("Dealership Counter-Defendants have already offered to completely withdraw Interrogatories Nos. 17 and 18 (and that offer still stands)."). It is clear why Dealer Counter-Defendants found it appropriate to make that offer, as Interrogatories Nos. 17 and 18 are not tailored to any of CDK's specific contentions, and instead fit precisely within the mold of the overly broad and unduly burdensome "blockbuster" interrogatories that courts have repeatedly rejected.[10]

Particularly in this MDL, where more than _1.75 million_ documents have been produced and more than 80 witnesses have been deposed, a request identify "all documents" or "all evidence" that a party might rely on for any aspect of its claims is unreasonable. Moreover, such a request—which essentially asks for a list of CDK's trial exhibits, witnesses, expert opinions, and deposition designations—is premature. Dispositive motions have yet to be filed or decided, and no trial date on CDK's counterclaims against the Dealer Counter-Defendants has been set.

The decisions that the Dealers cite do not support them. The language they quote from _United States ex rel. Lusby v. Rolls-Royce Corp._, 2011 WL 4387293 (S.D. Ind. Sept. 20, 2011), for example, related to an interrogatory that asked for the identification of "all nonconforming parts that were sold under false claims and why those particular parts were nonconforming." _Id._ at *3. In contrast, Interrogatories Nos. 17 and 18 do not identify any particular contention or assertion that CDK has made, but instead seek the entire universe of "all evidence" and "all documents" supporting any and all contentions and counterclaims CDK has against the Dealer Counter-Defendants. That distinction is underscored by another case the Dealer Counter-Defendants cite, _Estate of Swayzer v. Clarke_, 2019 WL 1980349, at *2 (E.D. Wis. May 3, 2019), which noted that

---

[10] The total lack of specificity or tailoring surrounding Interrogatories Nos. 17 and 18 serves to address the Dealer Counter-Defendants' assertion that "claims of undue burdensomeness require a specific showing of what is involved." _See_ MTC at 14. "[W]hat is involved" in Interrogatories Nos. 17 and 18 is the entirety of CDK's case against the Dealer Counter-Defendants. As in _Grynberg_, these Interrogatories are "unduly burdensome as a matter of law." _See_ 2006 WL 1186836, at *7.

contention interrogatories may ask a party to "state all facts or evidence upon which it bases some *specific* contention . . . or explain the theory behind some *specified* contention." (emphases added) (internal quotations omitted). Other cases to which they point reference contention interrogatories only in passing, and include no discussion of what might qualify as an appropriate interrogatory in that form. *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 641 (7th Cir. 2007); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006); *Deputy v. City of Seymour*, 2014 WL 4907911, at *5 & n.2 (S.D. Ind. Sept. 30, 2014).

In short, given that "blockbuster" interrogatories like Interrogatory Nos. 17 and 18 are routinely "condemned by trial courts," *Dakota Station II Condo. Assoc.*, 2016 WL 9735773, at *6, and "do not comport with the just, speedy, and inexpensive determination of the action," *Hilt*, 170 F.R.D. at 187, CDK's objections should be sustained and the Dealership Counter-Defendants' motion denied.

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to compel should be denied.

Dated: September 3, 2019

Respectfully submitted,

*/s/ Matthew D. Provance*
Britt M. Miller
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

PUBLIC REDACTED VERSION

## CERTIFICATE OF SERVICE

I, Matthew D. Provance, an attorney, hereby certify that on September 3, 2019, I caused a true and correct copy of the foregoing **DEFENDANT CDK GLOBAL, LLC'S RESPONSE IN OPPOSITION TO DEALERSHIP CLASS PLAINTIFFS' MOTION TO COMPEL RESPONSES TO INTERROGATORIES** to be filed and served electronically via email, by agreement of the parties, to counsel of record pursuant to the SERVICE-EXTERNAL-DMSMDL@lists.kellogghansen.com email list. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ Matthew D. Provance*_____
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Phone: (312) 782-0600
Fax: (312) 701-7711
E-mail: mprovance@mayerbrown.com