**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>THE DEALERSHIP CLASS ACTION | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Honorable Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

# DEALERSHIP COUNTER-DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.    Interrogatories 4, 7 and 10 are Proper................................................................... 2

        A.    The Interrogatories Are Relevant to CDK's Request for Injunctive Relief ................ 2

        B.    The Interrogatories Are Relevant to an "Unclean Hands" Defense ........................... 3

        C.    The Interrogatories Are Proportional ........................................................................ 4

    II.    Despite CDK's Abandonment of Its Actual Damages Claims, CDK's Response to Interrogatory 11 Remains Inadequate.............................................................. 5

        A.    CDK Has Abandoned All Claims For Actual Damages............................................. 5

        B.    CDK's Response to Interrogatory 11 Is Still Inadequate, As CDK Has Failed to Disclose Important Information About Its Alleged Statutory Damages ..................... 6

    III.    CDK Has Failed to Establish That Interrogatories 17 and 18 Are Improper or Unduly Burdensome .............................................................................................. 8

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases** Page(s)

*ABF Freight Sys. v. NLRB*,
  510 U.S. 317 (1994) ................................................................................................. 3

*Big Time Worldwide Concert & Sport Club at Town Ctr., LLC v. Marriott Int'l, Inc.*,
  236 F. Supp. 2d 791 (E.D. Mich. 2003) ................................................................... 3

*CNH Indus. Am. LLC v. Jones Lange LaSalle Ams., Inc.*,
  No. 15-cv-981-JPS, 2016 WL 11513247 (E.D. Wis. May 6, 2016) .......................... 9

*Dakota Station II Condo. Assoc. Inc. v. Owners Ins. Co.*,
  No. 14-cv-2839-RM-NYW, 2016 WL 9735773 (D. Colo. May 16, 2016) .............. 8

*Estate of Swayzer v. Clarke*,
  No. 16-cv-1703, 2019 WL 1980349 (E.D. Wis. May 3, 2019) ................................ 9

*Exec. Mgmt. Servs., Inc. v. Fifth Third Bank*,
  No. 13-cv-00582-WTL-MJD, 2014 WL 5529895 (S.D. Ind. Nov. 3, 2014) ........ 10

*Hilt v. SFC Inc.*,
  170 F.R.D. 182 (D. Kan. 1997) ............................................................................ 8, 9

*In re FedEx Ground Package Sys. Empl. Prac. Litig.*,
  273 F.R.D. 424 (N.D. Ind. 2008) ............................................................................. 3

*Long v. Teachers' Retirement Sys. of Ill.*,
  585 F.3d 344 (7th Cir. 2009) .................................................................................. 2

*One Source Indus. v. Parkinson*,
  No. 13-cv-41-TS, 2014 WL 549392 (D. Utah Feb. 11, 2014) ................................ 3

*Papst Licensing GmbH & Co. KG v. Apple, Inc.*,
  No. 6:15-cv-1095, 2017 WL 1233047 (N.D. Ill Apr. 4, 2017) ............................. 10

*Rawat v. Navistar Intl. Corp.*,
  No. 08 C 4305, 2011 WL 3876957 (N.D. Ill. Sept. 1, 2011) ................................ 10

*Steves & Sons, Inc. v. Jeld-Wen, Inc.*,
  252 F. Supp. 3d 537 (E.D. Va. 2017) ..................................................................... 3

*Stokely-Van Camp, Inc. v. Coca-Cola Co.*,
  646 F. Supp. 2d 510 (S.D.N.Y. 2009) ..................................................................... 4

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
  No. 03-cv-680-SEB-WGH, 2011 WL 4387293 (S.D. Ind. Sept. 20, 2011) ....... 9, 10

**Statutes**

H.R. 2418, 54th Leg., 1st Reg. Sess. (Ariz. 2019) ..……………………………………………2

H.R. 3152, 80th Leg. Assemb., Reg. Sess. (Or. 2019) ………………………………………….2

H.R. 617, 66th Leg., Reg. Sess. (Mont. 2019) …………………………………………………..2

H.R. 384, Gen. Assemb., Reg. Sess. (N.C. 2019) ..…………………………………………… 2

**Other Authorities**

Charles A. Wright *et al.*, 8B *Fed. Prac. & Proc. Civ.* § 2177 (3d ed.) ……...……………..….4

