# EXHIBIT C

1          HOUSE BILL NO. 617

2          INTRODUCED BY B. USHER

3

4    A BILL FOR AN ACT ENTITLED: "AN ACT GENERALLY REVISING FRANCHISE LAWS; REVISING

5    AUTOMOBILE FRANCHISE LAWS; PROVIDING THE CIRCUMSTANCES IN WHICH A MANUFACTURER IS

6    PERMITTED TO ADD AN ADDITIONAL FRANCHISEE IN A COMMUNITY; REQUIRING DISCLOSURE OF THE

7    ADDITIONAL FRANCHISEE AND THE ADDITIONAL LOCATION; PROVIDING THE CIRCUMSTANCES IN

8    WHICH A MOTOR VEHICLE DEALER IS ENTITLED TO REPURCHASE OF INVENTORY, PARTS, SPECIAL

9    TOOLS, EQUIPMENT, AND SIGNAGE BY A MANUFACTURER, DISTRIBUTOR, OR WHOLESALER;

10   AMENDING THE PROCESS FOR ESTABLISHING WARRANTY REIMBURSEMENT RATES TO BE PAID BY

11   A MANUFACTURER TO A DEALER; PROVIDING THE CIRCUMSTANCES WHEN A MOTOR VEHICLE

12   DEALER IS ENTITLED TO DESIGNATE A SUCCESSOR DEALER TO INCLUDE RETIREMENT AND

13   PROVIDING A REMEDY; PROVIDING DEFINITIONS; REVISING LAWS PERTAINING TO DATA; AMENDING

14   SECTIONS 30-11-701, 30-11-702, 30-11-703, 30-11-705, 30-11-712, 30-11-713, 61-4-132, 61-4-133, 61-4-134,

15   61-4-204, 61-4-205, 61-4-206, AND 61-4-207, MCA; AND PROVIDING AN IMMEDIATE EFFECTIVE DATE."

16

17          WHEREAS, the Legislature finds that the distribution and sale of motor vehicles within this state vitally

18   affect the general economy of the state, the public interest, and the public welfare; and

19          WHEREAS, in order to promote the public interest and the public welfare and in the exercise of the state's

20   police power, it is necessary to regulate motor vehicle manufacturers, distributors, and factory or distributor

21   representatives and to regulate dealers of motor vehicles doing business in this state in order to prevent frauds,

22   impositions, and other abuses upon its citizens and to protect and preserve the investments and properties of

23   the citizens of this state.

24

25   BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MONTANA:

26

27          NEW SECTION.  **Section 1.  Definitions.** As used in [sections 1 through 3], the following definitions

28   apply:

29          (1)  "Authorized integrator" means any third party with whom a dealer has entered into a contractual

30   relationship to perform a specific function for the dealer that permits the third party to access protected dealer

1    data or to write data to a dealer data system to carry out the specified function.

2    (2) "Dealer" has the same meaning as "new motor vehicle dealer" provided in 61-4-201 and includes any

3    authorized dealer personnel acting on behalf of the dealer owner-operator.

4    (3) "Dealer data system" means any software, hardware, or firmware owned, leased, rented, or controlled

5    by a dealer and used by the dealer in its business operations.

6    (4)  "Dealer data vendor" means any dealer management system provider or customer relationship

7    management system provider, or other vendor providing similar services, other than a motor vehicle manufacturer

8    or distributor or a subsidiary or affiliate of a manufacturer or distributor, that permissibly stores protected dealer

9    data pursuant to a contract with a dealer.

10    (5) "Fees" means charges for access to protected dealer data. Fees must be disclosed to the dealer prior

11    to entering into a contract with a dealer data vendor and must be specified in the terms of the contract.

12    (6) "Protected dealer data" means:

13    (a) any nonpublic personal information, including information defined in 15 U.S.C. 6809 pertaining to a

14    consumer, that is provided to a dealer by a consumer or otherwise obtained by a dealer and stored in the dealer's

15    dealer data system; or

16    (b) any other data regarding a dealer's business operations that is stored in the dealer's dealer data

17    system.

18    (7) "Third party" includes service providers, vendors, dealer data vendors, authorized integrators, and

19    any other individual or entity other than the dealer. The term does not include any government entity acting

20    pursuant to federal, state, or local law, any entity acting pursuant to a valid court order, a motor vehicle

21    manufacturer or distributor or a subsidiary or affiliate of a motor vehicle manufacturer or distributor, or an entity

22    acting on behalf of and with whom the manufacturer or distributor has an express agreement to preserve the

23    privacy of protected dealer data.

24

25    <u>NEW SECTION.</u>  **Section 2.  Prohibited actions.** (1) A third party may not:

26    (a) access, share, sell, copy, use, or transmit protected dealer data from a dealer data system without

27    the express written consent of the dealer;

28    (b) take any action by contract, by technical means, or by any other means that would prohibit or limit

29    a dealer's ability to protect, store, copy, share, or use any protected dealer data. This includes but is not limited

30    to:



*Authorized Print Version* - HB 617

1   (i) imposing any fees or other restrictions on the dealer or any authorized integrator for access to or

2 sharing of protected dealer data or for writing data to a dealer data system;

3   (ii) prohibiting any third party that the dealer has identified as one of its authorized integrators from

4 integrating into that dealer's dealer data system, or placing unreasonable restrictions on integration by any such

5 authorized integrator or other third party that the dealer wishes to be an authorized integrator. Examples of

6 restrictions include but are not limited to:

7   (A) restrictions on the scope or nature of the data shared with an authorized integrator;

8   (B) restrictions on the ability of the authorized integrator to write data to a dealer data system;

9   (C) restrictions or conditions on a third party accessing or sharing protecting dealer data or writing data

10 to a dealer data system; and

11   (D) requiring access to sensitive, competitive, or other confidential business information of a third party

12 as a condition for access to protected dealer data or sharing protected dealer data with an authorized integrator.

13   (c) prohibit or limit a dealer's ability to store, copy, securely share, or use protected dealer data outside

14 the dealer data system in any manner or for any reason; or

15   (d) permit access to or access protected dealer data without the express written consent of the dealer.

16   (2) Nothing in this section prevents any dealer or third party from discharging its obligations as a service

17 provider  under federal, state, or local law to protect and secure protected dealer data or to otherwise limit those

18 responsibilities.

19   (3) A dealer data vendor or an authorized integrator is not responsible for any action taken directly by the

20 the dealer, or for any action the dealer data vendor or authorized integrator takes in appropriately following the

21 written instructions of the dealer, to the extent that the action prevents it from meeting any legal obligation

22 regarding the protection of protected dealer data or results in any liability as a consequence of such actions by

23 the dealer.

24   (4) A dealer is not responsible for any action taken directly by any of its dealer data vendors or

25 authorized integrators, or for any action the dealer takes directly in appropriately following the written instructions

26 of any of its dealer data vendors or authorized integrators, to the extent that the action prevents it from meeting

27 any legal obligation regarding the protection of protected dealer data or results in any liability as a consequence

28 of such actions by the dealer data vendor or authorized integrator.

29

30   <u>NEW SECTION.</u> **Section 3. Other responsibilities and restrictions.** All dealer data vendors and



1 authorized integrators:

2     (1) may access, use, store, or share protected dealer data only to the extent permitted in the contract

3 with the dealer;

4     (2) must make any agreement regarding access to, sharing or selling of, copying, using, or transmitting

5 protected dealer data terminable no more than 90 days' notice from the dealer;

6     (3) must, on notice of the dealer's intent to terminate its contract and in order to prevent any risk of

7 consumer harm or inconvenience, work to ensure a secure transition of all protected dealer data to a successor

8 dealer data vendor or authorized integrator, including but not limited to:

9     (a) providing unrestricted access to, or an electronic copy of, all protected dealer data and all other data

10 stored in the dealer data system in a format that a successor dealer data vendor or authorized integrator can

11 access and use; and

12     (b) deleting or returning to the dealer all protected dealer data prior to termination of the contract pursuant

13 to any written directions of the dealer;

14     (4) must provide a dealer, on request, with a listing of all entities with whom it is sharing dealer data or

15 with whom it has allowed access to protected dealer data; and

16     (5) must allow a dealer to audit the dealer data vendor's or authorized integrator's access to and use of

17 any protected dealer data.

