EXHIBIT D

**GENERAL ASSEMBLY OF NORTH CAROLINA**
**SESSION 2019**

**SESSION LAW 2019-125**
**SENATE BILL 384**

AN ACT TO CLARIFY VARIOUS MOTOR VEHICLE DEALER LAWS.

The General Assembly of North Carolina enacts:

## UPDATE DEFINITIONS

**SECTION 1.** G.S. 20-286 is amended by adding a new subdivision to read:

"(15a) Special tool or essential tool. – A tool designed and required by the manufacturer or distributor and not readily available from another source that is utilized for the purpose of performing service repairs on a motor vehicle sold by a manufacturer or distributor to its franchised new motor vehicle dealers in this State."

## CLARIFY DIAGNOSTIC EQUIPMENT EXCEPTION AND ADDRESS SPECIAL TOOLS FOR SMALLER DEALERS

**SECTION 2.(a)** G.S. 20-305(9) reads as rewritten:

"(9)     To require, coerce, or attempt to coerce any new motor vehicle dealer in this State to purchase ~~nondiagnostic~~ or lease a specific dealer management computer system for communication with the manufacturer, factory branch, distributor, or distributor branch or any computer ~~equipment or programs~~ hardware or software used for any purpose other than the maintenance or repair of motor vehicles, to participate monetarily in an advertising campaign or contest, or to purchase unnecessary or unreasonable quantities of any promotional materials, training materials, training programs, showroom or other display decorations, materials, computer equipment or programs, or special tools at the expense of the new motor vehicle dealer, provided that nothing in this subsection shall preclude a manufacturer or distributor from including an unitemized uniform charge in the base price of the new motor vehicle charged to the dealer where such charge is attributable to advertising costs incurred or to be incurred by the manufacturer or distributor in the ordinary courses of its business. Notwithstanding the terms or conditions of any franchise or other agreement, a franchised dealer that sells fewer than 250 new motor vehicles per year may request approval from the manufacturer to enter into a tool loaner agreement with another dealer, in lieu of purchasing or leasing any special tools required by any manufacturer, factory branch, distributor, or distributor branch, provided, however, that all of the following conditions are satisfied:

a.     The manufacturer does not offer its dealers a special tool loaner/sharing program in which the dealer would be eligible to participate.

b.     Eligible special tools exceed a cost of two thousand dollars ($2,000) per special tool, are easily and readily transportable, and would be



utilized for service on less than 10 vehicles per month at the requesting dealer's dealership.

c. The dealers participating in a special tools loaner agreement do so pursuant to a written agreement, including designation of the dealer responsible for purchasing the specified tools.

d. All participating dealers are of the same line-make franchise with the manufacturer.

e. All participating dealers are located within a 40-mile radius of the dealer responsible for purchasing the specified special tools.

f. No more than five dealers participate in a special tool loaner agreement.

g. The manufacturer has approved the special tool loaner agreement, including the list of participating dealers and the list of eligible special tools to be included, which approval shall not be unreasonably withheld, conditioned, or delayed.

h. The manufacturer, factory branch, distributor, or distributor branch shall have the right to disapprove or terminate, upon 30 days written notice to all of the affected dealers, any special tool loaner agreement, if it determines that the agreement has resulted or is likely to result in a warranty repair delay of more than 48 hours, excessive warranty expense, or significant customer dissatisfaction."

**SECTION 2.(b)** G.S. 20-305(46) reads as rewritten:

"(46) To require, coerce, or attempt to coerce a dealer located in this State to purchase goods or services of any nature from a vendor selected, identified, or designated by a manufacturer, distributor, affiliate, or captive finance source when the dealer may obtain goods or services of substantially similar quality and design from a vendor selected by the dealer, provided the dealer obtains prior approval from the manufacturer, distributor, affiliate, or captive finance source, for the use of the dealer's selected vendor. Such approval by the manufacturer, distributor, affiliate, or captive finance source may not be unreasonably withheld. For purposes of this subdivision, the term "goods" does not include moveable displays, brochures, and promotional materials containing material subject to the intellectual property rights of a manufacturer or distributor, or special tools or parts as reasonably required by the ~~manufacturer, or parts~~ manufacturer to be used in repairs under warranty obligations of a manufacturer or distributor. If the manufacturer, distributor, affiliate, or captive finance source claims that a vendor chosen by the dealer cannot supply goods and services of substantially similar quality and design, the dealer may file a protest with the Commissioner. When a protest is filed, the Commissioner shall promptly inform the manufacturer, distributor, affiliate, or captive finance source that a protest has been filed. The Commissioner shall conduct a hearing on the merits of the protest within 90 days following the filing of a response to the protest. The manufacturer, distributor, affiliate, or captive finance source shall bear the burden of proving that the goods or services chosen by the dealer are not of substantially similar quality and design to those required by the manufacturer, distributor, affiliate, or captive finance source."

**AREA OF RESPONSIBILITY PROTEST RIGHTS**

**SECTION 3.** G.S. 20-305(38) reads as rewritten:

"(38)    Notwithstanding the terms, provisions, or conditions of any agreement, franchise, novation, waiver, or other written instrument, to assign or change a franchised new motor vehicle dealer's area of responsibility under the franchise arbitrarily or without due regard to the present or projected future pattern of motor vehicle sales and registrations within the dealer's market and without having provided the affected dealer with written notice of the change in the dealer's area of responsibility and a detailed description of the change in writing by registered or certified mail, return receipt requested. A franchised new motor vehicle dealer who believes that a manufacturer, factory branch, distributor, or distributor branch with whom the dealer has entered into a franchise has assigned or changed the dealer's area of responsibility, is proposing to assign or change the dealer's area of responsibility arbitrarily or without due regard to the present or projected future pattern of motor vehicle sales and registrations within the dealer's market, or failed to provide the dealer with the notice required under this subdivision may file a petition within 60 days of receiving notice of a manufacturer, factory branch, distributor, or distributor branch's proposed assignment or change to the dealer's area of responsibility and have an evidentiary hearing before the Commissioner as provided in G.S. 20-301(b) contesting the franchised new motor vehicle dealer's assigned area of responsibility. Provided that the dealer has not previously filed a petition pursuant to this subdivision within the preceding 48 months regarding the dealer's currently assigned area of responsibility, a franchised new motor vehicle dealer who believes that it is unreasonable for a manufacturer, factory branch, distributor, or distributor branch with whom that dealer has entered into a franchise to include one or more portions of the dealer's existing area of responsibility previously assigned to that dealer by the manufacturer, factory branch, distributor, or distributor branch may request the elimination of the contested territory from the dealer's area of responsibility by submitting the request in writing via U.S. registered or certified mail, return receipt requested, to the manufacturer, factory branch, distributor, or distributor branch. The dealer shall state in its request that the request is being made pursuant to this subdivision, describe the territory the dealer seeks to remove from its area of responsibility, and provide a general statement as to the factual basis for the dealer's contention of the changed factors warranting modification of the dealer's area of responsibility. The dealer's request shall be deemed accepted by the manufacturer, factory branch, distributor, or distributor branch if the manufacturer, factory branch, distributor, or distributor branch has not sent the dealer notice of objection to the dealer's request via U.S. registered or certified mail, return receipt requested, within 90 days after receipt of the dealer's request. Within 30 days of the dealer's receipt of notice from the manufacturer, factory branch, distributor, or distributor branch of the manufacturer's rejection, in whole or in part, of the dealer's request for the elimination of the contested territory from the dealer's area of responsibility, either party may request mediation under the manufacturer's internal mediation program, if any. Any such mediation shall commence within 60 days after the request for mediation is made and be concluded within 120 days after the date the manufacturer, factory branch, distributor, or distributor branch objected to the dealer's proposed change in its area of responsibility. Within 60 days of the conclusion of a requested mediation process, or, if a mediation process has not been timely requested under this subdivision, within

