PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF MVSC'S NEWLY DISCLOSED CLAIMS BASED ON THE VIRGINIA AND WISCONSIN EVR MARKETS**

## INTRODUCTION

Plaintiff Motor Vehicle Software Corp. ("MVSC") is attempting to fundamentally amend its complaint by expert report to include new damages claims based on new markets: the Virginia and Wisconsin EVR markets. These claims and markets were previously unalleged. Amending a complaint requires court permission, not expert fiat. After two years of litigation and the close of fact discovery, such expert-driven amendment is inappropriate and highly prejudicial and should be excluded.

From the time MVSC filed its original, first amended, and second amended complaints in 2017, it has sounded a constant and unmistakable theme: that Defendants CDK Global, LLC ("CDK"), The Reynolds and Reynolds Company ("Reynolds"), and Computerized Vehicle Registration ("CVR") (collectively, "Defendants") have engaged in unlawful conduct to restrain competition in -- and caused harm to MVSC in -- two specific state EVR markets: California and Illinois. *See, e.g.,* MVSC Second Amended Complaint ("SAC") (Dkt. 76) ¶ 64 ("There are two state EVR markets at issue in this complaint: the Illinois EVR market and the California EVR market."). MVSC specifically alleges that Defendants conspired to block MVSC from access to data and thereby cause it harm in the California and Illinois EVR markets. *E.g.*, SAC ¶ 206-215. MVSC also specifically alleges that CDK and CVR monopolized the Illinois EVR market, attempted to monopolize the California EVR market, and conspired to monopolize the California and Illinois EVR markets. *E.g.*, SAC ¶¶ 216-240. MVSC's only state law claims are based on California and Illinois state law. SAC ¶¶ 241-263.[1]

Defendants have diligently pursued discovery that rebuts MVSC's claims based on the California and Illinois EVR markets. However, MVSC now seeks to expand its claims to include

---

[1] MVSC voluntarily dismissed its claims against CDK and CVR on October 15, 2019. See Dkt. 778.

unalleged harm suffered in the Wisconsin and Virginia EVR markets. In August 2019, four months after the close of fact discovery, Gordon Klein submitted an opening expert damages report for MVSC calculating MVSC's damages as follows:



See **Exhibit A** (Klein Rpt., ¶ 20).

MVSC's SAC allegations, initial disclosures and interrogatory responses regarding the Illinois and California EVR markets did not encompass or put Defendants on notice of any claims for damages based on the Virginia and Wisconsin EVR markets, which Dr. Klein now asserts constitutes ▮▮▮ of MVSC's damages.

The prejudice to Reynolds is plain. Had Reynolds known that MVSC was asserting claims for damages based on harm allegedly suffered in the Wisconsin and Virginia EVR markets, they would have pursued additional documents from agreed document custodians, additional document custodians, additional deponents, and asked additional questions of those who were already deposed. Fact discovery is now closed and these opportunities are lost. Moreover, the case has been litigated for two years at great expense; to re-do discovery for two completely new markets at this point would be enormously expensive and time-consuming. MVSC's attempted amendment

by expert is not permitted under Rules 15(a) or 26(a) or Seventh Circuit law, and its claims based on the Wisconsin and Virginia EVR markets should be stricken.

## BACKGROUND

### I. MVSC's Claims Are Limited To The California and Illinois EVR Markets.

MVSC's SAC is based on an alleged conspiracy to exclude MVSC from Defendants' third-party access programs and block MVSC from accessing data through other means, in order to eliminate MVSC as a competitor in the California and Illinois EVR markets and thereby maintain CVR's alleged monopoly in Illinois and give CVR a monopoly in California. *E.g.*, SAC ¶ 15 ("By excluding MVSC from their 3PA and RCI programs, and seeking to block MVSC from obtaining dealer data through other means, Defendants' illegal conspiracy has protected CVR's monopoly in the Illinois EVR market and created a dangerous probability that CVR will regain its monopoly position in the California EVR market."); *see also* SAC ¶ 202 (alleging "[t]he **only purpose** behind their conspiracy to boycott MVSC and campaign to cut off MVSC completely from dealer data is to protect CVR's monopoly profits in Illinois and regain them in California.") (Emphasis added).

