**PUBLIC VERSION**

# Exhibit H

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

August 2, 2018

Andrew Marovitz
Matthew Provance
Mayer Brown LLP
71 S. Wacker Drive
Chicago, Illinois 60606

   Re:  Cox Automotive and AutoLoop Discovery Responses

Dear Andy and Ethan,

  We write on behalf of Cox Automotive and AutoLoop with respect to Andy's letters on July 27, 2018, July 30, 2018, and August 2, 2018, our meet-and-confer on July 31, 2018, and Andy's email on July 31, 2018. This letter is intended to memorialize the current agreements and outstanding areas of dispute regarding Cox Automotive's and AutoLoop's responses to CDK's Requests For Production ("RFPs") and interrogatories.[1]

## I. CDK's RFPs To Cox Automotive And AutoLoop

  **Time Period.** In your July 30, 2018 letter, you requested that Cox Automotive and AutoLoop agree to search custodial documents back to January 1, 2013 rather than January 1, 2014. We believe this request is overbroad. Defendants likely have relevant documents prior to January 1, 2014 that would provide context and motivation for their illegal agreement, but Cox Automotive and AutoLoop would not. Nevertheless, in the interest of compromise, we will agree to extend the searches of custodial documents back to January 1, 2013.

  **General Limitations on RFPs.** In Cox Automotive's and AutoLoop's responses to the RFPs, we objected to a number of requests on relevance, burden, and other grounds. Notwithstanding those objections – which we continue to stand on – we explained in our July 26, 2018 letter that we would respond to CDK's RFPs by running agreed search terms through the

---

  [1] As you noted in your August 2, 2018 letter, we stated during the first of our two meet-and-confers on July 31, 2018 that we would attempt to provide a letter response on August 1, 2018 or early August 2, 2018. However, during the second meet-and-confer that afternoon, CDK requested that Cox Automotive and AutoLoop attempt to run more than 60 modified searches. Those searches were time consuming.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

documents of agreed custodians and would produce responsive documents returned by those searches, subject to several limitations. As a result, CDK will receive many of the irrelevant (or marginally relevant) documents that it has requested from Cox Automotive and AutoLoop. On our July 20, 2018 meet-and-confer, we further explained that we would be willing to consider additional targeted searches for specific documents proposed by CDK. We have not yet received a response to that offer.

Our July 26, 2018 letter explains the limitations that we would impose during our search and review of custodial documents. *First*, we will only produce documents that relate to the applications at issue in this litigation. You have asked us to explain what we mean by the applications "at issue." By that, we mean the Cox Automotive applications and AutoLoop applications that have been harmed by CDK's and Reynolds' anticompetitive conduct and for which we seek damages or other relief in this litigation. Those claims are described in our complaints. This is a proper limitation because there is no basis for CDK to seek documents regarding applications that Cox Automotive and AutoLoop do not allege were harmed or for which they do not seek damages or other relief.

*Second*, we explained in our July 26, 2018 letter that we would only produce documents about the applications at issue that relate to (1) damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's and Reynolds' anticompetitive conduct, (2) data integration of Cox Automotive's applications and AutoLoop's applications with any DMS, and (3) any effect that Cox Automotive's applications or AutoLoop's applications have on the data security, performance, and data integrity of any DMS. For Cox Automotive, we would also produce documents that relate to (1) competition in the DMS market, (2) data integration with Dealertrack DMS, (3) the security, performance, and data integrity of Dealertrack DMS. As we have explained on several occasions, these categories are broad and include many documents that are not relevant to this litigation and that Cox Automotive and AutoLoop would be entitled to withhold from production.[2]

In your July 30, 2018 letter, on the July 31, 2018 meet-and-confer, and in your August 2, 2018 letter, you stated that these categories may be too narrow in some areas. Nonetheless, in your August 2, 2018 letter, you expressed the sentiment that there does not appear to be substantial disagreement on how to define these categories (a point on which we agree). Below we address the possible areas of disagreement:

**1.** You requested that we include documents related to "competition in the relevant application market(s), including any mention of competing applications offered by CDK and/or Reynolds." We believe any relevant information in that category would already be subsumed within the category for documents relating to "damages suffered by . . . applications as a result of CDK's and Reynolds' anticompetitive conduct." That category includes documents relating to competition between Cox Automotive's applications and AutoLoop's applications and CDK's applications and Reynolds' applications. To avoid any confusion, we will agree to change this

---

[2] Your August 2, 2018 letter incorrectly refers to these categories as "relevancy issues." These categories are broader than what is relevant to this litigation. We offer to produce documents from these broad categories only as a compromise.

