**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates to:<br>*Authenticom, Inc. v. CDK Global, LLC et al.*,<br>Case No. 1:18-cv-00868 (N.D. Ill.) | MDL No. 2817<br>Case No. 18 C 864<br><br>Hon. Robert M. Dow, Jr.<br><br>Magistrate Judge Jeffrey T. Gilbert |

**AUTHENTICOM, INC.'S STATEMENT REGARDING PROPOSED BRIEFING SCHEDULE FOR REYNOLDS'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This MDL was created at the behest of Defendants The Reynolds & Reynolds Company ("Reynolds") and CDK Global, LLC ("CDK") to coordinate federal and state-law antitrust claims brought by individual plaintiffs — Authenticom, Inc. ("Authenticom"), Motor Vehicle Software Corporation ("MVSC"), and Cox Automotive, Inc. and its affiliates ("Cox") — and two putative classes (the direct purchaser vendor class and the indirect purchaser dealer class).[1]  Also at Defendants' behest, from the outset of this MDL this Court has established MDL-wide case management orders that call for coordinated summary judgment briefing in all cases in the MDL after the conclusion of expert discovery.  *See* Dkt. 166; *see also* Dkt. 800 (current schedule entered on October 24, 2019).  Despite Defendants' consistent — and often rigid — insistence on a coordinated approach, Reynolds (but not CDK) now seeks to have summary judgment on liability (but not damages) as to two of its 10 counterclaims against Authenticom briefed in advance of all other summary judgment motions, before discovery in the MDL has even been completed.

---

[1] CDK has settled the claims brought by (1) Cox and its affiliates, *see* Dkt. 723, and (2) MVSC, *see* Dkt. 778.

1

Reynolds's request should be rejected for two reasons.

First, under Federal Rule of Civil Procedure 56(d), Authenticom is entitled to develop expert evidence in opposition to summary judgment on Reynolds's counterclaims. Authenticom's expert reports on these issues are not due until November 15, 2019, and depositions of those experts — and of any reply experts Reynolds may disclose — will not be completed until January 31, 2020. As explained further below, expert evidence will be directly relevant to the factual issues raised by Reynolds's counterclaims under the Digital Millennium Copyright Act ("DMCA") and the Wisconsin Computer Crimes Act ("WCCA"). Authenticom is entitled to adduce that evidence and then have summary judgment decided on a full evidentiary record.

Second, it would be inefficient for the Court — and prejudicial to Plaintiffs — to slice off this small portion of one case and separate it from the rest of the MDL. The counterclaims at issue are not discrete from the other issues in the MDL. For one, CDK has nearly identical counterclaims against both Authenticom and the dealer class. Tellingly, at the October 24 hearing, CDK's counsel indicated that it intends to participate in the briefing of Reynolds's motion to the extent that briefing addresses the substance of Reynolds's counterclaims.

Moreover, Reynolds's counterclaims rest on the same basic facts as Authenticom's affirmative antitrust claims, as Reynolds's motion acknowledges (at 3). And, as a matter of law, Defendants' anticompetitive conduct, which forms the basis of Authenticom's antitrust claims, also support affirmative defenses to Reynolds's counterclaims, such as under the doctrine of copyright misuse. Deciding Reynolds's counterclaims in a vacuum is inappropriate because they are the flip side of the core antitrust issues that led to the creation of this MDL. Bifurcating Reynolds's partial summary judgment will require the Court to address the central issues in this MDL twice — once now and once again when all the remaining summary judgment motions are

2

briefed. Worse yet, it creates the prospect of inconsistency across cases that the MDL was created to avoid.

Regardless of how it is decided, Reynolds's partial motion for summary judgment will not resolve the *Authenticom* case (or even any counterclaim within the *Authenticom* case), will not remove any party from this MDL, and will not streamline the case or eliminate any other issues for this Court to resolve. Reynolds's request is supported only by its self-interest in obtaining a perceived strategic advantage; there is nothing in it for the Court or the other parties.

Accordingly, Authenticom respectfully requests that its response to Reynolds's motion be due on April 29, 2020, which is the deadline for all other summary judgment opposition briefs. Alternatively, Authenticom requests that Reynolds's motion be denied without prejudice to refiling in accordance with the current Case Management Order. *See* Dkt. 800.

