**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | Honorable Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |
| THE DEALERSHIP CLASS ACTION | |

**DEALERSHIP CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO BAR
PLAINTIFFS' NEW "INITIAL CONSPIRACY" THEORY**

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ......................................................................................................................... 2

    I.   The Motion is Procedurally Infirm ................................................................. 2

    II.  Dealers Have Not Asserted a New Liability Theory ........................................ 3

    III. Claims Are Often Modified Based On Information Obtained In Discovery ...................... 5

    IV. CDK Cannot Show Undue Prejudice .............................................................. 6

        A.    No Need for Additional Fact Discovery Exists ........................................ 8

        B.    No Trial has been Scheduled ............................................................... 13

        C.    Any Prejudice to CDK can be Addressed .............................................. 14

CONCLUSION ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Apple, Inc. v. Samsung Elec. Co.*,
  2012 WL 3155574 (N.D. Cal. Aug. 2, 2012) ..........................................................................4

*Ash v. Wallenmeyer*,
  879 F.2d 272 (7th Cir. 1989) ...............................................................................................5

*Barraza v. C.R. Bard Inc.*,
  322 F.R.D. 369 (D. Ariz. 2017) ..........................................................................................14

*Behrend v. Comcast Corp.*,
  626 F. Supp. 2d 495 (E.D. Pa. 2009) ....................................................................................6

*Blanchard v. Edgemark Fin. Corp.*,
  2000 WL 33223385 (N.D. Ill. May 22, 2000) .......................................................................2

*Blumenthal v. New York Life Ins. & Annuity Corp.*,
  2010 WL 11508851 (W.D. Okla. Sept. 27, 2010),
  *aff'd*, 445 F.App'x 59 (10th Cir. 2011) ................................................................................4

*Brinkley v. Monterey Fin. Servs.*,
  2018 WL 2128418 (S.D. Cal. May 9, 2018) ..........................................................................6

*Camilotes v, Resurrection HealthCare*,
  2011 WL 1539679 (N.D. Ill. Apr. 21, 2011) .........................................................................7

*Deasy v. Hill*,
  833 F.2d 38 (4th Cir. 1987) .........................................................................................2, 4, 14

*Dow Chem. Co. v. Seegott Holdings, Inc. (In re Urethane Antitrust Litig.)*,
  768 F.3d 1245 (10th Cir. 2014) ............................................................................................5

*Garner v. City of Country Club Hills, Illinois*,
  2013 WL 6730184 (N.D. Ill. Dec. 20, 2013) ........................................................................7

*Gonzalez v. Pioneer Indus. Sys., LLC*,
  2018 WL 1124419 (N.D. Ill. Mar. 1, 2018) ......................................................................7, 14

*Hawthorne v. Umpqua Bank*,
  2014 WL 295499 (N.D. Cal. Jan. 26, 2014) ..........................................................................7

*Lodsys Grp., LLC v. Brother Int'l Corp.*,
  2013 WL 5353004 (E.D. Tex. Sept. 24, 2013) ......................................................................4

*Luckett v. Conlan*,
    561 F. Supp. 2d 970 (N.D. Ill. 2008) ...................................................................7

*In re Blood Reagents Antitrust Litig.*,
    2015 WL 6123211 (E.D. Pa. Oct. 19, 2015)..........................................................6

*In re: Merck Mumps Vaccine Antitrust Litig.*,
    2018 WL 1693348 (E.D. Pa. Apr. 6, 2018) .......................................................4, 7

*In re: NASDAQ Market-Makers Antitrust Litig.*,
    1997 WL 805062 (S.D.N.Y. Dec. 31, 1997) .............................................5, 13, 14

*In re Processed Egg Products Antitrust Litig.*,
    81 F.Supp. 3d 412 (E.D. Pa. 2015) .......................................................................6

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    267 F.R.D. 583 (N.D. Cal. 2010)...........................................................................6

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Westport Ins. Corp.*,
    2012 WL 698540 (N.D. Ill. Feb. 29, 2012) ..........................................................4

