**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION

This Document Relates To:

*Motor Vehicle Software Corporation v. CDK Global, LLC et al.*, Case No. 1:18-CV-00865 (N.D. Ill.)

MDL No. 2817
Case No. 18-cv-00864

Hon. Robert M. Dow, Jr.
Magistrate Judge Jeffrey T. Gilbert

**PUBLIC-REDACTED**

**PLAINTIFF MVSC'S OPPOSITION TO DEFENDANT REYNOLDS'S MOTION TO BAR**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 4

I. MVSC's Second Amended Complaint Specifically Alleges That MVSC Was Harmed in Its Efforts to Expand Into the Virginia and Wisconsin EVR Markets ........ 4

II. The Parties Confirmed in Discovery That MVSC's Harm in the Virginia and Wisconsin Markets Was Alleged in MVSC's Complaint and Is Relevant to Its Claims ........ 5

ARGUMENT ........ 9

I. Under Well-Settled Pleading Rules, MVSC Provided More than Sufficient Notice of Its Virginia and Wisconsin Lost Profits Damages ........ 9

II. Even Assuming Lack of "Specific" Notice regarding MVSC's Virginia and Wisconsin Damages, Defendants Have Suffered No Prejudice as a Result ........ 13

CONCLUSION ........ 15

## INTRODUCTION

Defendant The Reynolds and Reynolds Company's ("Reynolds") Motion to Bar Motor Vehicle Software Corporation's ("MVSC") Virginia and Wisconsin Damages turns on a false premise: that MVSC did not plead or give notice that it was damaged in the Virginia and Wisconsin electronic vehicle registration and titling ("EVR") markets. But from the very outset of this litigation – *including in the Complaint* – MVSC expressly alleged that it was harmed in its efforts to expand into the Virginia and Wisconsin EVR markets by Defendants' alleged conspiracy to block MVSC from accessing dealer data on the Reynolds and CDK Global, LLC ("CDK") DMSs. Specifically, MVSC's Complaint alleges that the conspiracy was designed to "block MVSC from effectively competing with CVR" – Computerized Vehicle Registration, Inc., the wholly owned joint venture of CDK (80%) and Reynolds (20%) that competes with MVSC – "in markets that MVSC may enter in the future." Ex. 1, Second Am. Compl. ¶ 107, *MVSC v. CDK Global, Inc.*, No. 17-cv-896 (C.D. Cal.), Dkt. 76 ("SAC" or "Complaint"). Under the bolded heading, "Other State EVR Markets," MVSC identified Virginia and Wisconsin as two such markets:

> **MVSC plans to enter other EVR markets, including Wisconsin and Virginia. But so long as CDK and Reynolds deny MVSC access to the dealer data stored in their DMS platforms, it will be very difficult, if not impossible, for MVSC to compete in those markets**.

*Id.* ¶ 86 (emphasis added). Since filing the Complaint, MVSC has entered the Virginia EVR market with minimal success and has tried (but failed) to enter the Wisconsin EVR market.

Discovery has proved the truth of MVSC's allegations regarding the CDK and Reynolds group boycott of MVSC. [redacted]



[redacted] This is direct evidence of Defendants' group boycott of MVSC. Why would CDK and Reynolds risk the antitrust liability of such blatantly illegal collusion and memorialize it in written communications? *See Verizon Commc'ns v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 408 (2004) ("the supreme evil of antitrust: collusion"). [redacted] That is, the group boycott allowed CDK and Reynolds to disadvantage MVSC in order to benefit CVR, their highly profitable joint venture.

