# Exhibit 12

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

IN RE: DEALER MANAGEMENT                     MDL No. 2817
SYSTEMS ANTITRUST LITIGATION                 Case No. 18 C 864

This Document Relates to All Cases           Hon. Amy J. St. Eve

**INDIVIDUAL PLAINTIFFS' FIRST SET OF REQUESTS FOR THE PRODUCTION
OF DOCUMENTS FOR THE REYNOLDS AND REYNOLDS COMPANY**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs

Motor Vehicle Software Corporation, Authenticom, Inc., Cox Automotive, Inc.,

Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley

Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., Xtime, and Loop, LLC ("Individual

Plaintiffs") hereby request The Reynolds and Reynolds Company ("Reynolds") produce

all documents in its actual or constructive possession, custody, or control related directly

or indirectly to any of the matters described below. All documents and tangible things

responsive hereto should be produced for inspection as soon as practicable and in no

event later than the date provided for in the Case Management Order. Production shall be

made at the offices of KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.,

1615 M Street, N.W., Suite 400, Washington, D.C. 20036, or as otherwise agreed to by

the parties.

## **DEFINITIONS**

For purposes of these requests the following definitions shall apply:

1.      "Add-on application" means a software application that dealers use in addition to or separate from their Dealer Management System ("DMS") software in the course of operating their dealerships.

2.      "All" shall be construed as all and any, and the term "any" shall be construed as all and any.

3.      "Authenticom" shall mean a Plaintiff in this MDL and a provider of data integration services in the automotive industry based in La Crosse, Wisconsin.  "Authenticom" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

4.      "AutoLoop" shall mean Loop, LLC and its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

5.      "Cox Automotive" shall mean Cox Automotive, Inc., Autotrader.com, Inc., Dealer Dot Com, Inc., Dealertrack, Inc., HomeNet, Inc., Kelley Blue Book Co., Inc., vAuto, Inc., VinSolutions, Inc., and Xtime, Inc. (collectively, "Cox Automotive") and their present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

6.      "MVSC" shall mean Motor Vehicle Software Corporation and its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

7.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be construed to be outside of its scope.

8.     "CDK" shall mean CDK Global, LLC, as described in Paragraph 4 of Defendants' Combined Statement of Additional Facts Requiring Denial of Preliminary Injunctive Relief (hereinafter, "SoAF"), *Authenticom* Dkt. No. 87 (June 16, 2017).  "CDK" shall include the dealer services business of Automatic Data Processing, Inc. ("ADP") prior to September 30, 2014, as described in Paragraph 5 of the SoAF.  "CDK" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

9.     "Communication" or "Communications" shall mean any exchange or transfer of information, whether electronic, written, oral, or in any other form.  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

10.     "Data integrators" shall refer to service providers that provide access by any means to dealer data on the DMS database, whether by extracting the data, writing data back into the DMS, or both.  For the avoidance of doubt, "data integrators" includes CDK (through its 3PA program) and Reynolds (through its RCI program).

11.     "DMI" shall mean Digital Motorworks, Inc., as described in Paragraph 215 of the SoAF.  "DMI" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

12.     "Document" and "Documents" are used in the broadest extent permitted by Federal Rule of Civil Procedure 34(a).

13.     "IntegraLink" shall mean IntegraLink, as described in Paragraph 215 of the SoAF.  "IntegraLink" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

14.     "Including" (in addition to its usual meanings) shall mean including but not limited to.

15.     The terms "relating to," "related to," "referring to," "regarding," or "with respect to" shall mean, without limitation, the following concepts: concerning, discussing, describing, reflecting, dealing with, pertaining to, analyzing, evaluating, estimating, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

16.     "Reynolds" shall mean "The Reynolds & Reynolds Company," as described in Paragraphs 1-3 of the SoAF.  "Reynolds" shall include its present or former predecessors, subsidiaries, divisions, departments, operating units, directors, officers, managers, employees, attorneys, and accountants.

17.     "Vendors" or "application providers" shall mean vendors who provide software applications that perform operations functions for dealerships, as described in Paragraph 20 of the SoAF.

