# Exhibit 16

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

**Matthew D. Provance**
Direct Tel +1 312 701 8598
Direct Fax +1 312 706 9397
mprovance@mayerbrown.com

November 12, 2018

**By E-Mail**

Michael Nemelka
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 60036

Re:     *In re Dealer Management Systems Antitrust Litig.*,
         MDL No. 2817, Case No. 18-CV-864 (N.D. Ill.)

Dear Mike:

I write in response to our October 29 meet-and-confer regarding CVR's responses to MVSC's document requests and your November 1, 2018 letter regarding that issue and CVR custodians.

**CVR Custodians**

We continue to believe that the addition of Jim Negrette and John Roeder to the list of custodians, over and above the six custodians that CVR has already agreed to add, is unwarranted. As explained in our October 26 letter on custodians, it is excessive and not proportional to the needs of the case to require CVR to designate more than six custodians, particularly given the size of CVR, the number of custodians that Plaintiffs have designated from comparable and/or larger parties, and because (as you do not dispute) it is likely that relevant custodial documents from the individuals you seek will be found within the files of other custodians. Based on your November 1 letter, you appear willing to accept only the deletion of Rick Francis (for whom no documents or data are available) from the proposed custodian list. Respectfully, we do not believe that is a reasonable compromise offer.

**CVR's RFP Responses**

**A.      Responsive Time Period**

CVR is willing to agree to parity in terms of the time period used for document collection. Given our understanding that MVSC has agree to produce relevant documents from January 1, 2013 onward, we agree that CVR will also use a January 1, 2013 start date for its production.

**B.      Specific Requests**

Based on our meet and confer and your November 1 letter, we believe the parties are in agreement that disputes over many Requests can be tabled and wrapped into our negotiations over custodians and search terms. For the avoidance of doubt, however, we will address each

730453704

Mayer Brown LLP

Mike Nemelka
November 12, 2018
Page 2

disputed Request below. All of the proposals below are subject to a global resolution of CVR-related document requests, search terms, and custodians.

*Requests 1 & 2 (communications between CVR custodians and CDK/Reynolds) and Requests 10 & 11 (access by CVR to data on CDK's and Reynolds's DMSs):* We agree that disputes over these Requests may be resolved through the application of reasonable search terms to agreed-upon custodian files. We note, however, these Requests are extraordinarily broad, and to the extent they appear to seek relevant documents, they duplicate many of your other Requests. You stated during our call that you would let us know if these Requests sought any unique categories of documents not covered by other, more specific Requests. Your November 1 letter does not identify any such categories.

*Requests 6 (how CVR obtains data) and Request 13 (CVR's access to a dealer's general ledger):* Based on our discussions, we understand these Requests do not encompass routine back-and-forth communications and exchanges of data between CVR and dealers or between CVR and CDK and Reynolds. With that understanding, we agree that disputes over these Requests may be resolved through the application of reasonable search terms to agreed-upon custodian files.

*Requests 17-23 (access to DMS data by, prices charged to, or participation by "any EVR provider" in the 3PA and RCI programs):* These Requests seek documents and communications about "any EVR provider" or "any other EVR provider" which we understand to mean EVR providers other than CVR (and MVSC, where indicated). Some of the Requests use the phrase any EVR provider "specifically, generally, or otherwise," which we do not understand to be a material distinction. With those understandings, we agree that disputes over these Requests may be resolved through the application of reasonable search terms to agreed-upon custodian files.

*Request 25 (checks, wires, or money transfers from CVR to CDK):* As we explained on our call, CVR objects to producing individual checks, wires, and money transfers, which is overbroad, unduly burdensome, and not proportionate to the needs of the case. In the alternative, we propose limiting this Request to documents sufficient to show the manner in which CDK is paid and the amounts that it has been paid by CVR for CVR's access to data maintained on CDK's DMS during the relevant time period. Please let us know if this compromise is acceptable or if you have a different proposal in mind.

*Request 30 (prices and fees charged to dealerships for EVR services) and Request 31 (fees CVR remits to state regulators):* As discussed on our call, we believe that these Requests are appropriately addressed by a production of summary-level or "structured" data from enterprise systems that CVR maintains in the ordinary course of business, and we disagree that a Request for "all" documents and communications "concerning" prices and fees is appropriate. However, as a compromise, subject to appropriate search terms and custodians, CVR is also willing to produce non-privileged documents that specifically discuss the prices and fees CVR charges to dealerships or the fees CVR remits to state regulators. Please let us know if this compromise is acceptable or if you have a different proposal in mind.

Mayer Brown LLP

Mike Nemelka
November 12, 2018
Page 3

*Request 32 (documents discussing regulatory or statutory limits on EVR fees):* On our call, you explained that documents sought by this Request were relevant to the extent they showed that CVR was "strategizing" or attempting to make up for supposed limits on profitability due to regulatory limits on fees. We still do not see how such documents would be relevant. However, subject to appropriate custodians and search terms, CVR is willing to produce non-privileged documents (if any exist) that discuss the impact of regulatory or statutory limits on CVR's profitability, pricing, revenue, etc. Please let us know if this compromise is acceptable or if you have a different proposal in mind.

