**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF MVSC'S NEWLY DISCLOSED CLAIMS BASED ON THE VIRGINIA AND WISCONSIN EVR MARKETS**

PUBLIC VERSION

## INTRODUCTION

MVSC is not permitted to dramatically expand its claims against Reynolds from two relevant markets to four markets and more than double the amount of its claimed damages all via expert report after the close of fact discovery.

MVSC has alleged and consistently pursued claims based on only two markets – the California and Illinois EVR markets – and has failed to ever specify any claims based on the Wisconsin or Virginia EVR markets in its disclosures or written discovery responses. MVSC did not provide EVR services in Wisconsin or Virginia at the time its complaint was filed, and still does not operate in Wisconsin today. Fact discovery has proceeded under the understanding that MVSC's claims are based on California and Illinois only, and fact discovery is now closed. If MVSC is permitted to more than double the scope of its case and claims via expert report, the prejudice to Reynolds will be substantial. Reynolds has lost the opportunity to request additional documents, additional document custodians, additional search terms to be used when searching for documents, additional deponents, and additional questions of previously deposed witnesses. As set forth in Reynolds opening brief, documents obtained from the Wisconsin DOT in response to a recent FOIA request establish that important documents relating to the Wisconsin EVR market were not produced by MVSC. Re-doing fact discovery to adequately encompass claims based on new markets would require overhauling and significantly delaying the case schedule at substantial additional expense.

MVSC argues in its Opposition that this is justified by federal pleading rules, MVSC's discovery compromises reached with a different defendant, and a handful of evasive answers to questions by MVSC's Rule 30(b)(6) designee at the end of the fact discovery period. MVSC is

wrong. MVSC's late-disclosed claims based on the Virginia and Wisconsin EVR markets should be barred.

## ARGUMENT

### I. MVSC's Complaint Led Reynolds To Believe MVSC's Claims Were Based Solely On The California and Illinois EVR Markets.

MVSC specifically referred to the California and Illinois EVR markets, <u>but not the Wisconsin or Virginia EVR markets</u>, in the eight causes of action contained in MVSC's Second Amended Complaint ("SAC") (*see* Dkt. 76 ¶¶ 206-263), in MVSC's initial disclosures (**Exhibit B**[1]), in MVSC's Rule 26(f) disclosures (Dkt. 79), in MVSC's key interrogatory responses (**Exhibit C**), and in MVSC's briefs in this case (*e.g.*, Dkt. 108). MVSC was clear in its complaint that its claims were based solely on the California and Illinois EVR markets. *See, e.g.*, SAC ¶ 64 ("There are two state EVR markets at issue in this complaint: the Illinois EVR market and the California EVR market."); SAC ¶ 202 ("The **only** purpose behind [Defendants'] conspiracy to boycott MVSC and campaign to cut off MVSC completely from dealer data is to protect CVR's monopoly profits in Illinois and regain them in California.") (emphasis added).[2]

In its Opposition, MVSC concedes that it "more prominently" featured the California and Illinois EVR markets in its complaint. Opp. at 12. This is an understatement. Indeed, in MVSC's highly specific and detailed complaint, spanning 90 pages and 263 paragraphs, only two paragraphs specifically mention Virginia and only one paragraph specifically mentions Wisconsin. SAC ¶ 19 ("MVSC is working to gain approval in the Virginia EVR program."); SAC ¶ 86 ("MVSC plans to enter other EVR markets, including Wisconsin and Virginia."). MVSC asserts

---

[1] Unless otherwise specified, Exhibit references are to Exhibits attached to Reynolds's opening motion (Dkt. 790).

[2] MVSC's Opposition asserts that MVSC's "boycott claim" in particular "is not market-specific." Opp. at 12. This is inconsistent with MVSC's own allegation in SAC ¶ 202, among others.

that SAC paragraph 86, as well as a handful of additional SAC paragraphs generally referencing "millions of dollars" in damages or "other" EVR markets[3], permit it to double the scope of its case from two markets to four markets and double the maximum amount of single damages from ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* **Exhibit A** (Klein Rpt., ¶ 20). MVSC is wrong.

