IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864<br><br>Magistrate Judge Jeffrey T. Gilbert |

**ORDER**

This matter is before the Court on Dealership Class Plaintiffs/Counter-Defendants' Motion to Compel Responses to Interrogatories [ECF No. 740]. For the reasons discussed in this Order, the Motion is denied, though in two instances without prejudice, as more fully explained in the Statement below.

**I. Background**

The Motion now before the Court involves Dealership Class Plaintiffs/Counter-Defendants' written discovery served on Defendant/Counter-Plaintiff CDK after CDK filed its counterclaims along with its answer to Dealership Class Plaintiffs' Consolidated Class Action Complaint on February 22, 2019. [ECF No. 523]. As originally filed, CDK's counterclaims asserted causes of action for alleged common law breach of contract, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), and violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 ("DMCA"). At their core, CDK's counterclaims allege that Dealership Class Plaintiffs/Counter-Defendants impermissibly handed out their login credentials for CDK's Dealer Management System ("DMS"), directly or indirectly, to third-party data extractors to enable those entities to access the CDK DMS. Dealership Class Plaintiffs/Counter-Defendants contest CDK's counterclaims. They say CDK's contracts with dealerships specifically provide that dealerships may allow their employees and agents to access the CDK DMS. On September 3, 2019, the Court dismissed CDK's counterclaim under the CFAA without prejudice, but its other counterclaims were allowed to proceed. *See* [ECF 749], at 24.

Dealership Class Plaintiffs/Counter-Defendants served interrogatories on March 8, 2019, two weeks after CDK served its counterclaims. On April 1, 2019, CDK filed a Motion for Protective Order, arguing that the interrogatories were untimely, irrelevant, and unduly burdensome. *See* [ECF No. 600]. Dealership Class Plaintiffs/Counter-Defendants opposed that motion. On June 10, 2019, the Court denied CDK's motion and ordered CDK to respond to the interrogatories. *See* [ECF No. 717]. On July 3, 2019, CDK served its objections and answers to the interrogatories and refused to answer Interrogatories Nos. 4, 7, 10, 16, 17 and 18. On July 17, 2019, the parties participated in a telephonic meet-and-confer conference in an attempt to resolve their disputes over CDK's responses. On July 26, 2019, CDK's counsel sent a response letter in which CDK reiterated its refusal to respond to Interrogatories Nos. 4, 7, 10, 16, 17 and

18 and to supplement its response to Interrogatory No. 11. These interrogatories are the subject of this Motion.

## II. Legal Standard

Federal Rule of Civil Procedure 26 allows the discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). When determining the scope of discovery, Rule 26(b)(1) requires consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* "The federal discovery rules are to be construed broadly and liberally." *Farris v. Kohlrus*, 2019 WL 351876, at *3 (C.D. Ill. Jan. 29, 2019) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)). "The party opposing discovery bears the burden of showing why discovery should be disallowed." *In re Peregrine Financial Group Consumer Litigation*, 2015 WL 1344466, at *1 (N.D. Ill. March 20, 2015) ; *see also Nammari v. Town of Winfield*, 2010 WL 1286733, at *2 (N.D. Ill. March 29, 2010) ("The objecting party must show with specificity that the request is improper.") (citation omitted). "Courts have repeatedly warned litigants who oppose discovery that their 'burden cannot be met by a reflexive invocation of the same baseless, often abused litany that the requested discovery is . . . overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *In re Peregrine*, 2015 WL 1344466, at *3 (citation omitted).

This Court has broad discretion when resolving discovery disputes. *See James v. Hyatt Regency Chicago*, 707 F.3d 775, 784 (7th Cir. 2013); *Cent. States, Se. & Sw. Areas Pension Fund v. Waste Mgmt. of Mich. Inc.*, 674 F.3d 630, 636 (7th Cir. 2012).

