# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION, MDL 2817 ) ) ) _____ ) ) This document relates to: ) ) i3 Brands, Inc. et al. v. CDK Global, LLC, et al., ) No. 1:19-cv-1412 ) | Case No. 18-cv-864<br><br>Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Reynolds and Reynolds' motion to dismiss in favor of arbitration or in the alternative to dismiss under Rule 12(b)(6) [601]. Also before the Court is Defendant CDK's motion to stay [605]. For the reasons stated below, the Court finds that Plaintiffs and Reynolds delegated to an arbitrator the question of arbitrability of Plaintiffs' claims against Reynolds. Reynolds' motion to dismiss [601] is denied without prejudice at this time, but Plaintiffs' claims against Reynolds are stayed pending the outcome of arbitration. The Court also grants CDK's motion [605] to stay. This case is set for further status on March 9, 2020, at 10:00 a.m. At least three days prior to the status, the parties are instructed to file a joint status report updating the Court on the parties' agreement (or lack thereof) regarding the location of the arbitration. The parties are also instructed to file a joint status report within 7 days after the arbitrator issues a final decision, after which the Court will set this case for a further status hearing.

I. **Background**[1]

The Court has recounted the background of this case in numerous orders and recites here only the facts relevant to resolving the pending motions. Defendants CDK Global, LLC ("CDK") and Reynolds and Reynolds Company ("Reynolds") provide Dealer Management System ("DMS") software and services to automobile dealerships throughout the United States, including in Illinois. [828] at ¶¶ 17-18.[2] In addition to providing DMS services, CDK and Reynolds also provide data integration services ("DIS") indirectly to dealerships throughout the United States, including in Illinois. *Id*. Plaintiff i3 Brands is a technology-based corporation that has developed a portfolio of entities specializing in software and data-driven solutions in the automotive industry. *Id.* at ¶ 13. Plaintiff PartProtection is a wholly owned subsidiary of i3 Brands that created and sells a point-of-sale product that allows motorists to extend the warranty coverage for the Original Equipment Manufacturer ("OEM") parts on their cars. *Id.* at ¶ 14. i3 Brands is the current owner of Plaintiff PartProtection, LLC, and the former owner of TradeMotion, LLC and Parts.com (two automotive software businesses) and the trade name "PartShield," all of which i3 Brands sold to Reynolds in April 2017. *Id*. at ¶¶ 15-17. Plaintiffs bring this action against Defendants CDK and Reynolds for alleged violations of the Sherman Act and state antitrust and consumer protection laws, and for tortious interference with prospective economic advantage. *Id*. at ¶¶ 39-44. Plaintiffs allege that Defendants unlawfully colluded and conspired to restrain and/or eliminate competition

---

[1] For the purposes of this motion to dismiss, the Court accepts as true all of Plaintiffs' well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

[2] Plaintiffs' complaint was initially filed as Docket No. [1] in the individual case docket for 19-cv-01412. That case was later transferred to this Court as part of the MDL (Master Case No. 18-cv-864). After briefing on motions to dismiss was completed and filed on the MDL docket, the parties agreed that certain claims would be moved to a pending matter in the Southern District of Texas. See [823]. The parties stood on their motion to dismiss briefing on the remaining claims. Plaintiffs then filed on the MDL docket a first amended complaint [828], which contains only the remaining claims and from which the Court draws many of the operative facts.

by charging supracompetitive prices in the markets for DMS software services and DIS. Plaintiffs also allege that Reynolds' actions in particular caused the value of TradeMotion, Parts.com, and the trade name "PartShield" to drop before Reynolds purchased them from i3 Brands in 2017. *Id*. at ¶ 8-12.

Reynolds argues that arbitration clauses in three contracts require arbitration of Plaintiffs' claims.[3] The first contract is the Reynolds Interface Agreement, through which PartProtection joined Reynolds' Certified Interface ("RCI") program and was granted access to Reynolds' DMS. The arbitration provision in PartProtection's Reynolds Interface Agreement provides, in relevant part, that:

> [A]ny dispute, claim, question or disagreement arising from or relating to this Agreement or the alleged breach thereof * * * shall be finally settled by binding arbitration, before a single arbitrator, administered by the American Arbitration Association * * * in accordance with the provisions of its Commercial Arbitration Rules. The location where the arbitration will be held, the individual who will serve as the arbitrator, and the rules under which the arbitration will be conducted will be determined by mutual agreement of the parties. If the parties are unable to agree on any such matters, then those matters upon which the parties are unable to agree will be determined by the AAA in its sole and absolute discretion.

