**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |
| ALL CASES | **PUBLIC VERSION - REDACTED** |

**MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD M. STROZ**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 2

DISCUSSION ...................................................................................................................... 3

    I.       Mr. Stroz's Calculations of Alleged DMCA Violations Should Be Stricken.............. 3

        A.       Mr. Stroz's Yes/No Prompt Calculations Are Not Reliable ................................. 3

            1.    Mr. Stroz Lacks the Requisite Expertise To Perform Statistical Extrapolations .... 4

            2.    Mr. Stroz's Samples Are Not Representative. ....................................................... 5

            3.    Mr. Stroz Does Not Provide Standard Errors for His Calculations ...................... 9

            4.    Mr. Stroz's Analysis of Sampled Data Does Not Fit the Facts ........................... 11

        B.       Mr. Stroz's Profile Manager Calculations Are Not Reliable ............................... 13

            1.    Mr. Stroz Lacks Expertise To Perform Statistical Extrapolation and Failed to Use

                 Reliable Statistical Methods ............................................................................ 14

            2.    Mr. Stroz's Analysis of Profile Manager Data Does Not Fit the Facts ............... 17

            3.    Mr. Stroz Fails To Attribute "Violations" to Dealer Counter-Defendants .......... 19

            4.    The Number of Times Profile Manager "Launched" Is Irrelevant ...................... 19

        C.       Mr. Stroz's CAPTCHA Calculations Are Not Reliable ...................................... 19

            1.    Mr. Stroz Lacks Relevant Expertise and Has No Method To Identify Queries ... 20

            2.    Mr. Stroz's Query Analysis Is Unsupported and Relies on CDK's Tagging ....... 21

            3.    Mr. Stroz Fails To Attribute CAPTCHA Use to Dealer Counter-Defendants. .... 23

    II.      Several of Mr. Stroz's Cybersecurity Opinions Should Be Stricken.......................... 23

i

A.  Mr. Stroz's Opinion on the Security of APIs Is Not Supported ........................... 23

B.  Mr. Stroz's List of "Proprietary" Data Fields Merely Parrots CDK Testimony .. 24

C.  Mr. Stroz's Legal Conclusions Should Be Excluded ............................................ 25

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Allgood v. General Motors Corp.*, 2006 WL 2669337 (S.D. Ind. Sept. 18, 2006)...............6, 7, 14

*Biondo v. City of Chi.*, 2002 WL 1160948 (N.D. Ill. May 31, 2002) .............................................9

*Bone Care Int'l LLC v. Pentech Pharm., Inc.*, 2010 WL 3928598
    (N.D. Ill. Oct. 1, 2010)........................................................................................... 2-3, 10

*Caraker v. Sandoz Pharm. Corp.*, 188 F. Supp. 2d 1026 (S.D. Ill. 2001) ....................................18

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999) ...................................................................7

*Cooper v. Meritor, Inc.*, 2019 WL 545263 (N.D. Miss. Feb. 11, 2019)........................................19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)...........................1, 2, 15, 21

*DeKoven v. Plaza Assocs.*, 599 F.3d 578 (7th Cir. 2010).............................................................6

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013)...............................................6

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870 (E.D. Wis. 2010) ...........................24

*Farmer v. DirectSat USA, LLC*, 2013 WL 1195651 (N.D. Ill. Mar. 22, 2013)..............................9

*Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010) ..........................................................................5

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)...................................................................5, 21

*Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, 2003 WL 1797844
    (N.D. Ill. Apr. 3, 2003) ..................................................................................................6

*Howard v. Bosch Thermotech. Corp.*, 2018 WL 2087259 (E.D. Mo. May 4, 2018) ...................16

*King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, 2009 WL 3187685
    (S.D. Ind. Sept. 29, 2009) .............................................................................................24

*Kinnison v. City of San Antonio*, 2009 WL 3768442 (W.D. Tex. Nov. 5, 2009) .........................19

*LIBOR-Based Fin. Instruments Antitrust Litig.*, *In re*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018) .....16

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005) ..........21, 23

*MDG Int'l, Inc. v. Australian Gold, Inc.*, 2009 WL 1916728 (S.D. Ind. June 29, 2009)..............22

*Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 238 F. Supp. 2d 1024 (N.D. Ill. 2003),
    *aff'd*, 354 F.3d 661 (7th Cir. 2004) ..................................................................................15

*Motor Fuel Temp. Sales Prac. Litig.*, *In re*, 2012 WL 3611010 (D. Kan. Aug. 22, 2012) ............25

*Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275 (N.D. Fla. 2017) ...............................................12

*Owens v. Auxilium Pharm., Inc.*, 895 F.3d 971 (7th Cir. 2018) ......................................................11

*RLJCS Enters., Inc. v. Professional Benefit Trust Multiple Emp'r Welfare
    Benefit Plan & Trust*, 487 F.3d 494 (7th Cir. 2007) .........................................................25

*Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984 (N.D. Ill. 2014) ....................................16

