PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF PLAINTIFF MVSC'S EXPERT GORDON KLEIN**

PUBLIC VERSION

## TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION**........................................................................................................1

**BACKGROUND** ........................................................................................................3

I.     Relevant Procedural Background .......................................................................3

II.    Summary of Mr. Klein's Opinions and Testimony ............................................3

**MR. KLEIN'S OPINIONS SHOULD BE EXCLUDED** ...........................................7

I.     Mr. Klein Failed to Disaggregate Harm Caused by Allegedly Unlawful Conduct from Lawful Conduct ......................................................................................................8

II.    Mr. Klein Unreasonably Assumes an Ongoing Conspiracy Continuing Through the End of Trial ............................................................................................................10

III.   Mr. Klein Failed to Apply a Reliable Methodology in Forming his Opinions on Causation.................................................................................................................11

IV.   Mr. Klein's Opinion Regarding the Harm Suffered by MVSC in the California EVR Market Should be Excluded Because it is Actually the Opinion of MVSC COO Joe Nemelka ..................................................................................................................14

V.    Mr. Klein's Opinion that Defendants' Interference Caused Harm to MVSC in the Wisconsin EVR Market Fails to Account for Critical, Contradictory Evidence From the State of Wisconsin ..........................................................................................17

**CONCLUSION** .........................................................................................................20

PUBLIC VERSION

# TABLE OF AUTHORITIES

**Page(s)**

Federal Cases

*Ask Chems., LP v. Computer Packages, Inc.*
593 Fed. Appx. 506 (6th Cir. 2014) ..................................................................................16

*Barber v. United Airlines, Inc.*
17 Fed. Appx. 433 (7th Cir. 2001) ....................................................................................18

*Bielskis v. Louisville Ladder Inc.*
663 F.3d 887 (7th Cir. 2011) ......................................................................................13, 20

*Blue Cross and Blue Shield United of Wisconsin v. Marshfield Clinic*
152 F.3d 588 (7th Cir. 1998) ........................................................................................9, 19

*Buscaglia v. U.S.*
25 F.3d 530 (7th Cir. 1994) ..............................................................................................11

*Cates v. Whirlpool Corp.*
Case No. 15-CV-5980, 2017 WL 1862640 (N.D. Ill. May 9, 2017) ..................................18

*City of Tuscaloosa v. Harcros Chems., Inc.*
158 F.3d 548 (11th Cir. 1998) ..........................................................................................14

*Comcast Corp. v. Behrend*
569 U.S. 27 (2013) ..............................................................................................................8

*Concord Boat Corp. v. Brunswick Corp.*
207 F.3d 1039 (8th Cir. 2000) ..........................................................................................10

*Craftsmen Limousine, Inc. v. Ford Motor Co.*
363 F.3d 761 (8th Cir. 2004) ..............................................................................................9

*Daubert v. Merrell Dow Pharm., Inc.*
509 U .S. 579 (1993) ....................................................................................................12, 18

*Dukes v. Illinois Cent. R.R. Co.*
934 F. Supp. 939 (N.D. Ill. 1996) ....................................................................................13

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*
285 F.3d 609 (7th Cir. 2002) ............................................................................................16

*Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*
No. 14-C-1859, 2017 WL 3592775 (N.D. Ill. Aug. 21, 2017) ..............................................14

*Gen. Elec. Co. v. Joiner*
522 U.S. 136 (1997) ....................................................................................................12, 19

*IQ Prods. Co. v. Pennzoil Prods. Co.*
    305 F.3d 368 (5th Cir. 2002) ................................................................................9

*LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*
    661 F. Supp. 2d 940 (N.D. Ill. 2009) ...................................................................13

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ...................................................................16

*MCI Communications v. American Telephone & Telegraph Co.*
    708 F.2d 1081 (7th Cir. 1983): ..............................................................................9

*Smith v. Ford Motor Co.*
    215 F.3d 713 (7th Cir. 2000) ................................................................................12

*Sys. Dev. Integration, LLC v. Computer Sciences Corp.*
    886 F.Supp.2d 873 (N.D. Ill. 2012) .....................................................................11

*Tietsworth v. Sears, Roebuck and Co.*
    No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112 (N.D. Cal. May 4, 2012) ..........14

*U.S. v. Benson*
    941 F.2d 598 (7th Cir. 1991) .................................................................12, 13, 17

*Victory Records, Inc. v. Virgin Records Am., Inc.*
    No. 08-C-3977, 2011 WL 382743 (N.D. Ill. Feb. 3, 2011) ...................................16

*Williamson Oil Co. v. Philip Morris USA*
    346 F.3d 1287 (11th Cir. 2003) ..............................................................................9

*Zenith Elec. Corp. v. WH-TV Broad. Corp.*
    395 F.3d 416 (7th Cir. 2015) ...................................................................12, 16, 20

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Evidence
    702........................................................................................................................16

