**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 <br> Case No. 18-cv-00864 |
| This Document Relates To: <br><br> ALL CASES | Hon. Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert <br><br> **PUBLIC-REDACTED** |

**MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION**
**TO EXCLUDE THE EXPERT TESTIMONY OF DANIEL L. RUBINFELD**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ......................................................................................................................... 2

LEGAL STANDARD ................................................................................................................. 5

ARGUMENT .............................................................................................................................. 6

I.      PROFESSOR RUBINFELD'S TESTIMONY SHOULD BE EXCLUDED IN ITS
ENTIRETY ..................................................................................................................... 6

II.     PROFESSOR RUBINFELD'S CRITIQUES OF CATHARINE LAWTON'S
AUTHENTICOM DAMAGES OPINIONS ARE INADMISSIBLE.......................... 8

      A.  Professor Rubinfeld's Contention That ███████████████████
███████████████ onflicts With Precedent and Record Evidence He Ignores ............... 8

      B.  Defendants' Remaining Critiques of Ms. Lawton's Yardstick Likewise Rely on an
Insufficient Factual Basis ...................................................................................... 13

      C.  Defendants' Untimely Critiques of Ms. Lawton's Yardstick Should Be Barred . 14

III.    PROFESSOR RUBINFELD'S DMCA DAMAGES OPINIONS ARE BASED ON
INSUFFICIENT DATA AND UNHELPFUL TO THE JURY ................................... 15

      A.  Professor Rubinfeld's ████████ Reynolds DMCA Damages Estimate Rests on
Insufficient Data .................................................................................................... 15

      B.  Professor Rubinfeld's CDK DMCA Damages Analysis Rests on Invalid
Statistical Analysis Performed By Another, Unqualified Expert and Conveys
Improper Legal Conclusions ................................................................................... 18

      C.  All Professor Rubinfeld's DMCA Damages Analyses Perform Is Simple Math . 19

      D.  Professor Rubinfeld ████████████████████████████ ............ 20

IV.    PROFESSOR RUBINFELD'S "██████████████████" ANALYSIS IS
INCOHERENT ............................................................................................................. 21

      A.  During His Deposition, Professor Rubinfeld Disclaimed His Report's Definition
of ████████████ And the Only Damages Methodology His Report Discloses 21

      B.  Professor Rubinfeld's "████████████" Analysis Should Be Excluded ...... 22

V.      PROFESSOR RUBINFELD'S ███████████████████████████ ████████████ IS UNRELIABLE ........................................................................... 23

CONCLUSION .............................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**

*Allgood v. General Motors Corp.*, 2006 WL 2669337
(S.D. Ind. Sept. 18, 2006) ................................................18

*Ashley v. Schneider Nat'l Carriers, Inc.*, 2016 WL 3125056
(N.D. Ill. June 3, 2016) .......................................... 18-19

*Baxter Int'l Inc. v. McGaw, Inc.*, 1996 WL 145778
(N.D. Ill. Mar. 27, 1996), *supplemented*, 958 F. Supp. 1313
(N.D. Ill. 1997), *aff'd*, 149 F.3d 1321 (Fed. Cir. 1998) ......................7

*Bone Care Int'l LLC v. Pentech Pharm., Inc.*, 2010 WL 3928598
(N.D. Ill. Oct. 1, 2010)....................................................13

*Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765 (7th Cir. 2014)................10, 14

*Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722 (E.D.N.C. 2007) ...................8

*Clark v. Takata Corp.*, 192 F.3d 750 (7th Cir. 1999) ......................8

*Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*,
650 F. Supp. 2d 314 (S.D.N.Y. 2009)................................25

*DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785 (N.D. Ill. Feb. 28, 2003)...........6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)......................5

*Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609 (7th Cir. 2002).....................7

*Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig., In re*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)..........................5, 8, 11

*GC2 Inc. v. Int'l Game Tech.*, 2018 WL 5921315 (N.D. Ill. Nov. 12, 2018)...............19

███████████████████████████████████████

*GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247
(N.D. Cal. Apr. 16, 2014) .................................................22

*Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*,
1993 WL 387346 (N.D. Ill. Sept. 23, 1993) ......................19

*James Wilson Assocs.*, *In re*, 965 F.2d 160 (7th Cir. 1992)............................................................7

*Lapsley v. Xtek, Inc.*, 689 F.3d 802 (7th Cir. 2012) ....................................................................5

*Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11 (1st Cir. 2011) ..................................17

*M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665 (D. Del. 2016) ...........................................23

*Olinger v. U.S. Golf Ass'n*, 52 F. Supp. 2d 947 (N.D. Ind. 1999) ................................................22

*Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods.*
    *Liab. Litig.*, *In re*, 214 F. Supp. 3d 478 (D.S.C. 2016) ........................................................18

*Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302 (Fed. Cir. 2002).................................................22

*Robinson v. Davol Inc.*, 913 F.3d 690 (7th Cir. 2019)................................................................22

*Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316 (7th Cir. 1996) ...........................................................13

*SEC v. Nutmeg Grp., LLC*, 2017 WL 4925503 (N.D. Ill. Oct. 31, 2017)........................................15

*Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984 (N.D. Ill. 2014)....................................14

*Smith v. Union Pac. R.R.*, 2017 WL 2656583 (N.D. Ill. June 20, 2017) ........................................17

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931)..........................10

*Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139 (7th Cir. 1998) .....................................18

*Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383 (7th Cir. 2000)...........................................7

*TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722 (10th Cir. 1993)..................................................7

*TMI Litig.*, *In re*, 193 F.3d 613 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000)...............10

*Treat v. Tom Kelley Buick Pontiac GMC, Inc.,*
    710 F. Supp. 2d 777 (N.D. Ind. 2010),
    *aff'd on other grounds*, 646 F.3d 487 (7th Cir. 2011)............................................................7

*Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*,
    2010 WL 10076450 (N.D. Ill. Nov. 22, 2010) ..................................................................19

*Trugreen Cos. v. Scotts Lawn Serv.*, 508 F. Supp. 2d 937 (D. Utah 2007) ..................................20

*United States v. City of Miami, Fla.*, 115 F.3d 870 (11th Cir. 1997) ............................................17

*Wasson v. Peabody Coal Co.*, 542 F.3d 1172 (7th Cir. 2008)......................................................25

*Weitz Co. v. Lloyd's of London*, 2007 WL 7131908
    (S.D. Iowa Sept. 28, 2007)....................................................................................................6

**STATUTES AND RULES**

Computer Fraud and Abuse Act, 18 U.S.C. § 1030......................................................................20

Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*.......................1, 15, 16, 17, 18, 19, 20

Fed. R. Civ. P. 26.........................................................................................................................6

Fed. R. Civ. P. 26(a)(2)(B) ..........................................................................................................6

Fed. R. Evid. 702 .........................................................................................................................6

## INTRODUCTION

Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") have served expert reports signed by Professor Daniel L. Rubinfeld stating, among other things, that ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████ Because the Federal Rules do not allow testimony by ventriloquism, the Court should bar Professor Rubinfeld's testimony in its entirety.

Even assuming that the opinions disclosed in his reports are genuinely his own, many of them flunk *Daubert*. *First*, Professor Rubinfeld's principal antitrust opinion – that ██████████

███████████████████████████████████████████████████████

███████████████████████████████████ Ex. A, Rubinfeld Authenticom Rebuttal Rep. ¶ 54 – is foreclosed by decades of precedent ████████████

███████████████████████████████████████████████████████

███████████████ And even if such an opinion were legally permissible, Professor Rubinfeld offers no independent economic analysis to support it, and instead merely parrots the opinions of Defendants' other experts. *Second*, his computation of Defendants' damages under the Digital Millennium Copyright Act, *see* 17 U.S.C. § 1201 *et seq.* ("DMCA"), deploys arithmetic a lay

person could perform. ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ *Third,* ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

*Fourth,* ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Because Professor Rubinfeld – or, more accurately, Professor Rubinfeld's staff – failed to use the rigor *Daubert* requires, the Court should exclude these analyses, if Professor Rubinfeld is allowed to testify at all.

## BACKGROUND

**A.** This motion addresses opinions in five reports bearing Professor Rubinfeld's signature, relating to the cases against Reynolds and CDK brought by Authenticom, Inc., Motor Vehicle Software Corporation ("MVSC"), and the dealership class. Authenticom's damages were estimated by Catharine Lawton; MVSC's, by Professor Gordon Klein. Reynolds and CDK, in turn, assert counterclaims against Authenticom, and CDK asserts counterclaims against certain dealership plaintiffs. Reynolds and CDK have tasked Professor Rubinfeld – an economist whose qualifications Plaintiffs do not challenge – with offering causation and damages (but not liability)

opinions about all of these claims.  One of his reports responds to Ms. Lawton's estimates of Authenticom's damages (Ex. A); Professor Rubinfeld withdrew part of that report via an Errata (Ex. B) prompted by Ms. Lawton's reply report (Ex. C).  Another of Professor Rubinfeld's reports responds to Professor Klein's estimates of MVSC's damages (Ex. D).  Two reports estimate (respectively) CDK's and Reynolds's counterclaim damages (Exs. E & F).  And a fifth report responds to certain criticisms of his CDK counterclaim damages report (Ex. G).

