# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| | Hon. Robert M. Dow, Jr. |
| *This document relates to:* | Magistrate Judge Jeffrey T. Gilbert |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.); *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, No. 1:18-cv-2521 (N.D. Ill.); *MVSC v. CDK Global, LLC*, No. 1:18-cv-865 (N.D. Ill.) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS AND PROFFERED TESTIMONY OF DR. MARK ISRAEL

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND ARGUMENT ...........................................................................1

I. Dr. Israel's Conspiracy Opinions Are Inadmissible Under Rule 702
And *Daubert.* ....................................................................................................1

    A. Dr. Israel's Opinions On ████████████ ..............................................2

    B. Dr. Israel's ██████████████ Opinions Lack Any Reliable
Foundation And Are Not Helpful To The Jury...................................4

    C. Dr. Israel Concluded That Defendants' Actions Resulted From
Conspiracy Without Any Reliable Economic Analysis......................7

    D. Dr. Israel's Interpretation Of Documents Is Not Expert Analysis....9

    E. Dr. Israel Fails To Consider Obvious Alternative Explanations. ....11

        1. Dr. Israel Fails To Consider Obvious Non-Collusive Explanations
For ███████████████████ ...................................................11

        2. Dr. Israel Ignored Obvious Non-Collusive Reasons ██████████
████████████████.................................................................114

II. Dr. Israel's ██████████████████████████████
Cannot Help The Jury Because They Do Not Model ████████████
████████████████. ......................................................................16

III. Dr. Israel's Damages Opinions Do Not Account For Lawful Conduct
In The But-For World. .......................................................................19

IV. Dr. Israel Fails To Reliably Define The "Data Integration
Services" Market...............................................................................222

V. Dr. Israel's MVSC Liability Opinions Are Not Based On
Any Economic Analysis (On Behalf of Reynolds Only).....................24

CONCLUSION ........................................................................................................25

PUBLIC REDACTED VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tobacco Co. v. United States*,
   328 U.S. 781 (1946) .................................................................................................6, 7

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015) .........................................................11

*Authenticom, Inc. v. CDK Global, LLC*,
   874 F.3d 1019 (7th Cir. 2017) .................................................................................14

*Bielskis v. Louisville Ladder, Inc.*,
   663 F.3d 887 (7th Cir. 2011) .....................................................................................8

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
   152 F.3d 588 (7th Cir. 1998) .............................................................................18, 21

*Bogathy v. Union Pac. Rr.*,
   2020 WL 419406 (N.D. Ill. Jan. 24, 2020) ...............................................................1

*Boye v. Connor Corp.*,
   2014 WL 4772720 (E.D. Mich. Sept. 24, 2014) .......................................................4

*Brown Shoe Co. v. United States*,
   370 U.S. 294 (1962) ................................................................................................22

*Brown v. Burlington N. Santa Fe. Ry. Co.*,
   765 F.3d 765 (7th Cir. 2014) .............................................................................11, 13

*Cameron v. Werner Enters., Inc.*,
   2015 WL 4459068 (S.D. Miss. July 21, 2015) .........................................................7

*Children's Broadcasting Corp. v. Walt Disney Co.*,
   245 F.3d 1008 (8th Cir. 2001) .................................................................................20

*City of Tuscaloosa v. Harcros Chemicals, Inc.*,
   158 F.3d 548 (11th Cir. 1998) .................................................................................11

*Clark v. Takata Corp.*,
   192 F.3d 750 (7th Cir. 1999) ...................................................................................20

*In re Dairy Farmers of Am., Inc.*,
   801 F.3d 758 (7th Cir. 2015) ...................................................................................10

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..................................................................................................1

PUBLIC REDACTED VERSION

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
43 F.3d 1311 (9th Cir. 1995) ..................................................19

*Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ..................................................25

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009)..........................23

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)................................................................20

*In re Graphics Processing Units Antitrust Litig.*,
253 F.R.D. 478 (N.D. Cal. 2008) ............................................18

*Schachar v. Am. Acad. of Ophthalmology, Inc.*,
870 F.2d 397 (7th Cir. 1989) ....................................................5

