**PUBLIC REDACTED VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:*<br><br>THE DEALERSHIP PUTATIVE CLASS ACTION | Hon. Robert M . Dow, Jr.<br><br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM IN SUPPORT OF DEFENDANT CDK GLOBAL, LLC'S
MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF
DR. MICHAEL A. WILLIAMS**

**PUBLIC REDACTED VERSION**

## TABLE OF CONTENTS

**Page**

INTRODUCTION AND ARGUMENT ........................................................................... ii

I.  The Court Should Exclude Dr. Williams's Damages Opinions. ....................................... 2

    A.  Dr. Williams's "Direct" Damages Model Is Contrary To Federal Law. .............. 2

    B.  Dr. Williams's Entire Direct/Indirect Damages Model Is Unreliable. ................. 5

        1.  Dr. Williams Did Not Justify His "Parallel Paths" Assumption............... 5

        2.  Dr. Williams Fails To Consider Unilateral Market Power. ..................... 7

        3.  Dr. Williams's Model Calculates Damages For Both Live And Dismissed Claims..................................................................... 9

II. The Court Should Exclude Dr. Williams's Conspiracy Opinions. ................................ 11

    A.  Dr. Williams Fails To Analyze The Question At The Heart Of This Case. ........ 11

    B.  Dr. Williams's "Plus-Factors" Analysis Is Unreliable. ..................................... 13

        1.  Plus Factor 1: Actual Prices Exceed But-For Prices............................... 14

        2.  Plus Factors 2 and 3: Communications At High Levels. ........................ 15

        3.  Plus Factors 4 and 5: The February 2015 Agreements. ........................... 17

        4.  Plus Factor 6: Enforcement Efforts........................................................ 19

        5.  Plus Factor 7: Pretextual Explanations. ................................................. 19

    C.  Dr. Williams's "Industry Characteristics" Analysis Is Unhelpful To A Jury.................................................................................................................... 20

CONCLUSION.................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson News, LLC v. Am. Media, Inc.*,
2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015)................................................................14, 15

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1998) .......................................................................................8, 10, 11

*Bogathy v. Union Pac. Rr.*,
2020 WL 419406 (N.D. Ill. Jan. 24, 2020) ..............................................................................1

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F.3d 599 (7th Cir. 1997) ...................................................................................................3

*Brown v. Burlington N. Santa Fe. Ry. Co.*,
765 F.3d 765 (7th Cir. 2014) .................................................................................................16

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013)..................................................................................................................10

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ...............................................................................................10

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
2002 WL 31528625 (E.D.N.Y. Aug. 21, 2002)....................................................................3, 4

*E.I. du Pont de Nemours & Co. v. F.T.C.*,
729 F.2d 128 (2d Cir. 1984)...................................................................................................20

*Fox v. Admiral Ins. Co.*,
2016 WL 6476461 (N.D. Ill. Nov. 2, 2016) ..........................................................................18

*Gopalratnam v. Hewlett-Packard Co.*,
877 F.3d 771 (7th Cir. 2017) ...................................................................................................7

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977). Dkt. 507........................................................................................ *passim*

*Jamsport Entm't, LLC v. Paradama Prods., Inc.*,
2005 WL 14917 (N.D. Ill. Jan. 3, 2005)..........................................................................13, 19

*Kleen Products LLC v. Georgia Pacific, LLC*,
910 F.3d 927 (7th Cir. 2018) .............................................................................13, 15, 16, 20

*Lamb's Patio Theater, Inc. v. Universal Film Exchanges, Inc.*,
582 F.2d 1068 (7th Cir. 1978) ...............................................................................................20

PUBLIC REDACTED VERSION

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Levy v. Lexington Cnty.*,
589 F.3d 708 (4th Cir. 2009) ......................................................................6

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) .........................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .................................................................................11

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
708 F.2d 1081 (7th Cir. 1983) ................................................................8, 9

*Merican, Inc. v. Caterpillar Tractor Co.*,
713 F.2d 958 (3d Cir. 1983) ......................................................................3

