# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| | Hon. Robert M. Dow, Jr. |
| *This document relates to:* | Magistrate Judge Jeffrey T. Gilbert |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF MS. NANCY MIRACLE

# TABLE OF CONTENTS

INTRODUCTION AND ARGUMENT ........................................................................ 1

I. MIRACLE'S CREDENTIALS AND INVESTIGATION INTO
THE BASIS OF HER PROFFERED OPINIONS ARE MINIMAL. ................................. 3

II. MIRACLE'S PERSONAL DEFINITIONS OF "ACCESS CONTROL" AND
"CIRCUMVENTION" ARE UNRELIABLE AND CONTRARY TO LAW. ................. 4

A. Miracle Is Not Qualified to Offer Legal Opinions On the DMCA. ............................ 4

B. Miracle's Definitions Contradict the DMCA's Plain Text. ......................................... 5

C. Miracle's Definitions Contradict Case Law Applying the DMCA. ............................ 7

D. Miracle's Definitions Contradict Well-Accepted Technical Standards. ...................... 8

E. Miracle's Definitions Are Unsupported *Ipse Dixit*. ................................................... 9

III. MIRACLE'S SPECIFIC OPINIONS AND CONCLUSIONS ARE UNRELIABLE. .... 11

A. Miracle's CAPTCHA Opinions Are Unreliable. ....................................................... 11

B. Miracle's Other "Challenge Question" Opinions Are Equally Unreliable. ............... 14

C. Miracle's "Suspicious Account Monitoring" Opinions Are Unreliable. ................... 15

D. Miracle's Profile Manager Opinions Are Unreliable. ................................................ 16

E. Miracle's Creative Expression Opinions Are Unreliable. .......................................... 17

IV. MIRACLE'S REBUTTAL TO EDWARD STROZ IS UNRELIABLE. ........................ 19

CONCLUSION ................................................................................................................ 20

**PUBLIC REDACTED VERSION**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Honda Motor Co. v. Allen*,
    600 F.3d 813 (7th Cir. 2010) ..........................................................................................10, 11

*Bogathy v. Union Pac. Rr.*,
    2020 WL 419406 (N.D. Ill. Jan. 24, 2020) ................................................................................1

*Burkhart v. Wash. Metro. Area Transit Auth.*,
    112 F.3d 1207 (D.C. Cir. 1997) ...............................................................................................5

*Cates v. Whirlpool Corp.*,
    2017 WL 1862640 (N.D. Ill. May 9, 2017) ..........................................................................10

*Chapman v. Maytag Corp.*,
    297 F.3d 682 (7th Cir. 2002) ................................................................................................10

*Craigslist, Inc. v. Kerbel*,
    2012 WL 3166798 (N.D. Cal. Aug. 2, 2012) ..........................................................................7

*Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993) .....................................................10

*EEOC v. Rockwell Int'l Corp.*,
    60 F. Supp. 2d 791 (N.D. Ill. 1999) ......................................................................................20

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*,
    499 U.S. 340 (1991) ..............................................................................................................19

*Giganews, Inc. v. Perfect 10, Inc.*,
    2019 WL 1422723 (C.D. Cal. Mar. 13, 2019) ......................................................................17

*Janky v. Lake County Convention & Visitors Bureau*,
    576 F.3d 356 (7th Cir. 2009) ................................................................................................19

*MDY Indus. LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) ............................................................................................8, 15

*Nexon Am., Inc. v. Game Anarchy, LLC*,
    2013 WL 12121539 (C.D. Cal. Apr. 3, 2013) ........................................................................8

*Paul Morelli Design, Inc. v. Tiffany & Co.*,
    200 F. Supp. 2d 482 (E.D. Pa. 2002) ....................................................................................19

*Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*,
    932 F. Supp. 220 (N.D. Ill. 1996) .........................................................................................19

*San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
    2018 WL 5281909 (S.D. Cal. Oct. 23, 2018) .......................................................................10

**PUBLIC REDACTED VERSION**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Specht v. Jensen*,
  853 F.2d 805 (10th Cir. 1988) ...................................................................................5

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*,
  306 F. Supp. 3d 1164 (C.D. Cal. 2018) ...................................................................8

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
  315 F. Supp. 3d 1147 (C.D. Cal. 2018) ...............................................................7, 8

*Torres v. Cnty. of Oakland*,
  758 F.2d 147 (6th Cir. 1985) .....................................................................................5

