IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Magistrate Judge Jeffrey T. Gilbert |

### ORDER

This matter is before the Court on the remaining issues raised in Class Plaintiffs' Motion to Compel Production of Inadequately Logged Documents from Defendants' Privilege Logs and to Compel Discovery Regarding Drafting Agreements [ECF No. 535]. On June 10, 2019, the Court ruled on portions of Class Plaintiffs' Motion and kept under advisement two issues relating to Class Plaintiffs' request to compel the production of two categories of documents identified on Defendants CDK's and Reynolds and Reynolds's privilege logs: (1) communications with third-party advisors, consultants, and agents, and (2) communications that Class Plaintiffs contend are not primarily legal in nature. *See* [ECF No. 717]. At the June 10, 2019 hearing, the Court set a procedure by which the parties would submit a set of exemplar documents so the Court could engage in a limited *in camera* review of the documents requested by Class Plaintiffs in their Motion [ECF No. 535]. *See* [ECF No. 717]. The Court has reviewed the sample set of documents submitted by the parties.

For the reasons discussed below, the remaining portion of Class Plaintiffs' Motion to Compel [ECF No. 535] that was taken under advisement is granted in part and denied in part. The Court finds that Defendant CDK's claims of privilege for most of the documents submitted regarding communications with third-party advisors, consultants, and agents are not well-founded. With regard to the communications that Class Plaintiffs contend are not primarily legal in nature, the Court finds that CDK's and Reynolds and Reynolds' claims of privilege are appropriate and well-founded.

The Court declines to engage in further *in camera* review of additional documents at this time and instead orders CDK to re-review the documents listed on its privilege logs at issue in this Motion regarding communications with third-party advisors, consultants, and agents and re-evaluate its claims of privilege in light of the Court's discussion in this Order. With regard to the communications that Class Plaintiff contend are not primarily legal in nature, nothing more is required of CDK and Reynolds and Reynolds at this time. See Statement below for further details.

### STATEMENT

In their Motion, Class Plaintiffs moved to compel two categories of documents identified on Defendants CDK's and Reynolds and Reynolds's privilege logs: (1) CDK's email communications with third-party advisors, consultants, and agents and/or emails on which third

1

parties were copied, and (2) Defendants' email communications that Class Plaintiffs argue are not primarily legal in nature. Class Plaintiffs argue that Defendants CDK and Reynolds and Reynolds have failed to establish that the documents they have withheld are protected by the attorney-client privilege and, therefore, should be produced. Defendants CDK and Reynolds and Reynolds oppose Class Plaintiffs' Motion arguing that the documents are privileged and should not be produced.

The Seventh Circuit has articulated the following test for the existence of the attorney-client privilege: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Naik v. Boehringer–Ingelheim Pharms., Inc.*, 2008 WL 4866015, at *1 (N.D. Ill. June 19, 2008) (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir.1991)). Of course, not all communications between the attorney and the client are privileged. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 2008). The attorney-client privilege applies "'only if [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence.'" *Id.* (quoting *U.S. v. Defazio*, 899 F.2d 626, 635 (7th Cir.1990)). As a general rule, however, "material which is otherwise privileged is discoverable if it has been disclosed to a third party." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 139 (N.D. Ill. Dec. 3, 1993). An exception to this rule exists and the presence of a third-party agent does not waive the privilege if the agent's presence (or, in the context of this case, if the third-party is included in or copied on an email communication) is to facilitate effective communication between lawyer and client. *In re Grand Jury Investigation*, 918 F. 2d 374, 386 n.20 (3rd Cir. 1990) (holding that the presence of an agent does not abrogate privilege).

In addition, "[w]hen an attorney provides both legal and non-legal services to a client, the legal aspect must predominate in the communication under review in order for it to be protected by the attorney-client privilege." *Moore v. Bd. of Trs.*, 2010 WL 4703859, at *3 (N.D. Ill. Nov. 8, 2010) (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) (The attorney-client privilege "will not apply where the legal advice is incidental to business advice.")). "[P]rivilege is limited to situations in which the attorney is acting as a legal advisor—business and financial advice are not protected." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013) (citing *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003)). "Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Id.* (quoting *Baxter Travenol Labs, Inc. v. Abbott Labs.*, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987)). "[T]he inclusion of general counsel does not transform all business discussions into privileged attorney-client communications." *Id.*; *see also Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) (quoting *In re Matter of Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988)) ("The purpose of the communication must be the obtaining or providing of legal advice, not a business discussion. 'A business that gets marketing advice from a lawyer does not acquire a privilege in the bargain . . . .'")

