PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 1:18-CV-00864 |
| *This document relates to:* | |
| *Motor Vehicle Software Corp. v. CDK Global, LLC, et al.,* Case No. 1:18-cv-00865 (N.D. Ill.) | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO COMPEL PLAINTIFF MVSC TO PRODUCE ITS SETTLEMENT AGREEMENT AND 3PA AGREEMENT WITH CDK**

PUBLIC VERSION

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................1

II.     BACKGROUND ............................................................................................2

     A.      Mark Israel's Liability Opinions...............................................................3

     B.      Gordon Klein's Causation and Damages Opinions. ..................................4

     C.      The Parties Meet and Confer. ...................................................................5

III.    THE COURT SHOULD COMPEL MVSC TO PRODUCE ITS SETTLEMENT AGREEMENT AND 3PA AGREEMENT WITH CDK.....................................6

     A.      MVSC's Settlement and 3PA Agreement with CDK Is Highly Relevant to Determining Whether and When the Alleged Conspiracy Ended, the Amount of MVSC's Claimed Damages, the Overcharge Estimated by Dr. Israel, and the But-For Price Estimated By Mr. Klein............................................7

     B.      Reynolds Is Entitled to the MVSC Settlement and 3PA Agreement to Determine the Set-Off Amount...............................................................10

     C.      Reynolds Is Entitled to the MVSC Settlement and 3PA Agreement to Understand Witness Credibility and Bias Issues ...................................14

IV.     CONCLUSION............................................................................................15

PUBLIC VERSION

## **TABLE OF AUTHORITIES**

**Page(s)**

Federal Cases

*Bal Theatre Corp. v. Paramount Film Distrib. Corp.*
206 F. Supp. 708 (N.D. Cal. 1962) ........................................................................................12

*Bennett v. La Pere*
112 F.R.D. 136 (D.R.I. 1986) ..........................................................................................11, 12

*In re Brand Name Prescription Drug Antitrust Litig.*
No. 94 C 897, MDL No. 997 (N.D. Ill. Sept. 14, 1998) ............................................................8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
No. 3:07-cv-05944-SC, 2015 WL 13756260 (N.D. Cal. July 31, 2015) ..........................11, 14

*Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*
No. 17-1156-EFM, 2019 WL 3740594 (D. Kan. Aug. 8, 2019) ..........................................7, 8

*Burke v. Regalado*
935 F.3d 960 (10th Cir. 2019) ..............................................................................................10

*CadleRock Joint Venture, L.P. v. Royal Indem. Co.*
No. 02cv16012, 2012 WL 443316 (N.D. Ohio Feb. 10, 2012) ...............................................14

*Del Monte Fresh Produce B.V. v. ACE Am. Ins. Co.*
No. 00-4792-CIV, 2002 WL 34702176 (S.D. Fla. Sept. 4, 2002) ...........................................11

*Drug Mart Pharm. Corp. v. Am. Home Prods., Corp.*
288 F. Supp. 2d 325 (E.D.N.Y. 2003) .....................................................................................8

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*
995 F.2d 425 (3d Cir. 1993)...................................................................................................12

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*
No. 05-2164-MLB-DWB, 2007 WL 1246216 (D. Kan. Apr. 27, 2007) ..................................14

*Melton v. Bank of Lexington*
No. 02-1152 B/P, 2007 WL 9706436 (W.D. Tenn. June 27, 2007) ........................................14

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*
No. 5:16-cv-06370-EJD, 2019 WL 5269018 (N.D. Cal., Oct. 17, 2019) ............................9, 10

*State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*
No. 14-cv-10266, 2016 WL 6822014 (E.D. Mich. Nov. 18, 2016)........................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
   No. M 07-1827 SI, 2013 WL 6174683 (N.D. Cal. Nov. 20, 2013) ........................................10

*Union Carbide Corp. v. Montell N.V.*
   28 F. Supp. 2d 833 (S.D.N.Y. 1998).......................................................................................9

*White v. Kenneth Warren & Son, Ltd.*
   203 F.R.D. 364 (N.D. Ill. 2001)....................................................................................11, 13

