**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817 <br> Case No. 18 C 864 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**ORDER**

This matter is before the Court on Class Plaintiffs' Motion Challenging CDK Global, LLC's March 8, 2019 Clawbacks and to Compel Production of Inadequately Logged Documents from CDK Global, LLC's FTC Privilege Log [ECF No. 633]. The Motion is granted in part and denied in part. See Statement below for further details.

**STATEMENT**

**(1)  CDK's Request to Claw Back Privileged Documents Produced to the FTC**

Class Plaintiffs challenge 601 of the 690 documents that CDK seeks to claw back from its production to Class Plaintiffs of documents previously produced to the FTC. Even in the context of this contentious litigation, that is a very large number of documents (almost 90%) that Class Plaintiffs say CDK is trying to claw back inappropriately. As discussed below, though, the Court disagrees with Class Plaintiffs that CDK is doing anything improper by asking that these documents be returned.

In their Motion [ECF No. 633], Class Plaintiffs requested the Court review and rule on 25 disputed documents submitted *in camera*. After the Court ruled, Class Plaintiffs proposed they would confer with CDK to apply the Court's ruling to the remaining documents and raise any disputes that remained. The Court agreed that a limited review of documents is appropriate under these circumstances. Rather than reviewing documents chosen solely by Class Plaintiffs, however, the Court set a procedure by which Class Plaintiffs as well as CDK would submit documents to the Court for a limited *in camera* review. *See* June 10, 2019 Order [ECF No. 717]. As set forth in the Court's June 10, 2019 Order [ECF No. 717], the Court requested that Class Plaintiffs and CDK each identify 10 documents from the respective categories of documents at issue in Class Plaintiffs' Motion [ECF No. 633] and submit those documents for *in camera* review. The Court has completed its review of the documents submitted by the parties.

A common thread running through most of Class Plaintiffs' arguments on the disputed claw back documents is that CDK is attempting to shield ordinary business discussions and emails on which CDK in-house counsel is copied but legal advice is not offered or requested. This is a similar argument to that raised by Class Plaintiffs in their Motion to Compel Production of Inadequately Logged Documents from Defendants' Privilege Logs and to Compel Discovery

Regarding Drafting Agreements [ECF No. 535], on which the Court recently issued its decision. *See* March 4, 2020 Order [ECF No. 903]. Because Class Plaintiffs again challenge CDK's claims of privilege for some documents that Class Plaintiffs argue are not predominantly legal in nature, the Court incorporates by reference the discussion and analysis in its March 4, 2020 Order [ECF No. 903].

The Court agrees it is black letter law that "the inclusion of general counsel does not transform all business discussions into privileged attorney-client communications." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Ill. 2013). Rather, "[t]he purpose of the communication must be the obtaining or providing of legal advice, not a business discussion." *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) (quoting *Matter of Feldberg*, 862 F.2d 622, 626 (7th Cir. 1988)). Even when "a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *RBS Citizens*, 291 F.R.D. at 217 (quoting *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987)). "[T]he legal aspect must predominate in the communication under review in order for it to be protected by the attorney-client privilege." *Moore v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 2010 WL 4703859, at *3 (N.D. Ill. Nov. 8, 2010) (citing *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993) ("[T]he privilege will not apply where the legal advice is incidental to business advice.")).

Based on its review, and consistent with the applicable law cited above, the Court finds that CDK's claims of privilege are well-founded as to almost all of the documents in this category that were submitted for *in camera* review. Specifically, the Court finds as follows:

(a) Of the 10 documents selected by Class Plaintiffs that CDK seeks to claw back, the Court finds that all of the documents are privileged or partially privileged when produced with redactions except for the communications at Tab 4. In the case of documents that were produced with redactions, the Court agrees the redactions are proper. Therefore, CDK can claw back the documents at Tabs 1 through 3 and Tabs 5 through 10, with partial exceptions as to the communications at Tab 5 as explained more fully below. The documents that CDK wants Class Plaintiffs to return contain communications between or involving CDK and its lawyers that relate to matters about which the lawyers are providing legal advice or the lawyers are being consulted or copied because of a request or need for legal advice. The Court disagrees with Class Plaintiffs that these are non-legal business communications that CDK is attempting to shield from production by inappropriately copying legal counsel.

