**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 |
| | Case No. 18-cv-00864 |
| This Document Relates To: | |
| | Hon. Robert M. Dow, Jr. |
| *Motor Vehicle Software Corporation v. CDK Global, LLC et al.*, Case No. 1:18-CV-00865 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |
| | **PUBLIC-REDACTED** |

**MVSC'S CONSOLIDATED OPPOSITION TO**
**REYNOLDS'S MOTION TO COMPEL MVSC TO PRODUCE ITS SETTLEMENT**
**AGREEMENT WITH CDK AND REYNOLDS'S MOTION TO**
**AMEND ITS ANSWER AND AFFIRMATIVE DEFENSES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 4

    I.     Reynolds's Motion To Compel Is Untimely ............................................. 4

    II.    Reynolds Fails To Overcome MVSC's and CDK's Interests In Keeping The Agreements Confidential ................................................................. 6

         A.    The Agreements Are At Best Marginally Relevant ......................... 8

         B.    Setoff Discovery Is Premature And Procedurally Barred ............... 10

         C.    Reynolds's Speculation Of Bias Is Insufficient ............................. 13

    III.   Reynolds's Untimely Motion For Leave To Amend Should Be Denied.................. 14

CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**                                                                 **Page(s)**

*AEL Fin. LLC v. City Auto Parts of Durham, Inc.*,
    2009 WL 2778078 (N.D. Ill. Aug. 31, 2009) ........................................................ 12

*Am. Roller Co. v. Foster-Adams Leasing, LLP*,
    2006 WL 1371441 (N.D. Ill. May 16, 2006) ......................................................... 12

*In re Ameritech Corp.*,
    188 F.R.D. 280 (N.D. Ill. 1999) ...................................................................... 14, 15

*Anderson v. Ford Motor Co.*,
    2010 WL 4156256 (E.D. Pa. Oct. 20, 2010) ......................................................... 11

*Bal Theatre Corp. v. Paramount Film Distrib. Corp.*,
    206 F. Supp. 708 (N.D. Cal. 1962) ................................................................... 9, 10

*Banks v. CBOCS West, Inc.*,
    2004 WL 723767 (N.D. Ill. 2004) ......................................................................... 4

*Bennett v. La Pere*,
    112 F.R.D. 136 (D.R.I. 1986) .............................................................................. 12

*BladeRoom Grp. Ltd v. Emerson Elec. Co.*,
    2018 WL 6169347 (N.D. Cal. Nov. 26, 2018) ......................................................... 7

*CadleRock Joint Venture, L.P. v. Royal Indem. Co.*,
    2012 WL 443316 (N.D. Ohio Feb. 10, 2012) ......................................................... 13

*Campania Mgmt. Co. v. Rooks, Pitts & Poust*,
    290 F.3d 843 (7th Cir. 2002) ............................................................................... 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2015 WL 13756260 (N.D. Cal. July 31, 2015) ............................................ 11, 12, 13

*Centillion Data Sys., Inc. v. Ameritech Corp.*,
    193 F.R.D. 550 (S.D. Ind. 1999) ........................................................................... 7

*Del Monte Fresh Produce B.V. v. ACE Am. Ins. Co.*,
    2002 WL 34702176 (S.D. Fla. Sept. 4, 2002) ....................................................... 12

*Digital Ally, Inc. v. Z3 Tech., LLC*,
    2012 WL 2366713 (D. Kan. June 21, 2012) .......................................................... 12

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
    288 F. Supp. 2d 325 (E.D.N.Y. 2003) ................................................................... 9

*Feldman v. Am. Mem'l Life Ins. Co.*,
   196 F.3d 783 (7th Cir. 1999) ............................................................... 14, 15

*In re Flat Glass Antitrust Litig.*,
   2013 WL 1703864 (W.D. Pa. Apr. 19, 2013) ............................................ 11

*Goldsmith v. Murphy*,
   2005 WL 442230 (N.D. Ill. Feb. 22, 2005) ............................................... 12

*Grant Thornton v. Syracuse Sav. Bank*,
   961 F.2d 1042 (2d Cir. 1992) .................................................................. 13

*Grassi v. Info. Res., Inc.*,
   63 F.3d 596 (7th Cir. 1995) ...................................................................... 5

*Grove Fresh Distribs., Inc. v. John Labbatt Ltd.*,
   888 F. Supp. 1427 (N.D. Ill. 1995) ......................................................... 6, 7

*Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*,
   995 F.2d 425 (3d Cir. 1993) ...................................................................... 9

*Hasbrouck v. BankAmerica Hous. Servs.*,
   187 F.R.D. 453 (N.D.N.Y. 1999) ............................................................... 7

*Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*,
   2007 WL 1246216 (D. Kan. Apr. 27, 2007) .............................................. 14

*Jacks v. DirectSat USA, LLC*,
   2019 WL 1858500 (N.D. Ill. Apr. 24, 2019) ............................................. 15

