# Exhibit E

**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
202.747.1900 main
202.747.1901 fax
www.sheppardmullin.com

202.747.1925 direct
lcaseria@sheppardmullin.com

January 31, 2020

File Number: 48KZ-266044

**VIA EMAIL**

Derek Ho
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street N.W., Suite 400
Washington, DC 20036-3215
dho@kellogghansen.com

Re: *Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.), MDL 2817.

Dear Derek:

I write on behalf of Defendant The Reynolds & Reynolds Company ("Reynolds") to you in your capacity as counsel to Plaintiff Motor Vehicle Software Corporation ("MVSC").

Reynolds requests that MVSC produce a copy of its settlement agreement with CDK, as well as any attendant documents, which resolved MVSC's claims against Defendants CDK Global, LLC ("CDK") and Computerized Vehicle Registration, Inc ("CVR"), for the reasons set forth herein.

The settlement agreement as well as any attendant documents (such as any 3PA or other integration agreement) are relevant to evaluating MVSC's claimed damages resulting from the alleged antitrust violations. MVSC's damages expert, Gordon Klein, calculated damages for MVSC based on the assumption that Defendants Reynolds, CDK and CVR have engaged and will continue to engage in alleged antitrust violations until January 1, 2021. *See* Klein Report, p. 15, n. 57; *see also* Israel Dep. 600:20-21 ("I'm sure they are still colluding with respect to blocking everyone."). Mr. Klein explained that if Defendants actually cease their allege misconduct sooner, "damages would decrease." Klein Dep., 83:14-19.

MVSC's settlement, which resulted in the dismissal of claims against CDK and CVR, occurred no later than October 15, 2019. *See* ECF No. 818, p. 4, n.2. Therefore, a necessary implication of Dr. Klein's assumption is that Defendants are continuing to engage in the alleged unlawful conduct even though CDK and CVR settled with MVSC. At his deposition, Mr. Klein explained that his assumption about a January 1, 2021 end date for the alleged misconduct might no longer be appropriate in light of the settlement agreement. For example, he testified that his report "was accurate at the time tendered" because the settlement had not yet occurred. Klein Dep. 86:8:21. According to Mr. Klein, his damages analysis might need to be updated due to the settlement agreement:

> "I don't know what has transpired since that settlement. I don't know the nature of the settlement. . . . I will consider it and I think probably in due course, if

Derek Ho
January 31, 2020
Page 2

>there's been a change of circumstance – there's been one of many potential change of circumstance between now and the trial, I would contemplate the potential to revise my analysis."

*   *   *

>"And it's possible that the settlement, to the extent I learn more about the terms of the settlement, whether they were quantitative, qualitative, both, and its implication as manifested by the conduct of Reynolds and/or CDK, if either or both have ceased interference, I will be prepared, perhaps, to incorporate that among my updates."

Klein Dep., 88:2-89:7. Mr. Klein testified that after the settlement occurred, he asked MVSC whether he could "know the substance" of the settlement agreement, but MVSC told him that he could not. Klein Dep. 85:14-17. MVSC will now need to share the settlement agreement or its substance with Mr. Klein in order for him to update his opinions, and it should also be shared with Reynolds's counsel. Any confidentiality concerns can be addressed by designating the settlement as confidential or highly confidential under the applicable confidentiality order, as appropriate. As Mr. Klein recognized, to the extent MVSC refuses to provide the settlement agreement to him or to Reynolds, he will "leave it to counsel to make whatever motions are necessary . . . ." Klein Dep., 90:7-22.

 The settlement with CDK is also a relevant business agreement, presenting an independent reason for its production. Indeed, it is the <u>most</u> relevant business agreement, as it is the only integration agreement between MVSC and a defendant. One of the key issues in this case is whether the prices quoted by Reynolds and CDK to MVSC for RCI and 3PA were so high that they constituted an effective refusal to deal, as MVSC and its experts have asserted. Subsequent to MVSC's settlement with CDK, MVSC is now a participant in 3PA, at an undisclosed price. Understanding the price and other terms on which MVSC now participates in 3PA is therefore highly relevant. The agreement has not been produced or even provided to MVSC's own liability expert. *See* Israel Dep., 601:11-16 (Q: "How much is MVSC paying CDK to integrate to its system right now?" . . . A: "I don't know."). To the extent a separate 3PA agreement or other attendant business agreements are involved, Reynolds also requests production of MVSC's separate 3PA and/or other agreements with CDK.

