**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To:<br><br>*Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-cv-002521 (N.D. Ill.) | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF AUTOLOOP'S MOTION FOR SUMMARY JUDGMENT
<u>ON CDK GLOBAL, LLC'S COUNTERCLAIM</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

LEGAL STANDARD ........................................................................................................... 6

ARGUMENT ........................................................................................................................ 6

    I.    Summary Judgment Should Be Granted Due To Lack Of Evidence That AutoLoop Breached The Managed Interface Agreement ............................... 6

    II.    Summary Judgment Should Be Granted For Lack Of Evidence Of Damages ............. 8

    III.    CDK Is Not Entitled To A Permanent Injunction ....................................... 10

CONCLUSION ................................................................................................................... 11

**INTRODUCTION**

CDK Global, LLC ("CDK") has brought a single breach-of-contract counterclaim against putative class representative Loop, LLC ("AutoLoop") because AutoLoop obtains some dealers' car inventory data from a source other than CDK's dealer management system ("DMS") (namely, another application called vAuto). Summary judgment in AutoLoop's favor is warranted because CDK has failed to adduce any evidence to support either liability or damages.

The undisputed evidence demonstrates that a small number of dealers (approximately 40-50) directed AutoLoop to obtain car inventory data from vAuto because vAuto has additional data that those dealers do not store in CDK's DMS, such as different pricing information and images of the vehicles. CDK claims that this breaches Section 1(f) of the Managed Interface Agreement between CDK and AutoLoop because that provision purportedly prohibits AutoLoop from retrieving data "from" CDK's DMS except through CDK's data integration service, 3PA.

That counterclaim fails as a matter of law, because CDK has adduced no evidence that vAuto obtained the data at issue "from" CDK. Rather, the evidence shows that vAuto obtained vehicle inventory data from multiple sources *other than* CDK's DMS, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Summary judgment is also warranted because CDK has failed to adduce any evidence that the few instances of AutoLoop obtaining car inventory data from vAuto caused CDK damages. CDK alleges that CDK's purported inability to "monitor" AutoLoop's use of inventory data obtained from vAuto has harmed the "success" of CDK's 3PA service. But CDK failed to offer any evidence to quantify any such harm, and any attempt to do so would necessarily fail given that the data (car inventory) is already publicly available and need not be "monitored." Finally, CDK has failed to justify the extraordinary remedy of specific performance.

CDK's breach-of-contract counterclaim is emblematic of its anticompetitive practices, which are the core issue in this MDL. At bottom, CDK's theory is that, by becoming a participant in its 3PA program, automobile vendors such as AutoLoop signed away their right to obtain car inventory data – business data generated by dealers – from any non-CDK source. That theory fails on its own terms here – but it also fails because those practices constitute exclusionary practices that should be stricken, not enforced. *See In re DMS Antitrust Litigation*, 362 F. Supp. 3d 477, 484-85, 491-95 (N.D. Ill. 2019) (noting potential illegality of such provisions).

## BACKGROUND

**1.** AutoLoop is an automotive software vendor that provides software applications to assist automobile retail dealerships with inventory management, customer relationship management ("CRM"), and managing their service and repair departments. *See* Plaintiff's Statement of Facts ("PSOF") ¶ 2.[1] AutoLoop's software needs access to data stored on dealers' DMS in order to function properly. *See id.* ¶ 7. For example, AutoLoop's CRM application needs access to the dealer's customer records that are stored on the DMS, while its service and repair application needs access to customer records and information about upcoming service and repair orders. *See id.*

CDK is the largest provider of DMS software. Its market share is at least 40 percent when measured by dealer rooftops (the individual dealership stores), and is higher when measured by percentage of car sales accounted for by the dealerships that use their DMS. *See id.* ¶ 5. The combined market share of CDK and its alleged co-conspirator The Reynolds and Reynolds

---

[1] AutoLoop was acquired by another automotive software vendor, Affinitiv, Inc., on September 3, 2019. *See* Press Release, https://www.affinitiv.com/2019/09/04/affinitiv-and-autoloop-complete-merger/. Loop, LLC remains a distinct limited liability company, incorporated under Florida law.

