PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

## DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................ 3

I.      Electronic Vehicle Registration Services ................................................................ 3

II.     Dealers' Access to Manual Reporting Tools Make It Impossible for Reynolds to Exclude MVSC from Any EVR Market ................................................................ 4

III.    Reynolds Never Refused to Deal with MVSC or Blocked MVSC from RCI ...................... 6

IV.    MVSC's Limited Use of Hostile Integrators to Access the Reynolds DMS .......................... 8

V.     MVSC's Lawsuit ................................................................................................ 8

ARGUMENT .............................................................................................................................. 9

I.      MVSC Cannot Establish a Conspiracy Involving Reynolds ................................................ 9

     A.    Reynolds Did Not Conspire with CDK to Block MVSC from RCI and 3PA ...................................................................................................... 10

            1.    Reynolds Did Not Refuse to Deal with MVSC ................................. 10

            2.    Reynolds Did Not Conspire with CDK ............................................ 13

     B.    Reynolds Did Not Conspire to Block MVSC's Access to Hostile Integrators ........................................................................................... 15

     C.    Reynolds Did Not Conspire as to Messaging About MVSC or CVR, Which, in Any Event, Is Not Actionable Under the Antitrust Laws ........................ 16

     D.    MVSC Has Abandoned Its Claim Based on a Conspiracy to Block Access to Manual Reporting and There Is No Evidence to Support It ................... 19

     E.    MVSC's Theory of the Conspiracy Makes No Sense ............................................ 20

II.     MVSC Suffered No Harm Caused by an Alleged Conspiracy ............................................. 24

     A.    MVSC Succeeded in the California and Virginia EVR Markets Because of Manual Reporting ............................................................................ 24

            1.    MVSC Achieved a Leading 60% Market Share in California While CVR's Share Decreased ................................................................. 25

            2.    MVSC Raised Prices in the Virginia EVR Market from ▇ to ▇ ........... 27

     B.    MVSC's Difficulties Entering the Wisconsin and Illinois EVR Markets Were Due to State Action ................................................................... 28

            1.    Wisconsin Was Not Accepting New EVR Providers ................................. 28

            2.    Illinois's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ............................... 31

III.    MVSC Cannot Establish Antitrust Injury ................................................................. 32

     A.    The Harm MVSC Alleges Is Not an Antitrust Injury and Regardless, Harm to MVSC Is Not Harm to Competition .......................................................... 32

PUBLIC VERSION

      B.     Denial of an Unlawful Method of Data Access Is Not an Antitrust Injury ....................................................................................................... 34

IV.     MVSC Cannot Establish Damages ......................................................................... 36

V.     MVSC's State Law Claims Fail for the Same Reasons as the Federal Claims ................... 38

CONCLUSION ........................................................................................................... 38

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*
141 F.3d 947 (9th Cir. 1998) ......................................................................................... 19

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*
836 F.3d 1171 (9th Cir. 2016) ....................................................................................... 33

*Agnew v. Nat'l Collegiate Athletic Ass'n*
683 F.3d 328 (7th Cir. 2012) ........................................................................................... 9

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*
486 U.S. 492 (1988) ....................................................................................................... 18

*Anderson News, LLC v. American Media, Inc.*
899 F.3d 87 (2d Cir. 2018) ............................................................................................ 14

*Authenticom, Inc. v. CDK Global, Inc.*
874 F.3d 1019 (7th Cir. 2017) ....................................................................................... 11

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*
152 F.3d 588 (7th Cir. 1998) ......................................................................................... 36

*In re Brand Name Prescription Drugs Antitrust Litig.*
288 F.3d 1028 (7th Cir. 2002) ....................................................................................... 15

*In re Canadian Imp. Antitrust Litig.*
470 F.3d 785 (8th Cir. 2006) .............................................................................. 31, 32, 35

*Chi. Studio Rental, Inc. v. Ill. Dep't of Commerce & Econ. Opportunity*
940 F.3d 971 (7th Cir. 2019) ......................................................................................... 33

*Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*
95 F.3d 593 (7th Cir. 1996) ........................................................................................... 11

*City of Coll. Station v. City of Bryan*
932 F. Supp. 877 (S.D. Tex. 1996) ................................................................................ 13

*City of Tuscaloosa v. Harcros Chemicals, Inc.*
158 F.3d 548 (11th Cir. 1998) .................................................................................. 20, 22

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*
60 F. Supp. 3d 914 (N.D. Ill. 2014), *aff'd sub nom.*, 801 F.3d 758 (7th Cir.
2015)..................................................................................................... 9, 13, 15, 23, 38

Davric Maine Corp. v. Rancourt
  216 F.3d 143 (1st Cir. 2000)........................................................................28

De Fillipo v. Ford Motor Co.
  516 F.2d 1313 (3d Cir. 1975) ......................................................................11

Drug Mart Pharm. Corp. v. Am. Home Prods., Corp.
  288 F. Supp. 2d 325 (E.D.N.Y. 2003).........................................................37

E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.
  365 U.S. 127 (1961)...............................................................................17, 18

Ehredt Underground, Inc. v. Commonwealth Edison Co.
  90 F.3d 238 (7th Cir. 1996) .........................................................................34

F.T.C. v. Indiana Fed'n of Dentists
  476 U.S. 447 (1986)......................................................................................10

In re First All. Mortg. Co.
  471 F.3d 977 (9th Cir. 2006) .......................................................................38

Greater Rockford Energy and Tech. Corp. v. Shell Oil Co.
  998 F.2d 391 (7th Cir. 1993) ..................................................................24, 26

H.L. Hayden Co. v. Siemens Medical Systems, Inc.
  879 F.2d 1005 (2d Cir. 1989) ......................................................................23

King v. Idaho Funeral Service Association
  862 F.2d 744 (9th Cir. 1988) .......................................................................26

Kleen Prods., LLC v. Georgia-Pacific LLC
  910 F.3d 927 (7th Cir. 2018) ..................................................................14, 15

Klor's, Inc. v. Broadway-Hale Stores, Inc.
  359 U.S. 207 (1959)......................................................................................10

Kochert v. Greater Lafayette Health Servs., Inc.
  463 F.3d 710 (7th Cir. 2006) ..................................................................27, 28

Korea Supply Co. v. Lockheed Martin Corp.
  29 Cal. 4th 1134 (2003) ...............................................................................38

Madrid v. Perot Sys. Corp.
  130 Cal. App. 4th 440 (2005) ......................................................................38

Maltz v. Sax
  134 F.2d 2 (7th Cir. 1943) ...........................................................................35

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574 (1986) ...................................................................................1, 8, 9, 13, 21

*McGlinchy v. Shell Chem. Co.*
    845 F.2d 802 (9th Cir. 1988) ..................................................................................... 37

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*
    708 F.2d 1081 (7th Cir. 1983), *cert. denied* 464 U.S. 891 (1983) ............................. 36

*Mercatus Grp., LLC v. Lake Forest Hospital*
    641 F.3d 834 (7th Cir. 2011) ..................................................................................... 18

*MetroNet Services Corp. v. Qwest Corp.*
    383 F.3d 1124 (9th Cir. 2004) ................................................................................... 11

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chic.*
    877 F.2d 1333 (7th Cir. 1989) ................................................................................... 37

*MM Steel, L.P. v. JSW Steel (USA) Inc.*
    806 F.3d 835 (5th Cir. 2015) ..................................................................................... 16

*Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*
    309 F. Supp. 2d 1156 (N.D. Cal. 2004), *aff'd*, 158 F. App'x 807 (9th Cir. 2005) .................... 35

*Monsanto Co. v. Spray-Rite Serv. Corp.*
    465 U.S. 752 (1984) .................................................................................................. 13

*Mozart Co. v. Mercedez-Benz of N. Am., Inc.*
    833 F.2d 1342 (9th Cir. 1987) ................................................................................... 17

*Name.Space, Inc. v. ICANN*
    795 F.3d 1124 (9th Cir. 2015) ................................................................................... 38

*Nat'l Black Expo v. Clear Channel Broad., Inc.*
    No. 03 C 2751, 2007 WL 495307 (N.D. Ill. Feb. 8, 2007) ........................................ 16

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*
    555 U.S. 438 (2009) ............................................................................................ 13, 33

*Palmer v. Marion County*
    327 F.3d 588 (7th Cir. 2003) ..................................................................................... 18

*Paramount Media Grp., Inc. v. Vill. of Bellwood*
    929 F.3d 914 (7th Cir. 2019) ..................................................................................... 34

*Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*
    460 F. Supp. 1060 (C.D. Cal. 1978) .......................................................................... 35

*Peerless Heater Co. v. Mestek, Inc.*
   No. CIV A. 98-CV-6532, 2000 WL 637082 (E.D. Pa. May 11, 2000) ..................................... 26

*Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Ass'n*
   672 F.2d 1280 (7th Cir. 1982) ..................................................................................... 10

*Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*
   No. C 08-4548 MHP, 2010 WL 145098 (N.D. Cal. Jan. 8, 2010) .............................................. 35

*RSA Media, Inc. v. AK Media Grp., Inc.*
   260 F.3d 10 (1st Cir. 2001) ................................................................................. 28, 30, 32

*Sanderson v. Culligan Intern. Co.*
   415 F.3d 620 (7th Cir. 2005) ..................................................................................... 19

*Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*
   40 F.3d 247 (7th Cir. 1994) ...................................................................................... 34

*Santana Prods. v. Sylvester & Assocs.*
   121 F. Supp. 2d 729 (S.D.N.Y. 1999) .............................................................................. 23

*Schachar v. Am. Acad. of Ophthalmology, Inc.*
   870 F.2d 397 (7th Cir. 1989) ..................................................................................... 19

*Schor v. Abbott Laboratories*
   457 F.3d 608 (7th Cir. 2006) ..................................................................................... 11

*Sheridan v. Marathon Petroleum Co., LLC*
   530 F.3d 590 (7th Cir. 2008) ..................................................................................... 27

*Tamburo v. Dworkin*
   601 F.3d 693 (7th Cir. 2010) ..................................................................................... 38

*In re Text Messaging Antitrust Litig.*
   782 F.3d 867 (7th Cir. 2015) ..................................................................................... 14

*United Mine Workers of Am. v. Pennington*
   381 U.S. 657 (1965) ............................................................................................... 18

*Valley Liquors, Inc. v. Renfield Importers, Ltd.*
   678 F.2d 742 (7th Cir. 1982) ..................................................................................... 27

*VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*
   No. 14-cv-804, 2015 WL 5693735 (N.D. Ill. Sept. 28, 2015) ............................................. 11, 13

*Verizon Commc'ns. Inc. v. Law Offices of Curtis V. Trinko LLP*
   540 U.S. 398 (2004) ............................................................................................... 11

PUBLIC VERSION

*Viamedia, Inc. v. Comcast Corp.*
   951 F.3d 429 (7th Cir. 2020) ................................................................ 10

*Wash. Cnty Health Care Auth., Inc. v. Baxter Int'l, Inc.*
   328 F. Supp. 3d 824 (N.D. Ill. 2018) ......................................... 10, 16, 24

*Weeks v. Samsung Heavy Industries Co., Ltd.*
   126 F.3d 926 (7th Cir. 1997) ................................................................ 18

*Weit v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago*
   641 F.2d 457 (7th Cir. 1981) ................................................................ 15

*In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*
   868 F.3d 132 (3d Cir. 2017) ....................................................28, 30, 31, 32

*Zenith Radio Corp. v. Hazeltine Research, Inc.*
   395 U.S. 100 (1969) ............................................................................ 24

<u>Statutes</u>

Cal. Bus. & Prof. Code § 16700 *et seq.* ..................................................... 38

Cal. Bus. & Prof. Code § 17200 *et seq.* ..................................................... 38

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 .................................... 34

Digital Millennium Copyright Act, 17 U.S.C. § 1201 ................................ 34

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat.
   501/1 *et seq.* ........................................................................................ 38

PUBLIC VERSION

## INTRODUCTION

At the motion to dismiss stage, this Court observed that "MVSC's allegations with respect to Reynolds's involvement in the alleged conspiracy are not robust." Dkt. 425 (Mem. Op. and Order) at 23. The undisputed facts now confirm that Reynolds was not involved in an alleged conspiracy to block MVSC's access to data on Reynolds's or CDK's DMS. Indeed, MVSC's entire case turns antitrust law on its head. MVSC is a dominant electronic vehicle registration and titling ("EVR") provider with over 60% market share in California (the largest EVR market) but alleges that it was a victim of a conspiracy that prevented it from becoming even more dominant in California and other EVR markets, and from charging higher prices sooner.

There is simply no evidence – let alone evidence that tends to exclude the possibility of independent action[1] – that Reynolds entered into any unlawful conspiracy with CDK to block MVSC's access to data. Reynolds never refused to deal with MVSC when it wanted to join the Reynolds Certified Interface ("RCI") program. ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████ In contrast, CDK rejected MVSC from its Third Party Access ("3PA") program, and then proposed pricing significantly different from what Reynolds proposed for RCI. ████████████████████████████

██████████████████████████████████████████

Reynolds also did not conspire with CDK to block MVSC's access to data through hostile integrators. █████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

---

[1]   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

PUBLIC VERSION



MVSC needs neither certified integration nor hostile integration to compete in any EVR market. MVSC can provide EVR services to dealers by obtaining data from a Reynolds or CDK DMS through free manual reporting tools built into the DMS, such as Reynolds's Dynamic Reporting or CDK's Dealer Data Access. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Manual reporting is and has always been available to MVSC and has never been blocked by Reynolds. ▮▮

MVSC's case makes no economic sense. It is impossible to reconcile the theory that Reynolds would conspire to block MVSC from RCI while simultaneously (1) ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and (2) permitting other competing EVR providers such as Title Technologies ("TitleTec") to join RCI ▮▮▮▮▮▮▮▮▮▮▮▮▮. Yet these are the undisputed facts. It also would make no sense for Reynolds to participate in a conspiracy to benefit CVR only to watch as CVR's market share steadily declined year over year while MVSC's ▮▮▮▮▮▮▮▮▮▮▮ ▮▮ in California. MSUF ¶ 62.[2] Given these circumstances, and the complete divergence of conduct

---

[2] "MSUF" refers to the Statement of Undisputed Material Facts in support of this motion; "JSUF" refers to Defendants' Joint Statement of Common Undisputed Material Facts in Support of Their Motions for Summary Judgment; "Ex." refers to the exhibits to the Declaration of Leo D. Caseria submitted in support of this motion, all filed concurrently.

between Reynolds and CDK with respect to MVSC, no reasonable factfinder could conclude that Reynolds conspired with CDK.

To the extent MVSC suffered any harm, there are obvious alternative causes. For example, MVSC's claimed damages in the Wisconsin and Illinois EVR markets are the result of those States' policies and procedures for authorizing new EVR providers, which created delays and obstacles for MVSC. Wisconsin never authorized MVSC to provide EVR services, and ███████████████ ██████████████████████████████████ None of this was the result of any conduct, let alone a conspiracy, involving Reynolds.

For these reasons, Reynolds's motion for summary judgment should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Electronic Vehicle Registration Services

MVSC provides EVR services to franchise new car dealers ("dealers") in California (since 2005), Oregon (since 2015), Virginia (since 2017), and Illinois (since 2018). MSUF ¶ 1. MVSC's web-based EVR applications ("apps"), DMVdesk and Vitu, allow dealers to electronically complete the state-mandated process of registering and titling vehicles sold at dealerships. MSUF ¶ 1, 2. MVSC dominates the California EVR market – the largest in the nation – with more than █ percent market share and continued growth. MSUF ¶¶ 62, 63. It competes with settling defendant CVR in California, Virginia, and Illinois. MSUF ¶¶ 1, 4.[3]

CVR was established in 1992 as an 80/20 joint venture between CDK and Reynolds, respectively. MSUF ¶ 3. ████████████████████████████████████████

█ CVR once provided EVR services in as many as █ states, but currently operates in 18. MSUF

---

[3]     In addition to MVSC and CVR: Cox's Dealertrack EVR app, Registration and Titling Services ("Dealertrack RTS"), operates in California; Dealertrack RTS and TitleTec operate in Virginia; and Dealertrack RTS and Electronic License Service ("ELS") operate in Illinois. MSUF ¶¶ 24, 37, 78.

PUBLIC VERSION

¶ 4. Aside from MVSC and CVR, competing EVR providers have included, for example: AIB, DDI Technology ("DDI"), DLRdmv, TitleTec, and Dealertrack RTS. *E.g.*, MSUF ¶¶ 24, 37-41.

