# Exhibit 3

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AUTHENTICOM, INC.,

                                            *Plaintiffs.*      Case No. -cv-

v.

CDK GLOBAL, INC. and THE REYNOLDS
AND REYNOLDS COMPANY.

                                            *Defendants.*

**DECLARATION OF CHRIS LONGPRE**

I, Chris Longpre, declare as follows:

1. I am an owner and vice president of the Lexus of Westminster car dealership in Orange County, California. I have been an executive at Lexus of Westminster since 2002. Prior to that, I was a software developer.

2. Lexus of Westminster is a family-owned and family-run franchised car dealership. We sell roughly 2,500 cars per year, making us a medium-sized dealership.

3. Since 2003, Lexus of Westminster has used a Dealer Management System ("DMS") provided by CDK Global, LLC ("CDK"). My current contract with CDK expires in late 2018.

4. The DMS contract is a significant expense for our car dealership. As part of the contract, we pay CDK to store our dealership data. That data includes vehicle, inventory, customer, sales, and other of our most important information. CDK does not own that data. We do.

1

5.        Over the last couple of years, I have become concerned about CDK's treatment of my dealership's data stored on the DMS system. CDK gives us little control over or visibility into how our data is used. Meanwhile, CDK is charging third-party application providers excessive fees – often between $200 and $800 a month – so that they can access my own data.

6.        I use roughly 20 third-party application providers at my dealerships. These applications provide critical services to our dealership including online advertising, inventory management, direct mail pieces, customer follow-up, excess inventory wholesales, and many other services. These services are essential to our day-to-day operations. These application providers perform many functions that the DMS cannot or does not perform.

7.        One example of a third-party application provider is my Customer Retail Management provider, DealerSocket. As a result of CDK's integration fees, DealerSocket has informed me they are raising the prices it charges my dealership by $500 a month.

8.        In short, I am indirectly footing the bill for a large fee increase so that one of my key application providers can access my own data. Based on conversations with my other vendors, similar price increases, relating to CDK's integration fees, are likely in the near future.

9.        I also use a company called AVRS to provide electronic titling and vehicle registration services. AVRS uses Authenticom to pull my data off the DMS system.

10.       If I had my choice, I would use Authenticom's DealerVault service for all of my vendors. DealerVault is more cost effective and provides dealers with a secure system and substantial control over their data, which CDK does not offer.

11.       I pay CDK nearly $13,000 a month for DMS services. Price increases happen every year, and they are never lower than 5 percent. I negotiated a 12-month price protection guarantee in my current contract, but that is now expiring.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed in Westminster, California, this 4th day of April, 2017.

By: _____