# Exhibit 4

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AUTHENTICOM, INC.<br><br>Plaintiff,<br><br>vs.<br><br>CDK GLOBAL, INC.; and THE REYNOLDS AND REYNOLDS COMPANY<br><br>Defendants. | Case No. 17-cv-318 |

### DECLARATION OF BRIAN MAAS, PRESIDENT OF THE CALIFORNIA NEW CAR DEALERS ASSOCIATION

I, the undersigned, declare as follows:

1. I serve as President of the California New Car Dealers Association ("CNCDA"). The CNCDA is the largest state association of franchised new car and truck dealers in the United States. The CNCDA represents over 1,100 dealer members.

2. The CNCDA – like other state new car dealer associations – responds to the legislative, regulatory, educational, training, and business needs of its member dealers on national, state, and local levels. In connection with these activities, I been involved in addressing issues of data security and data access on behalf of member dealers.

3. As a result of my leadership role of the CNCDA, I am very familiar with the concerns of, and issues affecting, dealers across the California and the United States as a whole.

**DMS software**

4. Dealer Management System ("DMS") software is mission critical software that every dealership relies on to manage and direct its operations. As a dealership uses its DMS, it stores data relating to its operations (such as customer lists, inventory, and sales data) on a database within the DMS.

5. CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") are the two dominant providers of DMS software and services to car dealerships.

6. CDK and Reynolds have dealers enter into long-term contracts to use their DMS software.

7. Switching DMS providers is very difficult and disruptive, and dealers are hesitant to switch as a result. Switching DMS providers changes nearly every process that a dealer uses to operate.

**Dealers own their data**

8. In my experience as an association executive for dealerships, it is and always has been understood that the dealers retain ownership over the data they create and store on their DMS databases.

9. Likewise, because dealers are the owners of their data, it has also been long understood that dealers control access to their data, including by granting access to the data integrators and vendors of their choice, subject to applicable state and federal privacy laws.

10. In fact, under California law, dealers are responsible for ensuring the security and privacy of the consumer data they receive in the course of operating their dealerships.

**Application providers perform important services**

11. In addition to DMS software, dealerships also need to use applications provided by third-party vendors.

12. The sort of functions these third-party software applications provide include customer relationship management, recall notifications, inventory management, and electronic vehicle registration and titling, among many others.

13. These third-party application providers require access to dealer data stored on the dealer's DMS database in order to provide the services to dealers.

**Dealers once had choices on how to distribute their data**

14. Many of my member dealers use (or at one time used) Authenticom to gather their data and provide it in a usable format to their chosen third-party application providers.

15. For those dealers that use or wish to use Authenticom's DealerVault product it is important that it gives them complete control and visibility over how their data is extracted and distributed to application providers.

16. CDK and Reynolds also have dealer data integration products – such as CDK's Third Party Access ("3PA") program and the Reynolds Certified Interface ("RCI") program.

17. CDK and Reynolds have blocked dealers from using independent data integrators like Authenticom.

**Increased cost to dealers**

18. It is my understanding that when vendors use CDK and Reynolds for access to dealer data, CDK and Reynolds charge vendors exorbitant fees for that data access.

19. It is also my understanding that vendors pass on most, if not all, of these large data access fees to the dealers.

- 2 -

20. Dealers regularly complain to me about these large data access fees being passed on to them.

21. It is my experience that dealers do not believe they should be charged large fees for vendor access to the dealers' own data.

**Dealers want a choice**

22. It is my experience that dealers believe that they should have safe, secure, automated, and cost-effective options for sharing their data with vendors.

23. Dealers regularly communicate to us the importance of data security.

24. Dealers are sophisticated businesspeople capable of making informed decisions about the operations of their dealerships, including evaluating the data security protections of their business partners.

25. It is my experience that dealers want and should have the choice of how best to share their data with their vendors, including by using independent integrators that provide secure, cost-effective integration services.

Executed in Sacramento, California, this 15th day of May, 2017.

By: _____
Brian Maas
President, California New Car Dealers Association