# Exhibit 9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

AUTHENTICOM, INC.

    Plaintiff,

vs.

CDK GLOBAL, LLC; and THE REYNOLDS
AND REYNOLDS COMPANY

    Defendants.

Case No. 17-cv-318

## SUPPLEMENTAL DECLARATION OF WAYNE FITKIN

I, Wayne Fitkin, declare as follows:

1. I make this declaration based on my personal knowledge in support of Authenticom's reply brief in support of its motion for a preliminary injunction.

2. As I explained in my March 22, 2017 declaration, I am currently the IT director for Walter's Automotive Group. Before my position with Walter's Automotive Group, I worked as the IT director for the Fletcher Jones Automotive Group.

3. I have been working with CDK software for more than 25 years. Both Walter's Automotive Group and the Fletcher Jones Automotive Group have used CDK DMS software for many years.

4. In my March 22, 2017 declaration, I explained how I grant access to Authenticom to pull data from Walter's Automotive Group's DMS by providing a user ID and password to Authenticom. This grants Authenticom access to my dealer data stored on the DMS. The process was similar for the DMS at the Fletcher Jones Automotive Group.

5. The process I use to create this user ID and password is essentially the same way I grant access to new employees of the dealership. I note that CDK does not require me to provide

the identity of or background information about the employees who will be granted access to the dealer's DMS. I am allowed to make those decisions myself, just as I should be allowed to choose which agents of the dealership are allowed to pull dealer data.

6.  As the dealer, I expressly give Authenticom (or other integrators, such as when I worked with Digital Motorworks and IntegraLink) access to my dealer data stored on the DMS. I allow the integrator to pull the exact same data that I could myself (or one of my employees could) pull.

7.  One major benefit of using Authenticom's DealerVault product is that it allows me to select, and thus limit, the particular types of data that I can send to a given vendor. If I were to allow a vendor direct access to the DMS, the vendor would have access to all data associated with the particular log-on, which is more data than the vendor generally needs. Using DealerVault, however, I can select what data fields are made available to our vendors, and I can track exactly what reports are generated for the vendors. Thus, it is attractive to me, from a security perspective, to have a product like DealerVault, which allows me to send to a vendor only the data it needs to perform its service and to have transparency into the transmission of dealership data to third parties. CDK does not have an equivalent product; I have never found a way to turn off a 3PA feed, let alone control what data is accessible via 3PA.

8.  Dealerships contract with Authenticom to provide integration services for the dealers, and dealerships expressly authorize Authenticom to act as an agent on their behalf to provide data integration services that I could also provide in-house. But Authenticom's DealerVault product allows me to perform data integration services more efficiently, and it better allows me to limit data that is sent to the dealer's vendors. I do not consider Authenticom's

2

access into my DMS system to be "unauthorized;" indeed, it is expressly authorized. And I do not consider Authenticom's access to be "hostile."

9. Neither I, nor anyone for whom I create a user ID and password, have access to the source code for the DMS system or any proprietary information of CDK. The access that I have to our DMS system only allows me to view or extract the data that Walter's Automotive Group itself stores on the DMS system; I do not have access to any CDK software and cannot copy or alter CDK source code or proprietary materials. Authenticom has the same type of access.

10. To my knowledge, neither Walter's Automotive Group or the Fletcher Jones Automotive Group have experienced a degradation of the DMS data as the result of Authenticom's or other integrators' access to the data. Dealers value data security tremendously, and have every reason to protect the integrity of their data, including customer data. I am comfortable permitting Authenticom to continue to access the DMS system, just as I would allow Walter's own employees to do so.

11. Dealerships also take additional security measures, beyond restrictions placed on them by DMS and other software and IT system providers. Only a select few employees are allowed to access the full data stored in the DMS system. Furthermore, some of the most sensitive personally identifiable information, such as drivers' license numbers, social security numbers, and dates of birth are not stored in the CDK DMS at Walter's Automotive Group. Authenticom does not have access to this information. This information is stored in a separate program called Advent, and it is purged after 30 days. Credit card information is not stored in any program at Walter's Automotive Group.

3

12. It appears that CDK is stating that their contracts for the DMS contain language that disallows dealers from granting access to the data in the DMS to third parties. I have been working with CDK for decades and have negotiated contracts for the CDK DMS system. Yet, I have never understood the CDK contracts to restrict dealers in this way.

13. For years, CDK took the position that the dealer owns that data and has the right to share that data with whomever it chooses. For years, CDK did not take any action to prevent data integrators (like Authenticom) from accessing or pulling the data. In my view, CDK changed its position in around 2015, and began blocking access by integrators like Authenticom from accessing the DMS, which was a change in position that I did not foresee and I believe is inconsistent with the position CDK had always taken prior to then.

14. I recently reviewed Walter's Automotive Group's current contract with CDK. In the 2015 Master Services Agreement from CDK, (which was signed before I began working at Walter's) the agreement acknowledged that: "During the initial term of the Schedule, CDK acknowledges that Client may provide a third party vendor with a user id and password into the Client's CDK DMS System to allow routine screen scrape of the DMS." That CDK would put that in the contract – specifically allowing me to provide login credentials to a third-party integrator to access data on the CDK DMS – just shows that CDK's "security" concern is a pretext. In my view, if CDK had true security concerns about independent data integrators, CDK would not have put that in the contract.

15. I do not need CDK or other DMS providers to tell me how to protect my own data. I am a sophisticated business person, with access to resources to help me evaluate and determine how to best protect my own data, and I should have the option to choose to work with whatever service providers I prefer to best help manage and utilize my data.

4

16. The dealers I've worked for pay CDK significant fees for use of the DMS itself. I do not believe we should also have to pay an excessive toll on the data stored on the DMS just to be able to utilize the dealer's own data.

17. In my March 22, 2017 declaration, I explained that it is highly disruptive to switch DMS providers. I have personally transitioned dealer locations from one DMS to another, for example, when the Fletcher Jones Automotive Group acquired additional dealers. When we did so, we transitioned those locations from the DMS they were using to the DMS used by the rest of the dealerships in the group. We transitioned these dealers for efficiency of administration and for integration of new dealers into the group, but the costs and time investment for transitioning to new DMS systems are otherwise prohibitive and would not be justified in the ordinary course of business, without a significant event such as acquisition of new dealers.

18. Since my prior declaration, I believe that CDK has increased its blocking efforts toward Walter's Automotive Group in retaliation for my having submitted a declaration in this matter.

19. I understand that my prior declaration was filed with the court on May 18, 2017. On May 23, 2017, less than a week later, CDK blocked my ability to re-enable log-ins and passwords for Authenticom. This blocking is reflected in the below screenshot I took on May 23, 2017, in which a message from CDK appeared on my screen, stating: "User ID [dvault1] has been used in a manner that violates the terms of your CDK Master Services Agreement and cannot be enabled or copied."

5



20. I cannot easily create a workaround to this, as this is a level of blocking I have not encountered before by CDK. Prior to this blocking incident, Authenticom has never had its dvault1 user ID permanently disabled.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 22, 2017 in Riverside, California.

*Wayne*
Wayne Fitkin

6