# EXHIBIT 89

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| THE REYNOLDS & REYNOLDS COMPANY<br>    Plaintiff,<br><br>vs.<br><br>SUPERIOR INTEGRATED SOLUTIONS, INC.<br>    Defendant. | Case No.: 12-848<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

The Reynolds & Reynolds Company ("Plaintiff" or "Reynolds"), by and through its attorneys of record, files this Original Complaint for damages and injunctive relief against Superior Integrated Solutions, Inc. ("SIS"). Reynolds sues SIS for copyright infringement, contributory copyright infringement, tortious interference with contract, and violation of the Computer Fraud and Abuse Act. Reynolds seeks damages, a temporary injunction, and a permanent injunction, and would specifically show the Court the following:

### I. PARTIES

1. Reynolds is an Ohio corporation with its principal place of business in Kettering, Ohio.

2. SIS is a New Jersey corporation with its principal place of business in Edison, New Jersey.

### II. VENUE & JURISDICTION

3. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338. Subject matter jurisdiction is conferred under 28 U.S.C. § 1331 because this is an action arising under the laws of the United States. Subject matter jurisdiction

1

REYREY_AUTH_00000070

**Defs. Ex. 71**

CONFIDENTIAL      REYCID0003448

CONFIDENTIAL      REYMDL00015586

Case: 1:17-cv-00840-TWP-MJD Document #: 1 Filed: 27/0E/17 Page 2 of 15 PageID #: 2

is conferred under 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000. Subject matter jurisdiction is conferred under 28 U.S.C. § 1338(a) because this is an action arising under the Copyright Act, 17 U.S.C. § 501.

4.  This Court has subject matter jurisdiction over Reynolds' state law claims under 28 U.S.C. § 1332, as described above, and/or supplemental subject matter jurisdiction over these causes of action pursuant to 28 U.S.C. §1367. Supplemental subject matter jurisdiction is conferred under 28 U.S.C. § 1367 because (i) this Court has original jurisdiction over this action, as explained above; and (ii) Reynolds' state law claims are so related to claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.  Venue is proper in this Court under 28 U.S.C. §1400(a), because this case arises under the United States Copyright Act, and SIS may be found in this district. Moreover, SIS has directed its products into this district, actually provided its products to customers in this district, and infringed Plaintiff's copyright in this district. Moreover, venue is proper in this Court under 28 U.S.C. § 1391 because SIS is an entity that is subject to the Court's personal jurisdiction with respect to this civil action, and therefore "resides" in this district for venue purposes.

### III. ALLEGATIONS OF FACT

**A.  Background**

6.  Reynolds is a developer and provider of automobile dealer management systems ("DMS") to automobile retailers throughout the United States. DMS allow automobile dealers to efficiently organize and utilize inventory, customer contacts, financial and insurance information, and myriad other tasks involved in efficiently managing an automotive dealership.

REYREY_AUTH_00000071
CONFIDENTIAL
REYCID0003449
CONFIDENTIAL
REYMDL00015587

Case 3:13-cv-02507-JRS Document 1 Filed 11/05/13 Page 16 of 15 PageID #: 3

7. The primary DMS solution offered by Reynolds is known as "ERA." For each dealership that is an ERA customer, Reynolds provides both (i) a central, hosted data server or set of servers (residing either physically at the dealership, or "in the cloud" at Reynolds' offices); and (ii) a licensed terminal emulator software solution known as "ERAccess," which serves as a secure gateway through which data can be transmitted between the ERA server(s) and the end-user computers (i.e., "PCs") at the dealership. Although there are a number of programs and files relevant to ERAccess, the specific program at issue in this lawsuit is a Reynolds-authored "executable" known as ERAccess.exe.

8. In developing and upgrading ERA, Reynolds also sometimes enters into agreements with third party software developers to integrate applications into the DMS for use by customers who choose to license the third party applications. To protect data security and operational integrity of the overall DMS for Reynolds customers, such third party software applications must meet Reynolds-specified criteria to be certified for integration by Reynolds.

