**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Motor Vehicle Software Corp. v. CDK Global, Inc., et al.*, Case No. 1:18-cv-865 (N.D. Ill.)<br><br>*Authenticom, Inc. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00868 (N.D. Ill.)<br><br>*Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-cv-2521 (N.D. Ill.) | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

**INDIVIDUAL AND VENDOR CLASS PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE THE EXPERT TESTIMONY OF BRIAN HALPIN**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT ........................................................................................................................... 7

    I.     Mr. Halpin's Testimony Will Be Helpful To The Jury ............................................... 7

    II.    Defendants Cannot Exclude Mr. Halpin's Testimony By Strategic Stipulation .......... 9

    III.   The Court Should Deny Exclusion of Mr. Halpin's Opinion Under Rule 403 ........... 12

CONCLUSION ....................................................................................................................... 14

i

## INTRODUCTION

Plaintiff Authenticom, Inc.'s ("Authenticom") CEO Steve Cottrell has testified to a conversation he had on April 3, 2016 with Dan McCray – an executive at CDK Global, LLC ("CDK") – in which Mr. McCray boasted of an agreement between CDK and The Reynolds and Reynolds Company ("Reynolds") to block third-party data integrators and threatened to put Authenticom out of business, unless Mr. Cottrell sold his company to CDK for a low price. *See In re DMS Antitrust Litig.*, 313 F. Supp. 3d 931, 943-44 (N.D. Ill. 2018) (St. Eve., J.). Mr. Cottrell's recounting of his conversation with Mr. McCray provides direct evidence of Defendants' conspiracy to block third-party data integrators, an issue at the heart of this MDL.

Given the importance of this evidence, CDK and Reynolds have made undermining Mr. Cottrell's credibility generally – and specifically with respect to the April 3, 2016 conversation – a key part of their defense. Plaintiffs should be able to present to the jury evidence showing Mr. Cottrell's testimony about his conversation with Mr. McCray is credible and accurate. One piece of evidence stands out: the morning after his conversation with Mr. McCray, Mr. Cottrell typed notes of Mr. McCray's comments – providing the only contemporaneous record of the conversation. Plaintiffs engaged former FBI forensic analyst Brian Halpin to analyze whether the file containing those notes was modified at any point after Mr. Cottrell created it on April 4, 2016. Mr. Halpin conducted a forensic examination of Mr. Cottrell's notes (recorded in a Microsoft Word document) and concluded that the document was created and last modified on the morning of April 4, 2016. Mr. Halpin found no evidence suggesting the document had been altered in any way since that date, which is consistent with Mr. Cottrell's sworn declaration that he typed the notes on the morning of April 4, 2016 and never modified the document since then. *See* Ex. 1, Report of Brian Halpin ("Halpin Rep.") at Steve Cottrell Decl. ("Cottrell Decl.") ¶¶ 2-4.

Mr. Halpin's expert testimony is admissible under Rule 702. His testimony will be helpful to the jury in assessing whether Mr. Cottrell took contemporaneous notes of his conversation with Mr. McCray. The timing of those notes, in turn, is relevant to the jury's determination of whether Mr. Cottrell's recollection of the April 3, 2016 conversation – backed by his own notes – is more accurate than Mr. McCray's partial denials years after the fact.

Defendants' contention that Mr. Halpin's testimony should be excluded under Federal Rule of Evidence 702 is meritless. They claim that whether Mr. Cottrell took contemporaneous notes is irrelevant because they have offered to stipulate that the notes were taken contemporaneously. But Plaintiffs are entitled to present a persuasive case to the jury, including by presenting evidence that CDK and Reynolds cannot rebut. Defendants cannot sterilize the evidence by selectively stipulating to facts bad for their case. Nor should Mr. Halpin's testimony be excluded as unduly prejudicial under Federal Rule of Evidence 403. As an initial matter, it would be premature to rule on this matter without proper evidentiary context regarding how CDK and Reynolds will attempt to undermine Mr. Cottrell's credibility and the ways in which Mr. Halpin's report may respond to those efforts. Moreover, Mr. Halpin's report is probative of a relevant issue – the timing of when Mr. Cottrell recorded his notes – and his testimony will not unfairly prejudice Defendants. CDK and Reynolds will have ample opportunity to make the same arguments to the jury that they have made in their motion as to why Mr. Halpin's testimony should be given little weight.

