PUBLIC - REDACTED VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18-cv-00864 |
| **This Document Relates To:** | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | |

**DEALERSHIP CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT CDK GLOBAL, LLC'S MOTION TO EXCLUDE
THE OPINIONS AND PROFERRED TESTIMONY OF DR. MICHAEL A. WILLIAMS**

PUBLIC - REDACTED VERSION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

  I.   THERE IS NO BASIS TO EXCLUDE DR. WILLIAMS'S DAMAGES
       OPINIONS ............................................................................................................ 2

    A.  Dr. Williams's "Direct" Damages Model Complies with Federal Law ........................... 2

    B.  Dr. Williams's Damages Model Fits the Facts, and He Calculated Damages
        Flowing Solely From Plaintiffs' Theory of Liability of Defendants' Conduct ............... 4

       1.  CDK's "Disaggregated Damages" Argument Ignores Defendants' Collusive
           Conduct ...................................................................................................... 4

       2.  Dr. Williams's Analysis Appropriately Calculates Damages Based Upon the
           Defendants' Conduct .................................................................................. 7

       3.  Dr. Williams's Parallel Paths Assumption is Appropriate ............................. 7

  II.  NO BASIS EXISTS TO EXCLUDE DR. WILLIAMS'S CONSPIRACY
       OPINIONS ............................................................................................................ 9

    A.  Dr. Williams Appropriately Analyzes The Issues .......................................................... 9

       1.  CDK's Motion Relies On the Wrong Legal Standard ................................... 9

       2.  Dr. Williams Properly Applies His Economic Expertise to Evidence ........ 11

       3.  Dr. Williams Analyzed Whether CDK's Actions Were Motivated by Unilateral
           Incentives ................................................................................................. 13

    B.  Dr. Williams "Plus Factor" Analysis is a Reliable and Accepted Methodology ........... 14

       1.  Plus Factor 1: Actual Prices Exceed But-For Prices ................................... 16

       2.  Plus Factors 2 and 3: Communications at High Levels ............................... 17

       3.  Plus Factors 4 and 5: The February 2015 Agreements ............................... 18

       4.  Plus Factor 6: Enforcement Efforts ............................................................. 19

       5.  Plus Factor 7: Pretextual Explanations ........................................................ 19

    C.  Dr. Williams's Analysis of Industry Characteristics Is Helpful .................................... 20

CONCLUSION ................................................................................................................ 20

PUBLIC – REDACTED VERSION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Dairy Farmers of Am., Inc.*,
No. 5:09-cv-230, 2013 WL 6909953 (D. Vt. Dec. 31, 2013) ................................. 18

*Anderson News, LLC v. Am. Media, Inc.*,
No. 09 Civ. 2227 (PAC), 2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015) .............................. 16

*Angelopoulos v. Keystone Orthopedic Specialists, S.C.*,
No. 12-CV-5836, 2017 WL 2178504 (N.D. Ill. May 16, 2017) ............................. 11

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019) ................................................................................ 2, 4

*Battipaglia v. N.Y. State Liquor Auth.*,
745 F.2d 166 (2d Cir. 1984) ........................................................................ 18

*Bigelow v. RKO Radio Pictures, Inc.*,
327 U.S. 251 (1946) ..................................................................................... 2

*In re Blood Reagents Antitrust Litig.*,
No. 09-MD-2081, 2017 WL 3096168 (E.D. Pa. July 19, 2017) .............................. 12

*Blue Cross & Blue Shield United v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1998) ......................................................................... 6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F.3d 599 (7th Cir. 1997) ......................................................................... 3

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017) ............................................................. 15

*Brown v. Burlington N. Santa Fe. Ry. Co.*,
765 F.3d 765 (7th Cir. 2014) .................................................................. 17, 18

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........................................................................................ 7

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ........................................................................ 7

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
906 F.2d 432 (9th Cir. 1990) ........................................................................ 10

**PUBLIC – REDACTED VERSION**

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
No. 9 CR 3690, 2013 WL 212908 (N.D. Ill. Jan. 18, 2013).......................................14

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ............................................................................... *passim*

*In re Delta/Airtran Baggage Fee Antitrust Litig.*,
245 F. Supp. 3d 1343 (N.D. Ga. 2017), *aff'd sub nom. Siegel v. Delta Air
Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 827
(2019) ...................................................................................................................12

*In re Disposable Contact Lens Antitrust Litig.*,
329 F.R.D. 336 (M.D. Fla. 2018) ................................................................12, 13

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
2002 WL 31528625 (E.D.N.Y. Aug. 21, 2002) ........................................................3

*E.I. du Pont de Nemours & Co. v. F.T.C.*,
729 F.2d 128 (2d Cir. 1984)..................................................................................20

*In re Ethylene Propylene Diene Monomer (EDPM) Antitrust Litig.*,
681 F. Supp. 2d 141 (D. Conn. 2009) ....................................................................19

*Grussgott v. Milwaukee Jewish Day Sch., Inc.*,
882 F.3d 655 (7th Cir. 2018) ................................................................................18

*In re High Fructose Corn Syrup Antitrust Litig.*,
295 F.3d 651 (7th Cir. 2002) ........................................................................10, 15

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977)..........................................................................................1, 2

*Jamsport Entm't, LLC v. Paradama Prods., Inc.*,
No. 02 C 02298, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005) ....................................12

*Kleen Prods., LLC v. G. Pac., LLC*,
910 F.3d 927 (7th Cir. 2018) ..........................................................................14, 20

*Kleen Prods. LLC v. Int'l Paper*,
No. 10 C 5711, 2017 WL 2362567 (N.D. Ill. May 31, 2017) ................8, 11, 14, 20

*Lamb's Patio Theatre, Inc. v. Universal Film Exchs., Inc.*,
582 F.2d 1068 (7th Cir. 1978) ........................................................................19, 20

*Manpower, Inc. v. Ins. Co. of Pa.*,
732 F.3d 796 (7th Cir. 2013) ..................................................................................9

