**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Robert M. Dow, Jr. Magistrate Judge Jeffrey T. Gilbert |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.) | **PUBLIC - REDACTED** |

**AUTHENTICOM INC.'S OPPOSITION TO DEFENDANTS' MOTION
TO EXCLUDE THE EXPERT TESTIMONY OF CATHARINE LAWTON**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

LEGAL STANDARD ............................................................................................................. 7

ARGUMENT .......................................................................................................................... 8

    I.      MS. LAWTON'S YARDSTICK RELIABLY ESTIMATES DAMAGES ................. 8

        A.  Defendants' Challenges To Ms. Lawton's Yardstick Go To Weight, Not
            Admissibility .......................................................................................................... 8

        B.  ████████████████████████████████ ............................................... 9

        C.  ██████████████████████████████████ ............................................. 17

    II.     ██████████████████████████████████ .............................. 22

    III.    DEFENDANTS' EFFORT TO EXCLUDE MS. LAWTON'S EXPLANATION OF
          THE FACTUAL BASIS FOR HER OPINIONS CONFLICTS WITH
          PRECEDENT ......................................................................................................24

CONCLUSION ..................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*,
  2016 WL 6075566 (W.D. Tex. Apr. 22, 2016) ........................................................ 18

*Black & Decker Corp. v. Positec USA Inc.*,
  2015 WL 5612340 (N.D. Ill. Sept. 22, 2015) ..................................................... 7, 10

*Blood Reagents Antitrust Litig., In re*,
  2015 WL 6123211 (E.D. Pa. Oct. 19, 2015) .......................................................... 12

*Blue Cross & BlueShield United of Wis. v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998) ............................................................................... 21

*Bonjorno v. Kaiser Aluminum & Chem. Corp.*,
  752 F.2d 802 (3d Cir. 1984) .................................................................................. 8

*Callpod, Inc. v. GN Netcom, Inc.*,
  703 F. Supp. 2d 815 (N.D. Ill. 2010) .................................................................... 15

*Cates v. Whirlpool Corp.*,
  2017 WL 1862640 (N.D. Ill. May 9, 2017) ............................................................ 24

*CDW LLC v. NETech Corp.*,
  906 F. Supp. 2d 815 (S.D. Ind. 2012) ................................................................... 11

*City of Tuscaloosa v. Harcros Chems., Inc.*,
  158 F.3d 548 (11th Cir. 1998) .............................................................................. 24

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ............................................................................. 19

*Craftsmen Limousine, Inc.v. Ford Motor Co.*,
  363 F.3d 761 (8th Cir. 2004) ............................................................................... 21

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ........................................................................... 1, 7, 23, 25

*Eleven Line, Inc. v. N. Texas State Soccer Ass'n*,
  213 F.3d 198 (5th Cir. 2000) ............................................................................... 11

*Elorac, Inc. v.Sanofi-Aventis Canada Inc.*,
  2017 WL 3592775 (N.D. Ill. Aug. 21, 2017) ......................................................... 21

*Emblaze Ltd. v. Apple Inc.*,
  52 F. Supp. 3d 949 (N.D. Cal. 2014) .................................................................... 24

ii

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
    744 F. Supp. 2d 870 (E.D. Wis. 2010) ............................................................ 18, 24

*Flonase Antitrust Litig., In re*,
    284 F.R.D. 207 (2012) .................................................................................... 9

*Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig., In re*,
    2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) .................................................. 11

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*,
    221 F. Supp. 3d 1033 (N.D. Ind. 2016) .......................................................... 17

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*,
    2016 WL 6091244 (N.D. Ind. Oct. 19 2016) .................................................. 24

*High Fructose Corn Syrup Antitrust Litig., In re*,
    295 F.3d 651 (7th Cir. 2002) .......................................................................... 9

*Home Placement Serv., Inc. v. Providence Journal Co.*,
    819 F.2d 1199 (1st Cir. 1987) ........................................................................ 11

*Hyland v. HomeServices of Am., Inc.*,
    2012 WL 12995647 (W.D. Ky. Jul. 3, 2012) .................................................. 22

*Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*,
    2011 WL 167259 (D. Minn. Jan. 14, 2011) .................................................... 18

*Jamsport Entm't, LLC v. Pasadena Prods. Inc.*,
    2005 WL 14917 (N.D. Ill. Jan. 3, 2005) ........................................................ 24

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ........................................................................................ 7

*Loeffel Steel Prods. Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ............................................................ 11

*Manpower, Inc. v. Ins. Co. of Pennsylvania*,
    732 F.3d 796 (7th Cir. 2013) .......................................................... 2, 8, 9, 11, 15

*MCI Commc'ns Corp. v. AT&T Co.*,
    708 F.2d 1081 (7th Cir. 1983) ........................................................................ 21

*MediaTek inc. v. Freescale Semiconductor, Inc.*,
    2014 WL 971765 (N.D. Cal. Mar. 5, 2014) .................................................. 24, 25

*Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*,
  850 F.2d 1286 (8th Cir. 1988), *amended,* 878 F.2d 1118 (8th Cir. 1989) ........................... 21-22

*Nilavar v. Mercy Health Sys.-W. Ohio*,
  2005 WL 8162667 (S.D. Ohio June 2, 2005) ........................................................................ 24

*Online DVD Rental Antitrust Litig., In re*,
  2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ....................................................................... 18

*Prograf Antitrust Litig., In re*,
  2014 WL 7641156 (D. Mass. Dec. 23, 2014) ................................................................... 10, 19

*S. Pac. Commc'cns Co. v. AT&T. Co.*,
  556 F. Supp. 825 (D.D.C. 1982) ........................................................................................... 18

*SourceOne Dental, Inc. v. Patterson Cos.*,
  2018 WL 2172667 (E.D.N.Y. May 10, 2018) .......................................................................... 9

*Southeastern Milk Antitrust Litig., In re*,
  2010 WL 8228838 (E.D. Tenn. Dec. 8, 2010) ......................................................................... 9

*Spray-Rite Serv. Corp. v. Monsanto Co.*,
  684 F.2d 1226 (7th Cir. 1982), *aff'd,* 465 U.S. 752 (1984) ................................................... 20

*Stollings v. Ryobi Techs., Inc.*,
  725 F.3d 753 (7th Cir. 2013) ............................................................................................ 2, 8

*Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig., In re*,
  421 F. Supp. 3d 12 (E.D. Pa. 2019), *appeal docketed*, No. 19-3640
  (3d Cir. Nov. 15, 2019) ..................................................................................................... 8-9

*Sulfuric Acid Antitrust Litig., In re*,
  446 F. Supp. 2d 910 (N.D. Ill. 2006) ...................................................................................... 8

*Sys. Dev. Integration, LLC v. Computer Scis. Corp.*,
  886 F. Supp. 2d 873 (N.D. Ill. 2012) .................................................................................... 21

*Syufy Enters. v. Am. Multicinema, Inc.*,
  793 F.2d 990 (9th Cir.1986) ............................................................................................... 19

*Tawfilis v. Allergan, Inc.*,
  2017 WL 3084275 (C.D. Cal. June 26, 2017) .......................................................................... 9

*United States v. Price*,
  995 F.2d 729 (7th Cir. 1993) ............................................................................................... 23

*Wilbern v. Culver Franchising Sys., Inc.*,
  2015 WL 5722825 (N.D. Ill. Sept. 29, 2015) ........................................................................... 9

**RULES**

Fed. R. Evid. 702 ............................................................................................. 7, 9, 10, 11

**OTHER AUTHORITIES**

Daniel L. Rubinfeld, *Antitrust Damages*,
   https://ec.europa.eu/competition/antitrust/actionsdamages/rubinfeld.pdf .................................. 8

Daniel L. Rubinfeld, *Quantitative Methods in Antitrust*,
   1 Issues in Competition Law and Policy 723 (ABA Section of Antitrust Law, 2008),
   https://www.law.berkeley.edu/files/QM_Antitrust.pdf .......................................................... 24

