# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE: DEALER MANAGEMENT
SYSTEMS ANTITRUST LITIGATION

This Document Relates To:

*Motor Vehicle Software Corp. v. CDK Global,
Inc., et al.*, Case No. 1:18-cv-865 (N.D. Ill.)

*Authenticom, Inc. v. CDK Global, LLC, et al.*,
Case No. 1:18-cv-00868 (N.D. Ill.)

*Loop, LLC, d/b/a AutoLoop v. CDK Global,
LLC*, Case No. 18-cv-2521 (N.D. Ill.)

MDL No. 2817
Case No. 18-cv-00864

Hon. Robert M. Dow, Jr.
Magistrate Judge Jeffrey T. Gilbert

**PUBLIC-REDACTED**

## OPPOSITION OF PLAINTIFFS AUTHENTICOM, MVSC,
## AND THE PUTATIVE VENDOR CLASS TO DEFENDANTS'
## MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. MARK ISRAEL

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 1

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.    DR. ISRAEL'S COLLUSION OPINIONS ARE RELIABLE AND
ADMISSIBLE............................................................................................................ 4

    A.   ██████████████████████████████████████
██████████████████ ............................................................. 4

    B.  Dr. Israel's Opinions Are Reliable and Based on Reliable Economic
Analysis............................................................................................................ 8

        1.  Dr. Israel Considered and Reliably Rejected Defendants'
Hypothesis of Unilateral Conduct.......................................................... 8

        2.  Dr. Israel's Explanation That ████████████████
████████████████ Reflects Proper Application of His
Economic Expertise .............................................................................. 12

        3.  Defendants' Proffered Alternative Explanations Do Not Warrant
Excluding Dr. Israel's Collusion Opinions .......................................... 14

II.   DR. ISRAEL REASONABLY RELIED ON ██████████████████
████████████████████████ ............................ 18

III.  DR. ISRAEL'S MODEL RELIABLY DISTINGUISHES LAWFUL
FROM UNLAWFUL CONDUCT ............................................................................ 20

IV.  DR. ISRAEL RELIABLY APPLIED THE HYPOTHETICAL
MONOPOLIST TEST IN DEFINING ████████████████████
████████████ .................................................................................... 23

V.   DR. ISRAEL OFFERS NO OPINION CONCERNING ████████
██████████████████████████ TO MVSC ........................... 25

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

Page

## CASES

*American Tobacco Co. v. United States*, 328 U.S. 781 (1946) ........................................6

*Apple iPod iTunes Antitrust Litig.*, 2014 WL 4809288 (N.D. Cal. Sept. 26, 2014) .....................24

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588
(7th Cir. 1998)...........................................................................................19

*Boye v. Connor Corp.*, 2014 WL 4772720 (E.D. Mich. Sept. 24, 2014)........................................7

*Cameron v. Werner Enters., Inc.*, 2015 WL 4459068 (S.D. Miss. July 21, 2015)........................8

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548 (11th Cir. 1998) ...........................8, 14

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)...........................................2, 4, 15, 24

*Disposable Contact Lens Antitrust, In re*, 329 F.R.D. 336 (M.D. Fla. 2018)...............................13

*Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig., In re*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)............................................................19, 24

*Fresh Del Monte Pineapples Antitrust Litig., In re*, 2009 WL 3241401
(S.D.N.Y. Sept. 30, 2009), *aff'd sub nom. American Banana Co. v.
J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010)..........................................................25

*Graphics Processing Units Antitrust Litig., In re*, 253 F.R.D. 478 (N.D. Cal. 2008) ..................19

*High Fructose Corn Syrup Antitrust Litig., In re*, 295 F.3d 651 (7th Cir. 2002) ..................15, 17

*J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557 (1981)...........................................22

*JamSports & Entm't, LLC v. Paradama Prods., Inc.*, 2005 WL 14917
(N.D. Ill. Jan. 3, 2005) ..................................................................................14

*Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927 (7th Cir. 2018)........................................6

*Live Concert Antitrust Litig., In re*, 863 F. Supp. 2d 966 (C.D. Cal. 2012) .................................23

*Manpower, Inc. v. Insurance Co. of Pa.*, 732 F.3d 796 (7th Cir. 2013) ...................................4, 19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)......................................8

*MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081 (7th Cir. 1983) ...........................................22

*Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333 (7th Cir. 1989).......................14

*Mushroom Direct Purchaser Antitrust Litig.*, *In re*, 2015 WL 5767415
(E.D. Pa. July 29, 2015) ........................................................................25

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697 (7th Cir. 2011) ....................................12

*Processed Egg Prods. Antitrust Litig.*, *In re*, 81 F. Supp. 3d 412 (E.D. Pa. 2015) ......................13

*Rail Freight Fuel Surcharge Antitrust Litig.*, *In re*, 292 F. Supp. 3d 14
(D.D.C. 2017) ........................................................................................13

*Reed v. Advocate Health Care*, 268 F.R.D. 573 (N.D. Ill. 2009) ..................................................19

*Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190 (11th Cir. 2011) ............................................8

*Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410 (7th Cir. 1992) ...................................22

*Schreiber Foods, Inc. v. Borden Inc.*, 2005 WL 8165758 (E.D. Wis. July 1, 2005) ......................8

*Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405 (7th Cir. 2014) ........................................4

*Sulfuric Acid Antitrust Litig.*, *In re*, 446 F. Supp. 2d 910 (N.D. Ill. 2006) ..................................22

*Sumotext Corp. v. Zoove, Inc.*, 2020 WL 533006 (N.D. Cal. Feb. 3, 2020) .................................24

*Titanium Dioxide Antitrust Litig.*, *In re*, 2013 WL 1855980 (D. Md. May 1, 2013)....................13

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) .............................................................7

*United States v. Hoang*, 891 F. Supp. 2d 1355 (M.D. Ga. 2012) ..................................................8

*United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150 (1940).....................................................6

*Urethane Antitrust Litig.*, *In re*, 2012 WL 6681783 (D. Kan. Dec. 21, 2012),
*aff'd*, 768 F.3d 1245 (10th Cir. 2014) ..............................................13, 14, 16

*Village of Sauk Vill. v. Roadway Express, Inc.*, 2017 WL 365574
(N.D. Ill. Jan. 25, 2017) ......................................................................16

*Virginia Vermiculite, Ltd. v. W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729
(W.D. Va. 2000)....................................................................................24

## STATUTES AND RULES

15 U.S.C. § 1 ..............................................................................................3, 6, 7, 22

Fed. R. Evid. 702 ...............................................................................................2

**OTHER MATERIALS**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2017)............................6, 20, 21

Mark A. Israel et al., *Econometrics and Regression Analysis*, *in Proving
   Antitrust Damages: Legal and Economic Issues* (Am. Bar Ass'n
   3d ed. 2017) ...................................................................................................................20

## INTRODUCTION AND SUMMARY OF ARGUMENT

Dr. Mark A. Israel intends to offer opinions at trial regarding ██████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████ No one questions that Dr. Israel – a leading economist with extensive experience

testifying at trial, including for government enforcers – is qualified to offer such testimony.

Defendants seek nevertheless to exclude aspects of Dr. Israel's testimony, including certain

opinions regarding ████████████████████████████. Dr. Israel will explain that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ Dkt. 889-1, Israel Rep. ¶ 11. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████ "

*Id.* ¶¶ 11, 12. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Dkt. 889-2, Israel Reply Rep. ¶ 107 (discussing



█████████████████████████████████████████████████ Each of these opinions reflects Dr. Israel's

reliable application of established methods of economic analysis and will assist the jury, and is

therefore admissible under Rule 702 and *Daubert*.[1]

Defendants' motion provides no basis for any contrary conclusion.  Dr. Israel's description

███████████████████ is not vague or untestable (*cf.* Mot. 5-7); on the contrary, Dr. Israel ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ Dkt. 889-17, Bresnahan Rep. ¶ 118; *see also* Dkt.

