**PUBLIC VERSION**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| ALL ACTIONS | Magistrate Judge Jeffrey T. Gilbert |

**CDK GLOBAL, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. KEVIN MURPHY**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION AND BACKGROUND ............................................................ 1

ARGUMENT ........................................................................................................ 3

I.      Dr. Murphy's Rebuttal Opinions About Plaintiffs' But-For World Are Admissible. ........ 4

    A.      Dr. Murphy's Opinions Are Not "Speculative." ..................................... 4

    B.      Dr. Murphy's Opinions Are Not "Prohibited By Law." ..................................... 10

II.     Dr. Murphy's Pass-Through Opinions Are Admissible. ..................................... 16

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Dairy Mktg. Servs., LLC*,
    2013 WL 6909953 (D. Vt. Dec. 31, 2013) ...........................................................................19

*Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*,
    432 F. Supp. 2d 1319 (S.D. Fla. 2006) ................................................................................11

*Andrx Pharms., Inc. v. Biovail Corp.*
    256 F.3d 799 (D.C. Cir. 2001) .............................................................................................13

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
    829 F. Supp. 2d 802 (D. Minn. 2011) ...................................................................................4

*Bigelow v. RKO Radio Pictures*,
    327 U.S. 251 (1946) .............................................................................................................11

*Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic*,
    152 F.3d 588 (7th Cir. 1998) ...............................................................................................15

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    186 F.3d 781 (7th Cir. 1999) ...........................................................................................1, 15

*In re Cardizem CD Antirust Litig.*,
    105 F. Supp. 618 (E.D. Mich. 2000) ....................................................................................13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ...............................................................................................................15

*Dantzler v. Dictograph Prods., Inc.*,
    309 F.2d 326 (4th Cir. 1962) ...............................................................................................12

*Daubert v. Merrill Dow Pharms., Inc.*,
    509 U.S. 588 (1993) ...............................................................................................................3

*Hare v. Potter*,
    549 F. Supp. 2d 688 (E.D. Pa. 2007) ...................................................................................11

*Home Placement Serv., Inc. v. Providence Journal Co.*,
    819 F.2d 1199 (1st Cir. 1987) .........................................................................................10, 11

*Huawei Techs., Co., Ltd. v. Samsung Elecs. Co.*,
    340 F. Supp. 3d 934 (N.D. Cal. 2018) ...................................................................................6

*Lee-Moore Oil Co. v. Union Oil Co. of Cal.*,
   599 F.2d 1299 (4th Cir. 1979) ........................................................................12, 13

*Loeb Indus., Inc. v. Sumitomo Corp.*,
   306 F.3d 469 (7th Cir. 2002) ..................................................................................19

*The Medicines Co. v. Mylan Inc.*,
   2014 WL 1516599 (N.D. Ill. Apr. 17, 2014) ..........................................................7

*MCI Commc'ns v. Am. Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983) ................................................................................15

*Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n*,
   498 F. Supp. 510 (D. Md. 1980) .............................................................................19

*R. S. E., Inc. v. Pennsy Supply, Inc.*,
   523 F. Supp. 954 (M.D. Pa. 1981) ....................................................................10, 11

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   292 F. Supp. 3d 14 (D.D.C. 2017) ..........................................................................13

*Schonfeld v. Hilliard*,
   218 F.3d 164 (2d Cir. 2000) ...................................................................................11

*In re Steel Antitrust Litig.*,
   2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ..........................................................12

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
   282 U.S. 555 (1931) ......................................................................................... *passim*

*Wipf v. Kowalski*,
   519 F.3d 380 (7th Cir. 2008) ....................................................................................4

**Rule**

Fed. R. Evid. 702 ...........................................................................................................3, 5

**Other Authorities**

ABA Section of Antitrust Law, *Proving Antitrust Damages: Legal & Economic
   Issues* (2d ed. 2010) ...............................................................................................15

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust
   Principles & Their Application* (4th ed. 2013-18) .................................................18

Joseph E. Stiglitz and Carl E. Walsh, *Principles of Microeconomics* (4th ed. 2005) ...................18

## INTRODUCTION AND BACKGROUND

Plaintiffs' motion to exclude a handful of opinions from CDK rebuttal expert Dr. Kevin Murphy is an attempt to silence him from pointing out serious methodological and logical flaws in their own experts' work. Plaintiffs' damages experts—for the putative Vendor Class, Dr. Mark Israel, and for the putative Dealership Class, Dr. Michael Williams— ███████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ █████████████████████████████████████████. *See infra*, at § I.A.1.

