PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | |
| | No. 1:18-CV-864 |
| *This document relates to:* | |
| ALL CASES | Hon. Robert M. Dow, Jr. |
| | Magistrate Judge Jeffrey T. Gilbert |

## CDK GLOBAL, LLC's AND THE REYNOLDS & REYNOLDS CO.'s MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD M. STROZ

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...............................................................................................ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.      Stroz's CAPTCHA Opinions Are Admissible.................................................... 2

     A.      Stroz's Methodology................................................................................ 2

     B.      Authenticom's Critiques Of Stroz's CAPTCHA Opinions Are
           Meritless................................................................................................... 4

II.     Stroz's YES/NO Prompt Opinions Are Admissible. .......................................... 7

     A.      Stroz's Methodology................................................................................ 7

     B.      Authenticom Offers No Valid Criticism Of Stroz's YES/NO
           Methodology........................................................................................... 10

           1.      Authenticom Does Not Dispute That Stroz Accurately
                  Calculated Automated Responses Within ████████████
                  ████.................................................................................. 10

           2.      Authenticom's Argument That Stroz Needs To Be Qualified As
                  A Statistics Expert Is Wrong............................................... 10

           3.      Authenticom's Statistics Arguments Go To Weight, Not
                  Admissibility, And Are Wrong In Any Event. ..................... 11

           4.      Stroz Did Not Extrapolate When Determining ████████
                  ████████████████.................................................. 15

           5.      At Best, Authenticom's Remaining Arguments Go To Weight. ........ 16

III.    Stroz's Profile Manager Opinions Are Admissible. ......................................... 18

     A.      Profile Manager Methodology................................................................ 18

     B.      Authenticom Offers No Valid Criticism Of Stroz's Profile Manager
           Methodology........................................................................................... 21

            1.      Authenticom's Statistical Critiques Fail For The Same Reasons
                    They Fail In Connection With The YES/NO Prompt. ........................ 21

           2.      Authenticom's Argument That Stroz Improperly Excluded
                  Three Accounts Is Wrong. ................................................... 22

           3.      Stroz's Opinion Is Rationally Connected To The Evidence. .............. 22

IV.     Stroz's Opinions Regarding The Continental And Warrensburg Counter-
     Defendants Will Be Helpful To The Jury. ........................................................ 23

V.      The Few Cybersecurity Opinions Authenticom Attacks Are Reliable. ............ 24

CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allgood v. Gen. Motors Corp.*,
2006 WL 2669337 (S.D. Ind. Sept. 18, 2006) ................................................. 12

*Bone Care Int'l LLC v. Pentech Pharms., Inc.*,
2010 WL 3928598 (N.D. Ill. Oct. 1, 2010).............................................13-14

*Brown v. Burlington N. Santa Fe R.R. Co.*,
765 F.3d 765 (7th Cir. 2014) ...................................................................... 5

*DeKoven v. Plaza Assocs.*,
599 F.3d 578 (7th Cir. 2010) ..................................................................... 11

*DeLeon-Reyes v. Guevara*,
2019 WL 4278043 (N.D. Ill. Sept. 10, 2019) ........................................... 11, 12

*Dominguez v. Quigley's Irish Pub, Inc.*,
790 F. Supp. 2d 803 (N.D. Ill. 2011) .......................................................... 7

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013) ..................................................................... 12

*Gayton v. McCoy*,
593 F.3d 610 (7th Cir. 2010) ..................................................................... 11

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771 (7th Cir. 2017) ................ 24

*Harris v. City of Chicago*,
2017 WL 2436316 (N.D. Ill June 5, 2017) ................................................... 25

*Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*,
2003 WL 1797844 (N.D. Ill. Apr. 3, 2003) ................................................. 12

*Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*,
90 F. Supp. 3d 746 (S.D. Ohio 2015) ........................................................ 12

*Manpower, Inc. v. Ins. Co. of Penn.*,
732 F.3d 796 (7th Cir. 2013) ...........................................................*passim*

