# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| *Motor Vehicle Software Corp. v. CDK Global LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.) | **PUBLIC - REDACTED** |

## MVSC'S OPPOSITION TO THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GORDON KLEIN

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ............................................................................................................ 2

LEGAL STANDARD .................................................................................................... 8

ARGUMENT ................................................................................................................. 9

    I.      Mr. Klein Calculated Only Those Damages Caused By Unlawful Conduct ............... 9

    II.     Mr. Klein Properly Calculated Future Damages To MVSC ...................................... 11

    III.    Mr. Klein Reliably Analyzed Potential Alternative Causes ...................................... 13

    IV.    Mr. Klein Properly Relied On Evidence To Calculate Lost Profits For Specific Dealers That Chose Not To Use MVSC Because Of The Interference ...................... 15

    V.     Mr. Klein Had A Reasonable Basis For Calculating Wisconsin Lost Profits ............ 18

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*Albrecht v. Herald Co.*,
  452 F.2d 124 (8th Cir. 1971) .................................................. 9

*Angelopoulos v. Keystone Orthopedic Specialists,S.C.*,
  2017 WL 2178504 (N.D. Ill. May 16, 2017) .................................. 14

*Artunduaga v. Univ. of Chicago Med. Ctr.*,
  2016 WL 7384432 (N.D. Ill. Dec. 21, 2016) .................................. 16

*Ask Chemicals, LP v. Computer Packages, Inc.*,
  593 F. App'x 506 (6th Cir. 2014) ............................................. 17

*Atlas Flooring, LLC v. Porcelanite S.A. DE C.V.*,
  425 F. App'x 629 (9th Cir. 2011) ............................................. 12

*Bangor & A.R. Co. v. ICC*,
  574 F.2d 1096 (1st Cir. 1978) ................................................ 13

*Barber v. United Airlines Inc.*,
  17 F. App'x 433 (7th Cir. 2001) .............................................. 20

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998) ................................................. 10

*Cates v. Whirlpool Corp.*,
  2017 WL 1862640 (N.D. Ill. May 9, 2017) ................................... 20

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ........................................................... 10

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ............................................... 10

*Conwood Co. v. U.S. Tobacco Co.*,
  290 F.3d 768 (6th Cir. 2002) ................................................ 13

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
  363 F.3d 761 (8th Cir. 2004) ................................................ 10

*Crouch v. John Jewell Aircraft, Inc.*,
  2016 WL 157464 (W.D. Ky. Jan. 12, 2016) .................................. 11

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ................................................. 1, 8, 11, 16

*In re DMS Antitrust Litig.*,
362 F. Supp. 3d 477 (N.D. Ill. 2019) ........................................................ 3

*In re DMS Antitrust Litig.*,
2018 WL 6629250 (N.D. Ill. Oct. 22, 2018) ................................... *passim*

*Dura Auto Sys. of Indiana, Inc. v. CTS Corp.*,
285 F.3d 609 (7th Cir. 2002) ................................................................ 17

*Eleven Line, Inc. v. N. Texas State Soccer Ass'n, Inc.*,
213 F.3d 198 (5th Cir. 2000) ................................................................ 13

*Fishman v. Estate of Wirtz*,
807 F.2d 520 (7th Cir. 1986) .................................................................. 9

*In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) ......................................... 14

*Gomez v. Palmer*,
2016 WL 212952 (N.D. Ill. Jan. 19, 2016) ............................................ 19

*Holiday Resales, Inc. v. Hartford Cas. Ins. Co.*,
2008 WL 11343449 (W.D. Wash. Oct. 2, 2008) .................................... 12

*Instant Tech., LLC v. DeFazio*,
2013 WL 2434614 (N.D. Ill. June 4, 2013) ........................................... 12

*Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*,
851 F.2d 540 (1st Cir. 1988) ................................................................ 17

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
305 F.3d 368 (5th Cir. 2002) ................................................................ 10

*Kleen Prods. LLC v. Int'l Paper*,
306 F.R.D. 585 (N.D. Ill. 2015) ............................................................ 11

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) .............................................................................. 14

*Lawson v. Trowbridge*,
153 F.3d 368 (7th Cir. 1998) ................................................................ 15

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005) .................................................... 17

