**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18 C 864<br><br>Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants CDK's and Reynolds and Reynolds's Motion to Compel Plaintiff Authenticom to Produce Third-Party Communications or, In the Alternative, Submit Such Communications for In Camera Review [EFC Nos. 539, 541]. For the reasons discussed herein, Defendants' Motion to Compel [EFC Nos. 539, 541] is granted in part, denied in part, and denied without prejudice in part.

## I. BACKGROUND

In their Motion to Compel Plaintiff Authenticom to Produce Third-Party Communications or, In the Alternative, Submit Such Communications for In Camera Review [EFC Nos. 539, 541], Defendants CDK Global LLC ("CDK") and Reynolds and Reynolds Company ("Reynolds and Reynolds") (together, "Defendants") challenge Plaintiff Authenticom's refusal to produce three categories of documents it is withholding based on the attorney-client privilege and/or the work-product doctrine. The documents Authenticom is withholding fall within the following categories: (1) communications dated from May 2015 to February 2017 between Authenticom and third parties, including AutoLoop, Dominion, Advent Resources, CarFax, MOC Products, DARCARS, eLead, SIS, DealerSocket, and Autopoint (together, the "Common Interest Group"), that Authenticom asserts are privileged based on the common interest doctrine; (2) communications between Authenticom and third parties BMO Harris Bank, Motormindz, Inc., and data extractor

Gilbert Hale that Authenticom asserts are privileged also based on the common interest doctrine; and (3) communications between Authenticom and other third parties, including management coach/consultant Lori Zimmer, investment firms Presidio Group and Gerchen Keller, and law firm Davis Polk, that Authenticom claims are protected by the attorney-client privilege even though the communications have been shared with third parties..

On June 10, 2019, the Court set a procedure by which the parties would submit a sample set of documents for the Court to review *in camera* for each of the identified categories. *See* [ECF No. 717]. As set forth in the Court's June 10, 2019 Order [ECF No. 717], the Court requested that Defendants CDK and Reynolds and Reynolds together and Plaintiff Authenticom, respectively, identify 10 documents from each of the categories at issue in Defendants' Motion and submit those documents to the Court for a limited *in camera* review. The parties submitted the documents, and the Court has completed its review of the parties' briefs and the documents that were submitted *in camera*. The Court will address each category of documents in turn.

## II. ANALYSIS

### A. Communications Authenticom Asserts Are Privileged Based On The Common Interest Doctrine

Authenticom has refused to produce certain communications between Authenticom and members of the so-called Common Interest Group based on the common interest doctrine. In their Motion, Defendants CDK and Reynolds and Reynolds challenge Authenticom's claim of attorney-client privilege and its assertion of the common interest doctrine over those documents. CDK and Reynolds and Reynolds argue that Authenticom's invocation of the common interest doctrine is unsupported by the facts and that Authenticom did not (and currently does not) share any viable or protectable common legal interest with the Common Interest Group.

In opposition, Authenticom claims that it did, in fact, share a common interest with the Common Interest Group to pursue potential antitrust litigation against Defendants CDK and Reynolds and Reynolds as a result of restrictions Defendants imposed on access by members of the Group and other companies to the dealer data stored on Defendants' Data Management Systems ("DMSs") and the resulting damage caused by those restrictions. Authenticom argues that Defendants' alleged anticompetitive practices "decimated competing data integrators (Advent, Authenticom, and Dominion), raised the prices paid by application vendors for access to data on CDK's and Reynolds's DMS (Dominion, CarFax, AutoLoop, eLead, and MOC1 Solutions), and resulted in dealers paying more for vendors' applications (DARCARS)." Authenticom's Opposition [ECF No. 571], at 7-8.

The Seventh Circuit has articulated the following test for the existence of the attorney-client privilege: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Naik v. Boehringer-Ingelheim Pharms., Inc.*, 2008 WL 4866015, at *1 (N.D. Ill. June 19, 2008) (citing *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991)). Of course, not all communications between the attorney and the client are privileged. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 388 (7th Cir. 1991)). The attorney-client privilege applies "'only if [the communications] constitute legal advice or tend directly or indirectly to reveal the substance of a client confidence.'" *Id.* (quoting *United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990)).

