**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**DEFENDANTS CDK GLOBAL, LLC'S AND THE REYNOLDS AND REYNOLDS COMPANY'S RESPONSE TO PLAINTIFF AUTHENTICOM, INC.'S MOTION TO CLARIFY AND RECONSIDER JUNE 8, 2020 ORDER (DKT. 1011)**

Authenticom seeks clarification from the Court that would allow it to continue withholding 35 documents subject to an alleged work product privilege. Seventeen of these documents were previously submitted and reviewed by the Court *in camera,* before the Court ordered their production. Twenty-nine of these documents were the subject of Authenticom's wide-ranging assertion of a "common interest" privilege, which the Court has now rejected. Nevertheless, Authenticom maintains that each one of these documents could still plausibly be considered Authenticom's attorney work product, and has refused to reevaluate its work product claims as to any of them.

Defendants do not oppose clarification from the Court but request (1) that these issues be resolved as expeditiously as possible, given the likelihood that these documents may be relevant to Defendants' upcoming summary judgment response and reply deadlines; and (2) that the Court compel the immediate production of any documents subject to the Court's Order for which Authenticom does not have a pending work product privilege claim.

1

I.      **INTRODUCTION & BACKGROUND**

In its June 8, 2020 Order, the Court resolved large portions of a long-running dispute between Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds"), on the one hand, and Plaintiff Authenticom, Inc., on the other, regarding the breadth and scope of Authenticom's claims of various privileges in this litigation with a host of differently situated third-parties, including its former management coach, competitors, customers, marketing companies, and investment firms.  Defendants have been seeking these documents for over a year—they filed their motion to compel back in March 2019—which include communications between Authenticom and a number of entities that have since become third-party witnesses in this multidistrict litigation.

As part of that Order, the Court overruled Authenticom's assertion of any "common interest" privilege with these other industry participants and also overruled Authenticom's assertion of any attorney-client privilege attaching to any of the documents challenged save for four emails exclusively between Authenticom and attorneys at Davis Polk. Order at 16.  For example, with respect to the asserted "common interest" communications, the Court found that there was "no evidence" of "any joint legal planning" and no evidence of any "common goal other than maybe a general consensus to approach the Federal Trade Commission…" Order at 4-5.  And as to the asserted attorney-client communications, the Court found that "a review of the documents at issue, frankly, confirms the communications are not privileged."  Order at 9.  Finally, with respect to documents exchanged with a litigation finance firm, Gerchen Keller, the Court found that those communications were not "communications in which the lawyer is providing legal advice to a client or in which the lawyer is consulting with a third party whose expertise is necessary for the lawyer to provide legal advice to his client." Order at 15.  In a footnote, the

Court also expressed substantial doubt that these documents could "be covered by the work product doctrine because they are not being prepared by or for the lawyer at his request in connection with or in anticipation of litigation." Order at 15 n.3.

The Court reached its conclusions after an *in camera* review of examples of each of the types of challenged communications submitted by the parties. In particular, Defendants and Authenticom each selected twenty-documents—such that 40 of the just under 100 challenged documents were submitted to the Court for review. After this review, the Court instructed Authenticom to produce the challenged communications at issue. *E.g.,* Order at 8 ("Authenticom must produce [the Common Interest] documents to Defendants. The Court declines to engage in any further review of any additional documents at this time, Authenticom is ordered to produce the communications at issue."); Order at 9 ("Defendants' Motion to Compel is granted as to Authenticom's communications with BMO Harris, Gilbert Hale, and Motormindz, and Authenticom is ordered to produce the communications at issue.").

At the end of the Order, however, the Court acknowledged that Authenticom also asserted a work product privilege as to 38 of these documents.[1] Order at 16. In large part, these allegedly work product protected documents are the same documents the Court has already reviewed. For example, Authenticom claims that all but one of the "common interest" group communications submitted for the Court's review also constitute Authenticom's work product. Below is a listing of the seventeen documents (of a total of 35 work product claims) that were previously submitted to the Court *in camera*, which the Court found were not privileged.

---

[1] Defendants do not dispute that three of these emails, directly with attorneys at Davis Polk, are no longer in dispute as a result of the Court's Order. The enclosed chart excludes these communications with Davis Polk, which were also reviewed by the Court *in camera*.

