**PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.); *Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, No. 1:18-cv-2521 (N.D. Ill.); *MVSC v. CDK Global, LLC*, No. 1:18-cv-865 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**REPLY IN SUPPORT OF**
**DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS**
**AND PROFFERED TESTIMONY OF DR. MARK ISRAEL**

## TABLE OF CONTENTS

Page

I. Dr. Israel's Conspiracy Opinions Are Inadmissible Under Rule 702 And *Daubert*. ................1

A. Dr. Israel's Vague "Openness" Opinions Are Inadmissible. ..............................................1

B. Dr. Israel's "Conspiracy" Opinions Are Not Based On Reliable Economic Analysis. .......2

C. Dr. Israel Fails To Consider Obvious Alternative Explanations. .......................................4

II. Dr. Israel's RCI "Pricing" Analysis And Damages Regression Cannot Help The Jury Because They Do Not Model Actual RCI Prices Or Pricing Conduct. .....................................6

III. Dr. Israel's Damages Opinions Do Not Account For Lawful Conduct In The But-For World. ..........................................................................................................................8

IV. Dr. Israel Fails To Reliably Define His "Data Integration Services" Markets. ..........................9

V. Dr. Israel's MVSC Liability Opinions Are Inadmissible (Reynolds Only).............................10

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Authenticom, Inc. v. CDK Global, LLC*,
874 F.3d 1019 (7th Cir. 2017) ....................4, 5

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1988) ....................8, 9

*In re Brand Name Prescription Drugs Antitrust Litig.*,
186 F.3d 781 (7th Cir. 1999) ....................9

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962)....................10

*Chapman v. Maytag Corp.*,
297 F.3d 682 (7th Cir. 2002) ....................6

*Clark v. Takata Corp.*,
192 F.3d 750 (7th Cir. 1999) ....................3

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
363 F.3d 761 (8th Cir. 2004) ....................5

*Lewis v. CITGO Petroleum Corp.*,
561 F.3d 698 (7th Cir. 2009) ....................5

*Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*,
387 F. Supp. 2d 794 (N.D. Ill. 2005)....................6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................6

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
292 F. Supp. 3d 14 (D.D.C. 2017)....................4

*Rosenfeld v. Oceania Cruises, Inc.*,
654 F.3d 1190 (11th Cir. 2011) ....................2

*Schreiber Foods, Inc. v. Borden Inc.*,
2005 WL 8165758 (E.D. Wis. July 1, 2005), Opp. 8 ....................2

*Schulz v. Akzo Nobel Paints, LLC*,
721 F.3d 426 (7th Cir. 2013) ....................6

*In re Text Messaging Antitrust Litig.*,
782 F.3d 867 (7th Cir. 2015) ....................................................................................6

*Verizon Commcs. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)....................................................................................................9

*Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l, Inc.*,
328 F. Supp. 3d 824 (N.D. Ill. 2018) .........................................................................4

*Williamson Oil Co. v. Philip Morris USA*,
346 F.3d 1287 (11th Cir. 2003) ..................................................................................9

**Other Authorities**

David H. Kaye & David A. Freeman, *Reference Manual on Scientific Evidence*
261 (3d ed. 2011) .......................................................................................................7

