**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION
## TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF
## MS. CATHARINE LAWTON

**PUBLIC VERSION**

## <u>TABLE OF CONTENTS</u>

1.   This Not A Battle Of The Experts. ................................................................. 1

2.   Cross-Examination Cannot Cure A Failed Yardstick. ..................................... 2

3.   Supposed "Correlation" Does Not Prove Reliability ....................................... 4

4.   Authenticom Admits Lawton Failed To Adjust For Competition. .................... 6

5.   Authenticom Admits Its Lump Sum Damages Model Combines Different Harms. .......... 8

6.   Authenticom's Revisionist Defense Of Its Connections Analysis Is Unsupportable. ........ 9

**PUBLIC VERSION**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
    152 F.3d 588 (7th Cir. 1998) ...............................................................................5, 9

*CDW LLC v. NETech Corp.*,
    906 F. Supp. 2d 815 (S.D. Ind. 2012) ................................................................3, 6

*Champagne Metals v. Ken-Mac Metals, Inc.*,
    2008 WL 5205204, (W.D. Okla. Dec. 11, 2008) ....................................................3

*Christian v. Generation Mortgage Co.*,
    12 C 5336, 2014 WL 4494860 (N.D. Ill. Sept. 12, 2014) .......................................5

*Eleven Line, Inc. v. N. Tex. State Soccer Assoc.*,
    213 F.3d. 198 (5th Cir. 2000) .................................................................................3

*Gumwood HP Shopping Partners, L.P. v. Simon Prop. Group, Inc.*,
    221 F. Supp. 3d 1033 (N.D. Ind. 2016) ..................................................................7

*Isaksen v. Vermont Castings, Inc.*,
    825 F.2d 1158 (7th Cir. 1987) ................................................................................7

*Krik v. Exxon Mobil Corp.*,
    870 F.3d 669 (7th Cir. 2017) ..................................................................................2

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) ......................................................................2

*MCI Commc'ns Corp. v. AT&T Co.*,
    708 F.2d 1081 (7th Cir. 1983) ................................................................................8

*Muffett v. City of Yakima*,
    2012 WL 12827492 (E.D. Wash. July 20, 2012)....................................................2

*Tagatz v. Marquette Univ.*,
    861 F.2d 1040 (7th Cir. 1988) ................................................................................5

*C.W. ex rel. Wood v. Textron, Inc.*,
    807 F.3d 827 (7th Cir. 2015) ..................................................................................2

Defendants respectfully submit the following reply in support of their motion to exclude the opinions proffered on behalf of Authenticom by Catharine Lawton.

1. <u>**This Not A Battle Of The Experts.**</u>

Authenticom offers little substantive defense of Lawton's yardstick and even less justification for how a company with  . *See* Dkt. 880 at 3-4.

Authenticom does not dispute that Lawton's "yardstick" consists chiefly of . Dkt. 880 at 8-9; Authenticom's Opposition (Dkt. 999) ("Opp.") at 11-12. Authenticom does not dispute that Dkt. 880 at 15; Opp. at 15; , Dkt. 880 at 13-15; Opp. at 14-15; or that . Dkt. 880 at 15-16; Opp. at 16. Finally, Authenticom does not dispute that multiple competitors went out of business during the damages window—allegedly because of Defendants' conduct—thereby diminishing its competition and inflating its yardstick connections. Dkt. 880 at 17-19; Opp. at 17.

Instead, Authenticom tries to ignore these failures—which show that most or all of its claimed damages were fabricated (Dkt. 880 at App. 12)—by assuring the Court that this is merely a "battle of the experts." Opp. at 1. Authenticom then focuses, not on the many reasons to exclude Lawton, but on its criticisms of Defendants' damages expert. *E.g.,* Opp. at 10, 14. But Authenticom's attempt to divert attention from Lawton's flaws turns *Daubert* on its head. It is *Authenticom's* burden—not Defendants'—to establish that Lawton's testimony is relevant and

reliable. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 673 (7th Cir. 2017); *see also Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794, 812 (N.D. Ill. 2005) ("Absent the requisite showing of comparability, a damage model that predicts either the presence or absence of future profits is impermissibly speculative and conjectural."); *Muffett v. City of Yakima*, 2012 WL 12827492, at *3 (E.D. Wash. July 20, 2012) ("[T]he reliability of the yardstick approach is based on the comparability of that yardstick," and it is the proponent's burden to show that the expert "established such comparability," not their opponent's burden "to refute the comparability.").

