# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| THE DEALERSHIP PUTATIVE CLASS ACTION | Magistrate Judge Jeffrey T. Gilbert |

# REPLY IN SUPPORT OF DEFENDANT CDK GLOBAL, LLC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. MICHAEL A. WILLIAMS

**TABLE OF CONTENTS**

**Page**

I. Dr. Williams's Damages Opinions Should Be Excluded .................................................... 1
II. Dr. Williams's Liability Opinions Should Be Excluded .................................................... 6
CONCLUSION .............................................................................................................................. 11

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Apple, Inc. v. Pepper*,
　139 S. Ct. 1514 (2019) ........................................................................................................ 2, 3

*Authenticom, Inc. v. CDK Global, LLC*,
　874 F.3d 1019 (7th Cir. 2016) .................................................................................................9

*Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*,
　203 F.3d 1028 (8th Cir. 2000) ...............................................................................................10

*Blue Cross & Blue Shield of Wis. v. Marshfield Clinic*,
　152 F.3d 588 (7th Cir. 1998) ............................................................................................. 5, 6

*In re Brand Name Prescription Drugs Antitrust Litig.*,
　123 F.3d 599 (7th Cir. 1997) ...................................................................................................2

*In re Brand Name Prescription Drugs Antitrust Litig.*,
　186 F.3d 781 (7th Cir. 1999) ...................................................................................................4

*Clark v. Takata Corp.*,
　192 F.3d 750 (7th Cir. 1999) ...................................................................................................6

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
　60 F. Supp. 3d 914 (N.D. Ill. 2014) .........................................................................................6

*Drexel Univ. v. Santa Fe Sci. & Tech., Inc.*,
　2005 WL 5973212 (E.D. Pa. Apr. 21, 2005) ...........................................................................3

*Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*,
　2002 WL 31528625 (E.D.N.Y. Aug. 21, 2002) .......................................................................2

*In re Ethylene Propylene Diene Monomer Antitrust Litig.*,
　681 F. Supp. 2d 141 (D. Conn. 2009) ......................................................................................9

*Kleen Prods. LLC v. Int'l Paper*,
　2017 WL 2362567 (N.D. Ill. May 31, 2017) ........................................................................10

*Marion Healthcare, LLC v. Beckton Dickinson & Co.*,
　952 F.3d 832 (7th Cir. 2020) ...................................................................................................2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) .................................................................................................................6

*MCI Commc'ns v. Am. Tel & Tel Co.*,
 708 F.2d 1081 (7th Cir. 1983) .................................................................................................. 5

*Merican, Inc. v. Caterpillar Tractor Co.*,
 713 F.2d 958 (3d Cir. 1983) ...................................................................................................... 2

*Nilssen v. Motorola, Inc.*,
 1998 WL 513090 (N.D. Ill. Aug. 14, 1998) .............................................................................. 6

*Sanner v. Bd. of Trade of City of Chicago*,
 2001 WL 1155277 (N.D. Ill. Sept. 28, 2001) ............................................................................ 3

*Spray-Rite Serv. Corp. v. Monsanto Co.*,
 684 F.2d 1226 (7th Cir. 1982) .................................................................................................. 5

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
 282 U.S. 555 (1931) .................................................................................................................. 1

*Valspar Corp. v. E.I. Du Pont De Nemours & Co.*,
 152 F. Supp. 3d 234 (D. Del. 2016), *aff'd*, 873 F.3d 185 (3d Cir. 2017) ........................... 7, 10

**Other Authorities**

Rule 702 ................................................................................................................................ 1, 3, 10

CDK's opening brief, Dkt. 882 ("Mem."), explained that Dr. Williams's opinions were not reliable and would not assist the finder of fact as required by Rule 702. Dr. Williams calculates legally impermissible damages; fails to account for the consequences of his own opinions; and offers liability opinions unmoored from the legal standards, the factual record, and economic expertise. Nothing in the Dealers' opposition brief, Dkt. 992 ("Opp."), changes these conclusions.

## I. Dr. Williams's Damages Opinions Should Be Excluded.

Dr. Williams's damages opinions are inadmissible for two reasons.

