IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:*<br>ALL CASES | Hon. Robert M. Dow, Jr.<br><br>Magistrate Judge Jeffrey T. Gilbert |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE CERTAIN
EXPERT TESTIMONY OF ALLAN STEJSKAL**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I.   MR. STEJSKAL'S SWITCHING OPINIONS SHOULD BE EXCLUDED. .................... 2

    A.   Mr. Stejskal's switching opinions are not relevant or helpful to the jury. ............... 2

    B.   Mr. Stejskal's switching opinions are unreliable. .................................................... 4

II.  MR. STEJSKAL'S DATA-SECURITY OPINIONS SHOULD BE EXCLUDED. ........... 7

    A.   Mr. Stejskal's opinion regarding the security of working with third-party integrators is unreliable and not informed by specialized knowledge. ..................... 7

    B.   Mr. Stejskal has no reliable basis for the broad statement that "dealerships" take data security seriously. ...................................................................................... 9

CONCLUSION .................................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*,
   262 F. Supp. 2d 50 (S.D.N.Y. 2003)..................................................................................2

*Crawford Supply Group, Inc. v. Bank of America, N.A.*,
   2011 WL 4840965 (N.D. Ill. Oct. 12, 2011)...................................................................5, 9

*Davis v. Carroll*,
   937 F. Supp. 2d 390 (S.D.N.Y. 2013)................................................................................8

*Driver v. AppleIllinois, LLC*,
   2011 WL 4007337 (N.D. Ill. Sept. 9, 2011) ...................................................................1, 5

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
   504 U.S. 451 (1992)...........................................................................................................2

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...........................................................................................................6

*Jesa Enters. Ltd. v. Thermoflex Corp.*,
   268 F. Supp. 3d 968, 974 (E.D. Mich. 2017)..................................................................6, 7

*Jordan v. City of Chicago*,
   2012 WL 254243 (N.D. Ill. Jan. 27, 2012) ........................................................................6

*Lemmerman v. Blue Cross Blue Shield of Wis.*,
   713 F. Supp. 2d 791 (E.D. Wis. 2010)...............................................................................8

*Metavante Corp. v. Emigrant Sav. Bank*,
   619 F.3d 748 (7th Cir. 2010) .............................................................................................6

*Potts v. Manos*,
   2017 WL 4365948 (N.D. Ill. Sept. 29, 2017) ....................................................................3

*SMS Sys. Maint. Services, Inc. v. Digital Equip. Corp.*,
   188 F.3d 11 (1st Cir. 1999)................................................................................................3

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
   670 F. Supp. 2d 748 (N.D. Ill. 2009) .................................................................................4

*Watkins v. Telsmith, Inc.*,
   121 F.3d 984 (5th Cir. 1997) .............................................................................................5

**Other Authorities**

Fed R. Evid. 12(b)(6) ................................................................................................................3

Fed. R. Evid. 702 ...............................................................................................................1, 3, 4

**INTRODUCTION**

Allan Stejskal has not looked at a single data point from the reams of DMS switching data produced in this case and has not provided a single example—from "experience" or otherwise—of a dealer being unable or unwilling to switch DMS providers. Mr. Stejskal should not be allowed to testify as an expert on DMS switching.

Likewise, Mr. Stejskal may have extensive experience in the automotive industry, but he is not a cybersecurity expert. Mr. Stejskal thus should not be allowed to testify as an expert about whether hostile integration is secure or insecure, or the security competencies of "dealers" generally.

In response to these straightforward *Daubert* grounds, Plaintiffs attack strawmen by arguing that Defendants "turn a blind eye to Mr. Stejskal's vast experience" or that Defendants somehow contend that industry experts can *never* testify based on their experience. Defendants contend no such thing, and indeed have not challenged the vast majority of Mr. Stejskal's opinions at the *Daubert* stage.

