# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC*, No. 1:18-cv-868 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

# REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF MS. NANCY MIRACLE

**TABLE OF CONTENTS**

INTRODUCTION AND ARGUMENT ................................................................................... 1

    I.   Authenticom Does Not Defend The Flawed And Unreliable Standards
That Underlie Miracle's "Access Control" and "Circumvention" Opinions. ..................... 1

    II.  Miracle's CAPTCHA Opinions Are Contrary To Law And Unreliable. ........................... 3

    III. Miracle's Opinions Based On An Undocumented "Authenticom Security Interview"
Are Unreliable And Should Be Excluded. ........................................................................ 5

    IV. Miracle's "Creative Expression" Opinions Are Also Inadmissible .................................. 8

    V.  Any Remaining Testimony That Miracle Intends To Offer On "Technical"
Matters Should Be Excluded. .......................................................................................... 10

CONCLUSION ............................................................................................................................ 10

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amakua Dev. LLC v. Warner*,
2007 WL 2028186 (N.D. Ill. July 10, 2007)..................................................................................2

*American Honda Motor Co. v. Allen*,
600 F.3d 813 (7th Cir. 2010) ........................................................................................................3

*Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*,
2009 WL 1043974 (M.D. Fla. Apr. 17, 2009)..............................................................................6

*Durkin v. Platz*,
920 F. Supp. 2d 1316 (N.D. Ga. 2013) .......................................................................................9

*Eagle Services Corp. v. H20 Indus. Servs., Inc.*,
2005 WL 2406041 (N.D. Ind. Sept. 28, 2005) ............................................................................9

*Feuerstein v. Home Depot, USA Inc.*,
2014 WL 2616589 (D. Ariz. June 12, 2014) ...............................................................................2

*Gaiman v. McFarlane*,
360 F.3d 644 (7th Cir. 2004) .......................................................................................................9

*Goldberg v. 401 N. Wabash Venture LLC*,
755 F.3d 456 (7th Cir. 2014) .....................................................................................................10

*Gong v. Hirsch*,
913 F.2d 1269 (7th Cir. 1990) ...................................................................................................10

*Gopalratnam v. Hewlett-Packard Co.*,
877 F.3d 771 (7th Cir. 2017) .......................................................................................................5

*Matter of James Wilson Assocs.*,
965 F.2d 160 (7th Cir. 1992) .....................................................................................................10

*Janky v. Lake County Convention & Visitors Bureau*,
576 F.3d 356 (7th Cir. 2009) .......................................................................................................8

*Jonathan Browning, Inc. v. Venetian Casino Resort LLC*,
2009 WL 1764652 (N.D. Cal. June 18, 2009) ............................................................................9

*Klaczak v. Consol. Med. Transp. Inc.*,
2005 WL 1564981 (N.D. Ill. May 26, 2005)...............................................................................9

*Kohus v. Mariol*,
328 F.3d 848 (6th Cir. 2003) .......................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Paul Morelli Design, Inc. v. Tiffany & Co.*,
   200 F. Supp. 2d 482 (E.D. Pa. 2002) ....................................................................................... 9

*Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*,
   932 F. Supp. 220 (N.D. Ill. 1996) ............................................................................................ 9

*R.C. Olmstead, Inc., v. CU Interface, LLC*,
   606 F.3d 262 (6th Cir. 2010) .................................................................................................... 9

*Salgado v. Gen. Motors Corp.*,
   150 F.3d 735 (7th Cir. 1998) .................................................................................................... 8

*Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*,
   272 F.3d 441 (7th Cir. 2001) .................................................................................................... 9

*Swirsky v. Carey*,
   376 F.3d 841 (9th Cir. 2004) .................................................................................................... 9

*Team Play, Inc. v. Boyer*,
   391 F. Supp. 2d 695 (N.D. Ill. 2005) ....................................................................................... 9

*Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018) ................................................................................ 4, 5

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................................................................................ 6, 8

Fed. R. Evid. 702 ........................................................................................................................ 8, 9

**INTRODUCTION AND ARGUMENT**

Nancy Miracle's opinions are inadmissible under well-accepted standards governing the admission of expert testimony and this Court's prior opinions on the specific legal issues that she purports to address. In an effort to save Miracle's testimony from exclusion, Authenticom now attempts to backpedal from her opinions and recast them as "testimony regarding technical facts." But experts cannot testify to what the facts are, and the record makes clear that Miracle's opinions are irreparably intertwined with misstatements of law. Authenticom also does not deny that Miracle's opinions are based solely on her own subjective "experience," without support in any external sources, standards, or literature. Authenticom makes no effort to dispute these and many other points in its response brief. In short, Miracle's testimony is unhelpful to the jury and unreliable, and accordingly it should be excluded.[1]

