**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**FILED UNDER SEAL** |

**MDL PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION**
**TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD M. STROZ**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 1

I. Mr. Stroz is Unqualified To Offer Opinions that Require Statistical Expertise .......... 1

II. Mr. Stroz's Statistical Analyses Are Riddled With Error .......... 2

A. Mr. Stroz's Yes/No Prompt Calculations Are Not Reliable .......... 2

B. Mr. Stroz's Profile Manager Calculations Are Not Reliable .......... 5

C. Mr. Stroz's CAPTCHA Calculations Are Not Reliable .......... 7

III. Mr. Stroz's Opinions With Respect To The Dealers Are Unhelpful And Unreliable .......... 7

IV. Three of Mr. Stroz's Cybersecurity Opinions Should Be Stricken .......... 9

CONCLUSION .......... 10

## INTRODUCTION

Defendants admit Edward Stroz is unqualified in statistical sampling and extrapolation, which he purports to use to quantify alleged DMCA violations. They have no persuasive response to the fundamental defects in his sampling and extrapolation methods, which are plainly unreliable. As to Mr. Stroz's opinions regarding security – the only topic on which he is qualified – several of his opinions should be excluded because they do not fit the facts or are legal conclusions.

## ARGUMENT

### I. Mr. Stroz is Unqualified To Offer Opinions that Require Statistical Expertise

Mr. Stroz has no statistical expertise. *See* Dkt. 861, Mem. 4-5. Nonetheless, he purports to use extrapolation [REDACTED] [REDACTED].[1] *See id.* at 4, 14, 20. As courts routinely hold, those without any qualifications in statistics cannot offer expert opinions based on statistical techniques.[2]

Defendants do not deny Mr. Stroz is unqualified in statistics. *See* Dkt. 995, Opp. 10 ("Stroz never claimed to be a statistician or to offer opinions to a degree of statistical precision.").[3] Instead, they offer the head-scratching rejoinder that "the law does not demand expertise in statistics to render any opinion that draws on any kind of extrapolation." *Id.* But sampling and extrapolation

---

[1] *See* Dkt. 861-2, Rubinfeld Rep. ¶ 78 & Table 5.

[2] *See, e.g.*, *In re Yamaha Motor Corp. Rhino ATV Prods. Liab. Litig.*, 816 F. Supp. 2d 442, 451 (W.D. Ky. 2011) (precluding "expert in off-road vehicle handling and operation" from offering accident rate testimony because "[he] is not a statistician" and the testimony "is outside his area of expertise and unsupported"); *Nutri Pharm. Research Inc. v. Stauber Performance Ingredients, Inc.*, 2019 WL 6718084, at *5-6 (D. Nev. Dec. 10, 2019) (chemist who "is not a statistician, has no background in statistics, and did not consult a statistician in coming to her conclusion" "will not be allowed to testify regarding statistical conclusions"); *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2012 WL 8134012, at *22 (C.D. Cal. Apr. 27, 2012) ("But Gottlieb is not a statistician, so he cannot reliably extrapolate his broad conclusion from the 'small sample' he used.").

[3] Defendants' reliance on *Stutzman v. CRST, Inc.*, 997 F.2d 291 (7th Cir. 1993), is misplaced. There, unlike here, the experts' qualifications were not challenged. *See id.* at 296.

are statistical techniques that require training in statistics. Defendants offer no authority supporting any "kind of extrapolation" a layperson without any statistics training is qualified to perform.

The undue prejudice of allowing Mr. Stroz to offer statistical opinions is manifest. A jury will be more likely to credit his flawed extrapolations – despite his lack of statistics expertise – because of his unrelated expertise in computer security. That is why the Seventh Circuit has emphasized that experts' qualifications must extend to all of the opinions they intend to offer. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[W]e must look at each of the conclusions he draws individually to see if he has the adequate education, skill, and training to reach them.").

