# Exhibit F

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

AUTHENTICOM, INC.

        Plaintiff,

-vs-                        Case No. 17-CV-318-JDP

CDK GLOBAL, INC., LLC       Madison, Wisconsin
and THE REYNOLDS and        June 26, 2017
REYNOLDS COMPANY,          1:50 p.m.

        Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT-FIRST DAY OF EVIDENTIARY HEARING
**AFTERNOON SESSION**
    HELD BEFORE THE HONORABLE JAMES D. PETERSON,

APPEARANCES:

For the Plaintiff:
        Godfrey & Kahn S.C.
        BY:  JENNIFER GREGOR
        One East Main Street, Ste. 500
        Madison, Wisconsin  53703

        Kellogg, Hansen, Todd, Figel & Frederick, PLLC
        BY:  MICHAEL NEMELKA
            AARON PANNER
            DAVID SCHWARZ
            DEREK HO
            JOSHUA HAFENBRACK
            KEVIN MILLER
            JOHANNA ZHANG
       1615 M Street, NW, Ste. 400
        Washington, DC  20036

Also present:  Stephen Cottrell - Authenticom president
              Steve Robb - IT technician

       Lynette Swenson   RMR, CRR, CRC
     U.S. District Court Federal Reporter
      120 North Henry Street, Rm. 520
       Madison, Wisconsin  53703

```
 1   APPEARANCES CONTINUED:

 2   For Defendant CDK Global, LLC:

 3              Foley & Lardner
               BY:  JEFFREY SIMMONS
 4             150 East Gilman Street
               Madison, Wisconsin  53703
 5
               Mayer Brown, LLP
 6             BY:  BRITT MILLER
                    MATTHEW PROVANCE
 7             71 South Wacker Drive
               Chicago, Illinois  60606
 8
               Mayer Brown LLP
 9             BY:  MARK RYAN
               1999 K Street, NW
10             Washington, DC  20006-1101

11   Also appearing:  Lee Brunz - General Counsel CDK Global
                       Nick Hey - IT technician
12

13   For Defendant The Reynolds and Reynolds Company:

14             Perkins Coie LLP
               BY:  CHARLES CURTIS, JR.
15             One East Main Street, Ste. 201
               Madison, Wisconsin  53703
16
               Sheppard Mullin Richter & Hampton, LLP
17             BY:  MICHAEL COHEN
               2099 Pennsylvania Avenue, NW,  Ste. 100
18             Washington, DC  20006

19             Gibbs & Bruns, LLP
               BY:  AUNDREA GULLEY
20                  BRIAN ROSS
                    BRICE WILKINSON
21             1100 Louisiana Street, Ste. 5300
               Houston, Texas  77002
22

23   Also appearing:  Robert Schaefer - VP Data Services
                       Kelly Hall - Senior VP Software Dev.
24

25
```

1                            I-N-D-E-X

2    PLAINTIFF'S WITNESSES          EXAMINATION              PAGES

3    STEPHEN COTTRELL        Cross by Mr. Ryan              7-41
                            Cross by Mr. Ross              42-58
4    PETER SWIRE            Direct by Mr. Schwarz          58-85
                            Cross by Mr. Wilkinson         86-103
5                           Cross by Ms. Miller            103-108
                            Redirect by Mr. Schwarz        108-110
6    BRIAN MAAS             Direct by Ms. Gregor           180-185
                            Cross by Ms. Gulley            185-187
7    MICHAEL KORP           Direct by Mr. Hafenbrack       188-200
                            Cross by Ms. Gulley            201-206
8                           Cross by Mr. Provance          207-213
                            Redirect Mr. Hafenbrack        213-215
9                           Cross by Ms. Gulley            215-216

10   DEFENDANTS' WITNESSES

11   ERIC ROSENBACH         Direct by Ms. Miller           111-154
                            Cross by Mr. Schwarz           154-178
12                          Redirect by Ms. Miller         178-179

13

14                           E-X-H-I-B-I-T-S

15   PLAINTIFF'S EXHIBITS                     IDENTIFIED/RECEIVED

16   Ex. 55      McCray notes                    37         ---
        96       ISAC form                       ---        178
17

18   DEFENDANTS' EXHIBITS

19   Ex. 11                                      ---        213
        12                                       ---        213
20      13       CDK MSA                         212        213
        181      Authenticom response            40         40
21      186      Query data                      146        145

22

23                           *  *  *  *  *

24          THE CLERK:  This Honorable Court is again in

25   session.  Please be seated and come to order.

