**PUBLIC VERSION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC*, Case No. 18-CV-2521 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**CDK GLOBAL, LLC'S OPPOSITION TO PLAINTIFF AUTOLOOP'S
MOTION FOR SUMMARY JUDGMENT ON
<u>CDK GLOBAL, LLC'S COUNTERCLAIM</u>**

**PUBLIC VERSION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .......................................................................................2

    A.    AutoLoop's Participation in the 3PA Program .................................2

    B.    vAuto-AutoLoop Inventory Data Syndication....................................4

    C.    CDK's Counterclaim and Post-Counterclaim Discovery ..................5

ARGUMENT ...............................................................................................................6

I.     There Is Ample Evidence From Which A Reasonable Jury Could Conclude That AutoLoop Breached Its Managed Interface Agreement......................................6

II.    The Evidence Establishes That CDK May Seek Nominal Damages And Declaratory and Injunctive Relief On Its Breach Of Contract Claim. ........................8

    A.    Illinois Law Permits CDK To Seek Nominal Instead Of Actual Damages.......................................................................................8

    B.    CDK Also Properly Seeks Declaratory And Injunctive Relief.....................11

CONCLUSION..........................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Mead Johnson & Co.*,
 971 F.2d 6 (7th Cir. 1992) ...................................................................................................14

*Agfa-Gevaert, A.G. v. A.B. Dick Co.*,
 879 F.2d 1518 (7th Cir. 1989) ...............................................................................................9

*Allen Bros., Inc. v. Abacus Direct Corp.*,
 2003 WL 21147985 (N.D. Ill. May 14, 2003) ......................................................................10

*Anderson v. Liberty Lobby*,
 477 U.S. 242 (1986) ................................................................................................................6

*Anheuser-Busch Brewing Ass'n v. Dwyer*,
 150 Ill. App. 315 (1909) .......................................................................................................12

*Automed Techs., Inc. v. Microfil, LLC*,
 2006 WL 1647505 (N.D. Ill. June 7, 2006), *aff'd in part, rev'd in part on
 other grounds*, 244 F. App'x 354 (Fed. Cir. 2007).........................................................10, 12

*Ballard v. Jewel Food Stores, Inc*.,
 2020 WL 616468 (N.D. Ill. Feb. 10, 2020) .............................................................................6

*BrightStar Franchising LLC v. N. Nevada Care, Inc.*,
 2020 WL 635903 (N.D. Ill. Feb. 11, 2020) ..........................................................................13

*C-B Realty & Trading Corp. v. Chicago & N. W. Ry.*,
 289 Ill. App. 3d 892 (1997) ..................................................................................................10

*Davidson v. Schneider*,
 2014 WL 656780 (N.D. Ill. Feb. 20, 2014) ..........................................................................12

*Driveline Sys., LLC v. Arctic Cat, Inc.*,
 936 F.3d 576 (7th Cir. 2019) ............................................................................................7, 8

*eBay Inc. v. MercExchange, L.L.C.*,
 547 U.S. 388 (2006)...............................................................................................................12

*In re HA 2003, Inc.*,
 310 B.R. 710 (N.D. Ill. 2004) ...............................................................................................11

*Heller Fin. Leasing, Inc. v. Gordon*,
 2005 WL 2756113 (N.D. Ill. Oct. 19, 2005)..........................................................................10

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*Karkuszewski v. Horbowski*,
1990 WL 114621 (N.D. Ill. July 23, 1990)................................................................7

*Lundquist v. Sec. Pac. Automotive Fin. Servs. Corp.*,
1992 WL 475651 (D. Conn. June 9, 1992)..............................................................11

*Luxottica Grp. S.p.A. v. Light in the Box Ltd.*,
2016 WL 6092636 (N.D. Ill. Oct. 19, 2016)...........................................................13

*Miller v. LeSea Broad., Inc.*,
87 F.3d 224 (7th Cir. 1996) ...................................................................................12

*Petrzilka v. Gorscak*,
199 Ill. App. 3d 120 (1990) ...............................................................................12, 14

*Piotrowski v. Menard, Inc.*,
2015 WL 5139415 (N.D. Ill. Aug. 31, 2015) ............................................................7

