# EXHIBIT 579

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street - 5th Floor
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Division of Consumer Affairs

By: Russell M. Smith, Jr.
Zachary N. Klein
Deputy Attorneys General
(973) 877-1280

**FILED**

MAY 2 1 2018

Division of Consumer Affairs

STATE OF NEW JERSEY
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF CONSUMER AFFAIRS

| | |
|---|---|
| In the Matter of | Administrative Action |
| LightYear Dealer Technologies, LLC d/b/a DealerBuilt, | **CONSENT ORDER** |
| Respondent. | |

**WHEREAS** this matter having been opened by the New Jersey Division of Consumer Affairs, Office of Consumer Protection ("Division"), as an investigation to ascertain whether violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. ("CFA"), and/or the New Jersey Identity Theft Prevention Act, N.J.S.A. 56:8-161 et seq. ("ITPA"), have been or are being committed by LightYear Dealer Technologies, LLC d/b/a DealerBuilt as well as by its owners, members, officers, directors, managers, employees, representatives and/or agents (collectively, "DealerBuilt" or "Respondent") (hereinafter referred to as the "Investigation");

**WHEREAS** DealerBuilt, with a main business address of 2570 4th Street, SW Suite A, Mason City, Iowa 50401, is engaged in the development and operation of a dealer management system which collects, manages, maintains and secures Customer and employee data utilized by client-motor vehicle dealerships in New Jersey as well as throughout the United States;

**WHEREAS** on or around April 4, 2015, DealerBuilt misconfigured an rsync utility as to allow anonymous Internet connections to a directory that contained database backup files associated with DealerBuilt's 130 client-motor vehicle dealerships;

**WHEREAS** between October 29, 2016 and November 3, 2016, an unauthorized user downloaded 9.75GB of data from DealerBuilt's directories associated with five (5) client-motor vehicle dealerships, Including Social Security numbers, dates of birth, driver's license numbers, bank account numbers and/or credit card numbers for 2,471 New Jersey Customers;

**WHEREAS** DealerBuilt represents and warrants that it reviewed the rsync log files between December 23, 2010 and November 9, 2016 and found that: (1) the log had full visibility into rsync actions from when the rsync utility was first created to when the system was taken offline; and (2) there was no other unauthorized access to the database backup files;

**WHEREAS** DealerBuilt further represents and warrants that on January 9, 2017, DealerBuilt mailed notice letters to affected New Jersey Customers in accordance with the ITPA, N.J.S.A. 56:8-163(a);

**WHEREAS** the Division and Respondent (collectively, "Parties") have reached an amicable agreement resolving the issues in controversy and concluding the Investigation without the need for further action, and Respondent has voluntarily cooperated with the Investigation and

2

consented to the entry of the within order ("Consent Order") without having admitted any fact or violation of law, and for good cause shown:

**IT IS ORDERED AND AGREED** as follows:

### 1. EFFECTIVE DATE

1.1     This Consent Order is effective on the date that it is filed with the Division ("Effective Date").

### 2. DEFINITIONS

As used in this Consent Order, the following words or terms shall have the following meanings, which shall apply wherever the words and terms appear in this Consent Order:

2.1     "Attorney General" shall refer to the Attorney General of the State of New Jersey and the Office of the Attorney General of the State of New Jersey.

2.2     "Breach of Security" shall be defined in accordance with N.J.S.A. 56:8-161.

2.3     "Business" shall be defined in accordance with N.J.S.A. 56:8-161.

2.4     "Computer Network" shall mean all of the interconnected computers, servers, mainframes, devices and peripherals that are capable of using and sharing software, data and hardware resources.

2.5     "Consumer" shall refer to any Person, defined in accordance with N.J.S.A. 56:8-1(d), who is offered Merchandise, defined in accordance with N.J.S.A. 56:8-1(c), for Sale, defined in accordance with N.J.S.A. 56:8-1(e).

2.6     "Customer" shall be defined in accordance with N.J.S.A. 56:8-161.

2.7     "Include" and "Including" shall be construed as broadly as possible and shall mean "without limitation."

2.8 "New Jersey" or "State" shall refer to the State of New Jersey.

2.9 "New Jersey Customer" shall refer to a Customer who is a resident of New Jersey.

2.10 "Person[s]" shall be defined in accordance with N.J.S.A. 56:8-1(d).

2.11 "Personal Information" shall be defined in accordance with N.J.S.A. 56:8-161.

2.12 "Policy" or "Policies" shall Include any procedures, practices and/or established courses of action, whether written or oral.

### 3. REQUIRED AND PROHIBITED BUSINESS PRACTICES

3.1 DealerBuilt shall not engage in any unfair or deceptive acts or practices in the conduct of any business in New Jersey and shall comply with such State and/or federal laws, rules and regulations as now constituted or as may hereafter be amended, Including the CFA and the ITPA.

