**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Loop, LLC v. CDK Global, LLC*,<br>Case No. 1:18-cv-002521 (N.D. Ill.) | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

**<u>PLAINTIFF AUTOLOOP'S
SUPPLEMENTAL MEMORANDUM PURSUANT TO DKT. 1053</u>**

# INTRODUCTION AND BACKGROUND

Plaintiff Loop, LLC d/b/a AutoLoop ("AutoLoop") submits this supplemental memorandum regarding its work-product privilege claims pursuant to this Court's July 15, 2020 Order. *See* Dkt. 1053. After this Court's June 29, 2020 Order (Dkt. 1027) rejecting AutoLoop's assertion of attorney-client privilege, AutoLoop conducted another review of the challenged privileged documents. It has voluntarily produced 26 documents in full and less redacted versions of 10 more documents. A dispute remains for 123 documents – 108 withheld in full and 15 withheld in part.

CDK Global, LLC's ("CDK") motion should be denied because CDK failed to sufficiently challenge work-product privilege at the proper time to do so (almost a year-and-a-half-ago) and should not be allowed to remedy that deficiency at the tail end of summary judgment. CDK's motion also fails on the merits. The documents at issue fall into two categories.

*First*, from 2013 to 2014, AutoLoop anticipated bringing antitrust claims against The Reynolds and Reynolds Company ("Reynolds") due to Reynolds's blocking of data integrators from accessing Reynolds's Dealer Management System ("DMS"). There is no doubt that AutoLoop anticipated such litigation: AutoLoop engaged outside counsel to evaluate these claims and continually considered filing them throughout this period. *See*, *e.g.*, Tab 1, PRIV_0598. AutoLoop did not waive the work-product privilege by sharing work product in confidence with Superior Integrated Solutions, Inc. ("SIS"). SIS was the data integrator that AutoLoop relied on for access to data on Reynolds's DMS, and which was directly affected by Reynolds's blocking. SIS was sued by Reynolds prior to any of the communications at issue and brought its own antitrust counterclaims against Reynolds. There was no material risk that SIS would disclose AutoLoop's work product to SIS's own litigation adversary.

*Second*, from 2016 to 2017, AutoLoop again anticipated bringing antitrust litigation – this time against both CDK and Reynolds. By mid-2016, CDK – after conspiring with Reynolds – had adopted the same blocking tactics as Reynolds. Here too, there is no doubt that AutoLoop anticipated litigation by May 2016, *see* Exhibit C (May 25, 2016); Exhibit D (Aug. 5, 2016), and AutoLoop filed that litigation in April 2018. Further, the communications at issue were shared among the companies that ultimately became parties to this MDL. There was no waiver of privilege by sharing (in confidence) work product among entities aligned against CDK and Reynolds; that does not does not "substantially increase" the risk of disclosure of that work product to CDK or Reynolds.

**ARGUMENT**

**I.     CDK Failed To Challenge Work-Product Privilege In Its Motion To Compel**

On March 1, 2019, CDK moved to compel AutoLoop to produce 149 documents (12 redacted and 137 withheld in full) on grounds that they had been shared with third parties. *See* Dkt. 544, at 2. AutoLoop had asserted attorney-client and work-product privilege for each of these documents. *See* Dkt. 544-6 & Dkt. 547. However, CDK directed nearly the entirety of its motion to AutoLoop's assertion of attorney-client privilege. CDK's principal argument was that disclosing documents to third parties waived the attorney-client privilege because there was no "common interest." *See* Dkt. 544, at 6-13. CDK made only a single, narrow argument with respect to work-product privilege: for 26 documents shared with SIS, CDK argued that AutoLoop did not establish that it anticipated litigation against Reynolds in 2013 and 2014. *See id.* at 8. CDK never argued that AutoLoop waived work-product privilege, nor did it even address the distinct standard for waiver of that privilege. As this Court has noted, the standard for work-product privilege waiver is "substantially different" than the standard for attorney-client privilege waiver. *See* Dkt. 1011, at 18. The former occurs only "when disclosure to a third party 'substantially increases the

opportunity for potential adversaries to obtain the information.'" *Id.* (quoting *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736 (N.D. Ill. 2014)).

