# Exhibit 2

# MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

**Jessica A. Michaels**
Direct Tel +1 312 701 7121
Direct Fax +1 312 706 8135
jmichaels@mayerbrown.com

January 7, 2019

<u>B</u><small>Y</small> <u>E</u>-<small>MAIL</small>

Daniel J. Nordin, Esq.
G<small>USTAFSON</small> G<small>LUEK</small> PLLC
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402

Re:     *DMS Antitrust Litig.* MDL 2817

Dear Daniel:

I write in response to your letter dated December 25, 2018 regarding the privilege log (the "Log") produced by defendant CDK Global, LLC ("CDK") in the above referenced matter. While I will address each issue raised in your letter in additional detail below, CDK disagrees with your characterizations of the Log and disagrees that the Log is deficient.

*Email Chains*

Dealership Plaintiffs' request that CDK provide sender and recipient information for lesser-included emails within email chains on the Log (which are not logged separately) is contrary to Paragraph 9(b) of the Stipulated Order Re: Discovery of Electronically Stored Information (the "ESI Order") (Dkt. 105). Paragraph 9(b) of the ESI Order states:

> "For each Document compromising a chain of privileged e-mails, the Withholding Party need only include one entry for the top/most recent email on the privilege/redaction log for the entire e-mail chain and need not log each e-mail contained in the chain separately."

This provision, which was heavily negotiated during a lengthy meet-and-confer process that included Dealership Plaintiffs, is clearly intended to reduce the burden of logging each individual email in an email chain. Dealership Plaintiffs' cannot reopen this issue now, after CDK has spent significant resources creating a privilege log, by complaining that CDK has done exactly what it was required to do under the ESI Order—provide a privilege log that includes one entry for the top/most recent email on the email chain.

Your assertion that the "documents at issue here do not 'comprise a chain of privilege e-mails,' as the top/most recent email in each chain is not privileged" misses the point with regard to instances where the document includes redactions of lower emails. Paragraph 9(b) expressly states "the Withholding Party need only include one entry for the top/most recent email on the *privilege/redaction log* for the entire e-mail chain." (emphasis added). Thus, the parties clearly contemplated that this provision applied to redacted documents, *i.e.*, documents where the

Mayer Brown LLP operates in combination with other Mayer Brown entities, which have offices in North America,
Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.
730986821

Daniel J. Nordin, Esq.
January 7, 2019
Page 2

top/most recent email in each chain is not privileged including the documents identified in your December 25 letter.

Your assertion that for the "2,287 email chains for which the privilege claim relates to an e-mail that is not the top/most recent in the chain[,]" CDK's log "does not disclose the senders or recipients of the email for which privilege is claimed" is similarly misplaced. As noted above, in accordance with the ESI Order, CDK has provided sender and recipient information on a document-by-document basis for each document appearing on the Log. Further, Dealership Plaintiffs are already in possession of the requested sender/recipient information as to partially privileged documents, as the redactions that CDK applied to these documents leave sender and recipient information fully visible. Moreover, CDK has provided a "Subject Matter and Description of Document" column in the Log that describes the subject matter and content of the documents appearing on the Log in a manner consistent with the requirements of the Federal Rules of Civil Procedure. The "Subject Matter and Description of Document" column included on the log describes the entire email chain and not just the un-redacted/non-privileged portions of the document. That is, in accordance with CDK's obligations under the ESI Order and the Federal Rules, CDK has "describe[d] the nature of the documents, communications, or tangible things not produced or disclosed… in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 25(5)(b). Neither the ESI Order nor the Federal Rules require CDK to specifically *log* "the senders or recipients" of each and every email embedded within a chain of emails subject to a privilege claim. To the contrary, the ESI Order reflects the parties' agreement that such a logging requirement would be overly burdensome and unnecessary to comport with the Federal Rules.

*Emails "cc'd" to Attorneys*

CDK disagrees with what appears to be Dealership Plaintiffs' knee-jerk challenge to all email communications included on CDK's Log that "were not sent directly to the attorney but, rather, the attorney was included on the 'cc:' line." The Federal Rules do not require that an attorney must be on the "to" or "from" line of an email communication in order for that communication to be privileged. While the mere fact that a lawyer received a communication may not make the communication privileged, a request for legal advice is still privileged even if it is brief and even if an attorney is only copied on the request. *See, e.g., United States v. Supervalu, Inc.*, 2018 WL 2416588, *4 (C.D. Ill. May 29, 2018) (holding that a single sentence in an email copying an attorney was properly redacted as a request for legal advice). *In re Avantel, S.A.*—which you cite in your December 25 letter—expressly acknowledges this principle:

> "[W]hile it is not disputed that 26 of the documents were cc'ed to attorneys, this fact does not disqualify it for the privilege under the subject-matter test." *In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003).

