PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | |
| ALL ACTIONS | Hon. Robert M . Dow, Jr. |
| | Magistrate Judge Jeffrey T. Gilbert |

**CDK GLOBAL, LLC'S RESPONSE TO AUTOLOOP AND COX AUTOMOTIVE'S MOTION TO CLARIFY AND RECONSIDER JUNE 29, 2020 ORDER AND AUTOLOOP'S SUPPLEMENTAL MEMORANDUM**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      Introduction .................................................................................................. 1

II.     CDK Did Not "Waive" Challenges to AutoLoop's Work Product Claims ...................... 1

III.    The Work Product Doctrine Does Not Apply to AutoLoop's Email
        Communications With a Broad Array Of Unaffiliated Third Parties From a
        Multiyear Period (2013-2017) In Which There Was Never Any Actual Litigation
        Involving AutoLoop ....................................................................................... 4

        A.      *In Camera* Tabs 1-51: AutoLoop's Third-Party Communications with SIS
                and Others From 2013-2014 Are Not Protected Work Product .......................... 5

        B.      *In Camera* Tabs 52-123: AutoLoop's Third-Party Communications with
                the "Common Interest" Group From 2016-2017 Are Not Protected Work
                Product ....................................................................................................... 11

IV.     Conclusion ................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Inc. v. Mednax, Inc.*,
2019 WL 6250850 (E.D. Pa. Nov. 22, 2019) ....................................................................9, 13

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*,
499 F.2d 232 (2d Cir. 1974)...................................................................................................6

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
1993 WL 515493 (N.D. Ill. Dec. 7, 1993)............................................................................4

*In re Aqua Dots Prod. Liab. Litig.*,
270 F.R.D. 322 (N.D. Ill. 2010), *aff'd*, 654 F.3d 748 (7th Cir. 2011) ..............................10, 14

*Askew v. Wachovia Bank of Delaware*,
2009 WL 10708317 (E.D.N.C. May 15, 2009) .....................................................................6

*Chemcentral/Grand Rapids Corp. v. U.S. E.P.A.*,
1992 WL 281322 (N.D. Ill. Oct. 6, 1992).............................................................................7

*Christman v. Brauvin Realty Advisors, Inc.*,
185 F.R.D. 251 (N.D. Ill. 1999).............................................................................................4

*Dexia Credit Local v. Rogan*,
231 F.R.D. 287 (N.D. Ill. 2004)...........................................................................................15

*Harper-Wyman Co. v. Conn. Gen. Life Ins. Co.*,
1991 WL 62510 (N.D. Ill. Apr. 17, 1991) ............................................................................5

*IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*,
1999 WL 617842 (N.D. Ill. Aug. 12, 1999) .........................................................................9

*Lewis v. Keen Transp., Inc.*,
2011 WL 814860 (N.D. Ill. Feb. 28, 2011) ..........................................................................8

*LG Elecs., Inc. v. Motorola, Inc.*,
2010 WL 4513722 (N.D. Ill. Nov. 2, 2010) .........................................................................9

*In re LTV Sec. Litig.*,
89 F.R.D. 595 (N.D. Tex. 1981) ............................................................................................7

*Martin v. Bally's Park Place Hotel & Casino*,
983 F.2d 1252 (3d Cir. 1993).................................................................................................7

PUBLIC VERSION

*McCook Metals L.L.C. v. Alcoa, Inc.*,
192 F.R.D. 242 (N.D. Ill. 2000) .........................................................7

*Miller UK Ltd. v. Caterpillar, Inc.*,
17 F. Supp. 3d 711 (N.D. Ill. 2014) ...............................................5, 9

*Nicklasch v. JLG Indus., Inc.*,
193 F.R.D. 568 (S.D. Ind. 1999) .....................................................7, 8

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*,
90 F.R.D. 45, 48 (N.D. Ill. 1981) ......................................................15

*Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*,
1996 WL 89225 (N.D. Ill. Feb. 27, 1996) ........................................12

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
268 F.R.D. 114 (D.D.C. 2010) ............................................................7

*Ricoh Co., Ltd. v. Aeroflex Inc.*,
219 F.R.D. 66 (S.D.N.Y. 2003) ...........................................................9

*Smithkline Beecham Corp. v. Apotex Corp.*,
193 F.R.D. 530 (N.D. Ill. 2000) ........................................5, 8, 12, 13

