IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817<br>Case No. 18 C 864<br><br>Magistrate Judge Jeffrey T. Gilbert |

### ORDER

This matter is before the Court to address one remaining issue raised in Defendants CDK Global LLC's and Reynolds and Reynolds Company's Motion to Compel Plaintiff Authenticom to Produce Third-Party Communications or, In the Alternative, Submit Such Communications for In Camera Review [EFC Nos. 539, 541]. On June 8, 2020, the Court issued a Memorandum Opinion and Order [ECF No. 1011] in which it granted in part, denied in part, and denied in part without prejudice Defendants' Motion to Compel [EFC Nos. 539, 541]. As stated in that Memorandum Opinion and Order, among other things not germane here, the Court determined it did not have enough information at the time to rule on Defendants' Motion to Compel regarding Authenticom's assertion that some 37 documents were protected from production by the work product doctrine given the manner in which the work product issues were presented and briefed by the parties. *See* [ECF No. 1011], at 16-19.

Plaintiff Authenticom then filed a Motion to Clarify and Reconsider June 8, 2020 Order (1011) [ECF No. 1022]. Authenticom asked the Court to clarify whether its June 8 Order required Authenticom to produce the documents as to which it had asserted objections based on the work product doctrine, and if it did so, Authenticom asked the Court to reconsider that ruling. On June 25, 2020, the Court granted Authenticom's Motion [ECF No. 1022] by clarifying that it had not ruled on Authenticom's work product objections and denied the Motion to the extent it asked the Court to reconsider its June 8, 2020 Order. *See* [ECF No. 1026]. The Court ordered Authenticom to submit all of the contested work product documents for *in camera* review. Authenticom eventually submitted 29 documents for *in camera* review which the Court understood to be all of the remaining contested work product documents.

The Court reviewed the documents Authenticom submitted *in camera* and sent counsel a letter on August 4, 2020, with its initial assessments and provisional rulings on the documents it had reviewed so counsel could be more fully prepared to address those matters at an in-court hearing set for August 14, 2020. *See* [ECF No. 1098]. The Court then held a telephonic hearing on August 14, 2020, that lasted for almost three hours, during which the Court heard from counsel for Authenticom, CDK, and Reynolds concerning the documents Authenticom asserts are covered by the work product doctrine and the matters contained in the Court's August 4 letter. *See* [ECF No. 1112]. This Order memorializes the Court's rulings issued on the record on August 14, 2020,

and the parties are directed to the transcript of that hearing for a complete record of the proceedings. The Court rules as follows:[1]

Tab 1 (AUTH_MDL_PRIV_0032.001 – 0032.0011): The documents contained in Tab 1 comprise a chain of email communications in December 2016 that begin with an email request to a group of people from an attorney at Davis Polk, a law firm that Authenticom was working with at the time and apparently considering retaining, to gather information that then would be provided to the Federal Trade Commission ("FTC") including a list of the applications offered by CDK and Reynolds. These communications occurred six months before Authenticom filed its lawsuit in May 2017, and 16 months before AutoLoop filed suit in April 2018. It is clear the information about Defendants' applications was being pulled together at the request of the FTC and not for the present litigation. That is the Court's impression of the documents even if the possibility of private civil litigation also was being discussed by Authenticom and others at that time. There is no reference to private litigation in the emails. Instead, all the references are to compiling information for the FTC. The Davis Polk firm does not and never has represented Authenticom in this litigation. During the time these emails were sent, Authenticom says it was being represented by the Cooley law firm with respect to a potential private lawsuit against Defendants, as discussed with respect to other documents below. The Court, therefore, is not convinced that this chain of email communications contains any work-product protected information prepared in anticipation of litigation or adversarial proceedings as opposed to in preparation for sending information to the FTC at its request. As Judge St. Eve noted in *Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *2 (N.D. Ill. June 30, 2017), communications with a government agency not directed towards anticipated litigation but toward potentially achieving the same result by petitioning an administrative agency and in lieu of litigation are not typically covered by the work product doctrine.

Moreover, within this chain of emails, Autoloop's Tony Petruzzelli shared an article from Automotive News with the email recipients. The Court also is not persuaded that a lay person's sharing of a publicly available news article is work product even if the group of recipients includes some attorneys. There is no indication that any attorney asked for the article. It is hard to see how shielding from disclosure an email in which a non-attorney shares a publicly available news article with a group of people, some of whom eventually become involved in litigation and some not, furthers the purpose of the work product doctrine to "protect an attorney's thought processes and mental impressions against disclosure" and "to limit the circumstances in which attorneys may piggy-back on the fact-finding investigation of their more diligent counterparts." *Id.* at 1.

