# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Loop, LLC v. CDK Global, LLC*,<br>Case No. 1:18-cv-002521 (N.D. Ill.) | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

## PLAINTIFF AUTOLOOP'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL MEMORANDUM PURSUANT TO ECF NO. 1053

CDK's motion to compel should be denied because it relies on new arguments regarding work-product privilege that were not timely raised and because, even if those arguments are considered, the documents submitted *in camera* are privileged.

## ARGUMENT

### I. CDK Has Waived Its Current Challenges To Work Product

CDK's opposition brief confirms that it has waived its current challenges to AutoLoop's assertions of work-product privilege by not presenting them at the appropriate time in its March 1, 2019 motion to compel. As AutoLoop previously explained, CDK's motion to compel made the single, narrow argument that work-product privilege did not apply to 26 documents because there was no anticipated litigation at the time those documents were created. *See* Dkt. 1096 ("AutoLoop Br.") at 2-4. As to that argument, AutoLoop presented evidence to the contrary. *See id.* CDK made no other argument contesting work-product privilege, and CDK should not be allowed to make new arguments for the first time more than a year after the deadline for moving to compel production of privileged documents and more than a year after discovery has closed. *See* Dkt. 498, at 1 ("[A] a court should allow the discovery process to expand beyond previously set deadlines.").

CDK's claim that it did challenge AutoLoop's work-product privilege is supported only by citation to the opening sentence of its March 1, 2019 motion to compel and to the legal standard section of its motion to compel. *See* Dkt. 1110 ("CDK Br.") at 1-2 (citing Dkt. 544, at 1, 3-4). Neither of those portions of its motion to compel present any argument, let alone the arguments that CDK now advances. *See* Dkt. 544 at 1 (conclusory statement); *id.* at 3-4 (legal standard). Merely mentioning work-product in a brief without developed argument is insufficient to present that issue to the court for decision. *See Frank W. v. Berryhill*, 2019 WL 2255771, at *7 (N.D. Ill. May 24, 2019) ("[U]nderdeveloped arguments are waived.") (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)).

CDK also claims (at 3) to have "incorporated its briefing" from the motion to compel against Authenticom. But CDK incorporated those arguments to response to AutoLoop's assertion of the common interest exception, not in response to the assertion of work-product privilege:

> CDK incorporates those arguments by reference (at pp. 2-10 of Defendants' brief) and respectfully submits that for largely the same reasons, AutoLoop cannot show that a *common interest exception* applies to its communications with these third parties.

Dkt. 544, at 11 (emphasis added). And the referenced portion of the brief ("pp. 2-10 of Defendants' brief") addresses only the application of the common interest doctrine and the attorney-client privilege, not work-product privilege. *See* Dkt. 541, at 2-10.[1]

To be sure, as CDK notes (at 3-4), AutoLoop had the burden to establish work-product privilege. But that does not excuse CDK's failure to advance in its prior briefing the arguments that it now makes. *See* CDK Br. 4-15. AutoLoop satisfied its burden by providing a privilege log of the documents that it asserted were privileged and the basis for that assertion. *See Krause v. GE Capital Mortg. Servs, Inc.*, 1998 WL 409395, at *2 (N.D. Ill. July 14, 1998) ("[I]t is well established that a party seeking to invoke the protection of the attorney-client privilege has the burden of establishing all of its elements. . . . The accepted means of complying with these standards is the preparation of a document index or privilege log."). It was incumbent on CDK to challenge those assertions in a motion to compel by presenting the types of arguments that it now belatedly makes, but CDK failed to do so. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008) (after party asserting privilege meets its "initial burden" through a privilege log, there must be a "challenge[]" to "the sufficiency of the assertion of

---

[1] CDK notes (at 3) that it did challenge work product as to 26 documents. That specific challenge fails for reasons already provided. *See* AutoLoop Br. 3 (citing Dkt. 573, at 1).

privilege/protection").[2] Indeed, the arguments that CDK now makes are based off AutoLoop's privilege log and could have been presented in CDK's March 1, 2019 motion to compel.

