PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

*In re Dealer Management Systems Antitrust Litigation*, MDL 2817

*This document relates to:*

*Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.)

No. 1:18-CV-864

Hon. Robert M. Dow, Jr.

Magistrate Judge Jeffrey T. Gilbert

## DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PUBLIC VERSION

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I. MVSC Concedes The Alleged Conspiracy Did Not Occur ......................................3

    A.    MVSC Abandons Allegations that Reynolds Conspired to Block Access to Data Through Manual Reporting ....................................3

    B.    Reynolds Did Not Conspire to Block MVSC from Certified Integration ....................................5

        1.    Reynolds Did Not Refuse To Deal With MVSC ............................5

        2.    Reynolds Took a Different Approach Than CDK with Respect to Certified Integration for MVSC ....................................7

        3.    CVR's Efforts to Compete with MVSC Are Not Evidence of Conspiracy ...8

        4.    AVRS Marketing Proposals Are Not Evidence of Conspiracy ....................9

    C.    Reynolds Did Not Conspire to Block MVSC's Access to Hostile Integrators ....................................11

    D.    The Alleged Conspiracy Makes No Economic Sense...............................12

II. Defendants Did Not Cause MVSC Any Harm ........................................................13

    A.    MVSC Suffered No Injury in California as a Result of the Alleged Conspiracy ....................................13

    B.    MVSC Suffered No Injury in Wisconsin as a Result of the Alleged Conspiracy ....................................14

    C.    MVSC Suffered No Injury in Illinois as a Result of the Alleged Conspiracy ....................................16

    D.    MVSC Suffered No Injury in Virginia as a Result of the Alleged Conspiracy ....................................17

    E.    The Cost of Developing Electron Is Not Harm Caused by an Alleged Conspiracy ....................................17

    F.    It Is Undisputed That There Can Be No Harm to MVSC After October 2019 ....................................18

III. MVSC Cannot Establish Damages .........................................................................19

IV. MVSC Cannot Establish Antitrust Injury ...............................................................19

V. MVSC's State Law Claims Also Fail......................................................................20

CONCLUSION....................................................................................................................20

PUBLIC VERSION

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Atl. Richfield Co. v. USA Petroleum Co.*
    495 U.S. 328 (1990)..................................................................................................20

*Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins., Inc.*
    784 F.2d 1325 (7th Cir. 1986)....................................................................................9

*Blomkest Fertilizer v. Potash Corp. of Saskatchewan*
    203 F.3d 1028 (8th Cir. 2000)..................................................................................11

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*
    152 F.3d 588 (7th Cir. 1998)....................................................................................19

*Broadcom Corp. v. Qualcomm Inc.*
    501 F.3d 297 (3d Cir. 2007)......................................................................................17

*Chi Studio Rental, Inc. v. Ill. Dep't of Commerce & Econ. Opportunity*
    940 F.3d 971 (7th Cir. 2019)..............................................................................19, 20

*In re Chocolate Confectionary Antitrust Litig.*
    801 F.3d 383 (3d Cir. 2015)...............................................................................10, 11

*Conwood Co., L.P. v. U.S. Tobacco Co.*
    290 F.3d 768 (6th Cir. 2002)....................................................................................14

*De Filippo v. Ford Motor Co.*
    516 F.2d 1313 (3d Cir. 1975)..................................................................................5, 6

*Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*
    902 F.2d 174 (2d Cir. 1990)......................................................................................6

*Diaz v. Farley*
    215 F.3d 1175 (10th Cir. 2000)..................................................................................4

*Ehredt Underground, Inc. v. Commonwealth Edison, Co.*
    90 F.3d 238 (7th Cir. 1996)......................................................................................14

*Fed. Trade Comm'n v. Qualcomm Inc.*
    2020 WL 4591476 (9th Cir. Aug. 11, 2020) ..........................................................9

*In re High Fructose Corn Syrup Antitrust Litig.*
    295 F.3d 651 (7th Cir. 2002)......................................................................................8

*JamSports & Enter., LLC v. Paradama Prods., Inc.*
    336 F. Supp. 2d 824 (N.D. Ill. 2004) ..................................................................5, 18

PUBLIC VERSION

*Kleen Prod., LLC v. Georgia-Pacific LLC*
　　910 F.3d 927 (7th Cir. 2018) .................................................................8, 12

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*
　　359 U.S. 207 (1959) ..................................................................................6

*Marrese v. Am. Acad. of Orthopedic Surgeons*
　　1991 WL 5827 (N.D. Ill. Jan. 15, 1991) ...................................................4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
　　475 U.S. 574 (1986) .........................................................................2, 3, 12

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*
　　708 F.2d 1081 (7th Cir. 1983) .................................................................19

*Mercatus Grp., LLC v. Lake Forest Hospital*
　　641 F.3d 834 (7th Cir. 2011) ..................................................................14

*MMG Fin. Corp. v. Midwest Amusements Park, LLC*
　　630 F.3d 651 (7th Cir. 2011) ..................................................................14

*Nat'l Black Expo v. Clear Channel Broad., Inc.*
　　2007 WL 495307 (N.D. Ill. Feb. 8, 2007) ..........................................11, 19

*NCAA v. Bd. of Regents*
　　468 U.S. 85 (1984) .................................................................................17

*Palmer v. Marion Cnty.*
　　327 F.3d 588 (7th Cir. 2003) ...............................................................6, 16

*Second Amendment Arms v. City of Chicago*
　　2020 WL 1157347 (N.D. Ill. Mar. 10, 2020) .......................................13, 14

*Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*
　　830 F.2d 1374 (7th Cir. 1987) ................................................................20

*In re Text Messaging Antitrust Litig.*
　　782 F.3d 867 (7th Cir. 2015) ..................................................................10

*Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*
　　496 F.3d 403 (5th Cir. 2007) ...................................................................8

