**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Authenticom, Inc. v. CDK Global, LLC et al.*, Case No. 1:18-cv-00868 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

**COUNTERCLAIMANT THE REYNOLDS AND REYNOLDS COMPANY'S REPLY IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | Authenticom's New "Authorization" Defense is Both Meritless and Irrelevant | 2 |
| | A. | Reynolds's License Agreements Prohibit Authenticom's Access | 2 |
| | B. | Authorization to Access the DMS is Irrelevant to DMCA Liability | 3 |
| II. | | Authenticom's Fair Use and Misuse Defenses Are Irrelevant and Meritless | 3 |
| III. | | Reynolds Has a Legal Right to Secure Its System | 5 |
| IV. | | Authenticom Is Liable Under the DMCA | 6 |
| | A. | Authenticom's Limitations Arguments Do Not Defeat Summary Judgment | 6 |
| | B. | Authenticom's Access Methods Were DMCA Circumvention | 7 |
| | C. | Reynolds's Security Measures Control Access to a Copyrighted Work | 8 |
| | D. | Reynolds's Security Measures "Effectively Control Access" | 8 |
| V. | | Authenticom Is Liable Under the WCCA | 9 |
| VI. | | Conclusion | 10 |

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Assessment Techs. of WI, LLC v. WIREdata, Inc.*,
  350 F.3d 640 (7th Cir. 2003) ............................................................................................4

*Authenticom, Inc. v. CDK Glob., LLC*,
  874 F.3d 1019 (7th Cir. 2017) ..........................................................................................5

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
  441 U.S. 1 (1979)..............................................................................................................5

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
  36 F.3d 1147 (1st Cir. 1994)............................................................................................6

*Frerck v. Pearson Educ., Inc.*,
  63 F. Supp. 3d 882 (N.D. Ill. 2014) .................................................................................4

*Hocking v. City of Dodgeville*,
  785 N.W.2d 398 (Wis. 2010)..........................................................................................10

*In re Indep. Serv. Organizations Antitrust Litig.*,
  203 F.3d 1322 (Fed. Cir. 2000)........................................................................................6

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982)............................................................................................................5

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  629 F.3d 928 (9th Cir. 2011) .......................................................................................3, 8

*Pacific Bell Telephone Co. v. Linkline Communications, Inc.*,
  555 U.S. 438 (2009)..........................................................................................................5

*Pantry, Inc. v. Stop-N-Go Foods, Inc.*,
  796 F. Supp. 1164 (S.D. Ind. 1992)..................................................................................4

*Putnam v. Time Warner Cable of Se. Wisconsin, Ltd. P'ship*,
  649 N.W.2d 626 (Wis. 2002)............................................................................................9

*Qad, Inc. v. ALN Associates, Inc.*,
  770 F. Supp. 1261 (N.D. Ill. 1991) ..................................................................................4

*State v. Scheurell*,
  1995 WL 131927 (Wis. Ct. App. 1995)............................................................................9

*United States v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ................................................................................................. 5

*Universal City Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001) ................................................................................................... 3

*Verizon Communications Inc. v. Law Offices of Curtis v. Trinko*,
   540 U.S. 398 (2004) ............................................................................................................... 5

**Statutes**

17 U.S.C. § 1201(a)(3)(A) ............................................................................................................ 3

17 U.S.C. § 1201(a)(3)(B) ............................................................................................................ 8

