**PUBLIC VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| *Loop, LLC, d/b/a AutoLoop v. CDK Global, LLC,* Case No. 18-cv-2521 (N.D. Ill.) | Magistrate Judge Jeffrey T. Gilbert |

## CDK GLOBAL, LLC'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................. 1

I. CDK Is Entitled To Summary Judgment On AutoLoop's Damages Claims. ................... 3

    A. AutoLoop's Damages Model Does Not Account For CDK's And Reynolds's Lawful Ability To Increase Prices In The But-For World................. 3

    B. CDK Is Entitled To Partial Summary Judgment On Several Of AutoLoop's Specific Damages Claims, Which Are Improperly Inflated.............. 9

II. AutoLoop Cannot Establish Liability, As Explained More Fully In The *Authenticom* Briefing. ........................................................................................................ 11

CONCLUSION .................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Authenticom, Inc. v. CDK Global, LLC*,
    874 F.3d 1019 (7th Cir. 2017) ........................................................................................12

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
    152 F.3d 588 (7th Cir. 1998) ..................................................................................... *passim*

*In re Brand Names Prescription Drugs Antitrust Litig.*,
    186 F.3d 781 (7th Cir. 1999) .........................................................................................5, 8

*Harper v. Vigilant Ins. Co.*,
    433 F.3d 521 (7th Cir. 2005) ............................................................................................11

*Kleen Prods. LLC v. Georgia-Pacific LLC*,
    910 F.3d 927 (7th Cir. 2018) ............................................................................................7

*MCI Commc'ns v. Am. Tel. & Tel. Co.*,
    708 F.2d 1081 (7th Cir. 1983) ....................................................................................8, 10

*Schiller & Schmidt, Inc. v. Nordisco*,
    969 F.2d 410 (7th Cir. 1992) .........................................................................................5, 6

*In re Steel Antitrust Litig.*,
    2015 WL 5304629 (N.D. Ill. Sept. 9, 2015) ....................................................................8

*In re Text Messaging Antitrust Litig.*,
    782 F.3d 867 (7th Cir. 2015) ............................................................................................4

*Williamson Oil Co. v. Philip Morris USA*,
    346 F.3d 1287 (11th Cir. 2003) ........................................................................................5

# RECORD CITATION FORMAT

| Abbr. | Reference | Docket Number |
|---|---|---|
| Defs. *Authenticom* SJ Br. | Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Memorandum in Support of Motion for Summary Judgment | Dkt. 966 |
| Mot. | Memorandum in Support of Defendant CDK Global, LLC's Motion for Summary Judgment | Dkt. 969 |
| Defs. JSUF | Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Joint Statement of Common Undisputed Material Facts in Support of their Motions for Summary Judgment | Dkt. 974 |
| Defs. JSUF Ex. | Exhibits to the Declaration of Daniel T. Fenske, May 20, 2020 | Dkt. 975 |
| Opp. | Plaintiff AutoLoop's Opposition to Defendant CDK Global, LLC's Motion for Summary Judgment | Dkt. 1075 |
| Resp. Pls. JSOAF | Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Response To MDL Plaintiffs' Corrected Statement Of Additional Material Facts in Opposition to Defendants' Motions for Summary Judgment | Filed concurrently |
| Defs. *Authenticom* SJ Reply | Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Reply Memorandum in Support of Motion for Summary Judgment (Authenticom) | Filed concurrently |

## INTRODUCTION

AutoLoop relies entirely on its expert, Dr. Mark Israel, to prove damages. His model counts as damages essentially every cent of every price increase for CDK or Reynolds certified integration since September 2013. The central question is whether any rational jury could credit the conclusion that, for six-plus years, the two largest DMS providers would not have raised their prices at all. If rational jurors would not credit that conclusion, then CDK is entitled to summary judgment on all of AutoLoop's damages claims. That is because settled antitrust law requires a plaintiff seeking overcharge damages to reliably estimate what the defendant's prices would have been in a "but for" world where the allegedly unlawful conduct did not occur. Here, a few undisputed facts—drawn from Dr. Israel's own opinions—show that no reasonable jury could conclude that Defendants would not have lawfully raised their prices one iota since September 2013.

