**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *In re Dealer Management Systems Antitrust Litigation*, MDL 2817 | No. 1:18-CV-864 |
| *This document relates to:* | Hon. Robert M. Dow, Jr. |
| THE DEALERSHIP PUTATIVE CLASS ACTION | Magistrate Judge Jeffrey T. Gilbert |

**CDK GLOBAL, LLC'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

PUBLIC VERSION

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

I.  CDK Is Entitled To Summary Judgment On The Issue of Damages. ................... 1

  A.  The Dealers Cannot Evade *Illinois Brick*...................................................... 1

  B.  The Dealers Cannot Evade The Dismissed Exclusive Dealing
      Damages Claim........................................................................................... 3

  C.  The Dealers Cannot Evade *Marshfield Clinic.* ........................................... 4

  D.  The Dealers Fail To Calculate Relevant Damages. .................................... 6

II.  CDK Is Entitled To Summary Judgment On The Issue Of Liability.................... 8

  A.  Summary Judgment Is Appropriate On The Conspiracy Claims.............. 8

  B.  The Dealers Have Forfeited Their Exclusive-Dealing Injunctive
      Relief Claim................................................................................................ 9

  C.  Summary Judgment Is Appropriate On The State-Law Claims. .............. 9

    1.  Several Claims Lack A Requisite State Nexus. .......................... 10

    2.  Several Claims Are Not Actionable Under Consumer-
        Protection Law. .......................................................................... 12

    3.  The Dealers Cannot Bring Nevada or West Virginia
        Claims. ....................................................................................... 13

    4.  The Dealers Cannot Avoid State Class-Action Bars. ................. 15

    5.  The Dealers Cannot Avoid State Notice Requirements.............. 18

CONCLUSION........................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Aggrenox Antitrust Litig.*,
2016 WL 4204478 (D. Conn. Aug. 9, 2016) ........................................................15

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...............................................................................................19

*Any Occasion LLC v. Florists' Transworld Delivery, Inc.*,
2010 WL 3584411 (N.D. W. Va. Sept. 13, 2010) .................................................14

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019) .............................................................................................1

*Avitia v. Metro. Club of Chi., Inc.*,
49 F.3d 1219 (7th Cir. 1995) .................................................................................18

*In re Beef Indus. Antitrust Litig.*,
600 F.2d 1148 (5th Cir. 1979) .................................................................................1

*Blair v. Equifax Check Servs., Inc.*,
181 F.3d 832 (7th Cir. 1999) .................................................................................18

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
152 F.3d 588 (7th Cir. 1998) ...............................................................................4, 5

*Blue Shield of Virginia v. McCready*,
457 U.S. 465 (1982) .................................................................................................2

*In re Brand Name Prescription Drugs Antitrust Litig.*,
123 F.3d 599 (7th Cir. 1997) ..........................................................................1, 4, 5

*In re Brand Name Prescription Drugs Antitrust Litig.*,
186 F.3d 781 (7th Cir. 1999) ...............................................................................4, 5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................7

*In re Chocolate Confectionary Antitrust Litig.*,
749 F. Supp. 2d 224 (M.D. Pa. 2010) ...................................................................11

*In re DDAVP Indirect Purchaser Antitrust Litig.*,
903 F. Supp. 2d 198 (S.D.N.Y. 2012) ......................................................12, 13, 14

*In re Effexor Antitrust Litig.*,
357 F. Supp. 3d 363 (D.N.J. 2018) ........................................................................15

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Epps v. Patriquin*,
   2020 WL 4505875 (N.D. Ill. Aug. 5, 2020) .............................................................7

*Fishman Transducers, Inc. v. Paul*,
   684 F.3d 187 (1st Cir. 2012) ...............................................................................11

*In re Generic Pharm. Pricing Antitrust Litig.*,
   368 F. Supp. 3d 814 (E.D. Pa. 2019) ...................................................................15

*Guaranty Trust Co. of N.Y. v. York*,
   326 U.S. 99 (1945) ..............................................................................................17

*Hampton v. City of Chicago*,
   2017 WL 2985743 (N.D. Ill. July 13, 2017) ...........................................................9

*In re Humira (Adalimumab) Antitrust Litig.*,
   2020 WL 3051309 (N.D. Ill. June 8, 2020) ...........................................................16

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   299 F.R.D. 648 (S.D. Cal. 2014) ..........................................................................17

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ..................................................................................... *passim*

*Kamal v. Eden Creamery, LLC*,
   2019 WL 2617041 (S.D. Cal. June 26, 2019) ........................................................14

*Kleen Prods. LC v. Georgia-Pacific LLC*,
   910 F.3d 927 (7th Cir. 2018) ..................................................................................9

*Loeb Industries, Inc. v. Sumitomo Corp.*,
   306 F.3d 469 (7th Cir. 2001) ..................................................................................3

*Malik v. Falcon Holdings, LLC*,
   675 F.3d 646 (7th Cir. 2012) ..................................................................................7

*Marion Healthcare, LLC v. Becton & Dickinson & Co.*,
   952 F.3d 832 (7th Cir. 2020) ..................................................................................2

*Marks v. United States*,
   430 U.S. 188 (1977) ............................................................................................15

*McNeely v. Wells Fargo Bank, N.A.*,
   115 F. Supp. 3d 779 (S.D.W. Va. 2015) ................................................................15

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Merican, Inc. v. Caterpillar Tractor Co.*,
    713 F.2d 958 (3d Cir. 1983)....................................................................................1

*Middleton v. Cavalry Portfolio Servs.*,
    2017 WL 969182 (D. Nev. Mar. 13, 2017) ...........................................................13

*MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*,
    2020 WL 831578 (D.N.J. Feb. 20, 2020) .............................................................14

*Murtagh v. Bed Bath & Beyond Inc.*,
    2020 WL 4195126, (D. Colo. July 3, 2020), *report and recommendation*
    *adopted*, 2020 WL 4193553 (D. Colo. July 21, 2020) ........................................17

*Nevada Power Co. v. Eighth Judicial Dist. Court of Nevada*,
    102 P.3d 578 (Nev. 2004)....................................................................................14

