**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Loop, LLC d/b/a AutoLoop v. CDK Global, LLC*, Case No. 1:18-cv-002521 (N.D. Ill.) | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert<br><br>**PUBLIC-REDACTED** |

**PLAINTIFF AUTOLOOP'S REPLY IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON CDK GLOBAL, LLC'S COUNTERCLAIM**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

GLOSSARY ........................................................................................................................................ iii

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ........................................................................................................................................ 1

    I.    CDK Has Failed To Provide Any Evidence Of Breach Of Contract ............................... 1

    II.   Summary Judgment Should Be Granted For Lack Of Evidence Of Damages ............... 4

    III.  CDK Is Not Entitled To A Permanent Injunction Or Declaratory Relief ........................ 6

        A.    Damages Would Be Adequate And CDK Has Not Proven Irreparable Harm ......... 6

        B.    Declaratory Relief Would Be Duplicative Of The Breach Of Contract Claim ........ 8

CONCLUSION ..................................................................................................................................... 8

## TABLE OF AUTHORITIES

**CASES**

*AutoMed Techs., Inc. v. Microfil, LLC*, 2005 WL 2861043 (N.D. Ill. Oct. 26, 2005) ....................5

*Bryant v. Jackson Nat'l Life Distribs., LLC*, 2013 WL 1819927 (N.D. Ill. Apr. 30, 2013) ............8

*Cliffs Mining Co. v. Wisconsin Elec. Power Co.*, 2018 WL 6181470
    (E.D. Wis. Nov. 27, 2018) .......................................................................................................8

*Cooper v. Durham Sch. Servs.*, 2003 WL 22232833 (N.D. Ill. Sept. 22, 2003)..............................7

*Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2009 WL 449100
    (N.D. Ill. Feb. 23, 2009) .........................................................................................................8

*Heller Fin. Leasing, Inc. v. Gordon*, 2005 WL 2756113 (N.D. Ill. Oct. 19, 2005).........................5

*Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802 (7th Cir. 2014) .........................................4

*House of Brides, Inc. v. Alfred Angelo, Inc.*, 163 F. Supp. 3d 534 (N.D. Ill. 2016) ........................8

*Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 2013 WL 1286681 (N.D. Ill. Mar. 28, 2013) .................7

*McKnight v. Chicago Hous. Auth.*, 2001 WL 987885 (N.D. Ill. Aug. 23, 2001) ............................2

*MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651 (7th Cir. 2011).................1, 2

*Palos Cmty. Hosp. v. Diversified Clinical Servs. Inc.*, 2016 WL 2984342
    (N.D. Ill. May 24, 2016) .........................................................................................................8

*TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007)....................................4, 6

*U.S. Data Corp. v. RealSource, Inc.*, 910 F. Supp. 2d 1096 (N.D. Ill. 2012).................................4

*U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601 (N.D. Ill. 2007)....................... 4-5

*Wilson v. DiCosola*, 815 N.E.2d 975 (Ill. App. Ct. 2004) .............................................................5

**STATUTE AND RULES**

28 U.S.C. § 2201(a) .........................................................................................................................8

Fed. R. Civ. P. 30(b)(6)................................................................................................................2, 3

Fed. R. Civ. P. 56(c) .......................................................................................................................2

**GLOSSARY**

| Abbreviation | Title | Dkt. |
|---|---|---|
| CDK RSUF | CDK Global, LLC's Responses to Plaintiff AutoLoop's Rule 56.1 Statement In Support of Its Motion for Summary Judgment On CDK Global, LLC's Counterclaims (July 28, 2020) | Dkt. 1059 |
| DJ SAF | Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Statement of Additional Material Facts In Opposition to MDL Plaintiffs' Motions for Summary Judgment On Defendants' Counterclaims (July 28, 2020) | Dkt. 1062 |
| PJ RSAF | MDL Plaintiffs' Responses to Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Statement of Additional Material Facts In Opposition to MDL Plaintiffs' Motions for Summary Judgment On Defendants' Counterclaims | Filed concurrently |
| Dorris Ex. | Authenticom Exhibits to the Declaration of Daniel V. Dorris (May 20, 2020) | Dkt. 977-1 |
| Dorris AL Ex. | AutoLoop Exhibits to the Declaration of Daniel V. Dorris (May 20, 2020) | Dkt. 950-1 |
| Ho Ex. | MDL Plaintiffs' Exhibits 1-503 to the Declaration of Derek T. Ho (July 28, 2020); and<br>MDL Plaintiffs' Exhibits 504-521 to the Declaration of Derek T. Ho (Aug. 28, 2020) | Dkt. 1069-1 & Filed concurrently |
| Fenske Ex. | Exhibits to the Declarations of Daniel T. Fenske (May 20, 2020 & July 28, 2020) | Dkts. 975, 979, 1064 & 1065 |

