**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18-cv-00864 |
| **This Document Relates To:** | Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |
| **THE DEALERSHIP CLASS ACTION** | **PUBLIC REDACTED** |

**CORRECTED DEALERSHIP COUNTER-DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT
ON CDK GLOBAL, LLC'S COUNTERCLAIMS**

## <u>TABLE OF CONTENTS</u>

ARGUMENT ........................................................................................................... 1

I.   SUMMARY JUDGMENT IS WARRANTED ON CONTRACT COUNTERCLAIM ..... 1

   A.   CDK Has Failed To Show Any Damages Or Harm ..........................................1

   B.   CDK Is Not Entitled to Injunctive Relief ......................................................3

      1.   CDK Fails to Show Irreparable Harm .......................................................... 3

      2.   Balance of Hardships Weighs in Dealers' Favor ......................................... 5

      3.   The Issuance of an Injunction is Against Public Interest ............................ 6

   C.   CDK Is Not Entitled to Nominal Damages ....................................................6

   D.   CDK is Not Entitled to Declaratory Relief ...................................................7

   E.   CDK's Breach of Contract Counterclaim is Barred by Waiver .......................8

II.   SUMMARY JUDGMENT IS WARRANTED ON DMCA COUNTERCLAIMS............ 9

   A.   CDK's Argument For Joint And Several Liability Fails................................10

   B.   The Warrensburg Counter-Defendants Are Entitled To Summary Judgment ...............13

      1.   CDK'S Judicial Admissions Defeat Primary Liability................................. 13

      2.   There Can Be No DMCA Liability For Instances Where Profile Manager Did Not Re-Enable A Disabled User Account ........................................................ 13

      3.   No Evidence That Profile Manager Re-Enabled Warrensburg Accounts .................. 14

      4.   There Is No Evidence Of Vicarious Liability ............................................. 15

   C.   The Continental Counter-Defendants Are Entitled To Summary Judgment .................15

      1.   CDK Offers No Evidence Of Contributory Liability .................................. 15

         a.   No Actual Knowledge Or Willful Blindness ......................................... 15

         b.   No Assistance Or Encouragement ...................................................... 17

      2.   CDK Offers No Evidence Of Vicarious Liability ...................................... 18

         a.   No Direct Financial Benefit ............................................................... 18

         b.   No Right Or Ability To Supervise Circumvention ................................ 20

      3.   CDK's Statements Undermine Its Claims For Secondary Liability ......................... 21

CONCLUSION........................................................................................................ 22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*7-Eleven, Inc. v. Violet Spear & Viannam Inc.*,
  2012 U.S. Dist. LEXIS 66366 (N.D. Ill. May 11, 2012) ......................................................... 3

*Aden v. Alwardt*,
  394 N.E.2d 716 (Ill. App. Ct. 1979) ...................................................................................... 8

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir 2003) ................................................................................................. 16

*Allen Bros., Inc. v. Abacus Direct Corp.*,
  2003 WL 21147985 (N.D. Ill. May 14, 2003) ........................................................................ 6

*Am. Suzuki Motor Corp. v. Bill Kummer, Inc.*,
  65 F.3d 1381 (7th Cir. 1995) ................................................................................................. 9

*Apple, Inc. v. Motorola, Inc.*,
  869 F. Supp. 2d 901 (N.D. Ill. 2012) ..................................................................................... 7

*Avila v. CitiMortgage, Inc.*,
  801 F.3d 777 (7th Cir. 2015) ................................................................................................. 1

*Barnard v. Hollingsworth*,
  83 N.E.2d 372 (Ill. App. Ct. 1948) ........................................................................................ 9

*Boehm v. Martin*,
  2017 WL 5186468 (W.D. Wis. Nov. 8, 2017) ..................................................................... 16

*Bosch v. Ball-Kell*,
  2006 U.S. Dist. LEXIS 62351 (C.D. Ill. Aug. 31, 2006) ..................................................... 20

*Brown v. Real Estate Res. Mgmt.*,
  2006 WL 1749619 (N.D. Ill. June 21, 2006) ......................................................................... 1

*CDK Global, LLC v. Brnovich*,
  2020 WL 4260506 (D. Ariz. July 24, 2020) ........................................................................... 6

*Cent. Brown Cnty. Water Auth. v. Consoer*,
  2013 WL 501419 (E.D. Wis. Feb. 11, 2013) ..................................................................... 7, 8

*Clutch Auto Ltd. v. Judge John Robert Blakey Navistar, Inc.*,
  2015 WL 1299281 (N.D. Ill. Mar. 19, 2015) ......................................................................... 7

*Crest Hill Land Dev., LLC v. City of Joliet*,
  396 F.3d 801 (7th Cir. 2005) ............................................................................................... 13

*In re DBSD North Am., Inc.*,
    506 B.R. 358 (Bankr. S.D.N.Y. 2009) ................................................................. 11

*In re Dealer Mgmt. Sys. Antitrust Litig.*,
    2019 WL 4166864 (N.D. Ill. Sept. 3, 2019) ....................................................... 16

*Enterprizes v. DHL Express*,
    2006 U.S. Dist. LEXIS 117651 (N.D. Ill. Nov. 20, 2006) .................................... 2

*Eppers v. First Nat'l Bank*,
    503 N.E.2d 589 (Ill. App. Ct. 1987) ................................................................... 8

*Erickson Prods. v. Kast*,
    921 F.3d 822 (9th Cir. 2019) ...................................................................... 19, 21

*Ferris v. Haymore*,
    967 F.2d 946 (4th Cir. 1992) .............................................................................. 10

*Fish v. Greatbanc Trust Co.*,
    749 F.3d 671 (7th Cir. 2014) .............................................................................. 16

*Flava Works, Inc. v. Clavio*,
    2012 WL 2459146 (N.D. Ill. June 27, 2012) ..................................................... 18

*Flava Works, Inc. v. Gunter*,
    689 F.3d 754 (7th Cir. 2012) .............................................................................. 17

*Frobe v. Vill. of Lindenhurst*,
    2013 WL 5433512 (N.D. Ill. Sept. 30, 2013) ...................................................... 5

*Gateway E. Ry. v. Terminal R.R. Ass'n of St. Louis*,
    35 F.3d 1134 (7th Cir. 1994) ............................................................................... 4

*GC2 Inc. v. Int'l Game Tech. PLC*,
    255 F. Supp. 3d 812 (N.D. Ill. 2017) ..................................................... 18, 19, 20

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) .......................................................................................... 16

*Ha 2003, Inc. v. Fed. Ins. Co. (In re HA 2003, Inc.)*,
    310 B.R. 710 (Bankr. N.D. Ill. 2004) .................................................................. 7

*Hard Rock Cafe Licensing Corp. v. Concession Servs.*,
    955 F.2d 1143 (7th Cir. 1992) ............................................................................ 16

*Hentze v. Unverfehrt*,
    604 N.E.2d 536 (Ill. App. Ct. 1992) ................................................................ 2, 6

*Holson Inv. Co. v. Villelli*,
    1998 WL 312107 (N.D. Ill. June 3, 1998) ........................................................... 8

*Honeycutt v. United States*,
   137 S. Ct. 1626 (2017) ........................................................................ 11

*Huddleston v. Am. Airlines, Inc.*,
   2018 WL 4742097 (N.D. Ill. Oct. 2, 2018) ........................................ 2

*Johnson v. Methodist Med. Ctr. of Ill.*,
   10 F.3d 1300 (7th Cir. 1993) ........................................................... 12

*Jones v. Rempert*,
   2012 Ill. App. Unpub. LEXIS 499 (Ill App. Ct. Feb. 1, 2012) ............... 6

*Klco v. Elmhurst Dodge*,
   2002 WL 193461 (N.D. Ill. Feb. 4, 2002) ........................................ 12

*Kreg Therapeutics, Inc. v. Vitalgo, Inc.*,
   2013 WL 1286681 (N.D. Ill. Mar. 28, 2013) ..................................... 4

*La Salle Nat'l Bank v. Helry Corp.*,
   483 N.E.2d 958 (Ill. App. Ct. 1985) .................................................. 9

