**IN THE UNITED STATE DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | **MDL No. 2817** <br> **Case No. 18-CV-00864** |
| **This Document Related to All Cases** | |

**DECLARATION OF CHRISTOPHER MASSARONI**

Christopher Massaroni, Esq. hereby affirms under penalty of perjury as follows:

1.      I am duly licensed and admitted to practice law and I am a member in good standing of the bar of this Court. I am a member of Hodgson Russ LLP, attorneys to a non-party to this action, AutoMate, Inc. ("AutoMate"). As such, I am familiar with the facts and circumstances recited herein.

2.      I respectfully submit this declaration in support of AutoMate's motion for an order pursuant to FRCP 37 enforcing this Court's Confidentiality Order and entering appropriate relief to protect AutoMate's confidential information.

3.      We make this application because (i) the Confidentiality Order has been breached and (ii) AutoMate remains in continuing jeopardy that its confidential information will be further disseminated outside this litigation. It is bad enough that AutoMate was forced under compulsion of subpoena to produce its highly confidential information to its competitors and so many other companies in its industry; it is even worse that the information may be used more broadly.

4.      This motion is made in follow-up to my letter to the Court dated September 9, 2020 (attached hereto as **Exhibit A**) and the Court's Docket Entry of September 11, 2020.

092539.00000 Business 20157280v2

### A.    Subpoenas to AutoMate

5.      AutoMate is a manufacturer and seller of DMS systems and is in direct competition with the DMS manufacturers who are parties to this litigation. AutoMate is not a party to this action and is not familiar with the specifics of the allegations or defenses in the case. AutoMate does not want to be involved in the action and does not want its confidential information shared with any of the parties to the case, whether they be competitors, potential customers or other companies in the automotive field.

6.      In 2018, counsel to various parties served multiple subpoenas on AutoMate seeking some of the most confidential and intimate details of AutoMate's business. These subpoenas include the following:

      a.  On March 23, 2018, the Sheppard Mullin firm, counsel to Defendant The Reynolds & Reynolds Company ("R&R"), issued a subpoena duces tecum seeking documents from AutoMate (attached hereto as **Exhibit B**).

      b.  On November 19, 2018, the Sheppard Mullin firm issued a subpoena seeking testimony from an Automate corporate witness (attached hereto as **Exhibit C**).

      c.  On November 29, 2018, the Kellogg Hansen firm, counsel for Plaintiffs Authenticom, Inc., Loop, LLC and those similarly situated and Motor Vehicle Software Corp., ("MDL Plaintiffs"), issued a subpoena also seeking deposition testimony from an AutoMate representative (attached hereto as **Exhibit D**).

7.      AutoMate was extremely resistant to the possibility that it might be compelled to produce confidential and sensitive information to its competitors and others in the industry and, as a result, I had multiple conversations with counsel at the Sheppard and Kellogg firms expressing AutoMate's resistance to the production of its materials. I was assured that there is a robust Confidentiality Order in place and that there was an expectation that all parties had confidentiality procedures in place for this action, and that the Confidentiality Order would be complied with. I was also supplied with a copy of the Agreed Confidentiality Order entered by Judge St. Eve dated

092539.00000 Business 20157280v2

April 4, 2018 (the "Confidentiality Order") (Docket No. 104). Of course, I was also mindful of the obligation of a non-party witness to comply with a duly issued subpoena.

8.      AutoMate was an extremely reluctant non-party witness.  Nonetheless, AutoMate ultimately produced documents in compliance with the March 23, 2018 subpoena. When doing so, AutoMate marked a large volume of the documents within its production as either "Highly Confidential" or "Highly Confidential – Subject to Protective Order."

9.      In addition, AutoMate's corporate witness provided testimony in response to the subpoenas. This testimony was provided on December 20, 2018. The transcript of the testimony (the "Transcript") was designated by AutoMate as "Highly Confidential" under the Confidentiality Order, and the term "Highly Confidential" is printed at the top of every page of the transcript.

10.     I cannot emphasize enough that AutoMate was resistant to the intrusion into its confidential information. It did not want to produce any of its documents to its competitors. It did not want to provide any testimony to its competitors. It complied with the subpoenas only because it was advised of the importance of the Court process, the potential sanction in the event that it might refuse to comply with the Court process and because it was assured that its information would be maintained in the strictest of confidence as required by the Confidentiality Order.

**B.      The Breach of the Confidentiality Order**

11.     AutoMate seeks relief because (i) there has already been a breach of this Court's Confidentiality Order and (ii) there are multiple other reasons why AutoMate's confidential information is in jeopardy of further dissemination.

12.     This summer, AutoMate received notification that its confidential information had been supplied to the FTC. AutoMate was aware that certain of its information may already have been supplied to the FTC in the Spring of 2019, but it seemed that there had been a more recent disclosure as well.

