# EXHIBIT G



# McNAMEE LOCHNER P.C.
### ATTORNEYS AT LAW

CHRISTOPHER MASSARONI

*Direct Dial*
(518) 447-3331

massaroni@mltw.com

February 7, 2019

**VIA EMAIL & FIRST CLASS MAIL**

Dylan I. Ballard, Esq.
Sheppard, Mullin, Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
dballard@sheppardmullin.com

    Re:    **In re: Dealer Management Systems Antitrust Litigation**
             **MDL No.: 2817**
             **Case No.: 18C864**
             **Authenticom, Inc. v. CDK Global, LLC et al.**
             **W.D. Wis. No.: 3:17-cv-00318-JDP**

Dear Mr. Ballard:

      I write to address the improper and illegal actions of The Reynolds & Reynolds Company ("Reynolds") in breaching its confidentiality agreement with Auto/Mate.

      On November 30, 2016, Auto/Mate and Reynolds entered into a non-discourse agreement, a copy of which is enclosed herewith (the "Confidentially Agreement"). By the terms of the Confidentiality Agreement, Reynolds was required to maintain the confidentiality of all documents disclosed by Auto/Mate in connection with the potential transaction described in the Confidentiality Agreement and to return all such documents to Auto/Mate in the event that the transaction was not to proceed. In addition, in the event that any requests were made of Reynolds in any court proceedings for disclosure of such documents, Reynolds was required to advise Auto/Mate of the request and permit Auto/Mate sufficient time to assert its claims of confidentiality.

      During the deposition of Auto/Mate's corporate representative on December 20, 2018, we learned that Reynolds completely ignored its obligations under the Confidentially Agreement, and that it has disclosed in this litigation confidential and business sensitive documents that it had obtained from Auto/Mate under the terms of the Confidentiality Agreement. Among other things, we have learned that the documents that Reynolds disclosed in the litigation bearing Bates numbers REYMDL00260867 to REYMDL00260875 consist of Auto/Mate's confidential documents. We are shocked and appalled that Reynolds has acted in such blatant disregard of its confidentiality and

www.mltw.com

{M1548006.2}  **MAIN OFFICE** | 677 Broadway, Suite 500, Albany, NY 12207 | **O.** 518-447-3200 | **F.** 518-426-4260
646 Plank Road, Suite 206, Clifton Park, NY 12065 | **O.** 518-383-9200 | **F.** 518-383-1510

Dylan Ballard, Esq.
February 7, 2019
Page 2 of 2

contractual obligations and has disclosed Auto/Mate's confidential documents to the other parties in this litigation, who include Auto/Mate's competitors, business partners, customers and others with an interest in automated DMS systems.

In view of the foregoing, we hereby demand the following:

1. We demand that Reynolds disclose to us all documents that it disclosed in this litigation that were obtained under the terms of the Confidentiality Agreement.

2. We demand that Reynolds destroy all copies of all documents that it obtained from Auto/Mate under the terms of the Confidentiality Agreement and that it confirm to us in writing that it has done so.

3. We demand that Reynolds inform all other parties in this litigation that it produced Auto/Mate documents in violation of the Confidentiality Agreement and that Reynolds further direct all parties in this litigation to destroy all such documents that Reynolds disclosed in violation of the Confidentiality Agreement.

Please respond as soon as possible to confirm that Reynolds will comply with the foregoing. Needless to say, Auto/Mate reserves all rights, contractual or otherwise, based upon Reynolds's improper conduct.

Very truly yours,

McNAMEE LOCHNER P.C.

Christopher Massaroni, Esq.

Enclosure

cc (*via email only*):   Joy Siu, Esq.
Ryan Coyne, Esq.

{M1548006.2}

## NONDISCLOSURE AGREEMENT

This Non-Disclosure Agreement (this "Agreement") is made as of the date indicated below by and between Auto/Mate, Inc. ("the Company"), having its principal place of business at 4 Airline Drive Albany, New York 12205 and Reynolds and Reynolds ("Reynolds" or "you"), having its principal place of business at One Reynolds Way Kettering, OH 45430. Each undersigned party understands that the Company has disclosed or may disclose confidential information. Such information may include without limitation, non-public financial, business or technical information concerning the Company's services, trade secrets, exclusive relationships, techniques, contractors, employees, techniques, methodologies or clients, and which to the extent previously, presently, or subsequently disclosed is hereinafter referred to as "Evaluation Material".

