**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION** | MDL No. 2817<br>Case No. 18 C 864<br><br>Magistrate Judge Jeffrey T. Gilbert |

**ORDER**

This matter is before the Court on Defendant Reynolds and Reynolds Company's Motion to Compel Plaintiff MVSC to Produce its Settlement Agreement and 3PA Agreement with CDK [ECF No. 929]. For the reasons discussed below, the Motion to Compel [ECF No. 929] is denied.

**STATEMENT**

**I.**

The Court assumes familiarity with the underlying facts in this case from prior opinions and orders in this case. A brief chronology of facts relevant to this Motion [ECF No. 929], therefore, should suffice. In November 2017, Plaintiff Motor Vehicle Software Corporation ("MVSC") filed its Second Amended Complaint against Defendants Reynolds and Reynolds Company ("Reynolds"), CDK Global, LLC ("CDK"), and Computerized Vehicle Registration, Inc. ("CVR") (collectively, "Defendants"). According to MVSC, Defendants conspired to block MVSC's access to data on Reynolds's and CDK's dealer management systems ("DMSs") by quoting prices so high that they were "economically infeasible" for MVSC to obtain access to either Reynolds's RCI program and CDK's 3PA program for data integration services or through independent providers of data integration services like Plaintiff Authenticom Inc. *See* MVSC Second Amended Compl. [ECF No. 76], at ¶¶ 123-27.

Fact discovery closed on April 30, 2019. On August 26, 2019, MVSC served its expert reports—one on liability and a second one on causation and damages. Then, on October 15, 2019, MVSC voluntarily dismissed all claims against CDK and CVR pursuant to a Settlement

Agreement with CDK,[1] leaving only its conspiracy claim against Reynolds,[2] and also entered into the 3PA Agreement with CDK at the same time. As a result of its settlement with CDK, MVSC now is a participant in CDK's 3PA (third party application) program. *See* [ECF No. 931-3].

On November 15, 2019, after the announcement of the MVSC-CDK settlement, Reynolds served its expert rebuttal reports. Thereafter, on December 19, 2019, MVSC served its experts' reply reports. Neither Reynolds's expert rebuttal reports nor MVSC's expert reply reports contained any substantive discussion of the settlement between MVSC and CDK. Reynolds then deposed MVSC's experts in January 2020. Both of MVSC's experts testified they had not seen the Settlement Agreement and were not familiar with the terms of the settlement between MVSC and CDK. On January 31, 2020, after completion of MVSC's expert depositions, Reynolds sent a letter to MVSC asking it to produce copies of its Settlement Agreement with CDK and the 3PA Agreement (collectively, the "Agreements"). After meeting and conferring, MVSC refused to produce the Agreements, and on March 18, 2020, Reynolds filed its Motion to Compel [ECF No. 929].[3]

The Court notes that it previously decided a motion filed by the Dealership Class Plaintiffs which sought to compel production of a settlement agreement between former Plaintiff Cox Automotive, Inc. and CDK. *See* August 16, 2019 Order [ECF No. 748]. The Court incorporates from that Order its discussion and analysis of the legal standard governing when or if a confidential settlement agreement should be disclosed to other parties in a multi-party case. *Id.* at 1-2. In that Order, the Court explained that none of the arguments put forth by the Dealership Class Plaintiffs was sufficient to override the settling parties' interest in keeping the terms of their settlement confidential, and the Court denied the Dealership Class Plaintiffs' motion to compel. *Id.* at 2-3. Although the circumstances before the Court now concerning the settlement between MVSC and CDK are somewhat different than those before the Court with respect to the earlier settlement between Cox Automotive and CDK, and Reynolds's arguments in favor of its Motion to Compel

---

[1] MVSC dismissed its claims against both CDK and CVR as a result of its settlement with CDK, but the settlement itself and the Settlement Agreement apparently are between only MVSC and CDK. Reynolds's Reply in Support of its Motion to Compel [ECF No. 1014], at 10-11. Reynolds and CDK are co-owners of CVR, so Reynolds expected to learn the settlement terms given its part ownership of CVR, but that did not happen because "CDK . . . would not or could not disclose the settlement to Reynolds." *Id.* at 11.

