**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION | MDL No. 2817 <br> Case No. 18-cv-00864 |
| This Document Relates To: | Hon. Robert M. Dow, Jr. <br> Magistrate Judge Jeffrey T. Gilbert |
| *Authenticom, Inc. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00868 (N.D. Ill.) | **PUBLIC-REDACTED** |
| *Motor Vehicle Software Corp. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00865 (N.D. Ill.) | |

**PLAINTIFFS AUTHENTICOM'S AND MVSC'S MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR SANCTIONS AGAINST**
**DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 4

    I.    Brockman's Central Role in the Conspiracy With CDK ....................................... 4

    II.    The Gaps In Reynolds's Document Production...................................................... 5

    III.    The United States' Indictment of Brockman ......................................................... 6

    IV.    Post-Indictment Investigation ................................................................................ 8

STANDARD ........................................................................................................... 10

ARGUMENT .......................................................................................................... 10

    I.    Brockman Intentionally Destroyed Relevant Evidence ....................................... 11

    II.    Reynolds Had a Duty To Preserve Brockman's Emails In August 2016 ............. 13

    III.    Plaintiffs Have Been Prejudiced By Brockman's Destruction Of Evidence ........ 15

    IV.    Sanctions Are Necessary To Cure the Prejudice To Plaintiffs ............................. 16

        A.    The Court Should Bar Reynolds From Contesting The Existence Of The Conspiracy .............................................................................................. 17

        B.    The Jury Should Be Instructed That It Is Permitted To Draw Adverse Inferences Against Reynolds Because Of Its Intentional Document Destruction ......................................................................................... 20

        C.    Reynolds Should Be Ordered To Pay Attorneys' Fees And Costs........... 21

CONCLUSION....................................................................................................... 22

# TABLE OF AUTHORITIES

Page

## CASES

*Anderson v. Cryovac, Inc.*,
  862 F. 2d 910 (1st Cir. 1988)............................................................................ 11, 16

*Authenticom, Inc. v. CDK Global, LLC*,
  874 F.3d 1019 (7th Cir. 2017) ............................................................................... 1

*Barbera v. Pearson Educ., Inc.*,
  906 F.3d 621 (7th Cir. 2018) ................................................................................ 18

*Barnhill v. United States*,
  11 F.3d 1360 (7th Cir. 1993), *objections sustained*, 2012 WL 3307364
  (N.D. Ill. Aug. 13, 2012)....................................................................................... 15

*Borum v. Brentwood Vill., LLC*,
  332 F.R.D. 38 (D.D.C. 2019)................................................................................. 15

*Bryant v. Gardner*,
  587 F. Supp. 2d 951 (N.D. Ill. 2008) .................................................................... 19

*Butterworth v. Lab. Corp. of Am. Holdings*,
  2012 WL 12864185 (M.D. Fla. Apr. 23, 2012)..................................................... 14

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
  243 F.3d 93 (2d Cir. 2001).................................................................................... 14

*Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*,
  2020 WL 5849096 (S.D.N.Y. Sept. 30, 2020)...................................................... 18

*Chi. Mgmt. Consulting Grp., Inc. In re*,
  929 F.3d 803 (7th Cir. 2019) ................................................................................ 16

*China Ocean Shipping (Grp.) Co. v. Simone Metals Inc.*,
  1999 WL 966443 (N.D. Ill. Sept. 30, 1999) ......................................................... 13

*Clear-View Techs., Inc. v. Rasnick*,
  2015 WL 3453529 (N.D. Cal. May 29, 2015)....................................................... 17

*Cohn v. Guaranteed Rate, Inc.*,
  318 F.R.D. 350 (N.D. Ill. 2016)............................................................................ 11

*Collins v. Illinois*,
  554 F.3d 693 (7th Cir. 2009) ................................................................................ 10

*Commc'ns Center, Inc. v. Hewitt,*
    2005 WL 3277983 (E.D. Cal. Apr. 5, 2005) .................................................................... 19

*Danis v. USN Commc'ns, Inc.,*
    2000 WL 1694325 (N.D. Ill. Oct. 23, 2000) ................................................................... 15

*Domanus v. Lewicki,*
    284 F.R.D. 379 (N.D. Ill. 2012), *objections sustained,*
    2012 WL 3307364 (N.D. Ill. Aug. 13, 2012) ................................................................. 15

*Domanus v. Lewicki,*
    2012 WL 3307364 (N.D. Ill. Aug. 13, 2012) ................................................................. 19

*DR Distribs., LLC v. 21 Century Smoking, Inc.,*
    2021 WL 185082 (N.D. Ill. Jan. 19, 2021) ............................................................... 10, 19

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
    803 F. Supp. 2d 469 (E.D. Va. 2011) .............................................................................. 13

*Faas v. Sears, Roebuck & Co.,*
    532 F.3d 633 (7th Cir. 2008) ........................................................................................... 11

*Flair Airlines, Ltd. v. Gregor, LLC,*
    2018 WL 8445779 (N.D. Ill. Dec. 14, 2018) ................................................................. 10

*FTC v. Asia Pac. Telecom, Inc.,*
    788 F. Supp. 2d 779 (N.D. Ill. 2011) ........................................................................ 10, 13

*GN Netcom, Inc. v. Plantronics, Inc.,*
    930 F.3d 76, 85-89√ (3d Cir. 2019) ................................................................................ 17

*Goodyear Tire & Rubber Co. v. Haeger,*
    137 S. Ct. 1178 (2017) ..................................................................................................... 21

*Grochocinski v. Schlossberg,*
    402 B.R. 825 (N.D. Ill. 2009) ......................................................................................... 19

*Korean Airlines Co. In re,*
    642 F.3d 685, 699 (9th Cir. 2011) .................................................................................. 17

*Kronisch v. United States,*
    150 F.3d 112 (2d Cir. 1998) ................................................................................. 14, 16, 21

*Kucala Enters., Ltd. v. Auto Wax Co.,*
    2003 WL 21230605 (N.D. Ill. May 27, 2003), *aff'd in part,* 2003 WL 22433095
    (N.D. Ill. Oct. 27, 2003) .................................................................................................. 19

*Leon v. IDX Sys. Corp.*,
　464 F.3d 951 (9th Cir. 2006) ........................................................................... 15

*M & T Mortg. Corp. v. Miller*,
　2007 WL 2403565 (E.D.N.Y. Aug. 17, 2007) .......................................................... 17

*MacNeil Auto. Prods. Ltd. v. Cannon Auto. Ltd.*,
　2010 WL 5904124 (N.D. Ill. Nov. 2, 2010) ...................................................... 19, 21

