# Exhibit 12



Brian T. Ross
Partner
bross@gibbsbruns.com
713.751.5286

November 16, 2018

**Via Email**
Daniel V. Dorris
Kellogg, Hansen, Todd, Figel & Frederick, PLLC
1615 M Street, N.W., Ste. 400
Washington, D.C. 20036-3215

     Re:    *In re: Dealer Management System Antitrust Litigation*, C.A. No. 18-C-864, MDL
            No. 2817 (N.D. Ill.)

Dear Dan,

     We have reviewed the literature cited in your November 9, 2018 letter and disagree that any of those materials support the burden that you are seeking to impose on Reynolds—i.e., effectively a deposition by letter and series of new discovery requests. Nevertheless, in the spirit of cooperation and an effort to avoid an unnecessary dispute over the matter, we offer the following answers to the questions posed in your original October 18, 2018 letter.[1]

1. During the Relevant Periods, how and where were Mr. Schaefer's and Mr. Brockman's emails stored in the ordinary course of business?

   **Reynolds's email storage systems are described in detail in a document beginning with REYMDL00134877, which was produced to you several months ago. Both Mr. Schaefer and Mr. Brockman are "executives" as described in that document.**

2. To the extent Mr. Schaefer's and Mr. Brockman's emails from the Relevant Periods have been deleted from where they were stored in the ordinary course of business, how and when were those emails deleted?

   **As described in documents produced to you several months ago, Mr. Schaefer was the victim of a device theft incident on February 4, 2015 and lost a significant number of emails as a result. *See, e.g.*, REYMDL00108182. With respect to Mr. Brockman's emails, Reynolds has made a reasonable inquiry and has no specific additional information to provide.**

---

[1] As referenced in Matt Provance's email earlier today, Defendants have received no response on a number of discovery issues that have been in your clients' court for as long or longer than the instant inquiry.

Daniel V. Dorris
November 16, 2018
Page 2 of 3

3.  Have any copies or backups ever been made of Mr. Schaefer's and Mr. Brockman's emails from the Relevant Period?

    **After a reasonable inquiry, Reynolds is unaware of any backups of Mr. Schaefer's or Mr. Brockman's emails.**

4.  To the extent any such copies or backups exist, are they still within Reynolds' possession, custody, or control?

    **N/A.**

5.  To the extent any such copies or backups are no longer within Reynolds's possession, custody, or control, when were they disposed of?

    **N/A.**

6.  Have Mr. Schaefer's or Mr. Brockman's devices (e.g., laptops, tablets, mobile phones, or external backup drives) been searched for copies of emails from the Relevant Period?

    **Yes.**

7.  When were Mr. Schaefer and Mr. Brockman notified that they needed to preserve emails for the purposes of any of the cases consolidated in the present MDL or for the purposes of any of the FTC's investigations of Reynolds?

    **As noted in my October 26, 2018 letter, Mr. Schaefer and Mr. Brockman were sent appropriate litigation hold notices in January 2017, May 2017, and July 2017, promptly after Reynolds received notice of matters referenced in your letter.**

8.  When were personnel responsible for maintaining Mr. Schaefer's and Mr. Brockman's emails (including any copies or backups) notified of the need to preserve those emails for the purposes of any of the cases consolidated in the present MDL or for the purposes of any of the FTC's investigations of Reynolds?

    **Mr. Schaefer and Mr. Brockman maintain their own emails.** *See* **response to Item #1 above.**

9.  What steps did Reynolds take to comply with the "Do Not Destroy" letter issued by the FTC to Reynolds in 2014? See REYMDL00017993. If any copies or backups of Mr. Schaefer's and Mr. Brockman's emails were made in response to that letter, are they still within Reynolds' possession, custody, or control?

Daniel V. Dorris
November 16, 2018
Page 3 of 3

**Respectfully, the 2014 letter from the FTC is not relevant, as that hold was lifted well before the current litigation was initiated. In any event, Reynolds is unaware of any copies or backups of Mr. Schaefer's or Mr. Brockman's emails from that time period that have not already been searched and produced.**

With respect to the remainder of your November 9 letter, thank you for acknowledging that your remaining requests for information constitute "additional discovery." While Reynolds reserves all objections, including timeliness, to such additional discovery, we respond as follow in the spirit of cooperation and an effort to avoid an unnecessary dispute.

First, with respect to the request for additional documents from the three named folders from Mr. Brockman's computer ("cdkdoc," "RCI," and "authdoc,"), with yesterday's supplemental production Reynolds has produced all responsive, non-privileged documents from those folders, regardless of date.

Second, with respect to hard copies, Mr. Brockman's responsive hard copy files were already produced prior to the substantial completion deadline. With respect to Mr. Schaefer, we have recently identified a small number of potentially responsive hard copy files and will make a supplemental production shortly.

Lastly, with respect to your request for "all versions" of the "ERA Customer Data Security Exemption list" referenced by REYMDL00284155, we do not understand how this relates to your purported concerns about Mr. Schaefer's and Mr. Brockman's ESI. Instead this appears to simply be a new discovery request, untethered to any other issue set forth in your letters. While Reynolds reserves all its objections, we note for the record that Reynolds timely produced hundreds of reports tracking User IDs for which various security exemptions were granted, and plaintiffs had the opportunity to question Chris Hellyer, the Reynolds employee primarily responsible for that process, in his deposition last week.

Sincerely,

Brian T. Ross

Cc: MDL Service List