**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: DEALER MANAGEMENT SYSTEMS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Authenticom, Inc. v. CDK Global, LLC, et al.*, Case No. 1:18-cv-00868 (N.D. Ill.) | MDL No. 2817<br>Case No. 18-cv-00864<br><br>Hon. Robert M. Dow, Jr.<br>Magistrate Judge Jeffrey T. Gilbert |

**PLAINTIFF AUTHENTICOM, INC.'S RESPONSE TO
DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S
<u>MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD</u>**

One day after Authenticom filed its motion for sanctions based on Reynolds's CEO Bob Brockman's intentional destruction of documents, Reynolds filed the instant motion seeking to supplement the summary judgment record with a document that Reynolds has had for nearly *two-and-a-half years*, since Authenticom produced it on *October 12, 2018*. Procedurally, there is no justification for Reynolds to re-open the record at this late date; its motion is a feeble effort at a counter-measure to the sanctions motion. Nonetheless, Authenticom does not oppose the motion. The document does nothing for Reynolds's summary judgment argument.

The document at issue is a chat transcript dated April 2, 2015, between two Authenticom employees who were working with dealers to re-establish access to the dealers' data after Reynolds had disrupted that access. *See* Dkt. 1235-1. Just over one month earlier, Reynolds and CDK had signed the February 2015 agreements – a key part of their conspiracy to coordinate their DMS data access policies – after which Reynolds unleashed new efforts to disable Authenticom. *See* Dkt. 1100, at 27-29. Reynolds also intensified its rhetoric against Authenticom at this time, claiming that Authenticom's business was unsecure and illegal. *See, e.g.* Dkt. 782-42. Reynolds made these accusations even though for its largest and most important dealer customers, Reynolds

actually "whitelisted" (i.e., protected) Authenticom's access, *see* Dkt. 1100, at 12-13, and even though Reynolds itself used Authenticom to provide data access to the CDK and Reynolds DMSs for Reynolds's own software applications, *see* Dkt. 977, ¶ 114.

Against this backdrop, Reynolds's claim that the employees' chat "expressly acknowledg[es] and mak[es] light of the criminal nature of their work for Authenticom" is laughable. Dkt. 1235, at 1. Far from being confessional, the employees' banter poked fun at the absurd hypocrisy of Reynolds's claims that Authenticom's efforts to obtain *dealers' own data* with *dealers' authorization* were somehow criminal. *See*, *e.g.*, Dkt. 1235-1, at -468 ("people would fear me" in prison; "like 'oh you don[']t wanna mess with that one, she polls data for a living. real hard core s***'"). "[A] reasonable reader would not take this to be anything more than . . . sarcastic cracks." *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1268-69 (C.D. Cal. 2001); *see also* Dkt. 1235-1, at -476 to -477 (complaining about the coffee).

Reynolds's effort to make a summary judgment argument out of a chat message is not just grasping at straws; it highlights the prejudice caused by Reynolds's spoliation of evidence. While Reynolds has litigated its counterclaims with an extraordinarily fulsome document production by Authenticom – down to the chat logs of lower level employees – Reynolds's CEO (and the ringleader of the antitrust conspiracy) used "Evidence Eliminator" on his laptop to destroy all of his work emails pre-dating August 2016,[1] and he is under federal indictment for evading billions of dollars in taxes on his income from Reynolds and other sources in the largest individual tax-evasion case ever brought by the Department of Justice. Reynolds's suggestion that Authenticom was the criminal enterprise here is hard to take seriously under the circumstances.

---

[1] The parties agreed to a January 1, 2013, start date for custodial productions, and so Brockman destroyed up to 3.5 years' worth of emails that Reynolds had a duty to produce.

- 3 -

In all events, Authenticom has no objection to the Court considering the chat log and judging the contents for itself, along with the rest of the voluminous summary judgment record.

Dated:  February 26, 2021   Respectfully submitted,

/s/ Derek T. Ho
Derek T. Ho
Michael N. Nemelka
Aaron M. Panner
Daniel V. Dorris
**KELLOGG, HANSEN, TODD,**
 **FIGEL & FREDERICK, P.L.L.C.**
1615 M Street, NW, Suite 400
Washington, D.C. 20036
(202) 326-7900
dho@kellogghansen.com
mnemelka@kellogghansen.com
apanner@kellogghansen.com
ddorris@kellogghansen.com

*Counsel for Authenticom, Inc.*

CERTIFICATE OF SERVICE

      I, Derek T. Ho, an attorney, hereby certify that on February 26, 2021, I caused a true and correct copy of the foregoing **PLAINTIFF AUTHENTICOM, INC.'S RESPONSE TO DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S MOTION TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD** to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

                                               */s/ Derek T. Ho*
                                               Derek T. Ho
                                               **KELLOGG, HANSEN, TODD,**
                                                **FIGEL & FREDERICK, P.L.L.C.**
                                             1615 M Street, NW, Suite 400
                                             Washington, D.C. 20036
                                             (202) 326-7900
                                             dho@kellogghansen.com