Exhibit B

2020 WL 6273477
United States District Court,
N.D. Illinois, Eastern Division.

SANDEE'S CATERING, Plaintiff,

v.

AGRI STATS, INC. et al., Defendants.

No. 20 C 2295
|
Signed 10/26/2020

**Attorneys and Law Firms**

Alec Blaine Finley, Jr., Pro Hac Vice, Jonathan W. Cuneo, Pro Hac Vice, Cuneo Gilbert & LaDuca, LLP, Washington, DC, Shannon Marie McNulty, Clifford Law Offices, Chicago, IL, for Plaintiff.

Jacob D. Koering, Miller, Canfield, Paddock and Stone, P.L.C., Chicago, IL, Justin Wade Bernick, Pro Hac Vice, Liam Edward Phibbs, Pro Hac Vice, William L. Monts, III, Hogan Lovells US LLP, Washington, DC, for Defendant Agri Stats, Inc.

Christopher E. Ondeck, Pro Hac Vice, Colin R. Kass, Pro Hac Vice, Stephen R. Chuk, Pro Hac Vice, Proskauer Rose LLP, Washington, DC, Marc Eric Rosenthal, Proskauer Rose LLP, Chicago, IL, Rucha A. Desai, Pro Hac Vice, Proskauer Rose LLP, New York, NY, for Defendant Butterball, LLC.

Britt Marie Miller, Robert Edward Entwisle, Mayer Brown LLP, Chicago, IL, Kathryn Nikolai Hibbard, Pro Hac Vice, Davida McGhee, Pro Hac Vice, Greene Espel P.L.L.C., Minneapolis, MN, for Defendants Cargill, Inc., Cargill Meat Solutions Corporation.

Daniel D. Birk, Michael Lee McCluggage, Eimer Stahl LLP, Chicago, IL, Jennifer A. L. Battle, Pro Hac Vice, Jill Rogers Spiker, Pro Hac Vice, Joel Everett Sechler, Pro Hac Vice, Theodore M. Munsell, Pro Hac Vice, Carpenter, Lipps, & Leland, LLP, Columbus, OH, for Defendant Cooper Farms, Inc.

Claire Molle' Maddox, Pro Hac Vice, Leslie A. Barry, Pro Hac Vice, Gaspare Joseph Bono, Pro Hac Vice, Dentons US LLP, Washington, DC, Michael K. Sciaccotta, Dentons US LLP, Chicago, IL, for Defendant Farbest Food, Inc.

Carmine R. Zarlenga, Mayer Brown LLP, Washington, DC, for Defendants Foster Farms, LLC, Foster Poultry Farms.

Rachel Johanna Adcox, Lindsey Strang Aberg, Pro Hac Vice, Tiffany Rider Rohrbaugh, Pro Hac Vice, Axinn Veltrop & Harkrider LLP, Washington, DC, for Defendants The Hillshire Brands Company, Tyson Foods, Inc., Tyson Fresh Meats, Inc., Tyson Prepared Foods, Inc.

Colby Anne Kingsbury, Faegre Drinker Biddle & Reath LLP, Chicago, IL, Christopher Allen Kreuder, Pro Hac Vice, Faegre Drinker Biddle & Reath LLP, Des Moines, IA, Craig Stuart Coleman, Pro Hac Vice, Emily Elizabeth Chow, Pro Hac Vice, Isaac Baxter Hall, Pro Hac Vice, Richard Alan Duncan, Pro Hac Vice, Faegre Drinker Biddle & Reath LLP, Minneapolis, MN, for Defendants Hormel Foods Corporation, Hormel Foods, LLC.

James Douglas Baldridge, Andrew Thomas Hernacki, Pro Hac Vice, Danielle R. Foley, Pro Hac Vice, Lisa Jose Fales, Pro Hac Vice, Paul Feinstein, Pro Hac Vice, Venable LLP, Washington, DC, Kirstin Beth Ives, Falkenberg Ives LLP, Chicago, IL, for Defendants Perdue Foods, LLC, Perdue Farms, Inc.

## MEMORANDUM OPINION AND ORDER

Virginia M. Kendall, United States District Judge

**\*1** This is an antitrust case brought by an indirect purchaser of turkey products against several turkey wholesalers and a company that produces statistical reports about the agricultural industry.[1] The Complaint alleges that Defendants conspired, in violation of Section 1 of the Sherman Act, to exchange competitively sensitive information and that this exchange caused Plaintiff to pay more for turkey than it would have under normal market conditions. Plaintiff has also brought state law antitrust claims, state consumer protection claims, and claims for unjust enrichment. Defendants[2] now move to dismiss the Complaint for failure to state a claim. For the reasons set forth below, the Joint Motion [Dkt. 34] is denied as to the federal antitrust claims, the dismissal of the state antitrust claims is granted as to Utah only, the dismissal of the state consumer protection claims is granted as to Arkansas only,[3] and all unjust enrichment claims are dismissed. Defendant Kraft has filed a separate Motion to Dismiss [Dkt. 36], which is granted for the reasons discussed below.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the Complaint's well-pleaded factual allegations and draws all reasonable inferences in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States,* 761 F.3d 779, 785 (7th Cir. 2014). The facts below come from Plaintiff's Complaint (Dkt. 1) and the Court accepts them as true for purposes of reviewing this Motion. *See* 📄 *Vinson v. Vermillion Cty., Ill.,* 776 F.3d 924, 925 (7th Cir. 2015).

Plaintiff Sandee's Catering brings this action on behalf of itself individually and on behalf of a plaintiff class comprising all commercial and institutional indirect purchasers of turkey that purchased turkey other than directly from a defendant or co-conspirator in the United States beginning at least as early as January 1, 2010 through January 1, 2017 (the Class Period). (Dkt. 1 ¶ 66). Plaintiff Sandee's Catering is a bakery and deli located in Jamestown, New York. (*Id.* ¶ 34). During the Class Period, Plaintiff purchased turkey in New York, indirectly from Defendants. (*Id.*). The turkey purchased by Plaintiff was impacted by the conduct of one or more of the Defendants, constituting an alleged antitrust violation, and plaintiff suffered monetary loss as a result of the antitrust violations alleged herein. (*Id.*). The turkey integrator defendants are the leading suppliers of turkey in an industry with approximately $5 billion in annual commerce.[4] (*Id.* ¶ 1). Defendant Agri Stats is a company that provides secretive information exchange services to companies in a variety of agricultural sectors, including pork, chicken, and turkey. (*Id.* ¶ 2). The turkey integrator defendants each entered into an agreement from at least 2010 to January 1, 2017, to exchange sensitive information through Agri Stats regarding their production and sales of turkey. (*Id.* ¶ 3). Turkey is the relevant product market and the geographic market is the continental United States. (*Id.* ¶ 4). Defendants and co-conspirators collectively controlled approximately 80 percent of the overall market share for turkeys during the Class Period. (*Id.* ¶ 6). Each one of the defendants and co-conspirators entered into an agreement to exchange information through Agri Stats, as shown in a 2010 excerpt from an Agri Stats presentation. (*Id.* ¶ 8).

