# EXHIBIT 12



June 24, 2016

**VIA FEDERAL EXPRESS**

Attorney Jonathan Emmanual
Reynold & Reynolds
6700 Hollister
Houston, Texas 77040-5345

Dear Attorney Emmanual,

I am writing to you in response to your letter dated June 21, 2016. While I fully understand your concern for the security of Reynolds & Reynolds' and its affiliated companies' (collectively Reynolds) data, neither Authenticom nor DealerVault have engaged in any unauthorized use of Reynolds dealer data. Accordingly, Authenticom has not breached any of its agreements with Reynolds.

DealerVault is a new product created by Authenticom. DealerVault is the first cloud-based solution to empower dealerships with control over their DMS data. Although DealerVault and Authenticom are separate legal entities, they both share the exact same ownership, corporate structure, security principles and occupy the same physical location.

Authenticom is currently in the process of switching all of our clients over to DealerVault. While we intended to execute a DealerVault agreement with Reynolds, it appears that the enclosed document was never signed; I sincerely apologize for the mistake. In any case, please sign and then return to me the enclosed agreement at your earliest convenience. If you require an electronic version of the agreement send me an email at dane.brown@authenticom.com.

If you would like to discuss this matter further, please do not hesitate to give me a call at (608) 793-1140 or send any correspondence to the below address.

Sincerely,

Dane Brown
Authenticom In-house Counsel
400 Main Street
Suite 300
La Crosse, WI 54601

REYMDL00025340

This Dealer Data Delegate Agreement (the "Agreement") is made and between Reynolds & Reynolds, Inc. and its Affiliates (collectively the "Delegate") with its principal place of business located at One Reynolds, Kettering, Ohio 45430, and Data Specialty Group, LLC ("DealerVault") with its principal place of business located at 400 Main Street, 3rd Floor, La Crosse, Wisconsin 54601 (hereinafter referred to individually as a "Party" and collectively as "the Parties").

This Agreement is effective on the date (the "Effective Date") in which the last Party signs and returns the Agreement to the other Party.

In consideration of the mutual promises, covenants, and consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

## Dealer Data Delegate Obligations

1.1 In addition to such other duties and obligations as are set forth in this Agreement, Delegate is hereby authorized to receive information and/or data ("Data") from DealerVault as specifically granted in writing from an automobile dealership ("Dealership") from which DealerVault obtained the Data.

1.2 Delegate agrees that Delegate will not furnish to any third party any Data provided to Delegate by DealerVault without written authorization from DealerVault or the Dealership.

1.3 Delegate is only authorized to use the Data received from DealerVault in accordance with the specific written instruction of the specific Dealership from which DealerVault obtained the Data or with written authorization provided by DealerVault.

1.4 Delegate agrees that the Delegate will protect all Data provided by DealerVault so as to preclude access by any third party.

1.5 Delegate will not use any and all trademarks, trade names, service marks, logos, or corporate names of DealerVault or any of its affiliates ("Marks") without DealerVault's expressed prior written consent. Delegate must receive written approval from DealerVault prior to any use or dissemination of any promotional, marketing, or advertising materials related to DealerVault, or any of its or its affiliates', copyrighted or trademarked products or services.

## DealerVault Obligations

2.1 In addition to such other duties and obligations as are set forth in this Agreement, DealerVault will provide Data to Delegate as authorized by Dealership in writing.

2.2 DealerVault is afforded the right to transfer, send, mail, disseminate, or otherwise relay any Data authorized by Dealership to Delegate by any method or tool deemed appropriate by DealerVault unless otherwise stipulated by both Parties in writing.

## Dealer Data Delegate's License & Restrictions to Use DealerVault Tools

3.1 Dealer Data Delegate is granted a non-transferable, revocable, non-exclusive, non-sub licensable (without prior written permission from Dealership), limited license to the Dealership Data only to the extent to perform the services or provide the products to Dealership as those are specifically set forth and defined in the written contract between

REYMDL00025341

Dealership and Dealer Data Delegate provided by DealerVault. If no such written contract exists Dealer Data Delegate may not receive Dealership Data until the basic terms of the provision of the products and/or services are set forth in writing. All rights not expressly granted in this Limited License are reserved by the Dealership or its delegate, DealerVault, and no licenses are granted by implication or estoppel.