Dealership Counter-Defendants respectfully submit this reply memorandum in further support of their motion to compel CDK to respond to their interrogatories concerning CDK's Counterclaims, and in response to CDK's opposition brief ("Opp.," Dkt. #750).[1]

## INTRODUCTION

CDK would like the Court to believe that CDK's own "hostile integration" with other DMS providers' DMSs is completely irrelevant to its Counterclaims. To be sure, CDK would like the Court to ignore the fact that it is now seeking to enjoin dealers from engaging in the same conduct that CDK apparently engaged in, for years. But CDK's own conduct – and its sheer hypocrisy in seeking to prevent others from engaging in that same conduct – is relevant to whether CDK is entitled to an injunction against Counter-Defendants, and to whether CDK's own "unclean hands" provide a defense to CDK's Counterclaims.

CDK's expert reports make clear, and CDK has confirmed, that it is not seeking any *actual* damages from Counter-Defendants, but is only seeking *statutory* damages with respect to its claims under the DMCA. CDK's abandonment of its claims for actual damages renders Interrogatory 11 largely moot. However, CDK should be required to respond to Interrogatory 11, as it has failed to disclose important information about its claims for statutory damages.

Finally, CDK's arguments against Interrogatories 17 and 18 are based on out-of-Circuit cases and misinterpretations of the cases cited by Counter-Defendants. Contrary to CDK's arguments, Counter-Defendants' contention interrogatories are entirely appropriate, and CDK has not offered any evidence supporting its claim that responding to them would be unduly burdensome. Now that fact discovery has closed, it is appropriate for CDK to identify the documents and evidence that it believes support its Counterclaims.

---

[1] This memorandum uses the same defined terms set forth in Counter-Defendants' opening brief.

1

**ARGUMENT**

I.     **INTERROGATORIES 4, 7 AND 10 ARE PROPER**

CDK insists that even though it may have engaged in the ***same conduct*** that underlies its claims against Counter-Defendants, CDK's own conduct is completely irrelevant to the Counterclaims. To the contrary, the information sought in Interrogatories 4, 7 and 10 is relevant to CDK's request for injunctive relief on its Counterclaims, and to Counter-Defendants' potential defenses to those Counterclaims.

    A.     **The Interrogatories Are Relevant to CDK's Request for Injunctive Relief**

CDK disputes that it would contravene public interest to grant CDK an injunction enjoining dealers from engaging in the same type of conduct in which CDK apparently engaged for years (and which it only agreed to stop as a result of its illegal agreement with Reynolds). *See* Opp. at 6 n.6. However, by relegating its response to a conclusory footnote, CDK has effectively waived that argument. *See Long v. Teachers' Retirement Sys. of Ill.*, 585 F.3d 344, 349 (7th Cir. 2009).

In any event, discovery of CDK's own hostile integration activities is essential, as it will enable dealers to show CDK's hypocrisy and demonstrate that the public interest would be disserved by enjoining dealers from doing what CDK itself has done for many years. This conclusion is strengthened by the fact that states have recently enacted statutes prohibiting DMS providers (like CDK) from interfering with dealers' efforts to grant DMS access to third parties.[2] These recently-enacted statutes, by legislatures charged with acting in the public interest, show the

---

[2] *See, e.g.*, Ex. A (H.R. 2418, 54th Leg., 1st Reg. Sess. (Ariz. 2019)); Ex. B (H.R. 3152, 80th Leg. Assemb., Reg. Sess. (Or. 2019)); Ex. C (H.R. 617, 66th Leg., Reg. Sess. (Mont. 2019)); Ex. D (H.R. 384, Gen. Assemb. Reg. Sess. (N.C. 2019)); Ex. E (D. Muller and J. Cherniga, "Dealers to States: Let Us Control Data", *Automotive News*, July 1, 2019, quoting NADA Vice President Jared Allen: "We anticipate additional state activity beyond those bills that have already been introduced.").

strong public interest in ensuring that dealers have the ability to allow third parties to access their DMS data, and that public interest would be promoted by evidence showing that CDK repeatedly engaged in the same activity that CDK now seeks to enjoin.