18

19     <u>NEW SECTION.</u> **Section 4. Warranty ~~labor~~ reimbursement.** (1) If a motor vehicle franchisor requires

20 or permits motor vehicle franchisees to perform labor or provide parts in satisfaction of a warranty issued by the

21 franchisor:

22     (a) the motor vehicle franchisor shall reimburse the motor vehicle franchisee for the labor as rendered

23 and for parts and supplies, including but not limited to engine, transmission, and other parts assemblies, as

24 furnished, in an amount equal to the prevailing retail rate charged by the franchisee for such labor or the

25 prevailing retail markup charged by the franchisee for the parts and supplies in circumstances in which such labor

26 is rendered or the parts and supplies are furnished other than pursuant to warranty;

27     ~~(b) the motor vehicle franchisor may not by agreement, restrictions on reimbursement, or in any other~~

28 ~~way restrict the nature and extent of the labor to be rendered or the parts to be provided so that the restriction~~

29 ~~prevents the motor vehicle franchisee from satisfying the warranty by rendering labor in a good and workmanlike~~

30 ~~manner and providing parts that are required in accordance with generally accepted standards;~~



1        ~~(c)~~(B)  the motor vehicle franchisor shall reimburse the motor vehicle franchisee pursuant to subsection

2    (1)(a) for labor performed on and parts supplied for a motor vehicle by the franchisee in good faith and in

3    accordance with the manufacturer's warranty and written repair requirements and procedures, notwithstanding

4    any requirement that the franchisor accept the return of the motor vehicle or make payment to a consumer with

5    respect to the motor vehicle pursuant to the provisions of Title 61, chapter 4, part 5; and

6        ~~(d)~~(C) (i) the motor vehicle franchisee may establish its prevailing retail labor rate or parts markup by

7    submitting to the motor vehicle franchisor whichever of the following produces the fewer number of repair orders,

8    all of which must be for repairs made no more than 180 days before the submission:

9        (A) all consecutive repair orders that include 100 sequential repair orders reflecting qualified repairs; or

10       (B)  all repair orders closed during any period of 90 consecutive days.

11      (ii) The submission required under subsection ~~(1)(d)(i)~~ (1)(C)(I) may consist of:

12       (A)  a single set of repair orders for calculating both the franchisee's prevailing retail labor rate and its

13   parts markup;

14       (B) separate sets of repair orders, one for calculating the franchisee's prevailing retail labor rate and the

15   other for calculating its parts markup; or

16       (C)  a set of repair orders for calculating only the franchisee's prevailing retail labor rate or only its

17   prevailing retail parts markup.

18       (2)  The motor vehicle franchisee shall calculate its prevailing retail labor rate by determining the total

19   charges for labor from the qualified repairs submitted and then dividing that amount by the total number of hours

20   charged for the repairs.

21       (3) The motor vehicle franchisee shall calculate its prevailing retail parts markup by determining the total

22   charges for parts from the qualified repairs submitted, dividing that amount by the franchisee's total cost of the

23   purchase of those parts including shipping and other charges, subtracting 1, and multiplying by 100 to produce

24   a percentage.

25       (4)  The motor vehicle franchisee shall provide written notice to the motor vehicle franchisor of its

26   prevailing retail labor rate or prevailing retail parts markup calculated in accordance with subsection (2) OR (3)

27   ~~or this subsection~~ if the franchisee seeks to be compensated under subsection (1).

28       (5) (a) Any discounts must be allocated as indicated on the face of a repair order between parts and

29   labor. If no such allocation is indicated, they must be allocated pro rata. Manufacturer or distributor promotional

30   reward program cash-equivalent pay methods may not be considered discounts.



1     (b)  As used in ~~subsection (1)(a)~~ THIS SECTION, a "qualified repair" does not include:

2     (i)  routine maintenance, including but not limited to replacements of fluids, filters, batteries, bulbs, belts,

3 nuts, bolts, or fasteners, unless provided in the course of and related to a repair;

4     (ii) replacements of or work on tires, wheels, or elements related to either tires or wheels, including but

5 not limited to vehicle alignments and tire or wheel rotations;

6     (iii) repairs for which volume discounts have been negotiated with government agencies, insurers,

7 extended warranty or service contract providers, or other third-party payors;

8     (iv) repairs that are the subject of motor vehicle franchisor special events, promotions, or service

9 campaigns, or are otherwise subject to motor vehicle franchisor discounts;

10     (v)  repairs of motor vehicles owned by the dealer or an employee of the dealer;

11     (vi) installations of accessories;

12     (vii) repairs of conditions caused by collision, road hazard, the force of the elements, vandalism, theft,

13 or owner, operator, or third-party negligence or deliberate acts;

14     (viii) safety or vehicle emission inspections required by law;

15     (ix) vehicle reconditioning;

16     (x) parts sold ~~or labor performed~~ at wholesale;

17     (xi) repairs using after-market parts; or

18     (xii) goodwill repairs or replacements approved and reimbursed by the motor vehicle franchisor.

19     (6) (a) The prevailing retail labor rate or the prevailing retail parts markup that is declared must go into

20 effect 30 days following the motor vehicle franchisor's receipt of the notice referred to in subsection (2), unless

21 within the 30-day period the franchisor contests the declaration by written notice of objection, received by the

22 motor vehicle franchisee within the 30-day period, that the declared rate or markup is materially inaccurate.

23     (b)  The objection must contain:

24     (i)  a full explanation of any and all reasons that the declared rate is materially inaccurate;

25     (ii) evidence substantiating each stated reason;

26     (iii) a copy of all calculations used by the franchisor to demonstrate the material inaccuracy; and

27     (iv) a proposed adjusted retail labor rate or retail parts rate, as applicable~~, based on the qualified repair~~

28 ~~orders submitted by the franchisee~~.

29     (c)  The motor vehicle franchisor may not submit more than one notice of objection to the motor vehicle

30 franchisee with respect to any declared labor rate or retail parts markup, except in connection with litigation. After



1  submitting the notice of objection, the franchisor may not add to, expand, supplement, or otherwise modify any

2  element of the objection, including but not limited to its grounds for contesting the labor rate or parts markup,

3  except in connection with litigation.

4  (d) A revision or supplement to a submission to correct or clarify the submission does not constitute a

5  new submission for any purpose, including but not limited to that of subsection (9).

6  (7) In a judicial proceeding or a department proceeding involving an application or enforcement of the

7  provisions of 61-4-203, 61-4-204, and 61-4-210(4):

8  (a) the issue must be limited to whether the labor rate or parts markup submitted by the motor vehicle

9  franchisee was materially inaccurate;

10  (b) the motor vehicle franchisor has the burden of proof; and

11  (c) any resolution of the matter must be retroactive to the date 30 days following the franchisor's receipt

12  of the franchisee's submission.