60 days of receiving notice from the manufacturer, factory branch, distributor, or distributor branch of the manufacturer's rejection, in whole or in part, of the dealer's request for the elimination of the contested territory from the dealer's area of responsibility, a dealer may file a petition and have an evidentiary hearing before the Commissioner as provided in G.S. 20-301(b) contesting the manufacturer's rejection, in whole or in part, of the dealer's request for the elimination of the contested territory from the franchised new motor vehicle dealer's assigned area of responsibility. In determining if ~~the~~ an evidentiary hearing requested under this subdivision whether ~~a manufacturer, factory branch, distributor, or distributor branch has assigned or changed the dealer's area of responsibility or is proposing to assign or change the dealer's area of responsibility~~ all or any portion of the existing or proposed area of responsibility assigned to the dealer is unreasonable or has been assigned arbitrarily or without due regard to the present or projected future pattern of motor vehicle sales and registrations within the dealer's market, the Commissioner may take into consideration the relevant circumstances, including, but not limited to:

a.  The investment of time, money, or other resources made for the purpose of developing the market for the vehicles of the same line-make in the existing or proposed area of responsibility by the petitioning dealer, other same line-make dealers who would be affected by the change in the area of responsibility, or by the manufacturer, factory branch, distributor, distributor branch, or any dealer or regional advertising association.

b.  The present and future projected traffic patterns and drive times between consumers and the same line-make franchised dealers of the affected manufacturer, factory branch, distributor, or distributor branch who are located within the market.

c.  The historical and projected future pattern of new vehicle sales and registrations of the affected manufacturer, factory branch, distributor, or distributor branch within various portions of the area of responsibility and within the market as a whole.

d.  The growth or decline in population, density of population, and new car registrations in the market.

e.  If the affected manufacturer, factory branch, distributor, or distributor branch has removed territory from a dealer's area of responsibility or is proposing to remove territory from a dealer's area of responsibility, the projected economic effects, if any, that these changes in the dealer's area of responsibility will have on the petitioning dealer, other same line-make dealers, the public, and the manufacturer, factory branch, distributor, or distributor branch.

f.  The projected effects that the changes in the petitioning dealer's area of responsibility that have been made or proposed by the affected manufacturer, manufacturer branch, distributor, or distributor branch will have on the consuming public within the market.

g.  The presence or absence of natural geographical obstacles or boundaries, such as mountains and rivers.

h.  The proximity of census tracts or other geographic units used by the affected manufacturer, factory branch, distributor, or distributor branch in determining same line-make dealers' respective areas of responsibility.

i. The public interest, consumer welfare, and customer convenience.

j. The reasonableness of the change or proposed change to the dealer's area of responsibility considering the benefits and harm to the petitioning dealer, other same line-make dealers, and the manufacturer, factory branch, distributor, or distributor branch.

At the evidentiary hearing before the Commissioner, <u>following the filing of a petition by a dealer contesting the proposed assignment or change to the dealer's area of responsibility by a manufacturer, factory branch, distributor, or distributor branch,</u> the affected manufacturer, factory branch, distributor, or distributor branch shall have the burden of proving that all portions of its current or proposed area of responsibility for the petitioning franchised new motor vehicle dealer are reasonable in light of the present or projected future pattern of motor vehicle sales and registrations within the franchised new motor vehicle dealer's market. <u>At an evidentiary hearing before the Commissioner held pursuant to a franchised new motor vehicle dealer's petition to eliminate contested territory from the dealer's existing area of responsibility previously assigned to the dealer by the manufacturer, factory branch, distributor, or distributor branch, the franchised new motor vehicle dealer shall have the burden of proving that it would be unreasonable to continue to include the contested territory in the dealer's area of responsibility due to changes in circumstances under sub-subdivisions a. through j. of this subdivision that are beyond the control of the dealer.</u> A policy or protocol of a manufacturer, factory branch, distributor, or distributor branch that determines a dealer's area of responsibility based solely on the proximity of census tracts or other geographic units to its franchised dealers and the existence of natural boundaries fails to satisfy the burden of proof on the affected manufacturer, factory branch, distributor, or distributor branch under this subdivision. Upon the filing of a petition before the Commissioner under this subdivision, any changes in the petitioning franchised new motor vehicle dealer's area of responsibility that have been proposed by the affected manufacturer, factory branch, distributor, or distributor branch shall be stayed during the pendency of the determination by the Commissioner. If a protest is or has been filed under G.S. 20-305(5) and the franchised new motor vehicle dealer's area of responsibility is included in the relevant market area under the protest, any protest filed under this subdivision shall be consolidated with that protest for hearing and joint disposition of all of the protests. Nothing in this subdivision shall apply to the determination of whether good cause exists for the establishment by a manufacturer, factory branch, distributor, or distributor branch of an additional new motor vehicle dealer or relocation of an existing new motor vehicle dealer, which shall be governed in accordance with the requirements and criteria contained in G.S. 20-305(5) and not this subdivision."