Out of 263 paragraphs in the SAC, only two of them mention the Virginia and Wisconsin EVR markets, briefly noting that MVSC does not compete in those markets. SAC ¶ 19 ("MVSC is working to gain approval in the Virginia EVR program."); SAC ¶ 86 ("MVSC plans to enter other EVR markets, including Wisconsin and Virginia."). The focus of the vast majority of MVSC's allegations, and all of MVSC's claims, are on the Illinois and California EVR markets.

A simple review of MVSC's eight causes of action leaves no doubt that MVSC's claims are based on harm allegedly suffered in the California and Illinois EVR markets and not the Virginia and Wisconsin EVR markets. Indeed, MVSC's second, third and fourth causes of action are expressly based on monopolization, attempted monopolization and conspiracy to monopolize the California and/or Illinois EVR markets specifically. SAC ¶¶ 216-240. MVSC's fifth through

eighth causes of action are California and Illinois state law claims, which, again, are expressly and specifically based on harm suffered in the California or Illinois EVR markets. SAC ¶¶ 241-263.

The only cause of action that could even potentially be based on harm suffered outside of the California or Illinois EVR markets is MVSC's first cause of action based on an alleged conspiracy in violation of Section 1 of the Sherman Act. SAC ¶¶ 206-215. But the allegations leave no room for doubt that MVSC has limited this claim to harm suffered only in the California and Illinois EVR markets:

- "The purpose of Defendants' conspiracy was and is to drive MVSC out of the California EVR market and prevent MVSC from competing with CVR in the Illinois EVR market, thereby protecting and increasing the flow of monopoly profits from CVR to CDK and Reynolds." SAC ¶ 209.

- "Through their conspiracy, Defendants have caused actual injury to competition in both the California EVR market and the Illinois EVR market." SAC ¶ 211.

- "The boycott is cutting off MVSC's access to dealer data that MVSC needs in order to compete with CVR in the California and Illinois EVR markets." SAC ¶ 212.

- "Defendants' conspiracy and anticompetitive conduct in furtherance thereof do not enhance efficiency or competition in the California and Illinois EVR markets. On the contrary, Defendants' conduct has produced only anticompetitive effects in these markets." SAC ¶ 214.

MVSC made additional statements in other pleadings further confirming that its claims were based on the California and Illinois EVR markets and not the Virginia and Wisconsin EVR markets. *E.g.,* 3/13/18 MVSC Opp. to Mtn. to Dismiss (Dkt. 108), at 9 ("MVSC alleges that CDK conspired with Reynolds to deny MVSC access to dealer data – a conspiracy that has facilitated CDK's monopoly of EVR services in Illinois and attempted monopolization in California."); 11/10/17 Joint Rule 26(f) Report (Dkt. 79), at 3 ("By blocking MVSC, the FAC alleges that Defendants were able to monopolize the Illinois EVR market, are attempting to monopolize the California EVR market, and have conspired to monopolize both states' EVR markets.").

MVSC's initial disclosures and interrogatory responses did not mention the Virginia or Wisconsin EVR markets. See **Exhibit B**, 4/30/19 MVSC Initial Disclosures, at 24 (stating only that "computation of damages . . . has yet to be determined."); **Exhibit C**, 1/11/19 MVSC Amended Responses to Interrogatories (responses to interrogatories 27, 35, 36 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). MVSC did not identify any witness with specific knowledge of the EVR markets in Virginia or Wisconsin in its initial disclosures, but it did identify witnesses with specific knowledge of the California and Illinois EVR markets. **Exhibit B**, at 3-4.

II. **The New State EVR Markets – Virginia and Wisconsin – Disclosed In Gordon Klein's Expert Report for MVSC**

On August 26, 2019, the parties exchanged their initial expert reports. MVSC's liability expert, Mark Israel, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Exhibit K**, Israel Rpt., p. 9, ¶¶ 101-103, 161-165, 188-192. However, MVSC's damages expert, Gordon Klein, opines that MVSC suffered damages in not just the California and Illinois EVR markets, but also the Virginia and Wisconsin EVR markets. **Exhibit A**, Klein Rpt. ¶¶ 18-24. Claimed damages in Wisconsin alone account for nearly half of the damages that MVSC is seeking -- ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, ¶ 20 (chart); *see* chart *supra* at 2.