- 2 -

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

category to have two subparts: (a) "damages suffered by . . . applications as a result of CDK's and Reynolds' anticompetitive conduct" and (b) "competition between the Cox Automotive and AutoLoop applications at issue and CDK's and Reynolds' applications." This reformulation does not change the substance of our prior description, and we believe it (as well as the prior version) covers all potentially relevant documents on these issues (and more). Please let us know if this satisfies your concerns.

     **2.** You requested that we include documents relating to "data integration." We believe that such documents would already be subsumed within the categories of documents relating to "data integration of Cox Automotive's applications and AutoLoop's applications with any DMS" and "data integration with Dealertrack DMS." You mentioned on our July 31, 2018 meet-and-confer that these categories might exclude hypothetical documents in Cox Automotive's or AutoLoop's possession about the data integration of applications of other vendors with non-Dealertrack DMS. We believe that there would not be substantial numbers of documents falling in that very specific category, and further, that any such documents would be irrelevant. But to alleviate any concern you might have, we reiterate that you will also receive documents relating to "competition in the DMS market," which would include documents concerning the differences between the data integration practices of DMS providers. Please confirm that this clarification adequately addresses your concerns.

     **3.** You requested that we include documents relating to "access to DMSs" and "third-party access to DMSs, including DealerTrack's DMS." As we explained on the July 30, 2018 meet-and-confer, we understand those categories to be almost entirely subsumed within the category of documents relating to "data integration of Cox Automotive's applications and AutoLoop's applications with any DMS." The only documents not falling within that category would concern data integration of applications of other vendors with non-Dealertrack DMS. Again, we believe that it would be unlikely for Cox Automotive or AutoLoop to have any such documents, and that, if such documents existed, they would either be irrelevant or would be produced as relating to "competition in the DMS market."

     In your August 2, 2018 letter, you state your understanding that our "data integration" category includes "all access to DMSs, including outside of CDK's 3PA and Reynolds' RCI programs." That is correct with the caveat that we would not consider access to the DMS without any authorization from any party to fall within this "data integration" category (but such documents may fall within the "security" categories). However, you also state that "data integration" includes "how Individual Plaintiffs use the data" and "whether they re-syndicate that data to other third parties." That is incorrect. Those issues have nothing to do with accessing the DMS, nor do they appear to have any relevance to this case. Moreover, we are concerned that asking for all documents about how Cox Automotive and AutoLoop "use the data" seeks an enormous amount of competitively sensitive information – with no relevance to the case – about how Cox Automotive's applications and AutoLoop's applications function. Seeking such information is a classic example of an improper fishing expedition.

     We have asked you on at least two occasions to explain the relevance of how Cox Automotive and AutoLoop "use the data" and whether they "syndicate" data (the July 23, 2018 and July 31, 2018 meet-and-confers). In your July 30, 2018 letter, you made the conclusory

- 3 -

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

assertion that "Cox or AutoLoop's distribution of data obtained from a CDK or Reynolds DMS to other third parties, including without CDK or Reynolds's authorization" are "issues that plainly are directly relevant to CDK's defenses." And on our July 31, 2018 meet-and-confer, you stated that unidentified experts may have an unspecified interest in such documents (in part, because they would show Cox Automotive's and AutoLoop's revenue from any such "syndication"). You also clarified that you were requesting documents relating to any "syndication" of data even if explicitly approved by CDK and Reynolds. Given these responses, we still do not understand how these documents are relevant to the case.

We understand from our July 31, 2018 meet-and-confer that CDK is considering moving to compel on these issues. Accordingly, it appears CDK may have already articulated in writing why such documents would be relevant. We would urge you simply to provide that information to us rather than engaging in needless motion practice. We remain willing to consider producing documents on these topics once CDK articulates their relevance.

**4.** You requested that we include documents relating to "competition in the DMS market, including any mention of CDK and/or Reynolds." We will already produce documents relating to competition in the DMS market, including with respect to CDK's DMS and Reynolds' DMS. However, we will not produce *all* documents mentioning CDK or Reynolds. We believe any relevant documents mentioning CDK or Reynolds would already fall within one of the six broad categories of documents that we will produce. If you believe there is any specific category of document mentioning CDK or Reynolds that is not already covered by our proposal, please let us know in writing, and we will consider it.

\* \* \*

You also requested in your July 30, 2018 letter that we specify which specific RFPs may have responsive documents that could be reviewed but withheld by the proposal above. The simple answer is that our review of documents retrieved by running agreed search terms against agreed custodians will be limited in this manner for all RFPs, as we explained in our July 26, 2018 letter. Because the six categories of documents that we will produce are so broad, there are likely to be many RFPs for which no (or few) documents reviewed would be withheld. Accordingly, we do not think it is worthwhile to attempt to parse every RFP to determine whether there is any category of documents that may be responsive to the RFP but would be withheld. Nonetheless, we attempt to do so in Exhibit C to this letter, though we caution the precision of our efforts is severely limited by the overbreadth and vague wording of the RFPs.