## BACKGROUND

This Court has set a consolidated discovery schedule that treats all parties and claims the same. *See* Dkt. 166. That schedule has been amended several times to extend certain dates but has retained the same basic sequence: fact discovery, then expert discovery, then *Daubert* motions, and then dispositive motions. *See* Dkt. 800. The parties are currently in the middle of the expert discovery portion of that schedule. Opening reports were served August 26, 2019; rebuttal reports (which include Authenticom's expert opinions regarding Reynolds's counterclaims) are due November 15, 2019; and any replies are due December 16, 2019. *See id. Daubert* motions are due February 28, 2020, and will be fully briefed on April 24, 2020. *See id.* Dispositive motions are due March 13, 2020; oppositions are due April 29, 2020; and replies are due May 22, 2020. *See id.* At that time — on May 22, 2020 — all *Daubert* and dispositive motions will be fully briefed and submitted to the Court for decision.

Reynolds was the proponent of this sequencing. It requested that Judge St. Eve adopt the "standard operating procedure in litigation, which is: Fact discovery; then followed by expert disclosures; then followed by *Daubert* motions; then followed by dispositive motions; and, then, a trial." Dkt. 155 at 2. Authenticom had proposed fast tracking its case because of its dire financial situation (it continues to hang by a thread), but Reynolds successfully opposed that approach. *See* Dkt. 151 at 2-4, 9; Dkt. 166.

Notwithstanding the case schedule, on October 15, 2019, Reynolds moved for partial summary judgment on two of its ten counterclaims against Authenticom — its claims under the DMCA and the WCCA. *See* Dkt. 785 at 5 & n.6. As to the DMCA, Reynolds has moved only on a portion of one theory of liability under the statute, reserving the right to raise additional factual and legal theories at a later time. Specifically, Reynolds has moved for partial summary judgment only on the basis of Section 1201(a)(1) of the DMCA, which prohibits "circumvent[ing] a technological measure that effectively controls access to a work protected under this title." *Id.* at 5. Moreover, even as to this theory of liability, Reynolds seeks summary judgment only "with respect to two access controls in particular" — CAPTCHA and Reynolds's so-called "Suspicious User ID" monitoring program — while "reserv[ing] all rights regarding other acts of circumvention and other access controls." *Id.* at 9 n.15.

CDK has also asserted nearly identical counterclaims against Authenticom, *see* Dkt. 229, as well as against the dealer class, *see* Dkt. 522, but it has not filed a motion for summary judgment regarding any of those counterclaims. However, CDK has stated that it reserves the right to participate in the briefing of Reynolds's motion because of the potential impact that motion could have on CDK's own counterclaims. *See* Hr'g Tr. 16-17.

4

**ARGUMENT**

**I.  REYNOLDS'S MOTION IS PREMATURE BECAUSE THE PARTIES HAVE NOT COMPLETED EXPERT DISCOVERY, WHICH IS RELEVANT TO REYNOLDS'S COUNTERCLAIMS**

Under Rule 56(d), the Court may deny or delay a motion for summary judgment to "allow time for further discovery" or "issue any other appropriate order." *OneBeacon Ins. Co. v. U.S. Foods, Inc.*, 304 F.R.D. 536, 539 (N.D. Ill. 2014). Rule 56(d) "is intended as a safeguard against a premature grant of summary judgment." *Id.* (quoting *King v. Cooke*, 26 F.3d 720, 726 (7th Cir. 1994)). As the Seventh Circuit has explained, "[w]hen a party is seeking discovery that is germane to the pending summary judgment motion it is inequitable to pull out the rug from under them by denying such discovery." *Smith v. OSF HealthCare Sys.*, 933 F.3d 859, 865 (7th Cir. 2019) (quoting *Wichita Falls v. Banc One*, 978 F.2d 915, 920 (5th Cir. 1992)).[2]

In this case, Authenticom is in the midst of developing expert evidence that will disprove Reynolds's counterclaims and also support Authenticom's affirmative defenses to those counterclaims.

**A.** Reynolds asserts counterclaims under Section 1201(a)(1) of the DMCA, *see* Dkt. 785 at 5 & n.6, which prohibits "circumvent[ing] a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1)(A). There are at least two factual issues presented by Reynolds's counterclaims: (1) Did Authenticom "circumvent" the purported security measures within the meaning of the DMCA?; and (2) Did those purported

---

[2] Rule 56(d) ordinarily requires an attorney declaration describing the information the party plans to seek in further discovery. *Smith v. Dominick's Finer Foods, Inc.*, 2009 WL 2358580, at *2 (N.D. Ill. July 28, 2009). Authenticom does not submit such a formal declaration because the Court stated it does not need a formal Rule 56(d) motion. Hr'g Tr. 15. If Authenticom has misunderstood the Court's direction, it requests leave to file such a declaration.