*Oracle USA, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009)........................................................ 2, 4-5, 13, 14

*Paramount Media Grp, Inc. v. Village of Bellwood*,
    2015 WL 3419831 (N.D. Ill. May 28, 2015) .................................................. 14-15

*Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*,
    2009 U.S. Dist. LEXIS 28827 (C.D. Ill. Mar. 27, 2009)....................................5, 12

*Semtech Corp. v. Royal Ins. Co. of Am.*,
    2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) ..................................................13, 14

*Soltys v. Costello*, 520 F.3d 737 (7th Cir. 2008)........................................................7

*Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus.*,
    2005 U.S. Dist. LEXIS 46127 (D.S.C. May 6, 2005)........................................6, 14

*Stuart v. RadioShack Corp.*,
    2009 WL 281941 (N.D. Cal. Feb. 5, 2009) ..........................................................14

*United States ex rel. Terry v. Wasatch Advantage Grp., LLC*,
    327 F.R.D. 395 (E.D. Cal. 2018) ..........................................................................6

*United States v. Rapanos*,
    376 F.3d 629 (6th Cir. 2004), *vacated on other grounds*,
    *Rapanos v. United States*, 547 U.S. 715 (2006)............................................12, 13

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................................. 2

Fed. R. Civ. P. 37 ............................................................................................................ 2, 3

## PRELIMINARY STATEMENT

Dealership Class Plaintiffs ("Dealership Class Plaintiffs" or "Dealers") submit this opposition to CDK Global, LLC's ("CDK")[1] motion to "bar" what it calls a "new 'initial conspiracy' theory." The motion is a misnomer, as Dealers allege no new or separate conspiracy, and Dealers' economic expert, Dr. Michael Williams, ███████████████████████ ██████.[2] Indeed, ████████████████████████████████████████████ ███████████████████████████.[3]

As shown below, the motion is procedurally infirm, as CDK invokes no rule of procedure or evidence justifying relief, and Dealers advance no new theory that warrants relief. Moreover, courts have routinely permitted plaintiffs to modify the proposed class period, or to make similar changes to their claims, to reflect information obtained in discovery, often without formally seeking leave to amend their complaint. Additionally, CDK can show no undue prejudice, given the fact that it has already obtained extensive discovery about the events of and prior to 2013, and CDK has had the opportunity to respond to the Damages Start Date in expert discovery. Nonetheless, should it be necessary, remedies to account for facts learned through discovery are readily available. Accordingly, the motion should be denied.[4]

---

[1] The motion was filed by CDK and The Reynolds and Reynolds Co. ("Reynolds", and collectively, "Defendants"). Because Dealers previously settled their claims against Reynolds (*see* ECF 502), the motion is only *CDK*'s motion in reference to the Dealers' case. *See* Defendants' opening brief (ECF 775, "Defs' Br.") at 4 n.2. Throughout this brief, emphasis in quotations has been supplied.

[2] ███████████████████████████████████████████████████████████ ████████████

[3] ██████████████████████████████████████

[4] Defendants' motion is also directed to the Vendor Class and the Individual Plaintiffs in this MDL proceeding. Dealers hereby incorporate by reference the arguments raised by the Vendor Class and the Individual Plaintiffs in opposition to Defendants' motion, as if fully set forth herein.

## ARGUMENT

### I.     THE MOTION IS PROCEDURALLY INFIRM

As a threshold matter, CDK's motion should be denied on the grounds that CDK has identified no procedural basis for the motion. CDK invokes no rule of procedure, or rule of evidence, pursuant to which it seeks relief. To compound this issue, CDK's proposed relief is unclear, as there is no applicable rule of procedure or evidence that bars a party from "pursuing a theory" (Defs' Br. 18) -- whatever that means.