But now, in this motion, Reynolds seeks to bar MVSC from claiming damages that its conspiracy with CDK caused in the Virginia and Wisconsin markets. Reynolds says (at 1) that these "markets were previously unalleged." But as quoted above, the Complaint *on its face* alleges that MVSC was harmed in the "Wisconsin and Virginia" markets. And there is more: *Defendants acknowledged in discovery correspondence that the Virginia and Wisconsin markets were specifically alleged in the Complaint and as a result agreed to produce documents regarding them.* With respect to a compromise on the scope of CVR's document production, Defendants CDK and CVR wrote: "You accepted our proposal to limit the production to responsive documents . . . for California, Illinois, **Virginia, and Wisconsin** . . . **As noted, according to MVSC's Second Amended Complaint, those are the only states in which MVSC allegedly operates or is**

**working to gain approval to operate** . . ." Ex. 3 (Nov. 30, 2018 Letter from J. Glickstein (CDK/CVR) to M. Nemelka (MVSC)). Pursuant to such discovery discussions, Defendants *and* MVSC produced documents regarding Virginia and Wisconsin, and Defendants asked numerous questions at depositions regarding the same. Reynolds omitted these facts from its motion.

Moreover, even if MVSC had not included specific allegations regarding the Virginia and Wisconsin EVR markets in its Complaint, and even if MVSC and Defendants had not specifically agreed in discovery that the Virginia and Wisconsin markets were germane to MVSC's claims, and even if Defendants had not sought and received discovery regarding Virginia and Wisconsin, Reynolds's motion would still lack any basis, since damages from those markets are not new claims at all. The *conspiracy* between CDK and Reynolds is the claim; the scope of MVSC's damages, on the other hand, is a determination that is always a matter for expert analysis and disclosures in antitrust cases. *See, e.g., ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 299 (3d Cir. 2012) ("Expert testimony is necessary to establish damages in an antitrust case."). And parties need only allege harm generally under the federal rules for notice pleading. *See, e.g.*, *My Canary LLC v. Susieair, LLC*, 2017 WL 622235, at *6 (N.D. Ill. Feb. 15, 2017).

In short, Reynolds's motion is frivolous. MVSC asked Reynolds to withdraw its motion, both to spare MVSC the expense of this motion practice and the Court the use of scarce judicial resources in having to rule on it. Reynolds refused.[1] Therefore, MVSC respectfully requests that the Court deny the motion to bar and, pursuant to Rule 11, award MVSC its costs and expenses in litigating this wholly unfounded motion. *See Antonic Rigging & Erecting of Minn., Inc. v. MDCON, Inc.*, 1990 WL 139079, at *3 (N.D. Ill. Sept. 19, 1990) (awarding party costs and attorneys' fees for opposing party's filing of frivolous motion).

[1] *See* Ex. 4 (Nov. 9, 2019 Email from L. Caseria (Reynolds) to M. Nemelka).

## BACKGROUND

### I. MVSC's Second Amended Complaint Specifically Alleges That MVSC Was Harmed in Its Efforts to Expand Into the Virginia and Wisconsin EVR Markets

MVSC provides electronic vehicle registration and titling services. CVR, a joint venture wholly owned by CDK and Reynolds, is MVSC's primary competitor in most of the state markets in which it currently operates – namely California, Illinois, and Virginia – as well as many state markets in which MVSC has attempted to enter, including Wisconsin. *See* SAC ¶¶ 8, 86; Ex. 5 (J. Nemelka Tr. 63:6-8) (naming states in which MVSC currently operates).

On November 2, 2017, MVSC filed a Second Amended Complaint against Defendants.[2] *See id.* As relevant here, MVSC alleged that, in violation of Section 1 of the Sherman Act, CDK and Reynolds conspired to block MVSC's access to dealer data through their respective data integration programs – CDK's 3PA and Reynolds's RCI – as well as through other means, such as by blocking independent third-party integration. *See generally* SAC.

As the Complaint explains, the purpose of the conspiracy was three-fold: "(1) protect CVR's monopoly in the Illinois EVR market; (2) empower CVR to regain its monopoly position in the California EVR market; and (3) block MVSC from effectively competing with CVR in markets that MVSC may enter in the future." *Id.* ¶ 107. On the third point, Defendants viewed MVSC's efforts to expand beyond California as a serious threat to CVR's national dominance. *See id.* ¶ 54; *id.* ¶ 63 (discussing MVSC's intent to "expand[] to other EVR markets"); *id.* ¶ 107.[3]

---

[2] After reaching a settlement with CDK, MVSC voluntarily dismissed its claims against CDK and CVR on October 15, 2019. *See* Stipulation of Dismissal (Dkt. 778).