18.     "You," "Your," or "Your company" shall mean the responding Defendant, its present or former predecessors, subsidiaries, departments, divisions, joint ventures, and affiliates, including without limitation, any organization or entity that the responding Defendant manages

or controls, together with all present and former directors, officers, employees, agents, representatives, or any persons acting or purporting to act on behalf of the responding Defendant.

## INSTRUCTIONS

1.    In producing documents and other materials, You must furnish all documents in Your possession, custody, or control, regardless of whether such documents or materials are possessed directly by You, Your employees or former employees, agents or former agents, parents, subsidiaries, affiliates, investigators, or by Your attorneys or their employees, agents, vendors, or investigators.

2.    All documents shall be produced in the same order as they are kept or maintained by You in the ordinary course of Your business.  All documents shall be produced in the file folder, envelope, or other container in which the documents are kept or maintained.

3.    Documents attached to one another should not be separated.  If any portion of any document is responsive to any portion of the document requests below, then the entire document must be produced.

4.    Documents shall be produced in such fashion as to identify the natural person in whose possession they were found (i.e., the document custodian).

5.    If any document responsive to any of these requests is privileged, and the document or any portion of the document requested is withheld based on a claim of privilege, provide a statement of the claim of privilege and all facts relied upon in support of that claim, including the following information:

      a.    the exact basis for withholding the document;
      b.    the date of such communication;
      c.    the medium of such communication;
      d.    the general subject matter of such communication (such description shall
           not be considered a waiver of Your claimed privilege);

     e.      the identity of any document that was the subject of such communication and the present location of any such document;

     f.      the identity of all persons involved in such communication; and

     g.     the identity of any document which records, refers, or relates to such communication and the present location of any such document.

6.     Each document requested herein should be produced in its entirety and without deletion, redaction, or excision, except as permitted by a recognized privilege, regardless of whether You consider the entire document or only part of it to be relevant or responsive to these document requests.  If You have redacted any portion of a document on the ground of privilege, stamp the word "REDACTED" beside the redacted information on each page of the document You have redacted.

7.     Each request for documents seeks production of all documents described along with any attachments, drafts, and non-identical copies in any language whatsoever, in the possession, custody, or control of You or Your respective agents or attorneys.  You are specifically instructed to review any storage and archive facilities and the personal files, records, notes, correspondence, daily calendars, telephone logs, and records of all persons who would likely have responsive documents.

## **REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

**REQUEST NO. 1.**    The executed versions of every RCI contract with a vendor.

**REQUEST NO. 2.**    All documents and communications regarding Reynolds' RCI Agreements with (a) Cox Automotive and (b) AutoLoop.

**REQUEST NO. 3.**    All documents and communications regarding the RCI fees to be charged to (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**REQUEST NO. 4.**    All documents and communications regarding access to dealer data on a Reynolds DMS through the RCI program by (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**REQUEST NO. 5.**    All documents and communications regarding whether data received by a (a) Cox Automotive or (b) AutoLoop application from a Reynolds DMS may be shared with another application run by (a) Cox Automotive or (b) AutoLoop.

**REQUEST NO. 6.**    All documents and communications regarding any instance in which a vendor received equal or better pricing than Cox Automotive for data integration under the RCI program from 2015 to the present.

**REQUEST NO. 7.**    All communications with and documents regarding the RCI pricing committee.

**REQUEST NO. 8.**    All documents and communications regarding any DMS access restrictions, to which Reynolds' add-on applications are not subject, that Reynolds places on third-party add-on applications.

**REQUEST NO. 9.**    All documents and communications regarding allowing applications to create or modify "repair orders."

**REQUEST NO. 10.**   All documents and communications regarding allowing applications to finalize purchasing and leasing transactions.

**REQUEST NO. 11.**   All documents and communications regarding any category restrictions in place at any time with respect to data integration.

**REQUEST NO. 12.**   All documents and communications relating to any "CVR Category" for data access by electronic vehicle registration and titling vendors.

7

**REQUEST NO. 13.**   All documents and communications relating to any "Closed Category" for data access by electronic vehicle registration and titling vendors.

**REQUEST NO. 14.**   All documents and communications concerning the process of transitioning dealers from Reynolds' DMS to Dealertrack's DMS.