*Request 33 (documents/communications with regulators, including documents discussing CVR's capital, pricing, and liquidity, and the quality and nature of CVR's services):* As discussed on our call, and consistent with the position we have taken on similar Requests directed at CDK, we disagree that the valuation of CVR is a relevant issue in the case, including discussions of valuation (if any) that may have occurred in communications with regulators. As to the "quality and nature" of CVR's services, we continue to believe that those issues are irrelevant to whether the alleged conspiracy between CDK and Reynolds exists and has no bearing on the claims and defenses in the litigation. However, notwithstanding its objections and subject to appropriate search terms and custodians, CVR is willing to produce non-privileged documents discussing any deficiencies or perceived deficiencies in CVR's product and service level (including any such discussions with regulators). As with a similar request propounded on CDK (see below), CVR will search for documents that are responsive to this Request as informed by the example (CDK-0076911) that Plaintiffs provided of a document that they consider responsive. Please let us know if this compromise is acceptable or if you have a different proposal in mind.

*Request 47 (CDK's or CVR's consideration or evaluation of whether to acquire EVR providers):* As discussed on our call, we disagree with the relevance of this Request and, to the extent that relevant issues are encompassed, believe that they are captured by other Requests.

*Request 48 (efforts to impede EVR access to data on Reynolds or CDK platform):* You explained that the word "by" in this Request is a typo, and thus that this Request sought all communications and documents concerning efforts by any person or entity to impede any EVR provider's access to data. With that clarification, we believe that disputes over this Request may be resolved through the application of reasonable search terms to agreed-upon custodian files.

*Request 53 (California Assembly Bill 516):* California Assembly Bill 516 (the "Bill") was not signed into law until after the purported inception of the alleged conspiracy in this case and will not become effective until 2019. Nevertheless, you told us during the October 29 call that the Bill was important to issues related to the alleged conspiracy and competitive disadvantage to the extent it relates to real-time access. We disagree. Further, to the extent that relevant issues could be encompassed by discussions within CVR, if any, surrounding the Bill, believe that they are captured by other Requests.

*Request 54 (alleged deficiencies in CVR's product or service):* This request is substantially similar to "Individual" and Vendor Class Plaintiffs' Request 47 directed to CDK. After

Mayer Brown LLP

Mike Nemelka
November 12, 2018
Page 4

reviewing the correspondence exchanged between the parties concerning that Request, it appears that CDK agreed to produce responsive documents as informed by an example document (CDK-0076911) that Plaintiffs provided during the meet-and-confer process. Subject to appropriate search terms and custodians, we offer the same for CVR. Please let us know if this compromise is acceptable or if you have a different proposal in mind.

*Request 64, 66 & 72 (communications between CVR and CDK/Reynolds)*: As we explained on the call, these Requests can be read to seek literally every communication between CVR and CDK or Reynolds on any topic and therefore are grossly overbroad and disproportionate to the needs of the case. Indeed, these Requests are even broader than your Requests 1 and 2, which only seek communications to/from "CVR document custodians." Subject to appropriate search terms and custodians, CVR is willing to produce non-privileged communications with CDK or Reynolds that discuss CVR's finances, management, and "operations" in so far as those "operations" pertain to CVR's access to data maintained on DMSs (including CDK and Reynolds-brand DMSs). Please let us know if this compromise is acceptable or if you have a different proposal in mind.

*Request 67 (communications between CDK and Reynolds regarding CVR)*: Thank you for clarifying on our call that this request only seeks communications between CDK and Reynolds where a CVR officer or employee is included on the communications distribution. With that understanding, we agree that any disputes over this Request may be resolved through the application of reasonable search terms to agreed-upon custodian files.

*Request 68 (CVR's acquisition of AVRS)*: We continue to believe that this request, which seeks "all" documents relating in any way to CVR's acquisition of AVRS—a transaction not alleged to be anticompetitive or otherwise at issue in this litigation—is inappropriate. However, consistent with the compromise that we reached with respect to "Individual" and Vendor Class Plaintiffs' Request 60 directed at CDK, CVR is willing to produce, subject to appropriate search terms and custodians, (a) documents related to the acquisition of AVRS that discuss the impact of the acquisition on CVR's ability to compete with other EVR providers, (b) documents related any complaints received from dealers (in other words, "communications regarding deficiencies or perceived deficiencies in AVRS's product and service levels") following the AVRS acquisition, and (c) documents related to "whether to acquire AVRS and why" CDK acquired AVRS. Please let us know if this compromise is acceptable or if you have a different proposal in mind.

*Request 71 (communications with potential acquirers of CVR):* We continue to believe that this Request is improper, grossly overbroad, and seeks irrelevant information. We heard nothing during our October 29 call that convinced us of its relevance. To be clear, however, to the extent that the application of reasonable search terms and custodians identifies relevant non-privileged documents responsive to other Requests that were created in the context of communications with "any potential acquirer or acquirers of CVR," they will not be withheld from production.