MVSC cites extensively to cases holding that the amount of damages need not be pleaded with particularity and can be established with expert testimony, or generally describing notice pleading rules under Rule 8 (*see, e.g.*, Opp. at 3, 9). This misses the point. Reynolds is not arguing that MVSC needed to be more specific in its allegations about the amount of its damages. What MVSC cannot do is file a complaint containing eight claims that are <u>specifically based on two EVR markets</u>[4] – California and Illinois – and then expand its specifically pleaded claims and factual theories after the close of fact discovery to include two more EVR markets – Wisconsin and Virginia. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859-60 (7th Cir. 2017) (court may deny a de facto amendment to a complaint that "changes the complaint's factual theory"); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1430 (7th Cir. 1993) ("[I]f the plaintiff in the course of pretrial discovery comes up with a new claim, he will have to get his complaint amended if the pleadings and the proof are to be conforming."). A plaintiff need not plead with particularity under Rule 8, but it must be clear about the grounds on which its claims rest so that the defendants know what to litigate; brief and general references to other markets in a 263 paragraph complaint about California and Illinois does not suffice. *See Conner v. Ill. Dep't of Natural Resources*, 413 F.3d 675, 679 (7th Cir. 2005) ("[Plaintiff] is correct in stating that she was not required to set forth specific facts and legal theories of her case in her complaint. . . . But

---

[3] MVSC's Opposition cites SAC ¶¶ 15, 63, 107, 194.
[4] It is undisputed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* **Exhibit K**, Israel Rpt. ¶ 62.

pleading is still vitally important to inform the opposing party of the grounds upon which a claim rests; a complaint is adequate only if it 'fairly notifies a defendant of matters sought to be litigated[.]'") (citation omitted). The markets on which an antitrust complaint rests are central to the required allegations. *Chi. Studio Rental, Inc. v. Ill. DOC*, 940 F.3d 971, 978 (7th Cir. 2019) ("Plaintiff must assert an injury not only to itself, but to the relevant market."); *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc*., 937 F.3d 1056, 1065 (7th Cir. 2019) ("We usually presume that competitors and consumers in the relevant market are the only parties who suffer antitrust injuries and are in a position to efficiently vindicate the antitrust laws.").

Changing or expanding the alleged relevant markets in an antitrust case changes the plaintiff's claims and factual theories. It is not a mere damages pleading issue, as MVSC seems to suggest. For example, in *City of New York v. Grp. Health Inc*., 649 F.3d 151 (2d Cir. 2011), the Second Circuit affirmed an order denying plaintiff's late attempt to amend its antitrust complaint to include new markets. After discovery had closed but before plaintiff filed its opposition to defendants' motion for summary judgment, plaintiff sought leave to amend its complaint in order to allege two new "alternative" relevant markets in addition to the originally alleged market in its complaint. *Id.* at 154-55. The district court denied the request because it would "prejudice [defendants] by forcing them to conduct substantial additional discovery after three and half years of defending a lawsuit premised on the [plaintiff's original] narrow market definition." *Id.* at 155. The Second Circuit affirmed, finding that permitting the plaintiff to amend and allege two additional relevant markets "would delay proceedings and require substantial additional expense" because "at a minimum," it would "require additional discovery." *Id.* at 158.

MVSC should not be permitted to do the same thing here.  After two years of litigation and the close of fact discovery, all based on claims concerning the California and Illinois EVR markets, MVSC cannot expand its claims to include the Wisconsin and Illinois EVR markets.