## III. Analysis

### A. Interrogatories Nos. 4, 7, and 10

Interrogatories Nos. 4, 7, and 10 each seek information about CDK's conduct in accessing non-CDK DMSs that Dealership Class Plaintiffs/Counter-Defendants allege is conduct that is similar to what CDK alleges Dealership Class Plaintiffs/Counter-Defendants were doing.[1] These interrogatories ask CDK to identify every time from 2011 to the present that CDK, including two of its former subsidiaries—DMI and IntegraLink, attempted to, or did, hostilely access non-CDK DMSs to extract data. CDK contends these interrogatories largely are aimed at

---

[1] Specifically, Interrogatory No. 4 asks CDK to "[i]dentify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) solicited a dealer to provide DMS login credentials to CDK after the login credentials that CDK had previously been using to access that dealer's DMS had been disabled by the dealer's DMS provider . . . ." Interrogatory No. 7 asks CDK to "[i]dentify all instances, from January 1, 2011 to the present, in which CDK (including DMI and/or IntegraLink) used dealer-provided DMS login credentials to extract data from a dealer's DMS. . . ." Interrogatory No. 10 asks CDK to "[i]dentify all instances, from January 1, 2011 to the present, in which CDK knowingly "engaged in unauthorized access to" another DMS provider's DMS (as those terms are used in ¶ 142 of CDK's Counterclaims). . . ."

2

DMI and IntegraLink's accessing the Reynolds DMS. Reynolds is CDK's co-defendant in this case. CDK does not dispute that until 2015, DMI and IntegraLink accessed the Reynolds DMS via hostile integration. *See, e.g.*, CDK's Mem. in Support of Mot. to Dismiss Dealers' Consolidated Compl. [ECF No. 265], at 5.

The Court is skeptical that the *number* of times ("all instances") that DMI and IntegraLink or CDK hostilely accessed the Reynolds DMS or other DMSs is directly relevant to CDK's counterclaims or any possible defenses to them, or proportional to the needs of this case. It is not clear to the Court, for example, how DMI's and IntegraLink's purported conduct vis-à-vis the Reynolds DMS or CDK's conduct relating to other non-CDK DMSs would inform the Dealership Class Plaintiffs/Counter-Defendants understanding about any provision in the CDK DMS contract governing third-party access to the CDK DMS. What DMI and IntegraLink purportedly did to access the Reynolds DMS also would not establish whether Dealership Class Plaintiffs/Counter-Defendants believed they were authorized by CDK to provide login credentials to third parties to allow those parties to access the CDK DMS.

Dealership Class Plaintiffs/Counter-Defendants say the information they seek is relevant to CDK's ability to meet the public interest component of its request for injunctive relief and to a potential unclean hands defense to CDK's counterclaims. If CDK succeeds on its counterclaims, however, it is hard to see how the public interest would be served by allowing Dealership Class Plaintiffs/Counter-Defendants to continue to do what they are doing because CDK or two of its former subsidiaries engaged in similar but not identical conduct years ago. But Dealership Class Plaintiffs/Counter-Defendants respond that some states recently have enacted statutes that prohibit providers like CDK from interfering with dealers' efforts to grant DMS access to third parties so evidence of CDK's past conduct could figure somehow in the balancing analysis embedded in its request for injunctive relief. Perhaps. In addition, while it is difficult to see how an unclean hands defense would apply in the context of claims for breach of contract and statutory violations, or how such a defense could be made out based upon CDK's subsidiaries' actions against third parties other than Dealership Class Plaintiffs/Counter-Defendants, it may not be impossible under the facts and law discussed in the parties' motion papers.

It appears that if the information Dealership Class Plaintiffs/Counter-Defendants seek from CDK in Interrogatories 4, 7, and 10 is relevant to a claim or defense in this case, though, it is only marginally relevant at best. Assuming the interrogatories seek information that has some marginal relevance, that relevance is outweighed by the burden imposed on CDK to respond to them. The interrogatories seek the identification of "all instances" over a period of almost nine years. The Court agrees with CDK that the information sought is overbroad and burdensome and not proportional to the needs of the case.