[602-2] at 17-18.

Second, the Asset Purchase Agreement through which Reynolds acquired i3 Brands's TradeMotion and Parts.com business lines and "PartShield" trade name in 2017 contained an arbitration clause, which provides that:

> In the event of any dispute, claim, or disagreement arising out of, connected with, or relating in any way to this Agreement (including its negotiation, performance, non-performance, interpretation, termination or breach, or the relationship between

---

[3] "When ruling on a motion to dismiss, the court may consider 'documents * * * attached to the complaint, documents * * * central to the complaint and * * * referred to in it, and information that is properly subject to judicial notice.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). The Reynolds Interface Agreement and the Reseller Agreement are attached to, referred to, and central to the complaint. The Asset Purchase Agreement is not attached to the complaint, but it is referred to and central to the complaint. *E.g.* [828] at ¶15-17, 109-116. Therefore, it is appropriate for the Court to consider these documents.

3

the Parties established by this Agreement) (a "*Dispute*"), then either Party may submit the Dispute to binding arbitration administered by the American Arbitration Association ("*AAA*") in accordance with the provisions of its Commercial Arbitration Rules then currently in effect (the "*AAA Rules*") * * *.

[602-3] at 41.

Third, the Reseller Agreement by which Reynolds remarketed TradeMotion's product prior to Reynolds' acquisition of that business contains an arbitration clause, which provides that:

[U]pon notice by either party to the other, all such disputes, claims, questions or disagreements shall be finally settled by binding arbitration, before a single arbitrator, administered by the American Arbitration Association * * * in accordance with the rules and provisions of American Arbitration Association.

[827-3] at 14.

In light of these provisions, Reynolds has filed a motion to dismiss in favor of arbitration, or in the alternative, to dismiss under Rule 12(b)(6). See [601]. CDK has filed a motion to stay the proceedings against it while the claims against Reynolds are being arbitrated, or in the alternative, to dismiss certain claims against CDK. See [605].

## II. Legal Standard

The FAA governs questions of arbitrability in both federal and state courts. *Jain v. de Mere,* 51 F.3d 686, 688 (7th Cir. 1995). The FAA reflects a "liberal federal policy favoring arbitration," *AT & T Mobility LLC v. Concepcion,* 131 S.Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)), and operates to place arbitration agreements on the same footing as other contracts and ensure that courts enforce agreements to arbitrate, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, (1991); *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 219–20 (1985). Section 2 of the FAA provides that an arbitration clause in "a contract evidencing a transaction involving commerce * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

4

of any contract." 9 U.S.C. § 2. Courts are to uphold and enforce applicable arbitration agreements according to their terms unless they are invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Concepcion,* 131 S.Ct. at 1746 (quoting *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687 (1996)).

When parties have signed an arbitration agreement, the only questions a court may properly decide are threshold questions of substantive arbitrability: whether the parties agreed to arbitrate a particular issue. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002). These threshold questions of substantive arbitrability include: (1) whether the parties are bound by a given arbitration agreement; and (2) whether an arbitration provision in a binding contract applies to a particular type of controversy. *Id.* at 84. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at 24–25.

The FAA permits a federal district court to compel arbitration when there is: (1) a written agreement to arbitrate; (2) a dispute covered by or within the scope of a valid arbitration agreement; and (3) a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 687 (7th Cir. 2005). Parties may only be compelled to arbitrate those issues they have agreed to arbitrate. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.,* 174 F.3d 907, 909 (7th Cir.1999) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960)). If the Court is satisfied that the parties agreed to arbitrate the issues presented, it must promptly compel arbitration. 9 U.S.C. § 4. The party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration. See *Green Tree Fin. Corp.–Ala. v. Randolph,* 531 U.S. 79, 91–92 (2000). Once a court is satisfied with its determination that the parties have agreed to

arbitrate the issues at hand, the court must compel arbitration and "shall on application of one of the parties stay the trial of action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. A request for arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am.,* 363 U.S. at 582–83.