*Trugreen Cos. v. Scotts Lawn Serv.*, 508 F. Supp. 2d 937 (D. Utah 2007) ....................................19

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*,
    313 F. Supp. 2d 213 (S.D.N.Y. 2004) ...............................................................................7

*United States v. Brownlee*, 744 F.3d 479 (7th Cir. 2014) ...............................................................24

*United States v. Mamah*, 332 F.3d 475 (7th Cir. 2003) ..................................................................21

*United States v. Mikos*, 2003 WL 22922197 (N.D. Ill. Dec. 9, 2003) ..............................................8

*Van v. Ford Motor Co.*, 332 F.R.D. 249 (N.D. Ill. 2019) ...............................................................25

*Walker v. Soo Line R.R. Co.*, 208 F.3d 581 (7th Cir. 2000) ...........................................................18

*Wendler & Ezra, P.C. v. American Int'l Grp., Inc.*, 521 F.3d 790 (7th Cir. 2008) .......................24

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416 (7th Cir. 2005) ..........................10, 23

*ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254 (3d Cir. 2012) .....................................................23

**STATUTE AND RULE**

Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* ...........................1, 2, 3, 13, 14, 19, 21

Fed. R. Evid. 702 .....................................................................................................................5, 11

**OTHER MATERIAL**

A. Colin Cameron & Douglas L. Miller, *A Practitioner's Guide to Cluster-Robust Inference*, 50 J. of Human Resources 317 (2015)............................................................11

Federal Judicial Center, *Reference Manual on Scientific Evidence* (3d ed. 2011)........4, 5, 6, 9, 16

## INTRODUCTION

Edward Stroz, a security consultant, seeks to offer expert opinions on two main subjects:

(1) ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ (2) ████████████████████████████████████████████████████████

████████████████████████████████████████████████ Ex. A, Stroz Opening Rep. ("Rep.") ¶ 7.

Both sets of opinions suffer from numerous methodological and other flaws that make them

inadmissible under *Daubert* and the Federal Rules of Evidence.

Mr. Stroz's calculations of alleged DMCA violations should be excluded in their entirety.

His calculations about CDK's "Yes/No" login prompt and the Profile Manager software require

Mr. Stroz to extrapolate from limited data samples to draw conclusions about the total number of

purported DMCA violations.  But as Mr. Stroz readily conceded at his deposition, ███████████

████████████████████████████████████████████ Not surprisingly, he failed to perform the

most basic statistical tests: an analysis of his samples' representativeness and standard error

measurements that quantify the precision of his estimates.  Because the samples underlying Mr.

Stroz's opinions are not representative, █████████████, and because they are based on evidence

that he misinterpreted, they are not a reliable estimate of the total number of alleged violations.

Mr. Stroz's calculations of CAPTCHA responses must also be excluded because they are

premised on an unreliable and unvalidated methodology, ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Several of the cybersecurity opinions disclosed by Mr. Stroz are likewise inadmissible.

First, Mr. Stroz failed to provide any support for his opinion that ████████████████████████

1

███████████████████████████████████████████ Second, Mr. Stroz parrots

████████████████████████████ without any analysis.  Finally, he improperly

attempts to offer legal opinions ███████████████████████████████████████

███████████████████ All of these "opinions" should be excluded.

## BACKGROUND

Mr. Stroz is the co-president of Stroz Friedberg, an investigations, security, and risk

management firm.  Rep. ¶ 2. ████████████████████████████████████████



██ ████████ ██ █████████ ██ ████████ ██ ███████ ███████

████████████ [1]  *See* Rep. ¶ C2. █████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████ *See* Ex. B, Rubinfeld CDK Rep. ¶ 78.  Additionally,

Mr. Stroz opines on topics such as ██████████████████████████████████

████████████████████████████████████████████████████████

██████████ Rep. ¶ 9.

## LEGAL STANDARD

In ruling on a *Daubert* motion, "the Court must consider whether the proposed [expert]

witness (1) is qualified to offer opinion testimony under Rule 702, (2) has employed a reliable

methodology, (3) proposes to offer opinions that follow rationally from the application of his

'knowledge, skill, experience, training, or education,' and (4) presents testimony on a matter that

is relevant to the case at hand, and thus helpful to the trier of fact."  *Bone Care Int'l LLC v. Pentech*

---

[1] The "Continental Counter-Defendants" ███████████████████████ actually consist of eight distinct
Continental dealerships named as separate counter-defendants, and the "Warrensburg Counter-Defendants"
consist of three distinct Warrensburg dealerships named as separate counter-defendants. *See* Rep. ¶ C2 n.1.
Citations to Appendix C of the Stroz Opening Report are designated with a "C" before the paragraph
number (*e.g.*, "¶ C2" refers to "Rep. App'x C, ¶ 2").

*Pharm., Inc.*, 2010 WL 3928598, at *1 (N.D. Ill. Oct. 1, 2010). The party putting forward the expert has the burden of demonstrating that these legal standards are satisfied. *See id.*

## DISCUSSION

I.    **Mr. Stroz's Calculations of Alleged DMCA Violations Should Be Stricken**

      **A. Mr. Stroz's Yes/No Prompt Calculations Are Not Reliable**

Mr. Stroz attempts to calculate ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.* ¶ C33. First, Mr.