Other Authorities

Phillip E. Areeda and Herbert Hovenkamp, Antitrust Law: An Analysis of
    Antitrust Principles and Their Application ¶ 657b (4th ed. 2019)............................9

PUBLIC VERSION

## TABLE OF CITED EXHIBITS

| Exhibit No. | Description | Citation Format |
|---|---|---|
| A | 1/10/20 Deposition Transcript of Gordon L. Klein | "**Ex. A** (Tr.)" |
| B | Dep. Ex. 1213 (2/23/17 letter from Wisconsin DOT) | "**Ex. B** (Dep. Ex. 1213)" |
| C | CDK 3PA Program Partner List | "**Ex. C** (CDK 3PA Partner List)" |
| D | 1/31/20 letter from L. Caseria to D. Ho | "**Ex. D** (1/31/20 Caseria letter)" |
| E | 2/7/20 response from C. Bonomo to L. Caseria | "**Ex. E** (2/7/20 Bonomo response)" |
| F | 8/26/19 Klein Rpt. | "**Ex. F** (Rpt.)" |
| G | 12/19/19 Klein Reply Rpt. | "**Ex. G** (Reply)" |
| H | Dep. Ex. 1217 (8/26/19 Declaration of Joseph Nemelka) | "**Ex. H** (Nemelka Decl.)" |
| I | 11/15/19 Daniel L. Rubinfeld Expert Rebuttal Report re MVSC | "**Ex. I** (Rubinfeld Rebuttal)" |
| J | Dep. Ex. 1211 (7/16/13 email from Wisconsin DOT to Joe Nemelka of MVSC) | "**Ex. J** (Dep. Ex. 1211)" |
| K | Dep. Ex. 1212 (8/7/14 letter from Wisconsin DOT to Joe Nemelka) | "**Ex. K** (Dep Ex. 1212)" |
| L | 12/19/19 Mark A. Israel Expert Reply Report | "**Ex. L** (Israel Reply)" |
| M | Dep. Ex. 1214 (3/15/19 email from Wisconsin DOT) | "**Ex. M** (Dep. Ex. 1214)" |

## INTRODUCTION

The expert opinions and testimony of Gordon Klein, Plaintiff Motor Vehicle Software Corp.'s ("MVSC") causation and damages expert, are inadmissible because they are unreliable, speculative, and would not help the trier of fact. Specifically, Mr. Klein fails to disaggregate lawful from unlawful conduct, relies on an unreasonable assumption of a continuing conspiracy, fails to apply any expert methodology to analyze causation, accepts MVSC's representations to him without question, and fails to consider critical evidence that contradicts his opinions. For these reasons, the Court should exclude Mr. Klein's opinions and proffered testimony.

First, Mr. Klein fails to disaggregate MVSC's losses (if any) caused by alleged *unlawful* conduct from MVSC's losses caused by *lawful* conduct because his analysis does not distinguish between alleged conspiratorial and unilateral conduct by Defendants. The *only* unlawful conduct MVSC has alleged against Reynolds is based on conspiracy. Any damages based on harm resulting from Reynolds's unilateral conduct may not be recovered by MVSC, but Mr. Klein has not excluded those damages from his opinion.

Second, Mr. Klein assumes that Defendants' alleged unlawful conspiratorial conduct is ongoing, and will continue unabated until the conclusion of trial in this case. This is an unreasonable assumption given the undisputed fact that CDK settled with MVSC in October 2019, resolving MVSC's claims against both CDK and CVR. Even Mr. Klein admitted ███████████ ████████████████ Again, MVSC has only asserted conspiracy claims against Reynolds. Damages cannot continue past the October 2019 releases of CDK and CVR if there is no one for Reynolds to conspire with after that time.

Third, Mr. Klein applies no reliable methodology to form his causation opinions. Mr. Klein opines that ████████████████████████████████████████████████████ ██████████████ But the methodology Mr. Klein applied to arrive at this conclusion was simply

-1-

to review MVSC's documents and statements and form subjective opinions based on his experience observing business activities and transactions. His causation opinions are therefore the product of nothing more than his say-so or a layperson's interpretation of documents, and not based on any reliable methodology informed by his area(s) of expertise.

Fourth, Mr. Klein's ███████████████████████████████████ ██████████████████████████ Mr. Klein offers ████████████████████████████ ████████ by an MVSC fact witness, MVSC COO Joe Nemelka. As Mr. Klein conceded at his deposition: ████████████████████████████████ **Ex. A** (Tr.) at 246:19-20 (emphasis added). Mr. Klein merely assumed – without testing or otherwise applying any expertise – ██ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████

Finally, Mr. Klein's opinions about ████████████████████████████ ████████ not only lack evidentiary support but also fail to account for critical evidence showing that the State of Wisconsin was not accepting new EVR providers and would not have authorized MVSC to provide EVR services in a but-for world. In particular, the State of Wisconsin sent a letter to MVSC in 2017 explaining that when MVSC had previously applied to become an authorized EVR provider, the State "was not accepting new vendors," and would not begin accepting new vendors until "early 2019" at the earliest. **Ex. B** (Dep. Ex. 1213).