**B.** ████████████████████████████████████████



████████████████ *See* Ex. H.2, Rubinfeld Dep. 421:20-24 ████████████████

Ex. H.1, Rubinfeld Dep. 240:23-241:14; Ex. H.2 at 334:21-335:15 ████████████████

██████████████████████████████████ *id.* 435:5-8 ████████████████████████

██████████████ ); *see also* Ex. H.1 at 20:16-21:5; 130:16-137:15; 203:5-17; 205:12-206:10;

244:15-254:18; 256:12-257:8; 296:17-297:10; 299:10-301:19; Ex. H.2 at 324:8-325:4; 327:23-

328:5; 335:14-336:20; 344:7-19; 350:17-351:16; 356:11-357:18; 386:12-24.[1]

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ ██████████████ ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ *See* Ex. H.1 at 296:5-

297:17 (█████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████ ) (emphasis added).

████████████████████████████████████████████████

████████████████████████████████████████████████

---

[1] *See also* Ex. H.1 (Day 1) Index at 30, 36, 47-48, and Ex. H.2 (Day 2) Index at 20, 26
(████████████████████████████████████████████████
████████ ).



*Id.* 388:6-16. ███████████████████

███████████████████ *See id.* 433:25-435:15.

The day before this *Daubert* motion was filed, Defendants' counsel served an errata sheet including not only transcription errors, but ██ efforts to "██████" the "██████," some of which fundamentally change his answers. *See* Ex. I, Dep. Errata. ███████████████████

███████████████████, Ex. H.2 at 407:25, 408:1, ███████████████████

███████████████ Ex. H.1 at 200:9. ███████████

███████████████████

███████████ Ex. H.2 at 333:8. Although Plaintiffs believe these so-called "errata" are improper, this brief uses asterisks ("*") to denote other portions of his transcript that he purports to change in arguably relevant respects.

## LEGAL STANDARD

"The overriding purpose of the" inquiry under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), "is to scrutinize proposed expert witness testimony to determine whether it has 'the same level of intellectual rigor that characterizes the practice of an expert in the relevant field' so as to be deemed reliable enough to present to a jury." *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 WL 1196990, at *3 (N.D. Ill. Mar. 31, 2017) (Dow, J.) (quoting *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012)). Defendants therefore must "show that" his "'reasoning or methodology properly can be applied to the facts in issue,' and 'the testimony will assist the trier of fact with its analysis of any of the issues involved in the case.'" *Id.* at *2 (quoting *Daubert*, 509 U.S. at 593).

**ARGUMENT**

## I.  PROFESSOR RUBINFELD'S TESTIMONY SHOULD BE EXCLUDED IN ITS ENTIRETY

███████████████████████████████████████████████████████

███████████████████████████████████████ Rule 26 requires an expert who reaches

opinions to be offered at trial to prepare a report that "must contain," among other things, "a

complete statement of all opinions *the witness* will express and the basis and reasons for them,"

"the facts or data considered by *the witness* in forming them," and "any exhibits which will be

used to summarize or support them."  Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).  Rule 702, in

turn, does not permit an expert to testify unless "*the expert's* knowledge will help the trier of fact

to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702 (emphasis added).

By their terms, these rules do not allow experts to become report mills – lending the aura

their credentials imply to opinions they cannot express, supported by analyses with which they are

unfamiliar.  True, staff and counsel may assist experts in preparing their reports, and experts need

not memorize every minute particular of their staff's work.  But if the opinions disclosed are not

truly the product of *the expert's* work, but merely words put in his mouth by staff or counsel, he is

a "highly qualified puppet" whose testimony is inadmissible under both Rule 26 and Rule 702.

*E.g.*, *DataQuill Ltd. v. Handspring, Inc.*, 2003 WL 737785, at *4 (N.D. Ill. Feb. 28, 2003)

("Brodsky could not explain the definition of claim terms that he found present in the accused

devices, could not explain why features satisfied particular claim limitations, and could not

remember for which claims he was provided a claim construction by DataQuill's counsel";

testimony excluded); *Weitz Co. v. Lloyd's of London*, 2007 WL 7131908, at *3 (S.D. Iowa Sept.