*Jamsport Entm't, LLC v. Paradama Prods., Inc.*,
2005 WL 14917 (N.D. Ill. Jan. 3, 2005) .................................10

*Kilpatrick v. Breg, Inc.*,
613 F.3d 1329 (11th Cir. 2010) ................................................9

*Lees v. Carthage Coll.*,
714 F.3d 516 (7th Cir. 2013) ....................................................4

*Lewis v. CITGO Petroleum Corp.*,
561 F.3d 698 (7th Cir. 2009) ..................................................19

*In re Live Concert Antitrust Litig.*,
863 F. Supp. 2d 966 (C.D. Cal. 2012) .....................................23

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) ......................................25

*Luitpold Pharm. Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)..........................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)..................................................................7

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983) ................................................21

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005)................................................................................11

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*,
    877 F.2d 1333 (7th Cir. 1989) ...............................................................................10

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
    465 U.S. 752 (1984).................................................................................................6

*O'Conner v. Commonwealth Edison Co.*,
    807 F. Supp. 1376 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir. 1994)..................8

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
    629 F.3d 697 (7th Cir. 2011) ............................................................................7, 15

*Reed v. Advocate Health Care*,
    268 F.R.D. 573 (N.D. Ill. 2009)............................................................................18

*RLJCS Enters., Inc. v. Prof'l Ben. Trust Multiple Emp'r Welfare Ben. Plan & Tr.*,
    487 F.3d 494 (7th Cir. 2007) ..................................................................................9

*Schiller & Schmidt, Inc. v. Nordisco Corp.*,
    969 F.2d 410 (7th Cir. 1992) .............................................................................9, 21

*SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*,
    188 F.3d 11 (1st Cir. 1999)....................................................................................19

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ..............................................................................4

*United States v. Hoang*,
    891 F. Supp. 2d 1355 (M.D. Ga. 2012) ..................................................................5

*United States v. Moore*,
    521 F.3d 681 (7th Cir. 2008) ................................................................................13

*United States v. Welch*,
    368 F.3d 970 (7th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112 (2005)......................4

*Va. Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*,
    98 F. Supp. 2d 729 (W.D. Va. 2000) ...................................................................23

*Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko*,
    540 U.S. 398 (2004)...............................................................................................22

PUBLIC REDACTED VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Viamedia, Inc. v. Comcast Corp.*,
— F.3d —, 2020 WL 879396 (7th Cir. Feb. 24, 2020) ..........................................................10

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
395 F.3d 416 (7th Cir. 2005) ........................................................................................................6

## INTRODUCTION AND ARGUMENT

Starting with their Complaints and through two years of discovery, Plaintiffs Authenticom, Inc. ("Authenticom"), Loop, LLC ("AutoLoop"), and Motor Vehicle Software Corporation ("MVSC") pursued an alleged conspiracy between CDK and Reynolds, beginning around February 2015, to block third-party access to their dealer management systems ("DMSs"). ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Even if the Court permits Plaintiffs to proceed with their belatedly disclosed theory, *but see* Dkt. 775 (Motion to Bar), Dr. Israel's conspiracy opinions are unreliable, for they derive from precisely the sort of results-driven analysis that Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), exist to exclude. In addition, as detailed below, Dr. Israel's opinions as to ████████ vendor class damages, market definition, and liability in the *MVSC* case are deficient.[1]

## I.      Dr. Israel's Conspiracy Opinions Are Inadmissible Under Rule 702 And *Daubert*.

Dr. Israel's conspiracy opinions are inadmissible for four main reasons: (1) his opinions are hopelessly vague and therefore unreliable and unhelpful; (2) he uses no reliable economic methodology to conclude that the evidence is more consistent with conspiracy than unilateral conduct; (3) he offers lay interpretation of the evidence without economic analysis; and (4) he ignores obvious non-conspiratorial explanations for Defendants' conduct and thus fails to offer reliable economic analysis as to why Defendants' conduct was not in their unilateral self-interest.