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*,
877 F.2d 1333 (7th Cir. 1989) ..................................................................13

*Nilssen v. Motorola, Inc.*,
1998 WL 513090 (N.D. Ill. Aug. 14, 1998) .........................................4, 11

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
629 F.3d 697 (7th Cir. 2011) .......................................................11, 13, 17

*Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*,
971 F.2d 37 (7th Cir. 1992) ......................................................................13

*Rosen v. Ciba-Geigy Corp.*,
78 F.3d 316 (7th Cir. 1996) ......................................................................18

*Sanner v. Bd. of Trade of City of Chicago*,
2001 WL 1155277 (N.D. Ill. Sept. 28, 2001) ............................................6

*Stanislaus Food Prods. Co. v. USS POSCO Indus.*,
803 F.3d 1084 (9th Cir. 2015) ..................................................................17

*Sys. Dev. Integration LLC v. Comp. Sci. Corp.*,
886 F. Supp. 2d 873 (N.D. Ill. 2012) .........................................................4

*United States v. Moore*,
521 F.3d 681 (7th Cir. 2008) ....................................................................17

*Valspar Corp. v. E.I. Du Pont De Nemours*,
152 F. Supp. 3d 234 (D. Del. 2016) ..........................................................14

**PUBLIC REDACTED VERSION**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Valspar Corp. v. E.I. Du Pont De Nemours*,
    873 F.3d 185 (3d Cir. 2017)...................................................................................................14

*Viamedia, Inc. v. Comcast Corp.*,
    — F.3d —, 2020 WL 879396 (7th Cir. Feb. 24, 2020) ..........................................................13

## INTRODUCTION AND ARGUMENT

The dealers' Consolidated Complaint alleges that "competition between Defendants ceased" when they entered into a conspiracy "[i]n February 2015" to block access by so-called "independent data integrators" to their respective DMSs. Dkt. 184 ¶¶ 7-9. The dealers further contend that, as a result of their alleged conspiracy, Defendants raised their prices to vendors for "data integration services" to supra-competitive levels. *Id*. ¶ 14. They seek damages of more than ████████, pre-trebling, in alleged overcharges to vendors, passed through to the dealers.

On August 26, 2019, the dealers disclosed their liability and damages expert, Dr. Michael A. Williams, who offers opinions about a different conspiracy—████████████████████ ████████████████████████. Ex. 7, Rpt. ¶¶ 11, 162. ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. 8, Reply ¶ 56. He acknowledges that the Consolidated Complaint does not allege such a conspiracy. Ex. 9, Tr. 40. As a result, his opinions must be excluded to the extent that the dealers are barred from pursuing this new theory of liability never disclosed in their complaint. *See generally* Dkt. 775 (pending motion to bar).

In addition, Dr. Williams's opinions are inadmissible under *Daubert* and Rule 702 standards for two basic reasons.[1]

***First***, Dr. Williams's damages model ignores this Court's ruling at the motion to dismiss stage, which squarely held that the dealers could not recover their portion of Defendants' alleged overcharges for DIS under *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Dkt. 507 at 21. Dr. Williams finds that the alleged ████████████ conspiracy caused the putative dealer class to incur

---

[1] *See Bogathy v. Union Pac. Rr.*, 2020 WL 419406, at *2-3 (N.D. Ill. Jan. 24, 2020) (describing *Daubert* standard). "Ex. __" refers to the exhibits attached to the Declaration of Daniel T. Fenske, filed concurrently.

both "direct" damages and "indirect" damages, but he calculates both using the *same methodology*,

████████████████████████████████████████████████████████████████████

████████████████████████████████████. Ex. 7, Rpt. Tbl. 3; Ex. 9, Tr. 18-21.

Dr. Williams also fails to justify his damages model's "key" assumption—that Defendants' DIS

prices moved in "parallel" with an assumed competitive benchmark ██████████████████—

and does not disaggregate the effects of Defendants' non-conspiratorial conduct or the "exclusive

dealing" claim that the Court previously dismissed.