*United States v. Caputo*,
  517 F.3d 935 (7th Cir. 2008) ..................................................................................4, 5

*United States v. Cross*,
  113 F. Supp. 2d 1282 (S.D. Ind. 2000) ...............................................................5, 17

*Universal City Studios, Inc. v. Reimerdes*,
  111 F. Supp. 2d 294 (S.D.N.Y. 2000), *aff'd*, 273 F.3d 429 (2d Cir. 2001) ..............................8

*Van v. Ford Motor Co.*,
  332 F.R.D. 249 (N.D. Ill. 2019).............................................................................20

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
  395 F.3d 416 (7th Cir. 2005) ...................................................................................10

**Statutes**

15 U.S.C. § 272(b)(8) .................................................................................................8

17 U.S.C. 1201(a) ....................................................................................................18

17 U.S.C. § 1201 .........................................................................................................1

17 U.S.C. § 1201(a)(3)(A) ..........................................................................................6

17 U.S.C. § 1201(a)(3)(B).........................................................................................4, 5

PUBLIC REDACTED VERSION

## INTRODUCTION AND ARGUMENT

Nancy Miracle's opinions should be excluded because she is not qualified to give the opinions she offers (many of which are improper legal opinions), her opinions contradict black letter law and established security standards, her methodology is unsupported *ipse dixit*, and her testimony is otherwise improper under *Daubert* and Rule 702 standards.[1]

Defendants CDK Global and Reynolds have counterclaims against Authenticom under the Digital Millennium Copyright Act ("DMCA") for Authenticom's circumvention of technological measures, including CAPTCHA, to prevent unauthorized access to Defendants' computer systems. At the motion to dismiss stage, this Court held that Authenticom's use of automated programs to (a) respond to CAPTCHA prompts and (b) restore disabled DMS login credentials violated the DMCA by "circumvent[ing]" a "technological measure" that "effectively controls access" to CDK's DMS. *See* Dkt. 506 (Order) at 17-18; 17 U.S.C. § 1201. Authenticom did not move to dismiss Reynolds's DMCA counterclaim based on similar circumventions.

On October 15, 2019, Reynolds moved for partial summary judgment ("PMSJ") on Authenticom's liability to Reynolds under the DMCA's anti-circumvention provision. *See* Dkt. 777, 779, 785. On October 30, 2019, Authenticom responded that it "anticipates offering opinions by one or more experts in computer software and security, who will explain why: (1) Reynolds's CAPTCHA and Suspicious User ID monitoring programs did not 'effectively control[] access' to any copyrighted work; and (2) Authenticom's conduct did not constitute 'circumvention' of those security measures, even if they were effective." Dkt. 806 at 6. *After* filing this statement,

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[1] *See Bogathy v. Union Pac. Rr.*, 2020 WL 419406, at *2-3 (N.D. Ill. Jan. 24, 2020) (describing *Daubert* standard). "Ex. __" refers to the exhibits attached to the Declaration of Daniel T. Fenske, filed concurrently.

**PUBLIC REDACTED VERSION**

█ ████████████████████████████████████████████████████████████████████

████████ Miracle's opinions are litigation-minted and unreliable.

*First*, contrary to this Court's prior opinion, applicable law and industry standards, Miracle

opines that ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████

This opinion is deeply flawed. ███████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████

*Second*, Miracle opines that ██████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

███████████████████████████████████████████████████████████

█████████████████████████████████████████

*Third*, Miracle's opinions regarding ███████████████████████████████

████ are unreliable and inadmissible under binding Seventh Circuit authority.

*Fourth*, Miracle attempts to "rebut" one of Defendants' technical experts, Edward Stroz,

as to the number of times Authenticom ran CAPTCHA-solving scripts to access the CDK DMS.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████

## I. MIRACLE'S CREDENTIALS AND INVESTIGATION INTO THE BASIS OF HER PROFFERED OPINIONS ARE MINIMAL.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████

## II. MIRACLE'S PERSONAL DEFINITIONS OF "ACCESS CONTROL" AND "CIRCUMVENTION" ARE UNRELIABLE AND CONTRARY TO LAW.

### A. Miracle Is Not Qualified to Offer Legal Opinions On the DMCA.

Under the DMCA, a technological measure "effectively controls access to a work" if it "requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████

As a threshold matter, Miracle's opinions, which purport to define statutory terms that are already defined in the DMCA, are improper. The meaning of a statute "is a subject for the court, not for testimonial experts." *United States v. Caputo*, 517 F.3d 935, 942 (7th Cir. 2008).