It is difficult to resolve the privilege issues raised in Class Plaintiffs' Motion in this context without reviewing the documents. Therefore, the Court concluded it would be prudent to

review a limited number of the documents at issue. As set forth in the Court's June 10, 2019 Order [ECF No. 717], the Court requested that Class Plaintiffs identify for both Defendant CDK and Defendant Reynolds and Reynolds 10 documents from the respective categories at issue on each of Defendants' respective privilege logs to be submitted for *in camera* review. Defendants then submitted those documents with the corresponding privilege log entries to the Court *in camera*. Defendants also included information sufficient to identify the people named in the log for these documents and those individuals' roles/titles/capacity. Each Defendant also submitted for the Court's review 10 additional sample documents from each of the categories and their corresponding privilege log entries in the same manner. As a result, the Court reviewed 60 documents withheld based on a claim of privilege—in total, 20 CDK documents relating to disclosures to third-parties, and 20 CDK documents and 20 Reynolds and Reynolds documents relating to advice that Class Plaintiffs contend is not predominately legal in nature.

### (1) CDK Documents Including Disclosures to Third Party Advisors, Consultants, and Agents:

Based on its *in camera* review, the Court concludes that Defendant CDK's claims of privilege for documents that reflect disclosures to third parties are not well-founded for most of the documents submitted.

CDK argues that Class Plaintiffs' narrow construction of the attorney-client privilege ignores the reality of modern business and legal practice as "the complexities of modern existence prevent attorneys from effectively handling clients' affairs without the help of others, and the attorney-client privilege must include all the persons who act as the attorney's agents." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 420 (N.D. Ill. 2006) (finding communication with a third party privileged when the third party gathered information to aid counsel in rendering legal advice); *see In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("[M]aterial transmitted to [a third party] may fall under the attorney-client privilege if the [third party] is acting as an agent of an attorney for the purpose of assisting with the provision of legal advice."). CDK argues that for all of the challenged communications at issue, those communications with CDK's advisers and consultants were necessary for CDK's counsel to render legal advice.

The Court is not persuaded by CDK's arguments after reviewing the documents at issue. There is a key distinction. "[W]hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only [the third party's] service . . . or if the advice sought is the [third party's] rather than the lawyer's, no privilege exists." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) (emphasis in original) (quoting *United States v. Brown*, 478 F.2d 1038, 1040 (7th Cir. 1973)). CDK has not established that most of the communications involving these third-party advisors and consultants arose in a context that involved the rendering of legal advice for which the third-party's involvement was necessary to facilitate the rendering of such advice. *See In re Grand Jury Proceedings*, 220 F.3d at 571. Simply asserting the argument that the third-party advisors and consultants were integral to the in-house lawyers' rendering legal advice is not enough. It must be clear from the actual communications that the lawyer was seeking input and/or advice from the third-party advisors and consultants in order to provide legal advice rather

than asking the third-party advisors and consultants to offer their independent assistance, assessment, and opinion separate and apart from the legal advice.

Specifically, the Court finds as follows:

(a) Of the 10 CDK documents selected by CDK in this category, the Court finds that only two of documents are privileged. The documents at Tabs 4 and 5 are privileged; the remaining documents are not privileged and should be produced.

The document at Tab 1 is not privileged. It is an email communication from a CDK lawyer to other CDK employees and a third-party consultant from Aberdeen Strategies. The lawyer is telling the addressees on the email that the legal department is conducting an investigation and reporting how the investigation is proceeding. The inclusion of the third-party advisor or consultant waives any claimed privilege. The Court is not persuaded that the third-party consultant was involved in this communication to facilitate the provision of legal advice by the attorney; this is simply the in-house lawyer "looping in" the communications team, including a third-party advisor or consultant, about the internal investigation and how it will proceed. But the third-party advisor is neither an attorney nor client and the there is nothing to indicate in this communication that the advisor was included in the email to facilitate the provision of legal advice by the attorney to the client.