*Zenith Radio Corp. v. Hazeltine Research, Inc.*
   401 U.S. 321 (1971)..................................................................................................10

Federal: Statutes, Rules, Regulations, Constitutional Provisions

Federal Rules of Civil Procedure
   Rule 8(c)...............................................................................................................13
   Rule 26...............................................................................................................6, 11

Federal Rules of Evidence
   Rule 408...........................................................................................................8, 9, 14

PUBLIC VERSION

## I.  <u>INTRODUCTION</u>

Defendant The Reynolds and Reynolds Company ("Reynolds") respectfully submits this memorandum of law in support of its motion to compel plaintiff Motor Vehicle Software Corp. ("MVSC") to produce its settlement agreement and 3PA agreement with Defendant CDK Global, LLC ("CDK").

On October 22, 2018, this Court permitted MVSC's claims based on an alleged conspiracy between Defendants Reynolds, CDK, and Computerized Vehicle Registration, Inc. ("CVR") to proceed past the pleading stage, but specifically noted that MVSC's allegations regarding Reynolds were particularly weak:  "The Court recognizes that MVSC's allegations with respect to Reynolds's involvement in the alleged conspiracy are not robust."  Dkt. 425.  According to MVSC and its experts, Defendants conspired to block MVSC from Reynolds's RCI program and CDK's 3PA program by quoting prices so high that they were "economically infeasible" for MVSC.

One year later, in October 2019, MVSC settled and dismissed its claims against Defendants CDK and CVR, leaving only its conspiracy claims against Reynolds.  MVSC is now a participant in CDK's 3PA program.  Reynolds denies that any conspiracy occurred, but even assuming it did, common sense dictates that it must have ended, at the very latest, when MVSC settled and dismissed its claims against CDK and CVR in October 2019 and joined 3PA.

However, MVSC, through its causation and damages expert, Gordon Klein, ███████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████  Further, Mr. Klein and MVSC's liability expert Mark Israel both ████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████ No expert in this case, on either side, has considered MVSC's settlement and 3PA agreement or been given the opportunity to do so. Reynolds is entitled to discovery of these highly relevant agreement terms in order to respond to and rebut MVSC's arguments.

As with all settlement agreements involving alleged antitrust coconspirators, who are jointly and severally liable, Reynolds is also entitled understand the terms of MVSC's settlement and 3PA agreement in order to determine the value of these agreements for the purposes of calculating the amount of a potential damages setoff. And Reynolds is further entitled to understand whether there may be cooperation clauses or other terms that give rise to bias or credibility issues for potential witnesses who will testify at trial.

For these reasons, the Court should compel MVSC to produce its settlement and 3PA agreement with CDK and any attendant documents or side agreements, along with attachments and any other material relating to the consideration provided in exchange for a release of claims in this case.

## II.   **BACKGROUND**

MVSC filed its Second Amended Complaint ("SAC") against defendants CDK, CVR and Reynolds in November 2017, alleging that defendants conspired to block MVSC from access to data, including by blocking MVSC from Reynolds's RCI program and CDK's 3PA program through high prices. MVSC Dkt. 76. The only claims asserted against Reynolds were claims based on alleged conspiracy; there were no claims against Reynolds based on alleged unlawful unilateral conduct.[1] *Id.* ¶¶ 206-15, 233-40, 245-63.

---

[1]   MVSC's unilateral monopolization and attempted monopolization claims against Reynolds were previously dismissed. 10/2/2017 Order Granting in Part and Denying in

Reynolds propounded document requests to MVSC on May 25, 2018. **Exhibit A**. MVSC responded on June 22, 2018. **Exhibit B**. Reynolds was unable to specifically request the MVSC settlement and 3PA agreement because those documents did not exist until after fact discovery had closed. However, several of Reynolds's document requests were broad enough to encompass such agreements, had they existed. *See* **Exhibit A** (RFPs 24-27 and 38 requested documents relating to 3PA, and RFP 23 requested all documents exchanged with CDK).