The documents at Tab 4, however, comprise a series of email communications on which a CDK in-house attorney is copied at one point in the chain and certain portions of the communications are redacted. A plain reading of the emails shows that the participants are discussing a situation involving a CDK customer who is not happy with CDK. In one email, a CDK non-lawyer employee states that he directed a group within CDK to give the customer "the standard CDK Legal approved response" but, upon reflection, the CDK non-lawyer employee says he "should have considered an alternative response." A CDK in-house lawyer is copied on that email, but the lawyer is not asked to give any legal advice nor does the lawyer offer any legal advice or assessment of CDK's position. This may have been a tough customer relations issue for

CDK, but there is no indication that it is a legal issue. The reference to a "Legal approved response" does not transform this discussion into an attorney-client privileged communication. Because the purpose of the communication appears to be a business discussion and not for the purpose of obtaining legal advice, the Court finds these communications are not protected by the attorney-client privilege.

As for the communications at Tab 5, the Court finds that the four initial emails/responses that start the email chain titled "Subject: Priority 1/BMW of Towson" (prior to the email communication that is forwarded to a CDK in-house attorney requesting guidance from the attorney) are not privileged, but the communication that is forwarded to the CDK in-house counsel requesting advice and the communications thereafter are privileged. In other words, this is a document that is partially privileged and should have been produced with redactions.

(b) Of the 10 documents selected by CDK that it seeks to claw back from Class Plaintiffs, the Court finds that all the documents (or the portions of the documents CDK has redacted) are privileged, and CDK can claw back the documents at Tabs 1 through 10. Similar to the documents discussed above, these documents contain communications between or involving CDK and its lawyers that relate to matters about which the lawyers are providing legal advice or the lawyers are being consulted or copied because of a request or need for legal advice. The Court disagrees with Class Plaintiffs that these are non-legal business communications.

The Court will not engage in further review of any additional documents at this time. The Court notes it is likely that Class Plaintiffs took their best shot with the documents they chose to submit to the Court to challenge CDK's privilege claims as to the claw back documents. Based on its review of the documents submitted by Class Plaintiffs and CDK, the Court concluded that almost all of CDK's privilege designations are well-founded, and the Court is not persuaded by Class Plaintiffs' arguments or their broad opposition to CDK's attempt to claw back privileged documents. It is reasonable to assume that analysis will flow through all or almost all of the documents CDK wants to claw back, that is that most of those documents are privileged. Nevertheless, Class Plaintiffs and CDK should meet and confer in good faith to determine if there are any specific documents that reasonably are still in dispute given the Court's analysis above and, if so, after completing the meet and confer process, Class Plaintiffs can bring to the Court's attention anything that still needs to be resolved.

## (2) CDK's Claims of Privilege for Documents on its FTC Privilege Log Which Class Plaintiffs Allege Are Not Predominantly Legal in Nature

In addition to the privileged documents that CDK produced to the FTC that CDK sought to claw back from Class Plaintiffs, Class Plaintiffs also take issue with CDK's claims of privilege for many documents listed on CDK's FTC Privilege Log. In this category of documents, Class Plaintiffs challenge 6,159 entries for documents Class Plaintiffs say CDK inappropriately is claiming privilege. Again, this is an extraordinarily large number of documents that Class Plaintiffs are challenging. In their Motion [ECF No. 633], Class Plaintiffs again requested the Court review *in camera* 25 documents selected by them to determine whether CDK properly was invoking the attorney-client privilege. As discussed above, the Court agreed that an *in camera* review of a sample set of documents would be appropriate but declined to review documents chosen solely by

Class Plaintiffs.  Pursuant to the Court's June 10, 2019 Order [ECF No. 717], both Class Plaintiffs and CDK identified 10 documents for each the respective categories at issue in Class Plaintiffs' Motion [ECF No. 633], and CDK submitted those documents with the corresponding privilege log entries to the Court for an *in camera* review.

Class Plaintiffs again challenge CDK's claims of privilege for some documents that Class Plaintiffs argue are not predominantly legal in nature. The Court again incorporates its analysis set forth above and the discussion and analysis in its March 4, 2020 Order [ECF No. 903].