*Johnson v. Cypress Hill*,
   641 F.3d 867 (7th Cir. 2011) .................................................................. 15

*Johnson v. Methodist Med. Ctr. of Ill.*,
   10 F.3d 1300 (7th Cir. 1993) .................................................................. 15

*Kalinauskas v. Wong*,
   151 F.R.D. 363 (D. Nev. 1993) .................................................................. 7

*Kedzior v. Talman Home Fed. Sav. & Loan Ass'n of Ill.*,
   1990 WL 70855 (N.D. Ill. May 10, 1990) ................................................... 5

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*,
   834 F.2d 677 (7th Cir. 1987) ................................................................. 7, 13

*McKinney v. Balboa Ins. Co.*,
   2013 WL 12106204 (M.D. Fla. Nov. 1, 2013) ........................................... 11

*Medicines Co. v. Mylan Inc.*,
  2013 WL 120245 (N.D. Ill. Jan. 3, 2013) .......................................................................... 4, 5

*Melton v. Bank of Lexington*,
  2007 WL 9706436 (W.D. Tenn. June 27, 2007) ...................................................................... 13

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*,
  2003 WL 22848968 (N.D. Ill. Dec. 1, 2003) ......................................................................... 14

*O'Neill v. LVNV Funding, LLC*,
  2015 WL 5730271 (S.D.N.Y. Sept. 30, 2015) ....................................................................... 10

*Packman v. Chicago Tribune Co.*,
  267 F.3d 628 (7th Cir. 2001) ..................................................................................................... 5

*Perrian v. O'Grady*,
  958 F.2d 192 (7th Cir. 1992) ............................................................................................ 14, 15

*Priest v. Brummer*,
  2008 WL 2788759 (N.D. Ind. July 18, 2008) ........................................................................ 12

*Ridge Chrysler Jeep LLC v. Daimler Chrysler Servs. N. Am., LLC*,
  2004 WL 3021842 (N.D. Ill. Dec. 30, 2004) ...................................................................... 4, 5

*Robinson v. Stanley*,
  2010 WL 1005736 (N.D. Ill. Mar. 17, 2010) ........................................................................... 5

*Rossetto v. Pabst Brewing Co.*,
  217 F.3d 539 (7th Cir. 2000) ............................................................................................... 4, 5

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
  2014 WL 10294813 (E.D. Mich. Apr. 24, 2014) .............................................................. 13, 14

*In re Sulfuric Acid Antitrust Litig.*,
  231 F.R.D. 331 (N.D. Ill. 2005) ................................................................................................. 4

*Taylor v. Cook Cty. Sheriff's Office*,
  2019 WL 4415765 (N.D. Ill. Sept. 16, 2019) ........................................................................... 5

*Wagner v. Circle W Mastiffs*,
  2013 WL 4479070 (S.D. Ohio Aug. 19, 2013) ....................................................................... 11

*White v. Kenneth Warren & Son, Ltd.*,
  203 F.R.D. 364 (N.D. Ill. 2001) .............................................................................................. 13

*Wisconsin Elec. Power Co. v. N. Assur. Co. of Am.*,
  2007 WL 4631363 (W.D. Wis. Oct. 31, 2007) ....................................................................... 11

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) ............................................................................................................ 11

## RULES AND REGULATIONS

Fed. R. Civ. P. 8(c) ............................................................................................................ 12

Fed. R. Civ. P. 26(b)(1) ...................................................................................................... 12

## OTHER AUTHORITIES

*Confidentiality, Protective Orders, and Public Access to the Courts*,
   105 Harv. L. Rev. 427 (1991) ............................................................................................. 7

## INTRODUCTION

1.      Defendant The Reynolds and Reynolds Company's ("Reynolds") Motion to Compel Production of a Settlement Agreement and 3PA Agreement ("Agreements") between Plaintiff Motor Vehicle Software Corporation ("MVSC") and former Defendant CDK Global, LLC ("CDK") as well as all "attendant documents" or "side agreements" should be denied. Courts afford settlement agreements a high degree of protection in discovery. That protection is especially warranted when, as here, Reynolds seeks to gain strategic litigation advantage by discovering MVSC's settlement strategy. This Court previously applied these well-worn principles in denying Dealership Plaintiffs' Motion to Compel CDK to Produce its Settlement Agreement with Cox Automotive, Inc. *See* Order at 2, Dkt. 748 ("While there is no settlement privilege to overcome, in most cases, the movant articulates a specific basis as to why . . . the settlement agreement is proportional to the needs of the case and overrides the settling parties' interest in keeping their settlement confidential."). The Court should reach the same result here.

As an initial matter, Reynolds's motion is untimely. Reynolds did not even request the Agreements until three-and-a-half months after the settlement; Reynolds did not file its motion until five months after the settlement; and that motion comes nearly one year after the close of fact discovery. As this Court previously explained with respect to discovery requests made before the close of discovery:

> In almost every case, facts or circumstances arise or come to light during the discovery process that one party or the other may want to explore further or in more depth with additional written discovery. But that does not mean that a court should allow the discovery process to expand beyond previously set deadlines or parameters simply because a party would like the opportunity to find out more information even if it thinks that information could be valuable to its case.