 The settlement agreement is also relevant to Reynolds's defenses related to duplicative recovery and setoff. Anything of value received by MVSC in settlement from CDK or CVR, Reynolds's alleged antitrust conspirators, cannot be recovered again from Reynolds, because they are jointly and severally liable for the same conspiracy damages. Under similar circumstances, courts have found settlement agreements to be relevant and discoverable. *See, e.g., White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 367 (N.D. Ill. 2001) (ordering production of a confidential settlement agreement where the overlap of claims between defendants could reduce the non-settling defendant's potential liability); *Meharg v. I-Flow Corp.*, No. 108CV0184-DFH-TAB, 2009 WL 3032327, at *3 (S.D. Ind. Sept. 18, 2009) (non-settling defendants entitled to know and use the terms of settlement agreements with other defendants where relevant to apportionment); *Burke v. Regalado*, 935 F.3d 960, 1048 (10th Cir. 2019)

Derek Ho
January 31, 2020
Page 3

(district court abused discretion by denying discovery of settlement agreement that was necessary to resolving the setoff issue); *Davis v. Prison Health Serv.*, No. C 09-2629 SI, 2011 WL 3353874, at *10 (N.D. Cal. Aug. 3, 2011) (compelling production of settlement agreement, finding it relevant to setoff analysis); *Del Monte Fresh Produce B.V. v. ACE Am. Ins. Co.*, No. 00-4792-CIV, 2002 WL 34702176, at *3-4 (S.D. Fla. Sept. 4, 2002) (recommending that the court compel production of settlement agreements because such agreements were relevant to defendant's "double recovery" defense); *Bennett v. La Pere*, 112 F.R.D. 136, 138 (D.R.I. 1986) (granting motion to compel, finding settlement agreement relevant to setoff defense of alleged joint tortfeasor); *Tanner v. Johnston*, No. 2:11-CV-00028-TS-DBP, 2013 WL 121158, at *5 (D. Utah Jan. 8, 2013) (collecting cases) (granting motion to compel because "settlement agreements about overlapping claims are relevant, and therefore discoverable.").

In addition, as the remaining defendant, Reynolds is "entitled to learn whether any promises have been made in connection with [CDK and CVR's] dismissal as a party defendant . . . ." *White*, 203 F.R.D. at 367. For example, if CDK or CVR has agreed to cooperate in any way with MVSC's claims against Reynolds, this information is critical to exploring issues of bias and credibility with respect to witnesses who will inevitably be called at trial. *See Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 1246216, at *4 (D. Kan. Apr. 27, 2007) (compelling production of settlement agreement in antitrust and tortious interference case: "it appears virtually certain that representatives of the settling defendants may be called to testify at trial or that an attempt may be made to use their prior depositions. Thus, the terms of any settlement agreements with dismissed defendants or their representative appear to be relevant to the possible bias or prejudice of important witnesses."); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2016 WL 6822014, at *2 (E.D. Mich. Nov. 18, 2016) (internal formatting, quotation marks, and citation omitted) ("Settlement agreements frequently are found to be discoverable in order to allow the requesting party to explore these issues of bias and credibility with respect to witnesses."); *Melton v. Bank of Lexington*, No. 02-1152 B/P, 2007 WL 9706436, at *2 (W.D. Tenn. June 27, 2007) ("the court concludes that the agreement is discoverable because it is clearly relevant to the possible bias, prejudice, and impeachment of important witnesses"); *CadleRock Joint Venture, L.P. v. Royal Indem. Co.*, No. 02CV16012, 2012 WL 443316, at *3 (N.D. Ohio Feb. 10, 2012) (compelling production of settlement agreement where it "may be relevant to issues of witness credibility and bias"). Indeed, the Federal Rules of Evidence expressly state that settlement agreements may be admissible to prove bias. *See* Fed. R. Evid. 408(b).

Based on the foregoing, the settlement agreement between MVSC and CDK and/or CVR is discoverable under Federal Rule of Civil Procedure 26. Please produce it within 7 days.

Derek Ho
January 31, 2020
Page 4

Sincerely,

*[signature: Leo Caseria]*

Leo D. Caseria
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


SMRH:4827-4191-4547.2