Company ("Reynolds") is at least 70 percent measured by rooftop and more than 90 percent measured by car sales. *See id.* ¶ 6.

**2.** Historically, AutoLoop used the services of a data integrator, Superior Integrated Solutions, Inc. ("SIS"), to obtain access to data stored on CDK's DMS. *See id.* ¶ 8. SIS charged AutoLoop approximately ▓ per month per rooftop for its data-access services. *See id.* But in 2013, CDK and Reynolds began collaborating on a joint plan to exclude data integrators. *See* Opp'n to Defs. Mot. To Bar at 4-7, Dkt. 820 (discussing some of the conspiracy evidence from 2013). And by 2015, CDK "strongly indicated" to AutoLoop that CDK would force AutoLoop to obtain data integration through CDK's Third Party Access ("3PA") program. *See* PSOF ¶ 9; *see* Ex. 2, Petruzzelli Tr. 160:7-16 ("AutoLoop was forced into doing 3PA at that time. Because they threatened to shut us off. . . . CDK visited Mercedes Benz [an AutoLoop customer] and told them that they were going to shut us down."); *id.* 175:11-176:14 ("[Mike Sailor from CDK] said, Hey I'd like to talk to you about certification, coming onto the 3PA program. I said we have no interest in it whatsoever. We're very happy with SIS. And so he said, Well, what if we shut down SIS and put you out of business? And at that point, I asked him to please leave the booth.").

As a result, AutoLoop pursued entry into the 3PA program, and on January 12, 2016, AutoLoop entered into a Managed Interface Agreement ("MIA") with CDK to obtain access to data stored on CDK's DMS through 3PA. *See* PSOF ¶ 10. The MIA substantially raised the prices that AutoLoop had been paying for data integration services from the $69 per dealer per month (paid to SIS) to up to ▓ per month per dealer (to be paid to CDK). *See id.* ¶¶ 8, 11. These 3PA prices exceeded the entire price that AutoLoop would have charged dealers for some of AutoLoop's products. *See id.* ¶ 12; Ex. 1, PI Hr'g Tr. 2-A-66:20 to 67:18 ("I have scheduling products and other products that cost well under the integration fees, and so from the standpoint

of trying to sell a product to a dealership and you have to tell them, 'I have a $500 product, and the integration is $600 or $700,' they look at you and they're like, 'Well, why am I going to buy that product from you? That's crazy.'"). AutoLoop did not believe that the 3PA program provided any additional value beyond SIS's data integration service. *See* PSOF ¶ 17.

Section 1(f) of the MIA restricted AutoLoop's ability to continue to use SIS or to use other means of accessing data on CDK's DMS:



AutoLoop also historically used SIS's data integration services for dealers using Reynolds's DMS. *See* PSOF ¶ 8. In 2015, AutoLoop stopped using SIS because of "notice from SIS that they would no longer be continuing to support integration for SIS," which had followed "block[ing] by Reynolds and Reynolds" preventing SIS from "extract[ing] the data on a day-to-day basis." *Id.* ¶ 14. The cost of data integration services for Reynolds dealers rose to more than $700 per dealer rooftop per month. *See id.* ¶ 15.

**3.** AutoLoop also obtains data for its applications from non-DMS sources, such as vAuto, from which AutoLoop has received "inventory data feeds" for roughly 40-50 dealer rooftops. *See id.* ¶ 16. vAuto is an application sold by Cox Automotive to dealers that offers analytic services to help dealers understand the pricing, profitability, and turn time for their inventory. *Id.* ¶ 17. vAuto obtains its inventory data from several sources,

██████████████████████████████████████████████████████

██████████████████████████████████████

vAuto allows dealers to send inventory data stored in vAuto to other applications. *See id.* ¶ 19. The "inventory data" that vAuto provides to other applications refers to information concerning the dealerships' inventory that is publicly marketed for sale. *See id.* Dealers requested that AutoLoop obtain inventory data from vAuto because vAuto "standardly store[d] information in vAuto that [dealers] do not store or maintain in CDK['s DMS]." *Id.* ¶ 20; *see* Ex. 7, Rodeghero 4/11/19 Tr. 128:1-129:1 ("So basically what we are pulling from vAuto is information that, per the dealership statements to us, that we can't get from the DMS."). vAuto does not send solely the "raw" data that could be obtained from the DMS (such as a vehicle identification number ("VIN"), prices, and trims); it sends "enriched" data such as additional pricing information and vehicle images and videos. *See* PSOF ¶ 20.