EVR competition varies by state. EVR providers must first obtain state approval before providing EVR services in a particular state. MSUF ¶ 5. Each state's EVR approval process varies, and can be a lengthy process demanding significant state resources and multiple steps. *E.g.*, MSUF ¶¶ 5, 8, 67, 73. Fees for EVR services are regulated differently by state. MSUF ¶ 8.

Some states – including California, Illinois, and Virginia – require certain EVR transactions to occur at the point of sale, *i.e.*, during the sale of the vehicle at the dealership ("point-of-sale states"). MSUF ¶ 6. Others, like Wisconsin, do not. MSUF ¶ 7. California is now a point-of-sale state, but before January 2019, dealers had 90 days to complete registration and title following the completion of a sale. *Id.*

## II. Dealers' Access to Manual Reporting Tools Make It Impossible for Reynolds to Exclude MVSC from Any EVR Market

Three categories of data are needed to process EVR transactions: car buyer identification, vehicle identification, and financing information. MSUF ¶ 9. The data includes Personally Identifiable Information ("PII"), such as addresses and drivers' license numbers, and Non-Public Personal Information ("NPPI"), such as financing information, subject to various state and federal data protection and privacy laws. *Id.*

The data can be transmitted from a dealer's DMS to the dealer's EVR app in various ways: (1) through secure, certified integration from the DMS provider, *e.g.*, Reynolds's RCI or CDK's 3PA programs; (2) through manual reporting tools built into the DMS free of charge that allow dealers to export and send reports; and (3) by hostile integrators like Authenticom. MSUF ¶ 10.[4]

---

[4]    Hostile integrators ███████

████████████████████████████████████████████████ SUF ¶¶ 82, 140; *see also* MVSC Dkt. 76

PUBLIC VERSION

Manual reporting tools such as Reynolds's Dynamic Reporting or Query Builder, or CDK's Dealer Data Access, allow dealers to generate and export reports from the DMS to transmit (or "push") to third-party apps of their choosing, at no additional cost to the dealer or the third party. MSUF ¶ 10; JSUF ¶¶ 5, 22. ██████████████████████

███████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████

---

(Second Am. Compl., "SAC") ¶ 13 (defining "integrators"). ████████████████████

████████████████████████████████████

5 ████████████████████████████████████████████

██████████████████████████████████████

PUBLIC VERSION

**III.    Reynolds Never Refused to Deal with MVSC or Blocked MVSC from RCI**

Contrary to MVSC's core allegations, Reynolds never refused to deal with MVSC. ███

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ At no point was MVSC "blocked" from RCI.

███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

Reynolds provided prompt responses to MVSC's requests for fee proposals on multiple

combinations of RCI interfaces:

███████████████████████████████████████████

██████████████ █████████████████████████████████████

██████████████████████████████████

Other EVR providers in RCI that compete with MVSC and CVR ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

---

6 ████████████████████████████████████████████████████
████████████████████████████████

## IV. MVSC's Limited Use of Hostile Integrators to Access the Reynolds DMS

## V. MVSC's Lawsuit

MVSC filed its operative complaint, its third against CDK, CVR, and Reynolds (collectively, "Defendants") in November 2017. MVSC Dkt. 76 (SAC). The only claims still pending against Reynolds are based on an alleged conspiracy between Reynolds, CDK and/or CVR in violation of Sherman Act Sections 1 and 2 and related California and Illinois state laws. SAC ¶¶ 206-215; 233-240; 245-263.[8]

---

[8] MVSC's unilateral monopolization and attempted monopolization claims against Reynolds were previously dismissed and were not repleaded. MVSC Dkt. 73 (Order Granting in Part and Denying in Part Ds' Mtns. to Dismiss) at 9.

MVSC settled with CDK in October 2019, which resulted in dismissal of all claims against both CDK and CVR. Dkt. 778 (Stip. of Dismissal). MVSC subsequently joined 3PA. MSUF ¶ 80.

Although MVSC only alleges claims based on the California and Illinois EVR markets in its SAC, *e.g.*, SAC ¶¶ 64, 234-239, its expert Gordon Klein ███████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████[9]

## ARGUMENT

### I.   MVSC Cannot Establish a Conspiracy Involving Reynolds

MVSC alleges that Reynolds conspired with CDK and/or CVR to: (1) block MVSC's access to data through 3PA and RCI; (2) block MVSC's access to data through hostile integrators; and (3) communicate to dealers, dealer associations, and state governments that MVSC's product is inferior to CVR's because it lacks certified integration. Ex. 4, Klein Rpt. ¶¶ 12-16, 26.

Summary judgment should be granted for Reynolds because MVSC cannot present evidence that "tends to exclude the possibility that the alleged conspirators acted independently." *Matsushita*, 475 U.S. at 588 (internal quotations omitted). "[C]onduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy." *Id.* at 588. *See also In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 947 (N.D. Ill. 2014) (Dow, J.), *aff'd sub nom.*, 801 F.3d 758 (7th Cir. 2015).[10]

---

[9]   Summary judgment should also be granted dismissing MVSC's claims based on the Virginia and Wisconsin EVR markets for the reasons set forth in Reynolds's Motion to Bar MVSC's Newly Disclosed Claims Based on the Virginia and Wisconsin EVR Markets ("Mtn. to Bar"). Dkt. 789.

[10]   MVSC's group boycott claim is subject to the rule of reason which is the "standard framework" under Section 1. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). The *per se* standard is limited to group boycotts among *competitors* targeting *another competitor at that same level*. *E.g.*, *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458 (1986) (not all group boycotts are *per se* unlawful; *per se* applies only in limited context where competing firms conspire with one another to engage in anticompetitive conduct to target a fellow competitor); *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Ass'n*, 672 F.2d 1280, 1284-85 (7th Cir. 1982) (accord). Here, the rule of reason applies because MVSC

A.     **Reynolds Did Not Conspire with CDK to Block MVSC from RCI and 3PA**

1.     **Reynolds Did Not Refuse to Deal with MVSC**

MVSC cannot establish that Reynolds participated in a conspiracy to block MVSC from RCI and 3PA because ████████████████████████████████████████████████████████████

████████ Reynolds never took action to achieve the object of the conspiracy, which establishes that there was no conspiracy. *See Wash. Cnty Health Care Auth., Inc. v. Baxter Int'l, Inc.*, 328 F. Supp. 3d 824, 836 (N.D. Ill. 2018) ("*Baxter Int'l*") ("It is hardly plausible to infer that, having supposedly agreed on a scheme to create a shortfall by means of bogus product recalls, the defendants then sat on their hands for the next 16 months without making any product recalls.").

It is undisputed that Reynolds never expressly rejected or blocked MVSC from RCI. *See* SAC ¶¶ 126-27. ████████████████████████████████████████████████████

███████████████████████████████████ To try and get around this inconvenient fact, MVSC argues that the fees quoted by Reynolds were so "economically unfeasible" for MVSC as to constitute an "effective" refusal to deal. SAC ¶ 126. The evidence does not support such a claim.

An "effective" refusal to deal requires evidence that Reynolds offered MVSC <u>discriminatory</u> prices higher than what Reynolds offered other EVR providers; a refusal to give plaintiff special discounted terms is not actionable. *See, e.g.*, *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 209, 213 (1959) (concerted refusal to deal claim survived summary judgment where the conspiracy prohibited participants from selling to plaintiff "at the same prices and conditions made available" to plaintiff's competitor); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 463 (7th Cir. 2020) (a "key element[]" of a refusal to deal claim is a "refusal to sell to rivals on same terms as

---

alleges a conspiracy between Reynolds and CDK as DMS providers, to agree to "block" MVSC, a downstream EVR provider that is not a DMS competitor, from certified integration. The rule of reason also applies for the reasons set forth in Defendants' Motion for Summary Judgment in *Authenticom* ("*Authenticom* MSJ"), Argument section II.C, filed concurrently.

other potential buyers."); *Schor v. Abbott Laboratories*, 457 F.3d 608, 610 (7th Cir. 2006) ("[Defendant] will sell to anyone willing to pay its price: there is no refusal to deal.").[11]

Courts require proof of discriminatory terms because any other theory of refusal to deal would require courts to act as "central planners, identifying the proper price, quantity, and other terms of dealing" between private parties, a role for which courts are "ill suited." *Verizon Commc'ns. Inc. v. Law Offices of Curtis V. Trinko LLP*, 540 U.S. 398, 408 (2004). "[T]he antitrust laws do not deputize district court judges as one-man regulatory agencies" to determine when fees are "excessive." *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 95 F.3d 593, 597 (7th Cir. 1996); *see also VBR Tours, LLC v. Nat'l R.R. Passenger Corp.*, No. 14-cv-804, 2015 WL 5693735, at *8 (N.D. Ill. Sept. 28, 2015) (Dow, J.) ("A claim involving a refusal to deal at a certain price is ill-suited to judicial resolution.").