9. SIS has inserted itself as a middleman, attempting to interface with the Reynolds DMS—typically without Reynolds' permission.[1]

10. When Reynolds licenses ERAccess to its customers, it does so pursuant to a series of written contracts, typically including at least an "Authorization Letter," a "Master Agreement," and a "Customer Guide" (collectively, the "Reynolds Customer Agreement"). Pursuant to the Reynolds Customer Agreement, Reynolds' customers agree to express limits on the manner in which Reynolds software (including ERAccess.exe) can be used and/or copied.

---

[1] From September 21, 2006 to September 21, 2009, Reynolds and SIS had a contractual relationship (the "Reynolds Interface Agreement" or "RIA") under which SIS was allowed access to Reynolds' DMS while SIS purportedly developed a certified Reynolds-interfaced product, which never occurred. Both before and after the term of that contract, SIS's attempts to interface with the Reynolds' DMS have been what is known in the industry as "hostile." In 2009, a dispute developed between the parties with respect to the RIA and its non-renewal, but that dispute was mutually resolved and is not at issue here.

REYREY_AUTH_00000072

CONFIDENTIAL

REYCID0003450

CONFIDENTIAL

REYMDL00015588

Case 1:17-cv-00893-TWP-MJD Document #: 104-27 Filed: 06/16/17 Page 5 of 16 PageID #: 4

11. Under the Reynolds Customer Agreement, customers are prohibited from allowing third party integrators like SIS to interface with the ERA DMS. For example, Reynolds' customers agree to the following terms: (a) "Unless we provide otherwise, you may not install Other Matter on the Equipment or connect Other Matter to Licensed Matter, either directly or remotely, without our prior written consent;" (b) "You shall not ... otherwise attempt to create or discover, by any means, . . . integration to other program . . ."; (c) "You agree to keep confidential the Licensed Matter . . . and shall not . . . in any way disseminate or allow access to or by third parties"; and (d) "You agree . . . not to disclose or provide access to any Licensed Matter to any third party, except employees who have a need for access to operate your business and who agree to comply with your obligations."

12. From time to time, Reynolds updates its ERAccess software to enhance data security, performance, stability, and/or features. To maximize operational, security, and support consistency, such updates are "mandatory" in the sense that, once an update becomes available for any given dealership, it must be installed for the relevant ERA server(s) to be accessed. The installation process is automatic: updates are "pushed" from the ERA server to the relevant files and folders on individual dealership employees' PCs, and outdated versions are overwritten as part of an update.

13. ERA, ERAccess, and the ERAccess.exe executable were designed and developed over a considerable period of time at great expense. Each version of ERAccess.exe is a work of authorship subject to the protection of the Copyright Act, 17 U.S.C. § 101 et seq. Reynolds is the sole owner of all right, title, and interest in the ERAccess.exe software, including all versions thereof, and including all copyrights therein.

REYREY_AUTH_00000073
CONFIDENTIAL
REYCID0003451
CONFIDENTIAL
REYMDL00015589

Case: 1:17-cv-00803-TMJdpM Document #: 104-27/0EFile2 Page 6510f 15 PageAGEID#: 5

### B. The July 2012 Update

14. In July of 2012, Reynolds updated ERAccess from Version 28.006 to Version 28.007. Among other enhancements, Version 28.007 fixed a problem concerning ERAccess's "automatic log-off" function. For context on this issue, the following background facts are relevant:

> a. ERAccess (including previous versions) includes a feature whereby an end user will be logged off of ERAccess and ERA automatically if his or her PC is inactive for a set period of time.
>
> b. For ERAccess to accurately detect whether or not there has been activity on a user's PC, the PC user must be operating on a "user account" as opposed to a "system account" (the latter referring to a feature of Microsoft Windows designed to allow the Windows operating system to run internal processes and services without any user interaction).
>
> c. When ERAccess was run from a Windows "system account", the automatic log-off feature could not detect PC user activity, resulting in premature log-offs adversely affecting the PC user attempting to use or access ERA in the regular course of dealership business.

15. In light of the above, as well as the fact that "system account" access of ERAccess caused Reynolds technical support issues, Version 28.007 eliminated the ability to run ERAccess from a "system account."