## BACKGROUND

1.      A central issue in this litigation is whether CDK and Reynolds unlawfully conspired to block third-party data integrators. If they did, they are subject to per se liability under the antitrust laws. *See In re DMS Antitrust Litig.*, 313 F. Supp. at 951 ("Under established law, 'joint efforts by a firm or firms to disadvantage competitors by either directly denying or persuading or

coercing suppliers or customers to deny relationships the competitors need in the competitive struggle' merit per se treatment.") (quoting *Toys 'R' Us, Inc. v. FTC*, 221 F.3d 928, 936 (7th Cir. 2000)). Plaintiffs intend to present direct evidence of such an unlawful horizontal conspiracy, including through written contracts, internal emails and other documentary evidence, and the party admissions of Defendants' employees – critically including Mr. McCray's statements to Mr. Cottrell at the April 2016 National Automobile Dealers Association ("NADA") convention. *See id.* ("Taken as true, the fact that two of Defendants' executives [Reynolds's Bob Schaefer and CDK's Dan McCray] admitted an agreement to block Authenticom and other integrators from accessing dealer data shows directly the existence of such an agreement.").[1]

[REDACTED]

---

[1] Another piece of direct evidence of conspiracy is a phone conversation, in May 2015, between Mr. Cottrell and Bob Schaefer, Reynolds's Vice President of Data Services and Security. Mr. Schaefer told Mr. Cottrell that Reynolds had "made agreements with the other major DMS providers to support each other's third-party access agreements and to block independent integrators such as Authenticom." Ex. 5, Prelimin. Inj. Hearing, *Authenticom* Dkt. 164 ("PI Hearing Tr.") 1-A-138:22 to 139:13.



On April 3, 2016, Mr. McCray approached Mr. Cottrell at Authenticom's booth at the NADA convention in Las Vegas, but Mr. Cottrell was unavailable at the time. Ex. 5, PI Hearing Tr. 1-A-140; Ex. 8, Declaration of Steve Cottrell (May 18, 2017), *Authenticom* Dkt. 62 ("Cottrell PI Decl.") ¶ 48. Mr. Cottrell later approached Mr. McCray at CDK's booth, where Mr. McCray suggested they "take a walk." Ex. 5, PI Hearing Tr. 1-A-140 to 41; Ex. 8, Cottrell PI Decl. ¶ 48;

Mr. McCray then led Mr. Cottrell to a secluded area down a service ramp. Ex. 5, PI Hearing Tr. 1-A-140 to 41; Ex. 8, Cottrell PI Decl. ¶ 48.[3] Once they were alone, Mr. McCray said that the "major DMS companies" – of which there are only two, CDK and Reynolds – were "working collaboratively to remove all hostile integrators from our DMS system." Ex. 5, PI Hearing Tr. 1-A-141 to 142. To end the conversation, "Dan



looked [Mr. Cottrell] in the eye and he said, 'I admire you. I admire your company.' He said, 'I'd really like to see you get something for it before I fucking destroy it.' " *Id.* 1-A-142:9-12.

After observing Mr. Cottrell's live testimony at the *Authenticom* preliminary injunction hearing, as well testimony from Defendants' executives,[4] Chief Judge Peterson credited Mr. Cottrell's testimony as credible. *See Authenticom, Inc. v. CDK Global, LLC*, 2017 WL 3017048, at *6 (W.D. Wis. July 14, 2017).