*Marion Healthcare, LLC v. Becton Dickinson & Co.*,
  952 F.3d 832 (7th Cir.) ...................................................................................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986).............................................................................9, 10, 11

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) .......................................................................5, 6

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*,
  877 F.2d 1333 (7th Cir. 1989) ....................................................................12, 13

*Miles Distribs. v. Specialty Constr. Brands, Inc.*,
  476 F.3d 442 (7th Cir. 2007) ........................................................................9, 20

*Omnicare Inc. v. Unitedhealth Grp., Inc.*,
  629 F.3d 697 (7th Cir. 2011) ...........................................................................14

*Petruzzi's IGA Supermarkets v. Darling-Del. Co.*,
  998 F.2d 1224 (3d Cir. 1993)...........................................................................19

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
  764 F. Supp. 2d 991 (N.D. Ill. 2011) ........................................................10, 15, 18

*In re Plywood Antitrust Litig.*,
  655 F.2d 627 (5th Cir. 1981) ...........................................................................18

*In re Processed Egg Prods. Antitrust Litig.*,
  81 F. Supp. 3d 412 (E.D. Pa. 2015) ...................................................................12

*Re/Max Int'l v. Realty One, Inc.*,
  173 F.3d 995 (6th Cir. 1999) ...........................................................................18

*Rossi v. Standard Roofing*,
  156 F.3d 452 (3d Cir. 1988)............................................................................10

*Rozema v. Marshfield Clinic*,
  977 F. Supp. 1362 (W.D. Wis. 1997) ...................................................................6

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ...........................................................................15

*Smith v. Ford Motor Co.*,
  215 F.3d 713 (7th Cir. 2000) ......................................................................14, 18

*Spray-Rite Serv. Corp. v. Monsanto Co.*,
  684 F.2d 1226 (7th Cir.1982), *aff'd on other grounds*, 465 U.S. 752 (1984)......................5, 7

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931) ...................................................................................................2, 3, 4

*In re Text Messaging Antitrust Litig.*,
630 F.3d 622 (7th Cir. 2010) ......................................................................................14

*Tichy v. Hyatt Hotels Corp.*,
376 F. Supp. 3d 821 (N.D. Ill. 2019) ....................................................................14, 15

*In re Titanium Dioxide Antitrust Litig.*,
No. CIV.A. RDB-10-0318, 2013 WL 1855980 (D. Md. May 1, 2013) ............................12, 15

*U.S. Info. Sys. v. IBEW Local Union No. 3*,
313 F. Supp. 2d 213 (S.D.N.Y. 2004)..........................................................................13

*In re Urethane Antitrust Litig.*,
No. 04-1616-JWL, 2012 WL 6681783 (D. Kan. Dec. 21, 2012) ..........................................12

*Valspar Corp. v. E.I. du Pont de Nemours & Co.*,
873 F.3d 185 (3d Cir. 2017)........................................................................................15

*Valspar Corp. v. E.I. du Pont de Nemours & Co.*,
152 F. Supp. 3d 234 (D. Del. 2016)..............................................................................15

*Viamedia, Inc., v. Comcast Corp.*,
951 F.3d 429 (7th Cir. 2020) ......................................................................................12

*Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*,
328 F. Supp. 3d 824 (N.D. Ill. 2018) ...........................................................................15

## Other Authorities

Joshua D. Angrist & Jorn-Steffen Pischke, MOSTLY HARMLESS ECONOMETRICS:
AN EMPIRICIST'S COMPANION (1st ed., Princeton Univ. Press 2009).......................................8

William Kovacic *et al.*, *Plus Factors & Agreement in Antitrust Law*, 110 Mich. L.
Rev. 393 (2011) ........................................................................................15, 16, 18

PUBLIC - REDACTED VERSION

## GLOSSARY OF TERMS AND REFERENCES

The following is a list of defined terms and references used herein:

| TERM | DEFINITION |
|---|---|
| *Authenticom* Tr. | Transcript of First Day of Evidentiary Hearing, Morning Session (Jun. 26, 2017), ECF No. 164, *Authenticom, Inc. v. CDK Global, LLC*, Case No. 3:17-CV-318-JDP (W.D. Wisc.) (relevant excerpts attached as Exh. A to the Declaration of Peggy J. Wedgworth ("Wedgworth Decl."), filed contemporaneously herewith) |
| CDK | Defendant CDK Global, LLC |
| CDK Mem. | Memorandum in Support of Defendant CDK Global, LLC's Motion to Exclude the Opinions and Proffered Testimony of Dr. Michael A. Williams, dated Feb. 28, 2020 (ECF No. 882) |
| Complaint | Dealership Class Plaintiffs' Consolidated Class Action Complaint, dated June 4, 2018 (ECF No. 184) |
| Cottrell Tr. | Transcript of the Deposition of Steven M. Cottrell, dated Apr. 2, 2019 (relevant excerpts attached as Exh. B to the Wedgworth Decl.) |
| DiD | Difference-in-differences regression methodology |
| DIS | Data integration services |
| DMS | Dealer Management System |
| February 2015 Agreements | Data Exchange Agreement, 3PA Agreement, and Reynolds Interface Agreement between CDK and Reynolds, dated Feb. 18, 2015 |
| Gardner Decl. | Declaration of Howard Gardner, dated June 16, 2017, ECF No. 93, *Authenticom, Inc. v. CDK Global, LLC*, Case No. 3:17-CV-318-JDP (W.D. Wisc.) (PX 944) (attached as Exh. C to the Wedgworth Decl.) |
| Kovacic | William Kovacic et al., *Plus Factors & Agreement in Antitrust Law*, 110 Mich. L. Rev. 393 (2011) |
| Motion | CDK Global, LLC's Motion to Exclude the Opinions and Proffered Testimony of Dr. Michael A. Williams, dated Feb. 28, 2020 (ECF No. 881) |
| Reply | Expert Reply Report of Michael A. Williams, Ph.D., dated Dec. 19, 2019 (Exhibit 8 to the Declaration of Daniel T. Fenske, dated Feb. 28, 2020) |