## INTRODUCTION

In response to the opening report of Authenticom's damages expert, Catharine Lawton, Defendants served a rebuttal report from Prof. Daniel Rubinfeld.  Assuming (for purposes of this brief only) that Prof. Rubinfeld's opinions are admissible, they set up a classic "battle of the experts." ████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████

Two aspects of Prof. Rubinfeld's opinions directly undermine Defendants' *Daubert* challenge. ████████████████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████

It is telling that Defendants' *Daubert* motion scarcely mentions Prof. Rubinfeld and instead leads with a new (apparently lawyer-developed) argument ███████████████ : namely, an attack on the "reliability (and interpretation) of Authenticom's data." Mot. 1 (Dkt. 880). But that last-ditch framing – to which Defendants never return in their argument – also founders as a matter of *Daubert* law – this time on the Seventh Circuit's clear rule that such matters are at best for trial, rather than *Daubert*. *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 808 (7th Cir. 2013) (reversing contrary exclusion of damages expert); *see Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766 (7th Cir. 2013) (similar; reversing exclusion of an expert). And Defendants' suggestion that there was "litigation-driven manipulation" of data is flat wrong. ███████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████   ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████

        ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

## BACKGROUND



**A.** ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████. *See* Dkt. 889-04, Lawton Rep. ¶ 21.

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████ *See id.* ¶ 22.[1]

_____

[1] ███████████████████████████████████████████████
███████████████████████████████████ *See* Lawton Rep.
¶¶ 510-512. ████████████████████████ *See id.* ¶ 304 &

3

██████████████████████████████████ *Id.* ¶ 510. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* ██████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████. *See id.* ¶ 511 & Tables 9.1 & 9.2. ███████████████

████████████████████████████████████████████████████████████

████████████████████████ *See* Dkt. 871-08, Rubinfeld Dep. 123:8-130:5.

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ *See id.*

¶¶ 517-519. ████████████████████████████████████████████

---

Exhibit E.

4

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████ *See id.* ¶¶ 513, 515.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id.*

¶¶ 560-564. █████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

**B.** ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████. That aspect of Dr. Rubinfeld's opinion is inadmissible – for reasons set forth

elsewhere, *see* Dkt. 871 – and at any rate does not bear on the reliability of Ms. Lawton's opinions.

As to Ms. Lawton's actual damages model, Prof. Rubinfeld agreed ███████████████

████████████████████████████████████████████████████

Rubinfeld Dep. 92:10-22. ██████████████████████████████



*Id.* at 92:10-101:10.

Dkt. 889-20, Rubinfeld Rebuttal Rep. ¶¶ 84-86.

*Id.* ¶ 85.

*Id.* ¶¶ 86-87.

Dkt. 889-06, Lawton Dep. 227:7-228:20,



█████████████████████████████████████████ *see id.* at 358:17-360:7.[2]

█████████████████████████████████████████

█████████████████████████████████████████

████████ Dkt. 889-05, Lawton Reply Rep. ¶¶ 87-97, ████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████ *See* Dkt. 871-02.

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████

## LEGAL STANDARD

Two principles regarding the application of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), are particularly salient. First, a qualified expert's testimony is unreliable only when it falls outside the range "where experts might reasonably differ." *Kumho Tire v. Carmichael*, 526 U.S. 137, 153 (1999). Where, as here, expert methods require professional judgment, and the expert gives reasoned explanations to support the exercise of that judgment, the proper way to test those judgments is through "vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof." *Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 5612340, at *21 (N.D. Ill. Sept. 22, 2015) (Dow, J.) (cleaned up). Second, reliability "is primarily a question of the validity of the methodology

---

[2] █████████ (at 6) ████████████████████████████████████ ███████████████████████████ Dkt. 889-03, Israel Dep. 146:5-11.

employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower*, 732 F.3d at 806. "The reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology – the framework – of the expert's analysis." *Id.* at 808; *Stollings* 725 F.3d at 766 (similar).