889-22, Whinston Rep. ¶ 138.  Dr. Israel applied his economic expertise in explaining ██████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████; Defendants' disagreement with his conclusions (at 7-9) is not grounds for

excluding his opinions.  There is likewise no basis for Defendants' objection (at 9-11) that Dr.

Israel's analysis of record evidence did not involve the application of economic expertise; on the

---

[1] Defendants' motion to bar – which should be denied for reasons MDL Plaintiffs set forth in their opposition to that motion (*see* Dkt. 820) – supplies no independent basis to exclude his opinions.

contrary, Dr. Israel ███████████████████████████████████████████

███████████ █ █████████████████████████████ Mot. 11. Defendants' argument (at

11-13) that Dr. Israel failed to account for alternative explanations ████████████████

████████████████████████ is a matter for cross-examination; the same is true for their

argument (at 14-16) that Dr. Israel failed to account for ███████████████████████████

████████████████████████████████████████████████████████████████████

███████

Defendants' critiques of Dr. Israel's work on other issues were already raised ██

██████████████████, and he has already addressed them. *First*, Defendants' criticisms of

█████████████ (at 16-19) ████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████. *Second*, his opinion that █████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████ (at 20-22), ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████ *Third*, Defendants' concessions that ███████████████████████████

███████████████████████████ (at 23-24 & n.7) end that *Daubert* inquiry; it is for

the jury to evaluate ██████████████████████████████████████████████ *Fourth*,

Reynolds's effort (at 24-25) to preclude Dr. Israel from ████████████████████████████

should be denied because it attacks an opinion he does not offer.

**LEGAL STANDARD**

The Court's role under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is to determine the scientific reliability and relevance of Dr. Israel's opinions. *See, e.g.*, *Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014). Reliability in the *Daubert* sense "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Insurance Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013).

**ARGUMENT**

**I.     DR. ISRAEL'S COLLUSION OPINIONS ARE RELIABLE AND ADMISSIBLE**

████████████████████████████████████████████████████████

**1.**     Defendants' argument that Dr. Israel's opinions are so "vague" as to be unhelpful to the jury disregards the substance of his reports. They explain that, for many years, ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Israel Rep. ¶ 11; *see also* Israel Reply Rep. ¶ 74 ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ Israel Rep. ¶ 139. ████████

████████████████████████████████████████████████████████

████████████. *Id.* ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ *Id.* ¶ 146. ████████████████████████████████

4

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████ *Id.* ¶ 147. ████████████████████████████████

████████████████  ████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶ 146.

    ████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████ *Id.* ¶ 153. ████████████

██████████████████████████████████████████████████

██████████████████████████████████████. *Id.* ¶¶ 151-152.

**2.** None of this is "hopelessly vague." One need only consider ██████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ Whinston Rep. ¶ 138), ████████████████████

██████████████████████████████, *id.*; ████████████████

██████████████████████████████████████████████████

*id.* ¶ 203; ████████████████████████████████████████

████ *id.* ¶ 140; ██████████████████████████████████

████████████████ *id.* ¶ 142. ██████████████████████



Bresnahan Rep. ¶ 92. ██████████████████████████████████████████

████████████████████████████████[2] ████████████████████████████

████████████████████████████ ████████████████████████████. *See*

Whinston Rep. ¶ 59 ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

     Defendants' motion flows from the premise that it was Dr. Israel's burden to identify the

precise terms of their ████████ agreement – as if he were reconstructing a lost text.  But that was

not his task.  "[A] conspiracy" that violates Section 1 of the Sherman Act can be found not only

from "a meeting of minds" in the sense contract law might require, but also if "the conspirators

had a unity of purpose or a common design and understanding."  *American Tobacco Co. v. United

States*, 328 U.S. 781, 810 (1946).  The Supreme Court long ago found a violation of Section 1