It is thus Plaintiffs' own damages experts, not Dr. Murphy, who offer opinions conceding that ████████████████████████████████████████ Mot. 1. This is not only a proper topic for expert rebuttal—it is fatal to Plaintiffs' conspiracy claims.[1] To recover antitrust damages, Plaintiffs "have to separate the price effects of collusion from the price effects of the defendants' lawful market power." *In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 786 (7th Cir. 1999). As Dr. Murphy points out in the challenged portions of his rebuttal report, Plaintiffs' experts ██████████████████████████████████████ ███████████████████.

---

[1] Separately, CDK has moved for summary judgment on this issue as to both the putative Vendor Class and Dealership Class damages claims. *See* Dkt. 969 at 5-12; Dkt. 973 at 9-12.

**PUBLIC VERSION**

Plaintiffs do not dispute that Dr. Murphy is qualified to offer the opinions he reaches,[2] and they do not challenge many of his primary opinions on damages issues. *See, e.g.*, Murphy Rebuttal Rpt. ¶¶ 49-68 (███████████████████████████████████████████████████

████████████████████████████████████████████), 69-74 and 116-17

(████████████████████████████████████████████), 80-101 (additional rebuttal of Dr. Israel's damages models), and 102-04, 111-15 (additional rebuttal of Dr. Williams's damages models). And much of Plaintiffs' motion simply argues the merits of their claims, divorced from any actual attack on the admissibility of Dr. Murphy's expert testimony. *See, e.g.*, Mot. 2-6. Plaintiffs' narrative is unsupported by the evidence, as Defendants have addressed in their recently filed summary judgment motions. More to the point here, nothing that Plaintiffs say justifies excluding any of Dr. Murphy's opinions.

*First*, Dr. Murphy's opinions about Drs. Israel and Williams's conception of the "but-for" world—the world that would exist absent the ████████████████████████████—are legally proper and go to the core of Plaintiffs' failure to establish damages on their conspiracy claims. ████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████" Mot. 14. Regardless, each of Plaintiffs' ████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[2] Dr. Murphy is the George J. Stigler Professor of Economics in the Booth School of Business and the Department of Economics at the University of Chicago, where he has taught for over 35 years. Murphy Rebuttal Rpt. ¶ 1. He is a fellow of the Econometric Society, a member of the American Academy of Arts and Sciences, and the recipient of a MacArthur fellowship. *Id.* ¶ 5. He has authored or co-authored over 65 articles on the subject of economics, publishing in leading scholarly and professional journals including the American Economic Review, Journal of Law and Economics, and Journal of Political Economy. *Id.* ¶ 4. Assessing the weaknesses of Plaintiffs' experts' economic models is squarely in his wheelhouse.

██████████████████████████████████. *See infra*, at pp. 5-6. As a rebuttal

expert, Dr. Murphy took these opinions and properly opined on the damages problem that flows

naturally and directly from them: If Drs. Israel and Williams find that ████████████████████

██████████████████████, then they have no basis to ██████████████████████

█████████████████. ████████████████████████.