*O'Donnell v. Harris Cty., Tex.*,
251 F. Supp. 3d 1052 (S.D. Tex. 2017) ................................................... 5, 23

*Reed v. City of Chicago*,
2006 WL 1543928 (N.D. Ill. 2006) ............................................................ 22

*In re RFC & ResCap Liquidating Trust Litig.*,
2018 WL 4489685 (D. Minn. Sept. 19, 2018) .............................................. 11

ii

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*,
    457 F. Supp. 2d 957 (N.D. Cal. 2006) ................................................................................ 24

*Stockwire Research Grp., Inc. v. Lebed*,
    577 F. Supp. 2d 1262 (S.D. Fla. 2008) .............................................................................. 23

*Stollings v. Ryobi Techs., Inc.*,
    725 F.3d 753 (7th Cir. 2013) .............................................................................................. 7

*Stutzman v. CRST, Inc.*,
    997 F.2d 291 (7th Cir. 1993) ....................................................................................... 10, 11

*Suchanek v. Sturm Foods, Inc.*,
    311 F.R.D. 239 (S.D. Ill. 2015) ........................................................................................ 12

*Sure–Tan, Inc. v. N.L.R.B.*,
    467 U.S. 883 (1984) ............................................................................................................ 7

*Tietsworth v. Sears, Roebuck & Co.*,
    2012 WL 1595112 (N.D. Cal. May 4, 2012) .................................................................... 13

*United States v. Cyphers*,
    553 F.2d 1064 (7th Cir. 1977) .......................................................................................... 10

*Walker v. Soo Line R. Co.*,
    208 F.3d 581 (7th Cir. 2000) ............................................................................................ 15

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*,
    395 F.3d 416 (7th Cir. 2005) ............................................................................................ 14

**Statutes and Rules**

17 U.S.C. § 1203(c)(3) ............................................................................................................... 2

Fed. R. Evid. 702 .................................................................................................................... 10

## INTRODUCTION

Authenticom's motion to exclude parts of Edward Stroz's expert testimony is meritless. Co-founder of a global cyber-security firm and former head of the FBI's Computer Crime Squad in New York City, Stroz has an extensive background in forensic investigations and counsels large corporations on cyber- and data-security issues. In this case, he uses that experience and expertise to ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ For the most part, Authenticom challenges only one aspect of this assessment—the calculation of *how often* Authenticom and certain dealer plaintiffs engaged in conduct that poses cybersecurity risks and that CDK alleges violates the Digital Millennium Copyright Act ("DMCA"). But even as to this narrow challenge, Authenticom does not impugn Stroz's methods, as it must to exclude his testimony under *Daubert*. Instead, Authenticom focuses on Stroz's assumptions or his reliance on particular evidence. Those criticisms are not only improper grounds for exclusion, but many are trivial or demonstrably false. Authenticom's motion should be denied.[1]

## ARGUMENT

Stroz used reliable methods to calculate how often Authenticom bypassed three CDK security measures: ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████

---

[1] MDL Plaintiffs collectively have moved to exclude Stroz's opinions. As the focus of their motion is on Stroz's opinions regarding Authenticom's conduct, this brief will generally refer to "Authenticom" unless context requires otherwise. Reynolds joins this memorandum only as to Section V, because the remainder of Plaintiffs' challenges relate to opinions offered only on behalf of CDK. "Mot." refers to Plaintiffs' memorandum in support of their motion to exclude Stroz's opinions. Dkt. 861.

**I.      Stroz's CAPTCHA Opinions Are Admissible.**

**A.      Stroz's Methodology**

████████████████████████████████████████████████████████

████████████████████████████████████████████ By requiring the

user to enter obscured numbers and letters, a CAPTCHA prompt is designed to prevent

automated access (*i.e.*, access by a computer rather than a human). *Id.* ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████

At the pleading stage, this Court held that CDK plausibly alleged that "Authenticom's

use of an automated program to bypass CDK's use of a CAPTCHA" violated the DMCA.