*Manpower, Inc. v. Ins. Co. of Pennsylvania*,
732 F.3d 796 (7th Cir. 2013) ........................................................... 8, 16

*MCI Commc'ns Corp. v. AT&T Co.*,
    708 F.2d 1081 (7th Cir. 1983) ........................................................... 9, 10

*MVSC v. CDK Global, Inc.*,
    No. 17-896 (C.D. Cal. Oct. 2, 2017)..................................................... 3, 9

*MVSC v. CDK Global, Inc.*,
    No. 17-896 (C.D. Cal. Nov. 2, 2017)............................................. 3, 4, 9, 10

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*,
    669 F.2d 490 (7th Cir. 1982) ................................................................. 11

*Richman v. Sheahan*,
    415 F. Supp. 2d 929 (N.D. Ill. 2006) ..................................................... 17

*Smith v. Ford Motor Co.*,
    215 F.3d 713 (7th Cir. 2000) ............................................................. 8, 16

*Smolow v. Hafer*,
    513 F. Supp. 2d 418 (E.D. Pa. 2007) ..................................................... 16

*Sys. Dev. Integration, LLC v. Computer Scis. Corp.*,
    886 F. Supp. 2d 873 (N.D. Ill. 2012) ..................................................... 10

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
    546 F.3d 991 (9th Cir. 2008) ................................................................. 13

*Tilstra Dairy Equip., Ltd. v. Boumatic LLC*,
    791 F.3d 749 (7th Cir. 2015) ................................................................. 17

*Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*,
    223 F.3d 585 (7th Cir. 2000) ................................................................. 16

*United States ex rel. Skibo v. Greer Labs., Inc.*,
    2019 WL 1992139 (W.D.N.C. May 6, 2019) .......................................... 12

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) ........................................................... 14, 15

*Victory Records, Inc. v. Virgin Records Am., Inc.*,
    2011 WL 382743 (N.D. Ill. Feb. 3, 2011) .............................................. 17

*Williamson Oil Co., Inc. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ............................................................. 10

## RULES AND REGULATIONS

Fed. R. Civ. P. 26(e)(2).......................................................................... 12

## INTRODUCTION

Mr. Gordon Klein is Plaintiff Motor Vehicle Software Corporation's ("MVSC") damages and causation expert. He calculated MVSC's lost profits due to the interference with MVSC's business from the conspiracy between Defendant The Reynolds and Reynolds Company ("Reynolds") and former Defendants CDK Global, LLC ("CDK") and Computerized Vehicle Registration, Inc. ("CVR"). Mr. Klein also excluded other factors that might have explained MVSC's damages. Mr. Klein applied well-established methods of calculating lost profits. █

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Reynolds's *Daubert* challenge lacks merit. *First*, Reynolds claims that Mr. Klein failed to disaggregate harm due to unlawful conduct from harm due to lawful conduct. However, Mr. Klein only calculated damages flowing from the interference, which he permissibly assumed to be unlawful. There was no lawful conduct for Mr. Klein to disaggregate. *Second*, Reynolds complains that Mr. Klein has not updated his analysis to account for an intervening settlement with CDK and CVR. This is a procedural argument for supplemental disclosure, not a basis for exclusion of his disclosed opinions under *Daubert*. In any event, Mr. Klein need not update his analysis until 30 days prior to the deadline for the pretrial order; there is no trial date or deadline for pretrial orders scheduled. *Third*, Reynolds's contention that Mr. Klein's causation opinion is unreliable is meritless. Mr. Klein reliably applied his specialized business knowledge to conclude

that the interference caused MVSC's damages. *Fourth,* 

. However, factual disputes regarding those inputs are for a jury to resolve. *Fifth,*

Here, too, Reynolds raises a factual dispute – whether MVSC would have received regulatory approval absent the interference – that does not implicate the reliability of Mr. Klein's methodology and that is for the trier of fact to resolve.

## BACKGROUND

I.        Every dealer uses a dealer management system ("DMS") to manage various business functions such as accounting, customer relations, and human resources.  The DMS includes a database that stores data generated by the dealer, such as the customer, vehicle, and financing data.  MVSC provides electronic vehicle titling and registration ("EVR") software to dealers.  This software enables dealers and their customers to register and title cars at the dealership instead of a state office.  For this software to work, it needs access to information concerning the customer, vehicle, and financing – all of which is stored on the DMS.