It is clearly established black letter law that "a party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party." *Grochocinski v. Mayer*

*Brown Rowe & Maw LLP*, 251 F.R.D. 316, 326 (N.D. Ill. 2008). The common interest doctrine, however, is a narrowly construed "exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). The common interest doctrine is applicable when (1) parties undertake a joint effort (2) with respect to an identical legal interest, as opposed to a business or rooting interest, and (3) the withheld communications are made to further said ongoing legal enterprise. *BDO Seidman, LLP*, 492 F.3d at 815-16; *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 732 (N.D. Ill. 2014). The party asserting the common interest doctrine and privilege bears the burden of showing that it applies and has not been waived. *Whitney v. Tallgrass Beef Co. LLC*, 2015 WL 3819373, at *2 (N.D. Ill. June 18, 2015).

After reviewing the parties' briefs and the documents submitted, the Court is not persuaded by Authenticom's arguments and concludes that Authenticom has failed to establish that the common interest doctrine applies to the communications and documents at issue. The purpose of the common interest doctrine is to "foster communication" between parties that share a common interest and to "protect the confidentiality of communications ... where a joint … effort or strategy has been decided upon or undertaken by the parties and their respective counsel." *United States v. Evans,* 113 F.3d 1457, 1467 (7th Cir. 1997). The common interest doctrine is designed to encourage "parties with a shared legal interest to seek legal assistance in order to meet legal requirements and to plan their conduct accordingly." *BDO Seidman, LLP,* 492 F.3d at 815 (internal citations omitted); *Pampered Chef v. Alexanian,* 737 F. Supp. 2d 958, 964 (N.D. Ill. 2010). Here, there is no evidence there was any joint legal planning. Nor is there any evidence that purported members of the Common Interest Group jointly sought legal assistance to pursue a common goal other than maybe a general consensus to approach the Federal Trade Commission

("FTC") in hopes that the FTC would agree to take legal action against CDK and Reynolds and Reynolds.

Other than its own assertions, Authenticom has not submitted any evidence that the purported Common Interest Group actually existed and that such a group contemplated and pursued a specific joint effort or enterprise. Rather, the evidence that has been submitted (other than Authenticom's say-so) contradicts Authenticom's position.[1] In addition, of the parties Authenticom has identified as being members of the Common Interest Group, only Authenticom filed suit in May 2017. Autoloop later filed suit in April 2018, and the remainder of the purported members of the Common Interest Group are non-parties to this litigation. Even more telling, Authenticom's counsel (on behalf of Plaintiff MVSC) actually threatened to sue SIS, a purported member of the Common Interest Group, as a co-conspirator with CDK and Reynolds and Reynolds but then settled with SIS prior to filing suit. It is not clear how Authenticom can argue that it shared a common legal interest with SIS to pursue a case against CDK and Reynolds and Reynolds for an alleged conspiracy in which SIS was an alleged co-conspirator.

Authenticom contends that the Common Interest Group members had the same interest in challenging Defendants' alleged anticompetitive restrictions on access to the dealer data on their DMSs. Courts have recognized that the common interest doctrine only applies when the parties undertake a joint effort with respect to "a common legal interest." *BDO Seidman, LLP,* 492 F.3d

---

[1] *See e.g.*, eLead Declaration [ECF No. 541-5], at 1 ("eLead is not involved in this lawsuit and wishes to remain neutral."); Tony Petruzzelli Dep. [ECF No. 585-2], at 45:15-46:6. ("Q: [H]as AutoLoop formed an agreement with anyone else concerning either the complaints you've made to the FTC or this litigation? A: Not that I'm aware of. Q: To your knowledge, has there ever been an agreement consummated between AutoLoop and any other third-parties that purports to allow the sharing of attorney-client privileged information? A: Not that I'm aware of."); Phillip Battista (SIS) Dep. [ECF No. 585-3], at 308:18-309:67 ("So this document was my understanding of it was [Mr. Petruzzelli] was looking to get a group of people together of to join the fight, potentially go to the FTC it's my understanding.... We did not participate in that effort.").

at 815-16. "The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, 1995 WL 360590, at \*5 (N.D. Ill. June 14, 1995).

It may be true that Authenticom and the members of the purported Common Interest Group shared some business interests in opposing CDK's and Reynolds and Reynolds's conduct, but that does not necessarily translate to a shared identical <u>legal interest</u> sufficient to protect otherwise non-privileged communications among third parties. The members of the Common Interest Group operate different businesses in the automobile industry, have different business interests, and in some instances are competitors with diverging interests. The Court is not persuaded that the Common Interest Group members shared identical legal interests. The Court recognizes that the members of the so-called Common Interest Group may have shared a similar business interest in opposing CDK's and Reynolds and Reynolds's allegedly unlawful business practices under the antitrust laws in litigation or with regulators like the FTC. That shared business or commercial interest, however, does not amount to a joint effort or an identical legal interest for purposes of the application of the common interest doctrine.