| **Claimed Work Product Documents Already Submitted to the Court *in Camera*, by Category** ||
|---|---|
| **Common Interest Group Communications** | **Communications with Lori Zimmer** |
| 1. AUTH_MDL_PRIV_0032 | 15. AUTH_00469820 |
| 2. AUTH_MDL_PRIV_0125 | **Communications with Gerchen Keller** |
| 3. AUTH_MDL_PRIV_0163 | 16. AUTH_MDL_PRIV_1103 |
| 4. AUTH_MDL_PRIV_0203 | **Communications with BMO Harris** |
| 5. AUTH_MDL_PRIV_0274 | 17. AUTH_MDL_PRIV_0296 |
| 6. AUTH_MDL_PRIV_0539 | |
| 7. AUTH_MDL_PRIV_1006 | |
| 8. AUTH_MDL_PRIV_1090 | |
| 9. AUTH_MDL_PRIV_1195 | |
| 10. AUTH_MDL_PRIV_1409 | |
| 11. AUTH_MDL_PRIV_1538 | |
| 12. AUTH_MDL_PRIV_1852 | |
| 13. AUTH_MDL_PRIV_1958 | |
| 14. SIS_DMS_0018107 | |

Overall, all 35 of the documents that Authenticom continues to claim as attorney "work product" are communications with the third parties identified in the chart above: 28 communications between Authenticom and the alleged "Common Interest Group" (including the 14 documents listed above) and other industry participants; 5 communications with Lori Zimmer (including AUTH_00469820, previously reviewed *in camera*); one communication with BMO Harris (AUTH_MDL_PRIV_0296, previously reviewed *in camera*); and one communication involving Gerchen Keller (AUTH_MDL_PRIV_1103, previously reviewed *in camera*).

4

Defendants submit that it may not have been made clear to the Court that *all* of the challenged documents that Authenticom claimed as work product fall into these categories.

The Court indicated that it could not yet issue specific rulings on Authenticom's work product assertions for a variety of reasons, including that it was "not obvious to the Court in all instances which documents are in play for [the work product] purpose" in light of the Court's other rulings, because it did not have all of the work product documents submitted *in camera*, and because it did not have sufficient information. Order at 17-18. Because of this, the Court asked the Parties to "meet and confer in good faith to address any disputes that still need to be resolved as to documents that otherwise are not protected by the attorney-client privilege but that Authenticom still maintains are covered by the work-product doctrine." Order at 19. The Court indicated that it believed that "some of the discussion in this Memorandum Opinion and Order may be helpful" in such discussions. Finally, the Court instructed the Parties that if disputes still remained they should "reach out to the Court's courtroom deputy and request a telephone conference to discuss how to proceed." Order at 19.

Pursuant to the Court's instruction, following the Order, Defendants reached out to request a meet and confer regarding Authenticom's remaining work product privilege claims and the parties held a telephone conference on Friday, June 12. Dkt. 1022 at Ex. A, p. 5. At that conference, Authenticom stated that it did not believe that any of the Court's rulings regarding the other privileges asserted—or statements regarding the contents of the documents challenged—had any implication at all for its assertions of work product as to, largely, those same documents. Rather, Authenticom told Defendants that it intended to maintain its claims of a work product privilege over each of the 35 remaining challenged documents—including the 28 challenged "common interest group" documents, 14 of which the Court had already reviewed *in camera*. *Id.*

5

at Ex. A, p. 4 ("To be clear, we understand from our meet-and-confer discussion that Authenticom intends to stand on all or substantially all of its disputed work product claims despite the Court's ruling."). It is worth noting that Authenticom claims "work product" over all but two of its "common interest" communications, meaning that without a ruling on the work product privilege, virtually none of those documents will be produced.

On the call and in subsequent emails, Defendants stated that the Court's discussion of the documents made it, at best, unlikely that any, much less *all* of these withheld communications could nevertheless constitute Authenticom's attorney work product. Dkt. 1022 at Ex. A, p. 2-6. Nonetheless, Defendants proposed that, as the Order directed, this issue be raised with the Court in the suggested teleconference. *Id.* at p. 3. Authenticom responded that it intended to seek clarification first from the Court regarding the scope of its work product privilege rulings via motion practice. *Id.* at p 5. Defendants again suggested that this appeared to be exactly the type of issue that could be raised with the Court at a teleconference and, in an effort to avoid the expense of filings on the issue, told Authenticom it need not produce any documents subject to an asserted work product claim before the parties all had the opportunity to discuss the issues with the Court. *Id.* at p. 4 (stating that this confusion was "all the more reason we should jointly request a telephone conference with Judge Gilbert as soon as possible, contrary to the position that you expressed on our call…"). Despite this, Authenticom filed the instant Motion.

As of today's date, Authenticom has yet to produce a single document that was the subject of the Court's Order, regardless of whether Authenticom had asserted a work product privilege as to that document or not. Indeed, the filing of the Motion for Clarification appears to be an attempt to delay this process even further. Motion at 2 (claiming that Motion tolls the deadline to appeal).

## II.   ARGUMENT & AUTHORITIES

### A.   Defendants Do Not Oppose Clarification from the Court On the Scope of Its Rulings as to the Documents Subject to Authenticom's Work Product Claims.