## TABLE OF ABBREVIATIONS AND CITED MATERIAL

| Abbr. | Reference | Docket Number |
|---|---|---|
| Bresnahan Rpt. | Expert Report of Professor Timothy F. Bresnahan, Nov. 15, 2019 | Dkt. 889-17 (Ex. 17 to Decl. of Daniel T. Fenske, filed Feb. 28, 2020) |
| Ex. | Exhibit __ to the Declaration of Daniel T. Fenske, July 8, 2020 | Exhibit __ to Decl. of Daniel T. Fenske, filed concurrently |
| Mot. | Memorandum of Law in Support of Defendants' Motion to Exclude Certain Opinions and Proferred Testimony of Dr. Mark Israel, Feb. 28, 2020 | Dkt. 878 |
| Opp. | Opposition of Plaintiffs Authenticom, Inc. and the Putative Vendor Class to Defendants' Motion to Exclude Certain Opinions of Dr. Mark Israel, May 29, 2020 | Dkt. 1002 |
| Reply | Reply Expert Report of Mark. A Israel, Ph.D., Dec. 19, 2019 | Dkt. 889-2 (Ex. 2 to Decl. of Daniel T. Fenske, filed Feb. 28, 2020) |
| Rpt. | Expert Report of Mark A. Israel, Ph.D., Aug. 26, 2019 | Dkt. 889-1 (Ex. 1 to Decl. of Daniel T. Fenske, filed Feb. 28, 2020) |
| Tr. | Deposition Transcript of Mark A. Israel, Ph.D., Jan. 16-17, 2020 | Dkt. 889-3 (Ex. 3 to Decl. of Daniel T. Fenske, filed Feb. 28, 2020) |
| Whinston Rpt. | Expert Report of Michael D. Whinston, Ph.D., Nov. 15, 2019 | Dkt. 889-22 (Ex. 22 to Decl. of Daniel T. Fenske, filed Feb. 28, 2020) |
| Whinston Tr. | Deposition Transcript of Michael D. Whinston, Jan. 10, 2020 (excerpts) | Ex. 103 to Decl. of Daniel T. Fenske, filed concurrently |
| Williams *Daubert* Reply | Reply in Support of Defendant CDK Global, LLC's Motion to Exclude Expert Testimony of Dr. Michael A. Williams | Filed concurrently |

Plaintiffs defend Dr. Israel's opinions only by ignoring central elements of his analyses. But even a passing look at his actual opinions reveals they do not survive *Daubert* scrutiny. His methodology relies chiefly on circular logic, vague and untestable assumptions, and a willful refusal to consider obvious alternative causes for the outcomes he observes. Plaintiffs cannot hide these patent methodological errors behind a slanted factual recitation and misguided insistence that this is merely a dispute among qualified experts that only the jury may resolve.

## I. Dr. Israel's Conspiracy Opinions Are Inadmissible Under Rule 702 And *Daubert*.

### A. Dr. Israel's Vague "Openness" Opinions Are Inadmissible.

As Defendants showed, Dr. Israel's opinion that Defendants conspired over DMS "openness" is inadmissibly vague. Mot. 2-7. [REDACTED] But Dr. Israel never applied this definition. Nor could he, and still purport to find evidence of a conspiracy, for [REDACTED]. Mot. 5-6. Likewise, [REDACTED]

Nor do Plaintiffs meaningfully defend Dr. Israel's effort to immunize his opinion from independent testing or verification. Mot. 5-6. [REDACTED] r

[REDACTED] Plaintiffs' only response is a footnote asserting that Reynolds connections increased at a lower rate than previously, and CDK connections increased until the middle of 2016 because CDK had yet to impose "technological barriers" impeding Authenticom's DMS access. Opp. 6 n.2. But that is the point. To infer a conspiracy over DMS "openness" as a way to hinder integrators like Authenticom, Dr. Israel must explain—using some economic analysis—why CDK did not impose "technological barriers" for almost three years after the alleged conspiracy started. This is not an issue for cross-examination. Opp. 7-8. Dr. Israel's opinions are so malleable that cross-examination would be futile.[1] Plaintiffs also insist that Dr. Israel's opinion cannot be vague because Defendants' experts responded to them. Opp. 5-6. But these experts found Dr. Israel's opinion *to be vague*. Bresnahan Rpt. ¶ 229; Whinston Rpt. ¶ 138.

Finally, Plaintiffs contend that Dr. Israel did not need to describe the "precise terms of [Defendants'] unwritten agreement" because even a "wink and a nod" would suffice. Opp. 6-7.But the issue is the *content*, not the *form*, of the alleged agreement. [REDACTED] Mot. 5; Opp. 16. Such malleable and unverifiable testimony is inadmissible.