It is therefore irrelevant whether Dr. Rubinfeld mentioned a criticism in his Report. Defendants could have designated *no* responsive experts, and Authenticom still would bear the burden to prove Lawton's reliability. Authenticom has fallen well short of satisfying that burden.[1]

### 2. Cross-Examination Cannot Cure A Failed Yardstick.

Authenticom largely argues, as a last refuge, that these failings can be solved by cross-examination, not exclusion. Opp. at 7, 9, 10, 17, 22. But "[t]he opportunity for vigorous cross examination and the presentation of contrary evidence . . . is not a basis for allowing otherwise inadmissible [expert] testimony to be admitted." *Loeffel Steel*, 387 F. Supp. 2d at 800. As the "gatekeeper of expert testimony," a district court must go beyond the "correctness of the expert's conclusions" and evaluate "the soundness and care with which the expert arrived at her opinion." *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015).

First, Authenticom argues that because "yardsticks" as a general methodology *can* be reliable, Lawton's specific yardstick must be reliable. Opp. at 1. This is a classic logical fallacy. Courts exclude "yardsticks," like Lawton's here, that are unreliably or unsoundly constructed. Dkt.

---

[1] Authenticom argues that Dr. Rubinfeld performed a yardstick, thereby validating Lawton's yardstick. Opp. at 1, 17. But Dr. Rubinfeld offered corrections to Lawton's flawed yardstick, reducing Authenticom's damages to a fraction of the claimed amount. Dkt. 889, Ex. 20 at § V. Offering corrections to Lawton's yardstick is no admission of its reliability, which Dr. Rubinfeld critiqued at length. *Id.* at §§ III-V.

880 at 7-15. Second, Authenticom argues that because the "yardstick" comprises ██████████ ████████████████████████████████████ it is inherently reliable. Opp. at 10. That, too, fails to address the issue. Putting aside the fact that the "yardstick" includes ███████ █████████████████████████████████████████—even if the "yardstick" only included Authenticom's sales in other markets it still would not be a reliable benchmark absent the requisite showing of comparability.

Courts routinely reject arguments like Authenticom's. In *CDW LLC v. NETech Corp.,* the plaintiff argued that the yardstick was comparable because it consisted of branches "in the same line of business" and under "the same management structure and policy." 906 F. Supp. 2d 815, 824 (S.D. Ind. 2012). The Court held this was not enough, for plaintiff's expert offered no economic analysis as to why the components of the yardstick were comparable. *Id.* Similarly, in *Champagne Metals v. Ken-Mac Metals, Inc.*, the damages expert calculated "lost sales based not only on lost aluminum sales—the focus of the alleged antitrust violation here—but also on plaintiff's sale of steel during the various years." 2008 WL 5205204, at *10 (W.D. Okla. Dec. 11, 2008). Again, the Court properly excluded the expert because he failed to "explain[] or justif[y] the inclusion of steel sales in an analysis of lost aluminum sales." *Id.; see also Eleven Line, Inc. v. N. Tex. State Soccer Assoc.,* 213 F.3d. 198, 208 (5th Cir. 2000) (rejecting attempt to use lost profits from plaintiff's other soccer arenas as proxy for profits lost by one facility).

Authenticom argues that these and other cases involved experts who failed to account for relevant market factors or who could not "articulate any justification for the benchmark selected." Opp. at 11 nn.3-4. But even if those cases could be so narrowly read, that is *exactly the case here*. Lawton could not explain her "yardstick." ███████████████████████████████ ███████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████ It is not clear how cross-examination could elucidate these issues for the jury, when Lawton

was entirely unaware of them. Nor is this "nit-picking." Opp. at 10. These issues go to the core of

her model's reliability and account for almost all of her calculated damages. Dkt. 880 at App. 12.

### 3. Supposed "Correlation" Does Not Prove Reliability.

One of the tentpoles of Authenticom's defense is that Lawton performed a "correlation

analysis" based on the rates of growth for the bundles that she (often mis-) labeled as CDK,

Reynolds, and "Other" connections between 2005 and September 2013. Dkt. 889, Ex. 4 at ¶ 511;

Opp. at 1, 4, 7, 13, 17. Authenticom's reliance on this analysis is misguided.

*First,* the yardstick Lawton measures from 2005 to September 2013 differs from the post-

September 2013 yardstick in important ways. ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ ████████

██████████████████████████████████████████████er

**PUBLIC VERSION**

███████████████████████████████████████████████████████

█████████████. This correlation analysis is therefore irrelevant.