**1.** The Court's motion to dismiss decision held that the Dealers had alleged direct damages in the DMS market but that "[t]o the extent that Plaintiffs seek to recover alleged supracompetitive prices passed through vendors . . . Plaintiffs' claims are barred by *Illinois Brick*." Dkt. 507 at 20-21. Yet the Dealers do not deny (nor can they) that ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

even though "a federal antitrust plaintiff may not seek damages based on supracompetitive prices passed through by a purchaser earlier in the distribution chain." Dkt. 507 at 19 (emphasis added).

Seeking indirect pass-on damages and then re-characterizing those exact same losses as "direct" flies in the face of the Court's ruling and is forbidden as a matter of law. *See* Mem. 2-5. Neither *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931), nor *Bigelow RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946), are to the contrary. *See* Opp. 2-3. Those decisions stand for the unexceptional proposition that antitrust plaintiffs can recover for diminution in property value or lost business. But they do not authorize indirect purchaser plaintiffs to recover

pass-through damages by calling them a "direct" injury.

That is precisely what *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599 (7th Cir. 1997), *Drug Mart Pharmacy Corp. v. Am. Home Prods. Corp.*, 2002 WL 31528625 (E.D.N.Y. Aug. 21, 2002), and similar cases hold: A plaintiff can "prove up whatever damages they [can] show flowed" from the alleged anticompetitive activity "provided" they do not "seek[] to recover overcharges" on a pass-on theory that "would entail the very incidence analysis that *Illinois Brick* bars." *Brand Name*, 123 F.3d at 606. That those cases involved attempts to recover passed-on overcharges as "lost profits," whereas here the Dealers attempt to recover passed-on overcharges as "lost DMS functionality," *see* Opp. 3, makes no difference. The "availability" of a federal antitrust damages remedy "depends not on the plaintiff's characterization of the illegal activity but on whether the problems identified in *Illinois Brick* would be avoided if relief were allowed." *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 967 (3d Cir. 1983).[1]

Nor does *Apple, Inc. v. Pepper*, 139 S. Ct. 1514 (2019), cited at Opp. 4, help the Dealers. It held that consumers who (1) "purchase apps directly from the retailer Apple" and (2) "pay the alleged overcharge directly to Apple" are direct purchasers even if a third-party ultimately sets the price that the consumers paid, because a "who-sets-the-price" rule made sense only as a way to "gerrymander" Apple out of the litigation. *Id*. at 1521-22. But here, it is the Dealers that are seeking a gerrymander. Unlike the *Apple* plaintiffs, the Dealers do not purchase data integration directly from, or pay alleged overcharges directly to, CDK or Reynolds. *Illinois Brick*'s "bright-line rule"

---

[1] *Brand Name* also in no way authorizes the Dealers to recover alleged DIS overcharges because they are direct purchasers of *DMSs*. *See* Opp. 3. The section of the opinion the Dealers cite simply recognizes that where a manufacturer and direct purchaser conspire *together* to pass on supracompetitive prices to downstream purchasers, the first purchaser of the good or service outside the conspiracy is permitted to recover pass-on damages. *Brand Name*, 123 F.3d at 604; *see also Marion Healthcare, LLC v. Beckton Dickinson & Co.*, 952 F.3d 832, 839 (7th Cir. 2020). Since the Dealers do not allege that CDK and third-party vendors conspired to raise integration prices, that exception to *Illinois Brick* has no application here.

(*id*. at 1520) thus bars them from recovering alleged passed-on integration overcharges on their federal claims—no matter how they characterize their injury.

**2.** Aside from his legally meritless "direct" damages opinions, Dr. Williams fails to measure supposed overcharge damages because his model fails to separate lawful from unlawful price increases. Mem. 5-9. This error does not, as the Dealers insist, merely involve the "selection of variables." Opp. 9. Dr. Williams offers jurors no way to separate lawful from unlawful price increases, and his opinions therefore cannot assist the finder of fact as Rule 702 requires.

**a.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

"[G]uesswork and eyeballing" do not satisfy *Daubert*'s requirements. *Sanner v. Bd. of Trade of City of Chicago*, 2001 WL 1155277, at *7 (N.D. Ill. Sept. 28, 2001); *see also Drexel Univ. v. Santa Fe Sci. & Tech., Inc.*, 2005 WL 5973212, at *2 (E.D. Pa. Apr. 21, 2005) (excluding expert who "did not present any scientific methods or reasoning to support many of the core assumptions in his model"). That is especially true here, where Dr. Williams ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2]

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] The Dealers claim it is standard to test the parallel paths assumption of a DiD analysis visually, Opp. 8, yet their first example from the literature does not discuss the subject. It is about the relationship between clustering (correlation within a group of observations) and a model's statistical precision. Opp. Ex. G. The other examples, Opp. Exs. H-K, are dense technical papers with no pincites. None appears to suggest that visual inspection is sufficient if, as here, it shows that the two paths are *not* parallel.