Instead, Defendants' motion is narrowly tailored to address only two particular, discrete opinions that Mr. Stejskal does not and cannot support. Even in cases where an expert has extensive experience in a given industry, "testimony that is not sufficiently supported cannot be allowed." *Driver v. AppleIllinois, LLC*, 2011 WL 4007337, *9 (N.D. Ill. Sept. 9, 2011). Plaintiffs cannot avoid the basic requirements of Rule 702 with a broad gesture toward "industry experience." Defendants' motion should be granted.

1

# ARGUMENT

## I. MR. STEJSKAL'S SWITCHING OPINIONS SHOULD BE EXCLUDED.

### A. Mr. Stejskal's switching opinions are not relevant or helpful to the jury.

As explained in the motion, three PhD economic experts in this MDL have studied voluminous DMS switching data produced by CDK, Reynolds, and other DMS providers, and rendered detailed analyses based on that data.[1] Mr. Stejskal's proposed opinions regarding DMS switching costs are a classic attempt to trump Defendants' experts' rigorous, quantitative analyses with subjective anecdotes that cannot be tested or disproven. This attempt fails for several reasons.

First, Plaintiffs' basic premise as to why Mr. Stejskal's testimony would be relevant and helpful to a jury badly misses the mark. Plaintiffs assert that "DMS switching costs are an important issue in this MDL," Opp. 5,[2] but switching costs are not important in and of themselves. At best, switching costs potentially matter only to the extent that they impact *actual switching behavior* to a degree that would constitute a "lock in" under a *Kodak* aftermarket theory. *See Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 476-77 (1992).

But an expert opinion cannot support an inference of prohibitive switching costs where the expert "offers no examples" of customers who desired to switch but were "unable to migrate due to high switching costs" and makes no effort to "quantify how many such customers there might be." *Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp.*, 262 F. Supp. 2d 50, 68 (S.D.N.Y. 2003). Simply put, this is an inherently quantitative inquiry, which Mr. Stejskal does not even attempt to undertake.

---

[1] The switching analysis offered by Dr. Mark Israel is inherently unreliable and should be excluded for the reasons set forth in Dkt. 878 (Israel *Daubert* Br.) and Defendants' reply in support of that motion (filed contemporaneously).

[2] Citations to "Opp." refer to Plaintiffs' Opposition Brief, Dkt. 996. Citations to "Mot. Ex." refer to exhibits to the February 28, 2020 Declaration of Daniel T. Fenske, Dkt. 889. Citations to "Reply Ex." refer to exhibits to the July 8, 2020 Declaration of Daniel T. Fenske, filed contemporaneously.

Judge St. Eve's opinion at the Rule 12(b)(6) stage does not help Plaintiffs' cause. Plaintiffs loosely paraphrase that opinion as "describing high switching costs as a relevant factor in analyzing the applicable markets at issue in antitrust cases," but tellingly fail to point to any portion of that opinion suggesting that switching costs are relevant in the abstract, independent from actual customer behavior. To the contrary, Judge St. Eve specifically noted that subsequent to the motion to dismiss stage, "Authenticom must produce hard evidence dissociating the competitive situation in the aftermarket from activities occurring in the primary market." 313 F.Supp.3d 931, 964. Mr. Stejskal's anecdotal views regarding costs of switching are anything but hard evidence, and should not be allowed to distract the jury from testable quantitative analyses. *See SMS Sys. Maint. Services, Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 23 (1st Cir. 1999) (explaining that "empirical evidence" was "required" to test plaintiff's "switching cost hypothesis").

There can be little doubt about the confusing manner in which Plaintiffs would attempt to use Mr. Stejskal's testimony at trial. While attempting in their response brief to reconcile Mr. Stejskal's deposition concession that ███████████████████████████████ ██████ Plaintiffs quote an unrelated antitrust case for the proposition that "[t]he fact that a *select few* customers have or are able to switch does not necessarily demonstrate that switching costs are not significant for the majority of the customers." Opp. 9 (citing *Collins Inkjet Corp. v. Eastman Kodak Co.*, 2014 WL 11516553, at *10 (S.D. Ohio Mar. 21, 2014)). That Plaintiffs would offer that analogy should set off alarm bells. Far from a "select few," the switching data produced in this case—which Mr. Stejskal never looked at—show literally thousands of dealerships switched DMS providers during the relevant period. Dkt. 966 at 74-76. Rule 702 requires not just experience, but also that the expert "connect his experience to the facts of the case." *Potts v. Manos*, 2017 WL 4365948, at *5 (N.D. Ill. Sept. 29, 2017). Mr. Stejskal has not done so.