**I.     Authenticom Does Not Defend The Flawed And Unreliable Standards That Underlie Miracle's "Access Control" and "Circumvention" Opinions.**

The opinions that Miracle disclosed in her report and described during her deposition purported to address ███████████████████████████████████████████████████████████████████████████████████████████████████ *See* Mot. Ex. 10 at ¶¶ 13, 14, 15, 16, 26, 27, 28, 29, 127; Mot. Ex. 11 at 56, 142-43, 171.[2] As Defendants explained, however, Miracle's answers to these questions constitute improper legal testimony, run contrary to the DMCA's plain text and numerous decisions interpreting the DMCA—including

---

[1] In this brief, "Mot. __" refers to the Memorandum of Law in Support of Defendants' Motion to Exclude the Opinions and Proffered Testimony of Ms. Nancy Miracle (Dkt. 886). "Mot. Ex. __" refers to the exhibits attached to the Declaration of Daniel T. Fenske (Dkt. 889). "Opp. __" refers to Plaintiff Authenticom, Inc.'s Opposition to Defendants' Motion to Exclude The Expert Testimony of Nancy Miracle (Dkt. 1007). "Opp. Ex. __" refers to an exhibit attached to that filing (Dkt. 1007). "Ex. __" refers to an exhibit attached to the Declaration of Daniel T. Fenske, filed concurrently.

[2] Authenticom initially described Miracle's testimony in exactly this way, advising the Court that its expert would "explain why" Reynolds's measures did not "effectively control[] access" and why "Authenticom's conduct did not constitute 'circumvention' of those security measures[.]" Dkt. 806 at 6.

this Court's prior rulings, and are based on nothing but Miracle's personal convictions about what these terms mean. Mot. 4-11. Rather than confront these obvious flaws in Miracle's opinions, Authenticom seeks to sidestep them by describing her proposed testimony as mere explanation of "technical" issues. *See* Opp. 1, 6, 12. But this tactic fails as a matter of law. The Miracle testimony that Authenticom reimagines breaks sharply with the opinions she disclosed, and Authenticom may not revise her opinions on the fly in response to Defendants' motion. *See Feuerstein v. Home Depot, USA Inc.*, 2014 WL 2616589, at *2 (D. Ariz. June 12, 2014) (rejecting arguments in brief that altered "the scope of [the expert's] report and the opinions he plans to offer").

Authenticom insists there must be a "misunderstanding" because Miracle's report states that she does not *intend* to offer legal opinions. Opp. 7. But that passing disclaimer is meaningless where the substance of her opinions focuses on defining and applying her personal standards ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.

What's more, Miracle's personal standards depart fundamentally from the DMCA's statutory text. Authenticom offers no response to the numerous contradictions Defendants identified between Miracle's opinions, on the one hand, and the DMCA's plain text (Mot. 5-7) and decisions from this Court and others interpreting the statute (*id.* 7-8), on the other. Nor does Authenticom deny the risks of jury confusion and prejudice to Defendants if Miracle is allowed to testify regarding her "expert" interpretation (legal or otherwise) of the DMCA's key statutory terms. *Id.* 4-5. Expert testimony like this that is "unmoored from the underlying legal framework" should be excluded as "irrelevant and/or misleading." *See Amakua Dev. LLC v. Warner*, 2007 WL 2028186, at *12 (N.D. Ill. July 10, 2007) (cited at Opp. 8).

Even if everything to this point could be ignored, Authenticom does not dispute that Miracle bases her ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ solely on her own subjective

2

"experience." Mot. 9-11; *see* Mot. Ex. 11 at 57. Nor does Authenticom dispute Miracle's testimony that ███████████████████████████████████████████████████████████

███████████████ Mot. 8-9. Instead, Authenticom asserts that consistency between Miracle's opinions and NIST is "irrelevant." Opp. 9 n.2. But that is incorrect. Whether Miracle's opinions align with standards accepted in the relevant scientific or technical community is a critical factor in evaluating the reliability of her opinions. *See* Mot. 9-11.[3] Alone, Miracle's rejection of generally accepted standards and her reliance solely on personal "experience" as the basis of her opinions warrants their exclusion under *American Honda Motor Co. v. Allen*, 600 F.3d 813 (7th Cir. 2010), and the other decisions discussed in Defendants' motion. *See* Mot. 10-11. But again, Authenticom offers no response and fails to address any of these cases in its brief. Accordingly, Miracle's opinions as to whether ████████████████████████████████████

████████████████████████████████████ (summarized at ¶¶ 13, 14, 15, 16, 26, 27, 28, 29, and 127 of Miracle's report) should be excluded.