Prof. Rubinfeld's reply opinions cannot save Mr. Stroz. Prof. Rubinfeld *relied on* Mr. Stroz's sampling method for his own further computations; he did not purport to conduct Mr. Stroz's sampling and extrapolation anew. Nor could he have: by the time Prof. Rubinfeld addressed the issue in his reply expert report, it was far too late for him to tag-in for Mr. Stroz. Prof. Rubinfeld's qualifications thus cannot save Mr. Stroz's opinions from exclusion.

## II. Mr. Stroz's Statistical Analyses Are Riddled With Error

### A. Mr. Stroz's Yes/No Prompt Calculations Are Not Reliable

Mr. Stroz's opinion [redacted] is based on his analysis of [redacted] *See* Dkt. 861, Mem. 3-4. Mr. Stroz did not randomly select that [redacted] – the definition of a convenience sample.[4] *Id*. at 6. Because Mr. Stroz did not randomly select his

[4] CDK's claim (at 11-12) that this is not a "convenience sample" is incorrect. *See Hostetler v. Johnson Controls, Inc.*, 2016 WL 3662263, at *12 (N.D. Ind. July 11, 2016) (plaintiffs' sample was a "sample of convenience" where it only included potential class members whose phone numbers were available in the public records).

sample, he needed to take additional steps to ensure it was representative [REDACTED] [REDACTED], or else his extrapolation could be biased. *See* Ex. A, Federal Judicial Center, *Reference Manual on Scientific Evidence* 382 (3d ed. 2011) ("[W]hen respondents are not selected randomly from the relevant population, the expert should be prepared to justify the method used to select respondents. Special precautions are required to reduce the likelihood of biased samples.").

CDK accepts – as it must – Mr. Stroz made no attempt to analyze whether [REDACTED] [REDACTED] was representative of the [REDACTED]; nor did Mr. Stroz attempt to correct for any potential sample bias. *See* Dkt. 995, Opp. 11-12. As the Seventh Circuit has held, this requires exclusion. *See* Dkt. 861, Mem. 10 (discussing *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005)). Contrary to CDK's position (at 11), ensuring representativeness – or if not, correcting for potential bias – is "not a question of weight that rests on the factual underpinnings of a reliably applied methodology, but a threshold question of the adequacy of the methodology." *Hostetler*, 2016 WL 3662263, at *15; *see also Hurt v. Commerce Energy, Inc.*, 2015 WL 410703, at *6 (N.D. Ohio Jan. 29, 2015) (excluding expert testimony using convenience sample, assuming representativeness, and failing to account for bias). Extrapolation from an improperly drawn sample is worthless (and, worse, misleading, *see* Fed. R. Evid. 403) – garbage in, garbage out.

CDK's cases are not to the contrary. In *DeLeon-Reyes v. Guevara*, 2019 WL 4278043 (N.D. Ill. Sept. 10, 2019), there was no dispute about representativeness – just how many years of police records the city should produce. The court stated merely that "*sample size* will likely affect only the weight, not admissibility, of Plaintiffs' expert's opinions." *Id.* at *11 (emphasis added). And in *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239 (S.D. Ill. 2015), there was no statistical extrapolation – just a consumer survey assessing whether product labeling was likely to mislead

consumers. *See id.* at 244-46. Neither court suggested extrapolation based on an unrepresentative sample would be admissible – a notion at odds with Circuit precedent and statistical principles.

CDK confirms exclusion is required by asserting (at 12) "it was reasonable to assume that the sample was representative." Statisticians do not *assume* representativeness; they take steps Mr. Stroz did not to *ensure* representativeness. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (courtroom expert must use same level of rigor as field expert). That "assumption" is also wrong. As Plaintiffs have explained (Mem. 7), the sample was meaningfully different from the broader population. [REDACTED] *See* Dkt. 861-4, O'Brien Rep. ¶¶ 24-25 & Table 1. Other evidence indicates [REDACTED].[5] By using a biased sample of high-usage accounts, Mr. Stroz arbitrarily inflated his estimate for the population. CDK provides no serious response to this problem; it just asserts (at 13) – without support or analysis – that any variation in usage between accounts [REDACTED]. Counsel's *ipse dixit* fares no better than Mr. Stroz's.