1    I talked about the other things, the principles that are

2    important, that close attention to access management is

3    something that is very important.  And both of these

4    firms pay close attention to that because again,

5    credentials are the most important thing when it comes to

6    cybersecurity.  They are keys to the castle.  You can

7    architect it beautifully, but if someone gives you the

8    keys, you can come in.

9        Also I think that both place a pretty high premium

10   on educating both their internal work force and their

11   customers about good cybersecurity practices, placing a

12   premium on it.  And again, something that quite frankly I

13   was a little bit surprised to see is that they invest a

14   lot of money in it.  Because right now, this is my

15   professional opinion, there's a lot of underinvestment in

16   cybersecurity in the private sector, which is a type of

17   market failure.

18   Q    Did you have an opportunity to evaluate both CDK's

19   and Reynolds' third-party partner programs and the

20   security around those programs?

21   A    I did.  I think I actually spent more time asking

22   about the Third Party Access Programs than anything

23   because it's one of the key issues of the case.  And so

24   in both cases, in Reynolds in particular, they've even

25   architected, as you heard earlier about the sandbox, the

ERIC ROSENBACH - DIRECT

1    so-called sandbox, a way that third-party people,

2    third-party vendors -- and I want to be very clear about

3    this: that could include a data integrator, so a

4    third-party could be anyone who is not this -- have

5    access to the data.  I did not encounter anything in any

6    of the interviews I did where the reason that they were

7    doing certain security mechanisms was designed to lock a

8    specific type of business or firm out.  It was to make

9    sure that people who needed the data had access to it,

10   but that it was done in a very, very secure way.

11       If I could, I'd just like to tell you a little bit

12   about that technically.  And I know you hear some

13   technical terms, but the way that they do that is with a

14   specialized software interface.  So you've heard the term

15   API.  That's essentially what they do.  The reason that

16   that is qualitatively better and thus introduced less

17   risk to the firms who were doing it, in this case CDK and

18   Reynolds, is that it's a clean match-up of software as a

19   way to pass the data rather than what is what I call a

20   forced extraction and using screen scraping.  Screen

21   scraping is something -- it's very sloppy.  It's not very

22   exact.  And you end up getting a lot more data than you

23   probably should from my professional perspective.

24   Q    In your investigation, did you come across any

25   cybersecurity measures taken by CDK or Reynolds that did

ERIC ROSENBACH - DIRECT

1    not address a legitimate security concern?

2    A      No.  Everything that I saw made sense to me in the

3    holistic way that they would look at possible threats and

4    their businesses.  So again, a really important part of

5    this is when you're a business like CDK or Reynolds and

6    you're the CEO, the most important thing when it comes

7    down to it is you want to make money and you want to have

8    a good relationship with your customers, but you can't be

9    so secure that you totally lockdown the firm and you

10   don't make any money because you're super secure but

11   there's nothing going on.  So you have to make decisions

12   based on risk.  Again, it comes down to that.  You say

13   well, we're going to invest a certain amount of money

14   because it mitigates this risk and it fits within the

15   overall business case.  So everything I saw from my

16   perspective made sense, in particular knowing all the bad

17   things that had happened in 2013 to '15 period, to ramp

18   up their security, build a more secure architecture, and

19   also address the fact that in order to be successful,

20   they need to have third-party vendors access the data.

21   They're more successful the more people access the data.

22   So it's a major point where they had to balance risk as

23   opposed to the business opportunity.

24   Q    Is it fair to say that you disagree with Mr. Swire

25   about whether CDK and Reynolds are justified in

ERIC ROSENBACH - DIRECT

1-P-221

1

2              I, LYNETTE SWENSON, Certified Realtime and

3   Merit Reporter in and for the State of Wisconsin, certify

4   that the foregoing is a true and accurate record of the

5   proceedings held on the 26th day of June 2017 before the

6   Honorable James D. Peterson, District Judge for the

7   Western District of Wisconsin, in my presence and reduced

8   to writing in accordance with my stenographic notes made

9   at said time and place.

10  Dated this 30th day of June 2017.

11

12

13                         /s/_____

14                         Lynette Swenson, RMR, CRR, CRC
                           Federal Court Reporter
15

16

17

18  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means unless
19  under the direct control and/or direction of the
    certifying court reporter.
20

21

22

23

24

25