*Prentice Med. Corp. v. Todd*,
145 Ill. App. 3d 692 (1986) ....................................................................................14

*Schoeneweis v. Herrin*,
110 Ill. App. 3d 800 (1982) ....................................................................................10

*Shure, Inc. v. ClearOne, Inc.*,
2018 WL 1371170 (N.D. Ill. Mar. 16, 2018), *reconsideration denied*, 2019
WL 4014230 (N.D. Ill. Aug. 25, 2019) ...................................................................13

*TAS Distrib. Co. v. Cummins Engine Co.*,
491 F.3d 625 (2007)......................................................................................10, 11, 12

*U.S. Data Corp. v. RealSource, Inc.*,
910 F. Supp. 2d 1096 (N.D. Ill. 2012) ..................................................................7, 8

*Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*,
2015 IL App (2d) 140589 (2015)............................................................................10

*Wilson v. DiCosola*,
352 Ill. App. 3d 223 (2004) .....................................................................................9

*Zuppardi v. Wal-Mart Stores, Inc.*,
770 F.3d 644 (7th Cir. 2014) ...................................................................................7

**Statutes, Rules and Regulations**

Fed. R. Civ. P. 56(a) ..................................................................................................6

# INTRODUCTION[1]

The counterclaim asserted by CDK Global, LLC ("CDK") against Loop, LLC ("AutoLoop") is for breach of the parties' Managed Interface Agreement ("MIA"). Pursuant to the MIA, AutoLoop has certified several of its software applications in the CDK Global Partner ("3PA") program, which allows AutoLoop software applications to securely exchange data with CDK's DMS through a certified interface. Once AutoLoop joined the 3PA program, ██████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████

In its motion for summary judgment, AutoLoop admits that after it certified its Quote application in the 3PA program, the application ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████ Despite these concessions, AutoLoop nevertheless seeks summary judgment on two, limited grounds, both of which are without merit and can be easily rejected.

First, AutoLoop contends that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ This argument fails because in addition to AutoLoop's own concessions, evidence from both AutoLoop and vAuto demonstrates—at the very least—that this is a disputed issue of fact for the jury.

---

[1] In this brief, "Defs. JSOAF" refers to Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Statement of Additional Material Facts in Opposition to MDL Plaintiffs' Motions for Summary Judgment on Defendants' Counterclaims, filed concurrently herewith. "Mot." refers to the Memorandum of Law in Support of Plaintiff AutoLoop's Motion for Summary Judgment on CDK Global, LLC's Counterclaim (Dkt. 951). "RSOF" refers to CDK Global, LLC's Response to Plaintiff AutoLoop's Rule 56.1 Statement in Support of Its Motion for Summary Judgment on CDK Global, LLC's Counterclaim, filed concurrently.

Second, AutoLoop asserts that CDK cannot establish damages resulting from AutoLoop's breach of the MIA. On this point, AutoLoop confuses whether CDK has incurred and could prove damages with whether CDK is seeking to recover them. In lieu of its actual damages, which are modest, CDK is pursuing nominal damages and declaratory and injunctive relief. CDK's objective in bringing this counterclaim has never been to recover a large sum of money. It is instead to obtain a judgment requiring AutoLoop to cease its unlawful conduct, which threatens the integrity of the 3PA program and puts CDK and dealers at heightened risk of a data breach. Illinois law allows a party to forego actual damages and seek these other remedies for a breach of contract.

## FACTUAL BACKGROUND

### A.    AutoLoop's Participation in the 3PA Program

Dealers use CDK's DMS to perform critical business functions in the day-to-day operation of their dealerships. Defs. JSOAF ¶ 104. As a result, the DMS stores reams of sensitive data related to dealer operations, including car inventory data. Defs. JSOAF ¶¶ 105, 123. To supplement the functionality of the DMS, dealerships often turn to third-party software application providers such as AutoLoop. CDK requires that automated exchanges of data between third-party applications and the DMS occur securely through the 3PA program. Defs. JSOAF ¶¶ 106, 108, 109. Under that program, application providers receive access to a managed software interface that allows them to both read and write data stored in the DMS. Defs. JSOAF ¶ 106. Monthly recurring fees are charged under the 3PA program according to the type and complexity of the application's data needs. Defs. JSOAF ¶¶ 118-121.