3.2 DealerBuilt shall not misrepresent the extent to which it maintains and protects the privacy, security, confidentiality, or integrity of any Personal Information collected from or about Customers, in accordance with the CFA, specifically N.J.S.A. 56:8-2.

3.3 Subject to Section 4, DealerBuilt shall maintain an Information Security Program that is reasonably designed to protect the security, integrity, and confidentiality of the Personal Information that DealerBuilt collects or obtains from Customers, in accordance with the CFA, specifically N.J.S.A. 56:8-2.

3.4 DealerBuilt shall notify New Jersey Customers of any Breach of Security in the most expedient time possible and without unreasonable delay, as required by the ITPA, specifically N.J.S.A. 56:8-163(a).

3.5     After the Effective Date, for any Breach of Security of the Personal Information of New Jersey Customers, DealerBuilt shall provide notice to the Division, as provided in Section 10.1, in addition to any other requirements of the ITPA.

## 4. INFORMATION SECURITY PROGRAM

4.1     DealerBuilt shall, within one hundred twenty (120) days after the Effective Date, develop, implement, and maintain a comprehensive security program ("Information Security Program") that is reasonably designed to protect the security, integrity, and confidentiality of Personal Information it collects or obtains from Customers.

4.2     DealerBuilt's Information Security Program shall be in writing and shall contain administrative, technical, and physical safeguards appropriate to:

a.   The size and complexity of DealerBuilt's operations;

b.   The nature and scope of DealerBuilt's Business operations; and

c.   The sensitivity of the Personal Information that DealerBuilt collects, stores and/or maintains.

4.3     DealerBuilt shall designate an officer with appropriate background and experience in information security who shall be responsible for implementing and maintaining the Information Security Program ("Chief Security Officer").

4.4     DealerBuilt shall collect, store and/or maintain Personal Information only to the extent necessary to accomplish the intended purpose of using such Personal Information, or for using such information as instructed by its clients.

4.5     DealerBuilt shall maintain and implement encryption protocols and related Policies that are reasonably designed to encrypt any Personal Information that DealerBuilt maintains: (a) stored on laptops or other portable devices; and/or (b) transmitted wirelessly or

across public networks. If alternative technology or security measures become available that are recognized by security industry standards to exceed encryption as a security measure to protect Personal Information, DealerBuilt may implement such technology or security measures.

4.6 DealerBuilt shall maintain and implement reasonable access control Policies that clearly define which users have authorization to access its Computer Network, and shall maintain reasonable enforcement mechanisms to approve or disapprove access requests based on those Policies.

4.7 DealerBuilt shall maintain reasonable security assessment tools, Including penetration testing and/or vulnerability scanning.

4.8 DealerBuilt's Information Security Program shall be designed and implemented to ensure the handling and investigation of Breaches of Security in compliance with ITPA.

4.9 Within one hundred twenty (120) days of the Effective Date, DealerBuilt shall provide the Division with a written certification from the Chief Security Officer confirming its compliance with the requirements of Sections 4.1 to 4.8.

## 5. SETTLEMENT AMOUNT

5.1 The Parties have agreed to a settlement of the Investigation in the amount of Eighty Thousand Seven Hundred Eighty Four and 82/100 Dollars ($80,784.82) ("Settlement Amount"), which consists of Forty Nine Thousand Four Hundred Twenty and 00/100 Dollars ($49,420.00) in civil penalties pursuant to N.J.S.A. 56:8-13, and Thirty One Thousand Three Hundred Sixty Four and 82/100 Dollars ($31,364.82) in reimbursement of the Division's attorneys' fees, investigative costs and expert fees, pursuant to N.J.S.A. 56:8-11 and N.J.S.A. 56:8-19.

5.2 DealerBuilt shall pay Sixty Thousand Seven Hundred Eighty Four and 82/100 Dollars ($60,784.82) ("Settlement Payment") contemporaneously with the signing of this Consent Order.

5.3 DealerBuilt shall make the Settlement Payment by certified check, cashier's check, money order, credit card or wire transfer made payable to the "New Jersey Division of Consumer Affairs" and forwarded to:

> Case Initiation and Tracking Unit
> New Jersey Department of Law and Public Safety
> Division of Consumer Affairs
> 124 Halsey Street
> P.O. Box 45025
> Newark, New Jersey 07101
> Attention: Van Mallett, Lead Investigator

5.4 Upon making the Settlement Payment, DealerBuilt shall immediately be fully divested of any interest in, or ownership of, the moneys paid. All interest in the moneys, and any subsequent interest or income derived therefrom, shall inure entirely to the benefit of the Division pursuant to the terms herein.