AutoLoop explained this deficiency in its opposition to CDK's motion to compel. *See* Dkt. 573, at 1 ("With one exception, CDK does not contest that the documents are subject to the work-product privilege."); *id.* at 5 ("CDK has not met (or even attempted to satisfy) its burden of showing that AutoLoop shared attorney work product in a way that substantially increased the risk of disclosure to CDK and Reynolds."). As to CDK's limited challenge to work-product privilege – that AutoLoop did not anticipate litigation in 2013 – AutoLoop presented dispositive proof to the contrary. AutoLoop submitted a legal memorandum prepared by outside counsel analyzing antitrust claims against Reynolds during this period. *See id.* at 6-7 (citing Tab 1, PRIV_0598). *See also id.* at 8-10 (explaining work-product privilege claims even though not challenged).

This Court's most recent order correctly notes that "[t]he parties did not adequately address the work-product privilege" in the motion to compel briefing. Dkt. 1053. CDK's motion should be denied on that basis. "[I]nadequately briefed arguments are forfeited." *Dalton v. Teva N. Am.*, 891 F.3d 687, 692 (7th Cir. 2018). Allowing CDK a second chance would be especially inappropriate at this late stage. The deadline for filing motions to compel with respect to privileged documents was March 1, 2019; fact discovery closed April 30, 2019; and the parties are at the tail end of summary judgment briefing, which will be complete on August 28, 2020. As this Court previously explained with respect to discovery requests made before the close of discovery:

> In almost every case, facts or circumstances arise or come to light during the discovery process that one party or the other may want to explore further or in more depth with additional written discovery. But that does not mean that a court should allow the discovery process to expand beyond previously set deadlines or parameters simply because a party would like the opportunity to find out more information even if it thinks that information could be valuable to its case.

Dkt. 498, at 1. There are undoubtedly many arguments that all parties would like to re-raise regarding prior discovery disputes, *see id.* at 2-3, but absent a showing of good cause – which CDK cannot make – this Court should enforce the case deadlines.

## II. The Disputed Documents Are Covered By The Work-Product Privilege

Each of the disputed documents meets the work-product requirements laid out by this Court's prior opinion: "'The work-product doctrine protects (1) documents and tangible things otherwise discoverable (2) prepared by or for another party or by or for that other party's representative (3) in anticipation of litigation or for trial.'" Dkt. 1011, at 16-17 (quoting *Christman v. Brauvin Realty Advisors, Inc.,* 185 F.R.D. 251, 255 (N.D. Ill. 1999)). AutoLoop provides an overview of its privilege claims below and has included an Appendix that groups similar documents and provides additional information regarding AutoLoop's privilege claims.[1]

### A. 2013-2014: AutoLoop Anticipated Antitrust Litigation Against Reynolds

The 2013-2014 documents are predominately communications between AutoLoop and SIS. AutoLoop provides software applications to dealers, and for those applications to work properly, AutoLoop must purchase data integration services to access data on Defendants' DMS. SIS provided data integration services to AutoLoop from 2013 to 2014 on Reynolds's DMS. Both AutoLoop and SIS thus were adversely affected by Reynolds's attempts to block data integrators (like SIS) and to force application vendors (like AutoLoop) to use Reynolds's own over-priced data integration service. Several communications also include two other third parties – Dominion Enterprises and EasyCare. Dominion was similarly situated to SIS and AutoLoop because it

---

[1] AutoLoop refers this Court to Authenticom's summary judgment brief regarding the antitrust claims for further case background regarding Defendants' unlawful conduct, *see* ECF No. 978, and refers the Court to AutoLoop's summary judgment brief on damages for an explanation of the aligned interests of application vendors (like AutoLoop) and data integrators (like SIS), *see* ECF No. 951.

provided both a data integration service (SelectQu) and various applications to dealers. EasyCare was an application vendor similarly situated to AutoLoop.