Moreover, based on the privilege logs produced by other MDL Plaintiffs in this litigation, Plaintiffs clearly recognize that documents may be subject to a privilege despite including an attorney only on the "cc" line. For example, the privilege log produced by Plaintiff Cox

730986821

Mayer Brown LLP

Daniel J. Nordin, Esq.
January 7, 2019
Page 3

Automotive, Inc. ("Cox") includes 414 entries asserting attorney-client privilege where an attorney appears on the "cc" line but is not on the "to" or "from" line. AutoLoop's privilege log includes 266 similar entries, Authenticom's log includes 187 similar entries, and MVSC's log includes 57 similar entries. Thus, entries on CDK's Log are not deficient simply because they identify an attorney on the "cc" line. However, if Dealership Plaintiffs have a specific objection to subject matter description of a particular communication for which an attorney is on the "cc" line, CDK will review the description on a case-by-case basis and supplement the Log description as appropriate.

### *Information Purportedly Disclosed Outside of CDK*

You also request that "CDK [] produce all emails disseminated outside the company or provide specific information to justify its claim that such dissemination did not waive privilege." CDK continues to investigate entries in its privilege log purportedly reflecting communications with third parties. As such, CDK suggests a 30-day extension of the motion to compel deadline with respect to log entries challenged by Dealership Plaintiffs on the basis of third-party waiver to allow CDK to complete its investigation and to permit the parties to engage in further meet-and-confer discussions. As a result of CDK's investigation to date, CDK states the following:

a) *Communications with David Webster and other employees of Aberdeen Strategies (relates to @aberdeenstrategies.com)*

Various entries on the Log include communications with David Webster at Aberdeen Strategies, a strategic communications firm hired by CDK to assist with communications efforts on corporate matters, including responses to the ongoing litigation. *See, e.g.,* CDK_Priv_000312, CDK_Priv_003221, and CDK_Priv_003223. Each communication with Aberdeen Strategies that appears on the Log is a confidential communication between CDK and its agent that was made for the purpose of obtaining or providing legal advice. As a result, these communications are protected by the attorney-client privilege and are properly included on the Log. *See*, *Makula v. Sanwa Bus. Credit Corp.*, No. 96 C 7138, 1997 WL 460935, at *7 (N.D. Ill. Aug.8, 1997) (finding that communications between a third party investment advisor and counsel were protected by the attorney-client privilege to the extent that they were made for the purpose of providing or obtaining legal advice).

b) *Communications with CDK Subsidiaries (relates to @dmotorworks.com and @digitalmotorworks.com)*

The excel file that you provided challenges communications with individuals using @dmotorworks.com and @digitalmotorworks.com domains. Communications with these email addresses are not communications with third parties, as Digital Motorworks was a wholly-owned CDK subsidiary during the timeframe of the communications at issue. *In re JP Morgan Chase & Co. Sec. Litig.*, No. 06 C 4674, 2007 WL 2363311, at *6 (N.D. Ill. Aug. 13, 2007) ("Case law in this district demonstrates that confidential documents shared between members of a corporate family do not waive the attorney-client privilege.").

730986821

Mayer Brown LLP

Daniel J. Nordin, Esq.
January 7, 2019
Page 4

    *c)  Communications with @stoneeagle.com*

CDK's Log contains one entry—CDK_Priv_0010570—that reflects communications with an individual using a @stoneeagle.com domain. Upon further investigation, it appears that this document was inadvertently logged and CDK will produce it.

    *d)  Communications with Jeffrey Schieber and other attorneys from Taft Stettinius & Hollister LLP (relates to @taftlaw.com)*

The excel file that you provided challenges communications with Jeffrey Schieber because "his relationship to CDK is unclear." We disagree. The "ESQ" following certain names—including Jeffrey Schieber—in the Author, To, From, CC, and BCC columns of the Log denotes an attorney acting in a legal capacity on behalf of CDK with respect to that particular communication. Jeffrey Schieber is a partner at Taft Stettinius & Hollister LLP, an outside law firm that provides legal advice to CDK relating to various litigation issues. Communications with Mr. Schieber are properly included on the Log.

    *e)  Communications with David Rogers and other attorneys from McDermott Will & Emery (relates to @mwe.com)*

CDK's Log includes one communication with David Rogers, a partner at the law firm McDermott Will & Emery. *See*, CDK_Priv_0000474. McDermott Will & Emery was hired by CDK to provide legal advice regarding certain employee benefits matters. Upon re-review, the "ESQ" was inadvertently not included after Mr. Rogers' name in the "To" column. Accordingly, if you would like, CDK will supplement the Log with this information.

    *f)  Other Third Parties*

As stated above, CDK continues to investigate other entries on the Log that purportedly include communications with third parties. Please let us know by January 11, 2019 whether MDL Plaintiffs are amenable to a 30-day extension of the motion to compel deadline with respect to log entries challenged by Dealership Plaintiffs on the basis of third-party waiver to allow CDK to complete its investigation and allow the parties to continue further meet-and-confer.

*Documents that Purportedly "Pertain[] to subjects not predominantly legal in nature"*

Your letter further asserts that "[t]he CDK Log describes many of the document claimed to be privileged as pertaining to subjects not predominantly legal in nature." Similarly, the excel file you provided claims that many of the entries on the Log "do[] not involve predominately legal, as opposed to business, matters and related communications are therefore not privileged." These objections to the Log are not well-taken.