*U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*,
2002 WL 31296430 (S.D.N.Y. Oct. 11, 2002) .................................10

*Viamedia, Inc. v. Comcast Corp.*,
2017 WL 2834535 (N.D. Ill. June 30, 2017) ..............................3, 5, 7

*In re Walsh*,
623 F.2d 489 (7th Cir. 1980) ...............................................................4

**Other Authorities**

Fed. R. Civ. P. 26(b)(3) ...............................................................4, 5, 9

## I.     Introduction

In its prior ruling, the Court rejected AutoLoop's claim that its communications with various third parties throughout the automotive industry over a multiyear period, most of which are related to efforts to lobby the Federal Trade Commission ("FTC"), were privileged under a "common interest" exception. The Court held that it was "not persuaded" that AutoLoop "shared identical legal interests" with the numerous participants in the alleged "common interest" group, most of the communications "occurred years before actual litigation was filed," and "a review of the documents at issue, frankly, confirms that many of the communications are not otherwise protected by the attorney-client privilege." Order (Dkt. 1027) at 5. AutoLoop now attempts to withhold the very same documents from discovery on a theory that substantially all of its alleged "common interest" communications are in fact attorney work product.[1]

Although CDK is unable to parse the documents submitted *in camera*, which the Court can evaluate for itself based on its own independent review, the surrounding circumstances (including the date and the recipients of the communications) and AutoLoop's own descriptions of the documents show that few if any could qualify as AutoLoop's legitimate work product. For the many reasons discussed below, AutoLoop's "work product" claims should be overruled and it should be ordered to produce the documents without delay.

## II.     CDK Did Not "Waive" Challenges to AutoLoop's Work Product Claims

AutoLoop's assertion (Br. at 2) that "CDK failed to challenge work-product privilege in its motion to compel" is incorrect. CDK expressly challenged all grounds that AutoLoop had asserted for withholding the documents at issue, including work product. On the very first page of

---

[1] AutoLoop originally claimed that 100% of the withheld "common interest" communications were also work product. After the Court ordered AutoLoop to submit any document that it claimed to be work product for *in camera* review, it abandoned its work product claims for approximately 35 documents. 123 entries on AutoLoop's privilege log remain subject to dispute.

its brief, CDK argued that "Loop, LLC d/b/a AutoLoop . . . continue[s] to improperly withhold relevant and important discovery based on unsupported assertions of the attorney-client privilege *and the work product and common interest doctrines*." Dkt. 544 at 1 (emphasis added); *see also id.* at 3-4 (discussing relevant standards for attorney work product).

To the extent that work product was not the primary focus of CDK's briefs, that is because it was difficult for CDK to conceive of any possible basis to claim that many of the documents at issue were attorney work product. They are email communications between AutoLoop and a wide array of third parties with whom it shared no identifiable common legal interest, most of which AutoLoop admits are related to FTC lobbying efforts, often sent and received by non-lawyers on both sides,[2] during a period that pre-dates any litigation that AutoLoop filed by several months or years. *See* Tabs 1-123 (submitted *in camera*). AutoLoop maintained that these documents were privileged from discovery on every possible basis, *i.e.*, AutoLoop's privilege log states that every document is an attorney-client communication *and* attorney work product *and* subject to a "common interest" exception. *See* Ex. 1.[3] It is now clear that AutoLoop's blanket privilege claims were overbroad. For example, AutoLoop recently abandoned its work product claims as to AL_MDL_PRIV_0832, ███████████████████████████████████████████ ███████████████████████████████ AutoLoop claimed in its privilege log that the document was both an attorney-client communication and work product, and described it as a ███████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ Ex. 1.

---

[2] When lawyers *were* included on some communications, often they represented other parties. *See* Br. at A-1-A-2 (identifying communications with Superior Integrated Solutions' outside counsel); *id.* at A-3 (identifying communications with outside counsel for Dominion Enterprises and Carfax).

[3] In Exhibit 1, CDK has reproduced AutoLoop's corresponding privilege and redaction log entries for each of the 123 documents that AutoLoop submitted to the Court on July 30, 2020 for *in camera* review.

2

However, a review of the document confirms that it reflects no legal advice, references no pending or anticipated litigation, and contains no work product.