The Court's ruling applies to the following documents as well since they are various copies and variations of the email communications included in the documents found in Tab 1:

Tab 2 (AUTH_MDL_PRIV_0125.001 – 0125.009);
Tab 4 (AUTH_MDL_PRIV_0203.001 – 0203.009);
Tab 5 (AUTH_MDL_PRIV_0244.001 – 0244.003);
Tab 6 (AUTH_MDL_PRIV_0271.001 – 0271.003);

---

[1] References are to the tabbed documents in the binder Authenticom submitted for *in camera* review.

2

Tab 8 (AUTH_MDL_PRIV_0279.001 – 0279.009);
Tab 11 (AUTH_MDL_PRIV_0416.001 – 0416.007);
Tab 15 (AUTH_MDL_PRIV_0855.001 – 0855.003);
Tab 21 (AUTH_MDL_PRIV_1306.001 – 1306.011);
Tab 22 (AUTH_MDL_PRIV_1409.001 – 1409.003);
Tab 23 (AUTH_MDL_PRIV_1538.001 – 1538.003);
Tab 24 (AUTH_MDL_PRIV_1653.001 – 1653.010);
Tab 26 (AUTH_MDL_PRIV_1687.001 – 1687.002); and
Tab 27 (AUTH_MDL_PRIV_1842.001 – 1842.002).

For all these reasons, the Court holds that the documents at Tabs 1, 2, 4, 5, 6, 8, 11, 15, 21, 22, 23, 24, 26, and 27 are not work product and should be produced to Defendants.

Tab 3 (AUTH_MDL_PRIV_0163.001 – 0163.003): The documents contained in Tab 3 are email communications between an attorney at Cooley, representing Authenticom, and an analyst at Gerchen Keller, a litigation finance firm, as part of Gerchen Keller's due diligence in connection with possibly providing Authenticom with financing for the present litigation. The Court agrees that these communications are attorney work product and are covered by the work product doctrine. *See Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *3 (communications about litigation funding are protected work-product). The communications include the mental impressions of Authenticom's lawyer about matters relevant to this litigation. The question then becomes whether Defendants have a substantial need for the documents or whether disclosure to Gerchen Keller made it substantially more likely that work-product protected information would likely fall into the hands of Authenticom's adversaries. *See Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736 (N.D. Ill. 2014). Based on its review of the communications, the Court finds that Defendants do not have a substantial need for the documents and also that disclosure to third-party Gerchen Keller did not make it substantially more likely that the work product protected information would fall into the hands of Authenticom's adversaries. Accordingly, the Court finds that the documents at Tab 3 are protected work product and need not be produced to Defendants.

Based on the Court's characterization of the documents in its August 4, 2020 letter (substantially reprinted above), Defendants' counsel represented on the record that Defendants were withdrawing their Motion as to these communications.

Tab 7 (AUTH_MDL_PRIV_0274.001 – 0274.006): The documents contained in Tab 7 are email communications among some dealerships sharing information about surcharges and/or integration fees imposed for access to CDK's and/or Reynolds's Dealer Management System ("DMS"). The emails span a time period from January through July 2016, roughly a year or more before Authenticom filed its lawsuit. The emails do not mention litigation. Included in the email string are emails between a dealer and someone at the FTC asking for contact information for another dealer. These communications seem to have been sent in the regular course of business and not in anticipation of this specific litigation at the time the communications were made. Accordingly, the Court find that these communications do not contain any work product protected information and should be produced to Defendants.

<u>Tab 9 (AUTH_MDL_PRIV_0296.001)</u>: The document at Tab 9 is an email/letter from in-house counsel at Authenticom to an individual at BMO notifying the bank that the law firm then known as Kellogg Huber had agreed to represent Authenticom in what became the present litigation. The letter is dated January 16, 2017, approximately four months before Authenticom filed suit. This document describes some of the law firm's representative cases and identifies the lawyers with whom Authenticom will be working. It appears to contain descriptions of Kellogg Huber cases taken from the firm's online biography. Two lines in the letter, however, purport to characterize the nature of Authenticom's claims ultimately asserted in the litigation. The fact that litigation counsel has been retained can be an indication that litigation is reasonably anticipated. There is nothing to indicate why Authenticom is providing this information to its lender. But the tone of the letter tends more toward a finding that the letter was sent in anticipation of the litigation Authenticom filed a few months after it sent the letter. Further, in-house counsel's broad assessment of the claims to be asserted reveals the attorney's thoughts and mental impressions and, therefore, is work product.