## II. The Documents Are Protected By Work-Product Privilege

The documents submitted for *in camera* review fall into two different time periods. Tabs 1 to 52 concern anticipated litigation against Reynolds in 2013 to 2014 regarding its blocking actions of independent data integrators, and Tabs 52-123 concern anticipated litigation against both CDK and Reynolds in 2016 to 2017 regarding their joint blocking actions of independent data integrators. The documents at issue meet each of the requirements for work-product privilege for reasons previously explained. *See* AutoLoop Br. 4-9. CDK's contrary arguments lack merit.

### A. 2013-2014: AutoLoop Anticipated Litigation Against Reynolds

#### 1. AutoLoop Properly Asserted Work-Product Privilege For Documents Concerning The FTC's Investigation Of Reynolds

CDK argues (at 6-7) that AutoLoop may not claim work-product privilege for 14 documents (Tabs 34-45, 49-50) where the "anticipated litigation" was the FTC's investigation of Reynolds. That is incorrect. Where there is a government investigation, litigation is sufficiently foreseeable for the work-product privilege to apply. *See* AutoLoop Br. 5 (citing cases). The authority on which CDK relies holds only that efforts to lobby an agency to *begin* an investigation are not covered by work-product privilege because the prospect of litigation is too remote. *See Viamedia, Inc. v. Comcast Corp.*, 2017 WL 2834535, at *2 (N.D. Ill. June 30, 2017). Here, there was an FTC investigation of Reynolds in the 2013-2014 period. *See* AutoLoop Br. 5; Tab 50, PRIV_0763 (FTC requesting information from AutoLoop for investigation); Tab 51.

---

[2] *See also Vento v. Dir. of Virgin Islands Bureau of Internal Revenue*, 715 F.3d 455, 469 (3d Cir. 2013) (argument that the other side bore the burden of proof "was waived because it was not raised"); *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 689 (5th Cir. 2020) (argument that opposing party had failed to satisfy its burden of proof was waived).

CDK also incorrectly contends that AutoLoop may not claim work-product privilege because it was not the target of the FTC's investigation and may not have been a party to the enforcement action. There is no requirement that the party asserting "work product" privilege be a party to the anticipated litigation. "[T]he literal language of the Rule protects materials prepared for *any* litigation or trial." *FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983); *see* Fed. R. Civ. P. 26(b)(3). Indeed, courts extend work-product protection to entities that have an interest in litigation regardless of whether they are parties. *See*, *e.g.*, *Bacchi v. Mass. Mut. Life Ins. Co.*, 110 F. Supp. 3d 278, 282-83 (D. Mass. 2015) (work-product privilege applied to amicus curiae); *Strang v. Collyer*, 710 F. Supp. 9, 12-13 (D.D.C. 1989) (same). Moreover, AutoLoop could have sought to intervene in any enforcement action because it was one of the aggrieved parties. *See FTC v. Am. Legal Distribs., Inc.*, 890 F.2d 363, 365-66 (11th Cir. 1989) (abuse of discretion to deny motion to intervene of aggrieved persons); *FTC v. Peabody Energy Corp.*, 2020 WL 1332095 (E.D. Mo. Mar. 23, 2020) (allowing third parties to intervene in FTC enforcement actions to protect their confidential information that had been subpoenaed). At the very least, AutoLoop anticipated material involvement in the litigation as a potential third-party witness.

AutoLoop, however, recognizes that this Court has previously indicated that documents created in anticipation of an FTC enforcement action against CDK and Reynolds may not be subject to the work-product privilege. *See* Dkt. 1113, at 2. Application of that ruling here would require production of Tabs 34-51.

### 2. AutoLoop Anticipated Litigation Against Reynolds

AutoLoop anticipated bringing litigation against Reynolds in 2013 as demonstrated by a legal memorandum concerning potential claims (Tab 1, PRIV_0598) and other emails discussing bringing claims against Reynolds throughout the 2013-2014 period. *See* AutoLoop Br. 5 (citing Tab 2 (January 2013 update on possible claims); Tab 15 (considering filing suit in June 2013); Tab

25 (discussing retention of attorney in August 2013)). These "lawyer's thoughts about a potential suit against [a] company" are protected opinion work product regardless of whether the "case hadn't begun and might never be brought." *Mattenson v. Baxter Healthcare Corp.*, 438 F.3d 763, 768 (7th Cir. 2006); *see Stopka v. Am. Family Mut. Ins. Co.*, 816 F. Supp. 2d 516, 524 (N.D. Ill. 2011) (Work-product "privilege protects documents that an attorney or a representative of a party creates in anticipation of litigation in order to prepare or analyze a client's case.").