*United States v. Microsoft Corp.*
　　253 F.3d 34 (D.C. Cir. 2001) ..................................................................17

*Universal Grading Serv. v. eBay, Inc.*
　　2012 WL 70644 (N.D. Cal. Jan. 9, 2012), *aff'd*, 563 Fed.Appx. 571 (9th Cir.
　　2014) .......................................................................................................7

**PUBLIC VERSION**

*Weeks v. Samsung Heavy Indus. Co., Ltd.*
    126 F.3d 926 (7th Cir. 1997) .................................................................................................6, 8

*Weit v. Cont'l Ill. Nat. Bank & Trust Co. of Chicago*
    641 F.2d 457 (7th Cir. 1981) .................................................................................................9

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Citation | Docket Number |
|---|---|---|
| Caseria Ex. | Exhibits to the Declaration of Leo D. Caseria in Support of Reynolds's Motion for Summary Judgment and Rule 56.1(a)(3) Statement of Undisputed Material Facts (*MVSC*), May 20, 2020 | Dkts. 957, 958, 959 |
| Defs. Reply Ex. | Exhibits to the Declaration of Daniel T. Fenske in Support of Defendants' Reply Briefs to Motions for Summary Judgment, August 28, 2020 | Filed concurrently |
| Dorris Ex. | Exhibits to the Declaration of Daniel V. Dorris in Support of Plaintiff Authenticom's Motion for Summary Judgment on Defendants' Counterclaims, May 20, 2020 | Dkt. 977-1 |
| Fenske Ex. | Exhibits to the Declaration of Daniel T. Fenske in Support of Defendants' Motions for Summary Judgment and Rule 56.1 Statement of Common Undisputed Material Facts, May 20, 2020 | Dkts. 975, 979, 1018 |
| Ho Ex. | Exhibits to the Declaration of Derek T. Ho in Support of MDL Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment, July 28, 2020 | Dkts. 1069, 1101 |
| JSUF | Defendants CDK Global, LLC and The Reynolds and Reynolds Company's Joint Statement of Common Undisputed Material Facts in Support of their Motion for Summary Judgment Exhibits, May 20, 2020 | Dkt. 974 |
| Mem. | Reynolds's Memorandum in Support of its Motion for Summary Judgment (*MVSC*), May 20, 2020 | Dkt. 955 |
| MSUF | Reynolds's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment (*MVSC*), May 20, 2020 | Dkt. 956 |
| Opp. | MVSC's Opposition to Reynolds's Motion for Summary Judgment (*MVSC*), July 28, 2020 | Dkt. 1073 |
| Pls. SOAF | MDL Plaintiffs' Corrected Statement of Additional Facts in Opposition to Defendants' Motions for Summary Judgment, August 5, 2020 | Dkt. 1101 |
| Resp. MSUF | MVSC's Responses to Reynolds's Statement of | Dkt. 1079 |

PUBLIC VERSION

|  | Undisputed Material Facts (*MVSC*), July 28, 2020 |  |
|---|---|---|
| Resp. Pls. SOAF | Defendants' Response to MDL Plaintiffs' Corrected Statement of Additional Facts in Opposition to Defendants' Motions for Summary Judgment, August 28, 2020 | Filed concurrently |
| SAC | MVSC's Second Amended Complaint, November 2, 2017 | MVSC Dkt. 76 |

PUBLIC VERSION

# INTRODUCTION

MVSC alleges that Reynolds conspired to eliminate it as an EVR provider by blocking its access to DMS data, yet MVSC now admits ***it has been able to access the data all along***. Summary judgment against MVSC is warranted on this basis alone.

MVSC alleges that starting in 2014, defendants conspired to "completely block" its access to DMS data through: (1) CDK's and Reynolds's certified integration programs; (2) hostile integrators like Authenticom; and (3) manual reporting tools built into the DMS. SAC ¶¶ 10, 11; Caseria Ex. 4, Klein Rpt. ¶ 12. It specifically alleged that because it had been able to compete effectively without certified integration before the conspiracy, defendants conspired not only to block certified integration but to block access by all other means. SAC ¶¶ 9-10. By cutting off access to data necessary to provide EVR services, defendants allegedly intended to eliminate MVSC as a competitive threat to their joint venture CVR. The alleged conspiracy would not have made economic sense, and would not have worked, without blocking MVSC from ***all three*** methods of DMS data access. Summary judgment should be granted because the undisputed evidence, and MVSC's admissions, establish that that never occurred.

First, MVSC now admits, and the undisputed evidence shows, that it has always been able to access DMS data through manual reporting; ████████████████████████████ Indeed, in 2017, MVSC developed a software tool called Electron that works together with manual reporting; the very existence of Electron, which requires the ongoing availability of manual reporting, disproves the conspiracy MVSC pleaded, which involved blocking all forms of data access.

Second, undisputed facts also show that MVSC could have accessed Reynolds DMS data through certified integration; there was no conspiracy to block MVSC from RCI. ███████████
████████████████████████████████████

PUBLIC VERSION



. MVSC presents no evidence that tends to exclude the possibility that Reynolds acted independently when it proposed RCI prices to MVSC. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). MVSC highlights its starkly different experience applying to CDK's 3PA program – but CDK and Reynolds's different approaches to certified integration for EVR providers prove the ***absence*** of conspiracy.

. Again, the starkly different approaches to MVSC's access to hostile integrators only proves the absence of conspiracy.

Neither can MVSC establish that defendants caused it any harm. MVSC's status in California, Wisconsin, Illinois, and Virginia – ███████████████ – had nothing to do with any alleged conspiracy. MVSC suffered no injury in California (███████████████) and Virginia (███████████████). The difficulties MVSC faced in entering Wisconsin (where the State denied MVSC's EVR application) and Illinois (███████████████) were caused by State action; not a conspiracy. MVSC's position that but for the conspiracy, ███████████████, cannot be taken seriously. This is particularly true given that MVSC does not dispute that there can be no conspiracy past its October 2019 settlement with CDK.