**RECORD CITATION FORMAT**

| Abbr. | Reference | Docket Number |
|---|---|---|
| Auth. Opp. | Plaintiff Authenticom, Inc.'s Opposition to Counterclaimant Reynolds and Reynolds Company's Motion for Partial Summary Judgment, July 28, 2020 | Dkt. 1081 |
| Auth. Resp. RSUF | Plaintiff Authenticom, Inc.'s Reponses to Counterclaimant's The Reynolds and Reynolds Company's Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment, July 28, 2020 | Dkt. 1082 |
| Auth. SOF | Plaintiff Authenticom, Inc.'s Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment on Defendants' Counterclaims, May 20, 2020 | Dkt. 977 |
| Auth. SOF Ex. | Exhibits to the Declaration of Daniel V. Dorris (*Authenticom*), May 20, 2020 | Dkt. 977-1 |
| CDK CC Opp. | CDK Global, LLC's Opposition to Authenticom, Inc.'s Motion for Summary Judgment, July 28, 2020 | Dkt. 1055 |
| Defs. Auth. Br. | Defendants' Memorandum in Support of Motion for Summary Judgment (*Authenticom*), May 20, 2020 | Dkt. 966 |
| Defs. Auth. Reply | Defendants' Reply Memorandum in Support of Motion for Summary Judgment (*Authenticom*), August 28, 2020 | Filed concurrently |
| Defs. JSOAF | Defendants CDK Global, LLC's and The Reynolds & Reynolds Company's Statement of Additional Material Facts In Opposition to MDL Plaintiffs' Motions for Summary Judgment on Defendants' Counterclaims, July 28, 2020 | Dkt. 1062 |
| Defs. JSUF | Defendants CDK Global, LLC and The Reynolds & Reynolds Company's Joint Statement of Common Undisputed Material Facts in Support of their Motion for Summary Judgment Exhibits, May 20, 2020 | Dkt. 974 |
| Defs. JSUF Ex. | Exhibits to the Declaration of Daniel T. Fenske, May 20, 2020 | Dkt. 975 |
| Defs. Reply Ex. | Exhibits to the Declaration of Daniel T. Fenske, August 28, 2020 | Filed concurrently |

| Abbr. | Reference | Docket Number |
|---|---|---|
| Defs. Resp. Auth. SOF | Response of Defendants CDK Global, LLC and The Reynolds and Reynolds Company to Plaintiff Authenticom, Inc.'s Statement of Undisputed Facts in Support of its Motion for Summary Judgment on Defendants' Counterclaims, July 28, 2020 | Dkt. 1058 |
| Mot. | Counterclaimant The Reynolds and Reynolds Company's Memorandum in Support of its Motion for Partial Summary Judgment, October 15, 2019 | Dkt. 785 |
| Pls. Resp. Defs. JSUF | MDL Plaintiffs' Responses to Defendants CDK Global, LLC's and the Reynolds and Reynolds Company's Joint Statement of Material Facts, July 28, 2020 | Dkt. 1070 |
| Resp. Pls. SOAF | Defendants CDK Global, LLC's and The Reynolds And Reynolds Company's Response to MDL Plaintiffs' Corrected Statement of Additional Material Facts in Opposition to Defendants' Motions for Summary Judgment, July 28, 2020 | Filed concurrently |
| RR CC Opp. | Counterplaintiff The Reynolds and Reynolds Company's Opposition to Counterdefendant Authenticom, Inc.'s Motion for Summary Judgment, July 28, 2020 | Dkt. 1061 |
| RSUF | The Reynolds and Reynolds Company's Statement of Undisputed Material Facts in Support of Its Motion to Partial Summary Judgment, October 15, 2019 | Dkt. 779 et seq. |
| RSUF Ex. | Exhibits to the Declaration of Brice Wilkinson, October 15, 2019 | Dkt. 779-1 |

The Reynolds DMS is not a public utility. Reynolds invested hundreds of millions of dollars and hundreds of thousands of hours of labor to program that creative, innovative computer system and software. Authenticom and dealerships did not. Accordingly, Congress has assigned Reynolds, not Authenticom or dealerships, the right to determine who can access and copy that software. Reynolds exercised that right by erecting technological barriers to unauthorized third-party access to the DMS. Authenticom responded with a years-long hacking campaign to circumvent those barriers in order to maintain its ability to exploit the Reynolds DMS for its own profit, all the while proclaiming a moral conviction that Reynolds had no right to set the terms on which its intellectual property was used. Federal and Wisconsin law are to the contrary: Authenticom's hostile access is unlawful.

The undisputed facts establish Authenticom's liability as a matter of law for (1) unlawful circumvention of Reynolds's CAPTCHA controls and Suspicious User ID measures in violation of the DMCA; and (2) civil violations of the Wisconsin Computer Crimes Act.