Specifically, as to the conspiracy claim, it is undisputed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defs. JSUF Ex. 72, Israel Rpt. ¶ 211 (CDK); *id.* ¶ 210 (Reynolds). It is further undisputed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Opp. 1-2, 10 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



The same conclusion follows as to AutoLoop's unilateral (*i.e.*, non-conspiracy) claims, which are premised on allegedly unlawful exclusive dealing provisions. In the but-for world applicable to that claim, a damages model must assume that the exclusive dealing provisions do not exist. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1

██████████████████████████████████████████ Defs. JSUF Ex. 72, Israel Rpt. ¶ 211. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████ And a unilateral decision not to permit hostile integration would be lawful, as this Court has held. Dkt. 504 at 27-28. Accordingly, in the but-for world for AutoLoop's unilateral claims, CDK would have had the ability and incentive to take steps to stop hostile integration and thereby raise integration prices.

Yet notwithstanding that undisputed evidence that CDK and Reynolds had a substantial ability to unilaterally and lawfully raise prices, Dr. Israel provides the jury no way to estimate what those but-for prices, and thus damages, would be. ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

AutoLoop's damages model thus was *designed* to ignore CDK's and Reynolds's ability to unilaterally raise their prices in the but-for world. And this error cannot be fixed by jury findings at trial, for AutoLoop's model gives jurors no way to estimate what prices would have been in the but-for world, and thus would require the jury to guess at damages. These errors warrant summary judgment, as the Seventh Circuit held in *Blue Cross & Blue Shield United of Wisconsin v.*

*Marshfield Clinic*, 152 F.3d 588 (7th Cir. 1998), and similar cases. *See infra* § I.A. CDK is also entitled to summary judgment for other reasons. *See infra* §§ I.B, II.

I. **CDK Is Entitled To Summary Judgment On AutoLoop's Damages Claims.**

Between CDK's opening brief and Defendants' *Daubert* challenge to Dr. Israel's opinions, CDK has now addressed the flaws in Dr. Israel's damages and liability opinions on three occasions. *See* Mot. 5-12; Dkt. 878; Dkt. 1028. This brief incorporates that prior discussion here and responds briefly to the points AutoLoop offers in opposition to CDK's motion for summary judgment.

A. **AutoLoop's Damages Model Does Not Account For CDK's And Reynolds's Lawful Ability To Increase Prices In The But-For World.**

**1.** Under AutoLoop's theory of the case— 

*See supra* pp. 1-2; Mot. 7-10; *see also* Defs. JSUF Ex. 72, Israel Rpt. ¶ 211 ("▓▓▓"); *id.* ¶¶ 209-10 (▓▓▓s). Further, Dr. Israel opined that ▓▓▓ Defs. JSUF Ex. 322, Israel Tr. 274; *see also id.* 274-275 (▓▓▓) The takeaway is plain: according to AutoLoop's own damages expert, ▓▓▓

It is telling just what AutoLoop does *not* say in its response. It does not dispute that, under this Court's prior holding, CDK and Reynolds could lawfully refuse to deal with hostile integrators if done unilaterally. Mot. 7-10; *see also* Dkt. 504 at 27-28. Nor does AutoLoop dispute that all of

3

its damages flow from that refusal. *See* Mot. 3-4 (discussing Plaintiffs' ███████ theory). Finally, AutoLoop never explains why if Defendants could raise their prices unilaterally, they would not have done so in *any* material amount in the but-for world. Assuming that Defendants would not act to maximize their profits, after all, conflicts with fundamental antitrust principles. *E.g.*, *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 877 (7th Cir. 2015) ("a rational profit-maximizing seller" seeks to maximize "its total revenues relative to its total costs").

**2.** CDK pointed to the portions of Dr. Israel's report that make clear his opinion that ███████████████████████████████████████████████████████████████. Mot. 7-8. AutoLoop never addresses these conclusions. Instead, it runs from Dr. Israel, claiming that he ███████████████████████████████████████████

███████████████████████████ Opp. 10-11. AutoLoop is in denial. Dr. Israel did just that— explicitly, by stating in clear language that ███████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

But even if the Court were to credit AutoLoop's argument that Dr. Israel ███████

████████████████████████████████████████████████████████████████

███████████████████████████████. He could not have been clearer on this point, summing up his ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████" Defs. JSUF Ex. 72, Israel Rpt. ¶ 211.

AutoLoop claims that Dr. Israel's "point" about ████████████ was that ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

4

████ Opp. 11. That is a damning admission. As CDK's *Daubert* reply shows, Dkt. 1028 at 9, an expert who conflates conspiratorial and unilateral conduct—and assumes that any unilateral conduct would be illegal when it plainly would not—cannot reliably estimate damages. *Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (affirming exclusion of damages expert who "defined 'collusion' to include conscious parallelism," "did not differentiate between legal and illegal pricing behavior, and instead simply grouped both of these phenomena under the umbrella of illegal, collusive" conduct). That is an especially significant error here, because no reasonable jury could determine that unilaterally securing the DMS was illegal under this Court's prior rulings. *See* Dkt. 969 at 7-10; Dkt 504 at 27-28. In other words, AutoLoop's statement is a confession that Dr. Israel's model did not even try to answer the right question—████████████████████████████████████████████████.