*Nevada Power Co. v. Haggerty*,
    115 Nev. 353 (1999) ...........................................................................................13

*In re Opana ER Antitrust Litig.*,
    162 F. Supp. 3d 704 (N.D. Ill. 2016) ...................................................................16

*In re Optical Disk Drive Antitrust Litig.*,
    2012 WL 1366718 (Apr. 19, 2012) ......................................................................17

*Pac. Cycle, Inc. v. PowerGroup Int'l, LLC*,
    969 F. Supp. 2d 1098 (W.D. Wis. 2013) ...............................................................7

*In re Packaged Seafood Litig.*,
    242 F. Supp. 3d 1033 (S.D. Cal. 2017)................................................................14

*In re Pharmaceutical Average Wholesale Price Litig.*,
    582 F.3d 156 (1st Cir. 2009)................................................................................11

*In re Refrigerant Compressors Antitrust Litig.*,
    2013 WL 1431756 (E.D. Mich. Apr. 9, 2013).......................................................11

*In re Remicade Antitrust Litig.*,
    345 F. Supp. 3d 566 (E.D. Pa. 2018) ...................................................................19

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*,
    355 F. Supp. 3d 145 (E.D.N.Y. 2018) .................................................................18

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*,
    2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ......................................................14

## TABLE OF AUTHORITIES—continued

**Page(s)**

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)............................................................................................15, 16, 17, 18

*Sheet Metal Workers Local 441 Health & Welfare Plan*,
    737 F. Supp. 2d 380 (E.D. Pa. 2010) .................................................................................12

*Smith-Brown v. Ulta Beauty, Inc.*,
    2019 WL 932022 (N.D. Ill. Feb. 26, 2019) .......................................................................17

*St. Vrain Valley Sch. Dist. RE-1J v. A.R.L.*,
    325 P.3d 1014 (Colo. 2014)................................................................................................13

*State v. Jiminez*,
    392 P.3d 668 (N.M. App. 2017) ........................................................................................13

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
    282 U.S. 555 (1931)..............................................................................................................2

*In re Text Messaging Antitrust Litig.*,
    782 F.3d 867 (7th Cir. 2015) ...............................................................................................9

*Thornton v. Hamilton Sunstrand Corp.*,
    54 F. Supp. 3d 929 (N.D. Ill. 2014) ...................................................................................18

*Vanderbilt Mortg. & Fin., Inc. v. Cole*,
    740 S.E.2d 562 (W. Va. 2013)...........................................................................................14

*In re Wellbutrin XL Antitrust Litig.*,
    260 F.R.D. 143 (E.D. Pa. 2009).........................................................................................13

*White v. Wyeth*,
    705 S.E.2d 828 (W. Va. 2010)...........................................................................................14

*Wilson v. MRO Corp.*,
    2017 WL 2608541 (S.D. W. Va. June 15, 2017)...............................................................14

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    2019 WL 1397228 (E.D. Va. Feb. 6, 2019) ......................................................................19

**STATUTES**

740 ILCS 10/7(2) .....................................................................................................................16

28 U.S.C. § 1715......................................................................................................................19

Mass. Gen. Laws Ch. 93A, § 11 .............................................................................................11

PUBLIC VERSION

## TABLE OF AUTHORITIES—continued

**Page(s)**

NRS § 41.600 ................................................................................................................13

NRS § 598.0093 ............................................................................................................13

NRS § 598.0973 ............................................................................................................14

NRS § 598.0977 ......................................................................................................13, 14

W.V. Code § 46A–6–106(a) ..........................................................................................14

**PUBLIC VERSION**

## RECORD CITATION FORMAT

| Abbr. | Reference | Docket Number |
|---|---|---|
| Mot. | Memorandum in Support of CDK Global, LLC's Motion for Summary Judgment | Dkt. 973 |
| Defs. JSUF | Defendants CDK Global, LLC's and the Reynolds and Reynolds Company's Statement of Common Undisputed Material Facts in Support of their Motions for Summary Judgment | Dkt. 974 |
| Defs. JSUF Ex. | Exhibits to the Declaration of Daniel T. Fenske, May 20, 2020 | Dkt. 975 |
| Opp. | Dealership Class Plaintiffs' Memorandum in Opposition to Defendant CDK Global, LLC's Motion for Summary Judgment | Dkt. 1084 |
| Defs. *AutoLoop* SJ Reply | CDK Global, LLC's Reply in Support of its Motion for Summary Judgment (AutoLoop) | Filed concurrently |
| Defs. *Authenticom* SJ Reply | Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Reply Memorandum in Support of Motion for Summary Judgment (Authenticom) | Filed concurrently |

## INTRODUCTION

The Dealers' Opposition fails to rehabilitate their case against CDK on either damages or liability grounds. As to damages, the Dealers seek improperly to recover pass-on damages as "direct" damages; their damages model is shot through with legal and factual errors; and they fail to meet their burden at summary judgment to provide admissible evidence of their specific damages, as opposed to damages for the (non-existent) class. As to liability, the Dealers rely largely on Authenticom's meritless defense of the conspiracy claim, which CDK addresses in its *Authenticom* briefing. Their only unique liability arguments relate to the opinions of their economic expert and to their state law claims, and these arguments are also meritless. As explained below, CDK is entitled to summary judgment on all of the Dealers' claims.

## I. CDK Is Entitled To Summary Judgment On The Issue of Damages.

### A. The Dealers Cannot Evade *Illinois Brick*.

██████████████████████████████████████████████

████ Defs. JSUF Ex. 79, Williams Rpt. ¶ 171. CDK has explained three times why *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), and this Court's motion-to-dismiss order, foreclose the Dealers from pursuing a pass-through damages theory under federal law. *See* Mot. 6-9; Dkt. 882 at 2-5; Dkt. 1030 at 1-3. Every single court of appeals to address the question, including the Seventh Circuit, has held that plaintiffs cannot recover passed-on overcharges by characterizing them as a "direct" injury. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 606 (7th Cir. 1997); *Merican, Inc. v. Caterpillar Tractor Co.*, 713 F.2d 958, 967 (3d Cir. 1983); *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1157 (5th Cir. 1979). The Dealers do not cite any of these cases, even the controlling Seventh Circuit authority; instead, the Dealers rest on decisions that have nothing to do with *Illinois Brick* or that affirmatively support CDK. *See* Opp. 14-17.