**INTRODUCTION**

After seeking expansive discovery on its breach of contract claim against AutoLoop – brought only after CDK's own anticompetitive conduct became the subject of this MDL and a government investigation – CDK now confirms that it seeks only nominal damages and declaratory and injunctive relief. It is not entitled even to that. CDK concedes that, to prove breach of contract, it must prove the inventory data AutoLoop obtained from vAuto (a Cox Automotive application) came from CDK's DMS, but CDK fails to produce any evidence on that dispositive issue. CDK also fails to proffer any evidence of damages caused by any supposed breach, a necessary element of its claim under governing law. And CDK is not entitled to injunctive or declaratory relief because its claims have no merit and CDK cannot show that such remedies are necessary here. For these reasons, summary judgment should be granted.

**ARGUMENT**

**I.    CDK Has Failed To Provide Any Evidence Of Breach Of Contract**

As the moving party, AutoLoop met its summary judgment burden by "pointing to the absence of any evidence to establish that it had materially breached the parties' " agreement. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 657 (7th Cir. 2011). CDK must prove that the inventory data AutoLoop obtained from vAuto was sourced from CDK's DMS. *See* AutoLoop Br. 6-7; CDK Br. 6 ("The only question, then, is whether a reasonable jury could conclude that the particular data vAuto sends to AutoLoop ever includes data from the CDK DMS."). AutoLoop has demonstrated a lack of evidence on that dispositive issue.

It is undisputed that vAuto obtains inventory data from multiple sources (only one of which was CDK's DMS). *See* CDK RSUF 18 ("Undisputed that vAuto has obtained certain inventory

data from ███████████████, in addition to other sources, including CDK's DMS.").[1] And AutoLoop pointed out that there was an absence of evidence regarding the source of the inventory data that AutoLoop obtained from vAuto. *See* AutoLoop Br. 7-8. It was then CDK's burden to "point[] to evidence raising a genuine issue of material fact," *MMG*, 630 F.3d at 657, by presenting evidence that the data AutoLoop received from vAuto included data from CDK's DMS. CDK's argument (at 7-8) that AutoLoop needed to present evidence that "the data it receives from vAuto *excludes* inventory data from the CDK DMS" improperly reverses the parties' respective burdens on summary judgment. *See McKnight v. Chicago Hous. Auth.*, 2001 WL 987885, at *3 (N.D. Ill. Aug. 23, 2001) ("The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial.").

CDK has failed to meet its burden. The sum total of its evidence is contained in Paragraphs 123 and 128 of Defendants' Joint Statement of Additional Fact. *See* CDK Br. 6-8. Paragraph 123 provides evidence only that "vAuto extracts inventory data from the CDK DMS." DJ SAF 123. But the fact that vAuto obtains *some* data from CDK's DMS is not evidence that the inventory data that vAuto sent to AutoLoop was extracted from CDK's DMS as opposed to another source.

---

[1] Because CDK concedes that vAuto obtained inventory data from sources other than CDK, it is immaterial that CDK disputes whether vAuto obtained data from *particular* sources, including ████████████████████. *See* CDK RSUF 18. In any event, CDK does not create a genuine dispute of material fact on this issue. CDK presents no evidence to the contrary and instead incorrectly claims that AutoLoop lacks evidence. *See id*. But Cox Automotive's Rule 30(b)(6) witness, Brian Green, testified that ████████████████████████████████████████████████ with "we" meaning Cox Automotive and its applications (like vAuto). *See* Ho Ex. 509, Green Tr. 132:3-11; *see also id.* at 161:22-24 ███████████████████████████ He also testified that ████████████████████████████████████████████████████ that testimony applies equally to vAuto. *See id.* at 130:2-9, 132:18-133:1. AutoLoop's Rule 30(b)(6) witness further testified that vAuto could have received the inventory data from ████████████ *See* Fenske Ex. 543 [Dkt. 1065-75], Rodeghero Tr. 228:21-229:4. It is irrelevant whether he knew the source for the vAuto data; the relevant point is that the data could have come from these other sources, and CDK has presented no evidence regarding the source of the data.