*LAJIM, LLC v. Gen. Elec. Co.*,
   917 F.3d 933 (7th Cir. 2019) ........................................................... 6

*Leonard v. Stemtech Health Scis., Inc.*,
   2011 WL 6046701 (D. Del. Dec. 5, 2011) ....................................... 20

*Livnat v. Lavi*,
   1998 U.S. Dist. LEXIS 917 (S.D.N.Y. Jan. 29, 1998) ....................... 17

*Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs.*,
   983 F. Supp. 1167 (N.D. Ill. 1997) ................................................. 18

*Martinez v. United States*,
   803 F.3d 878 (7th Cir. 2015) ........................................................... 11

*Microsoft Corp. v. Ram Distrib., LLC*,
   625 F. Supp. 2d 674 (E.D. Wis. 2008) ........................................... 16

*Microsoft Corp. v. V3 Solutions, Inc.*,
   2003 U.S. Dist. LEXIS 15008 (N.D. Ill. Aug. 27, 2003) ..................... 4

*Monotype Imaging, Inc. v. Bitstream, Inc.*,
   2005 WL 936882 (N.D. Ill. Apr. 21, 2005) ................................. 17, 19

*Moore v. CN Transp. Ltd.*,
   2019 WL 7290727 (N.D. Ill. Dec. 30, 2019) ..................................... 4

*Papa v. Katy Indus.*,
   166 F.3d 937 (7th Cir. 1999) ........................................................... 12

*Pierce v. City of Chi.*,
  2012 U.S. Dist. LEXIS 14331 (N.D. Ill. Feb. 7, 2012) ....................................... 21

*Prima Tek II LLC v. Klerk's Plastic Indus.*,
  525 F.3d 533 (7th Cir. 2008) .................................................................. 7

*In re Providence Television Ltd. P'ship*,
  75 B.R. 139 (Bankr. N.D. Ill. 1987) ........................................................ 10

*Purcell & Wardope Chartered v. Hertz Corp.*,
  530 N.E.2d 994 (Ill. App. Ct. 1988) ....................................................... 79

*Ragsdale v. Turnock*,
  841 F.2d 1358 (7th Cir. 1988) ................................................................ 5

*Remtek Servs., Inc. v. Wells Fargo Bank, N.A.*,
  2020 WL 241332 (D.N.J. Jan. 16, 2020) ................................................... 4

*Seah Chee Wei v. Rocky Point Int'l LLC*,
  2016 WL 7046802 (E.D. Wis. Dec. 2, 2016) ............................................. 3

*Sony Computer Ent Am., Inc. v. Divineo, Inc.*,
  457 F. Supp. 2d 957 (N.D. Cal. 2006) ..................................................... 11

*Stockwire Research Grp., Inc. v. Lebed*,
  577 F. Supp. 2d 1262 (S.D. Fla. 2008) ................................................... 11

*TAS Distrib. Co. v. Cummins Engine Co.*,
  491 F.3d 625 (7th Cir. 2007) .................................................................. 2

*Toshiba Corp. v. Imation Corp.*,
  990 F. Supp. 2d 882 (W.D. Wis. 2013) ................................................... 16

*Truong, LLC v. Tran*,
  2013 WL 85368 (N.J. Super. Ct. Jan. 9, 2013) ......................................... 3

*UMG Recordings, Inc. v. Bright House Networks, LLC*,
  2020 WL 3957675 (M.D. Fl. July 8, 2020)............................................... 19

*United States v. Peithman*,
  917 F.3d 635 (8th Cir. 2019) ................................................................ 10

*United States v. Sanjar*,
  876 F.3d 725 (5th Cir. 2017) ................................................................ 10

*Walgreen Co. v. Sara Creek Prop. Co.*,
  966 F.2d 273 (7th Cir. 1992) .................................................................. 3

*W.W. Vincent & Co. v. First Colony Life Ins. Co.*,
  814 N.E.2d 960, 967 (Ill. App. Ct. 2004)................................................. 1

v

**Statutes**

12 U.S.C. § 1709 ................................................................................................. 10

7 U.S.C. § 2022 .................................................................................................. 10

10 U.S.C. § 2773a .............................................................................................. 10

12 U.S.C.§ 2607 ................................................................................................ 10

15 U.S.C. § 77o ................................................................................................. 10

15 U.S.C. § 78t .................................................................................................. 10

15 U.S.C.§ 77k .................................................................................................. 10

17 U.S.C. § 504(c)(1) ........................................................................................ 10

17 U.S.C. § 1201 ......................................................................................... *passim*

17 U.S.C. § 1203 ........................................................................................ 10, 11

26 U.S.C. § 4912 ............................................................................................... 10

26 U.S.C. § 4944 ............................................................................................... 10

26 U.S.C. § 5043 ............................................................................................... 10

29 U.S.C. § 1362 ............................................................................................... 10

810 Ill. Comp. Stat .............................................................................................. 9

N.J. Stat. § 12A:2-209 ........................................................................................ 9

U.C.C. § 2-209 .................................................................................................... 9

**Other**

Restatement (Second) of Contracts § 360 .......................................................... 3

## GLOSSARY OF TERMS AND REFERENCES

The following is a list of defined terms and references used herein:

| TERM | DEFINITION |
|---|---|
| Add'l Dealer Ex. | Exhibit to the Declaration of Peggy J. Wedgworth, filed concurrently herewith |
| Authenticom Reply | Authenticom's Reply in Support of Its Motion For Summary Judgment on Defendants' Counterclaims (filed concurrently herewith) |
| CDK Opp. Ex. | Exhibit to the Declaration of Daniel T. Fenske, July 28, 2020 (ECF Nos. 1064 and 1065) |
| Counterclaims (or "Countercl.") | CDK Global, LLC's Counterclaims (ECF No. 522) |
| Dealer Ex. | Exhibit to the Declaration of Peggy J. Wedgworth (ECF No. 968-1) |
| Defs. JSOAF | Defendants CDK Global, LLC's and The Reynolds & Reynolds Company's Statement of Additional Material Facts in Opposition to MDL Plaintiffs' Motions for Summary Judgment on Defendants' Counterclaims (ECF No. 1062) |
| Defs. JSUF | Defendants CDK Global, LLC's and The Reynolds & Reynolds Company's Joint Statement of Common Undisputed Material Facts in Support of Their Motions for Summary Judgment (ECF No. 974) |
| Defs. JSUF Ex. | Exhibit to the Declaration of Daniel T. Fenske, May 20, 2020 (ECF No. 975) |
| DMCA | Digital Millennium Copyright Act, 17 U.S.C. § 1201 |
| DMS | Dealer Management System |
| Ho Ex. | Exhibit to the Declaration of Derek T. Ho in Support of MDL Plaintiffs' Oppositions to Defendants' Motions for Summary Judgment (ECF Nos. 1069-1 to -199, 1089-1 to -202, 1090-1 to 106) |
| Motion (or "Mot.") | Dealership Counter-Defendants' Memorandum in Support of Their Motion for Summary Judgment on CDK Global, LLC's Counterclaims (ECF No. 965) |
| Opposition (or "Opp.") | CDK Global, LLC's Opposition to the Dealership Counter-Defendants' Motion for Summary Judgment (ECF No. 1057) |

| TERM | DEFINITION |
|---|---|
| PJ RUSF | MDL Plaintiffs' Responses to Defendants CDK Global, LLC's and The Reynolds and Reynolds Company's Joint Statement of Common Undisputed Material Facts in Support of Their Motions for Summary Judgment (ECF No. 1070) |
| PJ SAF | MDL Plaintiffs' Corrected Statement of Additional Material Facts in Opposition to Defendants' Motions for Summary Judgment (ECF No. 1101) |
| PSUMF | Dealership Counter-Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment on CDK Global, LLC's Counterclaims (ECF No. 968) |
| Resp. Dealers SOF | CDK Global, LLC's Responses to Dealership Counter-Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment on CDK's Counterclaims (ECF No. 1060) |
| Resp. Defs. JSOAF | MDL Plaintiffs' Responses to Defendants CDK Global, LLC's and The Reynolds & Reynolds Company's Statement of Additional Material Facts in Opposition to MDL Plaintiffs' Motions for Summary Judgment on Defendants' Counterclaims, filed concurrently herewith |
| Reynolds (or R&R) | The Reynolds and Reynolds Company |
| Reynolds Opp. to Auth. SJ | Counterplaintiff The Reynolds and Reynolds Company's Opposition to Counterdefendant Authenticom, Inc.'s Motion for Summary Judgment (ECF No. 1061) |
| RPSUF | Response of Defendants CDK Global, LLC and The Reynolds and Reynolds Company to Plaintiff Authenticom, Inc.'s Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment on Defendants' Counterclaims (ECF No. 1058) |
| Tr. | Deposition transcript |

Dealership Counter-Defendants (or "Dealers") respectfully submit this reply memorandum in support of their Motion for Summary Judgment on CDK's Counterclaims (ECF No. 963).