092539.00000 Business 20157280v2

13.     On June 18, 2020, I wrote to all three law firms who attended AutoMate's December 20, 2018 deposition to inform them that AutoMate had learned of a potential breach of the Confidentiality Order and I asked all three firms to provide me with specific information concerning AutoMate's confidential information and subpoenas or government requests for such information. (Attached hereto as **Exhibit E**).

14.     In my letter of June 18, 2020, I asked counsel to provide responses to the following three questions:

> "In view of the foregoing, please advise me of the following:
>
> 1. Whether you or your clients received or responded to a subpoena from the FTC seeking production of any information relating to Auto/Mate, including any documents, information or testimony provided by Auto/Mate in this litigation;
>
> 2. Whether you or your clients received or responded to a subpoena from any other party seeking production of any information relating to Auto/Mate, including any documents, information or testimony provided by Auto/Mate in this litigation;
>
> 3. Please provide me with copies of all such subpoenas and copies of all documents or materials disclosed in response to such subpoenas." (*Id*.)

15.     Only one of the three attorneys responded to my request for information. Attached hereto as **Exhibit F** is the letter dated June 26 from Daniel V. Dorris, Esq. of the Kellogg Hansen firm explaining that his firm had inadvertently made disclosures in response to a request for information from the FTC. Mr. Dorris responded that it was an oversight that AutoMate was not notified prior to the release of its confidential documents, and that his firm had belatedly made an effort to preserve AutoMate's ability to challenge the information request. However, it was too late for such a challenge. The damage had been done.

16.     Neither of the other two firms bothered to respond to my letter until after I had reported the matter to the Court on September 9, 2020.

092539.00000 Business 20157280v2

17.     However inadvertent it may have been, the disclosure to the FTC from the Kellogg firm constitutes a violation of the Court's Confidentiality Order.

## C.     Other Threats to AutoMate's Confidentiality

18.     Apart from the admitted breach of the Confidentiality Order, there are at least three other reasons why AutoMate is entitled to relief ensuring further protections of its confidential information.

### i.     *Refusal to provide information about AutoMate's confidential information.*

19.     First, it is palpably clear that the parties to this action do not respect the confidentiality of AutoMate's documents and information or its rights as a non-party witness.  In this regard, it is notable that only one of the three law firms who received my June 18 request for information bothered to respond to the inquiry (and this response confirmed the breach).  The other firms have since responded, but only after I brought the matter to the attention of this Court in my September 9 letter.

### ii.     *Amendments to the Confidentiality Order without notice to non-party witnesses.*

20.     Second, the parties to this case apparently consider it acceptable to make amendments to the Confidentiality Order which affect the confidential information of non-parties, without notifying AutoMate or any other non-party witnesses.  Such amendments could affect important rights of AutoMate – such as who might receive its confidential information – even though AutoMate relied upon a specific Confidentiality Order dated as of April 4, 2018.

21.     On September 9, I learned that Cox Automotive had recently filed a motion with this Court seeking permission to use confidential information outside the litigation.  (Dkt # 1155). This application affects AutoMate's information, yet AutoMate was not put on notice of such application.

22.     When AutoMate produced confidential information in this case, it had every expectation that the then-existing Confidentiality Order would be complied with and that its documents and information would not be used outside this litigation, except in strict compliance with that order.  It would be highly inappropriate for AutoMate's information to be used beyond this litigation for any purpose, especially if AutoMate is not even notified of the potential use.

### iii.    *Reynolds and Reynolds previously disregarded AutoMate's confidentiality interests.*

23.     Third, even prior to the highly confidential testimony of AutoMate's witness, Reynolds and Reynolds had already breached a Nondisclosure Agreement that it had with AutoMate separate from the Confidentiality Order in this case.

24.     During the deposition of AutoMate's corporate witness on December 20, 2018, Reynolds' attorney questioned AutoMate's witness regarding documents that Reynolds had obtained long prior to the issuance of any subpoena in this action which was subject to a Nondisclosure Agreement between AutoMate and Reynolds.  AutoMate was shocked and disappointed to learn that its confidential documents had not been destroyed, and that such documents had been disseminated in this litigation without prior notice to AutoMate as is required by the Nondisclosure Agreement.  Attached hereto as **Exhibit G** are copies of my correspondence to Reynolds' counsel dated February 7, 2019 and Reynolds' response on February 15, 2019.

### D.    Conclusion

25.     In view of the foregoing circumstances, AutoMate remains in jeopardy that its confidential information will be used, retained and disseminated in violation of this Court's Confidentiality Order and AutoMate's privacy rights. Automate should not be at risk of further use or dissemination of its documents and information, even if by accident or oversight.

26.     AutoMate respectfully requests that the Court enter an order directing that all parties to this action return or destroy all documents and testimony marked as either "Confidential" or "Highly Confidential" without retaining copies. AutoMate further requests an order directing those parties whose counsel received my June 18, 2020 letter (Reynolds, CDK and Dealer Class) to pay AutoMate's legal fees and its costs for this application.

Executed on September 22, 2020

_____
CHRISTOPHER MASSARONI, ESQ.