By execution of this "Agreement", you agree (a) to treat all Evaluation Material confidentially; and (b) to observe the terms and conditions set forth herein. For purposes of this Agreement, Evaluation Material shall include all information, regardless of the form in which it is communicated or maintained that contains or otherwise reflects information concerning the Company that you or your Representatives (as defined below) are provided by or on behalf of the Company. The term "Evaluation Material" shall also include all reports, analyses, notes or other information that are based on, contain or reflect any Evaluation Material. You shall not be required to maintain the confidentiality of those portions of the Evaluation Material that (1) become generally available to the public other than as result of a disclosure by you or any of your Representatives, (2) were available to you on a non-confidential basis prior to the disclosure of such Evaluation Material to you pursuant to this Agreement, provided that the source of such information was not bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to the Company with respect to such material or (3) become available to you on a non-confidential basis from a source other than the Company or its agents, advisors or representatives provided that the source of such information was not bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to the Company with respect to such material, or (4) is independently developed by you without breach of this Agreement.

You agree that you will not use the Evaluation Material for any purpose other than determining whether you wish to enter into a strategic relationship with the Company. You agree not to disclose or allow disclosure to others of any Evaluation Material: except that, you may disclose Evaluation Material to your directors, officers, employees, partners, affiliates, agents, advisors or representatives (hereinafter, "Representatives"), to the extent necessary to permit such Representatives to assist you in making the determination whether you wish to enter into a strategic relationship with the Company, provided, however, that you shall ensure that each such Representative is obligated to protect the confidentiality of the Evaluation Materials and you shall be responsible for any breach of this Agreement by any of your Representatives.

In addition, each party agrees that it will not make any disclosure that the parties are having or have had discussions or that you have received Evaluation Material or that the parties are considering a possible relationship; provided that you may make such disclosure if you have received the written opinion of your counsel that such disclosure must be made by you in order that you not commit a violation of law and, prior to such disclosure, you promptly advise and consult with the Company concerning the information you propose to disclose. The parties agree that all media releases and public announcements or disclosures by either party relating to this Agreement are to be coordinated with and consented to by the other party in writing prior to the release thereof.

Neither the Company or any of its affiliates, agents, advisors or representatives (i) have made or make any representation or warranty, expressed or implied, as to the accuracy or completeness of the Evaluation Material or (ii) shall have any liability whatsoever to you or your Representatives relating to or resulting from the use of the Evaluation Material or any efforts therein or omissions therefrom.

In the event that you or anyone to whom you transmit any Evaluation Material in accordance with this Agreement are requested or required, by law, to disclose any Evaluation Material, you will use reasonable efforts to give the Company prompt written notice of such request or requirement so that the Company may seek an appropriate protective order or other remedy and/or waive compliance with the provisions of this Agreement, and you will reasonably cooperate with the Company, at Company's expense, to obtain such protective order. In the event that such protective order or other remedy is not obtained or the Company waives compliance with the relevant provisions of this Agreement, you (or such other persons to whom such request is directed) will furnish only that portion of the Evaluation Material which, in the opinion of your counsel, is legally required to be disclosed and, upon the Company's request, use your commercially reasonable efforts to obtain assurances that confidential treatment will be accorded to such information.

Immediately upon notification by the Company at any time, you will promptly redeliver or destroy all copies of the Evaluation Material, destroy all notes and provide written verification of such event. Notwithstanding the return or destruction of Evaluation Material and notes, you and your Representatives will continue to be bound by your obligations of confidentiality and other obligations hereunder.

You understand that nothing herein (i) requires the disclosure of any Evaluation Material, or (ii) shall be the sale or license of, or be deemed to grant any rights under, any intellectual property of the Company. In addition, this Agreement does not obligate either party to pursue a transaction with the other party, to enter into any discussions or negotiations with the other party, or to consummate any transaction involving the other party, except as may be provided in a separate written agreement executed by both parties.

Company acknowledges that you may currently be developing information or may in the future develop information, may be receiving or may in the future receive information, or may be exploring or may in the future explore other opportunities, any of which may be similar or related to the transactions contemplated by this Agreement. Accordingly, nothing in this Agreement will be construed as a representation or agreement that you will not develop or have developed for it products, concepts, systems or techniques that are similar to or compete with the products, concepts, systems or techniques contemplated by or embodied in the Evaluation Materials, provided that you do not otherwise violate your obligations under this Agreement in connection with such development.

You agree that money damages may not be a sufficient remedy for any breach of this Agreement by you or your Representatives, and that Company and its affiliates may suffer immediate and irreparable injury as a result thereof, and that in addition to all other remedies the Company shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach.

Neither party may assign this Agreement or any of its rights or obligations hereunder without the prior written consent of the other party, which will not be unreasonably withheld.
This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior and/or contemporaneous agreements between the parties regarding this subject matter. All modifications of, waivers of and amendments to this Agreement or any part hereof must be in writing signed on behalf of you and the Company. It is further understood and agreed that no

failure or delay by either party in exercising any right, power or privilege under this Agreement shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise of any right, power or privilege hereunder.