[2] The only claim MVSC has asserted against Reynolds is for conspiracy. There are no claims based on any unilateral conduct by Reynolds. Second Amended Complaint [ECF No. 76].

[3] Also, on March 18, 2020, Reynolds filed a Motion for Leave to File its Proposed Amended Answer and Affirmative Defenses [ECF No. 925] and a Memorandum of Law in Support of that Motion for Leave [ECF No. 927]. On March 24, 2020, the assigned District Judge entered an agreed briefing schedule on Reynolds's Motion for Leave to File its Proposed Amended Answer and Affirmative Defenses [ECF 925]. [ECF No. 934]. On May 15, 2020, MVSC filed a Consolidated Opposition to Reynolds's Motion to Compel MVSC to Produce its Settlement with CDK and Reynolds's Motion to Amend its Answer and Affirmative Defenses [ECF No. 947]. On June 12, 2020, Reynolds then filed a Consolidated Reply in Support of its Motions (1) To Compel Plaintiff MVSC to Produce its Settlement Agreement and 3PA Agreement with CDK, and (2) For Leave to File its Proposed Amended Answer and Affirmative Defenses [ECF No. 1014]. Reynolds's Motion for Leave to File its Proposed Amended Answer and Affirmative Defenses [ECF No. 925] is a dispositive motion and is pending before the District Judge.

[ECF No. 929] are more developed than the arguments previously put forth by the Dealership Class Plaintiffs, the Court comes to the same conclusion as it did earlier for similar but also for additional reasons as discussed below.

II.

Reynolds advances three arguments in support of its Motion to Compel Plaintiff MVSC to Produce its Settlement Agreement and 3PA Agreement with CDK [ECF No. 929]. Reynolds argues that: (1) the MVSC-CDK Settlement Agreement and 3PA Agreement are highly relevant documents and should be produced because they go to the heart of MVSC's claim against Reynolds and can be used to defend against MVSC's claims and to rebut MVSC's experts' reports on liability and damages; (2) the Settlement Agreement and 3PA Agreement are necessary for Reynolds to be able to calculate the setoff amount for any potential damages that could be awarded to MVSC; and (3) the Agreements are relevant for Reynolds to understand issues of witness credibility and any potential bias.

MVSC objects to producing the Settlement Agreement and 3PA Agreement. In opposition to Reynolds's Motion to Compel, MVSC raises four arguments. MVSC argues that: (1) the Motion to Compel is not timely; (2) Reynolds fails to overcome MVSC's and CDK's interest in keeping the terms of the Settlement Agreement and 3PA Agreement confidential and the Agreements are not sufficiently relevant to overcome MVSC's and CDK's confidentiality interests; (3) Reynolds's setoff argument is premature and procedurally barred; and (4) Reynolds's concerns about witness credibility and bias are speculative and insufficient. *See* [ECF No. 947]. The Court will address the parties' arguments in turn.

While there is no *de jure* settlement privilege that Reynolds needs to overcome, court have recognized that settling parties have an interest in keeping their confidential settlement confidential, and a party seeking the disclosure of a confidential settlement agreement between two other parties in the same case must articulate something more than a bald assertion that the settlement agreement is relevant and it needs to see the agreement. *See* August 16, 2019 Order [ECF No. 748], at 1-2 (citing cases). Reynolds argues, and the Court agrees, this is not a special or heightened standard or burden that a party in a multiparty case must meet when seeking disclosure of the settlement terms agreed to by two other parties in a multi-party case. The applicable standard remains the familiar requirement that the information sought be relevant and proportional to the needs of the case within the meaning of Federal Rule of Civil Procedure 26(b)(1). The Court still must balance the relevance of the information sought with the burden on, and interests of, the opposing party while also weighing whether the discovery is proportional to the needs of the case. *Id.* That analysis necessarily includes consideration of the settling party's interest in confidentiality as well as the non-settling party's interest in obtaining the information it is seeking and the posture of the case when the information is being sought.