*MacNeil Auto. Prods. Ltd. v. Cannon Auto. Ltd.*,
　2011 WL 4828889 (N.D. Ill. Oct. 7, 2011)................................................................ 22

*Mathis v. John Morden Buick, Inc.*,
　136 F.3d 1153 (7th Cir. 1998) ........................................................................... 20

*NLRB v. Dorothy Shamrock Coal Co.*,
　833 F.2d 1263 (7th Cir. 1987) ........................................................................... 12

*Nursing Home Pension Fund v. Oracle Corp.*,
　254 F.R.D. 559 (N.D. Cal. 2008).......................................................................... 16

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
　2012 WL 10817204 (M.D. Fla. Nov. 30, 2012) ...................................................... 19

*Partington v. Broyhill Furniture Indus., Inc.*,
　999 F.2d 269 (7th Cir. 1993) ............................................................................. 15

*Plunk v. Vill. of Elwood, Ill.*,
　2009 WL 1444436 (N.D. Ill. May 20, 2009)........................................................... 21

*Samsung Elecs. Co. v. Rambus, Inc.*,
　439 F. Supp. 2d 524 (E.D. Va. 2006), *vacated*, 523 F.3d 1374 (Fed. Cir. 2008).................... 14

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*,
　748 F.3d 1354 (Fed. Cir. 2014)............................................................................ 14

*Schmalz v. Vill. of N. Riverside*,
　2018 WL 1704109 (N.D. Ill. Mar. 23, 2018)........................................................... 11

*SEC v. Cherif*,
　933 F.2d 403 (7th Cir. 1991) ............................................................................. 12

*Siani v. State Univ. of New York at Farmingdale*,
　2010 WL 3170664 (E.D.N.Y. Aug. 10, 2010)........................................................... 14

*Taylor v. Mitre Corp.*,
　2012 WL 5473573 (E.D. Va. Nov. 8, 2012).............................................................. 19

*Text Messaging Antitrust Litig., In re,*
  46 F. Supp. 3d 788 (N.D. Ill. 2014), *aff'd*, 782 F.3d 867 (7th Cir. 2015) ............................... 15

*Victor Stanley, Inc. v. Creative Pipe, Inc.,*
  269 F.R.D. 497 (D. Md. 2010) ................................................................................................. 13

*WeRide Corp. v. Kun Huang,*
  2020 WL 1967209 (N.D. Cal. Apr. 24, 2020) ................................................................... 11-12

*Williams v. Am. Coll. of Educ., Inc.,*
  2019 WL 4412801 (N.D. Ill. Sept. 16, 2019) ......................................................................... 15

## STATUTES, RULES AND LEGISLATIVE MATERIAL

28 U.S.C. § 1407(a) ........................................................................................................................ 17

Fed. R. Civ. P. 37(e) ............................................................................................................. 3, 10, 11

Fed. R. Civ. P. 37(e)(2) ............................................................................................................. 10, 11

Fed. R. Civ. P. 37(e)(2)(A) ............................................................................................................ 15

Fed. R. Civ. P. 37(e)(2), advisory committee's note to 2015 amendment .................................... 20

H.R. Rep. No. 90-1130, 1968 U.S.C.C.A.N. 1898 (1968) ........................................................... 17

## OTHER AUTHORITIES

Department of Justice, Office of Public Affairs, *CEO of Multibillion-dollar Software
  Company Indicted for Decades-long Tax Evasion and Wire Fraud Schemes* (Oct. 15, 2020),
  https://www.justice.gov/opa/pr/ceo-multibillion-dollar-software-company-indicted-decades-
  long-tax-evasion-and-wire-fraud .................................................................................................. 6

Clare Duffy, *Software CEO Robert Brockman charged in $2 billion tax evasion case,*
  CNN Business (Oct. 17, 2020), https://edition.cnn.com/2020/10/17/business/robert-brockman-
  tax-evasion-charges/index.html ..................................................................................................... 6

Jamie S. Gorelick et al., *Destruction of Evidence* (2020) ...................................................... 15, 21

Christopher Helman, *The Manipulative, Little Known Billionaire Who Nearly Ruined The
  Country's Richest Black Person*, Forbes (Feb. 5, 2021) ............................................................. 7

Margaret M. Koesel & Tracey L. Turnbull, *Spoliation of Evidence* (A.B.A. 3d ed. 2013) ......... 21

Michael Levenson, *U.S. Brings 'Largest Ever Tax Charge' Against Tech Executive*, NY Times (Oct. 15, 2020), https://www.nytimes.com/2020/10/15/business/ robert-brockman-tax-evasion.html ............................................................................... 6

Laura Saunders, *The IRS Reels in a Whale of an Offshore Tax Cheat – and Goes for Another*, Wall St. J. (Oct. 23, 2020 ), https://www.wsj.com/articles/the-irs-reels-in-a-whale-of-an- offshore-tax-cheatand-goes-for-another-11603445399?mod=searchresults_pos2&page=1 ...... 6

David Voreacos and Neil Weinberg, *Houston Tech Mogul Indicted for 'Largest-Ever Tax Charge'*, Bloomberg News (Oct. 15, 2020), https://www.bnnbloomberg.ca/tech-mogul- brockman-is-charged-with-tax-evasion-laundering-1.1508731 ............................................... 6

## INTRODUCTION

The Reynolds and Reynolds Company ("Reynolds") should be sanctioned because its CEO Robert Brockman intentionally destroyed material evidence of Reynolds's conspiracy with CDK Global, LLC ("CDK"). Plaintiffs bring this motion despite ample evidence in the record to support jury verdicts in their favor and despite the risk that Reynolds may try to use litigation over its own spoliation as a basis to derail the existing case schedule that is vitally important to Plaintiffs. *See Authenticom, Inc. v. CDK Global, LLC*, 874 F.3d 1019, 1021 (7th Cir. 2017) ("[W]e urge the district court to do what it can to expedite its final judgment."). The recently disclosed evidence of Reynolds's spoliation is sufficiently stark, however, that Plaintiffs bring this matter to the Court now. Plaintiffs seek to hold Reynolds to the evidentiary consequences of its serious misdeeds; resolving these issues should not interfere with the orderly resolution of pending pretrial matters.

On October 15, 2020, the United States unsealed an indictment against Brockman, charging him with evading taxes on more than $2 billion in income through a series of offshore entities through which he owned Reynolds – the largest-ever case of tax evasion by a United States citizen. *See* Ex. 1. In that indictment, the United States avers based on a first-hand account by an attorney for Brockman – Evatt Tamine (who has since become a cooperating witness) – that Brockman intentionally destroyed evidence relating to the criminal tax inquiry from June 10, 2016 to October 14, 2016 by instructing Tamine to shred documents and destroy hard drives with hammers. *Id.* ¶¶ 195, 196, 198. In addition, Brockman used a computer program called "Evidence Eliminator" to delete files from his Reynolds computers. *Id.* ¶ 47; *infra* pp. 7-9. ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████ *See* Ex. 2 at 3-5.