**\*2** The alleged information exchanged by Agri Stats is current and forward-looking, it is specific to the turkey producers, including information on profits, prices, costs and production levels, and none of the information was publicly available. (*Id.* ¶ 10). Industry participants relied on Agri Stats reports in their analysis of their business operations, as attested to by confidential witnesses. (*Id.* ¶¶ 12–15, 19). Agri Stats reports also contained detailed information on industry-wide supply levels; a job description of an Agri Stats employee stated that they analyzed Turkey "breeder flock and hatchery data" as well as Turkey "growout flocks." (*Id.* ¶ 16–17). Stats reports are nominally anonymous, but defendant integrators were often able to deanonymize the reports to identify the data of specific companies based on their industry knowledge. (*Id.* ¶ 18). In addition to their participation in Agri Stats, defendant integrators had frequent opportunities to communicate, in conjunction with formal meetings of various trade associations, namely the National Turkey Federation ("NTF") which held regular yearly meetings, including the NTF Annual Convention and the NTF Leadership conference, which were widely attended by the defendant integrators. (*Id.* ¶¶ 22, 123–26). Defendants also participated in the United States Poultry & Egg Export Council (USAPEEC) and the North American Meat Institute (NAMI), which provide further opportunities to collude. (*Id.* ¶¶ 127–29).

Throughout the conspiracy period, defendant integrators were able to exercise a high level of industry-wide restraint in keeping the growth of turkey supply in check. (*Id.* ¶ 20). This restraint caused turkey prices to rise, therein having the anticompetitive effect of allowing defendants to engage in collusion to restrain the supply of turkey by facilitating information exchange about supply levels throughout the industry. (*Id.*). The turkey market during the conspiracy period, production, measured through USDA data, remained artificially restrained even as demand, captured by higher per capita expenditures on turkey, rose significantly. (*Id.* ¶ 21). These observed price and output dynamics indicate that it was not falling demand that caused a decline in supply during the conspiracy period. (*Id.*).

The turkey market has all of the characteristics of a market where information exchange is likely to have anticompetitive effects: turkey is a fungible product, the market for turkey has price-based competition, the demand for turkey is relatively inelastic, and the turkey market features a trend towards price uniformity. (*Id.* ¶ 28, ¶¶ 98–106). The information exchange through Agri Stats had anticompetitive effects on the market. (*Id.* ¶ 31). Prior to the conspiracy, turkey prices closely tracked the underlying cost of feed, which is the primary input cost in the production of turkey. (*Id.*). Beginning in 2009 through 2010, prices of turkey spiked to an unprecedented

2020 WL 6273477, 2020-2 Trade Cases P 81,425

level, showing the anticompetitive effects of Defendants'
information exchange through Agri Stats. (*Id.* ¶¶ 31, 108–
16). Prices of turkey quickly returned to match underlying
feed costs after litigation was filed in late 2016 in the broiler
industry that centered on the anticompetitive use of Agri Stats.
(*Id.*).

There are high barriers to entry in the market for turkey
for meat consumption. (*Id.* ¶ 92). A new entrant into the
market would face costly and lengthy start-up costs, including
multi-million dollar costs associated with research and
development, equipment, energy, transportation, distribution,
infrastructure (aka "rolling stock"), skilled labor, experienced
management, a skilled contract-farmer base in a specific
geographic area, longstanding customer relationships, safety
and quality assurance, and regulatory approvals relating
to environmental, worker safety, and food safety issues.
(*Id.*). The price of construction of a new integrated turkey
processing complex is relatively high. (*Id.*). The turkey
market also has high levels of vertical integration that
constitute a barrier to entry. The NTF states that "turkey
companies are vertically integrated, meaning they control or
contract for all phases of production." (*Id.* ¶ 95).

Plaintiffs bring their suit as a class action seeking equitable
and injunctive relief. The class ("the Nationwide Class") is
defined as:

> All commercial and institutional
> purchasers in the United States and
> its territories that purchased turkey,
> once or more, other than directly
> from Defendants, entities owned or
> controlled by Defendants, or other
> producers of turkey, from January 1,
> 2010 to January 1, 2017. Excluded
> from the Nationwide Class are
> the Court and its personnel, and
> any Defendants and their parent or
> subsidiary companies.

**\*3** (*Id.* ¶ 130). Plaintiff also seeks damages pursuant to
the common law of unjust enrichment and the state antitrust,
unfair competition, and consumer protection laws of the states
and territories listed below (the "Indirect Purchaser States")
on behalf of the following class (the "Damages Class"):

> All commercial and institutional
> purchasers in the Indirect Purchaser
> States that purchased turkey, once
> or more, other than directly
> from Defendants, entities owned or
> controlled by Defendants, or other
> producers of turkey from January 1,
> 2010 to January 1, 2017. Excluded
> from the Damages Class are the
> Court and its personnel, and any
> Defendants and their parent or
> subsidiary companies.

(*Id.* ¶ 131). Common questions of law and fact exist as to all
members of the Classes which predominate over individual
issues and Plaintiff's claims are typical of the class members.
(*Id.* ¶¶ 135–36, 138). Plaintiff will fairly and adequately
protect the interests of the Class. (*Id.* ¶ 137).