## Protection of DealerVault Services and Intellectual Property

4.1 DealerVault Ownership. Delegate acknowledges that all Data that Delegate may receive from DealerVault is, and will remain indefinitely in the future, the exclusive property of DealerVault. Nothing in this Agreement shall be construed as an assignment, transfer, or grant to Delegate of, nor shall Delegate otherwise acquire, any ownership rights in the Data provided by DealerVault to Delegate.

4.2 Dealership Data. Delegate has no right or claim to any data created or disseminated by a Dealership.

4.3 Proprietary Notices. Delegate shall not remove any copyright, trademark, service mark, patent, or other proprietary or restrictive notice or legend contained in or included on any Data provided.

4.4 Infringement of Intellectual Property. Delegate shall immediately notify DealerVault of any unauthorized disclosure or use of the Data provided by DealerVault to Delegate or of any infringement of or challenge to DealerVault or its affiliates' Marks, services, or tools, or any claim by any person, business or entity to any rights in said Marks, services, or tools, whenever it first comes to Delegate's attention. DealerVault shall have sole discretion to take such action as it deems appropriate, and the right to exclusively control any litigation, action, or proceeding, whether before a court, administrative agency, or otherwise, arising out of any such infringement, challenge, or claim, or otherwise relating to the Marks, services, and/or tools, and render such assistance and do such acts or things as may be reasonably necessary to protect or maintain the interests of DealerVault in any such litigation, action, or proceeding, or to otherwise protect and maintain the interests of DealerVault.

## Protection of Confidential Information

5.1 Confidential Information. The Parties agree to hold in strictest confidence and not to disclose to any person, firm, corporation, or other entity any data and relating or referring to the business of the Dealership, DealerVault and/or DealerVault's tools or services (collectively "Confidential Information"). The Parties agree that the Confidential Information will not be shown or distributed to any person, firm, corporation, or other entity without the written permission and consent, and then only with the execution of a Nondisclosure and Confidentiality Statement by said person, firm, corporation, or other entity. The signed Nondisclosure and Confidentiality Statement must be delivered to DealerVault prior to the Confidential Information being furnished. The Parties acknowledge and agree that the Confidential Information is proprietary and confidential, that it is not generally known or available in the industry, that it constitutes trade secrets and is of great value to the Parties, and that all rights to the same are, and shall remain, the sole property of the respective Party.

5.2 Irreparable Harm. The Parties recognize that the disclosure of Confidential Information by any Party may give rise to irreparable injury to the other Party, which may not be adequately compensated by damages. Accordingly, in the event of a breach or threatened breach by either Party of this Agreement, the non-breaching Party shall be entitled to an immediate injunction restraining the other Party from disclosing, in whole or in part, the Confidential Information referred to herein, or from rendering any services to any person, firm, corporation, association, or other entity to whom such Confidential Information, in whole or in part, has been disclosed or is threatened to be disclosed. Nothing herein shall be construed as prohibiting either Party from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages.

REYMDL00025342

5.3 Other Information. The Parties recognize that DealerVault and/or Delegate may receive from third parties confidential or proprietary information subject to a duty to maintain the confidentiality of such information and to use it only for certain limited purposes. The Parties agree to hold all such confidentiality or proprietary information in the strictest confidence and not to disclose it to any person, firm, corporation, or other entity or to use it for the benefit of anyone other than DealerVault and/or Delegate, or such third party (consistent with any third party agreement) without express written authorization.

5.4 Return of Confidential Information. The Parties agree that upon termination of this Agreement, Delegate will immediately deliver to DealerVault any and all Confidential Information or reproductions thereof belonging to Dealership, DealerVault or DealerVault customers.