### B. The Interrogatories Are Relevant to an "Unclean Hands" Defense

Contrary to CDK's argument, "[t]he 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.'" *ABF Freight Sys. v. NLRB*, 510 U.S. 317, 329-30 (1994).

Here, CDK's own conduct is relevant because it will show CDK's "unclean hands." CDK's argument notwithstanding, this is not a situation where a defendant is asserting "unclean hands" based on conduct by the plaintiff that is wholly unrelated to the plaintiff's claims against the defendant.[3] Instead, the alleged conduct that CDK seeks to enjoin (*i.e.*, "unauthorized" third party integration) is the ***same exact type*** of "bad conduct" in which CDK apparently engaged. *See Big Time Worldwide Concert & Sport Club at Town Ctr., LLC v. Marriott Int'l, Inc.*, 236 F. Supp. 2d 791, 809-10 (E.D. Mich. 2003) (denying preliminary injunction based on plaintiff-ticket scalper's "unclean hands," where defendant, an alleged trademark infringer, was not direct victim of plaintiff's acts: "[S]ince Plaintiff has engaged in unconscionable acts that have an immediate and

---

[3] *See, e.g., In re FedEx Ground Package Sys. Empl. Prac. Litig.*, 273 F.R.D. 424, 463 (N.D. Ind. 2008) (where plaintiffs alleged that FedEx misclassified its delivery drivers as independent contractors, the proposed class representative's alleged violations of company policy were an insufficient basis for an "unclean hands" defense because they lacked any nexus with the plaintiffs' claims); *Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 252 F. Supp. 3d 537, 548 (E.D. Va. 2017) ("unclean hands" defense rejected where the plaintiff's purported misappropriation of trade secrets lacked a sufficient nexus to its breach of contract claim); *One Source Indus. v. Parkinson*, No. 13-CV-41-TS, 2014 WL 549392, at *4 (D. Utah Feb. 11, 2014) (plaintiff's failure to appear for an outstanding arrest warrant on charges on cyberstalking did not support an "unclean hands" defense because that conduct lacked any plausible connection to the plaintiff's claims).

3

necessary relation to the equitable relief requested by Plaintiff in this litigation, the doctrine of unclean hands shall bar the issuance of a preliminary injunction."); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 533 (S.D.N.Y. 2009) (stating that "[c]ourts in this Circuit and elsewhere have routinely found that a plaintiff's misconduct relates to the subject matter of its claims where, as here, the plaintiff has engaged in the same kind of behavior that it challenges," and citing cases).

Counter-Defendants are not asking the Court, at this time, to rule on the *merits* of an "unclean hands" defense; instead, Counter-Defendants simply seek discovery into that potential defense. Such discovery is plainly warranted.

C. **The Interrogatories Are Proportional**

CDK argues that it should not be required to respond to Interrogatories 4, 7 and 10 because "the type of records that would be needed to provide this level of granular detail about each instance of access to a non-CDK DMS by DMI or IntegraLink over an 8+ year period are not maintained in the ordinary course of business." *See* Opp. at 7. However, a party's inability to *completely* respond to an interrogatory does not relieve the party from its obligation to provide responsive information that it *does* possess. *See* Charles A. Wright *et al.*, 8B *Fed. Prac. & Proc. Civ.* § 2177 (3d ed.) ("If a party is unable to give a complete answer to an interrogatory, it should furnish any relevant information that is available.").

█████████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████████████
████ *See* Opp. at 7. Counter-Defendants do not seek to unduly burden CDK. During prior meet-and-confer discussions, Counter-Defendants offered to accept summary responses to certain

4

Interrogatories which called for CDK to identify multiple instances of events or conduct.[4] Despite the fact that CDK has repeatedly refused that offer, Counter-Defendants again extend it with respect to Interrogatories 4, 7 and 10. Such summary responses would address CDK's claimed burden, while providing Counter-Defendants with much of the information they seek.