13  (8) A motor vehicle franchisor may not directly or indirectly:

14  (a) (i) require a motor vehicle franchisee to establish or alter its labor rate or parts markup by any means

15  or methodology other than as prescribed in 61-4-204; or

16  (ii) except to object to or rebut a franchisee's declared retail labor rate or parts markup, itself initiate a

17  process to establish or alter that labor rate or parts markup, including but not limited to:

18  (A) substituting any other purported qualified repair order sample for that submitted, or submittable, by

19  a franchisee, including but not limited to the use, for purposes of establishing or reducing the franchisee's labor

20  rate, of the franchisee's sample submitted for purposes of establishing or increasing its parts markup, or the use,

21  for purposes of establishing or reducing the franchisee's parts markup, of the franchisee's sample submitted for

22  purposes of establishing or increasing its labor rate; or

23  (B) imposing an unduly burdensome or time-consuming method or requiring information that is unduly

24  burdensome or time-consuming to provide, including but not limited to part-by-part or transaction-by-transaction

25  calculations;

26  (b) recover or attempt to recover all or any portion of the franchisor's costs for compensating its dealers

27  for warranty labor, parts, or supplies, either by reduction in the amount due or by separate charge or a surcharge

28  to the wholesale price paid by the dealer to the franchisor for any product, including motor vehicles and parts;

29  (c) establish or implement a special part number for parts used in warranty work if it results in lower

30  compensation to the franchisee than as calculated in this section;



1      (d) require, influence, or attempt to influence a franchisee to implement or change the prices for which

2    it sells parts or labor in retail repairs;

3      (e) take or threaten to take adverse action against a franchisee who seeks to obtain compensation

4    pursuant to this section, or dissuade or discourage the franchisee from doing so, including but not limited to:

5      (i) creating or implementing an obstacle or process that is inconsistent with the franchisor's obligations

6    to the franchisee under this section;

7      (ii) acting or failing to act, other than in good faith;

8      (iii) hindering, delaying, or rejecting the proper and timely payment of compensation due under this

9    section to a franchisee;

10      (iv) establishing, implementing, enforcing, or applying any policy, standard, rule, program, or incentive

11    regarding compensation due under this section other than in a uniform and consistent manner among the

12    franchisor's franchisees in this state; or

13      (v) conducting or threatening to conduct any warranty repair, nonwarranty repair, or other service-related

14    audit; or

15      (e) implement or continue a policy, procedure, or program to any of its franchisees for compensation that

16    is inconsistent with this section.

17      (9) A motor vehicle franchisee may not submit, to establish or increase rates paid pursuant to subsection

18    (1)(d):

19      (a) its warranty labor rate more than once in a 12-month period; and

20      (b) its warranty parts markup more than once in a 12-month period.

21      (10) A recreational motor vehicle franchisee's warranty compensation for parts means actual wholesale

22    cost plus a minimum 30% handling charge and any freight costs incurred to return the removed parts to the

23    recreational motor vehicle franchisor.

24      (11) If a motor vehicle franchisor supplies a part or parts to a motor vehicle franchisee at no cost or at

25    a reduced cost for use in fulfilling a warranty, the franchisor must compensate the franchisee for the franchisee's

26    cost of the part, if any, plus an amount equal to the franchisee's prevailing retail parts markup, multiplied by the

27    fair wholesale value of the part. The fair wholesale value of the part is the greater of:

28      (a) the amount the franchisee paid for the part or a substantially identical part if already owned by the

29    franchisee;

30      (b) the cost of the part shown in a current or prior established price schedule of the franchisor; or


Legislative
Services
Division

*Authorized Print Version* - HB 617

1    (c)  the cost of a substantially identical part shown in a current or prior established price schedule of the

2    franchisor.

3    (12) (a) The motor vehicle franchisor shall reimburse the motor vehicle franchisee for parts supplied and

4    labor rendered under a warranty within 30 days after approval of a claim for reimbursement.

5    (b)  All claims for reimbursement must be approved or disapproved within 30 days after receipt of the

6    claim by the motor vehicle franchisor. When a claim is disapproved, the motor vehicle franchisee must be notified

7    in writing of the grounds for the disapproval. A claim that has been approved and paid may not be charged back

8    to the franchisee unless it can be shown that the claim was false or fraudulent, that the labor was not properly

9    performed, or that the parts or labor were unnecessary to correct the defective condition.

10    (c)  A manufacturer may not deny a claim or reduce the amount to be reimbursed to the dealer if the

11    dealer has provided reasonably sufficient documentation demonstrating that the dealer performed the services

12    in compliance with the written policies and procedures of the manufacturer known to the dealer at the time of

13    submission of the claim.

14    (d)  A manufacturer may not deny a claim based solely on a dealer's incidental failure to comply with a

15    specific claim processing requirement, such as a clerical error or other administrative technicality that does not

16    put into question the legitimacy of the claim.

17    (e)  A franchisor may not audit a claim after the expiration of 12 months following the payment of the

18    claim.

19    (13) For the purposes of this section, the following definitions apply:

20    (a)  "Labor" means work or service performed, including that of a diagnostic character, with respect to

21    repair of a motor vehicle.

22    (b)  "Parts" means original or replacement parts, accessories, and components with respect to a motor

23    vehicle, including engine, transmission, and other parts assemblies.

24    (c)  "Qualified repair" means a repair to a vehicle that:

25    (i)  would have come within the motor vehicle franchisor's new vehicle warranty but for the vehicle having

26    exceeded the ~~chronological~~ TIME or mileage limit of the warranty;

27    (ii) does not otherwise constitute warranty work; and

28    (iii) does not constitute any of the work encompassed by subsection (5)(b).

29    (d)  "Qualified repair order" means a repair order that encompasses, in whole or in part, a qualified repair

30    or repairs.



1    (e)  "Repair order" means an invoice paid by a retail customer and closed as of the time of submission,

2  encompassing one or more repairs to or other work on a vehicle, and reflecting, in the case of a prevailing retail

3  parts markup submission, the cost of each part and its sale price, and in the case of a prevailing retail labor rate

4  submission, the labor hours allocated to each job and the sale price of the labor. The invoice may be submitted

5  in electronic form.

6    (f)  "Warranty" means, in addition to a new motor vehicle warranty, predelivery preparation, a recall, or

7  a certified pre-owned warranty, in each case issued or administered by a motor vehicle franchisor.

8

9    **Section 5.**  Section 30-11-701, MCA, is amended to read:

10    **"30-11-701.  Definitions.** As used in this part, the following definitions apply:

11    <u>(1)  "Cancellation" or "canceled" means the cessation, termination, or discontinuance of a dealership</u>

12  <u>contract. The term includes but is not limited to resignation, termination, surrender, discontinuance, nonrenewal,</u>

13  <u>refusal to renew, or expiration of a dealership contract.</u>

14    (1)<u>(2)</u>  "Current net price" means:

15    (a)  with respect to a dealership contract, the price listed in the wholesaler's, manufacturer's, or

16  distributor's price list or catalog in effect at the time a dealership contract is discontinued or, if none is then in

17  effect, the last available price so listed; and

18    (b)  with respect to a distribution contract, the price listed in the manufacturer's or distributor's price list

19  or catalog in effect at the time a distribution contract is discontinued or, if none is then in effect, the last available

20  price so listed.

21    (2)<u>(3)</u>  "Dealership contract" means a written contract between a retailer and a wholesaler, manufacturer,

22  or distributor in which the retailer becomes a dealer in goods sold by the wholesaler, manufacturer, or distributor,

23  evidenced by a franchise agreement, sales agreement, security agreement, or other similar agreement or

24  arrangement.

25    (3)<u>(4)</u>  "Distribution contract" means a written contract between a wholesaler and a manufacturer or

26  distributor in which the wholesaler becomes a dealer in goods sold by the manufacturer or distributor, evidenced

27  by a franchise agreement, sales agreement, security agreement, or other similar agreement or arrangement.