## PERFORMANCE MEASURES

**SECTION 4.** G.S. 20-305(51) reads as rewritten:

"(51) To establish, implement, or enforce criteria for measuring the sales or service performance of any of its franchised new motor vehicle dealers in this State ~~for the purpose of cancelling, terminating or nonrenewing a franchise agreement which~~ <u>for any of the purposes in sub-subdivisions a. through c. of this subdivision that</u> (i) are unfair, unreasonable, arbitrary, or inequitable; (ii) do not consider available relevant and material ~~local, State,~~ <u>State</u> and regional

criteria, data, and facts. Relevant and material criteria, data, or facts include those of motor vehicle dealerships of comparable size in comparable markets; and (iii) if such performance measurement criteria are based, in whole or in part, on a survey, such survey must be based on a statistically significant and valid random sample. In any proceeding under this subdivision, the applicable manufacturer or distributor shall bear the burden of proof (i) with regard to all issues raised in the proceeding and (ii) that the dealer performance measurements comply with all of the provisions hereof and ~~are~~ are, and have ~~been~~ been, implemented and enforced uniformly by the ~~applicable~~ manufacturer or distributor among its <u>franchised</u> dealers in this State. <u>Prior to taking a final action on an event described in sub-subdivisions a. through c. of this subdivision, if the dealer's current or past sales or service performance constitute any part of the basis for the final action, a manufacturer or distributor shall allow a dealer to present relevant local criteria, data, and facts beyond the control of the dealer, which the manufacturer or distributor shall consider.</u> In the event it is determined that the performance criteria employed by a manufacturer or distributor for measuring the sales, service, or customer satisfaction performance of any of its franchised motor vehicle dealers in this State ~~for the purpose of cancelling, terminating or nonrenewing a franchise agreement~~ are unfair, unreasonable, arbitrary, or inequitable, or that the performance criteria does not consider available ~~local, State,~~ <u>State</u> and regional criteria, data, and facts required in this subsection, or that the performance criteria have not been implemented and enforced uniformly by the ~~applicable~~ manufacturer or distributor among its <u>franchised</u> dealers in this State, <u>or that the performance criteria do not consider relevant local criteria, data, and facts presented by the dealer in accordance with this subdivision,</u> the performance criteria of the manufacturer or distributor may not constitute any part of the basis for a determination in any franchise-related decision pertaining to ~~whether good cause exists for the termination of a dealer's franchise pursuant to G.S. 20-305(6).~~ <u>any of the following:</u>

<u>a.</u>    <u>Whether to allow a dealer's proposed transfer of ownership pursuant to subdivision (4) of this section.</u>

<u>b.</u>    <u>Whether good cause exists for the termination of a dealer's franchise pursuant to subdivision (6) of this section.</u>

<u>c.</u>    <u>Whether to allow appointment of a designated successor to a franchise pursuant to subdivision (7) of this section.</u>

<u>If a dealer's current or past performance in sales or service constitutes any part of the basis for the decision of the manufacturer, factory branch, distributor, or distributor branch pertaining to sub-subdivisions a. through c. of this subdivision, the dealer and the applicable manufacturer, factory branch, distributor, or distributor branch shall have the right to present local criteria, data, and facts in any petition or hearing before the Commissioner requested by the dealer pursuant to subdivision (4), (6), or (7) of this section.</u>"

## DEALER'S RIGHT TO SELL PARTS AND ACCESSORIES OVER THE INTERNET

**SECTION 5.** G.S. 20-305 is amended by adding a new subdivision to read:

"<u>(52)</u>    <u>To prohibit or to in any way unreasonably limit or restrict a dealer from offering for sale over the Internet, including online e-commerce marketplaces, parts and accessories obtained by the dealer from the manufacturer, factory branch, distributor, or distributor branch, or from any source recommended or approved by the manufacturer, factory branch, distributor, or distributor</u>

branch. Nothing in this subdivision shall eliminate or impair the intellectual property rights of a manufacturer, factory branch, distributor, or distributor branch."

## AUDITS LIMITED TO ONE PER 12-MONTH PERIOD/PROHIBITION ON CONTINGENCY AUDITS

**SECTION 6.** G.S. 20-305.1 reads as rewritten:
"**§ 20-305.1. Automobile dealer warranty and recall obligations.**
…
(b) Notwithstanding the terms of any franchise agreement, it is unlawful for any motor vehicle manufacturer, factory branch, distributor, or distributor branch to fail to perform any of its warranty or recall obligations with respect to a motor vehicle, to fail to fully compensate its motor vehicle dealers licensed in this State for a qualifying used motor vehicle pursuant to subsections (i) and (j) of this section or warranty and recall parts other than parts used to repair the living facilities of recreational vehicles, including motor homes, travel trailers, fifth-wheel trailers, camping trailers, and truck campers as defined in G.S. 20-4.01(32b), at the prevailing retail rate according to the factors in subsection (a) of this section, or, in service in accordance with the schedule of compensation provided the dealer pursuant to subsection (a) of this section, or to otherwise recover all or any portion of its costs for compensating its motor vehicle dealers licensed in this State for warranty or recall parts and service or for payments for a qualifying used motor vehicle pursuant to subsections (i) and (j) of this section either by reduction in the amount due to the dealer, or by separate charge, surcharge, or other imposition, and to fail to indemnify and hold harmless its franchised dealers licensed in this State against any judgment for damages or settlements agreed to by the manufacturer, including, but not limited to, court costs and reasonable attorneys' fees of the motor vehicle dealer, arising out of complaints, claims or lawsuits including, but not limited to, strict liability, negligence, misrepresentation, express or implied warranty, or recision or revocation of acceptance of the sale of a motor vehicle as defined in G.S. 25-2-608, to the extent that the judgment or settlement relates to the alleged defective negligent manufacture, assembly or design of new motor vehicles, parts or accessories or other functions by the manufacturer, factory branch, distributor or distributor branch, beyond the control of the dealer. Any ~~audit~~ audit, other than an audit conducted for cause, for warranty or recall parts or service compensation, or compensation for a qualifying used motor vehicle in accordance with subsections (i) and (j) of this section may only be conducted one time within any 12-month period and shall only be for the 12-month period immediately following the date of the payment of the claim by the manufacturer, factory branch, distributor, or distributor branch. Any ~~audit~~ audit, other than an audit conducted for cause, for sales incentives, service incentives, rebates, or other forms of incentive compensation may only be conducted one time within any 12-month period and shall only be for the 12-month period immediately following the date of the payment of the claim by the manufacturer, factory branch, distributor, or distributor branch pursuant to a sales incentives program, service incentives program, rebate program, or other form of incentive compensation program. Provided, however, these limitations shall not be effective in the case of fraudulent claims. For purposes of this subsection, the term "audit conducted for cause" is defined as an audit based on any of the following: (i) statistical evidence that the dealer's claims are unreasonably high in comparison to other dealers similarly situated or the dealer's claim history, (ii) that the dealer's claims submissions violate reasonable claims documentation or other requirements of the applicable manufacturer, factory branch, distributor, or distributor branch, (iii) a follow up to an earlier audit in which the dealer was notified of a claim documentation procedure violation that occurred within the prior 12-month period, provided the audit and any chargeback are in compliance with subdivision (b1) of this section and are limited in scope to just the specific violation determined previously, or (iv) reasonable evidence of malfeasance or fraud. In the event a manufacturer, factory branch, distributor, or distributor

branch elects to perform an audit conducted for cause, the manufacturer, factory branch, distributor, or distributor branch, simultaneously with providing the affected dealer with written notice of the audit, shall further be required to explain in detail in the notice the data or other foundation upon which the cause is based.