Defendants had no reason to think that MVSC's prior allegations regarding harm allegedly suffered in California and Illinois also encompassed unalleged harm in Virginia and Wisconsin; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* **Exhibit K**, Israel Rpt. ¶ 62 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. **Exhibit A**, Klein Rpt.





¶¶ 106, 108.

*Id.* ¶¶ 103, 106, 110, 116.

*Id.* ¶¶ 20, 54, 112, 115, 116.

### ARGUMENT

Disclosure for the first time in an expert report of claims for damages based on two completely new relevant markets is not permitted. *See Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) (rejecting argument that defendant "was not surprised by the new claim because she had been made aware of it through the expert witness statements"). It is black-letter law that a complaint must plead "sufficient facts" to put the defendant "on notice" of a plaintiff's claim and the grounds on which it rests. *Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015). "The burden rests primarily upon the plaintiff to amend his complaint, not upon the defendant to anticipate a new claim." *Deasy*, 833 F.2d at 41.[2] MVSC's attempt to more than double the scope of its case through Dr. Klein's report, including the amount of damages and the number of relevant markets, should be rejected. *See* Fed. R. Civ. Proc. 15(a); 26(a); 26(e); 37.

### I. MVSC May Not Amend Its Complaint By Expert Report.

Under Rule 15(a), MVSC requires court approval or Defendants' consent in order to amend its complaint, neither of which MVSC has obtained with respect to its damages theories based on the Virginia and Wisconsin EVR markets. The Seventh Circuit has explained that "if the plaintiff

---

[2] To be clear, Reynolds does not contend that MVSC and its experts are barred from referring to documents or events that relate to the Wisconsin or Virginia EVR markets. The parties are free to use such evidence to the extent it is relevant. *See* example described *infra* at 11.

in the course of pretrial discovery comes up with a new claim, he will have to get his complaint amended if the pleadings and the proof are to be conforming," particularly where (as here) a plaintiff pleads "highly specific" claims. *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1430 (7th Cir. 1993).[3] MVSC has pleaded a highly specific claim based specifically on the California and Illinois EVR markets in a 263-paragraph SAC (its third filed complaint). Only two paragraphs in the SAC even mention Virginia or Wisconsin, and the paragraphs constituting the causes of action exclusively refer to alleged harm in the Illinois and California EVR markets. MVSC's subsequent statements in pleadings and discovery documents reaffirmed that its case focused on the California and Illinois EVR markets. *See supra*, 3-4. Courts have excluded late-offered evidence designed to expand damages claims. *Chaveriat*, 11 F.3d at 1423-24, 1430 (affirming order denying leave to amend and excluding evidence that would expand claims and damages to encompass a second, unalleged fuel spill after two years of litigation and close of fact discovery).

MVSC was also required to provide "a computation of each category of damages claimed" in its initial disclosures under Rule 26(a). However, MVSC's initial disclosures did not disclose any intent to seek damages based on harm allegedly suffered in the Virginia or Wisconsin EVR markets. *See* **Exhibit B** (MVSC Initial Disclosures at 24 stated only that "computation of damages . . . has yet to be determined."). Indeed, MVSC's Initial Disclosures identified five specific witnesses at MVSC who were likely to have discoverable information, four of whom had information regarding "the EVR markets in California and Illinois," but none of whom had information regarding the EVR markets in Virginia or Wisconsin. *Id.* at 3-4. For instance, ■

---

[3] *See also Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859-60 (7th Cir. 2017) (court may deny *de facto* amendment that "changes the complaint's factual theory" or offers new legal theories that would "cause unreasonable delay" or "make it more costly or difficult" to defend); *Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993) (similar).

███████████████████████████████████████████████, was not identified in MVSC's initial disclosures. *See* **Exhibit D** (MVSC_MDL_0063868, slide 10 (MVSC org. chart)). Neither was ███████████████████████████████████████████. *Id.* Moreover, MVSC's earlier disclosures in its Joint Rule 26(f) Report filed on November 10, 2017 mentioned only California and Illinois. *See* Dkt. 79, at 2-3, 6-7.