**Specific RFPs.** In your July 27, 2018 letter, you raised possible compromises on several disputed RFPs. We address those below.

For **RFP 1, RFP 2, and RFP 8**, you have proposed limiting the requests to the three categories of documents in your July 30, 2018 letter. As we have explained above, we do not think there are any substantial differences between the categories you propose and the six broad categories we will use. Accordingly, we believe our existing proposal for custodial searches is appropriate. Please let us know if you disagree.

- 4 -

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

For **RFP 4**, we are currently considering the proposal in your July 31, 2018 email that Cox Automotive produce "all documents provided to the FTC that are related to its acquisition of DealerTrack from the files of its custodians that hit agreed-upon search terms" and the Item 4(c) documents.

For **RFP 10**, you have proposed limiting the request to "[a]ll marketing materials that refer to DealerTrack, Your Applications, the OpenTrack program or API, and that reference or relate to CDK, Reynolds, and/or any CDK or Reynolds product . . . ." We believe our existing proposal for custodian searches will properly respond to this request. In particular, Dealertrack marketing and OpenTrack materials that reference CDK or Reynolds fall substantially (if not entirely) within the category of documents relating to "competition in the DMS market." And application marketing materials that reference CDK or Reynolds fall substantially (if not entirely) within the category of documents relating to "damages suffered by Cox Automotive's applications and AutoLoop's applications as a result of CDK's anticompetitive conduct" – as that those marketing materials would be relevant to competition between applications. Please let us know if you disagree with the sufficiency of our proposal.

**Search Terms.** We have now agreed to run 42 of 129 terms (for Cox Automotive) and 39 of 123 terms (for AutoLoop). As we explained in our July 26, 2018 letter, we objected to running the remaining search terms for several reasons. Most notably, the search terms hit on an overly burdensome number of documents and sought irrelevant or marginally relevant information. In particular, many of these terms targeted documents to support hypothetical counterclaims against Cox Automotive and AutoLoop regarding "unauthorized access" to CDK's DMS and Reynolds' DMS. CDK has no basis to engage in a fishing expedition for documents to support claims it has not even asserted and have no basis in fact. Many terms also sought documents from *Cox Automotive* and *AutoLoop* to explain the motivations for *CDK's* anticompetitive conduct. But evidence of CDK's motivations will be almost exclusively in CDK's possession.

Nonetheless, we attempted to compromise in our July 26, 2018 letter. We agreed to run 11 additional terms for Cox Automotive and 15 additional terms for AutoLoop despite the burden and lack of relevance of those terms. CDK did not accept this proposal. Rather, it continued to insist we run all terms (but three) with some modifications.

Given the October 12, 2018 deadline for document productions and the need to begin reviewing documents, we once again make a compromise offer. We now offer to run 87 of 129 terms for Cox Automotive and 77 of 123 terms for AutoLoop, shown by the green highlighting in Exhibits A and B. If CDK does not agree to these proposals, please respond in writing with a counterproposal with any additional terms that CDK insists on being included. If CDK insists on additional terms, we would encourage CDK to review its search term list and withdraw other requested terms that do not truly seek relevant documents. Once we have that proposal in writing, we are willing to meet-and-confer.

\* \* \*

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

In contrast to our transparent explanation of how documents will be searched, reviewed, and produced, CDK and Reynolds have yet to provide a similar explanation. On our July 20, 2018 and July 31, 2018 meet-and-confers, we requested that CDK and Reynolds also describe how its reviewers would be making relevancy determinations – *i.e.*, the equivalent of our six categories of documents that we would produce. During that call, CDK and Reynolds were unable to give any more specificity than that they would respond consistent with their written responses to the Plaintiffs' document requests, as well as dozens of follow-up letters and meet-and-confers. However, as one defendant acknowledged, those written responses, letters, and calls are not guidance that can be practically applied by reviewers to determine which documents were relevant and which documents are not. We thus have no way of knowing whether CDK and Reynolds have properly instructed the people who are actually reviewing the documents. Please be prepared to discuss these issues on our next meet-and-confer. We reserve all rights in this regard.

**II.     CDK's Interrogatories To Cox Automotive And AutoLoop**

On our July 23, 2018 meet-and-confer and in Andy's July 30, 2018 letter, CDK raised a number of issues with respect to Cox Automotive's and AutoLoop's interrogatory responses. We address those below.