5

security measures — Reynolds's CAPTCHA and Suspicious User ID programs — "effectively control[] access" to Reynolds's asserted copyrighted works?[3]

Expert evidence will bear directly on all of those factual issues. Authenticom anticipates offering opinions by one or more experts in computer software and security, who will explain why: (1) Reynolds's CAPTCHA and Suspicious User ID monitoring programs did not "effectively control[] access" to any copyrighted work; and (2) Authenticom's conduct did not constitute "circumvention" of those security measures, even if they were effective. Given the highly technical nature of these issues, *see, e.g.*, Dkt. 785 at 9-11, 13-16, testimony by an expert with "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702(a); *see also Avaya, Inc. v. Telecom Labs, Inc.*, 2012 WL 13035096, at *12 (D.N.J. May 1, 2012) (denying summary judgment on DMCA claim that turned on a "factual determination as to the nature and use of" of the technological measure, which "can be resolved properly only by a finder of fact"); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2013 WL 4409434, at *18 (E.D.N.Y. Aug. 2, 2013) (copyright issues in computer code context require "a highly complex analysis that typically requires expert evidence"); *Dish Network, L.L.C. v. Vicxon Corp.*, 2013 WL 3894905, at *6 (S.D. Cal. July 26, 2013) (considering expert evidence in evaluating DMCA claim on summary judgment).

---

[3] The DMCA defines "to circumvent a technological measure" to mean "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). The DMCA further provides that "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* § 1201(a)(3)(B).

Indeed, Reynolds's own experts offer opinions on these very same factual issues. *See, e.g.*, Report of Scott Tenaglia at 10 (opining that "CAPTCHAs are further defenses employed by Reynolds and CDK . . . . They were also effective."); Report of Edward M. Stroz ¶¶ 30-31 (CAPTCHA and similar features "help protect the Reynolds DMS against unauthorized third-party access"). After its own expert reports are disclosed, Authenticom anticipates cross-examining Reynolds's experts to obtain admissions on the critical factual points described above. It also anticipates moving to exclude their conclusory opinions as unreliable under Rule 702 and *Daubert*. Authenticom cannot fairly be forced to respond to a summary judgment motion before it has had an opportunity to do so. That is precisely why the Court ordered — at the behest of Reynolds — that summary judgment briefing would occur after the close of expert discovery.

Reynolds's motion contends (at 1-2) that no expert evidence could be relevant to these issues, and that they can be decided as a matter of law. That is not correct. This Court cannot sensibly adjudicate Reynolds's counterclaims without understanding what Reynolds's supposed technological access measures did (and didn't) do to protect works that Reynolds claims to be protected, and what Authenticom did (and didn't) do to assist dealers in obtaining access to their own data notwithstanding those measures. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004) (party raising DMCA claim must show security measure not only controls access to copyrighted work but does so "effectively" rather than through a method that "restricts one form of access but leaves another route wide open"). The proper course is to adjudicate these issues after all the evidence — including expert evidence — is in.[4]

---

[4] On a motion to dismiss ruling, this Court previously held CDK plausibly alleged that Authenticom circumvented CDK's CAPTCHA. *See* Dkt. 506 at 16-18. It did so assuming the truth of CDK's factual allegations, including that Authenticom "cracked" and "bypass[ed]" the CAPTCHA. *See* Dkt. 229 ¶ 92 (admitting "CDK does not yet know exactly how Authenticom is

7

**B.** Authenticom also intends to introduce expert testimony to support its affirmative defenses, including that of copyright misuse. As a matter of law, if Reynolds's technological access control measures were deployed as part of anticompetitive conduct that would not only give rise to liability under the antitrust laws, but also negate any liability under the DMCA for circumventing those measures. *See, e.g., Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646-47 (7th Cir. 2003) (database manager's attempt to prevent the owner of the data stored on the database "from revealing *their own* data . . . might constitute copyright misuse") (emphasis in original); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 951 (9th Cir. 2010) (recognizing possibility that a party may use the "DMCA anti-circumvention right in a manner that violates antitrust law"); *Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1201 (Fed. Cir. 2004) (rejecting "construction of the DMCA" that would allow companies to violate the antitrust laws and the doctrine of copyright misuse); *qad., inc. v. ALN Assocs.*, 770 F. Supp. 1261, 1266 (N.D. Ill. 1991) ("No party can use the limited grant that a copyright confers to gain control of components over which it has no such right.").