Additionally, CDK relies on disparate cases addressing different rules, further illustrating the lack of any clear procedural basis for CDK's motion. *See, e.g.*, *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) (Defs' Br. 11) (motion to amend under Fed. R. Civ. P. 15(a)); *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 542 (N.D. Cal. 2009) (Defs' Br. 19) (motion for sanctions under Fed. R. Civ. P. 16 and 37). Adding to the confusion, CDK argues that the Damages Start Date "theory" is somehow inconsistent with the proposed plaintiff class described in Dealers' Consolidated Class Action Complaint ("CAC" or "Complaint", ECF 184) (*see* Defs' Br. 9 n.4); however, class certification motions are governed by Rule 23 and, in any event, courts may certify a class differing from that alleged in an original complaint. *See, e.g.*, *Blanchard v. Edgemark Fin. Corp.*, 2000 WL 33223385, at *8 (N.D. Ill. May 22, 2000).

Dealers should not be required to respond to, and the Court should not be asked to rule on, a motion that is not based on any specified procedural or evidentiary rule, for which CDK has failed to identify the relevant legal standards or demonstrate that those standards have been satisfied.[5] Instead, CDK's motion should be summarily denied.

---

[5] CDK's tactics have unfairly prejudiced the Dealers, leaving guesswork for the Court and Dealers in the wake of its confusing and deficient brief. For example, had CDK filed a motion for sanctions under Rule 37(c)(1), Dealers and the Court could assess the merits of the motion based on the explicit requirements of that rule and the relevant caselaw. Any Rule 37 motion would have required CDK to conduct a pre-motion

## II.    DEALERS HAVE NOT ASSERTED A NEW LIABILITY THEORY

Contrary to CDK's argument, Dealers do not assert a new liability theory. Dealers have consistently alleged a federal antitrust conspiracy between CDK and Reynolds from the outset. Nor do Dealers assert a "new" and "separate" conspiracy. In fact, the report of Dealers' expert economist describes ███████████████████████████████████████████████████

████ Williams Report ¶¶ 162, 158 n.257. Moreover, CDK quotes out-of-context snippets from the *other* MDL plaintiffs' economist to argue that *Dealers* have asserted a new and separate "Initial Conspiracy" starting in September 2013,[6] but that argument is simply wrong. Indeed, that term is *nowhere* to be found in the Williams Report.[7]

To be sure, Dealers' Complaint alleges that CDK and Reynolds signed three agreements in February 2015. CAC ¶ 10. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████

Moreover, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

"meet and confer" with Dealers. *See* Fed. R. Civ. P. 37(d)(1)(B). CDK has not done that here. Had CDK sought an opinion addressing whether Dealers may amend their Complaint, the analysis would be different still. Even the relief sought by CDK is unclear.

[6] ███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████

[7] ████████████████████████████████████████████████████████████████
███████████████████████████████████████████ *See* Williams Report (Defs' Br. Exh. B) ¶¶ 70-81.



CDK's reliance on cases in which plaintiffs belatedly asserted new liability theories is entirely misplaced and the facts in those cases are clearly distinguishable. In *Nat'l Union Fire Ins. Co. of Pittsburgh v. Westport Ins. Corp.*, 2012 WL 698540, at *3 (N.D. Ill. Feb. 29, 2012) (Defs' Br. 20), the plaintiff sought to amend the complaint to add "numerous new allegations and an *entirely new* theory of liability into the lawsuit." In *Lodsys Grp., LLC v. Brother Int'l Corp.*, 2013 WL 5353004, at *2-4 (E.D. Tex. Sept. 24, 2013) (Defs' Br. 11), the counterclaimant originally sought declaratory relief that seven identified app developers did not infringe the patent at issue, but then belatedly sought to expand its counterclaim to cover *more than 6 million* unnamed developers -- "[a] claim . . . far outside the scope of the instant action."[9] *Id.* at *4.