[3] The evidence Defendants have provided during discovery supports MVSC's allegations – indeed, it proves them. [redacted]

MVSC's Complaint also contains a number of allegations regarding the significant harm that it has suffered as a result of Defendants' unlawful conduct. As a general matter, MVSC alleged that Defendants' conspiracy "caused [it] to suffer millions of dollars in damages." *Id.* ¶ 15; *see also id.* ¶ 194. And MVSC asserted that this harm presented itself, in part, in California and Illinois. But it *also* alleged that Defendants' conspiracy impeded its ability to expand to other state markets, including, specifically, Virginia and Wisconsin. In particular, MVSC alleged that "CVR maintains a monopoly or dominant position in many other state EVR markets" and that MVSC has attempted "to enter other EVR markets, **including Wisconsin and Virginia**," but that it will be "**very difficult, if not impossible for MVSC**" to do so, so long as "**CDK and Reynolds deny MVSC access to the dealer data**." *Id.* ¶ 86 (emphasis added).

## II. The Parties Confirmed in Discovery That MVSC's Harm in the Virginia and Wisconsin Markets Was Alleged in MVSC's Complaint and Is Relevant to Its Claims

At each stage of discovery, Defendants recognized – and MVSC confirmed – that the harm suffered by MVSC in the Virginia and Wisconsin EVR markets was a part of MVSC's claims.

**RFPs.** Defendants propounded discovery requests regarding the Virginia and Wisconsin EVR markets. In their first set of requests for production, Defendants – *including Reynolds* – requested that MVSC produce documents relating to any EVR market in which MVSC operated or may operate, which, as the Complaint expressly alleged, includes Virginia and Wisconsin. *See* Ex. 9, Defs.' RFP to MVSC, No. 13 (requesting documents showing "when MVSC entered or exited any EVR market in any state"); *id.* No. 14 (seeking "any . . . discussion of whether to enter or exit . . . any EVR market"); *id.* No. 30 (requesting "documents . . . relating to efforts [] to acquire

[redacted]

CVR's EVR customers in any state"). Subject to standard objections, MVSC agreed to produce documents in response to all of these requests. *See* Ex. 10 (MVSC's Responses & Objections).

Similarly, MVSC sought discovery from Defendants regarding its attempted expansion into Virginia and Wisconsin, and Defendants agreed to produce responsive documents. *See, e.g.*, Ex. 11 (Pls.' RFP to CDK, No. 32) (seeking documents related to "MVSC's expansion or potential expansion into states beyond California"); Ex. 12 (Pls.' RFP to Reynolds, No. 27) (same); Ex. 13 (CDK's Responses & Objections, No. 32) (subject to standard objections, agreeing to produce documents); Ex. 14 (Reynolds's Responses & Objections, No. 27) (subject to agreement on reasonable search terms, agreeing to produce responsive documents).

In negotiations regarding MVSC's requests for production to CVR, which took place between November and December 2018 (six months prior to the close of fact discovery), CDK and CVR engaged in numerous meet-and-confers with MVSC over the geographic scope of certain requests. MVSC made clear repeatedly over the course of these negotiations that, at minimum, the California, Illinois, Virginia, and Wisconsin markets were relevant to its claims. *E.g.*, Ex. 15 (Nov. 1, 2018 Letter from M. Nemelka to M. Provance (CDK/CVR)) (reiterating that "[a]s we explained during our meet and confer, other markets [besides California and Illinois] are relevant to MVSC's claims . . . especially those markets" in which Defendants' conduct "impeded MVSC's attempted entry," and specifically requesting documents related to the "California, Illinois, Wisconsin, and Virginia markets"). And counsel for CDK and CVR acknowledged the same. *See supra* pp. 2-3; *see*, *e.g.*, Ex. 16 (Nov. 12, 2018 Letter from M. Provance to M. Nemelka). A summary of that correspondence is attached hereto as Appendix A. Importantly, counsel for Reynolds participated in the meet and confers and was copied on all correspondence between MVSC and CDK/CVR without stating any objection or disagreement.