**REQUEST NO. 15.**   All documents and communications regarding impeding, blocking, or in any way making it difficult for a dealer to switch from Reynolds' DMS to a competing DMS, including Dealertrack's DMS.  For the avoidance of doubt, this Request includes all communications and documents regarding a dealer's ability to transfer the dealer's data stored on the Reynolds DMS to a competing DMS.

**REQUEST NO. 16.**   All documents and communications regarding "push" notifications for RCI or similar functionality provided to Reynolds' own add-on applications.

**REQUEST NO. 17.**   All documents regarding functionality, data access, or level of data integration provided to one vendor but not offered to a competing vendor or vendors.

**REQUEST NO. 18.**   All documents and communications regarding any purported burden placed on a Reynolds DMS by the applications of (a) Cox Automotive or (b) AutoLoop.

**REQUEST NO. 19.**   All documents and communications regarding the response time for RCI interfaces from the time they are requested by a vendor until the time they are actually activated.

**REQUEST NO. 20.**   All documents and communications regarding Dealertrack Registration & Titling's access to dealer data on a Reynolds DMS.

**REQUEST NO. 21.**   All documents and communications regarding Dealertrack Registration and Titling's participating in the RCI program.

**REQUEST NO. 22.**   All documents and communications regarding AutoLoop's application to join the RCI program.

**REQUEST NO. 23.**   All documents and communications regarding Reynolds' certification of AutoLoop's products for the RCI program.

**REQUEST NO. 24.**   All communications – and all documents regarding those communications – between Reynolds and dealers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**REQUEST NO. 25.**   All documents relating to the threat to Your DMS business posed by add-on applications, such as those provided by Cox Automotive.

**REQUEST NO. 26.**   All documents and communications between Reynolds and OEMs or car manufacturers regarding (a) Cox Automotive, (b) AutoLoop, and (c) MVSC.

**REQUEST NO. 27.**   All communications, and documents related to those communications, between CVR and Reynolds concerning MVSC, including but not limited to: (1) MVSC's access to dealer data stored on the Reynolds DMS; (2) MVSC's presence and market share in California, Illinois, or any other state EVR market; (3) MVSC's expansion or potential expansion into states beyond California; (4) any competitive threat or perceived competitive threat posed by MVSC to CVR; and (5) specific dealers served by either CVR or MVSC.

**REQUEST NO. 28.**   All communications, and documents related to those communications, between CDK and Reynolds concerning or relating to MVSC.

**REQUEST NO. 29.**   All documents and communications related to MVSC's attempts or applications to join Your data integration program, including but not limited to internal communications regarding whether to permit MVSC to participate in Your data integration

program; internal communications regarding any competitive threat that permitting MVSC to join Your data integration program might pose to CVR; and the terms and pricing offered to MVSC.

**REQUEST NO. 30.**  All documents and communications related to any other application or attempt by any EVR provider, other than MVSC, to join Your data integration program, including the terms and pricing offered to any such EVR vendor.

**REQUEST NO. 31.**  All documents and communications regarding any EVR provider currently participating in Your data integration program, including when they started participating; the pricing they pay for participation; their applications to participate in the program; Your internal considerations regarding their applications; the data elements they receive and /or have access to; and the state EVR markets in which they participate.

**REQUEST NO. 32.**  All communications, and documents related to those communications, between You and Your dealer customers regarding MVSC, including but not limited to communications between You and Your dealer customers concerning (1) the way in which MVSC accesses dealer data; (2) MVSC's attempts to join the RCI program and/or RCI certification status; and (3) MVSC's security and data practices.

**REQUEST NO. 33.**  All communications and documents concerning or mentioning any MVSC executive, including but not limited to Don Armstrong, Kelly Kimball, Joseph Nemelka, and John Brueggeman.

**REQUEST NO. 34.**  All communications and documents concerning any efforts by You to block or impede MVSC's access to data for a dealer using Your DMS platform.

**REQUEST NO. 35.**  All communications and documents concerning MVSC's use of independent integrators, including but not limited to Authenticom, SIS, and ProQuotes, to access data for a dealer using Your DMS platform.