*Requests 73-79 & 82 (financial and sales data)*: As stated on our call, as a general matter, CVR intends to respond to these Requests through a production of summary-level and/or "structured"

Mayer Brown LLP

Mike Nemelka
November 12, 2018
Page 5

data from enterprise systems that CVR maintains in the ordinary course of business. We are still following up with our client to understand how the datasets implicated by these Requests (financial statements, financial reporting data, sales transactional data, and forecasts) are maintained by CVR and how, and to what extent, they can be produced.

*Request 88 (industry publications or reports)*: On our call, you offered to limit this Request to industry publication or reports that were forwarded or commented upon by persons at CVR. Although such a Request remains exceedingly broad, we agree to this limitation and believe any further disputes over this Request may be resolved through the application of reasonable search terms to agreed-upon custodian files.

*Request 93 (communications with other EVR providers)*: This Request seeks "all" communications and documents exchanged between CVR and other EVR providers without any subject matter limitation, which is overbroad and disproportionate. We are willing to consider proposals to narrow this Request, but you did not offer any on our meet and confer. Please let us know whether you believe there are grounds for compromise so we can evaluate them.

*Request 94 (RCI or 3PA program)*: This Request seeks "all" documents "relating or referring" to the RCI or 3PA program in any way. As we explained during our meet and confer, that is overbroad and disproportionate, and would implicate countless routine communications and exchanges of information that occur in the ordinary course of business. You are not entitled to every document related to CVR's business or even every document in CVR's possession, custody, or control that is related (in any way) to the 3PA and RCI programs. We are willing to consider proposals to narrow this Request, but you did not offer any on our meet and confer. Please let us know if you believe there are grounds for compromise so we can evaluate them.

*Request 95 (CVR's application to participate in RCI or 3PA)*: We told you on our meet and confer that we would look into whether any documents related to any "applications" by CVR to participate in RCI or 3PA exist. We believe that any documents responsive to this Request have already been produced in this litigation, but are still confirming as much.

*Request 96 (analysis of data access through 3PA/RCI versus other methods)*: We believe we are in agreement that any disputes over this Request may be resolved through the application of reasonable search terms to agreed-upon custodian files.

*Requests 100 & 101 (CVR's payments to and use of data integrators)*: CVR is willing to produce non-privileged documents responsive to these Requests that relate to the contract between AVRS and Authenticom for certain DMS-related data access services. We are still confirming whether there are any other documents that would be responsive to these Requests; if not, then our dispute is a moot point. We will let you know.

*Requests 107 & 108 (data or information CVR needs and obtains from Reynolds and CDK DMS to provide services)*: On our call, we suggested limiting these Requests from "all" documents to "documents sufficient show." Please let us know if this compromise is acceptable or if you have a different proposal in mind.

Mayer Brown LLP

Mike Nemelka
November 12, 2018
Page 6

*Requests 109 (how CVR accessed DMS for each dealer to provide services)*: Similar to Requests 107 and 108, we propose limiting this Requests from "all" communications with dealers about how CVR accesses data maintained on that dealer's licensed DMS (which likely would implicate routine communications with every CVR customer) to "documents sufficient show" how CVR accesses data maintained on DMS brands represented across CVR's customers. Please let us know if this compromise is acceptable or if you have a different proposal in mind.

*Request 110 (CVR's competitive analyses)*: You pointed out on our call that MVSC agreed to produce similar materials to those sought by this Request in response to MVSC Request 67. We have reviewed the correspondence and agree that CVR will make a comparable production.

## C.      Alleged Market Limitations

As noted in your November 1 letter, the parties dispute whether CVR's response to Requests 36-43 and 45 should include documents pertaining to alleged markets other than California and Illinois (the only two markets that are the subject of the claims in MVSC's complaint).

You principally contend that other markets are relevant to "the ability of CVR's competitors to compete" despite CVR's supposed "advantages with respect to data access and pricing." We disagree with that contention, but even if it were correct, we do not believe that collecting, reviewing, and producing such documents would be appropriate or proportional to the needs of the case, especially since CVR will already be producing similar data for the markets that are implicated by MVSC's claims. Nevertheless, in an effort to reach a compromise on this issue, we are willing to produce non-privileged responsive documents for the Wisconsin and Virginia markets, in which CVR operates and MVSC (according to paragraph 86 of the operative complaint) is allegedly working to gain approval. We hope this will resolve our dispute.

## ESI Search Terms

We have now tested plaintiffs' 94 proposed search terms and confirm, unsurprisingly, that they return more than half of the searchable ESI from CVR custodial files that were tested. So we will now embark on the process of trying to work with you to identify a reasonable set of search terms from the overbroad set of search terms that were proposed. Please note that we will be unable to agree on search terms while you continue to press for more custodians, as the number of custodians is proportional to the burden imposed by your proposed search terms.

Sincerely,


*/s/ Matthew D. Provance*
Matthew D. Provance

Mayer Brown LLP

Mike Nemelka
November 12, 2018
Page 7

cc:     Lead MDL Plaintiff Counsel of Record
        Reynolds Counsel of Record
        Mark Ryan
        Britt Miller
        Andrew Marovitz