II. **MVSC's Discovery Responses Led Reynolds To Believe MVSC's Claims Were Based Solely On The California and Illinois EVR Markets.**

Putting aside MVSC's complaint allegations, discovery rules obligated MVSC to be specific about its claims, relevant markets and damages in initial disclosures and in response to written discovery requests seeking such specificity, which MVSC failed to do.  *See* Fed. R. Civ. P. 26(a) (plaintiff's initial disclosures must provide "a computation of each category of damages claimed"); Fed. R. Civ. P. 26(e) (initial disclosures and interrogatory responses must be amended if they are "incomplete or incorrect").  MVSC concedes that it did not provide the required specificity, stating in its Opposition: "MVSC's interrogatory responses and disclosures . . . describe MVSC's harm broadly without identifying any specific state."  Opp. at 13.

Indeed, MVSC's discovery disclosures and responses confirmed that its claims were based on the California and Illinois EVR markets and not the Wisconsin or Virginia EVR markets.  For example, MVSC's Initial Disclosures did not identify anyone with discoverable information relating to the Wisconsin or Virginia EVR markets, and with respect to damages, stated only that "computation of damages . . . has yet to be determined."  *See* **Exhibit B** at 3-4 and 24.  The only markets mentioned in MVSC's Rule 26(f) disclosures were California and Illinois.  *See* Dkt. 79 at 2-3, 6-7.  MVSC's amended responses to interrogatories 27, 35, 37 concerning its claims ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ *See* **Exhibit C.**

According to MVSC, these broad responses, some of which mention California and Illinois, but none of which mention the Wisconsin or Virginia EVR markets, were sufficient to put

Reynolds on notice that its claims might include the Wisconsin or Virginia EVR markets, because (1) MVSC's complaint provided notice, (2) discovery extended, to some extent, to markets other than the California and Illinois EVR markets, and (3) MVSC's discovery correspondence with CVR, a separately represented party, purportedly provided notice to Reynolds. Each of these arguments lacks merit.

*First*, as described in the preceding section, MVSC's general references in a handful of complaint paragraphs to "other states" (which might include numerous state markets) or "millions" of dollars in damages did not put Reynolds on notice that MVSC was pursuing claims based on the Wisconsin or Virginia EVR markets. Regardless, to the extent that a plaintiff seeks to pursue a theory tied to general, vague or broad complaint allegations, it must provide more specificity in initial disclosures or in response to discovery requests from defendants. *See, e.g.*, *Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 549-50 (N.D. Cal. 2009) (barring late disclosed new legal theories, explaining that plaintiffs "failed to disclose those theories in discovery for over two years, despite Defendants' efforts from the outset to flesh out Plaintiffs' sketchy damages allegations through appropriate discovery tools."); *Phoenix Techs., Ltd. v. VMWare, Inc*., 2017 U.S. Dist. LEXIS 72353, at *21-22 (N.D. Cal. May 11, 2017) (barring expert opinion based on new legal theories, noting that plaintiff's "attempt to incorporate not-yet-existing expert reports into [its] interrogatory response only supports the Court's finding that [plaintiff's] shift in theory effectively precluded [defendant] from understanding the central claim now alleged against it at the critical time: before fact discovery closed.").

*Second*, the fact that discovery in this case was not strictly limited to the California and Illinois EVR markets is unremarkable. The scope of discovery is based on what is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). As described in Reynolds's Motion,

conditions and events occurring in EVR markets outside of California and Illinois are relevant to proving or disproving MVSC's claims based on California and Illinois, for instance, by showing that defendants did not block other CVR competitors from access to data. *See* Motion at 10-11. The critical point is that Reynolds would have done more discovery and more targeted discovery relating to the Wisconsin and Virginia EVR markets in particular had MVSC timely disclosed its intent to pursue claims based on these markets. *See* Motion at 10-15; *infra* at 12-14.

*Third*, MVSC's discovery correspondence with CVR offers no support to MVSC. CVR is a separately represented defendant and not a signatory to Reynolds's Motion, which is filed only on behalf of Reynolds.[5] Notably, MVSC does not cite to a letter exchanged with Reynolds; this is because Reynolds was never informed by MVSC that it intended to pursue claims based on the Wisconsin or Virginia EVR markets.