In a declaration attached to CDK's opposition, Steven French, CDK Senior Director of Client & Data Services, explains the type of records that would be needed to provide information requested about each instance of access to a non-CDK DMS by DMI or IntegraLink. He states that the information for an almost nine-year period is not maintained in the ordinary course of business. French Decl. [ECF No. 750-1], at ¶¶ 4-8. He also avers that historical data about DMI and IntegraLink's data extraction activities at individual dealers is incomplete. *Id.* at ¶ 6. He further explains that limited information such as the date that DMI or IntegraLink began polling

activities is available for some dealers, but for many others, no information is available at all. *Id.* Based on his review of a sample of records that remain available for several dealers, Mr. French estimated that investigating CDK's records for information responsive to Interrogatory Nos. 4, 7, and 10 and providing responsive information (if any) would take up to one hour per dealer. *Id.* at ¶ 9. At one hour per dealer, it would take thousands of hours for CDK to attempt to respond to Interrogatories Nos. 4, 7, and 10 since DMI and IntegraLink maintained more than 5,000 active polling connections to Reynolds DMSs. *Id.* at ¶ 5.

Dealership Class Plaintiffs/Counter-Defendants do not really dispute what Mr. French states in his affidavit. Instead, they say they have been willing to accept summary responses to the interrogatories, but CDK repeatedly has refused that offer.

Relying on Mr. French's affidavit and the absence of any information in the record to rebut what Mr. French says, the Court agrees with CDK that the burden of responding to Dealership Class Plaintiffs/Counter-Defendants' interrogatories would be substantial, and the Court is not convinced that such effort is proportional or warranted for information that likely will be incomplete and marginally relevant. *See Buchanan v. Chi. Transit Auth.*, 2016 WL 7116591, at *8 (N.D. Ill. Dec. 7, 2016) (denying majority of a motion to compel when the production of the requested documents "implicate[d] hundreds of hours of work with relatively negligible benefit").

It is not clear on the present record, however, if there is some information CDK can provide, whether in a summary response to the three interrogatories at issue or otherwise, in addition to information or documents CDK already has provided or produced in discovery, that would be both responsive to Dealership Class Plaintiffs/Counter-Defendants' interrogatories and not unduly burdensome for CDK to produce. Or perhaps Dealership Class Plaintiffs/Counter-Defendants have discovered information during depositions that took place after the pending Motion was briefed that is responsive to these interrogatories and sufficient for their needs, making the interrogatories that are the subject of the Motion largely moot. The Court does not have sufficient information to evaluate these questions on the present record. At this time, therefore, for all the reasons discussed above, the Court is not prepared to require CDK to answer the three interrogatories addressed in the Motion as they are written. If the Court's ruling does not end the matter, the parties no doubt will talk, and the issue can be raised again by Dealership Class Plaintiffs/Counter-Defendants in a more limited or focused way.

For these reasons, Dealership Class Plaintiffs/Counter-Defendants' Motion to Compel Responses to Interrogatories Nos. 4, 7, and 10 is denied without prejudice.

**B. Interrogatory No. 11**

Interrogatory No. 11 asks CDK to "[i]dentify, for each Dealership Counter-Defendant, all 'losses, expenses and other damages' that CDK allegedly suffered as a result of that Dealership Counter-Defendant's alleged (i) breaches of contract, (ii) violations of the Computer Fraud and Abuse Act, and/or (iii) violations of the Digital Millennium Copyright Act, including the date and amount of each such loss, expense, and other damage." CDK argues that its answer to the damages interrogatory propounded by Dealership Class Plaintiffs/Counter-Defendants is more

fulsome than Dealership Class Plaintiffs/Counter-Defendants' own response to CDK's corresponding interrogatory about damages and, therefore, Dealership Class Plaintiffs/Counter-Defendants are in no position to complain about CDK's interrogatory answer. The "what's good for the goose" standard, however, is not necessarily the standard the Court uses to evaluate the sufficiency of discovery responses. In other words, one party's failure to object does not mean an opposing party cannot object on grounds that would have been equally available to its opponent had the opponent wanted to object.