**III.    Analysis**

    **A.    Arbitrability of Arbitrability**

Reynolds argues that all Plaintiffs signed arbitration agreements that delegate arbitrability issues to an arbitrator. Specifically, Plaintiff PartProtection signed the Reynolds Interface Agreement; Plaintiff i3 Brands signed the Asset Purchase Agreement; and TradeMotion—at the time a subsidiary of i3 Brands—signed the Reseller Agreement. Each of these contracts contains an arbitration clause that incorporates the rules and provisions of the American Arbitration Association ("AAA"), which delegate arbitrability questions to the arbitrator. AAA Rule R–7(a).[4] Reynolds argues that the incorporation of the AAA Rules is clear and unmistakable evidence of the parties' intent to delegate the issue of arbitrability to an arbitrator. Plaintiff i3 Brands appears to concede this point. See [678] at 16 fn. 3 ("Although i3 Brands does not dispute Reynolds' argument concerning delegation of the arbitrability issue, * * *."). Plaintiff PartProtection, by contrast, argues that the Reynolds Interface Agreement—the only relevant contract to which it is a signatory—is ambiguous as to whether it incorporates the AAA Rules, because the provision

---

[4] Rule 7 of the AAA Commercial Arbitration Rules states, with respect to jurisdiction, that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." AAA Rule R–7(a). Available at https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (last accessed February 20, 2020).

6

mentioning the rules also contains the clause "the rules under which the arbitration will be conducted will be determined by mutual agreement of the parties." [602-2] at 17-18.

The arbitration provision in PartProtection's Reynolds Interface Agreement at issue here provides that:

> [A]ny dispute, claim, question or disagreement arising from or relating to this Agreement or the alleged breach thereof * * * shall be finally settled by binding arbitration, before a single arbitrator, administered by the American Arbitration Association * * * in accordance with the provisions of its Commercial Arbitration Rules. The location where the arbitration will be held, the individual who will serve as the arbitrator, and the rules under which the arbitration will be conducted will be determined by mutual agreement of the parties. If the parties are unable to agree on any such matters, then those matters upon which the parties are unable to agree will be determined by the AAA in its sole and absolute discretion.

[602-2] at 17-18.

In contracts governed by the FAA, the threshold question of "whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability," is generally to be decided by the court, not the arbitrator, "unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83, (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, (1986); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)) (internal quotation marks omitted). "[W]here the parties agree to arbitration pursuant to the rules of the American Arbitration Association ("AAA"), the parties incorporate the AAA's rules into the arbitration agreement." *Dunston v. R.H. Love Galleries, Inc.,* 2008 WL 2339564, at *2 (N.D. Ill. Jun. 4, 2008) (citing *Commonwealth Edison Co. v. Gulf Oil Corp.,* 541 F.2d 1263, 1272 (7th Cir. 1976)). While the Supreme Court has not resolved whether incorporation of the AAA Rules constitutes "clear and unmistakable" evidence that the parties intended the question of arbitrability to be decided by an arbitrator, several circuits that have considered the issue have drawn this conclusion. See, *e.g.*, *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1283 (10th Cir. 2017) ("[A]ll of

7

our sister circuits to address the issue have unanimously concluded that incorporation of the * * * AAA Rules constitutes clear and unmistakable evidence of an agreement to arbitrate arbitrability."); *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 263 (5th Cir. 2014) (finding, based on incorporation of AAA rules into arbitration agreement, "there is clear and unmistakable evidence that the parties to the Provider Agreement agreed to arbitrate arbitrability, and so we conclude that whether the Plaintiffs' claims are subject to arbitration must be decided in the first instance by the arbitrator, not a court"); *Fallo v. High–Tech Inst.,* 559 F.3d 874, 878 (8th Cir. 2009) ("Consequently, we conclude that the arbitration provision's incorporation of the AAA Rules * * * constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Qualcomm Inc. v. Nokia Corp.,* 466 F.3d 1366, 1373 (Fed. Cir. 2006) abrogated on other grounds by *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524 (2019); *Contec Corp. v. Remote Solution, Co.,* 398 F.3d 205, 208 (2d Cir. 2005); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship,* 432 F.3d 1327, 1332 (11th Cir. 2005); see also *Haire v. Smith, Currie & Hancock LLP,* 925 F.Supp.2d 126, 132 (D.D.C. 2013) (collecting federal appellate and district court cases).