Stroz estimated how often, on average, ████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ *Id.*

¶ C31, C33-35; Ex. C, Stroz Dep. ("Dep.") 83:14-24. ███████████████████

█████████████████████████████████████████████████████████ Rep. ¶ C34.

      Second, Mr. Stroz estimated ████████████████████████████████████

█████████████████████████████████████████████████████ *Id.* ¶ C34.

He did this by relying on ████████████████████████████████████████████

███████████████████████████████ *Id.* n. 20. ███████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████ *See id.* ███████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ *Id.* ¶ C34.

3

Third, ███████████████████████████████████████████████

█████████████████████████████████████████████ *Id.* ¶¶ C34-35. ████

████████████████████████████████████████████████████████

### 1.     Mr. Stroz Lacks the Requisite Expertise To Perform Statistical Extrapolations

Mr.  Stroz ████████████████████████████████████████████████

████████████████████████████████████ *Id.* ¶ C33. ████████████████

████████████████████████████████████████████████████████

████████████████████.[2] ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*See* Ex. E, Federal Judicial Center, *Reference Manual on Scientific Evidence* 241 (3d ed. 2011) ("Ref. Manual") ("Statistical inferences often depend on the validity of statistical models . . . .  If the model breaks down, that will bias the analysis."); *id.* at 483 ("Unless the expert is a trained statistician, the expert should seek outside help in designing the sampling plan.").  Mr. Stroz

████████████████████████████████████████████████████████

████ Dep. 23:15-16. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████ *id.* 21:24-22:16, 23:9-12, ████████████████████████

*id.* 23:5-8. ████████████████████████████████████████████

████████████ *Id.* 28:12-24. ████████████████████████████████

████████████████████████ *Id.* 28:25-29:6. ████████████████

███████████████████████████████████████████████████████

---

[2] *See* Ex. D, O'Brien Rep. ("O'Brien Rep.") ¶ 20 n.19 ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ *Id.* 89:4-8. ████████████████████

███████████████████████████████████████████████████████

████████████ *see* Ex. F, Rubinfeld Reply Rep. ¶ 16, ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Dep. 90:12-24. Mr. Stroz is also unfamiliar with basic statistical terms and concepts; for example,

when asked if he agreed that extrapolations or forecasts can create uncertainty, ███████████████

████████████████████████████████████ *Id.* 89:23-90:8.[3]

Although "[t]*rained experts* commonly extrapolate from existing data," *General Elec. Co.*

*v. Joiner*, 522 U.S. 136, 146 (1997) (emphasis added), Mr. Stroz lacks the requisite training. He

has no "knowledge, skill, experience, training, or education" in statistics, Fed. R. Evid. 702, thus

he is not qualified to offer expert testimony on extrapolations of Yes/No responses. *See Gayton v.*

*McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[W]e must look at each of the conclusions [an expert]

draws individually to see if he has the adequate education, skill, and training to reach them.").

### 2. Mr. Stroz's Samples Are Not Representative.

Although "[i]nferences from the part to the whole are justified *when the sample is*

*representative*," Ref. Manual at 217 (emphasis added), ███ ████ ████ █████ ███

███████████████████████████████████████████████████████

██████████████ "[S]ample choice . . . is an issue of methodology," and "to represent

---

[3] Similarly, Mr. Stroz was unable to assess ████████████████████████ Dep. 90:25-91:3; was unfamiliar with the term ███████████████████ *id.* 95:23-96:12; and ███████████████████ *id.* 86:20-87:2.

adequately the risk or other prediction at issue, the samples must be chosen using some method that assures the samples are appropriately representative of the larger entity or population." *Allgood v. General Motors Corp.*, 2006 WL 2669337, at *11 (S.D. Ind. Sept. 18, 2006) (excluding expert opinion). Mr. Stroz used the ██████ as his sample simply because ███████ ████████████ Dep. 83:14-24; *see also id.* 84:12-17 ████████ ████████████████████████████████ ██████████ ████████████████████████. This sample was therefore "a 'convenience' sample – convenient to the sampler – as distinct from a 'representative' sample – representative of the population sampled." *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 581 (7th Cir. 2010). "[Convenience] samples are easy to take but may suffer from serious bias." Ref. Manual at 285.

Although trained experts can sometimes adjust their models to account for non-representative samples, Mr. Stroz did not even investigate the degree to which ████████ ████████████████████████████████ Dep. 89:9-10, and "████████████████████████████ ████████████████████████████████████████ *id.* 91:14-19.[4] Instead, Mr. Stroz merely assumed that ████████████████████ ████████████████████████ Such junk science is inadmissible. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (testimony based on a sample of 42 putative class members properly held to be inadmissible because class counsel could not explain how the sample was chosen); *Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, 2003 WL 1797844, at *2 (N.D. Ill. Apr. 3, 2003) (rejecting expert's explanation that "his assignment was to offer an opinion based only on the information samples

---

[4] *See also* Dep. 92:14-17 ("████████████████████████").

that were made available to him" because opinions are inadmissible if "'based solely on [the expert's] belief and assumption'") (quoting *Clark v. Takata*, 192 F.3d 750, 758 (7th Cir. 1999)).