Accordingly, defendant The Reynolds and Reynolds Company ("Reynolds") requests that the Court exclude the opinions and testimony of Mr. Klein.

PUBLIC VERSION

## BACKGROUND

### I. Relevant Procedural Background

MVSC filed its operative complaint, its third (the Second Amended Complaint or "SAC") against Defendants CDK Global, Inc. ("CDK"), Computerized Vehicle Registration, Inc. ("CVR") and Reynolds (collectively, "Defendants") in November 2017. MVSC Dkt. 76. The SAC included eight claims of unlawful conduct relating to the EVR markets in California and Illinois. *Id.* ¶¶ 206-63. The only claims asserted against Reynolds were claims based on alleged conspiracy; there were no claims against Reynolds based on alleged unlawful unilateral conduct.[1] *Id.* ¶¶ 206-15, 233-40, 245-63.

On October 15, 2019, MVSC voluntarily dismissed all claims against CDK and CVR pursuant to a settlement agreement.[2] Dkt. 778; Dkt. 818 at 4 n.2. Following the settlement, MVSC is now a member of CDK's 3PA program. **Ex. C**, at 4 (CDK 3PA Partner List).

The only actionable claims left in this case are claims against Reynolds based on an allegedly unlawful conspiracy between Reynolds on the one hand and CDK and/or CVR on the other. *See* SAC ¶¶ 206-15, 233-40, 245-63.

### II. Summary of Mr. Klein's Opinions and Testimony

MVSC proffers Mr. Klein as its causation and damages expert. **Ex. F** (Rpt.) at ¶ 17; **Ex. A** (Tr.) at 29:7-16. Mr. Klein is a ███████████████████████ **Ex. F** (Rpt.), at Appx. A.

---

[1] MVSC's unilateral monopolization and attempted monopolization claims against Reynolds were previously dismissed. 10/2/2017 Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (MVSC Dkt. 73), at 9. MVSC did not replead those claims against Reynolds in its SAC.

[2] Reynolds has requested that MVSC produce a copy of the settlement agreement, but MVSC has not produced it as of the date of this filing. **Ex. D** (1/31/20 Caseria letter); **Ex. E** (2/7/20 Bonomo response). Reynolds intends to file a motion seeking to compel production of the settlement agreement.

Mr. Klein represents that ██████████████████████████

████████████████████████████████. *Id.*; **Ex. A** (Tr.) at 21:25-23:20.

He is ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████  *Id.* at 24:13-25:20; 27:6-11; 303:2-7.

Mr. Klein assumes that Defendants engaged in the following unlawful acts: ██████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████ **Ex. F** (Rpt.) ¶ 26.  Mr. Klein's opinion is

that ████████████████████████████████████.

**Ex. F** (Rpt.) ¶ 22; **Ex. A** (Tr.) at 93:22-94:5.  Mr. Klein purports to ██████████

██████████████████████.[3]  **Ex. F** (Rpt.) ¶ 18.

Mr. Klein quantifies ██████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[3]  Mr. Klein also quantifies ██████████████████████████████████
██████████.  **Ex. F** (Rpt.) ¶ 132 and Exhibit
F.1.  Reynolds reserves all of its rights with respect to MVSC's ████████ efforts and the
extent to which they violate cybersecurity laws.

Ex. G (Reply), at Exhibit A.

  *Mr. Klein assumes causation in California.* Mr. Klein's calculation ██████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████ **Ex. A** (Tr.) at 246:4-20

and 247:11-20; *see also* **Ex. H** (8/26/19 Decl. of J. Nemelka) ¶¶ 12-16. Mr. Klein testified that ██

████████████████████████████████████████████████████

**Ex. A** (Tr.) at 247:11-20. Even when confronted with evidence that ████████████

██████████████████████████████████████████████████

████████████████████████ **Ex. I** (Rubinfeld Rebuttal) ¶¶ 125-26 –

Mr. Klein testified that it was █████████████████████████████████

██████████████████████████████████████████████████

████████████████ *See* **Ex. A** (Tr.) at 249:13-250:2.

  *Mr. Klein assumes the unlawful conspiracy has not ended and will continue, even though*

*MVSC settled with CDK in October 2019.* Mr. Klein quantifies damages for ██████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ *See, e.g.,* **Ex. F** (Rpt.) ¶ 54. Mr. Klein's

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███ . *Id.* at ¶¶ 16, 54 and n.57. He calculates MVSC's damages ████████████

████████████████ *Id.* ¶ 54 and n.57.