28, 2007) ("[The witness's deposition] testimony convinces the court that [he] had little to do with

the report other than assigning the work to [a subordinate] and signing the report after she

completed the research and analysis"; testimony barred); *see also Baxter Int'l Inc. v. McGaw, Inc.*, 1996 WL 145778, at *4 (N.D. Ill. Mar. 27, 1996) (noting an expert's opinion was "disregarded by the court, since it is the court's finding that [the expert] did not independently prepare his expert report, allowing himself to be a 'mouthpiece' for plaintiffs' attorneys"), *supplemented*, 958 F. Supp. 1313 (N.D. Ill. 1997), *aff'd*, 149 F.3d 1321 (Fed. Cir. 1998). ██████████████

████████████████████████████████████████

Moreover, the deposition errata sheet's efforts to salvage ███████████████

█████████████████████ it are improper and should be stricken. *See Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) (stating the Court's belief, "by analogy to the cases which hold that a subsequent affidavit may not be used to contradict the witness's deposition, that a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" (citations omitted)); *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 710 F. Supp. 2d 777, 792 (N.D. Ind. 2010) (errata excluded), *aff'd on other grounds*, 646 F.3d 487 (7th Cir. 2011).

██████████████████████████████████████████ the purpose of Rule 26 and expert depositions: disclosure for the purpose of testing his testimony. That interest is precisely why courts police experts' reliance on hearsay, *see In re James Wilson Assocs.*, 965 F.2d 160, 172-73 (7th Cir. 1992), and why experts may not rely on work done by others if they cannot "demonstrate any basis for concluding that another individual's opinion" is "reliable": doing so precludes thorough cross-examination. *TK-7 Corp. v. Estate of Barbouti*, 993 F.2d 722, 732 (10th Cir. 1993); *cf. Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) (affirming exclusion of testimony and explaining that "responsible science" does not allow even a "well credentialed" scientist to serve as "the mouthpiece of a scientist in a different

- 7 -

specialty"; "[i]f it were apparent that [an econometrician's] study was not cut and dried, the author would have to testify; he could not hide behind" a different witness); *Fluidmaster*, 2017 WL 1196990, at *18 ("A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant.") (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999)).

At a minimum, because ███████████████ "deposition testimony fairly raises questions as to . . . the appropriateness of reliance on [his] consulting team," the Court should hold "a *Daubert* hearing at which [CDK and Reynolds will] bear[] the burden of establishing, by a preponderance of the proof, the appropriateness of [Professor Rubinfeld's] reliance on the work of [his] consulting team." *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 730 (E.D.N.C. 2007); *see also id.* ("The court, in performing its gatekeeping function[,] necessarily must ensure that [an expert] is not merely parroting the opinions of others, but that the matters upon which she will opine are clearly within her area of expertise.").

## II. PROFESSOR RUBINFELD'S CRITIQUES OF CATHARINE LAWTON'S AUTHENTICOM DAMAGES OPINIONS ARE INADMISSIBLE

### A. Professor Rubinfeld's Contention That ███████████████ ███████████████ Conflicts With Precedent and Record Evidence He Ignores

**1.a.** ███████████████████████████████

███████████████████████████████████. *See* Ex. J, Lawton Rep. ███████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████. *See id.* ¶ 21.

Ms. Lawton then estimates Authenticom's damages using the yardstick method.  Under it, an expert identifies a market that is reasonably comparable to the market at issue, but untainted (at least, reasonably so) by the anticompetitive conduct.  The expert then uses that market, with appropriate refinements, as a "but-for" baseline against which to measure the decline of the firm at issue.  The difference estimates damages.  *See generally* Ex. H.1, Rubinfeld Dep. 92:23-101:10 (████████████████████████████████████████████).

Following extensive communication with Authenticom, Ms. Lawton used the company's "██

████████████████████████████████████████████████

██████████████████████████████ – as the yardstick, *see*  Ex. J, Lawton Rep. ¶ 22.  ██████████████████████████████████████

██████████████████████████████████. *Id.* ¶ 511 & Tables 9.1 & 9.2.

██████████████████████████████████

██████████████████████████████ *See* Ex. H.1 Rubinfeld Dep. 92:10-22.

████████████████████████████████████████████████

████████████ *See* Ex. A, Rubinfeld Authenticom Rebuttal Rep. ¶ 21.  ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶ 76; *see also id.* ¶ 18 (██████████████

████████████████████████████).

**b.**  As explained in Plaintiffs' motion to exclude Professor Kevin Murphy's parallel opinion, federal courts have long discredited Defendants' ██████████████████defense

- 9 -

under *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 561-62 (1931), and its progeny. Professor Rubinfeld's opinion is legally impermissible and should be excluded.

      **c.** Moreover, Professor Rubinfeld's ████████████████████████████████ ████████████████████████████████████████████. That "failure to assess the validity of the opinions of the experts he relied upon[,] together with his unblinking reliance on those experts' opinions, demonstrates that the methodology he used to formulate his opinion was flawed under *Daubert* as it was not calculated to produce reliable results." *In re TMI Litig.*, 193 F.3d 613, 716 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (affirming exclusion). ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████ Ex. A, Rubinfeld Authenticom Rebuttal Rep. ¶ 55 & nn. 23-25. ████

████████████████████████████████████████████ *Id.* ¶¶ 56-59 & nn. 26-30.