---

[1] *See Bogathy v. Union Pac. Rr.*, 2020 WL 419406, at *2-3 (N.D. Ill. Jan. 24, 2020) (describing *Daubert* standard). "Ex. __" refers to the exhibits attached to the Declaration of Daniel T. Fenske, filed concurrently.

PUBLIC REDACTED VERSION

### A.      Dr. Israel's Opinions On "Openness."

Dr. Israel opines that ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

      ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

      ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

Dr. Israel could not give concrete meaning to these formulations.

PUBLIC REDACTED VERSION

**B.  Dr. Israel's Vague "Openness" Opinions Lack Any Reliable Foundation And Are Not Helpful To The Jury.**

An expert must employ "reliable principles and methods" and "reliably appl[y] the principles and methods to the facts of the case." *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013). Expert testimony also must "'assist the trier of fact,'" meaning it must "concern[] a matter beyond the understanding of the average person, assist[] the jury in understanding facts at issue, or put[] the facts in context." *United States v. Welch*, 368 F.3d 970, 973-74 (7th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112 (2005).

Hopelessly vague opinions fail these standards. Reliability is undermined when "the very meaning of [the expert's] basic opinion is uncertain" or "impossible to discern." *United States v. Frazier*, 387 F.3d 1244, 1264-65 (11th Cir. 2004) (en banc). Likewise, vague opinions make it "very difficult" for jurors to "make even an informed assessment" of the issues in the case. *Id.* at 1265. Indeed, an "imprecise opinion easily could serve to confuse the jury, and might well [mislead] it." *Id.* at 1266. Courts thus "regularly exclude vague and imprecise opinions because they will not assist the trier of fact." *United States v. Hoang*, 891 F. Supp. 2d 1355, 1358 (M.D. Ga. 2012); *see also Boye v. Connor Corp.*, 2014 WL 4772720, at *5 (E.D. Mich. Sept. 24, 2014)

**PUBLIC REDACTED VERSION**

("imprecise and unspecific testimony should be excluded because it would not assist the jury").

Dr. Israel's vague opinions as to the terms of Defendants' supposed conspiracy lack a reliable foundation and therefore cannot assist the jury. *First*, he fails to define ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

By refusing to provide any firm sense of what an agreement as to ████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

*Second*, Dr. Israel's inability to define ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████ This is pure

blather. ██████████████████████████████████████████████████

██████████████████████████████████████████ The malleability of Dr. Israel's

theory makes a fair test impossible. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416,

419 (7th Cir. 2005) (a reliable opinion is one that is "testable," meaning "[s]omeone else using the

same data and methods must be able to replicate the result").

The legal standard that would apply at trial drives home the point that Dr. Israel's abstract,

untestable opinion will be useless to the jury, if not affirmatively misleading. To decide whether

Defendants ██████████████████████████ the jury must determine whether each "had a conscious

commitment to a common scheme designed to achieve an unlawful objective," *Monsanto Co. v.

Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (quotations omitted), meaning "a meeting of

minds in an unlawful arrangement." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946).

For jurors to assess whether a "meeting of minds" occurred, Plaintiffs must be "very clear" in

identifying "the subject matter of the claimed conspiracy." Areeda & Hovenkamp, *Antitrust Law:

An Analysis of Antitrust Principles & Their Applications* ¶ 1416 (last updated Aug. 2019); *see also

id.* ¶ 1404 ("As always, it is important to be very precise in identifying the content of the agreement

charged.").

Dr. Israel is anything but "clear" in defining the nature of the alleged conspiracy. Plaintiffs

pleaded this case as one about CDK's agreement to "close" its system, *see supra* p. 2, yet Dr. Israel

███████████████████████████████████████████████████████████

6

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Dr. Israel does not explain what CDK and Reynolds had a "meeting of minds" to do. *Am. Tobacco,* 328 U.S. at 810. His opinions are simply "too imprecise and vague to help the trier of fact." *Cameron v. Werner Enters., Inc.*, 2015 WL 4459068, at *3 (S.D. Miss. July 21, 2015).