  **Second**, on liability, Dr. Williams offers an analysis of circumstantial evidence under a

"plus factors" framework but fails to analyze the central question in this case: whether CDK's

behavior is consistent with unilateral conduct. Dr. Williams determined ███████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████. But Dr. Williams

makes no effort to weigh these clear *unilateral* incentives for what he calls the "challenged

conduct" against alleged conspiratorial incentives, which he struggled even to define. Moreover,

his "plus factors" analysis relies on a flawed standard, applies *ipse dixit* or non-economic

reasoning, and has no reliable foundation in the evidence he purports to consider.

**I.      The Court Should Exclude Dr. Williams's Damages Opinions.**

  **A.      Dr. Williams's "Direct" Damages Model Is Contrary To Federal Law.**

  In *Illinois Brick*, the Supreme Court held "that a federal antitrust plaintiff may not seek

damages based on alleged supracompetitive prices passed through by a purchaser earlier in the

distribution chain." Dkt. 507 at 19. In its motion to dismiss, CDK explained that this barred the

dealers from attempting to recover any passed-through portion of alleged DIS overcharges. The

Court agreed, holding that "[t]o the extent that Plaintiffs seek to recover alleged supracompetitive

prices passed through vendors . . . Plaintiffs' claims are barred by *Illinois Brick*." *Id*. at 21.

**PUBLIC REDACTED VERSION**

The Court allowed for the possibility that the dealers might be able to show *direct* damages, as distinct from indirect overcharge damages, if the dealers could demonstrate that the alleged conspiracy "result[ed] in DMSs with less value and inferior functionality." Dkt. 507 at 21. But Dr. Williams made no attempt to measure any such direct damages to the dealers. Inexplicably, Dr. Williams submitted ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 7, Rpt. ¶ 171.

To reiterate, Dr. Williams concludes that the dealers' "direct" and "indirect" damages are ███████████████████████. Ex. 7, Rpt. ¶ 171; Ex. 9, Tr. 20. This is because Dr. Williams uses *exactly the same methodology* to calculate both types of damages. ██████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████ Ex. 7, Rpt. ¶ 134. In short, contrary to this Court's ruling, the dealers seek to recover as "direct" damages higher prices paid by vendors that were allegedly passed on to the dealers.

As the Seventh Circuit has held, however, *Illinois Brick* is not so easily evaded. Indirect purchaser plaintiffs may not recover overcharge damages under federal antitrust law through sleight of hand. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir. 1997). In particular, where plaintiffs seek "direct" damages using the same formula employed "to calculate their 'overcharge' damages," *Illinois Brick* bars their claims "notwithstanding the fact that the plaintiffs label these damages" as something else. *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 2002 WL 31528625, at *8 (E.D.N.Y. Aug. 21, 2002). *See also Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 967 (3d Cir. 1983) (the application of *Illinois Brick*

depends "not on the plaintiff's characterization of the illegal activity but on whether the problems identified in *Illinois Brick* would be avoided if relief were allowed").

Dr. Williams's effort to get around *Illinois Brick* is even more egregious than the attempt rejected by the court in *Drug Mart*. There, the expert testified that he used an overcharge formula only as an "interim calculation" in a larger "lost profits" analysis. 2002 WL 31528625, at *8. Here, by contrast, Dr. Williams's *entire* "direct" methodology ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Ex. 9, Tr. 21.

If allowed, Dr. Williams's flawed methodology would render *Illinois Brick* meaningless. The *Illinois Brick* plaintiffs purchased finished buildings made with "concrete block [priced] $3 million higher by reason of [a] price-fixing conspiracy." 431 U.S. at 727. Under Dr. Williams's approach, the *Illinois Brick* plaintiffs could have claimed that they were not seeking to recover the indirect "overcharge" incurred by the contractors in the form of a $3 million price hike, but rather the "direct" harm of being forced to purchase a building that cost $3 million more than its true value. But that is precisely what *Illinois Brick* forbids.