Miracle's disclaimer ████████████████████████████████████████ ██ does not change this conclusion. "The problem with testimony containing a legal conclusion

is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury. This invades the province of the court to determine the applicable law and to instruct the jury as to that law." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) (alterations omitted); *see also Caputo*, 517 F.3d at 942; *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213-14 (D.C. Cir. 1997) (affirming exclusion of opinion that misstated the law and lifted terms "directly from the text" of the applicable regulation); *United States v. Cross*, 113 F. Supp. 2d 1282, 1284-85 (S.D. Ind. 2000) (expert could not testify on whether a particular video gaming device was an illegal gambling device under state or federal law). Miracle's opinions would risk seriously misleading the jury, which may conclude that Miracle, "who is presented to them imbued with all the mystique inherent in the title 'expert,' is more knowledgeable than the judge in a given area of the law." *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988).

### B. Miracle's Definitions Contradict the DMCA's Plain Text.

Not only does Miracle inappropriately offer expert opinions on the meaning of statutory terms, but these opinions are contrary to the DMCA's plain language. The DMCA defines a "technological measure that effectively controls access" broadly to include measures that require the "application of information, *or* a process or a treatment" to gain access to a protected work. 17 U.S.C. § 1201(a)(3)(B) (emphasis added). Miracle's definition, however, █████████████ █████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Moreover, under Miracle's definition, ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ She thus elides the requirement that "information" must be applied "with the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(B).

**PUBLIC REDACTED VERSION**

At the same time, Miracle imports several new requirements into the statute that narrow the definition of an "access control" measure in a manner contrary to the DMCA's text:

First, in her view, ██████████████████████████████████████ ████████████████████████████████. That requirement is nowhere in the statute.

Second, in her view, ██████████████████████████████████████ ████████████████████████████████████████████████████████████ ██ That distinction has no basis in the statute.

Third, Miracle ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██ But the statute does not refer to measures that *grant* access, it refers to measures that "*control*" access. Access is controlled in numerous ways beyond just the initial binary decision to permit or deny it. Similarly, Miracle attempts to ██████████████████████████ ████████████████████████ another element with no basis in the text of the DMCA.

Fourth, Miracle ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████ But that would render the entire DMCA anti-circumvention provision a nullity, as any measure that could be circumvented would not qualify as a DMCA-protected access control in the first place. Miracle's reading also conflicts with the statute's definition of "circumvent a technological measure," which expressly includes, among other things, acts that "*bypass*" a technological measure. 17 U.S.C. § 1201(a)(3)(A) (emphasis added).

Miracle's remaining opinions on circumvention are equally inconsistent with the statute. In full, the DMCA defines "circumvent a technological measure," to mean "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." *Id.* Miracle purports to ███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████ The effect is to narrow circumvention out of existence: she admitted at her deposition that, in her view, ██████████████████████████████████

███████████████████████████████████████████████████ Indeed, Miracle testified that even ██████████████████████████████████████████████████████

███████████████████████████████████████████████[2]

## C. Miracle's Definitions Contradict Case Law Applying the DMCA.

As laid out in prior briefs and this Court's counterclaim opinion, there is an extensive body of law interpreting the DMCA's terms "effectively control access" and "circumvention" consistent with the text of the statute and inconsistent with Miracle's personal definitions. It is well-settled, for example, that CAPTCHA is a technological measure to effectively control access.[3] It is also

---

[2] ███████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████

[3] *See* Dkt. 506 at 17 ("Authenticom's use of an automated program to bypass CDK's use of a CAPTCHA does avoid and/or bypass the technological measure taken by CDK to prevent the use of automated programs."); *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1166 (C.D. Cal. 2018) ("Ticketmaster's CAPTCHA controls non-human access to Ticketmaster's ticket purchase pages and ticket confirmation pages"); *Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *9 (N.D. Cal. Aug. 2, 2012) (same).

well-settled that Authenticom's actions circumvent those measures under the DMCA.[4] Miracle's opinion that a technological measure does not "effectively control access" under the DMCA if it is ▮▮▮▮▮ has been rejected as well.[5] Miracle's "technical opinions" purporting to attack these decisions are legal advocacy from the witness box offered under the cloak of expertise.