The document at Tab 2 is an email communication from an in-house CDK lawyer to another CDK employees, and a third-party consultant from Aberdeen Strategies also is included. The document is not privileged because the email discusses "talking points" about a lawsuit filed against CDK. These "talking points" are intended for public dissemination which takes the email out of the privileged realm. In addition, even if the communication was privileged, the disclosure of the email to a third-party advisor or consultant waives the privilege as there no indication that the third-party advisor or consultant was involved in this communication to facilitate the provision of legal advice by the attorney.

The document at Tab 3 is an email communication between a CDK in-house lawyer and a third-party consultant from Aberdeen Strategies. This email is not privileged as it is discussing business matter and not legal matters, specifically how to strategically message a public response.

The document at Tab 4 is a series of email communications between a CDK in-house lawyer, outside counsel and a third-party consultant from NERA Economic Consulting, which was hired by CDK to provide economic consulting services. These emails are discussing the economic analyses performed at the request of counsel for counsel's use in providing legal advice to the client and are privileged communications.

The document at Tab 5 a series of email communications between a CDK in-house lawyer, outside counsel and a third-party consultant from NERA Economic Consulting, which was hired by CDK to provide economic consulting services. These emails are discussing the economic analyses performed at the request of counsel in the context of deciding how to respond to requests from the FTC, and these are privileged communications.

The document at Tab 6 is an email from a CDK in-house attorney to CDK employees and a third-party consultant from Aberdeen Strategies seeking comments on a draft press release. This email is not privileged. The communication does not involve the seeking or providing of any legal advice, and even if the email was privileged, the disclosure of the email to a third-party advisor or consultant waives the privileges as there no indication that the third-party advisor or consultant was involved in this communication to facilitate the provision of legal advice by the attorney.

The document at Tab 7 is an email from a CDK in-house litigation attorney to CDK employees and a third-party consultant from Aberdeen Strategies regarding preparation of an individual for an interview with media. The CDK attorney is raising some concerns about "potential sticking points" that could come up in the interview. It is not clear that the underlying communication is privileged as legal advice is not being given or sought; the attorney simply is highlighting potential sensitive topics that could come up in the interview. However, even if the communication was privileged, the disclosure of the email to a third-party advisor or consultant waives the privilege as there no indication that the third-party advisor or consultant was involved in this communication to facilitate the provision of legal advice by the attorney.

The document at Tab 8 is an email from a CDK in-house litigation attorney to CDK employees and a third-party consultant from Aberdeen Strategies regarding the preparation of an official media statement or responses to frequently asked questions regarding the Authenticom litigation. The CDK attorney raises a question about whether some questions and answers should not be included. The disclosure of the email to a third-party advisor or consultant waives any privilege as there no indication that the third-party advisor or consultant was involved in this communication to facilitate the provision of legal advice by the attorney.

The documents at Tab 9 is a series of email communications among a CDK in-house litigation attorney and to CDK employees in which a third-party consultant from Aberdeen Strategies is copied. These emails discuss modifications to "Authenticom Litigation FAQ." It is not clear the any legal advice is being given or sought in this review; it appears to be more of a business communication. However, even if the communication was privileged, the disclosure of the email to a third-party advisor or consultant waives the privilege as there no indication that the third-party advisor or consultant was involved in this communication to facilitate the provision of legal advice by the attorney.

The document at Tab 10 is an email communication between a CDK in-house litigation attorney and other CDK employees in which a third-party consultant from Aberdeen Strategies is copied. The in-house attorney is not providing legal advice; rather, he is providing business advice on a communication that is intended for public distribution. However, even if the communication was privileged, the disclosure of the email to a third-party advisor or consultant waives the privilege as there no indication that the third-party advisor or consultant was involved in this communication to facilitate the provision of legal advice by the attorney.