Fact discovery closed on April 30, 2019. Dkt. 616-1. On August 26, 2019, MVSC served Reynolds with the expert report of Mark Israel, who offered liability opinions for MVSC, and the expert report of Gordon Klein, who offered causation and damages opinions for MVSC. After expert discovery was underway, on October 15, 2019, MVSC voluntarily dismissed all claims against CDK and CVR pursuant to a settlement agreement with CDK. Dkt. 778; Dkt. 818 at 4 n.2. Following the settlement, MVSC is now a member of CDK's 3PA program. **Exhibit C**, CDK 3PA Partner List at 4. MVSC's experts served reply reports on December 19, 2019. Gordon Klein was deposed on January 10, 2020, and Mark Israel was deposed on January 16 and 17, 2020.

> **A.**    **Mark Israel's Liability Opinions.**



**Exhibit D**, Israel Rpt. ¶ 162.

*See id.* ¶ 165

---

Part Defendants' Motions to Dismiss (MVSC Dkt. 73) at 9. MVSC did not replead those claims against Reynolds in its SAC.

█████████████████████████████████ *id.* ¶ 162 ████████████████████

███████████████████████████████████

Although MVSC has settled with CDK and now participates in CDK's 3PA program, █

███████████████████████████████████████████ **Exhibit E**, Israel

Dep. Tr. at 601:11-16 █████████████████████████████████

█████████████████████ ████████████████████████████████

█████████████████ *Id.* at 600:20-21 ████████████████████████

████████████ *see also id.* at 601:11-16.

**B.    Gordon Klein's Causation and Damages Opinions.**

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████



**Exhibit G**, Klein Reply, at Ex. A.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████ *See, e.g.*, **Exhibit F**, Klein Rpt. ¶ 54. ███████

-4-



██████. *Id.* at ¶¶ 16, 54 & n.57. ███████████████

█████████████ *Id.* at ¶ 54 and n.57.

**Exhibit H,** Klein Dep. Tr. at 83:14-18. ████████████

███████████████████████████ *Id.* at 85:4-17.

███████████████████████████ *Id.* at 88:2-89:7.

He has not done so. During the parties' telephonic meet and confer on February 26, 2020, counsel for MVSC stated that they did not know whether or when Mr. Klein would update his report.

In order for Mr. Klein to estimate MVSC's lost profits, ██████████████

**Exhibit G** at ¶ 83 & Ex. E.5. ████████████████

█████████████████████ *Id.*

## C.     The Parties Meet and Confer.

Initially, Reynolds thought that CDK or CVR would inform Reynolds of the settlement terms in light of the fact that claims against CVR were settled and Reynolds is a part owner of CVR. That did not occur, because as counsel for CDK/CVR explained to counsel for Reynolds, there was no agreement between MVSC and CVR, only an agreement with CDK that resolved

MVSC's claims against both CDK and CVR. Reynolds also thought that MVSC's experts might serve reply reports with updated opinions based on the settlement and 3PA agreements and produce them at that time, because they did not exist at the time of the experts' opening reports. That also did not occur.

On January 31, 2020, Reynolds sent a meet and confer letter to MVSC asking it to produce a copy of the settlement agreement. **Exhibit I**, 1/31/20 Caseria letter. MVSC did not produce the settlement agreement and did not respond to Reynolds's letter. **Exhibit J**, 2/7/20 Bonomo email. Reynolds then requested a telephonic meet and confer, which took place on February 26, 2020. Counsel for CDK and CVR confirmed on that call that there was only one settlement agreement, and it was between MVSC and CDK (not CVR). Counsel for MVSC and CDK were unwilling to provide any other information regarding their settlement agreement on that call, they did not refute any of the facts set forth in Reynolds's meet and confer letter, and no agreements or compromises were reached. On March 18, 2020, counsel for MVSC sent a brief email to counsel for Reynolds stating: "Reynolds has sought discovery of MVSC's settlement agreement with CDK, 'as well as any attendant documents,' for purposes of setoff. There is no basis for that request because, among other reasons, fact discovery has closed and Reynolds not pled a setoff defense." **Exhibit L**, 3/18/20 Dorris email. MVSC requested that Reynolds forego its discovery that is the subject of this motion in order to secure MVSC's agreement to permit Reynolds to assert a setoff defense. *Id.* ("MVSC would agree to the proposed amendment only if Reynolds agrees not to seek any discovery related to its newly proposed setoff defense.").