The Court has completed its review of the documents submitted by the parties. Specifically, the Court finds as follows:

(a) Of the 10 documents selected by Class Plaintiffs in this category, the Court finds that the documents at Tabs 1 through 6 and Tab 9 are privileged, and the documents at Tabs 7, 8, and 10 are not privileged and should be produced.  Without addressing each document individually, the Court finds that the documents at Tabs 1 through 6 and Tab 9 contain communications between CDK and its lawyers that occurred in connection with business matters about which the lawyers are being consulted for the purpose of providing legal advice.  In other words, these are lawyer-client communications in the context of a request or need for legal advice. The draft Third Party Access Strategy discussed in the emails that comprise Tab 2 can be withheld as privileged because it is the draft being discussed in the emails.

With respect to the documents the Court finds are not covered by the attorney-client privilege, the Court's reasoning is as follows:

The document at Tab 7 is a series of email communications in which CDK business employees are discussing business terms. A CDK in-house attorney is copied on portions of emails that are redacted. However, the CDK attorney is not asked for a legal opinion nor does the lawyer respond with any legal advice. There is nothing to indicate the lawyer is being copied so that the lawyer can provide legal advice about the matters being discussed.  Therefore, the communications are not protected by the attorney-client privilege and should be produced unredacted.

The document at Tab 8 is a series of email communications in which two CDK in-house attorneys are copied on an email in which a CDK employee sends a "FYI" email regarding a summary of a conversation that another CDK employee had with an individual from Reynolds and Reynolds Company (CDK's co-defendant in this case), and the email describes the conversation between a CDK business person and a Reynolds and Reynolds business person. There is no request for legal advice, and none is given. Therefore, the communications are not protected by the attorney-client privilege and should be produced unredacted.

The document at Tab 10 is a series of email communications reflecting strictly business discussions with a CDK in-house lawyer copied on the communications. No legal advice is sought from the CDK in-house lawyer copied on the communications, and none is given. Therefore, the communications are not protected by the attorney-client privilege and should be produced unredacted.

(b) Of the 10 documents selected by CDK in this category, the Court finds that all of documents (or the portions of the documents CDK has redacted) are privileged. Again, without addressing each document individually, the Court finds that all of the documents selected by CDK contain communications between CDK and its lawyers that occurred in connection with business matters about which the lawyers are being consulted for the purpose of providing legal advice. In other words, these are lawyer-client communications in the context of a request or need for legal advice. The Court finds that Class Plaintiffs' challenges to these documents are not well-founded and agrees with CDK that all of the documents it submitted for *in camera* review are privileged communications.

The Court declines to engage in further review of any additional documents at this time. The Court's analysis above and in its March 4, 2020 Order [ECF No. 903] should be sufficient for CDK to determine whether additional documents on its FTC Privilege Log should be produced to Class Plaintiffs because they contain communications that are not predominantly legal in nature consistent with the Court's analysis. In particular, documents designated by CDK as privileged but, like some of the documents referenced above, are instead communications about business matters on which a lawyer is copied but no legal advice is requested or offered should be produced. If Class Plaintiffs have issues with specific documents on the FTC Privilege Log or the documents being clawed back by CDK, they should raise them with CDK.

In light of the discussion in the first two sections of this Order, however, it is difficult for the Court to believe that legitimate questions really exist as to all the remaining 6,139 documents on CDK's FTC Privilege Log that Class Plaintiffs challenge as not being predominantly legal in nature. The same holds true for the 581 documents remaining of Class Plaintiffs' challenge to CDK's claw back request after this *in camera* review. As Class Plaintiffs' originally suggested, the parties should meet and confer about what, if any, next steps should be taken with respect to CDK's privilege and claw back designations discussed above. If disputes remain, the parties can present them to the Court. Given the huge number of privilege and claw back designations that Class Plaintiffs challenged and their limited success in doing so, however, the Court is not ordering CDK to re-review almost 7,000 documents at this time without more from Class Plaintiffs.