Order at 1, Dkt. 498. That applies even more strongly to Reynolds's late discovery request.

Reynolds also has no sound basis to override the confidentiality interests of MVSC and of CDK (which also supports denial of Reynolds's motion). *First*, Reynolds claims that the Agreements could be relevant to its damages and antitrust analyses. If that reason were genuine, Reynolds would have sought this discovery for use by its experts. It did not, and Reynolds's experts do not even mention the settlement in their analyses. *Second*, Reynolds claims that it needs the Agreements to determine its entitlement to a setoff. But Reynolds has no setoff defense (because it failed to assert a setoff defense in its answer), and at any rate, setoff is properly resolved by the Court after trial. *Third*, Reynolds speculates that the Agreements may contain cooperation clauses that could lead to bias. But that speculation is insufficient to compel production.

2.     To cure its pleading failure, Reynolds also moves to amend its answer to add a setoff defense. But that attempt is untimely, because Reynolds delayed moving for relief for more than five months after it became aware of the settlement. Moreover, it is well settled that additional discovery is itself undue prejudice sufficient to warrant denial of an untimely motion for leave to amend a pleading. Here, it is obvious that Reynolds seeks to add a setoff defense *in order to* obtain additional discovery. That is not permitted under the rules.

## BACKGROUND

MVSC provides electronic vehicle registration and titling software to automobile retail dealerships. That software needs access to data stored on dealers' dealer management systems ("DMS") to function properly. MVSC's suit principally alleges that CDK, Reynolds, and their joint venture (Computerized Vehicle Registration, Inc. ("CVR") – a competitor to MVSC) unlawfully conspired to block MVSC's access to data on CDK's and Reynolds's DMS, either through the CDK and Reynolds data integration services (3PA for CDK and RCI for Reynolds) or through independent providers of data integration services like Authenticom, Inc. *See* Op. & Order at 3, Dkt. 425. MVSC alleges that the prices quoted to MVSC by Reynolds in 2014 for

membership in RCI and by CDK in 2015 and 2016 for membership in 3PA were an effective refusal to deal because the terms were economically infeasible for MVSC.  *See* MVSC Second Am. Compl. ¶¶ 123-27, Dkt. 76.

On October 22, 2018, this Court denied Reynolds's motion to dismiss in its entirety.  *See* Dkt. 425.  On November 7, 2018, Reynolds filed its currently operative answer.  *See* Dkt. 435. Reynolds's answer asserts 21 affirmative defenses but not a setoff defense.  *See id.* at 82-92.  Fact discovery closed on April 30, 2019.  *See* Stipulated Am. Case Mgmt. Order, Dkt. 553.

On August 26, 2019, MVSC's damages expert, Professor Gordon Klein, issued his damages report as to Reynolds, CDK, and CVR.  *See* Ex. A.  On October 15, 2019 – prior to the deadline for Reynolds's rebuttal expert reports – MVSC settled its suit against CDK and dismissed its claims with prejudice against CDK and CVR.  *See* Third Stipulated Am. Case Mgmt. Order, Dkt. 800.  CDK publicly announced the settlement no later than its November 5, 2019 earnings call.  *See* Ex. B at 4 ("I'm very happy to report that we have settled another lawsuit, this one with MVSC.").

Reynolds did not request the Agreements for use by its experts.  On November 15, 2019 – a month after the MVSC-CDK settlement – Reynolds's damages expert (Daniel Rubinfeld) and antitrust expert (Timothy Bresnahan) issued their rebuttal reports.  *See* Ex. C, Rubinfeld Rebuttal Rep.; Ex. D, Bresnahan Rebuttal Rep.  Neither mentioned the MVSC-CDK settlement in their reports nor suggested that the Agreements would have any effect on their analyses.  *See id.*[1] Reynolds also did not seek the Agreements for use in examining Professor Klein at his deposition on January 10, 2020.  Reynolds requested the Agreements for the first time on January 31, 2020 –

---

[1] Professor Rubinfeld acknowledged the dismissal of the claims against CDK and CVR, but did not attempt to analyze the effect of that dismissal on MVSC's claimed damages against Reynolds.  *See* Ex. C at 11 n. 15.

the last day of expert discovery and more than three-and-a-half months after the settlement. *See* Ex. E, Jan. 31, 2020 Ltr. from L. Caseria to D. Ho.

On February 26, 2020, the parties met-and-conferred regarding Reynolds's request. MVSC explained that production of the settlement was not warranted because (1) the discovery was untimely, (2) the settlement was highly confidential and was marginally relevant, (3) it was premature to calculate setoff, and (4) Reynolds had no basis to suggest bias by CDK due to the settlement. CDK also objected to the production of the settlement.