**4.** On April 9, 2018, AutoLoop filed a class action lawsuit against CDK. AutoLoop alleged that CDK and Reynolds had unlawfully "conspir[ed] to eliminate competition for providing data integration services for dealer data." *In re DMS Antitrust Litig.*, 362 F. Supp. 3d at 482 (N.D. Ill. 2019). AutoLoop also alleged that Section 1(f) – which prohibited AutoLoop from "transferring any data from or to" a CDK DMS outside 3PA – was unlawful exclusive dealing. *See id.* at 485. This Court denied CDK's motion to dismiss in its entirety. *See id.* at 499.

CDK asserted a breach-of-contract counterclaim against AutoLoop. CDK claims that AutoLoop breached Section 1(f) – a provision whose legality is at issue in the MDL – by obtaining from another 3PA participant, vAuto, "a daily feed of inventory data . . . to support AutoLoop's Quote application." CDK Counterclaims ¶¶ 2, 20-21, Dkt. 514. CDK alleged "[o]n information and belief" that "the vAuto inventory data feed includes vehicle inventory data sourced from

CDK's DMS." *Id.* ¶ 20. CDK claimed that this conduct harmed CDK by allowing AutoLoop "to avoid paying CDK the integration fees that it would otherwise owe under the 3PA Agreement" and by impeding CDK's "ability to verify that each vendor in the program is using the data that it obtains for an approved end-use and with the dealer's express, written consent." *Id.* ¶ 24. CDK also seeks injunctive relief. *See id.* ¶ 29.

## LEGAL STANDARD

"Under Rule 56 of the Federal Rules of Civil Procedure, a court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 646 (7th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "A summary judgment motion is appropriately granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. (quotation marks omitted). "To survive summary judgment, a non-movant must be able to show that a reasonable jury could return a verdict in its favor – metaphysical doubt as to the material facts does not create a genuine issue for trial." *Id*.

## ARGUMENT

**I.  Summary Judgment Should Be Granted Due To Lack Of Evidence That AutoLoop Breached The Managed Interface Agreement**

Summary judgment should be granted to AutoLoop on CDK's breach-of-contract counterclaim because CDK has not adduced evidence from which a jury could reasonably find that the data that AutoLoop received from vAuto was sourced from CDK's DMS. Section 1(f) purports to prohibit AutoLoop from accessing, retrieving, or otherwise transferring "any data from or to" CDK's DMS except through the 3PA program. Ex. 14, DX200 at AUTOLOOP_FTC_0003479.

That provision imposes no restrictions on AutoLoop's receipt of data that is not sourced from CDK's DMS.[2]

There is no record evidence to show, for the 40-50 dealers from which AutoLoop received a vAuto data feed, that vAuto had sourced any of its data from CDK's DMS. The evidence is undisputed that vAuto obtained its inventory data from multiple sources in addition to CDK's DMS. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ There is no evidence that AutoLoop received any data from vAuto that had been obtained from CDK's DMS rather than one of those other sources. Because CDK bears the burden to show facts constituting a breach, the absence of proof is sufficient to grant summary judgment. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 657 (7th Cir. 2011).

In its counterclaims, CDK relied on an AutoLoop document stating that the vAuto inventory feed "cannot be used in conjunction with DMS inventory pulls," Ex. 15, DX368 at AL_MDL_0026553, to allege that the vAuto and CDK data feeds must "contain overlapping data." CDK Counterclaims ¶ 22, Dkt. 514. But discovery has shown that the data that AutoLoop actually sought from vAuto was not even kept in CDK's DMS. *See* PSOF ¶ 20; Ex. 7, Rodeghero 4/11/19 Tr. 128:1-129:1 ("[Dealers] maintain the more accurate pricing that they price their vehicles off of in the vAuto system. . . . [T]o the best of my knowledge, CDK does not have a method for storing vehicle images in the DMS . . . . So basically what we are pulling from vAuto is information that,