Indeed, the Seventh Circuit previously vacated a preliminary injunction in plaintiff Authenticom's favor for similar reasons, holding that the lower court could not force Reynolds and CDK to do business with Authenticom "on terms to which they did not agree." *Authenticom, Inc. v. CDK Global, Inc*., 874 F.3d 1019, 1026 (7th Cir. 2017). The same holds true for MVSC.



---

11   *See also MetroNet Services Corp. v. Qwest Corp.*, 383 F.3d 1124, 1133 (9th Cir. 2004) (no actionable refusal to deal claim because defendant "has not refused to sell . . . to MetroNet . . . on the same terms that it sells to direct consumers."); *De Fillipo v. Ford Motor Co.*, 516 F.2d 1313, 1320 (3d Cir. 1975) (no concerted refusal to deal where plaintiffs were not deprived of the opportunity to "purchase products on the same basis as other dealers").

PUBLIC VERSION



[13] There is no objective, non-speculative evidence from which a fact-finder could infer that it would be unprofitable or unfeasible for MVSC to operate under the RCI prices proposed by Reynolds and paid by other EVR providers.

Regardless, the antitrust laws do not require Reynolds to offer MVSC lower prices than those offered others, or to "deal under terms and conditions that [MVSC] find[s] commercially advantageous." *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 450 (2009). MVSC's desire for cheaper access to Reynolds DMS so as to achieve its desired profits is not an actionable

PUBLIC VERSION

antitrust claim. *VBR Tours*, 2015 WL 5693735, at *7 (no duty to deal at the other party's "desired price"); *City of Coll. Station v. City of Bryan*, 932 F. Supp. 877, 888 (S.D. Tex. 1996) (the reasonableness of defendant's terms "cannot be read to mean that the courts will secure a better deal for an antitrust plaintiff" to ensure a profit). The issue is not whether MVSC deemed Reynolds's fees to be "economically unfeasible" under its business model, but whether MVSC can establish that those fees were discriminatorily higher than fees offered other EVR providers. MVSC cannot.

### 2. Reynolds Did Not Conspire with CDK

For MVSC's concerted refusal to deal claim to survive summary judgment, MVSC not only needs evidence from which a jury could reasonably infer a refusal to deal (which is lacking for the reasons described above), MVSC must also present evidence from which a jury could reasonably infer that Reynolds's conduct was the product of an unlawful agreement with CDK. In other words, MVSC must point to evidence that Reynolds and CDK had a "conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 768 (1984); *In re Dairy Farmers,* 60 F. Supp. 3d at 949 ("a unity of purpose" or "meeting of minds" required) (internal quotations omitted). To survive summary judgment, such evidence must affirmatively exclude the possibility of independent conduct. *Matsushita*, 475 U.S. at 588. Such evidence is absent here.

Reynolds's and CDK's responses to MVSC's efforts to join RCI and 3PA were not parallel or coordinated in the least. The companies had completely different strategies when it came to dealing with CVR's competitors. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

PUBLIC VERSION

MSUF ¶ 53. Even MVSC itself acknowledged this critical difference between CDK and Reynolds:



Consistent with the parties' lack of agreement and difference in business strategy, MVSC's negotiations with CDK to participate in 3PA bore no resemblance to MVSC's negotiations with Reynolds to participate in RCI. For example,

Unable to establish even parallel conduct, MVSC's group boycott / concerted refusal to deal claim cannot survive summary judgment. *See Kleen Prods., LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 936 (7th Cir. 2018) (affirming summary judgment for defendants where "a close look at the record reveals that [plaintiffs] overstate how coordinated" defendants' conduct was); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 877 (7th Cir. 2015) ("[T]he four defendants in this case did not move in lockstep. For months on end there were price differences in their services.").

The Second Circuit's decision in *Anderson News, LLC v. American Media, Inc.*, 899 F.3d 87 (2d Cir. 2018), is instructive. Plaintiff Anderson News alleged a group boycott among defendants to drive plaintiff out of business. *Id.* at 105. But the undisputed evidence at summary judgment showed lack of parallel conduct: Some defendants refused outright to deal with plaintiff, others tried to negotiate, and still others agreed to continue doing business with plaintiff on a temporary basis. *Id.* In affirming summary judgment for the defendants, the court held that these "varying courses of

action [ ] undermines Anderson's assertion that defendants' 'parallel' conduct supports an inference of a conspiracy to drive Anderson out of business." *Id*. Reynolds's and CDK's conduct vis-à-vis MVSC was just as varied as the defendants in *Anderson News*; and there is no evidence here excluding the possibility of independent conduct from which a jury could infer agreement.

MVSC has pointed out the unremarkable fact that Reynolds and CDK occasionally met and/or communicated about CVR, their joint venture. But discussions about a lawful joint venture do not violate the antitrust laws or give rise to an inference of wrongdoing. *E.g.*, *Kleen Prods.*, 910 F.3d at 938 (when companies have legitimate business reasons to communicate, the mere fact of those communications does not imply any wrongdoing); *Weit v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago*, 641 F.2d 457, 462 (7th Cir. 1981) (meetings "lack[ed] significant probative value" where competitors were involved in venture requiring "some degree of cooperation"); *In re Dairy Farmers*, 60 F. Supp. 3d at 959 (neither opportunities to collude during meetings between alleged conspirators nor speculation as to the substance of those meetings are sufficient to raise a genuine issue for trial).

## B. Reynolds Did Not Conspire to Block MVSC's Access to Hostile Integrators

MVSC alleges that Reynolds conspired with CDK to block MVSC's access to data through hostile integrators. *E.g.*, SAC ¶¶ 173; Ex. 1, Israel Rpt. ¶ 161. This claim fails for the reasons set forth in Defendants' *Authenticom* MSJ; ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████. JSUF ¶¶ 80-88; *Authenticom* MSJ, Background section B.

In addition, like the other aspects of MVSC's alleged conspiracy, the stark contrast between Reynolds's and CDK's actions with respect to MVSC illustrates a lack of parallel conduct and lack of agreement.████████████████████████████████

███████████████████████████████████████████████████

PUBLIC VERSION

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

████████████ *See In re Brand Name Prescription Drugs Antitrust Litig.*, 288 F.3d 1028, 1034 (7th Cir. 2002) (theory that defendants joined conspiracy was "particularly shaky" because allegedly conspiratorial policy "was adopted before the alleged collusion of the manufacturers began"); *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 845-47 (5th Cir. 2015) (where first refusal to deal occurred before alleged conspiracy, later refusals were "consistent with its original decision not to deal" and thus could not support group boycott claim); *Baxter Int'l*, 328 F. Supp. 3d at 836 (implausible to allege that defendants agreed to a common scheme, but then "sat on their hands" for many months without carrying out the alleged scheme).

### C. Reynolds Did Not Conspire as to Messaging About MVSC or CVR, Which, in Any Event, Is Not Actionable Under the Antitrust Laws

MVSC alleges that Reynolds conspired to spread negative messages about MVSC ████ ████████████████████████████████ in order to promote CVR and discourage state regulators from approving MVSC as an EVR provider. Ex. 4, Klein Rpt. ¶ 26; Ex. 7, J. Nemelka Decl. ¶¶ 19, 22.[14] Such a marketing / lobbying conspiracy did not occur, and even assuming it did, it is not actionable under the antitrust laws.

████████████████████████████████

████████████████████████████████

---

[14] ████████████████████████████████
████████████████████████████████
████████████████████████████████

-16-



Regardless, any effort to promote CVR, whether at MVSC's expense or not, and whether undertaken unilaterally or collectively among joint venturers, is not actionable under the antitrust laws. As Judge Dale Fischer of the Central District of California previously recognized in this case:

> CVR's advertising and customer outreach efforts are consistent with legitimate competitive activity . . . . And that CVR engages in aggressive marketing including leveraging its access to CDK's and Reynolds'[s] data, appears consistent with legitimate competitive actions.[15]

There is nothing unlawful about market participants (much less joint venturers) coming together to discuss joint messaging. *Nat'l Black Expo v. Clear Channel Broad., Inc.*, No. 03 C 2751, 2007 WL 495307, at *10 & n.8 (N.D. Ill. Feb. 8, 2007) (joint venturer's efforts "to promote the joint venture, is not illegal conduct, but merely part of the definition of a joint venture.").