### C. SIS Infringes Reynolds' Legal Rights and is Caught Red-Handed

16. Shortly after the update to Version 28.007, Reynolds began to receive calls to its support center from customers complaining of problems with ERAccess's automatic log-off feature. Specifically, users were being automatically logged off of ERAccess for no apparent reason. With the assistance of its customers, Reynolds investigated the issue and made a shocking discovery: Despite the fact that all the users experiencing "log off" problems had received the July 2012 ERAccess update (to Version 28.007), their PCs *also had an old version*

REYREY_AUTH_00000074

CONFIDENTIAL

REYCID0003452

CONFIDENTIAL

REYMDL00015590

Case 13:cv-00803184-JdpM-JD Document #1-#Filed-21/0E7b2dPage46617f 1PageAGEID#: 6

of ERAccess.exe running. This was entirely inconsistent with the way Reynolds' update process works, but a closer examination of these users' file directories revealed the culprit: SIS.

17.     Specifically, the PC hard drives at issue contained two copies of an executable program file named "**sysdiagx.exe**." Reynolds has never produced an executable named sysdiagx.exe for ERAccess, but the file was otherwise an exact copy of the pre-July 2012 version of the ERAccess.exe program file (Version 28.006). For each computer, there was one copy of the "sysdiagx.exe" file stored in the user's "SIS" file directory folder, and the other was stored in the Reynolds file directory folder. This program file was being used (or "executed") by applications for which SIS purported to serve as an integrator to pull information from the ERAccess servers in a manner not consistent with Reynolds protocols—e.g., from a "system account" on a PC. To be clear, Reynolds is intimately familiar with the contents normally stored in the Reynolds directory folder on its customer's PCs, and these would not ever normally include any old version(s) of the ERAccess.exe program file or any file named "sysdiagx.exe."

18.     It is apparent that SIS had taken the pre-update version of ERAccess.exe and made unauthorized copies into various folders on the PCs of its customers (who were also Reynolds customers). Additionally or alternatively, SIS directed its customers to make such unauthorized copies in violation of the Reynolds Customer Agreement. The automatic log-off problem being reported to Reynolds by its customers was due to technical errors caused by a user's PC accessing ERA simultaneously from a Windows "user account" *and* a "system account" (the latter of which, again, was no longer possible under the updated, supported version of ERAccess). The "system account" log-ons were not being initiated by the end users, but rather by scripted automatic background processes implemented by SIS.

6

REYREY_AUTH_00000075
CONFIDENTIAL
REYCID0003453
CONFIDENTIAL
REYMDL00015591

Case 1:17-cv-00903-TMR-MJN Doc #: 1-4 Filed: 27/07/12 Page 67 of 15 PageID #: 7

19. The ability to log into ERAccess from a "system account" allows SIS essentially constant, real-time (albeit hostile) transmission of data between a dealership PC and the ERA servers—including, for example, in the middle of the night—which cannot reliably occur if a particular human user must be logged in. SIS's scheme to make and distribute unauthorized copies of ERAccess.exe Version 28.006, the last version to allow "system account" access, "solves" that problem in an unlawful manner.

20. The infringing "sysdiagx.exe" file has been found on the PCs at dealerships in numerous states across the country, including at least the following dealerships in Ohio:

- Jerry Haag Motors, Inc., 1475 North High Street, Hillsboro, Ohio ("Haag");
- LaRiche Toyota-Subaru, 920 Plaza Rd., Findlay, Ohio ("LaRiche"); and
- Byers Chevrolet, LLC, 555 West Broad Street, Columbus, Ohio ("Byers").

SIS did business with the above-listed dealerships, knowingly directed its products to this district, and infringed Reynolds' copyrights in this district.

21. The infringement by SIS of Reynolds' copyrights, as well as the inducement of Reynolds' customers to breach the Reynolds Customer Agreement, has substantially injured Reynolds and will further injure Reynolds if allowed to continue. At a minimum, the unauthorized copying and use of ERAccess.exe Version 28.006, specifically including the use of that software to access ERA servers from "system accounts," has caused serious technical and performance problems for Reynolds' customers, and Reynolds has been forced to devote and divert substantial internal resources for purposes of diagnostic and customer support in response to these technical problems.