**2.** CDK and Reynolds have repeatedly sought to undermine Mr. Cottrell's credibility and testimony about his conversation with Mr. McCray – ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Plaintiffs intend to submit evidence corroborating Mr. Cottrell's recollection of his conversation with Mr. McCray. One such piece of evidence is Mr. Cottrell's contemporaneous notes, which he recorded in a Word document the morning after the conversation following a night

---

[4] 

- 5 -

of restless sleep. Ex. 5, PI Hearing Tr. 1-A-143; Ex. 1, Halpin Rep. at Exhibit A to Cottrell Decl. (Mr. Cottrell's notes). The notes match Mr. Cottrell's testimony regarding his conversation with Mr. McCray, including that Mr. McCray referenced an agreement between the "major DMS companies" to "effectively 'lock you and the other third parties out,'" as well as Mr. McCray's profane threat to destroy Authenticom. Ex. 1, Halpin Rep. at Exhibit A to Cottrell Decl. At the preliminary injunction hearing, Authenticom introduced Mr. Cottrell's notes and a screenshot of timestamps associated with the notes, which show the document was created at 10:41 a.m. CDT on April 4, 2016 and last modified 39 minutes later at 11:20 a.m. CDT on April 4, 2016. *See* Ex. 14, PI Hearing PHX-55; Ex. 15, PI Hearing PHX-56.

Plaintiffs engaged Mr. Halpin to conduct a computer forensics analysis to determine whether Mr. Cottrell's notes were in fact taken contemporaneously and whether they had been altered since April 4, 2016. Mr. Halpin examined the internal document metadata[6] for Mr. Cottrell's notes, which he found showed that Mr. Cottrell – the author and last person to have saved the document – created the notes at 10:41 a.m. on April 4, 2016 and last modified the document on the same day at 11:20 a.m. Ex. 1, Halpin Rep. at 4-5. Mr. Halpin also examined external metadata that was created by the computer on which Mr. Cottrell recorded his notes and transferred to the Box.com cloud storage service where the notes were uploaded in July 2018.[7] *Id.* at 5. The external metadata "reflects that the last modified date for the file is April 4, 2016 11:20

---

[6] *See Palar v. Blackhawk Bancorporation Inc.*, 2013 WL 1704302, at *2 n.2 (C.D. Ill. Mar. 19, 2013) ("'Metadata' is defined as 'data about data.' It includes such information as the author, date of creation, any modifications, and the dates of any modifications.").

[7] Authenticom uploaded the contents of Mr. Cottrell's device to the Box.com storage server in July 2018, when Mr. Cottrell got a new computer and his old device was wiped and re-issued to a new user. Ex. 1, Halpin Rep. at 5 & n.22; *id.* at Cottrell Decl. ¶ 9 ("In the ordinary course of running Authenticom, I upgrade computers and devices to newer models when they become available. When that happens, Authenticom follows a standard procedure for preserving the contents of the device and wiping and re-issuing the device to a new user.").

- 6 -

a.m., which is consistent with what is reported by the internal metadata." *Id.* Mr. Halpin also observed that the forensic evidence he analyzed in August 2019 is consistent with the notes and timestamps Authenticom introduced at the preliminary injunction hearing two years earlier. *Id.* Finally, Mr. Halpin tested a variety of means that could be used to alter the document metadata – including commercially available software – and found that those methods all leave "artifacts" of document manipulation that were not present here. *Id.* at 6-10. Mr. Halpin thus concluded that all of the available evidence – including the document history and internal and external metadata – is consistent with the document being created and last modified on April 4, 2016. *Id.* at 11 (concluding there were "[n]o inconsistencies" "that call into question its creation and last modified dates" and determining "it is unlikely that the Document of Interest was altered and the document appears to be original."); *see also* Ex. 16, Halpin Dep. 83:5-13 ("[W]hen you look at the document, you look at the meta data, you look at a document that was back in May of 2017 with all the same meta data[,] . . . it's more likely than not that this document is original.").

## ARGUMENT

Defendants do not challenge Mr. Halpin's qualifications, methodology, or the reliability of his testimony – the traditional bases for seeking exclusion under *Daubert*. *See* Fed. R. Evid. 702(a). Rather, Defendants assert that his opinion will not be helpful to the jury because it does not address any disputed fact and because his opinion would be prejudicial under Federal Rule of Evidence 403. Those arguments lack merit.