**PUBLIC - REDACTED VERSION**

| TERM | DEFINITION |
|---|---|
| Report | Expert Report of Michael A. Williams, Ph.D., dated Aug. 26, 2019 (Exhibit 7 to the Declaration of Daniel T. Fenske, dated Feb. 28, 2020) |
| Reynolds | Defendant The Reynolds and Reynolds Company |
| Tr. | Transcript of the Deposition of Michael A. Williams, Ph.D., dated Nov. 8, 2019 (relevant excerpts attached as Exh. D to the Wedgworth Decl.) |
| Whinston Report | Expert Report of Michael D. Whinston, Ph.D., dated Nov. 15, 2019 (attached as Exh. E to the Wedgworth Decl.) |
| Whinston Tr. | Transcript of the Deposition of Michael D. Whinston, Ph.D., dated Jan. 10, 2020 (relevant excerpts attached as Exh. F to the Wedgworth Decl.) |

**PUBLIC - REDACTED VERSION**

Dealership Class Plaintiffs ("Dealership Plaintiffs" or "Dealerships") respectfully submit this memorandum in opposition to Defendant CDK Global, LLC's ("CDK") Motion to Exclude the Opinions and Proffered Testimony of Dr. Michael A. Williams (ECF No. 881) ("Motion").

## **INTRODUCTION**

This case is about CDK's and co-Defendant Reynolds's conspiracy and collusion to adversely affect competition in the relevant DMS and DIS markets, enabling Defendants to substantially increase costs to Dealerships to access *their own data*, thus, decreasing the functionality of the DMS used by Dealerships on a daily basis to run their business. Dr. Michael A. Williams's opinions set forth the impact and damages that the collusive price increases and decreased functionality caused. Those opinions are admissible under Federal Rule 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and his application of established and reliable methods of economic analysis will assist the jury.

CDK's arguments to the contrary miss the mark. First, CDK incorrectly argues that Dr. Williams's damages calculation for decreased functionality is contrary to *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Dealerships sustained damages for decreased functionality as direct purchasers of Defendants' DMSs, and CDK cannot avoid liability by complaining of the damage calculation method. Second, CDK's numerous complaints regarding Dr. Williams's supposed failure to account for possible unilateral conduct and a dismissed claim are not valid. Dr. Williams's estimated overcharge reflects damages resulting solely from Defendants' alleged conspiracy, and controls for other potential factors *including* legal unilateral conduct by Defendants. Finally, Dr. Williams's "plus factor" analysis of evidence supporting the existence of a conspiracy is a reliable and well-accepted methodology utilized by the courts. Dr. Williams has properly set forth his analysis of the evidence of Defendants' collusive behavior.

## ARGUMENT

I. **THERE IS NO BASIS TO EXCLUDE DR. WILLIAMS'S DAMAGES OPINIONS**

A. **Dr. Williams's "Direct" Damages Model Complies with Federal Law**

CDK argues that Dr. Williams's "direct" damage analysis runs afoul of *Illinois Brick*. CDK is wrong. *Illinois Brick*'s "bright-line" rule permits direct purchasers to recover damages. *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1522 (2019); *see id.* at 1529 (Gorsuch, J., dissenting) ("Instead of focusing on the traditional proximate cause question where the alleged overcharge is first (and thus surely) felt, the Court's test turns on who happens to be in privity of contract with whom."). *See also Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 840 (7th Cir.) ("The relationship between the buyer and the seller, rather than the nature of the alleged anticompetitive conduct, governs whether the buyer may sue under the antitrust laws.") (citing *Apple*).

As direct purchasers of Defendants' DMSs, Plaintiffs were directly damaged. *See* ECF No. 507 at 20-21 (the alleged conspiracy "result[ed] in DMSs with less value and inferior functionality. Plaintiffs therefore allege anticompetitive conduct in the DMS market."). By manipulating DMS interfaces to block data integrators, Defendants caused dealers' injury -- including reductions in the value and functionality of their DMSs. This is a classic "direct" injury, and fully compensable. *See Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 566 (1931); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 262-63 (1946).

████████████████████████████████████████████████████████

Report ¶¶ 32, 95, 171 ████████████████████████████████████

████████████████████████████████████████████████████████

████████Whinston Report ¶ 326, ██████████████████████████████

*id.* ¶ 325; ¶ 330 ██████████████████████████████████████

███████████████████████████████████.[1] ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Whinston Tr. at 165:6-167:7.

CDK's reliance on *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 2002 WL 31528625 (E.D.N.Y. Aug. 21, 2002) is misplaced. There, the plaintiff pharmacies (indirect purchasers of the defendant manufacturers) claimed that defendants' "boycott" caused plaintiffs' "lost profits". *Id.* at *6. But this case involves claims by purchasers regarding the very products (DMSs) that they *directly purchased* from Defendants. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 604 (7th Cir. 1997) ("[I]f the plaintiffs went on to obtain a judgment against the wholesalers and manufacturers, any indirect-purchaser defense would go by the board, since the pharmacies would then be direct purchasers from the conspirators.").

The fact that dealers paid increased DIS fees to persons *other than* Defendants does not change the analysis. Dealers need not pay *anyone* -- much less the Defendants -- to establish antitrust damages. It suffices that the dealers' property (the directly-purchased DMS) lost value and functionality. Thus, in *Story Parchment*, the Supreme Court permitted recovery of the reduced value of plaintiff's abandoned property. 282 U.S. at 567 ("That there was actual damage due to depreciation in value was not a matter of speculation," even though "[t]he amount alone was in doubt."). That Dr. Williams's direct damages calculations referenced passed-on DIS charges is of no consequence. Dealers sustained damages as direct purchasers of Defendants' DMSs, and CDK

---

[1] *See also* Exh. C, Gardner Decl. ¶¶ 10-11 (████████████████████████████████████ ██████████████████████████████████ (emphasis added). References to "Exh." herein refer to the exhibits to the Declaration of Peggy J. Wedgworth, filed contemporaneously herewith.