## ARGUMENT

## I.     MS. LAWTON'S YARDSTICK RELIABLY ESTIMATES DAMAGES

### A.  Defendants' Challenges To Ms. Lawton's Yardstick Go To Weight, Not Admissibility

Defendants' motion proceeds from the incorrect premise that comparability and independence are binary, black-or-white propositions. Legally, it is a "basic principle" "in antitrust cases" that "damages need only be proven to a *reasonable degree of certainty*, and that there is broad latitude in establishing antitrust damages." *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 924 (N.D. Ill. 2006) (emphasis added). As "the Supreme Court has said" for decades, any other rule "would enable the wrongdoer to profit by his wrongdoing at the expense of his victim." *Id.* (rejecting *Daubert* challenge to antitrust damages expert). Accordingly, "[i]n constructing a hypothetical world free of the defendants' exclusionary activities, the plaintiffs are given some latitude in calculating damages, so long as their theory is not wholly speculative." *Bonjorno v. Kaiser Aluminum & Chem. Corp.*, 752 F.2d 802, 812 (3d Cir. 1984).

Prof. Rubinfeld acknowledged that same latitude as an economist: a yardstick need not be perfect, but just "*reasonably* comparable to the market at issue." Daniel L. Rubinfeld, *Antitrust Damages*, at 3-4, https://ec.europa.eu/competition/antitrust/actionsdamages/rubinfeld.pdf (emphasis added). Indeed, "[t]he selection of comparators will seldom approach the 'Utopian ideal' of identifying the perfect clone." *In re Suboxone (Buprenorphine Hydrochloride &*

8

*Nalaxone) Antitrust Litig.*, 421 F.Supp.3d 12, 43 (E.D. Pa. 2019), *appeal docketed*, No. 19-3640 (3d Cir. Nov. 15, 2019). Experts thus often build yardsticks using reasonable proxies – for example, data from a different time period, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 223-24 (2012), a different firm, *see SourceOne Dental, Inc. v. Patterson Cos.*, 2018 WL 2172667, at *4 (E.D.N.Y. May 10, 2018), a different geography, *Wilbern v. Culver Franchising Sys.*, Inc., 2015 WL 5722825, at *31 (N.D. Ill. Sept. 29, 2015), or aggregated data, *In re Southeastern Milk Antitrust Litig.*, 2010 WL 8228838, at *2 (E.D. Tenn. Dec. 8, 2010).

For these reasons, "[a]rguments about what factors an expert should have controlled for in conducting a yardstick analysis generally go to the weight, rather than the admissibility, of the expert's testimony." *Tawfilis v. Allergan, Inc.*, 2017 WL 3084275, at *6 (C.D. Cal. June 26, 2017). That is consistent with the general principle that debates about the application of an accepted economic method should be resolved through credibility determinations after cross-examination at trial. *See, e.g.*, *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 660-61 (7th Cir. 2002) (refusing to exclude regression analysis based on variable-selection criticisms); *Manpower*, 732 F.3d at 808 (Rule 702 trains on "the reliability of the methodology – the framework – of the expert's analysis"). Defendants' criticisms of Ms. Lawton's application of this methodology choices are properly vetted through cross-examination; they do not warrant depriving Authenticom of its right to a jury trial. At any rate, those criticisms are unpersuasive.

**B.** ██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

            ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ *See*

*In re Prograf Antitrust Litig.*, 2014 WL 7641156, at *3 (D. Mass. Dec. 23, 2014) (where "[t]he factors affecting comparability . . . involve questions about which reasonable economists may disagree," "[c]ourts have been reluctant to determine comparability before trial"; rejecting comparability attack on antitrust expert's but-for world and collecting cases). ████████████

████████████████████████████████████████████████ the error the Seventh Circuit has repeatedly corrected: treating questions about inputs as the subject of *Daubert* rather than "vigorous cross-examination, presentation of contrary evidence, and careful instructions on the burden of proof." *Black & Decker*, 2015 WL 5612340, at *21 (Dow, J.) (cleaned up). Defendants cite not a single case (at 7) in which ████████████████

10

████████ led to the exclusion of any damages model[3] – certainly not in an antitrust case.[4] This should not be the first. *Cf. In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 WL 1196990, at *22 (N.D. Ill. Mar. 31, 2017) (Dow, J.) ("In essence, the defendants are asking the [C]ourt to determine which [party's] model is *most* accurate, which is ultimately a merits decision.") (first alteration in original).