"where it was inferred that the defendants had formed an informal 'gentleman's agreement.' "  VI

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1404, at 25 (4th ed. 2017) ("Areeda &

Hovenkamp") (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 179 (1940)); *see

also Kleen Prods. LLC v. Georgia-Pac. LLC*, 910 F.3d 927, 936 (7th Cir. 2018) ("even a wink and

---



[2] ██████████████████████████████████████████████████████████ Israel Rep.
¶ 176; Israel Reply Rep. ¶¶ 5-6 & n.3. ███████████████████████████████████████
████████████████████████████████████████ *See* Israel Rep. ¶¶ 88, 100-
101, 134 ████████████████████████████████████

a nod" can "reveal[ ] coordination or agreement" that violates Section 1). ████████████

████████████████████████████████████████████████████████████████████

████████████ (Israel Rep. ¶¶ 142-144; *see also* Dkt. 889-3, Israel Dep. 12:2-22) – easily satisfies

those standards.

Relatedly, it is hardly a sign of "confusion" that Dr. Israel does not ████████████████



████████████████████████████████████████████ Israel  Rep.  ¶¶ 144-160. ████████████

████████████████████████████████████████████████████████████████████

████████████████████████ . *See id.* ¶¶ 151-160, 167-170, 179-180. ████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████

None of Defendants' cases are at all on point.[3]  Because "[D]efendants will have adequate

opportunity to" address any alleged "imprecisions" through cross-examination, the motion should

---

[3] *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (en banc), involved an expert who sought to testify that a forensic examination of a rape victim "would be expected" to find transfer of hairs or seminal fluid; the court found that opinion properly excluded because the expert did not define what he meant by "expected" and "[m]ore fundamentally," because he "offered precious little in the way of a reliable foundation or basis." *Id.* at 1265.  As discussed in text, Dr. Israel explained ████████████████████████████████████████ .  *See also Boye v. Connor Corp.*, 2014 WL 4772720, at *5-6 (E.D. Mich. Sept. 24, 2014) (engineer barred from testifying that modifications to wires were made "recently" when expert "[did] not develop or explain the meaning" of the term and where he had no basis for clarifying that he meant "within

be denied. *Schreiber Foods, Inc. v. Borden Inc.*, 2005 WL 8165758, at *8 (E.D. Wis. July 1, 2005); *see also*, *e.g.*, *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011) (arguments that expert's conclusions were "imprecise and unspecific" address "the weight and the persuasiveness of [the expert] testimony, not its admissibility").

### B. Dr. Israel's Opinions Are Reliable and Based on Reliable Economic Analysis

### 1. Dr. Israel Considered and Reliably Rejected Defendants' Hypothesis of Unilateral Conduct

Drawing from *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), Defendants contend (at 7) that Dr. Israel's opinions are unreliable because he failed to "apply a reliable economic methodology to show that Defendants acted contrary to their respective unilateral self-interests." That argument is wrong on multiple levels.

First, Defendants' description (at 7) of *Matsushita* and its application here is incorrect. Under *Matsushita*, action against self-interest is one of several summary judgment "plus" factors that can support a reasonable *inference* of conspiracy from parallel conduct – and even in that sort of case, such action is not a necessary showing, but "only one prominent 'plus factor' that plaintiffs may attempt to prove" to show by inference the agreement they cannot prove directly. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 571 n.35 (11th Cir. 1998), *cited in* Mot. 11. Here, however, 

. *See* Dkt. 820, at 3-9

---

five years"); *Cameron v. Werner Enters., Inc.*, 2015 WL 4459068, at *3 (S.D. Miss. July 21, 2015) (barring testimony by expert who could not define the term "reasonable distance" in vehicular accident case). Nor is this case like *United States v. Hoang*, where the expert could only say his core conclusion was more than a mere "possibility." 891 F. Supp. 2d 1355, 1362 (M.D. Ga. 2012).