Plaintiffs attempt to preclude Dr. Murphy's opinions on this issue as "prohibited by law"

and "speculative." Mot. 9-17. But there is nothing "speculative" about a rebuttal expert drawing

conclusions from Plaintiffs' experts' opinions and other supporting evidence in the record. Nor are

Dr. Murphy's opinions pointing out ████████████████████████████████

████████ by the Supreme Court's 1931 decision in *Story Parchment*. That case says nothing about

the admissibility of expert testimony, and in any event, Dr. Murphy's opinions are consistent with

*Story Parchment*. The *Story Parchment* line of cases does not apply when, as here, damages

causation is disputed. And it certainly does not preclude expert testimony on damages causation

██████████████████████████████.

*Second*, the Dealership Plaintiffs' assertion that Dr. Murphy's rebuttal opinions regarding

the pass-through analysis performed by their expert are "fundamentally flawed" (Mot. 18) is

meritless. As any rebuttal expert would do, Dr. Murphy scrutinized ████████████████████

████████████████████████████████████████████████████████████

██████████████████████████, which Dr. Murphy explained in detail. The

Dealers' complaints about Dr. Murphy's critiques are unconvincing and in any event do not render

any aspect of Dr. Murphy's pass-through opinions inadmissible.

Ultimately, the standard for expert admission embodied in Rule 702 is a "permissive" one.

*Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 588, 589 (1993). That is all the more true for

rebuttal expert testimony, the purpose of which is to let "the trier of fact . . . decide how to weigh the competing expert testimony." *Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008); *see also, e.g.*, *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 835 (D. Minn. 2011) ("It is the proper role of rebuttal experts to critique plaintiffs' expert's methodologies and point out potential flaws in the plaintiff's experts' reports."). There is no basis—factual or legal—to exclude any of Dr. Murphy's carefully reasoned opinions.

## ARGUMENT

**I.     Dr. Murphy's Rebuttal Opinions About Plaintiffs' But-For World Are Admissible.**

In simplest terms, Dr. Murphy observes that ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████. Dr. Murphy then draws logical conclusions from those opinions. For example:

███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████.

Murphy Rebuttal Rpt. ¶ 47. ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████. Explaining that through expert opinion testimony is neither "speculative" nor "prohibited by law."

### A.     Dr. Murphy's Opinions Are Not "Speculative."

Plaintiffs' scattershot arguments that Dr. Murphy's opinions are "inherently speculative," Mot. 14-17, miss the mark. It was well within Dr. Murphy's purview to opine on the implications of the analyses and opinions proffered by Plaintiffs' damages experts. Moreover, Plaintiffs'

critiques rest on mischaracterizations of Dr. Murphy's opinions and on merits arguments that have no bearing on the admissibility of his testimony under Rule 702 or *Daubert*.

**1.** Fundamentally, Plaintiffs' experts establish the primary support for Dr. Murphy's opinions. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████.

For example, the putative Vendor Class damages expert, Dr. Israel, ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

██████████████████████████████████████████████████████

████████████████████████████████████████████████.

5

**PUBLIC VERSION**

The Dealers' expert, Dr. Williams, similarly concludes that ███████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████.

Dr. Murphy merely puts economic analysis around the common-sense reaction to

Plaintiffs' experts' conclusions that ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████, it follows that none of those damages can be attributed to the alleged conspiracy.

There is nothing "inherently speculative" or otherwise improper about Dr. Murphy reading

Plaintiffs' experts' reports, looking to their models and assumptions, and explaining the logical

implications of their conclusions. That is what a good rebuttal expert does to bring his expertise to

bear to help the trier of fact. The entire point of "rebuttal evidence is to contradict, impeach or

defuse the impact of the evidence offered by an adverse party." *Huawei Techs., Co., Ltd. v.

Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) (internal quotations omitted).

It would be contrary to the adversarial process to preclude a well-qualified expert from making these sorts of observations—particularly in an antitrust case where a dispositive issue lurks within the economic evidence that Plaintiffs have put forward. *See* Dkt. 969 (AutoLoop MSJ) at 5-12 & Dkt. 973 (Dealer MSJ) at 9-12 (moving for summary judgment on all claims, including the putative Vendor and Dealer Class damages claims attributed to the alleged conspiracy).