Dkt. 506 at 17-18. Because the DMCA imposes liability of between $200 and $2500 "per act

of circumvention," 17 U.S.C. § 1203(c)(3), Stroz set out to determine the number of times

██████████████████████████████████████████████

*First*, Stroz estimated the number of automated entries received in response to CDK's

CAPTCHA prompt. *Id.*, App. C ¶5. For this, he analyzed ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

1.    ████████████████████████████████████████████████

████████████████████████████

2. 

3.

4.

*Second*, Stroz identified the accounts that Authenticom was using. *Id*., App. C ¶18.

Stroz then reviewed a second dataset showing

_____

[2] To be conservative,

██████████████████████████████████████████████████

████████████████████████████  ██████████████████████

██████████████████████████████████████

*Finally*, by combining these two sources, Stroz determined that ██████████████

██████████████████████████████████████████████████

██████████████████████████████

██████████████████████████████████████

*Id.*, App. C ¶25. Stroz also performed the same calculation for the Continental Counter-

Defendants (a plaintiff dealership group) and determined that ██████████████████

██████████████████████████████████████████████████

███████████████████

**B.     Authenticom's Critiques Of Stroz's CAPTCHA Opinions Are Meritless.**

Authenticom does not challenge Stroz's criteria for identifying automated responses.

Rather, it lobs a series of meritless attacks at Stroz's reliance on ███████████████████

██████████████████████████ Mot. 20-23.

**1.** Authenticom argues that Stroz ████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

───────────────────────────

[3] For these reasons, Authenticom's argument (at 22) that Stroz ████████████████

██████████████████████████████████████████████████

4

██████████████████████████████████████████████████████ This is a

strawman. Stroz never claimed that ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

such an argument goes to weight, not admissibility. An expert "need not exclude all alternatives

with certainty." *Brown v. Burlington N. Santa Fe R.R. Co.*, 765 F.3d 765, 773 (7th Cir. 2014).

All that is needed is a "rational connection between the data and [Stroz's] opinion," which

plainly exists here. *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 809 (7th Cir. 2013).

**2.** Further, Authenticom's specific challenge (at 20-21) to Stroz's decision t ███████████

████████████████████████████████████████████████ That decision caused Stroz

to estimate *fewer* automated CAPTCHA responses than he would have otherwise. An expert

can hardly be criticized for choosing a more conservative assumption that *reduces* the number

of violations.[4] *See, e.g.*, *O'Donnell v. Harris Cty., Tex.*, 251 F. Supp. 3d 1052, 1113-14 (S.D.

Tex. 2017) (opinion based on "realistic and conservative assumptions" was reliable "even with

. . . gaps and flaws in the" data).

Authenticom's criticism (at 22 n.13) that Stroz found ████████████████████

████████████████████████████████████████████████████████

---

[4] Authenticom complains in passing that Stroz was not qualified to perform this analysis because he is

████████████████████████████████████████████████████████
███████████████████████████████████████████

███████████████████ If anything, the differential suggests that Stroz *undercounted*

Authenticom accounts. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████

**3.** Authenticom is wrong to conclude that Stroz's opinions are inadmissible because

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

Further, it is exceedingly unlikely that ████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████. █

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

**4.** Finally, ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---
[5] ████████████████████████████████████████
████████████████████████████████████████
███████

6

███████████████████████████████ *See id.* So even if Authenticom's criticisms had

merit (and they do not), Stroz's analysis would still help the jury, which could use his analysis

to draw its own conclusions. *See Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 766-67 (7th Cir.

2013) (where expert employed a valid model, court should let jury determine accuracy of data);

*Manpower*, 732 F.3d at 807.