Each state has its own regulatory approval process that affects which EVR providers may offer their applications in that state.  MVSC offers its products in California, Oregon, Illinois, and Virginia, and has attempted to enter the Wisconsin market.  MVSC's competitor and former Defendant CVR is a wholly owned joint venture of former Defendant CDK (80 percent) and Reynolds (20 percent).  CVR competes directly with MVSC in California, Illinois, and Virginia, and offers its services in many other states, including Wisconsin.  CDK and Reynolds are the two

dominant DMS providers, with a combined market share exceeding 70 percent when measured by dealer rooftop.

**II.** MVSC brought this suit to remedy CDK's, Reynolds's, and CVR's anticompetitive interference with MVSC's access to dealer data on CDK's and Reynolds's DMS. MVSC's suit is based on the same unlawful conspiracy that is at issue in every case in this MDL: CDK and Reynolds conspired to block independent data integrators (like Authenticom) from accessing their DMS. *See* Order, *MVSC v. CDK Global, Inc.*, No. 17-896, Dkt. 73, at 1-2 (C.D. Cal. Oct. 2, 2017) ("*MVSC I*"); *In re DMS Antitrust Litig.*, 2018 WL 6629250, at *2 (N.D. Ill. Oct. 22, 2018) ("*MVSC II*") ("CDK and Reynolds have cut off MVSC's access through intermediaries."). Had CDK and Reynolds not blocked data integrators, MVSC could have relied on them (as it did in the past) for access to dealer data stored on the DMS. *See MVSC I* at 4; *MVSC II*, 2018 WL 6629250, at *2.

Defendants also conspired to prevent MVSC from participating in CDK's and Reynolds's data integration programs – the Reynolds Certified Interface ("RCI") and CDK's Third Party Access ("3PA"). These programs are generally available to software vendors to access data on the DMS, albeit at inflated prices and reduced levels of quality. *See In re DMS Antitrust Litig.*, 362 F. Supp. 3d 477, 484-85 (N.D. Ill. 2019) (antitrust suit by vendors participating in 3PA and RCI). But CDK and Reynolds refused to allow MVSC – a competitor of their joint venture CVR – to participate in these programs. *See MVSC I* at 3; *MVSC II*, 2018 WL 6629250, at *2-3.

This conspiracy harmed MVSC. ███████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

MVSC brought antitrust conspiracy claims against CDK and Reynolds under Section 1 and Section 2 of the Sherman Antitrust Act and related state laws. *See* Second Am. Compl., *MVSC v. CDK Global, Inc.*, No. 17-896, Dkt. 76, ¶¶ 6, 13, 206-215, 233-240, 245-247 (C.D. Cal. Nov. 2, 2017) ("SAC"). MVSC also brought monopolization claims against CDK and CVR under Section 2 of the Sherman Act and related state laws. *See id.* ¶¶ 7-9, 15, 216-232, 241-244. The anticompetitive conduct at issue in the monopolization claims is the conspiracy between CDK and Reynolds to block MVSC's access to the DMS. *See MVSC II*, 2018 WL 6629250, at *8 ("To the extent that MVSC seeks to bring Section 2 claims based on the alleged conspiracy to deny MVSC access to dealer data, MVSC sufficient[ly] has alleged the requisite anticompetitive conduct.").

**III.** MVSC engaged Mr. Gordon Klein to calculate the damages suffered by MVSC due to the anticompetitive conduct. Mr. Klein is a Certified Public Accountant ("CPA") and has been on the faculty at UCLA's Anderson School of Management since 1981, where he is currently a lecturer in accounting. *See* Klein Rep. ¶¶ 1, 3, App'x A. For more than thirty years, Mr. Klein has taught undergraduate and graduate courses, including financial and management accounting, entrepreneurship, enterprise valuation, business plan development, and goodwill valuation. Mr. Klein has also published on a wide range of topics in accounting, business law, and business plan development. *Id.* ¶¶ 3-4, App'x A. Mr. Klein has served as a damages expert (including lost

profits) in many cases (including antitrust cases). *See id.* ¶ 5, App'x B; Ex. A, Deposition

Transcript of Gordon Klein ("Klein Dep.") at 14:8-18:25.