It is clear that Authenticom and the Common Interest Group may have wanted similar things from CDK and Reynolds and Reynolds, including certain functionality on Defendants' DMSs, access to their DMSs, and/or lower prices for access, and perhaps, they even share a desire Authenticom prevail in this litigation. That, however, is not enough for the common interest doctrine exception to attach to these otherwise non-privileged communications. *See Whitney*, 2015 WL 3819373, at \*7 (holding that "two parties have an interest in pressing a case forward simultaneously is not, in itself, sufficient to show that the common interest doctrine applies").

There must be a joint effort or strategy that is pursued by the parties to the common interest effort and their counsel. *See Evans,* 113 F.3d at 1467. That joint effort is lacking in this case.

Most of the communications among the purported Common Interest Group that were submitted to the Court for review occurred years before actual litigation was filed. In addition, common business and legal sense dictates that if the members of the so-called Common Interest Group believed they had a protectable joint interest to pursue litigation and truly shared an identical legal interest, then they and their counsel would have memorialized that understanding in a common interest agreement that then could have been trotted out to blunt precisely the challenge that Defendants have mounted here. The Court recognizes that a writing is not required. The withheld communications, however, involve sophisticated attorneys with sophisticated clients who, in the Court's view, would have executed a common interest agreement if they could have reached closure on such an agreement. Moreover, the members of this Common Interest Group were not static, and new members popped up years after the Group supposedly was formed that were not included in Authenticom's original privilege log. All of these factors cut against this being a group that can invoke the common interest privilege.

Further, Authenticom has asserted that the common interest that binds the Common Interest Group together is this litigation. The Court questions how companies that have chosen not to become parties to this litigation share an identical legal interest with the parties who are participating in the litigation. It is not disputed that the non-parties may benefit from the outcome in this litigation. But by definition, that is a *rooting* interest, not a legal interest. A shared rooting interest in the "successful outcome of a case" is not a common *legal* interest. *See Miller UK Ltd. v. Caterpillar, Inc.,* 17 F. Supp. 3d 711, 731-32 (N.D. Ill. 2014). Authenticom has not cited any case similar to the present litigation in which the purported common legal interest (1) arose years

7

before a lawsuit was filed; (2) is shared between nearly a dozen differently situated parties; (3) almost none of whom were represented by the same counsel—and many of whom never were represented by outside counsel at all; (4) when the counsel who later filed the lawsuit was not involved at the time the communications occurred; (5) the vast majority of the entities never filed suit (and there is no evidence they ever seriously considered doing so); (6) one of the supposed members of the common interest group actually threatened suit against another on the ground that it conspired with the named Defendants in this litigation and then settled that claim; and (7) other than the party (Authenticom) claiming the privilege, no other party has affirmed the existence of any common interest group and some actually have disclaimed joining any common interest arrangement.

For all of these reasons, the Court finds Authenticom failed to establish that the communications at issue are privileged based on the common interest doctrine. Defendants' Motion to Compel, therefore, is granted as to Authenticom's communications with the so-called Common Interest Group. Authenticom must produce those documents to Defendants. The Court declines to engage in further review of any additional documents at this time, and Authenticom is ordered to produce the communications at issue.

### 2. Communications with BMO Harris, Gilbert Hale, and Motormindz

Authenticom also has claimed a common interest privilege with three other entities: (1) BMO Harris, Authenticom's lender on a loan that Authenticom used to re-purchase the shares of investors in April 2014; (2) Gilbert Hale, a competitive data extractor; and (3) Motormindz, a marketing company Authenticom previously hired to assist with the marketing and launch of its products. Based on the documents submitted and reviewed *in camera*, the Court again is not

persuaded that Authenticom shared any common legal interest with BMO Harris, Gilbert Hale, or Motormindz.