Defendants do not oppose clarification from the Court regarding the extent to which its June 8, 2020 privilege rulings apply to the 35 documents that Authenticom continues to withhold as attorney work product, including the 17 documents identified above that were reviewed by the Court *in camera*. However, Defendants did not believe it was necessary to burden the Court with motion practice about the issue when the teleconference already suggested by the Court seemed like a perfectly appropriate opportunity to seek any clarification needed from the Court about its ruling. In fact, Defendants offered to defer any production of documents that Authenticom continued to claim were attorney work product until the teleconference occurred. Dkt. 1022 at Ex. A, p. 2 ("[W]e are fine with Authenticom withholding the production of documents over which it has claimed a work product privilege until we can be heard on the requested telephone conference with Judge Gilbert and get his views on the matter."). Defendants thought a telephone conference would be particularly useful given that many of the disputed "work product" documents have already been reviewed *in camera*. Authenticom nevertheless filed this Motion. Defendants look forward to discussing the scope of the Court's rulings and the applicability of Authenticom's remaining work product claims during the upcoming teleconference.

### B.   Authenticom's Maintenance of its Broad Work Product Claims Is Untenable.

Defendants submit that Authenticom's blanket work product assertions are unsupportable in light of the Court's Order. In the Motion to Compel, Defendants focused much of their briefing on the other privileges that Authenticom asserted—common interest and attorney-client—because it was difficult to see how documents that did not fall into either of those privileges could nonetheless fall within the framework of attorney work product. Many of the communications at

7

issue are between non-lawyers and are dated *years* before Authenticom actually brought litigation. And because none of the recipients actually joined in Authenticom's litigation efforts—to the contrary, several expressly disclaimed any interest in doing so (*e.g.*, eLead) or were even themselves threatened with claims, making them *adversaries* in the litigation (*e.g.*, SIS)—it is difficult to understand how the group could have participated in creating Authenticom's confidential attorney work product.

Now, having received the Court's Order describing the documents based on its own independent *in camera* review, Defendants' assessments appear even more on point. As Defendants have explained to Authenticom, Defendants cannot understand how Authenticom could, in good faith, maintain the position that all of the remaining 35 documents it claims are attorney work product—including all but two of the purported "common interest" documents—remain so in light of the Court's findings. *E.g.,* Dkt. 1022 at Ex. 1, p. 2. As the Court correctly noted in its Order, for a document to be considered Authenticom's protected work product, it must have been prepared by or for Authenticom's attorney, at Authenticom's attorney's request, in connection with or in anticipation of this litigation. Order at 15 n.3. *See also Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 237 (N.D. Ill. 2000) (stating that to establish work product privilege, " "the primary motivating purpose behind the creation of a document . . . must be to aid in possible future litigation."); *LG Elecs., Inc. v. Motorola, Inc.*, 10 CV 3179, 2010 WL 4513722, at *3 (N.D. Ill. Nov. 2, 2010) (explaining that work product must have been prepared for the party claiming the privilege—i.e. Authenticom, not any other purported common interest member).

But as the Court pointed out, having reviewed 17 of the remaining 35 "work product" documents: (1) most of the common interest documents were sent "years before the actual litigation was filed" (Order at 7); (2) the documents did not evidence any "joint legal planning"

8

(Order at 4); and (3) there was no evidence of a legal goal "other than maybe a general consensus to approach the [FTC]."[2] Order at 4-5.

Defendants did not, and still do not, understand how Authenticom's work product claims as to all of these documents can still be tenable in light of the Court's rulings, even if the Court has not expressly ruled on each of them on a document-by-document basis. This is particularly true as to the communications with Gerchen Keller, for which the Court specifically noted that "It also is not clear these documents would be covered by the work product doctrine because they are not being prepared by or for the lawyer at his request in connection with or in anticipation of litigation." Order at 15 n.3. If the document was not prepared by or for an attorney at his request in connection with or in anticipation of litigation, then it is not possibly work product.

Similarly, even if the "common interest" communications *were* Authenticom's attorney work product to begin with, which appears extremely doubtful, the record is clear that Authenticom's actions did in fact "substantially increase[] the opportunity for potential adversaries to obtain the information." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736 (N.D. Ill. 2014) (quoting *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1025 (7th Cir. 2012)). The "common interest" members did not share any common legal interests, in some cases were competitors of Authenticom, and never entered into any confidentiality agreements. Order at 7-8. The record is also clear that Authenticom *did* increase the opportunity for disclosure. For example, purported "common interest" group member SIS was a threatened Defendant in one of the MDL actions (Order at 5), and in response to a non-party subpoena SIS produced many documents in this

---

[2] As pointed out in Defendants' initial Reply, documents created to lobby a governmental agency are not considered protectable attorney work product. *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010) ("In distinguishing between proceedings which qualify as litigation and those that do not, the adversarial nature of the proceeding is characteristic of litigation."); *McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 260 (N.D. Ill. 2000) (similar); *see also* Dkt. 585 at 20.