**B. Dr. Israel's "Conspiracy" Opinions Are Not Based On Reliable Economic Analysis.**

As Defendants showed, Dr. Israel's opinion that conspiracy rather than unilateral conduct

[1] Plaintiffs' principal case on this point, *Schreiber Foods, Inc. v. Borden Inc*., 2005 WL 8165758 (E.D. Wis. July 1, 2005), Opp. 8, is irrelevant for this reason. There, it was the expert's *methodology*, not his *opinion*, that was imprecise. *Id.* at *3-4. And the Court only allowed the opinion after concluding that the methodology "can be verified, or perhaps discredited," because "the steps of [the] test itself are clear." *Id.* at *8. In contrast, Dr. Israel's opinions are inscrutable. In Plaintiffs' other case, *Rosenfeld v. Oceania Cruises, Inc*., 654 F.3d 1190 (11th Cir. 2011), the court reversed an order excluding the expert because he used a "reliable testing methodology," and the court never identifies what the defendant found "imprecise and unspecific." *Id*. at 1194.

better explains Defendants' conduct is based entirely on circular reasoning and logical fallacies. Mot. 7-9. Plaintiffs' initial response—after erroneously insisting that they need not address unilateral motives at all in light of supposed "direct evidence" of conspiracy, Opp. 8-9[2]—is to ignore Dr. Israel's damning deposition admissions and deploy still more circular reasoning.[3] Specifically, Plaintiffs argue that "CDK's decision not to compete on openness, even *before* it had begun to block independent DIS providers on its own DMS, would have made no sense in the absence of agreement with Reynolds." Opp. 9. But whether CDK ever decided "not to compete on openness" in September 2013 is *one of the questions Dr. Israel purported to use his economic expertise to answer*. Similarly, [redacted] Such circular reasoning is not reliable expert testimony. *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) (expert inadmissible "if he starts his analysis based upon [an] assumption" that is "the very question that he was called upon to resolve").

Nor is there anything to Plaintiffs' "additional economic evidence" of Defendants' supposed incentive to conspire. Opp. 10. This evidence purports to show that [redacted]

---

[2] Defendants incorporate their response to this same point made by the Dealer plaintiffs. *See* Williams *Daubert* Reply 6 n.4

[3] [redacted].



[redacted] But even assuming all of those things are true, none points to *conspiracy* without an economic analysis of the relative benefits of unilateral versus conspiratorial conduct, an analysis that Dr. Israel declined to perform.[4] [redacted][5]

Plaintiffs' remaining argument, that Defendants' experts admitted that Defendants acted "consistent with agreement rather than unilateral behavior," is baffling. Opp. 10. Both experts opined that Defendants had no reason to conspire to secure their DMSs. Whinston Rpt. §§ IV, V; Bresnahan Rpt. § VI. And even if Reynolds "backed off" blocking (Opp. 10-11)—it did not—it only did so to negotiate contracts that did *not* require either Defendant to block third parties from accessing their DMS. *See Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2017); Whinston Tr. 214-15.[6]

### C. Dr. Israel Fails To Consider Obvious Alternative Explanations.

**1. *DMS Switching.*** [redacted].

---

[4] Dr. Israel analogizes to inferring a price-fixing conspiracy based on competitors' private pricing discussions followed by simultaneous price increases. Opp. 10. But to make the analogy fit this case, one of the competitors would retain its original prices for years after the pricing discussions, and that would *undercut* any inference that the competitors entered into a price-fixing conspiracy. *See Wash. Cnty. Health Care Auth., Inc. v. Baxter Int'l, Inc.*, 328 F. Supp. 3d 824, 836 (N.D. Ill. 2018).

[5] D[redacted] *See* Dkt. 966 at 26-31. Dr. Israel did not need "a formal model quantifying 'the relative gains from unilateral versus conspiratorial conduct.'" Opp. 11 (quoting Mot. 8). But his failure to compare anticipated unilateral and conspiratorial gains shows that he assumed a conspiracy rather than using reliable economic methods to find one.

[6] While Plaintiffs concede an "expert that simply reads documents and asserts conclusions risks usurping the role of the jury," Opp. 14, that is precisely what Dr. Israel did. *See* Mot. 9-10; Reply ¶ 107; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 52 (D.D.C. 2017) ("To the extent that [the expert] concludes that there was in fact collusion" based on reading the record, "it is not" admissible).

Mot. 11-13. Plaintiffs respond that this issue involves a mere "dispute[] over evaluation of market data," which when based on an "accepted methodology," "is never a basis for exclusion." Opp 15. But again, Dr. Israel never applied an "accepted methodology" when analyzing switching data; he simply assumed it supported his hypothesis without considering any alternative explanations.