*Second,* ██████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ Dkt. 880 at 19-20; Dkt. 889, Ex. 6 at

35-36; 50-51; *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*, 152 F.3d 588,

593 (7th Cir. 1998) ("Statistical studies that fail to correct for salient factors, not attributable to the

defendant's misconduct, that may have caused the harm of which the plaintiff is complaining do

not provide a rational basis for a judgment.").

Authenticom says it should be allowed to assume that Reynolds's technological "blocking"

measures would have ceased in September 2013 in a but-for world, absent the alleged illegal

conspiracy, and that therefore these trendlines would have re-correlated. Opp. at 18-20 (arguing

that whether "Reynolds' blocking from June – August 2013 would have persisted" is "disputed").

This is pure revisionism. ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ In any event, Authenticom cites no evidence

suggesting this is disputed and the evidence is all to the contrary. *See* Dkt. 974 at ¶ 88.

*Third*, correlation is not causation. *Tagatz v. Marquette Univ.,* 861 F.2d 1040, 1044 (7th

Cir. 1988); *Christian v. Generation Mortgage Co.*, 12 C 5336, 2014 WL 4494860, at *4, n.5 (N.D.

Ill. Sept. 12, 2014). Even if the yardstick composition and Reynolds trendlines had not changed

**PUBLIC VERSION**

over time, Lawton has done nothing to establish that the Reynolds and CDK lines would have continued to correlate and react similarly to market forces going forward. To do so, Lawton should have tested the yardstick beyond her simple correlation analysis. *See, e.g., CDW,* 906 F. Supp. 2d at 824 (averaged revenue growth correlation irrelevant when expert failed to analyze "the market forces that affect…the revenues"); Dkt. 871, Ex. H.1 (Rubinfeld Tr.) at 96-97 ("yardstick" should be tested against "exogenous shocks" to the market). Lawton did not attempt to do this.

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████

### 4. <u>Authenticom Admits Lawton Failed To Adjust For Competition.</u>

Authenticom concedes that it faced reduced competition in its yardstick because its competitors exited the business over time. Dkt. 880 at 17-19; Opp. at 17. Nor can it deny that Lawton made no adjustments to account for that. ████████████████████████████
████████████████████████████████████████████

This alone is enough to exclude Lawton's opinions.[2]  When constructing a but-for world for antitrust damages, the expert must account for competition and other market factors. *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Group, Inc.,* 221 F. Supp. 3d 1033, 1042 (N.D. Ind. 2016) ("[A] plaintiff is only entitled to be put in the position it would have been in had competition been lawful, not the position it would have been in had competition been absent."); *Isaksen v. Vermont Castings, Inc.,* 825 F.2d 1158, 1165 (7th Cir. 1987) (plaintiff cannot use profits inflated by antitrust violation as "benchmark in calculating the loss of profits" caused by alleged violation).

Authenticom calls Defendants' cited cases "inapposite," but Authenticom's descriptions of their holdings (Opp. at 17-18 n.8)—rejecting models "[un]tethered to any specific anticompetitive conduct," based on "cherry-picked facts," or "demonstrably inconsistent with conditions in the real world"—show that these are directly applicable.  Authenticom alleges it has no competitors in the market for connections to non-Reynolds, non-CDK systems, like the DealerTrack DMS, which comprises Authenticom's yardstick. Dkt. 889, Ex. 60 at 120-121. Wildly, Authenticom asks the Court to find it reliable to assume that its growth in connections to Reynolds and CDK DMSs in a but-for world—which would welcome all data syndicators to hook into Reynolds and CDK DMSs—would mirror its growth in connections today, when it faces *no* competition.

Ignoring its legal burden, Authenticom complains that Defendants offer no "concrete suggestions" as to what Lawton should have done to fix her model. Opp. at 17. Defendants have no obligation to construct Authenticom's damages model for it, but in fact it would not have been

---

[2] Authenticom argues that Lawton performed a separate correlation analysis showing that "Authenticom's performance in the but-for world"—*i.e.*, what Lawton contends the yardstick represents after September 2013—correlated with "Authenticom's performance prior [sic] the Defendants' anticompetitive conduct." Opp. at 17. This too is directly contradicted by Lawton's deposition testimony: ████████████████████████████████ ████████████████████████████████ ████████████████████████████████████████████████ Even if she had done such analysis, it is not clear what it would show—certainly not that her model isolated the effect of lessened competition.