"████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████"

**b.** The Seventh Circuit has "remind[ed]" plaintiffs that they must "separate the price effects of [alleged] collusion from the price effects of the defendants' lawful market power" to obtain damages. *In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 786 (7th Cir. 1999); *see also* Dkt. 966 11-13. Thus, in calculating conspiracy damages, Dr. Williams had to consider his assessment of CDK's and Reynolds's *unilateral* power to determine the prices they would have charged in the but-for world (without a conspiracy). He did not. Mem. 7-9.

Echoing the same argument that Authenticom makes in support of its expert, Dr. Israel, the Dealers contend (at Opp. 5) that Dr. Williams's DiD regression controls for any unilateral market power. ████████████████████████████████████

████████████████████ *See also* Israel *Daubert* Reply Br. § III (filed concurrently). Indeed,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[3] This *post hoc* explanation is factually false as well. ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

4



The Seventh Circuit has condemned this practice of using "yardstick" prices to measure but-for prices without accounting for the defendant's unique market power. *Blue Cross & Blue Shield of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593-94 (7th Cir. 1998). The Dealers try to cast *Marshfield Clinic* as a post-trial decision, *see* Opp. 6, but that is misleading. Three years before the cited opinion, the Seventh Circuit did indeed reverse a jury verdict for the plaintiffs and remand the case to the lower court; but the lower court then "granted summary judgment" because the plaintiff had "produced no evidence that it had suffered any injury as a result of" the challenged conduct. 152 F.3d at 590-91. Thus, this case is in the same posture as *Marshfield Clinic* was when the Seventh Circuit held that a damages expert must account for the defendant's market power.

**c.** Finally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. 7 (citing *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1243 (7th Cir. 1982)). But *Spray-Rite* involved a "factually peculiar situation" and applies only if, among other things, "the extent of the lawful conduct was insubstantial in relation to the damages and the burden of requiring strict proof of causation was relatively great." *MCI Commc'ns v. Am. Tel & Tel Co.*, 708 F.2d 1081, 1163 (7th Cir. 1983). Dr. Williams did not try to disaggregate damages, much less show it is not possible to do so.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ This grossly oversimplified approach not only undermines Dr. Williams's credibility; it makes his opinion "hard to take seriously," *Marshfield Clinic*, 152 F.3d at 593, "cast[ing] a cloud" on his methodology. *Nilssen v. Motorola, Inc.*, 1998 WL 513090, at *12 n.17 (N.D. Ill. Aug. 14, 1998).

**II.     Dr. Williams's Liability Opinions Should Be Excluded.**

Dr. Williams's liability opinions are equally deficient.

**1.**     As an initial matter, Dr. Williams's liability analysis ignores the fundamental question that will guide the jury's deliberations: whether CDK's and Reynolds's conduct is consistent with unilateral, non-conspiratorial motivation. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). Dr. Williams does not offer any economic opinion as to why CDK and Reynolds would have found it more profitable to *conspire* to block hostile integration on their respective DMSs or why doing so was inconsistent with unilateral action. Instead, he argues that evidence is consistent with collusion. Mem. 11-12. "[A]n expert does not assist the trier of fact . . . if he starts his analysis based upon [an] assumption" that is "the very question that he was called upon to resolve." *Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999).[4]

---

[4] The Dealers claim that Dr. Williams implicitly accounted for unilateral motivations in his damages analysis, Opp. 13, which is incorrect. *See* pp. 4-5 *supra*; ██████████████████████████████ ████████████████████████████████████████████████████ Alternatively, the Dealers argue that *Matsushita* does not apply because they offer direct evidence of conspiracy. Opp. 9-10. That misstates both the facts and the law, as CDK has explained elsewhere. *See* Dkt. 966 at 43-50. It is also beside the point. Dr. Williams does not address—and has no expertise to opine on—whether particular allegations or documents are "direct" evidence. *See* Mem. 13. To the extent his economic opinions are reliable and helpful to the jury, they are circumstantial evidence, *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 60 F. Supp. 3d 914, 961-62 (N.D. Ill. 2014), and therefore are subject to *Matsushita*.