3

It is not sufficient to say that these matters can be dealt with through cross-examination. *See*, *e.g.*, Opp. 9, 12, 15. Mr. Stejskal's opinions on DMS switching, without any basis in data, are simply unhelpful to a jury in the first instance. Mr. Stejskal's opinions on this subject would be akin to a damages expert providing an opinion, based on his or her "experience," that damages should generally be "large" in a certain type of case. No court would allow that kind of damages testimony, nor should Mr. Stejskal be allowed to testify as an "expert" on this inherently data-intensive topic.

### B. Mr. Stejskal's switching opinions are unreliable.

Second, because Mr. Stejskal attempts to cover an inherently quantitative subject with anecdotal experience rather than real data, his opinion is not just irrelevant and unhelpful to a jury, but also inherently unreliable. Defendants' opening brief outlines an extensive body of cases excluding unreliable expert testimony that relies chiefly on the expert's subjective memory, rather than a verifiable body of data. *See*, *e.g.*, Dkt. 884 at 4-5. Mr. Stejskal's subjective testimony about DMS switching is not "based on sufficient facts or data" and is not "the product of reliable principles and methods." *See* Fed. R. Evid. 702.

Plaintiffs' flagship arguments that Mr. Stejskal has "extensive experience" and "is more than qualified to opine on the customs and practices in the automotive retail industry" miss the point. Mr. Stejskal's opinions on DMS switching are not "customs and practices" testimony—they are an attempt to convert a quantitative market inquiry into an anecdotal one. *See, e.g.*, *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748, 755 (N.D. Ill. 2009) ("anecdotal data" were unreliable bases for opinion on "the objective quality of [defendant's] wallboard").

Moreover, even extensive experience in a given industry does not give an expert a free pass through the gatekeeping requirements of *Daubert* and Rule 702. Indeed, Plaintiffs' suggestion that Mr. Stejskal's experience absolves him of the requirements of Rule 702 gets things "exactly

4

backwards"—if that were so, experts relying on purported "practical experience" could "escape screening by the district court simply by stating that their conclusions were not reached by any particular method or technique." *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997). For example, in *Driver v. AppleIllinois, LLC*, the court allowed an expert in the restaurant industry to testify about "mechanics and structure of tip pools that he has observed," but excluded his proposed opinions as to whether 2.5% was a reasonable and customary tip pool contribution because his analysis lacked sufficient quantitative and analytical support. 2011 WL 4007337, at *7-9.

In another case in this district, the court excluded the testimony of an industry expert on reliability grounds despite acknowledging the various holdings upon which Plaintiffs rely that expert testimony *may* be based on "a set of observations based on extensive and specialized experience." *Crawford Supply Group, Inc. v. Bank of America, N.A.*, 2011 WL 4840965, *2 (N.D. Ill. Oct. 12, 2011) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010)). But as the *Crawford Supply Group* court highlighted, "if the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." 2011 WL 4840965, at *3 (excluding opinion of banking expert because he "never draws explicit connections between specific incidences or lessons from his professional history" and his conclusions in the case).

As discussed above, Mr. Stejskal's DMS switching testimony fails to meet those standards. Far from tying his experience to the facts of this case, Mr. Stejskal failed even to look at any actual dealer switching data. And even if, in theory, Mr. Stejskal could have articulated a reliable opinion based purely on his own experience and memories,

5

██████████████████████████████████████████████████████████

██████████████████████████████████████ Trumpeting a witness's experience, without explaining how that experience reliably led the witness to a particular conclusion, is by definition "ipse dixit" and warrants exclusion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Jordan v. City of Chicago*, 2012 WL 254243, at *7 (N.D. Ill. Jan. 27, 2012) (expert's "[v]ast experience with firearms" could not support opinion that "certain firearms are favored in the criminal community" absent an explanation of "how his experience compels his conclusion").