## II.  Miracle's CAPTCHA Opinions Are Contrary To Law And Unreliable.[4]

In their motion, Defendants noted the inconsistency between Miracle's opinion that ████████████████████████████████ under her (or any) understanding of that term, and her

---

[3] Authenticom also argues that the NIST standards on these access control measures—which Miracle denies are "access controls" under her personal definition—are consistent with her opinions because the NIST standards also talk about "authorization." Opp. 9 n.2, 10 n.3. But Miracle's concept of "authorization" is completely different. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[4] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Mot. Ex. 10 at ¶¶ 34, 38, 41, 43. ████████████████████████████████████████████████████████████████ *See* Mot. 14; Opp. 10, 12-13.

3

agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mot. 11-14. Authenticom responds that Miracle intends to explain that "CAPTCHA is not used to control *who* accesses a system," but rather "the *method* of how a system is accessed." Opp. 11 (emphasis by Authenticom). Such purely semantic arguments are not helpful to a jury. When implementing CAPTCHA, Defendants each made the decision to exclude automated users. Whether one describes that as a "how" or a "who" exclusion is immaterial under the DMCA. Miracle admits as much, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants, as system operators, are entitled to technologically prevent that class of users from accessing their copyrighted materials, and the DMCA penalizes the use of technological countermeasures to thwart those defenses.

Turning to CAPTCHA circumvention, Miracle would opine that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This opinion is contrary to law. It contravenes "the growing number of courts that have concluded that circumvention of CAPTCHA and similar measures designed to distinguish between humans and non-humans violates the DMCA." *Ticketmaster L.L.C. v. Prestige Entm't W., Inc.*, 315 F. Supp. 3d 1147, 1167 (C.D. Cal. 2018); *see* Mot. 8 n.4 (citing additional authority). Again, Authenticom fails to address, much less distinguish, any of these cases in its response brief.

4

At the motion to dismiss stage, this Court interpreted the DMCA consistent with *Ticketmaster* and other decisions, holding that "Authenticom's use of an automated program to bypass CDK's use of a CAPTCHA does avoid and/or bypass the technological measure taken by CDK to prevent the use of automated programs." Dkt. 506 at 17. Miracle's opinions about CAPTCHA conflict irreconcilably with this Court's prior decisions and established law.

Nor has Authenticom or Miracle identified a single voice from the scientific community that talks about CAPTCHA in a manner consistent with Miracle's opinions. In contrast, Defendants identified multiple sources *cited in Miracle's own report* describing automated responses to CAPTCHA as "ways for bad actors to get around CAPTCHA systems" and "circumvent[] protections that prevent automated interactions with websites." Mot. 13; *see Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 786 (7th Cir. 2017) (affirming exclusion of expert witness who "chose . . . to cite only contrary sources" in his report). ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ This goes beyond raising questions about Miracle's "candor" and credibility, as Authenticom suggests. Opp. 12 n.5. It exposes what is really going on here: an expert tying herself in knots trying to explain an opinion that is unsupportable.

### III. Miracle's Opinions Based On An Undocumented "Authenticom Security Interview" Are Unreliable And Should Be Excluded.

Miracle's opinions regarding ████████████████████████████████████ ████████████████████████████████████████ should be rejected because they are based on an undocumented "Security Interview." Mot. 16-17, 19-20. Likewise, her partial rebuttal to Defendants' expert, Edward Stroz, should be excluded for the same reason.

5

Defendants' argument is not, as Authenticom suggests (at 14), that Miracle may not rely on facts she learned during an interview of Authenticom's employees. Rather, the problem with Miracle's reliance on the "Security Interview" is that she failed to document the interview and could not recall basic details about its substance. She could not remember who she spoke to, when the interview occurred, or any specific information she learned during the interview that informed her opinions. *See* Mot. 17; Mot. Ex. 11 at 125-26. She also testified that she conducted two different interviews, *id.*, while Authenticom maintains she participated in only one. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ This fails to meet the disclosure requirements of Rule 26(a)(2)(B) and warrants the exclusion of Miracle's opinions. *See Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 2009 WL 1043974, at *4 (M.D. Fla. Apr. 17, 2009) (expert who relies on "conferences or interviews" must "disclose the substance of those conferences and interviews in order for opposing parties to be fully informed regarding all of the information considered").