Numerous other methodological flaws infect Mr. Stroz's analysis. *See* Dkt. 861, Mem. 11-13. He did not bother to verify [REDACTED]. He conceded many accounts failed the criteria he used [REDACTED] in his CAPTCHA analysis,[6] and [REDACTED]

---

[5] *See* Ex. B, CDK-0001429 [REDACTED]

[6] Mr. Stroz's CAPTCHA analysis [REDACTED], but his Yes/No analysis included them. *See* Dkt. 861, Mem. 13. Similarly, although his CAPTCHA analysis only considered [REDACTED] for his Yes/No analysis without testing or analysis. *See*



[redacted]. *See* Dkt. 861-3, Stroz Dep. 117:2-119:9. Mr. Stroz further conceded [redacted], *id.* 88:7-89:8, [redacted], *id.* 158:6-159:21, and [redacted], *id.* 165:21-166:11. These errors are so pervasive as to render his testimony unreliable. *See* Dkt. 861, Mem. 9-13.

Prof. Rubinfeld's [redacted] does not cure Mr. Stroz's failures. For one, Prof. Rubinfeld did not [redacted][7] – the very question that needed to be answered. His precision opinions are meaningless given that the sample was not representative. *See Hurt*, 2015 WL 410703, at *6 ("[T]he confidence intervals would be based around an already biased value."). And at any rate, a party may not employ a second expert to fix the defects in another expert's unreliable methods. *See Bone Care Int'l LLC v. Pentech Pharm., Inc.*, 2010 WL 3928598, at *7 (N.D. Ill. Oct. 1, 2010).[8]

**B. Mr. Stroz's Profile Manager Calculations Are Not Reliable**

For Profile Manager, Mr. Stroz *designed* the sample to be biased by [redacted]. *See* Dkt. 861, Mem. 14-15; Dkt. 861-1, Stroz Rep. ¶ C44 [redacted] A sample that is biased by design is clearly unreliable. *See U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 233-34 (S.D.N.Y. 2004) (biased sample warranted exclusion under *Daubert*).

---

Dkt. 861-3, Stroz Dep. 107:23-109:15. These errors infect not only Mr. Stroz's extrapolations, but also the [redacted] CDK falsely claims (at 10) are beyond dispute. Although Mr. O'Brien agreed [redacted], he never agreed that was an accurate [redacted]. *See* Dkt. 861-4, O'Brien Rep. ¶ 36.

[7] *See* Dkt. 861-6, Rubinfeld Reply Rep. ¶ 7; Dkt. 861, Mem. 10-11.

[8] CDK's attempt to distinguish *Bone Care* (at 14) is unavailing – there, as here, the party tried to salvage a defective analysis by asking a second expert to vouch for the conclusions. The *Bone Care* court struck the initial testimony even applying a relaxed *Daubert* standard for bench trials.



CDK claims (at 22) this exclusion was proper because [REDACTED] "could not provide useful data to distinguish manual versus automated access." But Mr. Stroz simply assumed [REDACTED] and then excluded all data points inconsistent with that assumption (even though [REDACTED]. Then, after purposely designing a sample [REDACTED] Mr. Stroz extrapolated that figure [REDACTED] Mr. Stroz conceded [REDACTED] *See* Dkt. 861-3, Stroz Dep. 185:23-188:5; 191:13-192:8; 195:10-198:12; 199:20-204:18. But he did not assess [REDACTED] or exclude [REDACTED] from his extrapolations. Instead, Mr. Stroz ignored the record evidence establishing that [REDACTED].[9] Mr. Stroz's biased-by-design sample and extrapolations are indefensible and should be excluded. *See U.S. Info. Sys.*, 313 F. Supp. 2d at 233.