In January 2016, AutoLoop entered into a contract with CDK—the MIA—to join the 3PA program. ██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████ Defs. JSOAF ¶ 114.[2] ██████████

████████████████████████████████████████████████████████

████████████████████████ Defs. JSOAF ¶ 114; Dkt. 557 (AutoLoop Answer) ¶ 18.

This contractual restriction is essential to the success of the 3PA program. ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ Defs. JSOAF ¶¶ 109, 111.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████ Defs. JSOAF ¶ 112.

Other provisions in the MIA similarly attempt to protect the 3PA brand and ensure safe data handling. ██████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Defs. JSOAF ¶ 115. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████ Defs. JSOAF ¶ 115. ██████████████████████

---

[2] The provision states: "████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████" Defs. JSOAF ¶ 114.

3

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Defs. JSOAF ¶ 116.

███████████████████████████████████████████████████████████

██████████████████████████████████████████ Defs. JSOAF ¶ 117. ███████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████ Defs. JSOAF ¶¶ 118-121. ██████████████████

███████████████████████████████████████████████████████████████ Defs.

JSOAF ¶ 119. ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████ Defs. JSOAF ¶ 120. █████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████ Defs. JSOAF ¶ 121. *See also* Defs. JSOAF ¶ 114 (██████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████). █████████████████████████████

████████████████████████ Defs. JSOAF ¶ 121.[3]

**B.    vAuto-AutoLoop Inventory Data Syndication**

███████████████████████████████████████████████████████████

███████████████████████████████████████████████ Defs. JSOAF ¶ 124. vAuto

has its own application in the 3PA program and thus receives data from the CDK DMS to support

---

[3] CDK and AutoLoop have subsequently entered into a Third Party Access Agreement dated March 1, 2019 that contains comparable provisions and remains in effect today. *See* Dkt. 767 (stipulation).

that application. Defs. JSOAF ¶¶ 122, 123. ████████████████████

████████████████████████████████████████████████████

████████████████████████ Defs. JSOAF ¶¶ 126, 128, 129. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████ Defs.

JSOAF ¶¶ 123, 124, 128.

████████████████████████████████████████████

████████ In an April 2017 email, for example, CDK wrote to vAuto's parent company Cox

Automotive: "█████████████████████████████████████████

████████████████" Defs. JSOAF ¶ 129. That is in part because, as the Cox

representative acknowledged, it has ████████████████████████

████████████████ Defs. JSOAF ¶ 130.

### C.    CDK's Counterclaim and Post-Counterclaim Discovery

████████████████████████████████████████████ CDK filed

counterclaims against both vAuto and AutoLoop for breach of contract.[4] ████████████

████████████████████████████████████████████████████

████████████████ Defs. JSOAF ¶ 126. ████████████████████

████████████████████████████████████ Defs. JSOAF ¶ 127.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ Defs. JSOAF ¶ 114.

---

[4] In July 2019, all claims and counterclaims pending between CDK and Cox were dismissed pursuant to a confidential settlement. Dkt. 723.

## ARGUMENT

The Court may grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). AutoLoop must show that no "reasonable jury could return a verdict for" for CDK, even when viewing the record in the light most favorable to CDK and drawing all reasonable inferences in its favor. *Ballard v. Jewel Food Stores, Inc*., 2020 WL 616468, at *4 (N.D. Ill. Feb. 10, 2020) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). AutoLoop fails to meet this burden.

**I.     There Is Ample Evidence From Which A Reasonable Jury Could Conclude That AutoLoop Breached Its Managed Interface Agreement.**

There is ample evidence from which a reasonable jury could conclude that AutoLoop breached its MIA. ███████████████████████████████████████████

███████████████████████████████████ Mot. 4, 7 n.2. ████████████████████

████████████████████████████████████████████████████████████████████

████████████████████ *See, e.g.*, Mot. 7; Defs. JSOAF ¶¶ 123, 124. ████████

████████████████████████████████████████████████████████████████████

██████████████████████████ *See, e.g.*, Mot. 7 n.2 (██████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████).

      ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████ Defs. JSOAF ¶ 128. █████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████ Defs. JSOAF ¶ 128. ███████

████████████████████████████████████████████

Defs. JSOAF ¶ 123. ████████████████████████████

███████████████████████ Defs. JSOAF ¶ 128.[5]

Other evidence bolsters this testimony. ████████████████████

████████████████████████████████████████ Defs.

JSOAF ¶ 128. ████████████████████████████

████████████████████████████████████████

███████████████ Defs. JSOAF ¶ 128. ██████████████

████████████████████████████████████████

████████████ ███████████████████████████

████████████████████████████████—particularly

given the other evidence corroborating this conclusion. Defs. JSOAF ¶ 128; *see also Driveline Sys., LLC v. Arctic Cat, Inc.*, 936 F.3d 576, 579-81 (7th Cir. 2019) (affording "all reasonable inferences" to non-movant and finding summary judgment unwarranted). As discussed above, the AutoLoop document is far from CDK's only piece of evidence. There is also the testimony of Cox itself, which has personal knowledge of vAuto's business practices and the disputed facts at issue.

AutoLoop's omissions with respect to this argument are also telling. ████████████████

████████████████████████████████████████

---

[5] This case is thus nothing like those cited in AutoLoop's brief (at 8) where the non-movants relied "purely on speculation" to support negligence claims. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 650 (7th Cir. 2014); *see also Piotrowski v. Menard, Inc.*, 2015 WL 5139415, at *4 (N.D. Ill. Aug. 31, 2015) (relying on "only speculation"); *Karkuszewski v. Horbowski*, 1990 WL 114621, at *2 (N.D. Ill. July 23, 1990) (relying on "mere speculation"). ████████████ *See U.S. Data Corp. v. RealSource, Inc.*, 910 F. Supp. 2d 1096, 1106 (N.D. Ill. 2012) (denying summary judgment on breach-of-contract claim because "deposition testimony" and other evidence created factual dispute on "source" of particular data).

███████████████████████████████████████████████████████

██████████████████████████████████████████████ Defs. JSOAF

¶ 128. ██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ Defs. JSOAF ¶ 114 (█████

███████████████████████████████████████████.[6]

Because this evidence would allow a reasonable jury to conclude that AutoLoop breached its MIA with CDK, summary judgment should be denied. *See, e.g.*, *U.S. Data Corp.*, 910 F. Supp. 2d at 1106-07 (denying summary judgment given dispute on "source" of particular data in breach-of-contract counterclaim); *see also Driveline*, 936 F.3d at 580-81 (finding summary judgment unwarranted given "factual ambiguities" in breach-of-contract claim).

## II. The Evidence Establishes That CDK May Seek Nominal Damages And Declaratory And Injunctive Relief On Its Breach Of Contract Claim.

AutoLoop asserts that CDK cannot show damages resulting from AutoLoop's breach of contract. Mot. 8-10. However, AutoLoop confuses whether CDK has evidence of damages—which it does—with the remedies that CDK is seeking. For the reasons explained below, in lieu of its actual damages, CDK has elected to seek nominal damages and declaratory and injunctive relief, any of which is sufficient under Illinois law to sustain its claim for breach of contract.

### A. Illinois Law Permits CDK To Seek Nominal Instead Of Actual Damages.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[6] ███████████████████████████████████████████████████████
███████████████████████████████ *See* Mot. 7-8. ██████████
████████████████████████████████ *See* Defs. JSOAF ¶ 128.

███████████████████████████████████████████████████████

███████████████████████████████ *See supra*, at 5; Defs. JSOAF ¶¶ 126, 127. █████████

███████████████████████████████████████████████████████

████████████████████████████████ *See* Mot. 9. ████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████ Defs. JSOAF ¶¶ 114, 120, 121; *see, e.g.*, *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1524 (7th Cir. 1989) (when a buyer agrees "to take his requirements of a particular product from the seller, and breaks his contract by satisfying those requirements elsewhere," damages are calculated based on "how much he bought from his alternative supplier(s)").