5.5 The balance of the Settlement Amount, totaling Twenty Thousand and 00/100 Dollars ($20,000.00) in civil penalties pursuant to N.J.S.A. 56:8-13, shall be suspended ("Suspended Penalty") and automatically vacated at the expiration of two (2) years from the Effective Date, provided:

    (a) Respondent complies in all material respects with the required and prohibited business practices set forth in Section 3;

    (b) Respondent complies in all material respects with the information security program set forth in Section 4;

    (c) Respondent makes the Settlement Payment in the manner required under Section 5.2; and

   (d) Respondent does not engage in any acts or practices in violation of the CFA and/or the ITPA.

 5.6 In the event Respondent fails to comply with the requirements of Section 5.5, the Division shall provide it with notice seeking payment of the Suspended Penalty, as well as any unpaid portion of the Settlement Amount ("Notice of Noncompliance"). Respondent shall be afforded a fifteen (15) day period from receipt of the Notice of Noncompliance within which to cure any noncompliance ("Cure Period"). In the event that Respondent cures the noncompliance within the Cure Period, the Suspended Penalty shall return to its suspended status. In the event that Respondent fails to cure the noncompliance within the Cure Period, the Division will file a Certificate of Debt for the Suspended Penalty and any unpaid portion of the Settlement Amount, and, if applicable, may enter a Provisional Order of Suspension or Revocation of Respondents' license or registration issued by the Division.

 5.7 In the event Respondent subsequently fails to comply with the requirements of Section 5.5, in lieu of issuing another Notice of Noncompliance, the Division may file a Certificate of Debt for the Suspended Penalty and any unpaid portion of the Settlement Amount, enter a Provisional Order of Suspension or Revocation of Respondent's license or registration issued by the Division, if applicable, and/or commence additional enforcement efforts.

## 6. **GENERAL PROVISIONS**

 6.1 This Consent Order is entered into by the Parties of their own free and voluntary act and with full knowledge and understanding of the obligations and duties imposed by this Consent Order.

6.2     This Consent Order shall be governed by, and construed and enforced in accordance with, the laws of the State.

6.3     The Parties have negotiated, jointly drafted and fully reviewed the terms of this Consent Order and the rule that uncertainty or ambiguity is to be construed against the drafter shall not apply to the construction or interpretation of this Consent Order.

6.4     This Consent Order contains the entire agreement among the Parties. Except as otherwise provided herein, this Consent Order shall be modified only by a written instrument signed by or on behalf of the Parties.

6.5     Except as otherwise explicitly provided in this Consent Order, nothing herein shall be construed to limit the authority of the Attorney General to protect the interests of the State or the people of the State.

6.6     If any portion of this Consent Order is held invalid or unenforceable by operation of law, the remaining terms of this Consent Order shall not be affected.

6.7     This Consent Order shall be binding upon Respondent as well as its managers, members, agents, employees, successors and assigns, and any Person through which it may now or hereafter act, as well as any Person who has authority to control or who, in fact, controls and directs its Business.

6.8     This Consent Order shall be binding upon the Parties and their successors in interest. In no event shall assignment of any right, power or authority under this Consent Order avoid compliance with this Consent Order.

6.9     This Consent Order is agreed to by the Parties and entered into for settlement purposes only. Neither the fact of, nor any provision contained in this Consent Order shall

constitute or be construed as: (a) an approval, sanction or authorization by the Division or any other governmental unit of the State of any act or practice of Respondent; or (b) an admission by Respondent that any of its acts or practices described in or prohibited by this Consent Order are unfair or deceptive or violate the CFA or the ITPA.

6.10 This Consent Order is not intended, and shall not be deemed, to constitute evidence or precedent of any kind except in: (a) an action or proceeding by one of the Parties to enforce, rescind or otherwise implement any or all of the terms herein; or (b) an action or proceeding involving a Released Claim (as defined in Section 7) to support a defense of res judicata, collateral estoppel, release or other theory of claim preclusion, issue preclusion or similar defense.

6.11 The Parties represent and warrant an authorized representative of each has signed this Consent Order with full knowledge, understanding and acceptance of its terms and that the representative has done so with authority to legally bind the respective Party.

6.12 Unless otherwise prohibited by law, any signatures by the Parties required for filing of this Consent Order may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same Consent Order.

6.13 This Consent Order is a public document subject to the New Jersey Open Public Records Act, N.J.S.A. 47:1A-1 et seq.

## 7. RELEASE

7.1 In consideration of the undertakings, mutual promises and obligations provided for in this Consent Order and conditioned on Respondent making the Settlement Payment in the manner specified in Section 5, the Division hereby agrees to release Respondent from any and all

civil claims or Consumer-related administrative claims, to the extent permitted by State law, which the Division could have brought prior to the Effective Date against Respondent for violations of the CFA and/or the ITPA arising out of the Investigation as well as the matters specifically addressed in this Consent Order ("Released Claims").