**Anticipated Litigation.** AutoLoop anticipated antitrust litigation against Reynolds as early as January 2012, *see* Tab 1, PRIV_0598, and it continually evaluated the possibility of bringing those claims throughout that period, *see*, *e.g.*, Tab 2, AL_MDL_0083406; Tab 15, PRIV_0114; Tab 25, PRIV_0179. The other party to the communications – SIS – did bring antitrust litigation against Reynolds due to Reynolds's blocking of SIS. *See* SIS Answer, *Reynolds & Reynolds Co. v. Superior Integrated Solutions, Inc.*, Dkt. 16, No. 12-848 (S.D. Ohio filed Jan. 17, 2013); *id.* SIS Am. Answer, Dkt. 52-1 (filed Oct. 15, 2013); *id.* SIS Am. Answer, Dkt. 89 (filed Feb. 7, 2014). Further, during this period, there was an ongoing FTC investigation of Reynolds's practices of blocking access to its DMS. *See* Ex. A, Lamb Tr. 22:2-24:12; Ex. B, Schaefer Tr. 13:24-14:19. AutoLoop could reasonably anticipate participating in that adversarial proceeding as a third party. *See*, *e.g.*, *Chemcentral/Grand Rapids Corp. v. EPA*, 1992 WL 281322, at *5 (N.D. Ill. Oct. 6, 1992) (holding that documents prepared during enforcement agency investigation of potential wrongdoing were prepared in anticipation of litigation); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993) (concluding that report commissioned in response to OSHA inquiry and investigation "was prepared in anticipation of litigation"); *In re LTV Securities Litig.*, 89 F.R.D. 595, 612 (N.D. Tex. 1981) ("Investigation by a federal agency presents more than a 'remote prospect' of future litigation and gives grounds for anticipating litigation sufficient for the work-product rule to apply.") (citing cases). The privileged documents from the 2013 to 2014 period thus reflect discussions between AutoLoop and SIS (and EasyCare and Dominion) about both anticipated and actual litigation against Reynolds and third-party participation in an anticipated FTC enforcement action against Reynolds. *See Goodyear Tire &*

*Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 536 (S.D. Ind. 1999) (witness statements collected by insurance company in light of threatened lawsuits easily satisfied the anticipation of litigation standard because insurance company was facing "articulable claim likely to lead to litigation") (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996)).

**"By Or For" AutoLoop.** As set forth in more detail in the Appendix, the documents were "'prepared *by or for* another party or *by or for* that other party's representative.'" Dkt. 1011, at 16-17 (quoting *Christman v. Brauvin Realty Advisors, Inc.*, 185 F.R.D. 251, 255 (N.D. Ill. 1999)) (emphasis added); *see* Dkt. 571, at 13-14 (Authenticom brief explaining application of "by or for" requirement); Fed. R. Civ. P. 26(b)(3)(A). The documents contain mental impressions either of AutoLoop's counsel or information collected for use by AutoLoop's counsel, which if disclosed, would reveal AutoLoop's counsel's mental impressions and legal strategy regarding the anticipated litigation and FTC investigation. *See Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243 at *1-2 (N.D. Ill. June 27, 2019) (documents prepared at direction of counsel in anticipation of litigation are protected work product); *Breneisen v. Motorola, Inc.*, 2003 WL 21530440, at *4-5 (N.D. Ill. July 3, 2003) (chronologies and documents prepared at the direction of counsel in anticipation of litigation are protected work product).