As explained in the discussion of this same issue in Reynolds's January 4, 2019 letter to Dealership Plaintiffs, there is no requirement that the subject-matter of a communication involve

730986821

Daniel J. Nordin, Esq.
January 7, 2019
Page 5

only or even predominantly "legal issues" for it to be protected by the attorney-client privilege. Legal advice sought and/or provided on commercial or business subjects is privileged if the communication was made in confidence for the purpose of facilitating legal services. *See, e.g.*, *Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007), aff'd, 580 F.3d 485 (7th Cir. 2009) ("A discussion of 'non-legal issues' can very often be privileged, however.")

As the "Subject Matter and Description of Document" column on CDK's Log makes clear, CDK has asserted privilege over communications that involve the request for and provision of legal advice relating to a variety of topics, including contract negotiation, drafting, and enforcement and various other commercial issues. These communications were properly withheld or redacted and CDK's privilege descriptions are sufficient.

*Group Emails*

Additionally, you claim that Dealership Plaintiffs are not able to determine whether certain individuals are "within the sphere of corporate privilege" because the Log does not identify members of group emails. Moreover, you assert that the Log includes emails that were "subsequently disseminated to a broader group of individuals," thereby waiving the privilege.

With respect to the challenged distribution lists, based on CDK's investigation to date, none of them include non-CDK employees. Additionally, each communication was restricted to persons who had responsibilities relevant to the communications at issue. Therefore, CDK has properly redacted or withheld these communications and described them in accordance with its obligations under the Federal Rules. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 1996 WL 5180, *4-5 (N.D. Ill. 1996) (documents properly logged as privileged where they were distributed to employees involved in a particular matter and maintained in confidence).

With regard to your complaints based on the number of people who received a particular communication, as *Muro* clearly states, "There is no rule of law . . . that puts a numerical upper limit on the number of corporate employees who can be within the sphere of privilege." *Muro v. Target Corp.,* 250 F.R.D. 350, 364 (N.D. Ill. 2007) (citations omitted). Courts have previously upheld the privilege assertion on documents sent to as many as eighty-six people. *See, e.g.*, *id.* (citations omitted) ("[I]n *Upjohn*, for instance, communications with eighty-six corporate employees were held to be within the scope of a potential privilege.")

*No Attorney Identified*

Finally, in your letter you assert that "[a] number of entries on the Log do not identify an attorney as being involved in the communication claimed to be privileged." It appears from our initial investigation that each of these entries is an attachment to a confidential attorney-client communication that is an integral part of that communication and is therefore properly withheld.

As explained in our November 16, 2018 correspondence, CDK individually identified some privileged attachments as "Documents attached to email between attorney(s) and clients" on

730986821

Mayer Brown LLP

Daniel J. Nordin, Esq.
January 7, 2019
Page 6

certain of its initial privilege logs prepared according to Paragraph 13(a) of the Agreed Confidentiality Order (Dkt. 104) following CDK's identification of the documents as inadvertently Disclosed Protected Information. These entries do not include an independent reference to an attorney, as their privilege derives from the parent email.[1] For example, CDK_Priv_0000153, which you challenge as "not identify[ing the] attorney involved in the purported provision of legal advice," is a privilege attachment to CDK_Priv_0000152, which clearly indicates that the communication provides information requested by Mayer Grashin ESQ for the purpose of rendering legal advice regarding a particular litigation and/or settlement.

Moreover, MDL Plaintiffs were required to challenge any documents—including individually-identified privileged attachments—logged by CDK pursuant to Paragraph 13(a) of the Agreed Confidentiality Order "within ten business days of receipt of the claim of privilege or protection." *See* Agreed Confidentiality Order ¶13(c). As a result, your challenge to these Log entries is barred, notwithstanding that CDK included the entries it initially logged pursuant to Paragraph 13(a) of the Agreed Confidentiality Order in the subsequent iterations of its Log provided to MDL Plaintiffs on November 2, 2018 (and as amended on December 5, 2018) .

The spreadsheet you provided also identifies a number of documents that were withheld under the part-and-parcel principle but whose parent email does not appear on the Log. These documents are included on the privilege log that will be produced to the Federal Trade Commission in response to the Civil Investigative Demand ("CID") issued to CDK. Once CDK's FTC log is complete, it will be re-produced to MDL Plaintiffs. To account for this, CDK proposes an extension on the motion to compel deadline with respect to all log entries appearing on the FTC CID log, running for 30 days after the date the log is produced to MDL Plaintiffs.

Regards,

*/s/ Jessica A. Michaels*
Jessica A. Michaels

cc:     Plaintiffs' Co-Lead Counsel
        Defendants' Counsel

---

[1] Attachments to a confidential attorney-client communication are considered an integral part of that communication and may properly be withheld from discovery, regardless of the attachments' origins in the public domain, or their later dissemination. As such, even though an attachment might not be "independently" privileged in other situations, its inclusion in an attorney-client communication brings it within the umbrella of privilege. *See, e.g., Muro*, 250 F.R.D. at 363 ("[F]orwarded material is similar to prior conversations or documents that are quoted verbatim in a letter to a party's attorney. A party can therefore legitimately withhold an entire e-mail forwarding prior materials to counsel.").