CDK reasoned that if there was any plausible basis for AutoLoop to withhold these sort of third-party communications from discovery, it would likely be under some application of the common-interest doctrine. CDK's brief focused on that issue accordingly, but not at the expense of ignoring AutoLoop's work product claims. Where it made sense to consider some of the documents as possible work product, CDK addressed the issue specifically and demonstrated why "the requirements of the work-product doctrine have not been satisfied." Dkt. 544 at 8 (addressing AutoLoop's work product claims as to 26 communications with Superior Integrated Solutions ("SIS") regarding litigation then pending between SIS and Reynolds). AutoLoop's assertions that "CDK never argued that AutoLoop waived work-product privilege" under the "distinct standard for waiver of that privilege" are incorrect. *See* Dkt. 587 at 5-6 (addressing waiver). AutoLoop is also incorrect that CDK limited its work product arguments to AutoLoop's communications with SIS and not the broader "common interest" group. CDK incorporated its briefing from Defendants' motion to compel Authenticom's production of the same third-party communications, *see* Dkt. 544 at 11, which addresses any fallback argument that the documents are alternatively privileged from discovery as work product. *See, e.g.*, Dkt. 541 at 13-15.

AutoLoop's waiver argument is also premised on the erroneous contention (*see* Br. at 3) that it was CDK's burden to *disprove* AutoLoop's work product claims. It is well-established that "[t]he party asserting work-product protection carries the burden of demonstrating its applicability." *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *2 (N.D. Ill. June 30, 2017) (citation omitted); *see also* Order (Dkt. 1011) at 17. If the Court concluded that "[t]he parties did

not adequately address the work-product privilege" in their briefs, Order (Dkt. 1053), then AutoLoop—if anyone—should be arguing against a finding of waiver.

Nevertheless, the Court has directed AutoLoop to submit its claimed work product for *in camera* review and ordered further briefing from the parties. CDK doubts that the Court would have ordered an *in camera* review if it believed the issue had been waived.

### III. The Work Product Doctrine Does Not Apply to AutoLoop's Email Communications With a Broad Array Of Unaffiliated Third Parties From a Multiyear Period (2013-2017) In Which There Was Never Any Actual Litigation Involving AutoLoop

The work product doctrine must be "narrowly construed" so that litigants do not abuse it to "obscure the search for the truth." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 1993 WL 515493, at *2 (N.D. Ill. Dec. 7, 1993) (citing *In re Walsh,* 623 F.2d 489, 493 (7th Cir. 1980)). It applies only to (1) documents or tangible things (2) prepared by or for *that party* or its counsel (3) in anticipation of litigation involving *that party*. Fed. R. Civ. P. 26(b)(3)(A); *Christman v. Brauvin Realty Advisors, Inc.,* 185 F.R.D. 251, 255 (N.D. Ill. 1999).

AutoLoop's privilege log makes clear that a great majority of its claimed "work product" does not relate to any actual litigation but efforts to lobby the FTC in connection with a "pending regulatory matter," that is, its investigations of Defendants. *See* Ex. 1, Tabs 34-45, 49-50, 51-112, 115. The documents were shared broadly with an alleged "common interest" group, comprised of "third parties, including Authenticom, Superior Integrated Solutions ('SIS'), other competing software vendors and their outside law firms, among others." Order (Dkt. 1027) at 3. The communications occurred between 2013 and 2017, a period in which AutoLoop had no actual litigation with either CDK or Reynolds. The Court reviewed some of these same documents *in camera* when it overruled AutoLoop's common interest claims. Based on the Court's initial reactions to the documents in that context, CDK anticipates that many of them on their face do not

reflect any legitimate attorney work product. But in addition to what the Court may determine from its own *in camera* review, AutoLoop's work product claims fail for multiple reasons:

First, 76 of the 123 documents at issue were created in connection with efforts to lobby the FTC in its investigations of Defendants, which cannot be protected as work product. *See Viamedia*, 2017 WL 2834535, at *2; *Harper-Wyman Co. v. Conn. Gen. Life Ins. Co.*, 1991 WL 62510, at *3 (N.D. Ill. Apr. 17, 1991) (same).

Second, the remaining 47 documents purportedly relate to a litigation between Reynolds and SIS that AutoLoop never joined or occurred several months or *years* before AutoLoop filed suit in this MDL. AutoLoop has not met its burden to demonstrate "objective facts establishing an identifiable resolve to litigate" against either CDK or Reynolds at the time they occurred. *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 540 (N.D. Ill. 2000).