The Court finds that Defendants do not have a substantial need for this information. And by providing the information to its lender, it is not likely Authenticom increased the chances of its disclosure to third parties before it filed suit. Perhaps Defendants' interest was piqued by the description of the letter in Authenticom's privilege log which makes it seem like there is more here than meets the Court's eye: "Confidential communication between common interest parties reflecting the legal advice and mental impressions of counsel regarding CDK and Reynolds data access issues for litigation strategy." That characterization is more titillating than the way the Court would describe the letter. In any event, for the reasons discussed above, the Court finds that the document is covered by the work product doctrine and need not be produced to Defendants.

Based on the Court's characterization of the documents in its August 4, 2020 letter (substantially reprinted above), Defendants' counsel represented on the record that Defendants were withdrawing their Motion as to these communications.

<u>Tab 10 (AUTH_MDL_PRIV_0392.001 – 0392.002)</u>: The document at Tab 10 is an email communication from Gilbert Hale to Steve Cottrell on January 31, 2017, about some investigative work Mr. Hale had done for Authenticom particularly with respect to accessing CDK's system. Broadly speaking, it appears this email is part of Authenticom's efforts to develop facts relevant to the present lawsuit. It appears to be part of a series of communications, some perhaps oral, between Mr. Hale and Mr. Cottrell on that subject. Based on the context of the email, it appears Mr. Hale was attempting to develop information about dealer access to CDK's DMS, and that Mr. Hale was engaging in those efforts at least in part on behalf of Authenticom to gather information that might be useful to Authenticom in what became this lawsuit. Among other things, Mr. Hale states in the email that the information he is forwarding is meant both for Mr. Cottrell and Authenticom's in-house counsel, Dane Brown. The Court concludes that this communication contains work product protected information. Based on the Court's discussion with the parties on the record during the August 14, 2020 hearing, the Court finds that Defendants do not have a substantial need for the document because, among other reasons, the information contained in the email likely has been the subject of oral or written discovery in this case to the extent it is relevant to the matters being litigated and appears not to be inconsistent with the information already produced or discovered, and therefore, this document need not be produced to Defendants.

4

      Tab 12 (AUTH_MDL_PRIV_0539.001 – 0539.002): The document at Tab 12 contains two email communications dated August 5, 2016. The first email is from an attorney at Cooley, Marc Schildkraut, who Authenticom says was representing Authenticom at the time, to a number of people including but not limited to Authenticom personnel. The second email is from Autoloop's Tony Petruzzelli and is addressed to the people listed on the first email including Cooley's Marc Schildkraut. The subject line of both emails (*see also* Tab 14 below) references "common interest privileged: R&R and CDK." The Court, however, has determined no common interest privilege existed within this group. *See* [ECF No. 1011], at 6-8. The Court agrees that the initial email communication from the Cooley lawyer to the addressees on that email contains work-product protected information created at least in part on Authenticom's behalf by its lawyer at the time and finds that Defendants do not have a substantial need for the document. Nor did dissemination of this information to this group, in the Court's view, substantially increase the risk this information would fall into the hands of Authenticom's adversaries. However, the second email communication from Autoloop's Petruzzelli to other third parties is not attorney work product prepared by or on behalf of Authenticom. It is prepared by or on behalf of Autoloop, and there is no indication that the Cooley lawyer was representing Autoloop at this time. Therefore, the email sent by Autoloop's Petruzzelli should be produced to Defendants, but the initial email communication from the Cooley lawyer, Marc Schildkraut, can be redacted and need not be produced. This email also is attached as Tab 14 as a standalone document.

      Tab 13 (AUTH_MDL_PRIV_0546.001 – 0546.002): The document at Tab 13 is an internal email communication from an Authenticom business manager and an in-house attorney to company executives that was shared with third-party consultant Lori Zimmer in October 2016. This communication appears to be part of Authenticom's attempt to develop facts internally in anticipation of the present litigation. This document contains work-product protected information. The Court is not persuaded that disclosure of this email to Ms. Zimmer in the course of her consulting work for Authenticom made it substantially more likely that the work-product protected information would fall into the hands of Authenticom's adversaries since Ms. Zimmer was an independent contractor and executive coach hired by Authenticom. The Court finds that this document contains attorney work product information and that Defendants do not have a substantial need for the document

      Based on the Court's characterization of the documents in its August 4, 2020 letter (substantially reprinted above), Defendants' counsel represented on the record that Defendants were withdrawing their Motion as to these communications.

      Tab 14 (AUTH_MDL_PRIV_0595.001): The document at Tab 14 is the August 5, 2016 email communication from Cooley lawyer, Marc Schildkraut, discussed above at Tab 12. For the reasons set forth above in the Court's discussion of the documents at Tab 12, this email is attorney work product and need not be produced.