CDK's reliance on Tony Petruzzelli's testimony is misplaced. Petruzzelli testified that, in 2013 to 2014, AutoLoop did not "decide" to bring litigation against Reynolds. *See* Dkt. 1110-2, at 42:19-43:4. But when or whether AutoLoop decided to bring litigation says nothing about whether AutoLoop anticipated litigation at the time the documents were created. *See Mattenson*, 438 F.3d at 768; 8 Wright & Miller, Federal Practice & Procedure § 2024 (3d. ed.) (Work-product "protection applies regardless of whether litigation actually ensues so long as the material is prepared in anticipation of litigation."). And CDK's assertion (at 8) that Petruzzelli testified that AutoLoop "had not formed any plans to initiate litigation" is incorrect and is contradicted by the evidence cited above. For its assertion, CDK cites to its counsel's deposition question stating that AutoLoop was not "contemplating" litigation; there is no such testimony from the witness. *See* Dkt. 1110-2 at 43:5-11.

### 3. The Documents Were "By Or For" AutoLoop

AutoLoop does not assert – as CDK suggests, *see* CDK Br. 9 – work-product privilege for documents merely because they are SIS's work product. AutoLoop asserts privilege only to protect its own work product. *See* AutoLoop Br. 6. To be sure, AutoLoop does assert work-product privilege for certain information sent to AutoLoop that originated from SIS's counsel. This is proper because these materials were sent to AutoLoop's counsel for the purpose of AutoLoop's evaluation of litigation against Reynolds. For example, Tab 15 concerns work product

- 5 -

of SIS's attorneys sent to AutoLoop for AutoLoop's counsel Nathan Jaye to consider in AutoLoop's evaluation of litigation against Reynolds, and there was a call scheduled between AutoLoop's and SIS's counsel to discuss that information. Disclosure of these materials would reveal AutoLoop's counsel's mental impressions and legal strategy – core opinion work product. *See id.* 5-6 (citing cases); Dkt. 1113, at 4, 7 (holding that information "gather[ed]" by a third party "that might be useful to Authenticom in what became this lawsuit" was protected by the work-product privilege for Tabs 10 and 25).[3]

### 4. There Was No Waiver Of Privilege

CDK has failed to establish its burden of showing that AutoLoop "substantially increase[d] the opportunity for [Defendants] to obtain the information." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 736 (N.D. Ill. 2014) (internal quotation and citation omitted); *id.* at 737 ("The party asserting waiver has the burden to show that a waiver occurred."). This Court has already held that there was no waiver caused by the sharing of work product between AutoLoop, Authenticom, eLead, Advent Resources, MOC1 Solutions, and Dominion. *See* Dkt. 1113, at 5 (upholding work product for Tabs 12 and 14, which were communications between AutoLoop (Nathan Jaye and Tony Petruzzelli), Dominion (Marc Schildkraut, Rusty Friddell), Advent Resources (Tim Gill), Authenticom (Steve Cottrell, Dane Brown, Marc Schildkraut), eLead (Mark Queen), and MOC1 Solutions (Dave Waco)); *see also id.* at 7 (same for Tab 20 concerning Dominion and Authenticom). CDK provides no basis for a different result for communications between AutoLoop and SIS and EasyCare/APCO. SIS was a data integrator that was adversely affected by Reynolds's blocking like Advent Resources, and EasyCare/APCO was a vendor who

---

[3] As CDK notes (at 9), AutoLoop's privilege log referenced the "legal advice" of SIS's counsel in connection with its assertions of attorney-client and common interest privilege. *See* Dkt. 1110-1. Because this Court has rejected the attorney-client privilege, that privilege ground is no longer at issue.

was adversely affected by Reynolds's blocking like eLead, AutoLoop, MOC1 Solutions, and Dominion.  Each of these parties had similar interests in seeking redress for Reynolds's unlawful conduct.  *See* AutoLoop Br. 6-7.  Moreover, as with Authenticom, AutoLoop has no burden to establish a lack of waiver by presenting a written confidentiality agreement.[4]