MVSC's case fails on damages too. Its expert calculated total damages caused in part by Reynolds and CDK's marketing of their joint venture CVR, which is not an antitrust violation.

This case is ripe for summary judgment: MVSC has abandoned any viable theory of the

PUBLIC VERSION

conspiracy, admits the core material facts, and fails to proffer evidence of Reynolds's agreement and participation in a conspiracy.

## ARGUMENT

### I.     MVSC Concedes The Alleged Conspiracy Did Not Occur

MVSC abandons the conspiracy it alleged and admits material facts that end its case against Reynolds. It also presents no evidence that "tends to exclude the possibility" that Reynolds acted independently. *Matsushita*, 475 U.S. at 588. This Court observed that "MVSC's allegations with respect to Reynolds's involvement in the alleged conspiracy are not robust." Dkt. 425 (Mem. Op. and Order) 23. Years of discovery has only further discredited them.

#### A.     MVSC Abandons Allegations that Reynolds Conspired to Block Access to Data Through Manual Reporting

MVSC admits that it has three alternative ways to access DMS data: (1) certified integration (such as RCI and 3PA); (2) hostile integrators (such as Authenticom); and (3) free manual reporting tools (such as Dynamic Reporting). Resp. MSUF 10; JSUF 5. Therefore, in order to prove a conspiracy to eliminate MVSC as an EVR provider by "completely blocking" its access to DMS data, *e.g.*, SAC ¶ 10, MVSC must establish that Reynolds conspired to block each of the three methods. That is exactly what MVSC pled in its Complaint: each cause of action is based on an alleged conspiracy to block all three (not just one) method of access.[1]

Fatal to its case, MVSC now concedes that Reynolds and CDK did not block access to free

---

[1]     SAC ¶ 10 (introductory overview of conspiracy to block all three methods); ¶¶ 100-132 (alleged blocking of MVSC from RCI and 3PA); ¶¶ 162-171 (alleged blocking of access to hostile integrators); ¶¶ 172-179 (alleged blocking of access to manual reporting); ¶ 208 (Sherman Act, Section 1 claim based on alleged unlawful agreement between CDK and Reynolds, "in furtherance of which they agreed to block MVSC from their third-party DMS programs and cut off MVSC's access to obtain the necessary dealer data by other means."); ¶¶ 233-240 (conspiracy to monopolize claim based on same conduct); ¶¶ 245-247 (Cartwright Act claim based on same conduct); ¶¶ 248-253 (UCL claim based on same conduct); ¶¶ 254-263 (ICFA claim based on same conduct).

PUBLIC VERSION

manual reporting tools. It admits to "be[ing] able to use manual reporting tools to process EVR transactions in non-point-of-sale states [*i.e.*, California before 2019 and Wisconsin] during the relevant period." Resp. MSUF 11.[2] It admits that ███████████████████████████

████████████████████████████████████████████████

███████████. *Id.* 13.[3]

███████████████████████████████. *See* MSUF 17 (citing Caseria Exs. 24, 27).

In 2017, MVSC developed a software tool called Electron that works in conjunction with manual reporting. *Id.* 18, 19. ████████████████████████████████

██████████████. Resp. MSUF 20. It is therefore undisputed that Reynolds did not conspire to eliminate MVSC as an EVR provider by cutting off access to necessary data.

MVSC now asserts for the first time in its Opposition (at 1, 17) that it only needs to establish a conspiracy to block just **one** method of data access, whichever method that may be. But a conspiracy to block just one of several available methods of accomplishing the same thing makes no sense, is not plausible, and is not the alleged conspiracy the parties have litigated for nearly four years. *See, e.g.*, *Diaz v. Farley*, 215 F.3d 1175, 1183 (10th Cir. 2000) (affirming summary judgment on *per se* group boycott claim: even if anesthesiologists were precluded from practicing at two specific hospitals, they were free to practice elsewhere); *Marrese v. Am. Acad. of Orthopedic Surgeons*, 1991 WL 5827, at *7 (N.D. Ill. Jan. 15, 1991) (a *per se* boycott requires cutting off access to a supply or facility "necessary to enable the boycotted firm to compete") (quoting *Nw.*

---

[2]  Unlike "point-of-sale" states, "non-point-of-sale states" do not require EVR transactions to be initiated during the sale of the vehicle at the dealership. Resp. to MSUF 7.

[3]  While MVSC's Opposition asserts various start dates for the conspiracy (2011, 2012 and 2014), Opp. 5, 18, ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████ (emphasis in original).

PUBLIC VERSION

*Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 294 (1985)).[4]

### B. Reynolds Did Not Conspire to Block MVSC from Certified Integration

#### 1. Reynolds Did Not Refuse To Deal With MVSC

████████████████████████████████████████████████. Opp. 21; Resp. MSUF 25-36.

████████████████████████████████████████████████████████████████

████████████████████. Given these admissions, MVSC cannot prove that Reynolds effectively refused to deal with it pursuant to a conspiracy with CDK. Mem. 10-13 (collecting cases that a concerted refusal to deal based on "unreasonable" terms requires a showing of discriminatory prices higher than what defendants offered plaintiff's competitors).