As to the DMCA, Authenticom admits that, within the limitations period, it (1) used ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to solve the CAPTCHA prompts that Reynolds used to block automated access to the Reynolds DMS, Auth. Resp. RSUF 29-30, 33-37 and (2) used ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Auth. Resp. RSUF 45-46. Authenticom similarly admits that it undertook a years-long campaign to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Auth. Resp. RSUF 38. Authenticom had no authorization from Reynolds to avoid, bypass, and impair those measures, and that is the only authorization that matters. Mot. 16-19; RR CC Opp. §§ I, II.A, II.F. Each of those admissions is

1

independently sufficient to establish DMCA liability as a matter of law, Mot. 7-16; RR CC Opp. §§ II.B.1 & B.2, II.C, II.D.1 & D.2.

As to the WCCA, Authenticom was not mistaken as to the facts, and its scienter defense ultimately rests on a mistake-of-law theory, which Wisconsin rejects. Authenticom's campaign of circumvention of Reynolds's computer system access controls is beyond dispute. Reynolds is entitled to partial summary judgment on Authenticom's liability under the DMCA and WCCA.

I.  **Authenticom's New "Authorization" Defense is Both Meritless and Irrelevant**

    A.  **Reynolds's License Agreements Prohibit Authenticom's Access**

From the outset of this litigation, Authenticom deliberately and unequivocally pleaded, argued, and stipulated that Reynolds's dealer license agreements barred Authenticom's access to the Reynolds DMS. Those admissions are binding. *See* RR CC Opp. § I.A.[1] Even absent those admissions, the license prohibits Authenticom's access for three independent reasons. First, the license restricts access to dealership employees; there is no provision for non-employee "agents." *See* RR CC Opp. § I.B & B.1. Second, the license bars Authenticom's methods, regardless of whether it is an "agent." *See* RR CC Opp. § I.B.2. Third, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ What is more, even if the license permitted access by "agents" (it does not), Authenticom is not an agent of the dealers as a matter of law. *See* RR CC Opp. § I.D.

---

[1] Authenticom's claim that it "did not move to dismiss Reynolds's DMCA claim because Reynolds had yet to produce the 'Defined Terms,'" Auth. Opp. 5 n.2, is false: Reynolds produced copies of that document in May 2018. *See* Defs. JSUF Ex. 234 (Defined Terms bearing bates number REYMDL00131387); Defs. Reply Ex. 627 (transmittal letter for production through REYMDL00134889). Authenticom's Motions to Dismiss were filed in late July 2018. *See* Dkts. 272, 278.

### B. Authorization to Access the DMS is Irrelevant to DMCA Liability

Even assuming for the sake of argument that Authenticom were "authorized" to access the DMS, which it is not, that would be insufficient to defend against a circumvention claim. Under the DMCA, the relevant authorization must be (1) by the copyright owner (2) *to circumvent the specific access control at issue*. *See* 17 U.S.C. § 1201(a)(3)(A); Mot. 16-18; RR CC Opp. §§ II.A, II.F. There is no "infringement nexus" requirement under the statute that would render authorization to access the work a defense, contrary to Authenticom's suggestion (at 6-7). RR CC Opp. §§ II.F. Even if dealer permission were sufficient to grant *access* rights (it is not), there is no evidence (and Authenticom cites none, Auth. Opp. 7) that dealers granted additional permission to circumvent Reynolds's access controls. And any such "authorization" would be ineffective: dealers are not the copyright owner, and the contract specifically prohibits ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* RR CC Opp. § I.B.2 & B.3. The Second and Ninth Circuits' decisions are directly on point, *see Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444 & n.15 (2d Cir. 2001); *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 953 n.16 (9th Cir. 2011), and Authenticom's attempt, Auth. Opp. 7 n.3, to rewrite this line of authority finds no support in those courts' decisions (and is irrelevant, because Reynolds *did* "specifically prohibit[]" Authenticom's access and use).