**3.** AutoLoop fails to meaningfully address the binding authority making this error in Dr. Israel's model clear. That authority establishes that plaintiffs "have to separate the price effect of collusion from the price effect of the defendants' lawful market power." *In re Brand Names Prescription Drugs Antitrust Litig.*, 186 F.3d 781, 786 (7th Cir. 1999) (citing *Marshfield Clinic*, 152 F.3d at 593-94); *see also Schiller & Schmidt, Inc. v. Nordisco*, 969 F.2d 410, 415-16 (7th Cir. 1992) ("The expert should have tried to separate the damages that resulted from the lawful entry of a powerful competitor" from harm from the allegedly unlawful conduct). This obligation flows from the requirement that an antitrust plaintiff fashion a damages model that takes account of what price effects would have been in the "but for" world—the world without the allegedly unlawful conduct (here, the supposed "openness" conspiracy or exclusive dealing provisions). *See* Mot. 6.

5

Thus, plaintiffs must "take[] into account" any "nonconspiritorial factors" that influence prices "to make a responsible estimate of the prices that [the plaintiff] would have paid had it not been for the conspiracy." *Marshfield Clinic*, 152 F.3d at 593.

AutoLoop ignores *Brand Name* and *Nordisco*, and its discussion of *Marshfield Clinic* is cursory. Opp. 11. There, the Seventh Circuit affirmed a grant of summary judgment based on the same error AutoLoop commits here—ignoring a defendant's alleged market power (and other lawful factors affecting prices) and counting as damages all price increases above the baseline. *Marshfield Clinic*, 152 F.3d at 593-94. AutoLoop selectively quotes the opinion to claim that Dr. Israel needed only to "compare [the] prices" that CDK and Reynolds charged Plaintiffs "before and during the conspiracy." Opp. 11 (quoting *Marshfield Clinic*, 152 F.3d at 592). But AutoLoop ignores that the *very same sentence* admonishes that such a price comparison must "correct[] by various statistical techniques for any nonconspiratorial factors that might have caused the prices that are being compared to be different from each other." *Marshfield Clinic*, 152 F.3d at 592.



One of the ▇▇▇ Dr. Israel had to account for was the ▇▇▇ ▇▇▇ ▇▇▇ *See* Dkt. 1028 at 9.[1] Further, it is undisputed that ▇▇▇ ▇▇▇, Defs. JSUF Ex. 322, Israel Tr. 159-60, and that ▇▇▇ ▇▇▇, Defs. JSUF Ex. 72, Israel Rpt., fig. 7. Thus, if as Dr. Israel finds, ▇▇▇

---

[1] CDK has already addressed, Dkt. 1028 at 9, AutoLoop's argument that it "makes no economic sense" for CDK's price increases to be attributable to its "unilateral market power" because any market power would have been fully accounted for in CDK's pre-September 2013 prices. Opp. 10. Were that the case, unilateral damages post-September 2013 would necessarily be zero. ▇▇▇ ▇▇▇ *See* Defs. JSUF Ex. 72, Israel Rpt. ¶¶ 205-11; *see also* Defs. JSUF Ex. 322, Israel Tr. 274.

████████████████████████████████████████████████████████████████

████████████ That is perfectly lawful in the absence of express collusion, which a damages model must assume did not occur in the but-for world. *Kleen Prods. LLC v. Georgia-Pacific LLC*, 910 F.3d 927, 935 (7th Cir. 2018) (it is not illegal if a "firm in a tight oligopoly might think that it will reap greater profits if it imitates, rather than undermines, its peers").[2]

Dr. Israel had to at least *consider* the possibility of that kind of lawful follow-the-leader behavior. He did not. Rather, he determined that ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████. That is just what *Marshfield Clinic* condemns.

AutoLoop's claim that ████████████████████████████████████████

████████████████████████████████████████ supports CDK's position. Opp. 8.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Defs. JSUF Ex. 72, Israel Rpt. ¶¶ 199, 209-11. And again, as this Court held in ruling on the motion to dismiss, a *unilateral* refusal to permit hostile integration is not unlawful. *See supra* p. 3.