**1.** CDK has explained elsewhere that *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019),

1

reaffirms *Illinois Brick* and holds that parties cannot, by sleight of hand, avoid the rule that only direct purchasers can recover an overcharge. Dkt. 1030 at 2-3. In that same brief, CDK explained why *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555 (1931), a pre-*Illinois Brick* decision, has nothing to do with the pass-through question. Dkt. 1030 at 1-2.

**2.** *Blue Shield of Virginia v. McCready*, 457 U.S. 465 (1982), far from helping the Dealers, is devastating to their position. There, the Court addressed whether a patient could recover damages from her insurance company for an alleged conspiracy to reduce competition in the market for psychologists. The patient was the direct purchaser—she paid the psychologist herself. And her injury was the defendant insurance company's refusal to reimburse her directly. *Id.* at 475. The Court explained that there was no *Illinois Brick* problem because permitting the plaintiff to proceed "offers not the slightest possibility of a duplicative exaction"; "[h]er psychologist . . . has been fully paid for his service and has not been injured by Blue Shield's refusal to reimburse her for the cost of his services." *Id*. at 474-75. Here, by contrast, duplicative recovery would be a virtual certainty. CDK is being sued by a putative vendor class in *AutoLoop* to recover the same integration overcharges that the Dealers seek. Indeed, the Dealers themselves seek to recover that overcharge as both "direct" *and* indirect damages.

**3.** *Marion Healthcare, LLC v. Becton & Dickinson & Co.* states that plaintiffs who pay "too much" because "cartel or monopoly overcharges were passed on to them by middlemen must take their lumps and hope that the market will eventually sort everything out." 952 F.3d 832, 836 (7th Cir. 2020). It nowhere suggests that those same plaintiffs could recover simply by recharacterizing their losses as "direct" harms to the value of the directly purchased product. To the contrary, as the Seventh Circuit recognizes, the "central point" of *Illinois Brick* is "to allocate the right to recover to one *and only one* entity in the market." *Id.* at 840 (emphasis added).

**PUBLIC VERSION**

**4.** Finally, *Loeb Industries, Inc. v. Sumitomo Corp.* holds that plaintiffs can recover for "*different* injuries in distinct markets . . . inflicted by a single antitrust conspiracy." 306 F.3d 469, 481-82 (7th Cir. 2001) (emphasis added). ████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████ Defs. JSUF Ex. 79, Williams Rpt. ¶ 171. This Court has already recognized that, under *Loeb*, "when defendants 'sell to a third party who . . . could recover for any injury' it suffers as a direct purchaser, there is *no need* for separate and duplicative suits for 'implicit overcharges' claimed further downstream.'" Dkt. 507 at 20 (emphasis added).

The Court declared nearly 18 months ago that *Illinois Brick* bars the Dealers from "recover[ing] alleged supracompetitive prices passed through vendors" under federal law. Dkt. 507 at 21. The Dealers' federal damages claims—and their Massachusetts and New Jersey claims, which follow federal law in this regard—are barred under *Illinois Brick*. Mot. 9.

**B.     The Dealers Cannot Evade The Dismissed Exclusive Dealing Damages Claim.**

The Dealers' damages model also fails as a matter of law because it includes "damages" associated with claims this Court has already dismissed. ████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████ Defs. JSUF Ex. 317, Williams Tr. 213-14. But the Court dismissed that claim in its entirety on *Illinois Brick* grounds in January 2019. Dkt. 507 at 21.

The Dealers' only real response is to claim that because the Court dismissed the exclusive-dealing claim on "procedural" grounds, they should still be allowed to recover damages that purport to measure the effect of the contract provisions. Opp. 22-23. They cite no authority for that bizarre contention, which would be yet another end-run around *Illinois Brick*. The Court expressly held that Plaintiffs *cannot* recover damages for their exclusive dealing claim, which was "based on their status as indirect purchasers in the DIS market." Dkt. 507 at 21. This is another example

3

of the Dealers using wordplay to try to evade the Court's rulings (and *Illinois Brick*).

The argument also fails on its own terms. CDK moved for summary judgment on the exclusive-dealing claim for injunctive relief, demonstrating that the Dealers lacked evidence that the alleged exclusive-dealing provisions were unlawful. Mot. 22-23. The Dealers failed to defend that claim, and have thus abandoned any argument that the provisions are illegal. *See infra* § II.B.[1]

### C.     The Dealers Cannot Evade *Marshfield Clinic*.

The Dealers' damages analysis is fatally flawed for a third reason: ███████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████ The Seventh Circuit has repeatedly condemned that error as a matter of law. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 186 F.3d 781 (7th Cir. 1999); *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 152 F.3d 588 (7th Cir. 1998).

The Dealers bury their responses to these controlling cases (Opp. 25 n.35) and once again offer misdirection. Specifically, the Dealers offer a host of arguments that track those offered by AutoLoop—unsurprisingly, because AutoLoop's expert, ███████████████████████ ██████████████████████████████████████████████████████████████████████ ███████████████████████████████████ Opp. 20-25. CDK incorporates its response to these arguments in *AutoLoop* by reference. *See* Defs. *AutoLoop* Reply § I.A (filed concurrently). It addresses the Dealers' responses to *Marshfield Clinic* and *Brand Name* below.

---

[1] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████

**1.** The Dealers claim that *Marshfield Clinic* is not controlling because the expert in that case analyzed anticompetitive practices "throughout both before-and-after periods." Opp. 25 n.35. That has nothing to do with the legal principle that an expert conducting a damages analysis must consider unilateral market power. 152 F.3d at 592-93. Also, just a page before this statement, ██ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████ Opp. 24. The Dealers additionally claim that the allegedly illegal activity in *Marshfield Clinic* "added nothing to the price effects of the legal practices." Opp. 25 n.35. But that is the case here too. ██████████████████████████ ██████████████████████████████████████████ Defs. JSUF Ex. 79, Williams Rpt. ¶¶ 11, 177, 178—a supposed "conspiracy" would add nothing to the price effects from that unilateral power. At a minimum, it is inappropriate to ignore that unilateral power completely.