In Paragraph 128, CDK relies on the testimony of Cox Automotive's Rule 30(b)(6) witness Brian Green. But Green did not testify – as CDK claims – that the data vAuto sent to AutoLoop was sourced from CDK's DMS. *See* DJ SAF 128 (citing Dorris AL Ex. 8 [Dkt. 950-9], Green Tr. 116:16-118:10, 121:20-123:11). He testified that ███████████████████████████████████████████████████████████████████████████████████████████████████. *See* Ho Ex. 509, Green Tr. 116:16-21. That says nothing about whether the inventory data that vAuto sent to AutoLoop was sourced from CDK's DMS. Green also testified that ███████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 117:12-17. This confirms that vAuto *sometimes* sourced data from a DMS, but again does not show that vAuto sourced the inventory data sent to AutoLoop from CDK's DMS. Finally, in response to the question whether the inventory data that vAuto sends to AutoLoop "includes data from CDK's DMS," Green testified that ████████████████████████████████████████████████████████████████████ *Id.* at 122:23-123:4. Green did not answer the question in the affirmative, and CDK did not follow up.[2]

The remaining evidence cited in Paragraph 128 is even further afield. CDK cites an AutoLoop document stating that its software could not use inventory feeds from both CDK and vAuto, *see* Dorris AL Ex. 15 [Dkt. 950-16] – which an AutoLoop employee testified he "assum[ed] would be because those data feeds probably include the same data types," Fenske Ex. 555 [Dkt. 1065-87], Eckelberry Tr. 69:18-70:6. That testimony means what it says: the two inventory feeds from CDK and vAuto contained the same types of data, such as vehicle identification numbers.

---

[2] Green also testified that "Cox is strictly prohibited from sharing data based on the RCI and 3PA agreements; and, thus, we do not share any data that pertains to originating from those DMSs." PJ RSAF 128 (quoting Ho Ex. 47 [Dkt. 1069-48], Green Tr. 157:7-10).

That does not speak to whether the data obtained from vAuto was sourced from CDK's DMS. If anything, this evidence shows there might be *conflicts* in the data from the inventory feeds from CDK's DMS and vAuto, thus suggesting that the vAuto data was not sourced from CDK's DMS.

CDK is left with a breach of contract claim supported by nothing more than speculation: vAuto might have obtained the data it sent to AutoLoop from CDK's DMS or it might have obtained that data from another source. Because no jury could reasonably conclude from this evidence that it is more likely than not that the data was obtained from CDK's DMS, summary judgment should be granted. *See* AutoLoop Br. 8 (citing cases); *Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) ("While Maureen is entitled, as the nonmoving party, to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.") (internal quotation marks omitted).[3]

## II. Summary Judgment Should Be Granted For Lack Of Evidence Of Damages

Despite seeking damages in its counterclaims, *see* Dkt. 514, ¶¶ 25-26, CDK concedes for the first time in its summary judgment opposition that it can recover no more than nominal damages. *See* CDK Br. 8-9. But to obtain even nominal damages, CDK must still establish it has suffered some damage caused by the breach, even if it cannot quantify that harm. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract."); *U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d

---

[3] The only authority on which CDK relies (at 8) is distinguishable because there, unlike here, the plaintiff provided evidence of the source of data. *See U.S. Data Corp. v. RealSource, Inc.*, 910 F. Supp. 2d 1096, 1106 (N.D. Ill. 2012) ("RealSource has presented evidence from former U.S. Data employees Nicole Short List and Laura Accord, who described their work creating a database of the names of timeshare owners by reusing data obtained from RealSource, and then filling orders for data from that database.").