## ARGUMENT

## I.      SUMMARY JUDGMENT IS WARRANTED ON CONTRACT COUNTERCLAIM

### A.      CDK Has Failed To Show Any Damages Or Harm

In response to CDK's months of stonewalling that its expert would be quantifying actual damages for its breach of contract counterclaim (*see* Mot. at 7-11), and despite its damages expert submitting a lengthy report on alleged Authenticom damages and DMCA damages against Dealership Counter-Defendants (as well as two other expert reports), CDK now claims for the first time (buried in a footnote at 6 n.3) that "it was [not] *worthwhile* to pursue the expensive expert analysis needed to quantify those [breach of contract] damages . . . ." (emphasis added).

Not only does such an assertion defy logic, but CDK's argument (at 7) that "inability to quantify damages is a reason to grant an injunction" is baseless. CDK makes clear that it was not a *lack of ability* that left it unable to quantify damages (or even that it could not calculate damages to a "reasonable certainty"), but a conscious ***choice*** to not do so. CDK now backtracks at the last minute, realizing it needs to show some kind of damage, and cobbles together allegations in Dealers' complaint, interrogatory responses, and a paragraph of Dealers' expert report that unsurprisingly fail to prove monetary (or any other)[1] harm.[2] CDK also claims injury arising from

---

[1] CDK relies (at 5) solely upon *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 786 (7th Cir. 2015), for the proposition that breach of contract claims require "resultant injury to the plaintiff", not damages. But the case *Avila* cites for that proposition states that breach of contract claims require evidence of "resultant damages": *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004). As with damages, CDK cannot demonstrate resultant injury, on both a factual (*see infra* n.2; Section I(B), (E)) and legal basis. *See, e.g.*, *Brown v. Real Estate Res. Mgmt.*, 2006 WL 1749619, at *3 (N.D. Ill. June 21, 2006) (summary judgment granted where defendant breached contract but failed to offer evidence of resulting injury: "[i]f a plaintiff fails to prove an injury, he cannot prevail on his breach of contract claim.").

[2] CDK argues (at 6 n.3) for the first time that it suffered monetary damages in the form of lost profits because absent Dealers' alleged breaches, vendors using Authenticom would have chosen to become 3PA certified and pay integration fees to CDK. CDK chose not to have an expert calculate monetary damages and a few conclusory sentences in a footnote is not an adequate substitute for actual evidence of damages.

alleged risks to the DMS caused by "hostile integration" (at 6 n.3), but as discussed in Section I(B), *infra*, CDK's request for injunctive relief is also meritless. Accordingly, under any scenario, CDK has failed to satisfy a *prima facie* claim for breach of contract.[3]

CDK focuses its argument (at 6-7) almost exclusively on *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625 (7th Cir. 2007), failing to acknowledge the Seventh Circuit's statement that "[m]erely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *Id.* at 631. Instead, CDK only addresses the court's discussion of specific performance of defendant's obligations under the contract (after the court determined plaintiff failed to prove damages) as comparable to the injunctive relief sought by CDK. *TAS*, however, alleged breach of contract *and* specific performance. *Id.* at 627. Accordingly, it was not the case in *TAS* (as CDK purports) that specific performance was addressed independently because plaintiff still had a remedy for breach of contract claim after a finding of failure to prove breach of contract claim damages; it was addressed independently because specific performance constituted *four separate causes of action*. *See* Add'l Dealers Ex. IIII. Thus, CDK's argument is completely meritless.[4]

---

*See Enterprizes v. DHL Express*, 2006 U.S. Dist. LEXIS 117651, at *9-11 (N.D. Ill. Nov. 20, 2006) (granting motion *in limine* barring plaintiff's evidence of future lost profits because damage figures based on reentrate rate of *prospective* customers were purely speculative); *Hentze v. Unverfehrt*, 604 N.E.2d 536, 540 (Ill. App. Ct. 1992) ("Recovery of lost profits are allowable if the loss is proved with a reasonable degree of certainty and such profits were within the reasonable contemplation of the parties at the time the contract was entered").

[3] CDK also argues (at 5) that certain Dealership Counter-Defendants' Master Service Agreements ("MSAs") are governed by New Jersey law, yet CDK relies on Illinois law throughout its Opposition.

[4] CDK challenges (at 7 n.4) cases cited at Mot. at 12-13 as only addressing damages claims and not requests for injunctive or declaratory relief, ignoring clear statements in those cases that actual damages is one of the elements necessary for a *prima facie* claim for breach of contract. *See, e.g.*, *Huddleston v. Am. Airlines, Inc.*, 2018 WL 4742097, at *6 (N.D. Ill. Oct. 2, 2018) ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract."). Dealers also argued (Mot. at 14-16) that CDK's failure to show actual damages for its breach of contract claim prevented recovery of nominal damages. *See also infra* Section I(C).Even if CDK could prove the elements of its claim, CDK cannot show that it is entitled to its requested injunctive relief and there is no conduct to enjoin. Mot. at 16-21; *see also* Section I(B) *infra*.

**B.** **CDK Is Not Entitled to Injunctive Relief**

1. CDK Fails to Show Irreparable Harm

CDK fails to show it will suffer irreparable harm, or that money damages are inadequate to compensate for the alleged harm caused by Dealers providing DMS login credentials to data integrators. *See Walgreen Co. v. Sara Creek Prop. Co.*, 966 F.2d 273, 275 (7th Cir. 1992) ( "The plaintiff who seeks an injunction has the burden of persuasion -- damages are the norm, so the plaintiff must show why his case is abnormal.").[5] Indeed, CDK concedes (at 10) that it ***could have*** calculated money damages but chose not to "given the expense required" to do so.

CDK's decision to "go cheap" does not negate the fact that money damages are quantifiable here; thus, CDK cannot satisfy the irreparable harm / inadequacy of money damages requirement. *See*, *e.g.*, *Seah Chee Wei v. Rocky Point Int'l LLC*, 2016 WL 7046802, at *2 (E.D. Wis. Dec. 2, 2016) (denying injunctive relief as the "possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm.") (internal citation omitted); *Truong, LLC v. Tran*, 2013 WL 85368, at *10 (N.J. Super. Ct. Jan. 9, 2013) (reversing grant of injunctive relief where court was "unconvinced" injunction was necessary to prevent irreparable harm based on representations that calculating damages would be difficult).[6]

CDK's Counterclaims explicitly allege injuries compensable through money damages (*see* Countercl. ¶ 137), but do not allege harm to reputation or damage to customer goodwill. CDK

---

[5] CDK's reference (at 7) to the Restatement (Second) of Contracts § 360, that an injunction is appropriate if the damages remedy is not adequate due to "the difficulty of proving damages with reasonable certainty" is inapplicable since CDK simply chose not to calculate damages with no assertion it was too difficult.