This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the conflicts of law provisions thereof. Any right to trial by jury with respect to any claim, action, suit or proceeding arising out of this Agreement or any of the matters contemplated hereby is waived. You hereby submit to the non-exclusive jurisdiction of the Federal and State courts located in New York in connection with any dispute related to this Agreement or any of the matters contemplated hereby.

In the event that any provision or portion of this letter is determined to be invalid or unenforceable for any reason, in whole or in part, the remaining provisions of this letter shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by applicable law.

This Agreement will remain in effect for 24 months from the date hereof unless terminated earlier by either party as provided herein.

If you are in agreement with the foregoing, please so indicate by signing, dating and returning one copy of this Agreement, which will constitute our agreement with respect to the matters set forth herein.

Sincerely,

_____     Date: __11.30.16__
Bill Lamm
Presidio Technology Partners
As exclusive advisor to Auto/Mate, Inc.


Agreed and Accepted:

_____     Date: 11/30/2016
Robert Burnett
SVP Corporate Development
The Reynolds and Reynolds Company

# SheppardMullin

Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
202.747.1900 main
202.747.1901 fax
www.sheppardmullin.com

415.774.2914 direct
dballard@sheppardmullin.com

February 15, 2019

File Number: 48KZ-266044

*VIA EMAIL*

Christopher Massaroni, Esq.
McNamee Lochner P.C.
677 Broadway, Suite 500
Albany, NY 12207
massaroni@mltw.com

Re:   *In re: DMS Antitrust Litigation* MDL No. 2817, Case No. 18-cv-00864 (N.D. Ill.)

Dear Chris,

I write in response to your letter to me dated February 7, 2019, in which you accuse Reynolds of breaching a Nondisclosure Agreement with Auto/Mate ("NDA") by producing two documents in response to discovery requests propounded in the above litigation, and demand that Reynolds disclose and destroy "all copies of all documents that it obtained from Auto/Mate" pursuant to the NDA.

Auto/Mate's demands are baseless. As you know, prior to Reynolds's production of the documents in question, the Court entered a detailed Confidentiality Order safeguarding all confidential documents produced by any party or non-party to the litigation. *See* MDL Dkt. No. 104, § I(3)(A). Reynolds designated both of the documents you reference "Highly Confidential" pursuant to this Order, thereby ensuring that the documents may only be shared with outside counsel for the parties. The U.S. Magistrate Judge responsible for overseeing discovery in this litigation has already held that such designation is "sufficient to protect a party or third-party's interest" in confidentiality.[1]  MDL Dkt. No. 461 at 6-7.

---

[1] Your conjecture—which you restate in a separate letter to me dated February 7, 2019—that the parties to this litigation will simply violate the terms of the Confidentiality Order, has been categorically rejected by the Court. *See In re Dealer Management Systems Antitrust Litigation*, No. 18CV0864, 2018 WL 6413199 at *4 (N.D. Ill. December 6, 2018) ("If a party or non-party were able to bar an opponent's litigation counsel from having access to confidential or highly confidential information on the basis of speculation and unsupported supposition that counsel would misuse that information and violate a court order in the process, the already high cost of federal litigation would increase astronomically not only in this case but countless others.").

**SheppardMullin**

Christopher Massaroni, Esq.
February 15, 2019
Page 2

Indeed, there is extensive case law confirming that the existence of an NDA has no effect on a party's obligations to comply with federal discovery, particularly where a protective order is already in place. *See, e.g., Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) ("No one can 'agree' with someone else that a stranger's resort to discovery under the Federal Rules of Civil Procedure will be cut off."); *JAB Distributors, LLC v. London Luxury, LLC*, No. 09-CV-5831, 2010 WL 4008193 at *4 (N.D. Ill October 13, 2010) (rejecting party's argument "that it cannot produce the sought-after financial information because that information is the subject of a confidentiality agreement….").

Accordingly, your demand for destruction of documents produced in federal discovery in ongoing litigation makes no sense, and is not supported by the NDA you attach to your letter. The relevant paragraph of the NDA provides that, where disclosure of documents is required by law, Reynolds need only undertake "reasonable efforts" to ensure Auto/Mate has an opportunity to obtain a protective order. (NDA, p. 2). That requirement is satisfied where, as here, there is already a protective order in place, and Reynolds has taken the appropriate steps to ensure it protects the documents in question. I also observe that the NDA attached to your letter expired by its terms in November 2018 (twenty-four months after it was executed).

In short, Reynolds strongly disagrees that it has breached the NDA attached to your letter, that Auto/Mate has suffered any injury under the NDA, or that Auto/Mate has any basis for demanding the destruction of documents. Please feel free to contact me if you would like to discuss the matter further.

Best regards,

Sincerely,

Dylan I. Ballard
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Counsel for Defendant The Reynolds and Reynolds Company

SMRH:228625235.1