MVSC first argues that Reynolds's Motion to Compel is untimely because it waited too long to seek production of the Settlement Agreement and 3PA Agreement. The Court is not denying Reynolds's Motion to Compel [ECF No. 929] based on timeliness, but the fact that Reynolds waited so long to seek production of the Agreements does undercut, to some extent, its argument that the Agreements are highly relevant to its experts' analyses and its defense of this

3

case. If the Agreements were so critical to Reynolds's defense and to its experts' analyses, then the Court questions why Reynolds did not seek to obtain the Agreements promptly upon learning that MVSC had settled with CDK, and that Reynolds would not be privy to the settlement terms as a result of its co-ownership of CVR. Reynolds seems to say it was waiting to see what MVSC's experts would say about the settlement in their reply reports and during their depositions and, when they said nothing, Reynolds moved to compel. But Reynolds also waited to seek the Agreements until after its own experts had produced their reports. It was only after all the expert depositions were completed that Reynolds sought production of the Agreements. Given this chronology, Reynolds's argument that these Agreements are crucial to its defense of the case or its experts' analyses loses some of its ardor.[4]

The Court appreciates what may have been a strategic decision by Reynolds to wait until expert discovery was done and it could file its summary judgment motion without getting behind the MVSC-CDK settlement but, in the Court's view, that decision still undercuts Reynolds's argument that the settlement documents are somehow crucial to its ability to defend this case properly. Reynolds's experts apparently did not need the Agreements to render their opinions in this case. Moreover, the fact that the settlement occurred and that MVSC and CDK entered into a business relationship via the 3PA Agreement is public knowledge. Reynolds does not need the actual Settlement Agreement to argue that the alleged conspiracy between CDK and Reynolds ended when MVSC settled with CDK. Indeed, Reynolds argues in support of its motion for summary judgment in this case that MVSC's settlement with CDK ended any possible conspiracy between CDK and Reynolds as of the date of the settlement, and further that MVSC's alleged damages from such a conspiracy ended as of the date of the settlement as well. *See* Reynolds's Memorandum in Support of Motion for Summary Judgment [ECF No. 955], at 37. Moreover, MVSC appears not to have responded to that argument, so Reynolds argues in its Reply that MVSC thereby has conceded this issue. *See* Reynolds's Reply Memorandum in Support of its Motion for Summary Judgment [ECF No. 1121], at 19.

The Court also appreciates that MVSC's experts, unaware of the MVSC-CDK settlement, testified that the conspiracy between CDK and Reynolds is continuing and that the damages resulting from that conspiracy also will continue through trial. Reynolds says it needs the Agreements to rebut what MVSC's experts have said. The strategic decision by MVSC to keep from its experts the settlement terms and the 3PA Agreement may, as Reynolds seems to argue, make them vulnerable to attack at trial for not having been provided with (or insisted on seeing) information that potentially is relevant to their expert opinions and analyses. It appears, however, that Reynolds does not need the Agreements themselves to make those arguments either. As Reynolds points out, Judge Kocoras, under similar circumstances, held that various defendants' settlements with the plaintiffs in a multi-party antitrust case terminated the existence of the conspiracy as a matter of law as of the dates of the settlements. *See* Exhibit K to Reynolds's Memorandum in Support of Motion to Compel [ECF No. 931-11], Rulings on Motions In Limine at 11, *In re Brand Name Prescription Drug Antitrust Litigation,* No. 94-cv-897, MDL No. 997

---

[4] As discussed above, MVSC settled with CDK on October 15, 2019. Reynolds did not seek production of the Agreements at that time and one month later, Reynolds served it expert rebuttal reports on November 15, 2019. MVSC's experts then served their reply reports on December 19, 2019. None of these reports contained any reference to or discussion of the settlement between MVSC and CDK or the 3PA Agreement, and the Agreements were not discussed during any of the expert depositions.