What was previously inexplicable in this MDL has now become clear. Brockman's intentional destruction of evidence explains a significant gap in Reynolds's document production: other than a handful of emails that apparently had been printed out or saved locally, Reynolds did not produce *any* emails from Brockman's email account prior to August 26, 2016 – which is precisely when the indictment says Brockman destroyed his electronic records and any incriminating evidence. Although the indictment does not specify precisely what documents Brockman destroyed – something known only to Brockman, ██████████████████████████████ ██████████████████████ – the obvious inference is Reynolds could not produce Brockman's emails because he destroyed them. ████████████████████████████

██████████████████████████████████████████████████

██████████ Reynolds has been unable to offer any other explanation for this glaring gap in its document production.

The destruction of this evidence is prejudicial to Plaintiffs. Brockman and Schaefer were the principal conspirators for Reynolds. Yet Brockman's destruction of documents has deprived Plaintiffs of emails from Brockman during the crucial period when Reynolds entered and then implemented the conspiracy with CDK (September 2013 to February 2015). Reynolds's production of Schaefer's emails did not fill the void: Reynolds has produced no emails from Schaefer before February 3, 2015. According to Reynolds, the laptop and mobile phone that were the sole repository for Schaefer's emails were both purportedly stolen from his unlocked car parked on a street in suburban Dayton, Ohio, two weeks before CDK and Reynolds signed the February 18, 2015 agreements. (As with Brockman's documents, Reynolds did not store

Schaefer's work emails on company servers and instead had the same dubious practice of storing them only on the executive's laptop.)  This story is suspicious in its own right, but Plaintiffs are currently unaware of direct evidence of willful destruction by Schaefer, unlike with Brockman. There is a plethora of evidence of the conspiracy – principally from *CDK*, other Reynolds documents and testimony, and Defendants' outright admissions – and that evidence is easily sufficient to create a genuine factual issue for trial.  *See* Dkt. 1100.  Nevertheless, the absence of any email correspondence from the accounts of Brockman and Schaefer in the crucial timeframe of this case leaves Plaintiffs without the benefit of *Reynolds's* key internal communications, which could only strengthen Plaintiffs' case at trial.

Moreover, Brockman destroyed his emails *after* Reynolds had already threatened litigation against Authenticom, *after* Authenticom had threatened litigation against Reynolds based on the conduct at issue in this case, and *after* he had negotiated and consummated the conspiracy with CDK at the heart of this MDL.  *See infra* p. 13.  Brockman's emails would be critical to any case like this against Reynolds, and because of his intentional misconduct, they are gone forever.

Pursuant to Federal Rule of Civil Procedure 37(e) or this Court's inherent powers, and in light of the magnitude of Reynolds's misconduct, this Court should apply the following sanctions to remedy the prejudice from Reynolds's spoliation:

- The Court should order that Reynolds is precluded from contesting the existence of the alleged conspiracy between CDK and Reynolds beginning in September 2013 – namely, to stop competing on the basis of the "openness" of their DMSs and instead to coordinate their DMS data access policies and eliminate independent data integrators from their systems;

- The jury should be given an adverse inference instruction that permits (but does not require) the jury to infer that the destroyed evidence would have been unfavorable to Reynolds on the elements of Plaintiffs' claims that remain to be proved at trial; and

- Reynolds should be ordered to pay Plaintiffs' attorneys' fees and costs incurred because of Reynolds's spoliation of evidence.

## BACKGROUND

### I.    Brockman's Central Role in the Conspiracy With CDK

Brockman acquired Reynolds in 2006 and was its Chairman and CEO until he resigned in the wake of the October 2020 criminal indictment.  *See* Ex. 4, Brockman (Day 1) Tr. 16, 22-23.  Brockman remains Reynolds's controlling shareholder, owning approximately ▇ percent of Reynolds through foreign holding companies and trusts located in Bermuda, Nevis, and the British Virgin Islands.  Ex. 1, Indictment ¶¶ 2-7; Ex. 4, Brockman (Day 1) Tr. 17-19; Ex. 5, Smith Statement of Facts ¶ 3.  Brockman's use of these intermediaries to evade taxes on more than $2 billion in income is the subject of his criminal indictment.

Brockman was intimately involved in managing Reynolds through at least his resignation in November 2020.  As of 2019, Reynolds's former President testified that Brockman ▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  *See* Ex.6, Lamb Tr. 14:6-9.  And in June 2020, Brockman told recently-promoted President Tommy Barras that "you and I should be talking every day about any decision of importance that is cooking."  Ex. 7, at -922.

Brockman was the architect of Reynolds's conspiracy with CDK that began in the summer of 2013.  *See generally* Dkt. 1100, at 13-29 (summary judgment brief detailing conspiracy).  From September 2013 through February 2015, Brockman and Schaefer (at Brockman's direction) were the two Reynolds individuals primarily responsible for negotiating and implementing the conspiracy with CDK.  According to Brockman, there were no "other businesspeople involved in negotiating" with CDK.  *See* Ex. 8, Brockman FTC (Vol. 2) Tr. 146:1-5; *see also* Ex. 9, Schaefer (Day 1) Tr. 59:6-23.  In Brockman's own words:  "[Schaefer] was assigned his task.  He is following my orders and what I taught him."  Ex. 10, at -291.  Brockman signed the February 2015 agreements in furtherance of the conspiracy on Reynolds's behalf.  *See* Dkt. 975-49.

## II.     The Gaps In Reynolds's Document Production

There are two significant gaps in Reynolds's document production in this MDL.   Reynolds produced *no* emails from Brockman's Microsoft Outlook files prior to August 26, 2016, or from Schaefer's Microsoft Outlook files prior to February 3, 2015. *See* Dorris Decl. ¶¶ 7, 14.[1]  Reynolds has admitted that its ███████████████████████████████████████████████████████ ██████████████████████████████████████████ Ex. 3, at A-23, and also that no emails existed for Schaefer prior to February 3, 2015, *see* Ex. 11, at 1.