Count One brings a claim for antitrust injury under Section
1 of the Sherman Act ( 15 U.S.C. §§ 1, 3). (*Id.* ¶¶
146–64). Count Two alleges violations of state antitrust
laws in Arizona, California, the District of Columbia,
Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi,
Nebraska, Nevada, New Hampshire, New Mexico, New
York, North Carolina, North Dakota, Oregon, Rhode Island,
South Dakota, Tennessee, Utah, Vermont, West Virginia, and
Wisconsin. (*Id.* ¶¶ 165–96). Count Three alleges violations
of state consumer protection laws in Arkansas, California,
Florida, Minnesota, Missouri, Nebraska, New Hampshire,
New Mexico, New York, North Carolina, North Dakota,
Rhode Island, South Carolina, South Dakota, Vermont, and
Wisconsin. (*Id.* ¶¶ 199–214). Count Four alleges unjust
enrichment under the state laws of all the aforementioned
states. (*Id.* ¶¶ 215–32).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the
sufficiency of the complaint. *Berger v. National Collegiate
Athletic Association, 843 F.3d 285, 289–90 (7th Cir. 2016).*
When considering a motion to dismiss under Federal Rule
of Civil Procedure 12(b)(6), the Court must construe the

complaint in the light most favorable to the non-moving party, accept well-pleaded facts as true, and draw all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 1146 (7th Cir. 2016). The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party need not plead "detailed factual allegations," but "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that when "accepted as true ... 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 570). In assessing the sufficiency of the complaint, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

## DISCUSSION

### I. Sherman Act Claims

**\*4** The Joint Defendants move to dismiss Sandee's federal Sherman Act claims. (Dkt. 34). The Joint Defendants motion incorporates their arguments made in their Motion to Dismiss the claims in *Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.*, 19-cv-08318 (Dkt. 144). For the reasons discussed further in this Court's decision in *Olean*, the Court denies the Joint Defendant's Motion to Dismiss the federal antitrust claims. Plaintiff has adequately alleged a violation of Section 1 of the Sherman Act under a rule of reason analysis to proceed at this stage. The Court will therefore focus on Sandee's state law claims.

### II. The Court's Jurisdiction over Sandee's Claims

The Joint Defendants assert that this Court cannot hear Sandee's claims for two reasons. First, Defendants claim that Sandee's does not have Article III standing to pursue its state law claims. Next, Defendants argue that this Court cannot exercise personal jurisdiction over the non-Illinois Defendants to hear the state law claims. For the reasons stated below, Sandee's has asserted Article III standing and the Court may exercise jurisdiction over the non-Illinois Defendants.

#### A. Article III Standing

Defendants argue that Sandee's does not have Article III standing to bring its various state law claims as Sandee's has only alleged purchasing turkey in New York. Three elements comprise the "irreducible constitutional minimum" of standing: (1) a concrete and particularized injury in fact that is (2) fairly traceable to the alleged action of the defendant, and (3) likely to be redressed by a favorable decision. *McGarry & McGarry, LLC v. Bankruptcy Management Solutions, Inc.*, 937 F.3d 1056, 1063 (7th Cir. 2019) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). "It bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action." *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (N.D. Ill. Aug. 23, 2013) (citing *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002)). The plaintiff must be part of the class to have standing as a class representative, "that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." *Id.* (citing *Keele v. Wexler*, 149 F.3d 589, 592–93 (7th Cir. 1998)).

Courts in this Circuit have handled differently the question of standing for Indirect Plaintiffs alleging state law claims in states where they have not alleged either residency or purchasing of the product. *Compare In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 2013 WL 4506000, at *8 (denying standing where indirect purchaser plaintiffs failed "to satisfy their burden of showing Article III standing for states in which they do not reside and/or did not purchase the products at issue"), *and In re Plasma–Derivative Protein Therapies Antitrust Litig.*, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012) (same)*; with In re Broiler Chicken Antitrust Litig.*, 290 F. Supp.3d 772, 810 (N.D. Ill. 2017) (finding standing for state law claims present where Plaintiff alleged antitrust injury generally), *and In re Dealer Management Systems Antitrust Litig.*, 362 F. Supp. 3d 510, 547–48 (N.D. Ill. 2019) (finding that "[a]lthough courts (including this Court) have held that claims 'brought under the laws of the states in which no named [plaintiff] purchased goods' must be dismissed for lack of Article III standing ... the trend has been to treat the issue as one of statutory standing that can be deferred until class certification.") (internal citations omitted).

**\*5** *In re Broiler Chicken Antitrust Litig.* presented claims similar to the instant case and provides illuminating analysis, although it is not binding on this Court. 290 F. Supp.3d at 810. The Court found that the indirect plaintiffs had plausibly alleged Article III standing for their claims, including state law claims where the indirect plaintiffs did not allege residency or purchase of products. The Court declined to dismiss on standing grounds because the Indirect Plaintiffs plausibly alleged Article III standing as to themselves, and that "analysis suffices to establish the named plaintiffs' standing to assert the claims of class members in other states." *Id.*

Likewise, Sandee's has alleged Article III standing. Sandee's alleges that the turkey it purchased from Defendants was overpriced as a result of Defendants' anticompetitive actions and that Sandee's suffered monetary loss as a result of the antitrust violations. (Dkt. 1 ¶ 38). Sandee's alleges its wrongs could be redressed by injunctive relief and money damages. (*Id.* ¶¶ 144, 164, 171). Such allegations meet the standard for pleading Article III standing.

### B. Personal Jurisdiction

Defendants arguments that this Court cannot exercise personal jurisdiction over the non-Illinois Defendants also fail. Federal courts generally may exercise personal jurisdiction over a defendant if the defendant is subject to the jurisdiction of the state court in which the district court sits. Fed. R. Civ. P. 4(k)(1)(A). In Illinois, that means this Court "may exercise personal jurisdiction over [the Defendants] if it would be permitted to do so under the Illinois long-arm statute." *uBid, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). "Because Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *Id.* Under the Constitution, personal jurisdiction requires a defendant to have made "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Notably, Defendants do not contest that jurisdiction in this Court for Sandee's federal antitrust claims is proper. That is because the Court has jurisdiction under Clayton Act § 12,

15 U.S.C. § 22, as a separate basis for personal jurisdiction over the Defendant corporation. Section 12 states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transact business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. Section 12 "provides for both personal jurisdiction and venue in the case of a corporate defendant. Its first clause sets venue anywhere the corporation is an 'inhabitant,' is 'found,' or 'transacts business,' while the second clause provides for nationwide (indeed, worldwide) service of process and therefore nationwide personal jurisdiction." *KM Enterprises, Inc. v. Global Traffic Tech., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013). Plaintiff has taken advantage of the nationwide personal jurisdiction and brought the case in this Court, which Defendants do not dispute is proper.