5.5 Non-Competition Covenant. Delegate acknowledges that during Delegate's relationship with DealerVault it will be privy to Confidential Information and will be the beneficiary of knowledge and training gained as a result of its relationship with DealerVault. In consideration thereof, and in consideration of DealerVault entering into this Agreement, Delegate agrees that so long as the Agreement is in effect, and for a period of twenty-four (24) consecutive months thereafter, Delegate will not, either directly or indirectly, except with the prior written consent of DealerVault or Dealership, do any of the following: (I) solicit work from or render services to, either directly or indirectly, for Delegate's own benefit or the benefit of another, any of Dealership's or DealerVault's Delegates, agencies or clients for whom it has performed services on behalf of DealerVault; (II) hire, either directly or indirectly, any employee of Dealership or DealerVault, in any capacity whatsoever, nor attempt to induce any employee of Dealership or DealerVault to leave the employ of Dealership or DealerVault and/or induce any employee past or present to furnish Delegate with information regarding vendors, other Delegates or agencies, marketing materials, issued or pending business or any of Dealership's or DealerVault's marketing or sales practices; or (III) reproduce or copy any of Dealership or DealerVault's lead material, mail any direct mail solicitations of a similar content to those used by Dealership or DealerVault, use or copy any of Dealership's or DealerVault's sales material, presentations or any material of a proprietary nature, which originated from Delegate's association with Dealership or DealerVault. In the event Delegate should be in violation of this Non-Competition Covenant, then the time limitation thereof will be extended for a period of time equal to the period of time during which such breach or breaches are occurring; and, in the event Dealership or DealerVault should be required to seek relief in any court or tribunal, then this NonCompetition Covenant will be further extended for a period of time equal to the pendency of such proceedings, including appeals. Delegate further acknowledges and agrees that the restrictions contained in this Section 4.5 are for the sole purpose of protecting the legitimate business interests of Dealership and/or DealerVault. Upon termination of the Agreement, Delegate is free to pursue other endeavors, so long as it is not in violation of the provisions of this Section 4.5. Nothing contained in this Agreement will be interpreted or construed as a restriction prohibiting Delegate from earning a living.

## Term and Termination

6.1 Term and Termination. The initial term of this Agreement shall be one (1) year from the date of this Agreement as set forth above. Thereafter this Agreement shall automatically renew on a yearly basis unless otherwise terminated as set forth herein. DealerVault may suspend or terminate this Agreement, or any portion thereof, upon one of the following events: (I) a material breach of this written Agreement by Delegate and Delegate fails to cure the breach within thirty (30) calendar days after written notice of the breach; (II) upon a determination by any governmental authority with jurisdiction over the Parties that the provision of the DealerVault services under this Agreement is contrary to existing laws, rules, or regulations; (III) the passage or adoption of any law, rule or regulation that in the reasonable judgment of DealerVault will make it materially more expensive or difficult to provide the DealerVault services under this Agreement; (IV) upon sixty (60) days written notice prior to the expiration of the initial or any renewal term, either party may terminate this Agreement, with or without cause.

REYMDL00025343

6.2 Effect of Termination. Upon termination of this Agreement, the following shall occur: (I) all rights and licenses granted to Delegate under this Agreement shall terminate except as provided herein below; (II) Delegate shall immediately return all Confidential Information, and all copies and printed materials of the same, in any and all forms and mediums immediately to DealerVault; (III) any obligations of Delegate that expressly survive termination of this Agreement shall continue in full force and effect subsequent to and notwithstanding termination of this Agreement; (IV) DealerVault and Delegate shall have all other rights and remedies permitted by this Agreement, law, and equity, including, but not limited to, the right to injunctions, restraining orders, damages, profits, and other relief.

## Miscellaneous Provisions

7.1 Relationship of Parties. The relationship of the Parties shall be solely that of Independent Contractors. No partnership, joint venture, employment, agency, or other relationship is formed, intended, or to be inferred under this Agreement. Neither party to this Agreement shall attempt to bind the other, incur liabilities on behalf of the other, act as Delegate of the other, or make or authorize any representation contrary to the foregoing.

7.2 Reference to Other Documents or Agreements. The Parties acknowledge and agree that this Agreement represents the total agreement between the Parties and that any statements made before the execution of this Agreement, whether in written or oral form are specifically rejected by the Parties. The Parties further acknowledge and agree that any modifications to this Agreement must be made in writing and executed by both Parties or such modifications will not be effective.

7.3 Assignment. Delegate does not have the right to assign this Agreement or benefit or duty hereunder to any third party.

7.4 Compliance with the Law. Delegate shall comply with applicable laws, rules, regulations, orders, conventions, ordinances, or standards of the country of destination or which relate to this Agreement.

7.5 Applicable Law and Jurisdiction. This Agreement will be governed exclusively by the laws of the State of Wisconsin, and the Parties, by their signatures below, agree to submit to the jurisdiction of the State of Wisconsin and its courts and authorities.