## II. DESPITE CDK'S ABANDONMENT OF ITS ACTUAL DAMAGES CLAIMS, CDK'S RESPONSE TO INTERROGATORY 11 REMAINS INADEQUATE

CDK and its experts have offered no quantification of *any* actual damages allegedly caused by Counter-Defendants. CDK's abandonment of any claims for actual damages renders Interrogatory 11 partially moot. Nonetheless, CDK's response is still inadequate, as CDK has failed to disclose material information concerning its alleged statutory damages under the DMCA.

### A. CDK Has Abandoned All Claims For Actual Damages

In its Response to Interrogatory 11, CDK stated that "[a] quantification of the damages CDK seeks is a subject for expert opinion testimony, which CDK intends to disclose in accordance with the expert disclosure deadlines established by the Court.**"** Response at 16. On August 26, 2019, CDK identified three expert witnesses in support of its Counterclaims: (i) Edward M. Stroz; (ii) Scott Tenaglia; and (iii) Daniel L. Rubinfeld.[5]

Of the three reports, only the Rubinfeld Report contains any quantification of alleged damages. But even that quantification addresses only the range of *statutory* damages allegedly

---

[4] *See* Ex. F (March 21, 2019 M. Kupillas letter to M. Provance: "To the extent that CDK's responses to any Interrogatory would require CDK to identify an unduly burdensome number of 'instances', Dealership Plaintiffs are willing to accept a response which states the approximate number of instances of the events which are the subject of the Interrogatory, and which provides a summary of the other identifying information sought in the Interrogatory.").

[5] The "Stroz Report" and "Rubinfeld Report", each dated Aug. 26, 2019, are attached hereto as Ex. G and Ex. H respectively.

5

recoverable from the Warrensburg and Continental Counter-Defendants under the DMCA.[6] As such, CDK no longer seeks to recover any *actual* damages against those (or other) counter-defendants, including damages for breach of contract or for violations of the CFAA. *See* Opp. at 1 ("[T]hose portions of the Dealers' motion seeking to compel more detailed disclosures of CDK's damages calculation are entirely moot in light of CDK's expert report on that issue, served last week."); *see also* Ex. I (Sept. 6, 2019 email from M. Provance to P. Wedgworth) ("We confirm that CDK's present quantification of damages sought from the named Dealership Counter-Defendants is disclosed in the reports served by CDK's experts on August 26, 2019.").

Given CDK's abandonment of its claims for any *actual* damages, Counter-Defendants no longer seek to compel any further response to Interrogatory 11, except as discussed below.

**B.      CDK's Response to Interrogatory 11 Is Still Inadequate, As CDK Has Failed to Disclose Important Information About Its Alleged Statutory Damages**

[redacted]

---

[6] *See* Ex. H (Rubinfeld Report) at ¶ 12 and Table 1 ("Summary of Damages"); *id.* at ¶¶ 78-79 ("Statutory Damages Under the DMCA").

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████
      ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████
      ████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████ If CDK intends to rely on any other information in order to determine the number of re-

7

enabled credentials for Counter-Defendants, then CDK should set forth such information in response to Interrogatory 11.[7]

### III. CDK HAS FAILED TO ESTABLISH THAT INTERROGATORIES 17 AND 18 ARE IMPROPER OR UNDULY BURDENSOME

CDK's challenge to the propriety of Interrogatories 17 and 18 principally relies on two out-of-Circuit cases, *Dakota Station II Condo. Assoc. Inc. v. Owners Ins. Co.*, No. 14-cv-2839-RM, 2016 WL 9735773 (D. Colo. May 16, 2016), and *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997). Importantly, the court in *Dakota Station II* did *not* find that the interrogatory at issue was so overly broad that no response whatsoever was required; instead, because the defendant had already provided a response to that interrogatory, the court merely found that due to the overbreadth of the interrogatory, it would not compel "any *further* response". See *Dakota Station II*, 2016 WL 9735773, at *6 (emphasis added). In contrast, CDK has provided *no* response whatsoever to Interrogatories 17 and 18.