28    (4)<u>(5)</u>  "Inventory" means:

29    (a)  farm implements, machinery, attachments, and repair parts;

30    (b)  industrial and construction equipment and repair parts;



1     (c) new motor vehicles, trucks, trailers, semitrailers, pole trailers, travel trailers, and repair parts sold by

2   a dealer as defined in 61-1-101;

3     (d) motorcycles, motor-driven cycles, recreational vehicles, and quadricycles, as those terms are defined

4   in 61-1-101, and repair parts;

5     (e) snowmobiles, as defined in 23-2-601, and repair parts;

6     (f) off-highway vehicles, as defined in 23-2-801, and repair parts; and

7     (g) vessels, as defined in 23-2-502, detachable motors or engines used to propel vessels, and repair

8   parts.

9     ~~(5)~~(6) "Net cost" means:

10    (a) with respect to a dealership contract, the price actually paid for an inventory item by the retailer to

11  the wholesaler, manufacturer, or distributor, plus applicable freight costs paid by or charged to the retailer; and

12    (b) with respect to a distribution contract, the price actually paid for an inventory item by the wholesaler

13  to a manufacturer or distributor, plus applicable freight costs paid by or charged to the wholesaler.

14    ~~(6)~~(7) "Retailer" or "retail dealer" means any individual, partnership, association, or corporation engaged

15  in the business of selling inventory, as defined in this section, to the general public.

16    ~~(7)~~(8) "Wholesaler" means any individual, partnership, association, or corporation engaged in the

17  business of selling inventory, as defined in this section, to retailers."

18

19    **Section 6.** Section 30-11-702, MCA, is amended to read:

20    **"30-11-702. Repurchase of inventory items upon cancellation of dealership or distribution**

21  **contract.** (1) ~~If a retailer enters into~~ Upon cancellation of a written dealership contract between a retailer and a

22  wholesaler, manufacturer, or distributor, ~~and either~~ the wholesaler, manufacturer, ~~distributor, or retailer cancels~~

23  ~~the contract, such wholesaler, manufacturer,~~ or distributor shall, at the retailer's request, pay to the retailer, or

24  credit to the retailer's account if the retailer has outstanding any sums owing the wholesaler, manufacturer, or

25  distributor, an amount equal to:

26    (a) 100% of the net cost of all new, ~~unused,~~ undamaged, and complete inventory items held by the

27  dealer at the time of cancellation, INCLUDING VEHICLES WITH LESS THAN 1,000 MILES ON THE ODOMETER, plus cost

28  of freight to return the inventory; and

29    (b) 100% of the current net price of each repair part carried on the most recent price list or catalog or

30  the last catalog or price list in which the repair part was listed as provided by the manufacturer or distributor and



1   held by the dealer at the time of cancellation, plus cost of freight to return the repair parts.

2        (2)  ~~If a wholesaler enters into~~ Upon cancellation of a written distribution contract ~~and either the~~

3   ~~wholesaler, manufacturer, or distributor cancels the contract,~~ entered into between a wholesaler and a

4   manufacturer or distributor, the manufacturer or distributor shall, at the wholesaler's request, pay to the

5   wholesaler, or credit to the wholesaler's account if the wholesaler has outstanding any sums owing to the

6   manufacturer or distributor, an amount equal to:

7        (a)  100% of the net cost of all new, ~~unused,~~ undamaged, and complete inventory items, except repair

8   parts, held by the wholesaler at the time of cancellation, INCLUDING VEHICLES WITH LESS THAN 1,000 MILES ON THE

9   ODOMETER; and

10       (b)  100% of the current net price of each repair part carried on the most recent price list or catalog or

11  the last catalog or price list in which the repair part was listed as provided by the manufacturer or distributor and

12  held by the wholesaler at the time of cancellation.

13       (3)  Payment or allowance of credit to the retailer's or wholesaler's account of the sum required in

14  subsection (1) or (2) must be made within 60 days of the ~~return of the inventory items to the wholesaler,~~

15  ~~manufacturer, or distributor~~ retailer's or wholesaler's repurchase request. Title to such inventory items passes

16  to the wholesaler, manufacturer, or distributor upon making such payment.

17       (4)  A manufacturer or distributor has 30 days FROM THE DATE OF THE REPURCHASE REQUEST to complete,

18  at the retailer's or wholesaler's place of business, an inventory, evaluation, and analysis of the items for which

19  the retailer or wholesaler requests compensation under subsection (3). The retailer or wholesaler shall, on

20  request, make all of the items available to the manufacturer or distributor, at the retailer's or wholesaler's place

21  of business during normal business hours, to complete an inventory, evaluation, and analysis. The 30-day

22  deadline must be tolled during delays caused by acts of God, fire, flood, blackouts, riots, or terrorist acts."

23

24       **Section 7.**  Section 30-11-703, MCA, is amended to read:

25       **"30-11-703.  Excepted inventory.** The following inventory is not subject to the repurchase requirements

26  of 30-11-702:

27       (1)  any repair part that has a limited storage life or is otherwise subject to deterioration, such as rubber

28  items, gaskets, or wet-charge batteries;

29       (2)  any repair part that is in a broken or damaged package;

30       (3)  any single repair part that is priced as a set of two or more items;



1       (4)  any repair part that because of its condition is not resalable as a new part without repackaging or

2  reconditioning;

3       (5)  any inventory for which the retailer is unable to furnish evidence satisfactory to the wholesaler,

4  manufacturer, or distributor of title, free and clear of all claims, liens, and encumbrances;

5       (6)  any inventory the retailer desires to keep, if the retailer has a contractual right to do so;

6       (7)  any inventory item other than a repair part that is not in essentially new, ~~unused,~~ undamaged, and

7  complete condition;

8       (8)  any repair part that is not in new, unused, or undamaged condition;

9       (9)  any inventory item, other than a repair part, that has been stocked for 36 months or more prior to

10  notice of termination of the contract;

11       (10) any inventory that was ordered by the retailer after the date of notification of termination of the

12  contract; and

13       (11) any inventory that was acquired from any source other than the wholesaler, manufacturer, or

14  distributor. <u>However, inventory acquired by trade between or among dealers of the same wholesaler,</u>

15  <u>manufacturer, or distributor in the ordinary course of business is subject to the repurchase requirements of</u>

16  <u>30-11-702.</u>"

17

18      **Section 8.**  Section 30-11-705, MCA, is amended to read:

19      **"30-11-705.  Reimbursement for or repurchase of signs, special equipment, and special tools.**

20  Upon the ~~termination,~~ cancellation~~, nonrenewal, or refusal to continue~~ <u>of</u> a dealership contract<u>, by</u> a wholesaler,

21  manufacturer, <u>or distributor shall, at the retailer's request, pay the retailer,</u> or ~~distributor,~~ <u>credit to the retailer's</u>

22  <u>account if the retailer has outstanding any sums owing</u> the wholesaler, manufacturer, or distributor<u>,</u> ~~shall pay the~~

23  ~~retailer~~ <u>an amount equal to:</u>

24       (1)  the original cost, adjusted for the remaining useful life, of each sign owned by the retailer that bears

25  a common name, trade name, or trademark of the wholesaler, manufacturer, or distributor, ~~if the acquisition of~~

26  <u>acquired from any source, because</u> the sign was recommended or required by the wholesaler, manufacturer, or

27  distributor;

28       (2)  (a) the original cost, adjusted for the remaining useful life, of all special equipment and special tools

29  purchased or leased by the retailer that were acquired from the wholesaler, manufacturer, or distributor or

30  sources approved by the wholesaler, manufacturer, or distributor and that were recommended or required by the



1    wholesaler, manufacturer, or distributor; or

2          (b)  if ~~the~~ a sign, item of special equipment, or special tool has a service agreement or if the sign, item

3    of special ~~tools are~~ equipment, or special tool is leased by the retailer, the amounts ~~that are~~ required to ~~terminate~~

4    be paid upon termination of the service agreement or the lease under the terms of the service or lease

5    agreement; and

6          (3)  the cost of removing, repairing damage caused by removal, transporting, handling, packing, and

7    loading the signs, special equipment, and special tools."