 …

  (5) Any audit of a dealer by a manufacturer for sales or leases made to <u>known</u> exporters or brokers <u>may only be conducted one time within any 12-month period and</u> shall only be for the 12-month period immediately preceding the <s>audit.</s><u>audit, provided, however, that nothing in this subsection shall prohibit or limit the ability of a manufacturer, factory branch, distributor, or distributor branch to conduct any audit of sales or leases made by one of its franchised dealers to known exporters or brokers for cause at any time during the permitted time period. For purposes of this subdivision, the term "for cause" means the dealer's sale or lease of motor vehicles to individuals identified on a list of known motor vehicle exporters or brokers previously provided by or posted on a Web site made accessible to the dealer by the manufacturer, factory branch, distributor, or distributor branch or reasonable evidence that the dealer knew or reasonably should have known that the customer intended to export or resell the motor vehicle.</u>

 <u>(b4)</u> <u>Any person or other entity employed or contracted by a manufacturer, factory branch, distributor, or distributor branch to conduct an audit of a motor vehicle dealer regulated by this section shall comply with all the requirements of this section. It shall be unlawful for any manufacturer, factory branch, distributor, or distributor branch to contract with or employ any person or other entity to conduct an audit of any motor vehicle dealer located in this State regulated under this section for which the person or other entity conducting the audit of the dealer would be in any part compensated on the basis of the dollar amount, volume, or number of chargebacks that would result to the dealer from the audit.</u>

 …."

## DEALERSHIP DATA

  **SECTION 7.** G.S. 20-305.7 reads as rewritten:

"(a) Except as expressly authorized in this section, no manufacturer, factory branch, distributor, or distributor branch shall require a new motor vehicle dealer to provide its customer lists, customer information, consumer contact information, transaction data, or service files. Any requirement by a manufacturer, factory branch, distributor, or distributor branch that a new motor vehicle dealer provide its customer lists, customer information, consumer contact information, transaction data, or service files <u>to the manufacturer, factory branch, distributor, or distributor branch, or to any third party</u> as a condition to the dealer's participation in any incentive program or <s>contest</s><u>contest,</u> for a customer or dealer to receive any incentive payments otherwise earned under an incentive program or contest, for the dealer to obtain consumer or customer leads, or for the dealer to receive any other benefits, rights, merchandise, or services for which the dealer would otherwise be entitled to obtain under the franchise or any other contract or agreement, or which shall customarily be provided to dealers, shall be voidable at the option of the dealer, <u>and the dealer shall automatically be entitled to all benefits earned under the applicable incentive program or contest or any other contract or agreement,</u> unless all of the following conditions are satisfied: (i) the customer information requested relates solely to the specific program requirements or goals associated with such manufacturer's or distributor's own vehicle makes and does not require that the dealer provide general customer information or other information related to the dealer; (ii) such requirement is lawful and would also not require the dealer to allow any customer the right to opt out under the federal Gramm-Leach-Bliley Act, 15 U.S.C., Subchapter I, § 1608, et seq.; and (iii) the dealer <s>is not required to allow the manufacturer or distributor or</s>

~~any third party to have direct access to~~ is either permitted to restrict the data fields that may be accessed in the dealer's dealer management computer system, ~~but~~ or the dealer is ~~instead~~ permitted to provide the same dealer, consumer, or customer data or information specified by the manufacturer or distributor by timely obtaining and pushing or otherwise furnishing the required data in a widely accepted file format such as comma delimited in accordance with subsection (g1) of this section. Nothing contained in this section shall limit the ability of the manufacturer, factory branch, distributor, or distributor branch to require that the dealer provide, or use in accordance with the law, such customer information related solely to such manufacturer's or distributor's own vehicle makes to the extent necessary to do any of the following:

    (1)    Satisfy any safety or recall notice obligations.

    (2)    Complete the sale and delivery of a new motor vehicle to a customer.

    (3)    Validate and pay customer or dealer incentives.

    (4)    Submit to the manufacturer, factory branch, distributor, or distributor branch claims for any services supplied by the dealer for any claim for warranty parts or repairs.

At the request of a manufacturer or distributor or of a third party acting on behalf of a manufacturer or distributor, a dealer may only be required to provide customer information related solely to such manufacturer's or distributor's own vehicle makes for reasonable marketing purposes, market research, consumer surveys, market analysis, and dealership performance analysis, but the dealer is only required to provide such customer information to the extent lawfully permissible; to the extent the requested information relates solely to specific program requirements or goals associated with such manufacturer's or distributor's own vehicle makes and does not require the dealer to provide general customer information or other information related to the dealer; and to the extent the requested information can be provided without requiring that the dealer allow any customer the right to opt out under the federal Gramm-Leach-Bliley Act, 15 U.S.C., Subchapter I, § 6801, et seq.

No manufacturer, factory branch, distributor, or distributor branch shall access or obtain dealer or customer data from or write dealer or customer data to a dealer management computer system utilized by a motor vehicle dealer located in this State, or require or coerce a motor vehicle dealer located in this State to utilize a particular dealer management computer system, unless the dealer management computer system allows the dealer to reasonably maintain the security, integrity, and confidentiality of the data maintained in the system. No manufacturer, factory branch, distributor, distributor branch, dealer management computer system vendor, or any third party acting on behalf of any manufacturer, factory branch, distributor, distributor branch, or dealer management computer system vendor shall prohibit a dealer from providing a means to regularly and continually monitor the specific data accessed from or written to the dealer's computer system and from complying with applicable State and federal laws and any rules or regulations promulgated thereunder. These provisions shall not be deemed to impose an obligation on a manufacturer, factory branch, distributor, distributor branch, dealer management computer system vendor, or any third party acting on behalf of any manufacturer, factory branch, distributor, distributor branch, or dealer management computer system vendor to provide such capability. Notwithstanding the terms or conditions of any incentive program or contest that is either required or voluntary on the part of the dealer, or the terms or conditions of any other contract or agreement, it shall be unlawful for any manufacturer, factory branch, distributor, or distributor branch to fail or refuse to provide dealer notice, in a standalone written document, at least 30 days prior to making any changes in any of the dealer or customer data the dealer is requested or required to share with a manufacturer, factory branch, distributor, or distributor branch, or any third party. The changes in any of the dealer or customer data the dealer is required or requested to provide shall be void unless the applicable manufacturer, factory branch, distributor, or distributor branch complies with the notice requirements contained in this paragraph.