MVSC's interrogatory responses painted a similar picture. On January 11, 2019, MVSC served amended responses to Defendants' First Set of Interrogatories. **Exhibit C.** ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* (see MVSC's amended responses to interrogatories 27, 35, 37). MVSC was required to timely supplement both its initial disclosures and its interrogatory responses under Rule 26(e) if they were incomplete or inaccurate – neither was ever amended to disclose an intent to pursue claims for damages based on the Virginia or Wisconsin EVR markets.

Gordon Klein's surprise opinions regarding these markets should be excluded. For instance, in *Paramount Media Grp., Inc. v. Village of Bellwood*, 2015 WL 3419831 (N.D. Ill. May 28, 2015), the plaintiff served amended Rule 26(a) disclosures and an amended expert report two months after the close of discovery, resulting in an "enormous" increase in claimed damages from $1.6 million to $14 million based on a new theory (that the plaintiff would have used a digital, rather than static, billboard). 2015 WL 3419831, at *1, *3. The court excluded plaintiffs' new theory of liability and damages under Rule 37. "If a digital sign was, as Paramount fecklessly suggests, in the game all along, the damage claim should have been accounted for in the initial and subsequent disclosures." *Id.* Similarly, neither MVSC's initial disclosures nor its interrogatory responses disclosed its intent to seek damages based on harm allegedly suffered in the Virginia or

Wisconsin EVR markets (and neither has been amended to disclose these damages theories). Gordon Klein's expert report was the first mention of MVSC's intent to seek damages allegedly suffered in Virginia and Wisconsin, and it was served four months after the close of fact discovery (as opposed to two months in *Paramount*), and, if not stricken, will result in an even more "enormous" increase in damages than in *Paramount* (, as opposed to increase of $12.4 million in *Paramount*). *See also Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 542 (N.D. Cal. 2009) (excluding copyright infringement damages theory for lost profits from newly disclosed customers where "from [the case's] inception [plaintiffs focused] on lost support revenue from" a narrower set of customers).

The evidence on which Gordon Klein relies to advance damages theories based on the Virginia and Wisconsin EVR markets is not new. All but one of the sources cited in the Klein Report (at ¶¶ 42-50, 97-140) to support damages allegedly suffered in the Virginia and Wisconsin EVR markets were documents authored, sent or received by MVSC, a publicly available document, or information obtained from an MVSC employee.[4] Thus, MVSC had no excuse for failing to disclose earlier. *E.g., Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*, 2011 U.S. Dist. LEXIS 106016, *7-10 (E.D. Cal. Sept. 19, 2011) (excluding $12 million damages theory first disclosed after fact discovery cutoff, noting that the theory was not properly disclosed in initial disclosures or interrogatory responses even though the factual predicates were already known).

Finally, MVSC's interrogatory responses, which refer back to the complaint and also generally reference forthcoming expert reports, and MVSC's initial disclosures, which include a general statement that damages had yet to be calculated, do not give MVSC a blank check to

---

[4] A single CDK document is cited in paragraph 115, footnote 118 of Dr. Klein's report, but it is one of several sources cited to support the proposition in that paragraph. Other sources include Joe Nemelka and Kelly Kimball of MVSC.

double the number of relevant markets and the amount of MVSC's claimed damages. *See Phoenix Techs., Ltd. v. VMware, Inc.*, 2017 U.S. Dist. LEXIS 72353, *18-24 (N.D. Cal. May 11, 2017). For instance, in *Phoenix Techs.*, the court granted a motion in limine to exclude an expert opinion regarding new theories of copyright infringement where the complaint specifically alleged only four theories of infringement. *Id.* The court noted that, like MVSC, relevant interrogatory responses referred back to the complaint, which only described four theories of infringement. *Id.* at *19. The court further noted that, like MVSC, relevant interrogatory responses referred to forthcoming expert reports, which only confirmed for the court that the new theories set forth in expert reports after the close of fact discovery should be excluded: "[S]uch an attempt to incorporate not-yet-existing expert reports into Phoenix's interrogatory response only supports the Court's finding that Phoenix's shift in theory effectively precluded VMware from understanding the central claim now alleged against it at the critical time: before fact discovery closed." *Id.* at *21-22. MVSC has delayed too long to expand its damages claims to encompass the Virginia and Wisconsin EVR markets, and those portions of Gordon Klein's report should be stricken.