**Cox Automotive Interrogatory No. 2; AutoLoop Interrogatory No. 2 (Competitors).** We will accept your narrowing of these interrogatories and amend the responses, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 3 (DMS Switching).** Cox Automotive agrees to amend the response and respond to the interrogatory, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 7 (DealerTrack Third-Party Access).** Based on your description that this interrogatory covers "actions" and not just "practices," Cox Automotive will amend its response to the interrogatory if there is any additional information to add, including pursuant to Rule 33(d).

**Cox Automotive Interrogatories Nos. 8-13; AutoLoop Interrogatories Nos. 4-9.** As we explained during the July 23, 2018 meet and confer, we answered these interrogatories as written, which is in the present tense. When CDK wanted to ask about past practices, it did so. Having a generally applicable time period, which you maintain your interrogatories do, to differently worded interrogatories with respect to past and present tense is vague, ambiguous, and confusing. Far from a "gotcha" moment, Cox Automotive and AutoLoop answered the exact questions you asked. You now insist that Cox Automotive and AutoLoop respond to different interrogatories. Nevertheless, in the spirit of compromise, we will determine if the answers for the past would be different from the present for these interrogatories, and if so, amend the responses accordingly, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 14; AutoLoop Interrogatory No. 10 (Scripts And Executable Programs).** We are still considering how and whether to respond to this interrogatory. In particular, we are not certain whether this interrogatory is asking for scripts or

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

executable programs used by Cox Automotive, AutoLoop, or their data integrators, used by dealers, or both. Please provide clarification. We are also willing to meet-and-confer.

**Cox Automotive Interrogatory No. 15; AutoLoop Interrogatory No. 11 (Unlawful/Unenforceable Terms).** As we confirmed during the meet and confer, Cox Automotive's and AutoLoop's present answers are full and complete as of the date of their response. Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery proceeds. But for now, the additional specificity that you are seeking is apparently the pin cites to specific sections of CDK's "standard agreements with Dealers and Vendors." Before we can answer that interrogatory, CDK will need to provide what it considers to be the "standard agreements with Dealers and Vendors." Please do so, and we will amend the responses to provide that further specificity.

**Cox Automotive Interrogatory No. 18; AutoLoop Interrogatory No. 14 (Access Fees).** As we confirmed during the July 23, 2018 meet and confer, Cox Automotive and AutoLoop confirm their present answers are full and complete answers as of the date of their response. Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery proceeds.

**Cox Automotive Interrogatory No. 19; AutoLoop Interrogatory No. 15 (Frequency of Queries/DMS Access).** During our meet and confer, we clarified that, as written, the interrogatory includes access to the Reynolds and CDK DMS through any means, including 3PA and any other authorized means. Because such access is extremely voluminous, responding to this interrogatory as written is unduly burdensome, particularly given that such records of such authorized access should be equally available to Defendants. You stated that you would consider whether or not to limit the request in light of that undue burden, and, on July 27, 2018, you proposed narrowing this interrogatory to the following: "Identify the number of times that You or Your Data Extractors (when acting on Your behalf or at your direction) have accessed and/or queried data maintained on a CDK DMS through means other than approved 3PA access during each month since January 1, 2013." Cox Automotive and AutoLoop will amend their answers to regarding their use of independent integrators to the extent the requested information exists, including pursuant to Rule 33(d).

**Cox Automotive Interrogatory No. 20; AutoLoop Interrogatory No. 17 (Manual Reporting Tools).** During our meet and confer, you clarified that this request is targeted at instances where Cox or AutoLoop have received data from a Reynolds or CDK dealer other than through a third-party data integrator using screen-scraping technology. With that clarification, AutoLoop and Cox Automotive will amend their answer to supply the requested information within their possession, if any, including pursuant to Rule 33(d).

**Cox Automotive Interrogatories Nos. 21-23 (Facts Supporting Allegations).** As we confirmed during the meet and confer, Cox Automotive's and AutoLoop's present answers are full and complete as of the date of their response. Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery proceeds. But for now, the additional specificity that you are seeking is apparently the

Kellogg, Hansen, Todd, Figel & Frederick, p.l.l.c.

pin cites within the documents cited in these interrogatories. We will amend the responses to provide that further specificity.

**Cox Automotive Interrogatory No. 24; AutoLoop Interrogatory No. 18 (Damages).** As we confirmed during the July 23, 2018 meet and confer, Cox Automotive and AutoLoop confirm their present answers are full and complete answers as of the date of their response. Cox Automotive and AutoLoop will, consistent with their rights and obligations, supplement their responses as appropriate while discovery and expert analysis proceed.

            Best regards

            /s/ *Dan Dorris*

            Dan Dorris

Enclosure

CC:     MDL Counsel Email List