Here, Authenticom has disclosed the expert testimony of Mark Israel of Compass Lexecon showing — as revealed through evidence obtained in discovery — that Reynolds and CDK colluded beginning no later than 2013 to foreclose competition in the data integration market from third party data integrators such as Authenticom. Defendants achieved those anticompetitive results, and reaped the supracompetitive profits they generated, in part through the very technological blocking measures Reynolds now accuses Authenticom of unlawfully circumventing. Reynolds (either separately or jointly with CDK) presumably will disclose a

---

circumventing the CAPTCHA"). Authenticom denies those factual allegations and is entitled to introduce expert testimony to contradict them.

8

rebuttal expert report responding to Dr. Israel, and Dr. Israel will serve a reply report. Dr. Israel's deposition is currently scheduled for January 16, 2020; because Defendants' rebuttal expert has not yet been disclosed, no deposition date has yet been set. Given that the parties are in the midst of expert discovery that bears on Authenticom's copyright misuse and other defenses, it simply makes no sense — and would be unfair to Authenticom — to require it to respond to Reynolds's partial summary judgment motion before it has had the opportunity to fully develop the expert evidence.

## II. DECIDING REYNOLDS'S PARTIAL MOTION ON A SEPARATE AND ACCELERATED TRACK WOULD UNDERMINE THE MDL PROCESS AND WASTE JUDICIAL RESOURCES

Reynolds's motion would result in a highly inefficient two-track summary judgment schedule that would undermine the goal of MDL coordination.

As the Court explained at the October 24 hearing, to "really advance[] the ball," an accelerated summary judgment motion must change "the course of this case in some material way," *i.e.*, by resolving a case in its entirety or removing a party from the MDL. Hr'g Tr. 12. Reynolds's motion would not do anything of the sort. Regardless of the outcome of the motion, Authenticom will remain a party to this MDL; neither the antitrust claims nor the remainder of Reynolds's counterclaims will be resolved. Reynolds's motion would not even resolve the DMCA counterclaim, because Reynolds apparently is holding in reserve more DMCA theories for additional summary briefing and trial. *See supra* p. 4. It would be highly inefficient to require the Court and the parties to address Reynolds's partial summary judgment motion now — in the middle of expert discovery — and then to address all of the other summary judgment issues in all of the other MDL cases next year. It makes much more sense to confront the summary judgment briefing all together so the Court only has to "push[] a giant ball up the hill" one time. Hr'g Tr. 9.

That is especially true given the overlap between Reynolds's motion and the other issues in the case. For starters, CDK has identical counterclaims under the DMCA and WCCA and has given no indication when it plans to move for summary judgment on those counterclaims. Even taking just the WCCA and DMCA counterclaims in isolation, it would be much more efficient to consider Reynolds's and CDK's motions at the same time, on the agreed-upon schedule, rather than for the Court to confront the same set of issues twice several months apart. CDK's request to participate in the briefing of Reynolds's partial summary judgment motion highlights the overlap of the issues and the inefficiency of proceeding piecemeal.

Moreover, as explained above, Reynolds's DMCA and WCCA counterclaims substantially overlap with the antitrust issues that led to the creation of this MDL. The Court need look no further than Reynolds's own motion, which states (at 3) that Authenticom's antitrust claims and Reynolds's DMCA and WCCA counterclaims "stem from the *same course of conduct on both sides*." (Emphasis added). Reynolds's use of blocking measures, including the timing and circumstances of when those measures were rolled out, bear on Authenticom's Section 1 and Section 2 antitrust claims.[5] Moreover, Reynolds's counterclaims cannot be adjudicated without