---

[8] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[9] *See also In re: Merck Mumps Vaccine Antitrust Litig.*, 2018 WL 1693348, at *5 (E.D. Pa. Apr. 6, 2018) (Defs' Br. 15 n.15) (plaintiffs' "new, alternative theory of recovery" for "attempted monopolization," and the original claim for "actual monopolization," had different requirements); *Apple, Inc. v. Samsung Elec. Co.*, 2012 WL 3155574, at *3-5 (N.D. Cal. Aug. 2, 2012) (Defs' Br. 19) ("new theories" wherein party failed to amend contention interrogatory answers); *Blumenthal v. New York Life Ins. & Annuity Corp.*, 2010 WL 11508851, at *6 (W.D. Okla. Sept. 27, 2010), *aff'd*, 445 F.App'x 59 (10th Cir. 2011) (Defs' Br. 18) (plaintiff sought to add negligence claims when the time to seek to add "any negligence theories" had "long since expired"); *Deasy v. Hill*, 833 F.2d 38, 42 (4th Cir. 1987) (Defs' Br. 11) (plaintiff belatedly sought to assert "new claim," and the proof required to defend against that claim would be "of an entirely different character" than the proof required to defend against original claim); *Oracle USA, Inc. v. SAP AG*, 264

Here, by contrast, Dealers have claimed throughout the litigation that Defendants engaged in one antitrust conspiracy. There is no basis to bar them from continuing to do so.[10]

## III.  CLAIMS ARE OFTEN MODIFIED BASED ON INFORMATION OBTAINED IN DISCOVERY

Courts have routinely permitted parties to modify their claims and defenses based on information obtained in discovery, often without a formal motion to amend. *See generally Ash v. Wallenmeyer*, 879 F.2d 272, 274 (7th Cir. 1989) ("[F]ederal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process. The information is to be reflected in the framing of issues in the pretrial order, which supersedes the complaint"). *See also Peoria Day Surgery Ctr. v. OSF Healthcare Sys.*, 2009 U.S. Dist. LEXIS 28827, at *19 (C.D. Ill. Mar. 27, 2009) (an antitrust action in which the plaintiff "does not even need to amend its complaint to argue that the [relevant] geographic market is narrower [than previously alleged]. That argument is consonant with the developments in discovery (which includes expert discovery) and could be made at summary judgment even without amendment.").

For example, courts frequently permit plaintiffs to seek certification of a different class period or class definition than was alleged in the plaintiffs' complaints. *See, e.g.*, *Dow Chem. Co. v. Seegott Holdings, Inc. (In re Urethane Antitrust Litig.)*, 768 F.3d 1245, 1263 (10th Cir. 2014) (affirming denial of motion to decertify class, despite the fact that certification was based on plaintiffs' expert's use of a start date for the alleged conspiracy that was different from that alleged

---

F.R.D. 541, 544 (N.D. Cal. 2009) (Defs' Br. 19) (plaintiffs dramatically changed damages theory, seeking "major categories of lost profits from different customers and different revenue sources[.]").

[10] That CDK's financial exposure may be affected by the Damages Start Date (*see* Defs' Br. 14) is of no consequence. *See In re: NASDAQ Market-Makers Antitrust Litig.*, 1997 WL 805062, at *7 (S.D.N.Y. Dec. 31, 1997) ("no precedent is cited for the proposition that any prejudice resulting from increased liability would bar an amended complaint. The issue, rather, is legal prejudice, not the magnitude of the Defendant's potential liability.").

in the complaint).[11]

Courts have also rejected efforts to strike expert testimony that differs from the allegations of the complaint. *See In re Blood Reagents Antitrust Litig.*, 2015 WL 6123211, at *12 (E.D. Pa. Oct. 19, 2015) ("[Defendant] cites no authority for excluding an expert's damages model because he assumed a conspiracy start date that was later than that which was initially alleged in the Complaint, and the Court declines to do so."); *Behrend v. Comcast Corp.*, 626 F. Supp. 2d 495, 506 (E.D. Pa. 2009) (denying motion to strike expert declaration analyzing a different legal theory than was alleged in plaintiffs' complaint, observing that "it is not unusual for information obtained in merits discovery to enlarge the scope of a party's trial proofs", particularly where the plaintiffs had broached the issue in prior discovery). *See In re Processed Egg Products Antitrust Litig.*, 81 F.Supp. 3d 412, 424 (E.D. Pa. 2015) ("[I]it is consistent with sound economic practice [for an expert] to review the factual record and formulate a hypothesis that can then be tested using economic theory--the examination of the factual record is necessary . . . to confirm that the stories drawn from the data and from the factual record are consistent.").