**Interrogatories.** Defendants – *including Reynolds* – propounded interrogatories seeking information regarding MVSC's damages in any EVR market, not just California and Illinois, specifically asking: "If you contend that any conduct by Reynolds or CDK that forms the basis of any of your causes of action harmed competition in any market, please explain the basis for your contention, separately for each relevant market you contend was so harmed." Ex. 17 (MVSC's Am. Objections & Responses to Defs.' Interrogs., No. 27). MVSC referred Defendants to its pleadings – including the Complaint in which MVSC specifically included Virginia and Wisconsin – and further responded "that the expert reports on behalf of Plaintiffs in this MDL will also provide the requested information." *Id.*; *see also id.* Nos. 35, 37. Defendants did not object to these responses, nor did they move to compel MVSC to provide more specific information regarding damages tied to any specific state EVR market prior to the submission of expert reports.

**Depositions.** Defendants issued a Rule 30(b)(6) Deposition Notice to MVSC, including the following topics pertinent to MVSC's expansion efforts and claimed damages: (i) "MVSC's plans for expansion to provide EVR services in additional states, including the reasons for the expansion and any perceived or actual advantages or disadvantages or obstacles to the expansion"; and (ii) "[t]he nature and scope of any injury, harm or damage suffered by MVSC for which you are seeking recovery." Ex. 18 (Defs.' Rule 30(b)(6) Notice to MVSC, Topic Nos. 14 & 16). During the deposition itself, which occurred nearly two months prior to the close of fact discovery, *counsel for Reynolds* questioned the designated Rule 30(b)(6) deponent, MVSC's CEO Don Armstrong, extensively regarding MVSC's damages. In the course of that questioning, Mr. Armstrong emphasized that MVSC's harm included damages suffered in markets beyond California and Illinois, expressly identifying Virginia and Wisconsin. [redacted]



[redacted][4] Thus, in corporate testimony attributable to MVSC, counsel for Reynolds *sought* and *received* testimony about how Defendants had harmed MVSC's expansion efforts in Virginia and Wisconsin. Not once after the MVSC 30(b)(6) deposition did Reynolds complain that the corporate witness had testified about state EVR markets outside of MVSC's claims, nor did Reynolds ever state that it needed additional testimony about MVSC's harm in Virginia and Wisconsin.

**Expert Report of Dr. Gordon Klein.** On August 26, 2019, MVSC timely produced the expert report of Dr. Gordon Klein. *See* Ex. 20 (G. Klein Expert Damages Report). Consistent with MVSC's Complaint, the discovery that Defendants sought and received, and MVSC's

---

[4] [redacted]

repeated representations, Dr. Klein modeled MVSC's claimed damages in the California, Illinois, Wisconsin, and Virginia EVR markets. *See generally id.* ¶¶ 18-24, 42-67, 97-131.

## ARGUMENT

### I. Under Well-Settled Pleading Rules, MVSC Provided More than Sufficient Notice of Its Virginia and Wisconsin Lost Profits Damages

**1.** To provide adequate notice to the defendant, a complaint need only include "a short and plain statement" showing that the claimant is entitled to relief, Fed. R. Civ. P. 8(a)(2), and contain "enough details about the subject-matter of the case to present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). There is no requirement that a plaintiff spell out its legal or damages theories. *E.g.*, *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) ("Having informed the city of the *factual* basis for their complaint, they were required to do no more . . . ."); *Vidimos Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996) ("The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories.").

Moreover, courts have repeatedly held (with exceptions not at issue here) that plaintiffs need not enumerate their categories of damages in their pleadings. *See, e.g.*, *My Canary*, 2017 WL 622235, at *6 ("[A] plaintiff is not required to itemize his damages claims in his complaint."); *Everco Indus., Inc. v. O.E.M. Prods. Co.*, 63 F.R.D. 662, 665-66 (N.D. Ill. 1974) ("It is well settled under the Federal Rules . . . and its liberal rules of pleading that a plaintiff or counter-plaintiff is not required to allege in unusual detail and particularity the damages allegedly suffered.").