**REQUEST NO. 36.**  All communications and documents concerning the importance of having real time or bi-directional data integration in order to provide EVR services in Illinois, California, or any other state EVR market.

**REQUEST NO. 37.**  Documents sufficient to show CVR's market share and customer base in every state in which it operates, from 2011 to present.

**REQUEST NO. 38.**  All documents and communications concerning CVR's customer base and market share in California and Illinois, from 2011 to present.

**REQUEST NO. 39.**  All documents and communications concerning any market analysis or competitive analysis of the EVR markets in California and Illinois.

**REQUEST NO. 40.**  All documents and communications concerning CVR's operational costs, revenues, profitability, and financial projections and forecasts, from 2011 to present.

**REQUEST NO. 41.**  All documents and communications concerning deficiencies or perceived deficiencies in CVR's product and service level.  For the avoidance of doubt, this Request includes not only internal documents and communications but also communications with third parties (including CVR's dealer customers) regarding deficiencies or perceived deficiencies in CVR's product and service level.

**REQUEST NO. 42.**  All documents and communications concerning the product quality or perceived product quality of CVR's competitors, including but not limited to MVSC.

**REQUEST NO. 43.** All documents and communications regarding any delays or backlogs by CVR in processing vehicle registrations and titles, including but not limited to any such delays or backlogs in California.

**REQUEST NO. 44.** All documents and communications concerning any advantage or perceived advantage CVR has over its competitors because of CVR's ability to access dealer data stored on the CDK and Reynolds DMSs.

**REQUEST NO. 45.** Documents sufficient to show CVR's ownership structure, including documents sufficient to show how CVR's revenues and profits are divided between CDK and Reynolds.

**REQUEST NO. 46.** All documents and communications relating to Reynolds' ownership interest in CVR, including when that interest was acquired; why Reynolds acquired that interest; from whom Reynolds acquired that interest; how much Reynolds paid for that ownership interest; and what Reynolds' rights are with respect to its ownership interest.

**REQUEST NO. 47.** All documents and communications relating to the financial benefits received by Reynolds and CDK relating to their ownership interest in CVR, including any allocated profits or other financial benefit, from 2011 to the present.

**REQUEST NO. 48.** The operative CVR ownership agreement between CDK and Reynolds.

**REQUEST NO. 49.** All iterations of CVR's organizational chart from 2011 to the present.

**REQUEST NO. 50.** All documents concerning CDK's involvement in the operation of CVR, including but not limited to CDK' involvement in CVR's management, budget and capital

investments, hiring, firing, personnel decisions, salary and bonus allotments, strategic priorities, sales and marketing efforts, and other daily business activities.

**REQUEST NO. 51.**   All documents and communications between anyone at CVR, on the one hand, and anyone at Reynolds, on the other.

**REQUEST NO. 52.**   All communications between CDK and Reynolds regarding CVR.

**REQUEST NO. 53.**   All documents and communications relating to CVR's acquisition of AVRS, including the strategic and financial considerations in CVR's acquisition of AVRS.

**REQUEST NO. 54.**   All documents and communications regarding instances in which CVR or AVRS uses or used independent integrators for access to dealer data on the Reynolds DMS.

**REQUEST NO. 55.**   All documents and communications regarding any instance in which an add-on application owned (or partly owned) by CDK or Reynolds uses or used independent integrators for access to dealer data on a DMS platform, whether CDK's, Reynolds', or any other DMS platform.

**REQUEST NO. 56.**   All documents relating to CVR's Board of Directors or any equivalent governing body for CVR.  This Request has no date limitation.  This Request includes, but is not limited to:

      **a.**     All documents relating to the composition of CVR's Board of Directors;

      **b.**     Identification of every member of CVR's Board of Directors through time;

      **c.**     All materials presented to CVR's Board of Directors;

      **d.**     All materials considered by CVR's Board of Directors;

      **e.**     All minutes of meetings of CVR's Board of Directors; and

      **f.**     All communications between or among CVR's Board of Directors.

**REQUEST NO. 57.**   All communications between You and any customer or former customer of Authenticom regarding data integration services or data access, including Team Velocity, Automotive Masterminds, or any other vendor customer of Authenticom.

**REQUEST NO. 58.**   All communications between You and any dealer customer or former dealer customer of Authenticom regarding data integration services or data access.