None of the correspondence between MVSC and CVR from November and December 2018 described in Appendix A of MVSC's Opposition indicates that CVR, let alone Reynolds, believed that MVSC's claims extended beyond California and Illinois EVR markets. In fact, MVSC's own letter to CVR dated November 1, 2018 explains that as of that date, CVR's view was that for nine specific document requests from MVSC, it should only have to produce documents "with respect to the California and Illinois markets," not Wisconsin or Virginia or any other state EVR market. *See* Opp. Appendix A, 11/1/18 entry (discussing document requests 36-43 and 45); **Exhibit 3** (attached) (CVR's responses to MVSC's document requests dated October 25, 2018). Thus, CVR's view was actually that MVSC's claims did not include Wisconsin or Virginia.

---

[5] MVSC voluntarily dismissed its claims against CDK and CVR on October 15, 2019. *See* Dkt. 778.

Furthermore, CVR (not Reynolds) subsequently agreed to produce documents relating to Wisconsin and Virginia for the nine document requests at issue, but only as a discovery compromise. *See* Opp. Appendix A, 11/12/18 entry ("[I]n an effort to reach a compromise on this issue . . ."). CVR never agreed that MVSC's claims actually encompassed these additional markets. Parties enter into discovery compromises for a variety of reasons, and CVR's reasons are unknown to Reynolds. As MVSC itself explains in its Opposition, one cannot "assume[] too much" from "a good faith compromise in the context of negotiations over a range of issues." Opp. at 14. One should assume even less about a party such as Reynolds, which was not involved in those discussions and compromises.

MVSC incorrectly states at page 6 of its Opposition that "counsel for Reynolds participated in the [MVSC-CVR] meet and confers" listed in Appendix A. This is false. MVSC's efforts to obtain documents and written discovery from CVR occurred on a separate and later track from Defendants' efforts to obtain document and written discovery from MVSC and MVSC's efforts to obtain document and written discovery from Reynolds.[6] By the time MVSC was meeting and conferring with CVR in late 2018 regarding CVR's document production (as reflected in MVSC's Appendix A), the other parties in the MVSC case had already substantially completed document productions and were only discussing limited follow up issues. Reynolds had no reason to be, and was not, involved in the MVSC-CVR meet and confers listed in Appendix A, which related solely to MVSC's efforts to obtain discovery from CVR, not Reynolds. Similarly false is MVSC's

---

[6] *See* Case Management Order, Dkt. 166 (deadline to serve discovery requests was May 25, 2018; deadline for motions to compel was August 6, 2018; deadline for substantial completion of document production was October 12, 2018); *see* CVR Response to Motion to Compel, Dkt. 409 at 1 (according to CVR: "[N]either MVSC nor any other MDL Plaintiffs chose to serve CVR with any discovery until three months after the other MDL Defendants, just over a month before the deadline for the substantial production of documents under the Court-ordered schedule."); *id*. at Ex. D (MVSC's first set of document requests to CVR dated August. 30, 2019).

statement on page 10 of its Opposition, where it states that "throughout discovery, Defendants worked as one." Reynolds had no involvement in MVSC's efforts to obtain discovery from CVR in November and December 2018.[7]

MVSC needed to be clear in its complaint, initial disclosures, and interrogatory responses if it wanted its case to include EVR markets other than California and Illinois. It cannot justify its de facto amendment by expert report now by pointing to a handful of letters reflecting a discovery compromise reached with a different party, represented by different counsel, on a different discovery track, years after its third filed complaint, and less than a year before that party was dismissed from the case pursuant to a settlement.

### III. Deposition Testimony From MVSC's CEO Don Armstrong Did Not Expand MVSC's Case To Include Markets Beyond California and Illinois.