Both Dealership Class Plaintiffs/Counter-Defendants and CDK seem to acknowledge in their respective answers to the interrogatories relating to damages that each side's damages theories will be the subject of expert testimony and that the damage calculations will be included in the parties' expert reports. On August 26, 2019, CDK served an expert report that apparently addresses the damages associated with CDK's counterclaims against the Dealership Class Plaintiffs/Counter-Defendants. CDK represents that the report sets forth the categories of damages that CDK is seeking and the underlying methodologies used to calculate them based on the information presently available in the record.

It appears CDK now is seeking to recover only statutory damages for the conduct alleged in its counterclaims. Both sides seem to concede this is true. Dealership Class Plaintiffs/Counter-Defendants seem to say CDK still must answer Interrogatory No. 11 if it intends to rely on any other information to compute statutory damages that is not set forth in their expert's report. The Court, though, assumes that CDK has made the appropriate disclosures under Federal Rule of Civil Procedure 26(a)(2) and, if it has not, then the vehicle for addressing that issue may not be a motion to compel a more fulsome response to Interrogatory No. 11.

In any event, as expert discovery unfolds, the Dealership Class Plaintiffs/Counter-Defendants will have (or already have had) the opportunity to review and challenge CDK's damages expert's opinions and methodologies, including by taking his deposition and by having their own experts review his work. Given CDK's expert disclosures, this dispute over the sufficiency of CDK's response to Interrogatory No. 11 likely is entirely moot. *See, e.g., DIRECTV, Inc. v. Pickert*, 2004 WL 2056226, at *2 (N.D. Ill. Sept. 8, 2004) ("[N]ow that plaintiff has filed its Rule 26(a)(2) disclosures on expert witnesses, this issue is moot."). At best, the intervening damages expert disclosures likely means that any dispute about CDK's response to Interrogatory No. 11, if it survives at all, is different and more focused than as presented in the instant Motion.

For these reasons, Dealership Class Plaintiffs/Counter-Defendants' Motion to Compel Responses to Interrogatory No. 11 is denied but without prejudice in case the Court is missing something.

### C. Interrogatory No. 16

In Interrogatory No. 16, the Dealership Class Plaintiffs/Counter-Defendants seek to compel CDK to disclose any costs it incurred relating to a data security incident in 2016 and any remedial measures taken by CDK. However, CDK asserts that it is not claiming the costs

relating to that data security event as damages in this case. CDK presented its damages calculations in its August 26, 2019 expert report. If CDK is not claiming any costs relating to a data security incident in 2016, then the Court does not understand why Dealership Class Plaintiffs/Counter-Defendants are entitled to discovery about those costs. The Court also notes that Dealership Class Plaintiffs/Counter-Defendants are able to test CDK's damages calculations in depositions to identify how CDK is supporting those calculations. Moreover, as noted above, it appears that CDK no longer is seeking any actual damages in this case but only statutory damages.

For these reasons, the Court is not convinced that the discovery sought in Interrogatory No. 16 is relevant and/or proportional at this time. Dealership Class Plaintiffs/Counter-Defendants' Motion to Compel Responses to Interrogatory No. 16, therefore, is denied.

### D. Interrogatory Nos. 17 and 18

Interrogatory No. 17 asks CDK to identify, for each Dealership Class Plaintiff/Counter-Defendant, "all documents that you believe support your counterclaims" against that Dealership Class Plaintiff/Counter Defendant. Similarly, Interrogatory No. 18 asks CDK to identify, for each Dealership Class Plaintiff/Counter-Defendant, "all evidence that you believe support your counterclaims" against that Dealership Class Plaintiff/Counter-Defendant. CDK argues that it should not have to answer these contention interrogatories as they are overbroad, burdensome, and premature contention interrogatories. The Court agrees with CDK that the interrogatories are overbroad and burdensome.

Contention interrogatories are permitted by the Federal Rules of Civil Procedure if other. Federal Rule of Civil Procedure 33(a)(2) provides:

> An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until after designated discovery is complete, or until a pretrial conference or some other time.