"Although the Seventh Circuit has not specifically addressed whether a delegation clause can be incorporated by reference, it long ago held that an 'agreement of the parties to have any arbitration governed by the rules of the AAA incorporate[s] those rules into the agreement.'" *Ali v. Vehi-Ship, LLC*, 2017 WL 5890876, at *3 (N.D. Ill. Nov. 27, 2017) (quoting *Commonwealth Edison Co.*, 541 F.2d at 1272). Additionally, other courts in this district have agreed with the consensus in other circuits that incorporation of AAA Rules delegates arbitrability decisions to the arbitrator. See *Corrigan v. Domestic Linen Supply Co.,* 2012 WL 2977262, at *2 (N.D. Ill. July 20, 2012) ("[W]hen parties agree in a valid arbitration agreement that the AAA's rules apply, an

arbitrator should decide the scope of arbitrability." (citing *Bayer CropScience, Inc. v. Limagrain Genetics Corp., Inc.*, 2004 WL 2931284, at *4 (N.D. Ill. Dec. 9, 2004)); *Yellow Cab Affiliation, Inc. v. N.H. Ins. Co.*, 2011 WL 307617, at *4 (N.D. Ill. Jan. 28, 2011) ("[T]he Court finds that by specifically incorporating the Commercial Arbitration Rules of the American Arbitration Association into their agreement, the parties clearly and unmistakably evidenced their intention to grant the arbitrator the authority to determine whether their dispute is arbitrable."); see also *Ali v. Vehi-Ship, LLC*, 2017 WL 5890876, at *4 (N.D. Ill. Nov. 27, 2017) ("Because the AAA Rules were incorporated by reference into the Agreement, the parties intended to arbitrate gateway arbitrability issues."); *Williams-Bell v. Perry Johnson Registars, Inc.*, 2015 WL 6741819, at *6 (N.D. Ill. Jan. 8, 2015) (finding that an arbitrator should determine arbitrability in part because the arbitration agreement incorporated the AAA Rules); *Wal-Mart Stores, Inc. v. Helferich Patent Licensing, LLC*, 51 F. Supp. 3d 713, 719–20 (N.D. Ill. 2014) ("by incorporating the AAA Rules, including Rule 7(a), into the arbitration provision, [the parties] clearly and unmistakably agreed to have an arbitrator decide whether they agreed to arbitrate Plaintiff's disputes"); *Price v. NCR Corp.*, 908 F.Supp.2d 935, 945 (N.D. Ill. 2012) (holding that by adopting the AAA Rules in their arbitration agreement, the parties agreed that an arbitrator would determine whether the agreement authorized class arbitration).

The Court finds that all three relevant contracts incorporate the AAA Rules, which, under the majority rule, constitutes "clear and unmistakable" evidence that the parties intended the question of arbitrability to be decided by an arbitrator. As noted above, i3 Brands appears to concede this point. PartProtection does not. PartProtection argues that the arbitration provision in its Reynolds Interface Agreement is ambiguous because one sentence incorporates the AAA Rules, but the next sentence says that "the rules under which the arbitration will be conducted will

9

be determined by mutual agreement of the parties." [602-2] at 17-18. According to PartProtection, this contradiction means the contract does not contain clear and unmistakable evidence of delegation of arbitrability to the arbitrator. Reynolds counters that the allegedly contradictory line is a gap filler, meaning that the arbitration provision incorporates the AAA Rules, and for any matters not addressed by those Rules, the parties will agree on what rules to apply.