In his reply report, Mr. Stroz attempts to salvage his analysis by asserting that ███████

████████████████████████████████████████ Ex. G, Stroz Reply Rep. ¶ 107.

This just underscores why he is not qualified to offer statistics opinions: the person designing the statistical model has the responsibility to *verify* the sample is representative. *See Allgood*, 2006 WL 2669337, at *11 ("samples must be chosen using some method that assures" representativeness); O'Brien Rep. ¶ 19 ("Standard practice when studying a sample from a population is to [] ensure that the sample is representative"). Not only did Mr. Stroz fail do so; ██

████████████████████████████████████████████████

████████████████████████ *See* Dep. 83:19-84:11. In litigation, it is CDK's burden to prove that Mr. Stroz's statistical methods are sound; his mere *ipse dixit* that there is no reason to doubt them is not sufficient. *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 233 (S.D.N.Y. 2004) (expert opinion inadmissible because "the plaintiffs [we]re unable to establish that the data set utilized by [plaintiffs' expert] was unbiased").

Moreover, contrary to Mr. Stroz's assertion, had he done any meaningful analysis, he would have found ample reasons to doubt the representativeness of the sample. For example, ███

████████████████████████████████████████████████

████████████████████████████████████████████████

██ *See* O'Brien Rep. ¶¶ 24-25. ████████████████████████

████████████████████████████████████████████████

████████████████ *Id.* ¶ 26. ████████████████████

████████████████████████████████████████

7

Mr. Stroz's errors continue in his use of ████████████████████████████

████████████████████████████████████████. Mr. Stroz claims

that ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Stroz

Reply Rep. ¶ 104. But the only basis for that assumption is that ███████████

████████████████████████████████████████[5] As Mr. Stroz

acknowledged, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ Dep. 141:9-142:20. This is yet another

unfounded assumption without the sort of investigation required of a statistics expert.

"It is . . . not safe, no matter how tempting, to draw conclusions from [data] . . . unless

scientific standards have been incorporated to assure that a representative sample has been

obtained." *United States v. Mikos*, 2003 WL 22922197, at \*4 (N.D. Ill. Dec. 9, 2003). Because

Mr. Stroz's calculations of ████████████ was not drawn from a representative sample – and he

did not have evidence that ████████████████████████████████████████

████████████████████████ *See id*. (sampling errors made expert's opinion inadmissible

---

[5] Mr. Stroz's assertion is based largely on a single document (PX 1689) ████████████████████████

████████████████████ *See* Stroz Reply Rep. ¶ 104 & n.228; Dep. 139:7-23. PX 1689 is a █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ *See* Ex. H, PX 1689.

because it is not "sufficient to rely upon cross-examination to counter the effects of an opinion that is not founded upon facts established by valid scientific methodology").

### 3. Mr. Stroz Does Not Provide Standard Errors for His Calculations

"[A]n estimate based on a sample will differ from the exact population value, because of random error. The standard error gives the likely size of the random error. . . . If the standard error is large, the estimate may be seriously wrong." Ref. Manual at 246. ████████████

███████████████████████████████████████████████

████████████████████████████████ *See id.* 240 ("[A]ssessments [of errors from sampling] are often viewed as essential when making inferences from data."); *id.* at 483 ("Usually, [sampling] requires that the expert . . . include[] an estimate of the sampling error."). Otherwise, there is no way to know how precise (or imprecise) Mr. Stroz's estimate is. Indeed,████████████

███████████████████████████████████████████████

███████████████████████Absent any measure of precision, Mr. Stroz's testimony is likely to be misleading and unhelpful to a jury. *See Farmer v. DirectSat USA, LLC*, 2013 WL 1195651, at *5-6 (N.D. Ill. Mar. 22, 2013) (striking testimony of expert who "runs no tests, calculates no confidence intervals, and provides no margins of error to demonstrate how the sample . . . data he received is representative of those [data points] and time periods for which he does not have . . . data"); *Biondo v. City of Chi.*, 2002 WL 1160948, at *6 (N.D. Ill. May 31, 2002) (expert's "methodology was fundamentally flawed because" he "did not include any measure of accuracy in terms of standard deviation," and "[t]o allow [such] an opinion . . . to be presented to the juries would have been to present to the juries an unreliable predictor.").

CDK belatedly tried to backfill Mr. Stroz's failure █████████████████████

████████████████████████████████████████ *See* Rubinfeld Reply

Rep. ¶ 15.  This tag-team effort fails for two reasons.  First, the need ███████████

████████████ after the fact underscores Mr. Stroz's lack of qualifications to perform his statistical

modeling in the first place.  In *Bone Care*, the Court rejected a party's attempt to "salvage" a report

from one expert (Dr. Wei) "by pointing to the [confirmatory] work of" a second expert (Dr.