  Mr. Klein admits that ████████████████████████████████

██████████████████████████████████████████████████████

**Ex. A** (Tr.) at 83:14-18. MVSC settled its claims against CDK in October 2019, resulting in a

voluntary dismissal of MVSC's claims against CDK and CVR.  Dkt. 778; Dkt. 818 at 4 n.2.  ███

███████████████████████████████████████████████████████████████████████████

███ **Ex. A** (Tr.) at 85:4-17.  Mr. Klein testified at his deposition that ████████████████████

███████████████████████████████████████████████████████████████████████████

███████████ *Id.* at 88:2-89:7.  He has not done so.  Reynolds has requested that MVSC produce

a copy of the settlement agreement, but MVSC has not produced it.  **Ex. D** (1/31/20 Caseria letter);

**Ex. E** (2/7/20 Bonomo response).

  *Mr. Klein's opinions regarding the Wisconsin EVR market are contradicted by evidence*

*indicating that the State of Wisconsin was not accepting any new EVR applicants, which Mr. Klein*

*failed to consider.*  Mr. Klein estimates that Defendants' Interference caused MVSC ██████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███ **Ex. F** (Rpt.) ¶¶ 46-47; **Ex. G** (Reply), at Exhibit A.  This amount constitutes nearly ███

of MVSC's claimed damages in this case.  *See* **Ex. G** (Reply), at Exhibit A.  Documents that

Reynolds obtained from the State of Wisconsin through a FOIA request, which MVSC has long

had in its possession, yet did not produce during discovery, show that the State of Wisconsin has

been unwilling to authorize MVSC or any other new EVR provider in Wisconsin for many years

for reasons having nothing to do with the alleged Interference.  *See, e.g.*, **Ex. J** (Dep. Ex. 1211),

at 2 ("I should let you know that we rarely add new vendors due to the massive start-up resources

we need to dedicate from our side."); **Ex. K** (Dep. Ex. 1212 (8/7/14 letter from Wisconsin DOT to

Joe Nemelka rejecting MVSC's application to become an authorized EVR provider in Wisconsin

because "extensive resources from DMV" were required and because adding MVSC would offer

"no benefit to either DMV or [Wisconsin] customer[s].")); **Ex. B** (Dep. Ex. 1213 (2/23/17 letter

from Wisconsin DOT to Joe Nemelka explaining that when MVSC had previously applied to

PUBLIC VERSION

become an authorized EVR provider, "the department was not accepting new vendors," and explaining that Wisconsin's "goal" was to "implement new vendors into the program [in] early 2019.")).

Mr. Klein was not provided, and did not consider, ███████████████████████ ███████████████████████████████████ **Ex. A** (Tr.) at 127:14-21, 128:12-14. Specifically, he testified that ████████████ the February 23, 2017 letter from Wisconsin DOT to MVSC in which the Wisconsin DOT explained that up to that point, "the department was not accepting new vendors," and further explaining that Wisconsin DOT's "goal" was to "implement new vendors into the program [in] early 2019." *Id.*; **Ex. B** (Dep. Ex. 1213). ████████ ████████████████████████ (and also never produced it to Reynolds), even though MVSC has had it in its possession since 2017 and even though Reynolds filed it with the Court on October 16, 2019 in support of its motion to bar MVSC's newly disclosed claims based on the Wisconsin and Virginia EVR markets, after obtaining it through a FOIA request.[4]

## MR. KLEIN'S OPINIONS SHOULD BE EXCLUDED

Mr. Klein's proffered opinions are inadmissible because: (1) he failed to disaggregate harm caused by allegedly unlawful conduct from lawful conduct; (2) his opinions are based on an unreasonable assumption of a continuing conspiracy; (3) he failed to apply a reliable causation methodology based on his specialized education or training; (4) his "opinions" relating to the California EVR market ██████████████████████████████████████ ████████████████████; and (5) his opinions regarding the Wisconsin EVR market are contradicted by evidence from the State of Wisconsin, which MVSC had in its possession but

---

[4]    MVSC's previous representations limiting its claims to the California and Illinois EVR markets are the basis for Reynolds's pending Motion to Bar Plaintiff MVSC's Newly Disclosed Claims Based on the Virginia and Wisconsin EVR Markets. Dkt. 789.

PUBLIC VERSION

withheld from Mr. Klein.

## I.     Mr. Klein Failed to Disaggregate Harm Caused by Allegedly Unlawful Conduct from Lawful Conduct

Mr. Klein aggregates the alleged effects of lawful and unlawful conduct by all of Reynolds, CDK and CVR in his analysis of damages, assuming:



**Ex. F** (Rpt.) ¶ 26.  Mr. Klein's opinions do not ███████████████████████████

███      **Ex. A** (Tr.) at 45:5-47:10, 52:10-54:13; 99:22-100:3.