      Otherwise, Professor Rubinfeld's opinion depends on "subjective impressions," rather than the "facts or data" Rule 703 requires. *Cf. Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 773 (7th Cir. 2014) (exclusion affirmed where expert "entirely failed to personally" deploy his own methodology, leaving "factual deficiencies or discrepancies" as "the result of [his] faulty methods and lack of investigation"). ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████, *see* Ex. A, Rubinfeld Authenticom Rebuttal Rep., Attachment 3: A-30 to A-31 – ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████ Ex. H.1, Rubinfeld Dep. 15:11-18:3*; *see also* 13:12-23; 14:9-17 (███



). 

.  *Cf. Fluidmaster*, 2017 WL 1196990, at *10-11 (excluding opinion lacking an adequate "factual basis" as "unsupported speculation").

," Ex. H.1, Rubinfeld Dep. 55:17-22;[2] 

*see id.* 58:20-59:8;

*id.* 60:25-61:13;

, *id.* 58:2-5.  He volunteered 

*id.* 63:5-7,

*see id.* 62:15-63:12.

*id.* 68:11-69:3;

---

[2] *id.* 52:16-54:4 

*E.g.* Ex. J, Lawton Rep. ¶¶ 378-380, 406-410; Ex. K, Israel Rep. ¶ 130 & nn. 181-84, ¶¶ 139, 169; Ex. L, Israel Reply Rep. ¶¶ 114-15.



, *id.* 69:10-18;

*id.* 71:24-72:7.

. *Id.* 39:25-41:19.

*E.g.*, *id.* 43:19-44:11

*E.g.*, *id.* 74:6-9; *see also id.* 37:14-15; 38:1-2; 38:12-24; 56:12-16; 57:11-13; 58:16-19; 62:24-63:8; 74:6-15; 74:22-24.

*Id.* 24:1-10.

*see id.* 142:19-23. In short,

---

[3] Ex. H.1, Rubinfeld Dep. 25:12-18 *id.* 26:15-27:4

*id.* 42:24

*id.* 47:14-17

*id.* 63:13-15

*id.* 65:23-24 *id.* 69:10-11 *id.* 69:23-70:2

Professor Rubinfeld's but-for-world opinion is only "unscientific speculation," though "offered by a genuine scientist." *Bone Care Int'l LLC v. Pentech Pharm., Inc.*, 2010 WL 3928598, at *5 (N.D. Ill. Oct. 1, 2010) (Dow, J.) (quoting *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996)). It should be excluded.

### B. Defendants' Remaining Critiques of Ms. Lawton's Yardstick Likewise Rely on an Insufficient Factual Basis



. Ex. A, Rubinfeld Authenticom Rebuttal Rep. ¶ 87.

Ex. C, Lawton Reply Rep. ¶¶ 87-97.



*id.* 72:15-73:8

*id.* 77:25-78:3

; *id.* 82:17-19

*id.* 87:3-87:22

*id.* 124:9-13

*id.* 127:14-20

*See* Ex. B. ███████████████████████████████████████████

███████████████████████████     *See* Ex. H.1, Rubinfeld Dep. 123:8-130:5.

Professor Rubinfeld's deposition confirmed that his remaining critiques of Ms. Lawton's

yardstick likewise rest on a "lack of investigation." *Brown*, 765 F.3d at 773. ██████████████

███████████████████████████     *See* Ex. H.1, Rubinfeld Dep. 104:6-

105:3. ██████████████████████████████████████████████

███████████████     *See id.* 122:16-122:21. ██████████████████

████████████████████████████████████████████████████

███████████████████████████ *See id.* 113:8-115:25. █████████████

███████████████████████████████████████████ *id.* 113:13- 25,

███████████████████████████████████████████ *id.* 114:1-14,

███████████████████████████████████████████████ , *id.*

114:22-115:3. ███████████████████████████████████████

███████████████████     *See id.* 132:16-137:15.  His critiques of the composition

of Ms. Lawton's yardstick therefore lack a sufficient "factual basis," *see Fluidmaster*, 2017 WL

1196990, at *10-11, and should be excluded.[4]

**C.  Defendants' Untimely Critiques of Ms. Lawton's Yardstick Should Be Barred**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[4] ██████████████████████████████████████████████████

████████. Ex. H.1, Rubinfeld Dep. 144:16-151:5*

██████████ ; *see Sloan Valve Co. v. Zurn Indus., Inc.*, 33 F. Supp. 3d 984, 1003 (N.D. Ill. 2014)
(St. Eve, J.) (contradictory opinions contributed to exclusion of damages expert's testimony).