### C. Dr. Israel Concluded That Defendants' Actions Resulted From Conspiracy Without Any Reliable Economic Analysis.

Not only is Dr. Israel unable to define ████████████████ he also fails to apply a reliable economic methodology to show that Defendants acted contrary to their respective unilateral self-interests. To prevail, Plaintiffs must put forth evidence "tend[ing] to exclude the possibility that" CDK and Reynolds "acted independently" in deciding to secure their respective DMSs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (quotations omitted). If Defendants' conduct is at least "equally consistent with [their] permissible independent interests as it is with improper activity," then Plaintiffs' conspiracy claims fail. *Omnicare, Inc. v. UnitedHealth Grp.*, Inc., 629 F.3d 697, 707 (7th Cir. 2011).

Here, Dr. Israel asserts that ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Dr. Israel uses no reliable methodology to reach that conclusion. ████████████████

████████████████████████████████████████████

██████████████████████████ ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████ An expert

who makes "no attempt to test [a] hypothesis" that is "certainly capable of being tested" should be

excluded. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011).

Dr. Israel's failure to test his hypothesis is inexplicable in light of ████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███ Ex. 46, Dec. 2006 *Automotive News* article. ███████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Dr. Israel's *reason* for not testing his hypothesis further condemns his opinion. ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████ This circular

reasoning—███████████████████████████████████████████████████

███████████████████████████████████████ —is pure assertion. *See O'Conner v.*

*Commonwealth Edison Co.*, 807 F. Supp. 1376, 1396 (C.D. Ill. 1992), *aff'd*, 13 F.3d 1090 (7th Cir.

1994) (excluding "circular" expert testimony). ██████████████████████████

**PUBLIC REDACTED VERSION**

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████ *See RLJCS Enters., Inc. v. Prof'l Ben. Trust Multiple Emp'r Welfare Ben. Plan & Tr.*, 487 F.3d 494, 498 (7th Cir. 2007) ("core" issue "had to be addressed, not assumed away").

Dr. Israel relies upon other logical fallacies as well. ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████ *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (when evaluating expert testimony, "*[p]ost hoc ergo propter hoc* will not do"); *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1343 (11th Cir. 2010) (same).

Finally, any suggestion that CDK and Reynolds needed to conspire to achieve their objectives is inconsistent ████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████

### D. Dr. Israel's Interpretation Of Documents Is Not Expert Analysis.

Critical to Dr. Israel's opinions ████████████████████████████████████████

[REDACTED] As the Seventh Circuit has made clear, however, one cannot infer a conspiracy from communications among competitors with legitimate reasons to communicate. *See In re Dairy Farmers of Am., Inc.*, 801 F.3d 758, 763 (7th Cir. 2015). [REDACTED]

[REDACTED]

In any event, Dr. Israel's opinions about these communications are not based on economic analysis. An expert's interpretation of business communications is helpful to the jury only where the expert "uses some kind of specialized knowledge to place the litigated events into context." *Viamedia, Inc. v. Comcast Corp.*, — F.3d —, 2020 WL 879396, at *43 (7th Cir. Feb. 24, 2020) (quotations omitted). By contrast, an expert who merely attaches his personal interpretation to documents without reference to any specialized expertise does not satisfy Rule 702. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1340 (7th Cir. 1989).

Dr. Israel's interpretation of communications between Reynolds and CDK executives is inadmissible because he did not apply any specialized economic knowledge to his interpretation. Rather, [REDACTED]

[REDACTED] Economists "have no special skill in reading documents and relating them to actual behavior." George J. Stigler, *What Does an Economist Know?*, 33 J. Legal Educ. 311, 311 (1983). Dr. Israel is thus no "more competent than the average juror" at interpreting these communications or "divining . . . the intent" behind them. *Jamsport Entm't, LLC v.*

*Paradama Prods., Inc.*, 2005 WL 14917, at *10 (N.D. Ill. Jan. 3, 2005); *see also, e.g.*, *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 565, 567 n.27 (11th Cir. 1998) (barring economic testimony "characterize[ing] documentary evidence as reflective of collusion").

Finally, Dr. Israel did not evaluate these communications using the methodology that he states economists should use. He testified that, ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

*Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *4 (S.D.N.Y. Aug. 20, 2015).