Expert opinions that are contrary to law are inadmissible because they are not helpful and potentially misleading to the jury. *See, e.g.*, *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 804-06 (N.D. Ill. 2005) (expert cannot testify to damages prohibited by state law); *Sys. Dev. Integration LLC v. Comp. Sci. Corp.*, 886 F. Supp. 2d 873, 877-78 (N.D. Ill. 2012) (excluding expert's opinion about damages from already-dismissed claim); *Nilssen v. Motorola, Inc.*, 1998 WL 513090, at *12-13 (N.D. Ill. Aug. 14, 1998) (excluding expert whose damages theory "is inconsistent with this Court's earlier holding"). By improperly characterizing as "direct"

**PUBLIC REDACTED VERSION**

damages the *indirect* damages that the dealers cannot recover as a matter of law, Dr. Williams's

analysis fails this basic admissibility requirement.

      **B.**      **Dr. Williams's Entire Direct/Indirect Damages Model Is Unreliable.**

            **1.**      **Dr. Williams Did Not Justify His "Parallel Paths" Assumption.**

Ex. 7, Rpt. ¶ 158.

**PUBLIC REDACTED VERSION**

███████████████████ Ex. 9, Tr. 257. But "guesswork and eyeballing" do not "satisfy the dictates of *Daubert*." *Sanner v. Bd. of Trade of City of Chicago*, 2001 WL 1155277, at *7 (N.D. Ill. Sept. 28, 2001); *see also Levy v. Lexington Cnty.*, 589 F.3d 708, 719 (4th Cir. 2009) (criticizing expert for "look[ing] at the scatter plots he prepared and assess[ing] whether they offended his eyesight"). That is especially unacceptable here because, ███████████████████

████████████████████████████████████████

███████████████ Ex. 9, Tr. 259. ██████████████████████

████████████████████████████████████████

██████████████████████████████

The "actual data" reveals the flaw in Dr. Williams's analysis. ████████████████

████████████████████████████████████████

████████████████████████████████████████:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

PUBLIC REDACTED VERSION



*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 786 (7th Cir. 2017) (court may exclude an expert's opinion formed "without sufficient scientific evidence confirming the validity of [his] premise").

### 2.    Dr. Williams Fails To Consider Unilateral Market Power.

Dr. Williams's analysis is also unreliable because he did not assume the but-for world that his own analysis shows he should have. "A fundamental step in computing antitrust damages is *to envision the manner in which a particular market would have developed*, assuming that the antitrust violation did not occur and holding *every other feature* of the actual world constant." Ex.

**PUBLIC REDACTED VERSION**

8, Reply ¶ 10 (quoting Proving Antitrust Damages: Legal & Economic Issues 89 (3d ed. 2017)) (emphasis added). Thus, "[w]hen a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1162 (7th Cir. 1983); *see Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (same). That is exactly the error Dr. Williams committed here: he attributes all of CDK's and Reynolds's 3PA and RCI price increases to unlawful conduct even though, in his opinion, CDK and Reynolds had the power to raise prices to some extent in the but-for world with no unlawful conduct.

Accordingly, his damages model does not attempt to isolate damages attributable to the alleged conspiracy, meaning his opinions cannot assist the jury. *See MCI*, 708 F.2d at 1162.

### 3. Dr. Williams's Model Calculates Damages For Both Live And Dismissed Claims.

Finally, Dr. Williams's damages opinion is unreliable because it expressly includes damages from the dealers' Section 1 exclusive-dealing claim—even though the Court *dismissed* that claim for damages under *Illinois Brick*. Dkt. 507 at 21.[2]

The dealers alleged that CDK and Reynolds conspired to force vendors to accept exclusivity provisions in their 3PA and RCI programs requiring them to use certified integration for all of their applications. Dkt. 184 ¶¶ 110-125. As a result, dealers allegedly paid inflated DIS

---

[2]

prices passed on from vendors. *Id.* at ¶ 121. ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████ However, a damages expert cannot

assume that *dismissed* claims are "correct." *Proving Antitrust Damages: Legal & Economic Issues*,

ABA Antitrust Section, at 87 (3d ed. 2017); *see also supra* p. 4. It does not matter that Dr.