### D. Miracle's Definitions Contradict Well-Accepted Technical Standards.



She did not incorporate any standards published by NIST, which include definitions and technical standards for various "Access Control" measures, including session locks, session termination measures, automated account-management and tracking measures, and firewalls.[6] NIST standards define "access control" differently, and more broadly, than Miracle does, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Indeed, while session locks, session termination measures, automated account monitoring for atypical usage, and

---

[4] *See Ticketmaster*, 315 F. Supp. 3d at 1167 ("The Court's finding falls in line with the growing number of courts that have concluded that circumvention of CAPTCHA and similar measures designed to distinguish between humans and non-humans violates the DMCA."); *Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F. Supp. 3d 1164, 1174 (C.D. Cal. 2018) ("By using bots or CAPTCHA farms, Defendants are 'avoiding' CAPTCHA without the authority of Ticketmaster."); *MDY Indus. LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 953-54 (9th Cir. 2010) (holding that efforts to avoid a measure that was intended to detect the use of automated "bots" constituted circumvention); *Nexon Am., Inc. v. Game Anarchy, LLC*, 2013 WL 12121539, at *2 (C.D. Cal. Apr. 3, 2013) (same).

[5] *MDY Indus.*, 629 F.3d at 954 n.17 ("The statutory definition of the phrase 'effectively control access to a work' does not require that an access control measure be strong or circumvention-proof."); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000) ("Finally, the interpretation of the phrase 'effectively controls access' offered by defendants at trial—viz., that the use of the word 'effectively' means that the statute protects only successful or efficacious technological means of controlling access— would gut the statute if it were adopted."), *aff'd*, 273 F.3d 429 (2d Cir. 2001).

[6] *See* Ex. 41, NIST Special Publication 800-53, AC-11; Ex. 42, NIST Special Publication 800-53, AC-12; Ex. 43, NIST Special Publication 800-53, AC-2; Ex. 97, K. Scarfone & P. Hoffman, NIST, Guidelines on Firewalls and Firewall Policy (Special Publication 800-41 Rev. 1) (Sept. 2009). NIST is an organization within the Department of Commerce that Congress has authorized to "develop a fundamental basis and methods for testing materials, mechanisms, structures, equipment, and systems," including those used by the Federal Government. 15 U.S.C. § 272(b)(8). Miracle agreed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**PUBLIC REDACTED VERSION**

network firewalls are all recognized by NIST as "access controls," ████████████████

████████████████████████████████████████████ ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████

Miracle also cited ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ But the IBM

Dictionary defines "access control" as "the process of ensuring that the resources of a computer

system can be accessed only by authorized users *in authorized ways*." Ex. 39 (emphasis added).

As she admitted, ██████████████████████████████████████

████████████████████████████████████

### E. Miracle's Definitions Are Unsupported *Ipse Dixit*.

Even if Miracle could properly testify to the meaning of a statute, she does not derive her

definitions from a reliable methodology. ████████████████████████████

████████████████████████████████████████████████

████████████████████████ But Miracle's relevant "experience" on

the issue is slim to none. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

████████████████████████████████████████████████████████████

████████████████████████████

Moreover, the Seventh Circuit has stressed that "[p]ersonal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert*'s most significant guidepost." *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002); *see also San Diego Unified Port Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2018 WL 5281909, at *7 (S.D. Cal. Oct. 23, 2018) (excluding testimony "based solely on [the expert's] subjective definitions and standards"). Miracle's reliance on her own "experience" as the basis for her opinions cannot replace the need for an "articulation of the underlying technical principles upon which [she] relied." *Cates v. Whirlpool Corp.*, 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017); *see also Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term."). And here, Miracle admits ████████████████████████████████████████████ ██████████████████████████████████████████. Indeed, ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████

Miracle's personal definition of an "access control," which has not been accepted by other professionals or subjected to external scrutiny, meets none of the hallmarks of reliable expert opinion testimony: it cannot be (nor has it been) tested; it has never been subjected to peer review or publication; it has no known or potential rate of error; and "there is no indication that" it has been "generally accepted by anyone other than" Miracle herself. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010); *see also Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579,

**PUBLIC REDACTED VERSION**

593-94 (1993) ("submission to the scrutiny of the scientific community is a component of 'good science'" that "increases the likelihood that substantive flaws in methodology will be detected").