(b) Of the 10 CDK documents selected by Class Plaintiffs in this category, the Court finds that only one of the documents is privileged. The document at Tab 1 privileged; the remaining documents at Tabs 2 through 10 are not privileged and should be produced

The documents at Tab 1 is privileged because it is an email communication with attachments between a CDK employee and a CDK in-house counsel in which the CDK employee is sending the in-house lawyer documents regarding the proposed merger with Auto/Mate from his deleted email folder. The parties submitted a sample of the documents attached to the parent email, which include, among others, documents relating to the underlying transaction, drafts and status memos. The Court agrees that is was proper for CDK to withhold the attachments as part of the privileged attorney-client communication.

The documents submitted as Tabs 2 through 10 are not privileged and should be produced. For similar reasons discussed above, in many instances, it is not entirely clear how the underlying documents are privileged in the first instance as they involve communications about business advice and business discussions which are not privileged simply because a lawyer is included and/or copied on the communications. However, even if the communications are privileged, the disclosure of the emails to a third-party advisor or consultant waives the privilege as there no indication that the third-party advisor or consultant was involved in these communications to facilitate the provision of legal advice by the attorney. CDK has not established how the inclusion of the third-party advisor or consultant in any of these communications was necessary for the provision of any legal advice, and it is CDK's burden to do so as the proponent of the privilege. Therefore, the privilege, if any, has been waived, and the documents should be produced.

**(2) Defendants' Documents Including Advice Challenged As Not Predominately Legal in Nature:**

Based on its *in camera* review, the Court concludes that Defendants CDK's and Reynolds and Reynolds's claims of privilege for the documents that Class Plaintiffs challenge as advice not predominately legal in nature are appropriate and well-founded.

Class Plaintiffs argue that CDK's and Reynolds and Reynolds's privilege logs include entries that have vague descriptions appearing to describe advice that is not predominantly legal in nature but rather involving business matters. Class Plaintiffs argue that Defendants fail to establish that the challenged communications were made for the purpose of generating legal advice instead of relating to business advice for the business matters listed in their privilege log descriptions. To show that a communication relates to legal advice, instead of simply business advice, the proponent of the privilege must demonstrate that the communications were made primarily for the purpose of generating legal advice. *Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *3 (N.D. Cal. Aug. 23, 2004). "Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987).

After reviewing Defendants' documents, the Court is not persuaded by Class Plaintiffs' arguments. It is not disputed that advice from lawyers must concern the legal implications of an issue for the attorney-client privilege to apply. It equally is clear that the privilege protects legal advice provided with regard to business matters. As courts in this District have explained: "solely personal or business advice is not protected by the attorney-client privilege," but "legal

6

advice relating to business matters clearly is." *Crabtree v. Experian Info. Sols., Inc.*, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017) (quoting *Marusiak v. Adjustable Clamp Co.*, 2003 WL 21321311, at *2 (N.D. Ill. June 5, 2003)). The communications at issue consistently reveal communications seeking legal advice relating to business matters and, therefore, are privileged.

Specifically, the Court finds as follows:

(a) Of the 10 documents selected by CDK in this category, the Court finds that all of the documents are privileged.

(b) Of the 10 CDK documents selected by Class Plaintiffs in this category, the Court finds that all of the documents are privileged.

(c) Of the 10 documents selected by Reynolds and Reynolds in this category, the Court finds that all of the documents are privileged.

(d) Of the 10 Reynolds and Reynolds documents selected by Class Plaintiffs in this category, the Court finds that all of the documents are privileged.

For all the reasons set forth above, the remaining portion of Class Plaintiffs' Motion to Compel Production of Inadequately Logged Documents from Defendants' Privilege Logs and to Compel Discovery Regarding Drafting Agreements [ECF No. 535] is granted in part and denied in part. The Court declines to engage in further review of any additional documents at this time for the reasons discussed in this Order. The Court's analysis in this Order should be sufficient for CDK to re-review any additional documents on its privilege log relating to its communications with third-party advisors, consultants, and agents and to assess whether any more documents should be produced to Class Plaintiffs consistent with the Court's analysis.

It is so ordered.

Jeffrey T. Gilbert
Unites States Magistrate Judge

Dated: March 4, 2020