## III. THE COURT SHOULD COMPEL MVSC TO PRODUCE ITS SETTLEMENT AGREEMENT AND 3PA AGREEMENT WITH CDK.

This Court has previously articulated the circumstances under which a party is entitled to discovery of a confidential settlement agreement under Federal Rule of Civil Procedure 26(b)(1):

"While there is no settlement privilege to overcome, in most cases, the movant articulates a specific basis as to why the settlement terms are relevant to a claim or defense in the continuing litigation so that production of the settlement agreement is proportional to the needs of the case and overrides the settling parties' interest in keeping their settlement confidential."  8/16/19 Order at 2 (Dkt. 748).  As set forth below, the MVSC/CDK settlement agreement and 3PA agreement (and any attendant documents or side agreements) are highly relevant to liability, causation, and damages and outweigh the confidentiality interests of MVSC or CDK, which are adequately addressed by the existing confidentiality order.

> **A.** **MVSC's Settlement and 3PA Agreement with CDK Is Highly Relevant to Determining Whether and When the Alleged Conspiracy Ended, the Amount of MVSC's Claimed Damages, the Overcharge Estimated by Dr. Israel, and the But-For Price Estimated By Mr. Klein.**

The MVSC settlement and 3PA agreement are discoverable because they are among the most highly relevant documents that exist in connection with MVSC's case.  They contain evidence that Reynolds may use to establish (1) that the alleged conspiracy (which Reynolds asserts never occurred in the first place) ended no later than October 2019, and (2) the actual prices and terms that MVSC is paying for 3PA access (in order to test whether prices previously quoted by Reynolds and CDK were economically infeasible, and to test the but-for 3PA prices estimated by Mr. Klein based on the overcharge rates determined by Dr. Israel).  Both of these are topics ██ ████████████████████████████████████████████ go to issues that are at the heart of the case, outweighing whatever confidentiality concerns MVSC may have.  *See, e.g.*, *Brave Law Firm, LLC v. Truck Accident Lawyers Grp., Inc.*, No. 17-1156-EFM, 2019 WL 3740594, at *4 (D. Kan. Aug. 8, 2019) (requiring production of settlement agreement because "[f]airness requires allowing . . . access to information critical to" issues "at the heart of this case," and noting that confidentiality concerns could be addressed through a protective order).

*First*, to the extent that MVSC or its experts intend to argue that the alleged conspiracy to block MVSC from RCI and 3PA is ongoing, Reynolds is entitled to examine the settlement and 3PA agreement to determine whether that is the case and to present evidence refuting this position. As set forth above, 

*See supra* at 4-5.

**Exhibit F** at ¶¶ 16, 54 & n.57.

**Exhibit H** at 83:14-19.

*Id.* at 88:2-89:7.

The settlement and 3PA agreement (and any attendant documents or side agreements) are thus relevant to establishing whether and when the alleged conspiracy ended, which in turn impacts liability and damages. Rule 408 does not bar Reynolds from using the settlement and 3PA agreement for this purpose. *See, e.g.*, *Drug Mart Pharm. Corp. v. Am. Home Prods., Corp.*, 288 F. Supp. 2d 325 (E.D.N.Y. 2003) (court considered terms in settlement agreement as evidence of conspirators' withdrawal from the alleged conspiracy, eliminating post-settlement damages); *In re Brand Name Prescription Drug Antitrust Litig.*, No. 94 C 897, MDL No. 997 (N.D. Ill. Sept. 14, 1998) (Ruling on Motion In Limine, attached as **Exhibit K**), p. 11 ("Assuming the existence of the conspiracy as charged in the plaintiffs' complaint, the withdrawal from the conspiracy by settlement on the part of a substantial number of defendants, along with the attendant notice of settlement (withdrawal) to the remaining defendants, terminated the charged conspiracy as a matter of law on May 1, 1996. For these reasons, the defendants' motion to exclude evidence of fact of injury or damages post May 1, 1996 is granted.").