### (3) CDK's Claims of Privilege for Communications with Third Parties

Class Plaintiffs also challenge 564 entries from CDK's FTC Privilege Log in which CDK asserts a privilege over documents shared with third parties. The Court again notes that Class Plaintiffs are raising similar arguments and challenging CDK's claims of privilege for communications with third parties as they raised in their Motion to Compel Production of Inadequately Logged Documents from Defendants' Privilege Logs and to Compel Discovery Regarding Drafting Agreements [ECF No. 535], upon which the Court recently ruled. *See* March 4, 2020 Order [ECF No. 903]. The Court again incorporates by reference the discussion and analysis in its March 4, 2020 Order [ECF No. 903].

The Court recognizes that "[d]istribution of [privileged] materials to third parties outside the company obviously would, with rare exceptions, result in a waiver" of privilege. *United States ex rel. McGee v. IBM Corp.*, 2017 WL 1232616, at *2 (N.D. Ill. Apr. 4, 2017). To avoid waiver, CDK must show that "statements made to one's attorney in the presence of a third party non-

lawyer" were "necessary to the obtaining or giving of legal advice." *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 2018 WL 1804350, at \*4 (N.D. Ill. Apr. 17, 2018).

The Court has completed its review of the documents submitted by the parties. Specifically, the Court finds as follows:

(a) Of the 10 documents selected by Class Plaintiffs in this category, the Court finds that the documents at Tabs 3, 6, 7, and 9 are privileged. The documents at Tabs 1, 2, 4, 5, 8, and 10, however, are not privileged and should be produced to Class Plaintiffs. The Court provides its analysis below to guide the parties in any future discussions about this category of documents.

The documents at Tab 1 are email communications in which a CDK employee forwards to a third-party consultant from Aberdeen Strategies a confidential email and attachment from a CDK in-house attorney that discusses CDK's strategic responses to the Authenticom lawsuit. This otherwise would be an attorney-client communication except that a CDK employee forwarded it to a third-party, Aberdeen Strategies.  For the communication to retain its privileged status, it must be clear that the lawyer is seeking or needs input and/or advice from the third-party advisor/consultant in order to provide legal advice to the lawyer's client. The communication is not privileged if the lawyer (or the client) is asking the third-party advisor/consultant to offer its independent assistance, assessment, and opinion separate and apart from the legal advice being provided by counsel.  Because this attorney-client communication was forwarded by a non-lawyer CDK employee to the third-party consultant from Aberdeen Strategies, the privilege is waived as there is no indication that the third-party consultant was involved in this communication to facilitate the provision of legal advice to CDK by its attorney. Therefore, the documents at Tab 1 should be produced.

The documents at Tab 2 are email communications sent by a CDK employee to other CDK employees, including a CDK in-house attorney, as well as to a third-party consultant from Aberdeen Strategies regarding developments in the Authenticom litigation. Included is an attachment about an official media statement and responses to frequently asked questions regarding the Authenticom litigation. This email communication does not contain any privileged information and the attachment is a "FAQs" document that includes CDK's official media statement about the litigation that will be publicly disseminated.  Even if the underlying communication was privileged, the disclosure of the email to the third-party consultant at Aberdeen Strategies waives the privilege as there no indication that the third-party consultant was involved in this communication to facilitate the provision of any legal advice by an attorney. It also is not clear in any event that the substance of the material in the documents was intended to remain confidential, a predicate for invoking the attorney-client privilege, as opposed to being intended for communication to third parties.

The documents at Tab 3 are a series of email communications involving CDK employees and CDK in-house and outside counsel, including outside trial counsel in this case, that clearly are privileged communications seeking and providing legal advice about matters that ultimately are involved in this litigation. Part and parcel of these communications are some communications from third parties which were shared with both CDK in-house and outside counsel for the purpose of seeking legal advice from them. Therefore, the documents are privileged and the forwarding of

communications from third parties to both in-house and outside counsel does not waive any privilege.