## ARGUMENT

### I. Reynolds's Motion To Compel Is Untimely

Discovery is closed, and "motions to compel filed after the close of discovery are almost always deemed untimely." *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 332 (N.D. Ill. 2005) (citation omitted). As the Seventh Circuit has explained, parties who file motions to compel after discovery has closed "have no grounds for complaining about [a] district court's" denial of their motion: enforcing discovery deadlines constitutes a "welcome effort to expedite the litigation and spare the parties the expense of protracted discovery, the bane of modern litigation." *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000).

Reynolds did not even request the Agreements until January 31, 2020 – the last day of expert discovery and more than three-and-a-half months after the settlement occurred. And then Reynolds waited another month and a half (until March 18, 2020) to move to compel. That delay is reason enough to deny the motion. *See Medicines Co. v. Mylan Inc.*, 2013 WL 120245, at *2-*3 (N.D. Ill. Jan. 3, 2013) (denying untimely motion to compel filed four days before discovery deadline); *Banks v. CBOCS West, Inc.*, 2004 WL 723767, at *2 (N.D. Ill. 2004) (same for motion filed two months after deadline); *In re Sulfuric Acid*, 231 F.R.D. at 336-37 (same for motion filed on discovery deadline); *Ridge Chrysler Jeep LLC v. Daimler Chrysler Servs. N. Am., LLC*, 2004

WL 3021842, at *4 (N.D. Ill. Dec. 30, 2004) (same for motion filed four days before discovery deadline); *Kedzior v. Talman Home Fed. Sav. & Loan Ass'n of Ill.*, 1990 WL 70855, at *3-4 (N.D. Ill. May 10, 1990) (same for motion filed four days after discovery deadline).[2]

Reynolds hardly attempts to justify its dilatory conduct.  Reynolds states that it "thought" CDK or MVSC "might" voluntarily provide the highly confidential Agreements to Reynolds.  *See* Mot. To Compel at 5-6, Dkt. 931.  But as Reynolds concedes, CDK clearly told Reynolds that it would not voluntarily provide the Agreements to Reynolds.  *See id.* at 5.  Nor was it reasonable for Reynolds to assume that MVSC would produce the Agreements with its reply expert reports. Reynolds had no right to expect that MVSC would rely on the settlement in its damages analysis. And in any case, Reynolds did not request the Agreements for a month and a half after it became clear – upon the service of MVSC's reply expert reports on December 19, 2019 – that MVSC was not relying on the settlement.  When, as here, "no effort was made to present the issue to the court in a timely fashion and when no effort was made to explain why the requested discovery could not have taken place within the original discovery period," a motion to compel should be denied. *Medicines Co.*, 2013 WL 120245, at *3.

Nor should discovery be reopened at this late date.  As this Court previously explained in denying a discovery request for newly discovered materials that was made *before* the discovery deadline, discovery is not "never-ending"; "[i]n all cases there comes a time when discovery must end."  Order at 2, Dkt. 498 (quoting *Robinson v. Stanley*, 2010 WL 1005736, at *5 (N.D. Ill. Mar. 17, 2010)).  Thus, even where new "facts or circumstances arise" that "one party or the other may

---

[2] *See also Packman v. Chicago Tribune Co.*, 267 F.3d 628, 647 (7th Cir. 2001) (affirming denial of motion to compel filed after discovery deadline); *Rossetto*, 217 F.3d at 542 (same); *Grassi v. Info. Res., Inc.*, 63 F.3d 596, 604 (7th Cir. 1995) (same); *Taylor v. Cook Cty. Sheriff's Office*, 2019 WL 4415765, at *10 (N.D. Ill. Sept. 16, 2019) (denying motion to compel where party could have pursued information "when discovery was open").

want to explore further" that "does not mean that a court should allow the discovery process to expand beyond previously set deadlines or parameters." *Id.* at 1.

Permitting Reynolds's request to reopen discovery here would be the first hole in the dike – but almost certainly not the last. To begin, Reynolds seeks not only the Agreements but also "any attendant documents or side agreements." Mot. To Compel at 7, Dkt. 931. Reynolds never explains what "attendant documents" it seeks, but it clearly intends to make future discovery requests regarding "disputed fact[s] as to precisely what is part of the settlement." *Id.* at 7, 12. MVSC, for its part, would also be entitled to discovery to obtain any evidence it needs to respond to Reynolds's claims. And beyond the issue of this settlement agreement, there are undoubtedly many additional issues that arose after the close of discovery that other parties in this MDL (including MVSC) would explore further if allowed. *See* Order at 2-3, Dkt. 498 (explaining the risk of "me too" motions).[3] All of this would entail severe disruption to the MDL schedule. The parties are on the verge of filing summary judgment motions, which are due May 20, 2020. *See* Dkt. 944 (Minute Entry regarding stipulated summary judgment and *Daubert* briefing schedule). Reopening discovery in the midst of summary judgment briefing is unworkable and should be denied.