---

[2] AutoLoop assumes for the sake of argument that if vAuto sourced data from CDK's DMS, there could be a dispute of fact as to whether AutoLoop obtaining that data from vAuto is a breach of Section 1(f). To be clear, AutoLoop does not believe – at least in the absence of any agreement between AutoLoop and vAuto requiring vAuto to obtain data from CDK's DMS on behalf of AutoLoop – that AutoLoop's obtaining such data from vAuto constitutes a breach.

per the dealership statements to us, that we can't get from the DMS."). And even if there is "overlap" between the data vAuto has and the data CDK has, that does not support the inference that the data in the vAuto feed was obtained from CDK's DMS. Indeed, the undisputed evidence indicates that, to the extent vAuto's feed contained data that was also in CDK's DMS, it was data (such as VINs) that would have been available to vAuto from non-CDK sources. *See* PSOF ¶ 18.

At bottom, CDK's counterclaim is based on nothing more than speculation that vAuto sourced data from CDK's DMS rather than other sources. That speculation is not sufficient to satisfy CDK's burden on summary judgment. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014) ("[I]t is insufficient for [plaintiff] to solely provide a possible way in which a Wal-Mart employee could have caused the spill; [plaintiff] cannot merely identify a potential source of the spill to avoid summary judgment." (internal quotation marks omitted)); *Piotrowski v. Menard, Inc.*, 2015 WL 5139415, at \*4 (N.D. Ill. Aug. 31, 2015) (granting summary judgment where there was an absence of evidence that a store (which sold rocks) placed rocks in the parking lot given the "myriad of ways that the rocks could have come to be in the parking lot"); *Karkuszewski v. Horbowski*, 1990 WL 114621, at \*2 (N.D. Ill. July 23, 1990) ("Merely alleging the existence of a fact where the non-existence of that fact appears as probable is insufficient to defeat summary judgment."); *see also Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) ("[S]ummary judgment" is the time to "sift the probable from the merely possible.").

## II. Summary Judgment Should Be Granted For Lack Of Evidence Of Damages

In addition to lacking evidence on liability, CDK has failed in its "duty [both] to establish that [it] sustained damages as well as a reasonable basis for computing those damages." *C-B Realty & Trading Corp. v. Chicago & North Western Ry. Co.*, 682 N.E.2d 1136, 1143 (Ill. 1997); *see Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1174 (Ill. App. Ct. 2015)

("Damages are an essential element of a breach-of-contract claim, so a plaintiff's failure to prove damages entitles the defendant to judgment as a matter of law.").

CDK claims two types of damages. *First*, CDK claims to have lost revenue as a result of AutoLoop "avoid[ing] paying" 3PA fees for dealers from whom AutoLoop acquired inventory data from non-CDK applications. CDK Counterclaims ¶ 24, Dkt. 514. However, with the possible exception of three out of the 40-50 dealers for which CDK claims a breach, there is no dispute that AutoLoop already paid CDK the 3PA fees that CDK claims as lost revenue. *See* PSOF ¶ 21; Ex. 7, Rodeghero 4/11/19 Tr. 136:10-12 ("Q. How many are not still purchasing or being charged for the integration transaction from CDK. A. From what I recall, there were only three."). And even as to those three dealers, CDK has put forth no reasonable basis for computing damages. CDK's damages expert, Professor Daniel Rubinfeld, did not attempt to calculate damages against AutoLoop. Further, CDK has not adduced evidence for how long those three dealers supposedly used vAuto without paying 3PA fees or what the 3PA fees would have been during the time period that AutoLoop supposedly avoided paying 3PA fees. Nor is there any evidence of causation – that is, but for the alleged breach of receiving data from vAuto, those three dealers would have continued to purchase AutoLoop's services and AutoLoop would have sought a car inventory feed via 3PA (and paid fees). *In re Emerald Casino, Inc.*, 867 F.3d 743, 755 (7th Cir. 2017) ("but-for" causation required in a breach-of-contract case with a single defendant).