Likewise, to the extent MVSC claims that Reynolds conspired to

Ex. 7, J. Nemelka Decl. ¶ 22, is not supported by the record. These kinds of

---

[15]   MVSC Dkt. 73 (Order Granting in Part and Denying in Part Ds' Mots. to Dismiss) at 10 (Fischer, J.), citing *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1379 (9th Cir. 1989) ("[T]he goal of prevailing against all competitors is the very essence of a competitive marketplace."); *Mozart Co. v. Mercedez-Benz of N. Am., Inc.*, 833 F.2d 1342, 1352 (9th Cir. 1987).

opinions and self-serving statements are insufficient to defeat summary judgment. *Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("This Court, on numerous occasions, has made it clear that self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment."); *Weeks v. Samsung Heavy Indus. Co.*, *Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997) ("As we have repeatedly explained, a plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.").

Regardless, such conduct would be petitioning activity protected by the First Amendment and immunized from antitrust liability under the *Noerr-Pennington* doctrine. *E. R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 145 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965).

This Circuit's *Mercatus Grp., LLC v. Lake Forest Hospital*, 641 F.3d 834 (7th Cir. 2011), is directly on point. After failing to obtain zoning approval to develop a physician center, plaintiff sued defendant hospital, alleging a multipronged campaign to block development of the physician center that would have competed with defendant by: (1) lobbying members of the local zoning board to reject plaintiff's plans; (2) launching a broad PR campaign disparaging plaintiff and encouraging the local community to voice their concerns to the board; and (3) making derogatory and allegedly false statements about plaintiff to local healthcare providers. *Mercatus*, 641 F.3d at 838. Defendant's alleged efforts were successful; the zoning board rejected plaintiff's development plans and local physician groups refused to work with plaintiff. *Id.*

In affirming summary judgment for defendant, the Seventh Circuit held that each type of conduct alleged above was not actionable under the antitrust laws. First, lobbying the board to reject plaintiff's plans was protected petitioning activity under *Noerr-Pennington*. *Id.* at 841-849. Second, a broad PR campaign disparaging plaintiff's plans and encouraging community members to voice

their opposition to the board was similarly protected under *Noerr-Pennington*, even if it caused injury independent of the board's denial (such as causing third parties to refuse to do business with plaintiff). *Id.* at 849-50.[16] Third, commercial speech disparaging a competitor's services in order to tout one's own is not actionable under the antitrust laws: "Antitrust law does not compel your competitor to praise your product or sponsor your work. To require cooperation or friendliness among rivals is to undercut the intellectual foundations of antitrust law." *Id.* at 851 (internal citation and quotation marks omitted). *See also Sanderson v. Culligan Intern. Co.*, 415 F.3d 620, 624 (7th Cir. 2005) (accord); *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 400 (7th Cir. 1989) (remedy for allegedly anticompetitive speech "is not antitrust litigation but more speech – the marketplace of ideas").

### D. MVSC Has Abandoned Its Claim Based on a Conspiracy to Block Access to Manual Reporting and There Is No Evidence to Support It

The SAC includes conclusory allegations that Reynolds conspired with CDK to block MVSC's access to manual reporting tools. SAC ¶¶ 172-179. MVSC has since abandoned this claim because ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

---

[16] *See also Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499-500 (1988) ("A publicity campaign directed at the general public, seeking legislation or executive action, enjoys antitrust immunity even when the campaign employs unethical and deceptive methods."); *Noerr Motor Freight*, 365 U.S. at 143 ("It is inevitable, whenever an attempt is made to influence legislation by a campaign of publicity, that an incidental effect of that campaign may be the infliction of some direct injury upon the interests of the party against whom the campaign is directed.").

PUBLIC VERSION

███████████████████████████████████████████████████

████████████████████████████████████████ MVSC has succeeded in the

California and Virginia EVR markets *because* of manual reporting. *See infra* at Argument section

II.A.

### E.    MVSC's Theory of the Conspiracy Makes No Sense

"Antitrust claims must make economic sense." *Adaptive Power Solutions, LLC v. Hughes*

*Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998) (citing *Eastman Kodak Co. v. Image Technical*

*Servs. Inc.*, 504 U.S. 451, 468 (1992)). "[I]f the alleged conspiracy is economically infeasible or

irrational then, as a matter of law, summary judgment must be entered against the plaintiff." *City of*

*Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 569 n.29 (11th Cir. 1998) (internal quotation

marks and citation omitted).

MVSC's allegation that Reynolds conspired to harm MVSC to benefit CVR and give CVR

an EVR monopoly is implausible in light of the evidence.

First, if this were the goal, it would make no economic sense for Reynolds ███████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████ No rational actor would enter into a conspiracy to assist its minority-owned joint venture and

then not actually take action to assist it.

PUBLIC VERSION

Second, it would be economically senseless to participate in a conspiracy that resulted in MVSC gaining significant market share and CVR losing significant market share. ██████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

These undisputed facts do not reasonably suggest the existence of a conspiracy to harm MVSC or benefit CVR, just as similar facts did not in *Matsushita*. In *Matsushita*, plaintiffs alleged that defendants engaged in a conspiracy to drive American television manufacturers from the market. The Supreme Court explained that when the "factual context renders [a conspiracy] claim implausible," the plaintiff "must come forward with more persuasive evidence to support [its] claim than would otherwise be necessary." 475 U.S. at 587. Such evidence was found to be lacking. The Court noted that after many years, the alleged conspiracy had failed to drive American television manufacturers from the market, and indeed, American firms, including plaintiff Zenith, continued to be the market share leaders: "the two largest shares of the retail market in television sets are held by RCA and respondent Zenith, not by any of [the] petitioners." *Id.* at 591. According to the Court, the

---

[17] ████████████████████████████████████████████
██████████████████████████████████████████████

PUBLIC VERSION

conspiracy's failure was "strong evidence that the conspiracy does not in fact exist." *Id*. at 592. Similarly, MVSC's alleged conspiracy is implausible given that (1) MVSC itself is the market share leader in California, and (2) ███████████████████████████████████████████

████████████ MSUF ¶¶ 24, 37, 39, 62-63, 79. *See also City of Tuscaloosa*, 158 F.3d at 568 (affirming summary judgment in part because "participation in a conspiracy that garnered . . . zero or near-zero market shares would be irrational.").

Third, Reynolds admitted many other EVR providers into RCI – ████████████████████

███████████████████████████, of which five joined: TitleTec, AIB, DLRdmv, ADD, and DDI. MSUF ¶¶ 37-41.[18] None have been blocked. TitleTec competes with CVR in six states (twice as many as MVSC), ████████████████████████████████████████████████

███████████████████████████████████████ Reynolds perceived Dealertrack RTS, which competed with CVR in 12 states, ███████████████████████ MSUF ¶ 24. DLRdmv has been in RCI ████████ and competes with CVR in Georgia and Florida; it has been the market leader in Florida since 2018. MSUF ¶ 39.

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████ To the extent that MVSC asserts that Defendants' conspiracy only targeted MVSC because it posed the strongest competitive threat to CVR, this makes no sense as to Reynolds given, for example, that (1) ████████

█████████████████████████████████████████████████

██████████████████; (2) ████████████████████████████████████████████

---

18  ████████████████████████████████████████████

████████████████████████████; and (3) in 2014, the six states that CVR competed in with TitleTec represented significantly more EVR transactions than California where CVR competed with MVSC. MSUF ¶ 44.