REYREY_AUTH_00000076

CONFIDENTIAL                                                                                                        REYCID0003454

CONFIDENTIAL                                                                                                        REYMDL00015592

Case: 1:17-cv-00840-TWP-MJD Document #: 1-1 Filed: 27/05/17 Page 16 of 15 PageID #: 8

22. SIS has profited from its theft of Reynolds' intellectual property by selling integration services made possible only by its copyright infringement and unauthorized and contractually prohibited hostile integration.

## IV. CLAIMS FOR RELIEF

### A. First Claim for Relief: Direct Copyright Infringement

23. Reynolds restates and incorporates paragraphs 1 through 22, above.

24. Reynolds has complied with the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, securing for itself the exclusive rights and privileges in the copyrights in and to the relevant versions of ERAccess.exe. Registration of copyright claims to the relevant works has been made in accordance with the Copyright Act, as follows:

| Registration Number | Copyright Work | Date of First Publication |
|---|---|---|
| TX 7-586-896 | ERAccess.exe Version 26.265 | April 12, 2010 |
| TX 7-586-863 | ERAccess.exe Version 28.006 | May 17, 2012 |

25. Upon information and belief, the copyrights in and to ERAccess.exe are valid and subsisting.

26. Reynolds' cause of action for direct copyright infringement arises under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, particularly 17 U.S.C. §§ 106(1), (2) & (3), 501.

27. SIS at all relevant times was fully aware that ERAccess.exe were copyrighted works proprietary to Reynolds.

28. SIS unlawfully copied, adapted, distributed, sold, and used Version 28.006 of ERAccess.exe, all without the permission of Reynolds. Such acts of copying, adapting, distributing, selling, and other use constitute willful and deliberate infringements of copyrights in ERAccess.exe in derogation of 17 U.S.C. §§ 106(1), (2) & (3), 501.

REYREY_AUTH_00000077
CONFIDENTIAL
REYCID0003455
CONFIDENTIAL
REYMDL00015593

Case: 1:17-cv-00881-MRP-MDW Document #: 1-1 Filed: 2/1/17 Page 6/9 of Page 10 of 16: 9

29. SIS's acts of direct infringement continue today and will continue into the future if not enjoined by this Court.

30. SIS's actions as described above have caused damages to Reynolds in an amount in excess of the minimum jurisdictional limits of this Court.

31. SIS has substantially benefited from its willful infringement of Reynolds' exclusive rights under the copyright laws of the United States.

### B. Second Claim for Relief: Contributory Copyright Infringement

32. Reynolds restates and incorporates paragraphs 1 through 31, above.

33. In the alternative to the claim for relief set forth above, Reynolds' customers (including but not limited to the customers identified in paragraph 20 above), copied and used Version 28.006 of ERAccess.exe, all without the permission of Reynolds. Such acts of copying and use constitute infringements of copyrights in ERAccess in derogation of 17 U.S.C. §§ 106(1) and (2), 501.

34. SIS knew or should have known of Reynolds' customers' infringing activity.

35. SIS induced, caused, and materially contributed to Reynolds' customers' infringing activity by, on information and belief, instructing their customers how to install software packages that include wrongful copies of Version 28.006 of ERAccess.exe.

36. SIS's acts of contributory infringement continue today and will continue into the future if not enjoined by this Court.

37. SIS's actions as described above have caused damages to Reynolds in an amount in excess of the minimum jurisdictional limits of this Court.

38. SIS has substantially benefited from its contributory infringement of Reynolds' exclusive rights under the copyright laws of the United States.

9

REYREY_AUTH_00000078
CONFIDENTIAL
REYCID0003456
CONFIDENTIAL
REYMDL00015594

C. **Third Claim for Relief: Tortious Interference with Contract**

39. Reynolds restates and incorporates paragraphs 1 through 38, above.

40. Reynolds has binding written contracts with its customers in the form of the Reynolds Customer Agreement.

41. The Reynolds Customer Agreement prohibits customers from allowing third party integrators like SIS to access or to interface with the ERA DMS without Reynolds' consent.

42. SIS is fully aware of the Reynolds Customer Agreements. In fact, SIS representatives have attempted to negotiate on behalf of certain Reynolds customers an exception to the Reynolds Customer Agreement – knowing full well, that without such a modification or exception, SIS's integration services constituted a breach of the Reynolds Customer Agreement.