### I. Mr. Halpin's Testimony Will Be Helpful To The Jury

Whether expert evidence is "help[ful]" to the jury, Fed. R. Evid. 702(a), is "essentially a relevance inquiry." *United States v. Hall*, 93 F.3d 1337, 1342 (7th Cir. 1996); *see also Cage v. City of Chicago*, 979 F. Supp. 2d 787, 804-05 (N.D. Ill. 2013) (expert testimony will help the jury where it concerns a relevant issue); *Burbach Aquatics, Inc. v. City of Elgin, Ill.*, 2011 WL 204800,

at *2 (N.D. Ill. Jan. 18, 2011) (same). Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "A party faces a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *United States v. Boros*, 668 F. 3d 901, 907 (7th Cir. 2012) (quoting *Tennard v. Dretke*, 542 U.S. 274, 285 (2004)).

There is no dispute that Mr. Cottrell's account of his April 2016 encounter with Mr. McCray is relevant. Defendants leave no doubt (at 1, 6) that they will dispute the accuracy of Mr. Cottrell's account at trial. Plaintiffs should be allowed to present evidence to support Mr. Cottrell's account, including Mr. Cottrell's notes of the conversation. The document's metadata is directly relevant to the probative weight the jury will give to Mr. Cottrell's notes, because it shows that those notes were contemporaneous and were never altered after the fact. *See Nelson-McGourty v. L & P Fin. Adjusters Inc.*, 2010 WL 3190711, at *11 (N.D. Ill. Aug. 12, 2010) ("Mr. Mitchell's version of events is corroborated by his own substantially contemporaneous notes of the conversation . . . ."); Fed. R. Evid. 803 Advisory Committee Notes to the 1972 Proposed Rules, Note to Paragraph (5) ("The guarantee of trustworthiness is found in the reliability inherent in a record made while events were still fresh in mind and accurately reflecting them.").

Mr. Halpin's expert testimony will be helpful to the jury because he explains the significance of the metadata and confirms the metadata shows that Mr. Cottell's notes were created the morning after his conversation with Mr. McCray. Testimony explaining "what metadata is and how it works will assist lay jurors" in assessing the timing of when documents were created. *LovePop, Inc. v. Paper Pop Cards, Inc.*, 2019 WL 350762, at *2 (D. Mass. Jan. 29, 2019); *see also*

- 8 -

*United States v. Brown*, 579 F.3d 672, 684 n.5 (6th Cir. 2009) ("Testimony from qualified experts about the metadata underlying digital images could be helpful in ascertaining when photographs were taken and whether photographs were taken in sequence."). Indeed, some courts have held that expert testimony is *required* to explain the significance of metadata evidence to the jury. *United States v. Wilkins*, 2016 WL 2616497, at *5 (W.D. Mo. Apr. 8, 2016) (citing cases) ("[C]omputer forensics expert should testify about metadata rather than a lay witness."); *see also Buscaglia v. United States*, 25 F.3d 530, 533 (7th Cir. 1994) (admitting expert testimony under Rule 403 where it had "at least moderate probative value").

## II.     Defendants Cannot Exclude Mr. Halpin's Testimony By Strategic Stipulation

Defendants cannot sterilize Plaintiffs' trial presentation by selectively choosing to stipulate to facts to prevent Plaintiffs from introducing their own evidence. Numerous cases illustrate this principle. *See, e.g.*, *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997) ("[T]he Government invokes the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice . . . ."); *Hill v. Wilson*, 519 F.3d 366, 369 (7th Cir. 2008) ("Live testimony has value even when the defense prefers a paper substitute."); *United States v. Swiatek*, 819 F.2d 721, 731 n.4 (7th Cir. 1987) ("It may be true that the introduction of this evidence was not essential, but . . . [a] party may insist on proving a fact even when there has been an offer to stipulate.").[8]

Plaintiffs would be prejudiced in several ways if they were precluded from introducing evidence of the document's metadata and its significance. *First*, technologically savvy jurors may be aware of metadata and its capability to prove when a file was created and modified. *See*

---

[8] *See also United States v. Allen*, 798 F.2d 985, 1001 (7th Cir. 1986) ("In most, but not all, cases, 'a party is not required to accept a judicial admission of his adversary, but may insist on proving the fact.'" (quoting *Parr v. United States*, 255 F.2d 86, 89 (5th Cir. 1958))); *Jennings v. Santoro*, 2016 WL 8608479, at *15-16 (C.D. Cal. Nov. 23, 2016) (approving presentation of expert testimony, despite opposing party's offer to stipulate, in light of *Old Chief*).