**PUBLIC - REDACTED VERSION**

may not gerrymander its way out of this lawsuit merely because of the damage calculation method. *Apple*, 139 S. Ct. at 1522-23 ("Apple's line-drawing does not make a lot of sense, other than as a way to gerrymander Apple out of this and similar lawsuits.").

Indeed, this case is far stronger than *Story Parchment*. There, the property at issue (a manufacturing plant) was not purchased from the defendants, yet its value dropped because of defendants' conspiracy. Here, Dealerships purchased the DMS directly from Defendants, and were damaged because Defendants, by blocking independent data integrators, caused the dealers to pay higher integration fees for DMS functionality than they would have but for the conspiracy.

      **B.**    **Dr. Williams's Damages Model Fits the Facts, and He Calculated Damages Flowing Solely From Plaintiffs' Theory of Liability of Defendants' Conduct**

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████ Report ¶¶ 157-163; Reply ¶¶ 47-50.

          1.    <u>CDK's "Disaggregated Damages" Argument Ignores Defendants' Collusive Conduct</u>

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ CDK Mem. at 7-9. CDK is wrong on both the facts and law. As

to the facts, ████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████ Reply ¶¶ 47-50. ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████ Reply ¶ 8.

As to the law, the Seventh Circuit has not supported disaggregation of damages in antitrust cases and has in fact frowned upon such in reviewing jury verdicts. To address any concerns, *courts await a jury determination of some alleged conduct to be lawful,* and only then to consider how best if at all to address any potential concerns. "There is nothing inconsistent between requiring proof that damages were caused by illegal acts and the rule that a plaintiff need not disaggregate damages among those acts found to be unlawful." *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.,* 708 F.2d 1081, 1161-63 (7th Cir. 1983) (jury found some of defendant's predatory pricing policies were not unlawful, and the Seventh Circuit concluded that those policies represented a central competitive reality of the industry and case, ordering a new trial on the issue). In fact, an antitrust plaintiff may recover damages for the lawful and unlawful acts of a conspiracy if disaggregation is impracticable. *Spray-Rite Serv. Corp. v. Monsanto Co*., 684 F.2d 1226, 1242-43 (7th Cir.1982), *aff'd on other grounds*, 465 U.S. 752 (1984) (it was unclear whether the jury had found liability on one act or all three of the acts which were alleged to have been part of the conspiracy which resulted in the termination of the plaintiff as a dealer).

CDK has cited no case where similar evidence was held insufficient at any time and certainly not prior to trial. CDK reaches too far in its attempt at pushing a "disaggregation of damages" argument, citing several cases (CDK Mem. at 8-9) where expert testimony regarding

**PUBLIC - REDACTED VERSION**

causation of damages was rejected for failing to disaggregate the effects of defendants' legal conduct. However, in each of these cases the expert opinion at issue measured *combined* damages for *separate* antitrust claims where post-trial, a determination was made that only some of the claims involved unlawful conduct. *See MCI Commc'ns*, 708 F.2d at 1161-63 (in a post-trial appeal, lost profits study premised on 22 acts of monopolization did not support causation of damages after numerous acts found legal by a jury), and *Blue Cross & Blue Shield United v. Marshfield Clinic*, 152 F.3d 588, 593-594 (7th Cir. 1998) (post-trial denial of damages affirmed; "Any nonconspiratorial factors *likely to have made the prices charged by the Marshfield Clinic higher* than the prices charged by other health-care providers had to be taken into account in order to make a responsible estimate of the prices that Blue Cross would have paid had it not been for the conspiracy.") (emphasis added). The court in *Blue Cross* reviewed the district court's denial of injunctive relief and attorneys' fees after a jury's determination that only one violation had been found to be anticompetitive – "the division of markets was among the least important of the many antitrust violations charged in this suit[.]" Judge Posner stated:

> Of course it is possible that the alleged violations were redundant; like the assassins of Rasputin, who drowned him after poisoning him in order to make sure he was really dead, the Marshfield Clinic may have stacked the division of markets on top of other practices *any one of which would have had the same effect on its customers' prices*. But this observation cannot help Blue Cross. For only one of the practices was illegal, the division of markets. If it added nothing to the price effects of the legal practices, it did not cause Blue Cross any harm.

*Id*. (emphasis added). *See also Rozema v. Marshfield Clinic*, 977 F. Supp. 1362, 1381 (W.D. Wis. 1997) (prior to *Blue Cross* trial, the court rejected attack on plaintiffs' expert for failing to disaggregate price changes that, according to defendants, were the effects of legal conduct). ■

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████ Reply ¶¶ 47-50.

**PUBLIC - REDACTED VERSION**

2.    <u>Dr. Williams's Analysis Appropriately Calculates Damages Based Upon
the Defendants' Conduct</u>

In addition, CDK again misquotes and mischaracterizes Dr. Williams arguing that any

calculations that include anything other than "live" claims is unreliable and inadmissible. ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ Tr. at 213:22-215:5 (emphasis added). ████████

███████████████████████████████████████████████████████████

██████████████████████████████████ Simply because a claim in a

conspiracy has been dismissed at the initial litigation phase does not convert defendants' *conduct*

(in this case, exclusive dealing contracts) into lawful action. *See Spray-Rite Serv. Corp.*, 684 F.2d

at 1243. CDK's reliance upon two disparate cases misses the mark. *See Concord Boat Corp. v.
Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (after jury trial in a monopolization case,

the Eighth Circuit found the expert's model "failed to account for market events that both sides

agreed were not related to any anticompetitive conduct"); *Comcast Corp. v. Behrend*, 569 U.S. 27,

35 (2013) (class certification in a monopolization case reversed concluding that for antitrust

impact, plaintiffs "would be entitled only to damages resulting from reduced overbuilder

competition, since that is the only theory of antitrust impact accepted for class-action treatment by

the District Court.").