**2.** The specific criticisms Defendants advance are misplaced.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

That is a non-starter as a *Daubert* argument, because as discussed above, disagreements among experts about the reliability of the underlying data on which an expert relies are for the jury; they are not within Rule 702's purview. *Manpower*, 732 F.3d at 808.

---

[3] Defendants' non-antitrust cases both relied on the expert's inability to articulate any justification for the benchmark selected. *Loeffel Steel Prods. Inc. v. Delta Brands, Inc.* recognized that "exact correlation is not necessary," but it excluded the expert's yardstick because he treated eight separate companies monolithically while knowing "nothing about the respective geographic or product markets or customer bases of the eight companies or of the quality of service or any other relevant factor that would bear upon the question of comparability." 387 F. Supp. 2d 794, 813 (N.D. Ill. 2005). In *CDW LLC v. NETech Corp.*, the expert opined that the affected regional office of a firm would have grown at a rate equal to the average of the growth rates across a host of the firm's other offices in other geographic regions, offering "no reason" for doing so; further, that the results were over three times higher than an alternative estimate he had performed. 906 F. Supp. 2d 815, 824-25 (S.D. Ind. 2012). These cases bear no resemblance to this case, because ████████████████████████████████████

[4] In *Home Placement Service, Inc. v. Providence Journal Co.*, the benchmark used was much farther afield – a different firm in a different geographic market that had already sued the same defendant for similar conduct – and there was virtually no evidence "directly bearing on the issue of whether [the one] was sufficiently comparable to" the other. 819 F.2d 1199, 1206 (1st Cir. 1987). And in *Eleven Line, Inc. v. North Texas State Soccer Association*, which was not even a Rule 702 case, the court held that a lost-profits projection was insufficient to sustain a verdict for a host of reasons that have no bearing on this case. 213 F.3d 198, 208-09 (5th Cir. 2000) (noting there was no evidence that the plaintiff had ever made a relevant profit, the yardstick depended on an averaged return that did not account for important differences in (among other things) geography, quality, demand, costs, or revenues, and a key cash flow component of the model conflicted with record evidence).

*See* Dkt. 871-09, Rubinfeld Dep. 458:3-465:5.

The reliability standard focuses on whether the products in the yardstick are "fair congeners" for those that were affected by the anticompetitive conduct, *In re Blood Reagents Antitrust Litig.*, 2015 WL 6123211, at *21 (E.D. Pa. Oct. 19, 2015), such that trends in them can help the jury reasonably estimate how Authenticom's affected sales would have performed in the but-for world.



*See* Reply Rep. ¶ 80.

*Id.*

*Id.*

*id.,*

(Mot. 11) (emphasis added)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████.  *See* Lawton Reply Rep. ¶ 81.  Defendants' assertion (at 6, 11, 17) that ██

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ Israel Dep. 445:16-448:8. ████████████████

████████  *See id.*

Defendants also offer two related but even narrower criticisms.  First, they assert (at 12)

that ██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████  ██████████████████████████████████████

████████

*Second*, Defendants complain (at 13-15) that ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

14

[REDACTED]

*E.g.*, *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 824 (N.D. Ill. 2010) (permitting expert to supplement to respond to opinion not properly disclosed in opposing expert's report).  At any rate, [REDACTED] it is a matter for trial under *Manpower,* 732 F.3d at 808.

---

[5] [REDACTED]

15



(Mot. 15-16).

Such line-drawing debates are the province of trial, not *Daubert*.

at 16)

Lawton Reply Rep. ¶ 83.



**C.** ███████████████████████████████████████████

**1.** Defendants' complaint (at 17-19) that Ms. Lawton's damages estimate is inflated because she ████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████. *See* Lawton Rep. ¶¶ 66-68. █████████████████████████

██████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████ Dep. 233:15-234:4. The cases cited by Defendants are wholly inapposite. [8] █████████████████████

---

[7] ████████████████████████████████████████████
███████████ Lawton Rep. ¶ 516). █████████████████████
██████████████.