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████ Israel Rep. ¶ 150.

████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████  ███████████████████████

█████████████████████████████████████████████████

████████████████████ █ ██████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████ Israel Dep. 73:8-74:20. █████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████



Israel Rep. ¶ 150.

*Id.*[4]

Israel Reply Rep. ¶ 103.

Israel Rep. ¶ 151; *see id.* ¶ 152 (

As Dr. Israel explained,

Israel Reply Rep. ¶ 19.

That is not "pure assertion"; it is both economically sound and common sense.

███████████████████████████████████████████████████████

████████████████████████████████ Dkt. 875, at 4-5; *see also* Dkt. 875-4, Bresnahan Dep.

67:1-69:5 ██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████ Israel Reply Rep. ¶ 114. ████████████████████

███████████████████ Israel Rep. ¶¶ 129-130; *id.* ¶ 134 █████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ *id.* ¶ 134; █████████████████████████████████████████████████

██████████████████████████████████████████████ *id.* ¶ 170; ████████

███████████████████████████████████████████████████████

██████████ *id.* ¶ 167; ███████████████████████████████████████, *id.* ¶ 108.

Defendants nevertheless urge (at 8) that Dr. Israel's opinions are inadmissible absent █

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[5] █████████████████████████████████████████████████████████

████████████████████████████ . Israel Dep. 153:3-12. █████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 153:14-18.



"equally consistent with the Defendants' permissible independent interests as it [was] with improper activity." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 707 (7th Cir. 2011).

**2. Dr. Israel's Explanation That** ██████████████
██████ **Reflects Proper Application of His Economic Expertise**

In a related vein, Defendants caricature Dr. Israel's discussion of the ████████████
██████ as "personal interpretation [of] documents without reference to any specialized expertise." Mot. 10. On the contrary, ████████████████████████████

████████████████████████████████████████████ Israel Rep. ¶ 143; Israel Dep. 25:9-12 ████████████

Dr. Israel's discussion of ████████████████ is common and appropriate in a case like this, where "expertise as an economist" can be indispensable in "tying the evidence of

the case to the economic theory of collusion." *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 421-23 (E.D. Pa. 2015).

> An economic expert may permissibly testify as to whether certain conduct is consistent with collusion or an entity or individual's self-interest, and, moreover, it is consistent with sound economic practice to review the factual record and formulate a hypothesis that can then be tested using economic theory – the examination of the factual record is necessary to determine which tests to run and to confirm that the stories drawn from the data and from the factual record are consistent.

*Id.* at 424; *see also In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 372 (M.D. Fla. 2018) (citing many cases admitting such "consistent with collusion" testimony); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 52 (D.D.C. 2017) ("To the extent that [the expert], after reviewing the documentary record, opines as to whether defendants' behavior is consistent with collusion, this is permissible expert opinion."); *In re Titanium Dioxide Antitrust Litig.*, 2013 WL 1855980, at *4 (D. Md. May 1, 2013) ("Courts regularly admit expert testimony regarding whether conduct is indicative of collusion."); *In re Urethane Antitrust Litig.*, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012) (admitting such testimony).



*See* Bresnahan Rep. ¶ 108 ███████████████████████████████████████ ██████████████████████████████████); *id.* ¶¶ 105-140 (███████████████████████; Bresnahan Dep. 66:7-15 (███████ ████████████████████; Whinston Rep. ¶ 173 (███████

Economists are experts at analyzing data, but data often include documents and other non-quantitative evidence.  True, an expert that simply reads documents and asserts conclusions risks usurping the role of the jury,[6] but that is not at all what Dr. Israel is doing here.  To the extent they believe he misinterpreted any documents, Defendants will be free to cross-examine Dr. Israel; but any such disagreements provide no basis for exclusion.  *See In re Urethane*, 2012 WL 6681783, at *3 (antitrust defendant "is free to monitor [the expert's] testimony at trial to ensure that he does not simply and impermissibly lend an expert imprimatur to plaintiffs' position on disputed facts").