   **2.** Plaintiffs' "speculation" argument mischaracterizes Dr. Murphy's opinions. They assert, for example, that " ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Mot. 14 But that is not one of his opinions. Dr. Murphy does not address

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is well supported in record evidence, cited in both Dr. Murphy's report and in Defendants' pending summary judgment motion. *See id.* ¶¶ 33-36; Dkt. 966 (Auth. MSJ) at 12-15; Dkt. 974 (JSUF ¶¶ 151, 155).

   The claim that Dr. Murphy "ignored" the evidence on whether ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, is easily disproved. Dr. Murphy first drew logical conclusions from the opinions of Plaintiffs' experts. *See supra*, at § I.A.1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Murphy Rebuttal Rpt. ¶¶ 39-55, 70.[3] To be sure, Plaintiffs restate

---

[3] Dr. Murphy also relied on the analysis of Dr. Whinston, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). It was entirely proper for Dr. Murphy to do so. *See, e.g.*, *The Medicines Co. v. Mylan Inc.*, 2014 WL 1516599, at *3 (N.D. Ill. Apr. 17, 2014) (allowing expert testimony that relied on another expert's testimony where, like here, the first expert reviewed the data and formed an admissible opinion).

their own narrative of the case in an attempt to dispute Dr. Murphy's opinions on this issue. Mot. 15. But that is an argument on the merits of Plaintiffs' claims, not an argument to exclude Dr. Murphy's testimony. CDK's response to that narrative is set forth in its summary judgment papers, which is the appropriate forum to address such issues.

    **3.**  Plaintiffs next claim that Dr. Murphy ███████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████.

    CDK's ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████. Murphy Rebuttal Rpt. ¶¶ 37-40 & Rpt. Ex. 1. Even ignoring
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████).[4]

---

[4] *See, e.g.,* ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████.

Plaintiffs' assertion that ██████████████████████████████████████

is incorrect. Mot. 15. He did, and he discussed the results of his analysis at length. *See, e.g.*,

Murphy Dep. Tr. 274:11-275:21 (discussing ████████████████████████████████

███████████████████████████████████"). Moreover, there is considerable irony

in Plaintiffs' argument. Their experts made *no* attempt to demonstrate that ████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████. Williams Dep. Tr. 215:5-216:17.

**4.** Finally, Plaintiffs invent a strawman argument in which Dr. Murphy supposedly opines

that "██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████.

Dr. Murphy simply pointed out that ████████████████████████████████

███████████████████████████████████████████ *Id.* at 63:24-

64:1. He ████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████." *Id.* at 64:1-6. Dr. Murphy's rebuttal is entirely

appropriate; Plaintiffs' experts' ███████████████████████████

████████████████████████████████████████████████████████

██████. *See* Williams Dep. Tr. 250:5-14; Israel Dep. Tr. 267:18-268:12, 270:9-271:21.

**B.    Dr. Murphy's Opinions Are Not "Prohibited By Law."**

As shown above, Dr. Murphy's opinions respond directly to the opinions of Plaintiffs' experts and explain the logical implications of those opinions for Plaintiffs' damages calculations. None of his opinions has been "foreclose[d]" (Mot. 10) by *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931), or any case that follows it.

**1.**    The *Story Parchment* line of cases stands for the proposition that "a private antitrust litigant is not required to prove the amount of its damages with mathematical certainty." *Home Placement Serv., Inc. v. Providence Journal Co.*, 819 F.2d 1199, 1205 (1st Cir. 1987). That has nothing to do Dr. Murphy's challenged opinions, which are not ██████████████████

████████████████████. As *Story Parchment* states, there is a "clear distinction between the measure of proof necessary to establish the fact that petitioner has sustained some damage and the measure of proof necessary to enable the jury to fix the amount." 282 U.S. at 562. On its own terms, then, *Story Parchment* does not purport to relieve antitrust plaintiffs from establishing that the damages they seek "are definitely attributable to the wrong." *Id.* Just the opposite: antitrust plaintiffs *cannot* recover damages that are "not the certain result of the wrong." *Id.*