Moreover, that ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████ "'[I]t does not come with very good grace for [a] wrongdoer to

insist upon specific and certain proof of the injury it has itself inflicted,' and the proof of which

it has, itself, precluded." *Dominguez v. Quigley's Irish Pub, Inc.*, 790 F. Supp. 2d 803, 812

(N.D. Ill. 2011) (quoting *Sure–Tan, Inc. v. N.L.R.B.*, 467 U.S. 883, 910 (1984)).

## II. Stroz's YES/NO Prompt Opinions Are Admissible.

### A. Stroz's Methodology

In June 2016, CDK deployed a different prompt on Authenticom accounts to prevent

unauthorized access. ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████ CDK

**PUBLIC VERSION**

has alleged that Authenticom's use of this script violated the DMCA. Dkt. 229 (CDK Counterclaims) ¶¶105-112.

Stroz calculated t██████████████████████████████████████

██████████████████████████████████████████████████████

██████████████ As with his CAPTCHA analysis, he used a two-step analysis, first identifying automated responses and then tying those responses to Authenticom.

*First*, to identify automated responses, Stroz ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Other CDK records ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████

*Second*, as with the CAPTCHA analysis, Stroz next worked to determine whether the

accounts in question were actually used by Authenticom. █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

**B.** **Authenticom Offers No Valid Criticism Of Stroz's YES/NO Methodology.**

**1.** **Authenticom Does Not Dispute That Stroz Accurately Calculated Automated Responses Within** ███████████████

Authenticom's principal argument is that ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

**2.** **Authenticom's Argument That Stroz Needs To Be Qualified As A Statistics Expert Is Wrong.**

Regarding the YES/NO prompt, Stroz only ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ But the law does not demand expertise in statistics to render any opinion that draws on any kind of extrapolation. Rule 702 does not require "'that an expert's opinion testimony be expressed in terms of a reasonable scientific certainty in order to be admissible.'" *Stutzman v. CRST, Inc*., 997 F.2d 291, 296 (7th Cir. 1993) (quoting *United States v. Cyphers*, 553 F.2d 1064, 1072 (7th Cir. 1977)). Rather, "'an expert's lack of absolute certainty goes to the weight of his testimony, not the admissibility.'" *Id.* (quoting *Cyphers*, 553 F.2d at 1072-73). Stroz never claimed to be a statistician or to offer opinions to a degree of statistical precision. Authenticom seeks to create a rule requiring all experts performing such calculations to be expert statisticians, but no case

Authenticom cites so holds, and such a rule conflicts with Seventh Circuit authority.[6]

### 3. Authenticom's Statistics Arguments Go To Weight, Not Admissibility, And Are Wrong In Any Event.

Authenticom argues that ███████████████████████████████████

████████████████████████████████████████████████████████████████

But both of these arguments go to weight, not admissibility. The assertion that the ███

████ sample was unrepresentative challenges the accuracy of the data (a jury question) rather

than Stroz's methodology (a *Daubert* question). *See DeLeon-Reyes v. Guevara*, 2019 WL

4278043, at *11 (N.D. Ill. Sept. 10, 2019) (sample representativeness affects weight not

admissibility). Further, "the selection of the data inputs," here, ████████████████ "to

employ in a model is a question separate from the reliability of the methodology reflected in

the model itself." *Manpower*, 732 F.3d at 807.

The standard-error critique also goes to weight. As noted above, there is no requirement

that experts verify their findings to a particular degree of precision. *See supra* p. 10 (citing

*Stutzman*, 997 F.2d at 296); *see also In re RFC & ResCap Liquidating Trust Litig.*, 2018 WL

4489685, at * 6 (D. Minn. Sept. 19, 2018) (explaining that "[e]xperts are allowed that leeway"

in basing models on reasonable assumptions to "work[ ] around . . . small sample size").

In any event, Authenticom's criticism of sample representativeness is unavailing on its

merits. *First*, Authenticom mischaracterizes ████████████████ as a "convenience sample."