## LEGAL STANDARD

When determining the admissibility of expert testimony under *Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993), a "district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed." *Manpower, Inc. v. Ins. Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013). The reliability of an expert's testimony "is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Id.* Rather, the "soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis" are factual matters reserved for the trier of fact. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

## ARGUMENT

I.     **Mr. Klein Calculated Only Those Damages Caused By Unlawful Conduct**

Mr. Klein calculated damages due to the unlawful interference – ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ That interference

is the direct result of the conspiracy between CDK and Reynolds that is at issue in this case and

others in this MDL. *MVSC I* at 3-4; *MVSC II*, 2018 WL 6629250, at \*2-3; SAC ¶¶ 206-215

(alleging Section 1 claim based on the conspiracy between CDK and Reynolds "to block MVSC

from [RCI and 3PA] and cut off MVSC's access to obtain the necessary dealer data by other

means"). Mr. Klein properly calculated damages flowing from that conduct. *See Fishman v.*

*Estate of Wirtz*, 807 F.2d 520, 551 (7th Cir. 1986) ("It is well settled that an antitrust plaintiff is

entitled to recover 'in full for the preventable and established loss sustained by reason of tortious

or proscribed acts.'" (quoting *Albrecht v. Herald Co.*, 452 F.2d 124, 128 (8th Cir. 1971))).

Reynolds contends (at 8-11) that Mr. Klein did not "disaggregate" the effects of lawful

conduct from damages due to unlawful conduct. But Mr. Klein's model was designed to measure

*only* damages due to the interference, not other causes; there was therefore no further need to

"disaggregate" damages due to lawful conduct. *Cf. MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d

1081, 1161 (7th Cir. 1983) (no "requir[ement]" to "disaggregat[e] . . . damages among the various

unlawful acts"). Tellingly, Reynolds does not even identify the supposedly lawful conduct or its

effects that Mr. Klein supposedly failed to exclude. Although Reynolds argues (at 8) that Mr.

Klein did not account for "harm caused by each defendant's *unilateral* conduct which would still

exist in the but-for world," that merely repeats Reynolds's disagreement with MVSC's liability

case. *See* Dkt. 955, at 9-24 (Reynolds's motion for summary judgment arguing that the

interference was unilateral conduct). Reynolds's argument that the trier of fact should find no *liability* because Reynolds engaged in unilateral conduct provides no basis to exclude Mr. Klein's *damages* analysis, which is premised on a finding of liability. *See Sys. Dev. Integration, LLC v. Comp. Scis. Corp.*, 886 F. Supp. 2d 873, 882 (N.D. Ill. 2012) ("It is entirely appropriate for a damages expert to assume liability for the purposes of his or her opinion. To hold otherwise would be illogical.").[3]

Defendants' attempt to squeeze this into the mold of *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), mischaracterizes Mr. Klein's opinions and this case. *Comcast* concerned a damages expert that, after the dismissal of certain theories, could not distinguish damages due to the sole remaining theory of anticompetitive impact. *Id.* at 31-32, 34-36. But no such problem exists in this case. Mr. Klein's model calculates damages flowing from the interference, which remains at the core of each of MVSC's claims.[4]

---

[3] ████████████████████████████████████████████████████████████████. That was appropriate because the monopolization claims were premised on the same anticompetitive conduct and effects. *See MVSC II*, 2018 WL 6629250, at *8 ("To the extent that MVSC seeks to bring Section 2 claims based on the alleged conspiracy to deny MVSC access to dealer data, MVSC sufficient[ly] has alleged the requisite anticompetitive conduct."). Indeed, the Section 2 conspiracy to monopolize claim against Reynolds remains in the case, and although monopolization claims against CDK and CVR were settled, that did not remove any relevant conduct or effects from the case against Reynolds as a co-conspirator.