It appears that any interest Authenticom shared with BMO Harris is purely financial, and not a common legal interest. Courts in this District consistently have held that communications with lenders, financiers, or other parties whose sole interest in a case is financial are not entitled to common interest privilege protection. *See Miller UK Ltd.*, 17 F. Supp. 3d at 732-33 ("The funders, for their part, were interested in profit…. [They] did not share a common legal interest, and materials shared with any actual or prospective funders lost whatever attorney-client privilege they might otherwise have enjoyed."); *Grochocinski*, 251 F.R.D. at 328 (holding that because the third party only had a financial interest in this case the common interest doctrine did not apply to the plaintiff's attorney's communications with the third party and its attorneys).

Authenticom also has not established that either Gilbert Hale or Motormindz had any common legal interest with Authenticom, were similarly situated, or shared a common legal interest in this litigation. Courts generally have found that outside marketing agencies like Motormindz generally do not share a common interest in litigation. *LG Electronics U.S.A., Inc. v. Whirlpool Corp.*, 661 F. Supp. 2d 958, 966 (N.D. Ill. 2009). And without any other evidence, it is not clear to the Court how Gilbert Hale, which is a competitor data extractor, would have anything other than maybe a shared commercial or business interest with Authenticom.

Putting aside the common interest doctrine, a review of the documents at issue, frankly, confirms the communications are not privileged. For the documents to be privileged, it must be clear from the communication that the lawyer is seeking or needs input and/or advice from the third-party advisor/consultant in order to provide legal advice to the lawyer's client. A communication is not privileged if the lawyer (or the client) is asking the third-party

9

advisor/consultant to offer its independent assistance, assessment, and opinion separate and apart from the legal advice being provided by counsel.  The Court's review of the documents submitted in camera confirms that Authenticom's communications with BMO Harris, Gilbert Hale, and Motormindz are not protected by any attorney-client privilege or the common interest doctrine.

For these reasons, Defendants' Motion to Compel is granted as to Authenticom's communications with BMO Harris, Gilbert Hale, and Motormindz, and Authenticom is ordered to produce the communications at issue.

## B. Other Communications With Third Parties Over Which Authenticom Asserts The Attorney-Client Privilege

As discussed above and in the Court's recent orders on related discovery motions, attorney-client communications and documents that otherwise would be privileged are discoverable if they have been shared with or disclosed to a third party.  *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 152 F.R.D. 132, 139 (N.D. Ill. 1993); *see also* March 4, 2020 Order [ECF No. 903] and March 30, 2020 Order [ECF No. 937].[2]  An exception to this rule exists and the presence of a third-party does not waive the privilege if the third party's presence (or, in the context of this case, the reason the third-party is included in or copied on email communications) is to facilitate effective communication between lawyer and client.  *In re Grand Jury Investigation*, 918 F.2d 374, 386 n.20 (3rd Cir. 1990) (holding that the presence of an agent does not abrogate privilege).  To avoid waiver, Authenticom must show that "statements made to one's attorney in the presence of a third party non-lawyer" were "necessary to the obtaining or giving of legal advice." *Motorola Sols., Inc. v. Hytera Commc'ns. Corp.*, 2018 WL 1804350, at *4 (N.D. Ill. Apr. 17, 2018).

---

[2] The Court incorporates by reference its discussion and analysis in its March 4, 2020 Order [ECF No. 903] and March 30, 2020 Order [ECF No. 937].

### 1. Communications with Lori Zimmer

Authenticom argues that Lori Zimmer is a consultant to Authenticom and the functional equivalent of an employee, and therefore, any communications shared with Ms. Zimmer did not waive the attorney-client privilege. The Court, however, is not persuaded by Authenticom's arguments as matter of law. In addition, the Court's review of the underlying documents reveals that some of the communications in those documents probably are not covered by the attorney-client privilege in any event. But even if they are, the privilege was waived by disclosure to Ms. Zimmer.

Authenticom contends that Ms. Zimmer is a management coach and consultant who was hired "to advise on organizational changes associated with Authenticom's then-substantial growth." Authenticom's Opposition [EFC No. 571], at 4. Authenticom asserts that her duties included providing leadership consulting and strategic planning to Authenticom's senior executives, and that such duties required her to participate in discussions regarding the company's legal issues. Authenticom's Opposition [EFC No. 571], at 4. Authenticom argues that Ms. Zimmer was the "functional equivalent" of an employee, and therefore, communication with her did not waive the attorney-client privilege.