9

litigation that Authenticom now claims were subject to its "work product" privilege. *E.g.,* SIS_DMS_0018107 (submitted to the Court *in camera*). SIS produced these documents because SIS never understood that its communications with Authenticom were attorney work product or otherwise subject to any type of privilege.[3]

In any event, even if the Court's Order did not explicitly overrule Authenticom's work product claims—despite ordering production of many of the challenged documents—Defendants interpreted it as suggesting that Authenticom should reevaluate the documents in light of the Court's statements, and presumably withdraw their assertions to at least some portion of the withheld documents. Dkt. 1022 at Ex. A, p. 2. ("We viewed that instruction as advising Authenticom to reevaluate its remaining work product privilege claims—and presumably—to withdraw at least some of them so as to narrow the issues in dispute."). Defendants assumed that such a reevaluation would be essential for any meaningful meet and confer. Authenticom obviously disagreed, and appears bent on continuing its eighteen-month long fight to prevent any of these documents from being produced to Defendants.

      C.    <u>Defendants Request an Expedited Resolution of Authenticom's Remaining Work Product Claims Given Impending Summary Judgment Deadlines.</u>

Defendants tried to avoid briefing on this issue in favor of a quick telephone conference because they would like the issues to be decided as quickly and efficiently as is practicable. Defendants have been waiting quite some time for these documents, having filed their motion to compel in March 2019, over a year ago. Defendants first *raised* the issue of what they perceived as Authenticom's overreaching privilege claims even further back, in November 2018. Dkt. 541 at 9, Ex. 5. Authenticom on the other hand has been resisting efforts to tee up these remaining

---

[3] This is not the extent of Defendants' arguments as to waiver by third-party disclosure.

10

issues for resolution. Dkt. 1022, Ex. A p. 2-6 (detailing the back-and-forth haggling over if and when the parties could approach the Court for a telephone conference).

There is now some urgency to resolve Authenticom's remaining privilege claims because these documents may be particularly relevant to Defendants' upcoming summary judgment response and reply deadlines, which are July 28 and August 28, 2020, respectively. In its affirmative summary judgment motions on Defendants' counterclaims, Authenticom relied on testimony from a number of the individuals participating in the alleged "common interest" group. *See* Dkt. 977 at ¶¶ 15, 71 (citing testimony from Dominion and SIS, among others). Defendants expect that Authenticom will do the same in response to Defendants' own motions for summary judgment. The documents may shed light on the veracity of these claims.

Even worse, Authenticom has taken positions at the summary judgment stage that appear to be contradicted by some of the documents it has withheld on incorrect assertions of privilege. For instance, at summary judgment, Authenticom has taken the position that its executives were entirely unaware that Reynold's contracts with automotive dealers did not allow Authenticom to access the Reynolds DMSs. Dkt. 977, ¶ 28. This claim is disputed by various evidence in the record but also appears to be directly contradicted by one of the challenged communications that the Court ordered Authenticom to produce—but which Authenticom has still not produced as of this filing—between Authenticom and the Presidio Group. *See* at Dkt. 547 at Attachment A, PRIV_0409 ("Confidential communication reflecting request for legal advice of Glade, Meri regarding compliance with Reynolds contract.").

Defendants recognize that the Court has indicated that further briefing, including possibly additional *in camera* review of Authenticom's alleged work product documents, may be needed to resolve these issues. Order at 19. If that remains the Court's preference, Defendants make two

11

requests: (1) that any additional briefing be done so on an expedited schedule so that Defendants may obtain any rulings—and importantly any responsive, non-privileged documents sufficiently in advance of their upcoming summary judgment deadlines; and (2) that the Court order the immediate production of any documents not subject to a pending work product privilege claim.

Dated: June 23, 2020

Respectfully submitted,

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross M. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 650-8805
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
Jed Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com
jglickstein@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

## CERTIFICATE OF SERVICE

I, Ross MacDonald, an attorney, hereby certify that on June 23, 2020, I caused a true and correct copy of the foregoing **DEFENDANTS CDK GLOBAL, LLC'S AND THE REYNOLDS AND REYNOLDS COMPANY'S RESPONSE TO PLAINTIFF AUTHENTICOM, INC.'S MOTION TO CLARIFY AND RECONSIDER JUNE 8, 2020 ORDER (DKT. 1011)** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties at the following email address: SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com.

/s/ Ross M. MacDonald

Ross M. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5231
rmacdonald@gibbsbruns.com

13