Plaintiffs offer no meaningful response to Defendants' argument that [REDACTED] They cite nothing from Dr. Israel on this issue. Opp. 15. Instead, they imply that it is Defendants' burden to offer an analysis of other-DMS competition. *Id*. But it is Plaintiffs' burden to show that Dr. Israel applied an accepted methodology. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). And his failure to account for that obvious alternative explanation is fatal to his analysis. *See Craftsmen Limousine, Inc. v. Ford Motor Co*., 363 F.3d 761, 777 (8th Cir. 2004) (excluding liability expert who "assumed that Craftsmen's alleged lost growth . . . was caused by defendants' alleged conspiracy" but "did not determine whether other factors, including the emergence of two direct competitors, may have affected Craftsmen's growth rate"); Mot. 11.

**2. *Non-Collusive Reasons to Negotiate 2015 Agreements.*** Plaintiffs cannot dispute that, as the Seventh Circuit recognized, the 2015 Agreements do not require either Defendant to block third-party access to their DMS. *See Authenticom*, 874 F.3d at 1023. Defendants have, further, shown that Dr. Israel ignored obvious non-collusive reasons for Defendants to negotiate the 2015 Agreements. Mot. 14-15. [REDACTED]" Opp. 16. But that ignores the relevant question, which is whether Defendants had unilateral, non-collusive reasons to negotiate the 2015 Agreements *regardless* of their impact on hostile integrators. Indeed, Plaintiffs do not (and cannot) dispute that the 2015 Agreements offered a

number of procompetitive benefits unrelated to DMS access policies, including an orderly DMI wind-down and the prospect of reciprocal app certification. Mot. 14-15.[7]

Unable to claim that Dr. Israel properly considered these unrelated benefits, Plaintiffs insist that such considerations are immaterial because, even if "Reynolds had non-collusive reasons to negotiate with CDK . . . doing so *also* served the objectives Defendants pursued through collusion." Opp. 17. But a finder of fact may not infer a conspiracy from actions equally consistent with a party's "non-collusive" interests. *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 879 (7th Cir. 2015) (granting summary judgment where evidence was "consistent with an inference of collusion," because it was "equally consistent with independent parallel behavior"). Dr. Israel's opinions thus hinge on inferences that the law prohibits. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 806 (N.D. Ill. 2005) ("Expert opinions that are contrary to law are inadmissible.").

## II. Dr. Israel's RCI "Pricing" Analysis And Damages Regression Cannot Help The Jury Because They Do Not Model Actual RCI Prices Or Pricing Conduct.

As Defendants showed, [REDACTED] Plaintiffs claim in response that Reynolds's expert failed to show that these "composition effects" were "material." Opp. 18-19. This is false. *See* Bresnahan Rpt. ¶¶ 263-65, 270-71. Moreover, it is Plaintiffs' burden to show that Dr. Israel's method is reliable, regardless of what *Defendants*' experts did. *Daubert* polices "principles and methodology," *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002), not "ultimate correctness," *Schulz v. Akzo Nobel*

[7] Plaintiffs' reliance (at 5, 17) on Dr. Israel's "side payments" theory fails for the same reason—Dr. Israel never considered whether CDK and Reynolds would have had an incentive to give and receive those "payments" absent the conspiracy. Since those payments are part-and-parcel of the 2015 Agreements, Defendants had substantial non-collusive reasons to make and receive them for the reasons discussed. *See also* Dkt. 966 at 29-31.

*Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013).

[redacted]

[redacted]



Dr. Israel's correlation analysis is incapable of assessing that issue, and thus cannot save his flawed reliance on ARPU rather than actual prices.

## III. Dr. Israel's Damages Opinions Do Not Account For Lawful Conduct In The But-For World.

Dr. Israel calculated over in vendor class damages, mostly from integration "overcharges," using a model that does not separate harm arising from allegedly unlawful conduct from harm based on lawful price increases. Mot. 19-22; Dkt. 969 (CDK *AutoLoop* SJ Br.) at 5-12.