7

difficult to account for this. Lawton could have calculated its competitors' market shares, pre-conspiracy, and applied those percentages going forward. For example, Authenticom alleges that DMI, a CDK subsidiary, had 80% of the market share for polling Reynolds DMSs prior to the alleged conspiracy, meaning Authenticom and multiple others combined for the remaining 20%. Dkt. 977 at ¶ 48. Rather than use a but-for world where DMI continues to hostilely access Reynolds's DMSs, however, ███████████████████████████████████████████ ███████████████████████████████████████ She does so only by ignoring what Authenticom's competitors would look like in a but-for world. Dkt. 889, Ex. 6 at 231-233.

### 5. **Authenticom Admits Its Lump Sum Damages Model Combines Different Harms.**

Authenticom also admits that ███████████████████████████████████ ████████████████████████████████████. Dkt. 880 at 20-23; Opp. at 20. First, Authenticom argues she had no obligation to segregate harm caused by lawful, versus unlawful, conduct because whether the unilateral conduct was lawful is disputed. Opp. at 20. But this is not true. █████████████████████████████████████████████████████ ██████████████████████████████████. Dkt. 889, Ex. 6 at 198-99; Dkt. 880 at 22. While Authenticom once challenged these agreements as illegal, the Court dismissed that claim, so these are not "disputed facts for trial." Dkt. 880 at 22; Dkt. 176 at 36-39; Opp. at 20. Despite this, Lawton made no effort to segregate harms caused by these and similar actions—██ ████████████████████████████████████—from her damages model. Dkt. 880 at 20-22. *See MCI Commc'ns Corp. v. AT&T Co.*, 708 F.2d 1081, 1162 (7th Cir. 1983).

Alternatively, Authenticom argues that the disaggregation Lawton did do—█████████ ████████████████████l (Dkt. 889, Ex. 4 ¶ 22)—is the best she could offer. Opp. 20. But it is unreliable to assume that all alleged courses of conduct, some allegedly illegal and some not,

**PUBLIC VERSION**

"were redundant; like the assassins of Rasputin, who drowned him after poisoning and shooting him in order to make sure he was really dead." *Blue Cross & Blue Shield*, 152 F.3d at 593-94.

Authenticom argues that *Craftsmen Limousine, Inc.* and *Blue Cross & Blue Shield* are distinguishable because experts there attributed the entire difference in growth or pricing to anticompetitive conduct, without making appropriate adjustments. Opp. at 21. But again, ***that is exactly the case here***. ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Dkt. 889, Ex. 6 at 24-25.

**6. <u>Authenticom's Revisionist Defense Of Its Connections Analysis Is Unsupportable.</u>**

Finally, Authenticom makes a number of false claims requiring correction.

***Other DMS.*** Authenticom claims that while Lawton's opening Report uses the "shorthand" of "Other DMS," she disclosed that her yardstick included non-DMS connections. *See* Opp. at 3, n.1. ██████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

***Dr. Israel.*** Authenticom claims that ████████████████████████████

██████████████████████████████████████████████████

████████ Opp. at 14, 15 n.3. But even if true, it would be Authenticom's burden to establish why its sales in what are admittedly *materially different markets* are otherwise comparable for yardstick purposes. And it is not true. ████████████████████████████████

██████████████████████████████████████████████████

9



***Klein's Connections.*** Authenticom claims that the analysis submitted by Gordon Klein at the preliminary injunction hearing—showing Authenticom's "other" connections declining, while Lawton shows them rising—is not the result of manipulation but of Klein's excluding DealerVault connections from his analysis. Dkt 880 at 2; Opp. at 22.

*Compare* Dkt. 889, Ex. 93 at "*Combined* Subscription Revenue" *with id.*, Ex. 4 at Fig. 8.3.

Dkt. 889, Ex. 93 at "DealerVault Polling Subscriptions."

***"Reasonableness" Checks.*** Authenticom misleadingly claims internal CDK valuations of Authenticom validate Lawton's calculations. Opp. at 5.

**CONCLUSION**

Defendants request that the Court exclude the testimony and opinions of Catharine Lawton.

**PUBLIC VERSION**

Dated: July 8, 2020

Respectfully submitted,

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross M. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 650-8805
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com
jglickstein@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

11

**PUBLIC VERSION**

## CERTIFICATE OF SERVICE

I, Britt M. Miller, an attorney, hereby certify that on July 8, 2020, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF MS. CATHARINE LAWTON** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com