**2.** Dr. Williams's cursory discussion of various "plus factors" does not change this conclusion. The Dealers note that Dr. Williams mentions certain factors that courts have referenced in determining whether evidence tends to exclude unilateral explanations, and that some courts use "plus factors" terminology as a shorthand for this inquiry. Opp. 14. Although the Dealers accuse CDK of being "silly", Opp. 14 n.8, the fact is that the Seventh Circuit does not employ such a rigid framework. Rather, the Seventh Circuit properly focuses on the economic question of whether evidence tends to exclude an independent, non-conspiratorial explanation, not whether plaintiffs can tick off talismanic "factors" in support of conspiracy. *See* Mem. 13-14.

That said, whatever one calls the relevant inquiry, Dr. Williams's superficial and unreliable analysis is fundamentally unhelpful to the jury. Courts have rejected Dr. Williams's liability opinions in cases where he relied on similarly conclusory statements and "plus factor" analysis rather than genuine economic expertise. *See Valspar Corp. v. E.I. Du Pont De Nemours & Co.*, 152 F. Supp. 3d 234, 244 (D. Del. 2016), *aff'd*, 873 F.3d 185, 201 (3d Cir. 2017).

**a.** *Prices*. The Dealers argue that Dr. Williams's price analysis rules out unilateral conduct. Mot. Ex. 7 ¶¶ 51-52. But Dr. Williams says the opposite. *See* pp. 4-5 *supra*. His analysis merely purports to show that CDK's and Reynolds's prices increased in 2015 and 2013, respectively. That says nothing about whether CDK and Reynolds *conspired* to raise prices, let alone constitutes a "super plus factor" in favor of conspiracy. *See* Mem. 14-15.[5]

**b.** *Interfirm Communications*. According to the Dealers, Dr. Williams's analysis shows communications in furtherance of the February 2015 agreements between CDK

---

[5] [redacted]

7

and Reynolds. Opp. 17. But Dr. Williams performed no analysis of these communications; ▌

Mot. Ex. 7 ¶¶ 118-19; Mem. 16-17. Dr. Williams also failed to acknowledge, much less address, obvious reasons why CDK and Reynolds would communicate during this period—their negotiations concerning DMI's hostile access to the Reynolds DMS and reciprocal data access agreements for Reynolds and CDK apps.

That badly misconstrues the record, *see* Dkt. 966 at 39-40, and regardless says nothing about whether the communications Dr. Williams quotes as the basis for his "plus factor" opinion were consistent with CDK's unilateral interest in winding down DMI's hostile access. The Dealers also point to evidence Dr. Williams cited in reply to show that

. But again, Dr. Williams did nothing more than point to cherry-picked emails and state his conclusion. Mot. Ex. 8 ¶ 35. He did not mention the mountain of contrary evidence showing that CDK always intended to wind-down DMI's hostile integration, *see* Dkt. 966 at 7-8, and he consistently mischaracterized the evidence he did cite. *See* Mem. 18-19.

        **c.**    ***The Agreements***. Much the same can be said of Dr. Williams's discussion of the February 2015 Agreements themselves, which is utterly conclusory. Mem. 17-18. The Dealers tout Dr. Williams's qualifications to assess "whether the level of cooperation embodied in the agreements was anticompetitive and against Defendants' unilateral self-interests." Opp. 18. But Dr. Williams could not even remember what was *in* the agreements. Mem. 18. The Court can

8

read his analysis and determine for itself whether his opinions on these subjects will be helpful to the jury. *See* Mot. Ex. 7 ¶¶ 121-22. Similarly, the suggestion (Opp. 19) that Dr. Williams's analysis of the February 2015 agreements is consistent with *In re Ethylene Propylene Diene Monomer Antitrust Litig.*, 681 F. Supp. 2d 141, 173 (D. Conn. 2009), is off base. That decision discussed the importance of "non-economic evidence" of an "actual, manifest agreement" to violate the antitrust law. *Id.* Dr. Williams is not qualified to opine about *non*-economic evidence.

   **d.**  *Enforcement Efforts*. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This does not just reflect "the parties' disagreement." Opp. 19. Dr. Williams simply did not consider whether the "enforcement" efforts he cited were consistent with the February 2015 Agreements, none of which "required either CDK or Reynolds to block third-party access to its own data management system." *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2016).