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████ These are not mere "inconsistencies" that should be explored in cross-examination—they are further confirmation that Mr. Stejskal has no basis to offer a reliable expert opinion on DMS switching, from "experience" or otherwise.

Nor can Plaintiffs prop up Mr. Stejskal's opinions with distinguishable cases like *Metavante* or *Jesa Enters. Ltd. v. Thermoflex Corp*. *See* Opp. 7. *Metavante* merely affirmed the admission (in a bench trial) of a financial services technology expert's testimony as to the inherently subjective issue of whether a party performed a contract in a "commercially reasonable manner." 619 F.3d at 755-56, 61. Likewise, the expert testimony allowed in *Jesa* was garden-variety "customs and practices" testimony where the industry expert explained the general purpose and history of a certain type of agreement, and the customary duration of a certain type of sales commissions in the industry. 268 F. Supp. 3d 968, 974 (E.D. Mich. 2017). Importantly, the *Jesa*

6

court noted that the type of "experience" testimony it was allowing "does not lend itself to scientific evaluation." *Id.*

Perhaps the same could be said about many of Mr. Stejskal's industry opinions that Defendants have not challenged, but his DMS switching opinions trespass directly onto turf that necessarily should be addressed by rigorous econometric and statistical analysis. Mr. Stejskal has performed no such analysis and does not point to any specific instances from his anecdotal experience that support his DMS switching opinions. Rather, he speaks in generalities about "switching costs" but makes no attempt to quantify them or tie them to actual switching behavior. Mr. Stejskal's opinions regarding DMS switching should be excluded.

## II. MR. STEJSKAL'S DATA-SECURITY OPINIONS SHOULD BE EXCLUDED.

### A. Mr. Stejskal's opinion regarding the security of working with third-party integrators is unreliable and not informed by specialized knowledge.

Despite substantial hand-waving about Mr. Stejskal's "extensive experience" in the industry, Plaintiffs concede that Mr. Stejskal is not a cybersecurity expert. Opp. 13.

Plaintiffs try to correct for this obvious hole in Mr. Stejskal's expertise by making the curious distinction that "Plaintiffs are entitled to offer experts on this topic from a *commercial* perspective, not just from a *technical* perspective." Opp. 14 (emphasis in original). Whatever "from a commercial perspective" could even mean in this context, it is beside the point because Mr. Stejskal does not draw that distinction. Rather, Mr. Stejskal's report opines that t, in a way that the jury could only interpret as a cybersecurity opinion.

7

Regardless, if Plaintiffs are now suggesting that Mr. Stejskal will opine essentially that "third-party integrators must be secure because otherwise dealers wouldn't use them," that type of testimony would be circular, unreliable, and patently unhelpful to the jury. *See Lemmerman v. Blue Cross Blue Shield of Wis.*, 713 F. Supp. 2d 791, 802 (E.D. Wis. 2010) (opinion that "is utterly circular in its logic . . . is the epitome of an unreliable methodology").

Just like with Mr. Stejskal's unreliable DMS switching opinions, there are legitimate cybersecurity experts on both sides of this case. *See*, *e.g.*, Mot. Ex. 21, Stroz Rpt.; Reply Ex. 98, Schneck Rpt.; Reply Ex. 99, Tenaglia Rpt; Reply Ex. 100, Shostack Rpt. Mr. Stejskal simply is not one of them. His report does not suggest that he reviewed any materials relevant to the security practices and risks of third-party integrators, let alone performed any analysis of such materials. And despite his passing, general approval of the security of third-party integrators, he does not appear to have read (and certainly hasn't responded to) the multiple Defendants' expert reports detailing egregious security violations by Authenticom that were revealed in discovery. *See Davis v. Carroll*, 937 F. Supp. 2d 390, 413 (S.D.N.Y. 2013) (explaining that exclusion of non-scientific expert testimony is particularly appropriate "where a field is characterized by established standards for arriving at expert conclusions and a proposed expert fails to engage with those standards").