Authenticom's response that Miracle documented the substance of the "Security Interview" in her report, *see* Opp. 14 n.7, does not help matters. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ The answer that Miracle gave at her deposition—elicited by Authenticom on re-direct—is that ▆▆▆▆▆▆▆▆▆▆ came from the interview. Opp. 14 (emphasis by Authenticom); Mot. Ex. 11 at

304-05. █████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

Authenticom tries to distinguish cases cited in Defendants' motion (at 17) as "stand[ing] for the proposition that an expert may not rely on a client for the existence of the expertise that the expert purports to bring to the case." Opp. 15 n.8. But that proposition is fatal here, for other than relying on this undocumented and unsupported "interview," ███████████████

███████████████ Opp. 4; *see* Mot. 16.

And with respect to Miracle's partial rebuttal to Mr. Stroz, ███████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████████████████████

█████████████ Miracle cannot say whether the potential impact on Stroz's results was inconsequential or significant (or anything in between). She cannot even say who provided this information about query sharing during the "Security Interview." *Id.*

Authenticom's suggestion that Miracle will apply expert analysis to the issue by explaining that "software programmers 'share code with third parties for a wide variety of reasons,' including efficiency," Opp. 17 (quoting Mot. Ex. 10 at ¶ 124), does not withstand scrutiny. █████████

████████████████████████ More importantly, Authenticom's

7

*reason* for sharing queries with other hostile integrators does not bear on *how often* Authenticom shared its queries—an issue on which Miracle admits she has nothing to say.

### IV. Miracle's "Creative Expression" Opinions Are Also Inadmissible.

Authenticom now suggests that it may seek to elicit expert testimony from Miracle that "Authenticom's software does not encounter any technological measures before" accessing copyrighted elements of Defendants' software and that "the precise screens encountered by Authenticom's polling software" were merely "functional" and therefore not entitled to copyright protection. Opp. 16. As to CDK, these opinions should be barred because Miracle never disclosed them in her report. *See Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 741-42 & n.6 (7th Cir. 1998) ("Rule 26(a) expert reports must be 'detailed and complete'" and "include the substance of the testimony which an expert is expected to give on direct examination").[5] The same is true for all aspects of Reynolds's DMS with the exception of two specific pop-up windows within one ERA-IGNITE version of the DMS—the only portions she analyzed. Mot. Ex. 11 at 296-97.

In addition, Miracle's copyrightability opinions—whether certain features of those software windows exhibit "creative expression," Mot. Ex. 10 at ¶¶ 111-12—are barred under a straightforward application of Rule 702 and Seventh Circuit copyright law. Expert testimony is permitted if it, *inter alia*, "will help the *trier of fact* to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a) (emphasis added). "Under [Seventh Circuit] precedent, 'copyrightability is always an issue of law.'" *Janky v. Lake County Convention & Visitors Bureau*,

---

[5] T█████████████████████████████████████████████ The scant discussion of these issues in Miracle's report falls far short of the disclosure requirements imposed by Rule 26(a)(2)(B).

8

576 F.3d 356, 363 (7th Cir. 2009) (quoting *Gaiman v. McFarlane*, 360 F.3d 644, 648 (7th Cir. 2004)). Experts cannot testify as to issues of law, because their opinions are not helpful to the trier of fact. *Klaczak v. Consol. Med. Transp. Inc.*, 2005 WL 1564981, at *3 (N.D. Ill. May 26, 2005) (collecting cases). Courts routinely exclude copyrightability testimony on precisely that basis: there is no "trier of fact" that copyrightability testimony "will help . . . to determine a fact in issue." Fed. R. Evid. 702(a).[6] Authenticom's key case to the contrary—*Kohus v. Mariol,* 328 F.3d 848 (6th Cir. 2003)—is from the wrong side of a circuit split and therefore contrary to law in this Circuit. There, the Sixth Circuit set out a two-step test for the substantial similarity element of an indirect-proof infringement claim: (1) identifying copyrightable aspects of plaintiff's work and (2) determining based on those aspects whether defendant's work is substantially similar. *Id.* at 855-57. The Sixth Circuit treated both steps as fact issues. *Id.*[7] Seventh Circuit law is to the contrary: copyrightability is always an issue of law here.[8] Moreover, Reynolds is not making any indirect-