Mr. Stroz further erred in [REDACTED] to which he extrapolated his biased sample. He intentionally [REDACTED] *See* Dkt. 861, Mem. 17-18.[10] CDK tries to defend these built-in biases by claiming they go to weight, or are Authenticom's fault for not providing better data. But they are yet further indications of the lack of reliability of an extrapolation Mr. Stroz was wholly unqualified to perform.

[9] CDK argues (at 21) that Mr. Stroz's biased sample did not affect his calculation of [REDACTED]. That is wrong. Mr. Stroz used his assumption [REDACTED] to justify assuming [REDACTED] which is otherwise unsupported.

[10] For the reasons discussed in Authenticom's Memorandum in Support of Its Motion for Summary Judgment, Dkt. 978 at 45-46, and Dealership Counter-Defendants' Memorandum in Support of Their Motion for Summary Judgment, Dkt. 965 at 78-81, Mr. Stroz further erred by improperly assuming (contrary to law) that [REDACTED] is a DMCA violation. It is not.

### C. Mr. Stroz's CAPTCHA Calculations Are Not Reliable

Mr. Stroz purports to identify [redacted] *See* Dkt. 861-1, Stroz Rep. ¶¶ C20-21. But Mr. Stroz admitted he lacks expertise in [redacted] or in computer coding generally. *See* Dkt. 861-3, Stroz Dep. 46:8-20, 190:14-19; Dkt. 995, Opp. 5 n.4. Mr. Stroz thus has no basis to [redacted] *See* Dkt. 861, Mem. 20-21; *NorthMobileTech LLC v. Simon Prop. Grp., Inc.*, 2012 WL 12996205, at *4 (W.D. Wis. July 9, 2012) (interpretation of computer code "is a high-level skill").

CDK tries to water down Mr. Stroz's opinions (at 5) by claiming he merely purported to [redacted] But Mr. Stroz did not know how [redacted]. *See* Dkt. 861-1, Stroz Rep. ¶ C19; Dkt. 861-3, Stroz Dep. 34:24-37:2. Thus, Mr. Stroz's analysis can hardly be recast as an attempt at [redacted] Moreover, even if it could, [redacted],[11] so Mr. Stroz is no more qualified to "check" [redacted] himself.[12]

## III. Mr. Stroz's Opinions With Respect To The Dealers Are Unhelpful And Unreliable

Mr. Stroz's analysis of alleged DMCA violations by the dealers will be unhelpful to a jury because he does not attribute violations to specific dealerships; instead, he lumps dealership groups

---

[11] *See* Ex. C, CDK-2888647 at 654 [redacted]

[12] [redacted] *See* Dkt. 861, Mem. 20-21. He never tested that assumption. *See* Dkt. 861-3, Stroz Dep. 119:5-9. CDK cannot get around this methodological flaw by relying (at 17) on documents Mr. Stroz never considered. *See In re Testosterone Replacement Therapy Prods. Liab. Litig.*, 2017 WL 4772759, at *7 (N.D. Ill. Oct. 23, 2017).

together. This is impermissible because liability must be assessed individually. *See* Dkt. 861, Mem. 19, 23. CDK asserts (at 24) that "even if the jury needed to assign violations to individual dealerships, Stroz's opinion would still assist in doing so because it defines the *total* violations to be allocated." But CDK never explains how the jury is supposed to determine the number of violations by an individual dealership (what the jury must answer) from the total number of violations for a dealership group [REDACTED] CDK only claims (at 24) – without any support – that it can supplement Mr. Stroz's testimony with "further evidence tying violations to particular dealerships." Even if CDK could do so – which it has not demonstrated – this only confirms Mr. Stroz's testimony will be unhelpful to the jury because the jury would need to rely on *other* evidence to answer the pertinent questions Mr. Stroz did not analyze.[13]

CDK also completely fails to respond to Plaintiffs' arguments (Mem. 17-18) regarding the unreliability of Mr. Stroz's testimony as to the Warrensburg Counter-Defendants – that is, (a) Mr. Stroz's opinion regarding [REDACTED] (b) Mr. Stroz had no reliable basis for [REDACTED][14] (c) the single piece of [REDACTED] on which Mr. Stroz relies is unreliable, as it [REDACTED]

[13] Dealership Counter-Defendants' summary judgment reply brief will respond to CDK's arguments for the imposition of joint and several liability under the DMCA.