AutoLoop notes that CDK did not retain an expert to sponsor a damages opinion for its breach of contract claim. Mot. 9. Evaluating the evidence summarized above, CDK realized that the costs CDK would incur retaining an expert in this MDL to calculate damages likely exceeded the amount that CDK stood to recover. Moreover, the money that AutoLoop owes under the terms of its agreement has never been as important to CDK as obtaining declaratory and injunctive relief requiring AutoLoop to cease its unlawful conduct. *See infra*, at 11-14. AutoLoop's conclusion that summary judgment can be entered against a party that elects to forego actual damages in favor of these other forms of relief is legally incorrect. Particularly where, as here, the practical cost of calculating damages could exceed their value, CDK may elect to seek an award of nominal damages instead. *See, e.g.*, *Wilson v. DiCosola,* 352 Ill. App. 3d 223, 815 N.E.2d 975, 980 (2004)

(a party may seek nominal damages for a breach of contract if it "proves that it has the right to damages but fails to provide a proper basis for computing those damages").[7]

The cases that AutoLoop cites are not remotely on point. *See* Mot. 8-9. In one, the court held merely that a plaintiff "was entitled only to those damages it had proven" on its breach of contract claim. *C-B Realty & Trading Corp. v. Chicago & N. W. Ry.*, 289 Ill. App. 3d 892, 682 N.E.2d 1136, 1143 (1997). In the other, the court held that a limitation-of-liability clause in the parties' contract did not bar recovery of lost profits. *Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 2015 IL App (2d) 140589, 25 N.E.3d 1166, 1174-78 (2015). The boilerplate language in these decisions that refers to damages as an "essential" element of a breach of contract claim is inapplicable here, where CDK *has* incurred actual damages from AutoLoop's breach of the MIA but elects to seek nominal damages and non-monetary relief instead.

AutoLoop argues in passing that there is no "evidence of causation—that is, [evidence that]



Mot. 9. AutoLoop cites nothing to support this claim, and the evidence in its own files is to the contrary. AutoLoop's

---

[7] *See also TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 632 (2007) ("[W]hen a party establishes that it is entitled to damages but fails to prove the amount of those damages to a reasonable degree of certainty, . . . nominal damages are recoverable at the discretion of the trial judge.") (citation omitted); *Automed Techs., Inc. v. Microfil, LLC*, 2006 WL 1647505, at *2 (N.D. Ill. June 7, 2006) (where a party has established a breach of contract but does not establish damages resulting from the breach, its "rights can be vindicated through the entry of a judgment in its favor and the entry of a nominal damages award"), *aff'd in part, rev'd in part on other grounds*, 244 F. App'x 354 (Fed. Cir. 2007); *Heller Fin. Leasing, Inc. v. Gordon*, 2005 WL 2756113, at *4 (N.D. Ill. Oct. 19, 2005) ("[I]f a plaintiff 'establishes entitlement to damages, yet fails to establish a proper basis from which those damages can be computed, the [plaintiff] is entitled only to nominal damages.'") (quoting *Schoeneweis v. Herrin*, 110 Ill. App. 3d 800, 443 N.E.2d 36, 42 (1982)); *Allen Bros., Inc. v. Abacus Direct Corp.*, 2003 WL 21147985, at *3 (N.D. Ill. May 14, 2003) ("[I]f a plaintiff establishes breach but cannot establish actual damages, it may nevertheless recover nominal damages. . . . [T]he fact that only nominal damages are potentially available does not sound the death knell for [a] breach of contract claim.").

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ Defs. JSOAF ¶ 125 (████████████████████████████

████████████████████████████). Moreover, ███████████████████

████████████████████████████████████████████████████████████

████████████████████████ Defs. JSOAF ¶ 128. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ That is more than

sufficient evidence to create a triable issue on damages causation.

## B.    CDK Also Properly Seeks Declaratory And Injunctive Relief.

CDK's counterclaim also seeks both declaratory and injunctive relief. *See* Dkt. 514, pg. 98

(Prayer for Relief ¶¶ A, B). Illinois law permits CDK to seek either of these remedies for breach

of contract independent of whether CDK can prove damages. *See TAS Distrib.*, 491 F.3d at 637;

*In re HA 2003, Inc.*, 310 B.R. 710, 721 (N.D. Ill. 2004) ("declaratory relief is appropriate without

requiring the parties to commit a breach or sustain damages") (quoting *Lundquist v. Sec. Pac.