7.2 Notwithstanding any term of this Consent Order, the following do not comprise Released Claims: (a) private rights of action; (b) actions to enforce this Consent Order; and (c) any claims against Respondent by any other agency or subdivision of the State.

## 8. PENALTIES FOR FAILURE TO COMPLY

8.1 The Attorney General (or designated representative) shall have the authority to enforce the provisions of this Consent Order or to seek sanctions for violations hereof or both.

8.2 The Parties agree that any future violations of the provisions of Section 3 of this Consent Order, the CFA and/or the ITPA shall constitute a second or succeeding violation pursuant to N.J.S.A. 56:8-13 and that Respondent may be liable for enhanced civil penalties.

## 9. COMPLIANCE WITH ALL LAWS

9.1 Except as provided in this Consent Order, no provision herein shall be construed as:

    a. Relieving Respondent of its obligation to comply with all State and federal laws, regulations or rules, as now constituted or as may hereafter be amended, or as granting permission to engage in any acts or practices prohibited by any such laws, regulations or rules; or

    b. Limiting or expanding any right the Division may otherwise have to obtain information, documents or testimony from Respondent pursuant to any State or federal law, regulation or rule, as now constituted or as may hereafter be amended, or limiting or expanding any right Respondent may otherwise have pursuant to any State or federal law, regulation or rule, to oppose any process employed by the Division to obtain such information, documents or testimony.

11

## 10. NOTICES UNDER THIS CONSENT ORDER

10.1  Except as otherwise provided herein, any notices or other documents required to be sent to the Division or Respondent pursuant to this Consent Order shall be sent by United States mail, Certified Mail Return Receipt Requested, or other nationally recognized courier service that provides for tracking services and identification of the Person signing for the documents. The notices and/or documents shall be sent to the following addresses:

For the Division:

> Assistant Deputy of Enforcement, Office of Consumer Protection
> New Jersey Division of Consumer Affairs
> 124 Halsey Street - 7th Floor
> P.O. Box 45028
> Newark, New Jersey 07101

For Respondent:

> Ryan C. Loughlin, Esq.
> Mullen Coughlin LLC
> 1275 Drummers Lane, Suite 302
> Wayne, Pennsylvania 19087

IT IS ON THE ___21st___ DAY OF ___May___, 2018 SO ORDERED.

> GURBIR S. GREWAL
> ATTORNEY GENERAL OF NEW JERSEY
>
> By:_____
> KEVIN JESPERSEN, ACTING DIRECTOR
> DIVISION OF CONSUMER AFFAIRS

**THE PARTIES CONSENT TO THE FORM, CONTENT AND ENTRY OF THIS CONSENT ORDER ON THE DATES ADJACENT TO THEIR RESPECTIVE SIGNATURES.**

FOR THE DIVISION:

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY

By: _____  Dated: ____5/14____, 2018
    Russell M. Smith, Jr.
    Deputy Attorney General
    Consumer Fraud Prosecution Section
    124 Halsey Street - 5th Floor
    P.O. Box 45029
    Newark, New Jersey 07101

FOR RESPONDENT:

MULLEN COUGHLIN LLC

By: _____  Dated: ____May 10____, 2018
    Ryan C. Loughlin, Esq.
    1275 Drummers Lane, Suite 302
    Wayne, Pennsylvania 19087

LIGHTYEAR DEALER TECHNOLOGIES, LLC
 D/B/A DEALERBUILT

By: _____  Dated: _____, 2018
    Michael Trasatti, Chief Executive Officer
    2570 4th Street SW, Suite A
    Mason City, Iowa 50401

13

**THE PARTIES CONSENT TO THE FORM, CONTENT AND ENTRY OF THIS CONSENT ORDER ON THE DATES ADJACENT TO THEIR RESPECTIVE SIGNATURES.**

FOR THE DIVISION:

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY


By:_____　　　　　　Dated:_____, 2018
      Russell M. Smith, Jr.
      Deputy Attorney General
      Consumer Fraud Prosecution Section
      124 Halsey Street - 5th Floor
      P.O. Box 45029
      Newark, New Jersey 07101


FOR RESPONDENT:

MULLEN COUGHLIN LLC


By:_____　　　　　　Dated:_____, 2018
      Ryan C. Loughlin, Esq.
      1275 Drummers Lane, Suite 302
      Wayne, Pennsylvania 19087

LIGHTYEAR DEALER TECHNOLOGIES, LLC
  D/B/A DEALERBUILT


By:_[signature]_____　　　Dated:___5/11_____, 2018
      Michael Trasatti, Chief Executive Officer
      2570 4th Street SW, Suite A
      Mason City, Iowa 50401

13