**Waiver.** AutoLoop did not waive the work-product privilege by sharing materials with SIS. Prior to any of the privileged communications, Reynolds sued SIS, *see* Compl., *Reynolds v. SIS*, Dkt. 1, No. 12-848 (S.D. Ohio Nov. 1, 2012), and SIS brought antitrust counterclaims. Further, AutoLoop and SIS expressly indicated their intent to keep these communications confidential. *See*, *e.g.*, Tab 50, PRIV_0763 (Header: "Privileged and Confidential – Subject to Attorney-Client Privilege, Work Product Doctrine and Common Interest Doctrine."). AutoLoop's sharing of work product (in confidence) with SIS – an active litigation adversary of Reynolds with

similar legal interests as AutoLoop – did not "substantially increase" the risk of disclosure of that work product to Reynolds. *See* Dkt. 1011, at 18. The same goes for Dominion and EasyCare who shared similar legal interests with SIS and AutoLoop.[2]

### B. 2016-2017: AutoLoop Anticipated And Filed Antitrust Litigation Against CDK

The 2016-2017 documents are pre-litigation communications between parties to this MDL. By the middle of 2016, CDK's policies toward data integrators mirrored those of Reynolds due to the *per se* unlawful conspiracy between the two dominant DMS providers. Several of the parties harmed by Defendants began discussing anticipated civil antitrust litigation no later than May 2016. There was also an ongoing FTC investigation during this period resulting in subpoenas (Civil Investigative Demands) to Defendants and parties to the privileged communications (for example, Authenticom). *See* CDK Global, Inc. 10-K, at 25 (Aug. 8, 2017) ("We have also received from the FTC a Civil Investigative Demand consisting of a request to produce documents relating to any agreement between ourselves and Reynolds and Reynolds.").

**Anticipated Litigation.** As noted in Authenticom's motion to compel opposition brief, AutoLoop and others anticipated bringing the antitrust claims that are now the core of this MDL no later than May 2016. *See* Dkt. 571, at 13-14 (citing PRIV_0539 in the *Authenticom* action, submitted *in camera* here as Exhibit D, and SIS_DMS_0018107, submitted *in camera* here as Exhibit C)). Exhibit C is an email dated May 25, 2016 that demonstrates anticipated litigation ("we are still going to litigate") and retention of outside counsel ("the law firm out of D.C."). Exhibit D is an August 5, 2016 email titled "Common Interest Privileged: R&R and CDK" that

---

[2] This Court previously noted that a separate company who was not party to these communications – MVSC – sued SIS in February 2017 – more than three years after the last of the SIS-AutoLoop privileged emails. *See* Dkt. 1011, at 5. That suit has no relevance. Nor does SIS's decision not to attend an FTC meeting in the middle of 2016 have any relevance to waiver of work-product privilege in 2013 and January 2014. *See id.* at 5 n.1.

further discusses the anticipated antitrust litigation against CDK and Reynolds. Further the FTC opened an investigation by August 2017. Each of the communications at issue was made in anticipation of the civil antitrust litigation that is now this MDL and in anticipation of an FTC enforcement action, in which the parties to the emails would likely be involved as injured third parties. This satisfies the "in anticipation of litigation" requirement. *See Chemcentral/Grand Rapids*, 1992 WL 281322, at *5; *Bally's Park Place Hotel*, 983 F.2d at 1261; *LTV Securities Litig*. 89 F.R.D. at 612.

**"By Or For" Parties.** Each of the documents contains work product "by or for" a party to this MDL. The principal participants in the 2016-2017 communications were Authenticom (a named plaintiff), AutoLoop (a named plaintiff and putative class member), and Dominion (a putative class member). As set forth in more detail in the Appendix, the documents either contain the mental impressions of legal counsel for these parties to the MDL or contain information collected for use by legal counsel for these parties, which if disclosed, would those attorneys' mental impressions and legal strategy. *See Smith-Brown*, 2019 WL 2644243, at *1-2; *Breneisen*, 2003 WL 21530440, at *4-5.[3]

**Waiver.** CDK cannot satisfy the substantial burden of showing that sharing work product between the entities that ultimately became parties to this litigation "substantially increase[d] the opportunity for [Defendants] to obtain the information." Dkt. 1011, at 18 (quoting *Miller UK Ltd.*, 17 F. Supp. 3d at 736). Each of these parties was harmed in similar ways by Defendants' conduct