Third, for 79 of the documents in both of the categories described above, AutoLoop admits that the claimed work product was created "by or for" another party besides AutoLoop. Under the plain language of Rule 26(b)(3)(A) and numerous decisions, AutoLoop has no work product claim as to these documents.

Fourth, there is ample evidence that AutoLoop's dissemination of these documents to the failed "common interest" group "substantially increased the opportunity for [CDK] to obtain the disclosed information." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711 (N.D. Ill. 2014). In fact, many documents actually *were* disclosed to CDK as a direct result of AutoLoop sharing them with certain "common interest" group members.

### A.     *In Camera* Tabs 1-51: AutoLoop's Third-Party Communications with SIS and Others From 2013-2014 Are Not Protected Work Product

AutoLoop's work product claims as to these documents, which are "predominantly communications between AutoLoop and SIS," Br. at 4, fail for multiple reasons.

| | Independent Grounds For Denying AutoLoop's Work Product Claims | | | |
|---|---|---|---|---|
| **Tabs** | **The Only Claimed "Litigation" is an FTC Investigation of Another Party** | **No Litigation Involving AutoLoop Was Imminent** | **The Claimed "Work Product" Was Created By or For Another Party** | **Waiver By Third-Party Disclosure** |
| 1-12, 29-32, 46-48, 51 | | X | | X |
| 13-28, 33 | | X | X | X |
| 34-45, 49-50 | X | | | X |

1.     **The Only Claimed "Litigation" is an FTC Investigation of Another Party (*in Camera* Tabs 34-45, 49-50**). For each of these communications, the only "litigation" claimed on AutoLoop's privilege log is a "pending regulatory matter" in which the FTC investigated Reynolds's so-called "blocking practices." Br. at 5; Ex. 1. Both AutoLoop and Authenticom communicated extensively with each other, their competitors, and with other participants in the automotive industry in an effort to lobby the FTC to investigate and take action against Reynolds, and later, CDK. *See* Order (Dkt. 1011) at 4-5. The Court has already rejected AutoLoop's claim that a common-interest exception applies to these communications. *Id.* at 6.

Evaluating these same third-party communications under the work product doctrine does not change the result. AutoLoop was not the target of the FTC's investigation, nor could it have participated in any enforcement action that it encouraged the FTC to bring. *See, e.g.*, *Askew v. Wachovia Bank of Delaware*, 2009 WL 10708317, at *3 (E.D.N.C. May 15, 2009) ("Section 5 of the FTC Act does not 'bestow upon either competitors or consumers standing to enforce its provisions.'") (quoting *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)). That is fatal to AutoLoop's work product claims, because a party can only claim work

product over materials created "in connection with the prosecution of *that party's own action* or defense by that party *of an action brought against it*." *Nicklasch v. JLG Indus., Inc.*, 193 F.R.D. 568, 569 (S.D. Ind. 1999) (emphasis added). Efforts by AutoLoop, Authenticom, and others to lobby the FTC from the sidelines were neither "litigation" nor "adversarial" in nature,[4] and therefore, documents related to those efforts cannot be work product. *See Viamedia*, 2017 WL 2834535, at \*2 ("Documents prepared solely to lobby a government agency to take action are not prepared in anticipation of litigation and therefore are not entitled to work-product protection.") (citation omitted). The cases that AutoLoop cites (Br. at 5-6) all address work product withheld by a party that was either the investigating agency itself or the *target* of the investigation.[5] Those decisions are not instructive for evaluating AutoLoop's work product claims.

**2.      There Was No Actual or Imminent Litigation Involving AutoLoop (*in Camera* Tabs 1-33, 46-48, 51**). AutoLoop asserts that the remaining documents in this category—which consist of emails between AutoLoop, SIS, Dominion, and EasyCare/APCO—were created for an "anticipated antitrust litigation against Reynolds" that AutoLoop never actually filed. Br. at 5. As the Court noted, these communications "occurred years before" the lawsuit that AutoLoop eventually filed against CDK—not Reynolds—in 2018. Order (Dkt. 1027) at 5. AutoLoop correctly notes that SIS was engaged in ongoing litigation with Reynolds in 2013 and 2014, Br. at

---

[4] *See In re Rail Freight Fuel Surcharge Antitrust Litig.*, 268 F.R.D. 114, 117 (D.D.C. 2010) ("In distinguishing between proceedings which qualify as litigation" for purposes of the work product doctrine "and those that do not, the adversarial nature of the proceeding is characteristic of litigation."); *McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 260 (N.D. Ill. 2000) (same).