      Tab 16 (AUTH_MDL_PRIV_1006.001 – 1006.008): The document at Tab 16 is an email communication from an individual at 463 Communications to Steve Cottrell at Authenticom and attorneys at Goodwin Proctor about a strategic communications plan prepared for Authenticom that was updated on August 1, 2015. The Court does not see how a public relations strategy that was prepared in 2015 is work product. This appears to be a business and communications strategy

and was not prepared in anticipation of any specific litigation. In fact, the document at page 1006.005 appears to acknowledge that, as of the date it was prepared in 2015, litigation was not anticipated as being on the near-term horizon. This document was created years before Authenticom filed this lawsuit. The Court finds that this document is not work product and, therefore, should be produced to Defendants.

Tab 17 (AUTH_MDL_PRIV_1090.001 – 1090.005): The documents at Tab 17 are a series of email communications about a letter a dealer received from CDK in October 2016 concerning access to the dealership's data on CDK's DMS. The dealer forwarded the letter it received to other dealers, and eventually it was sent to an outside lawyer for Authenticom at Cooley. The emails early in the string do not reference any anticipated litigation and would seem to be accurately characterized as garden variety business communications among companies dissatisfied with CDK that do not contain any work product protected information. The emails are not labeled as "common interest privileged" as are other documents that sometimes were exchanged within this group, and no lawyers are copied on the early emails until the email string is sent to the lawyer at Cooley. The Court finds that the four initial emails that begin with the email from Superior Motors through the email by which Authenticom's Michelle Phillips forwards the email string to Steve Cottrell at Authenticom are not attorney work product and, therefore, should be produced to Defendants. However, the last email from Steve Cottrell to Cooley lawyer Marc Schildtkraut, who Authenticom says was working for it at this time, is attorney work product and should be redacted and need not be produced to Defendants. Defendants also do not have a substantial need for this one transmittal email.

Tab 18 (AUTH_MDL_PRIV_1103.001 – 1103.002): The document at Tab 18 is an email communication between Marc Schildtkraut at Cooley on behalf of Authenticom and an analyst at Gerchen Keller. Similar to the communication at Tab 3, the subject of this email is potential litigation funding for Authenticom and it contains the attorney's damages analysis and a discussion of what is essentially hornbook law on proving damages. The Court agrees with Authenticom that the communication is protected work product for the same reasons discussed with respect to Tab 3 above, and the fact that it was shared with a third-party analyst at Gerchen Keller does not waive the privilege because it was not likely that disclosure would lead to the information being discovered by Authenticom's adversaries. The Court also finds that Defendants do not have a substantial need for the document, and therefore, it should not be produced to them.

Based on the Court's characterization of the documents in its August 4, 2020 letter (substantially reprinted above), Defendants' counsel represented on the record that Defendants were withdrawing their Motion as to these communications.

Tab 19 (AUTH_MDL_PRIV_1116.001 – 1116.09): The document at Tab 19 is an email communication from Steve Cottrell to an Authenticom in-house attorney, Authenticom's outside counsel at Cooley, Marc Schildtkraut, and Rusty Friddell at Dominion in December 2016 forwarding written briefing material Mr. Cottrell received from Woods & Seaton Information Services that is broadly addressed to subscribers. The briefing appears to be a compilation of publicly available information including information about CDK and Reynolds. Neither the Woods & Seaton report nor the transmittal of that report to counsel or to Dominion appears to be work product. This is a briefing that presumably is widely available as part of a subscription

6

service. The fact that lawyers are copied on the email does not convert the document into work product protected material. Mr. Cottrell's transmittal email to Mr. Friddell at Dominion contains no restriction on what Mr. Friddell can do with the information or to whom he can forward it, and none is implied by the subject matter. Mr. Cottrell's four-word commentary on the Woods & Seaton report he is forwarding to Mr. Friddell also does not constitute or reveal attorney work product. Even if this email was sent when Authenticom was contemplating filing a lawsuit at some point in the future, that does not make it work product. The Court finds that this document is not work product and should be produced to Defendants.

Tab 20 (AUTH_MDL_PRIV_1195.001 – 1195.002): The document at Tab 20 is an email communication from an attorney at Kellogg Huber sent to Authenticom's Steve Cottrell who then forwarded it to Rusty Friddell at Dominion and also copied an Authenticom in-house counsel. The emails were sent in January 2017. The subject of the first email is the attorney's assessment of Defendants' defenses in Authenticom's anticipated lawsuit against CDK and Reynolds. This communication is attorney work product, and the Court is not persuaded that disclosure of this email to Dominion's Friddell made it substantially more likely that the work product protected information would fall into the hands of Authenticom's adversaries. The Court also is not convinced that Defendants have any substantial need for these email communications. The Court finds that this document should not be produced to Defendants.