The only evidence that CDK cites (at 9-10) in favor of its waiver argument is the fact that SIS produced six privileged documents with AutoLoop to Defendants.  However, SIS produced these documents inadvertently and, after becoming aware of the production, requested that AutoLoop clawback these documents from Defendants.  *See* Ex. A, Letter from G. Squires-Binford to M. Nemelka (Mar. 4, 2019).  As CDK notes (at 10-11), AutoLoop subsequently clawed back these documents pursuant to the protective order.  *See* Dkt. 650, Second Am. Confidentiality Order § II(13)(a) ("If a party that produces or otherwise discloses information in connection with this action . . . thereafter claims that such information is privileged or protected by the attorney-client privilege or attorney work product protection . . . , the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or work product protection.").  That SIS immediately requested that the documents be clawed back provides further support that SIS and AutoLoop considered their communications to be confidential and privileged.[5]

---

[4] CDK relies (at 10) on cases where there would not have been an expectation of confidentiality in the absence of a written agreement because the documents were voluntarily disclosed to the government.  *See In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 322, 330 (N.D. Ill. 2010); *U.S. Info Sys., Inc. v. Int'l Bhd. Of Elec. Workers Local Union No. 3*, 2002 WL 31296430, at *5 (S.D.N.Y. Oct. 11, 2002) ("USIS made an unsolicited, uncompelled disclosure of the information to the District Attorney's Office.").

[5] CDK incorrectly asserts (at 11 & n.7) that AutoLoop no longer asserts privilege for these documents.  AutoLoop did not submit them pursuant to the Court's July 15, 2020 Order because that Order concerned the documents at issue in the June 29, 2020 Order (Dkt. 1027).  *See* Dkt. 1053.  These documents were identified in exhibits to CDK's March 1, 2019 motion to compel (Dkt. 544) and did not include the six SIS documents at issue.  *See* Dkt. 544-6; Dkt. 547.  The six

### B. 2016-2017: AutoLoop Anticipated Litigation Against CDK And Reynolds And Filed Litigation Against CDK

#### 1. AutoLoop Properly Asserted Work-Product Privilege For Documents Concerning The FTC's Investigation Of CDK And Reynolds

As explained above, AutoLoop properly asserted work-product privilege for Tabs 52-112 and Tab 115 because those documents contain work product in anticipation of an FTC enforcement action. As with the 2013 to 2014 period, there was an ongoing FTC investigation of CDK and Reynolds in the 2016 to 2017 period. *See* AutoLoop Br. 7-8. Accordingly, CDK's challenge to these documents should be denied.

However, as before, if this Court applies its prior ruling that work-product privilege does not apply to documents created in connection with an FTC investigation of CDK and Reynolds, Tabs 52-112 and Tab 115 would need to be produced. For the convenience of the Court, AutoLoop also notes that Tabs 98-99 and Tabs 107-112 are the same as documents that the Court has ordered Authenticom to produce and that have already been produced. *See* Dkt. 1113, at 2-3.

#### 2. AutoLoop Anticipated Litigation Against CDK And Reynolds

As AutoLoop demonstrated, it anticipated private litigation against CDK and Reynolds no later than May 2016. *See* AutoLoop Br. 7 (citing PRIV_0539 in the *Authenticom* action). Based on similar evidence, this Court has already concluded that Authenticom anticipated litigation no later than August 2016 against CDK and Reynolds at this time, and there is no basis for a different ruling as to AutoLoop. *See* Dkt. 1113, at 5 (upholding work-product privilege claim as to Tab 12 (PRIV_0539) and a similar document in Tab 14). Exhibit C (submitted *in camera*) to AutoLoop's

---

SIS documents were raised for the first time in CDK's reply brief. *See* Dkt. 587, at 1. In any event, AutoLoop submits these six documents if the Court intended them to be included as well. *See* Exhibits 1-6 (submitted *in camera*). These documents also support AutoLoop's privilege claims. *See*, *e.g.*, Ex. 4, SIS_DMS_0006946 (AutoLoop's work product of "class action suit participation letters" from July 26, 2013).

brief further confirms anticipated litigation with the statement "we are still going to litigate" and retention of outside counsel ("the law firm out of D.C."). *See* AutoLoop Br. 7.[6]

CDK again misplaces (at 12) reliance on Petruzzelli's testimony. Petruzzelli's inability to recall when AutoLoop "decided" to pursue litigation against CDK is irrelevant to whether AutoLoop "anticipated" litigation. *See supra* pp. 4-5. Nor is it relevant that AutoLoop did not engage Kellogg Hansen as outside counsel until 2017 because AutoLoop had its own in-house counsel overseeing the anticipated litigation. *See* AutoLoop Br. 7 (citing Exhibit D to AutoLoop's brief (PRIV_0539 in the *Authenticom* action) sent to in-house counsel).