Try as it might, MVSC cannot circumvent established law. First, the **concerted** refusal to deal cases highlighted in Reynolds's brief defeat MVSC's argument (at 20-21) that discriminatory pricing is only relevant to unilateral refusals to deal. *See* Mem. 10-11 (citing *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 209, 213 (1959) (concerted refusal to deal claim survived summary judgment because the conspiracy prohibited participants from selling to plaintiff "*at the same prices and conditions made available" to plaintiff's competitor*); *De Filippo v. Ford Motor Co.*, 516 F.2d 1313, 1320 (3d Cir. 1975) (no concerted refusal to deal where dealer plaintiffs were not deprived of the opportunity to "*purchase products on the same basis as other dealers*") (emphases added)). It makes no sense for Reynolds to block MVSC from RCI ██ ████████████████████████████████████████████████, conspiracy or not.

---

[4]   MVSC also describes the alleged conspiracy as the denial of an essential input necessary to the provision of EVR services. Opp. 21-22 (citing *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 179-80 (2d Cir. 1990)). But where there are alternative methods of data access, then one method (even if alleged to be "preferable" or "most profitable") cannot by definition be "essential." *JamSports & Enter., LLC v. Paradama Prods., Inc.*, 336 F. Supp. 2d 824, 839 (N.D. Ill. 2004). MVSC also abandoned the essential facilities claim in its original complaint; it cannot resurrect it now. *Compare* MVSC Dkt. 1 *with* MVSC Dkt. 58.

PUBLIC VERSION

Second, MVSC's apples-to-oranges comparisons (at 11-12) cannot demonstrate discriminatory pricing. █████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████ is irrelevant. The correct inquiry is whether prices *Reynolds* (not Authenticom) offered MVSC were discriminatorily higher than those Reynolds offered *MVSC's competitors*. *Klor's*, 359 U.S. 207 at 209, 213; *De Filippo*, 516 F.2d at 1320. They were not.

Third, MVSC cannot rely on unsubstantiated speculation from its executives that Reynolds's prices were "unreasonable" and "unprofitable for MVSC." Opp 21; Pls. SOAF 108. Bald assertions without underlying analysis or facts are insufficient. *Palmer v. Marion Cnty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment."); *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 939 (7th Cir. 1997) ("a plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment.").[5]

Finally, █████████████████████████████████████████████

████████████████████████ is not a viable antitrust claim. *See De Filippo*, 516 F.2d at 1320 (rejecting group boycott claim because plaintiffs were not deprived of the opportunity to become Ford dealers on the same basis as other dealers but were merely deprived of the opportunity to deal on special terms). As Reynolds explained to MVSC, ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████. MSUF 35.

---

[5]     *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174 (1990), cited by MVSC (at 21 n.7), is inapposite. In that case, claims by plaintiff's executives that defendant's offer was "unreasonable" were substantiated with evidence of a sudden 800% price increase. *Id.* at 180. Such evidence is lacking here.

PUBLIC VERSION

### 2. Reynolds Took a Different Approach Than CDK with Respect to Certified Integration for MVSC

MVSC cannot establish a conspiracy to exclude MVSC by pointing to CDK's purported refusals to deal with MVSC on 3PA or ███████████████████████████ ████████████████. Opp. 9-11. It is undisputed that Reynolds *did not* have such a strategy; in fact it had the opposite strategy of welcoming all EVR providers into RCI. Notably, MVSC does not dispute that: (1) ███████████████████████████████████████ ████████████████████████████████, MSUF 53; (2) ██████████████████████ ██████████, Resp. MSUF 25-36; and (3) Reynolds allowed many other EVR providers who competed with CVR to join RCI. Resp. MSUF 37-41.

MVSC ignores caselaw, including Seventh Circuit precedent, dismissing similar conspiracy claims on summary judgment because of the absence of parallel conduct. Mem. 14-15 (citing *Kleen Prod., LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 936 (7th Cir. 2018); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 877 (7th Cir. 2015); *Anderson News, LLC v. Am. Media, Inc.*, 899 F.3d 87, 105 (2d Cir. 2018)). Instead, MVSC tries to move the goalposts. It now claims (contrary to its SAC allegations and expert opinions) that all it needs to prove is that Reynolds and CDK agreed that *CDK alone* would block MVSC from 3PA (with no parallel blocking of MVSC from RCI). Opp. 20. This new theory lacks plausibility and makes no economic sense: CDK could unilaterally block MVSC from 3PA all on its own. *See Universal Grading Serv. v. eBay, Inc.*, 2012 WL 70644, at *5 (N.D. Cal. Jan. 9, 2012) (claim that eBay allegedly conspired with certain sellers in its marketplace in order to increase eBay's commissions failed *Matsushita* because eBay could have achieved the object of the conspiracy simply by raising its fees on its own, without

PUBLIC VERSION

cooperation from defendant sellers), *aff'd*, 563 Fed. Appx. 571 (9th Cir. 2014).[6]



serve as "direct evidence" of conspiracy. Opp. 5, 18. "Direct evidence" is evidence that unambiguously amounts to an "acknowledgment of guilt," without the need to draw *any* inferences. *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002). MVSC draws numerous unreasonable inferences.

Caseria Ex. 8, Nemelka Tr. 377:24-25 (emphasis added), . *Id.* 378:3-8 (emphasis added); *id.* at 379:3-11 ; *see also id.* at 338:24-339:24 .[7]

### 3. CVR's Efforts to Compete with MVSC Are Not Evidence of Conspiracy

CVR's competition with MVSC is, by definition, not anticompetitive. MVSC's gripes

---

[6] MVSC also suggests (at 21) that lack of parallel conduct here is due to cheating. But cheating is characterized by occasional deviations from general adherence to a common scheme, brought back into line by enforcement from coconspirators. Here, in contrast, Reynolds never blocked MVSC or other EVR providers from RCI, and there was never any enforcement from CDK; there was no conspiracy at all. *See Kleen* at 937 ("If this was a cartel, it would have tried to impose disciplinary measures on the 'cheaters' who did not go along with the price increases. But that type of evidence is conspicuously absent . . . .").