### II. Authenticom's Fair Use and Misuse Defenses Are Irrelevant and Meritless

Again, there is no "infringement nexus" element for DMCA Section 1201(a) claims. RR CC Opp. § II.F. Thus, defenses to copyright infringement like fair use and misuse are not defenses to DMCA Section 1201(a) claims. *Id.* Moreover, even if the Court adopts Authenticom's misguided argument, its defenses are meritless.[2] It is undisputed, Auth. Resp. RSUF 26, that

---

[2] Authenticom's procedural protest is similarly meritless: Reynolds did not have to refute affirmative defenses in its opening brief, particularly given Authenticom's shotgun pleading of 18 defenses. Dkt. 517

3

Authenticom engaged in rampant, profit-oriented, nontransformative, ▮▮▮▮ software piracy: this case is miles from fair use. *See* RR CC Opp. § II.G; *see also id.* § II.C.

The undisputed facts similarly defeat Authenticom's misuse theory. The issue is unlawful *system* access, not data access (the latter of which Authenticom can and does achieve lawfully via dealer-push methods). Indeed, it is undisputed that Reynolds affirmatively collaborated with Authenticom to publicize the (also undisputed) fact that Reynolds's license agreements permit dealers to send data to third-party integrators using Reynolds's built-in DMS reporting tools. Auth. Resp. RSUF 6-9, Pls. Resp. Defs. JSUF 5.[3] Authenticom is perfectly welcome to whatever "dealer data" dealers give it through that noninfringing process. What Authenticom cannot do is copy Reynolds's proprietary software and circumvent system access-control measures to get that data. Those are precisely and narrowly the rights Congress granted to Reynolds, so the misuse doctrine has no bearing. The *dictum* in *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646-47 (7th Cir. 2003), is thus irrelevant. That discussion addressed a hypothetical where a copyright owner intentionally made it impossible to extract data from the program and prohibited data-sharing under its license agreement; Reynolds freely grants that ability here. Authenticom's reliance on *Qad. Inc. v. ALN Associates, Inc.*, 770 F. Supp. 1261, 1267 (N.D. Ill. 1991), is similarly misplaced. There, the "misuse" was the bad-faith assertion of copyright in code the plaintiff copied from a third party, coupled with serial misrepresentations to the court. *Id.* at 1267-70. That is not this case.

---

at 63-65; *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 886 (N.D. Ill. 2014) (collecting cases); *Pantry, Inc. v. Stop-N-Go Foods, Inc.*, 796 F. Supp. 1164, 1167 (S.D. Ind. 1992). In any event, Rule 56 allows summary judgment as to a "part" of a claim, so even if the court determines that infringement defenses can defeat a DMCA claim (they cannot) and that there are fact disputes on the defenses (there are not), granting partial summary judgment on the liability elements that Reynolds has established would usefully narrow the issues for trial.

[3] On top of that, it is undisputed that Authenticom's Reynolds business, the ▮▮▮▮ ▮▮▮▮. Pls. Resp. Defs. JSUF 37-39, 41.

4

### III. Reynolds Has a Legal Right to Secure Its System

Authenticom's illegality defense has it backwards: Authenticom cannot bring antitrust claims based on harm to its illegal business. Defs. Auth. Br. § III; Defs. Auth. Reply § II. Setting aside that all of Authenticom's antitrust claims fail as a matter of law, *see generally* Defs. Auth. Br. & Reply, Reynolds's access-control measures are not actionable as antitrust violations. Those measures do nothing more than protect against unauthorized access to and copying of the Reynolds software: they are exercises of the right to exclude that inheres in copyright, which Congress intentionally and expressly reinforced through the DMCA. RR CC Opp. § II.F. Further, Reynolds had ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Defs. JSUF 86-87; they have no connection to the alleged September 2013 conspiracy. The Seventh Circuit has already held that these measures are lawful: ***even assuming they were imposed pursuant to a conspiracy***, the court held that Reynolds could not be compelled to remove them because they were lawful refusals to deal under *Trinko* and *Linkline*.[4] *Authenticom, Inc. v. CDK Glob., LLC*, 874 F.3d 1019, 1026 (7th Cir. 2017). Authenticom's reliance on *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982), Auth. Opp. 9-10, is wholly misplaced. That decision stands for the unremarkable proposition that a plaintiff cannot enforce a contract that is illegal under the antitrust laws. This Court already held that Reynolds's DMS-contract prohibition on third-party access is lawful. Dkt. 176 at 36, 40-43.[5] Finally, Authenticom's last-ditch hypothetical that there

---

[4] *Verizon Communications Inc. v. Law Offices of Curtis v. Trinko*, 540 U.S. 398 (2004); *Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 555 U.S. 438 (2009).