**4.** AutoLoop's remaining arguments are meritless. The error is not, as AutoLoop would have it (at 5-7), based on the type of model Dr. Israel used or the precision with which that model estimates damages. The *Marshfield Clinic* expert used a well-recognized methodology, too. 152 F.3d at 592-93. The error here lies not with the theoretical merits of a difference-in-differences model, but with Dr. Israel's implementation of it.

---

[2] This renders irrelevant AutoLoop's theory that "had product improvements enhanced the value of 3PA and RCI . . . there would have been no need for CDK and Reynolds to block data integrators to raise their prices." Opp. 9. That statement merely assumes what AutoLoop's damages model needed (but failed) to prove: that a *conspiracy* to block hostile integrators *caused* an increase in rates. AutoLoop's damages expert disproves that conclusion by showing that the same result would have obtained regardless of a conspiracy through the exercise of whatever market power CDK and Reynolds had in the but-for world.

7

Similarly, no one disputes that "a perfect benchmark is not required." Opp. 7. But a damages model must be *capable* of distinguishing, even if only roughly, between damages attributable to unlawful conduct and damages caused by the lawful ability to increase prices. A model like Dr. Israel's, which "does not even attempt to identify and isolate 'damages' that are not the certain result of the wrong," "cannot be used to establish" damages in litigation. *In re Steel Antitrust Litig.*, 2015 WL 5304629, at *10 (N.D. Ill. Sept. 9, 2015).

AutoLoop's discourse about the robustness of its benchmark (at 7-8) is irrelevant. *See* Mot. 4, 7-10; Dkt. 1028 at 8. In fact, Dr. Israel's benchmark was structurally *incapable* of accounting for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 1028 at 8. Put another way, all the robustness checks purport to show is that Dr. Israel consistently measured the wrong thing.

AutoLoop tries to invert the burden of proof, suggesting that CDK must marshal evidence that it had the ability to increase its price through "increases in product quality." Opp. 8. This misses the point: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defs. JSUF Ex. 72, Israel Rpt. ¶¶ 209-11. If CDK and Reynolds had such power, they had the ability to raise prices in the but-for world *regardless* of whether those price increases correspond to improvements in product quality. Mot. 6.

Further, it is *AutoLoop's* obligation, not CDK's, to account for these non-conspiratorial factors in its damages model. *E.g.*, *MCI Commc'ns v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1168 (7th Cir. 1983) (holding that antitrust plaintiff "must be able to rationally separate" the effects of lawful and unlawful factors); *accord Brand Name*, 186 F.3d at 786; *Marshfield Clinic*, 152 F.3d at 593-94. And AutoLoop ignores the undisputed evidence showing i▮▮▮▮▮▮▮▮▮

8

███████████████ *See* Defs. JSUF 26, 61, 99; Defs. JSUF Ex. 71, Bresnahan Rpt. ¶¶ 88-89 (discussing Reynolds). As AutoLoop itself recognized, ████████████████████ ████████████. Defs. JSUF 26. And even if in the but-for world, vendors would not have valued certified integration at the same prices that CDK or Reynolds charged in the real-world after September 2013, that would not show that CDK and Reynolds were unable to increase prices at all. AutoLoop would still need to justify the assumption that CDK and Reynolds would not increase their prices by *any amount* for *years*, notwithstanding their admitted ability to do so lawfully. That makes no sense.

\* \* \*

AutoLoop's error is much more fundamental than the trivial issues it spends much of its response brief discussing. AutoLoop has no basis to assert, contrary to its own expert opinion, that CDK and Reynolds would not have raised prices in the but-for-world with the (lawful) unilateral market power that AutoLoop's expert found that each had. That conclusion makes no sense and, more importantly, contradicts settled Seventh Circuit law that such damages models are "worthless." *Marshfield Clinic*, 152 F. 3d at 593.

    **B.**    **CDK Is Entitled To Partial Summary Judgment On Several Of AutoLoop's Specific Damages Claims, Which Are Improperly Inflated.**

In addition to summary judgment as to the ████████ in Cox damages, which AutoLoop concedes (at 15), two other defects warrant reducing claimed damages as a matter of law.

**1.** CDK is entitled to summary judgment on any damages associated with Reynolds because Dr. Israel failed to properly calculate Reynolds's prices as a matter of law. ████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Mot. 13-14. ████████████████████████

9

██████ Mot. 14-15; Dkt. 878 at 16-19. ██████ Dkt. 1028 at 7. CDK refers the Court to prior briefing on this issue. Mot. 13-14; Dkt. 878 at 16-19; Dkt. 1028 at 6-8.