**2.** The Dealers observe that the expert in *Brand Name* worked on the case for only a short time. Opp. 25 n.35. Yet the Seventh Circuit called it "irrelevant" that the expert formulated his opinion "after working on the case for only 40 hours." 186 F.3d at 786. The problem with the expert's testimony in *Brand Name* was not the time it took him to reach his conclusions, but that he did not address "whether [the defendants'] market power owes anything to collusion" and, "[e]ven if it did," whether plaintiffs could "*separate* the price effects of collusion from the price effects of the defendants' *lawful market power*." *Id.* (emphasis added).

**3.** ██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████

### D.     The Dealers Fail To Calculate Relevant Damages.

**1.** The Dealers do not dispute that they have no record evidence of actual damages for the named plaintiffs. Instead, the Dealers calculate damages for a non-existent nationwide class. *See* Mot. 13-16. The Dealers are wrong that the case management order did not "require [them] to provide expert testimony concerning individual damages prior to summary judgment." Opp. 26. That is plainly what the order required: merits expert reports *before* class certification. Dkt. 166. Thus, ██████████████████████████████████████████████████████████

████████████████████████████████ Mot. 14. They then failed to do so.

The best the Dealers can offer at summary judgment is ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████ Opp. 26. That will not do. The parties have spent thousands of hours in discovery, exchanged hundreds of pages of expert reports, and conducted days of expert depositions. A party cannot avoid summary judgment by promising to provide necessary evidence later. *See* Mot. 16 (collecting cases). The Dealers are obliged to provide evidence of their individual damages now.

**2.** As a fallback, the Dealers contend that "the appropriate remedy is not summary dismissal." Opp. 27. As courts frequently observe, however, summary judgment is the "put up or shut up" moment in litigation. *Epps v. Patriquin*, 2020 WL 4505875, at *3 (N.D. Ill. Aug. 5, 2020); *see also, e.g.*, *Pac. Cycle, Inc. v. PowerGroup Int'l, LLC*, 969 F. Supp. 2d 1098, 1117 (W.D. Wis. 2013) ("At this 'put up or shut up' juncture in the lawsuit, it is not enough for PowerGroup to state generally that it incurred 'significant' costs that give rise to a dispute about damages; it was required to propose specific facts showing those expenses and establishing a legal entitlement" to them). Citing *Malik v. Falcon Holdings, LLC*, 675 F.3d 646 (7th Cir. 2012), the Dealers also say their failure to provide evidence of damages has not prejudiced CDK. That is incorrect. Among other things, CDK has been deprived of the opportunity to analyze that plaintiff-specific evidence, raise any appropriate *Daubert* or other challenges to it, and (if appropriate) move for summary judgment on those issues by the party-agreed, and Court-ordered, deadline.[2]

What is more, the contention that the Dealers can simply provide missing evidence "at class certification, at trial, or such other time as the Court should require" (Opp. 27) would gut the Rule 56 standard. A motion for summary judgment is not a progress report that invites the opposing party to cure whatever evidentiary gaps a defendant identifies. Rather, "the plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (emphasis added).

---

[2] In *Malik*, the defendants argued that the plaintiffs should have disclosed their damages early on instead of waiting until the close of discovery. 675 F.3d at 649-50. This case is entirely different. CDK is not arguing that the Dealers violated discovery rules by waiting until expert reports to disclose damages. The Dealers have *never* disclosed individual damages—even in opposing CDK's motion for summary judgment.

## II.     CDK Is Entitled To Summary Judgment On The Issue Of Liability.

### A.     Summary Judgment Is Appropriate On The Conspiracy Claims.

The Dealers spill a great deal of ink attempting to show that their evidence of conspiracy is "entirely plausible." Opp. 1-14. These issues have been debated extensively in other papers and in CDK's reply in *Authenticom*. CDK largely refers the Court to those discussions. Mot. 17-22; Dkt. 882 at 11-20; Dkt. 1030 at 6-10; Defs. *Authenticom* SJ Reply § I (filed concurrently). Indeed, the Dealers incorporate Authenticom's conspiracy discussion in total. *See* Opp. 2.

Revisiting this well-trodden ground, the Dealers contend that ████████████████████
████████████████████████████████████████████████████████████████████████
Opp. 2 (citing Defs. JSUF Ex. 80, Williams Reply ¶ 7). ███████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████ Mot. 18. ████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████ The assertion thus begs the question.

Nor is there anything to the Dealers' claim █████████████████████████████████
█████████████████████████████████ Opp. 5-6. It plainly was, for both DMI and Reynolds had independent interests in trying to resolve their ongoing dispute over DMI's access to the Reynolds DMS—a dispute that had nothing to do with *CDK*'s policy about whether to allow hostile integration. Likewise, ████████████████████████████████████████████████
█████████████ (Opp. 6-7), the Dealers again bury their head in the sand, ignoring the mountain of

record evidence that shows ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████                    *See* Defs. JSUF 94-102, 133-34.

The Dealers' final liability arguments rest on supposed "pretextual" justifications and market "conductivity" to coordinated behavior. Opp. 9-14. But these factors are only marginally probative at best. Mot. 21-22. Here, in particular, even assuming there are factual disputes over CDK's security justifications, those disputes at most concern whether CDK was acting pretextually because it wanted to raise integration prices—a completely independent, non-conspiratorial aim. The Dealers' reliance on the district court's decision in *Kleen Products* and the Seventh Circuit's motion-to-dismiss decision in *Text Messaging* is especially misplaced, for in both the Seventh Circuit *affirmed* summary judgment for the defendants despite "market characteristics" conducive to collusion. Opp. 13; *see Kleen Prods. LC v. Georgia-Pacific LLC*, 910 F.3d 927, 935-36 (7th Cir. 2018); *In re Text Messaging Antitrust Litig.*, 782 F.3d 867, 875-79 (7th Cir. 2015).