601, 639 (N.D. Ill. 2007) ("Illinois law, which is being applied here, requires a showing of damages to succeed on a breach of contract claim.").[4]

CDK has failed to provide such evidence. CDK's theory is that it suffered harm because, if AutoLoop had not obtained inventory data from vAuto, AutoLoop would have needed to pay CDK for that inventory data but – ███████████████████████ – it was not doing so. *See* CDK Br. 9; AutoLoop Br. 9. However, as AutoLoop explained, there is no evidence that, "but-for" any breach, AutoLoop would have paid 3PA fees for these dealers. AutoLoop could have instead obtained inventory data from sources other than CDK's DMS. *See* AutoLoop Br. 9. Indeed, it is undisputed that AutoLoop obtained enriched inventory data from vAuto for these dealers at the dealers' request; that AutoLoop could not obtain the same enriched data from CDK; and that any inventory data vAuto may have sourced from CDK's DMS could also have been obtained from other sources. *See* CDK RSUF 20 ("Undisputed that vAuto . . . adds information such as images to the 'raw data,' and sends that data . . . to AutoLoop. . . . Also undisputed that this has been done in some cases at the request of dealers."). Further, as CDK notes (at 7), AutoLoop could not simultaneously obtain inventory data from CDK and vAuto. It stands to reason that the solution would have been for AutoLoop to obtain the entirety of the inventory data (including the enriched data) from a source other than CDK's DMS rather than paying 3PA fees.

In the face of that showing, CDK has not adduced any evidence of causation. It cites to a marketing brochure stating that AutoLoop's application " 'generates custom quotes based on your

---

[4] CDK's authority (at 9-10 & n.7) stands for the proposition only that a plaintiff may seek nominal damages where some unquantifiable amount of damages has been incurred. *See Wilson v. DiCosola*, 815 N.E.2d 975, 977-78 (Ill. App. Ct. 2004) (nominal damages appropriate where damages were not quantifiable but there was no dispute that the plaintiff suffered some harm); *AutoMed Techs., Inc. v. Microfil, LLC*, 2005 WL 2861043, at *4 (N.D. Ill. Oct. 26, 2005) (similar); *Heller Fin. Leasing, Inc. v. Gordon*, 2005 WL 2756113, at *3 (N.D. Ill. Oct. 19, 2005) (similar).

actual inventory.'" CDK Br. 11. That just shows AutoLoop would have needed to obtain dealers' inventory from *some* source, not that it would have needed to pay 3PA fees to receive it from CDK. CDK also cites the evidence that AutoLoop could only use a single inventory feed for its application. *See id.* Again, that does not show that AutoLoop would have chosen to use the inventory feed from CDK as opposed to an inventory feed from a non-CDK source. Because CDK has failed to present any evidence of causation, summary judgment should be granted. *See TAS*, 491 F.3d at 633 ("[T]he party requesting damages must show causation, that is that the alleged breach is the cause of those damages, with reasonable certainty.").

## III.     CDK Is Not Entitled To A Permanent Injunction Or Declaratory Relief

CDK cannot salvage its claims by tacking on requests for injunctive and declaratory relief. Its request for an injunction fails because it has an adequate damages remedy and because it has failed to provide evidence of irreparable harm. And its request for declaratory relief fails because CDK does not seek to prevent an incipient breach but rather to remedy a past breach for which it has already brought a breach of contract claim.

### A.     Damages Would Be Adequate And CDK Has Not Proven Irreparable Harm

CDK cannot obtain an injunction because it concedes (at 9-10) that damages are an adequate remedy for any lost profits that CDK might have suffered as a result of AutoLoop allegedly not paying 3PA fees that AutoLoop otherwise would have paid if it did not receive inventory data from vAuto. *See TAS*, 491 F.3d at 637 (injunction "normally available only when damages constitute an inadequate remedy"). CDK's failure to quantify those damages is a reason to dismiss CDK's breach of contract claim, *see* AutoLoop Br. 8-10, not a basis for an injunction.

Nor is CDK entitled to injunctive relief on the basis of supposed irreparable harm to CDK's "brand" or risk of a data breach. *See* CDK Br. 12-14. CDK presents no evidence to support those theories. CDK cites no evidence that AutoLoop's use of vAuto devalued CDK's "brand"; it cites

- 6 -

generic statements from its own witnesses about the intent of the 3PA program, but there is no evidence that the conduct here had any effect on CDK's "brand." *See* PJ RSAF 110-113. CDK also presents no evidence that AutoLoop's use of inventory data from vAuto increased the risk of a data breach. The only evidence cited by CDK is that *vAuto* does not track what the recipients of inventory data do with that data. *See* CDK Br. 14.[5] But by CDK's theory, AutoLoop would receive inventory data regardless of whether it came from CDK or vAuto. CDK does not explain why AutoLoop's source of data has any effect on the risk of a data breach. Furthermore, the data at issue is *not* confidential. ███████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████ Ex. 509, Green Tr. 105:3-16; *see* CDK RSUF 19-20.