[6] CDK (at 8 n.5) attempts to discount this Court's decision in *7-Eleven, Inc. v. Violet Spear & Viannam Inc.*, 2012 U.S. Dist. LEXIS 66366 (N.D. Ill. May 11, 2012) on the basis it did not analyze the permanent injunction factors. However, this was because the plaintiff failed to carry the burden of presenting any evidence of irreparable harm, as CDK has failed to do here.

argues now, *for the first time*, that Dealers' conduct raises the risk of security issues on the CDK DMS, which *could* cause reputational harm and damage to goodwill.[7] But CDK may not amend its Counterclaims in its summary judgment response. *See Moore v. CN Transp. Ltd.*, 2019 WL 7290727, at *14 (N.D. Ill. Dec. 30, 2019) ("[P]laintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (internal citations omitted).[8]

Significantly, CDK has put forward *no evidence* to satisfy its burden that the challenged conduct is *actually occurring*, or if it has stopped, that it is likely to re-occur in the future.[9] █



*See* PSUMF ¶¶ 10-25, Dealer Exs. K-O. ██████

Opp. at 11; *see also* Resp. Dealers SOF 10-25. ████

---

[7] *Gateway E. Ry. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) is factually distinguishable. In *Gateway*, the risk of harm stemmed from two outcomes that were *certain to take place*. Without an injunction, the court found either outcome was a sufficient basis for irreparable harm. *Id*. In contrast, Dealers' issuance of login credentials poses no definable and likely risk to CDK's reputation or customer goodwill, and no data integrator has ever caused any DMS cybersecurity incident. *See* PJ SAF 16.

[8] CDK incorrectly argues (at 10-11) that *Kreg Therapeutics, Inc. v. Vitalgo, Inc.*, 2013 WL 1286681 (N.D. Ill. Mar. 28, 2013) is inapposite. Kreg sought an injunction for breaching the parties' exclusive distributorship contract *Id*. at *18. This court held that Kreg failed to establish a necessary element of irreparable harm by failing to show the cause of injury to Kreg's reputation or customer goodwill. *Id*. The same is true here; CDK relies on irrelevant and unpersuasive evidence alleging a risk to its customer goodwill. For example, CDK recounts (at 9) a security event that occurred at DealerBuilt DMS in 2016 but *makes no connection* between that DealerBuilt incident and dealers issuing login credentials to data integrators. Nor could it because that incident was due to a malicious hacker exploiting a human error by a DealerBuilt employee. *See* Defs. Add'l Ex. 448 at ¶¶ 9, 10, 12. ████

[9] *See Microsoft Corp. v. V3 Solutions, Inc.*, 2003 U.S. Dist. LEXIS 15008, at *50 (N.D. Ill. Aug. 27, 2003) (injunctive relief denied where vague assertions of infringing conduct failed to meet the burden of establishing defendant's current or likely future conduct); *Remtek Servs., Inc. v. Wells Fargo Bank, N.A.*, 2020 WL 241332, at *5 (D.N.J. Jan. 16, 2020) (same).

████████████████████████████████████████[10]████

████████████████████████████████████████.[11] CDK fails

to provide *any* evidence that any Counter-Defendant is currently providing login credentials to

"non-authorized" entities, nor any evidence of the likelihood of such future occurrence.[12] As the

alleged conduct is not occurring, there is no need for a permanent injunction.[13]

### 2.   Balance of Hardships Weighs in Dealers' Favor

CDK argues (at 12) that there is no hardship on Dealers complying with their contractual

obligations. But Dealers' ability to share login credentials allows automated access to the Dealers'

data on the DMS, which, if enjoined, would force Dealerships to either exclusively use 3PA-

certified vendors, or manually export data from the DMS and send it to vendors. The former is a

hardship by forcing Dealers to pay supra-competitive integration fees to those 3PA-certified

vendors. *See* PJ SAF 70. The latter presents hardships by forcing Dealers to go through time-

consuming, error-prone manual efforts to transmit their data to vendors. *See* PJ RUSF 22, 40.



[10] *See* Ho. Ex. 281, CDK-0049815 to 816████████████████████████████

████████████████████████████████Ho Ex. 333, CDK-0985117

████████████████████████████████████████████

████████████████████████████████████████████

████████████ *See also* Def's Add'l Ex. 456, CDK-0751594 to 597 at CDK-0751594, 596 .

[11] █████████████████████████████████████████████

████████████████

[12] CDK argues (at 11-12) that *Frobe v. Vill. of Lindenhurst*, 2013 WL 5433512 (N.D. Ill. Sept. 30, 2013) and *Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988) are distinguishable. The principle in them holds true – conduct which is unlikely to re-occur in the future dictates no need of injunctive relief. Dealers issuing login credentials to data integrators has been obviated by the vast reach of CDK's 3PA program and CDK's forcing vendors to exclusively use 3PA. *See* PJ SAF 67.

[13] CDK argues (at 12 n.6) that purported data syndication between AutoLoop and vAuto (two 3PA-certified vendors) somehow shows that dealers *may* still be using "hostile integration" methods to access the CDK DMS. Even assuming that data syndication takes place between 3PA-certified vendors, which CDK argues is a breach of the *MIA contract* between vendors and CDK (as to which Dealers take no position), this has no connection to the propriety of Dealers issuing login credentials to data integrators.

### 3. The Issuance of an Injunction is Against Public Interest

CDK argues (at 12) that the public has an interest in data being safely transmitted from a DMS yet fails to meet the burden of establishing that the public interest would not be disserved by the issuance of an injunction. *See LAJIM, LLC v. Gen. Elec. Co.*, 917 F.3d 933, 944 (7th Cir. 2019).

Several states have passed laws prohibiting DMS providers from placing unreasonable restrictions on dealers' ability to access their data. *See* Mot. at 21. CDK and Reynolds recently challenged the Arizona law as unconstitutional, and a federal court *denied* their motion for injunctive relief. *See CDK Global, LLC v. Brnovich*, 2020 WL 4260506, at *8 (D. Ariz. July 24, 2020). The court found that the law's purpose was in part "to prevent the DMS provider from monopolizing data that is not its own to its great financial advantage[,]" and found that the law "plausibly serves a public purpose." *Id.* at *6-7. CDK's requested injunction would restrict dealers' ability to freely access their data – a disservice to a recognized public interest.

### C. CDK Is Not Entitled to Nominal Damages

As discussed in Mot. at 14-16, CDK is precluded from seeking nominal damages because it has failed to establish it suffered *any* damages or injury. CDK (at 14-16) intentionally misconstrues Counter-Defendants' argument and ignores extensive caselaw (*e.g.*, Mot. at 15 n.31) holding that nominal damages should not be awarded when a party cannot establish damages to a "reasonable degree of certainty." The few cases cited by CDK (at 14) only reinforce that it is not entitled to nominal damages.[14]

---

[14] *See*, *e.g.*, *Hentze*, 604 N.E.2d at 540 (recovery of lost profits is permitted when proven with a "reasonable degree of certainty."). The *Hentze* plaintiff *attempted to calculate damages*, whereas here, CDK concedes it elected not to quantify those damages. The same is true for *Jones v. Rempert*, 2012 Ill. App. Unpub. LEXIS 499, at **15-16 (Ill. App. Ct. Feb. 1, 2012), containing several paragraphs (¶¶ 12, 13, 15) describing plaintiffs' damages calculation. *Allen Bros., Inc. v. Abacus Direct Corp.*, 2003 WL 211447985 (N.D. Ill. May 14, 2003) is similarly unpersuasive as it was decided under *Colorado* law and involved plaintiff's loss in data value and monies paid to defendant under its contracts. 2003 WL 21147985, at *2.