(N.D. Ill. Sept. 14, 1998) (Kocoras, J.).  *See also Drug Mart Pharm. Corp. v. Am. Home Prods. Corp.,* 288 F.Supp.2d 355 (E.D.N.Y. 2003). And, again, Reynolds has made these arguments in support of its pending motion for summary judgment.  *See* Reynolds's Memorandum in Support of Motion for Summary Judgment [ECF No. 955], at 37; Reynolds's Reply Memorandum in Support of its Motion for Summary Judgment [ECF No. 1121], at 19.

It is difficult to see how MVSC's experts will be able to opine that MVSC's damages are not affected at all by MVSC's settlement with CDK particularly if they are denied access to any information about the settlement or its terms. MVSC's damages expert seemed to say as much when he was deposed.  He conceded he would need to know the settlement terms to be able to fully opine concerning MVSC's damages caused by the alleged conspiracy between CDK and Reynolds, and he said he may need that information to be able to testify fully about MVSC's damages at trial.  *See* Transcript of Deposition of Gordon Klein, Exhibit H to Reynolds's Memorandum in Support of Motion to Compel [ECF No. 931-8].  MVSC seems to think Mr. Klein can supplement his expert report and opinion up to 30 days before trial.  *See* MVSC's Opposition to Reynolds's Motion to Exclude the Expert Testimony of Gordon Klein [ECF No. 1009], at 10-12. If MVSC updates the information it has provided to Mr. Klein and he revises his expert disclosure and/or opinion (and is allowed to do so), then it is hard to see how MVSC can keep that information from Reynolds and its experts. With discovery closed, however, these are issues that Reynolds will need to pursue in a motion *in limine* before the trial judge in this case, or in some other pretrial motion, but it is not, in the Court's view, a reason to reopen expert discovery now to allow Reynolds to further burnish its defense to arguments that MVSC's experts are not currently making, and that Reynolds, in fact, is seeking to exclude from the case.[5]

To be clear, the Court is not saying that the information Reynolds wants the Court to compel MVSC to produce is completely irrelevant.  Even if the Agreements contain relevant information, however, as Reynolds argues they do, Reynolds's interest in obtaining that information now as the case currently is postured does not outweigh MVSC's interest in keeping confidential the terms of its settlement with CDK and in avoiding another round of discovery into its new 3PA Agreement with CDK. Against the background discussed above, and given the parties' strategic decisions during expert discovery, the Court is not inclined to allow Reynolds to open up a new front of discovery into the MVSC-CDK settlement so Reynolds might develop more information in support of its argument that the alleged conspiracy and MVSC's alleged damages ended when MVSC settled with CDK and dismissed its claims against CDK and CVR. The Court does not see how allowing Reynolds to pursue that tack now would not delay the ultimate resolution of this case to MVSC's detriment and to the interests of the judicial system enshrined in Federal Rule of Civil Procedure 1.

Reynolds also argues that the Agreements are relevant to determine the price MVSC is paying to participate in CDK's 3PA program as of October 2019, which Reynolds says could disprove MVSC's allegations that the price quotes from Reynolds (in 2014) and CDK (in 2015

---

[5] In fact, Reynolds already has filed a motion to exclude the opinions of MVSC's damages expert, Mr, Klein, in part because he did not consider the impact of MVSC's settlement with CDK on MVSC's damages. *See* Reynolds's Memorandum in Support of its Motion to Exclude the Opinions and Proffered Testimony of Plaintiff MVSC's Expert Gordon Klein [ECF No. 865].

and 2016) were economically infeasible. The Court understands how the price MVSC now is paying CDK could be a relevant data point in the analysis Reynolds wants to do. But circumstances also undisputedly have changed since 2014, 2015, and 2016 such that the price MVSC currently pays to participate in CDK's 3PA programs likely is influenced by many different or at least additional factors than were extant in 2015 and 2016. That does not mean the business deal between MVSC and CDK today as embodied in the 3PA Agreement is irrelevant to the issues in this case. But with discovery long closed and the case moving toward disposition on the merits one way or another, the Court is not convinced that any such price comparison or analysis that Reynolds now wants to make would be so relevant or probative or, said differently, probative enough to overcome MVSC's interest in maintaining the confidentiality of the Settlement Agreement.