In the fall of 2018 – during fact discovery – Plaintiffs sought an explanation for these incomprehensible gaps in Reynolds's document production.  Reynolds stated that its executives (including Brockman and Schaefer) were solely responsible for maintaining their emails on their devices including even after being issued litigation holds. *See* Ex. 11, at 2; ████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

Reynolds and Brockman have stated that Brockman used a single laptop to conduct Reynolds's business, and that his work emails would have been stored on that laptop. *See* Dkt. 979-91, at 884-885 ████████████████████████████████████████████████████

---

[1] The handful of emails that Reynolds produced from Brockman's or Schaefer's files before these time periods were preserved by other means. ████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

██████████████████████████████ Ex. 3, at A-19 ██████████

████████████████████████████████████████████████████

█████████ Ex. 4, Brockman (Day 1) Tr. 162:1-12.  During fact discovery, Reynolds claimed to have conducted a diligent search of that laptop, and after a "reasonable inquiry" had "no specific additional information to provide" as to why emails pre-dating August 26, 2016 did not exist.  Ex. 12, at 1.  As to Schaefer, Reynolds and Schaefer have stated that Schaefer's emails would have been stored on his laptop. █████████████████████████████

However, on February 4, 2015 – two weeks before the written agreements between Reynolds and CDK were signed – Schaefer's laptop was purportedly stolen from his unlocked car parked on a suburban street in Dayton, Ohio.  *See* Ex. 12, at 1.  Although the circumstances were suspicious, Plaintiffs had no alternative but to accept counsel's written representations.  At least as to Brockman, we now know why counsel were unable to find any additional emails on his laptop.

### III.    The United States' Indictment of Brockman

On October 1, 2020, a federal grand jury indicted Brockman for tax evasion, money laundering, wire fraud, evidence tampering, and destruction of evidence – all in connection with a scheme to evade paying federal taxes on $2 billion in income.  *See* Ex. 1, Indictment.  The United States has described this as the largest-ever prosecution of tax evasion by a United States citizen.[2] The IRS's Chief of Criminal Investigations said that he had never "seen this pattern of greed or concealment and cover-up in my 25+ years as a special agent" for the IRS.[3]

---

[2] Department of Justice, Office of Public Affairs, *CEO of Multibillion-dollar Software Company Indicted for Decades-long Tax Evasion and Wire Fraud Schemes* (Oct. 15, 2020); *see also* David Voreacos and Neil Weinberg, *Houston Tech Mogul Indicted for 'Largest-Ever Tax Charge'*, Bloomberg News (Oct. 15, 2020); Laura Saunders, *The IRS Reels in a Whale of an Offshore Tax Cheat – and Goes for Another*, Wall St. J. (Oct. 23, 2020).

[3] Michael Levenson, *U.S. Brings 'Largest Ever Tax Charge' Against Tech Executive*, NY Times (Oct. 15, 2020); Clare Duffy, *Software CEO Robert Brockman charged in $2 billion tax evasion case*, CNN Business (Oct. 17, 2020).

The indictment states that Brockman hid income through a "complex network of offshore companies and trusts" through which Brockman owns Reynolds. Ex. 1, Indictment ¶ 33. The United States further alleges that Brockman attempted to conceal and destroy evidence of his crimes. Brockman used "a proprietary, encrypted email system to communicate with the nominees he appointed and employed to manage his offshore" accounts, using code names such as "Redfish," "Bonefish," and "Snapper." *Id.* ¶¶ 34, 45. Brockman directed an attorney Evatt Tamine – who Reynolds lists on its privilege log as outside counsel to Reynolds – to install a program called "Evidence Eliminator," *id.* ¶ 47;[4] he kept time-stamped versions of copier paper from prior years "to create more convincing backdated documents," *id.* ¶ 48; and he directed Tamine (and others involved in the scheme) to avoid talking over traceable landlines or mobile phones and instead to communicate through untraceable online voice services, *id.* ¶ 49. Critically, the United States alleges that, between June 10, 2016 and October 14, 2016, Brockman destroyed both hard-copy and electronic files. *See id.* ¶¶ 195-196. Brockman also ordered Tamine to "physically destroy documents and electronic media . . . using shredders, hammers, and other means." *Id.* ¶ 196c. The United States' averments of intentional document destruction are based on a first-hand account from Tamine, who is now a cooperating witness. *See* Ex. 14, Warrant Aff. ¶¶ 25-30.[5]

In December 2020, the United States publicly filed some of the evidence underlying the indictment. In a 2010 performance evaluation, Brockman instructed Tamine to:

---

[4] Evidence Eliminator was a commercially available program that was designed to destroy computer files and "defeat[ ] forensic analysis software used by police and government agencies." Evidence Eliminator™, https://web.archive.org/web/20100109050844/http://www.evidence-eliminator.com/dis-information.d2w.

[5] The United States also alleges that Brockman communicated with Tamine about destroying records at Vista Equity Partners – an investment firm with $73 billion in assets under management. According to the United States, Brockman's tax evasion scheme was "a machine built of two components": his foreign trust structure and Vista Equity Partners. Ex. 15, at 2; *see* Christopher Helman, *The Manipulative, Little Known Billionaire Who Nearly Ruined The Country's Richest Black Person*, Forbes (Feb. 5, 2021).

- Conceal "all email and financial records on an encrypted USB dongle carried in a different location in luggage when traveling abroad" to evade searches by law enforcement, Ex. 16, at -743;

- "Operate as much as possible in a paperless manner – such that if someone were to come in your door unannounced everything would be in encrypted digital form," *id.*; and

- "Run Evidence Eliminator at least weekly on your computer," *id.*

In another email chain, Brockman wrote that he would "run [Evidence Eliminator] on [his] entire laptop," which he said would "solve some of the problem" if the "email server . . . were seized" by law enforcement. Ex. 17, at -710. Brockman then confirmed that he would "run EE" on his laptop starting the next day (a Thursday), stating: "I will be clean by Friday morning." *Id.* at -709. And in his 2016 self-evaluation, Tamine wrote of "destroy[ing] more drives that had been discovered," doing "all that was humanly possible to clean up what Don[6] had left behind" so that Brockman "could rest easily that any attempt to search Don's home would be fruitless," and even misleading Brockman's other attorneys by "disclos[ing] nothing to the lawyers but the story we wanted to convey." Ex. 18, at -263, -266.

## IV. Post-Indictment Investigation

When Brockman's intentional document destruction came to light in October 2020 – after the close of fact discovery – Plaintiffs again asked for information regarding the gaps in Reynolds's production. *See* Exs. 19, 20, and 21. Reynolds promised to investigate the allegations against Brockman and to provide Plaintiffs and the FTC a "comprehensive response." Ex. 22. Reynolds provided its "response" on December 11, 2020. *See* Ex. 23.

████████████████████████████████████████

████████████████████████████████████████

---

[6] "Don" is Don Jones, the former CFO of Universal Computer Services, Inc. ("UCS"). Brockman founded UCS in 1970, which was the vehicle through which Brockman acquired Reynolds in 2006.