Plaintiff can therefore bring its state law claims as an exercise of pendent jurisdiction. The Seventh Circuit has recognized the doctrine of pendent personal jurisdiction, which permits a court that has specific personal jurisdiction over a defendant for one claim to exercise personal jurisdiction over that defendant as to another claim for which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts. *See Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 449 (7th Cir. 2000); *see also Muir v. Nature's Bounty (DE), Inc.*, 2018 WL 3647115, at \*4 (N.D. Ill. Aug. 1, 2018). Pendent personal jurisdiction is most often invoked where an anchor federal claim provides for nationwide service of process. *See Robinson Eng'g Co.*, 223 F.3d at 449. Section 12 provides just such a nationwide service of process. Because there is no dispute that Sandee's federal and state claims "form part of the same case or controversy" and "derive from a common nucleus of operative fact," the exercise of supplemental jurisdiction is appropriate here. *Hansen v. Bd.*

2020 WL 6273477, 2020-2 Trade Cases P 81,425

*of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (citations omitted).

**\*6** Defendants argue that *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) precludes Plaintiff's state law claims. Defendants arguments are unavailing. First, the factual scenario presented here is different than in *Bristol-Myers*. In *Bristol-Myers*, a group of 86 California residents and 592 individuals from 33 other states filed eight complaints in California Superior Court, alleging that a drug that Bristol-Meyers sold in California, but developed, manufactured, and created a marketing strategy for elsewhere, damaged their health. 137 S.Ct at 1778. The Court held that a state may not authorize specific jurisdiction based solely on "a defendant's relationship with a ... third party," even when that third party has "similar" claims against the defendant that fall within the court's specific jurisdiction. *Id.* at 1782. Jurisdiction in this Court is not predicated on the limited interactions of Defendants with this forum, it is based on the nationwide personal jurisdiction that arises under Section 12. Thus, even if *Bristol-Myers* applied to class action suits in federal courts, a question the Court need not resolve, it would not apply to this scenario. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020) (stating, in dicta, that it is worth "recalling that the Supreme Court in *Bristol-Myers* expressly reserved the question whether its holding extended to the federal courts at all" and that the "opinion does not reach the question whether its holding would apply to a class action.").

Nothing in *Bristol-Myers* does away with pendent jurisdiction of state law claims when a statute provides nationwide personal jurisdiction. *See Leppert v. Champion Petfoods USA Inc.*, 2019 WL 216616, *5 (N.D. Ill. Jan. 16, 2019) (finding that "*Bristol-Myers* has since precluded courts sitting in diversity from exercising personal jurisdiction, pendent or otherwise, over any state-law claims against a nonresident defendant for which there is no connection between the forum and the specific claims."); *see also Muir*, 2018 WL 3647115 at *4–5 ("*Bristol-Myers* imposes an *indirect* bar on federal courts' exercise of pendent personal jurisdiction in diversity cases ..."). *Bristol-Myers* does not have any applicability to this case and does not bar this Court's exercise of jurisdiction.

**III. Sandee's State Antitrust Claims**

Sandee's brings claims for violations of state antitrust laws in Arizona, California, the District of Columbia, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. (Dkt. 1 ¶¶ 165–96). Defendants argue that Sandee's state antitrust claims fail because Sandee's allegations are conclusory and fail to state a claim. For the reasons stated in this Court's *Olean* decision, Sandee's has pled sufficient allegations to state a federal antitrust claim and such reasoning applies to these allegations under state law. Defendants argue that Plaintiff has not pled sufficient allegations and cannot state a claim under the antitrust laws of the District of Columbia, New York, Wisconsin, Mississippi, Rhode Island, and Utah. The Court analyzes each state's laws in turn.

**A. District of Columbia, New York, and Wisconsin**

Defendants argue that Sandee's claims under the antitrust laws of the District of Columbia, New York and Wisconsin should be dismissed because those jurisdictions require that the alleged agreement have a 'substantial effect' on intrastate commerce and therefore do not apply here.

According to Defendants, the District of Columbia's antitrust statute, D.C. Code § 28-4501, *et seq.*, does not apply to "claims which, though bearing some connection to the District of Columbia, are in fact interstate in nature." (Dkt. 35 at 13). New York's Donnelly Act, N.Y. Gen. Bus. Law § 340, *et seq.*, is not implicated "[w]here the conduct complained of principally affects interstate commerce, with little or no impact on local or intrastate commerce." *H-Quotient v. Knight Trading Grp.*, 2005 WL 323750, at *5 (S.D.N.Y. Feb 9, 2005) (internal citations omitted). Finally, Defendants claim that under Wisconsin's antitrust statute, Wis. Stat. § 133.01, *et seq.*, Sandee's must allege that the conduct complained of "substantially affects" the people of Wisconsin. *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005). For the reasons discussed below, Defendants' arguments fail.

**\*7** Plaintiff alleges sufficient facts to state a Donnelly Act claim under New York law. Plaintiff is a New York-based bakery and deli that has paid more for turkey in New York state as a result of Defendants' anticompetitive actions. (Dkt. 1 ¶ 38). That in itself is sufficient under the case law.

The cases Defendants rely upon generally pertain to out-of-state plaintiffs and defendants with no allegations as to New York in particular. *See Conergy AG v. MEMC Elec. Materials, Inc.*, 651 F. Supp. 2d 51, 61 (S.D.N.Y. 2009) (finding Donnelly Act preempted by federal antitrust laws where parties were not New York-based and the complaint did not allege any impact on New York specifically and it was not "plain that any of the parties compete with New York producers, serve New York customers, or employ citizens of the State of New York."); *H-Quotient v. Knight Trading Grp.*, 2005 WL 323750, at *5 (S.D.N.Y. Feb 9, 2005) (finding preemption where one defendant was New York-based but the plaintiff was Virginia-based and the antitrust conspiracy pertained to the sale of stocks in a Virginia company).

However, that is not the case here where a New York-based Plaintiff has alleged harm to itself specifically.

*WorldHomeCenter.com, Inc. v. PLC Lighting, Inc.*, 851 F. Supp. 2d 494, 501 (S.D.N.Y. 2011) (finding Donnelly Act claim was not preempted where Plaintiff alleged that Defendant regularly transacted or solicited business in New York, that Plaintiff was a New York corporation, and that a substantial part of the events at issue occurred in New York).