7.6 Arbitration. All disputes and controversies between the parties hereto of any kind and nature arising of or in connection with this Agreement, as to the existence, construction, validity, interpretation or meaning, performance, non-performance, enforcement, abrogation, breach, continuation, or termination of this Agreement shall be resolved as set forth herein. Either Party to this Agreement may, after a dispute or controversy arises, make a written request and demand arbitration of any dispute or controversy hereunder by making such written requests in writing to the other party. Any dispute or controversy shall be submitted to a single arbitrator with experience in high technology commercial matters to be chosen by mutual agreement of the parties within five (5) days after the request for arbitration is made as above. If the Parties, within such time, cannot agree on an arbitrator, the arbitrator shall be chosen pursuant to the American Arbitration Association procedures from its panel of arbitrators with high technology commercial experience. The arbitration hearing shall be held in La Crosse, Wisconsin, United States of America, or at such other place that the parties and the arbitrator mutually agree upon within thirty (30) days from the demand for arbitration. The commercial arbitration rules of the American Arbitration Association shall be used in the arbitration proceedings. The arbitration herein shall be concluded in not more than three (3) days unless otherwise ordered by the arbitrator. The award on the hearing shall be made within fourteen (14) days after the close of the submission of evidence. An award rendered by the arbitrator or appointed pursuant to this Agreement shall be final and binding on all of the Parties to such proceeding and enforced in the Court of proper jurisdiction in La Crosse, Wisconsin. The provisions of this section shall be a complete bar and defense to any suit, action, or proceedings instituted in any Court, before any Court, or before any administrative tribunal with respect to any dispute or controversy arising out of

REYMDL00025344

or in connection with this Agreement. The arbitration provisions of this Agreement shall, with respect to any such dispute or controversy, survive the termination or expiration of this Agreement. The arbitrator shall determine which of the parties shall bear the costs and/or expenses of the arbitration. The failure or refusal of any Party hereto to submit to arbitration in accordance with this Agreement shall be deemed a breach of this Agreement. Each Party shall continue to support its obligations including financial under the terms of this Agreement pending final resolution of any dispute arising out of or relating to this Agreement.

7.7 Binding Agreement. This Agreement shall be binding upon and inure to the benefit of each Party, and their respective successors, heirs, permitted assigns, and legal representatives.

7.8 Modification. This Agreement may be modified, amended, or waived only by a separate writing signed by Delegate and DealerVault expressly so modifying, amending, or waiving this Agreement.

7.9 Waiver of Breach. A Party to this Agreement will not be bound by a waiver of any right or remedy that inures to the Party's benefit under this Agreement unless the waiver is in writing signed by the Party. The waiver by any Party of strict performance of any provision in this Agreement shall not operate or be construed as a waiver of any subsequent breach.

7.10 Severability. Should any provision of this Agreement be deemed illegal or unenforceable, all other provisions of this Agreement shall be given effect separately there from and shall not be affected thereby.

7.11 Authority. Each Party represents that it has full power and authority to enter into this Agreement, that the execution of this Agreement and the matters contemplated in this Agreement have been fully authorized by all necessary legal action, and that this Agreement is binding upon such Party. Each Party further represents that it has not entered into, nor will it enter into, any agreements that would conflict with its obligations under this Agreement or would render it incapable of satisfactory performing hereunder. The signatories to this Agreement represent and warrant that they are authorized to execute this Agreement on behalf of DealerVault and Delegate and bind the Parties to this Agreement.

7.12 Counterparts. This Agreement shall be executed in two (2) counterparts with equal legal force and effect, with one (1) for each Party.

7.13 Successors. This Agreement shall be binding upon the Parties and their successors, assigns, estates, transferees, grantees, and legal representatives.

7.14 Force Majeure. DealerVault shall not be liable for service interruptions, delays, failures to perform, damages, losses or destruction, or malfunction of any equipment or any consequence thereof caused or occasioned by, or due to fire, flood, water, the elements, acts of God, war and threat of imminent war, labor disputes or shortages, utility curtailments, power failures, explosions, civil disturbances, governmental actions, shortages of equipment for supplies, unavailability of transportation, acts or omissions of third parties, or any other cause beyond the Company's reasonable control.

7.15 Limitation of Liability. In no event shall DealerVault be liable to Delegate or any third party in any respect including without limitation for any direct, indirect, incidental, consequential, exemplary, punitive, reliance or special damages, or for any loss of revenue, profits, use, data, goodwill or business opportunities of any kind or nature whatsoever, arising in any manner from this Agreement and the performance or non-performance of any obligations hereunder whether based in contract, tort, or other legal theory.