Further, the interrogatories at issue in *Hilt* were much more burdensome than Counter-Defendants' Interrogatories, because not only did they ask the plaintiff to identify "each and every fact" supporting the plaintiff's allegations, but they also demanded "the identification of each knowledgeable person and supporting document [, which] would require plaintiff to provide the equivalent of a narrative or otherwise detailed account of her entire case in chief, together with identification of virtually all supporting evidence for each fact." *Hilt*, 170 F.R.D. at 186. Counter-Defendants' Interrogatories 17 and 18 do not ask for any such "narrative" or "detailed account", but only seek the identification of the documents and evidence that CDK believes supports its

---

[7] Because CDK does not seek any actual damages from Counter-Defendants, Interrogatory 16 is now moot, and Counter-Defendants no longer seek to compel a further response.

Counterclaims (by Bates number or deposition transcript page citation, where appropriate).[8]

CDK also misconstrues the cases cited by Counter-Defendants. The interrogatories at issue in *Estate of Swayzer v. Clarke*, No. 16-CV-1703, 2019 WL 1980349 (E.D. Wis. May 3, 2019), did not ask the plaintiff to "state all facts or evidence upon which it bases some *specific* contention . . . ." See Opp. at 14-15. Instead, those interrogatories were similar to Interrogatories 17 and 18 here, as they "ask[ed] the plaintiffs to identify the factual bases for their claims." *Estate of Swayzer*, 2019 WL 1980349, at *2. The court found that those were "fairly ordinary contention interrogatories", and ordered the plaintiffs to "provide full and complete answers". *Id.* at *4.

CDK's description of *United States ex rel. Lusby v. Rolls-Royce Corp.*, No. 1:03-CV-680-SEB-WGH, 2011 WL 4387293 (S.D. Ind. Sept. 20, 2011), is also incorrect. CDK asserts that *Lusby* merely "related to an interrogatory that asked for the identification of 'all nonconforming parts that were sold under false claims and why those particular parts were nonconforming.'" See Opp. at 14. However, that only describes *one* of the two interrogatories at issue in *Lusby*. The other was much broader than Interrogatories 17 and 18 here, as it sought the following:

> [A] complete description of every alleged claim, record, statement, representation, act or omission that you contend constitutes a violation of the False Claims Act by describing, for each such alleged violation, your complete factual basis for believing that the claim, record, statement, representation, act or omission violated the False Claims Act; identifying the date of each such alleged violation; identifying each fact and document relevant to each such alleged violation; and identifying each fact and document that you contend demonstrates that Rolls-Royce had the requisite intent, as defined in the False

---

[8] In *CNH Indus. Am. LLC v. Jones Lange LaSalle Ams., Inc.*, No. 15-CV-981-JPS, 2016 WL 11513247 (E.D. Wis. May 6, 2016), cited by CDK (*See* Opp. at 13 n.9), the court *granted* the plaintiff's motion to compel responses to interrogatories after determining that – despite the defendant's protestations – the contention interrogatories at issue would *not* require the defendant "to provide the equivalent of a narrative or otherwise detailed account of her entire case in chief, together with identification of virtually all supporting evidence for each fact." *CNH*, 2016 WL 11513247, at *3 (citing *Hilt*, 170 F.R.D. at 186). The court in *CNH* also based its ruling on the fact that, like CDK, "the defendant has failed to set forth sufficient evidence tending to show that responding to these interrogatories would impose an undue burden on it." *Id.*

9

> Claims Act at 31 U.S.C. § 3729(b), at the time that the alleged claim, record, statement or representation was made or the alleged act or omission occurred.

*Lusby*, 2011 WL 4387293, at *2. The *Lusby* court did not find that to be an improper "blockbuster" interrogatory; instead, the court ordered the relator to supplement its response with a more specific identification of the documents and testimony supporting his claims. *Id.* at *4.