8

9          **Section 9.**  Section 30-11-712, MCA, is amended to read:

10         **"30-11-712.  Civil liability.** If any wholesaler, manufacturer, or distributor fails or refuses to repurchase

11   or reimburse a wholesaler for any inventory or a retailer for any inventory, signs, special equipment, or special

12   tools as required by 30-11-702, the wholesaler, manufacturer, or distributor is liable in a civil action for ~~100% of~~

13   ~~the current net price of the inventory, plus any freight charges paid by the retailer or wholesaler, the retailer's or~~

14   ~~wholesaler's attorney fees, and court costs~~:

15         (1)  all sums required under this part;

16         (2)  storage charges at the market rate for warehouse storage in the retailer's community plus any floor

17   plan, interest, or similar inventory financing charges incurred by the retailer or wholesaler, commencing on the

18   31st day after the repurchase request;

19         (3)  interest on all sums due from the date of the wholesaler's or retailer's request as provided in this

20   section, at ~~the rate of 15% a year~~ A RATE CALCULATED PURSUANT TO 25-9-205 until paid; and

21         (4)  the retailer's or wholesaler's attorney fees, court costs, and litigation expenses."

22

23         **Section 10.**  Section 30-11-713, MCA, is amended to read:

24         **"30-11-713.   Remedy as supplemental.** (1) The provisions of this part are supplemental to any

25   agreement between:

26         (a)  the retailer and wholesaler, manufacturer, or distributor governing the inventory, signs, special

27   equipment, or special tools; or

28         (b)  the wholesaler and manufacturer or distributor governing the inventory.

29         (2)  The retailer or wholesaler may elect to pursue either contract remedies or the remedy provided in

30   ~~30-11-702~~ this part. An election to pursue contract remedies does not bar the retailer's or wholesaler's right to



1   the remedy provided in ~~30-11-702~~ this part with regard to any inventory ~~not covered by contract,~~ PARTS, SIGNS,

2   special equipment, or special tools THAT ARE NOT INCLUDED IN CONTRACT REMEDIES, provided that the retailer or

3   wholesaler is not entitled to recover more than one time on any claim of loss or damage."

4

5   **Section 11.** Section 61-4-132, MCA, is amended to read:

6   **"61-4-132.   Right of designated family member to succeed in dealership ownership.** (1) Any

7   designated family member of a retiring, deceased, or incapacitated dealer may succeed the dealer in the

8   ownership or operation of the dealership under the existing franchise or distribution agreement ~~if~~ upon the retiring

9   dealer or the family member ~~gives~~ of a deceased or incapacitated dealer giving the manufacturer, factory branch,

10   distributor, or importer of new motor vehicles written notice of the intention to succeed the dealer in the ownership

11   or operation of the dealership ~~do so~~ within 120 days ~~of~~ PRIOR TO the dealer's expected date of retirement or WITHIN

12   120 DAYS AFTER the death or incapacity ~~and unless there exists good cause for refusal to honor the succession~~

13   ~~on the part of the manufacturer, factory branch, distributor, or importer~~ of the dealer. The manufacturer, factory

14   branch, distributor, or importer may refuse to honor the notice of succession only for good cause in the manner

15   provided for in 61-4-133.

16   (2)   The manufacturer, factory branch, distributor, or importer may request, and the designated family

17   member shall provide, ~~upon~~ on request, personal and financial data that is reasonably necessary to determine

18   whether the succession should be honored. The designated family member must meet the manufacturer's, factory

19   branch's, distributor's, or importer's reasonable, uniformly applied written requirements to be a dealer ~~or shall~~

20   ~~employ.~~ IF THE DESIGNATED FAMILY MEMBER LACKS EXPERIENCE REQUIRED TO MEET THOSE REQUIREMENTS, THEN THE

21   MANUFACTURER SHALL ALLOW THE SUCCESSOR A REASONABLE AMOUNT OF TIME TO MEET THOSE REQUIREMENTS

22   PROVIDED THAT DURING THE PERIOD, THE SUCCESSOR EMPLOYS an individual who is qualified and experienced as

23   a general manager to manage the day-to-day operations of the motor vehicle dealership."

24

25   **Section 12.** Section 61-4-133, MCA, is amended to read:

26   **"61-4-133.   Refusal to honor succession to ownership -- notice required.** (1) If a manufacturer,

27   factory branch, distributor, or importer believes that good cause exists for refusing to honor the succession to the

28   ownership and operation of a dealership by a designated family member ~~of a deceased or incapacitated dealer~~

29   under the existing franchise agreement as provided for in this part, the manufacturer, factory branch, distributor,

30   or importer may, within 30 days of receipt of notice of the designated family member's intent to succeed the dealer



1    in the ownership and operation of the dealership, serve upon the designated family member and the department

2    notice of its refusal to honor the succession and of its intent to discontinue the existing franchise agreement with

3    the dealership no sooner than 90 days from the date the notice is served.

4    (2)  The notice must state the specific grounds for the refusal to honor the succession and of its intent

5    to discontinue the existing franchise agreement with the dealership no sooner than 90 days from the date the

6    notice is served.

7    (3)  If notice of refusal and discontinuance is not timely served upon the <u>designated</u> family member and

8    the department or if the department rules in favor of the <u>designated family member</u> ~~complainant~~ in a hearing held

9    pursuant to 61-4-134, the franchise agreement must continue in effect subject to termination only as otherwise

10    permitted by law.

11    <u>(4)  In the event that a manufacturer, factory branch, distributor, or importer refuses to honor the family</u>

12    <u>member's succession to the ownership and operation of the dealership without complying with this part, the</u>

13    <u>designated family member may commence a proceeding before the department for declaratory judgment against</u>

14    <u>the manufacturer, factory branch, distributor, or importer for an order that the designated family member's right</u>

15    <u>to succession be recognized. The burden of proof, rights, and remedies in the action are the same as if the</u>

16    <u>designated family member had filed a notice of objection to a notice of refusal and discontinuance filed by a</u>

17    <u>manufacturer, factory branch, distributor, or importer.</u>"

18

19    **Section 13.**  Section 61-4-134, MCA, is amended to read:

20    **"61-4-134. Procedure to determine right to succeed.** (1) Any designated family member who receives

21    notice of the manufacturer's, factory ~~branch~~ <u>branch's</u>, distributor's, or importer's refusal to honor the family

22    member's succession to the ownership and operation of the dealership may, within the 90-day period, ~~file with~~

23    ~~the department a verified complaint for a hearing and determination by the department on whether good cause~~

24    ~~exists for refusal and discontinuance~~ <u>file a written complaint with the department for a hearing and determination</u>

25    <u>by the department as to whether good cause exists for refusal to honor the designated family member's</u>

26    <u>succession to the operation and ownership of the dealership.</u>

27    (2)  The manufacturer, factory branch, distributor, or importer must establish good cause for refusal by

28    showing that <u>the designated family member failed to comply with the provisions of 61-4-132(2)</u> ~~and~~ <u>OR</u> that the

29    succession would be detrimental to the public interest ~~or to the representation of the manufacturer, factory~~

30    ~~branch, distributor, or importer~~ <u>pursuant to 61-4-206 and 61-4-207</u>.


*Legislative Services Division*

        *Authorized Print Version* - HB 617

1    (3)  The franchise agreement must continue in effect until the final adjudication by the department on the

2    ~~verified complaint~~ written complaint and the exhaustion of all appellate remedies available to the designated

3    family member. The manufacturer, factory branch, distributor, or importer and the designated family member shall

4    abide by the terms of the franchise agreement and the laws of Montana during adjudication by the department

5    and the appeals process.