…

(b1)    Notwithstanding the terms of any contract or agreement with a dealer management computer system vendor or third party, for purposes of this subsection, the dealer's data contained in or on a dealer management computer system owned, leased, or licensed by a dealer located in this State is the property of the dealer. For purposes of this section, the terms "dealer data" and "dealer's data" shall be defined as any information or other data that has been entered, by direct entry or otherwise, or stored on the dealer's dealer management computer system by an officer or employee of the dealer or third party contracted by the dealer, whether stored or hosted on-site at a dealer location or on the cloud or at any other remote location, that contains data or other information about any of the following: (i) the dealer's sales, service, or parts customers or the dealer's customer transactions, (ii) customer leads generated by or provided to the dealer, (iii) the tracking, history, or performance of the dealer's internal processing of customer orders and work, (iv) customer deal files, (v) customer recommendations or complaints communicated by any means to the dealer, (vi) the tracking of dealer or customer incentive payments sought or received from any manufacturer or distributor, (vii) business plans, goals, objectives, or strategies created by any officer, employer, or contractee of the dealer; (viii) the dealer's internal bank, financial, or business records, (ix) email, voice, and other communications between or among the dealer's officers or employees, (x) email, voice, and other communications between the dealer's officers or employees and third parties, (xi) contracts and agreements with third parties and all records related to the performance of such contracts and agreements, (xii) employee performance, (xiii) dealer personnel records, and (xiv) dealer inventory data. The terms "dealer data" and "dealer's data" specifically exclude the proprietary software, intellectual property, data, or information of a dealer management computer system vendor, manufacturer, factory branch, distributor, or distributor branch, data specifically licensed from a third party by a dealer management computer system vendor, manufacturer, factory branch, distributor, or distributor branch, and data provided to a dealer by a manufacturer, factory branch, distributor, distributor branch, subsidiary, or affiliate.

Notwithstanding the terms of any contract or agreement, it shall be unlawful for any dealer management computer system vendor, or any third party having access to any dealer management computer system, to:

(1)    Unreasonably interfere with a dealer's ability to protect, store, copy, share, or use any dealer data downloaded from a dealer management computer system utilized by a new motor vehicle dealer located in this State. Unlawful conduct prohibited by this section includes, but is not limited to:

a.    Imposing any unreasonable fees or other restrictions on the dealer or any third party for access to or sharing of dealer data. For purposes of this section, the term "unreasonable fees" means charges for access to customer or dealer data beyond any direct costs incurred by any dealer management computer system vendor in providing access to the dealer's customer or dealer data to a third party that the dealer has authorized to access its dealer management computer system or allowing any third party that the dealer has authorized to access its dealer management computer system to write data to its dealer management computer system. Nothing contained in this subdivision shall be deemed to prohibit the charging of a fee, which includes the ability of the service provider to recoup development costs incurred to provide the services involved and to make a reasonable profit on the services provided. Any charges must be both (i) reasonable in amount and (ii) disclosed to the dealer in reasonably sufficient detail prior to the fees being charged to the dealer, or they will be deemed prohibited, unreasonable fees.

b. Imposing unreasonable restrictions on secure integration by any third party that the dealer has explicitly authorized to access its dealer management computer system for the purpose of accessing dealer data. Examples of unreasonable restrictions include, but are not limited to, any of the following:

1. Unreasonable restrictions on the scope or nature of the dealer's data shared with a third party authorized by the dealer to access the dealer's dealer management computer system.

2. Unreasonable restrictions on the ability of a third party authorized by the dealer to securely access the dealer's dealer management computer system to share dealer data or securely write dealer data to a dealer management computer system.

3. Requiring unreasonable access to sensitive, competitive, or other confidential business information of a third party as a condition for access dealer data.

4. It shall not be an unreasonable restriction to condition a third party's access to the dealer management computer system on that third party's compliance with reasonable security standards or operational protocols that the dealer management computer system vendor specifies.

c. Sharing dealer data with any third party, if sharing the data is not authorized by the dealer.

d. Prohibiting or unreasonably limiting a dealer's ability to store, copy, securely share, or use dealer data outside the dealer's dealer management computer system in any manner and for any reason once it has been downloaded from the dealer management computer system.

e. Permitting access to or accessing dealer data without first obtaining the dealer's express written consent in a standalone document or contractual provision that is conspicuous in appearance, contained in a separate page or screen from any other written material, and requires an independent mark or affirmation from a dealer principal, general manager, or other management level employee of the dealership expressly authorized in writing by the dealer principal or general manager.

f. Upon receipt of a written request from a dealer, failing or refusing to block specific data fields containing dealer data from being shared with one or more third parties. Where blocking hinders, blocks, diminishes, or otherwise interferes with the functionality of a third party's service or product or the dealer's ability to participate in an incentive or other program of a manufacturer, factory branch, distributor, or distributor branch, or other third party authorized by the dealer, the dealer management computer system vendor shall be held harmless from the dealer's decision to block specified data fields, so long as the dealer management computer system vendor was acting at the direction of the dealer.

(2) Access, use, store, or share any dealer data from a dealer management computer system in any manner other than as expressly permitted in its written agreement with the dealer.

(3) Fail to provide the dealer with the option and ability to securely obtain and push or otherwise distribute specified dealer data within the dealer's dealer management computer system to any third party instead of the third party

receiving the dealer data directly from the dealer's dealer management computer system vendor or providing the third party direct access to the dealer's dealer management computer system. A dealer management computer system vendor shall be held harmless for any errors, breach, misuse, or any harms directly or indirectly caused by a dealer sharing data with any third party beyond the control of the dealer management computer system vendor. In the event a dealer sharing data with a third party outside of the control of the dealer computer management system vendor causes damage to the dealer management computer system or any third party, the party or parties that caused the damage shall be liable for the damage.

 (4) Fail to provide the dealer, within seven days of receiving a dealer's written request, access to any SOC 2 audit conducted on behalf of the dealer management computer system vendor and related to the services licensed by the dealer.