**II.     Reynolds Will Be Significantly Prejudiced Unless Dr. Klein's Opinions Regarding the Virginia and Wisconsin EVR Markets are Excluded**

Gordon Klein's opinions regarding new, previously unalleged damages theories based on the Virginia and Wisconsin EVR markets should be excluded not only because of MVSC's undue delay in disclosing its intent to pursue such damages theories, but also because of the undue prejudice that that Reynolds would otherwise suffer. Reynolds has lost the opportunity to conduct targeted discovery to test the bases of these new theories, and expanding fact discovery now to include these claims would be enormously expensive and time consuming.

To be sure, Defendants conducted some limited discovery relating to EVR markets in various states other than California and Illinois, to the extent relevant to MVSC's claims based on

the California and Illinois EVR markets. For instance, Defendants have pursued discovery to illustrate that it makes no economic sense for Defendants to block MVSC from RCI and 3PA in order to insulate CVR while allowing other EVR providers that compete with CVR in states other than California and Illinois, such as Titletec, to participate in the RCI and 3PA programs.[5] However, Defendants undoubtedly would have focused much greater attention on the Virginia and Wisconsin EVR markets specifically – through additional document, deposition, and third party discovery – had they known what they now know from Gordon Klein's expert report – that MVSC is seeking most of its damages, up to ▮, from harm suffered in those two markets alone.

MVSC's belated disclosure through the Klein Report after the close of fact discovery deprives Reynolds of the ability to conduct this discovery. As explained above, MVSC's initial disclosures failed to identify any witness with specific knowledge regarding Virginia or Wisconsin EVR markets, including ▮ ▮. *See* **Exhibit D** (MVSC_MDL_0063868, slide 10 (MVSC org. chart)). Had Reynolds known what it knows now, it would surely have requested ▮ as document custodians. When Defendants discovered that Jamison Kingfield, MVSC's regional manager for Illinois, had not been disclosed by MVSC, Defendants requested that Mr. Kingfield be added as a document custodian, which MVSC agreed to. *See* **Exhibit E** (1/4/19 letter).[6]

---

[5] Defendants deposed non-party TitleTec on February 1, 2019. TitleTec has participated in RCI since 2010 and competes with CVR in states outside of California and Illinois.

[6] Indeed, MVSC expressly limited its production from Mr. Kingfield's files to materials "limited to his capacity as General Manager of MVSC's Illinois operations," citing relevance. See **Exhibit E** at 1. However, Mr. Kingfield also worked on issues relating to the Wisconsin EVR market. *E.g.*, **Exhibit F** (MVSC_MDL_0030414) (▮ WATDA stands for the Wisconsin Automobile & Truck Dealers Association; see http://watda.org/) ▮ ▮. Limitations imposed by MVSC may have prevented Reynolds from discovering the full extent of Mr. Kingfield's materials relating to Wisconsin and Virginia.

Given the size of the potential damages MVSC is claiming in Wisconsin and Virginia combined, particularly in Wisconsin, Reynolds likely also would have requested an additional deposition or depositions, or asked many more questions regarding Virginia and Wisconsin during the depositions of MVSC's COO Joe Nemelka, CEO Don Armstrong, Senior Manager of Operations Napa Bulusu, and non-party Dara Goroff of Titletec. Each of these depositions focused mostly on California and Illinois, with very few questions about other states.

In addition, MVSC's production did not include materials from agreed custodians, such as Joe Nemelka, that were plainly relevant to the Wisconsin EVR market. After receiving Dr. Klein's report for MVSC, Defendants sent a FOIA request to the Wisconsin Department of Transportation ("DOT") seeking materials relating to MVSC's efforts to enter the Wisconsin EVR market. Materials produced by the Wisconsin DOT include communications previously unproduced by MVSC, which are highly relevant to potential claims based on the Wisconsin EVR market and Dr. Klein's related opinions. Three examples are provided below and attached, each received from Wisconsin DOT and each unproduced by MVSC, all strongly refuting Dr. Klein's opinion that ████████████████████████████████████████████████