---

[5] Reynolds's counsel claimed at the October 24 hearing that its imposition of blocking measures was "unilateral" conduct not related to the antitrust issues. Hr'g Tr. 11. As Authenticom will show at summary judgment, that assertion is wrong for multiple reasons. First, Reynolds's blocking measures were part and parcel of Defendants' conspiracy (and enforcement of that conspiracy) to eliminate independent providers of data integration. *See Cox Automotive* MTD Op. 11 (Dkt. 505) ("Plaintiffs allege that Defendant conspired with Reynolds to block data integrators from accessing necessary data from the dealers by withholding authorization to access their respective DMSs *and by disabling third-party credentials*, thereby inhibiting the relationship between the data integrators and the dealers." (emphasis added)). Second, Authenticom has Section 1 exclusive dealing and Section 2 monopolization claims, in addition to state-law claims, that do not depend on any conspiracy. *See Authenticom* MTD Op. 32-49 (Dkt. 176) (upholding Authenticom's exclusive dealing and monopolization claims). Third, Authenticom will prove that the CDK-Reynolds conspiracy began in 2013; any blocking measures prior to the conspiracy are outside the DMCA's three-year statute of limitations anyway. The WCCA, meanwhile, only allows for injunctive relief. *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 2016 WL 845341, at

10

also resolving Authenticom's affirmative defense of copyright misuse, which raises the core antitrust claims in the MDL. Given that the copyright misuse defense and the antitrust claims are two sides of the same coin, adjudicating Reynolds's counterclaims in isolation is not only inefficient, but risks undermining the MDL's core objectives of consistency and coordination. *See* Hr'g Tr. 15 (the Court noting in the MDL context, "we're not driving a train from station to station, we're driving a lot of trains to a lot of stations, and we may return them to their original stations in the end").[6]

Finally, in neither the meet and confer process nor the October 24 hearing has Reynolds identified any need that would justify its proposed departure from the coordinated MDL case schedule — and all the inefficiencies that departure would entail. Reynolds is understandably eager to cast itself as a plaintiff rather than a defendant — and to shift the spotlight away from the extensive evidence of its anticompetitive conduct, which has now drawn intensifying scrutiny by the FTC.[7] But Reynolds's desire for a perceived litigation advantage is no reason to derail the

---

\*24 (W.D. Wis. Mar. 2, 2016) ("[T]he only available remedy for a violation of the WCCA is injunctive relief.").

[6] Just weeks ago, Defendants successfully sought an extension of the entire expert schedule (over Authenticom's objection) when CDK could not reach an agreement with Dealer Class counsel on the scheduling of a single expert's deposition within Defendants' preferred time range. *See* Dkt. 771. Defendants' reasoning was that it did not "make[] any sense to bifurcate expert discovery" on two separate tracks with multiple different deadlines. *Id.* at 7. That logic applies more strongly here: It makes no sense to have one schedule for Reynolds's partial motion and another schedule for the rest of the summary judgment motions, especially where the issues are inextricably intertwined.

[7] Melissa Burden, *Signs show probe of DMS giants CDK, Reynolds heating up*, Automotive News (Aug. 26, 2019), www.autonews.com/dealers/signs-show-probe-dms-giants-cdk-reynolds-heating.

unified case schedule that, as Reynolds itself has repeatedly stated, is central to an efficiently run MDL.[8]

## CONCLUSION

The Court should order that Authenticom's response to Reynolds's motion be due on April 29, 2020 — the deadline for all other summary judgment opposition briefs — or deny Reynolds's motion without prejudice to refiling in accordance with the current Case Management Order.

Dated: October 30, 2019

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Authenticom, Inc.*

---

[8] In a further effort to resolve this issue without Court intervention, Authenticom's counsel asked Reynolds's counsel for a concrete briefing schedule proposal that addresses its concerns regarding expert discovery and coordination with the rest of the MDL. On October 29, Reynolds proposed a schedule in which Authenticom's opposition would be due on December 2, and Reynolds's reply due December 30. That is a non-starter, as expert discovery will still not be completed. Moreover, Reynolds again provided no justification for departing from the current case schedule.

## **CERTIFICATE OF SERVICE**

   I, Derek T. Ho, an attorney, hereby certify that on October 30, 2019 I caused a true and correct copy of the foregoing **AUTHENTICOM, INC.'S STATEMENT REGARDING PROPOSED BRIEFING SCHEDULE FOR REYNOLDS'S MOTION FOR PARTIAL SUMMARY JUDGMENT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                 */s/ Derek T. Ho*
                 Derek T. Ho
                 **KELLOGG, HANSEN, TODD,**
                  **FIGEL & FREDERICK, P.L.L.C.**
                 1615 M Street, NW, Suite 400
                 Washington, D.C. 20036
                 (202) 326-7900
                 dho@kellogghansen.com