## IV. CDK CANNOT SHOW UNDUE PREJUDICE

CDK's motion should be denied for the additional reason that it has failed to establish undue prejudice. Dealers submitted the Williams Report promptly following the close of fact

---

[11] *See also, e.g., United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 402 (E.D. Cal. 2018) (granting motion to amend complaint filed concurrently with motion for class certification: "[C]ourts have considered class definitions differing from those in the operative complaint and relied on amended complaints filed after a motion for class certification was filed"); *Brinkley v. Monterey Fin. Servs.*, 2018 WL 2128418, at *4-5 (S.D. Cal. May 9, 2018) (permitting amendment which expanded the proposed class period by many years, shortly before filing of motion for class certification, despite defendants' claims of undue prejudice); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590-91 (N.D. Cal. 2010) (allowing modification of class definition during class certification briefing because "the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants"). *Id.* at 591. *See also Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus.*, 2005 U.S. Dist. LEXIS 46127, at *4-5, *16-17, *23 (D.S.C. May 6, 2005) (granting motion to amend complaint, including amendment to move back the conspiracy start date by five years).

discovery, and just *four days* after the last fact deposition in this case,[12] belying CDK's charge of "delay." Defs' Br. 20. *See Garner v. City of Country Club Hills, Illinois*, 2013 WL 6730184, at *2-3 (N.D. Ill. Dec. 20, 2013) (Dow, J.) (granting motions to amend to add claim based on deposition testimony taken two months before motions were filed, even though motions were filed after discovery was closed in one of the two constituent cases and "nearly closed" in the other);[13] *Gonzalez v. Pioneer Indus. Sys., LLC*, 2018 WL 1124419, at *3 (N.D. Ill. Mar. 1, 2018) (Dow, J.) (granting motion to amend based on evidence obtained during discovery); *compare with In re: Merck Mumps*, 2018 WL 1693348, at *2,*3 (Defs' Br. 15 n.15) (plaintiffs "waited five years" after filing complaint and two years after "the receipt of materials that alerted them to a potential new cause of action, and actually seeking leave to add the new cause of action").

As shown below, CDK has demonstrated no need for additional discovery, no trial date has been set, and any alleged prejudice to CDK (there is none) can be easily addressed without "barring" Dealers from asserting the Damages Start Date. *See Hawthorne v. Umpqua Bank*, 2014 WL 295499, at *3 (N.D. Cal. Jan. 26, 2014) (granting leave to amend complaint to expand the class period, even where there was undue delay, based on the absence of undue prejudice: "Plaintiffs here do not seek to add a new legal claim or radically alter the litigation. The only effect Plaintiffs' proposed amendment would have on the case is to lengthen the class period.").[14]

---

[12] ████████████████████████████████████████████████████████
████████████

[13] *See id.* at *3 ("the case law is clear that delay alone usually is not enough to deny a motion to amend") (citing *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008)).

[14] *See also Camilotes v, Resurrection HealthCare*, 2011 WL 1539679, at *4 (N.D. Ill. Apr. 21, 2011) (permitting plaintiffs to expand class period by over one year, despite undue delay in seeking amendment: "Although the lengthier class period necessarily expands the scope of Defendants' potential liability, the amendment will not force Defendants to defend against new legal claims or re-litigate the dispute on new bases.") (citation omitted); *Luckett v. Conlan*, 561 F. Supp. 2d 970, 977 (N.D. Ill. 2008) ("Undue prejudice occurs when the amendment includes 'entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the complaint' and when additional

### A.    No Need for Additional Fact Discovery Exists

CDK argues that it would need additional fact discovery to address the Damages Start Date (Defs' Br. 17); however, the argument is unfounded because CDK already has obtained extensive discovery, including for the period substantially pre-dating 2013.[15]

In fact, 

---

discovery is expensive and time-consuming. Plaintiff's conspiracy claim is neither entirely new, separate from the claims alleged in the Complaint, nor adds new parties.") (internal citation omitted).