MVSC's Complaint does much more than what Rule 8 requires, and alleges that (i) one purpose of Defendants' conspiracy was to impede MVSC's national expansion efforts, and that (ii) MVSC was harmed within the markets in which it operated – California and Illinois – as well as the markets that it was attempting to enter – including, specifically, Virginia and Wisconsin. *See, e.g.*, SAC ¶¶ 86, 107.

Moreover, during discovery, Defendants propounded document requests, served Interrogatories, conducted depositions, and confirmed in written correspondence that the Virginia and Wisconsin EVR markets were properly part of MVSC's claims. *See supra* pp. 5-8. When MVSC asked Reynolds to withdraw its motion given these dispositive facts, Reynolds's only retort was that the "discovery correspondence [was] exchanged between MVSC and CVR." Ex. 4. But that is no response to the fact that Reynolds sought and received discovery – through RFPs, Interrogatories, and depositions – regarding the Virginia and Wisconsin markets. And in any event, the response is facetious at best. Reynolds is a part owner of CVR. Counsel for Reynolds was on the meet and confers. It was copied on the correspondence. Never once did it state that it disagreed with CDK/CVR's acknowledgment of MVSC's pleaded harm in Virginia and Wisconsin. And throughout discovery Defendants worked as one, as correspondence from *Reynolds's own counsel* makes clear.[5]

**2.** Despite the Complaint's clear allegations, the discovery record, and Defendants' own statements, Reynolds nevertheless contends (at 6-10) that MVSC's claimed damages in Wisconsin and Virginia constitute a belated or "de facto" request to amend its Complaint. Reynolds relies principally on the standards governing late amendments to pleadings articulated in *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852 (7th Cir. 2017), *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420 (7th Cir. 1993), and *Johnson v. Methodist Med. Ctr. of Illinois*, 10 F.3d 1300, 1304 (7th Cir. 1993). These cases, however, stand for the unremarkable proposition that

[5] *See, e.g.*, Ex. 21 (July 18, 2019 Letter from L. Caseria (Reynolds) to M. Nemelka) ("I write this letter on behalf of Defendants Reynolds, CDK and CVR regarding MVSC's responses and objections . . ."); Ex. 22 (Nov. 7, 2018 Letter from R. MacDonald (Reynolds) to M. Nemelka ("writ[ing] on behalf of Defendants" regarding MVSC discovery); Ex. 23 (Dec. 28, 2018 Letter from L. Caseria to M. Nemelka) ("I write this letter on behalf of defendants" regarding same).

when a party seeks to add an *entirely new claim* or *entirely new factual basis* for an existing claim at a late stage, the party must demonstrate lack of prejudice to the opposing party.[6]

But that is not what happened here. MVSC is not asserting any new claim against Reynolds: the claim remains that Reynolds and CDK conspired to block MVSC from accessing necessary dealer data on their respective DMSs to the benefit of CVR. And MVSC is not proffering new factual bases for its damages, either: it still contends – as it did in its Complaint – that it suffered lost profits in the state markets in which it operates or has attempted to enter. *See* SAC ¶¶ 86, 107. Defendants acknowledged all this in discovery, both by seeking and producing discovery on the topic, and in express statements in correspondence. *See supra* pp. 5-8. Simply put, Dr. Klein's expert analysis regarding MVSC's damages in the Virginia and Wisconsin markets is consistent with MVSC's Complaint and the discovery record. *See Whitaker v. Milwaukee Cty., Wisconsin*, 772 F.3d 802, 808-09 (7th Cir. 2014) (district court erred in barring plaintiff from asserting a "joint employer" theory for first time at summary judgment because the theory was supported by her complaint's factual allegations); *Vidimos*, 99 F.3d at 222 (permitting plaintiff to argue that defendant was liable under promissory estoppel for the first time at summary judgment because plaintiff's "complaint fairly breathes promissory estoppel . . . although it [did] not mention the term" and the defendant "should not have been surprised to find the claim asserted explicitly").[7]