**REQUEST NO. 59.**   All documents concerning Your evaluation of the market for data access / integration services, including what companies compete with You for provision of data access / data integration services.

**REQUEST NO. 60.**   All documents concerning Your cost of capital, cost of equity, cost of debt, and/or weighted average cost of capital, including any documents upon which any of the foregoing are based.

**REQUEST NO. 61.**   All documents concerning the economic value of data or data access to dealers, vendors, or DMS providers, including any economic value placed by You on Your ability to deny, restrict, or in any way control access to data on your DMS platform.

**REQUEST NO. 62.**   All communications between CDK and any potential acquirer or acquirers, including The Carlyle Group, Silver Lake, Vista Equity Partners, Bain Capital, Thoma Bravo, and Advent International (or any person acting on behalf of the foregoing), regarding the valuation of CDK, its subsidiaries, or any aspect of their business.

**REQUEST NO. 63.**   All documents regarding CDK's Fortellis Automotive Exchange, including all communications with dealers (including AutoNation, Lithia, Berkshire Automotive, Group One, and the Larry Miller Group) and vendors; historical data or projections regarding the costs of research and development, pricing, subscriptions, revenues, and profits.

**REQUEST NO. 64.** All projections, forecasts, or other financial analyses regarding CDK's 3PA, OEM DCS, and/or DMI data services programs.

**REQUEST NO. 65.** All documents concerning the following conferences and/or meetings from 2009 to the present: the National Automobile Dealers Association Show; the Digital Dealer Conference & Expo; or any other industry conference. For the avoidance of doubt, this request includes all documents concerning: the identity of any of Your employees that attended the conference and/or meeting; any booth or other exhibition space obtained by You; and the exhibitor list and/or floor plan for any such show.

**REQUEST NO. 66.** All telephone records – whether landline or cell phone – reflecting calls made or received by any Reynolds employee and any employee of CDK from 2014 to the present.

**REQUEST NO. 67.** All telephone records – whether landline or cell phone – for Your document custodians from 2014 to the present.

**REQUEST NO. 68.** All documents concerning any training provided by You to Your employees regarding antitrust or competition laws.

**REQUEST NO. 69.** All documents concerning CDK's Secure the DMS initiative.

**REQUEST NO. 70.** All Secure the DMS Dashboard Reports (*see*, *e.g.*, CDK-0841086, at 87), including all data used to prepare such reports.

**REQUEST NO. 71.** All documents regarding access by ReverseRisk to CDK's DMS platform.

**REQUEST NO. 72.** All documents concerning "hostile integration" or use of non-authorized usernames or passwords to extract data from the CDK or Reynolds platforms.

15

**REQUEST NO. 73.**  Documents sufficient to show Reynolds' revenue, profit (including profit margins), and costs for providing data integration services, on a monthly basis, from January 1, 2009 to the present.

**REQUEST NO. 74.**  Documents sufficient to show transactional sales data (including sales, profit, and cost data) on a per-customer and per-transaction basis for data integration services from January 1, 2009 to the present.  For the avoidance of doubt, this request includes, without limitation, the following data linked to each data integration service transaction:

     **a.**     Date and location of transaction;

     **b.**     Data integration service customer;

     **c.**     Specific data integration service purchased;

     **d.**     Information tied to the specific data integration service purchased, including the unit price, unit cost, quantity, and applicable discounts;

     **e.**     Reynolds salesperson and applicable commission;

     **f.**     Order number and other identifying order information; and

     **g.**     Any documents necessary to interpret the contents of these data fields, including abbreviation keys and explanations.

**REQUEST NO. 75.**  All reports and analyses pertaining to Reynolds' marketing and sales of data integration services from January 1, 2009 to the present.  For the avoidance of doubt, this request includes, without limitation:

     **a.**     Sales reports;

     **b.**     Sales representative performance reports;

     **c.**     Marketing plans;

     **d.**     Marketing reports, including sales promotions and discounts;

     **e.**       Strategic plans, including pricing strategy;

     **f.**       Cost accounting reports;

     **g.**       General ledger reports;

     **h.**       Charts of accounts;

     **i.**       Analyses of competitive position, including market share;

     **j.**       Profit and loss reports.

**REQUEST NO. 76.**  Documents sufficient to show Reynolds' projections with respect to costs for providing data integration services from January 1, 2009 to the present.