MVSC asserts that the late deposition testimony of its Rule 30(b)(6) designee Don Armstrong put Reynolds on notice that MVSC's claims included new unpleaded markets. It did not. Mr. Armstrong's deposition testimony was combative and evasive, and he refused to provide meaningful information or specifics about MVSC actual claims and damages. *See, e.g.*, MVSC 30(b)(6) Dep. Tr. at 81:23-82:24; 87:19-94:4 (attached as **Exhibit 1** hereto). Even though he was designated on the topic of purported injury, harm and damage to MVSC, he made only broad, speculative statements about potential damages theories and relevant markets, deflecting to forthcoming expert reports, just as MVSC had done in its written discovery. *See, e.g.*, *id.* at 88:2-

---

[7] Prior to filing, counsel for Reynolds provided counsel for MVSC with an opportunity to retract or revise the misstatements described in this paragraph, but counsel for MVSC refused. *See* **Exhibit 4** (attached). Counsel for MVSC instead directed counsel for Reynolds to a November 2018 email chain regarding a meet and confer call, but as the first email in the chain makes clear, counsel for Reynolds was only interested in discussing a discrete issue relating to Authenticom, not MVSC. *See* **Exhibit 5** (attached). The remaining correspondence cited in Exhibit 4 relates to follow up issues involved with obtaining discovery from MVSC (which was supposed to be substantially complete in October 2018), not from CVR. *See* **Exhibits 6 and 7** (attached).

8 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* at 89:3-22 ▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓ ; *id.* at 89:23-90:17 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *id.* 88:2-21 and 82:4-24 ▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ His concluding comment on injury, harm and damages and what the world would have been like for MVSC in the absence of the alleged misconduct was: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 93:17-94:5 (emphasis added). Mr. Armstrong's testimony did not comport with his obligations as a Rule 30(b)(6) witness, and was predominantly a long string of evasive and combative speculation and argument, which he admittedly invented on the spot. It did not, and could not, have expanded MVSC's claims to include claims based on EVR markets such as Wisconsin or Virginia that were not pleaded in its claims. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See id.* at 90:5-17; Opp. at 8 n.4.

Mr. Armstrong's testimony could not have expanded MVSC's claims to new markets for an additional reason – his testimony came too late. The deposition occurred on March 20, 2019, approximately one month before the April 30, 2019 close of fact discovery (nearly two and half

years after MVSC filed suit in the first filed suit in this MDL). *See* Dkt. 553 at ¶ A.1. Mr. Armstrong was the final MVSC fact witness to be deposed. At the time of his deposition, the deadlines to propound written discovery to MVSC (5/25/18) and for MVSC to respond to written discovery requests (6/22/18) had already passed, as had the deadlines to request documents (5/25/18) and for MVSC to substantially complete its production (10/12/18). Dkt. 166 at ¶¶ 6-7.

The Seventh Circuit has rejected new, expanded claims or legal theories based on uninformed or late deposition testimony. *See, e.g.*, *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 480-82 (7th Cir. 2019) (striking affirmative defense raised by defendant for the first time in its motion for summary judgment, rejecting district court's finding that the issue was properly raised in a deposition six months before the close of fact discovery, noting that the witness "did not understand" the issue, and an issue raised "briefly in one deposition" was not fair notice that defendant "would actually assert the defense"); *Conner v. Ill. Dep't of Natural Resources*, 413 F.3d 675, 679 (7th Cir. 2005) (striking new legal theory disclosed for first time in opposition to summary judgment motion, rejecting plaintiff's argument that references to the theory in an interrogatory response and a deposition put defendant on notice, because those disclosures came too late and plaintiff never filed a motion for leave to amend the complaint).

An analogous situation arose in *Oracle USA, Inc.*, 264 F.R.D. at 541. There, the court excluded plaintiff Oracle's late effort to expand its theory of economic harm from lost support revenue to also include lost licensing revenue and price reductions. Similar to this case, one of the final events to occur during fact discovery was defendants' deposition of Oracle's top executive, Larry Ellison. *Id.* at 552. Also similar to this case, Oracle's top executive testified broadly regarding theories of damages, indicating that previously alleged theories were only "the tip of the iceberg." *Id.* The court held that such a disclosure in an apex deposition at the end of the fact

discovery period came too late and could not expand plaintiff's case to include new claims or legal theories: "If damages relating to the customers that left for TomorrowNow were only the 'tip of the iceberg,' then that iceberg was invisible to Defendants and to the Court (though not Plaintiffs) for more than two years of intensive discovery efforts." *Id.*

Accordingly, MVSC cannot justify an enormous expansion of its case or claims based on Mr. Armstrong's testimony.