FED. R. CIV. P. 33(a)(2). Contention interrogatories are interrogatories "used to elicit a description of the opposing party's theory and proof to be employed." *Tragoszanos v. City of Algoma*, 2011 WL 2650852, at *1 (E.D. Wis. July 6, 2011) (citing *Zenith Electronics v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) ); *Gregg v. Local 305 IBEW*, 2009 WL 1325103, at *6 (N.D. Ind. May 13, 2009) ("Contention interrogatories can be classified as questions asking a party to: indicate what it contends or whether the party makes some specified contention[;] ... state all facts or evidence upon which it bases some specific contention; take a position and apply law and facts in defense of that position; or explain the theory behind some specified contention.") (internal quotation marks omitted); *see also* 7 Moore's Federal Practice - Civil § 33.78 (2019). "The basic premise of a contention interrogatory is to require a party to commit to a position and to give support for that position." *BASF Catalysts LLC v. Aristo, Inc.*, 2009 WL 187808, at *2 (N.D. Ind. Jan. 23, 2009).

As the Rule itself recognizes, contention interrogatories often are most-appropriate

6

toward the close of discovery, or even after the close of discovery, to eliminate the possibility that a plaintiff, or in this case the defendant/counter-plaintiff, has not yet had time to gather the information to support its claim. *See Whitchurch v. Canton Marine Towing Co.*, 2017 WL 1165988, at *2 (C.D. Ill. Mar. 23, 2017) ("Contention interrogatories are often better answered after parties are near the end of discovery because they are better able to give complete responses."). Courts routinely have delayed compelling responses to contention interrogatories until after "considerable discovery." *See Auto Meter Products, Inc. v. Maxima Technologies & Systems, LLC*, 2006 WL 3253636, at *2 (N.D. Ill. Nov. 6, 2006) ("When one party poses contention interrogatories *after considerable discovery*, and the opposing party refuses to answer the interrogatories, courts routinely compel the resisting party to answer the interrogatories") (emphasis added) (citations omitted); *Rusty Jones, Inc. v. Beatrice Co.*, 1990 WL 139145, at *2 (N.D. Ill. Sept. 14, 1990) (same); *S.S. White Burs, Inc. v. Neo-Flo, Inc.*, 2003 WL 21250553, at *1 (E.D.Pa. May 2, 2003) ("At times, courts will postpone to the end of discovery the responses of "contention interrogatories," which ask a party to state all facts and theories upon which it bases a contention, so that the party does not have to articulate theories of its case which are not yet fully developed").

Fact discovery in this case is closed. Expert depositions will be completed by January 31, 2020. So, this is not an inappropriate time for contention interrogatories otherwise proper in substance and form.

As written, however, the contention interrogatories propounded by Dealership Class Plaintiffs/Counter-Defendants are extremely broad in scope. Interrogatories Nos. 17 and 18 do not identify any particular contention or assertion that CDK has made in its counterclaims as to which Dealership Class Plaintiffs/Counter-Defendants seek the supporting information. Instead, they seek the entire universe of "all evidence" and "all documents" supporting CDK's counterclaims. In the Court's view, a contention interrogatory is better directed at a specific contention or claim rather than framed as an all-encompassing and broad request to identify *all* evidence and documents that support all of an opposing party's claims. Context matters, of course, and the immediately preceding statement is particularly true in this case in which more than 1.75 million documents have been produced and more than 80 witnesses have been deposed. Viewed in this context, in the Court's view, Dealership Class Plaintiffs/Counter-Defendants' interrogatories are overbroad and unduly burdensome.

For the avoidance of doubt, this ruling should not be interpreted as saying that contention interrogatories are not or never will be appropriate in this case. The Court's issue is with the interrogatories that are the subject of the instant Motion. As propounded by Dealership Class Plaintiffs/Counter-Defendants, the interrogatories that are the subject of this Motion are not, in the Court's view, a proportional use of Federal Rule of Civil Procedure 33.

For these reasons, Dealership Class Plaintiffs/Counter-Defendants' Motion to Compel Responses to Interrogatories Nos. 17 and 18 is denied.

## IV. Conclusion

For all the reasons discussed above, Dealership Counter-Defendants' Motion to Compel Responses to Interrogatories [ECF No. 740] is denied, in two instances without prejudice.

It is so ordered.

Dated: December 3, 2019

Jeffrey T. Gilbert
Unites States Magistrate Judge