Reynolds has the better argument, for two reasons. First, its interpretation makes more sense in context of the arbitration provision as a whole. The first three sentences of the provision establish that any disputes arising out of the Reynolds Interface Agreement that the parties cannot settle themselves will be settled by an AAA arbitrator in accordance with the AAA Rules. [602-2] at 17. The next sentence (the one PartProtection relies on) says that three things will be determined by mutual agreement of the parties: the location of arbitration, the person who will serve as arbitrator, and "the rules under which the arbitration will be conducted." *Id.* The *next* sentence states that "[i]f the parties are unable to agree on any such matters, then those matters…will be determined by the AAA in its sole and absolute discretion." *Id.* at 17-18. In short, if the parties disagree on any issues not already delegated to AAA arbitration, then the parties agree to have the AAA resolve that disagreement. That final sentence helps clarify the parties' intent and harmonizes any apparent contradiction between the two preceding sentences. Read as a whole, the arbitration provision is not ambiguous and demonstrates the parties' intent to have disagreements related to the contract—any disagreements, including arbitrability—arbitrated by the AAA.

Second, in the absence of Seventh Circuit precedent directly on point, the Court finds persuasive the prevailing view of the other circuits that incorporation of arbitration rules sets them as a default, even if the parties can agree to change or make specific choices about the rules later.

See, *e.g.*, *Belnap*, 844 F.3d at 1281-82 (finding that parties agreed to arbitrate arbitrability when the arbitration agreement incorporated the Judicial Arbitration and Mediation Services ("JAMS") Rules, when it also stated that arbitration would be "in accordance with the rules of JAMS * * * *or another suitable dispute resolution service*") (emphasis in original); *Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 942 (E.D. Tenn. 2017) (language requiring the arbitrator to follow either AAA Rules or National Arbitration Forum ("NAF") Rules "clearly and unmistakably delegated issues of arbitrability to the arbitrator"); *Laumann v. Nat'l Hockey League*, 989 F. Supp. 2d 329, 335 (S.D.N.Y. 2013) (agreement delegates arbitrability question to arbitrator when it "permit[s] the party initiating arbitration to choose between the rules of the AAA and the rules of the [NAF]"); *Cernohorsky v. Career Educ. Corp.*, 2013 WL 3287070, at *2 (M.D. Fla. June 28, 2013) (parties agreed to arbitrate arbitrability when the arbitration agreement contained a provision stating that AAA Rules applied "[u]nless the parties agree to an alternative"); *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526, at *4 (S.D. Fla. Mar. 7, 2013) (parties intended to delegate arbitrability to arbitrator with a provision calling for arbitration under AAA Rules, JAMS Rules, or by agreement another organization's rules); *Howard v. Rent-A-Ctr., Inc.*, 2010 WL 3009515, at *3–4 & n.1 (E.D. Tenn. July 28, 2010) (parties delegated arbitrability by agreeing that "any arbitration shall be in accordance with the then-current National Employment Arbitration Procedures of the AAA or equivalent (if AAA is designated), the then-current JAMS Employment Arbitration Rules or equivalent (if JAMS is designated), the then-current NAF Code of Procedure (if NAF is designated), *or the applicable rules of any other service to which the parties mutually agree*.") (emphasis added).

Each of these cases involved an arbitration provision that mentioned more than one set of arbitration rules or allowed parties to agree on or change rules at a later date. None of the courts

considering these provisions found them ambiguous; rather, the courts found them to be effective incorporations of arbitration rules that clearly expressed the parties' intent to delegate questions of arbitrability to an arbitrator. That is the best reading of the Reynolds Interface Agreement as well. In sum, the Court finds that the PartProtection's Reynolds Interface Agreement incorporates the AAA Rules and that the incorporation is clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to an arbitrator.

### B. Reynolds' Motion to Dismiss

Section 4 of the Federal Arbitration Act provides that if arbitration is proper, a "court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. Interpreting this provision, the Seventh Circuit has concluded that "where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995) (emphasis added). In other words, "[w]e cannot compel arbitration in a forum outside the Northern District of Illinois." *Ferenc v. Brenner*, 927 F.Supp.2d 537, 542 (N.D.Ill. 2013) (citing *Merrill Lynch*, 49 F.3d at 327). Normally, when arbitration is dictated, a court compels arbitration in that district and stays the court proceeding. 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration * * * the court in which such suit is pending * * * shall on application of one of the parties stay the trial of the action until such arbitration has been had * * *."). But when a court is presented with a motion to compel arbitration in a *different* district, the proper action is to dismiss the complaint for improper venue under Rule 12(b)(3). See *Ferenc*, 927 F.Supp.2d at 542 (holding that claims were subject to