Langman) because "[t]o the extent that Dr. Langman's work supports an opinion that Dr. Wei

arrived at reliable conclusions despite employing an admittedly incomplete methodology," it "may

speak to Dr. Wei's skill as a scientist.  But it does not make his testimony as to the [earlier] report

reliable."  2010 WL 3928598, at *7; *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395

F.3d 416, 419 (7th Cir. 2005) ("[I]f Shapiro did not use [the social sciences toolkit] because he

does not know how: that would just demonstrate that he's not an 'expert' in the first place.").

Second, ████████████████████████████████████████

██████████████████████████████████████████████████████

Rubinfeld Reply Rep. ¶ 15, ████████████████████████████

██████████████████ *see id*. ¶ 13 n.9, and ████████████████

██████████████████████████████████████████████████████

████████████████████ *id.*, or in common statistical parlance, "independently and identically

distributed" – i.e., ████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████



██████████████████████████████████████████████████████████

███████████████████████████████████████████.[6] *See* Dep. 94:22-95:17.

### 4. Mr. Stroz's Analysis of Sampled Data Does Not Fit the Facts

In addition to departing from foundational statistical methods, ████████████████

████████ is also inadmissible because it is not "based on sufficient facts or data" and does not

"reliabl[y] appl[y] [statistical] principles and methods to the facts of the case." Fed. R. Evid. 702.

He makes two such errors that render his opinion unreliable. *See Owens v. Auxilium Pharm., Inc.*,

895 F.3d 971, 973 (7th Cir. 2018) ("[W]hether an expert's approach lines up with the basic facts

of the case goes to the relevance and admissibility of the testimony itself.").

First, ████████████████████████████████████████████████

██████████████████████████████████████████████████ Dep.

145:14-23. As a result, his method ██████████████████████████ does not fit

the record. For example, ████████████████████████████████

██████████████████████████████████. *Id.* 158:6-159:21; *see* Ex. I, PX 1692 at

CDK- 2962194. Additionally, Mr. Stroz assumed based on ███████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████ Ex. J, PX 1693 at CDK-2963229. ████████████████

██████████████████████ ██████████████████████████

██████████████████████████████████████████████ Dep. 165:21-

---

[6] *See* Cameron & Miller, *A Practitioner's Guide to Cluster-Robust Inference*, 50 J. of Human Resources 317, 318 (2015) ("It is not unusual to have applications where standard errors that control for within-cluster correlation [*e.g.*, correlation between a given dealer's number of logins per day over time] are several times larger than default standard errors that ignore such correlation.").

25, and because he never investigated this issue, *id.* 161:5-10, he ███████████████

███████████████████████████████████████████ *id.* 166:2-11.[7]

Indeed, Mr. Stroz assumes that ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████.

Second, a crucial underpinning of Mr. Stroz's analysis is ████████████████

███████████████████████ *See* Rep. ¶ C33.  Mr. Stroz performed no

analysis of this issue himself and instead ████████████████████████████

██████████████████ *See* Dep. 105:19-106:4 ████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████   ███████████████████ But there were obvious errors in ████████████

██████████████████ of which Mr. Stroz took no account.  *See id.* 116:9-11 █████████

███████████████████████████████; *id.* 166:23-168:5 █████████

█████████████████████████████████████████████████████████;

*id.* 111:12-114:10 █████████████████████████████████████████████

███████████████████████████████████[8]

Even more confounding is that elsewhere Mr. Stroz did attempt to ████████████

███████████████████████ (discussed in detail *infra* 21-23).

█████████████████████████████████████████████████████████

---

[7] Because Mr. Stroz's calculations included an "extreme outlier" with a massive effect on his results, and he did not "attempt to determine the cause of the apparent anomaly," his opinion is inadmissible because he "'lacks "good grounds" for his . . . conclusions.'"  *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1298-1301 (N.D. Fla. 2017) (citation omitted).

[8] *See* Rubinfeld CDK Rep. ¶ 54 & n.62 (citing CDK-0742676) (list of dealers' non-standard addenda).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Rep. ¶ C23 n.12, █████████████████████████████████████

████████████████████████████████████████████████ ██

██████████████████████████████████████████ *See*, *e.g.*, Dep.

116:12-117:5 ████████████████████████████████████████ *id.*

118:2-119:9 ████████████████████████ Ex. H, PX 1689, at CDK-2942781.002

██████████████████████████████████ ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████ *See infra* 21-23.  Instead, Mr. Stroz's ███████████

██████████████████████████████████████ *See* Dep. 107:12-109:15

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████ *See id.* 170:21-25 ████████████████████████

**B.  Mr. Stroz's Profile Manager Calculations Are Not Reliable**

Mr. Stroz also attempts to calculate DMCA violations ████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

Mr. Stroz makes these calculations by citing █████████████████

██████████████████████████████████████████████████████

███████████████████████ *see* Rep. ¶¶ C39-41, ███████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ *Id.* ¶ C41. ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

*Id.* ¶¶ C37, C42, C50. ██████████████████████████████████████

██████████████████████████████████ *Id.* ¶ C50. ████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶¶ C49-50.

███████████████████████████████████████████████████████████

█████████ *Id.* ¶ C51. █████████████████████████████████████████

███████████████████████████████████████████████████████

### 1. Mr. Stroz Lacks Expertise To Perform Statistical Extrapolation and Failed to Use Reliable Statistical Methods

Mr. Stroz's Profile Manager analysis suffers from the same statistical defects as his Yes/No analysis. First, as explained above (at 4-5), Mr. Stroz lacks the requisite expertise in statistics needed to accurately extrapolate population-level results from a sample.

Second, Mr. Stroz actually designed the sample to be biased. ████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ¶ C44. ████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████ Such clearly

biased samples are regularly excluded. *See Allgood*, 2006 WL 2669337, at *11 (expert's

"methodology . . . was not sufficiently reliable to satisfy the demands of *Daubert* . . . due to selection bias"); *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 238 F. Supp. 2d 1024, 1030 (N.D. Ill. 2003) ("[P]rocedures must be taken to reduce the likelihood of a biased sample."), *aff'd*, 354 F.3d 661 (7th Cir. 2004).



*See* Rep. ¶¶ C43-47.

*see* Dep. 190:23-191:11, 251:19-252:25,

*See* Ex. K, DX 340 at AUTH_00464330-31

*see* Rep. ¶ C37 –

Further undermining the reliability of Mr. Stroz's

*Id.* ¶¶ C47, C51.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████  ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████  *See Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 1003 (N.D. Ill. 2014)

(damages expert's contradictory opinions contributed to exclusion of expert's testimony).[9]

Finally, Mr. Stroz did not ██████████████████████████████

███████████████████████████████████████████████████

████████████████████████  *See* Rubinfeld Reply Rep. ¶ 24.  But once more,

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████  *Id.* ¶¶ 22, 24.  ████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████.[10] ████

---

[9] *See also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 468, 478 (S.D.N.Y. 2018) (since "inconsistent results are an 'indicia of unreliability' in an expert's methodologies," the court concluded that "the internally inconsistent nature of [the expert's] models seriously undermine their reliability"); *Howard v. Bosch Thermotech. Corp.*, 2018 WL 2087259, at *5 (E.D. Mo. May 4, 2018) ("The presence of contradictory opinions [within an expert's testimony] seriously undermines their reliability.").

[10] ████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████  █████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ Rep. ¶ C39 n.33. ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████ .

**2.      Mr. Stroz's Analysis of Profile Manager Data Does Not Fit the Facts**

Mr. Stroz's analysis is also inadmissible because Mr. Stroz's only sources ████████

█████████████████████████████████████████████████ ████

████████████████████████████████ ████████████████████

███████████████████████████████████████████████████

████████████ Rep. ¶ C39 (quoting AUTH_00085018 (Ex. L, PX 1694). ████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ *Id.* 194:21-195:9. ██████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. M, PX 1695 at

AUTH_00113726 (cited in Rep. ¶ C39 n.31); Dep. 197:16-198:12. ███████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████ Dep. 203:25-204:8. █████████████

███████████████████████████████████████████████████

17



*See* Ex. N, DX 705 at AUTH_00257565.

Ex. O, CDK-0049552 (cited in Rep. ¶ C49 & n.40). *see id.* ¶ C36, *id.* ¶ C51.

, *see id.* ¶ C49 n.40, *See* Dep. 271:17-274:10

"[D]istrict courts must rigorously scrutinize . . . the sufficiency of the data upon which the expert relies," and when an expert opinion "requires too many extrapolations from dissimilar data," "too many analytical leaps," and "a loose application of purportedly objective scientific . . . standards," the opinion – such as Mr. Stroz's here – should be excluded. *Caraker v. Sandoz Pharm. Corp.*, 188 F. Supp. 2d 1026, 1030-31 (S.D. Ill. 2001); *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000) ("Expert testimony relying on the opinions of others should, of course, be rejected if the testifying expert's opinion is too speculative . . . or the underlying basis is faulty.").

18

### 3. Mr. Stroz Fails To Attribute "Violations" to Dealer Counter-Defendants

Mr. Stroz's calculations are also irrelevant because he does not opine ███████████ ███████████████████████████████████████████████████████████████████ ██████████████████████ Rep. ¶ C1 n.1, but Mr. Stroz "lumps" them together without attributing violations to any specific ████████████ counter-defendant(s), *id*. ¶ C51. *See* Dep. 263:3-23 ████████████████████████████████████████████████████████ ███████ Because he cannot identify "violations" by any named counter-defendant, his calculations are unhelpful to the jury. *See Trugreen Cos. v. Scotts Lawn Serv.*, 508 F. Supp. 2d 937, 960-61 (D. Utah 2007) (striking expert damages opinion where "the court lacks admissible evidence of what damage is attributable to the nine [defendants] remaining"); *cf.* Dealership Class MTD Op., Dkt. 749 at 24 (dismissing CFAA counterclaim against dealers for failing to disaggregate alleged damages, since CDK "can[not] aggregate losses caused by multiple acts of multiple defendants").