Specifically, Mr. Klein fails to disaggregate harm to MVSC caused by an alleged unlawful *conspiracy* between Reynolds, CDK and CVR from harm caused by each defendant's *unilateral* conduct which would still exist in the but-for world.  *See id.* at 54:8-13 ███████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████     Mr. Klein specifically admitted that ████████

████████████████████████████████████     *Id.* at 45:5-47:10; 54:8-23.  This is a critical distinction because MVSC's *only* claims against Reynolds are *conspiracy* claims.  SAC ¶¶ 206-15, 233-40, 245-63.  MVSC's second, third, and fifth causes of action for monopolization and attempted monopolization were brought only against CDK and CVR, which are no longer defendants in the case.  SAC ¶¶ 216-32, 241-44.  MVSC cannot recover from *Reynolds* for harm resulting from CDK and CVR's monopolization and attempted monopolization, or harm resulting from lawful unilateral action.  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) (any damages model plaintiff proffers must be consistent with its liability case).  Mr. Klein must disaggregate and exclude damages resulting from conduct not actionable against Reynolds, and his failure to do

so unreasonably inflates his damages calculations.

As the Seventh Circuit held in *MCI Communications v. American Telephone & Telegraph Co.*, 708 F.2d 1081 (7th Cir. 1983):

> When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage. This is precisely the type of "speculation or guesswork" not permitted for antitrust jury verdicts.

*Id.* at 1162 (holding that plaintiff's lost profits study should have been excluded for failure to disaggregate damages between lawful and unlawful conduct) (internal citations omitted); *see also Blue Cross and Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (expert's damages model which failed to account for lawful factors not attributable to defendant's anticompetitive conduct was "worthless"). This is precisely the flaw in Mr. Klein's opinions for MVSC. He purports to estimate the damages that MVSC is entitled to, ████

████████████████████████████████████████████████████████████

████████████████████████████████████████ *E.g.*, **Ex. A** (Tr.) at 54:8-23. Such an analysis cannot support a damages award. *See* Phillip E. Areeda and Herbert Hovenkamp, Antitrust Law: An Analysis of Antitrust Principles and Their Application ¶ 657b (4th ed. 2019) ("If the plaintiff's expert's damages study cannot segregate lawful from unlawful practices, then no damages may be awarded on the basis of that study.").

Other courts have excluded expert opinions on similar grounds. *E.g.*, *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 777 (8th Cir. 2004) (holding that expert who assumed that plaintiff's lost profits were caused entirely by defendants' alleged conspiracy without accounting for lawful market conditions should have been excluded); *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1322-23 (11th Cir. 2003) (affirming exclusion of expert who failed to distinguish between lawful conscious parallelism and unlawful cartel behavior); *IQ Prods.*

*Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002) (affirming exclusion of expert who analyzed the effects of two different types of alleged unlawful conduct, one of which had previously been dismissed by the court); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (holding that expert's economic model should have been excluded as it failed to account for market conditions both parties agreed were not anticompetitive).

**II.     Mr. Klein Unreasonably Assumes an Ongoing Conspiracy Continuing Through the End of Trial**

Mr. Klein's opinions are also based on an unreasonable assumption that the ███████ ████████████████████████████████████████████████████████████ ████████████████████████████ **Ex. F** (Rpt.) at ¶¶ 16, 54 and n.57.  Mr. Klein's ████████████████████████████████████████████████████████████ ███████████████████ the undisputed fact that CDK settled with MVSC in October 2019, resulting in the dismissal of claims against both CDK and CVR.  Dkt. 778; Dkt. 818 at 4 n.2.   Furthermore, following the settlement, MVSC is now a member of CDK's 3PA program, **Ex. C**, at 4 (CDK 3PA Partner List), the very program that Reynolds and CDK allegedly conspired to block MVSC from participating in, which according to Mr. Klein, ███████████ ████████████████████████████████████ It defies common sense for Mr. Klein to calculate damages based on the assumption that ████████████████████████ █████████████ after settling MVSC's claims based on that conspiracy.  MVSC only alleges claims of conspiracy against Reynolds, and as of at least October 2019 (the settlement date), there are no entities with whom Reynolds could possibly conspire.

Mr. Klein confirmed at his deposition that ████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████



PUBLIC VERSION

██████████████████████████████████████████████████████████

████████████████████████ **Ex. A** (Tr.) at 83:14-18; 84:22-25; 85:4-17. ████████████

██████████████████████████████████████████████████████ *id.* at

86:23-87:24, ██████████████████████████ *id.* at 85:4-6, ████████████████

█████████████████████ Given that MVSC has released all of its claims against CDK

and CVR, there is no basis for Mr. Klein's assumption that ████████████████████

██████████████████████████████████████████ and his opinions

regarding damages must be excluded.[5]  *See, e.g., Buscaglia v. U.S.*, 25 F.3d 530, 533 (7th Cir.

1994) (expert opinions based on unsupported assumptions are excludable); *Sys. Dev. Integration,*

*LLC v. Computer Sciences Corp.*, 886 F.Supp.2d 873, 877-78 (N.D. Ill. 2012) (excluding expert's

opinions as to damages incurred as a result of a claim previously dismissed on summary judgment).