██████████████████████████████████ *See* Ex. H.2, Rubinfeld Dep. 458:3-460:25. ██████

████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.* 463:14-

464:21.  This opinion should be barred as untimely under Rules 26 and 37.  *See SEC v. Nutmeg*

*Grp., LLC*, 2017 WL 4925503, at *1 (N.D. Ill. Oct. 31, 2017) (untimely expert disclosure stricken).

If, however, the Court permits Defendants to make this or any other critique not disclosed in

Professor Rubinfeld's reports, Authenticom will supplement Ms. Lawton's report as appropriate.

**III.  PROFESSOR RUBINFELD'S DMCA DAMAGES OPINIONS ARE BASED ON INSUFFICIENT DATA AND UNHELPFUL TO THE JURY**

    **A.  Professor Rubinfeld's ██████ Reynolds DMCA Damages Estimate Rests on Insufficient Data**

      **1.a** ████████████████████████████████████

████████████████████████████████████

██████████████ Ex. F, Rubinfeld Reynolds Rep. ¶ 74. ██████████

████████████████████████████████████

██████████████████████████████████████ *Id.*

¶ 74. ██████████████████████████████

██████████████████████████████████ *See*

*id.* ¶ 51. ████████████████████████████

████████████████████████████████████

*Id.* ¶ 64. ████████████████████████████

████████████████ *See id.* ¶ 74.

      **b.** ████████████████████████████████

████████████████████████████████████

██████████ Ex. H.1, Rubinfeld Dep. 238:10-15. ██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* 240:23-243:24. ███

███████████████████████████████████████████████████

███████████████████████████████████████████████████

*Id.* 243:25-248:3 █████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████ *see id.* 251:7-252:10, ████████████████

███████████████████ *see id.* 252:19-253:19 █████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ *Id.* 254:3-18.

    2. Professor Rubinfeld's Reynolds DMCA analysis hinges on the proposition that

███████████████████████████████████████████████████

████████████████ Ex. F, Rubinfeld Reynolds Rep. ¶ 74. But that factual assumption is faulty,

for reasons Professor Rubinfeld himself anticipated: ████████████████████████████

███████████████████████████████████████ *Id.* ¶ 64.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████ Those numbers meaningfully differ, exactly because Reynolds precluded

Authenticom from delivering what its customers wanted: that is at the heart of its case. *See*

Compl.¶ 232, *Authenticom, Inc. v. CDK Global, LLC*, No. 17-318 (W.D. Wis.), Dkt. 1 ("[I]n

carrying out their campaign to drive out competitors, Defendants have continuously disrupted

Authenticom's ability to access dealer data by, among other tactics, disabling Authenticom's dealer-created log-in credentials.").

In short, Professor Rubinfeld failed to secure sufficient facts or data to support his ██████ ██████████████████ damages estimate. It is therefore inadmissible. *See Smith v. Union Pac. R.R.*, 2017 WL 2656583, at \*9 (N.D. Ill. June 20, 2017) (Dow, J.); *United States v. City of Miami, Fla.*, 115 F.3d 870, 874 (11th Cir. 1997) (reversing where district court credited expert analysis of a dataset used because of an inaccurate factual assumption); *see also Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011) (noting that the Court "may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable") (internal quotation marks omitted).[5]

**3.** Even if Professor Rubinfeld's data work were sound, his analysis suffers from a different, independently fatal problem. ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Ex. F, Rubinfeld Reynolds Rep. ¶ 74. Yet his methodology assumes that ███████████████ █████████████████████████████████████████████████████ – an assumption that enjoys no record support. It, too, is wrong. As noted in Professor Nancy Miracle's rebuttal report – available to Professor Rubinfeld when his reply was served, long before his deposition – "████████████████████████████████████████████████████████████████ ██████████." Ex. M, Miracle Rebuttal Rep. ¶ 81; *see also* Ex. N, DX231 at AUTH_00141204 ("███████████████████████████████████████████████████). He cites no

---

[5] To be clear, Authenticom does not challenge the integrity and reliability of the data as to the facts they actually record. The flaw in Professor Rubinfeld's analysis is not that the data unreliably reflect the facts they were designed to record; it is that the data do not record the facts he needs for the damages methodology he chose, that he knew of that fact at the time he chose that methodology, and that he did nothing to address that obvious logical gap in his analysis.

contrary evidence. Because only an incorrect factual assumption can close the gap between his DMCA analysis and the facts, that opinion should be excluded. *See Target Mkt. Publ'g, Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1144 (7th Cir. 1998) (affirming exclusion of analysis "based upon assumptions that do not legitimately support the conclusion").