### E.     Dr. Israel Fails To Consider Obvious Alternative Explanations.

Experts must account for "obvious alternative explanations." *Brown v. Burlington N. Santa Fe. Ry. Co.*, 765 F.3d 765, 773-774 (7th Cir. 2014) (quotations omitted). While they "need not consider every possible factor to render a 'reliable' opinion," experts must consider "enough factors to make [their] opinion sufficiently reliable in the eyes of the court." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1355 (Fed. Cir. 2005). In concluding there was a conspiracy, Dr. Israel ignored a host of alternative non-conspiratorial explanations for his observations.

### 1.     Dr. Israel Fails To Consider Obvious Non-Collusive Explanations For DMS Switching Patterns.

Dr. Israel examined ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

*First*, Dr. Israel failed to consider other changes in the competitive landscape. To determine

whether ████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

Dr. Israel's decision to ignore these possibilities is baffling ████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████ Dr. Israel

needed to account for these possibilities before concluding that the switching data ████████

██████████████████████████████████████████

*Second*, Dr. Israel ignored differences in dealer preferences. ██████████████████

**PUBLIC REDACTED VERSION**

*Third*, Dr. Israel concluded that

### 2. Dr. Israel Ignored Obvious Non-Collusive Reasons For The DMI Wind-Down.

Dr. Israel's opinion that ███████████████████████████████████ ██████████████████████████████████████████████████████████ These negotiations led to the February 2015 signing of three contracts: the Data Exchange Agreement ("DEA"), the 3PA Agreement, and the Reynolds Interface Agreement ("RCI Agreement"). Ex. 23, DEA; Ex. 24, 3PA Agmt.; Ex. 25, RCI Agmt. The DEA provided a process for a "wind-down" of what Reynolds deemed unauthorized system access by two CDK business units, DMI and IntegraLink (collectively, "DMI"), to Reynolds's DMS, including assistance to DMI's clients wishing to transition from DMI to authorized methods of data access or integration. Ex. 23, DEA § 4. ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████ ██████████████████████████████ resulted in the February 2015 signing of the DEA. In the 3PA and RCI Agreements, Reynolds and CDK each agreed to certify certain of the other's applications into their integration programs. Ex. 24; Ex. 25. "Notably, nothing in any of the three agreements required either CDK or Reynolds to block third-party access to its own data management system." *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2017).

Dr. Israel reaches his opinion that ████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

It is not sufficient under Rule 702 to simply assert that

The remainder of Dr. Israel's analysis is not based on sound methods.

---

[2] *See, e.g.,*

**PUBLIC REDACTED VERSION**

███████████████████████████████████████████████████

Finally, Dr. Israel contends that ████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

II.    **Dr. Israel's** ████████████████████████████ **Cannot Help The Jury Because They Do Not Model** ████████████████████████

Dr. Israel's opinions rest on t███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

Dr. Israel purports to show ██████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████

The central flaw in Dr. Israel's p████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ ████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

███████████████████████████ ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

As this example shows, no reasonable jury could use Dr. Israel's model to determine

██████████████████████████████████████████████████████████████████████████

---

[3] ████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████
████████████████████████████████████

[4] ██████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████ Courts

have recognized that methodologies like Dr. Israel's "can lead to serious analytical problems"

because "average prices may combine the prices of different package sizes of the same product or

of somewhat different products. When this happens, the average price paid by a customer can

change when the mix of products that the customer buys changes—even if the price of no single

product changed." *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 494 (N.D.

Cal. 2008) (quotations omitted); *see also Reed v. Advocate Health Care*, 268 F.R.D. 573, 592

(N.D. Ill. 2009) (finding that a similar methodology was misleading).

The Seventh Circuit has rejected an expert's pricing analysis based on similar

methodological errors. In *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, an

expert compared a defendant medical clinic's prices with those of other clinics, but only "on the

basis of price per patient . . . rather than price per service." 152 F.3d 588, 594 (7th Cir. 1998). The

Seventh Circuit held that "no reasonable jury" could calculate damages from the expert's analysis

because it would have shown a relative price increase merely if the defendant "provided on average

more treatment per patient than other providers." *Id.*

This flaw is particularly problematic given that the record contains ██████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ This decision, by itself, renders his

analysis unreliable and justifies excluding his "pricing" model. *See Graphics Processing*, 253

F.R.D. at 494 (rejecting expert average price analysis where expert had "all of the necessary data

set to correlate individual products" but "abstained and presented nothing of the sort").