Williams's model also included live claims. A damages expert may not blur disallowed and

allowed damages and then invite the jury to speculate as to what fraction of the damages are

attributable to the live claims. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039,

1057 (8th Cir. 2000) (excluding damages opinion that "did not separate lawful from unlawful

conduct"). As the Supreme Court has explained, when a court accepts only one of several theories

of antitrust impact articulated in a putative class action, "a model purporting to serve as evidence

of damages . . . must measure only those damages attributable to" the accepted theory. *Comcast

Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Dr. Williams ignored this requirement.

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████ A damages model agnostic to the defendant's liability—

which produces the same result whether or not some of the plaintiff's claims fail on the merits—

is inherently unreliable and consequently inadmissible. *See, e.g.*, *Blue Cross & Blue Shield United*

*of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) ("hard to take seriously" opinion of damages expert who reached same opinion even after claims dropped out of case); *Nilssen*, 1998 WL 513090, at \*12 & n.17 (reaching same damages figure despite dismissal of some claims is more than an issue for cross-examination; it "cast[s] a cloud on" the expert's methodology).

## II.     The Court Should Exclude Dr. Williams's Conspiracy Opinions.

Dr. Williams opines that ████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ These conclusions are not the product of reliable economic principles. They are the type of results-driven analysis that Rule 702 forbids.

### A.     Dr. Williams Fails To Analyze The Question At The Heart Of This Case.

The central question in this case is whether Plaintiffs can muster evidence that "tends to exclude the possibility that" CDK and Reynolds "acted independently" in deciding to secure their respective DMSs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). To assess that question, Dr. Williams had to evaluate whether CDK and Reynolds had an incentive to act as they did *without* conspiring. If so, their conduct is at least "equally consistent with [their] permissible independent interests as it is with improper activity," and the dealers' conspiracy claims fail. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 707 (7th Cir. 2011).

████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████

PUBLIC REDACTED VERSION

███████████████████████████████████

███████████████████████████████████

Second, and in any event, Dr. Williams is not "any more competent than the average juror" at the "interpretation of correspondence and other evidence." *Jamsport Entm't, LLC v. Paradama Prods., Inc.*, 2005 WL 14917, at *10 (N.D. Ill. Jan. 3, 2005). An expert's interpretation of business communications is helpful to the jury only where the expert "uses some kind of specialized knowledge to place the litigated events into context." *Viamedia, Inc. v. Comcast Corp.*, — F.3d —, 2020 WL 879396, at *43 (7th Cir. Feb. 24, 2020). By contrast, an expert who merely attaches his personal interpretation to documents without reference to any specialized expertise does not satisfy Rule 702. *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333, 1340 (7th Cir. 1989). Where Dr. Williams arguably might have brought economic expertise to bear was in analyzing the various unilateral incentives CDK faced in 2015 and explaining why, in the aggregate, those incentives were insufficient to induce CDK to close its DMS. As described above, he ignored that question entirely. Dr. Williams's failure to ask or analyze whether CDK had a unilateral incentive to secure its DMS in the absence of a conspiracy renders his opinion unreliable.

### B.  Dr. Williams's "Plus-Factors" Analysis Is Unreliable.

Although he does not analyze any of CDK's unilateral incentives to secure its DMS, Dr. Williams claims there are seven circumstantial "plus factors" that tend to exclude the inference that CDK acted unilaterally. While some courts accept a "plus factors" approach in Section 1 cases, modern Seventh Circuit decisions—such as *Omnicare* and *Kleen Products LLC v. Georgia Pacific, LLC*, 910 F.3d 927 (7th Cir. 2018)—do not. It has been nearly three decades since the Seventh Circuit has used the phrase "plus factors" in an antitrust case. *See Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 51 (7th Cir. 1992).