In *Allen*, the court rejected an expert's proposed standard under *Daubert* despite its publication in a peer-reviewed journal. 600 F.3d at 817-18. Here, it is much worse. Miracle's "access control" definition has never been published in any forum. It is based solely on Miracle's personal "experience," and as discussed above it is contrary to the text of the DMCA and numerous court decisions and well-accepted technical standards. And while the definitions Miracle uses for her opinions in this case allow her to reach the conclusions that Authenticom foreshadowed, *see* Dkt. 806 at 6, they force her to take extreme positions once her standards are applied to other contexts, *e.g.*, ███████████████████████████████████████████████████████ ████████████████████████████████ Taken together, these signs all point unmistakably to Miracle's failure to employ a reliable scientific methodology.

## III. MIRACLE'S SPECIFIC OPINIONS AND CONCLUSIONS ARE UNRELIABLE.

████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████. Each of these opinions is unreliable for the reasons stated above and suffers from multiple additional deficiencies.

### A. Miracle's CAPTCHA Opinions Are Unreliable.

Miracle did almost nothing to independently examine CDK's or Reynolds's CAPTCHAs or the automated processes Authenticom has used to respond to them. ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██

**PUBLIC REDACTED VERSION**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

Miracle concludes that ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

These opinions in her report cannot be squared with Miracle's later testimony. She agreed at her deposition that ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ She agreed that, on both CDK and Reynolds DMSs,

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████[7] In other words, Miracle repeatedly used the DMCA's terminology when

---

[7] ████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

referring to Defendants' measures and Authenticom's actions, highlighting her contortions and "technical" redefinitions around the statute's language.

Even if Miracle's CAPTCHA opinions were consistent, they are contrary to nearly everything written about CAPTCHA in the context of software design and cybersecurity. CAPTCHA is used "by websites to block automated interactions." Ex. 37 at 1; *see also* Ex. 35 at 1 ("Websites utilize CAPTCHA to prevent quality of service (QoS) degradation by bots or other automated programs by using a test only understood by humans."); Ex. 36 at 1 ("CAPTCHAs are used as security checks to deter spammers and hackers."). Moreover, "CAPTCHA bots and CAPTCHA farms" like those used by Authenticom are known as "ways for bad actors to get around CAPTCHA systems." Ex. 38 at 2. In one example, researchers who designed an algorithm that "breaks text-based CAPTCHAs" were concerned that their software had "the potential . . . to be used for *circumventing* protections that prevent automated interactions with websites." Ex. 37 at 9 (emphasis added).

To be clear, these are not cherry-picked examples selected by Defendants.

Most striking,

---

**PUBLIC REDACTED VERSION**

**B.**     **Miracle's Other "Challenge Question" Opinions Are Equally Unreliable.**

In addition to CAPTCHA,

Because the methodology that Miracle applied to her challenge-question opinions is identical to the methodology that she used for CAPTCHA, her opinions are contrary to law and unreliable for all the reasons set forth above. Her testimony should be excluded.

### C.  Miracle's "Suspicious Account Monitoring" Opinions Are Unreliable.

Miracle opines that CDK and Reynolds ███████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████ This opinion is flawed.

First, it is contrary to law: under the DMCA, "an access control measure can both (1) attempt to block initial access and (2) revoke access if a secondary check determines that access was unauthorized." *MDY Indus.*, 629 F.3d at 943. Second, Miracle gives no basis for her opinion beyond a vague reference to ████████████████████████████████████████

███ As with the majority of her report, this is purely personal opinion, untethered to any verifiable external standard or methodology that would allow the Court to assess its reliability. *See supra* pp. 9-11. Third, as with many of her other opinions, Miracle's view is contrary to NIST's technical standards on the subject, which recognize that access controls include measures that monitor for, and restrict or revoke access based on, atypical use patterns. Ex. 43, NIST 800-53, AC-2(6), AC-2(12). Fourth, Miracle's opinion is based in speculation rather than fact, ████████████████████

**PUBLIC REDACTED VERSION**

██████████████████████████████████████████████████████████

████████████████████████[9]

### D.    Miracle's *Profile Manager* Opinions Are Unreliable.

Miracle next opines that Authenticom's use of a "Profile Manager" program █

██████████████████████████████████████████████████████████

██████████████████████████████████ Evaluating CDK's allegations about

Profile Manager, this Court held otherwise. *See* Dkt. 506 at 16-17 (holding that use of "a software

tool that automatically renewed user IDs that CDK had disabled" constituted circumvention

because CDK's DMS "was *not* designed to allow third-parties such as Authenticom to re-enable

passwords that CDK intentionally disabled"). In any event, Miracle agreed that ███████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████