*Second*, Reynolds is entitled to discover the settlement and 3PA agreement to understand the prices at which MVSC is now participating in 3PA. MVSC's theory of the case is that defendants conspired to block MVSC from access to Reynolds's RCI program and CDK's 3PA program through inflated quotes that MVSC could never accept because they were economically infeasible. MVSC's liability expert, ████████████████████████████████████████

████████████████████████████████████████████████████████████████

**Exhibit D**, Israel Rpt. ¶ 162, 165. Discovering the prices and terms at which MVSC is now participating in CDK's 3PA program, which are economically feasible for MVSC, are relevant to understanding whether and to what extent previous quotes to MVSC for RCI or 3PA were or were not feasible for MVSC.

Similarly, ████████████████████████████████████████████

████████████████████████████████████████████████ **Exhibit G** at ¶ 83 and Ex. E.5. ████████████████████████████████████████

████████████████ *See id.* ████████████████████████████████████

████████████████████████ **Exhibit E**, Israel Dep. Tr. at 601:11-16 ████████████

████████████████████████████████ Reynolds is entitled to discover the *actual* prices and terms under which MVSC is now participating in 3PA to defend against Mr. Klein's *estimated* 3PA price and Dr. Israel's *estimated* overcharge.

Rule 408 does not bar, or even apply, to MVSC's 3PA agreement with CDK, regardless of whether that agreement is part of the MVSC settlement.[2] *Optronic Techs., Inc. v. Ningbo Sunny*

---

[2] MVSC did not confirm or deny in the meet and confer process whether its settlement included a 3PA agreement, nor did it correct Reynolds's assertion in its meet and confer letter that the settlement included a 3PA agreement.

*Elec. Co.*, No. 5:16-cv-06370-EJD, 2019 WL 5269018, at \*3-4 (N.D. Cal., Oct. 17, 2019) (holding that a "forward-looking business contract" did not "fall within the scope of the plain text of Rule 408" even though it was attached to and incorporated by reference into a settlement agreement); *Union Carbide Corp. v. Montell N.V.,* 28 F. Supp. 2d 833, 841 (S.D.N.Y. 1998) (holding that Rule 408 did not apply to business negotiations that occurred during settlement meetings, because "[s]uch discussions and documents comprised business communications rather than settlement negotiations.").

The highly relevant nature of the settlement agreement and 3PA agreement distinguish this motion from the Dealer Class Plaintiffs' ("DCPs") earlier motion to compel the settlement agreement between Cox and CDK, which this Court denied.  *See* 8/16/19 Order (Dkt. 748).  There, the DCPs failed to articulate how the Cox/CDK settlement was relevant to issues in the DCPs' case.  *See id.* at 3 (rejecting DCPs' general assertion that "discovery of the settlement agreement may promote or inform their own settlement discussions.").  Notably, the Court left the door open for a different outcome if things changed and the settlement became "more relevant."  *Id.* Reynolds's request for the MVSC settlement and 3PA agreement is plainly and significantly "more relevant" than the DCPs' earlier request for the Cox/CDK settlement.

### B. Reynolds Is Entitled to the MVSC Settlement and 3PA Agreement to Determine the Set-Off Amount.

The MVSC settlement and 3PA agreement is also discoverable because it is relevant to duplicative recovery and set-off issues.  Anything of value received by MVSC in settlement from CDK or CVR, Reynolds's alleged antitrust coconspirators, cannot be recovered again from Reynolds, because all three defendants are jointly and severally liable for the same conspiracy damages.  *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971) ("[A] plaintiff who has recovered any item of damage from one coconspirator may not again

recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover double payment."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 6174683, at \*6 (N.D. Cal. Nov. 20, 2013), *aff'd*, 637 F. App'x 981 (9th Cir. 2016) (deducting amount of settlement with antitrust coconspirator from damages award); *William Inglis & Sons Baking Co. v. Continental Baking Co., Inc.*, 981 F.2d 1023, 1024 (9th Cir. 1992) (same).