The documents at Tab 4 are email communications from a CDK in-house counsel to another CDK employee that copy individuals at third-party Morgan Stanley. The email includes an attachment which is an executed letter that is being sent to a third-party regarding a letter of intent proposal for CDK to acquire that third-party. The Court finds that this communication is not privileged. First, it is a document that is being shared with a third-party, and second, it is not a communication in which an attorney is providing or being asked to provide any legal advice. Rather, the email communication simply involves an attorney forwarding a letter to a colleague to be shared with a third-party. The Court wonders, however, whether the initial email from the CDK in-house counsel to other CDK employees as well as individuals at Morgan Stanley regarding a draft of the revised letter should be redacted. It is conceivable that individuals at Morgan Stanley were involved in drafting the letter at the behest of or to assist in-house counsel. But the Court does not have enough information to make this determination. Therefore, the Court finds that the portion of the email communication which attaches the executed letter at Tab 4 should be produced. CDK, however, should determine whether the initial email about the draft revised letter should be redacted, and the parties should discuss the issue if need be. If a dispute remains and it is a dispute that matters, then the parties can submit it to the Court.

As for the documents at Tab 5, based on CDK's representation in its response to Class Plaintiffs' Motion, CDK agrees that the email communication and attached final version of a PWC report are not privileged and will be produced. The Court agrees that the communication and report are not privileged and should be produced. *See* CDK's Opposition to Class Plaintiffs' Motion [ECF No. 668], at 12 fn. 12.

The documents at Tab 6 are comprised of an email communication from a CDK employee to a CDK in-house counsel forwarding older communications, including in part communications with third parties, for the purpose of seeking legal advice from the CDK in-house counsel. As such, the communications are privileged.

The document at Tab 7 is an email communication with an attachment between CDK employees and Reynolds and Reynolds Company employees regarding the parties' joint venture, Open Dealer Exchange. The communication and attachment concern legal issues relating to the joint venture and are privileged.

As for the documents at Tab 8, CDK states in its response to Class Plaintiffs' Motion that CDK identified one parent communication with Presidio Technologies Partners and its attachments that were not integral to a subsequent privileged communication and that the documents would be produced. The Court agrees that the communication is not privileged and should be produced. *See* CDK's Opposition to Class Plaintiffs' Motion [ECF No. 668], at 13 fn. 13.

The document at Tab 9 is privileged as it is clear on the face of the email that the communication inadvertently was shared with a third party, and there was an immediate request to delete the email when the inadvertent disclosure was discovered. So there has been no waiver.

It is not clear to the Court how the email communications at Tab 10 are privileged. This is an email chain of communications between an in-house counsel for Open Dealer Exchange, a joint venture between CDK and Reynolds and Reynolds Company, copying other CDK and Reynolds and Reynolds Company employees involved in the joint venture and a third-party individual from RouteOne LLC about a joint marketing agreement. It is clear to the Court that communications between CDK and Reynolds and Reynolds Company employees involved in the Open Dealer Exchange that request legal advice or reflect the provision of legal advice for the joint venture would be privileged. The email communication at issue here, however, is between legal counsel for Open Dealer Exchange and the Chief Legal and Privacy Officer at RouteOne LLC, a third-party, regarding a joint marketing agreement. Unless the Court is missing something, the documents at Tab 10 are not privileged and should be produced.

(b) Of the 10 documents selected by CDK in this category, the Court finds that all of documents are privileged except for the documents at Tab 5.

The documents at Tab 5 comprise a series of email communications that begins with an email from a third-party consultant at Aberdeen Strategies to a CDK in-house attorney and another CDK employee seeking comments on a letter that the third-party consultant had drafted, and which will be sent by a CDK employee to third-party dealers. The CDK in-house attorney then sends a response to other CDK employees and the third-party consultant from Aberdeen Strategies with some comments and points of discussion. As discussed in the Court's March 4, 2020 Order [ECF No. 903], CDK has not established that similar communications arose in a context that involved the rendering of legal advice for which the third-party's involvement was necessary to facilitate the rendering of that advice to CDK. *See* March 4, 2020 Order [ECF No. 903]. This particular communication is sent to the CDK in-house lawyer by an Aberdeen Strategies consultant who asks the lawyer to review the letter. It is not clear how a lawyer's comments on a letter drafted by a third-party and the lawyer's communication of those comments to the third-party are privileged. There is no indication that the third-party consultant was involved in this communication to facilitate the provision of legal advice by CDK's in-house attorney to the lawyer's client. Therefore, the documents at Tab 5 should be produced to Class Plaintiffs.