## II.     Reynolds Fails To Overcome MVSC's And CDK's Interests In Keeping The Agreements Confidential

Maintaining the confidentiality of settlements serves the public purpose of promoting settlement because parties expect (in the large majority of cases, and certainly here) that their settlements will be confidential. *See* Order at 2, Dkt. 748 (citing cases); *Grove Fresh Distribs.,*

---

[3] By way of example, after the close of fact discovery, Reynolds was sued in connection with a data breach exposing thousands of consumer credit cards – even though Reynolds makes its security standards a focal point of its case. *See Auto. Capital Ventures, Inc. v. The Reynolds and Reynolds Co., Richard Rauch*, C.A. 471-06553-2019.

*Inc. v. John Labbatt Ltd.*, 888 F. Supp. 1427, 1441 (N.D. Ill. 1995) ("[C]onfidential settlement agreements are likely in the long run to best serve the interests of the public and the parties alike: '[W]hatever the value of disclosure, it should not obscure the strong public interest in, and policy objectives furthered by, promoting settlement.'") (quoting Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 Harv. L. Rev. 427, 486-87 (1991)).[4]  Thus, "[w]hile there is no settlement privilege to overcome," the party seeking a settlement agreement must articulate "a specific basis as to why the settlement terms are relevant to a claim or defense in the continuing litigation so that production of the settlement agreement is proportional to the needs of the case and overrides the settling parties' interest in keeping their settlement confidential."  Order at 2, Dkt. 748 (citing cases); *Centillion Data Sys., Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 n.1 (S.D. Ind. 1999) ("[I]n the settlement context[,] . . . the burden is on the requester to make a particularized and/or heightened showing that the settlement information sought is relevant and likely to lead to admissible evidence.").

MVSC's confidentiality interest is especially strong, because MVSC's settlement with CDK would severely prejudice MVSC by laying bare MVSC's settlement strategy for Reynolds to use in devising its settlement bargaining position.  It would be "unusual" to allow Reynolds discovery into its "opponent's [settlement] strategy."  *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987); *see also Centillion*, 193 F.R.D. at 552

---

[4] *See also BladeRoom Grp. Ltd v. Emerson Elec. Co.*, 2018 WL 6169347, at *3 (N.D. Cal. Nov. 26, 2018) (citing cases); *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 458-59 (N.D.N.Y. 1999) ("Confidentiality is an important corollary without which many lawsuits would remain unsettled. . . . The public interest in maintaining confidentiality of settlements is therefore strong."); *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993) ("Confidential settlements benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties.").

("[I]nformation is not relevant or discoverable under Rule 26(b) because it might assist a party's evaluation of whether to settle or try a case or help a party prepare negotiating strategies.").

Reynolds proffers three bases for seeking the Agreements "and all attendant documents": (1) to rebut expert liability and damages testimony, (2) to calculate a setoff, and (3) to explore credibility and bias of any CDK witness that testifies. None of these is sufficient to overcome MVSC's and CDK's interests in maintaining the confidentiality of the settlement. Indeed, the latter two have already been rejected by this Court. *See* Order at 2-3, Dkt. 748.

## A.     The Agreements Are At Best Marginally Relevant

Reynolds claims the Agreements are "are among the most highly relevant documents" in the litigation and are especially relevant to expert analyses of antitrust liability and damages. Mot. To Compel at 7-10, Dkt. 931. That argument cannot be squared with Reynolds's failure to seek the Agreements during expert discovery for use by Reynolds's own antitrust and damages experts or for use by Reynolds's counsel in their examinations of MVSC's antitrust and damages experts. Reynolds's antitrust and damages experts never mention the MVSC-CDK settlement in their reports or its potential effect despite the settlement being public weeks before those reports were submitted.

It is thus no surprise that none of the reasons Reynolds proffers for the supposed "high[]" relevance" of the Agreements withstands scrutiny. *First*, Reynolds claims to need the Agreements to establish the end date of the conspiracy. *See* Mot. To Compel at 7, Dkt. 931. But the existence of the settlement is already part of the court record. It is also a matter of public record that MVSC is now a participant in the 3PA program, which Reynolds already uses to argue that the conspiracy ended no later than October 2019. *See* Mot. To Exclude Expert G. Klein at 10, Dkt. 865. There is no justification for Reynolds to insist on the *terms* of the settlement agreement; to the extent the

Agreements are even relevant at all, their *existence* is more than enough for any legitimate litigation purposes.[5]

Neither case cited by Reynolds supports compelling disclosure of a settlement agreement to prove the end date of a conspiracy. *Drug Mart Pharmacy Corp. v. American Home Products Corp.* concerned whether settlement agreements that were already public established the end-date of an alleged conspiracy. 288 F. Supp. 2d 325, 327-28, 332-33 (E.D.N.Y. 2003). And in *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, MDL No. 997 (N.D. Ill. Sept. 14, 1998), the issue was whether a public settlement agreement foreclosed damages past a certain date. *See* Dkt. 932-11 (Exhibit K) at 10-11.