*Second*, CDK claims that it has been harmed because "[t]he success of the 3PA program depends on CDK's ability to verify that each vendor in the program is using the data that it obtains for an approved end-use and with the dealer's express, written consent," and that, when AutoLoop obtains inventory data from vAuto rather than 3PA, CDK loses its ability to "monitor" that data. CDK Counterclaims ¶ 24, Dkt. 514. CDK bears the burden of putting forth a reliable methodology

to quantify any such damages to its 3PA program. *See TAS Distributing Co. v. Cummins Eng. Co.*, 491 F.3d 625, 633-34 (7th Cir. 2007). Yet it has not even attempted to do so. CDK's damages expert, Professor Rubinfeld, makes no effort to quantify any such harm. Nor do any of CDK's other experts. The reason is apparent: the data feeds from vAuto contain data regarding the dealers' car inventory that dealers have every right to provide to AutoLoop. *See* PSOF ¶ 20; Ex. 7, Rodeghero 4/11/19 Tr. 128:1-129:1 ("From vAuto, we pull specific information that the dealership have requested that we pull from their vAuto application . . . ."). None of that data is proprietary to CDK: dealers want to share it with AutoLoop so they can sell more cars. *See* PSOF ¶ 19. Given that CDK has offered no evidence of damages caused to its 3PA program, summary judgment is warranted. *Transportation & Transit Assocs., Inc. v. Morrison Knudsen Corp.*, 255 F.3d 397, 401 (7th Cir. 2001) (summary judgment warranted because "[t]here is no point in litigating" a theory for which the claimant "is unprepared to demonstrate loss" (citation omitted)).

### III. CDK Is Not Entitled To A Permanent Injunction

CDK is not entitled to a permanent injunction on its contract claim – that is, specific performance – because its claim of breach has no merit. *See supra* Part I; *see Automed Tech., Inc. v. Microfil, LLC*, 2006 WL 1647505, at *1 (N.D. Ill. June 7, 2006) (injunction requires success on the merits). Moreover, although the Court need not reach the issue, CDK cannot demonstrate an entitlement to injunctive relief because it has not demonstrated that a damages remedy would be inadequate. *See id.*; *TAS Dist.*, 491 F.3d at 637; *Vaughn v. City of Carbondale*, 50 N.E.3d 643, 652 (Ill. 2016). Here, as explained above, CDK claims monetary damages in the form of lost 3PA fees and harm to the 3PA program. This harm (if it exists) could be remedied by payment of damages. There is therefore no basis for this Court to craft a specific-performance remedy that "would require the kind of ongoing supervision that strains judicial resources." *TAS Dist.*, 491 F.3d at 637; *see Miller v. LeSea Broadcasting, Inc.*, 87 F.3d 224, 230-31 (7th Cir. 1996) (dissolving

preliminary injunction for breach of contract where damages for breach would be ascertainable); *Automed Tech.*, 2006 WL 1647505, at *2 (rejecting permanent injunction for failure to show any damages); *Davidson v. Schneider*, 2014 WL 656780, at *5 n.8 (N.D. Ill. Feb. 20, 2014) (dismissing claim for specific performance on summary judgment for failure to show "money damages . . . would be an inadequate remedy").

## CONCLUSION

For these reasons, AutoLoop is entitled to summary judgment on CDK's breach-of-contract counterclaim.

Dated: May 20, 2020

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Interim Vendor Class Counsel*

## **CERTIFICATE OF SERVICE**

      I, Derek T. Ho, an attorney, hereby certify that on May 20, 2020, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF AUTOLOOP'S MOTION FOR SUMMARY JUDGMENT ON CDK GLOBAL, LLC'S COUNTERCLAIM** to be filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all counsel of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Copies of the Under Seal filing were served on counsel of record via email.

                                                  */s/ Derek T. Ho*
                                                  Derek T. Ho
                                                  **KELLOGG, HANSEN, TODD,**
                                                    **FIGEL & FREDERICK, P.L.L.C.**
                                                  1615 M Street, NW, Suite 400
                                                  Washington, D.C. 20036
                                                  (202) 326-7900
                                                  dho@kellogghansen.com