Additionally, a conspiracy specifically for the purpose of giving CVR a monopoly (which is what MVSC alleges in its remaining Sherman Act Section 2 claim, SAC ¶¶ 234-240) cannot succeed, and makes no sense, if the conspiracy only targets a single CVR competitor. *See, e.g.*, *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1019 (2d Cir. 1989) (affirming summary judgment on conspiracy to monopolize claim where evidence only showed conspiracy to exclude two competitors: "proof of a conspiracy to monopolize the national market for dental equipment . . . is a more daunting undertaking than proof of a plot to eliminate a pair of related competitors."); *Santana Prods. v. Sylvester & Assocs.*, 121 F. Supp. 2d 729, 736-37 (S.D.N.Y. 1999) (a conspiracy to monopolize an entire market requires more than anticompetitive conduct directed at one competitor). CVR faced EVR competitors other than MVSC in California and Illinois, MSUF ¶¶ 24, 78, hence Reynolds could not have conspired to create or maintain a monopoly for CVR in those markets by blocking only one CVR competitor, yet that is what MVSC claims. *See In re Dairy Farmers*, 60 F. Supp. 3d at 961 (rejecting inference that defendant "would have incurred the risk of participating in an illegal conspiracy," with only the possibility of speculative future gains to offset those risks).[19]

Finally, Reynolds did not have any rational incentive to participate in a lopsided agreement and take on the risk of an unlawful scheme in which its competitor CDK ██████████████ ████████████████████████████████████████████████████ ████████████████████████████████ It is not economically rational that Reynolds

---

[19]    To the extent MVSC asserts conspiracy to monopolize claims based on the Virginia or Wisconsin EVR markets, those claims were not asserted in the SAC and should be dismissed. Dkt. 789 (Mtn. to Bar).

would participate in a conspiracy giving a "lop-sided benefit to its competitor." *Baxter Int'l*, 328 F. Supp. 3d at 837 (dismissing conspiracy claim regarding bogus recalls, holding that "[i]t makes little sense" that one conspirator "would agree to recall eight times as much product" as the other).

## II. MVSC Suffered No Harm Caused by an Alleged Conspiracy

Summary judgment should also be granted for Reynolds because MVSC is unable to point to any facts to establish that a conspiracy involving Reynolds was a substantial factor in causing injury to MVSC. "[P]laintiff must establish, with a fair degree of certainty, that the violation was a material element of, and substantial factor in producing, the injury. The proof required to show causation of damages is greater than that required to prove the amount of damages . . ." *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 401 (7th Cir. 1993) (affirming summary judgment where intervening factors barred plaintiff from establishing that alleged antitrust violations were the but-for cause of plaintiffs' injuries) (emphases and internal citations omitted).[20]

### A. MVSC Succeeded in the California and Virginia EVR Markets Because of Manual Reporting

MVSC cannot establish that it was harmed by the alleged conspiracy. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[20] *See also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 126-27 & 114 n.9 (1969) (Section 4 requires an injury to plaintiff's "business or property by reason of anything forbidden in the antitrust laws"; if plaintiff's harm is attributable to its lack of desire, limited production capabilities, or other independent factors, plaintiff fails its burden).

██████. Indeed, MVSC has not only not been harmed, it has *succeeded* in the California and

Virginia EVR markets using Reynolds's and CDK's free manual reporting tools, ████████

████, even after California became a point-of-sale state. MSUF ¶¶ 11, 62-64. The uninterrupted

availability of manual reporting thus destroys any causal link between MVSC's claimed injuries and

an alleged conspiracy, in <u>any</u> state.

<ol start="1">
<li>

**MVSC Achieved a Leading ███ Market Share in California While CVR's Share Decreased**

</li>
</ol>

MVSC has conceded from the beginning of this case that manual reporting, which it has

always had access to, was all it needed to compete in the California EVR market:

> Real-time access to dealer data (and participation in the 3PA and RCI programs) has therefore not been necessary in California. Instead, MVSC was able to obtain the required dealer data by other means . . . .

MSUF ¶ 11 (citing SAC ¶ 9).[21]

Undisputed evidence only confirms MVSC's lack of injury in California. Using Reynolds's

free manual reporting tools, MVSC overtook CVR to become the leading EVR provider in California

as early as April 2014, the beginning of the alleged conspiracy period. MSUF ¶ 63. As MVSC's own

damages expert describes it, ███████████████████████████████████

███████████████████████████ That trend has continued without interruption, all

without certified integration or the use of hostile integrators to access the Reynolds DMS.

Indeed, manual reporting was not merely a sufficient or adequate alternative, it was an

alternative that helped MVSC achieve a dominant position in the California EVR market while

reducing costs and maximizing its profits. ████████████████████████

---

[21]  Manual reporting is all that MVSC needs to compete in Wisconsin which, like California before 2019, is not a point-of-sale state. MSUF ¶ 7.



As of January 1, 2019, California requires EVR transactions to be processed at the point of sale. MSUF ¶ 6. Previously, it was not a point-of-sale state. MSUF ¶ 7. ███████████████████████

After ████████" CVR, and becoming the 800-pound gorilla in California, MVSC now seeks millions in antitrust damages because it was purportedly blocked from competing with CVR. No reasonable jury could agree with MVSC on these facts. *E.g.*, *King v. Idaho Funeral Serv. Ass'n*, 862 F.2d 744, 745-46 (9th Cir. 1988) (affirming summary judgment for defendants on group boycott claim because plaintiff's sales had increased steadily throughout the alleged conspiracy period: "[T]he record clearly reflects that plaintiffs' casket sales constantly increased throughout the entire period the [plaintiffs] were in business, negating any conclusion of injury caused by defendants."); *Peerless Heater Co. v. Mestek, Inc.*, No. CIV A. 98-CV-6532, 2000 WL 637082, at *8 (E.D. Pa. May 11, 2000) (granting summary judgment because plaintiff could not prove injury to competition where its market share, sales, and profits had steadily increased throughout the relevant period).[22]

---

[22]    As set forth in Reynolds's Motion to Exclude the Opinions and Proffered Testimony of MVSC's Expert Gordon Klein ("*Daubert* Mtn. to Exclude Klein") (Dkt. 865), there is insufficient evidence to establish with "a fair degree of certainty" that specific California dealers refrained from using MVSC because of Reynolds's allegedly unlawful conspiracy. Mr. Klein's "expert" opinion regarding causation in California is based on

PUBLIC VERSION

### 2. MVSC Raised Prices in the Virginia EVR Market from ███ to ███

There is no evidence that MVSC has suffered any injury in the Virginia EVR market. From the moment that MVSC entered Virginia in ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████ – which is a point-of-sale state like California – indicates that it exerts market power there. *See Sheridan v. Marathon Petroleum Co., LLC*, 530 F.3d 590, 594 (7th Cir. 2008) (market power is "significant unilateral power over the market price"); *Valley Liquors, Inc. v. Renfield Imp., Ltd.*, 678 F.2d 742, 745 (7th Cir. 1982) (market power is the "power to raise prices significantly above the competitive level without losing all of one's business.").

MVSC exercised this market power in Virginia using manual reporting tools, ████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████ Summary judgment should be granted as to MVSC's claims arising from the Virginia EVR market because it was not harmed in that market. *See Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 716-18 (7th Cir. 2006) (affirming summary judgment where plaintiff's evidence failed to establish alleged

---

nothing more than the say-so of MVSC's COO Joe Nemelka. *Id.* at 14-17.

anticompetitive conduct caused plaintiff's claimed injuries); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 149 (1st Cir. 2000) (summary judgment was proper because plaintiff was "unable to demonstrate any injury at all" where defendant's alleged anticompetitive conduct did not result in any foreclosure).

### B. MVSC's Difficulties Entering the Wisconsin and Illinois EVR Markets Were Due to State Action

The State of Wisconsin has never authorized MVSC to provide EVR services, and the State of Illinois ███████████████████████████████████████████████████████████ ████████████████████████████████████████ To the extent MVSC claims it was harmed in these state EVR markets, a conspiracy involving Reynolds was not the cause. Instead, there is an obvious alternative cause – state action.

Reynolds cannot be held liable for state rules and regulations about whether and when to authorize new EVR providers. If a state imposed barriers to MVSC's entry into that state's EVR market, then that state is the cause of MVSC's purported lost profits there, not Reynolds. *See, e.g.*, *In re Wellbutrin XL Antitrust Litig. Indirect Purchaser Class*, 868 F.3d 132, 165 (3d Cir. 2017) (affirming summary judgment on causation grounds, explaining "That a regulatory or legislative bar can break the chain of causation in an antitrust case is beyond fair dispute."); *RSA Media, Inc. v. AK Media Grp., Inc.*, 260 F.3d 10, 15 (1st Cir. 2001) (affirming summary judgment on causation grounds where plaintiff was not excluded from market by defendant's threats, but by state regulatory scheme).

### 1. Wisconsin Was Not Accepting New EVR Providers

Although MVSC is not an authorized EVR provider in Wisconsin, MVSC claims that but for the alleged conspiracy, ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████ Ex. 4, Klein Rpt. ¶¶ 45-46, 110, 119; Ex.