43. Reynolds has not consented to Haag, LaRiche, or Byers (or any other customers who, on information and belief, SIS has induced to breach their contracts with Reynolds) allowing SIS to interface with ERA.

44. SIS was well aware that by selling its integration services to Reynolds' customers, SIS was causing Reynolds' customers to breach their contracts with Reynolds. Nevertheless, SIS acted willfully with the purpose and intent of procuring breaches of the Reynolds Customer Agreements by selling its hostile integration services to Reynolds' customers.

45. SIS actively solicited and induced Reynolds' customers to provide SIS with access to ERA and/or to allow SIS to integrate to ERA in violation of the Reynolds Customer Agreements. SIS's services have little or no value to Reynolds' customers unless SIS has access to the DMS and/or can integrate to the DMS in violation of the Reynolds Customer Guide. Thus, SIS actively persuaded Reynolds' customers to breach their promises to Reynolds, so that SIS could peddle their unauthorized services to these customers for a fee.

10

REYREY_AUTH_00000079
CONFIDENTIAL
REYCID0003457
CONFIDENTIAL
REYMDL00015595

46. SIS had no justification or privilege that can excuse its tortious interference with Reynolds' contracts with its customers. SIS's conduct was willful; SIS's motive was profit-driven; and SIS directly interfered with Reynolds' critical interests in the integrity of its product and its relationships with its customers.

47. As a direct and proximate result of SIS's tortious interference with Reynolds' contracts with its customers, SIS's tortious interference caused Reynolds damage, including but not limited to, damages related to the resulting technical and performance problems for Reynolds' customers which have required Reynolds to devote and divert substantial internal resources for purposes of diagnostic and customer support in response to these technical problems.

48. SIS's tortious interference with Reynolds' contracts and business relationship with Reynolds' customers continues today and will continue into the future if not enjoined by this Court.

E. **Fourth Claim for Relief: Violation of the Computer Fraud and Abuse Act**

49. Reynolds restates and incorporates paragraphs 1 through 48, above.

50. SIS has intentionally accessed ERA and Reynolds' customer computers without authorization and/or in excess of SIS's authorization.

51. The Reynolds' customers at issue are automobile dealerships. The dealerships access the ERA DMS via personal computers (PCs). The ERA server is itself a protected computer, whether it is stored on-site at the dealership, or "in the cloud" at a Reynolds facility. Reynolds' customers' PCs and the ERA servers are used in interstate commerce. The PCs and ERA servers are used in connection with all aspects of interstate automotive sales and are connected directly or indirectly to the Internet.

11

REYREY_AUTH_00000080

CONFIDENTIAL

REYCID0003458

CONFIDENTIAL

REYMDL00015596

Case: 3:17-cv-00803-jdp-MJD Document #: 104-2170 Filed: 06/16/27 of Page 13 of 16: 12

52. Reynolds' Customer Agreements prohibit Reynolds' customers from granting third party integrators like SIS from accessing or integrating with ERA without Reynolds' consent. SIS is aware of this prohibition and has no reasonable belief that the Reynolds' customers at issue can grant it access to the DMS. Nevertheless, without authorization, SIS has accessed the DMS.

53. SIS obtains information from the DMS, and uses the information in connection with the hostile integration services that it offers for a fee.

54. SIS has intentionally accessed Reynolds' customer PCs and ERA servers without authorization or in excess of its authorized access, and has obtained information.

55. SIS has intentionally accessed Reynolds' customers' PCs and ERA servers without authorization, and as a result of such conduct has recklessly caused damage or has caused damage and loss.

56. SIS has caused Reynolds damage and loss in excess of $5,000.00 including the cost of responding to SIS's conduct, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to SIS's conduct, together with revenue lost, costs incurred, and other consequential damages incurred because of interruption of service caused by SIS's unauthorized access.

57. SIS's violations of the Computer Fraud and Abuse Act continue today and will continue into the future if not enjoined by this Court.