- 9 -

*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 547-48 (D. Md. 2007) ("[M]etadata is a distinctive characteristic of all electronic evidence that can be used to authenticate it under Rule 901(b)(4)."). Jurors may expect such evidence to be introduced and could draw a negative inference against Plaintiffs if it is missing. *See Old Chief*, 519 U.S. at 188-89 ("If jurors' expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party. . . . If suddenly the prosecution . . . announc[es] a stipulation or admission, the effect may be like saying, 'never mind what's behind the door,' and jurors may well wonder what they are being kept from knowing."); *Naselroad v. Mabry*, 2019 WL 4725157, at *3 (E.D. Ky. Sept. 26, 2019) (allowing civil party to present evidence of acquittal in criminal case despite opposing party's offer to stipulate, because otherwise the jurors "will be left to speculate about the outcome of the criminal proceedings").

*Second*, if Plaintiffs attempt to introduce the metadata timestamps associated with Mr. Cottrell's notes without Mr. Halpin's expert testimony, jurors may wonder whether the metadata was altered. *See, e.g.*, *Pearson v. U.S. Bank Nat'l Ass'n*, 2014 WL 4163020, at *17 (D. Minn. Aug. 21, 2014) (noting the "common understanding that 'creation dates' in metadata may be altered by copying a document or moving it to a new location" and the need for testimony from a "computer forensics expert" to dispel this understanding). Mr. Halpin's testimony addresses this concern by explaining how metadata works and showing that the "artifacts" associated with an attempt to alter metadata are not present here. *See* Ex. 1, Halpin Rep. at 6-10.

Defendants cite no authority for the proposition that they can force Plaintiffs to accept their stipulation in lieu of presenting their own evidence. Their argument confuses *relevant* evidence for *disputed* evidence. As the Seventh Circuit has held, under Rule 401, "[t]he fact to which the evidence is directed need not be in dispute." *United States v. Gomez*, 763 F.3d 845, 859 (7th Cir.

- 10 -

2014) (quoting Fed. R. Evid. 404 Advisory Committee's Notes (1972)). Defendants misplace reliance on *In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781 (7th Cir. 1999), where the issue was whether expert testimony was relevant because of its substance – not because of a stipulation. *Id.* at 786 (expert testimony on whether the drug manufacturers engaged in price discrimination had no bearing on whether there was unlawful collusion – a question on which the expert "had virtually nothing to say"). The Seventh Circuit thus did not address whether a unilateral offer to stipulate can render otherwise relevant evidence irrelevant.[9]

Defendants' other cases similarly do not involve unilateral offers to stipulate. In *Baumann v. Media Gen. Operations, Inc.*, 2006 WL 5249849 (E.D. Ky. Jan. 13, 2006), the court accepted a defendant's offer to stipulate to an issue in a reply brief; there is no indication the court imposed that stipulation on an unwilling plaintiff. *See id.* at *1-2. And in *Wilkins*, the proposed testimony was irrelevant because it concerned whether the government was presenting crime-scene photographs out of order – a point that had no evidentiary value – not because of any unilateral stipulation. *See* 2016 WL 2616497, at *4. Indeed, *Wilkins* demonstrates why Mr. Halpin's testimony is relevant and admissible: the court there noted "a qualified expert" is required to present metadata evidence to the jury, just as Plaintiffs are seeking to do here. *Id.* at *4-5 (citing cases and describing why metadata evidence requires expert testimony).[10]

---

[9] In *Brand Name*, Judge Posner said the price discrimination issue "*should have been* removed as an issue at trial by a stipulation of the parties," rather than spending "days" of court time on the issue, because it was irrelevant to whether there was unlawful collusion. 186 F.3d at 786 (emphasis added). But there was no *actual* stipulation or offer to stipulate in *Brand Name*, so the Seventh Circuit did not address the argument Defendants make here.