3.    <u>Dr. Williams's Parallel Paths Assumption is Appropriate</u>

CDK also claims that Dr. Williams did not justify the 'parallel paths' assumption ████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████ Both arguments are flawed.

As to CDK's critique of "eyeballing" price charts, the standard, accepted, peer-reviewed method for determining whether prices are parallel in the benchmark period ▮▮▮▮▮▮▮▮ ▮▮▮▮ is to visually examine the data. The common trends assumption can be investigated using data on multiple periods, where a visual examination of the trends between the treatment group and the control group (to test the parallel paths assumption) is used.[2] Numerous peer-reviewed papers, all of which were published in leading economics or medical scientific journals, agree.[3]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Report ¶¶ 157-162.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CDK

may disagree, but an expert's selection of variables and observations ▮▮▮▮▮▮▮▮▮▮ goes to the probative weight of the analysis rather than its admissibility. *Kleen Prods. LLC v. Int'l Paper,* No. 10 C 5711, 2017 WL 2362567, at *10 (N.D. Ill. May 31, 2017) (although the exclusion of certain control variables in a DiD model raised concerns about the accuracy of the expert's

---

[2] *See* Exh. G, Joshua D. Angrist & Jorn-Steffen Pischke, MOSTLY HARMLESS ECONOMETRICS: AN EMPIRICIST'S COMPANION, at 231-233 (1st ed., Princeton Univ. Press 2009).

[3] *See* Exh. H - K.

[4] *See* Tr. at 55:17-56:16, 170:23-171:10; Report ¶¶ 70, 118-120; Exh. L, CDK-0787969 to 970 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶ 70).

analysis, it was for the jury to assess). Therefore, any challenge to assumptions and observations can be done on cross-examination. *See Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 808 (7th Cir. 2013) ("[T]he Supreme Court and this Circuit have confirmed on a number of occasions that the selection of the variables to include in a regression analysis is normally a question that goes to the probative weight of the analysis rather than to its admissibility.").

## II.   NO BASIS EXISTS TO EXCLUDE DR. WILLIAMS'S CONSPIRACY OPINIONS

### A.   Dr. Williams Appropriately Analyzes The Issues

#### 1.   CDK's Motion Relies On the Wrong Legal Standard

CDK's motion relies on the wrong standard. According to CDK:

> The central question in this case is whether Plaintiffs can muster evidence that "tends to exclude the possibility that" CDK and Reynolds "acted independently" in deciding to secure their respective DMSs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). To assess that question, Dr. Williams had to evaluate whether CDK and Reynolds had an incentive to act as they did *without* conspiring.

CDK Mem. at 11. 

*Id*. CDK is wrong for two reasons.

First, the *Matsushita* standard cited by CDK only applies where the plaintiff lacks direct evidence of a conspiracy; it does not apply to the present action, as there is *direct evidence* that CDK and Reynolds entered into a conspiracy to restrain competition. In *Matsushita*, the Supreme Court held that "[t]o survive a motion for summary judgment . . ., a plaintiff seeking damages for a violation of [Sherman Act] § 1 must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." 475 U.S. at 588 (citation omitted). However, that standard applies only where the plaintiff relies solely on circumstantial evidence to prove the conspiracy. *See Miles Distribs. v. Specialty Constr. Brands, Inc.*, 476 F.3d 442, 449 (7th Cir. 2007)

("When a plaintiff attempts to defeat summary judgment by highlighting circumstantial evidence of a conspiracy, some of the evidence must tend to exclude the possibility that the alleged conspirators acted independently rather than in concert.") (internal citations omitted).[5] "Of course, any direct evidence of agreement--such as an admission by an insider--will permit a plaintiff to survive summary judgment." *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 998 (N.D. Ill. 2011) (citing *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002)).

The record in this case contains *direct evidence* of Defendants' conspiracy, including the February 2015 Agreements themselves, as well as admissions by Defendants' senior executives. *See Authenticom* Tr. at 138:20-139:19 (testimony of Authenticom CEO Steven Cottrell that Reynolds VP Robert Schaefer admitted that Reynolds had "made agreements with the other major DMS providers . . . to block independent integrators such as Authenticom."); *id.* at 139:20-142:12 (CDK executive Dan McCray told Cottrell that Defendants are "working collaboratively to remove all hostile integrators from our DMS system"); Cottrell Tr. at 60:21-65:12, 75:13-80:21 (███████ This Court previously held that "*[s]uch admissions are direct evidence of an illegal conspiracy*." ECF No. 507 at 30 (emphasis added); *see also* ECF No. 176 at 26 ("Taken as true, the fact that two of Defendants' executives admitted an agreement to block Authenticom and other integrators from accessing dealer data shows directly the existence of such an agreement. *No further inference is required*.") (emphasis added). Thus, Plaintiffs need not proffer *any* circumstantial evidence in order to avoid summary judgment -- much less circumstantial evidence that "tends to exclude" the possibility of independent action.

---

[5] *See also In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 906 F.2d 432, 441 (9th Cir. 1990) ("the *Matsushita* standards do not apply when the plaintiff has offered direct evidence of conspiracy"); *Rossi v. Std. Roofing*, 156 F.3d 452, 466 (3d Cir. 1988) (same).

PUBLIC - REDACTED VERSION

Second, *Matsushita* sets forth a summary judgment standard, not a standard for evaluating expert testimony. To be admissible, it suffices that the expert's testimony would "assist the trier of fact to understand the evidence or to determine a fact in issue". *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702(a)). Thus, an economist may testify about factors supporting a finding of conspiracy, regardless of whether any of those factors (alone or in combination) "tend to exclude" the possibility of independent action sufficient to defeat summary judgment. *See Kleen Prods.*, 2017 WL 2362567, at \*14 ("Whether [expert] has drawn a reasonable conclusion based on his analysis and actually made a *prima facie* case for conspiracy is a matter to be examined at summary judgment, and whether he has made a persuasive case is a matter left to the jury.").