[8] *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 221 F. Supp. 3d 1033, 1039 (N.D. Ind. 2016) (excluding before-and-after model that was not tethered to any specific anticompetitive



██████████████████████████████████████████████████████████, *see supra* 8-9,

███████████████████████████████ *E.g.*, *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, 2011 WL 167259, at *13 (D. Minn. Jan. 14, 2011) (rejecting argument that damages expert failed to consider "effect of allegedly increasing competition" as "go[ing] to the weight, not admissibility, of" expert's "testimony"); *In re Online DVD Rental Antitrust Litig.*, 2010 WL 5396064, at *11 (N.D. Cal. Dec. 23, 2010) (similar conclusion in class-certification context).

    **2.** Defendants fare no better in their argument (at 19-20) that Ms. Lawton should have

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Mot. 20.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ (Reply Rep. ¶ 45), ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████

---

conduct, and so offered "an essentially non-falsifiable opinion that the jury will be unable to tie to any particular facts in the case"); *S. Pac. Commc'ns Co. v. AT&T Co.*, 556 F. Supp. 825, 1073, 1076 (D.D.C. 1982) (in bench trial (not *Daubert*) rejecting a damages model based on a "'but for' company" that "was an 'imaginary,' made-for-trial fiction which did not purport to be based on any business plan that" the plaintiff "ever had in the real world," because "several of the critical assumptions underlying [that] damage model are not supported by the record or are demonstrably inconsistent with conditions in the real world") (internal citation omitted); *see also 360 Mortg. Grp., LLC v. Homebridge Fin. Servs., Inc.*, 2016 WL 6075566, at *5 (W.D. Tex. Apr. 22, 2016) (in non-antitrust case, excluding damages analysis because numerous deficiencies together "suggest[ed] [a party] simply cherry-picked facts to support [its] desired outcome"); *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888-91 (E.D. Wis. 2010) (in non-antitrust case, excluding expert's analysis where expert "uniformly treated all evidence that undermined his underlying conclusion" with "unwarranted dismissal of the evidence or outright blindness to contrary evidence").



Rubinfeld Dep. 157:17-158:1.

*id.* at 55:17-22;

, *see id.* at 58:20-59:8;

*id.* at 60:25-61:13.[9]

Accordingly, this is not a case like *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) (Mot. 20), in which the damages expert conceded that his model could have accounted, but did not account, for relevant historical facts that the parties *agreed* were not related to any anticompetitive conduct. In that respect, Defendants' other comparability authorities (both addressed *supra* nn. 3-4) are mere exceptions to the general trend in yardstick cases, by which (again) "[c]ourts have been reluctant to determine comparability before trial." *In re Prograf*, 2014 WL 7641156, at *3; *see also Syufy Enters. v. Am. Multicinema, Inc.,* 793 F.2d 990, 1003 (9th Cir. 1986) (upholding damages award and explaining that, if there is sufficient evidence to find the markets comparable, "[it] is for the jury and not for [the Court] to weigh the conflicting evidence"). There is no reason to depart from that practice here.

---

[9] Defendants argue that

**3.** In a related vein, Defendants assert (at 21) that Ms. Lawton's yardstick needed to

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████ *See* ECF No. 871 at 11-12. ████████████

█████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

██████████████████████

Defendants also overstate Authenticom's burden ████████████████████████

███████████████████████████████ "A plaintiff claiming injury caused by more than one of the

[Defendants'] unlawful practices need not prove the amount of damage caused by each illegal

practice if the plaintiff shows that disaggregation is impracticable.  If the plaintiff shows that such

proof is impracticable, the burden shifts to the defendant to demonstrate the contrary." *Spray-Rite

Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1242-43 (7th Cir. 1982), *aff'd on other grounds,* 465

U.S. 752 (1984). █████████████████████████████████████████████████

████████████████████████████████ *see* Lawton Dep. 211:21-214:7, ████████████████

████████████████████████████

Ms. Lawton's work therefore bears little resemblance to that in Defendants' authority (at 23). *Craftsmen Limousine, Inc. v. Ford Motor Co.* concerned a lost-profits model that claimed as damages all of the plaintiff's lost growth during the conspiracy period (never accounting for other factors), 363 F.3d 761, 777 (8th Cir. 2004); ███████████████████████████████████

███████████████████████████ In *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, a plaintiff's experts claimed as damages "the entire difference between the [defendant medical clinic's] prices . . . and the prices of" its rivals, "with no correction for any other factor except differences in the treatment mix." 152 F.3d 588, 593 (7th Cir. 1998).