### 3. Defendants' Proffered Alternative Explanations Do Not Warrant Excluding Dr. Israel's Collusion Opinions



. Israel Rep. ¶ 148; Israel Reply Rep. ¶¶ 97-107.

Dkt. 820-9, Brockman Dep. 139:10-21; *see also* Dkt. 875-1, Witt Dep. 179:8-12

---

[6] *Cf. City of Tuscaloosa*, 158 F.3d at 567; *see also JamSports & Entm't, LLC v. Paradama Prods., Inc.*, 2005 WL 14917 (N.D. Ill. Jan. 3, 2005) (excising interpretation of documents divorced from any specialized economic analysis); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989) (economist's testimony totaling less than ten sentences laying out purely legal conclusions inadmissible, because the expert "presented nothing but conclusions – no facts, no hint of an inferential process, no discussion of hypotheses considered and rejected").

██████████████████████████████████████████████████████

████████████ Israel Rep. ¶ 148.

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████. *Cf. In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 660 (7th Cir. 2002) (summarizing parties' rival regressions and affirming refusal to exclude under *Daubert*). In any event, Defendants' reasons for contesting Dr. Israel's conclusions are unpersuasive.

*First*, contrary to Defendants (at 12), Dr. Israel did not improperly ██████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████ *See* Ex. 1, Whinston Dep. 270:9-11. ██████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████. *See id.* at 263:14-279:6.

*Second*, Defendants cite nothing to support the view (at 16-17) that ██████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████



Israel Rep. ¶ 148; *see also* Israel Reply Rep. ¶ 103 (similar).

*Third,*

*See* Whinston Rep.

¶ 307

In any event,

Israel Reply Rep. ¶ 94.

In sum, Defendants' arguments that

are unpersuasive and, in any event, for trial. *See In re Urethane,*

2012 WL 6681783, at *3 ("The extent to which [the expert] considered the entirety of the evidence

in the case is a matter for cross-examination."); *Village of Sauk Vill. v. Roadway Express, Inc.,*

2017 WL 365574, at *3 (N.D. Ill. Jan. 25, 2017) (similar).

**b.**

. Israel Rep. ¶¶ 153-158.

16



*Id.* ¶ 155. ██████████████████████████████████████

████████████ *Id.* ¶¶ 154, 160. ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ *See id.* ¶ 156 ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ *Id.* ¶¶ 157, 158.

Defendants argue (at 15-16) that ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████[7]  The existence of an

alternative explanation for marketplace events provides no basis for excluding a well-grounded

economic analysis.  *Cf. In re High Fructose Corn Syrup*, 295 F.3d at 663 (evidence may be "highly

suggestive" of unlawful agreement notwithstanding "alternative interpretations").  Dr. Israel

---

[7] ████████████████████████████████████████████████

████████████████████████████. Dkt. 875-12, Workman Dep. 98:14-16 ████████

████████████████████████████████████████████████████

explained throughout his reports why his analysis leads him to ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ To the extent Defendants believe that Dr.

Israel misinterprets the evidence, their remedy is to pursue that disagreement at trial.

## II.    DR. ISRAEL REASONABLY RELIED ON ███████████████████
██████████████████████████████████

Defendants' argument (at 16-19) that ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Israel Reply Rep. ¶¶ 193-194. ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████ Israel Rep. ¶¶ 179-180; Israel Reply Rep. ¶¶ 193-194. ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

*See* Israel Reply Rep. ¶¶ 186, 188. ██████████████████████████████████

████████████████████████████████████████. *See id.* ¶ 185.

Defendants argue (at 17) that Dr. Israel's ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████



Israel Reply Rep. ¶ 193.

*Id.* ¶ 194.