Put another way, antitrust plaintiffs must independently establish that a causal link between the defendant's conspiratorial conduct and damages exists before any question of how precisely those damages need to be calculated under *Story Parchment* is relevant. *See, e.g.*, *R. S. E., Inc. v. Pennsy Supply, Inc.*, 523 F. Supp. 954, 963 (M.D. Pa. 1981) ("In *Story*, the Court established that a lesser measure of proof is required to prove the amount of damages, once damage in fact *and*

*causation* are clearly established.") (emphasis added). *Story Parchment* "does not shift the burden of proof" from plaintiffs to defendants for antitrust damages or relieve plaintiffs of their obligation to account for losses attributable to defendants' lawful conduct in calculating damages. *Home Placement Serv.*, 819 F.2d at 1205. Rather, under *Story Parchment*, courts will "indulge private antitrust plaintiffs only to the extent that there is evidence on the record from which a trier of fact could make a 'just and reasonable inference' regarding the amount of damages" attributable to defendants' unlawful conduct. *Id.* (quoting *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264 (1946)).

Plaintiffs attempt to expand *Story Parchment* well beyond its holding to essentially preclude any debate over ███████████████████████████████████████████

████████████████████████████████████████████████████. *See supra*, at pp. 5-6. Unsurprisingly, courts "routinely reject attempts to invoke *Story Parchment* to relax the burden of proof applicable to the fact of damage determination." *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, 432 F. Supp. 2d 1319, 1342 (S.D. Fla. 2006); *Hare v. Potter*, 549 F. Supp. 2d 688, 695 (E.D. Pa. 2007) (citing *Story Parchment* for the proposition that "[d]amages are recoverable if they are 'definitely attributable to the wrong' and uncertain only in respect to the amount," and further noting that in *Story Parchment*, "[c]ausation was uncontested and the only issue was computing the damage award"); *R. S. E., Inc.*, 523 F. Supp. at 965-66 (holding that "plaintiff's reliance on *Story Parchment* is totally inappropriate since the issue raised is causation of damages, not amount of damages," and rejecting plaintiff's damage model as "defective" because "it made no provision for the effects of lawful competition").[5]

---

[5] Plaintiffs also discuss Second and Fourth Circuit cases applying *Story Parchment*. *See* Mot. 10-11. But both courts have recognized that the *Story Parchment* line of cases does not apply when causation is disputed. *See, e.g.*, *Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000) (holding that the "wrongdoer" rule derived from *Story Parchment* "does not apply here for the simple reason that the *existence* of lost

**PUBLIC VERSION**

In fact, courts in this district have recognized that the *Story Parchment* line of cases is inapplicable to the situation at hand. In *In re Steel Antitrust Litig.*, 2015 WL 5304629 (N.D. Ill. Sept. 9, 2015), the court cited *Story Parchment* for the proposition that a plaintiff's antitrust damages "calculations need not be exact." *Id.* at *10. But the court went on to observe that "a model that does not even attempt to identify and isolate 'damages' that are not the certain result of the wrong cannot be used to establish" damages. *Id.* The *Steel* court's discussion and treatment of *Story Parchment* is directly applicable to the analysis Dr. Murphy offers in his rebuttal report. The core problem with Plaintiffs' experts' models is ███████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████████.

Plaintiffs' reliance on *Lee-Moore Oil Co. v. Union Oil Co. of California*, 599 F.2d 1299 (4th Cir. 1979), and its progeny is similarly misguided. In *Lee-Moore*, the court held that it was error to allow the defendants to conjure up a hypothetical world where a lawful termination of the contract "might have caused" the same damages absent the conspiracy to limit the plaintiff's recovery of punitive damages. *Id.* at 1302. The court said nothing at all to suggest that antitrust plaintiffs are relieved of their burden to show a causal link between the conspiracy and their alleged damages. Indeed, Plaintiffs themselves recognize that *Lee-Moore* applies only when a plaintiff "can show damages caused by [a defendant's] antitrust violation." Mot. 9 (quoting *Lee-Moore*, 599 F.2d at 1302). Here, Dr. Murphy does not ████████████████████████████████ ███████████████████████████████████████████████████████████████████████"