Mot. 6. But a "convenience sample" is one that is chosen simply because it is "convenient to

the sampler." *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 581 (7th Cir. 2010). And here there is

---

[6] Authenticom cites (at 5) *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010), but in *Gayton*, the court explained that the expert was not prevented from testifying about matters within a cardiologist's specialty simply because he was a not cardiologist; the proper issue was his relevant background. 593 F.3d at 617. Similarly, Stroz does not need to be a statistician to make the calculations he did. He was retained to assess the cybersecurity implications of hostile integration, and the more specific practices in question here (CAPTCHA and YES/NO prompt evasion; and use of the Profile Manager tool), which are at the heart of his general expertise in cybersecurity and forensic investigations, which in turn often require analysis of voluminous data. *See* Ex. 1, Rpt. ¶¶110-116 & App. C.

no dispute that t███████████████████████████████████—it was not cherry-

picked out of "convenience." Authenticom never suggests what else Stroz could have done,

nor does it grapple with the basic reality ████████████████████████████████

████████████████████████████████████████████ Authenticom

may not benefit from its illegal conduct because it failed to properly document its activities.

*See supra* p. 7. Regardless, even so-called convenience samples are not inherently

inadmissible. *See Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 246-47 (S.D. Ill. 2015).[7]

    *Second*, Authenticom ignores evidence that the ████████████ *was* representative:

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████ it was reasonable to assume that the sample was representative.

Authenticom's expert may disagree, but the jury will have to decide who is right. *See*

*Manpower*, 732 F.3d at 807; *DeLeon-Reyes*, 2019 WL 4278043, at *11.

    *Third*, Authenticom misinterprets the data. ████████████████████████

████████████████████████████████████████████████

---

[7] The principal case on which Authenticom relies (at 5-6, 14-15), *Allgood v. General Motors Corp.*, 2006 WL 2669337, at *11 (S.D. Ind. Sept. 18, 2006), is irrelevant because there "the expert explicitly and intentionally cherry-picked samples . . . with the effect of 'magnify[ing] greatly the risk.'" *Little Hocking Water Ass'n, Inc. v. E.I. du Pont de Nemours & Co.*, 90 F. Supp. 3d 746, 769 (S.D. Ohio 2015) (discussing *Allgood*). *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 774 (7th Cir. 2013) (Mot. 6) was not a *Daubert* case; the court only considered sample representativeness to determine the weight to give the evidence at class certification. *Holden Metal & Aluminum Works, Ltd. v. Wismarq Corp.*, 2003 WL 1797844, at *2 (N.D. Ill. Apr. 3, 2003) (Mot. 6-7) was not a sampling case at all; the court excluded the expert's analysis of a piece of gutter because it was "nothing more than a bottom line conclusion." *Id.* Here, Stroz used the best available data, analysed that data in detail, and explained why he determined it was appropriate to assume his sample was representative. Ex. 2, Reply ¶107 & n.232.

**PUBLIC VERSION**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ █████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

Finally, Authenticom raises several challenges to Stroz's statistical precision, but those arguments likewise fail. As discussed, this issue has nothing to do with admissibility. *See supra* p. 11. And it is now moot in any event. Dr. Daniel Rubinfeld, a statistics expert, ████████████

███████████████████████████████████████████████████████

█████████████████████████████ While Authenticom claims that "the need to ask a statistician to calculate standard error after the fact underscores Mr. Stroz's lack of qualification to perform his statistical modelling in the first place," Mot. 10, this misrepresents Stroz's opinion because he did not purport to be a statistician performing formal "statistical modelling." *See supra* § II.B.2. Nor is there anything to Authenticom's claim that it is improper for Dr. Rubinfeld to perform a statistical analysis to "backfill" Stroz's opinion. Mot. 9-10. There is no rule that a second expert cannot confirm the validity of another's methodology. *See Tietsworth v. Sears, Roebuck & Co.*, 2012 WL 1595112, at *9-10 (N.D. Cal. May 4, 2012) (expert opinion not inadmissible where expert relied on a different expert as to statistical

---

[8] Authenticom also claims (at 7) that ███████████████████████████████████
████████████████████████████████████████████████████

issues).