[4] The other cases on which Reynolds relies similarly concerned experts that had mixed damages from lawful and unlawful conduct. *See MCI*, 708 F.2d at 1092-93, 1164 (expert calculated liability for 22 distinct types of unlawful conduct, but the jury found liability on only 7); *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998) (expert failed to account for lawful conduct that may have contributed to damages); *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 777 (8th Cir. 2004) (expert failed to determine whether other lawful factors affected damages); *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1322-23 (11th Cir. 2003) (model measured damages from both collusive price fixing and lawful, conscious parallelism); *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376 (5th Cir. 2002) (expert included damages based on conduct that had been dismissed from the case); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056-57 (8th Cir. 2000) (expert failed to account for market events that were not due to unlawful conduct).

## II. Mr. Klein Properly Calculated Future Damages To MVSC

In his August 26, 2019 report, ███████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████ This was proper: an antitrust plaintiff is "entitled to recover

all damages caused by the antitrust conduct, including damages that will be suffered during and

after trial." *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 669 F.2d 490, 494 (7th Cir. 1982).

Reynolds does not contend that, when it was prepared, Mr. Klein's report ████████

███████████████████████████████████ nor does Reynolds contend that Mr. Klein's

methodology for calculating future damages is unreliable. Rather, Reynolds contends (at 10-11)

that Mr. Klein should have updated his report to account for later events – namely, MVSC's

settlement of its claims against CVR and CDK in October 2019 and its access to 3PA. Reynolds's

argument raises a procedural issue – when Mr. Klein should update his report to account for new

information – not a substantive issue concerning the reliability of Mr. Klein's analysis, and

therefore is not grounds to exclude Mr. Klein's testimony under *Daubert*. *See Crouch v. John

Jewell Aircraft, Inc.*, 2016 WL 157464, at *12 (W.D. Ky. Jan. 12, 2016) (rejecting *Daubert*

challenge to expert opinion based on expert's purported use of "stale" data because the "failure to

update" a "report is not a reason to exclude . . . otherwise reliable opinions").[5]

Nor would Reynolds have a valid procedural argument. Rule 26(e) imposes a "duty to

supplement" the "information included [in an expert] report" and "information given during the

---

[5] Reynolds notes (at 10-11) that Mr. Klein was aware of the settlement before he issued his reply report. But reply reports should consist of rebuttal testimony only; they are not an opportunity to address new matters. *See Kleen Prods. LLC v. Int'l Paper*, 306 F.R.D. 585, 591 (N.D. Ill. 2015). ███████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████

expert's deposition" by the time pretrial disclosures are due. Fed. R. Civ. P. 26(e)(2). Pursuant to this rule, damages experts may update their reports as trial approaches to apply their previously disclosed damages methodology to new and updated information. *See Atlas Flooring, LLC v. Porcelanite S.A. DE C.V.*, 425 F. App'x 629, 632 (9th Cir. 2011) (not error for damages expert "to testify about his updated damage calculations . . . based on more current information reflecting ongoing damages"); *Instant Tech., LLC v. DeFazio*, 2013 WL 2434614, at *3 (N.D. Ill. June 4, 2013) ("Because trial is not yet set in this case, the parties have ample time to update expert disclosures . . . ."); *United States ex rel. Skibo v. Greer Labs., Inc.*, 2019 WL 1992139, at *4 (W.D.N.C. May 6, 2019) (allowing supplementation where "pretrial disclosures were not due for more than three months and likely more than that"); *Holiday Resales, Inc. v. Hartford Cas. Ins. Co.*, 2008 WL 11343449, at *2 (W.D. Wash. Oct. 2, 2008) (allowing party to file supplemental report "up to 30 days before the new trial date").

Reynolds has not argued – and could not argue – that any supplement by Mr. Klein should be disallowed. Mr. Klein's report disclosed his damages methodology and applied it to the then-existing facts. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Accordingly, as trial approaches, Mr. Klein will update his calculations by applying his already disclosed methodology to any new facts. *See* Ex. A, Klein Dep. at 88:2-89:7. It would be premature for Mr. Klein to undertake those efforts when a trial has not yet been scheduled.[6]

---

[6] ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

- 12 -

### III.   Mr. Klein Reliably Analyzed Potential Alternative Causes

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████     *Conwood Co. v. U.S. Tobacco*

*Co.*, 290 F.3d 768, 793 (6th Cir. 2002) (citing *Eleven Line, Inc. v. N. Texas State Soccer Ass'n,*

*Inc.*, 213 F.3d 198, 207 (5th Cir. 2000)).  ████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

██████████.  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1005 (9th Cir. 2008);

*Bangor & A.R. Co. v. ICC*, 574 F.2d 1096, 1108-09 (1st Cir. 1978).