The Seventh Circuit, however, has not yet adopted the "functional equivalent" test, and courts within the Circuit have "doubt[ed] its wisdom" and been "doubtful of whether the Seventh Circuit would endorse this test." *BSP Software, LLC v. Motio, Inc.*, 2013 WL 3456870, at *2 (N.D. Ill. July 9, 2013)*; see also LG Electronics. U.S.A.*, 661 F. Supp. 2d at 963 (collecting cases). One court in this District opined that adopting the functional equivalent test has "the potential to expand the privilege dramatically and thus would run contrary to the Seventh Circuit's frequent admonition that the scope of the privilege must be carefully circumscribed." *BSP Software, LLC*,

11

2013 WL 3456870, at *3 (citing *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000)). This Court also declines to adopt the functional equivalent test in this case and concludes that any privilege for communications shared with Ms. Zimmer has been waived.

Even if the Court were to apply the functional equivalent test, Authenticom falls short of establishing that Ms. Zimmer satisfies the functional equivalent test. Cases that have endorsed this test apply a multi-factor analysis: (1) "whether the consultant had primary responsibility for a key corporate job," (2) "whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation," and (3) "whether the consultant is likely to possess information possessed by no one else at the company." *LG Electronics U.S.A.*, 661 F.3d at 963. Authenticom's arguments that Ms. Zimmer's role and her coaching reach a level to satisfy these requirements are not persuasive.

The Court is not persuaded that Ms. Zimmer effectively held a key corporate position at Authenticom or that she possessed information that no one else at Authenticom possessed. Ms. Zimmer is a management consultant and coach. Authenticom argues that Ms. Zimmer needed to be included in attorney-client communications to be effective in providing her services to Authenticom executives. "[Ms. Zimmer's] duties included providing leadership consulting and strategic planning to Authenticom's senior executives—duties that required her to participate in discussions regarding the company's legal issues." *See* Declaration of Lori Wilkins (formerly Zimmer), [ECF No. 571-4], at 2. That is a stretch. But even if it was helpful for Ms. Zimmer to be privy to communications between Authenticom executives and the company's attorneys for her to provide her coaching services to those executives, that does not mean her presence was "necessary, or at least highly useful, for the effective consultation between the client and the lawyer." *Heriot v. Bryne*, 257 F.R.D. 645, 666-67 (N.D. Ill. 2009). There is no contention here

12

that Authenticom executives were having difficulty communicating with the company's lawyers and that Ms. Zimmer was there to better effectuate those communications. She was there for leadership consulting and strategic planning, pure and simple. She did not need to be privy to attorney-client communications to perform that function even if it may have been helpful or practical for her to hear or see those discussions.

Taking Authenticom's argument at face value, Ms. Zimmer was included in the communications so that she could more effectively provide her coaching services to Authenticom executives. That it was helpful for Ms. Zimmer in providing her coaching services to Authenticom executives to be privy to attorney-client communications does not mean that Ms. Zimmer's presence was necessary for the lawyers to provide legal services to their client, Authenticom. In Ms. Zimmer's own words, it would have been "impractical" for her not to be included in attorney-client communications about litigation that was important to the company in the context of her work providing management consulting and executive coaching services. *See* Declaration of Lori Wilkins (formerly Zimmer), [ECF No. 571-4], at 2. While it may not always be easy to preserve the attorney-client privilege, preserving the privilege is not a matter of whether it would be easier not to protect it against waiver.

The Court agrees with Defendants that Authenticom's argument turns the functional equivalent test on its head. To maintain the confidentiality of an attorney-client communication in the context of the functional equivalent test, communications with the consultant must be essential for the provision of legal advice, not the other way around. Here, Authenticom's argument is not that Ms. Zimmer was essential to the provision of legal advice but that it was helpful for Ms. Zimmer to hear the legal advice being given to her clients so she could more effectively provide her management consulting and coaching services. That argument does not

work. In addition, the Court's review of the underlying documents reveals that some of the communications in those documents probably are not covered by the attorney-client privilege in any event. But even if they are, the privilege was waived by disclosure to Ms. Zimmer. The Court does not need to review any additional documents to resolve this issue.

For all of these reasons, Defendants' Motion to Compel is granted as to Authenticom's communications with Lori Zimmer, and Authenticom is ordered to produce its communications with Ms. Zimmer.

### 2. Communications with Presidio Group and Gerchen Keller

For the reasons discussed immediately above and in the Court's recently issued Orders on related discovery matters involving communications with third parties (*see* [ECF Nos. 903, 937]), the Court is not convinced as a matter of law that the communications Authenticom shared with third parties, Presidio Group and Gerchen Keller, are protected attorney-client communications. As discussed above, for a communication to be privileged, it must be clear from the communication that the lawyer is seeking or needs input and/or advice from the third-party advisor/consultant in order to provide legal advice to the lawyer's client. A communication is not privileged if the lawyer (or the client) is asking the third-party advisor/consultant to offer its independent assistance, assessment, and opinion separate and apart from the legal advice being provided by counsel.