Rpt. ¶¶ 208-211. Dr. Israel thus ignored his own opinion that Defendants could increase prices more than the benchmark firms could.[8] *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593-94 (7th Cir. 1988) in which the expert used as a "yardstick" clinics that, , did not share the defendant's pricing power, condemned the same error.[9]

Plaintiffs are also wrong to suggest that—because Defendants supposedly had market power *before* the "conspiracy" started—their pre-conspiracy prices already reflected the full extent

[8] To be clear, Reynolds lacks market power as a matter of law, and Dr. Israel is wrong to suggest otherwise. Dkt. 966 at 65-66.

[9] T . Dkt. 969 at 4.

of their unilateral market power. Opp. 20-21. If Defendants' pre-conspiracy prices reflected all of their unilateral power, and they did not exercise more unilateral power during the damages period, then the damages on the unilateral claims would be zero. [REDACTED] Mot. 9 (citing Tr. 273-275). In short, Dr. Israel opines that in the but-for world, Defendants had sufficient unilateral ability to raise prices, but he failed to account for any such ability in his model. Mot. 21-22; *see Marshfield Clinic*, 152 F.3d at 594; *In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 786 (7th Cir. 1999).

Plaintiffs next argue that, in opining that unilateral and conspiracy damages are identical, Dr. Israel just observed "that Defendants' dramatic price increases reflected harm to competition even if a court were to conclude that the conduct he, as an economist, views as collusive does not amount to a Section 1 agreement." Opp. 22. But that shows the flaw in the model: Dr. Israel conflates unlawful collusion with unilateral pricing behavior. Dr. Israel "defined 'collusion' to include conscious parallelism," "did not differentiate between legal and illegal pricing behavior, and instead simply grouped both of these phenomena under the umbrella of illegal, collusive" conduct, meaning his testimony cannot "aid[] a finder of fact to determine whether Defendants' behavior was or was not legal," or to assess the impact on vendors. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (affirming exclusion). Dr. Israel's conflation of collusive and unilateral action is especially inappropriate because Defendants had the right and ability to secure their DMS unilaterally *and lawfully*. *See* Dkt. 969 at 7-10; Dkt 504 at 27-28; *Verizon Commcs. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 410 (2004).

**IV. Dr. Israel Fails To Reliably Define His "Data Integration Services" Markets.**

Plaintiffs do not defend [REDACTED]. *See* Mot. 23-24. Rather, Plaintiffs claim that this

is just "a case of dueling experts" and that Dr. Israel's method is fine because "automated extraction is far superior to tools that rely on manual actions." Opp. 24. But the relevant inquiry is whether a defined market includes all reasonably interchangeable products (i.e., "substitutes"), *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962), and that one product may be "superior" to another does not mean they are not substitutes. [redacted][10] Bresnahan Rep. ¶¶ 62, 168-69. *Daubert* exists to exclude such arbitrary methodologies.[11]

**V. Dr. Israel's MVSC Liability Opinions Are Inadmissible (Reynolds Only).**

MVSC does not dispute that Dr. Israel's opinions parrot the opinions of MVSC executives without economic analysis. MVSC suggests that the opinions should be saved if Defendants' "economically infeasible" prices are presented as an example of the "effects" of the alleged conspiracy. Opp. 25. But this is a distinction without a difference. If Dr. Israel's opinions are not based on economic analysis, as MVSC concedes, then they should be excluded regardless of their form or purpose. In addition, Dr. Israel has already opined that [redacted] *E.g.*, Rpt. ¶ 188.

**CONCLUSION**

Dr. Israel's opinions should be excluded.

---

[10] [redacted] *See* Dkt. No. 978 at 20. [redacted].

[11] Plaintiffs claim that changes to market definitions do not alter Dr. Israel's results. Opp. 23. That is wrong, *see* Bresnahan Rpt. ¶¶ 251, 258, fig. 16, and does not remedy the fact that Dr. Israel's method is arbitrary.

Dated: July 8, 2020

Respectfully submitted,

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com
jglickstein@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

**CERTIFICATE OF SERVICE**

I, Britt M. Miller, an attorney, hereby certify that on July 8, 2020, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS AND PROFFERED TESTIMONY OF DR. MARK ISRAEL** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com