   **e.**  *"Pretext."* The Dealers do not dispute that "pretext" standing alone is not probative. *See* Mem. 19-20. That pretextual reasons may have "some" value when combined with other factors, Opp. 20, is not enough. Dr. Williams failed to cite any of the actual experts who opined on cybersecurity issues in this litigation and applied no economic (or other) expertise in concluding that CDK's actions *were* pretextual. Thus, even if his other opinions had a reliable basis—and they do not—his opinion on pretext cannot assist the jury.

   **f.**  **Market Characteristics.** Dr. Williams's general "industry" analysis should be excluded because it does not help the jury decide whether CDK and Reynolds conspired or acted with conscious parallelism. Mem. 20. As the Third Circuit noted in rejecting Dr. Williams's opinions on this subject, an opinion that collusion is possible in an interdependent market

9

"master[s] the obvious." *Valspar*, 873 F.3d at 197. Citing *Kleen Prods. LLC v. Int'l Paper*, 2017 WL 2362567 (N.D. Ill. May 31, 2017), the Dealers say that Dr. Williams' testimony will help the jury understand the characteristics of the market. Opp. 20. But *Kleen* recognized that industry structure evidence "is irrelevant unless it is accompanied by something tending to show unlawful collusion among the specific Defendants during the relevant period." 2017 WL 2362567, at *14. Dr. Williams has not provided anything of the sort, for the reasons explained above.[6]

\* \* \*

These failures are not—in the Dealers' refrain—simply fodder for cross-examination. An expert's "heavy (if not exclusive) reliance on evidence that is not probative of conspiracy, coupled with his failure to consider significant external [non-conspiratorial] forces," renders the expert's opinions "fundamentally unreliable" under Rule 702. *Blomkest Fertilizer, Inc. v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1038 (8th Cir. 2000); *cf. Valspar*, 873 F.3d at 197 n.9 (rejecting Dr. Williams's conclusion that "evidence excludes the inference that the competitors acted independently" as "based on predicates that are insufficient under our case law"). Dr. Williams's liability opinions essentially regurgitate the Dealers' selective view of the evidence and assert with little explanation that that evidence supports various "plus factors" in a law review article. *See* Mot. Ex. 7 ¶¶ 113-31. Such opinions are not the product of reliable economic analysis.

## CONCLUSION

The Court should exclude Dr. Williams's damages and liability opinions.

---

[6] In *Kleen*, Judge Leinenweber concluded that "[o]n the balance of the evidence" before him the plaintiff's expert "ha[d] not so failed to consider obvious alternatives or to explain his reasoning as to be deemed unreliable." 2017 WL 2362567, at *14. In contrast, Dr. Williams does fail to consider obvious alternatives and offers no economic reasoning to assist the jury in evaluating the Dealers' claims. The Dealers' reliance on decisions permitting experts to testify about interpretations of record evidence (Opp. 11-12) are also misplaced, because those experts, unlike Dr. Williams, did offer valid economic analysis.

| | |
|---|---|
| Dated: July 8, 2020 | Respectfully submitted |
| | */s/ Britt M. Miller*_____ |
| | Britt M. Miller |
| | Michael A. Scodro |
| | Daniel T. Fenske |
| | Matthew D. Provance |
| | Jed W. Glickstein |
| | MAYER BROWN LLP |
| | 71 South Wacker Drive |
| | Chicago, IL 60606 |
| | (312) 782-0600 |
| | bmiller@mayerbrown.com |
| | mscodro@mayerbrown.com |
| | dfenske@ mayerbrown.com |
| | mprovance@mayerbrown.com |
| | jglickstein@mayerbrown.com |
| | |
| | Mark W. Ryan |
| | MAYER BROWN LLP |
| | 1999 K Street NW |
| | Washington, DC 20006 |
| | (202) 263-3000 |
| | mryan@mayerbrown.com |
| | |
| | *Counsel for Defendant* |
| | *CDK Global, LLC* |

**CERTIFICATE OF SERVICE**

      I, Britt M. Miller, an attorney, hereby certify that on July 8, 2020, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANT CDK GLOBAL, LLC'S MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. MICHAEL A. WILLIAMS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

      */s/ Britt M. Miller*
      Britt M. Miller
      MAYER BROWN LLP
      71 South Wacker Drive
      Chicago, IL 60606
      (312) 782-0600
      bmiller@mayerbrown.com