Finally, Plaintiffs do not and cannot dispute that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Plaintiffs' argument that Mr. Stejskal's citation to the Guidelines is not a "basis" to exclude his

8

opinions misunderstands Defendants' point. Defendants are not saying that the OSA standards are in and of themselves a "ground" for exclusion—the point is that they do not move the needle one bit in favor of demonstrating special expertise or reliability with respect to cybersecurity. Plaintiffs have the burden here and have failed to meet it.

### B. Mr. Stejskal has no reliable basis for the broad statement that "dealerships" take data security seriously.

Despite having worked for only one dealer group in his career, Mr. Stejskal broadly states in his report that ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ Mot. Ex. 12 ¶ 80. His experience provides no foundation for that broader opinion.

Plaintiffs' point that the one dealer group that Mr. Stejskal worked for (AutoNation) is the largest in the United States undermines, rather than strengthens, his ability to opine on the "seriousness" of dealers generally. It is well established in the record that large dealership groups devote far more attention and resources towards data security than an average dealership. ██


Finally, Plaintiffs argue that Mr. Stejskal claims experience interacting with other dealers in his career, but Mr. Stejskal "never draws explicit connections between specific incidences or lessons from his professional history" and his conclusion here. *Crawford Supply Co.*, 2011 WL

9

4840965, at *3. Again, Mr. Stejskal and Plaintiffs have not done enough to establish the admissibility of this opinion.

## CONCLUSION

For the reasons set forth above and in Dkt. 884, Defendants request that the Court exclude Mr. Stejksal's proposed testimony regarding DMS switching and the "data security" opinions described above.

Dated: July 8, 2020                                             Respectfully submitted,

/s/ *Aundrea K. Gulley*                                /s/ *Britt M. Miller*
Aundrea K. Gulley                                                 Britt M. Miller
Brian T. Ross                                                       Michael A. Scodro
Brice A. Wilkinson                                        Daniel T. Fenske
Ross A. MacDonald                                   Matthew D. Provance
GIBBS & BRUNS LLP                                 Jed W. Glickstein
1100 Louisiana Street                              MAYER BROWN LLP
Suite 5300                                                          71 South Wacker Drive
Houston, TX 77002                                 Chicago, IL 60606
(713) 751-5258                                          (312) 782-0600
agulley@gibbsbruns.com                    bmiller@mayerbrown.com
bross@gibbsbruns.com                        mscodro@mayerbrown.com
bwilkinson@gibbsbruns.com            dfenske@mayerbrown.com
rmacdonald@gibbsbruns.com           mprovance@mayerbrown.com
                                                                               jglickstein@mayerbrown.com

Michael P.A. Cohen
Leo D. Caseria                                                         Mark W. Ryan
SHEPPARD MULLIN RICHTER & HAMPTON, LLP      MAYER BROWN LLP
2099 Pennsylvania Avenue NW, Suite 100               1999 K Street NW
Washington, DC 20006                              Washington, DC 20006
(202) 747-1900                                          (202) 263-3000
mcohen@sheppardmullin.com                mryan@mayerbrown.com
lcaseria@sheppardmullin.com

                                                                              *Counsel for Defendant*
*Counsel for Defendant*                               *CDK Global, LLC*
*The Reynolds and Reynolds Company*

**CERTIFICATE OF SERVICE**

      I, Britt M. Miller, an attorney, hereby certify that on July 8, 2020, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF ALLAN STEJSKAL** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                              */s/ Britt M. Miller*
                                              Britt M. Miller
                                              MAYER BROWN LLP
                                              71 South Wacker Drive
                                              Chicago, IL 60606
                                              (312) 782-0600
                                              bmiller@mayerbrown.com