---

[6] *See Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 225 (N.D. Ill. 1996) (Easterbrook, J.); *see also Durkin v. Platz*, 920 F. Supp. 2d 1316, 1332–33 (N.D. Ga. 2013); *Jonathan Browning, Inc. v. Venetian Casino Resort LLC*, 2009 WL 1764652, at *1–2 (N.D. Cal. June 18, 2009); *Eagle Services Corp. v. H20 Indus. Servs., Inc.*, 2005 WL 2406041, at *8 n.5 (N.D. Ind. Sept. 28, 2005), *opinion clarified on denial of reconsideration*, 2006 WL 449210 (N.D. Ind. Feb. 22, 2006); *Paul Morelli Design, Inc. v. Tiffany & Co.*, 200 F. Supp. 2d 482, 487 (E.D. Pa. 2002).

[7] *See Kohus*, 328 F.3d at 857-58 (discussing need for expert copyrightability testimony because "a *lay person* is unlikely to understand what constitutes creativity in this area" (emphasis added)); *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 274-75 (6th Cir. 2010) (under *Kohus*, "the *factfinder* first asks what aspects of the copyrighted work, if any, are protected" (emphasis added)).

[8] The district court in *Team Play, Inc. v. Boyer*, 391 F. Supp. 2d 695, 699-700 (N.D. Ill. 2005), misapprehended Seventh Circuit law and erred in relying on *Kohus* and the Ninth Circuit's decision in *Swirsky v. Carey*, 376 F.3d 841 (9th Cir. 2004) to admit expert copyrightability testimony. As already discussed, *Kohus* treats copyrightability as a fact issue, and copyrightability is a mixed question of law and fact in the Ninth Circuit, *see Gaiman*, 360 F.3d at 648 (noting circuit split). The only Seventh Circuit case on which *Team Player* relied—*Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441 (7th Cir. 2001)—did not consider or decide the propriety of the expert testimony discussed, and that testimony was on the *second* step of the substantial-similarity test (the extent to which one doll physically resembled another), not the first (what aspects of the doll were copyrightable). *Id.* at 447. Given the Seventh Circuit issue-of-law rule, it is unsurprising that *Team Player* is the only case in this circuit to cite *Kohus* approvingly.

9

proof copyright claims in the first place (because Authenticom undisputedly engaged in wholesale copying), so these cases are wholly inapposite.

## V. Any Remaining Testimony That Miracle Intends To Offer On "Technical" Matters Should Be Excluded.

As noted above, Authenticom may be suggesting that if Miracle's primary opinions are excluded, it still intends to call her as an expert to convey certain "technical facts" to the jury. Opp. 1; *see id.* at 12 ("Ms. Miracle will explain the technical means that Authenticom used to respond to Defendants' measures"); 13 ("she will explain to the jury how Authenticom's Profile Manager program functioned"); 15-16 ("Ms. Miracle will explain to the jury . . . what happens technically when Authenticom's software attempts to access Defendants' DMS"). This is impermissible.

The Court "must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence" by presenting a party's *factual* contentions to the jury. *Matter of James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992) (citing *Gong v. Hirsch*, 913 F.2d 1269, 1272-73 (7th Cir. 1990)). That rule applies with particular force here, where most of the facts that Miracle would convey purportedly come from an undocumented, inadmissible "Security Interview" in which she claims to have learned about Authenticom's practices and a series of videos she reviewed on Authenticom's "polling" process. *See supra* at 5-7; Mot. 16-17; 20; *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014) ("An expert witness is not permitted to parrot what some lay person has told him and testify that he believes the person was being truthful."). Authenticom can seek to admit these facts, if at all, through its own employees. An expert cannot testify as to facts, and an expert who merely parrots them adds nothing of value for the jury's consideration.

## CONCLUSION

Defendants' motion to exclude the expert testimony of Nancy Miracle should be granted.

Dated: July 8, 2020

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com
jglickstein@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

## **CERTIFICATE OF SERVICE**

      I, Britt M. Miller, an attorney, hereby certify that on July 8, 2020, I caused a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE OPINIONS AND PROFFERED TESTIMONY OF MS. NANCY MIRACLE** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all persons by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                                       */s/ Britt M. Miller*
                                                       Britt M. Miller
                                                       MAYER BROWN LLP
                                                       71 South Wacker Drive
                                                       Chicago, IL 60606
                                                       (312) 782-0600
                                                       bmiller@mayerbrown.com