[14] *See Wasson v. Peabody Coal Co.*, 542 F.3d 1172, 1176 (7th Cir. 2008) (opinion based on only one month of data from one customer was unreliable).



[15] and (d) because Mr. Stroz lacks evidence By failing to respond (other than offering the weak excuse (at 20) that CDK concedes each point. *See USAA Fed. Sav. Bank v. PLS Fin. Servs., Inc.*, 260 F. Supp. 3d 965, 971 (N.D. Ill. 2017); *De v. City of Chicago*, 912 F. Supp. 2d 709, 733-34 (N.D. Ill. 2012). His opinions as to the Warrensburg Counter-Defendants must therefore be excluded.

## IV. Three of Mr. Stroz's Cybersecurity Opinions Should Be Stricken

Defendants' arguments regarding Mr. Stroz's flawed cybersecurity opinions all fail.

*First*, Defendants attempt to defend (at 24) Mr. Stroz's bare conclusion that by pointing to other statements in his report that have nothing to do with that conclusion. Mr. Stroz stated . *See id*. (citing Dkt. 861-7, Stroz Reply Rep. ¶ 74). But whether has no bearing on whether development of APIs also would have been an adequate means to address security concerns.[16] Mr. Stroz's claim that is also just *ipse dixit*: nowhere does he attempt

[15] *See Oracle Am., Inc. v. Google Inc.*, 2016 WL 2342365, at *7-8 (N.D. Cal. May 3, 2016) (excluding projection of lost profits based on outdated licensing revenue forecasts where expert failed to explain their relevance to future projections).

[16] *See* Ex. D, REYMDL00178570 at 593 Ex. E, CDK-2968715 at 715.004 ; *see also* Ex. F, Prelim. Inj. Hr'g Tr. 1-P-127:14-20, *Authenticom, Inc. v. CDK Global, LLC*, No. 17-318 (W.D. Wis.), Dkt. 164.



to explain [redacted]

*Second*, as Plaintiffs noted (Mem. 24), Mr. Stroz unquestioningly relied on [redacted] Defendants argue (at 25) that he was "entitled to 'rely on his client's version of the facts.'" "When an expert's proffered opinion merely parrots information provided to him by a party, [however,] that opinion is generally excluded." *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009).[17]

*Third*, Defendants concede (at 25) Mr. Stroz opines that [redacted] This is plainly an impermissible legal opinion. *See Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969). Contrary to Defendants' claim (at 25), Mr. Stroz did not merely assume their interpretation [redacted] he impermissibly offered his own *opinion* supporting it. *See* Dkt. 861-7, Stroz Reply Rep. ¶ 5 [redacted] That opinion should be excluded.

**CONCLUSION**

Mr. Stroz's DMCA calculations should be excluded in full, and his cybersecurity opinions in part.

---

[17] *Harris v. City of Chicago*, 2017 WL 2436316, at *12 (N.D. Ill. June 5, 2017), is distinguishable because the expert there performed a psychological assessment based on statements from the client. Here, Mr. Stroz merely parrots [redacted] in his calculations without any attempt at verification.

Dated: July 8, 2020

Respectfully submitted,

*<u>/s/ Peggy J. Wedgworth</u>*
Peggy J. Wedgworth
**MILBERG PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, 19th Floor
New York, NY 10119
(212) 594-5300
pwedgworth@milberg.com

*<u>/s/ Derek T. Ho</u>*
Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*MDL Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I, Derek T. Ho, an attorney, hereby certify that on July 8, 2020 I caused a true and correct copy of the foregoing **MDL PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE EXPERT TESTIMONY OF EDWARD M. STROZ** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

*/s/ Derek T. Ho*

Derek T. Ho
**KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com