Automotive Fin. Servs. Corp.,* 1992 WL 475651, at *6 (D. Conn. June 9, 1992)).[8]

A declaratory judgment that ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Defs. JSOAF ¶¶ 114, 116.

---

[8] These issues are discussed in greater detail in CDK's Opposition to the Dealership Counter-Defendants' Motion for Summary Judgment, at pp. 5-15, filed concurrently herewith, which CDK incorporates by reference. Even if the Court were to conclude, however, that the existence of damages is an essential element for any claim for breach of contract seeking declaratory or injunctive relief, CDK has shown that it has incurred actual damages from AutoLoop's breach of the MIA. *See supra*, at 8-9.

PUBLIC VERSION

With respect to CDK's request for an injunction, AutoLoop mischaracterizes the relief that CDK seeks as "a specific-performance remedy." Mot. 10. ████████████████████

████████████████████████████████████████████████████████████████

████████ Defs. JSOAF ¶¶ 114, 116. This is a *negative* restriction in the parties' agreement, which can be readily enforced through an injunction. *See Petrzilka v. Gorscak*, 199 Ill. App. 3d 120, 556 N.E.2d 1265, 1268 (1990) ("[A] court may enjoin the breach of negative covenants and contracts without applying the ordinary rules governing specific performance of the affirmative covenants.") (citing *Anheuser-Busch Brewing Ass'n v. Dwyer*, 150 Ill. App. 315, 323 (1909)).[9] CDK need only demonstrate that the harm caused by AutoLoop's breach "cannot be adequately corrected by the payment of monetary damages." *Id.* That is the case here, where the evidence presented at trial could easily show that monetary damages are inconsequential compared to the harm to CDK's brand and data security policies caused by AutoLoop's breach of contract.[10]

***Harm to the 3PA Brand****.* As AutoLoop admits, CDK brought this counterclaim because

"████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[9] For this reason, the cases that AutoLoop cites in its brief (at 10-11) that address claims for "specific performance" of a contract and describe the purported "strains" on judicial resources associated with enforcing specific performance remedies are inapposite. *See TAS Distrib.*, 491 F.3d at 637 (evaluating claim for "specific performance of Cummins' obligations under the contract"); *Miller v. LeSea Broad., Inc.*, 87 F.3d 224, 230 (7th Cir. 1996) ("we must consider LeSea's argument that on no account is Miller entitled to specific performance"); *Davidson v. Schneider*, 2014 WL 656780, at *5 n.8 (N.D. Ill. Feb. 20, 2014) (addressing "Davidson's request for specific performance of defendants' obligations under the settlement agreement"). And in the *Automed Technologies* decision, which AutoLoop describes as "rejecting [a] permanent injunction for failure to show any damages," Mot. 11, the court actually did the opposite: It *granted* "AutoMed's request for an injunction to permanently bar Gerold from disclosing AutoMed's confidential information." 2006 WL 1647505, at *3. *Automed Technologies* thus supports CDK's claim.

[10] A permanent injunction may be issued upon a showing of: (1) irreparable harm that cannot be adequately compensated by money damages; (2) a balance of hardships that tips in favor of the plaintiff; and (3) consideration of the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). AutoLoop challenges only the first requirement—adequacy of damages—on summary judgment.



████████████████' and that, when ████████████████████████████

████████████████████████████ Mot. 9 (quoting Counterclaim (Dkt. 514) ¶ 24).

████ Defs. JSOAF ¶ 111. ████████

████████████████████████████████████ Defs. JSOAF ¶ 115.