---

[3] AutoLoop respectfully submits that this Court misapprehended the facts in its prior statement that the "common interest group" members are not parties to the litigation. *See* Dkt. 1027, at 3-6 (adopting ECF No. 1011, at 5-8); Dkt. 571, at 10 (Authenticom brief noting that the common interest group members were absent class members, and citing *Schacher v. Am. Acad. Opthalmology, Inc.*, 106 F.R.D. 187, 192 (N.D. Ill. 1985), for the proposition that the "common interest privilege [applies] to communications between putative class members")).

and had a shared interest in seeking redress for Defendants' unlawful conspiracy acts. Data integrators like Authenticom had their businesses decimated; application vendors like AutoLoop have been forced to pay exorbitant fees for data integration services; and dealers must pay higher prices for applications due to the increased costs for application vendors. The parties also expressly indicated their intent to keep these documents confidential. *See*, *e.g.*, Tab 98, PRIV_0650 ("Subject to Non-Disclosure Agreement"); *see also* Dkt. 571, at 11 n.9.

The only two parties to these communications that are not currently plaintiffs or putative class members are eLead and the National Automobile Dealer Association ("NADA"). There was no waiver for communications shared with these two entities because, at the time of those communications, there was no material risk that these two parties would disclose the work product to CDK or Reynolds. NADA is the trade association for dealers and represents their interests. And eLead is an application vendor that – at the time of the communications – was a proponent of seeking legal remedies for CDK's and Reynolds's unlawful acts. *See* Tab 94, PRIV_0470 (call invite regarding "FTC Meeting" to Mark Queen). Although eLead later decided to "remain neutral" – though it has not formally opted out of the class – that had no effect on whether the privilege was waived at the time of the communications. Indeed, that "neutrality" declaration demonstrates that eLead was unlikely to "take a side" and disclose work product to Defendants.[4] Nor did CDK's subsequent acquisition of eLead retroactively result in a waiver of privilege. *Cf.* Dkt. 573, at 10-12 (explaining that present adversity does not defeat the existence of privilege prior to that adversity).

---

[4] [redacted]

## CONCLUSION

CDK's motion to compel should be denied.

Dated: July 30, 2020

Respectfully submitted,

*/s/ Daniel V. Dorris*
Daniel V. Dorris
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
ddorris@kellogghansen.com
dho@kellogghansen.com

*Counsel for Loop, LLC d/b/a AutoLoop*

**CERTIFICATE OF SERVICE**

      I, Daniel V. Dorris, an attorney, hereby certify that on July 30, 2020 I caused a true and correct copy of the foregoing **PLAINTIFF AUTOLOOP'S SUPPLEMENTAL MEMORANDUM PURSUANT TO DKT. 1053** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

      */s/ Daniel V. Dorris*
Daniel V. Dorris
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
ddorris@kellogghansen.com
dho@kellogghansen.com

# APPENDIX

**January 2013**

- **Tab 1, PRIV_0598 –** This contains the mental impressions of AutoLoop's outside counsel Barry Buchman.

- **Tab 4, AL_MDL_0081337; Tab 7, AL_MDL_0083359; Tab 5, AL_MDL_0083363; Tab 11, AL_MDL_0083366; Tab 10, AL_MDL_0083373; Tab 3, AL_MDL_0083380; Tab 8, AL_MDL_0083383; Tab 6 AL_MDL_0083389; Tab 9, AL_MDL_0083393; Tab 12, AL_MDL_0083399; Tab 2, AL_MDL_0083406** – The redacted portions of these emails contain the mental impressions of AutoLoop's outside counsel Barry Buchman.

**June 2013**

- **Tab 15, PRIV_0114; Tab 16, PRIV_0153; Tab 14, PRIV_0628; Tab 13, PRIV_0255** – These emails reflect the the legal advice and mental impressions of SIS's outside counsel Killgore, Pearlman, Ornstein & Squires, P.A. ("Killgore") provided to AutoLoop's counsel Nathan Jaye for consideration in anticipation of litigation. *See* Tab 15, PRIV_0114 (call between "Nathan" (AutoLoop) and "Phil's attorneys" (SIS)).