[5] *See Chemcentral/Grand Rapids Corp. v. U.S. E.P.A.*, 1992 WL 281322, at \*5 (N.D. Ill. Oct. 6, 1992) (addressing work product prepared and withheld by an agency in connection with an investigation in which "the agency was contemplating litigation"); *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993) (addressing investigative report prepared at the direction of counsel for, and withheld by, the target of an OSHA investigation); *In re LTV Sec. Litig.*, 89 F.R.D. 595, 612 (N.D. Tex. 1981) (addressing work product prepared and withheld by the target of an SEC investigation).

5, but that is irrelevant: work product claimed by a party must have been created to further "that party's *own action*," not an action involving other parties. *Nicklasch*, 193 F.R.D. at 569. In other words, AutoLoop cannot claim "work product" over documents or communications that are related to the SIS-Reynolds litigation, which AutoLoop itself never joined.

The only evidence that AutoLoop offers to support its claim that it considered bringing its own litigation against Reynolds is a "legal memoranda" prepared in January 2012 that purportedly addresses the topic. *See* Tab 1 (AL_MDL_PRIV_0598) (produced *in camera*). Even accepting AutoLoop's representations about what that document says, AutoLoop fails to meet its burden to show "objective facts establishing an identifiable resolve to litigate" with Reynolds over a year later, when the communications at issue took place. *Smithkline Beecham Corp.*, 193 F.R.D. at 540. If anything, to the extent that AutoLoop evaluated the prospect of bringing litigation against Reynolds in January 2012 but had taken no action, that strongly suggests that a "substantial and significant threat" of litigation between AutoLoop and Reynolds *did not* exist by the time that the communications at issue occurred in 2013 and 2014. *Id.* That conclusion is confirmed by Mr. Petruzzelli, who ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████. Ex. 2, Petruzzelli Dep. Tr. at 42:2-43:17.

AutoLoop responds that it "continually evaluated the *possibility* of" filing litigation against Reynolds over some open-ended, multiyear period. Br. at 5 (emphasis added). But that is a clear admission that AutoLoop *did not* possess an "identifiable resolve to litigate" necessary to claim work product. *Smithkline Beecham Corp.*, 193 F.R.D. at 540; *see also Lewis v. Keen Transp., Inc.*, 2011 WL 814860, at *3 (N.D. Ill. Feb. 28, 2011) ("A document created when litigation is only 'in

the air' . . . is not work product.") (quoting *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, 1999 WL 617842, at *5 (N.D. Ill. Aug. 12, 1999)).

**3.** **The Claimed "Work Product" Was Created By or For Another Party (*in Camera* Tabs 13-28, 33**). AutoLoop's privilege log describes the purported work product in these documents as the "legal advice" and "work product" of SIS's outside counsel in the Reynolds-SIS litigation, Killgore, Pearlman, Stamp, Ornstein & Squires, P.A. ("Killgore"). *See* Ex. 1. To the extent these documents actually reflect Killgore's work product, it is work product that Killgore prepared *for SIS* in connection with the litigation *between SIS and Reynolds*. AutoLoop has no basis to withhold these communications as putative "work product." *See, e.g.*, *LG Elecs., Inc. v. Motorola, Inc.*, 2010 WL 4513722, at *3 (N.D. Ill. Nov. 2, 2010) (consistent with Rule 26(b)(3)'s "plain language," work product must have been prepared "by or for" the party claiming the privilege); *Ricoh Co., Ltd. v. Aeroflex Inc.*, 219 F.R.D. 66, 69 (S.D.N.Y. 2003) ("[c]ourts have routinely held that documents prepared by one who is not a party to the case at bar are not protected by Rule 26(b)(3)"); *Aetna Inc. v. Mednax, Inc.*, 2019 WL 6250850, at *4 (E.D. Pa. Nov. 22, 2019) ("Aetna cites to no case approving the assertion of work product protection by one client for work product created in connection with the representation of an entirely different client.").