Based on the Court's characterization of the documents in its August 4, 2020 letter (substantially reprinted above), Defendants' counsel represented on the record that Defendants were withdrawing their Motion as to these communications.

Tab 25 (AUTH_MDL_PRIV_1676.001 – 1676.009): The documents contained in Tab 25 are email communications between Steve Cottrell and Gilbert Hale that are forwarded to an Authenticom in-house counsel. All of the emails were sent in February 2017. In the initial email, Mr. Cottrell simply forwards to Gilbert Hale with no commentary a news article that reports on a recently filed lawsuit by Motor Vehicle Software Corporation against CDK, Reynolds, and their joint venture. Sending what presumably is a publicly available document to a third party is not work product. This portion of the document should be produced to Defendants.

The communications between Mr. Cottrell and Mr. Hale after the article was sent, however, appear to be work product for the same reasons as discussed above with respect to the document at Tab 10. The communications occurred two weeks after the communication at Tab 10 and two months before Authenticom filed this lawsuit. Like the communications in Tab 10, this document appears to contain discussion of facts and analysis to be used in a potential lawsuit by Authenticom that Mr. Hale developed at least in part on Authenticom's behalf. The Court, therefore, finds that this portion of the document contains work-product protected information, and that Defendants do not have a substantial need for this portion of the document for the same reasons discussed above with respect to Tab 10. Therefore, Authenticom is not required to produce this portion of the document.

Tab 28 (AUTH_MDL_PRIV_1932.001): The document at Tab 28 is an email from Authenticom's Steve Cottrell responding to an email sent earlier that day, by Authenticom's outside counsel at Cooley, Marc Schildkraut, which attached a draft of an engagement letter and

confidentiality agreement for execution by Authenticom. Mr. Cottrell's response to Mr. Schildkraut is copied to Rusty Friddell at Dominion. The emails are dated October 6, 2016. As far as the Court can tell from the emails, the draft legal documents themselves were not copied to Dominion, and that was confirmed by Authenticom's counsel at the August 14, 2020 hearing.

The communications between Mr. Cottrell and outside counsel appear to be attorney-client privileged but disclosure to a third-party would seem to waive the privilege in light of the Court's prior ruling on the common interest privilege invoked by Authenticom. Based on the Court's discussion with the parties during the hearing, however, the Court finds that the email from the Cooley lawyer to Authenticom enclosing a draft engagement letter is attorney work product, and the Court is not persuaded that disclosure of this email to Dominion made it substantially more likely that the work product protected information would fall into the hands of Authenticom's adversaries. The Court also finds that Defendants do not have a substantial need for the document, and therefore, Authenticom is not required to produce it.

Tab 29 (AUTH_MDL_PRIV_1958.001 – 1958.008): The document at Tab 29 contains the same document as at Tab 16 above (the communications plan and public relations strategy prepared by 463 Communications). This email is dated in July 2015, more than a month before the email in Tab 16. For the same reasons discussed above, the Court finds that this document does not contain work product and should be produced to Defendants.

For all the reasons set forth herein and on the record during the August 14, 2020 hearing, Authenticom is ordered to produce the documents identified above by Wednesday August 19, 2020. If the parties agree to a different date for production of these documents, they jointly should file a short stipulation to that effect, and the Court will memorialize the parties' agreement on the docket. If there is a dispute and the parties cannot reach agreement on an alternate date for Authenticom to produce the documents addressed in this Order, then Authenticom should file an appropriate motion seeking relief from the August 19, 2020 date set herein. As the Court explained on August 14, 2020, the Court is setting this relatively short date because Authenticom already has segregated the documents that the Court is ordering be produced, and this work product issue has been percolating in this case for quite some time.

Finally, if Authenticom intends to appeal the Court's rulings in this Order or needs the full 14 days from the date of this Order to make that decision pursuant to Federal Rule of Civil Procedure 72(a), then the Court, at Authenticom's request, will stay that portion of this Order requiring production by August 19, 2020, until the first business day after the time to appeal has expired under Federal Rule of Civil Procedure 72(a). If it needs to do so, Authenticom should make that request by motion or pursuant to stipulation with Defendants on or before August 19, 2020.

It is so ordered.

_____
Jeffrey T. Gilbert
Unites States Magistrate Judge

Dated: August 17, 2020