### 3. The Documents Were "By Or For" Plaintiffs To This Litigation

Federal Rule of Civil Procedure 26(b)(3) protects work product "by or for" a party to this litigation. Fed. R. Civ. P. 26(b)(3). CDK contends that work product "by or for" Dominion and Carfax must be produced because they did not file their own litigation against CDK and Reynolds. However, as AutoLoop explained, both Dominion and Carfax are parties to this litigation as putative class members of the vendor class action (of which AutoLoop is the putative class representative). *See* AutoLoop Br. 8 & n.3. As putative class representative, AutoLoop has standing to object to this discovery. *See*, *e.g.*, *In re Skelaxin (Metaxalone) Antitrust Litig.*, 292 F.R.D. 544, 549-50 (E.D. Tenn. 2013) (putative class representative could raise objections to discovery served on putative class members). In any event, Dominion has authorized AutoLoop to represent that it asserts work-product privilege for Tabs 52-112 and Tab 115.[7]

---

[6] Exhibit C is the SIS document raised by Reynolds during the August 14, 2019 hearing. This document is privileged because it compiles information for AutoLoop's anticipated "Anti Trust and Sherman Act litigation" against CDK and Reynolds.

[7] Tabs 116-23 disclose mental impressions of AutoLoop's counsel at Kellogg Hansen and are materially indistinguishable from documents this Court held were privileged in the *Authenticom* action. *See* Dkt. 1113, at 4 (discussing Tab 9).

### 4. There Was No Waiver Of Privilege

AutoLoop has shown that CDK cannot meet its burden of establishing waiver. The documents were shared with the following eight entities: Dominion, Authenticom, CarFax, eLead, the National Automobile Dealer Association ("NADA"), DARCARS, AutoPoint, and Dealer FX. Each of these entities was aligned in seeking redress for Defendants' unlawful conspiracy at the time of the communications. Indeed, except for eLead and NADA, each of those entities is a party to the MDL. *See* AutoLoop Br. 8-9. Further, this Court has also already held that Defendants failed to meet their burden of establishing waiver with respect to communications shared with Dominion, Authenticom, and eLead. *See supra* pp. 6-7. CDK presents no basis for a different ruling for the remaining five entities. Those five entities are similarly situated to the three that the Court has already held do not waive privilege. CarFax, AutoPoint, and Dealer FX are vendors of software applications (like Dominion, AutoLoop, and eLead) that have suffered harm due to increased integration fees. DARCARS and NADA (the trade association for dealers) have similarly been harmed by the pass through of increased integration fees to dealers.

CDK fails to meet its burden because (except with respect to eLead), CDK makes no attempt to demonstrate how disclosing work-product to these aligned parties "substantially increased" the disclosure of those documents to Defendants. And as to eLead, this Court has already rejected CDK's argument. *See* Dkt. 1113, at 5 (upholding work product for Tabs 12 and 14). That ruling was correct. At the time of the communications, eLead was aligned with the other parties to the communications, and subsequent events do not retroactively waive the privilege. *See* Dkt. 573, at 10-12 (citing cases).

### CONCLUSION

CDK's motion to compel should be denied.

Dated: August 20, 2020  Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Counsel for Loop, LLC d/b/a AutoLoop*

- 11 -

## CERTIFICATE OF SERVICE

      I, Derek T. Ho, an attorney, hereby certify that on August 20, 2020 I caused a true and correct copy of the foregoing **PLAINTIFF AUTOLOOP'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL MEMORANDUM PURSUANT TO ECF NO. 1053** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

      */s/ Derek T. Ho*
      Derek T. Ho
      **KELLOGG, HANSEN, TODD,**
       **FIGEL & FREDERICK, P.L.L.C.**
      1615 M Street, NW, Suite 400
      Washington, D.C. 20036
      (202) 326-7900
      dho@kellogghansen.com