[7] Nemelka's self-serving deposition testimony is insufficient to withstand summary judgment, *Weeks*, 126 F.3d at 939, and . Further, Nemelka's recounting of Morris's purported statements is nothing like *Tunica Web Advert. v. Tunica Casino Operators Ass'n, Inc.*, 496 F.3d 403 (5th Cir. 2007), cited by MVSC. *Tunica* involved explicit admissions by defendants of a "gentlemen's agreement" not to deal with plaintiff and additional explicit admissions that defendants were terminating dealings with plaintiff pursuant to that gentlemen's agreement. *Id.* at 410. This is precisely the type of evidence that is lacking here.

PUBLIC VERSION

about ███████████████████████████, *see, e.g.*, Opp. 5-6 (████████████

████████████████████████████████████████████████████

████████) (internal citations omitted), are irrelevant. *Ball Mem'l Hosp., Inc. v. Mutual Hosp.*

*Ins., Inc.*, 784 F.2d 1325, 1339 (7th Cir. 1986) ("[v]igorous competitors intend to harm rivals . . . .

To penalize this intent is to penalize competition."); *Fed. Trade Comm'n v. Qualcomm Inc.*, 2020

WL 4591476, at *21 (9th Cir. Aug. 11, 2020) (businesses often act with "sharp elbows," and

"[h]ypercompetitive behavior" is not illegal under the antitrust laws).

Likewise, ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████, Opp. 5-6, are all examples of

procompetitive (not anticompetitive) conduct. *Weit v. Cont'l Ill. Nat. Bank & Trust Co. of Chi.*,

641 F.2d 457, 462 (7th Cir. 1981) (competitor meetings lack probative value when those

competitors are involved in lawful venture requiring cooperation). As Judge Dale Fischer

previously recognized in this case (in a decision that MVSC ignores), evidence of CVR's

"aggressive marketing, including leveraging its access to CDK's and Reynolds' data, appears

consistent with legitimate competitive actions." MVSC Dkt. 73 (Order) at 10.

### 4. AVRS Marketing Proposals Are Not Evidence of Conspiracy

Actions speak louder than words. As described above, Reynolds did not block MVSC from

RCI, and in fact ████████████████████████████████████████████

█████████████████. Unable to identify any Reynolds conduct consistent with the alleged

conspiracy, MVSC asks the Court to ignore conduct and the totality of evidence and instead infer

conspiracy from a 2015 proposal to market CVR with the following message: "████████████

████████████████████████████████████" Opp. 1; Ho Ex. 130, PX 498. This

statement falls far short of excluding the possibility of independent conduct. Nor is it "direct

-9-

evidence" of a conspiracy.

First, the individuals in this chain of communications ███████████████████ ███████████████████████████████████████████████████. Resp. Pls. SOAF 104. Following CVR's April 2015 acquisition of EVR provider AVRS, ███████████ ████████████████████████████████████████████████████████████████ ████████████████. *Id.* (citing Defs. Reply Ex. 600, CDK-2822822, at 823 (███████████ ██████).[8] ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ *Id.* at 822 (████████████████████); Ho Ex. 130, PX 498 at REYMDL00118362 (████████████████). Simply put, these individuals lacked the authority needed to effectuate the alleged conspiracy against MVSC. *See In re Chocolate Confectionary Antitrust Litig.*, 801 F.3d 383, 409 (3d Cir. 2015) (in an alleged price-fixing conspiracy, pricing-related information exchanged among individuals with no pricing authority did not suggest conspiracy).

Second, the 2015 statement was factually true: ███████████████████████ ██████████████████████████████████████████████████. MVSC's lack of certified integration with Reynolds was a matter of public knowledge because Reynolds publishes its RCI participant list online. Caseria Ex. 157, RCI Third Party List. ██████████████ ████████████████████████████████████████████████████████, are not evidence of conspiracy, nor could such statements have impacted MVSC's efforts to join RCI, *which were all in the past*. *See In re Text Messaging*, 782 F.3d at 875 (competitors watch each other like hawks; knowledge of a competitor's status does not suggest a conspiracy); *In re*

---

[8]    Post-acquisition, AVRS continued to do business under its own name. *See* Ho Ex. 124, PX 476 at REYMDL00118773.003 (████████████████████████████████████████).

*Chocolate*, 801 F.3d at 409 (information exchange which occurred *after* the price increase in question could not have affected the price increase and thus, did not suggest conspiracy).

Third, ███████████████████████████████████████████████

███. Resp. Pls. SOAF 104 (citing Ho Ex. 449, REYMDL00537499 at 499). Even if it had been used by Reynolds to market AVRS (once it was acquired by CVR), a joint venturer's efforts "to promote the joint venture, is not illegal conduct, but merely part of the definition of a joint venture." *Nat'l Black Expo v. Clear Channel Broad., Inc.*, 2007 WL 495307, at *10 & n.8 (N.D. Ill. Feb. 8, 2007).

Fourth, as explained already, ***Reynolds never blocked MVSC from RCI***. *See Blomkest Fertilizer v. Potash Corp. of Saskatchewan*, 203 F.3d 1028, 1033 (8th Cir. 2000) (considering the evidence as a whole, competitor communications did not tend to exclude the possibility of independent conduct since other significant events strongly suggested independent conduct; plaintiff may not first assume a conspiracy and then proceed to explain the evidence accordingly).

### C.   Reynolds Did Not Conspire to Block MVSC's Access to Hostile Integrators

MVSC's third method of DMS access, hostile integration, was also not the subject of conspiratorial blocking. Regardless, MVSC cannot simply point to *Authenticom*; as explained above, it must establish that Reynolds conspired to block all methods of data access to MVSC, not just hostile integration. While Reynolds and CDK are entitled to summary judgment in *Authenticom*, denial of summary judgment there would not entitle MVSC to a trial on MVSC's materially different theories.