[5] Authenticom's stringcited cases, Auth. Opp. 10 n.6, fare no better. They similarly stand for the unremarkable propositions that a copyright or patent in the vicinity does not confer a privilege to price-fix, *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 19 (1979); impose anticompetitive terms unrelated to copyright protection in license agreements to monopolize a separate market, *United States v. Microsoft Corp.*, 253 F.3d 34, 63 (D.C. Cir. 2001); refuse a license in *Aspen Skiing*-type scenarios that overcome the strong presumption that excluding others from a copyrighted work is a valid business

is "a factual dispute" as to whether Reynolds "would have been able to maintain . . . its blocking measures," Auth. Opp. 11, is legally irrelevant and false, *see* Defs. JSUF 88; none of the evidence Authenticom points to supports the notion that Reynolds considered removing those measures.[6]

## IV.     Authenticom Is Liable Under the DMCA

The remainder of Authenticom's DMCA arguments reprise its May 20, 2020 defense MSJ (Dkt. 978); they fail here for the same reasons explained in Reynolds's Opposition (Dkt. 1061).

### A.     Authenticom's Limitations Arguments Do Not Defeat Summary Judgment

Authenticom's proposed limitations date of June 29, 2015 is incorrect because Reynolds's compulsory counterclaims relate back to Authenticom's May 2017 complaint. RR CC Opp. § III. It is undisputed that Authenticom's circumvention extended into any possible limitations period as to many circumvention methods (including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

In any event, Reynolds has moved only for partial summary judgment on liability, not on the amount of damages (which is the only issue limitations could affect). Sorting out the number of violations within the limitations period is a task best reserved for trial. Authenticom's limitations argument as to its ▮▮▮▮▮▮▮▮ AutoCaptcha hack is particularly misleading. Authenticom's only evidence that "Auto CAPTCHA was not used past May 1, 2014," Auth. Opp. 12, is a textbook sham affidavit, *see* RR CC Opp. § II.D.1 at 36 n.29, and its contention that the February 2014 email Reynolds cites "indicates Authenticom had stopped using Auto CAPTCHA," Auth. Opp.

---

justification, *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1187 (1st Cir. 1994); or impose unlawful ties, *In re Indep. Serv. Organizations Antitrust Litig.*, 203 F.3d 1322, 1327 (Fed. Cir. 2000) ("In the absence of any indication of illegal tying, fraud in the Patent and Trademark Office, or sham litigation, the patent holder may enforce the statutory right to exclude . . . free from liability under the antitrust laws."). Those have nothing to do with this case.

[6] Reynolds's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6

12, is simply false, *see* RSUF Ex. 46. Similarly, there is evidence that Authenticom continued using its MenuWalk script in 2015 and 2016. RSUF 46. The Court should hold that these methods violated the DMCA and let the jury decide whether and when Authenticom ceased using them.

    **B.**  **Authenticom's Access Methods Were DMCA Circumvention**

  The statutory text and every case to consider the issue make clear that the (here, undisputed) use of ▇▇▇▇▇▇▇▇▇▇ to respond to CAPTCHA prompts is DMCA circumvention as a matter of law. Mot. § V.A.2.a; RR CC Opp. §§ II.D.1 & D.2; *see also* Auth. Resp. RSUF 29-30, 33-35, 37 (admitting use of these methods). Authenticom's characterization of its methods as "human-driven" is meritless and misleading, as these methods are largely software-driven. Resp. Auth. SOF 91-93, 95. It is also irrelevant; use of ▇▇▇▇▇ is circumvention as a matter of law, ▇▇▇▇▇▇▇▇▇▇. RR CC Opp. § II.D.1. Further, the use of a human somewhere in the response sequence is not a defense to the separate circumvention violation each time Authenticom ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.*; Mot. 14-16; Auth. Resp. RSUF 45-46.