    **2.** AutoLoop's defense of Dr. Israel's ███████ damages is meritless. Opp. 14. That analysis irrationally assumed that ████████ Mot. 14-15. AutoLoop's response that this assumption was ████████ Defs. JSUF 26. ██████ Mot. 15. ██████ Opp. 14. Even if true, however, AutoLoop identifies no basis for ██████. More to the point, CDK's opening brief cited evidence—including from AutoLoop itself—showing that ██████ *See* Mot. 15-16. At the very least, that evidence shows that Dr. Israel should have analyzed the issue, rather than assuming it away.

    This is not a matter of allowing latitude for conservative but inexact estimates of damages. Opp. 14. A damages model must measure the plaintiff's *harm*, which includes taking account not only of costs but also benefits. *E.g.*, *Marshfield Clinic*, 152 F.3d at 593; *MCI*, 708 F.2d at 1168.

By focusing solely on costs, AutoLoop's damages model—without any analysis from Dr. Israel—simply assumes that vendors received nothing in return when they moved to certified integration. There is no basis for that assumption.

## II. AutoLoop Cannot Establish Liability, As Explained More Fully In The *Authenticom* Briefing.

AutoLoop concedes that its ability to withstand summary judgment on all its claims on liability grounds rises or falls with its co-plaintiff, Authenticom. Opp. 15. Defendants' *Authenticom* briefs show that no Plaintiff can establish their conspiracy claims, antitrust injury on any claim, unlawful exclusive dealing, or unlawful monopolization. Defs. *Authenticom* SJ Br. §§ I-IV; Defs. *Authenticom* SJ Reply §§ I-III (filed concurrently).

AutoLoop makes one unique liability argument here. CDK's opening brief showed that AutoLoop's claim that the 2015 Agreements amounted to a "market division" agreement fails. AutoLoop abandoned the claim by not disclosing any expert opinion on that claim as distinct from plaintiff's alleged conspiracy on "openness." And this Court dismissed the same market-division claim as a matter of law in *Cox*. Mot. 17-18.

AutoLoop does not respond to CDK's contention that AutoLoop abandoned the market division claim. It has thus forfeited the point. *See Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005) (party forfeits issue in district court that it fails to address in its summary judgment opposition). And while AutoLoop contends that the Court can ignore its prior dismissal of the same claim in *Cox*, AutoLoop never explains what the Court got wrong in that decision.

AutoLoop finally claims that the discovery record supposedly shows a ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ citing a single statement of fact. Opp. 15. Merely glancing at that "fact" shows this contention is wholly unsupported. *See* Defs. Resp. Pls. JSOAF 54. There is simply no evidence

that ███████████████████████████████████████████████████" Opp. 15, █

███████████████████████████████████. Defs. Resp. Pls. JSOAF 54.

More to the point, AutoLoop pleaded that the *2015 Agreements themselves* were a market-division agreement, Am. Compl. ¶¶ 96-101, and the single factual statement AutoLoop cites asserts the same (erroneous) point. Resp. Pls. JSOAF 54. So discovery on this issue is irrelevant. And any contention that the written contracts contain an unlawful agreement is scotched as a matter of law both by the Seventh Circuit's interpretation of those Agreements, *Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1023 (7th Cir. 2017) ("nothing in any of the three agreements required either CDK or Reynolds to block third-party access to its own dealer management system"), and this Court's correct ruling in *Cox*, Dkt. 505 at 12-13 (no case "treat[s] the servicing and/or use of a competitor's product as a 'territory' for the purposes of a market-division agreement.").[3] Indeed, Authenticom—represented by AutoLoop's counsel—does not even *argue* the 2015 Agreements are themselves unlawful. Defs. *Authenticom* SJ Reply § I.A.B.4.

## CONCLUSION

The Court should award CDK summary judgment on all of AutoLoop's claims.

---

[3] This Court declined to dismiss AutoLoop's market-division claim at the pleading stage. Opp. 15. But the Court did not find that AutoLoop stated such a claim—it only declined to rule on the issue because "[n]either party sufficiently addresses the relevant legal standards." Dkt. 504 at 18.

Dated: August 28, 2020

Respectfully submitted,

/s/ Britt M. Miller
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@ mayerbrown.com
mprovance@mayerbrown.com
jglickstein@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant
CDK Global, LLC*

## CERTIFICATE OF SERVICE

    I, Britt M. Miller, an attorney, hereby certify that on August 28, 2020, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

                                        */s/ Britt M. Miller*
                                        Britt M. Miller
                                        MAYER BROWN LLP
                                        71 South Wacker Drive
                                        Chicago, IL 60606
                                        (312) 782-0600
                                        bmiller@mayerbrown.com