### B. The Dealers Have Forfeited Their Exclusive-Dealing Injunctive Relief Claim.

CDK showed in its opening brief why the Dealers' exclusive-dealing claim, ███████

████████████████████████████████████████████████████████████████

Mot. 22-23. The Dealers do not respond to any of these arguments. ████████████████

████████████████████████████████████████████████████████████████

████████████      Opp. 23. Their failure to respond to CDK's argument means that they have forfeited the claim. *Hampton v. City of Chicago*, 2017 WL 2985743, at *26 (N.D. Ill. July 13, 2017).

### C. Summary Judgment Is Appropriate On The State-Law Claims.

The Dealers have 37 remaining state law claims: 21 under state antitrust law, and 16 under state consumer-protection law. *See* Mot. Ex. A. In its motion to dismiss, and identifying authority from every relevant state, CDK explained that the vast majority of these claims track the

substantive standards applicable to federal antitrust claims; the Dealers did not dispute that assessment; and the Court agreed. Mot. 23 (citing Dkt. 265, Dkt. 358, and Dkt. 507). CDK's opening summary judgment brief incorporated that prior briefing and the Court's prior analysis expressly. *See* Mot. 23 (citing Dkt. 265 at 28-29 n.19, 44 n.* and Dkt. 507 at 34-35). And CDK pointed out that every one of the Dealers' state claims is *factually* inseparable from their alleged conspiracy, which the Dealers do not dispute. *Id*. Thus, the assertion that CDK's argument that the link between the federal and state claims is "superficial" (Opp. 29) is easily dismissed. The Dealers apparently think that CDK should have repeated verbatim issues the parties previously briefed and this Court already addressed. They identify no authority for that wasteful exercise. The Dealers' failure to come forward with evidence that could support a finding of conspiracy at summary judgment requires summary judgment on all of their tag-along state claims. Mot. 23-24.

Even if the Dealers did have a triable issue on conspiracy, many of their state claims fail for claim-specific reasons. Mot. 24-34. The Dealers have withdrawn the District of Columbia claim (Count IX), Opp. 29 n.41, but otherwise dispute these grounds. CDK addresses each in turn.

## 1. Several Claims Lack A Requisite State Nexus.

The Dealers bring claims under the law of six states that require a "nexus" between the antitrust violation and the state in question. Mot. 24-26. The Dealers respond with broad generalities about the *impact* of the alleged conspiracy in those states, rather than describing any specific actions in furtherance of the conspiracy within the specific jurisdictions. S*ee* Opp. 29-39 & Tbl. A. That is not sufficient. In fact, the Court already rejected essentially the same argument in its motion to dismiss ruling as to similar requirements in Delaware, North Carolina, Tennessee, and Wisconsin. Dkt. 507 at 50-52, 54. It should do the same here.

*Massachusetts*. The parties agree that Massachusetts requires the plaintiff to show the challenged activity occurred "primarily and substantially" in Massachusetts—*i.e.*, that the

Commonwealth is the claim's "center of gravity." Mass. Gen. Laws Ch. 93A, § 11; Mot. 24; Opp. 30. The Dealers contend that *In re Pharmaceutical Average Wholesale Price Litig.*, 582 F.3d 156, 194 (1st Cir. 2009), shows that nationwide impact does not defeat a § 11 claim. Opp. 31. But *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 197 (1st Cir. 2012), cited that case and squarely held that "[w]here wrongdoing is not focused on Massachusetts but has relevant and substantial impact across the country, the 'primarily' requirement of section 11 cannot be satisfied." The remainder of the Dealers' cases largely analyze claims of false or deceptive advertising wholly unlike the claim here, which alleges that Defendants reached an agreement outside of Massachusetts and as a result raised prices nationwide.[3]

*New Hampshire*. The Dealers argue that they have shown a New Hampshire nexus because CDK and Reynolds have customers in New Hampshire and at least one vendor has an office in the state. Opp. 33-34. But a host of decisions hold that the New Hampshire statute demands not just "increased prices paid in New Hampshire" but "alleged conspirators taking action" there. *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *17 (E.D. Mich. Apr. 9, 2013); *see also* Mot. 25 n.6. None of the Dealers' evidence shows that CDK or Reynolds took any action in the state. And the Dealers' citation to *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224 (M.D. Pa. 2010), only underscores the problem. If all a plaintiff must show is "indirect effects on the New Hampshire market," *id*. at 235, then the requirement that a plaintiff must show more than that state residents paid increased prices would be meaningless.

*Other Jurisdictions*. The Dealers' arguments under Mississippi, New York, South Dakota,

---

[3] The Dealers say that *Fishman* involved only a "few" Massachusetts customers, while in this case the Dealers contend that over 400 dealers were impacted in Massachusetts. Opp. 32. ██████████████████████████████████████████████████████████████ *See* Defs. JSUF Ex. 79, Williams Rpt. ¶¶ 97-98. One cannot credibly say that CDK's alleged wrongdoing is "primarily" focused on Massachusetts when it represents approximately 3% of the total Reynolds and CDK dealer base nationwide.

and West Virginia law sound a similar note. The Dealers say that it is enough that CDK and Reynolds had customers in each state and that vendors operated in each state. They also note that CDK had a corporate office in New York and a data center in South Dakota (although they offer no evidence that either of these facilities was used to further the purported conspiracy). Finally, the Dealers cite decisions that, contrary to the authority in CDK's brief, *see* Mot. 26 n.7, hold that mere impact in a state suffices to establish a nexus. Opp. 34-39. These arguments and cases are unpersuasive for the reasons just discussed. If impact alone showed a nexus, it would make the requirement a nullity. The Court should follow the better-reasoned cases in CDK's opening brief.