Because the harms asserted by CDK can either be remedied by monetary damages (lost 3PA profits) or are unsupported by any evidence (harm to "brand" and risk of a security breach), CDK is not entitled to an injunction. *See Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 2013 WL 1286681, at *18 (N.D. Ill. Mar. 28, 2013) (Dow, J.) (denying injunctive relief based on claimed irreparable harm to reputation because "there is no evidence that Kreg has suffered an injury to its reputation, or even that its loss of reputation is a presently existing actual threat"); *Cooper v. Durham Sch. Servs.*, 2003 WL 22232833, at *10 (N.D. Ill. Sept. 22, 2003) (dismissing claim for injunctive relief and noting, "Illinois courts have repeatedly held that money damages are the appropriate remedy for breach of contract cases").

---

[5] CDK likewise did not "track" what third parties did with data they received from 3PA. *See* Dorris Ex. 154 [Dkt. 977-156], Shostack Rep. ¶¶ 64, 70-76.

### B. Declaratory Relief Would Be Duplicative Of The Breach Of Contract Claim

This Court should not exercise its discretion to consider CDK's request for declaratory relief because that claim is duplicative of its breach of contract claim. *See House of Brides, Inc. v. Alfred Angelo, Inc.*, 163 F. Supp. 3d 534, 547 (N.D. Ill. 2016) (relief discretionary); *see also* 28 U.S.C. § 2201(a). Courts routinely refuse to exercise that discretionary jurisdiction under circumstances like these. *See House of Brides*, 163 F. Supp. 3d at 547-48 (declining to exercise discretion because "the same substantive issues are raised in the breach-of-contract and declaratory judgment counts; once the merits of the contract claim and counterclaim are adjudicated, the substantive issues will be resolved, and there is nothing to be gained . . . by entering duplicative relief"); *Cliffs Mining Co. v. Wisconsin Elec. Power Co.*, 2018 WL 6181470, at *6-7 (E.D. Wis. Nov. 27, 2018) (same); *Palos Cmty. Hosp. v. Diversified Clinical Servs. Inc.*, 2016 WL 2984342, at *4 (N.D. Ill. May 24, 2016) (same); *Bryant v. Jackson Nat'l Life Distribs., LLC*, 2013 WL 1819927, at *4 (N.D. Ill. Apr. 30, 2013) ("In this case a declaratory judgment action is improper because the alleged breach of the contract has already occurred.").

It makes no difference whether the breach is ongoing, as CDK claims. *See* CDK Br. 14. In cases of a past and ongoing breach, a breach of contract claim is sufficient to resolve both past breaches and any future breach under the principles of *res judicata*. *See Greenleaf Ltd. P'ship v. Illinois Hous. Dev. Auth.*, 2009 WL 449100, at *8 (N.D. Ill. Feb. 23, 2009) (noting that prospective relief would be unnecessary to remedy a breach of contract claim because *res judicata* would address concerns about future breaches). To be sure, CDK's breach of contract claim fails on the merits, but that is a reason to deny the claim altogether, not to adjudicate a hypothetical case.

### CONCLUSION

For these reasons, AutoLoop is entitled to summary judgment on CDK's counterclaim.

- 9 -

Dated: August 28, 2020  Respectfully submitted,

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com

*Interim Class Counsel for the Putative
Vendor Class*

## CERTIFICATE OF SERVICE

      I, Derek T. Ho, an attorney, hereby certify that on August 28, 2020 I caused a true and correct copy of the foregoing **PLAINTIFF AUTOLOOP'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON CDK GLOBAL, LLC'S COUNTERCLAIM** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

                                                                  */s/ Derek T. Ho*
                                                                 Derek T. Ho
                                                                 **KELLOGG, HANSEN, TODD,**
                                                                    **FIGEL & FREDERICK, P.L.L.C.**
                                                                1615 M Street, NW, Suite 400
                                                                Washington, D.C. 20036
                                                                (202) 326-7900
                                                                dho@kellogghansen.com