CDK fails to address *Clutch Auto Ltd. v. Judge John Robert Blakey Navistar, Inc.*, 2015 U.S. Dist. LEXIS 34460, at *24 (N.D. Ill. Mar. 19, 2015) (Mot. at 15 n.31) (granting summary judgment and declining to award nominal damages where plaintiff did not prove damages to a reasonable degree of certainty). Nor does CDK address *Cent. Brown Cnty. Water Auth. v. Consoer*, 2013 WL 501419 (E.D. Wis. Feb. 11, 2013) (Mot. at 16) (rejecting award of nominal damages where plaintiff failed to show actual damages). CDK's other criticisms of Dealers' cases (at 14-16) are without merit.[15]

### D.    CDK is Not Entitled to Declaratory Relief

CDK has failed to satisfy a necessary element to prove a *prima facie* case for breach of contract, thus its counterclaim should be summarily dismissed. Mot. 11-14; *see supra* Section I(A). CDK relies (at 14) on *In re HA 2003, Inc.*, 310 B.R. 710 (Bankr. N.D. Ill. 2004), a bankruptcy case in which claimants moved under the Declaratory Judgment Act. The court held the party seeking declaratory relief was "presently threatened by the possibility that his proposed settlement [] without [his insurance company's] approval w[ould] cause him to lose coverage under the policies." *Id.* at 721. There is no such present harm here. As noted by CDK (at 14), it is pursuing a declaration that Dealers' conduct "constitutes breach of contract." Countercl., Prayer, ¶ A(1). It is indisputable, however, pursuant to CDK's own reports, that none of the Dealers at issue are currently breaching their contracts. *See* Mot. at 19-20; *supra* Section I(B)(1). CDK, citing *Consoer*,

---

[15] CDK's argument (at 15) that in *Purcell & Wardope Chartered v. Hertz Corp.*, 530 N.E.2d 994, 1004 (Ill. App. Ct. 1988), the counterclaimant did not defend its award as one for nominal damages, is a red herring. The court ruled that *nominal damages were improper* because the counterclaimant failed to prove its right to actual damages, dismissing the counterclaims. CDK also misleadingly excerpts the statement (at 15) in *Prima Tek II LLC v. Klerk's Plastic Indus.* that plaintiff "'never sought damages,' nominal or otherwise." 525 F.3d 533, 540-41 (7th Cir. 2008). As stated in Mot. at 15, the Seventh Circuit affirmed the district court's grant of summary judgment that plaintiff failed to prove damages. CDK's Article III standing criticism of *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901 (N.D. Ill. 2012) is irrelevant. In *Apple*, the court stated that a party who is not prepared to show injury should not be awarded nominal damages. *Id.* at 909. CDK's gameplaying on this issue (*see* Mot. at 7-11), including stating it has actual damages (at 6 n.3) while arguing they were not "worthwhile" to calculate – yet still seeking nominal damages – is the very definition of a massive waste of resources.

2013 WL 501419, at *7, argues that "a key purpose of declaratory relief is to authorize judgments in cases where there are no quantifiable damages." Opp. at 14. CDK mischaracterizes and oversimplifies the court's discussion on this point. As addressed previously, CDK admits it could have quantified damages but chose not to do so.

### E. CDK's Breach of Contract Counterclaim is Barred by Waiver

Summary judgment is appropriate where no dispute exists as to the facts constituting waiver. *See Holson Inv. Co. v. Villelli*, 1998 WL 312107, at *7-8 (N.D. Ill. June 3, 1998) (summary judgment granted on waiver of contractual right). ███████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████Mot. at 27 (citing Dealer Ex. E, Response 3). CDK now argues (at 17) that it began to enforce the provisions in 2012.[16] ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████The record thus conclusively shows waiver.

In an attempt to salvage its position, CDK argues (at 16) that it retracted any waiver, but CDK failed to provide the notice necessary to retract its waiver. *See Eppers v. First Nat'l Bank,* 503 N.E.2d 589, 591 (Ill. App. Ct. 1987) (seller's right to require strict compliance was waived and would not be revived "unless the Buyer is given a specific, written notice of the Seller's intent to require strict compliance"); *Aden v. Alwardt,* 394 N.E.2d 716, 720 (Ill. App. Ct. 1979) ("The seller's notice must definitely and specifically indicate to the purchaser that, contrary to past

---

[16] ████████████████████████████████████████████████████████
*See* Defs. JSUF Ex. 199, CDK-3122766. ████████████████████████████
████████████████████████████████. *See* Dealer Ex. AA, at 193:5-11. ███████
████████████████████████████████████ Resp. Dealers SOF 28. █████████
████████████████████*See* Dealer Ex. EE, CDK-2878952. █████████
████████████████████████████ *See* Dealer Exs. GG at 49:3-50:16, HH at 40:24-41:9.

pattern, the time of the essence clause will be strictly enforced in the future."). CDK's own caselaw also defeats the argument. In *LaSalle Nat'l Bank v. Helry Corp.*, 483 N.E.2d 958 (Ill. App. Ct. 1985), following the excerpted quote, the court noted that the lessor "must give sufficient notice of its changed intention to the lessee, which plaintiffs did[,]" by "sen[ding] defendant a series of notices concerning their alleged default." *Id.* at 961-63 (internal citation omitted). Likewise, in *Barnard v. Hollingsworth*, 83 N.E.2d 372, 374 (Ill. App. Ct. 1948), the lessor gave the lessee written notice that he was violating the lease.[17] Here, CDK provided no notice of breach to any Counter-Defendant.[18] Thus, its retraction argument fails.[19]

## II. SUMMARY JUDGMENT IS WARRANTED ON DMCA COUNTERCLAIMS

Dealership Counter-Defendants hereby incorporate by reference Sections II.A-C of the Authenticom Reply concerning CDK's failure to demonstrate the essential elements of its DMCA claims, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████ Dealers also

---

[17] CDK selectively cites a phrase from *Am. Suzuki Motor Corp. v. Bill Kummer, Inc.*, 65 F.3d 1381 (7th Cir. 1995), a case decided under UCC Article 2. The full sentence reads: "Suzuki's *continuous demand that Kummer perform under the contract* would constitute a retraction of the waiver pursuant to 2-209(5)." *Id.* at 1388 n.4 (emphasis added). The UCC explicitly addresses retraction of waiver, stating that a party may retract waiver "***by reasonable notification received by the other party that strict performance will be required of any term waived***…" *See* U.C.C. §2-209(5) (Am. Law Inst. 2020) (emphasis added); *see also* 810 Ill. Comp. Stat. 5/2-209(5); N.J. Stat. § 12A:2-209(5). ██████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████

[18] █████████████████████████████████████████████ *See* Defs' Add'l Ex. 410 at AUTH_00206272 (cited in Resp. Dealers SOF 28). ██████████████████████████████
█████████████████████████ *See generally* Dealer Ex. A at -539, ██████████████████

[19] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████ (Opp. at 17-18) ████████████████████████
███████████████████████ . *See* Resp. Defs. JSOAF 97, 98.
████████████████████████████████████████████████████████
██████████████████████████████████████

incorporate by reference Section II.D.1 of the Authenticom Reply concerning CDK's failure to demonstrate a nexus between the alleged circumvention and any copyright violation.

### A. CDK's Argument For Joint And Several Liability Fails

CDK argues (at 22) that each Dealership in a "corporate family" is jointly and severally liable for all violations committed by any of them. CDK is wrong for multiple reasons.[20] There is no joint and several liability under the DMCA's statutory damages provision.[21] "[W]hen Congress has intended to impose joint and several liability rather than separate and individual liability, it has so provided explicitly." *Ferris v. Haymore*, 967 F.2d 946, 956-57 (4th Cir. 1992) (citations omitted).[22] Congress has provided for joint and several liability in many statutes[23] -- but not the DMCA. The DMCA's statutory damages provision, 17 U.S.C. § 1203(c)(1)-(3) (the provision at issue here) and the Copyright Act's statutory damages provision, 17 U.S.C. § 504(a), (b), (c)(1), largely mirror each other, yet Congress provided for joint and several liability *only* in the Copyright Act's provision.[24] The absence of a "joint and several liability" provision in the later-enacted

---

[20] CDK argues (at 22 n.13) that, with respect to the Warrensburg Dealerships, "there is evidence tying the DMCA violation . . . to Marshall Chrysler Jeep Dodge, L.L.C. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *See* Dealer Ex. F (Rubinfeld Report) ¶ 78 & Table 5.

[21] CDK seeks damages *solely* under the DMCA's statutory damages provision, 17 U.S.C. § 1203(c)(3)(A). *See* Dealer Ex. F (Rubinfeld Report) ¶ 79.