Equally important, Reynolds's arguments are not enough to overcome MVSC's interest as the plaintiff in this case in not having discovery reopened so that Reynolds can probe the 3PA Agreement (which MVSC says is separate from the Settlement Agreement, MVSC's Opposition Memorandum [ECF No. 947], at 9, n.6) with the attendant delay that would involve. *See* January 17, 2019 Order [ECF No. 498], at 1-3 (citing *Robinson v. Stanley*, No. 06 C 5158, 2010 WL 1005736, at *5 (N.D. Ill. Mar. 17, 2010) (Cole, M.J.) ("In all cases there comes a time when discovery must end. . . . The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest."). Again, if this information was so crucial to Reynolds's defense and to its expert's damage analysis, one would think Reynolds would have sought production of the 3PA Agreement sooner than it did.

Reynolds asserts two additional arguments: (1) the Settlement Agreement and 3PA Agreement are necessary for Reynolds to be able to calculate the setoff amount for any potential damages; and (2) the Agreements are relevant for Reynolds to understand issues of witness credibility and any potential bias. The Court declines to address Reynolds's arguments about the calculation of any setoff because it agrees with MVSC that argument now is somewhat premature since Reynolds did not pled setoff as an affirmative defense. Further, as discussed above, the same day Reynolds filed its Motion to Compel [ECF No. 929] that is the subject of this Order, Reynolds also filed its Motion for Leave to Filed its Proposed Amended Answer and Affirmative Defenses [ECF No. 925]. That motion is fully briefed and pending before the District Judge.

Further, even if the Agreements are relevant to some extent to a setoff calculation, that also appears to be premature at this stage of the case with summary judgment motions pending and no trial date yet set. Calculation of any potential setoff of damages would be relevant only after MVSC obtained a judgment in this case. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971) ("[A] plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another coconspirator; the law, that is, does not permit a plaintiff to recover double payment."). Therefore, the Court will not order production of the materials Reynolds is seeking as relevant to any setoff defense or calculation both because production of that information would be premature before MVSC has obtained a judgment against which Reynolds's setoff argument might be made and because Reynolds has not yet pled setoff as an affirmative defense (to the extent it must be so pled before it can be advanced as a defense by Reynolds).

As to Reynolds's argument on witness credibility and potential bias, the Court is not persuaded by them. For similar reasons as are set forth in the Court August 16, 2019 Order, the Court agrees with MVSC that Reynolds's concerns about witness credibility, prejudice, and potential bias are inchoate, speculative, and not properly the subject of discovery at this time. *See* August 16, 2019 Order [ECF No. 748], at 3. Furthermore, in response to Reynolds's Motion to Compel, MVSC specifically represents that nothing in the MVSC-CDK settlement includes a requirement of cooperation in this litigation. *See* MVSC's Opposition to Reynolds's Motion to Compel [ECF No. 947], at 13 (citing Ex. H, Declaration of Joe Nemelka). In reply, Reynolds notes (and the Court agrees) that MVSC could have provided that information to Reynolds during the meet and confer process before Reynolds filed its Motion. *See* Reynolds's Reply Memorandum in Support of its Motion to Compel [ECF No. 1014], at 8-9. If MVSC had done so, Reynolds at least implies that it would not have made the credibility and bias argument in support of its Motion to Compel or, at the very least, its argument on that score potentially would have been different. *Id.*

## CONCLUSION

Accordingly, for all the reasons discussed herein, Defendant Reynolds and Reynolds Company's Motion to Compel Plaintiff MVSC to Produce its Settlement Agreement and 3PA Agreement with CDK [ECF No. 929] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
Unites States Magistrate Judge

Dated: October 27, 2020