██████████████████████ *See* Ex. 3, at A-22 ████████████████

████████████████████████ *id.* at A-23 ████████████████

████████████████████████████████████████

███████████ *See id.* at 6-7. ████████████████████████

████████████████████████████████, *see id.* at A-22[7] – █████

████████████████████████ *See id.* at 6. ████████████████

█████████████████████████████████████

███████████████████████████████████

████████████████████████████████████ *See id.* at 16

n.5 ████████████████████████████████████

████████ In a January 2021 supplemental response, █████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ *See id.*[8]

---

[7] Plaintiffs also sought information regarding Brockman's use of alternative email accounts and code names. *See* Exs. 19 and 20. ████████████████████████████ *See* Ex. 4, Brockman (Day 1) Tr. 160:15-21 ████████████████████ However, ██████████ *See* Ex. 3, at 19-21 ████████████████████████ Exs. 17 and 24 (use of permit1@lambdaprime.org and permit@proventusconstans.com).

[8] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

## STANDARD

Rule 37(e) provides for sanctions where "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e); *see Flair Airlines, Ltd. v. Gregor, LLC*, 2018 WL 8445779, at *2-3 (N.D. Ill. Dec. 14, 2018). Where a "party acted with the intent to deprive another party of the information's use in the litigation," Fed. R. Civ. P. 37(e)(2), the Court must presume the injured party has been prejudiced, *see DR Distribs. LLC v. 21 Century Smoking, Inc.*, 2021 WL 185082, at *95 (N.D. Ill. Jan. 19, 2021), and may order sanctions "to alleviate the harm" from the spoliation, *see id.* at *96.

This Court may also use its "inherent power to impose spoliation sanctions" where "a party destroyed evidence in bad faith" – that is, the destruction was "for the purpose of hiding adverse information." *FTC v. Asia Pac. Telecom, Inc.*, 788 F. Supp. 2d 779, 790 (N.D. Ill. 2011); *see Collins v. Illinois,* 554 F.3d 693, 696 (7th Cir. 2009) (per curiam) (upon finding of bad faith, the court has discretion to impose sanctions "proportionate to the circumstances").

## ARGUMENT

Reynolds should be sanctioned for Brockman's intentional destruction of evidence, *see infra* Part I, which was done at a time when Reynolds had a duty to preserve such evidence, *see infra* Part II. Brockman's destruction of evidence has prejudiced Plaintiffs by depriving them of additional evidence of the conspiracy between CDK and Reynolds from the period when they formed and implemented it (September 2013 to February 2015), *see infra* Part III. To remedy this prejudice – and in light of the egregiousness of Reynolds's conduct – the Court should order that Reynolds is prohibited from contesting that conspiracy, *see infra* Part IV.A, order a permissive adverse inference jury instruction that the evidence would have been unfavorable to Reynolds on

the remaining elements of Plaintiffs' claims, *see infra* Part IV.B, and order Reynolds to pay Plaintiffs' attorneys fees and expenses incurred because of the spoliation, *see infra* Part IV.C.

## I.    Brockman Intentionally Destroyed Relevant Evidence

A grand jury has already found probable cause – based on a first-hand account of Brockman's (and Reynolds's) own attorney – that Brockman directed the destruction of evidence (including by shredding paper files, using hammers to destroy hard drives, and running Evidence Eliminator on his Reynolds laptop) between June 2016 and October 2016.  *See* Ex. 1, Indictment ¶ 196; Ex. 14, Warrant Aff. ¶¶ 25-30.  ███████████████████████ ████████████████████████████████████  Moreover, the timing of Brockman's destruction of evidence coincides perfectly with the time period (pre-August 2016) from which Reynolds failed to produce Brockman's email in discovery.  Those facts – combined with Reynolds's inability to offer any other explanation for the absence of Brockman's emails – establishes spoliation.  *See Cohn v. Guaranteed Rate, Inc.*, 318 F.R.D. 350, 354 (N.D. Ill. 2016); *see* Fed. R. Civ. P. 37(e).

Brockman also acted with "intent to deprive another party of the information's use."  Fed. R. Civ. P. 37(e)(2); *see Cohn*, 318 F.R.D. at 355 ("A document is destroyed in bad faith if it was done 'for the purpose of hiding adverse information.'") (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 644 (7th Cir. 2008)).  Brockman's use of Evidence Eliminator on the sole computer where his Reynolds emails were stored and his instructions to others to destroy evidence – including through Evidence Eliminator – easily satisfy that standard.  *See Schmalz v. Vill. Of N. Riverside*, 2018 WL 1704108, at *5 (N.D. Ill. Mar. 23, 2018) ("bad faith" due to "instructing . . . others to delete emails" and "deliberate deletion and destruction of evidence") (quoting cases); *Anderson v. Cryovac, Inc.*, 862 F. 2d 910, 925 (1st Cir. 1988) ("intentionally shredding documents in order to stymie the opposition" is evidence of bad-faith spoliation); *WeRide Corp. v. Kun Huang*,

2020 WL 1967209, at *12 (N.D. Cal. Apr. 24, 2020) (considering the "totality of the circumstances" and the party's "disturbing pattern of destroying discoverable material" to conclude spoliation was in bad faith).

Reynolds's failure to provide any explanation from Brockman for why his Microsoft Outlook email files do not exist prior to August 26, 2016, further supports a finding of "bad faith" spoliation. Where a party fails to provide "relevant evidence particularly within its control" – that is, an explanation from Brockman about what happened to his emails – courts may "infer[ ] that such evidence would not be favorable" to that party. *NLRB v. Dorothy Shamrock Coal Co.*, 833 F.2d 1263, 1269 (7th Cir. 1987). Importantly, Brockman *was* cooperating with Reynolds's counsel in 2018 when Plaintiffs repeatedly inquired about the gap in his email production, and Reynolds gave Plaintiffs the proverbial stiff arm, stating: "With respect to Mr. Brockman's emails, Reynolds has made a reasonable inquiry and has no specific additional information to provide." *See* Ex. 19, at 1; *supra* pp. 5-6. Post-indictment, ███████████████████████████████ ████████████████████████████████████████, but that is even more reason to infer "bad faith" spoliation. *See SEC v. Cherif*, 933 F.2d 403, 417 (7th Cir. 1991) ("The Fifth Amendment may be invoked in the civil context, but unlike a criminal case, the judge sitting in the civil proceeding can draw adverse inferences . . . .").

Reynolds has suggested that Brockman took his actions "individually," implying that Reynolds may not bear responsibility for Brockman's misconduct. Ex. 25, at 1. But that is flatly wrong: Brockman was Reynolds's Chairman and CEO. He owns the company (through foreign cut-outs). He kept his Reynolds emails on his laptop (and only on his laptop) in the ordinary course of conducting Reynolds's business. This was not a matter of a rogue agent but of the company itself being used to effectuate the wrongful conduct. Brockman's destruction of his work emails

is clearly attributable to Reynolds.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 803 F. Supp. 2d 469, 506-07 (E.D. Va. 2011) ("A party may be held responsible for the spoliation of relevant evidence done by its agents."); *Asia Pac. Telecom*, 788 F. Supp. 2d at 782 (controlling director's spoliation).