Plaintiff alleges sufficient facts to sustain a claim under the antitrust laws of the District of Columbia. Citing one case from thirty years ago, Defendants seek to enhance the pleading requirements. *See Sun Dun, Inc. of Wash. v. Coca-Cola Co.*, 740 F. Supp. 381, 396 (D. Md. 1990). However, more recent cases have allowed a District of Columbia state antitrust claim to proceed where plaintiffs have pled an impact in the District of Columbia. *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404, 412 (D. Del. 2007) (allowing case to proceed where class plaintiffs alleged an impact upon consumers in the District of Columbia through allegations that the putative class members were injured by defendant's alleged conduct throughout the United States and in District of Columbia); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp.3d 352, 375 (D.R.I. 2019) ("This Court joins the majority of courts in concluding that the [Plaintiffs] have sufficiently pled intrastate activity where they allege nationwide antitrust violations, the antitrust impact of which was felt within each state."); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2015 WL 5458570, at *16 (D. Mass. Sept. 16, 2015) (holding that allegations of nationwide antitrust violation that resulted in increased prices paid within each state are sufficient to allege

intrastate commerce). Here, Plaintiff pleads that a nationwide conspiracy artificially increased the prices of turkey and impacted putative class members who were injured in the District of Columbia. (Dkt. 1¶ 175). This suffices to plead an injury under the antitrust laws of the District of Columbia.

Finally, Plaintiff pleads sufficient facts to state a claim under Wisconsin antitrust laws. Defendants cite *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005) for the proposition that to state an antitrust claim under Wisconsin law a plaintiff must plead that "the conduct complained of 'substantially affects' the people of Wisconsin." However, subsequent case law has clarified what "substantially affects" means for pleading standards. The Wisconsin Supreme Court has explained that:

> [A] complaint under the Wisconsin Antitrust Act, where the circumstances involve interstate commerce and the challenged conduct occurred outside of Wisconsin, is sufficient if it alleges price fixing as a result of the formation of a combination or conspiracy that substantially affected the people of Wisconsin and had impacts in this state.... [R]equiring greater specificity [ ] would create a heightened pleading standard for Chapter 133 actions that would bar otherwise legitimate suits, thus undermining the Act's purposes of fostering competition and prohibiting unfair discriminatory business practices.

**\*8** *Meyers v. Bayer AG*, 735 N.W.2d 448, 461 (Wis. 2007). The Court further stated that bare allegations were sufficient. *Id.* at 461–62 ("Turning to [defendant's] contention that the 'substantially affects' standard requires more than 'bare allegations' that indirect purchasers in Wisconsin paid higher prices as a result of the challenged conduct, we disagree."). Under this standard, Courts allow Wisconsin antitrust claims to proceed as long as plaintiffs plead a substantial affect in Wisconsin. *California v. Infineon Tech. AG*, 531 F. Supp.2d 1124, 1161 (N.D. Cal. 2007) (finding a claim stated where plaintiffs alleged that

defendants engaged in unlawful price fixing, that consumers and businesses who purchased the product during the conspiracy period paid artificially high prices, and that these violations substantially affected the people of Wisconsin, and had injuries within the State of Wisconsin); *Picone v. Shire PLC*, 2017 WL 4873506, *20 (D. Mass. Oct. 20, 2017)* (finding a claim under Wisconsin antitrust law where the complaint alleged that that the putative Wisconsin subclass members paid supracompetitive prices as a result of Defendants' anticompetitive conduct). Here, Plaintiff has pled sufficient facts to state a claim under Wisconsin law because they have alleged that the putative Wisconsin class members paid higher prices because of Defendants' alleged anticompetitive conduct and substantially affected the people of Wisconsin. (Dkt. 1 ¶ 196). This suffices at the motion to dismiss stage.

**B. Mississippi**

Defendants argue that Sandee's cannot bring claims under Mississippi's antitrust statute Miss. Code. § 75-21-1 since it fails to allege wholly intrastate conduct. The Mississippi antitrust statute "focuses on the location where the anticompetitive conduct occurred rather than the effects of such anticompetitive conduct or the broader nexus between the conduct and the state in question." *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 266–67 (S.D.N.Y. 2019) (citing *In re Microsoft Corp. Antitrust Litig.*, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003)).

Plaintiff has pled sufficient facts to state a claim under Mississippi law. The Court in *Infineon Tech.* thoroughly analyzed antitrust cases under Mississippi law and found that at least some allegations of wholly intrastate conduct are required under the Mississippi Antitrust Act. 531 F. Supp.2d at 1157–58. In *Infineon Tech.*, however, the Court ultimately found that Plaintiffs failed to state a claim that "nowhere alleged any activity of any kind—sales, purchases, or other activities in trade or commerce—that took place in Mississippi and are in any way related to defendants' allegedly unlawful conduct." *Id. at 1158.*

Plaintiff here has pled that: (1) turkey price competition was "restrained, suppressed, and eliminated throughout Mississippi;" (2) turkey prices were raised to artificially high levels throughout Mississippi; and (3) Defendants' conduct "substantially affected Mississippi commerce." Dkt. 1 ¶ 181.

Other Courts have also required pleadings pertaining to intrastate effects but permitted those with pleadings more generic than Sandee's to proceed at the motion to dismiss stage. *See In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 464 F. Supp.3d 665, 668–69 (E.D. Pa. 2014) (plaintiffs pled sufficient facts when alleging that anticompetitive conduct had a "substantial intrastate effects" that foreclosed retailers within a state from offering cheaper prices); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp.2d 160, 170–71 (D. Me. 2004) (finding that a reasonable inference is that the defendant manufacturers wanted Mississippi dealers (like those of every other state) to charge Mississippi consumers higher prices as a result of the lack of competition and denying the motion to dismiss). Likewise, the present case is distinguishable from *In re Keurig Green Mountain*, where plaintiffs failed to allege any intrastate conduct in Mississippi on the part of defendant Keurig and only alleged that Keurig had distributors in the Southeast region generally, not Mississippi. 383 F. Supp. 3d at 266–67. Mississippi's Antitrust Act requires "at least some conduct" that is intrastate, and Plaintiff has pled that here. *Id. at 267* (citations omitted).