7.16 Indemnification. Delegate shall indemnify and hold DealerVault harmless for any and all claims or damages which may arise out of: (I) any fraudulent usage of the Confidential Information by Delegate including, without limitation, any violation of applicable law, rule or regulation, (II) any misuse of DealerVault's Marks as defined herein;

REYMDL00025345

(III) any and all acts or omissions which in any way misrepresent or harm Dealership, DealerVault, or any of DealerVault's tools or services; or (IV) breach of any provision of this Agreement. In addition, Delegate shall indemnify and hold DealerVault harmless for any and all claims and damages arising out of claims by its customers. Furthermore, Delegate agrees to defend, indemnify, and hold DealerVault and its other agents and contractors harmless from and against all claims and demands for Delegates' or sub-agents' misrepresentations of products or services, fraud or any unlawful act, obligations, and liabilities for injury and death of persons. Loss or damage to property, and all expenses and cost in connection therewith, including attorney's fees, and court costs arising out of Delegate's negligent acts or omissions under this Agreement. Further, Delegate holds Dealership and DealerVault harmless and assumes complete responsibility for all subcontractors, marketing agents, sales representatives, and employees utilized by Delegate in the performance of this Agreement.

7.17 Notice. Any notice relating to this Agreement from one Party to the other shall be in writing and delivered in hand, by fax, standard mail, or email, and deemed to have been properly received on the date of delivery, or by registered mail (postage prepaid) and deemed to have been properly received three (3) days after being delivered to the postal service.

| DealerVault Information | |
|---|---|
| Full Legal Entity Name | Data Specialty Group, LLC. |
| State/Province | Wisconsin |
| Business Street Address | 400 Main Street, Suite 300 |
| City, State, Zip Code | La Crosse, WI 54601 |
| Main Contact Name(s) | Steve Cottrell |
| Main Contact Email | steve@dealervault.com |
| Main Contact Phone | 608-793-4200 |
| DealerVault Information | |
| Corporate URL | www.dealervault.com |

REYMDL00025346



| Delegate Information | |
|---|---|
| Agent Full Legal Entity Name | |
| State/Province | |
| Agent Business Street Address | |
| City, State, Zip Code | |
| Main Contact Name(s) | |
| Main Contact Email | |
| Main Contact Phone | |
| Corporate URL | |
| Effective Contract Date | |

After signing the DealerVault Dealer Data Delegate contract, a member of the DealerVault Onboarding Team will contact the Dealer Data Delegate to establish an appropriate date and time for a Technical call. During the aforementioned call, the Onboarding Team will gather the following pieces of information:

- A list of Dealer Data Delegate's programs
- The type of files to be delivered and their desired format—master, or custom
- Where to deliver files—DealerVault's FTP site, or the Dealer Data Delegate's FTP site
- Desired file pattern
- Desired frequency with which to deliver files
- Desired length of history to deliver
- Whether new data, or all data should be sent after file history has been complete

Once all needed information has been gathered, the Onboarding Team will begin the Dealer Data Delegate setup process. When a connection has been established between a Dealer and the Dealer Data Delegate, data will be polled, syndicated, and disseminated. Since Dealers have complete control of their data, they have the accessibility to turn any and all fields "on/off" for each Dealer Data Delegate. It is imperative to know that if a change occurs, an email notification is sent directly to the Dealer Data Delegate affected by any change made.

REYMDL00025347

Presently, there are four feeds DealerVault polls: inventory, sales, service, and service appointments. In addition to the standard fields contained within each feed, our company offers Dynamic Fields. Dynamic Fields are those that may hold different values such as MSRP and Internet Pricing. DealerVault also offers CASS Standardization which configures address information into the USPS standard format.

To evidence the Parties' agreement to enter into this Agreement, each Party has executed and delivered it on the date indicated within the Party's signature block.

**Reynolds & Reynolds Project Contact:**
Name:
Telephone:
Facsimile:
Email:

By:_____

Name:
Title:

Date:_____

**DealerVault Project Contact:**
Name: Brian Clements
Telephone: 608-796-1167
Facsimile: 608-796-0657
Email: brianc@authenticom.com

By:_____

Name: Stephen M. Cottrell
Title:   President

Date:_____