CDK also fails to provide any factual support for its *ipse dixit* contention that responding to Interrogatories 17 and 18 would be unduly burdensome.[9] Instead, CDK merely asserts that responding would be "unreasonable," given that "more than *1.75 million* documents have been produced and more than 80 witnesses have been deposed" (*See* Opp. at 14), completely failing to respond to Counter-Defendants' argument that "CDK offers no plausible explanation why it would need to review the entire body of evidence in this case in order to respond to Interrogatories Nos. 17 and 18 …." Opening Mem. at 14-15. CDK's claims of "undue burden", unsupported by any specific factual showing, should be rejected. *See Papst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 6:15-cv-1095, 2017 WL 1233047, at *3 (N.D. Ill. Apr. 4, 2017) ("The party asserting undue burden must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").[10]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Counter-Defendants' opening memorandum, the Motion should be granted.

---

[9] While the Declaration of Steven French (submitted by CDK along with its Opposition) addresses CDK's purported burden in responding to Interrogatories 4, 7 and 10, it is conspicuously silent concerning Interrogatories 17 and 18.

[10] *See also Exec. Mgmt. Servs., Inc. v. Fifth Third Bank*, No. 1:13-CV-00582-WTL-MJD, 2014 WL 5529895, at *7 (S.D. Ind. Nov. 3, 2014) (granting motion to compel where the defendant "provided no affidavits or other evidence describing the monetary cost or time required to comply with Plaintiffs' requests; consequently it has not carried its burden."); *Rawat v. Navistar Intl. Corp.*, No. 08 C 4305, 2011 WL 3876957, at *11 (N.D. Ill. Sept. 1, 2011).

DATED: September 17, 2019 				Respectfully submitted,

        */s/ Peggy J. Wedgworth*
        Peggy J. Wedgworth (*pro hac vice*)
        Elizabeth McKenna (*pro hac vice*)
        **MILBERG PHILLIPS GROSSMAN LLP**
        One Pennsylvania Plaza, Suite 1920
        New York, New York 10119-0165
        Tel: (212) 594-5300
        Fax: (212) 868-1229
        pwedgworth@milberg.com
        emckenna@milberg.com

        ***Interim Lead Counsel for the Dealership Class***

        Leonard A. Bellavia (*pro hac vice*)
        Steven Blatt
        **BELLAVIA BLATT, PC**
        200 Old Country Road, Suite 400
        Mineola, New York 11501
        Tel: (516) 873-3000
        Fax: (516) 873-9032
        lbellavia@dealerlaw.com
        sblatt@dealerlaw.com

        ***Dealership Class Plaintiffs' Steering Committee***

        Daniel C. Hedlund (*pro hac vice*)
        Michelle J. Looby (*pro hac vice*)
        **GUSTAFSON GLUEK PLLC**
        Canadian Pacific Plaza
        120 South Sixth Street, Suite 2600
        Minneapolis, Minnesota 55402
        Tel: (612) 333-8844
        Fax: (612) 339-6622
        dhedlund@gustafsongluek.com
        mlooby@gustafsongluek.com

        ***Dealership Class Plaintiffs' Steering Committee***

        James E. Barz
        Frank Richter
        **ROBBINS GELLER RUDMAN & DOWD LLP**
        200 South Wacker Drive, 31st Floor
        Chicago, Illinois 60606
        Tel: (312) 674-4674
        Fax: (312) 674-4676
        jbarz@rgrdlaw.com
        frichter@rgrdlaw.con

*Dealership Class Plaintiffs' Steering Committee*

        Robert A. Clifford
        Shannon M. McNulty
        **CLFFORD LAW OFFICES, P.C.**
        120 N. LaSalle Street, 31st Floor
        Chicago, Illinois 60602
        Tel: (312) 899-9090
        Fax: (312) 251-1160
        RAC@cliffordlaw.com
        SNM@cliffordlaw.com

*MDL Liaison Counsel*

## CERTIFICATE OF SERVICE

      I, Peggy J. Wedgworth, an attorney, hereby certify that on September 17, 2019, I caused a true and correct copy of the foregoing DEALERSHIP COUNTER-DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO COMPEL RESPONSES TO INTERROGATORIES to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                              */s/ Peggy J. Wedgworth*
                              Peggy J. Wedgworth