6    (4)  If the manufacturer, factory branch, distributor, or importer prevails, the department shall include in

7    its order approving the termination of the franchise agreement reasonable conditions affording the ~~complainant~~

8    designated family member an opportunity to receive fair and reasonable compensation for the value of the

9    dealership.

10    (5)  Any decision by the department may be reviewed pursuant to Title 2, chapter 4, part 7."

11

12    **Section 14.**  Section 61-4-204, MCA, is amended to read:

13    **"61-4-204.  Filing agreement -- product liability.** (1) A franchisee shall, at the time of application for

14    a new motor vehicle dealer license under the provisions of 61-4-101, file with the department a certified copy of

15    the franchisee's written agreement with a manufacturer and a certificate of appointment as dealer or distributor.

16    The certificate of appointment must be signed by an authorized agent of the manufacturer of domestic motor

17    vehicles whenever there is a direct manufacturer dealer agreement or by an authorized agent of the distributor

18    whenever the manufacturer is wholesaling through an appointed distributorship. The certificate must be signed

19    by an authorized agent of the importer of foreign-made vehicles whenever there is a direct importer-dealer

20    agreement or by an authorized agent of the distributor whenever there is an indirect distributor-dealer agreement.

21    The distributor's certificate of appointment must be signed by an authorized agent of the manufacturer of

22    domestically manufactured motor vehicles or by an authorized agent of the manufacturer or importer of

23    foreign-made motor vehicles.

24    (2)  A franchisee need not file a written agreement or certificate of appointment if the manufacturer on

25    direct dealerships or distributor on indirect dealerships or importer on direct dealerships uses the identical basic

26    agreement for all its franchised dealers or distributors in this state and certifies in the certificate of appointment

27    that the blanket agreement is on file and the written agreement with the particular dealer or distributor,

28    respectively, is identical with the filed blanket agreement and that the franchisee has filed with the department

29    one agreement together with a list of franchised dealers or distributors.

30    (3)  A franchisor shall notify the department within 30 days of any revision of or addition to the basic

1  agreement on file or of any franchise supplement to the agreement. Annual renewal of a certificate filed as

2  provided in this section is not required.

3  (4) A manufacturer shall file with the department a copy of the delivery and preparation obligations

4  required to be performed by a dealer prior to the delivery of a new motor vehicle to a buyer. These delivery and

5  preparation obligations constitute the dealer's only responsibility for product liability as between the dealer and

6  the manufacturer. Any mechanical, body, or parts defects arising from an express or implied warranty of the

7  manufacturer constitute the manufacturer's product or warranty liability only. A manufacturer may not refuse a

8  dealer's demand for defense and indemnity of a claim to which the dealer has been joined as a party, alleging

9  manufacturer's negligence or breach of the manufacturer's warranty or product liability based on the mere

10 allegations of the complaint without a ~~thorough~~ REASONABLE investigation of the facts and determination that the

11 dealer failed to perform the dealer's delivery and preparation obligations as required by this subsection or

12 otherwise violated a legal duty owed to the claimant OR MANUFACTURER. However, this section may not affect the

13 obligations of new motor vehicle dealers to perform warranty repair and maintenance that may be required by

14 law or contract. Except with regard to household appliances, including but not limited to ranges, refrigerators, and

15 water heaters, in a recreational vehicle and except with regard to a truck rated at more than 10,000 pounds gross

16 vehicle weight, the manufacturer shall compensate an authorized dealer for labor, parts, and other expenses

17 incurred by a dealer who performs work to rectify the manufacturer's product or warranty defect or for delivery

18 and preparation obligations as provided in this part ~~at the same rate and time the dealer charges to its retail~~

19 ~~customers for nonwarranty work of a like kind, based upon a published, nationally recognized, retail flat-rate labor~~

20 ~~time guide manual if the dealer uses the manual as the basis for computing charges for both warranty and retail~~

21 ~~work~~.

22 (5) ~~(a)~~ All claims made by the dealer ~~pursuant to this section~~ part for compensation for delivery,

23 preparation, ~~warranty,~~ and recall service, including labor, parts, and other expenses, and claims made for

24 incentives must be paid by the manufacturer within 30 days of receipt of the claim from the dealer, UNLESS THE

25 CLAIM IS PROPERLY DISAPPROVED, except that a manufacturer of a motor home shall pay any claim within 60 days

26 of receipt from the dealer.

27 ~~(b) If a claim is disapproved, the dealer must be notified in writing of the grounds for disapproval. A claim~~

28 ~~that has not been disapproved in writing within 30 days of having been received must be considered approved,~~

29 ~~and payment is due to the claimant immediately. However, the manufacturer retains the right to audit a claim for~~

30 ~~a period of 12 months following the payment of the claim.~~

1       ~~(c)   A claim that has been approved and paid may not be charged back to the dealer unless the~~

2   ~~manufacturer proves that:~~

3       ~~(i)   the claim was false or fraudulent;~~

4       ~~(ii)  the repairs were not properly made; or~~

5       ~~(iii) the repairs were not necessary to correct the defective condition.~~

6       ~~(d)   A manufacturer may not deny a claim or reduce the amount to be reimbursed to the dealer if the~~

7   ~~dealer has provided reasonably sufficient documentation demonstrating that the dealer performed the services~~

8   ~~in compliance with the written policies and procedures of the manufacturer. A manufacturer may not deny a claim~~

9   ~~based solely on a dealer's incidental failure to comply with a specific claim processing requirement, such as a~~

10  ~~clerical error or other administrative technicality that does not put into question the legitimacy of the claim.~~

11      (6)  Notwithstanding the terms of any agreement, the franchisor may not refuse to allocate, sell, or deliver

12  motor vehicles, may not penalize a dealer, may not charge back or withhold payments or other things of value

13  for which the dealer is otherwise ~~eligible~~ entitled under a sales promotion, program, or contest, and may not

14  prevent the dealer from participating in any promotion, program, or contest based on the dealer's selling of a

15  motor vehicle to a customer who was present at the dealership and that the dealer did not know or could not have

16  reasonably known that the motor vehicle would be shipped to a foreign country. There is a rebuttable presumption

17  that the dealer did not know or could not have reasonably known that the vehicle would be shipped to a foreign

18  country if the motor vehicle is titled in the United States.

19      ~~(7)  A franchisor may not recover or seek to recover any of its costs for compensating a dealer for~~

20  ~~warranty work, including labor and parts, or for the dealer's participation in incentives by imposing on the dealer~~

21  ~~any charge or surcharge to the wholesale price paid by the dealer to the franchisor for any product, including~~

22  ~~motor vehicles and parts.~~

23      ~~(8)~~(7)  A franchisor may reasonably and periodically audit a motor vehicle dealer to determine the validity

24  of paid claims or charge-backs for customer or dealer incentives.

25      ~~(9)~~(8)  A dealer has 60 days from the date of notification by a manufacturer of a denial or a charge-back

26  to the dealer to resubmit a claim for payment or compensation if the claim was denied for a dealer's incidental

27  failure as set forth in ~~subsection (5)(d)~~ [section 4(12)(d)], regardless of whether the denial or charge-back was

28  a direct or an indirect transaction.

29      ~~(10)~~(9) A dealer has 90 days after the expiration of a franchisor incentive program, or a longer time if

30  provided by the franchise agreement, to submit a claim for payment or compensation under the program.

1    (11)(10) Notwithstanding the terms of a franchise agreement or other contract with a dealer ~~and except~~

2    ~~as provided in subsection (5)(c)~~, after the expiration of 1 year after the date of payment of a motor vehicle claim

3    or 1 year from the end of a program that does not exceed 1 year in length, whichever is later, a franchisor may

4    not:

5        (a)  charge back to a dealer, whether directly or indirectly, the amount of a claim that has been approved

6    and paid by the franchisor under an incentive program;

7        (b)  charge back to a dealer, whether directly or indirectly, the cash value of a prize or other thing of value

8    awarded to the dealer under an incentive program; or

9        (c)  audit the records of a dealer to determine compliance with the terms of an incentive program.