 (5) Fail to promptly provide a dealer, upon the dealer's written request, a written listing of all entities with whom it is currently sharing any data from the dealer's dealer management computer system and with whom it has, within the immediately 12 preceding months, shared any data from the dealer's dealer management computer system, the specific data fields shared with each entity identified, and the dates any data was shared, to the extent that information can reasonably be stored by the dealership management computer system vendor.

 (6) Upon receipt of a dealer's written request to terminate any contract or agreement for the provision of hardware or software related to the dealer's dealer management computer system, to fail to promptly provide a copy of the dealer's data maintained on its dealership management computer system to the dealer in a secure, usable format.

Nothing in this section prevents the charging of a fee, which includes the ability of the dealer management computer system vendor to recoup costs incurred to provide the services involved and to make a reasonable profit on the services provided. Charges must be disclosed to and approved by the dealer prior to the time the dealer incurs the charges.

Nothing in this section prevents any dealer or third party from discharging its obligations as a service provider under federal, State, or local law to protect and secure protected dealer data.

Nothing in this section shall be deemed to prohibit a dealer management computer system vendor from conditioning a party's access to, or integration with, a dealer's dealer management computer system on that party's compliance with reasonable security standards or other operational protocols that the dealer's computer management system vendor specifies.

For purposes of this subsection, the term "third party" shall not be applicable to any manufacturer, factory branch, distributor, distributor branch, or subsidiary or affiliate thereof.

 (b2) The rights conferred on dealers in this section are not waivable and may not be reduced or otherwise modified by any contract or agreement.

 …."

## STANDING TO INITIATE AN ACTION

 **SECTION 8.**  G.S. 20-308.1(d) reads as rewritten:

"(d) ~~Any~~ In order to prevent injury or harm to all or a substantial number of its members or to prevent injury or harm to the franchise distribution system of new motor vehicles within this State, any association that is comprised of a minimum of 400 new motor vehicle dealers, or a minimum of 10 motorcycle dealers or recreational vehicle dealers, substantially all of whom are new motor vehicle dealers located within North Carolina, and which represents the collective interests of its members, shall have standing to intervene as a party in any civil or administrative

proceeding in any of the courts or administrative agencies of this State, or to file a petition before the Commissioner or a civil action or cause of action in any court of competent jurisdiction for itself, or on behalf of any or all of its members, seeking declaratory and injunctive relief. ~~Prior to bringing an action, the association and manufacturer, factory branch, distributor, or distributor branch shall initiate mediation as set forth in G.S. 20-301.1(b).~~ An action brought pursuant to this subsection may seek a determination whether one or more manufacturers, factory branches, distributors, or distributor branches doing business in this State have violated any of the provisions of this Article, or for the determination of any rights created or defined by this Article, so long as the association alleges an injury to the collective interest of its members cognizable under this section. A cognizable injury to the collective interest of the members of the association shall be deemed to occur if a manufacturer, factory branch, distributor, or distributor branch doing business in this ~~State has engaged in any conduct or taken any action which actually harms or affects all of the franchised new motor vehicle dealers holding franchises with that manufacturer, factory branch, distributor, or distributor branch in this State.~~ State, or seeking to be licensed by the Division in any capacity or to otherwise engage in business in this State, applies for licensure to own, operate, or control a motor vehicle dealership in this State in violation of this Article or engages in any conduct or takes any action that either: (i) has harmed or would harm or which has adversely affected or would adversely affect a majority of its franchised new motor vehicle dealers in this State or a majority of all franchised new motor vehicle dealers in this State, or (ii) would erode or cause any other damage or injury to the franchise system of distribution of new motor vehicles within this State, whether or not the manufacturer, factory branch, distributor, or distributor branch currently has or proposes to have any franchised dealer in this State. Notwithstanding the foregoing, nothing in this subsection shall be construed to convey standing for an association to intervene in the denial of a renewal license or revocation of existing licenses issued by the Division pursuant to this Chapter or other enforcement actions taken against individual dealers or other individual licensees that may be initiated by the Division pursuant to G.S. 20-294 or other statute. Intervention by the association shall be limited to seeking declaratory relief, injunctive relief, or both declaratory and injunctive relief. With respect to any administrative or civil action filed by an association pursuant to this subsection, the relief granted shall be limited to declaratory and injunctive relief and in no event shall the Commissioner or court enter an award of monetary damages. In the event that, in any civil action before a court of this State in which an association has exercised standing in accordance with this subsection and becomes a party to the action, the court enters a declaratory ruling as to the facial applicability of any of the provisions contained in this Article, or interpreting the rights and obligations of one or more manufacturers or distributors or the rights and obligations of one or more dealers, the court's determination shall be collateral estoppel in any subsequent civil action or administrative proceeding involving the same manufacturer or manufacturers, or the same distributor or distributors, or the same dealer or dealers on all issues of fact and law decided in the original civil action in which the association was a party, provided the same decision or specific portion of the decision qualifies for application of collateral estoppel under North Carolina law. Notwithstanding anything contained herein, this subsection shall not be applicable to motor vehicle dealer licenses issued by the Division to a manufacturer pursuant to G.S. 20-305.2(a)(4a), provided that this exclusion from association standing shall not be applicable in the event the manufacturer applies for or is issued more than the maximum total number of motor vehicle dealer licenses permitted in G.S. 20-305.2(a)(4a) or upon the occurrence of any of the events listed in sub-subdivisions a. through d. of G.S. 20-305.2(a)(4a)."

**UPDATE TRUCK DEALER COST REIMBURSEMENT**
   **SECTION 9.** G.S. 20-305.1(g) reads as rewritten:
  "(g) Truck Dealer Cost Reimbursement. – Every manufacturer, manufacturer branch, distributor, or distributor branch of new motor vehicles, or any affiliate or subsidiary thereof,

which manufactures or distributes new motor vehicles with a gross vehicle weight rating of 16,000 pounds or more shall compensate its new motor vehicle dealers located in this State for the cost of special tools, equipment, and training for which its dealers are liable when the applicable manufacturer, manufacturer branch, distributor, or distributor branch sells a portion of its vehicle inventory to converters and other nondealer retailers. The purpose of this reimbursement is to compensate truck dealers for special additional costs these dealers are required to pay for servicing these vehicles when the dealers are excluded from compensation for these expenses at the point of sale. The compensation which shall be paid pursuant to this subsection shall be applicable only with respect to new motor vehicles with a gross vehicle weight rating of 16,000 pounds or more which are registered to end users within this State and that are sold by a manufacturer, manufacturer branch, distributor, or distributor branch to either of the following:

  (1) Persons or entities other than new motor vehicle dealers with whom the manufacturer, manufacturer branch, distributor, or distributor branch has entered into franchises.