████████████████████████████████████████████████:

1. 7/16/13 email from Dianne Parish of Wisconsin DOT to Joe Nemelka of MVSC: "I should let you know that we rarely add new vendors due to the massive start-up resources we need to dedicate from our side." **Exhibit G.**

2. 8/7/14 letter from Dianne Parish of Wisconsin DOT to Joe Nemelka of MVSC informing him that Wisconsin was "unable to accept" MVSC's proposal to become an authorized EVR provider in Wisconsin because it would require "extensive resources from DMV for start-up programming and testing," and because "[i]t is unlikely that adding a new vendor would increase the number of participants in the [EVR] program," and further noting: "Adding an additional title/registration vendor without expanding the locations participating in the APPS program offers no benefit to either DMV or our customer, the Wisconsin motorist." **Exhibit H.**

3. 2/23/17 letter from Michael Domke of Wisconsin DOT to Joe Nemelka of MVSC: "In recent years you have requested to partner with the Wisconsin Department of Transportation and become a recognized vendor for title and registration transactions. At the time of your request the department was not accepting new vendors into the Agent Partnership Processing System program. . . . We are still developing a definitive timetable, but our goal to implement new vendors into the program is early 2019. The department will provide timetable updates as they become available." **Exhibit I.**

Such materials are plainly responsive to Defendants' comprehensive document requests to MVSC. *See* **Exhibit J** (6/22/18 MVSC responses to Defendants' document requests). For instance, document request 73 asked for all documents relating to "any damages or other harm you claim to have suffered and for which you seek any form of recovery in this action." *Id.* MVSC responded that it would "produce responsive, relevant, non-privileged documents in its possession, custody, or control responsive to this Request . . . ." Yet, MVSC withheld all of these documents from production.

If MVSC withheld such materials on grounds that they were not responsive or relevant because they related to Wisconsin, this only confirms that claims for damages were limited to the Illinois and California EVR markets to begin with. If MVSC withheld such materials because they were somehow not encompassed by parties' negotiated search terms, this too confirms that MVSC has conducted the litigation in a way that has led Reynolds to believe that MVSC would only be pursuing damages claims based on the Illinois and California EVR markets.[7] *See, e.g., Oracle USA, Inc.*, 264 F.R.D. at 550-551 (excluding late disclosed theory on prejudice grounds, and noting that jointly negotiated search terms only confirmed that the theory should not be part of the case: "It would be unfair, however, to put the burden on Defendants to intuit that such search terms

---

[7] To be clear, MVSC's production and discovery responses do include some documents and information relating to Wisconsin, Virginia and other EVR markets. As explained above, certain issues relating to those EVR markets are relevant to the claims based on the California and Illinois EVR markets. But the materials and individuals described herein would be the most highly relevant to a claim for damages based on harm allegedly suffered in the Virginia and Wisconsin EVR markets.

would be necessary, in light of Plaintiffs' representations to the contrary and Plaintiffs' much greater knowledge of the relevance of documents in Plaintiffs' possession and the intricacies of Plaintiffs' systems"); *see also City of New York v. Group Health Inc.*, 649 F.3d 151 (2d Cir. 2011) (precluding plaintiff from expanding antitrust claim to a different, broader relevant market because it would result in undue prejudice by requiring parties "to conduct substantial additional discovery on a different and much broader market."). The prejudice to Reynolds is plain. MVSC cannot hide its intent to seek damages in the Virginia and Wisconsin EVR markets, then maneuver fact discovery to prevent the disclosure of information and documents that would be most relevant to such claims, and then, after the close of fact discovery, reveal those theories in an expert report.

Courts have found undue prejudice and excluded or stricken expert materials under similar circumstances. In *Apple, Inc. v. Samsung Electronics Co., Ltd.*, the court struck portions of expert reports pertaining to undisclosed theories even though "expert discovery had not yet concluded," because "the experts were in effect locked-in to the factual record as of the time fact discovery closed and could not test the factual basis for the newly amended contentions by conducting additional discovery." 2012 WL 3155574, at *5 (N.D. Cal. Aug. 2, 2012). In so ruling, the court found that the new theories would unduly prejudice the other party, who "did not have the opportunity to conduct additional fact discovery regarding [Plaintiffs'] new theories." *Id. See also Phoenix Techs., Ltd.*, 2017 U.S. Dist. LEXIS 72353, *22-23 (failure to disclose new theory "before the close of fact discovery prejudiced VMWare by forcing it to proceed through that phase of discovery without the ability to explore the particular theories of infringement alleged against it.").