[15] CDK has acknowledged that one of the complaints filed in this MDL proceeding alleges a conspiracy start date of no later than 2013. *See* ECF 322 at 31-32 ("[MVSC's] Second Amended Complaint alleges that 'it is likely' that Defendants' purported conspiracy existed ***prior to 2014.***"). *See also id.* at 2 ("All MDL Plaintiffs allege the same basic conspiracy between CDK and Reynolds: an agreement between the two companies to prohibit third-party access to their respective systems outside their approved access programs and thereby eliminate competition in a purported 'data integration' market."). Thus, MVSC's complaint placed CDK on notice of the potential relevance of discovery for the period beginning in January 2013. ***Importantly, Defendants did initiate such discovery***, even noting that all MDL plaintiffs (other than MVSC) had agreed to a "baseline" discovery period starting on *January 1, 2013. Id.* at 3.

[16]

[17]

Indeed, despite CDK's claim that it now needs to obtain discovery concerning Reynolds's "unilateral" reasons for its business decisions regarding "third-party access" (Defs' Br. 17),

███████████████████████████████████████████████████████████

██████████████████████████████████

- ██████████████████████████████████████████████████
  █████████████████████████████████████████[18]

- ██████████████████████████████████████████████████
  ████████████████████████████      ████████████████████
  ██████████████████████████████████████████████████
  ████████████████████████████████████████████[19]

- ██████████████████████████████████████████████████
  ██████████████████████████████████████████████████
  ██████████████████████████████████████████████████
  ████████████████████████████[20]

Defendants also questioned Dealership Class Plaintiffs about events during and prior to 2013 and 2014. █████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████  █████  ██████████  ██████████  ████  ██████████  ████████████  ████  ███████

███████████████████████████████████████████████████████████

_____

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

[18] ██████████████████████████████████████████████████████

[19] ███████████████████████████████████████████████████████

[20] ████████████████████████████████████████████

9

██████████████████████████████████████████████████████

█████████████████████████[21]

███████████ a Rule 30(b)(6) witness for the ████████████ Dealership Class

Plaintiffs, was questioned by CDK about ███████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ ██████[22]

Defendants also extensively interrogated ██████████ about the period of and prior to

2013 and 2014, ████████████████████████████████ ████████████████

███████████████████████████████████[24] ███████████████████████

████████████████[25] ██████████████████████[26] █████████████

████████████████████[27] ███████████████████████████████████

███████████████████[28] ████████████████████████████████████

██████████████████████████████[29]

Similar questions were posed to witnesses for other application providers, including █

██████████████████████████████████████████████████████

---

[21] █████████████████████████████████████████████████

[22] ████████████████████████████████████████████████████
███████

[23] ████████████████████████████████████████████████████
█████

[24] ██████████████████████████████

[25] ████████████████████████████████

[26] ████████████████████████████████████████████████████

[27] ███████████████████████████████████████████

[28] ████████████████████

[29] █████████████████████████████



███████████████████████████████████,[30] and ████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████[31]

Dealership ███████ also were questioned by Defendants about 2013 and prior. ████

████████████████████████████████████████████████

████████████████████████████;[32] ████████████████████

███████████████████████████████████████████████[33]

██████████████████████████████████████[34] Another

████████████████████████████████████████████████

████████████████████████████████████ ███████████

████████████████████████████████████████████████

█████████████████████████";[36]