---

[6] *See Chessie Logistics*, 867 F.3d at 860 (noting that "when a new argument is made in summary judgment briefing" that "*changes the complaint's factual theory*, . . . the plaintiff may be attempting in effect to amend its complaint, and the district court has discretion to deny the *de facto* amendment" if it would be prejudicial to a defendant) (emphasis added); *Chaveriat*, 11 F.3d at 1430 ("[I]f the plaintiff in the course of pretrial discovery *comes up with a new claim*, he will have to get his complaint amended if the pleadings and the proof are to be conforming.") (emphasis added); *Johnson*, 10 F.3d at 1304 (denying plaintiff's proposed amendment, which added claims against entirely new defendants).

[7] The other cases upon which Reynolds relies (at 6, 9-10) are similarly inapposite, because they all involve circumstances in which a plaintiff attempts to add a new cause of action or assert an entirely new factual basis for an alleged harm when *no* alleged facts in the operative complaint

Reynolds spills a lot of ink (at 3-4, 6-7) emphasizing the Complaint's paragraphs that describe Defendants' misconduct in California and Illinois as a way to argue that MVSC's claims are "specific" to those markets. This tack is deeply flawed. For one, MVSC asserts a group boycott claim that is not market-specific. *See, e.g.*, SAC ¶¶ 100-148. And the paragraph describing its damages with respect to that claim is not market-specific: "As a direct and proximate result of Defendants' unlawful conduct, MVSC has suffered injury to its business or property." *Id.* ¶ 215. For another, just because the California and Illinois markets figured more prominently in MVSC's allegations does not mean other markets are irrelevant, especially given the Complaint's specific allegations explaining that Defendants' conduct impeded MVSC's expansion efforts, specifically with respect to Virginia and Wisconsin. *See id.* ¶¶ 54, 63, 86, 107.[8] To the

support that claim, or when the party made repeated, inconsistent representations throughout discovery. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 851 (7th Cir. 2015) (rejecting plaintiff's late attempt to amend complaint because "*nowhere in [his] complaint* are there facts to put [the defendant] on notice that [plaintiff] was alleging failure to accommodate") (emphasis added); *Deasy v. Hill*, 833 F.2d 38, 40-41 (4th Cir. 1987) (rejecting attempt by plaintiff to add new legal claim of negligence when "complaint made *no mention*" of the underlying facts) (emphasis added); *Paramount Media Grp., Inc. v. Vill. of Bellwood*, 2015 WL 3419831, at *1-3 (N.D. Ill. May 28, 2015) (rejecting asserted damages based on inability to construct "digital" billboard display when complaint included only allegations related to "static" billboard display); *Phoenix Techs. Ltd. v. VMware, Inc.*, 2017 WL 1957042, at *6-7 (N.D. Cal. May 11, 2017) (excluding damages based on "new theory of infringement" when complaint asserted only four other, separate theories of infringement and nothing else put defendant on notice); *Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*, 2011 WL 4375264, at *4-5 (E.D. Cal. Sept. 19, 2011) (precluding damages theory where there was no disclosure despite defendant's "diligent requests for such information"); *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 542-43 (N.D. Cal. 2009) (precluding plaintiff from additional categories of lost profits damages when, after two years and "repeated discovery conferences and hearings, Plaintiffs [] limited their lost profits damages" and "focus[ed]" exclusively on one particular category). Those circumstances do not apply here.

[8] Through discovery, the importance of California and Illinois to the genesis of Defendants' conspiracy has become even more apparent. [redacted]

extent that Reynolds insists that the Complaint must contain differently styled or more numerous facts regarding harm in Virginia and Wisconsin, the law does not support such a position. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' ") (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).