**REQUEST NO. 77.**  All documents and communications concerning Reynolds' projections with respect to its data integration services from January 1, 2009 to the present.  For the avoidance of doubt, this request includes, without limitation, documents and communications relating to estimates, forecasts, and budgets for revenue, profit, and costs associated with Reynolds' provision of data integration services.

**REQUEST NO. 78.**  All documents and communications concerning Reynolds' internal valuations of its data integration service business, separate and apart from its DMS business, from January 1, 2009 to the present.

**REQUEST NO. 79.**  All documents and communications concerning Reynolds' internal valuations of its DMS business, separate and apart from its data integration services, from January 1, 2009 to the present.

**REQUEST NO. 80.**  All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to data integration services.

**REQUEST NO. 81.**  All documents and communications from January 1, 2009 to the present concerning industry publications or industry reports with respect to DMS services.

**REQUEST NO. 82.**  All documents and communications Reynolds relied upon from January 1, 2009 to the present in creating projections, estimates, forecasts, and budgets for revenue, profit, and costs associated with Reynolds' provision of data integration services.

**REQUEST NO. 83.**  Documents sufficient to show the number of connections Reynolds has established between a vendor and a dealer's data for purposes of transmitting dealer data to the vendor, broken down by customer, specific service, and date, from January 1, 2009 to the present.

**REQUEST NO. 84.**  Reynolds' "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers that Reynolds has lost every year since January 1, 2009, including the reasons the customer switched from a Reynolds data integration service to a non-Reynolds data integration service and the identity of the data integration service to whom the customer switched.

**REQUEST NO. 85.**  Reynolds' "win/loss" reports, communications, analyses, or any other documents sufficient to show the data integration customers that Reynolds has won every year since January 1, 2009, including the reasons the customer switched to a Reynolds data integration service and the identity of the data integration service from whom the customer switched.

**REQUEST NO. 86.**  All documents and communications regarding the length of time to complete a request to receive data from or send data to a Reynolds DMS through the RCI program.

18

**REQUEST NO. 87.**   All documents and communications regarding making "push" functionality available for the RCI program.

**REQUEST NO. 88.**   All documents and communications regarding how frequently vendors are allowed to pull, poll, or transfer data from the Reynolds DMS.

**REQUEST NO. 89.**   All documents and communications regarding how Reynolds determined what kinds of data, information, or technical specifications to require vendors to provide as part of the RCI certification process, including "workflow" models, live demonstrations of the add-on applications, justifications for how add-on applications use each data element, and the add-on application's security features.

**REQUEST NO. 90.**   All documents and communications regarding any Reynolds policies or guidelines designed to prevent competitively sensitive information submitted by vendors seeking RCI certification from being shared with Reynolds' sales teams, add-on application development teams, or any other components of Reynolds other than those with direct responsibility for engineering the integration of the vendors' add-on applications with the Reynolds DMS.

**REQUEST NO. 91.**   All documents and communications regarding information, data, or technical specifications shared by vendors with Reynolds as part of the RCI certification process used by Reynolds for any purpose other than engineering the integration of the vendors' add-on applications with the Reynolds DMS, including, for example, development of applications by Reynolds.

**REQUEST NO. 92.**   All pictures of the cake from the party for the one-year anniversary of the 2015 agreements between CDK the Reynolds.

Dated:  May 25, 2018

Respectfully submitted,

*/s/ Derek T. Ho*

Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com

*Attorneys for Individual Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 25, 2018, I caused a true and correct copy of the foregoing

Individual Plaintiffs' First Set of Requests for the Production of Documents for Defendant The

Reynolds and Reynolds Company to be served by email upon the following recipients:

CDK-MDL-Team@mayerbrown.com;

reynoldsteam@gibbsbruns.com;

reynolds-smrh-pldg@sheppardmullin.com;

KStetsko@perkinscoie.com;

CTeichner@perkinscoie.com

*/s/ Derek T. Ho*
Derek T. Ho