## IV. The Prejudice To Reynolds Is Substantial.

According to MVSC, there is no prejudice to Reynolds because MVSC's document production included some documents relating to the Wisconsin and Virginia EVR markets, and because MVSC's Rule 30(b)(6) designee provided some testimony about these markets. MVSC ignores the significant prejudice its actions have caused by preventing Reynolds from conducting the full scope of discovery it otherwise would have into the Wisconsin and Virginia EVR markets.

With respect to documents, MVSC's failure to amend its complaint or earlier disclose any intent to seek damages based on harm suffered in markets other than those pleaded has caused Reynolds not to pursue documents relating to the Wisconsin and Virginia EVR markets to the same extent that it otherwise would have. Had Reynolds known that MVSC would take the position that <u>most</u> of its harm and damages are tied to Virginia and Wisconsin EVR markets (where it did not even operate when the complaint was filed and still does not operate in Wisconsin), as opposed to the pleaded California and Illinois EVR markets (where it did operate at the time the complaint was filed and it is currently the market share leader in California), Reynolds could have propounded document requests specifically targeting other markets, it could have requested document custodians specifically relating to the Wisconsin or Virginia EVR markets, it could have negotiated with MVSC for additional search terms that would capture additional documents

relating to the Wisconsin or Virginia EVR markets, and it could have requested additional documents from non-parties in connection with those markets.

The clearest example of the substantial prejudice Reynolds suffered comes from the documents Reynolds obtained from the Wisconsin DOT through a FOIA request Reynolds made on Wisconsin DOT after receiving Dr. Klein's report on behalf of MVSC. *See* Motion at 12-13 and **Exhibits G, H, and I** (recently obtained correspondence from 2013, 2014 and 2017 showing that Wisconsin would not have authorized MVSC or any other new EVR provider, independently of any alleged antitrust violation). MVSC does not dispute that these three documents were not produced by MVSC. Instead, it flippantly dismisses Reynolds's argument in a footnote as "an irrelevant aside" and simply states that "to the extent responsive documents hit on search terms, MVSC produced them." Opp. at 14 n.9. As Reynolds already explained, such an argument only confirms that Reynolds was prejudiced because critical documents relevant to the new markets were withheld by MVSC as not part of the negotiated searches. Motion at 13-14. MVSC cannot lead Reynolds to believe that its claims are based only on two markets, steer discovery so as to avoid producing key documents relating to other markets, and then expand the case to include two more markets later. *See Oracle USA, Inc*., 264 F.R.D. at 550-551 ("It would be unfair . . . to put the burden on Defendants to intuit that such search terms would be necessary, in light of Plaintiffs' representations to the contrary and Plaintiffs' much greater knowledge of the relevance of documents in Plantiffs' possession and the intricacies of Plaintiffs' systems").

As detailed in Reynolds's opening brief, Reynolds lost the opportunity to pursue documents or other discovery from Kelly Medick and Don McNamara, MVSC's general managers in charge of Wisconsin and Virginia (neither of whom were disclosed in MVSC's initial disclosures), and Reynolds accepted express state-market-based limitations proposed by MVSC

relating to documents produced for Jamison Kingfield (limited to documents relating to Illinois). MVSC's only response is to say that its agreement to produce documents from one general manager (Mr. Kingfield) does not necessarily mean it would agree to produce documents from other general managers. Opp. at 14. But this is beside the point. Reynolds would have requested and negotiated for documents from those additional general managers and has now lost the ability to do so. This is not a unilateral decision for MVSC to make while keeping Reynolds in the dark about the markets on which it later planned to base its claims.