arbitration and converting the motion to compel into a motion to dismiss for improper venue because the contract mandated arbitration in California); *Faulkenberg*, 637 F.3d at 808 ("under § 4 of the FAA, a district court cannot compel arbitration outside the confines of its district"); *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009) ("When a complaint requesting arbitration is filed in the wrong forum, the appropriate response is for the opposing party to file a motion to dismiss, which should then be granted by the court.").

Reynolds has not yet brought a motion to compel. The motion before the Court seeks "*dismissal* in favor of arbitration." See [602] (emphasis added). Requesting dismissal suggests that Reynolds believes arbitration ought to be in another district, but that is not entirely clear. The Asset Purchase Agreement states that arbitration shall be held in Houston, Texas, unless the parties agree on another location ([602-3] at 41); the Reynolds Interface Agreement says that the location of the arbitration will be determined by mutual agreement of the parties ([602-2] at 17); and the Reseller Agreement does not specify a location for arbitration (see [827-3] at 14-15). Therefore, it is not clear whether the Court should order arbitration in the Northern District of Illinois or should dismiss the complaint for improper venue under Rule 12(b)(3). In order to give the parties time to reach agreement on the location of arbitration, or move to compel arbitration and brief the venue issue if necessary, the Court will stay Plaintiffs' case against Reynolds.[5] See *Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.,* 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a [9 U.S.C.] § 3 stay is mandatory.") (citing *Shearson/Am. Exp., Inc. v. McMahon,* 482 U.S. 220, 226 (1987)).

C. **CDK's Motion to Stay**

---

[5] Furthermore, in the context of an MDL and where the issue to be arbitrated is the threshold question of arbitrability, a stay may be more appropriate than dismissal anyway.

CDK's motion to stay is granted as well, pending the outcome of arbitration. Courts stay non-arbitrable issue along with arbitrable issues when proceeding on the non-arbitrable issues risks "inconsistent rulings because the pending arbitration is likely to resolve issues material to [the] lawsuit." *Volkswagen Of Am., Inc.*, 474 F.3d at 972 (internal quotation omitted). The factors that bear on this inquiry include "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." *Id.* Here, the risk of inconsistent rulings is significant. CDK and Reynolds are alleged to have colluded, and if the Court addresses the CDK half of the allegations now and an arbitrator later addresses the Reynolds half of the allegations, an earlier ruling by the Court might taint the arbitration process or simply produce a different result. Furthermore, proceeding on the claims against CDK at this time may be an inefficient use of the Court's resources. If the Court addresses claims against CDK now and has to address claims against Reynolds later,[6] the Court would end up duplicating work, when it could avoid that problem simply by staying the claims against CDK while the arbitrability of claims against Reynolds is arbitrated. Plaintiffs did not argue they would experience any prejudice from a stay, and because the issue to be arbitrated is at this point narrow, the Court expects the delay to be modest and unlikely to be seriously prejudicial.

## IV. Conclusion

For the reasons stated above, the Court finds that Plaintiffs and Reynolds delegated to an arbitrator the question of arbitrability of Plaintiffs' claims against Reynolds. Reynolds' motion to dismiss [601] is denied without prejudice at this time, but Plaintiffs' claims against Reynolds are stayed pending the outcome of arbitration. The Court also grants CDK's motion [605] to stay.

---

[6] It may be that Plaintiffs' claims against Reynolds are not arbitrable—the Court expresses no opinion on that question and leaves its resolution to an arbitrator for now—in which case the claims would presumably return to this Court.

14

This case is set for further status on March 9, 2020, at 10:00 a.m. At least three days prior to the status, the parties are instructed to file a joint status report updating the Court on the parties' agreement (or lack thereof) regarding the location of the arbitration. The parties are also instructed to file a joint status report within 7 days after the arbitrator issues a final decision, after which the Court will set this case for a further status hearing.

Date: February 20, 2020

_____
Robert M. Dow, Jr.
United States District Judge