### 4. The Number of Times Profile Manager "Launched" Is Irrelevant

Mr. Stroz purported to calculate ████████████████████████████████████████ ████████████████████████████████████████████ Rep. ¶ C38. Authenticom and the dealership class intend to seek summary judgment that it is not a DMCA violation to "run" a program when, ████████████████████████████, it did not actually re-enable a disabled account. Should the Court grant summary judgment on that issue, Mr. Stroz's calculations will be irrelevant: "expert testimony on damages not recoverable under law is properly excluded." *Cooper v. Meritor, Inc.*, 2019 WL 545263, at *3 (N.D. Miss. Feb. 11, 2019); *see also Kinnison v. City of San Antonio*, 2009 WL 3768442, at *3 (W.D. Tex. Nov. 5, 2009) ("If Plaintiff's expert testified on a measure of damages barred as a matter of law, then his testimony would be irrelevant.").

### C. Mr. Stroz's CAPTCHA Calculations Are Not Reliable

Mr. Stroz purported to calculate ████████████████████████████████████████

█████████████████████████████████ Rep. ¶ C2.  To do so, Mr. Stroz needed to

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████. *Id.* ¶¶ C20-22.

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████ *Id.* ¶ C21. ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████████ *Id.* ¶¶ C21-22. ███████████████████████████

███████████████████████. *Id.* ¶ C23.

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████ *Id.*

████████. *Id.* ¶¶ C24-25 & Table 1. ███████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ *Id.* ¶¶ C23-26.

**1.**      **Mr. Stroz Lacks Relevant Expertise and Has No Method To Identify Queries**

Mr. Stroz offers no methodology or reasoning to explain how he concluded that ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████



████████████████████████████ *Id.* ¶ C21.  Mr. Stroz is ████████████████

███████████████████ Dep. 190:14-19. ██████████████████████ *See id.* 46:8-

20█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████ ").  █████████████████████

████████████████████████████████████████████ *See Loeffel Steel*

*Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 814 (N.D. Ill. 2005) ("It cannot be . . . too

strongly emphasized that 'nothing in either *Daubert* or the Federal Rules of Evidence requires a

district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of

the expert.'") (quoting *General Elec.*, 522 U.S. at 146).

### 2. Mr. Stroz's Query Analysis Is Unsupported and Relies on CDK's Tagging

Additionally, although "[i]t is critical under Rule 702 that there be a link between the facts

or data the expert has worked with and the conclusion the expert's testimony is intended to

support," *United States v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003), ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████ *see* Rep. ¶ C20 n.7, ██████████████████

███████████████████████████████ *see* Ex. P, PX 1681 (AUTH_00198799)

(██████████████████████████████████████████████████ *see*

Ex. Q, DX 1133 (AUTH_00140692) (██████████████████████).  In other words,

Mr. Stroz's own evidence shows that █████████████████████████████



██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████ *See* Dep. 59:23-61:4; 70:9-71:7.[11]

Mr. Stroz took no steps to rule out ████████████████████████████

████████████ *See id.* 60:12-61:5; 71:3-17. Because his "assumptions were not supported by evidence, but were, in fact, controverted by the facts available to him," his opinion is inadmissible. *MDG Int'l, Inc. v. Australian Gold, Inc.*, 2009 WL 1916728, at *5 (S.D. Ind. June 29, 2009).

Mr. Stroz defends ████████████████████████████████████████

████████████████████████████████████████ *See* Rep. ¶ C22; Stroz Reply Rep. ¶ 98.

████████████████████████████████.[12] ████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████ Dep. 36:4-37:2; *see also id.* 32:11-33:5 ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████[13]

CDK's own determinations ████████████████████████ – based on an

---

[11] *See* Dep. 70:24-71:7 █████████████████████████████████████
██████████████████████████████████████████████████████████████
███████████████████████████████████████████

[12] *See* Dep. 96:22-106:4 ████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████████████

[13] █████████████████████████████████████████████████████████
█████████████████████████████ ████████████████████ ██
████████████████████████████ Rep. ¶ C22. ██████████████████████
██████████████████████████████████████████████████████████████
████████████████████ This shows that either Mr. Stroz's methodology, or CDK's, or both, are unreliable.

22

unknown, undisclosed, and unvalidated methodology – are not even Mr. Stroz's *ipse dixit* – they are CDK's own *ipse dixit*.  "Reliable inferences depend on more than say-so, whether the person doing the saying is a corporate manager or a putative expert."  *Zenith*, 395 F.3d at 420.  Mr. Stroz's "lack of familiarity with the methods and the reasons underlying" CDK's tagging "virtually preclude[s] any assessment of the validity of the projections through cross-examination," *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 293 (3d Cir. 2012) (internal quotation marks omitted), and such testimony is inadmissible.  *See Loeffel*, 387 F. Supp. 2d at 809 ("If allowed to testify, [the expert] would be hiding behind [the party's employees] and acting as their mouthpiece.  He would, in effect, be vouching for their . . . methodology, when he has absolutely no knowledge of whether the theory is valid and reliable.") (internal quotation marks omitted).