**III.  Mr. Klein Failed to Apply a Reliable Methodology in Forming his Opinions on Causation**

Mr. Klein's opinions regarding causation are not based on any recognized or accepted

expert methodology and cannot be tested, reviewed or evaluated by other experts.  Mr. Klein's

opinion on causation is that Defendants' ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████ *E.g.,* **Ex. A** (Tr.) at 96:18-97:14; 98:24-99:9;

100:13-101:21.  However, when asked to explain the specific methodology he used to arrive at

this opinion, Mr. Klein's explanation revealed that ████████████████████████████

---

[5]    Mr. Klein's assumption is also contradicted by Dr. Israel, MVSC's liability expert, who opined

████████████████████████████████████████████████████████████
████████████████████████ **Ex. L** (Israel Reply) at ¶ 242.

-11-



\*   \*   \*

**Ex. A** (Tr.) at 102:2-4; 103:2-9.  In sum, Mr. Klein ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████         *Id*. at 102:2-4; 103:2-9; 103:24-104:6.

Mr. Klein's so-called "methodology" is nothing more than inadmissible "*ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable.  Someone else using the same data and methods must be able to replicate the result."  *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2015).[6]  Mr. Klein's subjective assessment of statements and documents that MVSC provided to him, based on his personal experience and observations, is untestable and cannot be replicated by another expert.  Accordingly, Mr. Klein's opinions must be excluded, as courts in the Seventh Circuit have done under similar circumstances.  *See, e.g.*, *id.* (excluding opinion based on "expert intuition," holding that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial

---

[6]   Courts often consider the following nonexclusive factors in determining whether an expert's methodology is reliable and thus helpful to the trier of fact: "(1) whether the proffered theory can and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community."  *Smith v. Ford Motor Co.,* 215 F.3d 713, 719 (7th Cir. 2000) (*citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U .S. 579, 593-93 (1993)) (internal quotation marks omitted).

process.") (collecting cases) (internal quotation marks omitted); *Bielskis v. Louisville Ladder Inc.*, 663 F.3d 887, 894-95 (7th Cir. 2011) (excluding expert opinion based on method expert described as "solid engineering principles that any other engineer would use" because this was not a permissible expert methodology and it was impossible to assess the rate of error).[7]

Furthermore, it is not possible for Mr. Klein to have applied a reliable methodology to arrive at his causation opinions because those opinions are not within his realm of expertise ▮▮▮▮▮▮▮▮▮▮▮. *See Benson*, 941 F.2d at 604 ("the opinion must be an *expert* opinion . . . rather than simply an opinion broached by a purported expert.") (emphasis in original). For example, Mr. Klein ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g* **Ex. A** (Tr.) at 165:20-166:12; 167:5-21; 175:10-176:4; 180:10-19. But Mr. Klein is admittedly ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 24:13-19; 25:2-20; 27:6-11; 303:2-7. Nor does he offer any methodology from the fields of his expertise – ▮▮▮▮▮▮▮▮▮▮▮ – that enable him to scientifically evaluate antitrust causation issues. As such, there is no expert methodology that Mr. Klein is qualified to provide to support his causation opinions regarding decision-making by a wide variety of differently situated people, companies and state agencies, particularly in the absence of supporting documents. *E.g.*, *LG Elecs. U.S.A.,*

---

[7]    *See also U.S. v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991), *amended on other grounds*, 957 F.2d 301 (7th Cir. 1992) ("An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert."); *Dukes v. Illinois Cent. R.R. Co.*, 934 F. Supp. 939, 948, 951 (N.D. Ill. 1996) (excluding causation opinions based on subjective observations and judgment).

*Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 940, 957 (N.D. Ill. 2009) (striking expert's purported "common sense observations" about lay people's understanding of "steam" in the context of advertising about steam dryer, because expert was not qualified in "marketing, consumer surveys[,] consumer perceptions[, or] linguistics" and had "not conduct[ed] any surveys or consumer research to reach these opinions"); *Tietsworth v. Sears, Roebuck and Co.*, No. 5:09-cv-00288-JF (HRL), 2012 WL 1595112, at *4, *8-9 (N.D. Cal. May 4, 2012) (excluding expert opinion that reported failure rates of washing machines were the "tip of the iceberg" due to consumer underreporting; expert had no expertise in consumer behavior).

Mr. Klein is no more qualified than a jury in evaluating evidence and making a factual determination as to causation and the motivations of EVR customers and state regulators. As such, his causation opinions are not helpful and should be excluded. *E.g.*, *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 565 (11th Cir. 1998) (rejecting expert's "characterizations of documentary evidence as reflective of collusion . . . because the trier of fact is entirely capable of determining whether or not to draw such conclusions without any technical assistance from . . . experts"); *Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14-C-1859, 2017 WL 3592775, at *20 (N.D. Ill. Aug. 21, 2017) (opinions regarding state of mind are factual determinations that an expert is no better qualified to make than the jury).