### B. Professor Rubinfeld's CDK DMCA Damages Analysis Rests on Invalid Statistical Analysis Performed By Another, Unqualified Expert and Conveys Improper Legal Conclusions

Professor Rubinfeld's DMCA estimates for CDK rely on an entirely different methodology with different fundamental flaws. ███████████████████████████████████████ *See* Ex. E, Rubinfeld CDK Rep. ¶ 78. ███████████████████████████████████████

███████████████████████████████████████ *See* Ex. H.1 at 256:12- 257:8. ████

███████████████████████████████████████████████████████

███████████████████████████████████ *See* Ex. H.2 at 370:14-23.*

As explained in Plaintiffs' separate motion to exclude ████████ testimony, his opinions are unreliable. *See In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Practices & Prods. Liab. Litig.*, 214 F. Supp. 3d 478, 493 (D.S.C. 2016) ("[W]ithout other indicia of reliability, when an expert attempts to draw conclusions about an entire population from a sample-based analysis, 'the sample[] must be chosen using some method that assures the sample[ ] [is] appropriately representative of the larger entity or population being measured.' ") (quoting *Allgood v. General Motors Corp.*, 2006 WL 2669337, at *11 (S.D. Ind. Sept. 18, 2006)). Professor Rubinfeld's derivative opinions should be excluded, as well.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ *See* Ex. E, Rubinfeld CDK Rep. ¶ 78 & Table 5. That characterization is an improper legal opinion. It should be excluded. *See Ashley v. Schneider Nat'l Carriers, Inc.*, 2016 WL

3125056, at *12 (N.D. Ill. June 3, 2016) (Dow, J.) (noting that an "[expert's] opinions as to whether [defendant] violated [the law] are impermissible legal conclusions"). That is particularly true in light of the unsettled questions concerning what constitutes a "violation" of the DMCA. *See GC2 Inc. v. Int'l Game Tech.*, 2018 WL 5921315 (N.D. Ill. Nov. 12, 2018).

### C. All Professor Rubinfeld's DMCA Damages Analyses Perform Is Simple Math



Ex. H.2, Rubinfeld Dep. 381:10-382:13

). That is a sufficient basis to exclude his testimony. *See Triad Capital Mgmt., LLC v. Private Equity Capital Corp.*, 2010 WL 10076450, at *3 (N.D. Ill. Nov. 22, 2010) ("A jury can do simple math and read. . . . In addition, the offering of [such an] opinion may unduly prejudice [the opposing party] by giving the jury the impression that [the expert] did something more than the simple addition and reading that the jury could have done itself."); *see also Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc.*, 1993 WL 387346, at *2 (N.D. Ill. Sept. 23, 1993) (similar).

Ex. E, Rubinfeld CDK Rep. ¶ 77 (emphasis added), , *id.* Table 5.

. Ex. O, Stroz Rep. App'x C ¶ 24-25.

*See id. Second,*



*See* Ex. E, Rubinfeld CDK Rep. ¶ 77.

*See* Ex. O, Stroz Rep. App'x C ¶¶ 42, 49.

*See* Ex. E, Rubinfeld CDK Rep. ¶ 78, Table 5.

**D. Professor Rubinfeld**

*Id.* ¶ 77 n.90 & ¶ 78, Table 5 (

); Ex. H.2, Rubinfeld Dep. 394:2-396:17.

*Id.* 398:6-399:5.

*See Trugreen Cos. v. Scotts Lawn Serv.*, 508 F. Supp. 2d 937, 960-61 (D. Utah 2007) (due to dismissal of claims against various employees, "the court lacks admissible evidence of what damage is attributable to the nine employees remaining in this case."); *cf.* Dealership Class MTD Op., Dkt. 749 at 24 (dismissing counterclaim against dealerships for violations of Computer Fraud and Abuse Act, due to CDK's failure to disaggregate alleged damages: "nothing in the [statute's] language indicates that a single victim can aggregate losses caused by multiple acts of multiple defendants").

# IV. PROFESSOR RUBINFELD'S "██████████████████" ANALYSIS IS INCOHERENT

## A. During His Deposition, Professor Rubinfeld Disclaimed His Report's Definition of ████████████ And the Only Damages Methodology His Report Discloses

**1.** Professor Rubinfeld also estimates ████████████████. Ex. E, Rubinfeld CDK Rep. ¶ 80.  He ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ *Id.* ¶ 81.