Plaintiffs bear the burden to show that Dr. Israel's methodology is reliable. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). That includes the obligation to "vouchsafe the reliability of the data on which [the expert] relies and explain how the cumulation of that data was consistent with the standards of the expert's profession." *SMS Sys. Maint. Servs., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 25 (1st Cir. 1999). ██████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (holding that "bald assurance" that methods are generally and reasonably accepted is "not enough").[5]

## III. Dr. Israel's Damages Opinions Do Not Account For Lawful Conduct In The But-For World.

Dr. Israel calculates ████████████████████████████████████████████

████████████████████████████ ██████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[5] Dr. Israel purports to account for this issue in his reply report but does not. ██████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

[6] Dr. Israel only calculated damages for the vendor class case (in which Reynolds is not a defendant). Catharine Lawton calculated damages for Authenticom (in which both CDK and Reynolds are defendants), and Gordon Klein calculated MVSC's damages (in which CDK is no longer a defendant). Defendants' *Daubert* brief as to Ms. Lawton's opinions shows that her methodology is unreliable for similar reasons as to those described here (and others).

████████████████████████████ That opinion is inadmissible because Dr. Israel offers no way to separate price increases from lawful versus unlawful conduct, as required.

As an initial matter, Dr. Israel opines (without analysis, *see* § I.C *supra*) ████████████



████████████████████ This unexplained conflict in Dr. Israel's opinions shows that his methodology is unreliable, as it ultimately rests on nothing more than his say-so. *See, e.g.*, *Luitpold Pharm. Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *8 (S.D.N.Y. Sept. 16, 2015) (excluding expert who was "internally inconsistent and fail[ed] to meet *Daubert*'s standards"); *Children's Broadcasting Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1018 (8th Cir. 2001) (affirming exclusion: "[t]he assertion that any or all of the alleged wrongful acts would have caused the same outcome is dubious"); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("*ipse dixit*" inadmissible); *Clark v. Takata Corp.*, 192 F.3d 750, 759 (7th Cir. 1999) (same).

In any event, Dr. Israel's analysis makes clear that he did not assume the but-for world he should have. "A fundamental step in computing antitrust damages is *to envision the manner in which a particular market would have developed*, assuming that the antitrust violation did not occur and holding *every other feature* of the actual world constant." ABA Section of Antitrust Law, Proving Antitrust Damages 89 (3d ed. 2017) (emphasis added). Thus, "[w]hen a plaintiff

**PUBLIC REDACTED VERSION**

improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1162 (7th Cir. 1983); *see Blue Cross*, 152 F.3d at 593 (similar).

That is exactly the error Dr. Israel committed here: ██████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████

Dr. Israel cannot rest his conspiracy opinions on the premise that ████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████ He thus attributes to the conspiracy harm from *lawful* behavior, meaning his opinions cannot assist the jury and flow from an unreliable methodology. *See MCI*, 708 F.2d at 1162; *Schiller*, 969 F.2d at 415-16.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

Plaintiffs may respond that because they bring unilateral claims, this critique would have no effect if the jury finds for Plaintiffs on both their conspiracy *and* unilateral claims. That does not save Dr. Israel's opinion. Dr. Israel never opines ████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████ ████████████████████████████ ██████████ And in *AutoLoop*, this Court has dismissed any unilateral claim based on CDK's refusal to deal with hostile third parties, showing that a *unilateral* decision to block third party integrators is not unlawful. Dkt. 504 at 27-28 ("[T]o the extent Plaintiff seeks to bring a Section 2 claim based on any purported refusal to deal, Plaintiff's Section 2 claim fails."). Finally, a unilateral decision simply to raise prices is not unlawful as a matter of law. *See, e.g.*, *Verizon Comm'ns Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398, 407 (2004) (the "charging of monopoly prices[] is not only not unlawful; it is an important element of the free-market system").