PUBLIC REDACTED VERSION

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

The Kovacic article advocates for *altering* the legal framework for inferring the existence of a conspiracy from circumstantial evidence and does not purport to reflect existing law. It proposes a "foundation for courts . . . to *adjust* the framework they now use" and offers "a *reformulated* standard in circumstantial evidence cases." 110 Mich. L. Rev. at 397, 408 (emphases added). Courts have rejected the article's vision of the plus-factors analysis since it was published— including in a case in which Dr. Williams testified. *See Valspar Corp. v. E.I. Du Pont De Nemours*, 152 F. Supp. 3d 234 (D. Del. 2016). There, Dr. Williams cited the Kovacic article to show that "if one seller buys anything from another at nonmarket prices, then a resource transfer is made for which there is no reasonable noncollusive explanation." *Id*. at 243. The court disregarded this analysis. *Id*. at 243-44. On appeal, the Third Circuit agreed, declining to give the article the "force of law." *Valspar Corp. v. E.I. Du Pont De Nemours*, 873 F.3d 185, 201 (3d Cir. 2017).[3]

### 1. Plus Factor 1: Actual Prices Exceed But-For Prices.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

But "testimony regarding 'super-plus' factors is inadmissible, because it appears to be a label conjured up for litigation rather than the 'product of reliable principles and methods.'" *Anderson News, LLC v. Am. Media, Inc.*, 2015 WL 5003528, at *3 (S.D.N.Y. Aug. 20, 2015). As the

---

[3] Defendants in the *Valspar* case moved to exclude Dr. Williams under *Daubert*, but the court did not need to resolve that motion in light of its ruling on the motion for summary judgment. *See Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, No. 14-527 (D. Del.), Dkt. 415.

**PUBLIC REDACTED VERSION**

*Anderson* court found, the term does not appear to have been "adopted or used by anyone other than Dr. Marx [a co-author of the Kovacic paper] and her colleagues." *Id*.

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████. If so, then the mere fact that prices are elevated says nothing about whether Reynolds and CDK actually conspired. The Seventh Circuit has held, moreover, that in oligopolistic markets "it is not a violation of antitrust law for a firm to raise its price" as long as the firm acts unilaterally. *Kleen Prods.*, 910 F.3d at 935-36. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

### 2. Plus Factors 2 and 3: Communications At High Levels.

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████ All of these communications, however, have a clear and obvious legitimate business purpose—namely, the negotiation and execution of the February 2015 agreements. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

[REDACTED]

More fundamentally, Dr. Williams failed to ask whether CDK had unilateral incentives to negotiate a wind-down of DMI's hostile integration, as Reynolds's increased blocking was making DMI's business increasingly difficult and as Reynolds had sued SIS for similar hostile integration one year earlier. [REDACTED]

Communications such as these between competitors do not support an inference of conspiracy, "[e]specially when companies have legitimate business reasons for their contacts." *Kleen Prods.*, 910 F.3d at 938. To reliably infer that these communications are evidence of a conspiracy, Dr. Williams would have to consider whether CDK and Reynolds had any non-conspiratorial reason for those communications. But he ignores the possibility entirely. Under *Daubert*, an expert cannot ignore "obvious alternative explanations" in this way. *Brown v. Burlington N. Santa Fe. Ry. Co.*, 765 F.3d 765, 773-774 (7th Cir. 2014).

An independent defect in Dr. Williams's analysis is that, for all six of the communications he identifies, he applies *no* economic analysis. He simply describes their contents and then asserts



Ex. 7, Rpt. ¶ 119. An expert's failure to state "the facts he considered or the methods of analysis he used to get from facts to conclusion" renders the opinion unreliable. *United States v. Moore*, 521 F.3d 681, 684 (7th Cir. 2008).

Ex. 7, Rpt. ¶ 120.

Simply identifying communications between "high level executives" of two firms does not support an inference of conspiracy. *Stanislaus Food Prods. Co. v. USS POSCO Indus.*, 803 F.3d 1084, 1093 (9th Cir. 2015); *see also Omnicare*, 629 F.3d at 709 (courts "should not allow plaintiffs to pursue Sherman Act claims merely because conversations concerning business took place between competitors").

Ex. 9, Tr. 223-25.