Rather, to reach her opinions about Profile Manager, Miracle reports that ████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

---

[9] ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

Counsel's attempt to bolster Miracle's opinions by ████████████████████████ ████████████████ was improper in any event. "A putative expert witness without independent expertise on a subject does not become qualified simply by absorbing a litigant's agenda-driven presentations." *Giganews, Inc. v. Perfect 10, Inc.*, 2019 WL 1422723, at *2 (C.D. Cal. Mar. 13, 2019). In that case, the court excluded an expert who "relie[d] not on any independent knowledge" of the relevant issues "but on three Youtube videos created by [the defendant] that appear to be akin to tutorials on the subject, and that [the defendant] specifically asked [the expert] to watch." *Id.*; *see also Cross*, 113 F. Supp. 2d at 1285-86 (where expert testimony is based on undocumented interview, the court "cannot make the determination that [the expert] is qualified to testify as an expert on the basis of anything said or done during such interview"). The same applies here.

### E. Miracle's Creative Expression Opinions Are Unreliable.

Miracle's other opinions on the Reynolds ERA Ignite software are not proper expert testimony. First, without any support or citations, Miracle opines that ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**PUBLIC REDACTED VERSION**

As with Miracle's other opinions, this is pure *ipse dixit*, divorced from any verifiable external standard or methodology sufficient to establish reliability. *See supra* pp. 9-11.

Second, Miracle's opinions as to

Authenticom apparently intends to offer this testimony as an attack on Reynolds's DMCA claim, essentially arguing that the portions of the ERA Ignite software that Authenticom had to break a CAPTCHA to access are not "a work protected under" the copyright laws because they do not exhibit sufficient creativity, and thus that it is not liable for circumvention under the DMCA. *See* 17 U.S.C. 1201(a). As an initial matter, Miracle's factual assertions as to when the ERA Ignite software interposes a CAPTCHA prompt are unreliable for the same reasons that her testimony regarding CDK's Profile Manager software is unreliable:

**PUBLIC REDACTED VERSION**

Moreover, in any event, Miracle's "creative expression" opinions are simply an attack on copyrightability and therefore improper expert testimony. Creativity is an element of copyrightability, *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991), and a pure issue of law for the Court, *Janky v. Lake County Convention & Visitors Bureau*, 576 F.3d 356, 363 (7th Cir. 2009). Courts properly exclude expert testimony on copyrightability elements because "copyrightab[ility] is a question of law, which the court will decide . . . . A jury has nothing to do with this subject." *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (N.D. Ill. 1996) (Easterbrook, J.); *see also, e.g.*, *Paul Morelli Design, Inc. v. Tiffany & Co.*, 200 F. Supp. 2d 482, 487 (E.D. Pa. 2002) (expert testimony on whether a work exhibits creativity is "analogous to having expert witnesses testify in a personal injury action that a party's conduct was negligent").

## IV.    MIRACLE'S REBUTTAL TO EDWARD STROZ IS UNRELIABLE.

As described above, Defendants' data security expert Edward Stroz calculated the number of times that Authenticom circumvented CDK's CAPTCHA prompts ███████████████████

19

**PUBLIC REDACTED VERSION**

Miracle criticizes Stroz's calculation ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████ That will not do. As this Court

has recognized, experts are not mouthpieces for presenting facts or information from lay witnesses.

*Van v. Ford Motor Co.*, 332 F.R.D. 249, 271 n.10 (N.D. Ill. 2019) (Dow, J.); *EEOC v. Rockwell

Int'l Corp.*, 60 F. Supp. 2d 791, 795 (N.D. Ill. 1999) (excluding testimony where expert's "sole

source of information . . . c[ame] from summaries prepared by one of the litigants").

In any event, Miracle's rebuttal attacks a straw man. ████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████ Therefore, Miracle's criticism of Stroz's methodology does

not even address the process he actually followed.

## CONCLUSION

Defendants' motion to exclude the expert testimony of Nancy Miracle should be granted.

**PUBLIC REDACTED VERSION**

Dated: February 28, 2020

Respectfully submitted,

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

PUBLIC REDACTED VERSION

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on February 28, 2020, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF MS. NANCY MIRACLE** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

> */s/ Britt M. Miller*
> Britt M. Miller
> MAYER BROWN LLP
> 71 South Wacker Drive
> Chicago, IL 60606
> (312) 782-0600
> bmiller@mayerbrown.com