Under similar circumstances, courts have found settlement agreements to be relevant and discoverable. *See, e.g.*, *Burke v. Regalado*, 935 F.3d 960, 1048 (10th Cir. 2019) (district court abused discretion by denying discovery of settlement agreement, explaining that "the settlement agreement is not only relevant but also is necessary to resolving the setoff issue."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, 2015 WL 13756260, at \*2-4 (N.D. Cal. July 31, 2015) (granting motion to compel production of settlement agreements with alleged antitrust coconspirators because it was relevant to set-off issues); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 367 (N.D. Ill. 2001) (ordering production of a confidential settlement agreement, explaining: "Discovery of the settlement documents will allow the remaining defendants to assess their remaining liability."); *Del Monte Fresh Produce B.V. v. ACE Am. Ins. Co.*, No. 00-4792-CIV, 2002 WL 34702176, at \*3-4 (S.D. Fla. Sept. 4, 2002) (recommending that the court compel production of settlement agreements because such agreements were relevant to defendant's "double recovery" defense); *Bennett v. La Pere*, 112 F.R.D. 136, 138 (D.R.I. 1986) (granting motion to compel, finding settlement agreement relevant to set-off defense of alleged joint tortfeasor).

During the parties' telephonic meet and confer, counsel for MVSC suggested that Reynolds is not entitled review the MVSC settlement agreement now, even if it is relevant to set-off. MVSC is wrong. Nothing in the federal rules provides that discovery of relevant settlement agreements

must wait until after trial. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 13756260, at *3-4 (granting motion to compel settlement agreement, rejecting argument that "the settlement agreements should not be produced at this time, but only when and if certain events render the settlement agreements admissible," and holding that Rule 26 and relevant court decisions "do not require such sequencing").

Indeed, the 3PA agreement militates in favor of disclosure now. As set forth above, the 3PA agreement is relevant to liability, causation, and damages issues beyond set-off, which cannot wait until after trial. With respect to set-off, the value of any 3PA agreement (regardless of whether that consideration was expressly incorporated into the settlement agreement or fashioned as a separate side agreement) would need to be applied as a set-off. *See, e.g.*, *Bal Theatre Corp. v. Paramount Film Distrib. Corp.*, 206 F. Supp. 708, 714 (N.D. Cal. 1962) (in the antitrust context, "[t]he rule . . . seems to be that anything of value received should be set off in addition to the cash settlement"); *accord Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 434 (3d Cir. 1993). Valuing a 3PA agreement between MVSC and CDK (or any other side agreements or non-monetary forms of consideration) for purposes of set-off is not a simple undertaking, and Reynolds needs sufficient time to understand and value it. *See, e.g.*, *Bennett*, 112 F.R.D. at 138 ("[G]iven that the bargain struck between the plaintiffs and the Physicians is not a sum certain payment but is intricately cast as a structured settlement, the degree of any offset to which the Hospital is entitled may be somewhat obscure without revelation of the transaction in all its splendor."). Indeed, it may be a complicated and disputed fact as to precisely what is part of the settlement and what is not, which again, militates in favor of earlier, rather than later, disclosure. MVSC was unwilling to provide any information about the settlement during the meet and confer process.

Furthermore, ██████████████████████████████████████████

██████████████████████████████████.[3]  **Exhibit G**, Klein Reply, at Ex. A.  If the Court

were to dismiss claims based on one or more of those state EVR markets before trial, the value of

any set-off amount might become particularly relevant at that point in time.  To the extent that the

value of surviving claims is entirely set off by the value of MVSC's settlement, there would be no

reason for the case to proceed to trial.  And if the value of the remaining claims were largely set

off, understanding this fact might encourage the parties to settle.

Again, Reynolds's arguments are distinguishable from the DCPs' earlier attempt to compel

production of the Cox/CDK settlement agreement.  There, as the Court noted, the counterclaims

asserted by CDK against Cox and DCPs were for "breach of contract and statutory violations," not

antitrust conspiracy claims with joint and several liability.  *See* 8/16/19 Order (Dkt. 748) at 2.  In

addition, the antitrust claims by Cox against CDK could not "reduce the DCPs' recovery on their

claims against CDK."  *Id.*  In contrast, here, Reynolds seeks production of a settlement between

MVSC and CDK (including a release of CVR) regarding antitrust conspiracy claims on which

CDK, CVR and Reynolds are jointly and severally liable.  For the reasons above, the value of that

settlement agreement will offset any recovery against Reynolds.[4]

---

[3]    Although MVSC claims damages in four state EVR markets, MVSC's previous
representations limit its claims to the California and Illinois EVR markets, as set forth in
Reynolds's pending Motion to Bar Plaintiff MVSC's Newly Disclosed Claims Based on
the Virginia and Wisconsin EVR Markets.  Dkt. 789.