The Court declines to engage in further review of any additional documents at this time. The Court's analysis discussed above and in its March 4, 2020 Order [ECF No. 903] should be sufficient for CDK to re-review documents on its FTC Privilege Log that Class Plaintiffs contend are not privileged because the communications involved a third party and to assess whether any more documents should be produced to Class Plaintiffs consistent with the Court's analysis, and CDK should do that. The Court notes that, with respect to this category of documents, CDK appears to have taken an overly generous view of when communications involving third-parties are privileged or retain their privilege, and CDK should take into account the Court's analysis of the *in camera* submissions when it re-reviews this category of documents on its FTC Privilege Log. If disputes remain, the parties can meet and confer about them and, if necessary, present them to the Court.

**(4) Privilege Log Entries that Do Not Identity Specifically Either the Author/Recipient of the Document and/or the Attorney Who Provided Legal Advice**

At the end of their Motion [ECF No. 633], Class Plaintiffs address a dispute that CDK also raises in its Motion to Compel Production of Documents Withheld or Redacted by Plaintiffs Loop, LLC d/b/a AutoLoop and Cox Automotive, Inc. or, in the Alternative, for an In Camera Inspection of the Challenged Documents [ECF No. 543]. Apparently, there are instances in both CDK's and Class Plaintiffs' respective privilege logs where (1) each party either fails to identify the author/recipient for certain documents, many of which are documents that are email attachments for which author and recipient information does not exist, and (2) each party does not identify an attorney by name but rather refers to "in-house counsel" or "legal department." In the present Motion, Class Plaintiffs simply ask the Court to apply the same standard in its review of CDK's FTC Privilege Log as it applies to CDK's challenges to Plaintiffs' privilege log in the context of CDK's Motion [ECF No. 543], and to award the same relief in both instances.

The Court ordinarily tries to be as consistent as possible with its rulings in this and any other case. With respect to this particular issue, the Court understands there are instances when there may be no identifiable author/recipient information for documents that are email attachments, but the absence of that information might not be dispositive of the question whether the attorney-client privilege applies with respect to a particular document or documents. The Court, however, is not inclined to issue a blanket ruling on the instant Motion or any other motion to the effect that a document that does not have any author/recipient designation automatically is or is not privileged on that basis alone. Similarly, the Court is not inclined to say on a blanket basis that a document is or is not privileged because a party's privilege log does not identify an attorney by name but rather refers to "in-house counsel" or 'legal department." The Court can conceive of scenarios when a document would be privileged even if a lawyer is not identified by name and instances when the identification of the attorney could be relevant and necessary to a privilege determination.

That said, however, an approach that treats similarly situated documents in the same way regardless of which side put those documents on their privilege log – a "what's good for the goose is good for the gander" approach – is fine with the Court. There is no reason the parties should not be able to decide for themselves how they will handle similar situations or scenarios in connection with their broad-based attacks on each other's privilege designations. If the parties continue to have disputes about specific challenges to their respective privilege designations when there is not an author/recipient designation or when an attorney is not identified by name, the parties can present those disputes to the Court. Most likely, the Court would order the parties to file a joint submission that summarizes the dispute in a way that the Court can rule upon it or to again submit for *in camera* review the documents at issue or a sampling of those documents. The Court, however, is hopeful the parties will be able to reach a compromise in this area without further judicial intervention.

## CONCLUSION

For all the reasons set forth above, Class Plaintiffs' Motion Challenging CDK Global, LLC's March 8, 2019 Clawbacks and to Compel Production of Inadequately Logged Documents from CDK Global, LLC's FTC Privilege Log [ECF No. 633] is granted in part and denied in part.

The Court declines to engage in further review of any additional documents at this time for the reasons discussed in this this Order. The Court's analysis in this Order and its March 4, 2020 Order [ECF No. 903] should be sufficient for CDK to re-review the additional documents on its FTC Privilege Log that Class Plaintiffs have challenged and to assess whether any more documents should be produced to Class Plaintiffs consistent with the Court's analysis.

It is so ordered.

_____

Jeffrey T. Gilbert
Unites States Magistrate Judge

Dated: March 30, 2020