*Second*, Reynolds seeks the Agreements to determine the price MVSC pays for participation in 3PA as of October 2019, which Reynolds speculates will disprove MVSC's allegations that the price quotes from Reynolds (in 2014) and CDK (in 2015 and 2016) were economically infeasible. Even assuming that the 3PA Agreement is part of the Settlement Agreement (and it is not),[6] that comparison would not be probative given the substantial time

---

[5] Whether and when the parties' respective experts update their reports to reflect any changes in circumstances after their original analyses presents an issue separate from this motion to compel. And contrary to Reynolds's assertion, Professor Klein did not testify he would necessarily need the MVSC-CDK settlement to update his analysis. *See* Ex. F, G. Klein Tr. at 90:24-91:11 ("Q. So you'll ask for a copy of the settlement agreement and MVSC's counsel will need to evaluate that? . . . THE WITNESS: I will probably more broadly ask if there's been a cessation of the interference. That's my real concern. I don't know that I need to see dollar amounts in a settlement agreement. My concern is with the cessation of interference, or its augmentation or its diminution.").

[6] Any 3PA Agreement between MVSC and CDK that exists is also not properly the subject of discovery. Reynolds argues that such an agreement would be relevant to setoff, *see* Mot. To Compel at 12, Dkt. 931 (arguing Reynolds will need to "valu[e]" any "3PA agreement" to determine the proper setoff from the MVSC-CDK settlement), but that is wrong for a fundamental reason: the 3PA Agreement is *not* part of the Settlement Agreement. Reynolds's cases are therefore off point: in neither case did the court authorize setoff based on the value of a separate business arrangement outside the scope of the settlement. *See Gulfstream III Assoc., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 434-35 (3d Cir. 1993); *Bal Theatre Corp. v.*

difference between MVSC's current participation in the 3PA program and its prior attempts to enter the program. Circumstances have undoubtedly changed, in terms of the competitive and technological environment. Indeed, this attempted comparison would surely spawn additional collateral discovery to assess whether the circumstances in 2019 (beyond the April 30, 2019 close of fact discovery) are comparable to the circumstances when the group boycott first occurred (2014-2016). Reynolds's experts did not suggest such a comparison would have probative value.

*Third*, Reynolds wants to perform a comparison between the current prices MVSC pays for participation in 3PA and the "but for" prices that Professor Klein calculates MVSC would have paid absent any conspiracy. That comparison would be meaningless. The prices MVSC currently pays for participation in 3PA have necessarily been influenced by the conspiracy and therefore cannot be used as a point of comparison for the prices that would have prevailed absent the conspiracy. As MVSC's antitrust expert Mark Israel explained, "one of the harms is what we have been talking about throughout . . . is the harm to the integration market. The fact that there are . . . fewer integrators than there were. . . . If someone is allowed to use one of the remaining independent integrators, they are, nevertheless, substantially harmed by the actions in this case, because there are fewer options and higher prices." *See* Ex. G, M. Israel Tr. at 604:5-17. Again, neither of Reynolds's experts suggested such a comparison would be sound.

### B. Setoff Discovery Is Premature And Procedurally Barred

**1.** "[C]ourts routinely hold that settlement agreements may be withheld until after trial" for use in calculating any setoff. *O'Neill v. LVNV Funding, LLC*, 2015 WL 5730271, at *1

---

*Paramount Film Distrib. Corp.*, 206 F. Supp. 708, 712, 714 (N.D. Cal. 1962). Beyond the setoff issue, moreover, Reynolds's arguments for the relevance of any 3PA agreement are based on sheer speculation, as explained *infra*. Discovery ended long ago, and there is thus no justification for letting Reynolds go on a fishing expedition at this late date.

(S.D.N.Y. Sept. 30, 2015) (citation omitted); *see also McKinney v. Balboa Ins. Co.*, 2013 WL 12106204, at *2 (M.D. Fla. Nov. 1, 2013) ("[W]hether the settlement agreement is relevant to the issue of set-off is premature at this time"). In *Wagner v. Circle W Mastiffs*, for example, the court "delayed disclosure of settlement agreements until after trial because set-off is not an issue to be addressed until after the entry of a verdict." 2013 WL 4479070, at *4 (S.D. Ohio Aug. 19, 2013); *see also Wisconsin Elec. Power Co. v. N. Assur. Co. of Am.*, 2007 WL 4631363, at *1-2 (W.D. Wis. Oct. 31, 2007) (denying discovery because setoff analysis could wait "until final judgment"); *Anderson v. Ford Motor Co.*, 2010 WL 4156256, at *1 (E.D. Pa. Oct. 20, 2010) (delaying disclosure "until after the entry of the judgment when the court would entertain a defendant's set-off argument"); *In re Flat Glass Antitrust Litig.*, 2013 WL 1703864, at *1 (W.D. Pa. Apr. 19, 2013) (holding that "set-off may be addressed after a verdict has been entered").