5, Klein Reply Rpt., Exhibit A. But documents that Reynolds obtained from the State of Wisconsin through a FOIA request – which included communications between MVSC and the State that MVSC failed to produce – show otherwise.

In June 2013, when MVSC first reached out to Wisconsin about becoming an authorized EVR provider, State officials explained that Wisconsin "rarely add[s] new vendors due to the massive start-up resources we need to dedicate from our side." MSUF ¶ 66.

MVSC ignored the warning and submitted a formal application to the State DMV in ███, which the DMV denied in August 2014 because: (1) the amount of technical support MVSC would likely need from the State DMV was too much; and (2) the DMV did not perceive any benefit to the DMV or Wisconsin consumers from adding an additional EVR provider. MSUF ¶ 67.[23] MVSC was not the only EVR provider to be denied by the State of Wisconsin; six other EVR providers expressed interest in entering the Wisconsin EVR market but were rejected by the State. MSUF ¶ 68.[24] Reynolds does not make these decisions, nor is there any evidence in the record that it has attempted to influence them.[25]

In a 2017 letter, Wisconsin's DMV explicitly stated that Wisconsin had been and was still closed to all new EVR providers:

---

[23]   CVR and Dealertrack RTS were already EVR providers in Wisconsin. Wisconsin also provides its own free EVR app, e-MV11. MSUF ¶ 71.

[24]   The DMV rejected the applications of three vendors on the same bases it denied MVSC, *i.e.*, the amount of DMV resources it would require and the lack of anticipated benefit to the DMV or consumers. The DMV told three other vendors to not even bother applying. MSUF ¶ 68.

[25]   MVSC claims in conclusory terms that Defendants ███████████████████ ███████████████████████ Ex. 7, J. Nemelka Decl. ¶ 22, but there is no evidence to substantiate the claim. The claim is also contradicted by the State's affirmative representations that it was impressed with MVSC's innovative EVR app. MSUF ¶ 70. ████████████████████████████████████████████ ██████████ *d*. And, MVSC has already conceded that it did not even need certified integration in states like Wisconsin without point-of-sale requirements. MSUF ¶ 11. Finally, assuming for the sake of argument that Reynolds did in fact conspire to spread such "███████" to Wisconsin State officials, that conduct is immunized from antitrust liability under *Noerr-Pennington*. *See supra* at Argument section I.C.

> In recent years you [MVSC] have requested to partner with the Wisconsin Department of Transportation . . . . **At the time of your request the department was not accepting new vendors into [its] program**. I'm pleased to announce the department will be embarking on a new path that will allow additional vendors to participate in this program.
>
> * * *
>
> We are still developing a definitive timetable, but **our goal to implement new vendors into the program is early 2019**.

MSUF ¶ 69 (emphases added). In March 2019 (the last known update), Wisconsin pushed back its projection and anticipated being able to accept new EVR applications in fall 2019. *Id.*

As these undisputed facts show, Wisconsin was closed to new EVR providers because of a policy that had nothing to do with any alleged conspiracy involving Reynolds. MVSC's expert Mr. Klein conceded ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████

As explained in *RSA Media,* where a plaintiff is not excluded from the relevant market because of defendant's alleged exclusionary conduct, but because of a state regulatory scheme, summary judgment is warranted: "Any injury suffered by [plaintiff] is therefore unrelated to [defendant's] allegedly exclusionary conduct[.]" 260 F.3d at 15. There, a billboard operator alleged that the dominant billboard operator coerced property owners into refusing to lease billboard space to plaintiff, thereby precluding plaintiff from competing effectively. *Id.* at 11-13. The court found, however, that state and local regulations made it nearly impossible to obtain the necessary permits to erect new billboards. Even assuming that defendant's conduct was exclusionary, the court held that the regulatory scheme was what excluded plaintiff from the market. *Id.* at 15. *See also In re Wellbutrin XL Antitrust Litig.*, 868 F.3d at 165 ("That a regulatory or legislative bar can break the chain of causation in an antitrust case is beyond fair dispute."); *In re Canadian Imp. Antitrust Litig.*, 470 F.3d 785, 791 (8th Cir. 2006) (no injury was caused by defendants' alleged conduct; absence of

PUBLIC VERSION

competition was instead due to the statutory scheme adopted by the federal government). Similarly, MVSC's allegations about Defendants blocking MVSC from accessing DMS data did not preclude MVSC from competing in the Wisconsin market; decisions by the State of Wisconsin prevented MVSC from entering the Wisconsin EVR market.[26]

### 2. Illinois's ███████

MVSC did not begin providing EVR services in Illinois ███████, yet MVSC claims that but for Defendants' anticompetitive conduct, ███████████████████ ███████████████. Not so. The delays MVSC experienced in Illinois were caused by the State's ██████████████████, not a conspiracy. MVSC could not have entered Illinois any sooner.



---

[26] MVSC's expert's opinion as to causation in the Wisconsin market is inadmissible because he failed to consider critical evidence that the State of Wisconsin was closed to new EVR providers. Dkt. 865 (*Daubert* Mtn. to Exclude Klein) at 17-20.

PUBLIC VERSION

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████ by the end of December 2017, MVSC had been approved to process EVR transactions in Illinois, ████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████ Decisions by the State of Illinois, not a conspiracy, prevented MVSC from entering the Illinois market sooner. *RSA Media, Inc.*, 260 F.3d at 15; *Wellbutrin XL Antitrust Litig.*, 868 F.3d at 165; *In re Canadian Imp.*, 470 F.3d at 791 (discussed *supra* at 30-31).

## III.   MVSC Cannot Establish Antitrust Injury

### A.   The Harm MVSC Alleges Is Not an Antitrust Injury and Regardless, Harm to MVSC Is Not Harm to Competition

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

PUBLIC VERSION

████████████████████████████████████████████

████████, is not an antitrust injury; the antitrust laws impose "no obligation" on a firm "to deal under terms and conditions favorable to its competitors," *Linkline Commc'ns*, 555 U.S. at 451, or on its rival's "preferred" terms, *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016).

Even if MVSC can establish harm to itself caused by a conspiracy involving Reynolds (it cannot), harm to a single competitor is not harm to competition. *Chi. Studio Rental, Inc. v. Ill. Dep't of Commerce & Econ. Opportunity*, 940 F.3d 971, 978 (7th Cir. 2019) (St. Eve, J.) (antitrust injury requires plaintiff to "allege and prove harm, not just to a single competitor, but to the competitive process, *i.e.*, to competition itself[.]") (internal citation and quotations omitted).

MVSC cannot show that competition has been harmed. To the contrary, the evidence shows that throughout the relevant period, competition among EVR providers has been robust, and CVR's competitors – ████████████████████████████████████████████

████████████████████████████████████████████

████ Moreover, the evidence does not show that dealers have had to pay higher prices for EVR services because of any action by Reynolds, CDK or CVR; ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████[27] ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[27] ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

This is a highly unusual case of a dominant competitor bringing an antitrust suit because it wishes to be even more dominant and to charge even higher prices. This is not an "injury" the antitrust laws recognize. *See Paramount Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d 914, 921 (7th Cir. 2019) (summary judgment proper where plaintiff failed to offer proof of anticompetitive effects of conspiracy; plaintiff's complaint that it was harmed individually was insufficient); *Ehredt Underground, Inc. v. Commonwealth Edison Co.*, 90 F.3d 238, 240 (7th Cir. 1996) (affirming summary judgment for lack of antitrust injury: "antitrust is designed to protect consumers from producers, not to protect producers from each other or to ensure that one firm gets more of the business.") (collecting cases); *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (no antitrust injury where psychiatrists were denied board certification, because they were already sellers in the market and claimed harm was not to consumers, but rather to the psychiatrists' incomes, which "had nothing to do with the antitrust laws").

### B. Denial of an Unlawful Method of Data Access Is Not an Antitrust Injury

As set forth in Defendants' *Authenticom* MSJ and Reynolds's Partial Motion for Summary Judgment ("PMSJ"), there is no antitrust injury from the alleged blocking of hostile integration, because hostile integration is unlawful under copyright law, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, related state laws, and the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201. *Authenticom* MSJ, Argument section III.A; Dkt. 785 (Reynolds's PMSJ).



████████ The CFAA and similar state laws make it unlawful to access a computer system (such as a DMS) without the authorization of the owner of the computer system. ████████

████ *Authenticom* MSJ, Argument section III.A.