### V. ADDITIONAL ALLEGATIONS IN SUPPORT OF TEMPORARY AND PERMANENT INJUNCTION

58. Reynolds restates and incorporates paragraphs 1 through 57, above.

12

REYREY_AUTH_00000081
CONFIDENTIAL
REYCID0003459
CONFIDENTIAL
REYMDL00015597

59. Reynolds will suffer irreparable injury if SIS, including SIS's officers, agents, servants, employees, and others acting in active participation or concert with SIS, is not enjoined from taking the following illegal acts:

    i. reproducing, distributing, or preparing derivative works based on the ERAccess.exe software, whether re-named or otherwise;

    ii. inducing, causing, or materially contributing to any reproduction, distribution, or preparation of derivative works based upon the ERAccess.exe software by Reynolds' customers or by any other person;

    iii. otherwise infringing Reynolds' copyright;

    iv. accessing Reynolds' servers without authorization; and

    v. accessing ERA without authorization.

60. Based on the facts alleged herein, there is a substantial likelihood that Reynolds will prevail on the merits of its action.

61. The hardship to SIS of granting this injunction will be far less than the continuing harm to Reynolds if the request for an injunction is denied.

62. The issuance of this injunction will further the public interest in protecting rights provided by law.

## VI. PRAYER

63. Based on the facts and claims for relief alleged above, Reynolds respectfully requests that this Court enter a temporary injunction, and subsequently a permanent injunction, enjoining SIS—including SIS's officers, agents, servants, employees, representatives, and others acting in active participation or concert with SIS—from:

    i. copying or distributing the ERAccess.exe software, whether re-named or otherwise;

    ii. inducing, causing, or materially contributing to any copying of ERAccess.exe by Reynolds' customers;

13

REYREY_AUTH_00000082
CONFIDENTIAL
REYCID0003460
CONFIDENTIAL
REYMDL00015598

Case 3:17-cv-00808-RJD-MJD Document #: 104-1 Filed: 06/16/17 Page 15 of 16 PageID #: 14

    iii.    otherwise infringing Reynolds' copyright;

    iv.    accessing Reynolds' servers without authorization; or

    v.    accessing ERA without authorization.

64. In addition, Reynolds respectfully prays that it have and recover the following:

    i.    any and all actual, consequential and incidental damages, resulting from SIS's wrongful conduct;

    ii.    revenues and/or profits earned by SIS as a result of SIS's infringement of Reynolds' copyrights and damages suffered by Reynolds as a result of SIS's copyright infringement, or, to the extent applicable, if so elected by Reynolds at any time prior to final judgment, an award of statutory damages per copyrighted work infringed, or such other amount of statutory damages the Court deems just;

    iii.    revenues and/or profits earned by SIS as a result of SIS's wrongful integration with and access to ERA and damages suffered by Reynolds as a result of SIS's illegal acts;

    iv.    pre-judgment and post-judgment interest as allowed by law;

    v.    exemplary, multiple, and punitive damages;

    vi.    reasonable and necessary attorneys' fees;

    vii.    costs of court; and

    viii.    all other relief as the Court may deem just or to which Reynolds may legally or equitably be entitled.

CONFIDENTIAL

REYREY_AUTH_00000083
REYCID0003461
REYMDL00015599

Respectfully submitted,

**BIESER, GREER & LANDIS LLP**

By: /s/ James H. Greer
David C. Greer, Trial Attorney (0009090)
James H. Greer, Trial Attorney (0046555)
400 PNC Center
6 North Main Street
Dayton, Ohio 45402-1908
Telephone: 937-223-3277
Telecopier: 937-223-6339
Email: dcg@bgllaw.com; jhg@bgllaw.com

**GIBBS & BRUNS LLP**

Grant Harvey, TBN 09177700, *pro hac to be filed*
Aundrea K. Gulley, TBN 24034468, *pro hac to be filed*
Brian T. Ross, TBN 24037395, *pro hac to be filed*
Ben Bireley, TBN 24076086, *pro hac to be filed*
1100 Louisiana, Suite 5300
Houston, TX 77002
Telephone: 713-650-8805
Telecopier: 713-750-0903

15

REYREY_AUTH_00000084
CONFIDENTIAL                                                                                    REYCID0003462

CONFIDENTIAL                                                                                    REYMDL00015600