[10] Defendants rely on other cases (at 3 & n.2) that are inapposite because they featured a stipulation by *both parties*, not one party's attempt to unilaterally impose a stipulation on the other. *See Martin v. City of Atlanta*, 579 F. App'x 819, 827 (11th Cir. 2014) ("the parties stipulated"); *Brown v. Wescott*, 2013 WL 6670252, at *3 (W.D. Wash. Dec. 18, 2013) ("Defendants have stipulated"); *Seals v. Mitchell*, 2011 WL 1399245, at *9 (N.D. Cal. Apr. 13, 2011) ("the parties

- 11 -

### III. The Court Should Deny Exclusion of Mr. Halpin's Opinion Under Rule 403

Defendants cannot show (at 5-6) that Mr. Halpin's report should be excluded as unfairly prejudicial under Rule 403 for two reasons. *First*, Defendants' Rule 403 objection is premature because that is an issue that should be handled by the trial court – after the cases in this MDL are sent back to their home districts – in light of the evidence that is presented at trial. *Second*, Mr. Halpin's testimony is probative of a relevant issue – the timing of Mr. Cottrell's notes and, ultimately, the credibility of his account of the April 3, 2016 conversation – and raises no risk of confusing or prejudicing the jury.

**A.** "Rule 403 acts as a final check that excludes slightly probative evidence whose main effect will be the inflammation of the jury's passions rather than the illumination of their fact-finding." *United States v. Klemis*, 2015 WL 300424, at *3 (S.D. Ill. Jan. 22, 2015). As the Seventh Circuit has instructed, "normally the balancing process contemplated by that rule is best undertaken at the trial itself." *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000); *see also, e.g.*, *Castanga v. Newmar Corp.*, 340 F. Supp. 3d 728, 733-34 (N.D. Ind. 2018) (declining to consider Rule 403 challenge to expert testimony prior to trial). Indeed, the two cases on which Defendants rely both considered the Rule 403 issue in the context of a motion *in limine*, not (as here) a pre-summary judgment *Daubert* motion. *See Thompson v. City of Chicago*, 472 F.3d 444, 452 (7th Cir. 2006); *Fairly v. Andrews*, 2011 WL 2142800, at *5 (N.D. Ill. May 31, 2011). In the MDL context in particular, courts have declined to rule on evidentiary issues that can be handled by the trial courts after the cases are transferred back to their home districts.[11]

---

stipulate"); *White v. City of Chicago*, 2011 WL 679905, at *4 (N.D. Ill. Feb. 16, 2011) ("[i]n response to continuing objections from Defendants, Plaintiff has further certified").

[11] *See Winebarger v. Boston Scientific Corp.*, 2015 WL 5567578, at *1 (W.D.N.C. Sept. 22, 2015) ("A significant number of the motions *in limine* were considered premature and denied without prejudice by the MDL Judge subject to specific objection at trial and the benefit of both

The Court should follow that standard approach here. Rule 403's context-specific assessment is best left in the hands of the trial court, which can assess the full evidentiary context of how CDK and Reynolds seek to undermine Mr. Cottrell's credibility and the ways in which Mr. Halpin's testimony may rebut those efforts. The trial court is also in a better position to decide whether other tools – short of exclusion – can address any Rule 403 objection. *Smith v. Family Video Movie Club, Inc.*, 2017 WL 568992, at *4 (N.D. Ill. Feb. 13, 2017) ("[A]ny risk of prejudice or confusion can be addressed closer to trial by, for example, the use of a limiting instruction."). The Court should deny Defendants' Rule 403 motion as premature.