Nor does it matter that CDK disagrees with Dr. Williams's analysis. "As the Seventh Circuit has stressed, the focus of a *Daubert* inquiry is 'not the ultimate correctness of the expert's conclusions,' but rather 'the soundness and care with which the expert arrived at her opinion[.]'" *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-CV-5836, 2017 WL 2178504, at \*6 (N.D. Ill. May 16, 2017) (citation omitted).

### 2. Dr. Williams Properly Applies His Economic Expertise to Evidence

CDK also argues for exclusion of Dr. Williams's opinions, claiming that he is no more competent than the average juror at interpreting record evidence. However, in the antitrust context, courts have widely rejected the argument CDK makes here in suggesting that the court detach Dr. Williams's economic analyses from his understanding of the record evidence and Plaintiffs' theory of the conspiracy. In fact, courts have permitted experts to discuss such evidence—not to opine on the ultimate legal issues, but to opine, based on their economic analyses, on whether the evidence of defendants' behavior is consistent with collusion and inconsistent with competition.

For example, in *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412 (E.D. Pa. 2015), the court rejected an argument that an expert cannot opine on whether the factual record

provides evidence of collusion. *Id*. at 424. The court found that the expert had assessed market factors that made it more conducive to collusion, and that such testimony was helpful to a jury, stating that "antitrust legal theory is inextricably linked with economic theory and [the expert's] testimony can help explain the economic theory and how the evidence connects to it." *Id*. at 425.[6]

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████  *See*, *e.g.*, Whinston Report ¶¶ 171, 224, 249-258, 323-331, 337-350.[7] CDK also raises

---

[6] *See also In re Delta/Airtran Baggage Fee Antitrust Litig.*, 245 F. Supp. 3d 1343, 1359 and n.23 (N.D. Ga. 2017), *aff'd sub nom. Siegel v. Delta Air Lines, Inc.*, 714 F. App'x 986 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 827 (2019) (on summary judgment, admitting expert testimony about evidence as "consistent with a finding that Defendants engaged in a conspiracy to fix prices"); *In re Disposable Contact Lens Antitrust Litig.*, 329 F.R.D. 336, 372 (M.D. Fla. 2018) (noting how courts routinely admit expert evidence that defendants' conduct is "consistent with" collusion); *In re Blood Reagents Antitrust Litig.*, No. 09-MD-2081, 2017 WL 3096168, at *5 (E.D. Pa. July 19, 2017) ("An economics expert is permitted to testify whether certain conduct is consistent with collusion and to use the factual record when formulating his or her opinion."); *In re Titanium Dioxide Antitrust Litig.*, No. CIV.A. RDB-10-0318, 2013 WL 1855980, at *4 (D. Md. May 1, 2013) (permitting expert to "testify as to certain indicia of collusion and cartel behavior" since "[c]ourts regularly admit expert testimony regarding whether conduct is indicative of collusion") (internal citation and quotation marks omitted); *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) (allowing expert to testify "that certain conduct by the alleged conspirators is consistent with the existence of an agreement to fix prices").

[7] The cases CDK cites do not support its argument. In *Jamsport Entm't, LLC v. Paradama Prods., Inc.*, No. 02 C 02298, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005), the court disallowed the expert's intent testimony, but allowed testimony re: *economic* inferences. *See id.* at *10. In contrast, Dr. Williams does not opine about CDK's actual intent; ██████████████████████  *See* ████████████ Report ¶¶ 113-132; *see also In re Delta*, 245 F. Supp. 3d at 1359 (citing cases finding that an economic expert may testify whether certain behavior is consistent with collusion). Additionally, *Viamedia, Inc., v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020), *supports* the acceptance of Dr. Williams's opinions as the Seventh Circuit found that the expert economist's application of his specialized knowledge to the evidence was helpful to the jury. And in *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chi.*, 877 F.2d 1333 (7th Cir. 1989), the court excluded the testimony of an expert who drew inferences from evidence that were legal in nature regarding "good faith and fair dealing." *Id*. at 1340. However, the court in that case noted that a proper opinion by the challenged expert, as an *economist*, would have been to opine about whether the relevant markets were *competitive*. ███████████████████████  Report ¶¶ 96-112.

specific arguments concerning Dr. Williams's opinions about the record evidence; however, such arguments go to the weight of his testimony, not its admissibility, and are more appropriately raised through cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); *Disposable Contact Lens*, 329 F.R.D. at 373; *U.S. Info. Sys. v. IBEW Local Union No. 3*, 313 F. Supp. 2d 213, 229 (S.D.N.Y. 2004).

3.  Dr. Williams Analyzed Whether CDK's Actions Were Motivated by Unilateral Incentives

CDK argues that Dr. Williams ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████ CDK Mem. at 11-12. ██████████████████████████████████

██████████████████████████████████████████ As explained in Section I.B

*supra*, ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

(Reply ¶¶ 12-35, 66-79), ████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████ (*Id.* ¶ 8). ████████████████████████████████████

████████████████████████████████████████ Such disagreements are properly addressed

through cross-examination at trial. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

**PUBLIC - REDACTED VERSION**

**B.      Dr. Williams "Plus Factor" Analysis is a Reliable and Accepted Methodology**

CDK seeks to exclude Dr. Williams's opinions concerning "plus factors" (*i.e.*, "additional factual circumstances . . . indicating an agreement", *Tichy v. Hyatt Hotels Corp.*, 376 F. Supp. 3d 821, 834 (N.D. Ill. 2019)), arguing that "modern Seventh Circuit decisions" cases do not "accept a 'plus factors' approach." CDK Mem. at 13 (citing *Omnicare Inc. v. Unitedhealth Grp., Inc.*, 629 F.3d 697 (7th Cir. 2011) and *Kleen Prods., LLC v. G. Pac., LLC*, 910 F.3d 927 (7th Cir. 2018)). CDK is dead wrong. Indeed, in both *Omnicare* and *Kleen Prods.*, the Circuit *did* analyze plus factors. Those factors include (i) interfirm communications, *Omnicare*, 629 F.3d at 709 ("Information exchange can help support an inference of a price-fixing agreement"); *Kleen Prods.*, 910 F.3d at 938; (ii) a firm's "abrupt change in business practices," *id.* at 936; and (iii) a market's "structural features that make it 'conducive to successful collusion,' such as a small number of manufacturers . . . and high barriers to entry," *id.* at 935 (citation omitted) -- *i.e.*, ███████████ ████████████████████ *See, e.g.*, Report ¶¶ 67, 70-73, 96-97, 102-03, 117-119.