██████████████████████████████████████████████ And *MCI Communications Corp. v. AT&T Co.*, 708 F.2d 1081, 1164 (7th Cir. 1983) – a monopolization case where the damages model would have included harm caused by "quantitatively significant *lawful* competition" – is also inapt: ██████████████████████████████████████

████████████████████████████████████████████████

██.[10]

Any uncertainty that arises in this respect is a consequence of Defendants' wrongdoing. Courts have rejected similar efforts by conspiracy defendants to set the disaggregation bar so high that no plaintiff could ever clear it. *Nat'l Farmers' Org., Inc. v. Associated Milk Producers, Inc.*,

---

[10] Defendants' non-antitrust cases similarly differ. In *System Development Integration, LLC v. Computer Sciences Corp.*, the Court and the parties agreed that an expert's damages calculation for claim related to a partnership agreement should be excluded, because the Court had found no such agreement existed at summary judgment, *see* 886 F. Supp. 2d 873, 877-78 (N.D. Ill. 2012); Ms. Lawton's model implicates no such concern. And *Elorac, Inc. v. Sanofi-Aventis Canada Inc.* (a contract case) concerned lost projected sales worth up to about half a billion dollars based on causation assumptions that would flunk a laugh test – for example, that a pharmaceutical product launched in Canada would have swiftly received approval in the U.S., Europe, and Japan under regulatory regimes the expert knew nothing about other than they required studies the plaintiff could not afford without the "support of a" hypothetical "well-funded licensing partner" (which he assumed the plaintiff would have found). 2017 WL 3592775, at *15 (N.D. Ill. Aug. 21, 2017).

850 F.2d 1286, 1307 (8th Cir. 1988), *amended,* 878 F.2d 1118 (8th Cir. 1989) ("Yet, the fact that the appellees' illegal conspiracy was composed of lawful and unlawful conduct so tightly intertwined as to make it difficult to determine which portion of the damages claimed were caused by the unlawful conduct should not diminish the recovery. Similarly, the Court [on remand] should recognize that the harmful consequences of certain unlawful conduct may have been exacerbated by otherwise lawful conduct. In such a situation, the fact that lawful conduct contributed to additional injury should not prohibit recovery for that injury."); *Hyland v. HomeServices of Am., Inc.*, 2012 WL 12995647, at *7-9 (W.D. Ky. Jul. 3, 2012) (rejecting criticism that an expert failed to disaggregate damages for each of three types of underlying conduct as one that goes to weight, not admissibility).

**4.** Finally, it is for good reason Defendants never return to their rhetoric (at 1-2) attempting to attribute differences between Dr. Klein's preliminary-injunction analysis and Ms. Lawton's report to "litigation-driven manipulation." The two analyses should not be identical, because the data are not (*contra* Mot. 2) "the same" in all respects. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Whatever hay Defendants think they can make out of that is for cross-examination, not *Daubert*.

**II.** ████████████████████████████████████████████████████

Defendants' view that ████████████████████████████████████████

██████████████████████████████, *see* Rebuttal Rep. ¶ 97, ████████████████

█████████████████, *see* Reply Rep. ¶¶ 122-124, sets up a classic battle of the experts. ████████



████████████████████""11 ████████████████████████████████ Reply

Rep. ¶ 124 (footnote omitted). Such quibbling ███████████████████████████████

████████████████████████████████ – is not the stuff of *Daubert*.

████████████████████████████ (at ¶ 527) ████████████████████████

███████████ (at 24-25), ██████████████████████████████████

████████████████████████ Reply Rep. ¶ 130.

███████████████████████████████ That does not

amount to the unreasoned cherry-picking condemned in Defendants' cases, none of which

---

[11] *United States v. Price*, 995 F.2d 729 (7th Cir. 1993), a criminal tax case, hardly sets a professional standard governing whether this particular cost is fixed or incremental.