*Id.*

Defendants do not contest that

. In any event, because Defendants lack evidence that Dr. Israel's methodology *actually* "masked important differences," it looks nothing like the averaging flaws at issue in their cases (at 18).[8] This dispute is instead controlled by the principle that "[t]he reliability of data and assumptions used in applying a methodology is tested by the adversarial process and determined by the jury; the court's role is generally limited to assessing the reliability of the methodology – the framework – of the expert's analysis." *Manpower*, 732 F.3d at 808; *see also In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 WL 1196990, at *22 (N.D. Ill. Mar. 31, 2017) (Dow, J.) (similar).

---

[8] *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 493, 494 (N.D. Cal. 2008) (expert "mysteriously chose to *average* certain products and purchases with one another and then correlate instead of correlating disaggregated data for individual products and particular customers"; unlike here, on correcting that mistake, "any supposed correlation evaporates"); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 594 (7th Cir. 1998) (damages model attributed entirely to anticompetitive conduct a difference between one medical facility's average prices per patient and statewide averages – overlooking the fact that, "[a]s far as the record disclose[d], . . . all there [was] to" difference was that the more expensive facility treated "patients who [were] sicker than average and so require[d] longer treatment"); *Reed v. Advocate Health Care*, 268 F.R.D. 573, 592 (N.D. Ill. 2009) (expert's "use of averages, when applied to these facts, unacceptably masks the significant variation in" the key figure).

## III.   DR. ISRAEL'S MODEL RELIABLY DISTINGUISHES LAWFUL FROM UNLAWFUL CONDUCT

Defendants' claim (at 20) that Dr. Israel ██████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Dr. Israel employs a familiar

"difference-in-differences" regression model.  *See generally* Mark A. Israel et al., *Econometrics*

*and Regression Analysis*, *in Proving Antitrust Damages: Legal and Economic Issues* 123-208

(Am. Bar Ass'n 3d ed. 2017).  The model compares ███████████████████████████

████████████████████████████████████████████████████████████████████████

████████████, *see* Israel Reply Rep. ¶¶ 190-191 – ████████████████████████████

*See* Israel Rep. ¶¶ 197-201. ████████████████████████████, *see id.* ¶ 198 n.289,

████████████████████████████████████████████████████████████████████████

████████████ *See id.* ¶ 198. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *See id.* ¶¶ 203-204.

Defendants' view (at 20-22) that ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████ But market power is not the power to raise prices by all amounts in all circumstances; it is

simply "the ability profitably to raise price above marginal cost."  IIB Areeda & Hovenkamp

¶ 503b, at 118. ██████████████████████████████████████████████████████████



(at 21-22)

Israel Reply Rep. ¶ 183. (at 22),

market power is not the power to impose a momentary price increase, but the power "to persist in" holding "price substantially above the competitive level" "for a significant period without erosion by new entry or expansion."  IIB Areeda & Hovenkamp ¶ 501, at 111.

Israel Reply Rep. ¶ 173; *see also id.* ¶ 181

21



*See* Israel Reply Rep. ¶¶ 132-136; *id.* ¶ 134

. *See* Israel Rep. ¶¶ 203-204; *see also*

Israel Reply Rep. ¶ 170

Defendants overlook the "basic principle" that antitrust "damages need only be proven to a reasonable degree of certainty." *In re Sulfuric Acid Antitrust Litig.*, 446 F. Supp. 2d 910, 924 (N.D. Ill. 2006); *see also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981).

(at 21),

---

[9] *MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081 (7th Cir. 1983); *see also Blue Cross*, 152 F.3d at 593; *Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992)



████████████████████████████████████████████████████████████

██████████████████████████████████████████ Israel Reply Rep. ¶ 136.

## IV.    DR. ISRAEL RELIABLY APPLIED THE HYPOTHETICAL MONOPOLIST TEST IN DEFINING ██████████████████████████

Defendants' attack on Dr. Israel's opinion defining ████████████████████

████████████████████████████████ (at 22-23) by applying the hypothetical-monopolist test they do not deny is appropriate (at 23) ████████████████████

██████████ (at 24). ██████████████████████████████████████

████████████████████████████████████████████████████

██████████ Israel Reply Rep. ¶ 13.  What remains of this critique is for cross-examination.