---

profit damages cannot be established with the requisite certainty"); *Dantzler v. Dictograph Prods., Inc.*, 309 F.2d 326, 330 (4th Cir. 1962) (observing that in *Story Parchment* the plaintiffs conclusively showed that they were "injured" by the defendants, resulting in "recoverable damages," and stating that *Story Parchment* stands for the proposition that "liberality may be used in estimating the amount of damages *after* it has been shown that they were caused by acts contrary to the anti-trust statutes, but that this liberality does not extend to proof that the damages were caused by the illegal acts") (emphasis added).

███████████████████████████████████████████████████████

████████████████████████████████████████████.

Plaintiffs' remaining cases outside the *Story Parchment–Lee-Moore* line stand for unremarkable propositions of antitrust law that are irrelevant to the admissibility of Dr. Murphy's opinions. For instance, the court in *Andrx Pharmaceuticals, Inc. v. Biovail Corp.* (cited at Mot. 12) held on a motion to dismiss that an antitrust defendant cannot avoid liability by arguing that "because its underlying conduct was legal" had it been undertaken unilaterally, "the fact that [the defendant] *combined* to act that way" with another firm "cannot give rise to an antitrust violation." 256 F.3d 799, 813 (D.C. Cir. 2001) (emphasis added). The court did not address damages or causation issues that arise, as they do in this case, from affirmative opinion testimony offered by Plaintiffs' experts that ████████████████████████████████████

███████████████████████████████████████████████████████.

*See supra*, at § I.A.1. Dr. Murphy's observation that t████████████████████████

███████████████████████████████████████████████████████

███████████████████████████" Murphy Rebuttal Rpt. ¶12, is well founded. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 101 (D.D.C. 2017) ("If plaintiffs would have suffered the same injury absent a conspiracy, then plaintiffs will fail on the merits of their claim."), *affd sub. nom.*, 934 F.3d 619 (D.C. Cir. 2019).[6]

**2.** Perhaps recognizing the problem with their *Story Parchment* argument, Plaintiffs assert in a footnote that ████████████████████████. Mot. 6 n.4 (citing Murphy Rebuttal Rpt. ¶¶ 25,

---

[6] In a similar vein, Plaintiffs point to *In re Cardizem CD Antirust Litig.*, 105 F. Supp. 618, 648 (E.D. Mich. 2000), where the court observed that the "difference between legal and illegal conduct is the existence of an agreement to do the same thing the parties could have done unilaterally and thus legally." Mot. 12. But, yet again, the plaintiff there had already established a "causal connection between [the] alleged antitrust violation and the [conspiracy] injury it claims it suffered." 105 F. Supp. at 648.

47). That again mischaracterizes Dr. Murphy's opinions, because the two paragraphs Plaintiffs

point to ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████.[7]

In short, any notion that ████████████████████████████████████████

████████████████████████. This renders moot Plaintiffs' *Story Parchment* arguments, which

are ███████████████████████████████████████████████████████. *See, e.g.*,

Mot. 1 ("as a matter of law, when an antitrust plaintiff *can prove that it was harmed* by a

defendant's unlawful conduct, . . ."); Mot. 10 ( █████████████████████████████████████

███████████████████████████████████████████████████."); Mot. 13

("*Assume* further that, as a result of the conspiracy, prices increased.") (emphases added).

---

[7] *See, e.g.*, ████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████.

**3.** In a final effort, Plaintiffs pivot to vague public-policy appeals, claiming that allowing Dr. Murphy to offer his opinions would risk "shielding price-fixers" from liability and "undermin[e]" the antitrust laws. Mot. 12, 13. That argument should be rejected. The thrust of Dr. Murphy's opinion— ███████████████████████████████████ ████████████████████████████████—is fully consistent with *Story Parchment* and with the developments in antitrust law that have occurred in the 90 years since that case was decided.