Authenticom's principal authority—*Bone Care International LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 3928598 (N.D. Ill. Oct. 1, 2010)—is not to the contrary. There, the plaintiff offered expert testimony from a biostatistician who admitted that the methodology used to reach the opinions in his initial report was substantively incomplete. *Id.* at *5-6. The plaintiff submitted the testimony of a second expert to support the opinion of the biostatistician, but the court found that the second expert's work could not take a report that "employ[ed] an admittedly incomplete methodology" and make it reliable *Id.* at *7. Unlike in *Bone Care*, Stroz did not use an "incomplete methodology." Rather, Dr. Rubinfeld confirms that Stroz's work was statistically precise without altering Stroz's methodology at all.[9]

Ultimately, Authenticom challenges Dr. Rubinfeld's statistical-precision opinion on the merits, but to no avail. Plaintiffs' motion to exclude *Dr. Rubinfeld's* opinions does not assert this ground. *See generally* Dkt. 871. And regardless, Dr. Rubinfeld's opinions are admissible. Authenticom's only critique is that, in assessing Stroz's work, ███████████████

████████████████████████████████████████████████████████

███████ Authenticom cites no authority that such an assumption renders Dr. Rubinfeld's conclusion inadmissible, however, nor does it assess whether that assumption has a material impact. At most, Dr. Rubinfeld's assumption on this point goes to weight, not admissibility. *See Manpower*, 732 F.3d at 808.

---

[9] Authenticom's citation to *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416 (7th Cir. 2005), is also unavailing. In *Zenith*, an expert sought to offer testimony on projected television service sales, and he opined that the local market was unique. But the court found that the expert "all but conceded that he had not applied 'reliable principles and methods'" and "had no method or could not describe one." *Id.* at 418. The court determined that the expert "guessed" about the local market "[b]ut social science has tools" he could have used. *Id.* at 419. In contrast, Stroz used reliable tools to calculate the number of YES/NO responses. What Authenticom really asserts is that he failed to conduct a post hoc analysis of the statistical precision of his analysis. But that statistical analysis does not affect his methodology. Instead, it simply confirms that Stroz's opinions were accurate in the first place.

14

4.     <u>**Stroz Did Not Extrapolate When Determining**</u> ████████
████████████████████.

Authenticom argues that Stroz improperly engaged in "statistical extrapolation" by determining the number of user accounts that received the YES/NO prompt ████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████

In short, Stroz did not use "extrapolation" to calculate the number of users who received the prompt, and thus there is no statistical issue here at all. If Authenticom nonetheless continues to argue that the data does not mean what Stroz claims, *see* Mot. 4, then this is a dispute about the meaning of data, not a ground for exclusion. *See Walker v. Soo Line R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000) ("That two . . . experts reach opposing conclusions from the same information does not render their opinions inadmissible.").[10]

---

[10] ██████████████████████████████
████████████████████████

**5.      At Best, Authenticom's Remaining Arguments Go To Weight.**

Authenticom raises three more evidence-based objections to Stroz's YES/NO prompt calculation, but each is meritless. Indeed, each shows that Stroz's basic methodology is reliable; the fact that experts may disagree about the values of particular inputs to a model is not grounds for excluding expert opinions under *Daubert*. *Manpower*, 732 F.3d at 807.

*First*, Authenticom complains ████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████ But that is a challenge to data inputs, not methodology. If the jury sees fit, it can reduce the number of users accordingly, and the mathematical effect of such a small number of users will be insignificant.

*Second*, Authenticom claims that Stroz ████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████ Regardless, as with Authenticom's other claims, this at most raises a question of data inputs, not methodology. *See Manpower*, 732 F.3d at 807. Authenticom can make its argument to the jury, which can deduct users if it sees fit.