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████████

---

█████████████████████████████████████████████████████████████████████████



Mr. Klein was qualified to offer these opinions regarding the potential effects of various factors on MVSC's business. Mr. Klein has academic and professional experience in business plan development, entrepreneurship, and profit forecasting and measurement. *See id.* ¶¶ 1, 3, 6. Mr. Klein reasonably applied that business expertise to this case. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999) (expert may be qualified on the basis of "specialized knowledge" or "specialized experience"); *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020) (economic expert properly reviewed factual evidence to assess competitive ramifications of defendant's unlawful conduct). That Mr. Klein does not have specific experience in the retail automobile software market goes merely to the weight of his opinions. *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, 2017 WL 2178504, at *5 (N.D. Ill. May 16, 2017) (business valuation expert was properly qualified to give opinion as to valuation of real estate business despite lack of specialized experience in the real estate industry); *In re Fluidmaster, Inc., Water Connector Components Prod. Liab. Litig.*, 2017 WL 1196990, at *6 (N.D. Ill. Mar. 31,

2017) (rejecting "bare assertion that" an expert "cannot opine on [specific] issues without possessing specialized [issue]-related formal education and particularized experience").

Contrary to Reynolds's contention (at 11-14) that Mr. Klein offers only his *ipse dixit*, 

Mr. Klein's specialized experience in these areas will be helpful to a jury. *See Viamedia*, 951 F.3d at 484 (district court abused its discretion in excluding expert testimony regarding "the economic rationales" and "competitive ramifications" of unlawful conduct).[7]

## IV. Mr. Klein Properly Relied On Evidence To Calculate Lost Profits For Specific Dealers That Chose Not To Use MVSC Because Of The Interference

---

[7] Reynolds contradicts its own argument that Mr. Klein is not qualified by arguing (at 14) that any juror could do exactly what Mr. Klein did. This argument is also no basis to exclude Mr. Klein's testimony. "An expert's opinion may 'overlap[ ] with the jurors' own experiences' or 'cover matters that are within the average juror's comprehension,' so long as the expert uses some kind of specialized knowledge to place the litigated events into context." *Viamedia*, 951 F.3d at 484 (quoting *Lawson v. Trowbridge*, 153 F.3d 368, 376 (7th Cir. 1998)); *see id.* (affirming allowance of expert testimony that "drew significantly on expertise" to add "context and supporting information" and tied record to "his broader opinion").

█████████████████████████████. That is fatal to Reynolds's *Daubert* challenge because this Court's *Daubert* analysis concerns the "reliability" of Mr. Klein's analysis, which "is primarily a question of the validity of the methodology [he] employed" – here, his method for calculating lost profits. *Manpower*, 732 F.3d at 806. Instead of challenging that methodology, Reynolds challenges (at 14-17) the data set – ████████████████ – to which Mr. Klein applied his damages calculations. But "[t]he soundness of the factual underpinnings of the expert's analysis" – here, whether the specific dealers at issue would have been MVSC customers "but for" the interference – is a "factual matter[ ] to be determined by the trier of fact." *Smith*, 215 F.3d at 718.

*Manpower, Inc. v. Insurance Co. of Pennsylvania* is instructive. There, the district court excluded expert testimony because the underlying data – "conversations with [the expert's client's] managers" – could not "be considered a reliable basis for a revenue forecast." 732 F.3d at 802 & n.3. The Seventh Circuit reversed, explaining that the "reliability of the data itself is not the object of the *Daubert* inquiry." *Id.* at 807-08. By "scrutiniz[ing] the quality of the expert's data . . . rather than the reliability of the methodology the expert employed," the district court had "usurp[ed] the role of the jury." *Id.* at 806; *see also Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (rejecting *Daubert* challenge to data underlying earnings projections).