As a threshold matter, none of the documents submitted to the Court *in camera* contain communications between Authenticom and Presidio Group. The parties do not cite to Bates numbers for any such documents, and the Court could not find any based on its own review. If Authenticom is withholding any such documents from production, however, perhaps the discussion below will be instructive as to those documents as well.

There were two communications with Gerchen Keller, AUTH_MDL_PRIV_0163 (Tab 2 of Defendants' *in camera* Selections for the Common Interest Communications) and AUTH_MDL_PRIV_1103 (Tab 7 of Defendants' *in camera* Selections for the Communications with Ms. Zimmer), neither of which are confidential attorney-client communications. Gerchen Keller was a litigation finance firm with whom Authenticom was considering doing business. The communications at issue are between an outside Authenticom lawyer and an analyst at Gerchen Keller trying to understand certain issues in the litigation presumably as part of the firm's due diligence in preparation for potentially providing litigation funding. These are not communications in which the lawyer is providing legal advice to a client or in which the lawyer is consulting with a third party whose expertise is necessary for the lawyer to provide legal advice to his client. Rather, the lawyer is asking if the analyst needs any more information for the analyst to do his job, and the analyst is asking questions of the lawyer as part of the analyst's due diligence and analysis of the litigation. These are not communications protected by attorney-client privilege.[3]

For all of these reasons, Defendants' Motion to Compel is granted as to Authenticom's communication with Presidio Group and Gerchen Keller, and Authenticom is ordered to produce its communications with Presidio Group and Gerchen Keller.

### 3. Communications with Davis Polk

In its opposition to Defendants' Motion to Compel, Authenticom asserts that four of the communications that Defendants challenge were shared with third party Davis Polk, which is a law firm Authenticom was considering formally retaining. *See Authenticom's* Opposition [ECF

---

[3] It also is not clear these documents would be covered by the work product doctrine because they are not being prepared by or for the lawyer at his request in connection with or in anticipation of litigation.

No. 571], at 12. Courts clearly have recognized that the attorney-client privilege "extends to preliminary consultation by a prospective client with a view to retention of the lawyer, although actual employment does not result." *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1319 (7th Cir. 1978). Authenticom represents that it informed Defendants of its basis for asserting the attorney-client privilege over these challenged communications. Defendants, however, did not address Authenticom's position in their Motion to Compel.

It is not clear to the Court whether Defendants have dropped their challenge to these communications based on Authenticom's representations or if Defendants still are seeking their production over Authenticom's objections. In any event, the Court agrees with Authenticom that because Defendants did not address Authenticom's objections in their Motion, Defendants have forfeited their challenge to these communications. *See Labella Winnetka Inc., v. Gen. Cas. Ins. Co.*, 259 F.R.D. 143, 151 (N.D. Ill. 2009) (holding that an argument raised for the first time in a reply brief is waived and cannot be considered).

For these reasons, Defendants' Motion to Compel is denied as to Authenticom's communication with Davis Polk.

## C. Communications Authenticom Contends Are Covered By The Work-Product Doctrine

Authenticom contends not only that the attorney-client privilege and common interest doctrine protect some of the documents that Defendants CDK and Reynolds and Reynolds have challenged, but also that some of the challenged documents are protected by the work-product doctrine. Authenticom states that 37 or 38 (both numbers appear in the briefs) of the challenged documents are protected as attorney work product as well as subject to the attorney-client privilege in some instances. "The work-product doctrine protects (1) documents and tangible things otherwise discoverable (2) prepared by or for another party or by or for that other party's

16

representative (3) in anticipation of litigation or for trial." *Christman v. Brauvin Realty Advisors, Inc.,* 185 F.R.D. 251, 255 (N.D. Ill. 1999) (internal citations omitted). To be protected, work product must have been prepared for adversarial proceedings. *Binks Mfg. Co. v. National Presto Indus., Inc.,* 709 F.2d 1109, 1118-1119 (7th Cir. 1983). Work prepared in the regular course of business is not protected by the work-product doctrine. *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.,* 152 F.R.D. 132, 135 (N.D. Ill. 1993). Moreover, mere anticipation of litigation is not sufficient to invoke the doctrine. *Ferguson v. Lurie,* 139 F.R.D. 362, 367 (N.D. Ill. 1991). Finally, the burden of establishing the elements of the work-product doctrine is on the party claiming protection. *Bink*s *Mfg. Co.*, 709 F.2d at 1118.