████ Defs. JSOAF ¶ 112. ████████

████████████ AutoLoop vaguely asserts that "harm to the 3PA program . . . could be remedied by payment of damages," Mot. 10, but case law recognizes that damages are inadequate when harm to brand equity is at stake. *See, e.g.*, *Shure, Inc. v. ClearOne, Inc.*, 2018 WL 1371170, at *15 (N.D. Ill. Mar. 16, 2018) ("Erosion of reputation and brand distinction are yet more evidence of irreparable harm."), *reconsideration denied*, 2019 WL 4014230 (N.D. Ill. Aug. 25, 2019); *BrightStar Franchising LLC v. N. Nevada Care, Inc.*, 2020 WL 635903, at *8 (N.D. Ill. Feb. 11, 2020) (granting injunctive relief where plaintiff "showed that Defendants' breaches harmed its brand"); *Luxottica Grp. S.p.A. v. Light in the Box Ltd.*, 2016 WL 6092636, at *6 (N.D. Ill. Oct. 19, 2016) (passing off counterfeit goods "creates a risk of irreparable harm by devaluing Plaintiffs' brands").

**Risk of Data Breach**. While CDK employs the measures described above to ensure that data obtained through the 3PA program is not misused or disseminated to unauthorized recipients,

13

vAuto does not. Defs. JSOAF ¶ 130 (███████████████████████████

████████████████████████████████). ████████████████████

███████████████████████████████████ ██████

█████████████████████████████████████

█████████████████████████████████████

The damage to CDK's reputation and goodwill among dealers would be irreparable and incalculable. *See* Defs. JSOAF ¶¶ 92, 113. Injunctive relief is an appropriate remedy to address this type of injury, as "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill[.]" *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992).

> **AutoLoop's Breach of Contract Is Ongoing**. AutoLoop did not stop improperly receiving data from vAuto when CDK brought its counterclaim, and it shows no signs of stopping now. To the contrary, AutoLoop continues to advertise to customers that Quote uses "strategic integrations through . . . vAuto®." Defs. JSOAF ¶ 131. Further, because the unlawful conduct at issue occurs through private interactions between AutoLoop and vAuto, it will be very difficult for CDK to determine whether AutoLoop continues to breach the MIA once this litigation ends. These facts also weigh in favor of awarding injunctive relief. *See Petrzilka*, 556 N.E.2d at 1268 (permanent injunction was warranted where "defendant's breach of the covenant was a continuing, ongoing violation which would require multitudinous proceedings to remedy at law"); *Prentice Med. Corp. v. Todd*, 145 Ill. App. 3d 692, 495 N.E.2d 1044, 1051 (1986) ("The concept of irreparable injury . . . denotes transgressions of a continuing nature such as constant breach of a contract resulting in damage to the good will of a business which would be incalculable.").

These injuries are largely intangible and go well beyond the ██████████████ that CDK could seek to recover in damages. *See supra*, at 8-9. In its cursory discussion of this issue, AutoLoop does not cite any evidence to the contrary and merely asserts, without explanation, that damages would be sufficient. Mot. 10. That is incorrect for the reasons discussed above and, moreover, falls far short of meeting AutoLoop's burden on summary judgment.

## **CONCLUSION**

For the foregoing reasons, AutoLoop's motion for summary judgment should be denied.


Dated: July 28, 2020                                    Respectfully submitted,

                                                        /s/ *Britt M. Miller*
                                                        Britt M. Miller
                                                        Michael A. Scodro
                                                        Daniel T. Fenske
                                                        Matthew D. Provance
                                                        MAYER BROWN LLP
                                                        71 South Wacker Drive
                                                        Chicago, IL 60606
                                                        (312) 782-0600
                                                        bmiller@mayerbrown.com
                                                        mscodro@mayerbrown.com
                                                        dfenske@mayerbrown.com
                                                        mprovance@mayerbrown.com

                                                        Mark W. Ryan
                                                        MAYER BROWN LLP
                                                        1999 K Street NW
                                                        Washington, DC 20006
                                                        (202) 263-3000
                                                        mryan@mayerbrown.com

                                                        *Counsel for Defendant and Counter-Plaintiff CDK Global, LLC*

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, hereby certify that on July 28, 2020, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC'S OPPOSITION TO PLAINTIFF AUTOLOOP'S MOTION FOR SUMMARY JUDGMENT ON CDK GLOBAL, LLC'S COUNTERCLAIM** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com