- **Tab 18, AL_MDL_0081471; Tab 17, AL_MDL_0081562** – These have been miscategorized as third-party communications. They are internal AutoLoop emails reflecting either the request for or provision of legal advice from AutoLoop's in-house counsel Nathan Jaye.

**July 2013**

- **Tab 19, AL_MDL_0081479** – The redacted portions of this email reflect the mental impressions of SIS's outside counsel provided to AutoLoop's counsel and AutoLoop's employee's views on litigation formed in consultation with AutoLoop's in-house counsel.

**August 2013**

- **Tab 28, PRIV_0002; Tab 20, PRIV_0066; Tab 23, PRIV_0103; Tab 22, PRIV_0163; Tab 25, PRIV_0179; Tab 21, PRIV_0245; Tab 27, PRIV_0465; Tab 24, PRIV_0678; Tab 26, PRIV_0751 –** These documents collect information for AutoLoop's counsel consideration in advising on anticipated antitrust litigation ("the class action attorney"). The information is forwarded to SIS for use by SIS's outside counsel ("Mark" Ornstein) in ongoing litigation against Reynolds.

- **Tab 31, PRIV_0044; Tab 29, PRIV_0050; Tab 32, PRIV_0197; Tab 30, PRIV_0467** – These emails contain the mental impressions of SIS's outside counsel for use by AutoLoop's counsel in its contemplated antitrust litigation. *See* PRIV_0044 (sent to in-house counsel "Nathan" Jaye).

- **Tab 34, PRIV_0882; Tab 35, PRIV_0883; Tab 36, PRIV_0884; Tab 37, PRIV_0885; Tab 38, PRIV_0886; Tab 39, PRIV_0887; Tab 40, PRIV_0888** – These emails collect information for use by AutoLoop's counsel and SIS's outside counsel Mark Killgore Ornstein. *See*, *e.g.*, *E.g.*, Tab 36, PRIV_0884 (email from Nathan Jaye, AutoLoop's in-house counsel); Tab 39, PRIV_0887 (emails from Mark Ornstein); Tab 40, PRIV_0888 (same).

- **Tab 41, PRIV_0456; Tab 42, PRIV_0684** – These emails contain the mental impressions of counsel (Nathan Jaye, AutoLoop's in-house counsel and Mark Ornstein, SIS's outside counsel) for the legal strategy for the FTC's investigation of Reynolds.

- **Tab 43, PRIV_0708** – This email is to Rusty Friddell, in-house counsel for Dominion – a data integrator that shared AutoLoop's interests. It contains the mental impressions and legal strategy of AutoLoop's in-house counsel Nathan Jaye.

**September 2013**

- **Tab 45, PRIV_0693; Tab 44, PRIV_0719** – These emails were shared in confidence with EasyCare, another application vendor. They contain the mental impressions and legal strategy of AutoLoop's in-house counsel Nathan Jaye.

- **Tab 48, PRIV_0219; Tab 47, PRIV_0260; Tab 46, PRIV_0357** – These emails collect information for use by AutoLoop's outside counsel Barry Buchman for use in anticipated of litigation against Reynolds. The emails were shared in confidence with Dominion's in-house counsel Rusty Friddell.

**October 2013**

- **Tab 49, PRIV_0555** – This email collects for use by AutoLoop's outside counsel Barry Buchman for use in anticipated of litigation against Reynolds

**January 2014**

- **Tab 50, PRIV_0763** – This email is a request for information by AutoLoop's in-house counsel Nathan Jaye to respond to an ongoing government investigation (the "FTC Inquiry").

- **Tab 51, AL_MDL_0081576** – The redacted portions of this email reflect the legal strategy and mental impressions of AutoLoop's in-house counsel with respect to anticipated litigation against Reynolds. This information was shared as "very confidential" with EasyCare – another application vendor.