**4.** **Waiver By Third-Party Disclosure (*in Camera* Tabs 1-51**). Finally, even if AutoLoop could show that any of these documents contained actual work product, it waived the privilege by sharing them with its competitors and with other industry participants, including SIS, Dominion, and EasyCare/APCO. The Court has already determined that AutoLoop did not share a common legal interest with any of these third parties. *See* Order (Dkt. 1027) at 4-6. Nor has AutoLoop shown that it "took precautions through confidentiality agreements." *Miller UK*, 17 F. Supp. 3d at 711. In *Miller UK*, the plaintiff presented evidence of both written and oral

confidentiality agreements. *Id.* at 736. AutoLoop presents no evidence of confidentiality agreements here; to the contrary, Mr. Petruzzelli—the AutoLoop witness who was directly involved in a majority of the communications at issue—███████████████████████. Ex. 2, Petruzzelli Dep. Tr. at 45:22-46:5 ("█████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████").[6] The absence of any explicit confidentiality agreement strongly supports a finding of waiver. *See In re Aqua Dots Prod. Liab. Litig.*, 270 F.R.D. 322, 330 (N.D. Ill. 2010), *aff'd*, 654 F.3d 748 (7th Cir. 2011) (finding waiver where documents were produced to the Consumer Product Safety Commission without "an explicit confidentiality agreement that clearly identifie[d] the intent of the parties with respect to work product privilege."); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, 2002 WL 31296430 at *5 (S.D.N.Y. Oct. 11, 2002) (finding that work product was waived where there was "uncompelled disclosure" without an explicit agreement as to confidentiality).

There is no need to speculate about whether AutoLoop sharing its alleged work product with SIS *could have* resulted in a disclosure to CDK—because it *did*. As the Court knows, AutoLoop's counsel later threatened to sue SIS in this MDL on behalf of a different party, MVSC. Order (Dkt. 1011) at 5. Counsel later subpoenaed SIS as a non-party and demanded that it produce certain documents related to various issues in the litigation. When SIS responded to the subpoena, it produced several claimed "work product" communications with AutoLoop, a clear indication that SIS did not believe these documents were in any way privileged or otherwise subject to a duty

---

[6] AutoLoop asserts that one of the 51 documents from this category was labeled "Privileged and Confidential." Br. at 6 (discussing Tab 50, AL_MDL_PRIV_0763). To the extent that AutoLoop unilaterally labeled this communication between it and SIS "Confidential," that does not demonstrate the existence of any *agreement* between SIS and AutoLoop to maintain it as such.

of confidentiality. *See* Ex. 3, 3/20/2019 Ltr. from D. Dorris. AutoLoop initially attempted to claw back SIS's production, *id.*, but it has since abandoned those efforts.[7]

**B.** ***In Camera* Tabs 52-123: AutoLoop's Third-Party Communications with the "Common Interest" Group From 2016-2017 Are Not Protected Work Product**

By AutoLoop's own admissions, the vast majority of these communications do not relate to the MDL litigation at all—instead they relate to efforts to lobby the FTC—and were prepared for the benefit of another party, Dominion. They also occurred many months and even years before AutoLoop filed any litigation of its own and were shared with numerous third parties.

| Tabs | Independent Grounds For Denying AutoLoop's Work Product Claims | | | |
|---|---|---|---|---|
| | The Only Claimed "Litigation" is an FTC Investigation of Another Party | No Litigation Involving AutoLoop Was Imminent | The Claimed "Work Product" Was Created By or For Another Party | Waiver By Third-Party Disclosure |
| 52-112, 115 | X | | X | X |
| 113-114, 116-123 | | X | | X |

**1.** **The Only Claimed "Litigation" is an FTC Investigation of Another Party (*in Camera* Tabs 52-112, 115)**. Similar to Tabs 34-45 and 49-50, addressed *supra* at 6-7, the FTC's investigation of Reynolds, and later, CDK, is the only claimed "litigation" identified on AutoLoop's privilege log for each of these documents. *See* Ex. 1. For the same reasons discussed above, the FTC's investigation of Reynolds and CDK is a neither a "litigation" nor an adversarial proceeding involving AutoLoop, and moreover, third-party communications created in

---

[7] In its July 15, 2020 Order, the Court directed AutoLoop to submit copies of any documents that AutoLoop continued to claim were protected by the work product doctrine for *in camera* review. Dkt. 1053. AutoLoop's submission does not include any of the SIS documents. *See* Br. at A-1-4.

anticipation of lobbying the FTC to take action against another party cannot be shielded from discovery under a claim of work product. *See supra*, at 6-7.