Lack of parallel conduct again dooms MVSC's conspiracy theory. ████████████████

███████████████████████████████████████████████████. Opp. 14; Resp. MSUF 56, 58. ████████████████████████████████████████████

████████████████████. Resp. MSUF 55. ████████████████████████

-11-

PUBLIC VERSION

█████████████████████████████████████████████████████████████████.

Resp. MSUF 55, 56. In contrast, ████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████. Resp.

MSUF 58. As discussed above, one cannot reasonably infer conspiracy from this nonparallel

conduct, *e.g.*, *Kleen Prod.*, 910 F.3d at 936, particularly when Reynolds unilaterally adopted its

approach years before the alleged conspiracy. Mem. 16 (collecting cases).

### D. The Alleged Conspiracy Makes No Economic Sense

A conspiracy to monopolize EVR markets by targeting just one of many EVR providers

makes no sense. MVSC admits that (1) ███████████████████████████████████

█████████████████████████████ and (2) CVR competes with TitleTec – which has

been in RCI ████████ – in more states, for more EVR transactions, than it competes with MVSC.

Resp. MSUF 24, 37, 44. ███████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████ Opp. 24 (quoting Dorris Ex. 158, Israel Reply Rpt. ¶ 241), is meritless. TitleTec, █

███████████████████████████, has been in RCI ████████. MSUF 37.

MVSC also suggests that defendants singled out MVSC because of the competitive threat

MVSC posed specifically in California. This too makes no sense. The results in California speak

for themselves: MVSC's California market share ██████████████████████████████

████████████████████████████████████. MSUF 62, 63. Thus, this is not an

alleged conspiracy that gave defendant a monopoly, but one that permitted plaintiff to have a

monopoly. MVSC's undisputed dominance in California is not merely indicative of an

"ineffective" conspiracy as MVSC asserts (at 23-24), ***but no conspiracy at all***. *Matsushita*, 475

U.S. at 591-92 (conspiracy to eliminate US television manufacturers made no sense because US

PUBLIC VERSION

manufacturers still held the two largest shares; hence, the conspiracy's failure was "strong evidence that the conspiracy does not in fact exist.").

Finally, Reynold's undisputed willingness ████████████████████████████████ ████ fatally undercuts MVSC's argument (at 23) that without the conspiracy, either Reynolds or CDK would have been "tempted to capture data integration revenue from MVSC, even at the price of undermining CVR's profits." That is *exactly* what Reynolds tried to do. MSUF 28, 29, 33.[9]

## II. Defendants Did Not Cause MVSC Any Harm

### A. MVSC Suffered No Injury in California as a Result of the Alleged Conspiracy

MVSC admits that during the alleged conspiracy period, ███████████████████████ █████████████████████████████████████████ Resp. MSUF 62, 63. MVSC further concedes that it has been able to provide EVR services in California throughout the relevant period with manual reporting tools. Opp. 25. Reynolds caused no harm to MVSC in California; to the contrary, MVSC thrived and dominated that market.

As set forth in Reynolds's *Daubert* motion, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ Dkt. 865 at 14 ██████████████████

████████ ); Ho Ex. 461, Nemelka Decl. ¶¶ 12-16. Gordon Klein's ███████████████

████████████████████████████████████████████████ impermissibly

"*assumes* as truth the very issue[s] that the plaintiff needs to *prove* in order to recover." *Second Amendment Arms v. City of Chi.*, 2020 WL 1157347, at *10 (N.D. Ill. Mar. 10, 2020) (Dow, J.)

---

[9] Unable to make economic sense of the alleged conspiracy, MVSC suggests (at 22-23) that it should not be required to do so, because it has provided the Court with "direct evidence" of the conspiracy in the form of ████████████████████████████████████████████████████. As described in preceding sections, this is not direct evidence of conspiracy, nor could it be in light of Reynolds's undisputed conduct.

PUBLIC VERSION

(emphases in original); *see also id.* at \*12 (expert opinion inadmissible under *Daubert* will not be considered on summary judgment).[10]

MVSC has no one to blame but itself for its decision not to join RCI on standard terms, as set out above and in Reynolds's opening brief. Thus, MVSC's claims (at 25-26) that certain dealers in California declined its services due to lack of certified integration have nothing to do with Reynolds's conduct.[11] And, to the extent CVR promoted its relationship with Reynolds and CDK to its benefit (with or without their help), and dealers wished to " ███████████████████████ ██████████████ " CVR had to offer, Opp. 26, that is competition at work, not an unlawful restraint on competition. MVSC Dkt. 73 at 10; *Mercatus Grp., LLC v. Lake Forest Hospital*, 641 F.3d 834, 851 (7th Cir. 2011) (commercial speech disparaging a competitor's services in order to promote one's own is not an actionable antitrust claim). The antitrust laws are not designed to insulate MVSC from competition. *See Ehredt Underground, Inc. v. Commonwealth Edison, Co.*, 90 F.3d 238, 240 (7th Cir. 1996).

## B.    MVSC Suffered No Injury in Wisconsin as a Result of the Alleged Conspiracy

MVSC does not dispute that government action can break the chain of causation. Mem. 28 (collecting cases). That is precisely what happened in Wisconsin: the State denied MVSC's 2014 application; lack of certified integration had nothing to do with the State's decision not to accept

---

[10]    The lone case MVSC cites (at 27), *Conwood Co., L.P. v. U.S. Tobacco Co.*, 290 F.3d 768 (6th Cir. 2002), does not support a contrary result. In *Conwood*, plaintiff's expert's analysis was based on market data and testimony from a non-party competitor corroborating plaintiff's injury, and defendant did not challenge the admission of evidence of its anticompetitive conduct. *Id.* at 785, 89-90. In contrast, here, MVSC has failed to show anticompetitive conduct, or any non-speculative injury arising from such conduct.