  Similarly, courts hold that evasion of automated-access control measures like Reynolds's Suspicious User ID Monitoring is DMCA circumvention. Mot. § V.A.2.b; RR CC Opp. § II.D.2. Authenticom and Reynolds engaged in a multi-year cat-and-mouse game, with Authenticom deploying numerous tricks to ***avoid*** (the DMCA touchstone) detection. *See* RSUF 38-48; Auth. Resp. RSUF 38 ▇▇▇▇▇▇▇▇▇▇ And calling them "tricks" is not overblown rhetoric, *contra* Auth. Opp. 15 & n.8, but ▇▇▇▇▇▇▇▇▇▇ Authenticom's only real counterargument—that many

7

of its automated profiles were *eventually* caught and disabled, requiring it to get new profiles, Auth. Opp. 14-15—is irrelevant. Its ability to access the system before eventually being caught and locked out is *res ipsa* evidence of circumvention.

### C. Reynolds's Security Measures Control Access to a Copyrighted Work

As set out in Reynolds's opening Motion, both the registered PC application software and the server-side DMS software are Reynolds's copyrighted intellectual property, and CAPTCHA and Suspicious User ID control access to those works. Mot. § V.A.1 & A.2. That copyright protection extends to the PC and server code and the visual displays generated by the PC code, RR CC Opp. § II.C.1, C.3, and Reynolds's security measures control access to those copyrighted aspects of the DMS, Mot. 8-9; RR CC Opp. §§ II.C. Authenticom's argument that it can "access" the PC applications' executable code is both incorrect (as Authenticom's own evidence establishes) and irrelevant to the merits. RR CC Opp. §§ II.C.2.

### D. Reynolds's Security Measures "Effectively Control Access"

The DMCA requires only that a technological measure be (1) put in place by the copyright owner and (2) require the application of information, or a process or treatment, to gain access to the work. 17 U.S.C. § 1201(a)(3)(B); *MDY*, 629 F.3d at 954. Reynolds's CAPTCHA controls and Suspicious User ID measures satisfy that statutory definition as a matter of law. Mot. 9-14; RR CC Opp. § II.B. This Court's prior holding as to CDK's similar CAPTCHAs, Dkt. 506 at 17-18, is exactly in line with the statutory text and the overwhelming weight of authority. Mot. 9-10; RR CC Opp. § II.B.1. So too the Suspicious User ID measures. Mot. 12-14; RR CC Opp. § II.B.2. As explained in prior briefing, Authenticom's attempt to escape liability through an invented "authorization-confirmation" requirement, Auth. Opp. 17, is meritless. RR CC Opp. § II.B.1-2. Authenticom's resort to that last refuge—a purported "battle of the experts" on whether Reynolds's "measures qualify as security access controls as understood by computer security experts," Auth.

Opp. 17—is a nonstarter. Authenticom's COO admitted ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Defs. JSOAF 46. Nor is there any dispute as to what the measures *do*—the dispute goes to the legal effect of those facts. Expert testimony has no bearing on that, and Authenticom's *ipse dixit* expert testimony is inadmissible. *See* Dkts. 886, 1032.

## V. Authenticom Is Liable Under the WCCA

Authorization *from Reynolds*—the computer system and programs' owner—is the relevant criterion under the WCCA, and this Court has already correctly held that the revocation of any authorization is legally effective. Mot. § V.B.1; Dkt. 506 at 14; CDK CC Opp. § I.C. Dealers had no right to authorize Authenticom to access the Reynolds DMS (as set out above), and even if they did, Reynolds revoked any dealer-granted authorization in its 2015 cease-and-desist. RSUF Ex. 91, 90. That ends the inquiry. Whether Authenticom found that letter's reasoning satisfactory or persuasive, Auth. Opp. 20, is of no moment: Authenticom was told in no uncertain terms to stop.