2.      **Several Claims Are Not Actionable Under Consumer-Protection Law.**

The consumer-protection statutes in Colorado, Minnesota, New Mexico, North Dakota, and South Dakota do not cover alleged antitrust violations. Mot. 26. The Dealers rely principally on *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198 (S.D.N.Y. 2012), which held that certain antitrust claims could be brought under Colorado, New Mexico, and South Dakota law. But that case addressed claims based on allegations that the defendants made "misrepresentations" through fraudulent submission to the U.S. Patent and Trademark Office and Food & Drug Administration that had a harmful effect on end payors. *Id.* at 221-22. Nothing like that is alleged here. CDK did not "misrepresent[] its products through manufacturing, marketing, and selling." Opp. 39. Rather, CDK allegedly agreed to prevent hostile integration, which is not a "misrepresentation" and is therefore not actionable under consumer protection law.[4] *See* Mot. 26.

---

[4] *Sheet Metal Workers Local 441 Health & Welfare Plan*, 737 F. Supp. 2d 380 (E.D. Pa. 2010), which the Dealers cite to support their Minnesota claim (Opp. 40), is likewise distinguishable. There, the plaintiffs' claim was "based on GSK's making a baseless legal argument in a legal proceeding[] and to the Patent and Trademark Office," and the court noted that "[r]ead strictly, plaintiffs do not have a cause of action." 737 F. Supp. 2d at 414. The court nevertheless concluded that the Minnesota statute should be read to "support a cause of action by *any person injured* as a result of prohibited acts." *Id.* (emphasis added). But the question here is not whether the Dealers are entitled to sue under Minnesota law. It is whether the conduct they allege is one of the "prohibited acts" under the statute. *Id.*; *see also* Opp. 40 (same for North Dakota claim).

In addition, the Dealers argue that because consumer protection statutes in Colorado and New Mexico prohibit "unfair" practices as well as "unconscionable," "false," or "deceptive" practices, the court should allow the consumer-protection claims under those two states' statutes to proceed. Opp. 40. It is unclear why this is so. Both Colorado and New Mexico follow the interpretive principle that "a word may be known by the company it keeps." *St. Vrain Valley Sch. Dist. RE-1J v. A.R.L.*, 325 P.3d 1014, 1021-22 (Colo. 2014); *State v. Jiminez*, 392 P.3d 668, 680 (N.M. App. 2017). Moreover, the Dealers do not claim that the Minnesota or North and South Dakota statutes contain similar prohibitions, so those claims, at a minimum, cannot proceed.

### 3. The Dealers Cannot Bring Nevada or West Virginia Claims.

*Nevada*. The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. ("NRS") § 598.0093 *et seq.* ("NDTPA") provides that only an "elderly person or a person with a disability . . . may commence a civil action against any person who engaged in the practice." NRS § 598.0977; *see, e.g.*, *Middleton v. Cavalry Portfolio Servs.*, 2017 WL 969182, at *4 (D. Nev. Mar. 13, 2017); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 163 (E.D. Pa. 2009). The Dealers are neither, so their NDTPA claim fails. Mot. 27. Although the Dealers observe that *In re DDAVP Indirect Purchaser Antitrust Litig.* reached a contrary conclusion, again, that opinion is unpersuasive.

*DDAVP* reasoned that § 598.0977 merely gives additional *remedies* to elderly or disabled persons. 903 F. Supp. 2d at 226-27. Neither of the bases for this conclusion hold water. First, the court stated that § 598.0977's limitation could be ignored because NRS § 41.600 authorizes "any person" who is a victim of "consumer fraud" to bring an action. *Id*. That would make § 598.0977 almost entirely superfluous; the key remedies enumerated in that section are already specified in § 41.600(3). *Cf. Nevada Power Co. v. Haggerty*, 115 Nev. 353, 364 (1999) (provision that "specifically applies to a given situation will take precedence over one that applies only generally"). Second, the court noted that NRS § 598.0977 gives civil litigants priority over "the

13

collection of any civil penalty imposed pursuant to NRS 598.0973." *DDAVP*, 903 F. Supp. 2d at 226. But § 598.0973 governs actions by district attorneys. *See* NRS § 598.0973(1). Far from suggesting that anyone can sue under NRS § 598.0977, the cross-reference to § 598.0973 simply establishes that private litigants have priority over state enforcement actions.[5]

***West Virginia.*** The West Virginia Consumer Credit and Protection Act ("WVCCPA") provides that a claim under the WVCCPA can be brought only by a "consumer"—*i.e.*, a natural person. *Any Occasion LLC v. Florists' Transworld Delivery, Inc.*, 2010 WL 3584411, at *2 (N.D. W. Va. Sept. 13, 2010).[6] As the Dealers note (Opp. 42), courts are divided over whether a 2015 amendment abrogated this requirement. *Compare, e.g.*, *MSP Recovery Claims, Series, LLC v. Sanofi-Aventis U.S. LLC*, 2020 WL 831578, at *11 (D.N.J. Feb. 20, 2020), *with Wilson v. MRO Corp.*, 2017 WL 2608541, at *7 (S.D. W. Va. June 15, 2017). But the West Virginia Supreme Court has repeatedly emphasized the consumer-oriented nature of the statute. *See Vanderbilt Mortg. & Fin., Inc. v. Cole*, 740 S.E.2d 562, 568 (W. Va. 2013) ("The purpose of the [WVCCPA] is to protect consumers . . . by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action."); *White v. Wyeth*, 705 S.E.2d 828, 838 (W. Va. 2010) (discussing "the private cause of action afforded consumers under West Virginia Code § 46A–6–106(a)"). For this reason, even after 2015, "the omission of the word

---

[5] In addition to *DDAVP*, the Dealers cite *In re Packaged Seafood Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017), and *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, 2018 WL 7197233, at *47 (S.D.N.Y. Dec. 26, 2018), which recapitulate *DDAVP*'s reasoning. *Packaged Seafood* is not followed on this point even in its District. *See Kamal v. Eden Creamery, LLC*, 2019 WL 2617041, at *17 (S.D. Cal. June 26, 2019) ("there is no private cause of action available under the statute except for elderly or disabled persons"). The Dealers also cite *Nevada Power Co. v. Eighth Judicial Dist. Court of Nevada*, but there the court expressly stated that it was "not presented with and express[ed] no opinion regarding the merits of the deceptive–trade practices claim." 102 P.3d 578, 583 n.7 (Nev. 2004).