[22] *See United States v. Sanjar*, 876 F.3d 725, 749 (5th Cir. 2017) (vacating forfeiture: "the text of the health care fraud forfeiture statute does not provide for joint and several or co-conspirator liability"); *United States v. Peithman*, 917 F.3d 635, 651 (8th Cir. 2019) (reversing money judgment for joint and several liability under 21 U.S.C. § 853, even though co-conspirators "had ownership interests, worked together to operate the businesses, and shared in the proceeds obtained by engaging in criminal activity"); *In re DBSD N. Am., Inc.*, 506 B.R. 358, 367-68 (Bankr. S.D.N.Y. 2009). *See also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176-77 (1994); *In re Providence Television Ltd. P'ship*, 75 B.R. 139, 140 (Bankr. N.D. Ill. 1987).

[23] *E.g.,* 12 U.S.C. § 1709(r); 7 U.S.C. § 2022(a)(4); 10 U.S.C. § 2773a(c)(3); 12 U.S.C.§ 2607(d)(2); 15 U.S.C. § 77k(f); 15 U.S.C. § 77o; 15 U.S.C. § 78t(a); 26 U.S.C. § 4912(d)(3); 26 U.S.C. § 4944(d)(1); 26 U.S.C. § 5043(a)(3); 29 U.S.C. § 1362(a).

[24] *See* 17 U.S.C. § 504(c)(1) (providing for statutory damages for all infringements . . . with respect to any one work . . . for which *any two or more infringers are liable jointly and severally* . . . ." (emphasis added); *Spooner v. EEN, Inc.*, 2010 WL 1930239, at *8 (D. Me. May 11, 2010) (§ 504(c)(1) "clearly calls for joint and several liability on statutory damages 'for all infringements involved in the action.'").

DMCA defeats CDK's argument. *See Martinez v. United States*, 803 F.3d 878, 882 (7th Cir. 2015) (different language used in "neighboring statutes" informed interpretation).[25]

The DMCA's language forecloses joint and several liability. It says, "a person committing a violation . . . is liable for either -- (A) the actual damages and any additional *profits of the violator* . . . or (B) statutory damages . . . ." 17 U.S.C. § 1203(c) (emphasis added). Such language does not permit joint and several liability. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1632-33 (2017) (holding that 21 U.S.C. § 853(a)(1) "foreclose[s] joint and several liability for co-conspirators," explaining that the statute "limits forfeiture to property the defendant 'obtained . . . as the result of' the crime"; "Neither the dictionary definition nor the common usage of the word 'obtain' supports the conclusion that an individual 'obtains' property that was acquired by someone else. Yet joint and several liability would mean just that . . . .").[26]

Even if the DMCA provided for joint and several liability, CDK's evidence would not suffice. CDK concedes that each of the Continental and Warrensburg Dealerships is a separate legal entity, operating under a separate trade name at a separate location,[27] and that each "is a paying licensee of CDK's DMS software."[28] ███████████████████████

████████████████████████████████████████[29] ██████

---

[25] The Court's 12(b)(6) ruling compels the same result. The Court sustained CDK's secondary liability theory, stating: "the absence of such language [as "aid" or "abet"] does not establish that imposing any kind of secondary liability under the DMCA is improper, *especially in light of the relationship between the DMCA and the Copyright Act, which does impose such liability*." ECF No. 749 at 26 (emphasis added). Similar reasoning counsels **against** joint and several liability here, given that the DMCA's statutory damages provision -- unlike the Copyright Act's provision -- does **not** provide for such liability.

[26] The two cases cited by CDK (at 22) have no precedential or persuasive value, as both involved default judgments, and contained no analysis of the statutory basis for joint and several liability (for primary or secondary violations). *See Stockwire Research Grp., Inc. v. Lebed*, 577 F. Supp. 2d 1262, 1266 (S.D. Fla. 2008); *Sony Computer Ent. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 958-59 (N.D. Cal. 2006) (default judgment against all defendants except entity's "sole shareholder and president").

[27] Resp. Dealers SOF 2(a, e-i, m, n) (Continental dealers), *id.* 2(d, l, q) (Warrensburg dealers).

[28] Resp. Dealers SOF 39; CDK Opp. Ex. 549 (Johnson Tr.) at 94:8-16; *id.* at 94:23-95:9.

[29] CDK Opp. Ex. 537, Ex. D (Responses to Interrogs. 2, 3); *compare with id.* Exs. Q, Y.

██████████████████████████████████████████████████ [30] ██████████████
██████████████████████████████████████████████ [31]

CDK asserts (at 22) that joint and several liability may be imposed for unlawful acts "undertaken for the benefit of a dealership group." But no such benefit could exist where apps were used only by some dealers in a "group." Even for apps used by all dealers, ████████████ ██████████████████████████████████████████████████ *See* Add'l Dealer Ex. KKKK (Stroz Tr.) at 241:12-244:21, 263:9-23. CDK thus fails to satisfy its proposed standard.

Allowing CDK to seek joint and several liability at this late date would be unduly prejudicial. CDK's Counterclaims do not allege joint and several liability.[32] Had CDK alleged such liability, Dealerships would have initiated appropriate discovery of CDK, its experts, and non-party Authenticom. For example, Dealers would have deposed CDK witnesses concerning (i)

████████████████████████████████████████ ████████ ██████
██████████ ████ [34]; ███████████████████████████████
████████████████ ████████ [35]. CDK's failure to plead this new liability theory deprived Dealerships of the opportunity to obtain necessary discovery. *See Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993) (affirming denial of motion to amend

---

[30] CDK Opp. Ex. 549 (Johnson Tr.) at 93:1-9, 297:18-22.

[31] *Id.* at 30:15-19 ██████████████████████████████ 89:3-91:9.

[32] CDK's allegations that Dealerships "share common ownership, managers, and employees and therefore operate as a single business unit" (Countercl. ¶¶ 15, 20) do not suffice. *See Klco v. Elmhurst Dodge*, 2002 WL 193461, at *1-2 (N.D. Ill. Feb. 4, 2002) (denying motion to amend complaint to add dealer's parent as defendant, due to plaintiff's failure to allege facts sufficient to meet high threshold for disregarding the corporate form); *cf. Papa v. Katy Indus.*, 166 F.3d 937, 943 (7th Cir. 1999) ("The plaintiffs seem to think that unless a corporate group erects a Chinese wall between affiliates, each affiliate is responsible for the other's debts. That is nonsense.").

[33] *See* Dealer Exs. RR, SS, TT.

[34] *See* Add'l Dealer Ex. HHHH, CLIFF_HARRIS0002103 to 211.

[35] *See* Dealer Ex. A at -492; Add'l Dealer Ex. DDDD, CDK-1330909.

complaint where defendant "moved for summary judgment based on the allegations" in complaint and "would have to engage in substantial additional discovery and thus be prejudiced if plaintiff's proposed complaint were accepted.").

    **B.**    <u>**The Warrensburg Counter-Defendants Are Entitled To Summary Judgment**</u>

          **1.**    <u>CDK'S Judicial Admissions Defeat Primary Liability</u>

Dealers demonstrated (Motion at 75) that CDK's primary liability counterclaim is defeated by its judicial admissions that *Authenticom* committed (alleged) acts of circumvention. ███████

███████████████████████████████████████████████████████ (*see* Defs. JSOAF 32-33, 37-43).████████████████████████████████████

███████ CDK Opp. to Auth. SJ at 35. In addition, CDK cites no case holding that *multiple* parties may be primarily liable for the *same* act of circumvention; its admissions bar such a claim against the Warrensburg dealerships. The Court's 12(b)(6) ruling does not aid CDK. While CDK's allegations sufficed "at the motion to dismiss stage" (ECF No. 749 at 28), CDK's admissions (most recently in its opposition papers) warrant dismissal of the claim on summary judgment. *Cf. Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005). *See also* Mot. at 77.

          **2.**    <u>There Can Be No DMCA Liability For Instances Where Profile Manager Did Not Re-Enable A Disabled User Account</u>

Dealers established in their opening brief (at 78) that instances where the Profile Manager program "launched" (*i.e.*, ran), but did not re-enable any disabled DMS user accounts, are not DMCA violations. CDK now argues (at 30) – with no citation to evidence or authority – that Profile Manager made CDK's "technological measure less *effective*" in violation of the DMCA.