## II.    Reynolds Had a Duty To Preserve Brockman's Emails In August 2016

Reynolds had a duty to preserve evidence from Brockman in mid-2016, because Reynolds "reasonably knew or could reasonably foresee [Brockman's files were] material to a potential legal action." *China Ocean Shipping (Grp.) Co. v. Simone Metals Inc.*, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999).  Reynolds threatened litigation against Authenticom and others throughout 2015 and 2016.[9] ████████████████████████

████████████████████████████████████████  ██

████████████████████████████████

████████████████████████████████  *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 521-22 (D. Md. 2010) (duty to preserve arises "when litigation is reasonably anticipated whether the organization is the initiator or the target of litigation").  ██

████████████████████████████████████████████

████████████████████████████████████████████

---

[9] Specifically, in April and May 2015, Reynolds sent letters to Authenticom and other data integrators threatening litigation if they did not cease providing their integration services for app vendors and Reynolds dealers.  *See* Dkt. 782-42 (████████████); Dkt. 974, ¶ 135 (████████).  Reynolds's threatened litigation mirrors the counterclaims that it brought against Authenticom in this MDL.  *See* Dkt. 225, at 55-61.  Authenticom responded that Reynolds's blocking was "unfair competition" and an "antitrust violation" – similar to the claims that Authenticom has brought in this MDL.  Ex. 26, at -749.  Counsel for Reynolds and Authenticom continued to discuss the possibility of litigation, *see, e.g.*, Ex. 27, at -395, and Reynolds proposed a settlement in May 2015 that would have released Reynolds's threatened claims (which mirror the counterclaims in this MDL) and Authenticom's antitrust claims.  *See* Dkt. 979-17, at §§ 2.1-2.2 (████████████).  Authenticom did not agree to the proposed settlement.  Reynolds continued to threaten litigation against Authenticom into 2016.  *See* Ex. 28, at -374; Ex. 29, at -088.

- 13 -

████████████████████████████████████████

████████████████████████████████████ Litigation that "was reasonably

foreseeable for work product purposes" is "reasonably foreseeable for duty to preserve purposes."

*Siani v. State Univ. of New York at Farmingdale*, 2010 WL 3170664, at *5 (E.D.N.Y. Aug. 10,

2010); *accord Sanofi-Aventis Deutschland GmbH v. Glenmark Pharm. Inc., USA*, 748 F.3d 1354,

1361 (Fed. Cir. 2014) (affirming adverse inference sanction based on spoliation on dates after the

spoliator claimed work-product privilege); *Butterworth v. Lab. Corp. of Am. Holdings*, 2012 WL

12864185, at *18 (M.D. Fla. Apr. 23, 2012).[10]

Finally, Brockman's efforts to destroy evidence is itself evidence that he anticipated

potential litigation in which those documents could be harmful. *See Byrnie v. Town of Cromwell,*

*Bd. of Educ.*, 243 F.3d 93, 108 (2d Cir. 2001) ("[W]here fear of potential future litigation plausibly

motivate[s] the spoliation," the documents can "reasonably be found to have been destroyed in

anticipation of litigation."); *see Kronisch v. United States*, 150 F.3d 112, 127 (2d Cir. 1998)

(same); *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 542 (E.D. Va. 2006) ("[A]t the

very least, a party has anticipated litigation when it destroys relevant evidence because of the

prospect of litigation on an actual or potential claim."), *vacated on other grounds*, 523 F.3d 1374

(Fed. Cir. 2008). Brockman destroyed all of his emails before August 26, 2016 – at a time when

Reynolds's privilege log states that the company anticipated litigation with Authenticom, and

when it was facing intense threat of legal actions challenging the legality of its DMS policies.

Against that backdrop, Brockman's document destruction supports the reasonable inference that

he realized that his emails could be used against Reynolds – including in cases just like this one.

---

[10] Notably, after *in-camera* review of privileged documents, Judge Gilbert found that Authenticom reasonably anticipated antitrust litigation against Reynolds and CDK by August 2016. *See* Dkt. 1113, at 5.

### III. Plaintiffs Have Been Prejudiced By Brockman's Destruction Of Evidence

Brockman's intentional destruction of evidence itself establishes sufficient prejudice for sanctions to be issued against Reynolds. *See* Fed. R. Civ. P. 37(e)(2)(A) (court may "presume that the lost information was unfavorable to the party"); *Williams v. Am. Coll. of Educ., Inc.*, 2019 WL 4412801, at *15 (N.D. Ill. Sept. 16, 2019); *Danis v. USN Commc'ns, Inc.*, 2000 WL 1694325, at *34-35 (N.D. Ill. Oct. 23, 2000). That is because "if, being sensitive to the possibility of a suit, a company then destroys the very files that would be expected to contain the evidence most relevant to such a suit, the inference arises that it has purged incriminating evidence." *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 272 (7th Cir. 1993); *In re Text Messaging Antitrust Litig.*, 46 F.Supp.3d 788, 796-97 (N.D. Ill. 2014) (same), *aff'd*, 782 F.3d 867 (7th Cir. 2015). At the same time, the degree of prejudice to Plaintiffs remains relevant to the types of sanctions that should be imposed. *See Barnhill v. United States,* 11 F.3d 1360, 1367-68 (7th Cir. 1993); *Domanus v. Lewicki*, 284 F.R.D. 379, 390 (N.D. Ill. 2012), *objections sustained*, 2012 WL 3307364 (N.D. Ill. Aug. 13, 2012).

Plaintiffs have suffered significant prejudice because Brockman's destruction of documents has deprived Plaintiffs of contemporaneous evidence from September 2013 to February 2015 from the two Reynolds executives – Brockman and Schaefer – primarily responsible for negotiating and implementing the conspiracy on behalf of Reynolds. That Plaintiffs have been deprived of documents relevant to the central issue in this case is sufficient to demonstrate that prejudice from the destruction is serious. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960-61 (9th Cir. 2006) (prejudice where "any number of the [deleted] files could have been relevant to [the defendant's] claims or defenses"); *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 46 (D.D.C. 2019) (prejudice where "at least some responsive e-mails were likely irremediably lost"); Jamie S. Gorelick et al., *Destruction of Evidence* § 3.17 (2020) ("[D]emonstrating prejudice in practice

means establishing that the destroyed material is directly relevant to issues in the case."). Plaintiffs obviously cannot show with any precision what the content of Brockman's emails would have been; nevertheless, given the ample conspiracy evidence, the Court can infer that they would have further supported Plaintiffs' claims. *See Kronisch*, 150 F.3d at 128 (spoliator should not "profit from [that intentional] destruction" because of any uncertainty about "the likely contents of the destroyed evidence"); *Anderson*, 862 F.2d at 925 (requiring spoliator prove immateriality of spoliated evidence by "clear and convincing evidence" because "[a] party who is guilty of, say, intentionally shredding documents in order to stymie the opposition, should not easily be able to excuse the misconduct by claiming that the vanished documents were of minimal import").