**C. Rhode Island**

*9 Defendants do not argue that Sandee's has failed to state a claim under Rhode Island's antitrust law, R.I. Gen. Laws § 6–36–7(d), but that Sandee's cannot recover damages based on conduct preceding July 15, 2013. Sandee's does not dispute this, but states that it has alleged post-July 15, 2013 conduct, "including the Defendants' ongoing membership and subscription in the Agri Stats data sharing service." (Dkt. 1 ¶¶ 3, 66, 147). To the extent that Sandee's has alleged post-July 15, 2013 conduct, its claim may proceed. *See In re Broiler Chicken Antitrust Litig.*, 290 F. Supp.3d at 812 (collecting cases with prospective application of Rhode Island antitrust statute and allowing post-July 15, 2013 conduct to proceed).

**D. Utah**

Finally, Defendants claim that Plaintiff cannot bring a claim under Utah's Antitrust Act which provides that "[a] person who is a citizen of this state or a resident of this state" may bring a claim. Utah Code Ann. § 76-10-3109(1)(a). Plaintiff claims that *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 374 (D. R.I. 2019), which Defendants cite, does not apply because that case was, in part, a motion to certify class.

Case: 1:18-cv-00864 Document #: 1253-2 Filed: 03/01/21 Page 10 of 14 PageID #:89966
Sandee's Catering v. Agri Stats, Inc., Slip Copy (2020)
2020 WL 6273477, 2020-2 Trade Cases P 81,425

Such a distinction is unpersuasive. Other cases that were purely motions to dismiss or judgments on the pleadings have dismissed Utah antitrust claims where plaintiffs were not Utah citizens. *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016); *In re Lipitor Antitrust Litig.*, 336 F. Supp.3d 395, 419 (D. N.J. 2018); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 251–252 (D. Conn. 2015); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 759–60 (E.D. Pa. 2014). As there are no named plaintiffs that are citizens or residents of Utah, Defendants' motion to dismiss this claim is granted with prejudice.

## IV. State Consumer Protection Laws

Plaintiff alleges violations of state consumer protection laws in Arkansas, California, Florida, Minnesota, Missouri, Nebraska, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Rhode Island, South Carolina, South Dakota, Vermont, and Wisconsin. (*Id.* ¶¶ 199–214). Defendants argue as to all consumer protection claims that Plaintiff has failed to plead with particularity as required by Fed. R. Civ. P. 9(b). Plaintiff has withdrawn its Missouri and Rhode Island consumer protection claims and so the Court dismisses those accordingly. As the district court did in *In re Broiler Chicken*, "[t]he Court will not address Defendants' arguments with respect to the consumer protection statutes and unjust enrichment laws of the states for which antitrust claims are proceeding, because the fact that the antitrust claims are going forward in those jurisdictions is sufficient for the parties to proceed with discovery relevant to those jurisdictions." 290 F. Supp. 3d at 818. Therefore, the remaining claims as to Arkansas, Florida, and South Carolina shall be analyzed in turn. The Court will also look to Defendants' arguments that Plaintiff's claims are non-actionable in Minnesota and South Dakota.

### A. Rule 9(b) Pleading Requirements

Defendants claim that Plaintiff has failed to plead with particularity as required by Rule 9(b). Rule 9(b) provides that in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2008) (citing *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999)). Given this heightened pleading standard, Rule 9(b) generally requires the pleading to describe "the who, what, when,

where, and how of the fraud." *Camasta v. Jos. A. Banks Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).

**\*10** Rule 9(b) does not apply because Plaintiff's pleadings are grounded in unfair business practices, not fraud, therefore only requiring the lower pleading standards. (Dkt. 1 ¶¶ 200–14). *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (finding that "[b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b)"). While Plaintiff certainly includes language about deception, it must be viewed in the context of the larger antitrust claim, which pertains to unfair business practices and not fraud. A claim that sounds in fraud is "one that is premised upon a course of fraudulent conduct," but there are no allegations of fraudulent conduct outside of the larger antitrust scheme in the Complaint. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Merely including allegations that Defendants engaged in secretive and deceptive behavior does not convert Plaintiff's antitrust claim into one sounding in fraud. In fact, many antitrust cases contain an element of concealment due to the very nature of the claims, but heightened pleading is not required. *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp.2d 991, 1003 n.10 (N.D. Ill. 2011) ("If private plaintiffs, who do not have access to inside information, are to pursue violations of the law, the pleading standard must take into account the fact that a complaint will ordinarily be limited to allegations pieced together from publicly available data."); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6629250, at *11 (N.D. Ill. Oct. 22, 2018) ("specific allegations" of the "who, what, where, and when" not required in antitrust cases).

This case is unlike those that Defendants cite where plaintiffs allege both unfair and fraudulent acts but the frequent allegations of fraud make clear that the heightened pleading standard of Rule 9(b) must be met. *See In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 947 (N.D. Ill. 2009), *aff'd sub nom. Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (citing *Borsellino*, 477 F.3d at 507–08) (holding that repeated averments of fraud in the complaint and in appellants' opening brief triggered Rule 9(b)); *Gavin v. AT & T Corp.*, 543 F. Supp.2d 885, 896 (N.D. Ill.

2008) (finding that complaint "peppered with references to fraudulent and deceptive conduct" by defendants triggered Rule 9(b)). Plaintiff has made infrequent references to fraud and does not allege any fraudulent course of action by Defendants; in the context of the Complaint it is clear that the consumer protection claims arise out of unfair business conduct, namely the antitrust conspiracy. Therefore, Plaintiff must only meet the pleading standards of Rule 8(a), where "[a] complaint need not narrate all relevant facts or recite the law; all it has to do is set out a claim for relief." *Camasta, 761 F.3d at 736* (citing *Hrubec v. Nat'l R.R. Passenger Corp., 981 F.2d 962, 963 (7th Cir. 1992)).* [5]

### B. State-Specific Claims

#### i. Arkansas

Defendants argue that antitrust claims are non-actionable under Arkansas consumer protection law. Plaintiff pleads that Defendants have violated the Arkansas Deceptive Trade Practices Act ("ADTPA"), Ark. Code Ann. § 4-88-101 "by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, prices at which turkey was sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class." (Dkt. 1 ¶ 199). As discussed by the Court in *In re Broiler Chicken*, price-fixing antitrust cases are non-actionable under Arkansas law because the "Eighth Circuit (of which Arkansas is a part) has held that this catch-all must be interpreted in light of the enumerated conduct, such that it only serves to prohibit other instances of 'false representation, fraud, or the improper use of economic leverage.' " 290 F. Supp. at 818 (citing *Univ. Coops., Inc. v. AAC Flying Servs., Inc., 710 F.3d 790, 795–96 (8th Cir. 2013)).* Given this, Plaintiff cannot bring a claim under the ADTPA and the claim is dismissed with prejudice.