10       (12)(11) Subsection (11)(10) does not prohibit a franchisor from making charge-backs to a dealer for

11   fraud at any time as permitted by ~~subsection (5)(c)~~ this section 27-2-203.

12       (13)(12) The dealer shall furnish the purchaser of a new motor vehicle with a signed copy of the

13   manufacturer's delivery and preparation requirements indicating that each of those requirements has been

14   performed.

15       (13) Any violation of this section constitutes a prohibited practice."

16

17       **Section 15.**  Section 61-4-205, MCA, is amended to read:

18       **"61-4-205.  Limitations on cancellation and termination.** (1) Notwithstanding the terms, provisions,

19   or conditions of any agreement or franchise, a franchisor may not cancel, terminate, or refuse to continue a

20   franchise unless the franchisor has cause for termination or noncontinuance.

21       (2)  A franchisor may not enter into a franchise for the purpose of establishing an additional new motor

22   vehicle dealership in any community in which the same line-make is then represented unless there is good cause

23   for an additional new motor vehicle dealership under a franchise and it is in the public interest.

24       (3) (a)  If a franchisor seeks to terminate or not continue a franchise or seeks to enter into a franchise

25   establishing an additional new motor vehicle dealership of the same line-make, the franchisor shall, not less than

26   60 days prior to the intended action, and the franchisee may, at any time, file a notice with the department of

27   intention to terminate or not continue the franchise or to enter into a franchise for additional representation of the

28   same line-make. A notice of intention to terminate or not continue a franchise is not required from a franchisor

29   until the conclusion of any review proceeding of that intention offered to the franchisee under the franchise. This

30   section does not apply to an intended termination or noncontinuance of a franchise that the franchisee elects



*Authorized Print Version* - HB 617

66th Legislature                                                                                    HB0617.02

1    voluntarily, pursuant to a plan established by a franchisor, to submit to binding arbitration.

2        (b)  The notice to be filed with the department of a franchisor's intention to enter into a franchise for

3    additional representation of the same line-make must name the proposed additional franchisee and must identify

4    by legal description or street address the additional location in the community. A change in the identity of the

5    proposed additional franchisee or of the additional location in the community may only be accomplished by the

6    withdrawal of the initial notice and the filing of a new notice. No more than one notice of intention to enter into a

7    franchise for additional representation of the same line-make in the same community may be made by a

8    franchisor ~~in a 3-calendar-year period~~ WITHIN 3 CALENDAR YEARS OF THE DATE OF FINAL DISPOSITION OF A NOTICE OF

9    INTENTION.

10       (c)  If good cause is not found under this part or if the franchisor withdraws or dismisses a proceeding

11   under this part, a franchisee who objected to a proceeding initiated by a franchisor under this part is entitled to

12   recover from the franchisor reasonable attorney fees, costs, and expenses, including expert witness and

13   consultant fees incurred in resisting the proceeding.

14       (4)  Upon receiving a notice of intention under the provisions of subsection (3), the department shall,

15   within 5 days of receipt of a notice of intention, send by certified mail, with return receipt requested, a copy of the

16   notice to the franchisor and to the franchisee whose franchise the franchisor seeks to establish, terminate, or not

17   continue. If the notice states an intent to establish an additional new motor vehicle dealership, a copy of the notice

18   must be sent within 5 days of receipt to all franchisees in the community who are then engaged in the business

19   of offering to sell or selling the same line-make. Copies of notices must be addressed to the principal place of

20   business of each recipient and to the statutory agent of each corporate recipient. The department may also give

21   a copy of the franchisor's notice to any other parties whom the department may consider interested persons.

22       (5)  In instances where the change in ownership has the effect of the sale of the franchise, the franchisor

23   may not without good cause withhold its consent to the sale. Good cause relates only to the transferee's financial

24   and managerial capabilities or to the inability of the transferee to comply with a state or federal law relating to new

25   motor vehicle dealerships. The burden of establishing good cause is upon the franchisor.

26       (6)  Notwithstanding the terms, provisions, or conditions of an agreement or franchise, in the event of the

27   sale or transfer of ownership of the franchisee's dealership by sale or transfer of the business or by stock transfer

28   to the dealer's or wholesaler's spouse or child, the franchisor shall give effect to the sale or transfer of ownership

29   in the franchise unless the transfer of the franchisee's new motor vehicle dealer's or wholesaler's license is denied

30   or the new owner is unable to obtain a license under the laws of this state.


*Legislative Services Division*

*Authorized Print Version* - HB 617

1    (7)  If a franchisor enters into or attempts to enter into a franchise, whether upon termination or refusal

2   to continue another franchise or upon the establishment of an additional new motor vehicle dealership in a

3   community where the same line-make is then represented, without first complying with the provisions of this part,

4   a license under Title 23 or 61-4-101 may not be issued to that franchisee or proposed franchisee to engage in

5   the business of selling new motor vehicles manufactured or distributed by that franchisor.

6    (8)  A franchisor shall, unless a new franchisor of the line-make continues or replaces the dealer's

7   franchise under subsection (10), compensate the dealer as provided in subsection (9) if the franchisor renders

8   itself incapable of performing under a franchise agreement or renders a distributor incapable of performing under

9   a franchise agreement by:

10    (a)  selling or otherwise transferring some or all of the assets essential to the manufacture or distribution

11   of the line-make covered by the franchise agreement;

12    (b)  ceasing production of the line-make; or

13    (c)  terminating, canceling, or not renewing the distributor's rights to distribute the line-make.

14    (9)  (a) A franchisor considered incapable of performing under subsection (8) shall compensate the

15   affected dealer in an amount equal to the greater of:

16    (i)  the actual pecuniary loss that the dealer and its owners suffered as a result of the termination,

17   cancellation, or failure to renew; or

18    (ii) the higher of the fair market value of the franchise on the following dates:

19    (A)  the effective date of the termination, cancellation, or failure to renew;

20    (B)  the date 1 year prior to the effective date of termination, cancellation, or failure to renew; or

21    (C)  the day prior to the date on which the franchisor announces the action that results in the termination,

22   cancellation, or failure to renew.

23    (b)  The compensation required by this subsection (9) must be paid to the dealer within 30 days of the

24   affected parties' mutual agreement in writing as to the amount of the compensation. If an agreement on

25   compensation is not reached within 90 days of the effective date of the termination, cancellation, or failure to

26   renew, an affected dealer may bring an action for a determination of the amount of compensation due and for

27   recovery of that amount, plus costs and attorney fees.

28    (10) If, as a result of any of the circumstances described in subsection (8), an entity other than the original

29   manufacturer or distributor of a line-make becomes the manufacturer or distributor for the line-make and intends

30   to distribute motor vehicles of that line-make in this state, the entity shall honor the franchise agreements of the



1    original franchisor and its dealers or offer those dealers a new franchise agreement for the line-make on

2    substantially similar terms and conditions.

3        (11) The franchisor that is terminating, canceling, or not renewing a franchise agreement pursuant to

4    subsection (8) shall:

5        (a) authorize the franchisee or another new motor vehicle dealer of the franchisor in the area to continue

6    servicing and supplying parts, including service and parts pursuant to a warranty issued by the franchisor for any

7    goods or services marketed by the franchisee pursuant to the motor vehicle franchise for a period of not less than

8    5 years from the effective date of the termination, cancellation, or nonrenewal; and

9        (b) continue to reimburse the franchisee or another new motor vehicle dealer of the franchisor in the area

10    for warranty parts and service in an amount and on terms not less favorable than those in effect prior to the

11    termination, cancellation, or nonrenewal.