  (2) Persons or entities that install custom bodies on truck chassis, including, but not limited to, mounted equipment or specialized bodies for concrete distribution, firefighting equipment, waste disposal, recycling, garbage disposal, buses, utility service, street sweepers, wreckers, and rollback bodies for vehicle recovery; provided, however, that no compensation shall be required to be paid pursuant to this subdivision with respect to vehicles sold for purposes of manufacturing or assembling school buses. Additionally, no compensation shall be required to be paid pursuant to this subdivision with respect to any vehicles that were sold to the end user by a franchised new motor vehicle dealer.

The amount of compensation that shall be payable by the applicable manufacturer, manufacturer branch, distributor, or distributor branch shall be ~~nine hundred dollars ($900.00)~~ <u>one thousand five hundred dollars ($1,500)</u> per new motor vehicle registered in this State whose chassis has a gross vehicle weight rating of 16,000 pounds or more. The compensation required pursuant to this subsection shall be paid by the applicable manufacturer, manufacturer branch, distributor, or distributor branch to its franchised new motor vehicle dealer in closest proximity to the registered address of the end user to whom the motor vehicle has been registered within 30 days after registration of the vehicle. Upon receiving a request in writing from one of its franchised dealers located in this State, a manufacturer, manufacturer branch, distributor, or distributor branch shall promptly make available to the dealer its records relating to the registered addresses of its new motor vehicles registered in this State for the previous 12 months and its payment of compensation to dealers as provided in this subsection."

## CLARIFY UNFAIR METHODS OF COMPETITION STATUTE
    **SECTION 10.**  G.S. 20-305.2 reads as rewritten:
"**§ 20-305.2.  Unfair methods of ~~competition.~~<u>competition; protection of car-buying public.</u>**

  (a)  It is unlawful for any motor vehicle manufacturer, factory branch, distributor, distributor branch, or subsidiary thereof, to directly or indirectly through ~~any subsidiary or affiliated entity,~~ <u>any parent, subsidiary, or affiliated entity, whether or not such motor vehicle manufacturer, factory branch, distributor, distributor branch, or subsidiary thereof has entered into a franchise, within the meaning of G.S. 20-286(8a), with any person or entity in this State,</u> own any ownership interest in, operate, or control any motor vehicle ~~dealership in this State, provided that this section shall not be construed to prohibit:~~<u>dealer in this State or any entity in this State that provides warranty service or repairs at retail, to file a motor vehicle dealer application with the Division pursuant to G.S. 20-288, or to be licensed by the Division as a</u>

motor vehicle dealer, provided that this section shall not be construed to prohibit any of the following:

(1) The operation by a manufacturer, factory branch, distributor, distributor branch, or subsidiary thereof, of a dealership for a temporary period (not to exceed one year) during the transition from one owner or operator to ~~another; or~~another.

(2) The ownership or control of a dealership by a manufacturer, factory branch, distributor, distributor branch, or subsidiary thereof, while in a bona fide relationship with an economically disadvantaged or other independent person, other than a manufacturer, factory branch, distributor, distributor branch, or an agent or affiliate thereof, who has made a bona fide, unencumbered initial investment of at least six percent (6%) of the total sales price that is subject to loss in the dealership and who can reasonably expect to acquire full ownership of the dealership within a reasonable period of time, not to exceed 12 years, and on reasonable terms and ~~conditions; or~~conditions.

(3) The ownership, operation or control of a dealership by a manufacturer, factory branch, distributor, distributor branch, or subsidiary thereof, if such manufacturer, factory branch, distributor, distributor branch, or subsidiary has been engaged in the retail sale of motor vehicles through such dealership for a continuous period of three years prior to March 16, 1973, and if the Commissioner determines, after a hearing on the matter at the request of any party, that there is no independent dealer available in the relevant market area to own and operate the franchise in a manner consistent with the ~~public interest; or~~public interest.

(4) ~~The ownership, operation, or control of a dealership by a manufacturer, factory branch, distributor, distributor branch, or subsidiary thereof, if the Commissioner determines after a hearing on the matter at the request of any party, that there is no independent dealer available in the relevant market area to own and operate the franchise in a manner consistent with the public interest; or~~

(4a) The ownership, operation, or control of a maximum total number of five motor vehicle dealership locations within this State prior to December 31, 2020, or a maximum total number of six motor vehicle dealership locations within this State on or after January 1, 2021, by a manufacturer that manufactures and sells only motor vehicles that are plug-in electric vehicles that do not rely on any nonelectric source of power in all modes of operation; provided, however, that this subdivision shall be applicable only to a manufacturer that had at least one motor vehicle dealership licensed in this State by the Division as of March 1, 2019. The Division shall deny any motor vehicle dealer application that, if granted by the Division, would allow said manufacturer, or any parent, subsidiary, or other person or entity affiliated with the manufacturer, to own, operate, or control any more than the maximum total number of motor vehicle dealership locations in this State permitted by this subdivision. Provided further, that the Commissioner shall promptly revoke any motor vehicle dealer license granted under this section upon discovery of the occurrence of any of the following events:

a. The manufacturer ceases to manufacturer or distribute only motor vehicles that are electric vehicles that do not rely on any nonelectric source of power in all modes of operation.

b. The manufacturer enters into a franchise with any dealer located in this State.

        c.      <u>The manufacturer acquires a substantial affiliation with any motor vehicle manufacturer or distributor that currently has or at any point in the past has ever entered into a franchise with a dealer located in this State. For purposes of this sub-subdivision, the term "substantial affiliation" means either of the following:</u>

            1.    <u>The ownership by the manufacturer of a direct or indirect interest of greater than thirty percent (30%) of the shareholder voting control of an entity that is a motor vehicle manufacturer, factory branch, distributor, or distributor branch, as these terms are defined in G.S. 20-286.</u>

            2.    <u>The combined direct or indirect ownership by one or more motor vehicle manufacturers, factory branches, distributors, or distributor branches , as these terms are defined in G.S. 20-286, or one of their affiliates, of greater than thirty percent (30%) of the shareholder voting control of the manufacturer.</u>

        d.      <u>The manufacturer sells or offers for sale any new motor vehicles identified as, or bearing the logo or brand of, a motor vehicle manufacturer or distributor which has any franchised dealers within this State, provided, however, that this provision shall not be deemed to be violated if any component parts of a motor vehicle are branded with the name of or logo of another motor vehicle manufacturer as long as the vehicle as a whole is clearly identified as, and branded exclusively with the brand of the electric vehicle manufacturer that holds the motor vehicle dealer license.</u>