The prejudice to Reynolds is not ameliorated by MVSC's general references to forthcoming expert reports or its complaint, which only contained specific allegations about harm

in California and Illinois. As the court in *Oracle USA, Inc.* explained when it precluded new, undisclosed damages theories (264 F.R.D. at 549-50):

> Here, Plaintiffs seek to rely on the vague, very general damages allegations in their initial complaint to preserve their new, more extensive damages theories, even though they failed to disclose those theories in discovery for over two years, despite Defendants' efforts from the outset to flesh out Plaintiffs' sketchy damages allegations through appropriate discovery tools. To allow the belated disclosure of the new theories to trigger large new waves of expensive discovery and expert analysis at this late date based on vague allegations that Plaintiffs previously refused to elaborate on despite their ability to do so, would be simultaneously unfair to Defendants, very expensive and hugely time consuming, slowing down what is already very lengthy litigation. Such a result would run directly contrary to the mandate of Rule 1, achieving a dubious trifecta of unfair, glacially slow and exorbitantly expensive litigation.
>
> * * *
>
> Early discovery of damages was essential to give Defendants fair notice of the scope of this case, in order to assess their exposure accurately, decide how and at what expense to conduct their defense, and evaluate any potential settlement prospects.

## CONCLUSION

The Court should preclude MVSC from pursuing claims based on harm allegedly suffered in the Virginia or Wisconsin EVR markets and strike all such opinions from the Klein Report.[8]

---

[8] Even if MVSC were to file a motion for leave to amend, it should be denied for the same reasons. *See Chaveriat*, 11 F.3d at 1423-24, 1430; *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002); *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 733 (6th Cir. 2019) (affirming denial of leave to amend new claim that would "require a new round of discovery" and "significantly exten[d]" the litigation"); *City of New York v. Group Health Inc.*, 649 F.3d 151 (2d Cir. 2011) (affirming denial of leave to amend to allege new market in antitrust case because it "would delay proceedings and require substantial additional expense" resulting in undue prejudice by requiring parties "to conduct substantial additional discovery on a different and much broader market."); *In re Milk Products Antitrust Litig.*, 195 F.3d 430, 438 (8th Cir. 1999) (denying motion to amend to add new named plaintiffs due to additional discovery and delay); *In re Merck Mumps Vaccine Antitrust Litig.*, 2018 WL 1693348, at *1 (E.D. Pa. Apr. 6, 2018) (denying leave to add attempted monopolization claim after close of fact discovery); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Westport Ins. Corp.*, 2012 WL 698540, at *3 (N.D. Ill. Feb. 29, 2012) (denying leave to amend where defendant had "expended considerable time and expense conducting discovery to defend against Plaintiff's original theory."). In addition, materials obtained from Wisconsin DOT in response to Reynolds's FOIA request show that amendment would also be futile, because Wisconsin DOT was and is not willing to authorize MVSC to provide EVR services for reasons having nothing to do with Defendants. *See supra*, 12-13. Futility of amendment weighs against leave to amend. *Chaveriat*, 11 F.3d at 1423-24, 1430.

Dated: October 16, 2019 Respectfully submitted,

/s/ *Leo D. Caseria*

Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

# CERTIFICATE OF SERVICE

I, Leo D. Caseria, an attorney, hereby certify that on October 16, 2019, I caused a true and correct copy of the foregoing **DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF MVSC'S NEWLY DISCLOSED CLAIMS BASED ON THE VIRGINIA AND WISCONSIN EVR MARKETS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

>   */s/      Leo D. Caseria*
>   Leo D. Caseria
>   SHEPPARD MULLIN RICHTER & HAMPTON, LLP
>   2099 Pennsylvania Avenue NW, Suite 100
>   Washington, DC 20006
>   (202) 747-1900
>   lcaseria@sheppardmullin.com

SMRH:4821-9935-4280