Even CDK's ████████████████ submitted in support of its counterclaims against

various Dealers, addressed events during and before 2013, including ███████████

████████████████████;[37] (

████████████████;[38] █████████████████████████████

────────────────────

[30] █████████████████████████████████████████████

[31] ██████████████████████████████████████████████

[32] ███████████████████████████████████████

[33] ██████████

[34] ███████████

[35] ██████████████████████████████████

[36] ███████████████████████████████████

[37] ████████████████████████████████████████████████

[38] ██████████

11



CDK argues that "the evidence *makes clear* that Reynolds and CDK engaged in *unilateral conduct* separated in time[.]" Defs' Br. 3.[48] That statement, however, belies CDK's contention that additional discovery is necessary. In short, CDK already has the discovery it claims to need. *See Peoria Day Surgery Ctr.*, 2009 U.S. Dist. LEXIS 28827, at *12 (motion to amend granted where "[defendant's] arguments demonstrate that it already has the evidence it needs to defend against the claims.").

Moreover, evidence of the Damages Start Date comes from Defendants' own files and their own witnesses' testimony, further negating a need for additional discovery. *See United States v. Rapanos*, 376 F.3d 629, 644 (6th Cir. 2004) (affirming denial of motion to strike plaintiff expert's reliance on supplemental report that was disclosed after start of trial where, *inter alia*, "[t]he data used in the supplemental report and maps was known to Defendants, as it was produced by their



[48] Dealers, of course, dispute CDK's interpretation of the evidence.

experts.");[49] *compare with Oracle*, 264 F.R.D. at 548 ("[T]his is not a situation where Plaintiffs were unable to develop their full damages theories until later in the case after they received discovery from Defendants or third parties. To the contrary, the record here shows that Plaintiffs, and not Defendants, possessed the necessary information even before filing the complaint . . . .").

Finally, CDK has failed to submit a declaration by its expert (or its counsel) establishing a need for additional fact discovery. That omission is especially significant given that CDK filed this motion *before* both (i) the November 8, 2019 deposition of Dr. Williams; and (ii) the November 15, 2019 due date for submission of its expert rebuttal reports. *Compare with Oracle*, 264 F.R.D. at 554-55 (defendants' expert submitted declaration stating analysis of the "new categories" of the damage claim would require an additional year of expert discovery and cost at least $5 million more in expert fees and costs; the expert also specified categories of additional documents needed, and the court stated that production of such documents "would require dozens of additional depositions."). Accordingly, CDK has shown no basis for additional fact discovery.

### B. No Trial has been Scheduled

The fact that no trial date exists for the Dealership Class Action[50] also militates against the motion. *See Semtech Corp. v. Royal Ins. Co. of Am.*, 2005 WL 6192906, at *3 (C.D. Cal. Sept. 8, 2005) (denying motion to exclude supplemental expert report where, *inter alia*, trial was more than one month away, and defendant "has over 'a month before trial and thus ha[s] ample time to prepare effective cross examination and consider possible witnesses to counter' [the plaintiff's expert's] opinions"); *In re: NASDAQ*, 1997 WL 805062, at *7 (permitting amendment of antitrust complaint to extend end date of alleged conspiracy where, *inter alia*, "no trial date has been set");

---

[49] *Vacated on other grounds*, *Rapanos v. United States*, 547 U.S. 715 (2006).

[50] It is anticipated that a trial in this action will occur after the trial in the Authenticom case. Even that trial has not been scheduled. And, given that briefing on any dispositive motions is not scheduled to conclude until May 2020 (*see* ECF 800), there likely will be no trial in this action for at least a year.

*Gonzalez*, 2018 WL 1124419, at *3 (granting motion to amend, noting that "Defendant will still be able to move for summary judgment pursuant to Rule 56 on any of Plaintiffs' claims.").[51] CDK's cases do not suggest a contrary result. *See Deasy*, 833 F.2d at 41 (Defs' Br. 11) (motion to amend "came right before trial"); *Oracle*, 264 F.R.D. at 554 (Defs' Br. 19) (new theory would require discovery that would "almost certainly derail the trial schedule.").