Finally, Reynolds deflects (at 9-10) by pointing to MVSC's interrogatory responses and disclosures, both of which describe MVSC's harm broadly without identifying any specific state market. Reynolds claims that, because of these general statements of harm, it had no notice of MVSC's Virginia and Wisconsin damages. But Reynolds had notice from the Complaint and numerous discovery letters that Virginia and Wisconsin were relevant to MVSC's claims. (That must be why Reynolds itself sought discovery regarding those markets and inquired about them at depositions.) Moreover, if MVSC's responses were too general (or otherwise objectionable), it could have (i) requested more specific disclosures or responses, and, if that failed, (ii) filed a motion to compel. Instead, Reynolds now seeks the drastic remedy of barring significant categories of MVSC's damages. This Court should reject such a maneuver. *Cf. Malik v. Falcon Holdings, LLC*, 675 F.3d 646, 649-50 (7th Cir. 2012) (refusing to affirm summary judgment for defendant on grounds that plaintiff failed to timely quantify its damages in disclosures prior to close of discovery because that remedy would be highly disproportionate to the asserted wrong).

## II. Even Assuming Lack of "Specific" Notice regarding MVSC's Virginia and Wisconsin Damages, Defendants Have Suffered No Prejudice as a Result

Even if Reynolds were entitled to more "specific" notice of MVSC's damages in Virginia and Wisconsin – and it is not – Reynolds has suffered no prejudice.

---

[redacted]

*First*, Reynolds already sought – and MVSC agreed to produce – documentary evidence regarding MVSC's efforts to enter new state markets. *See* Ex. 8 (Defs.' RFP to MVSC, Nos. 13, 14, and 40). Even Reynolds (at 10-11) reluctantly acknowledges this point.

*Second*, MVSC already produced responsive documents from the President of MVSC who oversaw and was involved in all of its state expansion efforts, including in Virginia and Wisconsin. *See* Ex. 5 (J. Nemelka Tr. 20:6-11). Reynolds's argument (at 11) that it would have sought and successfully obtained two additional document custodians – MVSC's regional managers for Virginia and Wisconsin – is dubious at best. As the person in charge of MVSC's businesses in Virginia and Wisconsin, MVSC's President would have the most extensive knowledge regarding MVSC's operations in those states – not the regional managers acting under his direction.[9]

Reynolds also makes passing reference (at 11 & n.6) to the parties' agreement to add Jamison Kingfield (MVSC's regional manager for Illinois) as a seventh document custodian. Reynolds contends that, because it successfully obtained Mr. Kingfield as a custodian, it would have been able to obtain other state regional managers as custodians as well. This argument assumes too much. MVSC strongly disputed the necessity of adding Mr. Kingfield as a custodian, but agreed to do so only as a good faith compromise in the context of negotiations over a range of issues. *See* Ex. 26 (Jan. 4, 2019 Letter from C. Bonomo (MVSC) to L. Caseria). Relatedly, Reynolds suggests that, when MVSC limited the production from Mr. Kingfield's files to those documents concerning Illinois, it somehow tacitly acknowledged that Virginia and Wisconsin

[9] Reynolds includes (at 12-13) an irrelevant aside regarding information it has obtained from the Wisconsin government about MVSC's application to participate in Wisconsin's EVR program. It suggests that MVSC withheld production of these documents, but MVSC did no such thing: to the extent responsive documents hit on search terms, MVSC produced them. Further, to the extent Reynolds is making an argument on the merits regarding MVSC's damages in Wisconsin, such an argument is the proper subject of a rebuttal damages report and summary judgment, not a premature motion to bar damages prior to the close of expert discovery.

were irrelevant to MVSC's claims. But Reynolds itself requested Mr. Kingfield's documents precisely because of his role in Illinois. *See id*. That MVSC limited its response to reflect Reynolds's stated needs says nothing about whether other markets are relevant.

*Third*, Reynolds already deposed MVSC's Rule 30(b)(6) witness (CEO Don Armstrong) regarding the harm MVSC suffered in its attempted expansion into Virginia and Wisconsin. During that deposition, Mr. Armstrong was more than forthcoming about MVSC's asserted damages, describing specifically MVSC's harm in Virginia and Wisconsin. Reynolds never objected to the corporate testimony regarding MVSC's damages as incomplete or insufficient.

**CONCLUSION**

For the foregoing reasons, Reynolds's Motion should not only be denied, but MVSC should be awarded its costs and expenses in responding to this frivolous motion. MVSC asked Reynolds to withdraw it to save party and judicial resources, but Reynolds refused. The motion is wholly unfounded: MVSC pleaded facts specific to Virginia and Wisconsin; Defendants sought discovery specific to Virginia and Wisconsin; and Reynolds's co-Defendants, CDK and CVR, acknowledged in writing that harm in the Virginia and Wisconsin markets was alleged in MVSC's Complaint. It has been wasteful and expensive to respond to Reynolds's motion, especially at a time when the parties are preparing rebuttal expert reports due in three days. The Court should award MVSC its costs and expenses pursuant to Rule 11. *See Antonic Rigging*, 1990 WL 139079, at *3 (awarding party costs and attorneys' fees for the resources expended opposing a frivolous motion).

Dated: November 12, 2019

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I, Derek T. Ho, an attorney, hereby certify that on November 12, 2019 I caused a true and correct copy of the foregoing **PLAINTIFF MVSC'S OPPOSITION TO DEFENDANT REYNOLDS'S MOTION TO BAR** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Derek T. Ho*

Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

**Appendix A**

| **Date** | **Correspondence** | **Discussion of Relevant Markets** |
|---|---|---|
| 11/1/18 | Letter from M. Nemelka (MVSC) to M. Provance (CDK/CVR) (attached hereto as Ex. 15) | "CVR has agreed to produce documents in response to RFPs 36-43 and 45, but only with respect to the California and Illinois markets. As we explained during our meet and confer, **other markets are relevant to MVSC's claims in this case, especially those markets in which MVSC has competed or currently competes with CVR (e.g., Virginia), or those markets in which Defendants' (including CVR's) anticompetitive conduct has impeded MVSC's attempted entry**. . . .RFP 37 (documents sufficient to show CVR's EVR customers, the EVR products and services they purchased from CVR, and the associated prices, costs, and other terms): We ask that you produce these documents with respect to the **California, Illinois, Wisconsin, and Virginia markets**." (emphasis added). |
| 11/12/18 | Letter from M. Provance (CDK/CVR) to M. Nemelka (MVSC) (attached hereto as Ex. 16) | "Nevertheless, in an effort to reach a compromise on this issue, **we are willing to produce non-privileged responsive documents for the Wisconsin and Virginia markets**, in which CVR operates and MVSC (according to **paragraph 86 of the operative complaint**) is allegedly working to gain approval." (emphasis added). |
| 11/20/18 | Letter from M. Nemelka (MVSC) to M. Provance (CDK/CVR) (attached hereto as Ex. 27) | "With respect to Requests 36-43 and 45, thank you for your offer to produce documents for the **Wisconsin and Virginia markets in addition to the Illinois and California markets**." (emphasis added). |
| 11/30/18 | Letter from J. Glickstein (CDK/CVR) to M. Nemelka (MVSC) (attached hereto as Ex. 3) | "Market-Based Limitations: You accepted our proposal to limit the production to responsive documents . . . for **California, Illinois, Virginia, and Wisconsin** for Requests 37-40 but rejected our proposal as to the same states for Requests 36, 41-43, and 45 . . . . As noted, **according to MVSC's Second Amended Complaint**, those are the only states in which MVSC allegedly operates or is working to gain approval to operate." (emphasis added). |
| 12/7/18 | Letter from C. Bonomo (MVSC) to J. Glickstein (CDK/CVR) (attached hereto as Ex. 28) | "**As we have stated on our meet and confers, state markets beyond California, Illinois, Virginia, and Wisconsin are relevant to this case if Defendants' conduct impeded MVSC's ability to enter those markets.** In the spirit of compromise, however, we accept your second proposal. The parties are now in agreement that CVR will produce documents in response to Requests 45 and 57 without market-based limitations, and that **CVR will produce documents in response to Requests 36-43 for the California, Illinois, Virginia, and Wisconsin markets**." (emphasis added). |