MVSC further asserts that it produced documents from Joe Nemelka of MVSC, who purportedly supervised Kelly Medick and Don McNamara, but those documents and other documents produced by MVSC are all the product of the same set of search terms negotiated based on the assumption that MVSC's claims were tied only to the California and Illinois EVR markets. Indeed, each of the three critical unproduced documents obtained from Wisconsin DOT pursuant Reynolds's FOIA request were sent to Joe Nemelka. *See* **Exhibits G, H, and I.**

With respect to depositions, MVSC argues that the MVSC Rule 30(b)(6) deposition provided Reynolds with sufficient information about Wisconsin and Virginia EVR markets and issues. Opp. at 15. As detailed in the preceding section, Mr. Armstrong was evasive, combative and uninformed despite being designated as MVSC's 30(b)(6)'s representative late in the discovery window. This deposition could not have cured any prejudice to Reynolds. Considering similar depositions and a similar set of facts, the court in *Oracle* concluded that plaintiff's conduct was "not substantially justified or harmless." *Oracle USA, Inc.*, 264 F.R.D. at 552.

### V. MVSC's Arguments Regarding The Merits Are Irrelevant To Reynolds's Motion, And The Documents Cited Do Not Include Any Relating to Wisconsin Or Virginia

MVSC makes general arguments throughout its brief in an attempt to convince the Court that its newly proposed case has merit, based on a small handful of documents produced in the

case. *See, e.g.*, Opp. at 1-2 (discussing Opp. Ex. 2[8]); Opp. at 4-5 n.3 (discussing Opp. Exs. 6, 7, 8); Opp. at 12-13 n.8 (discussing Opp. Exs. 24, 25). These arguments are both wrong (as Reynolds will show at summary judgment) and irrelevant to the issue raised by Reynolds's Motion, which is whether MVSC may craft a fourth complaint that includes new markets this far into the case. Regardless, the documents cherry-picked by MVSC only further highlight that its claims are based only on the California and Illinois EVR markets. *See* Opp. Ex. 2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); Opp. Ex. 6 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. Ex. 7 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. Ex. 8 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 12-13 n.8 (quoting language from Opp. Exs. 24 and 25 specifically concerning California and Illinois).

## CONCLUSION

MVSC should be barred from claims based on the Virginia or Wisconsin EVR markets.[10]

---

[8] MVSC mischaracterizes Exhibit 2 attached to its Opposition. Contrary to MVSC's description at page 2 of its Opposition, Jon Strawsburg of Reynolds did not "write[]" anything in Exhibit 2 about "denying MVSC data access."

[9] *See* **Exhibit 1** (attached), MVSC 30(b)(6) Dep. Tr. at 206:14-25 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; **Exhibit 2** (attached), REYMDL00510170-71 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

[10] MVSC's request for monetary sanctions should be denied. Reynolds's Motion is not frivolous. MVSC also failed to make its request in a "separate motion" and failed to provide 21 days' notice as required by Rule 11(c)(2). As noted above, MVSC made certain material misrepresentations in its response that it refused to withdraw after Reynolds provided notice (*see* **Exhibit 4**, attached), and it is attempting to add claims based on new markets without providing notice to Reynolds during fact discovery and after pleading its complaint three times. Sanctions, if any, should be levied against MVSC, not Reynolds.

Dated: November 26, 2019

Respectfully submitted,

/s/ *Leo D. Caseria*

Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

**PUBLIC VERSION**

# CERTIFICATE OF SERVICE

      I, Leo D. Caseria, an attorney, hereby certify that on November 26, 2019, I caused a true and correct copy of the foregoing **DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO BAR PLAINTIFF MVSC'S NEWLY DISCLOSED CLAIMS BASED ON THE VIRGINIA AND WISCONSIN EVR MARKETS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

                                                */s/     Leo D. Caseria*
                                                Leo D. Caseria
                                                SHEPPARD MULLIN RICHTER & HAMPTON, LLP
                                                2099 Pennsylvania Avenue NW, Suite 100
                                                Washington, DC 20006
                                                (202) 747-1900
                                                lcaseria@sheppardmullin.com