### 3. Mr. Stroz Fails To Attribute CAPTCHA Use to Dealer Counter-Defendants.

While Mr. Stroz opines on the total number of alleged CAPTCHA violations ███ ███████████████████████████████████ Rep. ¶ C26, ███████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████ *see* Dep. 240:4-242:14.  As discussed above (at 19), Mr. Stroz's failure to attribute alleged CAPTCHA "violations" ████████████████████████████████████████████ renders his opinions against them irrelevant and unhelpful to the jury.  *See* Rep. ¶¶ C2 n.1, C26.

## II. Several of Mr. Stroz's Cybersecurity Opinions Should Be Stricken

### A. Mr. Stroz's Opinion on the Security of APIs Is Not Supported

Mr. Stroz also opines that ██████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ Stroz Reply Rep. ¶¶ 74-77.  But Mr. Stroz's reports offer no evidence to support his opinion, ███ ██████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ Dep. 315:15-23, ████████

 *id.* 313:9-18.

*Id.* 211:15-212:24. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *See Wendler & Ezra, P.C. v. American Int'l Grp., Inc.*, 521 F.3d 790, 791-92 (7th Cir. 2008) (internal quotation marks omitted).[14]  Thus, Mr. Stroz's *ipse dixit* on APIs should be barred.

### B.  Mr. Stroz's List of "Proprietary" Data Fields Merely Parrots CDK Testimony

Mr. Stroz opines on  Stroz Reply Rep. ¶ 12.  But this analysis is again based solely on . *Id.* n.20

Dep. 221:18-21,

*id.* 222:4-13.

*id.* 222:14-17,

*see id.* 222:18-223:19.  "An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy," *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014), and thus Mr. Stroz's "opinion" based entirely on the accuracy of CDK's own self-interested tagging is inadmissible.  *See King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) ("[T]he expert must incorporate the information supplied to him into his underlying facts, independently review the information, and then formulate . . . an opinion that relies upon that [and] any other relevant information.").

---

[14] *See also Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 890-91 (E.D. Wis. 2010) (barring expert opinion where "he did not consider [competing products] with any level of seriousness . . . [but] instead focuses only on the evidence that supports his conclusion").

## C. Mr. Stroz's Legal Conclusions Should Be Excluded

Mr. Stroz impermissibly opines on key legal issues in this case. For example, he states,

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████ Stroz Reply Rep. ¶ 5. ████████████████████████████████

█████████████████████████████████ *See, e.g.*, Rep. ¶¶ 30, 31, 36, 67, 79, 92, 118; Stroz

Reply Rep. ¶¶ 15, 31. ██████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████ *See* Dep. 179:7-181:14; 185:8-

22. Accordingly, Mr. Stroz has nothing to rely on ███████████████████████

Because "expert testimony in the form of legal conclusions is not helpful to the trier of fact," *Van*

*v. Ford Motor Co.*, 332 F.R.D. 249, 271 (N.D. Ill. 2019), Mr. Stroz's opinions ████████████

███████████████████████████████████████████████████████████████

███████████ are therefore inadmissible. *See RLJCS Enters., Inc. v. Professional Benefit Trust*

*Multiple Emp'r Welfare Benefit Plan & Trust*, 487 F.3d 494, 498 (7th Cir. 2007) ("Argument about

the meaning of . . . contracts . . . belongs in briefs, not in 'experts' reports'").[15]

## CONCLUSION

Mr. Stroz's DMCA calculations should be excluded in full, and his cybersecurity

opinions in part.

---

[15] *See also In re Motor Fuel Temp. Sales Prac. Litig.*, 2012 WL 3611010, at *3 (D. Kan. Aug. 22, 2012) (stating that "expert witnesses may not express legal conclusions, *i.e.* they may not opine whether . . . certain acts and/or omissions are 'legal,' '*authorized*,' 'deceptive,' [etc.]") (emphasis added).

Dated:  February 28, 2020               Respectfully submitted,

*/s/ Peggy J. Wedgworth*              */s/ Derek T. Ho*
Peggy J. Wedgworth               Derek T. Ho
**MILBERG PHILLIPS GROSSMAN LLP**    **KELLOGG, HANSEN, TODD,**
One Pennsylvania Plaza, 19th Floor       **FIGEL & FREDERICK, P.L.L.C.**
New York, NY 10119               1615 M Street, NW, Suite 400
(212) 594-5300                   Washington, D.C. 20036
pwedgworth@milberg.com          (202) 326-7900
                             dho@kellogghansen.com

*MDL Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Derek T. Ho, an attorney, hereby certify that on February 28, 2020 I caused a true and correct copy of the foregoing **MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD M. STROZ** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth
**MILBERG PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com