**IV.    Mr. Klein's Opinion Regarding the Harm Suffered by MVSC in the California EVR Market Should be Excluded Because it is Actually the Opinion of MVSC COO Joe Nemelka**

███████████████████████████████    **Ex. A** (Tr.) at 246:19-20 (emphasis added). This is how Mr. Klein described, in his deposition, ███████████████████████ ███████████████████ regarding causation and damages suffered by MVSC in the California EVR market. He does not ███████████████████████████████████

-14-

PUBLIC VERSION

███████████████████████████████████████.[8]

      Mr. Klein opines in his report that ████████████████████████████████████████

██████████████████████████████████████████. **Ex. G** (Reply), at Exhibit

A.  This opinion and these calculations are based on ███████████████████████

██████████████████████████████████████████████ and Mr. Klein

calculates lost profits as to each of those dealerships.[9] **Ex. F** (Rpt.) ¶¶ 68-87.

      Mr. Klein's deposition revealed, however, that ███████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ **Ex. A** (Tr.) at 246:4-

20 ████████████████████████ (emphasis added); *id.* at 248:20-25 ████████████████

██████████████████████████████████████████ *see also* **Ex. H** (Nemelka

Decl.) ¶¶ 12-16. Mr. Klein ███████████████████████████████████████████████████

█████████████████ **Ex. A** (Tr.) at 247:11-16.  He instead █████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ *Id.* at

246:23-247:4 ████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████



---

8    Joe Nemelka's brother is Mike Nemelka, former lead attorney for MVSC, who defended both Joe Nemelka's and Gordon Klein's depositions.

9    These dealerships are assigned to one of the following four categories: ████████████████
██████████████████████████████████████████████████████████████████████████
████████████████████████ *Id.*; **Ex. H** (Nemelka Decl.) ¶¶ 12-16.

PUBLIC VERSION

███████████████████████████████████████████████

Such wholesale reliance on the say-so of MVSC's management to determine MVSC's lost profits is impermissible. *E.g.*, *Victory Records, Inc. v. Virgin Records Am., Inc.*, No. 08-C-3977, 2011 WL 382743, at *2 (N.D. Ill. Feb. 3, 2011) (an expert's assumptions "based on the internal projections of the expert's sponsor lacks the reliability demanded by Rule 702") (*citing Zenith*, 395 F.3d at 420); *Ask Chems., LP v. Computer Packages, Inc.*, 593 Fed. Appx. 506, 510 (6th Cir. 2014) (rejecting expert's wholesale adoption (without evaluation) of client's assumptions as going beyond facts and data of a type reasonably relied upon by experts in his field). Mr. Klein should not be permitted to proffer such opinions because it would allow him, "under the guise of giving expert testimony, to in effect become the mouthpiece of the witness on whose statements or opinions the expert purports to base his opinion." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005); *Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (accord).



████████████████████████████████████████████████████████

**Ex. A** (Tr.) at 198:14-19.  What Mr. Klein did is precisely what an expert may not do.  *Benson*,

941 F.2d at 604 (expert may not make credibility determinations; that is for the jury).

## V.    Mr. Klein's Opinion that Defendants' Interference Caused Harm to MVSC in the Wisconsin EVR Market Fails to Account for Critical, Contradictory Evidence From the State of Wisconsin

Mr. Klein agrees that ██████████████████████████████████████████

████████████████████████ **Ex. A** (Tr.) at 225:7-11.  Mr. Klein also agrees

that ███████████████████████████████████████████████████████

██████ **Ex. F** (Rpt.) ¶ 21, presenting an obvious lawful explanation for why MVSC has been

unable to do business in Wisconsin.  Wisconsin's decision not to approve MVSC as an EVR

provider has nothing to do with Defendants, yet Mr. Klein opines that ███████████████

███████████████████████████████████████ *Id.* at ¶ 109.

Mr. Klein failed to consider evidence directly refuting his opinion.  Although Mr. Klein

asked MVSC ███████████████████████████████████████████████████

██████ (or Reynolds) with direct correspondence from Wisconsin regulators to MVSC expressly

stating that **the State of Wisconsin was closed to all new EVR providers**:

> In recent years you [MVSC] have requested to partner with the Wisconsin Department of Transportation and become a recognized vendor for [EVR] transactions.  **At the time of your request the department was not accepting new vendors into [its] program**.  I'm pleased to announce the department will be embarking on a new path that will allow additional vendors to participate in this program.
>
> \*    \*    \*
>
> We are still developing a definitive timetable, but **our goal to implement new vendors into the program is early 2019**.

**Ex. B** (Dep. Ex. 1213) (emphasis added); *see also* **Ex. A** (Tr.) at 114:10-115:9 ████████



Mr. Klein [REDACTED] **Ex. A**

(Tr.) at 132:23-133:4. He agreed, however, that [REDACTED]

[REDACTED]

**Ex. A** (Tr.) at 130:7-11. MVSC's failure to provide Mr. Klein with directly relevant and contradictory evidence (and Mr. Klein's failure to consider it) renders his opinion inadmissible. *Barber v. United Airlines, Inc.*, 17 Fed. Appx. 433, 437 (7th Cir. 2001) (expert's "cherry-pick[ing]" or selective use of facts that supported his theory while ignoring others fails to satisfy the scientific method required by *Daubert*); *Cates v. Whirlpool Corp.*, Case No. 15-CV-5980, 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017) ("selective blindness" in ignoring relevant contradictory data underscores the unreliability of the expert's methodology).[11]

---

[10] Mr. Klein then [REDACTED] **Ex. A** (Tr.) at 143:2-145:25. Mr. Klein asserts [REDACTED] *Id.* at 143:2-145:3. Reynolds reserves the right to file an additional *Daubert* brief if and when MVSC attempts to submit any additional expert report calculating damages for any state EVR market beyond the four currently covered by Mr. Klein's report (California, Wisconsin, Illinois, Virginia).

[11] This 2017 letter is consistent with other communications from Wisconsin to MVSC – also not produced by MVSC to Reynolds and not provided to Mr. Klein before his opening report. **Ex. J** (Dep. Ex. 1211), at 2 (7/16/13 email from Wisconsin DOT to Joe Nemelka of MVSC: "I should let you know that we rarely add new vendors due to the massive start-up resources we need to dedicate from our side."); **Ex. K** (Dep. Ex. 1212 (8/7/14 letter from Wisconsin DOT to Joe Nemelka rejecting MVSC's application to become an authorized EVR provider in

Mr. Klein maintains, without any supporting documentary evidence, that there is a



**Ex. G** (Reply) ¶ 42; **Ex. A** (Tr.) at 166:7-12. These purported concerns are not reflected

in any of the documents in the record, but this does not concern Mr. Klein because, in his view,

**Ex. G** (Reply) ¶ 45.  But as Mr. Klein later conceded, if

**Ex. A** (Tr.) at 289:5-6; 292:5-6; 289:22-23

Mr. Klein's opinions are inadmissible.  As Mr. Klein himself has conceded, in the absence

of evidence, he can only speculate that

that caused MVSC injury in the Wisconsin EVR

market.  *See Joiner*, 522 U.S. at 146 (opinions that are nothing more than "the *ipse dixit* of the

expert" present "too great of an analytical gap between the data and the opinion proffered" to be

admissible); *Marshfield*, 152 F.3d at 594 (the existence of anticompetitive conduct is nothing but

a "possibility" if it is unsupported by any evidence in the record, and hence, cannot be the basis

for calculating damages); *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998)

("the whole point of *Daubert* is that experts can't 'speculate.'").  And, as described above, not

only does Mr. Klein *lack* evidence to support his opinions regarding the Wisconsin EVR market,

those opinions are directly *refuted* by documents obtained from the State of Wisconsin.

---

Wisconsin because "extensive resources from DMV" were required and because adding
MVSC would offer "no benefit to either DMV or [Wisconsin] customer[s]."));  **Ex. M** (Dep.
Ex. 1214), at 2 (3/15/19 email from Wisconsin DOT to MVSC's lobbyist that current timeline
to accept new EVR vendors is now fall 2019).

Evidentiary support aside, Mr. Klein's opinions regarding the Wisconsin EVR market also lack a reliable methodology. Mr. Klein assumes that Defendants' Interference ███████████ ███████████████████████ **Ex. A** (Tr.) at 120:8-25; 123:2-20. Combining this assumption with Mr. Klein's ███████████████████████████████

███████████████████████████████████████████

███████████████████████████████[12] *Id.* at 165:20-166:21; **Ex. G** (Reply) ¶ 42. This is not a reliable scientific methodology. *E.g.*, *Bielskis*, 663 F.3d at 894 (expert's so-called methodology was akin to "'talking off the cuff' – without data or analysis that we have repeatedly characterized as insufficient."); *Zenith*, 395 F.3d at 418 (expert's testimony must be the product of reliable principles and methods; "relying on intuition . . . won't do."). And again, Mr. Klein is ███████████████████████████████████████

███████████████████████████████ **Ex. A** (Tr.) at 24:13-19; 25:2-13; 303:2-7. For this additional reason, Mr. Klein's opinions regarding the Wisconsin EVR market should be excluded.

## CONCLUSION

The Court should exclude the entirety of Mr. Klein's opinions and proffered testimony; or, in the alternative, exclude those as to California, Wisconsin, and all estimated damages after October 2019.

---

[12] Mr. Klein also added, without further explanation, ████████████████████ ████████████████████████████████████ **Ex. A** (Tr.) at 165:20-166:12.

Dated:  February 28, 2020                Respectfully submitted,

/s/ *Leo D. Caseria*

Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

## CERTIFICATE OF SERVICE

I, Leo D. Caseria, an attorney, hereby certify that on February 28, 2020, I caused a true and correct copy of the foregoing **DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF PLAINTIFF MVSC'S EXPERT GORDON KLEIN** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/      Leo D. Caseria*
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
lcaseria@sheppardmullin.com