████████████████████████████████████████ y.  *Id.*  ████

████████████████████████████████████████████

███████████████████ *See  id.*  ¶  44 ███████████████████

████████████████████████████████████████████

████████████████████████████, & n.55

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Ex. E, ¶ 83. ██████████

████████████████████████████████████████████

████████████████████████ *Id.* ¶¶ 84-85.



**2.** ███████████████████████████████████████████

███████████████████████████████████████████

*see* Ex. H.1, Rubinfeld Dep. 278:25-279:6, ████████████████████ was, *see id.*

279:17-280:14; ████████████████████████████

██████████" *id.* 281:20-22. █████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████." *Id.* 275:24-276:4. ███████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████ *Id.* 246:5-14. ████████████████████

**B. Professor Rubinfeld's "**████████████████**" Analysis Should Be Excluded**

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████. *E.g.*, *Sloan*, 33 F. Supp. 3d at 1001 (excluding

████████████ analysis where expert did "not identify any case law to support his methodology

and his own scholarship contradicts it"); *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *5

(N.D. Cal. Apr. 16, 2014) (excluding an analysis that rested on "no methodology other than [the

expert's] '30 years of experience'" because it was "an impermissible black box without 'sound

economic and factual predicates'") (second set of internal quotation marks quoting *Riles v. Shell

Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)).  Because the Court "cannot evaluate

the reliability of the undisclosed methodology or of the principles that support the methodology,"

*Robinson v. Davol Inc.*, 913 F.3d 690, 696 (7th Cir. 2019) (quoting *Olinger v. U.S. Golf Ass'n*, 52

F. Supp. 2d 947, 950 (N.D. Ind. 1999)), Professor Rubinfeld's analysis should be excluded.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ The Court should exclude the

analysis on this basis, as well. *E.g.*, *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 677-78

(D. Del. 2016) (expert's "loose, vague allegations of technological comparability, without any

explanation, are insufficient, and do not even provide a basis to meaningfully assess technological

comparability," and his "unsubstantiated conclusions about economic comparability, lacking in

analysis, again provide nothing more than *ipse dixit*").

**V.    PROFESSOR RUBINFELD'S** ████████████████████████
███████████████ **IS UNRELIABLE**

**A.**  Professor Rubinfeld also estimates ██████████████████████
████████████████████████████████ Ex. F, Rubinfeld Reynolds Rep.

¶ 92. ██████████████████████████████████████████

███████████████████████████████████████████████

██████████████ *Id.* ¶¶ 94-100. █████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████ *Id.* ¶ 101. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████ *Id.* ¶ 103. ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ *Id.* ¶ 104. ████████████████████

█████████████████████████ *See id.* Table 6.

███████████████████████████████████████████

████████████████████████████████████████████████

████ Ex. E, Rubinfeld CDK Rep. ¶ 102. █████████████

████████████████████████████████████████████████

██████████████████████ *Id.* ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████ *Id.* ¶ 105 & Table 9.

**B.** ████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████ *Id.* ¶ 100; *see also* Ex. F, Rubinfeld Reynolds Rep. ¶ 101. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████ *See* Ex. F, Rubinfeld Reynolds Rep. ¶ 104 & Table 6. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

Ex. E, Rubinfeld CDK Rep. ¶¶ 102-105 & Table 9.  Because Professor Rubinfeld ███████

████████████████████████████████████████████████, they should be excluded.

*Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (affirming exclusion where

"the figures for a month from [just] one customer were extrapolated to arrive at a number

supposedly representing *twenty years* of alleged underpayment"); *Compania Embotelladora Del*

*Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 320 (S.D.N.Y. 2009) (similar).

**CONCLUSION**

Professor Rubinfeld's testimony should be excluded.


Dated:  February 28, 2020                            Respectfully submitted,

*/s/ Peggy J. Wedgworth*                           */s/ Derek T. Ho*
Peggy J. Wedgworth                                 Derek T. Ho
**MILBERG PHILLIPS GROSSMAN LLP**          **KELLOGG, HANSEN, TODD,**
One Pennsylvania Plaza, 19th Floor                  **FIGEL & FREDERICK, P.L.L.C.**
New York, NY 10119                                 1615 M Street, NW, Suite 400
(212) 594-5300                                     Washington, D.C. 20036
pwedgworth@milberg.com                             (202) 326-7900
                                                   dho@kellogghansen.com

*MDL Co-Lead Counsel*

<u>**CERTIFICATE OF SERVICE**</u>

  I, Derek T. Ho, an attorney, hereby certify that on February 28, 2020, I caused a true and correct copy of the foregoing **MDL PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF DANIEL L. RUBINFELD** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system. Copies were served on counsel of record via email.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