## IV. Dr. Israel Fails To Reliably Define The "Data Integration Services" Market.

A relevant market is defined by those products that are "reasonably interchangeab[le]"— that is, are "substitutes" for each other. *See Brown Shoe Co. v. United States,* 370 U.S. 294, 325 (1962). Dr. Israel assesses market definition via t████████████████████████████

**PUBLIC REDACTED VERSION**

[REDACTED]

Courts recognize that "mechanical application" of the hypothetical monopolist test "may provide misleading answers to the economic questions raised under antitrust laws." *Va. Vermiculite Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 738 (W.D. Va. 2000) (quotations omitted). In *In re Live Concert Antitrust Litig.*, the court excluded an expert who defined the market using this test, but did not start with the narrowest possible definition for a product and expand it until he was satisfied that all reasonable substitutes were included (as both the merger guidelines require and [REDACTED]. 863 F. Supp. 2d 966, 988-89 (C.D. Cal. 2012). Instead, the expert assumed a relevant market and then "looked for corroborating evidence without meaningfully testing this assumption." *Id.*; *see also In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401, at *7-8 (S.D.N.Y. Sept. 30, 2009) (excluding opinion for failure to meaningfully consider product market definition).

Dr. Israel apply a flawed test here: [REDACTED]

Most glaringly, Dr. Israel did not apply any reliable methodology when he [REDACTED]

**PUBLIC REDACTED VERSION**

Ignoring data in favor of anecdotes—and doing so in such an inconsistent way—is not a reliable methodology.

Dr. Israel's market definition is

## V. Dr. Israel's MVSC Liability Opinions Are Not Based On Any Economic Analysis (On Behalf of Reynolds Only).

Dr. Israel's opinions that

[7] To be sure, i

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████ These opinions are inadmissible because they rest on

████████████████████████████████████████████████████

Dr. Israel relies exclusively on ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

As explained, it is not proper economic testimony for an expert witness to provide a lay interpretation of record evidence. *See* § I.D *supra*. It is even worse for an expert witness to vouch for "characterizations" of record evidence by a party to the litigation. *E.g., Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) (expert is not allowed, "under the guise of giving expert testimony, to in effect become the mouthpiece of the witness on whose statements or opinions the expert purports to base his opinion.") (*citing in part Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (expert may not testify for the purpose of "vouching for the truth" of another's opinions)). Thus, Dr. Israel's opinions ████████ ███████████████████████████████████████████████████████████.

## CONCLUSION

For the foregoing reasons, Dr. Israel's opinions should be excluded.

25

**PUBLIC REDACTED VERSION**

Dated: February 28, 2020               Respectfully submitted,

/s/ *Aundrea K. Gulley*              /s/ *Britt M. Miller*
Aundrea K. Gulley                      Britt M. Miller
Brian T. Ross                          Michael A. Scodro
Brice A. Wilkinson                 Daniel T. Fenske
Ross A. MacDonald               Matthew D. Provance
GIBBS & BRUNS LLP              MAYER BROWN LLP
1100 Louisiana Street             71 South Wacker Drive
Suite 5300                         Chicago, IL 60606
Houston, TX 77002               (312) 782-0600
(713) 751-5258                   bmiller@mayerbrown.com
agulley@gibbsbruns.com        dfenske@mayerbrown.com
bross@gibbsbruns.com          mprovance@mayerbrown.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com     Mark W. Ryan
                                 MAYER BROWN LLP
Michael P.A. Cohen             1999 K Street NW
Leo D. Caseria                    Washington, DC 20006
SHEPPARD MULLIN RICHTER & HAMPTON, LLP  (202) 263-3000
2099 Pennsylvania Avenue NW, Suite 100  mryan@mayerbrown.com
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com     *Counsel for Defendant*
lcaseria@sheppardmullin.com     *CDK Global, LLC*

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, hereby certify that on February 28, 2020, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS AND PROFFERED TESTIMONY OF DR. MARK ISRAEL** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Britt M. Miller*

Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