### 3.    Plus Factors 4 and 5: The February 2015 Agreements.

Dr. Williams's fourth and fifth plus factors are the agreements that CDK and Reynolds entered in February 2015. He offers no economic analysis of these agreements. Instead, he asserts:



**PUBLIC REDACTED VERSION**

[REDACTED]

Ex. 7, Rpt. ¶¶ 121-122. An expert who testifies to a "bottom line" but offers no explanation or empirical data to support his conclusion "supplies nothing of value to the judicial process." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318-20 (7th Cir. 1996). As shown above, moreover, CDK had ample unilateral incentives to wind-down DMI's hostile access on the Reynolds's DMS in light of business and legal realities. Both Defendants, as app providers, also had unilateral incentives to ensure that their apps could obtain data on the other's DMS through certified integration.

Regardless, Dr. Williams is not qualified to offer opinions about the February 2015 agreements. *See Fox v. Admiral Ins. Co.*, 2016 WL 6476461, at *2 (N.D. Ill. Nov. 2, 2016) ("An expert witness may not testify simply regarding his reading of a contract."). [REDACTED]

[REDACTED] An expert who does not know what agreements prohibit or allow is not qualified to opine that the agreements are "plus factors" against Defendants' unilateral interests.

[REDACTED]

[REDACTED] Even if the interpretation of emails is within Dr. Williams's economic expertise, *cf.*

**PUBLIC REDACTED VERSION**

*Jamsport*, 2005 WL 14917, at *10, he consistently misinterprets them or ignores their context. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

### 4.      Plus Factor 6: Enforcement Efforts.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ The

Data Exchange Agreement required communications to DMI clients regarding the wind-down

period to follow certain guidelines. Ex. 23, DEA § 4.2. Thus, the communications between

Reynolds and CDK that Dr. Williams discusses are not "enforcement" efforts but activity

necessary to effectuate the wind-down. Dr. Williams, who repeatedly misconstrues those

agreements, applies no expertise or methodology in reaching a contrary conclusion.

### 5.      Plus Factor 7: Pretextual Explanations.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

███████████. Dr. Williams does not explain why "pretextual" statements are plus factors. As the Seventh Circuit has recognized, they are not. *Lamb's Patio Theater, Inc. v. Universal Film Exchanges, Inc.*, 582 F.2d 1068, 1070 (7th Cir. 1978) ("even if Lamb's could show that Universal's announced business reasons were not legitimate, such showing would not satisfy Lamb's burden of establishing the existence of the conspiracy element essential to its prima facie antitrust case").

████████████████████████████████████████████████████
████████████████████████████████████████████ Finally, Dr. Williams has no training or expertise that would allow him to opine knowledgeably on security issues. Indeed, both CDK and the dealers have offered data security experts in this MDL, yet Dr. Williams does not list their reports among the materials he considered.

**C.** **Dr. Williams's "Industry Characteristics" Analysis Is Unhelpful To A Jury.**

In addition to his plus-factors analysis, Dr. Williams offers perfunctory opinions t████
████████████████████████████████████████████████████
██████████████████████████████████████████ Ex. 7, Rpt. ¶¶ 102-107. These opinions should be excluded as unhelpful to the jury. *See Kleen Prods.*, 910 F.3d at 935 (structural evidence does not "tend to exclude the possibility of independent action"); *E.I. du Pont de Nemours & Co. v. F.T.C.*, 729 F.2d 128, 139 (2d Cir. 1984) (same).

## CONCLUSION

For the reasons explained above, Dr. Williams's opinions are unreliable, irrelevant, or both. Dr. Williams should be excluded from offering any opinion on liability or damages.

**PUBLIC REDACTED VERSION**

Dated: February 28, 2020

Respectfully submitted

*/s/ Britt M. Miller*
Britt M. Miller
Daniel T. Fenske
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
dfenske@ mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

PUBLIC REDACTED VERSION

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, hereby certify that on February 28, 2020, I caused a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT CDK GLOBAL, LLC'S MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF DR. MICHAEL A. WILLIAMS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

<div style="margin-left: 40%;">

*/s/ Britt M. Miller*

Britt M. Miller

MAYER BROWN LLP

71 South Wacker Drive

Chicago, IL 60606

(312) 782-0600

bmiller@mayerbrown.com

</div>