[4]    Reynolds did not plead an affirmative defense of set-off because the MVSC settlement
agreement did not exist at the time Reynolds filed its Answer and Affirmative Defenses,
and also because set-off is not an affirmative defense.  *See* Fed. R. Civ. Proc. 8(c) (not
listing set-off).  Regardless, through the meet and confer process and the filing of this
motion, MVSC is now well aware of Reynolds's intent to seek a set-off of the value of
MVSC's settlement. This issue was not raised by MVSC during the meet and confer
process (until this morning), but out of an abundance of caution, Reynolds has

C.    **Reynolds Is Entitled to the MVSC Settlement and 3PA Agreement to Understand Witness Credibility and Bias Issues**

Lastly, as the remaining defendant, Reynolds is "entitled to learn whether any promises have been made in connection with [CDK and CVR's] dismissal as a party defendant" in order to understand potential bias and credibility issues. *White*, 203 F.R.D. at 367. For example, if CDK or CVR has agreed to cooperate in any way with MVSC as part of the settlement, this information is critical to exploring issues of bias and credibility with respect to witnesses who will inevitably be called at trial. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc*., No. 14-cv-10266, 2016 WL 6822014, at *2 (E.D. Mich. Nov. 18, 2016) (internal formatting, quotation marks, and citation omitted) ("Settlement agreements frequently are found to be discoverable in order to allow the requesting party to explore these issues of bias and credibility with respect to witnesses."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-cv-05944-SC, 2015 WL 13756260, at *3 (N.D. Cal. July 31, 2015) (ordering production of antitrust settlement agreements, holding: "It appears to the undersigned that any DAP settlement agreements are relevant, whether to offset damages or to test witness credibility and bias, and therefore should be produced."); *CadleRock Joint Venture, L.P. v. Royal Indem. Co*., No. 02cv16012, 2012 WL 443316, at *3 (N.D. Ohio Feb. 10, 2012) (compelling production of settlement agreement where it "may be relevant to issues of witness credibility and bias"); *Melton v. Bank of Lexington*, No. 02-1152 B/P, 2007 WL 9706436, at *2 (W.D. Tenn. June 27, 2007) ("the court concludes that the agreement is discoverable because it is clearly relevant to the possible bias, prejudice, and impeachment of important witnesses"); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc*., No. 05-2164-MLB-DWB, 2007 WL 1246216, at *4 (D. Kan. Apr. 27, 2007) (compelling production of

---

concurrently filed a motion for leave to file an amended Answer and Affirmative Defenses to include an Affirmative Defense of set-off.

PUBLIC VERSION

settlement agreement in antitrust and tortious interference case, explaining that "it appears virtually certain that representatives of the settling defendants may be called to testify at trial or that an attempt may be made to use their prior depositions.  Thus, the terms of any settlement agreements with dismissed defendants or their representative appear to be relevant to the possible bias or prejudice of important witnesses.").   Indeed, Rule 408 expressly provides that settlement agreements may be admissible to prove bias.  *See* Fed. R. Evid. 408(b).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Reynolds respectfully asks this Court for an order compelling MVSC to produce its settlement agreement and 3PA agreement, along with any attendant documents or side agreements.

PUBLIC VERSION

March 18, 2020

Respectfully submitted,

/s/ *Leo D. Caseria*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Leo D. Caseria, an attorney, hereby certify that on March 18, 2020, I caused true and correct copies of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO COMPEL PLAINTIFF MVSC TO PRODUCE ITS SETTLEMENT AGREEMENT AND 3PA AGREEMENT WITH CDK** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/      Leo D. Caseria*
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
lcaseria@sheppardmullin.com