This Court too has previously rejected as premature an attempt to compel disclosure of a settlement agreement for the purposes of setoff: "[E]ven if the settlement terms could be relevant to some potential offset at some point in the future, [movants] have not shown they need that information now, before trial [or] before the parties finalize a pretrial order." *See* Order at 2-3, Dkt. 748. That ruling applies equally here. No trial date has been set in the MVSC matter, and the parties will not complete summary judgment briefing until August 28, 2020. Reynolds's speculation that valuing the MVSC-CDK settlement will be "complicated," Mot. To Compel at 12, Dkt. 931, changes nothing. There will almost certainly be no trial in the MVSC matter for at least six months (and more likely a year), providing plenty of time for any setoff analysis.[7]

---

[7] Reynolds's authority is unpersuasive. Most of that authority stands for the undisputed proposition of the necessity of a setoff analysis without discussing the timing of the analysis. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971). And the two cases that did order early disclosure of settlement agreements did so after rejecting the "heightened showing" standard applied in this Court for discovery of settlements. *See In re Cathode Ray Tube*

**2.**     Reynolds's request for setoff discovery is also procedurally improper because Reynolds has failed to assert a setoff defense in its answer. *See* Dkt. 435. Federal Rule of Civil Procedure 8(c) requires parties to "affirmatively state" any "affirmative defense" in their answer. Fed. R. Civ. P. 8(c). And "'[s]etoff' is an affirmative defense which must be raised at the time an answer is filed." *Goldsmith v. Murphy*, 2005 WL 442230, at *2-3 (N.D. Ill. Feb. 22, 2005); *Digital Ally, Inc. v. Z3 Tech., LLC*, 2012 WL 2366713, at *1 (D. Kan. June 21, 2012) ("A setoff based upon a settlement with a third-party is also an affirmative defense."); *Priest v. Brummer*, 2008 WL 2788759, at *9 n.6 (N.D. Ind. July 18, 2008).

Because discovery is only proper for matters that are "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), Reynolds's "attempt to discover evidence . . . for unasserted [defenses] is improper," and thus, should be denied. *Am. Roller Co. v. Foster-Adams Leasing, LLP*, 2006 WL 1371441, at *3 (N.D. Ill. May 16, 2006); *see* Order at 6, Dkt. 442 (denying motion to compel, in part, out of concern that motion was "a veiled attempt to discover information that . . . might [be] use[d] to bring claims not yet asserted"). In anticipation of this defect, Reynolds moved to amend its complaint on the same day that it moved to compel. As explained below, that motion should be denied. *See infra* pp. 14-15.[8]

---

*(CRT) Antitrust Litig.*, 2015 WL 13756260, at *3 (N.D. Cal. July 31, 2015); *Bennett v. La Pere*, 112 F.R.D. 136, 139 (D.R.I. 1986). Finally, *Del Monte Fresh Produce B.V. v. ACE American Insurance Co.*, 2002 WL 34702176 (S.D. Fla. Sept. 4, 2002), concerned an insurance coverage dispute where special rules regarding double recovery apply.

[8] Where setoff is based on benefits given to the plaintiff by the defendant pursuant to the same or other contracts (such as payment under the contract at issue), setoff is often treated as a counterclaim. *See, e.g.*, *AEL Fin. LLC v. City Auto Parts of Durham, Inc.*, 2009 WL 2778078, at *12 (N.D. Ill. Aug. 31, 2009) ("As courts in this district have observed, an affirmative defense operates to eliminate liability rather than reduce it . . . . Because credit, offset, and setoff are not affirmative defenses in the context of this case, they need not be pleaded."). Those cases have no application to the distinct situation of setoff due to a third-party settlement.

###### C.    Reynolds's Speculation Of Bias Is Insufficient

Reynolds purports to seek the Agreements to explore potential bias on the part of CDK and CVR witnesses.  *See* Mot. To Compel at 14-15, Dkt. 931.  As this Court previously held, to warrant discovery of a settlement agreement on this ground, Reynolds must offer "more than conjecture that the confidential terms of the settlement agreement may be probative of bias."  Order at 3, Dkt. 748.  Rather, discovery of a confidential settlement to probe bias "is permissible only where the moving party 'lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive.'"  *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1046 (2d Cir. 1992) (quoting *Mars Steel*, 834 F.2d at 684)).

Reynolds fails to make that showing.  It merely speculates the Agreements may require CDK (and even CVR, which is not even a party to the settlement) to cooperate with MVSC in this litigation.  That speculation is unfounded.  CVR (who Reynolds claims may be biased) is a *joint venture* between CDK and Reynolds, and CDK (who Reynolds also claims may be biased) is Reynolds's co-defendant in this MDL and continues to *jointly defend* the claims in this MDL alongside Reynolds.  ██████████████████████████████████████████████

█████████████████████████████████████████████████  ███████████████████

████████

---

[9] The authority Reynolds relies on is distinguishable.  *White v. Kenneth Warren & Son, Ltd.*, involved express and substantiated claims of collusion between the settling parties.  203 F.R.D. 364, 367-68 (N.D. Ill. 2001).  Similarly, *CadleRock Joint Venture, L.P. v. Royal Indem. Co.*, 2012 WL 443316, at *3 (N.D. Ohio Feb. 10, 2012) concerned more detailed allegations of potential bias, at a later procedural stage, and with several witnesses who the court already knew would be called.  And in *Melton v. Bank of Lexington*, the court expressly stated that its decision to disclose the settlement agreement was based on an *in camera* review that revealed terms "clearly relevant" to the potential impeachment of specific, named, "important witnesses." 2007 WL 9706436, at *2 (W.D. Tenn. June 27, 2007).  The remaining cases all applied lower standards for discovery of settlement agreements than are applied by this Court.  *See In re Cathode*, 2015 WL 13756260; *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, 2014 WL 10294813 (E.D. Mich.

### III.    Reynolds's Untimely Motion For Leave To Amend Should Be Denied

The time has long passed for Reynolds to amend its answer as of right.  *See* Fed. R. Civ.

P. 15(a)(1).  Leave to amend is "inappropriate where there is undue delay, bad faith, dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility

of the amendment."  *Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999)

(quoting *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992)).  Reynolds bears the burden of

demonstrating the lack of prejudice to MVSC.  *See Ocean Atl. Woodland Corp. v. DRH Cambridge

Homes, Inc.*, 2003 WL 22848968, at *2 (N.D. Ill. Dec. 1, 2003).

"Prejudice to the opposing party is the most important factor in determining whether to

allow an amendment to a complaint."  *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 1999)

(citations omitted).  Here, Reynolds seeks to add a setoff defense plainly for the purpose of

advancing additional discovery requests against MVSC that are currently procedurally barred by

Reynolds's failure to assert that defense.  *See supra* pp. 10-12.  Reynolds's discovery request is

not limited to discrete agreements but also includes unspecified "attendant documents."  Nor is

Reynolds likely to stop there, given the disputes that it previews regarding the scope of the

Agreements, *see supra* pp. 8-10, and its purported intent to use the Agreements for purposes that

may require reopening discovery on other issues, *see supra* pp. 5-6.  This additional discovery

would prejudice MVSC, and thus, provides ample ground to deny Reynolds's motion.  *See

Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002) ("A trial court

may deny leave to amend when the amendment would cause the opposing party to bear additional

---

Apr. 24, 2014); and *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL
1246216 (D. Kan. Apr. 27, 2007).

discovery costs . . . and the moving party does not offer to reimburse the nonmoving party for its expenses."); *Johnson v. Cypress Hill*, 641 F.3d 867, 872-73 (7th Cir. 2011) (affirming denial of motion for leave to amend in part because of "additional discovery"); *Jacks v. DirectSat USA, LLC*, 2019 WL 1858500, at *4 (N.D. Ill. Apr. 24, 2019) ("[Defendants] have certainly not carried their burden to negate the obvious prejudice that plaintiffs will suffer if discovery is again reopened and these protracted proceedings must be prolonged further.").

Reynolds's delay in seeking this amendment provides an independent ground to deny the amendment. Reynolds concedes that it learned of the factual basis for its setoff defense in October 2019, *see* Mot. To Amend at 3, Dkt. 927, and did not propose this amendment to MVSC until five months later on March 13, 2020, *see id.* at 2. Nor did Reynolds raise the possibility of setoff in any fashion prior to its January 31, 2020 request for the settlement agreement – three-and-a-half months after the settlement. *See id.* at 3. Reynolds does not attempt to justify this delay. Where, as here, "the party seeking an untimely amendment knows or should have known of the facts upon which the proposed amendment is based, but fails to assert them in a timely fashion, the amendment will be denied." *Ameritech*, 188 F.R.D. at 284; *see Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) (affirming denial of motion to amend based on information learned four to five months earlier); *Feldman*, 196 F.3d at 793 (same for five month delay); *Perrian*, 958 F.2d at 195 (same for three-and-a-half month delay); *Cypress Hill*, 641 F.3d at 872 (same for seven month delay).

## CONCLUSION

For the foregoing reasons, the Court should deny Reynolds's motion to compel and motion to amend.

Dated: May 15, 2020

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
Daniel V. Dorris
Christine A. Bonomo
Jeffrey G. Long
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
ddorris@kellogghansen.com
cbonomo@kellogghansen.com
jglong@kellogghansen.com

*Counsel for Motor Vehicle Software*
*Corporation*

<u>**CERTIFICATE OF SERVICE**</u>

  I, Derek T. Ho, an attorney, hereby certify that on May 15, 2020 I caused a true and correct copy of the foregoing **MVSC'S CONSOLIDATED OPPOSITION TO REYNOLDS'S MOTION TO COMPEL MVSC TO PRODUCE ITS SETTLEMENT AGREEMENT WITH CDK AND REYNOLDS'S MOTION TO AMEND ITS ANSWER AND AFFIRMATIVE DEFENSES** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