Because MVSC does not have a right to use hostile integrators to unlawfully access a DMS, it cannot establish antitrust injury with respect to any alleged restraint of such unlawful conduct. *See Maltz v. Sax*, 134 F.2d 2, 4 (7th Cir. 1943) (company "engaged in the business of making and selling gambling devices" could not establish an antitrust injury); *In re Canadian Imp.*, 470 F.3d at 791 (finding no antitrust injury where indirect plaintiffs, U.S. consumers of prescription drugs, alleged that defendant drug manufacturers conspired to block Canadian pharmacies from selling drugs to them because such importation violated federal law).[28]

At the pleading stage, this Court rejected a similar argument because the Court accepted as true allegations that Reynolds withheld authorization *pursuant to a conspiracy with CDK*. Dkt. 425 (Mem. Op. and Order) at 20-21. We now know there is no evidence of such a conspiracy. For years

---

[28]  *Modesto Irrigation Dist. v. Pac. Gas & Elec. Co.*, 309 F. Supp. 2d 1156, 1169-70 (N.D. Cal. 2004), *aff'd*, 158 F. App'x 807 (9th Cir. 2005) (plaintiff lacked antitrust injury because allegedly restrained conduct was "unlawful by its own terms"); *Pearl Music Co. v. Recording Indus. Ass'n of Am., Inc.*, 460 F. Supp. 1060, 1068 (C.D. Cal. 1978) (finding lack of standing or capacity to bring antitrust claim where plaintiff's pirating of music was "totally illegal under the laws of forty-nine states"); *Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.*, No. C 08-4548 MHP, 2010 WL 145098, at *6 (N.D. Cal. Jan. 8, 2010) (no antitrust injury where harm stemmed from plaintiff's "own decision to manufacture and traffic in a device that is almost certainly illegal under the DMCA").

prior to the start of the alleged conspiracy, ███████████████████████

████████████████████████████████████████████████████████████

████████████████ Furthermore, Authenticom has violated the DCMA and copyright law for

reasons separate and apart from ████████████. *Authenticom* MSJ, Argument section III.A;

Dkt. 785 (Reynolds's PMSJ).

## IV. MVSC Cannot Establish Damages

MVSC's failure to disaggregate harm caused by an alleged unlawful conspiracy between

Reynolds, CDK and/or CVR on the one hand, from harm caused by each defendant's unilateral

conduct, conduct by CDK and/or CVR alone, or state conduct on the other hand, requires summary

judgment on the issue of damages. The only pending claims against Reynolds in this case are

conspiracy claims. SAC ¶¶ 206-15, 233-40, 245-63. Reynolds cannot be liable for any damages

resulting from unilateral conduct by Reynolds, CDK or CVR; or monopolization and attempted

monopolization claims brought only against CDK and CVR (which have been dismissed). Yet, as

MVSC's damages expert Mr. Klein conceded, ███████████████████████

████████████████████████████████████████████████████████████

███████████████████████ Ex. 6, Klein Tr. 45:5-47:10, 52:10-54:23,

99:22-100:3. Summary judgment is therefore appropriate as to MVSC's claims for damages.

As Judge Posner has explained, an expert's damages model that fails to account for lawful

factors not attributable to defendant's anticompetitive conduct is "worthless" and cannot provide a

rational basis for judgment. *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152

F.3d 588, 593 (7th Cir. 1998) (affirming summary judgment for defendant on antitrust damages); *see

also MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1164 (7th Cir. 1983), *cert. denied*

464 U.S. 891 (1983) (judgment for plaintiff improper where based on expert report that failed to

disaggregate purported damages resulting from lawful competition; "it would be unjust and contrary

to the policies of the treble damage remedy to award MCI damages which may compensate it for the effects of such quantitatively significant *lawful* competition.").

Summary judgment should also be granted as to any claimed damages after the date of MVSC's settlement with CDK in October 2019. ███████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████ Ex. 4, Klein Rpt. ¶¶ 16, 54 & n.57.

This is irreconcilable with the undisputed fact that CDK settled with MVSC in October 2019, resulting in the dismissal of claims against both CDK and CVR. Dkt. 778 (Stip. of Dismissal). Furthermore, following the settlement, MVSC is now a member of CDK's 3PA program, MSUF ¶ 80 – the very program that Reynolds and CDK allegedly conspired to block MVSC from joining. Accordingly, as of at least October 2019, there is no conspiracy, and MVSC's claim to damages after October 2019 must therefore be dismissed. *E.g.*, *Drug Mart Pharm. Corp. v. Am. Home Prods., Corp.*, 288 F. Supp. 2d 325 (E.D.N.Y. 2003) (court considered settlement agreement as evidence of conspirators' withdrawal from the alleged conspiracy, eliminating post-settlement damages); Ex. 163, *Brand Name Prescription Drug Antitrust Litig.*, No. 94 C 897, MDL No. 997 (N.D. Ill. Sept. 14, 1998) (Ruling on Motion In Limine) (accord).

As set forth in Reynolds's pending *Daubert* Motion to Exclude Klein (Dkt. 865), MVSC's damages analysis fails as a matter of law for a number of reasons. To the extent Mr. Klein's opinions are excluded, summary judgment should be granted on the grounds that MVSC cannot establish damages. *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chic.*, 877 F.2d 1333, 1339 (7th Cir. 1989) (Easterbrook, J.) ("[A]n expert's declaration, full of assertion but empty of facts and reasons, won't get a case past a motion for summary judgment"); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808-09 (9th Cir. 1988) (summary judgment proper where expert's damages opinions excluded).

-37-

## V.      MVSC's State Law Claims Fail for the Same Reasons as the Federal Claims

MVSC's Illinois and California state law claims against Reynolds (causes of action 6 through 8) rest on the same theories as the federal antitrust claims, and fail for the same reasons.[29] *See, e.g.,* *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (the Illinois Antitrust Act "parallels the federal Sherman Act and Clayton Acts."); *Name.Space, Inc. v. ICANN*, 795 F.3d 1124, 1131 n.5 (9th Cir. 2015) ("the analysis under the Cartwright Act . . . is identical to that under the Sherman Act.") (internal citations omitted); *In re Dairy Farmers*, 60 F. Supp. 3d at 948 n.25 (accord).

The UCL claim must also be dismissed because MVSC cannot establish entitlement to restitution, which is the only relief MVSC seeks with respect to the UCL claim. SAC ¶ 253; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150-51 (2003) ("[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims" and is not permitted under the UCL). MVSC was never a paying customer to Reynolds, and therefore, Reynolds never took anything from MVSC that could be the subject of a restitution order. *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005) ("[I]n the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest"); *In re First All. Mortg. Co.*, 471 F.3d 977, 996-97 (9th Cir. 2006) (affirming summary judgment on UCL claim where plaintiffs not eligible for restitution, relying on *Madrid*).

## CONCLUSION

For the reasons set forth above, Reynolds respectfully requests the Court enter summary judgment in its favor and dismiss this case with prejudice.

---

[29]   The state law claims against Reynolds are brought under: (1) California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.* (sixth cause of action); (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (seventh cause of action); and (3) the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. 501/1 *et seq.* (eighth cause of action). SAC ¶¶ 245-63.

PUBLIC VERSION

Dated: May 20, 2020                              Respectfully submitted,


                                                 /s/ *Leo D. Caseria*

                                                 Aundrea K. Gulley
                                                 Brian T. Ross
                                                 Brice A. Wilkinson
                                                 Ross A. MacDonald
                                                 GIBBS & BRUNS LLP
                                                 1100 Louisiana Street
                                                 Suite 5300
                                                 Houston, TX 77002
                                                 (713) 751-5258
                                                 agulley@gibbsbruns.com
                                                 bross@gibbsbruns.com
                                                 bwilkinson@gibbsbruns.com
                                                 rmacdonald@gibbsbruns.com

                                                 Michael P.A. Cohen
                                                 Leo D. Caseria
                                                 SHEPPARD MULLIN RICHTER & HAMPTON,
                                                 LLP
                                                 2099 Pennsylvania Avenue NW, Suite 100
                                                 Washington, DC 20006
                                                 (202) 747-1900
                                                 mcohen@sheppardmullin.com
                                                 lcaseria@sheppardmullin.com

                                                 *Counsel for Defendant*
                                                 *The Reynolds and Reynolds Company*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I, Leo D. Caseria, an attorney, hereby certify that on May 20, 2020, I caused a true and correct copy of the foregoing **DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/     Leo D. Caseria*
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
lcaseria@sheppardmullin.com