**B.** If it reaches the Rule 403 issue, the Court should find that Mr. Halpin's testimony is admissible because its probative value is not "substantially outweighed by the danger of unfair prejudice." *Old Chief*, 519 U.S. at 180 (quoting Fed. R. Evid. 403). As explained above, Mr. Halpin's testimony is highly probative: it shows that Mr. Cottrell's notes were contemporaneous and never altered, and thus their contents – an admission of the unlawful antitrust conspiracy at the heart of this MDL – are more likely to be credible. Defendants can present to the jury all of their arguments (at 5-6) about why Mr. Halpin's testimony should carry little weight because he could not definitively rule out one theoretical possibility for altering document metadata (for example, backdating the computer system clock).[12] But the debate about the weight to be given to Mr. Halpin's testimony is one for the jury; it is not a basis for exclusion under Rule 403. *See St. Paul Mercury Ins. Co. v. The Viking Corp.*, 539 F.3d 623, 628 (7th Cir. 2008) (an

---

context and proper evidentiary foundation."); *In re Cessna 208 Series Aircraft Prods. Liability Litig.*, 2009 WL 3190458, at *3 n.5 (D. Kan. Sept. 30, 2009) (MDL court declining to determine an issue that "primarily relates to the relevance of the testimony," which "the various trial courts can determine" in the context of each case).

[12] Mr. Halpin cited to Mr. Cottrell's sworn declaration, in which Mr. Cottrell stated he did not backdate the computer system clock. Ex. 1, Halpin Rep. at 11; *id.* at Cottrell Decl. ¶¶ 5-8. In their *Daubert* motion, Defendants provide no basis to disbelieve Mr. Cottrell's sworn statement.

"expert's testimony need not eliminate all other possible causes" to be helpful and admissible); *see also Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 1994 WL 502955, at *3 (N.D. Ill. Sept. 13, 1994) (concluding expert testimony on financial motive was admissible under Rules 702 and 403 despite failure to identify who had started the fire for the insureds and "the absence of this information goes to the weight to be given to the testimony of these experts").

As to prejudice, Defendants make no attempt to show that Mr. Halpin's testimony would lead the jury to render a decision based on an "improper emotional basis," *United States v. Morant*, 2004 WL 1202965, at *3 (7th Cir. 2004), or that it would "inflame the passions of the jury," *United States v. Boyce*, 2011 WL 5078186, at *2 (N.D. Ill. 2011) – the typical bases for excluding relevant testimony under Rule 403. Rather, Defendants' prejudice argument (at 6) is based on their complaint that jurors would confuse Mr. Halpin's testimony about the *timing* of Mr. Cottrell's notes as vouching for the *accuracy* of the notes. But that is not unfair prejudice at all: the timing of the notes *is* relevant to the jury's assessment of their accuracy, as the Federal Rules of Evidence and case law have long recognized. *See supra* pp. 7-9. Thus, the complaint that Mr. Halpin's testimony may well "burnish Mr. Cottrell's overall credibility" by showing that Mr. Cottrell's notes of his conversation with Mr. McCray were contemporaneous and were never altered does not support exclusion under Rule 403; rather, it shows why Mr. Halpin's testimony is highly probative. *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985) ("That the evidence is damaging to the defendant's case is not a ground for excluding it under Rule 403.").[13]

## CONCLUSION

Defendants' motion to exclude the testimony of Brian Halpin should be denied.

---

[13] *Black and Decker v. Bosch Tools*, 2006 WL 5156873 (N.D. Ill. 2006) – on which Defendants rely – did not even involve Rule 403. In any case, Mr. Halpin is not the "mouthpiece," *id.* at *1, for anyone. His report presents his own forensic analysis of the metadata.

- 15 -

Dated:  May 29, 2020                              Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

## CERTIFICATE OF SERVICE

   I, Derek T. Ho, an attorney, hereby certify that on May 29, 2020, I caused a true and correct copy of the foregoing **INDIVIDUAL AND VENDOR CLASS PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF BRIAN HALPIN** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

              */s/ Derek T. Ho*
              Derek T. Ho
              **KELLOGG, HANSEN, TODD,**
               **FIGEL & FREDERICK, P.L.L.C.**
              1615 M Street, NW, Suite 400
              Washington, D.C. 20036
              (202) 326-7900
              dho@kellogghansen.com