CDK also argues that the Seventh Circuit has not used the phrase "plus factors" in nearly 30 years;[8] however, courts *within* the Seventh Circuit have analyzed, and used the phrase, "plus factors" in the antitrust context multiple times during just the last ten years, including this Court. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CR 3690, 2013 WL 212908, at *5 (N.D. Ill. Jan. 18, 2013) ("Unusual and substantial pricing stability is not expected in a competitive market and, as a 'plus factor,' can indicate collusion.") (citation omitted).[9]

---

[8] This argument by CDK is not just silly, it is misleading. In *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 628 (7th Cir. 2010), while the Seventh Circuit did not use the exact phrase "plus factors", it used the term "'parallel plus' behavior" to describe "the type of evidence that enables parallel conduct to be interpreted as collusive".

[9] *See also Tichy*, 376 F. Supp. 3d at 834; *Wash. Cty. Health Care Auth., Inc. v. Baxter Int'l Inc.*, 328 F. Supp. 3d 824, 840-44 (N.D. Ill. 2018); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp.

**PUBLIC - REDACTED VERSION**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ But other courts have cited Kovacic (former FTC Chairman) as a well-accepted, reliable source. *See In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *12 ("An expert's analysis of plus factors focusing on market conditions and firm behavior finds its roots in the extensive antitrust literature," citing Kovacic); *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) (citing Kovacic on plus factors). CDK cites *Valspar Corp. v. E.I. du Pont de Nemours & Co.,* 152 F. Supp. 3d 234 (D. Del. 2016), implying that the court rejected Kovacic's entire plus factor analysis. However, the *Valspar* court only declined to accept one "isolated quotation" from Kovacic that is not at issue in this case, not Kovacic's entire analysis. *Valspar Corp. v. E.I. du Pont de Nemours & Co.*, 873 F.3d 185, 201 (3d Cir. 2017). In fact, the Third Circuit *affirmatively* cited Kovacic for its discussion of plus factors. *Id.* at 207, 210.

In sum, CDK's argument that the "plus factor" methodology used by Dr. Williams is a relic that is not well-accepted by courts does not hold up to scrutiny. Further, while CDK criticizes each plus factor in isolation, for purposes of summary judgment, courts properly consider *all* evidence of an antitrust conspiracy *holistically*. *See In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d at 661 (reversing grant of defendants' summary judgment motion: "[N]o single piece of the evidence that we're about to summarize is sufficient in itself to prove a price-fixing conspiracy. But that is not the question. The question is simply whether this evidence, considered as a whole and in combination with the economic evidence, is sufficient to defeat summary judgment."); *id.* at 655 (considering evidence separately is a "trap to be avoided").

---

3d 772, 790 (N.D. Ill. 2017); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 998 (N.D. Ill. 2011).

1.    <u>Plus Factor 1: Actual Prices Exceed But-For Prices</u>

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████. *See* Report ¶¶ 114-116, 133-171.

Citing *Anderson News, LLC v. Am. Media, Inc.*, No. 09 Civ. 2227 (PAC), 2015 WL 5003528 (S.D.N.Y. Aug. 20, 2015), CDK suggests that Dr. Williams's opinion should be excluded

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████ Further, the court in *Anderson News* did not exclude the expert's opinion concerning "plus factors"; it merely held that the expert should not describe the factor as "super." *Id*. at *3. Minor disputes over terminology are not proper grounds for exclusion under *Daubert*.

CDK also argues that because ████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████ CDK Mem. at 15.████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████ *See* Report ¶¶ 157-163; Reply ¶ 57.██████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████ *See* Reply ¶ 50█

████████████████████████████████████ Thus, while CDK may have had some

unilateral power in the DIS market, that power would not explain an increase in actual CDK DIS prices over "but-for" prices during the alleged damages period unless CDK's unilateral market power in the but-for world with no conspiracy was *higher* during the alleged damages period that it was during the benchmark period. Neither Dr. Williams nor CDK's experts have made that contention; thus, CDK's argument fails.

       2.    <u>Plus Factors 2 and 3: Communications at High Levels</u>

CDK asserts  those communications were for the "legitimate" purpose of facilitating the February 2015 Agreements. But CDK conveniently ignores Plaintiffs' *sustained claims* (*see* Complaint ¶¶ 167-173; ECF No. 507 at 20) that those agreements themselves violated §1 of the Sherman Act. Defendants' communications,

*See* Reply ¶ 15.

Contrary to CDK's assertion,

*See* Report ¶ 78 (

; Reply at Table A4

.[10]

---

[10] Citing *Brown v. Burlington N. Santa Fe. Ry. Co.*, 765 F.3d 765, 773-74 (7th Cir. 2014), CDK argues that Dr. Williams cannot ignore the "obvious alternative explanations" for the communications. *Brown* (not an antitrust case) held that a physician did not meaningfully consider the other potential causes when determining the cause of the plaintiff's injury. *Id.* CDK's disagreement with Dr. Williams's analysis is not a basis for excluding his opinion. *See Smith*, 215

Although CDK disputes the import of Defendants' high level communications with each other (and can challenge their significance before the jury), ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████.[11]

### 3.    Plus Factors 4 and 5: The February 2015 Agreements

Dr. Williams properly does not opine on the legal effect of the agreements, as that is a legal issue. *See Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 661-62 (7th Cir. 2018). As an economic expert, however, Dr. Williams is qualified to assess whether the level of cooperation embodied in the agreements was anticompetitive and against Defendants' unilateral self-interests. *See Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-cv-230, 2013 WL 6909953, at *11 (D. Vt. Dec. 31, 2013) (expert may testify about "economic incentives of the various participants" in the conspiracy that were based, *inter alia,* on "the contractual relationships between the participants"). ████████████████████████████████████

███████████████████████████████████████████████████████████████

Report ¶ 121. ████████████████████████████████████████

███████████ *See* Reply at Table A4. ████████████████████████████

---

F.3d at 718. Whether Defendants' high-level communications were legitimate (as CDK urges) is not an issue for determination under *Daubert*.

[11] *See Re/Max Int'l v. Realty One, Inc.*, 173 F.3d 995, 10009 (6th Cir. 1999) ("plus factors" include "whether the defendants have *exchanged or have had the opportunity to exchange information relative to the alleged conspiracy*") (emphasis added); *Battipaglia v. N.Y. State Liquor Auth.*, 745 F.2d 166, 175 (2d Cir. 1984) ("[w]hether or not there was such an agreement [to fix prices] would depend on the nature of the information exchanged"); *In re Plywood Antitrust Litig.*, 655 F.2d 627 (5th Cir. 1981) (high level interfirm communication can constitute a "plus factor").

*See also* Report ¶ 117 (████████████████████████████████████████

███████████████████████████████████████████████████████████████



as evidence of an "actual, manifest agreement" between defendants is deemed a "key plus factor" by courts. *See In re Ethylene Propylene Diene Monomer (EDPM) Antitrust Litig.*, 681 F. Supp. 2d 141, 173 (D. Conn. 2009).

### 4. Plus Factor 6: Enforcement Efforts

CDK does not dispute that evidence of enforcement efforts can constitute a plus factor. *See Petruzzi's IGA Supermarkets v. Darling-Del. Co.*, 998 F.2d 1224, 1233 (3d Cir. 1993) (actions to enforce agreement are "circumstantial evidence that an unlawful agreement exists."). In typical fashion, CDK argues that the documents cited by Dr. Williams do not reflect enforcement efforts; instead, they were communications designed to further the legitimate business purpose of effectuating the Data Exchange Agreement. But again, the parties' disagreement here does not warrant exclusion under *Daubert*. ███████████████████████████ (Report ¶¶ 123-24) ██████████████████████████████████████████ ████████████████████████ A coordinated market message between purported competitors with efforts to ensure its consistency is clearly indicative of collusion.

### 5. Plus Factor 7: Pretextual Explanations

CDK asserts that pretextual explanations for the disputed conduct are not an accepted plus factor, citing *Lamb's Patio Theatre, Inc. v. Universal Film Exchs., Inc.*, 582 F.2d 1068, 1070 (7th Cir. 1978). There, the Court held that at the summary judgment stage, pretextual reasons for the allegedly collusive conduct -- standing alone -- would not suffice to prove the existence of a

---

[12] *See* Tr. at 160:20-161:21 (████████████████████████████████████████████); *id.* at 161:19-21 (████████████████████████████████████████████; *id.* at 161:25-162:18, 165:13-17 (████████████████████████████ ████████████████████████████████████████████.

conspiracy. *See id.* at 1070; *see also Miles Distribs.*, 476 F.3d at 452 ("pretextual reasons have some probative value" when combined with other evidence of a conspiracy). But this is yet another example of CDK conflating a summary judgment standard (and, in fact, the wrong standard here, given direct evidence of the conspiracy) with the *Daubert* standard. *See supra* at 10. ███

████████████████████████████████

████████████████████████████████

████████████████████████████████

(Report ¶¶ 126-27); ████████████████████ (¶ 128); ███████████

████████ ¶ 129), ████████████████████

## C.    Dr. Williams's Analysis of Industry Characteristics Is Helpful

CDK argues that Dr. Williams's discussion of "industry characteristics" should be excluded because "structural evidence" about an industry does not "tend to exclude the possibility of independent action." CDK Mem. at 20 (quoting *Kleen Prods.*, 910 F.3d at 935). However, *neither* of the two cases cited by CDK (*Kleen Prods.* and *E.I. du Pont de Nemours & Co. v. F.T.C.*, 729 F.2d 128, 139 (2d Cir. 1984)) involved the exclusion of expert testimony. Dr. Williams's testimony no doubt will help the jury to understand the economic characteristics of the DMS market ███████████████████████████████ ████████████ (Report ¶ 102), even if, standing alone, they do not answer the ultimate question of whether Defendants conspired. *See Kleen Prods.*, 2017 WL 2362567, at *14 (denying motion to exclude expert's testimony about industry structure, finding that it was relevant to the existence of a conspiracy even if it was not dispositive "by itself").

## CONCLUSION

For the foregoing reasons, CDK's Motion should be denied in its entirety.

20

PUBLIC - REDACTED VERSION

DATED: May 29, 2020

Respectfully submitted,

*/s/ Peggy J. Wedgworth*

Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, Suite 1920
New York, New York 10119-0165
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Counsel for the Dealership Class*

Leonard A. Bellavia (*pro hac vice*)
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

PUBLIC - REDACTED VERSION

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, Illinois 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
**CLFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com

*MDL Liaison Counsel*

**PUBLIC - REDACTED VERSION**

<u>**CERTIFICATE OF SERVICE**</u>

      I, Peggy J. Wedgworth, an attorney, hereby certify that on May 29, 2020, I caused a true and correct copy of the foregoing **DEALERSHIP CLASS PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CDK GLOBAL, LLC'S MOTION TO EXCLUDE THE OPINIONS AND PROFERRED TESTIMONY OF DR. MICHAEL A. WILLIAMS** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                 */s/ Peggy J. Wedgworth*
                                 Peggy J. Wedgworth