███████████████████████████████████.[12]  *Cf. City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 563 (11th Cir. 1998) (district court abused its discretion in excluding profit-margin testimony of qualified expert who considered all important cost factors).

## III. DEFENDANTS' EFFORT TO EXCLUDE MS. LAWTON'S EXPLANATION OF THE FACTUAL BASIS FOR HER OPINIONS CONFLICTS WITH PRECEDENT

Defendants' position that the sections of Ms. Lawton's report disclosing the factual basis for her opinions are inadmissible "is either patently frivolous or fundamentally misunderstands the nature of expert testimony at trial."  *MediaTek inc. v. Freescale Semiconductor, Inc.*, 2014 WL 971765, at *2 (N.D. Cal. Mar. 5, 2014) (denying similar motion filed against Ms. Lawton).  To be sure, courts have excluded putative expert testimony based on unhelpful, expertise-free weighing of evidence.[13]  That does not fairly describe Ms. Lawton's report, which ███████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████.[14]

If Defendants believe specific lines of her testimony are improper, they are free to target them:  that is all that occurred in *Emblaze Ltd. v. Apple Inc.*, 52 F. Supp. 3d 949 (N.D. Cal. 2014),

---

[12] *See Cates v. Whirlpool Corp.*, 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017) (product-defect expert tested two ovens (in ways he could not fully explain) to support his opinion that every one of 2,000,000 ovens suffered from a common defect, and ignored relevant data that contradicted his opinion); *Fail-Safe*, 744 F. Supp. 2d at 888-91 (expert "uniformly treated all evidence that undermined his underlying conclusion" with "unwarranted dismissal of the evidence or outright blindness to contrary evidence"); *Nilavar v. Mercy Health Sys.-W. Ohio*, 2005 WL 8162667, at *8 (S.D. Ohio June 2, 2005) (expert's market-definition opinion (among other flaws) led to "a blatant contradiction of his" own analysis" by "replac[ing] the originally stated product market with an utterly self-serving" replacement "product market").

[13] *See Jamsport Entm't, LLC v. Pasadena Prods., Inc.*, 2005 WL 14917, at *10-11 (N.D. Ill. Jan. 3, 2005) (excluding portions of expert's opinions that certain conduct was anticompetitive where they reduced to mere lay document-reading); *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 2016 WL 6091244, at *2 (N.D. Ind. Oct. 19, 2016) (excluding expert testimony that "merely involve[d] making credibility judgments and resolving factual disputes").

[14] ████████████████████████████████████  ███████  *See also* Daniel L. Rubinfeld, *Quantitative Methods in Antitrust*, 1 Issues in Competition Law and Policy 723, 742 (ABA Section of Antitrust Law, 2008), https://www.law.berkeley.edu/files/QM_Antitrust.pdf (to separate empirical "methodologies from other factual evidence" "is inadvisable").

where the court prevented Ms. Lawton from using a handful of particularly colorful expressions. But that question is far better suited for a motion in *limine* than a blunderbuss *Daubert*. Instead, as the *Mediatek* court explained in denying another defense motion that "essentially attempt[ed] the wholesale elimination of the background sections upon which Lawton bases her damages," "the record with respect to Lawton is unambiguous. Lawton appropriately disclosed, in advance, the factual basis and assumptions for her opinions. If at trial those are found to be inaccurate or ill-founded, then the jury may afford the opinion less weight, if any. However, it is not grounds for striking that portion of the anticipated testimony." 2014 WL 971765, at *2.

## CONCLUSION

Defendants' motion to exclude Ms. Lawton's testimony should be denied.

Dated: May 29, 2020

Respectfully submitted,

/s/ Derek T. Ho
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Authenticom Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I, Derek T. Ho, an attorney, hereby certify that on May 29, 2020, I caused a true and correct copy of the foregoing **AUTHENTICOM INC.'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF CATHERINE LAWTON** to be filed and served electronically via the court's CM/ECF system.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.  Copies of the Under Seal filing were served on counsel of record via email.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
  FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com