**A.**  ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ Israel Rep. ¶ 32.  ████████████████████████████

████████████████████████████████████, *id.* Part III.A; ████████████████████

████████████████████████████████████████████████████

██████████, *id.* Part III.B; ████████████████████████

████████████████████████████████████, *id.* Part III.C.  It is therefore for good reason that Defendants' flourishes (at 23) accusing Dr. Israel of applying a "flawed test" ████████████

████████████████████████████████████████████████ he did not.[10]

---

("[T]he real harm to" the plaintiff "has nothing to do with the misconduct charged in this suit.  The cause was" distinct, "perfectly lawful" conduct.).

[10] *Cf. In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 987-88 (C.D. Cal. 2012) (expert concededly "never specifically evaluated any potential product markets *narrower* than his

**B.** Defendants' narrower claim ████████████████████████████████

repackages as a *Daubert* issue "a case of dueling experts" that must be "left to the trier of fact."

*In re Fluidmaster*, 2017 WL 1196990, at *22. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████. *See*

Israel Reply Rep. ¶¶ 70-72. ████████████ (at 24) ████████████████████

████████████████████████ *E.g., Sumotext Corp. v. Zoove, Inc.*, 2020 WL

533006, at *11-12 (N.D. Cal. Feb. 3, 2020) (denying exclusion of market-definition opinions "for

having failed to conduct an econometric analysis" where the "opinions have a foundation in

qualitative data such as," among other things, "employee testimony") (citing cases).

Defendants' position (at 24) that ████████████████████████

████████████████ (again) ████████████████████████████

████████████████████ (at 24) ████████████████████████

████████████████████████████████████████████████

(at 24 n.7) ████████████████████. *See Apple iPod iTunes Antitrust Litig.*, 2014

WL 4809288, at *7 (N.D. Cal. Sept. 26, 2014) (likewise rejecting *Daubert* attack on product

market supported by, among other things, "employee testimony" and "discovery responses"). ███

---

proposed market of live rock music concerts," but instead "started his analysis with the assumption
that 'rock' concerts constituted the relevant market, and looked for corroborating evidence without
meaningfully testing this assumption"), *cited in* Mot. 23; *see also Virginia Vermiculite, Ltd. v.
W.R. Grace & Co.-Conn.*, 98 F. Supp. 2d 729, 735 (W.D. Va. 2000) (unqualified witness who
"fail[ed] to understand basic antitrust principles" (unsurprisingly) misapplied the hypothetical-
monopolist test in numerous respects).



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Israel Reply Rep. ¶ 14. ████████████████

█████████████████████ *See id.* ¶ 24; *see also In re Mushroom Direct Purchaser Antitrust*

*Litig.*, 2015 WL 5767415, at \*19 (E.D. Pa. July 29, 2015) (overcharge regression provided further

evidence confirming product-market definition). ██████████████████████

████████████████████████ (at 23), ██████████████████████████

████████████████████████████████████████████████[11]

## V. DR. ISRAEL OFFERS NO OPINION CONCERNING ██████████████ ████████████ TO MVSC

████████████████████████████████████ (at 25), █████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Israel Rep. ¶¶ 161-165.

████████████████████████████████████████████████████

█████████████████████ (Mot. 25), the motion should be denied as moot in that respect.

## CONCLUSION

Defendants' motion to exclude the testimony of Dr. Israel should be denied.

---

[11] *In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401, at \*8 (S.D.N.Y. Sept. 30, 2009), *aff'd sub nom. American Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010).

Dated:  May 29, 2020

Respectfully submitted,

/s/ *Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that, on May 29, 2020, I caused a true and correct copy of the foregoing **OPPOSITION OF PLAINTIFFS AUTHENTICOM, MVSC, AND THE PUTATIVE VENDOR CLASS TO DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. MARK ISRAEL** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

/s/ *Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com