In *Comcast Corp. v. Behrend*, for instance, the Supreme Court held that "any model" of damages put forward by an antitrust plaintiff "must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation.'" 569 U.S. 27, 35 (2013) (quoting ABA Section of Antitrust Law, *Proving Antitrust Damages: Legal & Economic Issues* 57, 62 (2d ed. 2010)). As a result, "a model purporting to serve as evidence of damages . . . must measure only those damages attributable to [the plaintiff's] theory." *Id.* When a plaintiff's model "does not even attempt to do that, it cannot possibly establish" antitrust damages. *Id.*

Similarly, the Seventh Circuit has repeatedly emphasized that a plaintiff's damages model "must be able to rationally separate" injuries caused by defendants' joint and unilateral conduct. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1168 (7th Cir. 1983); *see also Brand Name Prescription Drugs*, 186 F.3d at 786 ("plaintiffs [must] separate the price effects of collusion from the price effects of the defendants' lawful market power"); *Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) ("Any nonconspiratorial factors likely to have made the prices charged by the [defendant] higher than the prices charged by other health-care providers had to be taken into account in order to make a responsible estimate of the prices that [the plaintiff] would have paid had it not been for the conspiracy."). Nothing in *Story*

*Parchment* or its underlying "policy" has ever been held to relieve plaintiffs of their burden to prove damages causation or the requirement that a damages model measure *only* the harm caused by the defendant's allegedly unlawful conduct. To the contrary, "[w]hen a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage." *MCI*, 708 F.2d at 1162.

Dr. Murphy's rebuttal opinions are fully in-line with these principles. If, ███████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ " Murphy Rebuttal Rpt. ¶ 47. Nothing in *Story Parchment* or any other line of authority precludes Dr. Murphy from offering this opinion.

## II. Dr. Murphy's Pass-Through Opinions Are Admissible.

In an argument only they put forward, the Dealers claim that Dr. Murphy's opinions regarding the pass-through analysis performed by their damages expert, Dr. Williams, are "fundamentally flawed." Mot. 18. In every respect, the Dealers are wrong.

To estimate the Dealers' damages, ████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

16

███████████████████████. Williams Rpt. Table 4. ████████████████████████████████.
*See id.* (███████████████████████████████████). Dr. Williams
concluded ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████. *Id.* Thus, while Dr.
Williams found that the ████████████████████████████████

████████████████████████████████████████████████

█████████████. *Id.*, Table 3.

    Dr. Murphy rightly criticized this approach, which "███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████" Murphy Rebuttal Rpt. ¶ 106. ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████. *See, e.g.*, Murphy Dep. Tr. 154:12-154:24, 156:8-17, 157:23-
158:9, 160:15-23. Dr. Murphy also showed that this flaw in Dr. Williams's methodology
materially skewed his results. ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████ *See* Murphy Rebuttal Rpt. Ex. 22.

    **1.**    Citing no evidence or authority, the Dealers assert that Dr. Murphy's opinions are
"flawed" because ████████████████████████████████████████████

████████████████" Mot. 18. But as Dr. Murphy points out, Dr. Williams needed to test whether

█e█████████████████████████████████████████████████████████

█████████████████████████████████. Well-accepted economic theory supports Dr.

Murphy's criticism. In a comparable scenario, employers are permitted under federal law to pass

on exactly 50% of their Social Security tax liability to employees as a withholding item on their

paychecks. Yet "it's been known forever in economics that that doesn't reflect the actual pass-

through of the Social Security tax, even though the document [the employee's paycheck] says

that's how it's passed through." Murphy Dep. Tr. 177:18-178:13. *See* Ex. 7, Joseph E. Stiglitz and

Carl Walsh, *Principles of Microeconomics* 389 (4th ed. 2005). ████████████████

██████████████████████████████████████████████████████████

███████████████.[8]

    **2.** The Dealers next complain that Dr. Murphy's opinions do not align with their "theory"

that ███████████████████████████████████████████████████████

████████████████████████████████████████. Mot. 18-19. That "theory,"

however, is contrary to both economics and law. *See, e.g.*, Phillip E. Areeda & Herbert

Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles & Their Application* ¶ 396 (4th ed.

2013-18) (when calculating indirect purchaser damages, "some (or all) class members may receive

discounts, rebates, and allowances that are not reflected on the invoice. . . . This would clearly

have to be incorporated in any damage estimate"). None of the cases cited by the Dealers supports

their position that ████████████████████████████████████. Moreover, the Dealers'

theory that ██████████████████████████████████████████████████████,

---

[8] The Dealers cite testimony agreeing with counsel's suggestion that ██████████████████
████████████████████████████████████████████████. Mot. 18 n.14. That
testimony, ██████████████████████████████████████, has nothing to do
with (and does not support) the Dealers' assertion that "███████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████ Mot. 18.

████████████████████████████████████████████████████. *See, e.g.*, Williams

Dep. Tr. 261:1-262:16.

In *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469 (7th Cir. 2002) (cited at Mot. 19), a

class of indirect purchasers claimed antitrust damages based on an alleged inflation of copper

prices tied to the "Comex" benchmark for copper futures. The district court held that the Comex

price was "inseparable" from a cathode "premium" that served as another component of the overall

price, and therefore, alleged price effects observed in the Comex price could not be considered

independent of price effects observed in the premium. *Id.* at 487. Viewing the record evidence "in

the light most favorable to the plaintiffs," the appellate court found that "as the Comex price

increased, the premium also increased. Thus, there is no possibility that the two components

'offset' or that the premium somehow compensated for the defendants' manipulated price

inflation." *Id.* at 487-88. Accordingly, the *Loeb* decision rests on economic evidence that the court

was constrained to view in the light most favorable to plaintiffs, which the Court is under no

obligation to do here, and which was fundamentally different from the economic evidence that

forms the basis of Dr. Murphy's opinion in this case. ███████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████. *See* Murphy Rebuttal Rpt. ¶¶ 109-10 & Ex. 22.[9]

The Dealers also suggest that there is no evidence in the record that ███████████████

████████████████████████████████████████████████████████ Mot. 19. The Dealers'

---

[9] The Dealers' remaining cases are even further afield. In *Allen v. Dairy Marketing Services, LLC*, 2013 WL 6909953, at *13 (D. Vt. Dec. 31, 2013), the district court merely noted that a damages methodology "is not impermissible if it accurately isolates a component of price which the conspiracy allegedly suppressed." Similarly, in *Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n*, 498 F. Supp. 510, 538 (D. Md. 1980), the court evaluated allegations of a conspiracy that resulted in the imposition of a 1% "adder" tax on certain union contracts. The decision does address or otherwise suggest that the plaintiffs' damages methodology was challenged or that any evidence of interaction between the 1% "adder" tax and other components of the contract price was presented to the court.

argument on this point is contrary to both Dr. Murphy's testimony and the record. Dr. Murphy

testified that he ███████████████████████████████ Murphy Dep. Tr. 181:18-183:2. And to be

sure, that evidence exists. For example, i███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████. ███████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████.

    **3.** Finally, the Dealers assert that ████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████" Mot. 20 (emphasis added). As he repeatedly explained, that is precisely

Dr. Murphy's point: ██████████████████████████████████████████████████████.

*See* Murphy Dep. Tr. 154:13-24, 167:16-169:21. T██████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████.

## CONCLUSION

    The Court should deny Plaintiffs' motion to exclude the testimony of Dr. Kevin Murphy.

**PUBLIC VERSION**

Dated: May 29, 2020

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@ mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

**PUBLIC VERSION**

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, hereby certify that on May 29, 2020, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. KEVIN MURPHY** to be served electronically on all counsel of record at the following email address:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com