*Third*, Authenticom claims that there were "obvious errors" ████████████████ ██████████████████████████████████████████████████████

**PUBLIC VERSION**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████ It was therefore

perfectly reasonable for Stroz not to exclude an account based on name alone.

*Finally*, Authenticom criticizes Stroz because, unlike with CAPTCHA, he did not

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ If the jury agrees as to particular users,

it can exclude them from its calculations.[12]

---

[11] And some of the referenced third parties were ████████████████████████████████
███████████████████

[12] In a parenthetical, Authenticom claims that Stroz ██████████████████████████████
████████████████████████████████████████████

### III. Stroz's Profile Manager Opinions Are Admissible.

#### A. Profile Manager Methodology

In late 2016, CDK began ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ This Court held

that CDK sufficiently alleged that Authenticom violated the DMCA when it "implemented a

software tool that automatically renewed user IDs that CDK had disabled." Dkt. 506 at 16.

Authenticom provided inconsistent information about ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

    1. ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

███████████████████████████████████████████████████████ this Court has held that
*Authenticom* cannot rely on the dealer contracts for its authorization when CDK denies Authenticom
authorization. *See* Dkt. 506 at 14 ("CDK also argues that even if the MSA allowed dealers to give
Authenticom access to CDK's DMS, Authenticom's access to the DMS over CDK's express objection
would still violate the CFAA and parallel state-law statutes. The Court agrees."); *id.* at 16 (DMCA). In
any event, if the jury determines Authenticom did not violate the DMCA by extracting data for dealers
███████████████████████████████ the jury can exclude those user accounts from its calculations.

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

Stroz adjusted his calculation because ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

2. Next, Stroz determined how often ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

To determine how often ████████████████████████████

████████████████████████████████████████████

Deep

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

Stroz observed ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

3. Finally, Stroz calculated the number of times ██████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████

**B.    Authenticom Offers No Valid Criticism Of Stroz's Profile Manager Methodology.**

**1.    Authenticom's Statistical Critiques Fail For The Same Reasons They Fail In Connection With The YES/NO Prompt.**

Authenticom repeats its statistical arguments from the YES/NO prompt: that Stroz lacks statistical expertise, his sample was not representative, and he did not report the precision of his calculation. Mot. 15-17. Those arguments fail here for the same reasons as above. Stroz did not purport to offer an opinion as a statistician. Authenticom provides no reason to believe that ██████████████████ is not representative—but even if so, that argument goes to weight.[14] Authenticom's critiques ignore Stroz's finding ████████████████████████████

██████████████████████████████████████████████████████████

██ And Dr. Rubinfeld calculated the standard error, finding it precise. Rubinfeld Reply Rpt. ¶28 (Mot., Ex. F). Finally, it bears noting that Authenticom's statistical critiques do not apply to Stroz's calculations o ████████████████████████████████████████

████████████████████████████████████████████████

---

[13] Stroz provided calculations as to both ████████████████████████████
████████████████████████ allowing the jury to draw its own conclusions with ease.

[14] Authenticom's argument (at 15) that Stroz needed to assess the "representativeness" of ████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████

2. **Authenticom's Argument That Stroz Improperly Excluded Three Accounts Is Wrong.**

Authenticom argues that Stroz designed his sample to be biased because, when he

developed ████████████████████████████ he excluded three accounts. Mot. 14.

Again, however, this argument misstates what Stroz did. He did *not* e████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████ Further, Stroz explained that including those

accounts would not change ███████, so this issue has no effect. *Id.* ¶129.

3. **Stroz's Opinion Is Rationally Connected To The Evidence.**

Authenticom next contends that the Authenticom documents Stroz used to determine

███████████████████████████████████████████████████████████████

Authenticom nit-picks the language in a few emails, ██████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████ Regardless, this criticism is not about admissibility, because Stroz's opinions

are "founded on data." *Reed v. City of Chicago*, 2006 WL 1543928, at *2 (N.D. Ill. 2006).

The same goes for Authenticom's challenge to ██████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████ This was a conservative (and thus admissible) approach. *See, e.g.*, *O'Donnell*, 251

F. Supp. 3d at 1113-14; Ex. 1, Rpt., App. C ¶49.[15]

## IV. Stroz's Opinions Regarding The Continental And Warrensburg Counter-Defendants Will Be Helpful To The Jury.

The Continental and Warrensburg Counter-Defendants (two dealer groups) argue that

Stroz failed to attribute any purported DMCA violations to individual dealerships within the

respective groups. Mot. 19, 23. But Stroz calculated that █████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████ He did not

attribute those violations to any dealership within a dealer group ████████████████

███████████████████████████████████████████████

Authenticom's criticism is wrong for two reasons. First, liability under the DMCA is

joint and several. *See Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266 (S.D.

Fla. 2008). As explained in Defendants' opposition to the motion to exclude the opinions of

their damages expert, Dr. Rubinfeld, the Continental and Warrensburg dealership groups ████

██████████████████████████████████████████████████

---

[15] Authenticom also argues that Stroz's ████████████████████████████████████s
irrelevant under the DMCA, saying that they intend to seek summary judgment on the issue. Mot. 19.
CDK will respond to Authenticom's summary judgement motion on this issue.

[16] Authenticom criticizes Stroz ████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████ Rubinfeld *Daubert* Opp. at 20. Thus, the Continental and

Warrensburg Counter-Defendants are jointly and severally liable for their DMCA violations

within their respective groups, so violations need not be allocated to specific dealers. *See, e.g.,*

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 968 (N.D. Cal. 2006)

(imposing DMCA joint and several liability for entities with common owners and direction).

Second, even if the jury needed to assign violations to individual dealerships, Stroz's

opinion would still assist in doing so because it defines the *total* violations to be allocated. If

necessary, CDK can present further evidence tying violations to particular dealerships. Thus,

Stroz's testimony "will assist the trier of fact to understand the evidence or to determine a fact

in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017).

## V.     The Few Cybersecurity Opinions Authenticom Attacks Are Reliable.

Stroz opined that ████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████ Plaintiffs

seek to exclude three of Stroz's cybersecurity opinions, but each argument is meritless.

*First*, Plaintiffs attack Stroz's opinion ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████ This ignores Stroz's report—which details his opinions. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

24

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

*Second*, Plaintiffs label it improper for Stroz to opine that ██████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ But Stroz

did not, as Authenticom claims (at 24), "parrot" opinions ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████ a factual issue on which Stroz was entitled to "rely on his client's version of the facts."

*Harris v. City of Chicago*, 2017 WL 2436316, at *12 (N.D. Ill June 5, 2017). And notably,

Plaintiffs never argue that ███████████████████████████████████.[17]

Finally, Plaintiffs attack (at 25) an opinion as to the legal meaning of Defendants' dealer

contracts—an opinion Stroz never offered. Though Stroz mentions ██████████████████

██████████████████████████████████ Ex. 2, Reply ¶5, none of

Stroz's opinions turns on whether ██████████████████████████████████████

████████████████████████████████████████████████████████

*Id.* ¶6; Ex. 1, Rpt. ¶22. But even if his opinions did turn on interpretation of the contracts, Stroz

was entitled to assume Defendants' position on that issue. *Harris*, 2017 WL 2436316, at *12.

## CONCLUSION

Authenticom's motion to exclude Stroz's opinions should be denied.

---

[17] That one of the fields at issue – ██████████████████████████████████████
████████████████████████████████████████████████████████

**PUBLIC VERSION**

Dated: May 29, 2020

Respectfully submitted,

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross M. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com
jglickstein@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on May 29, 2020, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC's AND THE REYNOLDS & REYNOLDS CO.'s MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD M. STROZ** to be served electronically on all counsel of record at the following email address:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com