In any event, Reynolds's criticisms have no merit. *First*, it is proper for an expert to rely on representations from a client. *See Tuf Racing*, 223 F.3d at 591 (proper reliance on "financial information furnished by [client] and assumptions given him by counsel of the effect of the termination on Tuf's sales"); *Artunduaga v. Univ. of Chicago Med. Ctr.*, 2016 WL 7384432, at *5 (N.D. Ill. Dec. 21, 2016) (no error in expert relying on "self-serving" declaration); *Smolow v. Hafer*, 513 F. Supp. 2d 418, 427 (E.D. Pa. 2007) ("[I]nterviews with agency or 'company

- 16 -

personnel' are 'normally and reasonably relied upon by accountants' under Rule 703." (quoting

*Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 545 (1st Cir. 1988))).[8]

*Second*, Mr. Klein verified the accuracy of the data supplied to him even though he did not

need to do so. *See Tilstra Dairy Equip., Ltd. v. Boumatic LLC*, 791 F.3d 749, 753 (7th Cir. 2015)

("[A]n expert witness is not required to verify all the facts on which he relies."). ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

*Third*, Mr. Klein offers no opinion regarding the credibility of any witness. Rather, he

accepted the veracity of the data supplied to him, which he is entitled to do as an expert:

> Experts routinely base their opinions on assumptions that are necessarily at odds
> with their adversary's view of the evidence. . . . That does not mean that the expert
> has made impermissible credibility determinations that preclude him from
> testifying. If an expert could not base his opinion on assumptions – which in turn
> are based on testimony – there could be little meaningful and informative expert
> testimony in any case in which there was a divergence of testimony.

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006) (citations omitted). ██████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

---

[8] Reynolds's cases (cited at 16) are inapposite. None stand for the proposition that an expert cannot rely on data inputs furnished by a client. *See Dura Auto Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (barring expert testimony relying on analyses of non-disclosed fact witnesses and assistants which expert himself was unqualified to perform); *Victory Records, Inc. v. Virgin Records Am., Inc.*, 2011 WL 382743, at *3 (N.D. Ill. Feb. 3, 2011) (excluding expert opinion that adopted client's sales projections as expert's own); *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 510 (6th Cir. 2014) (excluding an expert opinion that adopted client's outdated sales estimates for irrelevant markets and failed to explain methods or assumptions); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 808 (N.D. Ill. 2005) (expert may not be a "mouthpiece" for opinions of a non-testifying expert).

██████████████████████████████████████████████████████████████

████████████████████████████

## V.     Mr. Klein Had A Reasonable Basis For Calculating Wisconsin Lost Profits

Mr. Klein offers distinct causation and damages opinions for his Wisconsin lost profits

analysis. ████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████     Reynolds challenges (at 17-20) the factual basis underlying Mr. Klein's

causation opinion but not his damages opinion.

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████

Reynolds claims (at 17-18) that Mr. Klein's testimony must be excluded because he did not consider a February 23, 2017 letter that purportedly states the Wisconsin DMV was not considering approving new EVR providers.[9]  But there is no requirement that an expert consider "all" information.  *Gomez v. Palmer*, 2016 WL 212952, at *4 (N.D. Ill. Jan. 19, 2016).  ████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[9] Reynolds insinuates (at 6) that MVSC improperly withheld this letter and others from its production.  Not so.  To the extent that these documents were responsive to Reynolds's discovery requests and fell within the parties' agreed search protocol, MVSC would have produced them.


.[10]

## CONCLUSION

For the foregoing reasons, Reynolds's motion to exclude the testimony of Mr. Klein should be denied.

Dated:  May 29, 2020

Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for MVSC*

---

[10] The cases cited by Reynolds are distinguishable.  Unlike here, they concerned egregious circumstances where an expert had no rationale for not considering highly relevant and contradictory evidence.  *See Barber v. United Airlines Inc.*, 17 F. App'x 433, 437 (7th Cir. 2001); *Cates v. Whirlpool Corp.*, 2017 WL 1862640, at *15 (N.D. Ill. May 9, 2017).

## CERTIFICATE OF SERVICE

I, Derek T. Ho, an attorney, hereby certify that on May 29, 2020, I caused a true and correct copy of the foregoing **MVSC'S OPPOSITION TO THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GORDON KLEIN** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

*/s/ Derek T. Ho*

Derek T. Ho
**KELLOGG, HANSEN, TODD,**
  **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com