Courts have analyzed the work-product privilege in two contexts—fact work product and opinion work product. Both are generally protected and can be discovered only in limited circumstances. *In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994); *McCook Metals L.L.C. v. Alcoa Inc*., 192 F.R.D. 242, 258-59 (N.D. Ill. 2000). In either case, the burden rests on the party asserting the work-product doctrine to establish the necessary elements. *Logan v. Commercial Union Insurance Co.,* 96 F.3d 971, 976 (7th Cir. 1996). In the fact work product context, the burden then would shift to the movant to demonstrate a substantial need for the information, and that it would be exceedingly difficult to obtain the information any other way. *McCook Metals L.L.C.*, 192 F.R.D. at 259.

Unfortunately, because of the way in which the dispute ultimately has been presented to the Court, the parties' and particularly Defendants' arguments are made very generally, and the Court does not appear to have (for its *in camera* review) all the documents Authenticom is withholding solely on the basis of the work-product doctrine. Authenticom did not submit for *in camera* review all the documents it says are protected by the work-product doctrine (nor did the

17

Court require it to do so), and it is not obvious to the Court in all instances which documents are in play for this purpose, particularly those documents that are not covered by the attorney-client privilege.

The Court is not persuaded by Defendants' general arguments that Authenticom has not established that the communications were made in anticipation of litigation or that the documents were not created for Authenticom. Those determinations should be made in the context of each document Authenticom contends is protected as attorney work product or at least like categories of documents and cannot be made in the context of a blanket ruling applicable to all challenged documents. The Court also notes that it is missing certain information necessary to make any final determination as to whether documents are work product (and if so, if they still should be produced) since Defendants CDK and Reynolds and Reynolds have failed to establish or even address whether they have a substantial need for the information at issue and whether it would be difficult for them to obtain the information any other way.

The Court also notes that Defendants contend that Authenticom has waived any work-product privilege that existed by sharing the communications with third parties. The Court, however, also cannot make that determination on a blanket basis and needs more information and context to make such a determination which Defendants have not provided in their written submissions. For example, courts have recognized that "disclosure to a third party does not automatically waive work-product protection." *Miller UK Ltd.*, 17 F. Supp. 3d at 736. In the context of work-product as opposed to attorney-client communications, waiver occurs when disclosure to a third party "substantially increases the opportunity for potential adversaries to obtain the information." *Id.* That is substantially different than the standard for waiver of the attorney-client privilege as discussed above, and in the Court's previous orders. In addition, it is

18

Defendants' burden to show that waiver occurred. *Id.* at 737. Again, some of the information the Court would need to rule on this question is not available to the Court based on how this dispute has been presented.

For all these reasons, the Court cannot issue any specific rulings on the documents Defendants CDK and Reynolds and Reynolds challenge based on Authenticom's claims of the work-product doctrine. Accordingly, Defendants' Motion [ECF Nos. 539, 541] is denied without prejudice in this respect.

The Court recognizes that Defendants' Motion to Compel has been pending for some time. If the parties still need the Court to resolve this dispute, it is possible that additional information has come to light during discovery that would bear on the issues. The Court expects the parties to meet and confer in good faith to address any disputes that still need to be resolved as to documents that otherwise are not protected by the attorney-client privilege but that Authenticom still maintains are covered by the work-product doctrine, and Defendants want Authenticom to produce. Perhaps some of the discussion in this Memorandum Opinion and Order may be helpful in that regard. After meeting and conferring, if disputes remain that still must be resolved, then counsel jointly should reach out to the Court's courtroom deputy and request a telephone conference to discuss how to proceed. Most likely, the Court would then order the parties to file additional submissions that identify the specific documents still in issue and receive *in camera* the documents in dispute.

### III. CONCLUSION

For all the reasons set forth in the Court's Memorandum Opinion and Order, Defendants'
Motion to Compel Plaintiff Authenticom to Produce Third-Party Communications or, In the
Alternative, Submit Such Communications for In Camera Review [EFC Nos. 539, 541] is granted
in part, denied in part, and denied without prejudice in part.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated: June 8, 2020