**June & July 2016**

- **Tab 55, PRIV_0148; Tab 54, PRIV_0321; Tab 53, PRIV_0380; Tab 52, PRIV_0446; Tab 56, PRIV_0490; Tab 61, PRIV_0019; Tab 60, PRIV_0238; Tab 62, PRIV_0611; Tab 58, PRIV_0643; Tab 57, PRIV_0672; Tab 59, PRIV_0673; Tab 63, PRIV_0386; Tab 64, PRIV_0502; Tab 65, PRIV_0556; Tab 66, PRIV_0422; Tab 67, PRIV_0265; Tab 68, PRIV_0291; Tab 69, PRIV_0088; Tab 70, PRIV_0099; Tab 78, PRIV_0126; Tab 77, PRIV_0145; Tab 74, PRIV_0227; Tab 73, PRIV_0305; Tab 71, PRIV_0427; Tab 79, PRIV_0561; Tab 75, PRIV_0582; Tab 76, PRIV_0657; Tab 80, PRIV_0667; Tab 72, PRIV_0750; Tab 85, PRIV_0111; Tab 83, PRIV_0452; Tab 86, PRIV_0572; Tab 81, PRIV_0632; Tab 82, PRIV_0638; Tab 84, PRIV_0772; Tab 87, PRIV_0499; Tab 88, PRIV_0426; Tab 89, PRIV_0307; Tab 92, PRIV_0132; Tab 90, PRIV_0320; Tab 91, PRIV_0464; Tab 93, PRIV_0248** – These emails collect information for use by Davis Polk (outside counsel for Dominion) for anticipated litigation against CDK and Reynolds. Dominion is a party to the MDL as a putative vendor class member. It also contains the mental impressions of parties to this litigation (Dominion's counsel at Davis Polk and AutoLoop's in-house counsel Nathan Jaye).

**December 2016**

- **Tab 94, PRIV_0470; Tab 95, PRIV_0480; Tab 96, PRIV_0514; Tab 97, PRIV_0565** – These emails collect information for counsel for MDL plaintiffs AutoLoop (Nathan Jaye), Dominion (Davis Polk), and CarFax (Arnold & Porter) for use in anticipated litigation. Also included on the email are eLead (an application vendor harmed by CDK's and Reynolds's conduct) and NADA (the trade group for dealers, who are a party to this litigation).

- **Tab 99, PRIV_0010; Tab 98, PRIV_0650; Tab 102, PRIV_0038; Tab 100, PRIV_0061; Tab 103, PRIV_0230; Tab 101, PRIV_0366; Tab 105, PRIV_0734; Tab 104, PRIV_0739; Tab 106, PRIV_0651; Tab 108, PRIV_0173; Tab 110, PRIV_0419; Tab 111, PRIV_0439; Tab 112, PRIV_0475; Tab 107, PRIV_0517; Tab 109, PRIV_0663** – These emails collect information for use by Dominion's counsel Davis Polk in anticipated litigation. Also included on the emails are Authenticom (a plaintiff to the MDL), counsel for AutoLoop (a plaintiff in the MDL), DARCARS (a putative dealer class member), and eLead (an application vendor). The materials are "Subject to Non-Disclosure Agreement."

**March 2017**

- **Tab 114, PRIV_0303; Tab 113, PRIV_0064** – These emails concern the collection of information for anticipated litigation by Kellogg Hansen (Authenticom's counsel).

**May 2017**

- **Tab 115, PRIV_0689** – This email contains the mental impressions of AutoLoop's in-house counsel Nathan Jaye regarding anticipated litigation. These impressions were shared with in-house counsel from Dominion (a putative vendor class member).

**December 2017**

- **Tab 116, PRIV_0187; Tab 117, PRIV_0827; Tab 118, PRIV_0828; Tab 119, PRIV_0829; Tab 120, PRIV_0833; Tab 121, PRIV_0834; Tab 122, PRIV_0835; Tab 123, PRIV_0836** – These emails contain the mental impressions of Kellogg Hansen (then counsel for AutoLoop) made in anticipation of litigation. These were shared in confidence with other application vendors (AutoPoint and DealerFX). AutoLoop filed a class action on behalf of application vendors in March 2018; AutoPoint and DealerFX are putative class members.