2. **Actual Litigation Involving AutoLoop Was Not Imminent (*in Camera* Tabs 113-114, 116-123)**. AutoLoop asserts that the remaining communications, which date back to December 2016, were created in anticipation of its joining this MDL. However, AutoLoop did not file its complaint until April 2018, and Mr. Petruzzelli testified that ███████████████ █████████████████████████████████████ Ex. 2, Petruzzelli Dep. Tr. at 36:4-37:11. Moreover, Mr. Petruzzelli ████████████████████████████████████████ ████████████████████████████████████ *Id.* at 37:22-40:14.

AutoLoop cites two documents, submitted *in camera* as Exhibits C and D to its brief, that purportedly establish that "AutoLoop and others anticipated bringing . . . antitrust claims . . . no later than May 2016." Br. at 7. Exhibit D, which SIS voluntarily produced in this litigation without making any claim of work product (*see supra*, at 8), is authored by Mr. Petruzzelli and relates to AutoLoop's efforts to lobby the FTC. His references to "we are still going to litigate" and "the law firm out of D.C." are ambiguous at best in the face of his deposition testimony that ████████████ ████████████████████████████████████████████████ ████████████████████████████. Ex. 2, Petruzzelli Dep. Tr. at 36:4-40:14. AutoLoop has not shown by "objective facts" that its communications from several months and even *years* before it filed suit were created in anticipation of litigation. *Smithkline Beecham Corp.*, 193 F.R.D. at 540; *see also Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 1996 WL 89225, at *2 (N.D. Ill. Feb. 27, 1996) (overruling work product claims for documents created "several months prior to the advent of any litigation").

PUBLIC VERSION

**3.     The Claimed Work Product Was Created By or For Another Party (*in Camera* Tabs 52-112, 115)**. AutoLoop now admits that these communications were created not for its own use in any litigation but for the purported benefit of other application vendors in the "common interest" group, including Dominion and Carfax. Br. at A-3. Neither of these vendors ever filed their own litigation against CDK or Reynolds, and AutoLoop identifies no evidence that either had nevertheless formed "an identifiable resolve to litigate" at the time the communications occurred. *Smithkline Beecham Corp.*, 193 F.R.D. at 540. In addition, even if Dominion or Carfax were to contend that the documents reflected *their* attorney work product—and neither has ever made such a claim—AutoLoop has no standing to assert work product claims on their behalf. *See Aetna*, 2019 WL 6250850, at *4 (overruling privilege claim as to "work product created in connection with the representation of *an entirely different client*," and holding that "Aetna has no standing to assert privilege and work product claims that are not its own") (emphasis in original).

**4.     Waiver By Third-Party Disclosure (*in Camera* Tabs 52-123)**. Even if the documents in this category actually reflect AutoLoop's work product, AutoLoop shared them with numerous competitors and other participants in the automotive industry. Indeed, AutoLoop considers several of the software vendors that received these communications, including AutoPoint, eLead, and DealerFx, to be its primary competitors with respect to the software applications that it markets to dealers. Ex. 4 (AutoLoop "Competitive Landscape" analysis).

AutoLoop has produced no evidence that it entered into an explicit confidentiality agreement with any of these competitors to prevent the further disclosure of its putative work product. The only evidence in the record on this point—the deposition testimony of Mr. Petruzzelli—███████████████████████. Ex. 2, Petruzzelli Dep. Tr. at 45:22-46:5. AutoLoop asserts that one of the documents submitted *in camera* is labeled "Subject to Non-

Disclosure Agreement." Br. at 9. AutoLoop and Authenticom made similar assertions in an attempt to imply the existence of a "common interest" agreement between these same entities. As the Court previously observed, if these agreements actually existed AutoLoop could have produced them in order "to blunt precisely the challenge that CDK has mounted" to its privilege claims. Order (Dkt. 1027) at 5. The fact that AutoLoop apparently cannot do so weighs strongly in favor of finding waiver. *See supra*, at 10; *Aqua Dots*, 270 F.R.D. at 330.

The remainder of AutoLoop's third-party waiver arguments are premised on an assertion that the participants in these communications were all "harmed in similar ways by Defendants' conduct" and therefore had a "shared interest in seeking redress" through litigation. Br. at 8-9. This is essentially the same argument that AutoLoop made in support of its "common interest" privilege claims, which the Court has already considered and rejected. *See* Order (Dkt. 1011) at 3-6. The fact that some recipients eventually became putative class members when AutoLoop later filed suit in 2018 is irrelevant. As AutoLoop admits, Br. at 9, it did not limit its communications to would-be class members. Others were included on the recipient lists, including a dealer (DarCars), a national trade association (NADA), and eLead, a software vendor that had (1) expressly disclaimed any interest in aligning with AutoLoop or the other Plaintiffs in this litigation, and (2) was subsequently acquired by CDK in 2018, making it fully adverse to AutoLoop from that point forward. *See* Order (Dkt. 1011) at 5 n.1 (discussing eLead); *see also* Dkt. 498 (resolving discovery dispute regarding CDK's acquisition of eLead).

eLead is a compelling example of how AutoLoop's broad dissemination of its alleged work product to third parties with whom it shared no common legal interests substantially increased the risk of disclosure to CDK. AutoLoop admits that eLead had made clear that it wished to "remain neutral" in any civil antitrust litigation brought against CDK or Reynolds. Br. at 9. AutoLoop also

admits that following its acquisition by CDK, eLead now stands in direct "adversity" to AutoLoop's interests in this litigation, Br. at 9, which itself waives privilege over any legitimate work product previously shared with eLead. *Cf. Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 90 F.R.D. 45, 48 (N.D. Ill. 1981) (overruling an attempt "to invoke the work product privilege against a former joint defendant turned adversary").[8] But regardless, in the ordinary course of business following the eLead acquisition CDK has since assumed control of eLead's email servers, including the communications between eLead and AutoLoop that are now in dispute.[9] Once again, the risk that AutoLoop's wide dissemination of purported work product would result in its disclosure to CDK is not merely theoretical—disclosure actually happened.

## IV.    Conclusion

AutoLoop's email communications with numerous third parties during a multiyear period in which it was not engaged in any actual litigation are not attorney work product.

---

[8] AutoLoop incorporates by reference an argument it previously made that eLead's adversity would negate AutoLoop's ability to assert privilege against eLead only. Br. at 9 (citing Dkt. 573 at 11). That is incorrect. Because CDK is now "standing in the 'adverse party' shoes" of its wholly-owned subsidiary eLead, AutoLoop cannot assert privilege as to its communications with eLead against either eLead *or* CDK. *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 296 (N.D. Ill. 2004). In *Dexia*, two entities, EMC and the Management Companies (as the court referred to them), exchanged purportedly privileged information with each other pursuant to a common legal interest. *Id.* at 294-95. One of those entities, the Management Companies, later became involved in litigation with Dexia, which "share[d] an identical legal interest with EMC" in the outcome of the litigation. *Id.* at 296. As such, the court concluded that "Dexia should . . . be considered as standing in the 'adverse party' shoes of EMC," and that "adversity between the Management Companies and Dexia (with whom EMC shares a common interest) precludes either Dexia, EMC or the Management Companies from asserting the common interest privilege concerning the" documents shared between EMC and the Management Companies. *Id.* The same is true here, where CDK and eLead, as its wholly-owned subsidiary, share an identical legal interest in the success of CDK's defense against AutoLoop's lawsuit. As a result, CDK stands in the "adverse party" shoes of eLead for purposes of seeking communications shared between AutoLoop and eLead. *See also* Dkt. 587 (CDK Reply Br.) at 8-9.

[9] CDK maintains that it should be free to review these documents and use them in the litigation. However, in an abundance of caution, it has refrained from doing so pending a ruling from the Court.

PUBLIC VERSION

Dated: August 13, 2020

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant and Counter-Plaintiff CDK Global, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, hereby certify that on August 13, 2020, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC'S RESPONSE TO AUTOLOOP AND COX AUTOMOTIVE'S MOTION TO CLARIFY AND RECONSIDER JUNE 29, 2020 ORDER AND AUTOLOOP'S SUPPLEMENTAL MEMORANDUM** and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com