[11]    All the MVSC emails purportedly conveying nonparty dealer statements (Pls. SOAF 112: Ho Exs. 78, 79, 406, 409, 410, 429, 479, 480, 481 and Ho Ex. 4, Nemelka Tr. 238:16-24) are inadmissible hearsay and insufficient to withstand summary judgment. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) (affirming summary judgment after excluding "testimony of [Midwest's] own employees repeating what Cameron Motorsports had told them" as "classic hearsay[,]" explaining "[a] party may not rely on inadmissible hearsay to avoid summary judgment.").

new EVR providers.

MVSC says (at 31) there is a factual dispute about whether Wisconsin was open to new EVR providers when MVSC applied, but correspondence from the State of Wisconsin – which MVSC did not produce during discovery – cannot be more explicit that the State was closed to new EVR providers. Caseria Ex. 46 (2/23/17 Ltr. from Wisconsin DMV to MVSC: "***At the time of your request the department was not accepting new vendors into [its] program***.") (emphasis added). In fact, ███████████████████████████████████ ████ and, since then, has rejected six other EVR providers (in addition to MVSC). Resp. MSUF 68.

Another letter from the State – which MVSC also did not produce and ignores in Opposition – explains further that MVSC's application was denied because: (1) adding a new provider would require "extensive resources" from the State to integrate that provider into the State's DMV system; and (2) adding a new provider would not provide a net benefit to the State because all the dealers in the State were already using EVR (so it would not increase the number of dealers participating in the State's EVR program). Caseria Ex. 45 (8/7/14 Ltr. from Wisconsin DMV to MVSC). Given that record, MVSC's suggestion (at 31) that there is a factual dispute on whether Wisconsin was open to new EVR providers when MVSC applied borders on frivolous; no reasonable jury could find that lack of certified integration was the material cause of MVSC's inability to compete in Wisconsin.

Moreover, Wisconsin (1) does not require EVR transactions to be initiated at the point of sale; (2) has never expressed any concerns about MVSC's lack of certified integration; and (3) runs its own state-owned EVR app which also does not have certified integration. Resp. MSUF 6, 70, 71. As such, MVSC's other claim to injury in Wisconsin – that lack of certified integration

-15-

"█████████████████████████████████," Opp. 30 – is similarly meritless.[12]

### C.   MVSC Suffered No Injury in Illinois as a Result of the Alleged Conspiracy

MVSC was unable to provide EVR services in Illinois until the State approved its EVR solution in ████████████. Resp. MSUF 76. Like Wisconsin, whatever challenges MVSC faced in trying to enter the Illinois market were due to State action, not a conspiracy.



MVSC admits that ███████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████ Resp. MSUF 73.

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ Ho Ex. 419 at 1; Resp. Pls. SOAF 113. █████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Resp. MSUF 74.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████ Resp. Pls. SOAF 113 (citing Caseria Ex. 139 (████████████████)). ████

██████████████████████████████████████████████████████████████████

██████████████████ Resp. MSUF 75, 76.

There can be no dispute that lack of certified integration did *not* cause MVSC's delay in Illinois. An unsubstantiated assertion to the contrary by MVSC's COO – in the same declaration MVSC relies on to establish causation in every State at issue – does not establish a triable issue.

---

[12]   MVSC's final claim – █████████████████████████████████████████
███████, Opp. 30 (citing Ho Ex. 461, Nemelka Decl. ¶ 20) – is supported by nothing more than unsubstantiated assertions in the declaration of MVSC's COO and insufficient to defeat summary judgment. *Palmer*, 327 F.3d at 596.

PUBLIC VERSION

### D.    MVSC Suffered No Injury in Virginia as a Result of the Alleged Conspiracy



MSUF 64.

MVSC's contention (at 29) that lack of certified integration precluded it from competing in Virginia until it developed Electron is therefore contrary to the record.

MVSC counters that ████████████████████████, it did not have market power. MVSC is wrong. Market power is shown in one of two alternative ways: (1) direct evidence such as the ability to profitably charge substantially higher prices; *or* (2) indirect evidence such as market shares. *See United States v. Microsoft Corp.,* 253 F.3d 34, 51 (D.C. Cir. 2001); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 307 (3d Cir. 2007). MVSC's ████████████████████████████████)[13] is direct evidence of market power. *See NCAA v. Bd. of Regents*, 468 U.S. 85, 109 n.38 (1984) ("Market power is the ability to raise prices above those that would be charged in a competitive market."). MVSC suffered no injury in Virginia.

### E.    The Cost of Developing Electron Is Not Harm Caused by an Alleged Conspiracy

Reynolds did not conspire to block MVSC's access to data and there is no dispute that Reynolds did not block access to free manual reporting tools such as Dynamic Reporting; hence, whatever costs MVSC incurred developing Electron to augment Dynamic Reporting are not

---

13    Caseria Ex. 4, Klein Rpt. ¶ 117 (████████████████████████████████).

PUBLIC VERSION

███████████████████████ [14] Reynolds has neither blocked Dynamic Reporting nor Electron – these very facts disprove the alleged conspiracy and also make it impossible to establish any harm to MVSC caused by the alleged conspiracy. MSUF 14, 20.

MVSC's complaints (at 15) ███████████████████████████████████████ ███████████████████████████████████████████ Ho Ex. 461, Nemelka Decl. ¶ 11, are particularly odd. Reynolds cannot be held liable for faults in MVSC's own product that MVSC alone developed. Dynamic Reporting, Reynolds's free manual reporting tool, is sufficient for the needs of EVR providers **without** Electron. Resp. Pls SOAF 93, 116; MSUF 11, 21, 23. *See also JamSports*, 336 F. Supp. 2d at 839 (dismissing antitrust claim based on allegation that as a result of defendant's conduct, plaintiff was forced to use an alternative facility that was not as profitable or preferred).

### F.    It Is Undisputed That There Can Be No Harm to MVSC After October 2019

There is no basis ███████████████████████████████████████████ ███████████████████████████████████████████ Caseria Ex. 4, Klein Rpt. ¶¶ 16, 105, 107, 111. As made clear in Reynolds's opening brief (and elsewhere), MVSC settled with CDK in October 2019, resulting in the dismissal of both CDK and CVR from this case, along with MVSC's admittance into CDK's 3PA. Mem. 37; Dkt. 865. All claims against Reynolds are for a conspiracy; yet as of October 2019, there are no entities for Reynolds to conspire with.

---

[14] ███████████████████████████████████████████ ███████████████████████████████████████████ *See* Defs. Reply Ex. 636, Bulusu Tr. 239:7-240:12; *id.* Ex. 633, Armstrong Tr. 108:12-109:11. ██████████████ ███████████████████████████ Resp. to MSUF  18, 19. █████████████████████████

██████████████ Point-of-sale states only require EVR transactions to be initiated at the point of sale, *i.e.*, at some point during the long car-buying process; "point of sale" does not require and is not synonymous with "near real-time" or "real-time" data access. Resp. Pls. SOAF  93.

MVSC concedes the issue through its failure to respond. Mem. 37 (citing *Drug Mart Pharm. Corp. v. Am. Home Prods., Corp.*, 288 F. Supp. 2d 325 (E.D.N.Y. 2003) (court considered settlement agreement as evidence of conspirators' withdrawal from the alleged conspiracy, eliminating post-settlement damages); Caseria Ex. 163, *Brand Name Prescription Drug Antitrust Litig.*, MDL No. 997 (N.D. Ill. Sept. 14, 1998) (Ruling on Motion In Limine) (accord)).

## III.    MVSC Cannot Establish Damages

Allegations that Reynolds and CDK (co-owners of CVR) marketed CVR while disparaging MVSC, even if true, are not actionable under the antitrust laws as a matter of law. Mem. 16-19 (citing, *e.g.*, *Mercatus*, 641 F.3d at 851 (commercial speech disparaging a competitor's services is not an actionable antitrust claim); *Nat'l Black Expo*, 2007 WL 495307, at *10 & n.8 (joint venturer's efforts to promote the joint venture is lawful)). MVSC fails to respond to this argument or address any of Reynolds's authority; thereby conceding this point.

As a result, MVSC no longer has any admissible evidence of damages and its case must be dismissed. MVSC's damages expert Mr. Klein ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████ Caseria Ex. 6, Klein Tr. 45:5-46:13. *See also* Dkt. 1039 (*Daubert* Reply) at 2-3. His opinions must therefore be excluded. *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1163 (7th Cir. 1983) (rejecting damages model which assumed several types of unlawful conduct, only some of which were ultimately found to be unlawful). Without evidence of damages, MVSC's case must be dismissed. *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588, 593 (7th Cir. 1998).

## IV.    MVSC Cannot Establish Antitrust Injury

MVSC cannot establish antitrust injury. Even if it can establish harm to itself caused by an antitrust violation (it cannot), harm to a single competitor and its interest in maximizing profits is

PUBLIC VERSION

not harm to competition. *Chi. Studio Rental, Inc. v. Ill. Dep't of Commerce & Econ. Opportunity*, 940 F.3d 971, 978 (7th Cir. 2019) (St. Eve, J.).[15]

Bare incantations of ███████████████████████████ are insufficient. Fatally, MVSC does not claim that dealers paid higher EVR prices as a result of the conspiracy; █████ ████████████████████████████████████████████████████████████████ Furthermore, ████████████████████████████████████████████ ██████████████ make no sense. ████████████████████████████████████ ███████████████████████████████████████████████ Resp. MSUF 19. MVSC's own decision to invest in this innovation over others is not an antitrust injury.

Finally, MVSC does not dispute that antitrust injury cannot be based on unlawful data access. Its only rebuttal (at 35) that Reynolds has not shown that access "by all [hostile] integrators, at all times, was unlawful," is misinformed. The burden is on plaintiff to establish antitrust injury; it is not defendant's burden to disprove it in all circumstances. *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). *See also* concurrently-filed Reply to *Authenticom* MSJ.

## V.     MVSC's State Law Claims Also Fail

MVSC's state law claims fail for the same reasons as its antitrust claims. MVSC also does not dispute that its California UCL claim fails for the additional reason that MVSC is not entitled to restitution under the UCL. Mem. 38 (collecting cases).

## CONCLUSION

The Court should grant summary judgment for Reynolds on all of MVSC's claims.

---

[15]   MVSC does not distinguish *Chicago Studio* or other Seventh Circuit precedent cited by Reynolds that harm to it alone is not harm to competition. The lone case MVSC cites, *Southwest Suburban Bd. of Realtors, Inc. v. Beverly Area Planning Ass'n*, 830 F.2d 1374 (7th Cir. 1987), is inapposite. *Southwest* involved a class action by a number of real estate firms belonging to a realtors association for a conspiracy to drive them all out of the real estate market in one Chicago area, thereby reducing price competition in that market. *Id.* at 1376, 82.

PUBLIC VERSION

Dated: August 28, 2020            Respectfully submitted,


/s/ *Leo D. Caseria* _____

Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross A. MacDonald
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
mcohen@sheppardmullin.com
lcaseria@sheppardmullin.com

*Counsel for Defendant*
*The Reynolds and Reynolds Company*

## CERTIFICATE OF SERVICE

I, Leo D. Caseria, an attorney, hereby certify that on August 28, 2020, I caused a true and correct copy of the foregoing **DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ *Leo D. Caseria*
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
lcaseria@sheppardmullin.com