Authenticom's scienter defense borders on frivolous. Its primary case, *State v. Scheurell*, 1995 WL 131927, (Wis. Ct. App. 1995), **rejected** the defendant's reliance on mistake of fact because, as in this case, the defendant's real argument was mistake of law (a categorically invalid defense in Wisconsin). *Id.* at *2-3; *see also Putnam v. Time Warner Cable of Se. Wisconsin, Ltd. P'ship*, 649 N.W.2d 626, 632 & n.4 (Wis. 2002). Authenticom's **actual** argument is that it misapprehended the legal effect of dealers saying yes despite Reynolds saying no. Auth. Opp. 18-20. That is a mistake-of-law theory and no defense at all.

Authenticom's argument fails even if (improperly) evaluated as a mistake-of-fact theory. Authenticom's claims that it thought it was authorized ignore the elephant in the room: Authenticom filed a federal antitrust lawsuit premised on the opposite theory from the one it now professes to have held all along. RR CC Opp. § I.A. And the evidence Authenticom relies on does not remotely suggest a subjective belief that Reynolds had in fact authorized Authenticom's

9

access (and the evidence that Authenticom subjectively knew Reynolds had not is overwhelming; no rational person could believe otherwise, Resp. Auth. SOF 28; RSUF 49-56). Instead, that testimony reflects a philosophical conviction that dealer authorization was a sufficient basis to *disregard* Reynolds's denial of authorization. Like many hackers, Authenticom believed that information wants to be free. The Wisconsin legislature disagrees.

Nor do "industry practice" or Authenticom's dealer contracts, Auth. Opp. 19, alter that conclusion. Reynolds's refusal to authorize third-party DMS access has been common knowledge for over a decade. Resp. Auth. SOF 28; RSUF 49. CDK's employees' subjective views of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Resp. Auth. SOF 51-52. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, has no bearing on Authenticom's knowingly *unauthorized* access in other instances. Authenticom's reliance on its dealer contracts (at 19) is misplaced: they conclusively show that Authenticom is not an "agent," CDK CC Opp. §§ I.B.1 & B.2.a. More important, contractual representations operate only *as between the parties*; as Authenticom's case puts it, they "amount[] to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." *Hocking v. City of Dodgeville*, 785 N.W.2d 398, 405 (Wis. 2010). Those representations do not affect Reynolds's rights or Authenticom's actual knowledge.

## VI. Conclusion

For the reasons stated, the Court should grant summary judgment that Authenticom is liable for violations of DMCA Section 1201(a)(1)(A) and the Wisconsin Computer Crimes Act.

**DATE:** August 28, 2020 Respectfully submitted,

/s/ *Aundrea K. Gulley*
Aundrea K. Gulley
Brian T. Ross
Brice A. Wilkinson
Ross M. MacDonald
Justin D. Patrick
Michael R. Davis
GIBBS & BRUNS LLP
1100 Louisiana Street
Suite 5300
Houston, TX 77002
(713) 751-5258
agulley@gibbsbruns.com
bross@gibbsbruns.com
bwilkinson@gibbsbruns.com
rmacdonald@gibbsbruns.com
jpatrick@gibbsbruns.com
mdavis@gibbsbruns.com

Michael P.A. Cohen
Leo D. Caseria
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue NW, Suite 100
Washington, DC 20006
(202) 747-1900
lcaseria@sheppardmullin.com

*Counsel for Defendant The Reynolds and Reynolds Company*

**CERTIFICATE OF SERVICE**

I, Justin D. Patrick, an attorney, hereby certify that on August 28, 2020, I caused a true and correct copy of the public, redacted version of the foregoing **COUNTERCLAIMANT THE REYNOLDS AND REYNOLDS COMPANY's REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** to be served electronically on all counsel of record by operation of the CM/ECF system, and a true and correct copy of the sealed, unredacted version of same to be served electronically on all counsel of record at the following email address:

SERVICE-EXTERNAL-DMS-MDL@lists.kellogghansen.com

*/s/ Justin D. Patrick*
Justin D. Patrick