[6] The Dealers try to distinguish *Any Occasion* because there the plaintiff "specifically ple[d]" that it was a consumer, Opp. 42 n.65, but that was not the basis of the court's decision and, regardless, such a conclusory recitation of an element of the cause of action is not entitled to any weight.

'consumer' from the specific provisions at issue does not lead to the conclusion that the scope of these provisions was intended to extend beyond that of the rest of the Act and into non-consumer transactions." *McNeely v. Wells Fargo Bank, N.A.*, 115 F. Supp. 3d 779, 785 (S.D. W. Va. 2015).

### 4. The Dealers Cannot Avoid State Class-Action Bars.

The Dealers' Illinois Antitrust Act ("IAA") claim and Colorado and South Carolina consumer protection claims are pleaded as class actions even though the underlying statutes forbid plaintiffs like the Dealers from bringing class-action claims. CDK has demonstrated that this issue is governed by Justice Stevens's concurrence in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Mot. 27-30. The Dealers do not seriously contest this, contending that the outcome is "the same" under the concurrence as under the plurality opinion. Opp. 44.[7]

*Illinois*. As the Dealers' own authority (Opp. 47-49) recognizes, the Illinois class-action bar is deeply intertwined with substantive rights and is thus enforceable in federal court. *See, e.g.*, *In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 834 (E.D. Pa. 2019) (recognizes "prevailing view" among district courts "that the Illinois Antitrust Act prohibits indirect purchaser class actions"); *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 391-92 (D.N.J. 2018) ("a majority of courts have held that the Act . . . prohibits indirect purchaser class actions"); *see also* Mot. 31. Elsewhere, the Dealers concede this entwinement, stating that "Illinois's *Illinois Brick* repealer statute creates a substantive right for an entire class of purchasers." Opp. 49.

The text of the statute puts this issue beyond doubt. The IAA provides that "no person shall

---

[7] Before giving up the point, the Dealers assert in a single sentence that Justice Stevens's opinion is "not logically narrower" than the plurality's. Opp. 44 (citing *In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *5 (D. Conn. Aug. 9, 2016)). That does not begin to engage with CDK's argument, which explained why, even under the "logical subset" approach to *Marks v. United States*, 430 U.S. 188 (1977), Justice Stevens's opinion was controlling. Mot. 28-29 & n.10. For the same reason, the Dealers' drive-by assertion (Opp. 44) that the Seventh Circuit has "embraced" the plurality rather than Justice Stevens's opinion in *Shady Grove* is insufficient. CDK specifically addressed why the cases the Dealers identify do not control. Mot. 29-30.

be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General, who may maintain an action *parens patriae* as provided in this subsection." 740 ILCS 10/7(2). It then makes clear that the Illinois Attorney General is limited to an action "*parens patriae* on behalf of persons residing *in this State*." *Id*. (emphasis added). Thus, the IAA class-action bar governs not only procedural issues, but the substantive question of who can bring a claim under the Act—a limitation that is especially important here given the Dealers' assertion, for the first time in this litigation, that they intend to seek to certify a *nationwide* class under the IAA. Opp. 28 n.39; *see also infra* pp. 17-18. In other words, the Dealers now claim not only that they can circumvent the IAA's class-action bar, but that they can do so by bringing a claim that the only person expressly empowered to maintain a class action under the IAA could never bring.

To be sure, the Dealers cite federal cases declining to enforce the IAA's class-action bar. Opp. 44-45. But CDK explained in detail why those cases were wrongly decided. Mot. 32. The Dealers ignore these arguments. To the extent the Dealers' argument is based on a supposed consensus in this District, moreover, it fails on its own terms. Not only does Judge Leinenweber's decision in *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704 (N.D. Ill. 2016), contradict this supposedly "routine[] reject[ion]" of the IAA's class-action bar (Opp. 44), but a recent decision by Judge Shah relied on the IAA's class-action bar to hold that plaintiffs could not bring an antitrust claim under a consumer-protection statute to "avoid a provision of Illinois law that would otherwise bar this particular type of suit." *In re Humira (Adalimumab) Antitrust Litig.*, 2020 WL 3051309, at *28-29 (N.D. Ill. June 8, 2020).[8] And none of the contrary decisions in this District

---

[8] The suggestion that the Court can ignore the IAA's class-action bar because 740 ILCS 10/7(2) refers to claims "in any court of this State" (Opp. 45) misunderstands the inquiry. The point of cases like *Erie* and *Shady Grove* is that federal courts should ordinarily apply the same rules of decision to state-law claims as

discussed an attempt, like the Dealers' here, to certify a nationwide class action under the IAA.

    ***South Carolina/Colorado***. The same is true under South Carolina and Colorado law, not to mention many other states. Mot. 31. Indeed, just two months ago, another court held that refusing to apply a class action exclusion "ingrained in the text of the [Colorado Consumer Protection Act]" would violate *Shady Grove*. *Murtagh v. Bed Bath & Beyond Inc.*, 2020 WL 4195126, at *7 (D. Colo. July 3, 2020), *report and recommendation adopted*, 2020 WL 4193553 (D. Colo. July 21, 2020). In trying to show otherwise, the Dealers rely almost exclusively on the same Northern District of Illinois cases that reach the wrong result under the IAA. Opp. 45-46.[9]

    ***The Issue Is Ripe.*** Finally, dismissing these claims at summary judgment is not "procedurally improper." Opp. 43. As shown above, courts routinely address arguments about the applicability of class-action bars at the very outset of the litigation. It is particularly appropriate to decide the issue now since the Dealers say they will seek to certify a *nationwide* class under the IAA. Opp. 28 n.39. That is squarely contrary to the text of the statute, *see supra* p. 16, and to the Dealers' complaint, which pleads a nationwide class only as to the Dealers' Sherman Act claims and which describes the IAA claim as being brought only on behalf of the "Illinois Class," comprised of "persons and entities located in Illinois." Dkt. 198 ¶ 17; *see also id*. at ¶¶ 274-286. Given this Court's *Illinois Brick* ruling and the Dealers' inability to show direct damages (*see*

---

would be applied in a state court in that forum. *See Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 108 (1945) ("a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State").

[9] The Dealers' reliance on *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 932022 (N.D. Ill. Feb. 26, 2019), is especially unpersuasive because that case, and *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648 (S.D. Cal. 2014), follow the *Shady Grove* plurality rather than Justice Stevens's concurrence. Moreover, *Smith-Brown*'s passing statement that class-action bars do not need to be enforced because they are not "any more substantive" when included in specific statutes (Opp. 45 n.72) is contrary to the weight of authority and inconsistent with Justice Stevens's controlling opinion. The Dealers' other authority is similarly lacking. *E.g.*, *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718, at *8 (Apr. 19, 2012) (stating with no analysis that "Defendants' attempts to distinguish *Shady Grove* are not persuasive").

*supra* Part I.A), it is obvious why the Dealers need to contrive a way to resuscitate their nationwide damages claim. *Cf. Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999) (plaintiffs may seek to use large class claims "to wring settlements from defendants whose legal positions are justified"). But the attempt to inflate the IAA claim for *in terrorem* effect shows why it is so important that the Court enforce the class-action bar now, rather than wait for class certification.[10]

### 5. The Dealers Cannot Avoid State Notice Requirements.

The Dealers' claims under Arizona, Hawaii, Utah, New Jersey, and West Virginia law are subject to state notice requirements. As to West Virginia, the statute requires notice on the defendant. The remaining states require pre-suit notice to the Attorney General. Mot. 32.

1. There is no conflict between state notice requirements and Rule 23, which does not address notice one way or the other. Mot. 33. The Dealers cite *In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 355 F. Supp. 3d 145, 156 (E.D.N.Y. 2018), which reasoned that a notice requirement is "a limitation on the types of claims eligible for class treatment." Opp. 48-49. But CDK explained why *Restasis*'s analysis was not persuasive. Notice requirements do not "limit" what types of claims can be brought as a class action. They simply establish a condition precedent for class treatment. *See* Mot. 34. Once again, the Dealers do not engage with the substance of that argument. Because there is no conflict between the federal and state rules, it is straightforward that "the state notice requirements . . . apply." Dkt. 507 at 62.[11]

---

[10] The Dealers also err in invoking law of the case doctrine. Opp. 43. A "denial of a motion to dismiss does not preclude the Court from considering the same argument on summary judgment." *Thornton v. Hamilton Sunstrand Corp.*, 54 F. Supp. 3d 929, 938 n.5 (N.D. Ill. 2014). That is particularly true because neither party offered "thorough briefing" on *Shady Grove*. Dkt. 507 at 58-61; *see also Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227-28 (7th Cir. 1995) (calling the doctrine a "presumption," not a "straightjacket").

[11] Even if state notice requirements did conflict with Rule 23, they are intertwined with substantive rights and apply in federal court. Mot. 33-34. The Dealers' analysis of this question is superficial, contending that the plurality and concurrence in *Shady Grove* "render the same outcome." Opp. 48. The Dealers also assert that cases applying a notice requirement under Ohio law rest on a "questionable analogy." Opp. 49 n.77. However, under the Dealers' position, state notice requirements could never apply in federal class cases.

**2.** The Dealers attach a June 2018 letter giving notice of their lawsuit to the Arizona Attorney General from June 2018. *See* Opp. 46. Counsel for CDK was not copied on the letter, which raises more questions than it answers. It is unclear why the Dealers would give notice to the Attorney General of Arizona at all, given their view that notice requirements do not apply in federal court. It is even less clear why the Dealers would give notice in Arizona but not to other state Attorneys General, even after CDK raised the issue as to other state claims the following month. Dkt. 266 at 41. Nevertheless, CDK agrees that the Dealers' recently disclosed June 2018 letter satisfies Arizona's notice requirement.

**3.** The same cannot be said for the other state requirements, which the Dealers claim were satisfied when Reynolds—not the Dealers—provided notice of a class settlement pursuant to 28 U.S.C. § 1715. *See* Opp. 47. It would be topsy-turvy to conclude that a state condition precedent for *maintaining* a class action is satisfied once the plaintiff (or, more accurately, a co-defendant) follows federal procedures for *settling* a class action. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997) (class settlement does not relieve courts from ensuring that Rule 23(a) and (b)'s prerequisites to certification are satisfied). The Dealers notably cite no authority for the principle that a CAFA notice discharges state pre-filing notice obligations.

**4.** Finally, the Dealers note that some courts have not dismissed claims for failure to satisfy pre-suit notice requirements. Opp. 49-50. There, however, plaintiffs gave notice early in the case, *e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, 2019 WL 1397228, at *34 n.23 (E.D. Va. Feb. 6, 2019) ("less than two months after filing suit"); *In re Remicade Antitrust Litig.*, 345 F. Supp. 3d 566, 589 (E.D. Pa. 2018) (three months), not at or after summary judgment, years after the case began.

## CONCLUSION

The Court should grant CDK summary judgment on all of the Dealers' claims.

**PUBLIC VERSION**

Dated: August 28, 2020

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller
Michael A. Scodro
Daniel T. Fenske
Matthew D. Provance
Jed W. Glickstein
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com
mscodro@mayerbrown.com
dfenske@ mayerbrown.com
mprovance@mayerbrown.com
jglickstein@mayerbrown.com

Mark W. Ryan
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
(202) 263-3000
mryan@mayerbrown.com

*Counsel for Defendant*
*CDK Global, LLC*

PUBLIC VERSION

## <u>CERTIFICATE OF SERVICE</u>

I, Britt M. Miller, an attorney, hereby certify that on August 28, 2020, I caused a true and correct copy of the foregoing **CDK GLOBAL, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

*/s/ Britt M. Miller*
Britt M. Miller
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
bmiller@mayerbrown.com