The Court should reject CDK's unsupported assertion. CDK does not identify a single case imposing liability under the DMCA merely for making a technological access control "less effective". CDK also offers *no evidence* (expert or otherwise) that instances in which Profile

Manager ran (but did not re-enable a disabled account) reduced the effectiveness of CDK's access controls; indeed, CDK concedes that such uses of Profile Manager had no tangible effect with respect to any technological measure. *See* RPSUF 107 ("It is undisputed that Profile Manager will not re-enable credentials that are already enabled at the time that Profile Manager runs.").

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ This shows the true purpose of CDK's DMCA counterclaims: to threaten dealers with massive liability for actions that not only *did not* circumvent (or impair) any DMS access controls, but which *could not* have done so.

    3.    <u>No Evidence That Profile Manager Re-Enabled Warrensburg Accounts</u>

As Dealers argued in their opening brief (at 81-83), CDK lacks evidence that any Warrensburg DMS user account was ever re-enabled by Profile Manager; █████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████ *See also* ECF Nos. 861, 1048.

CDK now argues (at 29) that "[e]ven absent Mr. Stroz's opinions, . . . a jury could conclude that Profile Manager re-enabled user accounts on the Warrensburg Counter-Defendants' DMS." CDK claims that █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████.''[36]

---

[36] Neither Dealer Ex. PPP (cited by CDK in Resp. Dealers SOF 63) nor Defs. Add'l Ex. 436 (cited by CDK in Defs. JSOAF 49) supports CDK's assertion, as they only discuss the general topic of disabling accounts, and do not identify any Warrensburg account as either being disabled or "suspected of automated access."



#### 4. There Is No Evidence Of Vicarious Liability

CDK, in a single paragraph (at 31), argues (without citation to any evidence) that the Warrensburg dealers had a direct financial interest in Authenticom's purported circumvention of CDK's access controls. That argument is nearly identical to CDK's argument concerning the Continental dealers' purported financial interest in Authenticom's circumvention; thus, Dealers' argument concerning the Continental dealers (*see* Section II.C.2.a, *infra*) is equally applicable to the Warrensburg dealers.

### C. The Continental Counter-Defendants Are Entitled To Summary Judgment

#### 1. CDK Offers No Evidence Of Contributory Liability

##### a. No Actual Knowledge Or Willful Blindness

CDK argues (at 34) that "a jury could justifiably infer from [Continental's] extensive, contemporaneous communications with and about Authenticom" that the Continental dealers knew or should have known that Authenticom intended to circumvent CDK's CAPTCHA prompts.

██████ which, as the Court has already held,[37] does **not** violate the DMCA.[38] The Continental dealers' knowledge that Authenticom was accessing the DMS against CDK's wishes does not show knowledge that Authenticom was circumventing CAPTCHA to do so.

██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ CDK now argues they show the Continental dealers were "willfully blind" to Authenticom's circumvention of CAPTCHA. ████████████████████████

████████████████████████████████████████████████████

██████████████████ Dealer Ex. AAA. ████████████████

████████████████████████████████████████████████████

███████████████████████████ ██████████████████████

████████████████████████████████████ *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003).[40] ████████████████████████████

---

[37] *See In re Dealer Mgmt. Sys. Antitrust Litig.*, 2019 WL 4166864, at *14 (N.D. Ill. Sept. 3, 2019) ("[T]he use of valid username/password combinations alone is insufficient to establish liability under Section 1201(a)(1)(A) of the DMCA[.]").

[38] █████████████████████████████████████████████ (*see* Dealer Ex. MM; Defs. JSOAF 95-98) ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

[39] *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011) ("[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts."). *See also Fish v. Greatbanc Trust Co.*, 749 F.3d 671, 684-85 (7th Cir. 2014) ("The Supreme Court [in *Global-Tech Appliances*] took pains to distinguish willful blindness from negligence or even reckless or deliberate indifference toward the facts[.]").

[40] *See Boehm v. Martin*, 2017 WL 5186468, at *2 (W.D. Wis. Nov. 8, 2017) ("[F]ailure to question Wein about the legitimacy of photos that may not have been infringing is not evidence of willful infringement."); *Hard Rock Cafe Licensing Corp. v. Concession Servs.*, 955 F.2d 1143, 1149 (7th Cir. 1992) ("[A defendant] has no affirmative duty to take precautions against the sale of counterfeits . . . [or] to seek out and prevent violations."); *Toshiba Corp. v. Imation Corp.*, 990 F. Supp. 2d 882, 908 (W.D. Wis. 2013) (same); *Microsoft Corp. v. Ram Distrib., LLC*, 625 F. Supp. 2d 674, 684 (E.D. Wis. 2008) (same).



### b. No Assistance Or Encouragement

CDK also fails to raise a genuine factual dispute that the Continental dealerships engaged in "personal conduct that encourage[d] or assist[ed] the [circumvention]." *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 757 (7th Cir. 2012). CDK asserts (at 37)

However, even if true, those facts provide no evidence that the Continental dealers contributed to Authenticom's purported ***circumvention of CAPTCHA***. *See Livnat v. Lavi*, 1998 U.S. Dist. LEXIS 917, at *9 (S.D.N.Y. Jan. 29, 1998) ("The authorization or assistance must bear a direct relationship to the infringing acts . . . .").

CDK argues (at 37) that "it was 'substantially certain' (Mot. 66-67) that Authenticom would use the credentials Continental provided to bypass CDK's security measures." But DMS login credentials are ***not used*** to respond to (or "bypass") CAPTCHA; instead,

Dealer Ex. DDD, Stroz Rpt. ¶ 115.

---

[41] *Monotype Imaging, Inc. v. Bitstream, Inc.*, 2005 WL 936882 (N.D. Ill. Apr. 21, 2005) does not support CDK's position. There, the alleged contributory infringer *developed* the technology that others used to infringe copyrights; thus, the Court considered whether it knew (and intended) that its technology would be used to infringe. *Id.* at *7. Here, Continental dealers played no role in developing Authenticom's CAPTCHA circumvention technology, and thus cannot have been "willfully blind" to its intended uses.

████████████████████████ (*see* Resp. Dealers SOF 52), further showing that the provision of login credentials did not have a direct relationship to Authenticom's alleged CAPTCHA circumvention.

According to CDK (at 37) , ████████████████████████████████

███ ██ █ ██ █████ ████ ████ ██ █ ███ ████ ██

█████████████████████ No jury could reasonably conclude that merely forwarding an email constitutes the "substantial" participation in a direct violation (*Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distribs*., 983 F. Supp. 1167, 1178 (N.D. Ill. 1997)), or "affirmative steps to induce" a violation (*Flava Works, Inc. v. Clavio*, 2012 WL 2459146, at *4 (N.D. Ill. June 27, 2012)), required for contributory liability.

    2.    <u>CDK Offers No Evidence Of Vicarious Liability</u>

    **a.**    **No Direct Financial Benefit**

CDK fails to raise a genuine dispute of material fact that the Continental dealerships had a direct financial interest in Authenticom's alleged DMCA violations. In a single, conclusory paragraph (at 38), CDK argues that "the Continental Counter-Defendants had a financial interest in Authenticom's ability to continue accessing the DMS over CDK's objections."

CDK again conflates (i) Authenticom's alleged DMCA violations (*i.e.*, CAPTCHA circumvention) with (ii) Authenticom's access to the CDK DMS via dealer-provided login credentials -- which does ***not*** violate the DMCA. The relevant question is not whether Continental dealers had "a financial interest in Authenticom's ability to continue accessing the DMS over CDK's objections" (Opp. at 38); instead, CDK must show that Continental dealers had a financial interest ***in Authenticom's DMCA violations*** – its purported circumvention of CAPTCHA.[42]

---

[42] *See GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 824 (N.D. Ill. 2017) ("[F]or vicarious copyright infringement, a plaintiff must establish that 'the defendant has . . . a direct financial interest in the infringing activity.'") (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)).

Further, vicarious liability requires evidence of a "***direct*** financial interest" in the alleged DMCA violation, not just any "financial interest". *GC2 Inc.*, 255 F. Supp. 3d at 824 (emphasis added). CDK's failure to cite the correct standard is illuminating, as CDK's theory – at most – identifies an *indirect* financial benefit to the Continental dealers. CDK appears to argue that if Authenticom had not circumvented CAPTCHA, it would have been unable to extract data from the Continental dealers' DMS; vendors that had been using Authenticom to extract data from the Continental DMS would have had to use a more expensive method to extract that data; and as a result, those vendors would have raised the prices they were charging the Continental dealers.

However, in *Erickson Prods. v. Kast*, 921 F.3d 822 (9th Cir. 2019), the Ninth Circuit rejected the exact argument that CDK raises. In *Erickson*, the plaintiff argued that the vicarious copyright infringer had a direct financial interest in the infringement because it allowed the direct infringer to "avoid[] paying licensing fees" to the plaintiff. *Id.* at 829. But the Ninth Circuit squarely rejected that argument, holding that "the direct infringer's avoidance of fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious infringer." *Id.* at 830. Further, even if "a direct infringer's avoidance of fees prove[s] financially advantageous to a vicarious infringer. . . . this benefit would not be 'direct,' since it would reach [the vicarious infringer] only incidentally, via [the direct infringer's] intervening decision to cut prices." *Id.* at 830-31. Accordingly, even if Authenticom's purported circumvention of CAPTCHA "prove[d] financially advantageous" to Continental dealers by allowing them to avoid paying higher application fees, such a benefit "would not be 'direct,' since it would reach [the Continental dealers] only incidentally", through application vendors' intervening pricing decisions. *Id.* [43]

---

[43] *See also Monotype Imaging, Inc.*, 2005 WL 936882, at *7 (granting summary judgment on vicarious copyright infringement claim "[b]ecause Plaintiffs have failed to set forth any evidence demonstrating a direct causal relationship between the alleged infringement and [defendant's] financial benefits"); *UMG Recordings, Inc. v. Bright House Networks, LLC*, 2020 WL 3957675, at *4 (M.D. Fl. July 8, 2020) (rejecting

CDK's argument concerning the Continental dealerships' purported "financial interest" is wholly speculative, as CDK offers almost no evidence to support its theory.[44] For example, CDK offers no evidence to support its assertion that if Authenticom had not used illegal means to circumvent CDK's CAPTCHA prompt, Authenticom would have been unable to extract data from the Continental DMS; to the contrary, ███████████████████████

████████████████████████████████████████████

███████████████████████████████████ (*see* Resp. Dealers SOF 55). CDK's failure to proffer evidence on this essential element of its counterclaim warrants the entry of summary judgment. *See Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at *10 (D. Del. Dec. 5, 2011) (absent evidence, "any claim that Defendant had a 'direct financial interest' in the infringing actions of [the direct infringer] would be unduly speculative. Plaintiff cannot generate a genuine dispute of material fact out of such an evidentiary void.").

### b. No Right Or Ability To Supervise Circumvention

CDK's vicarious liability claims also require CDK to demonstrate that the Continental Counter-Defendants had "the right and ability to supervise [Authenticom's] infringing conduct".[45] *GC2 Inc.*, 255 F. Supp. 3d at 824. CDK does not offer any evidence to support that assertion;

---

"Plaintiffs' expansive interpretation" of the requirement, as it would "effectively read[] the limiting term 'direct' out of the test, allowing the imposition of vicarious liability based on indirect, highly attenuated . . . financial benefits."); *Bosch v. Ball-Kell*, 2006 WL 2548053, at *13 (C.D. Ill. Aug. 31, 2006) (evidence of an *indirect* financial interest in copyright infringement was insufficient, as "any financial benefit to be had by not spending the funds to license the works would have been realized by [the direct infringer], not [the alleged vicarious infringer].").

[44] The only evidence CDK cites to support its "financial benefit" theory are ██████████████ ███████████████████ *See* Opp. at 38 (citing Resp. Dealers SOF 57). ████████████████████████████████████████

[45] CDK falsely asserts that "Counter-Defendants previously took this same position, moving to dismiss on the grounds that Authenticom was the 'agent' of the dealers and had at least apparent authority to act on the dealers' behalf." Opp. at 39 (citing ECF No. 674 at 2-3). Dealers did ***not*** argue that Authenticom was dealers' agent; dealers instead argued that CDK had pled *itself* out of its breach of contract counterclaims by "alleg[ing] facts sufficient to show that the data extractors were agents." ECF No. 674 at 2-3.

instead, CDK asserts that the Continental dealers did **not** have the right or ability to supervise Authenticom's conduct. *See* Opp. at 39 ("To be clear, CDK disputes that Authenticom was acting as the dealers' agent when it hostilely accessed the CDK DMS."). Thus, CDK itself asserts that it cannot establish an essential element of its counterclaim.

CDK argues (at 39) that *Authenticom's* assertion that "the dealers had the right to control all aspects of Authenticom's provision of data services" is sufficient to create a genuine dispute of material fact on this issue. However, assertions by Authenticom (a non-party here) are irrelevant; **CDK** is asserting vicarious liability counterclaims, and **CDK** maintains that the Continental dealers did not have the right or` ability to control Authenticom's alleged circumvention of CAPTCHA.[46]

### 3. CDK's Statements Undermine Its Claims For Secondary Liability



*See* Defs. JSOAF 40

.[47] These statements defeat any showing that the dealers knew of (or were willfully blind to) Authenticom's challenged conduct. They also undermine any showing that the dealers

benefitted from the conduct. *See* Defs. JSOAF 32. Accordingly, the secondary liability claims against the Continental dealers should be dismissed. *See* Mot. at 77; *Pierce v. City of Chi.*, 2012 U.S. Dist. LEXIS 14331, at *9-10 (N.D. Ill. Feb. 7, 2012).

---

[46] Whether Authenticom was the Continental dealers' agent for data integration is not determinative of the Continental dealers' right or ability to control Authenticom's purported circumvention of CAPTCHA, as any illegal circumvention of CAPTCHA would have been outside the scope of such an agency relationship. *See Erickson Prods. v. Kast*, 921 F.3d at 831 (citing Restatement (Third) of Agency § 2.02 cmt. H (illegal or tortious acts exceed the scope of an agency relationship)).

[47] *See also* Defs. JSOAF 32
*id.* at 37

## CONCLUSION

For the foregoing reasons, Dealerships' Motion should be granted in its entirety.

DATED: August 28, 2020                    Respectfully submitted,


/s/ Peggy J. Wedgworth

Peggy J. Wedgworth (*pro hac vice*)
Elizabeth McKenna (*pro hac vice*)
**MILBERG PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, Suite 1920
New York, New York 10119-0165
Tel: (212) 594-5300
Fax: (212) 868-1229
pwedgworth@milberg.com
emckenna@milberg.com

*Interim Lead Counsel for the Dealership Class*

Leonard A. Bellavia (*pro hac vice*)
**BELLAVIA BLATT, PC**
200 Old Country Road, Suite 400
Mineola, New York 11501
Tel: (516) 873-3000
Fax: (516) 873-9032
lbellavia@dealerlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Dealership Class Plaintiffs' Steering Committee*

James E. Barz
Frank Richter
**ROBBINS GELLER RUDMAN & DOWD LLP**
200 South Wacker Drive, 31st Floor
Chicago, Illinois 60606
Tel: (312) 674-4674
Fax: (312) 674-4676
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

*Dealership Class Plaintiffs' Steering Committee*

Robert A. Clifford
**CLFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
Tel: (312) 899-9090
Fax: (312) 251-1160
RAC@cliffordlaw.com

*MDL Liaison Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, Peggy J. Wedgworth, an attorney, hereby certify that on September 8, 2020, I caused a true and correct copy of the foregoing **DEALERSHIP COUNTER-DEFENDANTS' CORRECTED REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON CDK GLOBAL, LLC'S COUNTERCLAIMS** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Peggy J. Wedgworth*
Peggy J. Wedgworth