Reynolds has suggested that its inability to produce Brockman's emails pre-dating August 2016 is immaterial because Reynolds "produced literally thousands of emails to and from . . . Mr. Brockman" during that period from custodians other than Brockman. Ex. 11, at 1. But those emails cannot possibly cure the prejudice. Brockman and Schaefer were the two central participants for Reynolds in its conspiracy with CDK. Because Reynolds has also been unable to produce any emails from Schaefer prior to February 2015 – due to the all-too-convenient theft of his laptop – Schaefer's emails are not available to cure Brockman's destruction of his own documents in mid-2016. *See Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 565 (N.D. Cal. 2008) (rejecting similar argument where "it is impossible to know whether additional unproduced emails were also deleted or not turned over").

## IV. Sanctions Are Necessary To Cure the Prejudice To Plaintiffs

The Court should order the following three sanctions to remedy the prejudice caused by Reynolds's egregious spoliation of evidence. These sanctions are "proportionate to the infraction." *In re Chi. Mgmt. Consulting Grp., Inc.*, 929 F.3d 803, 811 (7th Cir. 2019) ("[N]or do we require the judge to choose the least severe sanction. Instead, we ask whether a reasonable jurist, apprised

of all the circumstances, would have chosen the sanction as proportionate to the infraction.").  And each of these sanctions may be properly ordered by an MDL court because they concern "pretrial proceedings."  28 U.S.C. § 1407(a); *see In re Korean Airlines Co.*, 642 F.3d 685, 699 (9th Cir. 2011) ("[Transferee court] may handle and resolve discovery motions, including those involving . . . appropriateness of . . . sanctions."); H.R. Rep. No. 90-1130, 1968 U.S.C.C.A.N. 1898, 1900 ("By the term 'pretrial proceedings' the committee has reference to the practice and procedure which precede the trial of an action," including "deposition and discovery" governed by "rule 16 and rules 26-37.  Under the Federal rules the transferee district court would have authority . . . to impose sanctions for failure to make discovery.").[11]

### A.    The Court Should Bar Reynolds From Contesting The Existence Of The Conspiracy

This Court should order that Reynolds is precluded from contesting the existence of the alleged conspiracy between Reynolds and CDK beginning in September 2013 to cease competing on the basis of their DMS data access policies and instead to coordinate those policies and eliminate independent data integrators.  Reynolds's egregious discovery misconduct warrants this severe sanction.  Brockman – Reynolds's CEO, principal conspirator, and still ▮ percent controlling shareholder – directed an attorney to destroy incriminating evidence and himself used software (Evidence Eliminator) to wipe away forever – with no possibility of recovery – all of his

---

[11]  In addition to discovery sanctions that should be issued now, Plaintiffs intend to introduce evidence of Reynolds's intentional destruction of evidence at trial.  *See GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 85-89 (3d Cir. 2019) (reversing jury verdict due to the exclusion of "highly probative" evidence of document spoliation).  Further, AutoLoop, in its case against CDK as representative for the putative direct purchaser vendor class, intends to move for a jury instruction informing the jury of Reynolds's spoliation and an instruction that the jury should not to infer a lack of conspiracy from any lack of Reynolds documentary evidence.  *See, e.g., Clear-View Techs., Inc. v. Rasnick*, 2015 WL 3453529, at *2 (N.D. Cal. May 29, 2015) (admitting evidence of another party's spoliation because "destroyed evidence . . . is undoubtedly probative of . . . consciousness of guilt regarding the alleged conspiracy"); *M & T Mortg. Corp. v. Miller*, 2007 WL 2403565, at *13 (E.D.N.Y. Aug. 17, 2007) (spoliation instruction despite "potential effect that any sanction may have on the positions of the other third-party defendants").

Reynolds emails sent or received before August 2016. He did this at a time when he had already threatened litigation against Authenticom, after Authenticom had likewise threatened litigation against Reynolds based on the conduct at issue in this case, and after he had negotiated and consummated the conspiracy with CDK at issue in this case. Brockman also knew the stakes were huge: At his deposition, he testified that ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████ *See* Dkt. 1101, ¶¶ 25, 73. ████████████████████████████████ *See supra* p. 9, note 7. The foregoing – coupled with the purported theft of Schaefer's laptop containing his emails just two weeks before CDK and Reynolds signed the February 2015 agreements – has deprived Plaintiffs of significant evidence from Reynolds about the conspiracy in this MDL. The company's own complicity made this possible: Under Brockman's stewardship, Reynolds had a document retention policy that ensured executives' (but not others') emails were deleted from company servers with no backups, thus entrusting those executives with the sole responsibility for preserving evidence relevant to litigation (including after they received litigation holds). *See supra* p. 5.

In these extreme circumstances, courts may impose "*issue-related sanctions*" such as "designating facts to be established [and] forbidding introduction of evidence in support of parts of pleadings." *Destruction of Evidence* § 3.16. This Court should order such sanctions as requested here to prevent Reynolds "from taking unfair advantage of an evidentiary gap" that Reynolds mendaciously created. *Charlestown Capital Advisors, LLC v. Acero Junction, Inc.*, 2020 WL 5849096, at *17 (S.D.N.Y. Sept. 30, 2020); *see Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 627 (7th Cir. 2018) (approving sanction that even unintentional spoliator "could not contest

Barbera's recollection of the emails" and ordering that her recollection "be taken as true"); *DR Distribs.*, 2021 WL 185082, at *96 (precluding spoliators from making arguments inconsistent with unspoliated evidence); *Domanus*, 2012 WL 3307364, at *2 ("Defendants cannot introduce as evidence documents they obtained from the hard drive prior to its destruction. To allow Defendants to use these documents would in effect reward them for their spoliation of evidence."); *MacNeil Auto. Prods. Ltd. v. Cannon Auto. Ltd.*, 2010 WL 5904124, at *8 (N.D. Ill. Nov. 2, 2010), (spoliator prohibited from offering evidence regarding equipment that it destroyed and from arguing others caused defects in that equipment); *Grochocinski v. Schlossberg*, 402 B.R. 825, 842 (N.D. Ill. 2009) (affirming bankruptcy court's sanction that "designated facts . . . would be taken as established" and prohibiting spoliator from "opposing . . . claims against him" where spoliator used software similar to Evidence Eliminator called "nCleaner"); *Bryant v. Gardner*, 587 F. Supp. 2d 951, 969 (N.D. Ill. 2008) (precluding spoliator from contesting an issue).

This sanction is, if anything, modest in comparison to the misconduct; courts have imposed default sanctions for similar uses of Evidence Eliminator. As one court explained, "[a]ny reasonable person can deduce, if not from the name of the product itself, then by reading the website, that Evidence Eliminator is a product used to circumvent discovery." *Kucala Enters., Ltd. v. Auto Wax Co.*, 2003 WL 21230605, at *5, 8 (N.D. Ill. May 27, 2003), *aff'd in part*, 2003 WL 22433095 (N.D. Ill. Oct. 27, 2003); *see Taylor v. Mitre Corp.*, 2012 WL 5473573, at *2 (E.D. Va. Nov. 8, 2012) (approving default judgment "without reservation" because the "conduct has been so egregious that it amounts to a forfeiture"; conduct included "deliberate destruction of his work computer with a hammer" and "the real clincher" of "running Evidence Eliminator").[12]

---

[12] *See also Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 2012 WL 10817204, at *10 (M.D. Fla. Nov. 30, 2012) (citing cases using default judgment as a sanction for use of "wiping" programs similar to Evidence Eliminator); *Commc'ns Ctr., Inc. v. Hewitt*, 2005 WL 3277983, at *2-3 (E.D. Cal. Apr. 5, 2005) (default entered for use of Evidence Eliminator because destruction of evidence "precluded this

**B.** **The Jury Should Be Instructed That It Is Permitted To Draw Adverse Inferences Against Reynolds Because Of Its Intentional Document Destruction**

This Court should also issue as part of its remand order that the transferor courts in *Authenticom* and *MVSC* should instruct their juries that they may draw the permissive adverse inference that the documents that Brockman destroyed would have been unfavorable to Reynolds on the elements of Plaintiffs' claims that remain to be proved at trial.

There is ample evidence to support such an inference: Brockman intentionally deleted his Reynolds emails in August 2016 when Reynolds was embroiled in contemplated litigation with Authenticom over similar antitrust claims now at issue in this MDL. And Reynolds admits that Brockman recommended ███████████████████████████████████████ ██████████████████████████████████████ There is also abundant evidence *from CDK* of the conspiracy with Reynolds from the time period when Brockman destroyed his documents. From this, a jury could reasonably conclude that Brockman knowingly destroyed incriminating evidence of the conspiracy at issue in this MDL and recommended that others do the same. *See* Fed. R. Civ. P. 37(e)(2), advisory committee's note to 2015 amendment ("Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence.").

The *Authenticom* and *MVSC* juries should be instructed that they are permitted to infer from these facts that the destroyed evidence would have been unfavorable to Reynolds. *See Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998) (appropriateness of adverse inference depends on "bad faith," which "means destruction for the purpose of hiding adverse

---

action being decided on the merits; the jury can no longer weigh conflicting evidence because [the spoliator] has ensured whatever evidence on certain of [their] computers that may have been favorable to plaintiff will never see the light of day").

information"); *MacNeil*, 2010 WL 5904124, at *8 ("Generally, where a party has destroyed evidence in bad faith, the trier of fact is entitled to infer that the evidence was favorable to the opposing party."); *Plunk v. Vill. of Elwood*, 2009 WL 1444436, at *13 (N.D. Ill. May 20, 2009) (imposing permissive adverse inference instruction where evidence was lost due to "wiping programs"); Margaret M. Koesel & Tracey L. Turnbull, *Spoliation of Evidence,* Ch. 3 (A.B.A. 3d ed. 2013) (adverse inference appropriate where there is evidence that "consciousness of wrongdoing motivated the spoliation").[13]

## C. Reynolds Should Be Ordered To Pay Attorneys' Fees And Costs

As a general matter, "courts award the victim its *attorney's fees and costs* on the sanctions motion, even if it suffered no prejudice" where "the victim demonstrates that the spoliator destroyed discoverable material that it knew or should have known was relevant to pending, imminent, or reasonably foreseeable litigation." *Destruction of Evidence* § 3.16. Courts routinely award attorneys' fees and costs to parties who are forced to expend extra litigation resources to address another party's spoliation. *See id.* § 3.14 ("Monetary sanctions, which often accompany and complement nonmonetary sanctions, typically award the cost of attempted discovery and attorney's fees on the sanctions motion."). Accordingly, this Court should order Reynolds to pay Plaintiffs fees and costs incurred "because of" Reynolds's spoliation. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (civil sanction of attorney's fees available for "attorney's fees incurred because of the misconduct at issue"); *MacNeil Auto. Prods. Ltd. v.*

---

[13] To the extent there is any doubt about the sufficiency of the evidence on summary judgment, it would be appropriate for this Court to draw adverse inferences against Reynolds and to deny summary judgment on that basis. *See Kronisch*, 150 F.3d at 128 ("[W]here the innocent party has produced some (not insubstantial) evidence in support of his claim, the intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line.").

*Cannon Auto. Ltd.*, 2011 WL 4828889, at \*1 (N.D. Ill. Oct. 7, 2011) (attorney's fees and costs awarded "for all discovery matters related to the" issue on which evidence had been spoliated).

## CONCLUSION

The Court should sanction Reynolds by (1) barring Reynolds from contesting the existence of the conspiracy with CDK starting in September 2013 to coordinate rather than compete with respect to DMS data access policies and to eliminate independent integrators; (2) including as part of its remand order a finding that the transferor courts should instruct the juries in *Authenticom* and *MVSC* that they are permitted to draw an adverse inference from Reynolds's document destruction; and (3) awarding Plaintiffs their attorneys' fees and costs incurred because of Reynolds's spoliation of evidence.

Dated:  February 8, 2021

*/s/ Derek T. Ho*

Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
KELLOGG, HANSEN, TODD,
 FIGEL & FREDERICK, P.L.L.C.
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com

*Counsel for Authenticom, Inc. and*
*Motor Vehicle Software Corporation*

# APPENDIX A

## The Reynolds & Reynolds Privilege Log Excerpts

















**CERTIFICATE OF SERVICE**

I, Derek T. Ho, an attorney, hereby certify that on February 8, 2021, I caused a true and correct copy of the foregoing **PLAINTIFFS AUTHENTICOM'S AND MVSC'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SANCTIONS AGAINST DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system. Copies of the Under Seal filing were served on counsel of record via email.

*/s/ Derek T. Ho*
Derek T. Ho
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com