#### ii. Florida

**\*11** Defendants argue that Plaintiff cannot bring a claim because the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.,* creates a cause of action only for conduct that occurred within the state of Florida. Plaintiff has alleged that "turkey prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida" by Defendants. (Dkt. 1 ¶ 201). This

is sufficient to state a claim at this stage in the litigation. Once again, Defendants seek to impose a heightened pleading standard that simply does not exist. As Plaintiff points out, allegations of "some injury in the state of Florida," are "sufficient to state a claim under the FDUTPA." *In re Flonase Antitrust Litig., 692 F. Supp. 2d 524, 538 (E.D. Pa. 2010); see also In re Wellbutrin XL Antitrust Litig., 260 F.R.D. 143, 162 (E.D. Pa. 2009)* ("[T]he amended complaint alleges that certain of the named plaintiffs were injured in art through reimbursements for purchases of overpriced drugs sold in the state of Florida. This suffices to state a claim under the FDUTPA."); *Eli Lilly & Co. v. Tyco Integrated Security, LLC, 2015 WL 11251732, \*4 (S.D. Fla. Feb. 10, 2015)* (finding that "the statute does not limit its protection to acts occurring exclusively in Florida" and "there was nothing in the statute that limited relief to Florida consumers or situations where the conduct occurs only in Florida").

#### iii. South Carolina

Defendants claim that Plaintiff's claim under the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-140(a) (SCUTPA) fails because of statutory bars to consumer protection class actions. Defendants fail to cite to any cases to support their position, and instead unpersuasively argue that cases that have allowed class action claims under the SCUTPA have not properly analyzed the issue. [6] The District Court in *In re Broiler Chicken Antitrust Litig.* looked at whether plaintiffs with similar allegations could bring a claim under SCUPTA and found they were not barred from bringing a claim under SCUTPA. *290 F. Supp. 3d at 818; see also In re Packaged Seafood Products Antitrust Litig., 242 F. Supp.3d 1033, 1086 (S.D. Cal. 2017)* (finding *Shady Grove* did not bar SCUTPA claim); *In re Hydroxy Cut Marketing & Sales Practices Litig., 299 F.R.D. 648, 652-53 (S.D. Cal. 2014)* (same). Likewise here, Plaintiff's claim under SCUTPA may proceed and is not barred by any statutory bar.

#### iv. South Dakota & Minnesota

Defendants argue that the antitrust-focused allegations in the Complaint are not actionable under South Dakota and Minnesota's consumer protection statutes. [7] Defendants

cite one case for their proposition, but this case did not hold broadly that antitrust claims are not actionable under Minnesota or South Dakota consumer protection law as Defendants urge, but merely that the plaintiff failed to allege deception or fraud as required by the Minnesota and South Dakota statutes. *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d at 190, 202-03. Here, however, Plaintiff has alleged that Defendants' deceptive conduct in concealing the price fixing agreement caused Plaintiff to pay supracompetitive prices, such that they can proceed with their claims under these state statutes. Not only this, but Defendants' argument is undermined by recent cases that allow Minnesota and South Dakota consumer protection claims to proceed despite the presence of antitrust allegations.

*In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 845-46 (E.D. Pa. 2019) (allowing South Dakota and Minnesota consumer protection claims to proceed);

*Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 414 (E.D. Pa. 2010) (allowing Minnesota consumer protection claims to proceed despite presence of antitrust allegations); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 229 (S.D.N.Y. 2012) (allowing South Dakota consumer protection claim to proceed despite antitrust allegations). Therefore, Plaintiff's claims under Minnesota and South Dakota law are actionable.

**V. Unjust Enrichment**

**\*12** Plaintiff pleads claims for unjust enrichment under the state laws of the aforementioned states. However, Plaintiff has not separated out the claims of the states under which they seek redress. Instead, Plaintiff in a footnote states that "[u]njust enrichment claims are alleged herein under the laws of the states for which claims are alleged in Counts Two and Three above." (Dkt. 1 at p. 76 n. 15). Plaintiff's claim is further muddled by allegations under the unjust enrichment pleadings that:

> "It would be inequitable under unjust enrichment principles under the laws of all states and territories of the United States, except California, Ohio, and Indiana, for Defendants to be permitted to retain any of the overcharges for turkey derived from Defendants; unlawful, unfair, and unconscionable methods, acts, and trade practices alleged in this Complaint."

(Dkt. 1 ¶ 229). This inconsistent pleading has led to the confusion of Defendant Kraft, who believed that Plaintiff was attempting to bring Unjust Enrichment claims in 47 states.

By failing to clearly state under which laws or which states Plaintiff wishes to bring its unjust enrichment claims, Plaintiff has not met its Rule 8 pleading requirements. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," but Plaintiff has not even pled the threadbare elements of the cause of action here. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). Such pleading has made it exceedingly difficult for the Court and the Defendants to know under which jurisdictions Plaintiff would like to proceed, let alone what Plaintiff needs to allege in order to bring a claim under the state-specific unjust enrichment laws. Plaintiff argues that its pleading is acceptable because under Rule 8 a plaintiff need not formulaically catalogue the elements of a given claim; they only need to allege facts supporting those elements. Plaintiff cites to *Christenson v. Cty. of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007) for their claim that Plaintiff need not plead any of the elements of the 28 states where they have brought unjust enrichment claims, but *Christenson* is a pre-*Twombly* and *Iqbal* case that pertained to the permissive notice pleading standard. It is no longer the proper standard for a Rule 12(b)(6) motion to dismiss, the standard of which is discussed in-depth above.

While, as Plaintiff argues, unjust enrichment claims may be similar throughout the United States, Plaintiff fails "to account for any consequential differences that may exist among the undifferentiated state-law claims. The bald assertion that the alleged antitrust conduct violates dozens of non-antitrust laws, or the implication that there are no consequential differences between those laws, is not entitled to deference, because 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 726 (N.D. Ill. 2016) (citing *Iqbal*, 556 U.S. at 678); *see also In re Aftermarket Filters Antitrust Litig.*, 2010 WL 1416259, \*11 (N.D. Ill. Apr. 1, 2010) (dismissing unjust enrichment claims where plaintiff failed to "plead the required factual basis of an unjust enrichment claim on a state by state basis."). Because Sandee's fails to properly plead its unjust enrichment claims in accordance with Rule 8, these claims are dismissed without prejudice.

Case: 1:18-cv-00864 Document #: 1253-2 Filed: 03/01/21 Page 13 of 14 PageID #:89969
Sandee's Catering v. Agri Stats, Inc., Slip Copy (2020)
2020 WL 6273477, 2020-2 Trade Cases P 81,425

## VI. Statute of Limitations

**\*13** Finally, Defendants argue that Plaintiff's claims should be barred by the statute of limitations. For the reasons discussed in *Olean*, Sandee's federal antitrust claims are not barred. Defendants additionally argue that for states with a three-year statute of limitations, Sandee's claims are barred in their entirety.

The "statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. But when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *see also Chi. Bldg. Design, PC v. Mongolian House Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014). A court may only dismiss a claim as untimely under Rule 12(b)(6) if "it is clear from the face of the ... complaint that it is hopelessly time-barred." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009); *see also Grzanecki v. Bravo Cucina Italiana*, 408 Fed.Appx. 993, 996 (7th Cir. 2011) (A court may dismiss the complaint if the plaintiff "mak[es] allegations that conclusively establish the action's untimeliness.").

There are no allegations that conclusively establish the action's untimeliness. As Sandee's points out, in states that apply the discovery rule, the question is whether a reasonable person in plaintiff's position would have discovered the injury if they had exercised due diligence. *See Sidney Hillman Health Center of Rochester v. Abbott Labs, Inc.*, 782 F.3d 922, 930 (7th Cir. 2015). The discovery rule "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured." *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006). Sandee's has pled that Defendants engaged in a secret information exchange that did not place them on notice of the anticompetitive agreement. (Dkt. 1 ¶ 117). And in states that apply fraudulent concealment, Sandee's has pled

sufficiently that Defendants' secretive behavior intended to cover up their alleged anticompetitive agreement. (*Id.* ¶¶117–122). It is premature to dismiss Sandee's claims on statute of limitations grounds as there is nothing in the Complaint to find it obviously time-barred.

## VII. Kraft's Motion to Dismiss

Defendant Kraft has filed a separate Motion to Dismiss (Dkt. 36), arguing that it cannot be a member of the alleged conspiracy because Kraft is not a turkey supplier. For the reasons discussed further in this Court's decision in *Olean*, Kraft's Motion to Dismiss is granted without prejudice. Sandee's has failed to state a claim against Kraft because the only price and cost data alleged are prices and costs associated with whole turkeys. Sandee's does not allege any pricing information for processed turkey products like deli meats which Kraft sells. [8] Therefore, Kraft's Motion to Dismiss (Dkt. 36) is granted.

## CONCLUSION

For the foregoing reasons, the Court denies the Joint Motion to Dismiss [Dkt. 34] as to the federal antitrust claims. The Court denies the Joint Motion to Dismiss as to all state antitrust claims, except the Utah claim which is granted with prejudice. The Court denies the Joint Motion to Dismiss as to all state consumer protection claims, except the Arkansas claim, which is granted with prejudice. Sandee's has voluntarily withdrawn its Missouri and Rhode Island consumer protection claims and so the Court dismisses those claims with prejudice. The Court grants the Joint Motion to Dismiss as to all Unjust Enrichment claims without prejudice. The Court grants Defendant Kraft's Motion to Dismiss with prejudice. [Dkt. 36]. Plaintiff is granted leave to amend its Complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

### All Citations

Slip Copy, 2020 WL 6273477, 2020-2 Trade Cases P 81,425

## Footnotes

**Sandee's Catering v. Agri Stats, Inc., Slip Copy (2020)**

2020 WL 6273477, 2020-2 Trade Cases P 81,425

1    This case is related to *Olean Wholesale Grocery Cooperative, Inc., et al. v. Agri Stats, Inc., et al.*, 19-cv-08318 ("*Olean*") a case brought by direct purchaser plaintiffs which focuses on the same set of facts alleged here.

2    All defendants except Kraft have joined the Joint Motion to Dismiss [Dkt. 34]. The Court refers to this motion as "Defendants' Motion to Dismiss" or "Joint Defendants Motion to Dismiss" throughout.

3    Plaintiff has voluntarily withdrawn its Missouri and Rhode Island consumer protection claims and the Court dismisses those accordingly.

4    The Defendants include Butterball LLC (Butterball); Cargill Inc. and Cargill Meat Solutions Corporation, (together and separately, Cargill); Cooper Farms, Inc. (Cooper Farms); Farbest Foods, Inc., (Farbest); Foster Farms LLC and Foster Poultry Farms (together and separately, Foster Farms); Hormel Foods Corporation and Hormel Foods LLC (together and separately, Hormel); House of Raeford Farms, Inc., (House of Raeford); Kraft Heinz Foods Company and Kraft Foods Group Brands LLC (together and separately, Kraft Foods), Perdue Farms, Inc. and Perdue Foods LLC (together and separately, Perdue); Tyson Foods, Inc., The Hillshire Brands Company, Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. (together and separately, Tyson).

5    It bears noting that Defendants have only cited a few cases where state consumer protection claims were dismissed under the Rule 9(b) pleading requirements. These cases do not apply here in any event as the claims in the cited cases were relatively straightforward fraud claims, not allegations of unfair business practices as found here.

6    The one case Defendants cite, *Staley v. Gilead Scis., Inc.*, 2020 WL 1032320, at *35 (N.D. Cal. Mar. 3, 2020), did not even present a SCUTPA claim.

7    Defendants allege and Plaintiff concedes that it cannot recover damages under Minnesota's consumer protection statute. However, the fact that Plaintiff seeks injunctive relief is not a ground for dismissal. *See Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843, 857 (D. Minn. 1998). Likewise, the fact that Plaintiff can only recover restitution under California's statute is not grounds for dismissal. *See In re Abbott Labs. Norvir Anti-Tr. Litig.*, 2008 WL 11394207, at *2 (N.D. Cal. July 8, 2008).

8    This Court's decision in *Olean* mentions specific paragraphs that pertain to the pricing of whole turkeys. Those allegations are identical to those pled in Sandee's Complaint, although the corresponding paragraphs are Paragraph 107, Paragraph 109, and Paragraph 115.

---

**End of Document**      © 2021 Thomson Reuters. No claim to original U.S. Government Works.