12        (12) The franchisor shall continue to supply the franchisee whose agreement is terminated, canceled,

13    or not renewed pursuant to subsection (8) or another new motor vehicle dealer of the franchisor in the area with

14    replacement parts for any goods or services marketed by the franchisee pursuant to the franchise agreement for

15    a period of not less than 5 years from the effective date of the termination, cancellation, or nonrenewal at the

16    same price and terms as the franchisor supplies the parts, goods, or services to the remaining franchisees of the

17    franchisor or if there are not any remaining franchisees, at a price and on terms not less favorable than those in

18    effect prior to the termination, cancellation, or nonrenewal.

19        (13) If the franchisee continues to service motor vehicles and sell parts after the termination, cancellation,

20    or nonrenewal of the franchise agreement pursuant to subsection (8), the compensation paid to the franchisee

21    pursuant to subsection (9) must be reduced to the extent, if any, of the fair market value of the right to continue

22    to service motor vehicles and sell parts as of the effective date of the termination, cancellation, or nonrenewal."

23

24        **Section 16.**  Section 61-4-206, MCA, is amended to read:

25    **"61-4-206. Objections -- hearing.** (1) (a) Except as provided in subsection (1)(b), a person who receives

26    or is entitled to receive a copy of a notice provided for in 61-4-205(4) may object to the approval of the proposed

27    action by filing a written objection with the department within 15 days from the date the notice was received by

28    the person entitled to receive the notice. If an objection is not filed within 15 days from the date the notice was

29    received, the proposed action must be approved.

30        (b)  A franchisee of the same line-make established in the same community as the proposed additional



1 franchise of the same line-make may not object under subsection (1)(a) if the proposed additional franchise was

2 first terminated by a franchisor and the franchise was subsequently awarded back by a legal or administrative

3 proceeding to the franchisee from whom the franchise was terminated.

4 (2) If a timely objection has been filed, the department shall appoint a hearings officer to preside over

5 and conduct a contested case hearing under the provisions of Title 2, chapter 4, part 6. Within 30 days of the

6 order of appointment, the hearings officer shall enter an order fixing the time for a scheduling conference for the

7 contested case and shall send to the parties by certified mail with return receipt requested a copy of the

8 scheduling conference order and the notice provided for in 61-4-205(4).

9 (3) Upon hearing or upon objection to the establishment of a new motor vehicle dealership, the franchisor

10 has the burden of proof to establish that good cause exists to terminate, not continue, or not establish the

11 franchise.

12 (4) The rules of evidence for a hearing provided for in subsection (2) are the same as those found in Title

13 2, chapter 4. The department shall reasonably apportion all costs related to the contested case hearing between

14 the parties.

15 (5) The department may issue subpoenas, administer oaths, and compel the attendance of witnesses

16 and production of books, papers, documents, and all other evidence. The department may apply to the district

17 court of the county in which the hearing is held for a court order enforcing this section. The hearing must be

18 conducted pursuant to Title 2, chapter 4.

19 (6) A transcript of the testimony of each witness taken at the hearing must be made and preserved.

20 Within 60 days after the hearing, the department shall make written findings of fact and conclusions and enter

21 a final order.

22 (7) Any party to the hearing before the department may appeal pursuant to Title 2, chapter 4.

23 (8) The franchise agreement must continue in effect until the adjudication by the department on the

24 ~~verified~~ written complaint and the exhaustion of all appellate remedies available to the franchisee. The franchisor

25 and the franchisee shall abide by the terms of the franchise and the laws of Montana during the appeals process."

26

27 **Section 17.** Section 61-4-207, MCA, is amended to read:

28 **"61-4-207. Determination of good cause.** (1) In determining whether good cause has been established

29 for terminating or not continuing a franchise, the department shall take into consideration all the existing

30 circumstances, including but not limited to:



1     (a) the franchisee's sales in relation to the Montana market that are essential, reasonable, and not

2 discriminatory and that take into account the franchisee's local market variations beyond adjusting for the local

3 popularity of general vehicle types;

4     (b) investment necessarily made and obligations incurred by the franchisee in the performance of the

5 franchisee's part of the franchise;

6     (c) permanency of the investment;

7     (d) whether it is injurious to the public welfare for the business of the franchisee to be discontinued;

8     (e) whether the franchisee has adequate new motor vehicle facilities, equipment, parts, and qualified

9 management, sales, and service personnel to reasonably provide consumer care for the new motor vehicles sold

10 at retail by the franchisee and any other new motor vehicle of the same line-make;

11     (f) whether the franchisee refuses to honor warranties of the franchisor to be performed by the franchisee

12 if the franchisor reimburses the franchisee for warranty work performed by the franchisee pursuant to this part;

13     (g) except as provided in subsection (2), actions by the franchisee that result in a material breach of the

14 written and uniformly applied requirements of the franchise that are determined by the department to be

15 reasonable and material; and

16     (h) the enforceability of the franchise from a public policy standpoint, including issues of the

17 reasonableness of the franchise's terms and the parties' relative bargaining power.

18     (2) Notwithstanding the terms, provisions, or conditions of an agreement or franchise, the following do

19 not constitute good cause for the termination or noncontinuance of a franchise:

20     (a) a change in ownership of the franchisee's dealership;

21     (b) the fact that the franchisee refused to purchase or accept delivery of a new motor vehicle, part,

22 accessory, or any other commodity or service not ordered by the franchisee;

23     (c) the failure of a franchisee to change location of the dealership or to make substantial alterations to

24 the use or number of franchises or the dealership premises or facilities; or

25     (d) the desire of a franchisor or a franchisor's representative:

26     (i) for greater market penetration; or

27     (ii) to alter the number of the franchisor's or franchisor's representative's franchises or dealer locations.

28     (3) In determining whether good cause has been established for entering into an additional franchise

29 for the same line-make, the department shall take into consideration the existing circumstances, including but

30 not limited to:



     *Authorized Print Version* - HB 617

1    (a)   amount of business transacted by other <u>existing</u> franchisees of the same line-make in that

2    community;

3    (b)   investment necessarily made and obligations incurred by other <u>existing</u> franchisees of the same

4    line-make in that community in the performance of their part of their ~~franchises~~ <u>franchise agreements and the date</u>

5    <u>of the investment made and the obligations incurred by the existing franchisees in relation to the date of</u>

6    <u>appointment of the additional franchisee</u>; ~~and~~

7    (c)   whether the <u>other existing</u> franchisees of the same line-make in that community are <u>substantially</u>

8    <u>compliant with reasonable manufacturer requirements for</u> providing adequate consumer care, including

9    satisfactory new motor vehicle dealer sales and service facilities, <u>special and essential tools and</u> equipment,

10   <u>replacement</u> parts supply, and qualified management, sales, and service personnel, for the new motor vehicle

11   products of the line-make ~~and whether sufficient qualified management, sales, and trained service personnel to~~

12   ~~satisfy the reasonable requirements of the manufacturer for the other existing franchisees and the additional~~

13   ~~franchisee are available in that community~~; and

14   (d)   whether the ~~population and~~ demographic characteristics, <small>INCLUDING POPULATION,</small> of that community

15   <u>have changed sufficiently since the appointment of the other existing franchisees to support the economic viability</u>

16   <u>of both the other existing franchisees and the additional franchisee</u>."

17

18   <u>NEW SECTION.</u>  **Section 18.  Codification instruction.** (1) [Sections 1 through 3] are intended to be

19   codified as an integral part of Title 30, chapter 11, and the provisions of Title 30, chapter 11, apply to [sections

20   1 through 3].

21   (2) [Section 4] is intended to be codified as an integral part of Title 61, and the provisions of Title 61 apply

22   to [section 4].

23

24   <u>NEW SECTION.</u>  **Section 19.  Effective date.** [This act] is effective on passage and approval.

25                                                          - END -