(5)     The ownership, operation, or control of any facility (location) of a new motor vehicle dealer in this State at which the dealer sells only new and used motor vehicles with a gross weight rating of 8,500 pounds or more, provided that both of the following conditions have been met:

        a.      The facility is located within 35 miles of manufacturing or assembling facilities existing as of January 1, 1999, and is owned or operated by the manufacturer, manufacturing branch, distributor, distributor branch, or any affiliate or subsidiary thereof which assembles, manufactures, or distributes new motor vehicles with a gross weight rating of 8,500 pounds or more by such dealer at said location; and

        b.      The facility is located in the largest Standard Metropolitan Statistical Area (SMSA) in the ~~State; or~~<u>State.</u>

(6)     As to any line make of motor vehicle for which there is in aggregate no more than 13 franchised new motor vehicle dealers (locations) licensed and in operation within the State as of January 1, 1999, the ownership, operation, or control of one or more new motor vehicle dealership trading solely in such line make of vehicle by the manufacturer, factory branch, distributor, distributor branch, or subsidiary or affiliate thereof, provided however, that all of the following conditions are met:

        a.      The manufacturer, factory branch, distributor, distributor branch, or subsidiary or affiliate thereof does not own directly or indirectly, in aggregate, in excess of forty-five percent (45%) interest in the dealership;

        b.      At the time the manufacturer, factory branch, distributor, distributor branch, or subsidiary or affiliate thereof first acquires ownership or assumes operation or control with respect to any such dealership, the distance between the dealership thus owned, operated, or controlled

and the nearest other new motor vehicle dealership trading in the same line make of vehicle, is no less than 35 miles;

    c.    All the manufacturer's franchise agreements confer rights on the dealer of the line make to develop and operate within a defined geographic territory or area, as many dealership facilities as the dealer and manufacturer shall agree are appropriate; and

    d.    That as of July 1, 1999, not fewer than half of the dealers of the line make within the State own and operate two or more dealership facilities in the geographic territory or area covered by the franchise agreement with the manufacturer.

    (7)    The ownership, operation, or control of a dealership that sells primarily recreational vehicles as defined in G.S. 20-4.01 by a manufacturer, factory branch, distributor, or distributor branch, or subsidiary thereof, if the manufacturer, factory branch, distributor, or distributor branch, or subsidiary thereof, owned, operated, or controlled the dealership as of October 1, 2001.

    (8)    <u>A manufacturer that manufactures and distributes only low-speed vehicles that meet the applicable NHTSA standards for low-speed vehicles; provided, however, that this subdivision is applicable only to a manufacturer that had at least one motor vehicle dealership licensed in this State by the Division as of March 1, 2019.</u>

…."

## LICENSE APPLICATION REVISIONS/PUBLICATION OF MANUFACTURER LICENSE OR LICENSE RENEWAL APPLICATIONS

    **SECTION 11.** G.S. 20-288 reads as rewritten:

"**§ 20-288. Application for license; license requirements; expiration of license; bond.**

    (a)    A new motor vehicle dealer, motor vehicle sales representative, manufacturer, factory branch, factory representative, distributor, distributor branch, distributor representative, or wholesaler may obtain a license by filing an application with the Division. An application must be on a form provided by the Division and contain the information required by the Division. An application for a license must be accompanied by the required ~~fee and by an application for a dealer license plate.~~fee. The following requirements also apply to applicants under this section:

    (1)    <u>An application for a new motor vehicle dealer license must be accompanied by an application for a dealer license plate. In addition, the Division shall require each applicant for a new motor vehicle dealer license to certify on the application whether the applicant or any parent, subsidiary, affiliate, or any other entity related to the applicant is a manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative. In the event the applicant indicates on the application that the applicant or any parent, subsidiary, affiliate, or any other entity related to the applicant is a manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative, the Division shall not issue a motor vehicle dealer license to the applicant until both of the following conditions are satisfied:</u>

    a.    <u>The applicant states on the application the specific exception or exceptions to the prohibition on the issuance of a motor vehicle dealer license to any manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative for which the applicant contends it qualifies under G.S. 20-305.2(a).</u>

    b.    <u>If the applicant does not currently hold a motor vehicle dealer license issued by the Division, the Commissioner determines, after an</u>

<u>evidentiary hearing, that the applicant qualifies under one or more of the exceptions to the prohibition against the issuance of a motor vehicle dealer license to any manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative provided in G.S. 20-305.2(a). The applicant shall bear the burden of proving the applicant's qualification for the exception or exceptions claimed.</u>

(2) <u>Upon submission of a license application by a manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative that has not previously been issued a license by the Division, the Division shall promptly publish notice of the license application in the North Carolina Register. The notice shall include the applicant's name, address, application date, and the names and titles of any individual listed on the application as an owner, partner, member, or officer of the applicant. The Division shall not approve or issue any license for a manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative earlier than 15 days from the date the notice of the license or license renewal application was published in the North Carolina Register.</u>

(a1)    A used motor vehicle dealer may obtain a license by filing an application, as prescribed in subsection (a) of this section, and providing the following:

…

(5) <u>A certification as to whether the applicant or any entity having any common ownership or affiliation with the applicant is a motor vehicle manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative. In the event the applicant indicates on the application that the applicant or any parent, subsidiary, affiliate, or any other entity related to the applicant is a manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative, the applicant shall be required to state whether the applicant contends it qualifies for a motor vehicle dealer's license in accordance with any of the exceptions to the prohibition on the issuance of a motor vehicle dealer's license to any manufacturer, factory branch, factory representative, distributor, distributor branch, or distributor representative, as provided in G.S. 20-305.2(a).</u>

…."

## SEVERABILITY CLAUSE

**SECTION 12.**  If any provision of this act or its application is held invalid, the invalidity does not affect other provisions or applications of this act that can be given effect without the invalid provisions or application, and to this end the provisions of this act are severable.

## EFFECTIVE DATE

**SECTION 13.** Sections 1 through 6 and Sections 8 and 9 of this act are effective when they become law and apply to all current and future franchises and other agreements in existence between any new motor vehicle dealer located in this State and a manufacturer or distributor as of that date. Section 7 of this act becomes effective October 1, 2020, and applies to all current and future franchises and other agreements in existence between any new motor vehicle dealer located in this State and a manufacturer, distributor, dealer management computer system vendor, or third party as of that date. The remainder of this act is effective when it becomes law.

In the General Assembly read three times and ratified this the 8th day of July, 2019.


s/  Ralph E. Hise
    Presiding Officer of the Senate


s/  Tim Moore
    Speaker of the House of Representatives


s/  Roy Cooper
    Governor


Approved 1:27 p.m. this 19th day of July, 2019