Moreover, opening summary judgment motion papers are not due until mid-March 2020 (*see* ECF 800), and the class certification motion has not been scheduled, further demonstrating the absence of undue prejudice to CDK.

### C. Any Prejudice to CDK can be Addressed

Assuming, *arguendo,* that CDK could show *any* prejudice (it cannot), remedies far short of barring Dealers from using the Damages Start Date are readily available. After CDK filed this motion, ███████████████████████████████████████████████████████████

███[52] Thus, CDK had the opportunity to assess ██████████████████████████

████████████████ before CDK's own expert rebuttal reports are due November 15, 2019 (*see* ECF 800). *See Semtech,* 2005 WL 6192906, at *3 (denying motion to exclude expert report where exclusion is an "extreme" remedy and "[a]ny potential harm resulting from admission of the report can be cured by allowing [defendant] to depose [plaintiff's expert] and allowing [defendant] time to rebut the report.").[53] *Compare with Paramount Media Grp, Inc. v. Village of Bellwood*, 2015

---

[51] *See also Stuart v. RadioShack Corp.*, 2009 WL 281941, at *2-3 (N.D. Cal. Feb. 5, 2009) (granting motion to amend complaint "to broaden the scope of the class" where trial was scheduled to begin in five months, and any new discovery "would not necessarily disrupt the current trial schedule . . . ."); *In re: NASDAQ*, 1997 WL 805062, at *7 (permitting amendment of antitrust complaint to extend end date of alleged conspiracy where, *inter alia*, "no trial date has been set.").

[52] ████████████████████████████████████████████████████████████

[53] *See also Barraza v. C.R. Bard Inc.*, 322 F.R.D. 369, 392 (D. Ariz. 2017) (permitting plaintiffs to seek new remedy where "Plaintiffs did disclose their proposed new remedy in expert reports months ago, Defendants' experts were able to respond to the new remedy, and the experts were deposed on the new remedy."); *Spartanburg*, 2005 U.S. Dist. LEXIS 46127, at *24 (permitting amendment that would start an

WL 3419831, at *1 (N.D. Ill. May 28, 2015) (Defs' Br. 4) (barring "bombshell" claim -- which increased damages more than eight-fold -- disclosed "just a few days" before close of expert discovery).

## CONCLUSION

For the foregoing reasons, CDK's motion should be denied in its entirety.


DATED:  November 12, 2019                    Respectfully submitted,


                                             /s/ Peggy J. Wedgworth
                                             Peggy J. Wedgworth (*pro hac vice*)
                                             Elizabeth McKenna (*pro hac vice*)
                                             **MILBERG PHILLIPS GROSSMAN LLP**
                                             One Pennsylvania Plaza, Suite 1920
                                             New York, New York 10119-0165
                                             Tel: (212) 594-5300
                                             Fax: (212) 868-1229
                                             pwedgworth@milberg.com
                                             emckenna@milberg.com

                                             *Interim Lead Counsel for the Dealership Class*

                                             Leonard A. Bellavia (*pro hac vice*)
                                             **BELLAVIA BLATT, PC**
                                             200 Old Country Road, Suite 400
                                             Mineola, New York 11501
                                             Tel: (516) 873-3000
                                             Fax: (516) 873-9032
                                             lbellavia@dealerlaw.com

                                             *Dealership Class Plaintiffs' Steering Committee*

---

earlier class period: "A hearing on the class certification issue has not been held, and if supplemental briefing on the motion for class certification is necessary and requested by the parties, the court will allow such supplementation.").

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, Illinois 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
**CLFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com

*MDL Liaison Counsel*

16

**<u>CERTIFICATE OF SERVICE</u>**

I, Peggy J. Wedgworth, an attorney, hereby certify that on November 12, 2019, I caused a true and correct copy of the foregoing DEALERSHIP CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO BAR PLAINTIFFS' NEW "INITIAL CONSPIRACY" THEORY to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth